Richard M. Heimann (State Bar No. 063607)
*rheimann@lchb.com*
Joseph R. Saveri (State Bar No. 130064)
*jsaveri@lchb.com*
Eric B. Fastiff (State Bar No. 182260)
*efastiff@lchb.com*
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
275 Battery Street, 30th Floor
San Francisco, CA  94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008

*Attorneys for Individual and Representative Plaintiff Nathan Muchnick, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

(San Francisco Division)

| | |
|---|---|
| CRAGO, INC., on behalf of itself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CHUNGHWA PICTURE TUBES, LTD., *et al.*,<br><br>Defendants. | Case No. CV-07-5944-SC<br><br>**DECLARATION OF ERIC B. FASTIFF IN SUPPORT OF PLAINTIFF'S ADMINISTRATIVE MOTION TO CONSIDER WHETHER CASES SHOULD BE RELATED**<br><br>The Honorable Samuel Conti |
| THIS DOCUMENT RELATES TO:<br><br>NATHAN MUCHNICK, INC., on behalf of itself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CHUNGHWA PICTURE TUBES, LTD., *et al.*,<br><br>Defendants.<br><br>Case No. CV-07-5981-MEJ | |

///

///

///

I, Eric B. Fastiff, declare as follows:

1.      I am a partner at the law firm of Lieff, Cabraser, Heimann & Bernstein, LLP in San Francisco, California and am admitted to practice before this Court.  I am counsel for Plaintiff Nathan Muchnick, Inc. in *Nathan Muchnick, Inc. v. Chunghwa Picture Tubes, Ltd., et al.*, Case No. CV-07-5981-MEJ ("*Muchnick*").  I submit this Declaration in support of Plaintiff Nathan Muchnick, Inc.'s Administrative Motion to Consider Whether Cases Should be Related.

2.      On November 26, 2007, Plaintiff Crago, Inc. filed a Complaint in the United States District Court for the Northern District of California alleging a conspiracy to fix prices of cathode-ray tube products, styled *Crago, Inc. v. Chunghwa Picture Tubes, Ltd., et al.*, Case No. CV-07-5944-SC ("*Crago*").  Crago, Inc. alleged violations of section 1 of the Sherman Act, 15 U.S.C. § 1.  Crago, Inc.'s complaint is the low-numbered complaint in the Northern District of California alleging Defendants fixed the prices of products containing cathode-ray tubes.  Attached hereto as Exhibit A is a true and correct copy of the *Crago* complaint.

3.      On November 27, 2007, Nathan Muchnick, Inc. filed its complaint alleging a conspiracy to fix prices of cathode-ray tubes and cathode-ray tubes and products containing cathode-ray tubes.  Attached hereto as Exhibit B is a true and correct copy of the *Muchnick* complaint.

4.      Nathan Muchnick, Inc. has not appeared in *Crago*, and is not aware of any other related actions currently pending in the Northern District of California.  Civil Local Rule 3-12 requires that an Administrative Motion to Consider Whether Cases Should be Related be promptly filed.  Accordingly, and as the Defendants are in the process of being served, a stipulation could not be obtained prior to filing Plaintiffs' Administrative Motion.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 28th day of November, 2007 at San Francisco, California.

                              */s/ Eric B. Fastiff*
                              Eric B. Fastiff

DECLARATION OF ERIC B. FASTIFF IN SUPPORT OF
PLAINTIFF'S ADMINISTRATIVE MOTION
CASE NO. 07-CV-5944-SC

# EXHIBIT A

1   Bruce L. Simon (Bar No. 96241)
       bsimon@psswplaw.com
2   Esther L. Klisura (Bar No. 221171)
       eklisura@psswplaw.com
3   PEARSON, SIMON, SOTER, WARSHAW & PENNY, LLP
    44 Montgomery Street, Suite 1200
4   San Francisco, California 94104
    Telephone:  (415) 433-9000
5   Facsimile:   (415) 433-9008

6   P. John Brady
       jbrady@stklaw.com
7   Daniel D. Owen
       dowen@stklaw.com
8   SHUGHART THOMSON & KILROY, P.C.
    Twelve Wyandotte Plaza
9   120 West 12th Street
    Kansas City, Missouri 64105
10  Telephone:  (816) 421-3355
    Facsimile:   (816) 374-0509

11
    [Additional counsel on signature page]
12  *Attorneys for Plaintiff and the Proposed*
    *Direct Purchaser Class*
13

14              **UNITED STATES DISTRICT COURT**

15             **NORTHERN DISTRICT OF CALIFORNIA**

16  Crago, Inc., on behalf of itself and others        CASE NO.
    similarly situated.
17                                                      **CLASS ACTION COMPLAINT**
                    Plaintiff,
18                                                      **JURY TRIAL DEMAND**
            vs.
19
    Chunghwa Picture Tubes, Ltd., Chunghwa
20  Picture Tubes (Malaysia) Sdn. Bhd., Hitachi,
    Ltd., Hitachi America, Ltd., Hitachi Asia, Ltd.,
21  Irico Group Corp., Irico Display Devices Co.,
    Ltd., LG Electronics, Inc., Matsushita Electric
22  Industrial Co, Ltd., Panasonic Corporation of
    North America, Orion Electric Co., Ltd., Orion
23  America, Inc., Koninklijke Philips Electronics
    N.V., Philips Electronics North America,
24  Samsung SDI Co., Ltd., Samsung SDI America,
    Inc., Samtel Color, Ltd., Thai CRT Company,
25  Ltd., Toshiba Corporation, Beijing-Matsushita
    Color CRT Company, Ltd., Matsushita Toshiba
26  Picture Display Co., Ltd., and LP Displays
    International, Ltd.
27
                    Defendants.
28

PEARSON, SIMON, SOTER, WARSHAW & PENNY, LLP
44 MONTGOMERY STREET, SUITE 1200
SAN FRANCISCO, CALIFORNIA 94104

## I.   INTRODUCTION

1.      Plaintiff Crago, Inc. brings this action on behalf of itself individually and on behalf of a plaintiff class (the "Class") consisting of all persons and entities who purchased products containing a cathode ray tube ("CRT Products" or "CRTs") in the United States directly from one or more named defendants between January 1, 1995 and the present (the "Class Period").    Defendants are the leading manufacturers of televisions, computer monitors, and other electronic devices containing CRTs.  Defendants control the majority of the CRT Product industry, a multibillion dollar market, which in 1999 alone generated over $19 billion dollars in gross revenue.    During the class period, virtually every household in the United States owns, or has owned, at least one CRT Product.

2.      Since the mid-1990's, the CRT industry faced significant economic pressures as customer preferences for other emerging technologies shrank profits and threatened the sustainability of the industry.  Plaintiff is informed and believes, and thereon alleges, that in order to maintain price stability, increase profitability, and extend the life of the CRT market, defendants conspired, combined and contracted to fix, raise, maintain, and stabilize the price at which CRT Products were sold in the United States.  Plaintiff is further informed and believes, and thereon alleges, that defendants fraudulently concealed their anticompetitive conduct from plaintiff and the Class in the furtherance of the conspiracy.  As a result of defendants' unlawful conduct, plaintiff and the other members of the Class paid artificially inflated prices for CRT Products during the class period.  Such prices exceeded the amount they would have paid if the price for CRT Products had been determined by a competitive market.

## II.   JURISDICTION AND VENUE

3.      Plaintiff brings this action to obtain injunctive relief and to recover damages, including treble damages, costs of suit, and reasonable attorneys' fees arising from defendants' violations of Section 1 of the Sherman Act (15 U.S.C. § 1).

4.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1337(a) and 1367.

PEARSON, SIMON, SOTER, WARSHAW & PENNY, LLP
44 MONTGOMERY STREET, SUITE 1200
SAN FRANCISCO, CALIFORNIA 94104

5.     Venue is proper in this judicial district pursuant to 15 U.S.C. §§ 15 and 22, and 28 U.S.C. § 1391(b) and (c), in that at least one of the defendants resides in this judicial district, is licensed to do business or is doing business in this judicial district.

### III.   PARTIES

**A.     Plaintiff**

6.     Plaintiff Crago, Inc. is a business entity incorporated under the laws of the State of Kansas.  Plaintiff purchased CRT Products directly from certain of the defendants and their subsidiaries during the Class Period.  Plaintiff's purchases included, but were not limited to, purchases of numerous 17-inch and 19-inch CRT monitors from defendant Hitachi America, Ltd.

**B.     Defendants**

**Chunghwa**

7.     Defendant Chunghwa Picture Tubes, Ltd. is a Taiwanese company with its principal place of business at No. 1127, Heping Rd., Bade City, Taoyuan, Taiwan.  It was established in 1971 by Tatung Corporation to manufacture CRTs.  In 1974, Chunghwa Picture Tubes, Ltd.'s CRTs received certification by the United States, giving the company entry into that market.  By 1991, Chunghwa Picture Tubes, Ltd. had claimed the leading position in the global CRT industry.  Ten years later, in 2001, Chunghwa Picture Tubes, Ltd. remained one of the top two competitors in the worldwide CRT market with a 15 to 20 percent market share.  During the Class Period, Chunghwa Picture Tubes, Ltd. manufactured, sold, and distributed CRT Products throughout the United States.

8.     Defendant Chunghwa Picture Tubes (Malaysia) Sdn. Bhd. ("Chunghwa Malaysia") is a Malaysian company with its principal place of business at Lot 1, Subang Hi-Tech Industrial Park, Batu Tiga, 4000 Shah Alam, Selangor Darul Ehsan, Malaysia.  It is a wholly-owned and controlled subsidiary of Chunghwa Picture Tubes, Ltd.  Chunghwa Malaysia is focused on CRT production, and it has established itself as one of the leading worldwide suppliers of CRTs.  Its product line ranges from 10-inch CRTs to 29-inch CRTs.  During the Class Period, Chunghwa Malaysia manufactured, sold, and distributed

3

CRT Products throughout the United States.

9. Defendants Chunghwa Picture Tubes, Ltd. and Chunghwa Malaysia are collectively referred to herein as "Chunghwa."

**Hitachi**

10. Defendant Hitachi, Ltd. is a Japanese company with its principal executive office at 6-6, Marunouchi 1-chome, Chiyoda-ku, Tokyo, 100-8280, Japan. Hitachi, Ltd. is the parent company for the Hitachi brand of CRT Products. In 1996, Hitachi, Ltd.'s worldwide market share for color CRTs was 20 percent. During the Class Period, Hitachi, Ltd. manufactured, sold, and distributed CRT Products throughout the United States.

11. Defendant Hitachi America, Ltd. ("Hitachi America") is a New York company with its principal place of business at 2000 Sierra Point Parkway, Brisbane, California. Hitachi America is a wholly-owned and controlled subsidiary of defendant Hitachi, Ltd. During the Class Period, Hitachi America sold and distributed CRT Products manufactured by Hitachi, Ltd. throughout the United States.

12. Defendant Hitachi Asia, Ltd. ("Hitachi Asia") is a Singaporean company with its principal place of business at 16 Collyer Quay, #20-00 Hitachi Tower, Singapore 049318. Hitachi Asia is a wholly-owned and controlled subsidiary of defendant Hitachi, Ltd. During the Class Period, Hitachi Asia manufactured, sold, and distributed CRT Products throughout the United States.

13. Defendants Hitachi, Ltd., Hitachi America, and Hitachi Asia are collectively referred to herein as "Hitachi."

**Irico**

14. Defendant Irico Group Corporation is a Chinese entity located at 1 Caihong Rd., Xianyang City, Shaanxi Province 712021. Irico Group Corporation is the parent company for multiple subsidiaries engaged in the manufacture, distribution, and sale of CRT Products. During the Class Period, Irico Group Corporation manufactured, sold, and distributed CRT Products throughout the United States.

