# EXHIBIT A

COPY

1   Richard M. Heimann (State Bar No. 063607)
    rheimann@lchb.com
2   Joseph R. Saveri (State Bar No. 130064)
    jsaveri@lchb.com
3   Eric B. Fastiff (State Bar No. 182260)
    efastiff@lchb.com
4   LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
    275 Battery Street, 30th Floor
5   San Francisco, CA  94111-3339
    Telephone:  (415) 956-1000
6   Facsimile:  (415) 956-1008

7   H. Laddie Montague, Jr.
    hlmontague@bm.net
8   Ruthanne Gordon
    rgordon@bm.net
9   Candice Enders
    cenders@bm.net
10  BERGER & MONTAGUE, P.C.
    1622 Locust Street
11  Philadelphia, PA 19103
    Telephone:  (215) 875-3000
12  Facsimile:  (215) 875-4604

13  Attorneys for Individual and Representative Plaintiff Nathan Muchnick, Inc.

14              UNITED STATES DISTRICT COURT

15            NORTHERN DISTRICT OF CALIFORNIA

16  NATHAN MUCHNICK, INC., on behalf of itself and       Case No.
    all others similarly situated,
17                                                       CV 07 5981
                         Plaintiff,
18                                                       CLASS ACTION COMPLAINT
    v.
19                                                       DEMAND FOR JURY TRIAL

20  CHUNGHWA PICTURE TUBES, LTD.;
    TATUNG COMPANY OF AMERICA, INC.;
21  LG ELECTRONICS, INC.; LG PHILIPS DISPLAY
    USA, INC.; MATSUSHITA ELECTRIC
22  INDUSTRIAL CO., LTD.; PANASONIC
    CORPORATION OF NORTH AMERICA;
23  KONINKLIJKE PHILIPS ELECTRONICS N.V.;
    PHILIPS ELECTRONICS NORTH AMERICA
24  CORPORATION; SAMSUNG ELECTRONICS CO.,
    LTD.; SAMSUNG ELECTRONICS AMERICA,
25  INC.; SAMSUNG SDI CO., LTD. f/k/a SAMSUNG
    DISPLAY DEVICE CO.; TOSHIBA
26  CORPORATION; TOSHIBA AMERICA
    ELECTRONICS COMPONENTS, INC.; TOSHIBA
27  AMERICA INFORMATION SYSTEMS, INC.;

28  (caption continues on next page)

739154 2

1  MT PICTURE DISPLAY COMPANY;
   MT PICTURE DISPLAY CORPORATION OF
2  AMERICA (New York); MT PICTURE DISPLAY
   CORPORATION OF AMERICA (Ohio); and
3  LP DISPLAYS,

4
                              Defendants.
5

6

7          Plaintiff Nathan Muchnick, Inc. ("Plaintiff") individually and on behalf of the

8  Class described below, brings this action for treble damages and injunctive relief against

9  Defendants, and demanding a trial by jury, alleges on information and belief to all matters except

10 those stated in paragraph 9, which are based on personal knowledge, as follows:

11                          **NATURE OF THE CASE**

12         1.      Plaintiff brings this lawsuit as a class action on behalf of individuals and

13 entities who purchased directly cathode-ray tubes ("CRTs") and products containing CRTs

14 (jointly, "CRT Products") in the United States from Defendants during the period from at least

15 May 1, 1998 through the present (the "Class Period"). CRTs are used in a number of products,

16 including but not limited to, computer monitors and televisions. As used herein, "CRT Products"

17 refers to CRTs and products containing CRTs manufactured by any of the named Defendants or

18 their subsidiaries or affiliates.

19         2.      During the Class Period, Defendants' collusive behavior artificially inflated

20 the price of CRT Products. In particular, Defendants participated in cartel behavior and colluded

21 to fix the prices of CRT Products.

22         3.      Throughout the Class Period, Defendants' conspiracy was intended to, and

23 did, moderate the downward price pressures on CRT Products caused by the market entry and

24 rapid penetration of more technologically advanced competitive products. As explained in further

25 detail below, liquid crystal displays ("LCD") and plasma display panels ("PDP") were used in the

26 same primary applications as CRTs and presented significant advantages over CRT Products.

27 LCD, PDP and products containing LCD or PDP will collectively be referred to as flat panel

28 display products ("FPD Products"). Many of the Defendants, in addition to manufacturing.

759154 2                          - 2 -

1    distributing and selling CRT Products, were also manufacturers, distributors, and sellers of FPD

2    Products. Defendants who participated in both the market for CRT Products and the market for

3    FPD Products will be specifically identified below.

4         4.    California is a major center of the international technology industry.

5    Because of Defendants' unlawful conduct and conspiracy, Plaintiff and other members of the

6    Class paid artificially inflated prices for CRT Products. Plaintiff and other members of the Class

7    who purchased these products have therefore been damaged by Defendants' illegal actions.

8                        **JURISDICTION AND VENUE**

9         5.    Plaintiff brings this action pursuant to Section 4 of the Clayton Act,

10    15 U.S.C. § 15, for treble damages as well as reasonable attorneys' fees and costs of suit, for

11    Defendants' violation of section 1 of the Sherman Act, 15 U.S.C. § 1.

12        6.    Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1337,

13    and by section 4 of the Clayton Act, 15 U.S.C. § 15(a).

14        7.    This Court has *in personam* jurisdiction over each of the Defendants

15    because each was engaged in an illegal price-fixing scheme and conspiracy that was directed to

16    and/or caused injury to persons or entities residing in, located in, or doing business in this District

17    and throughout the United States.

18        8.    Venue is proper in this District pursuant to 15 U.S.C. §§ 15(a) and 22.

19    28 U.S.C. § 1391(b), (c), and (d) and Local Rules of the United States District Court for the

20    Northern District of California 3-2 because during the Class Period, one or more of the

21    Defendants resided, transacted business, was found, or had agents in this district, and because a

22    substantial part of the events giving rise to Plaintiff's claims occurred, and a substantial portion of

23    the affected interstate trade and commerce described below was carried out in this District.

24                              **THE PARTIES**

25    **A.    The Plaintiff**

26        9.    Plaintiff Nathan Muchnick, Inc. was a corporation organized and existing

27    under the laws of the Commonwealth of Pennsylvania and had its principal place of business at

28    1725 Chestnut Street, Philadelphia, PA 19103. Nathan Muchnick, Inc. directly purchased CRT

1 | Products from one or more of the Defendants during the Class Period and was injured as a result
2 | of Defendants' illegal conduct.

3 | **B.**   **The Defendants**

4 |   **1.**   **Chunghwa**

5 |   10.   Defendant Chunghwa Picture Tubes, Ltd. ("Chunghwa") is a Taiwanese
6 | company with its principal place of business at 1127 Heping Road, Bade City, Taoyuan, Taiwan.
7 | It is a partially owned subsidiary of Tatung Company, a consolidated consumer electronics and
8 | information technology company based in Taiwan. Chunghwa's Board of Directors includes
9 | representatives from Tatung Company. The Chairman of Chunghwa, Weishan Lin, is also the
10 | Chairman and General Manager of Tatung Company. During the Class Period, Chunghwa
11 | manufactured, sold, and distributed CRT Products to customers throughout the United States.
12 | Chunghwa also manufactured, distributed and sold FPD Products in the United States during the
13 | Class Period.

14 |   11.   Defendant Tatung Company of America, Inc. is a California corporation
15 | with its principal place of business at 2850 El Presidio Street, Long Beach, California. Tatung
16 | Company of America, Inc. is a wholly-owned and controlled subsidiary of Tatung Company.
17 | During the Class Period, Tatung Company of America, Inc. manufactured, sold, and distributed
18 | CRT Products to customers throughout the United States. Tatung Company of America, Inc. also
19 | manufactured, distributed and sold FPD Products in the United States during the Class Period.

