Joseph J. Tabacco, Jr. (75484)
Christopher T. Heffelfinger (118058)
Julie J. Bai (227047)
**BERMAN DeVALERIO PEASE TABACCO
 BURT & PUCILLO**
425 California Street, Suite 2100
San Francisco, CA  94104-2205
Telephone: (415) 433-3200
Facsimile:  (415) 433-6382

Manuel J. Dominguez
**BERMAN DeVALERIO PEASE TABACCO
 BURT & PUCILLO**
222 Lakeview Avenue, Suite 900
West Palm Beach, FL  33401
Telephone: (561) 835-9400
Facsimile:  (561) 835-0322

**Attorneys for Plaintiffs
Univisions-Crimson Holding Inc.,
Central New York Univision Video Systems Inc.
and Crimson Tech Inc.**

## UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

#### SAN FRANCISCO DIVISION

| | |
|---|---|
| CRAGO, Inc., on Behalf of Itself and all Others Similarly Situated,<br><br>    Plaintiff,<br><br>    v.<br><br>CHUNGHWA PICTURE TUBES, LTD., *et al.*,<br><br>    Defendants. | CASE NO. CV-07-5944 SC<br><br>**DECLARATION OF CHRISTOPHER T. HEFFELFINGER IN SUPPORT OF ADMINISTRATIVE MOTION TO CONSIDER WHETHER CASES SHOULD BE RELATED** |
| This Document Relates To:<br><br>UNIVISIONS-CRIMSON HOLDING, INC., CENTRAL NEW YORK UNIVISION VIDEO SYSTEMS, INC., and CRIMSON TECH, INC., on Behalf of Themselves and all Others Similarly Situated,<br><br>    Plaintiffs,<br><br>    v. | |

1  CHUNGHWA PICTURE TUBES, LTD, )
   TATUNG COMPANY OF AMERICA, INC., LG )
2  ELECTRONICS, INC., SAMSUNG )
   ELECTRONICS CO., LTD., SAMSUNG SDI )
3  CO., LTD., SAMSUNG ELECTRONICS )
   AMERICA, INC., MATSUSHITA ELECTRICAL )
4  INDUSTRIAL CO., LTD., PANASONIC )
   CORPORATION OF NORTH AMERICA, )
5  VICTOR COMPANY OF JAPAN, LIMITED, )
   KONINKLIJKE PHILIPS ELECTRONICS N.V., )
6  PHILIPS ELECTRONICS NORTH AMERICA )
   CORPORATION, LG PHILIPS DISPLAYS USA, )
7  INC., TOSHIBA CORPORATION, TOSHIBA )
   AMERICA, INC., TOSHIBA AMERICA )
8  ELECTRONICS COMPONENTS, INC., )
   TOSHIBA AMERICA INFORMATION )
9  SYSTEMS, INC., MT PICTURE DISPLAY )
   COMPANY, and LP DISPLAYS, )
10                                    )
                Defendants.           )
11                                    )
   Case No. CV-08-0494 MEJ            )
12 _____)

13        I, Christopher T. Heffelfinger, declare:

14        1.    I am a member in good standing of the Bar of the State of California and am

15  admitted to practice before this Court.  I am a member of the law firm of Berman DeValerio Pease

16  Tabacco Burt & Pucillo, counsel for plaintiffs Univisions-Crimson Holding Inc., Central New

17  York Univision Video Systems Inc., and Crimson Tech Inc. in the above-referenced action. I

18  submit this Declaration in support of Plaintiffs' Administrative Motion to Consider Whether Cases

19  Should Be Related.  The matters set forth herein are of my own personal knowledge, and if called

20  and sworn as a witness I could competently testify regarding them.

21        2.    Attached hereto as Exhibit A is a true and correct copy of a complaint captioned

22  *Univisions-Crimson Holding, Inc. et al v. Chunghwa Picture Tubes, Ltd. et al,* Case No. C-08-

23  0494 MEJ ("*Univisions*") filed on January 23, 2008 in the Northern District of California and

24  assigned to the Honorable Maria Elena-James.  The *Univisions* action is a proposed class action on

25  behalf of direct purchasers of cathode ray tubes.

26        3.    On December 5, 2007, January 4, January 16 and January 22, 2008 the Court

27  ordered the following cases related to the low numbered case, *Crago, Inc. v. Chunghwa Picture

28  Tubes, Ltd. et al,* Case No. CV-07-05944 SC ("*Crago*") filed on November 26, 2007:

| CASE NAME | CASE NUMBER | DATE FILED |
|---|---|---|
| *Nathan Muchnick, Inc. v. Chunghwa Picture Tubes, Ltd. et al.* ("*Muchnick*") | CV-07-05981 SC | November 27, 2007 |
| *Juette, et al. v. Chunghwa Picture Tubes, Ltd. et al.* ("*Juetten*") | CV-07-06225 SC | December 10, 2007 |
| *Hawel v. Chunghwa Picture Tubes, Ltd. et al.* ("*Hawel*") | CV-07-06279 SC | December 12, 2007 |
| *Caldwell v. Matsushita Electric Industrial Co., Ltd. et al.* ("*Caldwell*") | CV-07-06303 SC | December 13, 2007 |
| *Figone v. LG Electronics, Inc. et al.* ("*Figone*") | CV-07-06331 SC | December 13, 2007 |
| *Art's TV & Appliance v. Chunghwa Picture Tubes, Ltd. et al.* ("*Art's TV*") | CV-07-06416 SC | December 19, 2007 |
| *Monikraft, Inc. v. Chunghwa Picture Tubes, Ltd. et al.* ("*Monikraft*") | CV-07-06433 SC | December 21, 2007 |
| *Orion Home Systems, LLC v. Chunghwa Picture Tubes, Ltd. et al.* ("*Orion*") | CV-08-00178 SC | January 10, 2008 |
| *Carroll Cut-Rate Furniture v. Chunghwa Picture Tubes, Ltd. et al.* ("*Carroll Cut-Rate*") | CV-08-00309 SC | January 16, 2008 |

4.     Based on the Court's Orders to relate, as stated above, and after reviewing the complaint filed on January 17, 2008 in *Pierce v. Beijing-Matsushita Color CRT Company, Ltd. et al*, Case No. CV-08-00337 MMC ("*Pierce*"),[1] plaintiffs in all cases assert claims for violations of the Sherman Act, 15 U.S.C. § 1 against many of the same Defendants.

