1   Richard M. Heimann (State Bar No. 063607)
    *rheimann@lchb.com*
2   Joseph R. Saveri (State Bar No. 130064)
    *jsaveri@lchb.com*
3   Eric B. Fastiff (State Bar No. 182260)
    *efastiff@lchb.com*
4   Brendan Glackin (State Bar No. 199643)
    *bglackin@lchb.com*
5   LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
    275 Battery Street, 30th Floor
6   San Francisco, CA  94111-3339
    Telephone:  (415) 956-1000
7   Facsimile:  (415) 956-1008

8   [Additional Counsel Listed on Signature Page]

9   *Attorneys for Individual and Representative Plaintiff*
    *The Stroud Group, Inc., and the Proposed Class*
10

11                  UNITED STATES DISTRICT COURT

12                 NORTHERN DISTRICT OF CALIFORNIA

13                    (San Francisco Division)

14  IN RE: CATHODE RAY TUBE (CRT)          Case No. CV-07-5944-SC
    ANTITRUST LITIGATION                   MDL No. 1917
15

16  THIS DOCUMENT RELATES TO:              **DECLARATION OF ERIC B. FASTIFF**
                                           **IN SUPPORT OF PLAINTIFF'S**
17  THE STROUD GROUP, INC., on behalf of   **ADMINISTRATIVE MOTION TO**
    itself and all others similarly situated,   **CONSIDER WHETHER CASES**
18                                         **SHOULD BE RELATED**
19                  Plaintiff,
20  v.                                     The Honorable Samuel Conti
21  CHUNGHWA PICTURE TUBES, LTD., *et al.*,
22                  Defendants.
    Case No. CV-08-1056-MEJ
23

24

25            I, Eric B. Fastiff, declare as follows:

26            1.      I am a partner of the law firm Lieff, Cabraser, Heimann & Bernstein, LLP

27  in San Francisco, California and am admitted to practice before this Court.  I am counsel for

28  Plaintiff The Stroud Group, Inc. in *The Stroud Group, Inc. v. Chunghwa Picture Tubes, Ltd., et*

1   *al.*, Case No. CV-08-1056-MEJ ("*Stroud*").  I submit this Declaration in support of Plaintiff The

2   Stroud Group, Inc.'s Administrative Motion to Consider Whether Cases Should be Related.

3          2.     On January 22, 2008, the Honorable Samuel Conti entered an order

4   relating and consolidating ten cases pending in the United States District Court for the Northern

5   District of California, all alleging a conspiracy to fix prices of cathode-ray tubes ("CRT") and/or

6   products containing CRTs, styled *IN RE: Cathode Ray Tube (CRT) Antitrust Litigation*, Case No.

7   CV-07-5944-SC.

8          3.     On February 21, 2008, The Stroud Group, Inc. filed its complaint alleging

9   a conspiracy to fix prices of cathode-ray tubes and products containing cathode-ray tubes.

10  Attached hereto as Exhibit A is a true and correct copy of the *Stroud* complaint.

11         4.     The Stroud Group, Inc. has not appeared in *CRT*.  Civil Local Rule 3-12

12  requires that an Administrative Motion to Consider Whether Cases Should be Related be

13  promptly filed.  Accordingly, and as the Defendants are in the process of being served, a

14  stipulation could not be obtained prior to filing Plaintiff's Administrative Motion.

15         I declare under penalty of perjury under the laws of the United States that the

16  foregoing is true and correct. Executed this 22nd day of February, 2008 at San Francisco,

17  California.

18                                    */s/ Eric B. Fastiff*
                                      Eric B. Fastiff

19

20

21

22

23

24

25

26

27

28

750424.1                          - 2 -                    DECLARATION OF ERIC B. FASTIFF
                                                            CASE NO. CV-08-1056-MEJ

EXHIBIT A

1   Richard M. Heimann (State Bar No. 063607)
    *rheimann@lchb.com*
2   Joseph R. Saveri (State Bar No. 130064)
    *jsaveri@lchb.com*
3   Eric B. Fastiff (State Bar No. 182260)
    *efastiff@lchb.com*
4   Brendan Glackin (State Bar No. 199643)
    *bglackin@lchb.com*
5   LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
    275 Battery Street, 30th Floor
6   San Francisco, CA  94111-3339
    Telephone:  (415) 956-1000
7   Facsimile:  (415) 956-1008

8   [Additional Counsel Listed on Signature Page]

9   *Attorneys for Individual and Representative Plaintiff*
    *The Stroud Group, Inc., and the Proposed Class*
10

