1   MARIO N. ALIOTO, ESQ. (56433)
    LAUREN C. RUSSELL, ESQ. (241151)
2   TRUMP, ALIOTO, TRUMP & PRESCOTT, LLP
    2280 Union Street
3   San Francisco, CA 94123
    Telephone: (415) 563-7200
4   Facsimile: (415) 346-0679
5   malioto@tatp.com
    laurenrussell@tatp.com
6
7   Attorneys for Plaintiff Jeffrey Figone

8

9                   **UNITED STATES DISTRICT COURT**

10                 **NORTHERN DISTRICT OF CALIFORNIA**

11  **IN RE: CATHODE RAY TUBE (CRT)**          )   Master File No. 3:07-cv-5944 SC
    **ANTITRUST LITIGATION**                   )
12                                             )   MDL No. 1917
                                               )
13                                             )   **DECLARATION OF LAUREN C.**
14                                             )   **RUSSELL IN SUPPORT OF**
                                               )   **ADMINISTRATIVE MOTION TO**
15                                             )   **CONSIDER WHETHER CASES SHOULD**
                                               )   **BE RELATED (Civil Local Rules 3-12 &**
16                                             )   **7-11)**
                                               )
17                                             )
                                               )
18  ─────────────────────────────────────     )
    **This document relates to:**              )
19                                             )
    *Samuel Nasto, et al. v. LG Electronics, et al.,*  )   The Honorable Samuel Conti
20  Case No. 3:08-cv-1371-MMC                  )
                                               )
21  *Carmen Gonzalez v. Chungwha Picture Tubes,* )
22  *Ltd., et al.,* Case No. 5:08-cv-01108-JF  )
                                               )
23  ─────────────────────────────────────

24

25

26

27

28

                                           **1**
    **DECLARATION OF LAUREN C. RUSSELL IN SUPPORT OF ADMINSTRATIVE MOTION TO CONSIDER**
                         **WHETHER CASES SHOULD BE RELATED**

1    I, Lauren C. Russell, declare as follows:

2    1.    I am an associate with the firm Trump, Alioto, Trump & Prescott, LLP and am a
3    member in good standing of the State Bar of California. This Declaration is based on personal
4    knowledge, except where specified that information is based on information and belief, and if
5    called to testify, I could and would do so competently as to the matters set forth herein. I am
6    counsel for Plaintiff Jeffrey Figone in *Jeffrey Figone v. LG Electronics, Inc, et al.,* Case No.
7    3:07-cv-6331-SC. I am also counsel for plaintiffs Samuel J. Nasto et al. in *Nasto, et al. v. LG*
8    *Electronics, Inc., et al.,* Case No. 3:08-cv-1371-MMC. I submit this Declaration in support of
9    Plaintiff Jeffrey Figone's Administrative Motion to Consider Whether Cases Should be Related.

10    2.    Attached hereto as Exhibit A respectively is a true and correct copy of the
11    complaint entitled *Samuel J. Nasto, et al. v. LG Electronics, Inc., et al.,* Case No. 3:08-1371-
12    MMC ("*Nasto*"), filed on March 10, 2008 in the Northern District of California and assigned to
13    the Honorable Maxine M. Chesney.

14    3.    Attached hereto as Exhibit B is a true and correct copy of the complaint entitled
15    *Carmen Gonzalez v. Chungwha Picture Tubes, Ltd.,* Case No. 5:08-cv-1108-JF ("*Gonzalez*"),
16    filed on February 25, 2008 in the Northern District of California and assigned to the Honorable
17    Jeremy Fogel.

18    4.    The *Nasto* and *Gonzalez* actions are proposed class actions on behalf of indirect
19    purchasers of Cathode Ray Tubes and products containing Cathode Ray Tubes ("CRT
20    Products") from defendants.

21    5.    Like the constituent complaints in the multidistrict proceeding entitled *In re:*
22    *Cathode Ray Tube (CRT) Antitrust Litigation,* MDL No. 1917, Master File No. 3:07-cv-5944-
23    SC ("*CRT Cases*"), the *Nasto* and *Gonzalez* actions allege a conspiracy to fix, raise, maintain
24    and stabilize the price of CRT Products in violation of Section 1 of the Sherman Act, 15 U.S.C.
25    §1. The *Nasto* and *Gonzalez* actions also allege that the same conduct violated certain state
26    antitrust and consumer protection statutes.

27    //

28
**2**
**DECLARATION OF LAUREN C. RUSSELL IN SUPPORT OF ADMINSTRATIVE MOTION TO CONSIDER
WHETHER CASES SHOULD BE RELATED**

1    I declare under penalty of perjury under the laws of the United States that the foregoing

2  is true and correct. Executed this 11th day of March 2008 at San Francisco, California.

3

4
                                    /s/ Lauren C. Russell
5                                        Lauren C. Russell

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                         **3**
        **DECLARATION OF LAUREN C. RUSSELL IN SUPPORT OF ADMINSTRATIVE MOTION TO CONSIDER**
                          **WHETHER CASES SHOULD BE RELATED**

1   MARIO N. ALIOTO, ESQ. (56433)
    LAUREN C. RUSSELL, ESQ. (241151)
2   TRUMP, ALIOTO, TRUMP & PRESCOTT, LLP
    2280 Union Street
3   San Francisco, CA 94123
4   Telephone: (415) 563-7200
    Facsimile: (415) 346-0679
5   E-mail: malioto@tatp.com
    laurenrussell@tatp.com
6

7   JOSEPH M. PATANE, ESQ. (72202)
    LAW OFFICE OF JOSEPH M. PATANE
8   2280 Union Street
    San Francisco, CA 94123
9   Telephone: (415) 563-7200
    Facsimile: (415) 346-0679
10  E-mail: jpatane@tatp.com

**ORIGINAL FILED**

MAR 1 0 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

E-filing

11  Attorneys for Plaintiffs
12  [Additional Attorneys Appear On Signature Page]

13              **UNITED STATES DISTRICT COURT**

**MMC**

14              **NORTHERN DISTRICT OF CALIFORNIA**

15  SAMUEL J. NASTO; PATRICK PIPER; ADRIENNE   )  Case No.
    BELAI; CRAIG STEPHENSON; DAVID G. NORBY )
16  JOHN LARCH; CONSTANCE HARE; JAMES          )
17  STRINGWELL; and, GARY HANSON, on behalf of )  **CLASS ACTION COMPLAINT**
    themselves and all others similarly situated, )
18                                             )
                Plaintiffs,                    )
19  vs.                                        )  **JURY TRIAL DEMANDED**
                                               )
20  LG ELECTRONICS, INC.; SAMSUNG              )
21  ELECTRONICS CO., LTD.; SAMSUNG SDI CO.,    )
    LTD.; SAMSUNG ELECTRONICS AMERICA, INC.;   )
22  SAMSUNG SDI AMERICA, INC.; SAMTEL          )
    COLOR, LTD.; TOSHIBA CORPORATION;          )
23  TOSHIBA AMERICA ELECTRONIC                 )
24  COMPONENTS, INC.; TOSHIBA AMERICA          )
    INFORMATION SYSTEMS, INC.; MATSUSHITA      )
25  TOSHIBA PICTURE DISPLAY CO., LTD.; MT      )
    PICTURE DISPLAY CORPORATION OF AMERICA )
26  (NEW YORK); MT PICTURE DISPLAY             )
    CORPORATION OF AMERICA (OHIO);             )
27  MATSUSHITA ELECTRIC INDUSTRIAL CO.,        )
28  LTD.; PANASONIC CORPORATION OF NORTH       )

                          1
                **CLASS ACTION COMPLAINT**

1  AMERICA; BEIJING-MATSUSHITA COLOR CRT )
  COMPANY, LTD.; ORION ELECTRIC CO., LTD.; )
2  ORION AMERICA, INC.; HITACHI LTD.; HITACHI )
3  AMERICA LTD.; HITACHI ASIA, LTD.; )
  CHUNGHWA PICTURE TUBES LTD.; )
4  CHUNGHWA PICTURE TUBES (MALAYSIA) )
  SDN. BHD.; LP DISPLAYS INTERNATIONAL, )
5  LTD.; KONINKLIJKE PHILIPS ELECTRONICS )
  N.V.; PHILIPS ELECTRONICS NORTH AMERICA; )
6  IRICO GROUP CORP.; IRICO DISPLAY DEVICES )
7  CO., LTD.; THAI CRT COMPANY, LTD.; and )
  TATUNG COMPANY OF AMERICA, INC., )

8                 Defendants

9

10  ## CLASS ACTION COMPLAINT

11  Plaintiffs Samuel J. Nasto, Patrick Piper, Adrienne Belai, Craig Stephenson, David G.

12  Norby, John Larch, Constance Hare, James Stringwell and Gary Hanson ("Plaintiffs") on behalf

13  of themselves and all others similarly situated in the United States, bring this action for damages

14  and injunctive relief under state and federal antitrust, unfair competition, and consumer

15  protection laws against the Defendants named herein, demanding trial by jury, and complaining

16  and alleging as follows:

17  ## NATURE OF THE CASE

18      1.    This lawsuit is brought as a class action on behalf of individuals and entities that

19  indirectly purchased products containing cathode ray tubes ("CRT Products") (as further defined

20  below), in the United States from Defendants, their predecessors, or their controlled subsidiaries

21  and affiliates during the period beginning at least January 1, 1995 through the present (the

22  "Class Period"). Plaintiffs allege that during the Class Period the Defendants conspired to fix,

23  raise, maintain or stabilize prices of CRT Products sold in the United States. Because of

24  Defendants' unlawful conduct, Plaintiffs and other Class Members paid artificially inflated

25  prices for CRT Products and have suffered antitrust injury to their business or property.

26  ## JURISDICTION AND VENUE

27      2.    This action is instituted under Section 16 of the Clayton Act, 15 U.S.C. §26, to

28  obtain injunctive relief for violations of Section 1 of the Sherman Act, 15 U.S.C. §1, to recover

1  damages under state antitrust and consumer protection laws, and to recover costs of suit,

2  including reasonable attorneys' fees, for the injuries that Plaintiffs and all others similarly

3  situated sustained as a result of the Defendants' violations of those laws.

4      3.    The Court has subject matter jurisdiction over the federal claim under 28 U.S.C.

5  §§ 1331 and 1337. The Court has subject matter jurisdiction over the state law claims under 28

6  U.S.C. § 1367 because those claims are so related to the federal claim that they form part of the

7  same case or controversy.

8      4.    This court also has subject matter jurisdiction over this class action pursuant to

9  the Class Action Fairness Act of 2005, which amended 28 U.S.C. § 1332 to add a new

10  subsection (d) conferring federal jurisdiction over class actions where, as here, "any member of

11  a class of Plaintiffs is a citizen of a state different from any Defendant and the aggregated

12  amount in controversy exceeds $5,000,000, exclusive of interest and costs." This Court also has

13  jurisdiction under 28 U.S.C. § 1332(d) because "one or more members of the class is a citizen of

14  a state within the United States and one or more of the Defendants is a citizen or subject of a

15  foreign state."

16      5.    Venue is laid in this District pursuant to 28 U.S.C. § 1391. Venue is proper in

17  this judicial district because during the Class Period one or more of the Defendants resided,

18  transacted business, was found, or had agents in, this district, and because a substantial part of

19  the events giving rise to Plaintiffs' claims occurred in this district, and a substantial portion of

20  the affected portion of the interstate trade and commerce described below has been carried out in

21  this district.

22      **DEFINITIONS**

23      6.    As used herein, the term "CRT Products" means cathode ray tubes and products

24  containing cathode ray tubes, including television sets and computer monitors.

25      7.    The "Class Period" or "relevant period" means the period beginning at least

26  January 1, 1995 through the present.

27      8.    "Person" means any individual, partnership, corporation, association, or other

28  business or legal entity.

1    9.    The "Indirect Purchaser States" are Arizona, California, District of Columbia,
2    Iowa, Kansas, Maine, Michigan, Minnesota, Mississippi, Nebraska, Nevada, New Mexico,
3    North Carolina, North Dakota, South Dakota, Tennessee, Vermont, West Virginia, and
4    Wisconsin.

5    10.    The "Consumer Fraud States" are Arkansas, California, District of Columbia,
6    Florida, Hawaii, Kansas, Maine, Massachusetts, Nebraska, New York, New Hampshire, New
7    Mexico, North Carolina, Rhode Island, and Vermont.

## PLAINTIFF

9    11.    Plaintiff Samuel J. Nasto ("Nasto") is a Nevada resident. During the relevant
10   period, Nasto indirectly purchased CRT Products from one or more of the Defendants or their
11   co-conspirators and has been injured by reason of the antitrust violations alleged in this
12   Complaint.

13   12.    Plaintiff Patrick Piper ("Piper") is a Florida resident. During the relevant period,
14   Florida indirectly purchased CRT Products from one or more of the Defendants or their co-
15   conspirators and has been injured by reason of the antitrust violations alleged in this Complaint.

16   13.    Plaintiff Adrienne Belai ("Belai") is a New York resident. During the relevant
17   period, Belai indirectly purchased CRT Products from one or more of the Defendants or their
18   co-conspirators and has been injured by reason of the antitrust violations alleged in this
19   Complaint.

20   14.    Plaintiff Craig Stephenson ("Stephenson") is a New Mexico resident. During the
21   relevant period, Stephenson indirectly purchased CRT Products from one or more of the
22   Defendants or their co-conspirators and has been injured by reason of the antitrust violations
23   alleged in this Complaint.

24   15.    Plaintiff David G. Norby ("Norby") is a Minnesota resident. During the relevant
25   period, Norby indirectly purchased CRT Products from one or more of the Defendants or their
26   co-conspirators and has been injured by reason of the antitrust violations alleged in this
27   Complaint.

28

**4**
**CLASS ACTION COMPLAINT**

1    16.    Plaintiff John Larch ("Larch") is a West Virginia resident. During the relevant
2  period, Larch indirectly purchased CRT Products from one or more of the Defendants or their
3  co-conspirators and has been injured by reason of the antitrust violations alleged in this
4  Complaint.

5    17.    Plaintiff Constance Hare ("Hare") is a South Dakota resident. During the relevant
6  period, Hare indirectly purchased CRT Products from one or more of the Defendants or their co-
7  conspirators and has been injured by reason of the antitrust violations alleged in this Complaint.

8    18.    Plaintiff James Stringwell ("Stringwell") is a Michigan resident. During the
9  relevant period, Stringwell indirectly purchased CRT Products from one or more of the
10  Defendants or their co-conspirators and has been injured by reason of the antitrust violations
11  alleged in this Complaint.

12    19.    Plaintiff Gary Hanson ("Hanson") is a North Dakota resident. During the relevant
13  period, Hanson indirectly purchased CRT Products from one or more of the Defendants or their
14  co-conspirators and has been injured by reason of the antitrust violations alleged in this
15  Complaint.

