1248JW

**Time of Request:** Thursday, March 15, 2007  14:06:33 EST
**Client ID/Project Name:** Indirect Plastic Additives
**Number of Lines:** 1194
**Job Number:**    1862:17570286

Research Information

**Service:**   LEXSEE(R) Feature
**Print Request:** Current Document: 1
**Source:** Get by LEXSEE(R)
**Search Terms:** 108 w. va. l. rev. 395

**Send to:**  KARON, DANIEL
        GOLDMAN SCARLATO & KARON
        101 W ELM ST STE 360
        CONSHOHOCKEN, PA 19428-2075

LEXSEE 108 W. VA. L. REV. 395


Copyright (c) 2005 West Virginia Law Review
West Virginia Law Review

Winter, 2005

*108 W. Va. L. Rev. 395*

**LENGTH:** 11895 words

ARTICLE: UNDOING THE OTHERWISE PERFECT CRIME-APPLYING UNJUST ENRICHMENT TO CONSUMER PRICE-FIXING CLAIMS

**NAME:** Daniel R. Karon *

**BIO:**

* B.A. (1988), Indiana University-Bloomington; J.D. (1991), The Ohio State University College of Law. The author is an Adjunct Professor of Law at Cleveland-Marshall College of Law, Cleveland State University. He is a member of Loyola University Chicago School of Law's Institute for Consumer Antitrust Studies' U.S. Advisory Board and co-chairs the ABA's Class Action and Derivatives Section's Antitrust Subcommittee. He is a class-action trial attorney specializing in antitrust, consumer-fraud, and securities-fraud litigation and manages Goldman Scarlato & Karon, P.C.'s Cleveland, Ohio office.

**SUMMARY:**
 ...  Indeed, many companies prefer fixing prices and getting caught to obeying the antitrust laws. ...  While federal law allows only price-fixed products' direct purchasers - not consumers - to pursue damage claims (namely, Clayton Act claims for Sherman Act violations), consumers (also known as "indirect purchasers" ) can recover for price-fixing violations under certain states' antitrust or consumer-fraud statutes. ... " With respect to the defendants' "claim that [the indirect-purchaser] Plaintiffs' claims were deficient because unjust enrichment claims required that Plaintiffs confer a benefit on Defendants," the district court explained that the "Defendants' argument failed because a benefit conferred need not mirror the actual loss of the plaintiff," and that "the critical inquiry was whether the plaintiff's detriment and the defendant's benefit were related to, and flowed from, the challenged conduct. ...  But In re Cardizem CD Antitrust Litigation contains the most in-depth discussion of "direct relationship" and "direct benefit" and their relation, if any, to consumer unjust-enrichment claims. ...  The decisions Defendants rely upon do not support the argument that either privity or a directly conferred benefit is an essential element of an unjust enrichment claim under the state common laws at issue here. ...

**TEXT:**
 [*396]

## I. INTRODUCTION

Commodity-product manufacturers fix prices everyday. Indeed, many companies prefer fixing prices and getting caught to obeying the antitrust laws. n1 Consumers who purchase price-fixed products or products into which price-fixed ingredients are incorporated drive price-fixing schemes and allow them to thrive. After all, without consumers' end-use purchases, no ultimate demand exists for price fixers' products, and price-fixing schemes become

meaningless. In this manner, price fixers pass their illegal price increases down the distribution chain to consumers who absorb most, if not all, of their illegal overcharges when price fixing occurs. n2

While federal law allows only price-fixed products' direct purchasers n3 - not consumers - to pursue damage claims n4 (namely, Clayton Act claims for Sherman Act violations), consumers (also known as "indirect purchasers" n5) can  [*397]  recover for price-fixing violations under certain states' antitrust or consumer-fraud statutes. Yet despite a trend toward permitting recovery to consumers under state consumer-protection laws, some state courts have refused to embrace these theories, thus largely denying recovery to price fixers' ultimate victims. n6

But an effective remedy exists in states not explicitly embracing antitrust or consumer-fraud claims against price fixers. Unjust enrichment is an underutilized and often overlooked theory that consumers can invoke when victimized by price fixers. When unjust enrichment is pleaded, price fixers invariably argue its inapplicability, believing it requires a "direct relationship" between the parties, or that the consumers pay a "direct benefit" to the price fixers. n7 And although debate rages as to whether, in a consumer price-fixing setting, unjust enrichment requires these "directness" elements, unjust enrichment's applicability to consumer price-fixing claims has never been fully examined.

This article will demonstrate that neither a direct relationship nor direct benefit is required to sustain an unjust-enrichment claim for price fixing and will argue that unjust enrichment is an entirely suitable theory for consumers to invoke. It will first describe why federal price-fixing claims are reserved for price-fixed products' direct purchasers under federal antitrust law and how consumers' price-fixing remedies exist in state courts under certain states' antitrust laws. n8 Next, it will explain unjust enrichment's historical application, anticipated suitability to consumer price-fixing claims, and nationwide similarity. n9 It will then describe price fixers' "directness" arguments and will argue that no state's unjust-enrichment law requires these additional elements to sustain a claim. n10 Finally, it will conclude that unjust enrichment is, and always has been, a fitting theory of recovery, especially in states that resist applying their antitrust or consumer-fraud laws to consumer price-fixing claims. n11  [*398]

II. Federal Law Protects Direct Purchasers and Permits States to Protect Indirect Purchasers

A. Hanover Shoe, Illinois Brick, and ARC America

The Sherman Act n12 prohibits agreements among competitors to restrain trade n13 - including agreements to fix prices n14 and allocate markets n15 - and the Clayton Act gives U.S. district courts jurisdiction to "prevent and restrain violations of [the Sherman Act]. . . ." n16 As originally drafted, the Clayton Act permitted both direct and indirect purchasers to pursue Clayton Act claims for Sherman Act violations, n17 but indirect purchasers' antitrust standing began to transform in 1968, when the U.S. Supreme Court decided Hanover Shoe, Inc. v. United Shoe Machinery Corp. n18

Hanover Shoe involved a shoe manufacturer's claim that it had paid illegally high prices for shoe machinery. n19 Hanover alleged a Clayton Act claim against United for "monopolizing the shoe machinery industry in violation of § 2 of the Sherman Act." n20 Because Hanover had passed its alleged antitrust injury on to its customers, United Shoe argued that Hanover lacked antitrust injury and hence antitrust standing:

United claims . . . that Hanover suffered no legally cognizable injury, contending that the illegal overcharge during the damage

 [*399]

period was reflected in the price charged for shoes sold by Hanover to its customers and that Hanover, if it had bought machines at lower prices, would have charged less and made no more profit than it made by leasing. n21

But the Supreme Court ruled that Hanover had suffered antitrust injury and that United Shoe wasn't permitted to

assert Hanover's overcharge pass-on as a defense to Hanover's monopolization claim: "Our conclusion is that Hanover proved injury and the amount of its damages for the purposes of its treble-damage suit when it proved that United . . . overcharged it during the damage period and showed the amount of the overcharge; United was not entitled to assert a passing-on defense." n22

Nine years later, the Court considered Hanover Shoe's opposite circumstances when it decided Illinois Brick Co. v. Illinois. n23 In Illinois Brick, the State of Illinois and other Illinois governmental entities sought recovery from concrete-block manufacturers concerning a "combination and conspiracy to fix the prices of concrete block in violation of § 1 of the Sherman Act." n24 Since the State of Illinois and the other entities had purchased concrete blocks indirectly, the only way the antitrust violation alleged could have injured them was if all or part of the overcharge had been passed on by the masonry and general contractors to them, rather than being absorbed at the first two distribution levels. n25

To Illinois's disappointment, the Court held that, because it had decided in Hanover Shoe that antitrust violators couldn't use a pass-on theory defensively, it would apply its pass-on rule equally to indirect purchasers and preclude them from arguing they had suffered antitrust injury caused by overcharges passed on to them by direct purchasers:

First, we conclude that whatever rule is to be adopted regarding pass-on in antitrust damages actions, it must apply equally to plaintiffs and defendants. Because Hanover Shoe would bar petitioners from using respondents' pass-on theory as a defense to a treble-damages suit by the direct purchasers (the masonry contractors), we are faced with the choice of overruling (or narrowly limiting) Hanover Shoe or of applying it to bar respondents' attempt to use this pass-on theory offensively. Second, we decline to abandon the construction given § 4 in Hanover Shoe - that the overcharged direct purchaser, and not others in the chain of

   [*400]

manufacture or distribution, is the party "injured in his business or property" within the meaning of the section. . . . n26

The Court provided three bases for holding that only direct purchasers could pursue Clayton Act claims for Sherman Act violations. First, it believed "allowing offensive but not defensive use of pass-on would create a serious risk of multiple liability for defendants." n27 Next, it thought "the evidentiary complexities and uncertainties involved in the defensive use of pass-on against a direct purchaser were multiplied in the offensive use of pass-on by a plaintiff several steps removed from the defendant in the chain of distribution." n28 And finally, it assumed that "the antitrust laws would be more effectively enforced by concentrating the full recovery for the overcharge in the direct purchasers rather than by allowing every plaintiff potentially affected by the overcharge to sue only for the amount it could show was absorbed by it." n29

But the Supreme Court's concerns proved unfounded in the years following Illinois Brick. Instead, courts have noted the "absence of cases in which . . . court[s have been] faced with the impossible task of apportioning damages." n30 Multiple courts have likewise observed that "complexity is not a foreign concept in the world of antitrust" n31 and that "because a defendant guilty of an antitrust violation would face paying damages to indirect purchasers under state antitrust laws as well as paying any damages awarded to direct purchasers under federal antitrust laws . . . both direct and indirect purchasers . . . have a sufficient incentive to sue for violations. . . ." n32  [*401]

Accordingly, the Supreme Court expounded upon its Illinois Brick holding twelve years later when it decided California v. ARC America Corp. n33 In ARC America, the States of Alabama, Arizona, California, and Minnesota, all of which had indirectly purchased cement and concrete, "alleged violations of their respective state antitrust laws under which, as a matter of state law, indirect purchasers arguably were allowed to recover for all overcharges passed on to them by direct purchasers." n34 After all, by this time, "the statutes of Alabama, California, and Minnesota expressly allowed indirect purchasers to sue, . . . [and t]he Arizona statute . . . while generally following the language of the

Clayton Act, could be interpreted as a matter of state law as authorizing indirect purchasers to recover." n35

The Court first explained that its Illinois Brick holding related solely to federal, not state, antitrust law:

Under federal law, no indirect purchaser is entitled to sue for damages for a Sherman Act violation, and there is no claim here that state law could provide a remedy for the federal violation that federal law forbids. Had these cases gone to trial and a Sherman Act violation been proved, only direct purchasers would have been entitled to damages for that violation, and there is no suggestion by the parties that the same rule should not apply to distributing that part of the fund that was meant to settle the Sherman Act claims. The issue before us is whether this rule limiting recoveries under the Sherman Act also prevents indirect purchasers from recovering damages flowing from violations of state law, despite express state statutory provisions giving such purchasers a damages cause of action. n36

Acknowledging that "at the time of the enactment of the Sherman Act, 21 States had already adopted their own antitrust laws," n37 the Court instructed that state indirect-purchaser statutes were "consistent with the broad purposes of the federal antitrust laws: deterring anticompetitive conduct and ensuring the compensation of victims of that conduct." n38 The Court noted that "nothing in Illinois Brick suggested that it would be contrary to congressional purposes for  [*402]  States to allow indirect purchasers to recover under their own antitrust laws," n39 and that its Illinois Brick decision construed only federal law:

When viewed properly, Illinois Brick was a decision construing the federal antitrust laws, not a decision defining the interrelationship between the federal and state antitrust laws. The congressional purposes on which Illinois Brick was based provide no support for a finding that state indirect purchaser statutes are pre-empted by federal law. n40

The Court ultimately determined that "the Court of Appeals had erred in holding that the state indirect purchaser statutes were pre-empted," n41 and, in doing so, concluded that indirect purchasers weren't proscribed from suing price-fixing claims under state antitrust laws.

B. Consumer Remedies Under Certain States' Antitrust or ConsumerFraud Statutes

Following Illinois Brick, and as ultimately endorsed by ARC America, several states amended their antitrust statutes to explicitly provide claims for indirect purchasers, either privately or through state attorneys general as parens patriae. n42 Several other states' courts have also more recently interpreted their states' antitrust n43 or consumer-fraud statutes n44 to permit either private or parens  [*403]  patriae consumer price-fixing claims. After all, as the Tennessee Appellate Court recently explained in Sherwood v. Microsoft Corp., n45 nothing in Hanover Shoe or Illinois Brick precludes states from providing consumers remedies for price-fixing violations:

It is one thing to consider the congressional policies identified in Illinois Brick and Hanover Shoe in defining what sort of recovery federal antitrust law authorizes; it is something altogether different, and in our view inappropriate, to consider them as defining what federal law allows States to do under their own antitrust law. . . . But nothing in Illinois Brick suggests that it would be contrary to congressional purposes for States to allow indirect purchasers to recover under their own antitrust laws. n46

But while virtually all states, at least theoretically, provide consumers either antitrust or consumer-fraud remedies for price-fixing violations, n47 some state courts have resisted explicitly recognizing consumer price-fixing claims  [*404]  brought under their states' antitrust or consumer-fraud statutes. n48 And in certain states, where only parens-patriae authority exists for bringing antitrust or consumer-fraud, price-fixing claims, state attorneys general oftentimes lack the resources to bring these actions, meaning many consumers' claims remain unpursued. n49  [*405]

In these circumstances, unjust enrichment becomes an entirely viable, yet often underutilized, theory for pursuing

consumer price-fixing claims. After all, while ARC America considered consumers' ability to invoke state statutory remedies (rather than the Sherman Act), it never purported nor intended to proscribe consumers from invoking state common-law remedies when victimized by price fixing. To this end, the Court explained that while "Congress intended the federal antitrust laws to supplement, not displace, state antitrust remedies . . . on several prior occasions, the Court . . . had recognized that the federal antitrust laws did not pre-empt state law," n50 without regard to whether the contemplated state law was common law or statutory. In this manner, the ARC America Court's holding didn't limit consumers to price-fixing claims solely under state-antitrust statutes (if appropriately drafted); rather, it also endorsed consumer price-fixing claims under state consumer-fraud statutes n51 and state common-law remedies - like unjust enrichment.

