## IN THE IOWA DISTRICT COURT FOR POLK COUNTY

| | |
|---|---|
| **ANDERSON CONTRACTING, INC.,**<br><br>    **Plaintiff,**<br>**vs.**<br><br>**BAYER AG; BAYER POLYMERS, LLC n/k/a BAYER MATERIALSCIENCE, LLC; BAYER CORPORATION; CROMPTON CORPORATION; UNIROYAL CHEMICAL CORPORATION, INC. n/k/a CROMPTON MANUFACTURING COMPANY, INC.; THE DOW CHEMICAL COMPANY; EI DUPONT DE NEMOURS & COMPANY; DUPONT DOW ELASTOMERS LLC; DSM COPOLYMERS, INC.; DSM ELASTOMERS EUROPE B.V.; and EXXON MOBIL CHEMICAL CORPORATION d/b/a EXXON MOBIL, INC.,**<br><br>    **Defendants.** | **Case No. CL 95959**<br><br><br>**RULING ON PLAINTIFF'S MOTION FOR CLASS CERTIFICATION** |

The Court held a contested hearing on Plaintiff's Motion for Class Certification on December 1, 2006. Defendants Chemtura Corporation (f/k/a Crompton), Uniroyal Chemical Company, Inc., DSM Copolymer, Inc., and ExxonMobil Chemical Company submitted a combined resistance to Plaintiff's motion. All parties appeared through their respective counsel. After carefully considering the documents and evidence filed by the parties, this Court enters the following ruling:

CLERK DISTRICT COURT

2007 MAR 19 PM 4: 13

POLK COUNTY, IA.
FILED

1

## RULING

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Anderson Contracting, Inc. is an Iowa corporation, engaged in contract roofing work in the State of Iowa. Defendants are numerous business entities incorporated in various states and countries. During the relevant time period, Defendants manufactured, marketed and/or distributed a synthetic rubber, known as ethylene propylene diene monomer ("EPDM"), throughout the United States. EPDM is one of several dozen synthetic rubbers that are similar in appearance. Direct purchasers of EPDM typically process the EPDM into a variety of value-added products which they then resell. EPDM is used extensively in the automobile and roofing industries, but is found in a multiplicity of other products.

Plaintiff was an indirect purchaser of various products containing EPDM, during the period of January 1, 1994 to December 2002. In its Second Amended and Substituted Class Action Petition,[1] Plaintiff alleges Defendants engaged in a conspiracy to fix the price of EPDM sold in the United States and elsewhere. Specifically, Plaintiff asserts that Defendants regularly increased prices for EPDM in a coordinated manner close in time and amounts.

Plaintiff argues that Defendants' actions violated chapter 553 of the Iowa Code, the Iowa Competition Law. Plaintiff alleges that Defendants and co-conspirators effectuated their conspiracy by participating in meetings and conversations to discuss the prices of EPDM and EPDM customers and/or markets, agreeing during those meetings and conversations to charge prices at certain levels and otherwise increase or maintain prices of EPDM sold in the United States and elsewhere, and allocating markets and

---

[1] On May 2, 2005, this Court granted Plaintiff's Motion to File Second Amended and Substituted Petition.

customers for the sale of EPDM pursuant to the agreements. As a result of this alleged conspiracy, Plaintiff contends it paid substantially higher prices for products containing EPDM than it would have paid absent the alleged conspiracy and restraint. Plaintiff filed a request for class action certification, which would allow it to represent other individuals presently unknown to Plaintiff who have been similarly harmed by Defendants' alleged price fixing.

Additional relevant facts will be addressed below as necessary.

## STANDARD OF REVIEW

District Courts are vested with broad discretion in determining whether to grant class certification. *Stone v. Pirelli Armstrong Tire Corp.*, 497 N.W.2d 843, 845 (Iowa 1993). Iowa Rules of Civil Procedure governing class actions should be liberally construed and "the policy should favor the maintenance of class actions." *Lucas v. Pioneer, Inc.*, 256 N.W.2d 167, 176 (Iowa 1977) (citations omitted); *see also* Iowa R. Civ. P. 1.261-1.279; *Comes v. Microsoft Corp.*, 696 N.W.2d 318, 320 (Iowa 2005) (hereinafter "*Comes II*"). Nevertheless, the representative party or the named plaintiff has the burden of proving all the prerequisites to certify a class action. *Stone*, 497 N.W.2d at 846. "A failure of proof on any one of the prerequisites is fatal to a class action certification." *Id.* "Except where the facts underlying the class are merely speculative, however, the proponent's burden is light." *City of Dubuque v. Iowa Trust*, 519 N.W.2d 786, 791 (Iowa 1994). After a class has been certified, the district court may decertify it if circumstances so require. *Comes II*, 696 N.W.2d at 320 (citing *Vos v. Farm Bureau Life Ins. Co.*, 667 N.W.2d 36, 46 (Iowa 2003)).

