ABA
Defending Liberty
Pursuing Justice

SECTION of LITIGATION
AMERICAN BAR ASSOCIATION

# CLASS ACTIONS today

A SPECIAL MEMBER BENEFIT PUBLICATION | SECTION OF LITIGATION | AMERICAN BAR ASSOCIATION

2008

## inside

**CLASS ACTION PRACTICE TODAY**
AN OVERVIEW

**NEW PLEADING THEMES UNDER CAFA**

**CLASS ACTION PRACTICE IN THE WAKE OF CAFA**

**SEVEN STEPS TO A SUCCESSFUL CLASS ACTION SETTLEMENT**

# New Pleading Themes under CAFA

By Daniel R. Karon

Since CAFA's enactment, considerable commentary has been published examining changes created by the act and identifying the legal issues they raise. But little, if any, commentary exists describing and examining the new ways in which creative plaintiffs' attorneys have begun pleading their class action lawsuits, previously in state courts, to embrace or avoid CAFA's effects.[1]

With the act's passage, 50-state class action cases alleging a single state law's substantive application largely disappeared. Although plaintiffs sometimes succeeded in certifying and settling these types of cases in state courts before CAFA, plaintiffs' attorneys generally agree that federal courts tend to be less receptive toward 50-state class action lawsuits applying a single state's substantive law, despite U.S. Supreme Court jurisprudence permitting this approach.[2] Because under CAFA plaintiffs can no longer expect courts to certify 50-state or multistate classes, plaintiffs' attorneys have begun devising new ways to achieve a similar end while accepting the environment they and their clients now inhabit.

## 50-State Class Actions

Suing in 50 states under a single state's substantive law. If plaintiffs' counsel remain so inclined, they can certainly file 50-state class action lawsuits even after CAFA's enactment. Although plaintiffs' lawyers, pre-CAFA, often pursued multistate claims in a single plaintiff's name, this pleading practice posed potential problems of standing, subject-matter jurisdiction, and— if the plaintiff even reached class certification—class membership. Plaintiffs' counsel pleaded (and sometimes still plead) this way because they yearn to capture the broadest class possible while exerting the minimum effort necessary.

But a properly alleged multistate class action lawsuit sometimes requires multiple class representatives—ethically retained and with actual damages. And even though plaintiffs' counsel can always pursue these multiple clients' cases in the federal courts in the clients' home states, counsel may instead want to consider pursuing the clients' claims together in a single federal court under the substantive law of a single state, forum, or otherwise. After all, now being in federal court as opposed to state court, these cases are subject to multidistrict consolidation,[3] meaning that the Judicial Panel on Multidistrict Litigation will likely consolidate and transfer them to a single forum.

So, to avoid multiple filing fees and engaging multiple local counsel— whose roles will largely if not entirely disappear after consolidation and transfer—plaintiffs' counsel may simply decide to file in a single federal court where proper venue exists. In doing so, plaintiffs' counsel should strongly consider the home state of the defendant (or of the main defendant, when multiple defendants exist) because this allows counsel to argue for that state law's substantive, class-wide application under the Supreme Court's decision in *Phillips Petroleum Co. v. Shutts*.[4] And if the Judicial Panel on Multidistrict Litigation transfers the consolidated case to a "neutral" forum, plaintiffs may still argue that the law of the defendant's home state (or of the main defendant's home state) applies class-wide under *Shutts*.

Suing in 50 states under 50 states' substantive laws. Pursuing as many as 50 individual class action lawsuits or alleging state law claims on behalf of as many as 50 states' class members in a single class action lawsuit requires considerable work, and plaintiffs' counsel should examine whether it is worthwhile. They should balance the benefit of truly global coverage against the risk of leaving some states unsued. Although pursuing claims for class members in all 50 states (whether in 50 initially separate lawsuits or in one master complaint) deters "uninvited" attorneys from participating in the case, suing in this ambitious manner risks creating manageability problems that the transferee judge may consider insurmountable even pre-class certification. Plaintiffs' counsel must therefore balance the risk of unwanted company against the risk of losing their judge when deciding whether to file multiple cases (or one mega-case asserting claims under multiple states' laws).

## Exemplar-State Class Actions

Suing on behalf of class members in a limited number of states—"exemplar states"—is an innovative alternative to filing multiple cases or one mega-case, and it may solve the potential management difficulties associated with ambitious pleading at potentially slight, if any, ultimate cost.[5] Exemplar states are simply four or five states for whose alleged victims plaintiffs' counsel file a consolidated class action complaint through appropriate class representatives.

