Guido Saveri (22349) (guido@saveri.com)
R. Alexander Saveri (173102) (rick@saveri.com)
Cadio Zirpoli (179108) (cadio@saveri.com)
SAVERI & SAVERI, INC.
111 Pine Street, Suite 1700
San Francisco, CA 94111
Telephone:  (415) 217-6810
Facsimile:  (415) 217-6813

Attorneys for Plaintiff Paula Call

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT ) LITIGATION | Case No. CV-07-5944 SC |
| This Document Relates to:<br><br>ELECTRONIC DESIGN COMPANY, on behalf of itself and all others similarly situated,<br><br>          Plaintiff,<br><br>v.<br><br>CHUNGHWA PICTURE TUBES, LTD., *et al.*<br><br>          Defendants.<br><br>Case No. CV-08-0614-JL | **DECLARATION OF CADIO ZIRPOLI IN SUPPORT OF PLAINTIFF ELECTRONIC DESIGN COMPANY'S ADMINISTRATIVE MOTION TO RELATE CASES** |

1.    I am an attorney duly licensed by the State of California and am admitted to practice before this Court.  I am an associate at Saveri & Saveri, Inc., attorneys of record for plaintiff Electronic Design Company.  I make this declaration in support of Plaintiff Electronic Design Company's Administrative Motion to Relate Cases.  The matters set forth herein are of my own personal knowledge, and if called and sworn as a witness I could competently testify regarding them.

2.    Attached hereto as Exhibit A is a true and correct copy of a complaint captioned *Electronic Design Company v. Chunghwa Picture Tubes, Ltd., et al.,* Case No. CV-08-0614-JL filed on January 25, 2008 in the Northern District of California and assigned to the Honorable James Larson.

3.    The *EDC* action is a proposed class action on behalf of direct purchasers of cathode-ray tubes.  The *CRT* and *EDC* actions allege a conspiracy to illegally fix, raise, maintain and/or stabilize the prices charged for cathode ray tubes.  Plaintiffs in the *CRT* and *EDC* actions assert claims for violations of the Sherman Act, 15 U.S.C. §1 against many of the same Defendants.

4.    A stipulation pursuant to Civil Local Rule 7-11(a) could not be obtained because defendants in this action have not yet appeared.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.  Executed this 3rd day of April, 2008 at San Francisco, California.


_____*/s/ Cadio Zirpoli*_____
Cadio Zirpoli

2

DECLARATION OF CADIO ZIRPOLI IN SUPPORT OF ADMINISTRATIVE MOTION TO RELATE CASES;
CASE NO. CV-07-5944 SC

# Exhibit A

1    GUIDO SAVERI (22349) (guido@saveri.com)
     R. ALEXANDER SAVERI (173102) (rick@saveri.com)
2    CADIO ZIRPOLI (179108) (cadio@saveri.com)
     SAVERI & SAVERI, INC.
3    111 Pine Street, Suite 1700
     San Francisco, CA 94111
4    Telephone: (415) 217-6810

5    Mark Reinhardt (m.reinhardt@rwblawfirm.com)
     Garrett D. Blanchfield, Jr. (g.blanchfield@rwblawfirm.com)
6    REINHARDT WENDORF & BLANCHFIELD
     E-1250 First National Bank Building
7    332 Minnesota Street
     St. Paul, MN 55101
8    Telephone: (651) 287-2100

9    Attorneys for Plaintiff

10   [Additional Counsel Appear On Signature Page]

11                  UNITED STATES DISTRICT COURT

12                 NORTHERN DISTRICT OF CALIFORNIA

13   _____

14   ELECTRONIC DESIGN COMPANY, on behalf
     of itself and all others similarly situated,
15                                                    Civil Action No. _____
                          Plaintiffs,
16                                                    CLASS ACTION
     vs.
17                                                    COMPLAINT
     CHUNGHWA PICTURE TUBES, LTD.;
18   TATUNG COMPANY OF AMERICA, INC.;                 DEMAND FOR JURY TRIAL
     L.G. ELECTRONICS, INC.; LG PHILIPS
19   DISPLAY USA, INC.; MATSUSHITA
     ELECTRIC INDUSTRIAL CO. LTD.;
20   PANASONIC CORPORATION OF NORTH
     AMERICA; KONINKLIJKE PHILIPS
21   ELECTRONICS N.V.; PHILIPS ELECTRONICS
     NORTH AMERICA CORPORATION;
22   SAMSUNG ELECTRONICS CO.; SAMSUNG
     ELECTRONICS AMERICA, INC.; SAMSUNG
23   SDI CO. LTD. f/k/a SAMSUNG DISPLAY DEVICE
     CO.; TOSHIBA CORPORATION; TOSHIBA
24   AMERICA ELECTRONICS COMPONENTS, INC.;
     TOSHIBA AMERICA INFORMATION SYSTEMS,
25   INC.; MT PICTURE DISPLAY COMPANY;
     MT PICTURE DISPLAY CORPORATION OF
26   AMERICA (New York); MT PICTURE DISPLAY
     CORPORATION OF AMERICA (Ohio) and
27   LP DISPLAYS,
                          Defendants.
28

