ORIGINAL
FILED

2008 JUL 21 P 3: 33

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

E-filing

1  MILBERG LLP
   JEFF S. WESTERMAN (SBN 94559)
2  One California Plaza
   300 S. Grand Ave., Suite 3900
3  Los Angeles, CA 90071-3172
   Telephone: (213) 617-1200
4  Facsimile: (213) 617-1975
   Email: jwesterman@milberg.com
5

6  MILBERG LLP                                          ADEMI & O'REILLY, LLP
   PETER SAFIRSTEIN (*pro hac vice* admission           GURI ADEMI (*pro hac vice* admission to be
7  to be submitted)                                     submitted)
   ANDREW MORGANTI (*pro hac vice*                      SHPETIM ADEMI (*pro hac vice* admission to
8  admission to be submitted)                           be submitted)
   One Pennsylvania Plaza, 49th Floor                   3620 Layton Avenue
9  New York, NY 10119                                   Cudahay, WI 53100
   Telephone: (212) 594-5300                            Telephone  (414) 482-8000
10 Facsimile: (212) 868-1229                            Facsimile: (414) 482-8001
   Email: psafirstein@milberg.com                       Email: gademi@ademilaw.com
11       amorganti@milberg.com                                 sademi@ademilaw.com

12
13 Counsel for Plaintiffs and
   the Proposed Indirect Purchaser Class

14                    UNITED STATES DISTRICT COURT

15                  NORTHERN DISTRICT OF CALIFORNIA

                                            CV 08        3493

16 JAMES E. ALLEE, KORY PENTLAND                    )  No.                              EDL
   and JIM BROWN on behalf of themselves            )
17 and others similarly situated,                   )
                                                    )
18                         Plaintiffs,              )  CLASS ACTION COMPLAINT
                                                    )
19            vs.                                    )  JURY TRIAL DEMAND
                                                    )
20 MATSUSHITA ELECTRIC INDUSTRIAL,                  )
   CO., LTD.; TOSHIBA CORPORATION;                  )
21 TOSHIBA  AMERICA,  INC.;  MT                      )
   PICTURE  DISPLAY  CO.,  LTD.;                     )
22 SAMSUNG  SDI  CO.,  LTD.; LP                      )
   DISPLAYS   INTERNATIONAL,  LTD.;                  )
23 ROYAL PHILIPS ELECTRONICS N.V.;                  )
   and  CHUNGHWA  PICTURE  TUBES,                    )
24 LTD., and DOES 1-20, inclusive,                   )
                                                    )
25                         Defendants.              )
                                                    )
26
27
28
   CLASS ACTION COMPLAINT

   DOCS\440340\1

FAXED

## I.   INTRODUCTION

1.   Plaintiffs James E. Allee, Kory Pentland and Jim Brown bring this action for damages and injunctive relief under state and federal antitrust laws and common law claims on behalf of themselves individually and on behalf of all persons and entities who indirectly purchased products containing cathode ray tubes ("CRT Products" or "CRTs") in the United States from one or more named Defendants between May 1, 1998, and the present (the "Class Period"). Defendants are the leading manufacturers of televisions, computer monitors, and other electronic devices containing CRTs. Defendants control the majority of the CRT Product industry, a multibillion dollar market, which in 1999 alone generated over $19 billion dollars in gross revenue. During the Class Period, virtually every household in the United States owns, or has owned, at least one CRT Product.

2.   Since the mid-1990's, the CRT industry faced significant economic pressures as customer preferences for other emerging technologies shrank profits and threatened the sustainability of the industry. Plaintiffs are informed and believe, and thereon allege, that in order to maintain price stability, increase profitability, and extend the life of the CRT market, Defendants conspired, combined and contracted to fix, raise, maintain, and stabilize the price at which CRT Products were sold in the United States. Plaintiffs are further informed and believe, and thereon allege, that Defendants fraudulently concealed their anticompetitive conduct from Plaintiffs and the Class in furtherance of the conspiracy. As a result of Defendants' unlawful conduct, Plaintiffs and the other members of the Class paid artificially inflated prices for CRT Products during the Class Period. Such prices exceeded the amount they would have paid if the price for CRT Products had been determined by a competitive market.

## II.   JURISDICTION AND VENUE

3.   This action is instituted under Section 16 of the Clayton Act, 15 U.S.C. § 26, to obtain injunctive relief for violations of Section 1 of the Sherman Act, 15 U.S.C. § 1, to recover damages under state antitrust laws, and to recover costs of suit, including reasonable attorneys'

CLASS ACTION COMPLAINT                                          -1-

DOCS\440340v1

fees, for the injuries that Plaintiffs and all others similarly situated sustained as a result of Defendants' violations of those laws.

4.      The Court has subject matter jurisdiction over the federal claim under 28 U.S.C. §§ 1331 and 1337.  The Court has subject matter jurisdiction over the state law claims under 28 U.S.C. § 1367 because those claims are so related to the federal claim that they form part of the same case or controversy.

