MARIO N. ALIOTO, ESQ. (56433)
LAUREN C. RUSSELL, ESQ. (241151)
TRUMP, ALIOTO, TRUMP & PRESCOTT, LLP
2280 Union Street
San Francisco, CA  94123
Telephone:  (415) 563-7200
Facsimile: (415) 346-0679
E-mail: malioto@tatp.com
laurenrussell@tatp.com

*Interim Lead Counsel*
*for the Indirect Purchaser Plaintiffs*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION** ) | Master File No. CV-07-5944 SC |
| ) | |
| ) | MDL No. 1917 |
| ) | |
| ) | **INDIRECT PURCHASER PLAINTIFFS'** |
| ) | **REPLY RE: MOTION TO AUTHORIZE** |
| ) | **SERVICE ON CERTAIN FOREIGN** |
| ) | **DEFENDANTS PURSUANT TO** |
| ) | **FEDERAL RULE OF CIVIL** |
| ) | **PROCEDURE 4(f)(3)** |
| ) | |
| **This document relates to:** ) | Date: September 5, 2008 |
| ) | Time: 10:00 a.m. |
| **ALL INDIRECT PURCHASER ACTIONS** ) | Court: One, 17th Floor |
| ) | |
| ) | The Honorable Samuel Conti |
| ) | Special Master Charles A. Legge |
| ) | |

i

1

## TABLE OF CONTENTS

2    **I.** Introduction …………….……………………………………………… 1

3    **II.** Argument …………………………………………………………….. 2

4        A. The Hague Convention Is Not The Exclusive Means Of Serving A
            Foreign Defendant Where The Law of The Forum Authorizes Service
5            In The United States……………………………………………….. 2

6        B. Footnote 4 of *Rio Properties* Does Not Change The Ninth Circuit's
7            Holdings That Rule 4(f)(3) Is An Equal Means Of Effecting Service
            Of Process …………………….……………………………..…… 5
8
        C. The Court Has Discretion Under Rule 4(f)(3) To Authorize Service
9            On A Foreign Corporation Through Its U.S. Subsidiary And Its Counsel.. 9

10
        D. Plaintiffs Do Not Have To Show Unreasonable Expense Or Delay
11           For Service Pursuant to Rule 4(f)(3) …………………………………. 10

12        E. Plaintiffs' And Defendants' Counsel Are Obligated To Litigate This
            Case Efficiently And Economically …………………………………….. 12
13
14    **III.** Conclusion …………………………………………………………... 13

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INDIRECT PURCHASER PLAINTIFFS' REPLY RE: MOTION TO AUTHORIZE SERVICE ON
CERTAIN FOREIGN DEFENDANTS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 4(f)(3)**

1

# TABLE OF AUTHORITIES

2

<u>Cases</u>

3

<u>Page</u>

*Agha v. Jacobs,*
2008 WL 2051061 (N.D. Cal. May 13, 2008) ………………………………………………7

*Arista Records LLC v. Media Services LLC,*
  2008 U.S. Dist. LEXIS 16485 (S.D.N.Y. Feb. 25, 2008) …………………………………9, 10

*Bank Julius Baer & Co. Ltd. v. Wikileaks,*
Case No. 3:08-cv-00824-JSW, 2008 WL 413737 (N.D. Cal. Feb. 13, 2008) ………………..……8

*Brockmeyer v. May,*
 383 F.3d 798 (9th Cir. 2004) ……………………………………………………………………..4, 9

*Ehrenfeld v. Khalid Salim A Bin Mahfouz,*
2005 U.S. Dist. LEXIS, (S.D.N.Y. March 23, 2005) …………………………………....…8

*FMAC Loan Receivables v. Dagra,*
228 F.R.D. 531 (E.D. Va. 2005) …………………………………………………………...…3

*Henderson v. U.S.,*
  517 U.S. 654 (1996)………………………………………………………………………12

*In Re: Cathode Ray Tubes (CRT) Antitrust Litigation,*
  536 F. Supp. 2d 1364 (J.P.M.L. 2008) ………………………………………………………12

*In re LDK Solar Securities Litigation,*
  Case No. 3:07-cv-05182-WHA, 2008 WL 2415186 (N.D. Cal. June 12, 2008) ………...8, 10, 11

*Nanya Technology Corp. v. Fujitsu Ltd.,*
2007 U.S. Dist. LEXIS 5754, (D. Guam Jan. 25, 2007) ………………………...…..………………8

