

213 F.R.D. 547   Page 1
213 F.R.D. 547

CHickory Travel Systems, Inc. v. TUI AG
N.D.Cal.,2003.

United States District Court,N.D. California.
HICKORY TRAVEL SYSTEMS, INC., Plaintiff,
v.
TUI AG, TUI Business Travel Deutschland GmbH, TUI Leisure Travel Management Holding GmbH, First Travel Management International GmbH, TQ3 Travel Solutions, TQ3 Americas, and DOES 1-100, inclusive, Defendants.
No. C-02-5179 SC.

March 7, 2003.

American corporation brought suit for breach of contract against German corporation, several of its **subsidiaries**, and a joint venture partly owned by the German corporation.On plaintiff's motion for default judgment, the District Court, Conti, J., held that: (1) plaintiff failed to show that **service** of **process** on **parent's subsidiaries** constituted service on **parent** on theory that **subsidiaries** were alter egos or **agents** of **parent**, and (2) plaintiff did not show that service on one member of joint venture constituted service on another member of joint venture and that member's fellow **subsidiaries** and **parent**.

Motion denied.

West Headnotes

**[1] Federal Civil Procedure 170A 411**

170A Federal Civil Procedure
    170AIII **Process**
        170AIII(B) **Service**
            170AIII(B)1 In General
                170Ak411 k. In General. Most Cited Cases
A party must be properly served for the court to obtain personal jurisdiction over that party. Fed.Rules Civ.Proc.Rule 4, 28 U.S.C.A.

**[2] Federal Civil Procedure 170A 511**

170A Federal Civil Procedure
    170AIII **Process**
        170AIII(B) **Service**
            170AIII(B)5 Return and Proof of Service
                170Ak511 k. In General. Most Cited Cases
If the sufficiency of service is challenged, the party on whose behalf service was made has the burden to establish its validity. Fed.Rules Civ.Proc.Rule 4, 28 U.S.C.A.

**[3] Federal Civil Procedure 170A 442**

170A Federal Civil Procedure
    170AIII **Process**
        170AIII(B) **Service**
            170AIII(B)2 Corporations, Partnerships and Associations in General
                170Ak442 k. **Parent** or **Subsidiary**. Most Cited Cases
For **service** of **process** on a **subsidiary** to count as service upon its **parent**, plaintiff must demonstrate either that the **subsidiary** functions as the **parent's agent** or as its alter ego. Fed.Rules Civ.Proc.Rule 4(h)(1), 28 U.S.C.A.

**[4] Federal Civil Procedure 170A 442**

170A Federal Civil Procedure
    170AIII **Process**
        170AIII(B) **Service**
            170AIII(B)2 Corporations, Partnerships and Associations in General
                170Ak442 k. **Parent** or **Subsidiary**. Most Cited Cases
For purposes of **service** of **process**, a **subsidiary** functions as the **parent's agent** if it accomplishes tasks that the **parent** in its absence would have to accomplish itself; in other words, if the **subsidiary** functions as an indispensable part of the **parent's** business, it is the **parent's agent**. Fed.Rules Civ.Proc.Rule 4(h)(1), 28 U.S.C.A.

**[5] Federal Civil Procedure 170A 442**

170A Federal Civil Procedure
    170AIII **Process**

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

170AIII(B) Service
170AIII(B)2 Corporations, Partnerships and Associations in General
170Ak442 k. **Parent** or **Subsidiary**. Most Cited Cases

For purposes of **service** of **process**, fact that a **subsidiary** performs a function that the **parent** finds useful, or that the **subsidiary** makes money for the **parent**, is insufficient to establish agency if the **parent** could carry on its core business in the absence of that **subsidiary's** work; for agency to exist, the **subsidiary's** activity must be integral to the **parent's** business. Fed.Rules Civ.Proc.Rule 4(h)(1), 28 U.S.C.A.

