1   Bruce H. Jackson (State Bar No. 98118)
      (bruce.h.jackson@bakernet.com)
2   Robert W. Tarun (State Bar No. 64881)
      (robert.w.tarun@bakernet.com)
3   **BAKER & McKENZIE LLP**
    Two Embarcadero Center, 11th Floor
4   San Francisco, CA  94111-3802
    Telephone: +1 415 576 3000
5   Facsimile:  +1 415 576 3099

6   Patrick J. Ahern (*pro hac vice*)
      (patrick.j.ahern@bakernet.com)
7   Roxane C. Busey (*pro hac vice*)
      (roxane.c.busey@bakernet.com)
8   Karen Sewell (*pro hac vice*)
      (karen.sewell@bakernet.com)
9   **BAKER & McKENZIE LLP**
    130 E. Randolph Dr., Suite 3500
10  Chicago, IL 60601
    Telephone: +1 312 861 8000
11
    Attorneys for Defendant
12  *Tatung Company of America, Inc.*

13                    **UNITED STATES DISTRICT COURT**

14                    **NORTHERN DISTRICT OF CALIFORNIA**

15                         **SAN FRANCISCO DIVISION**

16
    IN RE: CATHODE RAY TUBE (CRT)        Master File No: 07-5944-SC
17  ANTITRUST LITIGATION                 MDL No. 1917

18                                       **DEFENDANT TATUNG COMPANY
    This Document Relates To:            OF AMERICA'S NOTICE OF
19                                       MOTION AND MOTION TO DISMISS
                                         DIRECT AND INDIRECT
20                                       PURCHASER PLAINTIFFS'
                                         CONSOLIDATED AMENDED
21       ALL ACTIONS                     COMPLAINTS**

22                                       **Date:  August 4 and 5, 2009
                                         Time:  9:00 a.m.
23                                       Dept:  1
                                         Before the Honorable Charles A. Legge**
24

25

26

27

28
                                      1
Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

CASE NO 07-5944-SC                              DEFENDANT TATUNG COMPANY OF AMERICA'S NOTICE OF
                        MOTION & MOTION TO DISMISS DIRECT- AND INDIRECT-PURCHASER PLAINTIFFS' COMPLAINTS

# **TABLE OF CONTENTS**

**Page**

I.      STATEMENT OF THE ISSUES ................................................................................. 2

II.     PRELIMINARY STATEMENT ................................................................................. 2

III.    PLAINTIFFS' ALLEGATIONS ................................................................................ 4

IV.     ARGUMENT ............................................................................................................. 6

     A.     THE COURT LACKS SUBJECT MATTER JURISDICTION OVER
          DIRECT PURCHASER PLAINTIFFS' CLAIM AGAINST TUS BASED ON
          THE INDIRECT PURCHASER RULE. .......................................................... 7

          1.     Not Only Direct-Purchaser Plaintiffs' Allegations But Also the
               Undisputed Facts Demonstrate that Plaintiffs Are Indirect Purchasers. .......... 7

          2.     *Illinois Brick* Bars the Direct-Purchaser Plaintiffs' Claim Against
               TUS. .......................................................................................................... 9

          3.     The Direct-Purchaser Plaintiffs Fail to Allege Any Exception to
               *Illinois Brick*'s Bar. ................................................................................ 10

     B.     *ILLINOIS BRICK* IS A BAR, NOT AN AFFIRMATIVE THEORY OF
          LIABILITY. .................................................................................................. 12

     C.     THE DIRECT- AND INDIRECT-PURCHASERS' CLAIMS AGAINST TUS
          SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON
          WHICH RELIEF CAN BE GRANTED. ....................................................... 13

V.      CONCLUSION ....................................................................................................... 19

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

i

CASE NO 07-5944-SC

DEFENDANT TATUNG COMPANY OF AMERICA'S NOTICE OF
MOTION & MOTION TO DISMISS DIRECT- AND INDIRECT-PURCHASER PLAINTIFFS' COMPLAINTS

# TABLE OF AUTHORITIES

**Page**

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007) ...............................................1, 2, 8

*Brennan v. Concord EFS, Inc.*, 369 F. Supp. 2d 1127 (N.D. Cal. 2005)........................2, 8

*Burnet v. Clark*, 287 U.S. 410 (1932) ....................................................................................6

*Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101 (7th Cir. 1984)...............................2

*Coastal Transfer Co. v. Toyota Motor Sales*, 833 F.2d 208 (9th Cir. 1987) ......................1

*Delaware Valley Surgical Supply, Inc. v. Niagara Falls Memorial Medical Center*, 523 F.3d 1116 (9th Cir. 2008) ........................................................................................6

*In re Ditropan XL Antitrust Litigation*, 2007 U.S. Dist. LEXIS 78423 (N.D. Cal. 2007)..................................................................................................................................2

*Freeman v. San Diego Association of Realtors*, 322 F.3d 1133 (9th Cir. 2003) ................2

*Gemco Latinoamerica, Inc. v. Seiko Time Corp.*, 685 F. Supp. 400 (S.D.N.Y. 1988)........1

*Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977) ......................................................1, 4, 5

*Invamed, Inc. v. Barr Laboratoriess, Inc.*, 22 F. Supp. 2d 210 (S.D.N.Y. 1998)...............1

*Jung v. Association of America Medical Colleges*, 300 F. Supp. 2d 119 (D.D.C. 2004) ................................................................................................................................1

*Kansas v. Utilicorp United, Inc.*, 497 U.S. 199 (1990)........................................................5

*Kendall v. VISA U.S.A., Inc.*, 518 F.3d 1042 (9th Cir. 2008) ......................................1, 6, 8

*Leegin Creative Leather Products v. PSKS, Inc.*, 551 U.S. 877 (2007) ..............................1

*Midwest Paper Products Co. v. Continental Group, Inc.*, 596 F.2d 573 (3d Cir. 1979).....6

*Miller v. International Bus. Machines Corp. (IBM)*, No. C02-2118, 2006 WL. 2792416 (N.D. Cal. Sept. 26, 2006) ...........................................................................2

*In re Sagent Tech., Inc., Deriv. Litigation*, 278 F. Supp. 2d 1079 (N.D. Cal. 2003)...........1

*See E. & J. Gallo Winery v. Encana Energy Svcs., Inc.*, 2008 U.S. Dist. LEXIS 46927 (E.D. Cal. May 27, 2008)....................................................................................2

*Sherman v. British Leyland Motors, Ltd.*, 601 F.2d 429 (9th Cir. 1979).............................2

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

i

*Spears v. Transcon. Bus. System, Inc.*, 226 F.2d 94 (9th Cir. 1955) ...................................1

*Thornhill Publication Co. v. General Telegraph & Electrics Corp.*, 594 F.2d 730 (9th Cir. 1979) ......................................................................................................2

*In re Travel Agent Com'n Antitrust Litigation*, No. 1:03 CV 30000, 2007 WL. 3171675 (N.D. Ohio Oct. 29, 2007) ...............................................................1

*United States v. Bestfoods*, 524 U.S. 51 (1998) ............................................................2, 6

*Wady v. Provident Life & Accident Insurance Co. of America*, 216 F. Supp. 2d 1060 (C.D. Cal. 2002) ......................................................................................1

*Wilbur v. Locke*, 423 F.3d 1101 (9th Cir. 2005) ..............................................................2

## STATUTES

Section 1 of the Sherman Act, 15 U.S.C. § 1.......................................................................1

Baker & McKenzie LLP
San Francisco

CASE NO 07-5944-SC

TATUNG COMPANY OF AMERICA'S NOTICE OF MOTION & MOTION TO DISMISS  DIRECT- AND INDIRECT-PURCHASER PLAINTIFFS' COMPLAINTS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**NOTICE OF MOTION AND MOTION**

TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, on August 4 and 5, 2009, at 9:00 a.m., or as soon thereafter as counsel may be heard, at the San Francisco Resolution Center of JAMS, in San Francisco, California, before the Special Master, Honorable Charles A. Legge (Ret.), pursuant to the Court's Order Re: Special Master's Duties, so ordered by Honorable Samuel Conti on April 8, 2009, Defendant Tatung Company of America ("TUS") will move this Court for an order dismissing the claims asserted against TUS in these actions pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction and Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.

