KENT M. ROGER, State Bar No. 95987
THOMAS R. GREEN, State Bar No. 203480
MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Street Tower
San Francisco, CA  94105-1126
Tel:  415.442.1000
Fax:  415.442.1001
E-mail:  kroger@morganlewis.com
        tgreen@morganlewis.com

Attorneys for Defendants
HITACHI, LTD., HITACHI AMERICA, LTD.,
HITACHI ASIA, LTD., HITACHI DISPLAYS,
LTD., and HITACHI ELECTRONIC DEVICES
(USA), INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE:  CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Case No. C07-5944 SC |
| | MDL No. 1917 |
| This Document Relates To: | **HITACHI DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THE DIRECT-PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT AND THE INDIRECT-PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT** |
| ALL ACTIONS | |
| | Date:    August 4, 2009 |
| | Time:    9:00 am |
| | Place:   Two Embarcadero Center, Suite 1500 |
| | Judge:   Hon. Charles Legge (Ret.) |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/21117493.1

C07-5944 SC   MDL No. 1917

HITACHI DEFENDANTS' NOTICE OF MOTION & MOTION TO DISMISS
DIRECT & INDIRECT PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINTS

# TABLE OF CONTENTS

Page

NOTICE OF MOTION ...................................................................................................... 1

STATEMENT OF ISSUES TO BE DECIDED .............................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ................................................. 2

I.   INTRODUCTION ................................................................................... 2

II.  STATEMENT OF FACTS ..................................................................... 3

    A.   The Hitachi Defendants ............................................................ 3

       1.   Hitachi, Ltd. ................................................................ 4

       2.   Hitachi Displays, Ltd. ("HDP") .............................. 4

       3.   Hitachi America, Ltd.  ("HAL") ............................. 5

       4.   Hitachi Electronic Devices (USA), Inc. ("HED(US)") .................. 5

       5.   Hitachi Asia, Ltd. ("HAS") ..................................... 5

    B.   Facts Plaintiffs Fail to Allege Against Any of the Hitachi Defendants ............... 5

    C.   Allegations Relating to the Fictional "Hitachi" ...................... 6

       1.   The Hitachi Defendants Are Not Alleged to Have Participated in a Single Improper Meeting or Communication After 2001. ...................... 6

       2.   Hitachi Defendants Had a Small and Rapidly Decreasing Share of the CRT Market. ............. 7

       3.   Hitachi Defendants Are Not Alleged to Be Part of the Pre-Conspiracy Market. ................. 7

       4.   The Hitachi Defendants Are Alleged to Have Attended Very Few Meetings. ............ 7

       5.   Plaintiffs Improperly Attribute Allegations Against Non-Hitachi Defendant Shenzhen SEG to the Hitachi Defendants. ............. 8

       6.   Hitachi Defendants' Alleged Joint Venture and Trade Association Memberships Are Innocuous and Not Even Alleged to Relate to CRT. ............. 9

III. ARGUMENT ........................................................................................... 9

    A.   Plaintiffs Fail to Allege Facts Sufficient to State a Plausible Conspiracy Against Any of the Hitachi Defendants ............ 9

       1.   Plaintiffs Improperly Lump the Hitachi Defendants Into a Single, Non-Existent Entity, "Hitachi." ................. 10

       2.   Plaintiffs' Allegations Against the Non-Existent "Hitachi" are Conclusory and Insufficient to State a Claim. ............. 12

MORGAN, LEWIS & BOCKIUS LLP ATTORNEYS AT LAW SAN FRANCISCO

HITACHI DEFENDANTS' NOTICE OF MOTION & MOTION TO DISMISS DIRECT & INDIRECT PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINTS

**TABLE OF CONTENTS**
(continued)

Page

3. The Specific Allegations Against the Hitachi Defendants Are Irrelevant and Inconsistent with Plaintiffs' Conclusion That the Hitachi Defendants Participated in the Alleged Conspiracy. .................................................................................. 13

(1) Plaintiffs' Admissions About the Hitachi Defendants' Rapidly Decreasing Market Share Contradict Their Allegation that the Hitachi Defendants Entered into a Conspiracy in Which the Participants Allocated Market Share and Customers. ........ 13

(2) Hitachi, Ltd.'s Alleged Participation in a Joint Venture to Sell DVD Drives Is Irrelevant to the CRT Market. .............................................................................. 15

(3) The Hitachi Defendants' Alleged Membership in Trade Associations Is Irrelevant. ........................................ 15

(4) Alleged Government Investigations Are Irrelevant to this Case. ....................................................................... 15

4. Plaintiffs Fail to Support Their Conclusory Allegations of Improper Agreements with Any Allegations of Parallel Conduct by Any of the Hitachi Defendants. ................................. 16

B. Plaintiffs' Claims Must Be Dismissed Because They Are Outside the Statute of Limitations. ................................................................... 17

1. The Statute of Limitations Has Expired As to All Claims Against the Hitachi Defendants. .................................................. 17

2. Plaintiffs Fail to Plead the Necessary Facts Required to Plead Fraudulent Concealment Against the Hitachi Defendants. ................................................................................. 18

IV. CONCLUSION ................................................................................................... 19

DB2/21117493.1

ii

C07-5944 SC   MDL No. 1917

HITACHI DEFENDANTS' NOTICE OF MOTION & MOTION TO DISMISS
DIRECT & INDIRECT PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINTS

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

<u>**Cases**</u>

4

*Amron v. Morgan Stanley Inv. Advisors Inc.*,
5
   464 F.3d 338 (2d Cir. 2006)..................................................................................... 13

*Ashcroft v. Iqbal*,
6
   556 U.S. ___, No. 07-1015 (U.S. May 18, 2009) ........................................... *passim*

7
*Barker v. Am. Mobil Power Corp.*,
   64 F.3d 1397 (9th Cir. 1995)................................................................................... 18

8
*Bell Atlantic Corp. v. Twombly*,
9
   550 U.S. 544 (2007)............................................................................................ *passim*

10
*Conmar Corp. v. Mitsui & Co. (U.S.A.), Inc.*,
   858 F.2d 499 (9th Cir. 1988).................................................................................. 19

11
*Greenwald v. Manko*,
12
   840 F. Supp. 198 (E.D.N.Y. 1993) ....................................................................... 19

13
*In re Citric Acid Litig.*,
   996 F. Supp. 951(N.D. Cal. 1998) ......................................................................... 14

14
*In re Citric Acid Litig.*,
15
   191 F.3d 1090 (9th Cir. 1999)........................................................................... 14, 15

16
*In re Elevator Antitrust Litig.*,
   502 F.3d 47 (2d Cir. 2007)...................................................................................... 13

17
*In re Graphics Processing Units Antitrust Litig.*,
18
   527 F. Supp. 2d 1011 (N.D. Cal. 2007) ............................................................ 15, 16

19
*In re Late Fee and Over-Limit Fee Litig.*,
   528 F. Supp. 2d 953 (N.D. Cal. 2007) .............................................................. 13, 15

20
*In re Sagent Tech., Inc., Derivative Litig.*,
21
   278 F. Supp. 2d 1079 (N.D. Cal. 2003) ................................................................. 10

22
*In re TFT-LCD Antitrust Litig.*,
   586 F. Supp. 2d 1109 (N.D. Cal. 2008) ................................................................. 10

23
*In re Urethane Antitrust Litig.*,
24
   235 F.R.D. 507 (D. Kan. 2006).............................................................................. 19

25
*Int'l Norcent Technology v. Koninklijke Philips Electronics N.V.*, No. 07-00043,
   2007 WL 4976364, at *10 (C.D. Cal. Oct. 29, 2007)............................................ 16

