Samuel R. Miller (SBN 66871)
srmiller@sidley.com
Marie L. Fiala (SBN 79676)
mfiala@sidley.com
Ryan M. Sandrock (SBN 251781)
rsandrock@sidley.com
Robert B. Martin, III (SBN 235489)
rbmartin@sidley.com
SIDLEY AUSTIN LLP
555 California Street, 20th Floor
San Francisco, California  94104
Telephone:      (415) 772-1200
Facsimile:      (415) 772-7400

Attorneys For Defendants
LG ELECTRONICS, INC.; LG ELECTRONICS USA, INC.; and
LG ELECTRONICS TAIWAN TAIPEI CO., LTD.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE:  CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Case No.: 3:07-cv-5944 SC |
| | MDL No. 1917 |
| This Document Relates To: | **LG ELECTRONICS, INC., LG ELECTRONICS USA, INC., AND LG ELECTRONICS TAIWAN TAIPEI CO., LTD.'S MOTION TO DISMISS DIRECT PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT AND INDIRECT PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT OR, IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT** |
| DIRECT PURCHASER ACTIONS and INDIRECT PURCHASER ACTIONS | |
| | [Proposed] Order Granting Motion to Dismiss Without Leave to Amend Filed Concurrently Herewith |
| | Date:      August 4, 2009<br>Time:      9:00 a.m.<br>Before:   The Honorable Charles A. Legge, U.S. District Judge (Ret.), Special Master |

# <u>TABLE OF CONTENTS</u>

Page

I.      STATEMENT OF THE ISSUES PRESENTED ....................................................1

II.     INTRODUCTION .........................................................................................1

III.    FACTUAL BACKGROUND ..........................................................................4

        A.      The Product Markets ..............................................................4

        B.      The LGE Entities Are Separate Companies; None of Them Makes Tubes..................5

        C.      LPD, Which Makes Tubes, Is Not Part of the LG Corporate Group...........................6

        D.      Allegations Concerning the LGE Entities' Purported Involvement in the
                Conspiracy .................................................................................6

IV.     ARGUMENT ...............................................................................................8

        A.      LGE Withdrew from Any Alleged Conspiracy to Fix Prices of Tubes in
                2001; the Statute of Limitations Therefore Bars Plaintiffs' Claims. ...........................8

                1.      Plaintiffs' Allegations Are Insufficient to Support a Fraudulent
                        Concealment Theory. ...........................................................9

                        a.      Plaintiffs Do Not Adequately Allege That the LGE Entities "Actively
                                Misled" Them. ....................................................11

                        b.      The Complaints Show That, if Any Conspiracy Existed, Plaintiffs Must
                                Have Had Constructive Knowledge of It. ...............................12

                2.      The Complaint Lacks Any Specific Allegations Supporting an Alter
                        Ego or Agency Theory..........................................................13

        B.      The Complaints Fail to Plead Adequately That the LGE Entities Participated
                in the Alleged Conspiracy......................................................................15

                1.      The LGE Entities and LPD Are Separate Companies. ....................................15

                2.      The Complaints Lack Adequate Individualized Allegations to Show
                        the LGE Entities Joined or Participated in the Conspiracy..............................17

        C.      Alternatively, the LGE Entities Are Entitled to a More Definite Statement. ...............19

V.      CONCLUSION............................................................................................21

i

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

CASES

4

*Alaska Airlines, Inc. v. Carey*,
   2008 WL 2725796 (W.D. Wash. July 11, 2008) .....................................................16

5

*Am. Nat'l Red Cross v. United Way Cal. Capital Region*,
6   2007 WL 4522967 (E.D. Cal. Dec. 19, 2007) ......................................................14

7
*Arnold Chevrolet LLC v. Tribune Co.*,
8   418 F. Supp. 2d 172 (E.D.N.Y. 2006) ................................................................16

9
*Ashcroft v. Iqbal*,
   2009 WL 1361536 (U.S. May 18, 2009) ................................................... *passim*

10
*In re Bath & Kitchen Fixtures Antitrust Litig.*,
11   2006 U.S. Dist. LEXIS 49576 (E.D. Pa. July 19, 2006)...........................................10

12
*Bell Atlantic Corp. v. Twombly*,
13   550 U.S. 544 (2007)...................................................................... *passim*

14
*Brennan v. Concord EFS, Inc.*,
   369 F. Supp. 2d 1127 (N.D. Cal. 2005) ..............................................................17

15
*Chubb & Son, Inc. v. Kelleher*,
16   1998 U.S. Dist. LEXIS 22542 (E.D.N.Y. Feb. 27, 1998)..........................................10

17
*In re Citric Acid Litig.*,
18   191 F.3d 1090 (9th Cir. 1999) .........................................................................19

19
*In re Compact Disc Minimum Advertised Price Antitrust Litig.*,
   138 F. Supp. 2d 25 (D. Me. 2001) ....................................................................12

20
*Conmar Corp. v. Mitsui & Co. (USA) Inc.*,
21   858 F.2d 499 (9th Cir. 1988) ...............................................................10, 11, 12

22
*Copperweld Corp. v. Independence Tube Corp.*,
23   467 U.S. 752 (1984)....................................................................................15

24
*Diario El Pais, S.L. v. Nielsen Co.*,
   2008 U.S. Dist. LEXIS 92987 (S.D.N.Y. Nov. 6, 2008)...........................................14

25
*Doe v. Unocal Corp.*,
26   248 F.3d 915 (9th Cir. 2001) ..........................................................................14

27
*Dolter v. Keene's Transfer, Inc.*,
   2008 WL 3010062 (S.D. Ill. Aug. 5, 2008) ........................................................14

28

ii

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
   No. C-02-1486 PJH, slip op. (N.D. Cal. Feb. 20, 2007)....................................13, 18

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
   546 F.3d 981 (9th Cir. 2008) ..............................................................................18

*E. & J. Gallo Winery v. Encana Energy Services, Inc.*,
   2008 U.S. Dist. LEXIS 46927 (E.D. Cal. May 27, 2008)..........................12, 13, 14

*F. Hoffmann-La Roche Ltd. v. Empagran S.A.*,
   542 U.S. 155 (2004)..........................................................................................18

*In re Graphics Processing Units Antitrust Litig.*,
   527 F. Supp. 2d 1011 (N.D. Cal. 2007) .............................................................19

*Jung v. Ass'n of Am. Med. Colls.*,
   300 F. Supp. 2d 119 (D.D.C. 2004) ...................................................................17

*Katzir's Floor & Home Design, Inc. v. M-MLS.COM*,
   394 F.3d 1143 (9th Cir. 2004) ...........................................................................13

*Kendall v. Visa U.S.A., Inc.*,
   518 F.3d 1042 (9th Cir. 2008) .................................................................. *passim*

*In re Late Fee and Over-Limit Fee Litig.*,
   528 F. Supp. 2d 953 (N.D. Cal. 2007) ...............................................................19

*Metz v. Unizan Bank*,
   416 F. Supp. 2d 568 (N.D. Ohio 2006) ..............................................................10

*In re Milk Prods. Antitrust Litig.*,
   84 F. Supp. 2d 1016 (D. Minn. 1997) ................................................................10

*Moreco Energy, Inc. v. Penberthy-Houdaille, Inc.*,
   1988 U.S. Dist. LEXIS 11850 (N.D. Ill. Oct. 21, 1988)......................................10

*Morton's Market, Inc. v. Gustafson's Dairy, Inc.*,
   198 F.3d 823 (11th Cir. 1999) .........................................................................8, 9

*Mountain View Pharmacy v. Abbott Labs.*,
   630 F.2d 1383 (10th Cir. 1980) ....................................................................16, 20

*Neilson v. Union Bank of Cal., N.A.*,
   290 F. Supp. 2d 1101 (C.D. Cal. 2003) ........................................................13, 14

*In re Rubber Chems. Antitrust Litig.*,
   504 F. Supp. 2d 777 (N.D. Cal 2007) ................................................................10

*Rutledge v. Boston Woven Hose and Rubber Co.*,
   576 F.2d 248 (9th Cir. 1978) .............................................................................11

iii

*In re Sagent Tech., Inc. Deriv. Litig.*,
    278 F. Supp. 2d 1979 (N.D. Cal. 2003) ..................................................17, 20

