# EXHIBIT 2

## Chiu, Michelle Park

**From:** Green, Thomas R.
**Sent:** Friday, May 01, 2009 8:12 AM
**To:** 'Lauren Russell'; zirpoli@saveri.com
**Cc:** Chiu, Michelle Park; Roger, Kent M.
**Subject:** RE: In re Cathode Ray Tube Antitrust Litigation
**Attachments:** (21098096)_(1)_Share Transfer Agreement re_ Shenzhen SEG-Hitachi.PDF

Hi Lauren,

I am happy to send you guys the translation we have, and have attached it to this email. Please understand this is a rough translation and was not done by a professional or certified translator. I cannot warrant its content or accuracy. You will also see, of course, that neither the signatures nor the parties' initials in the lower corner of each page of the document, both of which reflect that the document was in its final executed form, are on the translated version.

Tom

**Thomas R. Green**
Morgan, Lewis & Bockius LLP
One Market, Spear Street Tower | San Francisco, CA 94105-1126
Direct: 415.442.1485 | Main: 415.442.1000 | Fax: 415.442.1001
www.morganlewis.com
Assistant: Linda Buda | 415.442.1316 | lbuda@morganlewis.com

**From:** Lauren Russell [mailto:laurenrussell@tatp.com]
**Sent:** Thursday, April 30, 2009 5:31 PM
**To:** Brennan, Monica R.; zirpoli@saveri.com
**Cc:** Green, Thomas R.
**Subject:** RE: In re Cathode Ray Tube Antitrust Litigation

Thank you for getting this to us Tom.

One more thing, I know I said that we have access to a Japanese translator, but If you have already translated the Agreement, would you mind sending me a copy of that translation? Thanks.

Lauren

Lauren C. Russell
Attorney at Law
Trump, Alioto, Trump & Prescott, LLP
2280 Union Street
San Francisco, CA 94123
Telephone: (415) 563-7200
Facsimile: (415) 346-0679
E-mail: laurenrussell@tatp.com

This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by e-mail and delete the message and any attachments.

**From:** Brennan, Monica R. [mailto:mbrennan@morganlewis.com]
**Sent:** Wednesday, April 29, 2009 6:11 PM

1

**To:** zirpoli@saveri.com; laurenrussell@tatp.com
**Cc:** Green, Thomas R.
**Subject:** In re Cathode Ray Tube Antitrust Litigation

Counsel -

Please see the attached letter from Tom Green and enclosed Agreement.

**Monica R. Brennan**
**Word Processor**
Morgan, Lewis & Bockius LLP
One Market, Spear Street Tower | San Francisco, CA 94105-1126
Direct: 415.234.1706 | Main: 415.442.1000 | Fax: 415.442.1001
www.morganlewis.com

DISCLAIMER
This e-mail message is intended only for the personal use of the recipient(s) named above. This message may be an attorney-client communication and as such privileged and confidential. If you are not an intended recipient, you may not review, copy or distribute this message. If you have received this communication in error, please notify us immediately by e-mail and delete the original message.

# Investment Share Transfer Agreement (Draft)

This Investment Share Transfer Agreement was entered on November 8, 2007 by both parties in Shenzhen, China.

Transferring Party: Hitachi Displays Co., Ltd. ("HDP")
Address: 3300 Hayano, Mobara City, Chiba Prefecture, Japan

Interest Receiving Party: Shenzhen Yuanzhi Investment Co., Ltd. ("SYI")
Shenzhen Yuanzhi Investment Co., Ltd.,
Address: 4009 Touzi Building 2F, Shennan Road, Futian District, Shenzhen, China

Preamble

HDP established Shenzhen SEG-Hitachi (hereafter referred to as "SEG-Hitachi") as a joint venture company with Shenzhen SEG-CEC Color Display Devices Co., Ltd. (hereafter referred to as "Shenzhen SEG") on May 20, 1989. SEG-Hitachi's initial registered asset was US $ 113,000,000 with a business conducting period of 30 years. Of that, HDP invested US $28,250,000 and holds 25% of SEG-Hitachi shares. Shenzhen SEG holds 75% of the shares.

