GREGORY D. HULL (57367)
Email: greg.hull@weil.com
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, California 94065-1175
Telephone: (650) 802-3000
Facsimile: (650) 802-3100

STEVEN A. REISS (*Admitted Pro Hac Vice*)
Email: steven.reiss@weil.com
DAVID L. YOHAI (*Admitted Pro Hac Vice*)
Email: david.yohai@weil.com
DAVID E. YOLKUT (*Admitted Pro Hac Vice*)
Email: david.yolkut@weil.com
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153-0119
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007

JEFFREY L. KESSLER (*Admitted Pro Hac Vice*)
Email: jkessler@dl.com
A. PAUL VICTOR (*Admitted Pro Hac Vice*)
Email: pvictor@dl.com
EVA W. COLE (*Admitted Pro Hac Vice*)
Email: ecole@dl.com
DEWEY & LEBOEUF LLP
1301 Avenue of the Americas
New York, NY 10019
Telephone: (212) 259-8000
Facsimile: (212) 259-7013

Attorneys for Defendants Panasonic Corporation (f/k/a Matsushita Electric Industrial Co., Ltd.) and Panasonic Corporation of North America

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | No. 07-5944-SC—MDL No. 1917 |
|---|---|
| _____ | **NOTICE OF MOTION AND MOTION TO DISMISS DIRECT AND INDIRECT PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINTS AS TO PANASONIC CORP. AND PANASONIC CORP. OF NORTH AMERICA** |
| This Document Relates to: | |
| ALL ACTIONS | |
| | Date: August 4, 2009, 9:00 a.m. Place: JAMS Resolution Center Special Master: Hon. Charles A. Legge (Ret.) |

Notice of Motion and Motion to Dismiss Plaintiffs'
Consolidated Amended Complaints as to Panasonic
Corp. and PNA

Case No. 07-5944-SC
MDL No. 1917

1

## NOTICE OF MOTION AND MOTION TO DISMISS

2 TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

3           PLEASE TAKE NOTICE that on August 4th, 2009, at 9 a.m., or as soon thereafter

4 as the matter may be heard, at the San Francisco Resolution Center of JAMS, Two Embarcadero

5 Center, Suite 1500, San Francisco, California 94111, before the Special Master, Honorable

6 Charles A. Legge, U.S. District Judge (Ret.), pursuant to the Court's Order Re: Special Master's

7 Duties, so ordered by Honorable Samuel Conti on April 8, 2009, Defendants Panasonic

8 Corporation, f/k/a Matsushita Electric Industrial Co., Ltd. ("Panasonic Corp."), and Panasonic

9 Corporation of North America ("PNA") (collectively, the "Panasonic Defendants") will and

10 hereby do move the Court, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for

11 an Order dismissing the Direct Purchaser Plaintiffs' Consolidated Amended Complaint ("DP-

12 CAC"), and the Indirect Purchaser Plaintiffs' Consolidated Amended Complaint ("IP-CAC"),

13 dated March 16, 2009 (together, the "Complaints") as to Panasonic Corp. and PNA for failure to

14 state a claim upon which relief can be granted.

15           This motion is based upon this Notice of Motion; the accompanying Memorandum

16 of Points and Authorities; the complete files and records in these consolidated actions, including

17 Defendants' Joint Motions to Dismiss the Direct and Indirect Purchaser Plaintiffs' Consolidated

18 Amended Complaints; oral argument of counsel; and such other and further matters as the Court

19 may consider.

20

## STATEMENT OF THE ISSUES

21           1.      Whether Direct and Indirect Purchaser Plaintiffs' claims against Panasonic Corp.

22 and PNA should be dismissed for failure to allege sufficient facts against each of them to

23 demonstrate a plausible claim for relief under Rule 8(a) of the Federal Rules of Civil Procedure

24 and the Supreme Court's decision in *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007).

25

26

27

28

Notice of Motion and Motion to Dismiss Plaintiffs'
Consolidated Amended Complaints as to Panasonic
Corp. and PNA                                                    i                    Case No. 07-5944-SC
                                                                                      MDL No. 1917

1

**TABLE OF CONTENTS**

2

**Page**

3

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................. 1

4

I.    INTRODUCTION ..................................................................................................... 1

5

6

II.   UNDER THE PRINCIPLES ARTICULATED IN *TWOMBLY*, PLAINTIFFS'
      COMPLAINTS FAIL TO ADEQUATELY PLEAD AN ANTITRUST
      CONSPIRACY AGAINST PNA ................................................................................ 3

7

8

      A.    Direct Purchaser Plaintiffs Have Not Pled Any Facts That Demonstrate
            PNA's Plausible Involvement in Any Alleged Conspiracy ............................... 3

9

      B.    Indirect Purchaser Plaintiffs' Allegations Against PNA Are Similarly
            Deficient ........................................................................................................ 7

10

11

III.  PLAINTIFFS' COMPLAINTS FAIL TO ADEQUATELY PLEAD AN
      ANTITRUST CONSPIRACY AGAINST PANASONIC CORP. ................................... 8

12

      A.    Direct Purchaser Plaintiffs Have Not Pled Facts That Demonstrate
            Plausible Participation by Panasonic Corp. in Any Alleged Conspiracy ........... 8

13

      B.    Indirect Purchaser Plaintiffs' Allegations Against Panasonic Corp. Also
            Fail Under *Twombly* .................................................................................... 12

14

15

IV.   CONCLUSION ...................................................................................................... 14

16

17

18

19

20

21

22

23

24

25

26

27

28

Notice of Motion and Motion to Dismiss Plaintiffs'
Consolidated Amended Complaints as to Panasonic
Corp. and PNA                                        ii                         Case No. 07-5944-SC
                                                                                 MDL No. 1917

1

## TABLE OF AUTHORITIES

2

### FEDERAL CASES

Page

3

*Asahi Glass Co. v. Pentech Pharms., Inc.*,
    289 F.Supp.2d 986 (N.D. Ill. 2003) ................................................................. 6

4

5

*Ashcroft v. Iqbal*, No. 07-1015, (U.S. May 18, 2009) ................................................3

6

*Atuahene v. City of Hartford*,
    10 Fed. Appx. 33, 34 (2d Cir. 2001) ..............................................................6

7

*Bell Atlantic v. Twombly*,
    550 U.S. 544 (2007) ..........................................................................*passim*

