KRIS H. BREWER (246008)
DEWEY & LEBOEUF LLP
One Embarcadero Center, Suite 400
San Francisco, California 94111
Telephone: (415) 951-1100
Facsimile: (415) 951-1180
Email: kbrewer@dl.com

JEFFREY L. KESSLER (*Admitted Pro Hac Vice*)
A. PAUL VICTOR (*Admitted Pro Hac Vice*)
DEWEY & LEBOEUF LLP
1301 Avenue of the Americas
New York, New York 10019
Telephone: (212) 259-8000
Facsimile: (212) 259-7013
Email: jkessler@dl.com

STEVEN A. REISS (*Admitted Pro Hac Vice*)
DAVID L. YOHAI (*Admitted Pro Hac Vice*)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153-0119
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Email: steven.reiss@weil.com

Attorneys for Defendants Panasonic Corporation of North America, MT Picture Display Co., Ltd., and Panasonic Corporation (f/k/a Matsushita Electric Industrial Co.)
**[Additional Moving Defendants and Counsel Listed on Signature Pages]**

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **In Re CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION** ) ) ) ) | No.:  M-07-5944 SC<br><br>MDL NO. 1917 |
| This Document Relates to:<br><br>DIRECT PURCHASER ACTION. ) ) ) ) ) ) ) ) ) ) | **DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS DIRECT PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT**<br><br>Date: August 4, 2009<br>Time: 9:00 a.m. |

## NOTICE OF MOTION AND MOTION TO DISMISS

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on August 4th, 2009, at 9 a.m., or as soon thereafter as the matter may be heard, at the San Francisco Resolution Center of JAMS, in San Francisco, California, before the Special Master, Honorable Charles A. Legge (Ret.), pursuant to the Court's Order Re: Special Master's Duties, so ordered by Honorable Samuel Conti on April 8, 2009, the undersigned Defendants will and hereby do move the Court, pursuant to Rules 12(b)(1) and (6), and 9(b) of the Federal Rules of Civil Procedure, for an Order dismissing the Direct Purchaser Plaintiffs' Consolidated Amended Complaint ("DP-CAC"), without leave to amend.

This motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities, the complete files and records in these consolidated actions, oral argument of counsel, and such other and further matters as the Court may consider.

## STATEMENT OF THE ISSUES

1.    Whether this Court has subject matter jurisdiction over the DP-CAC under the Foreign Trade Antitrust Improvements Act of 1982, 15 U.S.C. § 6a.

2.    Whether the purported Direct Purchaser Plaintiffs ("Plaintiffs") lack (a) standing to bring damages claims under *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), and its progeny, and (b) antitrust standing under *Associated General Contractors of California v. California State Council of Carpenters*, 459 U.S. 519 (1983), and its progeny.

3.    Whether Plaintiffs have satisfied the requirements for tolling the statute of limitations which bars claims accruing before November 26, 2003.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

NOTICE OF MOTION AND MOTION TO DISMISS ............................................................. i

STATEMENT OF THE ISSUES ........................................................................................... i

TABLE OF CONTENTS ...................................................................................................... ii

TABLE OF AUTHORITIES .............................................................................................. iv

MEMORANDUM OF POINTS AND AUTHORITIES .......................................................1

INTRODUCTION ...............................................................................................................1

FACTUAL BACKGROUND .............................................................................................3

    I.    THE PARTIES .........................................................................................3

        A.    Plaintiffs .............................................................................3

        B.    Defendants .........................................................................3

    II.    THE ALLEGATIONS ............................................................................4

        A.    The Product Market ..........................................................4

        B.    The Foreign Conduct .......................................................4

ARGUMENT .......................................................................................................................6

    I.    THE DIRECT PURCHASER COMPLAINT MUST BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION BECAUSE IT IS DIRECTED AT ALLEGED ANTICOMPETITIVE AGREEMENTS WITH RESPECT TO FOREIGN SALES OF CRTS TO FOREIGN PURCHASERS ...................6

        A.    The Governing Standards ..................................................7

        B.    Plaintiffs Fail To Allege Facts Sufficient To Support A Claim That The Purported *Foreign* Agreements Had "Direct, Substantial, And Reasonably Foreseeable" Effects On U.S. CRT Sales ...................................................................................9

    II.    PLAINTIFFS ARE INDIRECT PURCHASERS AND THUS LACK STANDING UNDER THE *ILLINOIS BRICK* AND *ASSOCIATED GENERAL CONTRACTORS* DECISIONS ...........................................................................13

ii

A.      Plaintiffs Lack Standing To Bring Claims For Damages Under *Illinois Brick*...................................................................................14

B.      Plaintiffs Lack Antitrust Standing Under *AGC* ..................................16

III.    THE STATUTE OF LIMITATIONS BARS PLAINTIFFS' CLAIMS ACCRUING BEFORE NOVEMBER 26, 2003, WHICH FAIL TO MEET THE REQUIREMENTS FOR TOLLING ........................................................................18

A.      Plaintiffs Have Failed to Adequately Plead Fraudulent Conduct By Defendants.....................................................................................20

B.      Plaintiffs Do Not Plead Either The Failure To Discover The Operative Facts Forming The Basis Of Their Cause Of Action Or The Requisite Due Diligence Because They Have Already Admitted They Knew Years Ago More Than Enough Facts To Pursue Their Case .............................................................................23

IV.     PLAINTIFFS FAIL TO STATE A CLAIM UNDER *TWOMBLY* AGAINST VARIOUS DEFENDANTS.....................................................................................28

CONCLUSION.........................................................................................32

1

# TABLE OF AUTHORITIES

2

Cases                                                                                    Page

3
4

*Ashcroft v. Iqbal*,
    No. 07-1015, slip. op. (U.S. May 18, 2009) ........................................................29, 31

5

*Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*,
    190 F.3d 1051 (9th Cir. 1999) ........................................................................... 17-18

6
7

*Am. Title Ins. Co. v. Lacelaw Corp.*,
    861 F.2d 224 (9th Cir. 1998) ...................................................................................24

8
9

*Animal Sci. Prods., Inc. v. China Nat'l Metals & Minerals Imp. & Exp. Corp.*,
    596 F. Supp. 2d 842 (D.N.J. 2008) .................................................................. *passim*

10
11

*Associated General Contractors of California, Inc. v. California State Council of Carpenters*
    ("AGC"),
    459 U.S. 519 (1983)..................................................... i, 2, 14, 17, 18, 31

12
13

*Ballen v. Prudential Bache Sec., Inc.*,
    23 F.3d 335 (10th Cir. 1994) ...................................................................................22

14

*Barker v. Am. Mobil Power Corp.*,
    64 F.3d 1397 (9th Cir. 1995) ............................................................................. 22-23

15
16

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)............................................................................... *passim*

17
18

*Bhan v. NME Hosps., Inc.*,
    772 F.2d 1467 (9th Cir. 1985) .................................................................................17

19

*Boyd v. AWB Ltd.*,
    544 F. Supp. 2d 236 (S.D.N.Y. 2008)................................................................10, 11

20
21

*Cargill, Inc. v. Monfort of Colo., Inc.*,
    479 U.S. 104 (1986)................................................................................................17

22
23

*Dayco v. Goodyear Tire & Rubber Co.*,
    523 F.2d 389 (6th Cir. 1975) ...................................................................................26

24

*Dee-K Enter. Inc. v. Heveafil Sdn. Bhd*,
    299 F.3d 281 (4th Cir. 2002) ............................................................................11, 12

25
26

*Deirmenjian v. Deutsche Bank*,
    526 F. Supp. 2d 1068 (C.D. Cal. 2007) ..................................................................27

27

iv

28

DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS DIRECT PURCHASER
PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

*Del. Valley Surgical Supply Inc. v. Johnson & Johnson,*
    523 F.3d 1116 (9th Cir. 2008) .................................................................. 13-14, 15, 16

*Dell, Inc. v. This Old Store, Inc.,*
    No. H-07-0561, 2007 WL 1958609 (S.D. Tex. July 2, 2007) ....................................31

*Dickson v. Microsoft Corp.,*
    309 F.3d 193 (4th Cir. 2002) ...................................................................................15

*Empagran S.A. v. F. Hoffman-LaRoche Ltd.,*
    417 F.3d 1267 (D.C. Cir. 2005) .................................................................................9

*Eurim-Pharm GmbH v. Pfizer, Inc.,*
    593 F. Supp. 1102 (S.D.N.Y. 1984) ........................................................................12

*F. Hoffman-LaRoche Ltd. v. Empagran S.A.,*
    542 U.S. 155 (2004).........................................................................................8, 9, 10

*Falstaff Brewing Corp. v. Philip Morris Inc.,*
    No. C-77-2733, 1979 WL 1665 (N.D.Cal. May 10, 1979) .........................................28

*Fed. Election Comm'n v. Williams,*
    104 F.3d 237 (9th Cir. 1996) .......................................................................19, 20, 21

*Gerhart v. Beazer Homes Holdings Corp.,*
    No. CIV S-08-1650, 2009 WL 799256 (E.D. Cal. Mar. 23, 2009) .............................21

*Hanover Shoe, Inc. v. United Shoe Machine Corp.,*
    392 U.S. 481 (1968) .................................................................................................14

*Hill v. U.S. Dep't of Labor,*
    65 F.3d 1331 (6th Cir. 1995) ...................................................................................28

*Huey v. Honeywell,*
    82 F.3d 327 (9th Cir. 1996) .....................................................................................24

*Illinois Brick Co. v. Illinois,*
    431 U.S. 720 (1977)............................................................................... i, 2, 13, 14-15

*In re Compact Disc Minimum Advertised Price Antitrust Litig.,*
    138 F. Supp. 2d 25 (D. Me. 2001) ...........................................................................27

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.,*
    546 F.3d 981 (9th Cir. 2008) ................................................................................8, 12

*In re Elevator Antitrust Litig.,*
    502 F.3d 47 (2d Cir. 2007) ................................................................................30, 31

DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS DIRECT PURCHASER
PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

*In re Fertilizer Antitrust Litig.*,
    No. MF-75-1, 1979 WL 1690 (E.D. Wa. Sep. 14, 1979) ...........................................21

*In re Flash Memory Antitrust Litig.*,
    No. C-07-0086 SBA, 2009 WL 1096602 (N.D. Cal. March 31, 2009) ....................30

*In re Intel Corp. Microprocessor Antitrust Litig.*,
    452 F. Supp. 2d 555 (D. Del. 2006)...............................................................10, 12

*In re Intel Corp. Microprocessor Antitrust Litig.*,
    476 F. Supp. 2d 452 (D. Del. 2007) ...............................................................13

*In re Milk Prods. Antitrust Litig.*,
    84 F. Supp. 2d 1016 (D. Minn. 1997) ...........................................................27

*In re Rubber Chems. Antitrust Litig.*,
    504 F. Supp. 2d 777 (N.D. Cal. 2007) ......................................................7, 8

*In re Sagent Tech., Inc. Derivative Litig.*,
    278 F. Supp. 2d 1079 (N.D. Cal. 2003) ....................................................30, 31

*In Re TFT-LCD Antitrust Litig.*,
    586 F. Supp. 2d 1109 (N.D. Cal. 2008) .......................................................30

*In Re TFT-LCD Antitrust Litig.*,
    599 F. Supp. 2d 1179 (N.D. Cal. 2009) .......................................................30

*In re Urethane Antitrust Litig.*,
    235 F.R.D. 507 (D. Kan. 2006) ...................................................................22

*Jablon v. Dean Witter & Co.*,
    614 F.2d 677 (9th Cir. 1980) .......................................................................19

*Jung v. Ass'n of Am. Med. Colleges*,
    300 F. Supp. 2d 119 (D.D.C. 2004) ............................................................30

*Kansas v. UtiliCorp United, Inc.*,
    497 U.S. 199 (1990).....................................................................................15

*Kendall v. Visa U.S.A., Inc.*,
    518 F.3d 1042 (9th Cir. 2008) ....................................................................31

*Klehr v. A.O. Smith Corp.*,
    521 U.S. 179 (1997).................................................................................18-19

*Lucas Auto. Eng'g, Inc. v. Bridgestone/Firestone, Inc.*,
    140 F.3d 1228 (9th Cir. 1998) ) ....................................................2, 14, 17, 18

vi

DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS DIRECT PURCHASER
PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

