MICHAEL TUBACH (SBN 145955)
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, California 94111
Telephone:  (415) 984-8700
Facsimile:  (415) 984-8701
Email: mtubach@omm.com

IAN SIMMONS (*pro hac vice*)
O'MELVENY & MYERS LLP
1625 Eye Street NW
Washington, D.C. 20006
Telephone:  (202) 383-5300
Facsimile:  (202) 383-5414
Email:  isimmons@omm.com

Attorneys For Defendants
**SAMSUNG ELECTRONICS CO., LTD.; and**
**SAMSUNG ELECTRONICS AMERICA, INC.**

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE:  CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Case No.: 3:07-cv-5944 SC |
| | MDL No. 1917 |
| This Document Relates To: | **SAMSUNG ELECTRONICS CO., LTD., AND SAMSUNG ELECTRONICS AMERICA, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS DIRECT PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT AND INDIRECT PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT AND MEMORANDUM OF LAW IN SUPPORT** |
| DIRECT PURCHASER ACTIONS and INDIRECT PURCHASER ACTIONS | |
| | [Proposed] Order Granting Motion to Dismiss Without Leave to Amend Filed Concurrently Herewith |
| | Date:      August 4, 2009 |
| | Time:      9:00 a.m. |
| | Before:  The Honorable Charles A. Legge, U.S District Judge (Ret.), Special Master |

**TABLE OF CONTENTS**

Page

STATEMENT OF THE ISSUES PRESENTED ........................................................................ 1

INTRODUCTION ................................................................................................................... 1

FACTUAL BACKGROUND .................................................................................................. 4

I.  THE COMPLAINTS ALLEGE A CONSPIRACY TO FIX THE PRICE OF CATHODE RAY TUBES........................................................................................... 4

II. THE SE DEFENDANTS DO NOT MANUFACTURE, MARKET OR SELL TUBES ......................................................................................................................... 5

ARGUMENT ........................................................................................................................... 7

I.  IN ORDER FOR A COMPLAINT ALLEGING A PRICE-FIXING CONSPIRACY TO SURVIVE A MOTION TO DISMISS, *TWOMBLY* REQUIRES PLAINTIFFS TO PLEAD "PLAUSIBLE GROUNDS TO INFER AN AGREEMENT" AS TO EACH PARTICULAR DEFENDANT ................................. 7

   A.  General Pleading Standards Under *Twombly*............................................................. 7

   B.  A Complaint Fails to Plead "Plausible Grounds" for Relief When It Alleges a Conspiracy that "Makes No Economic Sense" ...................................................... 8

   C.  The Adequacy of a Complaint Alleging a Price-Fixing Conspiracy Must Be Judged on a Defendant-Specific Basis ................................................................. 10

II. THE COMPLAINTS MUST BE DISMISSED BECAUSE THEY FAIL TO STATE A CLAIM AS A MATTER OF LAW .................................................................. 12

   A.  The Complaints Against the SE Defendants Must Be Dismissed for Failure to State a Claim Because the Alleged CRT Price-Fixing Conspiracy "Makes No Economic Sense" as to the SE Defendants........................................ 12

   B.  The Complaints Fail to State a Claim Because the SE Defendants Could Not Be Members of a Horizontal CRT Conspiracy, and Plaintiffs Have Failed to Plead the Elements of a Rule of Reason Claim ...................................... 14

III. PLAINTIFFS CANNOT HOLD THE SE DEFENDANTS VICARIOUSLY LIABLE FOR THE ALLEGED ACTS OF SAMSUNG SDI .......................................... 15

   A.  The Complaints Do Not Plead and Cannot Place Vicarious Liability on the SE Defendants for the Alleged Acts of Samsung SDI......................................... 16

      1.  Plaintiffs Bear the Burden If They Rest Their Claims on a Disregard of the Corporate Form ............................................................. 16

      2.  Plaintiffs Do Not Plead and Cannot Adequately Plead that They Are "Entitled To Relief" for a Horizontal Price-Fixing Conspiracy as to the SE Defendants ............................................................................ 18

   B.  To The Extent Plaintiffs Seek to Hold the SE Defendants Vicariously Liable for the Alleged Actions of Samsung SDI, the Complaints Fail as a Matter of Law Because that Theory Would Be Inherently Implausible .............. 19

i

**TABLE OF CONTENTS**
(continued)

Page

IV.    THE COMPLAINTS FAIL SUFFICIENTLY TO ALLEGE THAT THE SE
DEFENDANTS JOINED THE ALLEGED CONSPIRACY AS REQUIRED BY
*TWOMBLY* ................................................................................................... 21

    A.    The Allegations Against SEC Are Inadequate Under *Twombly* .......................... 21

        1.    "What" ................................................................................................ 21

        2.    "Who" ................................................................................................ 23

        3.    "When" .............................................................................................. 24

    B.    The Allegations Against SEAI Are Inadequate Under *Twombly* ......................... 24

CONCLUSION ................................................................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alaska Airlines, Inc. v. Carey*,
   No. C 07-5711 RBI, 2008 WL 2725796 (W.D. Wash. July 11, 2008)......................................12

*Ashcroft v. Iqbal*,
   No. 07-1015, 2009 WL 1361536 (U.S. May 18, 2009) ............................................8, 9

*BBD Transp. Co., v. S. Pac. Transp. Co.*,
   627 F.2d 170 (9th Cir. 1980)............................................................................7

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ..........................................................................*passim*

*Big Bear Lodging Ass'n v. Snow Summit, Inc.*,
   182 F.3d 1096 (9th Cir. 1999).......................................................................14, 15

*Bowoto v. Chevron Texaco Corp*,
   312 F. Supp. 2d 1229 (N.D. Cal. 2004) .................................................................17

*Brennan v. Concord EFS, Inc.*,
   369 F. Supp. 2d 1127 (N.D. Cal. 2005) ................................................................12

*Brunson Commc'ns, Inc. v. Arbitron*,
   239 F. Supp. 2d 550 (E.D. Pa. 2002) ....................................................................9

*Campfield v. State Farm Mut. Auto. Ins. Co.*,
   532 F.3d 1111 (10th Cir. 2008).......................................................................14, 15

*Cancall PCS v. Omnipoint Corp.*,
   No. 99 Civ 3395 AGS, 2000 WL 272309 (S.D.N.Y. March 10, 2000) ..................................9

*Car Carriers v. Ford Motor Co.*,
   745 F.2d 1101 (7th Cir. 1984).......................................................................9, 13

*Carte Blanche (Singapore) Pte., Ltd. v. Diners Club Intern., Inc.*,
   2 F.3d 24 (2d Cir. 1993) ...............................................................................17

*Clegg v. Cult Awareness Network*,
   18 F.3d 752 (9th Cir. 1994).......................................................................8, 18, 22

*Dimidowich v. Bell & Howell*,
   803 F.2d 1473 (9th Cir. 1986)..........................................................................14

*DM Research, Inc. v. Coll. of Am. Pathologists*,
   170 F.3d 53 (1st Cir. 1999) .............................................................................9

*Dole Food Co. v. Patrickson*,
   538 U.S. 468 (2003) ....................................................................................17

iii

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*E.&J. Gallo Winery v. Encana Energy Servs., Inc.*,
   No. cv F 03-5412 AWI LJO, 2008 WL 2220396 (E.D. Cal. May 27, 2008)...................... 16, 18

*Elliott Indus. v. BP Am. Prod. Co.*,
   407 F.3d 1091 (10th Cir. 2005)............................................................................. 14

*In re Currency Conversion Fee Antitrust Litigation*,
   265 F. Supp. 2d 385 (S.D.N.Y. 2003)................................................................... 17

*In re Sagent Tech., Inc. Derivative Litig.*,
   278 F. Supp. 2d 1079 (N.D. Cal. 2003) ........................................................... 12, 23

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   586 F. Supp. 2d 1109 (N.D. Cal. 2008) ...................................................... 10, 11, 23

*In Re TFT-LCD Antitrust Litig.*,
   599 F. Supp. 2d 1179 (N.D. Cal. 2009) ................................................................. 11

*In re Travel Agent Comm'n Antitrust Litig.*,
   No. 1:03 cv 30000, 2007 WL 3171675 (N.D. Ohio Oct. 29, 2007) ......................... 12

*Jung v. Ass'n of Am. Med. Colls.*,
   300 F. Supp. 2d 119 (D.D.C. 2004) ................................................................. 10, 11

*Katzir's Floor & Home Design, Inc.v. M-MLS.com*,
   394 F.3d 1143 (9th Cir. 2004)............................................................................. 17

*Kendall v. Visa U.S.A., Inc.*,
   518 F.3d 1042 (9th Cir. 2008)......................................................................... *passim*

*Lovesy v. Armed Forces Benefit Assoc.*,
   No. C 07-2745 SBA, 2008 U.S. Dist. LEXIS 97790 (N.D. Cal. Nov. 5, 2008) ........................ 17

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) ................................................................................... 8, 13

*Monsanto Co. v. Spray-Rite Serv. Corp.*,
   465 U.S. 752 (1984) ........................................................................................ 13

*Mountain View Pharmacy v. Abbott Labs.*,
   630 F.2d 1383 (10th Cir. 1980)...................................................................... 12, 22

