William Diaz (Bar No. 232297)
wdiaz@mwe.com
**McDERMOTT WILL & EMERY LLP**
18191 Von Karman Avenue, Suite 500
Irvine, CA  92612-7108
Telephone:      +1 949 851 0633
Facsimile:      +1 949 851 9348

Attorneys for Defendant
**SAMTEL COLOR LTD.**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION**,**<br><br>This Document Relates To:<br><br>DIRECT PURCHASER ACTIONS and INDIRECT PURCHASER ACTIONS | CASE NO.  3:07-cv-5944 SC<br><br>MDL NO. 1917<br><br>**SAMTEL COLOR LTD.'S NOTICE OF MOTION AND MOTION TO DISMISS DIRECT PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT AND INDIRECT PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT**<br><br>[Declaration of Sunil K. Gupta; and (Proposed) Order Granting Motion to Dismiss Without Leave to Amend Filed Concurrently Herewith]<br><br>Date:      August 4, 2009<br>Time:      9:00 a.m. |

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
IRVINE

1

**TABLE OF CONTENTS**

2

**Page**

3   NOTICE OF MOTION AND MOTION ................................................................... 1

4   MEMORANDUM OF POINTS AND AUTHORITIES ....................................... 1

5   I.   STATEMENT OF THE ISSUES PRESENTED ........................................ 1

6   II.   INTRODUCTION ......................................................................................... 2

7   III.   FACTUAL BACKGROUND ...................................................................... 3

8        A.   The Alleged Product Markets ............................................... 3
9        B.   Samtel Has No Operations In The United States ............... 4

10   IV.   LEGAL ARGUMENT .................................................................................. 6

11        A.   This Court Lacks Personal Jurisdiction Over Samtel ............................. 6
             1.   Samtel Does not Have Sufficient Contacts with the United States to
12                Support General Jurisdiction ......................................................... 7
             2.   Samtel Does not Have Sufficient Contacts with the United States to
13                Support Specific Jurisdiction ........................................................ 11
                  a.   Samtel has not purposefully availed itself of the privileges
14                     of conducting activities in the United States .......................... 11
                  b.   This litigation is not related to nor does it arise out of any
15                     Samtel activity in the United States ........................................ 15
                  c.   Exercising personal jurisdiction over Samtel would offend
16                     "traditional notions of fair play and substantial justice" ........ 17
17        B.   Plaintiffs Failed To State A Claim Against Samtel For Which Relief Can
             Be Granted ........................................................................................ 18
18           1.   The DPC Fails to State a Claim Against Samtel ........................... 20
19           2.   The IPC Fails to State a Claim Against Samtel ........................... 23

20   V.   CONCLUSION ............................................................................................ 25

21

22

23

24

25

26

27

28

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
IRVINE

# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

*Adidas America, Inc. v. Kmart Corp.*,
   No. CV-05-120, 2006 U.S. Dist. LEXIS 70413 (D. Or. 2006)........................................ 13

*Alpine View Co. Ltd. v. Atlas Copco AB*,
   205 F.3d 208 (5th Cir. 2000)............................................................................................. 9

*Amba Marketing System, Inc. v. Jobar International Inc.*,
   551 F.2d 784 (9th Cir. 1977).............................................................................................. 7

*Amoco Egypt Oil v. Leonis Navigation Co.*,
   1 F.3d 848 (9th Cir. 1993).......................................................................................... 17, 18

*Asahi Metal Industrial Co. v. Super Ct. of Cal.*,
   480 U.S. 102 (1987) ................................................................................ 6, 13, 17, 18

*Ashcroft v. Iqbal*,
   556 U.S. at ____............................................................................................ 19, 22, 24

*BP Chemicals Ltd. v. Formosa Chemical & Fibre Corp.*,
   229 F.3d 254 (3d Cir. 2000)............................................................................................ 14

*Bancroft & Masters, Inc. v. Augusta National*,
   223 F.3d 1082 (9th Cir. 2000)..................................................................................... 8, 12

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ......................................................... 2, 3, 18, 19, 20, 21, 22, 24, 25

*Boschetto v. Hansing*,
   539 F.3d 1011 (9th Cir. 2008)........................................................................................ 14

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985) ................................................................................. 6, 11, 13, 15

*CE Distribution, LLC v. New Sensor Corp.*,
   380 F.3d 1107 (9th Cir. 2004)........................................................................................ 17

*Calder v. Jones*,
   465 U.S. 783 (1984) ....................................................................................................... 12

*Chan v. Society Expeditions, Inc.*,
   39 F.3d 1398 (9th Cir. 1994)............................................................................................ 6

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
IRVINE

*In re Chocolate Confectionary Antitrust Litigation*,
    602 F.2d 538 (M.D. Pa. 2009) ................................................................. 10, 14

*Compuserve, Inc. v. Patterson*,
    89 F.3d 1257 (6th Cir. 1997)..................................................................... 14

*Cybersell, Inc. v. Cybersell, Inc.*,
    130 F.3d 414 (9th Cir. 1997)..................................................................... 13

*In re DRAM Antitrust Litigation*,
    No. 02-1486, 2005 U.S. Dist. LEXIS 30299
    (N.D. Cal. Nov. 7, 2005)............................................ 6, 8, 11, 12, 13, 14, 16, 17

*Data Discount, Inc. v. Systems Tech. Associate Inc.*,
    557 F.2d 1280 (9th Cir. 1977)................................................................... 7, 9

*Doe v. Unocal Corp.*,
    248 F.3d 915 (9th Cir. 2001)..................................................................... 12

*Dow Chemical Co. v. Calderon*,
    422 F.3d 827 (9th Cir. 2005)..................................................................... 6

*Fischer v. Prof'l Compounding Ctrs. of America, Inc.*,
    318 F. Supp. 2d 1046 (D. Nev. 2004), *aff'd Fischer v. Alfa Chems. Italiana*, 2007
    U.S. App. LEXIS 28694 (9th Cir. Dec. 7, 2007) ........................................... 9

*Gates Learjet Corp. v. Jensen*,
    743 F.2d 1325 (9th Cir. 1984)................................................................... 8

*Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*,
    284 F.3d 1114 (9th Cir. 2002)..................................................... 7, 11, 13, 14, 16

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
    466 U.S. 408 (1984) .......................................................................... 6, 7, 8

*Holland America Line, Inc. v. Wartsila N. America, Inc.*,
    485 F.3d 450 (9th Cir. 2007)................................................................... 9, 14

*Huffy Corp. v. Overlord Industrial*,
    246 F. Supp. 2d 1093 (D. Nev. 2003) ......................................................... 9

*International Shoe Co. v. Washington*,
    326 U.S. 310 (1945) .......................................................................... 6, 7

*Jung v. Association of America Medical Colleges*,
    300 F. Supp. 2d 119 (D.D.C. 2004) ........................................................... 23

McDermott Will & Emery LLP
Attorneys At Law
Irvine

*Kendall v. Countrywide Mechanical Services*,
    No. 04-3466, 2005 U.S. Dist. LEXIS 1817 (E.D. Pa. Feb. 8, 2005) ......................... 10, 14

*Kendall v. Visa U.S.A., Inc.*,
    518 F.3d 1042 (9th Cir. 2008)......................................................... 19, 21, 22, 24

*Lovesy v. Armed Forces Benefit Association*,
    2008 U.S. Dist. LEXIS 93479 ( N.D. Cal. March 13, 2008) ........................... 15

*Mountain View Pharmacy v. Abbott Laboratories*,
    630 F.2d 1383 (9th Cir. 1980)...................................................................... 22

*Omeluk v. Langsten Slip & Batbyggeri A/S*,
    52 F.3d 267 (9th Cir. 1995).......................................................................... 8

*Pacific Atlantic Trading Co. v. M/V Main Express*,
    758 F.2d 1325 (9th Cir. 1985)...................................................................... 17

*Patent Incentives, Inc. v. Seiko Epson Corp.*,
    No. 88-1407 (1988 U.S. Dist. LEXIS 9933), at *1, *5 (D.N.J. Sept. 6, 2008)................. 14

*Purdue Research Foundation v. Sanofi-Synthelabo S.A.*,
    338 F.3d 773 (7th Cir. 2003)........................................................................ 9

*In re Sagent Tech., Inc. Derivative Litigation*,
    278 F. Supp. 2d 1079 (N.D. Cal. 2003) .................................................... 22, 23

*Schwarzenegger v. Fred Martin Motor Co.*,
    374 F.3d 797 (9th Cir. 2004)................................................................ 6, 7, 11

*Shute v. Carnival Cruise Lines*,
    897 F.2d 377, 381 (9th Cir. 1990), *rev'd on other grounds*, 499 U.S. 585 (1991).......... 12

*Sun Microsystems v. Hynix*,
    No. C-06-1665 2009 U.S. Dist. LEXIS 27567 (N.D. Cal. Mar. 31, 2009)..................... 19

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007)........................................................................ 7

*In re TFT-LCD (Flat Panel) Antitrust Litigation*,
    586 F. Supp. 2d 1109 (N.D. Cal. 2008) ...................................................... 23

*Terracom v. Valley National Bank*,
    49 F.3d 555 (9th Cir. 1995).................................................................. 13, 15

*Trans World Airlines, Inc. v. Hughes*,
    308 F. Supp. 679 (D.C.N.Y. 1969) *rev'd on other grounds*, 409 U.S. 363 ................. 25

McDermott Will & Emery LLP
Attorneys At Law
Irvine

*World-Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286 (1980) ........................................................................................... 6, 12


**FEDERAL STATUTES**

Federal Rule of Civil Procedure 12(b)(2) ......................................................... 1, 2, 7, 25

Federal Rule of Civil Procedure 12(b)(6)  ........................................... 1, 2, 3, 18, 20, 25


**STATE STATUTES**

Cal. Civ. Proc. Code § 410.10 .............................................................................. 6


**MISCELLANEOUS**

Moore's Federal Practice § 108.42 ............................................................................. 12

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
IRVINE

McDermott Will & Emery LLP
Attorneys At Law
Palo Alto

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on August 4, 2009, at 9:00 a.m., or as soon thereafter as this matter may be heard before the Honorable Charles A. Legge, U.S. District Court Judge (Ret.), Special Master, in the San Francisco Resolution Center of JAMS, Two Embarcadero Center, Suite 1500, San Francisco, California 94111, Defendant Samtel Color Ltd. will and hereby does move this Court for an order dismissing the Direct Purchaser Plaintiffs' Consolidated Amended Complaint and Indirect Purchaser Plaintiffs' Consolidated Amended Complaint with prejudice for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) and for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

The motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities in support thereof, the pleadings and correspondence on file with the Court, and such arguments and authorities as may be presented at or before the hearing.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    STATEMENT OF THE ISSUES PRESENTED

Defendant Samtel Color Ltd. ("Samtel") moves to dismiss the allegations pled in the Direct Purchasers' and Indirect Purchasers' Consolidated Amended Complaints ("DPC" and "IPC," respectively, or "Complaints," jointly) on the following grounds:[1] (1) this Court lacks personal jurisdiction over Samtel; and (2) the DPC and IPC have not adequately alleged facts

---

[1]  Samtel has not yet been served with the DPC or the IPC.  Nevertheless, in accordance with Judge Legge's April 27, 2009 Briefing Order (Docket No. 448), Samtel files this individual motion to dismiss and joins in the legal arguments made in Certain Defendants' Joint Motion to Dismiss the Direct Purchaser Plaintiffs' Consolidated Amended Complaint ("Joint Motion to Dismiss DP-CAC") and Certain Defendants' Joint Motion to Dismiss the Indirect Purchaser Plaintiffs' Consolidated Amended Complaint ("Joint Motion to Dismiss IP-CAC") filed concurrently herewith.  Samtel respectfully reserves its right to exercise any appropriate defense for improper service of process if and when Plaintiffs attempt to serve Samtel.

1  supporting Samtel's participation in any conspiracy under the Supreme Court's *Twombly*

2  standard.

3  **II.   INTRODUCTION**

4      The Direct Purchaser ("DP") Plaintiffs and Indirect Purchaser ("IP") Plaintiffs allege a

5  far-reaching global cartel to fix prices and restrict output on a wide range of products that touch

6  nearly every American household.  Plaintiffs have rounded up more than 40 distinct entities that

7  purportedly produce cathode ray tubes ("CRT") and named them as Defendants, yet each is

8  entitled to have the DPC and IPC analyzed as though it was the lone Defendant.

9      Plaintiffs attempt to hale Samtel Color Limited ("Samtel")into this Court fails because

10  neither the DPC nor the IPC actually allege sufficient facts against Samtel to (1) establish that this

11  Court has personal jurisdiction over Samtel or (2) to state a claim.  As a result, Plaintiffs'

12  Complaints should be dismissed for two independent reasons: lack of personal jurisdiction under

13  Rule 12(b)(2), and failure to state a claim under Rule 12(b)(6).

14      In their zeal, Plaintiffs have named Samtel in the Direct Purchaser Amended Consolidated

15  Complaint ("DPC") and Indirect Purchaser Amended Consolidated Complaint ("IPC").  Samtel is

16  a publicly-traded Indian company that manufactures, in India, CRTs for use in televisions,

17  deflection yokes and electron guns.  It manufactures no finished CRT products, which appear to

18  be the only products Plaintiffs allegedly purchased.  Samtel has never manufactured these

19  products in the United States, and has no address, offices, inventory, real estate, subsidiaries,

20  assets, property, bank accounts, or even a phone number in the United States.  Samtel is not

21  registered as a foreign corporation to do business in the United States.

22      Plaintiffs have failed to meet their burden to establish that this Court has jurisdiction over

23  Samtel.  Plaintiffs should not be permitted to hale into a United States court a foreign company

24  located half a world away that has virtually no dealings or even presence in the United States.

25  This case should therefore be dismissed for lack of personal jurisdiction under Rule 12(b)(2).

26  Because Samtel's lack of presence in the United States means that any attempt to re-plead would

27  be futile, Samtel requests that Plaintiffs' Complaints be dismissed with prejudice.

28

McDermott Will & Emery LLP
Attorneys At Law
Palo Alto

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

1     Further, even if this Court has personal jurisdiction over Samtel, which Samtel submits it

2     does not, independent grounds for dismissal exist because Plaintiffs have failed to state a claim

3     against Samtel for which relief can be granted pursuant to Rule 12(b)(6).

4     Samtel is barely mentioned in the Complaints, and the scant allegations that actually

5     pertain to Samtel do not amount to participation in a price-fixing conspiracy.  Plaintiffs'

6     allegations against Samtel can be reduced to a few paragraphs in the DPC and IPC which purport

7     to recite vague, peripheral activity that took place outside of the United States.[2]  These are the

8     very types of allegations of which the Supreme Court disapproved in *Bell Atlantic Corp. v.*

9     *Twombly*, 550 U.S. 544, 550 (2007).

10    Taken as a whole, the DPC and IPC do not satisfy *Twombly*, which directs trial courts to

11    serve as gatekeepers to relieve defendants of the enormous burdens and expense of discovery

12    when they are named improvidently in massive antitrust cases.  Plaintiffs' failure to satisfy

13    *Twombly* provides an independent ground on which Samtel should be independently dismissed

14    with prejudice from this litigation under Rule 12(b)(6).

15    **III.     FACTUAL BACKGROUND**

16    **A.     The Alleged Product Markets**

17    The DPC and IPC allege a conspiracy to fix prices and reduce output for so-called "CRT

18    Products."  DPC ¶ 1; IPC ¶ 1.  The Plaintiffs' define "CRT Products" as a product market that is

19    extraordinarily far-reaching, and includes at least four different categories of products: (1) color

20    display tubes ("CDTs") which are internal cathode ray tubes used in computer monitors; (2) color

21    picture tubes ("CPTs") which are internal cathode ray tubes used in color televisions; (3) finished

22    products containing CDTs (*e.g.*, computer monitors); and (4) finished products containing CPTs

23    (*e.g.*, color televisions).  *See* DPC ¶ 1; IPC ¶¶ 1, 15.

24    Plaintiffs characterize CRTs as a generic category that encompasses both CDTs and CPTs.

25    DPC ¶ 103; IPC ¶ 14.  The DPC, however, also states that CDTs and CPTs are not reasonably

26

----

27    [2]  Furthermore, the IPC ironically alleges that Samtel participated in a conspiracy to raise prices
28    and reduce output for CRTs when its very customers were the members of the alleged cartel.

[PROPOSED] ORDER GRANTING          - 3 -          (3:07-CV-5944 SC; MDL NO. 1917)
SAMTEL'S MOTION TO DISMISS

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

1  interchangeable.  DPC ¶ 103.  These are clearly distinct from the finished products that Plaintiffs

2  attempt to sweep into their Complaints, and extend far beyond any government investigation into

3  CDTs and CPTs.

4       The Complaints contain few allegations concerning Samtel, but do allege that Samtel

5  produces "CRT Products."  *See* DPC ¶ 68, IPC ¶ 105.  Plaintiffs' characterization of Samtel's

6  operations is, however, incorrect.

7       Samtel manufactures and sells only one category of products included in Plaintiffs'

8  expansive definition of "CRT Products."  *See* DPC ¶ 1, IPC ¶¶ 1, 13-15.  Samtel's operations are

9  limited to cathode ray tubes for color televisions (*i.e.*, CPTs), as well as certain inputs for CPTs,

10  including deflection yokes and electron guns.  Samtel does not manufacture cathode ray tubes for

11  computer monitors (*i.e.*, CDTs) or finished products that incorporate CPTs or CDTs.  As a result,

12  this motion refers to CPTs when it refers to Samtel's operations because this is the only product

13  manufactured or sold by Samtel that is included within the product scope of this litigation.

