GREGORY D. HULL (57367)
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, California 94065-1175
Telephone: (650) 802-3000
Facsimile: (650) 802-3100
Email: greg.hull@weil.com

STEVEN A. REISS (*Admitted Pro Hac Vice*)
DAVID L. YOHAI (*Admitted Pro Hac Vice*)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153-0119
Telephone:   (212) 310-8000
Facsimile:   (212) 310-8007
Email: steven.reiss@weil.com

JEFFREY L. KESSLER (*Admitted Pro Hac Vice*)
A. PAUL VICTOR (*Admitted Pro Hac Vice*)
DEWEY & LEBOEUF LLP
1301 Avenue of the Americas
New York, NY 10019
Telephone: (212) 259-8000
Facsimile: (212) 259-7013
Email: jkessler@dl.com

Attorneys for Defendants Panasonic Corporation of North America, MT Picture Display Co.,
Ltd., and Panasonic Corporation (f/k/a Matsushita Electric Industrial Co., Ltd.)
**[Additional Moving Defendants and Counsel Listed on Signature Pages]**

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION<br><br>This Document Relates to:<br><br>INDIRECT PURCHASER ACTION. | No.:   M-07-5944 SC—MDL NO. 1917<br><br>**DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS INDIRECT PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT**<br><br>**ORAL ARGUMENT REQUESTED**<br><br>Date: August 4, 2009<br>Time: 9:00 a.m.<br>Before: The Honorable Charles A. Legge,<br>U.S. District Judge (Ret.), Special Master |

1

## NOTICE OF MOTION AND MOTION TO DISMISS

2 TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

3        PLEASE TAKE NOTICE that on August 4th, 2009, at 9 a.m., or as soon thereafter as

4 the matter may be heard, at the San Francisco Resolution Center of JAMS, Two Embarcadero

5 Center, Suite 1500, San Francisco, California 94111, before the Special Master, Honorable

6 Charles A. Legge, U.S. District Judge (Ret.), pursuant to the Court's Order Re: Special

7 Master's Duties, so ordered by Honorable Samuel Conti on April 8, 2009, the moving

8 defendants listed in the signature blocks below (hereinafter, "Defendants") will and hereby do

9 move this Court, pursuant to Rules 12(b)(1) and (6), 12(f), and 9(b) of the Federal Rules of

10 Civil Procedure, for an Order dismissing the Indirect Purchaser Plaintiffs' Consolidated

11 Amended Complaint without leave to amend.

12        This motion is based upon this Notice of Motion; the accompanying Memorandum of

13 Points and Authorities; the accompanying Request for Judicial Notice; the complete files and

14 records in these consolidated actions; oral argument of counsel; and such other and further

15 matters as the Court may consider.

16

## STATEMENT OF THE ISSUES

17        1.        Whether Indirect Purchaser Plaintiffs ("Plaintiffs") have established subject

18 matter jurisdiction to assert their federal antitrust claim under the Foreign Trade Antitrust

19 Improvements Act of 1982, 15 U.S.C. § 6a, and to assert their state law claims in the face of

20 the Commerce and Supremacy Clauses of the U.S. Constitution.

21        2.        Whether Plaintiffs have satisfied the requirements for antitrust standing under

22 *Associated General Contractors of California v. California State Council of Carpenters*, 459

23 U.S. 519 (1983) and its progeny with respect to the antitrust laws of Arizona, California, Iowa,

24 Kansas, Michigan, Mississippi, Nebraska, Nevada, New Mexico, North Dakota, South Dakota,

25 Vermont, West Virginia, and Wisconsin; the consumer protection laws of Nebraska and New

26 York; and the Sherman Act.

27

28

MDL NO. 1917

DEFENDANTS' JOINT NOTICE OF MOTION
AND MOTION TO DISMISS THE IP-CAC

i

3.      Whether Plaintiffs can recover under the laws of Nebraska, Nevada and Hawaii for purchases made before the date that each state passed its statute repealing the application of *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977).

4.      Whether Plaintiffs have stated a claim for relief under the consumer protection statutes of New York, Massachusetts, Maine, and Hawaii.

5.      Whether Plaintiffs have stated a common law claim for unjust enrichment under the laws of Arizona, California, Hawaii, Iowa, Kansas, Massachusetts, Michigan, Minnesota, Mississippi, Nebraska, Nevada, New Mexico, New York, North Carolina, Rhode Island, South Dakota, Tennessee, Vermont, West Virginia, and Wisconsin.

6.      Whether Plaintiffs have pled sufficient facts to satisfy the requirements for tolling the statute of limitations under each of the laws at issue.

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................... 1

INTRODUCTION ................................................................................................................... 1

FACTUAL BACKGROUND ................................................................................................. 4

LEGAL ARGUMENT ........................................................................................................... 6

I.  PLAINTIFFS' CLAIMS MUST BE DISMISSED FOR LACK OF SUBJECT
    MATTER JURISDICTION UNDER THE FTAIA AND UNDER THE
    COMMERCE AND SUPREMACY CLAUSES OF THE CONSTITUTION ............. 6

    A.  Plaintiffs Have Failed To Allege Sufficient Facts To Support A Claim
        That The Alleged Foreign Anticompetitive Conduct Relating To
        Overseas CRT Sales Had A "Direct, Substantial, And Reasonably
        Foreseeable" Anticompetitive Effect On The Sale Of CRTs, Or Finished
        Products Containing CRTs, In The United States ............................................... 8

    B.  Plaintiffs' State Law Claims Must Also Be Dismissed Because Applying
        Such State Laws to Foreign Commerce In a Manner Inconsistent with
        the FTAIA Would Violate the Commerce and Supremacy Clauses of the
        Constitution ..................................................................................................... 10

        1.  The FTAIA Is Intended To Establish A Uniform National Policy
            Limiting The Reach Of United States Antitrust Laws To Foreign
            Conduct And To Promote Principles Of International Comity .......... 10

        2.  The Commerce Clause Mandates That State Antitrust Laws Not
            Exceed The Uniform Jurisdictional Limits Established By The
            FTAIA ............................................................................................. 11

        3.  The Supremacy Clause Also Mandates That State Antitrust Laws
            Comport With The FTAIA ............................................................... 13

    C.  Applying Plaintiffs' State Law Claims In A Manner Inconsistent With
        The FTAIA Would Exceed The Intended Scope Of These Laws ................... 14

II. PLAINTIFFS LACK ANTITRUST STANDING TO ASSERT CLAIMS FOR
    PURCHASES OF FINISHED PRODUCTS CONTAINING CRTS ........................ 16

    A.  The Associated General Contractors Test Governs Whether Plaintiffs
        Have Antitrust Standing Under Most Of The State Laws Asserted And
        The Sherman Act ............................................................................................ 16

    B.  Plaintiffs Who Purchased Finished Products Containing CRTs Cannot
        Establish Antitrust Standing Under The AGC Test ....................................... 19

# <u>TABLE OF CONTENTS</u>

**Page**

1.   Plaintiffs Fail To Allege "Antitrust Injury" Because Plaintiffs Were Not Participants In The Allegedly Restrained Market ............... 19

2.   Plaintiffs Have Also Failed To Allege Facts Sufficient To Satisfy the "Remoteness" Factors Of AGC ..................................... 24

    a.   Plaintiffs' Alleged Injuries Were Indirect and Attenuated ................................................................. 25

    b.   Plaintiffs' Injury Claims Are Inherently Speculative ............. 26

    c.   Plaintiffs' Injury Claims Would Be Unreasonably Complex ................................................................ 27

    d.   Plaintiffs' Damages Claims Are Likely to be Duplicative ...... 29

III.   PLAINTIFFS ALSO CANNOT SUE UNDER THE STATUTES OF NEBRASKA, NEVADA OR HAWAII BASED ON PURCHASES PREDATING THOSE STATES' ILLINOIS BRICK REPEALER AMENDMENT ............................................................... 29

    A.   Nebraska .......................................................... 29

    B.   Nevada ............................................................ 30

    C.   Hawaii ............................................................ 31

IV.   PLAINTIFFS' CLAIMS FAIL UNDER THE CONSUMER PROTECTION STATUTES OF MASSACHUSETTS, NEW YORK, RHODE ISLAND AND HAWAII ............................................................... 32

    A.   Massachusetts .................................................... 32

    B.   New York ......................................................... 32

    C.   Rhode Island ..................................................... 34

    D.   Hawaii ............................................................ 35

# TABLE OF CONTENTS

**Page**

V.   PLAINTIFFS' UNJUST ENRICHMENT CLAIMS FAIL IN STATES THAT
REQUIRE THAT PLAINTIFFS CONFER A BENEFIT DIRECTLY ON
DEFENDANTS, AND IN STATES WITH SUBSTANTIVE ANTITRUST
LAW THAT WOULD PROHIBIT OR LIMIT PLAINTIFFS' RECOVERY ........... 36

    A.   Plaintiffs' Unjust Enrichment Claims Under The Common Law Of
Michigan, Kansas and New York Fail Because Plaintiffs Do Not Allege
That They Conferred A Benefit Directly On Defendants .............................. 36

        1.   Michigan ............................................................................ 36

        2.   Kansas ................................................................................ 37

        3.   New York ........................................................................... 37

    B.   Plaintiffs Cannot Use Unjust Enrichment As A "Back-Door" To
Recover For Antitrust Claims Barred Under States' Substantive
Antitrust Laws ............................................................................................. 38

    C.   Plaintiffs Cannot Recover Under An Unjust Enrichment Theory In
States Which Limit Relief To Compensatory Damages.................................. 40

VI.   EACH STATE'S STATUTE OF LIMITATIONS RESTRICTS PLAINTIFFS'
STATE LAW CLAIMS, AND PLAINTIFFS HAVE NOT PLEADED FACTS
SUFFICIENT TO TOLL THE APPLICABLE LIMITATIONS PERIODS .............. 41

    A.   Plaintiffs Have Failed to Plead Affirmative Conduct Constituting
Fraudulent Concealment, Barring Tolling In All 22 States Whose State
Law Claims Plaintiffs' Assert ...................................................................... 44

    B.   Plaintiffs Have Failed to Plead the Due Diligence Required To Toll The
Statute of Limitations .................................................................................. 45

    C.   Plaintiffs Had Constructive Knowledge Of Purported Facts Constituting
Their Claims, Barring Tolling In All 22 States .................................................. 49

CONCLUSION ........................................................................................................ 50

---

# TABLE OF AUTHORITIES

## FEDERAL CASES

*389 Orange St. Partners v. Arnold*,
   179 F.3d 656 (9th Cir. 1999) ...................................................................... 43, 44

*AG Acceptance Corp v. Glinz*,
   684 N.W.2d 632 (N.D. 2004) ............................................................................ 15

*Aikens v. Microsoft Corp.*,
   159 Fed. Appx. 471 (4th Cir. 2005) ................................................................. 38

*Am. Ad. Mgm't, Inc. v. General Tel. Co.*,
   190 F.3d 1051 (9th Cir. 1999) ..................................................................... 20, 24

*American Ins. Ass'n v. Garamendi*,
   539 U.S. 396 (2003) .......................................................................................... 13

*American Title Ins. Co. v. Lacelaw Corp.*,
    861 F.2d 224, 226 (9th Cir. 1988) ............................................................... 48, 49

*Animal Science Products, Inc. v. China National Metals & Minerals Import & Export Corp.*, 596 F. Supp.2d 842 (D.N.J. 2008) ................................................... 7, 8

*Associated General Contractors of California v. California State Council of Carpenters*, 459 U.S. 519 (1983) ............................................................... *passim*

*In re Auto. Refinishing Paint Antitrust Litig.*, 515 F. Supp. 2d 544
    (E.D. Pa. 2007) ........................................................................................... 33, 34

*Barton & Pittinos, Inc. v. Smithkline Beecham Corp.*,
   118 F.3d 178 (3rd Cir. 1997) ............................................................................ 22

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ........................................................................................ 4, 7

*Bhan v. NME Hospital, Inc.*,
   772 F.2d 1467 (9th Cir. 1985) ..................................................................... 20, 21

*Blue Shield v. McReady*,
   457 U.S. 465 (1982) .......................................................................................... 23

*Bogosian v. All American Concessions*,
   No. 6-CV-1633 (RRM), 2008 WL 4534036 (E.D.N.Y. Sept. 29, 2008) ......................... 33

DEFENDANTS' JOINT NOTICE OF MOTION
AND MOTION TO DISMISS THE IP-CAC

## <u>TABLE OF AUTHORITIES</u>

**Page**

*Brooks Fiber Comm'n of Tucson Inc. v. GST Tucson Lightwave, Inc.,*
    992 F. Supp. 1124 (D. Ariz. 1997) ...........................................................14

*Byre v. City of Chamberlain,*
    362 N.W.2d 69 (S.D. 1985) .......................................................................15

*California v. ARC America Corp.,*
    490 U.S. 93 (1989) ....................................................................................14

*Cargill, Inc. v. Monfort of Colorado, Inc.,*
    479 U.S. 104 (1986) ............................................................................19, 24

*Carmona v. Spanish Broadcasting System, Inc.,* No. 08 Civ. 4475,
    2009 WL 890054 (S.D.N.Y. March 30, 2009) ..........................................37

*Crosby v. Nat'l Foreign Trade Council,*
    530 U.S. 363 (2000) ..................................................................................14

*Davies v. Genesis Med Ctr.,*
    994 F. Supp. 1078 (S.D. Iowa 1998) .........................................................14

*Dee-K Enter. Inc. v. Heveafil Sdn. Bhd,*
    299 F.3d 281(4th Cir 2002) .........................................................................8

*In re DRAM Antitrust Litig.,*
    516 F. Supp.2d 1072 (N.D. Cal. 2007) .................................................*passim*

*In re DRAM Antitrust Litig.,*
    536 F.Supp.2d 1129 (N.D. Cal. 2008) .................................................*passim*

*In re DRAM Antitrust Litig.,*
    546 F.3d 981 (9th Cir. 2008) .....................................................................10

*Driscoll v. City of New York,*
    No. 82 Civ. 8497, 1987 WL 26799 (S.D.N.Y. Nov. 25, 1987)...................12

*Eagle v. Star-Kist Foods, Inc.,*
    812 F.2d 538 (9th Cir. 1987) .....................................................................29

*F. Hoffman-LaRoche v. Empagram S.A.,*
    542 U.S. 155 (2004) ............................................................................10, 11

*Ferrell v. Wyeth-Ayerst Labs., Inc.,*
    No. 1:01-CV-00447-SSB-TSH, (S.D. Ohio, July 1, 2004) ........................31

## <u>TABLE OF AUTHORITIES</u>

**Page**

*In re Flash Memory Antitrust Litig.*,
    2009 WL 1096602 (N.D. Cal. March 31, 2009) ...................................... 19, 22, 31, 34, 35

*Flood v. Kuhn*,
    U.S. 258 (1972) ................................................................................................... 11

*Gerling Global Reinsurance Corp. of America v. Quackenbush*,
    2000 WL 777978 (E.D. Cal. June 9, 2000) ...................................................... 13

*In re GPU Antitrust Litig.*,
    527 F. Supp.2d 1011 (N.D. Cal. 2007) ................................................... 19, 28, 35

*In re GPU Antitrust Litig.*,
    540 F. Supp.2d 1085 (N.D. Cal. 2007) ........................................................ 19, 22

*Hedges v. Dixon County*,
    150 U.S. 182 (1893) .......................................................................................... 38

*Horowitz v. Stryker Corp.*,
    --- F.R.D. ----, 2009 WL 436406 (E.D.N.Y. Feb. 20, 2009) ........................... 33

*Illinois Brick Co. v. Illinois*,
    431 U.S. 720 (1977) ....................................................................................*passim*

*In re Intel Corp. Microprocessor Antitrust Litig.*,
    452 F. Supp.2d 555 (D. Del. 2006) ................................................................... 9

*In re Intel Corp. Microprocessor Antitrust Litig.*,
    476 F. Supp.2d 452 (D. Del. 2007) ........................................................ 10-14, 16

*Intergraph Corp. v. Intel Corp.*,
    195 F.3d 1346 (Fed. Cir. 1999) ........................................................................ 21

*Jablon v. Dean Witter & Co.*,
    614 F.2d 677 (9th Cir. 1980) ............................................................................ 42

*Japan Line, Ltd. v. County of Los Angeles*,
    441 U.S. 434 (1979) .......................................................................................... 12

*In re K-Dur Antitrust Litig.*,
    No. 01-1652 (JAG), 2008 WL 2660780 (D. N.J. Feb. 28, 2008) ..................... 39

*Karahalios v. Nat'l Fed'n of Fed. Employees*,
    489 U.S. 527 (1989) .......................................................................................... 40

# TABLE OF AUTHORITIES

**Page**

*Klehr v. A.O. Smith Corp.*,
   521 U.S. 179, 189 (1997) .......................................................................41

*Knevelbaard Dairies v. Kraft Foods, Inc.*,
   232 F.3d 979 (9th Cir. 2000) ................................................................18

*Lorenzo v. Qualcomm Inc.*,
   --- F.Supp.2d ----, No. 08cv2124 WQH, 2009 WL 537522
   (S.D. Cal. March 3, 2009) ..............................................................26, 27

*Lucas v. Citizens Commc'n Co.*,
   409 F. Supp.2d 1206 (D. Haw. 2005), *aff'd* 244 Fed. Appx. 774
   (9th Cir. 2007) ......................................................................................36

*Lucas Automotive Eng., Inc. v. Bridgestone/Firestone, Inc.*,
   140 F.3d 1228 (9th Cir. 1998) .........................................................17, 19

*Magnum Defense, Inc. v. Harbour Group Ltd.*,
   248 F.Supp.2d 64 (D.R.I. 2003) ...........................................................35

*Martell v. Turcheck*, No. 2:07-cv-14068, 2008 WL 2714210
   (E.D. Mich. July 7, 2008) .....................................................................37

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
   269 F. Supp. 2d 1213 (C.D. Cal. 2003) .................................................14

*Meyer v. Qualcomm Inc.*,
   No. 08cv655 WQH, 2009 WL 539902
   (S.D. Cal. March 3, 2009) ..........................................................22, 25-27

*In re Microsoft Corp. Antitrust Litig.*,
   401 F. Supp. 2d 461 (D. Md. 2005).......................................................38

*Midwest Commc'n, Inc. v. Minn. Twins, Inc.*,
   779 F.2d 444 (8th Cir. 1985) ................................................................15

*Nat'l Foreign Trade Council v. Natsios*,
   181 F.3d 38 (1st Cir. 1999) ..................................................................13

*Nev. Power Co. v. Monsanto Co.*,
   891 F.Supp. 1406 (D. Nev. 1995) .........................................................44

*In re New Motor Vehicles Canadian Export Antitrust Litig.*,
   350 F. Supp. 2d 160 (D. Me. 2004)...............................................33, 39, 40

## <u>TABLE OF AUTHORITIES</u>

**Page**

*New York Jets LLC v. Cablevision Sys. Corp.*,
No. 5 Civ 2875 (HB), 2005 WL 2649330 (S.D.N.Y. Oct. 17, 2005) ............................... 32

*Norfolk So. Corp. v. Oberly*,
822 F.2d 388 (3rd Cir. 1987) ...................................................................................... 12

*Oregon Laborers-Employers Health & Welfare Trust Fund v. Philip Morris*,
185 F.3d 957 (9th Cir. 1999) ...................................................................................... 17

*Orr v. Beamon*,
77 F.Supp.2d 1208 (D. Kan. 1999)
*aff'd* 4 Fed. Appx. 647 (10th Cir. 2001) .................................................................. 15, 18

*Ostrofe v. H.S. Crocker Co., Inc.*,
740 F.2d 739 (9th Cir. 1984) .................................................................................. 23, 24

*Pocahontas Supreme Coal Co. v. Bethlehem Steel Corp.*,
No. 84-5380, 1986 WL 957 (S.D. W.Va. May 13, 1986),
*aff'd* 828 F.2d 511 (4th Cir. 1987) ............................................................................. 46

*R.C. Dick Geothermal Corp. v. Thermogenics, Inc.*,
890 F.2d 139 (9th Cir. 1989) .................................................................................. 17, 25

*Raad v. Wal-Mart Stores, Inc.*,
13 F. Supp. 2d 1003 (D. Neb. 1998) ........................................................................... 15

*Reading Int'l, Inc. v. Oaktree Capital Mgmt.*,
317 F. Supp. 2d 301 (S.D.N.Y. 2003) ......................................................................... 37

*In re Rezulin Prods. Liab. Litig.*,
392 F. Supp.2d 597, 614 (S.D.N.Y. 2005) ................................................................... 33

*Scully Signal Co. v. Joyal*,
881 F.Supp. 727 (D.R.I. 1995) ................................................................................... 35

*Sharp v. United Airlines, Inc.*, 967 F.2d 404 (10th Cir. 1992) ...................................... 18

*Shropshear v. Corp. Counsel*, 275 F.3d 593 (7th Cir. 2001) ....................................... 43

*State v. Colo. State Christian Coll. of Church of Inner Power, Inc.*,
346 N.Y.S.2d 482 (N.Y. Sup. Ct. 1973) ...................................................................... 15

*Steamfitters Local Union No. 420 Welfare Fund v. Phillip Morris, Inc.*,
171 F.3d 912 (3d Cir. 1998) ...................................................................................... 24

# TABLE OF AUTHORITIES

Page

*Stuart & Sons, L.P. v. Curtis Publ'g Co.*,
   456 F. Supp.2d 336 (D. Conn. 2006) ........................................................... 41

*In re Terazosin Hydrochloride Antitrust Litig.*,
   160 F. Supp. 2d 1365 (S.D. Fla. 2001) ....................................................... 38

*Tessera, Inc. v. Micron Technology, Inc.*,
   2005 WL 1661106 (E.D. Tx. July 14, 2005) ................................................ 22

*In re TFT-LCD Antitrust Litig.*,
   586 F. Supp.2d 1109 (N.D. Cal. 2008) ............................................. 19, 22, 35

*In re TFT-LCD Antirust Litig.*,
   599 F. Supp.2d 1179 (N.D. Cal. 2009) ....................................................... 39

*Toscano v. PGA Tour, Inc.*,
   201 F.Supp.2d 1106 (E.D. Cal. 2002) ........................................................ 17

*Turicentro, S.A. v. American Airlines, Inc.*, 152 F. Supp. 2d 829 (E.D. Pa. 2001),
   *aff'd* 303 F.3d 293 (3d Cir. 2002) ............................................................. 11

*United Phosphorous, Ltd. v. Angus Chemical Co.*,
   131 F. Supp. 2d 1003 (N.D. Ill. 2001) ..................................................... 9, 11

*United States v. LSL Biotechnologies*,
   379 F.3d 672 (9th Cir. 2004) ................................................................. 9, 10

*In re Verisign, Inc. Derivative Litig.*,
   531 F. Supp. 2d 1173 (N.D. Cal. 2007) ...................................................... 42

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ................................................................. 43

*Wade v. Danek Med. Inc.*,
   182 F.3d 281 (4th Cir. 1999) .................................................................. 42

*Walker v. Armco Steel Corp.*,
   446 U.S. 740 (1980) ............................................................................ 41

