Christopher M. Curran (*pro hac vice*)
ccurran@whitecase.com
George L. Paul (*pro hac vice*)
gpaul@whitecase.com
Lucius B. Lau (*pro hac vice*)
alau@whitecase.com
White & Case LLP
701 Thirteenth Street, N.W.
Washington, DC  20005
Telephone:  (202) 626-3600
Facsimile:  (202) 639-9355

*Counsel to Defendants Toshiba Corporation,*
*Toshiba America, Inc., Toshiba America*
*Information Systems, Inc., Toshiba America*
*Consumer Products, L.L.C., and Toshiba America*
*Electronic Components, Inc.*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
(SAN FRANCISCO DIVISION)

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Case No. 07-5944 SC MDL No. 1917 |
| This Document Relates to: DIRECT PURCHASER ACTIONS and INDIRECT PURCHASER ACTIONS | **THE TOSHIBA ENTITIES' MOTION TO DISMISS (1) THE DIRECT PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT AND (2) THE INDIRECT PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT** Date:     August 4, 2009 Time:     9:00 a.m. Before:   Hon. Charles A. Legge, U.S. District Judge (Ret.), Special Master |

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

1

## <u>TABLE OF CONTENTS</u>

2

Page

3

NOTICE OF MOTION AND MOTION .................................................................................i

4

STATEMENT OF ISSUES .............................................................................................. ii

5

MEMORANDUM OF POINTS AND AUTHORITIES ..........................................................1

6

7

I.   The Allegations Against The Toshiba Entities Differ Materially From The
     Allegations Against The Other Defendants ...............................................................1

8

9        A.   The Plaintiffs Do Not Allege That Any Of The Toshiba Entities
              Have Been Indicted In The CRT Matter..........................................................2

10

11       B.   The Plaintiffs Do Not Allege That Any Of The Toshiba Entities
              Have Received A Grand Jury Subpoena In The CRT Matter ..........................2

12

13       C.   The Plaintiffs Do Not Allege That The Toshiba Entities Are Being
              Investigated By Other Competition Authorities In The CRT Matter ...............3

14

15       D.   The Plaintiffs Do Not Allege That The Toshiba Entities Have
              Pleaded Guilty Or Been Indicted In Governmental Investigations
              Involving Other Industries ...............................................................................4

16

17       E.   The Plaintiffs Do Not Allege That The Toshiba Entities Are
              Oligopolists In The CRT Industry ...................................................................5

18

19       F.   The Plaintiffs Do Not Allege That The Toshiba Entities Increased
              Prices In The CRT Industry.............................................................................6

20

21       G.   The Plaintiffs Do Not Allege That The Toshiba Entities Reduced
              Manufacturing Capacity In The CRT Industry.................................................6

22

23       H.   The Plaintiffs Do Not Allege That The Toshiba Entities
              Participated In Trade Associations Or Trade Events In The CRT
              Industry ...........................................................................................................7

24

25       I.   The Plaintiffs Allege That Toshiba Exited The CRT Industry In
              2002 .................................................................................................................7

26

27

II.  The Plaintiffs Fail To Allege Sufficient Facts Suggesting That Any Of The
     Toshiba Entities Were Involved In An Antitrust Conspiracy........................................8

28

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

A.    The Plaintiffs Improperly Focus On The Toshiba "Corporate Family" Rather Than The Acts Of Each Separate Corporate Entity ..............10

B.    The Plaintiffs Do Not Include Sufficient Allegations Of Alter Ego Liability So As To Disregard The Separate Nature Of Toshiba Corp. And Its Subsidiaries ...............................................................................11

C.    The Plaintiffs Fail To Make Sufficient Allegations That Any Of The Toshiba Entities Participated In An Alleged Conspiracy ........................12

III.    Even If The *Twombly* Pleading Standard Were Met, The Plaintiffs Allege That Toshiba Corp. Exited The CRT Market In 2002, Which Constitutes Withdrawal As A Matter Of Law ................................................................18

CONCLUSION.............................................................................................................21

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

## **TABLE OF AUTHORITIES**

<u>Cases</u>                                                                                                 <u>Page</u>

*Am. Nat'l Red Cross v. United Way Cal. Capital Region,*
   No. 07-1236, 2007 WL 4522967 (E.D. Cal. Dec. 19, 2007) ........................................ 15

*Arista Records LLC v. Lime Group LLC,*
   532 F. Supp. 2d 556 (S.D.N.Y. 2007) ...................................................................... 17

*Ashcroft v. Iqbal,*
   No. 07-1015, 2009 WL 1361536 (U.S. May 18, 2009) ........................................ *passim*

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2007) .......................................................................................... *passim*

*Berry v. Indianapolis Life Ins. Co.,*
   No. 3:08-CV-0248-B, 2009 WL 656531 (N.D. Tex. Mar. 11, 2009) .......................... 14

*Blue Chip Stamps v. Manor Drug Stores,*
   421 U.S. 723 (1975) ................................................................................................ 9

*Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.,*
   509 U.S. 209 (1993) ................................................................................................ 5

*Copperweld Corp. v. Independence Tube Corp.,*
   467 U.S. 752 (1984) .............................................................................................. 17

*Doe v. Unocal Corp.,*
   248 F.3d 915 (9th Cir. 2001) ................................................................................. 11

*In re Coupon Clearing Serv., Inc.,*
   113 F.3d 1091 (9th Cir. 1997) ............................................................................... 15

*In re Digital Music Antitrust Litig.,*
   592 F. Supp. 2d 435 (S.D.N.Y. 2008) .................................................................. 3, 4

*In re Elevator Antitrust Litig.,*
   502 F.3d 47 (2d Cir. 2007) ............................................................................ 3, 10, 13

*In re Graphics Processing Units Antitrust Litig.,*
   527 F. Supp. 2d 1011 (N.D. Cal. 2007) ........................................................ 2, 5, 7, 12

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

*In re Late Fee and Over-Limit Fee Litig.*,
        528 F. Supp. 2d 953 (N.D. Cal. 2007) .......................................................... 13, 15

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
        586 F. Supp. 2d 1109 (N.D. Cal. 2008) ............................................................. 10

*Jung v. Ass'n of Am. Med. Colls.*,
        300 F. Supp. 2d 119 (D.D.C. 2004) ................................................................... 11

*Kendall v. Visa U.S.A., Inc.*,
        518 F.3d 1042 (9th Cir. 2008) ............................................................. 9, 13, 14, 15

*Knudsen v. CHSI of California, LLC*,
        No. 07-02231, 2008 WL 719248 (E.D. Cal. Mar. 17, 2008) ............................ 11

*Levine v. United States*,
        383 U.S. 265 (1966) ........................................................................................... 19

*Lovesy v. Armed Forces Benefit Ass'n*,
        No. 07-2745, 2008 WL 4856350 (N.D. Cal. Nov. 7, 2008) .............................. 11

*Morton's Market Inc. v. Gustafson's Dairy, Inc.*,
        198 F.3d 823 (11th Cir. 1999) ........................................................................... 19

*Mountain View Pharmacy v. Abbott Labs.*,
        630 F.2d 1383 (10th Cir. 1980) ......................................................................... 10

