# EXHIBIT 16

STATE OF VERMONT
CHITTENDEN COUNTY

SUPERIOR COURT
No. 66-05 CnC

RECEIVED
OCT 1 1 2006
BY:




CHRISTINE F. ARMSTRONG,
Plaintiff

v.

BAYER AG, et al,
Defendants

**OPINION AND ORDER**
**DEFENDANTS' MOTION TO**
**DISMISS FOR LACK OF STANDING**

***Introduction***

The Defendants, Chemtura Corporation (formerly known as Crompton Corporation), Uniroyal Chemical Company, Inc., Zeon Chemicals Inc., Zeon Chemicals L.P. and DSM Copolymer, Inc. (the "Defendants"), have moved to dismiss Christine Armstrong's (the "Plaintiff's") class action complaint under V.R.C.P. 12(b)(6) for lack of standing.

***Summary of issues and decisions***

1. **Standing under the Vermont Consumer Fraud Act.** The Plaintiff alleges that the Defendants violated the Vermont Consumer Fraud Act (the "VCFA") by fixing the prices of a certain industrial chemical. Does the Plaintiff, as a purchaser of consumer products which were manufactured using the allegedly price-fixed chemical, have standing to sue the manufacturer of the chemical under the VCFA?

   **Decision:** The Plaintiff has standing to sue under the VCFA as an indirect purchaser of a price-fixed product.

2. **Plaintiff's Cause of Action for Unjust Enrichment.** The Plaintiff also claims that the Defendants have been unjustly enriched by the Plaintiff under Vermont common law. Does the Plaintiff have a cause of action for unjust enrichment?

**Decision:** The Plaintiff has not stated a cause of action for unjust enrichment because the benefit allegedly conferred on the Defendants by the Plaintiff is not sufficiently direct.

**Facts**

The relevant allegations contained in the Plaintiff's complaint follow:

From at least January 1, 1995 through June 30, 2003 (the "Class Period"), the Defendants and their co-conspirators fixed prices for acrylonitrile-butadiene rubber ("NBR"). The Defendants placed NBR into the stream of commerce with the knowledge that it would be used to manufacture consumer products that would be marketed, sold and/or distributed in Vermont. NBR is used in the manufacture of many commercial and industrial products such as automotive parts, sponges, and footware. The Plaintiff is a Vermont resident who purchased consumer products that were manufactured using NBR during the Class Period and paid higher prices for them because of NBR price fixing by the Defendants.

**Standard for Rule 12(b)(B) Motions**

A motion to dismiss under a Rule 12(b)(6) motion should not be granted "unless it is beyond doubt 'that there exist no facts or circumstances that would entitle the plaintiff to relief.'" Richards v. Town of Norwich, 169 Vt. 44, 48 (1999) (quoting Amiot v. Ames, 166 Vt. 288, 291 (1997)). The court assumes that all factual allegations pleaded in the complaint are true, accepting as true all reasonable inferences that may be derived from plaintiff's pleadings. Id. at 49. A plaintiff must allege facts sufficient to confer standing on the face of the complaint. Parker v. Town of Milton, 169 Vt. 74, 76 (1998).

**A. The Plaintiff has standing to sue under The Vermont Consumer Fraud Act.**

The VCFA "expressly states that *any* consumer, reinforced by the definition of consumer as 'any person,' who suffers injury may bring an action under the statute against a 'seller, solicitor or *other violator*.'" Elkins v. Microsoft Corp., 174 Vt. 328, 331 (2002) (quoting 9 V.S.A. § 2461(b)). The statute is "supported by the express legislative intent…to 'protect the public' against 'unfair or deceptive acts or practices' and to 'encourage fair and honest competition.'" Id. at 331 (quoting 9 V.S.A § 2451). "In light of this purpose, this Court has repeatedly held that the VCFA is remedial in nature and therefore must be construed liberally so as to furnish all the remedy and all the purposes intended." Id. at 331. "Of course, liberal construction does not allow [the court] to stretch the language beyond legislative intent." Id. at 331.

1. Elkins v. Microsoft Corp.: Indirect purchasers have standing under the VCFA.

In Elkins, the Vermont Supreme Court held that indirect purchasers are not barred from suing under the VCFA. Id. at 331. The VCFA does not require privity between parties and contains no distinction between direct and indirect purchasers. Elkins, 174 Vt. at 331. Furthermore, the VCFA is properly applied to defendants who are "other violators", a "broad term" which goes beyond sellers or solicitors. Id. at 331. Therefore, a plaintiff who had purchased a computer which contained price-fixed software had standing to sue the software manufacturer. Elkins involved allegations that Microsoft Corporation had overcharged computer manufacturers for Windows 98. As a result, the computer manufacturers were forced to raise the prices of the computers on which Windows 98 was pre-installed, which injured the plaintiff when he bought a computer. The Court held that even though the Plaintiff was only an indirect purchaser of the software he was not barred from bringing a VCFA claim against Microsoft.

