# EXHIBIT 20

IN THE DISTRICT COURT OF JOHNSON COUNTY, KANSAS
CIVIL COURT DEPARTMENT

RICHARD WROBEL, on behalf of himself and all others similarly situated,

Plaintiff,

vs.

Case No. 05CV1296
Division 8

AVERY DENNISON CORP., *et al.*

Defendants.

MEMORANDUM DECISION

Defendants move to dismiss Plaintiff's petition for failure to state a claim under K.S.A. 60-212(b)(6), or, in the alternative, for a more definite statement under K.S.A. 60-212(e). For the reasons stated below, Defendants' motions are denied.

I. Background

This is a proposed class action arising out of an alleged price-fixing conspiracy among the manufacturers of an adhesive material known as labelstock.[1] Defendants produce and sell labelstock "to converters in roll or sheet form with either solid or patterned adhesive coating. It is available in a wide range of face materials, sizes, thicknesses and adhesive properties."[2] The converters then use the material to manufacture products such as stickers, nametags, and office labels.[3]

Plaintiff alleges that Defendants conspired "to fix, raise, stabilize, and maintain" the price of labelstock contrary to the Kansas Restraint of Trade Act

[1] Pet. at 1.
[2] *Id.* at 5.
[3] *Id.*

CLERK OF DISTRICT COURT
JOHNSON COUNTY, KS

2006 FEB -1 PM 3:39

("KRTA"), K.S.A. 50-101, *et seq.*[4] Plaintiff asserts that he "indirectly purchased [l]abelstock from Defendants"[5] and that he and the class members have been injured "by having to pay more for [l]abelstock then they otherwise would have paid absent Defendants' unlawful conduct."[6] Plaintiff seeks recovery under the KRTA as an indirect purchaser. Plaintiff also claims unjust enrichment: "As the result of Defendants' illegal . . . conspiracy, Plaintiff and the class members enriched Defendants, and were impoverished as a result. Defendants' enrichment, and Plaintiff and the class members' resulting impoverishment, were not justified . . . ."[7]

## II. Standard of Review

In considering a motion to dismiss for failure to state a claim upon which relief can be granted, the court determines "'whether in the light most favorable to plaintiff, and with every doubt resolved in plaintiff's favor, the petition states any valid claim for relief. Dismissal is justified only when the allegations of the petition clearly demonstrate [that] plaintiff does not have a claim.'"[8]

At this stage, the court does not resolve or determine disputed issues of fact but instead must accept plaintiff's description of the facts, along with any reasonable inferences that can be drawn from those facts.[9] It is the duty of the court to determine whether the pleaded facts and inferences state a claim, "'not only on

---

[4] *Id.* at 10-11.
[5] *Id.* at 1.
[6] *Id.* at 12.
[7] *Id.*
[8] *312 Educ. Ass'n v. U.S.D. No. 312*, 273 Kan. 875, 881, 47 P.3d 383, 388 (2002) (quoting *Ripley v. Tolbert*, 260 Kan. 491, Syl. ¶¶ 1, 2, 921 P.2d 1210 (1996)).
[9] *Id.*

the theory which may be espoused by the plaintiffs, but on any possible theory we can divine."[10] However, the court is not "'required to accept conclusory allegations on the legal effects of events . . . if these allegations do not reasonably follow from the description of what happened, or if these allegations are contradicted by the description itself.'"[11]

## III. Arguments and Analysis

### A. *KRTA*

Defendants argue that Plaintiff lacks standing to state a claim under the KRTA because the alleged injury is "too remote" and the damages are "inherently speculative and unmanageably complex."[12] Defendants rely on *Associated General Contractors of California, Inc. v. California State Counsel of Carpenters* (*AGC*),[13] a 1983 United States Supreme Court decision.

Plaintiff argues that *AGC* concerns federal antitrust law and "has questionable, if any, application to the present case."[14] Plaintiff also argues that indirect-purchaser suits, such as the one here, are specifically contemplated by the KRTA, which provides that "any person who may be damaged or injured" by a violation of the KRTA "shall have a cause of action against any person causing

---

[10] *Id.* (quoting *Noel v. Pizza Hut, Inc.*, 15 Kan. App. 2d 225, 230-233, 805 P.2d 1244 (1991)).
[11] *Id.* (quoting *Ripley v. Tolbert*, 260 Kan. 491, Syl. ¶ 1, 2, 921 P.2d 1210 (1996)).
[12] Def's' Mem. in Supp. of Mot. to Dismiss at 28.
[13] 459 U.S. 519 (1983).
[14] Pl's Resp. at 23.

