# EXHIBIT 21

# IN THE DISTRICT COURT FOR SCOTTS BLUFF COUNTY, NEBRASKA

CHAD & TERRY MUZZEY obo
themselves & others similiarly
situated,

      Plaintiffs,

      vs.

AVERY DENNISON CORPORATION;
BEMIS COMPANY INC.;
MORGAN ADHESIVES COMPANY;
UPM-KYMMENE CORPORATION; and
RAFLATAC, INC.
      Defendants.

**Case No. CI 05 - 126**

Order overruling the defendants' Rule
12 (b) (6) motion to dismiss and
alternative Rule 12 (e) motion to make
a more definite statement.



**COPY**

This case is plead as a class action. The plaintiffs aver that they were damaged on account of the defendants' conspiracy to fix the price of a product known as labelstock. All of the defendants except UPM-Kymmene Corporation have appeared in a joint motion for dismissal of the complaint or, in the alternative, for an order to make a more definite statement. UPM-Kymmene Corporation has never been served, and by reason of Neb. Rev. Stat. § 25-217, the action against them stands dismissed.

Since the court concludes that the complaint does state a claim, and since the court concludes a more definite statement of the claim can be had in the normal course of discovery, the motion is overruled. The defendants that appeared in the motion therefore have 20 days to answer the complaint pursuant to Nebraska Rules of Pleading 12 (a) (4) (A).

## BACKGROUND:

Labelstock is a product based on film and paper in four layers. The top layer is paper that can be printed on. Underneath the paper is an adhesive so the paper can be stuck on something, such as an envelope or bottle. Below the adhesive layer is a silicone backing, and on the bottom is a paper backing. Labelstock is a $5 billion a year industry world-wide. It is produced on large reels, sheets, or rolls and sold to converters; who cut the labelstock and/or print on the labelstock according to specifications for an end user. The primary markets are food packaging, personal care products packaging, inventory control labeling, and laser/ink jet printed labels. The

defendants are producers of labelstock. The market obviously involves a number of processors that perform different functions as the product makes its way through the distribution chain to the ultimate user. In some instances, it would become part of another product, such as a label on a shampoo bottle; in other instances, it would simply be cut to certain configurations and sold as sheets for a consumer to print and affix mailing labels.

The plaintiffs claim in their complaint that they are indirect purchasers of labelstock. They also claim that they were damaged by the alleged price-fixing because others in the distribution chain have passed on increased costs which were ultimately paid by persons similarly situated as the plaintiffs. In other words, the plaintiffs claim that the real cost of the alleged conspiracy to fix prices is paid by consumers like them. The plaintiffs have three theories of recovery in their case.

The first theory of recovery is based on Neb. Rev. Stat. § 59-821–a part of the state's restraint of trade or antitrust laws. The law outlaws conspiracies in restraint of trade or commerce. It provides that: "Any person who is injured . . . by a violation of sections 59-801 to 59-831, whether such injured person dealt directly or indirectly with the defendant, may bring a civil action in the district court. . . ."

The second theory of recovery is under the Nebraska Consumer Protection Act. The sections of that law in Neb. Rev. Stat. §§59-1603 and 59-1609 read nearly identical to the language in the state's restraint of trade or antitrust laws.

The third theory of recovery is a common law claim for unjust enrichment. This rule was described in *Bush v. Kramer*, 185 Neb. 1, 4, 173 N.W.2d 367, 369 (1969) as: "Where benefits have been received and retained under such circumstances that it would be inequitable and unconscionable to permit the party receiving the benefits to avoid payment therefore, the law requires the party receiving and retaining the benefits to pay the reasonable value of them."

## DISCUSSION:

The defendants' motion to dismiss argues that the plaintiff has failed to state a claim because they lack standing to bring suit. However, this argument pays little credence to the language of the state antitrust law and consumer protection act. Those statutes state very plainly that indirect purchasers may bring an action. It is true that the problems of proof that the plaintiffs were injured are complex. It will necessarily involve proof that the increased prices were passed on through intermediaries to be ultimately paid by the consumers. In that task, the

plaintiffs may or may not carry the day. However, they have claimed that they dealt indirectly with the defendants and were damaged.

