# EXHIBIT 28

I.      GETTING STARTED

        A.    Functions of the Grand Jury

        The function of the grand jury is to investigate possible criminal violations of the federal laws and to return indictments against culpable corporations and individuals where there is probable cause to believe that a violation has occurred.  In performing this function, "the grand jury is to inquire into all information that might possibly bear on its investigation until it has identified an offense or has satisfied itself that none has occurred."[1]  The grand jury "is a grand inquest, a body with powers of investigation and inquisition, the scope of whose inquiries is not to be limited narrowly by questions of propriety or forecasts of the probable result of the investigation, or by doubts whether any particular individual will be found properly subject to an accusation of crime."[2]  The grand jury is rooted in several centuries of Anglo-American history and "has the dual function of determining if there is probable cause to believe that a crime has been committed and of protecting citizens against unfounded criminal prosecutions."[3]

_____

        [1]United States v. R. Enterprises, Inc., __ U.S. __, __ (1991).

        [2]Blair v. United States, 250 U.S. 273 (1919); see also United States v. Calandra, 414 U.S. 338, 343 (1974).

        [3]Branzburg v. Hayes, 408 U.S. 665, 686-87 (1972); see also United States v. Sells Eng'g, Inc., 463 U.S. 418, 423 (1983); United States v. Calandra, 414 U.S. at 343.

B.    Initial Steps in Starting a Grand Jury Investigation

1.    Memo requesting authorization

The Division's grand jury investigations must be approved by the Assistant Attorney General.  If a Division attorney believes that a criminal violation of the antitrust laws has occurred, he should prepare a memorandum requesting authority to conduct a grand jury investigation ("the authorization memo").  The authorization memo should set forth all presently available relevant information that indicates that there may have been a violation of any of the criminal provisions of the antitrust laws.  (Sherman Act Sections l, 2, and 3).  It should specify, to the extent possible:

(l)    The companies, individuals, industry, and commodity involved;

(2)    The estimated amount of commerce involved on an annual basis;

(3)    The geographic area affected and the district where the investigation is to be conducted;

(4)    The suspected violation and a summary of the supporting evidence;

(5)    The significance of the possible violation from an economic and antitrust enforcement standpoint;

(6)    The estimated amount of time the investigation will take; and

(7)    Any additional relevant information.

The authorization memo should also discuss how the grand jury will be used to gather additional evidence and the expected parameters of the  investigation.  To the extent possible, the memorandum should identify the individuals and corporations that will be subpoenaed and the individuals or corporations that are potential defendants.

If a preliminary inquiry has not been authorized, the authorization memo should request that clearance for the investigation be obtained from the Federal Trade Commission.

The information supporting a request for grand jury authority may come from a prior preliminary inquiry, a CID investigation or confidential sources.  In addition, there are numerous public sources for locating basic information to include in the authorization memo.  The Division's library is a rich source of information that should not be overlooked at the start of a grand jury investigation.  Useful information about major corporations can be obtained from the 10-K and annual reports located in the Antitrust library.[4]  Basic industry information is available in the library's bound volumes and periodicals and from the on-line database accessed through the library.  Dun & Bradstreet reports also can be obtained through the Antitrust library.  Other valuable sources of information, both in preparing the authorization memo and throughout the ensuing investigation, are the Division's files of past investigations, corporate filings with state government offices, state and federal regulatory agency filings and reports, and national and local trade association reports.[5]

The staff's authorization memo is forwarded to the section or field office chief for review.  The chief will write a cover memorandum that contains his views and recommendation, a list of attorneys who will be assigned to the investigation and the district in which the grand jury investigation will be conducted.  The chief's memorandum should also set forth an estimate of the time and resources to be used and any specific problems that are likely to be encountered during the investigation.

---

[4]10-K's and annual reports for other publicly-held corporations are available in the SEC Reference Room.

[5]  See ATD Manual VI for a more detailed discussion of available information sources.

The authorization memo and the chief's cover memo, along with the grand jury letters of authority, are sent to the Office of Operations for review by the Director of Operations.  The recommendation of the Director of Operations is made to the Assistant Attorney General through the appropriate Deputy Assistant Attorney General.  The following appears on the bottom of the left side of the Operations recommendation memorandum:

Approved:_____

Date:_____

Disapproved:_____

Date:_____

Upon approval of the recommendation by the Assistant Attorney General, the staff is notified through its section or field office chief.

Requests to expand the scope of an existing grand jury investigation also require the approval of the Assistant Attorney General.  The same procedure as that which is used with new investigations should be followed. When personnel changes are made on the staff of an existing grand jury  investigation, the section or field office chief should notify the Office of Operations so that additional letters of authority may be prepared.

2.   Letters of authority

Whenever a grand jury investigation is requested, the staff will prepare letters of authority for the signature of the Assistant Attorney General, addressed to each attorney who will appear before the grand jury.[6]  Upon approval of the grand jury, the signed letters are returned to the appropriate section or field office chief.  They should be issued before an Antitrust Division attorney attends any grand jury sessions.  Unlike United States Attorneys and their assistants, a Division attorney must be specifically authorized to conduct grand jury proceedings; he does not have general authorization.

The issuance of letters of authority is governed by 28 U.S.C. § 515, which provides, in part:

(a)   The Attorney General or any other officer of the Department of Justice, or any attorney specially appointed by the Attorney General under law, may, when specifically directed by the Attorney General, conduct any kind of legal proceeding, civil or criminal, including grand jury proceedings and proceedings before committing magistrates,  which United States attorneys are authorized by law to conduct, whether or not he is a resident of the district in which the proceeding is brought.

The Attorney General has delegated the authority to direct Department of Justice attorneys to conduct grand jury proceedings to all Assistant and Deputy Assistant Attorneys General.[7]

---

[6]See U.S.A.M. 9-11.241.

[7]Order No. 725-77.

Letters of authority may be broadly drafted and need not describe the specific parties or violations that are under investigation.[8]  While it is Division policy that all attorneys receive a letter of authority prior to appearing before the grand jury, failure to receive a letter should not invalidate a subsequent indictment.[9]  The letter of authority should be filed with the clerk in the district where the grand jury will sit, if possible, before any official action by the Government attorneys affecting the rights of witnesses or possible defendants, such as issuance of subpoenas, is taken.[10] A state attorney participating in the Division's Cross-Designation Program should not attend any grand jury sessions on behalf of the Division before an Oath of Office is executed and a grand jury letter of authority has been filed.

Upon the return of an indictment, experienced defense counsel may check the letters of authority, and failure to file (or to file promptly) may lead to additional motions and unnecessary work on the part of the staff in dealing with the omission.  However, failure to file a valid letter prior to appearing before the grand jury should not invalidate a subsequent indictment.[11]

---

[8]See United States v. Morrison, 531 F.2d 1089 (1st Cir.), cert. denied, 429 U.S. 837 (1976); In re Subpoena of Persico, 522 F.2d 41 (2d Cir. 1975); United States v. Morris, 532 F.2d 436 (5th Cir. 1976); Infelice v. United States, 528 F.2d 204 (7th Cir. 1975); United States v. Wrigley, 520 F.2d 362 (8th Cir.), cert. denied, 423 U.S. 987 (1975); United States v. Prueitt, 540 F.2d 995 (9th Cir.), cert. denied, 429 U.S. 1063 (1976).

[9]See United States v. Balistrieri, 779 F.2d 1191, 1209 (7th Cir.) (a letter of authorization is not essential to the validity of an appointment under § 515(a)), cert. denied, 475 U.S. 1095 (1985); see also In re Sealed Case, 829 F.2d 50 (D.C. Cir. 1987), cert. denied, 484 U.S. 1027 (1988).

[10]If it is necessary to issue subpoenas prior to filing the letters of authority, it may be wise to request the United States Attorney to issue the subpoenas.

[11]See Belt v. United States, 73 F.2d 888, 889 (5th Cir. 1934); May v. United States, 236 F. 495, 500 (8th Cir. 1916).

In many jurisdictions, letters of authority are secret; in others, they are a matter of public record. A sample letter of authority is attached as Appendix I-1.

3.    Arranging for the grand jury and preliminary conferences

After the grand jury investigation has been authorized, arrangements for the investigation should be made with the United States Attorney in the district in which the grand jury will sit and, if appropriate, the chief judge or the particular judge who will be in charge of the grand jury.  It is also advisable to meet with the clerk of the district court and the local United States Marshal.  If practicable, and the procedures in the district are unknown, such arrangements should be made in person.  If impracticable, or if the jury is to sit in a district where the staff has already established a personal relationship with the United States Attorney and is acquainted with the local procedures, arrangements may be made by letter or telephone.  If the matter is being handled by a Washington staff, the chief of the field office in whose jurisdiction the grand jury will sit should be consulted.  Frequently, the chief will have had grand jury experience in the district in which the grand jury will sit and can be quite helpful in procedural matters and as liaison with the court and other officials.

