PETER ROOT (142348)
DEWEY & LEBOEUF LLP
1950 University Avenue
East Palo Alto, California 94303
Telephone: (650) 845-7000
Facsimile: (650) 845-7333
Email: proot@dl.com

JEFFREY L. KESSLER (*Admitted Pro Hac Vice*)
A. PAUL VICTOR (*Admitted Pro Hac Vice*)
DEWEY & LEBOEUF LLP
1301 Avenue of the Americas
New York, New York 10019
Telephone: (212) 259-8000
Facsimile: (212) 259-7013
Email: jkessler@dl.com

STEVEN A. REISS (*Admitted Pro Hac Vice*)
DAVID L. YOHAI (*Admitted Pro Hac Vice*)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153-0119
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Email: steven.reiss@weil.com

Attorneys for Defendants Panasonic Corporation of North America, MT Picture Display Co., Ltd., and Panasonic Corporation (f/k/a Matsushita Electric Industrial Co.)
**[Additional Moving Defendants and Counsel Listed on Signature Pages]**

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **In Re CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION** | No.:  M-07-5944 SC |
| | MDL NO. 1917 |
| This Document Relates to: | **DEFENDANTS' JOINT REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS DIRECT PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT** |
| DIRECT PURCHASER ACTION. | |
| | Date: October 5, 2009 |
| | Time: 9:00 a.m. |

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................. iii

INTRODUCTION ............................................................................................................ 1

ARGUMENT .................................................................................................................. 2

I.  PLAINTIFFS HAVE NOT PLED A PLAUSIBLE
    CONSPIRACY IN ANY MARKET FOR FINISHED PRODUCTS ................................... 2

II.  THIS COURT LACKS SUBJECT MATTER JURISDICTION
     UNDER THE FTAIA ............................................................................................ 5

     A.  The DP-CAC Fails to Allege a Conspiracy Aimed at
         the United States ........................................................................................ 5

     B.  The DP-CAC Fails to Allege That Defendants' Purportedly
         Anticompetitive Conduct Involved United States Imports ................... 8

     C.  The Court Should Grant Defendants' Motion to Dismiss under
         the FTAIA ................................................................................................. 9

III. PLAINTIFFS LACK STANDING ........................................................................... 10

     A.  Plaintiffs' Claims Are Barred By *Illinois Brick* ................................ 10

         1.  Plaintiffs Admit That They Are Indirect Purchasers of
             CRTs ............................................................................................... 10

         2.  Plaintiffs' Reliance on *Sugar* Is Misplaced ............................ 11

             (a)  Plaintiffs' Purchases Do Not Fall Within the
                  Owned/Controlled Exception to *Illinois Brick* ............ 11

             (b)  Plaintiffs' Claims Must Be Dismissed Where
                  Plaintiffs Purchased Finished Products that
                  Included a CRT Purchased from an Independent
                  Entity ...................................................................................... 14

     B.  Plaintiffs Have Not Established Antitrust Standing
         Under *Associated General Contractors* to Assert Claims
         Based Upon Purchases of Finished Products Containing CRTs .......... 15

         1.  Plaintiffs Have Failed to Establish An Antitrust Injury ........... 16

2.	Plaintiffs Have Not Satisfied the Remoteness Factors of *AGC* ...................................................................................17

IV.	PLAINTIFFS' OPPOSITION UNDERSCORES THAT THEIR COMPLAINT FAILS TO SUFFICIENTLY PLEAD FRAUDULENT CONCEALMENT AND MUST BE DISMISSED AS TIME BARRED .........................19

A.	Despite Plaintiffs' Concession That They Are Required To Plead Fraudulent Concealment With Particularity, Plaintiffs Have Not ...........................................................................19

1.	Plaintiffs' Claim That Their Complaint Alleges Affirmative Acts Is Unavailing, As The DP-CAC Is Devoid Of *Any* Allegations Of Affirmative Concealment By *Any* Defendant .................................................21

2.	Even The Lone Pre-Textual Statement Offered by Plaintiffs Is Not Attributed to Any Defendant ...................22

B.	Despite Their Attempts To Recast Their Allegations, Plaintiffs Have Admitted Facts In Their Complaint That Put Them On Notice Of Their Claims Years Ago.......................23

C.	Plaintiffs Concede They Have Failed To Plead Due Diligence, Barring Them From Tolling The Statute Of Limitations....................24

CONCLUSION............................................................................................25

# TABLE OF AUTHORITIES

Cases                                                                    Page

*Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*,
    190 F.3d 1051 (9th Cir. 1999) ...............................................................16

*Animal Sci. Prods., Inc. v. China Nat'l Metals & Minerals Imp. & Exp. Corp.*,
    596 F. Supp. 2d 842 (D.N.J. 2008) ....................................................6, 8, 9

*Ashcroft v. Iqbal*,
    129 S. Ct. 1937 (2009)...........................................................10, 19, 20

*Associated General Contractors of California, Inc. v. California State Council of Carpenters*,
    459 U.S. 519 (1983)........................................................................ *passim*

*Baggett v. Hewlett-Packard Co.*,
    582 F. Supp. 2d 1261 (C.D. Cal. 2007) ..................................................20

*Barker v. Am. Mobil Power Corp.*,
    64 F.3d 1397 (9th Cir. 1995) ..........................................................20, 21

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)........................................................................ *passim*

*Bhan v. NME Hosps., Inc.*,
    772 F.2d 1467 (9th Cir. 1985) ........................................................16, 17

*Cargill, Inc. v. Monfort of Colo., Inc.*,
    479 U.S. 104 (1986)...............................................................................17

*Commercial Street Express LLC v. Sara Lee Corp.*,
    No. 08 C 1179, 2008 WL 5377815 (N.D. Ill. Dec. 18, 2008) ...................9

*Conmar Corp. v. Mitsui & Co. (U.S.A.), Inc.*,
    858 F.2d 499 (9th Cir. 1988) .............................................19, 21, 22, 24

*Dee-K Enter. Inc. v. Heveafil Sdn. Bhd*,
    299 F.3d 281 (4th Cir. 2002) ...................................................................5

*Del. Valley Surgical Supply Inc. v. Johnson & Johnson*,
    523 F.3d 1116 (9th Cir. 2008) ...............................................................11

*Den Norske Stats Oljeselskap AS v. Heeremac Vof*,
    241 F.3d 420 (5th Cir. 2001) ...................................................................9

*DM Research, Inc. v. Coll. of Am. Pathologists*,
    170 F.3d 53 (1st Cir. 1999)......................................................................4

iii

*E.W. French & Sons, Inc. v. General Portland, Inc.,*
    885 F.2d 1392 (9th Cir. 1989) ...............................................................22

*Emerson Elec. Co. v. Le Carbone Lorraine, S.A.,*
    500 F. Supp. 2d 437 (D.N.J. 2007) ...........................................................9

*F. Hoffman-LaRoche Ltd. v. Empagran S.A.,*
    542 U.S. 155 (2004)...............................................................................7

*Freeman v. San Diego Ass'n of Realtors,*
    322 F.3d 1133 (9th Cir. 2003) ...............................................................17

*Hanover Shoe, Inc. v. United Shoe Machine Corp.,*
    392 U.S. 481 (1968) .............................................................................13

*Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.,*
    424 F.3d 363 (3d Cir. 2005)...................................................................11

*Illinois Brick Co. v. Illinois,*
    431 U.S. 720 (1977)........................................................................ *passim*

*In re Brand Name Prescription Drugs Antitrust Litig.,*
    123 F.3d 599 (7th Cir. 1997) .................................................................12

*In re Citric Acid Litig.,*
    191 F.3d 1090 (9th Cir. 1999) .................................................................6

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.,*
    516 F. Supp. 2d 1072 (N.D. Cal. 2007) ..............................................17, 18

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.,*
    536 F. Supp. 2d 1129 (N.D. Cal. 2008) ...................................................17

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.,*
    546 F.3d 981 (9th Cir. 2008) ...................................................................7

*In re Graphics Processing Units Antitrust Litig.,*
    527 F. Supp. 2d 1011 (N.D. Cal. 2007) .....................................................6

*In re Graphite Electrodes Antitrust Litig.,*
    No. 10-MD-1244, 2007 WL 137684 (E.D. Pa. Jan. 16, 2007) .......................9

*In re Intel Corp. Microprocessor Antitrust Litig.,*
    452 F. Supp. 2d 555 (D. Del. 2006)......................................................5, 7

*In re Intel Corp. Microprocessor Antitrust Litig.,*
    476 F. Supp. 2d 452 (D. Del. 2007) ..........................................................7

iv

*In re Korean Air Lines Co., Ltd. Antitrust Litig.*,
    MDL No. 07-01891 (C.D. Cal. June 25, 2008) ............................................8

*In re Late Fee & Over-Limit Fee Litig.*,
    528 F. Supp. 2d 953 (N.D Cal. 2007) .......................................................4

*In re Linerboard Antitrust Litig.*,
    305 F.3d 145 (3d Cir. 2002) ....................................................................12

*In re Milk Prods. Antitrust Litig.*,
    84 F. Supp. 2d 1016 (D. Minn. 1997) ....................................................20

*In re Monosodium Glutamate Antitrust Litig.*,
    No. 00-MDL-1328, 2005 WL 2810682 (D. Minn. Oct. 26, 2005)
    *aff'd*, 477 F.3d 535 (8th Cir. 2007) .........................................................9

*In re Rubber Chems. Antitrust Litig.*,
    504 F. Supp. 2d 777 (N.D. Cal. 2007) ..................................................5, 8

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
    580 F. Supp. 2d 896 (N.D. Cal. 2008) ..................................................20

*In re Sugar Indus. Antitrust Litig.*,
    579 F.2d 13 (3d Cir. 1978) .............................................................. *passim*

*In Re TFT-LCD Antitrust Litig.*,
    586 F. Supp. 2d 1109 (N.D. Cal. 2008) ................................................17

*Jewish Hosp. Ass'n v. Stewart Mech. Enters., Inc.*,
    628 F.2d 971 (6th Cir. 1980) .................................................................12

*Kansas v. UtiliCorp United, Inc.*,
    497 U.S. 199 (1990) ...............................................................................12

*Korea Kumho Petrochemical v. Flexsys Am. LP*,
    No. C07-01057 MJJ, 2008 WL 686834 (N.D. Cal. March 11, 2008) ..........8

*Kruman v. Christie's Int'l PLC*,
    284 F.3d 384 (2d Cir. 2002) .................................................................8, 9

*Kuntze v. Carrane*,
    No. 91-C-6145, 1993 WL 85732 (N.D. Ill. Mar. 22, 1993) ....................23

*Latino Quimica-Amtex S.A. v. Akzo Nobel Chems. B.V.*,
    No. 03 Civ. 10312 (HBDF), 2005 WL 2207017 (S.D.N.Y. Sept. 8, 2005)..................9

