GREGORY D. HULL (57367)
Email: greg.hull@weil.com
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, California 94065-1175
Telephone: (650) 802-3000
Facsimile: (650) 802-3100

STEVEN A. REISS (*Admitted Pro Hac Vice*)
Email: steven.reiss@weil.com
DAVID L. YOHAI (*Admitted Pro Hac Vice*)
Email: david.yohai@weil.com
DAVID E. YOLKUT (*Admitted Pro Hac Vice*)
Email: david.yolkut@weil.com
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153-0119
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

JEFFREY L. KESSLER (*Admitted Pro Hac Vice*)
Email: jkessler@dl.com
A. PAUL VICTOR (*Admitted Pro Hac Vice*)
Email: pvictor@dl.com
EVA W. COLE (*Admitted Pro Hac Vice*)
Email: ecole@dl.com
DEWEY & LEBOEUF LLP
1301 Avenue of the Americas
New York, NY 10019
Telephone: (212) 259-8000
Facsimile: (212) 259-7013

**Attorneys for Defendants Panasonic Corporation (f/k/a Matsushita Electric Industrial Co., Ltd.) and Panasonic Corporation of North America**

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **In Re CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION** | No. 07-5944-SC—MDL No. 1917 |
| | **REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS PANASONIC CORP. AND PANASONIC CORP. OF NORTH AMERICA'S MOTION TO DISMISS DIRECT AND INDIRECT PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINTS** |
| This Document Relates to: | |
| ALL ACTIONS | |
| | Date: October 5, 2009, 9:00 a.m. |
| | Place: JAMS Resolution Center |
| | Special Master: Hon. Charles A. Legge |

Reply Memorandum of Law in Support of
Panasonic Corp.'s and PNA's Motion to Dismiss
Plaintiffs' Consolidated Amended Complaints

Case No. 07-5944-SC
MDL No. 1917

1

**TABLE OF CONTENTS**

2

**Page**

3

4     INTRODUCTION ..............................................................................................................1

5     I.      PLAINTIFFS HAVE FAILED TO PLAUSIBLY ALLEGE THAT PNA
              PARTICIPATED IN THE ALLEGED CONSPIRACY ..................................................3

6

7              A.      Direct Purchaser Plaintiffs' Vague Allegations Against PNA Are Insufficient....3

               B.      Indirect Purchaser Plaintiffs' Vague Allegations Against PNA Also Fail ..........5

8

9     II.     PLAINTIFFS HAVE FAILED TO JUSTIFY THEIR IMPLAUSIBLE AND
              CONCLUSORY ALLEGATIONS AGAINST PANASONIC CORP. ..........................6

10             A.      Direct Purchaser Plaintiffs' Allegations Do Not Demonstrate Plausible
                       Participation By Panasonic Corp. In Any Alleged Conspiracy...........................6

11

12             B.      Indirect Purchaser Plaintiffs' Vague Allegations Fail to State A Claim Against
                       Panasonic Corp. ...............................................................................................8

13    III.    PLAINTIFFS CANNOT RESORT TO "LUMPING" PNA AND
              PANASONIC CORP. TOGETHER WITH OTHER DEFENDANTS ..........................10

14

15             A.      Direct Purchaser Plaintiffs Are Incorrect That They Need Not Allege That Each
                       Defendant Joined And Participated In The Alleged Conspiracy.......................10

16             B.      Indirect Purchaser Plaintiffs' "Lumping" Arguments Are Equally Spurious.....13

17    CONCLUSION...............................................................................................................16

18

19

20

21

22

23

24

25

26

27

28

Reply Memorandum of Law in Support of
Panasonic Corp.'s and PNA's Motion to Dismiss
Plaintiffs' Consolidated Amended Complaints                    i                    Case No. 07-5944-SC
                                                                                   MDL No. 1917

# TABLE OF AUTHORITIES

Page

*Abbyy USA Software House, Inc. v. Nuance Commc'ns Inc.*,
    No. 08-01035 JSW, 2008 WL 4830740 (N.D. Cal. Nov. 6, 2008) ...................................... 9

*Am. Nat'l Red Cross v. United Way Cal. Capital Region*,
    No. 07-1236, 2007 WL 4522967 (E.D. Cal. Dec. 19, 2007) ............................................ 14

*Asahi Glass Co. v. Pentech Pharmaceuticals, Inc.*,
    289 F. Supp. 2d 986 (N.D. Ill. 2003) .................................................................................. 4

*Ashcroft v. Iqbal*,
    129 S. Ct. 1937 (2009) .......................................................................................... *passim*

*Atuahene v. City of Hartford*,
    10 Fed. Appx. 33 (2d Cir. 2001) ...................................................................................... 12

*In re ATM Fee Antitrust Litig.*,
    No. 04-02676 CRB, 2009 U.S. Dist. LEXIS 83199 (N.D. Cal. Sept. 4, 2009) ......... 2, 10-12

*Bell Atlantic Corp. vs. Twombly*,
    550 U.S. 544 (2007) .............................................................................................. *passim*

*Beltz Travel Serv., Inc. v. Int'l Air Transport Ass'n*,
    620 F.2d 1360 (9th Cir. 1980) .......................................................................................... 14

*Berry v. Indianapolis Life Ins. Co.*,
    No. 3:08-CV-0248-B, 2009 WL 636531 (N.D. Tex. Mar. 11, 2009) ............................. 8, 9

*Brennan v. Concord EFS, Inc.*,
    369 F. Supp. 2d 1127 (N.D. Cal. 2005) .................................................................. 2, 11-12

*Brunson Commc'ns, Inc. v. Arbitron*,
    239 F. Supp. 2d 550 (E.D. Pa. 2002) ................................................................................. 5

*In re Bulk Popcorn Antitrust Litig.*,
    783 F. Supp. 1194 (D. Minn. 1991) .................................................................................. 14

*Continental Ore Co. v. Union Carbide & Carbon Corp.*,
    370 U.S. 690 (1962) .......................................................................................................... 14

*Copperweld Corp. v. Independence Tube Corp.*,
    467 U.S. 752 (1984) ............................................................................................................ 9

Reply Memorandum of Law in Support of
Panasonic Corp.'s and PNA's Motion to Dismiss
Plaintiffs' Consolidated Amended Complaints

ii

Case No. 07-5944-SC
MDL No. 1917

*In re Coupon Clearing Serv., Inc.,*
    113 F.3d 1091 (9th Cir. 1997).........................................................................................14

*In re Digital Music Antitrust Litig.,*
    592 F. Supp. 2d 435 (S.D.N.Y. 2008) ..............................................................................9

*In re Elec. Carbon Prods. Antitrust Litig.,*
    333 F. Supp. 2d 303 (D.N.J. 2004)..................................................................................10

*In re Elevator Antitrust Litig.,*
    502 F.3d 47 (2d Cir. 2007)................................................................................................4

