KENT M. ROGER, State Bar No. 95987
MICHELLE PARK CHIU, State Bar No. 248421
MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Street Tower
San Francisco, CA  94105-1126
Tel:  415.442.1000
Fax:  415.442.1001
E-mail:  kroger@morganlewis.com
            mchiu@morganlewis.com

Attorneys for Defendants
HITACHI, LTD., HITACHI AMERICA, LTD.,
HITACHI ASIA, LTD., HITACHI DISPLAYS,
LTD., and HITACHI ELECTRONIC DEVICES
(USA), INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE:  CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION<br><br>_____<br><br>This Document Relates To:<br><br>ALL ACTIONS | Case No. C07-5944 SC<br><br>MDL No. 1917<br><br>**HITACHI DEFENDANTS' REPLY TO (1) DIRECT PURCHASER PLAINTIFFS' AND (2) INDIRECT PURCHASER PLAINTIFFS' OPPOSITIONS TO DEFENDANTS' MOTIONS TO DISMISS**<br><br>Date:        October 5, 2009<br>Time:       9:00 am<br>Place:      Two Embarcadero Center, Suite 1500, San Francisco, CA  94111<br>Judge:     Hon. Charles Legge (Ret.) |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/21298963.7

C07-5944 SC   MDL No. 1917

HITACHI DEFENDANTS' REPLY TO (1) DIRECT PURCHASER PLAINTIFFS' AND (2) INDIRECT
PURCHASER PLAINTIFFS' OPPOSITIONS TO DEFENDANTS' MOTIONS TO DISMISS

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ........................................................................................................... 1

II.    PLAINTIFFS' OPPOSITIONS UNDERSCORE THAT THEIR COMPLAINTS
       FAIL TO ALLEGE FACTS SUFFICIENT TO STATE A PLAUSIBLE
       CONSPIRACY AGAINST ANY OF THE HITACHI DEFENDANTS........................... 2

       A.     Even in Their Oppositions, Plaintiffs Continue to Improperly Lump the
              Hitachi Defendants Into a Single, Non-Existent Entity, "Hitachi", Failing
              to Provide the Required Notice of the Claims Against Any of the Hitachi
              Defendants. ...................................................................................................... 2

       B.     The Complaints' Allegations Even Against the Fictional "Hitachi" Are
              Mere Conclusions and Insufficient to State a Claim.............................................. 5

       C.     Plaintiffs Do Not Allege Any Parallel Conduct As to the Hitachi
              Defendants. ...................................................................................................... 7

       D.     Plaintiffs Rely on Contradictory or Irrelevant Allegations That Are
              Insufficient to State a Claim Against the Hitachi Defendants. ............................... 8

              1.     Plaintiffs Concede That the Hitachi Defendants Experienced
                     Rapidly Decreasing Market Share During the Class Period,
                     Contradicting Their Allegation That the Hitachi Defendants Were
                     Active Members of the Alleged Conspiracy in Which the
                     Participants Allocated Market Share........................................................ 8

              2.     Plaintiffs' Oppositions Underscore Their Reliance on Allegations
                     That Are Irrelevant to Determining Whether Any of the Hitachi
                     Defendants Participated in the Alleged Conspiracy.................................. 9

       E.     Plaintiffs' Oppositions Fail to Identify Any Specific Acts of Fraudulent
              Concealment by Any of the Hitachi Defendants................................................... 11

III.   CONCLUSION............................................................................................................ 13

Morgan, Lewis &
Bockius LLP
Attorneys At Law
San Francisco

DB2/21298963.7                                     i                    C07-5944 SC   MDL No. 1917

HITACHI DEFENDANTS' REPLY TO (1) DIRECT PURCHASER PLAINTIFFS' AND (2) INDIRECT
PURCHASER PLAINTIFFS' OPPOSITIONS TO DEFENDANTS' MOTIONS TO DISMISS

1

**TABLE OF AUTHORITIES**

2

**Page**

3

<u>**Cases**</u>

4

*Am. Nat'l Red Cross v. United Way California Capital Region*,
   No. Civ. S-07-1236, 2009 U.S. Dist. LEXIS 95296 (E.D. Cal. 2007) ....................................... 3

5

*Ashcroft v. Iqbal*,
   129 S. Ct. 1937 (2009) ............................................................................................................... passim

6

*Baggett v. Hewlett-Packard Co.*,
   582 F. Supp. 2d 1261 (C.D. Cal. 2007) .................................................................................... 11

7

8

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................................................... passim

9

*Canam Steel Corp. v. Mayo*,
   No. 2:09-cv-00672, 2009 U.S. Dist. LEXIS 44059 (E.D. Cal. 2009) .................................... 3, 4

10

11

*In re Citric Acid Litigation*,
   191 F.3d 1090 (9th Cir. 1999) .................................................................................................. 10

12

*In re Citric Acid Litigation*,
   996 F. Supp. 951 (N.D. Cal. 1998) ......................................................................................... 8, 9

13

14

*In re Graphics Processing Units Antitrust Litigation*,
   527 F. Supp. 2d 1011 (N.D. Cal. 2007) .................................................................................. 10

15

*In re Static Random Access Memory (SRAM) Antitrust Litigation*,
   580 F. Supp. 2d 896 (N.D. Cal. 2008) .................................................................................... 10

