1  Samuel R. Miller (SBN 66871)
   srmiller@sidley.com
2  Marie L. Fiala (SBN 79676)
   mfiala@sidley.com
3  Ryan M. Sandrock (SBN 251781)
   rsandrock@sidley.com
4  Robert B. Martin III (SBN 235489)
   rbmartin@sidley.com
5  SIDLEY AUSTIN LLP
   555 California Street, 20th Floor
6  San Francisco, California 94104
   Telephone:       (415) 772-1200
7  Facsimile:       (415) 772-7400

8  Attorneys For Defendants
   LG ELECTRONICS, INC.; LG ELECTRONICS USA, INC.; and
9  LG ELECTRONICS TAIWAN TAIPEI CO., LTD.

10

                  UNITED STATES DISTRICT COURT

11              NORTHERN DISTRICT OF CALIFORNIA

12                  SAN FRANCISCO DIVISION

13

14  IN RE: CATHODE RAY TUBE (CRT)         )  Case No.: 3:07-cv-5944 SC
    ANTITRUST LITIGATION                  )
15                                        )  MDL No. 1917
                                          )
16  _____      )  **LG ELECTRONICS, INC., LG**
                                          )  **ELECTRONICS USA, INC., AND LG**
17  This Document Relates To:             )  **ELECTRONICS TAIWAN TAIPEI CO.,**
                                          )  **LTD.'S REPLY IN SUPPORT OF THEIR**
18  DIRECT PURCHASER ACTIONS and          )  **MOTION TO DISMISS DIRECT**
    INDIRECT PURCHASER ACTIONS            )  **PURCHASER PLAINTIFFS'**
19                                        )  **CONSOLIDATED AMENDED**
                                          )  **COMPLAINT AND INDIRECT**
20                                        )  **PURCHASER PLAINTIFFS'**
                                          )  **CONSOLIDATED AMENDED**
21                                        )  **COMPLAINT OR, IN THE**
                                          )  **ALTERNATIVE, FOR A MORE DEFINITE**
22                                        )  **STATEMENT**
                                          )
23                                        )  Date:     October 5, 2009
                                          )  Time:     9:00 a.m.
24                                        )  Before:   The Honorable Charles A. Legge, U.S.
                                          )            District Judge (Ret.), Special Master
25                                        )
                                          )
26                                        )
                                          )
27  _____      )

28

---

1

## <u>TABLE OF CONTENTS</u>

2

Page

I.  INTRODUCTION ................................................................................................1

II.  LGE WITHDREW FROM THE ALLEGED CONSPIRACY..............................................2

    A.  LGE Ceased Making Tubes and Resumed Competitive Behavior in 2001....................2

    B.  The Allegations Concerning the LGE Entities' Supposed
        Participation in a Finished Products Conspiracy Are Devoid of Content. ....................4

III.  THE COMPLAINTS FAIL TO PLEAD AN AGENCY RELATIONSHIP
     BETWEEN LGE AND LPD. ................................................................................5

IV.  THE COMPLAINTS FAIL TO PLEAD FRAUDULENT
     CONCEALMENT AS TO THE LGE ENTITIES.............................................................8

    A.  The Ninth Circuit Requires That Fraudulent Concealment
        Must Be Alleged Against Each Defendant. .................................................9

    B.  Plaintiffs Fail to Allege Any Affirmative Conduct
        Against the LGE Entities. ....................................................................9

V.  THE ALLEGATIONS AGAINST THE LGE ENTITIES DO NOT PLAUSIBLY
    LINK THE LGE ENTITIES TO THE ALLEGED CONSPIRACY. ...................................11

    A.  *Twombly* and *Iqbal* Require Allegations
        to Be Made Against Each Defendant............................................................11

    B.  The Complaints Do Not Sufficiently Allege the LGE Entities'
        Participation in a Conspiracy. ...............................................................12

        1.  The Allegations Against the LGE Entities Lack Specificity. ........................12

        2.  The Allegations Against the LGE Entities Also Make No Sense.................14

        3.  If Anything, the Allegations Regarding Government Investigations
           Make It Less Plausible the LGE Entities Were Involved in Any
           Conspiracy. ...............................................................................15

VI.  CONCLUSION................................................................................................15

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

i

# TABLE OF AUTHORITIES

Page(s)

CASES

*Am. Nat'l Red Cross v. United Way Cal. Capital Region*,
   2007 U.S. Dist. LEXIS 95296 (E.D. Cal. Dec. 18, 2007) ...........................................................6

*Ashcroft v. Iqbal*,
   129 S. Ct. 1937 (2009) ........................................................................................ passim

*Baggett v. Hewlett-Packard Co.*,
   582 F. Supp. 2d 1261 (C.D. Cal. 2007) ...........................................................................9

*Bailey Lumber & Supply Co. v. Georgia-Pac. Corp.*,
   2009 WL 2872307 (S.D. Miss. Aug. 10, 2009) ...............................................................5

*Barker v. Am. Mobil Power Corp.*,
   64 F.3d 1397 (9th Cir. 1995) ............................................................................................9

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................. passim

*Biggins v. Wells Fargo & Co.*,
   2009 U.S. Dist. LEXIS 64620 (N.D. Cal. July 27, 2009) .................................................6

*Brennan v. Concord EFS, Inc.*,
   369 F. Supp. 2d 1127 (N.D. Cal. 2005) ...........................................................................7

*Brunson Commc'n, Inc. v. Arbitron, Inc.*,
   239 F. Supp. 2d 550 (E.D. Pa. 2002) .............................................................................14

*California v. NRG Energy Inc.*,
   391 F.3d 1011 (9th Cir. 2004) ..........................................................................................6

*Canam Steel Corp. v. Mayo*,
   2009 U.S. Dist. LEXIS 44059 (E.D. Cal. May 22, 2009)..................................................6

*Car Carriers, Inc. v. Ford Motor Co.*,
   745 F.2d 1101 (7th Cir. 1984) ........................................................................................14

*Coastal Transfer Co. v. Toyota Motor Sales, U.S.A.*,
   833 F.2d 208 (9th Cir. 1987) ..........................................................................................14

*Conmar Corp. v. Mitsui & Co. (USA) Inc.*,
   858 F.2d 499 (9th Cir. 1988) ..........................................................................................11

*Copperweld Corp. v. Independence Tube Corp.*,
   467 U.S. 752 (1984)...........................................................................................................4

ii

*Dion LLC v. Infotek Wireless, Inc.*,
　　2007 WL 3231738 (N.D. Cal. Oct. 30, 2007)..............................................................6, 7

*DM Research, Inc. v. Coll. of Am. Pathologists*,
　　170 F.3d 53 (1st Cir. 1999).......................................................................................14

*Dolter v. Keene's Transfer, Inc.*,
　　2008 U.S. Dist. LEXIS 59436 (N.D. Ill. Aug. 5, 2008) ..............................................6

*Donahue v. Pendleton Woolen Mills, Inc.*,
　　633 F. Supp. 1423 (S.D.N.Y. 1986)........................................................................10

