GREGORY D. HULL (57367)
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, California 94065-1175
Telephone: (650) 802-3000
Facsimile: (650) 802-3100
Email: greg.hull@weil.com

STEVEN A. REISS (*Admitted Pro Hac Vice*)
DAVID L. YOHAI (*Admitted Pro Hac Vice*)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153-0119
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Email: steven.reiss@weil.com

JEFFREY L. KESSLER (*Admitted Pro Hac Vice*)
A. PAUL VICTOR (*Admitted Pro Hac Vice*)
DEWEY & LEBOEUF LLP
1301 Avenue of the Americas
New York, NY 10019
Telephone: (212) 259-8000
Facsimile: (212) 259-7013
Email: jkessler@dl.com

Attorneys for Defendants Panasonic Corporation of North America, MT Picture Display Co.,
Ltd., and Panasonic Corporation (f/k/a Matsushita Electric Industrial Co., Ltd.)
**[Additional Moving Defendants and Counsel Listed on Signature Pages]**

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION<br><br>This Document Relates to:<br><br>INDIRECT PURCHASER ACTION. | No.:   M-07-5944 SC—MDL NO. 1917<br><br>**DEFENDANTS' JOINT REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS INDIRECT PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT**<br><br>**ORAL ARGUMENT REQUESTED**<br><br>Date: October 5, 2009<br>Time: 9:00 a.m.<br>Before: The Honorable Charles A. Legge,<br>U.S. District Judge (Ret.), Special Master |

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................. 1

I.   THE FTAIA AND THE U.S. CONSTITUTION MANDATE DISMISSAL OF
     PLAINTIFFS' CLAIMS ................................................................................. 4

     A.   The FTAIA Applies To The IP-CAC, Which Is Based Upon Allegations
          Of Foreign Agreements Relating To Foreign CRT Sales.............................. 5

          1.   It Is Axiomatic that the FTAIA Applies to Allegations of Foreign
               Price-Fixing Agreements..................................................................... 5

          2.   The IP-CAC Fails to Allege that Defendants' Conduct Involved
               Import Commerce ............................................................................... 6

     B.   Plaintiffs Fail To Allege A Direct, Substantial And Reasonably
          Foreseeable Anticompetitive Effect In The United States............................. 8

     C.   State Laws Cannot Be Applied To Foreign Commerce In A Manner
          Inconsistent With The FTAIA .................................................................... 10

II.  PLAINTIFFS HAVE NOT ESTABLISHED ANTITRUST STANDING
     UNDER THE SHERMAN ACT OR MOST OF THE STATE LAWS
     ASSERTED ................................................................................................. 11

     A.   The *Associated General Contractors* Test Is Applicable To Fourteen
          State Antitrust Laws And Two State Consumer Protection Laws ................ 11

     B.   Plaintiffs Lack Standing To Assert Their Injunctive Relief Claims Under
          Federal Law................................................................................................ 14

     C.   As Purchasers Of Finished Products Containing CRTs, Plaintiffs Have
          Failed To Plead "Antitrust Injury" .............................................................. 14

          1.   Plaintiffs Ignore Well-Settled Precedent Requiring Market
               Participation as a Prerequisite to "Antitrust Injury" .......................... 15

          2.   Because Plaintiffs Do Not Purport to Meet the Ninth Circuit's
               Test for Market Participation, Their Antitrust Injury Claim Fails...... 17

     D.   Plaintiffs Also Fail To Satisfy The Remoteness Factors Of *AGC* ................ 18

          1.   Plaintiffs' Injury Claims are Attenuated and Indirect....................... 18

          2.   Plaintiffs' Injury Claims are Speculative .......................................... 18

          3.   Plaintiffs' Injury Claims Would Be Complex and Duplicative.......... 19

# TABLE OF CONTENTS

**Page**

III.   INDIRECT PLAINTIFFS CANNOT SUE UNDER NEBRASKA, NEVADA
OR HAWAII STATUTES BASED ON PURCHASES PREDATING THOSE
STATES' ILLINOIS BRICK REPEALER AMENDMENTS................................ 20

    A.   Nebraska ........................................................................... 20

    B.   Nevada ............................................................................. 21

    C.   Hawaii .............................................................................. 21

IV.   PLAINTIFFS' CLAIMS UNDER THE CONSUMER PROTECTION
STATUTES OF HAWAII, MASSACHUSETTS, NEW YORK AND RHODE
ISLAND FAIL AS A MATTER OF LAW ................................................... 22

    A.   Massachusetts.................................................................... 22

    B.   New York.......................................................................... 22

    C.   Rhode Island..................................................................... 23

V.   PLAINTIFFS' UNJUST ENRICHMENT CLAIMS FAIL IN STATES THAT
REQUIRE PLAINTIFFS TO CONFER A BENEFIT DIRECTLY TO
DEFENDANTS, AND IN STATES WITH SUBSTANTIVE ANTITRUST
LAWS THAT WOULD PROHIBIT OR LIMIT PLAINTIFFS' RECOVERY ....... 24

    A.   Plaintiffs' Unjust Enrichment Claims Under The Common Law Of
Michigan, Kansas And New York All Fail...................................... 24

        1.   Michigan.......................................................... 24

        2.   Kansas ............................................................. 24

        3.   New York ......................................................... 25

    B.   Plaintiffs Cannot Use Unjust Enrichment As A "Back-Door" To
Recover For Claims Barred Under A State's Antitrust Laws...................... 25

    C.   Plaintiffs Cannot Recover Under An Unjust Enrichment Theory In
States Which Limit Relief To Compensatory Damages................................ 26

VI.   PLAINTIFFS FAIL TO PLEAD FACTS SUFFICIENT TO TOLL THE
STATUTE OF LIMITATIONS FOR ANY OF THEIR
STATE LAW CLAIMS ........................................................................ 27

    A.   Plaintiffs Have Failed To Allege Affirmative Acts Of Concealment ........... 28

# TABLE OF CONTENTS

**Page**

B.  Because The IP-CAC Alleges Facts That Put Plaintiffs On Constructive Notice of Their Claims, They Are Time-Barred ............................................ 29

C.  Plaintiffs' Conclusory Allegations Of Futility Are Inadequate To Satisfy The Due Diligence Required By Nineteen States ........................................ 30

CONCLUSION ............................................................................................................. 31

## TABLE OF AUTHORITIES

**Page**

1

### FEDERAL CASES

2

*Am. Ad Mgm't, Inc. v. Gen. Tel. Co.*,
  190 F.3d 1051 (9th Cir. 1999) ..................................................................... 15

*Animal Sci. Products, Inc. v. China Nat'l Metals & Minerals Imp. & Exp. Corp.*,
  596 F. Supp. 2d 842 (D.N.J. 2008) ............................................................. 7, 8

*Ashcroft v. Iqbal*,
  129 S. Ct. 1937 (2009) ............................................................................. 2, 28

*Associated General Contractors of California, Inc. v. California State Council of
  Carpenters*,
  459 U.S. 519 (1983) ............................................................................. *passim*

*In re Auto. Refinishing Paint Antitrust Litig.*,
  515 F. Supp. 2d 544 (E.D. Pa. 2007) ........................................................... 23

*Baggett v. Hewlett-Packard Co.*,
  582 F. Supp. 2d 1261 (C.D. Cal. 2007) ................................................... 27, 28

*Barker v. Am. Mobil Power Corp.*,
  64 F.3d 1397 (9th Cir. 1995) ...................................................................... 29

*Bell Atlantic v. Twombly*,
  550 U.S. 544 (2007) ............................................................................. *passim*

*Bhan v. NME Hosp., Inc.*,
  772 F.2d 1467 (9th Cir. 1985) ............................................................... 15, 17

*Blue Shield v. McCready*,
  457 U.S. 462 (1982) ................................................................................... 15

*Brunson Commc'ns, Inc. v. Arbitron*,
  239 F. Supp. 2d 550 (E.D. Pa. 2002) ............................................................. 1

*In re Cardizem CD Antitrust Litig.*,
  105 F. Supp. 2d 618 (E.D. Mich. 2000) ....................................................... 26

*Cargill, Inc. v. Monfort of Colorado, Inc.*,
  479 U.S. 104 (1986) ................................................................................... 14

*Caribbean Broad. System, Ltd. v. Cable & Wireless PLC*,
  148 F.3d 1080 (D.C. Cir. 1998) ................................................................... 10

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

27
28

## <u>TABLE OF AUTHORITIES</u>

Page

*In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*,
      782 F. Supp. 487 (C.D. Cal. 1992) ..................................................................... 29

*Conmar Corp. v. Mitsui & Co. (U.S.A.), Inc.*,
      858 F.2d 499 (9th Cir. 1988) ....................................................................... 28-30

*In re DRAM Antitrust Litig.*,
      516 F. Supp. 2d 1072 (N.D. Cal. 2007) ...................................................... *passim*

*In re DRAM Antitrust Litig.*,
      536 F. Supp. 2d 1129 (N.D. Cal. 2008) ...................................................... *passim*

*D.R. Ward Const. Co. v. Rohm & Haas Co.*,
      470 F. Supp. 2d 485 (E.D. Pa. 2006) ................................................................. 13

*Dee-K Enterprises, Inc. v. Heveafil Sdn. Brotherhood*,
      299 F.3d 281 (4th Cir. 2002) ............................................................................... 5

*Empagran S.A. v. F. Hoffmann-LaRoche, Ltd.*,
      417 F.3d 1267 (D.C. Cir. 2005) ......................................................................... 10

*In re Flash Memory Antitrust Litig.*,
      No. C 07-0086 SBA, 2009 WL 1096602 (N.D. Cal. March 31, 2009) ........... 13-14, 16, 23

*Freeman Inds. LLC v. Eastman Chem. Co.*,
      172 S.W.3d 512 (Tenn. 2005) ............................................................................ 16

*In re GPU Antitrust Litig.*,
      527 F. Supp. 2d 1011 (N.D. Cal. 2007) .............................................................. 14

*In re GPU Antitrust Litig.*,
      540 F. Supp. 2d 1085 (N.D. Cal. 2007) .............................................. 13-14, 16, 26

*In re Graphite Electrodes Antitrust Litig.*,
      No. 10-MD-1244, 2007 WL 137684 (E.D. Pa. Jan. 16, 2007)............................ 10

*Illinois Brick Co. v. Illinois*,
      431 U.S. 720 (1977)...................................................................................... *passim*

*In re Intel Corp. Microprocessor Antitrust Litig.*,
      452 F. Supp. 2d 555 (D. Del. 2006).................................................................. 5, 9

*In re Intel Corp. Microprocessor Antitrust Litig.*,
      476 F. Supp. 2d 452 (D. Del. 2007)................................................................. 9, 11

# TABLE OF AUTHORITIES

Page

*In re Intel Corp. Microprocessor Antitrust Litig.*,
    496 F. Supp. 2d 404 (D. Del. 2007).................................................................. 13

*Johnson v. Frankell*,
    520 U.S. 911 (1997)........................................................................................ 21

*Karahalios v. Nat'l Federation of Fed. Employees*,
    489 U.S. 527 (1989)....................................................................................26-27

*Korea Kumho Petrochemical v. Flexsys Am. LP*,
    No. C07-01057 MJJ, 2008 WL 686834 (N.D. Cal. March 11, 2008) ..............6-7

*In re Korean Air Lines Co., Ltd.*,
    CV 07-05107 SJO (AGRx) (C.D. Cal. June 25, 2008)....................................... 7

*Kruman v. Christie's Int'l PLC*,
    284 F.3d 384 (2d Cir. 2002) ..........................................................................7-8

*Leider v. Ralfe*,
    387 F. Supp. 2d 283 (S.D.N.Y. 2005)............................................................. 22

*In re Linerboard Antitrust Litig.*,
    305 F.3d 145 (3d Cir. 2002) ........................................................................... 19

*Lorenzo v. Qualcomm Inc.*,
    603 F. Supp. 2d 1291 (S.D. Cal. 2009) ...................................................... 18, 20

*Lorenzo v. Qualcomm Inc.*,
    No. 08cv2124 WQH (LSP), 2009 WL 2448375 (S.D. Cal. Aug. 10, 2009)..................... 18

*Lucas Automotive Eng., Inc v. Bridgestone/Firestone, Inc.*,
    140 F.3d 1228 (9th Cir. 1998) ........................................................................ 14

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986)......................................................................................... 1

*McNulty v. Reddy Ice Holdings, Inc.*,
    No. 08-CV-13178, 2009 WL 1508381 (E.D. Mich. May 29, 2009) ................. 12

*Moniz v. Bayer Corp.*,
    484 F. Supp. 2d 228 (D. Mass 2007) .............................................................. 16

*NicSand, Inc. v. 3M Co.*,
    507 F.3d 442 (6th Cir. 2007) .......................................................................... 14

## <u>TABLE OF AUTHORITIES</u>

**Page**

*R.C. Dick Geothermal Corp. v. Thermogenics, Inc.,*
   890 F.2d 139 (9th Cir. 1989) ................................................................... 18

*In re Rubber Chemicals Antitrust Litig.,*
   504 F. Supp. 2d 777 (N.D. Cal. 2007) ................................... 5-6, 30

*Rutledge v. Boston Woven Hose and Rubber Co.,*
   576 F.2d 248 (9th Cir. 1978) ............................................................. 28-29

*In re SRAM Antitrust Litig.,*
   580 F. Supp. 2d 896 (N.D. Cal. 2008) ............................................ 27-29

*Schneider v. California Dep't of Corrections,*
   151 F.3d 1194 (9th Cir. 1998) ................................................................ 7

*In re Sugar Indus. Antitrust Litig.,*
   579 F.2d 13 (3d Cir. 1978) .................................................................. 19

*In re Terazosin Hydrochloride Antitrust Litig.,*
   160 F. Supp. 2d 1365 (S.D. Fla. 2001) ................................................ 26

