Christopher M. Curran (*pro hac vice*)
ccurran@whitecase.com
George L. Paul (*pro hac vice*)
gpaul@whitecase.com
Lucius B. Lau (*pro hac vice*)
alau@whitecase.com
White & Case LLP
701 Thirteenth Street, N.W.
Washington, DC  20005
Telephone:  (202) 626-3600
Facsimile:  (202) 639-9355

*Counsel to Defendants Toshiba Corporation,*
*Toshiba America, Inc., Toshiba America*
*Information Systems, Inc., Toshiba America*
*Consumer Products, L.L.C., and Toshiba America*
*Electronic Components, Inc.*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
(SAN FRANCISCO DIVISION)

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Case No. 07-5944 SC<br>MDL No. 1917 |
| This Document Relates to:<br><br>DIRECT PURCHASER ACTIONS and INDIRECT PURCHASER ACTIONS | **THE TOSHIBA ENTITIES' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS (1) THE DIRECT PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT AND (2) THE INDIRECT PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT**<br><br>Date:      October 5, 2009<br>Time:     9:00 a.m.<br>Before:  Hon. Charles A. Legge, U.S. District Judge (Ret.), Special Master |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

REPLY MEMORANDUM ..........................................................................................1

I.   Because The Allegations Against The Toshiba Entities Differ Materially
     From The Allegations Against The Other Defendants, It Is Not Plausible
     That Any Of The Toshiba Entities Participated In An Antitrust Conspiracy...............2

II.  Because The Plaintiffs Fail To Allege Sufficient Facts Suggesting That
     Any Of The Toshiba Entities Were Involved In An Antitrust Conspiracy,
     It Is Not Plausible That Any Of The Toshiba Entities Participated In An
     Antitrust Conspiracy .....................................................................................7

     A.   The Plaintiffs Improperly Focus On The Toshiba "Corporate
          Family" Rather Than The Acts Of Each Separate Corporate Entity ................7

     B.   The Plaintiffs Do Not Include Sufficient Allegations Of Alter-Ego
          Liability Or An Agency Relationship.............................................................11

     C.   The Plaintiffs Fail To Make Sufficient Allegations That Any Of
          The Toshiba Entities Participated In An Alleged Conspiracy........................12

III. Even If The *Twombly* Pleading Standard Were Met, The Plaintiffs Allege
     That Toshiba Corp. Exited The CRT Market In 2002, Which Constitutes
     Withdrawal As A Matter Of Law ...............................................................13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

# TABLE OF AUTHORITIES

**Cases**                                                                                      **Page**

*Aktieselskabet AF 21. Nov. 2001 v. Fame Jeans Inc.*,
    525 F.3d 8 (D.C. Cir. 2008) .............................................................................1

*Am. Nat'l Red Cross v. United Way Cal. Capital Region*,
    No. S-07-1236 WBS DAD, 2007 WL 4522967 (E.D. Cal. Dec. 19, 2007) ...............11

*Ashcroft v. Iqbal*,
    129 S.Ct. 1937 (2009).....................................................................................1

*Bay Plastics, Inc. v. BT Commercial Corp. (In re Bay Plastics, Inc.)*,
    187 B.R. 315 (Bankr. C.D. Cal. 1995) .......................................................15

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007).................................................................................*passim*

*Beltz Travel Serv., Inc. v. Int'l Air Transport Ass'n*,
    620 F.2d 1360 (9th Cir. 1980) ...................................................................10

*Broam v. Bogan*,
    320 F.3d 1023 (9th Cir. 2003) ...................................................................14

*Continental Ore Co. v. Union Carbide & Carbon Corp.*,
    370 U.S. 690 (1962).....................................................................................9

*Copperweld Corp. v. Independence Tube Corp.*,
    467 U.S. 752 (1984).....................................................................................5

*Dion LLC v. Infotek Wireless, Inc.*,
    No. C 07-1431 SBA, 2007 WL 3231738 (N.D. Cal. Oct. 30, 2007).........................12

*In re Elevator Antitrust Litig.*,
    502 F.3d 47 (2d Cir. 2007) ...............................................................7, 8, 9

*In re Fine Paper Antitrust Litig.*,
    685 F.2d 810 (3d Cir. 1982) ...............................................................9, 10

*In re Flash Memory Antitrust Litig.*,
    No. C. 07-0086 SBA, 2009 WL 1096602 (N.D. Cal. Mar. 31, 2009).........................10

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

*In re NASDAQ Market-Makers Antitrust Litig.*,
    894 F. Supp. 703 (S.D.N.Y. 1995) ...........................................................................10

*In re OSB Antitrust Litig.*,
    No. 06-826, 2007 WL 2253419 (E.D. Pa. Aug. 3, 2007) .............................................9

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
    580 F. Supp. 2d 896 (N.D. Cal. 2008) ......................................................................10

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    586 F. Supp. 2d 1109 (N.D. Cal. 2008) ....................................................................10

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    599 F. Supp. 2d 1179 (N.D. Cal. 2009) ....................................................................10

*In re Vitamins Antitrust Litig.*,
    No. Misc 99-197 (TFH), 2000 WL 1475705 (D.D.C. May 9, 2000) ............................8

