Please reply to:

San Francisco

November 13, 2009

**Trump Alioto Trump & Prescott**
ATTORNEYS LLP

**VIA ELECTRONIC MAIL**

Honorable Charles A. Legge (Ret.)
JAMS
Two Embarcadero Center, Suite 1500
San Francisco, CA 94111

Re:   *In Re: Cathode Ray Tubes (CRT) Antitrust Litigation,* No. 07-5944, MDL No. 1917

Dear Judge Legge:

Indirect Purchaser Plaintiffs write in response to the letters of October 12, 2009, October 15, 2009 and November 10, 2009 submitted by the defendants, and the letter submitted by the Direct Purchaser Plaintiffs dated November 10, 2009. Indirect Purchaser Plaintiffs agree with Direct Purchaser Plaintiffs that defendants' attempts to re-argue the issues raised in the pending motions to dismiss are in violation of Local Rule 7-3(d) and are therefore wholly improper. Accordingly, defendants' letters should be stricken from the record. Should Your Honor decide to consider the arguments in defendants' letters, we respectfully request that Your Honor also consider the following response.

Indirect Purchaser Plaintiffs have not felt it necessary to respond to defendants' letters until now because their letters have added very little to the briefing before the Court. Because of the gross inaccuracies contained in the defendants' most recent letter, Indirect Purchaser Plaintiffs must now respond.

We note initially that defendants' letter contains no response to the *Potash* court's holdings on *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) and the Foreign Trade Antitrust Improvement Act of 1982, 15 U.S.C. § 6a ("FTAIA"), nor the *Filters* court's holding on *Twombly.*[1] These holdings, uncontested by the defendants, are absolutely fatal to their position.

In *Potash,* the court rejected the very argument that defendants make here, that it lacked subject matter jurisdiction under the FTAIA because the complaints alleged overseas anticompetitive behavior. Relying solely on plaintiffs'

---

2280 Union Street
San Francisco, CA 94123
(415) 563-7200
FAX (415) 346-0679

2201 Walnut Avenue, Ste 200
Fremont, CA 94538
(510) 790-0900
FAX (510) 790-4856

[1] *See In re Potash Antitrust Litigation,* Case No. 1:08-cv-06910 (N.D. Ill. Nov. 3, 2009) (Memorandum Opinion And Order at 39-50, 23-30); *In re Aftermarket Filters Antitrust Litig.,* Case No. 1:08-cv-04883 (N.D. Ill. Nov. 4, 2009) (Memorandum Opinion And Order at 6-8).

allegations that defendants "sold and distributed potash in the United States, directly or through its affiliates," and that defendants conspired to "fix, raise, maintain, and stabilize the price at which potash was sold," the *Potash* court found that plaintiffs had pleaded enough to fall under the FTAIA's "import trade or import commerce" exception. *See Potash,* at 28-29. In this case, Plaintiffs make almost identical allegations regarding defendants' sale of CRT Products in the United States,[2] and their conspiracy to fix the prices of CRT Products in the United States,[3] in addition to specifically alleging that defendants imported CRT Products into the United States.[4] Therefore, this Court should also reject defendants' FTAIA argument.

In addition, both *Potash* and *Filters* deny defendants' motions to dismiss for failure to state a claim under *Twombly,* even though both complaints relied heavily on allegations of parallel conduct and contained only limited conspiracy allegations. Significantly, neither court applied any sort of heightened pleading standard under *Ashcroft v. Iqbal,* 129 S. Ct. 1937 (2009). Indeed, the *Filters* court did not even cite *Iqbal.* Finally, both courts confirmed the fundamental principles that antitrust complaints must be read as a whole, and that antitrust conspiracies need not be detailed defendant by defendant. *See Potash*, at 44, 49 n. 25; *Filters*, at 7-8.

Having ignored the vast majority of the *Potash* opinion because it is fatal to them, defendants' November 10, 2009 letter proceeds to misstate the *Potash* holding as to the application of *Associated General Contractors of California v. California State Council of Carpenters,* 459 U.S. 519 (1983) ("*AGC*") to indirect purchaser standing in products-containing cases. Defendants claim *Potash* held "that plaintiffs *cannot* establish standing" under *AGC* for purchases of products containing potash, and that "plaintiffs who purchased only finished goods *cannot* allege the requisite 'chain of causation between the alleged restraint in the market – an illicit agreement to fix the price of potash – and their injury – paying higher prices for potash-containing products.'" Defendants' Nov. 10 Letter, at 1 (emphases added). This is completely wrong.

In fact, the *Potash* court held that plaintiffs *did not* allege the chain of causation between the alleged restraint in the market and their injury, not that they *cannot* so allege:

---

[2] *See* Indirect Purchaser Plaintiffs' Consolidated Amended Complaint ("IP CAC"), ¶¶ 50-52, 54-59, 61-70, 72-78, 80-83, 85-92, 94-95, 97-98, 100-102, 104-110, 114-116, 162, 174, 176, 178, 180, 182, 188, 231, 240, 242, 246, 248-250, 255-271 and 274-283.

[3] *Id.* ¶¶ 1, 9, 10, 11, 12, 51, 55, 63, 65, 73, 74, 76, 77, 81, 89, 90, 95, 167, 169, 171, 174, 178, 180 and 182.

