# EXHIBIT A

1

2

3

4

5

6

7

8

9          IN THE UNITED STATES DISTRICT COURT

10

11          FOR THE NORTHERN DISTRICT OF CALIFORNIA

12
                                              No. C 07-01819 CW
13    IN RE: STATIC RANDOM ACCESS MEMORY
      (SRAM) ANTITRUST LITIGATION,            ORDER GRANTING IP
14                                            PLAINTIFFS' MOTION
                                              FOR CLASS
15                                            CERTIFICATION AND
                                              DENYING MOTIONS TO
16                                            EXCLUDE EXPERT
                                              OPINIONS
17

18

19

20
      _____/
21

22          In this antitrust multi-district litigation, Indirect

23    Purchaser Plaintiffs (IP Plaintiffs) move for class certification

24    pursuant to Rule 23 of the Federal Rules of Civil Procedure.

25    Defendants[1] oppose the motion.  Having considered oral argument and

26    _____
          [1]Defendants are Samsung Electronics Company, Ltd., Samsung
27    Electronics America, Inc., Samsung Semiconductor, Inc., Hynix
      Semiconductor, Inc., Hynix Semiconductor America, Inc., Micron
28                                                        (continued...)

1 all of the papers filed by the parties, the Court grants IP
2 Plaintiffs' motion for class certification and denies the parties'
3 motions to exclude expert opinions.

4                              BACKGROUND

5       The facts of this case were laid out in greater detail in the
6 Court's order on the initial motions to dismiss. In brief, IP
7 Plaintiffs are a group of individuals and companies that purchased
8 Static Random Access Memory (SRAM) indirectly from one or more
9 Defendants, for end use and not for resale. Defendants are various
10 corporations that sold SRAM to customers throughout the United
11 States.

12       SRAM is a type of memory device that cannot retain stored data
13 absent a source of power. SRAM is used in a variety of product
14 markets, including: (1) the communications market in cell phones
15 and Voice Over Internet Protocol (VOIP) technology; (2) the
16 computer market in servers, mainframes, high-end computer
17 workstations, and personal digital assistants (PDAs) and smart
18 phones; and (3) the networking communications market in routers,
19 switches, proxy and gateway devices, modems, storage area networks
20 and firewalls. Michael Harris Decl. ¶¶ 14-17. There are three
21 general types of SRAM: (1) asynchronous SRAM (typically called slow
22 or low power), which is used in mobile phones and other hand-held
23 devices that contain a central processor, (2) synchronous SRAM

24

25       ¹(...continued)
Technology, Inc., Micron Semicondcutor Products, Inc., NEC
26 Electronics Corp., NEC Electronics America, Inc., Cypress
Semiconductor, Inc., Mitsubishi Electric Corp., Mitsubishi Electric
27 & Electronics USA, Inc., Renesas Technology Corp., Renesas
Technology America, Inc., Toshiba Corp., Toshiba America Electronic
28 Components, Inc. and Etron Technology America, Inc.

United States District Court
For the Northern District of California

1  (typically called fast or high power), which is generally found in
2  computers and networking equipment and (3) pseudo SRAM (PSRAM),
3  which is found in smart phones and other devices that require low
4  power consumption and fast memory.  Id. at ¶¶ 8-13.

5      During the class period, Defendants possessed sixty to seventy
6  percent of the market share of total SRAM sales.  Defendants sell
7  SRAM to various customers, both large and small scale, through a
8  variety of distribution paths.  SRAM manufactured by Defendants can
9  be purchased by an SRAM distributor and resold to an original
10  equipment manufacturer (OEM) or purchased by a contract
11  manufacturer.  Contract manufacturers create individual SRAM
12  components and finished products containing SRAM for OEMs.  Thus,
13  OEMs purchase SRAM directly from SRAM manufacturers, distributors
14  and contract manufacturers.  OEMs then sell SRAM directly to
15  consumers or to consumers through a reseller, distributor or
16  retailer.  Id. ¶¶ 41-47.

17      IP Plaintiffs allege that, between 1996 and 2006, Defendants
18  conspired to fix and maintain artificially high prices for SRAM.
19  According to IP Plaintiffs, Defendants carried out this conspiracy
20  through in-person, telephone and email communications regarding
21  pricing to customers and market conditions.  IP Plaintiffs allege
22  violations of Section 1 of the Sherman Act, California's Cartwright
23  Act, California Business and Professions Code §§ 16720 and 17200,
24  and numerous other states' antitrust, unfair competition and
25  consumer protection laws.  They seek disgorgement of profits and
26  unjust enrichment.

27      IP Plaintiffs seek certification of a nation-wide class for
28  injunctive relief defined as follows:

United States District Court
For the Northern District of California

3

1

2

3

4

5

6

7

8

> All persons and entities residing in the United States who, from November 1, 1996 through at least December 31, 2006, purchased SRAM in the United States indirectly from the Defendants for their own use and not for resale. Specifically excluded from this class are the Defendants; the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant. Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

9  IP Plaintiffs also move to certify twenty-seven separate classes

10  pursuant to Fed. R. Civ. P. 23(b)(3).[2]  Those classes represent

11  residents of Arizona, Arkansas, California, Florida, Hawaii, Iowa,

12  Kansas, Maine, Massachusetts, Michigan, Minnesota, Montana, Nevada,

13  New Mexico, New York, North Carolina, North Dakota, Pennsylvania,

14  Rhode Island, South Dakota, Tennessee, Utah, Washington, West

15  Virginia, Wisconsin, Puerto Rico and the District of Columbia.

16  LEGAL STANDARD

17  Plaintiffs seeking to represent a class must satisfy the

18  threshold requirements of Rule 23(a) as well as the requirements

19  for certification under one of the subsections of Rule 23(b).  Rule

20  23(a) provides that a case is appropriate for certification as a

21  class action if: "(1) the class is so numerous that joinder of all

22  members is impracticable; (2) there are questions of law or fact

23  common to the class; (3) the claims or defenses of the

24

25  [2]IP Plaintiffs note that their classes are "not meant to and do not include purchasers of used or refurbished products

26  containing SRAM." Reply at 18 n.17. Their use of the phrase "not for resale" in the class definition "is meant to limit the class to

27  persons who purchased new products (and not products that were refurbished and bought from E-bay or elsewhere) and to eliminate

28  retailers, wholesalers, distributors and other resellers." Reply at 21 n.21.

4

1  representative parties are typical of the claims or defenses of the

2  class; and (4) the representative parties will fairly and

3  adequately protect the interests of the class."  Fed. R. Civ. P.

4  23(a).

5      Rule 23(b) further provides that a case may be certified as a

6  class action only if one of the following is true:

7      (1) prosecuting separate actions by or against individual
       class members would create a risk of:

8
9          (A) inconsistent or varying adjudications with
           respect to individual class members that would
10         establish incompatible standards of conduct for the
           party opposing the class; or

11         (B) adjudications with respect to individual class
           members that, as a practical matter, would be
12         dispositive of the interests of the other members
           not parties to the individual adjudications or would
13         substantially impair or impede their ability to
           protect their interests;

14
15     (2) the party opposing the class has acted or refused to
       act on grounds that apply generally to the class, so that
       final injunctive relief or corresponding declaratory
16     relief is appropriate respecting the class as a whole; or

17     (3) the court finds that the questions of law or fact
       common to class members predominate over any questions
18     affecting only individual members, and that a class
       action is superior to other available methods for fairly
19     and efficiently adjudicating the controversy.  The
       matters pertinent to these findings include:

20
21         (A) the class members' interests in individually
           controlling the prosecution or defense of separate
           actions;

22
23         (B) the extent and nature of any litigation
           concerning the controversy already begun by or
           against class members;

24
25         (C) the desirability or undesirability of
           concentrating the litigation of the claims in the
           particular forum; and

26
27         (D) the likely difficulties in managing a class
           action.

