Hon. Charles A. Legge (Ret.)
JAMS
Two Embarcadero Center, Suite 1500
San Francisco, CA 94111
Telephone: (415) 982-5267
Fax: (415) 982-5287
Special Master

JAMS

IN RE: CATHODE RAY TUBE (CRT)
ANTITRUST LITIGATION

CRAGO, INC., et al.,

        Plaintiffs,

    vs.

CHUNGHWA PICTURE TUBES, LTD., et al.,

      Defendants.

_____

This Document Relates to All Cases

No. 07-5944 SC

**MDL No. 1917**

**JAMS Reference No. 1100054618**

**REPORT, RECOMMENDATIONS
AND TENTATIVE RULINGS
REGARDING DEFENDANTS'
MOTIONS TO DISMISS**

*Table of Contents*

PROCEDURE_____2

GENERAL ORGANIZATION OF THIS REPORT _____3

THE RELEVANT PRODUCTS _____3

PLEADING A CONSPIRACY _____7

    A.  Legal Standard_____7

    B.  The Direct and Indirect Complaints_____9

ALLEGATIONS AGAINST SEPARATE DEFENDANTS _____11

    A.  Legal Standard_____11

    B.  The Indirect Purchaser Complaint_____13

    C.  The Direct Purchaser Complaint_____15

THE FOREIGN TRADE ANTITRUST IMPROVEMENTS ACT_____16

ANTITRUST STANDING _____18

STATUTES OF LIMITATION _____19

    A.  Legal Standard_____19

    B.  The Direct Case_____22

    C.  The Indirect Case_____22

WITHDRAWAL_____24

STATE LAW CLAIMS IN THE INDIRECT CASE _____27

    Nebraska_____28

    Nevada_____29

    Hawaii_____29, 31

    Massachusetts_____29

    New York_____30, 32

    Rhode Island_____30

    Michigan_____31

    Kansas_____31

SUMMARY OF RECOMMENDATIONS_____33

Appendix A_____35

Appendix B_____36

Hon. Charles A. Legge (Ret.)
JAMS
Two Embarcadero Center, Suite 1500
San Francisco, CA 94111
Telephone: (415) 982-5267
Fax: (415) 982-5287
Special Master

JAMS

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | No. 07-5944 SC |
| | MDL No. 1917 |
| CRAGO, INC., et al., | JAMS Reference No. 1100054618 |
| Plaintiffs, | |
| vs. | **REPORT, RECOMMENDATIONS AND TENTATIVE RULINGS REGARDING DEFENDANTS' MOTIONS TO DISMISS** |
| CHUNGHWA PICTURE TUBES, LTD., et al., | |
| Defendants. | |
| This Document Relates to All Cases | |

To the Honorable Samuel Conti, United States District Judge:

The undersigned Special Master submits this report, recommendations and tentative rulings on the motions to dismiss which have been filed by the defendants in both the direct purchaser case and the indirect purchaser case.

The jurisdiction to make recommendations with respect to these motions has been vested in the undersigned by orders issued by the Court on June 16, 2008 and April 8, 2009. More

1

specifically, the order of April 8 2009 provides that, "all motions that will be filed in this litigation are referred to Judge Legge who will issue recommendations and tentative rulings on the motion."

PROCEDURE

Consolidated amended complaints were filed in both the direct and indirect actions on March 16, 2009. The words "complaint" or "complaints" in this report refer to those consolidated amended complaints.

Defendants have filed motions to dismiss both complaints. In each case there is a joint motion filed by substantially all of the defendants, and some separate motions by defendants who raise matters individual to them. The moving defendants in the direct action are listed in appendix A, taken from the proposed form of order submitted by defendants. The moving defendants in the indirect action are listed in appendix B, taken from defendants' proposed form of order. The names in the two appendices do not include defendants who have subsequently been dismissed or have other arrangements for their motions.

Plaintiffs filed oppositions to all of the motions, and defendants then filed closing briefs. The briefs and supporting papers on the motions are, to say the least, extensive. [1]

The motions were heard together on October 5, 2009. The arguments were recorded by a court reporter. At the end of the hearings, the motions were submitted for decision. Some later authorities and supporting papers were filed by some of the parties.

---

[1] The two amended complaints total 140 pages, and the briefs total almost 700 pages.

It was stipulated by the parties that (together with subsequently granted continuances) the date for the completion of this report, recommendations and tentative rulings is February 8, 2010.

## GENERAL ORGANIZATION OF THIS REPORT

The sections of this report are the issues raised by the moving defendants, although not necessarily in the order raised by them. In each section, where possible this report will discuss both the direct purchaser complaint and the indirect purchaser complaint, because many of the issues are common to both. Where appropriate, the report will cite to the paragraphs of the respective consolidated amended complaints ("DC" and "IC"). In each section, the issues raised in the joint motion will usually be considered first, and the separate issues as appropriate.

Because of the volume of the complaints and briefs, this report must combine and synthesize the contentions, without mentioning every party's arguments and authorities; but hopefully without omitting any material points.

The recommendation as to each issue will be stated at the end of the section on that issue. The recommendations will all be restated in the last section of the report.

## THE RELEVANT PRODUCTS

Defendants contend that both complaints allege a conspiracy only as to CRTs, and not as to the products into which the CRTs are assembled and sold through the chain of distribution. Identifying which products are the subject of the alleged conspiracy underlies the analysis of many of the grounds for defendants' motions; e.g. adequacy of pleading, jurisdiction, standing, Illinois Brick, statutes of limitation, application of state laws, and certain of the allegations against each defendant.

It is apparent that the CRTs are manufactured abroad and are sold to foreign other-equipment manufacturers, which incorporate the CRTs into their products, such as computers and television sets. And it is the assembled products containing the CRTs which are then sold into the United States through the chain of distribution, and are ultimately sold and purchased in retail markets of the United States. Apart from the CRTs being contained in the assembled products, there is apparently no separate market for CRTs in the United States.

Plaintiffs have the right to control their own complaints, and they are free to allege whatever products they can ultimately prove have been the subject of a price fixing conspiracy. And it is apparent from the face of both complaints that plaintiffs are attempting to allege a conspiracy as to <u>both</u> the CRTs themselves ("CRTs") <u>and</u> the products into which they are incorporated ("CRT Products"). Both complaints are replete with allegations regarding both product lines. And the complaints repeatedly make allegations regarding both products in the same paragraphs. For example:

The two products, "CRTs" and "CRT Products" (and some subsets thereof) are specifically identified and discussed in the very first paragraph of the DC.  In identifying price fixing activities, CRT Products are expressly mentioned in paragraphs 4, 5 and 6 of the DC. In paragraphs 11 through 23 of the DC, plaintiffs identify their purchases from defendants as being purchases of CRT Products. And in their allegations of the manufacture, distribution and sale by each defendant or group of defendants, DC paragraphs 24 through 80, CRT Products are expressly discussed. The class allegations of the DC, paragraphs 85 through 92 encompass CRT Products. The trade and commerce allegations in paragraphs 96 and 97 of the DC refer to CRT products.

