STEVEN A. REISS (*Admitted Pro Hac Vice*)
DAVID L. YOHAI (*Admitted Pro Hac Vice*)
DAVID YOLKUT (*Admitted Pro Hac Vice*)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153-0119
Telephone:   (212) 310-8000
Facsimile:   (212) 310-8007
Email: steven.reiss@weil.com

JEFFREY L. KESSLER (*Admitted Pro Hac Vice*)
A. PAUL VICTOR (*Admitted Pro Hac Vice*)
EVA W. COLE (*Admitted Pro Hac Vice*)
DEWEY & LEBOEUF LLP
1301 Avenue of the Americas
New York, NY 10019
Telephone: (212) 259-8000
Facsimile: (212) 259-7013
Email: jkessler@dl.com

Attorneys for Defendants Panasonic Corporation of North America, MT Picture Display Co., Ltd., and Panasonic Corporation (f/k/a Matsushita Electric Industrial Co., Ltd.)

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **In Re CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION** | No.:   M-07-5944 SC<br>MDL NO. 1917 |
| This Document Relates to:<br><br>INDIRECT PURCHASER ACTION. | **OBJECTIONS OF DEFENDANTS PANASONIC CORP. AND PANASONIC CORP. OF NORTH AMERICA TO THE REPORT, RECOMMENDATIONS AND TENTATIVE RULINGS OF THE SPECIAL MASTER REGARDING PANASONIC'S MOTION TO DISMISS INDIRECT PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT**<br><br>Judge: Hon. Samuel Conti<br>Special Master: Hon. Charles A. Legge (Ret.)<br><br>**ORAL ARGUMENT REQUESTED** |

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ................................................................................................................ 1

ARGUMENT ..................................................................................................................... 3

I.      THE REPORT ERRED IN NOT RECOMMENDING THE DISMISSAL OF
        PNA FROM THE INDIRECT ACTION .................................................................. 3

II.     PANASONIC CORP. SHOULD ALSO HAVE BEEN DISMISSED ........................ 4

CONCLUSION ................................................................................................................. 6

## <u>TABLE OF AUTHORITIES</u>

**Page**

### FEDERAL CASES

*Ashcroft v. Iqbal*,
    129 S. Ct. 1937 (2009) ................................................................................. *passim*

*In re ATM Fee Antitrust Litig.*,
    No. 04-02676 CRB, 2009 U.S. Dist. LEXIS 83199 (N.D. Cal. Sept. 4, 2009)................... 2

*Bell Atlantic Corp. vs. Twombly*,
    550 U.S. 544 (2007)................................................................................... *passim*

*Brennan v. Concord EFS, Inc.*,
    369 F. Supp. 2d 1127 (N.D. Cal. 2005) ........................................................... 2

*Jung v. Ass'n of Am. Med. Colls.*,
    300 F. Supp. 2d 119 (D.D.C. 2004) ............................................................... 2

*Kendall v. Visa U.S.A., Inc.*,
    518 F.3d 1042 (9th Cir. 2008) ................................................................. *passim*

*In re SRAM Antitrust Litig.*,
    580 F. Supp. 2d 896 (N.D. Cal. Feb. 14, 2008)................................................. 4

*Sherman v. British Leyland Motors, Ltd.*,
    601 F.2d 429 (9th Cir. 1979) ......................................................................... 5

*In re TFT-LCD Antitrust Litig.*,
    586 F. Supp. 2d 1109 (N.D. Cal. 2008) ........................................................... 6

*In re Travel Agent Com'n Antitrust Litig.*,
    583 F.3d 896 (6th Cir. 2009) ......................................................................... 3

*Weinstein v. Saturn*,
    303 Fed. Appx. 424 (9th Cir. 2008) ............................................................... 5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

Defendants Panasonic Corp. of North America ("PNA") and Panasonic Corporation ("Panasonic Corp.") (together, the "Panasonic Defendants") respectfully submit the following objections to the February 5, 2010 Report, Recommendations and Tentative Rulings of the Special Master Regarding Defendants' Motions to Dismiss (the "Report") (Docket No. 597). The objections detailed herein specifically relate to the Report's summary recommendation to deny the Panasonic Defendants' motion to dismiss the Indirect Purchaser Plaintiffs' Consolidated Amended Complaint (the "IP-CAC") (Docket No. 474).