/ / /

PEARSON, SIMON, SOTER, WARSHAW & PENNY, LLP
44 MONTGOMERY STREET, SUITE 1200
SAN FRANCISCO, CALIFORNIA 94104

PEARSON, SIMON, SOTER, WARSHAW & PENNY, LLP
44 MONTGOMERY STREET, SUITE 1200
SAN FRANCISCO, CALIFORNIA 94104

15.     Irico Display Devices Co., Ltd. is a Chinese entity located at No. 16, Fenghui South Road West, District High-tech Development Zone, Xi'an, SXI 710075.   Irico Display Devices Co., Ltd. is a partially-owned subsidiary of defendant Irico Group Corp. In 2006, Irico Display Devices Co., Ltd. was China's top CRT maker.   During the Class Period, Irico Display Devices Co., Ltd. manufactured, sold, and distributed CRT Products throughout the United States.

16.     Defendants Irico Group Corporation and Irico Display Devices, Co., Ltd. are collectively referred to herein as "Irico."

**LG Electronics**

17.     Defendant LG Electronics, Inc. ("LG Electronics") is a Korean entity headquartered at LG Twin Towers 20, Yeouido-dong, Yeongdeungpo-gu, Seoul, South Korea 150-721.   In 2001, LG Electronics entered into a joint venture with Defendant Koninklijke Philips Electronics N.V. called LG.Philips Displays, in which the entities combined their CRT businesses.   In 2002, LG Electronics had a 24.4 percent worldwide CRT market share.   On April 1, 2007, LG.Philips Displays became an independent company and changed its name to LP Displays International, Ltd.   During the Class Period, LG Electronics manufactured, sold, and distributed CRT Products throughout the United States.

**Matsushita**

18.     Defendant Matsushita Electric Industrial Co., Ltd. ("Matsushita Electric") is a Japanese entity located at 1006, Oaza Kadoma, Kadoma-shi, Osaka 571-8501, Japan.   In 2002, Matsushita Electric entered into a joint venture with defendant Toshiba Corporation called Matsushita Toshiba Picture Display Co., Ltd. to manufacture CRTs.   Matsushita Electric was the majority owner with 64.5 percent.   On April 3, 2007, Matsushita Electric purchased the remaining 35.5 percent stake in the joint venture, making it a wholly-owned subsidiary of Matsushita Electric.   Matsushita Electric is best known for its Panasonic brand, which in 2005 had the highest CRT revenue in Japan.   During the Class Period, Matsushita Electric sold and distributed CRT Products throughout the United States.

PEARSON, SIMON, SOTER, WARSHAW & PENNY, LLP
44 MONTGOMERY STREET, SUITE 1200
SAN FRANCISCO, CALIFORNIA 94104

19.     Defendant Panasonic Corporation of North America ("Panasonic") is a Delaware corporation with its principal place of business at One Panasonic Way, Secaucus, New Jersey.   Panasonic is a wholly-owned and controlled subsidiary of defendant Matsushita Electric.   During the Class Period, Panasonic sold and distributed CRT Products manufactured by Matsushita Electric.

20.     Defendants Matsushita Electric and Panasonic are collectively referred to herein as "Matsushita."

**Orion**

21.     Defendant Orion Electric Co., Ltd. is a Japanese company with its principal place of business at 41-1 Iehisa-cho Echizen-shi Fukui 915-8555, Japan.   It is the parent company of the Orion entities.   Orion Electric, Ltd. currently manufactures CRT Products for defendant Toshiba Corporation.   During the Class Period, Orion Electric Co., Ltd. manufactured, sold, and distributed CRT Products throughout the United States.

22.     Defendant Orion America, Inc. ("Orion America") is an Indiana corporation with its principal place of business at Hwy 41 North, Orion Place, Princeton, Indiana. Orion America is a wholly-owned and controlled subsidiary of defendant Orion Electric Co., Ltd.   During the Class Period, Orion America manufactured, sold, and distributed CRT Products throughout the United States.

23.     Defendants Orion Electric Co., Ltd. and Orion America are collectively referred to herein as "Orion."

**Philips**

24.     Defendant Koninklijke Philips Electronics N.V. ("Royal Philips"), which translates to Royal Philips Electronics, is a Dutch entity with its principal place of business at Breitner Center, Amstelplein 2, 1096 BC Amsterdam, The Netherlands.   In 2000, Royal Philips was the leading global supplier of CRTs.   In 2001, Royal Philips entered into a joint venture with defendant LG Electronics called LG.Philips Displays, in which the entities combined their CRT businesses.   On April 1, 2007, LG.Philips Displays became an independent company and changed its name to LP Displays International, Ltd.   During the

CLASS ACTION COMPLAINT

1  Class Period, Royal Philips manufactured, sold, and distributed CRT Products throughout

2  the United States.

3      25.    Defendant Philips Electronics North America ("Philips America") is a

4  Delaware corporation with its principal place of business at 1251 Avenue of the Americas,

5  New York, New York, 10020.  Philips America is a subsidiary of defendant Royal Philips.

6  During the Class Period, Philips America sold and distributed CRT Products manufactured

7  by Royal Philips throughout the United States.

8      26.    Defendants Royal Philips and Philips America are collectively referred to

9  herein as "Philips."

10 **Samsung**

11     27.    Defendant Samsung SDI Co., Ltd. ("Samsung SDI") is a Korean company

12 with its principal place of business at 575 Shin-dong, Youngtong-gu Suwon, Kyonggi,

13 South Korea.  Samsung SDI is one of the largest CRT producers in the world.  Samsung

14 SDI was the top manufacturer for CRTs in 2000, with a market share of approximately

15 20%.  During the Class Period, Samsung SDI manufactured, sold, and distributed CRT

16 Products throughout the United States.

17     28.    Defendants Samsung SDI America, Inc. ("Samsung America") is a

18 California corporation with its principal place of business at 3333 Michelson Drive, Suite

19 700, Irvine, California.  Samsung America is a wholly-owned and controlled subsidiary of

20 defendant Samsung SDI.  During the Class Period, Samsung America sold and distributed

21 CRT Products manufactured by Samsung SDI throughout the United States.

22     29.    Defendants Samsung SDI and Samsung America are collectively referred to

23 herein as "Samsung."

24 **Samtel**

25     30.    Defendant Samtel Color, Ltd. ("Samtel") is an Indian company with its

26 principal place of business at 52, Community Centre, New Friends Colony, New Delhi-

27 110065.  Samtel's market share for CRTs sold in India is approximately 40%, and is that

28 country's largest exporter of CRT Products.  Samtel has gained safety approvals from the

PEARSON, SIMON, SOTER, WARSHAW & PENNY, LLP
44 MONTGOMERY STREET, SUITE 1200
SAN FRANCISCO, CALIFORNIA 94104

7

PEARSON, SIMON, SOTER, WARSHAW & PENNY, LLP
44 MONTGOMERY STREET, SUITE 1200
SAN FRANCISCO, CALIFORNIA 94104

1   United States, Canada, Germany, and Great Britain for its CRT Products.  During the Class

2   Period, Samtel manufactured, sold, and distributed CRT Products throughout the United

3   States.

4   **Thai CRT**

5   31.   Defendant Thai CRT Company, Ltd. ("Thai CRT") is a Thai company

6   located at 1/F 26 Siam Cement Rd., Bangsue Dusit, Bangkok, Thailand.  Thai CRT is a

7   subsidiary of Siam Cement Group, and it was established in 1986 as Thailand's first

8   manufacturer of CRTs for color televisions.   During the Class Period, Thai CRT

9   manufactured, sold, and distributed CRT Products throughout the United States.

10   **Toshiba**

11   32.   Defendant Toshiba Corporation ("Toshiba") is a Japanese company with its

12   principal place of business at 1-1, Shibaura 1-chome, Minato-ku, Tokyo 105-8001, Japan.

13   In 2001, Toshiba held a 5 to 10 percent worldwide market share for CRTs used in

14   televisions and in computer monitors.  In 2002, Toshiba entered into a joint venture with

15   defendant Matsushita Electric called Matsushita Toshiba Picture Display Co., Ltd., in

16   which the entities consolidated their CRT businesses.  In 2004, Toshiba entered into a

17   contract with defendant Orion whereby Orion became the supplier and maker of Toshiba-

18   branded CRT televisions.  During the Class Period, Toshiba manufactured, sold, and

19   distributed CRT Products throughout the United States.

20   **Joint Ventures**

21   33.   Defendant Beijing-Matsushita Color CRT Company, Ltd. ("BMCC") is a

22   Chinese company with its principal place of business at No. 9 Jiuxianqiao N. Rd.,

23   Dashanzi Chaoyang District, Beijing, China.  BMCC is the second largest producer of

24   CRTs for televisions in China.  During the Class Period, BMCC manufactured, sold, and

25   distributed CRT Products throughout the United States.

26   34.   Defendant Matsushita Toshiba Picture Display Co., Ltd. ("Matsushita-

27   Toshiba") is a Japanese entity located at 1-1, Saiwai-cho,. Takatsuki-shi, Osaka 569-1193,

28   Japan.  Matsushita-Toshiba was formed as a CRT joint venture between defendants

PEARSON, SIMON, SOTER, WARSHAW & PENNY, LLP
44 MONTGOMERY STREET, SUITE 1200
SAN FRANCISCO, CALIFORNIA 94104

1  Matsushita Electric and Toshiba.  On April 3, 2007, defendant Matsushita Electric

2  purchased the remaining stake in Matsushita-Toshiba, making it a wholly-owned

3  subsidiary.  During the class period, Matsushita-Toshiba manufactured, sold, and

4  distributed CRT products throughout the United States.

5       35.    Defendant LP Displays International, Ltd. ("LP Displays") is a Hong Kong

6  company located at 6th Floor, ING Tower, 308 Des Voeux Road Central, Sheung Wan,

7  Hong Kong.  LP Displays was formed as a CRT joint venture between defendants LG

8  Electronics and Royal Philips, called Philips Displays.  On April 1, 2007, LG.Philips

9  Displays became an independent company and changed its name to LP Displays.  LP

10  Displays is a leading CRT supplier, and currently produces one in every four CRT

11  televisions and computer monitors sold.  LP Displays had a worldwide CRT market share

12  of 27% in 2006.  During the Class Period, LP Displays manufactured, sold, and distributed

13  CRT Products to customers throughout the United States.

14  ### IV.   AGENTS AND CO-CONSPIRATORS

15       36.    The acts charged in this Complaint have been done by defendants or were

16  ordered or done by defendants' officers, agents, employees, or representatives, while

17  actively engaged in the management of defendants' affairs.

18  ### V.   CLASS ACTION ALLEGATIONS

19       37.    Plaintiff brings this action both on behalf of itself, and as a class action

20  pursuant to Federal Rules of Civil Procedure, Rule 23(a) and (b)(3), on behalf of the

21  following class (the "Class").

22       All persons and entities who purchased CRT Products in the United States
   directly from one or more defendants between January 1, 1995 and the

23       present.  Excluded from the Class are defendants, their parent companies,
   subsidiaries and affiliates, any co-conspirators, all governmental entities,

24       and any judges or justices assigned to hear any aspect of this action.

25       38.    The Class definition encompasses those who bought a CRT Product directly

26  from a defendant, even if the cathode ray tube contained therein was manufactured by an

27  affiliated entity, principal, agent, or co-conspirator.