20 |   **2.**   **LG**

21 |   12.   Defendant LG Electronics, Inc. ("LGE"), is a manufacturer of CRT
22 | Products with its global headquarters located at LG Twin Towers 20, Yeouido-dong,
23 | Yeongdeungpo-gu, Seoul, Korea 150-721. During the Class Period, LGE manufactured, sold and
24 | distributed CRT Products to customers throughout the United States. LGE also manufactured,
25 | distributed and sold FPD Products in the United States during the Class Period.

26 |   **3.**   **Matsushita**

27 |   13.   Defendant Matsushita Electric Industrial Co., Ltd ("Matsushita") is a
28 | Japanese company and has its global headquarters at 1006 Kadoma, Osaka 571-8501, Japan.

1    Matsushita is the parent company of Panasonic Corporation of North America, JVC Company of

2    America, and Victor Company of Japan, Ltd.  During the Class Period, Matsushita manufactured,

3    sold and distributed CRT Products to customers throughout the United States.  Matsushita also

4    manufactured, distributed and sold FPD Products in the United States during the Class Period.

5            14.    Defendant Panasonic Corporation of North America  ("Panasonic"), is a

6    subsidiary of Defendant Matsushita and oversees its North American business operations,

7    including sales.  Defendant Panasonic has its global headquarters at 1 Panasonic Way, Secaucus,

8    New Jersey 07094.  During the Class Period, Panasonic manufactured, sold and distributed CRT

9    Products to customers throughout the United States.  A substantial portion of the CRTs produced

10   by MT Picture Displays Co., Matsushita's subsidiary, went to Panasonic for Panasonic's

11   production of CRT Products.  Panasonic also manufactured, distributed and sold FPD Products in

12   the United States during the Class Period.

13           **4.    Philips**

14           15.    Defendant Koninklijke Philips Electronics N.V. ("Koninklijke") has its

15   global headquarters at Breitner Center Amstelplein 2, Amsterdam 1096 BC, Netherlands.  During

16   the Class Period, Koninklijke manufactured, sold and distributed CRT Products to customers

17   throughout the United States.  Koninklijke also manufactured, distributed and sold FPD Products

18   in the United States during the Class Period.

19           16.    Defendant Philips Electronics North America Corporation ("Philips

20   Electronics NA"), is a manufacturer of CRT Products.  Defendant Philips Electronics NA has its

21   global headquarters at 1251 Avenue of the Americas, New York, New York 10020.  During the

22   Class Period, Philips Electronics NA manufactured, sold and distributed CRT Products to

23   customers throughout the United States.  Philips Electronics NA also manufactured, distributed

24   and sold FPD Products in the United States during the Class Period.

25           17.    Defendant LG Philips Display USA, Inc.  ("LGPD"), is a manufacturer of

26   CRT Products and is a subsidiary of Philips Electronics NA.  Defendant LG Philips Display

27   USA, Inc has its global headquarters at 300 W Morgan Rd, Ann Arbor, MI 48108-9108, United

28

States. During the Class Period, LGPD manufactured, sold and distributed CRT Products to customers throughout the United States.

### 5. Samsung

18.  Defendant Samsung Electronics Co., Ltd. ("Samsung Electronics") is a Korean company with its principal place of business at Samsung Main Building, 250, Taepyeongno 2-ga, Jung-gu, Seoul 100-742, Korea. It is the world's largest producer of CRT Products. During the Class Period, Samsung Electronics manufactured, sold, and distributed CRT Products to customers throughout the United States. Samsung Electronics also manufactured, distributed and sold FPD Products in the United States during the Class Period.

19.  Defendant Samsung SDI Co., Ltd. ("Samsung SDI"), formerly known as Samsung Display Device Co., has its global headquarters at Samsung Life Insurance Bldg 150, Seoul 100-716, Korea. During the Class Period, Samsung SDI manufactured, sold and distributed CRT Products to customers throughout the United States. Samsung SDI also manufactured, distributed and sold FPD Products in the United States during the Class Period.

20.  Defendant Samsung Electronics America, Inc. ("Samsung America") is a New York corporation with its principal place of business at 105 Challenger Road, Ridgefield Park, New Jersey. Samsung America is a wholly-owned and controlled subsidiary of Defendant Samsung Electronics Company, Ltd. During the Class Period, Samsung America sold and distributed CRT Products manufactured by Samsung Electronics Company, Ltd. to customers throughout the United States. Samsung America also sold and distributed FPD Products in the United States during the Class Period.

21.  Defendants Samsung Electronics Company, Ltd., Samsung SDI Co., Ltd., and Samsung America are referred to collectively herein as "Samsung."

### 6. Toshiba

22.  Defendant Toshiba Corporation is a Japanese company with its principal place of business at 1-1, Shibaura 1-chome, Minato-ku, Tokyo 105-8001, Japan. During the Class Period, Toshiba Corporation manufactured, sold, and distributed CRT Products to

1  customers throughout the United States.  Toshiba Corporation also manufactured, distributed and

2  sold FPD Products in the United States during the Class Period.

3        23.    Defendant Toshiba America Electronics Components, Inc. is a California

4  corporation with its principal place of business at 19900 MacArthur Boulevard, Suite 400, Irvine,

5  California.  Toshiba America Electronics Components, Inc. is a wholly-owned and controlled

6  subsidiary of Toshiba America, Inc., a holding company for Defendant Toshiba Corporation.

7  During the Class Period, Toshiba America Electronics Components, Inc. sold and distributed

8  CRT Products manufactured by Toshiba Corporation to customers throughout the United States.

9  Toshiba America Electronic Components also sold and distributed FPD Products manufactured

10  by Toshiba Corporation in the United States during the Class Period.

11        24.    Defendant Toshiba America Information Systems, Inc. is a California

12  corporation with its principal place of business at 9470 Irvine Blvd., Irvine, California.  Toshiba

13  America Information Systems, Inc. is a wholly-owned and controlled subsidiary of Toshiba

14  America, Inc., a holding company for Defendant Toshiba Corporation.  During the Class Period,

15  Toshiba America Information Systems, Inc. sold and distributed CRT Products manufactured by

16  Toshiba Corporation to customers throughout the United States. Toshiba America Information

17  Systems also sold and distributed FPD Products manufactured by Toshiba Corporation in the

18  United States during the Class Period.

19        25.    Defendants Toshiba Corporation, Toshiba America Electronics

20  Components, Inc., and Toshiba America Information Systems, Inc. are referred to collectively

21  herein as "Toshiba."

22        7.    **Joint Ventures**

23        26.    Defendant MT Picture Display Company is a wholly-owned and controlled

24  subsidiary of Defendant Matsushita organized under the laws of Japan with its principal place of

25  business located at Rivage Shinagawa, 1-8, Konan 4-chome, Minato-ku, Tokyo 108-0075, Japan.

26  Prior to April 2007, MT Picture Display Company was a joint venture between Matsushita

27  Electric Industrial Co., Ltd. and Toshiba Corporation named Matsushita Toshiba Picture Display

28  Co., Ltd..  This joint venture was created in 2003 and integrated the CRTs operations of its

1  parents.  During the Class Period. both MT Picture Display and its predecessor Matsushita

2  Toshiba Picture Display Co., Ltd. sold and distributed CRT Products to customers throughout the

3  United States.

4          27.     Defendants MT Picture Display Corporation of America (New York) and

5  MT Picture Display Corporation of America (Ohio) were subsidiaries of MT Picture Display

6  Company.  Both subsidiaries were incorporated in Maryland and with their principal place of

7  business located at 300 East Lombard Street, Baltimore, MD 21202.  During the Class Period,

8  MT Picture Display Corporation of America (New York) and MT Picture Display Corporation of

9  America (Ohio) sold and distributed CRT Products to customers throughout the United States.

10         28.     Defendant LP Displays (formerly known as LG.Philips Display), a joint

11 venture between LG Electronics and Koninklijke Philips Electronics, is organized under the laws

12 of Hong Kong with its principal place of business located at Corporate Communications, 6th

13 Floor, ING Tower, 308 Des Voeux Road Central, Sheung Wan, Hong Kong.  During the Class

14 Period, LP Displays sold and distributed CRT Products to customers throughout the United

15 States.

16         29.     Each defendant committed the acts alleged in this complaint through its

17 officers, directors, agents, employees, or representatives while they were actively engaged in the

18 management, direction, control. or transaction of the defendant's business or affairs.