5.     A stipulation pursuant to Civil Local Rule 7-11(a) could not be obtained because defendants in this action have not yet appeared.

I declare under penalty of perjury pursuant to the laws of the United States that the foregoing is true and correct.  Executed at San Francisco, California, on January 28, 2008.

_____/s/ Christopher T. Heffelfinger_____
CHRISTOPHER T. HEFFELFINGER

---

[1] As of the filing of this motion, *Pierce* has not yet been related to any of the cases.

EXHIBIT A

1   Joseph J. Tabacco, Jr. (No. 75484)
    Christopher T. Heffelfinger (118058)
2   **BERMAN DeVALERIO PEASE TABACCO**
      **BURT & PUCILLO**
3   425 California Street, Suite 2100
    San Francisco, California 94104-2205
4   Telephone: (415) 433-3200
    Facsimile: (415) 433-6382
5
    Manuel J. Dominguez
6   **BERMAN DeVALERIO PEASE TABACCO**
      **BURT & PUCILLO**
7   222 Lakeview Avenue, Suite 900
    West Palm Beach, FL  33401
8   Telephone: (561) 835-9400
    Facsimile: (561) 835-0322
9
    *Counsel for Plaintiffs*
10
    (Additional Counsel on Signature Page)
11

12                    UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF CALIFORNIA
13   _____
14   UNIVISIONS-CRIMSON HOLDING, INC.,      )  CASE NO.
     CENTRAL NEW YORK UNIVISION VIDEO       )
15   SYSTEMS, INC., and CRIMSON TECH, INC., on )  **CLASS ACTION COMPLAINT**
     Behalf of Themselves and all Others Similarly )
16   Situated,                              )  Jury Trial Demanded
                                            )
17              Plaintiffs,                 )
                                            )
18         v.                               )
                                            )
19   CHUNGHWA PICTURE TUBES, LTD,           )
     TATUNG COMPANY OF AMERICA, INC., LG    )
20   ELECTRONICS, INC., SAMSUNG             )
     ELECTRONICS CO., LTD., SAMSUNG SDI     )
21   CO., LTD., SAMSUNG ELECTRONICS         )
     AMERICA, INC., MATSUSHITA ELECTRICAL   )
22   INDUSTRIAL CO., LTD., PANASONIC        )
     CORPORATION OF NORTH AMERICA,          )
23   VICTOR COMPANY OF JAPAN, LIMITED,      )
     KONINKLIJKE PHILIPS ELECTRONICS N.V.,  )
24   PHILIPS ELECTRONICS NORTH AMERICA      )
     CORPORATION, LG PHILIPS DISPLAYS USA,  )
25   INC., TOSHIBA CORPORATION, TOSHIBA     )
     AMERICA, INC., TOSHIBA AMERICA         )
26   ELECTRONICS COMPONENTS, INC.,          )
     TOSHIBA AMERICA INFORMATION            )
27   SYSTEMS, INC., MT PICTURE DISPLAY      )
     COMPANY, and LP DISPLAYS,              )
28              Defendants.                 )
     _____)

CLASS ACTION COMPLAINT                                           1

1    Plaintiffs, Univisions-Crimson Holding, Inc., Central New York Univision Video Systems,

2    Inc. and Crimson Tech, Inc., on behalf of themselves and all others similarly situated, bring this

3    action under the federal antitrust laws, Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1

4    ("Sherman Act").    This complaint arises from the illegal and anticompetitive conduct of

5    Defendants in connection with the market for cathode-ray tubes ("CRTs") and products that utilize

6    CRTs, primarily televisions and computer monitors (collectively "CRT Products").    The

7    allegations herein are made on information and belief pursuant to the investigation of counsel,

8    except those as to Plaintiffs, which are made with personal knowledge.

9                                **NATURE OF ACTION**

10        1.        This antitrust action arises out of a conspiracy among Defendants and their co-

11   conspirators, which had the purpose and effect of fixing and artificially maintaining and stabilizing

12   the price at which CRTs and CRT Products were sold in the United States.  This action is brought

13   on behalf of a class ("Class") consisting of all persons and entities who purchased CRTs and CRT

14   Products directly from the named Defendants in the United States during the period from

15   approximately September 1, 2001 through the present (the "Class Period").  As a result of

16   Defendants' unlawful conduct, Plaintiffs and the other members of the Class paid artificially

17   inflated prices for CRTs and CRT products during the Class Period.

18        2.        Defendants are leading manufacturers of CRTs.  CRTs are used to generate images

19   in televisions and on computer screens.  CRTs function by deflecting and modulating a beam of

20   electrons on a florescent screen.   The technology of CRTs has been in existence since the

21   beginning of the twentieth century.  CRTs have been gradually replaced in the last decade by flat

22   panel displays which are plasmas, liquid crystal displays, and other technologies.  Nevertheless,

23   the CRT industry still generates $4.43 billion annually in worldwide sales.  As a result of

24   Defendants' unlawful conduct, Plaintiffs and the other members of the Class paid artificially

25   inflated prices for CRTs and CRT Products during the Class Period.  Such prices exceed the

26   amount they would have paid if the price for CRTs and CRT Products had been determined by a

27   competitive market.