11              UNITED STATES DISTRICT COURT

12           NORTHERN DISTRICT OF CALIFORNIA

13   THE STROUD GROUP, INC., on behalf of itself and         Case No.
     all others similarly situated,
14                                                           **CLASS ACTION COMPLAINT**
                          Plaintiff,
15
     v.
16
     CHUNGHWA PICTURE TUBES, LTD.;                           **JURY TRIAL DEMANDED**
17   TATUNG COMPANY OF AMERICA, INC.;
     LG ELECTRONICS, INC.; LG PHILIPS DISPLAY
18   USA, INC.; MATSUSHITA ELECTRIC
     INDUSTRIAL CO., LTD.; PANASONIC
19   CORPORATION OF NORTH AMERICA;
     KONINKLIJKE PHILIPS ELECTRONICS N.V.;
20   PHILIPS ELECTRONICS NORTH AMERICA
     CORPORATION; SAMSUNG ELECTRONICS CO.,
21   LTD.; SAMSUNG ELECTRONICS AMERICA, INC.;
     SAMSUNG SDI CO., LTD. f/k/a SAMSUNG
22   DISPLAY DEVICE CO.; TOSHIBA CORPORATION;
     TOSHIBA AMERICA ELECTRONICS
23   COMPONENTS, INC.; TOSHIBA AMERICA
     INFORMATION SYSTEMS, INC.; MT PICTURE
24   DISPLAY COMPANY; and LP DISPLAYS,

25                        Defendant.

26

27           Plaintiff, The Stroud Group, Inc., by its attorneys, on behalf of itself and all others

28   similarly situated, brings this action for treble damages and injunctive relief under the antitrust

750237.2                                                    CLASS ACTION COMPLAINT

1   laws of the United States against the above named defendants, demanding a trial by jury, and

2   complaining and alleging as follows:

3   **I.**     **NATURE OF THE CASE**

4           1.     Plaintiff brings this lawsuit as a class action on behalf of individuals and

5   entities who purchased directly cathode-ray tubes ("CRTs") and products containing CRTs

6   (jointly, "CRT Products") in the United States from Defendants during the period from at least

7   May 1, 1998 through the present (the "Class Period"). CRTs are used in a number of products,

8   including but not limited to, computer monitors and televisions. As used herein, "CRT Products"

9   refers to CRTs and products containing CRTs manufactured by any of the named Defendants or

10  their subsidiaries or affiliates.

11          2.     During the Class Period, Defendants' collusive behavior artificially inflated

12  the price of CRT Products. In particular, Defendants participated in cartel behavior and colluded

13  to fix the prices of CRT Products.

14          3.     Throughout the Class Period, Defendants' conspiracy was intended to, and

15  did, moderate the downward price pressures on CRT Products caused by the market entry and

16  rapid penetration of more technologically advanced competitive products. As explained in further

17  detail below, liquid crystal displays ("LCD") and plasma display panels ("PDP") were used in the

18  same primary applications as CRTs and presented significant advantages over CRT Products.

19  LCD, PDP and products containing LCD or PDP will collectively be referred to as flat panel

20  display products ("FPD Products"). Many of the Defendants, in addition to manufacturing,

21  distributing and selling CRT Products, were also manufacturers, distributors, and sellers of FPD

22  Products. Defendants who participated in both the market for CRT Products and the market for

23  FPD Products will be specifically identified below.

24          4.     California is a major center of the international technology industry.

25  Because of Defendants' unlawful conduct and conspiracy, Plaintiff and other members of the

26  Class paid artificially inflated prices for CRT Products. Plaintiff and other members of the Class

27  who purchased these products have therefore been damaged by Defendants' illegal actions.

28

## II.   JURISDICTION AND VENUE

5.     Plaintiff brings this action pursuant to Section 4 of the Clayton Act, 15 U.S.C. § 15, for treble damages as well as reasonable attorneys' fees and costs of suit, for Defendants' violation of section 1 of the Sherman Act, 15 U.S.C. § 1.

6.     Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1337, and by section 4 of the Clayton Act, 15 U.S.C. § 15(a).

7.     This Court has *in personam* jurisdiction over each of the Defendants because each was engaged in an illegal price-fixing scheme and conspiracy that was directed to and/or caused injury to persons or entities residing in, located in, or doing business in this District and throughout the United States.

8.     Venue is proper in this District pursuant to 15 U.S.C. §§ 15(a) and 22, 28 U.S.C. § 1391(b), (c), and (d) and Local Rules of the United States District Court for the Northern District of California 3-2 because during the Class Period, one or more of the Defendants resided, transacted business, was found, or had agents in this district, and because a substantial part of the events giving rise to Plaintiff's claims occurred, and a substantial portion of the affected interstate trade and commerce described below was carried out in this District.

## III.   PLAINTIFF

9.     Plaintiff, The Stroud Group, Inc., is a Pennsylvania corporation having its principal place of business at 9130 Red Branch Road, Bethesda, MD 21045.  During the Class period, plaintiff purchased over $1 million of CRT Products directly from one or more of the defendants herein and has been injured by reason of Defendants' antitrust violations alleged.

## IV.   DEFENDANTS

### 1.   Chunghwa

10.     Defendant Chunghwa Picture Tubes, Ltd. ("Chunghwa") is a Taiwanese company with its principal place of business at 1127 Heping Road, Bade City, Taoyuan, Taiwan. It is a partially owned subsidiary of Tatung Company, a consolidated consumer electronics and information technology company based in Taiwan.  Chunghwa's Board of Directors includes representatives from Tatung Company.  The Chairman of Chunghwa, Weishan Lin, is also the

1    Chairman and General Manager of Tatung Company.  During the Class Period, Chunghwa

2    manufactured, sold, and distributed CRT Products to customers throughout the United States.