16                                      **DEFENDANTS**

17    20.    Defendant LG Electronics, Inc. ("LG Electronics") is a corporation organized
18  under the laws of Korea with its principal place of business located at LG Twin Towers, 20
19  Yeouido-dong, Yeoungdeungpo-gu, Seoul 150-721, South Korea. LG Electronics is a $48.5
20  billion global force in consumer electronics, home appliances and mobile communications,
21  which established its first overseas branch office in New York in 1968. The company's name
22  was changed from GoldStar Communications to LG Electronics in 1995, the year in which it
23  also acquired Zenith in the United States. During the Class Period, LG Electronics
24  manufactured, sold and distributed CRT Products to customers throughout the United States.

25    21.    Defendant Samsung Electronics Co., Ltd. is a company organized under the laws
26  of Korea with its principal place of business located at Samsung Main Building, 250, 2-ga,
27  Taepyong-ro, Jung-gu, Seoul 100-742, South Korea. During the Class Period, Samsung

28

1  Electronics Co., Ltd. manufactured, sold and distributed CRT Products to customers throughout
2  the United States.

3      22.    Defendant Samsung SDI Co., Ltd. f/k/a Samsung Display Device Co., Ltd. is a
4  company organized under the laws of Korea with its principal place of business located at 15th –
5  18th Floor, Samsung Life Insurance Building, 150, 2-ga, Taepyong-ro, Jung-gu, Seoul, 100-716,
6  South Korea. Samsung SDI Co., Ltd. is a public company. Samsung Electronics Co., Ltd. is its
7  majority shareholder holding almost 20 percent of the stock. Founded in 1970, Samsung SDI
8  Co., Ltd. claims to be the world's leading company in the display and energy businesses, with
9  28,000 employees and facilities in 18 countries. Samsung SDI Co., Ltd. has offices in Chicago
10  and San Diego. During the Class Period, Samsung SDI Co. Ltd. manufactured, sold and
11  distributed CRT Products to customers throughout the United States.

12      23.    Defendant Samsung Electronics America, Inc. is a New York corporation with its
13  principal place of business located at 105 Challenger Road, 6th Floor, Ridgefield Park, New
14  Jersey 07660. Samsung Electronics America, Inc. is a wholly-owned and controlled subsidiary
15  of defendant Samsung Electronics Co., Ltd. During the Class Period, Samsung Electronics
16  America, Inc. manufactured, sold and distributed CRT Products to customers throughout the
17  United States.

18      24.    Defendant Samsung SDI America, Inc. is a California corporation with its
19  principal place of business located at 3333 Michelson Drive, Suite 700, Irvine, California.
20  Samsung SDI America, Inc. is a wholly owned and controlled subsidiary of Samsung SDI Co.,
21  Ltd., which is in turn a wholly owned and controlled subsidiary of Samsung Electronics Co.,
22  Ltd. During the Class Period, Samsung SDI America, Inc. manufactured, sold and distributed
23  CRT Products to customers throughout the United States.

24      25.    Defendants Samsung Electronics Co., Ltd., Samsung SDI Co., Ltd., Samsung
25  Electronics America, Inc., and Samsung SDI America, Inc. are referred to collectively herein as
26  "Samsung."

27      26.    Defendant Samtel Color, Ltd. ("Samtel") is an Indian company with its principal
28  place of business located at 52, Community Centre, New Friends Colony, New Delhi-110065.

**6**
**CLASS ACTION COMPLAINT**

1  Samtel's market share for CRT products sold in India is approximately 40%. Samtel is India's
2  largest exporter of CRT products. Samtel has gained safety approvals from the United States,
3  Canada, Germany and Great Britain for its CRT products. During the Class Period, Samtel
4  manufactured, sold and distributed CRT Products to customers throughout the United States.

5  27.  Defendant Toshiba Corporation ("Toshiba") is a business entity organized under
6  the laws of Japan, with its principal place of business at 1-1, Shibaura 1-chome, Minato-ku,
7  Tokyo 105-8001, Japan. In 2001, Toshiba held a 5-10 percent worldwide market share for CRTs
8  used in televisions and computer monitors. In 2002, Toshiba entered into a joint venture with
9  defendant Matsushita Electric called Matsushita Toshiba Picture Display Co., Ltd. in which the
10  entities consolidated their CRT businesses. In 2004, Toshiba entered into a contract with
11  defendant Orion whereby Orion became the supplier and maker of Toshiba-branded CRT
12  televisions. During the Class Period, Toshiba manufactured, sold and distributed CRT Products
13  to customers throughout the United States.

14  28.  Toshiba America Electronics Components, Inc. is a California corporation with
15  its principal place of business located at 9775 Toledo Way, Irvine, California 92618, and 19000
16  MacArthur Boulevard, Suite 400, Irvine, California 92612. Toshiba America Electronics
17  Components, Inc. is a wholly owned and controlled subsidiary of Toshiba America, Inc., which
18  is a holding company for Defendant Toshiba Corporation, and the sales and marketing
19  representative for Defendant Matsushita Toshiba Picture Display Co., Ltd. During the Class
20  Period, Toshiba Electronics Components, Inc. manufactured, sold and distributed CRT Products
21  to customers throughout the United States.

22  29.  Defendant Toshiba America Information Systems, Inc. is a California corporation
23  with its principal place of business located at 9470 Irvine Boulevard, Irvine, California 92718.
24  Toshiba America Information Systems, Inc. is a wholly owned and controlled subsidiary of
25  Toshiba America, Inc., a holding company for Defendant Toshiba Corporation. During the Class
26  Period, Toshiba America Information Systems, Inc. manufactured, sold and distributed CRT
27  Products to customers throughout the United States.

28

7
**CLASS ACTION COMPLAINT**

1      30.    Defendants Toshiba Corporation, Toshiba America Electronics Components, Inc.

2  and Toshiba America Information Systems, Inc. are referred to collectively herein as "Toshiba."

3      31.    Defendant Matsushita Toshiba Picture Display Co., Ltd. ("Matsushita-Toshiba")

4  was established as a CRT joint venture between Defendants Matsushita and Toshiba.

5  Matsushita-Toshiba is a Japanese entity with its principal place of business located at 1-1,

6  Saiwai-cho, Takatsuki-shi, Osaka 569-1193, Japan. On April 3, 2007, Defendant Matsushita

7  Electric purchased the remaining stake in Matsushita-Toshiba, making it a wholly owned

8  subsidiary, and renaming it MT Picture Display Co., Ltd. During the Class Period, Matsushita-

9  Toshiba manufactured, sold and distributed CRT Products to customers throughout the United

10  States.

11      32.    Defendant MT Picture Display Corporation of America (New York)

12  ("MTPDA(NY)") is a dissolved Maryland corporation previously located at 100 Westinghouse

13  Circle, Horseheads, New York 14845. MTDPA(NY) was a wholly owned and controlled

14  subsidiary of Defendant Matsushita-Toshiba. MTDPA(NY) specialized in the manufacture of

15  CRT televisions above 30 inches wide, supplying some 950,000 units annually to the North

16  American market. Matsushita and Toshiba announced plans to discontinue operations on

17  December 29, 2005. During the Class Period prior to December 2005, MTDPA(NY)

18  manufactured, sold and distributed CRT Products to customers throughout the United States.

19      33.    Defendant MT Picture Display Corporation of America (Ohio) ("MTDPA(OH)")

20  was a Delaware corporation with its principal place of business located at 1554 McKaig

21  Avenue, Building A, Troy, Ohio 45373. MTDPA(OH) was dissolved on March 27, 2007.  ·

22  MTDPA(OH) was a wholly owned and controlled subsidiary of Defendant Matsushita-Toshiba.

23  During the Class Period prior to February 2006, MTDPA(OH) manufactured, sold and

24  distributed CRT Products to customers throughout the United States.

25      34.    Defendant Matsushita Electric Industrial Co., Ltd. ("Matsushita Electric") is a

26  Japanese entity with its principal place of business located at 1006 Oaza Kadoma, Kadoma-shi,

27  Osaka 571-8501, Japan. In 2002, Matsushita Electric entered into a CRT joint venture with

28  Defendant Toshiba forming Defendant Matsushita-Toshiba. Matsushita Electric was the

**8**
**CLASS ACTION COMPLAINT**

1   majority owner with 64.5 percent. On April 3, 2007, Matsushita Electric purchased the

2   remaining 35.5 percent stake in the joint venture, making Matsushita-Toshiba a wholly owned

3   subsidiary of Matsushita Electric. Matsushita Electric is best known for its Panasonic brand,

4   which in 2005 had the highest CRT revenue in Japan. During the Class Period, Matsushita

5   Electric manufactured, sold and distributed CRT Products to customers throughout the United

6   States.

7        35.    Defendant Panasonic Corporation of North America ("Panasonic") is a Delaware

8   corporation with its principal place of business located at One Panasonic Way, Secaucus, New

9   Jersey. Panasonic is a wholly owned and controlled subsidiary of Defendant Matsushita Electric.

10  During the Class Period, Panasonic manufactured, sold and distributed CRT Products to

11  customers throughout the United States.

12       36.    Defendant Beijing-Matsushita Color CRT Company, Ltd. ("BMCC") is a

13  Chinese company with its principal place of business located at No. 9, Jiuxianqiao N. Rd.,

14  Dashanzi Chaoyang District, Beijing, China. BMCC is the second largest producer of CRTs for

15  televisions in China. During the Class Period, BMCC manufactured, sold and distributed CRT

16  Products throughout the United States.

17       37.    Defendant Orion Electric Co., Ltd. ("Orion Electric") is a Japanese company

18  with its principal places of business at 41-1 Iehisa-cho, Echizen-shi, Fukui 915-8555, Japan.

19  Orion Electric currently manufactures CRT Products for Defendant Toshiba Corporation.

20  During the Class Period, Orion Electric manufactured, sold and distributed CRT Products to

21  customers throughout the United States.

22       38.    Defendant Orion America, Inc. ("Orion America") is an Indiana corporation with

23  its principal place of business located at Hwy 1 North, Orion Place, Princeton, Indiana. Orion

24  America is a wholly owned and controlled subsidiary of Defendant Orion Electric. During the

25  Class Period, Orion America manufactured, sold and distributed CRT Products to customers

26  throughout the United States.

27       39.    Defendant Hitachi, Ltd. is a business entity organized under the laws of Japan,

28  with its principal place of business located at 6-1 Marunouchi Center Building 13F, Chiyoda-ku,

1  Tokyo 100-8280, Japan. Hitachi Ltd. is the parent company for the Hitachi brand of CRT

2  products. During the Class Period, Hitachi Ltd. manufactured, sold and distributed CRT

3  Products to customers throughout the United States.

4      40.    Defendant Hitachi America, Ltd. ("Hitachi America") is a wholly owned and

5  controlled subsidiary of defendant Hitachi. Hitachi America is a business entity organized under

6  the laws of New York, with its principal place of business located at 2000 Sierra Point Parkway,

7  Brisbane, California 94005. During the Class Period, Hitachi America manufactured, sold and

8  distributed CRT Products to customers throughout the United States.

9      41.    Defendant Hitachi Asia, Ltd. ("Hitachi Asia") is a Singaporean company with its

10  principal place of business located at 16 Collyer Quay, #20-00 Hitachi Tower, Singapore,

11  049318. Hitachi Asia is a wholly owned and controlled subsidiary of defendant Hitachi. During

12  the Class Period, Hitachi Asia manufactured, sold and distributed CRT Products to customers

13  throughout the United States.

14      42.    Defendants Hitachi Ltd., Hitachi America, and Hitachi Asia are collectively

15  referred to herein as "Hitachi."

16      43.    Defendant Chunghwa Picture Tubes Ltd. ("Chunghwa Picture Tubes") is a

17  business entity organized under the laws of Taiwan, with its principal place of business located

18  at 1127 Heping Road, Bade City, Taoyuan, Taiwan R.O.C. Chunghwa Picture Tubes is a

19  leading manufacturer of CRT Products. During the Class Period, Chunghwa Picture Tubes

20  manufactured, sold and distributed CRT Products to customers throughout the United States.

21      44.    Defendant Chunghwa Picture Tubes (Malaysia) Sdn. Bhd. ("Chungwha

22  Malaysia") is a Malaysian company with its principal place of business located at Lot 1, Subang

23  Hi-Tech Industrial Park, Batu Tiga, 4000 Shah Alam, Selangor Darul Ehsan, Malaysia.

24  Chunghwa Malaysia a wholly owned and controlled subsidiary of defendant Chungwha Picture

25  Tubes. Chungwha Malaysia is also a leading worldwide supplier of CRT Products. During the

26  Class Period, Chungwha Malaysia manufactured, sold and distributed CRT Products to

27  customers throughout the United States.

28

45. Defendants Chungwha Picture Tubes and Chungwha Malaysia are collectively referred to herein as "Chungwha."

46. Defendant LP Displays International, Ltd. f/k/a LG Philips Displays ("LP Displays") was created in 2001 as a 50/50 joint venture between defendants LG Electronics and Royal Philips Electronics of The Netherlands. In March 2007, LP Displays became an independent company organized under the laws of Hong Kong with its principal place of business located at Corporate Communications, 6th Floor, ING Tower, 308 Des Voeux Road Central, Sheung Wan, Hong Kong. LP Displays is a leading supplier of color picture tubes for use in television sets and computer monitors with annual sales for 2006 of over $2 billion. LP Displays announced in March 2007 that Royal Philips and LG Electronics would lose control over the company and the shares would be owned by financial institutions and private equity firms. During the Class Period, LP Displays manufactured, sold and distributed CRT Products to customers throughout the United States.

47. Defendant Koninklijke Philips Electronics N.V. a/k/a Royal Philips Electronics N.V. ("Royal Philips") is a company organized under the laws of The Netherlands with its principal place of business located at Amstelplein 2, Breitner Center, 1070 MX Amsterdam, The Netherlands. Royal Philips, founded in 1891, is one of the world's largest electronics companies, with 160,900 employees located in over 60 countries. Royal Philips had sole ownership of its CRT business until 2000. In 2001, Royal Philips transferred its CRT business to a 50/50 CRT joint venture with LG Electronics forming defendant LP Displays. In December 2005, as a result of increased pressure on demand and prices for CRTs, Royal Philips wrote off the remaining book value of 126 million Euros of its investment and said it would not inject further capital into the joint venture. During the Class Period, Royal Philips manufactured, sold and distributed CRT Products to customers throughout the United States.

48. Defendant Philips Electronics North America Corporation ("Philips Electronics NA") is a Delaware corporation with its principal palce of business located at 1251 Avenue of the Americas, New York, NY 10020-1104. Philips Electronics NA is a wholly owned and controlled subsidiary of defendant Royal Philips. During the Class Period, Philips Electronics

**11**
**CLASS ACTION COMPLAINT**

NA manufactured, sold and distributed CRT Products to customers throughout the United States.