III. Unjust Enrichment's Essence and Uniformity

A. Unjust Enrichment's History

"Unjust enrichment is a quasi-contractual theory or is a contract implied-in-law in which a court may impose a contractual obligation where one does not exist." n52 "Such contracts are not based upon the intention of the parties but are obligations created by law and are 'founded on the principle that a party receiving a benefit desired by him [or her], under the circumstances rendering it  [*406]  inequitable to retain it without making compensation, must do so.'" n53 Unjust enrichment developed because basic justice suggested that people shouldn't profit from others' misfortunes and "that no one should be made richer through another's loss." n54 Indeed, dating back to early common law, courts oftentimes invoked the maxim, "commodum ex injuria sua nemo habere debet," n55 or "no person ought to have advantage from his own wrong." n56

At its essence, unjust-enrichment law strives to return improperly or mistakenly taken wealth or possessions, n57 and unjust-enrichment actions typically require wrongdoers to return their ill-gotten gains to their victims. n58 To achieve this purpose, recovery for unjust enrichment is normally measured by the defendant's gain rather than the plaintiff's loss n59 - a restitutionary remedy known as "disgorgement." n60  [*407]

Eighteenth-century English common law spawned plaintiffs' ability to claim defendants' gains rather than their own losses. Perhaps the earliest and best-known case to invoke disgorgement was Moses v. Macferlan. n61 In this case, Macferlan promised Moses that if Moses endorsed certain promissory notes over to him Macferlan would never enforce Moses' liability on the endorsements. n62 But after Moses endorsed over the notes, Macferlan sued him, thereby breaching their agreement. n63 The court in which Macferlan sued Moses wasn't interested in the parties' contract, and it ordered Moses to pay Macferlan. n64

Moses then brought an entirely new action against Macferlan for his money's repayment. n65 The question presented was, just as tort victims could waive their tort claims and bring actions for money had and received - an equitable remedy - whether breach of contract victims could do likewise; namely, pursue a restitutionary rather than compensatory action. n66 Lord Mansfield explained that breach of contract victims could and, in doing so, articulated disgorgement's fundamental essence:

This kind of equitable action, to recover back money, which ought not in justice to be kept, is very beneficial, and therefore much encouraged. It lies . . . for money paid by mistake; or upon a consideration[,] which happens to fail; or for money got through imposition, (express, or implied;) sic or extortion; or oppression; or an undue advantage taken of the plaintiff's situation, contrary to laws made for the protection of persons under those circumstances. In one word, the gist of this kind of action is, that the defendant, upon the circumstances of the case, is obliged by the ties of natural justice and equity to refund the money. n67

Given its compelling lessons, Moses v. Macferlan has since become viewed as the seminal unjust-enrichment case providing that a defendant may be required to disgorge its ill-gotten gains. n68  [*408]

B. The Restatement of Restitution's Related Approach

Not surprisingly, the Restatement of Restitution embraces Lord Mansfield's observations and instructs that "a person who has been unjustly enriched at the expense of another is required to make restitution to the other." n69 Accordingly, restitution (or disgorgement) is achieved when the victim "is restored to the position he [or she] formerly occupied either by the return of something which he [or she] formerly had or by the receipt of its equivalent in money." n70

Many cases cited in the Restatement and elsewhere involve privity between the parties, but neither the Restatement nor Moses compels a direct relationship or benefit between the parties to sustain an unjust-enrichment claim. Moreover, the Restatement contemplates restitutionary recovery in circumstances where "benefit and loss do not coincide," n71 thus further suggesting that disgorgement is justified in situations where unjust enrichment results from a defendant's wrongful conduct without regard to the parties' relationship. And because unjust enrichment is so strongly rooted in equity and fairness, n72 plaintiffs frequently invoke it to accommodate wide-ranging factual scenarios, n73 and it can be especially effective when used to advance our nation's long-standing policy goal to protect competition by maintaining free and competitive marketplaces. n74  [*409]

C. Unjust-Enrichment Law's Uniformity Among All States

Although price fixers insist that unjust enrichment's elements vary from state to state, all states' unjust-enrichment laws are nearly identical. n75 To state a claim for unjust enrichment, n76 a plaintiff must allege the following elements:

(1) He or she conferred a benefit upon the defendant, who had knowledge of the benefit;

(2)The defendant accepted and retained the conferred benefit; and

(3)Under the circumstances, it would be inequitable for the defendant to retain the benefit without paying for it. n77

Courts nationwide also emphasize that "the most significant requirement for a recovery on a quasi contract is that the enrichment to the defendant  [*410]  be unjust." n78 And since all states' common laws grew from shared historical roots (including universally accepted fairness concerns), it isn't surprising that all states' unjust-enrichment laws contain virtually identical elements. n79  [*411]   [*412]   [*413]   [*414]   [*415]   [*416]   [*417]   [*418]

IV. Unjust Enrichment's Application to Consumer Price-Fixing Claims

A. Directness Not Required

While price fixers insist that unjust enrichment requires "directness" between the parties, their directness analyses frequently vacillate between two distinct concepts. Price fixers typically argue that unjust enrichment requires a "direct relationship" - namely, privity - between the parties, yet oftentimes simultaneously argue that unjust enrichment also (or sometimes alternatively) requires a plaintiff to confer a "direct benefit" upon them. But these separate concepts can't be properly analyzed when woven together in the manner oftentimes advanced by price fixers. Rather, they must be considered separately to properly understand that "directness" has no application to consumer unjust-enrichment claims in any respect.

1. Unjust Enrichment Doesn't Require Privity Between the Parties

Price fixers' argument that unjust enrichment requires a "direct relationship" between the parties is really an argument that unjust enrichment requires "privity." But no state's unjust-enrichment law requires this additional element. n80 Rather, "it is well established that want of privity between parties is  [*419]   [*420]   [*421]  no obstacle to recover under quasi-contract," n81 and that when a plaintiff "benefits the property of a person with whom there is no

privity of contract, an action on quantum meruit may lie. . . ." n82

When price fixers move to dismiss consumers' unjust-enrichment claims on the basis that privity is required, they, not surprisingly, can't provide authority for this proposition because none exists. And this authority's absence stands to reason, since if the parties were in privity, consumers would bring contractual, not quasi-contractual, claims in state court; or, as direct purchasers, would have standing to sue Clayton Act claims for Sherman Act violations in federal court. Requiring privity, then, would render unjust enrichment in consumer price-fixing settings meaningless because contractual claims, or claims derived from the parties' direct relationship (i.e., Clayton Act claims), would entirely usurp unjust enrichment. Instead, when privity doesn't exist, unjust enrichment - a quasi-contractual remedy - implies it and imposes a contractual obligation. For unjust enrichment to work, privity can't exist.

2. Unjust Enrichment Doesn't Require a Plaintiff to Confer a Benefit Directly Upon a Defendant

Just as privity isn't required between the parties, neither is a direct benefit. Again, no state's unjust-enrichment law requires this additional element. Price fixers' insistence that consumers directly benefit them is simply their conclusion, and no case law articulates just what price fixers mean by "direct benefit." Rather, the case law price fixers frequently cite to support their direct benefit argument merely suggests that the relationship between the parties need be more direct than price fixers' customary relationship with consumers - their schemes' intended victims. Price fixers' usual authority also generally involves benefits that weren't considered unjust. And while this authority involves plaintiffs who were fewer steps from the defendants than consumers oftentimes are from price fixers, a victim's proximity to his or her victimizer has never influenced a court's determination of whether this victimizer's enrichment was unjust.

Say, for instance, that consumers were four steps removed from the price fixers in a particular conspiracy. What if the consumers had instead been six or seven steps removed? Would a sufficiently direct benefit then have existed [*422] at four steps? Or five? Likely so, according to price fixers. The point is that no requirement exists demanding that consumers personally (or "directly") put the unjustly retained benefits into price fixers' pockets. Rather, come day's end, so long as consumers can prove that "a benefit was conferred upon the defendant by the plaintiff, . . . defendant appreciated such benefit, and accept[ed it] under such circumstances that it would be inequitable for him [or her] to retain it without payment of the value thereof," n83 consumers' unjust-enrichment claims will succeed. Just as privity can't exist for an unjust-enrichment claim to lie, price fixers' direct-benefit requirement doesn't exist either.

3. Multiple Courts' Agreement that Direct Benefit Isn't Required

Contrary to price fixers' conclusions concerning direct benefit, multiple courts have expressed that a plaintiff needn't prove a direct benefit to succeed on an unjust-enrichment claim. n84 For instance, in Metric Constructors, Inc. v. Bank of Tokyo-Mitsubishi, Ltd., n85 the Fourth Circuit Court of Appeals, considering North Carolina law and the North Carolina Appellate Court's Effler v. Pyles n86 decision, first observed that unjust enrichment didn't require privity:

The North Carolina Supreme Court has never held that a contractor may not obtain equitable relief from a lender with whom it had no contract. To the contrary, a contractor may be entitled to equitable relief where the contractor completed a project but the lender (with whom the contractor did not have a contract) refused to pay. n87

[*423]

The court then explained that the North Carolina Supreme Court "suggested a broader approach to unjust enrichment than was indicated by Effler's 'direct benefit' rule [and held that u]nder North Carolina law, it was sufficient for a plaintiff to prove that it . . . conferred some benefit on the defendant, without regard to the directness of the transaction." n88

In Iconco v. Jensen Construction Co., n89 the Eighth Circuit Court of Appeals, considering Iowa's unjust-enrichment law, found "no requirement in the cases that the plaintiff itself must have conferred the benefit sought

to be recovered from the defendant." n90 "Instead," according to the Iowa Supreme Court, "benefits could be direct or indirect, and could involve benefits conferred by third parties . . . . The critical inquiry was that the benefit received be at the expense of the plaintiff." n91

In HPI Health Care Services, Inc. v. Mount Vernon Hospital, Inc., n92 the Illinois Supreme Court recognized that sometimes defendants are unjustly enriched indirectly, and when so, restitution is appropriate:

Many unjust-enrichment cases involve "situations in which the benefit the plaintiff is seeking to recover proceeded directly from him to the defendant." (4 G. Palmer, The Law of Restitution § 21.1, at 291 (1978).) The situation in this case, however, is different in that the plaintiff is seeking recovery of a benefit that was transferred to the defendant by a third party. In such situations, courts have found that retention of the benefit would be unjust where . . . the defendant procured the benefit from the third party through some type of wrongful conduct. . . . See generally 4 G. Palmer, The Law of Restitution § § 21.2, 21.4, 21.5, at 292-93, 298-99, 316-18 (1978). n93

Courts considering antitrust-based cases have also agreed that unjust enrichment claims exist where the plaintiff doesn't pay a benefit directly to the defendant. For instance, in In re K-Dur Antitrust Litigation, n94 K-Dur's manufacturer was alleged to have "entered into separate illegal agreements with generic manufacturers . . . while those companies were pursuing FDA approval  [*424]  of generic versions of K-Dur." n95 "Indirect Purchasers [i.e., consumers] . . . asserted claims under the unjust enrichment laws of fifty states, the District of Columbia, and Puerto Rico." n96 With respect to the defendants' "claim that [the indirect-purchaser] Plaintiffs' claims were deficient because unjust enrichment claims required that Plaintiffs confer a benefit on Defendants," n97 the district court explained that the "Defendants' argument failed because a benefit conferred need not mirror the actual loss of the plaintiff," n98 and that "the critical inquiry was whether the plaintiff's detriment and the defendant's benefit were related to, and flowed from, the challenged conduct." n99 The court ultimately ruled that the main defendant's payments to its competitors "flowed from, and were related to, the anti-competitive conduct alleged by Plaintiffs," n100 and that "Plaintiffs' purchase of K-Dur constituted a benefit conferred on Defendant . . ., in the form of monetary payments." n101

In In re Lorazepam & Clorazepate Antitrust Litigation, n102 plaintiffs, third-party payors (again, indirect purchasers), alleged that "Defendants had entered into exclusive licensing agreements in restraint of trade in order to raise, maintain, and stabilize the prices for the generic drugs Lorazepam and Clorazepate. . . ." n103 Ruling that plaintiffs' unjust-enrichment claim was valid, the district court explained that "the benefit Plaintiffs claimed that Defendants received was easily cognizable," n104 and that plaintiffs had "pled that they had absorbed millions of dollars in overcharges, which significantly increased [Defendant's] revenue and net earnings." n105 Reasoning that "a plaintiff alleging an unjust enrichment may be seeking to recover a benefit which he [or she] gave directly to the Defendant, or one which was transferred to the Defendant by a third party," n106 the court denied defendants' motion to dismiss plaintiffs' unjust-enrichment claim. n107

And in Cox v. Microsoft Corp., n108 plaintiffs "alleged that Microsoft had engaged in purposeful, deceptive monopolistic business practices, including [*425]  entering into secret agreements with computer manufacturers and distributors to inhibit competition . . . in its Windows software . . . resulting in artificially inflated prices for defendant's products. . . ." n109 New York's Appellate Division ruled that the trial court had "erroneously dismissed plaintiffs' cause of action for unjust enrichment, holding that, as indirect purchasers of Microsoft's software products, plaintiffs had only indirectly bestowed a benefit upon Microsoft." n110 The appellate court believed that, "contrary to such reasoning, plaintiffs' allegations that Microsoft's deceptive practices caused them to pay artificially inflated prices for its products stated a cause of action for unjust enrichment. . . ." n111

But In re Cardizem CD Antitrust Litigation n112 contains the most in-depth discussion of "direct relationship" and "direct benefit" and their relation, if any, to consumer unjust-enrichment claims. Along with antitrust claims, Cardizem involved class-action, common-law, unjust-enrichment claims, this time under various states' laws, n113 and concerned indirect purchasers' (consumers') claims that defendants had conspired to prevent generic competition for Cardizem.