## CONCLUSIONS OF LAW AND ANALYSIS

Plaintiff is requesting that this Court certify a class consisting of persons who were indirect purchasers of EPDM in Iowa. Indirect purchasers are those parties to whom Defendants did not directly sell their products, but who ultimately obtained the products through the stream of commerce. *Comes II*, 696 N.W.2d at 320. Plaintiffs seek to define the class as "[a]ll persons who indirectly purchased Defendants' EPDM in the State of Iowa, other than for resale, from January 1994 through December 2002." *Plaintiff's Brief*, p. 7. Specifically excluded from the proposed class are "Defendants; any entity in which Defendants have a controlling interest; any employees, officers or directors of Defendants; legal representatives, successors or assigns of Defendants; any judicial officer who may hear the case and such judicial officer's related persons; any juror or such juror's related persons." *Id.* Plaintiffs do not seek to establish any subclasses and only seek class certification on their claim under Iowa Code section 553.

According to the Iowa Rules of Civil Procedure:

The court may certify an action as a class action, if it finds all of the following:
(a) The requirements of rule 1.261 have been satisfied.
(b) A class action should be permitted for the fair and efficient adjudication of the controversy.
(c) The representative parties fairly and adequately will protect the interests of the class.

Iowa R. Civ. P. 1.262(2). Therefore, the mandatory prerequisites for class certification are as follows: (1) the requirements of rule 1.261 (numerosity and commonality); (2) the certification would allow for *fair and efficient adjudication of the controversy*, which is determined by examining the several factors encompassed in Iowa R. Civ. P. 1.263; and (3) the representative parties *fairly and adequately will protect the interests of the class.*

4

*See id.* 1.261-1.263. It is important to recognize, however, that the Court's determination on class certification will not be influenced by strength of the merits underlying the Plaintiff's claims. *See Martin v. Amana Refrigeration, Inc.*, 435 N.W.2d 364, 367 (Iowa 1989) (citing *Vignaroli v. Blue Cross of Iowa,* 360 N.W.2d 741, 745 (Iowa 1985)).

1.    ***Iowa Rule 1.261 Requirements***

First, the requirements set out in rule 1.261 must be met. Specifically, rule 1.261 requires: (1) the class be "so numerous or so constituted that joinder of all the members, whether or not otherwise required or permitted, is impracticable;" and (2) "[t]here is a question of law or fact common to the class." Iowa R. Civ. P. 1.261(1)-(2).

A. *Impracticability Based on Numerosity*

Generally, Iowa has adopted the rule that numbers alone may be dispositive to show impracticability. *See City of Dubuque*, 519 N.W.2d at 792 (citations omitted). "Forty or more class members has been recognized as the range within which impracticability of joinder has been presumed." *Id.* (citations omitted). "Any doubts regarding joinder impracticability should be resolved in favor of upholding the class." *Id.* (citation omitted). It is important to note, however, that the sole inquiry on this fact is whether the class is so numerous that joinder is impracticable; not whether the class definition is too broad.

In the case at bar, Plaintiff believes that the class consists of thousands of members. Defendants have conceded that the numerosity requirement has been met in this case. Therefore, the Court will not belabor its analysis and finds Plaintiffs have met their burden in establishing impracticability of joinder.

B. *Commonality*

This prerequisite requires that there be a common question of law or fact to the class. Iowa R. Civ. P. 1.261(2). "It is not necessary that the individual claims be carbon copies of each other." *Vignaroli*, 360 N.W.2d at 745. Despite variations of individual claims, a class action may nevertheless proceed where the theories include common issue of fact and law. *Id.* Again, Defendants in the present action do not contest that this requirement has been shown and it is clear that all class members would have a common question of law as to whether Defendants' alleged conduct amounted to a violation of the Iowa Competition Law. These circumstances fulfill the commonality requirement of rule 1.261(2). Therefore, Plaintiffs have satisfied all the requirements of rule 1.261.