If plaintiffs' counsel pursue the exemplar route, they must include class representatives from enough states (though there is no clear-cut rule as to how many that is) to litigate their case effectively, focusing on states with strong state law and significant populations. This keeps the case small enough to avoid manageability issues, yet big enough to coax a global settlement if the opportunity arises.

But because other plaintiffs' attorneys can immediately access all federal class action cases through electronic databases like PACER, CourtLink, or CaseStream, filing in only exemplar states leaves plaintiffs' counsel vulnerable to other attorneys filing overlapping class actions. Plaintiffs' counsel who pursue exemplar-state class action cases must therefore engage in politics and consolidate their leadership position early so as to fend off any future leadership attacks. Otherwise, they must prepare to argue and win inevitable lead-counsel motions by demonstrating extensive pre-suit investigation, their class action lawsuit's proprietary nature, and their entitlement to the lead, or at least a colead, counsel position.

### Federal Subject-Matter Jurisdiction

Suing in the above-described manner will most likely subject a lawsuit to CAFA's newly created federal subject-matter jurisdiction, which exists so long as plaintiffs' claims exceed $5 million and minimal diversity exists, meaning at least one plaintiff resides in a state different from at least one defendant. But even where minimal diversity exists, state-court jurisdiction may remain if the plaintiff pleads one of CAFA's local-case exceptions or seeks less than $5 million in damages.

CAFA's "home-state" and "local-controversy" exceptions. Under CAFA's home-state exception,[6] if two-thirds or more of the proposed class members and the primary defendants are citizens of the state where plaintiff filed suit, federal subject-matter jurisdiction under CAFA does not exist. And under CAFA's local-controversy exception,[7] if two-thirds of the plaintiffs and at least one defendant against whom significant relief is sought are citizens of the state where the plaintiff filed suit, if the principal injuries occurred in that state, and if no other class actions against any of the defendants on behalf of the same class have been filed in the past three years, federal subject-matter jurisdiction under CAFA does not exist, either.

Seeking less than $5 million in damages. Although the Supreme Court long ago ruled that district courts could not aggregate class members' damages to satisfy jurisdictional minimums,[8] CAFA now requires aggregation to determine whether the plaintiffs' amount in controversy exceeds $5 million. So, if class plaintiffs want to remain in state court, they may want to consider alleging less than $5 million in damages.

Before CAFA, district courts measured the value of injunctive relief by considering whether the relief exceeded the diversity statute's $75,000 threshold. And although relief to individual class members would not typically exceed $75,000, the total cost of injunctive relief to defendants typically did. But CAFA's mandatory aggregation provision now appears to require measuring injunctive and other non-monetary relief according to the total class-wide benefit sought or the total cost to defendant. Consequently, plaintiffs interested in remaining in state court might want to consider avoiding requests for injunctive relief while pleading damages under $5 million.

Facing or forgetting remand. If fewer than one-third of all class members are citizens of the original forum state, CAFA requires federal subject-matter jurisdiction and remand cannot occur. But district courts have discretion to decline subject-matter jurisdiction if between one-third and two-thirds of the class members and the primary defendants are citizens of the state where the plaintiff filed suit. And when exercising discretion to decline jurisdiction, under CAFA, district courts must consider six more factors.[9] Finally, district courts must remand class actions if they satisfy CAFA's home-state or local-controversy exceptions.

From a plaintiff's perspective, counting class members and identifying their geographical locations can be nearly impossible at the outset of a lawsuit. Defendants—not plaintiffs—are more likely to know class members' identities and addresses. Class members may also have moved or purchased relevant products through third parties such as retailers or distributors. These problems all create the real risk of remand mini-trials concerning class size and geographic location, which will likely include information that defendants will be uncomfortable disclosing. And speaking of uncomfortable, if plaintiffs allege less than $5 million in damages and forgo a request for injunctive relief, defendants must then argue that class members' damages actually exceed $5 million—an unenviable task for any defendant.

Moreover, CAFA refers to "primary" defendants and defendants from whom "significant" relief is sought or who allegedly caused the plaintiff's "principal injuries" but does not define these terms. Yet plaintiffs' counsel can try to influence remand by naming or not naming certain defendants, by describing them as primary or as defendants from whom they seek significant relief, or by describing injuries so as to make these injuries principal.

Given the likelihood of confusion and uncertainty, where minimal diversity exists, trying to massage CAFA's contours into a formula necessitating remand is an all but impossible task, whether concentrating on the amount in controversy, class members' number and/or location, which defendant is primary or significant, or

which defendant allegedly caused the plaintiffs' principal injuries. Given this difficulty, plaintiffs' counsel should not try too hard to retain state subject-matter jurisdiction. A remand-related sideshow may erupt, and plaintiffs may well lose after spending considerable time and money. Rather, and most fundamentally, even against CAFA's backdrop, if plaintiffs' attorneys pursue responsible and worthy cases and believe in these cases with the passion and enthusiasm that the ethical rules suggest, if not require, it should not matter where they try these cases—justice should prevail, whether in state or federal court.