CLASS ACTION COMPLAINT             1

1    Plaintiff, by its undersigned attorneys, individually and on behalf of the class described

2 below, brings this action for damages and injunctive relief for price fixing and market and

3 customer allocation under Section 1 of the Sherman Act of 1890, 15 U.S.C. §1, and the antitrust

4 laws of the United States against the manufacturers of cathode-ray tubes ("CRTs") and products

5 containing CRTs, named above, which participated in an overarching, on-going, international

6 conspiracy and cartel beginning on at least January 1, 1995 and continuing to the present.  Based

7 on personal knowledge, information and belief, the investigation of counsel, plaintiff Electronic

8 Design Company alleges as follows:

9         **I. NATURE OF THE CASE**

10   1.  This case arises out of a long-running, international conspiracy among defendants

11 and their co-conspirators to fix the prices of, cathode-ray tubes ("CRTs") and products containing

12 CRTs (jointly, "CRT Products").

13   2.  This lawsuit is brought as a class action on behalf of all individuals and entities

14 who purchased CRT Products directly from Defendants, their predecessors or their controlled

15 subsidiaries and affiliates from at least as early as January 1, 1995 to the present (the "Class

16 Period").  Plaintiff alleges that during the Class Period, Defendants conspired to fix, raise,

17 maintain, or stabilize the prices of CRT Products sold in the United States during the relevant

18 time period defined below.

19   3.  Throughout the Class Period, Defendants' conspiracy was intended to, and did,

20 moderate the downward price pressures on CRT Products caused by the market entry and rapid

21 penetration of more technologically advanced competitive products.  As explained in further

22 detail below, liquid crystal displays ("LCD") and plasma display panels ("PDP") were used in the

23 same primary applications as CRTs and presented significant advantages over CRT Products.

24 LCD, PDP and products containing LCD or PDP will collectively be referred to as flat panel

25 display products ("FPD Products").  Many of the Defendants, in addition to manufacturing,

26 distributing and selling CRT Products, were also manufacturers, distributors, and sellers of FPD

27 Products.  Defendants who participated in both the market for CRT Products and the market for

28 FPD Products will be specifically identified below.

CLASS ACTION COMPLAINT    2

1     4.    Because of Defendants' unlawful conduct, Plaintiff and other Class members paid

2   artificially inflated prices for CRT Products, as a result, have suffered antitrust injury to their

3   business or property.

4                              II.   **JURISDICTION AND VENUE**

5     5.    This action is instituted under Section 4 of the Clayton Act, to recover treble

6   damages and costs of suit, including reasonable attorneys' fees, against Defendants for the

7   injuries sustained by Plaintiff and the members of the Class by reason of the violations, as

8   hereinafter alleged, of Section 1 of the Sherman Act.

9     6.    Jurisdiction is conferred upon this Court by 28 U.S. C. §§ 1331 and 1337 and by

10  Section 4 of the Clayton Act, 15 U.S.C. §15 and Section 1 of the Sherman Act, 15 U.S.C. § 1.

11    7.    Venue is found in this district pursuant to Sections 15 and 22 of the Sherman Act,

12  and 28 U.S.C. §1391(b), (c).  Venue is proper in this judicial district because during the Class

13  Period one or more of the Defendants resided, transacted business, was found, or had agents in

14  this district, and because a substantial part of the events giving rise to Plaintiff's claims occurred,

15  and a substantial portion of the affected interstate trade and commerce described below has been

16  carried out in, this district.

17    8.    Upon information and belief, Defendants maintain offices, have agents, transact

18  business, or are found within this judicial district.

19    9.    This Court has in *personam* jurisdiction over each of the Defendants because,

20  *inter alia*, each Defendant: (a) transacted business in the United States; (b) directly or indirectly

21  sold and provided CRT Products throughout the United States; (c) had substantial aggregate

22  contacts with the United States as a whole; and/or (d) was engaged in an illegal price-fixing

23  conspiracy that was directed at, and had the intended effect of causing injury to, persons and

24  entities residing in, located in, or doing business throughout the United States, including in this

25  district.  Alternatively, there is jurisdiction over foreign Defendants pursuant to Federal Rule of

26  Civil Procedure 4(k)(2).

27

28

CLASS ACTION COMPLAINT            3

### III. **PLAINTIFF**

10.     Plaintiff Electronic Design Company ("Plaintiff" or "EDC"), is a corporation with its principal place of business in Shoreview, Minnesota. EDC directly purchased CRT Products from one or more of the Defendants during the Class Period and was injured as a result of Defendants' illegal conduct. The price that Plaintiff paid to Defendants or their co-conspirators was greater than it would have been absent the conspiracy herein alleged. As a result of the alleged conspiracy, Plaintiff was injured in its business and property by reason of the antitrust violations alleged herein. Plaintiff asserts a claim on behalf of itself and all direct purchasers of CRT Products from one or more of the Defendants during the Class Period.