5.      This court also has subject matter jurisdiction over this class action pursuant to the Class Action Fairness Act of 2005, which amended 28 U.S.C. § 1332 to add a new subsection (d) conferring federal jurisdiction over class actions where, as here, any member of a class of plaintiffs is a citizen of a state different from any defendant and the aggregated amount in controversy exceeds $5,000,000, exclusive of interest and costs.  This Court also has jurisdiction under 28 U.S.C. § 1332(d) because one or more members of the class is a citizen of a state within the United States and one or more of the Defendants is a citizen or subject of a foreign state.

6.      Venue is laid in this District pursuant to 28 U.S.C. § 1391.  Venue is proper in this judicial district because during the Class Period one or more of the Defendants resided, transacted business, was found, or had agents in this district, and, because a substantial part of the events giving rise to Plaintiffs' claims occurred in this district, and a substantial portion of the affected portion of the interstate trade and commerce described below has been carried out in this district.

### III.   DEFINITIONS

7.      As used herein, the term "CRT Products" means cathode ray tubes and products containing cathode ray tubes, including television sets and computer monitors.

8.      The "Class Period" or "relevant period" means the period beginning at least May 1, 1998, through the present.

9.      "Person" means any individual, partnership, corporation, association, or other business or legal entity.

10.     The "Indirect Purchaser States" are Arizona, California, District of Columbia, Iowa, Kansas, Maine, Michigan, Minnesota, Mississippi, Nebraska, Nevada, New Mexico, North Carolina, North Dakota, South Dakota, Tennessee, Vermont, West Virginia, and Wisconsin.

## IV.   PARTIES

**A.     Plaintiffs**

11.     Plaintiff James E. Allee ("Allee") is a resident of the City of Waukesha in the State of Wisconsin.   During the relevant period, Allee indirectly purchased CRT Products manufactured and/or distributed by one or more of the Defendants or their co-conspirators during the Class Period and has been injured by reason of the antitrust violations alleged in the Complaint.

12.     Plaintiff Kory Pentland ("Pentland") is a resident of the City of Grand Rapids in the State of Michigan. During the relevant period, Pentland indirectly purchased CRT Products manufactured and/or distributed by one or more of the Defendants or their co-conspirators during the Class Period and has been injured by reason of the antitrust violations alleged in the Complaint.

13.     Plaintiff Jim Brown ("Brown") is a resident of the City of Belleville in the State of Michigan.    During the relevant period, Brown indirectly purchased CRT Products manufactured and/or distributed by one or more of the Defendants or their co-conspirators during the Class Period and has been injured by reason of the antitrust violations alleged in the Complaint.

**B.     Defendants**

14.     Defendant Matsushita Electric Industrial Co., Ltd. ("Matsushita") (n/k/a Panasonic Corporation of North America, based in Secaucus, New Jersey) is a business entity organized under the laws of Japan, with its principal place of business at 1006, Oaza Kadoma, Kadoma City, Osaka 571-8501, Japan.   During the Class Period, Matsushita's CRT Products were either manufactured, sold or distributed throughout the United States, including under the brand names Panasonic and JVC.

CLASS ACTION COMPLAINT

-3-

DOCS\440340v1

15.     Defendant Toshiba Corporation is a business entity organized under the laws of Japan, with its principal place of business at 1-1, Shibaura 1-chome, Minato-ku, Tokyo 105-8001, Japan.   During the Class Period, Toshiba Corporation's CRT Products were either manufactured, sold or distributed throughout the United States.

16.     Defendant Toshiba America, Inc. ("Toshiba America") is a wholly owned and controlled subsidiary of Defendant Toshiba Corporation.   Toshiba America is a business entity organized under the laws of New York, with its principal place of business at 1251 Avenue of the Americas, Suite 4110, New York, New York, 10020.   During the Class Period, Toshiba America's CRT Products were either manufactured, sold or distributed throughout the United States.

17.     Defendants Toshiba Corporation and America, Inc. are referred to collectively herein as "Toshiba."

18.     Upon information and belief, defendant MT Picture Display Co., Ltd. ("MT Picture Display") is a joint venture between Defendants Matsushita and Toshiba; is a business entity organized under the laws of Japan, with its principal place of business at 1-1, Saiwai-cho, Takatsuki City 569-1193, Osaka, Japan; and during the Class Period, MT Picture Display's CRT Products were either manufactured, sold or distributed throughout the United States.

19.     Defendant Samsung SDI Co. Ltd. ("Samsung SDI") is a business entity organized under the laws of South Korea, with its principal place of business at 575, Shin-Dong Yeongtong-Gu, Suwon-Si, Kyeongai-Do, 442-390, South Korea.   During the Class Period, Samsung SDI's CRT Products were either manufactured, sold or distributed throughout the United States.

20.     Defendant LP Displays International, Ltd. ("LP Displays") is a business entity organized under the laws of Hong Kong, with its principal place of business at 6th Floor, ING Tower, 308 Des Voeux Road Central, Sheung Wan, Hong Kong, China.   During the Class Period, LP Displays' CRT Products were either manufactured, sold or distributed throughout the United States.