*Rio Properties, Inc. v. Rio International Interlink,*
  284 F.3d 1007 (9th Cir.2002) ..……………………………………………..…………..……*passim*

*RSM Production Corp. v. Fridman,*
  2007 U.S. Dist. LEXIS 58194, (S.D.N.Y. Aug. 10, 2007) …………………………....…...3, 9, 10

*Volksvagenwerk Aktiengesellschaft v. Schlunk,*
  486 U.S. 694 (1988) …………………………………………………………………....2, 3, 4, 12

*Williams-Sonoma, Inc. v. Friendfinder, Inc.,*
2007 U.S. Dist. LEXIS 31299 (N.D. Cal. April 17, 2007) …………………………………………..8

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INDIRECT PURCHASER PLAINTIFFS' REPLY RE: MOTION TO AUTHORIZE SERVICE ON CERTAIN FOREIGN DEFENDANTS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 4(f)(3)**

**Rules**

Fed. R. Civ. P. 1……………………………………………………………… 1, 12

Fed. R. Civ. P. 4(d)(1) ……………………………………………………. 1, 12

Fed. R. Civ. P. 4(f)(1)-(2) …………………………………………………… *passim*

Fed. R. Civ. P. 4(f)(3)……………………………………………………... *passim*

Fed. R. Civ. P. 16 …………………………………………………….. 12

**Statutes**

28 U.S.C. § 1407 …………………………………………………….. 12

**INDIRECT PURCHASER PLAINTIFFS' REPLY RE: MOTION TO AUTHORIZE SERVICE ON CERTAIN FOREIGN DEFENDANTS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 4(f)(3)**

## I.   Introduction

Since the Indirect Purchaser Plaintiffs ("Plaintiffs") filed their motion to authorize service on certain foreign defendants pursuant to Fed. R. Civ. P. 4(f)(3), counsel for 5 of the 7 foreign defendants which were the subject of the motion have agreed to accept service of process on behalf of their clients. Foreign defendants Toshiba Corporation ("Toshiba"), a Japanese entity, and Koninklijke Philips Electronics N.V. a/k/a Royal Philips N.V. ("Philips"), a Dutch entity, have not agreed to accept service and have filed an opposition to Plaintiffs' motion. Toshiba and Philips are collectively referred to herein as "Defendants."

Defendants' United States wholly-owned subsidiaries are named as defendants in this case and have appeared through counsel. Defendants have actual notice of this case. They have even retained counsel to represent them in this case. In addition, Defendants do not dispute that the method of service proposed by Plaintiffs will provide actual notice of this litigation, and comports with constitutional notions of Due Process. Yet, unlike the majority of the foreign defendants in this case, Defendants continue to ignore the mandate of Fed.. R. Civ. P. 1 that cases should be determined in a "just, speedy, and inexpensive" manner, and Rule 4(d)(1) which states that defendants, including foreign defendants, have "a duty to avoid the unnecessary expenses of serving a summons."

Defendants insist that Plaintiffs must formally serve them pursuant to the Hague Convention on Service Abroad of Judicial and Extrajudicial Documents (the "Hague Convention"). Service pursuant to the Hague Convention will take approximately 4-6 months and will require translation of the summons and complaint into Japanese and Dutch. This cost will be in addition to the cost of serving the other 8 foreign defendants which were not the subject of the motion and which have not yet appeared. Defendants want Plaintiffs to waste substantial time and money to formally notify them of what they already know—that they are being sued in connection with an alleged price fixing conspiracy in the United States.

Defendants contend that service pursuant to Rule 4(f)(3) is improper here because Defendants are located in Japan and The Netherlands, both of which are signatories to the Hague Convention. But according to the Defendants' own authorities, as well as many others, the Hague

Convention is *not* the exclusive means of service on a foreign defendant located in a Hague signatory nation. Rule 4(f)(3) is an equal, independent means of effecting service on a foreign defendant and many courts have ordered service pursuant to Rule 4(f)(3) on defendants located in a Hague signatory nation. Plaintiffs need not show unreasonable expense or delay before requesting Rule 4(f)(3) service. Finally, Plaintiffs have shown that the facts and circumstances of this case warrant alternate service of process pursuant to Rule 4(f)(3). For these reasons, and to minimize cost to absent class members, this motion should be granted.