**[6]** Federal Civil Procedure 170A €==442

170A Federal Civil Procedure
170AIII Process
170AIII(B) Service
170AIII(B)2 Corporations, Partnerships and Associations in General
170Ak442 k. **Parent** or **Subsidiary**. Most Cited Cases

For purposes of **service** of **process**, a **subsidiary** functions as the **parent's** alter ego if the **subsidiary** is so intertwined with the **parent** that it functions as part thereof, and if disregarding that unity of interest would result in fraud or injustice. Fed.Rules Civ.Proc.Rule 4(h)(1), 28 U.S.C.A.

**[7]** Federal Civil Procedure 170A €==442

170A Federal Civil Procedure
170AIII Process
170AIII(B) Service
170AIII(B)2 Corporations, Partnerships and Associations in General
170Ak442 k. **Parent** or **Subsidiary**. Most Cited Cases

If a **parent** is involved in directing the day-to-day management of a **subsidiary**, or if the management of the **parent** and **subsidiary** is so intertwined that separation is merely a fiction, a court may disregard the formalities of separation and consider service on the **subsidiary** to be service upon the **parent**. Fed.Rules Civ.Proc.Rule 4(h)(1), 28 U.S.C.A.

**[8]** Federal Civil Procedure 170A €==537.1

170A Federal Civil Procedure
170AIII Process
170AIII(C) Defects and Objections
170Ak537 Quashing or Vacating
170Ak537.1 k. In General. Most Cited Cases

**Federal Civil Procedure 170A €==1751**

170A Federal Civil Procedure
170AXI Dismissal
170AXI(B) Involuntary Dismissal
170AXI(B)2 Grounds in General
170Ak1751 k. Process, Defects In. Most Cited Cases

If service is insufficient, the court may either dismiss the case or retain jurisdiction but quash service; so long as there is a chance that the plaintiff still could accomplish service, the latter remedy is preferred. Fed.Rules Civ.Proc.Rule 4, 28 U.S.C.A.

**[9]** Federal Civil Procedure 170A €==1269.1

170A Federal Civil Procedure
170AX Depositions and Discovery
170AX(A) In General
170Ak1269 Grounds and Objections
170Ak1269.1 k. In General. Most Cited Cases

Court has discretion to order jurisdictional discovery where jurisdictional facts are in dispute or more factual basis is needed.

**[10]** Federal Civil Procedure 170A €==496

170A Federal Civil Procedure
170AIII Process
170AIII(B) Service
170AIII(B)4 Foreign Corporations, Partnerships and Associations
170Ak496 k. **Parent** or **Subsidiary**. Most Cited Cases

Plaintiff failed to show that **service** of **process** on foreign **parent's subsidiaries** constituted service on **parent** on theory that **subsidiaries** were alter egos of **parent**, based on evidence that **parent** wholly owned its **subsidiaries**, referred to them as divisions and not separate companies, reported their earnings in annual statements, boasted of corporate integration, and made decisions about restructuring the businesses of

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

some of those **subsidiaries**; plaintiff did not show that management structures were interchangeable and made only speculative claims, without any evidentiary support, that **parent** was involved in the day-to-day management of its **subsidiaries**. Fed.Rules Civ.Proc.Rule 4(h)(1), 28 U.S.C.A.

**[11]** Federal Civil Procedure 170A ⚷496

170A Federal Civil Procedure
    170AIII **Process**
        170AIII(B) **Service**
            170AIII(B)4 Foreign Corporations, Partnerships and Associations
                170Ak496 k. **Parent** or **Subsidiary**. Most Cited Cases

Plaintiff failed to show that **service** of **process** on foreign **parent's** divisions constituted service on **parent** based on allegation that each division was an **agent** of **parent** because in the divisions' absence **parent** would have to use its own employees to carry on the substantial amounts of business that the divisions provided; rather, to show agency in the context of **service** of **process**, plaintiff had to show that **parent** could not carry on its own business, not just that it would lose the business of those divisions, in those divisions' absence. Fed.Rules Civ.Proc.Rule 4(h)(1), 28 U.S.C.A.