This Motion is based upon this Notice, the Memorandum of Law in support thereof, the Declaration of Edward Chen (attached and incorporated herein as Exhibit 1) and the Declaration of Michael Lai (attached and incorporated herein as Exhibit 2) in support thereof, any reply submissions by TUS in support of this Motion, and such other materials and information that the Court may properly consider at or before the hearing on this Motion.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

1

CASE NO 07-5944-SC

TATUNG COMPANY OF AMERICA'S NOTICE OF MOTION & MOTION TO DISMISS DIRECT- AND INDIRECT-PURCHASER PLAINTIFFS' COMPLAINTS

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  STATEMENT OF THE ISSUES

1.  Whether this Court has subject matter jurisdiction over Defendant Tatung Company of America with respect to the direct-purchaser plaintiffs' complaint, given that the direct-purchaser plaintiffs are indirect purchasers of the alleged price-fixed product.

2.  Whether either the direct-purchaser or the indirect-purchaser plaintiffs have adequately alleged a claim for antitrust conspiracy against Defendant Tatung Company of America.

3.  Whether the direct-purchaser or the indirect-purchaser plaintiffs have adequately alleged Defendant Tatung Company of America's liability for antitrust conspiracy based on subsidiary liability.

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, Defendant Tatung Company of America ("TUS") respectfully submits this motion (the "Motion") to dismiss the claims asserted against TUS in the *Direct Purchaser Plaintiffs' Consolidated Amended Complaint* ("DP-CAC") (Dkt. 436) on the grounds that: (i) the Court lacks subject matter jurisdiction over TUS; (ii) the DP-CAC fails to state a claim against TUS for antitrust conspiracy, and (iii) the DP-CAC fails to state a claim against TUS for antitrust conspiracy based on subsidiary liability.[1]  Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, TUS respectfully submits this motion to dismiss the claim asserted against TUS in the *Indirect Purchaser Plaintiffs' Consolidated Amended Complaint* ("IP-CAC") (Dkt. 437) on the grounds that the IP-CAC fails to state a claim against TUS for antitrust conspiracy, and fails to state a claim against TUS based on any theory of subsidiary liability.

## II.  PRELIMINARY STATEMENT

Plaintiffs' complaints seek to assert a claim under Section 1 of the Sherman Act, 15 U.S.C. § 1, based on an alleged "price-fixing conspiracy" among manufacturers of cathode ray tubes

---

[1] Defendants' Joint Motions to Dismiss Direct and Indirect Purchaser Plaintiffs' Consolidated Amended Complaints (the "Joint Motions"), which TUS has joined and hereby incorporates by reference, set forth the numerous grounds as to why both Complaints should be dismissed against *all* of the Defendants. This separate motion is directed to the failure of the Complaints to allege facts sufficient to state a claim for relief specifically with respect to TUS.

Baker & McKenzie LLP
San Francisco

CASE NO 07-5944-SC

TATUNG COMPANY OF AMERICA'S NOTICE OF MOTION & MOTION TO DISMISS  DIRECT- AND INDIRECT-PURCHASER PLAINTIFFS' COMPLAINTS

("CRTs").  (DP-CAC ¶¶ 1-8, IP-CAC ¶¶1-8)  With respect to TUS, the complaints suffer from numerous deficiencies, as set forth in this Motion.

First, based on their allegations and the undisputed facts, the direct-purchaser plaintiffs' claim against TUS is barred under the rule in *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 728-29 (1977), which precludes indirect purchasers from suing for damages under the federal antitrust laws. TUS is not a CRT manufacturer.  Instead TUS's business includes: (1) purchasing and reselling finished products containing CRTs; (2) purchasing CRTs and manufacturing finished products containing CRTs; and (3) purchasing and reselling a limited quantity of CRTs for repair.  As a purchaser of finished products containing CRTs, TUS did not purchase such finished products from CPT but from many other different manufacturers.  As a purchaser of CRTs, TUS did not purchase CRTs only from CPT, but from many different manufacturers.  Accordingly, since TUS was itself a direct purchaser (and at times even an indirect purchaser) of CRTs and finished products containing CRTs, then those customers that purchased products from TUS are indirect purchasers, who are barred under *Illinois Brick* from suing TUS or any other entity for damages based on purchases of CRTs and CRT finished products from TUS.

Second, the allegations of the direct-purchaser plaintiffs are insufficient to state a claim for antitrust conspiracy against TUS based on the control exception to *Illinois Brick.*  The complaint fails to assert how TUS could be held liable by the mere fact that it is alleged to be a subsidiary of Tatung Company of Taiwan ("TT").  Plaintiffs do not allege that CPT owns or controls TUS.  They allege only that TUS sold CRT products manufactured by CPT, among others.  (DP-CAC ¶ 69.) Because the direct-purchaser plaintiffs have not alleged (and cannot allege) sufficient facts to set forth a claim for relief under the control exception to *Illinois Brick*, their claim against TUS is barred.  Finally, even if *Illinois Brick* does not apply to bar the actions of those purchasers that purchased from TUS, *Illinois Brick* nevertheless does not provide an affirmative theory or basis of liability against TUS.

Furthermore, both the direct-purchaser and the indirect-purchaser plaintiffs have failed to state a claim against TUS upon which relief can be granted.  To survive a motion to dismiss based on

3

Rule 12(b)(6) of the Federal Rules of Civil Procedure, plaintiffs' complaint must allege facts in support of their claim that are "enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp.* v. *Twombly*, 127 S. Ct. 1955, 1965 (2007) (citations omitted).  However, neither the direct-nor the indirect-purchaser plaintiffs allege any specific conduct by TUS that would implicate TUS in the alleged conspiracy.  They only allege that TUS sold CRTs and CRT finished products.  Therefore, Plaintiffs' claims against TUS should be dismissed because their vague and conclusory allegations, even if true, would not entitle them to relief.

Moreover, for the same reasons that plaintiffs fail to set forth a claim against TUS under *Illinois Brick's* control exception, plaintiffs fail to set forth sufficient allegations to hold TUS vicariously liable based on the conduct of its alleged affiliated companies.

For the above reasons, and those stated more fully herein, this Court should grant TUS's motion to dismiss the direct-purchaser plaintiffs' consolidated amended complaint and the indirect-purchaser plaintiffs' consolidated amended complaint.

## III.   PLAINTIFFS' ALLEGATIONS

The allegations concerning TUS in each of the complaints are set forth below.  There are no other allegations in either complaint about any act, omission, statement, product or other fact allegedly relating specifically or directly to TUS.

### A.   ALLEGATIONS OF DIRECT-PURCHASER PLAINTIFFS

The direct-purchaser plaintiffs' only allegations concerning TUS that appear in their 222-paragraph complaint are the following:

- "Tatung Company of America, Inc. ("Tatung America") is a California corporation with its principal place of business located at 2850 El Presidio Street, Long Beach, California. Tatung America is a subsidiary of Tatung Company. Currently, Tatung Company owns approximately half of Tatung America. The other half used to be owned by Lun Kuan Lin, the daughter of Tatung Company's former Chairman, T.S. Lin. Following Lun Kuan Lin's recent death, her share passed to her two children. During the Class Period, Tatung America manufactured, marketed, sold and/or distributed CRT Products manufactured by, among others, Chunghwa Picture Tubes, Ltd.,

4

either directly or through its subsidiaries or affiliates throughout the United States." DP-CAC ¶ 69.