26
*Jung v. Assoc. of Am. Med. Colleges*,
27
   300 F. Supp. 2d 119 (D.D.C. 2004) ...................................................................... 10

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

HITACHI DEFENDANTS' NOTICE OF MOTION & MOTION TO DISMISS
DIRECT & INDIRECT PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINTS

1

**TABLE OF AUTHORITIES**
(continued)

2

Page(s)

3   *Kendall v. Visa U.S.A., Inc.*,
        518 F.3d 1042 (9th Cir. 2008)..................................................................... 12, 17, 18
4

    *Lippe v. Bairnco Corp.*,
5       225 B.R. 846 (S.D.N.Y. 1998).......................................................................... 11

6   *Metz v. Union Bank*,
        416 F. Supp. 2d 568 (N.D. Ohio 2006).............................................................. 19
7

    *Morton's Market, Inc. v. Gustafson's Dairy,
8       Inc.*,
        198 F.3d 823 (11th Cir. 1999)........................................................................... 18
9

    *Sprewell v. Golden State Warriors*,
10      266 F.3d 979 (9th Cir. 2001).............................................................................. 14

11  *Steckman v. Hart Brewing, Inc.*,
        143 F.3d 1293 (9th Cir. 1998)........................................................................... 14
12

    *United States v. Bestfoods*,
13      524 U.S. 51 (1998).............................................................................................. 11

14  <u>**Regulations**</u>

15  Fed. R. Civ. Proc. 8(a) .......................................................................................... 1

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

HITACHI DEFENDANTS' NOTICE OF MOTION & MOTION TO DISMISS
DIRECT & INDIRECT PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINTS

1

### NOTICE OF MOTION

2
PLEASE TAKE NOTICE that on August 4, 2009, at 9:00 a.m., or as soon thereafter as the

3
matter may be heard, at the San Francisco Resolution Center of JAMS at Two Embarcadero

4
Center, Suite 1500, San Francisco, CA 94111, before the Honorable Charles Legge (Ret.),

5
defendants Hitachi, Ltd., Hitachi Displays, Ltd., Hitachi Asia, Ltd., Hitachi America, Ltd. and

6
Hitachi Electronic Devices (USA), Inc. (collectively "the Hitachi defendants") will and hereby do

7
move the Court, pursuant to Federal Rule of Civil Procedure 12(b)(6), for an Order dismissing the

8
Direct Purchaser Plaintiffs' Consolidated Amended Complaint ("DP-CAC") and the Indirect

9
Purchaser Plaintiffs' Consolidated Amended Complaint ("IP-CAC") (collectively "Plaintiffs'

10
complaints"). This motion is based upon this Notice of Motion, the Memorandum of Points and

11
Authorities, the Joint Defense Motions to Dismiss the DP-CAC and the IP-CAC, which are

12
incorporated into this motion by reference, all other papers filed in connection with such motions,

13
including all Declarations and Requests for Judicial Notice, the complete files in this consolidated

14
action, argument of counsel, and other further matters as this Court may consider.

15
This motion is filed in accordance with Judge Legge's April 24, 2009 Order Re: Briefing

16
and Hearing of Motions to Dismiss, regarding issues individual to the Hitachi defendants. The

17
Hitachi defendants join in and incorporate by reference, Defendants' Joint Motion to Dismiss

18
Direct Purchaser Plaintiffs' Consolidated Amended Complaint ("Joint Direct Purchaser Motion")

19
and Defendants' Joint Motion to Dismiss Indirect Purchaser Plaintiffs' Consolidated Amended

20
Complaint ("Joint Indirect Purchaser Motion") (collectively "Joint Defense Motions"). The

21
Hitachi defendants submit this separate motion to address factual allegations particular to the

22
Hitachi defendants and will avoid repetitive arguments.

23

### STATEMENT OF ISSUES TO BE DECIDED

24
Whether the DP-CAC and IP-CAC should each be dismissed as to the Hitachi defendants

25
for failure to allege a plausible conspiracy claim against each of them pursuant to the

26
requirements of Federal Rule of Civil Procedure 8(a) ("Rule 8(a)") and *Bell Atlantic Corp. v.*

27
*Twombly*, 550 U.S. 544 (2007).

28

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/21117493.1     1     C07-5944 SC   MDL No. 1917
HITACHI DEFENDANTS' NOTICE OF MOTION & MOTION TO DISMISS
DIRECT & INDIRECT PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINTS

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

In filing consolidated complaints that leave each of the Hitachi defendants clueless as to what *each* did to warrant being named in this action, the Direct Purchaser Plaintiffs and Indirect Purchaser Plaintiffs (collectively "Plaintiffs") disregard the pleading standards required by *Bell Atlantic v. Twombly*.[1]  The complaints contain none of the requisite specific allegations of anticompetitive conduct or agreements by any of the Hitachi defendants.  Rather, the complaints rely exclusively on vague, conclusory allegations about a fictional entity Plaintiffs have labeled "Hitachi," purportedly a collection of the five Hitachi defendants and newly named defendant Shenzhen SEG Hitachi Color Display Devices, Ltd. ("Shenzhen SEG"), a Chinese company which is not even a Hitachi entity.  Thus, when Plaintiffs allege "Hitachi" did something, none of the Hitachi defendants know whether the allegation relates to it, or even if it relates to *any* Hitachi defendant, given Plaintiffs' improper lumping of Shenzhen SEG with the five Hitachi defendants.

Taken in their totality, all we know about "Hitachi" from Plaintiffs' allegations is that "it" includes a non-Hitachi entity, that "it" last allegedly attended an improper meeting with competitors in 2001 and that "its" market share of the CRT industry decreased rapidly over the life of the Class Period, during the very time the fictional combination was allegedly agreeing to allocate market share and customers with its competitors.

Without any specific allegations against any of the separately named individual Hitachi defendants, not one of the five Hitachi defendants named by Plaintiffs has any "idea where to begin [to respond]," as required under *Twombly*.  *See Twombly*, 550 U.S. at 565 n.10.  But it is not just the absence of allegations against the Hitachi defendants that warrants dismissal.  The scant allegations Plaintiffs do make against the Hitachi defendants, and even the fictional "Hitachi," contradict Plaintiffs' conclusory allegations that the Hitachi defendants participated in the alleged conspiracy.

- Plaintiffs allege that the conspirators agreed to allocate market share, but Plaintiffs

---

[1] This motion incorporates by reference the Joint Defense Motions to Dismiss Plaintiffs' Consolidated Complaints.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/21117493.1                                        2                        C07-5944 SC   MDL No. 1917
HITACHI DEFENDANTS' NOTICE OF MOTION & MOTION TO DISMISS
DIRECT & INDIRECT PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINTS

1    admit the Hitachi defendants' collective market share shrunk from more than 20% at

2    the outset of the Class Period to less than 5 to 10% only six years later.

3    • Plaintiffs allege that "Hitachi" "never effectively withdrew from the conspiracy," at

4    the same time they allege, in conclusory fashion, that "Hitachi" only participated in

5    several improper communications between 1995 and 2001.

6    • Plaintiffs allege the meetings "Hitachi" attended took place in China and Taiwan, but

7    only Shenzhen SEG, not a Hitachi entity, is located in either location

8    The Court should dismiss Plaintiffs' complaints as to each of the Hitachi defendants.

9    Moreover, if Plaintiffs are granted leave to amend, they should be required to disaggregate their

10   allegations against the Hitachi defendants and plead precisely what each Hitachi defendant did to

11   enter, further and conceal the alleged conspiracy.