*Sherman v. British Leyland Motors, Ltd.*,
    601 F.2d 429 (9th Cir. 1979) ...............................................................16

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
    580 F. Supp. 2d 896 (N.D. Cal. 2008) ..................................................19

*Suckow Borax Mines Consolid., Inc. v. Borax Consolid., Ltd.*,
    185 F.2d 196 (9th Cir. 1950) ...............................................................10

*Sun Microsystems Inc. v. Hynix Semiconductor Inc.*,
    2009 WL 909766 (N.D. Cal. Mar. 31, 2009).........................................13

*Tessera, Inc. v. Micron Tech., Inc.*,
    2005 WL 1661106 (E.D. Tex. July 14, 2005) .........................................4

*Texaco v. Dagher*,
    547 U.S. 1 (2006).............................................................................15

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    586 F. Supp. 2d 1109 (N.D. Cal. 2008) .......................................16, 17, 20

*United States v. Bestfoods*,
    524 U.S. 51 (1998)........................................................................13, 16

*United States v. Borelli*,
    336 F.2d 376 (2d Cir. 1964)...................................................................9

*United States v. Nippon Paper Indus. Co., Ltd.*,
    62 F. Supp. 2d 173 (D. Mass. 1999) .....................................................8, 9

*United States v. U.S. Gypsum Co.*,
    438 U.S. 422 (1978).........................................................................8, 9

**STATUTES**

15 U.S.C. § 15b.......................................................................................8

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 8 ...............................................................18

Federal Rule of Civil Procedure 9(b)...................................................9, 10, 11

iv

Federal Rule of Civil Procedure 12(b)(6) ...........................................................................................19

Federal Rule of Civil Procedure 12(e) ..........................................................................................4, 19

LGE ENTITIES' MOTION TO DISMISS DIRECT PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT
AND INDIRECT PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT – CASE NO.: 3:07-CV-5944 SC

**<u>NOTICE OF MOTION AND MOTION</u>**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on August 4, 2009 at 9:00 a.m. or as soon thereafter as this matter may be heard before the Honorable Charles A. Legge, U.S. District Court Judge (Ret.), Special Master, in the San Francisco Resolution Center of JAMS, Two Embarcadero Center, Suite 1500, San Francisco, California 94111, Defendants LG Electronics, Inc.; LG Electronics USA, Inc.; and LG Electronics Taiwan Taipei Co., Ltd. will and hereby do move this Court for an order dismissing the Direct Purchaser Plaintiffs' Consolidated Amended Complaint and Indirect Purchaser Plaintiffs' Consolidated Amended Complaint without leave to amend for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for an order requiring  a more definite statement by Plaintiffs pursuant to Federal Rule of Civil Procedure 12(e).

The motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities in support thereof, the LGE Entities' Request for Judicial Notice and attached exhibits filed in support of the Motion, the pleadings and correspondence on file with the Court, and such arguments and authorities as may be presented at or before the hearing.

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.   STATEMENT OF THE ISSUES PRESENTED

3

Defendants LG Electronics, Inc. ("LGE"), LG Electronics USA, Inc. ("LGUSA"), and LG

4 Electronics Taiwan Taipei Co., Ltd. ("LGETT") (collectively, the "LGE Entities") move to dismiss

5 or, in the alternative, for a more definite statement of the allegations pled in the Direct Purchasers'

6 and Indirect Purchasers' Consolidated Amended Complaints ("DPC" and "IPC," respectively, or

7 "Complaints," jointly) on the following grounds:[1]

8        – The claims against the LGE Entities are barred by the statute of limitations;

9        – The Complaints do not adequately allege the elements of fraudulent concealment;

10        – The Complaints lack sufficient specific allegations to support an alter ego or agency theory

11         as between the LGE Entities and defendant LP Displays International, Ltd. ("LPD")—a

12         separate corporate entity with separate counsel and not a party to this motion;

13        – Plaintiffs have not adequately alleged facts supporting the LGE Entities' participation in

14         any conspiracy; and

15        – In the alternative, Plaintiffs should be required to provide a more definite statement of the

16         basis for their claims against the LGE Entities.

17

## II.   INTRODUCTION

18

The scope of these lawsuits is extraordinarily broad.  Plaintiffs allege a conspiracy spanning

19 twelve years, involving almost fifty defendants, on behalf of a putative class that could include

20 almost every household in the United States.  DPC ¶ 2 ("During the Class Period, virtually every

21 household in the United States owned at least one CRT Product."); DPC ¶ 85; IPC ¶ 16.  Although

22 the Complaints include a longer cast of characters than a Russian novel, the LGE Entities are entitled

23 to have the allegations against them evaluated with the same care as if they were the only

24 defendants, and plaintiffs must plead sufficient and specific allegations as to *each* entity named as a

25

---

26 [1] The LGE Entities join in the legal arguments made in the Certain Defendants' Joint Motion to Dismiss Direct Purchaser Plaintiffs' Consolidated Amended Complaint, and Defendants' Joint Motion to Dismiss Indirect Purchaser Plaintiffs' Consolidated Amended Complaint, filed

27 concurrently herewith, and submit this separate motion to address issues specific to the LGE Entities.

28

1

1   defendant.  Close examination of the Complaints reveals that the claims against the LGE Entities are

2   legally insufficient.  Instead of the specific factual allegations required by *Bell Atlantic Corp. v.*

3   *Twombly*, 550 U.S. 544, 555 (2007), and *Ashcroft v. Iqbal*, 2009 WL 1361536, at *13 (U.S. May 18,

4   2009), plaintiffs plead "threadbare recitals of the elements of a cause of action, supported by mere

5   conclusory statements" that deliberately obscure the differences between corporate entities, products,

6   buyers, sellers, and time periods.  *See Ashcroft*, 2009 WL 1361536, at *13.

7        These differences matter.

8        As described in more detail below, the Complaints allege claims based on an expansive

9   product market, defined to include both cathode ray tubes ("Tubes"), which are components used in

10   manufacturing television sets and computer monitors, and the televisions and monitors themselves

11   ("Finished Products").[2]  The LGE Entities' involvement in these markets during the period relevant

12   to this litigation has been limited, both as to time and subject matter.  LGE is a South Korean

13   company that manufactures and sells Finished Products.  LGE formerly also made Tubes, but it

14   exited that business in 2001.  LGUSA and LGETT are LGE subsidiaries that have sold and marketed

15   Finished Products in the United States and Taiwan, respectively; neither entity has ever

16   manufactured Tubes or Finished Products, nor has LGETT ever sold or marketed *any* product in the

17   United States.

18        In 2001, LGE divested its entire Tube manufacturing business to a separate corporate entity,

19   LPD.  The Direct and Indirect Purchasers' Complaints treat the LGE Entities as if they were

20   interchangeable with LPD, apparently based on little more than the fact that LPD and the LGE

21   Entities share an initial consonant.  LPD is in fact a separate Dutch corporation (now in bankruptcy)

22   that makes and sells Tubes.[3]  LGE is an indirect shareholder of LPD and, more importantly, has been

23   one of LPD's largest customers, having bought Tubes from LPD to use as components in its

24   televisions and monitors.  There is no suggestion in the Complaints that LPD ever operated as

---

[2] The LGE Entities do not concede that plaintiffs have alleged any proper product market for antitrust purposes, and reserve all rights to contest the market allegations at the appropriate time.

[3] LPD also had separate counsel, Cleary Gottlieb Steen & Hamilton LLP, before LPD filed for bankruptcy.  *See* Docket Nos. 417, 422.

1   anything but an independent corporate entity or the LGE Entities exerted day-to-day operational

2   control over LPD's business.

3        The Complaints acknowledge none of these crucial distinctions.  Instead, plaintiffs, painting

4   with an exceedingly broad brush, plead generic allegations that blur together the LGE Entities, LPD,

5   and all the other defendants.  This failure to distinguish among parties is improper as a matter of law

6   and will make it exceedingly difficult and costly for the LGE Entities to defend against these

7   lawsuits.  Accordingly, this motion seeks dismissal of plaintiffs' claims or, in the alternative, to

8   compel further specificity in the allegations, as follows.