HDP agrees to transfer and SYI agrees to accept 25% of SEG-Hitachi's shares.

*Article 1*   *Definitions*

*Article 2*   *Investment Share Transfer*

The shares transferred must not be mortgaged, or in any kind of security, and not attached or affected by any third party's rights.

*Article 3 Transfer Consideration and Payment Conditions*

3.1   As a result of negotiations, the two parties agree that the payment for the transferred share is RMB 175,000, 000. In other words, the consideration for the shares transferred from HDP to SYI is RMB 175,000,000 (hereafter referred to as "transfer consideration").

3.2   SYI shall pay RMB 175,000,000 in cash with two payments.

(1) Within ten days after signing the contract, SYI shall make a RMB10,000,000 payment to the designated account by the two parties as a deposit. (Hereafter referred to as "joint account"). The joint account shall be opened in China under SYI's name and related matters shall be handled in accordance with a separate Joint Account Handling Agreement entered into between SEG-Hitachi as authorized by HDP and SYI.

(2) After this contract is approved by related organization, within 30 days after the issuance of the new business license, HDP shall refund RMB 10,000,000 and the interest to the aforesaid joint account, and SYI shall pay the entire transfer consideration, RMB175,000,000, minus any related expenses incurred under article (4) of the contract, to HDP designated bank account in US $ at the exchanging rate listed by Bank of China on the day of the payment based on the following procedures:

a. If HDP finishes the payment to SEG-Hitachi employees at specified account before SYI pays the transfer consideration, SYI shall make the entire payment of transfer consideration to HDP.

b. If HDP fails to make payment to SEG-Hitachi employees at specified account before SYI pays the transfer consideration, SYI is entitled to deduct the amount in US $ equal to RMB 15,000,000 from the transfer consideration and send the remaining portion to HDP's designated account.

(3) Provisions on payment postponement.

(4) Expenses agreed by the two parties to be deducted from the aforesaid transfer consideration.

3.3     The two parties confirm before the conclusion of the contract that the transfer consideration includes the entire rights in connection with the investment.

3.4     The transfer consideration shall be sent to the following bank account:

(US $ account)

Account Name: Hitachi Displays, Ltd.
Bank Name: The Bank of Tokyo-Mitsubishi UFJ, Ltd., Head Office, Tokyo
Account Number: 0896418
Account Type: Ordinary Deposit

### Article 4     *Effective Date of Agreement*

When all of the following have been met:

    4.1     Agreement is signed by representative of each party.

    4.2     Ratified by the authority of each party on formation and performance of obligation provided in the Agreement.

    4.3     SYI receives permission from National investment commission for the purchase.

    4.4     Trading Bureau and Department of Commercial Affairs approves the share transfer.

*Article 5*     *Share Transfer*

Within 15 days after the execution of the Agreement, HDP shall file share transfer application and prepare all documents required for the share transfer. In the event this process is delayed and it is not due to HDP's control, it will not be deemed as a breach of contract. Each party agrees to conduct actions and produce documents necessary to make the transfer possible.

*Article 6*     *Handling during transfer period*

HDP's obligation during the time of the execution of the contract and the share transfer date.

*Article 7 Statement, Warranty, and Consent*

7.1     HDP's statement, warranty, and consent.

7.1.1   HDP is an existing company formed under Japanese law.

7.1.2   HDP has substantial and legal rights on its investment portion and has completed the payment of the investment. The investment is not mortgaged, or in any kind of security, and is not attached or affected by any third party's rights.

7.1.3   If SYI suffers damages caused by any debt, liability, unsettled law suit, punishment, potential litigation, that is not listed or fully listed in SEG-Hitachi Audit Report (see attachment No. 1), Evaluation Report, (see attachment No. 2), or litigation case list (see attachment No. 3), HDP shall compensate losses and the entire expenses incurred thereof to SYI. HDP reserves the right to investigate liabilities of former SEG-Hitachi and related personals.