8

9

*Berry v. Indianapolis Life Ins. Co.*,
    No. 3:08-CV-0248-B, 2009 WL 636531 (N.D. Tex. Mar. 11, 2009) ....................... 10, 14

10

11

*Brennan v. Concord EFS, Inc.*,
    369 F. Supp. 2d 11227 (N.D. Cal. 2005) ................................................... 5, 10

12

*Brunson Commc'ns, Inc. v. Arbitron*,
    239 F. Supp. 2d 550 (E.D. Pa. 2002) ................................................................ 6

13

*Dell, Inc. v. This Old Store, Inc.*,
    No. H-07-0561, 2007 WL 1958609 (S.D. Tex. July 2, 2007) ......................................... 13

14

15

*In re Digital Music Antitrust Litig.*,
    592 F.Supp.2d 435 (S.D.N.Y. 2008)...................................................... 11, 13

16

*Doe v. Unocal Corp.*,
    248 F.3d 915 (9th Cir. 2001)........................................................................ 12

17

18

*In re Elevator Antitrust Litig.*,
    502 F.3d 47 (2d Cir. 2007)........................................................................ 4, 11

19

*In re GPU Antitrust Litig.*,
    527 F.Supp.2d 1011 (N.D. Cal. 2007) ............................................................ 3, 11

20

21

*Jung v. Ass'n of Am. Med. Colleges*,
    300 F.Supp.2d 119 (D.D.C. 2004) ................................................................ 4, 6

22

*Kendall v. U.S.A., Inc.*,
    518 F.3d 1042 (9th Cir. 2008).................................................................7,10

23

24

*In re Late Fee and Over-Limit Fee Litig.*,
    528 F.Supp.2d 953 (N.D. Cal. 2007) ............................................................ 10

25

*Mountain View Pharmacy v. Abbott Labs.*,
    630 F.2d 1383 (9th Cir. 1980)................................................................ 5, 10

26

27

*Nasious v. Two Unknown B.I.C.E. Agents*,
    492 F.3d 1158 (10th Cir. 2007)................................................................ 13

28

Notice of Motion and Motion to Dismiss Plaintiffs'
Consolidated Amended Complaints as to Panasonic
Corp. and PNA

iii

Case No. 07-5944-SC
MDL No. 1917

1

# TABLE OF AUTHORITIES

2

## FEDERAL CASES

Page

3

*Rick-Mik Enters., Inc. v. Equilon Enters. LLC*,
    532 F.3d 963 (9th Cir. 2008).............................................................................................7

4

*In re Sagent Tech., Inc. Derivative Litig.*,
    278 F.Supp.2d 1079 (N.D. Cal. 2003) .....................................................................*passim*

5

*In Re SRAM Antitrust Litig.*,
    580 F.Supp.2d 896 (N.D. Cal. 2008) ...............................................................................4

6

7

*Sherman v. British Leyland Motors, Ltd.*,
    601 F.2d 429 (9th Cir. 1979)......................................................................................9, 12

8

*In re Tableware Antitrust Litig.*,
    363 F.Supp.2d 1203 (N.D. Cal. 2005) ............................................................................11

9

10

*In Re TFT-LCD Antitrust Litig.*,
    586 F.Supp.2d 1109 (N.D. Cal. 2008) ..............................................................................4

11

*In Re TFT-LCD Antitrust Litig.*,
    599 F.Supp.2d 1179 (N.D. Cal. 2009) ..............................................................................4

12

13

*Tugboat Corp. Co. v. Shipowners & Merchants Towboat Co., Ltd.*,
    467 F.Supp.841 (N.D. Cal. 1979), *aff'd* 658 F.2d 1256 (9th Cir. 1981) .....................9, 12

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Notice of Motion and Motion to Dismiss Plaintiffs'
Consolidated Amended Complaints as to Panasonic
Corp. and PNA
iv

Case No. 07-5944-SC
MDL No. 1917

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**I.     INTRODUCTION**

3

   Despite 151 pages of purported conspiracy allegations, there is only a single, virtually

4

identical paragraph in both the Direct Purchaser and Indirect Purchaser Plaintiffs' Complaints

5

directed at Panasonic Corporation of North America ("PNA"),[1] and only a few conclusory

6

assertions of "dominance and control" directed at Panasonic Corporation ("Panasonic Corp.").[2]

7

This is not surprising, since it is an entirely different Panasonic-related company – MT Picture

8

Display Co., Ltd. ("MTPD") – that is engaged in the manufacturing of cathode ray tubes

9

("CRTs") that are the subject of the Complaints' conspiracy claims. The complete absence of any

10

factual claims to plausibly support a claim for relief against PNA or Panasonic Corp., simply

11

because they are related to MTPD and its CRT manufacturing subsidiaries, requires dismissal

12

under the pleading standards set forth in *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007).

13

   PNA and Panasonic Corp. are only alleged to have sold "CRT Products" – defined in the

14

Complaints to mean finished products such as television sets containing CRTs – and should never

15

have been named as Defendants.[3]  They are joined in this case solely because of the transparent

16

desire of Plaintiffs' counsel to name virtually any company with deep pockets that they can

17

identify on the Internet that was related in any way to a company that manufactured and sold

18

CRTs during the claimed conspiracy period.  The Supreme Court has made it clear that much

19

20

21

[1] PNA is a Delaware corporation with its principal place of business in New Jersey.  DP-CAC, ¶ 48; IP-CAC, ¶ 81.  The Complaints allege that PNA "sold and distributed CRT Products either directly or through its subsidiaries or affiliates . . . throughout the United States."  *See* DP-CAC, ¶ 48.

22

23

24

[2] Panasonic Corp., known until October of 2008 as Matsushita Electric Industrial Co., Ltd. ("MEI"), is a Japanese corporation headquartered in Osaka, Japan.  DP-CAC, ¶ 46; IP-CAC, ¶ 80. The Complaints allege that Panasonic Corp. "sold and distributed CRT Products either directly or through its subsidiaries or affiliates throughout the United States."  *See* DP-CAC, ¶ 46.

25

26

[3] The Indirect Purchaser and Direct Purchaser Plaintiffs have both stipulated to dismiss purported defendants Panasonic Consumer Electronics Co. ("PCEC") (a division of PNA) and Matsushita Electronic Corporation (Malaysia) Sdn. Bhd ("MECM") (a defunct entity).  The present motion does not challenge Plaintiffs' inclusion of MTPD in the Complaints under *Twombly*.