*Mountain View Pharmacy v. Abbott Labs.*,
    630 F.2d 1383 (9th Cir. 1980) ...................................................................30

*Nasious v. Two Unknown B.I.C.E. Agents*,
    492 F.3d 1158 (10th Cir. 2007) ................................................................30

*Olson v. Mobil Oil Corp.*,
    904 F.2d 198 (4th Cir. 1990) ....................................................................28

*Or. Laborers-Employers Health & Welfare Trust Fund v. Philip Morris Inc.*,
    185 F.3d 957 (9th Cir. 1999) ....................................................................17

*Papst Motoren GmbH & Co. KG v. Kanematsu-Goshu (U.S.A.) Inc.*,
    629 F. Supp. 864 (S.D.N.Y. 1986)....................................................... 11-12

*Pinney Dock and Transport Co. v. Penn Cent. Corp.*,
    838 F.2d 1445 (6th Cir. 1988) ........................................................... 27-28

*Pocahontas Supreme Coal Co., Inc. v. Bethlehem Steel Corp.*,
    828 F.2d 211 (4th Cir. 1987) .............................................................19, 22

*Rambus Inc. v. Samsung Elecs. Co., Ltd.*,
    Nos. C-05-02298, C-05-00334, 2007 WL 39374 (N.D. Cal. Jan. 4, 2007).......... 19-20

*Rutledge v. Boston Woven Hose & Rubber Co.*,
    576 F.2d 248 (9th Cir. 1978) ....................................19, 20, 21, 23, 24, 27

*Santa Maria v. Pac. Bell*,
    202 F.3d 1170 (9th Cir. 2000) ..................................................................21

*Tosco Corp. v. Cmtys. for a Better Env't*,
    236 F.3d 495 (9th Cir. 2001) ......................................................................7

*Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*,
    552 F.3d 430 (6th Cir. 2008) ............................................................. 29-30

*United Phosphorus, Ltd v. Angus Chem. Co.*,
    131 F. Supp. 2d 1003
    (N.D. Ill. 2001), *aff'd*, 322 F.3d 942, 949 (7th Cir. 2003)........................ 10, 11, 12-13

*United States v. LSL Biotechs.*,
    379 F.3d 672 (9th Cir. 2004) ....................................................................10

*Vess v. Ciba-Geigy Corp.*,
    317 F.3d 1097 (9th Cir. 2003) .............................................................20, 22

vii

*Volk v. D.A. Davidson & Co.*,
    816 F.2d 1406 (9th Cir. 1987) ........................................................... 21-22

*Wood v. Carpenter*,
    101 U.S. 135 (1879) ........................................................................... 26


Statutes and Regulations

Clayton Act § 4, 15 U.S.C. § 15 (2007)............................................................17

Clayton Act § 4, 15 U.S.C. § 15(b) (2007) ........................................................18

Fed.R.Civ.P. § 9(b) ................................................................................19, 20

Fed.R.Civ.P. § 12(b)(1).....................................................................................7

Fed.R.Civ.P. § 12(b)(6).....................................................................................29

Fed.R.Civ.P. § 12(f).........................................................................................7

Foreign Trade Antitrust Improvements Act of 1982,
    15 U.S.C. § 6a (2006) ("FTAIA") .................................................... 1, 8-9


Other Authorities

5B Alan Wright & Arthur R. Miller,
Federal Practice and Procedure § 1350 (3d ed. 2004) .......................................... 7-8

FTAIA House Report, H.R. Rep. No. 97-686 (1982)............................................13

DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS DIRECT PURCHASER
PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

This Court should dismiss the DP-CAC filed by self-proclaimed "direct purchaser" Plaintiffs because it is facially deficient and falls far short of properly stating a claim for relief under the federal antitrust laws in several different ways.

*First*, Plaintiffs cannot invoke the U.S. antitrust laws to address alleged anticompetitive agreements with respect to wholly foreign sales (from foreign suppliers to foreign purchasers abroad) of cathode ray tubes ("CRTs").  Despite Plaintiffs' best efforts to hide the foreign nature of their claims with vague allegations and conclusory references ostensibly relating to the U.S. or some amorphous global market, a careful review of the DP-CAC reveals that Plaintiffs have failed to make a single specific allegation to support the claim that the alleged conduct had "a direct, substantial, and reasonably foreseeable effect" on U.S. commerce giving rise to a Sherman Act claim, as required under the Foreign Trade Antitrust Improvements Act of 1982, 15 U.S.C. § 6a ("FTAIA").

Rather, Plaintiffs attempt to tie the alleged foreign price-fixing to the U.S. by claiming that finished "CRT Products" – products incorporating CRTs as a component (*e.g.*, television sets and computer monitors) ("Finished Products") – sold in the U.S., would have their prices "affected" by the alleged conspiracy.  It is well-settled, however, that such alleged, indirect "ripple effects" on the U.S. domestic market are insufficient to establish subject matter jurisdiction under the U.S. antitrust laws.  Plaintiffs' claims should therefore be dismissed or, at a minimum, limited to those sales of allegedly price-fixed CRTs, if any, in the U.S.

*Second*, despite calling themselves "direct purchasers," Plaintiffs never allege that they purchased the allegedly price-fixed products – CRTs – directly (presumably because they cannot).  As Plaintiffs did not apparently purchase CRTs directly from any Defendant, they are, therefore, at best, *indirect purchasers*.  Plaintiffs attempt to magically transform themselves into direct purchasers by impermissibly conflating CRTs and Finished Products

---

into the omnibus category they conveniently label "CRT Products" and alleging that they directly purchased "CRT Products." Clearly, linguistic games cannot transform Plaintiffs into direct purchasers and so easily avoid the direct purchaser rule of *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977). Simply put, as Plaintiffs are not direct purchasers of CRTs, they lack standing to bring their Clayton Act damages claims.

Moreover, Plaintiffs' lack antitrust standing under *Associated General Contractors of California, Inc. v. California State Council of Carpenters* ("*AGC*"), 459 U.S. 519 (1983), which requires, among other things, that an antitrust plaintiff allege "antitrust injury" – *i.e.*, injury that is of the type the antitrust laws were intended to rectify – and satisfy various "remoteness" factors, none of which has been properly alleged here. *See* 459 U.S. at 537-44; *Lucas Auto. Eng'g, Inc. v. Bridgestone/Firestone, Inc.*, 140 F.3d 1228, 1232 (9th Cir. 1998). For this reason alone, Plaintiffs' claims should be dismissed in their entirety.

*Third*, even if the DP-CAC could somehow survive these stark deficiencies, which it cannot, the statute of limitations would still bar all claims based on sales of CRTs that occurred more than four years before the filing of the first complaint in which each Defendant was first named. Plaintiffs' conclusory allegations of fraud are wholly insufficient to satisfy the Rule 9(b) pleading requirements for asserting a claim of fraudulent concealment in the Ninth Circuit.

*Finally*, a number of individual Defendants have concurrently filed, or will file, briefs in support of their individual motions to dismiss under the principles set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Pursuant to this Court's directive to address Defendants' joint position regarding *Twombly* in this brief, Section IV sets forth the applicable plausibility standards governing Plaintiffs' claims under *Twombly* and its progeny. Because Plaintiffs have failed to include sufficient factual allegations to sustain an antitrust conspiracy claim with respect to those Defendants who have raised the *Twombly* defense, such claims must be dismissed.

DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS DIRECT PURCHASER
PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

# FACTUAL BACKGROUND

**I.    THE PARTIES**

     **A.    Plaintiffs**

        The DP-CAC names thirteen separate companies as alleged "direct purchasers" of so-called "CRT Products." DP-CAC ¶¶ 11-23. Despite having allegedly purchased "CRT Products" directly from Defendants, the DP-CAC fails to identify any Finished Products, such as television sets or computer monitors, that any Plaintiff purportedly purchased from any particular Defendant. Nor does the DP-CAC allege that Plaintiffs purchased CRTs directly.

     **B.    Defendants**

        Defendants are forty-four corporate entities comprising at least fourteen corporate family groups and two joint ventures.[1] *Id.* ¶¶ 24-80. Out of the forty-four Defendants, over thirty are foreign entities. *Id.* Some family groups have no U.S. affiliates. *See id.* ¶¶ 24-29, 37-40, 68, 70, 79-80. The few U.S. entities that are named are subsidiaries of foreign parents, and there are no allegations that any of these U.S. entities manufacture, sell, and/or distribute the allegedly price-fixed product – CRTs – in the U.S. or elsewhere.

        There are also no allegations that any of the few U.S. Defendants named in the DP-CAC attended any alleged conspiratorial meetings. Rather, at best, Plaintiffs assert that the U.S. Defendants were "represented" at the purported anticompetitive meetings, which did not take place in the U.S., and were "part[ies] to the agreements reached in them" because the individual meeting participants "entered into agreements on behalf of, and reported these meetings and discussions to, their respective corporate families." *Id.* ¶ 154; *see also id.* ¶¶ 158,

---

[1]   After the filing of the DP-CAC, Plaintiffs agreed to drop Philips Consumer Electronics Co., Philips Electronics Industries Ltd., Panasonic Consumer Electronics Co. and Matsushita Electronic Corporation (Malaysia) Shn. Bhd. from the DP-CAC.

DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS DIRECT PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

161, 163, 165, 167, 169, 172.  Plaintiffs do not provide any *factual* allegations setting forth these purported relationships and arrangements.  *See id.*

## II.   THE ALLEGATIONS

### A.   The Product Market

Plaintiffs allege a worldwide conspiracy to, *inter alia*, fix, raise, maintain and stabilize the price at which CRTs (*not* Finished Products) were sold, allocate market shares and customers, and restrict output in the CRT market.  *See*, *e.g.*, *id.* ¶¶ 138-39 (alleging a "CRT conspiracy" that "affected worldwide prices (including prices in the United States)").  CRTs can be divided into color display tubes ("CDTs"), primarily used in computer monitors, and color picture tubes ("CPTs"), primarily used in televisions.  *See id.* ¶ 103.

Because, however, this alleged conspiracy was wholly foreign in nature and because Plaintiffs do not allege that they purchased CRTs directly from Defendants, Plaintiffs have attempted to blur the relevant product market beyond any meaningful recognition by defining "CRT Products" to include both "products containing CRTs" (the Finished Products) and "CRTs" (the input into the Finished Product).[2]  Doing so, however, does not save Plaintiffs from the fact that they expressly admit that the alleged conspiracy was specifically limited to CRTs and that there was no agreement as to the prices of Finished Products.  *See*, *e.g.*, *id.* ¶ 144.

### B.   The Foreign Conduct

Plaintiffs allege that the CRT conspiracy took place exclusively *outside* of the United States.  Although Plaintiffs allege that Defendants attended at least 500 bilateral and multilateral meetings over the course of twelve years, not one of these purported meetings is alleged to have taken place in the U.S.  Rather, Plaintiffs allege that such meetings occurred in

---

[2]  Indeed, throughout the DP-CAC, Plaintiffs variably refer to "CRTs," *see*, *e.g.*, *id.* ¶¶ 99-111, 139, 144, "CRT Products," *see*, *e.g.*, *id.* ¶¶ 11-23, 24-80, which is defined to include downstream products that utilize CRTs, and "CRT products," *see*, *e.g.*, *id.* ¶¶ 101, 121, an undefined term.

4

Southeast Asia, Taiwan, Korea, South Korea, Indonesia, Thailand, Singapore, Japan, Malaysia, China, Scotland, the U.K. and Europe. *Id.* ¶¶ 6, 134, 141, 151, 155-57, 159-60, 162, 164, 166, 168, 170-71, 173-80.

Similarly, Plaintiffs do not allege that any of the purported foreign meetings, agreements or other purportedly anticompetitive conduct was directed at the U.S. market. *See id.* ¶¶ 134-80.  For example, in the fourteen paragraphs describing the so-called "Glass Meetings," *see id.* ¶¶ 140-53, Plaintiffs' only reference to the U.S. is in the context of the allegation that prices set at the "Glass Meetings" were purportedly described using "United States dollars," *id.* ¶ 144.  Plaintiffs do not allege that the prices set were applicable to CRTs sold in the U.S. or otherwise directed at the U.S. market.  Moreover, Plaintiffs do not allege that the U.S. Defendants had any role in the conspiracy.  Rather, at best they merely speculate that "[t]o the extent" a U.S. Defendant distributed "CRT Products" to purchasers, it would have played a role in the conspiracy.  *Id.* ¶¶ 158, 161, 163, 165, 172; *see id.* ¶ 169.