*Neilson v. Union Bank of Cal., N.A.*,
   290 F. Supp. 2d 1101 (C.D. Cal. 2003) ................................................................. 18

*Papasan v. Allain*,
   478 U.S. 265 (1986) ............................................................................. 8, 18, 22

*Powerex Corp. v. Reliant Energy Servs., Inc.*,
   127 S. Ct. 2411 (2007) ..................................................................................... 16

iv

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Rick-Mik Enters., Inc. v. Equilon Enters. LLC*,
    532 F.3d 963 (9th Cir. 2008) ...................................................................................... 21, 22

*Thurman Indus., Inc. v. Pay 'N Pak Stores, Inc.*,
    875 F.2d 1369 (9th Cir. 1989) ............................................................................................ 14

*Tomaselli v. Transamerica Ins. Co.*,
    31 Cal. Rptr. 2d 433 (Cal. Ct. App. 1994) ....................................................................... 17

*Transamerica Leasing, Inc. v. La Republica de Venezuela*,
    200 F.3d 843 (D.C. Cir. 2000) ........................................................................................... 18

*United Magazine Co. v. Murdoch Magazines Distrib.*,
    146 F. Supp. 2d 385 (S.D.N.Y. 2001) .................................................................................. 9

*United States v. Bestfoods*,
    524 U.S. 51 (1998) ......................................................................................................... 16, 17

*United States v. Borelli*,
    336 F.2d 376 (2d Cir. 1964) ............................................................................................... 10

*United States v. Griffith Amusement Co.*,
    1 F.R.D. 229 (W.D. Okl. 1940) .......................................................................................... 11

*United States v. Gypsum Co.*,
    438 U.S. 422 (1978) ........................................................................................................... 13

*United States v. N. Coast Trans. Co.*,
    7 F.R.D. 491 (W.D. Wash. 1947) ....................................................................................... 11

*Vermilion Foam Prods. Co. v. Gen. Elec. Co.*,
    386 F. Supp. 255 (E.D. Mich. 1974) .................................................................................. 11

**Other Authorities**

Fed. R. Civ. P. 8(a)(2) ............................................................................................................... 21

Fed. R. Evid. 201 ...................................................................................................................... 15

Restatement (Third) of Agency § 1.01 (2006) ......................................................................... 18

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on August 4, 2009 at 9:00 a.m. or as soon thereafter as this matter may be heard before the Honorable Charles A. Legge, U.S. District Court Judge (Ret.), Special Master, in the San Francisco Resolution Center of JAMS, Two Embarcadero Center, Suite 1500, San Francisco, California 94111, Defendants Samsung Electronics Co., Ltd., and Samsung Electronics America, Inc. will and hereby do move this Court for an order dismissing the Direct Purchaser Plaintiffs' Consolidated Amended Complaint and Indirect Purchaser Plaintiffs' Consolidated Amended Complaint without leave to amend for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

The motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities in support thereof, the pleadings and correspondence on file with the Court, and such arguments and authorities as may be presented at or before the hearing.

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**STATEMENT OF THE ISSUES PRESENTED**

3   Defendants Samsung Electronics Co., Ltd. (SEC), and Samsung Electronics America, Inc.

4 (SEAI) (collectively, the SE Defendants) move to dismiss the Direct Purchasers' and Indirect

5 Purchasers' Consolidated Amended Complaints ("DPC" and "IPC," respectively, or

6 "complaints," jointly) on the following grounds:

7   1.  The complaints fail to state a claim upon which relief may be granted because they

8 allege an economically senseless conspiracy as to the SE Defendants, and therefore fail to allege

9 plausible grounds for relief.

10   2.  The complaints further fail to state a claim against the SE Defendants because, to the

11 extent they have alleged a valid conspiracy, they do not allege a valid horizontal conspiracy as to

12 the SE Defendants, and do not allege any facts entitling them to relief under the rule of reason.

13   3.  Plaintiffs cannot hold the SE Defendants vicariously liable for the alleged actions of

14 Samsung SDI, a corporate entity separate from the SE Defendants.

15   4.  The complaints must be dismissed because they fail to plead sufficient facts to suggest

16 that the SE Defendants joined in the alleged conspiracy.[1]

17

**INTRODUCTION**

18   The complaints allege a conspiracy to fix the prices of Cathode Ray Tubes ("CRTs" or

19 "Tubes"), components used in the manufacture of televisions and computer display monitors.

20 The SE Defendants do not manufacture Tubes; rather, they purchase Tubes and incorporate them

21 as components in products such as televisions and computer display monitors.

22   Plaintiffs' complaints contain only one allegation specifically directed at each of the SE

23 Defendants.  The Direct Purchasers' complaint alleges:

24    &bull; "Samsung, through SEC [and Samsung SDI defendants] participated in hundreds

25      of illegal bilateral and illegal group meetings from 1995 through at least 2006 in

---

26 [1]  The SE Defendants join in the legal arguments made in the Defendants' Joint Notice of

27 Motion and Motion to Dismiss Indirect Purchaser Plaintiffs' Consolidated Amended Complaint
("Joint Indirect Motion") and the Certain Defendants' Joint Notice of Motion and Motion to
Dismiss Direct Purchaser Plaintiffs' Consolidated Amended Complaint ("Joint Direct Motion")

28 filed concurrently herewith, and submit this separate motion to address issues specific to them.

1

which unlawful [price-fixing] agreements . . . occurred." DPC ¶ 166.

- "SEAI [along with Samsung SDI defendants] were represented at those meetings and [was] a party to the agreements entered at them. To the extent . . . SEAI . . . distributed CRT Products to direct purchasers, they played a significant role in the conspiracy because Defendants wished to ensure that the prices for such products paid by direct purchasers would not undercut the pricing agreements reached at these various meetings." *Id.* ¶ 167.

The Indirect Purchasers' complaint is substantially similar:

- "Samsung, through SEC [and Samsung SDI defendants] participated in at least 200 Glass Meetings at all levels. . . . Samsung also engaged in bilateral discussions with each of the other Defendants on a regular basis. Through these discussions, Samsung agreed on prices and supply levels for CRT Products." IPC ¶ 166.
- "SEAI [along with Samsung SDI defendants] were represented at those meetings and were a party to the agreements entered at them. To the extent SEC and SEAI sold and/or distributed CRT Products, they played a significant role in the conspiracy because Defendants wished to ensure that the prices for CRT Products paid by direct purchasers would not undercut the CRT pricing agreements reached at the Glass Meetings." *Id.* ¶ 167.[2]

The complaints against the SE Defendants are legally deficient and must be dismissed for several reasons. *First*, they fail to state a legally viable theory of conspiracy as to the SE Defendants because they allege that makers and *sellers* of Cathode Ray Tubes (which, according to the complaints, are used as picture tubes in televisions and as color display tubes in computer monitors) conspired with the *purchasers* of those tubes to increase the price of the tubes. Plaintiffs do not allege that the SE Defendants made CRTs, which is not surprising given the SE Defendants in fact did not make and do not make CRTs. Rather, they purchase CRTs and use them as components in the finished products they sell. If the complaints are to be believed, the SE Defendants conspired to increase the price of their components, which would have decreased their own profit margins. The Supreme Court has made clear that at the pleading stage conspiracies have to make economic sense. Moreover, the Court has held that plaintiffs must

---

[2]     The Indirect Purchasers bring claims not only under federal antitrust law, but also under numerous state antitrust and unfair competition statutes. IPC ¶¶ 254-83. As the Defendants' Joint Notice of Motion and Motion to Dismiss the Indirect Purchasers Plaintiffs' Consolidated Amended Complaint explains, the courts in those jurisdictions generally follow substantive federal antitrust precedent. *See* Joint Indirect Motion at 14-16 & nn.7-8. Thus, the federal legal standards discussed in this motion apply to the Indirect Purchasers' state law claims as well.

1    allege "plausible" grounds for relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

2    Thus, the complaint must be dismissed as to the SE Defendants because the proposition that the

3    SE Defendants would seek to increase the price of the components they buy is economically

4    senseless and inherently implausible.

5           *Second*, even if the allegations are sufficient to state a viable theory of conspiracy, the

6    complaints cannot possibly allege a horizontal conspiracy involving the SE Defendants.  Because

7    the complaints allege a conspiracy to fix the prices of CRTs, and because the SE Defendants are

8    purchasers (not makers) of CRTs, the only possible conspiracy to which the SE Defendants could

9    have been party is an agreement with their suppliers, not with their competitors.  Under those

10   circumstances, the rule of reason applies, and the complaints allege neither a legally relevant

11   market, nor present any other facts relevant to a rule-of-reason analysis.  That is an independent

12   ground for dismissal.