14       **B.       Samtel Has No Operations In The United States**

15       The DPC and IPC allege that Samtel manufactured or sold "CRT Products" in the United

16  States during the alleged Class Period.  DPC ¶ 68; IPC ¶ 105.  This is contradicted by the

17  Declaration of Sunil K. Gupta, filed concurrently herewith.

18       Samtel is an Indian company, formed in 1986 and is organized under the laws of India.

19  Gupta Decl. ¶ 3.  Samtel is publicly traded on the Bombay Stock Exchange (SMTL:BSE).  *Id.*

20  Samtel is part of the Samtel Group, but it has its own distinct facilities, Board of Directors,

21  management and employees.  Gupta Decl. ¶ 4.  Samtel's Corporate Office is located in New

22  Delhi, India, and it has manufacturing facilities in Ghaziabad, India and Parwanoo, India.  *See*

23  Gupta Decl. ¶¶ 3, 5.

24       Samtel manufactures CPTs and certain inputs for CPTs (deflection yokes and electron

25  guns).  *See* Gupta Decl. ¶ 5.  It sells its CPTs to customers (primarily television manufacturers)

26  located in India, and exports CPTs primarily to television manufacturers located elsewhere in

27  Asia.  *Id.*  On two occasions in 1996 and 1997 (but not during the period in which Samtel

28  purportedly engaged in illegal conduct), Samtel made sales in India to a single global customer

[PROPOSED] ORDER GRANTING                     - 4 -              (3:07-CV-5944 SC; MDL NO. 1917)
SAMTEL'S MOTION TO DISMISS

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

that manufactures and distributes display screens worldwide.[3]  These two sales, which were made subject to Indian law, resulted in the export of a discrete amount of CPTs from India to the United States.  *See* Gupta Decl. ¶ 6.[4]  Apart from these two isolated export sales requested by a customer with global operations, Samtel has not directly or indirectly sold, marketed, or manufactured CPTs in the United States and has not sought to do business in the United States.  *See* Gupta Decl. ¶¶ 6, 13.

More broadly, Samtel has no significant connection to the United States.  It is not registered as a foreign corporation to do business in the United States.  It has no property, personnel, operations, activities, real estate, assets, interests, bank accounts, address, registered agents, representatives, or even a phone number.  *See* Gupta Decl. ¶¶ 7-12.  All of its documents and records are located outside of the United States.  *Id.* at ¶ 9.  Samtel has never before been a party to litigation in the United States.  The DPC and IPC allege that Samtel formed a joint venture with non-Defendant Corning to manufacture picture tube glass.  DPC ¶ 119; IPC ¶ 128(j).  Samtel, however, was not part of this joint venture.  *See* Gupta Decl. ¶ 14.  The joint venture was formed in 1989 in India by Samtel Group (and its subsidiary Samcor)--both distinct entities from Samtel.  The joint venture is now known as Samtel Glass, and is located in Kota, Rajasthan, India.  *See* Gupta Decl. ¶ 14.  Samtel Glass' operations, which are in India, are limited to the manufacture of picture tube glass, a product which is outside the scope of this litigation.  *Id.*  Samtel Glass is a distinct entity with its own facilities and management, and Samtel has no involvement with it.  *Id.*

---

[3]  The customer at issue is not among the multitude of named plaintiffs in this case nor could it be part of this class because unlike the existing members of the plaintiff class, this company is a manufacturer and distributor of CRT products, not a purchaser of these products.  *See* Gupta Decl. ¶ 6.

[4]  In 2001, Samtel also provided two (2) sample CPTs to an entity located in the United States, at that entity's request and at no charge.  Samtel supplied these CPTs because Samtel acquired certain equipment from this entity and the two CPTs were shipped to ensure the equipment worked before it was sent to Samtel in India.  This did not result in any ongoing business relationship, or any obligations.  *See* Gupta Decl. ¶ 6.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

McDermott Will & Emery LLP
Attorneys at Law
Palo Alto

## IV.    LEGAL ARGUMENT

### A.    This Court Lacks Personal Jurisdiction Over Samtel

Determining whether personal jurisdiction exists over an out-of-forum defendant involves two inquires: whether the exercise of jurisdiction would satisfy the requirements of the applicable state long-arm statute; and whether the assertion of jurisdiction would violate due process. *Dow Chem. Co. v. Calderon*, 422 F.3d 827, 830-31 (9th Cir. 2005) (quoting *Chan v. Soc'y Expeditions, Inc.*, 39 F.3d 1398, 1404-05 (9th Cir. 1994)).  In California, this two-prong analysis collapses into a single test because California's long-arm statute authorizes California courts to exercise personal jurisdiction over non-residents to the fullest extent allowed under the Constitution of the United States.  *See* Cal. Civ. Proc. Code § 410.10;  *Dow Chem. Co.*, 422 F.3d at 830-31 ("Thus, the governing standard here would be whether exercise of personal jurisdiction comports with due process."); *see also In re DRAM Antitrust Litig.*, No. 02-1486, 2005 U.S. Dist. LEXIS 30299, *8 (N.D. Cal. Nov. 7, 2005).

The Supreme Court has consistently held that the touchstone for exercising personal jurisdiction is whether the defendant has "purposefully availed" itself of the pertinent forum, which "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous', or 'attenuated' contacts." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 482 (1985).  The Supreme Court has warned that courts should take particular caution in exercising personal jurisdiction over a foreign defendant, and that the "unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight." *Asahi Metal Indus. Co. v. Super Ct. of Cal.*, 480 U.S. 102, 114 (1987).  Thus, constitutional due process is satisfied only when a non-resident has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291-92 (1980); *Dow Chem. Co.* 422 F.3d at 831.

A plaintiff bears the burden of making a prima facie showing of personal jurisdiction. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).  Personal jurisdiction may be either general or specific. *See Helicopteros Nacionales de Colombia, S.A. v.*

*Hall,* 466 U.S. 408, 414-15 (1984).  To make a showing of personal jurisdiction, plaintiffs cannot

rest on the bare allegations of their complaint:  "mere 'bare bones' assertions of minimum

contacts with the forum or legal conclusions unsupported by specific factual allegations will not

satisfy a plaintiff's pleading burden."  *See Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir.

2007) (citing *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114,

1119 (9th Cir. 2002)); s*ee also Amba Marketing System, Inc. v. Jobar Int'l Inc.*, 551 F.2d 784,

787 (9th Cir. 1977).  In addition, a court cannot assume the truth of plaintiffs' allegations if they

are contradicted by affidavit, as is the case here.  *See Data Disc, Inc. v. Systems Tech. Assoc. Inc.*,

557 F.2d 1280, 1284 (9th Cir. 1977).

The Complaints fail to allege facts sufficient to support the exercise of personal

jurisdiction, whether general or specific, over Samtel.  In contrast, the Declaration of Sunil K.

Gupta shows that Samtel lacks the requisite minimum contacts with the United States to be

subject to the jurisdiction of this Court.  Accordingly, this Court should dismiss the Complaints

with respect to Samtel because it lacks personal jurisdiction over Samtel, as required by

Rule 12(b)(2).

**1.      Samtel Does not Have Sufficient Contacts with the United States to**
**Support General Jurisdiction**

General jurisdiction is permitted only when the plaintiff demonstrates that the foreign

defendant has "continuous and systematic" contacts with the forum state that are "thought [to be]

so substantial and of such a nature as to justify suit against it on causes of action arising form

dealings entirely distinct from those activities."  *International Shoe Co. v. Washington*, 326 U.S.

310 at 317-18 (1945).  The Complaints, however, do not approach this high standard for

exercising general jurisdiction over Samtel.

"For general jurisdiction to exist over a non resident defendant, the defendant must engage

in continuous and systematic contacts that approximate physical presence in the state."  *Glencore*

*Grain*, 284 F.3d 1124 (internal quotation omitted).  The standard for asserting general jurisdiction

is exacting.  *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004).

In considering whether the defendant's connection with the state is continuous and systematic,

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

McDermott Will & Emery LLP
Attorneys At Law
Palo Alto

1  courts within the Ninth Circuit assess "whether the defendant makes sales, solicits or engages in

2  business in the state, serves the state's markets, designates an agent for service of process, holds a

3  license, or is incorporated there." *Bancroft & Masters, Inc. v. Augusta Nat'l*, 223 F.3d 1082,

4  1086 (9th Cir. 2000).  These factors are used to examine the economic reality of a defendant's

5  activities instead of a mechanical checklist.  *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1331

6  (9th Cir. 1984).

7         The indisputable facts show that the exercise of general jurisdiction over Samtel, based on

8  its contacts (or lack thereof) with the United States,[5] is wholly inappropriate.  Samtel does not

9  manufacture or produce any CPTs (or any other products characterized by Plaintiffs' as "CRT

10  Products") in the United States; has no place of business in the United States; never registered as

11  a foreign corporation to do business in the United States; has no offices, real estate, bank accounts

12  or employees in the United States; and has never advertised in the United States.  *See* Gupta Decl.

13  ¶¶ 7-12.[6]  Such lack of contacts has previously been found insufficient to support general personal

14  jurisdiction.  *See*, *e.g.*, *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 270 (9th Cir.

15  1995) ("[The] lack of a regular place of business in [the forum] is significant. . . . [The

16  Defendant] has no regular contact of any kind with the [forum]").  In sum, Samtel does not have

17  the "continuous and systematic" contacts with the United States required for general jurisdiction

18  under the due process clause.

19

20  [5] Personal jurisdiction in multidistrict federal antitrust litigation is assessed on the basis of the
    defendant's aggregate contacts with any state in which a plaintiff resides. *See In re DRAM*

21  *Antitrust Litig.*  2005 U.S. Dist. LEXIS 30299.  Because Samtel lacks contacts with any state,
    however, Samtel refers to the "United States" instead of the individual forum states.

22  [6] On two occasions (in 1996 and 1997) Samtel made two sales of a discrete quantity of CPTs in
    India which Samtel then exported from India.  These exports were directed, at the request of its

23  customer (a global manufacturer of displays with United States-based operations) to its United
    States operations.  The quantity of CPTs exported amounted to only approximately 0.01% of

24  Samtel's CPT sales in each of 1996 and 1997.  *See* Gupta Decl. ¶ 6.  Although this discrete
    quantity was exported to the United States, these are insufficient to confer general jurisdiction.

25  The Supreme Court instructed that "mere purchases, even if occurring at regular intervals, are not
    enough to warrant a State's assertion of in personam jurisdiction over a non-resident corporation

26  in a cause of action not related to those purchase transactions.  *Helicopteros*, 466 U.S. at 418.
    This is precisely the case here.

27

28

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

1       Undeterred, the Direct Purchaser Plaintiffs ("DP Plaintiffs") and Indirect Purchaser

2    Plaintiffs ("IP Plaintiffs") include one paragraph each with the same bare allegation that Samtel

3    manufactured, sold and/or distributed CRT Products in the United States.  *See* DP Compl. ¶ 68;

4    IP Compl. ¶ 105.  In light of Samtel's lack of contacts with the United States (Gupta Decl. ¶ 5),

5    these allegations cannot be accepted as true.  *See Data Disc*, 557 F.2d at 1284.  Moreover, such

6    "unsubstantiated and vague statement[s] do[] not establish a prima facie case for jurisdiction."

7    *Holland Am. Line*, *Inc. v. Wartsila N. Am.*, *Inc.*, 485 F.3d 450, 458 (9th Cir. 2007).  The IP

8    Plaintiffs attempt to argue that Samtel somehow sold CRTs in the United States through

9    "customers."  *See* IPC ¶ 105.  The IPC later alleges that Samtel's customers include other

10    Defendants in this litigation.  *See* IPC ¶ 128(k).  In effect, the IP Plaintiffs appear to contend that

11    Samtel, by placing its CPTs in the stream of global commerce, can be haled into court in the

12    United States.  But this is not the law.  The courts in the Ninth Circuit have rejected the notion

13    that a defendant may be subject to general personal jurisdiction before a court merely because it

14    placed its products in the stream of commerce.  *See Fischer v. Prof'l Compounding Ctrs. of Am.*,

15    *Inc.*, 318 F. Supp. 2d 1046, 1050 (D. Nev. 2004), *aff'd Fischer v. Alfa Chems. Italiana*, 2007 U.S.

16    App. LEXIS 28694 (9th Cir. Dec. 7, 2007) ("the stream of commerce theory does not apply to a

17    general jurisdiction analysis"); *see also Huffy Corp. v. Overlord Indus.*, 246 F. Supp. 2d 1093,

18    1099 (D. Nev. 2003); *Purdue Research Found. v. Sanofi-Synthelabo S.A.*, 338 F.3d 773, 788 (7th

19    Cir. 2003); *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 216 (5th Cir. 2000).  As a

20    result, even if Samtel's products somehow ended up in the United States after Samtel placed them

21    on the stream of commerce, this Court could not exercise general personal jurisdiction over

22    Samtel.

23       Plaintiffs allege only one other "fact" in an apparent attempt to link Samtel's activities to

24    the United States, but it likewise fails.  Plaintiffs allege that Samtel has "safety approvals" for its

25    CPTs in a number of countries, including the United States.  As reflected in Samtel's Declaration,

26    Samtel obtained necessary approvals to sell CPTs in India through the Indian subsidiary of

27    Underwriter Laboratories, a consultancy aimed at obtaining necessary regulatory approvals.  *See*

28    Gupta Decl. ¶ 13.  The approvals required for India coincide with approvals required for the

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

United States.  *Id.*  As a result, Samtel has never obtained a "safety approval" specifically for the United States, but rather obtained the approvals necessary do sell CPTs in India.  *See Id.*  In any event, a "safety approval" in the United States is not relevant to Samtel's business because it did not manufacture its CPTs (or other products) in the United States during the alleged Class Period, and exported only a *de minimis* quantity of CPTs at the request of a global customer on a one-off basis more than a decade ago.  *Id.,* ¶¶ 13, 5.[7]  Moreover, Samtel is not registered to do business as a foreign corporation in the United States.  *Id.,* ¶ 8.

The only other alleged link between Samtel and the United States is contained in Plaintiffs' allegation that Samtel and Corning, which is a non-Defendant U.S. company formed a joint venture known as Samcor.  *See* DPC ¶ 119; IPC ¶ 128 (j).  *See* Gupta Decl. ¶ 14.  The joint venture, however, was not formed or controlled by Samtel; it was a joint venture between Corning and Samcor, an entity created by the Samtel Group which is distinct from Samtel.  *See* Gupta Decl. ¶ 14.  Rather the joint venture, now known as Samtel Glass, is a distinct entity from Samtel, with its own facilities and personnel and day-to-day operations.  *Id.*  Accordingly, the DPC's and IPC's allegations concerning Samcor offer no support to Plaintiffs claim that Samtel is subject to the jurisdiction of this Court because of its "continuous and systematic" contacts.  Indeed, Samtel has none.

In sum, Samtel has no presence in the United States, owns no property in the United States, has no personnel or operations in the United States, has not advertised or solicited business in the United States, nor has it paid any taxes in the United States.  Samtel has no United States address, phone number or bank account, and has no registered agent nor license.  Samtel is not registered to do business as a foreign corporation in the United States.  For all of these reasons,

---

[7] Such *de minimis* exports have been expressly found insufficient to support the exercise of general jurisdiction.  *See, e.g., Kendall v. Countrywide Mechanical Servs.*, No. 04-3466, 2005 U.S. Dist. LEXIS 1817 *10 (E.D. Pa. Feb. 8, 2005) (concluding that five sporadic in forum sales representing less than 1% of defendant's annual sales failed to sustain general jurisdiction); *In re Chocolate Confectionary Antitrust Litig.*, 602 F.2d 538 **88-90 (M.D. Pa. 2009) (a Canadian defendant that sold C$500,000 worth of chocolate into the United States was not subject general personal jurisdiction).

1   Plaintiffs have failed to meet their burden of establishing that the Court has general personal

2   jurisdiction over Samtel.

3            **2.      Samtel Does not Have Sufficient Contacts with the United States to**

4                      **Support Specific Jurisdiction**

5            Having failed to establish that Samtel has "continuous and systematic" ties with the

6   United States sufficient to establish general jurisdiction over Samtel, Plaintiffs likewise fail to

7   establish that the Court should exercise specific jurisdiction over Samtel.  Specific jurisdiction

8   exists when the defendant has purposefully directed its activities at residents of the forum and the

9   litigation results from alleged injuries that "arise out of or relate to" those activities.  *Burger King*

10  *v. Rudzewicz*, 471 U.S. at 472; *Schwarzenegger*, 374 F.3d at 802.

11           In the Ninth Circuit, specific jurisdiction is analyzed under a three-prong test, which

12  analyzes:  (1) whether the defendant purposefully availed itself of the privileges of conducting

13  activities within the forum state; (2) whether the underlying claims arise out of or result from the

14  defendant's forum-related conduct; and (3) whether the exercise of personal jurisdiction would be

15  reasonable.  *See In re DRAM Antitrust Litig.*, 2005 U.S. Dist. LEXIS 30299 (N.D. Cal. Nov. 17,

16  2005) (citing *Glencore Grain* 284 F.3d at 1123).  The Complaints fail to establish any of these

17  three factors.

18           **a.      Samtel has not purposefully availed itself of the privileges of**

19                     **conducting activities in the United States**

20           Specific jurisdiction permits the exercise of personal jurisdiction over non-resident

21  defendants only if the defendant has purposefully availed itself of the privileges of conducting

22  activities in the forum.  *See Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarian Co.*, 284

23  F.3d 1114, 1123 (9th Cir. 2002).  The Ninth Circuit explained that "whether dealing with specific

24  or general jurisdiction, the touchstone remains 'purposeful availment.'  By requiring that

25  'contacts proximately result from actions by the defendant *himself* that create a 'substantial

26  connection with the forum state,' the Constitution ensures that 'a defendant will not be haled into

27  a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Id.* (emphasis

28  in original) (citing *Burger King*, 471 U.S. 462 (1985).  The goal of the purposeful availment

McDermott Will & Emery LLP
Attorneys At Law
Palo Alto

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

1   requirement is to give the corporation "clear notice that it is subject to suit [in the forum state]" so

2   that it "can act to alleviate the risk of burdensome litigation by procuring insurance, passing the

3   expected costs on to customers, or, if the risks are too great, severing its connection to the state.

4   *WorldWide Volkswagen*, 444 U.S. at 297.