*Walker v. U-Haul Co. of Miss.*,
   734 F.2d 1068 (5th Cir. 1984) ................................................................. 15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# <u>TABLE OF AUTHORITIES</u>

**Page**

**STATE CASES**

*A&M Supply Co. v. Microsoft Corp.*,
    654 N.W. 2d 572 (Mich. App. 2002) ................................................26, 36, 37

*Amarel v. Connell*, 202 Cal. App. 3d 137 (1988)........................................13, 14

*Amundson & Assoc. v. Nat'l Council on Comp. Isn.*,
    988 P.2d 1208 (Kan. Ct. App. 1999) ...........................................................40

*Ass'n of Apt. Owners v. Venture*,
    167 P.3d 225 (Haw. 2007)............................................................................36

*Au v. Au*, 626 P.2d 173 (Haw. 1981) ............................................................44, 49

*Babcock v. Carrothers Constr. Co.*,
    124 P.3d 1084, 2005 WL 3527117 (Kan. App. Dec. 23, 2005) ....................37

*Beckler v. Visa U.S.A., Inc.*,
    09-04-C-00030, 2004 WL 2115144 (N.D. Dist. Ct. Aug. 23, 2004) ..............15

*Beckler v. Visa U.S.A., Inc.*,
    09-04-C-00030, 2004 WL 2475100 (N.D. Dist. Ct. Sept. 21, 2004) ..............18

*Benjaminov v. Republic Ins. Group*,
    660 N.Y.S.2d 148 (N.Y. App. Div. 1997)......................................................33

*Bowen v. Ziasun Technologies, Inc.*,
    116 Cal. App. 4th 777 (2004).......................................................................15

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
    20 Cal. 4th 163 (1999)..................................................................................15

*Christy v. Miulli*,
    692 N.W.2d 694 (Iowa 2005)...................................................................44, 46

*Clark v. Cassidy*,
    636 P. 2d 1344 (Haw. 1981).........................................................................31

*Continental Potash, Inc. v. Freeport-McMoran, Inc.*,
    858 P.2d 66 (N.M. 1993)....................................................................44, 46, 47

*Cornelison v. Visa U.S.A., Inc.*,
    No. 03-1350 (S.D. Cir. Ct. Sep. 29, 2004) ...................................................18

## <u>TABLE OF AUTHORITIES</u>

**Page**

*Crawford v. Paul Davis Restoration Triad Inc.*,
    No. COA02-1040, 2003 WL 21436156 (N.C. App. June 17, 2003) ................................ 46

*E-Fab, Inc. v. Accountants, Inc. Servs.*,
    153 Cal.App.4th 1308 (2007) ........................................................................................ 46

*Entrialgo v. Twin City Dodge, Inc.*,
    333 N.E.2d 202 (Mass. 1975) ........................................................................................ 32

*ERI Max Entm't v. Streisand*,
    690 A.2d 1351 (R.I. 1997) ...................................................................................... 34, 35

*First Federal Savings & Loan Ass'n of Wis. v. Dade Federal Sav. & Loan Ass'n*, 403
    So.2d 1097 (Fla. Dist. Ct. App. 1981) ..................................................................... 44, 46

*Ford Motor Co. v. Lyons*,
    405 N.W.2d 354 (Wis. Ct. App. 1987) ......................................................................... 15

*Frank Cooke, Inc. v. Hurwitz*,
    406 N.E.2d 678 (Mass. App. Ct. 1980) ......................................................................... 46

*Friends Univ. v. W.R. Grace & Co.*,
    608 P.2d 936 (Kan. 1980) ........................................................................................ 44, 46

*Fucile v. Visa U.S.A., Inc.*,
    No. S1560-03, 2004 WL 3030037 (Vt. Super. Ct. Dec. 27, 2004) ........................... 15, 18

*Gray v. Marshall County Bd. of Edu.*,
    367 S.E.2d 751 (W.Va. 1988) ....................................................................................... 15

*Guy Dean's Lake Shore Marina, Inc. v. Ramey*,
    518 N.W.2d 129 (Neb. 1994) ........................................................................................ 38

*Hanna Mining Co. v. InterNorth, Inc.*,
    379 N.W.2d 663 (Minn. Ct. App. 1986) ....................................................................... 46

*Hansen v. A.H. Robins, Inc.*,
    335 N.W.2d 578 (Wis. 1983) ........................................................................................ 46

*Harrah's Vicksburg Corp. v. Pennebaker*,
    812 So. 2d 163 (Miss. 2001) ......................................................................................... 19

*Haverty v. Comm'r of Corr.*,
    792 N.E.2d 989 (Mass. 2003) ....................................................................................... 38

# <u>TABLE OF AUTHORITIES</u>

**Page**

*Hawaii Med. Ass'n v. Hawaii Med. Service*,
    148 P. 3d 1179 (Haw. 2006)............................................................................31

*Henderson v. U.S. Fid. & Guar. Co.*,
    488 S.E. 2d 234 (N.C. 1997) ..........................................................................15

*Hesse v. Vinatieri*,
    302 P.2d 699 (Cal. Dist. Ct. App. 1956) ........................................................44

*Kanamara v. Holyoke Mut. Ins. Co.*,
    892 N.E.2d 759 (Mass. App. Ct. 2008) ..........................................................32

*Kanne v. Visa U.S.A., Inc.*,
    723 N.W.2d 293 (Neb. 2006) ...........................................................18, 29, 30, 39

*Keating v. Philip Morris, Inc.*,
    417 N.W.2d 132 (Minn. Ct. App. 1987) .........................................................15

*Knowles v. Visa U.S.A., Inc.*, No. Civ.A. CV-03-707, 2004 WL 2475284 (Me. Super.
    Ct. Oct. 20, 2004) ...........................................................................................28

*Leahey v. Dep't of Water and Power*,
    76 Cal. App. 2d 281 (Cal. Dist. Ct. App. 1946) ............................................41

*Manker v. Manker*,
    644 N.W.2d 522 (Neb. 2002) ..........................................................................49

*Martin v. Howard*, 784 A.2d 291 (R.I. 2001).....................................................46

*Matter of the Estate of Thomas*,
    998 P.2d 560 (Nev. 2000)................................................................................30

*McNaughton v. Rockford State Bank*,
    246 N.W. 84 (Mich. 1933) ..............................................................................46

*Mello v. Woodhouse*,
    872 P.2d 337 (Nev. 1994)................................................................................38

*O'Connell v. Microsoft Corp.*,
    2001-2 Trade Cas. (CCH), 13 Mass. L. Rptr. 435 (Mass. Super. 2001) .........38

*Pahlad ex rel. Berger v. Brustman*,
    823 N.Y.S.2d 61 (N.Y. App. Div. 2006), *aff'd* 865 N.E.2d 1240 (N.Y. 2007) ...............46

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>TABLE OF AUTHORITIES</u>

**Page**

*Paltre v. General Motors Corp.*,
   810 N.Y.S.2d 496 (N.Y. App. Div. 2006).................................................................33

*Partee v. San Diego Chargers Football Co.*,
   34 Cal.3d 378 (1983).........................................................................................12

*Patten v. Standard Oil of La.*,
   55 S.W.2d 759 (Tenn. 1933) ...............................................................................46

*Pembee Mfg. Corp. v. Cap Fear Constr. Co.*,
   317 S.E.2d 41 (N.C. Ct. App. 1984), *aff'd* 329 S.E.2d 350 (N.C. 1985) ..........44

*People ex rel. Spitzer v. Applied Card Sys., Inc.*,
   805 N.Y.S.2d 175 (N.Y. App. Div. 2005)............................................................15

*Pooler v. R.J. Reynolds Tobacco Co.*,
   No. CV00-02674, 2001 WL 403167 (Nev. Dist. Ct. Apr. 4, 2001) ...................46

*Puritan Med. Center, Inc. v. Cashman*,
   596 N.E.2d 1004 (Mass. 1992)...........................................................................44

*Robert's Haw. School. Bus. Inc. v. Laupahoehoe Transp. Co. Inc.*,
   982 P.2d 853 (Haw. 1999)..................................................................................31

*Rodrigue v. Valco Enters.*,
   726 A.2d 61 (Vt. 1999).......................................................................................46

*Roether v. Nat'l Union Fire Ins. Co.*,
   200 N.W. 818 (N.D. 1924) ..................................................................................44

*Romero v. Philip Morris, Inc.*,
   137 N.M. 229 (N.M. Ct. App. 2005) ...................................................................18

*Rose v. Vulcan Materials Co.*,
   194 S.E.2d 521 (N.C. 1973) ................................................................................15

*Ryan v. Roman Catholic Bishop of Providence*,
   941 A.2d 174 (R.I. 2008)....................................................................................44

*Sattler v. Bailey*,
   400 S.E.2d 220 (W.V. 1990) ...............................................................................44

*Schreibman v. Chase Manhattan Bank*,
   15 A.D.2d 769 (N.Y. App. Div. 1962) .................................................................41

**<u>TABLE OF AUTHORITIES</u>**

**Page**

*Shadrick v. Coker*,
    963 S.W.2d 726 (Tenn. 1998) ................................................................ 44, 46

*Siena v. Microsoft Corp.*,
    796 A.2d 461 (R.I. 2002) ........................................................................ 35

*Siena v. Microsoft Corp.*,
    796 A.2d 461 (R.I. 2002) ........................................................................ 38

*Sills v. Oakland Gen. Hosp.*,
    559 N.W.2d 348 (Mich. Ct. App. 1996) ................................................ 44

*Snapp & Assocs. Ins. Servs. Inc. v. Robertson*,
    96 Cal.App.4th 884 (2002) ...................................................................... 46

*Soukop v. Conagra, Inc.*,
    653 N.W.2d 655 (Neb. 2002) .................................................................. 30

*Southard v. Visa U.S.A., Inc.*,
    734 N.W.2d 192 (Iowa 2007) ............................................................ 18, 39

*Spann v. Diaz*,
    987 So. 2d 443 (Miss. 2008) .................................................................. 44

*Spencer v. Estate of Spencer*,
    759 N.W.2d 539 (S.D. 2008) .................................................................. 44

*Sperry v. Crompton Corp.*,
    No.17872/02 4 (N.Y. Sup. Ct., Nov. 25, 2003) ................................ 33, 34

*Sperry v. Crompton Corp.*,
    810 N.Y.S.2d 498 (N.Y. App. Div. 2006),
    *aff'd* 8 N.Y.3d 204 (N.Y. 2007) ................................................ 33, 37, 38, 39

*St. Patrick's Home for the Aged & Infirm v. Laticrete Int'l, Inc.*,
    696 N.Y.S.2d 117 (N.Y. App. Div. 1999) ........................................ 32, 34

*Stark v. Visa U.S.A., Inc.*,
    2004 WL 1879003 (Mich. Cir. Ct. July 23, 2004) .................... 18, 23, 26, 29

*State v. Daicel Chemical Ind.*,
    840 N.Y.S.2d 8 (N.Y. App. Div. 2007) .................................................. 33

*State v. Duluth Bd. of Trade*,
    121 N.W. 395 (Minn. 1909) .................................................................. 15

## <u>TABLE OF AUTHORITIES</u>

**Page**

*State ex rel. Spitzer v. Daicel Chem. Indus., Ltd.*,
    42 A.D.3d 301 (N.Y. App. Div. 2007) ................................................................. 18

*State ex rel. Susedik v. Knutson*, 191 N.W.2d 23 (Wis. 1971) ......................................... 44

*State Farm Mut. Auto. Ins. Co. v. Ford Motor Co.*,
    572 N.W.2d 321 (Minn. Ct. App. 1997) ........................................................... 44

*Stephens v. Equitable Life Assurance Soc'y of U.S.*,
    850 So.2d 78 (Miss. 2003) ................................................................................ 46

*Strang v. Visa U.S.A., Inc.*,
    No. 03-CV-011323, 2005 WL 1403769 (Wis. Cir. Ct. Feb. 8, 2005) ...................... 18, 22

*Strassburg v. Citizens State Bank*,
    581 N.W.2d 510 (S.D. 1998) ............................................................................ 46

*Sun Microsystems, Inc. v. Hynix Semiconductor, Inc.*,
    No. C-06-1665 PJH, 2007 WL 1056783 (N.D. Cal. Apr. 5, 2007) ......................... 8

*Taylor v. Slater*,
    41 A. 1001 (R.I. 1898) ...................................................................................... 38

*Tenn. ex rel. Leech v. Levi Strauss & Co.*,
    No. 79-722-III, 1980 WL 4696 (Tenn. Ch. Ct. Sept. 25, 1980) ......................... 15

*Tovrea Land & Cattle Co. v. Linsenmeyer*,
    412 P.2d 47 (Ariz. 1966) ................................................................................... 44

*Ulibarri v. Gerstenberger*,
    871 P.2d 698 (Ariz. Ct. App. 1993) ................................................................. 49

*Upah v. Ancona Bros. Co.*,
    521 N.W.2d 895 (Neb. 1994) ........................................................................... 44

*Vinci v. Waste Mgmt., Inc.*,
    36 Cal.App. 4th 1811 (1995) ....................................................................... 14, 18

*Water of Saratoga Springs, Inc. v. State*,
    498 N.Y.S.2d 196 (N.Y. App. Div. 1986),
    *aff'd* 498 N.E.2d 146 (N.Y. 1986) ................................................................. 49

*Watts v. Mulliken's Estate*,
    115 A. 150 (Vt. 1921) ...................................................................................... 44

## <u>TABLE OF AUTHORITIES</u>

**Page**

*Weaver v. Cabot Corp.*,
    2004 WL 3406119 (N.C. Sup. March 26, 2004) ....................................................... 26, 27

*Wrobel v. Avery Dennison Corp.*,
    No. 05-CV-1296 (Ks. Dist. Ct., Feb. 1, 2005) ............................................................. 18

*Zoe G. v. Frederick F. G.*,
    617 N.Y.S.2d 370, 371 (N.Y. App. Div. 1994) ............................................................ 44

### FEDERAL STATUTES AND RULES

Clayton Act,
    15 U.S.C. § 26 ............................................................................................................... 19

Federal Rules of Civil Procedure 9(b) ............................................................................. 43

Federal Rules of Civil Procedure 12(f) ............................................................................. 8

Federal Trade Commission Act,
    15 U.S.C. §§ 45-48 ...................................................................................................... 15

Foreign Trade Antitrust Improvements Act of 1982,
    15 U.S.C. § 6a.............................................................................................................. 1, 6

Sherman Act,
    15 U.S.C. § 1 ............................................................................................................... 19

U.S. Const., art. I, §8, cl. 3 ............................................................................................... 13

U.S. Const., art. VI, cl. 2 .................................................................................................. 14

### STATE STATUTES

#### *Arizona*

Ariz. Rev. Stat.
    § 44-1410.................................................................................................................... 42
    § 44-1412.............................................................................................................. 14, 18

#### *California*

Cal. Bus. & Prof. Code
    § 16759.1 ................................................................................................................... 42
    § 17208 ...................................................................................................................... 42

## <u>TABLE OF AUTHORITIES</u>

**Page**

*Florida*

Fla. Rev. Stat.
    § 501.202(3) ........................................................................................................... 15
    § 542.26 ................................................................................................................... 42

*Hawaii*

Haw. Rev. Stat.
    § 1-3 ........................................................................................................................ 31
    § 480-1 ..................................................................................................................... 36
    § 480-2 ..................................................................................................................... 31
    § 480-2(b) ................................................................................................................ 15
    § 480-2(d) ................................................................................................................ 36
    § 480-2(e) ................................................................................................................ 31
    § 480-4 ..................................................................................................................... 31
    § 480-13(b) .............................................................................................................. 40
    § 480-13.3(1) ........................................................................................................... 31
    § 480-13.3(5)(C) ..................................................................................................... 31
    § 480-24 ................................................................................................................... 42

*Iowa*

Iowa Code Ann.
    § 553.2 ..................................................................................................................... 14
    § 553.16(1) .............................................................................................................. 42

*Kansas*

Kan. Stat. Ann.
    § 50-108 .................................................................................................................. 40
    § 60-512 .................................................................................................................. 42

*Massachusetts*

Mass. Gen. Laws Ann.
    Ch. 93A § 2 ............................................................................................................. 32
    Ch. 93A § 2(b) ........................................................................................................ 15
    Ch. 93A § 9(3) ........................................................................................................ 32
    Ch. 260 § 5A ........................................................................................................... 42

*Michigan*

Mich. Comp. Laws Ann.
    § 445.781 ................................................................................................................ 42
    § 445.784 ................................................................................................................ 15

*Minnesota*

Minn. Stat. Ann.
    §325D.57 ................................................................................................................. 40
    §325D.64 ................................................................................................................. 42

# TABLE OF AUTHORITIES

**Page**

*Mississippi*

Miss. Code Ann.
 § 15-1-49 ...................................................................................................42
 § 75-21-9 ...................................................................................................40

*Nebraska*

Neb. Rev. Stat.
 § 59-801 .....................................................................................................30
 § 59-821 .....................................................................................................40
 § 59-829 .....................................................................................................15
 § 59-1601 ...................................................................................................30
 § 59-1609 ...................................................................................................40
 § 59-1612 ...................................................................................................42

Neb. Const.
 Art. III, § 24 ..............................................................................................30

*Nevada*

Nev. Rev. Stat.
 § 598A.050 ...........................................................................................15, 18
 § 598A.210(2) ............................................................................................40
 § 598A.220 .................................................................................................42

Nev. Rev. Stat. Ann.
 § 218 ..........................................................................................................31

*New Mexico*

N.M. Stat. Ann.
 § 57-1-12 ...................................................................................................42
 § 57-1-15 ..............................................................................................15,18
 § 57-12-4 ...................................................................................................15

*New York*

N.Y. C.P.L.R.
 § 214(2) .....................................................................................................42

N.Y. Gen. Bus. Law
 § 349 ...................................................................................................18, 32-34
 § 349(h) .....................................................................................................40

*North Carolina*

N.C. Gen. Stat.
 § 75-16 .......................................................................................................40
 § 75-16.2 ....................................................................................................42

MDL NO. 1917          DEFENDANTS' JOINT NOTICE OF MOTION
AND MOTION TO DISMISS THE IP-CAC

xx

## <u>TABLE OF AUTHORITIES</u>

**Page**

*North Dakota*

N.D. Cent. Code
    § 28-01-24 ......................................................................................46
    § 51-08.1-10(1) ..............................................................................42

*Rhode Island*

R.I. Gen. Laws
    § 6-13.1-1 ........................................................................................34
    § 6-13.1-1(5)(i)-(xix) ....................................................................34
    § 6-13.1-3 ........................................................................................15
    § 6-13.1-5.2 ....................................................................................35
    § 6-36-23 ........................................................................................42

*South Dakota*

S.D. Codified Laws
    § 37-1-14.4.4 ..................................................................................42

*Tennessee*

Tenn. Code Ann.
    § 28-3-105 ......................................................................................42
    § 47-25-106 ....................................................................................41

*Vermont*

Vt. State. Ann. tit. 9
    § 2451 .............................................................................................15
    § 2453(b) ........................................................................................15
    § 2465 .............................................................................................41

Vt. State. Ann. tit. 12
    § 511 ...............................................................................................42

*West Virginia*

W. Va. Code
    § 47-18-9 ........................................................................................41
    § 47-18-11 ................................................................................42, 46
    § 47-18-16 ................................................................................15, 18

*Wisconsin*

Wis. Stat. Ann.
    § 133.18 ..........................................................................................41
    § 133.18(2) ......................................................................................42

## <u>TABLE OF AUTHORITIES</u>

**Page**

### **LEGISLATIVE MATERIALS**

H.R. Rep. 97-686, 6 (1982), *reprinted* in 1982 U.S.C.C.A.N., 2491 ..........................................10

L.B. 1278, 97th Leg., 2nd Sess. (Neb. February 27, 2002) ..........................................................29

Introducer's Statement of Intent, L.B. 1278, 97th Leg., 2d Sess.
(Neb. February 27, 2002) ......................................................................................................30

Committee Statement, L.B. 1278, 97th Leg., 2nd Sess. (Neb. February 27, 2002) ...................30

Minutes of the Senate Committee on Commerce and Labor, A.B. 108,
70th Sess. (Nev. March 8, 1999) ........................................................................................30

S.B. 1320 S.D. 2, 21st Leg. (Haw. 2002) .................................................................................31

### **TREATISES AND OTHER AUTHORITY**

4A Rudolf Callmann *et al.*, *Callmann on Unfair Competition, Trademarks and
Monopolies* § 27:30 (4th ed. 2005 & Supp. 2009) ............................................................13

H. Hovenkamp, *Federal Antitrust Policy:   The Law of Competition and its Practice*
(1994) ...................................................................................................................................28

2 P. Areeda & H. Hovenkamp, *Antitrust Law* (rev. 2d ed. 1995) .................................................41

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

3

## INTRODUCTION

4          Plaintiffs' Consolidated Amended Complaint ("IP-CAC," or "Complaint") alleges a

5   nationwide, antitrust class action predicated on allegations of a purported foreign conspiracy

6   to fix the prices of Cathode Ray Tubes ("CRTs"), one component part of finished products

7   such as television sets and computer monitors.    Despite Plaintiffs' best efforts to obscure the

8   foreign nature of their conspiracy claims, Plaintiffs have failed to make a single factual

9   allegation capable of supporting the assertion that the alleged foreign conspiracy had the

10  requisite effect on U.S. commerce.    Moreover, because Plaintiffs did not actually purchase

11  CRTs, they have have attempted to blur the definition of the allegedly price-fixed product

12  beyond any recognition, in the hopes of recovering for their purchases of *finished* television

13  sets and computer monitors, rather than CRTs themselves.    *See* IP-CAC, ¶ 15 (defining

14  "CRT Products" to include all "products containing CRTs").    Artful pleading, though,

15  cannot obscure the fact that in the entirety of Plaintiffs' 92-page Complaint, there is not a

16  single allegation that the finished products Plaintiffs *actually* bought were price-fixed at all.

17  To the contrary, as Plaintiffs concede, the market for finished televisions has been extremely

18  competitive.    *Id. at* ¶ 227.    For the following reasons, all of Plaintiffs' claims fail as a

19  matter of law and the IP-CAC should be dismissed with prejudice.

20          *First*, Plaintiffs' Complaint – which is predicated on allegations of *foreign* price-fixing

21  conduct – fails for lack of subject matter jurisdiction.    Because Plaintiffs have not set forth

22  any factual allegations in their Complaint to support the assertion that the alleged foreign

23  conspiracy had the requisite anticompetitive effects on the United States market (*i.e.*, a "direct,

24  substantial and reasonably foreseeable" anticompetitive effect on domestic commerce), their

25  federal antitrust claim for injunctive relief must be dismissed under the "Foreign Trade

26  Antitrust Improvements Act of 1982" ("FTAIA").

27

28  MDL NO. 1917                                      DEFENDANTS' JOINT NOTICE OF MOTION
                                                     AND MOTION TO DISMISS THE IP-CAC

1    Moreover, under both the Commerce Clause and the Supremacy Clause of the U.S.

2 Constitution, Plaintiffs' state law claims, which are also directed at the same alleged foreign

3 conduct, also fail for lack of subject matter jurisdiction.    Pursuant to this constitutional

4 framework, Plaintiffs may not use state antitrust or consumer protection laws to attempt to

5 regulate alleged foreign activities which Congress has determined to be beyond the

6 jurisdictional reach of federal law.    Thus, because the FTAIA does not afford subject matter

7 jurisdiction with respect to Plaintiffs' federal antitrust claim, Plaintiffs may not use state law

8 to attempt an end-run around the federal government's affirmative authority to regulate

9 foreign commerce in a uniform way.