*Pacific Bell Telephone Co. v. Linkline Communications, Inc.*,
        129 S.Ct. 1109 (2009) .......................................................................................... 8

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
        494 F.3d 788 (9th Cir. 2007) ...................................................................... 17-18, 20

*Rutledge v. Electric Hose and Rubber Co.*,
        327 F. Supp. 1267 (C.D. Cal. 1971) .................................................................. 12

*Sherman v. British Leyland Motors, Ltd.*,
        601 F.2d 429 (9th Cir. 1979) ............................................................................. 12

*Total Benefits Planning Agency, Inc. v. Anthem Blue Cross and Blue Shield*,
        552 F.3d 430 (6th Cir. 2008) ............................................................................. 14

*Twombly v. Bell Atlantic Corp.*,
    425 F.3d 99 (2d Cir. 2005) ......................................................................16

*United States v. Antar*,
    53 F.3d 568 (3d Cir. 1995) .....................................................................19

*United States v. Lothian*,
    976 F.2d 1257 (9th Cir. 1992) ................................................................19

*United States v. Nerlinger*,
    862 F.2d 967 (2d Cir. 1988) ...................................................................19

*United States v. Penn-Olin Chem. Co.*,
    378 U.S. 158 (1964) ................................................................................6

*United States v. Steele*,
    685 F.2d 793 (3d Cir. 1982) ...................................................................19

## **Statutes**

5 U.S.C. § 15b (2006) ...................................................................................19

## **Other**

Transcript of Proceedings, *In re Static Random Access Memory (SRAM)*
    *Antitrust Litig.*,  No. 07-01819 (N.D. Cal. Jan. 19, 2009) ...........................16

U.S. Horizontal Merger Guidelines § 2.11 (1992) .........................................6

*Cypress' SRAM antitrust investigation closed by DOJ*, Fabtech, Dec. 15, 2008,
    http://www.fabtech.org/news/_a/cypress_sram_antitrust_investigation_closed_
    by_doj/. .................................................................................................17

Press Release, Toshiba Corporation, Matsushita and Toshiba Announce Outline
of New CRT Joint Venture (Jan. 29, 2003),
    http://www.toshiba.co.jp/about/press/2003_01/pr2902.htm. ...........................18

Rick C. Hodgin, *SRAM antitrust investigations closed against Hynix, not*
charged, TG Daily, Dec. 19, 2008,
    http://www.tgdaily.com/content/view/40651/118/. ........................................16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

*US DOJ Closes Investigation of SRAM Sales Involving Mitsubishi Electric Subsidiary*, Business Wire, Dec. 22, 2008, http://www.allbusiness.com/legal/antitrust-trade-law/11730241-1.html .............................16

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on August 4, 2009, at 9:00 a.m., or as soon thereafter as this matter may be heard before the Honorable Charles A. Legge, U.S. District Court Judge (Ret.), Special Master, in the San Francisco Resolution Center of JAMS, Two Embarcadero Center, Suite 1500, San Francisco, California, 94111, Defendants Toshiba Corporation, Toshiba America, Inc., Toshiba America Information Systems, Inc., Toshiba America Consumer Products, L.L.C., and Toshiba America Electronic Components, Inc. will and hereby do move this Court for an order dismissing the Direct Purchaser Plaintiffs' Consolidated Amended Complaint and the Indirect Purchaser Plaintiffs' Consolidated Amended Complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

The motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities in support thereof, the pleadings and correspondence on file with the Court, and such arguments and authorities as may be presented at or before the hearing.

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

## STATEMENT OF ISSUES

1. Whether the Direct Purchaser Plaintiffs' Consolidated Amended Complaint ("DP-CAC") and Indirect Purchaser Plaintiffs' Consolidated Amended Complaint ("IP-CAC") fail to state a claim upon which relief can be granted with respect to Toshiba Corporation ("Toshiba Corp."), Toshiba America, Inc. ("TAI"), Toshiba America Information Systems, Inc. ("TAIS"), Toshiba America Consumer Products, L.L.C. ("TACP"), and Toshiba America Electronic Components, Inc. ("TAEC") (collectively "Toshiba entities"), in that they fail to allege sufficient evidentiary facts to suggest that these entities were involved in an antitrust conspiracy, thereby failing to satisfy the new pleading standard set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

2. Whether the DP-CAC and IP-CAC fail to state a claim upon which relief can be granted with respect to Toshiba Corp., TAI, TAIS, TACP, and TAEC in that, even if the *Twombly* pleading standard has been met, Toshiba Corp. divested its CRT-related assets in 2002, resulting in a withdrawal by Toshiba Corp. as a matter of law from any antitrust conspiracy that existed, thus making the claims in the DP-CAC and IP-CAC barred by the statute of limitations.

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

## MEMORANDUM OF POINTS AND AUTHORITIES

As established in Defendants' joint motions to dismiss, the DP-CAC and IP-CAC are legally deficient in several respects, including on grounds of lack of subject-matter jurisdiction and lack of standing on the part of the Plaintiffs.  Pursuant to this Court's directive, Section IV of Defendants' joint motion to dismiss the DP-CAC outlines the applicable pleading standard under *Twombly*, and the Toshiba entities hereby submit this separate brief to demonstrate that the allegations against them in the DP-CAC and IP-CAC fail to satisfy that standard.  As demonstrated in this brief, the allegations against the Toshiba entities are even weaker than the allegations against the other Defendants.  The factual allegations against the Toshiba entities do not come close to satisfying the *Twombly* standard, particularly as that standard has recently been explained in *Ashcroft v. Iqbal*, No. 07-1015, 2009 WL 1361536, at *14 (U.S. May 18, 2009) ("It is the conclusory nature of respondent's allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth.").  Furthermore, both the Direct Purchaser Plaintiffs and Indirect Purchaser Plaintiffs allege that the Toshiba entities exited the CRT market in 2002, such that the claims against the Toshiba entities are time-barred as a matter of law in any event.

### I.    The Allegations Against The Toshiba Entities Differ Materially From The Allegations Against The Other Defendants

Both the Direct Purchaser Plaintiffs and Indirect Purchaser Plaintiffs make allegations against the Toshiba entities that are far narrower than those against other Defendants.  The Toshiba entity-specific allegations show that the Toshiba entities were differently situated from other CRT manufacturers and outside the scope of any conspiracy that could be plausibly alleged.  Even if the allegations in the complaints did describe an antitrust conspiracy that is plausible with respect to some Defendants, the allegations against the Toshiba entities are insufficient to plausibly suggest that the Toshiba entities participated in any such conspiracy.  The allegations against the Toshiba entities differ from the allegations against other Defendants in at least nine key areas.

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

### A.   The Plaintiffs Do Not Allege That Any Of The Toshiba Entities Have Been Indicted In The CRT Matter

Both the DP-CAC and IP-CAC contain extensive allegations about the recent indictment of C.Y. Lin, a former executive of Taiwanese Defendant Chunghwa, for alleged participation in a CRT conspiracy.  DP-CAC ¶ 126; IP-CAC ¶ 205.  Whatever import these allegations may have with respect to the claims against Chunghwa or any other Defendant, these allegations have no bearing upon the Toshiba entities.  None of the Toshiba entities, nor anyone affiliated with them, has been indicted in the CRT matter (or any other matter). Furthermore, nothing in the Lin indictment implicates the Toshiba entities in any way.