2. Fucile v. Visa U.S.A. Inc.: Standing for indirect purchasers is determined by the six-factor test.

Two years later, the Chittenden Superior Court addressed the narrower issue of which indirect purchasers have sustained injuries that are too remote to give them

standing to sue under the VCFA. Fucile v. Visa U.S.A. Inc., 2004 WL 3030037, 2 (Vt. Superior Ct.). In answering this question, the Vermont trial court adopted the six-factor test employed by the U.S. Supreme Court in its consideration of price-fixing complaints under federal law. Id. at 2 (citing Associated Gen. Contractors v. Calif. State Council of Carpenters, 459 U.S. 519 (1983)). Those factors include, (1) whether there is a causal connection between the antitrust violation and the alleged harm; (2) the directness of the injury, considering the chain of causation; (3) whether the violator had an improper motive; (4) whether the plaintiff's injury was of a type that the legislature sought to redress by providing a remedy; (5) whether the alleged damages are too speculative; and (6) whether the nature of the action will keep the scope of complex antitrust trials within judicially manageable limits. Id. at 2.

Fucile involved allegations that Visa and MasterCard conspired to fix prices for financial services offered to merchants, specifically the use of debit cards. As a result of overpaying for these services, the merchants were allegedly forced to raise the prices of the goods they sold, harming Mr. Fucile and similarly situated individuals when they purchased those goods. Id. at 1.

Applying the six-factor test, the court found that Mr. Fucile did not have standing under the VCFA. Id. at 3. Under factors (1) and (2), the causal chain between the wrongdoing and the injury was unreasonably long and indirect. It required a demonstration that the merchants actually passed their costs to the purchasers rather than absorbing them by other means, and that other potential causes of inflated costs, such as supply problems, were not present. Applying factor (3), the court found that the defendant's intent to violate the antitrust laws could be inferred from the allegations. Id. at 3. Under factor (4), the court found that Mr. Fucile's was not an injury that the legislature intended to redress through the VCFA. Id. at 3. Whether or not the plaintiff was injured, "the court cannot reasonably assume that the Legislature intended the Consumer Fraud Act to extend limitlessly…There is, of course, a point beyond which antitrust defendants should not be held responsible for the remote consequences of their actions." Id. at 4 (quoting from Justice Prennan's dissent in Illinois Brick, 431 U.S. at 749 fn. 2 ). Finally, applying factors (5) and (6), the court found that the alleged

damages were highly speculative and would not be manageable by the court. The court would have to determine the degree to which the merchants passed along the costs for each good sold, which would cause the court to venture into the "uncharted territories of sheer guesswork." Id. at 4.

3. Under Elkins and the six-factor Fucile test, the Plaintiff has standing to sue under the VCFA.

a. *There is a sufficiently direct causal chain between the alleged price fixing and the harm to the Plaintiff.*

Under factors (1) and (2) there is a sufficient causal chain between the Defendant's alleged price-fixing and the harm incurred by the Plaintiff. Unlike Fucile, there is no significant gap in the causal chain between the alleged price-fixing and the alleged injury to the Plaintiff. Here, the Defendant's price fixing of NBR allegedly caused their direct customers, industrial rubber manufacturers, to raise the prices of their rubber, which in turn caused subsequent manufacturers and distributors to raise their prices, eventually causing the Plaintiff harm in the form of overly priced consumer goods containing NBR. Although the alleged chain is long, it is much more direct than the chain in Fucile. Specifically, there is no causal jump like the one present in Fucile, where the overcharge for financial services allegedly caused the retailers to raise the prices of their goods. Here, the overpriced NBR flows through the causal chain from the Defendant to the Plaintiff. Like the software in Elkins, the NBR here ends up as an incorporated component of the consumer goods purchased by the Plaintiff. Although the software in Elkins was a distinct and separable product that was incorporated into the computer and the NBR is more of an inseparable ingredient, this distinction does not affect the directness of the causal chain between the overpriced NBR and the overpriced NBR-containing consumer good. The Plaintiff here purchased NBR as an ingredient in consumer goods in the same way that the plaintiff in Elkins purchased Windows 98 as a component of a computer. The Plaintiff here bought NBR in a more direct way than the plaintiff in Fucile. Those plaintiffs did not buy any financial services at all.