such damage or injury . . . regardless of whether such injured person dealt directly or *indirectly* with the defendant."[15]

In *Illinois Brick Co. v. Illinois*,[16] a 1977 United States Supreme Court decision, the Court determined that indirect purchasers could not sue under section 4 of the Clayton Act[17] for price fixing.[18] The Court adopted this rule "to avoid the risks of multiple recovery (pursued by more than one level of purchaser), to keep courts from having to perform the complex task of apportioning damages between direct and indirect purchasers, and to focus enforcement of antitrust laws by concentrating the full recovery on direct purchasers."[19]

After *Illinois Brick*, a number of states, including Kansas,[20] "passed legislation, so called '*Illinois Brick* repealers,' expressly allowing indirect purchasers to recover damages under their statutes."[21] Other states have rejected the *Illinois Brick* rule by interpreting their antitrust statute to allow indirect purchaser suits.[22] "Other states, however, have concluded that their general antitrust statutes should be interpreted consistently with *Illinois Brick*."[23]

In 1983, the Court decided *AGC*, in which it developed a standing test for non-price-fixing cases brought under section 4 of the Clayton Act. In that case, two

---

15 K.S.A. 50-161(b) (emphasis added).
16 431 U.S. 720 (1977).
17 15 U.S.C. § 15.
18 *Illinois Brick*, 431 U.S. at 735.
19 *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 307 F. Supp. 2d 136, 139 (D. Me. 2004) (citing *Illinois v. Brick*, 431 U.S. at 730-31, 740-41, 746).
20 K.S.A. 50-161(b).
21 Jonathan T. Tomlin & Dale J. Giali, *Federalism and the Indirect Purchaser Mess*, 11 GEO. MASON L. REV. 157, 161 (2002).
22 *Id.*
23 *Id.*

unions sued an employment group under section 4 alleging that the group had coerced union members as well as third parties to enter into business relationships with nonunion firms.[24] The unions argued that this conduct adversely affected the trade of the unionized firms, which in turn restrained the unions' business activities.[25]

The Court ultimately determined that the unions lacked standing to bring a private antitrust action based on the following five factors:

> (1) the causal connection between the antitrust violation and the harm to the plaintiff (including whether the defendant intended to cause that harm);
>
> (2) whether the "nature" of the plaintiff's alleged injury is "of the type that the antitrust laws were intended to forestall;"
>
> (3) the directness or indirectness of the asserted injury;
>
> (4) the existence of more direct victims of the alleged injury (i.e. whether the plaintiff is the party most likely to seek redress of the antitrust violation); and
>
> (5) the potential for duplicative recovery or complex apportionment of damages.[26]

The Court emphasized that "the tenuous and speculative character of the relationship between the alleged antitrust violation and the Union's alleged injury, the potential for duplicative recovery or complex apportionment of damages, and the existence of more direct victims of the alleged conspiracy—weigh[ed] heavily

---

[24] *AGC*, 459 U.S. 519, 520 (1983).
[25] *Id.*
[26] *McCarthy v. Recordex Serv.*, 80 F.3d 842, 850 (3d Cir. 1996) (citing *AGC*, 459 U.S. at 537-38, 541-44).

against judicial enforcement of the Union's antitrust claim."[27]

Because "*AGC* incorporates, rather than repudiates, the principles of *Illinois Brick*,"[28] one could argue that jurisdictions rejecting *Illinois Brick* would also reject the *AGC* standing test since its broad application would preclude most, if not all, indirect purchaser suits. In other words, applying *AGC* in a jurisdiction that recognizes indirect purchaser suits could effectively negate the legislative or judicial rejection of *Illinois Brick*.

Although this argument has some intuitive appeal, it fails to consider that "*AGC* and *Illinois Brick* address two analytically distinct aspects of antitrust standing."[29] In *AGC*, the Court was primarily concerned with the remoteness of the plaintiff's injury and whether it was too far removed from the antitrust injury to warrant a section 4 remedy.[30] "This inquiry, akin to the determination of 'proximate cause' in the negligence context, is subtle and resists the use of hard-and-fast 'black letter' rules."[31] In *Illinois Brick*, however, the Court created a bright-line rule that focused "exclusively on the risk of duplicative recovery and potential for overly-complex damages and apportionment calculations."[32] Viewed in this context, the Court finds that the *AGC* standing test may be applied to this action even though the KRTA specifically contemplates indirect purchaser suits. The Court, therefore, agrees with Defendants that "the KRTA does not implicitly