Also, on the claim for unjust enrichment, the plaintiffs will have to prove that the defendants received and retained benefits from the plaintiffs. This will be a process of proof very similar to the other two claims. The plaintiffs will also have to prove that the circumstances would be inequitable and unconscionable to permit the defendants to avoid payment for those benefits. However, this is exactly what the plaintiff has claimed in their complaint. Their claim is that the defendants are the parties that broke the law. It would be a curious system of justice that allowed the guilty parties to hide behind complications of proof in order to retain their ill-gotten gains.

In a case based on federal anti-trust and restraint of trade laws, the defendants would be correct in their claim that the plaintiffs lack standing since they are not direct purchasers. The United States Supreme Court so ruled in *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977). Then in *Associated Gen. Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519 (1983) the same court established a multi-factored test looking at principles of proximate causation, in order to plead standing in such cases. Those factors include:

1. The causal connection between the violation and the ultimate harm, and whether the defendant intended to injure the plaintiff.
2. Whether the plaintiff's injury was a type congress sought to redress with antitrust laws.
3. The direct or indirect nature of the injury.
4. The speculative nature of the damages.
5. Whether there are more direct victims, and
6. The risk of duplicative recovery and complex damage apportionment.

However, Nebraska and many other states have changed their antitrust and consumer protection laws. They did so with so-called Junkin acts, that allow indirect purchaser suits. These acts added language to their antitrust and consumer protection laws: "whether such injured person dealt directly or indirectly with the defendant"; and thereby included indirect purchasers as classes of persons that could sue. Later, the United States Supreme Court indicated that states may do this without running afoul of the doctrine of preemption. This was in the opinion of *California v. Arc America Corp.*, 490 U.S. 93 (1989). Nebraska adopted the principle that states may include indirect purchasers to achieve standing in such cases in *Arthur v. Microsoft Corporation*, 267 Neb. 586, 676 N.W.2d 29 (2004).

.

Therefore, the question raised by the motion to dismiss is a question of whether the plaintiffs have *plead* a case that shows their standing, as opposed to whether the plaintiffs can *prove* the elements of their standing, and of their case in chief. Nebraska has recently changed their system of pleading. In doing that, they went from a system of fact or code pleading to a system of notice pleading. Under notice pleading systems, it is not necessary to plead facts–conclusions to show the claim are ok. The reason is that it is thought best to restrict pleading to giving the defendants notice of what the claim is–not how the plaintiff can prove it. Discovery is the technique used to develop what the facts and particulars are–not pleading.

The plaintiffs have plead that the defendants conspired to fix the prices of labelstock. They have also plead that they are indirect purchasers of that product. They have also claimed that they were damaged, do not plead the particulars or amount of that damage, but aver that they ultimately paid the price of the defendants' illegal acts as consumers who had those costs passed through to them in the economics of the distribution chain. The plaintiffs also claim that they are not alone in ultimately paying for the defendants' alleged ill-gotten gains. They claim that there is a class of consumers in this state that like the plaintiffs, have paid a price that was fixed for a product.

The policies of the state are clear in the laws that have been discussed in this opinion. First, the state has declared that indirect purchasers can sue to bring price fixers to account. Consumers of the state are given the right to sue on those claims. Whether standing exists as a matter of fact–as opposed to a matter of pleading–is not before the court yet. Second, the state has declared that the pleading of such claims can be done in such a way that only has to give the defendants' notice of the claim they face. Third, the plaintiffs must not only plead that claim, but must prove it when the time comes for proof.

It is the court's conclusion that the plaintiffs have plead their claim, and it is not time for them to prove it yet. Further, the pleading does not have to include the particulars of the proof. Those particulars can be gained through a separate process of discovery that is allowed for both sides to the suit. It is time to begin that process of discovery. If it develops that the plaintiff has no proof of their standing or the elements of their claim, then the case can be disposed of by summary judgment. If not, it must go to trial.

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that the motion to dismiss, or in the alternative motion for a more definite statement should be, and the same is hereby overruled.

CI 05 - 126                                                                                                          Page 4 of 5

IT IS FURTHER ORDERED that the defendants (with the exception of the defendant
UPM-Kymmene Corporation) be given 20 days to answer the complaint of the plaintiff.

DATED January 17, 2006.

BY THE COURT,

Robert O. Hippe, District Judge

cc:   Robert Pahlke, Daniel Karon, & Isaac L. Diel for Plaintiffs
      Pamela Epp Olsen for Avery Dennison Corporation
      Richard A. Douglas, & Patrick J. Ahern for Bernis Co. Inc. & Morgan Adhesives
      William J. Birkel, & Peter G. McAllen for Raflatac, Inc.