Continued liaison should be maintained with the United States Attorney throughout the entire investigation and, insofar as necessary, with the clerk and marshal.  A conference with these individuals should be held prior to the empaneling of a new grand jury, or when the investigation is to be conducted by a grand jury previously empaneled, prior to the first session.  Among the procedural matters to be discussed and with which the staff should become familiar are:

l.     Filing of letters of authority and secrecy thereof;

2.     Challenging and excusing grand jurors;

3.     Excusing witnesses;

4.     Subpoenas;

     (a)   Where returnable;

     (b)   Whether the service copy is signed and sealed;

     (c)   Where return of service is to be made; and

     (d)   Secrecy;

5.     Note taking by grand jurors;

6.     Arrangements for court reporting;

7.     Obtaining an impounding order;

8.     Handling of Witness' Certificates of Attendance and Payment;

9.     Immunity applications and orders;

10.    Appointment of secretary and keeping of attendance record; and

11.    Excusing the grand jury temporarily and recalling it for additional sessions.

The number of hours per day the grand jury should sit and the length of time normally taken for lunch should also be ascertained.  Although, within limitations, this is the prerogative of the grand jury, the staff can tactfully suggest the appropriate hours and, normally, they will be followed by the grand jury.  In some districts, the hours will be fixed by the court in its charge to the grand jury.

A conference with the judge having supervision over the grand jury ordinarily should be sought prior to the empaneling of a new grand jury, or, if the investigation is to be conducted by a grand jury already empaneled, prior to the initial session.  At this conference, the staff should be prepared to explore any anticipated special problems and to explain the general nature of the investigation.  Care should be taken that the court understands the anticipated duration of the grand jury and the anticipated frequency of sessions.  This is necessary so that the court will not be faced with unexpected complaints of undue hardship or inconvenience by jurors in the case of a grand jury already empaneled, or in the case of a grand jury to be  empaneled, so that the court can advise the panel and excuse such persons as may be appropriate.  In the latter instance, if the jurors do not know in advance the period they are to serve, they may either not show up or show up angry.  In the case of a grand jury already empaneled, the problem of inconvenience or hardship can only be dealt with as tactfully as possible by the staff and, if necessary, jurors excused and additional jurors empaneled.

If not covered in the conference with the United States Attorney, the court's desires should be ascertained as to the procedure to be followed in:

l.      Excusing grand jurors;

2.      Note taking by grand jurors;

3.      Recalling the grand jury from time to time for additional sessions; and

4.      Obtaining immunity orders.

The procedure to be followed in challenging grand jurors should also be discussed if such challenges are contemplated. Finally, it may be possible to obtain an appropriate impounding order at this conference.[12]

    4.   <u>Types of grand juries</u>

Ordinarily, Division investigations are conducted by a regular grand jury.  Regular grand juries may be empaneled for up to 18 months.  The court may extend this period by six months or less if it determines that such an extension is in the public interest.[13]  An antitrust matter may be presented to a grand jury that is already empaneled or one that is specifically empaneled for the antitrust investigation.

The decision as to whether the matter will be presented to a grand jury already empaneled or one to be empaneled is made in conjunction with the U.S. Attorney and depends upon a number of factors, including the following:

    1.    The practice in the district;

    2.    The number of sessions and length of time required by the Antitrust Division; and

    3.    The workload and the term of the grand jury already empaneled.

---

[12]An impounding order should only be obtained after a grand jury has been empaneled; otherwise, there is no proceeding before the court in which such an order can be entered. However, an impounding order can be obtained by virtue of the jurisdiction of an already empaneled grand jury and the order by its terms can authorize transfer of the documents to a future grand jury.  See Fed. R. Crim. P. 6(e)(3)(c)(iii) and Ch. IV § E. 1., infra.

[13]Fed. R. Crim. P. (6)(g).

For example, in some districts, a grand jury will be empaneled for the full 18 months and the United States Attorney only uses it infrequently.  If the time remaining in the term of the grand jury is sufficient for presentation of the antitrust matter, this grand jury may be used.  On the other hand, the practice in the district may be to empanel a grand jury solely for antitrust investigations and for the full 18 months.[14]  In other districts, a grand jury will be empaneled for only a short period of time, (perhaps two or three months), and it will be necessary to present the antitrust matter to successive grand juries.  Numerous other variations exist, but these are examples of the choices that may be faced.

In some districts, the particular grand jury that will conduct the investigation will be determined by the United States Attorney without court approval.  In other districts, approval of the court is required.  In still other jurisdictions, a decision will be made by the court with the advice and assistance of the United States Attorney and/or the Antitrust Division attorneys.  In the absence of exceptional circumstances, it is the policy of the Division to follow the procedures in the district in which the grand jury will sit.  It is extremely important that the staff becomes thoroughly familiar with the local procedures.  These should be discussed with the United States Attorney and, insofar as necessary, the clerk of the district court and the United States Marshal.

Division attorneys should be aware of the distinction between regular grand juries that are empaneled specifically for antitrust investigations and special grand juries that are empaneled under the authority of 18 U.S.C. § 3331.[15]  The former are often referred to as "special grand juries"; however, this is a sometimes confusing misnomer.

---

[14]This is the preferred procedure if appropriate arrangements can be made because potential conflicts with the United States Attorney's use of the grand jury are avoided.

[15]See U.S.A.M. 9-11.300, et seq.

Special grand juries are limited to major metropolitan areas and areas where the Attorney General, Deputy Attorney General or designated Assistant Attorney General certifies that a special grand jury is necessary because of criminal activity in the district.  Special grand juries are designed primarily to meet the special needs of organized crime and public corruption investigations.  Special grand juries are virtually never used by the Division.

     5.    <u>Public comment and contacts with outside counsel</u>

As a general rule, no public comments on the existence or nature of the grand jury investigation are made. In rare instances, some comment may be necessary.  In such cases, it should come from the Department's Director of Public Affairs and all inquiries concerning a grand jury investigation should be directed to his office with no comment by the staff.

All substantive contacts with outside counsel throughout the investigation should be recorded.  A good practice is to make notes in a stenographic notebook of all contacts with counsel, witnesses or third parties, including the dates and, if appropriate, the substance of the conversation.  This notebook should be preserved and a memorandum to files written, describing all significant contacts.  In addition, any agreements or special arrangements that are made with outside counsel, such as subpoena modifications, should be memorialized in exchanges of written correspondence.

C.      Empaneling the Grand Jury

1.      Empaneling provision

District courts are authorized to empanel grand juries under Fed. R. Crim. P. 6(a), which provides:

The court shall order one or more grand juries to be summoned at such time as the public interest requires. . . .

This provision empowers the court to empanel one or more grand juries in addition to those other grand juries that already may be sitting.  The empaneling should be in open court unless extremely unusual circumstances require exclusion of the public.[16]

2.      Grand jury qualifications and selection of grand jury

The requirements for grand juror selection are contained in the Jury Selection and Service Act, 28 U.S.C. §§ 1861, et seq. ("JSSA").  Grand jurors must be "selected at random from a fair cross section of the community in the District or Division wherein the court convenes."[17]  The JSSA does not require that the resulting grand jury be a

---

[16]See In re Impaneling of Grand Jury, 4 F.R.D. 382 (S.D.N.Y. 1945).

[17]17/  28 U.S.C. § 1861.

statistical mirror of the community but only that the grand jurors are selected from a source that is reasonably representative of the community.[18]

Each judicial district has a written plan for random juror selection that has been reviewed and approved by the chief judge and the judicial counsel for the circuit.[19]  Among other things, each district's plan (1) establishes a jury commission or authorizes the clerk of the court to manage the jury selection process, (2) specifies the sources for the names of prospective jurors and identifies those groups of persons or occupational classes that are exempt from service or whose members may be automatically excused upon request[20] and (3) describes the procedures to be followed in randomly selecting jurors from among the qualified candidates.  Actual juror qualifications, such as United States citizenship, age, English language proficiency, absence of physical or mental infirmity, and lack of conviction for a felony are detailed in 28 U.S.C. § 1865.  The JSSA specifically prohibits any exclusion based on race, color, religion, gender, national origin, or economic status.[21]

---

[18]See United States v. DiTommaso, 405 F.2d 385 (4th Cir. 1968); cert. denied, 394 U.S. 934 (1969); United States v. Marcello, 423 F.2d 993 (5th Cir.), cert. denied, 398 U.S. 959 (1970); United States v. Potter, 552 F.2d 901 (9th Cir. 1977); United States v. Test, 550 F.2d 577 (10th Cir. 1976).

[19]28 U.S.C. § 1863.

[20]The JSSA mandates the use of voter registration lists or lists of actual voters as the primary source of juror names.  To the extent necessary, these lists may be augmented by supplemental sources.  See generally United States v. Young, 822 F.2d 1234 (2d Cir. 1987); United States v. Brummitt, 665 F.2d 521 (5th Cir. Unit B Dec. 1981), cert. denied, 456 U.S. 977 (1982); United States v. Brady, 579 F.2d 1121 (9th Cir. 1978), cert. denied, 439 U.S. 1074 (1979).