*Lorenzo v. Qualcomm, Inc.*,
    603 F. Supp. 2d 1291 (S.D. Cal. 2009) .................................................18

v

*Lucas v. Citizens Commc'ns Co.*,
    409 F. Supp. 2d 1206 (D. Haw. 2005) ..........................................................4

*Mathias v. Daily News, L.P.*,
    152 F. Supp. 2d 465 (S.D.N.Y. 2001) ..........................................................16

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ......................................................................................4

*Mid-West Paper Prods. Co. v. Cont'l Group, Inc.*,
    596 F.2d 573 (3d Cir. 1979) ........................................................................14

*NicSand, Inc. v. 3M Co.*,
    507 F.3d 442 (6th Cir. 2007) .......................................................................18

*Rick-Mik Enters. Inc. v. Equilon Enters., LLC*,
    532 F.3d 963 (9th Cir. 2008) .........................................................................4

*Royal Printing Co. v. Kimberly-Clark Corp.*,
    621 F.2d 323 (9th Cir. 1980) .......................................................................13

*Rutledge v. Boston Woven Hose & Rubber Co.*,
    576 F.2d 248 (9th Cir. 1978) ..............................................................20, 24, 25

*Sathianathan v. Smith Barney, Inc.*,
    No. C 04-2130 SBA, 2004 WL 3607403 (N.D. Cal. Jun. 6, 2004) ...............3

*Schneider v. Cal. Dep't of Corr.*,
    151 F.3d 1194 (9th Cir. 1998) .......................................................................3

*Sun Microsystems Inc. v. Hynix Semiconductor Inc.*,
    608 F. Supp. 2d 1166 (N.D. Cal. 2009) .......................................................13

*The Oso Group, Ltd. v. Bullock & Assocs., Inc.*,
    No. 09-1906 SC, 2009 WL 2422285 (N.D. Cal. Aug. 6, 2009) ...................10

*Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives and Composites, Inc.*,
    Case No. CV 99-07796 GHK (C.D. Cal. Jan. 13, 2000) ..............................19

*Toscano v. PGA Tour, Inc.*,
    201 F. Supp. 2d 1106 (E.D. Cal. 2002) ........................................................16

*Turicentro, S.A. v. Am. Airlines Inc.*,
    303 F.3d 293 (3d Cir. 2002) ...........................................................................9

*United Phosphorus, Ltd v. Angus Chem. Co.*,
    131 F. Supp. 2d 1003 (N.D. Ill. 2001), *aff'd*, 322 F.3d 942 (7th Cir. 2003) .........7, 8, 9

vi

*United States v. LSL Biotechs.*,
    379 F.3d 672 (9th Cir. 2004) ........................................................5

*Vess v. Ciba-Geigy Corp.*,
    317 F.3d 1097 (9th Cir. 2003) ..................................................20


<u>Statutes and Regulations</u>

Fed. R. Civ. P. § 9(b) ...................................................2, 19, 20, 22

Foreign Trade Antitrust Improvements Act of 1982,
    15 U.S.C. § 6a (2006) ("FTAIA") ..............................................5


<u>Other Authorities</u>

FTAIA House Report, H.R. Rep. No. 97-686 (1982)
    *reprinted in* 1982 U.S.C.C.A.N. 2487 .........................................6

DEFENDANTS' JOINT REPLY BRIEF IN SUPPORT
OF THEIR MOTION TO DISMISS THE DP-CAC

MDL No. 1917

1

## **INTRODUCTION**

2      Plaintiffs' opposition displays a total disregard for both the actual allegations

3   made in the Direct Purchaser Plaintiffs' Consolidated Amended Complaint ("DP-CAC") and

4   relevant law.  Instead, Plaintiffs:  (i) advance a host of illusory arguments based on either

5   complaint allegations that do not exist or mischaracterizations and misstatements of

6   allegations that do exist; and (ii) completely ignore or misapply the applicable legal standards.

7      *First,* in an effort to avoid the devastating impact of their inability to allege an

8   actionable conspiracy claim covering the sale of Cathode Ray Tubes ("CRTs") to class

9   members in the United States, Plaintiffs claim that the DP-CAC alleges a conspiracy in the U.S.

10  market to fix the prices of products incorporating CRTs as a component (*e.g.*, television sets

11  and computer monitors) ("Finished Products").  However, no such conspiracy has been

12  plausibly alleged in the DP-CAC.  The consequences of this failure are calamitous for

13  Plaintiffs as the purported existence of such a claim is the principal basis for their arguments in

14  opposition to dismissing the DP-CAC on both jurisdictional and standing grounds.

15     *Second,* nothing in Plaintiffs' opposition changes the conclusion that this Court

16  lacks subject matter jurisdiction over the foreign CRT price-fixing conspiracy alleged in the

17  DP-CAC.  Despite Plaintiffs' protests to the contrary, there are no facts pled in the DP-CAC

18  which are capable of supporting a claim of a conspiracy directed at the sales of any CRTs or

19  Finished Products sold in the U.S.

20     *Third*, Plaintiffs lack standing under both *Illinois Brick Co. v. Illinois*, 431 U.S.

21  720 (1977), and *Associated General Contractors of California, Inc. v. California State Council*

22  *of Carpenters* ("*AGC*"), 459 U.S. 519 (1983).  Plaintiffs are, at best, *indirect purchasers*

23  because they do not allege that they purchased CRTs directly from any Defendant; thus, their

24  claims are barred under *Illinois Brick*.  Moreover, Plaintiffs have not alleged facts to support a

25  claim of "antitrust injury" or satisfied the "remoteness" factors under *AGC*.

26     *Fourth*, the statute of limitations bars all claims based on sales of CRTs that

27  occurred more than four years before the filing of the first complaint in which each Defendant

28

---

DEFENDANTS' JOINT REPLY BRIEF IN SUPPORT                              MDL No. 1917
OF THEIR MOTION TO DISMISS THE DP-CAC

was first named.  Plaintiffs' conclusory allegations of fraud are wholly insufficient to satisfy the Rule 9(b) pleading requirements for asserting a claim of fraudulent concealment in the Ninth Circuit.

The Supreme Court has made it clear that federal courts are not to be used as a fishing expedition in antitrust cases so that plaintiffs can pursue burdensome and costly discovery in search of an actionable conspiracy claim.  For all of these reasons, the motion to dismiss should be granted.

## ARGUMENT

### I.   PLAINTIFFS HAVE NOT PLED A PLAUSIBLE CONSPIRACY IN ANY MARKET FOR FINISHED PRODUCTS

Having recognized the fatal legal defects in their CRT conspiracy allegations, Plaintiffs now claim they have alleged a conspiracy in the market for both CRTs and Finished Products.  *See*, *e.g.*, Direct Purchaser Plaintiffs' Combined Opposition ("Pls.' Opp'n") at 1.  However, Plaintiffs have not pled any facts capable of supporting a conspiracy directed at any Finished Products market.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level").  Indeed, the market for Finished Products has experienced intense price declines and "vigorous price competition" for decades.  Indirect Purchaser Consol. Am. Compl. ¶ 227.

As set forth in Defendants' opening brief, the only factual allegations of a conspiracy in the DP-CAC relate to a purported conspiracy in various foreign markets *for CRTs*.  For example, while Plaintiffs point to allegations about the locations, organizational structure of, participants in, and subjects discussed at, various alleged conspiratorial meetings (Pls.' Opp'n at 2-3), those allegations relate solely to an alleged conspiracy in the market for CRTs.  *See* DP-CAC ¶ 137 (alleging meetings of "*CRT* makers"); ¶ 139 (alleging a "*CRT* conspiracy"); ¶ 144 (alleging agreements on *CRT* prices); ¶¶ 111, 146 (alleging agreements on output restrictions for *CRTs*); ¶ 188 ("Defendants' collusion is evidenced by unusual price movements in the *CRT* market."); ¶ 197 ("The stability of the price of *CRTs* was accomplished

2

by the collusive activities alleged above.") (emphases added throughout).  The DP-CAC does not allege any facts to support a claim that any of the alleged conspiratorial meetings restricted competition in the sale of televisions or monitors.  Nor can plaintiffs substitute arguments in their brief for complaint allegations.  *See Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss." (emphasis in original)); *Sathianathan v. Smith Barney, Inc.*, No. C 04-2130 SBA, 2004 WL 3607403, at *9 n.13 (N.D. Cal. Jun. 6, 2004) ("'[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.'" (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984))).

In the DP-CAC, Plaintiffs allege only that in reaching purported agreements regarding CRTs, CRT makers also "considered the internal pricing of products containing CRTs."  DP-CAC ¶ 144; *see also* ¶ 146 (analysis of alleged CRT output restriction agreements "included consideration of downstream prices for televisions, computer monitors, or similar products" and how the downstream prices "would affect the price ranges [for CRTs] being collusively set").  Plaintiffs nowhere specifically allege that Defendants agreed to fix the prices of Finished Products.[1]

The paragraphs Plaintiffs cite to support their contention that they have alleged a conspiracy to fix the prices of Finished Products (*see* DP-CAC ¶¶ 1, 5-7, 134, 138, 139, 141, 215-221) contain only undifferentiated allegations concerning "CRT Products," a category into which Plaintiffs have lumped both CRTs and Finished Products.  But, lumping together conclusory assertions is insufficient to state a plausible conspiracy claim under *Twombly*.  *See*

---

[1] Plaintiffs' reliance on the indictment of C.Y. Lin of Chunghwa PT further belies their claim of any alleged conspiracy in the market for Finished Products.  That indictment makes clear that the alleged conspiracy relates to the CRT market, not the market for Finished Products. *See* Saveri Decl. in Supp. of Pls.' Opp'n, Ex. 7; *see also* DP-CAC ¶¶ 125-31, 133 (alleging that foreign and domestic enforcement agencies are investigating Defendants' alleged *CRT* conspiracy).

1   550 U.S. at 570; *see also Rick-Mik Enters. Inc. v. Equilon Enters., LLC*, 532 F.3d 963, 976-77

2   (9th Cir. 2008) (price-fixing claim fails for "impermissible vagueness" under *Twombly* where,

3   among other things, "[t]he nature of the conspiracy or agreement is not alleged"); *In re Late*

4   *Fee & Over-Limit Fee Litig.,* 528 F. Supp. 2d 953, 962 (N.D. Cal. 2007) (antitrust complaint

5   insufficient under *Twombly* where it provided "no details as to when, where, or by whom this

6   alleged agreement was reached").