*In re Fine Paper Antitrust Litig.,*
    685 F.2d 810 (3d Cir. 1982).......................................................................................13-14

*In re Flash Memory Antitrust Litig.,*
    No. C-07-0086 SBA, 2009 WL 1096602 (N.D. Cal., Mar. 31, 2009) ...........................13

*Hunt v. Mobil Oil Corp.,*
    465 F. Supp. 195 (S.D.N.Y. 1978) ...................................................................................6

*Jung v. Ass'n of Am. Med. Colls.,*
    300 F. Supp. 2d 119 (D.D.C. 2004) ......................................................................2, 10, 12

*Kendall v. Visa U.S.A., Inc.,*
    518 F.3d 1042 (9th Cir. 2008).................................................................................*passim*

*Kline v. Coldwell, Banker & Co.,*
    508 F.2d 226 (9th Cir. 1974).............................................................................................6

*In re Late Fee and Over-Limit Fee Litig.,*
    528 F. Supp. 2d 953 (N.D. Cal. 2007)..............................................................................8

*Monaco v. Liberty Life Assurance Co.,*
    No. C06-07021 MJJ, 2007 WL 420139 (N.D. Cal. Feb. 6, 2007)..............................13-14

*Mountain View Pharmacy v. Abbott Labs.,*
    630 F.2d 1383 (10th Cir. 1980).......................................................................................12

*Murphy Tugboat Co. v. Shipowners & Merchants Towboat Co., Ltd.,*
    467 F. Supp. 841 (N.D. Cal. 1979), *aff'd* 658 F.2d 1256 (9th Cir. 1981) ..........................7

*In re Nasdaq Market-Makers Antitrust Litig.,*
    894 F. Supp. 703 (S.D.N.Y. 1995)..................................................................................13

*In re New Motor Vehicles Canadian Export Antitrust Litig.,*
    307 F. Supp. 2d 145 (D. Me. 2004).................................................................................13

Reply Memorandum of Law in Support of
Panasonic Corp.'s and PNA's Motion to Dismiss                iii                Case No. 07-5944-SC
Plaintiffs' Consolidated Amended Complaints                                         MDL No. 1917

*In re OSB Antitrust Litig.*,
 No. 06-826, 2007 WL 2253419 (E.D. Pa. Aug. 3, 2007)..............................................3, 12

*In re Rubber Chemicals Antitrust Litig.*,
 504 F. Supp. 2d 777 (N.D. Cal. 2007)..............................................................................12

*In re SRAM Antitrust Litig.*,
 580 F. Supp. 2d 896 (N.D. Cal. Feb. 14, 2008) ..........................................................12-13

*Safeway Stores, Inc. v. FTC*,
 366 F.2d 795 (9th Cir. 1966).............................................................................................14

*In re Sagent Tech., Inc. Derivative Litig.*,
 278 F. Supp. 2d 1079 (N.D. Cal. 2003)........................................................................11-12

*Sherman v. British Leyland Motors, Ltd.*,
 601 F.2d 429 (9th Cir. 1979)...............................................................................................7

*Somerville v. Stryker Orthopaedics*,
 No. 08-02443 JSW, 2009 WL 113369 (N.D. Cal. Jan. 16, 2009) .......................................9

*Suguri v. Wells Fargo Bank, N.A.*,
 No. CV 09-1828 PSG, 2009 WL 2486546 (C.D. Cal. Aug. 7, 2009)................................10

*In re TFT-LCD Antitrust Litig.*,
 586 F. Supp. 2d 1109 (N.D. Cal. 2008).....................................................................10-12, 15

*In re TFT-LCD Antitrust Litig.*,
 599 F. Supp. 2d 1179 (N.D. Cal. 2009)........................................................................13, 15

*Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*,
 552 F.3d 430 (6th Cir. 2008)...............................................................................................9

*White v. Hanson*,
 No. C 05-784 SBA, 2005 WL 1806367 (N.D. Cal. July 28, 2005) ................................5, 9

*Wilk v. American Med. Ass'n*,
 735 F.2d 217 (7th Cir. 1983).............................................................................................14

Reply Memorandum of Law in Support of
Panasonic Corp.'s and PNA's Motion to Dismiss
Plaintiffs' Consolidated Amended Complaints                iv                Case No. 07-5944-SC
                                                                             MDL No. 1917

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## INTRODUCTION

In 268 pages of opposition briefs, the Direct and Indirect Purchaser Plaintiffs have failed to justify their inclusion of either Panasonic Corporation of North America ("PNA") or Panasonic Corporation ("Panasonic Corp.") (together, the "Panasonic Defendants") in the Consolidated Amended Complaints (the "DP-CAC" and "IP-CAC"). A handful of stray references to PNA and Panasonic Corp. – made with no factual specificity whatsoever – do not amount to a "plausible" claim that *these two entities* either joined or participated in any purported conspiracy. Indeed, it was an entirely different Panasonic-related company, MT Picture Display Co., Ltd ("MTPD"), that was engaged in the manufacturing of cathode ray tubes ("CRTs") that are the subject of the Complaints' conspiracy claims during the limitations period. Nor is it sufficient under Rule 8 of the Federal Rules of Civil Procedure to simply "lump" PNA and Panasonic Corp. together among undifferentiated groups of "Defendants"; to implicate them through an undefined "agency" theory based upon mere corporate affiliation; or to cast aspersions on legitimate business conduct (*e.g.*, the closure of a factory or formation of a joint venture). Accordingly, both PNA and Panasonic Corp. should be dismissed from both consolidated actions under the principles articulated in *Bell Atlantic Corp. vs. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009).

In their Opposition briefs, Plaintiffs contend that the alleged conspiracy should be construed to involve both CRTs and "CRT Products" (*e.g.*, finished products such as television sets and computer monitors that incorporate CRTs). *See, e.g.*, Direct Purchaser Plaintiff Opposition ("DP-Opp.") at 106; Indirect Purchaser Plaintiff Opposition ("IP-Opp.") at 18-20. For all the reasons set forth in Defendants' Joint Reply Briefs, incorporated herein by reference, this claim is wholly without merit, as neither Direct nor Indirect Purchaser Plaintiffs have pled a conspiracy involving "Finished Products" (*i.e.*, CRT televisions and computer monitors) with any type of factual specificity; nor could they, as even Plaintiffs recognize that the market for televisions and computer monitors have both been subject to "vigorous price competition." *See* IP-CAC, at ¶ 227. For example, Plaintiffs have made no allegations against, let alone named as Defendants, many of the biggest manufacturers and/or sellers of televisions and computer

Reply Memorandum of Law in Support of
Panasonic Corp.'s and PNA's Motion to Dismiss                1
Plaintiffs' Consolidated Amended Complaints

Case No. 07-5944-SC
MDL No. 1917

monitors competing in these highly competitive markets – such as Sharp, Dell, Hewlett Packard, Sanyo and Sony, among others.  Nor have Plaintiffs alleged that there are any governmental investigations concerning CRT televisions or computer monitors.  Plaintiffs' claimed "Finished Product" "conspiracy" is thus implausible on its face, and this defect is fatal to Plaintiffs' claims against PNA and Panasonic Corp.