16

17

*In re TFT-LCD Antitrust Litigation*,
   586 F. Supp. 2d 1109 (N.D. Cal. 2008) .................................................................................. 2, 7

18

*Kendall v. Visa U.S.A., Inc.*,
   518 F. 3d 1042 (9th Cir. 2008) .............................................................................. 2, 5, 6, 7-8

19

20

*Rutledge v. Boston Woven Hose and Rubber Co.*,
   576 F.2d 248 (9th Cir. 1978) .................................................................................................. 12

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

HITACHI DEFENDANTS' REPLY TO (1) DIRECT PURCHASER PLAINTIFFS' AND (2) INDIRECT
PURCHASER PLAINTIFFS' OPPOSITIONS TO DEFENDANTS' MOTIONS TO DISMISS

1

## I.    **INTRODUCTION**

2      "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss."

3   *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).  Plaintiffs may not proceed with their claims

4   against the Hitachi defendants unless their claims have "facial plausibility," achieved by pleading

5   "factual content that allows the court to draw the reasonable inference that [the Hitachi

6   defendants are] liable for the misconduct alleged."  *Id.* at 1949.  As the U.S. Supreme Court made

7   clear in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and reiterated in *Iqbal*, Direct

8   Purchaser Plaintiffs ("Direct Plaintiffs") and Indirect Purchaser Plaintiffs' ("Indirect Plaintiffs")

9   (collectively "Plaintiffs") must plead sufficient facts to "nudge[] their claims across the line from

10  conceivable to plausible." *Twombly*, 550 U.S. at 570.  Plaintiffs' allegations as to the Hitachi

11  defendants fail to do so; thus, the claims in the Direct Purchaser Plaintiffs' Consolidated

12  Amended Complaint ("DP-CAC") and Indirect Purchaser Plaintiffs' Consolidated Amended

13  Complaint ("IP-CAC") (collectively "Complaints") must be dismissed as to the Hitachi

14  defendants.[1]

15      Attempting to address the Hitachi Defendants' demonstrations in their Motion to Dismiss

16  ("Hit. Mot.") that the actual allegations of their *Complaints* do not pass muster, Plaintiffs attempt

17  to recast and recharacterize those allegations in their *Oppositions*.  But to no avail, since the

18  Complaints do not say what Plaintiffs say they do, and what the Complaints actually say is also

19  fatally insufficient under *Twombly* and *Iqbal*.  Rather than plead specific facts alleging the role

20  that each Hitachi defendant played in the alleged conspiracy, Plaintiffs make sweeping allegations

21  against a fictional collective "Hitachi" that do not identify specific acts or omissions by *any*

22  Hitachi defendant in furtherance of an antitrust conspiracy.  Despite Plaintiffs' claims to the

23  contrary, as the Hitachi defendants made clear in their Motion to Dismiss, the Complaints contain

24  no specific facts pleading *each* Hitachi defendant's membership or participation in the alleged

25  conspiracy.  Without these facts, the allegations against the Hitachi defendants are nothing more

26  than "labels and conclusions" and a "formulaic recitation of the elements" of an antitrust claim,

27

28

---

[1]      This motion incorporates by reference the Joint Defense Reply Briefs in Support of the Motion to Dismiss the Direct and Indirect Plaintiffs' Consolidated Complaints.

DB2/21298963.7                            1                      C07-5944 SC   MDL No. 1917
HITACHI DEFENDANTS' REPLY TO (1) DIRECT PURCHASER PLAINTIFFS' AND (2) INDIRECT
PURCHASER PLAINTIFFS' OPPOSITIONS TO DEFENDANTS' MOTIONS TO DISMISS

1  which are insufficient to meet the pleading standards of Rule 8 and *Twombly*.  550 U.S. at 555.

2  Moreover, Plaintiffs' claims are time-barred because the Complaints fail to plead *any* acts of

3  affirmative concealment by *any* Hitachi defendant, and Plaintiffs cannot toll the statute of

4  limitations as to the Hitachi defendants.

5  **II.    PLAINTIFFS' OPPOSITIONS UNDERSCORE THAT THEIR COMPLAINTS**

6  **FAIL TO ALLEGE FACTS SUFFICIENT TO STATE A PLAUSIBLE**
   **CONSPIRACY AGAINST ANY OF THE HITACHI DEFENDANTS.**

7  **A.    Even in Their Oppositions, Plaintiffs Continue to Improperly Lump the**

8  **Hitachi Defendants Into a Single, Non-Existent Entity, "Hitachi", Failing to**
   **Provide the Required Notice of the Claims Against Any of the Hitachi**

9  **Defendants.**

10  Plaintiffs concede that they must allege facts "*plausibly suggesting* that each Hitachi

11  entity participated in the conspiracy." DP Opp'n at 83; *see also* IP Opp'n at 29.  *In re TFT-LCD*

12  *Antitrust Litig.*, 586 F. Supp. 2d 1109, 1117 (N.D. Cal. 2008) (stating that the plaintiffs must

13  "allege that *each individual defendant* joined the conspiracy and played some role in it because, at

14  the heart of an antitrust conspiracy is an agreement and a conscious decision to join it . . . . The

15  Court agrees that general allegations as to all defendants, to 'Japanese defendants,' or to a single

16  corporate entity such as 'Hitachi' is insufficient to put specific defendants on notice of the claims