*Fair Housing of Marin v. Combs*,
　　285 F.3d 899 (9th Cir. 2002) .....................................................................................8

*Futurevision Cable Systems of Wiggins, Inc. v. Multivision Cable TV Corp.*,
　　789 F. Supp. 760 (S.D. Miss. 1992).........................................................................14

*Grimmett v. Brown*,
　　75 F.3d 506 (9th Cir. 1996) .....................................................................................11

*In re ATM Fee Antitrust Litig.*,
　　2009 U.S. Dist. LEXIS 83199 (N.D. Cal. Sept. 4, 2009) ...........................................11

*In re Cal. Title Ins. Antitrust Litig.*,
　　2009 U.S. Dist. LEXIS 43323 (N.D. Cal. May 21, 2009) ...................................6, 7, 11

*In re Flash Memory Antitrust Litig.*,
　　2009 WL 1096602 (N.D. Cal. Mar. 31, 2009)..............................................................4

*In re Milk Prods. Antitrust Litig.*,
　　84 F. Supp. 2d 1016 (D. Minn. 1997).......................................................................10

*In re Sagent Tec., Inc. Deriv. Litig.*,
　　278 F. Supp. 2d 1979 (N.D. Cal. 2003) ....................................................................12

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
　　580 F. Supp. 2d 896 (N.D. Cal. 2008) .....................................................................11

*In re TFT-LCD Antitrust Litig.*,
　　586 F. Supp. 2d 1109 (N.D. Cal. 2008) ..................................................................9, 11

*In re TFT-LCD Antitrust Litig.*,
　　599 F. Supp. 2d 1179 (N.D. Cal. 2009) ...............................................................7, 9, 11

*Jablon v. Dean Witter & Co.*,
　　614 F.2d 677 (9th Cir. 1980) ...................................................................................14

*Kendall v. Visa U.S.A., Inc.*,
　　518 F.3d 1042 (9th Cir. 2008) ............................................................................12, 13

iii

*Krehl v. Baskin-Robbins Ice Cream Co.*,
    78 F.R.D. 108 (C.D. Cal. 1978) ............................................................2

*Kuntze v. Carrane*,
    1993 U.S. Dist. LEXIS 3668 (N.D. Ill. Mar. 19, 1993)........................10

*Lovesy v. Armed Forces Ben. Ass'n*,
    2008 WL 4856350 (N.D. Cal. Nov. 7, 2008) ........................................8

*Lubic v. Fid. Nat'l Fin., Inc.*,
    2009 U.S. Dist. LEXIS 62092 (W.D. Wash. July 20, 2009) ................13

*Moore v. Kayport Packages Express, Inc.*,
    885 F.2d 531 (9th Cir. 1989) ................................................................8

*Neilson v. Union Bank of Cal., N.A.*,
    290 F. Supp. 2d 1101 (C.D. Cal. 2003) .............................................6, 7

*Nordberg v. Trilegiant Corp.*,
    445 F. Supp. 2d 1082 (N.D. Cal. 2006) ...............................................15

*Pocahontas Supreme Coal Co. v. Bethlehem Steel Corp.*,
    828 F.2d 211 (4th Cir. 1987) ...............................................................11

*Rutledge v. Boston Woven Hose & Rubber Co.*,
    576 F.2d 248 (9th Cir. 1978) ...............................................................10

*Siemers v. Wells Fargo & Co.*,
    2006 WL 2355411 (N.D. Cal. Aug. 14, 2006) ......................................8

*SmithKline Beecham Corp. v. Apotex Corp.*,
    383 F. Supp. 2d 686 (E.D. Pa. 2004) ...................................................14

*Sun Microsystems Inc. v. Hynix Semiconductor Inc.*,
    608 F. Supp. 2d 1166 (N.D. Cal. 2009) .................................................6

*United States v. Antar*,
    53 F.3d 568 (3d Cir. 1995)....................................................................3

*United States v. Bestfoods*,
    524 U.S. 51 (1998)................................................................................4

*United States v. Eisen*,
    974 F.2d 246 (2d Cir. 1992)..................................................................3

*United States v. Lowell*,
    649 F.2d 950 (3d Cir. 1981)..................................................................3

*United States v. U.S. Gypsum Co.*,
    438 U.S. 422 (1978)..............................................................................3

iv

*Weinstein v. Saturn Corp.*,
    303 Fed. Appx. 424 (9th Cir. 2008)................................................................................8


**STATUTES & RULES**

9th Cir. R. 36-3(a) (2007) ................................................................................................8

Fed. R. Civ. P. § 9(b) ..........................................................................................8, 9, 10

Fed. R. Civ. P. § 12(e) ....................................................................................................15


**OTHER AUTHORITIES**

Restatement (Third) Of Agency § 1.01 (2006) ................................................................6

1

### MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.    INTRODUCTION

3           This Court serves in a gatekeeper role to evaluate the allegations against Defendants LG

4   Electronics, Inc. ("LGE"), LG Electronics USA, Inc. ("LGUSA"), and LG Electronics Taiwan

5   Taipei Co., Ltd. ("LGETT") (collectively, the "LGE Entities") with the same care as if they were the

6   *only* defendants.  As the U.S. Supreme Court made clear in *Bell Atlantic Corp. v. Twombly*, 550 U.S.

7   544 (2007), and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), plaintiffs cannot subject the LGE Entities

8   to burdensome discovery, class certification, and the attendant settlement pressures, without

9   satisfying the Court that the Complaints contain facially plausible allegations of antitrust conspiracy

10  against them as individual entities.  That is not the case on this record.

11          Not one sentence in plaintiffs' 275 pages of opposition briefs attempts to respond to the

12  crucial and dispositive point raised by the LGE Entities: since 2001, the LGE Entities have been

13  *buyers* of the allegedly price-fixed Tubes, and thus were victims of the alleged cartel.[1]  Plaintiffs

14  instead urge this Court to ignore that unique issue and deny the LGE Entities' Motion to Dismiss

15  based on allegations that indiscriminately lump the LGE Entities with each other, and with the other

16  separate defendants.

17          Nor should the Court permit this case to proceed against the LGE Entities when the

18  Complaints demonstrate that the claims against them are time-barred.  As asserted in the Motion and

19  discussed further below, the LGE Entities withdrew from the alleged conspiracy in 2001.  According

20  to the Complaints, the LGE Entities engaged in two separate instances of conduct that effected

21  withdrawal, either of which, standing alone, would have triggered the statute of limitations in 2001.

22  The limitations period therefore expired in 2005, long before plaintiffs filed their suits.

23          Plaintiffs' efforts to avoid the statute of limitations—by pleading agency or fraudulent

24  concealment—also fail.  The Complaints contain no specific allegations supporting the theory that

25

26  ---
[1] The Complaints are bare of allegations supporting any conspiracy at all concerning Finished
Products, let alone a conspiracy including the LGE Entities.  Plaintiffs' conclusory allegations,
27  which sweep Finished Products into the same "market" as Tubes, are a blatant attempt to circumvent
the withdrawal and statute of limitations issues that otherwise would bar their claims against the
LGE Entities.  They do not comply with *Twombly* or *Iqbal*, and do not save plaintiffs' claims.