*In re TFT-LCD (Flat Panel) Antitrust Litig.,*
   586 F. Supp. 2d 1109 (N.D. Cal. 2008) .............................................. 16

*Turicentro, S.A. v. Am. Airlines Inc.,*
   303 F.3d 293 (3d Cir. 2002) .................................................................... 8

*United Phosphorous, Ltd. v. Angus Chem. Co.,*
   131 F. Supp. 2d 1003 (N.D. Ill. 2001) .............................................. 8-9

*Williams v. U.S. Gen. Servs. Admin.,*
   905 F.2d 308 (9th Cir. 1990) ............................................................... 27

### STATE CASES

*A & M Supply Co. v. Microsoft Corp.,*
   No. 274164, 2008 WL 540883 (Mich. Ct. App. Feb. 28, 2008) ...................... 24

*Arthur v. Microsoft Corp.,*
   267 Neb. 586 (2004) ............................................................................ 21

*Babcock v. Carrothers Const. Co.,*
   No. 94,471, 2005 WL 3527117 (Kan. App. Dec. 23, 2005) ............................ 25

## <u>TABLE OF AUTHORITIES</u>

**Page**

*Cellular Plus, Inc. v. Superior Court,*
  14 Cal. App. 4th 1224 (1993) ....................................................................... 15

*ERI Max Entertainment, Inc. v. Streisand,*
  690 A.2d 1351 (R.I. 1997) ........................................................................... 23

*Matter of the Estate of Thomas,*
  998 P.2d 560 (Nev. 2000) ............................................................................ 21

*Hawaii Medical Ass'n v. Hawaii Medical Serv. Ass'n,*
  148 P.3d 1179 (Haw. 2006) .......................................................................... 21

*Haz-Mat Response, Inc. v. Certified Waste Servs. Ltd.,*
  259 Kan. 166 (1996) ................................................................................ 24-25

*Holder v. Archer Daniels Midland Co.,*
  No. 96-2975, 1998 WL 1469620 (D.C. Super. Ct. Nov. 4, 1998) .............. 16-17

*Intel x86 Microprocessors Cases,*
  J.C.C.P. No. 4443 (Cal. Super Ct. May 15, 2007) ......................................... 17

*Kammer Asphalt Paving Co., Inc. v. East China Township Schools,*
  443 Mich. 176 (1993) ................................................................................... 24

*Kanne v. Visa U.S.A., Inc.,*
  723 N.W.2d 293 (Neb. 2006) ............................................................ 11, 15, 20

*Krotz v. Microsoft Corp.,*
  No. A416361 (Nev. Dist. Ct. June 22, 2000) ................................................ 21

*Lorix v. Crompton Corp.,*
  736 N.W.2d 619 (Minn. 2007) ...................................................................... 13

*Morris Pumps v. Centerline Piping, Inc.,*
  273 Mich. App. 187 (Mich. App. 2006) ........................................................ 24

*Nickel v. Saline County Sch. Dist. No. 163,*
  251 Neb. 762 (1997) ..................................................................................... 20

*Paltre v. Gen. Motors Corp.,*
  810 N.Y.S.2d 496 (N.Y. App. Div. 2006) ................................................. 22-23

*Pooler v. R.J. Reynolds Tobacco Co.,*
  No. CV00-02674, 2001 WL 403167 (Nev. Dist. Ct. April 4, 2001) ............. 21

## <u>TABLE OF AUTHORITIES</u>

**Page**

*Richards v. Arteva Specialties S.A.R.L.*,
    66 Mass. App. Ct. 726 (2006) ................................................................................... 22

*Soukop v. Conagra, Inc.*,
    653 N.W.2d 655 (Neb. 2002) .................................................................................. 20

*Southard v. Visa U.S.A. Inc.*,
    734 N.W.2d 192 (Iowa 2007) .................................................................................. 15

*Sperry v. Crompton Corp.*,
    No. 17872/02 4 (N.Y. Sup. Ct. Nov. 25, 2003) ...................................................... 23

*Sperry v. Crompton Corp.*,
    8 N.Y.3d 204 (N.Y. 2007) ...................................................................................... 25

*Stark v. Visa U.S.A., Inc.*,
    No. 03-055030-CZ, 2004 WL 1879003 (Mich. Cir. Ct. July 23, 2004) .................... 20

*State ex rel. Spitzer v. Daicel Chem. Indus., Ltd.*,
    840 N.Y.S.2d 8 (N.Y. App. Div. 2007) ........................................................ 11, 25-26

*Strang v. Visa U.S.A., Inc.*,
    No. 03-CV-011323, 2005 WL 1403769 (Wis. Cir. Ct. Feb. 8, 2005) ........................ 20

*Szukalski v. Crompton Corp.*,
    726 N.W.2d 304 (Wis. Ct. App. 2006) .................................................................... 17

*Teague v. Bayer AG*,
    671 S.E.2d 550 (N.C. App. 2009) ............................................................................ 13

*Union Carbide Corp. v. Superior Court*,
    36 Cal. 3d 15 (1984) ............................................................................................... 15

*Vinci v. Waste Management, Inc.*,
    36 Cal. App. 4th 1811 (1995) .................................................................................. 12

### FEDERAL STATUTES AND RULES

Federal Rules of Civil Procedure 9(b) ............................................................................ 27

Foreign Trade Antitrust Improvements Act of 1982,
    15 U.S.C. § 6a (2006) ....................................................................................... *passim*

DEFENDANTS' JOINT REPLY BRIEF
                                                                        IN SUPPORT OF MTD THE IP-CAC

x

## TABLE OF AUTHORITIES

**Page**

Clayton Act, 15 U.S.C. § 26 ............................................................................... 14

### STATE STATUTES

Haw. Rev. Stat.
   § 480-13(d) ................................................................................................. 27

Kan. Stat. Ann.
   § 50-147 ...................................................................................................... 27

Mass. Gen. Laws Ann.
   Ch. 93A § 11 ............................................................................................... 22

Minn. Stat.
   325D.07 ....................................................................................................... 27

Nev. Rev.Stat. Ann.
   § 598A.250 .................................................................................................. 27

New York Gen. Bus. Law.
   § 349 ....................................................................................................... 22-23

R.I. Gen. Laws
   §6-13.1-5.2 .................................................................................................. 23

Vt. Stat. Ann. 9
   § 2470(d) ..................................................................................................... 27

W. Va. Code
   § 47-18-13 ................................................................................................... 27

### OTHER AUTHORITY

ABA Section of Antitrust Law, Indirect Purchaser Litigation Handbook (2007) ...................... 21

FTAIA House Report, H.R. Rep. No. 97-686 (1982),
   *reprinted in* 1982 U.S.C.C.A.N. 2487 ........................................................... 6

1

**INTRODUCTION**

2          In a futile effort to avoid dismissal, Indirect Purchaser Plaintiffs' ("Plaintiffs")

3   opposition brief ("IP-Opp.") relies at every turn on the entirely false assertion that in addition to

4   alleging a conspiracy to fix the prices of cathode ray tubes ("CRTs"), Plaintiffs have also

5   sufficiently alleged a conspiracy to fix the prices of so-called "CRT Products" (defined to

6   include both CRTs and finished televisions and computer monitors).   *See* IP-Opp. at 18-20;

7   Consolidated Amended Complaint ("IP-CAC") ¶¶ 13-15.   A review of the specific allegations

8   in the IP-CAC, however, reveals that Plaintiffs' conspiracy allegations concern CRTs, and

9   CRTs alone, not televisions and computer monitors ("Finished Products").   Indeed, it is

10  inherently implausible to conflate products as varied as a CRT tube, a television set, and a

11  computer monitor – which are each manufactured, bought and sold in completely different

12  markets – under an omnibus category, and to summarily suggest that each product was part of

13  an overarching conspiracy.   Further implausibly, Plaintiffs have indiscriminately alleged that

14  some Defendants who make and sell CRTs conspired with other Defendants who *purchase*

15  those CRTs and incorporate them as components in the Finished Products they sell.[1]   This is

16  not a "multi-faceted" conspiracy, as Plaintiffs euphemistically suggest, but one that simply

17  makes no economic sense.[2]   Under the pleading standard articulated in *Bell Atlantic v.*

18

19  _____

    [1]  Plaintiffs' conclusory allegations seek to sweep together all "Defendants" as a monolithic
20  entity, refusing to delineate between foreign and domestic entities, or to recognize their
    creation or termination.   *See* IP-CAC, ¶ 109.   Instead, Plaintiffs assert by rote that all of the
21  *49* named Defendants, including entities that have since been dropped from the Complaint,
    "manufactured, marketed, sold and/or distributed 'CRT Products' . . . to customers throughout
22  the United States."   *Id.* at ¶¶ 50-108.

23  [2]  *See Bell Atlantic v. Twombly*, 550 U.S. 544, 558 (2007) ("'some threshold of plausibility
    must be crossed at the outset before a . . . case should be permitted to go into its inevitably
24  costly and protracted discovery phase'") (internal citation omitted).   As the Supreme Court
    held in the summary judgment context, "if the factual context renders [Plaintiffs'] claim
25  implausible – if the claim is one that simply makes no economic sense – respondents must
    come forward with more persuasive evidence to support their claim than would otherwise be
26  necessary."   *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see
    also Brunson Commc'ns, Inc. v. Arbitron, Inc.*, 239 F. Supp. 2d 550, 563 (E.D. Pa. 2002)
27  ("Though *Matsushita* was decided in the context of a motion for summary judgment, its
    reasoning, nevertheless, has been used to decide motions to dismiss and suggests that Plaintiff's
    Section One claim should be dismissed" (citation omitted)).

28  _____

1   *Twombly*, 550 U.S. at 555, and *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-50 (2009), Plaintiffs'

2   kitchen-sink conspiracy theories concerning Finished Products must fail.

3         Plaintiffs' motive for pleading a broad Finished Product conspiracy is obvious:   as

4   indirect purchasers, they do not allege that they bought CRTs standing alone, but rather

5   Finished Products *containing* CRTs.   *See* IP-CAC, ¶¶ 19-49.   However, there is not a single

6   *factual* allegation in the IP-CAC that the goods Plaintiffs *actually* bought – "such as television

7   sets and computer monitors" (IP-CAC, ¶ 15) – were price-fixed at all.   In almost 300

8   paragraphs of allegations, Plaintiffs never specifically allege any misconduct regarding the

9   pricing of Finished Products.   To the contrary, they allege the exact opposite – that there has

10  been "vigorous price competition" in the Finished Products markets.   *Id.* at ¶ 227.   Plaintiffs'

11  attempt to use the artificially-constructed phrase "CRT Products" as a "label" to support a

12  purported "television and computer monitor conspiracy" is unavailing.   *See Twombly*, 550 U.S.

13  at 555; *Iqbal*, 129 S.Ct. at 1949.

14        It is telling, for example, that the IP-CAC only alleges a "CRT conspiracy," and *not* a

15  "CRT Products Conspiracy."   *See* IP-CAC, ¶¶ 138, 141, 144, 177, 181.   Indeed, all of

16  Plaintiffs' factual allegations concerning the alleged price-fixing conspiracy pertain to CRTs,

17  rather than Finished Products.   *Id.* at ¶¶ 152, 154, 155, 198, and 204.   The closest Plaintiffs

18  come to allegations about televisions and computer monitors concern the purported *impact*, or

19  "pass-through," that the alleged "CRT conspiracy" had on those downstream products.   *See*,

20  *e.g.*, IP-CAC, ¶¶ 155 ("Each of the participants in these meetings knew, and in fact discussed,

21  the *significant impact that the price of CRTs had on the cost of the finished products into which*

22  *they were placed*"); 223 ("The Defendants . . . *monitored* the prices of televisions and computer

23  monitors . . . on a regular basis") (emphases added).   These allegations of price "monitoring"

24  and pass-through, though, do not allege a conspiracy to *fix prices* or otherwise restrict

25  competition in these markets.

26        Moreover, the allegations concerning the existence of certain regulatory investigations

27  solely relate to CRTs, and not the very different markets for Finished Products.   *See* IP-CAC,

28

¶¶ 4, 203-213.    Similarly, the indictment referenced in the IP-CAC alleges price-fixing *only with respect to CRTs.  Id.* at ¶¶ 4, 205.    Nor have Plaintiffs made any allegations against, let alone named as Defendants, many of the biggest sellers of televisions and computer monitors – such as Sharp, Dell, Hewlett Packard, Sanyo and Sony, among others.    Any purported conspiracy concerning "televisions and computer monitors" is thus rendered not just implausible, but nonsensical.    *See Twombly*, 550 U.S. at 570.

The failure of the "Finished Product" conspiracy argument by the Plaintiffs is fatal to their defenses to Defendants' Joint Motion to Dismiss, as Plaintiffs have premised their opposition to the motion on the purported existence of such a Finished Product conspiracy. For example, Plaintiffs argue that the "Foreign Trade Antitrust Improvements Act of 1982" ("FTAIA") "does not apply to this case because Plaintiffs have alleged a *CRT Product* conspiracy."    IP-Opp. at 5; *see also id.* at 93.    Similarly, Plaintiffs argue that they have antitrust standing because they have alleged a conspiracy concerning both CRTs and Finished Products.    IP-Opp. at 5, 112.    Once it is recognized that there is no Finished Product conspiracy alleged in the IP-CAC, Plaintiffs' remaining arguments collapse of their own weight.

*First*, under the FTAIA, this Court lacks subject matter jurisdiction over the foreign CRT price-fixing conspiracy alleged in the IP-CAC.    As discussed below, there are no facts pled in the IP-CAC which are capable of supporting a claim of a conspiracy directed at the sales of any CRTs or Finished Products sold in the United States.