*Jung v. Ass'n of Am. Med. Colls.*,
    300 F. Supp. 2d 119 (D.D.C. 2004) ...........................................................................8

*Kendall v. Visa U.S.A., Inc.*,
    518 F.3d 1042 (9th Cir. 2008) .......................................................................1, 2, 8, 12

*Moss v. U.S. Secret Serv.*,
    572 F.3d 962 (9th Cir. 2009) ...........................................................................1, 10, 12

*Mountain View Pharmacy v. Abbott Labs.*,
    630 F.2d 1383 (10th Cir. 1980) ...............................................................................8, 9

*Pacific Bell Telephone Co. v. Linkline Communications, Inc.*,
    129 S.Ct. 1109 (2009)..................................................................................................1

*Reisman v. United States*,
    409 F.2d 789 (9th Cir. 1969) ....................................................................................14

*Safeway Stores, Inc. v. FTC*,
    366 F.2d 795 (9th Cir. 1966) ..................................................................................3, 9

*Texaco Inc. v. Dagher*,
    547 U.S. 1 (2006)........................................................................................................5

*United States v. Dunn*,
    564 F.2d 348 (9th Cir. 1977) ......................................................................................3

*United States v. Lothian*,
   976 F.2d 1257 (9th Cir. 1992) ..............................................................................13, 14

*United States v. Penn-Olin Chem. Co.*,
   378 U.S. 158 (1964)......................................................................................................4

*Weinstein v. Saturn Corp.*,
   303 Fed. Appx. 424 (9th Cir. 2008) .........................................................................12

**<u>Other</u>**

Fed. Trade Comm'n & U.S. Dep't of Justice, *Antitrust Guidelines for Collaborations Among Competitors* 6 (April 2000),
http://www.ftc.gov/os/2000/04/ftcdojguidelines.pdf .........................................5

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

**REPLY MEMORANDUM**

2       The Direct Purchaser Plaintiffs and Indirect Purchaser Plaintiffs fail to recognize that

3   *Twombly* has imposed a "new pleading standard" (Toshiba Br. at 8 (quoting *Pacific Bell*

4   *Telephone Co. v. Linkline Communications, Inc.*, 129 S.Ct. 1109, 1123 (2009)), one that

5   requires far more than conclusory allegations in order to survive a motion to dismiss.

6       The parameters of this new pleading standard were outlined by *Ashcroft v. Iqbal*, 129

7   S.Ct. 1937 (2009).  As stated by *Iqbal*, a "claim has facial plausibility when the plaintiff

8   pleads factual content that allows the court to draw the reasonable inference that the

9   defendant is liable for the misconduct alleged." *Id.* at 1949.  This plausibility standard

10  "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*  "Where

11  a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops

12  short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting

13  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).  *Iqbal* also explained that a

14  plausible complaint is based upon factual allegations, not "labels and conclusions" and not

15  "a formulaic recitation of the elements of a cause of action . . . ." *Id.* (quoting *Twombly*,

16  550 U.S. at 555).  *Iqbal* plainly holds that "the tenet that a court must accept as true all of

17  the allegations contained in a complaint is inapplicable to legal conclusions." *Id.*

18      The Ninth Circuit recently recognized that "[m]uch confusion accompanied the lower

19  courts' initial engagement with *Twombly*." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 968

20  (9th Cir. 2009).  The *Moss* court noted that some cases, like *Kendall v. Visa U.S.A., Inc.*,

21  518 F.3d 1042 (9th Cir. 2008), stated that *Twombly* abrogated the usual "notice pleading"

22  rule, at least for antitrust cases.  The *Moss* court also recognized that other cases, like

23  *Aktieselskabet AF 21. Nov. 2001 v. Fame Jeans Inc.*, 525 F.3d 8 (D.C. Cir. 2008), held that

24  *Twombly* left the "notice pleading" rule intact.  This confusion among the courts was

25  resolved by *Iqbal*.  With the benefit of *Iqbal*, the Ninth Circuit now views

26  *Twombly* as "a significant change, with broad-reaching implications." *Moss*, 572 F.3d at

27  972.

28

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

As explained in the Toshiba entities' motion to dismiss, the DP-CAC and IP-CAC should be dismissed with respect to each and every one of the Toshiba entities because the Direct Purchaser Plaintiffs and Indirect Purchaser Plaintiffs fail to allege sufficient evidentiary facts to plausibly suggest that any of those entities were involved in an antitrust conspiracy.  In their response briefs, the Plaintiffs do not respond to these arguments applying the principles articulated in *Twombly* and *Iqbal*.  Rather, they base their arguments on a host of other cases that either pre-date *Twombly* or misconstrue *Twombly*.

When the DP-CAC and IP-CAC are properly assessed using the "new pleading standard" of *Twombly*, it is apparent that both complaints must be dismissed as to the Toshiba entities.

**I.      Because The Allegations Against The Toshiba Entities Differ Materially From The Allegations Against The Other Defendants, It Is Not Plausible That Any Of The Toshiba Entities Participated In An Antitrust Conspiracy**

In their motion to dismiss, the Toshiba entities demonstrated that the complaints' allegations against the Toshiba entities differ materially from the allegations against the other Defendants.  Toshiba Br. at 1-8.  These differences between the Toshiba entities and the other Defendants make the Plaintiffs' claims against the Toshiba entities implausible.