[4] *Id.* ¶ 162; *see also* Indirect Purchaser Plaintiffs' Memorandum Of Points And Authorities In Opposition To Defendants Separate and Joint Motions To Dismiss The Indirect Purchaser Consolidated Amended Complaint, at 93-99 (hereinafter referred to as "IP Opposition").

Hon. Charles A. Legge
November 12, 2009
Page 3

> What they *fail to allege*, however, is a chain of causation between the alleged restraint in the market – an illicit agreement to fix the price of potash – and their injury – paying higher prices for potash-containing products, specifically fertilizer.
>
> \* \* \*
>
> Of particular importance is *the absence of any allegations* regarding whether the parties from whom Indirect Purchaser Plaintiffs purchased fertilizer actually passed on any overcharges.

*Potash,* at 56 (emphases added). The *Potash* court's holding is based on plaintiffs' failure to plead the link between the anticompetitive behavior and their injury. It is not, as defendants' claim, a holding that purchasers of products-containing a price-fixed product *cannot* plead antitrust standing as a matter of law.

What is more, *Potash* is easily distinguishable on this issue. First, Plaintiffs here allege that the conspiracy encompassed both CRTs and CRT Finished Products.[5] Therefore, unlike *Potash,* Plaintiffs are not only purchasers of products-containing a price-fixed product; they also purchased the price-fixed product itself. Second, in contrast to the deficient allegations in *Potash,* Indirect Purchaser Plaintiffs have specifically alleged that they participated in the same market as defendants, and that direct purchasers of CRTs and CRT Finished Products passed on the overcharges to Plaintiffs.[6] Thus, the *Potash* opinion is of no value to the Court on this issue.

Defendants' also fail to mention *Potash's* holding that indirect purchaser antitrust standing "is a matter of state law," and that *AGC* should only apply where a particular state has clearly adopted the *AGC* test for indirect purchaser standing. *Potash,* at 60-67. Finding that neither Michigan nor Kansas had adopted the *AGC* test, the court in *Potash* refused to apply *AGC* to those state antitrust claims and denied defendants' motion to dismiss for lack of antitrust standing. *Id.* at 61-64. Moreover, in so holding, *Potash* expressly rejected *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.,* 516 F. Supp. 2d 1027 (N.D. Cal. 2007), upon which the defendants rely so heavily, calling it "unpersuasive" and "questionable." *Potash,* at 64. *Potash* also rejected the relevance of state harmonization statutes. *Id.* at 62. Thus, contrary to defendants' claims, *Potash* actually supports Plaintiffs' position that *AGC* does not apply to state law indirect purchaser claims absent a ruling by the state supreme court or appellate court that it does apply. *Id.*

Defendants' attempt to distinguish the *Filters* holding on *AGC* is similarly misguided. First, it bears repeating that Plaintiffs here have alleged a conspiracy

---

[5] *See* IP CAC ¶¶ 1-3, 10-12, 121, 123, 124, 125, 127, 128, 129, 130, 131, 132, 136, 138, 140, 154, 155, 156, 162, 164, 165, 166-187, 192, 197, 199, 201 and 202.

[6] *Id.* ¶¶ 222-229, 231-232 and 238.

to fix the prices of CRT Products, which is defined to include both CRTs and CRT Finished Products. Like the plaintiffs in *Filters*, Plaintiffs here "actually purchase[d] the product that is the subject of the price fixing conspiracy." *Filters,* at 16. Therefore, like *Filters*, *AGC* is inapplicable. Second, the *Filters* court endorsed many of the same arguments against applying *AGC* to state law indirect purchaser claims that Plaintiffs make in this case: "*AGC* did not involve horizontal price fixing and Direct and Indirect Purchasers down a chain of supply. [] *AGC* was obviously never intended to apply to the instant situation involving claims of price fixing down a chain of distribution, because in a federal context such claims were already barred by *Illinois Brick*." *Id.* at 15.

With respect to the *Potash* holding that Michigan and Kansas require a direct benefit in order to state a claim for unjust enrichment (*Potash*, at 72-73), it is directly contra to the holdings in *In re TFT-LCD Antitrust Litig.,* 559 F. Supp. 2d 1179, 1189-90 (N.D. Cal. 2009) (*TFT-LCD II*'), and *In re Cardizem Antitrust Litig.,* 105 F. Supp. 2d 618, 670-71 (E.D. Mich. 2000).

Similarly, the *Filters* court's dismissal of plaintiffs' claims under the New York Consumer Protection Act, N.Y. Gen. Bus. Law § 349, and the Rhode Island Deceptive Trade Practices Act, R.I. Gen. Law 6-13.1-1 *et seq.* (*Filters*, at 20-22), is contrary to the holdings in *In re Dynamic Random Access Memory (DRAM) Antitrust Litigation*, 536 F. Supp. 2d 1129, 1145 (N.D. Cal. 2008), *In re Graphics Processing Unit (GPU) Antitrust Litig.*, 527 F. Supp. 2d 1011, 1030 (N.D. Cal. 2007), *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1127-1128 (N.D. Cal. 2008), and *In re Static Random Access Memory (SRAM) Antitrust Litig.,* 2008 WL 2610549 (N.D. Cal. June 27, 2008).

Respectfully submitted,

/s/ Mario N. Alioto

Mario N. Alioto
*Interim Lead Counsel for the Indirect Purchaser Plaintiffs*

cc: All Counsel via the Northern District of California's ECF system