28  Fed. R. Civ. P. 23(b).

United States District Court
For the Northern District of California

5

1    Plaintiffs seeking class certification bear the burden of
2  demonstrating that each element of Rule 23 is satisfied, and a
3  district court may certify a class only if it determines that
4  plaintiffs have borne their burden.  General Tel. Co. v. Falcon,
5  457 U.S. 147, 158-61 (1982); Doninger v. Pac. Nw. Bell, Inc., 564
6  F.2d 1304, 1308 (9th Cir. 1977).  In making this determination, the
7  court may not consider the merits of plaintiffs' claims.
8  Burkhalter Travel Agency v. MacFarms Int'l, Inc., 141 F.R.D. 144,
9  152 (N.D. Cal. 1991).  Rather, the court must take the substantive
10 allegations of the complaint as true.  Blackie v. Barrack, 524 F.2d
11 891, 901 (9th Cir. 1975).  Nevertheless, the court need not accept
12 conclusory or generic allegations regarding the suitability of the
13 litigation for resolution through class action.  Burkhalter, 141
14 F.R.D. at 152.  In addition, the court may consider supplemental
15 evidentiary submissions of the parties.  In re Methionine Antitrust
16 Litig., 204 F.R.D. 161, 163 (N.D. Cal. 2001) (Methionine I); see
17 also Moore v. Hughes Helicopters, Inc., 708 F.2d 475, 480 (9th Cir.
18 1983) (noting that "some inquiry into the substance of a case may
19 be necessary to ascertain satisfaction of the commonality and
20 typicality requirements of Rule 23(a)"; however, "it is improper to
21 advance a decision on the merits at the class certification
22 stage").  Ultimately, it is in the district court's discretion
23 whether a class should be certified.  Burkhalter, 141 F.R.D. at
24 152.

25    "Class actions play an important role in the private
26 enforcement of antitrust actions.  For this reason courts resolve
27 doubts in these actions in favor of certifying the class."  In re
28 Rubber Chemicals Antitrust Litig., 232 F.R.D. 346, 350 (N.D. Cal

6

1  2005).

2                                    DISCUSSION

3  I.   Class Definitions

4       Defendants first argue that class certification must be denied

5  because IP Plaintiffs' proposed class definitions are not precise

6  and the identity of the class members is not objectively

7  ascertainable.  "An adequate class definition specifies 'a distinct

8  group of plaintiffs whose members [can] be identified with

9  particularity.'"  Campbell v. PricewaterhouseCoopers, LLP, 253

10  F.R.D. 586, 593 (E.D. Cal. 2008) (quoting Lerwill v. Inflight

11  Motion Pictures, Inc., 582 F.2d 507, 512 (9th Cir. 1978).  "The

12  identity of class members must be ascertainable by reference to

13  objective criteria."  5 James W. Moore, Moore's Federal Practice,

14  § 23.21[1] (2001).  Thus, a class definition is sufficient if the

15  description of the class is "definite enough so that it is

16  administratively feasible for the court to ascertain whether an

17  individual is a member."  O'Connor v. Boeing N. Am., Inc., 184

18  F.R.D. 311, 319 (C.D. Cal. 1998).

19       Here, the class definitions meet this standard.  The

20  definitions of the classes are relatively straightforward.  Class

21  members (1) must live in a particular state, (2) cannot be a direct

22  purchaser, (3) cannot be a reseller, (4) must have made a purchase

23  within the relevant time period and (5) must have purchased a

24  product containing SRAM made by a Defendant.  These definitions are

25  not subjective or imprecise.  IP Plaintiffs will be able to

26  identify all products that contain Defendants' SRAM by analyzing

27  Defendants' documents, testimony from Defendants' personnel, third

28  party transactional data, third party discovery responses that

United States District Court
For the Northern District of California

7

1  state whether their products contain SRAM, BoMs[3] from OEMs and
2  contract manufacturers, and publicly available information.  Thus,
3  absent class members will easily be able to identify themselves.
4  II.  Class Certification Under Rule 23(a)

5  To certify a class, IP Plaintiffs must satisfy Rule 23(a).  As
6  noted above, Rule 23(a) provides that a case is appropriate for
7  certification as a class action if: "(1) the class is so numerous
8  that joinder of all members is impracticable; (2) there are
9  questions of law or fact common to the class; (3) the claims or
10  defenses of the representative parties are typical of the claims or
11  defenses of the class; and (4) the representative parties will
12  fairly and adequately protect the interests of the class."

13  Defendants do not dispute IP Plaintiffs' assertion that this
14  action satisfies the numerosity and commonality requirements of
15  Rule 23(a)(1) and (2), and the Court finds that it does.  See 1
16  Alba Cone & Herbert B. Newberg, Newberg on Class Actions § 3.3 (4th
17  ed. 2002) (where "the exact size of the class is unknown, but
18  general knowledge and common sense indicate that it is large, the
19  numerosity requirement is satisfied"); Hanlon v. Chrysler Corp.,
20  150 F.3d 1011, 1019 (9th Cir. 1998) ("All questions of fact and law
21  need not be common to satisfy [Rule 23(a)(2)].  The existence of
22  shared legal issues with divergent factual predicates is
23  sufficient, as is a common core of salient facts coupled with
24  disparate legal remedies within the class.")

25  Defendants assert that class certification must fail because
26  (1) IP Plaintiffs cannot meet the typicality requirement of Rule

27

28  [3]BoM is the acronym for Bill of Materials.

8

1  23(a)(3) and (2) IP Plaintiffs cannot protect the interests of all
2  class members as required by Rule 23(a)(4).

3      A.   Typicality

4      The typicality prerequisite of Rule 23(a) is fulfilled if "the
5  claims or defenses of the representative parties are typical of the
6  claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The
7  test for typicality is "whether other members have the same or
8  similar injury, whether the action is based on conduct which is not
9  unique to the named plaintiffs, and whether other class members
10 have been injured by the same course of conduct." Hanon v.
11 Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992) (quoting
12 Schwartz v. Harp, 108 F.R.D. 279, 282 (C.D. Cal. 1985)). "Under
13 the rule's permissive standards, representative claims are
14 'typical' if they are reasonably co-extensive with those of absent
15 class members; they need not be substantially identical." Hanlon,
16 150 F.3d at 1020. "The typicality requirement does not mandate
17 that products purchased, methods of purchase, or even damages of
18 the named plaintiffs must be the same as those of the absent class
19 members." In re Vitamins Antitrust Litig., 209 F.R.D. 251, 261
20 (D.D.C. 2002).

21     Here, all of the IP Plaintiffs are indirect purchasers of SRAM
22 who allege that Defendants engaged in a price-fixing conspiracy.
23 As the Court noted when it certified the DP Plaintiff class, "the
24 overarching price fixing scheme is the linchpin of [IP] Plaintiff's
25 complaint, 'regardless of the product purchased, the market
26 involved or the price ultimately paid.'" In re Static Random
27 Access Memory (SRAM) Litig., 2008 WL 4447592, *3 (quoting In re
28 Flat Glass Antitrust Litig., 191 F.R.D. 472, 480 (W.D. Pa 1999)).

9

1 Thus, IP Plaintiffs' claims are typical even though they may have
2 used different purchasing procedures, purchased different
3 quantities or a different mix of products, or received different
4 prices than other class members. Accordingly, Rule 23(a)(3)'s
5 typicality requirement is met.

6     B.   Adequate Representation

7     Rule 23(a)(4) requires that "the representative parties will
8 fairly and adequately protect the interests of the class." Fed. R.
9 Civ. P. 23(a)(4). The adequacy requirement consists of two
10 inquiries: "(1) do the representative plaintiffs and their counsel
11 have any conflicts of interest with other class members, and
12 (2) will the representative plaintiffs and their counsel prosecute
13 the action vigorously on behalf of the class?" Staton v. Boeing
14 Co., 327 F.3d 938, 958 (9th Cir. 2003). Defendants challenge IP
15 Plaintiffs as to both requirements of the rule.

16     The mere potential for a conflict of interest is not
17 sufficient to defeat class certification; the conflict must be
18 actual, not hypothetical. See Cummings v. Connell, 316 F.3d 886,
19 896 (9th Cir. 2003) ("[T]his circuit does not favor denial of class
20 certification on the basis of speculative conflicts."); Soc. Servs.
21 Union, Local 535 v. County of Santa Clara, 609 F.2d 944, 948 (9th
22 Cir. 1979) ("Mere speculation as to conflicts that may develop at
23 the remedy stage is insufficient to support denial of initial class
24 certification."); Blackie v. Barrack, 524 F.2d 891, 909 (9th Cir.
25 1975) (noting that class members might have differing interests at
26 later stages of litigation, but that "potential conflicts" do not
27 present a valid reason for refusing to certify a class).
28 Defendants argue that several proposed representatives are not

United States District Court

10

1    adequate because they have business or personal relationships with
2    the attorneys who represent them in this case. For instance, one
3    representative Plaintiff is the uncle of one of Plaintiffs'
4    attorneys and some of the other representative Plaintiffs know some
5    of Plaintiffs' attorneys socially or have had prior business
6    dealings with them. However, Defendants have not shown how any of
7    these relationships have manifested a conflict nor have they
8    provided legal authority that establishes that these relationships
9    establish conflicts. To the contrary, it "would seem a bit
10   anomalous that an individual whose [relative or friend] has
11   developed a reputation as a competent [] lawyer should be
12   prohibited from turning to his [relative or friend] for assistance
13   if he has a legitimate legal claim." Lewis v. Goldsmith, 95 F.R.D.
14   15, 20 (D.N.J. 1982).