In the conspiracy allegations, in the section "Collusive Contracts, Meetings, and Agreements Among Members of the CRT Products Industry," the DC in paragraphs 134 through 153 include CRT Products.  For example, paragraph 138 of the DC alleges agreements and activities among the defendants "With respect to CRT Products...."

The allegations of the indirect complaint are parallel to the direct complaint. The IC identifies "CRT Products" as being a subject matter of the antitrust allegations; paragraphs 1, 2 and 3. CRT Products are expressly referred to in the allegations of: the effects on commerce (paragraphs 10 through 12); the definitions of the products (paragraphs 14 and 15); plaintiffs' purchases (paragraphs 19 through 49); and defendants' manufacturing, distribution and sale directly or indirectly in the United States (paragraphs 50 through 107). More specifically, paragraphs 140 through 188 state that allegedly illegal agreements were entered into by the defendants with respect to CRT Products. The alleged Sherman Act violations expressly refer to the CRT Products (paragraphs 244 thought 251). And the allegations of state law violations also include CRT Products (paragraph 255 through 283).

There can be no doubt from the multiple allegations stating "CRT Products" that those products, and not just the CRTs alone, are the products alleged by plaintiffs to be subject to the conspiracy charged in both complaints.

Defendants nevertheless argue that the complaints allege only anti-competitive agreements concerning CRTs (defendants' joint motions to dismiss the direct action, page 6, and the indirect action, page 1). That distinction underlies most of defendants' grounds for dismissal in these motions. That is, the success of their argued grounds depend upon defendants' establishing their contention that the complaints allege only "CRTs" and not "CRT Products."

However, defendants' "CRTs only" distinction is contrary to the repetitive allegations of defendants' conduct regarding "CRT Products," and to their distribution, purchase and sale in the United States. Defendants attempt to construe plaintiffs' complaints as alleging only an <u>effect</u> on the prices of the finished products in the United States. But that contention ignores the repeated allegations in the complaints regarding "CRT Products" being a subject of the conspiracy.

Defendants even say that paragraph 138 of the direct complaint alleges only a "<u>CRTs</u> (not Finished Products)" conspiracy; page 4 lines 5-7 of the direct motion. But that ignores that paragraph 138 expressly begins with the words: "With respect to CRT Products…." Having reviewed the complaints paragraph by paragraph, the Special Master disagrees with defendants' argument that plaintiffs allege only a conspiracy regarding prices "at which CRTs (not 'Finished Products') were sold…" That is an incorrect reading of the obviously intended scope of the complaints.

Defendant's cite to some paragraphs of the complaints that do not expressly say "CRT Products;" <u>e.g.</u> paragraphs 145 through 154 of the DC and paragraphs 152 through 155 of the IC. However, not every paragraph of such lengthy complaints need repeat the same words. The complaints must be viewed as a whole. And the paragraphs immediately preceding and following those paragraphs do expressly say "CRT Products."

There is no doubt to this Special Master that both complaints on their face attempt to and do allege a conspiracy to fix the prices of CRT Products, as well as CRTs themselves. And, there is nothing legally wrong with plaintiffs defining their product market in that way.

The Special Master recommends that the Court find that the complaints allege a conspiracy involving CRT Products as well as CRTs.

The Special Master believes that what defendants are really contending is not just that CRT Products are not alleged to be a subject of the conspiracy, but rather that plaintiffs have not adequately alleged such a conspiracy under the pleading standards discussed below. The Special Master will now turn to those grounds for defendants' motions to dismiss.

## PLEADING A CONSPIRACY

Defendants contest the sufficiency of plaintiffs' allegations of conspiracy under the recent United States Supreme Court decisions of Bell Atlantic vs. Twombly 550 U.S. 544 (2007), and Ashcroft vs. Iqbal, 129 S. Ct. 1937 (2009).

A. Legal Standard

The standard for that requirement, and hence for this court's inquiry, is Rule 8 of the Federal Rules of Civil Procedure; that is, giving fair notice to the defendants of what the claim against them is and the grounds upon which it rests; Twombly p. 555; Iqbal p. 1949; see also Erickson v. Pardus, 551 U.S. 89 (2007).

The Supreme Court in Iqbal summarized the decision and conclusions to be drawn from Twombly:

> "To survive a motion to dismiss, a complaint must contain sufficient
> factual matter, accepted as true, to 'state a claim to relief that is plausible at its
> face.' A claim has facial plausibility when the plaintiff pleads factual content that
> allows the court to draw the reasonable inference that the defendant is liable for
> the misconduct alleged." Pg. 1949.

The Court also stated that pleading legal conclusions is not enough, but rather they must be supported by factual allegations:

"When there are well pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Pg. 1950.

Research has not disclosed any relevant Ninth Circuit cases interpreting those Supreme Court decisions in antitrust conspiracy litigation. However, there have been numerous decisions of this district doing so: TFT-LCD (Flat Panel) Antitrust Litigation (Judge Ilston), 586 F. Supp. 2d 1109 (2008) ("TFT-LCD I"), and 599 F. Supp. 2d 1179 (2009) ("TFT-LCD II"); Static Random Access Memory (SRAM) Antitrust Litigation (Judge Wilken), 580 F. Supp. 2d 896 (2008); Rubber Chemicals Antitrust Litigation (Judge Jenkins), 504 F. Supp. 2d 777 (2007); Flash Memory Antitrust Litigation (Judge Armstrong), 643 F. Supp. 2d 1133 (2009); and Graphic Processing Units Antitrust Litigation (Judge Alsop), 527 F. Supp. 2d 1011 (2007) ("GPUI"), and 540 F. Supp. 2d 1085 (2009) ("GPUII").

The Rubber Chemicals case cited the Twombly standard that the face of the complaint must sufficiently allege facts that "suggest a right to relief that is more than merely conceivable, but plausible on its face;" p. 780. The decision in TFT-LCD I, a year after Rubber Chemicals, contains a more elaborate discussion of the Twombly requirements. The court again found the standard to be based upon FRCP Rule 8 (pp. 1114-1115). The court held that the plaintiffs' complaint was adequate, citing the following allegations from the compliant: Complex and unusual pricing practices by the defendants, not explained by the forces of supply and demand; a pre-conspiracy market of declining prices because of advances in technology and efficiencies; new companies entering the market, resulting in increased competition; unnatural and sustained price stability; certain periods of substantial increase of prices; compression of price ranges; and

manipulation of production capacity; pp 1115-16. The court said that "allegations of such unusual pricing practices state a cause of action under <u>Twombly</u>." p 1116. Similar allegations are part of the DC and IC.