The Report's recommendation to deny the Panasonic Defendants' motion – as well as the motions of every other individual defendant in this action – was erroneous and contrary to settled law.    Compounding a critical deficiency in Plaintiffs' pleadings, the Report simply "lumped" each of the individual defendants' separate motions to dismiss together, and proceeded to summarily reject each of them without sufficient regard for their unique and substantive arguments.    This error was particularly evident with respect to the Panasonic Defendants.    PNA is not even *mentioned* in the Report, which is not surprising, given the solitary reference to that company (a United States sales company of finished televisions) in the IP-CAC itself.    In addition, the Report cites a few fleeting references in the Complaint to the amorphous entity called "Panasonic," without pointing to any specific factual claims in the Complaint – in fact, there are none – as to how, when or why PNA or Panasonic Corp. allegedly attended or participated in any claimed conspiratorial meetings or agreements. This, too, is not surprising, as it was an entirely different Panasonic-related company, MT Picture Display Co., Ltd. ("MTPD"), that was engaged in the manufacturing of cathode ray tubes ("CRTs").[1]    Nonetheless, PNA and Panasonic Corp. are now potentially subject to the demands, expenses and burdens associated with the discovery process.

---

[1]  Accordingly, MTPD has not individually moved to dismiss either complaint, given the specific allegations asserted against that particular Panasonic-related entity.    MTPD is included, however, in Defendants' joint motions to dismiss each complaint.

1    With respect to the need for individualized allegations – a requirement that the Report

2   erroneously dispensed with – the Panasonic Defendants agree with the Report's initial

3   observation that "other cases, including several in this district, have discussed the need for

4   individual allegations in antitrust conspiracy cases."   Report at 11:20-21.   Indeed, numerous

5   courts have consistently required plaintiffs to sufficiently plead the involvement of *each and*

6   *every named defendant* in an antitrust conspiracy.[2]   The Report fundamentally errs, though,

7   in concluding that it is "*possible* that a complaint, even if lacking repetitive allegations

8   naming each defendant, *might* as a whole supply the requisite notice" under the Federal Rules.

9   *Id.* at 13:3-5 (emphasis added).   Under the "plausibility standard" articulated in *Bell Atlantic*

10  *Corp. vs. Twombly* and *Ashcroft v. Iqbal*, however, the mere *possibility* of alleged wrongdoing

11  does not equate to a *plausible* claim against a particular defendant.   *See Twombly*, 550 U.S.

12  544, 570 (2007) (requiring that plaintiffs allege sufficient facts to "nudge[] their claims across

13  the line from conceivable to plausible"); *Iqbal*, 129 S.Ct. 1937, 1950 (2009) (a pleading's

14  factual content must "permit the court to infer more than the mere possibility of misconduct").

15  Nor is it enough for the Report to conclude that each Defendant had "adequate notice" of the

16  claims asserted in the IP-CAC, regardless of the implausibility of those claims with respect to

17  that defendant.   After *Twombly* and *Iqbal*, the mere provision of "notice" is no longer

18  sufficient, as a handful of stray references to PNA and Panasonic Corp. – made with no

19  factual specificity whatsoever – do not amount to a "plausible" claim that *these two entities*

20  either joined or participated in any purported conspiracy.[3]

21
22  [2]  For example, in *Brennan v. Concord EFS, Inc.*, 369 F.Supp. 2d 1127, 1136 (N.D. Cal.
    2005), a case cited approvingly by the Special Master, the court dismissed an antitrust
23  complaint against certain defendants because it failed to plead allegations "specifically
    connecting [those defendants] to the alleged conspiracy."   *See also In re ATM Fee Antitrust*
24  *Litig.*, No. 04-02676 CRB, 2009 U.S. Dist. LEXIS 83199, at * 14 (N.D. Cal. Sept. 4, 2009)
    (dismissing complaint and requiring "allegations . . . that tie the [parent] holding companies to
25  the alleged conspiracy . . . ."); *Jung v. Ass'n of Am. Med. Colls.*, 300 F.Supp. 2d 119, 163
    (D.D.C. 2004) ("Plaintiffs cannot escape their burden of alleging that *each defendant*
26  participated in or agreed to join the conspiracy by using the term 'defendants' to apply to
    numerous parties without any specific allegations as to [the moving defendant]") (emphasis
27  added).

28  [3]  The Report recommends that any defendant not a member of the alleged conspiracy should
    "make an appropriate motion," but only "after some factual development" (*i.e.*, only after

**ARGUMENT**

**I.     THE REPORT ERRED IN NOT RECOMMENDING THE DISMISSAL OF PNA FROM THE INDIRECT ACTION**

The Report fails to cite any paragraph from the 291-paragraph IP-CAC that specifically links PNA to the alleged conspiracy.    In fact, the *only* substantive allegation in the IP-CAC that relates directly to PNA fails on its face.    *See* IP-CAC (Docket No. 437), at ¶ 182 (stating that PNA purportedly "*was represented at* [various meetings] and was a party to the agreements entered at them," and that "[t]o the extent [PNA] sold and/or distributed CRT Products to direct purchasers, [it] played a significant role in the conspiracy because Defendants wished to ensure that the prices for CRT Products paid by direct purchasers would not undercut the pricing agreements . . . .") (emphasis added).    This single paragraph of conclusory allegations does not set forth "enough facts to state a claim to relief that is plausible on its face."    *See Twombly*, 550 U.S. at 570; *see* Panasonic Motion to Dismiss at 7:4-20; Panasonic Reply (Docket No. 547) at 5:5-6:11.