28  ///

PEARSON, SIMON, SOTER, WARSHAW & PENNY, LLP
44 MONTGOMERY STREET, SUITE 1200
SAN FRANCISCO, CALIFORNIA 94104

39.   Plaintiff does not know the exact number of class members because such information is in the exclusive control of defendants.  Plaintiff believes that, due to the nature of the trade and commerce involved, there are most likely thousands of class members, geographically dispersed throughout the United States such that joinder of all class members is impracticable.

40.   Plaintiff's claims are typical of the claims of the class in that plaintiff is a direct purchaser of CRT Products, all Class members were damaged by the same wrongful conduct of defendants and their co-conspirators as alleged herein, and the relief sought is common to the class.

41.   Numerous questions of law or fact arise from defendants' anticompetitive conduct that is common to the class, including but not limited to:

    a.   Whether defendants engaged in a contract, combination, and/or conspiracy to fix, raise, maintain, or stabilize prices of CRT Products sold in the United States;

    b.   Whether defendants engaged in a contract, combination, and/or conspiracy to restrict output of CRT Products sold in the United States;

    c.   Whether defendants' conduct caused the prices of CRT Products sold in the United States to be at artificially high and noncompetitive levels;

    d.   Whether plaintiff and the other members of the Class were injured by defendants' conduct, and, if so, the appropriate class-wide measure of damages for Class members; and

    e.   Whether plaintiff and the other members of the Class are entitled to, among other things, injunctive relief, and if so, the nature and extent of such injunctive relief.

42.   These and other questions of law and fact are common to the Class, and predominate over any questions affecting only individual Class members.

10

43.    Plaintiff's claims are typical of the claims of the Class because plaintiff directly purchased CRT Products from one or more of the defendants.

44.    Plaintiff will fairly and adequately represent the interests of the Class in that plaintiff is a direct purchaser of CRT Products and has no conflict with any other members of the Class.   Furthermore, plaintiff has retained competent counsel experienced in antitrust, class action, and other complex litigation.

45.    Defendants have acted on grounds generally applicable to the Class, thereby making final injunctive relief appropriate with respect to the Class as a whole.

46.    This class action is superior to the alternatives, if any, for the fair and efficient adjudication of this controversy.   Prosecution as a class action will eliminate the possibility of repetitive litigation.   There will be no material difficulty in the management of this action as a class action.

47.    The prosecution of separate actions by individual Class members would create the risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for defendants.

## VI.    TRADE AND COMMERCE

48.    During the Class Period, each defendant, or one or more of its subsidiaries, sold CRT Products in the United States in a continuous and uninterrupted flow of interstate commerce and foreign commerce, including through and into this judicial district.

49.    During the Class Period, defendants collectively controlled a majority of the market for CRT Products, both globally and in the United States.

50.    The business activities of the defendants substantially affected interstate trade and commerce in the United States and caused antitrust injury in the United States.

## VII.    FACTUAL ALLEGATIONS

A.    **CRT Technology and Products**

51.    Greatly simplified, a cathode ray tube ("CRT") consists of a vacuum tube that is coated on its inside face with light sensitive phosphors.   An electron gun at the back of the vacuum tube emits electron beams.   When the electron beams strike the phosphors,

PEARSON, SIMON, SOTER, WARSHAW & PENNY, LLP
44 MONTGOMERY STREET, SUITE 1200
SAN FRANCISCO, CALIFORNIA 94104

PEARSON, SIMON, SOTER, WARSHAW & PENNY, LLP
44 MONTGOMERY STREET, SUITE 1200
SAN FRANCISCO, CALIFORNIA 94104

the phosphors produce either red, green, or blue light.  A system of magnetic fields inside the CRT, as well as varying voltages, direct the beams to produce the desired colors.  This process is rapidly repeated several times per second to produce the desired images.

52.    CRT technology was first developed more than a century ago.  The first commercially practical CRT television was made in 1931.  However, it was not until RCA Corporation introduced the product at the 1939 World's Fair that it became widely available to consumers.  Since then, CRTs have become the heart of most display products, including televisions, computer monitors, oscilloscopes, air traffic control monitors, and ATMs.  Even large public displays, including many scoreboards at sports arenas, are comprised of thousands of single-color CRTs.

53.    The quality of a CRT display is dictated by the quality of the CRT itself.  No external control or feature can make up for a poor quality tube.  In this regard, the CRT defines the whole product such that the product is often simply referred to as "the CRT."

54.    Early CRT televisions displayed only black and white images.  CRT technology was revolutionized in 1950 with the advent of the color CRTs.  Although there have been refinements and incremental advancements along the way since then, such as the development of thinner CRTs and CRTs with a flat screen, the CRT technology used today "is astonishingly similar to the one that RCA unveiled in 1950."[1]

55.    Until the last few years, CRTs were the dominant technology used in displays, including televisions and computer monitors.  During the Class Period, this translated into the sale of millions of CRT Products, generating billions of dollars in annual profits.  The following data was reported by Stanford Resources, Inc., a market research firm focused on the global electronic display industry.

/ / /

/ / /

_____

[1]   *See* Graham Prophet, *Farewell to the CRT,* EDN Europe (February 2006).

| Year | Units Sold (millions) | Revenue (billion US dollars) | Average Selling Price Per Unit |
|------|----------------------|------------------------------|--------------------------------|
| 1998 | 90.5 | $18.9 | $208 |
| 1999 | 106.3 | $19.2 | $181 |
| 2000 | 119.0 | $28.0[2] | $235 |

## B.  Oligopolistic Nature of the CRT Industry

56.     During the Class Period, the CRT industry has been dominated by relatively few companies.  In 2002 for example, three companies – defendants LP Displays (formerly known as LG.Philips Displays), Samsung, and Chunghwa – controlled approximately 62 percent of the CRT market.  In addition to these three companies, the other named defendants formed a substantial portion of the remaining CRT market.

| Company | Share |
|---------|-------|
| LG.Philips Displays | 27% |
| Samsung SDI | 24% |
| Chunghwa Picture Tubes | 11% |
| Japanese Producers[3] | 15% |
| Other | 23% |

**Source: The Electronic Times, compiled by DigiTimes, June 2002**

57.     The CRT industry also had significant consolidation during the Class Period, including but not limited to: (a) the creation of LG.Philips Displays in 2001, which was a joint venture between Philips and LG Electronics' CRT businesses; (2) the 2002 merger of Toshiba and Matsushita into Matsushita-Toshiba; and (c) Orion's agreement to manufacture CRT Products for Toshiba, which effectively took Toshiba's capacity out of the market.

---

[2]   Estimated market value of CRT units sold.

[3]   "Japanese Producers" includes defendants Hitachi and Toshiba.

PEARSON, SIMON, SOTER, WARSHAW & PENNY, LLP
44 MONTGOMERY STREET, SUITE 1200
SAN FRANCISCO, CALIFORNIA 94104

13

PEARSON, SIMON, SOTER, WARSHAW & PENNY, LLP
44 MONTGOMERY STREET, SUITE 1200
SAN FRANCISCO, CALIFORNIA 94104

58.     This concentration of market share facilitated defendants' ability to implement the conspiracy.  Involvement in long-standing joint ventures, both in the CRT market and closely related markets, also gave these supposed competitors continuous opportunities to discuss pricing, capacity utilization, and other important prospective market information.  The mutually beneficial nature of the business relations between certain defendants not only provided the opportunity to conspire; it also created a financial incentive to do so.

**C.     High Level of Cooperation in the CRT Industry**

59.     The CRT industry is marked by a high degree of cooperation among supposed competitors.  As stated above, many of the major competitors have joint ventures that involve other competitors, either in the CRT market or in closely related markets. Additionally, several of the major players obtain CRTs from the same Indian company – defendant Samtel.

60.     One of the most striking examples of cooperation between competitors in the CRT market involves the non-defendant, TPV Holdings, Inc. ("TPV").  TPV bills itself as the world's largest producer of CRT monitors.  TPV has a series of joint ventures with defendant Philips, which, as alleged above, has joint ventures with defendant LG.  In addition, TPV also has joint ventures with defendant CPT and another major Taiwanese manufacturer, HannStar.

61.     Defendant Chunghwa, in turn, has a long-standing joint venture with defendant Samsung's corporate parent for the production of liquid crystal display panels. Defendant Chunghwa now licenses technology from defendant Philips, although this is a recent development that helped resolve a patent infringement suit filed in 2002.

62.     Defendant Samsung's corporate family has a very long-standing relationship with Chinese state-owned picture tube manufacturers, dating back to a 1993 joint venture.

63.     Defendant LG Electronics and Hitachi, Ltd. entered into a joint venture in 2000 for the manufacture, sale, and distribution of optical storage products such as DVD drives.

PEARSON, SIMON, SOTER, WARSHAW & PENNY, LLP
44 MONTGOMERY STREET, SUITE 1200
SAN FRANCISCO, CALIFORNIA 94104

64.     Defendant Samtel participates in a joint venture, Samcor Glass Limited, with defendant Samsung's corporate parent and non-defendant Corning Inc., USA for the production and supply of picture tube glass.

65.     Defendant Orion participates in a joint venture for the manufacture of CRT products with defendant Toshiba, as well as non-defendants P.T. Tabung Gambar Indonesia and Japanese trading company Sumitomo Corporation.

66.     Furthermore, at least four of the competitors obtain picture tubes from the same Indian company.  Defendant Samtel claims to have supplied CRTs to defendants LG, Samsung, Philips, and Matsushita during at least part of the Class Period.

67.     In addition to these formalized business relationships, defendants maintain close relationships through common membership in trade associations.  For example, defendants Chunghwa, Hitachi, and Samsung are all members of the Society for Information Display.  Defendants Samsung and LG Electronics are two of the co-founders of the Korea Display Industry Association.  Similarly, defendants Orion, LG Electronics, LP Displays (formerly LG.Philips Displays), and Samsung are members of the Electronic Display Industrial Research Association.  Defendants used these common memberships as vehicles for discussing, and agreeing upon, their pricing for CRT Products.  In particular, defendants, through these trade associations, and in meetings related to these trade associations, shared what would normally be considered proprietary and competitively sensitive information.  This exchange of information was used to implement and monitor the conspiracy.

**D.     The Impact of Emerging Flat Panel Technologies**

68.     CRT televisions require a deep cabinet to accommodate the vacuum tube assembly.  In the 1990s, technological innovations allowed companies to introduce flat panel displays that would be slimmer and less bulky than CRT displays.  Flat panel displays were introduced in consumer products such as computer monitors and televisions.  Before their introduction, CRTs had dominated the market for these applications.

/ / /

PEARSON, SIMON, SOTER, WARSHAW & PENNY, LLP
44 MONTGOMERY STREET, SUITE 1200
SAN FRANCISCO, CALIFORNIA 94104

69.     As the established technology, CRTs had a price advantage over these new technologies.   Unlike an emerging industry where participants must invest heavily in research, development, and bringing capacity online, the CRT industry made and recouped such investments well before the start of the Class Period.  Thus, CRT manufacturers had very little debt or interest expense on their facilities, and the pressure to produce at full capacity (to avoid default) was lessened.  This provided an environment in which collusion to fix prices, even at the risk of lower demand, was possible.