19         30.     Defendants' unlawful and intentional concerted actions have severely

20 damaged and will continue to damage Plaintiffs and the members of the classes they seek to

21 represent.

22                      **CO-CONSPIRATORS AND AGENCY**

23         31.     Defendants, along with certain other persons. firms. corporations and

24 entities, are co-conspirators in the violations and conspiracies alleged in this Complaint.  These

25 co-conspirators have performed acts and made statements in furtherance of the antitrust violations

26 and conspiracies alleged herein.

27         32.     At all relevant times. each Defendant ratified and/or authorized the

28 wrongful acts of each of the other Defendants.  Defendants. and each of them. are individually

1  sued as participants and as aiders and abettors in the improper acts, plans, schemes, and

2  transactions that are the subject of this Complaint. Defendants, and each of them, participated as

3  members of the conspiracy or acted with or in furtherance of it, or aided or assisted in carrying

4  out its purposes alleged in this Complaint, and have performed acts and made statements in

5  furtherance of the violations and conspiracy.

6        33.    At all times, each Defendant was the agent of the other Defendants and in

7  committing the violations and conspiracies alleged in this Complaint was acting within the course

8  and scope of that agency and with the permission and consent of the principals.

9  ## CLASS ACTION ALLEGATIONS

10        34.    Plaintiff brings this action both on behalf of itself and on behalf of the

11  following Class pursuant Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure:

12          All persons and entities residing in the United States who, from

13          May 1, 1998 through the present, purchased CRT Products in the
        United States directly from the Defendants. Specifically excluded

14          from this Class are the Defendants; the officers, directors or
        employees of any Defendant; any entity in which any Defendant

15          has a controlling interest; and any affiliate, legal representative, heir
        or assign of any Defendant. Also excluded are all governmental

16          entities, and any judicial officer presiding over this action.

17        35.    This action has been brought and may be properly maintained as a class

18  action pursuant to Rule 23 of the Federal Rules of Civil Procedure for the following reasons:

19        a.    The Class is ascertainable and there is a well-defined community of

20  interest among the members of the Class;

21        b.    Based upon the nature of the trade and commerce involved and the

22  number of direct purchasers of CRT Products, Plaintiff believes that the members of the Class

23  number in the thousands, and therefore the Class members are sufficiently numerous that joinder

24  of all Class members is not practicable;

25        c.    Plaintiff's claims are typical of the claims of the members of the

26  Class because Plaintiff directly purchased CRT Products from one or more of the Defendants or

27  their co-conspirators, and therefore Plaintiff's claims arise from the same common course of

28

1   conduct giving rise to the claims of the members of the Class and the relief sought is common to

2   the Class;

3               d.      The following common questions of law or fact, among others,

4   exist as to the members of the Class:

5               i.      whether Defendants formed and operated a combination or conspiracy to

6   fix, raise, maintain or stabilize the prices of, or allocate the market for, CRT Products;

7               ii.     whether Defendants' conduct caused CRT Products prices to be higher

8   than they would have been in the absence of Defendants' conduct;

9               iii.    the duration of Defendants' combination or conspiracy;

10              iv.     whether Defendants fraudulently concealed the conspiracy;

11              v.      whether Defendants' conduct caused injury to the business or property of

12   Plaintiff and the members of the Class; and

13              vi.     the appropriate measure of the amount of damages suffered by the Class;

14              e.      These and other questions of law or fact which are common to the

15   members of the Class predominate over any questions affecting only individual members of the

16   Class;

17              f.      Plaintiff will fairly and adequately protect the interests of the Class

18   in that Plaintiff has no interests that are antagonistic to other members of the Class and has

19   retained counsel competent and experienced in the prosecution of class actions and antitrust

20   litigation to represent herself and the Class.

21       36.    Defendants have acted on grounds that are generally applicable to the

22   Class, thereby making final injunctive relief appropriate with respect to the Class as a whole.

23       37.    This class action is superior to the alternatives, if any, for the fair and

24   efficient adjudication of this controversy.  Prosecution as a class action will avoid repetitious

25   litigation.  There will be no material difficulty in the management of this action as a class action.

26       38.    The prosecution of separate actions by individual Class members would

27   create the risk of inconsistent or varying adjudications, establishing incompatible standards of

28   conduct for Defendants.

## TRADE AND COMMERCE

39.     During the Class Period, each Defendant, or one or more of its subsidiaries, sold CRT Products in the United States in a continuous and uninterrupted flow of interstate commerce and foreign commerce, including through and into this judicial district.

40.     The business activities of the Defendants substantially affected interstate trade and commerce in the United States and caused antitrust injury in the United States.

## FACTUAL ALLEGATIONS

### A.     CRT Technology

41.     CRT technology has been in use for more than 100 years.  The basic cathode-ray tube consists of three elements: the envelope, the electron gun, and the phosphor screen.



**Cross-sectional representation of a cathode ray tube**

Source: DIYcalculator.com, available at www.diycalculator.com/sp-console.shtml.

42.     CRTs are manufactured in several standard sizes, including 17 inch, 19 inch, 27 inch and 32 inch.  CRTs manufactured by Defendants are interchangeable with one another.

**B.**   **Trends within the CRT Products Market and Increased Competition from FPD Products**

43.   The worldwide market for CRT Products is and has been large.  In 1997, the worldwide CRTs market exceeded $24 billion in sales.

44.   At the beginning of the Class Period, CRTs were the dominant display technology worldwide.  For example, in 1997, 99.3% of all computer monitors sold worldwide contained CRTs.  In 2005, approximately 47 million CRT monitors were sold worldwide, and approximately 20.3% of these were sold in the United States.

45.   Although the value of all display materials shipped worldwide is projected to rise at an average annual growth rate of 12.8% by 2010, worldwide demand for CRT Products is declining overall because of the growing popularity of FPD Products which are being used in place of CRT Products.  (<http://www.bccresearch.com/RepTemplate.cfm?reportID=552&RepDet=HLT&cat=smc&target=repdet... 11/13/2007>).  CRT Products' share of the market declined precipitously in the United States where FPD Products achieved more rapid market penetration; *see* ¶ 48 below.

46.   FPD Products may be used to produce the same image as CRT Products but also have many important advantages over CRT Products.  For example, FPD Products are less bulky, require less energy, are easier to read, and do not flicker.

47.   In 1995, recognizing the increasing significance of FPD technologies, Korean manufacturers Samsung and LG Electronics entered the FPD Product market, leading to a surge in FPD Product manufacturing capacity.

48.   The market share of CRT Products declined as other newer technologies emerged and were brought to market.  As demonstrated in the chart below, by 1998, FPD Products had already achieved 32% of the U.S. market for CRT Products. Penetration by FPD Products is projected to reach 96% by 2009. FPD Products' global penetration has not been as dramatic as it was in the United States due to the continued popularity of lower-priced CRT Products in China, India, and South America.



Source:  David Hsieh, *Flat Panel Display Market Outlook*, DisplaySearch Presentation, Nov. 5, 2005.

49.     CRT TVs currently account for only a minority share of television set revenues in North America (37.3%), Japan (9.5%) and Europe (31.0%).  Naranjo, *The Global Television Market*, DisplaySearch Report, p. 19.