28

CLASS ACTION COMPLAINT                                                                            2

## JURISDICTION AND VENUE

3.      Plaintiff brings this action pursuant to Section 4 of the Clayton Act, 15 U.S.C. § 15, for Defendants' violations of Section 1 of the Sherman Act, 15 U.S.C. § 1. Jurisdiction is conferred on this Court by 28 U.S.C. §§ 1331, 1337, and by section 4 of the Clayton Act, 15 U.S.C. § 1.

4.      This Court has in personam jurisdiction over each of the Defendants because each was engaged in an illegal price-fixing scheme and conspiracy that was directed to and/or caused injury to persons or entities residing in, located in, or doing business in this District and throughout the United States.

5.      Venue as to Defendants is proper in this District pursuant to 15 U.S.C. §§ 15(a) and 22, 28 U.S.C. § 1391(b), (c) and (d) and Local Rule 3-2 of the United States District Court for the Northern District of California because during the Class Period, one or more of the Defendants resided, transacted business, was found, or had agents in this District, and because a substantial part of the events giving rise to Plaintiffs' claims on a class-wide basis occurred, and a substantial portion of the affected trade and commerce described below was carried out, in this District.

## PARTIES

6.      Plaintiff Univisions-Crimson Holding, Inc. is a corporation organized under the laws of the State of New York with its principal place of business in Syracuse, New York. Univisions-Crimson Holding, Inc. purchased CRTs and CRT Products primarily for resale to its customers. During the time periods relevant to the allegations in this complaint, Univisions-Crimson Holding, Inc. purchased CRTs or CRT Products in the United States from one or more Defendants and sustained injury and damage by reason of the antitrust violations alleged in this complaint.

7.      Plaintiff Central New York Univision Video Systems, Inc. is a corporation organized under the laws of the State of New York with its principal place of business in Syracuse, New York. Central New York Univision Video Systems, Inc. is a wholly owned subsidiary of Univisions-Crimson Holding, Inc. Central New York Univision Video Systems, Inc. purchased CRTs and CRT Products primarily for resale to its customers. During the time periods relevant to the allegations in

CLASS ACTION COMPLAINT                                                            3

1 this complaint, Central New York Univision Video Systems, Inc. purchased CRTs or CRT Products
2 in the United States from one or more Defendants and sustained injury and damage by reason of the
3 antitrust violations alleged in this complaint.

4      8.    Plaintiff Crimson Tech, Inc. is a corporation organized under the laws of
5 Massachusetts with its principal place of business in Wilmington, Massachusetts. Crimson Tech,
6 Inc. is a wholly owned subsidiary of Univisions-Crimson Holding, Inc. Crimson Tech, Inc.
7 purchased CRTs or CRT Products primarily for resale to its customers. During the time periods
8 relevant to the allegations in this complaint, Crimson Tech, Inc. purchased CRTs and CRT Products
9 in the United States from one or more Defendants and sustained injury and damage by reason of the
10 antitrust violations alleged in this complaint.

11      9.    Defendant Chunghwa Picture Tubes, Ltd. ("Chunghwa") is a Taiwanese company
12 with its principal place of business at 1127 Ho-ping Road, Taoyuan, Taiwan. Chunghwa is a
13 partially-owned subsidiary of Tatung Company, a consumer and industrial electronics and
14 appliance manufacturer based in Taiwan. Wei-Shan Lin, the Chairman of the Board of Chunghwa,
15 is also the President and Chairman of the Board of Tatung Company. During the Class Period,
16 Chunghwa manufactured, sold, and distributed CRTs or CRT Products to customers throughout
17 the United States.

18      10.    Defendant Tatung Company of America, Inc. is a California corporation with its
19 principal place of business at 2850 El Presidio Street, Long Beach, California. Tatung Company
20 of America, Inc. is a wholly-owned and controlled subsidiary of Tatung Company. During the
21 Class Period, Tatung Company of America, Inc. manufactured, distributed and sold CRTs or CRT
22 Products to customers throughout the United States.

23      11.    Defendant LG Electronics, Inc., is a multinational corporation headquartered at LG
24 Twin Towers 20, Yeouido-dong, Yeongdeungpo-gu, Seoul, South Korea 150-721. During the
25 Class Period, LG Electronics manufactured, sold, and distributed CRTs or CRT Products to
26 customers throughout the United States.

27      12.    Defendant Samsung Electronics Co., Ltd. ("Samsung Electronics"), a Korean
28 corporation, maintains its executive offices at Samsung Main Building, 250-2 ga, taepyung-ro

CLASS ACTION COMPLAINT                                              4

1   chung-gu, Seoul, Korea.  Samsung Electronics controls an integrated global enterprise comprised

2   of itself and other entities including Defendants Samsung SDI Co., Ltd. and Samsung Electronics

3   America, Inc.  During the Class Period, Samsung Electronics manufactured, sold or distributed

4   CRTs or CRT Products throughout the world, including the United States.

5        13.     Defendant Samsung SDI Co., Ltd. ("Samsung SDI"), a Korean corporation,

6   maintains its offices at 575 Shin-dong, Youngtong-gu, Suwon, South Korea.   Samsung SDI is

7   partially owned by Samsung Electronics.  During the Class Period, Samsung SDI manufactured,

8   sold or distributed CRTs or CRT Products throughout the United States.