3    Chunghwa also manufactured, distributed and sold FPD Products in the United States during the

4    Class Period.

5            11.    Defendant Tatung Company of America, Inc. is a California corporation

6    with its principal place of business at 2850 El Presidio Street, Long Beach, California.  Tatung

7    Company of America, Inc. is a wholly-owned and controlled subsidiary of Tatung Company.

8    During the Class Period, Tatung Company of America, Inc. manufactured, sold, and distributed

9    CRT Products to customers throughout the United States.  Tatung Company of America, Inc. also

10    manufactured, distributed and sold FPD Products in the United States during the Class Period.

11        **2.    LG**

12            12.    Defendant LG Electronics, Inc. ("LGE"), is a manufacturer of CRT

13    Products with its global headquarters located at LG Twin Towers 20, Yeouido-dong,

14    Yeongdeungpo-gu, Seoul, Korea 150-721.  During the Class Period, LGE manufactured, sold and

15    distributed CRT Products to customers throughout the United States.  LGE also manufactured,

16    distributed and sold FPD Products in the United States during the Class Period.

17        **3.    Matsushita**

18            13.    Defendant Matsushita Electric Industrial Co., Ltd ("Matsushita") is a

19    Japanese company and has its global headquarters at 1006 Kadoma, Osaka 571-8501, Japan.

20    Matsushita is the parent company of Panasonic Corporation of North America, JVC Company of

21    America, and Victor Company of Japan, Ltd.  During the Class Period, Matsushita manufactured,

22    sold and distributed CRT Products to customers throughout the United States.  Matsushita also

23    manufactured, distributed and sold FPD Products in the United States during the Class Period.

24            14.    Defendant Panasonic Corporation of North America ("Panasonic"), is a

25    subsidiary of Defendant Matsushita and oversees its North American business operations,

26    including sales.  Defendant Panasonic has its global headquarters at 1 Panasonic Way, Secaucus,

27    New Jersey 07094.  During the Class Period, Panasonic manufactured, sold and distributed CRT

28    Products to customers throughout the United States.  A substantial portion of the CRTs produced

1   by MT Picture Displays Co., Matsushita's subsidiary, went to Panasonic for Panasonic's

2   production of CRT Products.  Panasonic also manufactured, distributed and sold FPD Products in

3   the United States during the Class Period.

4         **4.**    **Philips**

5         15.    Defendant Koninklijke Philips Electronics N.V. ("Koninklijke") has its

6   global headquarters at Breitner Center Amstelplein 2, Amsterdam 1096 BC, Netherlands.  During

7   the Class Period, Koninklijke manufactured, sold and distributed CRT Products to customers

8   throughout the United States.  Koninklijke also manufactured, distributed and sold FPD Products

9   in the United States during the Class Period.

10        16.    Defendant Philips Electronics North America Corporation ("Philips

11   Electronics NA"), is a manufacturer of CRT Products.  Defendant Philips Electronics NA has its

12   global headquarters at 1251 Avenue of the Americas, New York, New York 10020.  During the

13   Class Period, Philips Electronics NA manufactured, sold and distributed CRT Products to

14   customers throughout the United States.  Philips Electronics NA also manufactured, distributed

15   and sold FPD Products in the United States during the Class Period.

16        17.    Defendant LG Philips Display USA, Inc.  ("LGPD"), is a manufacturer of

17   CRT Products and is a subsidiary of Philips Electronics NA.  Defendant LG Philips Display

18   USA, Inc has its global headquarters at 300 W Morgan Rd, Ann Arbor, MI 48108-9108, United

19   States.  During the Class Period, LGPD manufactured, sold and distributed CRT Products to

20   customers throughout the United States.

21         **5.**    **Samsung**

22        18.    Defendant Samsung Electronics Co., Ltd. ("Samsung Electronics") is a

23   Korean company with its principal place of business at Samsung Main Building, 250,

24   Taepyeongno 2-ga, Jung-gu, Seoul 100-742, Korea.  It is the world's largest producer of CRT

25   Products.  During the Class Period, Samsung Electronics manufactured, sold, and distributed

26   CRT Products to customers throughout the United States.  Samsung Electronics also

27   manufactured, distributed and sold FPD Products in the United States during the Class Period.

28

19.     Defendant Samsung SDI Co., Ltd. ("Samsung SDI"), formerly known as Samsung Display Device Co., has its global headquarters at Samsung Life Insurance Bldg 150, Seoul 100-716, Korea.  During the Class Period, Samsung SDI manufactured, sold and distributed CRT Products to customers throughout the United States.  Samsung SDI also manufactured, distributed and sold FPD Products in the United States during the Class Period.