49. Defendant Irico Group Corporation is a Chinese entity with its principal place of business located at 1 Caihong Rd., Xianyang City, Shaanxi Province 712021. Irico Group Corporation is the parent company for multiple subsidiaries engaged in the manufacture, distribution, and sale of CRT Products. During the Class Period, Irico Group Corporation manufactured, sold and distributed CRT Products throughout the United States.

50. Irico Display Devices Co., Ltd. is a Chinese entity with its principal place of business located at No. 16, Fenghui South Road West, District High-tech Development Zone, Xi'an, SXI 710075. Irico Display Devices Co., Ltd. is a partially-owned subsidiary of defendant Irico Group Corporation. In 2006, Irico Display Devices Co., Ltd. was China's top CRT maker. During the Class Period, Irico Display Devices Co., Ltd. manufactured, sold and distributed CRT Products throughout the United States.

51. Defendants Irico Group Corporation and Irico Display Devices Co., Ltd. are collectively referred to herein as "Irico."

52. Defendant Thai CRT Company, Ltd. ("Thai CRT") is a Thai company with its principal place of business located at 1/F Siam Cement Road, Bangsue Dusit, Bangkok, Thailand. Thai CRT is a subsidiary of Siam Cement Group. It was established in 1986 as Thailand's first manufacturer of CRTs for color televisions. During the Class Period, Thai CRT manufactured, sold and distributed CRT Products throughout the United States.

53. Defendant Tatung Company of America, Inc. ("Tatung America") is a California corporation with its principal place of business located at 2850 El Presidio Street, Long Beach, California. Tatung America was founded in 1972 and is a wholly owned and controlled subsidiary of Tatung Company of Taiwan. During the Class Period, Tatung America manufactured, sold and distributed CRT Products throughout the United States.

## DEFENDANTS AND CO-CONSPIRATORS

54. Various other persons, firms and corporations, not named as Defendants herein, and presently unknown to Plaintiffs, have participated as co-conspirators with Defendants and

1  have performed acts and made statements in furtherance of the conspiracy and/or in furtherance
2  of the anticompetitive, unfair or deceptive conduct.

3  55. Whenever in this Complaint reference is made to any act, deed or transaction of
4  any corporation, the allegation means that the corporation engaged in the act, deed or transaction
5  by or through its officers, directors, agents, employees or representatives while they were
6  actively engaged in the management, direction, control or transaction of the corporation's
7  business or affairs.

8  56. Each of the Defendants named herein acted as the agent or joint venturer of or for
9  the other Defendants with respect to the acts, violations and common course of conduct alleged
10  herein. Each Defendant which is a subsidiary of a foreign parent acts as the sole United States
11  agent for CRT Products made by its parent company.

12  ## INTERSTATE TRADE AND COMMERCE

13  57. Throughout the Class Period, there was a continuous and uninterrupted flow of
14  CRT Product sales in interstate and international commerce throughout the United States.

15  58. Defendants' unlawful activities, as described herein, took place within the flow
16  of interstate commerce to CRT Product purchasers located in states other than the states in
17  which Defendants are located, as well as throughout the world, and had a direct, substantial and
18  reasonably foreseeable effect upon interstate and international commerce, including the United
19  States CRT Products market.

20  ## CLASS ACTION ALLEGATIONS

21  59. Plaintiffs bring this action on behalf of themselves and as a class action pursuant
22  to the provisions of Rule 23 of the Federal Rules of Civil Procedure on behalf of all members of
23  the following class (the "Nationwide Class"):

24      All persons and or entities residing in the United States (excluding Defendants,
    co-conspirators, their subsidiaries and affiliates, all governmental entities, and
25      any judicial officer presiding over this action, including members of his/her
    immediate family and judicial staff, and any juror assigned to this action) who or
26      which indirectly purchased CRT Products in the United States for their own use
    and not for resale, at any time during the period from January 1, 1995 through
27      the present. Specifically excluded from this Class are the Defendants; the
28      officers, directors or employees of any Defendant; any entity in which any

**13**
**CLASS ACTION COMPLAINT**

Defendant has a controlling interest; and, any affiliate, legal representative, heir or assign of any Defendant. Also excluded are any federal, state or local government entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

60. Plaintiffs also bring this action on behalf of themselves and as a class action pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure and/or respective state statute(s), on behalf of all members of the following State classes or subclasses (collectively "Indirect Purchaser State Classes"): Arizona, Arkansas, California, District of Columbia, Florida, Hawaii, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Rhode Island, South Dakota, Tennessee, Vermont, West Virginia, and Wisconsin.

61. This action has been brought and may properly be maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure for the following reasons:

a. The Classes are ascertainable and there is a well-defined community of interest among members of the Classes;

b. Based upon the nature of trade and commerce involved and the number of indirect purchasers of CRT Products, Plaintiffs believe that the number of Class members is very large, and therefore joinder of all Class members is not practicable;

c. Plaintiffs' claims are typical Class members' claims because Plaintiffs indirectly purchased CRT Products manufactured by Defendants or their co-conspirators, and therefore Plaintiffs' claims arise from the same common course of conduct giving rise to the claims of the members of the Classes and the relief sought is common to the Classes;

d. The following common questions of law or fact, among others, exist as to the members of the Classes:

i. Whether Defendants formed and operated a combination or conspiracy to fix, raise, maintain, or stabilize the prices of CRT Products;

14
**CLASS ACTION COMPLAINT**

1                 ii.     Whether the combination or conspiracy caused CRT Products

2 prices to be higher than they would have been in the absence of Defendants' conduct;

3                 iii.    The operative time period of Defendants' combination or

4 conspiracy;

5                 iv.    Whether Defendants' conduct caused injury to the business or

6 property of Plaintiffs and the members of the Classes;

7                 v.     The appropriate measure of the amount of damages suffered by

8 the Classes;

9

10                 vi.    Whether Defendants' conduct violates Section 1 of the Sherman
Act (15 U.S.C. § 1) as alleged in the First Claim for Relief;

11

12                 vii.   Whether Defendants' conduct violates the Indirect Purchaser

13 States' antitrust laws as alleged in the Second Claim for Relief;

14

15                 viii.  Whether Defendants' conduct violates the unfair competition and

16 consumer protection laws of the Consumer Protection States as alleged in the Third Claim for
Relief;

17

18                 ix.    The appropriate nature of class-wide equitable relief.

19          e.     These and other questions of law and fact common to the members of the

20 Classes predominate over any questions affecting only individual members, including legal and
factual issues relating to liability and damages;

21

22          f.      After determination of the predominant common issues identified above,

23 if necessary or appropriate, the Classes can be divided into logical and manageable subclasses;

24          g.     Plaintiffs will fairly and adequately protect the interests of the Classes in

25 that Plaintiffs have no interests that are antagonistic to other members of the Classes and have

26 retained counsel competent and experienced in the prosecution of class actions and antitrust

27 litigation to represent them and the Classes;

28

**15**
**CLASS ACTION COMPLAINT**

1            h.      A class action is superior to other available methods for the fair and

2 efficient adjudication of this litigation since individual joinder of all damaged Class members is

3 impractical. The damages suffered by the individual Class members are relatively small, given

4 the expense and burden of individual prosecution of the claims asserted in this litigation. Thus,

5 absent the availability of class action procedures it would not be feasible for Class members to

6 redress the wrongs done to them. Even if the Class members could afford individual litigation,

7 the court system could not. Further, individual litigation presents the potential for inconsistent or

8 contradictory judgments and would greatly magnify the delay and expense to all parties and the

9 court system. Therefore, the class action device presents far fewer case management difficulties

10 and will provide the benefits of unitary adjudication, economy of scale and comprehensive

11 supervision in a single court;

12            i.      Defendants have acted, and/or refused to act, on grounds generally

13 applicable to the Classes, thereby making appropriate final injunctive relief with respect to the

14 Classes as a whole; and

15            j.      In the absence of a class action, Defendants would be unjustly enriched

16 because they would be able to retain the benefits and fruits of its wrongful conduct.

## CRT PRODUCT MARKET

18      62.      CRT stands for "cathode ray tube." A CRT is a vacuum tube that is coated on its

19 inside face with light sensitive phosphors. An electron gun at the back of the vacuum tube emits

20 electron beams. When the electron beams strike the phosphors, the phosphors produce either

21 red, green, or blue light. A system of magnetic fields inside the CRT, as well as varying

22 voltages, directs the beams to produce the desired colors. This process is rapidly repeated

23 several times per second to produce the desired images.

24      63.      CRT technology was first developed more than a century ago. The first

25 commercially practical CRT television was made in 1931. However, it was not until the RCA

26 Corporation introduced the product at the 1939 World's Fair that it became widely available to

27 consumers. Since then, CRTs have become the heart of most display products, including

28 televisions, computer monitors, oscilloscopes, air traffic control monitors, and ATMs. Even

1  large public displays, including many scoreboards at sports arenas, are comprised of thousands
2  of single color CRTs.

3  64. Until the last few years, CRTs were the dominant technology used in displays,
4  including television and computer monitors. During the Class Period, this translated into the sale
5  of millions of CRT Products, generating billions of dollars in annual profits.

6  65. Conventional CRT televisions are being rapidly replaced by liquid crystal and
7  plasma displays, resulting in this alleged price fixing scheme to slow down the declining CRT
8  Product prices. Between 2000 and 2006, revenues from the sale of CRT televisions in the United
9  States declined by 50.7 percent and are predicted to decline by an additional 84.5 percent
10  between 2006 and 2010.

11  66. Although demand has been sharply declining as a result of the popularity of flat-
12  panel LCDs and plasma televisions, CRT televisions were still being sold during the Class
13  Period, making collusion and the international price fixing conspiracy worthwhile. Due to the
14  high costs of LCD panels and plasma displays during the Class Period, a niche market for CRTs
15  existed as a cheaper alternative to these new technologies.

16  ### STRUCTURAL CHARACTERISTICS OF THE CRT PRODUCT MARKET

17  67. The structural characteristics of the CRT Product market are conducive to the
18  type of collusive activity alleged in this Complaint.

19  68. CRT Products are commodity-like products which are manufactured in
20  standardized sizes. One defendant's CRT Product for a particular application, such as a
21  particular size television set or computer monitor, is substitutable for another's. Defendants sell
22  and Plaintiff (and Class members) purchases CRT Products primarily on the basis of price.

23  69. It is easier to form and sustain a cartel when the product in question is
24  commodity-like because it is easier to agree on prices to charge and to monitor those prices once
25  an agreement is formed.

26  70. Demand for CRT Products is declining. Static or declining demand is another
27  factor which makes the formation of a collusive arrangement more likely because it provides a
28  greater incentive to firms to avoid price competition.

71.     Defendants are horizontal competitors, meaning that they sell at the same wholesale or retail level of the distribution chain. This makes it easier to monitor adherence to the cartel.

72.     There are substantial barriers to entry in the CRT Products industry. It would require substantial time, resources and industry knowledge to even potentially overcome the barriers to entry. It is also extremely unlikely that a new producer would enter the market in light of the declining demand for CRT products.

73.     Newer industries are typically characterized by rapid growth, innovation and high profits. The CRT Product market is a mature one, and like many mature industries, is characterized by slim profit margins, creating a motivation to collude.

74.     During the Class Period, the CRT industry has been dominated by relatively few companies. In 2004, Defendants Samsung SDI, LP Displays, MT Picture Display and Chunghwa Picture Tubes together held a collective 78% share of the global CRT market. The high concentration of market share facilitates coordination since there are fewer cartel members among which to coordinate pricing or allocate markets, and it is easier to monitor the pricing and production of other cartel members.

75.     The CRT industry also had significant consolidation during the Class Period, including but not limited to: (a) the creation of LG Philips Displays in 2001 as a joint venture between Royal Philips and LG Electronic's CRT business; (b) the 2002 merger of Toshiba and Matsushita into Matsushita-Toshiba; and (c) Orion's agreement to manufacture CRT Products for Toshiba, which effectively took Toshiba's capacity out of the market.

76.     Involvement in long standing joint ventures, both in the CRT market and closely related markets, also gave these "competitors" continuous opportunities to discuss pricing, capacity utilization, and other important prospective market information. The mutually beneficial nature of the business relations between certain Defendants not only provided the opportunity to conspire; it also created a financial incentive to do so.

77.     Examples of the high degree of cooperation among Defendants in both the CRT market and other closely related markets include the following:

1     a.     Defendant Chungwha has a long standing joint venture with Defendant

2   Samsung Electronics Co., Ltd. for the production of liquid crystal display panels. Chungwha

3   now licenses the technology from Defendant Royal Philips, although this is a recent

4   development that helped resolve a patent infringement suit filed in 2002.

5     b.     Defendants LG Electronics and Hitachi Ltd. entered into a joint venture in

6   2000 for the manufacture, sale and distribution of optical storage products such as DVD drives.

7     c.     Defendant Samtel participates in a joint venture, Samcor Glass Limited,

8   with Defendant Samsung Electronics Co., Ltd. and non-Defendant Corning Inc., USA for the

9   production and supply of picture tube glass.

10     d.     Defendant Orion participates in a joint venture for the manufacture of

11   CRT Products with Defendant Toshiba, as well as non-Defendants P.T. Tabung Gambar

12   Indonesia and Japanese trading company Sumitomo Corporation.

13     e.     Defendant Samtel claims to have supplied CRTs to Defendants LG

14   Electronics, Samsung, Royal Philips, and Matsushita.

15     78.     Defendants also maintain their close relationships through common membership

16   in trade associations. Defendants Chungwha, Hitachi and Samsung are all members of the

17   Society for Information Display. Defendants Samsung and LG Electronics are two of the co-

18   founders of the Korea Display Industry Association. Similarly, Defendants Orion, LG

19   Electronics, LP Displays, and Samsung are members of the Electronic Display Industrial

20   Research Association. Upon information and belief, Defendants use these trade associations as

21   vehicles for discussing and agreeing upon their pricing for CRT Products. At the meetings of

22   these trade associations, Defendants exchange proprietary and competitively sensitive

23   information which they use to implement and monitor the conspiracy.

24   ## DEFENDANTS' COLLUSIVE ACTIVITIES

25     79.     Plaintiffs are informed and believe, and thereon allege, that in order to control

26   and maintain profitability during declining demand for CRTs, Defendants and their co-

27   conspirators have engaged in a contract, combination, trust or conspiracy, the effect of which

28

**19**
**CLASS ACTION COMPLAINT**

1   has been to raise the prices at which they sold CRT Products to artificially inflated levels from at
2   least January 1, 1995 through the present.

3       80.    Defendants' collusion is evidenced by unusual price movements in the CRT
4   market. In the 1990s, industry analysts repeatedly predicted declines in consumer prices for
5   CRTs that did not fully materialize. Despite these predictions, and the existence of economic
6   conditions warranting a drop in prices, CRT prices nonetheless remained stable.