108 W. Va. L. Rev. 395, *425

n114 Defendants moved to dismiss plaintiffs' complaint, arguing that plaintiffs couldn't state common-law, unjust-enrichment claims because "they had not and [could not] allege that they had bestowed a benefit directly on Defendants; and they had not and [could not] allege that privity existed between Plaintiffs and Defendants. . . ." n115

Denying defendants' motion to dismiss, the district court first observed that plaintiffs had properly pleaded their antitrust and unjust-enrichment claims:

The authority Defendants rely upon fails to support their position that the success of Plaintiffs' common law unjust enrichment claims necessarily depends upon the success of their statutory claims. To the contrary, the courts often award equitable

[*426]

remedies under common law claims for unjust enrichment in circumstances where claims based upon contract or other state law violations prove unsuccessful.

* * *

Rather than allegations and proof of the elements necessary for its antitrust claims, Plaintiffs' common law claims for unjust enrichment depend upon allegations and proof that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that the defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience. n116

Then, in an admittedly lengthy passage, the court carefully instructed that defendants' purported privity (direct relationship) and directness (direct benefit) requirements weren't necessary to sustain plaintiffs' unjust-enrichment claim:

Likewise unpersuasive are Defendants' arguments that Plaintiffs must allege, as an essential element of their unjust enrichment claims, facts showing that they directly conferred a benefit on both HMRI and Andrx and facts showing that privity exists between Plaintiffs and Defendants. The decisions Defendants rely upon do not support the argument that either privity or a directly conferred benefit is an essential element of an unjust enrichment claim under the state common laws at issue here.

As to the lack of privity, the decisions Defendants rely upon do not support their position and at least one refutes, rather than supports, the argument that privity between parties is required to state a common law claim for unjust enrichment. See *Paschall's Inc., 407 S.W.2d at 154* (observing that "it is well established that want of privity between parties is no obstacle to recovery"). See also *Schiff v. Am. Ass'n of Retired Persons, 697 A.2d 1193, 1194 (D.C. App. 1997)* ("There can be no claim for unjust enrichment when an express contract exists between the parties.").

Similarly, the authority Defendants[] rely upon fails to support their broad claim that Plaintiffs cannot state a common law claim for unjust enrichment unless they allege facts showing that they conferred a benefit directly upon each of the Defendants. Rather, careful examination of the cited authority shows that the courts dismiss such claims only where the plaintiffs fail to allege facts showing that they have bestowed some sort of benefit upon the defendant that the defendant ought not keep in equity and

[*427]

good conscience. See *Rapaport v. United States Dep't of Treasury, 313 U.S. App. D.C., 59* F.3d 212, 218 (D.C.

Cir. 1995) (where the court observed that unjust enrichment cannot be found where the plaintiff has failed to show that the defendant has been enriched or why that enrichment is unjust). "The fundamental characteristic of unjust enrichment is 'that the defendant has been unjustly enriched by receiving something . . . that properly belongs to the plaintiff[, thereby] forcing restoration to the plaintiff.'" Id. at 217 (quoting Dobbs, Law of Remedies § 4.1(2)). As the Rapaport Court observed, the typical elements of a cause of action for unjust enrichment are: "(1) the plaintiff conferred a benefit upon the defendant; (2) the defendant accepted and retained the benefit; and (3) it would be unjust for the defendant not to pay the plaintiff the value of the benefit." Id. Plaintiffs here have alleged that they conferred a benefit, in the form of overpayments and increased profits, on Defendants, that Defendants accepted that benefit and that it would be unjust under the alleged circumstances for Defendants to retain that benefit.

Contrary to Defendants' argument, there is no additional requirement that a benefit flow solely from Plaintiffs to Defendants. The courts do not define "benefit" as narrowly as Defendants urge. As the Alabama Supreme Court observed, "whenever one person adds to the other's advantage in any form, whether by increasing his holdings or saving him from expense or loss, he has conferred a benefit upon the other." *Opelika Production Credit Ass'n, Inc. v. Lamb, 361 So.2d 95, 99 (1978)* (citing *Restatement, Restitution, § 1(b)*; Sullivan, "The Concept of Benefit in the Law of Quasi-Contract," *64 Geo.L.J. 1 (1975)*). Whether or not the benefit is directly conferred on the defendant is not the critical inquiry; rather, the plaintiff must show that his detriment and the defendant's benefit are related and flow from the challenged conduct. Id. Defendants' arguments, that the connection between Plaintiffs alleged overpayments for Cardizem CD and the benefits Defendants obtained as a result of those overpayments is too tenuous, raise factual questions and refute Defendants' claim that Plaintiffs can prove no set of facts allowing Plaintiffs to state a common law claim for unjust enrichment. n117

[*428]

Like privity, then, a direct benefit between consumers and price fixers isn't required to maintain an unjust-enrichment claim. Instead, if consumers' unjust payments ultimately make their way - however circuitously - to the price fixers and these payments (or benefits) are known, accepted, and retained by the price fixers, an unjust-enrichment claim will rightly exist.

B. Consumers' Benefit to Price Fixers is the Kind of Benefit Unjust Enrichment is Intended to Address

As demonstrated, although price fixers' direct relationship and direct benefit arguments demand that consumers pay their money directly to the price fixers, unjust enrichment doesn't require directness. Further, although price fixers insist that the benefits consumers ordinarily confer upon them are too remote, consumers are always squarely in price fixers' sites as their ultimate victims, without whose end-use purchases price fixers' conspiracies are pointless. According to all states' unjust-enrichment laws, consumers need only confer a benefit upon price fixers, which is unjust for the price fixers to keep, and no additional requirements exist requiring that this conferred benefit flow directly from consumers' hands into price fixers' wallets.

Despite the number of steps between consumers and price fixers, consumers' benefit to price fixers is most plainly demonstrated by recognizing that the consumer, end-use market drives price-fixing conspiracies, permits them to thrive, and allows price fixers to profit from them. Consumers' overcharges flow up the distribution chain into price fixers' hands, which is always the price fixers' intention. Where privity doesn't exist (and, accordingly, a so-called direct benefit doesn't exist either n118), unjust enrichment becomes the appropriate theory to invoke. If unjust enrichment's elements are properly pleaded, no maximum number of steps exists between consumers' unfair payment to price fixers and price fixers' unfair receipt of it beyond which unjust enrichment ceases to apply.

C. Certain States' Exhaustion of Remedies Doctrines Don't Affect Unjust Enrichment's Application

Before a plaintiff can invoke unjust enrichment, certain states require that a plaintiff "exhaust[] his [or her] remedies against the person with whom he [or she has] . . . contracted." n119 This requirement embraces two related

assumptions:  [*429]  (1) The person with whom plaintiff contracted is somehow culpable so that a remedy exists against this person; and (2) if culpable, exercising this remedy wouldn't be futile. n120 Both of these assumptions, though, encourage unjust enrichment's continued application.

   1. No Cognizable Remedies Exist Against Consumers' Contracting Parties

   In the traditional unjust-enrichment setting, the plaintiff contracts with the ultimate wrongdoer (such as, for instance, where a landlord provides rental space to a tenant who later refuses to pay the rent). n121 Since this wrongdoer has either disappeared or is otherwise uncollectible, the plaintiff has no choice but to sue some third party (a "passive beneficiary," really n122) who benefited from, yet never itself truly wronged, the plaintiff; although, a more appropriate defendant than this passive beneficiary admittedly exists - namely, the contracting party.

   But when price fixers victimize consumers, the consumers haven't contracted with anyone who wronged them. Rather, price fixers victimize the consumers' contracting parties - consumers' retail-product sellers - just like they victimize the consumers, in that these retail-product sellers pass the price fixers' overcharges down the distribution chain as designed. And unlike the traditional unjust-enrichment setting, the third parties in this unjust-enrichment equation - the price fixers (who are hardly passive beneficiaries here) - were the wrongdoers. As a result, no cognizable remedy exists against consumers' contracting parties since, as to consumers, their contracting parties did nothing wrong. Rather - and particularly in states whose courts either don't permit statutory claims for consumer price fixing n123 or haven't yet adjudicated the issue n124 - unjust enrichment becomes consumers' proper (and sometimes sole) remedy against the price fixers.  [*430]

   2. Since No Cognizable Remedies Exist Against Consumers' Contracting Parties, Suing Them Would be Futile

   Since no cognizable remedies exist against consumers' contracting parties - both because consumers' contracting parties are not culpable and because "statutory claims are not cognizable under certain states['] antitrust or consumer protection laws" n125 - futility obviates consumers' requirement to exhaust any alleged remedies against their contracting parties. Moreover, because consumers' contracting parties are blameless, suing them wouldn't only be useless, it would be reckless. Our nation's courts have long declared that "the law does not require the doing of a useless thing," n126 and price fixers' typical authority involves contracting parties against whom plaintiffs had cognizable, yet unpursued, claims. n127 Since oftentimes no cognizable remedy exists in consumer price-fixing settings, pursuing consumers' retail-product sellers (for whatever) would be futile, and consumers aren't required to do it.

   3. Unjust Enrichment's Special Suitability in States That Haven't Yet Embraced Consumer-Antitrust or Consumer-Fraud Theories of Recovery

   In a concept related to "exhaustion of remedies," some courts believe that a plaintiff can't invoke unjust enrichment if another adequate legal remedy exists. n128 Although not a universally accepted principle, n129 these courts perceive [*431]  unjust enrichment as a fall-back device that a plaintiff can invoke only after both satisfying its elements and demonstrating that alternate legal theories don't apply. These courts refuse to consider unjust enrichment as an independently viable claim "unless other claims [have been] considered, analyzed, and discarded[, and contend that i]t does not spring into action until after all legal avenues of relief have been found to be unavailing." n130 Accordingly, in states where consumer-antitrust or consumer-fraud claims don't legally exist n131 or can't be practically pursued, n132 unjust enrichment is an especially appropriate remedy to invoke.

   V. Conclusion

   Unjust enrichment requires neither a direct relationship (privity) between the parties, nor a plaintiff's direct benefit upon a defendant. Indeed, these additional requirements misapprehend unjust enrichment's fundamental essence. Rather, despite price fixers' efforts to introduce these new elements into unjust enrichment, this age-old theory's purpose is, and always has been, to restore equity, and unjust enrichment always has applied to situations like consumer price-fixing claims. In this manner, unjust enrichment provides consumers - particularly in states having arguably inapplicable

antitrust and consumer-fraud statutes - a powerful remedy against price fixers. After all, price fixers deliberately victimize consumers, without whose end-use, consumer purchases their price-fixing schemes would be meaningless.

But while price fixers remain perfectly content fixing prices and victimizing their end-use consumer market, they consistently strive to evade responsibility for their crimes. It has long been said, though, that "you can delegate  [*432] authority, but not responsibility," n133 and courts should hold price fixers accountable to their conspiracies' indisputably intended victims. By pursuing consumer unjust-enrichment claims for price fixing, especially in states whose courts haven't yet fully embraced antitrust and consumer-fraud remedies, price-fixing victims can truly help undo the otherwise perfect crime.

**Legal Topics:**

For related research and practice materials, see the following legal topics:
Antitrust & Trade LawPrivate ActionsPurchasersDirect PurchasersAntitrust & Trade LawPrivate ActionsPurchasersIndirect PurchasersAntitrust & Trade LawSherman ActRemediesDamages

**FOOTNOTES:**

n1 See Daniel R. Karon, Price Fixing, Market Allocation and Bid Rigging Conspiracies: How to Counsel Your Clients to Detect Violations and Inform You of Potential Claims, *25 AM. J. TRIAL ADVOC. 241, 255 (2001)* ("Some would . . . argue that it is simply good business to fix prices, divide markets, and rig bids.") (emphasis added); Daniel R. Karon, Collusion Central: Helping your clients deal with price fixers, 11 BUS. L. TODAY 9, 12 (2002) ("Some sellers seem to believe they will be better off in the long run (that is, make more money) fixing prices and getting caught than never fixing prices in the first place.").

n2 See, e.g., *Kansas v. Utilicorp United, Inc., 497 U.S. 199, 204 (1990)* (Observing that where "suppliers overcharged a public utility for natural gas . . . the utility passed on the overcharge to its customers."); *In re Methionine Antitrust Litig., 204 F.R.D. 161, 166 (N.D. Cal. 2001)* (Court denied class certification for multi-level indirect purchaser class, explaining the "proof will differ for each class member as to whether that member was overcharged . . . and if so, whether and to what extent the member passed on the overcharge and, if the overcharge was fully passed on, how the class member was otherwise injured by the conspiracy."); *Comes v. Microsoft Corp., 646 N.W.2d 440, 450 (Iowa 2002)* (Suggesting that "direct purchasers damaged by antitrust overcharges . . . simply pass on the increased cost to consumers."); *N.M. STAT. 57-1-3(C)* (2004) (Explaining that defense to antitrust claim exists when defendant "proves that the plaintiff purchaser or seller in the chain of manufacture, production, or distribution who paid any overcharge or received any underpayment, passed on all or any part of such overcharge or underpayment to another purchaser or seller in such chain.").

n3 A "direct purchaser" is a person or entity that purchases a price-fixed product directly from the price fixer.

n4 *Illinois Brick Co. v. Illinois, 431 U.S. 720, 746 (1977)* ("We conclude that the legislative purpose in creating a group of 'private attorneys general' to enforce the antitrust laws under § 4 . . . is better served by holding direct purchasers to be injured to the full extent of the overcharge paid by them. . . .").

n5 While "indirect purchasers" also include mid-level purchasers, these mid-level purchasers frequently pass their illegal overcharges down the distribution chain until they arrive at the ultimate indirect purchaser -

consumers purchasing for end use. See also supra note 2.

n6 See infra note 48.

n7 See infra Part IV.

n8 See infra Part II. Although, pursuant to the newly enacted Class Action Fairness Act, *28 U.S.C. § 1332*(d) (2005), federal subject-matter jurisdiction might exist over consumers' state-law claims if styled as class-action claims, federal subject-matter jurisdiction's existence doesn't affect the substantive, state-law analysis that a federal judge must conduct and that this article embraces.

n9 See infra Part III.

n10 See infra Part IV.

n11 See infra Part V.

n12 *15 U.S.C. § § 1-7 (2005).*

n13 Id. at § 1. ("Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal.").