### 2. *Fair and Efficient Adjudication*

Rule 1.262(2)(b) requires the Court to find that a class action will promote a fair and efficient adjudication of the controversy. Such a nebulous requirement finds direction under rule 1.263. According to rule 1.263, "[i]n determining whether the class action should be permitted for the fair and efficient adjudication of the controversy . . . the court shall consider, and give appropriate weight to, the following and other relevant factors . . . ." Iowa R. Civ. P. 1.263(1) (listing thirteen factors to be considered).

> [T]he criteria to be considered have two broad considerations: achieving judicial economy by encouraging class litigation while preserving, as much as possible, the rights of litigants—both those presently in court and those who are only potential litigants. No weight is required by the rule to be assigned by the trial court to any criteria listed, further evidencing an intent to grant considerable discretion to the trial court.

*Vignaroli*, 360 N.W.2d at 744. "'In most cases some of the thirteen factors [regarding the fair-and-efficient-administration-of-justice test] will weigh against certification and some will weigh in favor.'" *Comes II*, 696 N.W.2d at 322 (quoting *Howe v. Microsoft Corp.*, 656 N.W.2d 285, 289 (N.D. 2003)).

6

There is no set number of factors which must weigh in one direction or another. It is this Court's duty to weigh those competing factors and determine whether a class action will provide a fair and efficient adjudication of the controversy. *Id.* (citation omitted). This analysis may, for instance, allow two factors to outweigh the remaining eleven depending on their relevancy to the case. The Court is not required to make written findings under rule 1.263. The rule only requires that the Court weigh and consider the factors and come to a reasoned conclusion as to whether a class action should be permitted for a fair adjudication of the controversy. *City of Dubuque*, 519 N.W.2d at 791. Nonetheless, the Court believes it necessary to address the relevant factors of rule 1.263 below.

A.   *Joint or Common Interest.*

The Court has already established through its analysis in Part 1B that there are some areas in which common questions of law or fact exist. *See supra* Part 1.B. The Court believes this determination also supports the factor of whether a joint or common interest exists among the members of the class. *See* Iowa R. Civ. P. 1.263(1)(a). Furthermore, all parties concede that this factor weighs in favor of a fair and efficient adjudication.

B.   *Risk of Inconsistent or Varying Adjudications.*

The Court does not foresee the prosecution of separate actions creating a risk of inconsistent or varying adjudications with respect to individual Plaintiffs. *See id.* 1.263(1)(b). "Inconsistent or varying adjudications" do not include the simple case where two individuals sue the same defendant for the same relief and one wins and the other loses. Rather, it is where two individuals are suing the same defendants for

7

different and incompatible relief. *Trecker v. Manning Implement, Inc.*, 73 F.R.D. 554, 560 (N.D. Iowa 1976) (interpreting identical language under the Federal Rules of Civil Procedure). Thus, in order for there to be a risk of varying adjudications, there must be different parties attempting to impose different standards of conduct upon the party opposing the class. Under the circumstances as they currently exist, the Court sees no danger of this occurring, and the parties have not pointed to any other similar cases pending in the State of Iowa.

C.     *Whether Individual Adjudications Would Affect Other Members Interests.*

The Court also does not perceive potential adjudications of individual claims as impairing or impeding other plaintiffs' abilities to protect their interests. *See id.* 1.263(1)(c). Common situations where impairment may occur are where individual suits against a defendant or fund will deplete the assets as to other plaintiffs, where injunctions secured by one members of a class may disable an opposing party from performing claimed duties toward other members, or where adjudications would estop other plaintiffs from protecting their interests. The potential plaintiffs in this case appear not associated, nor are their grounds for relief contingent upon the other class members. Furthermore, it does not appear that individual plaintiffs would be precluded from being awarded damages from Defendants based on prior individual litigation. While the Court confers little weight to this factor, it does weigh in favor of denying certification.

D.     *Party Opposing the Class Acted on Grounds Generally Applicable to the Class, Making Relief Appropriate with Respect to the Class as a Whole.*

Both parties agree that this factor is not applicable or relevant to the Court's analysis in this case. Accordingly, the Court gives no weight to this factor either in support or opposition of class certification.