### Settling Broadly

At settlement time, drafting a sufficiently broad settlement agreement in a 50-state class action lawsuit (where class representatives from all 50 states exist) is relatively easy because the settlement agreement will necessarily apply to claims in all 50 states. But crafting a satisfactory settlement agreement in an exemplar-state class action lawsuit requires a bit more care.

When litigating, defendants fight for the narrowest possible class, but when settling, they argue for the broadest possible class. Because a typical exemplar-state class action complaint may allege claims only on behalf of people under comparable laws in, say, four or five states, come settlement time the parties must decide how to provide defendants broad relief (without which defendants may not agree to settle) while respecting due process and perhaps comity concerns. After all, if defendants only settle for the exemplar states, this leaves multiple states (perhaps 45 or more) still available for later lawsuits by other attorneys. And with the exemplar-state case possibly (but probably not) tolling these unsued states' statutes of limitations, even if the exemplar-state case lingered for years, exposure to defendants may persist.

To be safe, then, plaintiffs' counsel should consider amending their complaint to allege claims on behalf of class



members in all 50 states. If plaintiffs pursued their complaint in the defendant's (or the main defendant's) home state, amending their complaint in this manner does not necessarily invoke the issues of standing, subject-matter jurisdiction, and class membership described earlier because *Shutts* allows the extraterritorial application of the forum state's law so long as doing so does not violate due process, such as when plaintiffs sue in the defendant's home state. Alternatively, if plaintiffs pursued their complaint somewhere else, *Shutts* likewise permits the extraterritorial application of the pleaded states' laws so long as no conflict exists among these laws and the newly added states' substantive laws.[10] Moreover, certain state laws, independent of *Shutts*, permit their extraterritorial application, meaning that a federal court may approve multistate settlements pursuant to these particular substantive laws without even the need to conduct a *Shutts* analysis.[11]

So, even after CAFA, multistate resolutions are possible, if not desirable. If the parties take special care when crafting their multistate class action settlement agreements (mindful of the due process, jurisdictional, and standing concerns that CAFA created), both sides can likely conclude the litigation with the relief and peace of mind that they desire.

CAFA undoubtedly makes pleading, litigating, and resolving multistate class action cases more challenging, but it certainly did not make this process impossible. While sizeable class action cases are in federal court to stay, their new venue need not cause plaintiffs' counsel undue anxiety. If plaintiffs' counsel pursue meaningful and worthwhile multistate class action lawsuits with the foregoing themes in mind, they should be able to prosecute and resolve these claims, not despite CAFA, but because of it.

DANIEL R. KARON is a partner with Goldman Scarlato & Karon, PC, in Cleveland, Ohio.

### ENDNOTES

1. This article examines federal class action lawsuits and will not study ways that plaintiffs' counsel attempt to avoid CAFA's federal jurisdictional requirements, such as pleading multiple city or county classes, each alleging less than $5 million in potential damages.
2. *See* Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 821–22 (1985) (permitting extraterritorial application of single state's substantive law so long as "the choice of [one state's] laws is not arbitrary or unfair").

CONTINUED ON PAGE 15

the burden of proof in demonstrating the presence of the federal jurisdiction. The act does not shift the burden of proof at either the removal or remand phase of jurisdictional wrangling. However, arguments to the contrary continue to arise in litigation, and attorneys should take notice.

Defendants often point to legislative history to argue that CAFA shifts the burden on removal to the party opposing federal jurisdiction. But express language always trumps legislative history (see sidebar on page 14). Courts facing this argument have rejected the Senate report's opinion that CAFA shifts the burden on removal.[9] With respect to remand, the burden is on the party seeking to invoke the home-state and local-controversy exceptions. Once the removing party satisfies its burden of establishing the requisite amount in controversy and minimal diversity, the burden shifts to the other party to prove any exception under CAFA.[10]

## CAFA and Settlement Negotiations

Plaintiffs can try to leverage CAFA's limitations on sweetheart deals to coax more meaningful settlements. For example, plaintiffs can reject defendants' low or coupon settlement offers with confidence, noting the act's aversion to such deals. Plaintiffs can also use the act's notice provisions to their advantage. CAFA requires notice in some cases to certain state and federal officials, including the attorney general's office,[11] which may increase the defendants' temptation to resolve claims.