### IV. **DEFENDANTS**

#### Chunghwa

11.     Defendant Chunghwa Picture Tubes, Ltd. ("Chunghwa") is a Taiwanese company with its principal place of business at 1127 Heping Road, Bade City, Taoyuan, Taiwan. It is a partially owned subsidiary of Tatung Company, a consolidated consumer electronics and information technology company based in Taiwan. Chunghwa's Board of Directors includes representatives from Tatung Company. The Chairman of Chunghwa, Weishan Lin, is also the Chairman and General Manager of Tatung Company. During the Class Period, Chunghwa manufactured, sold, and distributed CRT Products to customers throughout the United States. Chunghwa also manufactured, distributed and sold FPD Products in the United States during the Class Period.

12.     Defendant Tatung Company of America, Inc. is a California corporation with its principal place of business at 2850 El Presidio Street, Long Beach, California. Tatung Company of America, Inc. is a wholly-owned and controlled subsidiary of Tatung Company. During the Class Period, Tatung Company of America, Inc. manufactured, sold, and distributed CRT Products to customers throughout the United States. Tatung Company of America, Inc. also manufactured, distributed and sold FPD Products in the United States during the Class Period.

CLASS ACTION COMPLAINT                    4

**LG**

13.     Defendant LG Electronics, Inc. ("LGE"), is a manufacturer of CRT Products with its global headquarters located at LG Twin Towers 20, Yeouido-dong, Yeongdeungpo-gu, Seoul, Korea 150-721.  During the Class Period, LGE manufactured, sold and distributed CRT Products to customers throughout the United States.  LGE also manufactured, distributed and sold FPD Products in the United States during the Class Period.

**Matsushita**

14.     Defendant Matsushita Electric Industrial Co., Ltd ("Matsushita") is a Japanese company and has its global headquarters at 1006 Kadoma, Osaka 571-8501, Japan.  Matsushita is the parent company of Panasonic Corporation of North America, JVC Company of America, and Victor Company of Japan, Ltd.  During the Class Period, Matsushita manufactured, sold and distributed CRT Products to customers throughout the United States.  Matsushita also manufactured, distributed and sold FPD Products in the United States during the Class Period.

15.     Defendant Panasonic Corporation of North America ("Panasonic"), is a subsidiary of Defendant Matsushita and oversees its North American business operations, including sales. Defendant Panasonic has its global headquarters at 1 Panasonic Way, Secaucus, New Jersey, 07094. During the Class Period, Panasonic manufactured, sold and distributed CRT products to customers throughout the United States.  A substantial portion of the CRTs produced by MT Picture Displays Co., Matsushita's subsidiary, went to Panasonic for Panasonic's production of CRT Products.  Panasonic also manufactured, distributed and sold FPD Products in the United States during the Class Period.

**Philips**

16.     Defendant Koninklijke Philips Electronics N.V. ("Koninklijke") has its global headquarters at Breitner Center Amstelplein 2, Amsterdam 1096 BC, Netherlands.  During the Class Period, Koninklijke manufactured, sold and distributed CRT Products to customers throughout the United States.  Koninklijke also manufactured, distributed and sold FPD Products in the United States during the Class Period.

CLASS ACTION COMPLAINT                    5

17. Defendant Philips Electronics North America Corporation ("Philips Electronics NA"), is a manufacturer of CRT Products. Defendant Philips Electronics NA has its global headquarters at 1251 Avenue of the Americas, New York, New York 10020. During the Class Period, Philips Electronics NA manufactured, sold and distributed CRT Products to customers throughout the United States. Philips Electronics NA also manufactured, distributed and sold FPD Products in the United States during the Class Period.

18. Defendant LG Philips Display USA, Inc. ("LGPD"), is a manufacturer of CRT Products and is a subsidiary of Philips Electronics NA. Defendant LG Philips Display USA, Inc. has its global headquarters at 300 W Morgan Rd, Ann Arbor, MI 48108-9108, United States. During the Class Period, LGPD manufactured, sold and distributed CRT Products to customers throughout the United States.

**Samsung**

19. Defendant Samsung Electronics Co., Ltd. ("Samsung Electronics") is a Korean company with its principal place of business at Samsung Main Building, 250, Taepyeongno 2-ga, Jung-gu, Seoul 100-742, Korea. It is the world's largest producer of CRT Products. During the Class Period, Samsung Electronics manufactured, sold, and distributed CRT Products to customers throughout the United States. Samsung Electronics also manufactured, distributed and sold FPD Products in the United States during the Class Period.

20. Defendant Samsung SDI Co., Ltd. ("Samsung SDI"), formerly known as Samsung Display Device Co., has its global headquarters at Samsung Life Insurance Bldg 150, Seoul 100-716, Korea. During the Class Period, Samsung SDI manufactured, sold and distributed CRT Products to customers throughout the United States. Samsung SDI also manufactured, distributed and sold FPD Products in the United States during the Class Period.