CLASS ACTION COMPLAINT

-4-

21.     Defendant Royal Philips Electronics N.V. ("Royal Philips") is a business entity organized under the laws of the Netherlands, with its principal place of business at Breitner Center, Amstelplein 2, 1096 BC Amsterdam, The Netherlands.  During the Class Period, Royal Philips' CRT Products were either manufactured, sold or distributed throughout the United States.

22.     Defendant Chunghwa Picture Tubes, Ltd. ("Chunghwa") is a business entity organized under the laws of Taiwan, with its principal place of business at No. 1127 Heping Road, Padeh City, Taoyuan, Taiwan, 334 (R.O.C.).  During the Class Period, Chunghwa's CRT Products were either manufactured, sold or distributed throughout the United States.

23.     The true names and capacities of defendants DOES 1-20 are unknown to Plaintiffs.  Each of such fictitiously named defendants has participated or acted in concert or in furtherance of the violations alleged herein and has performed acts and made statements in furtherance thereof. When and if Plaintiffs learn the identity of such persons, Plaintiffs will amend this Complaint to show such Defendant's true name and capacity.

## V.    DEFENDANTS AND CO-CONSPIRATORS

24.     Various other persons, firms and corporations, not named as Defendants herein, and presently unknown to Plaintiffs, have participated as co-conspirators with Defendants and have performed acts and made statements in furtherance of the conspiracy and/or in furtherance of the anticompetitive or unfair conduct.

25.     Whenever in this Complaint reference is made to any act, deed or transaction of any corporation, the allegation means that the corporation engaged in the act, deed or transaction by or through its officers, directors, agents, employees or representatives while they were actively engaged in the management, direction, control or transaction of the corporation's business or affairs.

26.     Each of the Defendants named herein acted as the agent or joint venturer of or for the other Defendants with respect to the acts, violations, and common course of conduct alleged

CLASS ACTION COMPLAINT                                                                    -5-

herein.  Each Defendant, which is a subsidiary of a foreign parent, acts as the sole United States agent for CRT Products made by its parent company.

## VI.   INTERSTATE TRADE AND COMMERCE

27.   Throughout the Class Period, there was a continuous and uninterrupted flow of CRT Product sales in interstate and international commerce throughout the United States.

28.   Defendants' unlawful activities, as described herein, took place within the flow of interstate commerce to CRT Product purchasers located in states other than the states in which Defendants are located, as well as throughout the world, and had a direct, substantial, and reasonably foreseeable effect upon interstate and international commerce, including the United States CRT Products market.

## VII.   CLASS ACTION ALLEGATIONS

29.   Plaintiffs bring this action on behalf of themselves and as a class action pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure on behalf of all members of the following class (the "Nationwide Class"):

> All persons and or entities residing in the United States who or which indirectly purchased CRT Products in the United States for their own use and not for resale, at any time during the period from May 1, 1998 through the present.  Specifically excluded from this Class are Defendants; the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and, any affiliate legal representative, heir or assign of any Defendant.  Also excluded are any federal, state or local government entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

30.   Plaintiffs also bring this action on behalf of themselves and as a class action pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure and/or respective state statutes(s), on behalf of all members of the following State classes or subclasses (collectively "Indirect Purchaser State Classes"): Arizona, California, District of Columbia, Iowa, Kansas, Maine, Michigan, Minnesota, Mississippi, Nebraska, Nevada, New Mexico, North Carolina, North Dakota, South Dakota, Tennessee, Vermont, West Virginia, and Wisconsin.

31.   This action has been brought and may properly be maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure for the following reasons:

CLASS ACTION COMPLAINT

-6-

(a)     The Classes are ascertainable and there is a well-defined community of interest among members of the Classes;

(b)     Based upon the nature of trade and commerce involved and the number of indirect purchasers of CRT Products, Plaintiffs believe that the number of Class members is very large, and therefore joinder, of all Class members is not practicable;

(c)     Plaintiffs' claims are typical of Class members' claims because Plaintiffs indirectly purchased CRT Products manufactured by Defendants or their co-conspirators, and therefore Plaintiffs' claims arise from the same common course of conduct giving rise to the claims of Class members and the relief sought is common to the Classes;

(d)     The following common questions of law or fact, among others, exist as to the members of the Classes:

(i)     Whether Defendants formed and operated a combination or conspiracy to fix, raise, maintain, or stabilize the prices of CRT Products;

(ii)     Whether the combination or conspiracy caused the price of CRT Products to be higher than they would have been in the absence of Defendants' conduct;

(iii)     The operative time period of Defendants' combination or conspiracy;

(iv)     Whether Defendants' conduct caused injury to the business or property of Plaintiffs and the members of the Classes;

(v)     The appropriate measure of the amount of damages suffered by the Classes;

(vi)     Whether Defendants' conduct violates Section 1 of the Sherman Act (15 U.S.C. § 1) as alleged in the First Claim for Relief;

(vii)     Whether Defendants' conduct violates the Indirect Purchaser States' antitrust laws as alleged in the Second Claim for Relief; and

(viii)     The appropriate nature of class-wide equitable relief.