## II.  Argument

### A.  The Hague Convention Is Not The Exclusive Means Of Serving A Foreign Defendant Where The Law of The Forum Authorizes Service In The United States

Defendants claim that when a foreign defendant resides in a Hague Convention signatory nation, service pursuant to the Hague Convention is the exclusive means of serving that defendant. Defendants are incorrect. According to Defendants' own authorities, the Hague Convention is *not* the exclusive means of service on a foreign defendant. In fact, the Hague Convention does not even apply if the law of the forum authorizes service on the foreign defendant within the United States. *See, Volkswagenwerk Aktiengesellschaft v. Schlunk,* 486 U.S. 694 (1988) ("*Volkswagenwerk*").

Article 1 of the Hague Convention defines its scope. It says: "The present Convention shall apply in all cases, in civil or commercial matters, *where there is occasion to transmit a judicial or extrajudicial document for service abroad.*" 20 U.S.T. 361, 362 [emphasis added]. In *Volkswagenwerk*, the United States Supreme Court engaged in an in-depth analysis of Article 1 and the scope of the Hague Convention. The Supreme Court concluded that because "[t]the Convention does not specify the circumstances in which there is 'occasion to transmit' a complaint 'for service abroad,'" it is necessary to "refer to the internal law of the forum state. If the internal law of the forum state defines the applicable method of serving process as requiring the transmittal of documents abroad, then the Hague Service Convention applies." 486 U.S. at 700. Conversely, where the internal law of the forum state does not require the transmittal of

**INDIRECT PURCHASER PLAINTIFFS' REPLY RE: MOTION TO AUTHORIZE SERVICE ON CERTAIN FOREIGN DEFENDANTS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 4(f)(3)**

1   documents abroad in order to effect service on a foreign defendant, then the Hague Convention

2   does not apply. *Id.* at 701. Simply put, the Convention "applies only when there is both

3   transmission of a document from the requesting state to the receiving state, and service upon the

4   person for whom it is intended." *Id.* at 701.

5       Applying this standard, the *Volkswagenwerk* Court held that the Convention did not apply

6   to the plaintiff's attempt to serve process on a German corporation by serving the corporation's

7   United States subsidiary because, under the law of the forum and the due process clause, such

8   service was valid and complete in the United States and did not require transmittal of documents

9   abroad. 486 U.S. at 706-708.

10      Here, Fed. R. Civ. P. 4(f) defines the methods for service of process on a foreign

11  defendant. Rule 4(f) provides that such service may be made by means that include international

12  agreements such as The Hague Convention (Rule 4(f)(1)) and Letters Rogatory (Rule 4(f)(2)).

13  *Or*, service may be effected under subsection 4(f)(3), "by other means not prohibited by

14  international agreement, as may be directed by the court."

15      If the Court directs service on Defendants' United States subsidiaries and their counsel

16  pursuant to Rule 4(f)(3), service will be valid and complete in the United States. Like in

17  *Volkswagenwerk*, Plaintiffs will not need to transmit documents abroad for service on

18  Defendants. Accordingly, the Hague Convention will not apply. *See, RSM Production Corp. v.*

19  *Fridman,* 2007 U.S. Dist. LEXIS 58194, * 9-11 (S.D.N.Y. Aug. 10, 2007) ("*RSM Production*")

20  (plaintiffs' request for court-directed service on defendant through counsel in the United States

21  pursuant to Rule 4(f)(3) did not implicate the Hague Convention because it involved no

22  transmittal of documents abroad); *FMAC Loan Receivables v. Dagra,* 228 F.R.D. 531, 534 (E.D.

23  Va. 2005) (same).

24      All of Defendants' authorities support Plaintiffs' position that the Hague Convention is not

25  the exclusive means of serving a foreign defendant located in a Hague signatory nation. Service

26  pursuant to the Hague Convention is only mandatory where documents must be transmitted

27  abroad for service. Defendants quote commentator Gary B. Born as follows:

28

**INDIRECT PURCHASER PLAINTIFFS' REPLY RE: MOTION TO AUTHORIZE SERVICE ON
CERTAIN FOREIGN DEFENDANTS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 4(f)(3)**

1

2

> Most U.S. courts have concluded that, *if service is to be made in the territory of a contracting state* [Hague Convention signatory nation], and if the Hague Convention is available for such service, then the Convention *must* be complied with. According to these courts, traditional mechanisms for U.S. *extraterritorial service*…are preempted when service must be made *within a contracting state*…. [A] few lower courts reached contrary conclusions, but these decisions almost certainly do not survive *Volkswagenwerk.*

3

4

5

6

7

Gary B. Born, *International Civil Litigation In United States Courts,* 863 & n.4 (4th ed. 2007)

Opposition Brief, p.3:9-19, [emphasis added]. The language in italics shows that Born agrees with

8

Plaintiffs. The Hague Convention is only mandatory where service is "extraterritorial" and must

9

be made "within" or "in the territory of a contracting state."