**[12]** Federal Civil Procedure 170A ⚷441

170A Federal Civil Procedure
    170AIII **Process**
        170AIII(B) **Service**
            170AIII(B)2 Corporations, Partnerships and Associations in General
                170Ak441 k. In General. Most Cited Cases

Plaintiff did not show that service on one member of joint venture constituted service on another member of joint venture and that member's fellow **subsidiaries** and **parent**, where both members were under entirely separate ownership, and showing that they worked together and were working closely with their joint venture was not the same as establishing an absence of corporate separation. Fed.Rules Civ.Proc.Rule 4(h)(1), 28 U.S.C.A.

**\*549** Alexander Anolik, Jordan Lavinsky, Offices Alexander Anolik, San Francisco, CA, for plaintiff.
Neil Goteiner, C. Brandon Wisoff, and Alex Potente, Farella, Braun & Martel, San Francisco, CA, for defendants.

*ORDER RE: PLAINTIFF'S REQUEST FOR ENTRY OF DEFAULT and DEFENDANTS' MOTION TO DISMISS*

CONTI, District Judge.

**I. INTRODUCTION**

This case involves a contract dispute between plaintiff Hickory Travel Services ("HTS" or "Plaintiff"), an American corporation, and TUI AG, a large German Corporation, several of its subsidiaries, and a joint venture partly owned by TUI AG. Plaintiff served process upon TQ3 Maritz Americas, Inc, the other owner of the joint venture, and upon two American subsidiaries of TUI AG. Plaintiff now moves for default against defendants TUI AG, TUI Business Travel Deutschland GmbH, TUI Leisure Travel Management Holding GmbH, and First Travel Management International GmbH (collectively referred to as the "TUI Defendants"). The TUI Defendants claim that they have not been properly served, and move to dismiss the complaint or, in the alternative, to quash the service of process. For the following reasons, the Court finds that service was insufficient and grants the TUI Defendants' motion to quash service.

**II. BACKGROUND**

This action originated with an alleged breach of contract. Plaintiff alleges that it contracted to provide services to a company called First Travel Management Services. Shortly after reaching this agreement, First Travel Management Services was purchased by Preussag AG, which later renamed itself TUI AG. In 2000, TUI AG, according to HTS, liquidated First Travel Management Services, breaching First Travel's contract with HTS. HTS initiated legal action in Germany against TUI AG. That action was settled. As part of the settlement, TUI AG's subsidiaries were to use HTS's services. In September, 2002, TUI Business Travel, TUI Leisure Travel, and First Travel Management Inc. announced to HTS that they were terminating the settlement, whereupon HTS filed this action.

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

HTS initiated the action by attempting to serve process upon four entities. The first, Feralloy Corporation, is a steel manufacturing company. The second, Hapag-Lloyd (America) Inc., is a shipping company. Both Hapag-Lloyd (America) and Feralloy do business in California and were served through an authorized agent in California. HTS also attempted to serve process upon TQ3 Travel Solutions GmbH, a German corporation, and TQ3 Maritz Americas, a Missouri corporation doing business in Missouri. HTS attempted to serve both of these entities by serving Mary Barrows, a payroll clerk for TQ3 Maritz Americas in Missouri.

The corporate relationships between the served entities and the named defendants are complicated and subject to some dispute. **\*550** The parties agree that defendant TUI AG wholly owns Feralloy Corporation and Hapag-Lloyd (America) Inc. TQ3 Travel Solutions GmbH appears to be a joint venture, with a wholly owned subsidiary of TUI AG owning half and TQ3 Maritz Americas Inc., an entirely separate company, owning the other half. Beyond those general agreements, however, the parties dispute the exact nature of the corporate connections. HTS argues that Hapag Lloyd (America), Inc., Feralloy Corporation, TQ3 Travel Solutions GmbH, and, apparently, TQ3 Maritz Americas Inc. are all effectively part of the same giant TUI AG corporation, and that service on those parts constitutes service on both the whole and the other parts. Defendants, however, argue that each division, though owned wholly or in part by TUI AG, maintains a separate corporate identity and that service on the U.S. divisions does not constitute service on the named defendants. Moreover, Defendants argue that TQ3 Maritz Americas is an entirely separate company incapable of receiving service on behalf of the TUI Defendants, and that TQ3 Travel Solutions GmbH has not yet been properly served.