- "To the extent Tatung America distributed CRT Products to direct purchasers, it played a significant role in the conspiracy because Defendants wished to ensure that the prices for such products paid by direct purchasers would not undercut the pricing agreements reached at these various meetings. Thus, Tatung America was an active, knowing participant in the alleged conspiracy." DP-CAC ¶ 169.

There are no other allegations in the entire complaint about any conduct, act, omission, statement, product or other fact relating specifically or directly to TUS.

## B.    ALLEGATIONS OF INDIRECT-PURCHASER PLAINTIFFS

Similarly, the indirect-purchaser plaintiffs' only allegations concerning TUS that appear in their 92-page Complaint are the following:

- "Defendant Tatung Company of America, Inc. ("Tatung America") is a California corporation with its principal place of business at 2850 El Presidio Street, Long Beach, California. Tatung America is a subsidiary of Tatung Company. Currently, Tatung Company owns approximately half of Tatung America. The other half is owned by Lun Kuan Lin, the daughter of Tatung Company's former Chairman, T.S. Lin. Following Lun Kuan Lin's recent death, her share recently passed to her two children. During the Class Period, Tatung America manufactured, marketed, sold and/or distributed CRT Products, either directly or indirectly through its subsidiaries or affiliates, to customers throughout the United States." (IP-CAC ¶ 95.)

- "Defendants Tatung Company and Tatung America were represented at those meetings[2] and were a party to the agreements entered at them. To the extent Tatung Company and Tatung America sold and/or distributed CRT Products to direct purchasers, they played a significant role in the conspiracy because Defendants wished to ensure that the prices for CRT Products paid by direct purchasers would not undercut the pricing agreements reached at the Glass Meetings. Thus, Tatung Company and Tatung America were active, knowing participants in the alleged conspiracy." (IP-CAC ¶ 174.)

---

[2] Apparently, "those meetings" refers to "at least 100" so-called "Glass Meetings" in which, allegedly, "Defendant Chunghwa [Picture Tubes], through CPT, Chunghwa Malaysia, and representatives from their factories in Fuzhuo (China) and Scotland, participated … at all levels." (IP-CAC ¶ 173.) Plaintiffs allege that "[a] substantial number of these meetings were attended by the highest ranking executives from Chunghwa, including the former Chairman and CEO of CPT, C.Y. Lin. Chunghwa also engaged in bilateral discussions with each of the other Defendants on a regular basis. Through these discussions, Chunghwa agreed on prices and supply levels for CRT Products." (Id.)

Baker & McKenzie LLP
San Francisco

5

CASE NO 07-5944-SC                    TATUNG COMPANY OF AMERICA'S NOTICE OF MOTION & MOTION TO
                                      DISMISS DIRECT- AND INDIRECT-PURCHASER PLAINTIFFS' COMPLAINTS

## IV.    ARGUMENT

In typical fashion, counsel for the purported direct-purchaser plaintiff class have made their allegations with a broad brush and, in doing so, have lumped together not only Tatung Company of America ("TUS") with CRT manufacturers, but also finished products containing CRTs with CRTs themselves.  These imprecise allegations fail to rescue the claim against TUS from the rule of *Illinois Brick* precluding indirect purchasers from suing for damages under the federal antitrust laws and fail to set forth a claim under any exception to the rule of *Illinois Brick*.  Alternatively, even if the direct-purchaser plaintiffs' claim against TUS were not barred, it should still be dismissed for failure to state a claim upon which relief can be granted.  The direct-purchaser complaint fails to allege how TUS joined or participated in the alleged conspiracy.  Plaintiffs only allege that TUS sold CRTs and CRT finished products.  The direct-purchaser plaintiffs also fail to allege facts that would support holding TUS vicariously liable here.  They only allege the mere fact that TUS is a subsidiary of TT.  However, this allegation is not accompanied by any allegations of fact supporting any other indicia of control by CPT over TUS.  Thus, the mere facts that TUS sells CRTs and is a subsidiary of TT are insufficient to set forth a plausible claim for relief against TUS.  Finally, setting these insufficient allegations in a vague context of wrongdoing by other parties does nothing to raise the allegations against TUS above the speculative level and should not be deemed sufficient to state a claim against TUS.

Similarly, the scanty allegations set forth in the indirect-purchaser complaint fail to state a claim that TUS participated in an antitrust conspiracy.  The indirect purchasers maintain that TUS is a subsidiary or affiliate of TT but admit that TT owns only half of TUS.  (*See* IP-CAC ¶¶ 94, 96.) Plaintiffs refer to both TT and TUS "collectively ... as 'Tatung,'" claim that both companies "were represented" by unspecified person(s) at meetings, and claim that both entities together constituted "a party" to illegal agreements.  (IP-CAC ¶¶ 96, 173, 174.)  However, Plaintiffs do not allege that TUS is the alter ego of TT, Chunghwa Picture Tubes, CPT, or any affiliate of any such entity, nor that any such entity is the alter ego of TUS.  (*See* IP-CAC ¶¶ 96, 173, 174.)  Having failed to allege that TUS is or was the alter ego of TT or any other entity, and having failed to allege that TUS (either individually or "collectively" with TT) engaged in any conduct from which participation by

6

TUS in an illegal agreement or conspiracy could reasonably be inferred, the indirect-purchaser plaintiffs have failed to state a claim against TUS upon which relief can be granted.

Therefore, both the direct- and the indirect-purchaser plaintiffs' complaints should be dismissed as to TUS.

## A.   THE COURT LACKS SUBJECT MATTER JURISDICTION OVER DIRECT PURCHASER PLAINTIFFS' CLAIM AGAINST TUS BASED ON THE INDIRECT PURCHASER RULE.

The direct-purchaser plaintiffs' claim against TUS is barred under *Illinois Brick*.  A defense based on *Illinois Brick* attacks plaintiffs' standing, and thus, is properly raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. *See Freeman v. San Diego Association of Realtors*, 322 F.3d 1133, 1145 (9th Cir. 2003) ("*Illinois Brick* denies standing to indirect purchasers in many circumstances").  When a defendant moves to dismiss a claim for lack of subject matter jurisdiction under Rule 12(b)(1), the plaintiff bears the burden of proving that the court has jurisdiction to decide the claim. *Thornhill Publ'n Co. v. General Tel. & Elecs. Corp.*, 594 F.2d 730,-733 (9th Cir. 1979); *see also Wilbur v. Locke*, 423 F.3d 1101, 1107 (9th Cir. 2005) (plaintiff bears burden of establishing standing).  If an attack on subject matter jurisdiction is "factual," a defendant may rely on affidavits or other evidence that would be properly before the Court, and the non-moving party is not entitled to any presumptions of truthfulness with respect to the allegations in the complaint. *In re Ditropan XL Antitrust Litigation*, 2007 U.S. Dist. LEXIS 78423, *5-7 (N.D. Cal. 2007).  Rather, he or she must come forward with evidence establishing jurisdiction. *Id.* (*citing Thornhill*, 594 F.2d at 733).  In the instant case, TUS provides a factual attack on the subject matter jurisdiction of plaintiffs' claim against it, and also points out where plaintiffs have failed to allege facts supporting their contention of subject matter jurisdiction.  Based on either one or both, plaintiffs' claim against TUS is barred by *Illinois Brick*.

### 1.   Not Only Direct-Purchaser Plaintiffs' Allegations But Also the Undisputed Facts Demonstrate that Plaintiffs Are Indirect Purchasers.