12   **II.    STATEMENT OF FACTS**

13   **A.    THE HITACHI DEFENDANTS**

14   Both the Indirect Plaintiffs and Direct Plaintiffs lump five separately organized and

15   incorporated entities spread around the globe into a single fictional collective they call "Hitachi."

16   DP-CAC ¶ 36; IP-CAC ¶ 93.  When they then proceed to make an allegation about the fictional

17   "Hitachi," Plaintiffs do not identify to which Hitachi defendant they refer, leaving the Hitachi

18   defendants with no way of knowing whether or not a given allegation relates to it.  Compounding

19   this vice, Plaintiffs have also lumped a sixth defendant into the "Hitachi" collective, Shenzhen

20   SEG Hitachi Color Display Devices, Ltd. ("Shenzhen SEG"), which *is not even related to any*

21   *Hitachi defendant*.  DP-CAC ¶¶ 35-36; IP-CAC ¶¶ 92-93.  Contrary to Plaintiffs' allegations,

22   neither Hitachi Displays, Ltd. ("HDP"), nor any other Hitachi entity, has ever owned and

23   controlled Shenzhen SEG.[2]  HDP formerly owned a 25% minority interest in Shenzhen SEG, a

24   ───────────────
     [2] Counsel for the Hitachi defendants and Plaintiffs' counsel have met and conferred regarding
     Plaintiffs' inaccurate allegations regarding Shenzhen SEG.  Plaintiffs' counsel stated that they

25   would prefer this issue to be addressed and considered by the Court at the motion to dismiss stage
     than to amend the consolidated complaints now prior to any hearings on the many motions to

26   dismiss being filed.  Plaintiffs' counsel has agreed that they will not object to the Hitachi
     defendants introducing evidence at the motion to dismiss stage to demonstrate that neither HDP

27   nor any other Hitachi entity has any ownership or control over Shenzhen SEG.  ***See* Declaration
     of Thomas R. Green in Support of the Hitachi Defendants' Motion to Dismiss the Direct-**

28   **Purchaser Plaintiffs' Consolidated Amended Complaint and the Indirect-Purchaser**

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/21117493.1    3    C07-5944 SC   MDL No. 1917
─────────────────────────────────────────
HITACHI DEFENDANTS' NOTICE OF MOTION & MOTION TO DISMISS
DIRECT & INDIRECT PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINTS

1  joint venture with Shenzhen-CEC Color Display Devices Co., Ltd.  *See* Green Decl. at ¶ 2, Exhs.

2  1-2.  HDP sold its minority interest in Shenzhen SEG on November 8, 2007, and neither HDP,

3  nor any other Hitachi entity, has had any interest in Shenzhen SEG since that time.  *Id*.  As a

4  result, when Plaintiffs make an allegation against the "Hitachi" collective, the Hitachi defendants

5  not only do not know to *which* of them the allegation pertains, they cannot even ascertain *if any*

6  Hitachi defendant is implicated since Plaintiffs have grouped the five Hitachi defendants with a

7  company having no relation to any of them.

8         The only defendant-specific allegations Plaintiffs make as to the five Hitachi defendants

9  bringing this motion are the following:[3]

### 1.   HITACHI, LTD.

11        Defendant Hitachi, Ltd. is a Japanese company located in Tokyo, Japan.  DP-CAC ¶ 30;

12  IP-CAC ¶ 87.  The DP-CAC alleges that Hitachi, Ltd. "manufactured, sold, and distributed CRT

13  Products either directly or through its subsidiaries or affiliates throughout the United States."  *Id*.

14  Plaintiffs admit that in "2002, all the departments of planning, development, design,

15  manufacturing and sales concerned with the display business of Hitachi, Ltd. were spun off to

16  create a separate company called Hitachi Displays."  DP-CAC ¶ 31; IP-CAC ¶ 88.

17        Additionally, the Indirect Plaintiffs allege that Hitachi, Ltd. "entered into a joint venture in

18  2000 for the manufacture, sale and distribution of optical storage products such as DVD drives,"

19  *not a CRT product*.  This irrelevant allegation is noteworthy because it is the only allegation

20  either the Direct or Indirect Plaintiffs make against *any* individual Hitachi defendant outside of

21  the single paragraph Plaintiffs plead to introduce each Hitachi defendant and its place of business.

### 2.   HITACHI DISPLAYS, LTD. ("HDP")

23        Defendant HDP is a Japanese company located in Tokyo, Japan.  HDP was formed in

24  2002 to take over all "design, manufacturing and sales concerned with the display business of

25  Hitachi, Ltd."  DP-CAC ¶31; IP-CAC ¶ 88.  The DP-CAC alleges that HDP "sold and distributed

26

27  **Plaintiffs' Consolidated Amended Complaint ("Green Decl.") at ¶¶ 4-5, Ex. 3.**

28
[3] The Hitachi defendants' counsel, Morgan, Lewis & Bockius, does not represent Shenzhen SEG and does not anticipate ever doing so.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/21117493.1                    4                    C07-5944 SC   MDL No. 1917
HITACHI DEFENDANTS' NOTICE OF MOTION & MOTION TO DISMISS
DIRECT & INDIRECT PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINTS

1   CRT Products either directly or through its subsidiaries or affiliates throughout the United

2   States."  DP-CAC ¶ 31.

3          **3.**      **HITACHI AMERICA, LTD.  ("HAL")**

4        Defendant Hitachi America, Ltd. ("HAL") is a New York company Plaintiffs allege is

5   wholly-owned and controlled by HTC.  DP-CAC ¶ 32; IP-CAC ¶ 90.  The DP-CAC alleges that

6   HAL "sold and distributed CRT Products . . . throughout the United States."  DP-CAC ¶ 32.

7          **4.**      **HITACHI ELECTRONIC DEVICES (USA), INC. ("HED(US)")**

8        Defendant Hitachi Electronic Devices (USA), Inc. ("HED(US)") is a Delaware

9   corporation.  DP-CAC ¶ 34; IP-CAC ¶ 89.  The DP-CAC alleges that HED(US) "manufactured,

10  sold, and distributed CRT Products either directly or through its subsidiaries or affiliates

11  throughout the United States."  DP-CAC ¶ 34.

12         **5.**      **HITACHI ASIA, LTD. ("HAS")**

13       Defendant Hitachi Asia, Ltd. ("HAS") is a Singaporean company located in Singapore.

14  DP-CAC ¶ 33; IP-CAC 91.  The DP-CAC alleges that HAS "manufactured, sold and distributed

15  CRT Products either directly or through its subsidiaries or affiliates throughout the United

16  States."  DP-CAC ¶ 33.

17      **B.**    **FACTS PLAINTIFFS FAIL TO ALLEGE AGAINST ANY OF THE HITACHI DEFENDANTS**

18  
19       Plaintiffs' consolidated complaints are better characterized by what they do *not* allege,

20  than by the facts they do allege against the Hitachi defendants, either individually, as required to

21  provide basic notice, or even as to the fictional "Hitachi" collective.  Nowhere in the 48 page DP-

    CAC or the 92 page IP-CAC do Plaintiffs allege:

22  
23     &bull;   which Hitachi defendant(s) attended alleged improper meetings

24     &bull;   which Hitachi employee(s) attended alleged improper meetings

25     &bull;   the date, the month or even the year of alleged improper meetings allegedly attended

          by the fictional "Hitachi"

26  
27     &bull;   the city, state or region in which alleged improper meetings took place[4]

    ─────────────────────

28  [4] The DP-CAC alleges only that the meetings allegedly attended by the fictional "Hitachi" took
    place at undisclosed locations in Taiwan and China.  DP-CAC ¶ 157.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/21117493.1               5               C07-5944 SC   MDL No. 1917
HITACHI DEFENDANTS' NOTICE OF MOTION & MOTION TO DISMISS
DIRECT & INDIRECT PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINTS

- the other defendant(s) attending the alleged meetings attended by the fictional "Hitachi"

- the term(s) of any agreement allegedly entered into by the fictional "Hitachi"

- the product(s) that were the subject of any alleged agreement

- a single statement made by any Hitachi defendant in furtherance of, or to conceal, the alleged conspiracy

- a single act by any Hitachi defendant in furtherance of, or to conceal, the alleged conspiracy

- the price charged by any Hitachi defendant for any product

- any price change on any product sold by any Hitachi defendant

- any analysis of how the Hitachi defendants' prices on any products compared to those of its alleged competitors

- any production level or production capacity information relating to any Hitachi defendant

- any market or customer any Hitachi defendant agreed not to sell to

In short, neither the Direct Plaintiffs nor the Indirect Plaintiffs allege what, if anything, any Hitachi defendant agreed to do, or actually did, at any time in furtherance of, or even consistent with, defendants' alleged conspiracy.