9        **First**, it is apparent on the face of the Complaints that the LGE Entities did not manufacture

10  or sell Tubes—the only part of the "CRT Products" market as to which any governmental

11  investigations are alleged to exist—after 2001, when LGE spun off that business to LPD.  In fact,

12  after that date LGE became a *buyer of Tubes*, and a victim of any price-fixing activity that might

13  have occurred.  Thus, even if any cartel in the Tube market existed (which the LGE Entities deny),

14  LGE withdrew from the market, and thus from the alleged conspiracy, in 2001.  To the extent

15  plaintiffs' claims against the LGE Entities concern the Tube market, they are time-barred unless

16  plaintiffs adequately allege (i) LGE's involvement in cartel activity before 2001, *and* that LGE

17  fraudulently concealed its involvement in the alleged conspiracy after that date; or (ii) LPD's

18  involvement in the alleged conspiracy after 2003, *and* that LPD's separate corporate identity should

19  be disregarded because it merely operated as LGE's alter ego or agent after 2001.  The Complaints

20  do none of these things.  The LGE Entities are therefore entitled to dismissal of all claims against

21  them.  *See infra* at 8-15.

22       **Second**, the Complaints lack sufficient individualized allegations against the LGE Entities to

23  give these defendants fair notice of the claims actually directed against them.  LGE, LGUSA, and

24  LGETT played very different roles in the alleged products market—pre-2001, LGE made Tubes and

25  Finished Products, and since 2001 has only made Finished Products and bought Tubes; LGUSA and

26  LGETT are sales and marketing organizations that have never made anything.  None of them are

27  part of the same corporate group as LPD.  The Complaints obscure the distinctions among the LGE

28  Entities, between the LGE Entities and LPD, and between the LGE Entities and the remaining

3

1   defendants.  When we parse out the allegations that are actually specific to the LGE Entities, the

2   inadequacy of their factual underpinnings is revealed.  These "bare assertions . . . amount to nothing

3   more than a 'formulaic recitation of the elements'" of a claim.  *Ashcroft*, 2009 WL 1361536, at *12.

4   Dismissal is therefore warranted.  *See infra* at 15-19.

5       **Third**, at a minimum, plaintiffs should be required to re-plead under Rule 12(e) to provide a

6   more definite statement of the basis for their claims.  The Complaints do not sufficiently apprise the

7   LGE Entities of the nature of their involvement in the claimed conspiracy, especially in the post-

8   2001 time period and with respect to Finished Products.  Without a more definite statement, the LGE

9   Entities will be subject to significant delay and expense before they can dispose of these

10  unmeritorious claims.  *See infra* at 19-21.

11  **III.    FACTUAL BACKGROUND**

12      **A.    The Product Markets**

13      The Direct Purchaser and Indirect Purchaser Complaints allege an unlikely conspiracy to fix

14  prices for "CRT Products."  DPC ¶ 1; IPC ¶ 1.  Plaintiffs group together four distinct products under

15  that umbrella term, which purports to encompass:  (1) color display tubes ("CDTs"), which are the

16  internal tubes used in color computer monitors; (2) color picture tubes ("CPTs"), which are the

17  internal tubes used in color televisions; (3) the finished products containing CDTs (*i.e.*, color

18  computer monitors); and (4) the finished products containing CPTs (*i.e.*, color televisions).  DPC

19  ¶¶ 1, 85, 103; IPC ¶¶ 13-15.  Cathode ray tubes, or "CRTs," comprise a more generic category that

20  includes both CDTs and CPTs.  DPC ¶ 103 ("CRTs can be subdivided into CDTs and CPTs"); IPC

21  ¶ 14.  The DPC also notes that CDTs and CPTs are not reasonably interchangeable.  DPC ¶ 103

22  (noting CDTs "typically yield a higher resolution image requiring more pixels than do CPTs").  This

23  motion refers to CDTs or CPTs as "Tubes," and to the computer monitors or televisions containing

24  CDTs or CPTs as "Finished Products."[4]

---

[4] Although the LGE Entities do not challenge the product market definition at this time, we note that it is inherently implausible.  Any person with a television and a computer monitor in his or her home recognizes that the two are not reasonably interchangeable.  *See Tessera, Inc. v. Micron Tech., Inc.*, 2005 WL 1661106, at *2 (E.D. Tex. July 14, 2005) ("If the alleged market is completely implausible, or the products claimed to be within the market are not reasonably interchangeable, the Court cannot accept the plaintiff's allegations of market membership.").

4

1    Despite this broad product definition, the only specific facts that might be argued to support

2    the existence of a conspiracy pertain to Tubes, not Finished Products.  For instance, the Complaints

3    allege the existence of an investigation by the Antitrust Division of the United States Department of

4    Justice ("DOJ") into the pricing of *CDTs and CPTs*, the two types of Tubes.  DPC ¶¶ 7, 126; IPC

5    ¶¶ 4, 203, 205.  The indictment referenced in the Complaints alleges a price-fixing conspiracy *only*

6    *in Tubes*.  Martin Decl., Ex. A at ¶¶ 2, 8, 13, 19 (asserting Section 1 criminal charges against an

7    individual for conspiracy to fix prices of CDTs and CPTs);[5] *see* DPC ¶¶ 127-33 (referencing various

8    alleged government investigations into price-fixing of CRTs, which are Tubes); IPC ¶¶ 207-08, 210-

9    213 (same).  There is no reference to any governmental investigation in any jurisdiction that involves

10   Finished Products.[6]

11       **B.    The LGE Entities Are Separate Companies; None of Them Makes Tubes.**

12       Although the Complaints improperly aggregate LGE, LGUSA, and LGETT under the catch-

13   all "LG Electronics" or "LG," DPC ¶ 45; IPC ¶ 53, they are in fact three separate entities, organized

14   in three different jurisdictions.  DPC ¶ 41 (LGE "is a South Korean entity"); ¶ 42 (LGUSA "is a

15   Delaware corporation"); ¶ 43 (LGETT "is a Taiwanese entity").  As noted above, they are involved

16   in different aspects of the Finished Products business.  LGE makes and sells Finished Products.  *See*

17   DPC ¶¶ 68, 120, 195; IPC ¶¶ 105, 128(k) (Samtel, a named defendant in both Complaints, "claims to

18   have supplied CRTs to Defendants LG Electronics . . . during at least part of the Class Period"); IPC

19   ¶ 197 (in June 2004, "LG Electronics raised the prices of its 15-inch and 17-inch CRT monitors in

20   India"); IPC ¶ 223 (noting that "LG" "manufacture[d] CRT televisions or computer monitors").

21       Prior to 2001, LGE also made Tubes.  As the Complaints acknowledge, LGE exited that

22   market in 2001, when it transferred the Tube business to LPD.  DPC ¶ 41; IPC ¶ 50.

23

24   [5] Exhibits cited in this motion are attached to the Declaration of Robert B. Martin III ("Martin
25   Decl."), attached to the LGE Entities' Request for Judicial Notice filed herewith.

26   [6] The Complaints also reference investigations into alleged collusion among manufacturers of thin-
     film transistor liquid crystal displays, or TFT-LCDs.  *See, e.g.*, DPC ¶¶ 122-24; IPC ¶¶ 218-21.
27   Such allegations have no relevance at all to the claims by purchasers of CRT Products and especially
     so as to the LGE Entities, which were never subpoenaed in the TFT-LCD criminal investigation and
28   have been dismissed from the civil litigation.

5

1    During most of the relevant time period, LGUSA and LGETT sold and marketed Finished

2    Products in the United States and Taiwan, respectively.  Neither entity ever manufactured anything,

3    and LGETT has never sold anything in the United States.

4    Thus, for the past eight years LGE purchased Tubes for assembly into Finished Products, and

5    LGUSA and LGETT purchased and sold Finished Products containing Tubes.  Were it not for the

6    Complaints' express exclusion of the LGE Entities from the class definition, these defendants would

7    be putative class members.  *See* DPC ¶ 85 (defining class as "[a]ll persons and entities who . . .

8    directly purchased a CRT Product," but excluding "Defendants").