7.1.4   HDP shall sign on documents related to this share transfer contract and fulfill related legal procedures. More over, with SYI's cooperation, and together with SEG-Hitachi, HDP shall start share transfer application with Trading Bureau, and Department of Commercial Affairs. HDP shall also provide necessary documents for change of investment registration record.

7.1.5   The entire documents provided by HDP to SYI shall be authentic, complete, correct, and valid.

7.1.6   Former share holders are responsible for SEG debt (or potential debt), employee settlement, and other unresolved matters (environment protection fee, tax deficit). To smooth the process of the aforesaid matters, HDP has entered into a separate agreement with Shenzhen SEG Group, former actual controller of share holders, on 19 October, 2007.

7.1.7   HDP agrees not to violate this guarantee and consent, and not to engage in any performance that will affect the validity of the contract.

7.2     SYI statement, guarantee, and consent

7.2.1   SYI is an existing valid company that was formed under Chinese law.

7.2.2   SYI has completed the entire internal procedures that are necessary for the conclusion of the contract, and for the performance of the obligations in the contract. The representative signing the contract is authorized by SYI, and the contract has binding effect on SYI after taking effect.

7.2.3   SYI shall give cooperation on signing related share transfer documents, and performance of related legal procedures. In addition, with HDP's cooperation, and together with SEG-Hitachi, SYI shall start share transfer application with Trading Bureau, and Department of Commercial Affairs. SYI shall also provide necessary documents for change of investment registration record.

7.2.4   The entire documents provided SYI to HDP shall be authentic, complete, correct, and valid.

7.2.5   SYI agrees to make payment for transferred share, and guarantees that the payment is lawful.

7.2.6   SYI is capable of performing the obligations in the contract, and will not engage in any conduct that will violate the guarantee and consent as stipulated in the contract, or any performance that will affect the validity of the contract.

7.3   Each party shall perform as required for the effectiveness of the contract, and sign on the entire required related documents.

## *Article 8      Termination and Cancellation of the Contract*

8.1   The two parties agree that the contract is automatically terminated if by any reason the contract cannot take effect within one year after the conclusion and both parties do not agree to extend the contract. If two parties agree to extend the contract, a separate supplemental contract shall be signed to continue the performance of the contract.

8.2   If one of the parties breaches the contract, and fails to improve or stop its contract violation within 30 days after receiving the revising request from the other party, the contract performing party has the right to terminate the contract unilaterally. The right of the termination of the contract should not have any effect on the performing party's right to claim damages from the contract breaching party.

8.3   The entire savings and interest remained in the joint account of the two parties shall be disposed with the following methods within five days after the termination or cancellation of the contract.

(1) If the termination or cancellation of the contract was caused by HDP, the remaining fund in the aforesaid joint account shall be deemed as SYI's asset. In addition, HDP shall pay SYI RMB (Renminbi) 10,000,000,

(2) If the contract is terminated or canceled due to SYI's violation, the entire fund remained in the joint account shall be deemed as belonging to HDP.

(3) If the contract is terminated by any reason other than the two parties, the entire fund remained in the joint account shall belong to SYI.

8.4   The two parties shall not bear any liability if the transfer is not approved due to reasons beyond the control of the two parties.

8.5   The termination of the contract shall not have any effect on contract provisions on adjustment, compensation, or contract violation.

### Article 9    *Breach of Contract*

9.1   If one party breaches this Agreement by not performing a responsibility or an obligation provided in the Agreement, the non-breaching party may investigate and has the right to demand compensation.

9.2   The breaching party must pay 5% of the transfer share price to the non-breaching party as a penalty.

9.3   If a party's declaration is not true or mistaken, then the party is deemed to be breached.

### Article 10   *Tax Expenses*

Unless under special circumstances, each side is responsible for its own expenses. If it is not specified by the Agreement or law, each party is responsible for half of the expenses.