27

28

Notice of Motion and Motion to Dismiss Plaintiffs'
Consolidated Amended Complaints as to Panasonic
Corp. and PNA                                                             1

Case No. 07-5944-SC
MDL No. 1917

1   more is required before a company can be subjected to the enormous burdens and expense of

2   antitrust litigation.[4]

3         The single, bald allegation in the Complaints against PNA, the United States sales

4   company that sold finished televisions containing CRTs, is that it was purportedly "represented

5   at" – but did not participate in – alleged meetings concerning the prices of CRTs, but not

6   televisions.  All of these purported meetings are alleged to have taken place outside the United

7   States, with foreign CRT manufacturers, not United States sales or television companies, as

8   participants.[5]  Neither Complaint sets forth any factual allegations to explain *how* PNA was

9   "represented" at these purported meetings, *what* the vague term "represented" means, *who* at

10  PNA allegedly knew about such meetings, or *why* PNA, an entity that was not involved in the

11  manufacture of CRTs, would have wanted to be "represented" in any such meetings.  This vague

12  assertion of unspecified "representation" does not come close to meeting the pleading

13  requirements that the Supreme Court has laid down as a prerequisite for subjecting a defendant to

14  antitrust conspiracy claims.  *See Twombly*, 550 U.S. at 557.

15        The Complaints' vague allegations against Panasonic Corp. fare no better under *Twombly*.

16  All that the Complaints do is broadly assert, without any specific factual claims, that Panasonic

17  Corp. "dominated and controlled" the activities of its subsidiaries.  *See* DP-CAC, ¶¶ 47-49; IP-

18  CAC, ¶¶ 81-83.[6]  Alternatively, the Complaints try to lump Panasonic Corp. together with other

19  related entities (as one amorphous entity called "Panasonic"), without specifying which, if any, of

20

21  [4] Defendants' Joint Motions to Dismiss Direct and Indirect Purchaser Plaintiffs' Consolidated
    Amended Complaints (the "Joint Motions"), which the Panasonic Defendants have joined and
22  hereby incorporate by reference, set forth the numerous grounds as to why both Complaints
    should be dismissed against *all* of the Defendants.  This separate motion is directed to the failure
23  of the Complaints to allege facts sufficient to state a claim for relief specifically with respect to
    Panasonic Corp. and PNA.

24  [5] *See* DP-CAC, ¶¶ 6; 134; 162; IP-CAC, ¶¶ 145-150; 160-162.

25  [6] Indeed, Plaintiffs make this same rote allegation – uniformly without factual support – with
26  respect to every corporate parent in this case.  In the IP-CAC alone, Plaintiffs make this identical
    allegation no less than 33 separate times.  *See, e.g.* IP-CAC, at ¶¶ 51, 52 (re: LG Electronics,
27  Inc.); 55-59 (re: Royal Philips); 63-70 (re: Samsung Electronics Co., Inc.); 73-78 (re: Toshiba
    Corp.); 88-92 (re: Hitachi, Ltd.); 94-95, 97-98 (re Tatung Co.); 101, 102 (re: IRICO Display
28  Devices Co.); 107 (re: Daewoo Electronics Corp.).

Notice of Motion and Motion to Dismiss Plaintiffs'
Consolidated Amended Complaints as to Panasonic
Corp. and PNA                                                   2                                   Case No. 07-5944-SC
                                                                                                     MDL No. 1917

these companies allegedly attended or participated in any claimed conspiratorial meetings or agreements.  *See* DP-CAC, ¶¶47-49; IP-CAC, ¶¶ 81-83.  Stretching even further, the Complaints also cite as purported evidence against Panasonic Corp. the mere announcement of various government investigations in the CRT manufacturing industry, which, of course, provides no support for any claims against Panasonic Corp., a company that does not even manufacture CRTs.[7]  Whether taken individually or collectively, or combined with other innocent assertions about Panasonic Corp. (such as its closure of a factory), the factual allegations in the Complaints do nothing to plausibly state a claim that Panasonic Corp. participated in any alleged conspiracy.

## II.     UNDER THE PRINCIPLES ARTICULATED IN *TWOMBLY*, PLAINTIFFS' COMPLAINTS FAIL TO ADEQUATELY PLEAD AN ANTITRUST CONSPIRACY AGAINST PNA

### A.     Direct Purchaser Plaintiffs Have Not Pled Any Facts That Demonstrate PNA's Plausible Involvement in Any Alleged Conspiracy

The single direct reference to PNA in the Direct Purchasers' Complaint – one paragraph buried in the middle of a 222-paragraph Complaint[8] – is not nearly enough to "nudge[]" their conspiracy claim as to PNA "across the line from conceivable to plausible."  *Twombly*, 550 U.S. at 570; *see also id.* at 555 (a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level").[9]  As discussed in the Joint Motion to Dismiss the Direct Purchaser Complaint ("Joint Motion to Dismiss the DP-CAC"), courts have made it clear that the pleading requirements under *Twombly* must be satisfied with respect to each named defendant.[10] The DP-CAC's single reference to PNA does not come close to satisfying this standard.

---

[7] *See*, *e.g.*, *In re GPU Antitrust Litig.*, 527 F.Supp.2d 1011, 1024 (N.D. Cal. 2007) (a "grand jury investigation is a non-factor" which "carries no weight in pleading an antitrust conspiracy claim").

[8] DP-CAC, ¶ 163.

[9] Indeed, the Supreme Court recently reaffirmed its holding in *Twombly* that legal conclusions "must be supported by factual allegations," as Rule 8, as construed in *Twombly*, "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Ashcroft v. Iqbal*, No. 07-1015, slip. op. at 14-15 (U.S. May 18, 2009) (dismissing complaint for failure to plead sufficient facts).  Notably, the *Iqbal* Court held that on a motion to dismiss, conclusory allegations "are not entitled to the assumption of truth."  *Id.* at 15-17.

[10] *See* Joint Motion to Dismiss the DP-CAC, at § IV.

1    Paragraph 163 of the DP-CAC broadly claims, in conclusory fashion, that:

2    • "[PNA] . . . [was] *represented* at those [bilateral and group] meetings and was a
3      party to the agreements reached at them. To the extent [PNA] . . . distributed CRT
       Products to direct purchasers, it played a significant role in the conspiracy because
4      Defendants wished to ensure that the prices for such products paid by direct
       purchasers would not undercut the pricing agreements reached at those meetings.
5      Thus, [PNA] . . . [was an] active, knowing participant[] in the alleged conspiracy."
       DP-CAC, ¶ 163 (emphasis added).