Plaintiffs attempt to link the alleged foreign CRT conspiracy directed at foreign markets to the U.S. *only* by collapsing the distinction between CRTs and Finished Products and making vague and conclusory allegations that some products in the omnibus category they label "CRT Products" were manufactured, marketed, sold, and/or distributed by Defendants "throughout the United States," "either directly or through [their] subsidiaries or affiliates."  *Id.* ¶¶ 24-80.  But, the DP-CAC is clear on its face that the alleged conspiracy involved *CRTs*, *not Finished Products*.  *See id.* ¶ 139 (referring to "[t]he overall *CRT* conspiracy"); ¶ 111 ("Defendants colluded to restrain output of *CRTs*"); ¶¶ 125-31, 133 (alleging that foreign and domestic enforcement agencies are investigating Defendants' alleged *CRT* conspiracy); ¶ 137 (alleging meetings of "*CRT* makers"); ¶ 144 (alleging that Defendants "agreed upon the prices at which *CRTs* were set"); ¶ 188 ("Defendants' collusion is evidenced by unusual price movements in the *CRT* market."); ¶ 197 ("The stability of the

5

price of *CRTs* was accomplished by the collusive activities alleged above.") (emphases added throughout).

In short, when the DP-CAC is parsed closely, there are simply no specific allegations that there were any discussions or agreements reached regarding prices of *CRTs* destined for, or manufactured in, the U.S., or the allocation of the U.S. *CRT* market or U.S. *CRT* customers.  Indeed, the DP-CAC only vaguely alleges that the "overall *CRT* conspiracy affected worldwide prices (including prices in the United States) that Defendants charged for *CRT Products*."  *Id.* ¶ 139 (emphasis added).  By contrast, the only specific allegations of price effects, as a result of the purported conspiracy, are directed to foreign markets.  *See id.* ¶¶ 153, 195.

## ARGUMENT

**I.   THE DIRECT PURCHASER COMPLAINT MUST BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION BECAUSE IT IS DIRECTED AT ALLEGED ANTICOMPETITIVE AGREEMENTS WITH <u>RESPECT TO FOREIGN SALES OF CRTs TO FOREIGN PURCHASERS</u>**

No matter how much they try to obfuscate their claims with vague and conclusory language, Plaintiffs allege anticompetitive agreements concerning only foreign sales of foreign CRTs to foreign CRT purchasers.  As set forth above, Plaintiffs fail to allege that there was any meeting in which either (i) the prices of CRTs sold in the U.S. were agreed to; (ii) U.S. customers of CRTs were allocated among the participants; or (iii) the U.S. market was otherwise affected.  Plaintiffs seek redress under the U.S. antitrust laws for alleged anticompetitive agreements which are purely foreign in nature.

Plaintiffs' tenuous claim to U.S. jurisdiction rests entirely on the novel proposition that Finished Products sold in the U.S. – *i.e.*, television sets or computer monitors sold in the U.S. to retailers and other customers – would necessarily have their prices "*affected*" by the alleged price fixing of CRTs sold overseas.  DP-CAC ¶ 139 ("The overall CRT conspiracy *affected* worldwide prices (including prices in the United States) that

6

1    Defendants charged for CRT Products.") (emphasis added).  The case law is clear, however,

2    that such conclusory allegations of attenuated "effects" in the U.S. are insufficient to meet the

3    subject matter jurisdictional requirements of the FTAIA.  Nor are vague allegations referring

4    to effects in a purported "worldwide" CRT market sufficient to establish U.S. subject matter

5    jurisdiction over what is indisputably foreign conduct.

6           Alternatively, even if this Court were to construe the DP-CAC as setting forth

7    sufficient factual allegations to support a claim that CRTs sold in the U.S. had their prices

8    fixed, it should still hold that Plaintiffs may not state any claim under the U.S. antitrust laws

9    with respect to CRTs sold to foreign purchasers overseas, even if those CRTs were then

10   incorporated by those customers into Finished Products that were then subsequently exported

11   to the U.S.  It also should strike all allegations of the DP-CAC, pursuant to Rule 12(f), that are

12   not directed to purported agreements with respect to the prices or production of CRTs sold

13   inside the U.S., including, but not limited to, ¶¶ 6, 134-180, 182, 184, 186, 188-97, and

14   200-12.

15          **A.      <u>The Governing Standards</u>**

16          "Federal courts are courts of limited jurisdiction; thus, the Court presumes lack

17   of jurisdiction, and the party seeking to invoke the court's jurisdiction bears the burden of

18   proving that subject matter jurisdiction exists."  *In re Rubber Chems. Antitrust Litig.*, 504 F.

19   Supp. 2d 777, 780 (N.D. Cal. 2007); *see also Tosco Corp. v. Cmtys. for a Better Env't*, 236

20   F.3d 495, 499 (9th Cir. 2001) ("A plaintiff suing in federal court must show in his pleading,

21   affirmatively and distinctly, the existence of whatever is essential to federal jurisdiction.").

22   Dismissal based on lack of subject matter jurisdiction under Rule 12(b)(1) is required, where,

23   as here, an antitrust complaint, on its face, fails to sufficiently allege facts to establish subject

24   matter jurisdiction.  *Rubber Chems.*, 504 F. Supp. 2d at 780.  Moreover, when assessing a

25   motion to dismiss for lack of subject matter jurisdiction, "argumentative (as opposed to

26   reasonable) inferences favorable to the pleader will not be drawn and conclusory allegations

27                                                                                          7

28   DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS DIRECT PURCHASER
     PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

1  or conclusions of law will not be credited."  5B Alan Wright & Arthur R. Miller, Federal

2  Practice and Procedure § 1350 (3d ed. 2004).

3  　　　　　An analysis of a motion to dismiss for lack of subject matter jurisdiction based

4  on the face of the complaint is similar to an analysis of a motion to dismiss for failure to state

5  a claim.  *Rubber Chems.*, 504 F. Supp. 2d at 780.  Thus, to withstand a motion to dismiss for

6  lack of subject matter jurisdiction under the FTAIA, the DP-CAC must "raise a right to relief

7  above the speculative level" and allege "enough facts to state a claim to relief that is plausible

8  on its face."  *Twombly*, 550 U.S. at 555, 570.  Mere "labels and conclusions" are insufficient.

9  *Id.* at 555; *Animal Sci. Prods., Inc. v. China Nat'l Metals & Minerals Imp. & Exp. Corp.*, 596

10  F. Supp. 2d 842, 851 (D.N.J. 2008) (applying the *Twombly* standard to a motion to dismiss for

11  lack of subject matter jurisdiction under the FTAIA).[3]

12  　　　　　Congress passed the FTAIA to make it clear that U.S. antitrust laws do not rule

13  the world, and that attenuated "effects" in the U.S. of anticompetitive conduct abroad are not

14  sufficient to invoke subject matter jurisdiction in the U.S.  Specifically, the FTAIA provides

15  that U.S. antitrust laws:

16  　　　[S]hall not apply to conduct involving trade or commerce (other
17  　　　than import trade or import commerce) with foreign nations
       　　　unless--

18  　　　　　(1) such conduct has a direct, substantial, and reasonably
19  　　　　　foreseeable effect--

20  　　　　　(A) on trade or commerce which is not trade or
21  　　　　　commerce with foreign nations, or on import trade or
       　　　　　import commerce with foreign nations; . . . and

22

23  [3]  Indeed, although in *F. Hoffman-LaRoche Ltd. v. Empagran S.A.*, 542 U.S. 155 (2004), the
   Supreme Court left open the question of whether a plaintiff's failure to establish proximate

24  causation between foreign conduct and domestic effects is properly subject to dismissal under
   Rule12(b)(1) or Rule 12(b)(6), the Ninth Circuit has subsequently recognized that the result

25  and analysis would be the same under either standard.  *In re Dynamic Random Access Memory
   (DRAM) Antitrust Litig.*, 546 F.3d 981, 985 (9th Cir. 2008).

26

27                                                                                                 8

28

(2) such effect gives rise to a claim under the provisions of [U.S. antitrust law].

15 U.S.C. § 6a (2006).  Under this "domestic commerce" requirement, it is well-established that the Sherman Act does not apply to conduct involving foreign trade or commerce unless there are anticompetitive effects on U.S. commerce that are direct, substantial, and reasonably foreseeable, which give rise to a Sherman Act claim.  *F. Hoffman-LaRoche Ltd. v. Empagran S.A.*, 542 U.S. 155, 162 (2004); *see also Empagran S.A. v. F. Hoffman-LaRoche Ltd.*, 417 F.3d 1267 (D.C. Cir. 2005).  As shown below, the DP-CAC, which is directed at alleged foreign agreements relating to the overseas sale of *CRTs*, and the purported ripple effect of such overseas conduct on the U.S. sale of *Finished Products*, fails to meet the subject matter jurisdictional requirements to apply U.S. antitrust law to Plaintiffs' claims.

**B.     Plaintiffs Fail To Allege Facts Sufficient To Support A Claim That The Purported *Foreign* Agreements Had "Direct, Substantial, And Reasonably Foreseeable" Effects On U.S. CRT Sales**

It is clear, from a review of the DP-CAC, that the only specific factual allegations of purported anticompetitive agreements relate to alleged overseas meetings among foreign companies concerning the sale of CRTs in foreign markets to foreign purchasers.  For example, Plaintiffs advance allegations about alleged overseas agreements relating to competition for CRT sales in India, Europe and Brazil.  DP-CAC ¶ 153 (agreements at the purported foreign meetings were reached to "coordinate pricing and supply by CPT producers located in India, Europe, and Brazil"); *see also* ¶ 195.  There are also allegations about overseas meetings involving foreign company attendees in Malaysia, Taiwan, Korea, Indonesia, Thailand, Singapore, Japan, China, Scotland, the U.K. and Europe relating to either CRT sales in foreign markets or an amorphously defined "global" market.  *See id.* ¶¶ 6, 134, 141 (all meetings took place in foreign countries); *see also id.* ¶¶ 153, 195.  Just as in *Animal Science*, the DP-CAC here is "infused with statements unambiguously indicating that Defendants' alleged illegal combination activities" took place in foreign

9

1    locales and "targeted and affected Defendants' entire world trade in [the product], rather than

2    aiming primarily at the United States market." *Animal Sci.*, 596 F. Supp. 2d at 869.

3           Missing from the DP-CAC, however, are any specific factual allegations to

4    support a claim that CRT prices were fixed for, or that competition was otherwise restrained in,

5    the U.S. market.  Moreover, there are no facts alleged to support a claim that competition was

6    restrained in the sale of Finished Products in the U.S.  In fact, Plaintiffs concede that while

7    prices of Finished Products were allegedly *considered*, the only allegedly illegal agreement

8    concerned CRTs.   DP-CAC ¶ 144 ("Defendants also *considered* the internal pricing of

9    products containing CRTs in agreeing upon the prices at which CRTs were set.").   The

10   absence of such factual claims makes it impossible for Plaintiffs to establish subject matter

11   jurisdiction under the U.S. antitrust laws.

12           Under the FTAIA, foreign anticompetitive conduct must have "direct,

13   substantial and reasonably foreseeable" effects on U.S. domestic commerce.  An effect is

14   direct within the meaning of the FTAIA only if it "follows as an immediate consequence of

15   the defendant's activity." *United States v. LSL Biotechs.*, 379 F.3d 672, 680 (9th Cir. 2004).

16   An effect is not "direct" if it is based on an alleged "chain of effects . . . contingent upon

17   numerous developments." *In re Intel Corp. Microprocessor Antitrust Litig.*, 452 F. Supp. 2d

18   555, 560 (D. Del. 2006) (dismissing claims directed at foreign commerce for lack of subject

19   matter jurisdiction); *see also Boyd v. AWB Ltd.*, 544 F. Supp. 2d 236, 245 (S.D.N.Y. 2008) (no

20   direct effect on domestic commerce where there were "intervening developments that

21   simultaneously" affected U.S. prices) (internal quotation marks omitted).