13          *Third*, Plaintiffs cannot get around the legal deficiencies in their complaints with a bald

14   assertion that the SE Defendants are vicariously liable for the actions of Samsung SDI (which

15   does make CRTs).  Samsung SDI is a separate entity—represented by separate counsel—in which

16   SEC has a 20 percent minority investment.  Plaintiffs do not allege any facts that would support a

17   theory that Samsung SDI was acting as an agent of SEC.  In any event, any allegation that the SE

18   Defendants directed Samsung SDI to fix the prices of CRTs is implausible, because that

19   arrangement would have decreased the SE Defendants' profitability, yet the SE Defendants would

20   have received only 20 percent of the corresponding benefit to Samsung SDI's profits.  Again, the

21   Plaintiffs have pled no facts to support such a theory and that arrangement makes no sense.

22          *Fourth*, even if we turn a blind eye to the economic implausibility of a scenario where

23   sellers of a product and buyers of the same product conspire to fix the product's price at anti-

24   competitively high levels, the complaints are devoid of factual allegations supporting the theory

25   that the SE Defendants joined this conspiracy.  Accordingly, the pleadings are legally deficient

26   under Civil Rule 8(a), as interpreted in *Twombly*: the complaints do not present "enough factual

27   matter . . . to suggest" that the SE Defendants joined in any illegal conspiracy.  *Twombly*, 550

28   U.S. at 556.

1

## FACTUAL BACKGROUND

2

3

**I.      The Complaints Allege a Conspiracy to Fix the Price of Cathode Ray Tubes**

4          The complaints allege a conspiracy to fix the price of "CRT Products."  DPC ¶ 1; IPC

5   ¶¶ 13-15.  That product definition includes (1) color display tubes ("CDTs"), which are the

6   internal tubes used in color computer monitors; (2) color picture tubes ("CPTs"), which are the

7   internal tubes used in color televisions; (3) the finished products containing CDTs (*i.e.*, color

8   computer monitors); and (4) the finished products containing CPTs (*i.e.*, color televisions).  DPC

9   ¶¶ 1, 85, 103; IPC ¶¶ 13-15.

10         Despite employing the specially minted nomenclature "CRT Products" that sweeps in

11  both CRT components (the CPTs and CDTs) *and* the end products using those components

12  (televisions in the case of CPTs, and computer monitors in the case of CDTs), the only factual

13  allegations pertain to a conspiracy to fix the prices of CRTs, which include both CDTs and CPTs.

14  For example, the complaints allege the existence of an investigation by the Antitrust Division of

15  the United States Department of Justice ("DOJ") into the pricing of CDTs and CPTs, the two

16  types of Tubes.  DPC ¶¶ 7, 126; IPC ¶¶ 4, 203, 205.  An indictment arising from that

17  investigation, cited by the complaints (DPC ¶ 7; IPC ¶¶ 4) alleges a price-fixing conspiracy *only*

18  *in CRTs*.  *See* Tubach Decl. Ex. A (Indictment filed in *United States v. Cheng Yuan Lin*, No. CR-

19  09-0131 WHA (N.D. Cal.), filed February 10, 2009, ¶¶ 2, 8, 13 (asserting Section 1 criminal

20  charges against an individual for conspiracy to fix prices of CDTs and CPTs)).  *See also* DPC

21  ¶¶ 127-33 (referencing various alleged government investigations into price-fixing of CRTs); IPC

22  ¶¶ 207-08, 210-213 (same).  Moreover, all of Plaintiffs' other factual allegations concerning the

23  alleged price-fixing conspiracy pertain to CPTs or CDTs, but not to products containing them.

24  *See, e.g.*, DPC ¶¶ 112-15, 137, 144, 188-97; IPC ¶¶ 152, 154-55, 167.  Plaintiffs admit that the

25  alleged conspiracy was to fix prices of CRTs.  *See* DPC ¶ 139 ("The overall *CRT conspiracy*

26  affected worldwide prices . . . that Defendants charged for CRT Products"); *id.* ¶ 188

27  ("Defendants' collusion is evidenced by unusual price movements in the *CRT market*"); *id.* ¶ 197

28  ("The stability of the price of *CRTs* was accomplished by the collusive activities alleged above");

1    IPC ¶ 138 ("The genesis of the *CRT conspiracy* . . ."); *id.* ¶ 141 ("The *CRT conspiracy* was

2    effectuated through a combination of group and bilateral meetings"); *id.* ¶ 144 ("The overall *CRT*

3    *conspiracy* affected worldwide prices . . . that Defendants charged for CRT Products") (emphasis

4    added in all parenthetical).

5    **II.    The SE Defendants Do Not Manufacture, Market or Sell Tubes**

6

7          SEC is a consumer goods and services company, incorporated in South Korea in 1969 as

8    Samsung Electronics Manufacturing and renamed Samsung Electronics in 1984.[3]  SEC owns 100

9    percent of SEAI, which markets consumer electronics, information systems, and home appliance

10   products in the United States.[4]  The SE Defendants do not make Tubes, nor are they alleged to

11   have made or sold them.  Rather, the SE Defendants make only the finished products—that is,

12   televisions and computer monitors—of which Tubes are a component.  That is clear from the face

13   of the complaints.  Although the complaints attempt to obfuscate this important fact by alleging

14   that the SE Defendants manufacture, sell, and market "CRT Products" (which are defined to

15   capture end products incorporating Tubes),[5] the complaints nevertheless make clear that the SE

16   Defendants were *purchasers* of CRTs.  *See, e.g.*, DPC ¶ 120 ("Samtel claims to have supplied

17   CRTs to Defendant[] . . . Samsung"); IPC ¶ 128(k) (same); IPC ¶ 197 (in June 2004, Samsung

18   and others "were raising the price of their monitors in response to increased CRT prices").  What

19   is more, when one of the named defendants does manufacture Tubes, Plaintiffs' complaints so

20   allege.  *See, e.g.*, DPC ¶ 24 (Chunghwa Picture Tubes is "one of the major global CRT

21   manufacturer"); IPC ¶ 97 (Chunghwa "is a leading manufacturer of CRTs").  Indeed, the

22   complaints specifically allege that a different entity, Samsung SDI, makes Tubes.  DPC ¶ 61; IPC

23   ¶ 64.  Neither complaint alleges, nor could allege, that the SE Defendants make Tubes.[6]

24   ────────────────────

25   [3]      *See e.g.*, Samsung Investor Relations FAQs, *available at*
         http://www.samsung.com/us/aboutsamsung/ir/irfaqs/general/IR_General.html.
26   [4]      *Id.*
         [5]      *See* DPC ¶ 58 (SEC), ¶ 59 (SEAI); IPC ¶ 62 (SEC), ¶ 63 (SEAI).
27   [6]      Publicly available information makes clear that the SE Defendants manufactured, sold,
         and marketed televisions and computer monitors (end products containing CRTs as a component)
28   during the alleged conspiracy period.  *See, e.g.*, Samsung Electronics 1998 Annual Report at 15,

                                                    5

1   Thus, it is no surprise that in late 2007 when international antitrust authorities began

2   investigating CRT price-fixing they did not target the SE Defendants.  Rather the investigations

3   were concerned with CRT manufacturers.  For instance, on November 8, 2007 the European

4   Commission "carried out unannounced raids on *manufacturers* of CRTs . . . ."  DPC ¶ 128

5   (emphasis added).  One day later, Samsung SDI Co. announced it was fully cooperating with

6   authorities after antitrust regulators searched its cathode ray tube "production facilities."  *Id.*

7   ¶¶ 129-130.  The International Herald Tribune article cited by Plaintiffs, see DPC ¶ 132, further

8   specifies that antitrust authorities in Europe and Asia raided "*cathode-ray tube makers* this month

9   on suspicion of price fixing."  *Philips is Targeted in Investigation,* Int'l Herald Tribune, Nov. 21,

10   2007, a*vailable at* http://www.nytimes.com/2007/11/21/business/ worldbusiness/21iht-

11   philips.4.8424014.html (emphasis added).

12   The bulk of the civil suits filed came on the heels on these announcements.  And just as

13   the SE Defendants were not subject to the aforementioned international antitrust investigations,

14   they similarly were not named as defendants in the original complaint filed in this docket.[7]  The

15   same went for many other complaints now a part of this MDL, in which the named defendants

16   were those companies that actually manufactured CRTs, and in which SEC and SEAI were

17   therefore not named.[8]

18

19

---

20   28, *available at* http://www.samsung.com/us/aboutsamsung/ir/financialinformation/
annualreport/downloads/1998/sec98AR-e-full.pdf.

21   [7]   Class Action Complaint, *Crago, Inc. v. Chunghwa Picture Tubes, Ltd.*, 3:07-cv-05944
(N.D. Cal. Nov. 26, 2007) [Dkt. # 1].

22   [8]   SEC and SEAI were not named as defendants in many of the class action complaints now
consolidated in this MDL.  *See, e.g., Juetten v. Chunghwa Picture Tubes*, 3:07-cv-06225 (N.D.