5       Plaintiffs, however, have not alleged that Samtel "performed [any] type of affirmative

6   conduct which allows or promotes the transaction of business within the forum state[s]," or the

7   United States as a whole.  *See Doe v. Unocal Corp.,* 248 F.3d 915, 924 (9th Cir. 2001).  As

8   Samtel's sworn testimony indicates, Samtel has not concluded sales in the United States, and it

9   has only exported a small quantity CPTs from India on two occasions--more than 12 years ago--to

10  a single global customer's (a manufacturer and distributor of finished CDT and CPT Products)

11  United States operations at the customer's request.  *See* Gupta Decl. ¶ 6.  These were not part of

12  an ongoing relationship, and did not give rise to any continuing relationship with this

13  customer--or indeed any other entity in the United States.  *Id.*  Such isolated actions performed at

14  the unilateral request of a global customer cannot mean that Plaintiffs can now hale Samtel into

15  court in the United States.  *See, e.g.*, 16-108 MOORE'S FEDERAL PRACTICE § 108.42 (citing *Shute*

16  *v. Carnival Cruise Lines*, 897 F.2d 377, 381 (9th Cir. 1990), *rev'd on other grounds*, 499 U.S.

17  585 (1991)).

18       In the absence of clear contacts with forum state (or, here, the United States), the Ninth

19  Circuit will not exercise specific jurisdiction unless a plaintiff can show that a defendant

20  (1) committed an intentional act; (2) expressly aimed at the forum state(s); and (3) causing harm

21  in the forum state that the defendant knew would likely occur.  The requirements of this "effects"

22  test are met when the defendant is alleged to have engaged in wrongful conduct targeted at a

23  plaintiff whom the defendant knows to be a resident of the forum state.  *See In re DRAM Antitrust*

24  *Litig.*, No. 02-1486, 2005 U.S. Dist. LEXIS 30299, ** 18-19 (N.D. Cal. Nov. 7, 2005) (citing

25  *Calder v. Jones*, 465 U.S. 783 (1984); *Bancroft & Masters, Inc.*, *v. Augusta Nat. Inc.*, 223 F.3d

26  1082, 1087) (9th Cir. 2000)).  Plaintiffs have not met their burden to show that Samtel

27  purposefully availed itself of any forum in the United States.  As described above, Samtel

28  controls no entity operating in the United States, and has never manufactured CPTs in the United

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

1   States nor conducted regular and ongoing sales of CPTs in the United States having made only *de*

2   *minimis* exports on two occasions to a single global customer's United States operations more

3   than a decade ago.  *See* Gupta Decl. ¶¶ 6-12.  Lacking any substantial connection to the United

4   States, Plaintiffs also have failed to make uncontroverted allegations that Samtel's alleged foreign

5   conduct was aimed at any of the states in which the Plaintiffs reside, or anywhere in the United

6   States generally, which is required in the Ninth Circuit.  *See In re DRAM Antitrust Litig.*, 2005

7   U.S. Dist. LEXIS ** 16-28; *see also, e.g.*, *Adidas America, Inc. v. Kmart Corp.*, No. CV-05-120,

8   2006 U.S. Dist. LEXIS 70413 *15 (D. Or. 2006) (refusing to exercise personal jurisdiction where

9   a seller was told that its products were destined for California and South Carolina, but ultimately

10  lacked control over what its buyer did with the products); *Cybersell, Inc. v. Cybersell, Inc.* 130

11  F.3d 414, 419-20 (9th Cir. 1997).

12      At best, the IPC Plaintiffs allege that Samtel sold CPTs to foreign manufacturers that are

13  also named Defendants in this case.  *See* IP Compl. ¶ 127(k).  Perhaps this bare allegation is

14  supposed to infer that Samtel introduced its CPTs into the "stream of commerce."  Both the

15  Supreme Court and the Ninth Circuit are clear, however, that merely introducing a product into

16  the stream of commerce is insufficient to show that a defendant "purposefully availed" itself of

17  the privileges of doing business in the United States.  *See Asahi*, 480 U.S. at 112-13.  Rather, a

18  defendant must at least have actual knowledge that a given product would reach a forum state(s).

19  *See Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 560-61 (9th Cir. 1995); *see also DRAM*

20  *Antitrust Litig.* 2005 U.S. Dist. LEXIS 30299 ** 20-21.  Plaintiffs make no such allegation in this

21  case.

22      Moreover, Courts have declined to exercise specific personal jurisdiction over defendants

23  that had *de minimis* sales or other contacts United States because these isolated occurrences and

24  did not result in continuous, ongoing or otherwise substantial contacts with the United States.  For

25  example, the Ninth Circuit affirmed that personal jurisdiction could not be exercised over an

26  Indian company, even though it had, among other things, made seven individual shipments of rice

27  in the United States.  *See Glencore Grain*, 284 F.3d at 1123 (quoting *Burger King Corp. v.*

28  *Rudzewicz*, 471 U.S. at 475).  More recently, the Ninth Circuit again ruled that personal

[PROPOSED] ORDER GRANTING
SAMTEL'S MOTION TO DISMISS                    - 13 -            (3:07-CV-5944 SC; MDL NO. 1917)

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

1    jurisdiction could not be exercised when a defendant's contacts with a forum do not create

2    continuing obligations and are essentially a "one-shot affair."  *See Boschetto v. Hansing*, 539 F.3d

3    1011, 1017 (9th Cir. 2008) (quoting *Compuserve, Inc. v. Patterson*, 89 F.3d 1257, 1265 (6th Cir.

4    1997).  In another case, the Ninth Circuit refused to permit the exercise of jurisdiction over a

5    Finnish company, or its Finnish parent, even though they had engaged in marketing activities in

6    the United States.  *See Holland Am. Line, Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 462 (9th

7    Cir. 2007).  In that case, the Ninth Circuit ruled that the fact that defendant made a presentation at

8    a leadership forum for its industry in the United States and sponsored a reception were "isolated

9    incident[s] [that] do[] not support [personal jurisdiction]." *Id.* (citing *Glencore Grain*, 284 F.3d at

10   1123).[8]

11        These cases compel the conclusion that Samtel has never purposely availed itself of the

12   privilege of doing business anywhere in the United States, or committed acts intended to effect

13   any jurisdiction in the United States.  Moreover, taken as a whole, and read in light of the

14   Declaration of Sunil K. Gupta, the Complaints are devoid of a single uncontroverted allegation

15   Samtel's alleged contacts vis-à-vis the United States and, therefore, cannot show that Samtel

16   intentionally aimed the allegedly illegal conduct at the United States, knowing that harm would

17   occur.  *See, e.g., In re DRAM Antitrust Litig.* 2005 U.S. Dist. LEXIS 30299 ** 18-20.  Plaintiffs

18   have offered no evidence to support their bare allegations--as they cannot--which leads to the

19   unavoidable conclusion that neither the DP Plaintiffs nor the IP Plaintiffs have met their burden

20   of establishing that Samtel aimed its conduct at the United States.[9]

21   _____

22   [8] Courts in other circuits have reached similar holdings.  *See, e.g., See Patent Incentives, Inc. v.
     Seiko Epson Corp.*, No. 88-1407, (1988 U.S. Dist. LEXIS 9933), at *1, *5 (D.N.J. Sept. 6, 2008)

23   (declining to exercise personal jurisdiction over a foreign company that sold computers outside of
     the United States and exported them to its United States subsidiary, which then distributed the

24   computers in the United States.); *see also In re Chocolate Confectionary Antitrust Litig.* 602 F.2d
     538 ** 88-90 (M.D. Pa. 2009) (finding plaintiffs had not established personal jurisdiction over a

25   Canadian company that sold C$500,000 into the United States); *Kendall v. Countrywide
     Mechanical Servs.*, 04-3466, 2005 U.S. Dist LEXIS 1817 *10 (finding that five sporadic contacts

26   did not confer personal jurisdiction); *BP Chems. Ltd. v. Formosa Chem. & Fibre Corp.*, 229 F.3d
     254, 259 (3d Cir. 2000).

27   [9] Moreover, Plaintiffs are not entitled to jurisdictional discovery as a matter of course.  "Where a

28   plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare

     *(Footnote continued)*

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

1

**b.      This litigation is not related to nor does it arise out of any**

2

**Samtel activity in the United States**

3        Although Plaintiffs' failure to show that Samtel "purposefully availed" itself of the

4    privilege of doing business in any of the forum jurisdictions, Plaintiffs have also failed show that

5    the litigation arises from Samtel's activity in the United States.

6        Because the Foreign Trade Antitrust Improvement Act specifically excludes from the

7    reach of the Sherman Act alleged anticompetitive conduct involving exclusively foreign

8    commerce and injury (*see* Joint Motion to Dismiss the DP-CAC and Joint Motion to Dismiss the

9    IP-CAC), this Court can only exercise specific jurisdiction over Samtel if Samtel's contacts give

10   rise to Plaintiffs' cause of action.  Only those contacts that are "related to plaintiff's cause of

11   action" are "relevant to this analysis."  *Burger King*, 471 U.S. at 472 (court only has specific

12   jurisdiction if plaintiff's cause of action results from "alleged injuries that 'arise out of or relate

13   to' those activities" aimed at forum state); *Terracom*, 49 F.3d at 561 (specific jurisdiction requires

14   showing that "'but for' the contacts between the defendant and the forum state, the cause of

15   action would not have arisen.").  Here, the two *de minimis* sales Samtel had into the United States

16   occurred prior to the period in which Samtel was part of the alleged conspiracy and were made to

17   a purchaser that is not a plaintiff of either class, nor could it be because unlike the other class

18   members, it is a manufacturer--not a purchaser--of finished CRT products.  Moreover, these

19   products were limited to CPTs, while Plaintiffs causes of action appear to arise from the purchase

20   of finished CRT products.  Therefore, the Plaintiffs' alleged injuries could not have arisen from

21   Samtel's activities, as is required by the Ninth Circuit.

22

23   allegations in the face of specific denials made by defendants, the Court need not permit even
     limited discovery." *Terracom v. Valley Nat'l Bank*, 49 F.3d 555,  562 (9th Cir.  1995) (citation

24   omitted); *see also Lovesy v. Armed Forces Benefit Ass'n*, 2008 U.S. Dist. LEXIS 93479, *40
     (N.D. Cal. March 13, 2008).  *Lovesy* made clear that to obtain jurisdictional discovery, the

25   plaintiffs "must at least… come forward with 'some evidence' tending to establish personal

26   jurisdiction over the defendant." *Lovesy,* 2008 U.S. Dist. LEXIS at *40 (internal citation
     omitted).  Plaintiffs' bare and conclusory allegations concerning Samtel do not approach this

27   required showing.  Any request by Plaintiffs for jurisdictional discovery should be denied on this
     basis alone.

28

[PROPOSED] ORDER GRANTING                      - 15 -              (3:07-CV-5944 SC; MDL NO. 1917)
SAMTEL'S MOTION TO DISMISS

1       The Complaints allege that Samtel manufactured, sold and distributed "CRT Products" in

2    or into the United States.  Samtel, however, only makes CPTs--not the broad range of products

3    Plaintiffs sweepingly characterize as "CRT Products."  *See* Gupta Decl. ¶ 5.  Samtel also has

4    never manufactured CPTs (or any other product in the United States.)  *Id.* ¶ 5.  And Samtel has

5    made almost no sales of CPTs into the United States.  *Id.* ¶¶ 5-6.  Rather, on two occasions

6    Samtel concluded sales in India for *de minimis* quantities of CPTs to be exported to the United

7    States operations of a global manufacturer of displays--at its customer's request.  *Id.* ¶ 6.

8    Moreover, these sales occurred more than 12 years ago (in 1996 and 1997) (*Id.* ¶ 6)--well outside

9    the period of time in which Samtel purportedly engaged in illegal activity.  *See* DPC ¶ 186; IPC

10   ¶ 186.  Since these sales occurred outside the time Samtel was allegedly involved in the purported

11   cartel, Samtel's conduct cannot give rise to the current litigation.

12       Failing to establish that Samtel's conduct in the United States gave rise to the current

13   litigation, the Complaints allege that Samtel met a *Thai* company in *Malaysia* and that this

14   somehow gave rise to the current litigation.  The Complaints, however, lack a single allegation

15   that these alleged discussions led to any agreement in which Samtel agreed to fix prices in the

16   United States.  This is likely because no such allegations can be made given that Samtel had no

17   activity in the United States in the time period Plaintiffs allege.[10]  Not only does Samtel lack

18   contacts with the United States (*See* Gupta Decl. ¶¶ 5, 7-12), there is no allegation that Samtel

19   was involved in any alleged conspiracy aimed at the United States.  *See, also Glencore Grain*,

20   284 F.3d at 1123 (stating that a claim cannot arise out of, or relate to, non-existent contacts with

21   the forum state(s)).  In an analogous case, the U.S. District Court for the Northern District of

22   California court granted several foreign defendants' motions to dismiss in part because they had

23   never manufactured Dynamic Random Access Memory ("DRAM") products in the United States,

24   concluded sales for DRAMs in the United States, or derived substantial revenues in the applicable

25   United States forums.  *See In re DRAM Antitrust Litig.*  2005 U.S. Dist. LEXIS 30299 ** 19-20.

26

27   ──────────────

     [10]  As mentioned above, in 2001 Samtel permitted an entity in the United States to have two of its

28   sample CPTs at no charge.  *See* Gupta Decl. ¶ 6.

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

1

2

**c.**  **Exercising personal jurisdiction over Samtel would offend "traditional notions of fair play and substantial justice"**

3   Even if a defendant has purposefully established minimum contacts with the

4   forum--which Samtel submits is not the case here--the Court must still consider whether the

5   assertion of jurisdiction would be consistent with fair play and substantial justice. *See In re*

6   *DRAM Antitrust Litig.* 2005 U.S. Dist. LEXIS 30299 ** 26-27 (citing *CE Distribution, LLC v.*

7   *New Sensor Corp.,* 380 F.3d 1107, 1112 (9th Cir. 2004) (setting forth factors to be considered in

8   assessing reasonableness)).  Bringing Samtel, an Indian company with no link to the United

9   States, into court would fundamentally offend this concept of reasonableness.

10   When determining whether the exercise of jurisdiction is reasonable, courts in the Ninth

11   Circuit consider seven factors:  (1) the extent of a defendants' purposeful interjection into the

12   forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of

13   conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating

14   the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the

15   forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an

16   alternative forum.  *CE Distrib. LLC v. New Sensor Corp.*, 380 F.3d 1107 (9th Cir. 2004).  "Where

17   . . . the defendant is from a foreign nation rather than another state, the sovereignty barrier is high

18   and undermines the reasonableness of personal jurisdiction." *Amoco Egypt Oil v. Leonis*

19   *Navigation Co.*, 1 F.3d 848, 852 (9th Cir. 1993) (citing *Pacific Atl. Trading Co. v. M/V Main*

20   *Express*, 758 F.2d 1325, 1330 (9th Cir. 1985).  This echoes the Supreme Court's admonition that

21   "great care and reserve should be exercised when extending our notions of personal jurisdiction

22   into the international field." *Asahi*, 480 U.S. at 115; *see also Amoco Egypt Oil v. Leonis*

23   *Navigation Co.*, 1 F.3d 848, 852 (9th Cir. 1993).

24   Here, Plaintiffs seek to bring into a Unites States court an Indian CPT manufacturer, with

25   no United States presence or operations, whose only link to the United States are two export

26   shipments to a single customer more than 12 years ago, to defend itself against Plaintiffs'

27   allegations of a conspiracy to fix prices at which "CRT Products" were sold in the United States.

28   Samtel will face unique challenges in defending itself given language differences, the lack of any

[PROPOSED] ORDER GRANTING
SAMTEL'S MOTION TO DISMISS

(3:07-CV-5944 SC; MDL NO. 1917)

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

1  presence in the United States, and because all potential evidence and witnesses are half a world

2  away.  *Amoco Egypt Oil*, 1 F.3d at 852.

3      In *In re DRAM Antitrust Litigation,* the court concluded that a full reasonability analysis

4  was unnecessary because (as in this case) plaintiffs' failed to establish minimum contacts with the

5  forum states.  2005 U.S. Dist. LEXIS 30299 at ** 26-27.  Nevertheless, the court continued that

6  even under a full analysis, the exercise of personal jurisdiction would be unreasonable, given the

7  lack of defendants' contacts, the unique hardships foreign defendants face in defending

8  themselves in the United States, and the fact that other defendants will remain in the litigation

9  even if the foreign defendants were dismissed.  *See id.*

10      Similar to *DRAM*,  Plaintiffs in this case have failed to establish that this Court has

11  personal jurisdiction over Samtel.  Samtel does not have any contacts with the United States--let

12  alone continuous and systematic ones--and has not purposefully availed itself of the privilege of

13  doing business in the United States.  Samtel is an Indian company that does not manufacture,

14  solicit, advertise or sell "CRT Products" in the United States.  To force Samtel to defend itself on

15  the other side of the world is unfair and unreasonable and would contradict the Supreme Court's

16  express warning in *Asahi*, as echoed by the Ninth Circuit.  *See Asahi*, 480 U.S. 102.  For this

17  independent reason alone, Samtel should be dismissed from this litigation with prejudice.

18      **B.**     **Plaintiffs Failed To State A Claim Against Samtel For Which Relief Can Be**

19      **Granted**

20      Even if this Court has personal jurisdiction over Samtel, which Samtel submits it does not,

21  the DPC and IPC should be dismissed for the independent reason that they fail to state a claim

22  under Rule 12(b)(6).  Despite their length and verbiage, the Complaints fail to allege an

23  actionable conspiracy to fix CPT prices or limit CPT output that is plausible within the meaning

24  of *Twombly*.[11]

25

26

27  ─────────────────────

[11] The Joint Motion to Dismiss the DP-CAC and Joint Motion to Dismiss the IP-CAC set forth
28  the legal standard under *Twombly* and are incorporated by reference herein.

[PROPOSED] ORDER GRANTING                    - 18 -            (3:07-CV-5944 SC; MDL NO. 1917)
SAMTEL'S MOTION TO DISMISS

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

In order to survive a motion to dismiss, a plaintiff must allege facts that are sufficient to raise his/her right to relief "above the speculative level."  *See Twombly*, 550 U.S. at 555.  It is "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' [which] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.*  In short, a plaintiff  must allege "enough facts to state a claim to relief that is plausible on its face," not just conceivable.  *Id.* at 570; *see also Sun Microsystems v. Hynix*, No. C-06-1665 2009 U.S. Dist. LEXIS 27567 ** 23-24 (N.D. Cal. Mar. 31, 2009).  The Supreme Court explained the reason for this standard, observing that a "defendant seeking to respond to plaintiffs' conclusory allegations in the § 1 context would have little idea where to begin" and would face "the potentially enormous expense of discovery."  *Twombly* at 551; *Ashcroft v. Iqbal*, 556 U.S. at ____ (slip op., at 14) ("Rule 8… does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions"); *see also Kendall v. Visa U.S.A.*, *Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008).