10    *Second*, Plaintiffs who have only purchased finished products containing CRTs – as

11 opposed to CRTs themselves – do not have antitrust standing to challenge the alleged

12 conspiracy to fix CRT prices under the principles articulated in *Associated General*

13 *Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519

14 (1983) ("*AGC*").    The *AGC* standing test applies to the claims asserted by Plaintiffs under

15 fourteen state antitrust statutes, two state consumer protection statutes, and the Sherman Act.

16 With respect to the "antitrust injury" requirement – which courts in this Circuit have

17 repeatedly stressed to be of "tremendous significance" – Plaintiffs have not and cannot claim

18 that they have been injured in a way that the antitrust laws were enacted to prevent.    As

19 claimed purchasers of finished consumer products, such as television sets and computer

20 monitors, rather than of the allegedly price-fixed product, CRTs, Plaintiffs cannot allege to be

21 participants in the allegedly restrained *CRT* market, and they thus cannot satisfy the Ninth

22 Circuit's "market participation" requirement for antitrust injury.    The remaining factors of

23 *AGC* – which focus on the remoteness of the purported injury – also require the conclusion

24 that Plaintiffs do not have antitrust standing here.    Because Plaintiffs' alleged injury

25 occurred only after the CRTs were channeled through multiple layers of manufacturing,

26 distribution and retail outlets, and only after the CRTs were combined with other component

27 parts to create the finished products ultimately purchased by Plaintiffs, Plaintiffs cannot claim

28 

DEFENDANTS' JOINT NOTICE OF MOTION
AND MOTION TO DISMISS THE IP-CAC

1   that their alleged injury was anything but remote, speculative and unmanageably complex,

2   with the attendant risk that any recovery would be unreasonably difficult, if not impossible, to

3   prove, as well as duplicative.

4    *Third*, even assuming that Plaintiffs could establish antitrust standing, they could not

5   recover damages in three states for purchases that predate those states' repeal of the restriction

6   on indirect purchaser actions set forth in *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), as

7   those states' "repealer statutes" cannot be applied retroactively.    Thus, Plaintiffs' claims in

8   Nebraska, Nevada and Hawaii must be limited to purchases made only *after* the date that the

9   repealer statute went into effect (*i.e.*, July 20, 2002, October 1, 1999, and June 25, 2002,

10   respectively).

11    *Fourth*, Plaintiffs have failed to allege the necessary elements to state a claim for relief

12   under the consumer protection statutes of New York, Massachusetts, Maine, and Hawaii.

13    *Fifth*, Plaintiffs' unjust enrichment claims fail on numerous grounds.    With respect to

14   the common law of Michigan, New York and Kansas, Plaintiffs, as indirect purchasers, do not

15   and cannot allege that they have conferred a benefit to defendants, as is required in those

16   states.    Moreover, Plaintiffs cannot use the equitable remedy of unjust enrichment to recover

17   damages in states that categorically bar Plaintiffs' antitrust claims (such as Massachusetts and

18   Rhode Island), or in the fourteen states that would apply *AGC* standing principles to bar

19   Plaintiffs' antitrust claims.

20    *Sixth*, Plaintiffs may not recover for injuries caused by conduct which occurred outside

21   of the applicable state statute of limitations, which range from three to six years.    These

22   statutes of limitation may not be tolled because Plaintiffs have not alleged the required

23   elements of fraudulent concealment with the required degree of specificity.    Plaintiffs have

24   not alleged "affirmative fraudulent conduct" outside the scope of the alleged conspiracy itself.

25   Nor have Plaintiffs alleged "constructive knowledge" of purported facts relevant to their

26   claims, or the required "due diligence" necessary to avoid a statute of limitations defense.

27

28   MDL NO. 1917             DEFENDANTS' JOINT NOTICE OF MOTION
                     AND MOTION TO DISMISS THE IP-CAC

1     *Finally*, a number of individual Defendants have concurrently filed briefs in support of

2     their individual motions to dismiss pursuant to *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544

3     (2007).   Pursuant to this Court's directive to address Defendants' joint position regarding

4     *Twombly*, Defendants incorporate by reference the applicable pleading standard governing

5     Plaintiffs' claims under *Twombly* and its progeny, as set forth in Section IV in the Joint

6     Motion to Dismiss Direct Purchaser Plaintiffs' Consolidated Amended Complaint ("Joint

7     Motion to Dismiss the DP-CAC").   Because Plaintiffs have failed to include sufficient

8     factual allegations to sustain an antitrust conspiracy claim with respect to those Defendants

9     who have raised the *Twombl*y defense, such claims must also be dismissed.

10                              **FACTUAL BACKGROUND**

11         The named Plaintiffs in this purported class action are 29 individuals, and one

12    corporation, who have allegedly "indirectly purchased [what Plaintiffs call] 'CRT Products.'"

13    IP-CAC, ¶¶ 19-49.   As stated above, the term "CRT Products" is an artificial instrument of

14    confusion created by Plaintiffs out of whole cloth.   Plaintiffs expansively define "CRT

15    Products" to blur the distinctions between cathode ray tubes ("CRTs") – which are one of

16    numerous components used in manufacturing finished products such as television sets and

17    computer monitors – and the finished products themselves.   *Id.* at ¶¶ 1, 15.   In fact, no less

18    than four distinct products appear to be included under this catch-all "CRT Products"

19    definition: (1) color display tubes ("CDTs"), which are the internal tubes used in color

20    computer monitors; (2) color picture tubes ("CPTs"), which are the internal tubes used in

21    color televisions; (3) the finished products containing CDTs (*i.e.*, color computer monitors);

22    and (4) the finished products containing CPTs (*i.e.*, color televisions).   *Id.* at ¶¶ 13-15.   The

23    IP-CAC, however, is clear on its face that the alleged conspiracy involved only CRTs, *not*

24    finished products containing CRTs.   *Id.* at ¶¶ 152, 154, 155, 198, and 204.   There are

25    simply no allegations that Defendants conspired to fix the prices of the finished products

26    containing CRTs, such as televisions and computer monitors, that Plaintiffs claim to have

27    bought.

28    MDL NO. 1917                                    DEFENDANTS' JOINT NOTICE OF MOTION
                                                      AND MOTION TO DISMISS THE IP-CAC

1    Plaintiffs allege that Defendants – together with various unidentified co-conspirators

2   (*id.* at ¶ 110) – have conspired to inflate the prices for CRTs, despite the fact that many

3   Defendants did not manufacture or sell CRTs during the 12-year time period purportedly at

4   issue.   Plaintiffs' conclusory allegations seek to sweep together all "Defendants" as a

5   monolithic entity.   *See id.* at ¶ 109.   Indeed, Plaintiffs fail to delineate between foreign and

6   domestic entities,[1] refuse to recognize their creation or termination, and instead assert by rote,

7   without factual support, that all of the *49* named Defendants, including entities that have since

8   been dropped from the Complaint,[2] "manufactured, marketed, sold and/or distributed 'CRT

9   Products' . . . to customers throughout the United States."   *Id.* at ¶¶ 50-108.   With respect to

10   the few U.S. Defendants that are named in the IP-CAC, they are not alleged to have attended

11   any alleged conspiratorial meetings – whether in the U.S. or abroad.   Rather, Plaintiffs assert

12   that U.S. Defendants were "represented" at the purported anticompetitive meetings and were

13   "part[ies] to the agreements entered at them" (*id.* at ¶¶ 167, 171, 174, 178, 180, and 182),

14   because the individual meeting participants allegedly "entered into agreements on behalf of,

15   and reported these meetings and discussions to, their respective corporate families."   *Id.* at ¶

16   188.   However, Plaintiffs provide absolutely no *factual* allegations detailing these purported

17   relationships and arrangements.   *Id.*

18    Moreover, the purported conduct in furtherance of the alleged CRT conspiracy took

19   place *outside* of the United States.   Plaintiffs' allegations are aimed at alleged foreign

20   agreements to fix the overseas prices of CRTs sold to foreign purchasers in foreign markets.

21

22   [1] 33 of the 46 named Defendants are foreign entities.   *See* IP-CAC, ¶¶ 50, 52, 54, 58, 59, 61,
23   62, 64, 66-70, 72, 78, 80, 83, 85-88, 91-92, 94, 97, 98, 100-102, 104-107.   The few U.S.
     entities that are named are subsidiaries of foreign parents who appear to have been named
24   solely because they make and/or sell finished televisions or computer monitors that contained
     a CRT component.

25   [2] After the filing of the IP-CAC, Plaintiffs agreed to drop Philips Consumer Electronics Co.,
     Philips Electronics Industries Ltd., Toshiba America Consumer Products, Inc., Toshiba
26   Display Devices (Thailand) Company, Ltd., Panasonic Consumer Electronics Co. and
     Matsushita Electronic Corporation (Malaysia) Shn. Bhd. from the IP-CAC.   *See* Docket
27   Numbers 457-459.

28                                DEFENDANTS' JOINT NOTICE OF MOTION
                                              AND MOTION TO DISMISS THE IP-CAC

1    *Id.* at ¶¶ 141-144.   Not one of these purported meetings is alleged to have taken place in the

2    U.S.   Rather, Plaintiffs allege that such meetings occurred in Taiwan, Korea, South Korea,

3    Thailand, Japan, Malaysia, Indonesia, Singapore, China, and "various" European countries.

4    *See*, *e.g.*, *id.* at ¶¶ 141, 148, 150.

5           Similarly, there are no allegations of foreign meetings among competitors at which

6    prices in the United States for either CRTs or finished products containing CRTs were

7    discussed or fixed.   Nor do Plaintiffs allege that any of the U.S. Defendants participated in

8    any such foreign meetings.   *Id.* at ¶¶ 167, 169, 171, 174, 178, 180 and 182.   Rather, the

9    Complaint's allegations all concern meetings in foreign locales which purportedly targeted an

10   amorphous and undefined world market.   At bottom, there are simply no *factual* allegations

11   in the Complaint to support a claim that prices were fixed for the sale of CRTs, or finished

12   products containing CRTs, in the United States.   *Id.* at ¶¶ 4, 141-188, 198, 204, 206-213.

13   Indeed, the only specific allegations of price effects as a result of the purported conspiracy are

14   in connection with foreign markets.   *See*, *e.g.*, *id.* at ¶¶ 156, 161, 162.   This is devastating to

15   Plaintiffs' claims, as Plaintiffs claim to have purchased finished televisions or computer

16   monitors in the United States.   *Id.* at ¶¶ 19-49.

17                                    **LEGAL ARGUMENT**

18   **I.   PLAINTIFFS' CLAIMS MUST BE DISMISSED FOR LACK OF SUBJECT**
19        **MATTER JURISDICTION UNDER THE FTAIA AND UNDER THE**
         **COMMERCE AND SUPREMACY CLAUSES OF THE CONSTITUTION**

20          As demonstrated in Defendants' Joint Motion to Dismiss the DP-CAC, the federal

21   antitrust claims asserted by the Direct Purchaser Plaintiffs, directed at alleged anticompetitive

22   agreements with respect to overseas CRT sales to foreign purchasers, cannot state a claim for

23   subject matter jurisdiction under the Foreign Trade Antitrust Improvements Act of 1982, 15

24   U.S.C. § 6a ("FTAIA").[3]   For the same reason, the federal antitrust claim for injunctive

25   relief asserted by Plaintiffs here also cannot pass the FTAIA jurisdictional test.   As shown

26   _____

27   [3]   *See* Joint Motion to Dismiss the DP-CAC, § I.

below, Plaintiffs' claims are based on virtually identical allegations of foreign price-fixing conduct as the Direct Purchaser claims, and thus are too vague, indirect and attenuated in their United States "effects" allegations to meet the FTAIA requirement that the alleged foreign conduct have "direct, substantial, and reasonably foreseeable" anticompetitive effects on domestic commerce.   *See* Joint Motion to Dismiss the DP-CAC, § I.A-B.

Once the Court concludes that there is no federal antitrust subject matter jurisdiction under the FTAIA, the state antitrust and similar claims asserted by Plaintiffs under the laws of twenty-two different states must also be dismissed.   Applying state antitrust or similar laws to overseas conduct would intrude upon the supreme power, under the Constitution, of the federal government to regulate foreign commerce, as well as the established federal policy requiring uniform application of United States laws in this area.   Both the Commerce Clause and the Supremacy Clause of the United States Constitution preclude the states from applying their antitrust or similar laws to foreign commerce in a manner inconsistent with the FTAIA.   Further, the state laws themselves do not provide for their application to overseas conduct beyond the jurisdictional scope of their federal antitrust counterparts.

To withstand a motion to dismiss for lack of subject matter jurisdiction on the face of the complaint, the claims must "raise a right to relief above the speculative level" and allege "enough facts to state a claim to relief that is plausible on its face."   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).   Mere "labels and conclusions" are insufficient. *Id.* at 555; *Animal Science Products, Inc. v. China National Metals & Minerals Import & Export Corp.*, 596 F.Supp.2d 842, 851 (D.N.J. 2008) (applying the *Twombly* standard to a motion to dismiss for lack of subject matter jurisdiction under the FTAIA).   For the reasons set forth in the Joint Motion to Dismiss the DP-CAC, as well as those set forth below, Plaintiffs' federal and state claims must be dismissed.

Even if, however, the Court were to conclude that Plaintiffs' allegations were sufficient to support a claim of price fixing with respect to the sale of CRTs and finished products containing CRTs in the United States – which they clearly are not – it should still

dismiss all claims in the Complaint directed at foreign anticompetitive conduct, and strike all allegations of the Complaint, pursuant to Rule 12(f), which concern alleged agreements relating to the sale of CRTs outside the United States, including, but not limited to, ¶¶ 4, 141-188, 198, 204, 206-213.

> **A.** **Plaintiffs Have Failed To Allege Sufficient Facts To Support A Claim That The Alleged Foreign Anticompetitive Conduct Relating To Overseas CRT Sales Had A "Direct, Substantial, And Reasonably Foreseeable" Anticompetitive Effect On The Sale Of CRTs, Or Finished Products Containing CRTs, In The United States**

The IP-CAC, like the DP-CAC, is directed at alleged foreign agreements to fix the overseas prices of CRTs sold to foreign purchasers.   *See*, *e.g.*, IP-CAC, ¶¶ 141-144.   There are no allegations of meetings among competitors in the United States and no allegations of foreign meetings among competitors at which prices in the United States for either CRTs or finished products containing CRTs were discussed or fixed.   Instead, the Complaint is "infused with statements unambiguously indicating that Defendants' allegedly illegal combination activities took place" in foreign locales and targeted an amorphous world market, without any specific factual allegation to support a claim that prices were fixed for the sale of finished products containing CRTs in the United States.[4]   *See Animal Science*, 596 F. Supp. 2d 842 at 869.   But such broad and amorphous allegations of a global conspiracy are not sufficient to state a claim that meets the jurisdictional test of the FTAIA.   *See*, *e.g.*, *Sun Microsystems, Inc. v. Hynix Semiconductor, Inc.*, No. C-06-1665 PJH, 2007 WL 1056783 *4-5, (N.D. Cal. Apr. 5, 2007) (finding that plaintiffs' vague and conclusory allegations "made it impossible to specifically identify the nature and range of claims based on [the product] purchased here, or abroad" under the FTAIA); *Dee-K Enter. Inc. v. Heveafil Sdn. Bhd*, 299 F.3d 281, 295 (4th Cir. 2002) (affirming judgment that conspiracy did not have significant U.S. effects where "the bulk of the conduct related to the global conspiracy . . . occurred abroad").

---

[4] *See* IP-CAC, ¶¶ 4, 141-188, 198, 204, 206-213.

DEFENDANTS' JOINT NOTICE OF MOTION
AND MOTION TO DISMISS THE IP-CAC

1    Virtually all of the Plaintiffs claim to have purchased "CRT Products" – *i.e.*, finished

2    televisions or computer monitors – not CRTs, in the United States.   *See* IP-CAC, ¶¶ 19-49.

3    This is fatal from a jurisdictional standpoint because there are no allegations in the Complaint

4    capable of supporting a claim that Defendants ever agreed to fix the United States prices or

5    production of televisions or monitors.   Instead, it is apparently the theory of Plaintiffs that

6    the prices for these finished products in the United States were "affected" because the CRTs,

7    which were inputs in those end products, allegedly had their prices fixed in overseas sales to

8    overseas purchasers, who, in turn, manufactured finished products and exported some of those

9    products to the United States.   *Id.* at ¶¶ 9-12, 19-107, 113-14, 116, 162, 191, 200, 222,

10   246-48, 249-51, 255-83.   Such allegations of a "downstream" market effect in the United

11   States are not capable of supporting a jurisdictional claim under the FTAIA.   Indeed, "[t]he

12   FTAIA explicitly bars antitrust actions alleging restraints in foreign markets for inputs . . .

13   that are used abroad to manufacture downstream products . . . that may later be imported into

14   the United States."   *See United Phosphorous, Ltd. v. Angus Chemical Co.*, 131 F. Supp. 2d

15   1003, 1009, 1014 (N.D. Ill. 2001) (noting that the domestic effects, if any, of such inputs

16   "would obviously not be 'direct,' much less 'substantial' and 'reasonably foreseeable'").

17   The type of "chain of effects" theory alleged by Plaintiffs is simply too speculative and

18   indirect to support the required jurisdictional nexus with the United States.   *See In re Intel*

19   *Microprocessor Antitrust Litig.*, 452 F.Supp.2d 555, 560 (D. Del. 2006) ("*Intel I*"); *United*

20   *States v. LSL Biotechnologies*, 379 F.3d 672, 680 (9th Cir. 2004).

21    In short, Plaintiffs' Complaint fails to allege facts to support any claim of an

22   anticompetitive agreement directed at the sale of CRTs or products containing CRTs in the

23   United States.   Thus, their federal antitrust claim for injunctive relief must be dismissed

24   under the FTAIA.

25

26

27

28   MDL NO. 1917                                    DEFENDANTS' JOINT NOTICE OF MOTION
                                                AND MOTION TO DISMISS THE IP-CAC

**B.**      **Plaintiffs' State Law Claims Must Also Be Dismissed Because Applying Such State Laws to Foreign Commerce In a Manner Inconsistent with the FTAIA Would Violate the Commerce and Supremacy Clauses of the Constitution**

The same FTAIA jurisdictional defect that dooms Plaintiffs' federal antitrust claim also precludes their state law claims against alleged foreign agreements fixing the overseas prices of CRTs.    As explained by one district court, "Congress' intent would be subverted if state antitrust laws were interpreted to reach conduct which the federal law could not."    *In re Intel Microprocessor Antitrust Litig.*, 476 F. Supp. 2d 452, 457 (D. Del. 2007) ("*Intel II*").

**1.**      **The FTAIA Is Intended To Establish A Uniform National Policy Limiting The Reach Of United States Antitrust Laws To Foreign Conduct And To Promote Principles Of International Comity**

The FTAIA was adopted by Congress to clarify and limit the interaction between U.S. antitrust laws and foreign commerce.    Through the FTAIA, Congress sought "to formulate a standard to be applied uniformly," thus "providing more definite touchstones to guide the parties and the courts."    H.R. Rep. 97-686 at 6 (1982), *reprinted in* 1982 U.S.C.C.A.N. at 2491; *see also id.* 9 ("the ultimate purpose of this legislation is to promote certainty in assessing the applicability of American antitrust law to international business transactions and proposed transactions").    Indeed, Congress enacted the FTAIA to establish "[a] clear benchmark . . . for businessmen, attorneys and judges as well as our trading partners" (*id.* at 2-3), acknowledging that "no legitimate purpose is served by perpetuating uncertainty on this fundamental question."    *Id.* at 6.

The "clear benchmark" established by Congress is the "direct, substantial, and reasonably foreseeable" effects test set forth in the FTAIA.    *See also*, *e.g.*, *F. Hoffman-LaRoche v. Empagran S.A.*, 542 U.S. 155, 161 (2004) ("The FTAIA seeks to make clear to American exporters (and to firms doing business abroad) that the Sherman Act does not prevent them from entering into business arrangements (say, joint-selling arrangements), however anticompetitive, as long as those arrangements adversely affect only foreign markets"); *LSL Biotechs.*, 379 F.3d at 678 (Congress enacted the FTAIA to resolve

DEFENDANTS' JOINT NOTICE OF MOTION
AND MOTION TO DISMISS THE IP-CAC

uncertainty regarding the reach of U.S. antitrust laws to foreign conduct); *see also In re DRAM Antitrust Litig.*, 546 F.3d 981, 986 (9th Cir. 2008).[5]

In addition to providing a clear benchmark restricting the application of U.S. antitrust laws to foreign commerce, Congress also intended to implement principles of international comity through the FTAIA.   In the leading Supreme Court case applying the FTAIA, the Court explained that subjecting foreign corporations to U.S. antitrust lawsuits for anticompetitive conduct engaged in overseas markets would interfere with the authority of foreign governments to regulate their own markets.   *F. Hoffman-LaRoche*, 542 U.S. at 167-68.

Thus, both Congress and the Supreme Court have made clear that the FTAIA is intended to establish a single, uniform standard limiting the extraterritorial reach of U.S. antitrust laws to provide certainty to businesses and to further established principles of international comity.

### 2. The Commerce Clause Mandates That State Antitrust Laws Not Exceed The Uniform Jurisdictional Limits Established By The FTAIA

It has long been recognized that the Commerce Clause of the Constitution precludes state law antitrust regulation in an area where there is a need for a uniform national antitrust policy.   For example, in *Flood v. Kuhn*, 407 U.S. 258 (1972), after holding that the federal antitrust laws did not apply to the business of major league baseball, the Supreme Court also affirmed the dismissal of state antitrust law claims because "state antitrust regulation would conflict with federal policy" and because of the need for national uniformity in the subject at

---

[5]   *See also Intel II*, 476 F. Supp. 2d at 457; *Turicentro, S.A. v. American Airlines, Inc.*, 152 F. Supp. 2d 829, 832 (E.D. Pa. 2001), *aff'd* 303 F.3d 293 (3d Cir. 2002) ("The Act thus clarifies the application of United States antitrust laws to foreign conduct and specifically limits the application of such antitrust laws when non-import foreign commerce is involved"); *United Phosphorus, Ltd.*, 131 F. Supp. 2d at 1021 ("At its essence, the FTAIA concerns the very power of the Court to hear and decide antitrust claims.   Case law, and other authorities, uniformly agree that the FTAIA limits the 'jurisdiction' of American courts over antitrust claims involving foreign commerce").