### B.   The Plaintiffs Do Not Allege That Any Of The Toshiba Entities Have Received A Grand Jury Subpoena In The CRT Matter

The Direct Purchaser Plaintiffs also observe that Chunghwa PT has received a "summons" in the CRT matter, hinting that this somehow demonstrates that Chunghwa PT has done something improper.  DP-CAC ¶ 131.  The Plaintiffs do not allege that the Toshiba entities have received a summons or grand jury subpoena (and, in fact, the Toshiba entities have received none).  Rather, the Department of Justice's only contact with any Toshiba entity has been to ask for assistance in its investigation as a potential victim of an alleged conspiracy (on the basis of its purchases of CRTs).

An allegation that a grand jury subpoena has been issued is simply irrelevant for purposes of pleading an antitrust claim.  *See In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1024 (N.D. Cal. 2007) ("The [grand jury] investigation, however, carries no weight in pleading an antitrust conspiracy claim.  It is unknown whether the investigation will result in indictments or nothing at all.  Because of the grand jury's secrecy requirement, the scope of the investigation is pure speculation.")  This principle applies with even greater force here because the Plaintiffs do not — and cannot — allege that the Toshiba entities have received a grand jury subpoena in the CRT matter.

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

**C.** **The Plaintiffs Do Not Allege That The Toshiba Entities Are Being Investigated By Other Competition Authorities In The CRT Matter**

Plaintiffs allege that the Hungarian Competition Authority is investigating a number of CRT companies for possible antitrust violations.  DP-CAC ¶ 133; IP-CAC ¶ 213.  Unlike nearly every other Defendant, the Toshiba entities are not alleged to be a subject of that proceeding.

Plaintiffs also allege that the Japanese Fair Trade Commission ("JFTC") is investigating several other Defendants for possible antitrust violations.  *See* DP-CAC ¶ 129 (alleging Matsushita Electric Industrial Co., Ltd.'s ("MEI") CRT manufacturing facilities were raided by JFTC officials "on suspicion of anticompetitive conduct"); IP-CAC ¶ 206 (alleging Matsushita Toshiba Picture Display Co., Ltd. ("MTPD") — "the CRT unit of Defendant Panasonic" — was raided by the JFTC); DP-CAC ¶ 129 (alleging Samsung's CRT production facilities were raided).  The Plaintiffs do not allege that the Toshiba entities are involved with any JFTC investigation of the CRT industry.

Finally, the Indirect Purchaser Plaintiffs cite the publication *Asian Shimbun* in support of their allegation that the European Commission and the Department of Justice have been investigating four specific companies — MTPD, Samsung, Chunghwa, and LP Displays.  IP-CAC ¶ 210.  Again, the Toshiba entities are noticeably absent from the list of companies.

The relevancy of investigations being conducted by other competition authorities is far from clear.  *See In re Elevator Antitrust Litig.*, 502 F.3d 47, 52 (2d Cir. 2007) ("Allegations of anticompetitive wrongdoing in Europe — absent any evidence of linkage between such foreign conduct and conduct here — is merely to suggest (in defendants' words) that 'if it happened there, it could have happened here.'"); *In re Digital Music Antitrust Litig.*, 592 F. Supp. 2d 435, 444 (S.D.N.Y. 2008) (noting that "mere investigation by governmental agencies does not show an 'antitrust record,'" and further stating that "an 'antitrust record' cannot justify the already problematic inference that 'once a criminal, always a criminal'").  But even if these other investigations have any relevancy to the

1 sufficiency of the complaints, they do nothing to implicate the Toshiba entities because
2 these allegations do not involve the Toshiba entities.

3       **D.**    **The Plaintiffs Do Not Allege That The Toshiba Entities Have Pleaded**
4               **Guilty Or Been Indicted In Governmental Investigations Involving**
              **Other Industries**

5
6       Plaintiffs devote considerable attention to the Department of Justice's investigations
7 in other industries, specifically LCD, DRAM, SRAM, and Flash Memory.  DP-CAC
8 ¶¶ 122-124;  IP-CAC  ¶¶ 215-221.  As discussed below, these allegations are legally
9 irrelevant.  In any event, the Toshiba entities have neither been indicted nor pleaded guilty
10 in any of those investigations, making Plaintiffs' allegations about those investigations
11 inapplicable.

12       The allegations regarding investigations in other industries — to the extent they are at
13 all relevant — conspicuously leave out the Toshiba entities.  The Plaintiffs allege that
14 Samsung and several of its executives pleaded guilty — and Samsung paid a $300 million
15 fine — in DRAM.  DP-CAC ¶ 122; IP-CAC ¶ 215.  The Plaintiffs allege that Chunghwa
16 and four of its executives pleaded guilty and/or were indicted in LCD.  DP-CAC ¶ 124; IP-
17 CAC ¶ 219.  Chunghwa was fined $65 million in LCD.  DP-CAC ¶ 124.  The Plaintiffs
18 allege that Hitachi and several of its executives pleaded guilty and/or were indicted in LCD.
19 DP-CAC ¶ 124; IP-CAC ¶ 220.  The Plaintiffs allege that LG and three of its executives
20 pleaded guilty and/or were indicted in LCD.  DP-CAC ¶ 124; IP-CAC ¶ 219.  LP Display
21 agreed to pay a $400 million fine.  DP-CAC ¶ 124.  Even if any of the Toshiba entities had
22 pleaded guilty in one of the other investigations, moreover, courts have viewed the
23 existence of antitrust convictions in other industries with great skepticism.  *See In re Digital*
24 *Music Antitrust Litig.*, 592 F. Supp. 2d 435, 444 (S.D.N.Y. 2008) ("an 'antitrust record'
25 cannot justify the already problematic inference that 'once a criminal, always a criminal'").
26 Even if a guilty plea in other industries were relevant under *Twombly*, however, the
27 existence of such guilty pleas simply does not apply to the Toshiba entities.

28

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

### E. The Plaintiffs Do Not Allege That The Toshiba Entities Are Oligopolists In The CRT Industry

Plaintiffs make much of the fact that the CRT industry is composed of several large CRT manufacturers who dominate the market as oligopolists. *See, e.g.*, DP-CAC ¶ 112 ("In 2002, for example, three companies — Defendants LP Displays (formerly known as LGPD), Samsung, and Chunghwa — controlled approximately 62 percent of the CRT market"). Oligopoly allegations, however, do not give rise to inferences of collusive agreements to affect pricing. *See In re Graphics Processing Unit Antitrust Litig.*, 527 F. Supp. 2d at 1023 n.6 (explaining that inferences of lawful interdependence could just as easily explain parallel price increases as any other inference, and that this is particularly true "[w]here a small number of firms can affect the total market output and the market price" because the oligopoly "firms' pricing decisions are interdependent").

Even if oligopoly allegations could permit an inference of an "agreement" in restraint of trade, the complaints do not allege that the Toshiba entities have any oligopolistic interdependence with the other Defendants or independent market power. Without such an allegation, there can be no reasonable inference that the Toshiba entities were involved in any conspiracy. In any event, these oligopolists alone can control industry-wide pricing because they can exert market power. *See Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 227 (1993) ("oligopolistic price coordination" occurs when "firms in a concentrated market might in effect share monopoly power, setting their prices at a profit-maximizing, supracompetitive level by recognizing their shared economic interests and their interdependence with respect to price and output decisions."). Thus, the alleged market power held by the big three — LP Displays, Samsung, and Chunghwa — is defined by their interdependent ability to control prices.