b. *Improper motives of the Defendants can be inferred from the allegations.*

The Plaintiff alleges that the Defendants conspired to fix the price of NBR and actively concealed this conspiracy from the Plaintiff. The Plaintiff also alleges that one of the Defendants has admitted to its guilt in conspiring to violate the anti-trust laws. Complaint ¶ 36. This is sufficient to infer an improper motive from the allegations under factor (3).

c. *The Plaintiff's alleged injury is of the type that the Vermont Legislature intended to redress under the VCFA.*

Under factor (4), the Plaintiff's injury is the kind that the Vermont Legislature intended to redress with the VCFA. The Vermont Supreme court found that the plaintiff in Elkins was an indirect purchaser of the type that the VCFA was meant to cover. The Plaintiff here (NBR in a manufactured consumer product) is sufficiently similar to the Elkins plaintiff (software in a PC) for the same analysis to apply.

d. *The Plaintiff's alleged damages are not too speculative and they are not so difficult to determine that they could not be managed by the court.*

Finally, under factors (5) and (6), the alleged damages are not sufficiently speculative to defeat standing. The damages are somewhat speculative. At each stage in the causal chain, it is not certain that the relevant manufacturer or distributor did not absorb some of the costs themselves. Calculating the amount of the NBR overcharge that was actually passed on at each step of the manufacturing process will present some difficulty. However, this problem was presumably present in Elkins, and the damages at issue are not as speculative as those in Fucile. Unlike the merchants in Fucile, it is more probable that the intermediary manufacturers and distributors at issue would incorporate the overcharge into the prices of their goods. And calculating the damages here is not as nebulous an endeavor as in Fucile. At each step of the causal chain, the Plaintiff could simply calculate the percentage of the intermediary's price that was based on the initial overcharge. This calculation was not available to the court in Fucile because the alleged overcharge for the financial services was not as clearly incorporated into the cost of the merchant's retail goods.

**B. The Plaintiff has not stated a cause of action for Unjust Enrichment.**

"The equitable doctrine of unjust enrichment rests upon the principle 'that a man shall not be allowed to enrich himself unjustly at the expense of another.'" Legault v. Legault, 142 Vt. 525, 531 (1983) (quoting Morse v. Kenney, 87 Vt. 445, 449 (1914)). Under the quasi-contract theory of unjust enrichment, the law implies a promise to pay when a party receives a benefit and the retention of that benefit would be inequitable. Brookside Memorials, Inc. v. Barre City, 167 Vt. 558, 559 (1997). With respect to unjust enrichment, the inquiry is whether equity and good conscience demand that the defendant return that which the plaintiff seeks to recover. Id. at 560; Legault, 142 Vt. at 531. Whether there is unjust enrichment may not be determined from a limited inquiry confined to an isolated transaction, but must be a realistic determination based on a broad view of the human setting involved. Legault, 142 Vt. at 531. The elements for a claim of unjust enrichment are: (1) a benefit was conferred on the defendant, (2) the defendant accepted the benefit, and (3) the defendant retained the benefit under such circumstances that it would be inequitable for the defendant not to compensate the plaintiff for its value. See Center v. Mad River Corporation, 151 Vt. 408, 412 (1989); DJ Painting, Inc. v. Baraw Enterprises, Inc., 172 Vt. 239, 242 (2001). Privity between the parties is not required. Beauregard v. Orleans Trust Co., 108 Vt. 42 (1936).

The case at issue raises the following question: How direct of a relationship between the plaintiff and the defendant must be alleged in order to sustain a cause of action for unjust enrichment in Vermont? The Plaintiff argues that it is unnecessary to plead any relationship between the parties because the black letter definition of unjust enrichment lacks a relationship element. Pl.'s Resp. to Def.'s Mot. to Dismiss at 37. The Defendant argues that a relationship between the parties is implicit in the elements of unjust enrichment and is necessary to sustain a claim. Def.'s Reply to Pl.'s Resp. to Def.'s Mot. to Dismiss at 9; Def.'s Mot. to Dismiss at 25. Due to the lack of case law on this subject in Vermont, both parties have cited many court decisions from other jurisdictions. An analysis of Vermont case law shows that the relationship between the parties in this case is too remote to support a claim for unjust enrichment in Vermont.