[27] *AGC*, 459 U.S. at 545.
[28] McCarthy, 80 F.3d at 851.
[29] *Id.* n.13 (citing *Merican, Inc. v. Caterpillar Tractor Co.*, 713 F.2d 958, 963-65 (3d Cir. 1983)).
[30] *Id.* (citing *Merican*, 713 F.2d at 964).
[31] *Id.* (citing *Merican*, 713 F.2d at 964).
[32] *Id.* citing *Merican*, 713 F.2d at 963-64).

grant standing to every antitrust plaintiff who characterizes himself as an 'indirect purchaser.'"[33]

This finding is consistent with at least eight other jurisdictions.[34] For example, in *Crouch v. Crompton Corp.*,[35] a 2004 North Carolina Superior Court decision, the court found that although "[t]he courts of this state may not deny standing based upon *Illinois Brick*," the *AGC* factors could be applied without undermining North Carolina's rejection of *Illinois Brick* by modifying and limiting the factors that otherwise would act "as a per se disqualification of indirect purchasers in price fixing cases under" *Illinois Brick*.[36]

Although the Court agrees with this approach, it is without sufficient information to meaningfully apply a modified *AGC* standing test. On a motion to dismiss, the Court may only consider the allegations as stated in the petition. Here, Plaintiff alleges that he "indirectly purchased" labelstock from Defendants. Although Plaintiff could have pled facts relating to *AGC* factors, "the petition need only contain a short and plain statement of the claim showing that the pleader is entitled to relief."[37] As Judge Gard and Professor Casad have noted, Kansas follows notice pleading and, therefore, is no longer "greatly concerned with whether every allegation, considered necessary at common law, is pleaded or not, so long as

[33] Def's' Resp. at 2.
[34] *See Couch v. Crompton Corp.*, Nos. 02CVS4375, 03CVS2514, 2004 NCBC LEXIS 6 *P52-*P64 (N.C. Super. Ct. Oct. 28, 2004) (discussing the application of the AGC factors in California, Michigan, Minnesota, Nebraska, New York, North Carolina, North Dakota, and South Dakota).
[35] *Id.*
[36] *Id.* at *P42-*P43.
[37] *Boydston v. Board of Regents*, 242 Kan. 94, 98, 744 P.2d 806, 810 (1987).

the statement of the claim fairly apprises us of its substance. Discovery will easily fill the gaps, and more effectively."[38]

Given the liberal pleading standard under K.S.A. 60-208 and the liberal standard with which the courts are to consider a motion to dismiss, the court finds that Defendants have been adequately apprised of the nature of Plaintiff's claim and that Plaintiff has stated a claim for relief under the KTRA as an indirect purchaser. Accordingly, Defendants' motion to dismiss Plaintiff's KTRA claim is denied.

*B. Unjust Enrichment*

Defendants argue "[a]s an indirect purchaser, Plaintiff did not do anything *for Defendants* or pay anything *to them*."[39] Thus, Defendants contend, Plaintiff's unjust enrichment claim fails because he did not confer any benefit upon Defendants. Plaintiff argues that a benefit may be conferred indirectly and that he conferred a benefit upon Defendants by purchasing labelstock products at "artificially inflated" prices.[40]

To state a claim for unjust enrichment, a plaintiff must allege that: (1) he or she conferred a benefit upon the defendant; (2) the defendant appreciated or had knowledge of the benefit; and (3) the defendant accepted or retained the benefit "under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value."[41] According to the Kansas Supreme Court,

---

[38] 4 Spencer A. Gard & Robert C. Casad, *Kansas Law and Practice: Kansas Code of Civil Procedure* 37 (4th ed 2003).
[39] Def's' Mem. in Supp. of Mot. to Dismiss at 12 (emphasis in original).
[40] Pl's Mem. at 28.
[41] *Haz-Mat Response v. Certified Waste Servs.*, 259 Kan. 166, Syl. ¶ 6, 910 P.2d 839 (1996).