[21]28 U.S.C. § 1862; see generally United States v. Greene, 489 F.2d 1145 (D.C. Cir. 1973), cert. denied, 419 U.S. 977 (1974); United States v. Zirpolo, 450 F.2d 424 (3d Cir. 1971); United States v. Maskeny, 609 F.2d 183 (5th Cir.), cert. denied, 447 U.S. 921 (1980); United States v. Gometz, 730 F.2d 475 (7th Cir.), cert. denied, 469 U.S. 845 (1984); United States v. Brady, 579 F.2d supra.

Under the usual procedure, the clerk sends out "juror qualification forms" under § 1864. Based on the responses received, a decision is made as to whether the prospective jurors are qualified or automatically excused. The names of qualified jurors are then placed in a master jury wheel from which names are drawn randomly when a grand jury is to be empaneled. The prospective jurors are then summoned for jury duty.[22] Typically, the jurors from which the grand jury will be selected have been summoned and are present when the staff enters the court for empaneling. Possible defects in the summoning process should be discussed with the United States Attorney. If improperly summoned, challenges to the array may be made as discussed below.

When the prospective jurors have been assembled, the judge or the clerk will explain the demands of grand jury service and will inquire of the prospective grand jurors whether there is any reason why service on the grand jury would present an undue hardship, e.g., long-term illness, hearing impairment, acute business problems, etc. The criteria for excusing a prospective juror varies from judge to judge, but generally is extremely strict. The power of the court to excuse prospective grand jurors is set forth in 28 U.S.C. § 1866(c):

> . . . any person summoned for jury service may be (1) excused by the Court, upon a showing of undue hardship or extreme inconvenience, for such period as the Court deems necessary, at the conclusion of which such person shall be summoned again for jury service.[23]

Following this procedure, the 23-person grand jury is picked from the remaining prospective jurors.

---

[22]The number to be summoned varies from district to district.

[23]See United States v. Anderson, 509 F.2d 312 (D.C. Cir. 1974), cert. denied, 420 U.S. 991 (1975).

3.    Objections to grand jury

      a.    Form of objection

      1)    Challenges under Rule 6(b)(1).  Government attorneys may challenge the qualifications of individual grand jurors under Fed. R. Crim. P. (6)(b)(1), which provides:

> The attorney for the government or a defendant who has been held to answer in the district court may challenge the array of jurors on the ground that the grand jury was not selected, drawn or summoned in accordance with law, and may challenge an individual juror on the ground that the juror is not legally qualified.  Challenges shall be made before the administration of the oath to the jurors and shall be tried by the court.

According to the specific wording of the Rule, the challenge shall be made before the jurors are given their oath.  If a Division attorney believes that a juror should be excused after the administration of the oath, he should proceed under Fed. R. Crim. P. 6(g) or 28 U.S.C. § 1866(c)(2), (5).

Theoretically, prospective antitrust defendants may challenge the array of grand jurors or a single grand juror under Rule 6(b)(1).  However, since antitrust defendants are virtually never "held to answer," this provision has little

application to antitrust grand juries.  Further, prospective antitrust defendants are not entitled to notification of grand jury selection.[24]

        2)    Motion to dismiss under Rule 6(b)(2).  Fed. R. Crim. P. 6(b)(2) provides, in pertinent part, that:

> A motion to dismiss the indictment may be based on objections to the array or on the lack of legal qualification of an individual juror, if not previously determined upon challenge. . . . An indictment shall not be dismissed on the ground that one or more members of the grand jury were not legally qualified if it appears from the record kept pursuant to subdivision (c) of this rule that 12 or more jurors, after deducting the number not legally qualified, concurred in finding the indictment.

This Rule incorporates the JSSA's provisions for moving to dismiss an indictment based on a failure to comply with proper jury selection procedures.  Only "substantial failures to comply" with the provisions of the JSSA constitute a violation of the Act; technical violations are insufficient to support a motion to dismiss.[25]  "A substantial

---

[24]See United States v. Barone, 311 F. Supp. 496 (W.D. Pa. 1970); United States v. Kenner, 36 F.R.D. 391 (S.D.N.Y. 1965).

[25]28 U.S.C. § 1867; see United States v. Savides, 787 F.2d 751, 754 (1st Cir. 1986); United States v. LaChance, 788 F.2d 856, 870 (2d Cir.), cert. denied, 479 U.S. 883 (1986); United States v. Carmichael, 685 F.2d 903, 911-12 (4th Cir. 1982), cert. denied, 459 U.S. 1202 (1983); United States v. Schmidt, 711 F.2d 595, 600 (5th Cir. 1983), cert. denied, 464 U.S. 1041 (1984); United States v. Nelson, 718 F.2d 315, 319 (9th Cir. 1983); United States v. Gregory, 730 F.2d 692, 699 (11th Cir.), cert. denied, 469 U.S. 1208 (1984).

failure is one that contravenes one of the two basic principles of the Act: (1) random selection of jurors, and (2) determination of juror disqualification, excuses, exemptions, and exclusions on the basis of objective criteria."[26] The motion to dismiss must reduce the number of qualified votes for indictment to fewer than 12 to be successful.[27] A defendant must object to the array by pre-trial motion to dismiss the indictment and failure to do so constitutes a waiver.[28] Only defendants have standing under Rule 6(b)(2); grand jury witnesses are not entitled to complain about the composition of the grand jury.[29] A defendant may inspect written questionnaires and other documents relevant to grand jury selection to prepare the motion to dismiss.[30] The district court is not required to hold a hearing on a challenge to the composition of the grand jury.[31]

---

[26]United States v. Savides, 787 F.2d at 754; see also United States v. Maskeny, 609 F.2d 183 (5th Cir.), cert. denied, 447 U.S. 921 (1980); United States v. Ross, 468 F.2d 1213 (9th Cir. 1972), cert. denied, 410 U.S. 989 (1973).

[27]See United States v. Johnston, 685 F.2d 934, 938 (5th Cir. 1982), cert. denied, 460 U.S. 1053 (1983); United States v. Okiyama, 521 F.2d 601, 604 n.2 (9th Cir. 1975).

[28]See Davis v. United States, 411 U.S. 233 (1973); United States v. Greene, 489 F.2d 1145 (D.C. Cir. 1973), cert. denied, 419 U.S. 977 (1974); Porcaro v. United States, 784 F.2d 38, 43 (1st Cir.), cert. denied, 479 U.S. 916 (1986); United States v. Zirpolo, 450 F.2d 424, 432 (3d Cir. 1971); Throgmartin v. United States, 424 F.2d 630, 631 (5th Cir. 1970); United States v. Tarnowski, 583 F.2d 903, 904 n.1 (6th Cir. 1978), cert. denied, 440 U.S. 918 (1979); Louie v. United States, 426 F.2d 1398, 1402 (9th Cir.), cert. denied, 400 U.S. 918 (1970); Talk v. United States, 509 F.2d 862, 863 (10th Cir. 1974), cert. denied, 421 U.S. 932 (1975).

[29]See United States v. Fitch, 472 F.2d 548, 549 (9th Cir.), cert. denied, 412 U.S. 954 (1973).

[30]See Test v. United States, 420 U.S. 28, 30 (1975); Mobley v. United States, 379 F.2d 768, 773 (5th Cir. 1967); United States v. Armstrong, 621 F.2d 951, 955 (9th Cir. 1980); United States v. Smaldone, 485 F.2d 1333 (10th Cir. 1973), cert. denied, 416 U.S. 936 (1974).

[31]United States v. Miller, 771 F.2d 1219 (9th Cir. 1985).

b.    Grounds for objection

1)    Objections to individual jurors.  The staff or a defendant may object to a specific grand juror because the juror is not legally qualified to sit on the jury.  The JSSA sets out the legal qualifications for grand jurors.[32]  In general, all persons are qualified to serve on a grand jury unless:

(1)  they are not citizens of the United States;

(2)  they are under 18 years old;

(3)  they have not resided within the judicial district for a period of at least one year;

(4)  they are unable to read, write and understand the English language sufficiently to satisfactorily fill out the juror qualification form;

(5)  they are unable to speak the English language;

(6)  they have a mental or physical infirmity that would prevent them from rendering satisfactory juror service; or

(7)  they have a charge pending against them or have been convicted of a felony.

Occasionally, the staff may wish to exclude a prospective juror with a potential conflict of interest or a particular bias in regard to the matter to be investigated.  For example, a prospective juror may be employed by the company under investigation, may be a direct and substantial victim or may be intimately involved in the industry

---

[32]28 U.S.C. § 1865.

under investigation.  Those grand jurors who cannot judge the matter fairly should be excused.  The court is authorized to exclude a prospective grand juror on the basis of bias or conflict of interest under 28 U.S.C. § 1866(c)(2), (5), which provide, in pertinent part, that:

> any person summoned for grand jury service may be . . . (2) excluded by the Court on the ground that such person may be unable to render impartial jury service or that his service as a juror would be likely  to disrupt the proceedings, or . . . (5) excluded upon determination by the Court that his service as a juror would be likely to threaten the secrecy of the proceedings, or otherwise adversely affect the integrity of the jury deliberations. . .