7          Indeed, Plaintiffs have not alleged any specific facts relating to a Finished

8   Products conspiracy, nor have they contended that Defendants have a collective market share

9   in the sale of any particular Finished Products in the U.S.  This failure is not just a technicality,

10  as Plaintiffs have not named as Defendants, or as participants in any alleged Finished Products

11  conspiracy, numerous companies – for example, Sony Corporation, Sharp, Sanyo, and Visio in

12  the television market, and Dell, Apple, Gateway, and Hewlett Packard in the monitor market –

13  that have major shares in U.S. markets for Finished Products.  Without such participants, any

14  alleged conspiracy in the Finished Products markets makes no economic sense and cannot state

15  a plausible claim under *Twombly*.  *See* 550 U.S. at 570; *Rick-Mik Enters.*, 532 F.3d at 976-77;

16  *Late Fee*, 528 F. Supp. 2d at 962; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

17  475 U.S. 574, 587 (1986); *DM Research, Inc. v. Coll. of Am. Pathologists*, 170 F.3d 53, 56 (1st

18  Cir. 1999) (affirming dismissal of a complaint where allegation of conspiracy was

19  economically implausible); *Lucas v. Citizens Commc'ns Co.*, 409 F. Supp. 2d 1206, 1214-15

20  (D. Haw. 2005) (holding that a plaintiff must allege an economically plausible conspiracy).

21         In sum, even under the most liberal view of the *Twombly* standard, the

22  DP-CAC alleges no facts capable of supporting a Finished Products conspiracy claim.  And,

23  because Plaintiffs' opposition is based entirely on their having pled a Finished Products

24  conspiracy, the DP-CAC must be dismissed.

25

26

27

28
                                                                                            4

## II.   THIS COURT LACKS SUBJECT MATTER JURISDICTION UNDER THE FTAIA

Plaintiffs do not dispute that under the FTAIA, the Sherman Act does not apply to conduct involving foreign trade unless that conduct has direct, substantial, and reasonably foreseeable anticompetitive effects on U.S. commerce.  *See* 15 U.S.C. § 6a (2006).  Nor do Plaintiffs dispute that the DP-CAC is replete with allegations of foreign conduct concerning foreign CRT sales.  *See*, *e.g.*, DP-CAC ¶¶ 6, 134, 141, 151, 153, 155-80.   Nonetheless, Plaintiffs contend that the U.S. antitrust laws should be applied to the DP-CAC.  Plaintiffs are wrong.

### A.   The DP-CAC Fails to Allege a Conspiracy Aimed at the United States

In an effort to avoid the FTAIA, Plaintiffs argue that the DP-CAC alleges "a conspiracy aimed at" and "furthered partially in" the U.S.  Pls.' Opp'n at 5.  This Court squarely rejected such a theory in *In re Rubber Chemicals Antitrust Litigation*, holding that, for purposes of the FTAIA, foreign conduct cannot be "'combined with domestic conduct in an attempt to confer jurisdiction over the foreign conduct under the rubric of a single claim.'"  504 F. Supp. 2d 777, 784 (N.D. Cal. 2007) (quoting *In re Intel Corp. Microprocessor Antitrust Litig.*, 452 F. Supp. 2d 555, 562 (D. Del. 2006) ("*Intel*")); *see Dee-K Enters., Inc. v. Heveafil Sdn. Bhd*, 299 F.3d 281, 294-95 (4th Cir. 2002) (the FTAIA applies where, as here, the "acts, targets, and effects" are "primarily foreign").[2]

Indeed, Plaintiffs ignore the well-established rule that allegations of foreign agreements directed at a general "worldwide" market are not enough to meet the FTAIA jurisdictional test.  *See, e.g.*, Defs.' Mot. to Dismiss DP-CAC at 11 (citing *Dee-K Enters.*, 299 F.3d at 295).   Plaintiffs' argument that *Dee-K* does not apply because it "involve[d] importation of foreign-made goods" (Pls.' Opp'n at 10 n.2) is simply wrong as *Dee-K* "stands for the proposition that the FTAIA bars claims failing to establish not only a clear link between

---

[2] It is axiomatic that the FTAIA applies to foreign sales.  *See United States v. LSL Biotechs.*, 379 F.3d 672, 680 (9th Cir. 2004) (holding that the FTAIA controlled where plaintiffs alleged an agreement between domestic and foreign corporations to restrict the sale of modified seeds in Mexico).

DEFENDANTS' JOINT REPLY BRIEF IN SUPPORT                                            MDL No. 1917
OF THEIR MOTION TO DISMISS THE DP-CAC

1  the defendants' illegal conduct and the United States trade or commerce, but also that the

2  United States trade was, at the very least, 'a' focus point of the Defendants' illegal conduct."

3  *Animal Sci. Prods., Inc. v. China Nat'l Metals & Minerals Imp. & Exp. Corp.*, 596 F. Supp. 2d

4  842, 865-66 (D.N.J. 2008).  Here, however, Plaintiffs fail to connect the alleged conspiracy to

5  the U.S.

6        *First*, sales of Finished Products in the U.S. are irrelevant because the DP-CAC

7  does not allege any facts capable of supporting a conspiracy in any market for Finished

8  Products (let alone for Finished Products sold in the U.S.).  *See supra* Section I.

9        *Second*, Plaintiffs' assertion that the allegations in the DP-CAC involve some

10  "conspiratorial conduct" that is "United States-based" (Pls.' Opp'n at 7) is not true.  For

11  example, Plaintiffs argue that the DP-CAC allegation that "United States based Defendants

12  were represented at collusive meetings held abroad" somehow establishes the requisite link to

13  the U.S.  Pls.' Opp'n at 6.  But, the U.S. citizenship of Defendants is irrelevant (*see* FTAIA

14  House Report, H.R. Rep. No. 97-686, at 9-10 (1982) *reprinted in* 1982 U.S.C.C.A.N. 2487,

15  2494-95), and there is no *factual* allegation to support the conclusory assertion that U.S.

16  Defendants were somehow "represented" at foreign meetings.

17        *Third*, the conclusory allegation of a cooperative relationship between U.S. and

18  Korean trade associations does not further Plaintiffs' conspiracy claims, let alone establish any

19  domestic effect.  Plaintiffs do not allege how such trade associations were used to further the

20  alleged conspiracy, let alone in the U.S.  *See* DP-CAC ¶¶ 176-80.  And, courts have regularly

21  held that mere trade association membership is insufficient to support a conspiracy claim.  *See*,

22  *e.g.*, *In re Citric Acid Litig.*, 191 F.3d 1090, 1098 (9th Cir. 1999); *In re Graphics Processing*

23  *Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1023 (N.D. Cal. 2007); *Twombly*, 550 U.S. at

24  566-67 n.12.

25        *Fourth*, Plaintiffs provide no factual allegations linking the factory closings of

26  three U.S. Defendants between 2004 and 2006 to the alleged CRT conspiracy.  DP-CAC ¶¶

27  183, 185, 187.  And, Plaintiffs' allegation that purported agreements relating to foreign CRT

28

6

1   sales were "stated in United States dollars" (DP-CAC ¶ 144) does not support a claim that this

2   alleged conduct furthered any claimed conspiracy directed at U.S. sales.

3            *Fifth*, Plaintiffs' conclusory assertion that the conspiracy caused adverse

4   impacts in the U.S. (Pls.' Opp'n at 7) is not sufficient to bring the DP-CAC within the reach of

5   the U.S. antitrust laws.  *See Twombly*, 550 U.S. at 555 (allegations consisting of mere "labels

6   and conclusions" are insufficient to state a claim).

7            *Sixth*, because Plaintiffs have failed to allege facts supporting a plausible claim

8   of a conspiracy aimed at, or otherwise involving, the U.S. market, Plaintiffs' attempts to

9   distinguish the cases relied upon by Defendants are unavailing.  Pls.' Opp'n at 7-10.  For

10  example, in *Intel*, the plaintiff alleged that because the market for microprocessors "is a single,

11  unitary, world-wide market," Intel's alleged anticompetitive foreign conduct involving that

12  product had direct domestic effects.  452 F. Supp. 2d at 559.  The court rejected those

13  allegations as being too attenuated to establish "direct" anticompetitive domestic effects.  *Id.* at

14  560-61 ("the allegations of foreign conduct here result in nothing more than what courts have

15  termed a 'ripple effect' on the United States domestic market").[3]

16           *Finally*, Plaintiffs attempt to distinguish *United Phosphorus, Ltd. v. Angus*

17  *Chemicals Co.* because the allegedly price-fixed product in that case was never sold to

18  plaintiffs in the U.S. (Pls.' Opp'n at 9-10), but the same is true here.  Plaintiffs have not alleged

19  specific facts to support any claim that the purportedly price-fixed products – CRTs (as

20  opposed to Finished Products) – were sold to Plaintiffs in the United States.[4]

21

22

23  [3] Nor can Plaintiffs rely on allegations regarding the alleged price-fixing of foreign sales of
    CRTs, which may have been used, in part, as inputs for Finished Products sold in the U.S.
    Plaintiffs do not dispute that the FTAIA bars antitrust actions where Plaintiffs allege "restraints
24  in foreign markets *for inputs*," such as CRTs, "that are used abroad to manufacture
    downstream products that may later be imported into the United States."  *United Phosphorus,*
25  *Ltd v. Angus Chem. Co.*, 131 F. Supp. 2d 1003, 1014 (N.D. Ill. 2001), *aff'd*, 322 F.3d 942, 949
    (7th Cir. 2003) (emphasis added); *see id.* (domestic effects, if any, of such inputs "would
26  obviously not be 'direct,' much less 'substantial' and 'reasonably foreseeable'"); *In re Intel*
    *Corp. Microprocessor Antitrust Litig.*, 476 F. Supp. 2d 452, 456 (D. Del. 2007).

27  [4] The same is true for the other cases Plaintiffs attempt to distinguish, including *F.*
    *Hoffman-LaRoche Ltd. v. Empagran S.A.*, 542 U.S. 155 (2004), *In re Dynamic Random Access*

28
                                                                                                    7

1

2

**B.** **The DP-CAC Fails to Allege That Defendants' Purportedly Anticompetitive Conduct Involved United States Imports**

3        Plaintiffs next argue that they meet the "import trade or commerce exception"

4   to the FTAIA.  Pls.' Opp'n at 10-11.  Plaintiffs, however, seriously misstate that exception,

5   which applies only in the "narrow" circumstance where "defendants *directly* brought items or

6   services into the United States or *directly* increased or decreased United States imports."  *In re*

7   *Korean Air Lines Co., Ltd. Antitrust Litig.*, MDL No. 07-01891, at 8 (C.D. Cal. June 25, 2008)

8   ("*KAL*") (Saveri Decl. in Supp. of Pls.' Opp'n, Ex. 1) (emphases added); *see also Animal Sci.*

9   *Prods.*, 596 F. Supp. 2d at 861; *Korea Kumho Petrochemical v. Flexsys Am. LP*, No.

10  C07-01057 MJJ, 2008 WL 686834, at *6 (N.D. Cal. March 11, 2008) ("Here, the relevant

11  alleged misconduct by the Defendants reflects no 'involvement' in import trade or commerce,

12  it simply reflects . . . restraints on foreign trade").  As Plaintiffs' authorities make clear,

13  Plaintiffs must set forth *facts* alleging that Defendants' supposed anticompetitive conduct

14  "involve[ed]" "import trade or import commerce," *i.e.*, that "conduct by the defendants . . . was

15  directed at an import market."  *Kruman v. Christie's Int'l PLC*, 284 F.3d 384, 395 (2d Cir.