Moreover, contrary to the assertions in Plaintiffs' Opposition briefs, *see* DP-Opp. at 40 and IP-Opp. at 27-29, courts in this Circuit and elsewhere have consistently required plaintiffs to sufficiently plead the involvement of *each and every named defendant* in an antitrust conspiracy.[1] *See, e.g., In re ATM Fee Antitrust Litig.*, No. 04-02676 CRB, 2009 U.S. Dist. LEXIS 83199, at * 14 (N.D. Cal. Sept. 4, 2009) (dismissing complaint and requiring "allegations . . . that tie the [parent] holding companies to the alleged conspiracy . . . ."); *Brennan v. Concord EFS, Inc.*, 369 F.Supp. 2d 1127, 1136 (N.D. Cal. 2005) (dismissing complaint against certain defendants because it failed to plead allegations "specifically connecting [those defendants] to the alleged conspiracy"); *Jung v. Ass'n of Am. Med. Colls.*, 300 F.Supp. 2d 119, 163 (D.D.C. 2004) ("Plaintiffs cannot escape their burden of alleging that *each defendant* participated in or agreed to join the conspiracy by using the term 'defendants' to apply to numerous parties without any specific allegations as to [the moving defendant]") (emphasis added).  Indeed, the Ninth Circuit requires Plaintiffs to allege the "who, what, when, where and how" of *each* purported conspirator's involvement.  *See Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1048 (9th Cir. 2008).[2]  As discussed below, the sparse allegations from both sets of Plaintiffs concerning PNA and Panasonic Corp. do not meet these standards.  *See Iqbal*, 129 S.Ct. at 1949-1950.

---

[1] This does not require, as Plaintiffs' straw-man argument would suggest, that Plaintiffs "must plead the specific dates, times, places and individual persons involved for each and every instance of alleged anticompetitive conduct." *See* IP-Opp. at 20.  Rather, Panasonic's Motion insists upon only what Rule 8, *Twombly*, and *Iqbal* require: factual allegations that describe *PNA's and Panasonic Corp.'s* specific role in the alleged conspiracy in order to have fair notice of the claims made against them.

[2] While Indirect Purchaser Plaintiffs purport to have alleged these elements of a CRT conspiracy (IP-Opp. at 7-12), they do not come close to doing so on a defendant-by-defendant basis, as

Reply Memorandum of Law in Support of
Panasonic Corp.'s and PNA's Motion to Dismiss
Plaintiffs' Consolidated Amended Complaints

2

Case No. 07-5944-SC
MDL No. 1917

1

2

## **LEGAL ARGUMENT**

3

## I. PLAINTIFFS HAVE FAILED TO PLAUSIBLY ALLEGE THAT PNA PARTICIPATED IN THE ALLEGED CONSPIRACY

4

5

6

7

8

9

10

11

*Twombly* and its progeny have left no doubt that antitrust plaintiffs must allege a sufficient factual basis for a court to conclude that *each and every named defendant* joined and was a part of a conspiracy.  In fact, both Direct and Indirect Purchaser Plaintiffs acknowledge that a "plaintiff *must* allege that *each individual defendant* joined the conspiracy and played some role in it."  DP-Opp. at 40; IP-Opp. at 29 (citing *In re OSB Antitrust Litig.*, No. 06-826, 2007 WL 2253419 *5 (E.D. Pa. Aug. 3, 2007) (emphasis added).  Further, under *Twombly* and *Iqbal*, plaintiffs must also establish that it is "plausible" that such a conspiracy existed.  Under these two criteria, the allegations concerning PNA in both Complaints must fail.

12

### A. Direct Purchaser Plaintiffs' Vague Allegations Against PNA Are Insufficient

13

14

15

16

17

18

19

20

21

22

23

Direct Purchaser Plaintiffs have failed to set forth any facts to support a claim that PNA participated in any alleged CRT conspiracy.  Specifically, Direct Purchaser Plaintiffs' contention that ¶¶ 144 and 146 of the DP-CAC – which allege that certain foreign meetings included "*consideration* of downstream prices" – somehow implicate PNA, which is not named in either paragraph, is a fiction.  *See* DP-Opp. at 103-104 (emphasis added).  Nothing in either paragraph comes close to alleging the plausible participation of PNA in any conspiratorial activities, such as "coordinated output restrictions."  Moreover, these two paragraphs refer to "Glass Meetings" which allegedly took place overseas and concerned CRT sales for overseas markets, having nothing to do with PNA's sales of televisions to retailers in the U.S. market.  *See, e.g.*, DP-CAC at ¶ 136.  Thus, it is not surprising that there is no indication in the DP-CAC that PNA attended any such meetings.

24

25

26

Instead, Direct Purchaser Plaintiffs rely upon a single, naked allegation in the DP-CAC – which is wholly conclusory and bereft of *any* factual detail – that PNA "was represented in" unnamed and unspecified "illegal meetings and communications" over an eight-year period.  *See*

27

28

evidenced by the fact that PNA, for example, is not mentioned a single time in this portion of the brief.

Reply Memorandum of Law in Support of
Panasonic Corp.'s and PNA's Motion to Dismiss
Plaintiffs' Consolidated Amended Complaints

3

Case No. 07-5944-SC
MDL No. 1917

DP-Opp. at 103-04; DP-CAC, at ¶ 163.  The DP-CAC fails to allege that PNA participated in or attended *any* of these alleged overseas meetings; nor does it explain how or why PNA was purportedly represented at the alleged meetings; or by whom.  Such vague, conclusory assertions do not come close to satisfying the *Twombly* standard.  *See*, *e.g.*, *Twombly*, 550 U.S. at 557; *Kendall*, 518 F.3d at 1048; *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (affirming dismissal of complaint in which the averments were "in entirely general terms without any specification of any particular activities by any particular defendant").