17  against them." (internal quotation omitted) (emphasis added)).  But having acknowledged what

18  they must do, the Complaints instead impermissibly lump five separate corporate entities into a

19  fictional collective "Hitachi," and proceed to make only conclusory allegations even against this

20  non-existent entity.  DP Opp'n at 83; IP Opp'n at 32-39; DP-CAC ¶ 36; IP-CAC ¶ 93.  In doing

21  so, Plaintiffs do not provide any allegations regarding *which* Hitachi defendant is alleged to have

22  engaged in *what* unlawful conduct as required under *Twombly*.  *See Kendall v. Visa U.S.A., Inc.*,

23  518 F. 3d 1042, 1048 (9th Cir. 2008) ("[T]he complaint does not answer the basic questions: who,

24  did what, to whom (or with whom), where, and when?").  Indirect Plaintiffs accuse Hitachi of

25  ignoring a "fundamental principle" that the court must presume all factual allegations in a

26  complaint to be true.  IP Opp'n at 53.  It is Plaintiffs who ignore the holding of *Iqbal* that

27  pleadings that "are no more than conclusions, are *not* entitled to the assumption of truth."  *Iqbal*,

28  129 S. Ct. at 1950 (emphasis added).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/21298963.7                                      2                    C07-5944 SC   MDL No. 1917
HITACHI DEFENDANTS' REPLY TO (1) DIRECT PURCHASER PLAINTIFFS' AND (2) INDIRECT
PURCHASER PLAINTIFFS' OPPOSITIONS TO DEFENDANTS' MOTIONS TO DISMISS

1   Plaintiffs' attempts to cure this deficiency with their similarly conclusory allegations of

2   agency are unavailing.  DP Opp'n at 87; IP Opp'n at 33 (alleging that "each Hitachi entity acted

3   as an agent for the other entities within the Hitachi corporate family.").  Plaintiffs are required to

4   plead enough "factual allegations" of agency "to raise a right to relief above the speculative

5   level." *Canam Steel Corp. v. Mayo*, No. 2:09-cv-00672, 2009 U.S. Dist. LEXIS 44059 at *7

6   (E.D. Cal. 2009); *see also Am. Nat'l Red Cross v. United Way California Capital Region*, No.

7   Civ. S-07-1236, 2009 U.S. Dist. LEXIS 95296 at *30 (E.D. Cal. 2007) (holding that plaintiff's

8   failure to "allege one fact that suggests [an] agency relationship" was insufficient to withstand a

9   motion to dismiss).  Plaintiffs fail to provide any factual allegations of agency, relying again only

10  on "labels and conclusions" of agency broadly alleged against the entire group of Defendants:

11
12          When Plaintiffs refer to a corporate family or companies by a single
            name . . . it is to be understood that the Plaintiffs are alleging that
            one or more employees or agents of entities within the corporate
13          family engaged in conspiratorial meetings on behalf of every
            company in that family. . . . The individual participants entered into
            agreements on behalf of, and reported these meetings and
14          discussions to, their respective corporate families.  As a result, the
            entire corporate family was represented in meetings and discussions
15          by their agents and was a party to the agreements reached in them.

16  DP-CAC ¶ 154; *see also* IP-CAC ¶188.  Such *ipse dixit* pronouncements do not satisfy Rule 8,

17  *Twombly*, and *Iqbal*.  Plaintiffs' allegations are not specific to the Hitachi defendants, but broadly

18  alleged against all Defendants, which is itself impermissible under *Twombly*.  With respect to the

19  Hitachi defendants, the defect is even more obvious, as Plaintiffs allege conclusorily that Hitachi,

20  Ltd. "dominated and controlled the finances, policies and affairs" of the other Hitachi defendants

21  "relating to the antitrust violations alleged in this complaint."  DP-CAC ¶¶ 31-34; IP-CAC ¶¶ 88-

22  91.  Such labels and pronouncements are "not entitled to the assumption of truth," and are

23  insufficient to survive a motion to dismiss. *Iqbal*, 129 S. Ct. at 1950.  That is, Plaintiffs have not

24  pled a single *fact* that demonstrates that any Hitachi defendant agreed to act on behalf of another

25  Hitachi defendant, or on behalf of any other Defendant, or that any Hitachi defendant consented

26  to any other Defendant acting as its agent.  But such are the facts that Plaintiffs must plead to

27  properly plead agency. *See Canam*, 2009 U.S. Dist. LEXIS at *7 (holding that the plaintiff's

28  allegation that "each defendant named in this complaint . . .  was functioning, at least at times, as

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/21298963.7                     3                    C07-5944 SC   MDL No. 1917

HITACHI DEFENDANTS' REPLY TO (1) DIRECT PURCHASER PLAINTIFFS' AND (2) INDIRECT
PURCHASER PLAINTIFFS' OPPOSITIONS TO DEFENDANTS' MOTIONS TO DISMISS

1   the agent, servant, partner, alter ego and/or employee of one or more of the other defendants" was

2   "simply inadequate" to state a claim against the defendant).  Like the complaint in *Canam*, the

3   Complaints here do not provide any factual allegations to support their legal conclusion of an

4   agency relationship among the Hitachi defendants.  Rather, their allegations of agency are nothing

5   more than "'naked assertion[s]' devoid of 'further factual enhancement,'" that are insufficient to

6   meet the pleading standard required under *Twombly*.  *Iqbal*, 129 S. Ct. at 1949 (*quoting Twombly*,

7   550 U.S. at 557).