28

1

1    LPD, a separate Dutch company, acted as an agent of the LGE Entities from 2001 through 2006.

2    Nor do the Complaints support fraudulent concealment, because it is settled law in the Ninth Circuit

3    that allegations of fraudulent concealment must be pleaded *against each individual defendant*.

4    Plaintiffs concede the Complaints do not contain such allegations, and thus the statute of limitations

5    cannot be tolled pursuant to that doctrine.

6          In short, regardless of whether plaintiffs may have stated claims against other parties, it is

7    clear that they have not stated any claims against the LGE Entities.  Accordingly, the LGE Entities'

8    Motion should be granted.

9    **II.     LGE WITHDREW FROM THE ALLEGED CONSPIRACY.**

10         **A.     LGE Ceased Making Tubes and Resumed Competitive Behavior in 2001.**

11         The Complaints include allegations demonstrating in two ways that the LGE Entities

12   withdrew from the alleged conspiracy in 2001, and that the statute of limitations therefore expired

13   four years later in 2005, long before plaintiffs filed their lawsuits.  Mot. at 8–9.  First, in 2001, LGE

14   divested its "CRT business" (*i.e.*, Tubes) to LPD, a separate Dutch company in which LGE has an

15   ownership interest, but which is not part of the LGE Entities; the sale constitutes an effective

16   withdrawal from the alleged conspiracy.  *Id.* (citing *Morton's Mkt., Inc. v. Gustafson's Dairy, Inc.*,

17   198 F.3d 823, 839 (11th Cir. 1999)); *see Krehl v. Baskin-Robbins Ice Cream Co.*, 78 F.R.D. 108,

18   124 (C.D. Cal. 1978) (dismissing defendant from class action because it "sold out its interest" and

19   withdrew from conspiracy such that the statute of limitations would bar claims against it).  Second,

20   following the 2001 sale, LGE "resum[ed] . . . competitive behavior" by becoming a *buyer* of Tubes.

21   Mot. at 9 (citing *United States v. Nippon Paper Indus. Co., Ltd.*, 62 F. Supp. 2d 173, 190 (D. Mass.

22   1999)).  That is, LGE—which ceased to manufacture Tubes but continued to manufacture Finished

23   Products—began buying Tubes from some of the named defendants.[2]  DPC ¶ 120.  This resumption

24

25   [2] Plaintiffs contend that many defendants are vertically-integrated manufacturers, whereby their
     related companies manufactured and sold Finished Products with price-fixed Tubes supplied by their
26   own subsidiaries, and thus any over-charge was kept within the corporate family.  DP Opp'n at 56–
     60; IP Opp'n at 68–72.  This allegation is inapplicable to the LGE Entities, because since 2001, LGE
27   has only made Finished Products (and LGUSA and LGETT make neither Tubes nor Finished
     Products).  Mot. at 3.  Nor can plaintiffs reasonably contend that LPD is vertically-integrated with
28   any of the LGE Entities.  *See* IP Opp'n at 18.  To the contrary, LPD is a separate company and is not

                                          *(Footnote continued)*

1  of competitive behavior—by which LGE would have become a *victim* of any conspiracy—is a

2  further act of withdrawal.[3]  *See United States v. U.S. Gypsum Co.*, 438 U.S. 422, 464–65 (1978)

3  (defendant withdraws by engaging in "[a]ffirmative acts inconsistent with the object of the

4  conspiracy and communicated in a manner reasonably calculated to reach co-conspirators.").

5       The fact that LGE would have been a victim of the alleged conspiracy defeats plaintiffs'

6  contention that LGE's withdrawal was ineffective because it did not "sever all [its] ties" with the

7  conspiracy.[4]  *See* DP Opp'n at 51 (citing *United States v. Lowell*, 649 F.2d 950, 955 (3d Cir. 1981),

8  *United States v. Antar*, 53 F.3d 568, 583 (3d Cir. 1995) and *United States v. Eisen*, 974 F.2d 246,

9  269 (2d Cir. 1992)).  At most, these cases hold that a party does not withdraw from a conspiracy if it

10 continues to: (1) profit from the conspiracy *and* (2) either continues to participate in the conspiracy

11 *or* attempts to conceal the conspiracy.  In *Eisen*, for instance, one defendant continued to work for

12 the conspiring firm after he ceased full-time employment, while the other defendant sought to

13 convince another party to lie to investigators in order to conceal the conspiracy.  974 F.2d at 268-69

14 & n. 8; *see also Lowell*, 649 F.2d at 956–58 (upholding rejection of withdrawal defense where

15 defendant, after resigning from company, warned his co-conspirators of ongoing government

16 investigations); *Antar*, 53 F.3d at 583 (even if defendant totally severs ties with enterprise, defendant

17 may still remain part of conspiracy "if he or she continues to do acts in furtherance of the

18 conspiracy").  But here, there are no such allegations of LGE's continuing involvement subsequent

19 to its withdrawal from the Tubes business.  Moreover, neither *Eisen* or *Antar* (or any other case of

20 which we are aware) involved a defendant who became a victim of the conspiracy after withdrawal.

21      Plaintiffs also suggest, without authority, that "combining forces with another defendant to

22 form a joint venture does not constitute effective withdrawal."  DP Opp'n at 51–52.  There is no

23

24 a subsidiary of the LGE Entities.  Mot. at 6.  For those reasons, the plaintiffs' "vertical integration"
   argument is not responsive to the LGE Entities' Motion.

25 [3] LGE's withdrawal was also effective as to LGUSA and LGETT.  Mot. at 8.

26 [4] Plaintiffs also point to their conclusory allegation that the LGE Entities "never effectively
   withdrew from this conspiracy" (DP Opp'n at 97 (citing DPC ¶ 160)), but that allegation is nothing
27 more than *ipse dixit* which has no factual or legal value.  *Iqbal*, 129 S. Ct. at 1949 (courts "are not
   bound to accept as true a legal conclusion couched as a factual allegation").

28

1    basis in law for treating a joint venture differently than any other lawful separate corporate

2    enterprise, particularly since the joint venture structure can afford significant procompetitive

3    benefits.  *See Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 768 (1984) ("Other

4    combinations, such as . . . joint ventures . . . hold the promise of increasing a firm's efficiency and

5    enabling it to compete more effectively.").  *In re Flash Memory Antitrust Litig.*, 2009 WL 1096602

6    (N.D. Cal. Mar. 31, 2009), *see* DP Opp'n at 52, is not to the contrary; that complaint contained

7    specific allegations that a joint venture in question was a "means to maintain and achieve the end

8    result of the conspiracy by controlling the supply, and thereby permitting increases in the price for

9    the products."  *Id.* at *10.  Here, however, the Complaints contain no allegations that LPD was

10   formed for such a purpose or performed such a function.[5]

11           **B.    The Allegations Concerning the LGE Entities' Supposed Participation in a
                     Finished Products Conspiracy Are Devoid of Content.**

12

13           Plaintiffs further contend that LGE did not withdraw from the conspiracy because it

14   continues to manufacture Finished Products, part of the purported "CRT Products" market which

15   plaintiffs contend this Court must accept as a given.  *See, e.g.*, DP Opp'n at 93.  To the contrary, the

16   Court should reject such an unrestrained product market assertion.  It is crucial for the Complaints to

17   specify and distinguish facts pertaining to the Tubes and Finished Products markets rather than

18   blurring them together.  Without a properly defined product market, it would be impossible for the

19   Court to evaluate whether the plaintiffs have set forth sufficient factual detail to allege plausibly that

20   each defendant was involved in a price-fixing conspiracy in that market, or to evaluate application of

21   the statute of limitations.