*Second*, as Defendants have demonstrated, courts in the vast majority of the states at issue have applied the multi-factor test for antitrust standing articulated in *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519 (1983) ("*AGC*"), or have "harmonization" statutes directing that state antitrust laws be interpreted in accordance with federal ones.    Plaintiffs' arguments for automatic antitrust standing are thus untenable.    Plaintiffs' claims cannot survive the *AGC* test, as Plaintiffs cannot claim that they have been injured in a way that the antitrust laws were enacted to prevent.    They are not

1    participants in the relevant CRT market, and they cannot show that their alleged injury was

2    anything other than remote, speculative, unmanageably complex, and duplicative.

3        *Third*, Plaintiffs concede that they cannot recover in Hawaii for purchases that predate

4    June 25, 2002, and have not provided any contrary caselaw to allow recovery in Nebraska and

5    Nevada for purchases predating July 20, 2002 and October 1, 1999, the date on which those

6    two states repealed, on a *non-retroactive* basis, the categorical restriction on indirect purchaser

7    actions set forth in *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977).

8        *Fourth*, Plaintiffs have failed to support their claims for relief under the consumer

9    protection statutes of New York, Massachusetts, Maine, and Hawaii.

10       *Fifth*, Plaintiffs' attempts to save their unjust enrichment claims fail on numerous

11   grounds.    Under the common law of Michigan, New York and Kansas, Plaintiffs cannot show

12   that they conferred a benefit directly to Defendants.    Further, Plaintiffs cannot use the

13   equitable remedy of unjust enrichment as a "back-door" means of recovering damages in states

14   that bar Plaintiffs' antitrust claims, including the fourteen states that apply *AGC* standing

15   principles.    Nor can Plaintiffs counter Defendants' argument that the restitutionary relief

16   plaintiffs seek cannot be pursued in the many states at issue that limit relief to compensatory

17   damages.

18       *Finally*, Plaintiffs have failed to plead any facts sufficient to toll the applicable state

19   statute of limitations under a fraudulent concealment theory.

20                              **LEGAL ARGUMENT**

21   **I.    THE FTAIA AND THE U.S. CONSTITUTION MANDATE DISMISSAL OF
22           PLAINTIFFS' CLAIMS**

23       Nothing in Plaintiffs' Opposition changes the fact that the FTAIA precludes Plaintiffs'

24   Sherman Act claim for injunctive relief.    Further, Plaintiffs' state law claims also cannot

25   survive because the Commerce Clause and Supremacy Clause of the United States Constitution

26   preclude the states from applying their antitrust or similar laws to foreign commerce in a

27   manner inconsistent with the FTAIA.

28

---

MDL NO. 1917                                    DEFENDANTS' JOINT REPLY BRIEF
                                               IN SUPPORT OF MTD THE IP-CAC

**A.     The FTAIA Applies To The IP-CAC, Which Is Based Upon Allegations Of Foreign Agreements Relating To Foreign CRT Sales**

**1.     It Is Axiomatic that the FTAIA Applies to Allegations of Foreign Price-Fixing Agreements**

Plaintiffs do not dispute that the IP-CAC is filled with allegations of foreign conduct, yet argue that the FTAIA "does not apply because the alleged CRT Product conspiracy was carried out *in part* in the United States."    IP-Opp. at 94 (emphasis added).    Plaintiffs' argument, however, was squarely rejected in *In re Rubber Chemicals Antitrust Litig.*, where this Court made clear that, for purposes of the FTAIA, foreign conduct cannot be "'combined with domestic conduct in an attempt to confer jurisdiction over the foreign conduct under the rubric of a single claim.'"    504 F. Supp. 2d 777, 784 (N.D. Cal. 2007) (quoting *In re Intel Corp. Microprocessor Antitrust Litig.*, 452 F. Supp. 2d 555, 562 (D. Del. 2006) ("*Intel*")); *see also Dee-K Enters., Inc. v. Heveafil Sdn. Bhd*, 299 F.3d 281, 294-96 (4th Cir. 2002) (the FTAIA applies where, as here, the "acts, targets, and effects" are "primarily foreign" and explaining that it is "significant" that "not one of the conspirators' many meetings took place in the United States.").

Significantly, the IP-CAC contains no specific factual allegations of domestic conspiratorial activity.    For example, it does not allege facts to support a plausible claim of conspiracy in the market for Finished Products "which was carried out in part in the U.S. by U.S.-based Defendants."    IP-Opp. at 94.    To the contrary, as set forth above, the IP-CAC lacks even a single, specific factual allegation that there were any anticompetitive agreements reached in any market for Finished Products, let alone any allegations that a purported Finished Products conspiracy was carried out in the United States.    The IP-CAC's only factual allegations of a purported cartel relate to the market for CRTs (and those allegations refer only to *foreign* sales of CRTs).    *See supra* pp. 1-3.

The paragraphs Plaintiffs cite in support of their assertion that the IP-CAC alleges that Plaintiffs made "*purchases in the United States*" (IP-Opp. at 94-95 (citing IP-CAC, ¶¶ 250-251) (emphasis in original)), and that "U.S.-based Defendants manufactured, marketed, sold and distributed *both CRTs and CRT Finished Products* to customers in the U.S. during the

---

DEFENDANTS' JOINT REPLY BRIEF
IN SUPPORT OF MTD THE IP-CAC

1   Class Period" (IP-Opp. at 95, 96 (emphasis added)), in fact, contain only vague allegations

2   concerning "CRT Products," a category into which Plaintiffs have combined both CRTs and

3   Finished Products for the apparent purpose of trying to avoid the FTAIA.   Plaintiffs cannot

4   rely on such vague allegations to support a claim that any conspiracy relating to CRTs included

5   products sold in the United States.   *See Twombly*, 550 U.S. at 555, 570 (2007) (allegations

6   must "raise a right to relief above the speculative level").[3]

7        Indeed, there is no basis for Plaintiffs' assertion that the IP-CAC "further alleges that

8   the U.S.-based Defendants participated in the conspiracy."   IP-Opp. at 96.   Plaintiffs are

9   wrong that the allegation that "all of the U.S.-based Defendants, except Tatung, are

10  wholly-owned subsidiaries of foreign parents who were represented at the Glass Meetings and

11  were parties to the agreements reached at them" somehow supplies the requisite link to assert a

12  conspiracy concerning sales in the United States.   *Id.*   In fact, the U.S. citizenship of

13  Defendants is irrelevant (*see* FTAIA House Report, H.R. Rep. No. 97-686 (1982), at 9-10), and

14  there are no *facts* in the IP-CAC to support the conclusory allegation that the U.S. Defendants

15  were "represented" at any foreign meetings.   Nor does the IP-CAC contain any factual

16  allegations that "U.S.-based Defendants participated in the conspiracy at the direction of their

17  parent companies" or that "they were tasked with implementing the conspiracy." IP-Opp. at 96.

18
19       ## 2.    The IP-CAC Fails To Allege That Defendants' Conduct Involved Import Commerce

20       Plaintiffs further argue that Defendants' claimed anticompetitive conduct involved

21  "import trade" so that Plaintiffs purportedly meet the "import trade" exception to the FTAIA.

22  IP-Opp. at 97.   But the Complaint contains no allegation whatsoever of any anticompetitive

23  "import" conduct by Defendants.   *See Korea Kumho Petrochemical v. Flexsys Am. LP*, No.

24  C07-01057 MJJ, 2008 WL 686834, at *6 (N.D. Cal. Mar. 11, 2008) ("Here, the relevant

25

26  [3]  Plaintiffs' claim that while Defendants "may not currently manufacture CRTs, many of them
    did so for the majority of the Class Period" appears only in Plaintiffs' brief.   IP-Opp. at 95

27  n.128.   Plaintiffs' attempt to amend the IP-CAC through allegations in their brief is unavailing.
    *See In re Rubber Chemicals Antitrust Litig.*, 504 F. Supp. 2d at 780.

28  _____

1   alleged misconduct by the Defendants reflects no 'involvement' in import trade or

2   commerce—rather, it simply reflects . . . restraints on foreign trade," which does not constitute

3   "'involvement' in import trade or commerce.").

4          Courts regularly refuse to apply the "narrow" exception for import trade where, as here,

5   Plaintiffs do not allege Defendants "directly br[ought] items or services into the United States

6   or directly increase[d] or decrease[d] United States imports."   Order, *In re Korean Air Lines*

7   *Co., Ltd.*, CV 07-05107 SJO (AGRx), slip op. at 8 (C.D. Cal. June 25, 2008) ("*KAL*") (Saveri

8   Decl. in Supp. of Direct Purchaser Plaintiffs' Opposition, Ex. 1); s*ee also Animal Sci. Products,*

9   *Inc. v. China Nat'l Metals & Minerals Imp. & Exp. Corp.*, 596 F. Supp. 2d 842, 861 (D.N.J.

10  2008).   The authorities relied upon by Plaintiffs require Plaintiffs to allege facts to support the

11  contention that Defendants' anticompetitive conduct involved "import trade or import

12  commerce," *i.e.*, that the "conduct by the defendants" was "directed at an import market."

13  *Kruman v. Christie's Int'l PLC*, 284 F.3d 384, 395-96 (2d Cir. 2002); *see also KAL*, CV

14  07-05107 at 8-9.

15         The IP-CAC contains only a single allegation that even mentions the word "import":

16  "Defendants ensured that prices of all CRT Products imported into the United States were fixed,

17  raised, maintained and/or stabilized at supracompetitive levels."   IP-CAC, ¶ 162.[4]   This bald

18  allegation, however, is wholly conclusory and fails to allege any facts to support the claim that

19  any CRTs were directly imported *by Defendants* or that Defendants' conduct "*directly*

20  increase[d] or decrease[d] United States imports."   *KAL*, CV 07-05107 at 8 (emphasis and

21  alterations in original).   Moreover, a review of Paragraph 162 makes clear that Plaintiffs are

22  referring to imports of Finished Products, not CRTs.   IP-CAC, ¶ 162 (discussing the market

23  for "CRT televisions and computer monitors").   Under the import exception, however, the

24  affected import market must be the same as the market for the allegedly price-fixed product.

25  _____

26  [4]  As for Plaintiffs' references in their brief to a purported "Industry Trade & Summary"
    publication regarding CRT imports (IP-Opp. at 98), such allegations appear nowhere in the
27  Complaint and must be disregarded.   *See Schneider v. California Dep't of Corrections*, 151
    F.3d 1194, 1197 n.1 (9th Cir. 1998).

28

1   *See*, *e.g.*, *United Phosphorous, Ltd. v. Angus Chem. Co.*, 131 F. Supp. 2d 1003, 1023-34 (N.D.

2   Ill. 2001).

3          Plaintiffs' next argument – that the IP-CAC alleges "Defendants imported CRTs and

4   CRT Finished Products into the U.S. either directly or through their United States

5   wholly-owned subsidiary that acted as their sales and marketing arm" (IP-Opp. at 97) – is false.

6   In reality, the IP-CAC only alleges that Defendants "*sold and/or distributed CRT Products*,

7   either directly or indirectly . . . to customers throughout the United States."    IP-CAC, ¶¶ 50-52,

8   54-55, 58-59, 61-70, 72-78, 80-83, 85-92, 94-95, 97-98, 100-102, 104-100 (emphasis added).

9   Most importantly, the IP-CAC contains no factual allegation that Defendants' alleged

10  anticompetitive conduct was directed toward the U.S. import market for any product.[5]

11          **B.      Plaintiffs Fail To Allege A Direct, Substantial And Reasonably Foreseeable**
12                  **Anticompetitive Effect In The United States**

13          Plaintiffs assert that the Court has jurisdiction despite the FTAIA because Plaintiffs

14  purportedly have pled facts to demonstrate "domestic effects."    Plaintiffs' argument, however,

15  rests entirely on the false premise that the IP-CAC alleges facts to support a claim that the

16  purported foreign CRT conspiracy had a direct, substantial and reasonably foreseeable

17  anticompetitive effect in the U.S.

18          For example, Plaintiffs argue that the IP-CAC "is replete with allegations that

19  Defendants' unlawful conduct . . . led to artificially high prices for CRT Products sold in the

20  _____

21  [5]  It is insufficient to allege that the purported conspiracy was directed at controlling CRT
    prices paid in foreign markets, even if the CRTs purchased abroad were later imported into the
22  United States.    *See*, *e.g.*, *Kruman*, 284 F.3d at 395-96; *Animal Sci. Prods.*, 596 F. Supp. 2d at
    861 ("if defendants did not directly bring items or services into the United States, they cannot
23  be labeled importers . . . the fact that the product eventually found its way into the United
    States does not transform the defendant into an importer.") (internal quotations and citations
24  omitted); *Turicentro, S.A. v. Am. Airlines Inc.*, 303 F.3d 293, 303-04 (3d Cir. 2002) (holding
    that the FTAIA barred plaintiffs' claims because defendants' alleged conduct, *i.e.*, entering into
25  unlawful agreements to set commission rates, occurred outside of the United States. and did not
    directly affect imports into the United States); *United Phosphorus*, 131 F. Supp. 2d at 1023
26  ("Plaintiffs' theory has been consistently rejected by the courts, which have recognized that the
    import trade or import commerce exception to the FTAIA applies *only to domestic importers*.")
27  (emphasis in original) (internal citations and quotation marks omitted).

28  _____

U.S."   IP-Opp. at 100.   But the IP-CAC fails to allege any facts to support the claim that Plaintiffs even purchased the allegedly price-fixed products, *CRTs*, in the United States and instead, alleges only U.S. purchases of *Finished Products*.   Purchases of Finished Products in the United States cannot establish the requisite jurisdictional link because the IP-CAC contains no allegations of any conspiracy in the market for Finished Products.