According to the Direct Purchaser Plaintiffs, allegations made with respect to other Defendants provide support for the existence of a conspiracy, but their absence as to the Toshiba entities does not provide grounds for dismissal because, "once a conspiracy has been sufficiently alleged, the primary purpose of further alleging each Defendant's involvement is simply to 'put defendants on notice of the claims against them.'"  DP Br. at 75.  Notice pleading for antitrust cases, however, did not survive *Twombly*.  As stated by the Ninth Circuit in *Kendall*, "[a]t least for the purposes of adequate pleading in antitrust cases, the Court [in *Twombly*] specifically abrogated the usual 'notice pleading' rule . . . ."  *Kendall*, 518 F.3d at 1047 n.5.  As explained by *Twombly* itself, it is not enough for a plaintiff to merely provide notice of his claim;  rather, a plaintiff must also provide the grounds upon which that claim rests.  *See Twombly*, 550 U.S. at 556 n.3 ("Without some

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1  factual allegation in the complaint, it is hard to see how a claimant could satisfy the

2  requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds'

3  on which the claim rests.") (citation omitted).

4      The Indirect Purchaser Plaintiffs make a similar and equally incorrect statement when

5  they try to defend their decision not to make defendant-specific allegations.  According to

6  the Indirect Purchaser Plaintiffs, "'[o]nce a conspiracy is shown, only slight evidence is

7  needed to connect any defendant with the conspiracy.'"  IP Br. at 28 (purporting to quote

8  *Safeway Stores, Inc. v. FTC*, 366 F.2d 795, 801 (9th Cir. 1966)).  As an initial matter, the

9  Indirect Purchaser Plaintiffs misquote the actual text from *Safeway*, which reads as follows:

10  "Once the existence of the common scheme is established, very little is required to show

11  that defendant became a party – 'slight evidence may be sufficient to connect a defendant to

12  it.'"  *Safeway*, 366 F.2d at 801 (citation omitted).  More importantly, this passage in

13  *Safeway* was restated and corrected by the Ninth Circuit in 1977.  *See United States v.

14  Dunn*, 564 F.2d 348, 357 (9th Cir. 1977) ("Accordingly, we think it appropriate here to

15  restate the slight evidence rule correctly and as we are reasonably certain that our

16  predecessors intended it:  Once the existence of a conspiracy is established, evidence

17  establishing beyond a reasonable doubt a connection of a defendant with the conspiracy,

18  even though the connection is slight, is sufficient to convict him with knowing participation

19  in the conspiracy.").  The Indirect Purchaser Plaintiffs are thus incorrect in suggesting that

20  "slight evidence" is sufficient to connect a defendant to a conspiracy.  In any event, the

21  issues discussed in *Safeway* and restated in *Dunn* involve the standard of proof and the

22  substantive law of conspiracy, not the pleading standard and what allegations a complaint

23  must have in order to survive a motion to dismiss.  *Twombly* and *Iqbal* control as to that

24  issue, and the complaints here fail to adequately allege that the Toshiba entities were

25  connected to the conspiracy.

26      Contrary to the Direct Purchaser Plaintiffs, the Toshiba entities do not argue that "the

27  absence of an allegation of criminal enforcement agencies having initiated (or succeeded) in

28  bringing a criminal matter against Toshiba" equates to a "badge of innocence."  DP Br. at

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

76. Rather, the Toshiba entities' position is the existence of criminal proceedings against other defendants does not plausibly suggest that the Toshiba entities were involved in an antitrust conspiracy.

As to the fact that the complaints allege that some Defendants (but not the Toshiba entities) are oligopolists, neither the Direct Purchaser Plaintiffs nor the Indirect Purchaser Plaintiffs have any persuasive answer to the Toshiba entities' argument that a firm with a small share of the relevant market has more of an incentive to compete with the oligopoly than to coordinate with it.  Toshiba Br. at 5-6 (citing *United States v. Penn-Olin Chem. Co.*, 378 U.S. 158, 174 (1964)).  The Direct Purchaser Plaintiffs argue that small participants often play a "critical role" in ensuring the success of a conspiracy (DP Br. at 78), but they provide no support for this bare assertion.  The complaints do not allege that the Toshiba entities have any oligopolistic interdependence with the other Defendants or independent market power.  Thus, it is immaterial that the Toshiba entities allegedly shared 15 percent of the marketplace along with the other "Japanese Defendants."  DP Br. at 77-78.  What is material is that the "concentration of market share facilitated Defendants' ability to implement the conspiracy."  DP-CAC ¶ 114.  The fact that market share was concentrated with the other Defendants is yet another reason why it is not plausible that the Toshiba entities were involved in the conspiracy described by the Plaintiffs.