15       Defendants also challenge representative Plaintiffs' level of
16   participation in the case. While class representatives must be
17   familiar with the basics of, and "understand the gravamen" of,
18   their claims, it is not necessary that they be "intimately familiar
19   with every factual and legal issue in the case." Moeller v. Taco
20   Bell Corp., 220 F.R.D. 604, 611 (N.D. Cal. 2004). A class
21   representative "will be deemed inadequate only if she is
22   'startingly unfamiliar' with the case." Id. (quoting Greenspan v.
23   Brassler, 78 F.R.D. 130, 133-34 (S.D.N.Y. 1978). Here, IP
24   Plaintiffs have been involved in providing answers to written
25   discovery and giving depositions and have shown that they can carry
26   out the duties of class representatives. Thus, IP Plaintiffs meet
27   the requirements of Rule 23(a)(4).

28

11

1  III. Class Certification Under Rule 23(b)(2)

2      IP Plaintiffs move for certification of a nation-wide

3  injunctive relief class under Rule 23(b)(2). The class "seeks to

4  enjoin Defendants from engaging in conduct that continues to cause

5  prices for SRAM to be fixed at supracompetitive levels." Motion at

6  40.

7      Rule 23(b)(2) permits certification where "the party opposing

8  the class has acted or refused to act on grounds that apply

9  generally to the class, so that final injunctive relief or

10  corresponding declaratory relief is appropriate respecting the

11  class as a whole." Federal R. Civ. P. 23(b). "Class certification

12  under Rule 23(b)(2) is appropriate only where the primary relief

13  sought is declaratory or injunctive." Zinser v. Accufix Research

14  Institute, Inc., 253 F.3d 1180, 1195 (9th Cir. 2001). A class

15  seeking monetary damages may be certified pursuant to Rule 23(b)(2)

16  where such relief is "merely incidental to [the] primary claim for

17  injunctive relief." Probe v. State Teachers' Retirement Sys., 780

18  F.2d 776, 780 (9th Cir. 1986).[4]

19      Here, the primary relief sought is an injunction. The first

20  paragraph of the complaint states: "This complaint is filed under

21  Section 16 of the Clayton Act, 15 U.S.C. § 26, to obtain injunctive

22  relief . . . ." Further, members of the nation-wide class are far

23  more numerous than the members of the Indirect State Classes. The

24  nation-wide class includes persons in all fifty states, the

25

26      [4]IP Plaintiffs erroneously cite Dukes v. Wal-Mart, Inc., 509
27  F.3d 1168 (9th Cir. 2007). However, by order of the Ninth Circuit,
   that opinion "shall not be cited as precedent by or to any court of
28  the Ninth Circuit." Dukes v. Wal-Mart, Inc., 556 F.3d 919 (9th
   Cir. 2009).

12

United States District Court
For the Northern District of California

1 District of Columbia, and Puerto Rico who indirectly purchased
2 SRAM. Moreover, the long-lasting effect of an injunction would
3 likely be greater than a damages award. <u>See</u> <u>Ellis v. Costco</u>
4 <u>Wholesale Corp.</u>, 240 F.R.D. 627, 643 (N.D. Cal. 2007) (certifying
5 Rule 23(b)(2) class where injunction would have "far-reaching"
6 effects on defendant's promotion practices and would "benefit class
7 members in the same way").

8 Defendants argue that IP Plaintiffs do not have standing to
9 assert their claim for injunctive relief. The Court disagrees.
10 Article III limits the jurisdiction of the federal courts to
11 "cases" and "controversies." In order to satisfy the "case or
12 controversy" requirement, a plaintiff must show that: "(1) he or
13 she has suffered an injury in fact that is concrete and
14 particularized, and actual or imminent; (2) the injury is fairly
15 traceable to the challenged conduct; and (3) the injury is likely
16 to be redressed by a favorable court decision." <u>Salmon Spawning &</u>
17 <u>Recovery Alliance v. Gutierrez</u>, 545 F.3d 1220, 1225 (9th Cir.
18 2008). "Article III standing requires an injury that is actual or
19 imminent, not conjectural or hypothetical." <u>Cole v. Oroville Union</u>
20 <u>High Sch. Dist.</u>, 228 F.3d 1092, 1100 (9th Cir. 2000) (internal
21 quotation marks omitted). A plaintiff seeking declaratory and
22 injunctive relief cannot rely solely on a past injury; instead, he
23 or she must demonstrate a "very significant possibility of future
24 harm" to warrant the requested relief. <u>San Diego County Gun Rights</u>
25 <u>Comm. v. Reno</u>, 98 F.3d 1121, 1126 (9th Cir. 1996).

26 At this stage in the proceedings, IP Plaintiffs have alleged
27 sufficient facts to establish Article III standing for their
28 nation-wide injunctive relief class. IP Plaintiffs allege that

13

1  Defendants and their co-conspirators entered into a continuing
2  conspiracy in restraint of trade artificially to raise prices for
3  SRAM in the United States. They further allege that these market-
4  wide overcharges were then passed through the chains of
5  distribution, and that they were injured by paying supra-
6  competitive prices when they indirectly purchased Defendants'
7  products.

8  Finally, Defendants argue that, because IP Plaintiffs seek to
9  certify a nation-wide injunctive class from November 1, 1996
10 through December 31, 2006, they have impliedly alleged that the
11 conspiracy ended in 2006. However, a finite proposed class period
12 does not defeat certification of a class under Rule 23(b)(2). See,
13 e.g., Jaffe v. Morgan Stanley & Co., 2008 WL 346417, at *3 (N.D.
14 Cal.) (certifying injunctive-relief class for settlement affecting
15 persons employed by the defendants "at any time between October 12,
16 2002 and December 3, 2007). Further, IP Plaintiffs allege that the
17 same market conditions that facilitated the conspiracy from 1996 to
18 2006 continue today. They allege that Defendants' price-fixing
19 resulted from a systematic, repeated pattern of sharing sensitive
20 competitive information which was greatly facilitated by the cross-
21 competitor business relationships that still exist. Thus, there is
22 alleged a significant risk that the conspiracy will persist or re-
23 form in the future. Therefore, the Court certifies a nation-wide
24 class under Rule 23(b)(2).

25 IV. Class Certification Under Rule 23(b)(3)

26     A.   Predominance

27     IP Plaintiffs' motion for certification under Rule 23(b)(3)
28 centers around the issue of predominance. "The Rule 23(b)(3)

14

predominance inquiry tests whether proposed classes are
sufficiently cohesive to warrant adjudication by representation."
Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623 (1997).  "When
common questions present a significant aspect of the case and they
can be resolved for all members of the class in a single
adjudication, there is clear justification for handling the dispute
on a representative rather than an individual basis."  Hanlon, 150
F.3d at 1022 (internal quotation marks omitted).  "The common
issues must only predominate; they do not have to be dispositive of
the litigation."  In re Lorazepam & Clorazepate Antitrust Litig.,
202 F.R.D. 12, 29 (D.D.C. 2001).

To determine whether the predominance requirement is
satisfied, "courts must identify the issues involved in the case
and determine which are subject to 'generalized proof,' and which
must be the subject of individualized proof."  In re Dynamic Random
Access Memory (DRAM) Antitrust Litig., 2006 WL 1530166, at *6 (N.D.
Cal.).

Liability in an antitrust case is based on: (1) whether there
was a conspiracy to fix prices in violation of the antitrust laws;
(2) whether the plaintiffs sustained an antitrust injury, or the
"impact" of the defendants' unlawful activity; and (3) the amount
of damages sustained as a result of the antitrust violations.  In
re Dynamic Random Access Memory (DRAM) Antitrust Litig., 2006 WL
1530166, at *7 (N.D. Cal.).