The decision in SRAM is consistent. The court there noted the allegations that SRAM products were susceptible to price fixing because of various market factors (page 899), as does the DC and the IC. And the court considered the Department of Justice's actions against the defendants, even in <u>other</u> litigation, as being relevant to an inference of the conspiracy alleged in the challenged complaint (page 903). The court also grounded its decision on FRCP Rule 8, and stated that the rule does "not require a claimant to set out in detail the facts upon which it bases its claims" (page 900). That complaint, as do the DC and IC, included a number of allegations of actual meetings and communications. The court concluded that the plaintiffs had pled sufficient facts to plausibly suggest a price fixing conspiracy.

B. <u>The Direct and Indirect Complaints</u>

The cited decisions in this district, all of which ultimately upheld complaints under <u>Twombly</u>, support the adequacy of the two complaints at issue here. The present complaints are not, as <u>Twombly</u> was, just an allegation of parallel business conduct where the inquiry was to see if there was additional evidence to support the charge that the parallel conduct was the result of an agreement. Here we have extensive allegations of meetings, communications, and agreements to fix prices and production levels. Those allegations ultimately have to be proved, but for pleading purposes such communications, meetings and agreements are certainly alleged.

In the DC, there are also allegations of governmental antitrust investigations and pleas (paragraphs 124-133), of specific meetings, conversations and participants, of the exchanging of pricing information, of the giving of price quotations in accordance with agreements reached,

and of taking steps to conceal the conspiracy through various means. More precise factual allegations of the contacts, meetings and agreements are set forth in paragraphs 134-153. While the Special Master has not yet addressed the arguments by certain defendants that they are not specifically connected to the allegations (see next section), paragraphs 134-153 contain factual allegations of the conduct of the conspiracy. These allegations are not merely <u>suggestive</u> of a conspiracy, but rather they directly charge one.  Defendants can hardly say that they do not have notice, under the Rule 8 standard, of what is being charged against them.

Similarly in the indirect complaint, plaintiffs have alleged the structure of the CRT product market and its susceptibility to price fixing arrangements (paragraphs 121 through 139). The complaint also alleges specific agreements and actions by the defendants to fix prices and production levels, (paragraphs 140 through 188). Those allegations need not be quoted in detail. Suffice it to say that they allege meetings, locations, dates, types of meetings, specific agreements reached at the meetings, and the participation of specific defendants. For example, paragraphs 166 through 168 allege dates, companies, and some persons present and participating in the conspiracy. The complaint alleges unusual price movements which are contrary to principles of supply and demand (paragraphs 192 though 202). Governmental antitrust investigations are also cited (paragraphs 203 through 221).

The Special Master finds and concludes that both the direct and the indirect complaints make allegations which meet the requirements of <u>Twombly</u> and <u>Iqbal</u>, and also follow the guide of the other courts in this district which have reviewed similar allegations. There are allegations of specific facts, and not just labels or generalities. And the alleged facts, if true, certainly lead to a plausible claim of antitrust violations under section 1 of the Sherman Act. And the allegations

comply with the requirements of Rule 8 that defendants be given adequate notice of the charges against them.

The Special Master recommends that the Court deny defendants' motions to dismiss based on <u>Twombly</u> and <u>Iqbal</u>.

## ALLEGATIONS AGAINST SEPARATE DEFENDANTS

The Special Master now turns to the question of whether there are adequate allegations against the separate defendants asserting that each is a participant in the conspiracy, and that the requirements of Rule 8 are satisfied.

Defendants assert in their joint motions, and in several of their separate motions, that the DC and IC do not sufficiently allege the participation of <u>each</u> defendant in the conspiracy.

A.   <u>Legal Standard</u>

The requirement of separate pleading against each defendant in an alleged antitrust conspiracy does not find its genesis in <u>Twombly</u>. <u>Twombly</u> does not define such a requirement, but addresses the sufficiency of conspiracy allegations generally. Nor does <u>Iqbal</u> expressly state such a requirement.

However, other cases, including several in this district, have discussed the need for individual allegations in antitrust conspiracy cases. In <u>TFT-LCD I</u>, the court granted motions to dismiss as to certain defendants because the first complaint was insufficient to put them on notice of the claims. Again, the genesis of that principle is Rule 8's requirement of adequate notice. The court agreed with plaintiffs that a complaint need not contain detailed "defendant by defendant" allegations and "need not plead each defendant's involvement in the alleged conspiracy in elaborate detail" (pages 1116-17). The court defined the obligation as including

charges alleging each defendant's role in the alleged conspiracy (page 1117). The court granted leave to amend, and the amended complaints came back before the court in TFT-LCD II. The court then found that the amended complaints sufficiently alleged anti-competitive conduct (page1184). The court emphasized that neither Twombly nor the court's prior order required "elaborate fact pleading." And the amended complaint added sufficient facts about illicit conspiratorial communications among the defendants. The complaint also alleged guilty pleas entered by four defendants. The court noted that the amended complaints contained additional specific information about the meetings by which the alleged price fixing conspiracy was accomplished. And there were allegations about bilateral discussions and various types of meetings. Even if complaints do not differentiate among related corporate entities, if a conspiracy is allegedly organized at the highest level of the defendant organization and is carried out by subordinates, that is sufficient (pp 1184 - 1185).

In SRAM, this district also upheld the sufficiency of conspiracy allegations against the defendants' arguments that plaintiffs had to allege how each individual defendant participated (page 904). The court commented that such a requirement is more consistent with the standard for a motion for summary judgment than a motion to dismiss; id. The court said that plaintiffs at the pleading stage need only "make allegations that plausibly suggest that each Defendant participated in the alleged conspiracy." (Id.) (emphasis added).

In Brennan vs. Concord EFS Inc., 369 F Supp 2d 1127 (2005) Judge Walker dismissed a complaint against two alleged conspiracy defendants because the complaint did not contain allegations connecting them to the conspiracy. The reasoning was that the complaint "does not give fair notice under FRCP 8" to the defendants or to the court of the role that they are alleged to have played in the conspiracy (page 1137).

The Special Master concludes from the cases in this district that "each defendant" pleading is not a rule requiring detailed recitation, but is to be evaluated under the principle of the adequacy of fair notice to the defendants. With that as the guide, it is of course possible that a complaint, even if lacking repetitive allegations naming each defendant, might as a whole supply the requisite notice. It is also plausible for pleading purposes that where an allegation is made that the parent corporation of a corporate family was a participant in a conspiracy, that the subsidiaries followed the directions of the parent. And in this circuit an allegation of corporate agency and control may be enough; Weinstein vs. Saturn, 303 Fed. Appx. 424 (9th Cir 2008). The context is the entire complaint. As stated by the U.S. Supreme Court, "The character and effect of a Sherman Act conspiracy are not to be judged by dismembering it and viewing its separate parts, but only by looking at it as a whole." Continental Ore, v. Union Carbide 370 US 690 (1962) at 698-99.

### B.   The Indirect Purchaser Complaint

In the indirect action, the defendants who are separately moving to dismiss are listed on page 1 of plaintiffs' opposition brief. They are here identified by their corporate groups: Panasonic, Samsung, Hitachi, LG, Phillips, Toshiba, and BMCC.