As an initial matter, there are no factual allegations in the IP-CAC to explain why PNA, a company selling finished televisions, would have any plausible economic motive to join an alleged conspiracy to fix higher prices for a component of those televisions, from which it would not benefit.    For all the reasons set forth in Defendants' joint objections, the Report fundamentally erred in concluding that the IP-CAC alleges a conspiracy involving "Finished Products" (*i.e.*, CRT televisions and computer monitors).    Aside from Plaintiffs' misleading use of the label "CRT Products" (which is defined to include both CRTs and all products containing CRTs), there are no facts in the IP-CAC to allege such a nebulous conspiracy.    To the contrary, Plaintiffs recognize that the market for televisions and

---

being subjected to onerous, exorbitant discovery).    Report at 15:1-2.    As the *Twombly* Court stated, however, "it is only by taking care to require allegations that reach the level suggesting conspiracy that we can hope to avoid the potentially enormous expense of discovery."    550 U.S. at 559; *see also In re Travel Agent Com'n Antitrust Litig.*, 583 F.3d 896, 908-09 (6th Cir. 2009) ("Pursuant to *Twombly*, district courts must assess the plausibility of an alleged illegal agreement *before* parties are forced to engage in protracted litigation and bear excessive discovery costs") (emphasis in original).

1   computer monitors are both subject to "vigorous price competition."   *See* IP-CAC, at ¶ 227.

2   Plaintiffs' allegations against PNA are thus wholly implausible.

3        Moreover, the IP-CAC does not allege that PNA participated in any alleged meetings,

4   but merely that it was "*represented*" at them in some unspecified way.   The IP-CAC does

5   not contain any supporting factual allegations to explain *who* represented PNA, *how* PNA

6   knew about this representation, or even *what* this alleged "representation" meant to PNA.

7   *See Kendall v. U.S.A., Inc.*, 518 F.3d 1042, 1048 (9th Cir. 2008); *Twombly*, 550 U.S. 565 n.

8   10 (the "pleadings mentioned no specific time, place, or person involved in the alleged

9   conspiracies").   Recognizing the lack of specificity of Plaintiffs' claims, the Report states

10  that "even though each member of a corporate family may not have its name and acts recited

11  in the complaint," each and every indiscriminately named defendant nonetheless has

12  "adequate notice" about Plaintiffs' claims and can "question its personnel and search its

13  records for available information."   Report at 14:25-26.   This is contrary to settled pleading

14  standards requiring that *each and every defendant* be put on notice of the specific allegations

15  against them.   *See In Re TFT-LCD Antitrust Litig.*, 586 F.Supp.2d 1109, 1117 (N.D. Cal.

16  2008) (a "complaint 'must allege that *each* individual defendant joined the conspiracy and

17  played some role in it'") (emphasis added).[4]   As *Twombly* itself recognized, a complaint that

18  "furnishes no clue as to which of the four [Defendants] . . . supposedly agreed, or when and

19  where the illicit agreement took place" leaves "[a] defendant wishing to prepare an answer . . .

20  [with] little idea where to begin."   550 U.S. at 565 n.10.

21  **II.     PANASONIC CORP. SHOULD ALSO HAVE BEEN DISMISSED**

22       The Report also improperly failed to dismiss Plaintiffs' conclusory claims against

23  _____

24  [4]  The Report's attempt to compare Plaintiffs' allegations with those ultimately upheld in the
    *LCD* case is unavailing.   The Report notes that the amended complaint in *LCD* "added

25  sufficient facts about illicit conspiratorial communications among the defendants," and "also
    alleged guilty pleas entered by four defendants."   Report at 12:5-8.   However, there are no

26  factual allegations that PNA participated in any "conspiratorial meetings," and PNA has
    certainly not pled guilty to any charges in connection with an alleged CRT conspiracy it

27  clearly had nothing to do with. Thus, in contrast to *LCD* and *In re SRAM Antitrust Litig.*, 580
    F.Supp. 2d 896, 904 (N.D. Cal. 2008), Plaintiffs' allegations do *not* "plausibly suggest that
    [PNA] participated in the alleged conspiracy."