70.     The CRT industry faced significant market pressures and reduced profitability during the Class Period.  As stated in a September 25, 2001 article entitled *Report: CRT Revenue to plunge*:

> After decades of growth, revenue from cathode ray tube monitors is expected to drop significantly over the next several years ... 'A combination of price erosion, a slowing in the movement to large screens, and a gradual shift in market opportunities from developed regions to developing regions is causing the drop in revenue,' Stanford Resources analyst Rhonda Alexander said Tuesday.  The growing popularity of flat panel monitors will also have an effect on CRT revenue.[4]

71.     In 2006, market research firm iSuppli Corp. predicted that sales of LCD televisions in 2007 would, for the first time, surpass sales of CRT televisions.  The firm forecasted that sales of CRTs would fall from an estimated 14.4 million units in 2006 to 10.4 million units in 2007.  iSuppli predicted that CRT televisions would account for only 2.1 million of the 44 million televisions sold in 2010.

72.     CRTs still remain popular in schools and other public areas for their combination of price and durability, as well as in developing countries like China.  CRT technology is also holding its own in the area of low-cost monitor and smaller size televisions.  According to DisplaySearch Inc., a Texas based research firm, CRTs will maintain a 65 percent share of 25-inch to 29-inch displays sold in 2009, whereas CRTs will have only a 1 percent share of 35-inch to 39-inch displays sold in 2009.

---

[4]     Shim, Richard, *Report: CRT Revenue to plunge*, ZDNet News (Sep 25, 2001) (*available at* http://news.zdnet.com/2100-9595_22-812906.html) (last viewed on November 13, 2007).

CLASS ACTION COMPLAINT

PEARSON, SIMON, SOTER, WARSHAW & PENNY, LLP
44 MONTGOMERY STREET, SUITE 1200
SAN FRANCISCO, CALIFORNIA 94104

73.     DisplaySearch Inc. further estimates that the worldwide capacity to manufacture CRTs will fall from over 250 million units in 2006 to less than 150 million units by 2010.   At various times during the conspiracy, in order to keep prices high, defendants colluded to restrain output of CRTs as alleged below.

**E.     Reductions in Manufacturing Capacity by Defendants**

74.     During the Class Period, the defendants herein consolidated their manufacturing facilities in lower-cost venues such as China and reduced manufacturing capacity to prop up prices.

75.     On July 15, 2003, Mitsubishi Electric closed a CRT plant in northern Mexico, just five years after the plant was opened.   The plant's closure resulted in a loss of capacity to manufacture 2.7 million CRTs a year for 17-inch computer monitors.   This was one of the principal applications for CRTs during this time period.

76.     In December 2004, Matsushita Toshiba closed its American subsidiary's operations in Horseheads, New York citing price and market erosion.   Matsushita announced that the closing was part of the company's "global restructuring initiatives in the CRT business."   The company further stated that in the future, "CRTs for the North American market will be supplied by other manufacturing locations in order to establish an optimum CRT manufacturing structure."

77.     In December 2004, Toshiba announced that it too would discontinue manufacturing traditional CRT televisions.   Thereafter, Toshiba contracted to have Orion manufacture all Toshiba-brand CRT televisions.

78.     In July 2005, LG Philips ceased CRT production at its Durham, England facility, citing a shift in demand from Europe to Asia.

79.     In December 2005, Matsushita-Toshiba announced it would close its American subsidiary's operations in Ohio, as well as operations in Germany, by early 2006.   Like LG Philips, the company explained that it was shifting its CRT operations to Asian and Chinese markets.

/ / /

PEARSON, SIMON, SOTER, WARSHAW & PENNY, LLP
44 MONTGOMERY STREET, SUITE 1200
SAN FRANCISCO, CALIFORNIA 94104

80.     In late 2005, Samsung SDI followed the lead of other manufacturers and closed its CRT factory in Germany.

81.     In July 2006, Orion America shut down a CRT manufacturing plant in Princeton, Indiana. The same month, Matsushita announced it was shutting down its CRT factory in Malaysia and liquidate its joint venture with Toshiba.

## F.     Defendants Collude on Prices for CRTs

82.     Plaintiff is informed and believes, and thereon alleges, that in order to control and maintain profitability during declining demand for CRTs, defendants conspired to fix, raise, maintain, and stabilize the price at which CRT Products were sold in the United States at artificially inflated and anticompetitive levels.

83.     Defendants' collusion is evidenced by unusual price movements in the CRT market. In the 1990s, industry analysts repeatedly predicted declines in consumer prices for CRTs that did not fully materialize. For example, in 1992, an analyst for Market Intelligent Research Corporation predicted that "[e]conomies of scale, in conjunction with technological improvements and advances in manufacturing techniques, will produce a drop in the price of the average electronic display to about $50 in 1997." Information Display 9/92 p. 19. Despite such predictions, and the existence of economic conditions warranting a drop in prices, CRT prices nonetheless remained stable.

84.     In 1996, another industry source noted that "the price of the 14" tube is at a sustainable USD50 and has been for some years . . . ."

85.     In reality, consumer prices for CRT monitors never approached $50 in 1997, and were consistently more than double this price.

86.     Despite the ever-increasing popularity of, and intensifying competition from, flat panel monitors, prices for CRT monitors were "stuck stubbornly at high price levels" throughout 1995 according to a *CNET News.com* article. This price stabilization was purportedly due to a shortage of critical components such as glass. This was a pretext used to cover up the conspiracy.

/ / /

PEARSON, SIMON, SOTER, WARSHAW & PENNY, LLP
44 MONTGOMERY STREET, SUITE 1200
SAN FRANCISCO, CALIFORNIA 94104

87.     Prices for CRT monitors did fall sharply as a result of the Asian economic crisis of 1998, which severely devalued Asian currencies.  This prompted the keynote speaker at Asia Display 1998, an annual conference for the display industry, to state:

> We believe that now is the time to revise our strategic plan in order to survive in this tough environment and also to prepare for the coming years. This means that we have to deviate from the traditional approach of the simple scale up of production volume.

88.     In early 1999, despite declining production costs and the rapid entry of flat panel display products, the price of large-sized color CRTs actually rose.  The price increase was allegedly based on increasing global demand for the products.  In fact, this price rise was the result of collusive conduct amongst defendants.

89.     After experiencing an oversupply of 17-inch CRTs in the second half of 1999, the average selling price of CRTs rose again in early 2000.  A March 13, 200 article in *Infotech Weekly* quoted an industry analyst as saying that this price increase was "unlike most other PC-related products."

90.     On June 1, 2004, LG Electronics raised the prices of its 15-inch and 17-inch CRT monitors in India.  This price hike was falsely attributed to a shortage of glass needed to manufacture CRTs.

91.     Over the course of the conspiracy period, the price of CRTs remained stable, and in some instances went up in an unexplained manner, despite the natural trend in most technology products to go down over time.  CRT technology was mature, and the costs of production were relatively low compared to other emerging technologies.  And yet, CRT prices resisted downward price pressures and remained stable over a period of many years. Even in periods of decreasing prices caused by outside factors, such as the Asian currency crisis, the prices of CRT Products did not decline as much as they would have absent the conspiracy.   The  stability  of  the  price  of  CRTs  was  accomplished  by  defendants exchanging information about their prices, price moves, contract prices to large customers; capacity, capacity utilization, as well as technological and manufacturing advances.  These discussions amongst defendants occurred through e-mail communications, telephone calls,

CLASS ACTION COMPLAINT

and in person meetings.  This price stability for the period of 2004 to 2007 is depicted in the following charts of average sale prices ("ASP"):

### ASP of Small (10" - 21") SD CRTs Sold in North America



### ASP of Medium (22" - 29") SD CRTs Sold in North America



PEARSON, SIMON, SOTER, WARSHAW & PENNY, LLP
44 MONTGOMERY STREET, SUITE 1200
SAN FRANCISCO, CALIFORNIA 94104

**G.     International Antitrust Investigations**

92.     Defendants have been the subject of multiple government investigations for their cartel activity in recent years.  For example, Samsung admitted guilt and paid a $300 million fine following an investigation by the United States Department of Justice ("DOJ") into price-fixing among manufacturers of dynamic random access memory ("DRAM") computer chips.  In addition, Samsung, Hitachi and Toshiba have all acknowledged being contacted by the DOJ as part of an ongoing investigation into collusion among manufacturers of static random access memory ("SRAM") computer chips.

93.     More recently, the DOJ has commenced an investigation of Samsung, Toshiba and Hitachi, among others, concerning collusion among manufacturers of thin film transistor liquid crystal display ("TFT-LCDs") and flash memory computer chips.

94.     Plaintiff is informed and believes, and thereon alleges, that defendants are currently under investigation by government authorities around the world for anticompetitive conduct in connection with the CRT industry.  Plaintiff is further informed and believes, and thereon alleges, that the US investigation of the CRT conspiracy is being conducted by the DOJ's Antitrust Division in the Northern District of California.

95.     On November 8, 2007, *Bloomberg.com* reported that European Commission officials carried out unannounced raids on manufacturers of CRTs based on suspected anticompetitive conduct.  That same day, the European Commission issued a press release stating that, "The commission has reason to believe that the companies concerned may have violated EU rules against price-fixing, sharing markets or exchanging market information."[5]

96.     On November 9, 2007, defendants Matsushita Electric and Samsung reported that they were cooperating with Japanese antitrust authorities who reportedly raided the

---

[5]     *See* Newman, Matthew, *EU, Japan Raid Cathode-Ray Tube Makers in Cartel Case,* bloomberg.com (November 8, 2007) (*available at* http://www.bloomberg.com/apps/news?pid=email_en&refer=japan&sid= aEJ8N7GKCk8I).

CLASS ACTION COMPLAINT

1   companies' CRT production facilities on suspicion of anticompetitive conduct.[6]

2       97.    Similarly, on November 12, 2007, defendant Chunghwa announced that it

3   had received a summons from the DOJ for involvement in a CRT price-fixing cartel.[7]

4       98.    Finally, on November 21, 2007, defendant Philips acknowledged that it is

5   being investigated as well.  The *International Herald Tribune* reported that "competition

6   authorities in several jurisdictions had started investigations," and that the company

7   "would assist regulators."

8   **H.    Effects of Defendants' Antitrust Violations**

9       99.    The above combination and conspiracy has had the following effects, among

10  others:

11          a.    Price competition in the sale of CRT Products by defendants and their

12                co-conspirators has been restrained, suppressed and eliminated

13                throughout the United States;

14          b.    Prices for CRT Products sold by defendants has been raised, fixed,

15                maintained and stabilized at artificially high and noncompetitive levels

16                throughout the United States; and

17          c.    Direct purchasers of CRT Products from defendants have been

18                deprived of the benefit of free and open competition in the purchase of

19                CRT Products.

20      100.    As a direct and proximate result of the unlawful conduct of defendants,

21  plaintiff and other members of the class have been injured in their business and property in

22  that they paid more for CRT Products than they otherwise would have paid in the absence

23  of the unlawful conduct of defendants.

---

25  [6]    *See* Soble, Jonathan and Song, Jung-a, *Matsushita and Samsung Under Investigation*, Financial Times
    (November 9, 2007) (*available at* http://www.ft.com/cms/s/0/c5237446-8e72-11dc-8591-0000779fd2ac.
26  html).

27  [7]    *See* Chuang, Emily, *CPT Receives Notification of CRT Price-Fixing Matter in US*, Digitimes
    (November 12, 2007) (*available at* http://www.digitimes.com/print/a20071112PM200.html).