50.     During the Class Period, while demand for CRT Products continued to fall in the United States, Defendants' conspiracy was effective in moderating the normal downward pressures on prices for CRT Products caused by the entry of the new generation of competing technologies.  Indeed, during the Class Period, there were not only periods of unnatural and sustained price stability, but there were also inexplicable increases in the prices of CRTs, despite declining demand due to approaching obsolescence of CRTs caused by the emergence of a new, superior, substitutable technology.

51.     These periods of price stability and price increases for CRTs are fundamentally inconsistent with a competitive market for a product where demand is rapidly decreasing because of the introduction of new superior technologies.

C.   **Structure of the CRT Product Industry**

52.    The CRT Product industry is characterized by a number of structural features that facilitate collusion, including market concentration, the consolidation of manufacturers, multiple interrelated business relationships, significant barriers to entry, and interchangeability of products.

53.    Defendant Samsung SDI has the largest market share of any CRT Products manufacturer at this point in time. In 2000, Defendant Samsung SDI had 18% of the global CRTs market. In 2002, Samsung SDI had 21.8% of the global market for CRT monitors. In 2004, Samsung SDI had a 30% share of the global CRTs market.

54.    Defendant LP Displays (formerly LG.Philips Displays) has the second largest share of the CRTs market. In 2004, LG.Philips Displays held 27% of the global market for CRT.

55.    Defendant MT Picture Display (formerly Matsushita Toshiba Display Co.) is also a major player in the CRTs market. In 2004, Matsushita Toshiba Picture Display Co. held 9% of the global market for CRTs.

56.    Defendant Chunghwa Picture Tubes held 21.7% of the global CRTs market in 1999.

57.    In 2004, Defendants Samsung SDI, LP Displays, MT Picture Display, and Chunghwa Picture Tubes maintained a collective 78% of the global CRTs market.

58.    The market for CRT Products is subject to high manufacturing and technological barriers to entry. Efficient fabrication plants are large and costly and require years of research, development and construction. Technological advances have caused Defendants to undertake significant research and development expenses.

59.    The CRT Products market has also been subject to substantial consolidation and multiple interrelated business relationships during the Class Period. Matsushita Electric Industrial Co., Ltd. and Toshiba Corporation combined their efforts by forming Defendant MT Picture Display Company. At the time of the formation of MT Picture Display Company, Matsushita and Toshiba had been the fourth and sixth largest CRT manufacturers in

the world.  This joint venture combined the entire CRT operations of both parent companies.  MT Picture Display Company specialized in the manufacture of CRTs above 30 inches, supplying some 950,000 units annually to the North American market.

60.    In November 2000, Defendants LG Electronics and Koninklijke Philips Electronics agreed to enter a 50/50 joint venture that merged their CRT operations.  The resulting joint venture, originally named LG.Philips Displays, and renamed LP Displays in 2007, entered the market with a 25% share, making it the second largest CRTs manufacturer only behind Samsung SDI at the time.

61.    In 2005, Samsung SDI and LG.Philips Displays entered into an agreement to share parts with respect to CRTs in an effort to boost their combined market share.

62.    Defendants sell their CRT Products through various channels, including to manufacturers of electronic products and devices, and to resellers of CRT Products, and incorporate CRTs into their own manufactured products, which are then sold directly to consumers.

**D.    International Antitrust Investigations**

63.    Competition authorities in the United States, Europe, Japan and South Korea recently engaged in coordinated actions, including raids, targeting the unlawful CRT Products cartel alleged in this Complaint.  On November 9, 2007, the Reuters news agency reported:

> Antitrust authorities in Europe and Asia raided a Matsushita Electric Industrial Co. Ltd. unit and other cathode ray tube markers on suspicion of price fixing, weighing on the share of the Panasonic maker.
>
> *       *       *
>
> Matsushita confirmed Japan's Fair Trade Commission (FTC) had begun a probe of its cathode ray tube unit, MT Picture Display Co. Ltd., while Samsung SDI Co. Ltd. said South Korea's FTC had started an investigation into its CRT business.

(www.reuters.com/article/mergersNews/idUSL08908507200711109).

64.     On November 9, 2007, the European Commission confirmed in Brussels that "on November 8 Commission officials carried out unannounced inspections at the premises of manufacturers of cathode ray tubes." The European Commission's announcement continued, stating, "The Commission has reason to believe that the companies concerned may have violated EC Treaty rules on cartels and restrictive business practices."

65.     On November 12, 2007, Chunghwa Picture Tubes, Ltd. confirmed that it had received a subpoena from a California district court relating to CRTs. A federal grand jury operating under the auspices of the United States Department of Justice, Antitrust Division ("DOJ") through its San Francisco office issued the subpoena.

66.     On November 21, 2007, Koninklijke Philips Electronics, N.V. reported that it and its joint venture with LG Electronics, LP Displays, are also targets of the coordinated investigation into collusive practices and other antitrust violations in the CRTs market.

67.     The Defendants include known recidivist antitrust violators. Samsung, for example, was fined $300 million by the DOJ in October 2005 for participating in a conspiracy to fix prices for Dynamic Random Access Memory. It is also under investigation by the DOJ (along with some of the other Defendants, including Toshiba) for fixing prices of Static Random Access Memory. Samsung and Toshiba are also being investigated for collusion among manufacturers of NAND flash memory.

68.     Several Defendants, including Samsung and a joint venture between LG Electronics and Koninklijke Philips Electronics, are targets of a coordinated investigation by the DOJ and antitrust authorities in Europe, Japan and South Korea in connection with anticompetitive conduct in the market for LCD Products. Because LCD Products and CRT Products are used in the same primary applications, collusion with respect to CRT Product prices would bolster these same Defendants' LCD pricing cartel. Keeping CRTs prices artificially inflated also would serve both to increase profits on remaining CRTs sales while protecting LCD prices.

# FRAUDULENT CONCEALMENT

69.   Plaintiff and members of the Class did not discover and could not discover through the exercise of reasonable diligence the existence of the conspiracy alleged herein any earlier than November 9, 2007 when it was first publicly reported that manufacturers of CRT Products were under investigation by antitrust authorities in Europe, Japan, and South Korea for conspiring to fix the prices of CRT Products.

70.   Because Defendants' agreements, understandings, and conspiracies were kept secret until November 9, 2007, Plaintiff and members of the Class before that time were unaware of Defendants' unlawful conduct alleged herein, and they did not know before that time they were paying artificially high prices for CRT Products throughout the United States during the Class Period.

71.   The affirmative acts of the Defendants alleged herein, including acts in furtherance of the conspiracy, were wrongfully concealed and carried out in a manner that precluded detection.

72.   By its very nature, Defendants' price fixing conspiracy was inherently self-concealing. The CRT industry is not exempt from antitrust regulation, and thus, before November 9, 2007, Plaintiff reasonably considered it to be a well-regulated competitive industry.

73.   In the context of the circumstances surrounding Defendants' pricing practices, Defendants' acts of concealment were more than sufficient to preclude suspicion by a reasonable person that Defendants' pricing was collusive and conspiratorial. Accordingly, a reasonable person under the circumstances would not have been alerted to investigate the legitimacy of Defendants' prices before November 9, 2007.

74.   Plaintiff and members of the Class could not have discovered the alleged contract, conspiracy, or combination at an earlier date by the exercise of reasonable diligence because of the deceptive practices and techniques of secrecy employed by the Defendants and their co-conspirators to avoid detection of, and fraudulently conceal, their contract, combination, or conspiracy.

75.     Because the alleged conspiracy was both self-concealing and affirmatively concealed by Defendants and their co-conspirators, Plaintiff and members of the Class had no knowledge of the alleged conspiracy, or of any facts of information that would have caused a reasonably diligent person to investigate whether a conspiracy existed, until November 9, 2007, when reports of the investigations into price fixing in the CRT industry were first publicly disseminated.

76.     None of the facts or information available to Plaintiff and members of the Class prior to November 9, 2007, if investigated with reasonable diligence, could or would have led to the discovery of the conspiracy alleged herein prior to November 9, 2007.