9        14.     Defendant Samsung Electronics America, Inc. ("Samsung America") is a New

10  York corporation with its principal place of business at 105 Challenger Road, Ridgefield Park,

11  New Jersey.   Samsung America is a wholly-owned and controlled subsidiary of Defendant

12  Samsung Electronics.  During the Class Period, Samsung America sold and distributed CRTs or

13  CRT Products manufactured by Samsung Electronics or Samsung SDI   throughout the United

14  States.

15        15.     Defendants Samsung Electronics, Samsung SDI, and Samsung America are referred

16  to individually and collectively herein as "Samsung."

17        16.     Defendant Matsushita Electrical Industrial Co., Ltd ("Matsushita") is a Japanese

18  company and has its headquarters at 1006 Oaza Kadoma, Kadoma City, Osaka 571-8501, Japan.

19  Matushita is the parent company of Panasonic Corporation of North America, JVC Company of

20  America, and Victor Company of Japan, Ltd.  Matsushita produces consumer electronics under the

21  Panasonic, Quasar, Technics, and JVC brands.  During the Class Period, Matsushita manufactured,

22  sold, and distributed CRTs or CRT Products to customers throughout the United States.

23        17.     Defendant Panasonic Corporation of North America ("Panasonic"), formerly

24  Matsushita Electric Corporation of America, is a subsidiary of Defendant Matsushita and oversees

25  its North American business operations, including sales and marketing.  It is headquartered at 1

26  Panasonic Way, Secaucus, NJ 07094.  During the Class Period, Panasonic sold and distributed

27  CRTs or CRT Products throughout the United States.

28        18.     Defendant Victor Company of Japan, Limited ("JVC") is a foreign company with

CLASS ACTION COMPLAINT                                                              5

its principal place of business located at 12, Moriya-cho 3-chome, Kanagawa-ku, Yokahama, 221-8528, Japan.  JVC is owned, in part by Matsushita.  During the Class Period,  JVC sold and distributed CRTs or CRT Products throughout the United States.

19.    Defendant Koninklijke Philips Electronics N.V. ("Koninklijke"), also known as "Royal Philips Electronics, has its headquarters at Breitner Center Amstelplein 2, Amsterdam 1096, Netherlands.  During the Class Period, Koninklijke manufactured, sold and/or distributed CRTs or CRT Products throughout the United States.

20.    Defendant Philips Electronics North America Corporation ("Philips North America") is the subsidiary and United States arm of Koninklijke.  It is headquartered at 1251 Avenue of the Americas, New York, New York 10020.  During the Class Period, Philips North America manufactured, marketed, sold, and distributed CRTs or CRT Products throughout the United States.

21.    Defendant LG Philips Displays USA, Inc. ("LGPD USA") is a subsidiary of Philips North America that has its principal place of business at 300 W Morgan Rd., Ann Arbor, Michigan 48108-9108.  During the Class Period, LGPD USA manufactured, sold and distributed CRT or CRT Products throughout the United States.

22.    Defendant Toshiba Corporation is a Japanese company with its principal place of business at 1-1 Shibaura 1-chome, Tokyo 105-8001, Japan.  During the Class Period, Toshiba manufactured, sold and/or distributed CRTs or CRT Products throughout the United States.

23.    Defendant Toshiba America Inc., is a New York Corporation located at 1251 Avenue of the Americas, Suite 4100, New York, New York, 10020-1104.  It is a wholly owned subsidiary of Toshiba Corporation.  During the Class Period, Toshiba America marketed, sold, and distributed CRTs or CRT Products manufactured by Toshiba Corporation  throughout the United States.

24.    Defendant Toshiba America Electronics Components, Inc. is a California corporation with its principal place of business at 19900 MacArthur Boulevard, Suite 400, Irvine, California.  Toshiba America Electronics Components, Inc. is a wholly-owned and controlled subsidiary of Toshiba America Inc.  During the Class Period, Toshiba America Electronics

1  Components, Inc., sold and distributed CRTs or CRT Products manufactured by Toshiba
2  Corporation throughout the United States.

3       25.    Defendant Toshiba America Information Systems, Inc., is a California corporation
4  with its principal place of business at 9470 Irvine Blvd., Irvine, California.  Toshiba America
5  Information Systems, Inc. is a wholly-owned and controlled subsidiary of Toshiba America, Inc.
6  During the Class Period, Toshiba America Information Systems, Inc. sold and distributed CRTs or
7  CRT Products manufactured by Toshiba Corporation throughout the United States.

8       26.    Defendants Toshiba Corporation, Toshiba America Inc., Toshiba American
9  Electronics Components, Inc., and Toshiba America Information Systems, Inc. are referred to
10  collectively herein as "Toshiba."

11       27.    Defendant MT Picture Display Company is a wholly-owned and controlled
12  subsidiary of Matsushita organized under the laws of Japan with its principal place of business
13  located at Rivage Shinagawa, I-8, Konan 4-chome, Minato-ku Tokyo 108-0075, Japan .
14  Originally, MT Picture Display was set up in 2003 as a joint venture between Matsushita and
15  Toshiba Corporation, and called Matsushita Toshiba Picture Display Co., Ltd.  This new joint
16  venture integrated both Matsushita's and Toshiba Corporation's CRT divisions.  In March 2007,
17  however, Matsushita acquired Toshiba Corporation's interest and the name was changed to MT.
18  Picture Display Company.  During the Class Period, MT Picture Display, as well as its predecessor
19  Matsushita Toshiba Picture Display Co., Ltd. sold and distributed CRTs or CRT Products to
20  customers throughout the United States.