20.     Defendant Samsung Electronics America, Inc. ("Samsung America") is a New York corporation with its principal place of business at 105 Challenger Road, Ridgefield Park, New Jersey.  Samsung America is a wholly-owned and controlled subsidiary of Defendant Samsung Electronics Company, Ltd.  During the Class Period, Samsung America sold and distributed CRT Products manufactured by Samsung Electronics Company, Ltd. to customers throughout the United States.  Samsung America also sold and distributed FPD Products in the United States during the Class Period.

21.     Defendants Samsung Electronics Company, Ltd., Samsung SDI Co., Ltd., and Samsung America are referred to collectively herein as "Samsung."

**6.     Toshiba**

22.     Defendant Toshiba Corporation is a Japanese company with its principal place of business at 1-1, Shibaura 1-chome, Minato-ku, Tokyo 105-8001, Japan.  During the Class Period, Toshiba Corporation manufactured, sold, and distributed CRT Products to customers throughout the United States.  Toshiba Corporation also manufactured, distributed and sold FPD Products in the United States during the Class Period.

23.     Defendant Toshiba America Electronics Components, Inc. is a California corporation with its principal place of business at 19900 MacArthur Boulevard, Suite 400, Irvine, California.  Toshiba America Electronics Components, Inc. is a wholly-owned and controlled subsidiary of Toshiba America, Inc., a holding company for Defendant Toshiba Corporation.  During the Class Period, Toshiba America Electronics Components, Inc. sold and distributed CRT Products manufactured by Toshiba Corporation to customers throughout the United States.  Toshiba America Electronic Components also sold and distributed FPD Products manufactured by Toshiba Corporation in the United States during the Class Period.

24.     Defendant Toshiba America Information Systems, Inc. is a California corporation with its principal place of business at 9470 Irvine Blvd., Irvine, California.  Toshiba America Information Systems, Inc. is a wholly-owned and controlled subsidiary of Toshiba America, Inc., a holding company for Defendant Toshiba Corporation.  During the Class Period, Toshiba America Information Systems, Inc. sold and distributed CRT Products manufactured by Toshiba Corporation to customers throughout the United States. Toshiba America Information Systems also sold and distributed FPD Products manufactured by Toshiba Corporation in the United States during the Class Period.

25.     Defendants Toshiba Corporation, Toshiba America Electronics Components, Inc., and Toshiba America Information Systems, Inc. are referred to collectively herein as "Toshiba."

**7.     Joint Ventures**

26.     Defendant MT Picture Display Company is a wholly-owned and controlled subsidiary of Defendant Matsushita organized under the laws of Japan with its principal place of business located at Rivage Shinagawa, 1-8, Konan 4-chome, Minato-ku, Tokyo 108-0075, Japan. Prior to April 2007, MT Picture Display Company was a joint venture between Matsushita Electric Industrial Co., Ltd. and Toshiba Corporation named Matsushita Toshiba Picture Display Co., Ltd..  This joint venture was created in 2003 and integrated the CRTs operations of its parents.  During the Class Period, both MT Picture Display and its predecessor Matsushita Toshiba Picture Display Co., Ltd. sold and distributed CRT Products to customers throughout the United States.

27.     Defendant LP Displays (formerly known as LG.Philips Display), a joint venture between LG Electronics and Koninklijke Philips Electronics, is organized under the laws of Hong Kong with its principal place of business located at Corporate Communications, 6th Floor, ING Tower, 308 Des Voeux Road Central, Sheung Wan, Hong Kong.  During the Class Period, LP Displays sold and distributed CRT Products to customers throughout the United States.

28.     Each defendant committed the acts alleged in this complaint through its officers, directors, agents, employees, or representatives while they were actively engaged in the management, direction, control, or transaction of the defendant's business or affairs.

29.     Defendants' unlawful and intentional concerted actions have severely damaged and will continue to damage Plaintiffs and the members of the classes they seek to represent.

## V.     CO-CONSPIRATORS AND AGENCY

30.     Defendants, along with certain other persons, firms, corporations and entities, are co-conspirators in the violations and conspiracies alleged in this Complaint. These co-conspirators have performed acts and made statements in furtherance of the antitrust violations and conspiracies alleged herein.

31.     At all relevant times, each Defendant ratified and/or authorized the wrongful acts of each of the other Defendants. Defendants, and each of them, are individually sued as participants and as aiders and abettors in the improper acts, plans, schemes, and transactions that are the subject of this Complaint. Defendants, and each of them, participated as members of the conspiracy or acted with or in furtherance of it, or aided or assisted in carrying out its purposes alleged in this Complaint, and have performed acts and made statements in furtherance of the violations and conspiracy.

32.     At all times, each Defendant was the agent of the other Defendants and in committing the violations and conspiracies alleged in this Complaint was acting within the course and scope of that agency and with the permission and consent of the principals.

## VI.    CLASS ACTION ALLEGATIONS

33.     Plaintiff brings this action both on behalf of itself and on behalf of the following Class pursuant Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure:

> All persons and entities residing in the United States who, from May 1, 1998 through the present, purchased CRT Products in the United States directly from the Defendants. Specifically excluded from this Class are the Defendants; the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant. Also excluded are all governmental

entities, and any judicial officer presiding over this action.