7       81.    During the Class Period, while demand in the United States for CRT Products
8   continued to decline, Defendants' conspiracy was effective in moderating the normal downward
9   pressures on prices for CRT Products caused by the entry and popularity of the new generation
10  LCD panels and plasma display products.

11      82.    During the Class Period, there were not only periods of unnatural and sustained
12  price stability, but there were also unexplained increases in prices of CRT Products. These price
13  increases were despite the declining demand due to the approaching obsolescence of CRT
14  Products caused by the emergence of a new, potentially superior and clearly more popular
15  substitutable technology.

16      83.    These price increases and price stability in the market for CRT Products during
17  the Class Period are inconsistent with a competitive market for a product facing rapidly
18  decreasing demand caused by a new, substitutable technology.

19      84.    On November 8, 2007, antitrust authorities in Europe, Japan and South Korea
20  raided the offices of manufacturers of CRT Products as part of an international investigation of
21  alleged price fixing.

22      85.    Defendant MT Picture Display Co., Ltd., the CRT unit of Defendant Matsushita
23  Electric, has confirmed that it was raided by Japan's Fair Trade Commission.

24      86.    *Kyodo News* reported on November 8, 2007, upon information and belief, that
25  MT Picture Display fixed prices for CRTs with manufacturers in three Asian countries,
26  including South Korea's Samsung SDI Co.

27      87.    *Kyodo News* further reported that:

28

**20**
**CLASS ACTION COMPLAINT**

Officials of these three companies are believed to have had at least 10 meetings since 2005 in major Asian cities to coordinate target prices when delivering their products to TV manufacturers in Japan and South Korea, the sources said.

88. Defendant Samsung SDI Co., Ltd. was raided by South Korea's Fair Trade Commission, which has started an investigation into Samsung's CRT business.

89. The European Commission confirmed that it had carried out surprise inspections at the European offices of CRT Product manufacturers, seeking evidence of cartel activity in the sector.

90. According to Japan's *Nikkei Business Daily*, authorities in the United States were also involved in the investigation of an alleged international cartel of CRT manufacturers.

91. The *Asian Shimbun* further reported on November 10, 2007 that "[t]he representatives held meetings in Southeast Asia where the companies operate CRT factories, the sources said. The European Commission, the European Union's executive branch, and the U.S. Justice Department have been investigating four companies' [referring to the four Asian-based manufacturers—MT Picture Display, Samsung SDI Co., Chungwha Picture Tubes, LP Displays] overseas units and are closely consulting with the Fair Trade Commission by sharing information."

92. On November 12, 2007, *Dow Jones International News* reported that Defendant Chungwha Picture Tubes Ltd. had received a subpoena on November 9, 2007 issued by a California District Court "to assist in an investigation into whether cathode ray tube manufacturers had set up a cartel."

93. Unnamed sources close to the investigation report that the firms are suspected of fixing the amount they charge TV manufacturers for CRTs in an effort to stop prices from dropping.

94. On November 21, 2007, Defendant Royal Philips publicly disclosed that it too is subject to one or more investigations into anticompetitive conduct in the CRT industry. Royal Philips spokesman Joon Knapen declined to comment on which jurisdictions have started investigations. Royal Philips stated that it intended to assist the regulators.

95. As outlined above, Defendants have a history of competitor contacts resulting from joint ventures, numerous cross-licensing agreements, and other alliances in related businesses in the electronics industry.

96. Several Defendants have a history of "cooperation" and anticompetitive conduct. For example, Defendant Samsung was fined \$300 million by the U.S. Department of Justice in October 2005 for participating in a conspiracy to fix the prices of Dynamic Random Access Memory.

97. Defendants Samsung and Toshiba have acknowledged being contacted by the U.S. Department of Justice as part of an ongoing investigation for fixing prices of Static Random Access Memory and NAND Flash Memory.

98. In December 2006, authorities in Japan, Korea, the European Union and the United States revealed a comprehensive investigation into anticompetitive conduct among CRT manufacturers. Defendant Samsung, Toshiba and LG Philips (a joint venture between Defendants LG Electronics and Royal Philips) are under criminal investigation for price fixing in the closely related CRT market.

99. By engaging in collusive conduct in the market for CRT Products, Defendants were able to manipulate and artificially fix, raise, maintain or stabilize the prices for the CRT Products that they manufactured and sold in the United States.

100. During the Class Period, Plaintiffs and the class members indirectly purchased CRT Products manufactured by the Defendants or their co-conspirators.

101. Plaintiffs and the class members paid more for their indirect CRT Product purchases than they would have paid had Defendants not fixed CRT Product prices and cooperated in other aspects of the CRT Product market.

102. As a direct and proximate result of Defendants' conspiracy, Plaintiffs and the class members have been injured and financially damaged in their respective businesses and property in presently undetermined amounts.

//

//

**22**
**CLASS ACTION COMPLAINT**

1

## VIOLATIONS ALLEGED

2

### First Claim for Relief

3

### (Violation of Section 1 of the Sherman Act)

4      103.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and

5    every allegation set forth in the preceding paragraphs of this Complaint.

6      104.    Beginning at a time unknown to Plaintiffs, but at least as early as January 1,

7    1995, through at the present, the exact dates being unknown to Plaintiffs and exclusively within

8    the knowledge of Defendants, Defendants and their co-conspirators, entered into a continuing

9    agreement, understanding, and conspiracy to unreasonably restrain trade and commerce in the

10   United States, in violation of Section 1 of the Sherman Act, 15 U.S.C. §1.

11     105.    In particular, Defendants have combined and conspired to fix, raise, maintain or

12   stabilize the prices of CRT Products sold in the United States.

13     106.    Defendants, by their unlawful conspiracy, artificially raised, inflated and

14   maintained the market prices of CRT Products as herein alleged.

15     107.    The contract, combination or conspiracy consisted of a continuing agreement,

16   understanding and concert of action among Defendants and their co-conspirators, the substantial

17   terms of which were to fix, raise, maintain and stabilize the prices of CRT Products they sold in

18   the United States and elsewhere.

19     108.    In formulating and carrying out the alleged agreement, understanding, and

20   conspiracy, the Defendants and their co-conspirators did those things that they combined and

21   conspired to do, including, but not limited to the acts, practices, and course of conduct set forth

22   above, and the following, among others:

23           a.      Participated in meetings and conversations to discuss the prices of CRT

24                  Products;

25           b.      Agreed to manipulate prices and supply of CRT Products in a manner that

26                  deprived purchasers of CRT Products of free and open competition;

27           c.      Issued price announcements and price quotations in accordance with the

28                  agreements reached; and

**23**
**CLASS ACTION COMPLAINT**

1           d.     Sold CRT Products to customers in the United States at non-competitive

2                 prices.

3     109.    The combination and conspiracy alleged herein has had the following effects,

4 among others:

5           a.     Price competition in the sale of CRT Products has been restrained,

6                 suppressed and/or eliminated in the United States;

7           b.     Prices for CRT Products sold by Defendants and their co-conspirators

8                 have been fixed, raised, maintained and stabilized at artificially high, non-

9                 competitive levels throughout the United States; and

10           c.     Those who purchased CRT Products directly or indirectly from

11                 Defendants have been deprived the benefits of free and open competition.

12     110.    As a direct result of the unlawful conduct of Defendants and their co-conspirators

13 in furtherance of their continuing contract, combination or conspiracy, Plaintiffs and the

14 members of the Nationwide Class have been injured and will continue to be injured in their

15 business and property by paying more for CRT Products purchased indirectly from the

16 Defendants and their co-conspirators than they would have paid and will pay in the absence of

17 the combination and conspiracy.

18     111.    These violations are continuing and will continue unless enjoined by this Court.

19     112.    Pursuant to Section 16 of the Clayton Act, 15 U.S.C. § 26, Plaintiffs and the

20 Nationwide Class seek the issuance of an injunction against Defendants, preventing and

21 restraining the violations alleged herein.

22                           **Second Claim For Relief**

23                  **(Violation of State Antitrust Statutes)**

24     113.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and

25 every allegation set forth in the preceding paragraphs of this Complaint.

26     114.    Defendants' intentional and purposeful anticompetitive acts that are described

27 above, including but not limited to acts of collusion to set prices and the actual act of price

28 fixing itself, were intended to and did in fact case Plaintiffs and the members of the Indirect

1 Purchaser State Classes to pay supracompetitive prices for CRT Products purchased in the
2 Indirect Purchaser States.

3    115.   Defendants' contract, combination and conspiracy as described above is in
4 violation of the following state antitrust statutes:

5    116.   By reason of the foregoing, Defendants have entered into agreements in restraint
6 of trade in violation of Arizona Revised Stat. §§44-1401 et seq.

7    117.   By reason of the foregoing, Defendants have entered into agreements in restraint
8 of trade in violation of California Business & Professions Code §16720 et seq.

9    118.   By reason of the foregoing, Defendants have entered into agreements in restraint
10 of trade in violation of District of Columbia Code Ann. §§28-4503 et seq.

11   119.   By reason of the foregoing, Defendants have entered into agreements in restraint
12 of trade in violation of Iowa Code §§553.1 et seq.

13   120.   By reason of the foregoing, Defendants have entered into agreements in restraint
14 of trade in violation of Kansas Stat. Ann. §§50-101 et seq.

15   121.   By reason of the foregoing, Defendants have entered into agreements in restraint
16 of trade in violation of Maine Rev. Stat. Ann. 10, §§1101 et seq.

17   122.   By reason of the foregoing, Defendants have entered into agreements in restraint
18 of trade in violation of Michigan Comp. Laws Ann. §§445.773 et seq.

19   123.   By reason of the foregoing, Defendants have entered into agreements in restraint
20 of trade in violation of Minnesota Stat. §§325D.52 et seq.

21   124.   By reason of the foregoing, Defendants have entered into agreements in restraint
22 of trade in violation of Mississippi Code Ann. §75-21-1 et seq.

23   125.   By reason of the foregoing, Defendants have entered into agreements in restraint
24 of trade in violation of Nebraska Rev. Stat. §59-801 et seq.

25   126.   By reason of the foregoing, Defendants have entered into agreements in restraint
26 of trade in violation of Nevada Rev. Stat. Ann. §§598A et seq.

27   127.   By reason of the foregoing, Defendants have entered into agreements in restraint
28 of trade in violation of New Mexico Stat. Ann. §§57-1-1 et seq.

**25**
**CLASS ACTION COMPLAINT**

1    128.    By reason of the foregoing, Defendants have entered into agreements in restraint

2    of trade in violation of North Carolina Gen. Stat. §§75-1 et seq.

3    129.    By reason of the foregoing, Defendants have entered into agreements in restraint

4    of trade in violation of North Dakota Cent. Code §§51-08.1-01 et seq.

5    130.    By reason of the foregoing, Defendants have entered into agreements in restraint

6    of trade in violation of South Dakota Codified Laws Ann. §§37-1 et seq.

7    131.    By reason of the foregoing, Defendants have entered into agreements in restraint

8    of trade in violation of Tennessee Code Ann. §§47-25-101 et seq.

9    132.    By reason of the foregoing, Defendants have entered into agreements in restraint

10   of trade in violation of Vermont Stat. Ann. 9 §§2453 et seq.

11   133.    By reason of the foregoing, Defendants have entered into agreements in restraint

12   of trade in violation of West Virginia Code §§47-18-1 et seq.

13   134.    By reason of the foregoing, Defendants have entered into agreements in restraint

14   of trade in violation of Wisconsin Stat. §§133.01 et seq.

15   135.    Class members in each of the states listed above paid supracompetitive,

16   artificially inflated prices for CRT Products. As a direct and proximate result of Defendants'

17   unlawful conduct, Plaintiffs and members of the Indirect Purchaser State Classes have been

18   injured in their business and property in that they paid more for CRT Products than they

19   otherwise would have paid in the absence of Defendants' unlawful conduct.

20   136.    As a result of Defendants' and their co-conspirators' violation of the above

21   Indirect Purchaser States' antitrust laws, Plaintiffs seek damages, to be trebled where permitted

22   by a particular State's antitrust law, and costs of suit, including reasonable attorneys' fees, to the

23   extent permitted by the above Indirect Purchaser States' antitrust laws.

24                    **Third Claim for Relief**

25   **(Violation of State Consumer Protection and Unfair Competition Statutes)**

26   137.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and

27   every allegation set forth in the preceding paragraphs of this Complaint.

28

**26**
**CLASS ACTION COMPLAINT**

1  138. Defendants engaged in unfair competition or unfair, unconscionable, deceptive or
2  fraudulent acts or practices in violation of the state consumer protection and unfair competition
3  statutes listed below.

4  139. Defendants have engaged in unfair competition or unfair or deceptive acts or
5  practices in violation of Arkansas Code §4-88-101 et seq.

6  140. Defendants have engaged in unfair competition or unfair or deceptive acts or
7  practices in violation of California Business & Professions Code §17200 et seq.

8  141. Defendants have engaged in unfair competition or unfair or deceptive acts or
9  practices in violation of District of Columbia Code §28-3901 et seq.

10  142. Defendants have engaged in unfair competition or unfair or deceptive acts or
11  practices in violation of Florida Stat. §501.201 et seq.

12  143. Defendants have engaged in unfair competition or unfair or deceptive acts or
13  practices in violation of Hawaii Rev. Stat. §480 et seq.

14  144. Defendants have engaged in unfair competition or unfair or deceptive acts or
15  practices in violation of Kansas Stat. §50-623 et seq.

16  145. Defendants have engaged in unfair competition or unfair or deceptive acts or
17  practices in violation of 5 Maine Rev. Stat. §207 et seq.

18  146. Defendants have engaged in unfair competition or unfair or deceptive acts or
19  practices in violation of Massachusetts G.L. c. 93A, §2 et seq.

20  147. Defendants have engaged in unfair competition or unfair or deceptive acts or
21  practices in violation of Nebraska Rev. Stat. §59-1601 et seq.

22  148. Defendants have engaged in unfair competition or unfair or deceptive acts or
23  practices in violation of New Hampshire Revised Statutes §358-A:1 et seq.

24  149. Defendants have engaged in unfair competition or unfair or deceptive acts or
25  practices in violation of New Mexico Stat. §57-12-1 et seq.