N14 See *United States v. Masonite Corp., 316 U.S. 265, 274 (1942)* ("There can be no doubt that this is a price-fixing combination which is illegal per se under the Sherman Act.").

n15 *Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752, 768 (1984)* ("Certain agreements, such as horizontal price fixing and market allocation, are thought so inherently anticompetitive that each is illegal [under the Sherman Act] per se without inquiry into the harm it has actually caused.").

n16 *15 U.S.C. § 4* (2005).

n17 See, e.g., *In re W. Liquid Asphalt Cases, 487 F.2d 191, 199 (9th Cir. 1973)* ("The presence of intermediaries does not bar recovery [under the Clayton Act]."); *West Virginia v. Chas. Pfizer & Co., 440 F.2d 1079, 1088 (2d Cir. 1971)* ("The passing-on doctrine is not here being used as a defense to permit the defendants to escape liability, but rather as an attempt to award damages, insofar as is possible, to those who ultimately paid higher prices as a result of the collusive pricing. . . ."); *Clark Oil Co. v. Phillips Petroleum Co., 148 F.2d 580, 582-83 (8th Cir. 1945)* ("Under the Clayton Act the right is not confined to persons in privity with the wrongdoer, but is given to anyone who has suffered injury to his business or property by reason of the wrongful acts."); *Northwestern Oil Co. v. Socony-Vacuum Oil Co., 138 F.2d 967, 971 (7th Cir. 1943)* ("The one complaining need not sue the person to whom he has paid the illegal prices.").

n18 *392 U.S. 481 (1968).*

n19 *Id. at 483-84.*

n20 *Id. at 483.*

n21 *Id. at 487-88.*

n22 *Id. at 494.*

n23 *431 U.S. 720 (1977).*

n24 *Id. at 727.*

n25 Id.

n26 *Id. at 728-29* (footnote omitted).

n27 *Id. at 730.*

n28 *Id. at 732.*

n29 *Id. at 735.*

n30 *Comes v. Microsoft Corp., 646 N.W.2d 440, 451 (Iowa 2002).* See also *Bunker's Glass Co. v. Pilkington PLC, 75 P.3d 99, 108 (Ariz. 2003)* ("The risk of multiple liability for Defendants . . . is not . . . a problem that our trial courts are incompetent to handle. Indeed, most of the Illinois Brick repealer statutes leave the solution to the double-recovery problem to the courts.").

n31 *Comes, 646 N.W.2d. at 451.* See also *Bunker's, 75 P.3d at 108* ("The complexity of proving damages through multiple levels of sales is a daunting task, but one to which our courts are equal."); *Sherwood v. Microsoft Corp., No. M2000-01850-COA-R9-CV, 2003 Tenn. App. LEXIS 539,* at *102 (July 31, 2003) (Explaining that courts considering the issue have not "found complexity of the litigation a reason to prohibit indirect purchaser suits. . . ."); *Hyde v. Abbott Labs., Inc., 473 S.E.2d 680, 687 (N.C. Ct. App. 1996)* ("When asked at oral argument whether 'chaos reigned' in states which have allowed indirect purchaser suits, defendants were unable to cite a single example.").

n32 *Hyde, 473 S.E.2d at 687.* See also *Bunker's Glass Co. v. Pilkington PLC, 47 P.3d 1119, 1130 (Ariz. Ct. App. 2002)* (noting both direct and indirect purchasers have "'sufficient incentive to sue for antitrust violations.' (quoting *Hyde, 473 S.E.2d at 687)*"); Amanda Cohen, Surveying the Microsoft Antitrust Universe, *19 BERKELEY TECH. L.J. 333, 351 n.106 (2004)* (Noting that, with respect to indirect purchasers' actions against Microsoft for monopoly pricing, "consumers have filed numerous state class actions and more than one hundred multidistrict class actions in federal court."); Master Settlement Agreement relating to the Indirect Vitamin Purchaser Antitrust Litigation, at Schedule G (as amended Jan. 22, 2001), which resolved multi-level indirect

108 W. Va. L. Rev. 395, *432

purchasers' claims against worldwide vitamin manufacturers in twenty-one states, the District of Columbia, and Puerto Rico for $ 225,250,000 (on file with author).

n33 *490 U.S. 93 (1989).*

n34 *Id. at 98* (emphasis added).

n35 *Id. at 98 n.3.*

n36 *Id. at 100-01.*

n37 *Id. at 101 n.4.*

n38 *Id. at 102.*

n39 *Id. at 103.*

n40 *Id. at 105-06* (emphasis added).

n41 *Id. at 101.*

n42 ALA. CODE § 6-5-60 (2005); *ALASKA STAT. § 45.50.577* (2004) (authorizing attorney general action as parens patriae); ARK. CODE ANN. § 4-75-315 (2005) (authorizing attorney general action as parens patriae); *CAL. BUS. & PROF. CODE § 16750* (2005); *COLO. REV. STAT. § 6-4-111* (2004) (authorizing attorney general action as parens patriae); D.C. CODE ANN. § 28-4509 (2005); *HAW. REV. STAT. § 480-13* (2004); IDAHO CODE § 48-113 (2005); *740 ILL. COMP. STAT. 10/7* (2005) (authorizing attorney general action as parens patriae); *KAN. STAT. ANN. § 50-161* (2004); *ME. REV. STAT. ANN. tit. 10, § 1104* (2005); *MD. CODE ANN. COM. LAW § 11-209* (West 2005) (authorizing attorney general action as parens patriae); *MICH. COMP. LAWS § 445.778* (2005); *MINN. STAT. § 325D.57* (2005); MISS. CODE ANN. § 75-21-9 (2005); *NEB. REV. STAT. § 59-821* (2004); *NEV. REV. STAT. § 598A.160* (2005) (authorizing attorney general action as parens patriae); *N.M. STAT. ANN. § 57-1-3* (2004) (authorizing attorney general action as parens patriae); N.Y. GEN. BUS. § 340 (2003); N.D. CENT. CODE § 51-08.1-08 (2005); *OR. REV. STAT. § 646.780* (2005) (authorizing attorney general action as parens patriae); *R.I. GEN. LAWS § 6-36-12* (2005) (authorizing attorney general action as parens patriae); *S.D. CODIFIED LAWS § 37-1-33* (2005); *VT. STAT. ANN. tit 9, § 2465* (2005); W. VA. CODE R. § § 142-9-1, 142-9-2 (2005); *WIS. STAT. § 133.18* (2005).

n43 See *Freeman Indus., LLC v. Eastman Chem. Co., No. E2003-00527-SC-S09-CV, 2005 Tenn. LEXIS 668,* at *9 (Aug. 25, 2005) (Under Tennessee's antitrust act, "an indirect purchaser may recover from the antitrust violator the amount of the overcharge that the direct purchaser passed on to the indirect purchaser."); *Bunker's Glass Co. v. Pilkington PLC, 75 P.3d 99, 110 (Ariz. 2003)* (Finding the Arizona Antitrust Act applicable to indirect purchasers' price-fixing claims, explaining that "allowing the courts to attempt to achieve justice in the antitrust realm comports with the longstanding policy of this state to protect consumers and deter anti-competitive behavior."); *Comes v. Microsoft Corp., 646 N.W.2d 440, 451 (Iowa 2002)* ("We conclude

[Iowa's] antitrust law contemplates all injured consumers are authorized to bring suit to enforce our antitrust laws."); *Hyde v. Abbott Labs., Inc., 473 S.E.2d 680, 688 (N.C. Ct. App. 1996)* ("We hold that indirect purchasers have standing under [the North Carolina Antitrust Act].").

n44 See *WASH. REV. CODE § 19.86.080* (2005) (authorizing attorney-general action as parens patriae); *Arthur v. Microsoft Corp., 676 N.W.2d 29, 37 (Neb. 2004)* (Nebraska's consumer-fraud act "was intended to be an antitrust measure to protect Nebraska consumers from monopolies and price-fixing conspiracies."); *Elkins v. Microsoft Corp., 817 A.2d 9, 18-20 (Vt. 2002)* (explaining that indirect purchasers can sue consumer-fraud claims for antitrust violations); *Ciardi v. F. Hoffman-LaRoche. Ltd. 762 N.E.2d 303, 312, n.18 (Mass. 2002)* (Massachusetts' consumer-fraud act "allows indirect purchasers to bring a cause of action for anticompetitive conduct that would be precluded under the Antitrust Act."); *Mack v. Bristol-Myers Squibb Co., 673 So. 2d 100, 110 (Fla. Dist. Ct. App. 1996)* (Ruling that consumers can sue under the Florida Deceptive Trade Practices Act, explaining "we will not imply a repeal of a consumer's cause of action expressly established by the legislature in the Florida DTPA."); Sickles v. Cabot Corp., No. CAM-L-6230-03, slip op. at 5-6 (N.J. Super. Ct. Nov. 29, 2004) (on file with author) (finding that New Jersey's consumer-fraud and antitrust acts provide claims for indirect purchasers); Cement Masons Local Union No. 699 v. Mylan Labs., Inc., No. 431-99, slip op. at 10-11 (N.J. Super. Ct. Apr. 18, 2000) (on file with author) (order denying motion to dismiss consumer-fraud claim on behalf of consumer-indirect purchasers).

n45 *Sherwood v. Microsoft Corp., No. M2000-1850-COA-R9-CV, 2003 Tenn. App. LEXIS 539* (July 31, 2003).

n46 Id. at *82.

n47 See Daniel R. Karon, "Your Honor, Tear Down That Illinois Brick Wall!" The National Movement Toward Indirect Purchaser Antitrust Standing and Consumer Justice, *30 WM. MITCHELL L. REV. 1351, 1401 (2004)* (Arguing that "thirty-nine (and arguably as many as forty-four) states grant indirect purchasers standing, either on their own or through their attorneys general as parens patriae, to pursue price fixing claims.").

n48 See *Johnson v. Microsoft Corp., 834 N.E.2d 791, 798 (Ohio 2005)* ("Consistent with long-standing Ohio jurisprudence, which has followed federal law in antitrust matters, we adopt and follow Illinois Brick's direct-purchaser requirement and hold that an indirect purchaser of goods may not assert a[n antitrust a]ct claim for alleged violations of Ohio antitrust law."); *Vacco v. Microsoft Corp., 793 A.2d 1048, 1058 (Conn. 2002)* ("We conclude that allowing only those consumers who purchase directly from the antitrust defendant to bring suit under our state antitrust law ensures that the Antitrust Act remains harmonious with federal antitrust statutes."); *Minuteman, LLC v. Microsoft Corp., 795 A.2d 833, 838 (N.H. 2002)* ("We conclude . . . that it is sound to limit antitrust lawsuits to direct purchasers."); *Abbott Labs., Inc. v. Segura, 907 S.W.2d 503, 507 (Tex. 1995)* ("We hold that the conduct alleged by the intervenors is not actionable under the DTPA."); *Berghausen v. Microsoft Corp., 765 N.E.2d 592, 596 (Ind. Ct. App. 2002)* ("We hold the Indiana Act does not provide a cause of action to indirect purchasers who allege they were harmed by an antitrust injury. . . ."); *Major v. Microsoft Corp., 60 P.3d 511, 514 (Okla. Civ. App. 2002)* ("This Court concluded - and again concludes - that the Illinois Brick direct purchaser rule is controlling law in Oklahoma."); Arnold v. Microsoft Corp., No. 2000-CA-002144-MR, 2001 WL 1835377, at *7 (Ky. Ct. App. Nov. 21, 2001) ("We agree with the trial court that indirect purchasers . . . are not entitled to bring an action for anti-trust violations under [the Kentucky Antitrust Act]."); *Duvall v. Silvers, Asher, Sher & McLaren, M.D.'s Neurology, P.C., 998 S.W.2d 821, 825 (Mo. Ct. App. 1999)* ("Batchu was the party directly harmed by the defendants' alleged actions; hence, the harms that Duvall described were too remote to support his claim of antitrust violations."); *Island Mortgages of New Jersey v. 3M,*

*No. PAS-L-2997-03, 2004 N.J. Super. LEXIS 382,* at *11 (N.J. Super. Ct. Law Div., June 30, 2004) ("This court finds that plaintiffs' attempt to bring suit under the Consumer Fraud Act is in direct conflict with the well-founded policies interpreting federal and New Jersey antitrust law."); Wilson v. General Motors Corp., No. L-1287-03, slip op. at 2 (N.J. Super. Ct. Oct. 3, 2003) (on file with author) (order dismissing plaintiff's consumer-fraud claim for indirect-purchaser-price-fixing injury); *Kieffer v. Mylan Labs., Inc., No. BER-L-365-99-EM, 1999 WL 1567726* (N.J. Super. Ct. Sept. 9, 1999) (on file with author) (letter opinion holding indirect purchasers lack standing under New Jersey's antitrust and consumer-fraud acts).

n49 For instance, in a price-fixing case involving sorbates (a food additive), indirect purchasers reached private settlements in fourteen states and the District of Columbia. See Multi-state Sorbates Notice of Pendency of Class Action, Proposed Settlement of $ 7.8 Million, Settlement Hearing and Right to Appear, at 4 (Apr. 20, 2001) (on file with author); California Sorbates Notice of Pendency of Class Action and Proposed Settlements, at 3 (Sept. 14, 2001) (on file with author); Tennessee Sorbates Notice of Pendency of Class Action and Proposed Settlement of $ 1.45 Million, Settlement Hearing and Right to Appear, at 4 (Oct. 19, 2001) (on file with author); The Business Journal Serving Metropolitan Kansas City, Aug. 3, 2001, vol.19, no.47, p.7 (on file with author); Remarks of Ray L. Himes, Chief, Antitrust Bureau, Office of the New York Attorney General (Nov. 5, 2003), in Protecting - and Advancing Consumer Interests When the Antitrust "Reform" Engine Kicks Into Gear, at 10-11, available at http://www.antitrustinstitute.org/recent2/282.pdf. But afterwards, only six state attorneys general filed parens patriae cases on behalf of their states' consumers, thus leaving remedies for thirty states' indirect purchasers unpursued. Id. See Idaho v. Daicel Chem. Indus., Ltd., No. CV-OC-0300114D (Ada Co., Id. 4th Jud. Dist. Ct.) (on file with author); *Illinois v. Daicel Chem. Indus., Ltd., No. 02 CH 19575* (Cook Co., Ill. Cir. Ct.); Nevada v. Daicel Chem. Indus., Ltd., No. 02-CV-6798 (Washoe Co., Nev. Dist. Ct.) (on file with author); New York v. Daicel Chem. Indus., Ltd., No. 403878/2002 (N.Y. Co., N.Y. Sup. Ct.) (on file with author); Ohio v. Daicel Chem. Indus., Ltd., No. 02CVH10-12064 (Franklin Co., Ohio Ct. C.P.) (on file with author); Utah v. Daicel Chem. Indus., Ltd., No. 02091093 (Salt Lake Co., Utah 3rd Jud. Dist. Ct.) (on file with author). See also N.Y. AG sues food preservative manufacturers, THE BUSINESS REVIEW, Oct. 4, 2002. But see *Freeman Indus. LLC v. Eastman Chem. Co., No. E2003-00527-SC-S09-CV, 2005 Tenn. LEXIS 668,* at *9 (Aug. 25, 2005) (where private plaintiff sought class certification in Tennessee state court for consumers in the remaining thirty-five states where neither state attorneys general nor consumers had pursued indirect-purchaser price-fixing claims).