E.     *Whether Common Questions of Law or Fact Predominate Over Any Questions Affecting Only Individual Members.*

The Court has previously determined that some common questions of law and fact exist in this case. However, the Court must also look to whether those common questions predominate over any questions affecting only individual members. Iowa R. Civ. P. 1.263(1)(e). *Comes II* made clear that this predominance factor is not a condition precedent and is merely one of the thirteen factors for the court to consider. *Comes II*, 696 N.W.2d at 322. Moreover, "predominant" is not necessarily equated with "determinative" or "significant." *Vignaroli*, 360 N.W.2d at 745. In fact, a claim will satisfy the predominance requirement when generalized evidence exists, which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual position. *Vos*, 667 N.W.2d at 45 (citation omitted). Ultimately, the objective is to avoid trials that, as class actions, "would spend more time delving into individual questions of fact . . . than examining questions common to the entire class." *Id.* at 54-55.

In the present case, it is clear that while there are obvious factual differences in the way potential plaintiffs acquired products containing EPDM, the claims asserted are not individualized based on the underlying premise of the claim, which is price-fixing. Similar to *Comes II*, Plaintiffs must prove that Defendants violated the Iowa antitrust law, and this violation caused class members to suffer identifiable harm and damages. *See* Iowa Code § 553.12 (requiring: (1) the existence of an antitrust conspiracy; (2) injury to the plaintiff that flows from the unlawful conduct; and (3) an amount of damages). In addition, to bypass the statute of limitations, Plaintiffs must prove that the defendants fraudulently concealed the alleged conspiracy. It is not required, however, that as a class

9

plaintiffs "show there will be common proof on each element of the claim. Rather, [the Iowa Supreme Court has] repeatedly noted that the existence of individual issues is not necessarily fatal to class certification." *Comes II*, 696 N.W.2d at 322 (citing *Howe*, 656 N.W.2d at 289).

The most contentious elements of Plaintiff's antitrust claim are injury-in-fact and damages. The proposed methods of proving injury-in-fact on a class-wide basis are based on economic theories and models of the Plaintiff's expert. Foremost, the Court wants to make clear that it will not engage in deciding a "battle of the experts" at this stage in the litigation. *See Howe*, 656 N.W.2d at 293. To do so would be making a class certification ruling based on the merits of the case. *See Comes II*, 696 N.W.2d at 325 (rejecting approach that would lead to a class certification decision based on merits of the litigation). The appropriate inquiry is not the strength of each class member's claim, but instead an inquiry into whether they are common complaints and which issues predominate. So long as the Court has sufficient information to form a reasonable judgment on the certification issue, it need not inquire further into the facts supporting the Plaintiffs' petition. *Comes II*, 696 N.W.2d at 324 (citing *City of Dubuque v. Iowa Trust*, 510 N.W.2d 786, 791 (Iowa 1994)). Only in cases where the facts underlying the class are merely speculative will the proponent's burden be more than light. *City of Dubuque*, 519 N.W.2d at 791. An approach of limiting examination of the merits of a case is supported by rule 1.262(1), which provides that courts should determine class certification issues "as soon as practicable after the commencement of a class action." In addition, "a safety net is provided for cases in which certification is improvidently

granted: the court may decertify the class at a later time." *Comes II*, 696 N.W.2d at 324 (citing *Vos*, 667 N.W.2d at 46).

Defendants' primary arguments in resistance to Plaintiff's showing on this factor are that the "class definition is so broad that neither Anderson nor its expert economist can begin to estimate the number of different end products that might be at issue" and that "there is no practical way for Anderson or anyone else to identify the members of the proposed class, let alone propose some common method by which it could be shown on a classwide basis how these members were injured . . . ." *Defendants' Brief*, p. 2. Specific to the factor of predominance, Defendants claim that because there are "'no mathematical calculations or formulate that can be used to determine each putative class member's damages,'" the individual damage determinations will overwhelm the common issues of damages in this case. *Defendants' Brief*, p. 38 (quoting *Keating v. Philip Morris, Inc.*, 417 N.W.2d 132, 137 (Minn. 1987)). How Plaintiffs seek to prove injury and damages is undoubtedly an issue which the court looks to when deciding whether individual questions predominate over common questions. However, Defendants ignore that fact that there remains a dispute among the parties' experts about whether a formula can be constructed in this case to produce a valid representation of passed-on costs and damages to end-users.