CAFA has changed the landscape of class action practice by expanding federal jurisdiction. This creates new responsibilities for the parties. Federal judges have a greater responsibility when adjudicating claims and considering class certification. Plaintiffs' attorneys also have the new responsibility to draft their pleadings with federal court in mind and to familiarize themselves with arguments concerning the act's construction. Despite being viewed as a benefit solely to defendants, CAFA creates opportunities for plaintiffs at the certification, discovery, and settlement stages of litigation.

---

ALLAN KANNER is a partner and M. RYAN CASEY is an associate with Kanner & Whiteley LLC in New Orleans, Louisiana.

## ENDNOTES

1. 28 U.S.C. § 1332(d)(2).
2. See 28 U.S.C. § 1453.
3. 28 U.S.C. § 1332(d)(4)(B).
4. 28 U.S.C. § 1332(d)(4)(A).
5. 28 U.S.C. § 1332(d)(3).
6. See 28 U.S.C. § 1712.
7. No. 02-4911, 2007 WL 1944343 (S.D.N.Y. July 5, 2007).
8. In re Pharm. Indus. Average Wholesale Price (AWP) Litig., 230 F.R.D. 61, 83 (D. Mass. 2005).
9. See Abrego v. Dow Chem. Co., 443 F.3d 676, 686 (9th Cir. 2006) (per curiam) ("CAFA's silence, coupled with a sentence in a legislative committee report untethered to any statutory language, does not alter the longstanding rule that the party seeking federal jurisdiction on removal bears the burden of establishing that jurisdiction."); Brill v. Countrywide Home Loans, Inc., 427 F.3d 446, 448 (7th Cir. 2005) (holding that CAFA's "naked legislative history" does not alter the well-established rule that a proponent of subject matter jurisdiction bears the burden of persuasion on the amount in controversy").
10. See Frazier v. Pioneer Americas LLC, 455 F.3d 542, 545 (5th Cir. 2006) (Party seeking remand has burden of proving home-state and local-controversy exceptions, noting the "longstanding § 1441(a) doctrine placing the burden on plaintiffs to show exceptions to jurisdiction buttresses the clear congressional intent to do the same with CAFA.").
11. 28 U.S.C. § 1715(b).
12. S. Rep. No. 109-14 (2005), as reported in 2005 U.S.C.C.A.N. 3, 2005 WL 627977 (Leg. Hist.).
13. George W. Bush, Remarks on Signing the Class Action Fairness Act of 2005, Feb. 18, 2005.
14. S. Rep. No. 109-14, at 42, as reprinted in 2005 U.S.C.C.A.N. 3, 40.
15. Miedema v. Maytag Corp., 450 F.3d 1322, 1328 (11th Cir. 2006) (quoting Int'l Bhd. of Elec. Workers v. NLRB, 814 F.2d 697, 712 (D.C. Cir. 1987)).
16. 28 U.S.C. § 1711(a)(1).
17. 28 U.S.C. § 1711(b)(1).
18. Pub. Law. 109-2, § 2, 119 Stat. 4 (2005); see 28 U.S.C. § 1711.
19. 28 U.S.C. § 1711(b)(3).

## NEW PLEADING THEMES
CONTINUED FROM PAGE 11

3. See 28 U.S.C. § 1407(a) (2006) ("When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings.").
4. Shutts, 472 U.S. at 821.
5. See., e.g., In re New Motor Vehicles Canadian Exp. Antitrust Litig., 235 F.R.D. 127, 148 (D. Maine 2006) (certifying exemplar-state classes of indirect automobile buyers and lessees); D.R. Ward Constr. Co. v. Rohm & Haas Co., 470 F. Supp. 2d 485, 494 (E.D. Pa. 2006) (denying defendants' motion to dismiss plaintiffs' exemplar-state complaint in consumer price-fixing case).
6. 28 U.S.C. § 1332(d)(4)(B).
7. 28 U.S.C. § 1332(d)(4)(A).
8. Zahn v. Int'l Paper Co., 414 U.S. 291 (1973).
9. See 28 U.S.C. § 1332(d)(3)(A)-(F).
10. See Shutts, 472 U.S. at 816 (A court may apply a single state's substantive law extraterritorially so long as the law sought to be applied "is not in conflict with that of any other jurisdiction connected to the suit.").
11. See, e.g., Freeman Indus., LLC v. Eastman Chem. Co., 172 S.W.3d 512, 523 (Tenn. 2005) (Non-Tennessee residents may invoke Tennessee's antitrust statute so long as the defendants' "alleged anticompetitive conduct affects Tennessee trade or commerce to a substantial degree.").