21. Defendant Samsung Electronics America, Inc. ("Samsung America") is a New York corporation with its principal place of business at 105 Challenger Road, Ridgefield Park, New Jersey. Samsung America is a wholly-owned and controlled subsidiary of Defendant Samsung Electronics Company, Ltd. During the class Period, Samsung America sold and distributed CRT Products manufactured by Samsung Electronics Company, Ltd. to customers

CLASS ACTION COMPLAINT                6

1   throughout the United States.  Samsung America also sold and distributed FPD Products in the

2   United States during the Class Period.

3       22.    Defendants Samsung Electronics Company, Ltd., Samsung SDI Co., Ltd., and

4   Samsung America are referred to collectively herein as "Samsung."

5       **Toshiba**

6       23.    Defendant Toshiba Corporation is a Japanese company with its principal place of

7   business at 1-1, Shibaura 1-chome, Minato-ku, Tokyo 105-8001, Japan.  During the Class Period,

8   Toshiba Corporation manufactured, sold, and distributed CRT Products to customers throughout

9   the United States.  Toshiba Corporation also manufactured, distributed and sold FPD Products in

10  the United States during the Class Period.

11      24.    Defendant Toshiba America Electronics Components, Inc. is a California

12  corporation with its principal place of business at 19900 MacArthur Boulevard, Suite 400, Irvine,

13  California. Toshiba America Electronics Components, Inc. is a wholly-owned and controlled

14  subsidiary of Toshiba America, Inc., a holding company for Defendant Toshiba Corporation.

15  During the Class Period, Toshiba America Electronics Components, Inc. sold and distributed

16  CRT Products manufactured by Toshiba Corporation to customers throughout the United States.

17  Toshiba America Electronic Components also sold and distributed FPD Products manufactured

18  by Toshiba Corporation in the United States during the Class Period.

19      25.    Defendant Toshiba America Information Systems, Inc. is a California corporation

20  with its principal place of business at 9470 Irvine Blvd., Irvine, California.  Toshiba America

21  Information Systems, Inc. is a wholly-owned and controlled subsidiary of Toshiba America, Inc.,

22  a holding company for Defendant Toshiba Corporation.  During the Class Period, Toshiba

23  America Information Systems, Inc. sold and distributed CRT Products manufactured by Toshiba

24  Corporation to customers throughout the United States.  Toshiba America Information Systems

25  also sold and distributed FPD Products manufactured by Toshiba Corporation in the United

26  States during the Class Period.

27      26.    Defendants Toshiba Corporation, Toshiba America Electronics Components, Inc.,

28  and Toshiba America Information Systems, Inc. are referred to collectively herein as "Toshiba."

CLASS ACTION COMPLAINT              7

**Joint Ventures**

27.     Defendant MT Picture Display Company is a wholly-owned and controlled subsidiary of Defendant Matsushita organized under the laws of Japan with its principal place of business located at Rivage Shinagawa, 1-8, Konan 4-chome, Minato-ku, Tokyo 108-0075, Japan. Prior to April 2007, MT Picture Display Company was a joint venture between Matsushita Electric Industrial Co., Ltd. and Toshiba Corporation named Matsushita Toshiba Picture Display Co. Ltd. This joint venture was created in 2003 and integrated the CRTs operations of its parents. During the Class Period, both MT Picture Display and its predecessor Matsushita Toshiba Picture Display Co. Ltd. sold and distributed CRT Products to customers throughout the United States.

28.     Defendants MT Picture Display Corporation of America (New York) and MT Picture Display Corporation of America (Ohio) were subsidiaries of MT Picture Display Company. Both subsidiaries were incorporated in Maryland and with their principal place of business located at 300 East Lombard Street, Baltimore, MD 21202. During the Class Period, MT Picture Display Corporation of America (New York) and MT Picture Display Corporation of America (Ohio) sold and distributed CRT Products to customers throughout the United States.

29.     Defendant LP Displays (formerly known as LG Philips Display), a joint venture between LG Electronics and Koninklijke Philips Electronics, is organized under the laws of Hong Kong with its principal place of business located at Corporate Communications, 6th Floor, ING Tower, 308 Des Voeux Road Central, Sheung Wan, Hong Kong. During the Class Period, LP Displays sold and distributed CRT Products to customers throughout the United States.

30.     Each defendant committed the acts alleged in this complaint through its officers, directors, agents, employees, or representatives while they were actively engaged in the management, direction, control, or transaction of the Defendant's business or affairs.

31.     Defendants' unlawful and intentional concerted actions have severely damaged and will continue to damage Plaintiff and the members of the Class it seeks to represent.

CLASS ACTION COMPLAINT                8

1

## V.  CO-CONSPIRATORS AND AGENTS

2      32.     Other natural persons, corporations, and entities not named as defendants herein,

3  may have participated in the unlawful conspiratorial activity alleged herein in violation of the

4  antitrust laws of the United States.

5      33.     Whenever in this Complaint reference is made to an act, statement, or transaction

6  of business by any corporation or entity, the allegation means that the corporation or entity acted,

7  stated, or transacted business by or through its directors, members, partners, officers, employees,

8  or agents, while they were engaged in the management, direction, control, or conduct of the

9  corporation's or entity's business and acting within the scope of their authority.

10

## VI.  FACTUAL ALLEGATIONS

11  **CRT Technology**

12      34.     CRT technology has been in use for more than 100 years.  The basic cathode-

13  raytube consists of three elements: the envelope, the electron gun, and the phosphor screen.