CLASS ACTION COMPLAINT                                              -7-

DOCS\440340v1

1    (e)    These and other questions of law and fact common to the members of the

2    Classes predominate over any questions affecting only individual members, including legal and

3    factual issues relating to liability and damages;

4    (f)    After determination of the predominant common issues identified above, if

5    necessary or appropriate, the Classes can be divided into logical and manageable subclasses;

6    (g)    Plaintiffs will fairly and adequately protect the interests of the Classes in

7    that Plaintiffs have no interests that are antagonistic to other members of the Classes and have

8    retained counsel competent and experienced in the prosecution of class actions and antitrust

9    litigation to represent them and the Classes;

10    (h)    A class action is superior to other available methods for the fair and

11    efficient adjudication of this litigation since individual joinder of all damages for Class members

12    is impractical.  The damages suffered by the individual Class members are relatively small, given

13    the expense and burden of individual prosecution of the claims asserted in this litigation.  Thus,

14    absent the availability of class action procedures it would not be feasible for Class members to

15    redress the wrongs done to them.  Further, individual litigation presents the potential for

16    inconsistent or contradictory judgments and would greatly magnify the delay and expense to all

17    parties and the court system.  Therefore, the class action device presents far fewer case

18    management difficulties and will provide the benefits of unitary adjudication, economy of scale

19    and comprehensive supervision in a single court;

20    (i)    Defendants have acted, and/or refused to act, on grounds generally

21    applicable to the Classes, thereby making appropriate final injunctive relief with respect to the

22    Classes as a whole; and

23    (j)    In the absence of a class action, Defendants would be unjustly enriched

24    because they would be able to retain the benefits and fruits of their wrongful conduct.

25

26

27

28

CLASS ACTION COMPLAINT                                                                  -8-

DOCS\440340v1

# VIII.   FACTUAL ALLEGATIONS

## A.    The Relevant Product Market

32.    CRT technology has been in use for more than 100 years. The basic cathode ray tube consists of three elements: the envelope, the electron gun, and the phosphor screen.



Source: http://www.diycalculator.com/sp-console.shtml

33.    CRTs are manufactured in several standard sizes including 17 inch, 19 inch, 27 inch and 32 inch.  CRTs manufactured by Defendants are interchangeable with one another.

34.    The worldwide market for CRT Products is and has been large. In 1997, the worldwide CRTs market exceeded $24 billion in sales.

35.    At the beginning of the Class Period, CRTs were the dominant display technology worldwide.  For example, in 1997, 99.3% of all computer monitors sold worldwide contained CRTs.  In 2005, approximately 47 million CRT monitors were sold worldwide, and approximately 20.3% of these were sold in the United States.

36.    Although the value of all display materials shipped worldwide is projected to rise at an average annual growth rate of 12.8% by 2010, worldwide demand for CRT Products is

declining overall because of the growing popularity of newer technologies (*e.g.*, FPD products) which are being used in place of CRT Products.

37.      FPD Products may be used to produce the same image as CRT Products, but also have many important advantages over CRT Products.  For example, FPD products are less bulky, lighter, require less energy, are easier to read, and do not flicker.

**B.      Oligopolistic Nature of the CRT Industry**

38.      During the Class Period, the CRT industry has been dominated by relatively few companies.  In 2002 for example, three companies — defendants LP Displays (formerly known as LG.Philips Displays), Samsung, and Chunghwa — controlled approximately 62% of the CRT market.  In addition to these three companies, other named Defendants formed a substantial portion of the remaining CRT market.

| Company | Share |
| --- | --- |
| LG.Philips Displays | 27% |
| Samsung SDI | 24% |
| Chunghwa Picture Tubes | 11% |
| Japanese Producers[1] | 15% |
| Other | 23% |

Source:  The Electronic Times, compiled by DigiTimes, June 2002

39.      The CRT industry also had significant consolidation during the Class Period, including but not limited to:  (a) the creation of LG.Philips Displays in 2001, which was a joint venture between Philips and LG Electronics' CRT businesses; (b) the 2002 merger of Toshiba and Matsushita into Matsushita-Toshiba; and (c) Orion's agreement to manufacture CRT Products for Toshiba, which effectively took Toshiba's capacity out of the market.

40.      This concentration of market share facilitated Defendants' ability to implement the conspiracy.  Involvement in long-standing joint ventures, both in the CRT market and closely related markets, also gave these supposed competitors continuous opportunities to discuss pricing, capacity utilization, and other important prospective market information.  The mutually

---

[1]      "Japanese Producers" includes defendants Hitachi and Toshiba.

CLASS ACTION COMPLAINT

-10-

DOCS\440340v1

beneficial nature of the business relations between certain Defendants not only provided the opportunity to conspire, it also created a financial incentive to do so.

41.     The CRT product industry is characterized by a number of structural features that facilitate collusion, including market concentration, the consolidation of manufacturers, multiple interrelated business relationships, significant barriers to entry and interchangeability of products.