10

Defendants also quote from the 1993 Advisory Committee Notes: "[u]se of the

11

Convention procedures, when available, is mandatory, *if documents must be transmitted abroad*

12

*to effect service.*" Opposition Brief, p. 4:10-13 [emphasis added]. This language also supports

13

Plaintiffs' position. It limits the mandatory nature of the Hague Convention to occasions where

14

"documents must be transmitted abroad to effect service."

15

Finally, Defendants' quote from *Brockmeyer v. May,* 383 F.3d 798, 801 (9th Cir. 2004)

16

doesn't help them either. "*Because service of process was attempted abroad*, the validity of

17

service is controlled by the Hague Convention, to the extent that the Convention applies."

18

Opposition Brief, p. 4:24-26 [emphasis added]. Once again, this quote contains language limiting

19

the Convention's mandatory application to a case where service was attempted abroad and

20

therefore required documents to be transmitted abroad.

21

Thus, the Hague Convention is not the exclusive means of serving foreign defendants. If

22

the Court authorizes Rule 4(f)(3) service on Defendants through their United States subsidiaries

23

and their counsel, service will be valid and complete in the United States. "[T]he Convention [will

24

have] no further implications." *Volkswagenwerk,* 486 U.S. at 707.

25

//

26

//

27

28

4

**B. Footnote 4 of *Rio Properties* Does Not Change The Ninth Circuit's Holdings That Rule 4(f)(3) Is An Equal Means Of Effecting Service Of Process**

In *Rio Properties, Inc. v. Rio International Interlink,* 284 F.3d 1007 (9th Cir. 2002) ("*Rio Properties*"), the Ninth Circuit states in no uncertain terms: "we hold that Rule 4(f)(3) is an equal means of effecting service of process under the Federal Rules of Civil Procedure." *Id.* at 1016. Yet, Defendants claim that Footnote 4 of the *Rio Properties* opinion contradicts this clear holding. The significance which Defendants' attribute to Footnote 4 is contrary to other language in the *Rio Properties* opinion, case law interpreting the *Rio Properties* opinion, the language and structure of Rule 4(f), and the Advisory Committee notes on Rule 4(f)(3).

In order to properly understand Footnote 4, it is necessary to put it in context. The relevant text of the *Rio Properties* opinion, including the language before and after Footnote 4, reads as follows:

> As is obvious from its plain language, service under Rule 4(f)(3) must be (1) directed by the court; and (2) not prohibited by international agreement. *No other limitations are evident from the text.* In fact, as long as court-directed and not prohibited by international agreement, service of process under Rule 4(f)(3) may be accomplished in contravention of the laws of the foreign country. [citations omitted]

> RII [defendant] argues that Rule 4(f) should be read to create a hierarchy of preferred methods of service of process. RII's interpretation would require that a party attempt service of process by those methods enumerated in Rule 4(f)(2), including diplomatic channels and letters rogatory, before petitioning the court for alternative relief under Rule 4(f)(3). We find no support for RII's position. No such requirement is found in the Rule's text, implied by its structure, or even hinted at in the advisory committee notes.

> By all indications, court-directed service under Rule 4(f)(3) is as favored as service available under Rule 4(f)(1)FN4 or Rule 4(f)(2) [citations omitted]. Indeed, Rule 4(f)(3) is one of three separately numbered subsections in Rule 4(f), and each subsection is separated from the one previous merely by the simple conjunction "or." *Rule 4(f)(3) is not subsumed within or in any way dominated by Rule 4(f)'s other subsections; it stands independently, on equal footing.* Moreover, no language in Rules 4(f)(1) or 4(f)(2) indicates their primacy, *and certainly Rule*

5

*4(f)(3) includes no qualifiers or limitations which indicate its availability only after attempting service of process by other means.*

> FN4 A federal court would be prohibited from issuing a Rule 4(f)(3) order in contravention of an international agreement, including the Hague Convention referenced in Rule 4(f)(1). The parties agree, however, that the Hague Convention does not apply in this case because Costa Rica is not a signatory.