Accurately describing the corporate structure is a task better suited for a diagram than for words. The following figure, taken from the declaration of Cornelius L. McGrath submitted in support of Defendants' reply brief, provides a partial summary of the structural relationship between TUI AG, its subsidiaries, and TQ3 Travel Solutions GmbH.

**\*551**

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.



III. *LEGAL STANDARD*

A. Burden of Proof

[1][2] A party must be properly served for the Court to obtain personal jurisdiction over that party. If the sufficiency of service is challenged, "the party on whose behalf service was made... has the burden to establish its validity." **\*552**<u>Wishart v. Agents for</u>

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

*International Monetary Fund Internal Revenue Service,* 1995 WL 494586 at *2 (N.D.Cal.1995). "Although Rule 4 is to be construed liberally, service is not effective unless a plaintiff has substantially complied with its requirements." *Id.*

B. Sufficiency of Process

The sufficiency of process in federal courts is determined by Rule 4 of the Federal Rules of Civil Procedure. Rule 4 sets forth several ways for serving a foreign corporation. First, Rule 4(f)(1) provides that service may be accomplished in accordance with the procedures of the Hague Convention. If, however, the corporation has sufficient contacts with the United States that service may be completed within the United States, the Hague Convention's requirements for international service do not apply. *Volkswagenwerk Aktiengesellschaft v. Schlunk,* 486 U.S. 694, 108 S.Ct. 2104, 100 L.Ed.2d 722 (1988) (holding that since Illinois law defined service as complete within the United States, the Hague Convention did not apply). The corporation then may be served in accordance with Rule 4(h)'s standard provisions for serving a corporation.

Rule 4(h) provides two ways of effecting service. First, Rule 4(h) states that service may be accomplished in accordance with Rule 4(e)(1), which allows service according to the procedures of the state in which the federal court sits. Second, service may be accomplished "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process and, if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant." Fed. R. Civ. Proc. 4(h)(1).

Thus, determining whether service outside the Hague Convention is possible involves a two-part inquiry. First, the Court must determine whether state law procedures, as incorporated under Rule 4(e)(1) and limited by due process, allow for completed service within the state. Under this inquiry, state law on serving corporations is crucial, for it is state law that defines whether service has been completed within the United States. *Schlunk,* 486 U.S. at 706-08, 108 S.Ct. 2104; *Graval v. P.T. Bakrie & Bros.,* 986 F.Supp. 1326, 1330-31 (C.D.Cal.1996) (disapproved on other grounds by*Rio Properties, Inc. v. Rio Intern. Interlink,* 284 F.3d 1007 (9th Cir.2002)). Federal law, in the form of due process limitations, may become relevant if state law is highly permissive in allowing service, *see* Schlunk at 707, 108 S.Ct. 2104, but where state law is restrictive federal law cannot create a mechanism for service under Rule 4(e)(1).

California state law provides specific, limited methods for service of process upon corporations. California Corporations Code § 1505 requires all corporations doing business in California to designate agents to receive service of process. California Code of Civil Procedure § 416.10 sets forth who within a corporation may be served, and generally limits service to the heads of the corporation or to those persons designated by the corporation to receive it. Federal courts interpreting these provisions have found them to create no procedure for serving a foreign corporation by serving its domestic **subsidiary**. *Graval,* 986 F.Supp. at 1330 ("Under California law, service on a **subsidiary** does not constitute service on a **parent** corporation, even if the **subsidiary** is considered to be an 'alter-ego' of the **parent** corporation."); *Orion Tire Corp. v. General Tire, Inc.,* 1992 WL 295224 at *1 (C.D.Cal.1992) (distinguishing *Schlunk* because "California does not have a provision allowing for substituted service upon a **subsidiary** corporation... California law requires service only on those authorized to accept service.").