By their own allegations, plaintiffs concede that TUS is an intermediary in the distribution chain and not a proper antitrust defendant under *Illinois Brick*.  Plaintiffs allege that TUS

Baker & McKenzie LLP
San Francisco

TATUNG COMPANY OF AMERICA'S NOTICE OF MOTION & MOTION TO DISMISS  DIRECT- AND INDIRECT-PURCHASER PLAINTIFFS' COMPLAINTS

"manufactured, marketed, sold and/or distributed CRT Products manufactured by, among others, Chunghwa Picture Tubes, Ltd., either directly or through its subsidiaries or affiliates throughout the United States." DP-CAC ¶ 69. Plaintiffs do not allege that TUS manufactured or sold CRTs; rather they admit that TUS purchased and resold CRT finished products manufactured by other entities. Thus, the above allegation demonstrates that TUS is not a CRT manufacturer but instead a direct purchaser, and at times indirect purchaser, of CRTs.[3] In light of the allegation that TUS is a direct or indirect purchaser of CRTs, it follows that members of the plaintiff class are indirect purchasers *vis à vis* TUS, in many instances by more than one layer in the distribution chain.

The undisputed facts set forth in the Declaration of Edward Chen also demonstrate that plaintiffs are indirect purchasers. TUS does not now nor has it ever manufactured CRTs. (E. Chen Decl. ¶ 2.) Instead, TUS's CRT business consisted of:

- (1) Purchasing and reselling finished products containing CRTs. TUS did not purchase these finished products from CPT, and in fact purchased such finished products from many other manufacturers including Tatung Company of Taiwan. (E. Chen Decl. ¶ 6.) TUS did not receive any special pricing on these purchases from TT. (E. Chen Decl. ¶ 7.) TUS engages in arms-length negotiations with all of its CRT finished product suppliers, including TT, and bases its purchasing decisions on functionality and market price. (E. Chen Decl. ¶ 8.)

- (2) Purchasing CRTs and manufacturing and reselling finished products containing those CRTs. TUS did not purchase CRTs only from CPT, and in fact purchased such CRTs from many different manufacturers. (E. Chen Decl. ¶ 3.) TUS did not receive any special pricing on these purchases from CPT. (E. Chen Decl. ¶ 4.) TUS engages in arms-length negotiations with all of its CRT suppliers, including CPT, and bases its

---

3 While plaintiffs allege, without any supporting facts, that they purchased "CRT products directly from one or more of the defendants and/or their subsidiaries" (DP-CAC ¶¶ 11-23 (emphasis added)), they contradict this statement when they later allege that the class "encompasses those who bought CRT products directly from a defendant, even if the CRT contained therein was manufactured by an affiliated entity, principal, agent or co-conspirator" (DP-CAC ¶ 86 (emphasis added)). Thus, while they attempt to gloss over the crucial distinction raised in Illinois Brick between manufacturers and intermediaries, plaintiffs concede by these allegations that they are not direct purchasers of CRTs with respect to all defendants.

purchasing decisions on functionality and market price.  (E. Chen Decl. ¶ 5.)

▪   (3) Purchasing a limited number of CRTs and reselling them for repair and replacement of TUS products.  The only CRTs that TUS purchased and resold were in connection with the repair and replacement of finished products containing CRTs that TUS sold to its customers.  (E. Chen Decl. ¶ 13.)  However, even as to the sale of these CRTs, the plaintiff class would represent indirect purchasers because TUS was the direct purchaser of these CRTs.

Thus, to the extent that TUS was a purchaser of finished products containing CRTs, then those customers that purchased those finished products from TUS (i.e., the "Direct Purchaser Plaintiffs") were in fact indirect purchasers of those finished products and of the CRTs contained in those products. (E. Chen Decl. ¶ 10).  To the extent that TUS purchased CRTs to manufacture finished products using those CRTs, then those customers that purchased those finished products from TUS (i.e., the "Direct Purchaser Plaintiffs") were indirect purchasers of those finished products and of the CRTs contained in those products.  (E. Chen Decl. ¶ 11).  Moreover, to the extent that TUS purchased finished products containing CRTs, TUS was not the direct purchaser of the CRTs contained in those finished products.  (E. Chen Decl. ¶ 12).  Instead, the manufacturers of the finished products were either the direct purchasers of the CRTs contained in those finished products, or indirect purchasers themselves.  (E. Chen Decl. ¶ 12).

Accordingly, based on the facts contained in Edward Chen's declaration and plaintiffs' allegations, the so-called direct purchaser plaintiffs were indirect purchasers in relation to TUS.

### 2.    *Illinois Brick* **Bars the Direct-Purchaser**[4] **Plaintiffs' Claim Against TUS.**

Under *Illinois Brick*, such indirect purchasers cannot maintain a damages suit under the antitrust laws based on their purchases from TUS.  In *Illinois Brick*, the Supreme Court held that an indirect purchaser is barred from seeking damages against a manufacturer for alleged violations of federal antitrust laws. *See Illinois Brick Co. v. Illinois*, 431 U.S. 720, 728-29 (1977).  Simply stated,

---

[4] As explained in the prior section, these purchasers were in fact indirect purchasers; however, this Motion retains the term "direct-purchaser plaintiffs" to refer to those plaintiffs who filed the "First Amended Direct Purchaser Plaintiffs' Consolidated Complaint."

9

Baker & McKenzie LLP
San Francisco

CASE NO 07-5944-SC                                    TATUNG COMPANY OF AMERICA'S NOTICE OF MOTION & MOTION TO
                                                     DISMISS DIRECT- AND INDIRECT-PURCHASER PLAINTIFFS' COMPLAINTS

*Illinois Brick* bars indirect purchasers in a chain of distribution from suing for damages based on alleged unlawful overcharges passed on to them by intermediaries who purchased directly from the alleged antitrust violator. *Illinois Brick*, 431 U.S. at 746. In construing the scope of the indirect purchaser rule, the Supreme Court has stated that it applies broadly and that any exceptions to the rule should be construed strictly. *See Kansas v. Utilicorp United, Inc.*, 497 U.S. 199, 208, 217 (1990) ("We think it an unwarranted and counterproductive exercise to litigate a series of exceptions [to the indirect purchaser rule]. Having stated the rule in *Hanover Shoe*, and adhered to it in *Illinois Brick*, we stand by our interpretation of § 4."). Moreover, in announcing the rule, the Court recognized that indirect purchasers, even when able to trace an injury to an antitrust violation, are not in the "preferred position as private attorneys general" intended by Congress to enforce the antitrust laws. *Illinois Brick*, 431 U.S. at 729.

As discussed above, because TUS did not manufacture CRTs, TUS was a direct (and at times indirect) purchaser of CRTs and finished products containing CRTs. This fact is uncontroverted by both plaintiffs' allegations and the Declaration of Edward Chen. Therefore, any customer that purchased finished products containing CRTs from TUS was necessarily an indirect purchaser. Accordingly, the class of so-called direct-purchaser plaintiffs are indirect purchasers, whose claims against TUS are barred under *Illinois Brick*.

### 3. The Direct-Purchaser Plaintiffs Fail to Allege Any Exception to *Illinois Brick*'s Bar.

There are few exceptions to *Illinois Brick* and they are narrowly construed. *Utilicorp*, 497 U.S. at 217. The direct-purchasers' complaint fails to allege any facts as to TUS that would satisfy an exception to *Illinois Brick*, nor could it set forth any such allegations in light of the undisputed facts. The only exception that plaintiffs might attempt to assert is the control exception.[5] However, as demonstrated by the plaintiffs' deficient allegations and the Declaration of Michael Lai, plaintiffs have not and cannot allege facts sufficient to set forth a claim under the control exception.

For the *Illinois Brick* control exception to apply, the alleged antitrust violator must control

---

[5] The other two exceptions—the cost-plus exception and the co-conspirator exception—do not apply here.