## C.    ALLEGATIONS RELATING TO THE FICTIONAL "HITACHI"

Even as to the fictional collective "Hitachi," Plaintiffs' allegations are lacking.  The scant details Plaintiffs allege regarding "Hitachi" highlight the total absence of required specific facts tying any of the Hitachi defendants to any improper or illegal conspiracy, particularly when compared to allegations in the complaints against other defendants.

### 1.    THE HITACHI DEFENDANTS ARE NOT ALLEGED TO HAVE PARTICIPATED IN A SINGLE IMPROPER MEETING OR COMMUNICATION AFTER 2001.

Though the Indirect Plaintiffs' complaint asserts that Shenzhen SEG attended Chinese Glass Meetings (IP-CAC ¶ 148a), neither complaint identifies a single Hitachi defendant that attended an alleged improper meeting.  Both complaints lump the Hitachi defendants and

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/21117493.1                              6                    C07-5944 SC   MDL No. 1917
HITACHI DEFENDANTS' NOTICE OF MOTION & MOTION TO DISMISS
DIRECT & INDIRECT PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINTS

1   Shenzhen SEG together, in asserting that "Hitachi" attended meetings between 1996 and 2001.

2   DP-CAC ¶ 157; IP-CAC ¶ 179.  The complaints do not allege that even the fictional "Hitachi"

3   attended any meetings after 2001.  Plaintiffs rely on a single meaningless conclusory allegation

4   that "Hitachi never effectively withdrew from this conspiracy" to attempt to attribute post-2001

5   activity to the Hitachi defendants.  *Id.*

6           **2.    HITACHI DEFENDANTS HAD A SMALL AND RAPIDLY DECREASING SHARE
                    OF THE CRT MARKET.**

7

8           Contrary to Plaintiffs' conclusory allegations that allocating market share was a key

9   component of defendants' alleged conspiracy (DP-CAC ¶¶ 5, 145-146; IP-CAC ¶ 156), Plaintiffs

10  admit that the Hitachi defendants' collective market share decreased radically over the course of

11  the Class Period.  Plaintiffs assert that in 1996, approximately the start of the alleged Class

12  Period, Hitachi, Ltd., by itself, maintained a 20 percent market share of color CRTs.  DP-CAC ¶

13  30; IP-CAC ¶ 87.  By 2002, however, Plaintiffs admit that Hitachi, Ltd. had left the business (DP-

14  CAC ¶ 31; IP-CAC ¶ 88) and that the remaining Hitachi defendants, plus Shenzhen SEG, plus all

15  other Japanese based manufacturers, including Toshiba and others, collectively only maintained a

16  15 percent share of the entire CRT market.  DP-CAC ¶ 112, n. 2.  Given Plaintiffs' allegation that

17  Toshiba "held a 5 to 10 percent worldwide market share for CRTs" in 2001, Plaintiffs

18  acknowledge that the Hitachi defendants combined had only a miniscule share of the CRT market

19  by 2002.

20          **3.    HITACHI DEFENDANTS ARE NOT ALLEGED TO BE PART OF THE PRE-
                    CONSPIRACY MARKET.**

21          The Indirect Plaintiffs allege that the "genesis of the CRT conspiracy" took place in the

22  late 1980s and early 1990s, when a number of defendants began meeting and exchanging

23  competitive information.  IP-CAC ¶¶ 138-139.  The Indirect Plaintiffs fail to allege that any

24  Hitachi defendant participated in these exchanges that allegedly took place during the genesis of

25  the alleged conspiracy.  IP-CAC ¶¶ 2 and 138-139.

26          **4.    THE HITACHI DEFENDANTS ARE ALLEGED TO HAVE ATTENDED VERY
                    FEW MEETINGS.**

27

28          Again, Plaintiffs fail to identify any Hitachi defendant that attended a single alleged

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/21117493.1                    7                C07-5944 SC   MDL No. 1917
HITACHI DEFENDANTS' NOTICE OF MOTION & MOTION TO DISMISS
DIRECT & INDIRECT PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINTS

1   improper meeting.  Even as to the fictional collective "Hitachi," Plaintiffs allege only that

2   "Hitachi" "did not ordinarily attend the group meetings," (IP ¶ 164), and that between 1996 and

3   2001, "Hitachi," which includes non-Hitachi defendant Shenzhen SEG, participated in "several

4   Glass Meetings."  IP-CAC ¶ 179.  Direct Plaintiffs similarly allege that "Hitachi" attended "more

5   than 10 bilateral meetings and more than five group meetings."  DP-CAC ¶¶ 157-158.  Plaintiffs

6   are required to specify which of the Hitachi defendants, *if any* given Plaintiffs' inclusion of

7   Shenzhen SEG, attended these alleged meetings.  It is not burdensome or unreasonable to require

8   that Plaintiffs specify which Hitachi defendant, if any, attended which meeting(s), especially

9   considering the very few meetings the fictional "Hitachi" is alleged to have attended. Because

10  Plaintiffs fail to specify which Hitachi defendant is alleged to have attended these meetings, *none*

11  of the named Hitachi defendants are able to know whether *it* is the defendant alleged to have

12  attended these meetings.  Moreover, had Plaintiffs properly specified which Hitachi defendant (or

13  Shenzhen SEG) allegedly attended these meetings, such would be an admission that any of the

14  other non-specified Hitachi defendants did *not* attend the meetings.  Under *Twombly* Plaintiffs are

15  required to specify their allegations as to each *individual* defendant for this very reason.

16          **5.     PLAINTIFFS IMPROPERLY ATTRIBUTE ALLEGATIONS AGAINST NON-
                      HITACHI DEFENDANT SHENZHEN SEG TO THE HITACHI DEFENDANTS.**

17          The only meetings Plaintiffs allege "Hitachi" attended took place in China and Taiwan.

18  DP-CAC ¶ 157.  Tellingly, no Hitachi defendant is alleged to have any ties to either China or

19  Taiwan.  Rather, Plaintiffs' allegations appear to be based on their erroneous assertion that

20  Shenzhen SEG is a Hitachi entity, as Shenzhen SEG is alleged to be a Chinese Company.  DP-

21  CAC ¶ 35; IP-CAC ¶ 92.  The notion that Shenzhen SEG is the mysterious "Hitachi defendant"

22  alleged to have attended the improper meetings, is further buttressed by the fact that Indirect

23  Plaintiffs specifically allege that Shenzhen SEG attended "Chinese Glass Meetings."  IP-CAC ¶

24  148a.  Neither Direct Plaintiffs nor Indirect Plaintiffs specifically identify any of the five actual

25  Hitachi defendants as having attended the alleged meetings, instead only listing all Asia-based

26  Hitachi defendants, lumped with Shenzhen SEG, as the "Hitachi" which attended the meetings.

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/21117493.1                               8                  C07-5944 SC   MDL No. 1917
HITACHI DEFENDANTS' NOTICE OF MOTION & MOTION TO DISMISS
DIRECT & INDIRECT PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINTS

1

### 6. HITACHI DEFENDANTS' ALLEGED JOINT VENTURE AND TRADE ASSOCIATION MEMBERSHIPS ARE INNOCUOUS AND NOT EVEN ALLEGED TO RELATE TO CRT.