9    **C.     LPD, Which Makes Tubes, Is Not Part of the LG Corporate Group.**

10   LPD is a separate company organized under the laws of the Netherlands.  DPC ¶¶ 41, 44, 51;

11   IPC ¶ 50.  The IPC names LPD as a defendant separate from the LGE Entities, IPC ¶ 61; the DPC

12   lumps LPD together with the LGE Entities, DPC ¶ 45.  LPD manufactures and sells Tubes.  *See*

13   DPC ¶ 112 (in 2002, LPD, Samsung, and Chunghwa had a 62% market share in "the CRT market");

14   DPC ¶ 113;  IPC ¶ 122 (in 2004, Samsung, LPD, MT Picture Display, and Chunghwa had a 78%

15   market share of "the global CRT market");  *see also* DPC ¶ 184 (in July 2005, LPD "ceased CRT

16   production" at one of its facilities in England).

17   The Direct Purchaser Complaint erroneously alleges that in December of 2008, LPD pleaded

18   guilty to price-fixing allegations with respect to TFT-LCD panels.  DPC ¶ 124.  In fact, LG Display

19   Co., Ltd., *not* LPD, pleaded guilty to those allegations.  Martin Decl., Ex. B at 1.  LG Display Co. is

20   an entirely separate company from LPD; it is not the "predecessor of" LPD.  *See* DPC ¶ 124.  The

21   two entities also manufacture separate products—LG Display manufactured TFT-LCD panels; LPD

22   manufactured Tubes.  Neither LG Display nor LPD are part of the LG corporate group.

23   **D.     Allegations Concerning the LGE Entities' Purported Involvement in the**
         **Conspiracy**

24

25   The allegations purporting to describe the LGE Entities' involvement in the alleged

26   conspiracy are limited, conclusory, do not distinguish between Tubes and Finished Products, do not

27   differentiate among the LGE Entities, and improperly attribute LPD's activities to them.  The DPC

28   alleges that "LG Electronics participated, through [LPD], [LGE], and LGETT, in more than a dozen

6

1    illegal bilateral and more than a hundred illegal group meetings from 1995 to 2006 in which

2    unlawful agreements as to, *inter alia*, price, output restrictions, and customer and market allocation

3    of CRT Products occurred. . . ."  DPC ¶ 160; *see also* DPC ¶ 161 (alleging that "LGEUSA was

4    represented at these meetings and was a party to the agreements entered at them"); IPC ¶ 169 (same).

5    The IPC similarly alleges that "[b]etween at least 1995 and 2001, Defendant LG, though LG

6    Electronics, Inc. and LGETT, participated [in] at least 100 Glass meetings at all levels.  After 2001,

7    LG participated in the CRT Product conspiracy through [LPD] . . . .  Through these discussions, LG

8    agreed on prices and supply levels for CRT Products."  IPC ¶ 168; *see also* IPC ¶ 148(b).  The

9    Complaints are silent as to when and where the alleged meetings occurred; which of the LGE

10   Entities attended; what employees attended for those companies; or what meetings culminated in

11   actual agreements.

12          In addition to the above, the IPC alleges that around 1995, Samsung, Philips, Daewoo, LG,

13   and Chunghwa began communicating regarding prices of "CRT Products"; between 1995 and 1996,

14   LG engaged in bilateral discussions with other parties; and at some unspecified time, LG "had a

15   relationship with Toshiba and was responsible for communicating CRT Product pricing agreements

16   to Toshiba."  IPC ¶¶ 2, 141-42, 165.  The Complaint does not specify which of the LGE Entities

17   engaged in the discussions or which products were involved.

18          Finally, the Complaints allege that in June 2004, LGE "raised the prices of its 15-inch and

19   17-inch CRT monitors in India.  This price hike was falsely attributed exclusively to a shortage of

20   glass needed to manufacture CRTs."  DPC ¶ 195; IPC ¶ 197.  However, the DPC attributes this

21   statement not to an employee of any named LGE Entity, but to a separate "*distributor*" in India.

22   DPC ¶ 209 (emphasis added).  The Complaint does not attempt to explain how a distributor's

23   statement can be attributed to LGE, or even why the statement is false.

24          The Complaints contain no other allegations concerning the LGE Entities.

25

26

27

28

7

IV.    **ARGUMENT**

A.    **LGE Withdrew from Any Alleged Conspiracy to Fix Prices of Tubes in 2001; the Statute of Limitations Therefore Bars Plaintiffs' Claims.[7]**

Plaintiffs' claims are subject to a four-year statute of limitations.  15 U.S.C. § 15b.  The initial complaints were filed on November 26, 2007.  Docket No. 1.  To be timely, plaintiffs' claims must have accrued no earlier than November 27, 2003.[8]

A defendant cannot be held liable for involvement in an antitrust conspiracy if the defendant withdraws from the conspiracy and the statute of limitations later runs for conduct occurring before the withdrawal.  *United States v. U.S. Gypsum Co.*, 438 U.S. 422, 464–65 (1978) ("Affirmative acts inconsistent with the object of the conspiracy and communicated in a manner reasonably calculated to reach co-conspirators . . . [are] sufficient to establish withdrawal . . . .");  *United States v. Nippon Paper Indus. Co., Ltd.*, 62 F. Supp. 2d 173, 190 (D. Mass. 1999) (defendant acquitted on criminal price-fixing charge since the court found the defendant withdrew from the conspiracy before the start date of the time period covered by the statute of limitations).

Even assuming there was any agreement involving LGE pre-2001, LGE withdrew from any such agreement pertaining to Tubes—the only product as to which any factual allegations at all are made—in 2001.[9]  LGE effected its withdrawal in two ways.  First, LGE transferred its "CRT business" (*i.e.*, Tubes) to LPD, a separate company.  DPC ¶ 50; IPC ¶¶ 41, 168 (after 2001, LGE no longer participated in the meetings of the alleged CRT conspiracy).  A cartel member that divests itself of a business involved in a price-fixing conspiracy "effectively withdraw[s] from the price-fixing conspiracy" upon the divestment of the business.  *Morton's Market, Inc. v. Gustafson's Dairy,*

---

[7] The LGE Entities do not concede the existence of or their involvement in any alleged conspiracy, but make this argument based on the allegations of the Complaints solely for purposes of this motion.

[8]  The time for LGETT is even later since it was not named in any action until the Consolidated Amended Complaints were filed on March 16, 2009.

[9] LGE's withdrawal from the alleged conspiracy also effected a withdrawal by LGUSA and LGETT, because the liability of those two companies are alleged to be linked to LGE's liability.  *See* DPC ¶¶ 42-43; IPC ¶¶ 51-52 (alleging LGE "dominated and controlled the finances, policies and affairs of LGEUSA [and LGETT] relating to the antitrust violations alleged in this complaint").

1    *Inc.*, 198 F.3d 823, 839 (11th Cir. 1999) ("With the sale of its dairy, Pet certainly 'retired' and totally

2    severed its ties to the milk price-fixing conspiracy.  It did nothing more to assist or participate in the

3    price-fixing activities of the other dairies. . . .  We conclude . . . that Pet did effectively withdraw

4    from the price-fixing conspiracy upon the sale of its dairy.").  It is undisputed that LGE's divestiture

5    of its Tubes business to LPD was publicly-known and announced at the time of the divestiture.  DPC

6    ¶ 41; IPC ¶¶ 50, 61.

7            Second, after July 2001, LGE became a *buyer*, not a seller, of Tubes.  *See* DPC ¶¶ 68, 120,

8    195; IPC ¶¶ 105, 128(k), 168, 197, 223.  LGE's participation in the market as a Tubes buyer

9    constitutes a "resumption of competitive behavior" and confirms that it could not have plausibly

10   been engaged in any conspiracy to fix prices in that market.  *See Nippon Paper*, 62 F. Supp. 2d at

11   190 (noting that *Gypsum* held "that 'resumption of competitive behavior . . . would be sufficient to

12   communicate withdrawal or general abandonment of a price-fixing conspiracy" (quoting *Gypsum*,

13   438 U.S. at 464–65)).

14           LGE's 2001 withdrawal triggered the statute of limitations, which expired in 2005.[10]  *See*

15   *Morton's Market*, 198 F.3d at 837 ("The statute of limitations begins to run upon the conspirator's

16   withdrawal from the conspiracy."); *United States v. Borelli*, 336 F.2d 376, 388 (2d Cir. 1964) (cartel

17   member who withdraws from cartel is no longer member of cartel and incurs no obligations or

18   liabilities from subsequent acts of cartel).  Plaintiffs' claims against the LGE Entities are therefore

19   time-barred.