### Article 11   *Notice*

Any notice, request, or other communications in written based on this contract shall be mailed or faxed to the following addresses (or the receiver shall inform the sender by written document of a specific mailing address or fax number at least five days in advance):

HDP: Hitachi Displays Co., Ltd.,
Address: 3300 Hayano, Mobara City, Chiba Prefecture, Japan
Fax: 81-475258675
Contact: General Business Department (legal manager)

SYI: Shenzhen Yuanzhi Investment Co., Ltd.,
Address: 4009 Touzi Building 2F, Shennan Road, Futian District, Shenzhen, China
Fax: 86-75583883593
Contact: Investment Department

Any notice, Request, or other communications a) in written that arrive at the receiver; or (b) by fax that has been sent; can be deemed as completion of dispatch.

### *Article 12     Force Majeure*

12.1.   The party failing to fulfill or perform part of the contract due to force majeure event, (including but not limited to war, earthquake, typhoon, flood, fire, or other unpredictable events) shall notify the other party immediately by telex or telegram, and send a written notice within 15 days with details of the accident attached with documents proving that the entire contract or part of the contract is unable to be performed, or that the performance of the contract need to be postponed. Based on the extent of the damage caused by force majeure event, two parties shall discuss and make a decision on either postponement or termination of the contract, or exemption of part of the performance of the contract.

12.2    The party who suffers damages from force majeure shall take any necessary measures to mitigate the loss; otherwise, it is not exempted from bearing liability for the enlarged damages.

### *Article 13     Confidentiality*

Within the effective period of this contract, except under the circumstances that it is requested by a special consultant, or based on law, or when an employee has to know due to his job responsibility, any confidential information related to business, accounting, financial, contract process, or other substantive business conduct shall not be disclosed. Both parties shall make effort to prevent such disclosure.

### *Article 14     Non-transference of the contract*

Any rights, obligations of the contract cannot be transferred to a third party unless there is a written agreement by the two parties.

### *Article 15     Applicable law and dispute resolution*

15.1    Chinese law shall be applied to the formation, performance, validity, and interpretation of the contract.

15.2    Any dispute arising from the interpretation or performance of the contract shall be settled by negotiation. If the dispute cannot be settled within 15 days, either party can file an arbitration application with Beijing Office of China International Trade Arbitration Commission based on its arbitration rules. The decision of the arbitration shall be final and has equal binding effect on both parties.

*Article 16    Contract Effect*

16.1    Invalidity of any article of the contract has no effect on other articles.

16.2    Based on discussion, the two parties can conclude a separate supplemental contract on matters not included in the contract, which has the same effect as the contract in this case.

16.3    After the contract takes effect, it replaces the previous Share Transfer Basic Agreement signed on 19 October 2007, which shall be deemed void automatically.

16.4    The contract has ten copies, and each party shall keep one copy. The remaining copies shall be submitted to related authorization organizations, which shall have the same effect.

*Article 17    Contract Language*

The contract has Chinese and Japanese versions. The Chinese version precedes when there is any difference or dispute on the interpretation of the contract.


Attachment 1: SEG-Hitachi litigation case list

Attachment 2: Shen Nan Zhuan Shen Bao Zi No. (2007) ZA310, SEG-Hitachi Net Assets by 30 June, 2007 Audit Report, issued by Shenzhen Nan Fang Min He Accounting Firm

Attachment 3: Xin De Zi Ping Bao Zi (2007) No. 037, SEG-Hitachi Assets Evaluation Report, issued by Shenzhen Tian Jian Xin De Accounting Firm.

No text underneath

This is the signature page of SEG-Hitachi Share Transfer Agreement with no text contract.

Hitachi Displays
Legal Representative or Authorized Representative


Shezhen yuanzhi Investment Co,. Ltd.,
Legal Representative or Authorized Representative


Company Seal