6    On its face, the Complaint does not allege that PNA participated in or attended any alleged

7    meetings. Nor does it allege any facts to explain how or why PNA was purportedly represented

8    at the alleged meetings, or even who it was represented by. Such vague, conclusory assertions do

9    not come close to satisfying the *Twombly* standard. *See, e.g.*, *In re Elevator Antitrust Litig.*, 502

10   F.3d 47, 50 (2d Cir. 2007) (affirming dismissal of complaint in which the averments were "in

11   entirely general terms without any specification of any particular activities by any particular

12   defendant").[11]

13        In fact, even before *Twombly*, courts held that "at the heart of an antitrust conspiracy is an

14   agreement and a conscious decision by *each defendant* to join it." *Jung v. Ass'n of Am. Med.*

15   *Colleges*, 300 F.Supp.2d 119, 158 (D.D.C. 2004) (emphasis added); *In re Sagent Tech., Inc.*

16   *Derivative Litig.*, 278 F.Supp.2d 1079, 1094 (N.D. Cal. 2003). There are no factual allegations in

17   the Direct Purchaser Complaint to support a claim that any such conscious decision was made by

18   PNA. To the contrary, there is not even an allegation that any person at PNA – an American

19   company that does not manufacture CRTs – either knew about or had any involvement in alleged

20   conspiratorial meetings among foreign manufacturers of CRTs.

21   ───────────────

22   [11] While a court in this District recently allowed plaintiffs' complaints, as amended, to survive a
     motion to dismiss in the *TFT-LCD* litigation, it relied upon the fact that the amended complaints
23   in that case provided a number of specific factual details about the alleged involvement of the
     defendants in the claimed conspiracy, none of which are relevant to the wholly conclusory
     assertions against PNA here. *See In Re TFT-LCD Antitrust Litig.*, 599 F.Supp.2d 1179, 1184-85
24   (N.D. Cal. 2009) (noting that the complaints, among other things, provide details about the
     structure and content of the alleged meetings; the types of employees who attended; and other
25   supporting factual claims). Further, the *TFT-LCD* court held that Plaintiffs "need to make
     allegations that plausibly suggest that each Defendant participated in the alleged conspiracy." *Id.*
26   at 1185 (citing *In Re SRAM Antitrust Litig.*, 580 F.Supp.2d 896, 904 (N.D. Cal. 2008). Indeed, as
     the *TFT-LCD* court held in an earlier decision, "general allegations as to all defendants, to
27   'Japanese defendants,' or to a single corporate entity such as 'Hitachi' is insufficient to put
     specific defendants on notice of the claims against them." *In Re TFT-LCD Antitrust Litig.*, 586
28   F.Supp.2d 1109, 1117 (N.D. Cal. 2008).

Notice of Motion and Motion to Dismiss Plaintiffs'
Consolidated Amended Complaints as to Panasonic
Corp. and PNA                                    4                    Case No. 07-5944-SC
                                                                     MDL No. 1917

Nor can PNA be drawn into the case with the unexplained assertion that "[t]o the extent [PNA] distributed 'CRT Products' to direct purchasers, it played a significant role in the conspiracy because Defendants wished to ensure that the prices for such products paid by direct purchasers would not undercut the pricing agreements reached at these various meetings." DP-CAC, ¶ 163. There is no allegation in the Complaint that there were any meetings or agreements that PNA participated in to fix the prices of finished "CRT Products" sold in the United States. There are also no allegations that PNA did anything more than sell such "CRT Products."[12] Such an allegation does nothing to plausibly support the claim that PNA participated, or had any undefined "significant role," in any alleged conspiracy relating to CRTs. To the extent that the DP-CAC attempts to simply "lump" PNA together with other related entities under the collective term "Panasonic,"[13] such blunderbuss allegations against multiple defendants fail to state a claim under *Twombly*. For example, the DP-CAC claims that

- "*Panasonic*," "directly or through [MECM]," participated in several dozen bi-lateral and group meetings from 1996 through at least 2003 in which unlawful agreements allegedly took place. DP-CAC, ¶ 162 (emphasis added).

Such improper "lumping" makes it impossible to discern if this allegation is being made against PNA, another Panasonic entity, or just MECM (an entity that has now been dropped as a defendant in the case). *See In re Sagent Tech.*, 278 F.Supp.2d at 1094-1095 (dismissing complaint that "lump[ed] together thirteen 'individual defendants,' where only three of the individuals was alleged to have been present for the entire period of the events alleged in the complaint," because it failed to "give 'fair notice' of the claim to those defendants"); *Brennan v. Concord EFS, Inc.*, 369 F. Supp.2d 1127, 1136 (N.D. Cal. 2005) (dismissing complaint against certain defendants because it failed to plead allegations "specifically connecting [those defendants] to the alleged conspiracy"). Indeed, decades before *Twombly*, the Ninth Circuit recognized that a "blanket statement [concerning multiple defendants] does not provide adequate

---

[12] *See* DP-CAC, ¶ 1 (defining "CRT Products" to include computer monitors and televisions); ¶ 48 (alleging only that PNA "sold and distributed *CRT Products*").

[13] *See* DP-CAC, ¶ 50 ("Defendants Panasonic Corp. (f/k/a/ MEI), [MECM], [PNA] and [PCEC] are collectively referred to herein as 'Panasonic.'").

Notice of Motion and Motion to Dismiss Plaintiffs'
Consolidated Amended Complaints as to Panasonic
Corp. and PNA                    5                    Case No. 07-5944-SC
MDL No. 1917

1   notice for responsive pleading." *Mountain View Pharmacy v. Abbott Labs.*, 630 F.2d 1383, 1388

2   (9th Cir. 1980); *see also Atuahene v. City of Hartford*, 10 Fed. Appx. 33, 34 (2d Cir. 2001)

3   ("lumping all the defendants together in each claim and providing no factual basis to distinguish

4   their conduct" does not satisfy Rule 8 pleading requirements).[14]

5       Further, this "lumped" allegation against PNA cannot be interpreted as a claim that PNA

6   actually attended or participated in any alleged conspiratorial meetings, as the very next

7   paragraph of the Complaint alleges only that PNA was somehow "represented" at such meetings.