22           Moreover, the alleged domestic effects must not only be "direct, substantial

23   and reasonably foreseeable," they must also be anticompetitive. *See F. Hoffman-LaRoche*,

24   542 U.S. at 162; *Animal Sci.,* 596 F. Supp. 2d at 860-62; *United Phosphorus, Ltd v. Angus*

25   *Chem. Co.*, 131 F. Supp. 2d 1003, 1009 (N.D. Ill. 2001), *aff'd*, 322 F.3d 942, 949 (7th Cir.

26   2003).  This means that it is not sufficient for a plaintiff to allege that purported price fixing

27
                                                                                          10
28   DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS DIRECT PURCHASER
     PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

1  overseas of a component, like a CRT, has an effect on the price of Finished Products in the

2  U.S., without any facts to support a claim that such an effect is a result of a decrease in

3  competition in the U.S. for Finished Products – *i.e.*, that the effect in the U.S. is

4  anticompetitive.

5          As set forth above, the essence of the DP-CAC is that a purported conspiracy

6  relating to the overseas prices charged for CRTs, effectuated at meetings that allegedly took

7  place overseas, and only attended by foreign parties, amorphously "affected worldwide

8  prices" of Finished Products, including Finished Products sold in the U.S.  DP-CAC ¶ 139.

9  This claim appears to be based on the theory that U.S. antitrust jurisdiction can be asserted

10  over alleged agreements to fix CRT prices in foreign markets merely because such CRTs were

11  incorporated by their purchasers in televisions and monitors, some of which were then

12  exported as Finished Products to the U.S.

13          These allegations cannot establish jurisdiction under the FTAIA.  To the

14  contrary, numerous courts have held that similar conclusory allegations that foreign

15  anticompetitive agreements directed at a general worldwide market had some ripple or

16  spillover effect on the price of products in the U.S. were not sufficient to meet the

17  jurisdictional test.  *See, e.g.*, *Dee-K Enter. Inc. v. Heveafil Sdn. Bhd*, 299 F.3d 281, 295 (4th

18  Cir. 2002) (affirming judgment that conspiracy did not have sufficient U.S. effects where "the

19  bulk of the conduct related to the global conspiracy . . . occurred abroad" and the "links to the

20  United States are mere drops in the sea of conduct that occurred [abroad]").[4]

21  _____

22  [4]  *See also Animal Sci.*, 596 F. Supp. 2d at 863 ("mere spillover effects within the United States

23  caused by a conspiracy targeting foreign markets are not sufficiently 'direct' to satisfy the
   FTAIA"); *Boyd v. AWB Ltd.*, 544 F. Supp. 2d at 246 ("global interrelatedness" of the product

24  market did not "demonstrate that [defendant's] conduct [abroad] had the kind of 'direct' effect
   on domestic commerce" required by the FTAIA); *United Phosphorus,* 131 F. Supp. 2d at 1014

25  (holding that inputs used to manufacture products that are imported into the U.S. are
   "obviously not . . . 'direct' much less 'substantial' and 'reasonably foreseeable'"); *Papst*

26  *Motoren GmbH & Co. KG v. Kanematsu-Goshu (U.S.A.) Inc.*, 629 F. Supp. 864, 869 (S.D.N.Y.

27  1986) ("jurisdiction over Sherman Act claims is not supported by every conceivable

28  DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS DIRECT PURCHASER
   PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

For example, in *Intel*, plaintiff challenged agreements between Intel and foreign-based computer manufacturers for the sale of microprocessors and asserted that because the relevant market is a "single, unitary, world-wide market," the defendant's anticompetitive foreign conduct had direct domestic effects, including that the foreign manufacturers put the microprocessors purchased under the allegedly illegal agreements in computers that were subsequently sold into the U.S. *Intel*, 452 F. Supp. 2d at 559. The court, however, held that the alleged effects on the worldwide market were not sufficient to support a claim of direct domestic effects and that the conclusory allegations of U.S. effects amounted to "nothing more than what courts have termed a 'ripple effect' on the United States domestic market, and the FTAIA prevents the Sherman Act from reaching such 'ripple effect.'" *Id.*; *see also Animal Sci.*, 596 F. Supp. 2d at 877 (rejecting as circular the argument that "rising prices must have had a direct and substantial effect on the United States market simply because the prices were rising all over the world").[5]

Here, the allegations are similarly tenuous and removed from supporting subject matter jurisdiction, since the U.S. purchases alleged were of Finished Products, not CRTs, for which there are no factual allegations of price fixing. "The FTAIA explicitly bars antitrust actions alleging restraints in foreign markets for inputs that are used abroad to manufacture downstream products that may later be imported into the United States." *See*

---

repercussion of the action objected to on [U.S.] commerce.") (internal quotation marks omitted); *Eurim-Pharm GmbH v. Pfizer, Inc.*, 593 F. Supp. 1102, 1107 (S.D.N.Y. 1984) (rejecting argument that defendants' foreign conduct in an alleged worldwide market "had a spillover effect on domestic commerce"); *cf. DRAM*, 546 F.3d at 986 ("Congress would not have intended the FTAIA's exception to bring independently caused foreign injury within the Sherman Act's reach") (internal quotation marks omitted).

[5] Even if the allegedly price-fixed CRTs sold in foreign markets were ultimately imported into the U.S. by the foreign customers and then purchased by U.S. customers, this Court would still lack subject matter jurisdiction over those transactions. *See, e.g, Dee-K Enterprises,* 299 F.3d at 294-96 (dismissing foreign commerce claims where the agreements were formed outside of the U.S., and the target of the conspiracy was the global market, although the claims involved goods purchased in the U.S. by U.S. consumers).

DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS DIRECT PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

1    *United Phosphorus*, 131 F. Supp. 2d at 1014 (noting that the domestic effects, if any, of such

2    inputs "would obviously not be 'direct,' much less 'substantial' and 'reasonably

3    foreseeable.'"); *In re Intel Corp. Microprocessor Antitrust Litig.*, 476 F. Supp. 2d 452, 456 (D.

4    Del. 2007).  There are no specific factual allegations in the DP-CAC that any anticompetitive

5    agreement was reached by any of the Defendants with respect to the markets for selling

6    Finished Products in the U.S. [6]

7            In sum, Plaintiffs do not and cannot establish subject matter jurisdiction under

8    the U.S. antitrust laws because their allegations are directed at alleged agreements relating to

9    overseas sales – not domestic sales.  The DP-CAC should thus be dismissed in its entirety.

10   Alternatively, even if the Court were to find the allegations in the DP-CAC sufficient to allege

11   a conspiracy to fix the price of CRTs sold in the U.S. (which they are not), it should still hold

12   that Plaintiffs cannot state a U.S. antitrust claim against agreements involving overseas sales

13   of CRTs, even if those CRTs are subsequently incorporated into Finished Products that are

14   then imported into the U.S.  Accordingly, all such allegations in the DP-CAC must be stricken

15   or dismissed.

16   **II.    PLAINTIFFS ARE INDIRECT PURCHASERS AND THUS LACK STANDING UNDER
17   THE *ILLINOIS BRICK* AND *ASSOCIATED GENERAL CONTRACTORS* DECISIONS**

18           Separate and apart from this Court's lack of subject matter jurisdiction over

19   Plaintiffs' federal antitrust claims, Plaintiffs lack standing to bring their Clayton Act claims

20   under two well-established Supreme Court cases.  *First*, Plaintiffs' damages claims are barred

21   by the direct purchaser rule set forth in *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977).  As

22   applied in this Circuit, *Illinois Brick* establishes "a bright line rule [that] . . . only direct

23   purchasers have standing under § 4 of the Clayton Act to seek damages for antitrust

24   _____

25   [6]  Nor does the fact that a few of the forty-four Defendants are U.S. entities, *see* DP-CAC ¶¶
     24-80, render the alleged anticompetitive effects "domestic."  *See* FTAIA House Report, H.R.
26   Rep. No. 97-686, at 9-10 (U.S. citizenship does not bring a defendant within the reach of U.S.
     antitrust laws).

27                                                                                            13

28   DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS DIRECT PURCHASER
     PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

violations." *Del. Valley Surgical Supply Inc. v. Johnson & Johnson*, 523 F.3d 1116, 1120-21 (9th Cir. 2008).   *Second*, Plaintiffs lack antitrust standing under *Associated General Contractors of California, Inc. v. California State Council of Carpenters* ("*AGC*"), 459 U.S. 519 (1983), which requires, among other things, that an antitrust plaintiff allege "antitrust injury" – *i.e.*, injury that is of the type the antitrust laws were intended to rectify – and satisfy various "remoteness" factors.   459 U.S. at 537-44; *see Lucas Auto. Eng'g, Inc. v. Bridgestone/Firestone, Inc.*, 140 F.3d 1228, 1232 (9th Cir. 1998).

Although Plaintiffs allege a conspiracy regarding CRTs,[7] they do not allege that they were direct purchasers of CRTs.  Instead, they duplicitously allege only that they purchased "CRT Products," which does not establish that they purchased CRTs.  Since Plaintiffs do not allege that they were direct purchasers of CRTs, but instead apparently only purchased Finished Products such as television sets or computer montiors, they are, at best, indirect purchasers and therefore lack standing under both *Illinois Brick* and *AGC*.

**A.**      **Plaintiffs Lack Standing To Bring**
           **Claims For Damages Under *Illinois Brick***

The "direct purchaser" rule is the result of two Supreme Court decisions.  The first, *Hanover Shoe, Inc. v. United Shoe Machine Corp.*, 392 U.S. 481 (1968), was a monopolization case in which the defendant argued that the plaintiff had suffered no injury because the plaintiff had passed any overcharges along to its own customers.  The Supreme Court held that the defendant "was not entitled to assert a passing-on defense."  *Id.* at 494.  As the Court later explained:  "we understand Hanover Shoe as resting on the judgment that the

---

[7]  *See* DP-CAC ¶ 139 (referring to "[t]he overall *CRT* conspiracy"); ¶ 111 ("Defendants colluded to restrain output of *CRTs*"); ¶¶ 125-31, 133 (foreign and domestic enforcement agencies are investigating Defendants' alleged *CRT* conspiracy); ¶ 137 (alleging meetings of "*CRT* makers"); ¶ 144 (alleging that Defendants "agree[d] upon the prices at which *CRTs* were set"); ¶ 188 ("Defendants' collusion is evidenced by unusual price movements in the *CRT* market."); ¶ 197 ("The stability of the price of *CRTs* was accomplished by the collusive activities alleged above.") (emphases added throughout).

DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS DIRECT PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

antitrust laws will be more effectively enforced by concentrating the full recovery for the overcharge in the direct purchasers rather than by allowing every plaintiff potentially affected by the overcharge to sue only for the amount it could show was absorbed by it." *Ill. Brick*, 431 U.S. at 734-35.

In *Illinois Brick*, the Supreme Court extended the *Hanover Shoe* principle to foreclose the offensive use of a pass-on theory.  The Supreme Court held that indirect purchasers generally may not sue for damages under the Sherman Act.  *Id.* at 736-37.  If such actions were permitted, the Court found, judges and juries would face the intractable task of trying to determine how much of an alleged overcharge was paid by the direct purchasers and how much, if any, was passed on to the indirect purchasers; this would "complicate treble-damages actions with attempts to trace the effects of the overcharge on the purchaser's prices, sales, costs, and profits, and of showing that these variables would have behaved differently without the overcharge."  *Id.* at 725.  The Court concluded that "[h]owever appealing this attempt to allocate the overcharge might seem in theory, it would add whole new dimensions of complexity to treble-damages suits and seriously undermine their effectiveness."  *Id.* at 737.