23   Cal Dec. 10, 2007) (indirect purchaser complaint); *Hawel v. Chunghwa Picture Tubes, Ltd.*, 3:07-
cv-06279 (N.D. Cal. Dec. 12, 2007) (direct purchaser complaint); *Caldwell v. Matsushita Elec.*

24   *Indus. Co.,* 3:07-cv-06303 (N.D. Cal. Dec. 13, 2007) (indirect purchaser complaint); *Art's TV &*
*Appliance v. Chunghwa Picture Tubes, Ltd.*, 3:07-cv-06416 (N.D. Cal. Dec. 19, 2007) (direct

25   purchaser complaint); *Monikraft, Inc. v. Chunghwa Picture Tubes, Ltd.*, 3:07-cv-06433 (N.D. Cal.
Dec. 21. 2007) (direct purchaser complaint); *Orion Home Systems, LLC v. Chunghwa Picture*

26   *Tubes, Ltd.*, 3:08-cv-00178 (N.D. Cal. Jan. 10, 2008) (direct purchaser complaint); *Kindt v.*
*Matsushita Elec. Indus. Co.*, 1:07-civ-10322 (S.D.N.Y. Nov. 13, 2007) (indirect purchasers);

27   *Indus. Computing, Inc. v. Chunghwa Picture Tubes, Ltd.*, 1:07-cv-11203 (S.D.N.Y Dec. 13,
2007).

28

1

2

**ARGUMENT**

3

**I.   In Order for a Complaint Alleging a Price-Fixing Conspiracy to Survive a Motion to Dismiss, *Twombly* Requires Plaintiffs to Plead "Plausible Grounds to Infer an Agreement" as to Each Particular Defendant**

4

5

**A.   General Pleading Standards Under *Twombly***

6

7

"[A] complaint's basic purpose is to give a defendant notice of the claim advanced against

8

it." *BBD Transp. Co., v. S. Pac. Transp. Co.*, 627 F.2d 170, 173 (9th Cir. 1980).  In the context

9

of a price-fixing conspiracy, the Ninth Circuit recently explained, quoting the Supreme Court's

10

decision in *Twombly*, that:

11

12

13

14

15

16

17

18

> [A] plaintiff's obligation to provide the "grounds" of his "entitle
> [ment] to relief" requires more than labels and conclusions, and a
> formulaic recitation of the elements of a cause of action will not do.
> Factual allegations must be enough to raise a right to relief above
> the speculative level. . . .  In applying these general standards to a
> § 1 claim, we hold that stating such a claim requires a complaint
> with enough factual matter (taken as true) to suggest that an
> agreement was made.  Asking for plausible grounds to infer an
> agreement does not impose a probability requirement at the
> pleading stage; it simply calls for enough fact[s] to raise a
> reasonable expectation that discovery will reveal evidence of illegal
> agreement. . . .  [A]n allegation of parallel conduct and a bare
> assertion of conspiracy will not suffice.

19

20

*Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1046-47 (9th Cir. 2008) (quoting *Twombly*, 550 U.S.

21

at 555-56) (omissions and first and third alterations in original) (citation omitted).  The Ninth

22

Circuit further explained that the reason for this rule—which "specifically abrogated the usual

23

'notice pleading' rule, found in Federal Rule of Civil Procedure 8(a)(2)," *id.* at 1047 n.5—is that

24

"discovery in antitrust cases frequently causes substantial expenditures and gives the plaintiff the

25

opportunity to extort large settlements even where he does not have much of a case."  *Id.* at 1047

26

(citing *Twombly*, 550 U.S. at 557-59).

27

Thus, "to allege an agreement between antitrust co-conspirators, the complaint must allege

28

facts such as a 'specific time, place, or person involved in the alleged conspiracies' to give a

---

7

1    defendant seeking to respond to allegations of a conspiracy an idea of where to begin." *Kendall*,

2    518 F.3d at 1047 (quoting *Twombly*, 550 U.S. at 564 n. 10).  "A bare allegation of a conspiracy is

3    almost impossible to defend against, particularly where the defendants are large institutions with

4    hundreds of employees entering into contracts and agreements daily." *Id.*

5         Nor can a complaint allege legal conclusions masquerading as facts.  Both the Supreme

6    Court and the Ninth Circuit have long recognized that courts are "not bound to accept as true a

7    legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, No. 07-1015, 2009 WL

8    1361536, at \*14 (U.S. May 18, 2009) (internal citation omitted); *see also Papasan v. Allain*, 478

9    U.S. 265, 286 (1986); *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994)

10   ("[T]he court is not required to accept legal conclusions cast in the form of factual allegations if

11   those conclusions cannot be reasonably drawn from the facts alleged").  Rather "a plaintiff's

12   obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and

13   conclusions, and a formulaic recitation of the elements of a cause of action will not do."

14   *Twombly*, 550 U.S. at 555 (citation omitted) (alteration in original); *see also Iqbal*, 2009 WL

15   1361536, at \*12 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the

16   elements of a cause of action will not do.'") (quoting *Twombly*, 550 U.S. at 555); *Kendall*, 518

17   F.3d at 1046.  "The Federal Rules do not require courts to credit a complaint's conclusory

18   statements without reference to its factual context." *Iqbal*, 2009 WL 1361536, at \*17.

19   **B.**    **A Complaint Fails to Plead "Plausible Grounds" for Relief When It Alleges a**
20            **Conspiracy that "Makes No Economic Sense"**

21        The Supreme Court has stated that "only a complaint that states a plausible claim for relief

22   survives a motion to dismiss."  *Id.* at \*13.  In the context of summary judgment, the Supreme

23   Court has further explained that "if the factual context renders [Plaintiffs'] claim implausible—if

24   the claim is one that simply makes no economic sense—respondents must come forward with

25   more persuasive evidence to support their claim than would otherwise be necessary." *Matsushita*

26   *Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

27        Although *Matsushita* is a summary judgment case, courts routinely have applied its

28

8

"makes no economic sense" standard at the pleadings stage.  For example, the First Circuit has upheld a district court's dismissal of an antitrust complaint because the alleged antitrust conspiracy was "highly implausible." *DM Research, Inc. v. Coll. of Am. Pathologists*, 170 F.3d 53, 56 (1st Cir. 1999) (cited approvingly in *Twombly*, 550 U.S. at 557).  Similarly, even before *Matsushita*, the Seventh Circuit affirmed a grant of a motion to dismiss in part because the alleged conspiracy was "inherently implausible." *Car Carriers v. Ford Motor Co.*, 745 F.2d 1101, 1109-10 (7th Cir. 1984).  Dismissals under Rule 12(b)(6) based on the "makes no economic sense" standard are common.  *See, e.g.*, *Brunson Commc'ns, Inc. v. Arbitron*, 239 F. Supp. 2d 550, 563 (E.D. Pa. 2002) ("[T]he Court . . . concludes that the Amended Complaint fails to sufficiently allege concerted activity for the simple reason that the supposed conspiracy 'makes no economic sense.' . . .  Where a defendant had no rational motive to join a conspiracy, and defendant's conduct is as consistent with permissible competition as with illegal conspiracy, the plaintiff's unspecific allegations do not support an inference of antitrust conspiracy. . . .  Though *Matsushita* was decided in the context of a motion for summary judgment, its reasoning, nevertheless, has been used to decide motions to dismiss and suggests that Plaintiff's Section One claim should be dismissed" (quoting *Matsushita*, 475 U.S. at 587) (citation omitted)); *United Magazine Co. v. Murdoch Magazines Distrib.*, 146 F. Supp. 2d 385, 402 (S.D.N.Y. 2001) (holding that because "plaintiffs' alleged conspiracy to engage in predatory pricing is entirely unnecessary and makes no economic sense, plaintiffs fail to state a claim under section 1"); *Cancall PCS v. Omnipoint Corp.*, No. 99 Civ 3395 AGS, 2000 WL 272309, at *7 n. 4 (S.D.N.Y. March 10, 2000) ("Although *Matsushita* involved a motion for summary judgment, not a motion to dismiss, here, the plaintiffs have pled facts which, even if true and viewed in the light most favorable to plaintiffs, cannot support a claim for predatory pricing, and the Court will therefore dismiss any such claim at this stage").

The propriety of applying the *Matsushita* standard at the pleadings stage is confirmed by *Iqbal* and *Twombly*.  The Supreme Court has held that "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'"  *Iqbal*, 2009 WL 1361536, at *12 (internal citations

9

omitted).  In the present case, Plaintiffs have pled facts *inconsistent* with SE Defendant liability, and thus Plaintiffs present no plausible entitlement to relief.  *Twombly* similarly held that it is a "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief.'"  550 U.S. at 555 (citation omitted) (alteration in original).  In judging whether a plaintiff was entitled to relief, *Twombly* considered the legal standards announced in summary judgment and even later-stage cases, including *Matsushita* itself.  *See Twombly*, 550 U.S. at 553-54.  Thus, under *Twombly*, a complaint must allege facts that, if the evidence adduced through discovery bears them out, would get the claim past summary judgment and to a jury.  *See, e.g.*, *id.* at 556-57.  *Twombly* makes amply clear that a complaint alleging an economically senseless antitrust conspiracy must be dismissed as implausible.