In *Twombly*, the Court reviewed an overbroad antitrust claim, and acknowledged the likelihood of abuse that can result in overbroad antitrust claims.  *Twombly* at 559 ("[I]t is one thing to be cautious before dismissing an antitrust complaint in advance of discovery, but quite another to forget that proceeding to antitrust discovery can be expensive. . .  [A] district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed."); *see also Ashcroft v. Iqbal*, 556 U.S. at ____ (slip op. at 15) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."); *Kendall*, 518 F.3d at 1047 ("[D]iscovery in antitrust cases frequently causes substantial expenditures and gives the plaintiff the opportunity to extort large settlements even where he does not have much of a case.").

The admonitions of *Twombly* apply with special force in this case.  Here, Plaintiffs seek to represent exceptionally broad putative class and implicate dozens of U.S. and foreign companies without regard to whether the foreign entities actually supplied "CRT Products" to the United States.  The costs of discovery would be astronomical in this case, particularly if Plaintiffs are given free reign to insist on discovery from all corners of the world in the hope that they can

[PROPOSED] ORDER GRANTING
SAMTEL'S MOTION TO DISMISS

(3:07-CV-5944 SC; MDL NO. 1917)

1   justify their over-broad, non-specific claims of conspiracy from entities that were never active in

2   the United States or never produced the products swept into their broad definition of "CRT

3   Products."

4        In this case, Plaintiffs allege that Samtel is among over 40 distinct entities that conspired

5   to fix worldwide "CRT Product" prices from "at least as early as March 1, 1995 until

6   November 25, 2007." DPC ¶ 1; IPC ¶ 1.  That supposed conspiracy is described in the

7   Complaints' collective 161 pages and 513 allegations.  Yet, out of 513 paragraphs, only 10

8   paragraphs include Samtel's name;[12] and only 1 paragraph in the DPC and 4 paragraphs in the

9   IPC purport to explain what Samtel supposedly did.  *See* DPC ¶ 168; IPC ¶¶ 164-165; 186-187.

10   Closely examined, these paragraphs fail to sufficiently state any plausible claim that Samtel

11   engaged in a conspiracy to increase CPT prices or reduce output.  As such, Plaintiffs have failed

12   to meet the standard set forth in *Twombly* for all defendants (*see* Defendants Motion to Dismiss

13   the DC-CAC and Defendants Motion to Dismiss the IP-CAC), and in particular for Samtel.  Since

14   the claims against Samtel in the DPC and IPC vary, each will be addressed separately.

### 1.   The DPC Fails to State a Claim Against Samtel

16        The DPC identifies Samtel in only three paragraphs (out of 222 paragraphs).  The first

17   reference, in paragraph 68, identifies Samtel as a defendant and makes allegations that Samtel

18   manufactured or sold "CRT Products" in the United States--an allegation directly refuted by

19   Samtel through the declaration of Sunil Gupta.  The second reference comes in paragraph 119,

20   with a gratuitous reference to Samtel's alleged joint venture with Samsung and non-defendant

21   Corning to make picture tube glass.  This allegation--taken as true--is irrelevant because Samcor

22   is not a party to this litigation, operates in India, and produces a product which is not at issue in

23   this case.  (Moreover, while not necessary to decide this Motion to Dismiss on 12(b)(6) grounds,

24   Samtel was not actually a party to this alleged joint venture.  *See* Gupta Decl. ¶ 14.)

25        Finally, paragraph 168 of the DPC purports to allege Samtel's role in the alleged

26   conspiracy:  "Samtel participated in multiple illegal bilateral meetings between 1998 and 2006 in

27

28   [12]  *See* DPC ¶¶ 69, 119, 168;  IPC ¶¶ 2, 105, 128(j), 128(k); 164-165; 186-187.

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

[PROPOSED] ORDER GRANTING
SAMTEL'S MOTION TO DISMISS

(3:07-CV-5944 SC; MDL NO. 1917)

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

1  which unlawful agreements as to, *inter alia*, price, output restrictions, and customer and market

2  allocation of CPT Products occurred.  Those meetings occurred in Malaysia.  Samtel never

3  effectively withdrew from this conspiracy."

4  This allegation forms the core of the DP Plaintiffs' case against Samtel, and, taken as true, falls

5  far short of the threshold established by *Twombly* to state a claim for several reasons.

6      First, the Complaints are unduly vague and fail to satisfy *Twombly* because of their over-

7  reaching, inconsistent and non-specific allegations concerning "CRT Products."  Plaintiffs

8  contend that they purchased CRTs, yet their allegations indicate that they only purchased *finished*

9  CRT products.  *See* DP-CAC ¶¶ 11-23; IP-CAC ¶¶ 19-49.  At the same time, Plaintiffs do not and

10  cannot allege that inputs such as CDTs and CPTs are "reasonably interchangeable" with finished

11  CRT products such as television sets and computer monitors.  As a matter of common sense, no

12  consumer would view such an input as a reasonable substitute for a television set or a computer

13  monitor.  For this reason, CRT inputs and finished CRT products such as television sets or

14  computer monitors are not substitutable.  Moreover, Plaintiffs do not--and again, cannot--allege

15  cross elasticity of demand between CRT inputs and television sets or computer monitors.  In other

16  words, Plaintiffs cannot logically posit that if the price of a television set or computer monitor

17  increased, consumers would instead purchase CDTs or CPTs.  The blurred lines between inputs

18  and finished products result in an incoherent complaint that fails to give Samtel adequate notice

19  concerning their alleged illegal conduct, which Plaintiffs concede took place exclusively outside

20  the United States.  For this reason alone, Plaintiffs fail to satisfy the *Twombly* standard and their

21  Complaints should be dismissed.

22      Second, Apart from alleging an eight-year period, Plaintiffs do not allege when these

23  meetings took place, with whom Samtel met, who from Samtel attended, or where the meetings

24  occurred--apart from referring to the entire country of Malaysia.  This omits the "who[] did what,

25  to whom (or with whom), where, and when," *Kendall*, 518 F.3d at 1048, which is required to state

26  a claim for conspiracy.

27      Third, the paragraph 168 of the DPC purports to characterize these alleged meetings as a

28  "conspiracy" to reach "agreements as to, *inter alia*, price, output restrictions and customer and

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

1   market allocation of CPT products." This allegation rings equally hollow and amounts to a legal

2   conclusion that is "not entitled to the presumption of truth." *Ashcroft v. Iqbal*, 556 U.S. at _____

3   (slip op. at 15). This Court "is not required to accept as true conclusory allegations of law or

4   legal conclusions couched as factual allegations" or accept terms such as "conspiracy" or

5   "agreement" as a sufficient basis for a complaint. *See Kendall*, 518 F.3d at 1047, 1050 (citing

6   *Twombly* at 553-56). This is because such "bare allegation[s] of a conspiracy are almost

7   impossible to defend against, particularly where the defendants are large institutions with

8   hundreds of employees entering into contracts and agreements daily." *See Kendall*, 518 F.3d

9   1047 (citing *Twombly* at 556). Because Paragraph 168 does little more than make conclusory

10   allegations of "agreements" and "conspiracy" without alleging virtually any factual evidence, it

11   fails under the standard established by *Twombly*.

12        Fourth, the DPC's core allegation against Samtel <u>does not</u> allege that any alleged

13   "agreement" was aimed at the United States. Absent such an allegation, the DPC's core case

14   against Samtel is reduced to an alleged bilateral meeting, where an "agreement" was reached as

15   part of a "conspiracy" between <u>foreign</u> producers of CPTs, at least one of which has no operations

16   or activities in the United States. *See* Gupta Decl. ¶ 5. Such an allegation, taken as true, is

17   excluded from the Sherman Act's reach by the Foreign Trade Antitrust Improvement Act

18   ("FTAIA").[13]

19        Finally, Paragraph 168 of the DPC is not salvaged by reading it together with the rest of

20   the Complaint. Samtel is only mentioned in three paragraphs of the DPC, and the DPC's repeated

21   references to "Defendants" cannot be imputed to Samtel. In order to state a claim against Samtel,

22   the Plaintiffs must allege facts showing that *Samtel* joined the conspiracy and played some role in

23   it. *See Twombly* at 564 n.10; *Mountain View Pharmacy v. Abbott Labs.*, 630 F. 2d 1383, 1388

24   (9th Cir. 1980) (a "blanket statement [concerning multiple defendants] does not provide adequate

25   notice for responsive pleading"); *In re Sagent Tech., Inc. Derivative Litig.*, 278 F. Supp. 2d 1079,

26   _____

27   [13]  In this case, neither the DP nor IP Plaintiffs overcome the FTAIA obstacle with respect to their
      claims towards Samtel. Samtel incorporates in full the arguments contained in Defendants'

28   Motion to Dismiss DP-CAC and Defendants Motion to Dismiss IP-CAC.

[PROPOSED] ORDER GRANTING                    - 22 -              (3:07-CV-5944 SC; MDL NO. 1917)
SAMTEL'S MOTION TO DISMISS

1    1094-95 (N.D. Cal. 2003); *Jung v. Ass'n of Am. Med. Colleges*, 300 F. Supp. 2d 119, 163 (D.D.C.

2    2004); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1111 (N.D. Cal. 2008).

3         In *TFT-LCD*, for example, the court ruled that "the conspiracy must allege each individual

4    defendant joined the conspiracy and played some role in it because at the heart of an antitrust

5    conspiracy is an agreement and a conscious decision by each defendant to join it…. [G]eneral

6    allegations as to all defendants …[are] insufficient to put specific defendants on notice as to the

7    claims against them." 586 F. Supp. 2d at 1111. As such, the general lumping together of over 40

8    distinct entities as "Defendants" cannot be imputed to Samtel.[14]

9         Moreover, Samtel's absence from all but three paragraphs of the DPC is telling:  Samtel is

10   not identified in DP Plaintiffs' allegations of so-called "Management Meetings," "Working Level

11   Meetings" or "Green Meetings." *See* DPC ¶¶ 147-153. Samtel also is absent from the DP

12   Plaintiffs' description of how trade association activities facilitated the conspiracy. *See* DPC

13   ¶¶ 176-180. Samtel also is not mentioned in the DPC's discussion of the Department of Justice

14   investigation into the CPTs and CDTs. *See* DPC ¶¶ 122-133. Finally, the DP Plaintiffs do not

15   mention Samtel at all in its allegations concerning Defendants' purported reduction in capacity

16   and increases in price. *See* DPC ¶¶ 181-199. Taken together, the DP Plaintiffs have failed to

17   state a claim against Samtel, and their Complaint should be dismissed without the opportunity to

18   re-plead. More than a year after the filing of the first complaint in this case, Plaintiffs should not

19   get another bite at the apple.

20              **2.    The IPC Fails to State a Claim Against Samtel**

21        The IPC likewise contains few allegations that mention Samtel, and also fails to state a

22   claim; in particular, the IPC contains 7 paragraphs (out of 291) that mention Samtel.[15] These

23

24   _____

[14] Instead, reading the DPC as a whole reveals its incoherence with regard to Samtel.  The DPC
first fails to allege that Samtel implemented any conspiracy targeting the United States--as it must
25   because Samtel never actually manufactured any CRTs in the United States and exported only a
small number purchased by a global customer for its U.S. operations more than a decade ago.
26   Next, the DPC alleges that Samtel's purported "bilateral" meetings with unknown counterparts
took place between 1998 and 2006 (DPC ¶ 168), yet somehow Samtel is part of a conspiracy
27   extending from 1997 until late 2007.
[15] *See* IPC ¶¶ 2, 105, 128(j), 128(k), 164-165, 186-187.
28

McDermott Will & Emery LLP
Attorneys at Law
Palo Alto

1   allegations largely follow the pattern of the DPC: allegations concerning Samtel's identity (IPC

2   ¶¶ 105, 128(k)), allegations identifying Samcor as a non-party joint venture, which produces

3   products in India that are not within the scope of this litigation (IPC ¶ 128(j)); and finally alleging

4   that Samtel engaged in bilateral meetings with other "Defendants," in particular Thai CRT, in

5   Malaysia.  *See* IPC ¶¶ 164-165; 186-187.  *See also* IPC ¶ 2 (observing that certain Defendants

6   "reached out" to a number of companies, including Samtel.)  These allegations, like the DPC

7   allegations, fall well short of the *Twombly* standard.  (*See* § II.A, *supra*).

8       At the outset, the IPC concedes that Samtel did <u>not</u> attend group meetings, such as "Glass

9   Meetings" or "Green Meetings" or other group meetings which form the core of their allegations

10  concerning the alleged cartel.  *See* IPC ¶ 164.  Samtel also is omitted from the IPC's discussion of

11  these "group meetings" (IPC ¶¶ 139-158); its allegations concerning international government

12  antitrust investigations (IPC ¶¶ 203-221); and its discussion of alleged "pass-through" of

13  overcharges to consumers (IPC ¶¶ 222-239).

14      The IPC's case against Samtel's thus rests on alleged "bilateral" meetings in Malaysia

15  with Thai CRT and other Defendants.  *See* IPC ¶¶ 164-65, 186-87.  In these meetings, Samtel

16  purportedly "agreed" to implement pricing strategies determined by other Defendants.  *Id.*  While

17  the IP Plaintiffs identify one party with whom Samtel purportedly met, the IPC falls far short of

18  stating a claim against Samtel.  First, the IPC still fails to sufficiently allege the "who did what, to

19  whom (or with whom), where, and when," (*Kendall*, at 1048) noting only that some meetings

20  allegedly occurred in "Malaysia" with "Thai CRT" (and possibly separately with other

21  "Defendants") at unspecified times during an eight year period (1998-2006).  *See* IPC ¶¶ 164-65,

22  186-87.  These allegations do not indicate how Samtel supposedly joined this alleged cartel, nor

23  how Samtel implemented it.  Moreover, a mere meeting between firms is more rationally and

24  logically explained as legitimate business conduct than with as illegal conspiracy. *See Ashcroft v.*

25  *Iqbal*, 556 U.S. at ____ (slip op. at 16) (describing *Twombly* and parallel conduct).  Accordingly,

26  the IP Plaintiffs fail to satisfy their pleading requirements under *Twombly*, which requires

27  specific, factual allegations against individual defendants.  *See Twombly* at 564 n.10.

28

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

1    Moreover, the IPC's allegations of Samtel's involvement in the alleged conspiracy are

2   internally inconsistent with paragraph 128(k) of the IPC, which alleges that Samtel supplies CRTs

3   to LG Electronics, Inc., Samsung, Royal Philips, and Panasonic.  *Compare* IPC ¶¶ 164-165, 186-

4   187 *with* IPC ¶ 128(k).  It is implausible that Samtel somehow implemented an agreement to

5   increase CRT prices and reduce output when its very customers are the entities that supposedly

6   were core members of the alleged cartel.  In other words, the IPC suggests that the Defendants

7   somehow conspired with Samtel to raise the CRT prices Samtel charged to these Defendants.

8   This makes no sense and fails to satisfy the plausibility standard established by *Twombly*.

9   Further, a complaint cannot be viewed as well-pleaded where its allegations are internally

10  inconsistent.  *See, e.g.*, *Trans World Airlines, Inc. v. Hughes*, 308 F. Supp. 679 (D.C.N.Y. 1969)

11  *rev'd on other grounds*, 409 U.S. 363.  The IPC thus fails to state a claim against Samtel as

12  required by Rule 12(b)(6).

13  **V.    CONCLUSION**

14    For all of the reasons stated above, Plaintiffs have failed to meet their burden and establish

15  that this Court has personal jurisdiction over Samtel as required by Rule 12(b)(2).  This alone

16  constitutes grounds to dismiss the DPC and IPC against Samtel, and this Court should do so with

17  prejudice.  Even if this Court has jurisdiction over Samtel, which Samtel submits the Court does

18  not, the DPC and IPC should still be dismissed for the independent ground that they fail to state a

19  claim against Samtel pursuant to Rule 12(b)(6).

20  Dated:  May 18, 2009                    Respectfully submitted,

21                                          McDERMOTT WILL & EMERY LLP

22

23                                  By:     */s/ William Diaz*
                                            William Diaz
24                                          Attorneys for Defendant
                                            SAMTEL COLOR LTD.
25

26

27

28

1

## **CERTIFICATE OF SERVICE**

2

3          I, William Diaz, declare that I am over the age of eighteen (18) and not a party to this

4   action.  I am a partner with the law firm of McDermott Will & Emery LLP, 18191 Von Karman,

5   Suite 500, Irvine, CA 92612-7108.

6          On May 18, 2009, I caused a true and correct copy of the foregoing Samtel Color Ltd.'s

7   Notice Of Motion And Motion To Dismiss Direct Purchaser Plaintiffs' Consolidated Amended

8   Complaint And Indirect Purchaser Plaintiffs' Consolidated Amended Complaint to be

9   electronically filed and served via the Official Court Electronic Document Filing System, which

10  served copies on all parties registered for electronic filing in the above-entitled matter.

11

12  Dated:  May 18, 2009                    McDERMOTT WILL & EMERY LLP

13

14

15                                By:    */s/ William Diaz*
                                         William Diaz
16                                       Attorneys for Defendant
                                         SAMTEL COLOR LTD.