---

MDL NO. 1917

DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS THE IP-CAC

1   issue – the regulation of baseball.  *Id.* at 284.   The Supreme Court thus agreed with the

2   appellate court that "the Commerce Clause precludes the application here of state antitrust

3   law" because of the need for a uniform national antitrust policy in this area.  *Id.*; *see also*

4   *Driscoll v. City of New York*, No. 82 Civ. 8497, 1987 WL 26799 *2 (S.D.N.Y. Nov. 25,

5   1987) (holding that where "antitrust damages actions against municipalities based on state

6   law would be an obstacle to the accomplishment of the goals of Congress," such state law

7   claims must be dismissed); *Partee v. San Diego Chargers Football Co.*, 34 Cal.3d 378, 385

8   (1983) (application of California antitrust law "would be in conflict with the commerce

9   clause" where the need for "national uniformity . . . outweighs the state interests in applying

10  state antitrust law").

11         This principle of Commerce Clause pre-emption applies with even greater force in

12  the area of Foreign Commerce, where Congress is given the paramount "Power To . . .

13  regulate Commerce with foreign Nations . . . ."   U.S. Const. art. I, §8, cl. 3.   The Supreme

14  Court has recognized that "foreign commerce is pre-eminently a matter of national concern."

15  *Japan Line, Ltd. v. County of Los Angeles*, 441 U.S. 434, 448 (1979).   As a result, there is a

16  heightened need to make certain that state laws are not being applied to foreign commerce in

17  a manner that is inconsistent with federal policy.   *See Norfolk So. Corp. v. Oberly*, 822 F.2d

18  388, 404 (3rd Cir. 1987) ("The judicial rational underlying this elevated scrutiny [of state

19  laws implicating the Commerce Clause] is the need for uniformity among the several states

20  in regulating foreign trade") (alteration added); *Intel II*, 476 F. Supp. 2d at 457 (noting that

21  for foreign commerce issues, "it is important for the Federal Government to speak with a

22  single, unified voice").

23         Where state laws implicate foreign commerce and impair the ability of the United

24  States to speak with one voice, the application of such state laws is precluded by the

25  Commerce Clause.   *Japan Line*, 441 U.S. at 448 (holding that a state tax on goods

26  temporarily imported into the U.S. that did not comport with an international convention

27  entered into by the U.S. could "impair federal uniformity in an area where federal uniformity

28  MDL NO. 1917                                    DEFENDANTS' JOINT NOTICE OF MOTION
                                                   AND MOTION TO DISMISS THE IP-CAC
                              12

is essential"); *Nat'l Foreign Trade Council v. Natsios*, 181 F.3d 38 (1st Cir. 1999), *aff'd on other grounds sub. nom. Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363 (2000); *Gerling Global Reinsurance Corp. of America v. Quackenbush*, 2000 WL 777978 at *7 (E.D. Cal. June 9, 2000), *aff'd on other grounds sub. nom. American Ins. Ass'n v. Garamendi,* 539 U.S. 396 (2003).

Applying these fundamental principles, it is clear that state antitrust laws may not be asserted against alleged overseas agreements affecting foreign commerce where the jurisdictional requirements of the FTAIA are not met.  *See* 4A Rudolf Callmann, Louis Altman & Malla Pollack, *Callmann on Unfair Competition, Trademarks and Monopolies* § 27:30 (4th ed. 2005 & Supp. 2009).   In *Intel II*, for example, the court barred plaintiffs' state antitrust law claims, which were based on allegations of foreign anticompetitive conduct with the same "twists and turns" as the allegations made under federal antitrust law.   476 F. Supp. 2d at 456.   Specifically, the court held that "Congress has spoken under the FTAIA with the 'direct, substantial and reasonably foreseeable effects' test, and the Court is persuaded that Congress' intent would be subverted if state antitrust laws were interpreted to reach conduct which the federal law could not."   *Id.* at 457; *see also Amarel v. Connell*, 202 Cal. App. 3d 137, 150 (1988) (requiring that "the anticompetitive conduct in question has a direct, substantial and reasonably foreseeable effect within the state").[6]

### 3. The Supremacy Clause Also Mandates That State Antitrust Laws Comport With The FTAIA

The Supremacy Clause of the U.S. Constitution states that:

> This Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land; and the Judges in every State shall be

---

[6] Unlike the defendants in *Amarel*, defendants here do not argue that the Commerce Clause or the Supremacy Clause completely bars the application of state antitrust or consumer protection laws to foreign conduct.  Rather, defendants argue that to avoid constitutional infirmity, the application of state law to foreign commerce cannot exceed the jurisdictional limits specified by the FTAIA.

bound thereby, any Thing in the Constitution or Laws of
any State to the Contrary notwithstanding.

U.S. Const., art. VI, cl. 2.   Under the Supremacy Clause, "[w]hen Congress intends to
'occupy the field,' state law in that area is preempted."   *Crosby v. Nat'l Foreign Trade
Council*, 530 U.S. 363, 372 (2000); *see also California v. ARC America Corp.*, 490 U.S. 93,
100-01 (1989).

Although it is long settled that the Sherman Act is not intended to displace state law
antitrust schemes in their entirety, the Supremacy Clause nevertheless prohibits applying state
laws where "'under the circumstances of [a] particular case, [the challenged state law] stands
as an obstacle to the accomplishment and execution of the full purposes and objectives of
Congress.'"   *See Crosby*, 530 U.S. at 373 (internal citation omitted).   Permitting state
antitrust laws to reach foreign conduct that the FTAIA places beyond the purview of the
federal antitrust laws would create just such a conflict.   *See Intel II*, 476 F. Supp. 2d at
456-57; *see also Amarel*, 202 Cal. App. 3d at 150.

### C.   Applying Plaintiffs' State Law Claims In A Manner Inconsistent With The FTAIA Would Exceed The Intended Scope Of These Laws

In addition to being unconstitutional, applying Plaintiffs' state law claims to the
foreign conduct alleged in the IP-CAC would exceed the intended jurisdictional scope of
those laws.   Plaintiffs assert claims under the antitrust laws of seventeen states: Arizona,
California, Iowa, Kansas, Michigan, Minnesota, Mississippi, Nebraska, Nevada, New Mexico,
North Carolina, North Dakota, South Dakota, Tennessee, Vermont, West Virginia, and
Wisconsin.   *See* IP-CAC, ¶¶ 255-71.   In each of those states, either the legislature has
passed a "harmonization statute" or the courts have issued decisions indicating that the state
follows the federal antitrust laws and federal courts' interpretations thereof when applying its
own antitrust laws.[7]   Accordingly, because Plaintiffs' allegations are directed at alleged

---

[7]  **Arizona**: Ariz. Rev. Stat. Ann. § 44-1412 (2009); *Brooks Fiber Comm'n of Tucson, Inc. v.
GST Tucson Lightwave, Inc.*, 992 F. Supp. 1124, 1130 (D. Ariz. 1997); **California**: *Vinci v.
Waste Mgmt., Inc.*, 36 Cal. App. 4th 1811, 1814 n.1 (1995); *Metro-Goldwyn-Mayer Studios
Inc. v. Grokster, Ltd.*, 269 F. Supp. 2d 1213, 1224-1225 (C.D. Cal. 2003); **Iowa**: Iowa Code §
553.2 (2009); *Davies v. Genesis Med Ctr.*, 994 F. Supp. 1078, 1103 (S.D. Iowa 1998);

1  foreign anticompetitive agreements purportedly setting the prices or limiting the production of

2  CRTs sold to overseas purchasers, they are not actionable under either the Sherman Act or the

3  specific state antitrust laws asserted by Plaintiffs in this case which follow Sherman Act

4  principles.

5         Plaintiffs also assert claims under the consumer protection or unfair competition laws

6  of ten states: California, Florida, Hawaii, Massachusetts, Nebraska, New Mexico, New York,

7  North Carolina, Rhode Island, and Vermont.   *See* IP-CAC, ¶¶ 274-83.   These laws are

8  generally modeled after, and interpreted in a manner consistent with, the provisions of the

9  Federal Trade Commission Act ("FTCA"), 15 U.S.C. §§ 45-58.[8]   Just like the Sherman Act,

10 the extraterritorial scope of the FTCA to foreign commerce is strictly limited.   *See* 15 U.S.C.

11 § 45(a)(3)(A) (requiring that foreign conduct have a "direct, substantial, and reasonably

12 foreseeable effect" on domestic commerce).   Accordingly, Plaintiffs may not use these state

---

14 **Kansas**: *Orr v. Beamon*, 77 F. Supp. 2d 1208, 1211-1212 (D. Kan. 1999), *aff'd* 4 Fed. Appx.
647 (10th Cir. 2001); **Michigan**: Mich. Comp. Laws § 445.784; **Minnesota**: *Midwest
15 Commc'n, Inc. v. Minn. Twins, Inc.*, 779 F.2d 444, 454 (8th Cir. 1985); *Keating v. Philip
Morris, Inc.*, 417 N.W.2d 132, 136 (Minn. Ct. App. 1987); *State v. Duluth Bd. of Trade*, 121
16 N.W. 395, 399 (Minn. 1909); **Mississippi**: *Walker v. U-Haul Co. of Miss.*, 734 F.2d 1068,
1071 n.5 (5th Cir. 1984); **Nebraska**: Neb. Rev. Stat. § 59-829; **Nevada**: Nev. Rev. Stat. §
17 598A.050; **New Mexico**: N.M. Stat. § 57-1-15; **North Carolina**: *Rose v. Vulcan Materials
Co.*, 194 S.E.2d 521, 530 (N.C. 1973); **North Dakota**: *AG Acceptance Corp v. Glinz*, 684
18 N.W.2d 632, 638-40 (N.D. 2004); *Beckler v. Visa U.S.A., Inc.*, No. 09-04-C-00030, 2004 WL
2115144 *3 (N.D. Dist. Ct. Aug. 23, 2004); **South Dakota**: *Byre v. City of Chamberlain*, 362
19 N.W.2d 69, 74 (S.D. 1985); **Tennessee**: *Tenn. ex rel. Leech v. Levi Strauss & Co.*, No.
79-722-III, 1980 WL 4696 *2 n.2 (Tenn. Ch. Ct. Sept. 25, 1980); **Vermont**: *Fucile v. Visa
20 U.S.A., Inc.*, No. S1560-03 CNC, 2004 WL 3030037 *3 (Vt. Super. Dec. 27, 2004); **West
Virginia**: W.Va. Code § 47-18-16 (2008); *Gray v. Marshall County Bd. of Edu.*, 367 S.E.2d
21 751, 755 (W.Va. 1988); **Wisconsin**: *Ford Motor Co. v. Lyons*, 405 N.W.2d 354, 367 (Wis. Ct.
App. 1987).

22
23 [8]  **California**: *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 185
(1999); *Bowen v. Ziasun Technologies, Inc.*, 116 Cal. App. 4th 777, 788-89 (2004); **Florida**:
24 Fla. Stat. § 501.202(3);   **Hawaii**: Haw. Rev. Stat. § 480-2(b); **Massachusetts**: Mass. Gen.
Laws ch. 93A § 2(b); **Nebraska**: Neb. Rev. Stat. § 59-829; *Raad v. Wal-Mart Stores, Inc.*, 13
25 F. Supp. 2d 1003, 1010 n.1 (D. Neb. 1998); **New Mexico**: N.M. Stat. § 57-12-4; **New York**:
*State v. Colo. State Christian Coll. of Church of Inner Power, Inc.*, 346 N.Y.S.2d 482, 487
26 (N.Y. Sup. Ct. 1973); *People ex rel. Spitzer v. Applied Card Sys., Inc.*, 805 N.Y.S.2d 175, 178
(N.Y. App. Div. 2005); **North Carolina**: *Henderson v. U. S. Fid. & Guar. Co.*, 488 S.E.2d
27 234, 239 (N.C. 1997); **Rhode Island**: R.I. Gen. Laws § 6-13.1-3; **Vermont**: Vt. Stat. Ann. tit.
9, §§ 2451; 2453(b).

---

1   consumer protection or unfair competition laws to assert a claim against foreign agreements

2   which are beyond the jurisdiction of the FTCA.   *See Intel II*, 476 F. Supp. 2d at 457 (noting

3   that "numerous states turn to the FTCA for guidance in applying their consumer protection

4   law, and that the FTCA applies a standard substantially similar to that applied under the

5   FTAIA," leading to the conclusion that "Plaintiffs' state law claims are limited by the reach of

6   their applicable federal counterparts").

7          In sum, Plaintiffs have failed to state a claim for subject matter jurisdiction over

8   either their federal or state law claims.   Alternatively, to the extent this Court were to find

9   that there are any claims validly pled in the IP-CAC against alleged price fixing of products

10  containing CRTs sold in the United States – there are none – it should, at a minimum, hold

11  that Plaintiffs cannot pursue any claims against alleged agreements restricting competition in

12  the foreign sales or production of CRTs or finished products containing CRTs, and that all

13  such allegations are stricken from the Complaint.

14  **II.     PLAINTIFFS LACK ANTITRUST STANDING TO ASSERT CLAIMS FOR
            PURCHASES OF FINISHED PRODUCTS CONTAINING CRTS**

15

16         In addition to Plaintiffs' failure to state a claim for subject matter jurisdiction,

17  Plaintiffs who purchased products, such as television sets and computer monitors, that merely

18  incorporate CRTs – as opposed to CRTs standing alone[9] – have not and cannot satisfy the

19  requirements for antitrust standing.

20         **A.     The *Associated General Contractors* Test Governs Whether Plaintiffs Have
                  Antitrust Standing Under Most Of The State Laws Asserted And The
21                Sherman Act**

22         A failure to plead allegations sufficient to demonstrate antitrust standing under the

23  principles articulated in *Associated General Contractors of California v. California State*

24  *Council of Carpenters*, 459 U.S. 519, 537-544 (1983) ("*AGC*") is grounds for dismissal.[10]   *Id.*

25  _____

26  [9]   *See* IP-CAC, ¶¶ 15, 251.

27  [10]  Antitrust standing – a threshold requirement that every plaintiff must satisfy – is entirely
      distinct from and narrower than the standing requirements of Article III of the

28

1   at 521 (affirming grant of motion to dismiss); *see also Oregon Laborers-Employers Health &*

2   *Welfare Trust Fund v. Philip Morris*, 185 F.3d 957, 962-966 (9th Cir. 1999) (affirming grant of

3   judgment on the pleadings).   In *AGC*, the United States Supreme Court set forth a multi-factor

4   test to be used in determining antitrust standing.   *See* 459 U.S. at 537-544.   The Ninth Circuit

5   focuses upon the following five factors in determining antitrust standing under *AGC*: (1) the

6   nature of the plaintiff's alleged injury; that is, whether the injury is of the type the antitrust laws

7   were intended to forestall ("antitrust injury"); (2) the directness of the injury; (3) the speculative

8   measure of the harm; (4) the risk of duplicative recovery; and (5) the complexity in

9   apportioning damages.   *See Lucas Automotive Eng., Inc. v. Bridgestone/Firestone, Inc.*, 140

10  F.3d 1228, 1232 (9th Cir. 1998).   While no one factor is decisive to this inquiry, *R.C. Dick*

11  *Geothermal Corp. v. Thermogenics, Inc.*, 890 F.2d 139, 146 (9th Cir. 1989) (en banc), just *one*

12  factor found in favor of the defendants can constitute grounds to deny standing.   *In re DRAM*

13  *Antitrust Litig.*, 536 F.Supp.2d 1129, 1136 (N.D. Cal. 2008) ("*DRAM II*") ("A plaintiff may

14  only pursue an antitrust action if it can show antitrust injury"); *Toscano v. PGA Tour, Inc.*, 201

15  F.Supp.2d 1106, 1116 (E.D. Cal. 2002) ("the absence of antitrust injury is fatal").

16          Plaintiffs must also prove that they have antitrust standing under the principles

17  articulated in *AGC* as to most of their state law claims.[11]   *See, e.g.*, *In re DRAM Antitrust Litig.*,

18  516 F.Supp.2d 1072, 1088-89 (N.D. Cal. 2007) ("*DRAM I*") (applying the *AGC* test in

19  dismissing similar indirect purchaser claims under various state antitrust statutes).

20  _____

21  Constitution, and requires the court to determine "whether the plaintiff is a proper party to
    bring a private antitrust action."   *See AGC*, 459 U.S. at 535 n.31.   A determination of
22  antitrust standing centers on the relationship between a given plaintiff's alleged harm and the
    alleged wrongdoing by the defendants.   *Id.* at 535.

23
24  [11]   Although *AGC* addressed antitrust standing in the context of the federal antitrust laws,
    many states, including states that have "repealed" the absolute bar on indirect purchaser
    lawsuits set forth in *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), have applied the *AGC*
25  factors to claims brought under their state antitrust statutes.   Thus, even in "*Illinois Brick*
    repealer" states, such as those at issue here, the mere fact that a party purports to be an
26  indirect purchaser plaintiff does not answer the "analytically distinct . . . question of which
    persons have sustained injuries too remote to give them standing to sue . . . ."   *Illinois Brick*,
27  431 U.S. at 728 n. 7.

28                           DEFENDANTS' JOINT NOTICE OF MOTION
                                            AND MOTION TO DISMISS THE IP-CAC

Specifically, Plaintiffs' claims are subject to an *AGC* standing inquiry under the antitrust laws of fourteen states asserted in the IP-CAC.[12]   Courts in nine of these states – California, Iowa, Kansas, Michigan, Nebraska, North Dakota, South Dakota, Vermont, and Wisconsin – have applied *AGC* in determining antitrust standing under their state laws.[13]   In addition, four other states – Arizona, Nevada, New Mexico, and West Virginia – have "harmonization" provisions requiring that their antitrust statutes be governed by federal law,[14] and the state Supreme Court of a fifth state, Mississippi, has held that federal law should be used in interpreting its state

---

[12]  Defendants seek dismissal on antitrust standing grounds of Plaintiffs' claims under the antitrust laws of Arizona, California, Iowa, Kansas, Michigan, Mississippi, Nebraska, Nevada, New Mexico, North Dakota, Vermont, West Virginia, and Wisconsin.   *See* IP-CAC at ¶¶ 255-259; 261-264; 266-267; 269-271.   Defendants do not challenge Plaintiffs' claims brought in Minnesota, North Carolina, and Tennessee with respect to antitrust standing. In addition, Defendants also seek dismissal of Plaintiffs' claims under the consumer protection laws of Nebraska and New York for lack of standing (*id.* at ¶¶ 278, 280).   *See Kanne v. Visa U.S.A.. Inc.*, 723 N.W.2d 293, 301 (Neb. 2006) ("the standing requirements for an antitrust claim under the Consumer Protection Act should be the same as for an antitrust claim under the Junkin Act"); *State ex rel. Spitzer v. Daicel Chem. Indus.. Ltd.*, 42 A.D.3d 301, 304 (N.Y. App. Div. 2007) (standing under New York's Gen. Bus. Law § 349 lacking since indirect purchasers' claims were too remote).

[13]  **California:** *See Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 987 (9th Cir. 2000); *Vinci v. Waste Mgmt., Inc.*, 36 Cal.App.4th 1811, 1814 (1995); **Iowa:** *See Southard v. Visa U.S.A., Inc.*, 734 N.W.2d 192, 198-99 (Iowa 2007); **Kansas:** *See Wrobel v. Avery Dennison Corp.*, No. 05-CV-1296 (Ks. Dist. Ct., Feb. 1, 2005); *see also Orr*, 77 F.Supp.2d at 1211-12 (denying antitrust standing under *AGC* principles, as set forth in *Sharp v. United Airlines, Inc.*, 967 F.2d 404, 406-07 (10th Cir. 1992); **Michigan:** *See Stark v. Visa U.S.A., Inc.*, No. 03-055030-CZ, 2004 WL 1879003 *2-4 (Mich. Cir. Ct. July 23, 2004); **Nebraska:** *See Kanne*, 723 N.W.2d at 298-301; **North Dakota:** *See Beckler v. Visa U.S.A., Inc.*, 09-04-C-00030, 2004 WL 2475100, *4 (N.D. Dist. Ct. Sept. 21, 2004); **South Dakota:** *See Cornelison v. Visa U.S.A., Inc.*, No. 03-1350 (S.D. Cir. Ct. Sep. 29, 2004) (*See* Request for Judicial Notice and Declaration of David L. Yohai ("RJN"), filed concurrently herewith, at Exhibit ("Ex.") A); **Vermont:** *See Fucile*, 2004 WL 3030037 at *3; **Wisconsin:** *See Strang v. Visa U.S.A., Inc.*, No. 03-CV-011323, 2005 WL 1403769, *3 n.7 (Wis. Cir. Ct. Feb. 8, 2005).

[14]  **Arizona:** *See* Ariz. Rev. Stat. § 44-1412 (courts applying the Arizona Uniform State Antitrust Act "may use as a guide interpretations given by the federal courts to comparable federal antitrust statutes"); **Nevada:** Nev. Rev. Stat. § 598A.050 ("The provisions of this chapter shall be construed in harmony with prevailing judicial interpretations of the federal antitrust statutes"); **New Mexico:** *See* N.M. Stat. Ann. § 57-1-15 ("the Antitrust Act shall be construed in harmony with judicial interpretations of the federal antitrust laws"); *see also Romero v. Philip Morris, Inc.*, 137 N.M. 229, 232 (N.M. Ct. App. 2005) ("We interpret the Antitrust Act in harmony with federal antitrust laws when. as here. we have no New Mexico authority on point to guide us"); **West Virginia:** W. Va. Code § 47-18-16 ("This article shall be construed liberally and in harmony with ruling judicial interpretations of comparable federal antitrust statutes").

---

MDL NO. 1917

DEFENDANTS' JOINT NOTICE OF MOTION
AND MOTION TO DISMISS THE IP-CAC

1   antitrust statute.[15]   Accordingly, Judge Hamilton held in the *DRAM* MDL Antitrust Litigation,

2   after a thoroughgoing review of state-specific caselaw and statutory authority, that the *AGC*

3   factors apply to Plaintiffs' claims in these 14 states.   *See DRAM I*, 516 F.Supp.2d at 1094-95;

4   *DRAM II*, 536 F.Supp.2d at 1135 n.2.[16]

5           Moreover, Plaintiffs must clearly demonstrate antitrust standing with respect to their

6   federal claim for injunctive relief.[17]   In *Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S.

7   104, 111-113 (1986), the Supreme Court held that plaintiffs seeking injunctive relief under

8   Section 16 of the Clayton Act, 15 U.S.C. § 26, must demonstrate, *inter alia*, that they have

9   suffered antitrust injury "of the type the antitrust laws were designed to prevent."   *See also*

10   *Lucas Automotive Eng., Inc.*, 140 F.3d at 1234-35 (citing *Cargill* as holding that antitrust injury

11   was a prerequisite to equitable relief).

12       **B.   Plaintiffs Who Purchased Finished Products Containing CRTs Cannot**
13       **Establish Antitrust Standing Under The *AGC* Test**

14           **1.   Plaintiffs Fail To Allege "Antitrust Injury" Because Plaintiffs Were**
              **Not Participants In The Allegedly Restrained Market**

15

16
_____

17   [15]  *See Harrah's Vicksburg Corp. v. Pennebaker*, 812 So.2d 163 (Miss. 2001).