Absent is any allegation that the Toshiba entities had an ability to affect price and, because there is no interdependence between the Toshiba entities and the oligopolists, there is no basis upon which to infer any collusive agreement. Rather, the opposite is true. A firm with a small share of the relevant market has more of an incentive to compete with the

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

oligopoly than to coordinate with it. *See United States v. Penn-Olin Chem. Co.*, 378 U.S. 158, 174 (1964) (explaining that "an aggressive, well equipped, well financed corporation" can have a "substantial incentive to compet[e]" against entrenched oligopolists, an incentive "which cannot be underestimated"); U.S. Horizontal Merger Guidelines at § 2.11 (1992) (an oligopoly can successfully coordinate on and raise prices and "omit some market participants"). The Plaintiffs focus on the market share of the oligopoly firms underscores the absence of any recognized economic theory upon which one could reasonably infer an incentive to collude on the part of the Toshiba entities.

### F.   The Plaintiffs Do Not Allege That The Toshiba Entities Increased Prices In The CRT Industry

As examples of supposedly collusive CRT pricing among Defendants, Plaintiffs allege several pricing increases for certain Defendants. *See, e.g.*, DP-CAC ¶ 195 (LG raised its prices of 15″ and 17″ CRT monitors in India); DP-CAC ¶ 209, IP-CAC ¶ 197 (Samsung, Philips, and LG all raised their prices for CRT Products in 2004). The Toshiba entities are not among them.

### G.   The Plaintiffs Do Not Allege That The Toshiba Entities Reduced Manufacturing Capacity In The CRT Industry

A key aspect of the Plaintiffs' complaints is that CRT manufacturers closed facilities to reduce manufacturing capacity and prop up prices. No allegation even remotely suggests that the Toshiba entities had any involvement in the alleged capacity reductions. DP-CAC ¶¶ 181-187; IP-CAC ¶ 126. The Plaintiffs allege that, by reducing output, manufacturers could charge more. The complaints allege closings only after 2003. *See* DP-CAC ¶¶ 183, 185 (MTPD plant closures in December 2004, December 2005, and early 2006); DP-CAC ¶ 184 (LGPD plant closure in England in July 2005); DP-CAC ¶ 186 (Samsung SDI plant closure in late 2005); DP-CAC ¶ 187 (Orion America plant closure in July 2006). The Toshiba entities are alleged to have been out of the CRT market in 2002 (DP-CAC ¶ 113; IP-CAC ¶ 125) and, unlike several other Defendants, are not alleged to have been involved in any reduction in manufacturing capacity. *See* DP-CAC ¶ 182 (MEI closed its CRT plant

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

in Mexico); DP-CAC ¶¶ 183, 185, 187 (MTPD closed factories in New York, Ohio, Germany, and Malaysia); DP-CAC ¶ 184 (LGPD ceased CRT production in Durham, England); DP-CAC ¶ 186 (Samsung closed factory in Germany); DP-CAC ¶ 187 (Orion America closed factory in Indiana).  Nor do the Plaintiffs allege any agreement, meeting, or other event tying the Toshiba entities to these closures.

    **H.**    **The Plaintiffs Do Not Allege That The Toshiba Entities Participated In Trade Associations Or Trade Events In The CRT Industry**

Plaintiffs allege that Defendants carried out the conspiracy at a number of meetings that allegedly occurred during trade association meetings and trade show events.  *See* DP-CAC ¶¶ 177-178 (Samsung, LG, and Hitachi executives participated in the Korea Display Conference); DP-CAC ¶ 177 (Samsung and LG were members of the Korea Display Equipment Material Industry Association); IP-CAC ¶ 124 (Samsung and LG are two co-founders of the Korea Display Industry Association); IP-CAC ¶ 124 (Chunghwa, Hitachi, and Samsung are all members of the Society for Information Display); IP-CAC ¶ 124 (Daewoo, LG, LP Displays, and Samsung are members of the Electronic Display Industrial Research Association).  Notably, there are no allegations that any Toshiba entity founded, joined, or participated in any trade associations or attended any trade events.  *See In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d at 1023 ("Missing . . . is any specific allegation that defendants' representatives actually met to fix prices.").  And the Plaintiffs do not even allege the existence of any actions by the Toshiba entities that coincide with the trade association events alleged in the complaints.  *Cf. id.* ("Plaintiffs' allegations are just as consistent with coincidence as they are with conspiracy.").

    **I.**    **The Plaintiffs Allege That Toshiba Exited The CRT Industry In 2002**

Plaintiffs allege that most of the Defendants remained in the CRT industry throughout the relevant class period (*i.e.*, March 1, 1995 to November 25, 2007).  *See, e.g.*, DP-CAC ¶ 155, IP-CAC ¶ 173 (Chunghwa participated in meetings until 2006 or 2007); DP-CAC ¶ 166, IP-CAC ¶ 166 (Samsung participated in meetings until 2006 or 2007); DP-CAC ¶ 156, IP-CAC ¶ 175 (Daewoo participated in meetings until 2004); DP-CAC ¶ 160

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1  (LG Electronics participated in meetings until 2006); DP-CAC ¶ 164 (Philips participated in

2  meetings until 2007); DP-CAC ¶ 159, IP-CAC ¶ 185 (Irico participated in meetings until

3  2006 or 2007); DP-CAC ¶ 168, IP-CAC ¶ 187 (Samtel participated in meetings until 2006);

4  DP-CAC ¶ 170, IP-CAC ¶ 186 (Thai CRT participated in meetings until 2006); DP-

5  CAC ¶ 175, IP-CAC ¶ 172 (LP Displays participated in meetings until 2006); IP-

6  CAC ¶ 184 (BMCC participated in meetings until 2007).   In contrast, Plaintiffs allege that

7  Toshiba Corp. entered into a joint venture with MEI in 2002 "in which the entities

8  consolidated their CRT businesses."    DP-CAC ¶ 71; IP-CAC  ¶ 72.    The Plaintiffs

9  characterize this joint venture as a "merger" of "Toshiba's" and MEI's CRT businesses.

10  DP-CAC ¶ 113; IP-CAC ¶ 125.   In so doing, the Toshiba entities exited the CRT market,

11  well before the crux of Plaintiffs' allegations.   *See also* DP-CAC ¶ 171, IP-CAC ¶ 177

12  (alleging "Toshiba" participated in illegal meetings only until 2003).

13      The merger created MTPD.  DP-CAC ¶ 46; IP-CAC ¶ 72.  "On April 3, 2007, MEI

14  purchased the remaining 35.5 percent stake in the joint venture, making it a wholly-owned

15  subsidiary of MEI."  DP-CAC ¶ 46; *see also* IP-CAC ¶ 80 (same).  MTPD is a defendant in

16  this case.  DP-CAC ¶ 79; IP-CAC ¶ 85.