1. Vermont case law indicates that there needs to be a more direct relationship between the parties than alleged here to support a claim for unjust enrichment.

a. *The Vermont Supreme Court has indicated that a direct relationship is required to sustain unjust enrichment.*

In the few instances where the Vermont Supreme Court has come close to addressing this issue, it has indicated that some sort of direct relationship is required between the parties in order to sustain an unjust enrichment claim. For example, in Morrisville Lumber Co., Inc. v. Okcuoglu, the Court dismissed an unjust enrichment claim because there was no direct relationship between the parties. 148 Vt. 180, 183 (1987). In Morrisville Lumber, the defendant-homeowners hired a contractor to build a house. The contractor hired the plaintiff-lumber company to supply lumber for the construction. Subsequently, the contractor was fired. The plaintiff-lumber company found that it could not recover its unpaid balance from the contractor, so it sued the defendants for unjust enrichment. The court found that the defendants were not unjustly enriched because they had already paid the contractor for all of the benefits that they received and should not have to pay twice. In the course of its discussion, the court offered the following:

> "The plaintiff relies on Circus Studios, Ltd. V. Tufo, 145 Vt. 219, 485 A.2d 1261 (1984), to support its unjust enrichment claim. In Circus Studios, this court held the defendants liable on an implied contract theory. Id. at 222, 485 A.2d at 1263. The defendants had accepted and used plaintiff's work product and dealt directly with the party to whom they were liable. In the present case, the defendants neither accepted any materials from, nor dealt directly with, the subcontractor. Testimony indicated that the defendants did not even know with whom their general contractor would be dealing." Morrisville Lumber Co., 148 Vt. at 183-184.

Although the Court's final decision turned on another issue, the opinion indicates that parties one step away from each other are outside the proper scope of an unjust enrichment claim.

In DJ Painting, Inc. v. Baraw Enterprises, Inc., 172 Vt. 239 (2001), the Vermont Supreme Court indicated that an unjust enrichment claim cannot be maintained if it would undermine the separate contractual relationships created by the parties. In that case, the defendant-property owner hired a general contractor to make improvements at

the defendant's resort hotel. The general contractor hired the plaintiff-painter. After contributing some painting services, the plaintiff-painter was fired by the general contractor and subsequently brought suit against the defendant for unjust enrichment. Like the court in Morrisville Lumber, the court held that because the owner had already paid the general contractor for its services, it had not retained a benefit and the subcontractor could not sue the owner for unjust enrichment. Id. at 244.

In its discussion, the court indicated that the "ordinary quasi-contract case" is one in which, "one party has performed work for another party without the formality of a contract, the party benefited has accepted the services, and therefore ought to be required to pay for them." Id. at 243. The court makes it clear that unjust enrichment is not to be used to undermine the separate contractual relationships created by the parties which are intended to keep the parties from ever having to deal directly with one another.

> "It can hardly be equitable to impose a contract on the parties that completely undermines the contractual relationships that the parties themselves have created. The point of hiring a general contractor for a construction job is for the general to manage the job and hire the subcontractors. The owner does not deal directly with the subcontractors and is often unaware of the identity of the subcontractors... The owner pays the general contractor, but if the general does not pay the subcontractors, the subcontractors have the statutory lien mechanism to attach money as yet unpaid to the general contractor. That was not the case here, as the general's failure to pay the subcontractor arose out of a dispute over the work, which was fully resolved under the contract between the general and the subcontractor. The contract between the general... and the... plaintiff sufficiently protected the rights of the parties." Id. at 245.

This language indicates that it is inappropriate to use an unjust enrichment theory to impose an obligation on an unrelated party in a contractual scheme designed to prevent the parties from ever having to deal directly with each other.

b. *There is no reported Vermont Supreme Court case in which an unjust enrichment claim was permitted where the relationship between the parties was as distant the one in this case.*[1]

The cases cited by the Plaintiff do not address the issue of directness and involve disputes between parties who are at most only one step removed from each other. For example, the Plaintiff cites Brookside Memorials, Inc. v. Barre City, 167 Vt. 558 (1997), for the proposition that there is no relationship element in unjust enrichment. Pl.'s Resp. to Def.'s Mot. to Dismiss at 37. That case involved a granite manufacturer suing a municipality for unjust enrichment where the municipality had been overcharging the manufacturer for sewer bills. The parties clearly had a direct business relationship and the directness of their relationship was not an issue before the court.

Similarly, the plaintiff cites Ray Reilly's Tire Mart, Inc. v. F.P. Elnicki, Inc., 149 Vt. 37 (1987), also for the principle that a direct relationship is not a necessary element of an unjust enrichment claim. Pl.'s Resp. to Def.'s Mot. to Dismiss at 38. In that case, the defendant bought a car from a third party. The third party hired the plaintiff to fix the car's tires and then failed to pay the plaintiff. The court held that the plaintiff could not recover against the defendant for unjust enrichment because the defendant had already paid for the benefit, namely functioning tires, when he bought the car. This decision supports the conclusion that a direct relationship is a necessary element of an unjust enrichment claim.