"[t]he substance of an action for unjust enrichment lies in a promise implied in law that one will restore to the person entitled thereto that which in equity and good conscience belongs to that person."[42]

The Kansas appellate courts have not decided whether, for purposes of an unjust-enrichment claim, a benefit may be conveyed indirectly. The issue has been variously decided in other jurisdictions,[43] with several courts concluding that in antitrust cases, unjust-enrichment claims should be allowed if the jurisdiction recognizes indirect-purchaser claims, but not if the jurisdiction bars such claims.[44] Using this as a guideline, the Court finds that Plaintiff may pursue an unjust enrichment theory since Kansas specifically allows indirect-purchaser claims. We do not know, on the present pleadings, how far removed from direct-purchaser status Plaintiff may be. While there may be some limits that would apply, the Court finds that it cannot put too stringent a review on this claim for purposes of a motion to dismiss, given the tendency of courts to allow such claims in states that allow indirect-purchaser suits. Accordingly, Defendants' motion to dismiss Plaintiff's unjust-enrichment claim is denied.

---

[42] *Id.* Syl. ¶ 6.

[43] *Compare In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517, 544 (D.N.J. 2004) (rejecting the argument that indirect purchasers do not confer a benefit on the defendants "because a benefit conferred need not mirror the actual loss of the plaintiff") and *Manufacturers Hanover Trust Co. v. Chemical Bank*, 559 N.Y.S.2d 704, 707 (1990) (explaining that "[i]t does not matter whether the benefit is directly or indirectly conveyed"), *with In re Relafen Antitrust Litig.*, 225 F.R.D. 14, 28 (D. Mass. 2004) (explaining that the doctrine of unjust enrichment applies only "if another has, without justification, obtained a benefit at the direct expense of the [complainant].") (citation omitted).

[44] *See e.g.*, *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 350 F. Supp. 2d 160, 211-12 (D. Me. 2004) (allowing "restitutionary recovery" claims to proceed in jurisdictions that recognize indirect-purchaser suits); *In re Terazosin Hydrochloride Antitrust Litig.*, 150 F. Supp. 2d 1365, 1380 (D. Fla. 2001) (allowing unjust enrichment claims to proceed only in jurisdictions that recognize indirect-purchaser suits).

C. *Defendants' Motion for a More Definite Statement*

Defendants request, in the alternative, that the Court order Plaintiff to make a more definite statement.[45] K.S.A. 60-212(e) provides that "[i]f a pleading . . . is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, such party may move for a more definite statement before interposing such party's responsive pleadings." Here, Gard and Casad advise that "[t]he question under this rule is whether the pleading fairly advises the adverse party of the nature of the claim or defense so that that party can respond to it."[46] As discussed above, Plaintiff's petition apprises Defendants as to the general nature of his claim. Stated differently, the petition is not "so garbled" that Defendants "cannot determine where to begin [their] discovery."[47] Accordingly, Defendants' motion for a more definite statement is denied.

IV. Conclusion

Notwithstanding Kansas' rejection of *Illinois Brick*, the Court has concluded that the *AGC* standing test may be applied to preclude indirect purchasers from maintaining a cause of action under the KRTA. At this stage, however, the Court is without sufficient information to fully consider this test. The Court also finds that Plaintiff may purse an alternative unjust-enrichment claim since the KRTA expressly allows indirect-purchaser suits. In addition, the Court finds that while Plaintiff's petition could have been more explicit, it has apprised Defendants of the

---

[45] Def's' Mem. in Supp. of Mot. to Dismiss at 2, n. 1.
[46] Gard & Casad, *supra* note 38, at 75.
[47] *Id.*

general nature of his claim, making a more definite statement unnecessary. Now, therefore,

IT IS HEREBY ORDERED that Defendants' motions to dismiss and for a more definite statement are hereby denied.

IT IS SO ORDERED.

Steve Leben
District Judge

cc: Anthony F. Rupp
Jason L. Bush
SHUGHART, THOMPSON & KILROY
32 Corporate Woods, Suite 1100
9225 Indian Creek Parkway
Overland Park, KS 66210

John J. Miller
Law Office of John J. Miller, P.C.
4770 N. Belleview, Suite 202
Kansas City, MO 64116

Stacey R. Gilman
BERKOWITZ OLIVER WILLIAMS SHAW & EISENBRANDT, L.L.P.
Two Emanuel Cleaver II Blvd., Suite 500
Kansas City, MO 64112

Isaac L. Diel, Esq.
Law Office of Isaac L. Diel
135 Oak Street
Bonner Springs, KS 66012

Gordon Ball, Esq.
Ball & Scott
550 Main Avenue, Suite 750
Knoxville, TN 37902

Daniel R. Karon, Esq.
Goldman Scarlato & Karon, P.C.
55 Public Square, Suite 1500
Cleveland, OH 44112

Krishna B. Narine
Law Offices of Krishna B. Narine
7839 Montgomery Avenue
Elkins Park, PA 19027