Even prior to the enactment of 28 U.S.C. § 1866, several courts upheld the right of the empaneling judge to question prospective jurors and to exclude them on conflict of interest grounds.[33]

The presence of an ineligible grand juror will not normally invalidate an indictment.  A valid indictment must have the votes of at least 12 qualified grand jurors.  Therefore, the number of ineligible grand jurors must be sufficient to reduce the number of qualified votes to fewer than 12 to invalidate an indictment.[34]

---

[33]See, e.g., United States v. Hoffa, 349 F.2d 20, 32-33 (6th Cir. 1965), aff'd on other grounds, 385 U.S. 293 (1966).

[34]See United States v. Johnston, 685 F.2d at 938; United States v. Okiyama, 521 F.2d at 604 n.3.

2)      Objections to the grand jury array.  The grand jury array may be objected to if it is not representative of the community.  The JSSA requires that grand jurors be randomly selected from a fair cross-section of the community.  Jury panels must be selected from a source reasonably representative of the community; however, this does not require that the grand jury be a "statistical mirror" of the community, reflecting the proportionate strength of every identifiable group within that population.[35]  Generally, the JSSA's requirements are satisfied unless the grand jury's failure to reflect the composition of the community is a result of non-random selection, actual discrimination in the selection process, or failure to select from a fair cross-section of the community.[36]  The mere opportunity for non-random jury selection or the fact that the panel ultimately selected is somehow unrepresentative of the community is not a violation.

The Supreme Court, in Duren v. Missouri, 439 U.S. 357 (1979), defined the requirements for a prima facie violation of the fair cross-section requirements of the JSSA.  First, the defendant must prove that the relevant community contains a distinct group.  Second, the defendant must prove that the venire from which the jury was chosen did not contain a fair representation of the distinct group.  Finally, the defendant must prove that the under-representation of the distinct group was due to systematic exclusion of the group in the jury selection process.[37]

---

[35]See United States v. D'Alora, 585 F.2d 16 (1st Cir. 1978); United States v. Fernandez, 480 F.2d 726 (2d Cir. 1973); United States v. DiTommaso, 405 F.2d 385, 389 (4th Cir. 1968), cert. denied, 394 U.S. 934 (1969); Simmons v. United States, 406 F.2d 456, 461 (5th Cir.), cert. denied, 395 U.S. 982 (1969); United States v. Miller, 771 F.2d at 1228; United States v. Test, 550 F.2d 577 (10th Cir. 1976).

[36]See generally United States v. Savides, 787 F.2d at 754; United States v. Branscome, 682 F.2d 484, 485 (4th Cir. 1982) (per curium); United States v. Percival, 756 F.2d 600, 615 (7th Cir. 1985).

[37]See also United States v. Hafen, 726 F.2d 21 (1st Cir.), cert. denied, 466 U.S. 962 (1984); Government of the Virgin Islands v. Navarro, 513 F.2d 11, 19 (3d Cir.), cert. denied, 422 U.S. 1045 (1975); United States v. Maskeny, 609 F.2d at 192; United States v. Hoffa, 349 F.2d at 30;

To rebut a defendant's prima facie case, the Government must show that the systematic exclusion was designed to advance a significant state interest that is compatible with the fair cross-section's requirements.[38]

Occasionally, a defendant may seek to have an indictment dismissed because the grand jury as a whole was biased; for example, where the grand jury has already returned indictments in the same industry.  Such challenges have been consistently rejected by the courts.[39]

c.    Burden of proof

Grand jury proceedings, including the grand jury selection process, are subject to a strong presumption of regularity and the burden of proving an irregularity is on the person alleging it.[40]  In general, only substantial failures to comply with the JSSA are a violation; mere technical violations are insufficient to support a challenge to grand jury action.[41]

---

United States v. Miller, 771 F.2d supra.

[38]439 U.S. at 367-68; see also Ross v. Kemp, 785 F.2d 1467, 1479 (11th Cir. 1986).

[39]See Estes v. United States, 335 F.2d 609 (5th Cir. 1964), cert. denied, 379 U.S. 964 (1965).

[40]See Government of the Virgin Islands v. Navarro, 513 F.2d at 19; Mobley v. United States, 379 F.2d at 771; United States v. Battista, 646 F.2d 237 (6th Cir.), cert. denied, 454 U.S. 1046 (1981); United States v. Turcotte, 558 F.2d 893 (8th Cir. 1977); United States v. Potter, 552 F.2d 901 (9th Cir. 1977).

[41]28 U.S.C. § 1876(a); see footnote 25, supra.

d.    Relief

If a defendant successfully attacks the composition of the grand jury prior to conviction, the relief is dismissal of the indictment.  However, a defendant's conviction at trial may render harmless any error in the grand jury proceedings. See United States v. Mechanik, 475 U.S. 66 (1986). [42]  If an indictment is dismissed because of an improperly constituted grand jury, the matter may be resubmitted to a new, properly constituted grand jury, assuming there are no statute of limitations problems.

e.    Waiver

A challenge to the composition of the grand jury is waived if it is not raised in a timely manner.[43]  Generally, a challenge to the array of grand jurors or a single grand juror on the grounds that they were legally unqualified or selected improperly must be made by the moving party prior to the administration of the oath to the jurors.  When defendants are not "held to answer" prior to empaneling, as is the case with virtually all antitrust matters, objections to the grand jury's composition must be filed before trial commences, or within seven days after the defendant discovers

---

[42] See United States v. Mechanik, 475 U.S. 66 (1986).

[43] See Davis v. United States, 411 U.S. 233 (1973); Porcaro v. United States, 784 F.2d at 43; United States v. Young, 822 F.2d 1234 (2d Cir. 1987); United States v. Zirpolo, 450 F.2d at 432; Throgmartin v. United States, 424 F.2d at 631; United States v. Tarnowski, 583 F.2d at 904 n.1; United States v. Hoffa, 367 F.2d 698, 709-10 (7th Cir. 1966), vacated on other grounds, 387 U.S. 231 (1967); Louie v. United States, 426 F.2d at 1402; Talk v. United States, 509 F.2d at 863; United States v. Green, 742 F.2d 609 (11th Cir. 1984).

or, by due diligence, could have discovered grounds for the challenge, whichever is earlier.[44]  In some jurisdictions, a waiver may be overcome by a showing of actual prejudice.

    4.   <u>Voir Dire</u>

If the staff believes that it may want to exclude prospective jurors who may have potential conflicts of interest or particular biases in regard to the matter to be investigated, they may wish to question the prospective jurors to ascertain if any conflicts exist.  Such questioning should be discussed with the court prior to the empaneling, to work out the appropriate procedure and to remind the judge of his authority under 28 U.S.C. § 1866(c)(2), (5), to exclude prospective jurors.

In some districts, the staff can discover potential conflicts of interest by examining the summary of the responses to the "juror qualifications forms."  However, in other jurisdictions, where the summaries are unavailable or do not contain the desired information, the only practical way to discover a potential conflict of interest is for the judge to conduct a <u>voir dire</u>.

The courts have generally upheld the right of the empaneling judge to question prospective jurors and to exclude them on conflict of interest grounds.[45]  The questioning of grand jurors prior to or at the time of empaneling has generally followed one of the following procedures, depending on the court's preference:

---

[44]28 U.S.C. § 1867(a), (c); <u>see</u> <u>Davis v. United States</u>, 411 U.S. 233 (1973); <u>United States v. Greene</u>, 489 F.2d 1145 (D.C. Cir. 1973), <u>cert. denied</u>, 419 U.S. 977 (1974); <u>Porcaro v. United States</u>, 748 F.2d at 43; <u>United States v. Studley</u>, 783 F.2d 934 (9th Cir. 1986).

[45]<u>See</u> <u>United States v. Hoffa</u>, 349 F.2d 20, 32-33 (6th Cir. 1965), <u>aff'd on other grounds</u>, 385 U.S. 293 (1966); <u>United States v. Gibson</u>, 480 F. Supp. 339 (S.D. Ohio 1979).

(l)  The judge has a full grand jury drawn and sworn, but does not dismiss the remaining panel.  The selected jurors are sworn so that when the matter under investigation is explained to them (out of the hearing of the rest of the panel), they are under the secrecy oath.  After the swearing-in, the staff explains the nature of the investigation and asks the jurors who believe that they may have a conflict of interest to so advise the judge.  The jurors are assembled in open court where the court asks those who felt they had a conflict of interest to step forward and explain.  If the court agrees, they are excused and replacements are called from the remaining panel and the process is repeated.

(2)  The judge, in open court, questions certain prospective jurors selected by the clerk as to each one's employment and that of his closest relatives.  The questioning is based on the juror's answers to the "juror qualification form."  Depending on the answers, the judge allows the juror to become a member of the grand jury or orders him to step aside.

Some jurisdictions handle the matter more informally.  For example, in some jurisdictions, the judge has, (a) in open court but at side-bar and out of the hearing of the remainder of the prospective jurors, or (b) in his chambers, questioned the prospective juror and, depending upon the answers, excused or allowed the juror to serve.

The Division has no preference on legal grounds between the procedures described above.  Method (1) conforms to Rule 6(g) and Method (2) conforms to 28 U.S.C. § 1866.  The second method, however, requires much more time, since each prospective juror must be examined individually.  The informal procedures have the advantage of simplicity but may jeopardize the secrecy of the proceedings since the prospective juror is not under oath.