16  2002); *see also KAL*, CV 07-05107 at 8-9.  Moreover, the affected import market must be the

17  market for the allegedly price-fixed product.  *See United Phosphorus*, 131 F. Supp. 2d at

18  1023-24 (rejecting import exception where plaintiffs alleged restraints in foreign markets for

19  inputs used abroad to manufacture downstream products that were later imported into the

20  U.S.).

21        Here, the DP-CAC does not allege:  (i) that Defendants imported CRTs; (ii) that

22  Defendants increased or decreased U.S. imports; or (iii) that the purported conspiracy was

23  directed at the U.S. import market.  In fact, the word "import" does not even appear in the

24  _____

25  *Memory (DRAM) Antitrust Litigation*, 546 F.3d 981 (9th Cir. 2008), and *In re Rubber Chemicals Antitrust Litigation*, 504 F. Supp. 2d 777.  In those cases, the courts declined to

26  exercise subject matter jurisdiction where the allegedly price-fixed products were sold outside the U.S.  Similarly, Plaintiffs' reliance on the *SRAM*, *Flash Memory* and *TFT-LCD* decisions,

27  as well as the *TFT-LCD*-related chart at Exhibit 3 to the Saveri Declaration, is misplaced as none of those decisions addressed the FTAIA.

28                                                                                  8

1   DP-CAC.  Paragraphs 24-80 of the DP-CAC, to which Plaintiffs point for their purported

2   "import" allegations, only contain conclusory allegations that Defendants made sales of *CRT*

3   *Products* in the U.S.; they do not allege that Defendants were "importers," let alone that the

4   alleged conspiracy was directed at the market for U.S. imports of *CRTs*.  Plaintiffs' reliance on

5   paragraphs 183, 185 and 187 of the DP-CAC is similarly misguided as those paragraphs

6   nowhere allege that purported closings of CRT plants "directly caused United States imports of

7   [Finished Products] to increase."[5]  Pls.' Opp'n at 12.

8       **C.      The Court Should Grant Defendants' Motion to Dismiss under the FTAIA**

9           Finally, there is no support for Plaintiffs' argument that subject matter

10  jurisdiction under the FTAIA is "not a dispute that can properly be decided on the pleadings."

11  Pls.' Opp'n at 13.  Courts regularly decide the applicability of the FTAIA at the pleadings stage

12  and dismiss complaints where, as here, plaintiffs have not met the jurisdictional test.  *See, e.g.*,

13  *Commercial Street Express LLC v. Sara Lee Corp.*, No. 08 C 1179, 2008 WL 5377815 (N.D.

14  Ill. Dec. 18, 2008); *Emerson Elec. Co. v. Le Carbone Lorraine, S.A.*, 500 F. Supp. 2d 437

15  (D.N.J. 2007); *cf. Den Norske Stats Oljeselskap AS v. Heeremac Vof*, 241 F.3d 420 (5th Cir.

16  2001); *In re Graphite Electrodes Antitrust Litig.*, No. 10-MD-1244, 2007 WL 137684 (E.D. Pa.

17  Jan. 16, 2007); *In re Monosodium Glutamate Antitrust Litig.*, No. 00-MDL-1328, 2005 WL

18  2810682 (D. Minn. Oct. 26, 2005), *aff'd*, 477 F.3d 535 (8th Cir. 2007); *Latino Quimica-Amtex*

19  *S.A. v. Akzo Nobel Chems. B.V.*, No. 03 Civ. 10312 (HBDF), 2005 WL 2207017 (S.D.N.Y.

20  Sept. 8, 2005).  Indeed, the only *specific* factual allegations in the DP-CAC relate to alleged

21  *overseas* agreements among *foreign* companies concerning *foreign* CRT sales.  Plaintiffs have

22  thus failed to plead the requisite domestic effects, requiring dismissal of the DP-CAC.

---

24  [5] In this connection, it is insufficient for the DP-CAC to allege a conspiracy controlling CRT
    prices paid in foreign markets, even if the CRTs purchased abroad were later imported into the
25  U.S.  *Kruman*, 284 F.3d at 395-96; *see also Animal Sci. Prods.*, 596 F. Supp. 2d at 861 ("if
    defendants did not directly bring items or services into the United States, they cannot be
26  labeled importers . . . the fact that the product eventually found its way into the United States
    does not transform the defendant into an importer.") (internal citations and quotation marks
27  omitted); *Turicentro, S.A. v. Am. Airlines Inc.*, 303 F.3d 293, 303-04 (3d Cir. 2002); *United*
    *Phosphorus*, 131 F. Supp. 2d at 1023.

28                                                                                          9

1    Moreover, the Supreme Court has made clear that legal conclusions, without

2    more, do not "unlock the doors of discovery." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009);

3    *see Twombly*, 550 U.S. at 558 ("[I]t is one thing to be cautious before dismissing an antitrust

4    complaint in advance of discovery . . . but quite another to forget that proceeding to antitrust

5    discovery can be expensive."); *id.* a 560 n.6 (describing antitrust discovery as a "sprawling,

6    costly, and hugely time-consuming undertaking").   Indeed, Plaintiffs' conclusory assertion

7    that a foreign conspiracy aimed at foreign sales of CRTs somehow "affected" the U.S. market

8    – with no specific factual support – is not a sufficient basis for a fishing expedition.  *See id.*; *see*

9    *also The Oso Group, Ltd. v. Bullock & Assocs., Inc.*, No. 09-1906 SC, 2009 WL 2422285 at *3

10   (N.D. Cal. Aug. 6, 2009) (Conti, J.) (denying request for jurisdictional discovery).

11    Because the FTAIA bars jurisdiction, the DP-CAC should be dismissed in its

12   entirety.   Alternatively, even if the Court were to find some allegations in the DP-CAC

13   sufficient to allege a conspiracy to fix the price of CRTs sold in the U.S., it should still dismiss

14   all claims directed at purported agreements fixing the foreign sales price of CRTs, even if it is

15   alleged that these CRTs may have, in part, been subsequently incorporated into Finished

16   Products that were then imported into the U.S.

## III.   PLAINTIFFS LACK STANDING

### A.    Plaintiffs' Claims Are Barred By *Illinois Brick*

19    As set forth in Defendants' moving papers, Plaintiffs' claims are indirect;

20   therefore, Plaintiffs lack standing and the DP-CAC must be dismissed.  *See Illinois Brick Co. v.*

21   *Illinois*, 431 U.S. 720 (1977) (barring plaintiffs from bringing indirect purchaser claims under

22   federal antitrust law).  Each of Plaintiffs' arguments to the contrary is unavailing.

#### 1.    Plaintiffs Admit That They Are Indirect Purchasers of CRTs

24    Plaintiffs have not alleged that they directly purchased CRTs, the allegedly

25   price-fixed product, from any Defendant.  *See supra* Section I.  Indeed, the DP-CAC makes

26   clear that Plaintiffs purchased downstream Finished Products that *incorporated* an allegedly

27   price-fixed CRT.  *See* DP-CAC ¶ 86 ("The Class definition encompasses those who bought a

28

10

CRT Product directly from a Defendant, even if *the CRT contained therein* was manufactured by an affiliated entity, principal, agent, or co-conspirator." (emphasis added)).  This is fatal as Plaintiffs cite no case to support the proposition that by purchasing Finished Products they are direct purchasers of CRTs "contained therein."  *Id.*  Instead, Plaintiffs assert that they have standing under the owned/controlled exception to *Illinois Brick*.  Pls.' Opp'n at 19-20 (relying on *In re Sugar Industry Antitrust Litigation*, 579 F.2d 13 (3d Cir. 1978), to justify standing as direct purchasers).  By relying on *Sugar*, Plaintiffs concede that they are indirect purchasers of CRTs.  *See Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*, 424 F.3d 363, 371-72 (3d Cir. 2005) (*Sugar* supports standing for indirect purchaser claims "only when the initial seller owned the direct purchaser").

## 2.   Plaintiffs' Reliance on *Sugar* Is Misplaced

The Third Circuit's opinion in *Sugar* does not exempt Plaintiffs from the *Illinois Brick* indirect purchaser bar.  Since Plaintiffs did not directly purchase CRTs, Plaintiffs cannot sue for damages unless they fall under one of the two narrow exceptions to *Illinois Brick*:  (i) when plaintiffs purchase the price-fixed product from an intermediary under a pre-existing cost-plus contract, or (ii) when plaintiffs purchase the price-fixed product from an intermediary that is owned or controlled by the defendant manufacturer of the product.  *See Del. Valley Surgical Supply, Inc. v. Johnson & Johnson*, 523 F.3d 1116, 1123 n.1 (9th Cir. 2008).  Neither exception applies here.

### (a)   Plaintiffs' Purchases Do Not Fall Within the Owned/Controlled Exception to *Illinois Brick*

The *Sugar* court held that indirect purchasers can bring federal antitrust claims notwithstanding *Illinois Brick* under the owned/controlled exception only where the intermediary (i) is a subsidiary or division of the defendant, (ii) sold to plaintiffs a product that incorporated the allegedly price-fixed product, *and* (iii) sourced the allegedly price-fixed

1  product internally from the defendant.  579 F.2d at 18-19 (citing *Illinois Brick*, 431 U.S. at 736

2  n.16)).[6]

3          Plaintiffs do not plead facts that bring them within the exception.  *First*,

4  Plaintiffs do not allege that the participants in the alleged CRT conspiracy controlled the

5  entities that sold Finished Products to Plaintiffs, even though such allegations are the *sine qua*

6  *non* of the owned/controlled exception.  *See Sugar*, 579 F.2d at 19.  Rather, Plaintiffs allege

7  they have purchased "CRT Products" – which in context means Finished Products – from

8  Defendants and/or their subsidiaries.  DP-CAC ¶¶ 11-23.  Plaintiffs never allege that the

9  Finished Products contained component CRTs manufactured by an entity controlled by (or in

10  control of) the Defendant from whom the Finished Product was purchased.[7]  *Second*, Plaintiffs

11  do not allege that they purchased from intermediaries Finished Products continaing CRTs

12  manufactured by the intermediary's corporate parent, as *Sugar* requires.  On this basis alone

13  dismissal is warranted.

14          Moreover, the "incorporated products" prong of *Sugar* was abrogated by the

15  Supreme Court's admonition not to create further exceptions to the *Illinois Brick* rule beyond

16  those set forth in the decision itself.  *See Kansas v. UtiliCorp United Inc.*, 497 U.S. 199, 208

17  (1990).  With few exceptions,[8] cases that rely on *Sugar* do so only where the plaintiff

18

19

---

20  [6] Courts have interpreted the third prong of the *Sugar* analysis to require that the defendant has
    "functional unity" with the intermediary sellers, *i.e.*, the power to control the intermediary
21  sellers' pricing decisions along the chain of distribution.  *See In re Brand Name Prescription
    Drugs Antitrust Litig.*, 123 F.3d 599, 605-06 (7th Cir. 1997); *Jewish Hosp. Ass'n v. Stewart
22  Mech. Enters., Inc.*, 628 F.2d 971, 975 (6th Cir. 1980).  Here, as Plaintiffs admit, the
    intermediary sellers purchased CRTs not only from their corporate parents, but from affiliates,
23  independent joint ventures, and third parties and there is no allegation of the required price
    controls.