Moreover, Direct Purchaser Plaintiffs make only a half-hearted, and nonsensical, attempt to establish the *plausibility* that PNA – a domestic "seller of televisions" – would have been involved in any meetings related to the overseas sale of CRTs.  *See* DP-Opp. at 103-04.  Direct Purchaser Plaintiffs assert that because Panasonic is a "vertically integrated manufacturer," the alleged conspiratorial meetings "encompassed prices charged by the CRT manufacturing arm . . . to the corporate division or subsidiary that . . . sold computer monitors, televisions or other similar products."  *Id.* at 103 (citing DP-CAC, ¶ 144).  There is no allegation that PNA charged supracompetitive prices for the "CRT Products" that it sold.[3]   Indeed, there are no factual allegations in the DP-CAC to explain why PNA, a company selling finished televisions, would have any plausible economic motive to join an alleged conspiracy to fix higher prices for a component of those televisions, from which it would not benefit.  Thus, the DP-CAC's allegation against PNA fails under *Twombly* and *Iqbal*.  *See Twombly*, 550 U.S. at 558 ("'some threshold of plausibility must be crossed at the outset before a . . . case should be permitted to go into its inevitably costly and protracted discovery phase'") (quoting *Asahi Glass Co. v. Pentech Pharmaceuticals, Inc.*, 289 F.Supp. 2d 986, 995 (N.D. Ill. 2003) (Posner, J., sitting by designation); *Iqbal*, 129 S.Ct. at 1950 ("only a complaint that states a plausible claim for relief

---

[3] The allegation appended to ¶ 144 that "Defendants . . . *considered* the internal pricing of CRT Products" is similarly insufficient to state a claim against PNA.  Vague allegations that "internal prices" for televisions or other unnamed "similar products" were "*considered*" are not the same as allegations that PNA *actually agreed* to fix the prices of, or otherwise restrict competition for, such Finished Products.

Reply Memorandum of Law in Support of
Panasonic Corp.'s and PNA's Motion to Dismiss
Plaintiffs' Consolidated Amended Complaints

4

Case No. 07-5944-SC
MDL No. 1917

survives a motion to dismiss"); *see also Brunson Commc'ns, Inc. v. Arbitron*, 239 F. Supp. 2d 550, 563 (E.D. Pa. 2002) ("Where a defendant had no rational motive to join a conspiracy, and defendant's conduct is as consistent with permissible competition as with illegal conspiracy, the plaintiff's unspecific allegations do not support an inference of antitrust conspiracy").

## B.   Indirect Purchaser Plaintiffs' Vague Allegations Against PNA Also Fail

Similarly, the Indirect Purchaser Plaintiffs decline to elaborate on or otherwise explain PNA's alleged role in the purported conspiracy, or to provide any plausible reason for PNA to have had such a role.  There are only two "substantive" references to PNA in the entirety of Indirect Purchaser Plaintiffs' 150-page opposition brief.  *See* IP-Opp. at 40; 63.  First, Indirect Purchaser Plaintiffs assert that Panasonic Corp. "reported the agreements" allegedly reached at "Top Meetings" to PNA and Matsushita Electronic Corporation (Malaysia) Sdn. Bhd ("MECM"), a defunct entity that has been dismissed from this action.[4]  *Id.* at 40 (citing IP-CAC, at ¶ 182).[5]  However, this vague assertion – that PNA was the recipient of unspecified "reports" – does not come close to meeting the pleading requirements that the Supreme Court has set forth as a prerequisite for subjecting a defendant to costly and burdensome discovery.  *See Twombly*, 550 U.S. at 557.  Second, Indirect Purchaser Plaintiffs mischaracterize their own Complaint in suggesting that they have "allege[d] in some detail that . . . PNA manufactured and sold CRTs until 2002."  IP-Opp. at 63-64.  In fact, the IP-CAC alleges that PNA "manufactured, marketed, sold and/or distributed *CRT Products* (*i.e.,* television sets and computer monitors), either directly or indirectly through its subsidiaries or affiliates, to customers throughout the United States."  IP-

---

[4] Indirect Purchaser Plaintiffs inexplicably state that notwithstanding their agreement to drop MECM from the Complaint, "the allegations regarding [MECM] remain valid."  IP-Opp. at 40 n. 48.

[5] Indirect Purchaser Plaintiffs also assert in their Opposition that PNA then "implemented the pricing  . . . agreed upon."  *Id.*  However, that naked assertion is omitted from the single paragraph of the IP-CAC which specifically references PNA (¶ 182).  Thus, it should be ignored entirely for purposes of this motion, as it is axiomatic that new facts cannot now be interposed into the Complaint.  *See White v. Hanson*, No. C 05-784 SBA, 2005 WL 1806367 *10 n. 12 (N.D. Cal. July 28, 2005).

Reply Memorandum of Law in Support of
Panasonic Corp.'s and PNA's Motion to Dismiss
Plaintiffs' Consolidated Amended Complaints

5

1 | CAC, at ¶ 81 (emphasis added).[6]  Thus, there is no allegation that PNA manufactured CRTs,

2 | whether before 2002 or otherwise.  Even assuming that Indirect Purchaser Plaintiffs made such an

3 | allegation, however, that fact alone would not equate to a plausible basis for a claim that PNA

4 | joined and participated in a CRT *conspiracy*.  *See, e.g.*, *Kline v. Coldwell, Banker & Co.*, 508

5 | F.2d 226, 232 (9th Cir. 1974) (requiring that a defendant "knowingly, intentionally and actively

6 | participated in an individual capacity in the scheme"); *Hunt v. Mobil Oil Corp.*, 465 F.Supp. 195,

7 | 231 (S.D.N.Y. 1978) ("It is black letter law that to hold one as a participant in a conspiracy, he

8 | must by word, deed or conduct intentionally join the illicit enterprise; mere association with

9 | conspirators . . . even coupled with knowledge that wrongful conduct by others is being engaged

10 | in, are not by themselves sufficient").

## II.  PLAINTIFFS HAVE FAILED TO JUSTIFY THEIR IMPLAUSIBLE AND CONCLUSORY ALLEGATIONS AGAINST PANASONIC CORP.

### A.  Direct Purchaser Plaintiffs' Allegations Do Not Demonstrate Plausible Participation By Panasonic Corp. In Any Alleged Conspiracy

As to Panasonic Corp., Direct Purchaser Plaintiffs merely point to their allegation that "Panasonic" participated in various unidentified meetings from 1996 through at least 2003, which took place in "Taiwan, Malaysia, and China."  DP-Opp. at 102 (quoting DP-CAC, at ¶ 162).  This bare averment, however, is not directed at *Panasonic Corp.* (the Japanese parent company)*,* but rather the amorphous entity "Panasonic" – either directly *or through [MECM]*."  DP-CAC, at ¶ 162 (emphasis added).  As discussed at pp. 10-15 below, allegations that "lump" together affiliated corporate entities under a catch-all name are insufficient.  Moreover, there are no facts in the Complaint to indicate that Panasonic Corp. had anything to do with the alleged participation of MECM in any purported conspiratorial meetings, whether by virtue of an undefined and conclusory "agency" theory or otherwise.

While Direct Purchaser Plaintiffs generally discuss informal "group meetings" and formal

---

[6] Indirect Purchaser Plaintiffs also engage in outright distortion in claiming that PNA "admitted" that it sold CRTs "for the majority of the alleged conspiracy period."  IP-Opp. at 64.  To the contrary, PNA clearly stated that "it was the United States sales company that sold finished televisions containing CRTs."  *See* Moving Br. at 2.