8          Because Plaintiffs have failed to properly allege agency among the Hitachi defendants, the

9   Complaints must be dismissed because they do not allege enough facts plausibly suggesting that

10   each or any Hitachi defendant joined and participated in the conspiracy asserted by Plaintiffs.  In

11   fact, Direct Plaintiffs concede that their allegations against the Hitachi defendants are based

12   *exclusively* on their theory of agency among the five separate corporate entities.  DP Opp'n at 83

13   (claiming that Plaintiffs meet the pleading requirements by "pleading specific overt acts of the

14   *Hitachi corporate family* in furtherance of the conspiracy and also alleging that each Hitachi

15   entity acted for, and on behalf of, *all the other Hitachi entities* with respect to the conspiracy."

16   (emphasis added)).  Because Direct Plaintiffs admit they have not pled any specific allegations as

17   to *each* Hitachi defendant's membership or participation in the alleged conspiracy, their

18   complaint must be dismissed for failing to meet the pleading requirements of Rule 8 and

19   *Twombly*.

20          Indirect Plaintiffs fare no better.  They argue that "the IP CAC specifically alleges what

21   each individual defendant's role was in the conspiracy as a member of its corporate group in

22   paragraphs 166-187."  IP Opp'n at 33.  The cited paragraphs do not, however, make any specific

23   allegation as to *each* Hitachi defendant's role in the alleged conspiracy, relying again only on

24   their conclusory allegations of agency among the Hitachi defendants.  *See* IP-CAC ¶¶ 179-80.

25   For example, the IP-CAC alleges that fictional "*Defendant Hitachi*, through Hitachi, Ltd., Hitachi

26   Displays, Hitachi Shenzhen, and Hitachi Asia, participated in several Glass Meetings," and that

27   "Hitachi" engaged in multiple bilateral discussions.  *Id.* at ¶ 179 (emphasis added).  Indirect

28   Plaintiffs obscure whether they are alleging that *all* of the Hitachi defendants identified

HITACHI DEFENDANTS' REPLY TO (1) DIRECT PURCHASER PLAINTIFFS' AND (2) INDIRECT
PURCHASER PLAINTIFFS' OPPOSITIONS TO DEFENDANTS' MOTIONS TO DISMISS

1    participated in these Glass Meetings and bilateral discussions, or if not, which Hitachi defendant

2    actually did.  Had Indirect Plaintiffs properly specified which Hitachi defendant allegedly

3    participated in these actions, such would be an admission that any of the other non-specified

4    Hitachi defendants did *not* do so.  It is for this very reason that *Twombly* requires Plaintiffs to

5    specify their factual allegations as to *each* individual defendant.  Because Plaintiffs fail to specify

6    their allegations against *each* Hitachi defendant, it is impossible to "draw the reasonable inference

7    that the ['Hitachi defendants'] are liable for the misconduct alleged."  *Iqbal*, 129 S. Ct. at 1949.

8            **B.      The Complaints' Allegations Even Against the Fictional "Hitachi" Are Mere
9                      Conclusions and Insufficient to State a Claim.**

10           Not only are the Complaints defective because they fail to plead allegations against each

11   Hitachi defendant, they also fail to state a plausible conspiracy claim even as to the fictional

12   "Hitachi."  The Complaints do not "answer the basic questions" regarding any of the Hitachi

13   defendant's participation in the alleged conspiracy: "who, did what, to whom (or with whom),

14   where and when?"  *Kendall*, 518 F.3d at 1048.  Plaintiffs highlight their pleading defects by

15   pronouncing in their Oppositions that the Complaints do specifically allege overt acts against

16   "Hitachi."  Upon examination, however, most of these allegations Plaintiffs cite in the

17   Oppositions are *not* specifically against even the fictional "Hitachi."   That is, these allegations do

18   not even mention the term "*Hitachi*" but are the generalized allegations against "*the Defendants*"

19   as a group.  In their Opposition, Direct Plaintiffs announce that "the illegal conspiracy was

20   organized at the highest level of the Hitachi corporate family and executed through Hitachi

21   regional managers and other subordinate employees," citing to paragraphs 6, 151 and 154 of the

22   DP-CAC.  DP Opp'n at 86.  These paragraphs do not, however, say any such thing and do not

23   even use the word "Hitachi."  DP-CAC ¶¶ 6 and 151 do not mention any Hitachi defendant,

24   identifying only "co-conspirators" or "Defendants," and DP-CAC ¶ 154 states Direct Plaintiffs'

25   naked assertion of agency among *all* Defendants, referring only to "corporate families,"

26   "employees or agents of entities within the corporate family," and unidentified "high ranking

27   executives" of unidentified companies.  These allegations fail to answer the "who" required to

28   properly plead a claim under Rule 8 and *Twombly*.  *Kendall*, 518 F.3d at 1048.  Because these

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/21298963.7                                    5                      C07-5944 SC   MDL No. 1917
HITACHI DEFENDANTS' REPLY TO (1) DIRECT PURCHASER PLAINTIFFS' AND (2) INDIRECT
PURCHASER PLAINTIFFS' OPPOSITIONS TO DEFENDANTS' MOTIONS TO DISMISS

1    allegations fail to specifically identify any Hitachi defendant, or even the non-existent "Hitachi,"

2    each of the separately sued Hitachi defendants is left without "an idea of where to begin [to

3    respond to allegations of a conspiracy]." *Id.* at 1047 (*citing Twombly*, 550 U.S. at 565 n.10).