22           The alleged "CRT Products" market includes at least four entirely distinct product categories

23   (television tubes, computer tubes, television sets, and computer monitors), none of which are

24   ────────────────

25   [5] Plaintiffs' rhetorical statement that a finding of withdrawal here "would be to exalt form over
     substance" (DP Opp'n at 98 n.62) ignores the importance attached to corporate separateness under
     U.S. law.  LPD is a separate company and is not a subsidiary, agent, or alter ego of the LGE Entities
26   (Mot. at 6, 13–15); the LGE Entities cannot be held liable for the conduct of LPD anymore then an
     individual could be held liable for the wrongful conduct of his neighbor.  *See United States v.
27   Bestfoods*, 524 U.S. 51, 61 (1998) (noting corporate separateness "is a general principle of corporate
     law deeply 'ingrained in our economic and legal systems'") (citation omitted).

28

                                                      4

1   interchangeable.  Even plaintiffs recognize material differences between the Finished Products and

2   the Tubes markets, as they allege that the Finished Product market is highly competitive.  IPC ¶ 227

3   (market for "CRT Products" is "subject to vigorous price competition . . . .").  Plaintiffs also allege

4   conspiracy against multiple defendants, many of whom do not manufacture or sell all of those

5   products.[6]  Mot. at 4–5.  And it is obvious on the face of the pleadings that many well-known

6   manufacturers of Finished Products (*e.g.*, CRT televisions) have not been named as defendants here.

7   Nor is there any factual basis for asserting a conspiracy as to Finished Products – no government

8   investigation into Finished Products is alleged; the cited investigations are limited solely to Tubes.

9   Mot. at 5.  It is utterly implausible to posit a conspiracy in a highly competitive market, with

10  numerous competitors that are not alleged to have participated in the conspiracy, and in which

11  government enforcement agencies have taken no action.

12        Under such circumstances, this Court may reject plaintiffs' overbroad market allegations and

13  instead limit the relevant market to Tubes only.  *See Bailey Lumber & Supply Co. v. Georgia-Pac.*

14  *Corp.*, 2009 WL 2872307 (S.D. Miss. Aug. 10, 2009).  There, the plaintiff alleged that oriented

15  strand board ("OSB") and plywood "should be viewed together as the 'structural panels' market

16  rather than as separate markets."  *Id.* at *2.  But the court observed that both products have separate

17  manufacturing plants, are used in different ways, each defendant had a different market share for

18  OSB and plywood, and only plywood was subject to antitrust litigation in the past.  *Id.* at **2–3.

19  The court concluded—for purposes of applying the statute of limitations to the claims at issue—that

20  "OSB and plywood are different products with different markets, not inseparable as the 'structural

21  panel' market."  *Id.* at *3.  The Court should make the same determination here, and limit the

22  relevant market to Tubes.

23  **III.    THE COMPLAINTS FAIL TO PLEAD AN AGENCY RELATIONSHIP BETWEEN
            LGE AND LPD.**

24

25        LPD is admittedly a separate company from the LGE Entities; it is neither a subsidiary of any

26  _____

27  [6] The LGE Entities do not manufacture or sell two of those products.  Indeed, the mere fact that LGE
    is simultaneously a buyer of Tubes and a manufacturer of Finished Products shows that plaintiffs'
    allegations of a unitary "CRT Products" market is inherently implausible.

28

of the LGE Entities, nor part of their corporate group.  Mot. at 5–6.  Even plaintiffs note it is "an independent company" (DPC ¶ 41; IPC ¶ 161), and that LPD "is currently party to a bankruptcy proceeding pending in Hong Kong and is not a party to any of the pending motions."  DP Opp'n at 95 n.61.  Yet, plaintiffs allege in conclusory fashion that the LGE Entities participated in the conspiracy after 2001 through LPD, which acted as their agent.[7]

To demonstrate an agency relationship under the federal common law test applied in federal antitrust actions, plaintiff must show:  "(1) a manifestation by the principal that the agent shall act for him; (2) that the agent has accepted the undertaking; and (3) that there is an understanding between the parties that the principal is to be in control of the undertaking."  *Sun Microsystems Inc. v. Hynix Semiconductor Inc.*, 608 F. Supp. 2d 1166, 1187–88 (N.D. Cal. 2009); *see* Restatement (Third) Of Agency § 1.01 (2006).  In determining the existence of agency, "[i]ndependence is to be presumed."  *California v. NRG Energy Inc.*, 391 F.3d 1011, 1024 (9th Cir. 2004), *rev'd on other grounds*, *Powerex Corp. v. Reliant Energy Servs., Inc.*, 551 U.S. 224 (2007).  Conclusory allegations cannot overcome that presumption; instead, plaintiffs must "plead specific facts" demonstrating an agency relationship.  *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1116 (C.D. Cal. 2003).  Cases to that effect are legion.[8]

Notwithstanding that overwhelming authority, plaintiffs claim they are "not required to plead agency elements."  IP Opp'n at 45 (citing to *Dion LLC v. Infotek Wireless, Inc.*, 2007 WL 3231738 (N.D. Cal. Oct. 30, 2007)).  *Dion* is obviously distinguishable in light of the detailed factual

---

[7] Plaintiffs disclaimed any alter ego theory and instead rely solely upon an agency.  DP Opp'n at 81 n.50, 100, 112–13; IP Opp'n at 46.

[8] *See Biggins v. Wells Fargo & Co.*, 2009 U.S. Dist. LEXIS 64620, at **33–36 (N.D. Cal. July 27, 2009) (rejecting allegation that one company is the "agent, subsidiary, parent" of another because such allegations "are nothing more than bare legal conclusions" which must be rejected under *Twombly*); *Canam Steel Corp. v. Mayo*, 2009 U.S. Dist. LEXIS 44059, at **6–8 (E.D. Cal. May 22, 2009) (failure to allege any facts establishing an agency relationship is fatal to a claim against a putative principal); *In re Cal. Title Ins. Antitrust Litig.*, 2009 U.S. Dist. LEXIS 43323, at *29 (N.D. Cal. May 21, 2009) (rejecting conclusory allegations of agency where "[p]laintiffs . . . do not attempt to allege any facts to show that the parent corporations knew what their subsidiaries were doing"); *Dolter v. Keene's Transfer, Inc.*, 2008 U.S. Dist. LEXIS 59436, at **7–8 (N.D. Ill. Aug. 5, 2008) (rejecting plaintiffs' allegations of agency because they included only "labels and conclusions"); *Am. Nat'l Red Cross v. United Way Cal. Capital Region*, 2007 U.S. Dist. LEXIS 95296, at *30 (E.D. Cal. Dec. 18, 2007) (rejecting complaint that did not "allege one fact that suggests such an agency relationship.  This bare legal conclusion is not sufficient to withstand a motion to dismiss.").