To the contrary, Plaintiffs only allege anticompetitive agreements involving the foreign sale of CRTs.   *See* IP-CAC, ¶ 237.   This is dispositive, as the FTAIA bars antitrust actions "alleging restraints in foreign markets for inputs . . . used abroad to manufacture downstream products . . . that may later be imported into the United States" and then purchased by Plaintiffs. *United Phosphorus*, 131 F. Supp. 2d at 1009, 1014; *In re Intel Corp. Microprocessor Antitrust Litig.*, 476 F. Supp. 2d 452, 456 (D. Del. 2007) ("*Intel II*").[6]

Plaintiffs are also wrong in arguing that their complaints support the proposition that Defendants' foreign conduct had a "substantial" domestic effect because "[a] 'sufficient' volume of United States commerce is alleged that cannot be considered a mere 'spillover effect.'"   IP-Opp. at 102.   Plaintiffs have failed to plead any facts to support their conclusory contention that "'Defendants collectively controlled the vast majority of the market for CRT Products . . . in the United States.'"   IP-Opp. at 102 (quoting IP-CAC, ¶ 115).   Indeed, Plaintiffs' allegations regarding market shares of the CRT or Finished Product markets either refer to the global sale of CRTs or to statistical information concerning the percentages of CRT televisions that accounted for the overall television market and CRT monitors that accounted for the overall monitor market.   Neither of these allegations say anything about the domestic U.S. market.

---

[6]  Plaintiffs' assertion that the FTAIA "does not have a requirement that a defendant's foreign anticompetitive conduct adversely affect the same product or service in the commerce of both the foreign county [sic] and the United States" is incorrect.   IP-Opp. at 107-08.   *Intel* is directly on point in holding that an effect is not direct if it is based on a "chain of effects . . . contingent upon numerous developments" between a price-fixed input and a finished product. 452 F. Supp. 2d at 560.   Here, the connection between Defendants' alleged conspiratorial conduct (meetings abroad to set prices for foreign CRT sales) and Plaintiffs' purported injury (paying inflated prices for Finished Products sold within the United States) is far too attenuated to confer jurisdiction.   *See Intel II*, 476 F. Supp. 2d at 456.

DEFENDANTS' JOINT REPLY BRIEF
IN SUPPORT OF MTD THE IP-CAC

1   Because Plaintiffs have not pled facts to show a direct, substantial and reasonably

2   foreseeable effect in the United States, jurisdiction under the FTAIA is barred.   Plaintiffs'

3   additional argument that they "satisfy the second prong of the domestic effects test, in that the

4   domestic effects of the conspiracy 'give[] rise to' their claims" is unsupportable.   IP-Opp. at

5   103.   Plaintiffs cannot satisfy the "gives rise to" test by merely making the conclusory

6   assertion that the "foreign and domestic Defendants who engaged in unlawful foreign and

7   domestic conduct . . . caused domestic injury to domestic Plaintiffs."   *Id.* at 103-04.

8   Plaintiffs do not allege any specific allegations in support of a proximate *factual link* between

9   the alleged foreign conspiracy and Plaintiffs' alleged U.S. injury.[7]   *Empagran S.A. v. F.*

10  *Hoffmann-LaRoche, Ltd.*, 417 F.3d 1267, 1270-71 (D.C. Cir. 1995) ("The statutory language

11  'gives rise to' — indicates a direct causal relationship, that is, proximate causation, and is not

12  satisfied by the mere but-for 'nexus' the appellants advance").   This is not surprising, as the

13  IP-CAC allegations all concern foreign meetings which purportedly fixed prices for foreign

14  CRT sales – conduct excluded from United States antitrust jurisdiction by the FTAIA.[8]

15      **C.      State Laws Cannot Be Applied To Foreign Commerce In A Manner**
16             **Inconsistent With The FTAIA**

17      Once the Court concludes there is no federal antitrust subject matter jurisdiction under

18  the FTAIA, Plaintiffs' state antitrust claims must also be dismissed.   Plaintiffs simply ignore

19  Defendants' authority establishing the principle that, under the Commerce and Supremacy

20  Clauses of the U.S. Constitution, state law cannot reach foreign conduct which federal law

21  exempts from antitrust regulation in the United States.   *See* Def. Mem. at 10-14.

22

23  [7]  The decision in *Caribbean Broad.* is inapposite.   There, the Court had jurisdiction over
24  claims involving a monopoly targeted at the Eastern Caribbean market, including Puerto Rico
    and the U.S. Virgin Islands, which directly caused U.S. consumers (advertisers) to pay higher
25  prices in the United States and to lose U.S. sales.   *Caribbean Broad. Sys., Ltd. v. Cable &*
    *Wireless PLC*, 148 F.3d 1080, 1087 (D.C. Cir. 1998).

26
27  [8]  Courts regularly decide the applicability of the FTAIA on the pleadings and it is proper to do
    so here.   *See, e.g., In re Graphite Electrodes Antitrust Litig.*, No. 10-MD-1244, 2007 WL
    137684 (E.D. Pa. Jan. 16, 2007).

28
    MDL NO. 1917                                              DEFENDANTS' JOINT REPLY BRIEF
                                                              IN SUPPORT OF MTD THE IP-CAC

1    Instead, Plaintiffs argue that, in certain other respects (*e.g.*, standing issues), state and

2    federal antitrust laws may "differ."    IP-Opp. at 9.    Defendants do not disagree.    Nor do

3    Defendants assert that Congress has elected to preempt the entire field of state antitrust law.

4    Rather, Defendants assert that state antitrust laws cannot be applied to foreign commerce to

5    exceed the jurisdictional limits set by the FTAIA.    *See, e.g.*, *Intel II*, 476 F. Supp. 2d at 457

6    ("Congress' intent would be subverted if state antitrust laws were interpreted to reach conduct

7    which the federal law could not.").    Plaintiffs do not even try to dispute this point.[9]    Because

8    the FTAIA bars jurisdiction, the IP-CAC should be dismissed in its entirety.    Alternatively,

9    even if the Court were to find a few allegations in the IP-CAC sufficient to allege a conspiracy

10   to fix the price of CRTs sold in the United States, it should dismiss all claims in the IP-CAC

11   directed at agreements relating to the foreign sale of CRTs, which clearly do not fall within the

12   subject matter jurisdiction of this court.

13   **II.    PLAINTIFFS HAVE NOT ESTABLISHED ANTITRUST STANDING UNDER
            THE SHERMAN ACT OR MOST OF THE STATE LAWS ASSERTED**

14

15        **A.    The *Associated General Contractors* Test Is Applicable To Fourteen State
                Antitrust Laws And Two State Consumer Protection Laws**

16        Plaintiffs' claims must also be rejected for lack of antitrust standing under the antitrust

17   laws of fourteen out of the seventeen states at issue, and under the consumer protection laws of

18   Nebraska and New York.[10]    Plaintiffs argue that the test for antitrust standing articulated in

19   *AGC*, 459 U.S. at 537-544, should be ignored with respect to all states that have repealed the

20   categorical bar on indirect purchaser suits set forth in *Illinois Brick*, 431 U.S. at 720.    *See*

21   IP-Opp. at 112-114.    In particular, Plaintiffs seek a "broader standard" for antitrust standing

22

23   [9] Further, Plaintiffs have not cited a single case in which state antitrust, consumer protection or
     unfair competition laws have been applied in a manner inconsistent with the FTAIA.    There is
     thus no basis to apply Plaintiffs' state law claims to the foreign conduct alleged in the IP-CAC

24   in a manner that would exceed the jurisdictional scope of those laws.    *See, e.g.*, *Intel II*, 476 F.
     Supp. 2d at 457 (finding that Plaintiffs' "state law claims are limited by the reach of their

25   applicable federal counterparts").

26   [10] Plaintiffs do not challenge, and therefore concede, that this standing analysis applies under
     the consumer protection laws of Nebraska and New York.    *See Kanne v. Visa U.S.A., Inc.*, 723

27   N.W.2d 293, 301 (Neb. 2006); *State ex rel. Spitzer v. Daicel Chem. Indus., Ltd., State v. Daicel
     Chem. Indus., Ltd.*, 840 N.Y.S.2d 8, 12 (N.Y. App. Div. 2007).

28

1   that is both amorphous and limitless.   *Id.* at 113.   This argument, however, is not tenable in

2   light of the many states – including so-called "*Illinois Brick* repealer" states at issue here[11] – that

3   have *expressly applied* the *AGC* factors to claims brought under their state antitrust statutes.

4     As Defendants have set forth, and Plaintiffs all but concede,[12] courts in California, Iowa,

5   Kansas, Michigan, Nebraska, North Dakota, South Dakota, Vermont, and Wisconsin have all

6   held that indirect purchaser claims are subject to the separate *AGC* test.   *See* Def. Mem. at 17-18

7   and n. 13 (citing cases from each jurisdiction applying *AGC*).[13]   Likewise, the legislatures of

8   four other states – Arizona, Nevada, New Mexico, and West Virginia – have "harmonization"

9   provisions requiring that their antitrust statutes be governed by federal law, and the state

10   Supreme Court of a fifth state, Mississippi, has held that federal law should be used in

11   interpreting its state antitrust statute.   *Id.* at n. 14-15 (citing harmonization provisions).   In

12   repealing *Illinois Brick*'s categorical bar on indirect purchaser actions, these states did not

13   automatically confer antitrust standing on all claims brought by indirect purchasers, no matter

14   how indirect they may be.   Application of *AGC* to Plaintiffs' claims arising under these fourteen

15   states is therefore required.   *See In re DRAM Antitrust Litig.*, 516 F. Supp. 2d 1072, 1094-95

16   (N.D. Cal. 2007) ("*DRAM I*"); *In re DRAM Antitrust Litig.*, 536 F .Supp. 2d 1129, 1135 n.2 (N.D.

17   Cal. 2008) ("*DRAM II*").

18     Notably, Plaintiffs have failed to come forward with *any* contrary authority from the

19   jurisdictions challenged by Defendants with respect to antitrust standing.   Instead, Plaintiffs

20

21   [11] *Illinois Brick* itself recognized that the mere fact that a party purports to be an indirect
purchaser plaintiff does not answer the "*analytically distinct* . . . question of which persons

22   have sustained injuries too remote to give them standing to sue . . . ."   *Illinois Brick*, 431 U.S.
at 728 n. 7 (emphasis added).

23   [12] Plaintiffs only question Defendants' citations with respect to California state law.
Plaintiffs argue that *Vinci v. Waste Management, Inc.*, 36 Cal. App. 4th 1811 (1995) supports

24   their argument.   This is not correct.   As Plaintiffs note, the *Vinci* court "did list the *AGC*
factors," and denied antitrust standing under the first prong of the test – for lack of antitrust

25   injury.   *Id.* at 1814-15.

26   [13] Moreover, since the date of Defendants' moving brief, an additional court has reaffirmed
that *AGC* applies to Michigan's state antitrust law.   *See McNulty v. Reddy Ice Holdings, Inc.*,

27   No. 08-CV-13178, 2009 WL 1508381 * 17-21 (E.D. Mich. May 29, 2009), *rev'd on other
grounds on reconsideration*, 2009 WL 2168231 (E.D. Mich. July 17, 2009).

28

1   complain that not all of the cited authority emanates from the states' *highest courts* or its

2   legislatures.   *See* IP-Opp. at 115-16.   This argument is unavailing.   *First*, Plaintiffs do not

3   dispute that the *AGC* test must be applied to their antitrust claims brought in Iowa, as well as to

4   their antitrust and consumer protection claims brought in Nebraska, because the highest courts in

5   those states have applied the *AGC* test.   *See, e.g., In re GPU Antitrust Litig.*, 540 F. Supp. 2d

6   1085, 1097 (N.D. Cal. 2007) ("*GPU II*").   *Second*, Plaintiffs rely on opinions from jurisdictions

7   that are not relevant here.   For example, Plaintiffs resort to urging this Court to follow the

8   Minnesota Supreme Court's decision in *Lorix v. Crompton Corp.*, 736 N.W.2d 619, 627 (Minn.

9   2007), which merely held that *AGC* does not apply under *Minnesota* law, and expressly

10  acknowledged its holding to be contrary to the laws of many other states.   *Id.* at 629 (citing

11  Nebraska and Vermont cases referenced in Defendants' moving brief).   Because Defendants

12  have not sought dismissal of Plaintiffs' Minnesota claim with respect to antitrust standing, *Lorix*

13  does not bear on Defendants' arguments.[14]   *Third*, on the issue of whether *AGC* applies to the

14  states at issue, Plaintiffs neither distinguish nor even mention this District's well-reasoned

15  state-by-state application of *AGC* in *DRAM I* and *DRAM II*.   *See DRAM I*, 516 F. Supp. 2d at

16  1084-93; *DRAM II*, 536 F. Supp. 2d at 1135.   Specifically, Plaintiffs do not explain why state

17  law directly on point, or a state statutory provision that "harmonizes" a state statute with federal

18  caselaw, would not be sufficient.[15]   Thus, Judge Hamilton's reasoned position in *DRAM* –

19  relying upon the courts and legislatures of the states themselves – is the proper approach to this

20  issue.   *DRAM I*, 516 F. Supp. 2d at 1094-95.

21  _____

22  [14]  For this reason, Plaintiffs' citation to *Teague v. Bayer AG*, 671 S.E.2d 550, 556-558 (N.C. Ct. App. 2009) is also misplaced (*see* IP-Opp. at 115 n. 151).   Nor can Plaintiffs rely on the

23  analysis of a Pennsylvania district court in *D.R. Ward Const. Co. v. Rohm & Haas Co.*, 470 F.Supp. 2d 485 (E.D. Pa. 2006), which has been criticized as "inconsistent with the prevailing

24  approach to [antitrust standing] by courts applying the laws of [*Illinois Brick* repealer] states." *In re Intel Corp. Microprocessor Antitrust Litig.*, 496 F. Supp. 2d 404, 409 (D. Del. 2007).