Concerning allegations of price increases and production cuts by other Defendants, the Direct Purchaser Plaintiffs seem to discount the significance of these allegations by stating that they primarily supplement their "core allegations" of meetings and the indictment of C.Y. Lin.  DP Br. at 78.  The Direct Purchaser Plaintiffs also make reference to "an equal number of pricing and production allegations applicable to all Defendants, including Toshiba."  DP Br. at 78 (citing DP-CAC ¶¶ 188-97).  Reliance upon industry-wide data on pricing and production movements, however, does not plausibly suggest the existence of a conspiracy for any Defendant.  Such industry-wide characteristics are akin to the parallel conduct considered and rejected by the Supreme Court in *Twombly*:  "The inadequacy of showing parallel conduct or interdependence, without more, mirrors the

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

1   ambiguity of the behavior:  consistent with conspiracy, but just as much in line with a wide
2   swath of rational and competitive business strategy unilaterally prompted by common
3   perceptions of the market."  550 U.S. at 554.  Indeed, given the modest market share of the
4   Toshiba entities, allegations as to industry-wide data do not provide any meaningful
5   information as to the behavior of the Toshiba entities in particular.

6          The Indirect Purchaser Plaintiffs have their own unique argument concerning capacity
7   reduction.  They assert that the creation of MT Picture Display Co., Ltd. ("MTPD") in 2002
8   as a joint venture between Toshiba Corporation and Matsushita Electric Industrial Co., Ltd.
9   means that the Toshiba entities were involved with capacity reductions.  IP Br. at 62.  The
10  Indirect Purchaser Plaintiffs, however, do not allege in their complaint that the creation of
11  this joint venture reduced capacity.  As a result, their *post hoc* assertions on this issue
12  should be given no weight.  In any event, the U.S. Department of Justice and Federal Trade
13  Commission both recognize that the creation of a joint venture may actually increase
14  capacity.  *See* Fed. Trade Comm'n & U.S. Dep't of Justice, *Antitrust Guidelines for*
15  *Collaborations Among Competitors* 6 (April 2000), http://www.ftc.gov/os/2000/04/
16  ftcdojguidelines.pdf ("A collaboration may allow its participants to better use existing
17  assets, or may provide incentives for them to make output-enhancing investments that
18  would not occur absent the collaboration.").  Thus, the mere fact that Toshiba Corporation
19  entered a joint venture does not mean that capacity was somehow reduced.

20         Furthermore, even if capacity were reduced, the formation of a joint venture cannot
21  support a *per se* violation of Section 1 of the Sherman Act.  *See Copperweld Corp. v.*
22  *Independence Tube Corp.*, 467 U.S. 752, 768 (1984) (noting that "joint ventures .  .  . hold
23  the promise of increasing a firm's efficiency and enabling it to compete more effectively");
24  *see also Texaco Inc. v. Dagher*, 547 U.S. 1, 8 (2006) ("the pricing decisions of a legitimate
25  joint venture do not fall within the narrow category of activity that is *per se* unlawful under
26  § 1 of the Sherman Act").  It is apparent that the Plaintiffs are merely grasping at straws in a
27  desperate attempt to save their complaints.

28

701 Thirteenth Street, NW

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The Direct Purchaser Plaintiffs do not dispute that their complaint does not contain allegations that the Toshiba entities participated in trade associations or trade events.  DP Br. at 79.  Rather, their arguments appear to be based on the possibility that companies such as the Toshiba entities could participate in these events if they wanted to, and that "a Defendant could participate in a conspiracy to fix prices even if it did not attend trade association meetings."  *Id.*  This argument is mere speculation and, in any event, misses the point.  As with many allegations in the complaint, the Plaintiffs are able to make company-specific allegations with respect to other Defendants, but are unable to do so for the Toshiba entities.  In *Iqbal*, the Supreme Court noted that determining whether a complaint states a plausible claim for relief will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  129 S.Ct. at 1950.  Common sense should dictate that the likely reason why a plaintiff can allege many facts with respect to most defendants, but very few facts with respect to other defendants, is that these other defendants simply were not involved in the events surrounding the plaintiff's claims.  The Direct Purchaser Plaintiffs may well be correct that trade associations and trade events were used to facilitate a conspiracy.  But the fact that the Toshiba entities are not alleged to be a part of these associations or events provides additional support for the conclusion that the Toshiba entities are not plausibly part of the alleged conspiracy.

The Indirect Purchaser Plaintiffs take issue with a statement made in the Toshiba Motion to Dismiss that the Department of Justice's only contact with any Toshiba entity has been to ask for assistance as a potential victim.  IP Br. at 62.  According to the Indirect Purchaser Plaintiffs, this statement conflicts with paragraph 212 of the IP-CAC, which quotes a Toshiba 2008 Annual Report.  There is, however, no conflict.  In relevant part, the quoted material from paragraph 212 of the IP-CAC states that the Toshiba group "is also being investigated by the [European] Commission ***and/or*** the U.S. Department of Justice for potential violations of competition laws with respect to . . . cathode ray tubes . . . ."  IP-CAC ¶ 212 (emphasis added) (internal quotation marks omitted).  Read properly, this sentence only reveals that the Toshiba group has produced information to the European Commission

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

with respect to cathode ray tubes.  As explained by the Toshiba entities on page 3 of their motion to dismiss, the relevancy of activity undertaken by other competition authorities is far from clear.  *E.g.*, *In re Elevator Antitrust Litig.*, 502 F.3d 47, 52 (2d Cir. 2007).