IP Plaintiffs need not show that there will be common proof on
each element of the claim.  "In price-fixing cases, courts
repeatedly have held that the existence of the conspiracy is the
predominant issue and warrants certification even where significant

15

1  individual issues are present."  Thomas & Thomas Rodmakers, Inc. v.
2  Newport Adhesives & Composites, Inc., 209 F.R.D. 159, 167 (C.D.
3  Cal. 2002).  "[C]ommon liability issues such as conspiracy or
4  monopolization have, almost invariably, been held to predominate
5  over individual issues."  6 Newberg on Class Actions, at § 18.25.

6  Here, the central issue in the case is the existence of
7  Defendants' price-fixing conspiracy.  IP Plaintiffs allege that
8  Defendants engaged in illicit communications with each other to
9  share pricing and other sensitive competitive information related
10  to SRAM, and that they set common minimum prices of SRAM based on
11  this information.  Differences among class members regarding the
12  SRAM products they purchased, from whom they purchased the products
13  and the price at which they purchased them relate primarily to the
14  amount of damages and not the common issue of Defendants' conduct.

15  Defendants focus their arguments on the second element of the
16  antitrust claim; they assert that IP Plaintiffs have failed to
17  demonstrate that common proof can be used to show class-wide
18  impact.  As the court in DRAM stated:

19      [D]uring the class certification stage, the court must
        simply determine whether plaintiffs have made a
20      sufficient showing that the evidence they intend to
        present concerning antitrust impact will be made using
21      generalized proof common to the class and that these
        common issues will predominate.  The court cannot weigh
22      in on the merits of plaintiffs' substantive arguments,
        and must avoid engaging in a battle of expert testimony.
23      Plaintiffs need only advance a plausible methodology to
        demonstrate that antitrust injury can be proven on a
24      class-wide basis.

25  Id. at *9 (citations and internal quotation marks omitted).  "On a
26  motion for class certification, the Court only evaluates whether
27  the method by which plaintiffs propose to prove class-wide impact
28  could prove such impact, not whether plaintiffs in fact can prove

16

United States District Court
For the Northern District of California

1 class-wide impact."  In re Magnetic Audiotape Antitrust Litig.,
2 2001 WL 619305, at *4 (S.D.N.Y. 2001); See In re Flat Glass
3 Antitrust Litig., 191 F.R.D. 472, 485-88 (W.D. Pa. 1999); In re
4 Polypropelene Carpet Antitrust Litig., 178 F.R.D. 603, 620-23 (N.D.
5 Ga. 1997).

6      Many courts have recognized a presumption of class-wide
7 antitrust impact.[5]  For instance, California courts routinely
8 recognize a presumption of class-wide impact for indirect purchaser
9 antitrust price-fixing claims.  See B.W.I. Custom Kitchen v. Owens-
10 Illinois, Inc., 191 Cal. App. 3d 1341, 1351-52 (1987) ("courts have
11 assumed consumers were injured when they purchased products in an
12 anticompetitive market" even when the market is "characterized by
13 individually negotiated prices, varying profit margins, and intense
14 competition"); Hopkins v. De Beers Centenary AG, 2005 WL 1020868,
15 at *4 (Cal. Super.) ("fact-of-injury is assumed for class
16 certification purposes"); Microsoft I-V Cases, 2000 WL 35568182, at
17 88,563-64 (Cal. Super.) ("A per se violation raises a presumption
18 of harm because conduct such as a conspiracy to fix prices has the
19 sole purpose of artificially raising the price of the item.  It
20 follows that consumers of the product pay more than they would in a
21 competitive market even if the prices charged to direct purchasers
22 vary.").

23      The presumption of impact is not necessarily rebutted even if
24 an intermediary has altered the product.  In re Cipro Cases I and
25 II, 121 Cal App. 4th 402, 416 (2004).  Impact "is ordinarily a

26

27 [5]The existence of a presumption of antitrust impact is a
matter of substantive law.  Computer Economics, Inc. v. Gartner
Group, Inc., 50 F. Supp. 2d 980, 990 (S.D. Cal. 1999); In re
28 Relafen Antitrust Litig., 221 F.R.D. 260, 288 (D. Mass. 2004).

United States District Court
For the Northern District of California

17

1 permissible assumption in cases where consumers have purchased
2 products in an anticompetitive market, even if some consumers did
3 not actually have to pay the overcharge because of their individual
4 circumstances."  Id. at 413.

5      Some federal courts recognize the same presumption.  See In re
6 Potash Antitrust Litig., 159 F.R.D. 682, 693 (D. Minn. 1995) ("[A]s
7 a general rule in antitrust price-fixing cases, questions common to
8 the members of the class will predominate over questions affecting
9 only individual members."); In re Catfish Antitrust Litig., 826 F.
10 Supp. 1019, 1041 (N.D. Miss. 1993) ("[I]n an illegal price-fixing
11 scheme, there is a presumption that all purchasers will be
12 impacted/injured by having to pay the higher price."); In re Cement
13 and Concrete Antitrust Litig., 1979 WL 1595, at *3 (D. Ariz. 1979)
14 ("Courts have consistently held that an illegal price fixing scheme
15 presumptively impacts upon all purchasers of a price fixed product
16 in a conspiratorially affected market.").

17      Notwithstanding this presumption, IP Plaintiffs cannot
18 demonstrate common impact by simply alleging a price-fixing
19 conspiracy.  The "problem of proof in an indirect purchaser case is
20 intrinsically more complex [than in a direct purchaser case],
21 because the damage model must account for the actions of innocent
22 intermediaries who allegedly passed on the overcharge."  William H.
23 Page, The Limits of State Indirect Purchaser Suits: Class
24 Certification in the Shadow of Illinois Brick, 67 Antitrust L.J. 4,
25 12 (1999).

26      The Court granted class certification in the Direct Purchaser
27 (DP) Plaintiffs' class action.  There, despite customer, pricing
28 and product differences, the Court held that the methodologies

18

United States District Court
For the Northern District of California

1  advanced by DP Plaintiffs' expert would allow impact to be
2  demonstrated with generalized proof. However, here, the issue is
3  "from one to several steps removed from the inquiry in the direct
4  purchaser class action." Methionine I, 204 F.R.D. at 164.  IP
5  Plaintiffs must "show that there is a reasonable method for
6  determining on a class-wide basis whether and to what extent that
7  overcharge was passed on to each of the [IP Plaintiffs] at all
8  levels of the distribution chain." Id.; see also, Robert Harris &
9  Lawrence A. Sullivan, Passing on the Monopoly Overcharge: A
10 Comprehensive Policy Analysis, 128 U. Pa. L. Rev. 269, 315 (1979)
11 (H&S Article) ("Before the incidence of an overcharge can be
12 traced, one must be able to identify the distribution chain and
13 follow transactions down the chain."). IP Plaintiffs must find a
14 way to account for the decision-making of a variety of resellers
15 and manufacturers in an intricate distribution chan.  In evaluating
16 a method to prove injury to all IP Plaintiffs, it is important to
17 note that SRAM is but one component of an end-product and that it
18 was sold to some indirect purchasers as a stand-alone product but
19 to others bundled with other products. "Each divergent factor --
20 customer size, type, procurement channel, product, distribution
21 step -- is a factor that increases the likelihood that proof of
22 pass-through can only be shown with resort to individualized
23 proof." California v. Infineon Technologies AG, 2008 WL 4155665,
24 at *11 (N.D. Cal.).

25     Here, IP Plaintiffs' method of proving injury on a class-wide
26 basis is based on the declarations of their experts, economists
27 Drs. Michael J. Harris and Mark Dwyer.  Dr. Harris explains that,
28 according to the H&S article, there are five classes of factors

19

1  that should be considered in evaluating whether generalized
2  evidence can be used to determine the rate of pass-through.  These
3  include temporal relationships, pricing practices, directness of
4  affected costs, supply and demand.