The Special Master notes some of the paragraphs of the IC allegations:

164: Defendants Hitachi, Toshiba, Panasonic and others attended certain meetings and met bilaterally with other defendants for the purpose of communicating pricing or output agreements.  165: Samsung had a relationship with Hitachi and communicated CRT Product pricing agreements to Hitachi. LG had a relationship with Toshiba and communicated CRT Product agreements to Toshiba. Hitachi, Toshiba and Samtel implemented the agreed upon

pricing as conveyed to them, and they sometimes attended the meetings. 166: Samsung (through its member companies) participated in at least 200 meetings. Some of these were attended by the highest ranking executives of Samsung. 168: LG participated in at least 100 meetings at all levels. After 2001, it participated in the conspiracy through its joint venture with Phillips. Some of these meetings were attended by the highest ranking executives of LG. 170: Defendant Phillips (through its related companies) participated in at least 100 glass meetings at all levels. Some of the meetings were attended by high level executives. Toshiba participated in several of the meetings and after 2003 participated through its joint venture with Panasonic. Toshiba also engaged in multiple bilateral discussions with other defendants, particularly LG. 178: Other Toshiba entities were represented at the meetings. 179: Hitachi (through its other entities) participated in several meetings, attended by high level sales managers from Hitachi. And Hitachi also engaged in bilateral discussions with other defendants, particularly Samsung. 181: Panasonic Corporation and Matsushita participated in meetings and in bilateral discussions, and after 2003 through a joint venture with Toshiba.

Those allegations should also be considered together with the specific allegations identifying the defendant entities in paragraphs 50 through 109.

The Special Master concludes that each of the moving defendants has more than adequate <u>notice</u> of what that defendant is charged with. Even though each member of a corporate family may not have its name and acts recited in the complaint, for pleading purposes each defendant has notice of the products, time frames, meetings, subject matters, other participants, locations, and alleged conduct. And each is able to question its personnel and search its records for available information based upon the allegations of the complaint. This is sufficient to serve the principle of Rule 8. If any defendant claims that it was <u>not</u> a member of the

conspiracy, it can do so by a denial, and then after some factual development make an appropriate motion.

### C.   The Direct Purchaser Complaint

In the direct action, the defendants who have filed separate motions to dismiss are identified in footnote 15 on pages 28 and 29 of their joint motion.[2] They are here identified by their company groups: Panasonic, LG, BMCC, Samtel, Hitachi, Toshiba and Samsung.

Plaintiffs' opposition brief directly responds to the adequacy of the allegations against each defendant or defendant group on pages 45 through 117. Plaintiffs identify the allegations by the specific paragraphs of the complaint. The Special Master believes that plaintiffs have made the necessary showing, and that each allegation as to each defendant need not be repeated in this report.

Some of the motions are also answered by the rulings recommended above: that the complaint alleges a conspiracy as to CRT Products as well as to CRTs; that the conspiracy allegations are sufficient under Twombly; and that the alleged facts reasonably infer a plausible price fixing conspiracy.

Defendants' arguments about not stating a claim against each defendant puts form over substance. That is, defendants would apparently be satisfied only with a complaint that made separate allegations against each defendant, and in each allegation repeated all of the necessary facts which plaintiffs must prove. But the principle underlying the pleading requirement is not formalistic exposition. Rather, as has been cited several times above, it is Rule 8's requirement

---

[2] The motions do not argue just Twombly, but also the requirement to charge each defendant.

of giving a defendant fair notice as to what it is being charged with, so that it can prepare to defend itself. The key is notice, not articulation.

One cannot read the DC without concluding that each defendant, or at least each defendant group and many of the individual companies within each group, has adequate knowledge that it is being charged with: fixing prices, during a certain time period, of certain products, by virtue of meetings which it allegedly attended, and by communications in which it allegedly participated, and by agreements it allegedly made with other defendants (many of whom are specifically named). There is certainly adequate information for each defendant to examine its personnel, and to search its documents and databases. And each defendant would then know enough to be able to plead, to assert a denial, to allege affirmative defenses, and to prepare for motions if appropriate.

The purpose of the "each defendant" requirement has been satisfied. If some defendants, whether they are individual defendants, defendant groups, or individual defendants within a group, conclude that they did not participate in the charged activities, they are free to assert that defense and put plaintiffs to their burden of proof.

The Special Master therefore recommends that the Court deny the defendants' motions to dismiss based upon an argued failure to adequately plead against "each defendant."

THE FOREIGN TRADE ANTITRUST IMPROVEMENTS ACT

Defendants move to dismiss both cases on the ground that there is no jurisdiction under the Sherman Act. The defendants' argument is that United States laws cannot apply to a wholly foreign conspiracy. That argument is based upon 15 U.S.C. Section 6a, The Foreign Trade Antitrust Improvements Act. That section provides that the Sherman Act shall not apply to "conduct involving trade or commerce (other than import trade or import commerce) with

foreign nations unless… (1) such conduct has a direct, substantial and reasonably foreseeable effect" on (A) [U.S. commerce]. By that section, Congress sought to deprive the federal courts of jurisdiction over purely foreign activity that would otherwise violate the Sherman Act.

The section is somewhat awkward in its language.  It initially creates a general rule placing activity involving foreign commerce outside of the reach of the Sherman Act. However, it specifically excludes from that prohibition "import trade or import commerce." And it then permits Sherman Act jurisdiction over foreign commerce where the conduct "has a direct, substantial and reasonably foreseeable effect" on domestic commerce, and if the conduct gives rise to an antitrust claim. See Hoffmann-LaRoche vs. Empagran, 542 U.S. 155 (2004). The underlying principle is that the U.S. antitrust laws are for the regulation of American commerce, including American sellers and consumers, and not for the regulation of wholly foreign commerce.

In an attempt to apply that statute to these cases, defendants again return to one of their principal arguments discussed above; that is, that the alleged conspiracy encompasses only CRTs (which were manufactured and sold only among foreign companies), rather than encompassing CRT Products, which were imported into the United States and sold extensively here. But as stated in the discussion of that issue above, these two complaints do allege antitrust violations regarding CRT Products as well as CRTs themselves. And the complaints do allege that CRT Products manufactured by the defendants were imported into the United States, and bought and sold in United States trade and commerce, to American distributors and consumers at allegedly artificial prices.

Both complaints allege claims for purchases of CRT Products in the United States, at prices artificially inflated by defendants, and with an impact on United States prices for those

products. And the alleged classes are limited to entities that purchased CRT Products in the United States. And indeed, the complaints contain numerous allegations about conduct in the United States facilitating the conspiracy. These are not cases of foreign plaintiffs attempting to use United States courts and United States antitrust laws to seek redress for injuries brought about by foreign commerce.

The Special Master therefore recommends that the Court deny the defendants' motions to dismiss based upon the FTAIA. And as a result of plaintiffs' compliance with the FTAIA, the alleged claims are not barred by the Supremecy Clause or the Commerce Clause of the United States Constitution; see fn. 6 on p. 13 of the motion to dismiss the IC.