28

1    Panasonic Corp.    *First*, the Report fails to explain how any "lumped" allegations against the
2    entity "Panasonic" could possibly provide *Panasonic Corp.* with adequate notice under the
3    Federal Rules of the factual claims it is facing.    Indeed, it is simply impossible from the
4    IP-CAC to determine which defendant is being charged with participation in which meetings
5    and which defendants are alleged to have agreed to which prices or supply levels.    Thus, the
6    Report erred in relying upon "lumped" allegations that are both indeterminate and legally
7    ineffective.

8        *Second*, the few allegations in the IP-CAC directed at Panasonic Corp. are plagued by
9    vagueness and lack of specificity.    The Report, for example, cites a naked allegation that
10   unnamed executives at "Panasonic Corporation and Matsushita"[5] participated in an
11   unspecified number of so-called "Glass Meetings."    Report at 14:14-16 (citing IP-CAC, ¶
12   181).    In fact, however, the more detailed paragraphs in the IP-CAC which actually discuss
13   the "Glass Meetings" – ¶¶ 145-158 – do not say that anyone from Panasonic Corp. or any
14   other company affiliated with Panasonic attended such meetings.    Without any specific
15   factual claims about the content or nature of any alleged participation by Panasonic Corp. –
16   who attended such meetings and when they did so – there is no basis for Plaintiffs to proceed
17   with their conclusory conspiracy claims.    *See* Panasonic Reply at 8:5-9:17 (citing cases).

18       *Third*, unsupported allegations that Panasonic Corp. "dominated and controlled" its
19   subsidiaries provides no evidence to support the allegation that it participated in any alleged
20   conspiracy.    While the Report states that "an allegation of corporate agency and control *may*
21   *be* enough,"[6]  any such allegations are rendered completely meaningless when there are no
22   underlying factual allegations capable of supporting a claim that any of Panasonic Corp.'s
23   subsidiaries engaged in the alleged conspiracy.    Indeed, a mere allegation of corporate
24   ownership, with no specific factual allegations to pierce the corporate veil, fails as a matter of
25   law.    *See*, *e.g.*, *Sherman v. British Leyland Motors, Ltd.*, 601 F.2d 429, 441 (9th Cir. 1979).

26   ───────────────
     [5]  In fact, the latter is a reference to the defunct entity Matsushita Electronic Corporation
27   (Malaysia) Sdn. Bhd ("MECM"), which Plaintiffs have dismissed from this action.
     [6]  Report at 13:8-9 (citing *Weinstein v. Saturn*, 303 Fed. Appx. 424 (9th Cir. 2008)).
28   ───────────────

1

## CONCLUSION

2          For all of the reasons stated above, the Panasonic Defendants respectfully object to the

3   Special Master's Report, and submit that this Court should modify the Report accordingly and

4   dismiss Indirect Purchaser Plaintiffs' Complaint as against Panasonic Corp. and PNA.

5

6   Dated: February 19, 2010                    By:    /s/ David L. Yohai
                                                STEVEN A. REISS (*pro hac vice*)
7                                               Email: steven.reiss@weil.com
                                                DAVID L. YOHAI (*pro hac vice*)
8                                               Email: david.yohai@weil.com
                                                DAVID E. YOLKUT (*pro hac vice*)
9                                               Email: david.yolkut@weil.com
10                                              **WEIL, GOTSHAL & MANGES LLP**
                                                767 Fifth Avenue
11                                              New York, New York 10153-0119
                                                Telephone:   (212) 310-8000
12                                              Facsimile:   (212) 310-8007
13
                                                GREGORY D. HULL (57367)
14                                              Email: greg.hull@weil.com
                                                **WEIL, GOTSHAL & MANGES LLP**
15                                              201 Redwood Shores Parkway
                                                Redwood Shores, California 94065-1175
16                                              Telephone: (650) 802-3000
                                                Facsimile: (650) 802-3100
17

18                                              By:    /s/ Jeffrey L. Kessler
                                                JEFFREY L. KESSLER (*pro hac vice*)
19                                              Email: jkessler@dl.com
                                                A. PAUL VICTOR (*pro hac vice*)
20                                              Email: pvictor@dl.com
                                                EVA W. COLE (*pro hac vice*)
21                                              Email: ecole@dl.com
                                                **DEWEY & LEBOEUF LLP**
22                                              1301 Avenue of the Americas
                                                New York, NY 10019
23                                              Telephone: (212) 259-8000
                                                Facsimile: (212) 259-7013
24

25
                                                ***Attorneys for Defendants Panasonic***
26                                              ***Corporation of North America, MT Picture***
                                                ***Display Co., Ltd., and Panasonic Corporation***
27                                              ***(f/k/a Matsushita Electric Industrial Co., Ltd.)***

28
    MDL NO. 1917                                        PANASONIC DEFENDANTS' OBJECTIONS