28

PEARSON, SIMON, SOTER, WARSHAW & PENNY, LLP
44 MONTGOMERY STREET, SUITE 1200
SAN FRANCISCO, CALIFORNIA 94104

PEARSON, SIMON, SOTER, WARSHAW & PENNY, LLP
44 MONTGOMERY STREET, SUITE 1200
SAN FRANCISCO, CALIFORNIA 94104

**I.      Fraudulent Concealment**

101.    Plaintiff had neither actual nor constructive knowledge of the facts constituting their claim for relief despite diligence in trying to discover the pertinent facts. Plaintiff and members of the Class did not discover, and could not have discovered through the exercise of reasonable diligence, the existence of the conspiracy alleged herein until November of 2007, when investigations by the European Commission and Japanese Authorities became public.  Defendants engaged in a secret conspiracy that did not give rise to facts that would put plaintiff or the Class on inquiry notice that there was a conspiracy to fix prices for CRTs.

102.    Plaintiff is informed believes and thereon alleges that defendants had secret discussions about price and output.  Defendants agreed not to publicly discuss the nature of the scheme and gave pretextual justifications for the inflated prices of CRTs in furtherance of the conspiracy.

103.    As alleged above, in early 1999, despite declining production costs and the rapid entry of flat panel display products, the price of large-sized color CRTs actually rose. The price increase was allegedly based on increasing global demand for the products.  In fact, this price rise was the result of collusive conduct amongst defendants, which was undisclosed at the time.

104.    As alleged above, despite increased competition from flat panel monitors, prices for CRT monitors were "stuck stubbornly at high price levels" throughout 2001. This price stabilization was purportedly due to a shortage of critical components such as glass.  This was a pretext used to cover up the conspiracy.

105.    In addition, when several CRT manufacturers, including defendants Samsung, Philips, and LG Electronics, increased the price of CRT Products in 2004, the price hike was blamed on a shortage of glass shells use for manufacturing CRT monitors. In justifying this price increase, a Deputy General Manager for an LG Electronics

///

///

1   distributor in India stated, "This shortage [of glass shells] is a global phenomena and every

2   company has to increase the prices of CRT monitors in due course of time."[8]

3       106.   Plaintiff is informed believes and thereon alleges that defendants' purported

4   reasons for the price increases of CRTs were materially false and misleading and made for

5   the purpose of concealing defendants' anti-competitive scheme as alleged herein.

6   As a result of defendants' fraudulent concealment of their conspiracy, the running of any

7   statue of limitations has been tolled with respect to any claims that plaintiff and the Class

8   members have as a result of the anticompetitive conduct alleged in this

9       **VIII.   CLAIM FOR VIOLATIONS OF 15 U.S.C. § 1**

10      107.   Plaintiff incorporates by reference all the above allegations as if fully set

11  forth herein.

12      108.   Beginning at least as early as January 1, 1995, the exact date being unknown

13  to plaintiff and exclusively within the knowledge of defendants, defendants and their co-

14  conspirators entered into a continuing contract, combination or conspiracy to unreasonably

15  restrain trade and commerce in violation of Section 1 of the Sherman Act (15 U.S.C. § 1)

16  by artificially reducing or eliminating competition in the United States.

17      109.   In particular, defendants have combined and conspired to raise, fix, maintain

18  or stabilize the prices of CRT Products sold in the United States.

19      110.   As a result of defendants' unlawful conduct, prices for CRT Products were

20  raised, fixed, maintained and stabilized in the United States.

21      111.   The contract, combination or conspiracy among defendants consisted of a

22  continuing agreement, understanding and concerted action among defendants and their co-

23  conspirators.

24  ///

25

26

27  [8]  *See* Das, Shilpi, *Major Monitor Manufacturers hike CRT prices, LG follows Suit*  (May 26, 2004)
    (available at http://www.techtree.com/India/News/Major_Monitor_Manufacturers_hike_CRT_prices_LG_
    follows_Suit/551-52715-581.html) (*last viewed on* November 19, 2007).

28

PEARSON, SIMON, SOTER, WARSHAW & PENNY, LLP
44 MONTGOMERY STREET, SUITE 1200
SAN FRANCISCO, CALIFORNIA 94104

112.    For purposes of formulating and effectuating their contract, combination or conspiracy, defendants and their co-conspirators did those things they contracted, combined, or conspired to do, including:

    a.   Participating in meetings and conversations to discuss the prices and supply of CRT Products;

    b.   Communicating in writing and orally to fix prices;

    c.   Agreeing to manipulate prices and supply of CRT Products sold in the United States in a manner that deprived direct purchasers of free and open competition;

    d.   Issuing price announcements and price quotations in accordance with the agreements reached;

    e.   Selling CRT Products to customers in the United States at non-competitive prices; and

    f.   Providing false statements to the public to explain increased prices for CRT Products.

113.    As a result of defendants' unlawful conduct, plaintiff and the other members of the Class have been injured in their businesses and property in that they have paid more for CRT Products than they otherwise would have paid in the absence of defendants' unlawful conduct.

## IX.    DAMAGES

114.    During the Class Period, plaintiff and the other members of the class purchased CRTs directly from defendants, or their subsidiaries, agents, and/or affiliates, and, by reason of the antitrust violations herein alleged, paid more for such products than they would have paid in the absence of such antitrust violations.  As a result, plaintiff and the other members of the Class have sustained damages to their business and property in an amount to be determined at trial.

/ / /

/ / /

PEARSON, SIMON, SOTER, WARSHAW & PENNY, LLP
44 MONTGOMERY STREET, SUITE 1200
SAN FRANCISCO, CALIFORNIA 94104

X.   **PRAYER FOR RELIEF**

WHEREFORE, plaintiff prays that the Court enter judgment on its behalf and on behalf of the Class herein, adjudging and decreeing that:

A.     This action may proceed as a class action, with plaintiff as the designated Class representative and its counsel as Class Counsel;

B.     Defendants have engaged in a contract, combination, and conspiracy in violation of Section 1 of the Sherman Act (15 U.S.C. § 1), and that plaintiff and the members of the Class have been injured in their business and property as a result of defendants' violations;

C.     Plaintiff and the members of the Class recover damages sustained by them, as provided by the federal antitrust laws, and that a joint and several judgment in favor of plaintiff and the Class be entered against the defendants in an amount to be trebled in accordance with such laws;

D.     Defendants, their subsidiaries, affiliates, successors, transferees, assignees and the respective officers, directors, partners, agents, and employees thereof and all other persons acting or claiming to act on their behalf be permanently enjoined and restrained from continuing and maintaining the combination, conspiracy, or agreement alleged herein;

E.     Plaintiff and members of the Class be awarded pre-judgment and post-judgment interest, and that such interest be awarded at the highest legal rate from and after the date of service of the initial complaint in this action;

F.     Plaintiff and members of the Class recover their costs of this suit, including reasonable attorneys' fees as provided by law; and

G.     Plaintiff and members of the Class receive such other or further relief as may be just and proper.

/ / /

/ / /

/ / /

PEARSON, SIMON, SOTER, WARSHAW & PENNY, LLP
44 MONTGOMERY STREET, SUITE 1200
SAN FRANCISCO, CALIFORNIA 94104

1

## XI.   JURY TRIAL DEMANDED

2      Pursuant to Federal Rule of Civil Procedure 38(b), plaintiff demands a trial by jury

3   of all of the claims asserted in this Complaint so triable.

4

5   DATED:  November 26, 2007              By:  _____

6                                              Bruce L. Simon (Bar No. 92641)
                                                 bsimon@psswplaw.com
7                                              Esther L. Klisura (Bar No. 221171)
                                                 eklisura@psswplaw.com
8                                              PEARSON, SIMON, SOTER,
                                                 WARSHAW & PENNY, LLP
9                                              44 Montgomery Street, Suite 1200
                                               San Francisco, CA 94104
10                                             Telephone:  (415) 433-9000
                                               Facsimile:  (415) 433-9008
11

12                                             Clifford H. Pearson (Bar No. 108523)
                                                 cpearson@psswplaw.com
13                                             Gary S. Soter (Bar No. 67622)
                                                 gsoter@psswplaw.com
14                                             Daniel L. Warshaw (Bar No. 185365)
                                                 dwarshaw@psswplaw.com
15                                             PEARSON, SIMON, SOTER,
                                                 WARSHAW & PENNY, LLP
16                                             15165 Ventura Boulevard, Suite 400
                                               Sherman Oaks, CA 91403
17                                             Telephone:  (818) 788-8300
                                               Facsimile:  (818) 788-8104

18

19                                             P. John Brady
                                                 jbrady@stklaw.com
20                                             Daniel D. Owen
                                                 dowen@stklaw.com
21                                             SHUGHART THOMSON &
                                                 KILROY, P.C.
22                                             Twelve Wyandotte Plaza
                                               120 West 12th Street
23                                             Kansas City, Missouri 64105
                                               Telephone:  (816) 421-3355
24                                             Facsimile:  (816) 374-0509

25                                             *Attorneys for Plaintiff and the Proposed
                                               Direct Purchaser Class*

26

27

28

PEARSON, SIMON, SOTER, WARSHAW & PENNY, LLP
44 MONTGOMERY STREET, SUITE 1200
SAN FRANCISCO, CALIFORNIA 94104

CLASS ACTION COMPLAINT

# EXHIBIT B

COPY

1  Richard M. Heimann (State Bar No. 063607)
   *rheimann@lchb.com*
2  Joseph R. Saveri (State Bar No. 130064)
   *jsaveri@lchb.com*
3  Eric B. Fastiff (State Bar No. 182260)
   *efastiff@lchb.com*
4  LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
   275 Battery Street, 30th Floor
5  San Francisco, CA 94111-3339
   Telephone: (415) 956-1000
6  Facsimile: (415) 956-1008

7  H. Laddie Montague, Jr.
   *hlmontague@bm.net*
8  Ruthanne Gordon
   *rgordon@bm.net*
9  Candice Enders
   *cenders@bm.net*
10 BERGER & MONTAGUE, P.C.
   1622 Locust Street
11 Philadelphia, PA 19103
   Telephone: (215) 875-3000
12 Facsimile: (215) 875-4604

13 Attorneys for Individual and Representative Plaintiff Nathan Muchnick, Inc.

14                 UNITED STATES DISTRICT COURT

15              NORTHERN DISTRICT OF CALIFORNIA

16 NATHAN MUCHNICK, INC., on behalf of itself and     Case No.
   all others similarly situated,
17                                                    CV 07 5981
18                        Plaintiff,
                                                      **CLASS ACTION COMPLAINT**
19 v.
                                                      **DEMAND FOR JURY TRIAL**
20 CHUNGHWA PICTURE TUBES, LTD.;
   TATUNG COMPANY OF AMERICA, INC.;
21 LG ELECTRONICS, INC.; LG PHILIPS DISPLAY
   USA, INC.; MATSUSHITA ELECTRIC
22 INDUSTRIAL CO., LTD.; PANASONIC
   CORPORATION OF NORTH AMERICA;
23 KONINKLIJKE PHILIPS ELECTRONICS N.V.;
   PHILIPS ELECTRONICS NORTH AMERICA
24 CORPORATION; SAMSUNG ELECTRONICS CO.,
   LTD.; SAMSUNG ELECTRONICS AMERICA,
25 INC.; SAMSUNG SDI CO., LTD. f/k/a SAMSUNG
   DISPLAY DEVICE CO.; TOSHIBA
26 CORPORATION; TOSHIBA AMERICA
   ELECTRONICS COMPONENTS, INC.; TOSHIBA
27 AMERICA INFORMATION SYSTEMS, INC.;

28 (caption continues on next page)

739154.2

MEJ

E-filing

MT PICTURE DISPLAY COMPANY;
MT PICTURE DISPLAY CORPORATION OF
AMERICA (New York); MT PICTURE DISPLAY
CORPORATION OF AMERICA (Ohio); and
LP DISPLAYS,

Defendants.