77.     As a result of the self-concealing nature of the conspiracy and the active concealment of the conspiracy by Defendants and their co-conspirators, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

## CLAIM FOR RELIEF
### (Violation of Section 1 of the Sherman Act, 15 U.S.C. § 1)

78.     Plaintiff, on behalf of itself and all others similarly situated, realleges and incorporates, as if fully alleged herein, each of the allegations contained in the preceding paragraphs of this Complaint, and further alleges against Defendants as follows.

79.     Beginning at least as early as May 1, 1998 and continuing through the present, the exact dates being unknown to Plaintiff, Defendants and various co-conspirators entered into and engaged in a continuing agreement, contract, combination, and conspiracy to fix, raise, maintain, or stabilize the price for CRT Products in unreasonable restraint of trade and commerce in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

80.     Defendants, through their officers, directors and employees, entered into the contract, combination, trust and conspiracy among themselves and their co-conspirators by, among other things:

a.     participating in communications, including discussions of the prices of CRT Products in the United States;

1               b.       agreeing, during those communications, to charge prices at

2 specified levels and otherwise to increase, stabilize and maintain prices of CRT Products sold in

3 the United States; and

4               c.       selling CRT Products to various customers in the United States at

5 artificially inflated prices.

6         81.      For the purpose of forming and implementing the alleged combinations,

7 agreements, understandings and concert of action, Defendants and their co-conspirators did those

8 things they conspired to do, including but not limited to the acts alleged above, including actions

9 to fix, raise, maintain and stabilize the price of CRT Products.

10        82.      Defendants have participated in one or more overt acts in furtherance of the

11 conspiracy alleged above, and have participated in the conspiratorial activities described above.

12        83.      The combination and conspiracy alleged herein has had the following

13 effects, among others:

14               a.       Price competition in the sale of CRT Products has been restrained,

15 suppressed and/or eliminated throughout the United States;

16               b.       Prices for CRT Products sold by Defendants and their

17 co-conspirators have been fixed, raised, maintained and stabilized at artificially high, non-

18 competitive levels throughout the United States; and

19               c.       Plaintiff and members of the Class have been deprived of the

20 benefits of free and open competition.

21        84.      As a direct and proximate result of the Defendants' unlawful conduct,

22 Plaintiff and the members of the Class have been injured in their business and property in that

23 they paid more for CRT Products than they otherwise would have paid in the absence of

24 Defendants' unlawful conduct.

25                        **PRAYER FOR RELIEF**

26        WHEREFORE, Plaintiff prays:

27        A.      That the Court determine that the claim alleged herein under the Sherman

28 Act, 15 U.S.C. § 1, may be maintained as a class action under Rule 23(a) and (b)(3) of the Federal

1  Rules of Civil Procedure;

2      B.    That the unlawful conduct, contract, conspiracy or combination alleged

3  herein be adjudged and decreed to be a violation of Section 1 of the Sherman Act, 15 U.S.C. § 1;

4      C.    That Plaintiff and the Class recover damages, as provided law, and that a

5  joint and several judgment in favor of Plaintiff and the Class be entered against the Defendants in

6  an amount to be trebled in accordance with applicable laws;

7      D.    That Defendants, their subsidiaries, affiliates, successors, transferees,

8  assignees and their respective officers, directors, partners, principals, agents and employees

9  thereof, be enjoined and restrained from continuing and maintaining the combination, conspiracy

10  or agreement alleged herein;

11      E.    That Plaintiff and members of the Class be awarded pre- and post-

12  judgment interest, and that that interest be awarded at the highest legal rate from and after the

13  date of service of the initial complaint in this action;

14      F.    That Plaintiff and members of the Class recover their costs of this suit,

15  including reasonable attorneys' fees as provided by law; and

16      G.    That Plaintiff and members of the Class receive an award for such other

17  and further relief as the nature of the case may require or as the Court deems just, equitable, and

18  proper.

19  Dated: November 27, 2007

LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP

21  By: _____
       Joseph R. Saveri

23  Richard M. Heimann (State Bar No. 063607)
    rheimann@lchb.com
24  Joseph R. Saveri (State Bar No. 130064)
    jsaveri@lchb.com
25  Eric B. Fastiff (State Bar No. 182260)
    efastiff@lchb.com
26  275 Battery Street, 30th Floor
    San Francisco, CA 94111-3339
27  Telephone: (415) 956-1000
    Facsimile: (415) 956-1008

28

1

2    BERGER & MONTAGUE, P.C.

3    By: *H. Laddie Montague, Jr. By JES*

4    H. Laddie Montague, Jr.

5    H. Laddie Montague, Jr.
     *hlmontague@bm.net*
6    Ruthanne Gordon
     *rgordon@bm.net*
7    Candice Enders
     *cenders@bm.net*
8    BERGER & MONTAGUE, P.C.
     1622 Locust Street
9    Philadelphia, PA 19103
     Telephone: (215) 875-3000
10   Facsimile: (215) 875-4604

11   *Attorneys for Plaintiff and the Proposed Class*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

739154.2                              - 21 -

1

## DEMAND FOR JURY TRIAL

2

Plaintiff demands a trial by jury for all issues so triable.

3

Dated: November 27 2007

LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP

4

5

By: _____

6

Joseph R. Saveri

7

Richard M. Heimann (State Bar No. 063607)
rheimann@lchb.com

8

Joseph R. Saveri (State Bar No. 130064)
jsaveri@lchb.com

9

Eric B. Fastiff (State Bar No. 182260)
efastiff@lchb.com

10

275 Battery Street, 30th Floor
San Francisco, CA  94111-3339

11

Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008

12

BERGER & MONTAGUE, P.C.

13

14

By: _____

15

H. Laddie Montague, Jr.

16

H. Laddie Montague, Jr.
hlmontague@bm.net

17

Ruthanne Gordon
rgordon@bm.net

18

Candice Enders
cenders@bm.net

19

1622 Locust Street
Philadelphia, PA 19103

20

Telephone:  (215) 875-3000
Facsimile:  (215) 875-4604

21

*Attorneys for Plaintiff and the Proposed Class*

22

23

24

25

26

27

28

739154 2

- 22 -

ORIGINAL

# United States District Court

## NORTHERN DISTRICT OF CALIFORNIA

NATHAN MUCHNICK, INC., on behalf of itself
and all others similarly situated

**SUMMONS IN A CIVIL CASE**

**V.**

CASE NUMBER:

See attached

**MEJ**

**CV 07    5981**

**TO:** (Name and address of defendant)

See attached

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

Joseph R. Saveri (State Bar No. 130064)
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
275 Battery Street, 30th Floor
San Francisco, CA  94111-3339
Telephone:  (415) 956-1000

an answer to the complaint which is herewith served upon you, within   20      days after service of this summons upon you,
exclusive of the day of service. If you fail to do so, judgement by default will be taken against you for the relief demanded in
the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

Richard W. Wieking
CLERK

DATE _____ NOV 2 7 2007 _____

(BY) DEPUTY CLERK
Helen L. Almacen

9178.1.PDF

## RETURN OF SERVICE

| | DATE |
|---|---|
| Service of the Summons and Complaint was made by me [1] | |

| Name of SERVER | TITLE |
|---|---|
| | |

*Check one box below to indicate appropriate method of service*

☐    Served Personally upon the Defendant. Place where served:

☐    Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.
Name of person with whom the summons and complaint were left:

☐    Returned unexecuted:

☐    Other *(specify):*

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|
| | | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____        _____
                         *Date*                                        *Signature of Server*

_____
*Address of Server*

(1)    As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure

## ATTACHMENT TO SUMMONS

<u>Case</u>:

NATHAN MUCHNICK, INC., on behalf of itself and all others similarly situated

v.