21       28.    Defendant LP Displays (formerly LG Philips Display), a joint venture between LG
22  Electronics and Koninklijke Philips Electronics, is organized under the laws of Hong Kong with its
23  principal place of business located at Corporate Communications, 6th Floor, ING Tower, 308 Des
24  Voeux Road Central, Sheung Wan, Hong Kong.  During the Class Period, LP Displays sold and
25  distributed CRTs or CRT Products to customers throughout the United States.  Phillips and LG
26  Phillips America are referred to individually and collectively here-in as "LG Phillips".

27       29.    On information and belief, other partnerships, corporations, or other business
28  entities, unknown to Plaintiffs, are co-conspirators with Defendants in their unlawful restraint of

CLASS ACTION COMPLAINT                                          7

1  trade.   These other co-conspirators have facilitated, adhered to, participated in, and/or

2  communicated with others regarding the conspiracy.

3      30.   The conduct alleged herein was Defendants' conduct or actions ordered or done by

4  Defendants' officers, agents, employees, or representatives, while engaged in the usual

5  management of Defendants' businesses.

6                    **INTERSTATE TRADE AND COMMERCE**

7      31.   Throughout the Class Period, Defendants sold and shipped substantial quantities of

8  CRTs or CRT Products in a continuous and uninterrupted flow of transactions in interstate

9  commerce throughout the United States, including in this District.

10     32.   The unlawful activities of Defendants that are subject to this Complaint were within

11 the flow of, and have had a direct and substantial effect on, interstate trade and commerce.

12               **RELEVANT PRODUCT AND GEOGRAPHIC MARKET**

13     33.   The relevant product market is the market for CRTs and CRT Products sold to

14 direct purchasers.   The relevant geographic market is the entire United States.   Defendants

15 collectively controlled a significant share of the market for CRTs and CRT Products both globally

16 and in the United States.

17                                **FACTS**

18 **CRT Technology**

19     34.   Cathode-ray tubes, or CRTs, are specialized vacuum tubes in which images are

20 produced when an electron beam is deflected and modulated before striking a phosphorescent

21 surface, normally a florescent screen.   CRT technology is not new, having been first developed at

22 the end of the 19th century.   CRT remained the dominant technology used in televisions and

23 computer monitors until relatively recently with the advent flat panel displays consisting of plasma

24 screens and liquid crystal displays ("LCDs").

25     35.   As LP Displays describes the technology on its website:

26     **How does the color picture tube work?**
       A color picture tube consists mainly of a glass bulb with a picture screen at the front
27     and an electron gun and a deflection coil at the back. The picture screen is coated
       internally with a light-sensitive (fluorescent) layer of phosphors consisting of red,
28

CLASS ACTION COMPLAINT                                                    8

green and blue dots or lines. The color image is composed from these three primary colors, which can then be blended to produce any color.

At the back of the tube (known as the 'neck') is the electron gun containing three cathodes, one each for the red, green and blue signals. The cathodes are coated with a substance that emits electrons when it is heated. The beams of emitted electrons are focused by the metal parts of the electron gun, which are connected to different voltages and hence act as a lens. The screen is bombarded by high-speed electrons that cause the screen's phosphor coating to light up at the points where the electrons hit it.

Inside the picture screen, approximately 10 mm in front of the phosphor coating, is a thin metal plate with a pattern of small holes. This is called the 'shadow mask.' Its function is to ensure that the electrons from the three separate cathodes hit the correct phosphor on the screen behind the shadow mask.

http://www.lgphilips-displays.com/english/download/our_technology.pd (last accessed Nov. 30, 2007).

36.     CRTs are manufactured in standard sizes and are interchangeable with one another.

**CRT Product Market**

37.     Despite growing sales of products using LCD or plasma technology, CRTs are still used in a number of products because they are significantly cheaper than the newer technologies. Defendant Samsung continues to invest in CRT technology and in 2005 introduced a new line of "SlimFit" CRT televisions for the United States and European markets.

38.     While CRT remains the dominant technology used in monitors and televisions, LCD and plasma screen televisions and monitors have been gradually overtaking the number of CRT televisions and monitors sold in the United States and Europe.  This is a recent phenomenon, as recently as the fourth quarter of 2005 CRT televisions accounted for just under 65 percent of unit shipments in both North America and Europe (Tony Smith article in Register hardware "World LCD TV sales overtake CRT revenue).  The CRT industry remains large, and is estimated to generate $4.43 billion in worldwide sales. (Assoc. Press 11.09.07)

39.     While the market for CRT Products has been in steady decline, it represented the dominant technology in televisions sold in the United States until fairly recently.  In 2004, CRT televisions represented 78% of the U.S. Market.  (Int'l Herald Tribune Article 8.07.06).

**Structure of CRT Industry**

40.    The CRT industry has all the characteristics of an industry in which a pricing cartel exists: including market concentration, ease of information sharing, consolidation of manufacturers, multiple interrelated business relationships, heightened price sensitivity to supply and demand forces, and a homogenous product.

41.    Because the CRT industry is defined by interrelated business arrangements such as joint ventures, allegiances between companies in certain countries, and relationships between the executives of certain companies, there were many opportunities for Defendants to discuss competitive information.  The ease of communication was facilitated by the use of meetings, telephone conversations, email messages, and text messaging.  Defendants took advantage of these opportunities to discuss, and agree upon the pricing of CRTs and CRT Products.

42.    The CRT industry has experienced significant consolidation, as reflected by: (a) the creation of Matsushita Toshiba Picture Display Co., Ltd. in 2003, the predecessor to MT Picture Display,  as a joint venture between Matsushita and Toshiba; (b) the formation of LP Displays as a joint venture between LG Electronics and Koniklijke Phillips Electronics; and (c) the creation of TTE, a joint venture between TCL Multimedia, TCL Corporation and Thomson.