34.     This action has been brought and may be properly maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure for the following reasons:

a.     The Class is ascertainable and there is a well-defined community of interest among the members of the Class;

b.     Based upon the nature of the trade and commerce involved and the number of direct purchasers of CRT Products, Plaintiff believes that the members of the Class number in the thousands, and therefore the Class members are sufficiently numerous that joinder of all Class members is not practicable;

c.     Plaintiff's claims are typical of the claims of the members of the Class because Plaintiff directly purchased CRT Products from one or more of the Defendants or their co-conspirators, and therefore Plaintiff's claims arise from the same common course of conduct giving rise to the claims of the members of the Class and the relief sought is common to the Class;

d.     The following common questions of law or fact, among others, exist as to the members of the Class:

i.     whether Defendants formed and operated a combination or conspiracy to fix, raise, maintain or stabilize the prices of, or allocate the market for, CRT Products;

ii.     whether Defendants' conduct caused CRT Products prices to be higher than they would have been in the absence of Defendants' conduct;

iii.     the duration of Defendants' combination or conspiracy;

iv.     whether Defendants fraudulently concealed the conspiracy;

v.     whether Defendants' conduct caused injury to the business or property of Plaintiff and the members of the Class; and

vi.     the appropriate measure of the amount of damages suffered by the Class;

e.     These and other questions of law or fact which are common to the members of the Class predominate over any questions affecting only individual members of the Class;

f.      Plaintiff will fairly and adequately protect the interests of the Class in that Plaintiff has no interests that are antagonistic to other members of the Class and has retained counsel competent and experienced in the prosecution of class actions and antitrust litigation to represent herself and the Class.

35.     Defendants have acted on grounds that are generally applicable to the Class, thereby making final injunctive relief appropriate with respect to the Class as a whole.

36.     This class action is superior to the alternatives, if any, for the fair and efficient adjudication of this controversy.  Prosecution as a class action will avoid repetitious litigation.  There will be no material difficulty in the management of this action as a class action.

37.     The prosecution of separate actions by individual Class members would create the risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

## VII.    TRADE AND COMMERCE

38.     During the Class Period, each Defendant, or one or more of its subsidiaries, sold CRT Products in the United States in a continuous and uninterrupted flow of interstate commerce and foreign commerce, including through and into this judicial district.

39.     The business activities of the Defendants substantially affected interstate trade and commerce in the United States and caused antitrust injury in the United States.

## VIII.   FACTUAL ALLEGATIONS

### A.      CRT Technology

40.     CRT technology has been in use for more than 100 years.  The basic cathode-ray tube consists of three elements: the envelope, the electron gun, and the phosphor screen.

41.     CRTs are manufactured in several standard sizes, including 17 inch, 19 inch, 27 inch and 32 inch.  CRTs manufactured by Defendants are interchangeable with one another.

**B.**     **Trends within the CRT Products Market and Increased Competition from FPD Products**

42.     The worldwide market for CRT Products is and has been large.  In 1997, the worldwide CRTs market exceeded $24 billion in sales.

43.     At the beginning of the Class Period, CRTs were the dominant display technology worldwide.  For example, in 1997, 99.3% of all computer monitors sold worldwide contained CRTs.  In 2005, approximately 47 million CRT monitors were sold worldwide, and approximately 20.3% of these were sold in the United States.

44.     Although the value of all display materials shipped worldwide is projected to rise at an average annual growth rate of 12.8% by 2010, worldwide demand for CRT Products is declining overall because of the growing popularity of FPD Products which are being used in place of CRT Products. (<http://www.bccresearch.com/RepTemplate.cfm?reportID=552&RepDet=HLT&cat=smc&target=repdet. .. 11/13/2007>).  CRT Products' share of the market declined precipitously in the United States where FPD Products achieved more rapid market penetration; *see* ¶ 48 below.

45.     FPD Products may be used to produce the same image as CRT Products but also have many important advantages over CRT Products.  For example, FPD Products are less bulky, require less energy, are easier to read, and do not flicker.

46.     In 1995, recognizing the increasing significance of FPD technologies, Korean manufacturers Samsung and LG Electronics entered the FPD Product market, leading to a surge in FPD Product manufacturing capacity.

47.     CRT TVs currently account for only a minority share of television set revenues in North America (37.3%), Japan (9.5%) and Europe (31.0%).  Naranjo, *The Global Television Market*, DisplaySearch Report, p. 19.

48.     During the Class Period, while demand for CRT Products continued to fall in the United States, Defendants' conspiracy was effective in moderating the normal downward pressures on prices for CRT Products caused by the entry of the new generation of competing

1   technologies.  Indeed, during the Class Period, there were not only periods of unnatural and

2   sustained price stability, but there were also inexplicable increases in the prices of CRTs, despite

3   declining demand due to approaching obsolescence of CRTs caused by the emergence of a new,

4   superior, substitutable technology.

5          49.      These periods of price stability and price increases for CRTs are

6   fundamentally inconsistent with a competitive market for a product where demand is rapidly

7   decreasing because of the introduction of new superior technologies.