26  150. Defendants have engaged in unfair competition or unfair or deceptive acts or
27  practices in violation of New York Gen Bus. Law §349 et seq. Specifically:

28  a. Defendants engaged in commerce in New York;

1            b.      Defendants and their co-conspirators secretly agreed to raise prices by

2    direct agreement on bids to customers located in New York and through artificial supply

3    restraints on the entire CRT Product market;

4            c.      New York consumers were targets of the conspiracy;

5            d.      The secret agreements were not known to New York consumers;

6            e.      Defendants made public statements about the price of CRT Products that

7    Defendants knew would be seen by New York consumers; such statements either omitted

8    material information that rendered these statements that they made materially misleading or

9    affirmatively misrepresented the real cause of price increases for CRT Products; and,

10   Defendants alone possessed material information that was relevant to consumers, but failed to

11   provide the information;

12           f.      Because of Defendants' unlawful trade practices in the State of New

13   York, there was a broad impact on New York consumer class members who indirectly

14   purchased CRT Products; and consumer class members have been injured because they have

15   paid more for CRT Products than they would have paid in the absence of Defendants' unlawful

16   trade acts and practices;

17           g.      Because of Defendants' unlawful trade practices in the State of New

18   York, New York consumer class members who indirectly purchased CRT Products were misled

19   to believe that they were paying a fair price for CRT Products or the price increases for CRT

20   Products were for valid business reasons; and similarly situated consumers were potentially

21   affected by Defendants' conduct;

22           h.      Defendants knew that their unlawful trade practices with respect to

23   pricing of CRT Products would have an impact on New York consumers and not just

24   Defendants' direct customers;

25           i.      Defendants knew that their unlawful trade practices with respect to

26   pricing of CRT Products would have a broad impact, causing consumer class members who

27   indirectly purchased CRT Products to be injured by paying more for CRT Products than they

28   would have paid in the absence of Defendants' unlawful trade acts and practices;

1     j.     Defendants' consumer-oriented violations adversely affected the public
2  interest in the State of New York.

3     151.   Defendants have engaged in unfair competition or unfair or deceptive acts or
4  practices in violation of North Carolina Gen. Stat. §75-1.1 et seq.

5     152.   Defendants have engaged in unfair competition or unfair or deceptive acts or
6  practices in the sale of CRT Products that were indirectly purchased primarily for personal,
7  family, or household purposes in violation of Rhode Island Gen. Laws §6-13.1-1 et seq.

8            a.     Defendants engaged in commerce in Rhode Island;

9            b.     Defendants and their co-conspirators unscrupulously and secretly agreed
10 to raise CRT Product prices by direct agreement on prices Defendants charged their customers
11 located in Rhode Island and through artificial supply restraints on the entire CRT Products
12 market;

13           c.     The secret agreements were not known to Rhode Island natural persons
14 who indirectly purchased CRT Products primarily for personal, family or household purposes;

15           d.     Defendants made public statements that Defendants knew would be seen
16 by Rhode Island natural persons who indirectly purchased CRT Products primarily for personal,
17 family or household purposes; such statements created a likelihood of confusion or
18 misunderstanding with respect to the real reasons that the prices of CRT Products were rising;
19 and, such statements either omitted material information that rendered the statements materially
20 misleading and confusing, or affirmatively deceived such consumers about the real cause of
21 price increases for CRT Products;

22           e.     Because of Defendants' unlawful and unscrupulous trade practices in
23 Rhode Island, natural persons in Rhode Island who indirectly purchased CRT Products primarily
24 for personal, family or household purposes were misled or deceived to believe that they were
25 paying a fair price for CRT Products or the price increases for CRT Products were for valid
26 business reasons;

27           f.     Natural persons who indirectly purchased CRT Products primarily for
28 personal, family or household purposes have been injured bcause they have paid more for CRT

**29**
**CLASS ACTION COMPLAINT**

1   Products than they would have in the absence of Defendants' unlawful and unscrupulous trade
2   acts and practices;

3                g.      Defendants knew that their unscrupulous and unlawful trade practices
4   with respect to pricing CRT Products would have an impact on Rhode Island natural persons
5   who indirectly purchased CRT Products primarily for personal, family or household purposes
6   and not just Defendants' direct customers;

7                h.      Defendants knew that their violations with respect to pricing of CRT
8   Products would have a broad impact, causing natural persons who indirectly purchased CRT
9   Products primarily for personal, family or household purposes to be injured by paying more for
10   CRT Products than they would have paid in the absence of Defendants' unlawful trade acts and
11   practices;

12                i.      Defendants' violations adversely affected public policy in Rhode Island.

13      153.    Defendants have engaged in unfair competition or unfair or deceptive acts or
14   practices in violation of Vermont Stat. Ann. Title 9, §2451 et seq.

15      154.    Class members in each of the Consumer Fraud States listed above paid
16   supracompetitive, artificially inflated prices for CRT Products. As a direct and proximate result
17   of Defendants' unlawful conduct, Plaintiffs and Class members have been injured in their
18   business and property in that they paid more for CRT Products than they otherwise would have
19   paid in the absence of Defendants' unlawful conduct.

20      155.    Plaintiffs and Class members are therefore entitled to all appropriate relief as
21   provided for by the above Consumer Fraud States' laws, including but not limited to, actual
22   damages, injunctive relief, attorneys' fees and equitable relief such as restitution and/or
23   disgorgement of all revenues, earnings, profits, compensation and benefits which may have been
24   obtained by Defendants as a result of their unlawful conduct.

25                      **Fourth Claim for Relief**

26            **(Unjust Enrichment and Disgorgement of Profits)**

27      156.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and
28   every allegation set forth in the preceding paragraphs of this Complaint.

1    157.    Defendants have been unjustly enriched through overpayments by Plaintiffs and
2  the Class members and the resulting profits.

3    158.    Under common law principles of unjust enrichment, Defendants should not be
4  permitted to retain the benefits conferred via overpayments by Plaintiffs and the members of the
5  Classes.

6    159.    Plaintiffs seek disgorgement of all profits resulting from such overpayments and
7  establishment of a constructive trust from which Plaintiffs and the Class members may seek
8  restitution.

9                        **FRAUDULENT CONCEALMENT**

10    160.    Throughout the relevant period, Defendants affirmatively and fraudulently
11  concealed their unlawful conduct against Plaintiff and the Classes.

12    161.    Plaintiffs and the members of the Classes did not discover, and could not discover
13  through the exercise of reasonable diligence, that Defendants were violating the antitrust laws as
14  alleged herein until shortly before this litigation was commenced. Nor could Plaintiffs and the
15  Class members have discovered the violations earlier than that time because Defendants
16  conducted their conspiracy in secret, concealed the nature of their unlawful conduct and acts in
17  furtherance thereof, and fraudulently concealed their activities through various other means and
18  methods designed to avoid detection. The conspiracy was by its nature self-concealing.

19    162.    Defendants engaged in a successful, illegal price-fixing conspiracy with respect
20  to CRT Products, which they affirmatively concealed, in at least the following respects:

21        a.    By agreeing among themselves not to discuss publicly, or otherwise
22  reveal, the nature and substance of the acts and communications in furtherance of their illegal
23  scheme; and

24        b.    By giving false and pretextual reasons for their CRT Product price
25  increases during the relevant period and by describing such pricing falsely as being the result of
26  external costs rather than collusion.

27

28

                                **31**
                    **CLASS ACTION COMPLAINT**

1   163.   As a result of Defendants' fraudulent concealment of their conspiracy, Plaintiffs

2   and the Classes assert the tolling of any applicable statute of limitations affecting the rights of

3   action of Plaintiffs and the members of the Classes.

4   ## PRAYER FOR RELIEF

5   WHEREFORE, Plaintiffs pray as follows:

6   A.   That the Court determine that the claims alleged herein under the Sherman Act,

7   state antitrust laws, state consumer protection and/or unfair competition laws may be maintained

8   as a class action under Rule 23 of the Federal Rules of Civil Procedure;

9   B.   That the Court adjudge and decree that the unlawful conduct, contract,

10   combination and conspiracy alleged herein constitutes:

11   a.   A violation of the Sherman Act, 15 U.S.C. §1, as alleged in the First Claim

12   for Relief;

13   b.   A violation of the Indirect Purchaser States' antitrust laws as alleged in the

14   Second Claim for Relief;

15   c.   A violation of the Consumer Fraud States' consumer protection and unfair

16   competition laws as alleged in the Third Claim for Relief; and

17   d.   Acts of unjust enrichment as set forth in the Fourth Claim for Relief herein.

18   C.   That Plaintiffs and the Indirect Purchaser State Classes recover damages, as

19   provided by the Indirect Purchaser States' antitrust laws and the Consumer Fraud States'

20   consumer protection and unfair competition laws, and that a joint and several judgment in favor

21   of Plaintiffs and the Classes be entered against the Defendants in an amount to be trebled in

22   accordance with such laws;

23   D.   That Defendants, their co-conspirators, successors, transferees, assigns, parents,

24   subsidiaries, affiliates, and the officers, directors, partners, agents and employees thereof, and all

25   other persons acting or claiming to act on behalf of Defendants, or in concert with them, be

26   permanently enjoined and restrained from, in any manner, directly or indirectly, continuing,

27   maintaining or renewing the combinations, conspiracy, agreement, understanding or concert of

28

**32**
**CLASS ACTION COMPLAINT**

1    action, or adopting or following any practice, plan, program or design having a similar purpose

2    or effect in restraining competition;

3         E.    That Plaintiffs and the Classes be awarded restitution, including disgorgement of

4    profits obtained by Defendants as a result of its acts of unfair competition and acts of unjust

5    enrichment;

6         F.    That the Court award Plaintiffs and the Classes they represent pre-judgment and

7    post-judgment interest as permitted by law;

8         G.    That Plaintiffs and the members of the Classes recover their costs of suit,

9    including reasonable attorneys' fees as provided by law; and

10        H.    That the Court award Plaintiffs and the Classes they represent such other and

11   further relief as may be necessary and appropriate.

12                                **JURY DEMAND**

13        Plaintiffs demand a trial by jury of all of the claims asserted in this Complaint so triable.

14

15   Dated: March 10, 2008            By: _Mario N. Alioto_

16                                       Mario N. Alioto (56433)
                                         Lauren C. Russell (241151)
17                                       **TRUMP, ALIOTO, TRUMP & PRESCOTT,**
                                         **LLP**
18                                       2280 Union Street
                                         San Francisco, CA 94123
19                                       Telephone:  (415) 563-7200
                                         Facsimile: (415) 346-0679
20                                       malioto@tatp.com ; laurenrussell@tatp.com

21
                                         Joseph M. Patane (72202)
22                                       **LAW OFFICES OF JOSEPH M. PATANE**
                                         2280 Union Street
23                                       San Francisco, CA 94123
                                         Telephone: (415) 563-7200
24                                       Facsimile: (415) 346-0679
                                         E-mail: jpatane@tatp.com
25

26

27

28

**33**
**CLASS ACTION COMPLAINT**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Lawrence G. Papale (67068)
**LAW OFFICES OF LAWRENCE G. PAPALE**
1308 Main Street #117
St. Helena, CA 94574
Telephone: (707) 963-1704
Facsimile: (707) 963-0706
E-mail: lgpapale@papalelaw.com

Kenneth L. Valinoti (118442)
**VALINOTI & DITO LLP**
180 Montgomery Street, Suite 940
San Francisco, CA 94104
Telephone: (415) 986-1338
Facsimile: (415) 986-1231
E-mail: kvalinoti@valinoti-dito.com

Sherman Kassof (66383)
**LAW OFFICES OF SHERMAN KASSOF**
954 Risa Road, Suite B
Lafayette, CA 94549
Telephone: (510) 652 2554
Facsimile: (510) 652 9308
E-mail: heevay@att.net

Seymour J. Mansfield
Jean B. Roth
**MANSFIELD, TANICK & COHEN, P.A.**
1700 U.S. Bank Plaza
220 South Sixth Street
Minneapolis, MN 55402
Telephone: (612) 339-4295
Facsimile: (612) 339-3161
E-mail: smansfield@mansfieldtanick.com

Joel Flom
**JEFFRIES, OLSON & FLOM, P.A.**
1202 27th Street South
Fargo, N.D. 58103
Telephone: (701) 280-2300
Facsimile: (701) 280-1800
E-mail: joel@jeffrieslaw.com

Michael G. Simon
M. Eric Frankovitch
**FRANKOVITCH, ANETAKIS,**
**COLANTONIO & SIMON**
337 Penco Road
Weirton, WV  26062
Telephone: (304) 723-4400
Facsimile: (304) 723-5892
E-mail: msimon@facslaw.com

Robert Gerard
**GERARD & OSUCH, LLP**
1516 Front Street
San Diego, CA 92101
Telephone: (619) 232-2828
E-mail: rgerard@gerardlaw.com

Robert Gerard
**GERARD & OSUCH, LLP**
2840 South Jones Blvd.
Building D, Unit 4
Las Vegas, NV 89146
Telephone: (702) 251-0093
E-mail: rgerard@gerardlaw.com

**Attorneys for Plaintiffs Nasto, Piper, Belai,**
**Stephenson, Norby, Larch, Hare, Stringwell and**
**Hanson And All Others Similarly Situated**

# EXHIBIT B

1   JAMES McMANIS (40958)
    MARWA ELZANKALY (206658)
2   McMANIS FAULKNER & MORGAN
    A Professional Corporation
3   50 W. San Fernando Street, 10th Floor
    San José, California  95113   E-FILING
4
    Telephone:  (408) 279-8700
5   Facsimile:  (408) 279-3244
    melzankaly@mfmlaw.com
6
    ADR
7   Attorneys for Plaintiff, CARMEN GONZALEZ

8                UNITED STATES DISTRICT COURT
                NORTHERN DISTRICT OF CALIFORNIA
9                      SAN JOSE DIVISION

10  CARMEN GONZALEZ, on behalf          C08      01108 JF
11  of herself and others similarly situated,
                                        CLASS ACTION COMPLAINT; JURY
12              Plaintiffs,             TRIAL DEMANDED

13  vs.