n50 *California v. ARC America Corp., 490 U.S. 93, 102 (1989).*

n51 See supra note 44.

n52 *Whitehaven Cmty. Baptist Church v. Holloway, 973 S.W.2d 592, 596 (Tenn. 1998).* See also, e.g., *In re First Cent. Fin. Corp, 377 F.3d 209, 213 (2d Cir. 2004)* ("'A quasi or constructive contract . . . is an obligation which the law creates, in the absence of any agreement. . . .'") (emphasis in original) (citing *Miller v. Schloss, 113 N.E. 337, 339 (N.Y. 1916)); Midcoast Aviation, Inc. v. Gen. Elec. Credit Corp., 907 F.2d 732, 737 (7th Cir. 1990)* ("Quasi-contract mandates the imposition of an obligation upon the benefit receiver to avoid the unjust enrichment."); *Suburban Transfer Serv., Inc. v. Beech Holdings, Inc., 716 F.2d 220, 226 (3rd Cir. 1983)* ("Quasi-contractual obligations are imposed by the law for the purpose of bringing about justice."); *Dagen v. CFC Group Holdings, Ltd., No. 00 Civ. 5682, 2003 U.S. Dist. LEXIS 1225,* at *8 (S.D.N.Y. Jan. 28, 2003) ("Quasi-contractual relief, such as unjust enrichment, is generally not permitted when an express agreement exists that governs the dispute between the parties. . . .").

n53 *B&L Corp. v. Thomas & Thorngren, Inc., No. M2002-02355-COA-R3-CV, 2004 Tenn. App. LEXIS 94,*

at *71 (Feb. 10, 2004) (quoting *Paschall's, Inc. v. Dozier, 407 S.W.2d 150, 154 (Tenn. 1966)).

n54 JOHN P. DAWSON, UNJUST ENRICHMENT 3 (1951).

n55 *State ex rel. B.M.S. v. H.J., 65 P.3d 639, 642 (Utah Ct. App. 2003).*

n56 Id. at n.2. See also *Life Ins. Co. of Va. v. Cashatt, 206 F. Supp. 410, 411 (E.D. Va. 1962)* (acknowledging "the ancient common law doctrine that no person shall be allowed to profit by his own wrong").

n57 See *RESTATEMENT OF RESTITUTION § 1* (1937) ("A person who has been unjustly enriched at the expense of another is required to make restitution to the other."). See also *People v. One 1960 Ford, 228 Cal. App. 2d 571, 575 (1964)* ("Where a constructive trust is therefore imposed on a person to prevent his unjust enrichment, the purpose and result is to restore to the one person the property of which he has been unjustly deprived and to take from the other property which would otherwise unjustly enrich him.").

n58 See, e.g., *Trieweiler v. Sears, 689 N.W.2d 807, 834 (Neb. 2004)* ("Unjust enrichment requires restitution . . . , which measures the remedy by the gain obtained by the defendant, and seeks disgorgement of that gain"); *State ex rel. Palmer v. Unisys Corp., 637 N.W.2d 142, 153 (Iowa 2001)* ("Restitution measures the remedy by the gain obtained by the defendant, and seeks disgorgement of that gain.").

n59 See, e.g., *Guyana Tel. & Tel. Co. v. Melbourne Int'l Comm'rs, 329 F.3d 1241, 1249 (11th Cir. 2003)* ("Restitution measures a plaintiff's recovery according to the defendant's, rather than the plaintiff's, rightful position."); *Alternatives Unlimited, Inc. v. New Baltimore City Bd. of School Comm'rs, 843 A.2d 252, 293 (Md. Ct. App. 2004)* ("The classic measurement of unjust enrichment damages is the gain to the defendant, not the loss by the plaintiff." (quotation marks omitted)); Candace S. Kovacic, A Proposal to Simplify Quantum Meruit Litigation, *35 AM. U.L. REV. 547, 557 (1986)* ("The reasonable market value of plaintiff's services can be viewed as the correct remedy in most quantum meruit cases, even in many cases in unjust enrichment because reasonable value can be viewed as the defendant's gain in certain situations."); 1 George E. Palmer, LAW OF RESTITUTION § 2.10 (1978) ("The gain to the defendant need not be equated to the loss to the plaintiff, nor indeed need there . . . be any loss to the plaintiff except in the sense that a legally protected interest has been invaded.").

n60 See, e.g., *In re Haller, 839 A.2d 18, 21 (N.H. 2003)* ("Restitution is an equitable remedy typically applied to contracts implied in law to disgorge the benefit of unjust enrichment."); *Montage Group, Ltd. v. Athle-Tech Computer Sys., 889 So. 2d 180, 196 (Fla. Dist. Ct. App. 2004)* ("Athle-Tech argues that the $ 8.9 million award for unjust enrichment is fully justified by the disgorgement theory of damages. We agree with Athle-Tech that the application of the remedy of disgorgement was appropriate under the facts of this case."); *County of Essex v. First Union Nat'l Bank, 862 A.2d 1168, 1174 (N.J. Super. Ct. App. Div. 2004)* ("Only full disgorgement satisfies the principle of preventing unjust enrichment. . . .").

n61 *97 Eng. Rep. 676 (K.B. 1760).*

n62 Id.

108 W. Va. L. Rev. 395, *432

n63 Id.

n64 Id.

n65 *Id. at 677.*

n66 *Id. at 678.*

n67 *Id. at 680-81.*

n68 See, e.g., *Stone v. White, 301 U.S. 532, 534 (1937)* ("[Equitable actions] to recover upon rights equitable in nature to avoid unjust enrichment by the defendant at the expense of the plaintiff, and its control in every case by equitable principles, established by Lord Mansfield in *Moses v. Macferlan, 2 Burr. 1005* (K.B. 17[6]0), have long been recognized in this Court."); *Nacional Financiera, S.A. v. Banco de Ponce, 120 N.Y.S.2d 373, 414 (1953)* ("Although the action for money had and received is of necessity flexible, no broader principles relating to its scope have been stated than in Moses v. Macferlan, . . . the leading case in the development of the law of quasi-contract.").

n69 *RESTATEMENT OF RESTITUTION § 1* (1937).

n70 Id. at cmt. a.

n71 Id. at cmt. e (emphasis in original).

n72 See *United States Shoe Corp. v. United States, 296 F.3d 1378, 1386 (Fed. Cir. 2002)* ("The equitable doctrine of restitution and unjust enrichment are powerful remedies of fairness."); *Penn Towne Builders, Inc. v. United States, 4 Cl. Ct. 677, 681 (1984)* ("A claim based upon unjust enrichment is derived from notions of fairness. . . ."); *Malonis v. Harrington, 816 N.E.2d 115, 120 (Mass. 2004)* ("The underlying basis for this legal obligation is derived from principles of equity and fairness, to prevent unjust enrichment of one party . . . at the expense of another. . . ."); *People v. Brockman, 574 N.E.2d 626, 635 (Ill. 1991)* ("So valued are principles of fairness and the avoidance of unjust enrichment that even if a person who might otherwise be immune has contributed as a cause to the injury he should be liable in contribution. This is so even though he cannot be directly liable to the plaintiff."); *Richland County v. State, 180 N.W.2d 649, 655 (N.D. 1970)* ("The doctrine of unjust enrichment is based upon fairness and justice.").

n73 See infra Part IV.A.3.

n74 See *Ben Ezra, Weinstein, & Co. v. Am. Online, Inc., 206 F.3d 980, 985 n.3 (10th Cir. 2000)* ("It is the policy of the United States . . . to preserve the vibrant and competitive free market that presently exists for the Internet and other interactive computer services, unfettered by Federal or State regulation." (quotation marks omitted)); *Crawford Transport Co. v. Chrysler Corp., 338 F.2d 934, 939 (6th Cir. 1964)* ("The purpose of the Sherman Act is to preserve for industry free access to competitive markets and to prevent monopolies in restraint of trade."); *Cincinnati Bengals, Inc. v. Bergey, 453 F. Supp. 129, 147 (S.D. Ohio 1974)* (Explaining the

"antitrust laws [are intended] to encourage to the fullest extent practicable free and open competition in the marketplace[, and that r]estraints on competition are not favored.").

n75 See *In re Terazosin Hydrochloride Antitrust Litig., 220 F.R.D. 672, 697 n.40 (S.D. Fla. 2004)* ("The standards for evaluating each of the various states classes' unjust enrichment claims are virtually identical."); *Singer v. AT&T Corp., 185 F.R.D. 681, 692 (S.D. Fla. 1998)* ("Prevailing case law holds that at least two of Singer's state claims, breach of contract and unjust enrichment, are universally recognized causes of action that are materially the same throughout the United States."); McDonald v. BMW of N. Am., No. BER-L-2892-03, slip op. at 35 (Super. Ct. N.J., Law Div., Bergen Co. Aug. 27, 2004) (on file with author) ("The law for unjust enrichment is similar throughout the United States. Although there may be native variations that spin the doctrine to advance local needs, it appears to be an almost universally equitable dogma.").

n76 Although courts sometimes refer to unjust enrichment as "quasi contract," these terms are generally understood to be synonymous. See, e.g., *Albrecht v. Comm. on Employee Benefits of the Fed. Reserve Employee Benefits Sys., 357 F.3d 62, 69 (D.C. Cir. 2004)* ("Unjust enrichment . . . rests on a contract implied in law, that is, on the principle of quasi-contract." (citation omitted)); *United States v. Michigan, 851 F.2d 803, 810 (6th Cir. 1988)* ("An action for unjust enrichment is based on a quasi-contract, which is synonymous with a 'contract implied in law.'" (citation omitted)); *Williston Basin Interstate Pipeline Co. v. Sheehan Pipeline Constr. Co., No. A1-04-09, 2004 U.S. Dist. LEXIS 19945,* at *4 (D.N.D. Sept. 30, 2004) ("A claim for quantum meruit is essentially a claim for unjust enrichment, quasi-contract, or implied-in-law contract"); *Paschall's, Inc. v. Dozier, 407 S.W.2d 150, 154 (Tenn. 1966)* ("Actions brought upon theories of unjust enrichment, quasi contract, contracts implied in law, and quantum meruit are essentially the same."); *Tewarson v. Simon, 750 N.E.2d 176, 187 n.5 (Ohio Ct. App. 2001)* ("Unjust enrichment is an action in quasi-contract and is implied by law where there was no meeting of the minds, but it would be unjust to allow one party to retain benefits which he or she was not entitled to under contract without paying for those benefits."); *State Farm Mut. Auto. Ins. Co. v. Universal Atlas Cement Co., 406 So. 2d 1184, 1188 (Fla. Dist. Ct. App. 1981)* (noting "unjust enrichment formed the foundation of the implied or quasi-contract between" the parties).

n77 See, e.g., *infra* note 79.

n78 *Paschall's, Inc. v. Dozier, 407 S.W.2d 150, 155 (Tenn. 1966). See also Tooltrend, Inc. v. CMT Utensili, SRL, 198 F.3d 802, 808 (11th Cir. 1999)* ("Most significant requirement for a recovery on a quasi contract is that the enrichment to the defendant be unjust." (citation omitted)); *Thompson v. Glenmede Trust Co., No. 92-5233, 1996 U.S. Dist. LEXIS 16248,* at *29 (E.D. Pa. Nov. 1, 1996) ("The most significant requirement for recovery on quasi contract, however, is that the enrichment to the defendant must be unjust." (citation omitted)); Ostroff v. FDIC, No. 92-0632 T, 1994 U.S. Dist. LEXIS 3608, at *15 (D.R.I. Feb. 4, 1994) (citing *Paschall's, Inc. v. Dozier, 407 S.W.2d 150, 155 (Tenn. 1966),* for proposition that "the most significant requirement is that the enrichment to the defendant be unjust"); *Green Quarries, Inc. v. Raasch, 676 S.W.2d 261, 264 (Mo. Ct. App. 1984)* (same).

n79 See Alabama

"The essence of the theories of unjust enrichment or money had and received is that a plaintiff can prove facts showing that defendant holds money which, in equity and good conscience, belongs to plaintiff or holds money which was improperly paid to defendant because of mistake or fraud."

*Hancock-Hazlett General Constr. Co. v. Trane Co., 499 So. 2d 1385, 1387 (Ala. 1986)* (emphasis in

original).  Alaska

We set forth three essential elements for a claim of unjust enrichment sounding in quasi-contract:

(1)a benefit conferred upon the defendant by the plaintiff;

(2)appreciation by the defendant of such benefit; and

(3)acceptance and retention by the defendant of such benefit under such circumstances that it would be inequitable for him to retain it without paying the value thereof.

*State v. Mitchell, 930 P.2d 1284, 1289 (Alaska 1997)* (emphasis in original).  Arizona

"Recovery under the theory of unjust enrichment requires five elements: (1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and the impoverishment; (4) absence of justification for the enrichment and the impoverishment and (5) an absence of a remedy provided by law."

*Sierra Vista v. Cochise Enters., 697 P.2d 1125, 1131 (Ariz. Ct. App. 1984).* Arkansas

"To find unjust enrichment, a party must have received something of value, to which he was not entitled and which he must restore. There must also be some operative act, intent, or situation to make the enrichment unjust and compensable."