Defendants point to Plaintiff's expert, Dr. Conner, who concedes that no formula could determine the pass-on rate for individual customers because there would be too many variables involved. *See* Conner Tr. 195:25-196:5. The Court also acknowledges that determining what prices were paid by end-users is arguably a difficult task due to the variety of sales contracts for EPDM in different forms, grades, amounts, and with rebates

or discounts. The present case involves five EPDM manufacturers, hundreds of EPDM direct purchasers, thousands of distributors, retailers and other intermediaries, each of which had its own independent pricing polices and practices. Additionally, negotiated prices for EPDM vary even more when the product for which it is used has other non-EPDM substitutes. However, these again are some of the same circumstances and arguments faced in *Comes II* when looking to Microsoft products. Those products were bundled with computers, possibly included rebates, or volume discounts to the direct purchaser.

One of the characteristics of this case not present to the same extent in *Comes II* is that EPDM is typically sold throughout the stream of commerce after being incorporated into another product, not to mention the large number of products in which EPDM is used. *See, e.g., In re Methionine Antitrust Litig.*, 204 F.R.D. 161, 165 (N.D. Cal. 2001) (observing that when a product is incorporated into other products, the factfinder must determine how much the price of the resold product was a result of an anti-competitive overcharge and how much was the result of other costs). These characteristics make the analysis of injury and damages more individualized than *Comes II*. Even so, the Court does not agree that the issues of this case "will require the presentation of individualized evidence regarding each plaintiff's circumstances." *Defendants' Brief*, p. 4.

Plaintiffs have asserted that their expert, Dr. Connor, is prepared to offer "common, expert testimony" regarding the impact on and injuries of the class as a whole. Defendants contest, however, how Dr. Connor will be able to illustrate the many variables which go into a product. This is a challenge to Dr. Connor's methods and not proper for determination at the class certification stage. *See Howe*, 656 N.W.2d at 293;

*Comes II*, 696 N.W.2d at 325.   In fact, arguments by Microsoft in *Comes II* are strikingly

similar to those in this case.  The *Comes II* court stated:

> Microsoft also attacks Professor MacKie-Mason's analysis, theories, and methodology, claiming that his economic methodology will not produce an accurate measure of harm and, consequently, that the plaintiffs have failed to present "real world" evidence to establish damages.  Microsoft argues that the plaintiffs' proof is insufficient, claim that Professor MacKie-Mason's theories are inaccurate as a matter of fact and that the district court should have engaged in a rigorous analysis of this evidence to uncover its flaws.  Specifically, it complains that the court abused its discretion because it

> > did not require plaintiffs to show that their proposed methods for proving with classwide evidence that *each class member actually paid some portion of a passed-on overcharge-and the amount passed on*-were workable in light of the real world facts Microsoft presented.

> . . .

> Microsoft's argument fails because, in effect, it asks the court to make a class-certification ruling based on the merits of the case, something we have uniformly rejected.  *See, e.g.*, *Kramersmeier v. R.G. Dickinson & Co.*, 440 N.W.2d 873, 879 (Iowa 1989) ("[A] reversal of the trial court's certification order for failure of proof of reliance would be tantamount to requiring proof of plaintiffs' ability to 'win on the merits,' a showing clearly not contemplated by [the rules] or prior decisions of this court.").  This court has instead consistently held that class certification does not involve an inquiry into the merits of a case.

*Comes II*, 696 N.W.2d at 324-25.  The *Comes II* court held that the district court's

findings on the first three of five common questions would have justified a finding of

predominate issues.   Those common questions were:   (1) whether Microsoft was a

monopolist; (2) whether Microsoft engaged in anticompetitive conduct; and (3) whether

Microsoft's conduct violated the Iowa Competition Law.  *Comes II*, 696 N.W.2d at 323.

Similar questions involving the Defendants alleged price-fixing conduct are present here.