14

15

16

17

18  

19

20

21

22

23

24

25  Source: DIYcalculator.com, available at www.diycalculator.com/sp-console.shtml.

26      35.     CRTs are manufactured in several standard sizes, including 17 inch, 19 inch, 27

27  inch and 32 inch.  CRTs manufactured by Defendants are interchangeable with one another.

28

CLASS ACTION COMPLAINT            9

**Trends within the CRT Products Market and Increased Competition from FPD Products**

36.    The worldwide market for CRT Products is and has been large.  In 1997, the worldwide CRTs market exceeded $24 billion in sales.

37.    At the beginning of the Class Period, CRTs were the dominant display technology worldwide.  For example, in 1997, 99.3% of all computer monitors sold worldwide contained CRTs.  In 2005, approximately 47 million CRT monitors were sold worldwide, and approximately 20.3% of these were sold in the United States.

38.    Although the value of all display materials shipped worldwide is projected to rise at an average annual growth rate of 12.8% by 2010, worldwide demand for CRT Products is declining overall because of the growing popularity of FPD Products which are being used in place of CRT Products. (<http://www.bccresearch.com/RepTemplate.cfm?reportID=552&RepDet=HLT&cat=smc&target=repdet...11/13/2007>).  CRT Products' share of the market declined precipitously in the United States where FPD Products achieved more rapid market penetration.

39.    FPD Products may be used to produce the same image as CRT Products but also have many important advantages over CRT Products.  For example, FPD Products are less bulky, require less energy, are easier to read, and do not flicker.

40.    In 1995, recognizing the increasing significance of FPD technologies, Korean manufacturers Samsung and LG Electronics entered the FPD Product market, leading to a surge in FPD Product manufacturing capacity.

41.    The market share of CRT Products declined as other newer technologies emerged and were brought to market.  As demonstrated in the chart below, by 1998, FPD Products had already achieved 32% of the U.S. market for CRT Products.  Penetration by FPD Products is projected to reach 96% by 2009.  FPD Products' global penetration has not been as dramatic as it was in the United States due to the continued popularity of lower-priced CRT Products in China, India and South America.

CLASS ACTION COMPLAINT                    10



Source: David Hsieh, *Flat Panel Display Market Outlook*, DisplaySearch Presentation, Nov. 5, 2005.

42.    CRT TVs currently account for only a minority share of television set revenues in North America (37.3%), Japan (9.5%) and Europe (31.0%).  Naranjo, *The Global Television Market*, DisplaySearch Report, p. 19.

43.    During the Class Period, while demand for CRT Products continued to fall in the United States, Defendants' conspiracy was effective in moderating the normal downward pressures on prices for CRT Products caused by the entry of the new generation of competing technologies.  Indeed, during the Class Period, there were not only periods of unnatural and sustained price stability, but there were also inexplicable increases in the prices of CRTs, despite declining demand due to approaching obsolescence of CRTs caused by the emergence of a new, superior, substitutable technology.

44.    These periods of price stability and price increases for CRTs are fundamentally inconsistent with a competitive market for a product where demand is rapidly decreasing because of the introduction of new superior technologies.

CLASS ACTION COMPLAINT                    11

1

## **Structure of the CRT Product Industry**

2      45.     The CRT Product industry is characterized by a number of structural features that

3  facilitate collusion, including market concentration, the consolidation of manufacturers, multiple

4  interrelated business relationships, significant barriers to entry, and interchangeability of

5  products.

6

7      46.     Defendant Samsung SDI has the largest market share of any CRT Products

8  manufacturer at this point in time.  In 2000, Defendant Samsung SDI had 18% of the global

9  CRTs market.  In 2002, Samsung SDI had 21.8% of the global market for CRT monitors.  In

10  2004, Samsung SDI had a 30% share of the global CRTs market.

11

12      47.     Defendant LP Displays (formerly LG Philips Displays) has the second largest

13  share of the CRT market.  In 2004, LG Philips Displays held 27% of the global market for CRT.

14      48.     Defendant MT Picture Display (formerly Matsushita Toshiba Display Co.) is also

15  a major player in the CRTs market.  In 2004, Matsushita Toshiba Picture Display Co. held 9% of

16  the global market for CRTs.

17

18      49.     Defendant Chunghwa Picture Tubes held 21.7% of the global CRT market in

19  1999.

20      50.     In 2004, Defendants Samsung SDI, LP Displays, MT Picture Display, and

21  Chunghwa Picture Tubes maintained a collective 78% of the global CRT market.

22      51.     The market for CRT Products is subject to high manufacturing and technological

23  barriers to entry.  Efficient fabrication plants are large and costly and require years of research,

24  development and construction.  Technological advances have caused Defendants to undertake

25  significant research and development expenses.