42.     Defendant Samsung SDI has the largest market share of any CRT Products manufacturer.  In 2000, Defendant Samsung SDI had 18% of the global CRTs market.  In 2002, Samsung SDI had 21.8% of the global market for CRT monitors.  In 2004, Samsung SDI had a 30% share of the global CRTs market.

43.     Defendant LP Displays (formerly LG.Philips Displays) has the second largest share of the CRT market.  In 2004, LG.Philips Displays held 27% of the global market for CRT.

44.     Defendant MT Picture Display (formerly Matsushita Toshiba Display Co.) is also a major player in the CRT market.  In 2004, Matsushita Toshiba Picture Display Co. held 9% of the global market for CRTs.

45.     Defendant Chunghwa Picture Tubes held 21.7% of the global CRT market in 1999.

46.     In 2004, Defendants Samsung SDI, LP Displays, MT Picture Display, and Chunghwa Picture Tubes maintained a collective 78% of the global CRT market.

47.     The CRT Products market has also been subject to substantial consolidation and multiple interrelated business relationships during the Class Period. Matsushita Electric Industrial Co. Ltd. and Toshiba Corporation combined to form Defendant MT Picture Display Company.  Before the combination of MT Picture Display Company, Matsushita and Toshiba had been the fourth and sixth largest CRT manufacturers in the world.  This joint venture combined the entire CRT operations of both parent companies. MT Picture Display Company specialized in the manufacture of CRTs above 30 inches, supplying some 950,000 units annually to the North American market.

CLASS ACTION COMPLAINT

-11-

48.     In 2005, Samsung SDI and LG Philips Displays entered into an agreement to share parts with respect to CRTs in an effort to boost their combined market share.

49.     Defendants sell their CRT Products through various channels, including to manufacturers of electronic products and devices, and to resellers of CRT Products.   These electronic products and devices and CRT Products are then sold, directly or indirectly, to consumers and are not altered during the course of sale.

## IX.   DEFENDANTS' ALLEGED ANTICOMPETITIVE CONDUCT

50.     During the Class Period, Plaintiffs are informed and believe, while demand for CRT Products fell in the United States, Defendants' conspiracy was effective in moderating the normal downward pressures on prices for CRT Products caused by the entry of the new generation of competing technologies.

51.     During the Class Period, there were not only periods of unnatural and sustained price stability, but there were also inexplicable increases in the prices of CRTs, despite declining demand due to approaching obsolescence of CRTs caused by the emergence of a new, superior, substitutable technology.

52.     These periods of price stability and price increases for CRTs are fundamentally inconsistent with a competitive market for a product where demand is rapidly decreasing because of the introduction of new superior technologies.

53.     The aforesaid contract, combination or conspiracy consisted of a continuing combination, agreement, understanding, and concert of action among the Defendants and co-conspirators, the substantial terms of which were to fix, raise, maintain and stabilize the price of CRT Products.

54.     Defendants have a collective interest to fix, maintain, or otherwise stabilize the prices of CRT Products in order to maximize their profit by depriving free and open competition in the CRT Products industry.

55.     Upon information and belief, Defendants and their co-conspirators have engaged in a contract, combination, trust or conspiracy, the effect of which was to raise the prices at

CLASS ACTION COMPLAINT

-12-

which they sold CRT Products to artificially inflated levels from at least May 1, 1998, through the present.

## X.   GLOBAL ANTITRUST REGULATORS PROBE THE CRT PRODUCT INDUSTRY

56.     Since late 2007, antitrust enforcement authorities in multiple countries have begun investigating the CRT industry for possible antitrust violations.

57.     On November 8, 2007, the European Commission stated in a press release:

> The European Commission can confirm that on 8th November 2007 Commission officials carried out unannounced inspections at the premises of manufacturers of cathode ray tubes (CRTs).  Cathode ray tubes are used in television sets and computer monitors.  The Commission has reason to believe that the companies concerned may have violated EC Treaty rules on cartels and restrictive business practices (Article 81).

> The Commission officials were accompanied by their counterparts from the relevant national competition authorities.

> Surprise inspections are a preliminary step in investigations into suspected cartels.

58.     Also on November 9, 2007, the Associated Press news agency reported the following:

> Japan's antitrust officials searched a subsidiary of Matsushita Electric Industrial Co. on suspicion of forming an international cartel to fix prices for cathode-ray tubes for television, an official and media reports said Friday.

> MT Picture Display Co., a 100 percent subsidiary of Matsushita, is suspected of fixing prices for CRTs with other manufacturers in South Korea, Taiwan and Hong Kong, Japanese business daily Nikkei reported Friday.

> Antitrust officials in Japan, South Korea, the United States and the European Union have begun investigations, the paper said….

> * * *

> Japan's Fair Trade Commission conducted an on-sight inspection of MT Picture Display Thursday, said Akira Kadota, a spokesman for Matsushita, the Osaka-based maker of Panasonic-brand products.

> * * *

> Nikkei said the companies including South Korea's Samsung SDI are suspected of forming a cartel around 2005 to keep the price of CRTs from falling, citing unnamed officials.