The advisory committee notes bolster our analysis. Beyond stating that service under Rule 4(f)(3) must comport with constitutional notions of due process and must not be prohibited by international agreement, *the advisory committee notes indicate the availability of alternate service of process under Rule 4(f)(3) without first attempting service by other means.* Specifically, the advisory committee notes suggest that in cases of "urgency," Rule 4(f)(3) may allow the district court to order a "special method of service," even if other methods of service remain incomplete or unattempted.

Thus, examining the language and structure of Rule 4(f)(3) and the accompanying advisory committee notes, we are left with the inevitable conclusion that service of process under *Rule 4(f)(3) is neither a 'last resort' nor 'extraordinary relief.' It is merely one means among several which enables service of process on an international defendant.*

*Rio Properties,* 284 F.3d at 1014-1016 [emphasis added].

Defendants argue that "the placement of Footnote 4 reveals that the Ninth Circuit understood that Rule 4(f)(1) and Rule 4(f)(3) were equivalents only when the Hague Convention is not effect."  Opposition Brief, p. 5:16-18. In other words, Defendants contend that Footnote 4 limits the holding of *Rio Properties* to cases involving service on defendants located in non-Hague signatory countries. Defendants' argument has no merit.

Rule 4(f)(1) and Rule 4(f)(3) are absolute equivalents. It doesn't matter whether the defendant is located in a Hague signatory country or not. If the Ninth Circuit intended to say that Rule 4(f)(3) service is only equal to Rule 4(f)(1) service when the Hague Convention is not in effect, then why did they not expressly say this? Why did they instead state, repeatedly, that Rule 4(f)(3) is "as favored" as Rule 4(f)(1); that it "stands independently, on equal footing" to Rule 4(f)'s other subsections; that "no language in Rules 4(f)(1) or 4(f)(2) indicates their primacy" over

INDIRECT PURCHASER PLAINTIFFS' REPLY RE: MOTION TO AUTHORIZE SERVICE ON
CERTAIN FOREIGN DEFENDANTS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 4(f)(3)

Rule 4(f)(3); and that "certainly Rule 4(f)(3) includes no qualifiers or limitations which indicate its availability only after attempting service of process by other means." Most significant is the Ninth Circuit's express holding:

> [W]e hold that Rule 4(f)(3) is an equal means of effecting service of process under the Federal Rules of Civil Procedure, and we commit to the sound discretion of the district court the task of determining when the particularities and necessities of a given case require alternate service of process under Rule 4(f)(3).

*Rio Properties,* 284 F.3d at 1016. None of this language is qualified by the Ninth Circuit. At no point does the court say they are limiting their holding regarding Rule 4(f)(3) to cases involving service in a non-Hague signatory nation.

Second, Defendants' interpretation of the *Rio Properties* holding is not endorsed by any other case applying Rule 4(f)(3) or *Rio Properties.* Significantly, Defendants cite to only one case which they claim supports their interpretation of *Rio Properties*: *Agha v. Jacobs,* 2008 WL 2051061 (N.D. Cal. May 13, 2008). However, *Agha* does not support Defendants' argument. The plaintiff in *Agha* sought leave of the court to serve defendants located in Germany by email or facsimile. The Magistrate Judge held that plaintiff's proposed method of service was improper because Germany had objected to Article 10(a) (which allows service by postal channels), and email and facsimile were the functional equivalent of postal channels. *Id.* at *2. Because the method of service proposed was expressly prohibited by international agreement, Rule 4(f)(3), which provides for service "by any other means *not prohibited by international agreement*," could not apply.

Thus, *Agha* does not stand for the broad proposition that "Hague Convention procedures must be employed when the defendant is located in a signatory country." Opposition Brief, p. 6:15-17. As the *Agha* court itself recognized, other courts have authorized service by email and facsimile where the foreign country was a member of the Hague Convention but had "not exercised their rights under Article 10 of that Convention to object to service through 'postal channels.'" *Id.* at *2. *Agha's* holding is limited to occasions where the plaintiff proposes service

**INDIRECT PURCHASER PLAINTIFFS' REPLY RE: MOTION TO AUTHORIZE SERVICE ON CERTAIN FOREIGN DEFENDANTS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 4(f)(3)**

1    by international mail, or its equivalent, and the Hague signatory nation in which defendant is

2    located has objected to service by postal channels. Therefore, *Agha* is not relevant to this case.