[3] If state law does not allow for **service** of **process**, the Court still must determine whether service may be completed under the alternative method described in the above-quoted text from Rule 4(h)(1). In order to perform this analysis, the Court must determine whether the right corporate entity was served. Other federal courts addressing this issue have used jurisdictional analysis to determine whether service on a subsidiary counts as service upon its parent. *Gallagher v. Mazda Motor of America,* 781 F.Supp. 1079, 1083 n. 8 (E.D.Pa.1992) (noting that federal courts use such an analysis even if **\*553** they do not explicitly describe it as such).[FN1] Under this analysis, the Plaintiff must demonstrate either that the subsidiary functions as the parent's agent or as its alter ego. *Id.* at 1083-85; *Akzona v. E.I. Du Pont De Nemours & Co.,* 607 F.Supp. 227, 237 (D.Del.1984).[FN2]

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

FN1. Plaintiff does not concede that this analysis should be used, instead arguing that *Schlunk* establishes the principle that service on a wholly owned domestic subsidiary constitutes service upon its parent. Justice Brennan's concurrence does contain language suggesting that such service is possible, see *Schlunk* at 708, 108 S.Ct. 2104, but the majority holding, which Justice Brennan was briefly summarizing, does not hold that such service is always sufficient. Instead, the majority held that where service on a domestic subsidiary was defined by Illinois law as constituting service upon its foreign parent, that service did not need to be completed in accordance with the Hague Convention. *Id.* at 706-07, 108 S.Ct. 2104. In other words, the Court assumed that such service was valid under Illinois law; it did not create a general federal precedent always allowing service on a foreign corporation through its wholly owned domestic subsidiary.

FN2. California law also uses agency/alter ego analysis to determine whether a court may exercise jurisdiction over a defendant. See *Sonora Diamond Corp. v. Superior Ct.,* 83 Cal.App.4th 523, 99 Cal.Rptr.2d 824 (2000). This does not mean, however, that the California courts have folded that jurisdictional analysis into their analysis of the procedural sufficiency of process; procedural sufficiency still is measured under the more specific standards set forth in the California Code of Civil Procedure and the California Corporations Code. See *Graval,* 986 F.Supp. at 1330; *Orion Tire Corp.,* 1992 WL 295224 at *1.

[4][5] For purposes of jurisdictional analysis, a **subsidiary** functions as the **parent's agent** if it accomplishes tasks that the **parent** in its absence would have to accomplish itself. *Doe v. Unocal,* 248 F.3d 915, 928 (9th Cir.2001); *Gallagher,* 781 F.Supp. at 1083-84. In other words, if the **subsidiary** functions as an indispensable part of the **parent's** business, it is the **parent's agent**. *Id.* The fact that the **subsidiary** performs a function that the **parent** finds useful, or that the **subsidiary** makes money for the **parent**, is insufficient to establish agency if the **parent** could carry on its core business in the absence of that **subsidiary's** work; for agency to exist, the **subsidiary's** activity must be integral to the **parent's** business. See *Gallagher* at 1085 (noting that a holding company's investments weren't necessarily its **agents**, since the holding company could divest of those investments and still be a holding company).