10

the intermediary, by so dominating the subsidiary as to disregard its separate corporate existence. *See Midwest Paper Prods. Co. v. Continental Group, Inc.*, 596 F.2d 573, 589 (3d Cir. 1979). Here, plaintiffs have not alleged that CPT controls TUS in any way, much less in a manner so complete as to merit disregarding TUS's separate corporate existence. Plaintiffs allege only that TUS is an "approximately 50%" owned "subsidiary" of TT. (DP-CAC ¶ 69.) This allegation is woefully insufficient. The law of corporations requires more than naked allegations of ownership to support disregarding the corporate form. *See United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (*quoting* W. Fletcher, Cyclopedia of Law of Private Corporations § 33, p. 568 (rev. ed. 1990) ("Neither does the mere fact that there exists a parent-subsidiary relationship between two corporations make the one liable for the torts of its affiliate."); *Burnet v. Clark*, 287 U.S. 410, 415 (1932) ("A corporation and its stockholders are generally to be treated as separate entities.")). Similarly, courts require additional indicia of control to allow indirect purchasers to sue under the antitrust laws via the control exception. *See, e.g., Kendall v. VISA U.S.A., Inc.*, 518 F.3d 1042, 1050 (9th Cir. 2008) (barring a claim under *Illinois Brick* where plaintiffs did not allege "any facts showing that the Consortiums have any direct control over the merchant discount fee"); *Delaware Valley Surgical Supply, Inc. v. Niagara Falls Memorial Medical Center*, 523 F.3d 1116, 1121 (9th Cir. 2008) (barring purchases through "independent wholesalers that were not owned or controlled by any defendant"). Accordingly, the complaint fails to set forth plaintiffs' right to relief from TUS under the *Illinois Brick* control exception.

Nor would the facts support such a right to relief, as demonstrated in the Declaration of Michael Lai. Neither CPT nor TT control TUS. CPT does not have any ownership interest in TUS. (M. Lai Decl. ¶ 2.) Neither TT nor CPT control the way that TUS sets prices for its CRT products (or any other products, for that matter). (E. Chen Decl. ¶ 9.) Neither TT nor CPT plays any role in TUS's management or operations. (M. Lai Decl. ¶ 5.) Finally, neither TT nor CPT provides any funding, loans, or guarantees to TUS. (M. Lai Decl. ¶ 6.)

Moreover, there is no way that CPT can control TUS by virtue of TT's respective ownership interests in CPT and TUS. Indeed, TT's ownership of CPT, on the one hand, and TUS, on the other

11

hand, are not linked in any way and are not alleged to be.  Thus, TT's separate and distinct

ownership of CPT and TUS is insufficient—especially given the Supreme Court's admonition of

strictly construing any exception to *Illinois Brick*—to establish CPT's control over TUS.

In addition, TT does not now own nor has ever owned 100% or even a majority of TUS.  M.

Lai Decl. ¶ 2.  From the founding of TUS, TT has owned only 50% of TUS.  M. Lai Decl. ¶ 2.  Nor

has TT ever owned 100% of CPT.  M. Lai Decl. ¶ 3.  TT currently owns only approximately 30% of

CPT.  M. Lai Decl. ¶ 3.[6]  Furthermore, the make-up of TUS's Board of Directors also contradicts

any assertion of control.  There are six members of TUS's Board of Directors: two from TT, two

from TUS's management, and two who have no ownership in TUS, and are not officers or directors

of TT or CPT.  M. Lai Decl. ¶ 4.

The above allegations and undisputed facts fall far short of establishing that CPT or TT

control TUS, and, even further, contradict any assertion of such control.  Thus, plaintiffs have failed

to establish the control exception.  Moreover, the undisputable facts regarding the ownership of TUS

and the composition of its Board of Directors demonstrate that plaintiffs cannot satisfy the control

exception.  Therefore, since the purported "direct-purchaser" plaintiffs cannot satisfy the control

exception to *Illinois Brick*, their claim against TUS is barred.

## B.   *ILLINOIS BRICK* IS A BAR, NOT AN AFFIRMATIVE THEORY OF LIABILITY.

Furthermore, *Illinois Brick* does not provide an affirmative theory or basis of liability against

TUS.  First, the rule of Illinois Brick is a defense – a bar against a claim based on purchases made by

an indirect purchaser.  Second, viewing in this correct light, any exception to *Illinois Brick*,

including the control exception, applies only to allow certain purchasers to assert a claim against an

alleged conspirator manufacturers based on purchases from an intermediary.  These decisions do not

authorize such purchasers to assert a claim directly against the intermediary unless it too is an

alleged co-conspirator.  Because *Illinois Brick* does not provide the direct-purchaser plaintiffs here

---

[6] Insofar as the facts regarding TT's partial share ownership in CPT and TUS are publicly available, this Court can take judicial notice of them.

Baker & McKenzie LLP
San Francisco

with an affirmative theory of liability against TUS, they must allege that TUS knew of and participated in the alleged conspiracy.  As set forth below, the direct purchaser plaintiffs have utterly failed to do that here.

### C.   THE DIRECT- AND INDIRECT-PURCHASERS' CLAIMS AGAINST TUS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

Both purported classes of plaintiffs have completely failed to allege that (a) TUS entered into any alleged anti-competitive agreement; (b) TUS participated in the alleged conspiracy in any way; or (c) TUS is controlled by another alleged member of the conspiracy so as to be liable for the its alleged conduct.  For these reasons, the plaintiffs fail to nudge their claims against TUS from speculative to plausible, as required to assert a claim upon which relief may be granted under *Bell Atl. Corp.* v. *Twombly*, 127 S. Ct. 1955, 1964-65, 1974 (2007) (allegations of parallel conduct in action alleging violations of antitrust laws were insufficient to sustain complaint against motion to dismiss because complaint lacked "enough facts to state a claim to relief that is plausible on its face").[7]

Both classes of plaintiffs fail to state a plausible claim that TUS was a member of the alleged conspiracy as required under the Federal Rules of Civil Procedure.   To satisfy the pleading requirements of Rules 8(a) and 12, plaintiffs must provide specific allegations regarding the conduct of TUS and the role that it played in the alleged conspiracy.  *See, e.g., Twombly*, 127 S. Ct. at 1964-65, 1974 ("...a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do").   Stated differently, the complaint must allege the "who, did what, to whom (or with whom), where, and when."  *See Kendall*, 518 F.3d at 1048 (holding that district court could reject on motion to dismiss conclusory allegations that two related entities conspired with other entities, when the allegations lacked "any evidentiary facts alleged to support such conclusion"); *see also Brennan* v. *Concord EFS, Inc.*, 369 F. Supp. 2d 1127, 1136-37 (N.D. Cal. 2005) (dismissing price-fixing

---

[7] TUS hereby incorporates by reference as if fully restated herein the *Twombly* standard set forth in the Defendants' Joint Brief to Dismiss the DP-CAC.

claims against two defendants because "there are no allegations in the complaint specifically connecting [those defendants] to the alleged conspiracy").[8]  Plaintiffs' allegations in both complaints fall far short of this standard with respect to TUS.