2

3    Plaintiffs' only allegations regarding Hitachi defendants' membership in trade

4    associations or joint ventures are innocuous and irrelevant to their attempt to state a claim against

5    the five Hitachi defendants.  The only joint venture in which any Hitachi defendant is alleged to

6    have participated is one between Hitachi, Ltd. and LG Electronics, Inc., which Indirect Plaintiffs

7    allege was created in 2000 "for the manufacture, sale and distribution of optical storage products

8    such as DVD drives," *non-CRT products.*  IP-CAC ¶ 128i.

9    Plaintiffs also allege that the fictional "Hitachi," without specifying which of the five

10   Hitachi defendants, was a member of the Society for Information Display, (IP-CAC ¶ 124) and an

11   attendee of some unspecified Korea Display Conference.  DP-CAC ¶ 178.  But Plaintiffs do not

12   even allege that CRTs or CRT Products were featured, discussed or even part of either the Society

13   for Information Display or Korea Display Conference.  Indeed, the only Korea Display

14   Conferences Plaintiffs allege at all, whether attended by any Hitachi defendant or not, took place

15   between December 2002 and June 2007, a period of time that postdates the period during which

16   Plaintiffs allege that even the fictional "Hitachi" attended improper meetings.  DP-CAC ¶ 157;

17   IP-CAC ¶¶ 179.  Plaintiffs provide no further details about when "Hitachi" participated or joined

18   such conferences or trade associations or what, if anything, the unnamed Hitachi defendant or the

19   unrelated Shenzhen SEG, did in connection with such conferences or trade associations.

20   ## III.   ARGUMENT

21   ### A.   PLAINTIFFS FAIL TO ALLEGE FACTS SUFFICIENT TO STATE A PLAUSIBLE CONSPIRACY AGAINST ANY OF THE HITACHI DEFENDANTS.

22

23   As set forth in detail in the Joint Defense Motions to Dismiss the DP-CAC and IP-CAC,

24   Plaintiffs must plead a "specific time, place, or person involved in the alleged conspiracies."

25   Otherwise a "defendant seeking to respond to plaintiffs' conclusory allegations . . . would have

26   little idea where to begin."  *Twombly*, 550 U.S. at 565.  Indeed, on the day this brief is being filed,

27   the Supreme Court reaffirmed in *Ashcroft v. Iqbal*, 556 U.S. ___, No. 07-1015, slip op. at 14

28   (U.S. May 18, 2009), the requirement that plaintiffs make specific factual assertions to survive a

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/21117493.1                    9                C07-5944 SC   MDL No. 1917

HITACHI DEFENDANTS' NOTICE OF MOTION & MOTION TO DISMISS
DIRECT & INDIRECT PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINTS

motion to dismiss, specifically rejecting the notion that a complaint can be predicated on

conclusory statements.

> [T]he tenet that a court must accept as true all of the allegations
> contained in a complaint is inapplicable to legal conclusions.
> Threadbare recitals of the elements of a cause of action, supported
> by mere conclusory statements, do not suffice . . . . Rule 8 marks a
> notable and generous departure from the hyper-technical, code-
> pleading regime of a prior era, *but it does not unlock the doors of
> discovery for a plaintiff armed with nothing more than
> conclusions*.

*Id*. at 15 (emphasis added).

For the reasons detailed in the Joint Defense Motions, Plaintiffs' allegations against all

Defendants are insufficient to state a claim against them because they fail to establish the

necessary elements of a Section I claim, such as the existence of an agreement.  Moreover,

Plaintiffs' allegations are insufficient to state a plausible conspiracy specifically against the

Hitachi defendants.

### 1.   PLAINTIFFS IMPROPERLY LUMP THE HITACHI DEFENDANTS INTO A SINGLE, NON-EXISTENT ENTITY, "HITACHI."

Plaintiffs must "allege that *each individual defendant* joined the conspiracy and played

some role in it because, at the heart of an antitrust conspiracy is an agreement and a conscious

decision by each defendant to join it."  *In re TFT-LCD Antitrust Litig*., 586 F. Supp. 2d 1109,

1117 (N.D. Cal. 2008) (Illston, J.) (emphasis added) (internal quotation omitted); *see also In re

Sagent Tech., Inc., Derivative Litig.*, 278 F. Supp. 2d 1079, 1094 (N.D. Cal. 2003) (Hamilton, J.)

("the complaint fails to state a claim because plaintiffs do not indicate which individual defendant

or defendants were responsible for which alleged wrongful act.").  Instead, Plaintiffs' allegations

improperly lump the Hitachi defendants together, along with non-Hitachi entity Shenzhen SEG,

into the non-existent "Hitachi."  Plaintiffs routinely improperly lump these separate, individual

defendants together throughout the complaints, thus failing to provide the required notice to *any*

of the Hitachi defendants.  DP-CAC ¶¶ 157, 178; IP-CAC ¶¶ 2, 124, 141, 164-165, 179, 238.  *See

Jung v. Assoc. of Am. Med. Colleges*, 300 F. Supp. 2d 119, 163 (D.D.C. 2004) ("[P]laintiffs' use

of the term 'defendants' to refer to multiple defendants situated very differently from one another

in the context of general and global allegations is insufficient . . . to demonstrate a basis [for one

1   specific defendant's] participation in the conspiracy.").  Plaintiffs attempt to circumvent this

2   obvious failure by asserting that references to a corporate family by a single name is adequate

3   because "Plaintiffs are alleging that one or more employees or agents of entities within the

4   corporate family engaged in conspiratorial meetings on behalf of every company in that family."

5   IP-CAC ¶ 188; *see also* DP-CAC ¶ 154.  But Plaintiffs state no specific facts to support their

6   naked assertions of supposed agency across all Hitachi defendants, and in fact, the law presumes

7   the opposite.  "It is a general principle of corporate law deeply ingrained in our economic and

8   legal systems that a parent corporation (so-called because of control through ownership of another

9   corporation's stock) is not liable for the acts of its subsidiaries."  *United States v. Bestfoods*, 524

10  U.S. 51, 61 (1998).  Plaintiffs' attempt to gloss over their complete failure to identify specific

11  conduct by *each* Hitachi defendant emphasizes the complaints' defective and impermissible

12  lumping together of the Hitachi defendants.

13      Plaintiffs compound their hide-the-ball approach by adding a non-Hitachi related

14  company, Shenzhen SEG, into the fictional "Hitachi" collective.  As a result of Plaintiffs'

15  lumping Shenzhen SEG into the already confusing Hitachi collective, the Hitachi defendants are

16  unable to determine whether the "Hitachi" allegations relate to *any* Hitachi entity.  The fact that

17  HDP at one time owned a 25 percent minority interest in Shenzhen SEG is insufficient to impute

18  any liability for actions by Shenzhen SEG to HDP, or any other Hitachi defendant.