20                       **1.      Plaintiffs' Allegations Are Insufficient to Support a Fraudulent**
                                 **Concealment Theory.**
21

22           In an effort to save their claims as to the LGE Entities, plaintiffs include various allegations

23   under the rubric of "Fraudulent Concealment" in an unsuccessful attempt to toll the statute of

24   limitations.  DPC ¶¶ 200-12; IPC ¶¶ 288-91.  To invoke the fraudulent concealment doctrine,

_____

25   [10] The Complaints fail to include any factual allegations whatsoever in support of their claim that
     LGE "never effectively withdrew from this conspiracy."  DPC ¶ 160; IPC ¶ 168.  The Court should
26   therefore disregard that conclusory statement.  *See Ashcroft*, 2009 WL 1361536, at *13 (courts
     should disregard "pleadings that . . . are no more than conclusions . . . ."); *Twombly*, 550 U.S. at 555
27   ("on a motion to dismiss, courts are not bound to accept as true a legal conclusion couched as a
     factual allegation" (quotation marks omitted)).
28

1   plaintiffs would have to plead that: (1) the LGE Entities actively misled the plaintiffs as to their role

2   in the alleged conspiracy after their withdrawal; (2) plaintiffs "had neither actual nor constructive

3   knowledge of the facts constituting their claim for relief"; and (3) plaintiffs were diligent in trying to

4   discover the pertinent facts. *In re Rubber Chems. Antitrust Litig.*, 504 F. Supp. 2d 777, 787-88 (N.D.

5   Cal 2007).

6           Fraudulent concealment must be pleaded with particularity pursuant to Federal Rule of Civil

7   Procedure 9(b), and the burden of pleading and proving fraudulent concealment lies upon plaintiffs.

8   *Conmar Corp. v. Mitsui & Co. (USA) Inc.*, 858 F.2d 499, 502 (9th Cir. 1988); *Suckow Borax Mines*

9   *Consolid., Inc. v. Borax Consolid., Ltd.*, 185 F.2d 196, 209 (9th Cir. 1950). That means plaintiffs

10  must plead that *each individual defendant* actively misled the plaintiffs. Absent that, plaintiffs'

11  claims of fraudulent concealment fail for lack of particularity. *See Metz v. Unizan Bank*, 416 F.

12  Supp. 2d 568, 579 (N.D. Ohio 2006) ("The Plaintiff must affirmatively plead facts supporting a

13  claim for fraudulent concealment *against each specific Defendant* who allegedly participated in the

14  concealment in order to state a claim against that Defendant which would survive an otherwise

15  expired statute of limitations." (emphasis added)); *Chubb & Son, Inc. v. Kelleher*, 1998 U.S. Dist.

16  LEXIS 22542, at *21 (E.D.N.Y. Feb. 27, 1998) ("a plaintiff must plead fraudulent concealment as to

17  *each individual defendant* and specify which defendant committed the alleged acts of concealment."

18  (emphasis added)); *see also In re Bath & Kitchen Fixtures Antitrust Litig.*, 2006 U.S. Dist. LEXIS

19  49576, at *24 (E.D. Pa. July 19, 2006) (criticizing the plaintiffs' allegations of fraudulent

20  concealment by "using different defendants and products interchangeably" rather than making

21  individualized allegations against each defendant); *In re Milk Prods. Antitrust Litig.*, 84 F. Supp. 2d

22  1016, 1019 (D. Minn. 1997) (requiring individualized allegations for each defendant); *Moreco*

23  *Energy, Inc. v. Penberthy-Houdaille, Inc.*, 1988 U.S. Dist. LEXIS 11850, at *12 (N.D. Ill. Oct. 21,

24  1988) ("when a complaint contains allegations of fraudulent concealment, it must reasonably notify

25  *each defendant* of the part he plays in the fraudulent scheme." (emphasis added)).

26          The Complaints do not meet this standard.

27

28

### a.    Plaintiffs Do Not Adequately Allege That the LGE Entities "Actively Misled" Them.

The fraudulent concealment allegations as to all of the defendants (including the LGE Entities) are wholly conclusory and lack the requisite particularity under Rule 9(b).  Of the 291 paragraphs in the IPC, *four* concern fraudulent concealment, and they do not mention any individual defendant, including the LGE Entities.  IPC ¶¶ 288-91.  Such allegations would not even meet pleading standards under *Twombly*, much less the heightened standards required under Rule 9(b).

The DPC offers little more.  "LG Electronics," among others, is said to have increased the price of its "CRT Products" in 2004 because of "a shortage of glass shells use[d] for manufacturing CRT monitors."  DPC ¶ 209.  The same paragraph references a statement, not by an LG Entity, but by a separate "distributor in India," who attributed the price increase to a glass shortage.  DPC ¶ 209.  And finally, "LG Electronics" allegedly "periodically issued press statements falsely asserting that CRT prices were being driven lower by intense competition."[11]  DPC ¶ 210.  But the Complaint fails to allege why these statements were false, that plaintiffs saw the statements or relied on them, or, in the case of the distributor's statement, why the communication should even be attributed to any of the LGE Entities.  Such details are required to satisfy the stringent pleading requirements of Rule 9(b), and in the absence of factual detail, the Complaints' conclusory allegations must fail.  *See Rutledge v. Boston Woven Hose and Rubber Co.*, 576 F.2d 248, 250 (9th Cir. 1978) ("[Plaintiff] cannot rely upon conclusory statements to avoid the bar of limitations.").

Instead of the vacuous allegations proffered by plaintiffs, the Complaints "must allege *facts* showing affirmative conduct upon the part of the defendant which would, under the circumstances of the case, lead a reasonable person to believe that he did not have a claim for relief.  Silence or passive conduct of the defendant is not deemed fraudulent . . . ."  *Rutledge*, 576 F.2d at 250; *see Conmar*, 858 F.2d at 505.  As noted, there are simply no specific allegations showing any affirmative conduct by any of the LGE Entities to conceal the alleged conspiracy.  Nor can plaintiffs

---

[11] It is hard to see how a statement about decreasing CRT prices gives rise to any inference of a price-fixing conspiracy.

1    fall back on their "self-concealing" allegation.  DPC ¶ 203 ("Defendants' price-fixing conspiracy

2    was inherently self-concealing.").  Such an allegation is insufficient in the Ninth Circuit as a matter

3    of law.  *Conmar*, 858 F.2d at 505 ("[Plaintiff] claims that [the defendant's] acts constitute fraudulent

4    concealment because they were by nature self-concealing.  We require more.  A plaintiff alleging

5    fraudulent concealment must establish that its failure to have notice of its claim was the result of

6    affirmative conduct by the defendant.").

7                    **b.      The Complaints Show That, if Any Conspiracy Existed, Plaintiffs
                              Must Have Had Constructive Knowledge of It.**
8

9            The Complaints inconsistently allege both fraudulent concealment and an antitrust

10   conspiracy with long-term public manifestations.  For example, plaintiffs aver that "Defendants'

11   collusion is evidenced by unusual *publicly-known* price movements in the CRT market"; those price

12   movements date back to at least 1990.  DPC ¶ 188 (emphasis added).  Further irregular price

13   movements in the "CRT market" are alleged to have occurred in 1992, 1996, 1997, 1999, and 2000.

14   DPC ¶¶ 188-90, 193-94; IPC ¶¶ 192-96.  On one hand, plaintiffs ask this Court to determine that

15   such allegations will support a plausible conspiracy under *Twombly*.  On the other hand, plaintiffs

16   contend such publicly-evidenced price increases support a particularized showing that plaintiffs were

17   misled and did not know about the conspiracy.  Plaintiffs cannot have it both ways.