8   DP-CAC, ¶ 163.  Nor can any claim be stated against PNA from the "lumped" allegation that

9   "Panasonic" announced that MTPD's CRT plant in New York was closing.  *Id.* at ¶ 183.  Even

10  assuming that this specific allegation applied to PNA, as opposed to other Panasonic entities, it

11  would not provide any evidence of participation in any alleged conspiracy.

12      Finally, there are no factual allegations in the Direct Purchaser Complaint to explain why

13  PNA, a company selling finished televisions containing CRTs, would have any economic motive

14  to join an alleged conspiracy to fix higher prices for a component of those televisions, from which

15  it would not benefit.  Indeed, as a seller of finished televisions containing CRTs, PNA would

16  likely be *hurt* by any such conspiracy.  To allege participation in such a "conspiracy against

17  interest" is exactly the type of implausible conspiracy theory that, in the absence of supporting

18  facts, *Twombly* was meant to forestall.  *See* 550 U.S. at 558 ("'some threshold of plausibility must

19  be crossed at the outset before a . . . case should be permitted to go into its inevitably costly and

20  protracted discovery phase'") (quoting *Asahi Glass Co. v. Pentech Pharmaceuticals, Inc.*, 289

21  F.Supp.2d 986, 995 (N.D. Ill. 2003) (Posner, J., sitting by designation); *see also Brunson*

22  *Communications, Inc. v. Arbitron*, 239 F. Supp. 2d 550, 563 (E.D. Pa. 2002) ("Where a defendant

23  had no rational motive to join a conspiracy, and defendant's conduct is as consistent with

24  permissible competition as with illegal conspiracy, the plaintiff's unspecific allegations do not

25

26  [14] Indeed, Plaintiffs have an obligation to aver facts against *each and every* named defendant.
    *See, e.g.*, *Ass'n of Am. Med. Colleges*, 300 F.Supp.2d at 163 ("Plaintiffs cannot escape their
27  burden of alleging that *each defendant* participated in or agreed to join the conspiracy by using
    the term 'defendants' to apply to numerous parties without any specific allegations as to [the
28  moving defendant]") (emphasis added).

Notice of Motion and Motion to Dismiss Plaintiffs'
Consolidated Amended Complaints as to Panasonic
Corp. and PNA                      6                        Case No. 07-5944-SC
                                                           MDL No. 1917

support an inference of antitrust conspiracy").

### B. Indirect Purchaser Plaintiffs' Allegations Against PNA Are Similarly Deficient

The only substantive allegation in the IP-CAC that relates directly to PNA mirrors that of the DP-CAC: namely, that PNA purportedly "was represented at [various meetings] and was a party to the agreements entered at them," and that "[t]o the extent [PNA] sold and/or distributed CRT Products to direct purchasers, [it] played a significant role in the conspiracy because Defendants wished to ensure that the prices for CRT Products paid by direct purchasers would not undercut the pricing agreements . . . ." *See* IP-CAC, ¶ 182.  For the same reasons discussed at pp. 3-4, *supra*, this single paragraph of conclusory allegations does not set forth "enough facts to state a claim to relief that is plausible on its face." *See Twombly*, 550 U.S. at 570.[15]

Like the Direct Purchaser Plaintiffs, the Indirect Purchaser Plaintiffs do not allege that PNA participated in any of these alleged meetings, but merely that it was "*represented*" at them in some unspecified way.  The IP-CAC does not contain any supporting factual allegations to explain *who* represented PNA, *how* PNA knew about this representation, or even *what* this alleged "representation" meant to PNA.  Indeed, there is not even an allegation that PNA knew about the existence of any of these meetings, which allegedly took place in overseas locations by foreign manufacturers of CRTs.  Under *Twombly*, however, as interpreted by the Ninth Circuit, the IP-CAC must answer, as to each defendant, "the basic questions: who, did what, to whom (or with whom), where, and when." *Kendall v. U.S.A., Inc.*, 518 F.3d 1042, 1048 (9th Cir. 2008).

Finally, to the extent that the IP-CAC, like the DP-CAC, resorts to improperly "lumping" PNA together with other entities as "Panasonic," such allegations fail for the same reasons as set forth above with respect to the DP-CAC.  *See* ¶¶ 141, 164, 181 (referencing meetings allegedly attended by "Panasonic," without any indication as to whether this is or is not an allegation against PNA or some other Panasonic company).

---

[15] The pleading standards set forth in *Twombly* apply not only to Indirect Purchaser Plaintiffs' federal claims for injunctive relief, but also to their state law claims.  *See, e.g., Rick-Mik Enterprises, Inc. v. Equilon Enterprises LLC*, 532 F.3d 963 (9th Cir. 2008) (affirming grant of motion to dismiss under *Twombly* with respect to California state law antitrust claims as well as federal antitrust claims).

Notice of Motion and Motion to Dismiss Plaintiffs'
Consolidated Amended Complaints as to Panasonic
Corp. and PNA

7

Case No. 07-5944-SC
MDL No. 1917

III.    **PLAINTIFFS' COMPLAINTS FAIL TO ADEQUATELY PLEAD AN
        ANTITRUST CONSPIRACY AGAINST PANASONIC CORP.**

A.    **Direct Purchaser Plaintiffs Have Not Pled Facts That Demonstrate Plausible
      Participation by Panasonic Corp. in Any Alleged Conspiracy**

The fleeting and conclusory references to Panasonic Corp. in the DP-CAC likewise fail to establish a "plausible" basis to state a conspiracy claim against this company under *Twombly*. To the contrary, the sparse allegations against Panasonic Corp., whether considered separately or together, amount to nothing more than conclusory assertions and unsupported speculation based solely on the fact that Panasonic Corp. is the parent of MTPD and other related companies, and that it is publicly reported to be cooperating with an investigation into CRT manufacturing by the Japanese Fair Trade Commission. These allegations do not provide the required factual assertions to support a claim that Panasonic Corp. participated in an alleged conspiracy relating to CRTs.