The Supreme Court has held firm on this bright line statutory construction.  *See, e.g.*, *Kansas v. UtiliCorp United, Inc.*, 497 U.S. 199, 208 (1990) (refusing to create an exception to the *Illinois Brick* rule, even in cases where concerns "about the difficulties of apportionment, the risk of multiple recovery, and the diminution of incentives for private antitrust enforcement would . . . . not apply with equal force"); *see also Dickson v. Microsoft Corp.*, 309 F.3d 193, 214 (4th Cir. 2002) (noting that courts have properly read *UtiliCorp* as "caution[ing] lower federal courts against creating new exceptions to the *Illinois Brick* rule").  And, the Ninth Circuit recently declined a request to relax this bar under particular circumstances.  *Del. Valley Surgical*, 523 F.3d at 1123 ("Appellants fail to persuade this court that there is anything extraordinary about the facts of this case warranting a deviation from the

15

DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS DIRECT PURCHASER
PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

firmly established *Illinois Brick* rule.").  This bright line rule bars Plaintiffs – as indirect purchasers of allegedly price-fixed CRTs contained in Finished Products – from asserting a Clayton Act claim against the Defendants for damages.

The DP-CAC reveals that Plaintiffs understand the fatal impact the bright line *Illinois Brick* rule has on their claims.  Indeed, because Plaintiffs have not alleged (and presumably cannot allege) that they purchased CRTs directly, Plaintiffs attempt to transform themselves into direct purchasers by conflating CRTs and the Finished Products that contain them into an omnibus category that they conveniently label "CRT Products."  DP-CAC ¶ 1. Using this contrived definition, they allege that they purchased "CRT Products" directly from Defendants.  *Id.* ¶¶ 11-23, 222.

Plaintiffs' semantical games are plainly insufficient to meet the stringent bar of *Illinois Brick*.  Plaintiffs only allege a conspiracy to fix the prices of CRTs.  *See supra* note 7. As Plaintiffs have not alleged – because they apparently cannot allege – that they are direct purchasers of CRTs, Plaintiffs lack standing to bring their Clayton Act claims under *Illinois Brick*.[8]

### B.    Plaintiffs Lack Antitrust Standing Under *AGC*

To the extent that Plaintiffs seek recovery for purchases of finished products containing CRTs, they also lack antitrust standing under the test articulated in *AGC*.  *See* Defendants' Joint Motion to Dismiss Indirect Purchaser Plaintiffs' Consolidated Amended

---

[8]  To the extent Plaintiffs are indirect purchasers, their Sherman Act claims could only survive if their purported purchases fell within one of the narrow exceptions to *Illinois Brick*.  This Circuit recognizes only two such exceptions:  (1) claims where the plaintiff purchased the price-fixed product from an intermediary under a pre-existing cost-plus contract; or (2) claims where the plaintiff purchased the price-fixed product from an intermediary that is owned or controlled by the defendant manufacturer of the product.  *See Del. Valley Surgical*, 523 F.3d at 1123 n.1.  Plaintiffs' claims do not qualify under either of these narrow exceptions.  *First*, they do not plead that their purchases were pursuant to a pre-existing cost-plus contract. *Second*, to the extent they only purchased Finished Products, they do not (and cannot) allege that they purchased the price-fixed good from an intermediary owned or controlled by a defendant manufacturer of the alleged price-fixed good.

16

1   Complaint ("Joint Motion to Dismiss the IP-CAC") at 16-29 (incorporated herein by

2   reference).[9]

3          In *AGC*, the Supreme Court set forth a multi-factor test to be used in

4   determining antitrust standing.  *See* 459 U.S. at 537-44.  The Ninth Circuit has adopted those

5   factors, which involve:  (1) the nature of the plaintiff's alleged injury; that is, whether the

6   injury is of the type the antitrust laws were intended to forestall ("antitrust injury"); (2) the

7   directness of the injury; (3) the speculative measure of the harm; (4) the risk of duplicative

8   recovery; and (5) the complexity in apportioning damages.  *See Lucas Auto. Eng'g*, 140 F.3d at

9   1232.  A failure to plead allegations sufficient to demonstrate antitrust standing under these

10  principles is grounds for dismissal.  *AGC*, 459 U.S. at 521 (affirming district court's grant of

11  motion to dismiss); *see also Or. Laborers-Employers Health & Welfare Trust Fund v. Philip*

12  *Morris Inc.*, 185 F.3d 957, 962-66 (9th Cir. 1999) (affirming grant of judgment on the

13  pleadings).

14         Plaintiffs must prove that they have antitrust standing to challenge the alleged

15  antitrust violation under Section 4 of the Clayton Act, 15 U.S.C. § 15.  *See Cargill, Inc. v.*

16  *Monfort of Colo., Inc.*, 479 U.S. 104, 110 (1986).  Here, Plaintiffs who allege they bought only

17  finished goods containing CRTs, such as television sets and computer monitors, have not

18  suffered "antitrust injury" – a necessary, but not sufficient, condition for proving antitrust

19  standing under *AGC* – because they are not "participants in the relevant market" (*i.e.*, the

20  market for CRTs, whose prices are alleged to have been fixed).  *See id.* at n.5; *Bhan v. NME*

21  *Hosps., Inc.*, 772 F.2d 1467, 1470 (9th Cir. 1985) (requiring "the injured party be a participant

22  in the *same* market as the alleged malefactors") (emphasis added); *Am. Ad Mgmt., Inc. v. Gen.*

23  *Tel. Co. of Cal.*, 190 F.3d 1051, 1057 (9th Cir. 1999) ("Antitrust injury requires the plaintiff to

24

25  _____

    [9]  To avoid duplicative briefing, Defendants refer the Court to the analysis of antitrust standing
26  under *AGC* that is set forth in the Joint Motion to Dismiss the IP-CAC, and set forth here only
    the basic contours of the argument.
27
                                                                                          17
28  _____
    DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS DIRECT PURCHASER
    PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

1   have suffered its injury in the market where competition is being restrained.  Parties whose

2   injuries, though flowing from that which makes the defendant's conduct unlawful, are

3   experienced in another market do not suffer antitrust injury."); *see also AGC*, 459 U.S. at 538

4   (antitrust laws are designed to "protect[] the economic freedom of participants *in the relevant*

5   *market*") (emphasis added).

6            Nor do Plaintiffs satisfy the remaining factors of *AGC*, which focus on the

7   "remoteness" of the alleged injury.  *See AGC*, 459 U.S. at 540-44; *Lucas Auto. Eng'g*, 140 F.3d

8   at 1232.  Because the alleged injury of Plaintiffs who purchased Finished Products occurred

9   only after the CRTs were channeled through multiple layers of manufacturing, distribution and

10  retail chains, and only after the CRTs were combined with other component parts to create the

11  different finished products ultimately purchased by Plaintiffs,[10] they have not proven that their

12  alleged injury was anything but remote, speculative and unmanageably complex, with the

13  attendant risk that any recovery would be unreasonably difficult, if not impossible, to prove, as

14  well as duplicative.

15           For this reason alone, as well as those set forth in the Joint Motion to Dismiss

16  the IP-CAC, this Court should dismiss for lack of antitrust standing Plaintiffs' claims as they

17  are predicated on purchases of Finished Products.

18  **III.   THE STATUTE OF LIMITATIONS BARS PLAINTIFFS' CLAIMS ACCRUING BEFORE**
         **NOVEMBER 26, 2003, WHICH FAIL TO MEET THE REQUIREMENTS FOR TOLLING**
19
20           The Clayton Act bars Plaintiffs' claims for antitrust injuries based on sales that

21  occurred more than four years before the filing of the first direct purchaser complaint on

22  November 26, 2007.[11]  *See* 15 U.S.C. § 15b; *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 189

23  ─────────────────────
24  [10]  Indeed, as alleged in the IP-CAC, CRTs pass through a complex web of manufacturing,
     distribution, and retail marketing channels before they are ultimately purchased by a consumer
     as a Finished Product.  *See*, *e.g.*, IP-CAC ¶¶ 223-31.

25  [11]  Crago, Inc. filed the first complaint on November 26, 2007, thereby precluding any claim
26  for relief stemming from sales activity prior to November 26, 2003 against those defendants
     named in the Crago complaint.  The statute of limitations bars claims based on sales occurring
27                                                                                                    18
     ─────────────────────────────────────────────────────────────────────────
28   DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS DIRECT PURCHASER
     PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

1    (1997) (the sale of products at artificially high fixed prices "does not permit the plaintiff to

2    recover for the [prior] injury caused by old overt acts outside the limitations period").  Because

3    "the running of the statute [of limitations] is apparent on the face of the complaint, the defense

4    may be raised by a motion to dismiss."  *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th

5    Cir. 1980).

6            Plaintiffs claim that the statute of limitations should be tolled because

7    Defendants fraudulently concealed the alleged conspiracy.  DP-CAC ¶¶ 200-12.  Plaintiffs'

8    allegations in this regard are not only vague and insubstantial, but they are also contrary to

9    Plaintiffs' other allegations in the DP-CAC.  In contrast to Plaintiffs' meager allegations,

10   courts in this Circuit have routinely held that claims of fraudulent concealment must be pled

11   *with particularity*, namely facts showing:  (1) fraudulent conduct by the defendants resulting in

12   concealment of the operative facts that are the basis of their claim; (2) failure of the plaintiffs to

13   discover the operative facts that are the basis of its cause of action within the limitations

14   period; and (3) due diligence by the plaintiffs until discovery of those facts.  *See Fed. Election*

15   *Comm'n v. Williams,* 104 F.3d 237, 240-41 (9th Cir. 1996) (ruling plaintiff failed to establish

16   the elements necessary to toll the statute of limitations); *see also* Fed. R. Civ. P. 9(b); *Rutledge*

17   *v. Boston Woven Hose & Rubber Co.*, 576 F.2d 248, 250 (9th Cir. 1978) (dismissing complaint

18   for failure to plead facts with requisite particularity to toll the statute of limitations);

19   *Pocahontas Supreme Coal Co., Inc. v. Bethlehem Steel Corp*., 828 F.2d 211, 219 (4th Cir.

20   1987) (applying Rule 9(b) standard to plaintiff's fraudulent concealment allegations designed

21   to toll the statute of limitations on plaintiff's Sherman Act claims); *Rambus Inc. v. Samsung*

22   *Elecs. Co., Ltd.*, Nos. C-05-02298, C-05-00334, 2007 WL 39374, at *6-7 (N.D. Cal. Jan. 4,

23   2007) (dismissing defendant's unfair competition counterclaim, under Section 17200 of the

24   _____

25   more than four years prior to the filing of the complaint in which each defendant was first

26   named, which for some defendants was as recently as the March 16, 2009 filing of the
     amended consolidated complaint.

27                                                                                              19

28   DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS DIRECT PURCHASER
     PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

California Business Professional Code, because it failed to plead fraudulent concealment with the specificity required to invoke the equitable tolling doctrine). To satisfy this stringent pleading standard, Plaintiffs must allege the "who, what, where, when, and how" of the alleged fraudulent conduct. *See Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1106-07 (9th Cir. 2003) (affirming dismissal of claims grounded in fraud because of plaintiff's failure to plead with particularity including an absence of the when, where, or how details of the alleged conduct).

Plaintiffs have failed to plead any of the specific facts necessary to sustain their allegations of fraudulent concealment.[12] Indeed, what few "facts" Plaintiffs allege to support their allegations of fraudulent concealment concern the pricing of television sets and computer monitors, products which Plaintiffs concede were not price-fixed. *See, e.g.*, DP-CAC ¶ 144. As such, Plaintiffs fail to allege any facts concerning any alleged fraudulent concealment of the alleged conspiracy to price-fix CRTs. Moreover, Plaintiffs have not pled with anything approaching the required particularity that they failed to discover the operative facts or that they exercised the required due diligence to discover those facts. In fact, Plaintiffs' admissions in their original complaints and the DP-CAC establish that they were dilatory in failing to discover the operative facts and therefore cannot amend the DP-CAC to allege the requisite due diligence now.