### C.   The Adequacy of a Complaint Alleging a Price-Fixing Conspiracy Must Be Judged on a Defendant-Specific Basis

As Judge Friendly explained for the Second Circuit, quoting Judge Learned Hand, "in order for a man to be held for joining others in a conspiracy, he 'must in some sense promote their venture himself, make it his own.'"  *United States v. Borelli*, 336 F.2d 376, 385 (2d Cir. 1964) (quoting *United States v. Falcone*, 109 F.2d 579, 581 (2d Cir.), *aff'd*, 311 U.S. 205 (1940)).  For that reason, a complaint "must allege that each individual defendant joined the conspiracy and played some role in it because, at the heart of an antitrust conspiracy is an agreement and a conscious decision by each defendant to join it."  *In re TFT-LCD (Flat Panel) Antitrust Litig.* (*"TFT-LCD"*), 586 F. Supp. 2d 1109, 1117 (N.D. Cal. 2008) (internal quotation omitted).  Courts must enforce this requirement at the pleading stage because "at the heart of an antitrust conspiracy is an agreement and a conscious decision by *each* defendant to join it."  *Jung v. Ass'n of Am. Med. Colls.*, 300 F. Supp. 2d 119, 158 (D.D.C. 2004) (emphasis added).

For more than sixty-five years courts have required Sherman Act Section 1 plaintiffs to allege sufficient facts to justify each defendant's presence in the suit:

> [T]here must be alleged certain acts of each of the alleged
> conspirators which would connect him or it with the conspiracy . . . .
> Each of the defendants, therefore, has a right to know what he or it is

10

> alleged to have done which made him or it a part of the conspiracy and these acts should be alleged with sufficient definiteness, not only to enable the defendant to meet the charge with proof at the time of trial, but to prepare his or its answer to the complaint.

*United States v. Griffith Amusement Co.*, 1 F.R.D. 229, 231 (W.D. Okl. 1940). *See also United States v. N. Coast Trans. Co.*, 7 F.R.D. 491, 493 (W.D. Wash. 1947) (same); *Vermilion Foam Prods. Co. v. Gen. Elec. Co.*, 386 F. Supp. 255, 259 (E.D. Mich. 1974) (same). And, consistent with *Twombly*, a complaint must contain enough factual allegations to show that plaintiffs are "entitled to relief" against the SE Defendants. *See Twombly*, 550 U.S. at 555, 557 (The "short and plain statement" required by Rule 8 must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," and must further "possess enough heft to 'show that the pleader is entitled to relief.'" (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957), and FED. R. CIV. P. 8(a)(2))).

Moreover, "Plaintiffs cannot escape their burden of alleging that [the SE Defendants] participated in or agreed to join the conspiracy by using the term 'defendants' to apply to numerous parties without any specific allegations as to [SEC and SEAI]." *Jung*, 300 F. Supp. 2d at 163 (assessing motion to dismiss defendant by defendant granting motion as to certain defendants). Nor can Plaintiffs circumvent this impediment by presenting allegations against "Samsung" generally, which Plaintiffs define to include both the SE Defendants and the SDI Defendants (DPC ¶ 67; IPC ¶ 71). *See TFT-LCD*, 586 F. Supp. 2d at 1117 ("The Court agrees that general allegations as to all defendants, to 'Japanese defendants,' or to a single corporate entity such as 'Hitachi' is insufficient to put specific defendants on notice of the claims against them").[9] Rather, Plaintiffs can state a claim as to the SE Defendants only based on allegations in

---

[9]    In a later opinion, the *TFT-LCD* court allowed a complaint to go forward with allegations against whole corporate entities, because the plaintiffs in that case had amended the complaint to include factual allegations—details about the structure and content of the alleged meetings; the types of employees who attended; and other supporting factual claims—not present here. *In re TFT-LCD Antitrust Litig.*, 599 F. Supp. 2d 1179, 1184-85 (N.D. Cal. 2009). But whatever the merits of allowing such pleading generally, lumping the SE Defendants together with Samsung SDI in this case is inappropriate on its face. Allegations as to "Samsung" collectively are particularly inappropriate because Samsung SDI, a public company represented by separate counsel, is an entity separate from SEC, in which SEC owns only a 20 percent equity stake. More

11

which SEC or SEAI are specifically named.  *See, e.g.*, *Mountain View Pharmacy v. Abbott Labs.*, 630 F.2d 1383, 1388 (10th Cir. 1980) ("A blanket statement that twenty-eight defendants have conspired to fix prices on drug sales to thirteen plaintiffs does not provide adequate notice for responsive pleading."); *Brennan v. Concord EFS, Inc.*, 369 F. Supp. 2d 1127, 1136 (N.D. Cal. 2005) (dismissing complaint against certain defendants because it failed to plead allegations "specifically connecting [those defendants] to the alleged conspiracy"); *In re Sagent Tech., Inc. Derivative Litig.*, 278 F. Supp. 2d 1079, 1094 (N.D. Cal. 2003) ("[T]he complaint fails to state a claim because plaintiffs do not indicate which individual defendant or defendants were responsible for which alleged wrongful act."); *Alaska Airlines, Inc. v. Carey*, No. C 07-5711 RBI, 2008 WL 2725796, at *7 (W.D. Wash. July 11, 2008) (at the pleadings stage, sustaining Section 1 claims against some defendants but dismissing as to another because allegations "do not establish that [she] personally joined a conspiracy or played an individual role in it"); *In re Travel Agent Comm'n Antitrust Litig.*, No. 1:03 CV 30000, 2007 WL 3171675, at *3 n.4 (N.D. Ohio Oct. 29, 2007) (at the pleadings stage, conducting defendant-by-defendant analysis; dismissing claims against one defendant, for example, "because there is no factual matter to plausibly suggest that [it] joined or participated in an unlawful conspiracy") (citing *Twombly*).

Under these standards, both the Direct Purchasers' and Indirect Purchasers' complaints must be dismissed as to the SE Defendants.

## II.   The Complaints Must Be Dismissed Because They Fail to State a Claim as a Matter of Law

### A.   The Complaints Against the SE Defendants Must Be Dismissed for Failure to State a Claim Because the Alleged CRT Price-Fixing Conspiracy "Makes No Economic Sense" as to the SE Defendants

As noted above, in order for a complaint to survive a motion to dismiss, it must allege

important, broad allegations against "Samsung" are improper here because Samsung SDI manufactures CRTs, which are the object of the alleged conspiracy, while the SE Defendants do not.  *See infra* pp. 5, 15.  Even if it can plausibly be alleged that the SE Defendants participated in a conspiracy to fix the prices of products that they do not make—indeed, that they *purchase*— there is no way they could have participated in the alleged conspiracy *in the same way* as a manufacturer and seller of CRTs like Samsung SDI.  In those circumstances, an allegation against "Samsung" is improper.

1  "plausible grounds" for relief.  *Twombly*, 550 U.S. at 556.  A complaint's allegations are

2  implausible, and the complaint must be dismissed, if the alleged conspiracy "makes no economic

3  sense" from the SE Defendants' point of view.  *Matsushita*, 475 U.S. at 587; *see supra* pp. 8-10.

4  That is plainly the case here.

5        SEC and SEAI are buyers of Tubes, the product whose prices were allegedly fixed.  The

6  SE Defendants also are sellers of finished products containing Tubes as components.  Because the

7  purpose and effect of the alleged conspiracy was to *increase* the price of those components, the

8  effect of that conspiracy on the SE Defendants would be to decrease its profit margin.  That

9  arrangement "simply makes no economic sense."  *Matsushita*, 475 U.S. at 587.  Indeed, by

10  buying CRTs and selling finished products containing Tubes as a component, the SE Defendants

11  plainly acted "inconsistent[ly] with the object of the conspiracy," *United States v. Gypsum Co.*,

12  438 U.S. 422, 464 (1978), because the SE Defendants are harmed when the prices of their

13  components are higher.  After all, if they were not specifically excluded by the Direct Purchasers'

14  complaint, the SE Defendants would themselves be direct purchasers of CRTs, and thus putative

15  class members.  *See* DPC ¶ 85 (defining class as "[a]ll persons and entities who . . . directly

16  purchased a CRT Product," but excluding "Defendants").  If the Direct Purchasers were injured

17  by the alleged conspiracy, so too were the SE Defendants.

18        Again, the *Twombly* Court instructed lower courts, at the pleading stage, to scrutinize

19  complaints for factual allegations that make "plausible" the theory of conspiracy alleged.  550

20  U.S. at 556.  To state a claim for an antitrust conspiracy, a plaintiff must prove "a conscious

21  commitment [on the part of defendants] to a common scheme designed to achieve an unlawful

22  objective."  *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 764 (1984) (internal quotation

23  omitted).  It cannot be said, much less alleged, that a buyer of a component product had a

24  "conscious commitment" with the sellers of that component to increase its price, a result that

25  would increase the buyer's costs and decrease its profits.  Plaintiffs' allegations that the SE

26  Defendants "conspired to injure [themselves]" is "inherently implausible."  *Car Carriers*, 745

27  F.2d at 1109 (complaint alleging antitrust conspiracy dismissed as "inherently implausible"

28  because plaintiffs alleged, "in essence, that Ford conspired to injure itself").  On its face the

complaints fail *Twombly*'s plausibility standard, and accordingly must be dismissed for failure to state a claim upon which relief may be granted.

**B.      The Complaints Fail to State a Claim Because the SE Defendants Could Not Be Members of a Horizontal CRT Conspiracy, and Plaintiffs Have Failed to Plead the Elements of a Rule of Reason Claim**

Even if Plaintiffs could get beyond the formidable hurdle of alleging a senseless conspiracy as to the SE Defendants, their complaints fail to state a claim for a separate reason: they fail to allege a horizontal conspiracy, and further fail to allege any facts that would support relief under the rule of reason.