17

18

19

20

21

22

23

24

25

26

27

28

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

William Diaz (Bar No. 232297)
wdiaz@mwe.com
**McDERMOTT WILL & EMERY LLP**
18191 Von Karman Avenue, Suite 500
Irvine, CA 92612-7108
Telephone:     +1 949 851 0633
Facsimile:     +1 949 851 9348

Attorneys for Defendant
**SAMTEL COLOR LTD.**

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>CATHODE RAY TUBE (CRT)<br>ANTITRUST LITIGATION,<br><br>This Document Relates To:<br><br>DIRECT PURCHASER ACTIONS and<br>INDIRECT PURCHASER ACTIONS | CASE NO. 3:07-cv-5944 SC<br><br>MDL NO. 1917<br><br>**SAMTEL COLOR LTD.'S NOTICE OF MOTION AND MOTION TO DISMISS DIRECT PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT AND INDIRECT PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT**<br><br>[Declaration of Sunil K. Gupta; and (Proposed) Order Granting Motion to Dismiss Without Leave to Amend Filed Concurrently Herewith]<br><br>Date:     August 4, 2009<br>Time:     9:00 a.m. |

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
IRVINE

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION .................................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................ 1

I.     STATEMENT OF THE ISSUES PRESENTED ................................................... 1

II.    INTRODUCTION .................................................................................................. 2

III.   FACTUAL BACKGROUND ................................................................................ 3

    A.    The Alleged Product Markets ................................................................. 3
    B.    Samtel Has No Operations In The United States .................................... 4

IV.   LEGAL ARGUMENT .......................................................................................... 6

    A.    This Court Lacks Personal Jurisdiction Over Samtel ............................. 6
        1.    Samtel Does not Have Sufficient Contacts with the United States to Support General Jurisdiction ..................................... 7
        2.    Samtel Does not Have Sufficient Contacts with the United States to Support Specific Jurisdiction ................................. 11
            a.    Samtel has not purposefully availed itself of the privileges of conducting activities in the United States ................................ 11
            b.    This litigation is not related to nor does it arise out of any Samtel activity in the United States ............................ 15
            c.    Exercising personal jurisdiction over Samtel would offend "traditional notions of fair play and substantial justice" .............. 17
    B.    Plaintiffs Failed To State A Claim Against Samtel For Which Relief Can Be Granted ........................................................................................ 18
        1.    The DPC Fails to State a Claim Against Samtel ....................... 20
        2.    The IPC Fails to State a Claim Against Samtel ......................... 23

V.    CONCLUSION ................................................................................................... 25

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
IRVINE

1

## <u>TABLE OF AUTHORITIES</u>

2

Page

3

## **FEDERAL CASES**

*Adidas America, Inc. v. Kmart Corp.*,
  No. CV-05-120, 2006 U.S. Dist. LEXIS 70413 (D. Or. 2006)........................................ 13

*Alpine View Co. Ltd. v. Atlas Copco AB*,
  205 F.3d 208 (5th Cir. 2000)............................................................................................. 9

*Amba Marketing System, Inc. v. Jobar International Inc.*,
  551 F.2d 784 (9th Cir. 1977)............................................................................................. 7

*Amoco Egypt Oil v. Leonis Navigation Co.*,
  1 F.3d 848 (9th Cir. 1993)........................................................................................... 17, 18

*Asahi Metal Industrial Co. v. Super Ct. of Cal.*,
  480 U.S. 102 (1987) ............................................................................... 6, 13, 17, 18

*Ashcroft v. Iqbal*,
  556 U.S. at ____............................................................................................. 19, 22, 24

*BP Chemicals Ltd. v. Formosa Chemical & Fibre Corp.*,
  229 F.3d 254 (3d Cir. 2000)............................................................................................. 14

*Bancroft & Masters, Inc. v. Augusta National*,
  223 F.3d 1082 (9th Cir. 2000)...................................................................................... 8, 12

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................. 2, 3, 18, 19, 20, 21, 22, 24, 25

*Boschetto v. Hansing*,
  539 F.3d 1011 (9th Cir. 2008)......................................................................................... 14

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985) ................................................................................ 6, 11, 13, 15

*CE Distribution, LLC v. New Sensor Corp.*,
  380 F.3d 1107 (9th Cir. 2004)......................................................................................... 17

*Calder v. Jones*,
  465 U.S. 783 (1984) ......................................................................................................... 12

*Chan v. Society Expeditions, Inc.*,
  39 F.3d 1398 (9th Cir. 1994)............................................................................................. 6

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
IRVINE

*In re Chocolate Confectionary Antitrust Litigation,*
    602 F.2d 538 (M.D. Pa. 2009) ........................................................ 10, 14

*Compuserve, Inc. v. Patterson,*
    89 F.3d 1257 (6th Cir. 1997)........................................................ 14

*Cybersell, Inc. v. Cybersell, Inc.,*
    130 F.3d 414 (9th Cir. 1997)........................................................ 13

*In re DRAM Antitrust Litigation,*
    No. 02-1486, 2005 U.S. Dist. LEXIS 30299
    (N.D. Cal. Nov. 7, 2005)........................................ 6, 8, 11, 12, 13, 14, 16, 17

*Data Discount, Inc. v. Systems Tech. Associate Inc.,*
    557 F.2d 1280 (9th Cir. 1977)........................................................ 7, 9

*Doe v. Unocal Corp.,*
    248 F.3d 915 (9th Cir. 2001)........................................................ 12

*Dow Chemical Co. v. Calderon,*
    422 F.3d 827 (9th Cir. 2005)........................................................ 6

*Fischer v. Prof'l Compounding Ctrs. of America, Inc.,*
    318 F. Supp. 2d 1046 (D. Nev. 2004), *aff'd Fischer v. Alfa Chems. Italiana*, 2007
    U.S. App. LEXIS 28694 (9th Cir. Dec. 7, 2007) ........................................ 9

*Gates Learjet Corp. v. Jensen,*
    743 F.2d 1325 (9th Cir. 1984)........................................................ 8

*Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.,*
    284 F.3d 1114 (9th Cir. 2002)........................................ 7, 11, 13, 14, 16

*Helicopteros Nacionales de Colombia, S.A. v. Hall,*
    466 U.S. 408 (1984) ........................................................ 6, 7, 8

*Holland America Line, Inc. v. Wartsila N. America, Inc.,*
    485 F.3d 450 (9th Cir. 2007)........................................................ 9, 14

*Huffy Corp. v. Overlord Industrial,*
    246 F. Supp. 2d 1093 (D. Nev. 2003) ................................................ 9

*International Shoe Co. v. Washington,*
    326 U.S. 310 (1945)........................................................ 6, 7

*Jung v. Association of America Medical Colleges,*
    300 F. Supp. 2d 119 (D.D.C. 2004) ................................................ 23

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
IRVINE

*Kendall v. Countrywide Mechanical Services*,
    No. 04-3466, 2005 U.S. Dist. LEXIS 1817 (E.D. Pa. Feb. 8, 2005) .......................... 10, 14

*Kendall v. Visa U.S.A., Inc.*,
    518 F.3d 1042 (9th Cir. 2008)................................................. 19, 21, 22, 24

*Lovesy v. Armed Forces Benefit Association*,
    2008 U.S. Dist. LEXIS 93479 ( N.D. Cal. March 13, 2008) ............................ 15

*Mountain View Pharmacy v. Abbott Laboratories*,
    630 F.2d 1383 (9th Cir. 1980)................................................................ 22

*Omeluk v. Langsten Slip & Batbyggeri A/S*,
    52 F.3d 267 (9th Cir. 1995)..................................................................... 8

*Pacific Atlantic Trading Co. v. M/V Main Express*,
    758 F.2d 1325 (9th Cir. 1985)................................................................ 17

*Patent Incentives, Inc. v. Seiko Epson Corp.*,
    No. 88-1407 (1988 U.S. Dist. LEXIS 9933), at *1, *5 (D.N.J. Sept. 6, 2008)................. 14

*Purdue Research Foundation v. Sanofi-Synthelabo S.A.*,
    338 F.3d 773 (7th Cir. 2003).................................................................. 9

*In re Sagent Tech., Inc. Derivative Litigation*,
    278 F. Supp. 2d 1079 (N.D. Cal. 2003) ................................................ 22, 23

*Schwarzenegger v. Fred Martin Motor Co.*,
    374 F.3d 797 (9th Cir. 2004).......................................................... 6, 7, 11

*Shute v. Carnival Cruise Lines*,
    897 F.2d 377, 381 (9th Cir. 1990), *rev'd on other grounds*, 499 U.S. 585 (1991)........... 12

*Sun Microsystems v. Hynix*,
    No. C-06-1665 2009 U.S. Dist. LEXIS 27567 (N.D. Cal. Mar. 31, 2009)...................... 19

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007)................................................................... 7

*In re TFT-LCD (Flat Panel) Antitrust Litigation*,
    586 F. Supp. 2d 1109 (N.D. Cal. 2008) .................................................... 23

*Terracom v. Valley National Bank*,
    49 F.3d 555 (9th Cir. 1995)............................................................. 13, 15

*Trans World Airlines, Inc. v. Hughes*,
    308 F. Supp. 679 (D.C.N.Y. 1969) *rev'd on other grounds*, 409 U.S. 363 ..................... 25

McDermott Will & Emery LLP
Attorneys at Law
Irvine

*World-Wide Volkswagen Corp. v. Woodson,*
   444 U.S. 286 (1980) ............................................................................................. 6, 12

**FEDERAL STATUTES**

Federal Rule of Civil Procedure 12(b)(2) ........................................................... 1, 2, 7, 25

Federal Rule of Civil Procedure 12(b)(6)  .......................................... 1, 2, 3, 18, 20, 25

**STATE STATUTES**

Cal. Civ. Proc. Code § 410.10 ............................................................................................ 6

**MISCELLANEOUS**

Moore's Federal Practice § 108.42 ............................................................................... 12

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
IRVINE

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on August 4, 2009, at 9:00 a.m., or as soon thereafter as this matter may be heard before the Honorable Charles A. Legge, U.S. District Court Judge (Ret.), Special Master, in the San Francisco Resolution Center of JAMS, Two Embarcadero Center, Suite 1500, San Francisco, California 94111, Defendant Samtel Color Ltd. will and hereby does move this Court for an order dismissing the Direct Purchaser Plaintiffs' Consolidated Amended Complaint and Indirect Purchaser Plaintiffs' Consolidated Amended Complaint with prejudice for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) and for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

The motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities in support thereof, the pleadings and correspondence on file with the Court, and such arguments and authorities as may be presented at or before the hearing.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  STATEMENT OF THE ISSUES PRESENTED**

Defendant Samtel Color Ltd. ("Samtel") moves to dismiss the allegations pled in the Direct Purchasers' and Indirect Purchasers' Consolidated Amended Complaints ("DPC" and "IPC," respectively, or "Complaints," jointly) on the following grounds:[1] (1) this Court lacks personal jurisdiction over Samtel; and (2) the DPC and IPC have not adequately alleged facts

---

[1]  Samtel has not yet been served with the DPC or the IPC.  Nevertheless, in accordance with Judge Legge's April 27, 2009 Briefing Order (Docket No. 448), Samtel files this individual motion to dismiss and joins in the legal arguments made in Certain Defendants' Joint Motion to Dismiss the Direct Purchaser Plaintiffs' Consolidated Amended Complaint ("Joint Motion to Dismiss DP-CAC") and Certain Defendants' Joint Motion to Dismiss the Indirect Purchaser Plaintiffs' Consolidated Amended Complaint ("Joint Motion to Dismiss IP-CAC") filed concurrently herewith.  Samtel respectfully reserves its right to exercise any appropriate defense for improper service of process if and when Plaintiffs attempt to serve Samtel.

1    supporting Samtel's participation in any conspiracy under the Supreme Court's *Twombly*

2    standard.

3    **II.**    <u>**INTRODUCTION**</u>

4       The Direct Purchaser ("DP") Plaintiffs and Indirect Purchaser ("IP") Plaintiffs allege a

5    far-reaching global cartel to fix prices and restrict output on a wide range of products that touch

6    nearly every American household. Plaintiffs have rounded up more than 40 distinct entities that

7    purportedly produce cathode ray tubes ("CRT") and named them as Defendants, yet each is

8    entitled to have the DPC and IPC analyzed as though it was the lone Defendant.

9       Plaintiffs attempt to hale Samtel Color Limited ("Samtel")into this Court fails because

10    neither the DPC nor the IPC actually allege sufficient facts against Samtel to (1) establish that this

11    Court has personal jurisdiction over Samtel or (2) to state a claim. As a result, Plaintiffs'

12    Complaints should be dismissed for two independent reasons: lack of personal jurisdiction under

13    Rule 12(b)(2), and failure to state a claim under Rule 12(b)(6).

14       In their zeal, Plaintiffs have named Samtel in the Direct Purchaser Amended Consolidated

15    Complaint ("DPC") and Indirect Purchaser Amended Consolidated Complaint ("IPC"). Samtel is

16    a publicly-traded Indian company that manufactures, in India, CRTs for use in televisions,

17    deflection yokes and electron guns. It manufactures no finished CRT products, which appear to

18    be the only products Plaintiffs allegedly purchased. Samtel has never manufactured these

19    products in the United States, and has no address, offices, inventory, real estate, subsidiaries,

20    assets, property, bank accounts, or even a phone number in the United States. Samtel is not

21    registered as a foreign corporation to do business in the United States.

22       Plaintiffs have failed to meet their burden to establish that this Court has jurisdiction over

23    Samtel. Plaintiffs should not be permitted to hale into a United States court a foreign company

24    located half a world away that has virtually no dealings or even presence in the United States.

25    This case should therefore be dismissed for lack of personal jurisdiction under Rule 12(b)(2).

26    Because Samtel's lack of presence in the United States means that any attempt to re-plead would

27    be futile, Samtel requests that Plaintiffs' Complaints be dismissed with prejudice.

28

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

1   Further, even if this Court has personal jurisdiction over Samtel, which Samtel submits it

2   does not, independent grounds for dismissal exist because Plaintiffs have failed to state a claim

3   against Samtel for which relief can be granted pursuant to Rule 12(b)(6).

4   Samtel is barely mentioned in the Complaints, and the scant allegations that actually

5   pertain to Samtel do not amount to participation in a price-fixing conspiracy.  Plaintiffs'

6   allegations against Samtel can be reduced to a few paragraphs in the DPC and IPC which purport

7   to recite vague, peripheral activity that took place outside of the United States.[2]  These are the

8   very types of allegations of which the Supreme Court disapproved in *Bell Atlantic Corp. v.*

9   *Twombly*, 550 U.S. 544, 550 (2007).

10   Taken as a whole, the DPC and IPC do not satisfy *Twombly*, which directs trial courts to

11   serve as gatekeepers to relieve defendants of the enormous burdens and expense of discovery

12   when they are named improvidently in massive antitrust cases.  Plaintiffs' failure to satisfy

13   *Twombly* provides an independent ground on which Samtel should be independently dismissed

14   with prejudice from this litigation under Rule 12(b)(6).

15   **III.   FACTUAL BACKGROUND**

16   **A.   The Alleged Product Markets**

17   The DPC and IPC allege a conspiracy to fix prices and reduce output for so-called "CRT

18   Products."  DPC ¶ 1; IPC ¶ 1.  The Plaintiffs' define "CRT Products" as a product market that is

19   extraordinarily far-reaching, and includes at least four different categories of products: (1) color

20   display tubes ("CDTs") which are internal cathode ray tubes used in computer monitors; (2) color

21   picture tubes ("CPTs") which are internal cathode ray tubes used in color televisions; (3) finished

22   products containing CDTs (*e.g.*, computer monitors); and (4) finished products containing CPTs

23   (*e.g.*, color televisions).  *See* DPC ¶ 1; IPC ¶¶ 1, 15.

24   Plaintiffs characterize CRTs as a generic category that encompasses both CDTs and CPTs.

25   DPC ¶ 103; IPC ¶ 14.  The DPC, however, also states that CDTs and CPTs are not reasonably

26

27   [2]  Furthermore, the IPC ironically alleges that Samtel participated in a conspiracy to raise prices

28   and reduce output for CRTs when its very customers were the members of the alleged cartel.

[PROPOSED] ORDER GRANTING          - 3 -          (3:07-CV-5944 SC; MDL NO. 1917)
SAMTEL'S MOTION TO DISMISS

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

1   interchangeable. DPC ¶ 103. These are clearly distinct from the finished products that Plaintiffs

2   attempt to sweep into their Complaints, and extend far beyond any government investigation into

3   CDTs and CPTs.

4       The Complaints contain few allegations concerning Samtel, but do allege that Samtel

5   produces "CRT Products." *See* DPC ¶ 68, IPC ¶ 105. Plaintiffs' characterization of Samtel's

6   operations is, however, incorrect.

7       Samtel manufactures and sells only one category of products included in Plaintiffs'

8   expansive definition of "CRT Products." *See* DPC ¶ 1, IPC ¶¶ 1, 13-15. Samtel's operations are

9   limited to cathode ray tubes for color televisions (*i.e.*, CPTs), as well as certain inputs for CPTs,

10  including deflection yokes and electron guns. Samtel does not manufacture cathode ray tubes for

11  computer monitors (*i.e.*, CDTs) or finished products that incorporate CPTs or CDTs. As a result,

12  this motion refers to CPTs when it refers to Samtel's operations because this is the only product

13  manufactured or sold by Samtel that is included within the product scope of this litigation.