18   [16]  While a few decisions in this District have been "reticent" to apply the *AGC* test on a
     state-by-state basis, those decisions did *not* pronounce a general rule that *AGC* does not apply
19   under state law.   *See In re Flash Memory Antitrust Litig.*, 2009 WL 1096602 * 13-15 (N.D.
     Cal. March 31, 2009) ("*Flash*"); *In re TFT-LCD Antitrust Litig.*, 586 F.Supp.2d 1109 (N.D.
20   Cal. 2008) ("*LCD I*").   In fact, *all* of the courts that have considered this issue have applied
     the *AGC* test to claims brought in Iowa and Nebraska, both at issue here, because the highest
21   courts in those states have applied the *AGC* test.   *See, e.g.*, *In re GPU Antitrust Litig.*, 540
     F.Supp.2d 1085, 1097 (N.D. Cal. 2007) ("*GPU II*").   Further, the *Flash* decision also applied
22   *AGC* to claims brought in California, which is also at issue here.   2009 WL 1096602 at *13.
     To the extent that these decisions have rejected a "blanket nationwide" application of *AGC*,
23   that is not a position argued by Defendants here.   *In re GPU Antitrust Litig.*, 527 F.Supp.2d
     1011, 1026 (N.D. Cal. 2007) ("*GPU I*").   Moreover, to the extent that some decisions have
24   indicated that in order for *AGC* to apply to state claims there must be a "clearer directive," it
     is entirely unclear why state law directly on point, or a state statutory provision that
25   "harmonizes" a state statute with federal caselaw, would not be sufficient.   Judge Hamilton's
     reasoned position – relying upon the courts and legislatures of the states themselves – is thus
26   the proper approach to this issue.   *DRAM I*, 516 F.Supp.2d at 1094-95.

27   [17]  *See* IP-CAC, ¶¶ 244-253 (alleging a claim for injunctive relief for violation of Section 1 of
     the Sherman Act, pursuant to Section 16 of the Clayton Act).

28

1    The first and "most critical" factor in the *AGC* inquiry is "antitrust injury" (*i.e.*,

2  whether the plaintiff's injury is "of the type which the antitrust statute was intended to

3  forestall").    *See Bhan v. NME Hospital, Inc.*, 772 F.2d 1467, 1470 n. 3 (9th Cir. 1985)

4  (whether the plaintiff has suffered an "antitrust injury" is of "tremendous significance");

5  *DRAM II*, 536 F.Supp.2d at 1141 (finding "antitrust injury" dispositive of *AGC* standing

6  inquiry).    To have suffered "antitrust injury," it is well-settled in the Ninth Circuit that in the

7  absence of a direct relationship with the defendants, a plaintiff must be a participant in the

8  allegedly restrained market.    *See Bhan*, 772 F.2d at 1470 ("the injured party [must] be a

9  participant in the *same* market as the alleged malefactors") (emphasis added); *Am. Ad. Mgmt.,*

10 *Inc. v. General Tel. Co.*, 190 F.3d 1051, 1057 (9th Cir. 1999) ("Antitrust injury requires the

11 plaintiff to have suffered its injury in the market where competition is being restrained.

12 Parties whose injuries, though flowing from that which makes the defendant's conduct

13 unlawful, are experienced in another market do not suffer antitrust injury"); *see also AGC*,

14 549 U.S. at 538 (antitrust laws are designed to "protect[] the economic freedom of

15 participants *in the relevant market*") (emphasis added).

16     Plaintiffs have not demonstrated "antitrust injury" because they do not even purport to

17 be participants in the allegedly restrained market for CRTs.    Plaintiffs' self-proclaimed

18 participation in the market for "television sets and computer monitors" *does not* mean that

19 they participated in the allegedly restrained CRT market.    *See IP-CAC*, ¶ 15.    Significantly,

20 Plaintiffs here have not alleged a conspiracy to fix the price of "television sets and computer

21 monitors."

22     Indeed, Plaintiffs have not and cannot allege anything but full competition in the

23 downstream, entirely different markets for finished products, and their attempt to conflate

24 these very different markets under the term "CRT Products" – which includes both

25 stand-alone CRTs and *finished* products that incorporate CRTs as just one component part – is

26 unavailing.    *Id.* at ¶¶ 10-12, 15.    As Plaintiffs concede, the market for finished televisions is

27 extremely competitive and subject to "vigorous price competition."    *Id. at* ¶ 227.    Moreover,

28

MDL NO. 1917                                    DEFENDANTS' JOINT NOTICE OF MOTION
                                                AND MOTION TO DISMISS THE IP-CAC
20

1  a host of factors influence consumers' television preferences, having nothing to do with

2  CRTs.

3        In the Ninth Circuit, participation in the relevant market under *AGC* requires that the

4  goods bought by the plaintiffs – here, finished products which incorporate CRTs – are

5  "reasonably interchangeable," or experience "cross-elasticity of demand," with the goods in

6  the market where competition has allegedly been restrained – here, stand-alone CRTs.   *See*,

7  *e.g.*, *Bhan*, 772 F.2d at 1470-1471; *DRAM II*, 536 F.Supp.2d at 1139-1141.    Plaintiffs do not

8  and cannot allege that CRTs are "reasonably interchangeable" with television sets and

9  computer monitors.    A television, for example, is obviously in a different market, with

10  different buyers and suppliers, than the market for the component CRT housed within it.    As

11  a matter of common sense, no consumer would reasonably view a CRT standing alone as a

12  replacement for a television set or a computer monitor.    Indeed, no consumer can use a CRT

13  itself to watch television or a video.    Thus, CRTs, on the one hand, and computer monitors

14  or televisions, on the other, are not functional equivalents of each other.

15        Plaintiffs also have not alleged a "cross-elasticity of demand" between CRTs and

16  television sets or computer monitors.    This is not surprising, as Plaintiffs cannot logically

17  posit that if prices for a finished computer monitor or television set became too expensive,

18  consumers would instead buy a stand-alone CRT.    Thus, it is clear that Plaintiffs here did not

19  participate in the allegedly constrained CRT market any more than they participated in the

20  markets for the numerous other component parts of a television or a computer monitor.

21  Rather, Plaintiffs are merely consumers in secondary markets that are "incidental" to the

22  "market for [the CRT] itself."    *See DRAM I*, 516 F.Supp.2d at 1091; *DRAM II*, 536

23  F.Supp.2d at 1136.

24        Simply put, Plaintiffs who purchased end-products which incorporate CRTs as one

25  component part are not "participants in the relevant market" (*i.e.*, the market for CRTs).   *See*,

26  *e.g.*, *Intergraph Corp. v. Intel Corp.*, 195 F.3d 1346, 1355 (Fed. Cir. 1999) (finding that a

27  manufacturer of graphics workstations did not compete in the market for microprocessors

28

---

MDL NO. 1917                                   DEFENDANTS' JOINT NOTICE OF MOTION
                                               AND MOTION TO DISMISS THE IP-CAC

1  incorporated within the workstations); *Barton & Pittinos, Inc. v. Smithkline Beecham Corp.*,

2  118 F.3d 178, 184 (3rd Cir. 1997) (Alito, J.) (marketer of vaccine was not a participant in the

3  market for the "package of marketing and distribution of the vaccine," because marketing

4  alone was not "reasonably interchangeable" with the package); *Meyer v. Qualcomm Inc.*, No.

5  08cv655 WQH, 2009 WL 539902 *7 (S.D. Cal. March 3, 2009) (dismissing indirect

6  purchaser plaintiff's Sherman Act Section One claim where allegedly restrained technology

7  was a component of product plaintiff purchased, and plaintiff failed to allege facts showing

8  that he participated in the relevant market); *Tessera, Inc. v. Micron Technology, Inc.*, 2005

9  WL 1661106 *2-3 (E.D. Tx. July 14, 2005) (licensor was not participant in the computer chip

10  market, where licensor provided one of the many component parts incorporated within the

11  computer chip).

12          The *DRAM* decisions from this District are particularly thoughtful and should control

13  here.[18]   In *DRAM*, Judge Hamilton rejected the claims of indirect purchasers of finished

14  computers and "other electronic equipment" which incorporated DRAM as a component part

15  on antitrust standing grounds.    Judge Hamilton found that the relevant states at issue would

16  apply the *AGC* test, and twice dismissed such claims under *AGC*, even after granting plaintiffs

17  leave to amend their complaint.    *DRAM I*, 516 F.Supp.2d at 1083-1093; *DRAM II*, 536

18  F.Supp.2d at 1135-1142.    In considering allegations that closely mirror those of the Plaintiffs

19  here, she found that plaintiffs who bought products containing DRAM chips purchased in a

20  _____

21  [18]  Although the *GPU* and *LCD* decisions in this District found that similar allegations
    "slightly favor standing" under this first factor of *AGC*, those decisions were couched as
    preliminary.    *See LCD I*, 586 F.Supp. at 1123 (noting that "it may be that indirect purchasers
22  have participated in an analytically distinct market for finished products," but finding
    plaintiffs' allegations "sufficient *at this stage*" to proceed) (emphasis added); *GPU II*, 540
23  F.Supp.2d at 1098.    Similarly, the court in the *Flash* case believed that the issue of market
    participation is "better suited to resolution upon a fuller record."    2009 WL 1096602 at *16.
24  As noted above, however, *AGC* was decided on the pleadings, and if Plaintiffs have not
    sufficiently alleged market participation *on the face of their Complaint*, their claims must be
25  rejected, notwithstanding the lack of a developed factual record.    Moreover, the *Flash* case is
    also factually distinguishable, as the court found that flash memory has a variety of
26  applications, including as a stand-alone item, and that there was "cross-elasticity" of demand
    between markets.    *Id.*    By contrast, CRTs have no such application standing alone, and
27  Plaintiffs here do not allege a "cross-elasticity" between markets.

1    "secondary market that is incidental to the primary price-fixed market," and thus could not

2    prove antitrust injury.[19]

3          Recognizing the deficiencies in their allegations, Plaintiffs attempt to obscure the

4    Ninth Circuit's standard for market participation by alleging that the markets for stand-alone

5    CRTs and televisions or computer monitors incorporating CRTs are somehow "inextricably

6    linked" because "the demand for CRTs is ultimately determined by purchasers of products

7    containing such products."   IP-CAC, ¶¶ 227, 239.   As an example of this alleged "link,"

8    Plaintiffs allege that Original Equipment Manufacturers of computer monitors and televisions

9    ("OEMs"), such as Dell or Sharp (¶ 224), "use component costs, *like the costs of CRTs*, as the

10   starting point for all price calculations . . . Thus, computer and television prices closely track

11   increases and decreases in component costs."   *Id.* at ¶ 228 (emphasis added).   These

12   conclusory allegations fail to support the claim of "market participation" that is required for

13   *AGC* standing.

14         Because the IP-CAC makes clear that Plaintiffs have no direct relationship with the

15   Defendants, Plaintiffs cannot rely on the reasoning in *Blue Shield v. McCready*, 457 U.S. 465,

16   483 (1982) and *Ostrofe v. H.S. Crocker Co., Inc.*, 740 F.2d 739, 744-747 (9th Cir. 1984) to

17   support their theory that the CRT market and television/computer monitor markets are

18   "inextricably intertwined."   *McCready* concerned a patient whose submitted insurance

19   claims for treatment were denied specifically because of allegedly anti-competitive conduct in

20   the relevant market.   Thus, her injury was, in fact, "inextricably intertwined" with the

21   alleged wrongdoing.   457 U.S. at 483.   Here, by contrast, Plaintiffs' allegations concern a

22   _____

23   [19] The "Visa credit card cases" are also instructive.   *See, e.g.*, *Stark*, 2004 WL 1879003 at
     *2; *Strang*, 2005 WL 1403769, at *4.   In these cases, the indirect purchasers were ultimate

24   consumers of various goods and services that they purchased from merchants who were
     harmed by Defendants' Section 1 "tying" conspiracy.   As noted by Judge Hamilton in

25   *DRAM I*, "although an artificially raised price had been passed down . . . the indirect
     purchasers were not participants in the actual market for credit card services, just for goods

26   sold by those merchants . . . . These factual scenarios are analogous to the situation before the
     court here."   516 F.Supp.2d at 1090-91 (citing *Stark*, 2004 WL 1879003 at *2; *Strang*, 2005

27   WL 1403769, at *4).

28

1   wholly different market altogether.    In *Ostrofe*, the plaintiff was an "essential participant in

2   the scheme to eliminate competition," which is not the case here. 740 F.2d at 745-46.

3   Moreover, as the Ninth Circuit has noted, *McReady* and *Ostrofe* concern only a "narrow

4   exception to the market participant requirement," and one that is inapplicable where Plaintiffs

5   are neither the "direct victims" of the alleged conspiracy, or the "actual means" by which the

6   alleged conspiracy is carried out.    *Am. Ad. Mgm't*, 190 F.3d at 1057 n. 5; *see also DRAM II*,

7   536 F.Supp.2d at 1140 ("neither *McReady* nor *Ostrofe* provide support" for Plaintiffs'

8   claims); *Steamfitters Local Union No. 420 Welfare Fund v. Phillip Morris, Inc.*, 171 F.3d 912,

9   926 n.8 (3d Cir. 1998) ("simple invocation of [the phrase 'inextricably intertwined'] will not

10   allow a plaintiff to avoid the fundamental requirement for antitrust standing . . . ."). Thus, as

11   in <u>DRAM II</u>, because Plaintiffs "do not allege either that they are direct victims of

12   defendants' alleged conspiracy, or that they were the necessary means by which defendants'

13   conspiracy was effectuated," Plaintiffs have not met and cannot meet the most significant of

14   the *AGC* factors – "antitrust injury."    *See* 536 F.Supp.2d at 1140-41.[20]

15                **2.    Plaintiffs Have Also Failed To Allege Facts Sufficient To Satisfy The**

16                              **"Remoteness" Factors Of *AGC***

17       While a showing of "antitrust injury" is necessary to establish standing under *AGC*, it is

18   not sufficient.    *See Cargill*, 479 U.S. at 110 n.5.    Here, Plaintiffs also fail to satisfy the

19

20

_____

21   [20]  Further, any contrary decision would be disastrous from a policy perspective, as it would
     "risk [] opening the floodgates to potential litigation."    536 F.Supp.2d at 1141.    As the

22   *DRAM II* Court opined:

23

24         In today's current business climate . . . nearly all markets that service one
           another can be said to be 'related' . . . If such is the standard for market

25         participation, it is difficult to imagine a scenario in which any two markets
           would not serve as the platform for a lawsuit . . . regardless whether the

26         ultimately injured plaintiffs themselves have tenuous ties with the alleged
           malefactors and even the allegedly restrained market itself.    *Id.*

27

28   MDL NO. 1917                                           DEFENDANTS' JOINT NOTICE OF MOTION
                                                            AND MOTION TO DISMISS THE IP-CAC

1    remaining factors of the *AGC* test, which focus on the "remoteness" of Plaintiffs' alleged

2    injury.   *See AGC*, 459 U.S. at 539-544.

3                        a.    **Plaintiffs' Alleged Injuries Were Indirect and Attenuated**

4         The *AGC* Court held that an assessment of the directness of any alleged injury requires

5    an analysis of the "chain of causation" between the alleged injury and the alleged restraint in

6    the market.   *AGC*, 459 U.S. at 540; *see also R.C. Dick Geothermal Corp.*, 890 F.2d at 147;

7    *DRAM I*, 516 F.Supp.2d at 1091.   "[V]aguely defined links" in the chain of causation are

8    insufficient to establish the directness of the injury.   *AGC*, 459 U.S. at 540.   Here, there is,

9    at best, an indirect and attenuated causal connection between Plaintiffs' alleged injuries and

10   Defendants' purported wrongdoing.   As Plaintiffs acknowledge, there are a variety of

11   different layers – including manufacturing, distribution and retail channels – that separate

12   Plaintiffs' allegations of injury from any alleged constraints in the CRT market.   *See, e.g.*,

13   IP-CAC, ¶ 224 (alleging that Plaintiffs purchase end-products which incorporate CRTs as one

14   component not from Defendants, but from manufacturers, such as non-parties Dell or Sharp,

15   or retailers, such as non-party Best Buy); ¶ 228 (alleging that manufacturers need to

16   determine "production costs" to in turn determine "component costs" – not limited to CRT

17   costs – which are themselves merely a "starting point" for calculating prices of the

18   end-product).

19        All of these channels inject multiple levels of uncertainty into the price ultimately paid

20   by the consumer for the downstream product, even if Plaintiffs could prove up an alleged

21   overcharge for one component therein.[21]   *See Meyer*, 2009 WL 539902 at *7 (the alleged

22   injury was too remote where the relevant technology was "only a component" of the product

23   at issue, "which is then passed on through the supply chain such that Plaintiff's injury also

24   must be disaggregated from a multitude of other manufacturing and component factors");

---

25   [21]  While Plaintiffs make the conclusory allegation that the price of CRTs is traceable (¶¶

26   231-232), they do not provide factual allegations concerning the traceable nature of the *price*
     of CRTs, other than merely alleging, without any supporting facts, that computer and TV

27   OEMs purportedly price their end-products on a "cost-plus" basis.

28                                      DEFENDANTS' JOINT NOTICE OF MOTION
                                                          AND MOTION TO DISMISS THE IP-CAC

1   *Lorenzo v. Qualcomm Inc.*, --- F.Supp.2d ----, No. 08cv2124 WQH, 2009 WL 537522 *7

2   (S.D. Cal. March 3, 2009) (same).    Moreover, because televisions and computer monitors

3   compete in entirely different markets, including against different brands, and, more recently,

4   different types of televisions and computer monitors, the unique forces particular to each of

5   *those* markets also influence the ultimate price of a television or computer monitor, injecting

6   yet more variables and uncertainty.    Plaintiffs' conclusory allegations of a "traceable"

7   pass-on are thus implausible on their face.[22]    *See, e.g.*, *DRAM I*, 516 F.Supp.2d at 1092 ("It

8   requires no leap of logic to conclude that each product in which DRAM is a component,

9   contains numerous other components, all of which *collectively* determine the final price

10  actually paid by plaintiffs for the final product") (emphasis in original); *Meyer*, 2009 WL

11  539902, at *7.[23]

12          b.    **Plaintiffs' Injury Claims Are Inherently Speculative**

13      As in *AGC*, Plaintiffs' claim "rests at bottom on some abstract conception or speculative

14  measure of harm."    459 U.S. at 543 (internal citations and quotations omitted).    Indeed, it

15  would be wholly speculative, if not impossible, to even attempt to assess how this disparate

16  group of Plaintiffs have been injured at all by the allegations set forth in the IP-CAC.    The

17  *DRAM I* court noted that the problem of speculative damages claims is particularly relevant

18  "in view of the fact that the plaintiffs in question purchased their DRAM in the form of a

19  

20  [22]  Plaintiffs' attempts to allege a "pass through" of the purported overcharge from the CRT

21  market to the computer and/or television markets come up woefully short.    See IP-CAC at ¶¶ 222-239.    Indeed, these allegations only emphasize the complexity of the manufacturing,

22  distribution, and retail marketing channels, and the numerous factors that may impact the price of the finished consumer products, all of which may vary significantly from a television

23  to a computer monitor.    It is no answer to cite a purported expert from an unrelated case to opine that an increase in the price of CRTs can impact the finished end-product.    *Id.* at ¶ 236.

24  Such "testimony," improper at the pleading stage in any event, does not make claims of injury any less speculative or damages any easier to prove.    *See A&M Supply Co. v. Microsoft*

25  *Corp.*, 654 N.W.2d 572, 603-604 (Mich. App. 2002) (finding plaintiffs' economic modeling insufficient to show that damages were not speculative).

26  [23]  *See also Stark*, 2004 WL 1879003, at *2 (merchants who purchased debit card services

27  from defendants suffered the direct impact of the alleged antitrust violation, while indirect purchaser plaintiffs' injuries were "derivative and second-hand").

28  

MDL NO. 1917                                              DEFENDANTS' JOINT NOTICE OF MOTION
                                                         AND MOTION TO DISMISS THE IP-CAC

1   component product."   516 F.Supp.2d at 1092.   That is because, as discussed above, there

2   are a variety of factors – such as the cost of *other* components that collectively make up a

3   computer monitor or television – that would have influenced the price that each plaintiff paid

4   for the end-product, especially a product as complex as a television.   As the IP-CAC itself

5   makes clear, CRTs – *at most* – account for 60% of the total cost of a computer monitor, and

6   *even less* for a television set, "because a television has more components than a computer

7   monitor, such as the tuner and speaker."   *See* IP-CAC, ¶ 229.   In such a case, "plaintiffs

8   who are in secondary markets in which they purchase the price-fixed product as a component,

9   would need to allege that the secondary market sellers themselves were in an oligopoly and

10  fixing prices, in order to demonstrate non-speculative damages."   *DRAM* I, 516 F.Supp.2d at

11  1092 (citing *Weaver v. Cabot Corp.*, 2004 WL 3406119 *1 (N.C. Sup. March 26, 2004)).[24]

12  Here, by contrast, Plaintiffs allege that "computer and TV OEMs and retailers of CRT

13  Products are all subject to *vigorous price competition . . . .*"   IP-CAC, ¶ 227 (emphasis

14  added).

15                  c.        **Plaintiffs' Injury Claims Would Be Unreasonably Complex**

16          The *AGC* Court recognized that a "strong interest" resides in "keeping the scope of

17  complex antitrust trials within judicially manageable limits."   459 U.S. at 543.   Specifically,

18  the Court observed "the risk of duplicate recoveries on the one hand, or the danger of complex

19  apportionment of damages on the other."   *Id.*   Indeed, any apportionment of damages in this

20  case would be "exceedingly complex," given that any alleged pass-through must be tracked

21  through distribution, manufacturing and retail channels.   *See Meyer*, 2009 WL 539902 at *7;

22  *Lorenzo*, 2009 WL 537522 at *7; *DRAM I*, 516 F.Supp.2d at 1092 (noting that damages in a

---

23

24  [24] In *Weaver*, the court was confronted with an indirect purchaser claim in which the plaintiff
    alleged that he had purchased tires that incorporated chemicals that had been price-fixed by

25  the defendants.   The court dismissed the complaint, noting that such a claim "would put this
    court in an impossible position of attempting to determine whether the alleged price-fixing by

26  an oligopoly of an ingredient used to make tires had anything to do with the price paid by the
    Plaintiff when he bought the tires . . . there would be no way for the Court to, in any fair or

27  just way, determine an amount the Plaintiff was damaged."   *Weaver*, 2004 WL 3406119 at
    *1.

28                                     DEFENDANTS' JOINT NOTICE OF MOTION
                                                                AND MOTION TO DISMISS THE IP-CAC

1  component case "would be difficult to apportion"); *see also GPU I*, 527 F.Supp.2d at 1026 n.