17  **II.**    **The Plaintiffs Fail To Allege Sufficient Facts Suggesting That Any Of The**
18           **Toshiba Entities Were Involved In An Antitrust Conspiracy**

19      As the Court knows, *Twombly* held that in order to survive a motion to dismiss, a

20  complaint must contain "allegations plausibly suggesting (not merely consistent with)

21  agreement . . . ."   *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007).   Recently, in

22  *Pacific Bell Telephone Co. v. Linkline Communications, Inc.*, 129 S.Ct. 1109, 1123 (2009),

23  the Supreme Court characterized *Twombly* as creating a "new pleading standard."   The

24  importance of *Twombly* was reiterated today by the Supreme Court in *Ashcroft v. Iqbal*,

25  No. 07-1015, 2009 WL 1361536 (U.S. May 18, 2009).   There, the Court noted that "[t]wo

26  working principles underlie our decision in *Twombly*."   *Id.* at *13.   "First, the tenet that a

27  court must accept as true all of the allegations contained in a complaint is inapplicable to

28

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

1    legal conclusions." *Id.*  "Second, only a complaint that states a plausible claim for relief

2    survives a motion to dismiss." *Id.*

3        The Ninth Circuit has fully embraced the holding of *Twombly*.  In *Kendall v. Visa*

4    *U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008), the Court observed that "[a] bare

5    allegation of a conspiracy is almost impossible to defend against, particularly where the

6    defendants are large institutions with hundreds of employees entering into contracts and

7    agreements daily."   Thus, in order for a complaint to properly "allege an agreement

8    between antitrust co-conspirators, the complaint must allege facts such as a 'specific time,

9    place, or person involved in the alleged conspiracies' to give a defendant seeking to

10   respond to allegations of a conspiracy an idea of where to begin." *Id.* (quoting *Twombly*,

11   550 U.S. at 564 n.10).  Stated differently, a complaint must answer "the basic questions:

12   who, did what, to whom (or with whom), where, and when?" *Id.* at 1048.

13       In their 48-page complaint, the Direct Purchaser Plaintiffs devote a mere two

14   paragraphs to describe, in their view, how the Toshiba entities were involved in the alleged

15   antitrust conspiracy.   DP-CAC ¶¶ 171-72.   In their 92-page complaint, the Indirect

16   Purchaser Plaintiffs devote a mere five paragraphs to describe, in their view, how the

17   Toshiba entities were involved in the alleged antitrust conspiracy.  IP-CAC ¶¶ 141, 164-65,

18   177-78.  These sparse allegations are the epitome of formulaic pleading.  They do not

19   answer the basic questions of "who, did what, to whom (or with whom), where, and

20   when?" *Kendall*, 518 F.3d at 1048.  Rather, they merely reflect "a largely groundless

21   claim" that only serves to "take up the time of a number of other people, with the right to

22   do so representing an *in terrorem* increment of the settlement value." *Twombly*, 550 U.S.

23   at 558 (quoting *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 741 (1975))

24   (internal quotation marks omitted).  Neither complaint satisfies *Twombly*'s new pleading

25   standard.

26

27

28

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**A.**     **The Plaintiffs Improperly Focus On The Toshiba "Corporate Family" Rather Than The Acts Of Each Separate Corporate Entity**

In order to meet the basic requirements for pleading an antitrust conspiracy under *Twombly*, the complaints must provide factual allegations against each individual Toshiba entity — Toshiba Corp., TAI, TACP, TAIS, and TAEC — to support the inference of a plausible conspiracy.  *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1117 (N.D. Cal. 2008) (dismissing a complaint and noting that "the complaint must allege that each individual defendant joined the conspiracy and played some role in it because, at the heart of an antitrust conspiracy is an agreement and a conscious decision by each defendant to join it") (internal quotation marks omitted).

Rather than making factual allegations against each individual Toshiba entity, the Plaintiffs have opted to make allegations with respect to "corporate families."  DP-CAC ¶ 154; IP-CAC ¶ 188.  Plaintiffs also make vague and generic allegations that "Toshiba" participated in the alleged conspiracy by meeting or communicating with other, often unnamed, Defendants (IP-CAC ¶¶ 141, 164-65) and that "Toshiba" never withdrew from the alleged conspiracy (DP-CAC ¶ 171; IP-CAC ¶ 177).  When they do identify particular Toshiba entities, Plaintiffs cryptically allege that those entities "were represented" at meetings by some unidentified party.  DP-CAC ¶¶ 171-72; IP-CAC ¶¶ 177-78.  This "corporate family" approach has already been considered and rejected by this Court on at least one occasion.  *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d at 1117 ("[G]eneral allegations as to all defendants, to 'Japanese defendants,' or to a single corporate entity such as 'Hitachi' is insufficient to put specific defendants on notice of the claims against them."); *see also Mountain View Pharmacy v. Abbott Labs.*, 630 F.2d 1383, 1388 (10th Cir. 1980) ("A blanket statement that twenty-eight defendants have conspired to fix prices on drug sales to thirteen plaintiffs does not provide adequate notice for responsive pleading."); *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50-51 (2d Cir. 2007) ("The list is in entirely general terms without any specification of any particular activities by any particular defendant[; it] is nothing more than a list of theoretical possibilities,

which one could postulate without knowing any facts whatever."); *Jung v. Ass'n of Am. Med. Colls.*, 300 F. Supp. 2d 119, 163 (D.D.C. 2004) ("Plaintiffs cannot escape their burden of alleging that each defendant participated in or agreed to join the conspiracy by using the term 'defendants' to apply to numerous parties without any specific allegations as to the AHA."). This Court should also conclude that the Plaintiffs may not make allegations against "corporate families."

<div style="margin-left:2em;">

**B.**    **The Plaintiffs Do Not Include Sufficient Allegations Of Alter Ego Liability So As To Disregard The Separate Nature Of Toshiba Corp. And Its Subsidiaries**

</div>

Plaintiffs may not circumvent the *Twombly* requirement that a complaint must set forth individualized allegations against each named Defendant by grouping the individual Toshiba entities into a "corporate group," and imputing the actions of one Toshiba entity to another. Plaintiffs attempt to make a case for alter ego liability by including a single conclusory reference at the end of each allegation identifying the individual Toshiba entities that Toshiba Corp. "dominated and controlled the finance, policies, and affairs of [the Toshiba subsidiary] relating to the antitrust violations alleged in this Complaint." DP-CAC ¶¶ 72-77; IP-CAC ¶¶ 73-78. The attempt fails.

In order to show that a parent and subsidiary are not separate and distinct entities, Plaintiffs must make out a *prima facie* case (1) that there is such unity of interest and ownership that the separate personalities of the two entities no longer exist and (2) that failure to disregard their separate entities would result in fraud or injustice. *Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001). Plaintiffs cannot make such a showing by relying on a "formulaic recitation of the elements"; rather, "a plaintiff must allege specifically both of the elements of alter ego liability, as well as facts supporting each." *Knudsen v. CHSI of California, LLC*, No. 07-02231, 2008 WL 719248, at *2 (E.D. Cal. Mar. 17, 2008). "Conclusory allegations of 'alter ego' status are insufficient to state a claim." *Id.*; *see also Lovesy v. Armed Forces Benefit Ass'n*, No. 07-2745, 2008 WL 4856350, at *5 (N.D. Cal. Nov. 7, 2008) ("[Plaintiff] must set forth 'sufficiently specific

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1  factual allegations' to support an alter ego claim in order to overcome a motion to
2  dismiss."); *accord Sherman v. British Leyland Motors, Ltd.*, 601 F.2d 429, 441 (9th Cir.
3  1979) (dismissing claims against parent when based solely on parent-subsidiary
4  relationship).