---

[1]It should be noted that another judge in this court reached a different conclusion in the related case of Investors Corp. of Vt. v. Bayer AG, No. S1011-040CnC, slip op. (Vt. Sup. Ct. 2005). In that case, the court held that a claim for unjust enrichment was properly pled where plaintiff alleged that defendants unfairly restricted trade of ethylene propylene diene monomer ("EPDM"), causing economic harm to plaintiff indirect purchasers. The court stated that, "The fact that [Plaintiff] did not deal directly with the defendants is not relevant, as long as the elements for unjust enrichment are pleaded." Id. at 6 (Citing In re K-Dur Antitrust Litig., 338 F. Supp. 2d 517, 544-45 (D.N.J. 2004); In re Cardizem CD Antitrust Litig., 105 F. Supp. 2d 618, 670-71 (E.D. Mich. 2000)). The only Vermont authority cited for this holding was Brookside Memorials, Inc. v. Barre City, 167 Vt. 558 (1997), which for reasons discussed below, is off-point. The court also did not consider other Vermont authority indicating that unjust enrichment is not appropriate in this type of case. In addition, as the Defendants point out, that case involved allegations that the EPDM constituted 80% of the end-products purchased by the plaintiff, whereas the allegations in this case do not specify how much NBR was in the end products. Def.'s Mot. To Dismiss at 24.

In this case, the Defendants received a benefit from the makers of consumer goods who overpaid for the NBR, but the Defendants did not receive any benefits from the Plaintiff and any other purchasers of the finished consumer goods. Under the traditional approach to unjust enrichment claims, the makers of the consumer goods could bring unjust enrichment claims against the price-fixing NBR manufacturers, but the buyers of the consumer goods (like the plaintiff here) could not recover from the manufacturers because they had no direct dealings with them.

Every act of price fixing, and indeed every bad economic act, has a ripple effect on the economy. The defendants' immediate purchasers are most obviously affected, but presumably the direct purchasers pass part of the damage on to their customers, who do the same with theirs, and so on. At some point in this causal chain, the link between the initial wrongdoer and the damaged party becomes so tenuous that it would be absurd and inequitable to recognize a cause of action for a recovery. See Fucile, 2004 WL 3030037 at 3 and 4 (discussing the absurd results of an overly inclusive standard for standing under the VCFA). For an example, we can look at the facts of Fucile in which credit card companies fixed the prices of their financial services to merchants, who then allegedly passed the costs on to their retail consumers through the prices of the goods they sold. Without an implicit relationship requirement, the consumers here would have a cause of action for unjust enrichment: they allegedly conferred a benefit on the credit card companies which were unjustly retained. But why stop there? If any of those consumers sold services or goods, their customers would have an equally valid cause of action for unjust enrichment. And creative lawyers may even go farther: if end-users have less disposable income because they were forced to pay more for certain consumer goods, and as a result do not purchase other goods, doesn't that take away an anticipated benefit from other sellers? To avoid a limitless and absurd application, some degree of directness between the parties should be required under unjust enrichment.

Protecting consumers from price fixing is an important policy goal, and if Vermont consumers did not have any other recourse under the law, there would be a good argument that unjust enrichment should be used to protect them. Daniel R. Karon, *Undoing the Otherwise Perfect Crime – Applying Unjust Enrichment to Consumer Price-*

*Fixing Claims*, West Virginia L.R., Vol. 108, no. 2 (2005). However, Vermont does protect consumers from price fixing under the Vermont Consumer Fraud Act. See 9 V.S.A. § 2451 et. seq., and Elkins, 174 Vt. 328 (2002). Therefore it is not necessary for the courts to effectively legislate a new cause of action for price fixing under the rubric of unjust enrichment.

**Conclusion**

The Plaintiff has standing to sue under the VCFA as an indirect purchaser of a price-fixed product. Under Elkins and the six-part Fucile test, the Plaintiff has sufficiently pleaded injury under the VCFA to survive the motion to dismiss. The Plaintiff has not stated a cause of action for unjust enrichment because the benefit allegedly conferred on the Defendants by the Plaintiff is not sufficiently direct. Under the relevant case-law in Vermont, and considering certain policy objectives, the Plaintiff's cannot maintain a cause of action for unjust enrichment in Vermont.

**ORDER**

For the reasons stated above, the Defendants' Motion to Dismiss the Vermont Consumer Fraud Act claim is DENIED. The Defendants' Motion to Dismiss the Unjust Enrichment claim is GRANTED.

Ben W. Joseph, Presiding Judge
Chittenden Superior Court

10 October 2006