If the investigation is to be conducted by a grand jury already empaneled, potential conflicts of interest should also be ascertained and acted upon.

5.    Alternate grand jurors

Prior to the empaneling of a new grand jury, the staff should consider requesting the court to empanel four alternate grand jurors.  Over an 18-month term, there is an inevitable attrition of grand jurors and the availability of alternates (who need only be called up by the clerk) to replace those  permanently excused, will save the laborious process of requesting and having the court, at a later date, empanel additional grand jurors (under Fed. R. Crim. P. 6(g)).  The practice of empaneling alternate grand jurors is specifically authorized by Fed. R. Crim. P. 6(a)(2).

Alternate grand jurors are empaneled and sworn with the regular grand jurors.  The alternates are advised that, as alternates, the clerk will call them if needed.  They are then excused <u>before</u> the grand jury begins to transact business.  Until they are called upon to replace excused grand jurors, they do not participate in any of the grand jury sessions.  If an alternate grand juror ultimately replaces an original grand juror, the alternate should review all pre-existing grand jury transcripts.

6.    The judge's charge

After the members of the grand jury have been selected, the judge will ordinarily administer the oath to the jury as a whole, appoint the foreperson and deputy foreperson, administer the oath to them, and, thereafter, charge or instruct the grand jury.  This is done in open court.

The charge is usually in general terms and concerns itself largely with the mechanics of grand jury service. For example, the judge will undoubtedly include a reference to the burden of proof, stating that the grand jury need not find a crime has been committed beyond a reasonable doubt but merely that there is probable cause to believe a violation of the law has occurred.  He will ordinarily give instructions that, after concluding that a violation may exist, it is the duty of the grand jury to indict, without fear or bias, and  despite any individual belief that the statute involved should not be the law.  He will point out that the foreperson will preside over the jurors and administer oaths to witnesses, and that the United States Attorney or other Department of Justice attorneys will be present to assist the jurors in the conduct of their investigation, in bringing evidence before them, and in advising them as to the law.  He will generally advise the jurors as to the necessity of a quorum being present at all times and the number of jurors necessary to return an indictment.  He will probably discuss possible conflicts of interest if not previously covered.  He may comment on the rule of secrecy.  He ordinarily will not discuss matters of substantive law.

The staff should be thoroughly conversant with the court's instructions.  Frequently, it will be advisable to refer to the instructions during the grand jury proceedings.  For example, if grand jurors express views opposing antitrust enforcement, one excellent solution is a reading of the court's instruction as to the duty to indict, notwithstanding personal opinions.  If an existing grand jury is used and conflicts of interest were not resolved prior to empaneling, such conflicts may be discovered and resolved with less abrasiveness by utilizing the court's instructions.

In most jurisdictions, the jurors will be given a copy of The Handbook For Federal Grand Jurors, a pamphlet prepared by the Committee on the Operation of the Jury System in compliance with the directions of the Judicial Conference of the United States.  This pamphlet sets forth general principles which should be followed by the jurors during their proceedings.  To a large extent, it covers the same matters that are normally covered in the judge's charge.

After the judge has charged the grand jury, the jury will normally retire to the room in which it will sit and begin its investigation.

### D.   Composition and Structure of the Grand Jury

#### 1.   General composition

A regular grand jury consists of at least 16 but not more than 23 members.  It may be empaneled initially for up to 18 months.  This period may be extended by the court for an additional six months.  The time period a grand jury sits is computed from the date of empanelment.  Each grand jury has a foreperson, a deputy foreperson and often a secretary.

#### 2.   Duties of the grand jury foreperson

Fed. R. Crim. P. 6(c) provides:

FOREPERSON AND DEPUTY FOREPERSON.  The court shall appoint one of the jurors to be foreperson and another to be deputy foreperson.  The foreperson shall have power to administer oaths and affirmations and shall sign all indictments.  The foreperson or another juror designated by the foreperson shall keep record of the number of jurors concurring in the finding of every indictment and shall file the record with the clerk of the court, but the record shall not be made public except on order of the court. During the absence of the foreperson, the deputy foreperson shall act as foreperson.

The court-appointed foreperson is the court's administrator of the grand jury sessions, supervising the recording activities of its secretary (if a secretary is appointed and performs such activities), assuring that there is a lawful number of jurors present at each session, and acting as liaison on behalf of the grand jurors with the supervising judge when problems or questions arise requiring consultation with the court.  One of the foreperson's most important functions is administering the oath to witnesses.  The foreperson is also the spokesman for the grand jury, presenting indictments to the court in open session and causing a secret record to be kept of the number of jurors concurring in the findings of every indictment.

Following the staff examination of a witness, grand jurors should be allowed to question the witness.  The grand jury foreperson may also supervise this questioning (recognizing the questions of the grand jurors in an orderly fashion), although this is frequently done by the staff.  Rapport with the jury is increased if such supervision is left to the foreperson.

If the foreperson is absent, the deputy foreperson, who is also appointed by the court, assumes all of the duties of the foreperson.  If both are absent, the court must appoint another foreperson for such time as is necessary.  It is essential to have someone authorized to administer oaths to witnesses.

Although not required by statute or case law, it is a wise precaution to request the foreperson, or in his absence, the deputy foreperson, at the beginning of each session and after each rest period, to examine the persons in the room and state on the record, in substance, that only authorized jurors, the Government attorneys (providing names) and the reporter (providing  name) are present in the grand jury room.  If the number of jurors present is not recorded by the secretary, the foreperson should state the number for the record.

### 3.   Duties of the grand jury secretary

Although there is no specific legislation that creates the position, it is customary in many districts for a secretary of the grand jury to be appointed.  Fed. R. Crim. P. 6(c) authorizes the foreperson to designate a juror to perform specific secretarial duties on his behalf.  Normally, the jurors select a member to act as secretary to keep a record of the jurors' attendance, the matters presented, the witnesses called, and the number of votes cast on each indictment.[46]  This procedure is usually followed with the concurrence of the foreperson.  The staff should be prepared to work out mechanical details with the grand jury at the first session.

Usually, the grand jury secretary receives a roster of the grand jurors from the clerk.  The secretary takes attendance twice a day (at the beginning of the morning session and after lunch).  A true count of the members present is generally taken by the secretary at each break and the noon recess.  The secretary's attendance records are given to the clerk of the court to verify the clerk's records.

The secretary will generally keep docket sheets on which are recorded the type of investigation, the court's docket number (if any), the matters being presented, the names of all witnesses appearing before the jury, together with remarks and other data.  The secretary will need the staff's help in maintaining the docket sheet.  Prior to the appearance of each witness, the staff should supply the secretary with the correctly spelled name of the witness for recording on the docket sheet.[47]  The United States Attorney's office will be familiar with the practices in the district and the duties of the

---

[46]8 Moore's Federal Practice, ¶ 6.02[2] at 6-11 (2d ed. 1970).

[47]In antitrust investigations, the docket sheet often shows an entry such as United States v. Antitrust Matter.  If an indictment is returned, "Antitrust Matter" is stricken, and the names of the defendants are listed where "Antitrust Matter" previously appeared.

secretary necessary to conform to these practices.  These duties must be explained to the secretary by either the staff or the United States Attorney's office.

The practice in many districts requires the secretary (or the staff) to pick up the grand jury books (the docket sheets, secretary's notes, etc.) each morning at the United States Attorney's office, return them at noon, pick them up again after lunch, and return them at adjournment.  The contents of the grand jury's books are highly confidential and they are usually secured in the United States Attorney's or the clerk's safe when not in use by the jury.  The staff should ascertain what the practice is in each particular district.

In some jurisdictions, a secretary is selected but performs no duties; in other jurisdictions, a secretary is not appointed.  In these jurisdictions, a deputy clerk (or in some cases, the foreperson or the Government attorney) checks the attendance of the jurors prior to the morning session and sometimes prior to the afternoon session.  No further check is made of juror attendance.  However, it is recommended that after every break, the foreperson make a statement for the record of how many jurors are present.  Insofar as the attendance of witnesses is concerned, the only records will be the Certificate of Attendance and Payment and the grand jury transcripts.

4.    Quorum and effect of lack of quorum

Fed. R. Crim. P. 6(a) provides, in part, that the grand jury shall consist of not less than 16 and no more than 23 members.  The Handbook for Federal Grand Jurors states (page 10):

Sixteen of the 23 members of the grand jury constitute a quorum for the transaction of business.  If fewer than this number are present, even for a moment, the proceedings of the grand jury must stop.  This shows

how important it is that each grand juror conscientiously attend the meetings.  If a grand juror believes that an emergency prevents his attendance at the meeting, he must promptly advise the grand jury foreperson.  If his absence will prevent the grand jury from acting, he should attend the meeting.

In sum, a grand jury must have at least 16 members (a bare quorum) present.  In the absence of a quorum, no business may be transacted.  At least 12 jurors must concur to return an indictment.[48]

    5.    <u>Absence of grand jurors</u>

        a.    Excusing a grand juror

For a variety of reasons, such as illness, vacation or pressing personal or business problems,[49] a grand juror may be absent from some sessions.  In many districts, the grand juror must notify the clerk or the United States Attorney to be excused.  In other districts, the Government attorneys or the foreperson may excuse a juror on a temporary basis.  In still other districts, the request is made to the foreperson who, in turn, communicates with the court.