24  [7] If, for example, Plaintiffs purchased a television from *X* that included a CRT from *Y*, the
    *Sugar* exception to *Illinois Brick* would plainly have no application.

25  [8] Plaintiffs rely in their opposition on the Third Circuit's ruling in *In re Linerboard Antitrust
26  Litigation*, 305 F.3d 145 (3d Cir. 2002).  However, it is important to note that the Third Circuit
    presumed in *Linerboard*, as it did in *Sugar*, that the price-fixed component was manufactured
27  by the same entity that sold the finished product to plaintiffs.  *Id.* at 159.  As described herein,
    those facts are materially different from those alleged in the present case.

28

1   purchased the price-fixed good itself from an intermediary.  *See*, *e.g.*, *Royal Printing Co. v.*

2   *Kimberly-Clark Corp.*, 621 F.2d 323, 326 (9th Cir. 1980).

3          *Royal Printing* and its progeny are clearly distinguishable from the case at

4   hand.  While the *Royal Printing* plaintiffs purchased the actual price fixed product, Plaintiffs

5   here did not; rather, they purchased a completely different product that only incorporated the

6   allegedly priced fixed good as one of several components.  Plaintiffs, therefore, participated in

7   a distinct market downstream from the market directly affected by the alleged conspiracy.

8   Given that Plaintiffs do not allege that several leading manufacturers of downstream products,

9   such as Sony, Sharp, HP, and Dell participated in the alleged conspiracy, it is implausible to

10  assume that the downstream products incorporating CRTs were not subject to competition.

11  Moreover, there is no reason to doubt that such downstream competitors would seek to enforce

12  the antitrust laws as the direct purchasers of CRTs, with the requisite standing to do so.  *See*

13  *Sun Microsystems Inc. v. Hynix Semiconductor Inc.*, 608 F. Supp. 2d 1166, 1187-88 (N.D. Cal.

14  2009) (suit by direct purchaser of DRAM).  The instant case, therefore, does not fall under the

15  *Royal Printing* rule, which requires both (i) that the plaintiffs purchase the actual price-fixed

16  product itself, and (ii) that there is no real likelihood that direct purchasers would seek to

17  enforce the antitrust laws themselves.  *Id.* at 327.[9]

18         Further, permitting Plaintiffs to pursue their indirect claims empowers them to

19  assert an offensive pass-on claim while *Hanover Shoe* would deny Defendants the ability to

20  assert a pass-on defense.  This is inconsistent with the opinion of Justice White, the author of

21  *Illinois Brick*, who stated that the decision in that case was compelled by the *Hanover Shoe* bar.

22  *See Illinois Brick*, 431 U.S. at 736-37.  In short, Plaintiffs seek the ability to claim damages for

23  alleged overcharges passed on to them while at the same time denying Defendants the ability to

24  _____

25  [9] Rather, *Royal Printing* is inapposite to Plaintiffs' claims against all Defendants and, in
    particular, those that manufacture and sell downstream Finished Products only.  The question

26  in *Royal Printing* was whether *Illinois Brick* barred plaintiffs' suit where the plaintiff had
    directly purchased the price-fixed product itself from a subsidiary of an alleged co-conspirator.

27  *Royal Printing*, therefore, has no relevance whatever to the allegations here, where Plaintiffs

28                                                                                      13

1  show that Plaintiffs themselves passed on the alleged overcharge to their customers.  As Justice

2  White observed, such an unjust result cannot abide in law.  *Id.*; *see Mid-West Paper Prods. Co.*

3  *v. Cont'l Group, Inc.*, 596 F.2d 573, 576 (3d Cir. 1979).

4          **(b)     Plaintiffs' Claims Must Be Dismissed Where**
               **Plaintiffs Purchased Finished Products that**
5              <u>**Included a CRT Purchased from an Independent Entity**</u>

6          In *Sugar*, the plaintiff, which had alleged a conspiracy among refiners to fix the

7  price of sugar, purchased candy that incorporated the allegedly price-fixed sugar.  *Sugar*, 579

8  F.2d at 15.  On a petition for rehearing, defendant Borden asserted that, as a factual matter, the

9  candy plaintiff had purchased only contained sugar that had been refined by independent

10 entities.  *Id.* at 19.  The Third Circuit, in denying Borden's petition, expressly noted that it was

11 only asking "whether [plaintiff] was permitted to maintain a claim as a direct purchaser from

12 Borden of candy manufactured with sugar Borden had refined."  *Id.*  The Third Circuit further

13 noted that Borden was "not precluded from now contending on remand to the district court that

14 none of its refined sugar was in the products it sold to [plaintiff]."  *Id.* at 20.  The same facts the

15 Third Circuit recognized would negate the claims against Borden are also present here.

16          In the instant case, Plaintiffs' only non-conclusory allegations concern a

17 conspiracy among manufacturers to fix the price of CRTs purchased downstream from

18 intermediaries that incorporated the allegedly price-fixed CRTs.  *See* DP-CAC ¶ 86.  Plaintiffs

19 do not restrict their claims to cases where the intermediary purchased CRTs from a corporate

20 parent; rather, Plaintiffs' allegations sweep in all purchases of CRTs, from affiliates, joint

21 ventures, and unrelated third parties.  Pls.' Opp'n at 116-17.  The Third Circuit did not address

22 such claims in *Sugar*; rather, that holding would only arguably apply to claims regarding

23 allegedly price-fixed CRTs from a corporate parent, sold to an intermediary for inclusion in a

24

25

26
   _____

27 do not allege that they directly purchased the allegedly price-fixed product (CRTs) itself but
   rather downstream Finished Products that incorporated the allegedly price-fixed component.

28                                                                                                        14

1     Finished Product, and then sold to Plaintiffs.  The DP-CAC, however, includes no such

2     specific claims.[10]

3          **B.**    **Plaintiffs Have Not Established Antitrust Standing**
              **Under *Associated General Contractors* to Assert Claims**

4                **Based Upon Purchases of Finished Products Containing CRTs**

5         Plaintiffs have attempted to obscure not only the nature of their alleged

6     conspiracy, but also the nature of the *purchases* underlying their claims.  As set forth above,

7     Plaintiffs have not alleged any facts sufficient to claim a conspiracy concerning Finished

8     Products.  *See supra* Section I.  Moreover, the DP-CAC deliberately obscures which Plaintiffs,

9     *if any*, purchased CRTs standing alone, and which Plaintiffs merely bought a Finished Product,

10     containing a CRT that was purchased and incorporated into the Finished Product by someone

11     else.[11]  However, all Plaintiffs who only bought Finished Products are *indirect* purchasers who

12     have not and cannot satisfy the test for antitrust standing set forth in *Associated General*

13     *Contractors of California, Inc. v. California State Council of Carpenters* ("*AGC*"), 459 U.S.

14     519 (1983).[12]  To the extent Plaintiffs are in fact indirect purchasers, Defendants incorporate

15     by reference their analysis of antitrust standing under *AGC* as set forth in their reply brief in

16     support of their Joint Motion to Dismiss the Indirect Purchaser Plaintiffs' Complaint.

17     Defendants also respond as follows to certain arguments advanced by Plaintiffs here.

---

[10] There can be no dispute that *Sugar* applies only to intermediaries and manufacturers owned by the same entity.  It plainly has no application whatever to any Defendant in this case that does not wholly own both makers and sellers of CRTs *and* Finished Products.  Thus, *Sugar* cannot support standing against any non-wholly owned Defendant that makes and sells CRTs only, or any non-wholly owned Defendant that makes and sells Finished Products only.

[11] Plaintiffs do not identify a single truly "direct" purchaser of a CRT itself.  Rather, in boilerplate fashion, the DP-CAC alleges that each of the 13 named Plaintiffs "purchased one or more *CRT Products* from one of the defendants and/or their subsidiaries and suffered injury as a result of defendants' unlawful conduct."  *See* DP-CAC ¶¶ 11-23 (emphasis added).

[12] Plaintiffs do not dispute that they need to establish antitrust standing under the multi-factor test set forth in *AGC* and its progeny with respect to all of their allegations to recover under the federal antitrust laws.  Pls.' Opp'n at 17 (citing *AGC*, 459 U.S. at 535 and *Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*, 190 F.3d 1051, 1054 (9th Cir. 1999)).

1

### 1.   Plaintiffs Have Failed to Establish An Antitrust Injury

2

3        Plaintiffs recognize that courts give "great weight" to the first *AGC* factor, the

4    "nature of plaintiff's alleged injury."  Pls.' Opp'n at 17 (citing *Am. Ad Mgmt.*, 190 F.3d at

5    1054).[13]  Plaintiffs also concede that antitrust injury requires a showing that Plaintiffs are

6    "participants in the relevant market."  *Id.*; *see also Bhan v. NME Hosp., Inc.*, 772 F.2d 1467,

7    1470 n. 3 (9th Cir. 1985) ("the injured party [must] be a participant in the *same* market as the

8    alleged malefactors" (emphasis added)); *AGC*, 549 U.S. at 538 (antitrust laws are designed to

9    "protect[] the economic freedom of participants *in the relevant market*" (emphasis added)).  In

10   determining whether goods exist within the same market, "the focus is upon the reasonable

11   interchangeability of use or the cross-elasticity of demand between" the goods in question.

12   *Bhan,* 772 F.2d at 1470-71.  "Parties whose injuries, though flowing from that which makes

13   the defendant's conduct unlawful, are experienced in another market do not suffer antitrust

     injury."  *Am. Ad Mgmt.*, 190 F.3d at 1057.

14       Here, Plaintiffs not only concede that the alleged injury took place in a separate

15   relevant market from the Finished Products market, they in fact allege it.  The DP-CAC

16   specifically alleges that CRT manufacturers analyzed "*downstream* prices for televisions,

17   computer monitors or similar products and how *they* would affect *the price ranges being*

18   *collectively set*."  DP-CAC ¶ 146 (emphases added).  This is a clear and incurable admission:

19   Plaintiffs have failed to allege their participation in the CRT market and thus have failed to

20   establish requisite antitrust injury.