Reply Memorandum of Law in Support of
Panasonic Corp.'s and PNA's Motion to Dismiss
Plaintiffs' Consolidated Amended Complaints                6                Case No. 07-5944-SC
                                                                             MDL No. 1917

"Glass Meetings," *none* of the other cited paragraphs specifically references Panasonic Corp. in connection with any such meetings.  *See* DP-Opp. at 102 (citing DP-CAC, at ¶¶ 5, 6, 138, 140-153, 155-168, 170-175).   Indeed, this point is conceded by the Opposition's references to "meetings in which the *Panasonic Defendants* are alleged to have participated."  DP-Opp. at 102 (emphasis added).  Nor is it enough for Direct Purchaser Plaintiffs to broadly and nakedly assert that Panasonic Corp. "dominated and controlled" the activities of its subsidiaries, *see* DP-CAC, ¶¶ 47-49, an allegation divorced from any facts and repeated verbatim against every other corporate parent identified in the Complaint.  *Id.* at ¶¶ 25, 28, 31-32, 35, 38-39, 42-43, 52-56, 59-66, 72-77.

It is well-settled in the Ninth Circuit that a corporate parent – absent specific factual elements, not alleged in the DP-CAC, indicating that a subsidiary is a "mere instrumentality" or "alter ego" of the parent – cannot be held liable for any alleged antitrust violations committed by a subsidiary.  *See, e.g., Sherman v. British Leyland Motors, Ltd.*, 601 F.2d 429, 441 (9th Cir. 1979) (holding that a parent cannot be held liable solely because of a parent-subsidiary relationship); *Murphy Tugboat Co. v. Shipowners & Merchants Towboat Co., Ltd.*, 467 F.Supp. 841, 854 (N.D. Cal. 1979), *aff'd* 658 F.2d 1256 (9th Cir. 1981) ("[A] parent corporation is not liable for its subsidiaries' acts simply because the parent owns all the stock of the subsidiaries and shares common officers and directors.").  Direct Purchaser Plaintiffs' bare allegation of purported domination and control is insufficient to plead an alter-ego claim.

Grasping at straws, Direct Purchaser Plaintiffs attempt to taint legitimate business activities, such as Panasonic's public announcement that MTPD closed a factory, or the creation of a joint venture.  *See* DP-Opp. at 104 (citing DP-CAC, at ¶ 79 and ¶ 183).   None of these allegations come close to supporting a plausible claim that Panasonic Corp. joined or participated in any purported CRT conspiracy.  As the *Twombly* Court itself recognized, normal business activities, such as reductions in manufacturing capacity by "Defendants" (DP-CAC, at ¶ 181), without more, are equally consistent "with a wide swath of rational and competitive business

Reply Memorandum of Law in Support of
Panasonic Corp.'s and PNA's Motion to Dismiss
Plaintiffs' Consolidated Amended Complaints                          7                          Case No. 07-5944-SC
MDL No. 1917

strateg[ies] unilaterally prompted by common perceptions of the market." 550 U.S. at 554; *see also Iqbal*, 129 S.Ct. at 1949.

### B. Indirect Purchaser Plaintiffs' Vague Allegations Fail to State A Claim Against Panasonic Corp.

Indirect Purchaser Plaintiffs claim that after 2003, the amorphous entity "Panasonic" allegedly participated in the conspiracy "through" its joint venture MTPD, and that until 2003, that same amorphous entity "Panasonic" allegedly participated in the conspiracy through the alleged attendance of unnamed "high level executives" from Panasonic Corp. or the defunct entity MECM at an unidentified number of so-called "Top Meetings" (a subset of the so-called "Glass Meetings"). *See* IP-Opp. at 40 (citing ¶¶ 146, 181, 183). These conclusory allegations are plagued by vagueness and lack of specificity. In fact, none of the paragraphs in the IP-CAC which discuss the "Top Meetings" or "Glass Meetings" – ¶¶ 145-158 – mentions Panasonic Corp. or any other company affiliated with Panasonic. Without any specific factual claims about the content or nature of any alleged participation by Panasonic Corp. – who attended such meetings and when they did so – there is no basis for Plaintiffs to proceed with their conclusory conspiracy claims against this company.

The IP-CAC, for example, fails to specify the name of a single "executive" from Panasonic Corp. who allegedly participated in any of these meetings; the meetings in which Panasonic Corp. allegedly participated; the times at which Panasonic Corp. allegedly participated; and what the contents were of any agreements that Panasonic Corp. allegedly reached. The single, isolated allegation about Panasonic Corp. in the IP-CAC represents nothing more than a vague assertion, and is thus insufficient under *Iqbal* and *Twombly*. *See, e.g., Iqbal*, 129 S.Ct. at 1950 ("legal conclusions . . . must be supported by factual allegations"); *Twombly*, 550 U.S. 565 n. 10 (the "pleadings mentioned no specific time, place, or person involved in the alleged conspiracies"); *Kendall*, 518 F.3d at 1048 (same); *In re Late Fee and Over-Limit Fee Litig.*, 528 F.Supp.2d 953, 961-962 (N.D. Cal. 2007) (plaintiffs did not allege sufficient detail "as to when, where, or by whom [the] alleged agreement was reached"); *Berry v. Indianapolis Life Ins. Co.*,

Reply Memorandum of Law in Support of
Panasonic Corp.'s and PNA's Motion to Dismiss
Plaintiffs' Consolidated Amended Complaints

8

Case No. 07-5944-SC
MDL No. 1917

No. 3:08-CV-0248-B, 2009 WL 636531, at *8 (N.D. Tex. Mar. 11, 2009) ("A period of years is not definitive enough . . . to put any defendant on sufficient notice to be able to defend. The conspiracy claim identifies no specific time or place in which any meeting of the minds between the [Defendants] occurred and no individuals from any [Defendants] who allegedly participated in such meetings, conversations, or communications. Plaintiffs have not pled the factual specificity to elevate their claim above the speculative level from conceivable to plausible").[7]

Indirect Purchaser Plaintiffs' only other assertion against Panasonic Corp. is that "the formation of the MTPD . . . was an overt act in furtherance of the conspiracy." IP-Opp. at 64. This argument is meritless, as Indirect Purchaser Plaintiffs do not provide a single allegation tying the creation of MTPD to Panasonic's purported involvement in any alleged conspiracy. In the absence of such allegations, it is well-settled that the formation of a joint venture is presumptively legal. *See*, *e.g.*, *In re Digital Music Antitrust Litig.*, 592 F.Supp.2d 435, 442-443 (S.D.N.Y. 2008) (allegations concerning creation and operation of joint venture are insufficient under *Twombly*); *cf. Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 768 (1984) (noting that joint ventures that "hold the promise of increasing a firm's efficiency and enabling it to compete more effectively" are reviewed under the rule of reason).[8]

---

[7] *See also Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 437 (6th Cir. 2008) (affirming district court's dismissal for failure to adequately plead a Sherman Act claim because the plaintiffs only offered bare allegations without any reference to the "who, what, where, when, how or why"); *Somerville v. Stryker Orthopaedics*, No. 08-02443 JSW, 2009 WL 113369, at *3 (N.D. Cal. Jan. 16, 2009) (dismissing complaint under *Twombly* because it failed to allege the time, place or the coconspirators actually involved in the alleged conspiracy); *Abbyy USA Software House, Inc. v. Nuance Commc'ns Inc.*, No. 08-01035 JSW, 2008 WL 4830740, at *3 (N.D. Cal. Nov. 6, 2008) (dismissing allegations of conspiracy under *Twombly* and *Kendall* for lack of specificity because the "complaint must allege facts such as a 'specific time, place, or person involved in the alleged conspiracies' to give a defendant seeking to respond to allegations of a conspiracy an idea of where to begin") (internal citations omitted).