4         In the few places where Plaintiffs do invoke the fictional lumped "Hitachi," their

5    allegations are also insufficient to meet the pleading requirements of Rule 8. *See* DP Opp'n at 89;

6    DP-CAC ¶¶ 157-158; IP-CAC ¶ 179. The DP-CAC alleges that "Hitachi . . . participated in over

7    a dozen illegal bilateral and group meetings from 1996 through at least 2001 in which unlawful

8    agreements . . . occurred." DP-CAC ¶¶ 157-58. These paragraphs contain nothing more than

9    conclusory allegations that a non-existent "Hitachi" attended meetings or engaged in bilateral

10   discussion, without pleading who at which Hitachi defendant, if any, attended what meetings over

11   the twelve year span of the alleged conspiracy; *who* the Hitachi defendant met with; *what* they

12   agreed upon; and when or even where any meeting occurred. *See Kendall*, 518 F.3d at 1048. The

13   allegations do not provide basic facts required under *Twombly*, such as a "specific time, place, or

14   person involved in the alleged conspiracies." 550 U.S. at 565 n.10 (noting that simply identifying

15   a "seven-year span in which the § 1 violations were supposed to have occurred" was insufficient

16   to meet Rule 8 pleading requirements). Without these details, Plaintiffs' allegations that

17   "Hitachi" attended alleged "Glass Meetings" and "Top Meetings" (DP-CAC ¶ 141; IP-CAC ¶¶

18   145-56) where unlawful agreements were allegedly entered into are nothing more than "labels

19   and conclusions" combined with a "formulaic recitation of the elements of a cause of action,"

20   insufficient to meet the pleading standards of *Twombly*. 550 U.S. at 555.

21        Moreover, in their Opposition, Indirect Plaintiffs underscore their failure to make specific

22   allegations as to the Hitachi defendants when they argue that their "allegations must be

23   considered in the context of where the various defendants were located and where the group

24   meetings occurred." IP Opp'n at 37. Indirect Plaintiffs conclusorily assert (not even in their

25   Complaint, but in the argument of their Opposition) that "when Glass Meetings took place in

26   Japan, Hitachi, Ltd. [and] Hitachi Displays" attended, and that because Hitachi Asia "is located in

27   Singapore, it does not take a huge leap in logic to infer that Hitachi Asia engaged in bilateral

28   meetings in Singapore." *Id*. Thus, Plaintiffs are concededly left to rely only on their Opposition

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/21298963.7                    6              C07-5944 SC   MDL No. 1917
HITACHI DEFENDANTS' REPLY TO (1) DIRECT PURCHASER PLAINTIFFS' AND (2) INDIRECT
PURCHASER PLAINTIFFS' OPPOSITIONS TO DEFENDANTS' MOTIONS TO DISMISS

1    to assume that the Hitachi defendants attended improper meetings solely based on the corporate

2    location of the Hitachi defendants.  First, this is not what the IP-CAC says and Plaintiffs'

3    characterization in an Opposition to a motion to dismiss does not make it so.  Second, *Twombly*

4    does not require the absence of "a huge leap of logic."  It requires the who, what, where and when

5    factual allegations in the *complaint* that *each* Hitachi defendant actually *did* participate in the

6    improper meetings.  *See Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise

7    a right to relief above the speculative level.")  At best, Indirect Plaintiffs' view that it is

8    *conceivable* that some Hitachi defendants attended meetings in countries where they are located

9    "stops [far] short of the line between possibility and plausibility of 'entitlement to relief.'"  *Iqbal*,

10   129 S. Ct. at 1949 (*quoting Twombly*, 550 U.S. at 557).

11       **C.       Plaintiffs Do Not Allege Any Parallel Conduct As to the Hitachi Defendants.**

12       Despite their claims to the contrary, Plaintiffs fail to allege any parallel conduct as to any

13   of the *Hitachi* defendants.  *See* DP Opp'n at 90; IP Opp'n at 60.  Direct Plaintiffs claim that the

14   DP-CAC "alleges parallel conduct in the form of reductions in manufacturing capacity during the

15   class period."  DP Opp'n at 90 (citing DP-CAC ¶¶ 181-187).  Upon examination, however, the

16   DP-CAC, is silent as to any of the Hitachi defendants regarding reduction in manufacturing

17   capacity, mentioning only other Defendants or groups, but not any Hitachi defendant.  DP-CAC

18   ¶¶ 181-87.  Likewise, the IP-CAC also fails to make any allegations of parallel conduct as to any

19   of the Hitachi defendants.  In their Opposition, Indirect Plaintiffs identify ¶¶ 192-202 of the IP-

20   CAC as listing "several examples of parallel conduct."  IP Opp'n at 60.  Again, none of these

21   allegations even mentions any of the Hitachi defendants.  Indirect Plaintiffs are incorrect in

22   asserting that "Plaintiffs do not have to repeat Hitachi's name for each and every allegation"

23   because Plaintiffs allegedly "have sufficiently tied the Hitachi Defendants to the CRT