1   allegations as to agency and alter ego pleaded in that complaint, 2007 WL 3231738, at **3–4, but in

2   any event, the issue here is not whether plaintiffs have pled "agency elements," but whether they

3   have pled "specific facts" *at all* in support of their agency theory.  *See Neilson*, 290 F. Supp. 2d at

4   1116.  They have not.  The complaints are devoid of *any* facts tending to show an agency

5   relationship between the LGE Entities and LPD.  Mot. at 13–15.  Plaintiffs contend (without

6   citation) that the DPC "alleges that one or more employees of the LG Defendant corporate family

7   attended the conspiratorial meetings . . . and that when they did so they were attending on behalf of

8   and representing every company in the LG Defendant corporate family and acting as their agents for

9   purposes of the agreements and understandings reached at those meetings."  DP Opp'n at 100.  The

10  complaint itself contains no such allegations specific to the LGE Entities and LPD; instead, plaintiffs

11  appear to refer to a generic allegation stating that conclusion collectively for all defendants.  *See*

12  DPC ¶ 154; IPC ¶ 188.  In any event, LPD is not in the same "corporate family" as any of the LGE

13  Entities.  This fact distinguishes this case from *In re TFT-LCD Antitrust Litig.*, 599 F. Supp. 2d

14  1179, 1184–85 (N.D. Cal. 2009) ("*TFT-LCD II*"), which held that agency relationship was properly

15  alleged between parents and subsidiaries; it did not speak, however, to entirely separate companies.

16          Even if LPD was a subsidiary of LGE (which it is not), the allegations would still be

17  insufficient.  In *In re California Title Ins.*, the court rejected similarly threadbare agency allegations,

18  including that (a) the parent corporation "wholly owns and controls its affiliates and subsidiaries";

19  (b) each of the subsidiaries are "engaged in the conduct challenged here with the approval" of the

20  parent; and (c) each defendant "acted as the principal, agent, or joint venturer of, or for, other

21  defendants with respect to the acts, violations, and common course of conduct alleged by Plaintiffs."

22  2009 U.S. Dist. LEXIS 43323, at *29.  The court considered these allegations only "bare legal

23  conclusions," insufficient to support a finding of agency.[9]  *Id.*  So too here, where plaintiffs allege

24  that employees acted on behalf of each defendant in the same corporate family, an assertion

---

[9] Similarly, the complaints allege that LGE "dominated and controlled the finances, policies and affairs of" LGUSA and LGETT.  DPC ¶¶ 42-43.  This allegation is plainly insufficient.  *See Brennan v. Concord EFS, Inc.*, 369 F. Supp. 2d 1127, 1136 (N.D. Cal. 2005) (rejecting as conclusory agency allegations that the company "exercised such dominion and control over Bank One, NA and Bank One Arizona that it is liable . . .").

7

1    effectively identical to (b) and (c) above.

2          The *reductio ad absurdum* of plaintiffs' argument is manifested in IPC ¶ 113, which alleges

3    that "[e]ach of the Defendants named herein acted as the agent . . . of or for the other Defendants

4    with respect to the acts, violations and common course of conduct alleged herein."  Plaintiffs

5    contend that "[i]n other words, where there is an allegation that a representative of" any defendant

6    participated in the alleged conspiracy, "that representative was there . . . *as the agent* of all of the

7    named defendants."  IP Opp'n at 34 (emphasis added).  That is, defendants Philips, Hitachi,

8    Samsung, Toshiba, Panasonic, IRICO, Chunghwa, Thai CRT, BMCC, Daewoo, and Samtel also

9    acted as agents for the LGE Entities, and vice versa.  To accept such allegations as sufficient would

10   render the agent-principal relationship meaningless; they should be rejected.[10]

11   ## IV.   THE COMPLAINTS FAIL TO PLEAD FRAUDULENT CONCEALMENT AS TO
12   THE LGE ENTITIES.

13         There is no question that fraudulent concealment must be pleaded with particularity under

14   Federal Rule 9(b).  Mot. at 10 (citing cases).  Plaintiffs concede this point, but then wrongly contend

15   that "[t]he standard for pleading fraudulent concealment is not 'stringent,'" and that their allegations

16   "need only satisfy the purpose of Rule 9(b), which is to provide a defendant with fair notice of the

17   plaintiffs' claims . . . ."  DP Opp'n at 22-24 (citing *Moore v. Kayport Packages Express, Inc.*, 885

18   F.2d 531, 540 (9th Cir. 1989)).  Plaintiffs somehow overlook *Moore*'s holding that Rule 9(b)

19   requires pleadings to "identif[y] the circumstances constituting fraud," including "statements of the

20   time, place and nature of the alleged fraudulent activities," and also "attribute particular fraudulent

21   statements or acts to the individual defendants."  885 F.2d at 540; *see Lovesy v. Armed Forces Ben.*

22   *Ass'n*, 2008 WL 4856350, at *2 (N.D. Cal. Nov. 7, 2008) (under Rule 9(b), "[a] plaintiff must allege

23

24   _____

25   [10] *Weinstein v. Saturn Corp.*, 303 Fed. Appx. 424, 426 (9th Cir. 2008), to which plaintiffs cite, is
     distinguishable because the court noted the allegations of agency there would have even passed
26   muster under the heightened particularity requirements of Rule 9(b), *id.*; the same certainly cannot
     be said here.  It also bears noting that *Weinstein* is a non-precedential opinion.  *See* 9th Cir. R. 36-
27   3(a) (2007).  *Fair Housing of Marin v. Combs*, 285 F.3d 899 (9th Cir. 2002), and *Siemers v. Wells*
     *Fargo & Co.*, 2006 WL 2355411, at *14 (N.D. Cal. Aug. 14, 2006), also cited by plaintiffs, are
28   inapplicable here as neither had anything to do with principles of agency or alter ego.