25  [15]  The cases cited by Plaintiffs are themselves inconsistent as to what would constitute such "clearer directive."   *Compare GPU II*, 540 F. Supp. 2d at 1097 (requiring express guidance

26  from a state's *highest* court) *with In re Flash Memory Antitrust Litig.*, No. C 07-0086 SBA, 2009 WL 1096602, at *13 (N.D. Cal. March 31, 2009) ("*Flash*") (finding a state's intermediate

27  appellate courts to be binding, absent "*convincing evidence* that the state's supreme court likely would not follow it.") (emphasis added).

28

1    Moreover, the few decisions in this District that have been "reticent" to apply the *AGC*

2   test on a state-by-state basis did *not* pronounce a general rule that *AGC* does not apply under state

3   law.   *See, e.g., Flash*, 2009 WL 1096602, at *13-15 (holding that *AGC* applies to the antitrust

4   laws of Iowa, Nebraska and California, all at issue here).   One of these courts simply chose to

5   put off the issue, and later noted that "[i]t may yet prove correct to apply the [*AGC*] test."   *See In*

6   *re GPU Antitrust Litig.*, 527 F. Supp. 2d 1011, 1026 (N.D. Cal. 2007) ("*GPU I*"); *GPU II*, 540

7   F.Supp. 2d at 1097.   However, the proper approach is to decide *AGC* now, as standing is a

8   threshold issue of antitrust pleading.   *See AGC*, 459 U.S. at 521; *NicSand, Inc. v. 3M Co.*, 507

9   F.3d 442, 450 (6th Cir. 2007) ("antitrust standing is a threshold, pleading-stage inquiry").

**B.    Plaintiffs Lack Standing To Assert Their Injunctive Relief Claims Under
        Federal Law**

12    Plaintiffs are also incorrect in arguing that they need not prove antitrust standing with

13   respect to their federal claim for injunctive relief.   In *Cargill, Inc. v. Monfort of Colorado, Inc.*,

14   479 U.S. 104, 111-113 (1986), the Supreme Court held that plaintiffs seeking injunctive relief

15   under Section 16 of the Clayton Act, 15 U.S.C. § 26, must still plead (and ultimately

16   demonstrate), among other things, that they have suffered an antitrust injury.   Thus, under both

17   Sections 4 and 16 of the Clayton Act, plaintiffs must plead an injury "of the type the antitrust

18   laws were designed to prevent."   *See Lucas Automotive Eng., Inc v. Bridgestone/Firestone, Inc.*,

19   140 F.3d 1228, 1234-35 (9th Cir. 1998).

**C.    As Purchasers Of Finished Products Containing CRTs, Plaintiffs Have
        Failed To Plead "Antitrust Injury"**

21    As an initial matter, Plaintiffs' arguments that they have pled antitrust standing under

22   *AGC* simply because they have conclusorily alleged a "CRT Products" conspiracy fails as a

23   matter of law.   IP-Opp. at 112.   In fact, Plaintiffs have not pled, nor could they plead, facts to

24   support the existence of any such "multi-faceted" conspiracy.   Instead, as Plaintiffs have

25   conceded, the market for Finished Products is extremely competitive and subject to "vigorous

26   price competition."   IP-CAC, ¶ 227.

1

### 1.   Plaintiffs Ignore Well-Settled Precedent Requiring Market Participation as a Prerequisite to "Antitrust Injury"

2   Plaintiffs summarily dismiss decades of Ninth Circuit precedent, and *AGC* itself, in

3   arguing that a plaintiff need not be a participant in the allegedly restrained market in order to

4   prove "antitrust injury."   *See Bhan v. NME Hosp., Inc.*, 772 F.2d 1467, 1470 n. 3 (9th Cir. 1985)

5   ("the injured party [must] be a participant in the *same* market as the alleged malefactors")

6   (emphasis added); *Am. Ad Mgmt., Inc. v. Gen. Tel. Co.*, 190 F.3d 1051, 1057 (9th Cir. 1999)

7   ("Antitrust injury requires the plaintiff to have suffered its injury in the market where

8   competition is being restrained.   Parties whose injuries, though flowing from that which makes

9   the defendant's conduct unlawful, are experienced in another market do not suffer antitrust

10   injury"); *see also AGC*, 549 U.S. at 538 (antitrust laws are designed to "protect[] the economic

11   freedom of participants *in the relevant market*") (emphasis added).

12   Rather than address these precedents, Plaintiffs argue that the market participation

13   requirement is an "artificial restriction[]" imposed only by federal courts that would run counter

14   to the "intent" of the "*Illinois Brick* repealer" states.   *See* IP-Opp. at 119-121.[16]   A state law

15   plaintiff, though, does not automatically obtain antitrust standing simply by being an "indirect

16   purchaser" in a repealer state.   To the contrary, courts in the repealer states have routinely

17   required market participation as a prerequisite to antitrust injury.   *See, e.g.*, *Kanne*, 723 N.W.2d

18   at 298 (Nebraska); *Southard v. Visa U.S.A.*, 734 N.W.2d 192, 199 (Iowa 2007).   In the face of

19   this authority, Plaintiffs rely upon cases that are either inapposite or run directly contrary to their

20   position.[17]

21   _____

22   [16]   Plaintiffs further argue that antitrust standing is satisfied "as long as the injury alleged was foreseeable and 'inextricably intertwined' with the injury to competition inflicted by defendants."   *See* IP-Opp. at 123.   This argument rests on a fundamental misconception of

23   the relevant law.   In *Blue Shield v. McCready*, 457 U.S. 465 (1982), the Supreme Court created a "narrow exception" to the market participation rule, and one that is unavailable to

24   Plaintiffs here as the IP-CAC makes clear that Plaintiffs have no direct relationship with the Defendants and participate in a wholly different market.   Nor do Plaintiffs justify their

25   allegation that the markets for stand-alone CRTs and Finished Products are "inextricably linked" because "the demand for CRTs is ultimately determined by purchasers of products

26   containing such products."   IP-CAC, ¶¶ 227, 239.

27   [17]   *Union Carbide Corp. v. Superior Court*, 36 Cal. 3d 15 (1984) and *Cellular Plus, Inc. v. Superior Court*, 14 Cal. App. 4th 1224 (1993) simply make the unremarkable point that

28   California has repealed *Illinois Brick* and does not *categorically* bar indirect purchaser claims.

1    Judge Hamilton's decisions in *DRAM I* and *DRAM II* – in which the court found that

2   plaintiffs who bought products containing DRAM chips purchased in a "secondary market that

3   is incidental to the primary price-fixed market" – are persuasive.   In *DRAM I*, the court

4   rejected the very argument proposed by Plaintiffs here – that indirect-purchaser status alone

5   satisfies antitrust standing requirements.   *See* 516 F. Supp. 2d at 1083-1093.   Even after

6   plaintiffs were permitted to supplement their allegations, Judge Hamilton dismissed the

7   amended complaint under *AGC*, as it still "failed to adequately allege antitrust standing . . .

8   based on purchases of DRAM as a component in computers."   *DRAM II*, 536 F. Supp. 2d at

9   1135-1142.

10    To the extent that other courts in this District have found that other allegations in

11   different cases "slightly favor standing" under this first factor of *AGC*, those decisions were

12   couched as merely preliminary.   *See, e.g., In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586

13   F.Supp. 2d 1109, 1123 (N.D. Cal. 2008) (noting that "it may be that indirect purchasers have

14   participated in an analytically distinct market for finished products," but finding plaintiffs'

15   allegations "sufficient at this stage" to proceed); *Flash*, 2009 WL 1096602 at *16 (issue of

16   market participation "better suited to resolution upon a fuller record"); *GPU II*, 540 F. Supp. 2d

17   at 1097-98 (finding the *AGC* factors satisfied "at least at the pleading stage").[18]   As noted

18   above, however, *AGC* was decided on the pleadings, and if Plaintiffs have not sufficiently

19   alleged market participation *on the face of their Complaint*, their claims must be rejected.[19]

20

21   Neither case suggests that requiring a showing of antitrust injury "would run counter to both the plain language and the intent of the repealer states' statutes."   IP-Opp. at 119-120.

22   [18] Moreover, Judge Alsup's decision in *GPU II* turned on substantially different facts, as

23   Plaintiffs alleged that a GPU graphics card "having certain speed and performance characteristics can be a selling point to a consumer;" that consumers are told that a computer

24   includes a certain type of graphics card from a particular manufacturer; and that GPUs are "separately-invoiced component[s] . . . severable from the computer itself."   *See* 540 F. Supp.

25   2d at 1098.   By contrast, Plaintiffs here have made no such allegations concerning CRTs. Indeed, Plaintiffs have alleged that CRTs are "commodity-like products," and that "one Defendant's CRT . . . is substitutable for another's."   *See* IP-CAC, ¶ 136.

26   [19] The other cases cited by Plaintiffs are all distinguishable.   *See* IP-Opp. at 122-24.   Some

27   relate solely to jurisdictions that are not at issue here, such as Tennessee, Massachusetts and the District of Columbia.   *See, e.g., Freeman Inds. LLC V. Eastman Chem. Co.*, 172 S.W.3d 512,

28   520 (Tenn. 2005); *Moniz v. Bayer Corp.*, 484 F.Supp. 2d 228 (D. Mass 2007); *Holder v. Archer*

1

2
### 2.   Because Plaintiffs Do Not Purport to Meet the Ninth Circuit's Test for Market Participation, Their Antitrust Injury Claim Fails

3
Alternatively, Plaintiffs argue in a single paragraph that they are "participants" in the

4
relevant market because certain Defendants sell finished televisions and computer monitors,

5
and because of "the importance of the CRT Finished Product market" in Defendants' alleged

6
conspiracy.   *See* IP-Opp. at 118.   This conclusory argument is meritless.   As previously

7
discussed, Plaintiffs have not pled a conspiracy to fix the price of televisions and computer

8
monitors.   *See supra* pp. 1-3.   Thus, it is entirely irrelevant whether Defendants sell

9
televisions or computer monitors, and Plaintiffs' statement that "Defendants are 'participants'

10
in the same 'market' as Plaintiffs because they not only make CRTs but they also manufacture

11
and sell CRT televisions and computer monitors" should simply be ignored as a non-sequitur.

12
IP-Opp. at 118 (citing IP-CAC, ¶¶ 223, 238).

13
Tellingly, Plaintiffs do not argue, *see* IP-Opp. at 126, that their allegations meet either

14
of the categories for market participation enumerated by the Ninth Circuit (*i.e.*, that the

15
televisions and computer monitors bought by the plaintiffs are "reasonably interchangeable," or

16
experience "cross-elasticity of demand," with CRTs).   *See, e.g.*, *Bhan*, 772 F.2d at 1470-1471;

17
*DRAM II*, 536 F. Supp. 2d at 1139-1141.   This is not surprising, as either argument would be

18
incorrect.   No consumer could use a CRT to watch television or a video, and no consumer

19
would buy a stand-alone CRT if prices for a finished computer monitor or television set

20
became too expensive.   Moreover, a host of factors influence consumers' television

21
preferences, having nothing to do with CRTs.   At bottom, Plaintiffs are consumers in

22
secondary markets that are "incidental" to the "market for [the CRT] itself."   *See DRAM I*,

23
516 F. Supp. 2d at 1091; *DRAM II*, 536 F. Supp. 2d at 1136.

24

25
*Daniels Midland Co.*, No. 96-2975, 1998 WL 1469620 (D.C. Super. Ct. Nov. 4, 1998).
Others contain no analysis of antitrust standing whatsoever.   *See, e.g.*, *Intel x86*

26
*Microprocessors Cases*, J.C.C.P. No. 4443 (Cal. Super Ct. May 15, 2007) (IPP-RJN Ex. 14)
(stating without explanation that demurrer on standing grounds denied); *Szukalski v. Crompton*

27
*Corp.*, 726 N.W.2d 304, 307 n. 6 (Wis. Ct. App. 2006) (stating in footnote, without analysis,
that standing was met).

28
MDL NO. 1917

DEFENDANTS' JOINT REPLY BRIEF
IN SUPPORT OF MTD THE IP-CAC

17

**D.      Plaintiffs Also Fail To Satisfy The Remoteness Factors Of *AGC***

        1.      **Plaintiffs' Injury Claims are Attenuated and Indirect**

Plaintiffs have failed to show that their allegations support a "causal connection" between their alleged injury and the alleged restraint in the market.   *AGC*, 459 U.S. at 540; *see also R.C. Dick Geothermal Corp. v. Thermogenics, Inc.*, 890 F.2d 139, 147 (9th Cir. 1989); *DRAM I*, 516 F. Supp. 2d at 1091.   Indeed, the very paragraphs from the IP-CAC cited in Plaintiffs' Opposition confirm the attenuated nature of their alleged injuries.   *See, e.g.*, IP-CAC, ¶ 224 (alleging that Plaintiffs purchase end-products which incorporate CRTs as one component not from Defendants, but from manufacturers, such as non-parties Dell or Sharp, or retailers, such as non-party Best Buy); ¶ 228 (alleging that manufacturers need to determine "production costs" to in turn determine "component costs" – not limited to CRT costs – which are themselves merely a "starting point" for calculating prices of the end-product).   As detailed in Defendants' opening brief, there are a variety of different layers – including manufacturing, distribution and retail channels – that separate Plaintiffs' allegations of injury from any alleged constraints in the CRT market, making such claims more and more remote at each step of the distribution chain.   *See, e.g., See Lorenzo v. Qualcomm Inc.*, 603 F. Supp. 2d 1291, 1301 (S.D. Cal. 2009) (the alleged injury was "too remote" where the relevant technology was "only a component" of the product at issue, "which is then passed on through the supply chain such that Plaintiff's injury also must be disaggregated from a multitude of other manufacturing and component factors"); *see also Lorenzo v. Qualcomm Inc.*, No. 08cv2124 WQH (LSP), 2009 WL 2448375, at *4 (S.D. Cal. Aug. 10, 2009) (same).