**II.     Because The Plaintiffs Fail To Allege Sufficient Facts Suggesting That Any Of The Toshiba Entities Were Involved In An Antitrust Conspiracy, It Is Not Plausible That Any Of The Toshiba Entities Participated In An Antitrust Conspiracy**

Besides the fundamental differences between the allegations against the other Defendants and those against the Toshiba entities, the DP-CAC and IP-CAC lack plausibility because the Plaintiffs have failed to allege sufficient facts suggesting that any of the Toshiba entities were involved in an antitrust conspiracy.  The Direct Purchaser Plaintiffs and the Indirect Purchaser Plaintiffs cannot overcome this shortcoming, despite the arguments they present in their opposition briefs.

**A.     The Plaintiffs Improperly Focus On The Toshiba "Corporate Family" Rather Than The Acts Of Each Separate Corporate Entity**

Both the Direct Purchaser Plaintiffs and Indirect Purchaser Plaintiffs contend that they need not make allegations on a defendant-by-defendant basis (DP Br. at 39-41; IP Br. at 27-32), but the arguments they make cannot be squared with *Twombly*.  In *Twombly*, the issue was whether the plaintiffs properly alleged a Section 1 violation with respect to regional service monopolies known as Incumbent Local Exchange Carriers ("ILECs").  The Court noted that, "[a]part from identifying a seven-year span in which the § 1 violations were supposed to have occurred . . . the pleadings mentioned no specific time, place, or person involved in the alleged conspiracies."  *Twombly*, 550 U.S. at 565 n.10. Viewing these sparse allegations as a "lack of notice," the Court further noted that "the complaint here furnishes no clue as to which of the four ILECs (much less which of their employees) supposedly agreed, or when and where the illicit agreement took place." *Id.*  A party seeking to respond to such allegations would have "little idea where to begin." *Id.*

Just like the complaint directed at the four ILECs in *Twombly*, the complaints here provide no notice to the five named Toshiba entities as to (1) which entity (much less

which of their employees) entered an agreement; (2) when that agreement took place; and (3) where that agreement took place. Citing to the above-referenced language in *Twombly*, the *Kendall* court stated that "[a] bare allegation of a conspiracy is almost impossible to defend against, particularly where the defendants are large institutions with hundreds of employees entering into contracts and agreements daily." 518 F.3d at 1047. Although this passage was displayed prominently in the Toshiba entities' motion to dismiss (Toshiba Br. at 9), the Direct Purchaser Plaintiffs and Indirect Purchaser Plaintiffs have no response.

Both the Direct Purchaser Plaintiffs and Indirect Purchaser Plaintiffs misconstrue *Jung v. Ass'n of Am. Med. Colls.*, 300 F. Supp. 2d 119 (D.D.C. 2004), a case relied upon by the Toshiba entities for the proposition that a plaintiff may not plead using a "corporate family" approach. Toshiba Br. at 11. Although it is true that, in describing *In re Vitamins Antitrust Litig.*, No. Misc 99-197 (TFH), 2000 WL 1475705 (D.D.C. May 9, 2000), the *Jung* court stated that "a plaintiff need not allege overt acts committed by each defendant in furtherance of a conspiracy," the *Jung* court went on to state that the *Vitamins* court "did *not* hold that plaintiffs need not plead that an individual defendant was a participant in the conspiracy in the first instance." 300 F. Supp. 2d at 164 n.27 (emphasis added). Thus, when read in its entirety, *Jung* provides no support for the Plaintiffs' "corporate family" approach. The Plaintiffs must plead that *each* Defendant was a participant in the conspiracy in the first instance. *See id.* at 164 ("plaintiffs are not relieved from alleging that each individual defendant joined the conspiracy and played some role in it"). The Plaintiffs have not done so with respect to the Toshiba entities.

The Direct Purchaser Plaintiffs fail to distinguish *Mountain View Pharmacy v. Abbott Labs.*, 630 F.2d 1383 (10th Cir. 1980) (Toshiba Br. at 10), and *In re Elevator Antitrust Litig.*, 502 F.3d 47 (2d Cir. 2007) (Toshiba Br. at 10-11), on the grounds that these cases involved allegations of parallel conduct. DP Br. at 43-44. As with the allegations against the Toshiba entities here, the complaint in *Mountain View* contained a "blanket statement" that a group of defendants conspired to fix prices, without differentiating among the defendants. 630 F.2d at 1388. Noting that such a "blanket statement" did not provide the

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

defendants with adequate notice, the *Mountain View* court then noted that "[t]o provide adequate notice, a complaint in a complex, multi-party suit may require more information than a simple, single party case." *Id*. at 1386-88. Thus, when the *Mountain View* court dismissed the price-fixing count, it did so due to lack of adequate notice to the defendants. A review of *In re Elevator* compels the same conclusion. After stating that a list of conspiratorial activities in the complaint "is in entirely general terms without any specification of any particular activities by any particular defendant," the *In re Elevator* court quoted that portion of *Twombly* that stated that "conclusory allegation[s] of agreement at some unidentified point do[ ] not supply facts adequate to show illegality." 502 F.3d at 50-51 (quoting *Twombly*, 550 U.S. at 557). As with the court in *Mountain View*, the *In re Elevator* court was concerned with adequate pleading.