5       Temporal factors relate to the frequency of price changes and
6  the duration of anti-competitive overcharge.  Pricing practices
7  relate to the consistency and basis of pricing policy.  The
8  directness of affected costs refers to whether an overcharge
9  affects a direct (i.e. variable) cost or an indirect (i.e.
10 overhead) cost.  Because SRAM is a direct cost, Dr. Harris claims
11 that overcharges will be passed through sooner and at a higher
12 rate.  The more elastic the supply-curve of an individual
13 intermediary the higher is the rate of pass-through.  A less
14 elastic demand-curve will increase the rate of pass-through.  Dr.
15 Harris concludes, "Taken together, the theoretical issues discussed
16 above as applied to the SRAM product markets indicate that, a-
17 priori, one fully expects that these markets would exhibit a high
18 degree of pass through."  Harris Decl. ¶ 67.  This economic
19 evidence would be offered by the proposed class representatives and
20 by every single individual class member if their claims were
21 separately tried to a jury to prove impact and the amount of
22 damages suffered.  Thus, this evidence is common to all class
23 members for class certification purposes.

24      Dr. Dwyer proposes two different types of regression models
25 that will establish that the fact of injury can be shown on a
26 class-wide basis using common proof: a reduced form model and a
27 structural model.  A reduced form model can be used when component
28 cost information is provided.  This model measures the extent of

United States District Court
For the Northern District of California

20

1  pass-through of component costs and the prices paid for end-use
2  products.  The structural model can be used regardless of whether
3  component cost information is available.  This model uses end-use
4  purchase price information and analyzes market supply and demand to
5  determine the presence of pass-through.

6      Defendants argue that the reduced form model fails to take
7  into account actual SRAM cost data and that the model ignores
8  entire distribution chains.  However, Dr. Dwyer states that the
9  "data provided by the OEMs specify SRAM cost components themselves,
10  and allow for a further statistical test, precisely, whether the
11  SRAM cost pass-through differs from the overall BoM (i.e.,
12  component cost) pass-through rate."  Dwyer Decl. ¶ 38.  In fact,
13  Dr. Dywer performed a preliminary reduced form analysis utilizing
14  both total BoM costs and SRAM component costs for a router that
15  contains SRAM and found a 103 percent pass-through rate on sales to
16  end-users.  Dwyer Reply Decl. ¶¶ 30-32.  Defendants assert that
17  relying on BoM data is improper because it is not an accurate
18  source of costs; however, BoMs are commonly used by OEMs and
19  contract manufacturers in the electronics industry to monitor input
20  costs and adjust pricing.

21      Defendants also argue that the structural model is flawed
22  because it assumes pass-through without actually testing for it.
23  However, the structural model derives a pass-through rate from many
24  economic variables, such as the price elasticity of end-use
25  products, the structure of competition among product suppliers and
26  the degree to which cost changes are common across end-use
27  products.  Dr. Dwyer notes that pass-through rates vary
28  significantly depending on the values of these variables.

United States District Court
For the Northern District of California

1        Defendants also criticize IP Plaintiffs for using aggregated

2  and averaged data in their structural model because such data could

3  yield "false-positive pass-through." Opposition at 31. However,

4  this criticism is not well taken. In the context of an IP

5  antitrust case against Microsoft, a district court in Minnesota

6  held,

> 7     The damages question for trial is presumably not about
>       whether a specific Microsoft price increase found its
> 8     way through the distribution chain and resulted in an
>       increase in the price paid by a specific class member.
> 9     Rather, the question is how a series of Microsoft price
>       increases, and/or a series of Microsoft failures to
> 10    reduce prices, impacted the price each consumer paid.
>       The question of what would have happened but for
> 11    Microsoft's monopoly overcharge is a hypothetical, and
>       a hypothetical question generally cannot be answered by
> 12    historical data about what actually happened, but must
>       often be answered by general principles about what
> 13    generally tends to happen. Thus, average pass through
>       rates appear reasonable and even necessary to prove
> 14    damages here.

15  <u>Gordon v. Microsoft Corp.</u>, 2003 WL 23105550, at *3 (D. Minn.); <u>see</u>

16  <u>also</u> <u>In re Cardizem CD Antitrust Litig.</u>, 200 F.R.D. 326, 345, 350

17  (E.D. Mich. 2001); <u>In re NASDAQ Market-Makers Antitrust Litig.</u>, 169

18  F.R.D. 493, 523 (S.D.N.Y. 1996); <u>Presidio Golf Club of San</u>

19  <u>Francisco v. National Linen Supply Corp.</u>, 1976 WL 1359, at *5 (N.D.

20  Cal.). Thus, the use of averaged and aggregated data is not fatal

21  to IP Plaintiffs' econometric models.

22        Defendants argue that the SRAM distribution chain is too

23  complex from which to discern evidence of pass-through. However,

24  these complexities do not preclude an estimation of whether an SRAM

25  overcharge impacted end purchasers of SRAM-containing products.

26  Dr. Harris has noted that many other markets have the same features

27  as the markets at issue here, and those markets are routinely

28  tested for relationships among variables of interest. Harris Reply

United States District Court
For the Northern District of California

1  Decl. ¶¶ 44-48.  Moreover, divergent pricing and sales practices
2  are not necessarily an impediment to measuring pass-through.
3  Courts have held that "'contentions of infinite diversity of
4  product, marketing practices, and pricing have been made in
5  numerous cases and rejected.'"  Rosack v. Volvo of America Corp.,
6  131 Cal. App. 3d 741, 755 (1982) (quoting In re Folding Carton
7  Antitrust Litig., 75 F.R.D. 727, 734 (N.D. Ill. 1977).  Courts may
8  look past "surface distinctions" in "marketing mechanisms" when
9  analyzing whether to certify indirect purchaser classes;
10 "[i]dentical products, uniform prices, and unitary distribution
11 patterns are not indispensable for class certification in this
12 context.'"  B.W.I., 191 Cal. App. 3d at 1350 (quoting Shelter
13 Realty Corp. v. Allied Maintenance Corp., 75 F.R.D. 34, 37
14 (S.D.N.Y. 1977)).

15      Defendants also argue that, because SRAM is a relatively small
16 portion of the price of an overall product, any price increase in
17 SRAM will have a de minimis effect.  This argument has no merit.
18 Defendants may not shield themselves from liability by fixing
19 prices on a relatively inexpensive item.  See Free v. Abbott
20 Laboratories, 982 F. Supp. 1211, 1217 (M.D. La. 1997) (stating that
21 "a price fixing scheme at the top of the distribution chain" would
22 be actionable if it only "increased the retail price of the product
23 by a few cents per unit").

24      In sum, IP Plaintiffs have presented plausible methodologies
25 that will be used to perform quantitative analyses to demonstrate
26 class-wide injury.

27      As to the third element of an anti-trust claim, damages,
28 "[a]ntitrust plaintiffs have a limited burden with respect to

United States District Court
For the Northern District of California

1  showing that individual damages issues do not predominate." In re
2  Potash Antitrust Litig., 159 F.R.D. at 697.  IP Plaintiffs are not
3  required to "supply a 'precise damage formula' at the certification
4  stage of an antitrust action.  Instead, in assessing whether to
5  certify a class, the Court's inquiry is limited to whether or not
6  the proposed methods are so insubstantial as to amount to no method
7  at all."  Id.

8       IP Plaintiffs have proffered three methodologies for
9  calculating damages on a class-wide basis: the first compares SRAM
10 prices before and after the period of the price-fixing conspiracy;
11 the second compares SRAM prices during the class period with prices
12 for comparable products; and the third uses Defendants' cost data
13 to estimate what competitive prices for SRAM should have been.  Dr.
14 Dwyer concludes that these methods will "allow direct computation
15 of per-unit overcharges to indirect SRAM purchasers."  Dwyer Decl.
16 ¶ 63.  The validity of those methods "will be adjudicated at trial
17 based upon economic theory, data sources, and statistical
18 techniques that are entirely common to the class."  In re Market-
19 Makers Antitrust Litig., 169 F.R.D. at 521.

20      Defendants have not shown that the methods are "so
21 insubstantial as to amount to no method at all."  Potash, 159
22 F.R.D. at 697.  Therefore, the Court concludes that common issues
23 predominate with respect to IP Plaintiffs' proof of the damages
24 element of the antitrust conspiracy claim, as well as the
25 conspiracy and impact elements.