ANTITRUST STANDING

Defendants also move to dismiss based upon an argument of plaintiffs' supposed lack of standing under <u>Associated General Contractors of California vs. California State Council of Carpenters</u>, 459 U.S. 519 (1983), and <u>Illinois Brick Co. vs. Illinois</u>, 431 (1977). However, that argument is based in turn upon defendants' perception that the complaints allege a price fixing conspiracy only as the CRTs. And, the Special Master interprets the complaints as alleging a conspiracy as to CRT Products as well.

Both complaints allege that plaintiffs have purchased CRT Products from the defendants. The allegation is that because the prices at which they purchased the products were inflated by the alleged conspiracy, plaintiffs have suffered antitrust injuries and their claimed injuries are not remote under <u>A.G.C.</u> And because the plaintiffs in the direct case purchased CRT Products from the defendants, they are not indirect purchasers under <u>Illinois Brick</u>. The plaintiffs in the indirect case are admittedly indirect purchasers, and their complaint is written accordingly. They have

alleged the elements of standing under <u>A.G.C.</u> And their standing under the state laws are measured by the scope of the states' "repealer" statutes.

In addition, plaintiffs have adequately pled standing to bring their injunctive claims under section 16 of the Clayton Act. The requirements for antitrust standing for section 16 relief are less restrictive than for section 4 standing. <u>In re: Warfarin Sodium Antitrust Litigation</u>, 214 F. 3d 395 (3d Cir 2000).

The Special Master therefore recommends that defendants' motion based upon the argument of plaintiffs' lack of standing be denied.


STATUTES OF LIMITATION

Defendants move to dismiss on grounds of the statutes of limitation. The federal allegations in the two complaints are governed on this issue by the Clayton Act, and the state statutes of limitation are applicable to the state law claims in the indirect case.

A.  <u>Legal Standard</u>

On the Sherman Act charges, the defendants move to dismiss plaintiffs' claims which accrued before November 26, 2003, unless they meet the requirements for the pleading of tolling.

It is clear that the Clayton Act bars claims for antitrust injuries based upon sales that occurred more than four years prior to the filing of the first complaint. In this case the first complaint was filed on November 26, 2007. Therefore, any claims accruing from sales prior to November 26, 2003, are time barred unless the statute is tolled. Apparently some defendants were not named until as recently as March 26, 2009, the date of the filing of the consolidated amended complaints. But the principle is the same. That is, claims from activities prior to four

years before the filing of the first complaint against such a defendant are barred, unless the statute is tolled.

There appears to be little or no dispute in these motions as to the federal statute of limitations or its operation. Nor is there any doubt that many of the allegations of the complaints charge activities prior to November 26, 2003. So the motions focus on whether there are adequate allegations of fraudulent concealment to toll the statute of limitations to a later date.

The plaintiffs contend that their complaints adequately allege fraudulent concealment, which tolls the statute to the date on which plaintiffs discovered, or in the exercise of reasonable diligence should have discovered, defendants' illegal activities. Plaintiffs claim that date is November 26, 2007, when the United States' antitrust investigation of this industry first became public. The fraudulent concealment allegations are in paragraphs 200 through 212 of the direct purchaser complaint, and paragraphs 288 through 291 of the indirect complaint.

As with other issues in these motions, we have the guidance of decisions of other courts in this district in substantially identical settings. TFT-LCD I, SRAM, Rubber Chemicals, and TFT-LCD II.

In TFT-LCD I the court did an extensive analysis of the requirements for pleading tolling. As in this case, the defendants there asserted the statute of limitations, and the issue became the pleading of fraudulent concealment. The court cited Conmar Corporation vs. Mitsui & Company, 858 F. 2d 499 (9th Cir. 1988) as its guide, stating that a plaintiff alleging fraudulent concealment must plead with particularity "the circumstances of the concealment and the facts supporting [the plaintiff's] due diligence" (p. 1119). The court also cited Rubber Chemicals that fraudulent concealment is fact-intensive and is generally inappropriate to resolve such issues on a motion to dismiss (p. 1120).

The district court reviewed the allegations of the TFT-LCD complaints, which were similar to those in this case, and stated that both the direct and indirect complaints adequately alleged acts of concealment, including offering pretextual reasons for the price fixing meetings and price increases (pages 1119-1120 and 1132). See also, SRAM.

Defendants' motions emphasizes that plaintiffs have not alleged fraudulent concealment on a defendant-by-defendant basis. Defendants are correct in that respect.  And they are also correct that the pleading of fraudulent concealment is not governed solely by FRCP Rule 8, but also by the stricter pleading requirements of RCP Rule 9(b).  And defendants have cited some decisions in this circuit or district that have used the word "each" with respect to the required pleading of fraudulent concealment.  But those decisions have not been in the context of a large international conspiracy as is this case.  The requirement of individualized pleading must be tempered by the circumstances, so as not to divert the rule away from its principle and make it into a writing exercise.

It is one thing to compel the plaintiffs to plead that each defendant is a part of the conspiracy. It is another to require the plaintiffs to plead facts as to what each defendant did within the conspiracy, including concealment. And indeed, such a requirement would be contrary to a general principle of conspiracy law that once a party becomes a member of a conspiracy he is bound by all of the acts of the other conspirators. We must also not lose sight of the fact that the complaints contain many well pleaded allegations, against numerous of the named defendants, of their participation in the conspiracy. And application of the pleading requirements for fraudulent concealment must recognize that by their very nature the acts of fraudulent concealment would not be readily apparent to even a diligent investigation by plaintiffs, and particularly not in the details of which defendants did what in order to conceal.

The Special Master is of the opinion that the requirement of "each defendant" pleading in a fraudulent concealment context must be tempered by the realities of the particular case, in these cases the very extensive pleadings regarding the activities of the defendants in the complaints as a whole.

## B.  The Direct Case

With these guides in mind, the Special Master believes that plaintiffs' allegations of fraudulent concealment in the direct case are adequate. Plaintiffs have alleged that the acts of the defendants were wrongfully concealed and carried out in a matter that precluded detection. Paragraphs 137, 138, 148, 153, 154, 195, 200-212. The allegations contain references to certain of the individual defendants (albeit not all) participating in the fraudulent concealment (e.g. paragraphs 209 and 210). And numerous other portions of the complaint allege the activities of the conspiracy and its participants.

Defendants cite to allegations in the complaint that the structure of the industry was conducive to a possible conspiracy, as being an indication that plaintiffs were "on notice" and did not exercise reasonable diligence. However, what plaintiffs must be aware of is not just the structure of their industry, but of some facts or at least indications that there was actually anticompetitive conduct going on. And the portions of the complaints cited by defendants do not really indicate whether the acts were known at the time, or did not become known until after plaintiffs became aware of the alleged conspiracy in 2007.