Plaintiff Nathan Muchnick, Inc. ("Plaintiff") individually and on behalf of the

Class described below, brings this action for treble damages and injunctive relief against

Defendants, and demanding a trial by jury, alleges on information and belief to all matters except

those stated in paragraph 9, which are based on personal knowledge, as follows:

## NATURE OF THE CASE

1.      Plaintiff brings this lawsuit as a class action on behalf of individuals and

entities who purchased directly cathode-ray tubes ("CRTs") and products containing CRTs

(jointly, "CRT Products") in the United States from Defendants during the period from at least

May 1, 1998 through the present (the "Class Period").  CRTs are used in a number of products,

including but not limited to, computer monitors and televisions.  As used herein, "CRT Products"

refers to CRTs and products containing CRTs manufactured by any of the named Defendants or

their subsidiaries or affiliates.

2.      During the Class Period, Defendants' collusive behavior artificially inflated

the price of CRT Products.  In particular, Defendants participated in cartel behavior and colluded

to fix the prices of CRT Products.

3.      Throughout the Class Period, Defendants' conspiracy was intended to, and

did, moderate the downward price pressures on CRT Products caused by the market entry and

rapid penetration of more technologically advanced competitive products. As explained in further

detail below, liquid crystal displays ("LCD") and plasma display panels ("PDP") were used in the

same primary applications as CRTs and presented significant advantages over CRT Products.

LCD, PDP and products containing LCD or PDP will collectively be referred to as flat panel

display products ("FPD Products"). Many of the Defendants, in addition to manufacturing,

distributing and selling CRT Products, were also manufacturers, distributors, and sellers of FPD Products.  Defendants who participated in both the market for CRT Products and the market for FPD Products will be specifically identified below.

4.    California is a major center of the international technology industry. Because of Defendants' unlawful conduct and conspiracy, Plaintiff and other members of the Class paid artificially inflated prices for CRT Products.  Plaintiff and other members of the Class who purchased these products have therefore been damaged by Defendants' illegal actions.

## JURISDICTION AND VENUE

5.    Plaintiff brings this action pursuant to Section 4 of the Clayton Act, 15 U.S.C. § 15, for treble damages as well as reasonable attorneys' fees and costs of suit, for Defendants' violation of section 1 of the Sherman Act, 15 U.S.C. § 1.

6.    Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1337, and by section 4 of the Clayton Act, 15 U.S.C. § 15(a).

7.    This Court has *in personam* jurisdiction over each of the Defendants because each was engaged in an illegal price-fixing scheme and conspiracy that was directed to and/or caused injury to persons or entities residing in, located in, or doing business in this District and throughout the United States.

8.    Venue is proper in this District pursuant to 15 U.S.C. §§ 15(a) and 22, 28 U.S.C. § 1391(b), (c), and (d) and Local Rules of the United States District Court for the Northern District of California 3-2 because during the Class Period, one or more of the Defendants resided, transacted business, was found, or had agents in this district, and because a substantial part of the events giving rise to Plaintiff's claims occurred, and a substantial portion of the affected interstate trade and commerce described below was carried out in this District.

## THE PARTIES

### A.    The Plaintiff

9.    Plaintiff Nathan Muchnick, Inc. was a corporation organized and existing under the laws of the Commonwealth of Pennsylvania and had its principal place of business at 1725 Chestnut Street, Philadelphia, PA 19103.  Nathan Muchnick, Inc. directly purchased CRT

Products from one or more of the Defendants during the Class Period and was injured as a result of Defendants' illegal conduct.

### B.   The Defendants

#### 1.   Chunghwa

10.     Defendant Chunghwa Picture Tubes, Ltd. ("Chunghwa") is a Taiwanese company with its principal place of business at 1127 Heping Road, Bade City, Taoyuan, Taiwan. It is a partially owned subsidiary of Tatung Company, a consolidated consumer electronics and information technology company based in Taiwan.  Chunghwa's Board of Directors includes representatives from Tatung Company.  The Chairman of Chunghwa, Weishan Lin, is also the Chairman and General Manager of Tatung Company.  During the Class Period, Chunghwa manufactured, sold, and distributed CRT Products to customers throughout the United States. Chunghwa also manufactured, distributed and sold FPD Products in the United States during the Class Period.

11.     Defendant Tatung Company of America, Inc. is a California corporation with its principal place of business at 2850 El Presidio Street, Long Beach, California.  Tatung Company of America, Inc. is a wholly-owned and controlled subsidiary of Tatung Company. During the Class Period, Tatung Company of America, Inc. manufactured, sold, and distributed CRT Products to customers throughout the United States.  Tatung Company of America, Inc. also manufactured, distributed and sold FPD Products in the United States during the Class Period.

#### 2.   LG

12.     Defendant LG Electronics, Inc. ("LGE"), is a manufacturer of CRT Products with its global headquarters located at LG Twin Towers 20, Yeouido-dong, Yeongdeungpo-gu, Seoul, Korea 150-721.  During the Class Period, LGE manufactured, sold and distributed CRT Products to customers throughout the United States.  LGE also manufactured, distributed and sold FPD Products in the United States during the Class Period.

#### 3.   Matsushita

13.     Defendant Matsushita Electric Industrial Co., Ltd ("Matsushita") is a Japanese company and has its global headquarters at 1006 Kadoma, Osaka 571-8501, Japan.

1  Matsushita is the parent company of Panasonic Corporation of North America, JVC Company of

2  America, and Victor Company of Japan, Ltd.  During the Class Period, Matsushita manufactured,

3  sold and distributed CRT Products to customers throughout the United States.  Matsushita also

4  manufactured, distributed and sold FPD Products in the United States during the Class Period.

5          14.     Defendant Panasonic Corporation of North America  ("Panasonic"), is a

6  subsidiary of Defendant Matsushita and oversees its North American business operations,

7  including sales.  Defendant Panasonic has its global headquarters at 1 Panasonic Way, Secaucus,

8  New Jersey 07094.  During the Class Period, Panasonic manufactured, sold and distributed CRT

9  Products to customers throughout the United States.  A substantial portion of the CRTs produced

10  by MT Picture Displays Co., Matsushita's subsidiary, went to Panasonic for Panasonic's

11  production of CRT Products.  Panasonic also manufactured, distributed and sold FPD Products in

12  the United States during the Class Period.

13              **4.      Philips**

14          15.     Defendant Koninklijke Philips Electronics N.V. ("Koninklijke") has its

15  global headquarters at Breitner Center Amstelplein 2, Amsterdam 1096 BC, Netherlands.  During

16  the Class Period, Koninklijke manufactured, sold and distributed CRT Products to customers

17  throughout the United States.  Koninklijke also manufactured, distributed and sold FPD Products

18  in the United States during the Class Period.

19          16.     Defendant Philips Electronics North America Corporation ("Philips

20  Electronics NA"), is a manufacturer of CRT Products.  Defendant Philips Electronics NA has its

21  global headquarters at 1251 Avenue of the Americas, New York, New York 10020.  During the

22  Class Period, Philips Electronics NA manufactured, sold and distributed CRT Products to

23  customers throughout the United States.  Philips Electronics NA also manufactured, distributed

24  and sold FPD Products in the United States during the Class Period.

25          17.     Defendant LG Philips Display USA, Inc.  ("LGPD"), is a manufacturer of

26  CRT Products and is a subsidiary of Philips Electronics NA.  Defendant LG Philips Display

27  USA, Inc has its global headquarters at 300 W Morgan Rd, Ann Arbor, MI 48108-9108, United

28

States.  During the Class Period, LGPD manufactured, sold and distributed CRT Products to customers throughout the United States.

**5.**     **Samsung**

18.     Defendant Samsung Electronics Co., Ltd. ("Samsung Electronics") is a Korean company with its principal place of business at Samsung Main Building, 250, Taepyeongno 2-ga, Jung-gu, Seoul 100-742, Korea.  It is the world's largest producer of CRT Products.  During the Class Period, Samsung Electronics manufactured, sold, and distributed CRT Products to customers throughout the United States.  Samsung Electronics also manufactured, distributed and sold FPD Products in the United States during the Class Period.

19.     Defendant Samsung SDI Co., Ltd. ("Samsung SDI"), formerly known as Samsung Display Device Co., has its global headquarters at Samsung Life Insurance Bldg 150, Seoul 100-716, Korea.  During the Class Period, Samsung SDI manufactured, sold and distributed CRT Products to customers throughout the United States.  Samsung SDI also manufactured, distributed and sold FPD Products in the United States during the Class Period.

20.     Defendant Samsung Electronics America, Inc. ("Samsung America") is a New York corporation with its principal place of business at 105 Challenger Road, Ridgefield Park, New Jersey.  Samsung America is a wholly-owned and controlled subsidiary of Defendant Samsung Electronics Company, Ltd.  During the Class Period, Samsung America sold and distributed CRT Products manufactured by Samsung Electronics Company, Ltd. to customers throughout the United States.  Samsung America also sold and distributed FPD Products in the United States during the Class Period.

21.     Defendants Samsung Electronics Company, Ltd., Samsung SDI Co., Ltd., and Samsung America are referred to collectively herein as "Samsung."

**6.**     **Toshiba**

22.     Defendant Toshiba Corporation is a Japanese company with its principal place of business at 1-1, Shibaura 1-chome, Minato-ku, Tokyo 105-8001, Japan.  During the Class Period, Toshiba Corporation manufactured, sold, and distributed CRT Products to

1   customers throughout the United States. Toshiba Corporation also manufactured, distributed and

2   sold FPD Products in the United States during the Class Period.

3         23.    Defendant Toshiba America Electronics Components, Inc. is a California

4   corporation with its principal place of business at 19900 MacArthur Boulevard, Suite 400, Irvine,

5   California. Toshiba America Electronics Components, Inc. is a wholly-owned and controlled

6   subsidiary of Toshiba America, Inc., a holding company for Defendant Toshiba Corporation.

7   During the Class Period, Toshiba America Electronics Components, Inc. sold and distributed

8   CRT Products manufactured by Toshiba Corporation to customers throughout the United States.

9   Toshiba America Electronic Components also sold and distributed FPD Products manufactured

10  by Toshiba Corporation in the United States during the Class Period.

11        24.    Defendant Toshiba America Information Systems, Inc. is a California

12  corporation with its principal place of business at 9470 Irvine Blvd., Irvine, California. Toshiba

13  America Information Systems, Inc. is a wholly-owned and controlled subsidiary of Toshiba

14  America, Inc., a holding company for Defendant Toshiba Corporation. During the Class Period,

15  Toshiba America Information Systems, Inc. sold and distributed CRT Products manufactured by

16  Toshiba Corporation to customers throughout the United States. Toshiba America Information

17  Systems also sold and distributed FPD Products manufactured by Toshiba Corporation in the

18  United States during the Class Period.

19        25.    Defendants Toshiba Corporation, Toshiba America Electronics

20  Components, Inc., and Toshiba America Information Systems, Inc. are referred to collectively

21  herein as "Toshiba."

22        **7.**    **Joint Ventures**

23        26.    Defendant MT Picture Display Company is a wholly-owned and controlled

24  subsidiary of Defendant Matsushita organized under the laws of Japan with its principal place of

25  business located at Rivage Shinagawa, 1-8, Konan 4-chome, Minato-ku, Tokyo 108-0075, Japan.

26  Prior to April 2007, MT Picture Display Company was a joint venture between Matsushita

27  Electric Industrial Co., Ltd. and Toshiba Corporation named Matsushita Toshiba Picture Display

28  Co., Ltd.. This joint venture was created in 2003 and integrated the CRTs operations of its

parents. During the Class Period, both MT Picture Display and its predecessor Matsushita

Toshiba Picture Display Co., Ltd. sold and distributed CRT Products to customers throughout the

United States.