CHUNGHWA PICTURE TUBES, LTD.;

TATUNG COMPANY OF AMERICA, INC.;

LG ELECTRONICS, INC.;

LG PHILIPS DISPLAY USA, INC.;

MATSUSHITA ELECTRIC INDUSTRIAL CO., LTD.;

PANASONIC CORPORATION OF NORTH AMERICA;

KONINKLIJKE PHILIPS ELECTRONICS N.V.;

PHILIPS ELECTRONICS NORTH AMERICA CORPORATION;

SAMSUNG ELECTRONICS CO., LTD.;

SAMSUNG ELECTRONICS AMERICA, INC.;

SAMSUNG SDI CO., LTD. f/k/a SAMSUNG DISPLAY DEVICE CO.;

TOSHIBA CORPORATION;

TOSHIBA AMERICA ELECTRONICS COMPONENTS, INC.;

TOSHIBA AMERICA INFORMATION SYSTEMS, INC.;

MT PICTURE DISPLAY COMPANY;

MT PICTURE DISPLAY CORPORATION OF AMERICA (New York);

MT PICTURE DISPLAY CORPORATION OF AMERICA (Ohio); and

LP DISPLAYS

CV 07        5981        MEJ

# U.S. District Court Northern California

## ECF Registration Information Handout

The case you are participating in has been designated for this court's Electronic Case Filing (ECF) Program, pursuant to Civil Local Rule 5-4 and General Order 45. <u>This means that you **must**</u> (check off the boxes ☑ when done):

☐ **1)** Serve <u>this</u> ECF Registration Information Handout on **all** parties in the case along with the complaint, or for removals, the removal notice. DO NOT serve the efiler application form, just this handout.

<u>Each attorney representing a party must also:</u>

☐ **2) Register** to become an efiler by filling out the efiler application form. Follow ALL the instructions on the form carefully. If you are already registered in this district, <u>do not</u> register again, your registration is valid for life on all ECF cases in this district.

☐ **3) Email** (do not efile) the complaint and, for removals, the removal notice and all attachments, in PDF format within ten business days, following the instructions below. You do not need to wait for your registration to be completed to email the court.

☐ **4)** Access dockets and documents using **PACER** (Public Access to Court Electronic Records). If your firm already has a PACER account, please use that - it is not necessary to have an individual account. PACER registration is free. If you need to establish or check on an account, visit: **http://pacer.psc.uscourts.gov** or call **(800) 676-6856**.

BY SIGNING AND SUBMITTING TO THE COURT A REQUEST FOR AN ECF USER ID AND PASSWORD, YOU CONSENT TO ENTRY OF YOUR E-MAIL ADDRESS INTO THE COURT'S ELECTRONIC SERVICE REGISTRY FOR ELECTRONIC SERVICE ON YOU OF ALL E-FILED PAPERS, PURSUANT TO RULES 77 and 5(b)(2)(D) (eff. 12.1.01) OF THE FEDERAL RULES OF CIVIL PROCEDURE.

**All subsequent papers submitted by attorneys in this case shall be filed electronically. Unrepresented litigants must file and serve in paper form, unless prior leave to file electronically is obtained from the assigned judge.**

ECF registration forms, interactive tutorials and complete instructions for efiling may be found on the ECF website: **http://ecf.cand.uscourts.gov**

### Submitting Initiating Documents

PDF versions of all the initiating documents originally submitted to the court (Complaint or Notice of Removal, exhibits, etc.) must be **emailed (not efiled)** to the **PDF email box for the presiding judge** (not the referring judge, if there is one) **within 10 (ten) business days** of the opening of your case. For a complete list of the email addresses, please go to: **http://ecf.cand.uscourts.gov** and click on **[Judges]**.

You must include the case number and judge's initials in the subject line of all relevant emails to the court. You do not need to wait for your registration to email these documents.

These documents must be emailed instead of e-filed to prevent duplicate entries in the ECF system. All other documents must be e-filed from then on. You do not need to efile or email the Civil Cover Sheet, Summons, or any documents issued by the court at case opening; note that you do need to efile the Summons Returned.

### Converting Documents to PDF

Conversion of a word processing document to a PDF file is required before any documents may be submitted to the Court's electronic filing system. Instructions for creating PDF files can be found at the ECF web site: **http://ecf.cand.uscourts.gov**, and click on **[FAQ]**.

**Email Guidelines:** When sending an email to the court, the subject line of the email **must** contain the **case number, judge's initials** and the **type of document(s)** you are sending, and/or the topic of the email.

**Examples:** The examples below assume your case number is 03-09999 before the Honorable Charles R. Breyer:

| Type of Document | Email Subject Line Text |
|---|---|
| Complaint Only | 03-09999 CRB Complaint |
| Complaint and Notice of Related Case | 03-09999 CRB Complaint, Related Case |
| Complaint and Motion for Temporary Restraining Order | 03-09999 CRB Complaint, TRO |

**Questions**
Almost all questions can be answered in our **FAQ**s at
**http://ecf.cand.uscourts.gov**, please check them first.

You may also email the ECF Help Desk at ECFhelpdesk@cand.uscourts.gov or
call the toll-free ECF Help Desk number at: (866) 638-7829.

The ECF Help Desk is staffed Mondays through Fridays from
9:00am to 4:00pm Pacific time, excluding court holidays.

Version 5/14/2007

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

NATHAN MUCHNICK INC,

Plaintiff(s),

v.

CHUNGHWA PICTURE TUBES,
Defendant(s).

No. C 07-05981 MEJ

ORDER SETTING INITIAL CASE
MANAGEMENT CONFERENCE
AND ADR DEADLINES

IT IS HEREBY ORDERED that this action is assigned to the Honorable Maria-Elena James. When serving the complaint or notice of removal, the plaintiff or removing defendant must serve on all other parties a copy of this order , the Notice of Assignment of Case to a United States Magistrate Judge for Trial, and all other documents specified in Civil Local Rule 4-2. Counsel must comply with the case schedule listed below unless the Court otherwise orders.

IT IS FURTHER ORDERED that this action is assigned to the Alternative Dispute Resolution (ADR) Multi-Option Program governed by ADR Local Rule 3. Counsel and clients shall familiarize themselves with that rule and with the material entitled "Dispute Resolution Procedures in the Northern District of California" on the Court ADR Internet site at www.adr.cand.uscourts.gov. A limited number of printed copies are available from the Clerk's Office for parties in cases not subject to the court's Electronic Case Filing program (ECF).

## CASE SCHEDULE -ADR MULTI-OPTION PROGRAM

| Date | Event | Governing Rule |
|------|-------|----------------|
| 11/27/2007 | Complaint filed | |
| 2/7/2008 | *Last day to:<br>• meet and confer re: initial disclosures, early settlement, ADR process selection, and discovery plan | FRCivP 26(f) & ADR L.R.3-5 |
| | • file Joint ADR Certification with Stipulation to ADR Process or Notice of Need for ADR Phone Conference | Civil L.R. 16-8 |
| 2/21/2008 | *Last day to file Rule 26(f) Report, complete initial disclosures or state objection in Rule 26(f) Report and file Case Management Statement per attached Standing Order re Contents of Joint Case Management Statement (also available at http://www.cand.uscourts.gov) | FRCivP 26(a) (1)<br>Civil L.R. 16-9 |
| 2/28/2008 | INITIAL CASE MANAGEMENT CONFERENCE (CMC) in Ctrm. B, 15th Floor, SF at 10:00 AM | Civil L.R. 16-10 |

* If the Initial Case Management Conference is continued, the other deadlines are continued accordingly.

# EXHIBIT B

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

### RELATED CASE ORDER

A Motion for Administrative Relief to Consider Whether Cases Should be Related or a *Sua Sponte* Judicial Referral for Purpose of Determining Relationship (Civil L.R. 3-12) has been filed. The time for filing an opposition or statement of support has passed. As the judge assigned to the earliest filed case below that bears my initials, I find that the more recently filed case(s) that I have initialed below are related to the case assigned to me, and such case(s) shall be reassigned to me. Any cases listed below that are not related to the case assigned to me are referred to the judge assigned to the next-earliest filed case for a related case determination.