43.    The industry has an incestuous nature whereby multiple business relationships between competitors blur the lines of competition and provide ample opportunity for collusion.

44.    Some of the Defendants are known antitrust violators.  Samsung, for example, was fined $300 million by the United States Department of Justice ("DOJ") in October of 2005 for participating in a conspiracy to fix prices for Dynamic Random Access Memory.  Samsung is also under investigation by the DOJ (along with the some of the other Defendants) for price fixing allegations concerning Static Random Access Memory.

**Defendants' Illegal Price-Fixing Conduct**

45.    Since as early as 2001 the Defendants were aware that the revenue they derived from the manufacturing of CRTs and CRT products  was going to plunge.  CRT technology was being supplanted by flat panel technology.  CRTs were also hurt by the move to larger screens, consumer preference in developed nations, and price erosion from new entrants into the market.

1  CRT manufacturers were facing difficult times, falling demand for CRTs and increasing

2  competition and supply. In a competitive market this should lead to a precipitate fall in prices for

3  CRTs and CRT products.

4        46.    To stem the tide of potential revenue erosion for CRTs the Defendants, entered into

5  a conspiracy, which had the purpose and effect of fixing, raising, maintaining and stabilizing the

6  price of CRTs and CRT products at artificially inflated levels.

7        47.    During this period, the exact dates of which are not currently known by plaintiffs,

8  the Defendants held meetings to discuss price targets for CRTs. Some of these meetings took

9  place in Southeast Asian countries where CRT manufacturing bases are located.

10        48.    The ability of CRT manufacturers to engage in this conspiracy was facilitated by

11  increasing consolidation in this industry. Rival CRT manufacturers LG and Phillips, entered into a

12  joint venture forming L.G. Phillips Displays, which would come to supply twenty five percent of

13  the CRT market. Further, another set of CRT competitors, Matsushita and Toshiba, formed a joint

14  venture to create MT Picture Display, which became one of the largest manufacturers of CRTs.

15  The conspiracy was also assisted  by the  closing of various manufacturing facilities adversely

16  affecting the supply of CRTs available to the market:

17       (a)    In December, 2002, LP Displays closed its CRT plant in Ottawa Ohio.

18       (b)    In 2002, Chunghwa closed a CRT plant in Lanarkshire, Scotland.

19       (c)    In July 2003, Mitsubishi Electric closes its CRT plant in Mexico.

20
21       (d)    In 2003 LG Phillips closed CRT production facilities in Germany and the
          United Kingdom.

22
23       (e)    In 2004, Thomson closed its U.S. CRT manufacturing facilities.

24       (f)    In 2005, Matsushita ended CRT production in Europe and the US.

25       (g)    In 2005 LG Phillips ceased all CRT production in the United Kingdom.

26       (h)    In 2007, Matsushita closed CRT plants in Thailand and Indonesia

27  **International Investigations of CRT Industry**

28        49.    On November 8, 2007, the European Commission issued a press-release

CLASS ACTION COMPLAINT                                              11

1 | announcing that Commission officials, accompanied by the relevant national authorities, carried

2 | out unannounced inspections at the premises of CRT manufacturers.  The press-release stated that

3 | the Commission had "reason to believe that the companies concerned may have violated European

4 | Community Treaty rules on cartels and restrictive business practices (Article 81)."

5 |      50.     According to numerous articles, a spokesman for Defendant Matsushita confirmed

6 | that Japan's Fair Trade Commission had searched its CRT unit, Defendant MT Picture Display

7 | Company, pursuant to an investigation into an alleged price fixing scheme by makers of CRTs.

8 | Defendant Matsushita, through its spokesperson, said that it would fully cooperate with the

9 | investigation.

10 |      51.     On November 9, 2007, media sources confirmed that the Japanese and Korean

11 | offices of Defendant Samsung SDI and the Korean offices of Defendant LP Displays had been

12 | visited by antitrust authorities in part of a "global probe" into the alleged price-fixing of the CRT

13 | market.  Spokespersons for both Defendant Samsung and Defendant LP Displays admitted to the

14 | "visits" from antitrust authorities.

15 |      52.     Defendant Samsung Electronics Co., Ltd. owns 20 percent of Defendant Samsung

16 | SDI.

17 |      53.     Defendant LP Displays (formerly LG Philips Display), was set up as a joint venture

18 | between Defendant LG Electronics and Defendant Koninklijke Philips Electronics in 2001.  In

19 | March 2007, LP Displays became an independent company.

20 |      54.     On November 9, 2007, the Nikkei Daily reported that these inspections were being

21 | carried out in furtherance of a multi-jurisdictional probe into potential price-fixing of the CRT

22 | market.  According to the article, Japanese, South Korean, European Union, and United States

23 | officials were all involved in the global investigation.

24 |      55.     On November 12, 2007 Defendant Chunghwa Picture Tubes Ltd. announced that it

25 | had received a subpoena from a California district court on November 9, 2007 to assist in an

26 | investigation into "whether cathode-ray-tube manufacturers had set up a cartel."

27 |      56.     On November 21, 2007, Defendant Royal Philips Electronics  announced that not

28 | only was its previously established joint venture LP Displays under investigation, but that its own

CLASS ACTION COMPLAINT                                 12

1   operations were the target of one or more investigations relating to alleged anticompetitive acts in

2   the CRT industry.

3                        **CLASS ACTION ALLEGATIONS**

4        57.    Plaintiffs bring this action both on behalf of themselves , and as a class action

5   pursuant to Federal Rules of Civil Procedure, Rule 23(a) and (b)(3), on behalf of the following

6   class (the "Class").