8   **C.   <u>Structure of the CRT Product Industry</u>**

9          50.      The CRT Product industry is characterized by a number of structural

10  features that facilitate collusion, including market concentration, the consolidation of

11  manufacturers, multiple interrelated business relationships, significant barriers to entry, and

12  interchangeability of products.

13         51.      Defendant Samsung SDI has the largest market share of any CRT Products

14  manufacturer at this point in time.  In 2000, Defendant Samsung SDI had 18% of the global CRTs

15  market.  In 2002, Samsung SDI had 21.8% of the global market for CRT monitors.  In 2004,

16  Samsung SDI had a 30% share of the global CRTs market.

17         52.      Defendant LP Displays (formerly LG.Philips Displays) has the second

18  largest share of the CRTs market. In 2004, LG.Philips Displays held 27% of the global market for

19  CRT.

20         53.      Defendant MT Picture Display (formerly Matsushita Toshiba Display Co.)

21  is also a major player in the CRTs market.  In 2004, Matsushita Toshiba Picture Display Co. held

22  9% of the global market for CRTs.

23         54.      Defendant Chunghwa Picture Tubes held 21.7% of the global CRTs market

24  in 1999.

25         55.      In 2004, Defendants Samsung SDI, LP Displays, MT Picture Display, and

26  Chunghwa Picture Tubes maintained a collective 78% of the global CRTs market.

27         56.      The market for CRT Products is subject to high manufacturing and

28  technological barriers to entry.  Efficient fabrication plants are large and costly and require years

1   of research, development and construction.  Technological advances have caused Defendants to

2   undertake significant research and development expenses.

3         57.     The CRT Products market has also been subject to substantial

4   consolidation and multiple interrelated business relationships during the Class Period.  Matsushita

5   Electric Industrial Co., Ltd. and Toshiba Corporation combined their efforts by forming

6   Defendant MT Picture Display Company.  At the time of the formation of MT Picture Display

7   Company, Matsushita and Toshiba had been the fourth and sixth largest CRT manufacturers in

8   the world.  This joint venture combined the entire CRT operations of both parent companies.  MT

9   Picture Display Company specialized in the manufacture of CRTs above 30 inches, supplying

10  some 950,000 units annually to the North American market.

11        58.     In November 2000, Defendants LG Electronics and Koninklijke Philips

12  Electronics agreed to enter a 50/50 joint venture that merged their CRT operations.  The resulting

13  joint venture, originally named LG.Philips Displays, and renamed LP Displays in 2007, entered

14  the market with a 25% share, making it the second largest CRTs manufacturer only behind

15  Samsung SDI at the time.

16        59.     In 2005, Samsung SDI and LG.Philips Displays entered into an agreement

17  to share parts with respect to CRTs in an effort to boost their combined market share.

18        60.     Defendants sell their CRT Products through various channels, including to

19  manufacturers of electronic products and devices, and to resellers of CRT Products, and

20  incorporate CRTs into their own manufactured products, which are then sold directly to

21  consumers.

22      **D.**    <u>**International Antitrust Investigations**</u>

23        61.     Competition authorities in the United States, Europe, Japan and South

24  Korea recently engaged in coordinated actions, including raids, targeting the unlawful CRT

25  Products cartel alleged in this Complaint.  On November 9, 2007, the Reuters news agency

26  reported:

27          Antitrust authorities in Europe and Asia raided a Matsushita
        Electric Industrial Co. Ltd. unit and other cathode ray tube markers

28          on suspicion of price fixing, weighing on the share of the Panasonic

1     maker.

2          *     *     *

3     Matsushita confirmed Japan's Fair Trade Commission (FTC) had
      begun a probe of its cathode ray tube unit, MT Picture Display Co.
4     Ltd., while Samsung SDI Co. Ltd. said South Korea's FTC had
      started an investigation into its CRT business.
5

6     (www.reuters.com/article/mergersNews/idUSL0890850720071109).

7          62.     On November 9, 2007, the European Commission confirmed in Brussels

8     that "on November 8 Commission officials carried out unannounced inspections at the premises

9     of manufacturers of cathode ray tubes." The European Commission's announcement continued,

10    stating, "The Commission has reason to believe that the companies concerned may have violated

11    EC Treaty rules on cartels and restrictive business practices."

12         63.     On November 12, 2007, Chunghwa Picture Tubes, Ltd. confirmed that it

13    had received a subpoena from a California district court relating to CRTs. A federal grand jury

14    operating under the auspices of the United States Department of Justice, Antitrust Division

15    ("DOJ") through its San Francisco office issued the subpoena.

16         64.     On November 21, 2007, Koninklijke Philips Electronics, N.V. reported that

17    it and its joint venture with LG Electronics, LP Displays, are also targets of the coordinated

18    investigation into collusive practices and other antitrust violations in the CRTs market.