14
    CHUNGHWA PICTURE TUBES, LTD.;
15  TATUNG COMPANY OF AMERICA, INC.;
    L.G. ELECTRONICS, INC.; MATSUSHITA
16  ELECTRIC INDUSTRIAL CO. LTD.;
    PANASONIC CORPORATION OF NORTH
17  AMERICA; KONINKLIJKE PHILIPS
    ELECTRONICS NV; PHILIPS ELECTRONICS
18  NORTH AMERICA CORPORATION; LG
    PHILIPS DISPLAY USA, INC.;
19  SAMSUNG ELECTRONICS CO. LTD.;
20  SAMSUNG ELECTRONICS AMERICA, INC.;
    SAMSUNG SDI CO. LTD., formerly known as
21  SAMSUNG DISPLAY DEVICE CO.; TOSHIBA
    CORPORATION; TOSHIBA AMERICA
22  ELECTRONICS COMPONENTS, INC.;
    TOSHIBA AMERICA INFORMATION
23  SYSTEMS, INC.; MT PICTURE DISPLAY
    COMPANY; MT PICTURE DISPLAY
24  CORPORATION OF AMERICA (New York);
    MT PICTURE DISPLAY CORPORATION OF
25  AMERICA (Ohio), LP DISPLAYS, and DOES 1
    through 50, inclusive,
26
27              Defendants.
28

                              1

1    Plaintiff, by her undersigned attorneys, individually and on behalf of the class described

2  below, brings this action for damages and injunctive relief for price fixing and market and

3  customer allocation under Section 1 of the Sherman Act of 1890, 15 U.S.C. § I, and the antitrust

4  laws of the United States, the California Cartwright Act and the California Unfair Competition

5  laws, against the manufacturers of cathode-ray tubes ("CRTs") and products containing CRTs,

6  named above, which participated in an overarching, on-going, international conspiracy and cartel

7  beginning on at least January 1, 1995 and continuing to the present. Based on personal

8  knowledge, information and belief, and the investigation of counsel, plaintiff, Carmen Gonzalez,

9  alleges as follows;

10                          **NATURE OF THE CASE**

11    1.    This case arises out of a long-running, international conspiracy among defendants

12  and their co-conspirators to fix the prices of, CRTs and products containing CRTs (jointly, "CRT

13  Products").

14    2.    This lawsuit is brought as a class action on behalf of all individuals and entities

15  who purchased CRT Products indirectly from Defendants, their predecessors or their controlled

16  subsidiaries and affiliates from at least as early as January 1, 1995 to the present (the "Class

17  Period"). Plaintiff alleges that during the Class Period, Defendants conspired to fix, raise,

18  maintain, or stabilize the prices of CRT Products sold in the United States during the relevant

19  time period defined below.

20    3.    Throughout the Class Period, Defendants' conspiracy was intended to, and did,

21  moderate the downward price pressures on CRT Products caused by the market entry and rapid

22  penetration of more technologically advanced competitive products. As explained in further

23  detail below, liquid crystal displays ("LCD") and plasma display panels ("PDP") were used in

24  the same primary applications as CRTs and presented significant advantages over CRT Products.

25  LCD, PDP and products containing LCD or PDP will collectively be referred to as flat panel

26  display products ("FPD Products"). Many of the Defendants, in addition to manufacturing,

27  distributing and selling CRT Products, were also manufacturers, distributors, and sellers of FPD

28  Products. Defendants who participated in both the market for CRT Products and the market for

2

1    FPD Products will be specifically identified below.

2         4.    Because of Defendants' unlawful conduct, Plaintiff and other Class members paid

3    artificially inflated prices for CRT Products, and as a result, have suffered antitrust injury to their

4    business or property.

5                            **JURISDICTION AND VENUE**

6         5.    Plaintiff brings this Class Action pursuant to the California Cartwright Act,

7    codified under California Business and Professions Code, §§ 16720, et seq., and the California

8    Unfair Competition laws, codified under California Business and Professions Code, §§ 17200, et

9    seq.

10        6.    This Complaint is also filed under Section 1 of the Sherman Antitrust Act, 15

11   U.S.C. § 1, and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 & 26 to enjoin

12   Defendants, and their officers, agents, employees, or representatives from engaging in the

13   unlawful contract, combination, and conspiracy in restraint of trade or commerce of CRT or

14   products containing CRT, and to recover treble damages and costs of suit, including reasonable

15   attorney's fees, for the injuries suffered by Plaintiff and the Class members in their business and

16   property.

17        7.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332. The

18   matter in controversy exceeds $5,000,000 exclusive of interest and costs when the claims of

19   individual class members are aggregated, and is between citizens of different states. Venue is

20   proper in the United States District Court for the Northern District of California pursuant to 15

21   U.S.C. § 15 and § 22 and 28 U.S.C. § 1391, as the Defendants reside, transact business or are

22   found within this District, and/or a substantial part of the events giving rise to the Class

23   Members' claims arose in this District.

24        8.    This Court also has subject matter jurisdiction over the Plaintiff's Clayton Act and

25   Sherman Antitrust Act claims, 15 U.S.C. §§ 1 & 26, under 28 U.S.C. §§ 1331 & 1337. This

26   Court also has subject matter jurisdiction over Plaintiff's state law claims under 28 U.S.C. §

27   1367 because those claims arise from the same case or controversy as Plaintiff's federal claims.

28

                                      3

1      9.    This Court has in *personam* jurisdiction over each of the Defendants because,

2 *inter alia,* each Defendant: (a) transacted business in the United States; (b) directly or indirectly

3 sold and provided CRT Products throughout the United States; (c) had substantial aggregate

4 contacts with the United States as a whole; and/or (d) was engaged in an illegal price-fixing

5 conspiracy that was directed at, and had the intended effect of causing injury to, persons and

6 entities residing in, located in, or doing business throughout the United States, including in this

7 district. Alternatively, there is jurisdiction over foreign Defendants pursuant to Federal Rule of

8 Civil Procedure 4(k)(2).

9      10.    Plaintiff, Carmen Gonzalez, is an individual residing in the County of Santa

10 Clara. Plaintiff has indirectly purchased CRT Products from one or more of the Defendants

11 during the Class Period and was injured as a result of Defendants' illegal conduct. The price that

12 Plaintiff paid to Defendants or their co-conspirators was greater than it would have been absent

13 the conspiracy herein alleged. As a result of the alleged conspiracy, Plaintiff was injured by

14 reason of the antitrust violations alleged herein. Plaintiff asserts a claim on behalf of herself and

15 all indirect purchasers of CRT Products from one or more of the Defendants during the Class

16 Period.

17                               **DEFENDANTS**

18      **Chunghwa**

19      11.    Defendant Chunghwa Picture Tubes, Ltd. ("Chunghwa") is a Taiwanese company

20 with its principal place of business at 1127 Heping Road, Bade City, Taoyuan, Taiwan. It is a

21 partially owned subsidiary of Tatung Company, a consolidated consumer electronics and

22 information technology company based in Taiwan. Chunghwa's Board of Directors includes

23 representatives from Tatung Company. The Chairman of Chunghwa, Weishan Lin, is also the

24 Chairman and General Manager of Tatung Company. During the Class Period, Chunghwa

25 manufactured, sold, and distributed CRT Products to customers throughout the United States.

26 Chunghwa also manufactured, distributed and sold FPD Products in the United States during the

27 Class Period.

28

1      12.    Defendant Tatung Company of America, Inc. is a California corporation with its

2   principal place of business at 2850 El Presidio Street, Long Beach, California. Tatung Company

3   of America, Inc. is a wholly-owned and controlled subsidiary of Tatung Company. During the

4   Class Period, Tatung Company of America, Inc. manufactured, sold, and distributed CRT

5   Products to customers throughout the United States. Tatung Company of America, Inc. also

6   manufactured, distributed and sold FPD Products in the United States during the Class Period.

7      **LG**

8      13.    Defendant LG Electronics, Inc. ("LGE"), is a manufacturer of CRT Products with

9   its global headquarters located at LG Twin Towers 20, Yeouido-dong, Yeongdeungpo-gu, Seoul,

10  Korea 150-721. During the Class Period, LGE manufactured, sold and distributed CRT Products

11  to customers throughout the United States. LGE also manufactured, distributed and sold FPD

12  Products in the United States during the Class Period.

13      **Matsushita**

14      14.    Defendant Matsushita Electric Industrial Co., Ltd ("Matsushita") is a Japanese

15  company and has its global headquarters at 1006 Kadoma, Osaka 571-8501, Japan. Matsushita

16  is the parent company of Panasonic Corporation of North America, NC Company of America,

17  and Victor Company of Japan, Ltd. During the Class Period, Matsushita manufactured, sold and

18  distributed CRT Products to customers throughout the United States. Matsushita also

19  manufactured, distributed and sold FPD Products in the United States during the Class Period.

20      15.    Defendant Panasonic Corporation of North America ("Panasonic"), is a subsidiary

21  of Defendant Matsushita and oversees its North American business operations, including sales.

22  Defendant Panasonic has its global headquarters at I Panasonic Way, Secaucus, New Jersey,

23  07094. During the Class Period, Panasonic manufactured, sold and distributed CRT products to

24  customers throughout the United States. A substantial portion of the CRTs produced by MT

25  Picture Displays Co., Matsushita's subsidiary, went to Panasonic for Panasonic's production of

26  CRT Products. Panasonic also manufactured, distributed and sold FPD Products in the United

27  States during the Class Period.

28

CLASS ACTION COMPLAINT; JURY TRIAL DEMANDED

**Philips**

16.     Defendant Koninklijke Philips Electronics NV ("Koninklijke") has its global headquarters at Breitner Center Amstelplein 2, Amsterdam 1096 BC, Netherlands. During the Class Period, Koninklijke manufactured, sold and distributed CRT Products to customers throughout the United States. Koninklijke also manufactured, distributed and sold FPD Products in the United States during the Class Period.

17.     Defendant Philips Electronics North America Corporation ("Philips Electronics NA"), is a manufacturer of CRT Products. Defendant Philips Electronics NA has its global headquarters at 1251 Avenue of the Americas, New York, New York 10020. During the Class Period, Philips Electronics NA manufactured, sold and distributed CRT Products to customers throughout the United States. Philips Electronics NA also manufactured, distributed and sold FPD Products in the United States during the Class Period.

18.     Defendant LG Philips Display USA, Inc. ("LGPD"), is a manufacturer of CRT Products and is a subsidiary of Philips Electronics NA. Defendant LG Philips Display USA, Inc. has its global headquarters at 300W Morgan Rd, Ann Arbor, MI 48 108-9108, United States. During the Class Period, LGPD manufactured, sold and distributed CRT Products to customers throughout the United States.

**Samsung**

19.     Defendant Samsung Electronics Co., Ltd. ("Samsung Electronics") is a Korean company with its principal place of business at Samsung Main Building, 250, Taepyeongno 2-ga, Jung-gu, Seoul 100-742, Korea. It is the world's largest producer of CRT Products. During the Class Period, Samsung Electronics manufactured, sold, and distributed CRT Products to customers throughout the United States. Samsung Electronics also manufactured, distributed and sold FPD Products in the United States during the Class Period.

20.     Defendant Samsung SDI Co., Ltd. ("Samsung SDI"), formerly known as Samsung Display Device Co., has its global headquarters at Samsung Life Insurance Bldg 150, Seoul 100-716, Korea. During the Class Period, Samsung SDI manufactured, sold and distributed CRT Products to customers throughout the United States. Samsung SDI also manufactured,

6

1     distributed and sold FPD Products in the United States during the Class Period.

2           21.    Defendant Samsung Electronics America, Inc. ("Samsung America") is a New

3     York corporation with its principal place of business at 105 Challenger Road, Ridgefield Park,

4     New Jersey. Samsung America is a wholly-owned and controlled subsidiary of Defendant

5     Samsung Electronics Company, Ltd. During the Class Period, Samsung America sold and

6     distributed CRT Products manufactured by Samsung Electronics Company, Ltd. to customers

7     throughout the United States. Samsung America also sold and distributed FPD Products in the

8     United States during the Class Period.

9           22.    Defendants Samsung Electronics Company, Ltd., Samsung SD! Co., Ltd., and

10    Samsung America are referred to collectively herein as "Samsung."

11          **Toshiba**

12           23.    Defendant Toshiba Corporation is a Japanese company with its principal place of

13    business at I-I, Shibaura I -chome, Minato-ku, Tokyo 105-8001, Japan. During the Class Period,

14    Toshiba Corporation manufactured, sold, and distributed CRT Products to customers throughout

15    the United States. Toshiba Corporation also manufactured, distributed and sold FPD Products in

16    the United States during the Class Period.

17           24.    Defendant Toshiba America Electronics Components, Inc. is a California

18    corporation with its principal place of business at 19900 MacArthur Boulevard, Suite 400, Irvine,

19    California. Toshiba America Electronics Components, Inc. is a wholly-owned and controlled

20    subsidiary of Toshiba America, Inc., a holding company for Defendant Toshiba Corporation.

21    During the Class Period, Toshiba America Electronics Components, Inc. sold and distributed

22    CRT Products manufactured by Toshiba Corporation to customers throughout the United States.

23    Toshiba America Electronic Components also sold and distributed FPD Products manufactured

24    by Toshiba Corporation in the United States during the Class Period.

25           25.    Defendant Toshiba America Information Systems, Inc. is a California corporation

26    with its principal place of business at 9470 Irvine Blvd., Irvine, California. Toshiba America

27    Information Systems, Inc. is a wholly-owned and controlled subsidiary of Toshiba America, Inc.,

28    a holding company for Defendant Toshiba Corporation. During the class Period, Toshiba

7
CLASS ACTION COMPLAINT; JURY TRIAL DEMANDED

1   America Information Systems, Inc. sold and distributed CRT Products manufactured by Toshiba

2   Corporation to customers throughout the United States.  Toshiba America Information Systems

3   also sold and distributed FPD Products manufactured by Toshiba Corporation in the United

4   States during the Class Period.

5       26.     Defendants Toshiba Corporation, Toshiba America Electronics Components, Inc.,

6   and Toshiba America Information Systems, Inc. are referred to collectively herein as "Toshiba."

7       **Joint Ventures**

8       27.     Defendant MT Picture Display Company is a wholly-owned and controlled

9   subsidiary of Defendant Matsushita organized under the laws of Japan with its principal place of

10  business located at Rivage Shinagawa, I -S. Konan 4-chome, Minato-ku, Tokyo 108-0075,

11  Japan.  Prior to April 2007, MT Picture Display Company was a joint venture between

12  Matsushita Electric Industrial Co., Ltd. and Toshiba Corporation named Matsushita Toshiba

13  Picture Display Co. Ltd. This joint venture was created in 2003 and integrated the CRTs

14  operations of its parents.  During the Class Period, both MT Picture Display and its predecessor

15  Matsushita Toshiba Picture Display Co. Ltd. sold and distributed CRT Products to customers

16  throughout the United States.

17      28.     Defendants MT Picture Display Corporation of America (New York) and MT

18  Picture Display Corporation of America (Ohio) were subsidiaries of MT Picture Display

19  Company.  Both subsidiaries were incorporated in Maryland, with their principal place of

20  business located at 300 East Lombard Street, Baltimore, MD 21202.  During the Class Period,

21  MT Picture Display Corporation of America (New York) and MT Picture Display Corporation of

22  America (Ohio) sold and distributed CRT Products to customers throughout the United States.

23      29.     Defendant LP Displays (formerly known as LG Philips Display), a joint venture

24  between LG Electronics and Koninklijke Philips Electronics, is organized under the laws of

25  Hong Kong with its principal place of business located at Corporate Communications, 6th Floor,

26  ING Tower, 308 Des Voeux Road Central, Sheung Wan, Hong Kong.  During the Class Period,

27  LP Displays sold and distributed CRT Products to customers throughout the United States.

28

1    30.    Each defendant committed the acts alleged in this complaint through its officers,

2    directors, agents, employees, or representatives while they were actively engaged in the

3    management, direction, control, or transaction of the Defendant's business or affairs.