*Dews v. Halliburton Indus., Inc., 708 S.W.2d 67, 69 (Ark. 1986).* California

"The elements for a claim of unjust enrichment: receipt of a benefit and unjust retention of the benefit at the expense of another."

*Lectrodryer v. SeoulBank, 77 Cal. App. 4th 723, 726 (2000).* Colorado

To recover restitution in a claim of unjust enrichment, a plaintiff must demonstrate (1) that a benefit was conferred on the defendant by the plaintiff, (2) that the benefit was appreciated by the defendant, and (3) that the benefit was accepted by the defendant under such circumstances that it would be inequitable for it to be retained without payment.

*Dove Valley Bus. Park Assocs. v. Bd. of County Comm'rs, 945 P.2d 395, 403 (Colo. 1997)* (quotation marks omitted).  Connecticut

"The elements of unjust enrichment are well established. Plaintiffs seeking recovery for unjust enrichment must prove (1) that the defendants were benefited, (2) that the defendants unjustly did not pay the plaintiffs for the benefit, and (3) that the failure of payment was to the plaintiffs' detriment."

*Ayotte Bros. Constr. Co. v. Finney, 680 A.2d 330, 332 (Conn. App. Ct. 1996)* (quotation marks omitted). Delaware

"Unjust enrichment is defined as the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience."

108 W. Va. L. Rev. 395, *432

*Fleer Corp. v. Topps Chewing Gum, Inc.*, 539 A.2d 1060, 1062 (Del. 1988) (quotation marks omitted). Florida

The elements of a cause of action for unjust enrichment are: 1) the plaintiff conferred a benefit on the defendant, who has knowledge of the benefit, 2) the defendant accepts and retains the conferred benefit, and 3) under the circumstances it would be inequitable for the defendant to retain the benefit without paying for it.

*Duncan v. Kasim, Inc.*, 810 So. 2d 968, 971 (Fla. Dist. Ct. App. 2002). Georgia

"Unjust enrichment applies when as a matter of fact there is no legal contract. . ., but when the party sought to be charged has been conferred a benefit by the party contending an unjust enrichment which the benefited party equitably ought to return or compensate for."

*Engram v. Engram*, 463 S.E.2d 12, 15 (Ga. 1995) (quotation marks omitted). Hawaii

It is a truism that a person confers a benefit upon another if he gives to the other possession of or some other interest in money, land, chattels, or choses in action, . . . or in any way adds to the other's security or advantage. [Citation omitted] One who receives a benefit is of course enriched, and he would be unjustly enriched if its retention would be unjust.

*Small v. Badenhop*, 701 P.2d 647, 654 (Haw. 1985). Idaho

In order to establish the prima facie case for unjust enrichment, the plaintiff must show that there was: (1) a benefit conferred upon the defendant by the plaintiff; (2) appreciation by the defendant of such benefit; and (3) acceptance of the benefit under circumstances that would be inequitable for the defendant to retain the benefit without payment to the plaintiff of the value thereof.

*King v. Lang*, 42 P.3d 698, 703 (Idaho 2002). Illinois

"The theory of unjust enrichment is based on a contract implied in law. To recover under this theory, plaintiffs must show that defendant voluntarily accepted a benefit which would be inequitable for him to retain without payment."

*People ex rel. Hartigan v. E & E Hauling, Inc.*, 607 N.E.2d 165, 177 (Ill. 1992). Indiana

"To prevail on a claim of unjust enrichment, a plaintiff must establish that a measurable benefit has been conferred on the defendant under such circumstances that the defendant's retention of the benefit without payment would be unjust."

*Bayh v. Sonnenburg*, 573 N.E.2d 398, 408 (Ind. 1991). Iowa

Recovery based on unjust enrichment can be distilled into three basic elements of recovery. . . . They are: (1) defendant was enriched by the receipt of a benefit; (2) the enrichment was at the expense of the plaintiff; and (3) it is unjust to allow the defendant to retain the benefit under the circumstances.

*State ex rel. Palmer v. Unisys Corp.*, 637 N.W.2d 142, 154-55 (Iowa 2001). Kansas

The basic elements on a claim based on a theory of unjust enrichment are threefold: (1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge of the benefit by the defendant; and (3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value.

*J.W. Thompson Co. v. Welles Products Corp., 758 P.2d 738, 745 (Kan. 1988).* Kentucky

"A person is enriched if he has received a benefit . . . . A person is unjustly enriched if the retention of the benefit would be unjust."

*Bryan Bros. Packing Co. v. Garrard, 386 S.W.2d 469, 474 (Ky. Ct. App. 1964)* (quotation marks omitted). Louisiana

The five requirements for a showing of unjust enrichment or action de in rem verso are: (1) there must be an enrichment; (2) there must be an impoverishment; (3) there must be a connection between the enrichment and the resulting impoverishment; (4) there must be an absence of "justification" or "cause" for the enrichment and impoverishment; and (5) there must be no other remedy at law available to plaintiff.

Hartmann v. Bank of Louisiana, No. 95- *C-3058, 1997 La. LEXIS 3262,* at *34 (Oct. 31, 1997).  Maine

To establish a claim for unjust enrichment, three elements must be proved:

[One,] a benefit conferred upon the defendant by the plaintiff; [two,] an appreciation or knowledge by the defendant of the benefit; and [three,] the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value.

*Bowden v. Grindle, 651 A.2d 347, 350 (Me. 1994)* (quotation marks omitted).  Maryland

This Court has defined unjust enrichment as constituting three elements:

1. A benefit conferred upon the defendant by the plaintiff;

2. An appreciation or knowledge by the defendant of the benefit; and

3. The acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value.

*Berry & Gould, P.A. v. Berry, 757 A.2d 108, 113 (Md. 2000)* (quotation marks omitted).  Massachusetts

Three elements must be established in order that a plaintiff may establish a claim based on unjust enrichment. These elements are: 1) A benefit conferred upon the defendant by the plaintiff; 2) An appreciation or knowledge by the defendant of the benefit; and 3) The acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value.

108 W. Va. L. Rev. 395, *432

*Dickens-Berry v. Greenery Rehabilitation & Skilled Nursing Ctr., No. 92-3189, 1993 Mass. Super. LEXIS 57,* at *10 n.6 (Oct. 29, 1993).  Michigan

"The essential elements of a quasi contractual obligation, upon which recovery may be had, are the receipt of a benefit by a defendant from a plaintiff, which benefit it is inequitable that the defendant retain."

*Michigan Educ. Employees Mut. Ins. Co. v. Morris, 596 N.W.2d 142, 151 (Mich. 1999)* (quotation marks omitted).  Minnesota

"The elements of an unjust enrichment claim include: (1) a benefit conferred; (2) the defendant's appreciation and knowing acceptance of the benefit; and (3) the defendant's acceptance and retention of the benefit under such circumstances that it would be inequitable for him to retain it without paying for it."

*Fimon v. Kenroc Drywall Supplies Inc., No. C7-02-1588, 2003 Minn. App. LEXIS 311,* at *11 (Mar. 18, 2003).  Mississippi

The elements of a quasi-contract are: 1) a benefit conferred upon the defendant by the plaintiff, 2) appreciation by the defendant of the fact of such benefit, 3) acceptance and retention by the defendant of the benefit, under circumstances such that it would be inequitable to retain the benefit without payment of its value.

*Milliken & Michaels, Inc. v. Fred Netterville Lumber Co., 676 So. 2d 266, 271 (Miss. 1996).* Missouri

Quantum meruit is a remedy for the enforcement of a quasi-contractual obligation and is generally based on the principle of unjust enrichment. [Citation omitted.] The essential elements of a quasi-contract or quantum meruit claim are (1) benefit conferred by one party on another, (2) appreciation or recognition by the receiving party of the fact that what was conferred was a benefit, and (3) acceptance and retention of the benefit in circumstances that would render that retention inequitable.

*Lucent Techs., Inc. v. Mid-West Elecs., Inc., 49 S.W.3d 236, 241 (Mo. Ct. App. 2001)* (quotation marks omitted).  Montana

[Unjust enrichment] is defined as the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience. A person is enriched if he has received a benefit, and he is unjustly enriched if retention of the benefit would be unjust. Unjust enrichment of a person occurs when he has and retains money or benefits[,] which in justice and equity belong to another.

*Lawrence v. Clepper, 865 P.2d 1150, 1156 (Mont. 1993).* Nebraska

A quasi contract is a contract implied in law and usually has its origin in the principle that a person shall not be allowed to enrich himself unjustly at the expense of another. [Citation omitted] Where benefits have been received and retained under such circumstances that it would be inequitable and unconscionable to permit the party receiving the benefits to avoid payment therefor, the law requires the party receiving and retaining the benefits to pay the reasonable value of them.

*Bush v. Kramer, 173 N.W.2d 367, 369 (Neb. 1969).* Nevada

"This court has observed that the essential elements of unjust enrichment are a benefit conferred on the

defendant by the plaintiff, appreciation by the defendant of such benefit, and acceptance and retention by the defendant of such benefit."

*Topaz Mut. Co. v. Marsh, 839 P.2d 606, 613 (Nev. 1992)* (quotation marks omitted).  New Hampshire

The doctrine of unjust enrichment is that one shall not be allowed to profit or enrich himself at the expense of another contrary to equity. While it is said that a defendant is liable if "equity and good conscience" requires, this does not mean that a moral duty meets the demands of equity. There must be some specific legal principal or situation which equity has established or recognized, to bring a case within the scope of the doctrine.

*Cohen v. Frank Developers, Inc., 389 A.2d 933, 937 (N.H. 1978)* (quotation marks omitted).  New Jersey

To establish unjust enrichment, a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust. [Citations omitted] The unjust enrichment doctrine requires that plaintiff show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights.

*VRG Corp. v. GKN Realty Corp., 641 A.2d 519, 526 (N.J. 1994)* (quotation marks omitted).  New Mexico

"Unjust enrichment exists when one party knowingly benefits at another's expense and allowing that party to retain the benefit would be unjust."

*Romero v. The Bank of the Southwest, 83 P.3d 288, 296 (N.M. Ct. App. 2003).* New York

The essential inquiry in any action for unjust enrichment or restitution is whether it is against equity and good conscience to permit the defendant to retain what is sought to be recovered. [Citations omitted] Such a claim is undoubtedly equitable and depends upon broad considerations of equity and justice. [Citation omitted] Generally, courts will look to see if a benefit has been conferred on the defendant under mistake of fact or law, if the benefit still remains with the defendant, if there has been otherwise a change of position by the defendant, and whether the defendant's conduct was tortious or fraudulent.

*Paramount Film Distrib. Corp. v. State, 285 N.E.2d 695, 698 (N.Y. 1972).* North Carolina

"In order to establish a claim for unjust enrichment, a party must have conferred a benefit on the other party."

*Booe v. Shadrick, 369 S.E.2d 554, 556 (N.C. 1988).* North Dakota

"The essential element in recovering under a theory of unjust enrichment is the receipt of a benefit by the defendant from the plaintiff which would be inequitable to retain without paying for its value."

*Zuger v. N.D. Ins. Guar. Ass'n, 494 N.W.2d 135, 138 (N.D. 1992).* Ohio

This court has observed that liability in quasi-contract arises out of the obligation cast by law upon a person in receipt of benefits which he is not justly entitled to retain . . . . The court of appeals in this case listed the elements of quasi-contract as follows: (1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by

the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment (unjust enrichment).

*Hambleton v. R.G. Barry Corp., 465 N.E.2d 1298, 1302 (Ohio 1984)* (quotation marks omitted).  Oklahoma

"In order to recover on grounds of unjust enrichment, Plaintiffs must prove not only that OXY is responsible for contaminating the property, but also that the contamination will not be abated, and that defendant in fact has received an economic benefit thereby."

*N.C. Corff Partnership v. OXY USA, Inc., 929 P.2d 288, 295 (Okla. Civ. App. 1996).* Oregon

"To establish unjust enrichment, plaintiff must offer evidence that (1) plaintiff conferred a benefit on defendant; (2) defendant was aware that it had received a benefit; and (3) under the circumstances it would be unjust for defendant to retain the benefit without paying for it."

*Volt Servs. Group v. Adecco Employment Servs., Inc., 35 P.3d 329, 337 (Or. Ct. App. 2001).* Pennsylvania

"The elements of unjust enrichment are benefits conferred on defendant by plaintiff, appreciation of such benefits by defendant, and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value."

*AmeriPro Search, Inc. v. Fleming Steel Co., 787 A.2d 988, 991 (Pa. Super. Ct. 2001)* (quotation marks omitted).  Rhode Island

To recover under quasi-contract for unjust enrichment, a plaintiff must prove three elements. First, a benefit must be conferred upon the defendant by the plaintiff. Second, there must be an appreciation by the defendant of such benefit. Finally, there must be an acceptance of such benefit under such circumstances that it would be inequitable for him to retain the benefit without paying the value thereof.

*R & B Elec. Co. v. Amco Constr. Co., 471 A.2d 1351, 1355-56 (R.I. 1984).* South Carolina

This Court has recognized quantum meruit as an equitable doctrine to allow recovery for unjust enrichment. [Citation omitted] Absent an express contract, recovery under quantum meruit is based on quasi-contract, the elements of which are: (1) a benefit conferred upon the defendant by the plaintiff; (2) realization of that benefit by the defendant; and (3) retention by the defendant of the benefit under conditions that make it unjust for him to retain it without paying its value.

*Columbia Wholesale Co. v. Scudder May N.V., 440 S.E.2d 129, 130 (S.C. 1994).* South Dakota

"In order to establish unjust enrichment, three elements must be proven: (1) a benefit was received; (2) the recipient was cognizant of that benefit; and (3) the retention of the benefit without reimbursement would unjustly enrich the recipient."

*Mack v. Mack, 613 N.W.2d 64, 69 (S.D. 2000).* Tennessee

"The essential elements of quasi contract are: A benefit conferred upon the defendant by the plaintiff, appreciation by the defendant of such benefit, and acceptance of such benefit under such circumstances that it

108 W. Va. L. Rev. 395, *432

would be inequitable for him to retain the benefit without payment of the value thereof."