Class certification is a procedural question and does not ask whether an action is legally or factually meritorious. *Luttenegger v. Conseco Fin. Serv. Corp.*, 671 N.W.2d 425, 438 (Iowa 2003); *Martin*, 435 N.W.2d at 367-68. Defendants' contradicting evidence is noted by the court, "but it is inappropriate at the certification stage to resolve battles between experts." *Comes II*, 696 N.W.2d at 325 (citing *Howe*, 656 N.W.2d at 293). At this point the Court is only concerned with ensuring that the basis of the expert opinion is not so flawed that it would be inadmissible as a matter of law. *Id.* Based on the exhibits submitted to the court, and this jurisdiction's liberal rules on the admission of expert testimony, the Court is convinced that the expert opinions in this case do not fall within that sphere. The district court in *Comes II* concluded that the plaintiff's proposed methods of proving injury-in-fact on a class-wide basis were based on sound and accepted economic theory and presented viable methods for establishing the differences in prices. *Comes II*, 696 N.W.2d at 323. Similar methods, while possibly less detailed at this stage in the litigation, are similar economic theories.

Understandably, there are inherent difficulties in proving injury and damages in an indirect purchaser case. However, the Court does not find, as the Defendants do, that this burden is an impossible one. Clearly there are a multitude of factors that go into the ultimate pricing of a product containing EPDM. However, the ability or likelihood of proving an inflated price throughout the various streams of commerce is an argument attacking the merits of the case and not the issue before the Court. An increased difficulty in proving damages is not a basis on which this Court can deny Plaintiffs motion for class certification. Whether a formula can be developed, which encompasses the alleged price inflation through the various distribution levels, is a factual issue for the

jury to determine based on expert testimony.  If the Plaintiffs' expert is incapable, as Defendants claim, of fabricating a method to demonstrate the alleged price fixing's effect, it is possible to be addressed in a summary judgment motion or on a motion for directed verdict at trial.  At this stage the Court is more concerned with identifying class members and characterizing the types of issues involved.  Moreover, Defendants do not dispute that their alleged price-fixing conduct would be a common issue among the potential plaintiffs in this case.

The Court is satisfied that common questions in this case are predominant and this determination weighs in favor of finding that certification would permit a full and fair adjudication of this case.  *See Vos*, 667 N.W.2d at 54-55 (ensuring that at trial would not "spend more time delving into individual question of fact . . . than examining questions common to the entire class").  Despite the Court's determination on this factor, it remains merely a factor in the overall analysis conducted in this case.

F.     *Whether Other Means of Adjudicating the Claims Are Impracticable or Inefficient.*

Whether the means of adjudication provides the most efficiency and practicability are also important to class certification decisions.  Iowa R. Civ. P. 1.263(1)(f).  Based on the nature of the product at issue in this case and the multitude of products and streams of commerce to which it has traveled, individual claims for the potential class members would be an unbelievably arduous task.  The Court does not turn a blind eye to the potential logistics of a class action involving so many different end-products and problematic identification of products containing EPDM.  Nevertheless, the Court agrees that this factor weighs in favor of a fair and efficient adjudication.

G.     *Is a Class Action the Most Appropriate Means to Adjudicate the Case?*

15

With similar concerns to factor (f), the Court believes class certification would offer the most appropriate means of adjudicating potential plaintiffs' claims. *See id.* 1.263(1)(g). If ascertaining members of the class requires individualized hearings into the chemical makeup and circumstances of each purchase, class action proceedings may no longer provide an adequate way to adjudicate this matter. However, individual cases would also require such determinations and conducting hearings on particular products would certainly consolidate many of those determinations, if necessary to determine the existence of EPDM. Again, the Court believes this factor weighs in favor of a fair and efficient adjudication.

     H.     *Have Other Class Members Demonstrated They Want to Control the Litigation?*

Neither party has shown that any other members of the proposed class have sought or will seek to control this litigation. Iowa R. Civ. P. 1.263(1)(h). The Court views this factor as weighing in favor of finding a fair and efficient adjudication. However, the Court gives little weight to this factor.

     I.     *Whether the Class Action Involves a Claim That Is or Has Been the Subject of a Class Action, a Government Action, or Other Proceeding.*

Plaintiff asserts that "[t]he government has successfully brought criminal actions against most of the Defendants. Other class actions have been filed in other states as well." *Plaintiff's Brief*, p. 16. In addition, both parties acknowledged during oral argument that the actions of the Defendants had been investigated by the federal authorities, but yielded no further action. Despite these actions in other jurisdictions, the rule asks whether the claim has been addressed in another proceeding. The Court finds no basis to conclude that Plaintiff's claim for antitrust violations under Iowa Code

16

chapter 553 have previously been the subject of another such proceeding. Accordingly, this factor weighs in favor of finding certification to further a fair and efficient adjudication.