26

27      52.     The CRT Products market has also been subject to substantial consolidation and

28  multiple interrelated business relationships during the Class Period.  Matsushita Electric

CLASS ACTION COMPLAINT               12

1    Industrial Co. Ltd. and Toshiba Corporation combined their efforts by forming Defendant MT

2    Picture Display Company.  At the time of the formation of MT Picture Display, Matsushita and

3    Toshiba had been the fourth and sixth largest CRT manufacturers in the world.  This joint

4    venture combined the entire CRT operations of both parent companies.  MT Picture Display

5    Company specialized in the manufacture of CRTs above 30 inches, supplying some 950,000

6    units annually to the North American market.

7           53.    In November 2000, Defendants LG Electronics and Koninklijke Philips

8    Electronics agreed to enter a 50/50 joint venture that merged their CRT operations.  The resulting

9    joint venture, originally named LG Philips Displays, and renamed LP Displays in 2007, entered

10   the market with a 25% share, making it the second largest CRT manufacturer only behind

11   Samsung SDI at the time.

12          54.    In 2005, Samsung SDI and LG Philips Displays entered into an agreement to

13   share parts with respect to CRTs in an effort to boost their combined market share.

14          55.    Defendants sell their CRT Products through various channels, including to

15   manufacturers of electronic products and devices, and to resellers of CRT Products, and

16   incorporate CRTs into their own manufactured products, which are then sold directly to

17   consumers.

### International Antitrust Investigations

56.    Competition authorities in the United States, Europe, Japan and South Korea

recently engaged in coordinated actions, including raids, targeting the unlawful CRT Products

cartel alleged in this Complaint.  On November 9, 2007, the Reuters news agency reported:

CLASS ACTION COMPLAINT                    13

> Antitrust authorities in Europe and Asia raided a Matsushita Electric Industrial Co. Ltd. unit and other cathode ray tube markers on suspicion of price fixing, weighing on the shares of the Panasonic maker.
>
> ***
>
> Matsushita confirmed Japan's Fair Trade Commission (FTC) had begun a probe of its cathode ray tube unit. MT Picture Display Co. Ltd., while Samsung SDI Co. Ltd. said South Korea's FTC had started an investigation into its CRT business.

(www.reuters.com/article/mergersNews/idUSL0890850720071109).

57.    On November 9, 2007, the European Commission confirmed in Brussels that "on November 8 Commission officials carried out unannounced inspections at the premises of manufacturers of cathode ray tubes." The European Commission's announcement continued stating: "The Commission has reason to believe that the companies concerned may have violated EC Treaty rules on cartels and restrictive business practices."

58.    On November 12, 2007, Chunghwa Picture Tubes, Ltd. confirmed that it had received a subpoena from a California district court relating to CRTs. A federal grand jury operating under the auspices of the United States Department of Justice, Antitrust Division ("DOJ") through its San Francisco office issued the subpoena.

59.    On November 21, 2007, Koninklijke Philips Electronics, N.V. reported that it and its joint venture with LG Electronics, LP Displays, are also targets of the coordinated investigation into collusive practices and other antitrust violations in the CRTs market.

60.    The Defendants include known recidivist antitrust violators. Samsung, for example, was fined $300 million by the DOJ in October 2005 for participating in a conspiracy to fix prices for Dynamic Random Access Memory. It is also under investigation by the DOJ (along with some of the other Defendants, including Toshiba) for fixing prices of Static Random

CLASS ACTION COMPLAINT            14

1    Access Memory. Samsung and Toshiba are also being investigated for collusion among

2    manufacturers of NAND flash memory.

3         61.    Several Defendants, including Samsung and a joint venture between LG

4    Electronics and Koninklijke Philips Electronics, are targets of a coordinated investigation by the

5    DOJ and antitrust authorities in Europe, Japan and South Korea in connection with

6    anticompetitive conduct in the market for LCD Products. Because LCD Products and CRT

7    Products are used in the same primary applications, collusion with respect to CRT Product prices

8    would bolster these same Defendants' LCD pricing cartel. Keeping CRT prices artificially

9    inflated would both increase profits on remaining CRT sales while protecting LCD prices.

10

11

12                          VII. **CLASS ACTION ALLEGATIONS**

13        62.    Plaintiff brings this action on behalf of itself and all others similarly situated (the

14   "Class") pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3). The Class is defined

15   as follows:

16

17                All persons and entities residing in the United States who, from
                  January 1, 1995 through the present, purchased CRT Products in
18                the United States directly from the Defendants. Specifically
                  excluded from this Class are the Defendants; the officers, directors
19                or employees of any Defendant; any entity in which any Defendant
                  has a controlling interest; and any affiliate, legal representative,
20                heir or assign of any Defendant. Also excluded are all
                  governmental entities, and any judicial officer presiding over this
21                action.