59.     On November 8, 2007, the Bloomberg news agency further reported the following:

> Japanese and European Union antitrust authorities carried out raids at companies in the cathode-ray tube industry as part of a price-fixing investigation…. Japan's Fair Trade Commission also began a probe of a joint venture between Matsushita Electric Industrial Co. and Toshiba Corp., Munestsugu Takeda, a spokesman for Matsushita, said by telephone.
>
> * * *
>
> Cathode-ray tubes are used in television sets and computer monitors. Matsushita and Toshiba merged their cathode-ray tube units to form Matsushita Toshiba Picture Display Co. in 2003. The companies said at the time that the joint venture was the world's third-largest maker of television tubes.

60.     On November 9, 2007, the Agence France-Presse ("AFP") news agency reported the following:

> South Korea's anti-trust watchdog has launched a probe into Samsung SDI as part of an international investigation into alleged price-fixing, officials said Friday.
>
> The Fair Trade Commission is investigating allegations that Samsung SDI colluded with foreign rivals to fix the prices of cathode ray tubes (CRTs) for television.
>
> 'It is part of an international probe into alleged price-fixing this week. We are cooperating with the Fair Trade Commission,' a Samsung SDI spokesman told AFP.

61.     On November 12, 2007, Defendant Chunghwa announced, via a filing with the Taiwan Stock Exchange, that it received a summons from the United States Department of Justice relating to a CRT antitrust price-fixing investigation.

62.     On November 16, 2007, *BNA's Antitrust & Trade Regulation* reported that "Since 2005, [Japan Fair Trade Commission] sources alleged, MT Picture Display held 'tea parties' with Samsung and other manufacturers and exchanged information on picture tube prices in Asia and Europe."

63.     On November 21, 2007, Philips issued a press release and stated the following:

> Competition law authorities in several jurisdictions have commenced investigations into possible anticompetitive activities in the Cathode-Ray Tubes, or CRT, industry. Royal Philips Electronics (NYSE:PHG, AEX: PHI) today

---

CLASS ACTION COMPLAINT

-14-

DOCS\440340v1

announced that, as one of the companies that was active in the CRT business, it is subject to one or more of these ongoing investigations.

64.     Defendants, through their officers, directors and employees, effectuated the aforesaid contract, combination, trust or conspiracy between themselves and their co-conspirators by, among other things:

(a)     participating in meetings and conversations, including through various trade associations and committees, to discuss the prices of products containing CRTs in the United States;

(b)     agreeing, during those meetings and conversations, to charge prices at specified levels and otherwise to increase and maintain prices of products containing CRTs sold in the United States;

(c)     issuing price announcements and quotations in accordance with the agreements reached; and

(d)     selling products containing CRTs to various customers in the United States at non-competitive prices.

65.     The aforesaid combination and conspiracy has had the following effects, among others:

(a)     price competition in the CRT industry has been suppressed, restrained and eliminated;

(b)     the prices of CRT Products have been raised, fixed, maintained and stabilized at artificial and non-competitive levels; and

(c)     consumers of CRT Products were deprived of free and open competition in the CRT market.

## XI.     INJURY TO PLAINTIFFS AND MEMBERS OF THE CLASS

66.     During the period, covered inflated prices for CRT Products were passed-on to Plaintiffs and the other members of the Class.  By reason of the alleged violations of the antitrust laws, Plaintiffs and the other members of the Class paid higher prices for CRT Products than they would have paid in the absence of the illegal contract, combination or conspiracy, and, as a

CLASS ACTION COMPLAINT

-15-

result, have been injured in their business and have suffered damages in an amount presently undetermined.

67.     The specific amounts of damages have not yet been determined because such determination will require discovery.

**A.     Effects of Defendants' Antitrust Violations**

68.     The above combination and conspiracy has had the following effects, among others:

(a)     Price competition in the sale of CRT Products by Defendants and their co-conspirators has been restrained, suppressed and eliminated throughout the United States;

(b)     Prices for CRT Products sold by Defendants has been raised, fixed, maintained and stabilized at artificially high and noncompetitive levels throughout the United States; and

(c)     Indirect purchasers of CRT Products from Defendants have been deprived of the benefit of free and open competition in the purchase of CRT Products.

69.     As a direct and proximate result of the unlawful conduct of Defendants, Plaintiffs and other members of the class(es) have been injured in their business and property in that they paid more for CRT Products than they otherwise would have paid in the absence of the unlawful conduct of Defendants.

## XII.   VIOLATIONS ALLEGED

### First Claim of Relief

### (Violation of Section 1 of the Sherman Act)

70.     Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

71.     Beginning at a time unknown to Plaintiffs, but at least as early as May 1, 1998, through the present, the exact dates being unknown to Plaintiffs and exclusively within the knowledge of Defendants, Defendants and their co-conspirators, entered into a continuing

agreement, understanding, and conspiracy to unreasonably restrain trade and commerce in the United States, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

72.    In particular, Defendants have combined and conspired to fix, raise, maintain or stabilize the prices of CRT Products sold in the United States.