3            Third, cases applying *Rio Properties* endorse Plaintiffs' position. Rule 4(f)(3) is an equal

4    means of service to Rule 4(f)(1) and Rule 4(f)(2). This means a plaintiff is not required to attempt

5    service under those subsections before turning to Rule 4(f)(3). *See, In re LDK Solar Securities*

6    *Litigation,* 2008 WL 2415186, at *2 (N.D. Cal. June 12, 2008) ("*LDK Solar*"); ("FRCP 4(f)(3)

7    stands independently of FRCP 4(f)(1)… [c]onsequently, plaintiffs are free to attempt an alternate

8    means of service without having to show an attempt of service through the Chinese Central

9    Authority"); *Bank Julius Baer & Co. Ltd. v. Wikileaks,* 2008 WL 413737, at *2 (N.D. Cal. Feb.

10   13, 2008) ("a plaintiff is not first required to attempt service under Rule 4(f)(1) or Rule 4(f)(2)"

11   before seeking court approval to serve under rule 4(f)(3)); *Nanya Technology Corp. v. Fujitsu*

12   *Ltd.,* 2007 U.S. Dist. LEXIS 5754, at *16 (D. Guam Jan. 25, 2007) ("*Nanya*") ("the Ninth Circuit

13   Court of Appeals held that each of Rule 4(f)'s three methods for international service of process

14   is equivalent to one another"); *Ehrenfeld v. Khalid Salim A Bin Mahfouz,* 2005 U.S. Dist. LEXIS

15   4741, at * 4 (S.D.N.Y. Mar. 23, 2005) ("service of process under Rule 4(f)(3) is neither a 'last

16   resort' nor 'extraordinary relief.' It is merely one means among several which enables service of

17   process on an international defendant").

18           Defendants argue that the Court should disregard *LDK Solar* and *Nanya* because those

19   courts failed to take account of Footnote 4 and, as a result, authorized Rule 4(f)(3) service on

20   defendants located in China and Japan, both of which are Hague signatory nations. Opposition

21   Brief, p. 7:12 - p. 8:2. Once again, Defendants' argument has no merit. In addition to *LDK Solar*

22   and *Nanya,* there are many cases which apply *Rio Properties* to order Rule 4(f)(3) service upon a

23   defendant located in a Hague signatory nation. None of them make any mention of Footnote 4 as

24   limiting the holding of *Rio Properties* to service in non-Hague signatory countries.  *See,*

25   *Williams-Sonoma, Inc. v. Friendfinder, Inc.*, 2007 U.S. Dist. LEXIS 31299 (N.D. Cal. April 17,

26   2007) (ordering Rule 4(f)(3) service by email on defendants located in the Ukraine, the Czech

27   Republic, Israel, Switzerland, Norway and England, all of which are signatories to the Hague

28

8

**INDIRECT PURCHASER PLAINTIFFS' REPLY RE: MOTION TO AUTHORIZE SERVICE ON
CERTAIN FOREIGN DEFENDANTS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 4(f)(3)**

1   Convention); *RSM Production,* 2007 U.S. Dist. LEXIS 58194 (ordering Rule 4(f)(3) service on a

2   Russian defendant through service on the defendant's attorney in the United States. Russia is a

3   signatory to the Hague Convention); and*, Arista Records LLC v. Media Services LLC,* 2008 U.S.

4   Dist. LEXIS 16485 (S.D.N.Y. Feb. 25, 2008) (ordering Rule 4(f)(3) service on a Russian

5   defendant through service on the defendant's attorney in the United States. Russia is a signatory

6   to the Hague Convention.).

7          Thus, the clear weight of authorities is with the Plaintiffs. Moreover, in *Brockmeyer v.*

8   *May*, the Ninth Circuit noted that the plaintiffs could have served the English defendant (England

9   is a Hague signatory nation) pursuant to Rule 4(f)(3), but that because the plaintiffs had not

10  petitioned the Court before attempting service, Rule 4(f)(3) was of no use to them. 383 F.3d at

11  805-806. The Ninth Circuit in no way indicated that Footnote 4 prohibits service under Rule

12  4(f)(3) where the defendant is located in a country which has adopted the Hague Convention.

13         The fact that no other court has even mentioned Footnote 4 indicates that it was simply the

14  Ninth Circuit reiterating the text of Rule 4(f)(3) itself, which provides that the other means of

15  service ordered pursuant to that Rule must not be "prohibited by international agreement." In other

16  words, even though service under Rule 4(f)(3) is "as favored" as Rule 4(f)(1), the method of

17  service cannot be prohibited by an international agreement like the Hague Convention. The Ninth

18  Circuit was also recognizing that there would be occasions, like in *Agha*, where a particular

19  method of service would be prohibited by an international agreement. This is not the case here.