[6][7] A **subsidiary** functions as the **parent's** alter ego if the **subsidiary** is so intertwined with the **parent** that it functions as part thereof, and if disregarding that unity of interest would result in fraud or injustice. See *Doe v. Unocal,* 248 F.3d at 925. The federal courts have generally respected corporate efforts to maintain separate identities, and will not pierce the formalities of separation merely because of a showing of complete ownership. Wright & Miller, *Federal Practice & Proc.* § 1104. The parent corporation may even direct some of the activities of the subsidiary, and report the subsidiary's income as its own, without having separate corporate identities be disregarded. *Id.* at 925-27; *Akzona,* 607 F.Supp. at 238.. If, however, the parent is involved in directing the day-to-day management of the subsidiary, or if the management of the parent and subsidiary is so intertwined that separation is merely a fiction, a court may disregard the formalities of separation and consider service on the subsidiary to be service upon the parent. *Unocal,* 248 F.3d at 925-26.

C. Remedies for Insufficient Service

[8][9] If service is insufficient, the Court may either dismiss the case or retain jurisdiction but quash service. So long as there is a chance that the plaintiff still could accomplish service, the latter remedy is preferred. *Umbenhauer v. Woog,* 969 F.2d 25, 30 (3rd Cir.1992). The Court also has discretion to order jurisdictional discovery where jurisdictional facts are in dispute or more factual basis is needed. *nMotion, Inc. v. Environmental Tectonics Corp.,* 196 F.Supp.2d 1051, 1055 (D.Or.2001).

**IV. DISCUSSION**

A. Sufficiency of Process

In order to prove that Defendants were properly served, Plaintiff must illustrate that a series of purportedly separate corporations **\*554** are in fact

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

bound by continuous chains of either agency or alter-ego relationships. To show that TUI AG was properly served, for example, Plaintiff must show either 1) that Hapag-Lloyd (America), Inc. is the alter ego or agent of Hapag-Lloyd Container Linie GmbH, that Hapag-Lloyd Container Linie GmbH is the alter ego or agent of Hapag-Lloyd AG, and that Hapag-Lloyd AG is the alter ego or agent of TUI AG; 2) that a similar chain of connection exists connecting Feralloy Corporation through its parents to TUI AG; 3) that a similar chain of connection binds TQ3 Maritz Americas [FN3] to TUI AG, or 4) that any of these served companies are in fact directly the agent of TUI AG even in the absence of a chain connecting them through their parents. To demonstrate that the other TUI defendants were properly served, Plaintiff needs to demonstrate either a chain beginning with TQ3 Maritz Americas and moving upward through TQ3 Travel Solutions GmbH or that, in addition to TUI AG being properly served through Hapag-Lloyd (America) or Feralloy Corporation, the remaining TUI defendants are the alter egos or agents of TUI AG.

> FN3. Plaintiff apparently asserts that it has served TQ3 Travel Solutions GmbH, but the individuals served both work for TQ3 Maritz Americas, Inc.

Any of these showings would be rather complicated, necessitating discussion of a series of corporate connections. In seeking to show the requisite connections, Plaintiff relies primarily on general arguments about the TUI group as a whole. These arguments, however, do not suffice to show that TUI AG's divisions are alter egos for TUI AG itself or TUI AG's agents. Plaintiff's arguments with respect to the TQ3 Maritz Americas are even more convoluted and incomplete, with companies inconsistently named and connections only partially described.

[10] The crux of Plaintiff's alter ego argument is based on the facts that TUI AG wholly owns its subsidiaries, refers to them as divisions and not separate companies, reports their earnings in annual statements, boasts of corporate integration, and has made decisions about restructuring the businesses of some of those subsidiaries. All of these assertions are relevant to alter ego status, but even in combination they do not suffice to make a prima facie case of alter ego relationships. *See Unocal,* 248 F.3d at 925-27. Plaintiff has not shown that management structures are interchangeable and has made only admittedly speculative claims, without any evidentiary support, that TUI AG is involved in the day-to-day management of its subsidiaries. These general allegations do not suffice to show that the TUI corporate structure is in fact one integrated company.