### 1.     The Direct-Purchaser Plaintiffs Fail to Allege that TUS Took Part in an Antitrust Conspiracy.

The direct-purchaser plaintiffs have utterly failed to allege any separate and distinct conduct by TUS—much less that any officer, director or employee of TUS entered into any illegal agreement with any other company at any time or place, let alone the terms of any such agreement or that TUS engaged in conduct parallel with that of other companies.  These plaintiffs rely instead on general allegations as to all defendants and lump TUS together with CPT, the other CRT manufacturers, and the other defendants.  That TUS sold CRT products, as direct-purchaser plaintiffs allege (DP-CAC ¶ 169), does not render TUS a "knowing participant in the alleged conspiracy."  *See Leegin Creative Leather Prods. v. PSKS, Inc.*, 551 U.S. 877 (2007) ("[T]he Court required that antitrust plaintiffs alleging a § 1 price-fixing conspiracy must present evidence tending to exclude the possibility a manufacturer and its distributors acted in an independent manner" (internal citation omitted)).  Indeed, logically the converse is true because TUS benefits when CRT manufacturers aggressively compete for supply contracts. *See Coastal Transfer Co. v. Toyota Motor Sales,* 833 F.2d 208, 211

---

[8] Nor may a plaintiff simply lump together allegations against multiple defendants without stating facts that allege the role and conduct each defendant played in the alleged conspiracy, as Plaintiffs have attempted to do here.  *See, e.g., In re Sagent Tech., Inc., Deriv. Litig.*, 278 F. Supp. 2d 1079, 1094-95 (N.D. Cal. 2003) ("A complaint that lumps together thirteen individual defendants, where only three of the individuals was alleged to have been present for the entire period of the events alleged in the complaint, fails to give 'fair notice' of the claim to those defendants."); *see also In re Travel Agent Com'n Antitrust Litig.*, No. 1:03 CV 30000, 2007 WL 3171675, at *4 (N.D. Ohio Oct. 29, 2007) ("Because Plaintiffs failed to allege that [one of the defendants] engaged in parallel conduct, the claims against [that defendant] must also be dismissed."); *id.* at *3, fn. 4 (dismissing claims against defendant because that defendant is "mentioned by name only once in the Complaint" and is a holding company that did not make commission payments of the type challenged by plaintiffs and, thus, "there is no factual matter to plausibly suggest that [that defendant] joined or participated in an unlawful conspiracy"); *Jung v. Ass'n of Am. Med. Colleges*, 300 F. Supp. 2d 119, 163 (D.D.C. 2004) ("Plaintiffs cannot escape their burden of alleging that each defendant participated in or agreed to join the conspiracy by using the term 'defendants' to apply to numerous parties without any specific allegations as to [the moving defendant]."); *Invamed, Inc. v. Barr Labs., Inc.* 22 F. Supp. 2d 210, 218, 221 (S.D.N.Y. 1998) ("The complaint fails to support the existence of a conspiracy as it presents no facts that might establish any participation by the [parent companies] in the alleged conspiracy, save including them in the term 'defendants.' ...[Plaintiff] has not alleged that the [parent companies] 'acted' in any way.").

14

Baker & McKenzie LLP
San Francisco

CASE NO 07-5944-SC                                    TATUNG COMPANY OF AMERICA'S NOTICE OF MOTION & MOTION TO
                                                                    DISMISS  DIRECT- AND INDIRECT-PURCHASER PLAINTIFFS' COMPLAINTS

(9th Cir. 1987) ("Such an intention . . . would have been illogical because a restriction on competition in the [given] market would have raised prices in a market in which [the defendant] purchased services."); see also *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1109-10 (7th Cir. 1984) ("The plaintiffs are alleging, in essence, that [the defendant] conspired to injure itself."). Thus, based on the requirement for pleading TUS's membership in the alleged conspiracy, the direct-purchaser plaintiffs' allegations against TUS fail.

The direct-purchaser plaintiffs' complaint also fails to allege anything that TUS did in connection with the alleged conspiracy or any indirect role that TUS played in the alleged conspiracy, other than selling CRT products. (*See* DP-CAC ¶ 169.) As discussed above, merely selling a price-fixed product cannot be enough to state a conspiracy claim against TUS. Therefore, the direct-purchaser plaintiffs' allegations fail to state a plausible claim that TUS participated in the alleged conspiracy. *See Twombly*, 127 S. Ct. at 1966 (what is required at the pleading stage are "allegations plausibly suggesting (not merely consistent with) agreement.").

Finally, the direct-purchaser plaintiffs cannot satisfy their pleading obligations with respect to TUS by relying on the conclusory and insufficient allegations of control with respect to TT and CPT, which are discussed in greater detail above.[9] It is fundamental that a party may not be held liable for the alleged misconduct of another corporation merely because that party is a subsidiary of that other corporation. As the Supreme Court emphasized in *Bestfoods*, 524 U.S. at 61: "It is a general principle of corporate law deeply 'ingrained in our economic and legal systems' that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries." *See also Miller v. Int'l Bus. Machines Corp. (IBM)*, No. C02-2118, 2006 WL 2792416 at *10 (N.D. Cal. Sept. 26, 2006) (holding IBM, parent company of IBM China, and IBM Engineering Technology Co., Ltd., not responsible for the actions of its subsidiaries); *Sherman v. British Leyland Motors, Ltd.*, 601 F.2d 429, 441 (9th Cir. 1979) ("[a]ny

---

[9] The contexts in which a parent company can be held liable for its subsidiary's acts are limited. *See E. & J. Gallo Winery v. Encana Energy Svcs., Inc.*, 2008 U.S. Dist. LEXIS 46927, at *13 (E.D. Cal. May 27, 2008); *United States v. Bestfoods*, 524 U.S. 51, 69-70 (1998). Here, the complaints fail to allege an alter-ego or control relationship between TUS and TT, CPT, or any other alleged affiliate, parent, or subsidiary.

Baker & McKenzie LLP
San Francisco

CASE NO 07-5944-SC                          TATUNG COMPANY OF AMERICA'S NOTICE OF MOTION & MOTION TO
                                            DISMISS DIRECT- AND INDIRECT-PURCHASER PLAINTIFFS' COMPLAINTS

relationship of parent and subsidiary" between defendant and other defendants alleged to have violated antitrust laws "is not enough" to state a claim against parent corporation); *Spears v. Transcon. Bus. Sys., Inc.*, 226 F.2d 94, 98 (9th Cir. 1955) (finding shareholder not responsible for civil rights violations of its subsidiary because "a corporation and its stockholders are deemed separate legal entities and stock ownership in itself is not sufficient to charge the parent company with responsibility for acts of the subsidiary.") (citation omitted); *Invamed*, 22 F. Supp. 2d at 219 ("Absent allegations of anticompetitive conduct by the [parent companies] 'there is no basis for holding [them] liable for the alleged antitrust violations of their subsidiary'") (quoting *Gemco Latinoamerica, Inc.* v. *Seiko Time Corp.* 685 F. Supp. 400, 403 (S.D.N.Y. 1988)); *see also Wady* v. *Provident Life & Accident Ins. Co. of Am.*, 216 F. Supp. 2d 1060, 1068 (C.D. Cal. 2002) (refusing to "pierc[e] the corporate veil on an alter ego theory in order to hold a parent corporation liable for the acts or omissions of its subsidiary"). This rule applies with even greater force here where TUS is not even a subsidiary of CPT.

In short, the direct-purchaser plaintiffs have completely failed to allege any specific facts as to TUS, including any wrongful conduct by TUS, any knowledge by TUS of the alleged conspiracy, and any participation in the conspiracy by TUS. Nor have the direct-purchaser plaintiffs advanced an alter-ego theory whereby the conduct of a corporate entity alleged to be related to TUS (especially not CPT) could be attributed to TUS and vice versa, as the complaint is devoid of any allegations that would provide a basis to disregard TUS's corporate form. Because their complaint lacks allegations of wrongdoing by TUS in its own right or vicariously, the direct-purchaser plaintiffs' claim against TUS fails, and this Court should dismiss it pursuant to Rule 12(b)(6).

## 2.   The Indirect-Purchaser Plaintiffs Fail to Allege that TUS Took Part in an Antitrust Conspiracy.

Likewise, the indirect-purchaser plaintiffs have failed to allege an antitrust conspiracy with respect to TUS, TUS's involvement in the alleged conspiracy, or TUS's liability for the alleged conduct of other defendants. Thus, Plaintiffs have failed to state a claim against TUS upon which relief can be granted. *See, e.g.*, *Twombly*, 127 S. Ct. at 1964-65, 1974; *Kendall*, 518 F.3d at 1048.