19      Plaintiffs do not properly state a claim against *any* of the Hitachi defendants because of

20  their failure to appropriately distinguish among the five individual Hitachi defendants and the

21  non-Hitachi entity Shenzhen SEG.  Without specific allegations describing *each* Hitachi

22  defendant's role in the alleged conspiracy, Plaintiffs' complaints are insufficient to state a claim

23  against any of the Hitachi defendants.  *See Lippe v. Bairnco Corp.*, 225 B.R. 846, 860 (S.D.N.Y.

24  1998) (dismissing RICO claims against separate corporate defendants where plaintiffs "simply

25  'lump[ed]' all the defendants together and allege[d] that the purported acts of every defendant can

26  be imputed to every other defendants.").

27

28

1

2.      **PLAINTIFFS' ALLEGATIONS AGAINST THE NON-EXISTENT "HITACHI"
ARE CONCLUSORY AND INSUFFICIENT TO STATE A CLAIM.**

2

3        Even if the non-existent "Hitachi" were a proper defendant in this action, the collective

4    allegations in Plaintiffs' complaints against "Hitachi" are insufficient to state a claim for relief.

5    The allegations in the complaints are conclusory and fail to allege basic facts, "such as a 'specific

6    time, place, or person involved in the alleged conspiracies' to give a defendant seeking to respond

7    . . . an idea of where to begin." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008)

8    (quoting *Twombly*, 550 U.S. at 565 n.10).   Therefore, Plaintiffs' allegations are nothing more

9    than "threadbare recitals of the elements of a cause of action, supported by mere conclusory

10   statements, [that] do not suffice" under *Twombly*. *Iqbal*, No. 07-1015, slip op. at 14.

11        The Hitachi defendants could not possibly know where to begin in seeking to respond to

12   the consolidated complaints.  Because Plaintiffs have included a non-Hitachi entity, Shenzhen

13   SEG, in each "Hitachi" allegation, they do not know if any of the allegations relate to any of

14   them, let alone which specific Hitachi defendant(s) Plaintiffs' allegations implicate.  Even

15   including Shenzhen SEG, which makes no sense, "Hitachi" does not know, among other things:

16   (1) when it is alleged to have met with the alleged conspirators; (2) where it is alleged to have

17   met; (3) who it is alleged to have met; (4) which employee(s) among the thousands of employees

18   across the six companies spanning the globe attended the mystery meetings; (5) any terms of any

19   agreement allegedly reached; or even (6) the product(s) covered by such agreements.  Plaintiffs'

20   allegations are the equivalent of alleging that "someone at some company that may or may not

21   even be a Hitachi company met some other unknown person(s) at some unknown place(s) at some

22   unknown time(s) between 13 and 8 years ago (1996-2001) and reached an 'illegal' agreement

23   about some CRT related product(s)."

24        Plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face."

25   *Twombly*, 550 U.S. at 570.  They have not even approached this standard with respect to the

26   Hitachi defendants.  Plaintiffs allege that "Hitachi" participated in "over a dozen illegal bilateral

27   and group meetings from 1996 through at least 2001," where "unlawful agreements" were

28   reached.  DP-CAC ¶ 157; IP-CAC ¶ 179.  Indirect Plaintiffs allege that "Hitachi," among other

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/21117493.1                              12                   C07-5944 SC   MDL No. 1917

HITACHI DEFENDANTS' NOTICE OF MOTION & MOTION TO DISMISS
DIRECT & INDIRECT PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINTS

Defendants, "met or talked with their competitors for the purpose of fixing the prices of [unidentified] CRT Products."  IP-CAC ¶ 2.  But in failing to allege the dates, locations, attendees or topics of the alleged meetings, or the terms or parties to the alleged agreements, Plaintiffs' allegations against "Hitachi" are exposed as nothing more than "labels and conclusions" and a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.  And it bears repeating that "Hitachi" is not a named defendant and Shenzhen SEG is not a Hitachi entity.  Plaintiffs' allegations are entirely conclusory, lacking the factual specificity required to "render plaintiffs' entitlement to relief plausible." *Id*. at 569 n.14; *see also Iqbal*, No. 07-1015, slip op. at 15 (a plaintiff's conclusions "are not entitled to an assumption of truth.").  They are nothing more than naked assertions that provide "no details as to when, where, or by [which Hitachi defendant, if any,] this alleged agreement was reached." *In re Late Fee and Over-Limit Fee Litig*., 528 F. Supp. 2d 953, 962 (N.D. Cal. 2007) (Armstrong, J.); *see also In re Elevator Antitrust Litig*., 502 F.3d 47, 51 (2d Cir. 2007) (citing *Amron v. Morgan Stanley Inv. Advisors Inc.*, 464 F.3d 338, 344 (2d Cir. 2006)).

### 3.   THE SPECIFIC ALLEGATIONS AGAINST THE HITACHI DEFENDANTS ARE IRRELEVANT AND INCONSISTENT WITH PLAINTIFFS' CONCLUSION THAT THE HITACHI DEFENDANTS PARTICIPATED IN THE ALLEGED CONSPIRACY.

Where Plaintiffs do make specific allegations regarding the conduct of the fictional "Hitachi" entity, (even assuming that the allegations are not actually directed against the non-Hitachi entity Shenzhen SEG), the allegations are at best irrelevant to determining whether any Hitachi defendant participated in the alleged conspiracy, as they describe completely innocuous activity.  Worse, in many instances, Plaintiffs' allegations are totally inconsistent with Plaintiffs' allegation that the five Hitachi defendants participated in the alleged conspiracy.

(1)   Plaintiffs' Admissions About the Hitachi Defendants' Rapidly Decreasing Market Share Contradict Their Allegation that the Hitachi Defendants Entered into a Conspiracy in Which the Participants Allocated Market Share and Customers.

Plaintiffs' admissions about the Hitachi defendants' rapidly decreasing market share expose the baseless nature of their conclusory allegation that the Hitachi defendants joined the alleged conspiracy.  On the one hand, as is often the case with antitrust conspiracies, Plaintiffs

1  allege that defendants' allocation of market share and customers was a key component of the

2  alleged conspiracy.  DP-CAC ¶¶ 5, 145-146; IP-CAC ¶ 156.  But Plaintiffs also admit that the

3  Hitachi defendants' collective market share decreased from more than twenty percent (20%) in

4  1996, approximately the start of the alleged conspiracy, to less than five to ten percent (5-10%)

5  only six years later in 2002.  *See* DP-CAC ¶ 30 and IP-CAC ¶ 87 (Hitachi, Ltd. had a 20 percent

6  share in 1996); DP-CAC ¶ 112, n. 2, DP-CAC ¶ 71 and IP-CAC ¶ 72 (all Hitachi defendants plus

7  Shenzhen SEG, Toshiba and other Japanese manufacturers had a 15 percent share in 2002 with

8  Toshiba having a 5 to 10 percent share in 2001).

9      Plaintiffs' admissions about the Hitachi defendants' evaporating market share cannot

10  plausibly support an allegation of a conspiracy including any of the Hitachi defendants and are

11  inherently contradictory to such a claim.  Indeed, if any defendants were allocating market share

12  they clearly did so at the Hitachi defendants' expense.  Having all but admitted that Hitachi

13  defendants were exiting the CRT market by the turn of the century, the Court should disregard

14  Plaintiffs' invitation to accept its contradictory conclusion that the Hitachi defendants entered and

15  "never effectively withdrew from this conspiracy."  DP-CAC ¶¶ 157-158 and IP-CAC ¶¶ 179-

16  180.  *See In re Citric Acid Litig.*, 996 F. Supp. 951, 961 (N.D. Cal. 1998) (Smith, J.), *affirmed by*

17  *In re Citric Acid Litig.*, 191 F.3d 1090 (9th Cir. 1999) ("[I]t is impossible to draw an inference of

18  conspiracy from [defendant's] market share when it changed so much more than would have been

19  allowed had it been participating in the conspiracy," where plaintiffs alleged conspirators

20  allocated market share to within a tenth of a percent and defendant's market share grew more than

21  two percent during alleged conspiracy).