18           "[W]hen the claim is one of concealment and the very facts allegedly concealed are available

19   in public records, the argument that the plaintiffs should, as a matter of law, be held to constructive

20   knowledge of their cause of action is much stronger."  *Conmar*, 858 F.2d at 505; *see In re Compact

21   Disc Minimum Advertised Price Antitrust Litig.*, 138 F. Supp. 2d 25, 29 (D. Me. 2001) (finding the

22   complaint's allegations defeated a claim of fraudulent concealment where the complaint alleged

23   news reports concerning the antitrust violations; such reports "should have aroused the plaintiff's

24   suspicions").  Because the Complaints on their face allege that irregular price movements between

25   ten and 15 years ago support a finding of antitrust conspiracy, this Court should hold as a matter of

26   law that plaintiffs had constructive knowledge of their claims long before 2003.[12]

27   _____

28   [12] The LGE Entities do not agree that the alleged irregular pricing movements are sufficient to plead
     a plausible conspiracy pursuant to *Twombly*.  That does not alter the fact that plaintiffs have pled

                                                                              *(Footnote continued)*

**LGE ENTITIES' MOTION TO DISMISS DIRECT PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT
AND INDIRECT PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT – CASE NO.: 3:07-CV-5944 SC**

### 2. The Complaint Lacks Any Specific Allegations Supporting an Alter Ego or Agency Theory.

In an attempt to remedy the foregoing deficiencies, plaintiffs also claim in conclusory fashion that the LGE Entities may be liable for the alleged acts of LPD pursuant to an alter ego or agency theory.  This theory is defective as a matter of law, and also unsupported by any alleged facts.

Generally, a parent company may only be found liable for acts of a subsidiary company:  "(1) where the circumstances of the organization of the two entities are such that the corporate form should be disregarded (often referred to as 'alter ego' liability); (2) where the subsidiary acts as an agent of the corporation; or (3) where the parent aids, abets or ratifies the acts of the subsidiary corporation."  *E. & J. Gallo Winery v. Encana Energy Services, Inc.*, 2008 U.S. Dist. LEXIS 46927, at *13 (E.D. Cal. May 27, 2008).  Courts emphasize that there "must be such a unity of interest and ownership" between the parent corporation and subsidiary "that the separate personalities of the [parent and subsidiary] do not in reality exist . . . [and] there must be an inequitable result if the acts in question are treated as those of the [parent] alone."[13]  *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1115 (C.D. Cal. 2003); *see Katzir's Floor & Home Design, Inc. v. M-MLS.COM*, 394 F.3d 1143, 1149 (9th Cir. 2004) ("The injustice that allows a corporate veil to be pierced is not a

---

themselves into a corner.  If the publicly available information alleged by plaintiffs is sufficient to allege a plausible conspiracy under *Twombly*, then that information must also have been sufficient to place plaintiffs upon constructive notice before November 2003 (March 2005 for LGETT), the beginning of the limitations period as to the LGE Entities.  Plaintiffs' claims against the LGE Entities are therefore time-barred.

[13] The law is explicit that alter ego liability *does not apply* even where a parent and subsidiary companies share officers and directors, the parent makes policy or pricing decisions, or the parent is involved in other management decisions for the subsidiary.  *United States v. Bestfoods*, 524 U.S. 51, 69-70 (1998); *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. C-02-1486 PJH, slip op. at 8–9 (N.D. Cal. Feb. 20, 2007); *Gallo*, 2008 U.S. Dist. LEXIS 46927, at *6.  Instead, plaintiffs "would have to show that, despite the general presumption to the contrary, the officers and directors [of the parent] were acting in their capacities as [parental] officers and directors, and not as [subsidiary] officers and directors, when they committed those acts."  *Bestfoods*, 524 U.S. at 69–70.  Similarly, under an agency theory, plaintiffs would have to allege facts demonstrating "(1) there was a manifestation by [the LGE Entities] that [LPD] would act on [the LGE Entities'] behalf; (2) [LPD] accepted or consented to so act; and (3) that it was understood that [the LGE Entities'] would be in control of [LPD's] undertaking on [the LGE Entities'] behalf."  *E. & J. Gallo Winery*, 2008 U.S. Dist. LEXIS 46927, at *16; *see Sun Microsystems Inc. v. Hynix Semiconductor Inc.*, 2009 WL 909766, at *18 (N.D. Cal. Mar. 31, 2009).  The Complaint contains no such allegations as to the LGE Entities and LPD.

---

13

1  general notion of injustice; rather, it is the injustice that results only when corporate separateness is

2  illusory.").

3  Formal corporate separation among defendants is not lightly disregarded. *E. & J. Gallo*

4  *Winery*, 2008 U.S. Dist. LEXIS 46927, at *16 ("The independence of a subsidiary from the parent

5  corporation is to be presumed." (citing *California v. NRG Energy, Inc.*, 391 F.3d 1011, 1025 (9th

6  Cir. 2004), *rev'd on other grounds*, *Powerex Corp. v. Reliant Energy Servs., Inc.*, 551 U.S. 224

7  (2007))).  Just as a complaint must back up conspiracy allegations with sufficient facts, so too must

8  it buttress claims of alter ego or agency liability with sufficient facts to plausibly support such veil

9  piercing or agency.  *Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001) (holding veil-piercing

10  allegations require facts showing *absolute* control by the parent over the subsidiary); *Diario El Pais,*

11  *S.L. v. Nielsen Co.*, 2008 U.S. Dist. LEXIS 92987 at *15–16 (S.D.N.Y. Nov. 6, 2008) (veil-piercing

12  allegations must be pleaded with specificity); *Dolter v. Keene's Transfer, Inc.*, 2008 WL 3010062, at

13  *3 (S.D. Ill. Aug. 5, 2008) ("In the absence of any supporting facts plausibly suggesting an agency

14  relationship, the plaintiff's assertion of such a relationship does not rise above the level of

15  speculation" and is insufficient under *Twombly*); *Am. Nat'l Red Cross v. United Way Cal. Capital*

16  *Region*, 2007 WL 4522967, at *10 (E.D. Cal. Dec. 19, 2007) ("The FAC does not, however, allege

17  one fact that suggests such an agency relationship.  This bare legal conclusion is not sufficient to

18  withstand a motion to dismiss."); *Neilson*, 290 F. Supp. 2d at 1116 ("Conclusory allegations of 'alter

19  ego' status are insufficient to state a claim.").

20  The Complaints do not contain *any* factual allegations that might suggest that LPD acted as

21  the alter ego or agent of the LGE Entities.  Both Complaints concede that LPD became "an

22  independent company" in 2007, DPC ¶ 41; IPC ¶ 61, yet plaintiffs offer no explanation as to why

23  LPD was not independent earlier, when it was formed in 2001 as a separate Dutch corporation.

24  Further, despite conclusory allegations that LGE "dominated and controlled the finances, policies

25  and affairs of" LGUSA and LGETT, DPC ¶¶ 42-43, such an allegation is markedly absent regarding

26  LPD.  DPC ¶ 44.  And, even if such conclusory allegations were made, they would be inadequate to

27  support plaintiffs' alter ego or agency theories.

28

14

1    Thus, plaintiffs seem to assume that the LGE Entities should be liable for LPD's alleged

2    conduct merely based on their *ipse dixit* allegations that the LGE Entities acted "through [LPD]."[14]

3    Defendants respectfully submit that the Court should reject this theory.

4    **B.    The Complaints Fail to Plead Adequately That the LGE Entities Participated in**
     **the Alleged Conspiracy.**

5

6    Even if the statute of limitations did not bar plaintiffs' claims against the LGE Entities, the

7    Court should still dismiss the Complaints because they fail to plead adequately that any of these

8    defendants joined or participated in the alleged conspiracy.   As the U.S. Supreme Court just

9    reiterated, because the Complaints merely recite conclusions unbuttressed by any facts specific to the

10   LGE Entities, they "are not entitled to the assumption of truth" and should be rejected.  *See Ashcroft*,

11   2009 WL 1361536, at *13.

12   **1.    The LGE Entities and LPD Are Separate Companies.**

13

14   As noted above, LGE, LGUSA, and LGETT are separate companies, and none of them are

15   part of the same corporate group as LPD.[15]  DPC ¶¶ 41-44; IPC ¶ 50.  Thus, LGE, LGUSA, and

16   LGETT cannot be held responsible for the actions of one another, nor can any of the LGE Entities be

17   held liable for the actions of LPD.  "It is a general principle of corporate law deeply ingrained in our

18   economic and legal systems that a parent corporation (so-called because of control through

19   ─────────────────────────────

20   [14] The Complaints also allege, in conclusory fashion, that "[w]hen Plaintiffs refer to a corporate
     family or companies by a single name in their allegations of participation in the conspiracy, it is to
     be understood that the Plaintiffs are alleging that one or more employees or agents of entities within
21   the corporate family engaged in conspiratorial meetings on behalf of every company in that family."
     DPC ¶ 154; IPC ¶ 188.  This allegation is not only contrary to settled authority holding that a parent
22   company cannot be held liable for the actions of a subsidiary, but is also wholly insufficient in light
     of the *Twombly* pleading standards.  Moreover, there are no factual allegations showing LPD is in
23   the same "corporate family" as the LGE Entities.