The following constitutes the sum and substance of the allegations of the Direct Purchaser Plaintiffs against Panasonic Corp.:

- Panasonic Corp. allegedly "dominated and controlled the finances, policies, and affairs" of MECM, PNA, and PCEC. *Id.* at ¶¶ 47-50;

- Panasonic Corp., then known as MEI, entered into a joint venture in 2002 with Defendant Toshiba Corp. called MTPD to manufacture CRTs, with MEI owning a 64.5% stake in the joint venture. As of 2007, MEI purchased the remaining 35.5% stake. DP-CAC, ¶¶ 46, 71, 79, 113;

- Panasonic Corp. "reported that [it] was cooperating with the Japanese Fair Trade Commission ('JFTC')," which raided the company's facilities. *Id.* at ¶ 129; *see also* ¶ 133 (re: Hungarian Competition Authority investigation);

- "*Panasonic*," "directly or through Matsushita (Malaysia)," allegedly participated in several dozen bi-lateral and group meetings from 1996 through at least 2003 in which unlawful agreements allegedly took place. *Id.* at ¶ 162 (emphasis added); and

- "*Panasonic*" announced in December, 2004 that the closure of MTPD's American subsidiary's operations in Horseheads, NY was part of the company's "global restructuring initiatives in the CRT business" and further stated that "CRTs for the North American market will be supplied by other manufacturing locations in order to establish an optimum CRT manufacturing structure." *Id.* at ¶ 183 (emphasis added); *see also* ¶ 187 ("Panasonic" announced closure of Malaysian CRT factory).

Notice of Motion and Motion to Dismiss Plaintiffs'
Consolidated Amended Complaints as to Panasonic
Corp. and PNA                                                    8

Case No. 07-5944-SC
MDL No. 1917

Taking these allegations in turn, the conclusory assertion that Panasonic Corp. "dominated and controlled the finances, policies, and affairs of" MECM, PNA, and PCEC is not supported by a single factual claim other than the bald fact of alleged corporate affiliation. Even taken as true, however, such alleged "domination" would not provide any evidence that Panasonic Corp. participated in any conspiracy. In fact, there is no allegation in the Complaint that PNA, or its division PCEC, participated in any alleged conspiracy, so there is nothing to gain from alleging that Panasonic Corp. "dominated" these businesses.

As for MECM, there are no facts in the Complaint to indicate that Panasonic Corp. had anything to do with the alleged participation of this company in any purported conspiratorial meetings. Further, it is well-settled in the Ninth Circuit that a corporate parent – absent specific factual elements, not alleged in the DP-CAC, indicating that a subsidiary is a "mere instrumentality" or "alter ego" of the parent – cannot be held liable for any alleged antitrust violations committed by a subsidiary. *See*, *e.g.*, *Sherman v. British Leyland Motors, Ltd.*, 601 F.2d 429, 441 (9th Cir. 1979) (holding that a parent cannot be held liable solely because of a parent-subsidiary relationship); *Tugboat Corp. Co. v. Shipowners & Merchants Towboat Co., Ltd.*, 467 F.Supp. 841, 854 (N.D. Cal. 1979), *aff'd* 658 F.2d 1256 (9th Cir. 1981) ("[A] parent corporation is not liable for its subsidiaries' acts simply because the parent owns all the stock of the subsidiaries and shares common officers and directors."). For these same reasons, Direct Purchaser Plaintiffs cannot state a claim against Panasonic Corp. for any of the alleged actions of its subsidiary MTPD (originally formed as a joint venture with Toshiba), or its formerly-related company, MECM. DP-CAC, ¶¶ 46, 71, 79, 113. There are simply no factual allegations in the Complaint to provide a legal basis for holding Panasonic Corp. liable for any alleged acts of MTPD or its other related companies.

In addition, no claim can be stated against Panasonic Corp. based upon the "lumped" allegation that "Panasonic" – either "directly *or through [MECM]*" – participated in unidentified bilateral or group meetings, from 1996 through at least 2003, in which unlawful agreements were allegedly reached. DP-CAC, ¶ 162 (emphasis added). The Direct Purchaser Plaintiffs define "Panasonic" to collectively include "Panasonic Corp., [MECM], [PNA] and [PCEC]." *Id.* at ¶ 50.

Notice of Motion and Motion to Dismiss Plaintiffs'
Consolidated Amended Complaints as to Panasonic
Corp. and PNA                                                                  9

Case No. 07-5944-SC
MDL No. 1917

1    As a result, it is left unknown whether this allegation involves Panasonic Corp. and which

2    meetings, if any, Panasonic Corp. is alleged to have attended.   The ambiguity is further

3    compounded by the alternative claim that participation in such alleged meetings was "through

4    [MECM]" – a defunct entity dropped from the Complaints.   None of this constitutes a specific

5    allegation against Panasonic Corp. itself that is capable of stating an actionable claim.   *See*, *e.g.*,

6    *Mountain View Pharmacy v. Abbott Labs.*, 630 F.2d at 1388; *In re Sagent Tech.*, 278 F.Supp.2d at

7    1094-1095; *Brennan*, 369 F. Supp.2d at 1136.

8         Nor do Direct Purchaser Plaintiffs provide one iota of factual detail in the Complaint

9    about the nature of Panasonic Corp.'s alleged "participation" in any purported conspiratorial

10   meetings, to the extent that there was such "participation."   For example, the Complaint fails to

11   specify the name of a single person from Panasonic Corp. who participated in these meetings; the

12   number of meetings in which Panasonic Corp. allegedly participated; the specific timeframe –

13   during a period of time that purportedly lasted "at least" eight years – within which Panasonic

14   Corp. allegedly participated; what type of agreements, if any, Panasonic Corp. reached; which

15   kind of CRTs, if any, were discussed; and how the United States CRT market was at all affected

16   by Panasonic Corp.'s alleged participation in meetings that took place in "Taiwan, Malaysia, and

17   China."   *See* DP-CAC, ¶ 139.   Without any specific factual claims about the content or nature of

18   any alleged participation by Panasonic Corp., there is no basis for Plaintiffs to proceed with their

19   conclusory conspiracy claims against this company.   *See*, *e.g.*, *Kendall*, 518 F.3d at 1048; *In re

20   Late Fee and Over-Limit Fee Litig.*, 528 F.Supp.2d 953, 961-962 (N.D. Cal. 2007) (dismissing

21   complaint under *Twombly* where plaintiffs did not allege sufficient detail "as to when, where, or

22   by whom [the] alleged agreement was reached"); *Berry v. Indianapolis Life Ins. Co.*, No. 3:08-

23   CV-0248-B, 2009 WL 636531, at *8 (N.D. Tex. Mar. 11, 2009) ("A period of years is not

24   definitive enough . . . to put any defendant on sufficient notice to be able to defend. The

25   conspiracy claim identifies no specific time or place in which any meeting of the minds between

26   the [Defendants] occurred and no individuals from any [Defendants] who allegedly participated

27   in such meetings, conversations, or communications. Plaintiffs have not pled the factual

28   specificity to elevate their claim above the speculative level from conceivable to plausible").