A.    **Plaintiffs Have Failed to Adequately**
      **<u>Plead Fraudulent Conduct By Defendants</u>**

Plaintiffs have failed to plead fraudulent conduct by Defendants with particularity, as they must, to toll the statute of limitations. *See, e.g. Williams,* 104 F.3d at 240-41; *Rutledge*, 576 F.2d at 249-50; Fed. R. Civ. P. 9(b). To satisfy that standard, plaintiffs must generally plead with particularity "affirmative" statements or acts by defendants which

---

[12] Indeed, the DP-CAC is replete with vague and conclusory allegations concerning CRTs, the product which is the subject of the alleged price-fixing agreements, and Finished Products, which Plaintiffs allegedly purchased from Defendants, such that they also have failed to meet

DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS DIRECT PURCHASER
PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

go beyond the scope of the alleged wrongdoing itself and are designed to prevent plaintiffs from discovering the alleged wrongs.  *See, e.g., Rutledge*, 576 F.2d at 250 (dismissing antitrust claim on statute of limitations grounds because plaintiff failed to allege with particularity "affirmative conduct" to dissuade suspicions plaintiff should have had); *In re Fertilizer Antitrust Litig.*, No. MF-75-1, 1979 WL 1690, at *8 (E.D. Wa. Sep. 14, 1979) ("[N]on-collusion affidavits . . . amount to no more than a denial of wrongdoing, which does not constitute fraudulent concealment."); *Gerhart v. Beazer Homes Holdings Corp.*, No. CIV S-08-1650, 2009 WL 799256, at *7 (E.D. Cal. Mar. 23, 2009) (Fraudulent concealment "'necessarily requires active conduct by a defendant, above and beyond the wrongdoing upon which the plaintiff's claim is filed, to prevent the plaintiff from suing in time.'") (quoting *Santa Maria v. Pac. Bell*, 202 F.3d 1170, 1177 (9th Cir. 2000)).

In *Rutledge*, plaintiff sought to toll the statute of limitations by alleging the defendant had fraudulently concealed the alleged conspiracy "through the adoption of elaborate schemes, resorting to secrecy to avoid detection, and by denying that such discrimination or price differential existed."  *Rutledge*, 576 F.2d at 250.  The Ninth Circuit rejected these allegations as conclusory, and lacking the required particularity, with the exception of plaintiff's allegation that defendant specifically denied its alleged antitrust violation.  Plaintiffs here do not allege that Defendants ever affirmatively denied the existence of alleged agreements to fix prices and limit output.  Rather, as in *Rutledge*, Plaintiffs rely on general, conclusory allegations of secret meetings, which is classic, passive non-disclosure conduct that constitutes, and is indistinguishable from, the conspiracy itself.  Such allegations are insufficient to satisfy the Rule 9(b) requirement to plead specific affirmative acts designed to *cover up* the conspiratorial acts.  DP-CAC ¶¶ 200-12; *see Rutledge*, 576 F.2d at 249-50; *see also Volk v. D.A. Davidson & Co.*, 816 F.2d 1406, 1416 (9th Cir. 1987) (holding that

---

the general pleading standard set forth in *Twombly*.  *See infra* Section IV.; *Twombly*, 550 U.S. at 555, 570; *Animal Sci.*, 596 F. Supp. 2d at 851.

DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS DIRECT PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

1    defendants' alleged failure to disclose certain facts does not toll the statute of limitations or

2    "translate [plaintiffs'] lack of due diligence into active concealment").

3            The closest Plaintiffs come to describing any alleged affirmative acts of "cover

4    up" is their repeated allegation that Defendants used a pretextual excuse of a "shortage of

5    critical components such as glass" to justify price increases of television sets and computer

6    monitors.  DP-CAC ¶¶ 191, 208; *see id.* ¶ 209; *see also Pocahontas*, 828 F.2d at 218-19.  But

7    leaving aside whether such an allegation – if specifically pled – would be sufficient, Plaintiffs

8    do not plead which specific Defendant, if any, made such a statement, or where or when such a

9    statement was made.  The allegations thus fall decidedly short of the particularity required by

10   Rule 9(b).  *See Vess*, 317 F.3d at 1106 (all averments of fraud must allege the "'who, what,

11   when, where, and how'" of the fraudulent conduct); *Ballen v. Prudential Bache Sec., Inc.*, 23

12   F.3d 335-37 (10th Cir. 1994) (a plaintiff seeking to toll the statute of limitations based on

13   fraudulent concealment must plead the fraudulent conduct element of fraudulent concealment

14   with particularity as required under Rule 9(b)); *cf. In re Urethane Antitrust Litig.*, 235 F.R.D.

15   507, 517 (D. Kan. 2006) (plaintiffs satisfied the "who, what, where, and when of the

16   defendants' allegedly false and pretextual reasons for price increases" because they pled the

17   timing and content of the pretextual and false explanations by each individual defendant).

18           By contrast, the only detail Plaintiffs provide with respect to any alleged

19   statement about the cost of glass, or any other CRT component, is a statement they attribute *not*

20   *to any Defendant, but to an unnamed distributor* of LG Electronics CRT monitors.  This

21   distributor is alleged to have stated at some point in 2004 that "'[t]his shortage [of glass shells]

22   is a global phenomena and every company has to increase the prices of CRT monitors in due

23   course of time.'"  DP-CAC ¶ 209 (alterations in original).  In failing to attribute even a single

24   affirmative statement to a Defendant, Plaintiffs do not plead fraudulent concealment at all, let

25   alone with the specificity required by Rule 9(b).  *See Barker v. Am. Mobil Power Corp.*, 64

26   F.3d 1397, 1402 (9th Cir. 1995) (observing that under the doctrine of fraudulent concealment,

27

28
                                                                                                      22

1  "a statute of limitations may be tolled only if the plaintiff establishes affirmative conduct upon

2  the part of *the defendant*") (emphasis in original) (internal quotation marks omitted).

3          Nor do Plaintiffs plead any facts, or even claim in conclusory fashion, that there

4  was not a shortage of glass, or that they attempted to discover whether in fact the alleged

5  statement about the "global phenomena" was true.  Apart from this single legally insignificant

6  statement by a third party in 2004, the DP-CAC says nothing about any alleged "cover up"

7  conducted by any Defendant between March 1, 1995, the claimed start date of the class period,

8  and 2004.   During these many years, Plaintiffs allege they had been paying otherwise

9  inexplicably high prices.  *See*, *e.g.*, DP-CAC ¶ 188 ("*In the 1990s*, industry analysts repeatedly

10 predicted declines in consumer prices for CRTs that did not fully materialize.") (emphasis

11 added); Complaint, *Arch Elecs. et al. v. LG Elecs., Inc. et al.*, filed Nov. 29, 2007, ¶

12 76 (describing the prices of CRT products during the Class Period as "fundamentally

13 inconsistent with a competitive market"); Complaint, *Elec. Design Co. et al. v. Chunghwa*

14 *Picture Tubes, Ltd. et al.*, filed Jan. 25, 2008, ¶ 44 (same).

15         For the foregoing reasons, Plaintiffs' claims for damages for sales activity

16 predating November 26, 2003 (and later for subsequently named Defendants) must be

17 dismissed for failure to plead the requisite fraudulent conduct with particularity, thereby

18 preventing any tolling of the statute of limitations.

19     **B.     Plaintiffs Do Not Plead Either The Failure To Discover The**
**Operative Facts Forming The Basis Of Their Cause Of Action Or**
20     **The Requisite Due Diligence Because They Have Already Admitted**
**They Knew Years Ago More Than Enough Facts To Pursue Their Case**
21

22         Plaintiffs also must plead with particularity that, as a result of Defendants'

23 affirmative acts of concealment, they had neither actual nor constructive knowledge of the

24 facts constituting their claim.  *Rutledge*, 576 F.2d at 249-50.  In addition, Plaintiffs must plead

25 that they exercised reasonable diligence in attempting to discover the pertinent facts related to

26

27                                                                                          23

28 DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS DIRECT PURCHASER
PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

the alleged conspiracy. *Id.* (dismissing plaintiff's complaint because he could have discovered the alleged conspiracy with a diligent pursuit).

Although Plaintiffs allege, in conclusory fashion, that they lacked knowledge of the operative facts creating their claim for relief before November 2007, when alleged government investigations regarding CRTs became public, the allegations in their complaints tell another story.[13]   Plaintiffs, who purchased television sets and computer monitors throughout the twelve year class period from March 1995 through November 2007, and therefore had full knowledge of the prices they were paying, allege the following *publicly available market characteristics* in the Crago Complaint, one of the more detailed original complaints, and in the DP-CAC, none of which was concealed from Plaintiffs:[14]

## An Oligopolistic Market Alleged to be Ripe for Collusion

- The CRT industry was "oligopolistic" and dominated by a few companies "*during the Class Period*." Complaint, *Crago Inc. et al. v. Chunghwa Picture Tubes Ltd. et al.*, filed Nov. 25, 2007, ¶ 56 ("Crago Compl."); DP-CAC ¶ 112 (emphasis added).

- The CRT industry underwent "significant consolidation *during the Class Period*," providing the "financial incentive" and "opportunity to conspire."  Crago Compl. ¶¶ 57-58; DP-CAC ¶¶ 113-14 (emphasis added).

- "The CRT industry is marked by a high degree of cooperation [and joint ventures] among supposed competitors." Crago Compl. ¶¶ 59-66, with joint ventures of "cooperation" described in *1993, 1995 and 2000*, DP-CAC ¶¶ 115-18 (emphasis added).

- "[D]efendants maintain close relationships through common membership in trade

---

[13]  Defendants dispute that such allegations can support any theory of liability. But, because Plaintiffs expressly rely on such allegations, they must demonstrate why their failure to commence an investigation at that time does not bar their claims.

[14]  Factual statements alleged in both the DP-CAC and prior complaints are deemed admissions by Plaintiffs.  *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1998) ("[F]actual assertions in pleadings . . .  are considered judicial admissions conclusively binding on the party who made them."); *Huey v. Honeywell*, 82 F.3d 327, 333  (9th Cir. 1996) (holding that factual statements in prior complaints remain admissible party admissions).

DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS DIRECT PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

associations."  Crago Compl. ¶ 67; *see* DP-CAC ¶¶ 176-80 (listing examples of the common memberships).

- As the established technology, CRT manufacturers recouped their investment "*well before the start of the Class Period* [and] [t]hus had very little debt," which "provided an environment in which collusion to fix prices, even at the risk of lower demand, was possible."  Crago Compl. ¶ 69 (emphasis added).

### Prices Alleged to Evidence Collusion

- "*In the 1990s*, industry analysts repeatedly predicted declines in consumer prices for CRTs that did not materialize," including *a 1992 prediction* that the price of the average electronic display would drop to $50 by 1997.  Crago Compl. ¶ 83; DP-CAC ¶¶ 188 (emphasis added).

- Despite competition from flat panel monitors, "prices for CRT monitors were 'stuck stubbornly at high price levels' *throughout 1995* according to a *CNET News.com* article.'"  Crago Conpl. ¶ 86; DP-CAC ¶ 191 (emphasis added).

- "*In early 1999*, despite declining production costs and the rapid entry of flat panel display products, the price of large-sized color CRTs actually rose."  Crago Compl. ¶ 88; DP-CAC ¶ 193 (emphasis added).

- "[T]he average selling price of CRTs rose again *in early 2000*," despite an oversupply of certain CRTs.  Crago Compl. ¶ 89; DP-CAC ¶ 194 (emphasis added).

- "*Over the course of the conspiracy period*, the prices of CRTs remained stable, and in some instances went up in an unexplained manner, despite the natural trend in most technology products to go down over time."  Crago Compl. ¶ 91; DP-CAC ¶ 196 (emphasis added).

### Output Production Alleged to Evidence Collusion

- Following the Asian economic crisis, the keynote speaker at the annual conference for the display industry announced *in 1998* "we have to deviate from the traditional approach of the simple scale up of production volume."  Crago Compl ¶ 87; DP-CAC ¶ 192.

- The alleged dominant companies announced they were closing manufacturing facilities "*during the Class Period*," consistent with alleged agreements to restrain output, including one in *July 2003* that had only been open for five years that made 17 inch CRT monitors, one of the principal applications for CRTs.  Crago Compl. ¶¶ 74-75; DP-CAC ¶¶ 181-82 (emphasis added).

25

**The Availability of Market Information to Plaintiffs**

- Market research companies and industry publications published historical and projected sales information, providing the purported Direct Purchaser Plaintiffs with numerous sources to compare prices and output across competitors and against forecasts. Crago Compl. ¶¶ 71-73, 83, 86 and 89; DP-CAC ¶¶ 108-11, 188, 191 and 194.