"To support a per se violation of the Sherman Act, a complaint alleging price fixing, group boycott, or an exclusive dealing arrangement must allege a conspiracy by competitors." *Campfield v. State Farm Mut. Auto. Ins. Co.*, 532 F.3d 1111, 1119-20 (10th Cir. 2008). "Horizontal" conspiracies are those between entities at the same level of the chain of distribution. *See Thurman Indus., Inc. v. Pay 'N Pak Stores, Inc.*, 875 F.2d 1369, 1379 (9th Cir. 1989); *Dimidowich v. Bell & Howell*, 803 F.2d 1473, 1480 (9th Cir. 1986); *see also Elliott Indus. v. BP Am. Prod. Co.*, 407 F.3d 1091, 1123 n. 29 (10th Cir. 2005) (claim of horizontal price fixing requires alleged conspiracy "among actual competitors (i.e. at the same level of distribution)"). In contrast, when a price-fixing conspiracy is alleged as "between entities at different levels of the same distribution chain[,] [courts] apply the rule of reason." *Dimidowich*, 803 F.2d at 1480. And prevailing in a rule-of-reason case "requires a claimant to prove the relevant market and to show the effects upon competition within that market." *Big Bear Lodging Ass'n v. Snow Summit, Inc.*, 182 F.3d 1096, 1101 (9th Cir. 1999) (internal quotation omitted).

There is no plausible argument that the SE Defendants participated in a horizontal conspiracy. Because the SE Defendants do not manufacture or sell Tubes, the allegations of conspiracy as to the SE Defendants can only be that they conspired with Tube makers—the SE Defendants' suppliers—to fix Tube prices. Thus, the SE Defendants are not "competitors" of their alleged co-conspirators, and Plaintiffs therefore cannot get the benefit of a per se analysis. Rather, their claims must be analyzed under the rule of reason.

14

Under the rule of reason, the complaints fail to state a claim as a matter of law.  Plaintiffs do not even attempt to allege a legally relevant market, let alone "to show the effects upon competition within that market."  *Big Bear Lodging Ass'n*, 182 F.3d at 1101.  "Because [the SE Defendants] and [CRT manufacturers] are not competitors—they do not operate at the same market level—their cooperation cannot constitute a price fixing, group boycott, or exclusive dealing arrangement sufficient for a per se violation of the Sherman Act.  Therefore the rule of reason applies, and [Plaintiffs'] failure to allege a legally relevant market requires dismissal of [their] claims."  *Campfield,* 532 F.3d at 1120.

III.    **Plaintiffs Cannot Hold the SE Defendants Vicariously Liable for the Alleged Acts of Samsung SDI**

Unlike the SE Defendants, Samsung SDI manufactures Tubes.  DPC ¶ 61; IPC ¶ 64.[10] The SDI Defendants are a group separate from the SE Defendants, and are represented by separate counsel.  As the Indirect Purchasers' complaint states, Samsung SDI is a public company and SEC is a minority shareholder, holding only about 20 percent of Samsung SDI's stock.  IPC ¶ 64.  The Direct Purchasers' complaint erroneously states that Samsung SDI is a wholly-owned and controlled subsidiary of Defendant SEC.  DPC ¶ 61.  This Court may take judicial notice of facts that are readily verifiable, as well as those contained in the Complaints.  FED. R. EVID. 201. SEC's minority stake in the public company Samsung SDI is readily ascertainable from public documents,[11] as well as from Samsung SDI's filings in this case.[12]

Nevertheless, Plaintiffs allege that SEC "dominated and controlled the finances, policies

---

[10]    The complaints name Samsung SDI, as well as several of its subsidiaries, as defendants in this case.  *See* DPC ¶¶ 61-66; IPC ¶¶ 64-70.  We refer to Samsung SDI and its subsidiaries collectively as Samsung SDI.

[11]    Samsung SDI's investors with five percent or greater stock ownership are listed at http://www.samsungsdi.com/contents/en/ir/stockHolder.html.  Moreover, SEC identifies its ownership interest in Samsung SDI in its Annual Reports.  SEC Annual Reports for 1998-2007 are available at http://www.samsung.com/us/aboutsamsung/ir/financialinformation/annualreport/IR_Annual2007.html.

[12]    *See* Samsung SDI America, Inc.'s Certification of Interested Entities or Persons Pursuant to Civil Local Rule 3-16 [Dkt. # 14] at 2 ("Samsung Electronics Co., Ltd. owns less than 20% of SDI stock.  No other publicly traded entity owns more than 10% of SDI stock").

and affairs of Samsung SDI relating to the antitrust violations alleged in this complaint."  DPC ¶ 61; IPC ¶ 64.  Although Plaintiffs do not explicitly say so, they may mean to suggest that the SE Defendants can be held vicariously liable for Samsung SDI's participation in the alleged conspiracy by virtue of its supposed "dominat[ion] and control[]" of that entity.  That theory—if that is the theory—is without merit for two reasons.

First, the only allegation purporting to support a theory of vicarious liability is Plaintiffs' statement that the SE Defendants "dominated and controlled" Samsung SDI.  That allegation states a legal conclusion, not facts in support of a legal conclusion, and is thus inadequate to survive a motion to dismiss.  Second, just as the allegation that the SE Defendants themselves conspired to fix the prices of the components they purchased is legally invalid because the alleged conspiracy is economically senseless, so too is the theory that the SE Defendants would direct a supplier in which they have a minority equity stake to artificially increase the price of CRT components.  The latter theory is legally invalid for the same reasons as the former.

A.     **The Complaints Do Not Plead and Cannot Place Vicarious Liability on the SE Defendants for the Alleged Acts of Samsung SDI**

1.     **Plaintiffs Bear the Burden If They Rest Their Claims on a Disregard of the Corporate Form**

It is "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief.'" *Twombly*, 550 U.S. at 555 (citation omitted) (alteration in original).  As explained, Samsung SDI is a public corporation separate from the SE Defendants.  Even when a parent corporation owns 100 percent of a subsidiary, "[i]t is a general principle of corporate law deeply 'ingrained in our economic and legal systems' that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (citation omitted).  "The independence of a subsidiary from the parent corporation is to be presumed." *E.&J. Gallo Winery v. Encana Energy Servs., Inc.,* No. CV F 03-5412 AWI LJO, 2008 WL 2220396, *5 (E.D. Cal. May 27, 2008) (citing *California v. NRG Energy, Inc*., 391 F.3d 1011, 1025 (9th Cir. 2004), *rev'd on other grounds by Powerex Corp. v. Reliant Energy Servs., Inc.*, 127 S. Ct. 2411 (2007)); *see also Carte Blanche*

1   *(Singapore) Pte., Ltd. v. Diners Club Intern., Inc.*, 2 F.3d 24, 26 (2d Cir. 1993) (recognizing the

2   "'presumption of corporate independence and limited shareholder liability'") (quoting *Wm.*

3   *Passalacqua Builders, Inc. v. Resnick Developers South, Inc.*, 933 F.2d 131, 139 (2d Cir. 1991)).

4        "The party seeking to disregard the corporate form bears the burden of showing that there

5   are good reasons for doing so." *Bowoto v. Chevron Texaco Corp*, 312 F. Supp. 2d 1229, 1235

6   (N.D. Cal. 2004) (citing *Mobil Oil Co. v. Linear Films Inc.*, 718 F. Supp. 260, 273 (D. Del.

7   1989)).  "Only in unusual circumstances will the law permit a parent corporation to be held either

8   directly or indirectly liable for the acts of its subsidiary." *Id.* at 1234.  A parent corporation may

9   be held liable only for the acts of its subsidiary "where stock ownership has been resorted to, not

10  for the purpose of participating in the affairs of a corporation in the normal and usual manner, but

11  for the purpose of controlling a subsidiary company so that it may be used as a mere agency or

12  instrumentality of the owning company." *Bestfoods,* 524 U.S. at 62-63.

13        Thus, in order for Plaintiffs to show that the SE Defendants can be found vicariously

14  liable for Samsung SDI's actions, Plaintiffs must establish that the latter was acting not as a

15  separate corporate entity—a fact that must be presumed—but rather as an agent of the former.[13]

16  _____

17  [13]    Plaintiffs do not allege, neither could they succeed in alleging, an alter-ego theory of
    liability.  Piercing the corporate veil is unusual and places on the plaintiff the heavy burden of

18  alleging facts that one company essentially is a mere shell of, and controlled by, another.  *See
    e.g., Dole Food Co. v. Patrickson*, 538 U.S. 468, 475 (2003) ("The doctrine of piercing the

19  corporate veil . . . is the rare exception, applied in the case of fraud or certain other exceptional
    circumstances"); *see also Katzir's Floor & Home Design, Inc.v. M-MLS.com*, 394 F.3d 1143,

20  1149 (9th Cir. 2004) (explaining alter ego is a limited doctrine, and may be invoked only when
    "corporate separateness is illusory").  Indeed in *Tomaselli v. Transamerica Ins. Co.*, the court

21  rejected as "woefully short" of the necessary showing for alter ego facts where "the parent
    company owned 100 percent of the subsidiary's stock, it shared office space and policy manuals

22  with the subsidiary, they had some common personnel, and they had consolidated financial
    statements."  31 Cal. Rptr. 2d 433, 443 (Cal. Ct. App. 1994).  Here, the SE Defendants own a

23  mere 20 percent of Samsung SDI and in any case, plaintiffs have not alleged any of the other
    "critical elements" identified by courts, including "inadequate capitalization, commingling of

24  assets, [or] disregard of corporate formalities" which may warrant an extraordinary result like
    piercing a corporate veil.  *Id.*; *see Lovesy v. Armed Forces Benefit Assoc.*, No. C 07-2745 SBA,

25  2008 U.S. Dist. LEXIS 97790, *12-13 (N.D. Cal. Nov. 5, 2008) ("Conclusory allegations of 'alter
    ego' status are insufficient to state a claim.") (quoting *Neilson v. Union Bank of Cal., N.A.*, 290 F.