14      **B.    Samtel Has No Operations In The United States**

15      The DPC and IPC allege that Samtel manufactured or sold "CRT Products" in the United

16  States during the alleged Class Period. DPC ¶ 68; IPC ¶ 105. This is contradicted by the

17  Declaration of Sunil K. Gupta, filed concurrently herewith.

18      Samtel is an Indian company, formed in 1986 and is organized under the laws of India.

19  Gupta Decl. ¶ 3. Samtel is publicly traded on the Bombay Stock Exchange (SMTL:BSE). *Id.*

20  Samtel is part of the Samtel Group, but it has its own distinct facilities, Board of Directors,

21  management and employees. Gupta Decl. ¶ 4. Samtel's Corporate Office is located in New

22  Delhi, India, and it has manufacturing facilities in Ghaziabad, India and Parwanoo, India. *See*

23  Gupta Decl. ¶¶ 3, 5.

24      Samtel manufactures CPTs and certain inputs for CPTs (deflection yokes and electron

25  guns). *See* Gupta Decl. ¶ 5. It sells its CPTs to customers (primarily television manufacturers)

26  located in India, and exports CPTs primarily to television manufacturers located elsewhere in

27  Asia. *Id.* On two occasions in 1996 and 1997 (but not during the period in which Samtel

28  purportedly engaged in illegal conduct), Samtel made sales in India to a single global customer

[PROPOSED] ORDER GRANTING
SAMTEL'S MOTION TO DISMISS                    - 4 -                    (3:07-CV-5944 SC; MDL NO. 1917)

McDermott Will & Emery LLP
Attorneys at Law
Palo Alto

1  that manufactures and distributes display screens worldwide.[3]  These two sales, which were made

2  subject to Indian law, resulted in the export of a discrete amount of CPTs from India to the United

3  States.  *See* Gupta Decl. ¶ 6.[4]  Apart from these two isolated export sales requested by a customer

4  with global operations, Samtel has not directly or indirectly sold, marketed, or manufactured

5  CPTs in the United States and has not sought to do business in the United States.  *See* Gupta

6  Decl. ¶¶ 6, 13.

7          More broadly, Samtel has no significant connection to the United States.  It is not

8  registered as a foreign corporation to do business in the United States.  It has no property,

9  personnel, operations, activities, real estate, assets, interests, bank accounts, address, registered

10  agents, representatives, or even a phone number.  *See* Gupta Decl. ¶¶ 7-12.  All of its documents

11  and records are located outside of the United States.  *Id.* at ¶ 9.  Samtel has never before been a

12  party to litigation in the United States.  The DPC and IPC allege that Samtel formed a joint

13  venture with non-Defendant Corning to manufacture picture tube glass.  DPC ¶ 119; IPC ¶ 128(j).

14  Samtel, however, was not part of this joint venture.  *See* Gupta Decl. ¶ 14.  The joint venture was

15  formed in 1989 in India by Samtel Group (and its subsidiary Samcor)--both distinct entities from

16  Samtel.  The joint venture is now known as Samtel Glass, and is located in Kota, Rajasthan,

17  India.  *See* Gupta Decl. ¶ 14.  Samtel Glass' operations, which are in India, are limited to the

18  manufacture of picture tube glass, a product which is outside the scope of this litigation.  *Id.*

19  Samtel Glass is a distinct entity with its own facilities and management, and Samtel has no

20  involvement with it.  *Id.*

21

22

23  [3]  The customer at issue is not among the multitude of named plaintiffs in this case nor could it be
    part of this class because unlike the existing members of the plaintiff class, this company is a

24  manufacturer and distributor of CRT products, not a purchaser of these products.  *See* Gupta

25  Decl. ¶ 6.

    [4]  In 2001, Samtel also provided two (2) sample CPTs to an entity located in the United States, at

26  that entity's request and at no charge.  Samtel supplied these CPTs because Samtel acquired
    certain equipment from this entity and the two CPTs were shipped to ensure the equipment

27  worked before it was sent to Samtel in India.  This did not result in any ongoing business
    relationship, or any obligations.  *See* Gupta Decl. ¶ 6.

28

[PROPOSED] ORDER GRANTING                    - 5 -                    (3:07-CV-5944 SC; MDL NO. 1917)
SAMTEL'S MOTION TO DISMISS

1    IV.    **LEGAL ARGUMENT**

2         A.    **This Court Lacks Personal Jurisdiction Over Samtel**

3         Determining whether personal jurisdiction exists over an out-of-forum defendant involves

4    two inquires: whether the exercise of jurisdiction would satisfy the requirements of the applicable

5    state long-arm statute; and whether the assertion of jurisdiction would violate due process. *Dow*

6    *Chem. Co. v. Calderon*, 422 F.3d 827, 830-31 (9th Cir. 2005) (quoting *Chan v. Soc'y Expeditions,*

7    *Inc.*, 39 F.3d 1398, 1404-05 (9th Cir. 1994)).  In California, this two-prong analysis collapses into

8    a single test because California's long-arm statute authorizes California courts to exercise

9    personal jurisdiction over non-residents to the fullest extent allowed under the Constitution of the

10   United States. *See* Cal. Civ. Proc. Code § 410.10;  *Dow Chem. Co.*, 422 F.3d at 830-31 ("Thus,

11   the governing standard here would be whether exercise of personal jurisdiction comports with due

12   process."); *see also In re DRAM Antitrust Litig.*, No. 02-1486, 2005 U.S. Dist. LEXIS 30299, *8

13   (N.D. Cal. Nov. 7, 2005).

14        The Supreme Court has consistently held that the touchstone for exercising personal

15   jurisdiction is whether the defendant has "purposefully availed" itself of the pertinent forum,

16   which "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,'

17   'fortuitous', or 'attenuated' contacts." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 482

18   (1985).  The Supreme Court has warned that courts should take particular caution in exercising

19   personal jurisdiction over a foreign defendant, and that the "unique burdens placed upon one who

20   must defend oneself in a foreign legal system should have significant weight." *Asahi Metal*

21   *Indus. Co. v. Super Ct. of Cal.*, 480 U.S. 102, 114 (1987).  Thus, constitutional due process is

22   satisfied only when a non-resident has "certain minimum contacts with [the forum] such that the

23   maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"

24   *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *World-Wide Volkswagen Corp. v.*

25   *Woodson*, 444 U.S. 286, 291-92 (1980); *Dow Chem. Co.* 422 F.3d at 831.

26        A plaintiff bears the burden of making a prima facie showing of personal jurisdiction.

27   *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).  Personal

28   jurisdiction may be either general or specific. *See Helicopteros Nacionales de Colombia, S.A. v.*

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

1   *Hall,* 466 U.S. 408, 414-15 (1984).  To make a showing of personal jurisdiction, plaintiffs cannot

2   rest on the bare allegations of their complaint:  "mere 'bare bones' assertions of minimum

3   contacts with the forum or legal conclusions unsupported by specific factual allegations will not

4   satisfy a plaintiff's pleading burden."  *See Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir.

5   2007) (citing *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114,

6   1119 (9th Cir. 2002)); s*ee also Amba Marketing System, Inc. v. Jobar Int'l Inc.*, 551 F.2d 784,

7   787 (9th Cir. 1977).  In addition, a court cannot assume the truth of plaintiffs' allegations if they

8   are contradicted by affidavit, as is the case here.  *See Data Disc, Inc. v. Systems Tech. Assoc. Inc.*,

9   557 F.2d 1280, 1284 (9th Cir. 1977).

10        The Complaints fail to allege facts sufficient to support the exercise of personal

11   jurisdiction, whether general or specific, over Samtel.  In contrast, the Declaration of Sunil K.

12   Gupta shows that Samtel lacks the requisite minimum contacts with the United States to be

13   subject to the jurisdiction of this Court.  Accordingly, this Court should dismiss the Complaints

14   with respect to Samtel because it lacks personal jurisdiction over Samtel, as required by

15   Rule 12(b)(2).

16        **1.    Samtel Does not Have Sufficient Contacts with the United States to**

17             **Support General Jurisdiction**

18        General jurisdiction is permitted only when the plaintiff demonstrates that the foreign

19   defendant has "continuous and systematic" contacts with the forum state that are "thought [to be]

20   so substantial and of such a nature as to justify suit against it on causes of action arising form

21   dealings entirely distinct from those activities."  *International Shoe Co. v. Washington*, 326 U.S.

22   310 at 317-18 (1945).  The Complaints, however, do not approach this high standard for

23   exercising general jurisdiction over Samtel.

24        "For general jurisdiction to exist over a non resident defendant, the defendant must engage

25   in continuous and systematic contacts that approximate physical presence in the state."  *Glencore*

26   *Grain*, 284 F.3d 1124 (internal quotation omitted).  The standard for asserting general jurisdiction

27   is exacting.  *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004).

28   In considering whether the defendant's connection with the state is continuous and systematic,

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

1    courts within the Ninth Circuit assess "whether the defendant makes sales, solicits or engages in

2    business in the state, serves the state's markets, designates an agent for service of process, holds a

3    license, or is incorporated there." *Bancroft & Masters, Inc. v. Augusta Nat'l*, 223 F.3d 1082,

4    1086 (9th Cir. 2000). These factors are used to examine the economic reality of a defendant's

5    activities instead of a mechanical checklist. *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1331

6    (9th Cir. 1984).

7           The indisputable facts show that the exercise of general jurisdiction over Samtel, based on

8    its contacts (or lack thereof) with the United States,[5] is wholly inappropriate. Samtel does not

9    manufacture or produce any CPTs (or any other products characterized by Plaintiffs' as "CRT

10   Products") in the United States; has no place of business in the United States; never registered as

11   a foreign corporation to do business in the United States; has no offices, real estate, bank accounts

12   or employees in the United States; and has never advertised in the United States. *See* Gupta Decl.

13   ¶¶ 7-12.[6] Such lack of contacts has previously been found insufficient to support general personal

14   jurisdiction. *See, e.g.*, *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 270 (9th Cir.

15   1995) ("[The] lack of a regular place of business in [the forum] is significant. . . . [The

16   Defendant] has no regular contact of any kind with the [forum]"). In sum, Samtel does not have

17   the "continuous and systematic" contacts with the United States required for general jurisdiction

18   under the due process clause.

19

20   _____

     [5] Personal jurisdiction in multidistrict federal antitrust litigation is assessed on the basis of the

21   defendant's aggregate contacts with any state in which a plaintiff resides. *See In re DRAM
     Antitrust Litig.* 2005 U.S. Dist. LEXIS 30299. Because Samtel lacks contacts with any state,

22   however, Samtel refers to the "United States" instead of the individual forum states.
     [6] On two occasions (in 1996 and 1997) Samtel made two sales of a discrete quantity of CPTs in

23   India which Samtel then exported from India. These exports were directed, at the request of its
     customer (a global manufacturer of displays with United States-based operations) to its United

24   States operations. The quantity of CPTs exported amounted to only approximately 0.01% of
     Samtel's CPT sales in each of 1996 and 1997. *See* Gupta Decl. ¶ 6. Although this discrete

25   quantity was exported to the United States, these are insufficient to confer general jurisdiction.
     The Supreme Court instructed that "mere purchases, even if occurring at regular intervals, are not

26   enough to warrant a State's assertion of in personam jurisdiction over a non-resident corporation
     in a cause of action not related to those purchase transactions. *Helicopteros*, 466 U.S. at 418.

27   This is precisely the case here.

28

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

1    Undeterred, the Direct Purchaser Plaintiffs ("DP Plaintiffs") and Indirect Purchaser

2    Plaintiffs ("IP Plaintiffs") include one paragraph each with the same bare allegation that Samtel

3    manufactured, sold and/or distributed CRT Products in the United States. *See* DP Compl. ¶ 68;

4    IP Compl. ¶ 105. In light of Samtel's lack of contacts with the United States (Gupta Decl. ¶ 5),

5    these allegations cannot be accepted as true. *See Data Disc*, 557 F.2d at 1284. Moreover, such

6    "unsubstantiated and vague statement[s] do[] not establish a prima facie case for jurisdiction."

7    *Holland Am. Line, Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 458 (9th Cir. 2007). The IP

8    Plaintiffs attempt to argue that Samtel somehow sold CRTs in the United States through

9    "customers." *See* IPC ¶ 105. The IPC later alleges that Samtel's customers include other

10   Defendants in this litigation. *See* IPC ¶ 128(k). In effect, the IP Plaintiffs appear to contend that

11   Samtel, by placing its CPTs in the stream of global commerce, can be haled into court in the

12   United States. But this is not the law. The courts in the Ninth Circuit have rejected the notion

13   that a defendant may be subject to general personal jurisdiction before a court merely because it

14   placed its products in the stream of commerce. *See Fischer v. Prof'l Compounding Ctrs. of Am.,*

15   *Inc.*, 318 F. Supp. 2d 1046, 1050 (D. Nev. 2004), *aff'd Fischer v. Alfa Chems. Italiana*, 2007 U.S.

16   App. LEXIS 28694 (9th Cir. Dec. 7, 2007) ("the stream of commerce theory does not apply to a

17   general jurisdiction analysis"); *see also Huffy Corp. v. Overlord Indus.*, 246 F. Supp. 2d 1093,

18   1099 (D. Nev. 2003); *Purdue Research Found. v. Sanofi-Synthelabo S.A.*, 338 F.3d 773, 788 (7th

19   Cir. 2003); *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 216 (5th Cir. 2000). As a

20   result, even if Samtel's products somehow ended up in the United States after Samtel placed them

21   on the stream of commerce, this Court could not exercise general personal jurisdiction over

22   Samtel.

23   Plaintiffs allege only one other "fact" in an apparent attempt to link Samtel's activities to

24   the United States, but it likewise fails. Plaintiffs allege that Samtel has "safety approvals" for its

25   CPTs in a number of countries, including the United States. As reflected in Samtel's Declaration,

26   Samtel obtained necessary approvals to sell CPTs in India through the Indian subsidiary of

27   Underwriter Laboratories, a consultancy aimed at obtaining necessary regulatory approvals. *See*

28   Gupta Decl. ¶ 13. The approvals required for India coincide with approvals required for the

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

1   United States. *Id.* As a result, Samtel has never obtained a "safety approval" specifically for the

2   United States, but rather obtained the approvals necessary do sell CPTs in India. *See Id.* In any

3   event, a "safety approval" in the United States is not relevant to Samtel's business because it did

4   not manufacture its CPTs (or other products) in the United States during the alleged Class Period,

5   and exported only a *de minimis* quantity of CPTs at the request of a global customer on a one-off

6   basis more than a decade ago. *Id.,* ¶¶ 13, 5.[7] Moreover, Samtel is not registered to do business as

7   a foreign corporation in the United States. *Id.,* ¶ 8.

8          The only other alleged link between Samtel and the United States is contained in

9   Plaintiffs' allegation that Samtel and Corning, which is a non-Defendant U.S. company formed a

10  joint venture known as Samcor. *See* DPC ¶ 119; IPC ¶ 128 (j). *See* Gupta Decl. ¶ 14. The joint

11  venture, however, was not formed or controlled by Samtel; it was a joint venture between

12  Corning and Samcor, an entity created by the Samtel Group which is distinct from Samtel. *See*

13  Gupta Decl. ¶ 14. Rather the joint venture, now known as Samtel Glass, is a distinct entity from

14  Samtel, with its own facilities and personnel and day-to-day operations. *Id.* Accordingly, the

15  DPC's and IPC's allegations concerning Samcor offer no support to Plaintiffs claim that Samtel is

16  subject to the jurisdiction of this Court because of its "continuous and systematic" contacts.

17  Indeed, Samtel has none.

18         In sum, Samtel has no presence in the United States, owns no property in the United

19  States, has no personnel or operations in the United States, has not advertised or solicited business

20  in the United States, nor has it paid any taxes in the United States. Samtel has no United States

21  address, phone number or bank account, and has no registered agent nor license. Samtel is not

22  registered to do business as a foreign corporation in the United States. For all of these reasons,

23

24  [7] Such *de minimis* exports have been expressly found insufficient to support the exercise of
    general jurisdiction. *See, e.g., Kendall v. Countrywide Mechanical Servs.*, No. 04-3466, 2005

25  U.S. Dist. LEXIS 1817 *10 (E.D. Pa. Feb. 8, 2005) (concluding that five sporadic in forum sales
    representing less than 1% of defendant's annual sales failed to sustain general jurisdiction); *In re*

26  *Chocolate Confectionary Antitrust Litig.*, 602 F.2d 538 **88-90 (M.D. Pa. 2009) (a Canadian
    defendant that sold C$500,000 worth of chocolate into the United States was not subject general

27  personal jurisdiction).

28

1   Plaintiffs have failed to meet their burden of establishing that the Court has general personal

2   jurisdiction over Samtel.

3           **2.**      **Samtel Does not Have Sufficient Contacts with the United States to**

4                   **Support Specific Jurisdiction**

5         Having failed to establish that Samtel has "continuous and systematic" ties with the

6   United States sufficient to establish general jurisdiction over Samtel, Plaintiffs likewise fail to

7   establish that the Court should exercise specific jurisdiction over Samtel.  Specific jurisdiction

8   exists when the defendant has purposefully directed its activities at residents of the forum and the

9   litigation results from alleged injuries that "arise out of or relate to" those activities.  *Burger King*

10  *v. Rudzewicz*, 471 U.S. at 472; *Schwarzenegger*, 374 F.3d at 802.

11        In the Ninth Circuit, specific jurisdiction is analyzed under a three-prong test, which

12  analyzes:  (1) whether the defendant purposefully availed itself of the privileges of conducting

13  activities within the forum state; (2) whether the underlying claims arise out of or result from the

14  defendant's forum-related conduct; and (3) whether the exercise of personal jurisdiction would be

15  reasonable.  *See In re DRAM Antitrust Litig.*, 2005 U.S. Dist. LEXIS 30299 (N.D. Cal. Nov. 17,

16  2005) (citing *Glencore Grain* 284 F.3d at 1123).  The Complaints fail to establish any of these

17  three factors.

18          **a.**      **Samtel has not purposefully availed itself of the privileges of**

19                  **conducting activities in the United States**

20        Specific jurisdiction permits the exercise of personal jurisdiction over non-resident

21  defendants only if the defendant has purposefully availed itself of the privileges of conducting

22  activities in the forum.  *See Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarian Co.*, 284

23  F.3d 1114, 1123 (9th Cir. 2002).  The Ninth Circuit explained that "whether dealing with specific

24  or general jurisdiction, the touchstone remains 'purposeful availment.'  By requiring that

25  'contacts proximately result from actions by the defendant *himself* that create a 'substantial

26  connection with the forum state,' the Constitution ensures that 'a defendant will not be haled into

27  a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Id.* (emphasis

28  in original) (citing *Burger King*, 471 U.S. 462 (1985).  The goal of the purposeful availment

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

1   requirement is to give the corporation "clear notice that it is subject to suit [in the forum state]" so

2   that it "can act to alleviate the risk of burdensome litigation by procuring insurance, passing the

3   expected costs on to customers, or, if the risks are too great, severing its connection to the state.

4   *WorldWide Volkswagen*, 444 U.S. at 297.