2  7 ("Further clouding the standing issue is that not all plaintiffs . . . purchased their computers

3  in the same way . . . . This has serious implications for the question of whether or not any

4  overcharges were passed on to the consumer").   A virtual multitude of factors further

5  complicate this analysis, including, for example, the difference in percentage of any illegal

6  overcharge that may have been passed on from one company to the next; the remote nature of

7  Plaintiffs' alleged injuries; the bargaining power of the parties; the effect of geographic

8  discrepancies on pricing; discounts and rebates offered by manufacturers and retailers; the

9  other costs and components in the manufacture of the derivative product; and the size of the

10  purported class.   *See AGC*, 459 U.S. at 545 n. 51 ("the task of disentangling overlapping

11  damages claims is not lightly to be imposed upon potential antitrust litigants, or upon the

12  judicial system"); *Knowles v. Visa U.S.A., Inc.*, No. Civ.A. CV-03-707, 2004 WL 2475284 *6

13  (Me. Super. Ct. Oct. 20, 2004) ("to determine what portion of any overcharge was passed on

14  by any given merchant, with respect to which products, and to which consumers is a task of

15  monumental uncertainty and complexity").

16        Each of these factors would require an exacting analysis of multiple levels of

17  manufacturing, distribution and retail chains as to each of the end-products which incorporate

18  CRTs.   Plaintiffs resort to misleading the Court by citing an incomplete passage from an

19  antitrust hornbook.   *See* IP-CAC, ¶ 234 (alleging that "[t]heoretically, one can calculate the

20  percentage of any overcharge . . . .") (citing *Federal Antitrust Policy, The Law of Competition

21  and its Practice* (1994) at 624).   Tellingly, Plaintiffs omit the very next sentence of that

22  treatise from the IP-CAC, which underscores the fatal flaw in Plaintiffs' claims:   "However,

23  the computation [of any overcharge] requires knowledge of the prevailing elasticities of

24  supply and demand, and obtaining that information *is beyond the technical competence of

25  courts*."   *Id.* (emphasis added).   Moreover, even the portion of this hornbook that *is* cited by

26  Plaintiffs undercuts their argument, as it notes that "in most cases," part of the alleged

27  overcharge will be absorbed throughout the distribution chain, further complicating the

28  _____

MDL NO. 1917                                          DEFENDANTS' JOINT NOTICE OF MOTION
                                                      AND MOTION TO DISMISS THE IP-CAC

1    traceability of the alleged pass-on.   *Id.* ("In most cases, [fabricators] will absorb part of these

2    increased costs themselves").

3             d.        **Plaintiffs' Damages Claims Are Likely to be Duplicative**

4             Finally, there is an acute risk of duplicative recoveries, as Plaintiffs in this action are

5    seeking damages arising from the same alleged wrongdoing that is at issue in the Direct

6    Purchaser Plaintiffs' complaint.   *See Stark*, 2004 WL 1879003, at *3; *Kanne*, 723 N.W.2d at

7    299.   As the Ninth Circuit has noted, "[t]he risk to be avoided under [the duplicative

8    recovery factor] is that potential plaintiffs may be in a 'position to assert conflicting claims to

9    a common fund . . . thereby creating the danger of multiple liability for the fund.'"   *Eagle v.

10   Star-Kist Foods, Inc.*, 812 F.2d 538, 542 (9th Cir. 1987) (ellipses in original) (quoting *AGC*,

11   459 U.S. at 544).

12            In sum, all of the *AGC* factors preclude a finding of antitrust standing for Plaintiffs.

13   The Court should therefore dismiss Plaintiffs' claims under Section 1 of the Sherman Act; the

14   antitrust laws of Arizona, California, Iowa, Kansas, Maine, Michigan, Mississippi, Nebraska,

15   Nevada, New Mexico, North Carolina, North Dakota, South Dakota, West Virginia and

16   Wisconsin; and the consumer protection laws of Nebraska and New York.

17   **III.     PLAINTIFFS ALSO CANNOT SUE UNDER THE STATUTES OF NEBRASKA,
             NEVADA OR HAWAII BASED ON PURCHASES PREDATING THOSE**
18   **        STATES' *ILLINOIS BRICK* REPEALER AMENDMENT**

19            With respect to three of the states at issue – Nebraska, Nevada and Hawaii – who

20   relatively recently repealed *Illinois Brick*'s absolute bar on damages claims brought by indirect

21   purchasers, even if Plaintiffs could prove antitrust standing, they cannot recover for any indirect

22   purchases made before the "repealer" statute became effective.

23            **A.       Nebraska**

24            Nebraska passed its *Illinois Brick* repealer statute in 2002.   L.B. 1278, 97th Leg., 2d

25   Sess. (Neb. 2002) (RJN Ex. B).   The repealer amendment was introduced to "permit indirect

26   parties, or parties within a distribution chain transacting business indirectly with a price-fixing

27

28   MDL NO. 1917                                           DEFENDANTS' JOINT NOTICE OF MOTION
                                                            AND MOTION TO DISMISS THE IP-CAC
                                        29

1   party, who have been harmed by an antitrust violation, a right to a remedy in Nebraska.

2   Currently in Nebraska, such indirect parties have no remedy."[25]   Before the repealer

3   amendment became effective, Nebraska law did not allow indirect purchasers to sue for

4   damages based on antitrust violations.   *Kanne*, 723 N.W.2d at 300.   In Nebraska, a

5   "legislative act operates only prospectively and not retrospectively unless the legislative intent

6   and purpose that it should operate retrospectively is clearly disclosed."   *Soukop v. Conagra,*

7   *Inc.*, 653 N.W.2d 655, 658 (Neb. 2002).   The repealer reveals no such intent, and the Court

8   should thus dismiss any claims under Nebraska's Junkin Act (Neb. Rev. Stat. § 59-801, *et seq.*)

9   or Consumer Protection Act (*Id.* at § 59-1601, *et seq.*) based on purchases made before July 20,

10   2002 (the date Nebraska's repealer became effective).[26]

11      **B.    Nevada**

12      Nevada passed its *Illinois Brick* repealer in 1999.   A.B. 108, 70th Sess. (Nev. 1999)

13   (RJN Ex. E).   The Nevada Legislature understood that it was changing then-existing law,

14   which did not allow for indirect purchaser lawsuits.   *See, e.g.*, Minutes of the Senate

15   Committee on Commerce and Labor, A.B. 108, 70th Sess. (Nev. 1999) (RJN Ex. F).

16      In Nevada, "[t]he general rule is that statutes are prospective only, unless it clearly,

17   strongly, and imperatively appears from the act itself that the legislature intended the statute to

18   be retrospective in its operation."   *Matter of the Estate of Thomas*, 998 P.2d 560, 562 (Nev.

19   2000).   Because the repealer amendment does not indicate any intent that it should be applied

20   retroactively to claims that accrued before its effective date, it may be applied only

21

22

23   [25]   Kermit A. Brashear, Introducer's Statement of Intent, L.B. 1278 (Neb. Feb. 27, 2002) (RJN
      Ex. C); *see also* Committee Statement, Committee on Judiciary, L.B. 1278 (Neb. Feb. 27,
24   2002) (RJN Ex. D) ("Currently, Nebraska law does not allow indirect parties within a
      distribution chain who are harmed through a business transaction by an antitrust violation the
25   ability to sue for damages.").

26   [26]   In Nebraska, absent an express provision to the contrary, non-emergency bills signed by
      the Governor become effective three calendar months after the end of the legislative session.
27   Neb. Const. Art. III, § 24.

28

1   prospectively, for conduct after Oct. 1, 1999.   *Ferrell v. Wyeth-Ayerst Labs., Inc.*, No.

2   1:01-cv-00447-SSB-TSH, at p. 26 (S.D. Ohio July 1, 2004) (RJN Ex. G).[27]

3          **C.     Hawaii**

4          Plaintiffs seek recovery under Hawaii's "Unfair Competition" statute, Haw. Rev. Stat. §

5   480-2.[28]   Before 2002, however, Hawaii did not allow private antitrust lawsuits for unfair

6   methods of competition.   *See Robert's Haw. School. Bus. Inc. v. Laupahoehoe Transp. Co.*

7   *Inc.*, 982 P.2d 853, 880-81 (Haw. 1999).   In 2002, the Hawaii Legislature amended the statute,

8   such that "[a]ny person may bring an action based on unfair methods of competition . . . ."

9   S.B. 1320, 21st Leg. (Haw. 2002) (RJN Ex. H); *see also* Haw. Rev. Stat. § 480-2(e).   In Hawaii,

10  "[i]t is an established rule that 'no law has any retrospective operation, unless otherwise

11  expressed or obviously intended.'"   *Clark v. Cassidy*, 636 P.2d 1344, 1346 (Haw. 1981); *see*

12  *also* Haw. Rev. Stat. § 1-3 ("No law has any retrospective operation, unless otherwise

13  expressed or obviously intended.").   Here, the Legislature expressly provided that the

14  amendment would not take effect until its approval (see S.B. 1320, 21st Leg. (Haw. 2002), § 5

15  (RJN Ex. H)), and Hawaii's highest court has confirmed that the revised law may not be applied

16  retroactively.   *Hawaii Med. Ass'n v. Hawaii Med. Service*, 148 P.3d 1179, 1209 (Haw. 2006)

17  (affirming dismissal of plaintiffs' unfair competition claim insofar as it is based on alleged

18  wrongful acts committed before June 25, 2002).

19

20

21

22

---

23  [27]   *See* Nev. Rev. Stat. Ann. § 218 (absent express provision to the contrary, effective date of
    every statute is October 1 following its passage).

24
    [28]   Although the IP-CAC is unclear, Plaintiffs appear to sue under Hawaii's "Unfair

25  Competition" statute (Haw. Rev. Stat. § 480-2), and not Hawaii's antitrust statute (Haw. Rev.
    Stat. § 480-4).   *See* IP-CAC, ¶ 276 b, f.   To the extent Plaintiffs intend to assert a claim

26  under Hawaii's antitrust statute, such a claim fails because plaintiffs have not alleged that they
    provided the attorney general with notice and an opportunity to prosecute a claim on their

27  behalf.   *See* Haw. Rev. Stat. §§ 480-13.3(1), (5)(C); *Flash*, 2009 WL 1096602 at * 20.

28  ────────────────────────────────────────────────
    MDL NO. 1917                                            DEFENDANTS' JOINT NOTICE OF MOTION
                                                            AND MOTION TO DISMISS THE IP-CAC

IV.     **PLAINTIFFS' CLAIMS FAIL UNDER THE CONSUMER PROTECTION STATUTES OF MASSACHUSETTS, NEW YORK, RHODE ISLAND AND HAWAII**

A.     **Massachusetts**

Plaintiffs' claim under the Massachusetts Consumer Protection Act (Mass. Gen. Laws Ch. 93A § 2) fails because Plaintiffs have not alleged that they made a "written demand for relief" 30 days before filing their complaint.   *See* Mass. Gen. Laws. ch. 93A § 9(3); *Entrialgo v. Twin City Dodge, Inc.*, 333 N.E.2d 202, 204 (Mass. 1975) (affirming dismissal of complaint where plaintiff failed to allege details regarding demand letter); *see also Kanamara v. Holyoke Mut. Ins. Co.*, 892 N.E.2d 759, 768 (Mass. App. Ct. 2008) (plaintiff must allege details regarding demand letter in complaint).

B.     **New York**

In addition to the fact that Plaintiffs' claim under N.Y. Gen. Bus. Law § 349 is subject to the *AGC* standing analysis, *see* Section II.A, *supra*, Plaintiffs' claim under this statute also fails as a matter of law.   Under New York law, Plaintiffs must allege "first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act."   *New York Jets LLC v. Cablevision Sys. Corp.*, No. 05 Civ. 2875 (HB), 2005 WL 2649330 *11 (S.D.N.Y. Oct. 17, 2005).   The alleged act or practice must be "likely to mislead a reasonable consumer acting reasonably under the circumstances."   *St. Patrick's Home for the Aged & Infirm v. Laticrete Int'l, Inc.*, 696 N.Y.S.2d 117, 122 (N.Y. App. Div. 1999).   Here, Plaintiffs' allegations fail for two separate reasons.

*First*, Plaintiffs have failed to adequately allege deceptive conduct.   Conclusory allegations that "[d]efendants made public statements about the price of CRT Products," and "such statements either omitted material information that rendered these statements . . . materially misleading or affirmatively misrepresented the real cause of price increases . . . ." are insufficient.   *See* IP-CAC, ¶ 280g.   The Court cannot determine whether any given defendant made a statement "likely to mislead a [reasonable] consumer" unless Plaintiffs allege more

specifically the nature of the allegedly misleading statements.   *See*, *e.g.*, *Horowitz v. Stryker Corp.*, --- F.R.D. ----, 2009 WL 436406 * 12 (E.D.N.Y. Feb. 20, 2009) (dismissing § 349 claim because "plaintiff makes no reference to the specific 'acts, representations and/or omissions' that she claims are deceptive nor does she allege why these acts were deceptive").[29] Allegations that the alleged conspiracy was inherently deceptive, or that "defendants took efforts to conceal their agreements" (IP-CAC, ¶ 280b) are insufficient because the same can be said for *any* alleged anticompetitive conspiracy.   *See In re Auto. Refinishing Paint Antitrust Litig.*, 515 F. Supp. 2d 544, 554 (E.D. Pa. 2007) (dismissing indirect purchasers' claims under § 349 premised on alleged price-fixing conspiracy, because "anticompetitive conduct alone does not constitute deceptive conduct under § 349 . . . to come within the scope of the statute, the Complaint must allege some additional deception or misrepresentation").[30]

        *Second*, in order to recover under § 349, a plaintiff must plead deceptive conduct directed toward the plaintiffs.   *See In re Rezulin Prods. Liab. Litig.*, 392 F. Supp. 2d 597, 614 (S.D.N.Y. 2005) (dismissing claim because misrepresentations between two large companies "were not intended for diabetes patients, the ultimate consumers"); *Paltre*, 810 N.Y.S.2d at 498

---

[29]   *See also Bogosian v. All American Concessions*, No. 06-CV-1633 (RRM), 2008 WL 4534036 *4 (E.D.N.Y. Sept. 29, 2008) ("Defendants should not be required to infer from the pleadings the critical facts . . . underlying a claim") (dismissing claim under § 349); *Benjaminov v. Republic Ins. Group*, 660 N.Y.S.2d 148, 149 (N.Y. App. Div. 1997) ("[T]he plaintiff may not maintain a cause of action under General Business Law § 349 where, as here, she has failed to identify any 'material' 'deceptive acts' engaged in by the defendant") (affirming dismissal).

[30]   *See also In re New Motor Vehicles*, 350 F. Supp. 2d 160, 197 (D. Me. 2004) (allegation that defendants concealed anticompetitive conspiracy held insufficient for claim under § 349); *State v. Daicel Chemical Ind.*, 840 N.Y.S.2d 8, 12 (N.Y. App. Div. 2007) (affirming dismissal of § 349 claim premised on price-fixing allegations, and brought by indirect purchasers, because the statute "only applies to anticompetitive conduct that is premised on the deception of consumers"); *Paltre v. General Motors Corp.*, 810 N.Y.S.2d 496, 498 (N.Y. App. Div. 2006) (failure to inform New York consumers of price-fixing conspiracy not actionable under § 349) (affirming dismissal); *Sperry v. Crompton Corp.*, No.17872/02, slip op. at 4 (N.Y. Sup. Ct. filed Nov. 25, 2003) (RJN Ex. I) (dismissing indirect purchasers' claims under § 349 premised on price-fixing conspiracy because "there are no allegations of fact from which it can be inferred that these defendants … engaged in a deceptive scheme" likely to deceive end consumers), *aff'd* 810 N.Y.S.2d 498 (N.Y. App. Div. Feb. 28, 2006).

---

1   (affirming dismissal of § 349 claim because "the alleged misrepresentations were either not

2   directed at consumers or were not materially deceptive"); *St. Patrick's Home for the Aged &*

3   *Infirm*, 696 N.Y.S.2d at 122 (reversing trial court, dismissing § 349 claim where complaint did

4   not allege deceptive action directed at the ultimate consumer).

5          Plaintiffs do not make such an allegation.   Instead, they allege that defendants "made

6   public statements about the price of CRT Products that Defendants knew would be seen by New

7   York plaintiffs."   IP-CAC, ¶ 280g.   This falls short of the required allegation that defendants'

8   deceptive statements were *directed at* New York consumers of televisions and computer

9   monitors (*i.e.*, the Plaintiffs here).   *See Flash,* 2009 WL 1096602 at *22-23 (dismissing claim

10  under New York statute premised on price-fixing allegations where plaintiffs alleged

11  defendants "publicly provided pretextual and false justifications" for price increases, because

12  the complaint failed to allege that misrepresentations were directed at indirect purchasers).[31]

13         **C.     Rhode Island**

14         Plaintiffs' claims under the Rhode Island Unfair Trade Practices and Consumer

15  Protection Act ("UTPCPA"), R.I. Gen. Laws § 6-13.1-1, *et seq.*, should be dismissed because

16  the statute does not prohibit price-fixing activity.   Instead, it enumerates nineteen specific

17  practices that constitute "[u]nfair methods of competition and unfair or deceptive acts or

18  practices."   R.I. Gen. Laws §§ 6-13.1-1(5)(i)-(xix).   Price-fixing is not included.   Moreover,

19  the Rhode Island Supreme Court has held that a plaintiff alleging an anticompetitive conspiracy

20  did not state a claim under the UTPCPA because "the behavior complained of does not meet the

21  definition of '[u]nfair methods of competition and unfair or deceptive acts or practices.'"   *ERI*

22  _____

23  [31]  Indeed, to the extent plaintiffs base their claim on "public statements about the price of"
    CRTs themselves (IP-CAC, ¶ 280g), such statements would necessarily be directed at
    businesses that purchase the CRTs, not end consumers, and thus would not qualify as

24  "consumer-oriented conduct."   *See In re Auto. Refinishing Paint Antitrust Litig.*, 515 F. Supp.
    2d at 552 (dismissing indirect purchaser plaintiffs' claims where "the alleged deceptive act

25  occurs in a transaction between two companies, even when the result of the deception impacts
    on a consumer, it is not actionable under § 349"); *Sperry*, No. 17872/02 at p. 4 (RJN Ex. I)

26  (dismissing indirect purchaser plaintiffs' claims under § 349 because they had no contact with
    defendants who manufactured component product, and alleged deceptive statements

27  "concerned private business transactions between corporations, and not between consumers").

28

1    *Max Entm't v. Streisand*, 690 A.2d 1351, 1354 (R.I. 1997).   Instead, a claim under the statute

2    "must be predicated upon conduct on the part of the [defendant] that reasonably tended to

3    confuse and mislead the general public into purchasing his product . . . ."   *Id.* at 1353.   Rhode

4    Island has an antitrust statute, but prohibits claims by indirect purchasers.   *Siena v. Microsoft*

5    *Corp.*, 796 A.2d 461, 464-65 (R.I. 2002).   Plaintiffs cannot end-run this limitation by tacking

6    onto their price-fixing complaint conclusory allegations that "[d]efendants made public

7    statements . . . [that] created a likelihood of confusion or misunderstanding …."   IP-CAC, ¶

8    282d; *see Flash*, 2009 WL 1096602 at *23 (dismissing indirect purchasers' claim under Rhode

9    Island statute because the statute does not encompass price-fixing activity); *GPU I*, 527 F.

10   Supp. 2d at 1030-31 (same).

11           Moreover, Plaintiffs' claim is overbroad, as it seeks to recover on behalf of non-natural

12   persons.   The statute limits recovery to any "person who purchases or leases goods or services

13   primarily for personal, family, or household purposes."   R.I. Gen. Laws § 6-13.1-5.2.

14   Plaintiffs assert that the entire putative Rhode Island class meets this criteria (IP-CAC, ¶282a),

15   but the purported class includes many people and businesses whose claims are excluded by the

16   statute.   *Id.* at ¶¶ 241, 242 (alleging Rhode Island class of "[a]ll persons *or entities* who . . .

17   indirectly purchased . . . CRT Products manufactured and/or sold by the Defendants . . . .")

18   (emphasis added).   Both federal and state courts routinely find that businesses lack standing to

19   bring a claim under the Rhode Island statute.   *See, e.g., Magnum Defense, Inc. v. Harbour*

20   *Group Ltd.*, 248 F.Supp.2d 64, 71 (D.R.I. 2003); *Scully Signal Co. v. Joyal*, 881 F.Supp. 727

21   (D.R.I. 1995); *ERI Max Entm't*, 690 A.2d at 1354.   For this reason, two judges in this District

22   recently dismissed claims under the UTPCPA brought by persons excluded by the statute.   *See*

23   *DRAM I*, 516 F. Supp. 2d at 1117; *LCD I*, 586 F. Supp. 2d at 1130.

24           **D.     Hawaii**

25           In addition to the defects discussed above, *see* Section III.C, *supra*, Plaintiffs' claim for

26   recovery under Hawaii's "Unfair Competition" statute is also overbroad, as it seeks to recover

27   on behalf of businesses as well as natural persons.   *See* IP-CAC, ¶¶ 241, 242 (Hawaii class

28

1   includes "[a]ll persons *or entities* who … indirectly purchased … CRT Products manufactured

2   and/or sold by the Defendants . . . .") (emphasis added).   The statute limits recovery to

3   "consumers," which it defines as "natural person[s]" who purchase property "primarily for

4   personal, family, or household purposes."   Haw. Rev. Stat. §§ 480-2(d), 480-1; *see also Ass'n*

5   *of Apt. Owners v. Venture*, 167 P.3d 225, 245 (Haw. 2007); *Lucas v. Citizens Commc'n Co.*,

6   409 F. Supp. 2d 1206, 1223 (D. Haw. 2005), *aff'd* 244 Fed. Appx. 774 (9th Cir. 2007).

7   **V.     PLAINTIFFS' UNJUST ENRICHMENT CLAIMS FAIL IN STATES THAT**

8   **REQUIRE THAT PLAINTIFFS CONFER A BENEFIT DIRECTLY ON**
    **DEFENDANTS, AND IN STATES WITH SUBSTANTIVE ANTITRUST LAW**

9   **THAT WOULD PROHIBIT OR LIMIT PLAINTIFFS' RECOVERY**

10      Plaintiffs purport to state unjust enrichment claims under the common law of 20 states.[32]

11  IP-CAC, ¶ 286.   For one or more reasons, these claims fail as a matter of law.   *First*, because

12  Plaintiffs are indirect purchasers, they do not and cannot allege that they have conferred a

13  benefit directly to defendants, as required under the common law of Michigan, New York and

14  Kansas.   *Second*, Plaintiffs cannot recover in equity by pleading antitrust claims under an

15  unjust enrichment theory, where such recovery is not permitted under the state's statutory

16  scheme.   *Third*, Plaintiffs may not recover under an unjust enrichment theory where the

17  underlying antitrust or consumer protection statute expressly limits relief to compensatory

18  damages.

19      **A.     Plaintiffs' Unjust Enrichment Claims Under The Common Law Of**
    **Michigan, Kansas and New York Fail Because Plaintiffs Do Not Allege**

20  **That They Conferred A Benefit Directly On Defendants**

21          **1.     Michigan**

22      The Michigan Court of Appeals has held that indirect purchasers allegedly overcharged

23  as a result of anticompetitive conduct lack standing to sue for unjust enrichment, because they

24  cannot allege that they conferred a benefit *directly* upon the defendant.   *A&M Supply Co. v.*

25  _____

26  [32]   Arizona, California, Hawaii, Iowa, Kansas, Massachusetts, Michigan, Minnesota,
    Mississippi, Nebraska, Nevada, New Mexico, New York, North Carolina, Rhode Island,

27  South Dakota, Tennessee, Vermont, West Virginia and Wisconsin.   IP-CAC, ¶ 286.

28

1    *Microsoft Corp.*, 2008 WL 540883, at *2 (Mich. Ct. App. Feb. 28, 2008) ( "the unjust

2    enrichment doctrine does not apply under the facts alleged by plaintiff here" because "there was

3    no direct receipt of any benefit by defendant here from [indirect purchasers]"); *see also Martell*

4    *v. Turcheck*, No. 2:07-cv-14068, 2008 WL 2714210 *11 (E.D. Mich. July 7, 2008) (same).