5       Aside from one conclusory statement inserted at the end of each paragraph
6  identifying each Toshiba Corp. subsidiary entity, Plaintiffs provide absolutely no facts to
7  support their allegations that Toshiba Corp. "dominated and controlled" its subsidiaries.
8  Thus, the Plaintiffs' factually sparse and entirely conclusory allegations fail to meet the
9  well-established pleading requirements for showing alter ego liability.

10      **C.    The Plaintiffs Fail To Make Sufficient Allegations That Any Of The**
11           **Toshiba Entities Participated In An Alleged Conspiracy**

12      Even if it is proper to make allegations against an entire "corporate family" and even
13  if the Plaintiffs have properly alleged alter ego liability as between Toshiba Corp. and its
14  subsidiaries, the complaints are still deficient in that they fail to make sufficient allegations
15  that any of the Toshiba entities (or the Toshiba entities collectively) participated in an
16  alleged conspiracy.

17      According to the Direct Purchaser Plaintiffs, "Toshiba" participated in meetings "in
18  which unlawful agreements as to, *inter alia*, price, output restrictions, and customer and
19  market allocation of CRT Products occurred."  DP-CAC ¶ 170.  By this passive-voice
20  allegation, the Direct Purchaser Plaintiffs do not even allege that any Toshiba entity
21  actually entered into an illegal agreement — they merely allege that "Toshiba" was present
22  at a meeting where an illegal agreement occurred.  *See In re Graphics Processing Units*
23  *Antitrust Litig.*, 527 F. Supp. 2d at 1023 ("[E]ven where some competitors have admitted
24  to meeting to fix prices at or near trade shows and conferences, it is not reasonable to infer
25  that another competitor in attendance at the same meeting had done likewise.").  There is
26  nothing illegal about competitors meeting with each other.  *See Rutledge v. Electric Hose*
27  *and Rubber Co.*, 327 F. Supp. 1267, 1272 (C.D. Cal. 1971) ("Absent an agreement to fix
28  prices, there is nothing unlawful about competitors meeting and exchanging price

1   information or discussing problems common in their industry, or even exchanging
2   information as to the cost of their product.").

3       As to Toshiba Corp., the Indirect Purchaser Plaintiffs allege that "Toshiba agreed on
4   prices and supply levels for CRT Products."  IP-CAC ¶ 177.  This allegation, however, is
5   formulaic and conclusory.  The Indirect Purchaser Plaintiffs do not allege who at Toshiba
6   Corp. entered these agreements, where the agreements were reached, when the agreements
7   were reached, or with whom the agreements were reached.  *Kendall*, 518 F.3d at 1048.
8   Merely stating that "Toshiba" agreed on prices and supply levels, without more, amounts
9   to a formulaic allegation that does not satisfy *Twombly*.  It is well-established that "stray
10  statements about agreements .  .  . unsupported by concrete allegations about the content
11  and circumstances of any actual agreement" are insufficient to state an antitrust claim.  *In*
12  *re Late Fee and Over-Limit Fee Litig.*, 528 F. Supp. 2d 953, 962 (N.D. Cal. 2007) (citing
13  *Twombly*, 550 U.S. at 564) (internal quotation marks omitted); *see also In re Elevator*
14  *Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) ("[A]verments of agreements made at some
15  unidentified place and time . . . are insufficient to establish a plausible inference of
16  agreement, and therefore to state a claim.").  It is clear that "[t]erms like 'conspiracy,' or
17  even 'agreement,' are border-line:  they might well be sufficient in conjunction with a
18  more specific allegation — for example, identifying a written agreement or even a basis for
19  inferring a tacit agreement, but . . . a court is not required to accept such terms as a
20  sufficient basis for a complaint."  *Kendall*, 518 F.3d at 1047.  Here, Plaintiffs make
21  conclusory and boilerplate allegations that the Toshiba entities entered into an agreement
22  without providing additional factual allegations.  *See Iqbal*, 2009 WL 1361536, at *14 ("It
23  is the conclusory nature of respondent's allegations, rather than their extravagantly fanciful
24  nature, that disentitles them to the presumption of truth.").  Plaintiffs' allegations,
25  therefore, fail to meet the *Twombly* standard.

26      As to TAI, TAIS, TACP, and TAEC, the Plaintiffs allege that these entities "were
27  represented at those meetings and were a party to the agreements entered at them."  DP-
28  CAC ¶ 172; IP-CAC ¶ 178.  This blanket allegation does not survive the standards set forth

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

in *Twombly*.   The Plaintiffs do not identify time of the meeting, where the meeting occurred, or the other parties to the agreements.   Similarly, the Plaintiffs provide no information as to who supposedly "represented" TAI, TAIS, TACP, and TAEC at these meetings or what was the nature of this representation.

The Plaintiffs' vague allegations are also faulty in that they do not allege a time in which the Toshiba entities purportedly entered into an illegal agreement.   Rather, both complaints simply make reference to a nine-year period from 1995 to 2003.   DP-CAC ¶ 171; IP-CAC ¶ 177.   In *Twombly*, the Supreme Court dismissed similarly deficient allegations because "[a]part from identifying a seven-year span in which the § 1 violations were supposed to have occurred . . . , the pleadings mentioned no specific time, place, or person involved in the alleged conspiracies."   550 U.S. at 565 n.10; *see also Iqbal*, 2009 WL 1361536, at *15 ("In *Twombly*, the complaint alleged general wrongdoing that extended over a period of years . . . .").   Use of a nine-year period leaves all of the Toshiba entities guessing as to their participation in the alleged conspiracy.   *See Berry v. Indianapolis Life Ins. Co.*, No. 3:08-CV-0248-B, 2009 WL 656531, at *8 (N.D. Tex. Mar. 11, 2009) ("A period of years is not definitive enough in the context of the conspiracy claim as alleged to put any defendant on sufficient notice to be able to defend.").

The allegations in both complaints fail because they provide no facts identifying the place where the alleged agreement occurred or the persons involved in the alleged agreement.   *See Kendall*, 518 F.3d at 1047 ("[T]o allege an agreement between antitrust co-conspirators, the complaint must allege facts such as a 'specific time, place, or person involved in the alleged conspiracies' to give a defendant seeking to respond to allegations of a conspiracy an idea of where to begin.") (citing *Twombly*, 550 U.S. at 565 n.10); *see also Total Benefits Planning Agency, Inc. v. Anthem Blue Cross and Blue Shield*, 552 F.3d 430, 436 (6th Cir. 2008) ("Generic pleading, alleging misconduct against defendants without specifics as to the role each played in the alleged conspiracy, was specifically rejected by *Twombly*").   The Direct Purchaser Plaintiffs' allegation that "meetings" occurred "in Taiwan, Thailand, and Indonesia" (DP-CAC ¶ 171) hardly qualifies as a

"specific" place within the meaning of *Twombly*.  And the IP-CAC does not even tether their allegations to a given country.  IP-CAC ¶ 177.