---

[48]Fed. R. Crim. P. 6(f).

[49]In one instance, the court confronted an employer who threatened to fire an employee because of her grand jury work.  As a result, the employer withdrew from that position.  In another instance, the court advised a juror to inform her employer, who objected to her service, that the court viewed such objections with disfavor.  She continued to serve on the jury with no further objections from her employer.

Grand jurors expecting to be absent should be encouraged to give as much advance warning as possible so that any quorum problems can be anticipated.  The staff, in close contact with the grand jurors, can expect to encounter many problems, excuses, complaints, etc., about the difficulty of attending certain sessions.  Grand jurors, with all due tact, should be discouraged from being absent except in extenuating circumstances.  The staff should request that the clerk keep it advised of any excused absences.

      b.    Effect of absence

Problems arise when, in a lengthy antitrust investigation, jurors are absent from some grand jury sessions.  Defense counsel, seizing the issue of the absenteeism, often claim prejudice against their clients if they suspect that any absentee jurors concurred in finding an indictment.  Thus, it has been contended that the absentee jurors failed to hear sufficient evidence to qualify to vote.  In United States ex rel. McCann v. Thompson, 144 F.2d 604, 607 (2d Cir. 1944), Judge Learned Hand rejected just such a contention, and pointed out that "[s]ince all of the evidence addressed before a grand jury . . . is aimed at proving guilt, the absence of some jurors during some part of the hearings will ordinarily merely weaken the prosecution's case."  The court further stated, "If what the absentees actually hear is enough to satisfy them, there would seem to be no reason why they should not vote."[50]

While the absence of a juror or jurors from a few sessions should not invalidate an otherwise valid indictment, it is wise to take precautions to ensure the validity of the indictment.  Unless there are strong reasons to the contrary, absent grand jurors should be asked to read the transcripts, with accompanying exhibits, of those sessions that

---

[50]See also United States v. Leverage Funding Sys., Inc., 637 F.2d 645 (9th Cir. 1980), cert. denied, 452 U.S. 961 (1981).

were missed.  In addition, all transcripts and exhibits should be available to the grand jurors when they finally vote on the proposed indictment.

6.    Removal of a grand juror:  authority to supplement

Fed. R. Crim. P. 6(g) states, in part:

At any time for cause shown the court may excuse a juror either temporarily or permanently, and in the latter event the court may impanel another person in place of the juror excused.

If it is discovered that a grand juror has a serious conflict of interest concerning the matter under investigation, the staff and/or the United States Attorney can move to excuse that grand juror for cause.

In addition, grand jurors may die, become ill, move out of the district, or be excused by the court from further service on a hardship basis.  It is a good practice to supplement the grand jury by requesting the court to empanel additional grand jurors when the number of grand jurors gets below twenty.[51]  At this point, legitimate absences could threaten a quorum.  The procedure for empaneling such jurors is the same as previously described.

---

[51]This presupposes that alternate grand jurors were not originally empaneled.  If they were empaneled, the clerk, with the approval of the supervising judge, should be requested to call the required number of alternates as may be necessary to keep the jury at full strength.

E.    Recordation

Rule 6(e)(l) provides that:

All proceedings, except when the grand jury is deliberating or voting, shall be recorded stenographically or by an electronic recording device . . . .  The recording or reporter's notes or any transcript prepared therefrom shall remain in the custody or control of the attorney for the government unless otherwise ordered by the court in a particular case.

Prior to the adoption of the rule, colloquy between Government attorneys and the grand jury was not routinely recorded.  The rule now requires that all statements made by Government attorneys, as well as the witnesses and grand jurors, before the grand jury be recorded.  Attorneys should never go off the record, even to discuss non-investigation related matters, such as lunch schedules.  The practice has been, however, to order a complete transcript only of actual witness testimony and opening and closing statements by Division attorneys.  Care should be taken, however, to record all proceedings even if transcripts are ordered only for the above-listed matters.  The untranscribed notes generally remain in the custody of the court reporter, but care should be taken that all notes are preserved and available on request, i.e., that they are in the "control" of the Government attorney.

The staff should arrange for a reporter to be present in advance of the grand jury session.  Generally, the United States Attorney's office or the Division field office will have a list of accredited reporters.  Forms should  be filled out in advance for payment of the reporter for attendance and transcripts.  This will require the identity and address of the reporter and his federal identification number.

The reporter should be sworn before the first session begins and, in some jurisdictions, before each subsequent session begins.  In subsequent sessions, any new reporter who has not been sworn before that grand jury should be sworn.  Oaths for reporters are generally available from the grand jury clerk.

F.    Limitations on Grand Jury Power to Investigate

1.    What may a federal grand jury investigate

A federal grand jury may investigate any federal criminal offense committed within the district, i.e., within the jurisdiction of the court.[52]  A grand jury that calls a witness without any purpose of obtaining evidence from him of any offense committed, in whole or in part, in the district in which the grand jury is sitting exceeds its powers and any indictment based on that testimony may be dismissed.[53]  Nevertheless, since "the eventual scope and direction of [the grand jury's] inquiry is often only hazily perceived and tentatively defined", it must be allowed "to pursue any leads which may be uncovered."[54]  For these reasons, the grand jury's jurisdiction is not limited to the probable result of its

---

[52]Hubner v. Tucker, 245 F.2d 35, 39 n.6 (9th Cir. 1957).

[53]Brown v. United States, 245 F.2d 549, 554 (8th Cir. 1957).

[54]United States v. Doulin, 538 F.2d 466, 470 (2d Cir.), cert. denied, 429 U.S. 895 (1976); see also United States v. Paxson, 861 F.2d 730, 733 (D.C. Cir. 1988).

inquiry.[55]  A witness cannot challenge the right of a grand jury in one district to question him concerning events in another district.[56]

A grand jury may investigate a matter with no defendant or criminal charge specifically in view.[57]  The powers of investigation of the grand jury and its powers to obtain information are "not to be limited narrowly by questions of propriety or forecasts of the probable result of the investigation, or by doubts whether any particular individual will be found properly subject to an accusation of crime."  This, the Supreme Court points out, is normally "developed at the conclusion of the grand jury's labors, not at the beginning."[58]  However, it is an abuse of the grand jury process to conduct a grand jury investigation with the sole intent of eliciting evidence for a civil case.[59]  At such time as the Government decides to proceed only civilly, the grand jury investigation should be terminated.  It is also improper to utilize a grand jury for the sole or dominating purpose of  preparing an already pending indictment for trial.[60]  However, a prosecutor may use evidence at trial that was incidentally gained from a grand jury primarily investigating other crimes.[61]

---

[55]United States v. Paxson, 861 F.2d at 733.

[56]United States v. Girgenti, 197 F.2d 218, 219 (3d Cir. 1952).

[57] United States v. Smyth, 104 F. Supp. 283, 287 n.1 (N.D. Cal. 1952).

[58]Blair v. United States, 250 U.S. 273, 282 (1919).

[59]United States v. Procter & Gamble Co., 356 U.S. 677 (1958).

[60]United States v. Dardi, 330 F.2d 316, 336 (2d Cir.), cert. denied, 379 U.S. 845 (1964).

[61]See In re Grand Jury Proceedings, 814 F.2d 61 (1st Cir. 1987); In re Grand Jury Proceedings, 632 F.2d 1033 (3d Cir. 1980).

A grand jury may investigate matters previously investigated by another grand jury.[62]  This is true even if the first grand jury took adverse action.  As stated in United States v. Steel, 238 F. Supp. 580, 583 (S.D.N.Y. 1965):

> In any event, and assuming the first and second grand juries were in complete disagreement, this would be no ground for dismissal since adverse action by a grand jury does not bar or limit action, including contrary action, by a subsequent grand jury. . . .

A grand jury may indict on hearsay and other evidence that would be inadmissible at trial, or, for that matter, even on the knowledge of the grand jurors themselves.[63]  The staff should take care, however, to elicit as much admissible evidence as possible.

Historically, the grand jury could present or indict.  Presentment is the process whereby a grand jury initiates an independent investigation and asks that a charge be drawn to cover the facts if they constitute a crime.  Since the grand jury may present, it may investigate independently of direction from the United States Attorney.[64]  Presentment, however, is now obsolete in federal courts.[65]  Further, an indictment is invalid if not signed by the Government attorney.[66]

---

[62]United States v. Thompson, 251 U.S. 407 (1920); United States v. Steel, 238 F. Supp. 580, 583 (S.D.N.Y. 1965); In re Borden Co., 75 F. Supp. 857, 863-64 (N.D. Ill. 1948).

[63]Pittsburgh Plate Glass Co. v. United States, 360 U.S. 395 (1959).

[64]United States v. Smyth, 104 F. Supp. at 295.

[65]In re United Elec., Radio and Mach. Workers, 111 F. Supp. 858, 863 n.13 (S.D.N.Y. 1953).

[66]Fed. R. Crim. P. 7(c).