21       Rather than have this Court apply these well-settled principles, Plaintiffs assert

22   that because they allegedly purchased "goods" from "cartel members," they have alleged an

23   antitrust injury.  Pls.' Opp'n at 15.  Because Plaintiffs have not sufficiently alleged the

24   _____

25   [13] As another case cited by Plaintiffs held in dismissing a complaint for lack of antitrust
     standing because of the absence of an antitrust injury, "the antitrust injury requirement exists
26   independently of the elements of an antitrust violation and becomes itself a pleading
     requirement."  *Mathias v. Daily News, L.P.*, 152 F. Supp. 2d 465, 478 (S.D.N.Y. 2001); *see*
27   *Toscano v. PGA Tour, Inc.*, 201 F. Supp. 2d 1106, 1116 (E.D. Cal. 2002) ("the absence of
     antitrust injury is fatal").

28

DEFENDANTS' JOINT REPLY BRIEF IN SUPPORT                          MDL No. 1917
OF THEIR MOTION TO DISMISS THE DP-CAC

1   existence of any "cartel" concerning Finished Products, however, this argument has no weight.

2   *See supra* Section I.[14]

3          Accordingly, Plaintiffs have improperly attempted to blur the distinctions

4   between very different markets in stating that they have directly purchased "price-fixed

5   products." Pls.' Opp'n at 18.[15]  Nor can the product Plaintiffs allege was price-fixed – a CRT –

6   be considered in the same product market as the Finished Product incorporating that CRT.  As

7   stated above, the Ninth Circuit has made clear that products are only in the same market if there

8   is "interchangeability" or "cross-elasticity of demand."  *See Bhan*, 772 F.2d at 1470-71.  CRTs

9   and Finished Products plainly fail that test: no consumer could use a CRT itself to watch

10  television or a video, and no consumer would buy a stand-alone CRT if prices for a finished

11  computer monitor or television set became too expensive.  At bottom, Plaintiffs are merely

12  consumers in secondary markets that are "incidental" to the "market for [the CRT] itself."  *In*

13  *re DRAM Antitrust Litig.*, 516 F. Supp. 2d 1072, 1090-91 (N.D. Cal. 2007) ("*DRAM I*"); *see In*

14  *re DRAM Antitrust Litig.*, 536 F. Supp. 2d 1129, 1136 (N.D. Cal. 2008) ("*DRAM II*").

15          **2.    Plaintiffs Have Not Satisfied the Remoteness Factors of *AGC***

16          Separate and apart from whether Plaintiffs have pled the requisite facts to

17  establish antitrust injury, and even if Plaintiffs' improper "CRT Products" definition is

18  allowed to stand, Plaintiffs' claims are still hopelessly remote.[16]  Specifically, Plaintiffs have

19

20  [14] For this reason, Plaintiffs' reliance on *In re TFT-LCD Antitrust Litigation*, 586 F. Supp. 2d
    1109, 1118 (N.D. Cal. 2008), is also unavailing.

21
22  [15] Plaintiffs' citation to *Freeman v. San Diego Ass'n of Realtors*, 322 F.3d 1133, 1144 (9th Cir.
    2003) is inapposite.  In *Freeman*, the defendants conceded that they fixed a fee for their real
23  estate services at supracompetitive levels, and then sold those services to the plaintiffs.  In
    contrast, the Finished Products purchased by Plaintiffs here are not "inseparable" from the
    allegedly price-fixed CRT, for all of the reasons discussed herein.

24  [16] While antitrust injury is necessary, it is "not always sufficient to establish standing under
25  section 4 [of the Clayton Act] because a party may have suffered antitrust injury but may not
    be the proper plaintiff under section 4 for other reasons."  *See Cargill, Inc. v. Monfort of Colo.,*
26  *Inc.*, 479 U.S. 104, 110 n.5 (1986); *AGC*, 459 U.S. at 535 ("'Congress did not intend to allow
    every person tangentially affected by an antitrust violation to maintain an action to recover
27  threefold damages for the injury to his business or property.'" (quoting *Blue Shield of Va. v.*
    *McCready*, 457 U.S. 465, 476-77 (1982))).  Plaintiffs are incorrect that these arguments are

28                                                                                              17

1   not satisfied the *AGC* factors which focus on the "remoteness" of the purported injury.  *See*

2   *AGC*, 459 U.S. at 539-44.

3              For example, Plaintiffs concede that "inputs" other than CRTs determine the

4   price of the Finished Products.  Pls.' Opp'n at 20.  Indeed, there are a variety of factors – the

5   cost of *other* components that collectively make up a monitor or television and the level of

6   product differentiation, branding, and competition in downstream markets – that would have

7   significantly influenced the price paid for the end-product, especially a product as complex as

8   a television.  *See*, *e.g.*, *DRAM I*, 516 F. Supp. 2d at 1092 ("It requires no leap of logic to

9   conclude that each product in which DRAM is a component, contains numerous other

10  components, all of which *collectively* determine the final price actually paid by plaintiffs for

11  the final product").  Moreover, because televisions and monitors compete in entirely different

12  markets, including against different brands, and – increasingly in the years comprising the

13  statute of limitations period – different types of televisions and monitors (*e.g.*, plasma and

14  LCD), the unique forces particular to each of *those* markets also influence the ultimate price

15  of a television or monitor, injecting even more variables.   The DP-CAC contains no

16  allegations about competition in these downstream markets to establish *AGC* standing.  Thus,

17  as in *AGC*, Plaintiffs' claim "rests at bottom on some abstract conception or speculative

18  measure of harm."  459 U.S. at 543 (internal citations and quotation marks omitted).

19             Further, Plaintiffs do not even purport to have alleged any type of

20  "pass-through."  Pls.' Opp'n at 21.  Nor do Plaintiffs dispute that CRTs must be physically

21  and monetarily traced through a complex web of manufacturing and distribution channels

22  before they are ultimately purchased by a Plaintiff as a Finished Product.  Thus, Plaintiffs'

23  allegations concerning Finished Products are hopelessly and unreasonably complex.  *See*

24  *Lorenzo v. Qualcomm, Inc.*, 603 F. Supp. 2d 1291, 1301 (S.D. Cal. 2009) (the alleged injury

25  was "too remote" where the relevant technology was "only a component" of the product at

26  _____

27  "inappropriate at the pleading stage."  Pls.' Opp'n at 20.  *AGC* itself was decided on the
    pleadings.  *AGC*, 459 U.S. at 521; *see NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 450 (6th Cir.

28                                                                                          18

    DEFENDANTS' JOINT REPLY BRIEF IN SUPPORT                              MDL No. 1917
    OF THEIR MOTION TO DISMISS THE DP-CAC

1    issue, "which is then passed on through the supply chain such that Plaintiff's injury also must

2    be disaggregated from a multitude of other manufacturing and component factors").

3            Plaintiffs also fail to recognize the "risk of duplicative recoveries" identified

4    by the *AGC* Court, which also weighs against antitrust standing.  *See* 459 U.S. at 542.

5    Plaintiffs' sole response concerns the presence of Indirect Purchaser Plaintiffs.  Pls.' Opp'n at

6    21.  But, to the extent there are Plaintiffs who purchased *CRTs* directly from Defendants, such

7    Plaintiffs would have suffered more "direct harm" due to their participation in the allegedly

8    restrained CRT market.

9    **IV.   PLAINTIFFS' OPPOSITION UNDERSCORES THAT THEIR
         COMPLAINT FAILS TO SUFFICIENTLY PLEAD FRAUDULENT**

10   **CONCEALMENT AND MUST BE DISMISSED AS TIME BARRED**

11       **A.   Despite Plaintiffs' Concession That They Are Required To Plead
              Fraudulent Concealment With Particularity, Plaintiffs Have Not**

12

13           Plaintiffs concede that to sufficiently plead fraudulent concealment the

14   "'circumstances constituting fraud' must be pled with particularity."  Pls.' Opp'n at 23 (citing

15   Fed. R. Civ. P. 9(b)).[17]  Plaintiffs also admit that the DP-CAC attempts to assert fraudulent

16   concealment only generally, and only against an undifferentiated collective of "Defendants."

17   Pls.' Opp'n at 25-26.  Plaintiffs purport to excuse this, relying on a pre-*Twombly* and pre-*Iqbal*

18   Central District case observing that "[t]he requirements of Rule 9(b) must be read in harmony

19   of Rule 8" and "should not be overdone."  *Thomas & Thomas Rodmakers, Inc. v. Newport*

20   *Adhesives and Composites, Inc.*, Case No. CV 99-07796 GHK, at 6-7 (C.D. Cal. Jan. 13, 2000)

21   (Saveri Decl. in Supp. of Pls.' Opp'n, Ex. 2).  Thus, Plaintiffs disregard binding Ninth Circuit

22   law that "a statute of limitations may be tolled only if the plaintiff establishes affirmative

23   conduct upon the part of *the defendant* . . . .  Plaintiffs may not generally use the fraudulent

24   concealment by one defendant as a means to toll the statute of limitations against other

25   _____

26   2007) ("antitrust standing is a threshold, pleading-stage inquiry").

27   [17] "Conclusory statements are not enough.  [Plaintiff] must plead with particularity the
     circumstances of the concealment and the facts supporting due diligence."  *Conmar Corp. v.
     Mitsui & Co. (U.S.A.), Inc.*, 858 F.2d 499, 502 (9th Cir. 1988).

28                                                                                          19

     ─────────────────────────────────────────────────────────────────
     DEFENDANTS' JOINT REPLY BRIEF IN SUPPORT                    MDL No. 1917
     OF THEIR MOTION TO DISMISS THE DP-CAC

1    defendants." *Barker v. Am. Mobil Power Corp.*, 64 F.3d 1397, 1402 (9th Cir. 1995) (internal

2    citation and quotation marks omitted); *see also In re Milk Prods. Antitrust Litig.*, 84 F. Supp.

3    2d 1016, 1022-26 (D. Minn. 1997).[18]  And, Plaintiffs further ignore that *Twombly*, *Iqbal* and

4    *Kendall* require Plaintiffs to set forth separate factual allegations to give each and every named

5    Defendant proper notice of who did what to whom, when and where.  Defs.' Mot. to Dismiss

6    DP-CAC at 29 (citing *Twombly*, 550 U.S. at 565).  Under Plaintiffs' erroneous view of a

7    relaxed pleading standard for fraudulent concealment, Plaintiffs would set their *heightened* bar

8    under Rule 9(b) *even lower* than the *Twombly*, *Iqbal* and *Kendall* pleading requirements of

9    Rule 8, turning those cases on their heads.[19]

10                    Plaintiffs' reliance on *Baggett v. Hewlett-Packard Co.*, 582 F. Supp. 2d 1261

11   (C.D. Cal. 2007) illustrates their error.  Pls.' Opp'n at 23.  In *Baggett*, the plaintiff claimed that

12   defendant Hewlett-Packard (not a group of defendants lumped together) fraudulently

13   concealed the fact that printer cartridges still contained ink when its printers flashed an

14   "empty" signal and ceased functioning.  *Id*. at 1267.   The court held that allegations of

15   fraudulent concealment, "must meet the heightened pleading standards of Rule 9(b), which

16   requires 'specificity including an account of the *time, place, and specific content* of the false

17   representations as well as the *identities of the parties* to the misrepresentations.'"  *Id*. (citing

18   *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (emphasis added)).[20]  In *Baggett*, the

19   plaintiff alleged *who* fraudulently concealed information (Hewlett-Packard); *what* the

---

[18] Plaintiffs themselves acknowledge that a "plaintiff must allege . . . that *the defendant* engaged in affirmative acts."  Pls.' Opp'n at 22 (emphasis added); *accord Rutledge v. Boston Woven Hose & Rubber Co.*, 576 F.2d 248, 250 (9th Cir. 1978).