[8] It is irrelevant that the Japanese Fair Trade Commission ("JFTC") reportedly will fine MTPD in connection with its investigation of the Japanese CRT market. *See* IP-Opp. at 64. As an initial matter, Indirect Purchaser Plaintiffs are wrong that MTPD "was recently fined" (*id.*) – no fine has been assessed. Moreover, even if this purported fact was true, it was not included in the IP-CAC, and must be ignored on this motion. *See White*, 2005 WL 1806367 at *10 n. 12. Moreover, in the absence of factual alter-ego allegations – there are none – any activities of MTPD in the

Reply Memorandum of Law in Support of
Panasonic Corp.'s and PNA's Motion to Dismiss
Plaintiffs' Consolidated Amended Complaints                    9                    Case No. 07-5944-SC
                                                                                    MDL No. 1917

1

2

## III.   PLAINTIFFS CANNOT RESORT TO "LUMPING" PNA AND PANASONIC CORP. TOGETHER WITH OTHER DEFENDANTS

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

Recognizing the insufficiency of their specific factual allegations, both Direct and Indirect Purchaser Plaintiffs alternatively try to "lump" Panasonic Corp. and/or PNA together with other related entities, without specifying which, if any, of these companies allegedly attended or participated in any claimed conspiratorial meetings or agreements.  As set forth in Panasonic's moving brief, however, allegations that indiscriminately "lump" PNA and Panasonic Corp. together with other Defendants, or with other Panasonic entities under the amorphous term "Panasonic," are insufficient.  *See, e.g.*, *In re ATM Antitrust Litig.*, 2009 U.S. Dist. LEXIS 83199, at *14 (dismissing antitrust complaint that "merely lump[s] together allegations against the holding company and its subsidiary"); *Suguri v. Wells Fargo Bank, N.A.*, No. CV 09-1828 PSG, 2009 WL 2486546, at *6 (C.D. Cal. Aug. 7, 2009) ("formulaic allegations lumping all Defendants together are insufficient to state a claim," citing *Twombly*, 550 U.S. at 555).   It is impossible, for example, to substantively respond to an allegation directed at "Defendants" when it cannot be discerned what PNA, Panasonic Corp. or any other entity is specifically alleged to have done.  This is why "general allegations as to all defendants, to 'Japanese defendants,' or to a single corporate entity such as 'Hitachi' are insufficient to put specific defendants on notice of the claims against them."  *In Re TFT-LCD Antitrust Litig.*, 586 F.Supp.2d 1109, 1117 (N.D. Cal. 2008) (*"TFT-LCD I"*).  "Simply using the global 'term 'defendants' to apply to numerous parties without any specific allegations' that would tie each particular defendant to the conspiracy is not sufficient."  *In re Elec. Carbon Prods. Antitrust Litig.*, 333 F.Supp.2d 303, 311-12 (D.N.J. 2004) (citing *Jung*, 300 F.Supp.2d at 163-64).

23

### A.   Direct Purchaser Plaintiffs Are Incorrect That They Need Not Allege That Each Defendant Joined And Participated In The Alleged Conspiracy

24

25

26

Direct Purchaser Plaintiffs argue that their "allegations against the *Panasonic Defendants* contain ample detail of the . . . meetings in which the *Panasonic Defendants* are alleged to have

27

28

Japanese CRT market are irrelevant to the question of whether Indirect Purchaser Plaintiffs have stated a claim against *Panasonic Corp.* in the U.S. CRT market.

Reply Memorandum of Law in Support of
Panasonic Corp.'s and PNA's Motion to Dismiss
Plaintiffs' Consolidated Amended Complaints

10

Case No. 07-5944-SC
MDL No. 1917

participated." *See* DP-Opp. at 102 (citing DP-CAC at ¶ 162) (emphasis added).  As explained above, no claim can be stated against Panasonic Corp. or PNA based upon "lumped" together allegations that "Panasonic," either directly or through a corporate affiliate, participated in unidentified bilateral or group meetings, from 1996 through at least 2003, in which unlawful agreements were allegedly reached.  *See* DP-CAC, ¶ 162 (emphasis added).  The Direct Purchaser Plaintiffs define "Panasonic" to collectively include "Panasonic Corp., [MECM], [PNA] and Panasonic Consumer Electronics Co. ["PCEC"]."  *Id.* at ¶ 50.  As a result, it is left unknown whether this allegation involves Panasonic Corp. and/or PNA and which meetings, if any, Panasonic Corp. and/or PNA is alleged to have attended.  The ambiguity is further compounded by the alternative claim that participation in such alleged meetings was "through [MECM]" – a defunct entity dropped from the Complaints.  None of this constitutes a specific allegation against Panasonic Corp. or PNA that is capable of stating an actionable claim.  *See*, *e.g.*, *In re ATM Antitrust Litig.*, 2009 U.S. Dist. LEXIS 83199, at *15 (dismissing complaint that used the "tactic" of "lump[ing] three entities together" under the collective term "Citibank"); *Brennan*, 369 F. Supp. 2d at 1136 (dismissing complaint against certain defendants because it failed to plead allegations "specifically connecting [those defendants] to the alleged conspiracy"); *In re Sagent Tech., Inc. Derivative Litig.*, 278 F.Supp. 2d 1079, 1094-95 (N.D. Cal. 2003) (dismissing complaint that "lump[ed] together thirteen 'individual defendants,' where only three of the individuals was alleged to have been present for the entire period of the events alleged in the complaint," because it failed to "give 'fair notice' of the claim to those defendants").