24   conspiracy."  *Id.*  Plaintiffs must "allege that *each individual defendant* joined the conspiracy and

25   played some role in it."  *TFT-LCD*, 586 F. Supp. 2d at 1117 (internal citation omitted) (emphasis

26   added).  Indirect Plaintiffs' admission of their inability to point to any allegations they have made

27   against any Hitachi defendant, including those of parallel conduct, leaves the Hitachi defendants

28   unable to identify to which allegations in the IP-CAC they must respond.  *Kendall*, 518 F.3d at

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/21298963.7                                    7                    C07-5944 SC   MDL No. 1917

HITACHI DEFENDANTS' REPLY TO (1) DIRECT PURCHASER PLAINTIFFS' AND (2) INDIRECT
PURCHASER PLAINTIFFS' OPPOSITIONS TO DEFENDANTS' MOTIONS TO DISMISS

1047.

## D. Plaintiffs Rely on Contradictory or Irrelevant Allegations That Are Insufficient to State a Claim Against the Hitachi Defendants.

### 1. Plaintiffs Concede That the Hitachi Defendants Experienced Rapidly Decreasing Market Share During the Class Period, Contradicting Their Allegation That the Hitachi Defendants Were Active Members of the Alleged Conspiracy in Which the Participants Allocated Market Share.

Plaintiffs concede that the Hitachi defendants' market share declined during the alleged Class Period. *See* DP Opp'n at 91; IP Opp'n at 54-55. This fact is wholly inconsistent with Plaintiffs' allegations that the Hitachi defendants were members of an alleged conspiracy in which the participants allocated market share among themselves. Indirect Plaintiffs unpersuasively attempt to recharacterize the significance of their allegations of market share allocation by protesting that "nowhere in the IP CAC do Plaintiffs allege that the allocation of market share by Defendants was a 'key component' of the conspiracy." IP Opp'n at 54. But in their Complaint, both Direct Plaintiffs and Indirect Plaintiffs expressly cite the allocation of market share as a separate and distinct component of the alleged conspiracy among the Defendants. DP-CAC ¶¶ 5, 145 ("Defendants . . . often also made agreements related to both overall market share and the share of a particular customer's purchases."); IP-CAC ¶ 156 (listing "agreements to allocate both overall market shares and share of a particular customer's purchases" as one of the alleged agreements reached by Defendants). Indirect Plaintiffs' attempt to now diminish the importance of market share allocation underscores the inconsistency in admitting that the Hitachi defendants' market share declined during the Class Period, while simultaneously asserting that the Hitachi defendants were active co-conspirators during the entire Class Period. Direct Plaintiffs and Indirect Plaintiffs, then, are left with the fact that given their concessions about the Hitachi defendants' evaporating market share, if any Defendants were allocating shares of the market, they clearly were doing so at the Hitachi defendants' *expense*.

Plaintiffs claim that *In re Citric Acid Litigation*, 996 F. Supp. 951 (N.D. Cal. 1998) is inapposite because it is a summary judgment case. *See* DP Opp'n at 91 n.57; IP Opp'n at 54-55. This misses the point. *Citric Acid* is instructive because it analyzed how allegations of market

HITACHI DEFENDANTS' REPLY TO (1) DIRECT PURCHASER PLAINTIFFS' AND (2) INDIRECT PURCHASER PLAINTIFFS' OPPOSITIONS TO DEFENDANTS' MOTIONS TO DISMISS

1   share allocation, a common component of antitrust conspiracies, could actually be counter-

2   indicative of an antitrust conspiracy.  In *Citric Acid*, the district court evaluated internal

3   documents and concluded that a defendant's two percent growth in market share in two years far

4   outpaced what would have been permitted had the defendant been participating in the conspiracy.

5   996 F. Supp. at 961.  Here, Plaintiffs readily admit that the Hitachi defendants' market share

6   declined rapidly and significantly over the class period, in contrast to the allegations that

7   "Defendants" agreed to allocate "overall market shares and share of a particular customer's

8   purchases."  IP-CAC ¶ 156; DP-CAC ¶¶ 5, 145.  Thus, on the Complaints' face, the admissions

9   regarding the Hitachi defendants' market share are inconsistent with the overall allegations of the

10  conspiracy and its control of market share among the alleged participants.

11          2.      **Plaintiffs' Oppositions Underscore Their Reliance on Allegations That
12                  Are Irrelevant to Determining Whether Any of the Hitachi Defendants
                    Participated in the Alleged Conspiracy.**

13          Plaintiffs erroneously rely on allegations that "Hitachi" was a member of various trade

14  associations to support their conclusion that the Hitachi defendants participated in the alleged

15  conspiracy.  *See* DP Opp'n at 90; DP-CAC ¶¶ 176-80 (mentions one person from "Hitachi"

16  having attended an unidentified meeting or meetings); IP Opp'n at 55-56; IP-CAC ¶ 124

17  (mentioning "Hitachi" as a member of one organization, the Society for Information Display).