                                             8

the time, place, and contents of the false representations or omissions, as well as the identity of the person making the misrepresentations.").  Plaintiffs fail in that regard as to the LGE Entities.[11]

## A.  The Ninth Circuit Requires That Fraudulent Concealment Must Be Alleged Against Each Defendant.

It is binding precedent in this Circuit that "[p]laintiffs may not generally use the fraudulent concealment by one defendant as a means to toll the statute of limitations against other defendants." *See Barker v. Am. Mobil Power Corp.*, 64 F.3d 1397, 1402 (9th Cir. 1995) (rejecting plaintiffs' attempt to plead fraudulent concealment collectively against multiple defendants in a related statutory context under ERISA).  *Barker* is consistent with other cases holding the same in the antitrust context.  *See* Mot. at 10 (citing cases).  In light of *Barker*, the cases cited by plaintiffs—out-of-circuit cases allowing fraudulent concealment allegations to be pleaded against defendants collectively—are inapposite.[12]  DP Opp'n at 23, 28–29; IP Opp'n at 82.  And because plaintiffs concede they alleged fraudulent concealment against defendants collectively (DP Opp'n at 23, 28–29), rather than individually as required by *Barker*, this Court should reject plaintiffs' fraudulent concealment allegations outright.[13]

## B.  Plaintiffs Fail to Allege Any Affirmative Conduct Against the LGE Entities.

It is also undisputed that to invoke fraudulent concealment, plaintiffs must allege (with particularity and as to each defendant) "facts showing affirmative conduct upon the part of the

---

[11] Plaintiffs contend that "fraud by concealment . . . can succeed without the same level of specificity required by a normal fraud claim."  DP Opp'n at 23 (quoting *Baggett v. Hewlett-Packard Co.*, 582 F. Supp. 2d 1261, 1267 (C.D. Cal. 2007)).  Even a cursory reading of *Baggett* shows it considered a *cause of action* for fraudulent concealment under California state law, not the fraudulent concealment doctrine allowing for tolling of the statute of limitations under federal antitrust law.

[12] Neither *In re TFT-LCD Antitrust Litig.*, 586 F. Supp. 2d 1109 (N.D. Cal. 2008) ("*TFT-LCD I*"), nor *TFT-LCD II*, 599 F. Supp. 2d 1179, support plaintiffs' position here.  In those cases, defendants' joint motions to dismiss did not raise the issue of whether the complaints had alleged fraudulent concealment individually against each defendant, and neither of the court's opinions considered the issue.  LGE and LGUSA did file a separate motion to dismiss in that action raising that issue, but they were dismissed from the action before the court ruled on the motion.  *In re TFT-LCD Antitrust Litig.*, No. M:07-cv-01827-SI, Doc. No. 604 (N.D. Cal. filed May 9, 2008).

[13] As part of that collective pleading, Indirect Plaintiffs contend they alleged affirmative conduct by the LGE Entities, raising six bulleted points.  IP Opp'n at 76.  Yet none of those points refer individually to the LGE Entities, as they must.

9

1    defendant which would, under the circumstances of the case, lead a reasonable person to believe that

2    he did not have a claim for relief."  *Rutledge v. Boston Woven Hose & Rubber Co.*, 576 F.2d 248,

3    250 (9th Cir. 1978).  Plaintiffs also fail in this regard.  They plead only the following allegations

4    against the LGE Entities:  (a) "an LGE Electronics distributor in India" attributed higher prices of

5    CRT monitors to a glass shell shortage (DP Opp'n at 28; DPC ¶ 209); (b) LGE "periodically issued

6    false press statements falsely asserting that CRT prices were being driven lower by intense

7    competition to explain higher prices" (DP Opp'n at 28; DPC ¶ 210); and (c) LGE and LGETT

8    "participated in meetings where these agreements to conceal the conspiracy were reached and that

9    LGUSA was represented at these meetings."  IP Opp'n at 76 (citing IPC ¶¶ 168–69).

10          None of those allegations are sufficient to meet Rule 9(b) particularity requirements, because

11   they lack specificity as to time, place, and identity of the speaker that can be attributed to the LGE

12   Entities.  For example, plaintiffs concede they failed to allege that (a) was false (DP Opp'n at 27

13   n.11), and they also again fail to explain how a statement by a *distributor* can be attributed to any of

14   the LGE Entities.  Mot. at 11, 18; *see Kuntze v. Carrane*, 1993 U.S. Dist. LEXIS 3668, at *21 (N.D.

15   Ill. Mar. 19, 1993) (fraudulent concealment "is limited to the conduct of the defendants and not the

16   conduct of third parties").  Allegation (b) is also deficient, in that it lacks any specificity as to time,

17   place, identity of speaker, or substance.  *See In re Milk Prods. Antitrust Litig.*, 84 F. Supp. 2d 1016,

18   1024 (D. Minn. 1997) ("Vaguely alleging that 'something' occurred at 'sometime' fails to satisfy the

19   particularity requirement.").  Courts have also rejected such conclusory allegations regarding press

20   releases or public statements.  *Id.* at 1023 ("the mere allegation that Defendants mailed letters to

21   customers attributing price increases to market factors [ ] does not lead to the conclusion that

22   Defendants affirmatively concealed a conspiracy, . . ."); *Donahue v. Pendleton Woolen Mills, Inc.*,

23   633 F. Supp. 1423, 1443 (S.D.N.Y. 1986) ("General assertions by counsel that [the defendant]

24   supplied blatantly false and fraudulent information to retailers and sales representatives fall far short

25   of meeting the pleading requirement for wrongful concealment.").  Finally, (c) also lacks the

26   requisite specificity, and in any event, attendance at conspiratorial meetings is insufficient to support

27   fraudulent concealment.  Otherwise, any conduct inherent to the conspiracy itself would support

28   tolling the statute of limitations, thus leading to the tolling of the statute of limitations for all

conspiracies.  That is not the law in this Circuit.[14]  This Court should thus reject plaintiffs'

inadequate fraudulent concealment allegations and find that all claims against the LGE Entities are

time-barred.

## V.   THE ALLEGATIONS AGAINST THE LGE ENTITIES DO NOT PLAUSIBLY LINK THE LGE ENTITIES TO THE ALLEGED CONSPIRACY.

### A.   *Twombly* and *Iqbal* Require Allegations to Be Made Against Each Defendant.

It bears repeating that plaintiffs cannot state a cause of action against a particular defendant

merely by asserting generally that wrongful conduct occurred and then alleging, in conclusory terms,

that the particular defendant conspired with others in that conduct.  Instead, a plaintiff must plead

specific and plausible *facts* demonstrating the participation of *each defendant* in the alleged unlawful

conduct.  *Iqbal*, 129 S. Ct. at 1949–52; *Twombly*, 550 U.S. at 565 & n.10.

Plaintiffs contend, however, that they need not detail their conspiracy allegations against

each individual defendant.[15]  DP Opp'n at 39–40; IP Opp'n at 27–32.  This assertion is contrary to

multiple cases holding the opposite.  *See* Mot. at 16–17 (citing cases); *In re ATM Fee Antitrust

Litig.*, 2009 U.S. Dist. LEXIS 83199, at *55–56 (N.D. Cal. Sept. 4, 2009) (dismissing antitrust

complaint that "merely lump[s] together allegations against the holding company and its subsidiary,"

and requiring "allegations . . . that tie the holding companies to the alleged conspiracy"); *In re Cal.