        2.      **Plaintiffs' Injury Claims are Speculative**

Plaintiffs' conclusory allegations of a "traceable" pass-through are also hopelessly speculative.   *See* IP-CAC, ¶¶ 222-239.   There are a variety of factors – such as the cost of *other* components that collectively make up a computer monitor or television – that would have influenced the price that each plaintiff paid for an end-product as complex as a television.   *See, e.g., DRAM I*, 516 F. Supp. 2d at 1092 ("each product in which DRAM is a component,

1   contains numerous other components, all of which *collectively* determine the final price

2   actually paid by plaintiffs for the final product") (emphasis in original).    According to the

3   IP-CAC, CRTs – *at most* – account for 60% of the manufacturing cost of a computer monitor,

4   and *even less* for a television set.    *See* IP-CAC, ¶ 229.    In such a case, "plaintiffs who are in

5   secondary markets in which they purchase the price-fixed product as a component, would need

6   to allege that the secondary market sellers themselves were in an oligopoly and fixing prices, in

7   order to demonstrate non-speculative damages."    *DRAM I*, 516 F. Supp. 2d at 1092 (internal

8   citation omitted).[20]    Plaintiffs do not make any such allegations here.    Instead, Plaintiffs

9   allege that "computer and TV OEMs and retailers of CRT Products are all subject to vigorous

10  price competition . . . ."    IP-CAC, ¶ 227.    Moreover, because televisions and computer

11  monitors compete in entirely different markets, including against different brands, and –

12  increasingly in the years comprising the statute of limitations period – different types of

13  televisions and computer monitors (*i.e.,* plasma and LCD), the unique forces particular to each

14  of *those* markets will influence the price of a television or computer monitor, injecting yet more

15  variables and uncertainty.    Thus, as in *AGC*, Plaintiffs' claim "rests at bottom on some

16  abstract conception or speculative measure of harm."    459 U.S. at 543.

17          3.    **Plaintiffs' Injury Claims Would Be Complex and Duplicative**

18          Plaintiffs ask this court to ignore the last two *AGC* factors because they purportedly

19  "eliminate repealer state antitrust laws."    IP-Opp. at 130.    This argument, too, must fail, as

20  courts in the repealer states have endorsed and applied *AGC in its totality*.    Further, Plaintiffs'

21  allegations only emphasize the complexity of tracking any alleged overcharge through the

22  various manufacturing, distribution, retail and marketing channels, and of disaggregating any

---

23  [20]  Although Plaintiffs claim that "the ability of purchasers to trace overcharges . . . has been
24  repeatedly recognized by federal courts," the cited cases do not support that proposition.
    IP-Opp. at 127-128.    *In re Sugar Indus. Antitrust Litig.*, 579 F.2d 13, 18 (3d Cir. 1978), which
25  predates *AGC*, involved plaintiffs who purchased products directly from the defendants,
    simplifying any damages analysis.    Similarly, *In re Linerboard Antitrust Litig.*, 305 F.3d 145,
26  159 (3d Cir. 2002) involved plaintiffs who purchased products directly from defendants, and
    concerned a grant of class certification.    *Id.* at 148.    Moreover, both cases analyzed the
27  applicability of *Illinois Brick* to direct purchasers who purchased finished products, rather than
    *AGC* principles of antitrust standing.

28

1 alleged overcharge from the myriad other components that make up a television.   Because

2 these additional channels and components inject additional levels of complexity into the final

3 price, Plaintiffs' allegations concerning a CRT's purported *physical* traceability, *see* IP-CAC, ¶

4 231, are plainly insufficient.   *See Lorenzo*, 603 F. Supp. 2d at 1301.

5        Plaintiffs also fail to recognize the risk of "duplicative recovery" identified by the *AGC*

6 Court, which weighs against antitrust standing here.   *See* 459 U.S. at 544-45.   While

7 Plaintiffs argue that this risk "is inherent in the dual system of private antitrust enforcement"

8 (IP-Opp. at 130), they neglect to mention that state courts in repealer states routinely analyze

9 and apply this factor in denying standing to indirect purchasers when more "direct victims"

10 exist.[21]   This is certainly the case here, where Plaintiffs are seeking damages arising from the

11 same alleged wrongdoing and the same alleged purchases (*i.e.*, Finished Products) that are at

12 issue in the Direct Purchaser Plaintiffs' complaint.

13 **III.   INDIRECT PLAINTIFFS CANNOT SUE UNDER NEBRASKA, NEVADA OR HAWAII STATUTES BASED ON PURCHASES PREDATING THOSE STATES'**
14 **ILLINOIS BRICK REPEALER AMENDMENTS**

15        **A.   Nebraska**

16        Plaintiffs argue that neither Nebraska's Junkin Act nor its Consumer Protection Act

17 "specifically limit[] indirect purchasers to bringing suits for violations accruing only after the

18 effective date of the statute."   IP-Opp. at 132.   Plaintiffs have it exactly backwards: Nebraska

19 requires its courts to apply statutes only prospectively, absent a clear statement from the

20 Legislature to the contrary.   *Soukop v. ConAgra, Inc.*, 653 N.W.2d 655, 658 (Neb. 2002).

21 Neither of the cases cited in Plaintiffs' opposition suggest otherwise.   In *Nickel v. Saline*

22 *County Sch. Dist. No. 163*, 251 Neb. 762 (1997), the court used a formula from an unrelated

23 1991 statute to calculate service time accrued by a teacher before 1991.   *Id.* at 768.   But the

24 court did so only after it examined that amendment's legislative history and determined that the

25 Legislature *intended* that the statute be applied retroactively.   *Id.* at 769.   Plaintiffs here point

26
27 [21]   *See, e.g.*, *Kanne*, 723 N.W.2d at 299; *Strang v. Visa U.S.A., Inc.*, No. 03-CV-011323, 2005 WL 1403769, at *5 (Wis. Cir. Ct. Feb. 8, 2005); *Stark v. Visa U.S.A., Inc.*, No. 03-055030-CZ, 2004 WL 1879003, at *3 (Mich. Cir. Ct. July 23, 2004).

28
DEFENDANTS' JOINT REPLY BRIEF IN SUPPORT OF MTD THE IP-CAC

20

1   to nothing in Nebraska's repealer statute that indicates a similar intention.    Plaintiffs in *Arthur*

2   *v. Microsoft Corp.*, 267 Neb. 586 (2004), sued under Nebraska's Consumer Protection Act, not

3   the Junkin Act.    *See id.* at 587.    Moreover, *Arthur* does not even discuss Nebraska's 2002

4   repealer amendment, let alone analyze the issue presented here – whether the repealer should be

5   applied retroactively.

6       **B.     Nevada**

7       In their bid to apply Nevada's repealer statute retroactively, Plaintiffs cite *Pooler v. R.J.*

8   *Reynolds Tobacco Co.*, No. CV00-02674, 2001 WL 403167, at *1 (Nev. Dist. Ct. Apr. 4, 2001),

9   an unpublished decision rendered by a Nevada trial court (not an appellate court, as Plaintiffs

10  contend).[22]    However, in interpreting Nevada law, this Court is bound to follow the decisions

11  of Nevada's highest court.    *Johnson v. Frankell*, 520 U.S. 911, 916 (1997).    Nevada's highest

12  court holds that "statutes are prospective only, unless it clearly, strongly, and imperatively

13  appears from the act itself that the legislature intended the statute to be retrospective in its

14  operation."    *Matter of the Estate of Thomas*, 998 P.2d 560, 562 (Nev. 2000).    The Nevada

15  statute Plaintiffs invoke reveals no such intention.

16      **C.     Hawaii**

17      Plaintiffs state that they will "make no claim under the Hawaii statute based on

18  purchases made before that statute was enacted."    IP-Opp. at 132.    The Court should

19  therefore dismiss all claims under any Hawaii statute based on purchases made before June 25,

20  2002.    *See Hawaii Med. Ass'n v. Hawaii Med. Serv. Ass'n*, 148 P.3d 1179, 1209 (Haw.

21  2006).[23]

22

---

23  [22]  Other Nevada courts have rendered decisions (also unpublished) holding that Nevada's
24  indirect purchaser statute does not apply retroactively.    *See, e.g.*, ABA Section of Antitrust
    Law, Indirect Purchaser Litigation Handbook (2007), p. 43 n.153 (citing *Krotz v. Microsoft*
25  *Corp.*, No. A416361 (Nev. Dist. Ct. June 22, 2000) as "holding that Nevada's indirect
    purchaser statute does not apply retroactively").

26  [23]  Plaintiffs do not address Defendants' argument that their claim under Hawaii's "Unfair
    Competition" statute is overbroad.    *See* Def. Mem. at 35-36.    The Court should therefore
27  dismiss Plaintiffs' claims under the Hawaii statute brought on behalf of non-"consumers," as
    the statute defines that term, and require Plaintiffs to plead their class allegations.

28

MDL NO. 1917                                      DEFENDANTS' JOINT REPLY BRIEF
                                                  IN SUPPORT OF MTD THE IP-CAC

1
2

IV.    **PLAINTIFFS' CLAIMS UNDER THE CONSUMER PROTECTION STATUTES OF HAWAII, MASSACHUSETTS, NEW YORK AND RHODE ISLAND FAIL AS A MATTER OF LAW**

3

    **A.    Massachusetts**

4

    In an attempt to excuse their failure to comply with the requirement to make a

5

pre-complaint written demand for relief under the Massachusetts Consumer Protection Act,

6

Plaintiffs argue that Defendants have not sufficiently demonstrated that they "maintain a place

7

of business" or "keep assets" within Massachusetts so as to trigger the need for such a demand.

8

IP-Opp. at 133.    As a threshold matter, *Defendants* are not required to make such a showing.

9

Moreover, the IP-CAC itself alleges that Defendants "engaged in trade or commerce" in

10

Massachusetts; fixed prices of "CRT Products … sold, distributed or obtained" in

11

Massachusetts; and threaten Massachusetts consumers with future injury.    IP-CAC, ¶ 277.

12

Indeed, if Defendants did not "keep assets" within Massachusetts, Plaintiffs would have no

13

cause of action.    *See* Mass. Gen. Laws Ch. 93A § 11.[24]

14

    **B.    New York**

15

    Plaintiffs argue that Defendants' failure to disclose their alleged conspiracy constitutes

16

a deceptive act under New York Gen. Bus. Law § 349.    IP-Opp. at 134.    Such nondisclosure

17

is inherent in any purported antitrust conspiracy, yet courts have consistently held that

18

"anticompetitive conduct alone does not constitute deceptive conduct under § 349."    *In re*

19

*Auto. Refinishing Paint Antitrust Litig.*, 515 F. Supp. 2d 544, 554 (E.D. Pa. 2007).

20

Defendants have cited numerous cases in which courts have dismissed claims under § 349

21

premised on price-fixing allegations.    *See* Def. Mem. at 32-34.    Plaintiffs attempt to

22

distinguish these cases because they purportedly "did not allege deceptive conduct."    IP-Opp.

23

at 134.    Even a cursory review of Defendants' cited cases reveals that this is not so.[25]

24

---

[24]  Plaintiffs also misrepresent the holding of *Richards v. Arteva Specialties S.A.R.L.*, 66 Mass.
25
App. Ct. 726 (2006), which does not require a moving defendant to show that it keeps assets in
the state.    Instead, plaintiff in *Richards* sent each defendant the demand letter required by the
26
statute.    *Id.* at 727.    The trial court dismissed the cause of action because the letter did not
adequately describe plaintiff's injury; the appellate court disagreed.    *Id.* at 734.

27
[25]  *See In re Auto. Refinishing Paint Antitrust Litig.*, 515 F. Supp. 2d at 553; *Leider v. Ralfe*,
387 F. Supp. 2d 283, 293 (S.D.N.Y. 2005); *Paltre v. Gen. Motors Corp.*, 810 N.Y.S.2d 496,
28

1    Plaintiffs also fail to point to any allegations of deceptive conduct "directed at" New

2  York consumers.   *See* Def. Mem. at 33-34.   Allegations that "Defendants made public

3  statements . . . that Defendants knew would be seen by New York Plaintiff[s]" do not meet this

4  standard.   IP-CAC, ¶ 280(g).   Plaintiffs argue that the cases Defendants cite do not involve

5  plaintiffs who were the "target of the conspiracy."   IP-Opp. at 135.   But many of these cases

6  were filed by plaintiff consumers who, just like Plaintiffs here, allege that they were the targets

7  of an anticompetitive conspiracy.   *See, e.g.*, *In re Auto. Refinishing Paint Antitrust Litig.*, 515

8  F. Supp. 2d at 546; *Paltre*, 810 N.Y.S. 2d at 482-83.   Plaintiffs also attempt to distinguish the

9  *Flash* case because plaintiffs there "failed to allege that [false and misleading] statements were

10  directed at consumers."   IP-Opp. at 135.   But that is precisely the defect found in *this*

11  complaint, and one which requires dismissal of Plaintiffs' § 349 claim.   *See Flash*, 2009 WL

12  1096602, *22 ("Other than the supposed statements made to the 'public,' there are no specific

13  allegations that the misconduct was directed *at* any particular group, let alone Indirect

14  Purchasers in New York.") (emphasis in original).

15  **C.    Rhode Island**

16    Plaintiffs argue that *ERI Max Entertainment, Inc. v. Streisand*, 690 A.2d 1351 (R.I.

17  1997) addresses only that state's common-law cause of action for unfair competition, and does

18  not reach claims under the Rhode Island Unfair Trade Practices and Consumer Protection Act.

19  IP-Opp. at 137.   This, too, is incorrect.   The *ERI Max* court concluded that the

20  anticompetitive conspiracy alleged in that case "does not meet the definition of 'unfair methods

21  of competition and unfair or deceptive acts or practices' set forth in § 6-13.1-1(5) of the act."

22  690 A.2d at 1354.   Plaintiffs do not explain how the conspiracy they allege differs from that

23  deemed insufficient in *ERI Max*.[26]

24  _____

25  498 (N.Y. App. Div. 2006); *Sperry v. Crompton Corp.*, No. 17872/02 4, at 2 (N.Y. Sup. Ct.
   Nov. 25, 2003) (RJN Ex. I).