The Indirect Purchaser Plaintiffs have identified cases that, in their view, state that a plaintiff need not make defendant-specific allegations in order to survive a motion to dismiss, but all of these cases are distinguishable. *In re Fine Paper Antitrust Litig.*, 685 F.2d 810 (3d Cir. 1982), did not hold that "antitrust conspiracy allegations *need not* be detailed 'defendant by defendant.'" IP Br. at 28. Rather, the issue in that case was whether the district court properly granted a motion for directed verdict. *See* 685 F.2d at 822 ("the court refused to submit to the jury evidence which at best was probative of an alleged conspiracy unrelated to the conspiracy whose existence was in issue"). The Indirect Purchaser Plaintiffs' reliance on *In re OSB Antitrust Litig.*, No. 06-826, 2007 WL 2253419 (E.D. Pa. Aug. 3, 2007), is inapposite for the same reason — that court also incorrectly cited *In re Fine Paper* for the proposition that antitrust allegations need not be detailed defendant-by-defendant. 2007 WL 2253419, at *5. Other cases relied upon by the Indirect Purchaser Plaintiffs do not involve pleading standards but rather other issues such as the substantive law of conspiracy. *See Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 699 (1962) (IP Br. at 28) (after reciting the "character and effect" language used by the Indirect Purchaser Plaintiffs, stating that "the duty of the jury was to look at the whole picture and not merely at the individual figures in it"); *Safeway*,

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

1    366 F.2d 795 (IP Br. at 28) (review of a cease-and-desist order issued by the Federal Trade

2    Commission); *Beltz Travel Serv., Inc. v. Int'l Air Transport Ass'n*, 620 F.2d 1360 (9th Cir.

3    1980) (IP Br. at 29) (review of order granting motion for summary judgment).

4         According to the Direct Purchaser Plaintiffs, their position is supported primarily by

5    *In re Flash Memory Antitrust Litig.*, No. C 07-0086 SBA, 2009 WL 1096602 (N.D. Cal.

6    Mar. 31, 2009), and *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 599 F. Supp. 2d 1179

7    (N.D. Cal. 2009) ("*TFT-LCD II*").  DP Br. at 41-43.  Neither of these cases, however, can

8    be reconciled with *Twombly* and its progeny.

9         In reaching its conclusion that allegations of antitrust conspiracy need not be detailed

10   on a defendant-by-defendant basis, the *Flash Memory* court cited to *In re Static Random*

11   *Access Memory (SRAM) Antitrust Litig.*, 580 F. Supp. 2d 896 (N.D. Cal. 2008).  But even

12   *SRAM* held that plaintiffs "need to make allegations that plausibly suggest that *each*

13   Defendant participated in the alleged conspiracy."  580 F. Supp. 2d at 904 (emphasis

14   added).  The *Flash Memory* court also cited to *In re Fine Paper*, but because that decision

15   involved a motion for directed verdict, it provides no support for the *Flash Memory*

16   holding.   Finally,  the  *Flash Memory*  court  relied  upon  *In  re  NASDAQ*

17   *Market-Makers Antitrust Litig.*, 894 F. Supp. 703 (S.D.N.Y. 1995).  That case, however,

18   pre-dates *Twombly*.  As such, it also provides no support for the *Flash Memory* holding.

19        The holding in *TFT-LCD II* conflicts with that court's earlier holding in *In re TFT-*

20   *LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1117 (N.D. Cal. 2008), where the

21   court held that "general allegations as to all defendants, to 'Japanese defendants,' or to a

22   single corporate entity such as 'Hitachi' is insufficient to put specific defendants on notice

23   of the claims against them."  As recognized by *Moss*, such confusion was commonplace

24   after *Twombly*, as courts struggled to understand the meaning of that decision.  572 F.3d at

25   968-69.  Now that *Iqbal* has been issued, it should be apparent that allegations directed at

26   an entire group of affiliated defendants do not set forth a plausible claim for relief as to

27   specific defendants.

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

Finally, the Direct Purchaser Plaintiffs argue that they do not need to allege overt acts committed by each defendant in furtherance of the conspiracy.  DP Br. at 39, 40.  This argument misses the point.  There is a difference between an allegation that an entity entered into an agreement and an allegation that an entity committed an overt act in furtherance of an agreement.  To be sure, there are only vague allegations in the complaints that the Toshiba entities committed overt acts in furtherance of the conspiracy.  The critical point, however, is that there are insufficient allegations that any of the Toshiba entities entered into an illegal agreement in the first instance.

**B.     The Plaintiffs Do Not Include Sufficient Allegations Of Alter-Ego Liability Or An Agency Relationship**

Given the fact that both the DP-CAC and IP-CAC recited the legal elements of alter-ego liability (*i.e.*, that Toshiba Corporation "dominated and controlled" each of its subsidiaries), the Toshiba entities established in their motion to dismiss that the plaintiffs have not made a *prima facie* case for such liability.  Toshiba Br. at 11-12.  Plaintiffs either do not address these arguments (DP Br. at 81 n.50) or specifically disavow any reliance upon alter-ego liability (IP Br. at 46).  In either event, the Court should treat this argument as conceded and conclude that the complaints do not contain sufficient allegations of alter-ego liability with respect to the Toshiba entities.