26      B.    Superiority

27      Rule 23(b)(3) also requires that class resolution must be
28 "superior to other available methods for the fair and efficient

                                24

1  adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).   "The
2  policy at the very core of the class action mechanism is to
3  overcome the problem that small recoveries do not provide the
4  incentive for any individual to bring a solo action prosecuting his
5  or her rights."  Amchem Prod., Inc. v. Windsor, 521 U.S. 591, 617
6  (1997).   In antitrust cases such as this, the damages of individual
7  indirect purchasers are likely to be too small to justify
8  litigation, but a class action would offer those with small claims
9  the opportunity for meaningful redress.

10      Certifying the IP national injunctive relief class and state
11  classes is superior to, and more manageable than, any other
12  procedure available for the treatment of factual and legal issues
13  raised by IP Plaintiffs' claims.  What would be unmanageable is the
14  institution of countless individual lawsuits with the same facts
15  and legal issues.  See In re Terazosin Hydrochloride Antitrust
16  Litig., 220 F.R.D. 672, 700 (S.D. Fla. 2004) ("Multiple lawsuits
17  brought by thousands of consumers and third-party payors in
18  seventeen different states would be costly, inefficient, and would
19  burden the court system."); See In re Cardizem, 200 F.R.D. at 351.

20      Defendants are also concerned that this Court will be unable
21  to manage state-law claims from twenty-seven state classes.
22  However, there is no qualitative difference between a federal
23  district court considering class certification of state claims
24  under that state law and a federal court serving as a multi-
25  district litigation forum performing the same task for many federal
26  courts.  Moreover, courts frequently certify classes under the laws
27  of multiple jurisdictions.  See, e.g., Norvir Anti-Trust Litig.,
28  2007 WL 1689899, at *8 (N.D. Cal.) (certifying class under the

United States District Court
For the Northern District of California

25

1  common law of forty-eight states); <u>In re Pharm. Indus. Average</u>
2  <u>Wholesale Price Litig.</u>, 233 F.R.D. 229, 230-31 (D. Mass. 2006)
3  (certifying multi-state defendant subclasses under the consumer
4  protection laws of forty-one states).  Thus, a class action is the
5  superior method of resolving this controversy.

6  V.    Expert Evidence

7       To support their motion for class certification, IP Plaintiffs
8  rely on the declarations of experts Drs. Mark Dwyer and Michael
9  Harris.  To support their opposition to IP Plaintiffs' motion,
10  Defendants rely on the declarations of expert Dr. Michelle Burtis.
11  Each party moves to exclude the other's expert declarations under
12  Federal Rule of Evidence 702 and <u>Daubert v. Merrell Dow</u>
13  <u>Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993).

14       Federal Rule of Evidence 702 provides:

15       If scientific, technical, or other specialized knowledge
         will assist the trier of fact to understand the evidence
16       or determine a fact in issue, a witness qualified as an
         expert by knowledge, skill, experience, training, or
17       education, may testify thereto in the form of an opinion
         or otherwise, if (1) the testimony is based upon
18       sufficient facts or data, (2) the testimony is the product
         of reliable principles and methods, and (3) the witness
19       has applied the principles and methods reliably to the
         facts of the case.

20
21       Under the Federal Rules of Evidence, "the trial judge must
22  ensure that any and all scientific testimony or evidence admitted
23  is not only relevant, but reliable."  <u>Daubert</u>, 509 U.S. at 589.  At
24  the class certification stage of the proceedings, "robust
25  gatekeeping" of expert evidence is not required; rather, the court
26  must assess only whether expert evidence is useful in evaluating
27  whether class certification requirements have been met.  <u>Kurihara</u>
28  <u>v. Best Buy Co.</u>, 2007 WL 2501698, at *5 (N.D. Cal.)  <u>Daubert</u>'s

United States District Court
For the Northern District of California

1   relevance and reliability requirements serve as "useful guideposts"
2   but the court retains discretion in determining how to test
3   reliability as well as whether an expert's testimony is both
4   relevant and reliable.  Id.; see also Kumho Tire Co. v. Carmichael,
5   526 U.S. 137, 152 (1999).  Although this standard is "more
6   lenient," the court "'must ensure that the basis of the expert
7   opinion is not so flawed that it would be inadmissible as a matter
8   of law.'"  Sepulveda v. Wal-Mart Stores, Inc., 237 F.R.D. 229, 235
9   (C.D. Cal. 2006) (quoting In re Visa Check/MasterMoney Antitrust
10  Litig., 280 F.3d 124, 135 (2d Cir. 2001)).

11      The question for the court is whether the expert evidence is
12  sufficiently probative to be useful in evaluating whether class
13  certification requirements have been met.  See In re Polypropylene
14  Carpet Antitrust Litigation, 996 F. Supp. 18, 26 (N.D. Ga. 1997)
15  (at class certification stage court only examined whether the
16  expert's methodology will (a) comport with basic principles,
17  (b) have any probative value and (c) primarily use evidence that is
18  common to all members of the proposed class); Bacon v. Honda of
19  America Mfg., Inc., 205 F.R.D. 466, 470-71 (S.D. Ohio 2001) ("'For
20  common questions to exist, plaintiffs' statistical evidence must
21  logically support the inference of discrimination against the class
22  asserted.'") (citation omitted).

23      Although each side presents myriad valid challenges to the
24  other's expert, the Court concludes that these challenges are of
25  the type that go to the weight of the evidence, not the
26  admissibility.  The economic principles and regression models
27  relied upon by IP Plaintiffs' experts, Drs. Harris and Dwyer, are
28  solidly grounded in the academic literature.  They cite extensive

27

1  facts and data from this case that they reviewed and relied upon in
2  rendering their opinions.  The Court concludes that their opinions
3  are reliable and admissible.

4      Similarly, Dr. Burtis' expert opinions are also supported by
5  academic and economic literature.  She reviewed IP Plaintiffs'
6  allegations, Drs. Harris' and Dwyer's opinions and third-party data
7  related to sales and purchases of the relevant products.
8  Therefore, the Court concludes that her opinions are also reliable
9  and admissible.  The parties' motions to exclude reflect
10  disagreement with the opposing parties' position; however, this
11  disagreement does not warrant exclusion.[6]

12                          CONCLUSION

13      For the foregoing reasons, the Court grants IP Plaintiffs'
14  motion (Docket No. 645) for class certification.

15      The following nation-wide plaintiff class is hereby certified
16  pursuant to Fed. R. Civ. P. 23(a) and (b)(2) for injunctive and
17  declaratory relief:

18      All persons and entities residing in the United States
        who, from November 1, 1996 through at least December 31,
19      2006, purchased SRAM in the United States indirectly from
        the Defendants for their own use and not for resale.
20      Specifically excluded from this Class are the Defendants;
        the officers, directors or employees of any Defendant;
21      any entity in which any Defendant has a controlling
        interest; and any affiliate, legal representative, heir
22      or assign of any Defendant.  Also excluded are any
        federal, state or local governmental entities, any
23      judicial officer presiding over this action and the
        members of his/her immediate family and judicial staff,
24      and any juror assigned to this action.

25

26  [6]The Court notes that IP Plaintiffs did not violate the
    Court's May 21, 2009 Discovery Order.  IP Plaintiffs' experts were
27  permitted to analyze and opine on third party information they
    possessed at the time that they filed their initial declarations to
28  the extent that information was "referred to and analyzed" by Dr.
    Burtis.

28

United States District Court
For the Northern District of California

1    In addition, the following state plaintiff classes are hereby

2  certified pursuant to Fed. R. Civ. P. 23(a) and (b)(3):

3  Arizona:

4        All persons and entities in Arizona who indirectly
        purchased SRAM and/or products containing SRAM, for end
5        use and not for resale, that was manufactured and/or sold
        by one or more of the Defendants during the Class Period.
6        Specifically excluded from this Class are the Defendants,
        the officers, directors or employees of any Defendant; any
7        entity in which any Defendant has a controlling interest;
        and any affiliate, legal representative, heir or assign of
8        any Defendant.  Also excluded are any federal, state or
        local governmental entities, any judicial officer
9        presiding over this action and the members of his/her
        immediate family and judicial staff, and any juror
10       assigned to this action.

11  Arkansas:

12       All persons and entities in Arkansas who indirectly
        purchased SRAM and/or products containing SRAM, for end
13       use and not for resale, that was manufactured and/or sold
        by one or more of the Defendants during the Class Period.
14       Specifically excluded from this Class are the Defendants,
        the officers, directors or employees of any Defendant; any
15       entity in which any Defendant has a controlling interest;
        and any affiliate, legal representative, heir or assign of
16       any Defendant.  Also excluded are any federal, state or
        local governmental entities, any judicial officer
17       presiding over this action and the members of his/her
        immediate family and judicial staff, and any juror
18       assigned to this action.