## C.    The Indirect Case

To the extent that the indirect plaintiffs also allege a Sherman Act violation, the above discussions regarding the statute of limitation and tolling are applicable. However, as to

plaintiffs' allegations of violations of <u>state</u> law, the periods of limitation are defined by each state's statute, and are primarily measured back from the date that a defendant was first named in a complaint. The state statutes alleged in the indirect complaint have varying lengths --- three years, four years and six years. All of those twenty two state statutes are cited on page 42 of defendants' motion. And defendants assert that the first indirect complaint was filed on November 13, 2007.

Without attempting to define just what claims defendants want dismissed under the state statutes (other than "all"), both sides to these motions again focus on the sufficiency of the tolling allegations. That is again the issue of the pleading fraudulent concealment.

Defendants argue that plaintiffs must meet the standard of each state for the pleading of fraudulent concealment as to that state statute. That is essentially correct. But both sides argue the issues of fraudulent concealment in a more general manner. Defendants argue (pg 43 of the motion) essentially similar pleading standards as discussed above in the direct case.

The tolling allegations of the indirect complaint are contained in paragraphs 288-291, including the numerous subsections of paragraph 290. Defendants argue that those are insufficiently general allegations. But those sections specifically allege <u>additional acts</u> by the conspirators to hide their activities (albeit not naming each defendant). Particularly as alleged in paragraph 290, the defendants agreed:  not to discuss their activities in public, or the nature or substance of their communications; to expel anyone who might do so; to limit the number of representatives attending the meetings; to refrain from listing individual representatives; to refrain from taking minutes of the meetings, or any kind of written notes; to give false or pretextual reasons for their price changes; to describe price changes falsely as being the result of external costs; to agree among themselves on what to tell their customers; to delegate which

defendant would talk to which customers; to quote some higher prices to certain customers; to agree on public statements regarding capacity and supply; and to edit their expense reports which might reveal the existence of their meetings. The activities of the defendants in participating in the conspiracies are identified in paragraphs 164 through 188.

Paragraph 289 specifically alleges the lack of discovery and the exercise of due diligence.

As did the defendants in the direct motion, the indirect defendants also refer to allegations of certain information which was publically available, in order to argue plaintiffs' lack of due diligence and constructive knowledge. However, arguments about observable conduct of the marketplace do not as a matter of law supply the necessary awareness that there was an actual agreement by the defendants to fix prices and supply; Conmar 858 F. 2d at 504. While the marketplace may have been openly susceptible to such conduct, the discovery and due diligence with which we must be concerned here is information that defendants actually engaged in conspiratorial conduct. And lack of due diligence and constructive knowledge are factual issues not appropriate for a motion to dismiss; TFT-CLD I, at p. 1120.

Viewing the complaints as a whole and under the legal standards discussed above, there is adequate allegation of fraudulent concealment. The Special Master therefore recommends that the defendants' motions to dismiss both the direct and indirect complaints on grounds of the statutes of limitation, and challenging the sufficiency of the fraudulent concealment allegations, be denied.


WITHDRAWAL

Several defendants seek dismissal on the grounds they withdrew from the alleged conspiracy in 2001 or 2002, by virtue of their sale or transfer of certain businesses or product

lines to other companies. These are alleged to have occurred before the presumed limitations period in 2003. They are: Phillips, Toshiba, Hitachi, and LGE. Their motions are made in both the direct and the indirect cases.

It is clear that the withdrawal from a conspiracy is an affirmative defense, with the burden of proof being on the claimed withdrawing party. <u>United States vs. Lothian</u>, 976 F. 2d 1257 (9th Cir. 1992). And the question of whether there was withdrawal, and if so when and to what extent, is a factual issue which is not readily susceptible to resolution by motion.

These defendants move to dismiss based upon allegations in the complaints that the defendants sold or transferred businesses or product lines to other parties on dates preceding 2003. However, the sale of an operating business does not automatically establish the defense. There must be factual inquiries---again, with the burden of proof on the defendants---into such subjects as the defendants' continued financial interest in the business that was sold, some continued participation, or some continued benefit from the alleged conspiracy.

And even if a defendant establishes its withdrawal, it is not a free pass from all liability. The defendant could still be liable for the damages caused by sales made prior to its withdrawal. <u>Morton's Market Inc., vs. Gustafson's Dairy Inc.</u>, 211 F. 3d 1224 (11th Cir. 2000). That holding has been cited in this district; <u>In re: Rubber Chemicals,</u> at p. 790.

In addition to the above legal points, some comments on the positions of the defendants are relevant:

The Phillips defendants claim that they exited "the tube business" in 2001 when they combined forces with another defendant to form a joint venture. "The tube business" obviously means just the <u>CRTs themselves</u>. However as discussed above, the alleged conspiracy also pertains to CRT Products and not just tubes. And even if the focus were solely on tubes, upon

disposition of it tube line, Phillips participated as a co-owner of a joint venture called LGPD. That raises factual questions as to whether the sale of the tube business was actually a withdrawal. The Phillips defendants also argue that after divestiture of its tube business, and continuing in the <u>product</u> business, they became <u>victims</u> of the conspiracy because they were paying higher prices for the tubes. However, that argument again ignores the allegations that the Phillips defendants were part of the conspiracy to also fix prices of <u>CRT Products</u>.

The Toshiba defendants argue that they withdrew from the conspiracy in 2002 when they formed a joint venture with Matsushita Electronics. Even assuming Toshiba's claim is correct, there is still a factual issue as to whether that was a withdrawal by Toshiba, or Toshiba was still getting financial benefits. And it could still be liable for the consequences of its acts prior to 2002, unless it can establish that the statute of limitations has run.

Hitachi argues that it withdrew from the conspiracy in 2002 when it spun off its departments related to the display business to "Hitachi Displays." But again, there is a factual issue of what benefits Hitachi might have from Hitachi Displays with respect to matters that were the subject matter of the conspiracy, particularly since this is a spin-off to an apparently related company.

LGEI alleges that it exited the CRT business in 2001. But the direct complaint alleges that during the class period, LGEI manufactured and sold <u>CRT Products</u> throughout the United States. During the oral argument of the motions, LGEI presented to the Special Master a chart showing the relationships and transactions among the various LG Entities. However, the Special Master cannot consider such evidence because it was outside the face of the complaint. The face of the complaint does not establish that as a matter of law there was a withdrawal or a cessation of business by LGE.

Separately, defendant BMCC argues that the statute of limitations has expired because the last meeting in which it is alleged to have participated was in 2001. Plaintiffs say in response that the year "2001" was typographical error in the complaint, and that the correct date should be "2007," which would obviously be within the statute of limitations. Plaintiffs' counsel has presented a separate affidavit on the claimed error. The Special Master recommends that plaintiffs be allowed to amend the complaint to correct the alleged typographical error and allege that the meetings were as late as 2007.