27. Defendants MT Picture Display Corporation of America (New York) and

MT Picture Display Corporation of America (Ohio) were subsidiaries of MT Picture Display

Company. Both subsidiaries were incorporated in Maryland and with their principal place of

business located at 300 East Lombard Street, Baltimore, MD 21202. During the Class Period,

MT Picture Display Corporation of America (New York) and MT Picture Display Corporation of

America (Ohio) sold and distributed CRT Products to customers throughout the United States.

28. Defendant LP Displays (formerly known as LG.Philips Display), a joint

venture between LG Electronics and Koninklijke Philips Electronics, is organized under the laws

of Hong Kong with its principal place of business located at Corporate Communications, 6th

Floor, ING Tower, 308 Des Voeux Road Central, Sheung Wan, Hong Kong. During the Class

Period, LP Displays sold and distributed CRT Products to customers throughout the United

States.

29. Each defendant committed the acts alleged in this complaint through its

officers, directors, agents, employees, or representatives while they were actively engaged in the

management, direction, control, or transaction of the defendant's business or affairs.

30. Defendants' unlawful and intentional concerted actions have severely

damaged and will continue to damage Plaintiffs and the members of the classes they seek to

represent.

## CO-CONSPIRATORS AND AGENCY

31. Defendants, along with certain other persons, firms, corporations and

entities, are co-conspirators in the violations and conspiracies alleged in this Complaint. These

co-conspirators have performed acts and made statements in furtherance of the antitrust violations

and conspiracies alleged herein.

32. At all relevant times, each Defendant ratified and/or authorized the

wrongful acts of each of the other Defendants. Defendants, and each of them, are individually

1    sued as participants and as aiders and abettors in the improper acts, plans, schemes, and

2    transactions that are the subject of this Complaint.  Defendants, and each of them, participated as

3    members of the conspiracy or acted with or in furtherance of it, or aided or assisted in carrying

4    out its purposes alleged in this Complaint, and have performed acts and made statements in

5    furtherance of the violations and conspiracy.

6            33.     At all times, each Defendant was the agent of the other Defendants and in

7    committing the violations and conspiracies alleged in this Complaint was acting within the course

8    and scope of that agency and with the permission and consent of the principals.

9                              **CLASS ACTION ALLEGATIONS**

10           34.     Plaintiff brings this action both on behalf of itself and on behalf of the

11   following Class pursuant Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure:

12               All persons and entities residing in the United States who, from
                 May 1, 1998 through the present, purchased CRT Products in the
13               United States directly from the Defendants. Specifically excluded
                 from this Class are the Defendants; the officers, directors or
14               employees of any Defendant; any entity in which any Defendant
                 has a controlling interest; and any affiliate, legal representative, heir
15               or assign of any Defendant. Also excluded are all governmental
                 entities, and any judicial officer presiding over this action.
16

17           35.     This action has been brought and may be properly maintained as a class

18   action pursuant to Rule 23 of the Federal Rules of Civil Procedure for the following reasons:

19           a.      The Class is ascertainable and there is a well-defined community of

20   interest among the members of the Class;

21           b.      Based upon the nature of the trade and commerce involved and the

22   number of direct purchasers of CRT Products, Plaintiff believes that the members of the Class

23   number in the thousands, and therefore the Class members are sufficiently numerous that joinder

24   of all Class members is not practicable;

25           c.      Plaintiff's claims are typical of the claims of the members of the

26   Class because Plaintiff directly purchased CRT Products from one or more of the Defendants or

27   their co-conspirators, and therefore Plaintiff's claims arise from the same common course of

28

1    conduct giving rise to the claims of the members of the Class and the relief sought is common to

2    the Class;

3                    d.      The following common questions of law or fact, among others,

4    exist as to the members of the Class:

5                        i.      whether Defendants formed and operated a combination or conspiracy to

6    fix, raise, maintain or stabilize the prices of, or allocate the market for, CRT Products;

7                        ii.     whether Defendants' conduct caused CRT Products prices to be higher

8    than they would have been in the absence of Defendants' conduct;

9                        iii.    the duration of Defendants' combination or conspiracy;

10                       iv.     whether Defendants fraudulently concealed the conspiracy;

11                       v.      whether Defendants' conduct caused injury to the business or property of

12   Plaintiff and the members of the Class; and

13                       vi.     the appropriate measure of the amount of damages suffered by the Class;

14                   e.      These and other questions of law or fact which are common to the

15   members of the Class predominate over any questions affecting only individual members of the

16   Class;

17                   f.      Plaintiff will fairly and adequately protect the interests of the Class

18   in that Plaintiff has no interests that are antagonistic to other members of the Class and has

19   retained counsel competent and experienced in the prosecution of class actions and antitrust

20   litigation to represent herself and the Class.

21           36.     Defendants have acted on grounds that are generally applicable to the

22   Class, thereby making final injunctive relief appropriate with respect to the Class as a whole.

23           37.     This class action is superior to the alternatives, if any, for the fair and

24   efficient adjudication of this controversy.  Prosecution as a class action will avoid repetitious

25   litigation.  There will be no material difficulty in the management of this action as a class action.

26           38.     The prosecution of separate actions by individual Class members would

27   create the risk of inconsistent or varying adjudications, establishing incompatible standards of

28   conduct for Defendants.

**TRADE AND COMMERCE**

39.     During the Class Period, each Defendant, or one or more of its subsidiaries, sold CRT Products in the United States in a continuous and uninterrupted flow of interstate commerce and foreign commerce, including through and into this judicial district.

40.     The business activities of the Defendants substantially affected interstate trade and commerce in the United States and caused antitrust injury in the United States.

**FACTUAL ALLEGATIONS**

A.     **CRT Technology**

41.     CRT technology has been in use for more than 100 years.  The basic cathode-ray tube consists of three elements: the envelope, the electron gun, and the phosphor screen.



**Cross-sectional representation of a cathode ray tube**

Source:  DIYcalculator.com, available at www.diycalculator.com/sp-console.shtml.

42.     CRTs are manufactured in several standard sizes, including 17 inch, 19 inch, 27 inch and 32 inch.  CRTs manufactured by Defendants are interchangeable with one another.

1

2

     **B.**     **Trends within the CRT Products Market and Increased Competition from FPD Products**

3

4

     43.     The worldwide market for CRT Products is and has been large.  In 1997, the worldwide CRTs market exceeded $24 billion in sales.

5

6

7

8

     44.     At the beginning of the Class Period, CRTs were the dominant display technology worldwide.  For example, in 1997, 99.3% of all computer monitors sold worldwide contained CRTs.  In 2005, approximately 47 million CRT monitors were sold worldwide, and approximately 20.3% of these were sold in the United States.

9

10

11

12

13

14

15

     45.     Although the value of all display materials shipped worldwide is projected to rise at an average annual growth rate of 12.8% by 2010, worldwide demand for CRT Products is declining overall because of the growing popularity of FPD Products which are being used in place of CRT Products. (<http://www.bccresearch.com/RepTemplate.cfm?reportID=552&RepDet=HLT&cat=smc&target=repdet. .. 11/13/2007>).  CRT Products' share of the market declined precipitously in the United States where FPD Products achieved more rapid market penetration; *see* ¶ 48 below.

16

17

18

     46.     FPD Products may be used to produce the same image as CRT Products but also have many important advantages over CRT Products.  For example, FPD Products are less bulky, require less energy, are easier to read, and do not flicker.

19

20

21

     47.     In 1995, recognizing the increasing significance of FPD technologies, Korean manufacturers Samsung and LG Electronics entered the FPD Product market, leading to a surge in FPD Product manufacturing capacity.

22

23

24

25

26

27

     48.     The market share of CRT Products declined as other newer technologies emerged and were brought to market.  As demonstrated in the chart below, by 1998, FPD Products had already achieved 32% of the U.S. market for CRT Products. Penetration by FPD Products is projected to reach 96% by 2009.  FPD Products' global penetration has not been as dramatic as it was in the United States due to the continued popularity of lower-priced CRT Products in China, India, and South America.

28



Source:  David Hsieh, *Flat Panel Display Market Outlook*, DisplaySearch Presentation, Nov. 5, 2005.

49.     CRT TVs currently account for only a minority share of television set revenues in North America (37.3%), Japan (9.5%) and Europe (31.0%).  Naranjo, *The Global Television Market*, DisplaySearch Report, p. 19.

50.     During the Class Period, while demand for CRT Products continued to fall in the United States, Defendants' conspiracy was effective in moderating the normal downward pressures on prices for CRT Products caused by the entry of the new generation of competing technologies.  Indeed, during the Class Period, there were not only periods of unnatural and sustained price stability, but there were also inexplicable increases in the prices of CRTs, despite declining demand due to approaching obsolescence of CRTs caused by the emergence of a new, superior, substitutable technology.

51.     These periods of price stability and price increases for CRTs are fundamentally inconsistent with a competitive market for a product where demand is rapidly decreasing because of the introduction of new superior technologies.

1

**C.**     **Structure of the CRT Product Industry**

2
    52.     The CRT Product industry is characterized by a number of structural

3
features that facilitate collusion, including market concentration, the consolidation of

4
manufacturers, multiple interrelated business relationships, significant barriers to entry, and

5
interchangeability of products.

6
    53.     Defendant Samsung SDI has the largest market share of any CRT Products

7
manufacturer at this point in time.  In 2000, Defendant Samsung SDI had 18% of the global CRTs

8
market.  In 2002, Samsung SDI had 21.8% of the global market for CRT monitors.  In 2004,

9
Samsung SDI had a 30% share of the global CRTs market.

10
    54.     Defendant LP Displays (formerly LG.Philips Displays) has the second

11
largest share of the CRTs market. In 2004, LG.Philips Displays held 27% of the global market for

12
CRT.

13
    55.     Defendant MT Picture Display (formerly Matsushita Toshiba Display Co.)

14
is also a major player in the CRTs market.  In 2004, Matsushita Toshiba Picture Display Co. held

15
9% of the global market for CRTs.

16
    56.     Defendant Chunghwa Picture Tubes held 21.7% of the global CRTs market

17
in 1999.

18
    57.     In 2004, Defendants Samsung SDI, LP Displays, MT Picture Display, and

19
Chunghwa Picture Tubes maintained a collective 78% of the global CRTs market.

20
    58.     The market for CRT Products is subject to high manufacturing and

21
technological barriers to entry.  Efficient fabrication plants are large and costly and require years

22
of research, development and construction.  Technological advances have caused Defendants to

23
undertake significant research and development expenses.

24
    59.     The CRT Products market has also been subject to substantial

25
consolidation and multiple interrelated business relationships during the Class Period.  Matsushita

26
Electric Industrial Co., Ltd. and Toshiba Corporation combined their efforts by forming

27
Defendant MT Picture Display Company.  At the time of the formation of MT Picture Display

28
Company, Matsushita and Toshiba had been the fourth and sixth largest CRT manufacturers in

the world.  This joint venture combined the entire CRT operations of both parent companies.  MT Picture Display Company specialized in the manufacture of CRTs above 30 inches, supplying some 950,000 units annually to the North American market.

60.     In November 2000, Defendants LG Electronics and Koninklijke Philips Electronics agreed to enter a 50/50 joint venture that merged their CRT operations.  The resulting joint venture, originally named LG.Philips Displays, and renamed LP Displays in 2007, entered the market with a 25% share, making it the second largest CRTs manufacturer only behind Samsung SDI at the time.