**C 07-05944 SC**     **Crago, Inc. v. Chunghwa Picture Tubes, LTD. et al**

**C 07-05981 MEJ**     **Nathan Muchnick, Inc. v. Chunghwa Picture Tubes Ltd. et al**

I find that the above case is related to the case assigned to me.     SC

### ORDER

Counsel are instructed that all future filings in any reassigned case are to bear the initials of the newly assigned judge immediately after the case number. Any case management conference in any reassigned case will be rescheduled by the Court. The parties shall adjust the dates for the conference, disclosures and report required by FRCivP 16 and 26 accordingly. Unless otherwise ordered, any dates for hearing noticed motions are vacated and must be re-noticed by the moving party before the newly assigned judge; any deadlines set by the ADR Local Rules remain in effect; and any deadlines established in a case management order continue to govern, except dates for appearance in court, which will be rescheduled by the newly assigned judge.

Dated:   12/5/07

Judge Samuel Conti

-1-

# EXHIBIT C

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CASE NO. _____

ORDER SETTING CASE MANAGEMENT CONFERENCE

This action having been assigned to Judge Samuel Conti,

IT IS ORDERED that a conference will be held before Judge Conti on _____ at 10:00 A.M. in the United States Courthouse, 450 Golden Gate Avenue, San Francisco, California.

The parties shall appear in person or through counsel and shall be prepared to discuss the future course of the litigation including, but not limited to, matters set forth in Civil Local Rule 16-10.  Parties are to file a written case management statement at least 10 days before said hearing date.

The parties are required to comply with the provisions of Federal Rule of Civil Procedure 26, Civil Local Rules 16-3 to 16-10 (patent cases should comply with Patent Local Rule), including, but not limited to, the following requirements:

1.   The parties must meet and confer no less than 21 days prior to the initial case management conference.

2.   The parties must devise a discovery plan and submit it, jointly, no less than 7 days prior to the case management conference. The parties shall submit a proposed order embodying the terms of the discovery plan at the status conference.

3.   At the "meet and confer" conference referenced in paragraph 1, above, the parties shall discuss whether and to what extent they shall make the kinds of "disclosures" contemplated in Federal Rules of Civil Procedure. The parties shall report to the

For the Northern District of California

1  Court the results of this discussion in their case
2  management conference statement.

3  Following the conference, appropriate orders will be
4  entered regulating and controlling future proceedings in the case.

5  PLAINTIFF IS DIRECTED TO SERVE COPIES OF THIS ORDER AT
6  ONCE UPON ALL PARTIES TO THIS ACTION AND UPON THOSE
7  SUBSEQUENTLY JOINED IN ACCORDANCE WITH THE PROVISIONS OF RULES 4
8  AND 5, FEDERAL RULES OF CIVIL PROCEDURE, and to file with the
9  Clerk of the Court a certificate reflecting such service.

                              FOR THE COURT:

10                            Richard W. Wieking, Clerk

11

12

13                            By: _____

14                                       Deputy Clerk

15

16

17

18

19

20

21

22

23  IMPORTANT:

24  SEE ATTACHED ORDER RE TIMELY FILING OF PLEADINGS, BRIEFS, AND
25  MOTIONS CALENDAR AND ELECTRONIC CASE FILING:

26  Judge Conti's Law and Motion Calendar
    is held at 10:00 A.M., Fridays.
27

28
                                    2

NOTICE TO ALL ATTORNEYS:

ORDER RE TIMELY FILING OF PLEADINGS, BRIEFS, MOTIONS, ETC.

It has been noted by the court that many attorneys are not filing their pleadings and briefs within the time specified in the Local Rules, nor in the manner or form required.  Specifically, many attorneys have filed briefs and memoranda in excess of twenty-five (25) pages, without leave of court.  Said practice violates Civil Local Rule 7-4(b).

By addressing this order to you, the court does not infer that you or any member of your firm adheres to this practice, but rather seeks to put all attorneys on notice.

Any pleading or brief hereafter sought to be filed with the court after the required time, or in an improper manner or form, shall not be received or considered by the court.  Any attorney in violation of these requirements will be subject to other sanctions pursuant to Civil Local Rule 1-4.

RE ELECTRONIC CASE FILING:  In all cases that have been assigned to the Electronic Case Filing System, the parties are required to provide one paper copy of each document that is filed electronically for use in chambers.  The paper copy of each document shall be delivered no later than noon on the day after the document is filed electronically.  Delivery shall be made directly to Judge Conti's chambers.

RE MOTIONS:  All pleadings relating to all motions should be complete as to briefing and argument, as the court will decide the issues therein without oral argument, unless otherwise ordered by the Judge.  When this occurs, the court will notify the parties that they need to appear.  (Civil Local Rule 7-6)

For the Northern District of California

# STANDING ORDER FOR ALL JUDGES OF THE NORTHERN DISTRICT OF CALIFORNIA

## CONTENTS OF JOINT CASE MANAGEMENT STATEMENT

Commencing March 1, 2007, all judges of the Northern District of California will require the identical information in Joint Case Management Statements filed pursuant to Civil Local Rule 16-9. The parties must include the following information in their statement which, except in unusually complex cases, should not exceed ten pages:

1.     <u>Jurisdiction and Service</u>: The basis for the court's subject matter jurisdiction over plaintiff's claims and defendant's counterclaims, whether any issues exist regarding personal jurisdiction or venue, whether any parties remain to be served, and, if any parties remain to be served, a proposed deadline for service.

2.     <u>Facts</u>: A brief chronology of the facts and a statement of the principal factual issues in dispute.

3.     <u>Legal Issues</u>: A brief statement, without extended legal argument, of the disputed points of law, including reference to specific statutes and decisions.

4.     <u>Motions</u>: All prior and pending motions, their current status, and any anticipated motions.

5.     <u>Amendment of Pleadings</u>: The extent to which parties, claims, or defenses are expected to be added or dismissed and a proposed deadline for amending the pleadings.

6.     <u>Evidence Preservation</u>: Steps taken to preserve evidence relevant to the issues reasonably evident in this action, including interdiction of any document-destruction program and any ongoing erasures of e-mails, voice mails, and other electronically-recorded material.

7.     <u>Disclosures</u>: Whether there has been full and timely compliance with the initial disclosure requirements of Fed. R. Civ. P. 26 and a description of the disclosures made.

8.     <u>Discovery</u>: Discovery taken to date, if any, the scope of anticipated discovery, any proposed limitations or modifications of the discovery rules, and a proposed discovery plan pursuant to Fed. R. Civ. P. 26(f).

9.     <u>Class Actions</u>: If a class action, a proposal for how and when the class will be certified.

10.     <u>Related Cases</u>: Any related cases or proceedings pending before another judge of this court, or before another court or administrative body.

11.     <u>Relief</u>: All relief sought through complaint or counterclaim, including the amount of any

damages sought and a description of the bases on which damages are calculated. In addition, any party from whom damages are sought must describe the bases on which it contends damages should be calculated if liability is established.

12.    Settlement and ADR: Prospects for settlement, ADR efforts to date, and a specific ADR plan for the case, including compliance with ADR L.R. 3-5 and a description of key discovery or motions necessary to position the parties to negotiate a resolution.

13.    Consent to Magistrate Judge For All Purposes: Whether all parties will consent to have a magistrate judge conduct all further proceedings including trial and entry of judgment.

14.    Other References: Whether the case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

15.    Narrowing of Issues: Issues that can be narrowed by agreement or by motion, suggestions to expedite the presentation of evidence at trial (e.g., through summaries or stipulated facts), and any request to bifurcate issues, claims, or defenses.

16.    Expedited Schedule: Whether this is the type of case that can be handled on an expedited basis with streamlined procedures.

17.    Scheduling: Proposed dates for designation of experts, discovery cutoff, hearing of dispositive motions, pretrial conference and trial.