7              All individuals and entities who, during the period from approximately
               9/1/01 through the present (the "Class Period"), purchased cathode-ray
8              tubes or cathode ray tube Products in the United States directly from
               the Defendants or their subsidiaries.  Excluded from the class are
9              Defendants and their parents, subsidiaries, affiliates, all governmental
10             entities, and co-conspirators.

11       58.    The Class is so numerous that joinder of all members is impracticable.  Due to the

12   nature of the trade and commerce involved, Plaintiffs believe that the members of the Class are

13   geographically dispersed throughout the United States, and that joinder of all Class members

14   would be impracticable.  While the exact number of Class members is unknown to Plaintiffs at this

15   time, Plaintiffs believe that there are thousands of members of the Class and that their identities

16   can be learned from Defendants' books and records.

17       59.    Plaintiffs' claims are typical of the claims of the other members of the Class.

18   Plaintiffs and the members of the class purchased CRTs or CRT Products at artificially

19   maintained, non-competitive prices established by the actions of Defendants and their unnamed

20   co-conspirators in connection with the restraint of trade alleged herein.  Plaintiffs and the members

21   of the class have all sustained damage in that they paid inflated prices for CRTs or CRT Products

22   due to Defendants' conduct in violation of federal law as complained of herein.

23       60.    Plaintiffs will fairly and adequately protect the interests of the members of the Class

24   and have retained counsel competent and experienced in class action and antitrust litigation.

25       61.    Defendants have acted or refused to act on grounds generally applicable to the

26   Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with

27   respect to the Class as a whole.

28       62.    Common questions of law and fact exist as to all members of the Class and

CLASS ACTION COMPLAINT                                                              13

predominate over any questions affecting solely individual members of the class. Among the questions of law and fact common to the Class are:

    a.    Whether Defendants engaged in a contract, combination or conspiracy among themselves to fix, maintain, or stabilize the prices of CRTs and/or CRT Products sold in the United States;

    b.    Whether the conduct of Defendants caused the prices of CRTs and/or CRT Products to be artificially inflated;

    c.    Whether Defendants' conduct caused injury to the members of the Class and, if so, the proper measure of damages; and

    d.    Whether Defendants undertook actions to conceal the unlawful contract, combination or conspiracy described herein.

63.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all Class members is impracticable. The prosecution of separate actions by individual members of the class would impose heavy burdens upon the courts and Defendants, and would create the risk of inconsistent or varying adjudications of the questions of law and fact common to the Class. A class action would achieve substantial economies of time, effort and expense, and would assure uniformity of decision as to persons similarly situated without sacrificing procedural fairness.

## ANTITRUST INJURY TO PLAINTIFFS AND THE CLASS

64.    On or about September 1, 2001, the exact date being unknown to Plaintiffs, Defendants entered into a continuing contract, combination or conspiracy to unreasonably restrain trade and commerce in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. These activities included the following:

    a.    Participating in meetings and conversations to discuss the price of CRTs and/or CRT Products sold in the United States;

    b.    Agreeing during those meetings and conversations to charge prices at specified levels and otherwise to fix, increase, stabilize and/or maintain prices of CRTs and/or CRT Products sold in the United States;

    c.    Selling CRTs and/or CRT Products at the agreed upon prices; and

    d.    Selling CRTs and/or CRT Products to various customers throughout the United States at artificially inflated prices.

65.    The conspiracy alleged herein had and is having the following effects, among

1    others:

2        a.    Prices charged to Plaintiffs and the Class for CRTs and/or CRT Products have
              been raised fixed, maintained or stabilized at artificially inflated, non-
3              competitive levels;

4        b.    Plaintiffs and the Class have been deprived of the benefits of free, open and
              unrestricted competition in the market for CRTs and/or CRT Products; and
5

6        c.    Competition in establishing the prices paid in the United States and worldwide
              for CRTs and/or CRT Products has been unlawfully restrained, suppressed
              and eliminated.
7

8        66.    By reason of such violations of Section 1 of the Sherman Act and Section 4 of the

9    Clayton Act, Plaintiffs and members of the Class have sustained injury.  As a result of Defendants'

10   conduct, the injury sustained by Plaintiffs and the Class is the payment of supracompetitive prices

11   for CRTs and/or CRT Products.  This is an antitrust injury of the type that the federal laws were

12   meant to punish and prevent.

13                              **FRAUDULENT CONCEALMENT**

14       67.    Plaintiffs and members of the Class did not discover and could not discover through

15   the exercise of reasonable diligence, the existence of the conspiracy alleged herein until November

16   8, 2007, when it was first publicly reported that manufacturers of CRTs and CRT Products were

17   under investigation by antitrust authorities in the United States, Europe, Japan, and South Korea

18   for conspiring to fix prices of CRTs and/or CRT Products.

19       68.    Because Defendants' agreements, understandings, and conspiracies were kept secret

20   until November 8, 2007, Plaintiffs and members of the Class were unaware before that time of

21   Defendants' unlawful conduct alleged herein, and they did not know before that time that they

22   were paying artificially high prices for CRTs and CRT Products throughout the United States

23   during the Class Period.

24       69.    The affirmative acts of the Defendants alleged herein, including acts in furtherance

25   of the conspiracy, were wrongfully concealed and carried out in a manner that precluded detection.

26       70.    By their very nature, Defendants' price-fixing conspiracy was inherently self-

27   concealing.  The CRT and CRT Products industry is not exempt from antitrust regulation, and

28   thus, before November 8, 2007, Plaintiffs reasonably considered it to be a competitive industry.

CLASS ACTION COMPLAINT                                                              15

71.    In the context of the circumstances surrounding Defendants' pricing practices, Defendants' acts of concealment were more than sufficient to preclude suspicion by a reasonable person that Defendants' pricing was conspiratorial.  Accordingly, a reasonable person under the circumstances would not have been alerted to investigate the legitimacy of Defendants' prices before November 8, 2007.