19         65.     The Defendants include known recidivist antitrust violators. Samsung, for

20    example, was fined $300 million by the DOJ in October 2005 for participating in a conspiracy to

21    fix prices for Dynamic Random Access Memory. It is also under investigation by the DOJ (along

22    with some of the other Defendants, including Toshiba) for fixing prices of Static Random Access

23    Memory. Samsung and Toshiba are also being investigated for collusion among manufacturers of

24    NAND flash memory.

25         66.     Several Defendants, including Samsung and a joint venture between LG

26    Electronics and Koninklijke Philips Electronics, are targets of a coordinated investigation by the

27    DOJ and antitrust authorities in Europe, Japan and South Korea in connection with

28    anticompetitive conduct in the market for LCD Products. Because LCD Products and CRT

750237.2                                      - 14 -                          CLASS ACTION COMPLAINT

1   Products are used in the same primary applications, collusion with respect to CRT Product prices

2   would bolster these same Defendants' LCD pricing cartel.  Keeping CRTs prices artificially

3   inflated also would serve both to increase profits on remaining CRTs sales while protecting LCD

4   prices.

5   **IX.    FRAUDULENT CONCEALMENT**

6          67.    Plaintiff and members of the Class did not discover and could not discover

7   through the exercise of reasonable diligence the existence of the conspiracy alleged herein any

8   earlier than November 9, 2007 when it was first publicly reported that manufacturers of CRT

9   Products were under investigation by antitrust authorities in Europe, Japan, and South Korea for

10  conspiring to fix the prices of CRT Products.

11         68.    Because Defendants' agreements, understandings, and conspiracies were

12  kept secret until November 9, 2007, Plaintiff and members of the Class before that time were

13  unaware of Defendants' unlawful conduct alleged herein, and they did not know before that time

14  they were paying artificially high prices for CRT Products throughout the United States during

15  the Class Period.

16         69.    The affirmative acts of the Defendants alleged herein, including acts in

17  furtherance of the conspiracy, were wrongfully concealed and carried out in a manner that

18  precluded detection.

19         70.    By its very nature, Defendants' price fixing conspiracy was inherently self-

20  concealing.  The CRT industry is not exempt from antitrust regulation, and thus, before

21  November 9, 2007, Plaintiff reasonably considered it to be a well-regulated competitive industry.

22         71.    In the context of the circumstances surrounding Defendants' pricing

23  practices, Defendants' acts of concealment were more than sufficient to preclude suspicion by a

24  reasonable person that Defendants' pricing was collusive and conspiratorial.  Accordingly, a

25  reasonable person under the circumstances would not have been alerted to investigate the

26  legitimacy of Defendants' prices before November 9, 2007.

27         72.    Plaintiff and members of the Class could not have discovered the alleged

28  contract, conspiracy, or combination at an earlier date by the exercise of reasonable diligence

1   because of the deceptive practices and techniques of secrecy employed by the Defendants and

2   their co-conspirators to avoid detection of, and fraudulently conceal, their contract, combination,

3   or conspiracy.

4          73.     Because the alleged conspiracy was both self-concealing and affirmatively

5   concealed by Defendants and their co-conspirators, Plaintiff and members of the Class had no

6   knowledge of the alleged conspiracy, or of any facts of information that would have caused a

7   reasonably diligent person to investigate whether a conspiracy existed, until November 9, 2007,

8   when reports of the investigations into price fixing in the CRT industry were first publicly

9   disseminated.

10         74.     None of the facts or information available to Plaintiff and members of the

11  Class prior to November 9, 2007, if investigated with reasonable diligence, could or would have

12  led to the discovery of the conspiracy alleged herein prior to November 9, 2007.

13         75.     As a result of the self-concealing nature of the conspiracy and the active

14  concealment of the conspiracy by Defendants and their co-conspirators, any and all applicable

15  statutes of limitations otherwise applicable to the allegations herein have been tolled.

16                               **CLAIM FOR RELIEF**
                    **(Violation of Section 1 of the Sherman Act, 15 U.S.C. § 1)**
17

18         76.     Plaintiff, on behalf of itself and all others similarly situated, realleges and

19  incorporates, as if fully alleged herein, each of the allegations contained in the preceding

20  paragraphs of this Complaint, and further alleges against Defendants as follows.

21         77.     Beginning at least as early as May 1, 1998 and continuing through the

22  present, the exact dates being unknown to Plaintiff, Defendants and various co-conspirators

23  entered into and engaged in a continuing agreement, contract, combination, and conspiracy to fix,

24  raise, maintain, or stabilize the price for CRT Products in unreasonable restraint of trade and

25  commerce in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

26         78.     Defendants, through their officers, directors and employees, entered into

27  the contract, combination, trust and conspiracy among themselves and their co-conspirators by,

28  among other things:

1    a. participating in communications, including discussions of the prices

2 of CRT Products in the United States;

3    b. agreeing, during those communications, to charge prices at

4 specified levels and otherwise to increase, stabilize and maintain prices of CRT Products sold in

5 the United States; and

6    c. selling CRT Products to various customers in the United States at

7 artificially inflated prices.

8   79. For the purpose of forming and implementing the alleged combinations,

9 agreements, understandings and concert of action, Defendants and their co-conspirators did those

10 things they conspired to do, including but not limited to the acts alleged above, including actions

11 to fix, raise, maintain and stabilize the price of CRT Products.