4    31.    Defendants' unlawful and intentional concerted actions have severely damaged

5    and will continue to damage Plaintiff and the members of the Class it seeks to represent.

6    **CO-CONSPIRATORS**

7    32.    As additional information may come to light, Plaintiff reserves the right to add

8    other Defendants as they become known to her.

9    33.    Various other individuals, partnerships, corporations, organizations, firms, and

10    associations not yet made Defendants in this Complaint (the "Co-Conspirators") and presently

11    unknown to Plaintiff, participated as co-conspirators in the violation alleged herein, and

12    performed acts and made statements in furtherance of the conspiracy.

13    34.    The true names and capacities, whether individual, corporate, associate,

14    representative, or otherwise of Defendants named herein as DOES 1 through 50 are unknown to

15    Plaintiff at this time, and are therefore sued by such fictitious names. Plaintiff will amend this

16    complaint to allege the true names and capacities of DOES 1 through 50 when they become

17    known to Plaintiff. Each of DOES 1 through 50 is in some manner legally responsible for the

18    violations of law alleged herein.

19    35.    The acts charged in this Complaint as having been done by Defendants and the

20    DOE Defendants were authorized, ordered, or done by their officers, agents, employees, or

21    representatives, while actively engaged in the management of the Defendants' businesses or

22    affairs.

23    **FACTUAL ALLEGATIONS**

24    **CRT Technology**

25    36.    CRT technology has been in use for more than 100 years. The basic cathode-

26    raytube consists of three elements: the envelope, the electron gun, and the phosphor screen.

27    37.    CRTs are manufactured in several standard sizes, including 17 inch, 19 inch, 27

28    inch and 32 inch. CRTs manufactured by Defendants are interchangeable with one another.

1

**Trends within the CRT Products Market and Increased Competition from FPD Products**

2

38.     The worldwide market for CRT Products is and has been large. In 1997, the worldwide CRTs market exceeded $24 billion in sales.

3

4

39.     At the beginning of the Class Period, CRTs were the dominant display technology worldwide. For example, in 1997, 99.3% of all computer monitors sold worldwide contained CRTs. In 2005, approximately 47 million CRT monitors were sold worldwide, and approximately 20.3% of these were sold in the United States.

5

6

7

8

40.     Although the value of all display materials shipped worldwide is projected to rise at an average annual growth rate of 12.8% by 2010, worldwide demand for CRT Products is declining overall because of the growing popularity of FPD Products which are being used in place of CRT Products.

9

10

11

12

(http://www.bccresearcyh.com/RepTemplate.cfm?reportID=442&RepDet=HLT&cat=smc&targe t=repdet...11/13/2007) CRT Products' share of the market declined precipitously in the United States where FPD Products achieved more rapid market penetration.

13

14

15

41.     FPD Products may be used to produce the same image as CRT Products but also have many important advantages over CRT Products. For example, FPD Products are less bulky, require less energy, are easier to read, and do not flicker.

16

17

18

42.     In 1995, recognizing the increasing significance of FPD technologies, Korean manufacturers Samsung and LG Electronics entered the FPD Product market, leading to a surge in FPD Product manufacturing capacity.

19

20

21

43.     The market share of CRT Products declined as other newer technologies emerged and were brought to market. By 1998, FPD Products had already achieved 32% of the U.S. market for CRT Products. Penetration by FPD Products is projected to reach 96% by 2009. FPD Products' global penetration has not been as dramatic as it was in the United States due to the continued popularity of lower-priced CRT Products in China, India and South America.

22

23

24

25

26

44.     CRT TVs currently account for only a minority share of television set revenues in North America (37.3%), Japan (9.5%) and Europe (31.0%).

27

28

10

CLASS ACTION COMPLAINT; JURY TRIAL DEMANDED

1    45.    During the Class Period, while demand for CRT Products continued to fall in the
2  United States, Defendants' conspiracy was effective in moderating the normal downward
3  pressures on prices for CRT Products caused by the entry of the new generation of competing
4  technologies. Indeed, during the Class Period, there were not only periods of unnatural and
5  sustained price stability, but there were also inexplicable increases in the prices of CRTs, despite
6  declining demand due to approaching obsolescence of CRTs caused by the emergence of a new,
7  superior, substitutable technology

8    46. These periods of price stability and price increases for CRTs are fundamentally
9  inconsistent with a competitive market for a product where demand is rapidly decreasing because
10  of the introduction of new superior technologies.

11    **Structure of the CRT Product Industry**

12    47.    The CRT Product industry is characterized by a number of structural features that
13  facilitate collusion, including market concentration, the consolidation of manufacturers, multiple
14  interrelated business relationships, significant barriers to entry, and interchangeability of
15  products.

16    48.    Defendant Samsung SDI has the largest market share of any CRT Products
17  manufacturer at this point in time. In 2000, Defendant Samsung SDI had 18% of the global
18  CRTs market. In 2002, Samsung SDI had 21.8% of the global market for CRT monitors. In
19  2004, Samsung SDI had a 30% share of the global CRTs market.

20    49.    Defendant LP Displays (formerly LG Philips Displays) has the second largest
21  share of the CRT market. In 2004, LG Philips Displays held 27% of the global market for CRT.

22    50.    Defendant MT Picture Display (formerly Matsushita Toshiba Display Co.) is also
23  a major player in the CRTs market. In 2004, Matsushita Toshiba Picture Display Co. held 9% of
24  the global market for CRTs.

25    51.    Defendant Chunghwa Picture Tubes held 21.7% of the global CRT market in
26  1999.

27    52.    In 2004, Defendants Samsung SDI, LP Displays, MT Picture Display, and
28  Chunghwa Picture Tubes maintained a collective 78% of the global CRT market. The market for

11

1    CRT Products is subject to high manufacturing and technological barriers to entry. Efficient
2    fabrication plants are large and costly and require years of research, development and
3    construction. Technological advances have caused Defendants to undertake significant research
4    and development expenses.

5         53.    The CRT Products market has also been subject to substantial consolidation and
6    multiple interrelated business relationships during the Class Period. Matsushita Electric
7    Industrial Co. Ltd. and Toshiba Corporation combined their efforts by forming Defendant MT
8    Picture Display Company. At the time of the formation of MT Picture Display, Matsushita and
9    Toshiba had been the fourth and sixth largest CRT manufacturers in the world. This joint venture
10   combined the entire CRT operations of both parent companies. MT Picture Display Company
11   specialized in the manufacture of CRTs above 30 inches, supplying some 950,000 units annually
12   to the North American market.

13        54.    In November 2000, Defendants LGE and Koninklijke Philips Electronics agreed
14   to enter a 50/50 joint venture that merged their CRT operations. The resulting joint venture,
15   originally named LG Philips Displays, and renamed LP Displays in 2007, entered the market
16   with a 25% share, making it the second largest CRT manufacturer only behind Samsung SDI at
17   the time.

18        55.    In 2005, Samsung SDI and LG Philips Displays entered into an agreement to share
19   parts with respect to CRTs in an effort to boost their combined market share.

20        56.    Defendants sell their CRT Products through various channels, including to
21   manufacturers of electronic products and devices, and to resellers of CRT Products, and
22   incorporate CRTs into their own manufactured products, which are then sold directly to
23   consumers.

24       **International Antitrust Investigations**

25        57.    Competition authorities in the United States, Europe, Japan and South Korea
26   recently engaged in coordinated actions, including raids, targeting the unlawful CRT Products
27   cartel alleged in this Complaint. On November 9, 2007, the Reuters news agency reported:

28

1    Antitrust authorities in Europe and Asia raided a Matsushita Electric Industrial
     Co. Ltd. unit and other cathode ray tube markers on suspicion of price fixing,
2    weighing on the shares of the Panasonic maker.

3    Matsushita confirmed Japan's Fair Trade Commission (FTC) had begun a probe
     of its cathode ray tube unit. MT Picture Display Co. Ltd., while Samsung SDI Co.
4    Ltd. said South Korea's FTC had started an investigation into its CRT business.

5    (www.reuters.com/articlefmergersNews1idU5L089085072007 1109).

6        58.    On November 9, 2007, the European Commission confirmed in Brussels that "on

7    November 8 Commission officials carried out unannounced inspections at the premises of

8    manufacturers of cathode ray tubes." The European Commission's announcement continued

9    stating: "The Commission has reason to believe that the companies concerned may have violated

10   EC Treaty rules on cartels and restrictive business practices."

11       59.    On November 12, 2007, Chunghwa Picture Tubes, Ltd. confirmed that it had

12   received a subpoena from a California district court relating to CRTs. A federal grand jury

13   operating under the auspices of the United States Department of Justice, Antitrust Division

14   ("DOJ") through its San Francisco office issued the subpoena.

15       60.    On November 21, 2007, Koninklijke Philips Electronics, NV reported that it and

16   its joint venture with LG Electronics, LP Displays, are also targets of the coordinated

17   investigation into collusive practices and other antitrust violations in the CRTs market.

18       61.    The Defendants include known recidivist antitrust violators. Samsung, for

19   example, was fined $300 million by the DOJ in October 2005 for participating in a conspiracy to

20   fix prices for Dynamic Random Access Memory. It is also under investigation by the DOJ (along

21   with some of the other Defendants, including Toshiba) for fixing prices of Static Random

22   Access Memory. Samsung and Toshiba are also being investigated for collusion among

23   manufacturers of NAND flash memory.

24       62.    Several Defendants, including Samsung and a joint venture between LG

25   Electronics and Koninklijke Philips Electronics, are targets of a coordinated investigation by the

26   DOJ and antitrust authorities in Europe, Japan and South Korea in connection with

27   anticompetitive conduct in the market for LCD Products. Because LCD Products and CRT

28

1    Products are used in the same primary applications, collusion with respect to CRT Product prices

2    would bolster these same Defendants' LCD pricing cartel. Keeping CRT prices artificially

3    inflated would both increase profits on remaining CRT sales while protecting LCD prices.

4                                    **CLASS ACTION ALLEGATIONS**

5         63.    Plaintiff brings this action on behalf of itself and all others similarly situated (the

6    "Class") pursuant to Federal Rules of Civil Procedure 23(a) and23(b)(3). The Class is defined as

7    follows:

8              All persons and entities residing in the United States who, from January 1,
               1995 through the present, purchased CRT Products in the United States
9              indirectly from the Defendants. Specifically excluded from this Class are
               the Defendants; the officers, directors or employees of any Defendant; any
10             entity in which any Defendant has a controlling interest; and any affiliate,
               legal representative, heir or assign of any Defendant. Also excluded are all
11             governmental entities, and any judicial officer presiding over this action.

     64.    Plaintiff does not know the exact size of the Class, since such information is in the
12
     exclusive control of the Defendants. Due to the nature of the trade and commerce involved,
13
     however, Plaintiff believes that the Class includes thousands of CRT Products purchasers and is
14
     so numerous and geographically dispersed throughout the United States as to render joiner of all
15
     Class members impracticable.
16
          65.    There are questions of law and fact common to the Class. These common
17
     questions relate to the existence of the conspiracy alleged, and to the type and common pattern of
18
     injury sustained as a result thereof. The questions include but are not limited to:
19
              a.    Whether Defendants and their co-conspirators engaged in a combination
20
     and conspiracy among themselves to fix, raise, maintain or stabilize prices of CRT Products sold
21
     in the United States;
22
              b.    The identity of the participants in the conspiracy;
23
              c.    The duration of the conspiracy alleged in this Complaint and the nature and
24
     character of the acts performed by Defendants and their co-conspirators in furtherance of the
25
     conspiracy;
26
              d.    Whether Defendants undertook actions to conceal the unlawful conspiracy,
27
     contract or combination described herein;
28

                                                   14

1        e.     Whether the conduct of Defendants and their co-conspirators, as alleged in

2  this Complaint, caused injury to the business and property of Plaintiff and other members of the

3  Class;

4        f.     The effect of Defendants' conspiracy on the prices of CRT Products sold in

5  the United States during the Class Period; and

6        g.     The appropriate measure of damages sustained by Plaintiff and other

7  members of the Class.

8      66.     Plaintiff is a member of the Class. Plaintiff's claims are typical of the claims of

9  other Class members, and Plaintiff will fairly and adequately protect the interests of the members

10  of the Class.  Plaintiff is an indirect purchaser of CRT Products from one or more of the

11  Defendants. Plaintiff's interests are aligned with, and not antagonistic to, those of the other

12  members of the Class.  In addition, Plaintiff is represented by competent counsel experienced in

13  the prosecution of antitrust and class action litigation.

14      67.     The prosecution of separate actions by individual members of the Class would

15  create a risk of inconsistent or varying adjudications, establishing incompatible standards of

16  conduct for Defendants.

17      68.     Defendants have acted, and refused to act, on grounds generally applicable to the

18  Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

19      69.     The questions of law and fact common to the members of the Class predominate

20  over any questions affecting only individual members, including legaland factual issues relating

21  to liability and damages.

22      70.     A class action is superior to other available methods for the fair and efficient

23  adjudication of this controversy. The Class is readily definable and is one for which records exist

24  in the files of Defendants and their co-conspirators. Prosecution as a class action will eliminate

25  the possibility of repetitious litigation. Treatment as a class action will permit a large number of

26  similarly situated persons to adjudicate their common claims in a single forum simultaneously,

27  efficiently and without duplication of effort and expense that numerous individual actions would

28  engender. Class treatment will also permit the adjudication of relatively small claims by many

1   class members who otherwise could not afford to litigate an antitrust claim such as is asserted in

2   this Complaint. This class action presents no difficulties of management that would preclude its

3   maintenance as a class action.

4   **TRADE AND COMMERCE**

5       71.    During the relevant time period, Defendants collectively controlled asignificant

6   share of the market for CRT Products, both globally and in the United States.

7       72.    Each of the Defendants and their co-conspirators used instrumentalities of

8   interstate and/or foreign commerce to sell and market CRT Products.

9       73.    The business activities of the Defendants substantially affected interstate trade and

10   commerce.

11   **FRAUDULENT CONCEALMENT**

12       74.    Throughout and beyond the conspiracy, Defendants and their co-conspirators

13   affirmatively and actively concealed their unlawful conduct from Plaintiff. Defendants and their

14   co-conspirators conducted their conspiracy in secret and kept it mostly within the confines of

15   their higher-level executives. Defendants and their co-conspirators publicly provided pre-textual

16   and false justifications regarding their price increases. Defendants and their co-conspirators

17   conducted their conspiracy in secret, concealed the true nature of their unlawful conduct and acts

18   in furtherance thereof, and actively concealed their activities through various other means and

19   methods to avoid detection. Plaintiff did not discover, and could not have discovered through the

20   exercise of reasonable diligence, that Defendants and their co-conspirators were violating the

21   antitrust laws as alleged herein until November 9, 2007, when it was first publicly reported that

22   manufacturers of CRT Products were being investigated by antitrust authorities in Europe, Japan

23   and South Korea for conspiring to fix the prices of CRT Products before this class action

24   litigation was commenced.