*Paschall's, Inc. v. Dozier, 407 S.W.2d 150, 155 (1966).* Texas

To recover under quantum meruit a claimant must prove that:

(1) valuable services were rendered or materials furnished;

(2) for the person sought to be charged;

(3) which services and materials were accepted by the person sought to be charged, used and enjoyed by him;

(4) under such circumstances as reasonably notified the person sought to be charged that the plaintiff in performing such services was expecting to be paid by the person sought to be charged.

*Vortt Exploration Co. v. Chevron U.S.A., Inc., 787 S.W.2d 942, 944 (Tex. 1990).* Utah

In order to prevail on a claim for unjust enrichment, three elements must be met. [Citation omitted] First, there must be a benefit conferred on one person by another. [Citation omitted] Second, the conferee must appreciate or have knowledge of the benefit. [Citation omitted] Finally, there must be the acceptance or retention by the conferee of the benefit under such circumstances as to make it inequitable for the conferee to retain the benefit without payment of its value.

*Desert Miriah, Inc. v. B&L Auto, Inc., 12 P.3d 580, 582 (Utah 2000)* (quotation marks omitted).  Vermont

In order to prevail on a quasi-contract claim, the trial court instructed the jury that plaintiff must prove that (1) a benefit was conferred on defendant; (2) defendant accepted the benefit; and (3) defendant retained the benefit under such circumstances that it would be inequitable for defendant not to compensate plaintiff for its value.

*Center v. Mad River Corp., 561 A.2d 90, 93 (Vt. 1989).* Virginia

To establish a count for unjust enrichment a plaintiff must allege: (1) a benefit conferred on the defendant by the plaintiff; (2) knowledge on the part of the defendant of the conferring of the benefit; and (3) acceptance or retention of the benefit by the defendant in circumstances that render it inequitable for the defendant to retain the benefit without paying for its value.

*Ozberkmen v. Capital Asset Mgmt., Inc., 29 Va. Cir. 18, 22-23 (1992)* (quotation marks omitted). Washington

To establish unjust enrichment, a plaintiff must establish three elements: (1) a benefit conferred upon the defendant by the plaintiff, (2) the defendant's appreciation or knowledge of the benefit, and (3) the defendant's acceptance or retention of the benefit under circumstances that make it inequitable for the defendant to retain the benefit without the payment of its value.

Keil v. Scholten, No. 48051-1- *I, 2002 Wash. App. LEXIS 196,* at *16-17 (Feb. 4, 2002).  West Virginia

"[Quantum meruit] requires as an element of recovery that the services at issue were performed under such circumstances by the individual seeking recovery that he reasonably expected be paid for such services by the person sought to be charged."

*Copley v. Mingo County Bd. of Educ., 466 S.E.2d 139, 145-46 (W. Va. 1995).* Wisconsin

In Wisconsin, an action for unjust enrichment, or quasi contract, is based upon proof of three elements: (1) a benefit conferred on the defendant by the plaintiff, (2) appreciation or knowledge by the defendant of the benefit, and (3) acceptance or retention of the benefit by the defendant under circumstances making it inequitable for the defendant to retain the benefit.

*Watts v. Watts, 405 N.W.2d 303, 313 (Wis. 1987).* Wyoming

A party who is seeking damages on the basis of unjust enrichment must prove four elements:

(1) Valuable services were rendered, or materials furnished,

(2) to the party to be charged,

(3) which services or materials were accepted, used and enjoyed by the party, and

(4)under such circumstances[,] which reasonably notified the party to be charged that the plaintiff, in rendering such services or furnishing such materials, expected to be paid by the party to be charged. Without such payment, the party would be unjustly enriched.

*Boyce v. Freeman, 39 P.3d 1062, 1065 (Wyo. 2002).*

n80 See *Montgomery v. Montgomery, 74 So. 2d 254, 257 (Ala. 1954)* ("A suit for money had and received is in the nature of an equitable action and is maintainable whenever one person has money which ex aequo et bono belongs to another. No privity of contract is necessary between the parties."); *Krossa v. All Alaskan Seafoods, Inc., 37 P.3d 411, 419 (Alaska 2001)* ("When parties to a contract dispute do not have a valid contract, plaintiffs may generally recover in quantum meruit for services rendered."); *Costanzo v. Stewart, 453 P.2d 526, 528 (Ariz. Ct. App. 1969)* (sustaining unjust-enrichment claim where privity between parties didn't exist); *Fite v. Fite, 345 S.W.2d 362, 365 (Ark. 1961)* ("This proposition is elementary. There need be no privity between the parties, or any promise to pay, other than that which results or is implied from one man's having another's money, which he has no right conscientiously to retain." (emphasis in original)); *Fink v. Goodson-Todman Enter., Ltd., 9 Cal. App. 3d 996, 1010 (1970)* ("The function of a quasi contract (despite the somewhat misleading concept of that second word) 'is to raise an obligation in law where in fact the parties made no promise.'" (citation omitted)); *Salzman v. Bachrach, 996 P.2d 1263, 1265 (Colo. 2000)* ("[Unjust enrichment] does not require any promise or privity between the parties."); *P. Carpenter & Sons, Inc. v. Hanson, No. 92 0125511, 1993 Conn. Super. LEXIS 662,* at *5-6 (Mar. 23 1993)* ("Since the complaint does not allege the filing of a mechanic's lien, unjust enrichment or quantum meruit, but relies solely on breach of contract, defendant Ness' motion for summary judgment is granted, as there is clearly no privity of contract between the plaintiff and the movant."); *Galvagna v. Marty Miller Constr., No. 96 L-01-015, 1997 Del. Super. LEXIS 458,* at *10 (Sept. 19, 1997)* (quantum meruit

108 W. Va. L. Rev. 395, *432

claim sustained despite lack of privity between the parties); *First State Bank of Fort Meade v. Singletary, 169 So. 407, 408 (Fla. 1936)* ("When the fact is proved that one has money received from another, if the recipient cannot show a legal and equitable ground for retaining it, the law creates the privity and promise necessary to sustain the action for money had and received."); *Taylor v. Powertel, Inc., 551 S.E.2d 765, 770 (Ga. Ct. App. 2001)* ("An action for money had and received sounds in assumpsit and grows out of privity of contract, express or implied; but absent an actual contractual relationship, the law will imply a quasi contractual relationship to support the action."); *Brown v. Judd, 17 Haw. 601, 603 (1906)* ("The obligation, when there is no privity, is sometimes called a quasi contract but strictly speaking is not a contract at all, for it may arise not only without the assent of the person obligated but even against his express repudiation of any obligation."); *Idaho Lumber, Inc. v. Buck, 710 P.2d 647, 655 (Idaho Ct. App. 1985)* ("Where a materialman or subcontractor furnishes labor and materials which benefit the property of a person with whom there is no privity of contract, an action on quantum meruit may lie against the landowner to recover the reasonable value of said labor and materials so furnished."); *Sobel v. Franks, 633 N.E.2d 820, 829 (Ill. App. Ct. 1994)* ("There is no duty or privity requirement when bringing a claim for unjust enrichment."); *State v. Mutual Life Ins. Co., 93 N.E. 213, 219 (Ind. 1910)* ("In an action for money had and received there need be no privity of contract proved."); *Alpen v. Chapman, 179 N.W.2d 585, 588 (Iowa 1970)* ("'There need be no privity of contract alleged or proved, other than such as arises out of the fact that the defendant has received the plaintiff's money, which in equity and good conscience he ought not to retain.'"); *Haz-Mat Response, Inc. v. Certified Waste Servs., Ltd., 910 P.2d 839, 847 (Kan. 1996)* ("Our past cases establish that recovery under quasi-contract or unjust enrichment is not prohibited simply because the subcontractor and the owner of the property are not in privity. This conclusion is consistent with the theory of quasi-contract and unjust enrichment, which does not depend on privity."); *Guarantee Elec. Co. v. Big Rivers Elec. Corp., 669 F. Supp. 1371, 1380 n.9 (W.D. Ky. 1987)* ("A lack of privity of contract is a prerequisite to the initiation of an action in quantum meruit."); *Vandervoort v. Levy, 396 So.2d 480, 485 (La. Ct. App. 1981)* ("As noted previously, the absence of a contract is one of the prerequisites to recovery in unjust enrichment. Rather than serving to preclude Allain's recovery, the lack of privity is an essential element of the actio de in rem verso."); *Aladdin Elec. Assocs. v. Town of Old Orchard Beach, 645 A.2d 1142, 1144 (Me. 1994)* ("Lack of privity of contract and failure to perfect a lien do not bar an action for unjust enrichment."); *Plitt v. Greenberg, 219 A.2d 237, 241 (Md. 1966)* ("Plitt . . . does possess a colorable cause of action grounded on a theory of unjust enrichment or restitution. . . . Where no express contract for debt existed between Plitt and Greenberg, the law implies a debt. . . ."); *Rabinowitz v. People's Nat'l Bank, 126 N.E. 289, 290 (Mass. 1920)* (In an action for money had and received, "the right to recover does not depend upon privity of contract, but on the obligation to restore that which the law implies should be returned, where one is unjustly enriched at another's expense."); *Quality Prods. & Concepts Co. v. Nagel Precision, Inc., No. 207538, 2000 Mich. App. LEXIS 2469*, at *16 n.6 (Mar. 21, 2000) ("A quasi contract is not a contractual obligation in the true sense because there is no agreement; it is an obligation that does not require privity, and that will be imposed by law even though it is clear that no promise was ever made or intended.") (quoting 42 CJS § 4, Implied and Constructive Contracts (1991)); *Olson v. Synergistic Techs. Bus. Sys., Inc., 628 N.W.2d 142, 150 n.4 (Minn. 2001)* ("A quasi contract does not require a promise or privity between the parties."); *Delta Constr. Co. v. City of Jackson, 198 So. 2d 592, 600 (Miss. 1967)* (Where privity between the parties exists, "no recovery can be had on an implied contract, or quasi contract, or upon quantum meruit. . . ."); *Karpierz v. Easley, 68 S.W.3d 565, 570 (Mo. Ct. App. 2002)* (In a suit for money had and received, "it is not necessary that an express promise to pay or privity of contract be pleaded or shown, for the law implies both.") (quoting *Brandkamp v. Chapin, 473 S.W.2d 786, 788 (Mo. Ct. App. 1971)); McDonald v. Am. Nat'l Bank, 65 P. 896, 906 (Mont. 1901)* ("No privity of contract between the parties is necessary to sustain the action, except that which results from the possession by the defendant of the money which in equity belongs to the plaintiff."); *Siebler Heating & Air Conditioning, Inc. v. Jenson, 326 N.W.2d 182, 184 (Neb. 1982)* ("For a quasi-contract neither promise nor privity, real or imagined, is necessary.") (quoting *66 Am.Jur.2d Restitution and Implied Contracts* § 2 at 943-44 (1973)); *Smith v. Hamilton, 265 P.2d 214, 216 (Nev. 1953)* ("No further privity is required than that which results from the having by one person of another's money, which he has no right conscientiously to keep, as in such cases the law implies a promise that he will pay it over."); *Knapp v. Hobbs, 50 N.H. 476, 478 (1871)* ("There need be no other privity of contract in order to

support this action than that which results from one man's receiving another's money which he has no right conscientiously to retain."); *Edwin J. Dobson, Jr., Inc. v. Rutgers, State Univ., 384 A.2d 1121, 1157 (N.J. Super. Ct. Law Div. 1978)* ("Dobson, even on this claim, asserted no claim against Briscoe, not even on unjust enrichment which does not require privity of contract." (quotation marks omitted)); *Ontiveros Insulation Co. v. Sanchez, 3 P.3d 695, 698-99 (N.M. 2000)* ("[Unjust enrichment] has evolved largely to provide relief where, in the absence of privity, a party cannot claim relief in contract and instead must seek refuge in equity."); *Manufacturers Hanover Transp. Co. v. Chem. Bank, 160 A.D.2d 113, 117 (N.Y. App. Div. 1990)* (In an unjust-enrichment claim, "it does not matter whether the benefit is directly or indirectly conveyed."); *Bailey v. Bishop, 67 S.E. 968, 969 (N.C. 1910)* (privity not required to maintain quasi contract claim); *Gate City Sav. & Loan Ass'n v. IBM Corp., 213 N.W.2d 888, 893 (N.D. 1973)* ("Want or privity between parties is no obstacle to recovery under quasi contract. . . ."); *Pioneer Bank v. Flynn, No. CA79-04-0039, 1981 Ohio App. LEXIS 14532,* at * 5 (Sept. 9, 1981) ("The application of this doctrine [unjust enrichment] does not require privity between the parties."); *Berry v. Barbour, 279 P.2d 335, 338 (Okla. 1954)* ("For a quasi contract neither promise nor privity, real or imagined, is necessary."); *Rosenblum v. First State Bank, 581 P.2d 515, 518 (Or. 1978)* ("Privity of the contractual type need not exist between the parties.") (quoting *Smith v. Rubel, 13 P.2d 1078, 1080 (1932));* *McAvoy & McMichael, Ltd. v. Commonwealth Title Ins. & Trust Co., 27 Pa. Super. 271, 277 (1905)* ("No privity of contract is necessary to sustain this action [for assumpsit], for the law, under these circumstances, implies a promise to pay[.]") (quoting 15 Am. & English Encyclopedia. of Law Implied or Quasi Contracts 1096 (2d ed. 1900)); *R&B Elec. Co. v. Amco Constr. Co., 471 A.2d 1351, 1355 (R.I. 1984)* ("One of the theoretical bases underlying the doctrine of quasi-contract states, that for quasi contract neither an actual promise nor privity is necessary." (quotation marks omitted)); *Madden v. Watts, 37 S.E. 209, 210 (S.C. 1900)* ("There need be no privity between the parties, nor any promise to pay other than what arises and is implied from the fact that the defendant has money in his hands belonging to the plaintiff that he has no right conscientiously to retain."); *Anderson v. Dunn, 4 N.W.2d 810, 812 (S.D. 1942)* (Court affirmed ruling that "no proof of privity between the parties in relation to . . . money sought to be recovered [is required] except that which arises by implication of law from the fact that the defendant has money belonging to plaintiff which he has no right conscientiously to retain was required."); *Paschall's, Inc. v. Dozier, 407 S.W.2d 150, 154 (Tenn. 1966)* ("It is well established that want of privity between parties is no obstacle to recovery under quasi contract."); *Miekow v. Faykus, 297 S.W.2d 260, 264 (Tex. Civ. App. 1956)* ("For a quasi contract neither promise nor privity, real or imagined, is necessary. In quasi contracts the obligation arises, not from consent of the parties, as in the case of contracts, express or implied in fact, but from the law of natural immutable justice and equity." (emphasis in original)); *Rapp v. Salt Lake City, 527 P.2d 651, 655 (Utah 1974)* ("[Quasi-contractual] liability exists from an implication of law that arises from the facts and circumstances independent of agreement or presumed intention."); *Beauregard v. Orleans Trust Co., 182 A. 182, 183-84 (Vt. 1936)* ("To maintain this action there need be no privity between the parties nor any promise to pay, other than what arises and is implied from the fact that the defendant has money in his hands belonging to the plaintiff that he has no right conscientiously to retain.") (quoting *State v. Village of St. Johnsbury, 10 A. 531, 533 (Vt. 1887));* *E.E. Lyons Constr. Co. v. TRM Dev. Corp., 25 Va. Cir. 352, 354 (1991)* ("Virginia law appears to follow the majority approach and will allow recovery on a quantum meruit claim by a subcontractor against an owner with whom he lacks contractual privity provided the essential elements of quasi contract are established."); *Mill & Logging Supply Co. v. W. Tenino Lumber Co., 265 P.2d 807, 813 (Wash. 1954)* ("Want of privity between parties is no obstacle to recovery under quasi-contract."); *Dunlap v. Hinkle, 317 S.E.2d 508, 512 n.2 (W.V. 1984)* ("Recovery of damages based upon the theories of quasi contract or unjust enrichment does not necessitate a finding of privity of contract between the parties."); *Puttkammer v. Minth, 266 N.W.2d 361, 366 (Wis. 1978)* ("This court's decisions establish that privity is not necessary for recovery on a theory of unjust enrichment."); *Silver Dollar Motel v. Taylor Elec. Co., 761 P.2d 1006, 1007 (Wyo. 1988)* ("The quantum meruit/unjust enrichments theory is founded on implied contract. . . .").