J.    *Whether it is Desirable to Bring the Class Action in Another Forum?*

Neither party makes an argument that Plaintiffs, who are from the State of Iowa, should bring their antitrust actions in a state other than Iowa. Similarly, as much as it might like to do so, the Court can find no basis for such a finding. The Court views this less significant factor as indicating the likelihood of fair and efficient adjudication.

K.    *Will Management of this Class Action Pose Unusual Difficulties?*

One of the most glaring factors in this case asks whether management of the class poses unusual difficulties. *See id.* 1.263(1)(k). Plaintiffs' definition of the proposed class is quite broad. *See Plaintiff's Brief*, p. 7 ("All persons who indirectly purchased Defendants' EPDM in the State of Iowa, other than for resale, from January 1994 through December 2002."). This definition coupled with the uncertainty in identifying the products containing EPDM, indicates many potential problems in managing this class. These problems could ultimately be insurmountable. *See* Moore's Federal Practice § 23.46[2][e][i] (2006); *see also In re Phenylpropanolamine (PPA) Prods. Liability Litig.*, 214 F.R.D. 614, 619-20 (W.D. Wash. 2003).

Similar to the circumstances of *In re Phenylpropanolamine*, there will be many instances where class members' right to recover is not readily ascertainable and would require an individualized hearing. *In re Phenylpropanolamine*, 214 F.R.D. at 618. Therefore, the task of determining whether each alleged class member had in fact purchased a product containing EPDM could result in numerous mini-trials within the

17

larger class action to determine eligibility.  There are also issues as to whether the potential plaintiffs are an end-user, or whether they were even the purchaser if they do not have proof of purchase.  These determinations pose enormous manageability hurdles and could potentially overwhelm even experienced class action attorneys, or overwhelm the court's resources and defeat the judicial economy obtained from class certification.

While the Plaintiffs are correct that under Iowa law there is no requirement that the members of the class all be identified at this point, the ability to identify the class does weigh on the manageability factor.  Additionally, manageability issues should not necessarily be equated with issues of complexity.  Plaintiff's claims involve both complex legal concepts as well as a huge number of potential plaintiffs and effected products.  However, it is the large number of potential plaintiffs and a yet unknown number of end-products that pervades the Court's analysis.  This factor is also one that the Court gives significant weight.  These potential difficulties leads the Court find that this factor weighs against a fair and efficient adjudication in this case.

      L.     *Whether Any Conflict of Laws Issues Pose Unusual Difficulties.*

Plaintiffs have only asserted claims under Iowa law and the proposed class members are limited to individuals in the State of Iowa.  Therefore, at the present time, there is nothing in the record that demonstrates to the Court that any conflict of laws issues would dissuade this Court from finding certification appropriate.

      M.    *Whether Individual Class Member Claims Would Be Insufficient In the Amounts or Interests Involved to Afford Significant Relief to the Members of the Class.*

Plaintiffs assert that the present case is "tailor-made" for a class action, based on the alleged small damage to each class member and the potential for an enormous amount

of class members.  While the Court will not speculate as to specific amounts of damage that may be recoverable in this case, it is indicative through the allegations that EPDM is typically a small portion of a larger item such as a car or is a larger portion of less expensive items like weather stripping.  Consequently, there is a strong likelihood that the amount of damage to individual plaintiffs would be relatively small.    This determination weighs in favor of finding that certification should be permitted for the fair and efficient adjudication of this case.

N.    *Conclusion Regarding Rule 1.263 Factors.*

*Comes II* has made clear that

> [i]n most cases some of the thirteen factors will weigh against certification and some will weigh in favor.  It is for the trail court, employing its broad discretion, to weigh the competing factors and determine whether a class action will provide fair and efficient adjudication of the controversy.  Thus, even if [Defendants are] correct in [their] assertion four of the factors weigh against certification, that does not preclude the court from certifying the class action if, in its opinion, those factors are outweighed by other factors supporting certification.

*Comes II*, 696 N.W.2d at 289.  A determination of the thirteen factors in this case is certainly a close call.  However, based on the record before the Court and in light of this jurisdictions deference to certification, the Court concludes that certification would permit the "fair and efficient adjudication of the controversy."    Iowa R. Civ. P. 1.262(2)(b), 1.263(1).