22

23        63.    Plaintiff does not know the exact size of the Class, since such information is in the

24   exclusive control of the Defendants. Due to the nature of the trade and commerce involved,

25   however, Plaintiff believes that the Class includes thousands of CRT Products purchasers and is

26   so numerous and geographically dispersed throughout the United States as to render joiner of all

27   Class members impracticable.

28

CLASS ACTION COMPLAINT                    15

64.    There are questions of law and fact common to the Class.  These common questions relate to the existence of the conspiracy alleged, and to the type and common pattern of injury sustained as a result thereof.  The questions include but are not limited to:

a.    Whether Defendants and their co-conspirators engaged in a combination and conspiracy among themselves to fix, raise, maintain or stabilize prices of CRT Products sold in the United States;

b.    The identity of the participants in the conspiracy;

c.    The duration of the conspiracy alleged in this Complaint and the nature and  character of the acts performed by Defendants and their co-conspirators in furtherance of the  conspiracy;

d.    Whether Defendants undertook actions to conceal the unlawful conspiracy, contract or combination described herein;

e.    Whether the conduct of Defendants and their co-conspirators, as alleged in this Complaint, caused injury to the business and property of Plaintiff and other members of the Class;

f.    The effect of Defendants' conspiracy on the prices of CRT Products sold in the United States during the Class Period; and

g.    The appropriate measure of damages sustained by Plaintiff and other members of the Class.

65.    Plaintiff is a member of the Class.  Plaintiff's claims are typical of the claims of other Class members, and Plaintiff will fairly and adequately protect the interests of the members of the Class.  Plaintiff is a direct purchaser of CRT Products from one or more of the Defendants.  Plaintiff's interests are aligned with, and not antagonistic to, those of the other

CLASS ACTION COMPLAINT              16

members of the Class.  In addition, Plaintiff is represented by competent counsel experienced in the prosecution of antitrust and class action litigation.

66.   The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

67.   Defendants have acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

68.   The questions of law and fact common to the members of the Class predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

69.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  The Class is readily definable and is one for which records exist in the files of Defendants and their co-conspirators.  Prosecution as a class action will eliminate the possibility of repetitious litigation.  Treatment as a class action will permit a large number of similarly situated persons to adjudicate their common claims in a single forum simultaneously, efficiently and without duplication of effort and expense that numerous individual actions would engender.  Class treatment will also permit the adjudication of relatively small claims by many class members who otherwise could not afford to litigate an antitrust claim such as is asserted in this Complaint.  This class action presents no difficulties of management that would preclude its maintenance as a class action.

## VIII.  TRADE AND COMMERCE

70.   During the relevant time period, Defendants collectively controlled a significant share of the market for CRT Products, both globally and in the United States.

CLASS ACTION COMPLAINT                    17

71.     Each of the Defendants and their co-conspirators used instrumentalities of interstate and/or foreign commerce to sell and market CRT Products.

72.     The business activities of the Defendants substantially affected interstate trade and commerce.

## X.  FRAUDULENT CONCEALMENT

73.     Throughout and beyond the conspiracy, Defendants and their co-conspirators affirmatively and actively concealed their unlawful conduct from Plaintiff.  Defendants and their co-conspirators conducted their conspiracy in secret and kept it mostly within the confines of their higher-level executives.  Defendants and their co-conspirators publicly provided pre-textual and false justifications regarding their price increases. Defendants and their co-conspirators conducted their conspiracy in secret, concealed the true nature of their unlawful conduct and acts in furtherance thereof, and actively concealed their activities through various other means and methods to avoid detection.  Plaintiff did not discover, an could not have discovered through the exercise of reasonable diligence, that Defendants and their co-conspirators were violating the antitrust laws as alleged herein until November 9, 2007, when it was first publicly reported that manufacturers of CRT Products were being investigated by antitrust authorities in Europe, Japan and South Korea for conspiring to fix the prices of CRT Products before this class action litigation was commenced.

74.     As a result of the active concealment of the conspiracy by Defendants and their co-conspirators entered into a continuing contract, combination or conspiracy to unreasonably restrain trade and commerce in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1 by artificially reducing or eliminating competition in the United States.

75.     In particular, Defendants have combined and conspired to raise, fix, maintain or

CLASS ACTION COMPLAINT              18

stabilize the prices of CRT Products sold in the United States.

76.     As a result of Defendants' unlawful conduct, CRT Products prices were raised, fixed, maintained and stabilized in the United States.

77.     The contract, combination or conspiracy among Defendants consisted of a continuing agreement, understanding and concerted action among Defendants and their co-conspirators.

78.     For purposes of formulating and effectuating their contract, combination or conspiracy, defendants and their co-conspirators did those things they contracted, combined or conspired to do, including:

a.     Participating in meetings and conversations to discuss the prices of CRT Products;

b.     Agreeing to manipulate prices and supply of CRT Products in a manner that deprived direct purchasers of free and open competition;

c.     Issuing price announcements and price quotations in accordance with the agreements reached;

d.     Selling CRT Products to customers in the United States at non-competitive prices.

79.     As a result of Defendants' unlawful conduct, Plaintiff and the other members of the Class have been injured in their business and property in that they have paid more for CRT Products than they otherwise would have paid in the absence of Defendants' unlawful conduct.

CLASS ACTION COMPLAINT             19

1

2

### CLAIM FOR RELIEF
#### (Violation of Section 1 of the Sherman Act, 15 U.S.C. § 1)

3       80.    Plaintiff, on behalf of itself and all others similarly situated, realleges and

4 incorporates, as if fully alleged herein, each of the allegations contained in the preceding

5 paragraphs of this Complaint, and further alleges against Defendants as follows.