73.    Defendants, by their unlawful conspiracy, artificially raised, inflated, and maintained the market prices of CRT Products as herein alleged.

74.    The contract, combination or conspiracy consisted of a continuing agreement, understanding and concert of action among Defendants and their co-conspirators, the substantial terms of which were to fix, raise, maintain and stabilize the prices of CRT Products they sold in the United States and elsewhere.

75.    In formulating and carrying out the alleged agreement, understanding, and conspiracy, Defendants and their co-conspirators did those things that they combined and conspired to do, including, but not limited to the acts, practices, and course of conduct set forth above, and the following, among others:

(a)    Participated in meetings and conversations to discuss the prices of CRT Products;

(b)    Agreed to manipulate prices and the supply of CRT Products in a manner that deprived purchasers of CRT Products of free and open competition;

(c)    Issued price announcements and price quotations in accordance with the agreements reached; and

(d)    Sold CRT Products to customers in the United States at non-competitive prices.

76.    The combination and conspiracy alleged herein has had the following effects, among others:

(a)    Price competition in the sale of CRT Products has been restrained, suppressed and/or eliminated in the United States;

CLASS ACTION COMPLAINT

-17-

(b)    Prices for CRT Products sold by Defendants and their co-conspirators have been fixed, raised, maintained and stabilized at artificially high, non-competitive levels throughout the United States; and

(c)    Those who purchased CRT Products directly or indirectly from Defendants have been deprived the benefits of free and open competition.

77.    As a direct result of the unlawful conduct of Defendants and their co-conspirators in furtherance of their continuing contract, combination or conspiracy, Plaintiffs and the members of the Nationwide Class have been injured and will continue to be injured in their business and property by paying more for CRT Products purchased indirectly from the Defendants and their co-conspirators than they would have paid and will pay in the absence of the combination and conspiracy.

78.    These violations are continuing and will continue unless enjoined by this Court.

79.    Pursuant to Section 16 of the Clayton Act, 15 U.S.C. § 26, Plaintiffs and the Nationwide Class seek the issuance of an injunction against Defendants, preventing and restraining the violations alleged herein.

## Second Claim of Relief

## (Violation of State Antitrust Statutes)

80.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

81.    Defendants' intentional and purposeful anticompetitive acts that are described above, including but not limited to acts of collusion to set prices and the actual act of price fixing itself, were intended to and did in fact cause Plaintiffs and the members of the Indirect Purchaser State Classes to pay supracompetitive prices for CRT Products purchased in the Indirect Purchaser States.

82.    Defendants' contract, combination, and conspiracy as described above is in violation of the following state antitrust statutes.

| CLASS ACTION COMPLAINT | -18- |
|---|---|

83.     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Arizona Revised Stat. §§ 44-1401 et seq.

84.     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of California Business & Professions Code § 16720 et seq.

85.     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of District of Columbia Code Ann. §§ 280-4503 et seq.

86.     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Iowa Code §§ 553.1 et seq.

87.     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Kansas Stat. Ann. §§ 50-101 et seq.

88.     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Maine Rev. Stat. Ann. 10 §§ 1101 et seq.

89.     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Michigan Comp. Laws Ann. §§ 445.773 et seq.

90.     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Minnesota Stat. §§ 325D.52 et seq.

91.     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Mississippi Code Ann. § 75-21-1 et seq.

92.     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Nebraska Rev. Stat. § 59-901 et seq.

93.     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Nevada Rev. Stat. Ann. §§ 598A et seq.

94.     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of New Mexico Stat. Ann. §§ 57-1-1 et seq.

95.     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of North Carolina Gen. Stat. §§ 75-1 et seq.

CLASS ACTION COMPLAINT

-19-

96.    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of North Dakota Cent. Code §§ 51-08.1-01 et seq.

97.    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of South Dakota Codified Laws Ann. §§ 37-1 et seq.

98.    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Tennessee Code Ann. §§ 47-25-101 et seq.

99.    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Vermont Stat. Ann. 9 §§ 2453 et seq.

100.    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of West Virginia Code §§ 47-18-1 et seq.

101.    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Wisconsin Stat. §§ 133.01 et seq.

102.    Class members in each of the states listed above paid supracompetitive, artificially inflated prices for CRT Products.  As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Indirect Purchaser State Classes have been injured in their business and property in that they paid more for CRT Products than they otherwise would have paid in the absence of Defendants' unlawful conduct.

103.    As a result of Defendants' and their co-conspirators' violation of the above Indirect Purchaser States' antitrust laws, Plaintiffs seek damages, to be trebled where permitted by a particular state's antitrust law, and costs of suit, including reasonable attorneys' fees, to the extent permitted by the above Indirect Purchaser States' antitrust laws.

## **Third Claim of Relief**

### **(Unjust Enrichment and Disgorgement of Profits)**

104.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

105.    Defendants have been unjustly enriched through overpayments by Plaintiffs and the Class members and the resulting profits.