20  Plaintiffs propose serving Defendants through their United States subsidiary and their counsel. The

21  Hague Convention does not prohibit service on a foreign defendant through its United States

22  subsidiary or its counsel. In fact, the Hague Convention does not even apply because service will

23  be valid and complete within the United States. Therefore, plaintiffs' proposed method of service

24  is not prohibited by international agreement and should be authorized by the Court.

25  **C. The Court Has Discretion Under Rule 4(f)(3) To Authorize Service On A**
    **Foreign Corporation Through Its U.S. Subsidiary And Its Counsel**

26

27         Defendants contend that the Federal Rules of Civil Procedure do not authorize service

28  on a foreign corporation through its subsidiaries or its counsel. Opposition Brief, p. 3:24-26.

9

1    Once again, Defendants are wrong. Although Rule 4(f)(3) does not specifically state that service

2    may be effected on a foreign corporation through its United States subsidiary and counsel, many

3    cases interpreting Rule 4(f)(3) have authorized these methods of service pursuant to that section.

4    These cases include, but are not limited to, the following: *Rio Properties,* 284 F.3d at 1017

5    *(*ordering service on a Costa Rican defendant through service on its attorney in the United

6    States); *LDK Solar*, 2008 WL 2415186 at * 4 (ordering service on several Chinese defendants

7    through service on their subsidiary in California); *RSM Production,* 2007 U.S. Dist. LEXIS

8    58194*,* at * 9-11 (ordering service on a Russian defendant through service on its attorney in the

9    United States); *Arista Records LLC v. Media Services LLC,* 2008 U.S. Dist. LEXIS 16485, at *

10   10 (same).

11         In addition, the *Rio* Properties court committed "to the sound discretion of the district

12   court the task of determining when the particularities and necessities of a given case require

13   alternate service of process under Rule 4(f)(3)." 284 F.3d at 1016. Here, service on Defendants'

14   United States subsidiaries and their counsel is a particularly appropriate method of service

15   because: 1) their United States subsidiaries are also defendants in this case, have appeared

16   through counsel, and are actively involved in this case; 2) Philips has already been served in the

17   Direct Purchaser Action; 3) Defendants have actual notice of the case and have retained counsel

18   in the United States to represent them; and 4) Defendants' counsel have appeared in this case on

19   Defendants' behalf, albeit specially. Moreover, Defendants do not dispute that the methods of

20   service proposed by Plaintiffs comport with constitutional due process and will provide actual

21   notice to Defendants. Therefore, this Court will be acting well within its discretion to order that

22   the Defendants may be served through their United States subsidiaries and their counsel.

23         **D.  Plaintiffs Do Not Have To Show Unreasonable Expense Or Delay For Service
           Pursuant to Rule 4(f)(3)**

24

25         Plaintiffs do not have to show unreasonable expense or delay which would preclude them

26   from following the Hague Convention before seeking alternative service under Rule 4(f)(3).

27   Notably, Defendants do not cite to any case law in support of this assertion. Such a requirement

28   would run contrary to the Ninth Circuit's clear holding that "Rule 4(f)(3) is an equal means of

10

1    effecting service" and is "neither a 'last resort' nor 'extraordinary relief.'" 284 F.3d at 1015-

2    1016.

3           The *LDK Solar* court rejected a similar argument by defendants in that case. There,

4    defendants argued that plaintiffs must show that the signatory destination nation has refused to

5    cooperate:

6

7           Again, this argument has little merit. The Ninth Circuit held, 'As obvious from its
            plain language, service under Rule 4(f)(3) must be (1) directed by the court; and
8           (2) not prohibited by international agreement. *No other limitations are evident
            from the text.' Rio,* 284 F.3d at 1014 (emphasis added). It is unnecessary for
9           plaintiffs to show lack of judicial assistance by the host nation. Instead, plaintiffs
            'needed only to demonstrate that the facts and circumstances of the present case
10          necessitated the district court's intervention.'

11

12   2008 WL 2415186, at *3. Plaintiffs here have demonstrated that the facts and circumstances of

13   this case necessitate district court intervention. This all that is required.

14          Even though Plaintiffs are not required to show unreasonable expense and delay,

15   Plaintiffs have done so. As discussed in more detail in Plaintiffs' Opening Brief, the expense and

16   delay occasioned by service on Defendants through the Hague Convention is unreasonable

17   because it is wholly unnecessary. In the case of Philips, Hague Convention service would be

18   duplicative of service in the Direct Purchaser Action. Furthermore, the cost of serving

19   Defendants would be in addition to the cost of serving the other 8 foreign defendants which do

20   not have a United States subsidiary, related entity, or counsel that is already involved in the case.