[11] Plaintiff's agency arguments are similarly incomplete. Plaintiff suggests that each division is an agent of TUI AG because in those divisions' absence TUI AG would have to use its own employees to carry on the substantial amounts of business that those divisions provide. To show agency in this context, however, Plaintiff must show that TUI AG could not carry on its own business-not just that it would lose the business of those divisions-in those divisions' absence. *Unocal,* 248 F.3d at 928-29; *Gallagher,* 781 F.Supp. at 1085. Plaintiff's argument overlooks the possibility that TUI might simply ignore the markets those divisions serve. Plaintiff has made no showing that TUI AG-which characterizes itself solely as a holding company-would be unable to properly function if it divested of Feralloy Corporation's manufacturing business or Hapag-Lloyd's shipping business. Under Plaintiff's reasoning, basically any corporate division that makes money for the parent is an agent of the parent. The test of agency in this context is not nearly so broad.

Plaintiff has provided further evidence of agency or alter ego relationships only for a few connections within the TUI AG side of the overall corporate structure. Specifically, in addition to the general allegations already discussed, Plaintiff has asserted that Hapag-Lloyd (America) has received orders on behalf of Hapag-Lloyd Container Linie GmbH and that TUI AG made restructuring divisions about Hapag-Lloyd AG after purchasing **\*555** it.[FN4] The relationship between Hapag-Lloyd (America), Inc. and Hapag-Lloyd Container Linie GmbH may establish an alter ego or agency relationship, but this is only one link in an otherwise unestablished chain.

> FN4. Some of Plaintiff's asserted factual bases for its argument appear to be irrelevant. For example, Plaintiff attached to one declaration a newspaper article that purportedly showed that TUI was engaged

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

in decisions regarding the management structure of its subsidiaries. Pevzner Decl. Exh. E. The article appears to be about TUI UK, which is not a party to this action or a link in any of the chains potentially connecting the served entities to the actual defendants.

[12] Plaintiff's discussion of the TQ3 Maritz Americas Inc. side of the corporate tree is even more convoluted. Plaintiff argues that service upon TQ3 Maritz Americas constitutes service upon both TQ3 Travel Solutions GmbH and the TUI Defendants.[FN5] This argument apparently is based upon Plaintiff's belief that TQ3 Maritz Americas Inc., the TUI Defendants, and TQ3 Travel Solutions Inc. GmbH are all in fact one big company. TQ3 Maritz Americas Inc. and the TUI Defendants are under entirely separate ownership, however, and showing that they work together and are working closely with TQ3 Travel Solutions GmbH, their joint venture, is not the same as establishing an absence of corporate separation. Given the complexity of the corporate relationships and the similarity of the various entities' names, Plaintiff's confusion is understandable, but nevertheless Plaintiff has not made a prima facie showing of service upon the TUI Defendants through service upon TQ3 Maritz Americas.

> [FN5.] Plaintiff claims to have directly served TQ3 Travel Solutions GmbH, but the person it served-Mary Burrows, a payroll clerk-works for TQ3 Maritz Americas, Inc.

Thus, key links in each chain that might connect the served entities to the actual defendants remain undemonstrated, and Plaintiff has not made a prima facie case that process has been properly served upon the TUI Defendants. Absent such a showing, the Court cannot grant Plaintiff's request for default.

*B. Jurisdictional Discovery*

In the absence of sufficient facts to demonstrate jurisdiction, the Court has discretion to allow jurisdictional discovery. Such discovery is typically allowed where an insufficient factual record exists or where key jurisdictional facts are contested. Here, an insufficient factual record does exist, but Plaintiff currently is so far, both in fact and in law, from asserting a prima facie case of proper service that the Court does not see jurisdictional discovery as merited.

*C. Quashing Service*

Although the Court may dismiss the case, quashing service is the typical remedy if initial defects in service might be corrected, and the Court chooses to quash service rather than to dismiss the case.

**V. CONCLUSION**

Because Plaintiff has not properly served the TUI Defendants, the Court orders service quashed. Plaintiff's motion for entry of default is DENIED.

IT IS SO ORDERED.

N.D.Cal.,2003.
Hickory Travel Systems, Inc. v. TUI AG
213 F.R.D. 547

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.