Only a single paragraph in Plaintiffs' 92-page complaint even comes close to alleging actual

16

conduct by TUS, and even that paragraph fails to allege any active participation on TUS's part in the alleged conspiracy. Plaintiffs assert that both TUS and TT "were represented" at an unspecified number of up to 100 "meetings" spanning the years 1995 through 2006 and that TUS and TT "were a party to the [unspecified] agreements entered" thereat. (IP-CAC ¶¶ 173-74.) But the complaint is devoid of allegations as to who "represented" TUS or TT and how, and how TUS and TT engaged in conduct whereby they became parties to the alleged agreements. (*See id.*) Similar allegations in *Twombly* were deemed insufficient by the Supreme Court to provide fair notice under Federal Rule of Civil Procedure 8:

> Apart from identifying a 7-year span in which the § 1 violations were supposed to have occurred . . . , the pleadings mentioned no specific time, place, or person involved in the alleged conspiracies. . . . [T]he complaint here furnishes no clue as to which of the four [defendants] (much less which of their employees) supposedly agreed, or when and where the illicit agreement took place. . . . [A] defendant seeking to respond to plaintiffs' conclusory allegations in the § 1 context would have little idea where to begin.

550 U.S. at 565 n.10.

Tellingly, the indirect-purchaser plaintiffs do *not* allege that any TUS (or TT) officer, director, executive, or other employee attended any meeting whatsoever, let alone name such an individual or individuals. Instead, they allege that TUS and TT, collectively and passively, "were represented" at meetings. (IP-CAC ¶ 174.) Whereas these plaintiffs allege that several other defendants' "highest ranking executives" attended the alleged meetings, Plaintiffs make no such claims about TUS's executives. (*See id.* at ¶¶ 166, 168, 172, 173, 175, 185, 186.) Furthermore, the indirect-purchaser plaintiffs fail to allege that the unnamed others who allegedly "represented" TUS and TT at the meetings were authorized by those companies to do so or to explain when, how, or by whom such authorization occurred. *See Kendall*, 518 F.3d at 1048.

The indirect-purchaser plaintiffs follow the bare allegation of TUS's "represent[ation]" at meetings by stating that TUS and TT (again, collectively) played "a significant role" in the alleged conspiracy "to the extent [TUS] and [TT]" (presumably, collectively) sold CRT products to direct purchasers, because such sales were motivated by a "wish[] to ensure that the prices for CRT

17

Products paid by the direct purchasers would not undercut the pricing agreements [that were] reached" at the alleged meetings. (*Id.* at ¶ 174.) But this circular statement adds nothing to the conclusory allegation that precedes it. Engaging in "direct sales" after alleged meetings attended by persons other than TUS can hardly be construed as wrongdoing by TUS, but that is the sole basis on which TUS's alleged "role" in any conspiracy rests. Plaintiffs offer no basis whatsoever to support a reasonable inference that any sales to purchasers by TUS (individually or collectively with TT) were executed in accordance with "pricing agreements," much less that they were motivated by TUS's "wish[] to ensure" those agreements prevailed. (*See id.*)

Having offered against TUS a textbook example of a nonspecific and conclusory allegation that is insufficient under Rules 8(a) and 12 as well as under *Twombly*, the indirect-purchaser plaintiffs would have this Court rely on equally scanty allegations of TUS's affiliation with TT or other entities. (*See* IP-CAC ¶ 95 (mentioning, in a parenthetical, that TUS is an affiliate or subsidiary of TT); ¶¶ 173-74.) First, these meager allegations are insufficient as to TUS because, as in the direct-purchaser complaint, they contain no allegations that CPT controls TUS. Second, such lumping together of TUS and TT, without alleging an alter ego/control relationship, is a futile attempt to circumvent the pleading standard, which requires that specific allegations against TUS. *See Brennan*, 369 F. Supp. 2d at 1136-37. Similar to the direct-purchaser plaintiffs, the indirect-purchaser plaintiffs cannot satisfy their pleading obligations with respect to TUS by relying on conclusory and insufficient allegations of control with respect to TT and CPT. *See, e.g., Bestfoods*, 524 U.S. at 61; *Sherman*, 601 F.2d at 441.

In short, the indirect-purchaser plaintiffs have completely failed to set forth any specific allegations as to TUS, including any conduct by TUS, and any knowledge of the alleged conspiracy by TUS and participation in it by TUS. Nor have these plaintiffs advanced an alter-ego theory whereby the conduct of a corporate entity allegedly related to TUS, especially CPT, could be attributed to TUS or vice versa, as the complaint contains no allegations that would provide any basis for piercing the corporate veil with respect to TUS.

Because the direct- and indirect-purchasers' complaints lack allegations of wrongdoing by

18

1   TUS in its own right or of an alter-ego theory, both claims against TUS fail and should be dismissed

2   pursuant to Rule 12(b)(6).

3   **V.      CONCLUSION**

4           For the reasons stated above, the direct-purchaser plaintiffs' claim against TUS should be

5   dismissed because this Court lacks subject matter jurisdiction over plaintiffs' claim against TUS in

6   this action, or, alternatively, because the complaint fails to state a claim upon which relief can be

7   granted.  The indirect-purchaser plaintiffs' claim with respect to TUS should be dismissed because

8   the complaint fails to state a claim upon which relief can be granted.

9

10                                                              BAKER & McKENZIE LLP

    Dated:  May 18, 2009

11

12                                                      By:    /s/ Patrick J. Ahern
                                                               Patrick J. Ahern
13                                                             Attorneys for Defendant
                                                               TATUNG COMPANY OF AMERICA
14

15  Bruce H. Jackson (State Bar No. 98118)
       (bruce.h.jackson@bakernet.com)
16  Robert W. Tarun (State Bar No. 64881)
       (robert.w.tarun@bakernet.com)
17  **BAKER & McKENZIE LLP**
    Two Embarcadero Center, 11th Floor
    San Francisco, CA  94111-3802
18  Telephone: +1 415 576 3000
    Facsimile:  +1 415 576 3099
19

20  Of Counsel:

21  Patrick J. Ahern
       (patrick.j.ahern@bakernet.com)
22  Roxane C. Busey
       (roxane.c.busey@bakernet.com)
23  Karen Sewell
       (karen.sewell@bakernet.com)
24  **BAKER & McKENZIE LLP**
    One Prudential Plaza
25  130 East Randolph Drive
    Chicago, IL  60601
26  Telephone: +1 312 861 8000
    Facsimile:  +1 312 861 2899
27

28  Attorneys for Defendant
    TATUNG COMPANY OF AMERICA

Baker & McKenzie LLP
San Francisco

19

CASE NO 07-5944-SC                          TATUNG COMPANY OF AMERICA'S NOTICE OF MOTION & MOTION TO
                                            DISMISS  DIRECT- AND INDIRECT-PURCHASER PLAINTIFFS' COMPLAINTS

# Exhibit 1

1    Bruce H. Jackson (State Bar No. 98118)
     (bruce.h.jackson@bakernet.com)
2    Robert W. Tarun (State Bar No. 64881)
     (robert.w.tarun@bakernet.com)
3    **BAKER & MCKENZIE LLP**
     Two Embarcadero Center, 11th Floor
4    San Francisco, CA 94111-3802
     Telephone: +1 415 576 3000
5    Facsimile: +1 415 576 3099