22      Plaintiffs create grounds for dismissal by pleading facts which contradict their conclusory

23  allegations.  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988-90 (9th Cir. 2001) (dismissing

24  plaintiff's complaint because a document he attached to his complaint contradicted the conclusory

25  allegations in his complaint); *see also Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295 (9th

26  Cir. 1998) ("[W]e are not required to accept as true conclusory allegations which are contradicted

27  by documents referred to in the complaint.").  Because Plaintiffs' allegations regarding

28  "Hitachi's" market share are inconsistent with their allegations of anti-competitive behavior, the

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/21117493.1          14          C07-5944 SC   MDL No. 1917
HITACHI DEFENDANTS' NOTICE OF MOTION & MOTION TO DISMISS
DIRECT & INDIRECT PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINTS

1    Court should dismiss Plaintiffs' claims against the Hitachi defendants.

2                    (2)    Hitachi, Ltd.'s Alleged Participation in a Joint Venture to Sell *DVD*
                            Drives is Irrelevant to the *CRT* Market.
3

4            Plaintiffs allege that Hitachi, Ltd. entered into a joint venture with LG Electronics "in

5    2000 for the manufacture, sale, and distribution of optical storage products such as DVD drives."

     DP-CAC ¶ 118; IP-CAC ¶ 128i.  By Plaintiffs' own admission, the purpose of the alleged joint
6
     venture was to manufacture and sell "DVD drives," which are completely unrelated to CRTs.
7
     This allegation does nothing to support a claim against the Hitachi defendants.
8
                    (3)    The Hitachi Defendants' Alleged Membership in Trade
9                           Associations is Irrelevant.

10           Plaintiffs allege that "Hitachi" attended a Korea Display Conference and was a member of

11   the Society for Information Display.  DP-CAC ¶ 178; IP-CAC ¶ 124.  It is well settled that

12   participation and membership in trade associations are insufficient to infer the existence of a

13   conspiracy.  *In re Citric Acid Litig.*, 191 F.3d at 1098; *In re Graphics Processing Units Antitrust*

14   *Litig.*, 527 F. Supp. 2d 1011, 1023 (N.D. Cal. 2007) (Alsup, J.) (defendant's participation in trade

15   shows and events is "presumed legitimate and is not a basis from which to infer a conspiracy,

16   without more.").  Plaintiffs attempt to overcome this presumption by characterizing "Hitachi's"

17   participation in trade associations as "opportunities" for sharing competitive information with

18   other defendants.  These allegations of "opportunities to communicate," "taken singly or together,

19   are insufficient to plead a case."  *In re Late Fee*, 528 F. Supp. 2d at 963.  Like the allegations of

20   trade association membership that were insufficient to state a claim in *In re Graphics Processing*

21   and *In re Late Fee*, the allegations against "Hitachi" are merely descriptions of legitimate

22   behavior that do not describe any improper conduct.

23                   (4)    Alleged Government Investigations Are Irrelevant to this Case.

24           Plaintiffs attempt to bolster their conclusory allegations against "Hitachi" by referencing

25   government investigations of Hitachi defendants in *other* product markets.  DP-CAC ¶ 123-24;

26   IP-CAC ¶ 220-21.  The investigations referenced are unrelated to CRT Products and, therefore,

27   irrelevant to determining whether any Hitachi defendant participated in an alleged conspiracy in

28   the industry that is at issue in this litigation.  Because the allegations of government investigations

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/21117493.1                              15                   C07-5944 SC   MDL No. 1917
─────────────────────────────────────────────────────────────────────
HITACHI DEFENDANTS' NOTICE OF MOTION & MOTION TO DISMISS
DIRECT & INDIRECT PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINTS

1   involve wholly unrelated products, they are even more deficient than the allegations that were

2   rejected in *In re Graphics Processing*.  In that case, the plaintiffs referenced a government

3   investigation of the defendants in the *same* product market that was the subject of the civil

4   litigation.  Even then, Judge Alsup held that the "investigation, however, carries no weight in

5   pleading an antitrust conspiracy claim . . . . The grand jury investigation is a non-factor."  527 F.

6   Supp. 2d at 1024.

7               **4.      PLAINTIFFS FAIL TO SUPPORT THEIR CONCLUSORY ALLEGATIONS OF
                          IMPROPER AGREEMENTS WITH ANY ALLEGATIONS OF PARALLEL**

8                         **CONDUCT BY ANY OF THE HITACHI DEFENDANTS.**

9               Most antitrust complaints make allegations of parallel conduct, such as providing

10  historical examples of alleged competitors' prices rising at approximately the same time by the

11  same amount, in order to attempt to buttress a plaintiff's allegations of price fixing.  It is now well

12  established that allegations of parallel conduct alone are insufficient to state a claim for relief

13  under *Twombly*.  *Twombly*, 550 U.S. at 549 ("parallel conduct" demonstrated a *conceivable*

14  antitrust claim but plaintiffs must allege the "factual context suggesting agreement, as distinct

15  from identical independent action" to make a claim "*plausible* on its face").

16              Here, Plaintiffs not only fail to plead the required "circumstances pointing toward a

17  meeting of the minds" by any of the Hitachi defendants, as required to allege a plausible claim

18  under *Twombly*, but they neglect to allege any parallel conduct to demonstrate even an

19  insufficiently conceivable claim against the Hitachi defendants.  *Twombly*, 550 U.S. at 557; *see*

20  *Iqbal*, No. 07-1015, slip op. at 16 (while complaint in *Twombly* contained "well-pleaded,

21  nonconclusory factual allegation of parallel behavior," because the parallel conduct "was more

22  likely explained by, lawful, unchoreographed free-market behavior," the allegations of parallel

23  conduct "did not plausibly suggest an unlawful agreement."); *see also Int'l Norcent Technology v.*

24  *Koninklijke Philips Electronics N.V.*, No. 07-00043, 2007 WL 4976364, at *10 (C.D. Cal. Oct.

25  29, 2007) ("If a conclusory allegation of agreement is not sufficient even when supported by facts

26  demonstrating parallel conduct, such an allegation cannot be sufficient here, where no parallel

27  conduct or any other factual conduct is alleged.").  Not only are the factual allegations asserted

28  against the Hitachi defendants conclusory, the complaints also fail to include even a "well-

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/21117493.1                    16                    C07-5944 SC   MDL No. 1917
HITACHI DEFENDANTS' NOTICE OF MOTION & MOTION TO DISMISS
DIRECT & INDIRECT PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINTS

1   pleaded, nonconclusory factual allegation of parallel behavior." *Iqbal*, No. 07-1015, slip op. at

2   16.

3          In the absence of any specifically pled parallel conduct allegations, Plaintiffs expose their

4   conclusions about agreement for the empty allegations they are.  Pleading that "Hitachi"

5   participated in "over a dozen illegal bilateral and group meetings from 1996 through at least

6   2001," where "unlawful agreements" were reached (DP-CAC ¶ 157; IP-CAC ¶ 179), fails to give

7   the individual Hitachi defendants one iota of "an idea of where to begin." *Kendall*, 518 F.3d at

8   1047.