24   [15] While the Complaints characterize LPD as a "joint venture" of LGE and Philips, DPC ¶¶ 41, 51,
     113; IPC ¶¶ 50, 54, 61, there is nothing pernicious or inherently unlawful about such an endeavor.
25   *See Texaco v. Dagher*, 547 U.S. 1, 6–7 (2006) ("joint ventures are regarded as a single firm
     competing with other sellers in the market"; joint venture between competitors does not constitute
26   *per se* violation of Section 1); *see also Copperweld Corp. v. Independence Tube Corp.*, 467 U.S.
     752, 768 (1984) ("Other combinations, such as . . . joint ventures . . . hold the promise of increasing
27   a firm's efficiency and enabling it to compete more efficiently.").  Thus, the Court should disregard
     any suggestion that LGE's participation in a joint venture "facilitated Defendants' ability to
28   implement the conspiracy."  DPC ¶¶ 114, 118; *see* IPC ¶ 128(b), (i).

15

1    ownership of another corporation's stock) is not liable for the acts of its subsidiaries." *Bestfoods*,

2    524 U.S. at 61; *Sherman v. British Leyland Motors, Ltd.*, 601 F.2d 429, 441 (9th Cir. 1979) (holding

3    the "relationship of parent and subsidiary" by itself "is not enough" to attach antitrust liability to a

4    parent company due to the actions of its subsidiary); *Arnold Chevrolet LLC v. Tribune Co.*, 418 F.

5    Supp. 2d 172, 178 (E.D.N.Y. 2006) ("in the antitrust context, courts have held that absent allegations

6    of anticompetitive conduct by the parent, there is no basis for holding a parent liable for the alleged

7    antitrust violation of its subsidiary").

8         In order to successfully plead claims against LGE, LGUSA, and LGETT, the Complaints

9    must allege facts showing that each, or any, of them joined the conspiracy and played some role in it.

10   In *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109 (N.D. Cal. 2008), plaintiffs

11   alleged a price-fixing conspiracy as to TFT-LCD panels, components used in making LCD

12   televisions and monitors.  On motions to dismiss, some defendants argued the complaint was

13   deficient because it "does not contain individualized allegations about each NEC or Hitachi

14   corporate entity, and instead generally refers to 'NEC' or 'Hitachi.'  Similarly, IPS Alpha contends

15   that the complaint's general allegations as to all defendants or all Japanese defendants . . . fail to

16   establish a plausible conspiracy claim against IPS Alpha."  *Id.* at 1116–17.  The Court agreed and

17   dismissed the complaint:

18              the complaint must allege that *each individual defendant* joined the
                conspiracy and played some role in it because, at the heart of an
19              antitrust conspiracy is an agreement and a conscious decision by each
                defendant to join it.  The Court agrees that general allegations as to all
20              defendants, to 'Japanese defendants,' or to a single corporate entity
                such as 'Hitachi' is insufficient to put specific defendants on notice of
21              the claims against them.

22   *Id.* at 1117 (emphasis added; citations and quotation marks omitted); *see also Mountain View*

23   *Pharmacy v. Abbott Labs.*, 630 F.2d 1383, 1388 (10th Cir. 1980) ("A blanket statement that twenty-

24   eight defendants have conspired to fix prices on drug sales to thirteen plaintiffs does not provide

25   adequate notice for responsive pleading."); *Alaska Airlines, Inc. v. Carey*, 2008 WL 2725796, at *7

26   (W.D. Wash. July 11, 2008) ("Conclusory allegations without any specification of any particular

27   activities by any particular defendant do not supply facts adequate to show illegality. . . .  A

28

16

1    complaint alleging an antitrust conspiracy must plead that each individual defendant joined the

2    conspiracy and played some role in it."); *Brennan v. Concord EFS, Inc.*, 369 F. Supp. 2d 1127, 1136

3    (N.D. Cal. 2005) (dismissing complaint against certain defendants because it failed to plead

4    allegations "specifically connecting [those defendants] to the alleged conspiracy"); *In re Sagent*

5    *Tech., Inc. Deriv. Litig.*, 278 F. Supp. 2d 1979, 1094 (N.D. Cal. 2003) ("[T]he complaint fails to

6    state a claim because plaintiffs do not indicate which individual defendant or defendants were

7    responsible for which alleged wrongful act.").

8         As Judge Illston noted in *TFT-LCD*, the requirement of factual allegations establishing each

9    defendants' involvement in the conspiracy extends to related entities; plaintiffs much allege facts

10   showing that each separate entity (regardless of how related) joined and participated in the

11   conspiracy.  *TFT-LCD*, 586 F. Supp. 2d at 1117; *see Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042,

12   1050 (9th Cir. 2008) (holding that district court could reject on motion to dismiss conclusory

13   allegations that two related entities conspired with other entities, when the allegations lacked "any

14   evidentiary facts alleged to support such conclusion").

15        As explained below, the Complaints do not even come close to satisfying this standard.

16                **2.    The Complaints Lack Adequate Individualized Allegations to Show the
                          LGE Entities Joined or Participated in the Conspiracy.**

17

18        There are no allegations setting forth facts—as opposed to conclusions—that the LGE

19   Entities joined and participated in the alleged conspiracy.[16]  Although both Complaints allege

20   generically that LGE, LGUSA, or LGETT participated in over a hundred meetings from 1995

21   through 2006, DPC ¶¶ 160, 161; IPC ¶¶ 2, 141–42, 168-69, those allegations provide no specifics as

22   to when or where the meetings occurred; which of LGE, LGUSA, or LGETT attended; which

23   employees attended for their respective company; or what agreements were supposedly reached at

24   such meetings.  Even more improper are the allegations that LPD's attendance should be attributed

25   ───────────────────
     [16] The Complaints contain virtually no allegations against LGUSA or LGETT, other than identifying
26   them as defendants.  DPC ¶¶ 42-43; IPC ¶¶ 51-52.  For those reasons alone, the Complaints should
     be dismissed against both of these entities.  *See Jung v. Ass'n of Am. Med. Colls.*, 300 F. Supp. 2d
27   119, 163 (D.D.C. 2004) ("Plaintiffs cannot escape their burden of alleging that each defendant
     participated in or agreed to join the conspiracy by using the term 'defendants' to apply to numerous
28   parties without any specific allegations as to [the moving defendant].").

to the LGE Entities, DPC ¶ 164; IPC ¶ 170, and that LPD—which did not exist until 2001—attended

meetings as early as 1995, DPC ¶ 160.  Similarly deficient allegations were rejected in *Twombly* as

insufficient to provide fair notice under Federal Rule of Civil Procedure 8:

> Apart from identifying a 7-year span in which the § 1 violations were
> supposed to have occurred . . . , the pleadings mentioned no specific
> time, place, or person involved in the alleged conspiracies. . . .  [T]he
> complaint here furnishes no clue as to which of the four [defendants]
> (much less which of their employees) supposedly agreed, or when and
> where the illicit agreement took place. . . .  [A] defendant seeking to
> respond to plaintiffs' conclusory allegations in the § 1 context would
> have little idea where to begin.

550 U.S. at 565 n.10; *see also Ashcroft*, 2009 WL 1361536, at *13 ("Rule 8 marks a notable and

generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not

unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.")

        The Complaints' remaining conspiracy allegations fare no better.  The suggestion that the

LGE Entities conveyed information to Toshiba, IPC ¶ 165, does not hold water; again, the "who, did

what, to whom (or with whom), where, and when" is missing.  *See Kendall*, 518 F.3d at 1048.  The

Complaints also allege that in June 2004, "LG Electronics" raised prices on certain of its CRT

monitors in India, and that this price hike was "falsely" attributed to a shortage of glass needed to

manufacture CRTS.  DPC ¶ 195; *see* IPC ¶ 197.  The allegation also fails.  The IPC does not

attribute the supposed statement to any specific LG Entity.  The DPC attributes it to an "LG

Electronics *distributor* in India," DPC ¶ 209 (emphasis added), but fails to explain how a statement

by a distributor can create liability by the LGE Entities.  And the Complaints provide no explanation

*why* the statement was false.[17]  *See Kendall*, 518 F.3d at 1048.