Notice of Motion and Motion to Dismiss Plaintiffs'
Consolidated Amended Complaints as to Panasonic
Corp. and PNA                                                10

Case No. 07-5944-SC
MDL No. 1917

Even more ineffectual are the allegations in the DP-CAC concerning Panasonic Corp. which relate to perfectly legitimate, run-of-the-mill business activities, such as a subsidiary's plant closure[16] and the formation of MTPD.[17]   There are no facts in the Complaint to tie these events to any alleged conspiracy purportedly participated in by Panasonic Corp.  *See*, *e.g.*, *In re Digital Music Antitrust Litig.*, 592 F.Supp.2d 435, 442-443 (S.D.N.Y. 2008) (allegations concerning creation and operation of joint venture are insufficient under *Twombly*).   As the *Twombly* Court itself recognized, normal business activities, such as "reductions in manufacturing capacity by Defendants," without much more, are equally consistent "with a wide swath of rational and competitive business strateg[ies] unilaterally prompted by common perceptions of the market."  550 U.S. at 554.

Finally as previously discussed, the alleged fact that Panasonic Corp. is cooperating with foreign government investigations of the CRT manufacturing industry cannot provide the missing factual allegations to support the participation of Panasonic Corp. in any alleged conspiracy.[18] *See*, *e.g.*, *In re GPU Antitrust Litig.*, 527 F.Supp.2d 1011, 1024 (N.D. Cal. 2007) (a "grand jury investigation is a non-factor" which "carries no weight in pleading an antitrust conspiracy claim").  Indeed, any argument to the contrary "cannot be so, for if it were, mere knowledge of a governmental investigation would suffice – without *any* further inquiry on a would-be plaintiff's part – to expose the targets of such investigations to free-ranging civil discovery."  *In re Tableware Antitrust Litig.*, 363 F.Supp.2d 1203, 1205 (N.D. Cal. 2005).  It is also not clear how allegations about a government investigation in Japan or Hungary could provide any support for a claim of price fixing in the United States, where those foreign enforcement agencies have no jurisdiction.[19]

---

[16] DP-CAC, ¶¶ 183, 187.

[17] DP-CAC, ¶ 46.

[18] *See* DP-CAC, ¶ 129.

[19] DP-CAC, ¶ 129 (re: JFTC investigation); ¶ 133 (re : Hungarian Competition Authority investigation).  *See In re Elevator Antitrust Litig.*, 502 F.3d 47, 51-52 (2d Cir. 2007) (finding allegations of investigations by European Commission and Italian Antitrust Authority deficient as a matter of law where plaintiffs merely suggest "if it happened there, it could happen here").

Notice of Motion and Motion to Dismiss Plaintiffs'
Consolidated Amended Complaints as to Panasonic
Corp. and PNA

11

Case No. 07-5944-SC
MDL No. 1917

**B.** **Indirect Purchaser Plaintiffs' Allegations Against Panasonic Corp. Also Fail Under *Twombly***

The Indirect Purchaser Plaintiffs' claims against Panasonic Corp. are similarly devoid of any of the required factual detail to sustain their claims under *Twombly*. The Indirect Purchaser Plaintiffs claim that:

- Panasonic Corp. allegedly "dominated and controlled the finances, policies, and affairs" of MECM, PNA, and PCEC. *Id.* at ¶¶ 81-83;

- Panasonic Corp., then known as MEI, entered into a joint venture in 2002 with Defendant Toshiba Corp., called MTPD, to manufacture CRTs, with MEI owning a 64.5% stake in the joint venture. As of 2007, MEI purchased the remaining 35.5% stake. IP-CAC, ¶¶ 72, 80, 85, 125, 128, 177;

- "Panasonic" – a term used by Plaintiffs to lump together Panasonic Corp. and various related entities – allegedly participated in an unspecified number of bilateral communications with other alleged conspirators between 1995 and 1996. IP-CAC ¶¶ 141, 164;

- "Panasonic," "through Panasonic Corp. and [MECM]," allegedly participated in unidentified "Glass Meetings" between at least 1996 and 2003, and that after 2003, "Panasonic" allegedly participated in the claimed conspiracy through its joint venture with Toshiba, MTPD. "Panasonic" also allegedly engaged in unidentified bilateral discussions with other Defendants, and that through these discussions, "Panasonic" purportedly agreed on prices and supply levels for CRTs. *Id.* at ¶¶ 2, 181, 223; and

- "Panasonic" is a manufacturer of CRT TVs and computer monitors, and "Defendants intended to pass on the full cost of [CRTs] in their finished products, and in fact did so." *Id.* at ¶ 238.

As discussed above, the unsupported allegation that Panasonic Corp. "dominated and controlled the finances, policies, and affairs" of its subsidiaries provides no evidence to support the allegation that it participated in any alleged conspiracy. A mere allegation of corporate ownership, with no specific factual allegations to pierce the corporate veil, fails as a matter of law. *See British Leyland Motors,* 601 F.2d at 441; *Tugboat Corp. Co. v. Shipowners & Merchants Towboat Co., Ltd.,* 467 F.Supp. at 854. Further, such allegations of "dominance" are meaningless when there are no underlying factual allegations capable of supporting a claim that PNA, PCEC or MECM engaged in the alleged conspiracy.

Similarly, there are no factual allegations to support any claim that MTPD was a "mere instrumentality" or "alter ego" of Panasonic Corp. *See Doe v. Unocal Corp.,* 248 F.3d 915, 926 (9th Cir. 2001). Nor is there any factual allegation in the Complaint to support the blunt,

Notice of Motion and Motion to Dismiss Plaintiffs'
Consolidated Amended Complaints as to Panasonic
Corp. and PNA

12

Case No. 07-5944-SC
MDL No. 1917

conclusory assertion that Panasonic Corp. "participated in the CRT conspiracy through . . . MTPD" (IP-CAC, ¶ 181).[20]   Absent factual allegations showing participation in the alleged conspiracy, Panasonic Corp.'s creation of a joint venture with Toshiba is presumptively legal. *See*, *e.g.*, *In re Digital Music Antitrust Litig.*, 592 F.Supp.2d at 442-443.