The other original complaints contain similar admissions about Plaintiffs' knowledge of the state of the CRT industry. Plaintiffs Arch Electronics, Inc. and Electronic Design Company, the latter being represented by interim lead Plaintiffs' Counsel Saveri & Saveri, Inc., described the prices of CRT products during the Class Period as "*fundamentally inconsistent with a competitive market*." Arch Electronics Compl. ¶ 76; Electronic Design Company Compl. ¶ 44 (emphasis added). Plaintiffs thus cannot claim that they lacked constructive knowledge. *See Dayco v. Goodyear Tire & Rubber Co.*, 523 F.2d 389, 394 (6th Cir. 1975) (any fact that should excite a plaintiff's suspicion was the same as actual knowledge of its entire claim) (citing *Wood v. Carpenter*, 101 U.S. 135, 141 (1879)). Indeed, other than Plaintiffs' allegations of government investigations into the CRT industry being reported in November 2007, the DP-CAC is based entirely on long-available public information. Plaintiffs thus could have crafted virtually the same complaint by 2000, or earlier, when they saw that prices were rising despite industry analysts' predictions that they would fall. *See* DP-CAC ¶¶ 188-97.

Plaintiffs have also failed to plead the requisite due diligence with particularity. In fact, Plaintiffs do not allege a single fact to show that they tried to ascertain the basis for the alleged artificially high prices they claim to have paid *since 1995*. Plaintiffs all but affirmatively admit they did nothing to try to ascertain the facts, attributing their assertion that they *did not* discover anything to the wholly conclusory assertion that they "*could not* have discovered . . . the existence of the conspiracy alleged herein until November of 2007," when government investigations became public. DP-CAC ¶ 200 (emphasis added).

DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS DIRECT PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

1    These purely conclusory allegations of the futility of diligence are contradicted
2    by the allegations made in the Plaintiffs' complaints about the state of pricing in the CRT
3    industry throughout the class period.  In the face of their allegations of inexplicably high prices
4    being charged in a concentrated industry allegedly characterized by cooperation among the
5    Defendant manufacturers, Plaintiffs cannot claim they acted diligently.

6    Further, notwithstanding their conclusory allegation that any investigation
7    *would* have proved futile, Plaintiffs have not alleged what they *did* to try to discover their
8    claims.  *See*, *e.g.*, *Rutledge*, 576 F.2d at 250 (requiring plaintiffs to "state facts showing [their]
9    due diligence in trying to uncover the facts");  *In re Compact Disc Minimum Advertised Price*
10   *Antitrust Litig.*, 138 F. Supp. 2d 25, 29 (D. Me. 2001) (same);  *In re Milk Prods. Antitrust Litig.*,
11   84 F. Supp. 2d 1016, 1024 (D. Minn. 1997) (even assuming adequate allegations of
12   concealment, plaintiffs must plead due diligence with specificity).  Failing to plead that they
13   actually *did* anything to discover, or even try to discover, their claims, Plaintiffs cannot "rely
14   upon conclusory statements to avoid the bar of limitations," *Rutledge*, 576 F.2d at 250,
15   including conclusory allegations that any diligence *would* have been futile.  *Compact Disc*, 138
16   F. Supp. 2d at 29 (plaintiffs' assertion of futility was conclusory and "utterly failed" to plead
17   due diligence); *Deirmenjian v. Deutsche Bank*, 526 F. Supp. 2d 1068, 1093 (C.D. Cal. 2007)
18   (rejecting fraudulent concealment claim where plaintiffs failed to "allege any facts regarding
19   the steps [they] . . . took to discover the claims, such that [their] . . . diligence can be assessed").

20   The fact that the government investigations into CRTs were not disclosed
21   before November 2007 does nothing to save Plaintiffs from their many years of failing to
22   diligently pursue their claims:

> To hold that a tolling or suspension of the limitation of actions
> must continue unless or until proof positive existed of a wrong
> (which might never be established in fact) would abort the
> policy of the law of repose in statutes of limitations [sic] of
> diligence in the equitable principles permitting suspension of
> them.

26   *Pinney Dock and Transport Co. v. Penn Cent. Corp.*, 838 F.2d 1445, 1478 (6th Cir. 1988)

27

28

1   (limiting plaintiff's antitrust action to claims and damages in the four years preceding the filing

2   of the complaint); *see also Falstaff Brewing Corp. v. Philip Morris Inc.*, No. C-77-2733, 1979

3   WL 1665, at *2 (N.D. Cal. May 10, 1979) ("Plaintiff need not have knowledge of the full

4   extent of the defendant's actions nor must he have knowledge of all the evidentiary details

5   before tolling ceases."); *Hill v. U.S. Dep't of Labor*, 65 F.3d 1331, 1338-39 (6th Cir. 1995)

6   (stating plaintiffs' "argument confuses notice with evidence," in holding that claim was time

7   barred because they had sufficient information to file a complaint prior to obtaining better

8   evidence at a later date);  *Olson v. Mobil Oil Corp.*, 904 F.2d 198, 199 (4th Cir. 1990)

9   (rejecting tolling a discrimination claim "merely because [plaintiff] learned of additional

10  information that appeared to make the alleged discrimination more obvious").

11          Plaintiffs' claims in this action against each Defendant must thus be limited to

12  sales since November 26, 2003 for those Defendants named in the first complaint filed on

13  November 26, 2007 or, for each later named Defendant, to its sales in the four years prior to

14  being so named.

15  **IV.  PLAINTIFFS FAIL TO STATE A CLAIM UNDER**
16        ***TWOMBLY* AGAINST VARIOUS DEFENDANTS**

17          Finally, pursuant to the Court's directive to address Defendants' joint position

18  regarding *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), this section will set forth the

19  applicable pleading standard governing Plaintiffs' claims under *Twombly* and its progeny.  A

20  number of individual Defendants are concurrently filing, or will file, separate motions to

21  dismiss pursuant to these pleading requirements with respect to those particular Defendants.[15]

22

23  [15]  Individual Defendants concurrently filing separate motions to dismiss under *Twombly*

24  include: Panasonic Corporation of North America; Panasonic Corporation; LG Electronics, Inc.; LG Electronics USA, Inc.; LG Electronics Taiwan Taipei Co., Ltd.; Beijing Matsushita

25  Color CRT Company, Ltd.;  Samtel Color, Ltd.; Hitachi, Ltd.; Hitachi Asia, Ltd.; Hitachi America, Ltd.; Hitachi Electronic Devices (USA), Inc.; Hitachi Displays, Ltd.; Toshiba

26  Corporation; Toshiba America Electronic Components, Inc.; Toshiba America Information Systems, Inc.; Toshiba America, Inc.; Toshiba America Consumer Products L.L.C.; Tatung

27                                                                                              28

28

1    In *Twombly*, the Supreme Court held that a complaint asserting a violation of

2    Section 1 of the Sherman Act cannot survive a Rule 12(b)(6) motion to dismiss by simply

3    alleging an unlawful agreement in conclusory terms without specific facts to demonstrate that

4    the allegation is not just conjecture.  550 U.S. at 555 (a plaintiff's "[f]actual allegations must be

5    enough to raise a right to relief above the speculative level").   Because concerted action

6    through agreement among the Defendants lies at the heart of a Sherman Act Section 1 claim,

7    Plaintiffs must include in the complaint enough factual allegations, rather than mere

8    speculation or conjecture, to "nudge[]" their conspiracy claim "across the line from

9    conceivable to plausible."  *Id.* at 570.  The *Twombly* Court held that "stating such a claim

10   requires a complaint with enough factual matter (taken as true) to suggest that an agreement

11   was made."  *Id.* at 556.  Without some level of "factual enhancement," a "naked assertion of

12   conspiracy in a § 1 complaint" does not plausibly suggest a preceding agreement.  *Id.* at 557.

13   As the Supreme Court recently reaffirmed, legal conclusions "must be supported by factual

14   allegations" under *Twombly*, as Rule 8, as construed in *Twombly*, "does not unlock the doors of

15   discovery for a plaintiff armed with nothing more than conclusions."  *Ashcroft v. Iqbal*, No.

16   07-1015, slip. op. at 14-15 (U.S. May 18, 2009) (dismissing complaint for failure to plead

17   sufficient facts).   Notably, the *Iqbal* Court held that on a motion to dismiss, conclusory

18   allegations "are not entitled to the assumption of truth."  *Id.* at 15-17.

19   Under *Twombly* and its progeny, Plaintiffs must set forth separate factual

20   allegations to give each and every named Defendant proper notice of the purported claims

21   against it (*i.e.*, to support the claim that each individual Defendant in fact joined and agreed to

22   the alleged conspiracy, and played some role in it).  *Id.* at 565; *see also*, *e.g*., *Total Benefits*

23   *Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 436 (6th Cir. 2008)

24

---

25   Company of America, Inc.; Samsung Electronics Co., Ltd.; and Samsung Electronics America,

26   Inc.  Defendant Daewoo International Co. will file a separate motion to dismiss under

     *Twombly* at a later date.

27

28   DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS DIRECT PURCHASER
     PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

("Generic pleading, alleging misconduct against defendants without specifics as to the role each played in the alleged conspiracy, was specifically rejected by *Twombly*."); *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (concurring with the district court's conclusion that the averments in that case were "in entirely general terms without any specification of any particular activities by any particular defendant"); *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007) ("to state a claim in federal court, a complaint must explain what *each* defendant did to him or her; when *the defendant* did it; how *the defendant*'s action harmed him or her; and, what specific legal right the plaintiff believes *the defendant* violated" for purposes of "permitting the defendant sufficient notice to begin preparing *its* defense") (emphases added).  Indeed, courts have long averred, even before *Twombly*, that merely "lumping" related groups of defendants together is wholly improper.  *See, e.g.*, *Mountain View Pharmacy v. Abbott Labs.*, 630 F.2d 1383, 1388 (9th Cir. 1980) (a "blanket statement [concerning multiple defendants] does not provide adequate notice for responsive pleading");  *In re Sagent Tech., Inc. Derivative Litig.*, 278 F. Supp. 2d 1079, 1094-95 (N.D. Cal. 2003) (dismissing complaint that "lump[ed] together thirteen individual defendants").[16]

---

[16]  To the extent that one decision in this District has opined in a footnote, without analysis, that a complaint can survive a motion to dismiss without pleading allegations on a "defendant by defendant basis," that decision is inconsistent with the principles of *Twombly*, as well as settled caselaw from the Ninth Circuit and this District.  *See In re Flash Memory Antitrust Litig.*, No. C-07-0086 SBA, 2009 WL 1096602, at *5 n.7 (N.D. Cal. Mar. 31, 2009).  Moreover, in the TFT-LCD litigation in this District, Judge Illston dismissed plaintiffs' complaint, holding that a complaint "must allege that each individual defendant joined the conspiracy and played some role in it because, at the heart of an antitrust conspiracy is an agreement and a conscious decision by each defendant to join it."  *In re TFT-LCD Antitrust Litig.*, 586 F. Supp. 2d 1109, 1117 (N.D. Cal. 2008) (internal quotation marks omitted) (also noting that "general allegations as to all defendants, to 'Japanese defendants,' or to a single corporate entity such as 'Hitachi' is insufficient to put specific defendants on notice of the claims against them.").  In allowing plaintiffs' amended allegations to survive, Judge Illston recently reaffirmed that plaintiffs needed to allege "each defendants' participation" in the conspiracy.  *In re TFT-LCD Antitrust Litig.*, 599 F. Supp. 2d 1179, 1185 (N.D. Cal. 2009).   This is consistent with the law in other jurisdictions as well.  *See Jung v. Ass'n of Am. Med. Colleges*, 300 F. Supp. 2d 119, 163 (D.D.C. 2004) ("Plaintiffs cannot escape their burden of alleging that each defendant participated in or agreed to join the conspiracy by using the term 'defendants' to apply to numerous parties").

1          Thus, under *Twombly*, "a plaintiff's obligation to provide the 'grounds' of his

2   'entitle[ment] to relief' *requires more than labels and conclusions*, and a formulaic recitation

3   of the elements of a cause of action will not do" 550 U.S. at 555 (emphasis added); *see also*

4   *Ashcroft*, No. 07-1015, slip. op at 16-17 (same).   Rather than idle speculation, a plaintiff's

5   complaint must sufficiently set forth the *factual* basis of the claims made against each

6   particular defendant in order to raise a right to relief.   This is because, as the Ninth Circuit has

7   noted, "a bare allegation of a conspiracy is almost impossible to defend against, particularly

8   where the defendants are large institutions with hundreds of employees entering into contracts

9   and agreements daily." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008).   The

10  Supreme Court was rightly concerned in *Twombly* that – absent specific, factual allegations –

11  individual Defendants would "[have] little idea where to begin [to respond]." 550 U.S. at 565

12  n.10.