26  Supp. 2d 1101, 1116 (C.D. Cal. 2003)); *In re Currency Conversion Fee Antitrust Litigation*, 265

27  F. Supp. 2d 385, 426 (S.D.N.Y. 2003) (dismissing complaint where complaint alleged that parent

28  "'exercised such dominion and control over its subsidiaries . . . that it is liable according to the

17

1   And the presumption against Plaintiffs' theory is even stronger when, as here, SEC does not

2   wholly own Samsung SDI, but rather holds only a passive minority stake.

3          To establish vicarious liability through an agency theory, courts rely on traditional federal

4   common law agency doctrine derived from the RESTATEMENT (THIRD) OF AGENCY §1.01 (2006).

5   *E&J Gallo Winery*, 2008 WL 2220396, at *5.  The traditional agency test requires a plaintiff to

6   demonstrate: (1) a manifestation by the principal that the agent shall act for him; (2) that the agent

7   has accepted the undertaking; and (3) that there is an understanding between the parties that the

8   principal is to be in control of the undertaking.  *See id.* at *5-6; RESTATEMENT (THIRD) OF

9   AGENCY § 1.01 (2006); *see also Transamerica Leasing, Inc. v. La Republica de Venezuela*, 200

10  F.3d 843, 849 (D.C. Cir. 2000).

11         Plaintiffs come nowhere close to adequately carrying their difficult burden under the

12  applicable legal standards.

13         **2.      Plaintiffs Do Not Plead and Cannot Adequately Plead that They Are**
14                   **"Entitled To Relief" for a Horizontal Price-Fixing Conspiracy as to the**
                     **SE Defendants**

15

16         A court at the pleadings stage must take all factual allegations in a complaint as true.  But

17  it was well-settled, even before *Twombly*, and is particularly true after, that courts are "not bound

18  to accept as true a legal conclusion couched as a factual allegation."  *Papasan v. Allain*, 478 U.S.

19  265, 286 (1986); *see also Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994)

20  ("[T]he court is not required to accept legal conclusions cast in the form of factual allegations if

21  these conclusions cannot be reasonably drawn from the facts alleged").  Rather, while a complaint

22  "does not need detailed factual allegations" it is "a plaintiff's obligation to provide the 'grounds'

23  of his 'entitle[ment] to relief[,]' [which] requires more than labels and conclusions, and a

24  formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555

25  (citation omitted) (first alteration in original); *see also Neilson v. Union Bank of Cal., N.A.,* 290 F.

26  Supp. 2d 1101, 116 (C.D. Cal. 2003) ("In order to overcome the presumption of separateness

27  law for the acts of such subsidiaries under the facts alleged in this Complaint'" because "[t]hese
28  conclusory allegations cannot suffice to state a claim based on veil piercing or alter-ego liability,
    even under the liberal notice pleading standard.").

18

1   afforded to related corporations, [a plaintiff] is required to plead ... specific facts supporting its

2   claims, not mere conclusory allegations.") (internal citation omitted).

3       Neither complaint makes even a formulaic recitation as to any of the elements required to

4   place any alleged liability of Samsung SDI on the SE Defendants.  Based on the complaints, it is

5   impossible to discern Plaintiffs' theory as to how SEC could have exercised the requisite control

6   over Samsung SDI, a publicly traded and diversified company in which it holds only a 20 percent

7   passive investment stake.  More to the point, not only do Plaintiffs fail to allege facts that if true

8   would establish their right to relief under a vicarious liability theory; they allege *no facts at all*.

9   Rather, plaintiffs rely *only* on the conclusory statements that SEC "dominated and controlled the

10   finances, policies and affairs of Samsung SDI relating to antitrust violations alleged in this

11   complaint" (DPC ¶ 61; IPC ¶ 64), and that SEC (in concert with Samsung SDI) dominated and

12   controlled Samsung SDI's subsidiaries (DPC ¶ 60, ¶¶ 62-66; IPC ¶¶ 65-70).  Those allegations

13   state a legal conclusion, not facts in support of that conclusion.

14       That is plainly not enough to proceed beyond the pleadings.  If it were, any plaintiff could

15   simply name a minority shareholder of a company (such as Korea Investment Trust Management,

16   which owns nearly 10 percent of Samsung SDI, or Mirae Asset Global Investments, which owns

17   five percent of Samsung SDI[14])—or even a non-shareholder, for that matter—as a defendant in a

18   sweeping antitrust conspiracy complaint, and force that party to proceed to discovery by merely

19   asserting that it "controls and dominates" that company.  Under that rule, "the threat of discovery

20   expense will push cost-conscious defendants to settle even anemic cases before reaching those

21   proceedings," a result the Supreme Court has declared impermissible.  *Twombly*, 550 U.S. at 559.

22      **B.**    **To The Extent Plaintiffs Seek to Hold the SE Defendants Vicariously Liable**

23           **for the Alleged Actions of Samsung SDI, the Complaints Fail as a Matter of**

24           **Law Because that Theory Would Be Inherently Implausible**

25       As explained above, a pleaded conspiracy must be undergirded by facts that suggest the

26   theory of conspiracy is plausible.  *See Twombly*, 550 U.S. at 556; *see supra* pp. 8-10.  To the

27

28   [14]    Samsung SDI's minority investors are listed at
     http://www.samsungsdi.com/contents/en/ir/stockHolder.html.

19

1   extent Plaintiffs argue that the SE Defendants directed Samsung SDI to fix the prices of Tubes,

2   that theory is legally deficient, for no facts have been pleaded suggesting it is plausible for a

3   purchaser (the SE Defendants) to direct a minority-owned affiliate to join a conspiracy to fix the

4   price of the products (the Tubes) the purchaser buys.

5          The SE Defendants (which manufacture and sell televisions and computer monitors

6   containing Tubes) hold a 20 percent equity stake in Samsung SDI (which manufactures and sells

7   the Tubes themselves).  If Plaintiffs are alleging that the SE Defendants directed Samsung SDI to

8   artificially increase the price of Tubes through price fixing, then the theory must be that the SE

9   Defendants directed one of their suppliers to conspire with other suppliers to *increase* the price of

10  the components the SE Defendants must buy.  The SE Defendants would thereby *decrease* their

11  profit margins, but would get a corresponding benefit from Samsung SDI's increased profit

12  margins through the SE Defendants' 20 percent ownership stake.  That spend-a-dollar-to-make-

13  twenty-cents allegation is economically senseless and wholly implausible.  Thus, any theory of

14  the SE Defendants' vicarious liability through control of Samsung SDI fails as a matter of law.

15  *See supra* p. 9 (citing cases dismissing complaints alleging implausible antitrust conspiracies at

16  the pleadings stage).

17                                    *       *       *

18         In sum, Plaintiffs' allegation that the SE Defendants conspired to fix the prices of CRTs

19  fails as a matter of law because it makes no economic sense, and is wholly implausible.  Even if

20  Plaintiffs can clear that hurdle, they have not alleged a horizontal conspiracy as to the SE

21  Defendants, and their claims are therefore subject to the rule of reason.  Plaintiffs' complaints

22  thus are legally insufficient for failure to allege a legally relevant market, or any of the other

23  required elements required under the rule of reason.  And because Plaintiffs cannot save their

24  complaints as to the SE Defendants through a theory of vicarious liability based on the alleged

25  acts of Samsung SDI, the complaints must be dismissed for failure to state a claim upon which

26  relief may be granted.

27

28

1

2

### IV.   The Complaints Fail Sufficiently To Allege That the SE Defendants Joined the Alleged Conspiracy as Required By *Twombly*

3

4

5

6

7

8

9

Even if the complaints can be said to plead a legally valid theory of antitrust conspiracy, the complaint must nevertheless be dismissed as to the SE Defendants for failure to plead with sufficient particularity to "show[] that [they are] entitled to relief."  FED. R. CIV. P. 8(a)(2). Under *Twombly*, as interpreted by the Ninth Circuit, to surpass the Rule 8 threshold, the complaints must answer as to each defendant "the basic questions: who, did what, to whom (or with whom), where, and when."  *Kendall*, 518 F.3d at 1048.  For the reasons explained below, the complaints come nowhere close as to the SE Defendants.