5       Plaintiffs, however, have not alleged that Samtel "performed [any] type of affirmative

6   conduct which allows or promotes the transaction of business within the forum state[s]," or the

7   United States as a whole. *See Doe v. Unocal Corp.,* 248 F.3d 915, 924 (9th Cir. 2001). As

8   Samtel's sworn testimony indicates, Samtel has not concluded sales in the United States, and it

9   has only exported a small quantity CPTs from India on two occasions--more than 12 years ago--to

10  a single global customer's (a manufacturer and distributor of finished CDT and CPT Products)

11  United States operations at the customer's request. *See* Gupta Decl. ¶ 6. These were not part of

12  an ongoing relationship, and did not give rise to any continuing relationship with this

13  customer--or indeed any other entity in the United States. *Id.* Such isolated actions performed at

14  the unilateral request of a global customer cannot mean that Plaintiffs can now hale Samtel into

15  court in the United States. *See, e.g.,* 16-108 MOORE'S FEDERAL PRACTICE § 108.42 (citing *Shute*

16  *v. Carnival Cruise Lines*, 897 F.2d 377, 381 (9th Cir. 1990), *rev'd on other grounds*, 499 U.S.

17  585 (1991)).

18      In the absence of clear contacts with forum state (or, here, the United States), the Ninth

19  Circuit will not exercise specific jurisdiction unless a plaintiff can show that a defendant

20  (1) committed an intentional act; (2) expressly aimed at the forum state(s); and (3) causing harm

21  in the forum state that the defendant knew would likely occur. The requirements of this "effects"

22  test are met when the defendant is alleged to have engaged in wrongful conduct targeted at a

23  plaintiff whom the defendant knows to be a resident of the forum state. *See In re DRAM Antitrust*

24  *Litig.*, No. 02-1486, 2005 U.S. Dist. LEXIS 30299, ** 18-19 (N.D. Cal. Nov. 7, 2005) (citing

25  *Calder v. Jones*, 465 U.S. 783 (1984); *Bancroft & Masters, Inc.*, *v. Augusta Nat. Inc.*, 223 F.3d

26  1082, 1087) (9th Cir. 2000)). Plaintiffs have not met their burden to show that Samtel

27  purposefully availed itself of any forum in the United States. As described above, Samtel

28  controls no entity operating in the United States, and has never manufactured CPTs in the United

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

1  States nor conducted regular and ongoing sales of CPTs in the United States having made only *de*

2  *minimis* exports on two occasions to a single global customer's United States operations more

3  than a decade ago.  *See* Gupta Decl. ¶¶ 6-12.  Lacking any substantial connection to the United

4  States, Plaintiffs also have failed to make uncontroverted allegations that Samtel's alleged foreign

5  conduct was aimed at any of the states in which the Plaintiffs reside, or anywhere in the United

6  States generally, which is required in the Ninth Circuit.  *See In re DRAM Antitrust Litig.*, 2005

7  U.S. Dist. LEXIS ** 16-28; *see also, e.g.*, *Adidas America, Inc. v. Kmart Corp.*, No. CV-05-120,

8  2006 U.S. Dist. LEXIS 70413 *15 (D. Or. 2006) (refusing to exercise personal jurisdiction where

9  a seller was told that its products were destined for California and South Carolina, but ultimately

10  lacked control over what its buyer did with the products); *Cybersell, Inc. v. Cybersell, Inc.* 130

11  F.3d 414, 419-20 (9th Cir. 1997).

12         At best, the IPC Plaintiffs allege that Samtel sold CPTs to foreign manufacturers that are

13  also named Defendants in this case.  *See* IP Compl. ¶ 127(k).  Perhaps this bare allegation is

14  supposed to infer that Samtel introduced its CPTs into the "stream of commerce."  Both the

15  Supreme Court and the Ninth Circuit are clear, however, that merely introducing a product into

16  the stream of commerce is insufficient to show that a defendant "purposefully availed" itself of

17  the privileges of doing business in the United States.  *See Asahi*, 480 U.S. at 112-13.  Rather, a

18  defendant must at least have actual knowledge that a given product would reach a forum state(s).

19  *See Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 560-61 (9th Cir. 1995); *see also DRAM*

20  *Antitrust Litig.* 2005 U.S. Dist. LEXIS 30299 ** 20-21.  Plaintiffs make no such allegation in this

21  case.

22         Moreover, Courts have declined to exercise specific personal jurisdiction over defendants

23  that had *de minimis* sales or other contacts United States because these isolated occurrences and

24  did not result in continuous, ongoing or otherwise substantial contacts with the United States.  For

25  example, the Ninth Circuit affirmed that personal jurisdiction could not be exercised over an

26  Indian company, even though it had, among other things, made seven individual shipments of rice

27  in the United States.  *See Glencore Grain*, 284 F.3d at 1123 (quoting *Burger King Corp. v.*

28  *Rudzewicz*, 471 U.S. at 475).  More recently, the Ninth Circuit again ruled that personal

[PROPOSED] ORDER GRANTING                    - 13 -                    (3:07-CV-5944 SC; MDL NO. 1917)
SAMTEL'S MOTION TO DISMISS

McDermott Will & Emery LLP
Attorneys At Law
Palo Alto

1    jurisdiction could not be exercised when a defendant's contacts with a forum do not create

2    continuing obligations and are essentially a "one-shot affair." *See Boschetto v. Hansing*, 539 F.3d

3    1011, 1017 (9th Cir. 2008) (quoting *Compuserve, Inc. v. Patterson*, 89 F.3d 1257, 1265 (6th Cir.

4    1997). In another case, the Ninth Circuit refused to permit the exercise of jurisdiction over a

5    Finnish company, or its Finnish parent, even though they had engaged in marketing activities in

6    the United States. *See Holland Am. Line, Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 462 (9th

7    Cir. 2007). In that case, the Ninth Circuit ruled that the fact that defendant made a presentation at

8    a leadership forum for its industry in the United States and sponsored a reception were "isolated

9    incident[s] [that] do[] not support [personal jurisdiction]." *Id.* (citing *Glencore Grain*, 284 F.3d at

10   1123).[8]

11          These cases compel the conclusion that Samtel has never purposely availed itself of the

12   privilege of doing business anywhere in the United States, or committed acts intended to effect

13   any jurisdiction in the United States. Moreover, taken as a whole, and read in light of the

14   Declaration of Sunil K. Gupta, the Complaints are devoid of a single uncontroverted allegation

15   Samtel's alleged contacts vis-à-vis the United States and, therefore, cannot show that Samtel

16   intentionally aimed the allegedly illegal conduct at the United States, knowing that harm would

17   occur. *See, e.g., In re DRAM Antitrust Litig.* 2005 U.S. Dist. LEXIS 30299 ** 18-20. Plaintiffs

18   have offered no evidence to support their bare allegations--as they cannot--which leads to the

19   unavoidable conclusion that neither the DP Plaintiffs nor the IP Plaintiffs have met their burden

20   of establishing that Samtel aimed its conduct at the United States.[9]

21   _____

22   [8] Courts in other circuits have reached similar holdings. *See, e.g., See Patent Incentives, Inc. v.
     Seiko Epson Corp.*, No. 88-1407, (1988 U.S. Dist. LEXIS 9933), at *1, *5 (D.N.J. Sept. 6, 2008)

23   (declining to exercise personal jurisdiction over a foreign company that sold computers outside of
     the United States and exported them to its United States subsidiary, which then distributed the

24   computers in the United States.); *see also In re Chocolate Confectionary Antitrust Litig.* 602 F.2d
     538 ** 88-90 (M.D. Pa. 2009) (finding plaintiffs had not established personal jurisdiction over a

25   Canadian company that sold C$500,000 into the United States); *Kendall v. Countrywide
     Mechanical Servs.*, 04-3466, 2005 U.S. Dist LEXIS 1817 *10 (finding that five sporadic contacts

26   did not confer personal jurisdiction); *BP Chems. Ltd. v. Formosa Chem. & Fibre Corp.*, 229 F.3d
     254, 259 (3d Cir. 2000).

27   [9] Moreover, Plaintiffs are not entitled to jurisdictional discovery as a matter of course. "Where a

28   plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare

     *(Footnote continued)*

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

1

**b.      This litigation is not related to nor does it arise out of any**

2

**Samtel activity in the United States**

3      Although Plaintiffs' failure to show that Samtel "purposefully availed" itself of the

4   privilege of doing business in any of the forum jurisdictions, Plaintiffs have also failed show that

5   the litigation arises from Samtel's activity in the United States.

6      Because the Foreign Trade Antitrust Improvement Act specifically excludes from the

7   reach of the Sherman Act alleged anticompetitive conduct involving exclusively foreign

8   commerce and injury (*see* Joint Motion to Dismiss the DP-CAC and Joint Motion to Dismiss the

9   IP-CAC), this Court can only exercise specific jurisdiction over Samtel if Samtel's contacts give

10  rise to Plaintiffs' cause of action.  Only those contacts that are "related to plaintiff's cause of

11  action" are "relevant to this analysis."  *Burger King*, 471 U.S. at 472 (court only has specific

12  jurisdiction if plaintiff's cause of action results from "alleged injuries that 'arise out of or relate

13  to' those activities" aimed at forum state); *Terracom*, 49 F.3d at 561 (specific jurisdiction requires

14  showing that "'but for' the contacts between the defendant and the forum state, the cause of

15  action would not have arisen.").  Here, the two *de minimis* sales Samtel had into the United States

16  occurred prior to the period in which Samtel was part of the alleged conspiracy and were made to

17  a purchaser that is not a plaintiff of either class, nor could it be because unlike the other class

18  members, it is a manufacturer--not a purchaser--of finished CRT products.  Moreover, these

19  products were limited to CPTs, while Plaintiffs causes of action appear to arise from the purchase

20  of finished CRT products.  Therefore, the Plaintiffs' alleged injuries could not have arisen from

21  Samtel's activities, as is required by the Ninth Circuit.

22

23  allegations in the face of specific denials made by defendants, the Court need not permit even
    limited discovery." *Terracom v. Valley Nat'l Bank*, 49 F.3d 555,  562 (9th Cir.  1995) (citation

24  omitted); *see also Lovesy v. Armed Forces Benefit Ass'n*, 2008 U.S. Dist. LEXIS 93479, *40
    (N.D. Cal. March 13, 2008).  *Lovesy* made clear that to obtain jurisdictional discovery, the

25  plaintiffs "must at least... come forward with 'some evidence' tending to establish personal

26  jurisdiction over the defendant." *Lovesy,* 2008 U.S. Dist. LEXIS at *40 (internal citation
    omitted).  Plaintiffs' bare and conclusory allegations concerning Samtel do not approach this

27  required showing.  Any request by Plaintiffs for jurisdictional discovery should be denied on this
    basis alone.

28

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

1     The Complaints allege that Samtel manufactured, sold and distributed "CRT Products" in

2   or into the United States.  Samtel, however, only makes CPTs--not the broad range of products

3   Plaintiffs sweepingly characterize as "CRT Products."  *See* Gupta Decl. ¶ 5.  Samtel also has

4   never manufactured CPTs (or any other product in the United States.)  *Id.* ¶ 5.  And Samtel has

5   made almost no sales of CPTs into the United States.  *Id.* ¶¶ 5-6.  Rather, on two occasions

6   Samtel concluded sales in India for *de minimis* quantities of CPTs to be exported to the United

7   States operations of a global manufacturer of displays--at its customer's request.  *Id.* ¶ 6.

8   Moreover, these sales occurred more than 12 years ago (in 1996 and 1997) (*Id.* ¶ 6)--well outside

9   the period of time in which Samtel purportedly engaged in illegal activity.  *See* DPC ¶ 186; IPC

10  ¶ 186.  Since these sales occurred outside the time Samtel was allegedly involved in the purported

11  cartel, Samtel's conduct cannot give rise to the current litigation.

12     Failing to establish that Samtel's conduct in the United States gave rise to the current

13  litigation, the Complaints allege that Samtel met a *Thai* company in *Malaysia* and that this

14  somehow gave rise to the current litigation.  The Complaints, however, lack a single allegation

15  that these alleged discussions led to any agreement in which Samtel agreed to fix prices in the

16  United States.  This is likely because no such allegations can be made given that Samtel had no

17  activity in the United States in the time period Plaintiffs allege.[10]  Not only does Samtel lack

18  contacts with the United States (*See* Gupta Decl. ¶¶ 5, 7-12), there is no allegation that Samtel

19  was involved in any alleged conspiracy aimed at the United States.  *See, also Glencore Grain*,

20  284 F.3d at 1123 (stating that a claim cannot arise out of, or relate to, non-existent contacts with

21  the forum state(s)).  In an analogous case, the U.S. District Court for the Northern District of

22  California court granted several foreign defendants' motions to dismiss in part because they had

23  never manufactured Dynamic Random Access Memory ("DRAM") products in the United States,

24  concluded sales for DRAMs in the United States, or derived substantial revenues in the applicable

25  United States forums.  *See In re DRAM Antitrust Litig.*  2005 U.S. Dist. LEXIS 30299 ** 19-20.

26

27  ───────────────
    [10]  As mentioned above, in 2001 Samtel permitted an entity in the United States to have two of its
28  sample CPTs at no charge.  *See* Gupta Decl. ¶ 6.

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

1

2

**c.    Exercising personal jurisdiction over Samtel would offend "traditional notions of fair play and substantial justice"**

3    Even if a defendant has purposefully established minimum contacts with the

4    forum--which Samtel submits is not the case here--the Court must still consider whether the

5    assertion of jurisdiction would be consistent with fair play and substantial justice. *See In re*

6    *DRAM Antitrust Litig.* 2005 U.S. Dist. LEXIS 30299 ** 26-27 (citing *CE Distribution, LLC v.*

7    *New Sensor Corp.,* 380 F.3d 1107, 1112 (9th Cir. 2004*)* (setting forth factors to be considered in

8    assessing reasonableness)).  Bringing Samtel, an Indian company with no link to the United

9    States, into court would fundamentally offend this concept of reasonableness.

10    When determining whether the exercise of jurisdiction is reasonable, courts in the Ninth

11    Circuit consider seven factors:  (1) the extent of a defendants' purposeful interjection into the

12    forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of

13    conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating

14    the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the

15    forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an

16    alternative forum.  *CE Distrib. LLC v. New Sensor Corp.*, 380 F.3d 1107 (9th Cir. 2004).  "Where

17    . . . the defendant is from a foreign nation rather than another state, the sovereignty barrier is high

18    and undermines the reasonableness of personal jurisdiction." *Amoco Egypt Oil v. Leonis*

19    *Navigation Co.*, 1 F.3d 848, 852 (9th Cir. 1993) (citing *Pacific Atl. Trading Co. v. M/V Main*

20    *Express*, 758 F.2d 1325, 1330 (9th Cir. 1985).  This echoes the Supreme Court's admonition that

21    "great care and reserve should be exercised when extending our notions of personal jurisdiction

22    into the international field." *Asahi*, 480 U.S. at 115; *see also Amoco Egypt Oil v. Leonis*

23    *Navigation Co.*, 1 F.3d 848, 852 (9th Cir. 1993).

24    Here, Plaintiffs seek to bring into a Unites States court an Indian CPT manufacturer, with

25    no United States presence or operations, whose only link to the United States are two export

26    shipments to a single customer more than 12 years ago, to defend itself against Plaintiffs'

27    allegations of a conspiracy to fix prices at which "CRT Products" were sold in the United States.

28    Samtel will face unique challenges in defending itself given language differences, the lack of any

[PROPOSED] ORDER GRANTING
SAMTEL'S MOTION TO DISMISS

- 17 -

(3:07-CV-5944 SC; MDL NO. 1917)

1  presence in the United States, and because all potential evidence and witnesses are half a world

2  away. *Amoco Egypt Oil*, 1 F.3d at 852.

3       In *In re DRAM Antitrust Litigation,* the court concluded that a full reasonability analysis

4  was unnecessary because (as in this case) plaintiffs' failed to establish minimum contacts with the

5  forum states.  2005 U.S. Dist. LEXIS 30299 at ** 26-27.  Nevertheless, the court continued that

6  even under a full analysis, the exercise of personal jurisdiction would be unreasonable, given the

7  lack of defendants' contacts, the unique hardships foreign defendants face in defending

8  themselves in the United States, and the fact that other defendants will remain in the litigation

9  even if the foreign defendants were dismissed. *See id.*

10       Similar to *DRAM*,  Plaintiffs in this case have failed to establish that this Court has

11  personal jurisdiction over Samtel.  Samtel does not have any contacts with the United States--let

12  alone continuous and systematic ones--and has not purposefully availed itself of the privilege of

13  doing business in the United States.  Samtel is an Indian company that does not manufacture,

14  solicit, advertise or sell "CRT Products" in the United States.  To force Samtel to defend itself on

15  the other side of the world is unfair and unreasonable and would contradict the Supreme Court's

16  express warning in *Asahi*, as echoed by the Ninth Circuit. *See Asahi*, 480 U.S. 102.  For this

17  independent reason alone, Samtel should be dismissed from this litigation with prejudice.

18      **B.**    **Plaintiffs Failed To State A Claim Against Samtel For Which Relief Can Be**

19          **Granted**

20       Even if this Court has personal jurisdiction over Samtel, which Samtel submits it does not,

21  the DPC and IPC should be dismissed for the independent reason that they fail to state a claim

22  under Rule 12(b)(6).  Despite their length and verbiage, the Complaints fail to allege an

23  actionable conspiracy to fix CPT prices or limit CPT output that is plausible within the meaning

24  of *Twombly*.[11]

25

26

_____

27  [11] The Joint Motion to Dismiss the DP-CAC and Joint Motion to Dismiss the IP-CAC set forth
the legal standard under *Twombly* and are incorporated by reference herein.

28

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

1    In order to survive a motion to dismiss, a plaintiff must allege facts that are sufficient to

2  raise his/her right to relief "above the speculative level." *See Twombly*, 550 U.S. at 555. It is "a

3  plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' [which] requires more

4  than labels and conclusions, and a formulaic recitation of the elements of a cause of action will

5  not do." *Id.* In short, a plaintiff must allege "enough facts to state a claim to relief that is

6  plausible on its face," not just conceivable. *Id.* at 570; *see also Sun Microsystems v. Hynix*,

7  No. C-06-1665 2009 U.S. Dist. LEXIS 27567 ** 23-24 (N.D. Cal. Mar. 31, 2009). The Supreme

8  Court explained the reason for this standard, observing that a "defendant seeking to respond to

9  plaintiffs' conclusory allegations in the § 1 context would have little idea where to begin" and

10  would face "the potentially enormous expense of discovery." *Twombly* at 551; *Ashcroft v. Iqbal*,

11  556 U.S. at ____ (slip op., at 14) ("Rule 8... does not unlock the doors of discovery for a plaintiff

12  armed with nothing more than conclusions"); *see also Kendall v. Visa U.S.A., Inc.*, 518 F.3d

13  1042, 1047 (9th Cir. 2008).