5    Because the Michigan plaintiffs here do not make such an allegation, their unjust enrichment

6    claim must be dismissed.

7              **2.    Kansas**

8              Kansas common law requires that a plaintiff deal *directly* with the defendant in order to

9    state a cause of action for unjust enrichment.   *See Babcock v. Carrothers Constr. Co.*, 124 P.3d

10   1084 (unpublished opinion, text available at 2005 WL 3527117, at *2 (Kan. App. Dec. 23,

11   2005) ("absent privity, plaintiff may not prevail on a claim of unjust enrichment").   Therefore,

12   Plaintiffs' unjust enrichment claim under Kansas common law must be dismissed.

13             **3.    New York**

14             Recent New York law provides that a plaintiff claiming unjust enrichment must allege

15   that it conferred a benefit directly on the defendant.   *See Carmona v. Spanish Broadcasting*

16   *System, Inc.*, No. 08 Civ. 4475, 2009 WL 890054 *6 (S.D.N.Y. March 30, 2009) (courts in New

17   York will dismiss unjust enrichment claims in the absence of allegations of "direct dealings, or

18   an actual, substantive relationship" between a defendant and plaintiff); *Reading Int'l, Inc. v.*

19   *Oaktree Capital Mgmt.*, 317 F. Supp. 2d 301, 333-34 (S.D.N.Y. 2003) (same); *Sperry v.*

20   *Crompton Corp.*, 810 N.Y.S.2d 498, 499 (N.Y. App. Div. 2006) (affirming dismissal of indirect

21   purchaser's unjust enrichment claim), *aff'd* 8 N.Y.3d 204, 215-216 (N.Y. 2007).

22             *Sperry*, as a "component" case, is most instructive here.   The plaintiff in *Sperry*,

23   seeking to represent consumers who purchased tires, alleged that defendants conspired to fix

24   the price of a chemical component in the tires, overcharging tire manufacturers who, in turn,

25   overcharged consumers.   *Sperry*, 8 N.Y.3d at 209.   The trial court, the appellate division, and

26   the New York Court of Appeals all agreed that this set of facts did not constitute a claim under

27

28                                      DEFENDANTS' JOINT NOTICE OF MOTION
                                                   AND MOTION TO DISMISS THE IP-CAC

New York's common law of unjust enrichment.   *Id.* at 216 (finding any alleged connection between plaintiffs and defendants "simply too attenuated").

### B.   Plaintiffs Cannot Use Unjust Enrichment As A "Back-Door" To Recover For Antitrust Claims Barred Under States' Substantive Antitrust Laws

When the law limits a plaintiff's right to recover damages, a plaintiff that is not within those limits cannot seek the same damages through an equitable claim.   *Hedges v. Dixon County*, 150 U.S. 182, 192 (1893) (where "the rights or the situation of parties are clearly defined and established by law, equity has no power to change or unsettle those rights or that situation. . . . Courts of equity can no more disregard statutory . . . requirements and provisions than can courts of law") (internal quotations and citations omitted).   States routinely follow this maxim.   *See, e.g., Haverty v. Comm'r of Corrs.*, 792 N.E.2d 989, 994 (Mass. 2003); *Guy Dean's Lake Shore Marina, Inc. v. Ramey*, 518 N.W.2d 129, 132 (Neb. 1994); *Mello v. Woodhouse*, 872 P.2d 337, 373 (Nev. 1994); *Taylor v. Slater*, 41 A. 1001, 1002 (R.I. 1898). Moreover, federal courts consistently apply this principle in precisely the context presented here.   *See, e.g., In re Terazosin Hydrochloride Antitrust Litig.*, 160 F. Supp. 2d 1365, 1379-80 (S.D. Fla. 2001) (dismissing unjust enrichment claims of indirect purchasers coupled with state antitrust claims, where state law would deny plaintiffs standing, because doing so "would . . . undermine the efficient enforcement of antitrust laws . . . ."); *In re Microsoft Corp. Antitrust Litig.*, 401 F. Supp. 2d 461, 464 (D. Md. 2005) ("the specific bar on indirect purchaser recovery incorporated into South Carolina's antitrust statutes prohibits Plaintiff's general common-law [unjust enrichment] claim").

For example, Massachusetts and Rhode Island adhere to *Illinois Brick*'s ban on indirect purchaser suits.   *See O'Connell v. Microsoft Corp.*, 2001-2 Trade Cas. (CCH) ¶ 73419, 13 Mass. L. Rptr. 435 (Mass. Super. 2001); *Siena v. Microsoft Corp.*, 796 A.2d 461, 464-65 (R.I. 2002).   Plaintiffs may not circumvent these restrictions on antitrust claims by recasting them as unjust enrichment actions.   *See Aikens v. Microsoft Corp.,* 159 Fed. Appx. 471, 477 (4th Cir. 2005) ("to the extent that the [indirect purchaser] plaintiffs cannot sue for monetary damages

under Louisiana antitrust law, they cannot employ a subsidiary unjust enrichment claim to circumvent this rule"); *In re TFT-LCD Antitrust Litig.*, 599 F.Supp.2d 1179, 1192 (N.D. Cal. March 3, 2009) (dismissing unjust enrichment claims where the same claim would be barred under state antitrust law because "permitting such claims would allow plaintiffs to circumvent limitations of state antitrust laws"); *In re K-Dur Antitrust Litig.*, No. 01-1652 (JAG), 2008 WL 2660780 *5 (D.N.J. Feb. 28, 2008) ("where the applicable state law bars antitrust actions for damages by indirect purchasers, or simply does not recognize a private cause of action for antitrust violations, a plaintiff cannot circumvent the statutory framework by recasting an antitrust claim as one for unjust enrichment"); *In re New Motor Vehicles Canadian Export Antitrust Litig.*, 350 F. Supp. 2d 160, 211 (D. Me. 2004) (it would "subvert the statutory scheme" to allow indirect purchasers to secure restitutionary relief under common law of states that bar indirect purchaser claims).   For this reason, the Court should dismiss plaintiffs' unjust enrichment claims brought under the common law of Massachusetts and Rhode Island.[33]

     The above-stated principle also applies where plaintiffs lack standing to sue under state antitrust statutes because their claim is too attenuated or speculative.   In such cases, plaintiffs' unjust enrichment claims based on the common law of those states must fail.   *See, e.g., Southard*, 734 N.W.2d at 199-200 (affirming dismissal of plaintiffs' unjust enrichment claim because it "suffered from the same remoteness-of-injury problem as the plaintiffs' antitrust claims"); *Kanne*, 723 N.W.2d at 302-303 (affirming dismissal of unjust enrichment claim where state antitrust and consumer protection claims were deemed too remote under *AGC*); *Sperry*, 810 N.Y.S.2d at 499.   As discussed at pp. 16-29, *supra*, Defendants have demonstrated that plaintiffs lack standing to sue under the antitrust statutes of Arizona, California, Iowa,

---

[33]  This same principle applies to antitrust claims that are limited, but not wholly abrogated, by state law.   As discussed above at pp. 29-31, *supra*, plaintiffs cannot recover under the antitrust statutes of Nebraska, Nevada and Hawaii for purchases made before those states granted indirect purchasers standing to sue.   Therefore, the Court should dismiss any claims under the Nebraska common law of unjust enrichment based on purchases made before July 20, 2002; any claims under the Nevada common law of unjust enrichment based on purchases made before Oct. 1, 1999; and any claims under the Hawaii common law of unjust enrichment based on purchases made before June 25, 2002.

1   Kansas, Michigan, Mississippi, Nebraska, Nevada, New Mexico, North Dakota, South Dakota,

2   Vermont, West Virginia, and Wisconsin.   This Court should thus also dismiss plaintiffs' unjust

3   enrichment claims brought under the common law of these states.

### C.   Plaintiffs Cannot Recover Under An Unjust Enrichment Theory In States Which Limit Relief To Compensatory Damages

6          Nor may Plaintiffs recover under a common-law theory of unjust enrichment when the

7   underlying antitrust or consumer protection statute expressly limits relief to compensatory

8   damages.   *See Karahalios v. Nat'l Fed'n of Fed. Employees*, 489 U.S. 527, 533 (1989) ("It is

9   also an 'elemental canon' of statutory construction that where a statute expressly provides a

10  remedy, courts must be especially reluctant to provide additional remedies"); *NMV*, 350 F.

11  Supp. 2d at 212 ("It is also possible that a particular state antitrust statute explicitly limits its

12  relief to compensatory damages, not permitting disgorgement of profits, and therefore should

13  be read to preclude the common law restitutionary remedy").   The concern is particularly acute

14  here.   Because the allegedly price-fixed product passed through multiple channels before

15  reaching the consumer, *see* IP-CAC, ¶¶ 223, 224, 231, Plaintiffs' alleged injury could in fact be

16  less than Defendants' alleged ill-gotten gain.   The antitrust and/or consumer protection statutes

17  that Plaintiffs invoke from the following states do not allow for restitutionary relief:   Kansas,[34]

18  Hawaii,[35] Minnesota,[36] Mississippi,[37] Nebraska,[38] Nevada,[39] New York,[40] North Carolina,[41]

---

[34]   Kan. Stat. Ann. § 50-108; *see also Amundson & Assoc. v. Nat'l Council on Comp. Isn.*, 988 P.2d 1208, 1217 (Kan. Ct. App. 1999) (individuals not entitled to equitable relief under Kansas antitrust statute).

[35]   Haw. Rev. Stat. § 480-13(b).

[36]   Minn. Stat. § 325D.57.

[37]   Miss. Code Ann. § 75-21-9.

[38]   Neb. Rev. Stat. Ann. §§ 59-821, 59-1609.

[39]   Nev. Rev. Stat. Ann. § 598A.210(2).

[40]   N.Y. Gen. Bus. Law § 349(h).

[41]   N.C. Gen. Stat. 75-16.

---

MDL NO. 1917

DEFENDANTS' JOINT NOTICE OF MOTION
AND MOTION TO DISMISS THE IP-CAC

1   Tennessee,[42] Vermont,[43] West Virginia,[44] and Wisconsin.[45]   The Court should dismiss

2   Plaintiffs' claims for unjust enrichment under the common law of these states.

3   **VI.    EACH STATE'S STATUTE OF LIMITATIONS RESTRICTS PLAINTIFFS'**
4   **STATE LAW CLAIMS, AND PLAINTIFFS HAVE NOT PLEADED FACTS**
    **SUFFICIENT TO TOLL THE APPLICABLE LIMITATIONS PERIODS**

5          In price-fixing cases, a plaintiff may not recover for injuries caused by conduct outside

6   the applicable statute of limitations.

7
            Antitrust law provides that, in the case of a "continuing
8           violation," say a price fixing conspiracy that brings about a
            series of unlawfully high priced sales over a period of years,
9           "each overt act that is part of the violation and that injures the
            plaintiff," e.g., each sale to the plaintiff, "starts the statutory
10          period running again . . .   [and] the commission of a separate
            new overt act generally does not permit the plaintiff to
11          recover for the injury caused by the old overt acts outside the
            limitations period.
12

13  *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 189 (1997) (quoting 2 P. Areeda & H. Hovenkamp,

14  Antitrust Law ¶ 338b at p. 145 (rev. 2d ed. 1995)).    In a federal diversity action, claims

15  based on state statutes must be filed within the relevant statute of limitations period applicable

16  to each particular state.   *See Walker v. Armco Steel Corp.*, 446 U.S. 740, 745 (1980).

17  Where a plaintiff asserts equitable claims based on the same subject matter that gives rise to a

18  statutory claim (such as Plaintiffs' unjust enrichment claims here), those equitable claims are

19  controlled by the relevant statute of limitations applicable to the statutory claims.   *See*, *e.g.*,

20  *Stuart & Sons, L.P. v. Curtis Publ'g Co.*, 456 F. Supp. 2d 336, 343 (D. Conn. 2006);

21  *Schreibman v. Chase Manhattan Bank*, 15 A.D.2d 769, 770 (N.Y. App. Div. 1962); *Leahey v.*

22  *Dep't of Water and Power*, 76 Cal. App. 2d 281, 286 (Cal. Dist. Ct. App. 1946).

23

24  _____

25  [42]  Tenn. Code Ann. § 47-25-106.
    [43]  Vt. Stat. Ann. 9 § 2465.
26  [44]  W. Va. Code § 47-18-9.
    [45]  Wis. Stat. § 133.18.
27

28

1    Plaintiffs filed their first complaint on November 13, 2007.   Claims based on alleged

2    sales outside the relevant state statute of limitations periods[46] are time-barred and must be

3    dismissed.[47]   Because "the running of the statute [of limitations] is apparent on the face of

4    the complaint, the defense may be raised by a motion to dismiss."   *Jablon v. Dean Witter &*

5    *Co.*, 614 F.2d 677, 682 (9th Cir. 1980).

6    In an effort to avoid this time limitation, Plaintiffs assert that each state's limitations

7    period should be tolled because "Defendants conducted their conspiracy in secret, concealed

8    the nature of their unlawful conduct and acts in furtherance thereof, and fraudulently

9    concealed their activities through various other means and methods designed to avoid

10   detection."   IP-CAC, ¶ 289.   But to toll the statute of limitations of their state law claims,

11   Plaintiffs must meet each state's standard for fraudulent concealment or equitable tolling.   *In*

12   *re Verisign, Inc. Derivative Litig.*, 531 F. Supp. 2d 1173, 1214 (N.D. Cal. 2007) (federal

13   courts apply the law of the forum state to state claims, including state law on tolling of statute

14   of limitations); *see also Wade v. Danek Med. Inc.*, 182 F.3d 281, 288-89 (4th Cir. 1999) ("in

---

[46]   Statutes of limitations applicable to Plaintiffs' state antitrust and consumer protection claims (and therefore, any state unjust enrichment claims) range from three years to six years:

**Three Years**:   **Kansas, Mississippi, New York, Tennessee.**   Kan. Stat. Ann. § 60-512 (antitrust and consumer protection); Miss. Code Ann. § 15-1-49 (antitrust); N.Y. C.P.L.R. § 214(2) (consumer protection); Tenn. Code Ann. § 28-3-105 (antitrust).

**Four Years**:   **Arizona, California, Florida, Hawaii, Iowa, Massachusetts, Michigan, Minnesota, Nebraska, Nevada, New Mexico, North Carolina, North Dakota, Rhode Island, South Dakota and West Virginia**.   Ariz. Rev. Stat. § 44-1410 (antitrust); Cal. Bus. & Prof. Code § 16759.1 (antitrust), § 17208 (consumer protection); Fla. Stat. Ann. § 542.26 (consumer protection); Haw. Rev. Stat. Ann. § 480-24 (consumer protection); Iowa Code. Ann. § 553.16(1) (antitrust); Mass. Gen. Laws Ann. ch. 260, § 5A (consumer protection); Mich. Comp. Laws Ann. § 445.781 (antitrust); Minn. Stat. Ann. § 325D.64 (antitrust); Neb. Rev. Stat. § 59-1612 (antitrust and consumer protection); Nev. Rev. Stat. § 598A.220 (antitrust); N.M. Stat. Ann. § 57-1-12 (antitrust and consumer protection); N.C. Gen. Stat. § 75-16.2 (antitrust and consumer protection); N.D. Cent. Code § 51-08.1-10(1) (antitrust); R.I. Gen. Laws § 6-36-23 (consumer protection); S.D. Codified Laws § 37-1-14.4 (antitrust); W. Va. Code Ann. § 47-18-11 (antitrust and consumer protection).

**Six Years**:   **Vermont, Wisconsin**.   Vt. Stat. Ann. tit. 12, § 511 (antitrust and consumer protection); Wisc. Stat. Ann. § 133.18(2) (antitrust).

[47]   As to each defendant, Plaintiffs can only recover for sales made during the period defined by each statute of limitation, measured backward from the date each defendant was first named in an indirect purchaser complaint.

---

28

MDL NO. 1917                                          DEFENDANTS' JOINT NOTICE OF MOTION
                                                      AND MOTION TO DISMISS THE IP-CAC

1    any case in which a state statute of limitations applies-whether because it is 'borrowed' in a

2    federal question action or because it applies under *Erie* in a diversity action-the state's

3    accompanying rule regarding equitable tolling should also apply"); *Shropshear v. Corp.*

4    *Counsel*, 275 F.3d 593, 596 (7th Cir. 2001) (same).

5         Plaintiffs are not entitled to tolling in any state.   They fail to plead any of the elements

6    of fraudulent concealment or equitable tolling found in state law:   (1) affirmative fraudulent

7    conduct *outside the scope of the conspiracy itself* which is designed to avoid detection of the

8    conspiracy (required in all 22 states whose state law claims Indirect Plaintiffs assert); (2) the

9    exercise of due diligence by plaintiffs to uncover any claims they may have (required in 19

10   states); and (3) a lack of constructive knowledge of the facts upon which they now rely in

11   asserting their claims (required in all 22 states).   Moreover, because their assertion of

12   fraudulent concealment is grounded in fraud, Plaintiffs must plead facts showing fraudulent

13   concealment with particularity as required by Rule 9(b).   *See 389 Orange St. Partners v.*

14   *Arnold*, 179 F.3d 656, 662-63 (9th Cir. 1999) (applying Connecticut statute of limitation and

15   Connecticut elements for fraudulent concealment where plaintiff sought to toll the statute of

16   limitations but requiring plaintiff to meet 9(b) pleading standards); *see also Vess v.*

17   *Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003) (holding that all allegations that

18   sound in fraud must be pled with particularity and clarifying that "while a federal court will

19   examine state law to determine whether the elements of fraud have been pled sufficiently to

20   state a cause of action, the Rule 9(b) requirement that the *circumstances* of the fraud must be

21   stated with particularity is a federally imposed rule") (internal citations omitted) (emphasis in

22   original).[48]

23

24

25   _____

26   [48]  Defendants incorporate herein by reference their entire argument in the Joint Motion to
     Dismiss the DP-CAC (pp. 18-28) that Plaintiffs have failed to plead fraudulent concealment

27   with the requisite particularity.

28

A.      **Plaintiffs Have Failed to Plead Affirmative Conduct Constituting Fraudulent Concealment, Barring Tolling In All 22 States Whose State Law Claims Plaintiffs' Assert**

Plaintiffs' assertion of fraudulent concealment fails because the IP-CAC lacks allegations of affirmative fraudulent conduct, which are necessary to toll the statute of limitations in all 22 of the states in which Plaintiffs plead state law claims (the "Affirmative Conduct Jurisdictions").   To toll the statute of limitations on the grounds of fraudulent concealment in the Affirmative Conduct Jurisdictions, Plaintiffs must allege that Defendants took affirmative action directed at plaintiffs to cover up their conspiratorial conduct in order to prevent Plaintiffs from discovering their cause of action.[49]   Merely pleading the conspiratorial conduct itself, or the failure to confess that conduct, is insufficient.   Moreover, Plaintiffs must plead causation with particularity – *i.e.*, that the Defendants' fraudulent statements or actions covering up the conspiratorial conduct deceived Plaintiffs.   *See, e.g.*, *389 Orange St. Partners*, 179 F. 3d at 662-63; *Vess*, 317 F.3d at 1103.   Plaintiffs' mere

---

[49]  **Arizona**: *Tovrea Land & Cattle Co. v. Linsenmeyer*, 412 P.2d 47, 63 (Ariz. 1966); **California**: *Hesse v. Vinatieri*, 302 P.2d 699, 702 (Cal. Dist. Ct. App. 1956); **Florida**: *First Fed. Sav. & Loan Ass'n of Wis. v. Dade Fed. Sav. & Loan Ass'n*, 403 So. 2d 1097, 1100 (Fla.Dist. Ct. App. 1981); **Hawaii**: *Au v. Au*, 626 P.2d 173, 178 (Haw. 1981); **Iowa**: *Christy v. Miulli*, 692 N.W.2d 694, 702 (Iowa 2005); **Kansas**: *Friends Univ. v. W.R. Grace & Co.*, 608 P.2d 936, 941 (Kan. 1980); **Massachusetts**: *Puritan Med. Center, Inc. v. Cashman*, 596 N.E.2d 1004, 1010 (Mass. 1992); **Michigan**: *Sills v. Oakland Gen. Hosp.*, 559 N.W.2d 348, 352 (Mich. Ct. App. 1996); **Minnesota**: *State Farm Mut. Auto. Ins. Co. v. Ford Motor Co.*, 572 N.W.2d 321, 325 (Minn. Ct. App. 1997); **Mississippi**: *Spann v. Diaz*, 987 So. 2d. 443, 449 (Miss. 2008); **Nebraska**: *Upah v. Ancona Bros. Co.*, 521 N.W.2d 895, 902 (Neb. 1994); **Nevada**: *Nev. Power Co. v. Monsanto Co.*, 891 F.Supp. 1406, 1415 (D. Nev. 1995); **New Mexico**: *Continental Potash, Inc. v. Freeport-McMoran, Inc.*, 858 P.2d 66, 74 (N.M. 1993); **New York**: *Zoe G. v. Frederick F. G.*, 617 N.Y.S.2d 370, 371 (N.Y. App. Div. 1994); **North Carolina**: *Pembee Mfg. Corp. v. Cap Fear Constr. Co.*, 317 S.E.2d 41, 44 (N.C. Ct. App. 1984), *aff'd* 329 S.E.2d 350 (N.C. 1985); **North Dakota**: *Roether v. Nat'l Union Fire Ins.Co.*, 200 N.W. 818, 822 (N.D. 1924); **Rhode Island**: *Ryan v. Roman Catholic Bishop of Providence*, 941 A.2d 174, 182 (R.I. 2008); **South Dakota**: *Spencer v. Estate of Spencer*, 759 N.W.2d 539, 544 (S.D. 2008); **Tennessee**: *Shadrick v. Coker*, 963 S.W.2d 726, 735 (Tenn. 1998); **Vermont**: *Watts v. Mulliken's Estate*, 115 A. 150, 152 (Vt. 1921); **West Virginia**: *Sattler v. Bailey*, 400 S.E.2d 220, 228 (W.V. 1990); **Wisconsin**: *State ex rel. Susedik v. Knutson*, 191 N.W.2d 23, 25-26 (Wis. 1971).