The Indirect Purchaser Plaintiffs make vague allegations that certain Defendants visited "Toshiba" to "discuss increasing prices for CRT Products in general and to specific customers" and other Defendants met bilaterally with "Toshiba" "for the purpose of communicating whatever CRT Product pricing and/or output agreements had been reached during the meeting."  IP-CAC ¶¶ 141, 164.  These allegations fail because they do not provide any facts identifying the time and place in which such meetings occurred, or which particular Toshiba entities (let alone employees) supposedly met with other Defendants. *See Kendall*, 518 F.3d at 1047.   More importantly, conspicuously absent from the complaints are any factual allegations that even suggest that any of the Toshiba entities actually entered into an unlawful agreement during these alleged meetings.  *See In re Late Fee and Over-Limit Fee Litig.*, 528 F. Supp. 2d at 961 (dismissing plaintiffs' complaint based on *Twombly* because "plaintiffs do not identify any actual agreement among the defendants").

Both sets of Plaintiffs allege that "Toshiba" participated in meetings "through Toshiba Corporation and TDDT," suggesting — without pleading any supporting facts — the existence of an agency relationship among the Toshiba entities.  DP-CAC ¶ 171; IP-CAC ¶ 177.  According to the Plaintiffs, TAI, TAIS, TACP, and TAEC were "represented" at certain meetings, but Plaintiffs do not identify who at Toshiba Corp. or TDDT acted as their agent.   DP-CAC ¶ 172; IP-CAC ¶ 178.   To establish that an agency relationship exists, Plaintiffs must show that the purported agent has "authority to act for and in the place of the principal for the purpose of bringing him or her into legal relations with third parties" and that the principal has a "right to control" the agent.  *In re Coupon Clearing Serv., Inc.*, 113 F.3d 1091, 1099 (9th Cir. 1997).  A complaint that merely states a "bare legal conclusion" that an agency relationship exists is not sufficient.  *See Am. Nat'l Red Cross v. United Way Cal. Capital Region*, No. 07-1236, 2007 WL 4522967, at *10 (E.D. Cal. Dec. 19, 2007) (noting that the complaint at issue "does not . . . allege one fact that

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1    suggests such an agency relationship").  The DP-CAC and IP-CAC contain no factual

2    allegations concerning an agency relationship among any of the Toshiba entities; rather,

3    the complaints simply contain the type of "bare legal conclusions" that are inadequate.

4    Thus, this Court should conclude that the complaints do not properly allege an agency

5    relationship among any of the Toshiba entities.

6        The Plaintiffs make much of the fact that the Department of Justice and the European

7    Commission are conducting investigations involving "Toshiba" in unrelated markets.  DP-

8    CAC ¶ 123; IP-CAC ¶¶ 212, 216.   Those investigations are entirely irrelevant to the

9    present case and provide no basis to infer a plausible conspiracy in the CRT market.  As

10   the Second Circuit explained:  "An allegation that someone has made a similar allegation

11   does not, without more, add anything to the complaint's allegations of fact." *Twombly v.*

12   *Bell Atlantic Corp.*, 425 F.3d 99, 118 n.14 (2d Cir. 2005).   To illustrate, in the Static

13   Random Access Memory (SRAM) industry  (one of the investigations discussed by the

14   Plaintiffs), the Department of Justice closed its investigation without obtaining a single

15   indictment, let alone a conviction.   In October 2006, the Department of Justice began

16   subpoenaing companies as part of an investigation into possible anticompetitive prices in

17   the SRAM industry.  Although the Indirect Purchaser Plaintiffs see fit to allege that the

18   Toshiba entities were investigated in the SRAM matter (IP-CAC ¶ 216), they fail to note

19   that the agency closed its investigation in late 2008 without obtaining any indictments.

20   *See, e.g.*, Transcript of Proceedings at 18:14-19:1, *In re Static Random Access Memory*

21   *(SRAM) Antitrust Litig.*, No. 07-01819 (N.D. Cal. Jan. 19, 2009) (statement by Defendants'

22   liaison counsel to the court:  "We were recently advised by the DOJ that the grand jury

23   investigation by the DOJ has been closed."); *US DOJ Closes Investigation of SRAM Sales*

24   *Involving   Mitsubishi   Electric   Subsidiary*,   Business   Wire,   Dec.   22,   2008,

25   http://www.allbusiness.com/legal/antitrust-trade-law/11730241-1.html;  Rick  C.  Hodgin,

26   *SRAM antitrust investigations closed against Hynix, not* charged, TG Daily, Dec. 19, 2008,

27

28

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

http://www.tgdaily.com/content/view/40651/118/; *Cypress' SRAM antitrust investigation closed by DOJ*, Fabtech, Dec. 15, 2008, http://www.fabtech.org/news/_a/cypress_sram_antitrust_investigation_closed_by_doj/.

Nor is there merit to the Plaintiffs' attempt to draw nefarious inferences from "Toshiba's" involvement in various joint ventures and technology transfer arrangements. DP-CAC ¶¶ 113, 116, 121; IP-CAC ¶ 125.  Plaintiffs fail to allege any facts that would even suggest that any of these joint ventures or cross-licensing arrangements were anticompetitive, let alone were *per se* violations of Section 1 of the Sherman Act.  It is well-established that participation in joint ventures and technology transfer arrangements serves many pro-competitive purposes and does not, absent some evidence of a collusive agreement, support a claim for conspiracy.  *See, e.g.*, *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 768 (1984) (noting that "joint ventures . . . hold the promise of increasing a firm's efficiency and enabling it to compete more effectively"); *Arista Records LLC v. Lime Group LLC*, 532 F. Supp. 2d 556, 577 (S.D.N.Y. 2007) (dismissing Section 1 claims because complaint's allegations that licensing regime was anticompetitive "relie[d] on wholly conclusory statements of concerted action, or, at best, on mere parallel conduct").  Indeed, these allegations concern practices that are "in line with a wide swath of rational and competitive business strategy unilaterally prompted by common perceptions of the market." *Twombly*, 550 U.S. at 545.

Finally, the Plaintiffs make several allegations that are simply legal conclusions with no factual basis whatsoever.  *See, e.g.*, DP-CAC ¶ 172; IP-CAC ¶ 178 (the Toshiba entities were "active, knowing participants in the conspiracy"); IP-CAC  ¶ 177 (Toshiba "participated in the CRT conspiracy" through MTPD).  These allegations are also insufficient. *See Iqbal*, 2009 WL 1361536, at *13 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."); *Papasan v. Allain*, 478 U.S. 265, 286 (1986) ("Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation."); *Perfect 10, Inc. v.*

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

*Visa Int'l Serv. Ass'n*, 494 F.3d 788, 794 (9th Cir. 2007) (affirming lower court's dismissal of action and noting: "Although a plaintiff's allegations are generally taken as true, the court need not accept conclusory allegations of law or unwarranted inferences, and dismissal is required if the facts are insufficient to support a cognizable claim."). Thus, the Court should disregard the numerous legal conclusions contained in the Plaintiffs' complaints.