A grand jury may investigate violations of law, although the evidence presented to it is without authority of the Attorney General.[67]  However, Antitrust Division attorneys must be authorized by the Assistant Attorney General to appear before the grand jury.[68]

### 2.   Limitations on the power to investigate by district court

The court may issue subpoenas for testimony and documents and may exercise its contempt powers to guarantee compliance with such subpoenas.  However, the court cannot unduly interfere with the essential activities of the grand jury nor encroach on the grand jury's or the prosecutor's prerogatives.  In United States v. United States District Court, 238 F.2d 713 (4th Cir.), cert. denied, 352 U.S. 981 (1957), the district court refused to permit the Government attorneys to examine subpoenaed documents or transcripts outside the presence of the grand jury or to summarize and digest the evidence for the grand jury, quashed a subpoena duces tecum on the grounds that the grand jury could not demonstrate "materiality", ordered the grand jury to either indict or return a no bill (the grand jury desired further investigation), held that the Government attorneys could help prepare an indictment, but only in the presence of the grand jury, and adjourned the grand jury and refused the Government's request to call it back into session.  On a writ of mandamus, the Fourth Circuit held, inter alia, that the lower court should reconvene the grand jury and permit it to continue the investigation, vacate orders quashing the subpoenas and limiting the right of

---

[67]Sullivan v. United States, 348 U.S. 170, 173 (1954).

[68]See § B.2., supra.

Government counsel to receive and use evidence before the grand jury, and permit Government counsel to summarize and digest the evidence for the benefit of the grand jury.

Although the grand jury is a "sovereign body," the courts exercise supervisory jurisdiction and may prevent gross abuses of power.  Thus, should the court object to acts of the grand jury, it may discharge the grand jury under the provisions of Fed. R. Crim. P. 6(g).  Few cases exist showing the circumstances which would compel a court to discharge a grand jury.  As stated in In re Investigation of World Arrangements, 107 F. Supp. 628, 629 (D.D.C. 1952):

> This court specifically limits itself to dismissal of a grand jury only where there is good cause.  The court feels that grand juries should be consistently advised of their power to act independently in investigations and their duty to diligently inquire into crimes triable in the District of Columbia.  Nor should the court, without cause, intervene to discharge a grand jury to prevent an indictment.

An antitrust grand jury, once empaneled, has all the powers of any other grand jury and a district court is without authority to limit those powers by instructions to the grand jurors on their being empaneled or otherwise.[69]

---

[69]See In re Borden Co., 75 F. Supp. 857, 859 (N.D. Ill. 1948).

3.  Power of grand jury limited by prosecutor

Fed. R. Crim. P. 7(c) provides, in part:

The indictment or the information shall be a plain, concise and definite written statement of the
essential facts constituting the offense charged. It shall be signed by the attorney for the government. . . .
[Emphasis supplied.]

The grand jury cannot indict without the signature of the prosecutor.  As stated in United States v. Cox, 342
F.2d 167, 171 (5th Cir.), cert. denied, 381 U.S. 935 (1965):

The role of the grand jury is restricted to a finding as to whether or not there is probable cause to believe that
an offense has been committed.  The discretionary power of the attorney for the United States in determining
whether a prosecution shall be commenced or maintained may well depend upon matters of policy wholly
apart from any question of probable cause. . . .  It follows, as an incident of the constitutional separation of
powers, that the courts are not to interfere with the free exercise of the discretionary powers of the attorneys
of the United States in their control over criminal prosecutions.  The provision of Rule 7, requiring the
signing of the indictment by the attorney for the government, is a recognition of the power of government
counsel to permit or not to permit the bringing of an indictment.  If the attorney refuses to sign, as he has the
discretionary power of doing, we conclude that there is no valid indictment. . . .

Although it is common practice for the United States Attorney to sign the indictment, an indictment is equally valid if signed by a Division attorney.  A grand jury cannot make accusations of individuals short of indictment; it cannot issue reports to the public or other branches of government.[70]  This, of course, is not applicable to special grand juries empaneled under the provision of 18 U.S.C. §§ 331, et seq.

4.   What objections can be raised to the grand jury proceeding and by whom

In general, objections can be raised to the activities of a grand jury insofar as the activities exceed or contravene the limitations of the grand jury's jurisdiction as set forth above.  However, witnesses appearing before a grand jury generally have no right to raise such objections.[71]  Witnesses have the same testimonial privileges they would have in any other criminal proceeding.  However, the grand jury's power to investigate is not limited to admissible testimony.  As stated in In re Radio Corp. of America, 13 F.R.D. 167, 170-71 (S.D.N.Y. 1952):

The grand jury "is a grand inquest, a body with powers of investigation and inquisition, the scope of whose inquiries is not to be limited narrowly by questions of propriety or forecasts of the probable result of the investigation, or by doubts whether any particular individual will be found properly subject to an accusation of crime. . . .  [W]itnesses are not entitled to take exception to the jurisdiction of the grand jury or

---

[70]See In re United Elec., Radio and Mach. Workers of Am., 111 F. Supp. 858, 864, 869 (S.D.N.Y. 1953).

[71]Witnesses may object to allegedly defective subpoenas on grounds of unreasonableness, burdensomeness, etc.  (See Ch. III § F.) and to improper electronic surveillance (See Ch. IV § D.4.).

the court over the particular subject-matter that is under investigation. . . ."  [Citing <u>Blair v. United States</u>, 250 U.S. 273 (1919).][72]

Objections to the scope or propriety of the grand jury proceedings are available only to persons indicted by such grand jury.

G.    <u>Who May be Present -- Rule 6(d)</u>

1.    <u>Who may be present</u>

Fed. R. Crim. P. 6(d) provides:

Who May Be Present.  Attorneys for the government, the witness under examination, interpreters when needed and, for the purpose of taking the evidence, a stenographer or operator of a recording device may be present while the grand jury is in session, but no person other than the jurors may be present while the grand jury is deliberating or voting.

---

[72]<u>See also</u> <u>United States v. Girgenti</u>, 197 F.2d 218, 219 (3d Cir. 1952) (witness not entitled to challenge the authority of the court or the grand jury, provided the grand jury has <u>de facto</u> existence and organization).

This rule allows attorneys for the Government, the witness, interpreters, and stenographers or operators of recording devices to be present during the grand jury session.  Only the grand jurors themselves may be present during deliberation or voting.

Not every attorney working for the federal establishment is a Government attorney within the meaning of Fed. R. Crim. P. 6(d).  Generally, only Department of Justice attorneys and attorneys working for the Department under a special appointment qualify.[73]

The witness is not entitled to have counsel present in the grand jury room.[74]  However, the Division's general practice is to advise the witness that he may leave the grand jury room to consult with counsel.[75]

Some districts permit the use of grand jury "agents"; however, this practice is fraught with potential problems and is discouraged in the Antitrust Division.


2.   The effect of presence of unauthorized persons in grand jury room


In the past, the presence of unauthorized persons in the grand jury room was often a sufficient ground for dismissal of an indictment.[76]  However, the Supreme Court in Bank of Nova Scotia v. United States, 487 U.S. 250

---

[73]See Fed. R. Crim. P. 54(c); Ch. II § C.1.; In re Grand Jury Proceedings, 309 F.2d 440 (3d Cir. 1962) (FTC attorney not within Rule).

[74]United States v. Corallo, 413 F.2d 1306 (2d Cir.), cert. denied, 396 U.S. 958 (1969); United States v. Fitch, 472 F.2d 548 (9th Cir.), cert. denied, 412 U.S. 954 (1973).

[75]Such consultations should not be allowed to unreasonably disrupt the proceedings.  See Ch. IV § F.7.

[76]See United States v. Heinze, 177 F. 770 (2d Cir. 1910).

(1988), held that errors in grand jury proceedings should not be grounds for dismissing an indictment unless such errors prejudiced the defendants.  As the Court stated at p. 256:

> [D]ismissal of the indictment is appropriate only 'if it is established that the violation substantially influenced the grand jury's decision to indict' or if there is 'grave doubt' that the decision to indict was free from the substantial influence of such violations (citations omitted).

The Supreme Court in <u>Bank of Nova Scotia</u>, among other things, held that a violation of Rule 6(d) by having two agents read prior testimony in tandem was not grounds for dismissal in that case.

An indictment will not be set aside for mere technical violations of the rule.  Thus, when an attorney unconnected with the proceedings accidentally entered the grand jury room and remained there for several seconds and where testimony was immediately stopped before the grand jury, the indictment was not quashed.[77]  Technical intrusions of unauthorized persons should be noted on the record, together with the fact that no proceedings were conducted while those persons were present, if this is indeed the case.

A violation of Rule 6(d) is remedied by a guilty verdict from a petit jury.[78]

---

[77]<u>United States v. Rath</u>, 406 F.2d 757 (6th Cir.), <u>cert. denied</u>, 394 U.S. 920 (1969); <u>see also</u> <u>United States v. Kahan & Lessin Co.</u>, 695 F.2d 1122, 1124 (9th Cir. 1982).

[78]<u>United States v. Mechanik</u>, 475 U.S. 66 (1986).