[19] Plaintiffs suggest that it is inappropriate to resolve allegations of fraudulent concealment at the motion to dismiss stage.  Pls.' Opp'n at 22.  To the contrary, it is completely appropriate to dismiss allegations of fraudulent concealment on a motion to dismiss where, as here, "the time bar is apparent on the face of the complaint."  *In re Static Random Access Memory (SRAM) Antitrust Litig*., 580 F. Supp. 2d 896, 904 (N.D. Cal. 2008) (internal quotation marks omitted); *accord Rutledge*, 576 F.2d at 250 (dismissing complaint that failed to properly plead fraudulent concealment).

[20] Thus, Plaintiffs' assertion that *Vess v. Ciba-Geigy Corp USA.*, 317 F.3d 1097 (9th Cir. 2003), is inapposite is without merit.  Pls.' Opp'n at 23 n.8.  Plaintiffs' own authority, *Baggett*,

---

20

1    concealed information was (ink was left in the cartridge); and *when* the information was

2    withheld (when the printer displayed an empty signal).  Plaintiffs here fail to plead *any* of the

3    requisite *who, what, when,* and *where* details, let alone distinguish among members of a

4    corporate family of "Defendants."[21]

5            1.     **Plaintiffs' Claim That Their Complaint Alleges**
              **Affirmative Acts Is Unavailing, As The DP-CAC Is Devoid Of**
6             **_Any_ Allegations Of Affirmative Concealment By _Any_ Defendant**

7                   Plaintiffs claim that they allege several acts of affirmative conduct by "the

8    Defendants," citing to the attendance at "Glass Meetings" by "Defendants"; instructions to

9    "Defendants" not to take minutes; the participation of "Defendants" in telephone

10   conversations or in-person meetings; and attendance by "Defendants" at various trade

11   association meetings.  Pls.' Opp'n at 25-26.  None of these allegations are acts of active

12   concealment by any Defendant.  *Conmar*, 858 F.2d at 502.  In fact, these allegations are

13   *identical* to the facts insufficiently pled by Plaintiffs in support of their claimed conspiracy

14   (DP-CAC ¶¶ 134-99) and they do *not* allege specific, separate acts to *conceal* the purported

15   conspiracy, as is required.  Nor do they satisfy *Barker*'s rule that allegations as to one

16   defendant do not state fraudulent concealment by any other defendants.  64 F.3d at 1402.[22]

17

18

19   ─────────────────
     specifically acknowledges that plaintiffs must allege the who, what, where, and when of an
20   alleged fraudulent concealment.  582 F. Supp. 2d at 1267.

21   [21] In attempting to plead a conspiracy under Rule 8 and *Twombly*, Plaintiffs impermissibly
     lump together groups of Defendants, *e.g.*, "Hitachi," "Samsung."  Yet, under their heightened
22   pleading burden of Rule 9(b), Plaintiffs do not even attempt to distinguish among subgroups of
     Defendants, lumping all 48 Defendants together as a single group.

23   [22] Plaintiffs claim that *In re Conseco Ins. Co. Annuity Marketing & Sales Practices Litigation*,
     No. C-05-04726 RMW, 2008 WL 4544441 (N.D. Cal. Sept. 30, 2008), allows them to allege
24   acts of fraudulent concealment generally against the entire group of Defendants.  Pls.' Opp'n at
     23.  *Conseco* is easily distinguished, however, as there the plaintiffs not only identified the
25   specific acts of fraudulent concealment (false statements regarding defendants' performance,
     costs, subsidies, cash surrender values, liquidity and investment safety), but also how *each*
26   defendant's specific role in the underlying conspiracy was directly related to the publication of
     these false statements.  2008 WL 4544441 at *9.  Here, Plaintiffs not only fail to allege what
27   the specific acts of concealment *are*, but also any specific role any single Defendant played in
     making or contributing to them.

28                                                                                              21

     ───────────────────────────────────────────────────────────
     DEFENDANTS' JOINT REPLY BRIEF IN SUPPORT                          MDL No. 1917
     OF THEIR MOTION TO DISMISS THE DP-CAC

*E.W. French & Sons, Inc. v. General Portland, Inc.*, 885 F.2d 1392 (9th Cir. 1989), relied upon by Plaintiffs, is not a pleading case.  Nevertheless, it underscores what Plaintiffs have failed to do in the DP-CAC:  plead acts separate from the underlying asserted conspiracy against each Defendant, such as defendant General Portland's explicit denial of price-fixing and its use of plain-white envelopes to distribute pricing information.  Those were separate actions of defendant General Portland (not multiple defendants lumped together) to *conceal* the existence of the conspiracy, as distinguished from the underlying conspiratorial conduct.  Likewise in *Conmar*, the complaint alleged the *who*, *what* and *when* of acts of concealment where the plaintiff pled that defendant Mitsui (again, not multiple defendants lumped together) filed custom documents falsely reporting prices of the relevant product.  858 F.2d at 505.  Plaintiffs' allegations of fraudulent concealment in the DP-CAC provide no such detail and no allegation at all against any single Defendant.  Instead, the DP-CAC only conclusorily alleges the occurrence of "Glass Meetings" attended by an unspecified number of unidentified "Defendants" "after 2000," and that "Defendants" were told not to take minutes or engage in telephone conversations.  Pls.' Opp'n at 25-26.  Plaintiffs do not allege which Defendants attended these meetings, which Defendants participated in these telephone conversations or what was discussed, or even which Defendants instructed which others to refrain from taking notes at the alleged meetings and which Defendants did so.

### 2.      Even The Lone Pre-Textual Statement Offered by Plaintiffs Is Not Attributed to Any Defendant

Plaintiffs also fail to allege any pretextual justifications asserted by any single Defendant to cover-up the alleged conspiracy.  Alleging that Defendants agreed "on what to say about price changes or output restrictions to their customers in order to conceal their conspiracy" or "to give pretextual reasons for price increases and output reductions" (DP-CAC ¶¶ 148, 206), without providing any details regarding which Defendant or Defendants actually said *what* or *when* these statements were made, does not suffice to meet the heightened pleading standard of Rule 9(b).  *See Conmar*, 858 F.2d at 502.

DEFENDANTS' JOINT REPLY BRIEF IN SUPPORT                                          MDL No. 1917
OF THEIR MOTION TO DISMISS THE DP-CAC

1    Plaintiffs cite as a "pretext" for price increases a statement in a CNET
2  News.com article regarding a "shortage of critical components such as glass" and, without
3  attribution at all, "that this price stabilization was purportedly due exclusively to a shortage of
4  critical components such as glass." DP-CAC ¶ 191. Plaintiffs do not allege that the statements
5  were false and Plaintiffs fail to attribute the statements to any *Defendant*.

6    Plaintiffs also allege that "in justifying this price increase, a Deputy General
7  Manager for an LG Electronics *distributor* in India stated, '[t]his shortage [of glass shells] is a
8  global phenomena and every company has to increase the prices of CRT monitors in due
9  course of time.'"[23]  DP-CAC ¶ 209. But this supposedly pretextual statement is attributed not
10 to *any* of the *Defendants*, but to a non-Defendant third party, an unnamed *distributor* of LG
11 Electronics CRT monitors. As such, it is completely irrelevant to any claim of fraudulent
12 concealment. *See, e.g.*, *Kuntze v. Carrane*, No. 91-C-6145, 1993 WL 85732, at *7 (N.D. Ill.
13 Mar. 22, 1993) (fraudulent concealment rule is limited to the conduct of the defendants).

14   **B.    Despite Their Attempts To Recast Their Allegations,**
         **Plaintiffs Have Admitted Facts In Their Complaint**
15       **That Put Them On Notice Of Their Claims Years Ago**

16   While Plaintiffs' failure to properly plead fraudulent concealment is fatal to
17 their claims arising from sales before November 26, 2003, they have also admitted facts that
18 put them on notice of such claims well before the filing of the first complaint. In their
19 Opposition, Plaintiffs argue they were not on notice because only "apparently normal market
20 events" were known to them prior to 2007 when the first public announcements of the
21 government's investigation in the CRT industry were made. DP-CAC ¶ 200; *see* Pls.' Opp'n
22 at 31. Plaintiffs' argument is contradicted by their complaint allegations, which itemize
23 numerous facts the Plaintiffs characterize in the DP-CAC as *abnormal* market conditions

24
25
_____
26 [23] If anything, Plaintiffs' admission that a third party, which is unrelated to any of the alleged
   conspirators and not alleged itself to be a conspirator, was the source of these statements is
27 evidence suggesting that the alleged conspiracy, to the extent one existed, was not fraudulently
   concealed.
28

DEFENDANTS' JOINT REPLY BRIEF IN SUPPORT                          MDL No. 1917
OF THEIR MOTION TO DISMISS THE DP-CAC

1   indicative of a conspiracy among Defendants.[24]   For example, Plaintiffs allege, citing

2   information available to them from the *1990s*, that the "oligopolistic nature of the CRT

3   industry" was conducive to collusion, that there were various "examples of collusive pricing

4   for CRT products," and "unusual price movements in the CRT market."  DP-CAC ¶¶ 112-21,

5   188-97.  Plaintiffs rely upon these allegations to support their conspiracy claim and they assert

6   in the DP-CAC that these allegations are "fundamentally inconsistent with a competitive

7   market."  *Arch Elecs. et al. v. LG Elecs., Inc. et al.*, filed Nov. 29, 2007, Complaint at ¶ 76.

8   Plaintiffs' disingenuous attempt to now dismiss the very *same* allegations as normal market

9   events should be disregarded.[25]

### C.   Plaintiffs Concede They Have Failed To Plead Due Diligence, Barring Them From Tolling The Statute Of Limitations

12             Finally, even if Plaintiffs had properly pled fraudulent concealment (they have

13   not), Plaintiffs concede that they did not diligently pursue further information, as is required.

14   Pls.' Opp'n at 32.  Instead, Plaintiffs conclusorily assert only that "Defendants' price-fixing

15   conspiracy was inherently self-concealing."  DP-CAC ¶ 203.  The Ninth Circuit, however,

16   "require[s] more."  *Conmar*, 858 F.2d at 505; *see Rutledge*, 576 F.2d at 250 (plaintiffs could

17   not rely "upon conclusory statements [regarding due diligence] to avoid the bar of

18   limitations.").  Indeed, Plaintiffs concede that due diligence is required when "facts exist that

19   would excite the inquiry of a reasonable person" (Pls.' Opp'n at 32), but Plaintiffs fail to

20   explain why the facts alleged in the DP-CAC as evidence of an abnormal conspiratorial market

---

[24] Contrary to Plaintiffs' facile assertion, Plaintiffs' admissions in their Complaint that they had constructive notice of facts that should have reasonably excited their inquiry do not undermine the fact that their Complaint is defective under Rule 8 and *Twombly*.  The principal Rule 8 defects in the complaint concern a failure to plausibly allege a conspiracy as to *Finished Products* or as to specific individual Defendants.