Direct Purchaser Plaintiffs argue that "allegations of antitrust conspiracy need not be detailed on a 'defendant by defendant' basis."  *See* DP-Opp. at 104; *see also id.* at 39.  This argument is untenable.  As *Twombly* itself recognized, a complaint that "furnishes no clue as to which of the four [Defendants] (much less which of their employees) supposedly agreed, or when and where the illicit agreement took place" leaves "[a] defendant wishing to prepare an answer . . . [with] little idea where to begin."  550 U.S. at 565 n.10.  Indeed, it is firmly established that a "complaint 'must allege that *each* individual defendant joined the conspiracy and played some

Reply Memorandum of Law in Support of
Panasonic Corp.'s and PNA's Motion to Dismiss
Plaintiffs' Consolidated Amended Complaints                    11                    Case No. 07-5944-SC
MDL No. 1917

role in it because, at the heart of an antitrust conspiracy is an agreement and a conscious decision by *each defendant* to join it.'" *TFT-LCD I*, 586 F.Supp. 2d at 1117 (citing *Jung*, 300 F.Supp. 2d at 163-64) (emphasis added). Cases cited by Direct Purchaser Plaintiffs that post-date *Twombly* recognize this well-settled proposition. *See In re OSB Antitrust Litig.*, 2007 WL 2253419 at *5 (a "plaintiff must allege that each individual defendant joined the conspiracy and played some role in it"); *In re SRAM Antitrust Litig.*, 580 F.Supp. 2d 896, 904 (N.D. Cal. Feb. 14, 2008) (plaintiffs are required to "make allegations that plausibly suggest that each Defendant participated in the alleged conspiracy").[9] Nothing in these cases suggests that Direct Purchaser Plaintiffs can simply "lump" multiple defendants together in a single allegation. *See, e.g., In re ATM Antitrust Litig.*, 2009 U.S. Dist. LEXIS 83199 at *15; *Brennan*, 369 F. Supp.2d at 1136; *In re Sagent Tech.*, 278 F.Supp.2d at 1094-95; *Mountain View Pharmacy v. Abbott Labs.*, 630 F.2d 1383, 1388 (10th Cir. 1980); *Atuahene v. City of Hartford*, 10 Fed. Appx. 33, 34 (2d Cir. 2001).

The Direct Opposition repeats the wholly conclusory allegation that "when one or more employee or agent attended a conspiratorial meeting, that employee or agent attended on behalf of every company in that family." DP-Opp. at 105 (citing DP-CAC at ¶ 154). These legal conclusions are not supported with any facts. Plaintiffs merely assume that every defendant corporate family operated identically and that all individual defendant entities are equally culpable because "one or more [unidentified] employees or agents" represented the "corporate family" at alleged meetings. There are simply no facts to support such an assertion, which is not entitled to the "presumption of truth." *See Iqbal*, 129 S.Ct. at 1949-51; *Kendall*, 518 F.3d at 1050 (citing *Twombly,* 550 U.S. at 553) (holding that the district court is not required to accept as true conclusory allegations of law or legal conclusions couched as factual allegations); *see also*

---

[9] Similarly, in *In re Rubber Chemicals Antitrust Litig.*, 504 F.Supp. 777, 790 (N.D. Cal. 2007), the court did not suggest that plaintiffs need not allege sufficient facts to support allegations that each defendant joined the conspiracy, but rather that plaintiffs met that standard in alleging "far more than that [defendant] met with competitors – they specifically allege his involvement in agreeing to implement price increases." These "specific and substantial" allegations stand in marked contrast to the isolated references to PNA and Panasonic Corp. in the DP-CAC.

Reply Memorandum of Law in Support of
Panasonic Corp.'s and PNA's Motion to Dismiss
Plaintiffs' Consolidated Amended Complaints

12

Case No. 07-5944-SC
MDL No. 1917

*Monaco v. Liberty Life Assurance Co.*, No. C06-07021 MJJ, 2007 WL 420139, at *6 (N.D. Cal. Feb. 6, 2007) (rejecting bare allegations of agency as nothing more than legal conclusions).[10]

Finally, Direct Purchaser Plaintiffs disingenuously assert that "strikingly similar allegations" utilizing "the exact language" were allowed to survive a motion to dismiss in *In re TFT-LCD Antitrust Litig.*, 599 F.Supp. 2d 1179, 1184-85 (N.D. Cal. 2009) (*LCD II*).  *See* DP-Opp. at 42-43.  This transparent effort to survive a motion to dismiss by resort to "artful pleading" – to simply superimpose conclusory allegations from a separate case onto a different context and set of facts – is wholly improper and should be rejected out of hand.  This argument also ignores the fact that the *TFT-LCD II* court reaffirmed that Plaintiffs "need to make allegations that plausibly suggest that *each Defendant* participated in the alleged conspiracy."  599 F.Supp. 2d at 1185 (citing *In Re SRAM Antitrust Litig.,* 580 F.Supp. 2d at 904) (emphasis added).[11]  Direct Purchaser Plaintiffs have failed to do so here.

## B.   Indirect Purchaser Plaintiffs' "Lumping" Arguments Are Equally Spurious

Indirect Purchaser Plaintiffs similarly argue that "antitrust conspiracy allegations need not be detailed 'defendant by defendant.'"  IP-Opp. at 28.  For all of the reasons stated above, Indirect Purchaser Plaintiffs' attempt to shortcut their pleading obligations is contrary to law.  Indeed, the Indirect Opposition is littered with cases that pre-date *Twombly*, including many dating back

---

[10] Direct Purchaser Plaintiffs also make the absurd argument that their "collective reference to" (*i.e.*, the lumping of) the "Panasonic Defendants" is proper because PNA describes itself on its website as an "American subsidiary of . . . Panasonic Corp."  *See* DP-Opp. at 105 and n.64.  This meritless position – which would turn corporate governance law on its head – is soundly rejected by the very case cited by Direct Purchaser Plaintiffs.  *See In re New Motor Vehicles Canadian Export Antitrust Litig.*, 307 F.Supp. 2d 145, 153-54 n. 6 (D. Me. 2004) ("I do not treat the corporate activities of the intricate corporate structures present in this case as unified action by parents and subsidiaries.").

[11] To the extent that one decision in this District has opined in a footnote, without analysis, that a complaint can survive a motion to dismiss without pleading allegations on a "defendant by defendant basis," that decision is inconsistent with the controlling law of *Twombly*, as well as settled caselaw from the Ninth Circuit and this District.  *See In re Flash Memory Antitrust Litig.*, No. C-07-0086 SBA, 2009 WL 1096602 *5 n. 7 (N.D. Cal., Mar. 31, 2009).  Indeed, the cases from outside of the Ninth Circuit cited by the *Flash* court well pre-date *Twombly*.  *Id.* (citing *In re Fine Paper Antitrust Litig.*, 685 F.2d 810, 822 (3d Cir. 1982); *In re Nasdaq Market-Makers Antitrust Litig.*, 894 F.Supp. 703, 712 (S.D.N.Y. 1995)).