18  Plaintiffs have not alleged how many trade association meetings any Hitachi defendant attended

19  or what any Hitachi defendant did at any such meeting, let alone that improper activities took

20  place at any trade association meetings.  DP-CAC ¶ 178; IP-CAC ¶ 124.  Plaintiffs plead *no* facts

21  that allege how any Hitachi defendant, or even "Hitachi," used any trade association meetings to

22  further an alleged conspiracy.  DP-CAC ¶¶ 176-80; IP-CAC ¶ 124.  Instead, Plaintiffs can only

23  assert that these meetings *may* have provided "opportunities" for sharing competitive information

24  with other Defendants.  Plaintiffs do not allege that "Hitachi" actually *did* share competitive

25  information with other Defendants during these meetings.

26          Indirect Plaintiffs also erroneously claim that their allegations of "Hitachi's" participation

27  in trade associations may be relevant.  IP Opp'n at 56 (citing *Todd v. Exxon Corp.*, 275 F.3d 191,

28  213 (2d. Cir. 2001) ("[T]he frequency of the meetings is itself problematic . . .  it tends to

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/21298963.7                                    9                         C07-5944 SC   MDL No. 1917
HITACHI DEFENDANTS' REPLY TO (1) DIRECT PURCHASER PLAINTIFFS' AND (2) INDIRECT
PURCHASER PLAINTIFFS' OPPOSITIONS TO DEFENDANTS' MOTIONS TO DISMISS

facilitate the policing of price conspiracies.")).  Indirect Plaintiffs do not, however, allege the frequency of trade association meetings that anyone from any "Hitachi" defendant attended, much less any actual exchange of improper information that occurred at any alleged trade association meetings.  Because a defendant's participation in trade shows and events is "presumed legitimate and is not a basis from which to infer a conspiracy, without more," Plaintiffs' allegations of "Hitachi's" participation in various trade associations are irrelevant and should be disregarded.  *In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1023 (N.D. Cal. 2007); *see also In re Citric Acid Litig.*, 191 F.3d 1090, 1098 (9th Cir. 1999) ("If we allowed conspiracy to be inferred from [trade association activities] alone, we would have to allow an inference of conspiracy whenever a trade association took almost any action.").  Because these allegations do nothing more than imply the "mere possibility of misconduct," they are insufficient to show that Plaintiffs are entitled to relief.  *Iqbal*, 129 S. Ct. at 1950.

Plaintiffs also may not rely on investigations in other product markets as evidence of any Hitachi defendant's participation in an alleged conspiracy in CRTs.  Accordingly, Direct Plaintiffs' citation to *In re Static Random Access Memory (SRAM) Antitrust Litigation*, 580 F. Supp. 2d 896 (N.D. Cal. 2008) is inapposite.  DP Opp'n at 90.  In *SRAM*, the plaintiffs "allege[d] that the *same actors* associated with certain Defendants were responsible for marketing both SRAM and DRAM."  580 F. Supp. 2d at 903 (emphasis added).  By contrast, the DP-CAC does not allege the specific role that any human being employed by any Hitachi defendant played in the alleged conspiracy, much less that they are the same individuals who were engaged in improper behavior in the TFT-LCD industry.  DP Opp'n at 85.  Thus, the allegations regarding *other* product markets are irrelevant to determining whether the Hitachi defendants were members of an alleged conspiracy involving CRTs.  *See Graphics Processing Units*, 527 F. Supp. 2d at 1024 (finding that a grand jury investigation in the *same* product market at issue in the civil litigation "carries no weight in pleading an antitrust conspiracy claim . . . . The grand jury investigation is a non-factor.").

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

HITACHI DEFENDANTS' REPLY TO (1) DIRECT PURCHASER PLAINTIFFS' AND (2) INDIRECT
PURCHASER PLAINTIFFS' OPPOSITIONS TO DEFENDANTS' MOTIONS TO DISMISS

1

**E.**   **Plaintiffs' Oppositions Fail to Identify Any Specific Acts of Fraudulent Concealment by Any of the Hitachi Defendants.**

2

3       As addressed in the Joint Defense Reply Briefs, Plaintiffs' claims must be dismissed

4   because they are outside the statute of limitations, and Plaintiffs have failed to adequately plead

5   fraudulent concealment by the Defendants to toll the statute of limitations.[2]  Not only must

6   Plaintiffs' allegations meet the pleading requirements demanded by *Twombly*, they must also

7   plead their claims of fraudulent concealment with particularity as required by Rule 9(b)'s

8   heightened pleading standard, yet Plaintiffs rely on essentially the same allegations they cite as

9   evidence of an antitrust conspiracy to establish their fraudulent concealment claims.  As such,

10  these allegations must be sufficient not only to overcome the pleading standards of Rule 8 and

11  *Twombly*, but also the heightened pleading requirements of Rule 9.  *See Iqbal*, 129 S. Ct. at 1954

12  ("Rule 9 merely excuses a party from pleading discriminatory intent under an elevated pleading

13  standard.  It does not give him license to evade the less rigid-though still operative-strictures of

14  Rule 8.").  Rule 9 requires even more, as Plaintiffs must allege "'specificity including an account

15  of the *time, place, and specific content* of the false representations as well as the *identities of the*

16  *parties* to the misrepresentations.'"  *Baggett v. Hewlett-Packard Co*., 582 F. Supp. 2d 1261, 1267

17  (C.D. Cal. 2007) (citing *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (emphasis

18  added)).