Title Ins. Antitrust Litig.*, 2009 U.S. Dist. LEXIS 43323, at *28 (rejecting "[p]laintiffs' attempt to

show the Parent Corporations directly participated in the conspiracy by making general allegations

---

[14] *See Conmar Corp. v. Mitsui & Co. (USA) Inc.*, 858 F.2d 499, 505 (9th Cir. 1988); *Pocahontas Supreme Coal Co. v. Bethlehem Steel Corp.*, 828 F.2d 211, 218–19 (4th Cir. 1987) ("To permit a claim of fraudulent concealment to rest on no more than an alleged failure to own up to illegal conduct upon this sort of timid inquiry would effectively nullify the statute of limitations in these cases.  It can hardly be imagined that illegal activities would ever be so gratuitously revealed. 'Fraudulent concealment' implies conduct more affirmatively directed at deflecting litigation than that alleged here."); *see also Grinmett v. Brown*, 75 F.3d 506, 515 (9th Cir. 1996) ("A failure to 'own up' does not constitute active concealment.").

[15] Plaintiffs recognize that *TFT-LCD I* held that a complaint "must allege that each individual defendant joined the conspiracy and played some role in it," 586 F. Supp. 2d at 1117, but then suggest that *TFT-LCD II* backed away from that holding. DP Opp'n at 40.  That suggestion is not well-taken, because *TFT-LCD II* states that a complaint must include allegations as to "the involvement of each defendant . . . ." 599 F. Supp. 2d at 1184; *see also In re Static Random Access Memory (SRAM) Antitrust Litig.*, 580 F. Supp. 2d 896, 904 (N.D. Cal. 2008) (plaintiffs' allegations must "plausibly suggest that each Defendant participated in the alleged conspiracy.").

11

1  as to the families of the title insurance companies, without any specific allegations as to what the

2  Parent Corporations did").[16]  Plaintiffs' proposition also offends the underlying pleading standards

3  imposed by *Twombly* and *Iqbal*.  The U.S. Supreme Court emphasized that each claim must have

4  "facial plausibility," which occurs "when the plaintiff pleads factual content that allows the court to

5  draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.

6  Ct. at 1949.  Factual allegations grouping all defendants together provide no link between each

7  defendant and the alleged misconduct; thus, there can be no "facial plausibility" that each defendant

8  participated in the conspiracy.  The Court must act as a gatekeeper in requiring specific allegations

9  linking each defendant to the conspiracy; otherwise, plaintiffs could easily circumvent the Supreme

10  Court's mandate through generalized pleadings of conspiracy and fraud such as those employed

11  here.[17]  *See Iqbal*, 129 S. Ct. at 1949; *Twombly*, 550 U.S. at 559.

> **B.**     **The Complaints Do Not Sufficiently Allege the LGE Entities' Participation in a Conspiracy.**

>> **1.**     **The Allegations Against the LGE Entities Lack Specificity.**

        As demonstrated by plaintiffs' oppositions, the Complaints contain no specific, factual

allegations that the LGE Entities were part of the alleged conspiracy.[18]  Plaintiffs allege that one or

more of the LGE Entities "participated in more than a dozen illegal bilateral and more than a

---

[16] *In re Sagent Tec., Inc. Deriv. Litig.*, 278 F. Supp. 2d 1079 (N.D. Cal. 2003), cited in the Motion, is particularly apt here.  That court rejected group pleading against the defendants because the complaint failed to explain how "defendants that joined the board in late 2000 or in 2001 could be responsible for events that occurred in 1999, or how defendants that left Sagent in 2000 could have any connection with actions taken, or not taken, in 2001." *Id.* at 1094.  Similarly here, LGE divested its Tubes business and withdrew from the conspiracy in 2001, yet plaintiffs still allege (but cannot explain) that the LGE Entities are still liable for conduct occurring years after that date.

[17] Such specific allegations must answer the "basic questions" of "who, did what, to whom (or with whom), where, and when?"  *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1048 (9th Cir. 2008). Plaintiffs' efforts to distinguish *Kendall* are unconvincing (DP Opp'n at 63–64); regardless of the facts there, the *Kendall* court set forth pleading rules required for antitrust claims; those rules apply with equal force here.

[18] Plaintiffs complain that their allegations should not be treated in isolation but should be considered as a whole. *See, e.g.*, DP Opp'n at 45.  But the U.S. Supreme Court noted that insufficient conclusory allegations should be disregarded entirely. *Iqbal*, 129 S. Ct. at 1951 (stating that the Court "begin[s] our analysis by identifying the allegations in the complaint that are not entitled to the assumption of truth").  Allegations of "agreement" or "agency" fall into this category of conclusory chaff, and separating them from consideration is not only permissible, but required. *Twombly*, 550 U.S. at 551, 555; *Iqbal*, 129 S. Ct. at 1951.

---

12

1    hundred group meetings . . . from 1995 to 2006." DP Opp'n at 2, 95–96 (citing to DPC ¶ 160).

2    None of those allegations differentiate between the specific LGE entity alleged to have conspired.

3    Nor does it explain how LGE's divestment of its Tubes business to LPD and withdrawal from the

4    alleged conspiracy in 2001 (DPC ¶ 41) would render it liable for conspiratorial conduct after 2001.

5    In fact, all that can be drawn from that paragraph is that LGE "participated in," or was part of, the

6    conspiracy. But simply alleging participation in or agreement to a conspiracy is insufficient.[19]

7    *Twombly*, 550 U.S. at 557.

8            Plaintiffs also attempt to link the LGE Entities to the conspiracy by citing to fourteen

9    paragraphs in the complaint. DP Opp'n at 94 (citing to DPC ¶¶ 6, 41-44, 85, 160-161, 175-180).

10   But none of those paragraphs support plaintiffs' assertion that the LGE Entities were part of the

11   conspiracy: DPC ¶ 6 does not mention the LGE Entities; ¶¶ 41-44 only identifies the LGE Entities

12   as defendants; ¶ 85 defines the putative class; ¶¶ 160 and 161 are deficient as set forth above; ¶ 175

13   refers only to LPD, not to the LGE Entities; and ¶¶ 176-180 refer only to the LGE Entities'

14   involvement with trade associations, which as a matter of law do not support allegations of

15   conspiracy.[20] Mot. at 19 (citing cases); *Lubic v. Fid. Nat'l Fin., Inc.*, 2009 U.S. Dist. LEXIS 62092,

16   at *9 (W.D. Wash. July 20, 2009) ("The case law is replete with instances where participation in

17   trade organizations has been held insufficient to establish proof of a conspiracy."). Direct Plaintiffs

18   also point to DPC ¶ 210, which alleges that "LG Electronics . . . issued press statements" regarding

19   CRT prices, in support of their conspiracy allegations. DP Opp'n at 97. But there is still no "who,

20   did what, to whom (or with whom), where, and when?" contained in that allegation.[21] *See Kendall*,

21   518 F.3d at 1048. Viewed critically through the prism of *Twombly* and *Iqbal*, plaintiffs' allegations

22   against the LGE Entities fall short.