26  [26] Plaintiffs also concede that their alleged Rhode Island class is overbroad.   IP-Opp. at 136,
   n.189.   At a minimum, then, the Court should dismiss any claims brought on behalf of

27  non-natural persons or persons who purchased goods for reasons other than "personal, family
   or household purposes" (R.I. Gen. Laws §6-13.1-5.2), and require Plaintiffs to replead such

28  allegations.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**V.      PLAINTIFFS' UNJUST ENRICHMENT CLAIMS FAIL IN STATES THAT REQUIRE PLAINTIFFS TO CONFER A BENEFIT DIRECTLY TO DEFENDANTS, AND IN STATES WITH SUBSTANTIVE ANTITRUST LAWS THAT WOULD PROHIBIT OR LIMIT PLAINTIFFS' RECOVERY**

**A.      Plaintiffs' Unjust Enrichment Claims Under The Common Law of Michigan, Kansas And New York All Fail**

**1.      Michigan**

Neither of the Michigan cases cited by Plaintiffs address the issue presented here: whether a plaintiff may recover for unjust enrichment where that plaintiff does not confer a benefit directly to the defendant.   In *Kammer Asphalt Paving Co., Inc. v. East China Township Schools*, 443 Mich. 176 (1993), plaintiff subcontractor performed base and paving work at defendant school district's athletic facilities.   *Id.* at 179.   The question before the court was whether retention of this benefit was unjust.   *Id.* at 186.   The court found that it was, given that defendant repeatedly assured plaintiff that bonds it had certified were valid.   *Id.* at 187.   Similarly in *Morris Pumps v. Centerline Piping, Inc.*, 273 Mich. App. 187 (Mich. App. 2006), plaintiff subcontractors delivered materials to a construction site, which defendant general contractor used without payment.   *Id.* at 190-191.   The *Morris Pumps* court held only that plaintiff need not *contract* directly with defendant in order to maintain an unjust enrichment claim.   *Id.* at 194.

In contrast, the court in *A&M Supply Co. v. Microsoft Corp.* squarely addresses the issue before this Court, holding that an indirect purchaser suing a software company for antitrust violations could not state a cause of action for unjust enrichment because "there was no direct receipt of any benefit by defendant here from [plaintiffs]."   No. 274164, 2008 WL 540883, at *2 (Mich. App. Feb. 28, 2008).

**2.      Kansas**

With respect to their Kansas unjust enrichment claim, Plaintiffs again confuse privity of contract with the direct conferral of a benefit.   Plaintiffs cite a subcontractor case, *Haz-Mat Response, Inc. v. Certified Waste Servs. Ltd.*, 259 Kan. 166 (1996), which states only that recovery under unjust enrichment "is not prohibited simply because the subcontractor and the

---

1    owner of the property are not in privity."   *Id.* at 177.   The opinion does not address the

2    question of whether the benefit in question was conferred *directly* by plaintiff to defendant.   In

3    any event, the *Haz-Mat* court concluded that plaintiff *could not* pursue its unjust enrichment

4    claim, because it could not show the "special circumstances" necessary to allow a plaintiff to

5    sue for unjust enrichment when it is not in privity with defendant.   *Id.* at 179.   Both Kansas

6    cases cited by the parties acknowledge that unjust enrichment requires "a benefit *conferred*

7    *upon the defendant by the plaintiff*."   *Id.* at 177; *Babcock v. Carrothers Const. Co., LLC*, No.

8    94,471, 2005 WL 3527117, at *2 (Kan. Ct. App. Dec. 23, 2005) (emphasis added).

9                              3.   **New York**

10           No New York unjust enrichment case is closer to the facts of this case than *Sperry v.*

11   *Crompton Corp.*, 8 N.Y.3d 204 (N.Y. 2007).   Plaintiffs claim to find support in *Sperry* from

12   the statement that "a plaintiff need not be in privity with the defendant to state a claim for

13   unjust enrichment."   IP-Opp. at 140.   Defendants have never argued otherwise; rather,

14   Defendants assert that Plaintiffs cannot sue for unjust enrichment under New York law because

15   they did not deal directly with defendants.   This is the same conclusion that the *Sperry* court

16   reached, on similar facts.   *See Sperry*, 8 N.Y.3d at 216 (the connection between the parties is

17   "simply too attenuated" to support an unjust enrichment claim); *see also Daicel Chem. Indus.*,

18   *Ltd.*, 840 N.Y.S.2d at 12 (same).[27]

19           B.   **Plaintiffs Cannot Use Unjust Enrichment As A "Back-Door" To Recover**
20                **For Claims Barred Under A State's Antitrust Laws**

21           Plaintiffs acknowledge that Massachusetts and Rhode Island ban indirect purchaser

22   suits.   IP-Opp. at 141.[28]   Yet, Plaintiffs argue that they may sue under those states' common

23   law of unjust enrichment because they have also alleged violations of those states' consumer

24   ───────────────

25   [27] Because the *Sperry* court *dismissed* plaintiff's unjust enrichment claim, *upholding* decisions
     by the Appellate Division and the Supreme Court, plaintiffs' suggestion that it was somehow
26   improper to cite to this decision is misguided.   *See* IP-Opp. at 140 n.194.

27   [28] Because Plaintiffs' Opposition exceeded the applicable page limitations to respond to the
     Joint Defendants' moving brief by seven pages, *see* IP-Opp. at 93-150, this Reply
28   Memorandum of Law includes an additional five pages.

     ───────────────────────────────────────────────────────────
     MDL NO. 1917                                        DEFENDANTS' JOINT REPLY BRIEF
                                                         IN SUPPORT OF MTD THE IP-CAC

1    protection laws.   *Id.*   Plaintiffs miss the point:   Massachusetts and Rhode Island made

2    policy decisions to disallow indirect purchaser claims to avoid the problems of multiple

3    liability and duplicative recovery that the Supreme Court identified in *Illinois Brick.*   Plaintiffs

4    cannot circumvent this ban by applying a different label to the same claims.   Indeed, federal

5    courts often dismiss unjust enrichment claims brought under the common law of states that ban

6    indirect purchaser suits, even where those plaintiffs also purport to allege violations of the

7    consumer protection laws of those states.   *See, e.g.*, *In re Terazosin Hydrochloride Antitrust*

8    *Litig.*, 160 F. Supp. 2d 1365, 1380 (S.D. Fla. 2001) ("State legislatures and courts that adopted

9    the *Illinois Brick* rule against indirect purchaser antitrust suits did not intend to allow 'an end

10   run around the policies allowing only direct purchasers to recover.'"); *see also In re GPU II*,

11   540 F. Supp. 2d at 1100.

12          In defense of their unjust enrichment claims, Plaintiffs cite *In re Cardizem CD Antitrust*

13   *Litig.*, 105 F. Supp.2d 618 (E.D. Mich. 2000).[29]   However, defendants in *Cardizem* did not

14   move to dismiss state-law claims based on *Illinois Brick*.   Moreover, Plaintiffs' argument

15   presupposes that they have stated viable claims under the Massachusetts and Rhode Island

16   consumer protection statutes.   Defendants have demonstrated otherwise.   *See* Def. Mem. at

17   32, 34-35.   At a minimum, then, if this Court dismisses Plaintiffs' consumer protection claims

18   under the law of these states, then Plaintiffs' unjust enrichment claims must also fail.   Finally,

19   because Plaintiffs do not respond to Defendants' argument that Plaintiffs' unjust enrichment

20   claims must fail in states where Plaintiffs lack standing to assert a state antitrust claim, *see*

21   IP-Opp. at 142, the Court should dismiss Plaintiffs' unjust enrichment claims in these states.

22          **C.      Plaintiffs Cannot Recover Under An Unjust Enrichment Theory In States**
23          **Which Limit Relief To Compensatory Damages**

24          Plaintiffs attempt to constrain the U.S. Supreme Court's holding in *Karahalios v. Nat'l*

25   *Federation of Fed. Employees*, 489 U.S. 527 (1989), to its facts.   IP-Opp. at 143.   The

26

27   [29]  Plaintiffs also cite to cases from Tennessee and Minnesota courts – states not at issue here –
     and several opinions regarding class-action certification.   IP-Opp. at 142 and n.198.

28

1   Court's holding, however, is sweeping and categorical.   *See Karahalios*, 489 U.S. at 533 ("It

2   is also an 'elemental canon' of statutory construction that where a statute expressly provides a

3   remedy, courts must be especially reluctant to provide additional remedies.").   This principle

4   is widely recognized and followed by state and federal courts, including the Ninth Circuit.

5   *See, e.g., Williams v. U.S. Gen. Servs. Admin.*, 905 F.2d 308, 311 (9th Cir. 1990).   Contrary to

6   Plaintiffs' assertion (IP-Opp. at 143-44), Defendants have cited specific state statutes that allow

7   a plaintiff to recover damages, but do not allow for restitutionary relief.   Def. Mem. at 40-41,

8   n. 34-41.   Plaintiffs argue that "most of the[se] statutes" provide that their remedies are

9   cumulative of other remedies, but cite no such provision for the laws of Nebraska, North

10  Carolina, or Wisconsin.   Moreover, many of the statutes Plaintiffs cite do not allow for the

11  restitutionary relief Plaintiffs seek here.[30]   And, most of the remaining code sections Plaintiffs

12  cite are subsections of entirely different laws, not the antitrust and consumer protection statutes

13  under which Plaintiffs sue.[31]

14  **VI.   PLAINTIFFS FAIL TO PLEAD FACTS SUFFICIENT TO TOLL THE
        STATUTE OF LIMITATIONS FOR ANY OF THEIR STATE LAW CLAIMS**

15

16          Plaintiffs' claims must also be dismissed because they fail to plead the elements of

    fraudulent concealment or equitable tolling required under the state law claims they assert.
17
    Moreover, Plaintiffs have failed to plead fraudulent concealment with particularity as required
18
    by Rule 9(b), a requirement Plaintiffs fail to even acknowledge.   *See Baggett v.*
19
    *Hewlett-Packard Co.*, 582 F. Supp. 2d 1261, 1267 (C.D. Cal. 2007).   Because "'the time bar is
20
    apparent on the face of the complaint,'" it is appropriate to dismiss Plaintiffs' allegations of
21
    fraudulent concealment at the motion to dismiss stage.   *See In re SRAM Antitrust Litig.*, 580 F.
22

23  [30]   *See, e.g.*, Kan. Stat. Ann. § 50-147 (statute's remedies "shall not affect, change or repeal any
    other remedies or rights now existing in this state *for the enforcement, payment or collection of*
24  *fines, penalties and forfeitures*"); Haw. Rev. Stat. § 480-13(d) ("The remedies *provided in this*
    *section* are cumulative and may be brought in one action"); Nev. Rev.Stat. Ann. § 598A.250
25  ("The remedies *afforded by this chapter* are cumulative"); W. Va. Code § 47-18-13 ("The
    remedies *provided in this article* shall be cumulative") (emphases added).
26
    [31]   *Compare, e.g.*, Minn. Stat. 325D.07 *with* IP-CAC, ¶ 260d (suing under Minnesota's law
27  prohibiting unfair restrictions in restraint of trade); Vt. Stat. Ann. 9 § 2470(d) *with* IP-CAC, ¶
    283f (suing under Vermont Consumer Fraud statute).
28

Supp. 2d 896, 904 (N.D. Cal. 2008) (internal citation omitted); *accord Rutledge v. Boston Woven Hose and Rubber Co.*, 576 F.2d 248, 250 (9th Cir. 1978) (affirming dismissal of complaint as time-barred).

### A.     Plaintiffs Have Failed To Allege Affirmative Acts Of Concealment

Plaintiffs concede, as they must, that to sufficiently plead fraudulent concealment, they must plead "affirmative action [by the defendants] directed at plaintiffs to cover up their conspiratorial conduct," a requirement in all twenty-two states whose state law claims Plaintiffs assert.   IP-Opp. at 146; Def. Mem. at 44 n.49.   Plaintiffs fail, however, to plead with particularity *any* "specific acts taken by Defendants to conceal their conspiracy from Plaintiffs."   IP Opp. at 146.   *Twombly* and *Iqbal* require that Plaintiffs set forth separate factual allegations to give each and every Defendant notice of who did what to whom, when and where.   *See* Defendants' Joint Mot. to Dismiss DP-CAC at 29, *incorporated by reference* in Def. Mem. at 4.

Plaintiffs claim that they allege several acts of affirmative conduct by "Defendants": agreeing "not to discuss publicly" conversations at meetings, agreeing "to refrain from taking meeting minutes or taking any kind of written notes," or agreeing to "limit the number of representatives" attending meetings.   IP-Opp. at 146-47 (IP-CAC, ¶ 290).   *None* of these allegations involves the type of active concealment designed to *mislead* the Plaintiffs regarding the existence of the alleged conspiracy.   *See Conmar Corp. v. Mitsui & Co. (U.S.A.), Inc.*, 858 F.2d 499, 502 (9th Cir. 1988).   At best, the allegations cited by Plaintiffs are of "silence or passive conduct" by the Defendants, which are insufficient to establish the affirmative conduct necessary for a fraudulent concealment claim.   *Rutledge*, 576 F.2d at 250.