In their motion to dismiss, the Toshiba entities also demonstrated that the complaints do not contain sufficient allegations of an agency relationship between Toshiba Corporation and its subsidiaries.  Toshiba Br. at 15-16.  Among the authorities cited by the Toshiba entities was *Am. Nat'l Red Cross v. United Way Cal. Capital Region*, No. S-07-1236 WBS DAD, 2007 WL 4522967 (E.D. Cal. Dec. 19, 2007), a case that relied upon *Twombly* and held that a complaint alleging an agency relationship was deficient because it did not "allege one fact that suggests such an agency relationship."  2007 WL 4522967, at *10.  The Plaintiffs do not distinguish or even address *Red Cross*.

In support of their position that they have properly alleged the existence of an agency relationship, the Direct Purchaser Plaintiffs cite to three paragraphs of their complaint.

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1    The first paragraph, DP-CAC ¶ 154, is a generic paragraph applicable to all defendants.

2    This allegation fails because it simply concludes that an agency relationship exists without

3    providing any supporting facts.  The second and third paragraphs relied upon by the Direct

4    Purchaser Plaintiffs, DP-CAC ¶¶ 171-72, fare no better.  Paragraph 171 merely states that

5    "Toshiba, through TC and TDDT, participated in over 50 illegal bilateral and group

6    meetings . . . ."  DP-CAC ¶ 171.  Paragraph 172 states that "Toshiba America, TAIP,

7    TACP, TACPI, and TAEP were represented at those meetings . . . ."  DP-CAC ¶ 172.

8    These allegations are defective because they are conclusory in nature.  Again, an allegation

9    without supporting facts does not pass scrutiny under *Twombly*.

10    While not directly addressing the cases relied upon by the Toshiba entities, both the

11    Direct Purchaser Plaintiffs and Indirect Purchaser Plaintiffs cite to other cases in support of

12    their position that a plaintiff need not plead facts in support of an agency allegation.  None

13    of these cases support the Plaintiffs' position.  The conclusion in *Weinstein v. Saturn*

14    *Corp.*, 303 Fed. Appx. 424 (9th Cir. 2008) (DP Br. at 87), that an allegation of "substantial

15    control" was sufficient to state a claim of agency is hardly dispositive given that *Weinstein*

16    was issued after *Twombly*, but before *Iqbal*.  As explained by the *Moss* court, there was

17    initially "much confusion" as to the proper meaning of *Twombly*, but that confusion was

18    resolved with the issuance of *Iqbal*.  572 F.3d at 968-69.  Now, a court will only presume

19    the veracity of "well-pleaded factual allegations."  *Iqbal*, 129 S.Ct. at 1950.  The

20    conclusion in *Dion LLC v. Infotek Wireless, Inc.*, No. C 07-1431 SBA, 2007 WL 3231738

21    (N.D. Cal. Oct. 30, 2007) (IP Br. at 45), that a plaintiff pleading agency need only put the

22    defendant "on notice," 2007 WL 3231738, at *4, of that claim is also outdated.  As

23    explained by *Kendall*, the *Twombly* court "specifically abrogated the usual 'notice

24    pleading' rule," at least for antitrust cases.  *Kendall*, 518 F.3d at 1047 n.5.

25
26    **C.**    **The Plaintiffs Fail To Make Sufficient Allegations That Any Of The Toshiba Entities Participated In An Alleged Conspiracy**

27    The Toshiba entities' motion to dismiss demonstrated that the Plaintiffs failed to

28    make sufficient allegations that any of the Toshiba entities participated in the alleged

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

conspiracy — the complaints contained either formulaic and conclusory allegations about agreements (*see* IP-CAC ¶ 177) or did not even allege that any Toshiba entity actually entered into an illegal agreement (*see* DP-CAC ¶ 171).

In attempting to defend their allegations, the Direct Purchaser Plaintiffs reference the complaint at issue in *TFT-LCD II*, and argue that, because "the DP-CAC contains virtually identical allegations in connection with the (predecessor) conspiracy for TFT-LCD products, it necessarily follows that the DP-CAC is sufficient as to the Toshiba entities." DP Br. at 81. Repeating the allegations made in another complaint, however, does not mean that a claim is plausible. Such repetition is akin to the use of a label or formulaic recitation of a cause of action; *Twombly* made clear that the use of such labels and formulas is insufficient. 550 U.S. at 555. The hallmark of a plausible claim rests upon the actual factual allegations made against a defendant. Such well-pleaded factual allegations are noticeably absent with respect to the Toshiba entities.

In attempting to defend their own allegations, the Indirect Purchaser Plaintiffs note that their "core allegations" against the Toshiba entities involve their "direct participation in Glass Meetings and bilateral meetings at which they conspired with their competitors to fix the prices of CRT Products."   IP Br. at 61 (emphasis removed).   This argument, however, is as conclusory and general as the allegations made by the Indirect Purchaser Plaintiffs in their complaint. This argument also fails to respond to the points raised by the Toshiba entities at pages 13 through 15 of their motion to dismiss as to why the Indirect Purchaser Plaintiffs' allegations do not survive scrutiny under *Twombly*.