19  California:

20       All persons and entities in California who indirectly
        purchased SRAM and/or products containing SRAM, for end
21       use and not for resale, that was manufactured and/or sold
        by one or more of the Defendants during the Class Period.
22       Specifically excluded from this Class are the Defendants,
        the officers, directors or employees of any Defendant; any
23       entity in which any Defendant has a controlling interest;
        and any affiliate, legal representative, heir or assign of
24       any Defendant.  Also excluded are any federal, state or
        local governmental entities, any judicial officer
25       presiding over this action and the members of his/her
        immediate family and judicial staff, and any juror
26       assigned to this action.

27  Florida:

28       All persons and entities in Florida who indirectly

29

purchased SRAM and/or products containing SRAM, for end use and not for resale, that was manufactured and/or sold by one or more of the Defendants during the Class Period. Specifically excluded from this Class are the Defendants, the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant. Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

Hawaii:

All persons and entities in Hawaii who indirectly purchased SRAM and/or products containing SRAM, for personal, family or household use, that was manufactured and/or sold by one or more of the Defendants during the Class Period. Specifically excluded from this Class are the Defendants, the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant. Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

Iowa:

All persons and entities in Iowa who indirectly purchased SRAM and/or products containing SRAM, for end use and not for resale, that was manufactured and/or sold by one or more of the Defendants during the Class Period. Specifically excluded from this Class are the Defendants, the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant. Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

Kansas:

All persons and entities in Kansas who indirectly purchased SRAM and/or products containing SRAM, for personal, family or household use, that was manufactured and/or sold by one or more of the Defendants during the Class Period. Specifically excluded from this Class are the Defendants, the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of

30

1    any Defendant. Also excluded are any federal, state or
     local governmental entities, any judicial officer presiding
2    over this action and the members of his/her immediate
     family and judicial staff, and any juror assigned to this
3    action.

4    Maine:

5    All persons and entities in Maine who indirectly purchased
     SRAM and/or products containing SRAM, for personal family
6    or household use, that was manufactured and/or sold by one
     or more of the Defendants during the Class Period.
7    Specifically excluded from this Class are the Defendants,
     the officers, directors or employees of any Defendant; any
8    entity in which any Defendant has a controlling interest;
     and any affiliate, legal representative, heir or assign of
9    any Defendant. Also excluded are any federal, state or
     local governmental entities, any judicial officer presiding
10   over this action and the members of his/her immediate
     family and judicial staff, and any juror assigned to this
11   action.

12   Massachusetts:

13   All persons and entities in Massachusetts who indirectly
     purchased SRAM and/or products containing SRAM, for end use
14   and not for resale, that was manufactured and/or sold by
     one or more of the Defendants during the Class Period.
15   Specifically excluded from this Class are the Defendants,
     the officers, directors or employees of any Defendant; any
16   entity in which any Defendant has a controlling interest;
     and any affiliate, legal representative, heir or assign of
17   any Defendant. Also excluded are any federal, state or
     local governmental entities, any judicial officer presiding
18   over this action and the members of his/her immediate
     family and judicial staff, and any juror assigned to this
19   action.

20   Michigan:

21   All persons and entities in Michigan who indirectly
     purchased SRAM and/or products containing SRAM, for end use
22   and not for resale, that was manufactured and/or sold by
     one or more of the Defendants during the Class Period.
23   Specifically excluded from this Class are the Defendants,
     the officers, directors or employees of any Defendant; any
24   entity in which any Defendant has a controlling interest;
     and any affiliate, legal representative, heir or assign of
25   any Defendant. Also excluded are any federal, state or
     local governmental entities, any judicial officer presiding
26   over this action and the members of his/her immediate
     family and judicial staff, and any juror assigned to this
27   action.

28

31

1   Minnesota:

2       All persons and entities in Minnesota who indirectly
        purchased SRAM and/or products containing SRAM, for end use
3       and not for resale, that was manufactured and/or sold by
        one or more of the Defendants during the Class Period.
4       Specifically excluded from this Class are the Defendants,
        the officers, directors or employees of any Defendant; any
5       entity in which any Defendant has a controlling interest;
        and any affiliate, legal representative, heir or assign of
6       any Defendant.  Also excluded are any federal, state or
        local governmental entities, any judicial officer presiding
7       over this action and the members of his/her immediate
        family and judicial staff, and any juror assigned to this
8       action.

9   Montana:

10      All persons and entities in Montana who indirectly
        purchased SRAM and/or products containing SRAM, for end use
11      and not for resale, that was manufactured and/or sold by
        one or more of the Defendants during the Class Period.
12      Specifically excluded from this Class are the Defendants,
        the officers, directors or employees of any Defendant; any
13      entity in which any Defendant has a controlling interest;
        and any affiliate, legal representative, heir or assign of
14      any Defendant.  Also excluded are any federal, state or
        local governmental entities, any judicial officer presiding
15      over this action and the members of his/her immediate
        family and judicial staff, and any juror assigned to this
16      action.

17  Nevada:

18      All persons and entities in Nevada who indirectly purchased
        SRAM and/or products containing SRAM, for end use and not
19      for resale, that was manufactured and/or sold by one or
        more of the Defendants during the Class Period.
20      Specifically excluded from this Class are the Defendants,
        the officers, directors or employees of any Defendant; any
21      entity in which any Defendant has a controlling interest;
        and any affiliate, legal representative, heir or assign of
22      any Defendant.  Also excluded are any federal, state or
        local governmental entities, any judicial officer presiding
23      over this action and the members of his/her immediate
        family and judicial staff, and any juror assigned to this
24      action.

25  New Mexico:

26      All persons and entities in New Mexico who indirectly
        purchased SRAM and/or products containing SRAM, for end use
27      and not for resale, that was manufactured and/or sold by one
        or more of the Defendants during the Class Period.
28      Specifically excluded from this Class are the Defendants,

United States District Court
For the Northern District of California

32

1    the officers, directors or employees of any Defendant; any
     entity in which any Defendant has a controlling interest;
2    and any affiliate, legal representative, heir or assign of
     any Defendant. Also excluded are any federal, state or
3    local governmental entities, any judicial officer presiding
     over this action and the members of his/her immediate family
4    and judicial staff, and any juror assigned to this action.

5  New York:

6    All persons and entities in New York who indirectly
     purchased SRAM and/or products containing SRAM, for end use
7    and not for resale, that was manufactured and/or sold by one
     or more of the Defendants during the Class Period.
8    Specifically excluded from this Class are the Defendants,
     the officers, directors or employees of any Defendant; any
9    entity in which any Defendant has a controlling interest;
     and any affiliate, legal representative, heir or assign of
10   any Defendant. Also excluded are any federal, state or
     local governmental entities, any judicial officer presiding
11   over this action and the members of his/her immediate family
     and judicial staff, and any juror assigned to this action.
12
   North Carolina:
13
     All persons and entities in North Carolina who indirectly
14   purchased SRAM and/or products containing SRAM, for end use
     and not for resale, that was manufactured and/or sold by one
15   or more of the Defendants during the Class Period.
     Specifically excluded from this Class are the Defendants,
16   the officers, directors or employees of any Defendant; any
     entity in which any Defendant has a controlling interest;
17   and any affiliate, legal representative, heir or assign of
     any Defendant. Also excluded are any federal, state or
18   local governmental entities, any judicial officer presiding
     over this action and the members of his/her immediate family
19   and judicial staff, and any juror assigned to this action.

20  North Dakota:

21   All persons and entities in North Dakota who indirectly
     purchased products containing SRAM, for end use and not for
22   resale, that were manufactured and/or sold by one or more of
     the Defendants during the Class Period. Specifically
23   excluded from this Class are the Defendants, the officers,
     directors or employees of any Defendant; any entity in which
24   any Defendant has a controlling interest; and any affiliate,
     legal representative, heir or assign of any Defendant. Also
25   excluded are any federal, state or local governmental
     entities, any judicial officer presiding over this action
26   and the members of his/her immediate family and judicial
     staff, and any juror assigned to this action.
27

28

United States District Court
For the Northern District of California

33

1 Pennsylvania:

2          All persons and entities in Pennsylvania who indirectly
           purchased SRAM and/or products containing SRAM, for
3          personal, family or household use, that was manufactured
           and/or sold by one or more of the Defendants during the
4          Class Period.  Specifically excluded from this Class are the
           Defendants, the officers, directors or employees of any
5          Defendant; any entity in which any Defendant has a
           controlling interest; and any affiliate, legal
6          representative, heir or assign of any Defendant.  Also
           excluded are any federal, state or local governmental
7          entities, any judicial officer presiding over this action
           and the members of his/her immediate family and judicial
8          staff, and any juror assigned to this action.