Withdrawal may be a valid defense to some allegations and some defendants. And the Special Master is making no finding with respect to whether the defendants can prove withdrawal. However, for purposes of this motion to dismiss, which must be decided on the allegations of the complaint, dismissal in whole or in part is not legally justified because of the existence of factual questions on which defendants bear the burden of proof.

The Special Master therefore recommends that the motions of the above named parties for dismissal on the grounds of withdrawal from the conspiracy be denied.

## STATE LAW CLAIMS IN THE INDIRECT CASE

Defendants' motions against the indirect complaint make particularized arguments against some allegations under state law. However, many of the grounds for defendants' motions have been discussed above and need not be repeated here[3]. Therefore, it is appropriate to summarize what the indirect complaint alleges, as found above by the Special Master, before addressing the separate state law arguments: The complaint alleges CRT Products, as well as

---

[3] E.g. CRTs vs. CRT Products, Twombly, "each defendant," the Foreign Trade Antitrust Improvements Act, standing under AGC, the federal statute of limitations, and fraudulent concealment.

CRTs. Plaintiffs made purchases of those products in the United States, allegedly at non-competitive prices. A conspiracy to fix the prices and the supply of CRT Products is alleged. And plaintiffs adequately allege antitrust injury; that is, the payment of higher prices as a result of the conspiracy. Plaintiffs' claimed injuries are direct and not remote.

In addition, there is no legal or pleading impediment to plaintiffs' tracing their claims of purchases, and apportioning their damages if necessary. Possible future difficulties of proof or apportionment do not trump the pleading standard that is applicable here; that is, adequate notice under FRCP Rule 8.

The indirect complaint alleges that in addition to the Sherman Act, defendants' conduct violated the laws of several states. They include state antitrust statutes, consumer protection and unfair competition statutes, and claims of unjust enrichment and for the disgorgement of profits under state common law. It is therefore necessary to consider the laws of each state separately, or as a small group where the laws are substantially the same.

A. Defendants move to dismiss the allegations under the laws of Nevada, Hawaii and Nebraska insofar as the allegations are based upon conduct before those states enacted their so-called "repealer" statutes, which had the effect of opening the courts to antitrust suits by indirect purchasers.

1. Nebraska. Nebraska's repealer statute was effective July 20, 2002. Nebraska requires its courts to apply statutes prospectively only, absent a clear statement from the Nebraska legislature to the contrary. Soukop vs. Con Agra, Inc., 653 NW 2d 655 (Neb 2002). The Special Master finds nothing in the legislative history or in Nebraska's reported cases to establish a legislative intent that Nebraska's repealer statute be applied retroactively. The

Special Master therefore recommends that all alleged Nebraska claims prior to the date of Nebraska's repealer statute, July 20, 2002, be dismissed.

2.  Nevada. Nevada passed its "Illinois Brick repealer" in 1999. The law of Nevada is that statutes are prospective only, unless it "clearly, strongly and imperatively appears from the act itself that the legislature intended the statute to be retrospective in its operation." Estate of Thomas, 998 P. 2d 560 (Nev 2000). The Nevada statute does not indicate any retrospective intent. The Special Master therefore recommends that plaintiffs' claims under Nevada law resulting from actions prior to the 1999 date of the repealer statute, be dismissed.

3.  Hawaii. Plaintiffs have withdrawn their claims based on the law of Hawaii.

B. Defendants challenge plaintiffs' claims under the consumer protections statutes of Massachusetts, New York, and Rhode Island.

1.  Massachusetts. Defendants move to dismiss the claims under the Massachusetts' Consumer Protection Act, because plaintiffs have not alleged that they made a "written demand for relief" 30 days before filing their complaint. The complaint does not allege a written demand. However, plaintiffs argue that the Massachusetts act does not require such a written demand, "if the prospective respondent does not maintain a place of business or does not keep assets within the Commonwealth." The complaint does contain allegations by the Massachusetts plaintiff of activities in which defendants engaged in that state. A reasonable inference from those activities is that defendants did maintain a place of business and/or keep assets within Massachusetts. But the burden of pleading here is upon plaintiffs. And plaintiffs' complaint does not clearly allege or deny a place of business or the keeping of assets in the state. And plaintiffs have not alleged the giving

of the required demand. The Special Master therefore recommends that the motion to dismiss based upon the Massachusetts Consumer Protection Act be granted, with leave to amend if plaintiff can truthfully plead that the demand was given or was not necessary.

2.  New York. Plaintiffs' claim is under New York General Business Law Section 349. Defendants contend that plaintiffs have not adequately alleged the various elements for a cause of action under that statute. Specifically, defendants challenge the adequacy of the allegations of deceptive conduct, specific acts, representations or omissions, or conduct directed toward the New York plaintiffs. The amended complaint does make many allegations of conduct by defendants, some directed to the State of New York. Plaintiffs' allegations need not be parsed out, and the sufficiency of each one examined separately. Suffice it to say that decisions of this district have upheld claims under New York Law by plaintiffs alleging similar activities by defendants with economic consequences to the plaintiffs. TFT-LCD I, at pp 1127-28; and GPU I, at p. 1030. The Special Master recommends that the motions to dismiss the New York law claims be denied.

3.  Rhode Island. Defendants argue that Rhode Island's Unfair Trade Practices and Consumer Protection Act does not allow a cause of action for the matters alleged here. That statute enumerates 19 specific practices that constitute unfair methods of competition and unfair or deceptive acts or practices. Price fixing, the basis for this case, is not one of them. Rhode Island indeed has its own separate antitrust statute, but that statute that does not permit claims by indirect purchasers. Siena vs. Microsoft, 796 A 2d 461 (R.I. 2002). And the courts of Rhode Island appear to have decided that the UTPCPA benefits only consumers and not businesses. ERI Max Entertainment Inc. vs. Streisand, 690 A. 2d 1351 (RI 997). The Special Master must conclude that a conspiracy to fix

prices can be redressed only under Rhode Island's antitrust statute, and not under its UTPCPA. Two courts in this district have recently dismissed claims under the Rhode Island UTPCPA, although not necessarily for the same reasons. See <u>DRAM Antitrust Litigation</u>, 546 F. 3d 981 (9th Cir 2008) and <u>TFT-LCD I</u>, at p. 1130. The Special Master therefore recommends that the alleged causes of action under the Rhode Island statute be dismissed.

4.   <u>Hawaii</u>: The claim under Hawaii's consumer protection law has been withdrawn.

C.   Defendants move to dismiss the unjust enrichment claims under the common law of three states.

    1.   <u>Michigan:</u> Defendants argue that a Michigan court has held that indirect purchasers who are allegedly overcharged as a result of anticompetitive conduct do not have standing to sue for unjust enrichment if they cannot allege that they conferred a benefit <u>directly</u> upon the defendant. <u>A&M Supply Company vs. Microsoft</u>, 2008WL540883 (Mich. 2008). Plaintiffs contend that such a direct benefit is not required. The Special Master believes that this district's interpretation of the applicable Michigan law is correct, and that the unjust enrichment allegations based upon Michigan law are adequate; <u>TFT-LCD II</u>, at pp 1189-90.