61.     In 2005, Samsung SDI and LG.Philips Displays entered into an agreement to share parts with respect to CRTs in an effort to boost their combined market share.

62.     Defendants sell their CRT Products through various channels, including to manufacturers of electronic products and devices, and to resellers of CRT Products, and incorporate CRTs into their own manufactured products, which are then sold directly to consumers.

**D.     International Antitrust Investigations**

63.     Competition authorities in the United States, Europe, Japan and South Korea recently engaged in coordinated actions, including raids, targeting the unlawful CRT Products cartel alleged in this Complaint.  On November 9, 2007, the Reuters news agency reported:

> Antitrust authorities in Europe and Asia raided a Matsushita Electric Industrial Co. Ltd. unit and other cathode ray tube markers on suspicion of price fixing, weighing on the share of the Panasonic maker.
>
> *          *          *
>
> Matsushita confirmed Japan's Fair Trade Commission (FTC) had begun a probe of its cathode ray tube unit, MT Picture Display Co. Ltd., while Samsung SDI Co. Ltd. said South Korea's FTC had started an investigation into its CRT business.

(www.reuters.com/article/mergersNews/idUSL0890850720071109).

64.     On November 9, 2007, the European Commission confirmed in Brussels that "on November 8 Commission officials carried out unannounced inspections at the premises of manufacturers of cathode ray tubes."  The European Commission's announcement continued, stating, "The Commission has reason to believe that the companies concerned may have violated EC Treaty rules on cartels and restrictive business practices."

65.     On November 12, 2007, Chunghwa Picture Tubes, Ltd. confirmed that it had received a subpoena from a California district court relating to CRTs.  A federal grand jury operating under the auspices of the United States Department of Justice, Antitrust Division ("DOJ") through its San Francisco office issued the subpoena.

66.     On November 21, 2007, Koninklijke Philips Electronics, N.V. reported that it and its joint venture with LG Electronics, LP Displays, are also targets of the coordinated investigation into collusive practices and other antitrust violations in the CRTs market.

67.     The Defendants include known recidivist antitrust violators.  Samsung, for example, was fined $300 million by the DOJ in October 2005 for participating in a conspiracy to fix prices for Dynamic Random Access Memory. It is also under investigation by the DOJ (along with some of the other Defendants, including Toshiba) for fixing prices of Static Random Access Memory.  Samsung and Toshiba are also being investigated for collusion among manufacturers of NAND flash memory.

68.     Several Defendants, including Samsung and a joint venture between LG Electronics and Koninklijke Philips Electronics, are targets of a coordinated investigation by the DOJ and antitrust authorities in Europe, Japan and South Korea in connection with anticompetitive conduct in the market for LCD Products.  Because LCD Products and CRT Products are used in the same primary applications, collusion with respect to CRT Product prices would bolster these same Defendants' LCD pricing cartel.  Keeping CRTs prices artificially inflated also would serve both to increase profits on remaining CRTs sales while protecting LCD prices.

**FRAUDULENT CONCEALMENT**

69.     Plaintiff and members of the Class did not discover and could not discover through the exercise of reasonable diligence the existence of the conspiracy alleged herein any earlier than November 9, 2007 when it was first publicly reported that manufacturers of CRT Products were under investigation by antitrust authorities in Europe, Japan, and South Korea for conspiring to fix the prices of CRT Products.

70.     Because Defendants' agreements, understandings, and conspiracies were kept secret until November 9, 2007, Plaintiff and members of the Class before that time were unaware of Defendants' unlawful conduct alleged herein, and they did not know before that time they were paying artificially high prices for CRT Products throughout the United States during the Class Period.

71.     The affirmative acts of the Defendants alleged herein, including acts in furtherance of the conspiracy, were wrongfully concealed and carried out in a manner that precluded detection.

72.     By its very nature, Defendants' price fixing conspiracy was inherently self-concealing.  The CRT industry is not exempt from antitrust regulation, and thus, before November 9, 2007, Plaintiff reasonably considered it to be a well-regulated competitive industry.

73.     In the context of the circumstances surrounding Defendants' pricing practices, Defendants' acts of concealment were more than sufficient to preclude suspicion by a reasonable person that Defendants' pricing was collusive and conspiratorial.  Accordingly, a reasonable person under the circumstances would not have been alerted to investigate the legitimacy of Defendants' prices before November 9, 2007.

74.     Plaintiff and members of the Class could not have discovered the alleged contract, conspiracy, or combination at an earlier date by the exercise of reasonable diligence because of the deceptive practices and techniques of secrecy employed by the Defendants and their co-conspirators to avoid detection of, and fraudulently conceal, their contract, combination, or conspiracy.

75.     Because the alleged conspiracy was both self-concealing and affirmatively concealed by Defendants and their co-conspirators, Plaintiff and members of the Class had no knowledge of the alleged conspiracy, or of any facts of information that would have caused a reasonably diligent person to investigate whether a conspiracy existed, until November 9, 2007, when reports of the investigations into price fixing in the CRT industry were first publicly disseminated.

76.     None of the facts or information available to Plaintiff and members of the Class prior to November 9, 2007, if investigated with reasonable diligence, could or would have led to the discovery of the conspiracy alleged herein prior to November 9, 2007.

77.     As a result of the self-concealing nature of the conspiracy and the active concealment of the conspiracy by Defendants and their co-conspirators, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

### CLAIM FOR RELIEF
#### (Violation of Section 1 of the Sherman Act, 15 U.S.C. § 1)

78.     Plaintiff, on behalf of itself and all others similarly situated, realleges and incorporates, as if fully alleged herein, each of the allegations contained in the preceding paragraphs of this Complaint, and further alleges against Defendants as follows.

79.     Beginning at least as early as May 1, 1998 and continuing through the present, the exact dates being unknown to Plaintiff, Defendants and various co-conspirators entered into and engaged in a continuing agreement, contract, combination, and conspiracy to fix, raise, maintain, or stabilize the price for CRT Products in unreasonable restraint of trade and commerce in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

80.     Defendants, through their officers, directors and employees, entered into the contract, combination, trust and conspiracy among themselves and their co-conspirators by, among other things:

a.     participating in communications, including discussions of the prices of CRT Products in the United States;

1                                             b.       agreeing, during those communications, to charge prices at

2  specified levels and otherwise to increase, stabilize and maintain prices of CRT Products sold in

3  the United States; and

4                                             c.       selling CRT Products to various customers in the United States at

5  artificially inflated prices.

6            81.     For the purpose of forming and implementing the alleged combinations,

7  agreements, understandings and concert of action, Defendants and their co-conspirators did those

8  things they conspired to do, including but not limited to the acts alleged above, including actions

9  to fix, raise, maintain and stabilize the price of CRT Products.

10            82.     Defendants have participated in one or more overt acts in furtherance of the

11  conspiracy alleged above, and have participated in the conspiratorial activities described above.

12            83.     The combination and conspiracy alleged herein has had the following

13  effects, among others:

14                         a.       Price competition in the sale of CRT Products has been restrained,

15  suppressed and/or eliminated throughout the United States;

16                         b.       Prices for CRT Products sold by Defendants and their

17  co-conspirators have been fixed, raised, maintained and stabilized at artificially high, non-

18  competitive levels throughout the United States; and

19                         c.       Plaintiff and members of the Class have been deprived of the

20  benefits of free and open competition.

21            84.     As a direct and proximate result of the Defendants' unlawful conduct,

22  Plaintiff and the members of the Class have been injured in their business and property in that

23  they paid more for CRT Products than they otherwise would have paid in the absence of

24  Defendants' unlawful conduct.

25                             **PRAYER FOR RELIEF**

26            WHEREFORE, Plaintiff prays:

27            A.     That the Court determine that the claim alleged herein under the Sherman

28  Act, 15 U.S.C. § 1, may be maintained as a class action under Rule 23(a) and (b)(3) of the Federal

1    Rules of Civil Procedure;

2            B.      That the unlawful conduct, contract, conspiracy or combination alleged

3    herein be adjudged and decreed to be a violation of Section 1 of the Sherman Act, 15 U.S.C. § 1;

4            C.      That Plaintiff and the Class recover damages, as provided law, and that a

5    joint and several judgment in favor of Plaintiff and the Class be entered against the Defendants in

6    an amount to be trebled in accordance with applicable laws;

7            D.      That Defendants, their subsidiaries, affiliates, successors, transferees,

8    assignees and their respective officers, directors, partners, principals, agents and employees

9    thereof, be enjoined and restrained from continuing and maintaining the combination, conspiracy

10   or agreement alleged herein;

11           E.      That Plaintiff and members of the Class be awarded pre- and post-

12   judgment interest, and that that interest be awarded at the highest legal rate from and after the

13   date of service of the initial complaint in this action;

14           F.      That Plaintiff and members of the Class recover their costs of this suit,

15   including reasonable attorneys' fees as provided by law; and

16           G.      That Plaintiff and members of the Class receive an award for such other

17   and further relief as the nature of the case may require or as the Court deems just, equitable, and

18   proper.

19   Dated: November __, 2007           LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP

20

21                                       By:_____

22                                           Joseph R. Saveri

23                                       Richard M. Heimann (State Bar No. 063607)
                                         *rheimann@lchb.com*
24                                       Joseph R. Saveri (State Bar No. 130064)
                                         *jsaveri@lchb.com*
25                                       Eric B. Fastiff (State Bar No. 182260)
                                         *efastiff@lchb.com*
26                                       275 Battery Street, 30th Floor
                                         San Francisco, CA  94111-3339
27                                       Telephone:  (415) 956-1000
                                         Facsimile:  (415) 956-1008

28

1          BERGER & MONTAGUE, P.C.

2

3          By: _____
                H. Laddie Montague, Jr.
4
           H. Laddie Montague, Jr.
5          *hlmontague@bm.net*
           Ruthanne Gordon
6          *rgordon@bm.net*
           Candice Enders
7          *cenders@bm.net*
           BERGER & MONTAGUE, P.C.
8          1622 Locust Street
           Philadelphia, PA 19103
9          Telephone:  (215) 875-3000
           Facsimile:  (215) 875-4604
10
           *Attorneys for Plaintiff and the Proposed Class*
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

739154.2                                  - 21 -

1

## <u>DEMAND FOR JURY TRIAL</u>

2          Plaintiff demands a trial by jury for all issues so triable.

3     Dated: November __, 2007          LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP

4

5                                          By:_____
                                                 Joseph R. Saveri
6

7                                          Richard M. Heimann (State Bar No. 063607)
                                           *rheimann@lchb.com*
8                                          Joseph R. Saveri (State Bar No. 130064)
                                           *jsaveri@lchb.com*
9                                          Eric B. Fastiff (State Bar No. 182260)
                                           *efastiff@lchb.co*m
10                                         275 Battery Street, 30th Floor
                                           San Francisco, CA  94111-3339
11                                         Telephone:  (415) 956-1000
                                           Facsimile:  (415) 956-1008
12
                                           BERGER & MONTAGUE, P.C.
13

14                                         By: _____
                                                 H. Laddie Montague, Jr.
15

16                                         H. Laddie Montague, Jr.
                                           *hlmontague@bm.net*
17                                         Ruthanne Gordon
                                           *rgordon@bm.net*
18                                         Candice Enders
                                           *cenders@bm.net*
19                                         1622 Locust Street
                                           Philadelphia, PA 19103
20                                         Telephone:  (215) 875-3000
                                           Facsimile:  (215) 875-4604
21
                                           *Attorneys for Plaintiff and the Proposed Class*
22

23

24

25

26

27

28