18.    Trial: Whether the case will be tried to a jury or to the court and the expected length of the trial.

19.    Disclosure of Non-party Interested Entities or Persons: Whether each party has filed the "Certification of Interested Entities or Persons" required by Civil Local Rule 3-16. In addition, each party must restate in the case management statement the contents of its certification by identifying any persons, firms, partnerships, corporations (including parent corporations) or other entities known by the party to have either: (i) a financial interest in the subject matter in controversy or in a party to the proceeding; or (ii) any other kind of interest that could be substantially affected by the outcome of the proceeding.

20.    Such other matters as may facilitate the just, speedy and inexpensive disposition of this matter.

# EXHIBIT D



**LEGAL LANGUAGE SERVICES**

A division of ALS International
8014 State Line Road
Suite 110
Leawood, KS 66208-3712

Telephone (913) 341-3167
Toll Free   (800) 755-5775
Telefax    (913) 341-3168
www.legallanguage.com

December 14, 2007

Andrew Kingsdale
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
Embarcadero Center West
275 Battery St., 28th Floor
San Francisco, CA 94111

   **Re:**  *International Service of Process in Taiwan – REVISED BID LETTER*

Dear Andrew:

It was a pleasure speaking with you about your project and I look forward to working with you in the future. There is currently no treaty in force between the U.S. and Taiwan regulating international judicial assistance. In the absence of such a treaty, US Federal and State Rules generally permit litigants to effect service of process by agent or by letter rogatory. The fees for these options are as follows:

| | Procedure | Fees | Comments |
|---|---|---|---|
| | **Method #1: Service through Letters Rogatory** *(estimated turnaround time: 4 to 7+ months)* | | |
| X | **Mandatory:** Translation of Letter Rogatory into Chinese; transmission through diplomatic pouch to Taiwanese judicial authorities | $2,180 *(first defendant)* $1,235 *(each additional defendant)* | constitutes a method of international service of process recognized by both Taiwanese and U.S. law; enforcement of ensuing judgment more likely but not guaranteed |
| X | **Mandatory:** Translation and legal certification of documents to be served *(based on documents received 12/12/07)* | $2,065 + $25 per certified copy *(one certified copy per defendant required)* | Taiwanese law stipulates that all documents to be served must be translated into the Chinese language |
| | **Optional:** Affidavit | $150/hr | if required by US court with respect to extensions, methods of service, etc. |
| X | **Optional but recommended:** FedEx service | *(billed directly to your account)* | |
| | **Optional:** Periodic follow up with foreign judiciary | $175/hour | Includes fees for interpreter and all long distance charges; please specify cap on hrs/per month |
| | **Mandatory:** Translation and certification of proof of service as returned by Taiwanese Court | $150 and up | Cost dependant upon length of proof of service |
| | *Total fees for 1 defendant* | $4,270 | |

| Method #2:  Personal Service through an Attorney or Agent in Taiwan _(estimated turnaround time:  2 to 6 weeks)_ | | |
|---|---|---|
| **Procedure** | **Fee** | **Comments** |
| LLS' counsel in Taiwan effects service | $3,500 per defendant _(may vary depending upon location and number of attempts)_ | Service method not illegal under Taiwan law but not recognized by it, therefore enforcement fraught with problems; recommend use to satisfy U.S. requirements only |
| _Recommended:_  Translation of documents to be served (based upon documents received 11/30/07) | $2,065 + $25 per certified copy _(one certified copy per defendant required)_ | May be required to meet U.S. due process rules |
| **Total for 1 defendant** | _$5,590_ | |

**Preparation of Letters Rogatory.**  A Letter Rogatory is a Letter from a US court which requests judicial assistance from a foreign court. Private parties may not issue Letters Rogatory.  LLS staff will draft the Letter Rogatory as well as an Application to the US Court to issue the Letter, and forward these to you for your review.  After you have approved the language used, you must sign and date the draft copy and return it to LLS.  Our staff will then translate all documentation and forward two sets to you to present to the US court for execution.  Please note that LLS _requires a complete street address_ (Fedex address) _for the court_ in which your case is pending.  Once executed, the Letter will be forwarded by diplomatic pouch to Taipei where it will be presented to the Taiwanese judicial authorities for processing.

**Turnaround Times.**  All turnaround times are approximate and are based on anecdotal information from the U.S. Department of Justice as well as LLS' own experience in the field.  Please understand that LLS cannot be held responsible for delays which may be incurred by government agencies through whom we need to work in order to effect proper service.

**Translation.**  Note that, in general, the summons and complaint should be translated into Chinese in order to comport with U.S. due process requirements; this is true irrespective of the method of service you intend to pursue.  Translation requirements under Method #2 (service through an attorney or agent) may be waived _only_ if plaintiff can prove, before a court of law, that the recipient understands or routinely does business in English.  Translation requirements may not be waived under any circumstances if plaintiff intends to pursue Letters Rogatory (Method #1).

**Proof of Service.**  Once service has been effected, proof of service will be returned directly to the Clerk of the Court where your case is pending. This will be in Chinese and should be forwarded to LLS for translation and certification before being filed with the court.

Throughout this process, LLS will be checking on the status of your service and keeping you informed.  Please understand however, that LLS cannot _guarantee_ the performance of foreign bureaucrats.  Please be aware that service of process under any of the methods described does not commit the State of Destination to recognize or enforce any ensuing judgment that may be rendered by a U.S. court.  If it is plaintiff's intention to pursue enforcement of a U.S. judgment in Taiwan, formal Letters Rogatory may be the best recourse.

**Alternative Methods of Service.**   LLS can also effect service in compliance with US rules through its attorney in Taiwan.   Please understand that such service may not comport with Taiwanese rules for notification and may jeopardize any subsequent attempt to enforce a US judgment in Taiwan. Note, too, that defendants are often located in high rise buildings with tight security, making personal service problematic.  For this reason, substitute service may have to be made.

**Caveat.**   LLS is one of the premier translation and legal service companies in North America with considerable experience in the area of administering service of process under the *Hague Convention* and other international treaties.  LLS does not, however, represent itself to be legal counsel in the area of international service of process, nor does it guarantee the performance of foreign bureaucrats.  LLS shall not be held liable for service which is quashed due to improper or incomplete documentation supplied by the client, incorrect address for the party to be served, or defects to form.   In the event service of process is determined to be improper for any reason occasioned by the acts or omissions of LLS, the attorney is entitled to a refund of all charges for those particular services.  LLS shall not be liable for any incidental or consequential damages. Please note that clients of LLS must treat all information regarding LLS' prices, procedures or contacts as confidential.  Specifically such information shall not be released to competitors or other parties.  All prices quoted are valid for 60 days from the date of this letter.

In order for LLS to initiate work, we require your signature below acknowledging that your firm has authorized the project and is responsible for payment.  The bid letter may be returned to LLS at our toll-free fax number, (888) 754-8454.  Please note that work will not be initiated without your signature and that delays in returning this bid letter may jeopardize deadlines for your project. In addition, please note that payment must be received by LLS prior to initiating work on the Letters Rogatory and/or the translation of the documents.  For your convenience, LLS accepts most major credit cards, checks and wire transfers.

Please note if job is subsequently cancelled or put on hold, LEIFF, CABRASER, HEIMANN & BERNSTEIN, LLP will be responsible for any costs that have been incurred by LLS.

Please do not hesitate to call me at (800) 755-5775, if you have any questions about any aspect of the work we will be performing.  I look forward to hearing from you.

Sincerely,                                          Agreed and accepted by:

LEGAL LANGUAGE SERVICES                  LEIFF, CABRASER, HEIMANN & BERNSTEIN,
*A Division of ALS International, Inc.*        LLP

Karina Shreefer, Esq.                          _____ 12/31/07
International Litigation Support               (signature & date)

                                               _____
                                               (printed name & title)