72.    Plaintiffs and members of the Class could not have discovered the alleged contract, conspiracy, or combination at an earlier date by the exercise of reasonable diligence because of the deceptive practices and techniques of secrecy employed by the Defendants and their co-conspirators to avoid detection of, and fraudulently conceal, their contract, combination or conspiracy.

73.    Because the alleged conspiracy was both self-concealing and affirmatively concealed by Defendants and their co-conspirators, Plaintiffs and members of the Class had no knowledge of the alleged conspiracy, or of any facts or information that would have caused a reasonably diligent person to investigate whether a conspiracy existed, until November 8, 2007, when reports of the investigations into price-fixing in the CRT and CRT Products industry were first publicly disseminated.

74.    None of the facts or information available to Plaintiffs and members of the Class prior to November 8, 2007, if investigated with reasonable diligence, could or would have led to the discovery of the conspiracy alleged herein prior to November 8, 2007.

75.    As a result of Defendants' fraudulent concealment of their conspiracy, the running of any statute of limitations has been tolled with respect to any claims that Plaintiffs and members of the Class have as a result of the anticompetitive conduct alleged in this Complaint.

## COUNT I
## VIOLATION OF SECTION 1 OF THE
## SHERMAN ACT

76.    Plaintiffs incorporate by reference the allegations in the above paragraphs as if fully set forth herein.

77.    Defendants entered into and engaged in a contract, combination or conspiracy in unreasonable restraint of trade in violation of Section 1 of the Sherman Act.

CLASS ACTION COMPLAINT                                                                    16

78.     The contract, combination or conspiracy has resulted in an agreement, understanding or concerted action between and among Defendants in furtherance of which Defendants fixed, maintained, raised or stabilized prices for CRTs and/or CRT Products.  Such contract, combination or conspiracy constitutes a *per se* violation of the federal antitrust laws and is an unreasonable and unlawful restraint of trade.

79.     Defendants' contract, combination, agreement, understanding or concerted action occurred in or affected interstate and international commerce.  Defendants' unlawful actions were conducted through mutual understandings or agreements by, between and among Defendants.

80.     The contract, combination or conspiracy has had the following effects:

    a.     Prices charged to Plaintiffs and the Class for CRTs and/or CRT Products were raised, fixed, maintained or stabilized at higher, artificially inflated, non-competitive levels;

    b.     Plaintiffs and the Class have been deprived of the benefits of free, open and unrestricted competition in the market for CRTs and/or CRT Products; and

    c.     Competition in establishing the prices paid for CRTs and/or CRT Products has been unlawfully restrained, suppressed and eliminated.

81.     As a proximate result of Defendants' unlawful conduct, Plaintiffs and Class members have been injured and will continue to be injured by directly purchasing CRTs and/or CRT Products from the Defendants at higher prices than Plaintiffs and Class members otherwise would have paid and will pay in the absence of Defendants' unlawful conduct.  Plaintiffs and Class members have sustained injury to their business and property in an amount to be determined at trial.

82.     Plaintiffs and Class members are also entitled to an injunction against Defendants, preventing and restraining the violations alleged herein.  If not permanently enjoined, the unlawful contract, combination, or conspiracy will continue and cause irreparable harm to Plaintiffs and members of the Class, who have no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs pray for relief as follows:

A.     That the Court determine that this action may be maintained as a class action under Rules 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure, that Plaintiffs be certified as

CLASS ACTION COMPLAINT

17

1  class representatives and Plaintiffs' counsel be appointed as counsel for the Class;

2          B.     A declaration that the unlawful contract, combination or conspiracy alleged herein

3  is an unreasonable restraint of trade or commerce in violation of Section 1 of the Sherman Act.

4          C.     An award to Plaintiffs and members of the Class for damages to be trebled in

5  accordance with the antitrust laws, and that judgment is entered against Defendants, jointly and

6  severally, on behalf of Plaintiffs and the members of the Class;

7          D.     An injunction enjoining, preliminarily and permanently, Defendants from

8  continuing the unlawful combination and conspiracy alleged herein;

9          F.     An Award to Plaintiffs and members of the Class for costs, interest, expenses, and

10  reasonable attorneys' fees and experts' fees incurred in connection with this action;

11          G.     An award for such other and further relief as the nature of this case may require and

12  the Court may deem just and proper.

13  **DEMAND FOR JURY TRIAL**

14          Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a jury trial

15  as to all issues triable by a jury.

16  Dated: January 23, 2008             **BERMAN DeVALERIO PEASE TABACCO**

17                              **BURT & PUCILLO**

18                          By:                                                                Christopher T. Heffelfinger

19                          Joseph J. Tabacco, Jr.

20                          425 California Street, Suite 2100
                          San Francisco, California 94104-2205

21                          Telephone:  (415) 433-3200
                          Facsimile:  (415) 433-6382

22                          E-Mail:  jtabacco@bermanesq.com

23                          Manuel J. Dominguez
                        222 Lakeview Avenue, Suite 900

24                          West Palm Beach, FL  33401
                        Telephone:  (561) 835-9400

25                          Facsimile:  (561) 835-0322
                        E-Mail:  mdominguez@bermanesq.com

26

27

28

CLASS ACTION COMPLAINT                                                     18

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**LAW OFFICE OF MARC J. GREENSPON**
Marc J. Greenspon
6200 Spring Isles Blvd.
Lake Worth, FL 33463
Telephone:  (954) 817-6272
Facsimile:  (561) 439-0651
E-Mail:  mjgreenspon@yahoo.com

*Counsel for Plaintiffs*