12   80. Defendants have participated in one or more overt acts in furtherance of the

13 conspiracy alleged above, and have participated in the conspiratorial activities described above.

14   81. The combination and conspiracy alleged herein has had the following

15 effects, among others:

16    a. Price competition in the sale of CRT Products has been restrained,

17 suppressed and/or eliminated throughout the United States;

18    b. Prices for CRT Products sold by Defendants and their

19 co-conspirators have been fixed, raised, maintained and stabilized at artificially high, non-

20 competitive levels throughout the United States; and

21    c. Plaintiff and members of the Class have been deprived of the

22 benefits of free and open competition.

23   82. As a direct and proximate result of the Defendants' unlawful conduct,

24 Plaintiff and the members of the Class have been injured in their business and property in that

25 they paid more for CRT Products than they otherwise would have paid in the absence of

26 Defendants' unlawful conduct.

27

28

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays:

A.     That the Court determine that the claim alleged herein under the Sherman Act, 15 U.S.C. § 1, may be maintained as a class action under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure;

B.     That the unlawful conduct, contract, conspiracy or combination alleged herein be adjudged and decreed to be a violation of Section 1 of the Sherman Act, 15 U.S.C. § 1;

C.     That Plaintiff and the Class recover damages, as provided law, and that a joint and several judgment in favor of Plaintiff and the Class be entered against the Defendants in an amount to be trebled in accordance with applicable laws;

D.     That Defendants, their subsidiaries, affiliates, successors, transferees, assignees and their respective officers, directors, partners, principals, agents and employees thereof, be enjoined and restrained from continuing and maintaining the combination, conspiracy or agreement alleged herein;

E.     That Plaintiff and members of the Class be awarded pre- and post-judgment interest, and that that interest be awarded at the highest legal rate from and after the date of service of the initial complaint in this action;

F.     That Plaintiff and members of the Class recover their costs of this suit, including reasonable attorneys' fees as provided by law; and

//
//
//
//
//
//
//
//
//

- 18 -

1         G.     That Plaintiff and members of the Class receive an award for such other

2 and further relief as the nature of the case may require or as the Court deems just, equitable, and

3 proper.

4 Dated: February 21, 2008       LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP

5

6                    By: _____

7                    Joseph R. Saveri

8                  Richard M. Heimann (State Bar No. 063607)
                    *rheimann@lchb.com*

9                  Joseph R. Saveri (State Bar No. 130064)
                    *jsaveri@lchb.com*

10                Eric B. Fastiff (State Bar No. 182260)
                    *efastiff@lchb.com*

11                Brendan Glackin (State Bar No. 199643)
                    *bglackin@lchb.com*

12                275 Battery Street, 30th Floor
                    San Francisco, CA  94111-3339

13                Telephone:  (415) 956-1000
                    Facsimile:  (415) 956-1008

14                Joel C. Meredith
                    *jmeredith@mcgslaw.com*

15                Steven J. Greenfogel
                    *sgreenfogel@mcgslaw.com*

16                Daniel B. Allanoff
                    *dallanoff@mcgslaw.com*

17                MEREDITH COHEN GREENFOGEL &
                      SKIRNICK, P.C.

18                1521 Locust Street, 8th Floor
                    Philadelphia, PA.  19102

19                Telephone:  (215) 564-5182
                    Facsimile:  (215) 569-0958

20

21                Martin E. Grossman
                    LAW OFFICES OF MARTIN E. GROSSMAN

22                2121 Green Brier Drive
                    Villanova, PA  19085

23                Telephone:  (610) 527-3277

24                *Attorneys for Individual and Representative Plaintiff*
                    *The Stroud Group, Inc., and the Proposed Class*

25

26

27

28

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury for all issues so triable.

Dated: February 21, 2008           LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP

By: _____
       Joseph R. Saveri

Richard M. Heimann (State Bar No. 063607)
*rheimann@lchb.com*
Joseph R. Saveri (State Bar No. 130064)
*jsaveri@lchb.com*
Eric B. Fastiff (State Bar No. 182260)
*efastiff@lchb.com*
Brendan Glackin (State Bar No. 199643)
*bglackin@lchb.com*
275 Battery Street, 30th Floor
San Francisco, CA  94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008

Joel C. Meredith
*jmeredith@mcgslaw.com*
Steven J. Greenfogel
*sgreenfogel@mcgslaw.com*
Daniel B. Allanoff
*dallanoff@mcgslaw.com*
MEREDITH COHEN GREENFOGEL &
   SKIRNICK, P.C.
1521 Locust Street, 8th Floor
Philadelphia, PA  19102
Telephone:  (215) 564-5182
Facsimile:  (215) 569-0958

Martin E. Grossman
LAW OFFICES OF MARTIN E. GROSSMAN
2121 Green Brier Drive
Villanova, PA  19085
Telephone:  (610) 527-3277

*Attorneys for Individual and Representative Plaintiff*
*The Stroud Group, Inc., and the Proposed Class*