25       75.    As a result of the active concealment of the conspiracy by Defendants and their

26   co-conspirators entered into a continuing contract, combination or conspiracy to unreasonably

27   restrain trade and commerce in violation of Section I of the Sherman Act, 15 U.S.C. § 1,

28   defendants were artificially reducing or eliminating competition in the United States.

1      76.     In particular, Defendants have combined and conspired to raise, fix, maintain or

2    stabilize the prices of CRT Products sold in the United States.

3      77.     As a result of Defendants' unlawful conduct, CRT Products prices were raised,

4    fixed, maintained and stabilized in the United States.

5      78.     The contract, combination or conspiracy among Defendants consisted of a

6    continuing agreement, understanding and concerted action among Defendants and their co-

7    conspirators.

8      79.     For purposes of formulating and effectuating their contract, combination or

9    conspiracy, defendants and their co-conspirators did those things they contracted, combined or

10   conspired to do, including:

11          a.     Participating in meetings and conversations to discuss the prices of CRT

12      Products;

13          b.     Agreeing to manipulate prices and supply of CRT Products in a manner

14      that deprived direct purchasers of free and open competition;

15          c.     Issuing price announcements and price quotations in accordance with the

16      agreements reached;

17          d.     Selling CRT Products to customers in the United States at non-competitive

18      prices.

19     80.     As a result of Defendants' unlawful conduct, Plaintiff and the other members of

20   the Class have been injured in their business and property in that they have paid more for CRT

21   Products than they otherwise would have paid in the absence of Defendants' unlawful conduct.

22                            **FIRST CAUSE OF ACTION**
                **(Violation of Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1)**

23

24     81.     Plaintiff, on behalf of herself and all others similarly situated, realleges and

25   incorporates, as if fully alleged herein, each of the allegations contained in the preceding

26   paragraphs of this Complaint, and further alleges against Defendants as follows.

27     82.     Beginning at least as early as January 1, 1995 and continuing through the present,

28   the exact dates being unknown to Plaintiff, Defendants and various co-conspirators entered into

                                        17

1    and engaged in a continuing agreement, contract, combination, and conspiracy to fix, raise,

2    maintain, or stabilize the price for CRT Products in unreasonable restraint of trade and

3    commerce in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

4        83.    Defendants, through their officers, directors and employees, entered into the

5    contract, combination, trust and conspiracy among themselves and their co-conspirators by,

6    among other things:

7            a.    Participating in communications, including discussions of the prices of

8        CRT Products in the United States;

9            b.    Agreeing, during those communications, to charge prices at specified levels

10       and otherwise to increase, stabilize and maintain prices of CRT Products sold in the

11       United States; and

12           c.    Selling CRT Products to various customers in the United States at

13       artificially inflated prices.

14       84.    For the purpose of forming and implementing the alleged combinations,

15   agreements, understandings and concert of action, Defendants and their co-conspirators did those

16   things they conspired to do, including but not limited to the acts alleged above, including actions

17   to fix, raise, maintain and stabilize the price of CRT Products.

18       85.    Defendants have participated in one or more overt acts in furtherance of the

19   conspiracy alleged above, and have participated in the conspiratorial activities described above.

20       86.    The combination and conspiracy alleged herein has had the following effects,

21   among others:

22           a.    Price competition in the sale of CRT Products has been restrained,

23       suppressed and/or eliminated throughout the United States;

24           b.    Prices for CRT Products sold by Defendants and their co-conspirators have

25       been fixed, raised, maintained and stabilized at artificially high, noncompetitive levels

26       throughout the United States; and

27           c.    Plaintiff and members of the Class have been deprived of the benefits of

28       free and open competition.

_____18_____

1    87.    As a direct and proximate result of the Defendants' unlawful conduct, Plaintiff and

2    the members of the Class have been injured in their business and property in that they paid more

3    for CRT Products than they otherwise would have paid in the absence of Defendants' unlawful

4    conduct.

## SECOND CAUSE OF ACTION
### (Violation of the California Cartwright Act)

5

6    88.    Plaintiff, on behalf of herself and all others similarly situated, realleges and

7    incorporates, as if fully alleged herein, each of the allegations contained in the preceding

8    paragraphs of this Complaint, and further alleges against Defendants as follows.

9    89.    Beginning at a time presently unknown to Plaintiff, but at least as early as January

10   1, 1995 and continuing until the present, the exact date being unknown to Plaintiff, Defendants

11   engaged in a continuing agreement, understanding and conspiracy in restraint of trade to

12   artificially fix, raise, maintain and stabilize the price of CRT in violation of § 16720 *et seq.* of the

13   California Business and Professions Code.  Defendants, and each of them, have acted in

14   violation of Section 16720 to fix, raise, maintain and stabilize the prices of, and allocate markets

15   for, CRT at supra-competitive levels.

16   90.    Each of the Defendants named herein, directly or indirectly and through affiliates,

17   dominated, controlled, manufactured, sold and/or distributed CRT throughout the United States,

18   including California.

19   91.    During the Class Period, Defendants have engaged in illegal, anticompetitive

20   practices including those described herein and/or combinations of capital, skill, and acts with

21   others with the intent, purpose and effect of creating and carrying out restrictions in trade and

22   commerce; increasing the price and limiting and reducing the supply of CRT; and restraining

23   trade and preventing competition in the relevant markets of CRT products , thereby enabling

24   Defendants to perpetuate their monopoly.

25   92.    For the purpose of forming and effectuating the unlawful trust, Defendants and

26   their Co-Conspirators have done those things which they combined and conspired to do,

27   including but in no way limited to the acts, practices and course of conduct set forth above and

28   the following:

19

a.   to fix, raise, maintain and stabilize the price of CRT;

b.   to allocate markets for CRT amongst themselves; and

c.   to allocate amongst themselves the production of CRT.

93.    The combination and conspiracy alleged herein has had, inter alia, the following effects:

a.   price competition in the sale of CRT has been restrained, suppressed, and/or eliminated in the State of California and throughout the United States;

b.   prices for CRT sold by Defendants and their Co-Conspirators have been fixed, raised, maintained and stabilized at artificially high, non-competitive levels in the State of California and throughout the United States;

c.   those who indirectly purchased CRT have been deprived of the benefit of free and open competition.

94.    Plaintiff and the Class members paid supra-competitive and artificially inflated prices for CRT and products containing CRT.

95.    As a direct and proximate result of Defendants' unlawful and anticompetitive practices, Plaintiff and the Class members have been injured in their business and property in that they paid more for CRT than they otherwise would have paid in the absence of Defendants' unlawful conduct. As a result of Defendants' and their co-conspirators' violation of Section 16720 of the California Business and Professions Code, Plaintiff seeks injunctive relief, treble damages and costs of suit, including reasonable attorneys' fees, pursuant to Section 16750(a) of the California Business and Professions Code.

## THIRD CAUSE OF ACTION
### (Unfair Competition)

96.    Plaintiff, on behalf of herself and all others similarly situated, realleges and incorporates, as if fully alleged herein, each of the allegations contained in the preceding paragraphs of this Complaint, and further alleges against Defendants as follows.

97.    Beginning at least as early as January 1, 1995 and continuing until at least the present, the exact date being unknown to Plaintiff, Defendants and their Co-Conspirators committed and continue to commit acts of unfair competition, as defined by the California Business and Professions Code §§ 17200, et seq. by engaging in the acts and practices specified above.

1       98.     Defendants' conduct alleged herein is unfair within the meaning of Business and

2 Professions Code §§ 17200, et seq., as it offends an established public policy against restraint of

3 trade and preventing competition and because it is immoral, unethical, oppressive, unscrupulous

4 or substantially injurious to consumers. Defendants' conduct is unlawful within the meaning of

5 those sections, as it violates the provisions of the California Cartwright Act, (Cal. Bus. & Prof.

6 Code §§ 16720, et seq.), the Sherman Antitrust Act (15 U.S.C. §§ 1, et seq.) and the Clayton Act,

7 codified under Title 15 of the United States Code. Finally, Defendants' conduct is fraudulent

8 within the meaning of Business and Professions Code §§ 17200, et seq., as it is likely to mislead

9 the general public.

10       99.     The illegal conduct alleged herein is continuing and there is no indication that

11 Defendants will not continue such activity in the future.

12       100.     As a direct and proximate result of Defendants' unlawful, unfair and fraudulent

13 acts and practices, including combinations and contracts to restrain trade and monopolize the

14 relevant markets, Defendants, and each of them, as described above, have caused and continue to

15 cause Plaintiff and the Class members to pay supra-competitive and artificially inflated prices for

16 CRT, and the Plaintiff and consumers throughout California, have suffered an ascertainable loss

17 of money and/or property and have been deprived of the benefits of free and fair competition on

18 the merits.

19       101.     As a direct and proximate result of Defendants' unfair, unlawful, and/or

20 fraudulent acts and practices, including combinations and contracts to restrain trade and

21 monopolize the relevant markets, Defendants received and continue to hold moneys that were

22 wrongfully taken from and which belong to Plaintiff and the Class.

23       102.     Pursuant to California Business and Professions Code, §§ 17200, et seq., Plaintiff

24 demands restitution and disgorgement of all profits from the Defendants of all monies illegally

25 acquired by them as a result of the unfair, unlawful and fraudulent conduct alleged herein, and

26 appropriate injunctive relief.

27

28

CLASS ACTION COMPLAINT; JURY TRIAL DEMANDED

1

2

### FOURTH CAUSE OF ACTION
#### (Unjust Enrichment and Disgorgement of Profits)

3

4

5

103.    Plaintiff, on behalf of herself and all others similarly situated, realleges and incorporates, as if fully alleged herein, each of the allegations contained in the preceding paragraphs of this Complaint, and further alleges against Defendants as follows.

6

7

8

9

104.    Defendants benefited from their unlawful acts through the overpayment for CRT and products containing CRT by Plaintiff and Class members. It would be inequitable and unconscionable for Defendants to be permitted to retain the benefits of these overpayments, which were conferred by Plaintiff and Class members and retained by Defendants.

10

11

105.    Plaintiff and the Class members are entitled to have returned to each of them the amount of such overpayments as damages or restitution.

12

### FIFTH CAUSE OF ACTION
#### (Injunctive Relief)

13

14

15

106.    Plaintiff, on behalf of herself and all others similarly situated, realleges and incorporates, as if fully alleged herein, each of the allegations contained in the preceding paragraphs of this Complaint, and further alleges against Defendants as follows.

16

17

18

19

107.    Beginning by at least January 1, 1995 and continuing until the present, Defendants entered into a continuing agreement, understanding, and conspiracy in restraint of trade to artificially raise, fix, maintain, and/or stabilize prices for CRT in California and the United States.

20

21

108.    Defendants' conduct in restraint of trade had the intent, and effect, of maintaining artificially high, and anticompetitive prices of CRT and/or products containing CRT.

22

23

109.    Defendants and Co-Conspirators did those things they colluded and conspired to do, including, but not limited to, the allegations set forth herein.

24

25

26

27

110.    Defendants' illegal combination and conspiracy as alleged herein had the effect of (i) restraining, suppressing and/or eliminating competition; (ii) artificially fixing, raising, maintaining, and/or stabilizing prices at high, supra-competitive levels; and (iii) depriving consumers of free and fair competition on the merits.

28

1        111.    It is in the best interest of the public to enjoin, pursuant to Section 16 of the

2  Clayton Act, 15 U.S.C. § 26, Defendants and their officers, agents, employees, or representatives

3  from engaging in the unlawful contract, combination, and conspiracy in restraint of trade or

4  commerce of CRT.

5        112.    Plaintiff and the Class have and will continue to be injured by Defendants'

6  ongoing conduct in violation of the antitrust laws of the United States and in violation of the

7  antitrust, deceptive and unfair trade practices, and consumer protection statutes of California, in

8  the absence of injunctive relief.

9                           **PRAYER FOR RELIEF**

10  WHEREFORE, Plaintiff prays:

11        1.    That the Court certify this action to proceed as a class action pursuant to Rule 23

12  of the Federal Rules of Civil Procedure and direct that reasonable notice be given to members of

13  the Class;

14        2.    That the Court adjudge and decree that Defendants and each of them have

15  engaged in an unlawful contract, combination, and conspiracy in restraint of trade or commerce

16  in violation of the California Cartwright Act, the Sherman Antitrust Act, and the Clayton Act;

17  and that the Court award Plaintiff and members of the Class: (i) treble damages in an amount to

18  be proved at trial as a result of the wrongful conduct alleged, plus interest, costs, and reasonable

19  attorney's fees pursuant to California Business and Professions Code § 16750, and Section 4 of

20  the Clayton Act, 15 U.S.C. § 15; and (iii) all other damages available under the laws of

21  California;

22        3.    That the Court adjudge and decree that the Defendants and each of them have

23  been unjustly enriched and that the Court return to Plaintiff and the Class the amount of such

24  overpayments as damages or restitution;

25        4.    That the Court adjudge and decree that the Defendants and each of them have

26  engaged in unfair, unlawful and/or fraudulent business acts and/or practices in violation of

27  California Business and Professions Code §§ 17200, et seq., and order restitution and

28  disgorgement of all moneys wrongfully obtained;

CLASS ACTION COMPLAINT; JURY TRIAL DEMANDED

| | |
|---|---|
| 1 | 5. That Plaintiff and the Class recover damages, as provided by federal and |
| 2 | California antitrust laws, and that a joint and several judgment in favor of Plaintiff and the Class |
| 3 | be entered against the Defendants in an amount to be trebled in accordance with such laws; |
| 4 | 6. That the Court award Plaintiff a permanent injunction under Section 16 of the |
| 5 | Clayton Act, 15 U.S.C. § 26, and under California Business and Professions Code §§ 16750 and |
| 6 | 17203, enjoining Defendants, and their officers, agents, employees, or representatives from |
| 7 | engaging in this unlawful contract, combination, and conspiracy in restraint of trade or |
| 8 | commerce; and |
| 9 | 7. That Plaintiff and members of the Class be awarded pre- and post-judgment |
| 10 | interest, and that interest be awarded at the highest legal rate from and after the date of service |
| 11 | of the initial complaint in this action; |
| 12 | 8. That Plaintiff and members of the Class recover their costs of this suit, including |
| 13 | reasonable attorneys' fees as provided by law; and |
| 14 | 9. That Plaintiff and members of the Class have such other, further, and different |
| 15 | relief as the case may require and the Court may deem just and proper under the circumstances. |

### JURY TRIAL DEMAND

Plaintiff hereby demands a jury trial on all claims for which she is entitled to a jury trial, as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

Dated: February 22, 2008

McMANIS FAULKNER & MORGAN

JAMES McMANIS
MARWA ELZANKALY

Attorneys for Plaintiff,
Carmen Gonzalez

---

24