n81 *Paschall's, Inc. v. Dozier, 407 S.W.2d 150, 154 (Tenn. 1966).*

108 W. Va. L. Rev. 395, *432

n82 *Id. at 155.*

n83 *Id. at 155.*

n84 See, e.g., *Freeman Indus., LLC v. Eastman Chem. Co., 2005 Tenn. LEXIS 668,* *32 (Aug. 25, 2005) ("To recover for unjust enrichment, a plaintiff need not establish that the defendant received a direct benefit from the plaintiff. Rather, a plaintiff may recover for unjust enrichment against a defendant who receives any benefit from the plaintiff if the defendant's retention of the benefit would be unjust." (emphasis in original)); *Beco Constr. Co. v. Bannock Paving Co., 797 P.2d 863, 867 (Idaho. 1990)* (affirming summary judgment on unjust enrichment theory because plaintiff had "conferred no direct or indirect benefit on defendant" (emphasis added)); Cummins Cumberland, Inc. v. Dominion Bank of Middle Tenn., Inc., No. 01- *A-01-9008-CH-00287, 1991 Tenn. App. LEXIS 111,* at *6 (Feb. 15, 1991) (Court recognized that an indirect benefit, if proven, was sufficient to sustain an unjust-enrichment claim but dismissed plaintiff's claim for lack of factual proof: "Plaintiff next argues that the Bank received an indirect benefit . . . but no evidence is cited or found to indicate the amount of financial benefit. . . ." (emphasis added)).

n85 *72 Fed. Appx. 916 (4th Cir. 2003).*

n86 *380 S.E.2d 149 (N.C. Ct. App. 1989).*

n87 *Metric Constructors, Inc. v. Bank of Tokyo-Mitsubishi, Ltd., 72 Fed. Appx. 916, 921 (4th Cir. 2003).*

n88 Id. (emphasis added).

n89 *622 F.2d 1291 (8th Cir. 1980).*

n90 *Id. at 1302.*

n91 *Palmer v. Unisys Corp., 637 N.W.2d 142, 155 (Iowa 2001)* (emphasis added).

n92 *545 N.E.2d 672 (Ill. 1989).*

n93 *Id. at 679* (emphasis added). Accord Fidelity Nat'l Title Ins. Co. of N.Y v. Intercounty Nat'l Title Ins. Co., No. 00 C 5658, *2004 U.S. Dist. LEXIS 7349,* at *10 (N.D. Ill. Apr. 27, 2004); Asch v. Teller, Levit & Silvertrust, 00 C 3290, *2003 U.S. Dist. LEXIS 16747,* at *22 (N.D. Ill. Sept. 26, 2003).

n94 *No. 01-1652, 2004 U.S. Dist. LEXIS 19804* (D.N.J. Sept. 29, 2004).

n95 Id. at *5.

n96 Id. at *70.

108 W. Va. L. Rev. 395, *432

n97 Id. at *72.

n98 Id. at *73.

n99 Id. (emphasis added).

n100 Id.

n101 Id.

n102 *295 F. Supp. 2d 30 (D.D.C. 2003).*

n103 *Id. at 33.*

n104 *Id. at 51.*

n105 Id.

n106 Id. (emphasis added) (quoting *State Farm Gen. Ins. Co. v. Stewart, 681 N.E.2d 625, 633 (Ill. Ct. App. 1997)).*

n107 Id.

n108 *778 N.Y.2d 147 (N.Y. App. Div. 2004).*

n109 *Id. at 148.*

n110 *Id. at 149* (emphasis added).

n111 Id. See also *Manufacturers Hanover Trust Co. v. Chem. Bank, 559 N.Y.2d 704, 708 (N.Y. App. Div. 1990)* ("It does not matter whether the benefit is directly or indirectly conveyed."); Investors Corp. of Vt. v. Bayer AG, No. S1011-040CnC, slip op. at 6 (Vt. Sup. Ct. June 3, 2005) (on file with author) ("The fact that Investors Corporation and the putative class did not deal directly with the defendants is not relevant, as long as the elements for unjust enrichment are pleaded."); New York v. Daicel Chem. Indus., Ltd., No. 403878/2002, slip op. at 26 (N.Y. Co., N.Y. Sup. Ct. Sept. 24, 2004) (on file with author) (Denying motion to dismiss parens patriae unjust enrichment claim for consumer price fixing damages based on defendants' "directness argument," explaining that "the reach of equity is not so short. It suffices that defendants received benefits to which [they were] not entitled that were effectively conferred by plaintiff. . . ." (quotation marks omitted)).

n112 *105 F. Supp. 2d 618 (E.D. Mich. 2001).*

108 W. Va. L. Rev. 395, *432

n113 *Id. at 668.*

n114 *Id. at 623.*

n115 *Id. at 669.*

n116 *Id. at 669-70* (quotation marks omitted).

n117 *Id. at 670-71.* See also *Cox v. Microsoft Corp., 778 N.Y.2d 147, 149 (N.Y. App. Div. 2004)* ("Plaintiffs' allegations that Microsoft's deceptive practices caused them to pay artificially inflated prices for its products state a cause of action for unjust enrichment.").

n118 Despite all arguments to the contrary, should a court nonetheless insist that a direct benefit is required, "direct" in this sense doesn't only mean "next-step" from the seller. Rather, price fixers can also be described as directly benefiting from consumers' overpayments in that these overpayments are always conspiracies' "direct result," and consumers' overpayments create the pool of money that ultimately makes its way "directly" into the price fixers' pockets.

n119 *Paschall's, Inc. v. Dozier, 407 S.W.2d 150, 155 (Tenn. 1966).* See also, *Whitehaven Cmty. Baptist Church v. Holloway, 973 S.W.2d 592, 596 (Tenn. 1998)* (granting summary judgment and dismissing plaintiff's unjust-enrichment claim because he didn't pursue his remedies against the landowner with whom he had directly contracted).

n120 See, e.g., *Window Gallery of Knoxville v. Davis, No. 03 A01-9906-CH-00225, 1999 Tenn. App. LEXIS 775,* at *10 (Nov. 24, 1999) (suggesting exhaustion of remedies satisfied if plaintiff demonstrates that pursuing contracting party "would be futile").

n121 See *Haynes v. Dalton, 848 S.W.2d 664, 665 (Tenn. Ct. App. 1992)* (plaintiff provided office space and overhead to defendant).

n122 See, e.g., *Puttkammer v. Minth, 266 N.W.2d 361, 365 (Wis. Ct. App. 1978)* ("Rather, this case is representative of the usual case in which the [third party] has no part in initiating the work and is merely a passive beneficiary of the work performed at the instance of [the contracting party].")

n123 See Karon, supra note 47.

n124 Id. at 1376-92 (explaining that courts in Louisiana, South Carolina, Montana, Utah, Virginia, and Delaware have not yet adjudicated whether their broadly worded antitrust statutes permit consumer price-fixing claims).

n125 *In re Relafen Antitrust Litig., 221 F.R.D. 260, 284 n.20 (D. Mass. 2004).* See also supra note 48.

n126 *United States v. Lopez, 777 F.2d 543, 554 (10th Cir. 1995).* Accord, *Lambert v. Travelers Fire Ins. Co., 274 F.2d 685, 688 (5th Cir. 1960); Moates v. Barkley, 927 F. Supp. 597, 598-99 (E.D.N.Y. 1996); Webb v. Insur. Co. of N. Am., 581 F. Supp. 244, 249 (W.D. Tenn. 1984); Commercial Carving Co. v. Manhattan Fire & Marine Ins. Co., 191 F. Supp. 753, 760 (M.D.N.C. 1961); Labbe v. Pension Comm'n, 643 A.2d 1268, 1274 (Conn. 1994); State v. Beechum, 833 P.2d 988, 995 (Kan. 1992); Mobile v. Jackson, 474 So. 2d 644, 650 (Ala. 1985); Consumers Power Co. v. Mich. Public Service Comm'n, 327 N.W.2d 875, 893 (Mich. 1982); American Indus. Leasing Co. v. Costello, 418 P.2d 881, 886 (Colo. 1966); Keel v. Indep. Life & Accident Ins. Co., 99 So. 2d 225, 227 (Fla. 1957); Little Rock v. Southwest Builders, Inc., 276 S.W.2d 679, 685 (Ark. 1955); Williams v. Home Fire & Marine Ins. Co.., 157 S.W.2d 845, 847 (Tenn. 1941); Dolliver v. Elmer, 260 N.W. 85, 86 (Iowa. 1935); Kopeyka v. Woodstrom, 137 N.E. 137, 139 (Ill. 1922); Cree v. Sherfy, 37 N.E. 787, 788 (Ind. 1894).*

n127 See, e.g., *Whitehaven Cmty. Baptist Church v. Holloway, 973 S.W.2d 592, 596 (Tenn. 1998)* (granting summary judgment and dismissing plaintiff's unjust-enrichment claim because he didn't pursue his remedies against the landowner with whom he had directly contracted).

n128 See, e.g., *Delahunt v. Cytodyne Techs., 241 F. Supp. 2d 827, 841 (S.D. Ohio 2003)* ("The equitable claim of unjust enrichment fails when a legal remedy is available."); *United States v. Dieter, No. 01-1435, 2003 U.S. Dist. LEXIS 6391,* at *48 (D. Minn. Apr. 11, 2003) (ruling that "no action for unjust enrichment lies" when "adequate legal remedy" exists); *In re Managed Care Litig., 185 F. Supp. 2d 1310, 1337 (S.D. Fla. 2002)* ("It is blackletter law that 'the theory of unjust enrichment is equitable in nature and is, therefore, not available where there is an adequate legal remedy.'" (quotation marks omitted)); *Lane Constr. Co. v. Brown & Root, Inc., 29 F. Supp. 2d 707, 727 (E.D. Vir. 1998),* rev'd in part on other grounds, *207 F.3d 717 (4th Cir. 2000)* ("It is a well-settled principle under Virginia law that unjust enrichment claims arise only where there is no express contract."); *Inglish v. Prudential Ins. Co. of Am., 928 S.W.2d 702, 706 (Tex. 1996)* ("As with claims of quantum meruit, unjust enrichment claims are predicated on the absence of an express contract controlling the circumstances."); *Cal. Medical Ass'n v. Aetna U.S. Healthcare of Cal., 94 Cal. App. 4th 151, 172 (2001)* ("As a matter of law, a quasi-contract action for unjust enrichment does not lie where, as here, express binding agreements exist and define the parties' rights."). But see *In re Terazosin Hydrochloride Antitrust Litig., 220 F.R.D. 672, 702-03 (S.D. Fla. 2004)* (certifying antitrust and unjust-enrichment claims under Florida law).

n129 See, e.g., *In re Terazosin Hydrochloride Antitrust Litig., 220 F.R.D. at 702-03* (certifying antitrust and unjust-enrichment claims under Florida law); *Ferrell v. Wyeth-Ayerst, Labs., Inc., No. C-1-01-447, 2004 U.S. Dist. LEXIS 15127,* at *19 (S.D. Ohio June 20, 2004) (Cases denying unjust enrichment's applicability "if plaintiff has an 'adequate legal remedy' . . . are based on written contracts, which provide the 'adequate legal remedy' to the aggrieved party.").

n130 McDonald v. BMW of N. Am., No. BER-L-2892-03, slip op. at 38 (Super. Ct. N.J., Law Div., Bergen Co. Aug. 27, 2004) (on file with author).

n131 See Karon, supra note 47.

n132 Id.

n133 S. COMISKEY, SECRETS GOOD LAWYERS [AND THEIR BEST CLIENTS] ALREADY KNOW 90 (1997).

1248JW

```
********** Print Completed **********

Time of Request: Thursday, March 15, 2007  14:06:33 EST

Print Number:   1862:17570286
Number of Lines: 1194
Number of Pages: 34
```

```
Send To:  KARON, DANIEL
          GOLDMAN SCARLATO & KARON
          101 W ELM ST STE 360
          CONSHOHOCKEN, PA 19428-2075
```