**3.    *Fairly and Adequately Protect the Interests of the Class***

The last issue is whether the representative parties will fairly and adequately protect the interests of the class.  Iowa R. Civ. P. 1.262(2)(c).  Rule 1.263(2) states that the court must find all of the following:

a.        The attorney for the representative parties will adequately

represent the interests of the class.

b.    The representative parties do not have a conflict of interest in the maintenance of the class action.

c.    The representative parties have or can acquire adequate financial resources, considering rule 1.276, to ensure that the interests of the class will not be harmed.

According to the pleadings, as well as the written and oral arguments of the parties, Anderson Contracting did purchase items containing EPDM as an end-user and would, therefore, be a member of the proposed class despite also being an intermediary for other products containing EPDM.

A.    *Adequate Attorney for the Class*

Plaintiffs' counsel has prior experience in antitrust class action litigation and neither party disputes the adequacy of Plaintiffs' counsel in this case. Therefore, this requirement is met.

B.    *Representative Parties Do Not Have Conflicts of Interest In Maintenance of Class Action.*

Defendants maintain that Anderson Contracting does not have a sufficient interest in the litigation to create an incentive to be diligent in providing discovery materials or prosecuting the case. Additionally, Defendants claim that Anderson Contracting's status as a reseller of products containing EPDM directly conflicts with the interests of the putative class, which consists of purchasers who are end-users of products containing EPDM. If both intermediate purchasers and end-users were part of the proposed class the Court would agree with Defendants' characterization. However, Anderson Contracting is asserting their antitrust claims as an end-user. Therefore, the Court finds no conflict which would prevent Anderson Contracting from maintaining the class action.

The Court is aware of the potential for a less than rigorous representation of the class when a proposed representative of the class has a small personal stake in the litigation, as appears to the be the case with Anderson Contracting. Moreover, Defendants have already called Anderson Contracting's commitment into question following minimal discovery responses. Nevertheless, a small end-user appears to be typical of the proposed class and was not considered to be an issue in *Comes II*. In addition, a significant portion of the discovery in this case has yet to be conducted. The Court is, therefore, unwilling to find Anderson Contracting to be lacking as a representative based on one alleged substandard discovery response.

    C.    *Representatives Have or Can Acquire Adequate Financial Resources.*

In light of the provision for advancement of costs in this case, the Court finds Plaintiffs have adequately shown their ability to provide financial resources. *See Comes II*, 696 N.W.2d at 327 ("In this case, the plaintiffs' attorneys requested that the court issue an order under 1.276 approving their fee arrangement and their willingness to advance all costs."). Moreover, Defendants have not offered any rebuttal to this requirement. The Court finds that Plaintiff has sufficiently established their ability to provide financial resources.

**4.    *Conclusion***

As previously stated, the "representative party or the named plaintiff has the burden of proving all the prerequisites" to certify a class action. *Stone*, 497 N.W.2d at 846. "A failure of proof on any one of the prerequisites is fatal to a class action certification." *Id.* Finding none of the requirements to be lacking at this time, the Court is under the obligation to conclude that class certification is appropriate in this case.

However, the Court reserves this issue for further examination as is permitted under the Iowa Rules of Civil Procedure. *See* Iowa R. Civ. P. 1.265.  Rule 1.265(1) states:

> The court may amend the certification order at any time before entry of judgment on the merits. The amendment may do the following:
>> a. Establish subclasses.
>> b. Eliminate from the class any member who was included in the class as certified.
>> c. Provide for an adjudication limited to certain claims or issues.
>> d. Change the relief sought.
>> e. Make any other appropriate change in the order.

The trial court's duty to ensure compliance with the class action rules continues after certification of the class, and the court may decertify the class after the initial certification if appropriate. *Vos*, 667 N.W.2d at 46.  The court remains free to modify the order in light of subsequent developments in the litigation. *Id.*  Based on the characteristics of this litigation, including the potential for individual questions to supplant common questions and problems ascertaining class members, the Court will modify this order if appropriate.

### ORDER

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Class Certification is **GRANTED.**

SO ORDERED this 16th day of March, 2007.

RICHARD G. BLANE II,
District Judge, Fifth Judicial District of Iowa

Clerk: ___ J _V/C___ U ___ X

COPIES TO:

All Counsel of Record

**[If you require the assistance of auxiliary aids or services to participate in court because of a disability, immediately call your ADA Coordinator at 515-286-3394.  (If you are hearing impaired, call Relay Iowa TTY at 1-800-735-2942.)]**