6

7       81.    Beginning at least as early as January 1, 1995 and continuing through the present,

8 the exact dates being unknown to Plaintiff, Defendants and various co-conspirators entered into

9 and engaged in a continuing agreement, contract, combination, and conspiracy to fix, raise,

10 maintain, or stabilize the price for CRT Products in unreasonable restraint of trade and commerce

11 in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

12

13      82.    Defendants, through their officers, directors and employees, entered into the

14 contract, combination, trust and conspiracy among themselves and their co-conspirators by,

15 among other things:

16          a.    participating in communications, including discussions of the prices of

17 CRT Products in the United States;

18          b.    agreeing, during those communications, to charge prices at specified levels

19 and otherwise to increase, stabilize and maintain prices of CRT Products sold in the

20 United States; and

21

22          c.    selling CRT Products to various customers in the United States at

23 artificially inflated prices.

24      83.    For the purpose of forming and implementing the alleged combinations,

25 agreements, understandings and concert of action, Defendants and their co-conspirators did those

26 things they conspired to do, including but not limited to the acts alleged above, including actions

27 to fix, raise, maintain and stabilize the price of CRT Products.

28

CLASS ACTION COMPLAINT          20

84.     Defendants have participated in one or more overt acts in furtherance of the conspiracy alleged above, and have participated in the conspiratorial activities described above.

85.     The combination and conspiracy alleged herein has had the following effects, among others:

  a. Price competition in the sale of CRT Products has been restrained, suppressed and/or eliminated throughout the United States;

  b. Prices for CRT Products sold by Defendants and their co-conspirators have been fixed, raised, maintained and stabilized at artificially high, noncompetitive levels throughout the United States; and

  c. Plaintiff and members of the Class have been deprived of the benefits of free and open competition.

86.     As a direct and proximate result of the Defendants' unlawful conduct, Plaintiff and the members of the Class have been injured in their business and property in that they paid more for CRT Products than they otherwise would have paid in the absence of Defendants' unlawful conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays:

1.     That the Court determine that the Sherman Act claim alleged herein may be maintained as a class action under Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure;

2.     That the unlawful conduct, contract, conspiracy or combination alleged herein be adjudged and decreed to be a restraint of trade or commerce in violation of Section 1 of the Sherman Act;

CLASS ACTION COMPLAINT  21

3.      That Plaintiff and the Class recover damages, as provided by federal antitrust laws, and that a joint and several judgment in favor of Plaintiff and the Class be entered against the Defendants in an amount to be trebled in accordance with such laws;

4.      That Defendants, their affiliates, successors, transferees, assignees, and the officers, directors, partners, agents, and employees thereof, and all other persons acting or claiming to act on their behalf, be permanently enjoined and restrained from in any manner: (1) continuing, maintaining, or renewing the conduct, contract, conspiracy or combination alleged herein, or from entering into any other conspiracy alleged herein, or from entering into any other contract, conspiracy or combination having a similar purpose or effect, and from adopting or following any practice, plan, program, or device having a similar purpose or effect; and (2) communicating or causing to be communicated to any other person engaged in the sale of CRT Products, information concerning bids of competitors.

5.      That Plaintiff and members of the Class be awarded pre- and post-judgment interest, and that that interest be awarded at the highest legal rate from and after the date of service of the initial complaint in this action;

6.      That Plaintiff and members of the Class recover their costs of this suit, including reasonable attorneys' fees as provided by law; and

7.      That Plaintiff and members of the Class have such other, further, and different relief as the case may require and the Court may deem just and proper under the circumstances.

CLASS ACTION COMPLAINT          22

1

**JURY TRIAL DEMAND**

2

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial

3

by jury for all issues so triable.

4

5

Dated:     January 25, 2008          SAVERI & SAVERI, INC.

6

7

8

*R. Alexander Saveri*

Guido Saveri (22349) (guido@saveri.com)

9

R. Alexander Saveri (173102) (rick@saveri.com)
Cadio Zirpoli (179108) (cadio@saveri.com)

10

111 Pine Street, Suite 1700
San Francisco, CA 94111

11

Telephone: (415) 217-6810

12

Mark Reinhardt

13

Garrett D. Blanchfield, Jr.
REINHARDT WENDORF & BLANCHFIELD

14

E-1250 First National Bank Building

15

332 Minnesota Street
St. Paul, MN 55101

16

Telephone: (651) 287-2100
Facsimile:  (651) 287-2103

17

18

Charles H. Johnson & Associates, P.A.

19

2599 Mississippi Street, Ste. 101
New Brighton, MN 55112

20

Telephone: (651)633-5685

21

Neal A. Eisenbraun, Chartered

22

2599 Mississippi Street, Ste. 201
New Brighton, MN 55112

23

Telephone: (651) 633-5685

24

Spector, Roseman & Kodroff, P.C.

25

Eugene A. Spector
William G. Caldes

26

1818 Market Street, Suite 2500
Philadelphia, PA 19103

27

Telephone: (215) 496-0300

28

Crt.025

CLASS ACTION COMPLAINT                23