CLASS ACTION COMPLAINT

-20-

106.    Under common law principles of unjust enrichment, Defendants should not be permitted to retain the benefits conferred via overpayments by Plaintiffs and the members of the Classes.

107.    Plaintiffs seek disgorgement of all profits resulting from such overpayments and establishment of a constructive trust from which Plaintiffs and the Class members may seek restitution.

### XIII.   FRAUDULENT CONCEALMENT

108.    Throughout the relevant period, Defendants affirmatively and fraudulently concealed their unlawful conduct against Plaintiffs and the Class.

109.    Plaintiffs and the members of the Class did not discover, and could not discover through the exercise of reasonable diligence, that Defendants were violating the antitrust laws as alleged herein until shortly before this litigation was commenced.  Nor could Plaintiffs and the Class members have discovered the violations earlier than that time because Defendants conducted their conspiracy in secret, concealed the nature of their unlawful conduct and acts in furtherance thereof, and fraudulently concealed their activities through various other means and methods designed to avoid detection.  The conspiracy was by its nature self-concealing.

110.    Defendants engaged in a successful, illegal price-fixing conspiracy with respect to CRT Products, which they affirmatively concealed, in at least the following respects:

(a)    By agreeing among themselves not to discuss publicly, or otherwise reveal, the nature and substance of the acts and communications in furtherance of their illegal scheme; and

(b)    By giving false and pretextual reasons for their CRT Product price increases during the relevant period and by describing such pricing falsely as being the result of external costs rather than collusion.

111.    As a result of Defendants' fraudulent concealment of their conspiracy, Plaintiffs and the Class assert the tolling of any applicable statute of limitations affecting the rights of action of Plaintiffs and the members of the Classes.

CLASS ACTION COMPLAINT

-21-

# XIV.   PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray as follows:

A.     That the Court determine that the claims alleged herein under the Sherman Act, state antitrust laws and/or unfair competition laws and common law, may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure;

B.     That the Court adjudge and decree that the unlawful conduct, contract, combination, and conspiracy alleged herein constitutes:

(a)     A violation of the Sherman Act, 15 U.S.C. § 1, as alleged in the First Claim for Relief;

(b)     A violation of the Indirect Purchaser States' antitrust laws as alleged in the Second Claim for Relief; and

(c)     Acts of unjust enrichment as set forth in the Third Claim for Relief herein.

C.     That Plaintiffs and the Indirect Purchaser State Classes recover damages, as provided by the Indirect Purchaser States' antitrust and unfair competition laws, and that a joint and several judgment in favor of Plaintiffs and the Classes be entered against Defendants in an amount to be trebled in accordance with such laws;

D.     That Defendants, their co-conspirators, successors, transferees, assigns, parents, subsidiaries, affiliates, and the officers, directors, partners, agents, and employees thereof, and all other persons acting or claiming to act on behalf of Defendants, or in concert with them, be permanently enjoined and restrained from, in any manner, directly or indirectly, continuing, maintaining or renewing the combinations, conspiracy, agreement, understanding or concert of action, or adopting or following any practice, plan, program or design having a similar purpose or effect in restraining competition;

E.     That Plaintiffs and the Classes be awarded restitution, including disgorgement of profits obtained by Defendants as a result of their acts of unfair competition and acts of unjust enrichment;

F.      That the Court award Plaintiffs and the Classes they represent pre-judgment and post-judgment interest as permitted by law;

G.      That Plaintiffs and the members of the Classes recover their costs of suit, including reasonable attorneys' fees as provided by law; and

H.      That the Court award Plaintiffs and the Classes they represent such other and further relief as may be necessary and appropriate.

## XV.   JURY TRIAL DEMANDED

Plaintiffs demand a trial by jury of all of the claims asserted in this Complaint so triable.

DATED:  July 21, 2008

MILBERG LLP
JEFF S. WESTERMAN

Jeff S. Westerman

One California Plaza
300 South Grand Avenue, Suite 3900
Los Angeles, CA 90071
Telephone: (213) 617-1200
Facsimile:  (213) 617-1975
Email: jwesterman@milberg.com

MILBERG LLP
PETER SAFIRSTEIN (*pro hac vice* admission to be submitted)
ANDREW MORGANTI (*pro hac vice* admission to be submitted)
One Pennsylvania Plaza
New York, NY  10119
Telephone: (212) 594-5300
Facsimile:  (212) 868-1229
Email: psafirstein@milberg.com
         amorganti@milberg.com

CLASS ACTION COMPLAINT

-23-

DOCS\440340v1

ADEMI & O'REILLY, LLP
Guri Ademi (*pro hac vice* admission to be submitted)
Shpetim Ademi (*pro hac vice* admission to be submitted)
3620 Layton Avenue
Cudahay, WI 53100
Telephone:  (414) 482-8000
Facsimile:  (414) 482-8001
Email: gademi@ademilaw.com
        sademi@ademilaw.com

*Counsel for Plaintiffs and the Proposed Indirect Purchaser Class*

CLASS ACTION COMPLAINT

-24-

DOCS\440340v1