21   There is also a very real possibility that there will be additional foreign defendants named in this

22   case which will also require service abroad. Thus, Plaintiffs' request that the Court facilitate

23   service upon two foreign defendants that already have actual notice of the case, and have already

24   retained counsel to represent them, is entirely justified.

25   //

26   //

27

28
                                              11

1

2

### E.  Plaintiffs' And Defendants' Counsel Are Obligated To Litigate This Case Efficiently And Economically

3

4

5

6

7

8

9

10

Both Plaintiffs' and Defendants' counsel have an obligation to the Court and their clients to litigate this case in the most efficient, cost-effective manner possible. Fed. R. Civ. P. 1 states that cases should be determined in a "just, speedy, and inexpensive" manner. Efficiency has been furthered here by the transfer of these cases under 28 U.S.C. § 1407, which was created to promote efficient litigation by centralizing related cases in one court in order to "eliminate duplicative discovery, prevent inconsistent pretrial rulings (especially with respect to the issue of class certification), and conserve the resources of the parties, their counsel and the judiciary." *In Re: Cathode Ray Tubes (CRT) Antitrust Litigation,* 536 F. Supp. 2d 1364 (J.P.M.L. 2008).

11

12

13

14

15

16

17

In keeping with this goal of efficiency, Rule 4 states that defendants, including foreign defendants, have "a duty to avoid the unnecessary expenses of serving a summons." Fed. R. Civ. P. 4(d)(1). In addition, Fed. R. Civ. P. 16 suggests that a conference be held early in the litigation to "expedite disposition of the action" and "discourage wasteful pretrial activities." Consistent with this provision, the Supreme Court has made clear that the main function of service is not to comply with a formalistic process, but rather to provide notice of an action's pendency. *See, Henderson v. U.S.,* 517 U.S. 654, 671-72 (1996).

18

19

20

21

22

By insisting that Plaintiffs go through the wholly unnecessary, cumbersome procedure of serving them through the Hague Convention, Defendants are thwarting the purpose of transfer under 28 U.S.C. § 1407, which is to "promote the just and efficient conduct of the actions," and "conserve the resources of the parties, their counsel and the judiciary." Defendants' position is also contrary to the general goal of efficiency and economy evident in Rules 1, 4 and 16.

23

24

25

26

27

Finally, the Hague Convention was enacted to provide a means to facilitate service of process on a foreign defendant and ensure adequate notice to that defendant. *See, Volkswagenwerk,* 486 U.S. at 704-705. It was never intended to be used as a sword to increase the costs and delay of serving a foreign defendant. This Court should prevent "wasteful pretrial activities" and direct service on Defendants pursuant to Rule 4(f)(3).

28

//

12

1  **III. Conclusion**

2          For all the foregoing reasons, Plaintiffs' motion should be granted.

3  Dated: August 22, 2008                Respectfully submitted,

4                                        **TRUMP, ALIOTO, TRUMP & PRESCOTT, LLP**

5                                        By:     /s/ Mario N. Alioto
                                                  Mario N. Alioto (56433)
6                                                 Lauren C. Russell (241151)
                                                  2280 Union Street
7                                                 San Francisco, California 94123
                                                  Telephone: (415) 563-7200
8                                                 Facsimile: (415) 346-0679
                                                  E-mail: malioto@tatp.com
9                                                 laurenrussell@tatp.com

10

11                                       *Interim Lead Counsel for the Indirect Purchaser*
                                         *Plaintiffs*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INDIRECT PURCHASER PLAINTIFFS' REPLY RE: MOTION TO AUTHORIZE SERVICE ON CERTAIN FOREIGN DEFENDANTS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 4(f)(3)**

1

**ATTESTATION PURSUANT TO GENERAL ORDER 45**

2        I, Lauren C. Russell, attest that concurrence in the filing of this document has been

3   obtained from the signatory, Mario N. Alioto.  I declare under penalty of perjury under the laws

4   of the United States of America that the foregoing is true and correct.  Executed this 22nd day of

5   August, San Francisco, California.

6

7                                              /s/ Lauren C. Russell

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INDIRECT PURCHASER PLAINTIFFS' REPLY RE: MOTION TO AUTHORIZE SERVICE ON
CERTAIN FOREIGN DEFENDANTS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 4(f)(3)**