6    Patrick J. Ahern (*pro hac vice*)
     (patrick.j.ahern@bakernet.com)
7    Roxane C. Busey (*pro hac vice*)
     (roxane.c.busey@bakernet.com)
8    Karen Sewell (*pro hac vice*)
     (karen.sewell@bakernet.com)
9    **BAKER & MCKENZIE LLP**
     130 E. Randolph Dr., Suite 3500
10   Chicago, IL 60601
     Telephone: +1 312 861 8000

11   Attorneys for Defendant
12   *Tatung Company of America, Inc.*

13            **UNITED STATES DISTRICT COURT**

14           **NORTHERN DISTRICT OF CALIFORNIA**

15             **SAN FRANCISCO DIVISION**

| | |
|---|---|
| 16   IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No: 07-5944-SC |
| 17 | MDL No. 1917 |
| 18   This Document Relates To: | |
| 19 | **DECLARATION OF EDWARD CHEN IN SUPPORT OF TATUNG** |
| 20   ALL ACTIONS | **COMPANY OF AMERICA'S MOTION TO DISMISS THE DIRECT AND** |
| 21 | **INDIRECT PURCHASER PLAINTIFFS' CONSOLIDATED** |
| 22 | **AMENDED COMPLAINTS** |

23

24

25

26

27

28

Edward Chen, being duly sworn, declares as follows:

1.   I am the Executive Vice President of Tatung Company of America ("TUS").   I have been employed by TUS for over 20 years.   I make this affidavit on the basis of my personal knowledge, and, if called upon to testify to the matters contained herein, I could and would testify truthfully to them.   I submit this affidavit in support of TUS's motion to dismiss the complaints in the direct and indirect purchaser actions, *In re Cathode Ray Tube (CRT) Antitrust Litigation*, Master File No. 07-5944-SC, MDL No. 1917 (the "Complaints").   The time period for the following statements is the Class Period alleged in the Complaints.

2.   TUS does not now nor has it ever manufactured cathode ray tubes ("CRT").

3.   TUS purchased CRTs from many different manufacturers, including some of the other defendants in this case, and some companies that are not defendants in this case.

4.   TUS did not receive any special pricing on these CRT purchases from Chunghwa Picture Tubes Ltd.

5.   TUS engaged in arms-length negotiations with all of its CRT suppliers, including Chunghwa Picture Tubes Ltd., and based its purchasing decisions on functionality and market price.

6.   TUS also purchased finished products containing CRTs.   TUS did not purchase such finished products from Chunghwa Picture Tubes Ltd., and in fact purchased such finished products from Tatung Company of Taiwan and other manufacturers, including some of the other defendants in this case, and some companies that are not defendants in this case.

7.   TUS did not receive any special pricing on these finished product purchases from Tatung Company of Taiwan.

---

1

8.   TUS engaged in arms-length negotiations with all of its CRT finished product suppliers, including Tatung Company of Taiwan, and based its purchasing decisions on functionality and market price.

9.   Neither Tatung Company of Taiwan, Chunghwa Picture Tubes Ltd., nor any other defendant or supplier instructed TUS regarding the price at which TUS sold its products, and did not otherwise have any input into the price charged by TUS to its customers.

10.   To the extent that TUS was a purchaser of finished products containing CRTs, then those customers that purchased those finished products from TUS were indirect purchasers of those finished products.

11.   To the extent that TUS purchased CRTs, TUS manufactured finished products using those CRTs.  To the extent that TUS purchased CRTs and manufactured finished products using those CRTs, then those customers that purchased finished products containing CRTs from TUS were indirect purchasers of the CRTs contained in those finished products.

12.   To the extent that TUS purchased finished products containing CRTs, TUS was not the direct purchaser of the CRTs contained in those finished products.  Instead, the manufacturers of the finished products were either the direct purchasers of the CRTs contained in those finished products, or indirect purchasers themselves.

13.   TUS also purchased and resold a limited number of CRTs to its customers for repair and replacement of TUS products.

2

1    I declare under penalty of perjury under the laws of the United States of America that the

2    forgoing is true and correct.

3

4    Executed in Long Beach, California on May ___18___, 2009.

5

6

7                                                            Edward Chen

8

9

10    CHIDMS1/2704538.3

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                                                3

28                                              CASE NO 07-5944-SC
                      DECL. OF EDWARD CHEN IN SUPPORT OF TATUNG'S MOTION TO DISMISS

# Exhibit 2

Bruce H. Jackson (State Bar No. 98118)
  (bruce.h.jackson@bakernet.com)
Robert W. Tarun (State Bar No. 64881)
  (robert.w.tarun@bakernet.com)
**BAKER & MCKENZIE LLP**
Two Embarcadero Center, 11th Floor
San Francisco, CA  94111-3802
Telephone: +1 415 576 3000
Facsimile:  +1 415 576 3099

Patrick J. Ahern (*pro hac vice*)
  (patrick.j.ahern@bakernet.com)
Roxane C. Busey (*pro hac vice*)
  (roxane.c.busey@bakernet.com)
Karen Sewell (*pro hac vice*)
  (karen.sewell@bakernet.com)
**BAKER & MCKENZIE LLP**
130 E. Randolph Dr., Suite 3500
Chicago, IL 60601
Telephone: +1 312 861 8000

Attorneys for Defendant
*Tatung Company of America, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No: 07-5944-SC <br><br> MDL No. 1917 |
| This Document Relates To: <br><br> ALL ACTIONS | **DECLARATION OF MICHAEL LAI IN SUPPORT OF TATUNG COMPANY OF AMERICA'S MOTION TO DISMISS THE DIRECT AND INDIRECT PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINTS** |

Michael Lai, being duly sworn, declares as follows:

1.   I am the Chief Financial Officer of Tatung Company of America ("TUS").  I have been employed by TUS for over 25 years.  I make this affidavit on the basis of my personal knowledge, and, if called upon to testify to the matters contained herein, I could and would testify truthfully to them.  I submit this affidavit in support of TUS's motion to dismiss the Complaints in the direct purchaser and indirect purchaser actions, *In re Cathode Ray Tube (CRT) Antitrust Litigation*, Master File No. 07-5944-SC, MDL No. 1917.

2.   TT does not now own nor has ever owned 100% of TUS.  From the founding of TUS, TT has owned only 50% of TUS.  CPT does not now own nor has ever owned any shares in TUS.

3.   TT does not now own nor has ever owned 100% of CPT.  Currently, TT has owns only approximately 30% of CPT.

4.   With respect to TUS's Board of Directors, there are six members: two from TT, two from TUS's management, and two independent directors, neither of whom have any ownership in TUS. In addition, the two independent directors are not officers or directors of TT or CPT.

5.   Neither CPT nor TT play or have played a role in TUS's management or operations.  TUS makes its own independent business decisions and planning.  TUS's annual budget is created within TUS, submitted to me and TUS's CEO, discussed with members of TUS's management, and then finalized and approved by TUS's CEO.

6.   Neither CPT nor TT have ever made any loans, guarantees or other funding to TUS.  TUS operates independently to secure its own financing from banks and commercial lenders.

1

2    I declare under penalty of perjury under the laws of the United States of America that the

3    forgoing is true and correct. Executed in Long Beach, California, on May _18th_, 2009.

4

5                                    MICHAEL LAI

6  CHIDMS1/2704549.1

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

**CERTIFICATE OF SERVICE**

    The undersigned counsel hereby certifies that a true and correct copy of the foregoing document was served upon the parties and counsel of record, through the Court's ECF system, on May 18, 2009.


                                            /s/ Patrick J. Ahern
                                      Patrick J. Ahern
                                      One of the Attorneys for Defendant
                                        Tatung Company of America

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

CASE NO 07-5944-SC

TATUNG COMPANY OF AMERICA'S NOTICE OF MOTION &
MOTION TO DISMISS DIRECT AND INDIRECT PURCHASERS' COMPLAINTS