9   **B.      PLAINTIFFS' CLAIMS MUST BE DISMISSED BECAUSE THEY ARE**
10  **OUTSIDE THE STATUTE OF LIMITATIONS.**

          As addressed in the Joint Defense Motions, Plaintiffs' claims must be dismissed because
11
    they are outside the statute of limitations and because Plaintiffs fail to adequately plead fraudulent
12
    concealment by the Defendants to toll the statute of limitations.  The defects in Plaintiffs'
13
    complaints are even more apparent when considering the facts alleged against the Hitachi
14
    defendants.
15

16  **1.      THE STATUTE OF LIMITATIONS HAS EXPIRED AS TO ALL CLAIMS
            AGAINST THE HITACHI DEFENDANTS.**

17         The statute of limitations has expired with respect to *all* claims against *all* the Hitachi

18  defendants.  Plaintiffs fail to plead with any particularity any meetings or discussions in which

19  any Hitachi participated after 2001, and by their own admission, "Hitachi" is only alleged to have

20  attended these meetings relatively few times.  DP-CAC ¶ 157; IP-CAC ¶ 179.  Plaintiffs'

21  conclusory assertion that "Hitachi never effectively withdrew from this conspiracy" does not

22  meet the particularity required for pleading under *Twombly*, as the complaints contain no

23  allegations at all that any of the Hitachi defendants engaged in any type of anti-competitive

24  behavior after 2001.  Accordingly, all claims alleged in both complaints are for alleged activity

25  outside of the statute of limitations.  The claims should be dismissed.

26         Furthermore, with respect to Hitachi, Ltd., Plaintiffs readily admit that in 2002, Hitachi,

27  Ltd. left the CRT industry and spun off all of its departments related to the display business to

28

DB2/21117493.1                                          17                     C07-5944 SC   MDL No. 1917
                    HITACHI DEFENDANTS' NOTICE OF MOTION & MOTION TO DISMISS
                    DIRECT & INDIRECT PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINTS

1   HDP.[5]  DP-CAC ¶ 31; IP-CAC ¶ 88.  Plaintiffs' own allegations relieve Hitachi, Ltd. of any

2   liability, as it had completely exited the business by 2002, thereby "affirmatively and completely

3   disassociat[ing] from the continued operation of the [alleged] conspiracy."  *Morton's Market, Inc.*

4   *v. Gustafson's Dairy, Inc.*, 198 F.3d 823, 838 (11th Cir. 1999).  A defendant is liable only for

5   those acts committed prior to withdrawal.  *Id*. at 837.  All claims against Hitachi, Ltd. must be

6   dismissed as time-barred because Plaintiffs concede that Hitachi, Ltd. effectively withdrew from

7   the industry in 2002.

8        Plaintiffs' entire case against the Hitachi defendants for activity after 2001 rests on their

9   conclusory statement that "Hitachi never effectively withdrew from this conspiracy."  DP-CAC ¶

10  157; IP-CAC ¶ 179.  This wholly unsupported conclusion, which runs counter to Plaintiffs' own

11  allegations, is insufficient to state a claim against any of the Hitachi defendants.  *See Kendall*, 518

12  F.3d at 1047-48 (upholding motion to dismiss where plaintiffs "pleaded only ultimate facts, such

13  as conspiracy, and legal conclusions. . . [and] . . . failed to plead the necessary evidentiary facts to

14  support those conclusions.").  Accordingly, the statute of limitations bars *all* claims Plaintiffs

15  allege against the Hitachi defendants.

16            **2.      PLAINTIFFS FAIL TO PLEAD THE NECESSARY FACTS REQUIRED TO PLEAD**
                        **FRAUDULENT CONCEALMENT AGAINST THE HITACHI DEFENDANTS.**
17

18       As stated in the Joint Defense Motions to Dismiss, Plaintiffs failed to plead the facts

19  required to allege fraudulent concealment against all Defendants.  Their failure to plead any of the

20  necessary facts required for fraudulent concealment is even more obvious when considering the

21  allegations made against "Hitachi."  The latest date Plaintiffs allege "Hitachi" attended an

22  improper meeting was in 2001, six years prior to the filing of the first complaint.  DP-CAC ¶¶

23  157-58; IP-CAC ¶¶ 179-80.  Most critically, the Plaintiffs fail to allege any acts by a specific

24  Hitachi defendant, or even the non-existent "Hitachi," that could be considered active

25  concealment, a necessary element of a fraudulent concealment claim.  *See Barker v. Am. Mobil*

26  *Power Corp.*, 64 F.3d 1397, 1402 (9th Cir. 1995) (under the doctrine of fraudulent concealment,

---

[5]     Hitachi Displays, Ltd. was not named in a complaint until March 16, 2009.  Accordingly,
the statute of limitations must be calculated as of that date, with Direct Plaintiffs' claims
only extending back to sales after March 16, 2005, and Indirect Plaintiffs' claims
stretching back three, four or six years depending on the relevant statute.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/21117493.1                    18                 C07-5944 SC   MDL No. 1917

HITACHI DEFENDANTS' NOTICE OF MOTION & MOTION TO DISMISS
DIRECT & INDIRECT PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINTS

1    "the statute of limitations may be tolled only if the plaintiff establishes affirmative conduct upon

2    the part of the *defendant*") (emphasis in original) (internal quotation omitted)); *Metz v. Union*

3    *Bank*, 416 F. Supp. 2d 568, 579 (N.D. Ohio 2006) ("The Plaintiff must affirmatively plead facts

4    supporting a claim for fraudulent concealment *against each specific Defendant* who allegedly

5    participated in the concealment in order to state a claim against that Defendant which would

6    survive an otherwise expired statute of limitations." (emphasis added)).  Nor may Plaintiffs meet

7    their burden by conclusorily asserting that the alleged conspiracy was "self-concealing."  *See*

8    *Conmar Corp. v. Mitsui & Co. (U.S.A.), Inc.*, 858 F.2d 499, 505 (9th Cir. 1988) ("Conmar claims

9    that Mitsui's acts constitute fraudulent concealment because they were by nature self-concealing.

10   We require more.  A plaintiff alleging fraudulent concealment must establish that its failure to

11   have notice of its claim was the result of affirmative conduct by the defendant.").  Plaintiffs

12   cannot avoid this necessary element by imputing allegations of active concealment committed by

13   any other Defendant to the Hitachi defendants.  Plaintiffs must allege specific acts of affirmative

14   conduct against *each* Hitachi defendant to properly plead fraudulent concealment.  *See*

15   *Greenwald v. Manko*, 840 F. Supp. 198, 203 (E.D.N.Y. 1993) (allegations of affirmative conduct

16   against one defendant could not be imputed against another defendant in a RICO conspiracy

17   case); *cf. In re Urethane Antitrust Litig.*, 235 F.R.D. 507, 516-518 (D. Kan. 2006) (plaintiffs

18   satisfied the "who, what, where and when of the defendants' allegedly false and pretextual

19   reasons for price increases" because they pled the timing and content of pretextual and false

20   explanations by each defendant).  Plaintiffs fail to allege a single affirmative act of concealment

21   by *any* Hitachi defendant, or even the fictional "Hitachi," and thus fail to properly state a claim

22   for fraudulent concealment against the Hitachi defendants.

23   **IV.    CONCLUSION**

24           The allegations in Plaintiffs' complaints are insufficient to state a claim against any

25   Hitachi defendant, or even the fictional "Hitachi."  For the reasons set forth in this brief and

26   Defendants' Joint Motions to Dismiss, Plaintiffs' claims should be dismissed against all Hitachi

27   defendants.

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/21117493.1                                    19                    C07-5944 SC   MDL No. 1917
HITACHI DEFENDANTS' NOTICE OF MOTION & MOTION TO DISMISS
DIRECT & INDIRECT PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINTS



---