---

[17] Even if the statement could be linked to the LGE Entities, the allegation on its face states that the price increase only occurred "in India."  DPC ¶ 195.  This Court does not have subject matter jurisdiction over claims by Indian consumers purchasing allegedly price-fixed products in India.  *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 546 F.3d 981, 989 (9th Cir. 2008) (noting a "foreign consumer that made its purchases entirely outside of the United States . . . has recourse under its own country's antitrust laws . . . [but its] indirectly linked foreign injury is not of the type that Congress intended to bring within the Sherman Act's reach when it enacted the" Foreign Trade Antitrust Improvements Act ("FTAIA")); *see F. Hoffmann-La Roche Ltd. v. Empagran S.A.*, 542 U.S. 155, 159 (2004) (holding U.S. courts do not have subject matter jurisdiction over wholly foreign transactions pursuant to the FTAIA).

1    The Complaints also allege that "LG Electronics" was a member of various trade
2    associations and participated in trade events.  DPC ¶¶ 176-78; IPC ¶ 124.  Such allegations of trade
3    association membership, without more, do not make out any antitrust violation.  *Twombly*, 550 U.S.
4    at 567 n.12 (rejecting allegations of membership "to various trade associations" as supporting
5    "allegations of conspiracy"); *In re Citric Acid Litig.*, 191 F.3d 1090, 1098 (9th Cir. 1999)
6    ("Gathering information about pricing and competition in the industry is standard fare for trade
7    associations.  If we allowed conspiracy to be inferred from such activities alone, we would have to
8    allow an inference of conspiracy whenever a trade association took almost any action."); *In re
9    Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1023 (N.D. Cal. 2007)
10   ("Attendance at industry trade shows and events is presumed legitimate and is not a basis from
11   which to infer a conspiracy, without more."); *In re Late Fee and Over-Limit Fee Litig.*, 528 F. Supp.
12   2d 953, 963 (N.D. Cal. 2007) (noting *Twombly* and "other courts have consistently refused to infer
13   the existence of a conspiracy" from membership in joint networks and trade associations).

14   Finally, the Complaints note that certain defendants have been the subject of investigations
15   by the DOJ into the CRT industry.  DPC ¶¶ 7, 122, 123-25, 133; IPC ¶¶ 4, 210, 213, 218-19, 221.
16   Not one of those allegations, however, identifies LGE, LGUSA, or LGETT as a target of any
17   investigation.  Regardless, courts have repeatedly rejected the notion that government investigations
18   lend any legitimacy to allegations of conspiracy.  *See, e.g., In re Graphics Processing Units Antitrust
19   Litig.*, 527 F. Supp. 2d at 1024 ("plaintiffs point out that the Antitrust Division of the Department of
20   Justice has served defendants with subpoenas and is conducting a grand jury investigation.  The
21   investigation, however, carries no weight in pleading an antitrust conspiracy claim."); *In re Static
22   Random Access Memory (SRAM) Antitrust Litig.*, 580 F. Supp. 2d 896, 903 (N.D. Cal. 2008) (same).

23   Accordingly, absent sufficient factual allegations that LGE, LGUSA, or LGETT individually
24   participated in the alleged conspiracy, the Complaints against them must be dismissed.

25   **C.    Alternatively, the LGE Entities Are Entitled to a More Definite Statement.**

26   Alternatively, should the Court determine that the motion to dismiss under Rule 12(b)(6)
27   should not be granted, LGE, LGUSA, and LGETT respectfully request the Court order plaintiffs to
28   provide a more definite statement under Rule 12(e), which provides that "[a] party may move for a

19

1    more definite statement of a pleading to which a responsive pleading is allowed but which is so

2    vague or ambiguous that the party cannot reasonably prepare a response."

3           Here, because of the multiple deficiencies identified above, the Complaints do not provide

4    sufficient notice to the LGE Entities as to their involvement, if any, in the alleged conspiracy,

5    especially as to the post-2001 time frame and with respect to Finished Products.  The inadequacy of

6    the pleadings will prevent these defendants from meaningfully answering the charges in the

7    Complaints.  Although such deficiencies warrant dismissal of the Complaints, at the very least,

8    plaintiffs should be compelled to replead their allegations to provide fair notice of the charges

9    against each of LGE, LGUSA, and LGETT.  *See Kendall*, 518 F.3d at 1047 ("[T]o allege an

10   agreement between antitrust co-conspirators, the complaint must allege facts such as a 'specific time,

11   place, or person involved in the alleged conspiracies' to give a defendant seeking to respond . . . an

12   idea of where to begin." (quoting *Twombly*, 550 U.S. at 565 n.10)); *Mountain View Pharmacy*, 630

13   F.2d at 1388 ("A blanket statement that twenty-eight defendants have conspired to fix prices on drug

14   sales to thirteen plaintiffs does not provide adequate notice for responsive pleading."); *TFT-LCD*,

15   586 F. Supp. 2d at 1117 ("The Court agrees that general allegations as to all defendants, to 'Japanese

16   defendants,' or to a single corporate entity such as 'Hitachi' is insufficient to put specific defendants

17   on notice of the claims against them."); *In re Sagent Tech, Inc. Deriv. Litig.*, 278 F. Supp. 2d at

18   1094-1095 (dismissing complaint that "lump[ed] together thirteen individual defendants, where only

19   three of the individuals was alleged to have been present for the entire period of the events alleged in

20   the complaint" because it failed "to give 'fair notice' of the claim to those defendants.").

21          Furthermore, as a practical matter, without a more definite statement, the scope of discovery

22   in the litigation will be unclear and overbroad, causing significant delay and expense to the parties,

23   and inefficient utilization of the Court's time, as the parties further litigate those issues.  *Twombly*,

24   550 U.S. at 558, 565 n.10 (noting that "a defendant seeking to respond to plaintiffs' conclusory

25   allegations in the § 1 context would have little idea where to begin" and "the potentially enormous

26   expense of discovery"); *Kendall*, 518 F.3d at 1047 ("A bare allegation of a conspiracy is almost

27   impossible to defend against, particularly where the defendants are large institutions with hundreds

28   of employees entering into contracts and agreements daily.").  This concern should be particularly

20

1   acute here, considering the breadth of plaintiffs' allegations.  A similarly overbroad antitrust claim

2   was presented in *Twombly*, and the Court took special notice of the likelihood of massive discovery

3   abuse that could result:

4   > [I]t is one thing to be cautious before dismissing an antitrust complaint
   > in advance of discovery, but quite another to forget that proceeding to

5   > antitrust discovery can be expensive. . . .  [A] district court must retain
   > the power to insist upon some specificity in pleading before allowing a

6   > potentially massive factual controversy to proceed.  That potential
   > expense is obvious enough in the present case: plaintiffs represent a

7   > putative class of at least 90 percent of all subscribers to local telephone
   > or high-speed Internet service in the continental United States, in an

8   > action against America's largest telecommunications firms (with many
   > thousands of employees generating reams and gigabytes of business

9   > records) for unspecified (if any) instances of antitrust violations that
   > allegedly occurred over a period of seven years.

10

11   550 U.S. at 558–59 (alterations, citations, and quotation marks omitted); *see also Kendall*, 518 F.3d

12   at 1047 ("discovery in antitrust cases frequently causes substantial expenditures and gives the

13   plaintiff the opportunity to extort large settlements even where he does not have much of a case.").

14      Thus, rather than confronting these disputes later in discovery, the LGE Entities respectfully

15   request that the Court order plaintiffs to clarify these issues now with a more definite statement.

16   **V.      CONCLUSION**

17      For all of the reasons expressed above, LGE, LGUSA, and LGETT respectfully request that

18   the Court dismiss the Complaints without leave to amend or, in the alternative, require plaintiffs to

19   provide a more definite statement of their claims.

20

21   Respectfully submitted,

22   Dated:  May 18, 2009                         SIDLEY AUSTIN LLP

23

24                                               By: /s/ Samuel R. Miller

25                                                   Samuel R. Miller
                                                    Attorneys For Defendants

26                                                   LG ELECTRONICS, INC.; LG
                                                    ELECTRONICS USA, INC.; and

27                                                   LG ELECTRONICS TAIWAN TAIPEI CO.,
                                                    LTD.

28

21

SF1 1528683v.1