Moreover, the Indirect Purchaser Plaintiffs cannot save their claims against Panasonic Corp. with additional "lumping" claims.  IP-CAC, ¶ 84.  As noted above, it is simply impossible to determine from lumped allegations which defendant is being charged with participation in which meetings and which defendants are alleged to have agreed to which prices or supply levels.[21]   Thus, to the extent that the Indirect Purchaser Plaintiffs allege that one or more of the entire group of defendants defined as "Panasonic" participated in unspecified bilateral meetings with competitors between 1995 and 1996, the allegations are indeterminate and legally ineffective.  *See* IP-CAC, ¶¶ 141, 164.  Indeed, the IP-CAC fails to plead a single fact regarding the involvement of any Panasonic entities in these alleged meetings, or, for that matter, what was actually discussed or agreed-upon at such purported meetings by which particular Panasonic companies, if any.  This wholesale failure runs directly afoul of Plaintiffs' obligation to provide *each and every* defendant with sufficient, factual notice of the claims against them.  *See In re Sagent Tech.*, 278 F.Supp.2d at 1094; *see also Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007); *Dell, Inc. v. This Old Store, Inc.*, No. H-07-0561, 2007 WL 1958609 *3 (S.D. Tex. July 2, 2007).

The same deficiencies of vagueness and lack of specificity plague the conclusory allegation of the Indirect Purchasers with respect to the alleged participation of Panasonic Corp. in unidentified "Glass Meetings" in which unspecified activities allegedly took place in furtherance of the alleged conspiracy.  *See* IP-CAC, ¶ 181.  Here, too, the IP-CAC fails to specify

---

[20] Moreover, it is notable that Plaintiffs' allegations about MTPD are lacking in consistency as well as factual detail.  For example, in the DP-CAC, MTPD is alleged to have been formed in 2002 (¶ 113), yet also to have somehow participated in "several dozen" bilateral and group meetings between 1998 and 2001.  *Id.* at ¶ 174.  By contrast, the IP-CAC includes no allegations regarding MTPD that predate 2003.  *See* IP-CAC, ¶¶ 181, 183.

[21] *See* IP-CAC, ¶ 181 ("*Panasonic* . . . also engaged in multiple bilateral discussions . . . *Panasonic* agreed on prices and supply levels").

Notice of Motion and Motion to Dismiss Plaintiffs'
Consolidated Amended Complaints as to Panasonic
Corp. and PNA                                                              13

Case No. 07-5944-SC
MDL No. 1917

1   the name of a single person from Panasonic Corp. who allegedly participated in any of these

2   meetings; the specific meetings in which Panasonic Corp. allegedly participated; the specific

3   times at which Panasonic Corp. allegedly participated – during a period that Plaintiffs claim to

4   have lasted "at least" eight years – and what the contents were of any agreements that Panasonic

5   Corp. allegedly reached.  Without such factual claims, it is impossible to discern the factual

6   allegations necessary to support an assertion that Panasonic Corp., which turned over its entire

7   CRT manufacturing business to MTPD, had participated in the alleged conspiracy in some

8   unspecified way at some unspecified time. The claims are nothing more than vague speculation

9   and are thus insufficient under *Twombly*.  *See* 550 U.S. at 555-556; *see also Indianapolis Life Ins.*

10  *Co.*, 2009 WL 636531, at *8.

11          Finally, the IP-CAC's allegation that "Panasonic" is a manufacturer of CRT TVs and

12  computer monitors is indicative of nothing.  IP-CAC, ¶ 238.  Moreover, the naked conclusion

13  attached to that allegation – that "Defendants intended to pass on the full cost of [CRTs] in their

14  finished products, and in fact did so" (*id.*) – is devoid of any factual detail or support. It also

15  lumps together all "Defendants" in a manner which makes the claim of no legal relevance.

16  **IV.    CONCLUSION**

17          For all of the foregoing reasons, and for each of the reasons set forth in the Joint Motions,

18  the Panasonic Defendants respectfully submit that the Complaints against Panasonic Corp. and

19  PNA should be dismissed with prejudice.

20

21  DATED: May 18, 2009                         Respectfully submitted,

22                                              Weil, Gotshal, & Manges LLP,
                                                Dewey & LeBoeuf LLP
23

24                                              By:    /s/ David L. Yohai

25                                              STEVEN ALAN REISS (*Admitted Pro Hac Vice*)
                                                DAVID L. YOHAI (*Admitted Pro Hac Vice*)
                                                DAVID E. YOLKUT (*Admitted Pro Hac Vice*)
26
                                                WEIL, GOTSHAL & MANGES LLP
27                                              767 Fifth Avenue
                                                New York, NY  10153
28                                              Telephone: (212) 310-8000

Notice of Motion and Motion to Dismiss Plaintiffs'
Consolidated Amended Complaints as to Panasonic                          Case No. 07-5944-SC
Corp. and PNA                              14                            MDL No. 1917

Fax: (212) 310-8007
steven.reiss@weil.com
david.yohai@weil.com
david.yolkut@weil.com

GREGORY D. HULL (57367)
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, California 94065-1175
Telephone: (650) 802-3000
Facsimile: (650) 802-3100
greg.hull@weil.com


By: ___/s/ Jeffrey L. Kessler_____
JEFFREY L. KESSLER (*Admitted Pro Hac Vice*)
A. PAUL VICTOR (*Admitted Pro Hac Vice*)
EVA W. COLE (*Admitted Pro Hac Vice*)

DEWEY & LEBOEUF LLP
1301 Avenue of the Americas
New York, NY 10019
Telephone: (212) 259-8000
Fax: (212) 259-7013
jkessler@dl.com
pvictor@dl.com
ecole@dl.com

Attorneys for Defendants Panasonic Corporation
(f/k/a Matsushita Electric Industrial Co., Ltd.) and
Panasonic Corporation of North America

    Pursuant to General Order, § X-B, the filer attests that concurrence in the filing of
this document has been obtained from the above signatories.

Notice of Motion and Motion to Dismiss Plaintiffs'
Consolidated Amended Complaints as to Panasonic
Corp. and PNA

15

Case No. 07-5944-SC
MDL No. 1917