13         Moreover, the *Twombly* Court properly identified as a guiding principle that

14  "proceeding to antitrust discovery can be expensive." *Id.* at 558; *see also Kendall*, 518 F.3d at

15  1047 (a "bare assertion of conspiracy will not suffice because discovery in antitrust cases

16  frequently causes substantial expenditures and gives the plaintiff the opportunity to extort

17  large settlements even where he does not have much of a case") (internal quotation marks

18  omitted).   As the Supreme Court recognized decades ago, "a district court must retain the

19  power to insist upon some specificity in pleading before allowing a potentially massive factual

20  controversy to proceed." *AGC*, 459 U.S. at 528 n.17.   In accordance with these overarching

21  principles, this Court should carefully examine the pleadings with respect to each named

22  Defendant, to ensure that there are sufficient allegations that each and every named entity in

23  fact joined and agreed to the alleged conspiracy.   *See, e.g.*, *Elevator Antitrust Litig.*, 502 F.3d at

24  50; *Sagent Tech.*, 278 F. Supp. 2d at 1094-95; *Dell, Inc. v. This Old Store, Inc.*, No. H-07-0561,

25  2007 WL 1958609, at *3 (S.D. Tex. July 2, 2007).

26

27                                                                                      31

28

1

**CONCLUSION**

2     For all of the reasons stated above, the DP-CAC should be dismissed in its entirety.

3

4     DATED: May 18, 2009                    By: ___/s/ Jeffrey L. Kessler___
                                             JEFFREY L. KESSLER (*pro hac vice*)
5                                            Email: jkessler@dl.com
                                             A. PAUL VICTOR (*pro hac vice*)
6                                            Email: pvictor@dl.com
                                             EVA W. COLE (*pro hac vice*)
7                                            Email : ecole@dl.com
8                                            **DEWEY & LEBOEUF LLP**
                                             1301 Avenue of the Americas
9                                            New York, New York 10019
                                             Telephone: (212) 259-8000
10                                           Facsimile: (212) 259-7013

11                                           KRIS H. BREWER (246008)
12                                           Email: kbrewer@dl.com
                                             **DEWEY & LEBOEUF LLP**
13                                           One Embarcadero Center, Suite 400
                                             San Francisco, California 94111
14                                           Telephone: (415) 951-1100
                                             Facsimile: (415) 951-1180
15

16                                           STEVEN A. REISS (*pro hac vice*)
                                             Email: steven.reiss@weil.com
17                                           DAVID L. YOHAI (*pro hac vice*)
                                             Email: david.yohai@weil.com
18                                           DAVID E. YOLKUT (*pro hac vice*)
19                                           Email: david.yolkut@weil.com
                                             **WEIL, GOTSHAL & MANGES LLP**
20                                           767 Fifth Avenue
                                             New York, New York 10153-0119
21                                           Telephone:  (212) 310-8000
                                             Facsimile:  (212) 310-8007
22

23                                           GREGORY D. HULL (57367)
                                             Email: greg.hull@weil.com
24                                           JOSEPH R. WETZEL (238008)
                                             Email: joseph.wetzel@weil.com
25                                           **WEIL, GOTSHAL & MANGES LLP**
                                             201 Redwood Shores Parkway
26                                           Redwood Shores, California 94065-1175

27                                                                                 32

28    DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS DIRECT PURCHASER
      PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

1   Telephone: (650) 802-3000
2   Facsimile: (650) 802-3100

3   ***Attorneys for Defendants Panasonic***
    ***Corporation of North America, MT Picture***
4   ***Display Co., Ltd., Panasonic Corporation (f/k/a***
    ***Matsushita Electric Industrial Co.)***
5

6   By: ___/s/ Gary L. Halling_____
7   GARY L. HALLING (66087)
    ghalling@sheppardmullin.com
8   JAMES L. MCGINNIS (95788)
    jmcginnis@sheppardmullin.com
9   MICHAEL SCARBOROUGH (203524)
    mscarborough@sheppardmullin.com
10  **SHEPPARD, MULLIN, RICHTER &**
    **HAMPTON LLP**
11  Four Embarcadero Center, 17th Floor
12  San Francisco, California 94111-4109
    Telephone: (415)-434-9100
13  Facsimile: (415)-434-3947

14  ***Attorneys for Defendants Samsung SDI***
15  ***America, Inc., Samsung SDI Co., Ltd.,***
    ***Samsung SDI (Malaysia) Sdn. Bhd., Samsung***
16  ***SDI Mexico S.A. de C.V., Samsung SDI Brasil***
    ***Ltda., Shenzhen Samsung SDI Co. Ltd., and***
17  ***Tianjin Samsung SDI Co., Ltd.***

18

19  By: ___/s/ Michael Tubach_____
20  MICHAEL TUBACH (145955)
    Email: mtubach@omm.com
21  **O'MELVENY & MYERS LLP**
    Two Embarcadero Center, 28th Floor
22  San Francisco, California 94111-3823
    Telephone: (415) 984-8876
23  Facsimile: (415) 984-8701

24  IAN SIMMONS (*pro hac vice*)
25  Email : isimmons@omm.com
    **O'MELVENY & MYERS LLP**
26  1625 Eye Street, NW
    Washington, DC 20006

27                                                          33
28  DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS DIRECT PURCHASER
    PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

Telephone: (202) 383-5300
Faacsimile: (202) 383-5414

***Attorneys for Defendants Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc.***


By: ___/s/ Samuel Miller_____
SAMUEL R. MILLER (66871)
Email: srmiller@sidley.com
MARIE L. FIALA (79676)
Email: mfiala@sidley.com
RYAN M. SANDROCK (251781)
Email: rsandrock@sidley.com
ROBERT B. MARTIN, III (235489)
rbmartin@sidley.com
**SIDLEY AUSTIN LLP**
555 California Street, 20th Floor
San Francisco, California 94104
Telephone : (415) 772-1200
Facsimile: (415) 772-7400

***Attorneys for Defendants LG Electronics, Inc., LG Electronics USA, Inc., and LG Electronics Taiwan Taipei Co., Ltd.***


By:  /s/ Ethan E. Litwin_____
ETHAN E. LITWIN  (*pro hac vice*)
Email: LitwinE@howrey.com
**HOWREY LLP**
153 East 53rd Street, 54th Floor
New York, New York 10022
Telephone: (212) 896-6500
Facsimile: (212) 896-6501
By:  /s/ Joseph A. Ostoyich_____
JOSEPH A. OSTOYICH (*pro hac vice*)
Email: OstoyichJ@howrey.com
**HOWREY LLP**
1299 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2402
Telephone: (202) 783-0800
Facsimile: (202) 383-6610

34

*Attorneys for Defendant Philips Electronics North America Corporation, Koninklijke Philips Electronics N.V., Philips Electronics Industries Ltd., Philips Consumer Electronics Co., Philips Electronics Industries (Taiwan), Ltd., and Philips da Amazonia Industria Electronica Ltda.*

By: /s/ Bruce H. Jackson
BRUCE H. JACKSON (98118)
Email:  bruce.h.jackson@bakernet.com)
ROBERT W. TARUN (64881)
Email:  robert.w.tarun@bakernet.com
**BAKER & MCKENZIE LLP**
Two Embarcadero Center, 11th Floor
San Francisco, California 94111-3802
Telephone:   (415) 576-3000
Facsimile:    (415) 576-3099

PATRICK J. AHERN (*pro hac vice*)
Email:  patrick.j.ahern@bakernet.com
ROXANE C. BUSEY (*pro hac vice*)
Email:  roxane.c.busey@bakernet.com
KAREN SEWELL (*pro hac vice*)
Email:  karen.sewell@bakernet.com
**BAKER & MCKENZIE LLP**
130 E. Randolph Dr., Suite 3500
Chicago, Illinois 60601
Telephone:   (312) 861-8000

*Attorneys for Tatung Company of America, Inc.*

By: /s/ Kent M. Roger
KENT M. ROGER (95987)
Email:  kroger@morganlewis.com
THOMAS R. GREEN (203480)
Email:  tgreen@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
One Market, Spear Street Tower
San Francisco, California 94105-1126
Telephone: (415) 442-1000
Facsimile: (415) 442-1001

35

DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS DIRECT PURCHASER
PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

*Attorneys for Defendants Hitachi, Ltd., Hitachi Asia, Ltd., Hitachi America, Ltd., Hitachi Electronic Devices (USA), Inc., and Hitachi Displays, Ltd.*

By: /s/ Terry Calvani
TERRY CALVANI (53260)
Email: terry.calvani@freshfields.com
BRUCE C. MCCULLOCH (*pro hac vice*)
Email: bruce.mcculloch@freshfields.com
CHRISTINE A. LACIAK (*pro hac vice*)
Email: christine.laciak@freshfields.com
KATE S. MCMILLAN (*pro hac vice*)
Email: kate.mcmillan@freshfields.com
**FRESHFIELDS BRUCKHAUS DERINGER US LLP**
701 Pennsylvania Avenue, N.W.
Suite 600
Washington, DC  20004
Telephone:  (202) 777-4500
Facsimile:  (202) 777-4555

*Attorneys for Defendant Beijing Matsushita Color CRT Company, Ltd.*

By: /s/ George L. Paul
CHRISTOPHER M. CURRAN (*pro hac vice*)
Email:  ccurran@whitecase.com
GEORGE L. PAUL (*pro hac vice*)
Email:  gpaul@whitecase.com
LUCIUS B. LAU (*pro hac vice*)
Email:  alau@whitecase.com
**WHITE & CASE LLP**
701 Thirteenth Street, N.W.
Washington, DC  20005
Telephone: (202) 626-3600
Facsimile: (202) 639-9355

*Attorneys for Defendants Toshiba Corporation, Toshiba America Electronic Components, Inc., Toshiba America Information Systems, Inc.,*

36

1    *Toshiba America, Inc., and Toshiba America*
2    *Consumer Products L.L.C.*

3
     By: /s/ Thad A. Davis
4    THAD A. DAVIS (220503)
     Email:  Thad.Davis@ropesgray.com
5    **ROPES & GRAY LLP**
     One Embarcadero Center
6    Suite 2200
     San Francisco, California 94111-3711
7    Telephone:   (415) 315-2329
     Facsimile:    (415) 315-4899
8

9    *Attorneys for Daewoo International Co.*

10

11   By: /s/ Terrence A. Callan
     TERRENCE A. CALLAN (36305)
12   Email:  terrance.callan@pillsburylaw.com
     **PILLSBURY WINTHROP SHAW**
13   **PITTMAN LLP**
     50 Fremont Street
14   P.O. Box 7880
     San Francisco, California 94120-7880
15   Telephone:   (415) 983-1000
     Facsimile:    (415) 983-1200
16

17   JOSEPH R. TIFFANY II (67821)
     Email:  joseph.tiffany@pillsburylaw.com
18   PHILIP A. SIMPKINS (246635)
     Email:  philip.simpkins@pillsburylaw.com
19   **PILLSBURY WINTHROP SHAW**
     **PITTMAN LLP**
20   2475 Hanover Street
     Palo Alto, California 94304-1114
21   Telephone:   (650) 233-4500
     Facsimile:    (650) 233-4545
22

23   *Attorneys for Irico Group Corporation and*
     *Irico Display Devices Co., Ltd.*
24

25

26   By: /s/ William Diaz
     WILLIAM DIAZ (232297)
27
                                                                37
28   DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS DIRECT PURCHASER
     PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

Email:  wdiaz@mwe.com
**MCDERMOTT WILL & EMERY**
18191 Von Karman Avenue
Suite 500
Irvine, California 92612-7108
Telephone:   (949) 851-0633
Facsimile:    (949) 851-9348

*Attorneys for Samtel Color, Ltd.*

Pursuant to General Order, § X-B, the filer attests that concurrence in the filing of this document has been obtained from each of the above signatories.

38