10

11

#### A.   The Allegations Against SEC Are Inadequate Under *Twombly*

12

13

14

Both the Direct and Indirect Purchasers' complaints specifically name SEC in only one allegation.  *See* DPC ¶ 166; IPC ¶ 166; *supra* pp.1-2.  That allegation fails to answer the "basic questions" required by *Twombly* and its progeny.

15

##### 1.   "What"

16

17

18

Particularly after *Twombly*, a complaint alleging a price-fixing conspiracy must at the very least allege the "nature of the conspiracy or agreement."  *Rick-Mik Enters., Inc. v. Equilon Enters. LLC*, 532 F.3d 963, 976 (9th Cir. 2008).  These complaints fall far short of even that threshold.

19

20

21

22

23

In particular, the complaints define "CRT Products" to include both the CRTs (components) and televisions and computer monitors (end products).  As explained, the complaints on their face only allege a conspiracy to fix the prices of Tubes, not the end products in which Tubes are a component.  That is reason enough to dismiss the complaint as to the SE Defendants, which do not make Tubes.  *See supra* pp. 5-6.

24

25

26

27

But to the extent Plaintiffs argue that the complaint alleges more than a conspiracy to fix CRT prices—and thus that SEC is properly named as a defendant—it is plainly inadequate under *Twombly*.  The complaints allege that SEC conspired to fix the prices of "CRT Products" generally.  DPC ¶ 166; IPC ¶ 166.  That could mean that the object of the price-fixing was CPTs,

28

---

21

1    CDTs, televisions, computer monitors, or any combination of those four.  By so broadly defining

2    the object of the alleged conspiracy, the complaints do not put SEC on notice of the products

3    whose prices they allegedly conspired to fix.  If the conspiracy is alleged to be broader than price-

4    fixing of Tubes, the overly broad definition of "CRT Products" deprives SEC of any basis for

5    discerning the scope of the alleged conspiracy.  Whatever the actual theory, it is not reflected on

6    the face of either complaint.  *See Mountain View Pharmacy*, 630 F.2d at 1387-88 (finding

7    complaint inadequate in tying case because it does not provide the defendants "notice as to which

8    products are being tied").  Thus, Plaintiffs' "price-fixing claim fails for vagueness."  *Rick-Mik*

9    *Enters., Inc.*, 532 F.3d at 975.  The complaints are devoid of "evidentiary" facts as to the SE

10   Defendants.  *Kendall*, 518 F.3d at 1047-1048 (affirming dismissal of Section 1 Complaint for

11   failure to plead necessary "evidentiary" facts as opposed to "legal" or "ultimate" facts).

12        The Direct Purchasers' complaint is also legally deficient, because in the only factual

13   allegation in which SEC is named there is no allegation (much less alleged supporting facts) that

14   SEC or any other Samsung entity agreed to fix prices.  Rather, the allegation states that SEC,

15   along with Samsung SDI and its subsidiaries, "participated" in "illegal" meetings "in which

16   unlawful agreements as to, *inter alia*, price, output restrictions, and customer and market

17   allocation of CRT Products . . . occurred."  DPC ¶ 166.  This is a legal conclusion posing as a

18   fact, a form of pleading rejected by *Twombly*.  *See Twombly*, 550 U.S. at 555 (a valid complaint

19   "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause

20   of action will not do"); *see also Papasan*, 478 U.S. at 286 (courts are "not bound to accept as true

21   a legal conclusion couched as a factual allegation"); *Clegg*, 18 F.3d at 754-55 ("[T]he court is not

22   required to accept legal conclusions cast in the form of factual allegations if these conclusions

23   cannot be reasonably drawn from the facts alleged").  The complaint never alleges that SEC

24   actually became party to a price-fixing agreement at one of those "illegal" meetings.  That failure

25   to allege, even through a conclusory allegation, that SEC entered into price-fixing agreements at

26   "illegal" meetings obviously fails *Twombly*'s standard for pleading.

27

28

22

### 2.    "Who"

The Indirect Purchasers' complaint—which, unlike the Direct Purchasers' complaint, does allege a conspiracy in the same allegation in which it mentions SEC—nevertheless does not allege that SEC agreed to fix prices. Rather, it alleges that "Samsung, through SEC," as well as through SDI Defendants, attended various meetings, and then alleges that "*Samsung* agreed on prices and supply levels for CRT Products." IPC ¶ 166 (emphasis added). The Indirect Purchasers' complaint therefore fails to allege that SEC specifically entered into the conspiracy—only that "Samsung" did—which is enough to dismiss the complaint under *Twombly*. *See TFT-LCD*, 586 F. Supp. 2d at 1117 ("The Court agrees that general allegations as to . . . a single corporate entity such as 'Hitachi' is insufficient to put specific defendants on notice of the claims against them"); *In re Sagent Tech.*, 278 F. Supp. 2d at 1094 ("[T]he complaint fails to state a claim because plaintiffs do not indicate which individual defendant or defendants were responsible for which alleged wrongful act").

Both complaints are further inadequate because they do not identify any individuals who actively participated in the alleged conspiracy. The Ninth Circuit, interpreting *Twombly*, has made clear that for a complaint to properly allege a price-fixing conspiracy, it "must allege facts such as a 'specific time, place, *or person* involved in the alleged conspiracies' to give a defendant seeking to respond to allegations of a conspiracy an idea of where to begin." *Kendall*, 518 F.3d at 1047 (quoting *Twombly*, 550 U.S. at 565 n.10) (emphasis added). This is true "particularly where the defendants are large institutions with hundreds of employees entering into contracts and agreements daily." *Id.* Neither complaint comes close to putting SEC—an extremely large company with [thousands] of employees—on notice of who is alleged to have been responsible for the alleged price-fixing agreements, making the allegation impossible to defend against. That failing is fatal to the complaint. Again, the complaints are devoid of "evidentiary" facts. *Id.* at 1047-48.

1

### 3.   "When"

2

3      In *Twombly*, the Court explained that the complaint was deficient in part because it

4  identified a "seven-year span in which the § 1 violations were supposed to have occurred," but

5  failed to mention any "specific time."  550 U.S. at 565 n.10.  The same deficiency is amply

6  evident here.  The specific allegation as to SEC in the Direct Purchasers' complaint states that the

7  allegedly "illegal" meetings at which prices were fixed occurred between 1995 and 2006.  DPC

8  ¶ 166.  Similarly, the Indirect Purchasers' complaint alleges that these meetings occurred between

9  1995 and 2007.  IPC ¶ 166.  That exceedingly long span, without any accompanying detail

10  (particularly as to SEC), is far longer than the seven-year span judged inadequate in *Twombly*.

11  That is an independent reason to dismiss both complaints.

12

### B.   The Allegations Against SEAI Are Inadequate Under *Twombly*

13      The only specific allegation as to SEAI is that it was "represented at [the 'illegal']

14  meetings," presumably by SEC, "and [was] a party to the agreements entered at them."  DPC

15  ¶ 167; *see also* IPC ¶ 167.  Thus, the allegations specifically directed at SEAI are inadequate for

16  the same reasons as the allegations against SEC are.  But the complaints are inadequate for a

17  further reason: they do not allege that SEAI agreed to fix the price of *any* CRT Product.  While

18  the complaints say that SEAI was "represented" at illegal meetings and allege that SEAI "played

19  a significant role in the conspiracy," even that legal conclusion masquerading as a factual

20  allegation is tempered by noting that SEAI's role in the alleged conspiracy was "significant" only

21  "[t]o the extent . . . SEAI . . . distributed CRT Products."  DPC ¶ 167; IPC ¶ 167.  In short, on top

22  of all the inadequacies of the complaint as to SEC, the complaint is further insufficient as to SEAI

23  because it nowhere alleges that SEAI actually agreed to fix prices.

24      The complaint should be dismissed as to both SE Defendants.

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CONCLUSION**

For the foregoing reasons, both the Direct Purchasers' and Indirect Purchasers' complaints should be dismissed with prejudice as to the SE Defendants pursuant to Federal Rule of Civil Procedure 12(b)(6).

Dated: San Francisco, CA
         May 18, 2009

Respectfully submitted,
O'MELVENY & MYERS LLP

By: /s/ Ian Simmons
      Ian Simmons (*pro hac vice*)

1625 Eye Street, NW
Washington, DC 20006
Telephone:  (202) 383-5300
Facsimile:  (202) 383-5414
Email: isimmons@omm.com

*Attorneys for Defendants Samsung
Electronics Co., Ltd., and Samsung
Electronics America, Inc.*

25

1

## <u>CERTIFICATE OF SERVICE</u>

2

3          I hereby certify that on May 18, 2009, I electronically filed Samsung Electronics Co.,

4    Ltd., and Samsung Electronics America, Inc.'s Notice of Motion and Motion to Dismiss Direct

     Purchaser Plaintiffs' Consolidated Amended Complaint and Indirect Purchaser Plaintiffs'

5    Consolidated Amended Complaint and Memorandum of Law in Support with the Clerk of the

6    Court using the CM/ECF system, which will send notification of such filing to the counsel of

7    record in this matter who are registered on the CM/ECF system.

8

9

10                                                    /s/ Ian Simmons
                                                      Ian Simmons
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28