14    In *Twombly*, the Court reviewed an overbroad antitrust claim, and acknowledged the

15  likelihood of abuse that can result in overbroad antitrust claims. *Twombly* at 559 ("[I]t is one

16  thing to be cautious before dismissing an antitrust complaint in advance of discovery, but quite

17  another to forget that proceeding to antitrust discovery can be expensive. . . [A] district court

18  must retain the power to insist upon some specificity in pleading before allowing a potentially

19  massive factual controversy to proceed."); *see also Ashcroft v. Iqbal*, 556 U.S. at ____ (slip op. at

20  15) ("While legal conclusions can provide the framework of a complaint, they must be supported

21  by factual allegations."); *Kendall*, 518 F.3d at 1047 ("[D]iscovery in antitrust cases frequently

22  causes substantial expenditures and gives the plaintiff the opportunity to extort large settlements

23  even where he does not have much of a case.").

24    The admonitions of *Twombly* apply with special force in this case. Here, Plaintiffs seek to

25  represent exceptionally broad putative class and implicate dozens of U.S. and foreign companies

26  without regard to whether the foreign entities actually supplied "CRT Products" to the United

27  States. The costs of discovery would be astronomical in this case, particularly if Plaintiffs are

28  given free reign to insist on discovery from all corners of the world in the hope that they can

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

1  justify their over-broad, non-specific claims of conspiracy from entities that were never active in

2  the United States or never produced the products swept into their broad definition of "CRT

3  Products."

4          In this case, Plaintiffs allege that Samtel is among over 40 distinct entities that conspired

5  to fix worldwide "CRT Product" prices from "at least as early as March 1, 1995 until

6  November 25, 2007." DPC ¶ 1; IPC ¶ 1.  That supposed conspiracy is described in the

7  Complaints' collective 161 pages and 513 allegations.  Yet, out of 513 paragraphs, only 10

8  paragraphs include Samtel's name;[12] and only 1 paragraph in the DPC and 4 paragraphs in the

9  IPC purport to explain what Samtel supposedly did.  *See* DPC ¶ 168; IPC ¶¶ 164-165; 186-187.

10 Closely examined, these paragraphs fail to sufficiently state any plausible claim that Samtel

11 engaged in a conspiracy to increase CPT prices or reduce output.  As such, Plaintiffs have failed

12 to meet the standard set forth in *Twombly* for all defendants (*see* Defendants Motion to Dismiss

13 the DC-CAC and Defendants Motion to Dismiss the IP-CAC), and in particular for Samtel.  Since

14 the claims against Samtel in the DPC and IPC vary, each will be addressed separately.

15              **1.      The DPC Fails to State a Claim Against Samtel**

16         The DPC identifies Samtel in only three paragraphs (out of 222 paragraphs).  The first

17 reference, in paragraph 68, identifies Samtel as a defendant and makes allegations that Samtel

18 manufactured or sold "CRT Products" in the United States--an allegation directly refuted by

19 Samtel through the declaration of Sunil Gupta.  The second reference comes in paragraph 119,

20 with a gratuitous reference to Samtel's alleged joint venture with Samsung and non-defendant

21 Corning to make picture tube glass.  This allegation--taken as true--is irrelevant because Samcor

22 is not a party to this litigation, operates in India, and produces a product which is not at issue in

23 this case.  (Moreover, while not necessary to decide this Motion to Dismiss on 12(b)(6) grounds,

24 Samtel was not actually a party to this alleged joint venture.  *See* Gupta Decl. ¶ 14.)

25         Finally, paragraph 168 of the DPC purports to allege Samtel's role in the alleged

26 conspiracy:  "Samtel participated in multiple illegal bilateral meetings between 1998 and 2006 in

27 _____

28 [12] *See* DPC ¶¶ 69, 119, 168;  IPC ¶¶ 2, 105, 128(j), 128(k);  164-165; 186-187.

[PROPOSED] ORDER GRANTING                        - 20 -              (3:07-CV-5944 SC; MDL NO. 1917)
SAMTEL'S MOTION TO DISMISS

1   which unlawful agreements as to, *inter alia*, price, output restrictions, and customer and market

2   allocation of CPT Products occurred.  Those meetings occurred in Malaysia.  Samtel never

3   effectively withdrew from this conspiracy."

4   This allegation forms the core of the DP Plaintiffs' case against Samtel, and, taken as true, falls

5   far short of the threshold established by *Twombly* to state a claim for several reasons.

6       First, the Complaints are unduly vague and fail to satisfy *Twombly* because of their over-

7   reaching, inconsistent and non-specific allegations concerning "CRT Products."  Plaintiffs

8   contend that they purchased CRTs, yet their allegations indicate that they only purchased *finished*

9   CRT products.  *See* DP-CAC ¶¶ 11-23; IP-CAC ¶¶ 19-49.  At the same time, Plaintiffs do not and

10  cannot allege that inputs such as CDTs and CPTs are "reasonably interchangeable" with finished

11  CRT products such as television sets and computer monitors.  As a matter of common sense, no

12  consumer would view such an input as a reasonable substitute for a television set or a computer

13  monitor.  For this reason, CRT inputs and finished CRT products such as television sets or

14  computer monitors are not substitutable.  Moreover, Plaintiffs do not--and again, cannot--allege

15  cross elasticity of demand between CRT inputs and television sets or computer monitors.  In other

16  words, Plaintiffs cannot logically posit that if the price of a television set or computer monitor

17  increased, consumers would instead purchase CDTs or CPTs.  The blurred lines between inputs

18  and finished products result in an incoherent complaint that fails to give Samtel adequate notice

19  concerning their alleged illegal conduct, which Plaintiffs concede took place exclusively outside

20  the United States.  For this reason alone, Plaintiffs fail to satisfy the *Twombly* standard and their

21  Complaints should be dismissed.

22      Second, Apart from alleging an eight-year period, Plaintiffs do not allege when these

23  meetings took place, with whom Samtel met, who from Samtel attended, or where the meetings

24  occurred--apart from referring to the entire country of Malaysia.  This omits the "who[] did what,

25  to whom (or with whom), where, and when," *Kendall*, 518 F.3d at 1048, which is required to state

26  a claim for conspiracy.

27      Third, the paragraph 168 of the DPC purports to characterize these alleged meetings as a

28  "conspiracy" to reach "agreements as to, *inter alia*, price, output restrictions and customer and

[PROPOSED] ORDER GRANTING
SAMTEL'S MOTION TO DISMISS                    - 21 -                (3:07-CV-5944 SC; MDL NO. 1917)

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

1   market allocation of CPT products." This allegation rings equally hollow and amounts to a legal

2   conclusion that is "not entitled to the presumption of truth." *Ashcroft v. Iqbal*, 556 U.S. at \_\_\_\_

3   (slip op. at 15). This Court "is not required to accept as true conclusory allegations of law or

4   legal conclusions couched as factual allegations" or accept terms such as "conspiracy" or

5   "agreement" as a sufficient basis for a complaint. *See Kendall*, 518 F.3d at 1047, 1050 (citing

6   *Twombly* at 553-56). This is because such "bare allegation[s] of a conspiracy are almost

7   impossible to defend against, particularly where the defendants are large institutions with

8   hundreds of employees entering into contracts and agreements daily." *See Kendall*, 518 F.3d

9   1047 (citing *Twombly* at 556). Because Paragraph 168 does little more than make conclusory

10  allegations of "agreements" and "conspiracy" without alleging virtually any factual evidence, it

11  fails under the standard established by *Twombly*.

12      Fourth, the DPC's core allegation against Samtel <u>does not</u> allege that any alleged

13  "agreement" was aimed at the United States. Absent such an allegation, the DPC's core case

14  against Samtel is reduced to an alleged bilateral meeting, where an "agreement" was reached as

15  part of a "conspiracy" between <u>foreign</u> producers of CPTs, at least one of which has no operations

16  or activities in the United States. *See* Gupta Decl. ¶ 5. Such an allegation, taken as true, is

17  excluded from the Sherman Act's reach by the Foreign Trade Antitrust Improvement Act

18  ("FTAIA").[13]

19      Finally, Paragraph 168 of the DPC is not salvaged by reading it together with the rest of

20  the Complaint. Samtel is only mentioned in three paragraphs of the DPC, and the DPC's repeated

21  references to "Defendants" cannot be imputed to Samtel. In order to state a claim against Samtel,

22  the Plaintiffs must allege facts showing that *Samtel* joined the conspiracy and played some role in

23  it. *See Twombly* at 564 n.10; *Mountain View Pharmacy v. Abbott Labs.*, 630 F. 2d 1383, 1388

24  (9th Cir. 1980) (a "blanket statement [concerning multiple defendants] does not provide adequate

25  notice for responsive pleading"); *In re Sagent Tech., Inc. Derivative Litig.*, 278 F. Supp. 2d 1079,

26  _____

27  [13] In this case, neither the DP nor IP Plaintiffs overcome the FTAIA obstacle with respect to their claims towards Samtel. Samtel incorporates in full the arguments contained in Defendants'

28  Motion to Dismiss DP-CAC and Defendants Motion to Dismiss IP-CAC.

[PROPOSED] ORDER GRANTING          - 22 -          (3:07-CV-5944 SC; MDL NO. 1917)
SAMTEL'S MOTION TO DISMISS

McDermott Will & Emery LLP
Attorneys at Law
Palo Alto

1    1094-95 (N.D. Cal. 2003); *Jung v. Ass'n of Am. Med. Colleges*, 300 F. Supp. 2d 119, 163 (D.D.C.

2    2004); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1111 (N.D. Cal. 2008).

3    In *TFT-LCD*, for example, the court ruled that "the conspiracy must allege each individual

4    defendant joined the conspiracy and played some role in it because at the heart of an antitrust

5    conspiracy is an agreement and a conscious decision by each defendant to join it…. [G]eneral

6    allegations as to all defendants …[are] insufficient to put specific defendants on notice as to the

7    claims against them." 586 F. Supp. 2d at 1111.  As such, the general lumping together of over 40

8    distinct entities as "Defendants" cannot be imputed to Samtel.[14]

9    Moreover, Samtel's absence from all but three paragraphs of the DPC is telling:  Samtel is

10   not identified in DP Plaintiffs' allegations of so-called "Management Meetings," "Working Level

11   Meetings" or "Green Meetings."  *See* DPC ¶¶ 147-153.  Samtel also is absent from the DP

12   Plaintiffs' description of how trade association activities facilitated the conspiracy.  *See* DPC

13   ¶¶ 176-180.  Samtel also is not mentioned in the DPC's discussion of the Department of Justice

14   investigation into the CPTs and CDTs.  *See* DPC ¶¶ 122-133.  Finally, the DP Plaintiffs do not

15   mention Samtel at all in its allegations concerning Defendants' purported reduction in capacity

16   and increases in price.  *See* DPC ¶¶ 181-199.  Taken together, the DP Plaintiffs have failed to

17   state a claim against Samtel, and their Complaint should be dismissed without the opportunity to

18   re-plead.  More than a year after the filing of the first complaint in this case, Plaintiffs should not

19   get another bite at the apple.

20                          **2.    The IPC Fails to State a Claim Against Samtel**

21   The IPC likewise contains few allegations that mention Samtel, and also fails to state a

22   claim; in particular, the IPC contains 7 paragraphs (out of 291) that mention Samtel.[15]  These

23   _____

24   [14] Instead, reading the DPC as a whole reveals its incoherence with regard to Samtel.  The DPC
     first fails to allege that Samtel implemented any conspiracy targeting the United States--as it must

25   because Samtel never actually manufactured any CRTs in the United States and exported only a
     small number purchased by a global customer for its U.S. operations more than a decade ago.

26   Next, the DPC alleges that Samtel's purported "bilateral" meetings with unknown counterparts
     took place between 1998 and 2006 (DPC ¶ 168), yet somehow Samtel is part of a conspiracy

27   extending from 1997 until late 2007.
     [15] *See* IPC ¶¶ 2, 105, 128(j), 128(k), 164-165, 186-187.

28

1   allegations largely follow the pattern of the DPC: allegations concerning Samtel's identity (IPC

2   ¶¶ 105, 128(k)), allegations identifying Samcor as a non-party joint venture, which produces

3   products in India that are not within the scope of this litigation (IPC ¶ 128(j)); and finally alleging

4   that Samtel engaged in bilateral meetings with other "Defendants," in particular Thai CRT, in

5   Malaysia. *See* IPC ¶¶ 164-165; 186-187. *See also* IPC ¶ 2 (observing that certain Defendants

6   "reached out" to a number of companies, including Samtel.)  These allegations, like the DPC

7   allegations, fall well short of the *Twombly* standard.  (*See* § II.A, *supra*).

8          At the outset, the IPC concedes that Samtel did <u>not</u> attend group meetings, such as "Glass

9   Meetings" or "Green Meetings" or other group meetings which form the core of their allegations

10  concerning the alleged cartel. *See* IPC ¶ 164.  Samtel also is omitted from the IPC's discussion of

11  these "group meetings" (IPC ¶¶ 139-158); its allegations concerning international government

12  antitrust investigations (IPC ¶¶ 203-221); and its discussion of alleged "pass-through" of

13  overcharges to consumers (IPC ¶¶ 222-239).

14         The IPC's case against Samtel's thus rests on alleged "bilateral" meetings in Malaysia

15  with Thai CRT and other Defendants. *See* IPC ¶¶ 164-65, 186-87.  In these meetings, Samtel

16  purportedly "agreed" to implement pricing strategies determined by other Defendants. *Id.*  While

17  the IP Plaintiffs identify one party with whom Samtel purportedly met, the IPC falls far short of

18  stating a claim against Samtel.  First, the IPC still fails to sufficiently allege the "who did what, to

19  whom (or with whom), where, and when," (*Kendall*, at 1048) noting only that some meetings

20  allegedly occurred in "Malaysia" with "Thai CRT" (and possibly separately with other

21  "Defendants") at unspecified times during an eight year period (1998-2006).  *See* IPC ¶¶ 164-65,

22  186-87.  These allegations do not indicate how Samtel supposedly joined this alleged cartel, nor

23  how Samtel implemented it.  Moreover, a mere meeting between firms is more rationally and

24  logically explained as legitimate business conduct than with as illegal conspiracy. *See Ashcroft v.*

25  *Iqbal*, 556 U.S. at ____ (slip op. at 16) (describing *Twombly* and parallel conduct).  Accordingly,

26  the IP Plaintiffs fail to satisfy their pleading requirements under *Twombly*, which requires

27  specific, factual allegations against individual defendants. *See Twombly* at 564 n.10.

28

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

1    Moreover, the IPC's allegations of Samtel's involvement in the alleged conspiracy are

2    internally inconsistent with paragraph 128(k) of the IPC, which alleges that Samtel supplies CRTs

3    to LG Electronics, Inc., Samsung, Royal Philips, and Panasonic. *Compare* IPC ¶¶ 164-165, 186-

4    187 *with* IPC ¶ 128(k).  It is implausible that Samtel somehow implemented an agreement to

5    increase CRT prices and reduce output when its very customers are the entities that supposedly

6    were core members of the alleged cartel.  In other words, the IPC suggests that the Defendants

7    somehow conspired with Samtel to raise the CRT prices Samtel charged to these Defendants.

8    This makes no sense and fails to satisfy the plausibility standard established by *Twombly*.

9    Further, a complaint cannot be viewed as well-pleaded where its allegations are internally

10   inconsistent. *See, e.g.*, *Trans World Airlines, Inc. v. Hughes*, 308 F. Supp. 679 (D.C.N.Y. 1969)

11   *rev'd on other grounds*, 409 U.S. 363.  The IPC thus fails to state a claim against Samtel as

12   required by Rule 12(b)(6).

13   **V.**     **CONCLUSION**

14        For all of the reasons stated above, Plaintiffs have failed to meet their burden and establish

15   that this Court has personal jurisdiction over Samtel as required by Rule 12(b)(2).  This alone

16   constitutes grounds to dismiss the DPC and IPC against Samtel, and this Court should do so with

17   prejudice.  Even if this Court has jurisdiction over Samtel, which Samtel submits the Court does

18   not, the DPC and IPC should still be dismissed for the independent ground that they fail to state a

19   claim against Samtel pursuant to Rule 12(b)(6).

20   Dated:  May 18, 2009                    Respectfully submitted,

21                                           McDERMOTT WILL & EMERY LLP

22

23                                    By:    */s/ William Diaz*
                                            William Diaz
24                                          Attorneys for Defendant
                                            SAMTEL COLOR LTD.
25

26

27

28

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

1

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

## CERTIFICATE OF SERVICE

2

3      I, William Diaz, declare that I am over the age of eighteen (18) and not a party to this

4   action.  I am a partner with the law firm of McDermott Will & Emery LLP, 18191 Von Karman,

5   Suite 500, Irvine, CA 92612-7108.

6      On May 18, 2009, I caused a true and correct copy of the foregoing Samtel Color Ltd.'s

7   Notice Of Motion And Motion To Dismiss Direct Purchaser Plaintiffs' Consolidated Amended

8   Complaint And Indirect Purchaser Plaintiffs' Consolidated Amended Complaint to be

9   electronically filed and served via the Official Court Electronic Document Filing System, which

10   served copies on all parties registered for electronic filing in the above-entitled matter.

11

12   Dated:  May 18, 2009                    McDERMOTT WILL & EMERY LLP

13

14                                          By:    */s/ William Diaz*

15                                                 William Diaz

16                                                 Attorneys for Defendant
                                                   SAMTEL COLOR LTD.

17

18

19

20

21

22

23

24

25

26

27

28

[PROPOSED] ORDER GRANTING SAMTEL'S
MOTION TO DISMISS                          1            (3:07-CV-5944 SC; MDL NO. 1917)