---

DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS THE IP-CAC

1   incantation of the mantra "affirmatively concealed" does not satisfy the pleading requirements

2   that they reveal the time, place and content of the fraudulent statements or conduct of any

3   Defendant on which they relied.    IP-CAC, ¶ 290.    The alleged acts of concealment

4   described in paragraph 290 of the IP-CAC are nothing but a series of conclusory allegations

5   which amount to silence in the *operation* of the "self concealing" conspiracy itself, rather than

6   the required affirmative conduct to cover it up.    *Id.*

7          In fact, the only actual statement or act attributed to any defendant in the 92-page

8   Complaint is an alleged statement by some person Plaintiffs do not name, working for some

9   "Philips" entity Plaintiffs do not name, at some undisclosed location at an undisclosed time in

10  2004.  *Id.* at ¶ 197.   This lone allegation illustrates Plaintiffs' total disregard for pleading

11  standards.   The statement is attributed not to any defendant's employee, but to an unidentified

12  person at a fictional entity "Philips."   Moreover, the statement was allegedly made in 2004,

13  by which time, as discussed in detail below, Plaintiffs allege they already had endured nine

14  years of paying inexplicably high prices for finished products which incorporate

15  CRTs.   Accepting Plaintiffs' allegations as true, Plaintiffs had more than sufficient

16  knowledge, well before 2004, to uncover the alleged conspiracy had they acted with the

17  required due diligence.   Short of pleading specific affirmative statements made or conduct

18  undertaken by Defendants in the 1990s on which Plaintiffs relied, they cannot satisfy the

19  affirmative fraudulent conduct element necessary to toll the statute of limitations.

20       **B.      Plaintiffs Have Failed to Plead the Due Diligence Required To Toll The
                   Statute of Limitations**

21

22        Plaintiffs' fraudulent concealment claim also fails as a matter of law because the

23  IP-CAC lacks allegations of due diligence, a necessary element to toll the statute of

24  limitations in California, Florida, Iowa, Kansas, Massachusetts, Michigan, Minnesota,

25  Mississippi, Nevada, New Mexico, New York, North Carolina, North Dakota, Rhode Island,

26  South Dakota, Tennessee, Vermont, West Virginia and Wisconsin (the "Due Diligence

27  Jurisdictions").

28  MDL NO. 1917                                          DEFENDANTS' JOINT NOTICE OF MOTION
                                                          AND MOTION TO DISMISS THE IP-CAC

1    To toll the statute of limitations on the grounds of fraudulent concealment in the Due

2  Diligence Jurisdictions, Plaintiffs must allege facts showing their diligent attempt to discover

3  the pertinent facts underlying their claim.[50]   Instead, Plaintiffs offer only conclusory

4  assertions that they could not have discovered the alleged conspiracy even if they had been

5  diligent.   *See* IP-CAC, ¶ 289 (claiming Plaintiffs "could not discover through the exercise of

6  reasonable diligence, that Defendants were violating the law as alleged herein until shortly

7  before this litigation was commenced.")   Such claims are insufficient to avoid pleading due

8  diligence.   *See*, *e.g.*, *Patten v. Standard Oil of La.*, 55 S.W.2d 759, 760-62 (Tenn. 1933)

9  (plaintiff's allegations that "[h]er representative had made as thorough an investigation as

10  could be made . . . [and] [t]he failure to discover these facts . . . was not due to any negligence

11  on [her] part" deemed "a mere conclusion not supported by any statement of facts"); *E-Fab,

12  Inc. v. Accountants, Inc. Servs.*, 153 Cal.App.4th 1308, 1319 (2007) ("[t]he burden is on the

13  plaintiff to show diligence, and conclusory allegations will not withstand demurrer")

14  (quotation omitted); *Continental Potash, Inc. v. Freeport-McMoran, Inc.*, 858 P.2d 66, 74

15

16  ───────────────

17  [50]   **California**:   *Snapp & Assocs. Ins. Servs. Inc. v. Robertson*, 96 Cal.App.4th 884, 890 (2002).   **Florida**:   *First Federal Savings & Loan Ass'n of Wisconsin v. Dade Federal Savings & Loan Ass'n*, 403 So.2d 1097, 1100 (Dist. Ct. App. Fl. 1981).   **Iowa**:   *Christy v.

18  Miulli*, 692 N.W.2d at 702.   **Kansas**:   *Friends Univ. v. W.R. Grace & Co.*, 608 P.2d 936, 941 (Kan. 1980).   **Massachusetts**:   *Frank Cooke, Inc. v. Hurwitz*, 406 N.E.2d 678, 684 (Mass. App. Ct. 1980).   **Michigan**:   *McNaughton v. Rockford State Bank*, 246 N.W. 84, 86

19  (Mich. 1933).   **Minnesota**:   *Hanna Mining Co. v. InterNorth, Inc.*, 379 N.W.2d 663, 667 (Minn. Ct. App. 1986).   **Mississippi**:   *Stephens v. Equitable Life Assurance Soc'y of U.S.*,

20  850 So.2d 78, 84 (Miss. 2003).   **Nevada**:   *Pooler v. R.J. Reynolds Tobacco Co.*, No. CV00-02674, 2001 WL 403167, at *2 (Nev. Dist. Ct. Apr. 4, 2001).   **New Mexico**:

21  *Continental Potash, Inc. v. Freeport-McMoran, Inc.*, 858 P.2d 66, 74 (N.M. 1993).   **New York**:   *Pahlad ex rel. Berger v. Brustman*, 823 N.Y.S.2d 61, 64 (N.Y. App. Div. 2006), *aff'd*

22  865 N.E.2d 1240 (N.Y. 2007).   **North Carolina**:   *Crawford v. Paul Davis Restoration Triad Inc.*, No. COA02-1040, 2003 WL 21436156 *4 (N.C. App. June 17, 2003).   **North

23  Dakota**:   N.D. Cent. Code § 28-01-24.   **Rhode Island**:   *Martin v. Howard*, 784 A.2d 291, 299-300 (R.I. 2001).   **South Dakota**:   *Strassburg v. Citizens State Bank*, 581 N.W.2d 510,

24  515 (S.D. 1998).   **Tennessee**:   *Shadrick v. Coker*, 963 S.W.2d 726, 733 (Tenn. 1998).

25  **Vermont**:   *Rodrigue v. Valco Enters.*, 726 A.2d 61, 64 (Vt. 1999).   **West Virginia**:

26  *Pocahontas Supreme Coal Co. v. Bethlehem Steel Corp.*, No. 84-5380, 1986 WL 957 *15 (S.D. W. Va. May 13, 1986), *aff'd* 828 F.2d 511 (4th Cir. 1987) (same, under W.VA. CODE

27  ANN. § 47-18-11).   **Wisconsin**:   *Hansen v. A.H. Robins, Inc.*, 335 N.W.2d 578, 582 (Wis. 1983).

───────────────

28  MDL NO. 1917                                      DEFENDANTS' JOINT NOTICE OF MOTION
                                                     AND MOTION TO DISMISS THE IP-CAC

1    (N.M. 1993) ("Bald allegations of concealment are not sufficient to make out a case of

2    fraudulent concealment.").

3            The absence of the required due diligence allegations is particularly glaring in light of

4    Plaintiffs' assertions in the IP-CAC that a wealth of information about the alleged conspiracy

5    was *publicly available* throughout the 1990s:

6    <u>A Market Allegedly Conducive to Collusion</u>

7    • "The structural characteristics of the CRT Product market are *conducive to the
        type of collusive activity* alleged in the Complaint."[51]   IP-CAC, ¶ 121.

8

9    • "*During the Class Period*, the CRT Industry was dominated by relatively few
        companies. . . .   The high concentration of market share *facilitates
        coordination*. . . ."   IP-CAC, ¶ 122.

10

11   • "The CRT Product industry has a close-knit nature whereby multiple business
        relationships between supposed competitors blur the lines of competition and
        provide *ample opportunity to collude*."   IP-CAC, ¶ 127.   *See also* Allee,
12      Pentland and Brown Complaint, ¶ 40 and Call Complaint, ¶ 59 ("The mutually
        beneficial nature of business relations between certain Defendants not only
13      provided the *opportunity to conspire*, it also created a *financial incentive to do
        so*.").

14

15   • "The CRT Product market is a mature one, and like many mature industries, is
        characterized by small profit margins, *creating a motivation to collude*."   IP-CAC,
16      ¶ 130.

17   • "Demand for CRT Products was declining *throughout the Class Period* . . .
        another factor which *makes the formation of a collusive agreement more likely*"
18      and "*worthwhile*."   IP-CAC, ¶¶ 131-133.

19   • "It is easier to form and sustain a cartel when the product in question is
        commodity-like," such as CRT Products.   IP-CAC, ¶¶ 136-137.

20

21   <u>Prices Alleged to Evidence Collusion</u>

22   • "*In the 1990s*, industry analysts repeatedly predicted declines in consumer prices
        for CRTs that did not fully materialize."   IP-CAC, ¶ 192.

23

24   • "For example, *in 1992*, an analyst for Market Intelligent Research Corporation
        predicted that '[e]conomies of scale, in conjunction with technological
25      improvements and advances in manufacturing techniques, will produce a drop in
        the price of the average electronic display to about $50 in *1997*.   Despite such

26   _____

27   [51]  Emphasis has been added unless otherwise noted.

28

predictions, and the existence of economic conditions warranting a drop in prices, CRT Product prices nonetheless remained stable."   IP-CAC, ¶ 192 (citation omitted).

- "*In 1996*, another industry source noted that 'the price of the 14" tube is at a sustainable USD50 and has been for some years."   IP-CAC, ¶ 193.

- "*In early 1999*, despite declining production costs and the rapid entry of flat panel display products, the price of large sized color CRTs actually rose."   IP-CAC, ¶ 194.

- "After [and despite] experiencing oversupply of 17" CRTs in the second half of 1999, the average selling price of CRTs rose again *in early 2000*."   IP-CAC, ¶ 195.

Plaintiffs characterize the inexplicably high prices they allege to have paid throughout the 1990s as "*inconsistent with a competitive market*."   IP-CAC, ¶ 202.   Plaintiffs' allegations in their original complaints go even further in alleging that the prices being charged throughout the class period, alone, showed the existence of collusion.[52]

> *During the class period* when demand for CRT Products was plummeting, Defendants' market response was *not that of a competitive market free of collusion*.   Instead of reducing prices in order to sell the CRTs being manufactured, prices remained relatively stable.   *Defendants' market behavior strongly evidences a collusive agreement* between Defendants . . . .

Complaint, *Ellingson et al. v. Chunghwa Pictures Tubes Ltd., et al.*, filed March 10, 2008, at ¶ 65 (emphasis added).

> Indeed, *during the Class Period*, there were not only periods of *unnatural and sustained price stability*, but there were also *inexplicable increases* in the prices of CRTs, despite declining demand due to approaching obsolescence of CRTs caused by the emergence of a new, superior, substitutable technology.

Complaint, *Glanz et al. v. Chunghwa Pictures Tubes Ltd., et al.*, filed December 31, 2008, at ¶ 53.

---

[52]  Factual statements alleged in both the operative complaint and prior complaints are deemed admissions by plaintiffs.  *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988) ("factual assertions in pleadings . . . are considered judicial admissions conclusively binding on the party who made them.").

1    But Plaintiffs do not attempt to explain, and indeed cannot reconcile, their allegations

2   about paying non-competitive prices to manufacturers during the 1990s and Defendants'

3   "opportunity" and "incentive" to collude, with their allegation that they "could not discover"

4   the alleged conspiracy.   *See*, *e.g.*, *Water of Saratoga Springs, Inc. v. State*, 498 N.Y.S.2d 196,

5   199 (N.Y. App. Div. 1986), *aff'd* 498 N.E.2d 146 (N.Y. 1986) (plaintiffs' "failure . . . to attempt

6   to ascertain the existence of [their claims] cannot inure to [their] benefit.").   Plaintiffs are

7   bound to the allegations in their complaint, allegations which preclude Plaintiffs from tolling

8   the statute of limitations in the Due Diligence Jurisdictions.   *See Am. Title Ins. Co.*, 861 F.2d at

9   226 ("factual assertions in pleadings . . .   are considered judicial admissions conclusively

10   binding on the party who made them.").

11       **C.     Plaintiffs Had Constructive Knowledge Of Purported Facts Constituting
              Their Claims, Barring Tolling In All 22 States**

12

13    For all of the reasons described in Section VI.B above, Plaintiffs had at least

14   constructive knowledge of the facts upon which their claims are predicated.   This is fatal in

15   all 22 states at issue, as no state tolls the statute of limitations if the plaintiff has constructive

16   knowledge of the alleged conspiracy.[53]   In short, Plaintiffs cannot assert that their claims

17   could not have been discovered until "shortly before this litigation was commenced," *see*

18   IP-CAC, ¶ 289, while at the same time allege that publicly available information from as far

19   back as 1992 – years preceding commencement of the class period – shows that the alleged

20   conspiracy existed.   IP-CAC, ¶ 192 ("Despite such predictions [in 1992], and the existence

21   of economic conditions warranting a drop in prices, CRT Product prices nonetheless remained

22   _____

23   [53]   This is also the case in Arizona, Hawaii, and Nebraska, regardless of whether or not the
      caselaw from those three states impose an affirmative duty of due diligence.   *See*, *e.g.*,
      *Ulibarri v. Gerstenberger*, 871 P.2d 698, 709 (Ariz. Ct. App. 1993) (issue in fraudulent

24   concealment claim was "whether [plaintiff] could have discovered the existence of her cause
      of action within the statutory time period"); *Au v. Au*, 626 P.2d 173, 178 (Haw. 1981)

25   (fraudulent concealment will not toll statute of limitations if facts exist that should allow
      plaintiff to "avail himself of those means which the law provides for prosecuting or

26   preserving his claim") (quotation omitted); *Manker v. Manker*, 644 N.W.2d 522, 535 (Neb.
      2002) (requiring that party asserting estoppel lack knowledge and means of knowledge as to

27   real facts in question).

28

1  stable").   Plaintiffs cannot have it both ways; they cannot maintain that publicly available

2  information supported their claims in the 1990s and simultaneously assert that they could not

3  have known about those claims until they chose to commence litigation in November, 2007.

4  **CONCLUSION**

5  For all of the reasons stated above, Plaintiffs' Consolidated Amended Complaint

6  should be dismissed in its entirety.

7

8  Dated: May 18, 2009                    By:   /s/ David L. Yohai

9                                          STEVEN A. REISS (*pro hac vice*)
                                           Email: steven.reiss@weil.com

10                                         DAVID L. YOHAI (*pro hac vice*)
                                           Email: david.yohai@weil.com

11                                         DAVID E. YOLKUT (*pro hac vice*)
                                           Email: david.yolkut@weil.com

12                                         **WEIL, GOTSHAL & MANGES LLP**
                                           767 Fifth Avenue

13                                         New York, New York 10153-0119
                                           Telephone:   (212) 310-8000

14                                         Facsimile:   (212) 310-8007

15                                         GREGORY D. HULL (57367)

16                                         Email: greg.hull@weil.com
                                           **WEIL, GOTSHAL & MANGES LLP**

17                                         201 Redwood Shores Parkway

18                                         Redwood Shores, California 94065-1175
                                           Telephone: (650) 802-3000

19                                         Facsimile: (650) 802-3100

20                                         By:   /s/ Jeffrey L. Kessler

21                                         JEFFREY L. KESSLER (*pro hac vice*)
                                           Email: jkessler@dl.com

22                                         A. PAUL VICTOR (*pro hac vice*)
                                           Email: pvictor@dl.com

23                                         EVA W. COLE (*pro hac vice*)
                                           Email: ecole@dl.com

24                                         **DEWEY & LEBOEUF LLP**
                                           1301 Avenue of the Americas

25                                         New York, NY 10019

26                                         Telephone: (212) 259-8000
                                           Facsimile: (212) 259-7013

27

28  MDL NO. 1917                                    DEFENDANTS' JOINT NOTICE OF MOTION
                                                    AND MOTION TO DISMISS THE IP-CAC

*Attorneys for Defendants Panasonic Corporation of North America, MT Picture Display Co., Ltd., and Panasonic Corporation (f/k/a Matsushita Electric Industrial Co., Ltd.)*

By: ___/s/ Gary L. Halling_____
GARY L. HALLING (66087)
Email: ghalling@sheppardmullin.com
JAMES L. MCGINNIS (95788)
Email: jmcginnis@sheppardmullin.com
MICHAEL SCARBOROUGH (203524)
Email: mscarborough@sheppardmullin.com
**SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone: (415)-434-9100
Facsimile: (415)-434-3947

*Attorneys for Defendants Samsung SDI America, Inc., Samsung SDI Co., Ltd., Samsung SDI (Malaysia) Sdn. Bhd., Samsung SDI Mexico S.A. de C.V., Samsung SDI Brasil Ltda., Shenzhen Samsung SDI Co. Ltd., and Tianjin Samsung SDI Co., Ltd.*

By: ___/s/ Michael Tubach_____
MICHAEL TUBACH (145955)
Email: mtubach@omm.com
**O'MELVENY & MYERS LLP**
Two Embarcadero Center, 28th Floor
San Francisco, California 94111-3823
Telephone: (415) 984-8876
Facsimile: (415) 984-8701

IAN SIMMONS (*pro hac vice*)
Email: isimmons@omm.com
**O'MELVENY & MYERS LLP**
1625 Eye Street, NW
Washington, DC 20006
Telephone: (202) 383-5300
Faacsimile: (202) 383-5414

*Attorneys for Defendants Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc.*

By: ___/s/ Samuel Miller_____
SAMUEL R. MILLER (66871)
Email: srmiller@sidley.com
RYAN M. SANDROCK (251781)
Email: rsandrock@sidley.com
**SIDLEY AUSTIN LLP**
555 California Street
San Francisco, CA 94104
Telephone: (415) 772-1200
Facsimile: (415) 772-7400

***Attorneys for Defendants LG Electronics, Inc., LG Electronics USA, Inc., and LG Electronics Taiwan Taipei Co., Ltd.***

By: ___/s/ Ethan E. Litwin_____
ETHAN E. LITWIN   (*pro hac vice*)
Email: LitwinE@howrey.com
**HOWREY LLP**
153 East 53rd Street, 54th Floor
New York, NY 10022
Telephone: (212) 896-6500
Facsimile: (212) 896-6501

***Attorneys for Defendant Philips Electronics North America Corporation, Koninklijke Philips Electronics N.V., Philips Electronics Industries (Taiwan ), Ltd., and Philips da Amazonia Industria Electronica Ltda.***

By: /s/ Bruce H. Jackson_____
BRUCE H. JACKSON (98118)
Email:   bruce.h.jackson@bakernet.com)
ROBERT W. TARUN (64881)
Email:   robert.w.tarun@bakernet.com
**BAKER & MCKENZIE LLP**
Two Embarcadero Center, 11th Floor
San Francisco, CA   94111-3802
Telephone:   (415) 576-3000
Facsimile:   (415) 576-3099

PATRICK J. AHERN (*pro hac vice*)
Email:   patrick.j.ahern@bakernet.com
ROXANE C. BUSEY (*pro hac vice*)
Email:   roxane.c.busey@bakernet.com
KAREN SEWELL (*pro hac vice*)

MDL NO. 1917

1

Email:   karen.sewell@bakernet.com
**BAKER & MCKENZIE LLP**

2

130 E. Randolph Dr., Suite 3500
Chicago, IL 60601

3

Telephone:    (312) 861-8000

4

*Attorneys for Tatung Company of America, Inc.*

5

By: /s/ Kent M. Roger

6

KENT M. ROGER (95987)
Email:    kroger@morganlewis.com

7

THOMAS R. GREEN (203480)
Email:    tgreen@morganlewis.com

8

**MORGAN, LEWIS & BOCKIUS LLP**
One Market, Spear Street Tower

9

San Francisco, CA 94105-1126
Telephone: (415) 442-1000

10

Facsimile: (415) 442-1001

11

*Attorneys for Defendants Hitachi, Ltd., Hitachi*

12

*Asia, Ltd., Hitachi America, Ltd., Hitachi*
*Electronic Devices (USA), Inc., and Hitachi*

13

*Displays, Ltd.*

14

15

By: /s/ Terry Calvani

16

TERRY CALVANI (53260)
Email: terry.calvani@freshfields.com

17

BRUCE C. MCCULLOCH (*pro hac vice*)
Email: bruce.mcculloch@freshfields.com

18

KATE S. MCMILLAN (*pro hac vice*)
Email: kate.mcmillan@freshfields.com

19

**FRESHFIELDS BRUCKHAUS DERINGER**
**US LLP**

20

701 Pennsylvania Avenue, N.W., Suite 600
Washington, DC 20004

21

Telephone: (202) 777-4500
Facsimile: (202) 777-4555

22

23

*Attorneys for Defendant Beijing Matsushita*
*Color CRT Company, Ltd.*

24

By: /s/ George L. Paul

25

CHRISTOPHER M. CURRAN (*pro hac vice*)
Email:    ccurran@whitecase.com

26

GEORGE L. PAUL (*pro hac vice*)
Email:    gpaul@whitecase.com

27

LUCIUS B. LAU (*pro hac vice*)

28

MDL NO. 1917

DEFENDANTS' JOINT NOTICE OF MOTION
AND MOTION TO DISMISS THE IP-CAC

53

1

Email:   alau@whitecase.com
**WHITE & CASE LLP**

2

701 Thirteenth Street, N.W.
Washington, DC   20005

3

Telephone: (202) 626-3600
Facsimile: (202) 639-9355

4

5

*Attorneys for Defendants Toshiba Corporation,*
*Toshiba America Electronic Components, Inc.,*

6

*Toshiba America Information Systems, Inc.,*
*Toshiba America, Inc., and Toshiba America*

7

*Consumer Products L.L.C.*

8

9

By: /s/ Thad A. Davis
Thad A. Davis (220503)

10

Email:   Thad.Davis@ropesgray.com
**ROPES & GRAY LLP**

11

One Embarcadero Center
Suite 2200

12

San Francisco, CA 94111-3711
Telephone:   (415) 315-2329

13

Facsimile:   (415) 315-4899

14

*Attorneys for Daewoo International Co.*

15

By: /s/ Terrance A. Callan

16

TERRANCE A. CALLAN (36305)
Email:   terrance.callan@pillsburylaw.com

17

**PILLSBURY**
50 Fremont Street

18

San Francisco, CA 94105-2228
Telephone:   (415) 983-1525

19

Facsimile:   (415) 983-1200

20

JOSEPH R. TIFFANY II (67821)

21

Email:   joseph.tiffany@pillsburylaw.com
PHILIP A. SIMPKINS (246635)

22

Email:   philip.simpkins@pillsburylaw.com
**PILLSBURY**

23

2475 Hanover Street

24

Palo Alto, CA 94304-1114
Telephone:   (650) 233-4500

25

Facsimile:   (650) 233-4545

26

*Attorneys for Irico Display Devices Co., Ltd.*

27

*and Irico Group Corporation*

28

DEFENDANTS' JOINT NOTICE OF MOTION
AND MOTION TO DISMISS THE IP-CAC

1

2

By: /s/ William Diaz
WILLIAM DIAZ (232297)

3

Email:   wdiaz@mwe.com
**MCDERMOTT WILL & EMERY**

4

18191 Von Karman Avenue

5

Suite 500
Irvine, CA 92612-7108

6

Telephone:   (949) 851-0633
Facsimile:    (949) 851-9348

7

8

*Attorneys for Samtel Color, Ltd.*

9

10

Pursuant to General Order, § X-B, the filer attests that concurrence in the filing of this

11

document has been obtained from each of the above signatories.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28