### III.   Even If The *Twombly* Pleading Standard Were Met, The Plaintiffs Allege That Toshiba Corp. Exited The CRT Market In 2002, Which Constitutes Withdrawal As A Matter Of Law

Even if the *Twombly* pleading standard were somehow met, the DP-CAC and IP-CAC allege that Toshiba Corp. exited the CRT market in 2002, which constitutes withdrawal as a matter of law. As a result, the Plaintiffs' claims against the Toshiba entities are outside the statute of limitations.

Both the Direct Purchaser Plaintiffs and Indirect Purchaser Plaintiffs concede that Toshiba Corp. exited the CRT market in 2002. The Direct Purchaser Plaintiffs allege that "[i]n 2002, TC entered into a joint venture with Defendant MEI (now Panasonic Corporation) called Matsushita Toshiba Picture Display Co., Ltd., in which the entities consolidated their CRT businesses." DP-CAC ¶ 71. "MEI was the majority owner with 64.5 percent." DP-CAC ¶ 46. Similarly, the Indirect Purchaser Plaintiffs allege that "[i]n 2002, Toshiba Corporation entered into a joint venture with Defendant Panasonic Corporation called MT Picture Display Co., Ltd. in which the entities consolidated their CRT businesses." IP-CAC ¶ 72; *see also* Press Release, Toshiba Corporation, Matsushita and Toshiba Announce Outline of New CRT Joint Venture (Jan. 29, 2003), http://www.toshiba.co.jp/about/press/2003_01/pr2902.htm ("Matsushita Electric Industrial Co., Ltd. and Toshiba Corporation today announced that their joint venture Matsushita Toshiba Picture Display Co., Ltd. would start operation on April 1, 2003."). The complaints characterize this joint venture as a "merger" of "Toshiba's" and MEI's CRT businesses into an entity majority owned by MEI. DP-CAC ¶¶ 46, 113; IP-CAC ¶ 125. In

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

so doing, Toshiba Corp. exited the CRT market.  *See also* DP-CAC ¶ 171; IP-CAC ¶ 177 (alleging "Toshiba" participated in illegal meetings only until 2003).  Plaintiffs fail to allege specific facts showing that the Toshiba entities directed (or even had the authority to direct) or played any other role in MTPD's alleged conspiratorial activities after 2002.  DP-CAC ¶¶ 171, 174, 183; IP-CAC ¶¶ 177, 183.

The Ninth Circuit has held that "[t]o withdraw from a conspiracy a defendant must either disavow the unlawful goal of the conspiracy, affirmatively act to defeat the purpose of the conspiracy, or take 'definite, decisive, and positive' steps to show that the [defendant's] disassociation from the conspiracy is sufficient."  *United States v. Lothian*, 976 F.2d 1257, 1261 (9th Cir. 1992).  By exiting the CRT business, Toshiba Corp. disassociated itself from the conspiracy.

Exiting the business that is the subject of the conspiracy allegation has been found to sufficiently indicate withdrawal.  *See Morton's Market Inc. v. Gustafson's Dairy, Inc.*, 198 F.3d 823, 839 (11th Cir. 1999) (finding that defendant withdrew from a conspiracy when he sold his dairy company); *United States v. Nerlinger*, 862 F.2d 967, 974 (2d Cir. 1988) (defendant successfully withdrew from a mail fraud conspiracy by resigning from the company and closing the account used to divert funds); *United States v. Steele*, 685 F.2d 793, 803-04 (3d Cir. 1982) (defendant successfully withdrew from a bribery conspiracy when he severed employment with the conspiring company).

When a defendant effectively withdraws from the conspiracy, it cannot be held liable for the offenses committed after its withdrawal.  *Levine v. United States*, 383 U.S. 265, 266 (1966).  In conspiracy claims where a defendant withdraws from the alleged conspiracy, the statute of limitations begins to run from the date that the defendant withdraws from the alleged conspiracy.  *United States v. Antar*, 53 F.3d 568, 584 (3d Cir. 1995).

The Plaintiffs' claims are subject to a four-year statute of limitations.  15 U.S.C. § 15b (2006).  Plaintiffs' first complaint in this case was filed on November 26, 2007.  Docket No. 1.  Thus, any allegations for conspiratorial conduct prior to November 26, 2003 are untimely and should be dismissed.  Because Toshiba Corp. is alleged to have

exited the industry in 2002 — and thus withdrew from any conspiracy as a matter of law — the Plaintiffs' claims were filed outside of the statute of limitations for that entity. Because the Plaintiffs' claims against TAI, TACP, TAIS, and TAEC are derivative of their claims against Toshiba Corp. — in that these entities were "represented" at meetings by Toshiba Corp. (DP-CAC ¶ 172; IP-CAC ¶ 178) or participated at meetings "through" Toshiba Corp. (DP-CAC ¶ 171; IP-CAC ¶ 177) — these claims were also filed outside of the statute of limitations.

Finally, both the Direct Purchaser Plaintiffs and Indirect Purchaser Plaintiffs allege that "Toshiba never effectively withdrew from this conspiracy." DP-CAC ¶ 171; IP-CAC ¶ 177. Again, these are conclusory allegations of law that the Court should not accept. *See Perfect 10, Inc.*, 494 F.3d at 794 ("the court need not accept conclusory allegations of law or unwarranted inferences, and dismissal is required if the facts are insufficient to support a cognizable claim"). Indeed, Plaintiffs' own factual allegations refute this legal conclusion, as they show that Toshiba Corp. withdrew from any conspiracy in existence in 2002.

*       *       *

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CONCLUSION

For these reasons, the Court should dismiss the DP-CAC and IP-CAC with respect to Toshiba Corp., TAI, TAIS, TACP, and TAEC.

Respectfully submitted,

Dated:  May 18, 2009                                    **WHITE & CASE** LLP

                                                By:  /s/ Christopher M. Curran
                                                    Christopher M. Curran (*pro hac vice*)
                                                    ccurran@whitecase.com
                                                    George L. Paul (*pro hac vice*)
                                                    gpaul@whitecase.com
                                                    Lucius B. Lau (*pro hac vice*)
                                                    alau@whitecase.com
                                                    701 Thirteenth Street, N.W.
                                                    Washington, DC  20005
                                                    tel.: (202) 626-3600
                                                    fax: (202) 639-9355

                                                    *Counsel to Defendants Toshiba*
                                                    *Corporation, Toshiba America, Inc.,*
                                                    *Toshiba America Information Systems,*
                                                    *Inc., Toshiba America Consumer*
                                                    *Products, L.L.C., and Toshiba America*
                                                    *Electronic Components, Inc.*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

## CERTIFICATE OF SERVICE

On May 18, 2009, I caused a copy of the "THE TOSHIBA ENTITIES' MOTION TO DISMISS (1) THE DIRECT PURCHASER PLAINTIFFS' CONSOLIDATED MENDED COMPLAINT AND (2) THE INDIRECT PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT" to be electronically filed via the Court's Electronic Case Filing System, which constitutes service in this action pursuant to the Court's order of September 29, 2008.

By:  /s/ Christopher M. Curran
Christopher M. Curran (*pro hac vice*)

THE TOSHIBA ENTITIES' MOTION TO DISMISS
Case No. 07-5944 SC
MDL No. 1917