### 3.   Effect of having ineligible or disqualified grand juror present

Fed. R. Crim. P. 6(b)(2) provides:

A motion to dismiss the indictment may be based on objections to the array or on the lack of legal

qualification of an individual juror, if not previously determined upon challenge. . . .  An indictment shall not

be dismissed on the ground that one or more members of the grand jury were not legally qualified if it

appears from the record kept pursuant to subdivision (c) of this rule that 12 or more jurors, after deducting

the number not legally qualified, concurred in finding the indictment.

Despite the clear language of this Rule, defendants often attempt to use the presence of one or more

ineligible grand jurors in the jury room as grounds for a motion to dismiss an indictment.  Such motions are routinely

denied by the courts.[79]  The courts have examined, in camera, the records required to be kept by the grand jury under

Rule 6(c) and denied a 6(b)(2) motion summarily, if the records disclosed that the number of jurors concurring

(discounting the jurors challenged) totaled 12 or more.[80]

---

[79]See United States v. Johnston, 685 F.2d 934 (5th Cir. 1982), cert. denied, 460 U.S. 1053 (1983).

[80]See, e.g., United States v. Anzelmo, 319 F. Supp. 1106, 1113 (E.D. La. 1970); United States v. Richter Concrete Corp., 328 F. Supp. 1061, 1967 (S.D. Ohio 1971).

H.   FBI and Other Assistance

Historically, Antitrust Division lawyers have done most of the Division's investigative work.  From time to time, the FBI was asked to assist staffs.  In the last several years, however, the Division has greatly expanded its use of outside investigators due primarily to the growth in criminal enforcement.  The Division now uses investigative agents more frequently and from a wider variety of agencies.  In the last few years, the Division has worked with agents from the FBI, Department of Agriculture, Department of Defense, Environmental Protection Agency, Department of Housing and Urban Development, Department of Commerce, Farmer's Home Administration, General Services Administration, Department of Interior, U.S. Postal Service, and Department of Transportation.

1.   Benefits of using outside investigative resources

Use of outside agents has varied substantially from office to office.  Use of agents appears to have been most effective where the agents have been made, in effect, a part of the investigative and trial staff.  These agents serve grand jury and trial subpoenas, execute search warrants, interview witnesses, review and analyze documents, prepare charts and exhibits, and testify before the grand jury and at trial.[81]  Their testimony has ranged from expert testimony on technical questions, such as handwriting analysis, to testimony before the grand jury providing background or statistical data, to grand jury testimony recounting statements by cooperating witnesses.

---

[81]Disclosure of grand jury materials to Government agents so that they may assist the Government attorneys in the conduct of criminal investigations is authorized by Rule 6(e)(3)(A)(ii).  See Ch. II § D. and United States v. Lartey, 716 F.2d 955 (2d Cir. 1983).

Use of investigative agents has been most beneficial in local or regional price-fixing or bid-rigging investigations where there are more than a few potential witnesses and/or targets, where the offense is relatively straightforward, and where an agent can easily be incorporated into a staff. Perhaps their greatest benefit is simply the availability of additional investigatory resources. Agents can also bring with them special investigatory expertise. While there have been concerns expressed that agents may not be effective interrogators in antitrust conspiracy cases, in fact, antitrust conspiracies are no more complex than other white collar and/or conspiracy crimes. Also, most agents are likely to be more versed in general interrogation techniques than many Division attorneys. The necessary expertise in antitrust law, Division practices and policies, and the facts of a particular investigation can be communicated in training sessions or discussions at the outset of the investigation.

Other benefits include (1) the knowledge of Office of Inspector General (OIG) agents of the federal programs administered by their agencies; (2) technical assistance, e.g., consensual phone monitors, handwriting analysis, (3) analysis of large amounts of data; (4) conduct of a large number of interviews in a short period of time; (5) prompt and accurate service of subpoenas; and (6) local presence for distant attorneys.

Also, agents have proven particularly effective at presenting background or statistical testimony to grand juries and at trial. This can include summaries of interstate commerce evidence, a general description of an industry or bidding practices in that industry, or analysis of statistical data such as pricing or sales patterns. Use of agents to put such evidence before the grand jury, rather than putting it in piecemeal through a number of industry witnesses, can result in a clearer presentation of the evidence and substantial savings of grand jury and trial time.

2.    Procedure for obtaining outside investigative help

a.    FBI assistance

Procedures for obtaining assistance vary from agency to agency.  FBI assistance is still the most widely available and may be obtained in any  criminal investigation.  Authorization for FBI assistance is obtained by preparing a memo from the Assistant Attorney General to the Director of the FBI, describing the investigation and the nature of the assistance required.[82]  Whenever possible, it is preferable to have a specific case agent or agents assigned to the investigation to carry out all necessary duties rather than obtaining assistance only for one or two specific tasks. Having a case agent or agents assigned allows full use to be made of an agent's skills and also creates a better working relationship by permitting the agent to be fully integrated into the staff.

One specific limitation on the assistance provided by FBI agents is that FBI agents generally have a limited geographic area in which they can carry out investigative activities.  Thus, for an investigation with a wide geographic scope, the logistics of getting agents involved from numerous jurisdictions and keeping them adequately informed of the nature and progress of the investigation may outweigh the benefits to be obtained from their assistance.

Although approval must be obtained from Washington FBI headquarters prior to an agent becoming involved in the investigation, it is often useful to contact the appropriate local office(s) to introduce oneself and advise that a request for assistance is being made.  Then the Washington authorization will not come to the office out of the

---

[82]See ATD Manual III-8 for more detailed information regarding the request for assistance.

blue and a good working relationship can be instituted from the outset.  Such contact can also result in an earlier initiation of assistance.

b.    OIG assistance

Assistance from an Inspector General's office is limited to investigations involving subject matters within the jurisdiction of that agency.  There is one very important exception.  Agents from the U.S. Postal Service have a relatively broad jurisdiction.  They may investigate any violation involving the use of the U.S. mails.  Thus, if mail fraud charges may result from an investigation, assistance may be sought from the postal inspectors.

Assistance from an OIG's office generally may be arranged through contact between the section or office chief and the head of the regional OIG office or the OIG Washington headquarters.  No higher approvals are required. OIG agents generally have more geographic flexibility than FBI agents.  At a minimum, they can travel throughout a several state region and often can travel nationwide.

3.    Operational suggestions

When working with an agent, several considerations should be kept in mind.  While assigned to your investigation, an agent, in effect, serves two masters -- the Antitrust Division and his own supervisors.  Allocation of time to the antitrust investigation can become an issue between the two agencies and create real difficulties for the agent.  Much of this can be avoided by up-front discussions of the scope of our investigation, the length of time it is expected to take, and the commitment of time needed from the agent.  Again,  keep in mind that involving the agent

fully in the investigation as a staff member creates a better working relationship, better agent morale, and more productive use of the agent's time.

It is important at the outset of the investigation to inform the agent of Antitrust Division practices and policies that may affect the investigation.  The agent must understand that all strategic decisions must ultimately be made by Division attorneys, in consultation, where necessary, with their Washington superiors.  Such decisions, including whom to immunize, what representations can be made to witnesses, decisions to prosecute, and plea agreements can and should be discussed with the agent but those decisions must rest with Division attorneys.

One final point to keep in mind in working with agents is that they may not be fully familiar with the requirements of Fed. R. Crim. P. 6(e).  Before an agent has any contact with the grand jury or grand jury materials, you should provide him with a complete briefing on grand jury secrecy requirements.  The agent must understand that any grand jury materials received must be used only to assist in the criminal investigation.  They may not be used for any civil purpose.[83]

I.   CHECKLIST Before Conducting First Grand Jury Session

1.   Approval from Assistant Attorney General.

2.   Issuance and filing of letters of authority.

3.   Conference with U.S. Attorney, Field Office Chief.

4.   Conference with Judge.

---

[83]United States v. Sells Eng'g Inc., 463 U.S. 418 (1983); see Ch. II §§ C. and D., infra.

5.      Empaneling.

     a.     Check for conflict of interests and disqualify prospective jurors as may be appropriate.

6.      Impounding Order.

7.      File Rule 6(e) disclosure form.

8.      Issuance of subpoenas <u>duces</u> <u>tecum</u>.

9.      Scheduling of first session with grand jury clerk.

10.    Issuance of testamentary subpoenas where substantive witnesses are to be called.

11.    Swearing in of court reporter at first session.

12.    Check for quorum at first session.

     a.     Note on the record that there is a quorum and that no unauthorized persons are present.

13.    Introduce attorneys and inform grand jurors of basic antitrust law and nature of investigation.


J.     <u>CHECKLIST Before Conducting Subsequent Sessions</u>


1.      Schedule upcoming session with clerk at least one month in advance - make sure clerk notifies grand jurors;  make room arrangements.

2.      Arrange for and notify court reporter.

3.      Issue testamentary subpoenas and arrange for service.

4.      Request immunity, where appropriate, at least two weeks prior to date of session.

     a.     Prepare immunity applications and orders and arrange for submission to judge when approval and clearance are obtained.

5.    Select documents to be used as grand jury exhibits.

6.    Prepare questions.