[25] Plaintiffs seem to interpret the fraudulent concealment standard to be that because they, personally, did not learn of these facts at the time, the alleged conspiracy, *ipso facto*, must have been fraudulently concealed.  Plaintiffs' argument has no basis whatsoever in the law of this Circuit or of any other court.

1   (DP-CAC ¶¶ 112-21, 188-97) did not excite Plaintiffs at least to investigate whether they had

2   potential claims.

3          Thus, for Defendants named in the first complaint filed on November 26, 2007,

4   Plaintiffs' claims must be limited to sales since November 26, 2003, and for later named

5   Defendants, to their sales in the four year period prior to being named.

6                                    **<u>CONCLUSION</u>**

7          For all of the reasons stated above, and those set forth in Defendants' opening

8   brief, the DP-CAC should be dismissed in its entirety.

9

10  DATED: September 24, 2009          By:   ___/s/ Jeffrey L. Kessler___
                                       JEFFREY L. KESSLER (*pro hac vice*)
11                                     Email: jkessler@dl.com
                                       A. PAUL VICTOR (*pro hac vice*)
12                                     Email: pvictor@dl.com
                                       EVA W. COLE (*pro hac vice*)
13                                     Email : ecole@dl.com
                                       **DEWEY & LEBOEUF LLP**
14                                     1301 Avenue of the Americas
                                       New York, New York 10019
15                                     Telephone: (212) 259-8000
                                       Facsimile: (212) 259-7013
16

17                                     PETER ROOT (142348)
                                       Email: proot@dl.com
18                                     **DEWEY & LEBOEUF LLP**
                                       1950 University Avenue
19                                     East Palo Alto, California 94303
                                       Telephone: (650) 845-7000
20                                     Facsimile: (650) 845-7333
21

22                                     STEVEN A. REISS (*pro hac vice*)
                                       Email: steven.reiss@weil.com
23                                     DAVID L. YOHAI (*pro hac vice*)
                                       Email: david.yohai@weil.com
24                                     DAVID E. YOLKUT (*pro hac vice*)
                                       Email: david.yolkut@weil.com
25                                     **WEIL, GOTSHAL & MANGES LLP**
                                       767 Fifth Avenue
26                                     New York, New York 10153-0119
                                       Telephone:  (212) 310-8000
27

28
                                                                                  25

1                          Facsimile:  (212) 310-8007

2                          GREGORY D. HULL (57367)

3                          Email: greg.hull@weil.com
JOSEPH R. WETZEL (238008)

4                          Email: joseph.wetzel@weil.com
**WEIL, GOTSHAL & MANGES LLP**

5                          201 Redwood Shores Parkway

6                          Redwood Shores, California 94065-1175
Telephone: (650) 802-3000

7                          Facsimile: (650) 802-3100

8                          *Attorneys for Defendants Panasonic*

9                          *Corporation of North America, MT Picture*
*Display Co., Ltd., Panasonic Corporation (f/k/a*

10                        *Matsushita Electric Industrial Co.)*

11                        By: ___/s/ Gary L. Halling___

12                        GARY L. HALLING (66087)
ghalling@sheppardmullin.com

13                        JAMES L. MCGINNIS (95788)
jmcginnis@sheppardmullin.com

14                        MICHAEL SCARBOROUGH (203524)

15                        mscarborough@sheppardmullin.com
**SHEPPARD, MULLIN, RICHTER &**

16                        **HAMPTON LLP**
Four Embarcadero Center, 17th Floor

17                        San Francisco, California 94111-4109
Telephone: (415)-434-9100

18                        Facsimile: (415)-434-3947

19                        *Attorneys for Defendants Samsung SDI*

20                        *America, Inc., Samsung SDI Co., Ltd.,*
*Samsung SDI (Malaysia) Sdn. Bhd., Samsung*

21                        *SDI Mexico S.A. de C.V., Samsung SDI Brasil*

22                        *Ltda., Shenzhen Samsung SDI Co. Ltd., and*
*Tianjin Samsung SDI Co., Ltd.*

23

24                        By: ___/s/ Michael Tubach___

25                        MICHAEL TUBACH (145955)
Email: mtubach@omm.com

26                        **O'MELVENY & MYERS LLP**
Two Embarcadero Center, 28th Floor

27                        San Francisco, California 94111-3823
Telephone: (415) 984-8876

28

26

Facsimile: (415) 984-8701

By: ____/s/ Ian Simmons____
IAN SIMMONS (*pro hac vice*)
Email : isimmons@omm.com
**O'MELVENY & MYERS LLP**
1625 Eye Street, NW
Washington, DC 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414

*Attorneys for Defendants Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc.*

By: ____/s/ Samuel Miller____
SAMUEL R. MILLER (66871)
Email: srmiller@sidley.com
MARIE L. FIALA (79676)
Email: mfiala@sidley.com
RYAN M. SANDROCK (251781)
Email: rsandrock@sidley.com
ROBERT B. MARTIN, III (235489)
rbmartin@sidley.com
**SIDLEY AUSTIN LLP**
555 California Street, 20th Floor
San Francisco, California 94104
Telephone : (415) 772-1200
Facsimile: (415) 772-7400

*Attorneys for Defendants LG Electronics, Inc., LG Electronics USA, Inc., and LG Electronics Taiwan Taipei Co., Ltd.*

By: ____/s/ Ethan E. Litwin____
ETHAN E. LITWIN   (*pro hac vice*)
Email: LitwinE@howrey.com
**HOWREY LLP**
601 Lexington Avenue, 54th Floor
New York, New York 10022
Telephone: (212) 896-6500
Facsimile: (212) 896-6501

By: ____/s/ John Taladay____
JOHN TALADAY (*pro hac vice*)

27

Email: TaladayJ@howrey.com
**HOWREY LLP**
1299 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2402
Telephone: (202) 783-0800
Facsimile: (202) 383-6610

*Attorneys for Defendant Philips Electronics*
*North America Corporation, Koninklijke*
*Philips Electronics N.V., Philips Electronics*
*Industries Ltd., Philips Consumer Electronics*
*Co., Philips Electronics Industries (Taiwan),*
*Ltd., and Philips da Amazonia Industria*
*Electronica Ltda.*

By: /s/ Bruce H. Jackson
BRUCE H. JACKSON (98118)
Email:  bruce.h.jackson@bakernet.com)
ROBERT W. TARUN (64881)
Email:  robert.w.tarun@bakernet.com
**BAKER & MCKENZIE LLP**
Two Embarcadero Center, 11th Floor
San Francisco, California 94111-3802
Telephone:   (415) 576-3000
Facsimile:    (415) 576-3099

PATRICK J. AHERN (*pro hac vice*)
Email:  patrick.j.ahern@bakernet.com
ROXANE C. BUSEY (*pro hac vice*)
Email:  roxane.c.busey@bakernet.com
KAREN SEWELL (*pro hac vice*)
Email:  karen.sewell@bakernet.com
**BAKER & MCKENZIE LLP**
130 E. Randolph Dr., Suite 3500
Chicago, Illinois 60601
Telephone:   (312) 861-8000

*Attorneys for Tatung Company of America,*
*Inc.*

By: /s/ Kent M. Roger
KENT M. ROGER (95987)
Email:  kroger@morganlewis.com
MICHELLE PARK CHIU (248421)

28

Email:  mchiu@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
One Market, Spear Street Tower
San Francisco, California 94105-1126
Telephone: (415) 442-1000
Facsimile: (415) 442-1001

*Attorneys for Defendants Hitachi, Ltd., Hitachi*
*Asia, Ltd., Hitachi America, Ltd., Hitachi*
*Electronic Devices (USA), Inc., and Hitachi*
*Displays, Ltd.*


By: /s/ Terry Calvani
TERRY CALVANI (53260)
Email: terry.calvani@freshfields.com
BRUCE C. MCCULLOCH (*pro hac vice*)
Email: bruce.mcculloch@freshfields.com
CHRISTINE A. LACIAK (*pro hac vice*)
Email: christine.laciak@freshfields.com
**FRESHFIELDS BRUCKHAUS DERINGER**
**US LLP**
701 Pennsylvania Avenue, N.W.
Suite 600
Washington, DC  20004
Telephone:  (202) 777-4500
Facsimile:  (202) 777-4555

*Attorneys for Defendant Beijing Matsushita*
*Color CRT Company, Ltd.*


By: /s/ George L. Paul
CHRISTOPHER M. CURRAN (*pro hac vice*)
Email:  ccurran@whitecase.com
GEORGE L. PAUL (*pro hac vice*)
Email:  gpaul@whitecase.com
LUCIUS B. LAU (*pro hac vice*)
Email:  alau@whitecase.com
**WHITE & CASE LLP**
701 Thirteenth Street, N.W.
Washington, DC  20005
Telephone: (202) 626-3600
Facsimile: (202) 639-9355

*Attorneys for Defendants Toshiba Corporation,*
*Toshiba America Electronic Components, Inc.,*

29

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Toshiba America Information Systems, Inc.,*
*Toshiba America, Inc., and Toshiba America*
*Consumer Products, L.L.C.*


By: /s/ Terrence A. Callan
TERRENCE A. CALLAN (36305)
Email:  terrence.callan@pillsburylaw.com
**PILLSBURY WINTHROP SHAW**
**PITTMAN LLP**
50 Fremont Street
P.O. Box 7880
San Francisco, California 94120-7880
Telephone:   (415) 983-1000
Facsimile:    (415) 983-1200

JOSEPH R. TIFFANY II (67821)
Email:  joseph.tiffany@pillsburylaw.com
PHILIP A. SIMPKINS (246635)
Email:  philip.simpkins@pillsburylaw.com
**PILLSBURY WINTHROP SHAW**
**PITTMAN LLP**
2475 Hanover Street
Palo Alto, California 94304-1114
Telephone:   (650) 233-4500
Facsimile:    (650) 233-4545

*Attorneys for Irico Group Corporation and*
*Irico Display Devices Co., Ltd.*


By: /s/ William Diaz
WILLIAM DIAZ (232297)
Email:  wdiaz@mwe.com
**MCDERMOTT WILL & EMERY**
18191 Von Karman Avenue
Suite 500
Irvine, California 92612-7108
Telephone:   (949) 851-0633
Facsimile:    (949) 851-9348

*Attorneys for Samtel Color, Ltd.*


        Pursuant to General Order No. 45, § X-B, the filer attests that concurrence in

the filing of this document has been obtained from each of the above signatories.

30