Reply Memorandum of Law in Support of
Panasonic Corp.'s and PNA's Motion to Dismiss
Plaintiffs' Consolidated Amended Complaints

13

Case No. 07-5944-SC
MDL No. 1917

*decades*, which should be disregarded as obsolete.  *See* IP-Opp. at 28-29 (citing, *inter alia*, *In re Bulk Popcorn Antitrust Litig.*, 783 F.Supp. 1194, 1197 (D. Minn. 1991); *Wilk v. American Med. Ass'n*, 735 F.2d 217, 219 (7th Cir. 1983); *In re Fine Paper Antitrust Litig.* 685 F.2d 810, 822 (3d Cir. 1982); *Beltz Travel Serv., Inc. v. Int'l Air Transport Ass'n*, 620 F.2d 1360, 1367 (9th Cir. 1980); *Safeway Stores, Inc. v. FTC*, 366 F.2d 795, 801 (9th Cir. 1966); *Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 698-99 (1962)).  Moreover, these cases discuss the standard for proof of a conspiracy on motions for summary judgment (*Popcorn*, *Beltz*); after a jury verdict with the benefit of an "extensive record" (*Continental Ore, Fine Paper*); after a directed verdict (*Wilk*); and after an administrative finding of price-fixing (*Safeway*)—*i.e.*, only *after* an evidentiary showing that a party joined and participated in a conspiracy.  Such cases are wholly irrelevant here.[12]

Alternatively, Indirect Purchaser Plaintiffs maintain that they have alleged some type of "agency relationship" sufficient to state a claim against Defendants in "intra-corporate families." IP-Opp. at 45.  As explained above, there are no facts alleged to support this claim.  *See Iqbal*, 129 S.Ct. at 1949 ("the tenet that a court must accept as true all the allegations contained in a complaint is inapplicable to legal conclusions").  Indeed, Indirect Purchaser Plaintiffs have not provided *any* facts that the purported agent had the "authority to act for and in the place of the principal for the purpose of bringing him or her into legal relations with third parties" and that the principal had a "right to control" the agent.  *In re Coupon Clearing Serv., Inc.*, 113 F.3d 1091, 1099 (9th Cir. 1997).  A complaint that merely states a "bare legal conclusion" that an agency relationship exists is not sufficient.  *See Am. Nat'l Red Cross v. United Way Cal. Capital Region*, No. 07-1236, 2007 WL 4522967, at *10 (E.D. Cal. Dec. 19, 2007) (complaint "does not . . . allege one fact that suggests such an agency relationship"); *Liberty Life Assurance Co.*, 2007 WL 420139 at *6 (rejecting bare allegations of agency as nothing more than legal conclusions).

---

[12] As Indirect Purchaser Plaintiffs themselves note, "cases . . . decided in the context of summary judgments or judgments following trial" are "inapposite."  *See* IP-Opp. at 50.

Reply Memorandum of Law in Support of
Panasonic Corp.'s and PNA's Motion to Dismiss
Plaintiffs' Consolidated Amended Complaints

14

Case No. 07-5944-SC
MDL No. 1917

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Indirect Purchaser Plaintiffs also argue that PNA and Panasonic Corp. can determine whether they are being lumped together with other Defendants by simply viewing the Complaint in its "totality." *See* IP-Opp. at 17, 28, 36-37.[13]   For example, Indirect Purchaser Plaintiffs contend that because there is an allegation that "Glass Meetings took place in Taiwan, South Korea, Europe, China, Singapore, Japan, Indonesia, Thailand, and Malaysia" (IP-CAC, at ¶ 150) and because Panasonic Corp. is alleged to be a Japanese company (IP-CAC, at ¶ 80), it *should know* that "when Glass Meetings took place in Japan . . . Panasonic Corp. . . . attended." *See* IP-Opp. at 37.   Any argument predicated on mere geographical proximity is absurd, and belies the fact that according to Indirect Purchaser Plaintiffs' own allegations, Panasonic "did not ordinarily attend the group meetings." *Id.* (citing IP-CAC, at ¶ 164).   Nor is Panasonic Corp. alleged to have attended the "Glass Meetings" in any of the 14 paragraphs in which they are discussed (IP-CAC, at ¶¶ 145-158).

Indirect Purchaser Plaintiffs argue that "almost identical allegations" survived a motion to dismiss in *LCD II*.  *See* IP-Opp. at 36; 47-48 (providing a chart of "nearly identical" allegations). As explained above, however, such an unabashed effort to simply lift conclusory allegations from a completely separate case – in which Panasonic is not a Defendant – must be rejected. Moreover, none of the cited allegations have anything to do with PNA or Panasonic Corp.  *See* IP-CAC, at ¶¶ 112, 113, 188.   And, as the *TFT-LCD II* court stated, Plaintiffs "need to make allegations that plausibly suggest that each Defendant participated in the alleged conspiracy." 599 F.Supp.2d at 1185 (internal citation omitted); *see also TFT-LCD I*, 586 F.Supp.2d at 1117.

---

[13] This argument runs directly contrary to the *Iqbal* Court's holding that insufficient conclusory allegations should be disregarded *entirely*. 129 S. Ct. at 1951 (stating that the Court "begin[s] our analysis by identifying the allegations in the complaint that are not entitled to the assumption of truth").

Reply Memorandum of Law in Support of
Panasonic Corp.'s and PNA's Motion to Dismiss
Plaintiffs' Consolidated Amended Complaints          15          Case No. 07-5944-SC
MDL No. 1917

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **CONCLUSION**

For all of the foregoing reasons, as well as those set forth in the original moving papers, Direct and Indirect Purchaser Plaintiffs' Complaints against Panasonic Corp. and PNA should be dismissed with prejudice.

DATED: September 24, 2009

Respectfully submitted,

Weil, Gotshal, & Manges LLP,
Dewey & LeBoeuf LLP

By:   /s/ David L. Yohai

STEVEN ALAN REISS (*Admitted Pro Hac Vice*)
DAVID L. YOHAI (*Admitted Pro Hac Vice*)
DAVID E. YOLKUT (*Admitted Pro Hac Vice*)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY  10153
Telephone: (212) 310-8000
Fax: (212) 310-8007
steven.reiss@weil.com
david.yohai@weil.com
david.yolkut@weil.com

GREGORY D. HULL (57367)
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, California 94065-1175
Telephone: (650) 802-3000
Facsimile: (650) 802-3100
greg.hull@weil.com

By:   /s/ Jeffrey L. Kessler
JEFFREY L. KESSLER (*Admitted Pro Hac Vice*)
A. PAUL VICTOR (*Admitted Pro Hac Vice*)
EVA W. COLE (*Admitted Pro Hac Vice*)

DEWEY & LEBOEUF LLP
1301 Avenue of the Americas
New York, NY 10019
Telephone: (212) 259-8000
Fax: (212) 259-7013
jkessler@dl.com

Reply Memorandum of Law in Support of
Panasonic Corp.'s and PNA's Motion to Dismiss
Plaintiffs' Consolidated Amended Complaints

16

Case No. 07-5944-SC
MDL No. 1917

1

2

pvictor@dl.com
ecole@dl.com

3

Attorneys for Defendants Panasonic Corporation
(f/k/a Matsushita Electric Industrial Co., Ltd.) and
Panasonic Corporation of North America

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Reply Memorandum of Law in Support of
Panasonic Corp.'s and PNA's Motion to Dismiss
Plaintiffs' Consolidated Amended Complaints

17

Case No. 07-5944-SC
MDL No. 1917