19      The allegations against "Hitachi" underscore the defects in Plaintiffs' claims of fraudulent

20  concealment.  Direct Plaintiffs concede that no Hitachi defendant attended any meetings after

21  2001.  DP Opp'n at 91.  Thus, not only are the allegations of these meetings attended by the

22  fictional "Hitachi" insufficient to meet *Twombly* pleading standards, at most they stand for the

23  proposition that a Hitachi defendant participated in the alleged conspiracy only through 2001, six

24  years before the first complaint was filed by Plaintiffs.  Plaintiffs are unable to toll the statute of

25  limitations to reach this conduct because they have failed to allege with the required specificity

26  _____

[2]      Indirect Plaintiffs' argument that the Hitachi defendants failed to address the statute of

27  limitations for their state law claims is meritless.  IP Opp'n at 72-73.  The Hitachi defendants
expressly incorporated the arguments in the Joint Defendants Motions to Dismiss the Direct and

28  Indirect Complaints, to which the Hitachi defendants were signatories.  Hit. Mot. at 2.

1   *any* affirmative acts of concealment against *any* Defendant, including the Hitachi defendants,

2   which are required to toll the statute of limitations. *See Rutledge v. Boston Woven Hose and*

3   *Rubber Co.*, 576 F.2d 248, 250 (9th Cir. 1978). Direct Plaintiffs concede that the DP-CAC is

4   silent as to specific allegations of affirmative conduct by any of the Hitachi defendants to conceal

5   the alleged conspiracy. *See* DP Opp'n at 92 ("Plaintiffs have alleged numerous specific acts of

6   fraudulent concealment that toll the statutory period for CRT sales," but failing to cite to *any*

7   allegations of affirmative conduct as to any Hitachi defendant). Indirect Plaintiffs' claim that

8   they specifically pled acts of affirmative conduct by the Hitachi defendants is unavailing. IP

9   Opp'n at 76 (citing IP-CAC ¶¶ 179-80). The allegations cited are *not* of specific affirmative acts

10  of concealment by any Hitachi defendant (or even "Hitachi"), but are instead the identical

11  allegations Indirect Plaintiffs make as to the underlying conspiracy. *See* IP-CAC ¶ 179

12  ("Defendant Hitachi … participated in several Glass meetings" and "Hitachi also engaged in

13  multiple bilateral discussions") and IP-CAC ¶ 180 ("Hitachi America and HEDUS were active,

14  knowing participants in the alleged conspiracy."). None of the allegations in these paragraphs

15  allege that the Hitachi defendants did anything to *conceal* the alleged conspiracy. Thus, Plaintiffs

16  fail to assert their claims of fraudulent conspiracy with the requisite particularity as to any of the

17  Hitachi defendants.

18          With respect to Hitachi, Ltd., Plaintiffs respond to Hitachi, Ltd.'s withdrawal from the

19  conspiracy by spinning off its CRT departments in 2001 only with their conclusory allegations of

20  agency, in that Hitachi, Ltd. "dominated and controlled the other members of the Hitachi

21  corporate family." DP Opp'n at 92; IP Opp'n at 87. As established above, Plaintiffs' mere

22  incantations of agency fall far short of the pleading requirements under Rule 8 and *Twombly*. As

23  such, they are even more deficient under the heightened pleading standard of Rule 9. Moreover,

24  Plaintiffs have failed to adequately plead that Hitachi, Ltd. *itself* engaged in any affirmative acts

25  to conceal the alleged conspiracy. IP Opp'n at 90. Plaintiffs impermissibly treat allegations

26  against the fictional "Hitachi" as if they were allegations specific to Hitachi, Ltd.; they are not.

27  *See* IP-CAC ¶¶ 156, 179. Because Plaintiffs fail to plead any *affirmative acts* taken by Hitachi,

28  Ltd., or any other Hitachi defendant, to conceal the alleged conspiracy, they cannot toll the statute

HITACHI DEFENDANTS' REPLY TO (1) DIRECT PURCHASER PLAINTIFFS' AND (2) INDIRECT
PURCHASER PLAINTIFFS' OPPOSITIONS TO DEFENDANTS' MOTIONS TO DISMISS

1   of limitations as to the Hitachi defendants as to any activity they may have engaged in outside of

2   the statute of limitations period.  Thus, Plaintiffs' claims as to the Hitachi defendants are time

3   barred.

4   **III.**   **CONCLUSION**

5           Plaintiffs have failed to state a claim for relief as to each Hitachi defendant.  For the

6   reasons set forth herein and in their original moving papers, the Hitachi defendants respectfully

7   request that both the DP-CAC and IP-CAC be dismissed as to them as a matter of law.

8   Dated: September 24, 2009                    MORGAN, LEWIS & BOCKIUS LLP
                                                 KENT M. ROGER
9

10

11                                              By _____/s/_____
                                                    Kent M. Roger
12
                                                Attorneys for Defendants
13                                              HITACHI, LTD., HITACHI AMERICA,
                                                LTD., HITACHI ELECTRONIC
14                                              DEVICES (USA), INC., HITACHI ASIA,
                                                LTD., and HITACHI DISPLAYS, LTD.
15

16

17

18

19

20

21

22

23

24

25

26

27

28

HITACHI DEFENDANTS' REPLY TO (1) DIRECT PURCHASER PLAINTIFFS' AND (2) INDIRECT
PURCHASER PLAINTIFFS' OPPOSITIONS TO DEFENDANTS' MOTIONS TO DISMISS