_____

[19] The allegation that LGEUSA "was a party to the agreements" at the conspiracy meetings (DPC ¶ 161), is similarly deficient because all it alleges is agreement; *Twombly* requires more. *Twombly*, 550 U.S. at 557.

[20] Direct Plaintiffs also point to allegations that LPD stopped CRT production at its plant in the United Kingdom (DP Opp'n at 96), but again that allegation refers only to LPD.

[21] Indirect Plaintiffs also point to IPC ¶ 165, alleging that "LG had a relationship with Toshiba and was responsible for communicating CRT Product pricing to Toshiba." IP Opp'n at 13. This allegation also lacks any specificity as to time, place, or who among the LGE or Toshiba entities agreed to that relationship.

1

## 2. The Allegations Against the LGE Entities Also Make No Sense.

2

3        Plaintiffs resort to the mantra that the complaints raise "question[s] of fact" that cannot be

4    decided on a motion to dismiss.  *See, e.g.*, DP Opp'n at 22, 27, 49, 93, 98–99; IP Opp'n at 4, 6, 50–

5    51, 71, 86, 149.  Yet this Court can decide such factual issues because they are apparent upon the

6    face of the Complaints.  *See Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980).  As

7    noted, the allegations demonstrate that LGE is a *buyer* of Tubes and thus a victim of the alleged

8    conspiracy.  That fact renders the Complaints' allegations not only *implausible*, but also *illogical.*

9        For example, plaintiffs' claim that LGE—a buyer of Tubes—is part of the alleged conspiracy

10   makes no sense because it fails to allege any motive by LGE to participate in a conspiracy to raise

11   prices of a product that LGE then purchased to incorporate into the Finished Products it

12   manufactured and sold.  In essence, plaintiffs contend that LGE conspired with sellers—for a period

13   of six years from 2001 through 2007—to cause itself economic harm.  Multiple courts—including

14   the Ninth Circuit—have recognized the absurdity of such arguments and have dismissed those

15   claims accordingly, even before *Iqbal* and *Twombly.*[22]

16

17

18

---

19   [22] *DM Research, Inc. v. Coll. of Am. Pathologists*, 170 F.3d 53, 56-57 (1st Cir. 1999) ("improbability is ample reason for the court to demand something more than mere conclusions as to conspiracy," and dismissing complaint where "no antitrust lawyer could help but ask almost immediately *why* [the defendant] would conspire") (emphasis in original); *Coastal Transfer Co. v. Toyota Motor Sales, U.S.A.*, 833 F.2d 208, 211 (9th Cir. 1987) (rejecting antitrust claims based upon conduct that "would have been illogical because a restriction on competition in the [relevant] market would have raised prices in a market in which [the defendant] purchased services"); *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1109 (7th Cir. 1984) (affirming dismissal where "the plaintiffs are alleging, in essence, that Ford conspired to injure itself").  *See also SmithKline Beecham Corp. v. Apotex Corp.*, 383 F. Supp. 2d 686, 701-702 (E.D. Pa. 2004) (holding that "[w]e may dismiss antitrust allegations that require irrational inferences," and dismissing "as irrational" antitrust conspiracy claims against a defendant who had no economic incentive to enter into the alleged conspiracy); *Brunson Commc'n, Inc. v. Arbitron, Inc.*, 239 F. Supp. 2d 550, 563 (E.D. Pa. 2002) ("[a]side from the dearth of specific allegations, the Court also concludes that the Amended Complaint fails to sufficiently allege concerted activity for the simple reason the supposed conspiracy makes no economic sense") (quotation marks and citation omitted); *Futurevision Cable Sys. of Wiggins, Inc. v. Multivision Cable TV Corp.*, 789 F. Supp. 760, 779 (S.D. Miss. 1992) (dismissing antitrust complaint where allegations demonstrated that the defendants "would have no rational economic motive to conspire against their own interests," and thus they "had every incentive *not* to engage in the conduct for which they are charged, for the likely effect would be to generate losses for them with no corresponding gains") (emphasis in original) (quotation marks and citation omitted).

20

21

22

23

24

25

26

27

28

3.     **If Anything, the Allegations Regarding Government Investigations Make It Less Plausible the LGE Entities Were Involved in Any Conspiracy.**

Plaintiffs contend that "[s]ince the filing of the amended complaint, it was disclosed on July 11, 2009 that the Japanese Fair Trade Commission ("JFTC") intends to fine . . . LG Electronics . . . millions of yen for participation in a cartel to fix prices for CRTs." Direct Opp'n at 3 n.1. This statement is outside of the complaint and the court may not consider it. *See Nordberg v. Trilegiant Corp.*, 445 F. Supp. 2d 1082, 1090 (N.D. Cal. 2006). As a factual matter, however, the fines levied were directed to *subsidiaries of LPD*, not to any of the LGE Entities. The LGE Entities were not subject to any investigation by the JFTC.[23]

With regard to other government investigations, plaintiffs attempt to have it both ways by asserting that the existence of a government investigation supports their claims, but the absence of an investigation should not detract from their claims. *See* DP Opp'n at 76–77; IP Opp'n at 57–59. As noted in the Motion and ignored by plaintiffs, none of the allegations in the Complaints identify the LGE Entities as a target of any of the prior government investigations mentioned by plaintiffs, *e.g.*, CRT, TFT-LCD, DRAM, or Flash. Mot. at 19. That makes it even less plausible that the LGE Entities are part of the alleged conspiracy; indeed, the absence of any government investigation supports the conclusion that the LGE Entities were, if anything, victims of any alleged conspiracy. The Complaints should thus be dismissed.[24]

## VI.     CONCLUSION

For the reasons expressed above and those in the LGE Entities' Motion, the Court should dismiss the Complaints with prejudice.

---

[23] Indirect Plaintiffs also contend that the LGE Entities must be involved in the conspiracy because a joint venture in which LGE owned shares pleaded guilty in the LCD matter. IP Opp'n at 15. But that joint venture is a separate legal entity than the LGE Entities. Mot. at 6.

[24] Plaintiffs also object to the LGE Entities' alternative request for a more definite statement, stating that "A more definite statement is not a substitute for discovery . . . ." DP Opp'n at 100–01; IP Opp'n at 92. The LGE Entities do not ask for discovery pursuant to their Rule 12(e) request; they are simply attempting to understand what entity plaintiffs purport to implicate in their alleged conspiracy. As made evident from the above, plaintiffs have failed to allege in any meaningful fashion who, among the LGE Entities, is actually accused, and of what. The Court should require plaintiffs to come forward with those facts before permitting this controversy to proceed.

15

1  Respectfully submitted,

2  Dated:  September 24, 2009                    SIDLEY AUSTIN LLP

3

4                                               By:  /s/ Samuel R. Miller

5                                                    Samuel R. Miller
                                                     Attorneys For Defendants
6                                                    LG ELECTRONICS, INC.; LG
                                                     ELECTRONICS USA, INC.; and
7                                                    LG ELECTRONICS TAIWAN TAIPEI CO.,
                                                     LTD.
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28