Moreover, the IP-CAC lacks factual allegations regarding the who, what, where and when of the concealment, which is required not only for a fraudulent concealment claim, but also under Rule 8 and *Twombly*.   *See Baggett*, 582 F. Supp. 2d at 1267.   The allegations of affirmative conduct in ¶ 290 provide *no* such details.   The Complaint does not identify which Defendant is alleged to have engaged in what concealment activity, or when or where these acts

occurred.   *Cf. In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 782 F. Supp. 487, 490-91 (C.D. Cal. 1992) (finding adequate allegations of fraudulent concealment where plaintiffs identified *by name* specific employees of individual defendants, who instructed other defendants, *inter alia*, how to use leased phone lines to avoid detection). These allegations are *precisely* the kind of facts not pled by Plaintiffs.   *See* IP-CAC, ¶¶ 145-156.   There are *no* allegations of specific, additional actions taken by the Defendants to *conceal* the existence of the alleged conspiracy.   Further, Plaintiffs have impermissibly lumped their allegations of affirmative conduct against "Defendants" as a group.[32]

### B.      Because The IP-CAC Alleges Facts That Put Plaintiffs On Constructive Notice Of Their Claims, They Are Time-Barred

While Plaintiffs' failure to properly plead fraudulent concealment is fatal to their claims, they have also admitted facts that put them on notice of such claims well before the filing of the first complaint.   Plaintiffs' fraudulent concealment claims may only go forward if they did not have either "actual or constructive knowledge" of the facts constituting their claim.   *Rutledge*, 576 F.2d at 250.   They have not done so and their failure bars them from tolling the statute of limitations in all jurisdictions.   See Def. Mem. at 49 n.53.   Plaintiffs erroneously respond that such an inquiry is inappropriate at the motion to dismiss stage.   IP-Opp. at 149.   Plaintiffs are incorrect.   In *Rutledge*, the Ninth Circuit affirmed the dismissal of a complaint based on statute of limitations grounds, finding that a plaintiff "cannot rely upon conclusory statements to avoid the bar of limitations."   576 F.2d at 250; *accord SRAM*, 580 F. Supp. 2d at 904 (where "the time bar is apparent on the face of the complaint," dismissal is appropriate).

Further, because the Complaint pleads several facts that they describe as "inconsistent with a competitive market" (IP-CAC, ¶ 202) that were concededly publicly available from as early as the *1990s*, Plaintiffs were on constructive notice of their claims.   *See* IP-CAC, ¶ 192

---

[32] "[A] statute of limitations may be tolled only if the plaintiff establishes affirmative conduct upon the part of *the defendant* . . . . Plaintiffs may not generally use the fraudulent concealment by one defendant as a means to toll the statute of limitations against other defendants." *Barker v. Am. Mobil Power Corp.*, 64 F.3d 1397, 1402 (9th Cir. 1995) (internal citation and quotation omitted) (emphasis in original).

("[I]n the 1990s, industry analysts repeatedly predicted declines in consumer prices for CRTs that did not fully materialize"); *id.* (that despite predictions by market analysts in 1992 of price drops "and the existence of economic conditions warranting a drop in prices, CRT Product prices nonetheless remained stable"); *id.* at ¶ 193 ("In 1996, another industry source noted that the price of the 14" tube is at a sustainable USD50 and has been for some years").

**C.    Plaintiffs' Conclusory Allegations Of Futility Are Inadequate To Satisfy The Due Diligence Required By Nineteen States**

Finally, even if Plaintiffs had properly pled fraudulent concealment (they have not), Plaintiffs concede they did not "confirm[] [their] earlier suspicion by a diligent pursuit of further information."   *Conmar*, 858 F.2d at 504.   Plaintiffs fail to plead that they conducted any due diligence to uncover their claims, a necessary element to toll the statute of limitations in nineteen of the states (the "Due Diligence Jurisdictions").   IP-Opp. at 147.   Instead, they improperly rely on conclusory allegations that they could not have discovered their claims even if they had been diligent.   *See* IP-CAC, ¶ 289.   Plaintiffs provide *no* details as to *why* any inquiry would have been futile.   Plaintiffs' reliance on *In re Rubber Chemicals* only underscores the defects of their Complaint.   IP-Opp. at 148.   There, the plaintiffs alleged specific, affirmative acts of concealment "both by Chemtura and by the individual Defendants" that supported the assertion that due diligence was futile, such as the destruction of documents and the dissemination of pretextual justifications for price increases.   504 F. Supp. 2d at 788. Here, Plaintiffs fail to allege *any* affirmative acts of concealment against *any* Defendant, much less why their due diligence should be excused.

Plaintiffs fail to explain why facts they describe as "inconsistent with a competitive market" (IP-CAC, ¶ 202), were insufficient to "excite the inquiry of a reasonable person," *Conmar*, 858 F.2d at 504, thereby triggering Plaintiffs' due diligence obligations.   Because Plaintiffs concede that due diligence is required and yet fail to plead *any* allegations of due diligence, their fraudulent concealment and equitable tolling claims must fail.

1

## **CONCLUSION**

For all of the reasons stated above, and those set forth in Defendants' prior briefing, the

2

IP-CAC should be dismissed in its entirety.

3

Dated: September 24, 2009

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

By:   ___/s/ David L. Yohai___
STEVEN A. REISS (*pro hac vice*)
Email: steven.reiss@weil.com
DAVID L. YOHAI (*pro hac vice*)
Email: david.yohai@weil.com
DAVID E. YOLKUT (*pro hac vice*)
Email: david.yolkut@weil.com
**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, New York 10153-0119
Telephone:   (212) 310-8000
Facsimile:   (212) 310-8007

GREGORY D. HULL (57367)
Email: greg.hull@weil.com
**WEIL, GOTSHAL & MANGES LLP**
201 Redwood Shores Parkway
Redwood Shores, California 94065-1175
Telephone: (650) 802-3000
Facsimile: (650) 802-3100

By:   ___/s/ Jeffrey L. Kessler___
JEFFREY L. KESSLER (*pro hac vice*)
Email: jkessler@dl.com
A. PAUL VICTOR (*pro hac vice*)
Email: pvictor@dl.com
EVA W. COLE (*pro hac vice*)
Email: ecole@dl.com
**DEWEY & LEBOEUF LLP**
1301 Avenue of the Americas
New York, NY 10019
Telephone: (212) 259-8000
Facsimile: (212) 259-7013

***Attorneys for Defendants Panasonic Corporation
of North America, MT Picture Display Co., Ltd.,
and Panasonic Corporation (f/k/a Matsushita
Electric Industrial Co., Ltd.)***

By:   ___/s/ Gary L. Halling_____
GARY L. HALLING (66087)
Email: ghalling@sheppardmullin.com
JAMES L. MCGINNIS (95788)

MDL NO. 1917

DEFENDANTS' JOINT REPLY BRIEF
IN SUPPORT OF MTD THE IP-CAC

31

Email: jmcginnis@sheppardmullin.com
MICHAEL SCARBOROUGH (203524)
Email: mscarborough@sheppardmullin.com
**SHEPPARD, MULLIN, RICHTER &**
**HAMPTON LLP**
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone: (415)-434-9100
Facsimile: (415)-434-3947

*Attorneys for Defendants Samsung SDI America,*
*Inc., Samsung SDI Co., Ltd., Samsung SDI*
*(Malaysia) Sdn. Bhd., Samsung SDI Mexico S.A.*
*de C.V., Samsung SDI Brasil Ltda., Shenzhen*
*Samsung SDI Co. Ltd., and Tianjin Samsung SDI*
*Co., Ltd.*


By:    /s/ Ian Simmons
MICHAEL TUBACH (145955)
Email: mtubach@omm.com
**O'MELVENY & MYERS LLP**
Two Embarcadero Center, 28th Floor
San Francisco, California 94111-3823
Telephone: (415) 984-8876
Facsimile: (415) 984-8701

IAN SIMMONS (*pro hac vice*)
Email: isimmons@omm.com
**O'MELVENY & MYERS LLP**
1625 Eye Street, NW
Washington, DC 20006
Telephone: (202) 383-5300
Faacsimile: (202) 383-5414

*Attorneys for Defendants Samsung Electronics*
*Co., Ltd. and Samsung Electronics America, Inc.*

By:    /s/ Samuel Miller
Samuel R. Miller (SBN 66871)
Email: srmiller@sidley.com
Marie L. Fiala (SBN 79676)
Email: mfiala@sidley.com
Ryan M. Sandrock (SBN 251781)
Email: rsandrock@sidley.com
Robert B. Martin, III (SBN 235489)
Email: rbmartin@sidley.com
SIDLEY AUSTIN LLP

MDL NO. 1917

DEFENDANTS' JOINT REPLY BRIEF
IN SUPPORT OF MTD THE IP-CAC

1    555 California Street, 20th Floor
     San Francisco, California   94104
2    Telephone:     (415) 772-1200
     Facsimile:     (415) 772-7400

3

4    *Attorneys for Defendants LG Electronics, Inc.,*
     *LG Electronics USA, Inc., and LG Electronics*
5    *Taiwan Taipei Co., Ltd.*

6    By:   /s/ Ethan E. Litwin
     ETHAN E. LITWIN   (*pro hac vice*)
7    Email: LitwinE@howrey.com
     **HOWREY LLP**
8    153 East 53rd Street, 54th Floor
     New York, NY 10022
9    Telephone: (212) 896-6500
     Facsimile: (212) 896-6501
10

11   *Attorneys for Defendant Philips Electronics*
     *North America Corporation, Koninklijke Philips*
12   *Electronics N.V., Philips Electronics Industries*
     *(Taiwan ), Ltd., and Philips da Amazonia*
13   *Industria Electronica Ltda.*

14   By: /s/ Bruce H. Jackson
15   BRUCE H. JACKSON (98118)
     Email: bruce.h.jackson@bakernet.com
16   ROBERT W. TARUN (64881)
     Email: robert.w.tarun@bakernet.com
17   **BAKER & MCKENZIE LLP**
     Two Embarcadero Center, 11th Floor
18   San Francisco, CA   94111-3802
     Telephone:     (415) 576-3000
19   Facsimile:     (415) 576-3099
20

21   PATRICK J. AHERN (*pro hac vice*)
     Email: patrick.j.ahern@bakernet.com
22   ROXANE C. BUSEY (*pro hac vice*)
     Email: roxane.c.busey@bakernet.com
23   KAREN SEWELL *(pro hac vice)*
     Email: karen.sewell@bakernet.com
24   **BAKER & MCKENZIE LLP**
     130 E. Randolph Dr., Suite 3500
25   Chicago, IL 60601
     Telephone:     (312) 861-8000
26

27   *Attorneys for Tatung Company of America, Inc.*

28

MDL NO. 1917                                    DEFENDANTS' JOINT REPLY BRIEF
                                                IN SUPPORT OF MTD THE IP-CAC

By: /s/ Kent M. Roger
KENT M. ROGER (95987)
Email: kroger@morganlewis.com
MICHELLE PARK CHIU (248421)
Email: mchiu@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
One Market, Spear Street Tower
San Francisco, CA 94105-1126
Telephone: (415) 442-1000
Facsimile: (415) 442-1001

*Attorneys for Defendants Hitachi, Ltd., Hitachi Asia, Ltd., Hitachi America, Ltd., Hitachi Electronic Devices (USA), Inc., and Hitachi Displays, Ltd.*

By: /s/ Terry Calvani
TERRY CALVANI (53260)
Email: terry.calvani@freshfields.com
BRUCE C. MCCULLOCH (*pro hac vice*)
Email: bruce.mcculloch@freshfields.com
CHRISTINE A. LACIAK (*pro hac vice*)
Email: christine.laciak@freshfields.com
**FRESHFIELDS BRUCKHAUS DERINGER US LLP**
701 Pennsylvania Avenue, N.W., Suite 600
Washington, DC 20004
Telephone: (202) 777-4500
Facsimile: (202) 777-4555

*Attorneys for Defendant Beijing Matsushita Color CRT Company, Ltd.*

By: /s/ George L. Paul
CHRISTOPHER M. CURRAN (*pro hac vice*)
Email: ccurran@whitecase.com
GEORGE L. PAUL (*pro hac vice*)
Email: gpaul@whitecase.com
LUCIUS B. LAU (*pro hac vice*)
Email: alau@whitecase.com
**WHITE & CASE LLP**
701 Thirteenth Street, N.W.
Washington, DC 20005
Telephone: (202) 626-3600
Facsimile: (202) 639-9355

MDL NO. 1917

DEFENDANTS' JOINT REPLY BRIEF
IN SUPPORT OF MTD THE IP-CAC

34

1

*Attorneys for Defendants Toshiba Corporation,*
*Toshiba America Electronic Components, Inc.,*
*Toshiba America Information Systems, Inc.,*
*Toshiba America, Inc., and Toshiba America*
*Consumer Products, L.L.C.*

2

3

4

By: /s/ Terrance A. Callan

5

TERRANCE A. CALLAN (36305)
Email: terrance.callan@pillsburylaw.com

6

**PILLSBURY**
50 Fremont Street

7

San Francisco, CA 94105-2228
Telephone:   (415) 983-1525

8

Facsimile:    (415) 983-1200

9

10

JOSEPH R. TIFFANY II (67821)
Email: joseph.tiffany@pillsburylaw.com

11

PHILIP A. SIMPKINS (246635)
Email: philip.simpkins@pillsburylaw.com

12

**PILLSBURY**
2475 Hanover Street

13

Palo Alto, CA 94304-1114
Telephone:   (650) 233-4500

14

Facsimile:    (650) 233-4545

15

*Attorneys for Irico Display Devices Co., Ltd. and*

16

*Irico Group Corporation*

17

18

By: /s/ William Diaz

19

WILLIAM DIAZ (232297)
Email: wdiaz@mwe.com

20

**MCDERMOTT WILL & EMERY**
18191 Von Karman Avenue

21

Suite 500
Irvine, CA 92612-7108

22

Telephone:   (949) 851-0633
Facsimile:    (949) 851-9348

23

*Attorneys for Samtel Color, Ltd.*

24

25

    *Pursuant to General Order No. 45, § X-B, the filer attests that concurrence in the filing*

26

*of this document has been obtained from each of the above signatories.*

27

28

MDL NO. 1917

DEFENDANTS' JOINT REPLY BRIEF
IN SUPPORT OF MTD THE IP-CAC