**III.    Even If The *Twombly* Pleading Standard Were Met, The Plaintiffs Allege That Toshiba Corp. Exited The CRT Market In 2002, Which Constitutes Withdrawal As A Matter Of Law**

Neither the Direct Purchaser Plaintiffs nor the Indirect Purchaser Plaintiffs dispute the fact that the test for withdrawal in the Ninth Circuit is set forth in *United States v. Lothian*, 976 F.2d 1257 (9th Cir. 1992) (Toshiba Br. at 19), and the Direct Purchaser Plaintiffs go so far as to affirmatively rely upon that case. DP Br. at 50. *Lothian* identifies three separate

ways in which a defendant can withdraw from a conspiracy.  As relevant to this case, withdrawal can be accomplished by a defendant taking "'definite, decisive, and positive' steps to show that the [defendant's] disassociation from the conspiracy is sufficient."  976 F.2d at 1261.  Here, both sets of plaintiffs allege that Toshiba Corporation exited the CRT market in 2002.  DP-CAC ¶ 46; IP-CAC ¶ 72.  Applying *Lothian*, these allegations constitute withdrawal as a matter of law.

In response to this argument, the Direct Purchaser Plaintiffs supplement their complaint with new allegations.  Specifically, they state that the Toshiba entities continued to receive "benefits" from the conspiracy through "participation" and "payment" from Matsushita Toshiba Picture Display Co., Ltd. ("MTPD").  DP Br. at 82.  Including a new allegation in a brief, however, is improper.  *See Broam v. Bogan*, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003) (discussing the significance of new facts contained in a plaintiff's brief: "In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.") (emphasis in original) (citation and internal quotation marks omitted).  Thus, the Court should disregard these new allegations.

The Indirect Purchaser Plaintiffs respond to the Toshiba entities' withdrawal argument by mischaracterizing *Lothian*.  The *Lothian* court did not "emphasize[ ] that a defendant's continuing financial interest in an illegal venture precludes a finding that it withdrew from the conspiracy."  IP Br. at 90.  Rather, that court merely noted that the defendant had established withdrawal in circumstances where he resigned from a company and received "no financial benefit" upon his resignation.  976 F.2d at 1264.  In reaching this conclusion, the *Lothian* court did not hold that a continuing financial interest precludes a finding of withdrawal.  Instead, it noted that the defendant's lack of ownership interest was a far cry from the defendant in *Reisman v. United States*, 409 F.2d 789 (9th Cir. 1969), who had not established withdrawal because he remained a "major stockholder" even after he resigned as a president and director of a company.  *Id.*  The facts alleged here are in line with the facts of *Lothian*, not *Reisman*.  The Plaintiffs allege that Toshiba Corporation was

a *minority* shareholder in MTPD, not a major stockholder.   *See* DP-CAC ¶ 46. Furthermore, the Plaintiffs do not allege that Toshiba Corporation (or any other Toshiba entity) received any financial benefit from MTPD.  The mere fact that Toshiba Corporation was a shareholder does not mean that it enjoyed financial benefits from MTPD.  *See Bay Plastics, Inc. v. BT Commercial Corp. (In re Bay Plastics, Inc.)*, 187 B.R. 315, 335 (Bankr. C.D. Cal. 1995) ("the shareholders enjoy the benefits if the gamble is successful, and they should bear the burdens if it is not.  This, after all, is the role of equity owners of a corporation.").  Accordingly, based upon the allegations of the complaints, the Toshiba entities withdrew from any conspiracy as a matter of law.

## CONCLUSION

For these reasons and the reasons contained in the Toshiba Entities' Motion to Dismiss, the Court should dismiss the DP-CAC and IP-CAC with respect to Toshiba Corp., TAI, TAIS, TACP, and TAEC.

Respectfully submitted,

Dated:  September 24, 2009          **WHITE & CASE** LLP

By:  _/s/ George L. Paul_____
Christopher M. Curran (*pro hac vice*)
ccurran@whitecase.com
George L. Paul (*pro hac vice*)
gpaul@whitecase.com
Lucius B. Lau (*pro hac vice*)
alau@whitecase.com
701 Thirteenth Street, N.W.
Washington, DC  20005
tel.: (202) 626-3600
fax: (202) 639-9355

*Counsel to Defendants Toshiba
Corporation, Toshiba America, Inc.,
Toshiba America Information Systems,
Inc., Toshiba America Consumer
Products, L.L.C., and Toshiba America
Electronic Components, Inc.*

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

1

## **CERTIFICATE OF SERVICE**

On September 24, 2009, I caused a copy of the "THE TOSHIBA ENTITIES' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS (1) THE DIRECT PURCHASER PLAINTIFFS' CONSOLIDATED MENDED COMPLAINT AND (2) THE INDIRECT PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT" to be electronically filed via the Court's Electronic Case Filing System, which constitutes service in this action pursuant to the Court's order of September 29, 2008.

By:   /s/ George L. Paul
      George L. Paul (*pro hac vice*)

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005