9 Puerto Rico:

10         All persons and entities in Puerto Rico who indirectly
           purchased products containing SRAM, for end use and not for
11         resale, that were manufactured and/or sold by one or more of
           the Defendants during the Class Period.  Specifically
12         excluded from this Class are the Defendants, the officers,
           directors or employees of any Defendant; any entity in which
13         any Defendant has a controlling interest; and any affiliate,
           legal representative, heir or assign of any Defendant.  Also
14         excluded are any federal, state or local governmental
           entities, any judicial officer presiding over this action
15         and the members of his/her immediate family and judicial
           staff, and any juror assigned to this action.
16
   Rhode Island:
17
           All persons and entities in Rhode Island who indirectly
18         purchased SRAM and/or products containing SRAM, for
           personal, family or household use, that was manufactured
19         and/or sold by one or more of the Defendants during the
           Class Period.  Specifically excluded from this Class are the
20         Defendants, the officers, directors or employees of any
           Defendant; any entity in which any Defendant has a
21         controlling interest; and any affiliate, legal
           representative, heir or assign of any Defendant.  Also
22         excluded are any federal, state or local governmental
           entities, any judicial officer presiding over this action
23         and the members of his/her immediate family and judicial
           staff, and any juror assigned to this action.
24
   South Dakota:
25
           All persons and entities in South Dakota who indirectly
26         purchased SRAM and/or products containing SRAM, for end use
           and not for resale, that was manufactured and/or sold by one
27         or more of the Defendants during the Class Period.
           Specifically excluded from this Class are the Defendants,
28         the officers, directors or employees of any Defendant; any

34

entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant. Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

Tennessee:

All persons and entities in Tennessee who indirectly purchased SRAM and/or products containing SRAM, for end use and not for resale, that was manufactured and/or sold by one or more of the Defendants during the Class Period. Specifically excluded from this Class are the Defendants, the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant. Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

Utah:

All persons and entities in Utah who indirectly purchased SRAM and/or products containing SRAM, for end use and not for resale, that was manufactured and/or sold by one or more of the Defendants during the Class Period. Specifically excluded from this Class are the Defendants, the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant. Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

Washington:

All persons and entities in Washington who indirectly purchased SRAM and/or products containing SRAM, for end use and not for resale, that was manufactured and/or sold by one or more of the Defendants during the Class Period. Specifically excluded from this Class are the Defendants, the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant. Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

West Virginia:

All persons and entities in West Virginia who indirectly

35

1    purchased SRAM and/or products containing SRAM, for end use
     and not for resale, that was manufactured and/or sold by one
2    or more of the Defendants during the Class Period.
     Specifically excluded from this Class are the Defendants,
3    the officers, directors or employees of any Defendant; any
     entity in which any Defendant has a controlling interest;
4    and any affiliate, legal representative, heir or assign of
     any Defendant. Also excluded are any federal, state or
5    local governmental entities, any judicial officer presiding
     over this action and the members of his/her immediate family
6    and judicial staff, and any juror assigned to this action.

7    Wisconsin:

8    All persons and entities in Wisconsin who indirectly
     purchased SRAM and/or products containing SRAM, for end use
9    and not for resale, that was manufactured and/or sold by one
     or more of the Defendants during the Class Period.
10   Specifically excluded from this Class are the Defendants,
     the officers, directors or employees of any Defendant; any
11   entity in which any Defendant has a controlling interest;
     and any affiliate, legal representative, heir or assign of
12   any Defendant. Also excluded are any federal, state or
     local governmental entities, any judicial officer presiding
13   over this action and the members of his/her immediate family
     and judicial staff, and any juror assigned to this action.
14
     District of Columbia:
15
     All persons and entities in the District of Columbia who
16   indirectly purchased SRAM and/or products containing SRAM,
     for personal, family or household use, that was manufactured
17   and/or sold by one or more of the Defendants during the
     Class Period. Specifically excluded from this Class are the
18   Defendants, the officers, directors or employees of any
     Defendant; any entity in which any Defendant has a
19   controlling interest; and any affiliate, legal
     representative, heir or assign of any Defendant. Also
20   excluded are any federal, state or local governmental
     entities, any judicial officer presiding over this action
21   and the members of his/her immediate family and judicial
     staff, and any juror assigned to this action.
22
     The following Plaintiffs are appointed as class
23
     representatives:
24
         State          Plaintiff
25
         Arizona        Lara Sterenberg
26
         Arizona        United Food & Commercial Workers Local 99
27
         Arkansas       Robert Harmon
28

36

| | California | Michael Brooks |
|---|---|---|
| 1 | California | Lawrence Markey |
| 2 | California | Roman J. Munoz |
| 3 | California | Joseph Solo |
| 4 | California | Stargate Films |
| 5 | California | United Food & Commercial Workers Local 8 |
| 6 | District of Columbia | Dona Culver |
| 7 | Florida | Ronnie Barnes |
| 8 | Florida | Ryan Edwards |
| 9 | Florida | John Pharr d/b/a JP Micro |
| 10 | Hawaii | Ramon Oyadomari |
| 11 | Hawaii | Unite Here Local 5 |
| 12 | Iowa | Herbert Harmison |
| 13 | Iowa | David Sly |
| 14 | Kansas | nXio, LLC |
| 15 | Maine | Penobscot Eye Care |
| 16 | Massachusetts | James W. Allen |
| 17 | Michigan | Matthew Frank |
| 18 | Minnesota | Fairmont Orthopedics & Sports Medicine, P.A. |
| 19 | Minnesota | Reclaim Center, Inc. |
| 20 | Montana | Henry Kornegay |
| 21 | Montana | Our Montana, Inc. |
| 22 | Nevada | Culinary Workers Union Local 226 |
| 23 | Nevada | Allen Robert Kelley |
| 24 | New Mexico | Daniel Yohalem |
| 25 | New York | Rodrigo Bazan Gatti |
| 26 | New York | CHP Media, Inc. |

United States District Court
For the Northern District of California

37

|   |   |   |
|---|---|---|
| 1 | North Carolina | Curtis Hogue, Jr. |
| 2 | North Dakota | Ward Cater |
| 3 | Pennsylvania | Beth O'Donnell |
| 4 | Puerto Rico | Carlos R. Carrillo |
| 5 | Puerto Rico | Javier Oyola-Alemany |
| 6 | Rhode Island | Kevin Kicia |
| 7 | South Dakota | Mitch Mudlin |
| 8 | Tennessee | Frank C. Warner |
| 9 | Utah | Christopher K. Giauque |
| 10 | Washington | Christopher Smith |
| 11 | West Virginia | Donna Hark |
| 12 | West Virginia | David Loomis |
| 13 | Wisconsin | Mark and Shannon Schneider |
| 14 | Wisconsin | Christopher J. Stawski |

15   The Court appoints Zelle Hofmann Voelbel & Mason LLP as class
16 counsel for IP Plaintiffs.  Class counsel for IP Plaintiffs shall
17 prepare and submit within thirty days from the date of this Order a
18 proposed form of notice to be sent to members of the Class.
19 Defendants may file any comments to the notice within fifteen days
20 and IP Plaintiffs may reply fifteen days thereafter.  Defendants
21 shall prepare and submit to the Court and to counsel for IP
22 Plaintiffs within thirty days from the date of this Order a list of
23 names and addresses of all Class Members who can be identified with
24 diligent effort.

25   The Court denies Defendants' motions to exclude the expert
26 opinions and rebuttal opinions of Drs. Mark Dwyer and Michael
27 Harris (Docket Nos. 706 and 797); and denies IP Plaintiffs' motion
28 to exclude the expert opinion of Dr. Michelle Burtis (Docket No.

United States District Court
For the Northern District of California

799).

    IT IS SO ORDERED.

Dated: 11/25/09

CLAUDIA WILKEN
United States District Judge

39