D.   <u>Kansas</u>. Defendants contend that Kansas common law requires that a plaintiff deal <u>directly</u> with a defendant in order to state a cause of action for unjust enrichment. <u>Babcock vs. Carothers Construction</u>, 124 P 3d, 1084; 2005 WL 3527117 (Kans. 2005). From a review of the cases, the Special Master agrees that privity or the direct conferral of a benefit on the defendant is a requirement for such a claim. Accordingly,

the Special Master recommends that the unjust enrichment claims based upon Kansas law be dismissed.

E.   <u>New York</u>. Defendants also argue that New York common law requires a direct benefit between the parties for a claim of unjust enrichment. However, the Special Master does not interpret New York Law as being that restrictive. The test appears to be whether the connection between the parties is or is not "too attenuated to support such a claim." In this case, plaintiffs are alleging a price fixing conspiracy with respect to CRT Products, for which plaintiffs paid higher prices. The allegation is of a conspiracy which was directed at plaintiffs. The Special Master believes that this allegation is enough to meet the requirements of New York common law and recommends that the common law allegations of unjust enrichment law not be dismissed.

Finally, defendants argue for a sweeping dismissal of the unjust enrichment claims in numerous states which have antitrust or consumer protection statutes that limit antitrust actions or limit recoverable damages. While those contentions may be valid as a general principle, defendants do not discuss the applicable laws of each state to explain what remedies may or may not be available under its statutory scheme or its common law, as was done above regarding Rhode Island. There can be numerous questions of the intent of the state legislatures or the decisions of the state courts. Defendants have cited to the laws of numerous states, but they have not carried their burden to establish that the intent of the legislature in enacting a specific statute, or a decision of a particular state court, precludes relief for restitution or unjust enrichment. Defendants' arguments may be valid, but they have yet to be demonstrated to the point of

justifying such broad dismissals. The Special Master therefore recommends that defendants' motion on that ground be denied without prejudice.

SUMMARY OF RECOMMENDATIONS

For the reasons discussed above the Special Master makes the above tentative rulings, and recommends that the District Court:

1. Find that the relevant products alleged in the complaints are CRTs <u>and</u> CRT Products.

2. Deny defendants' motions to dismiss based upon <u>Twombly</u> and <u>Iqbal</u>.

3. Deny defendants' motions to dismiss based upon an alleged failure to adequately plead against "each defendant."

4. Deny defendants' motions to dismiss based upon the Foreign Trade Antitrust Improvements Act, the Supremacy Clause and the Commerce Clause.

5. Deny defendants' motions to dismiss based upon plaintiffs' alleged lack of standing.

6. Find that the allegations of the direct and indirect complaints regarding fraudulent concealment are adequate to toll the statutes of limitation.

7. Deny defendants' motions to dismiss both the direct and indirect complaints on the grounds of the statutes of limitation.

8. Grant plaintiffs' motion to amend the face of the direct complaint, with respect to the allegations against BMCC to change the year "2001" to "2007."

9. Deny the motions of several defendants for dismissal based upon their alleged withdrawal from the conspiracy.

10. Dismiss the claims under Nebraska law based on sales made prior to July 20, 2002.

11. Dismiss the claims under Nevada law based on sales made prior to the 1999 date of Nevada's repealer statute.

12. Dismiss plaintiffs' claims under the Massachusetts Consumer Protection Act, with leave to amend.

13. Deny the motions to dismiss plaintiffs' claims under New York General Business Law Section 349.

14. Dismiss the allegations under the Rhode Island Unfair Trade Practices and Consumer Protection Act.

15. Deny the motion to dismiss the claims under Michigan common law of unjust enrichment.

16. Dismiss the claims made under Kansas' common law of unjust enrichment.

17. Deny defendants' motion to dismiss the claims of unjust enrichment under New York common law.

18. Deny, without prejudice, defendants' motions to dismiss the unjust enrichment claims of several states based upon other statutes in those states.

19. Set a date for the filing of answers.

20. Set a date for a case management conference to schedule further proceedings in the case, or direct the Special Master to do so.


Respectfully Submitted,


Dated: _February 5, 2010_


_Charles A. Legge_
Hon. Charles A. Legge (Ret.)
SPECIAL MASTER

34

Appendix A.

Beijing Matsushita Color CRT Company, Ltd.; Hitachi, Ltd.; Hitachi Asia, Ltd.; Hitachi America, Ltd.; Hitachi Electronic Devices (USA), Inc.; Hitachi Displays, Ltd.; Irico Group Corporation; Irico Display Devices Co., Ltd.; LG Electronics, Inc.; LG Electronics USA, Inc.; LG Electronics Taiwan Taipei Co., Ltd; MT Picture Display Co., Ltd.; Panasonic Corporation of North America; Panasonic Corporation; Philips Electronics North America Corporation; Koninkiljke Philips Electronics N.V.; Philips da Amazonia Industria Electronica Ltda.; Samsung SDI America, Inc.; Samsung SDI Co., Ltd,; Samsung SDI (Malaysia) Sdn. Bhd.; Samsung SDI Mexico S.A. de C.V.; Samsung SDI Brasil Ltda.; Shenzhen Samsung SDI Co. Ltd.; Tianjin Samsung SDI Co., Ltd.; Samsung Electronics Co., Ltd.; Samsung Electronics America Inc.; Samtel Color, Ltd.; Toshiba Corporation; Toshiba America Electronic Components, Inc.; Toshiba America Information Systems, Inc.; Toshiba America, Inc.; and Toshiba America Consumer Products L.L.C..

Appendix B.

Beijing Matsushita Color CRT Company, Ltd.; Hitachi, Ltd.; Hitachi Asia, Ltd.; Hitachi America, Ltd.; Hitachi Electronic Devices (USA), Inc.; Hitachi Displays Ltd.; Irico Display Devices Co., Ltd.; Irico Group Corporation; LG Electronics, Inc.; LG Electronics USA, Inc.; LG Electronics Taiwan Taipei Co., Ltd.; MT Picture Display Co., Ltd.; Panasonic Corporation of North America; Panasonic Corporation; Philips Electronics North America Corporation; Koninkiljke Philips Electronics N.V.; Philips da Amazonia Industria Electronica Ltda.; Samsung SDI America, Inc.; Samsung SDI Co., Ltd.; Samsung SDI (Malaysia) Sdn. Bhd.; Samsung SDI Mexico S.A. de C.V.; Samsung SDI Brasil Ltda.; Shenzhen Samsung SDI Co. Ltd.; Tianjin Samsung SDI Co., LTD.; Samsung Electronics Co., Ltd.; Samsung Electronics America, Inc.; Samtel Color, Ltd.; Toshiba Corporation; Toshiba America Electronic Components, Inc.; Toshiba America Information Systems, Inc.; Toshiba America, Inc.; and Toshiba America Consumer Products L.L.C..