Christopher M. Curran (*pro hac vice*)
ccurran@whitecase.com
George L. Paul (*pro hac vice*)
gpaul@whitecase.com
Lucius B. Lau (*pro hac vice*)
alau@whitecase.com
White & Case LLP
701 Thirteenth Street, N.W.
Washington, DC  20005
Telephone:  (202) 626-3600
Facsimile:  (202) 639-9355

*Counsel to Defendants Toshiba Corporation, Toshiba America, Inc., Toshiba America Information Systems, Inc., Toshiba America Consumer Products, L.L.C., and Toshiba America Electronic Components, Inc.*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
(SAN FRANCISCO DIVISION)

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION<br><br>This Document Relates to:<br><br>INDIRECT PURCHASER ACTIONS | Case No. 07-5944 SC<br>MDL No. 1917<br><br>**THE TOSHIBA ENTITIES' OBJECTIONS TO THE SPECIAL MASTER'S REPORT, RECOMMENDATIONS AND TENTATIVE RULINGS REGARDING DEFENDANTS' MOTIONS TO DISMISS (INDIRECT ACTION)**<br><br>Before:  Hon. Samuel J. Conti, U.S. District Judge |

# **TABLE OF CONTENTS**

**Page**

OBJECTIONS (INDIRECT ACTION) ................................................................................................1

I.    The Report Fails To Consider The Fact That The Allegations Against The Toshiba Entities Differ Materially From The Allegations Against The Other Defendants ....................................................................................................................1

II.    The Report Errs In Concluding That The Indirect Purchaser Plaintiffs Alleged Sufficient Facts Suggesting That The Toshiba Entities Were Involved In An Antitrust Conspiracy ......................................................................................3

III.    The Report's Conclusions On Withdrawal Are Incorrect ...........................................5

CONCLUSION ......................................................................................................................................5

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

# TABLE OF AUTHORITIES

**Cases**                                                                                                                                   **Page**

*Bay Plastics, Inc. v. BT Commercial Corp. (In re Bay Plastics, Inc.)*,
    187 B.R. 315 (Bankr. C.D. Cal. 1995) ........................................................................5

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544, 565 n.10 (2007)..........................................................................*passim*

*Doe v. Unocal Corp.*,
    248 F.3d 915 (9th Cir. 2001) ....................................................................................4

*Kendall v. Visa U.S.A., Inc.*,
    518 F.3d 1042 (9th Cir. 2008) ............................................................................1, 3

*Weinstein v. Saturn Corp.*,
    303 Fed. Appx. 424 (9th Cir. 2008)..........................................................................4

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

**OBJECTIONS (INDIRECT ACTION)**

The Special Master's Report, Recommendations and Tentative Rulings Regarding Defendants' Motions to Dismiss ("Report") misapplies governing law and fails to consider how the allegations against the Toshiba entities differ from the allegations against the other Defendants. The Report is mistaken when it states that the Ninth Circuit has not interpreted *Twombly* in antitrust conspiracy litigation — in fact, the Ninth Circuit had occasion to do so in *Kendall*, a case displayed prominently by the Toshiba entities in their motion to dismiss. The Report also errs when it states that *Twombly* does not require separate pleading against each defendant. Such a requirement is contained in *Twombly* and was also discussed by the Toshiba entities in their motion to dismiss.

These errors are significant and warrant correction by this Court. Because these errors all concern conclusions of law, they are subject to *de novo* review by this Court, as provided for by Paragraph 18 of the Court's Order Appointing Special Master (Docket Entry 302).

**I.    The Report Fails To Consider The Fact That The Allegations Against The Toshiba Entities Differ Materially From The Allegations Against The Other Defendants**

First and foremost, the Report fails to consider the Toshiba entities' argument (Docket Entry 491 at 1-8) that the allegations against them differ materially (and are far narrower) than those against other Defendants. Even if the allegations in the IP-CAC did describe an antitrust conspiracy that is plausible with respect to some Defendants, the allegations against the Toshiba entities are insufficient to plausibly suggest that the Toshiba entities participated in any such conspiracy.

There are eight key areas in which the allegations against the Toshiba entities differ from the allegations made against other Defendants. ***First***, the Indirect Purchaser Plaintiffs make extensive allegations concerning the indictment of Chunghwa executive C.Y. Lin. IP-CAC ¶ 205. None of the Toshiba entities (nor anyone affiliated with them) has been indicted in the CRT matter or any other matter. ***Second***, the Indirect Purchaser Plaintiffs allege that the Hungarian Competition Authority, the Japanese Fair Trade Commission, and the European Commission are investigating several other Defendants for possible antitrust

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

violations. IP-CAC ¶¶ 213, 206, 210. The Toshiba entities are not alleged to be a part of those proceedings. ***Third***, the Indirect Purchaser Plaintiffs devote considerable attention to the Department of Justice's investigations of other industries, specifically LCD, DRAM, SRAM, and Flash Memory. IP-CAC ¶¶ 215-221. The Toshiba entities have neither been indicted nor pleaded guilty in any of those investigations, and in fact the DOJ has closed at least the SRAM and Flash Memory investigations. ***Fourth***, the Indirect Purchaser Plaintiffs make much of the fact that the CRT industry is composed of several large CRT manufacturers who dominate the market as oligopolists. IP-CAC ¶ 122. Because the Toshiba entities are not alleged to be one of the oligopolists in the CRT industry, it is not plausible that they were part of any antitrust conspiracy. ***Fifth***, the Indirect Purchaser Plaintiffs allege several price increases for certain Defendants. IP-CAC ¶ 197. The Toshiba entities are not among them. ***Sixth***, the Indirect Purchaser Plaintiffs allege that certain CRT manufacturers closed facilities to reduce manufacturing capacity and prop up prices. IP-CAC ¶ 126. The Toshiba entities are not among them. ***Seventh***, the Indirect Purchaser Plaintiffs allege that Defendants carried out the conspiracy at a number of meetings that occurred during trade association meetings and trade show events. IP-CAC ¶ 124. There are no allegations that any Toshiba entity founded, joined, or participated in any trade associations or attended any trade events. ***Eighth***, the Indirect Purchaser Plaintiffs allege that most of the Defendants remained in the CRT industry throughout the relevant class period (*i.e.*, March 1, 1995 to November 25, 2007). *E.g.*, IP-CAC ¶ 173. In contrast, the Indirect Purchaser Plaintiffs allege that Toshiba Corp. entered a joint venture with Matsushita Electric Industrial Co., Ltd. in 2002 "in which the entities consolidated their CRT businesses." IP-CAC ¶ 72.

The Report does not address these distinctions. This omission is significant because a plaintiff that adequately alleges the existence of an antitrust conspiracy is not entitled to name every member of an industry as a defendant. Rather, there must be adequate allegations directed at each named defendant. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 565 n.10 (2007) (complaint that mentions "no specific time, place, or person involved in the alleged conspiracies" provides insufficient notice). Here, there is a paucity

of factual allegations against the Toshiba entities; as such, the Toshiba entities should be dismissed from this action.

## II. The Report Errs In Concluding That The Indirect Purchaser Plaintiffs Alleged Sufficient Facts Suggesting That The Toshiba Entities Were Involved In An Antitrust Conspiracy

The Report also errs in concluding that the Indirect Purchaser Plaintiffs alleged sufficient facts suggesting that the Toshiba entities were involved in an antitrust conspiracy. *See* Docket Entry 491 (Toshiba motion to dismiss) at 8-18.

The IP-CAC contains only five paragraphs (¶¶ 141, 164-65, 177-78) that refer to the Toshiba entities' alleged participation in an antitrust conspiracy. In relevant part, Paragraph 177 states that "Toshiba agreed on prices and supply levels for CRT Products" during certain unspecified "bilateral" discussions with other Defendants. It is clear that "[t]erms like 'conspiracy,' or even 'agreement,' are border-line: they might well be sufficient in conjunction with a more specific allegation — for example, identifying a written agreement or even a basis for inferring a tacit agreement, . . . but a court is not required to accept such terms as a sufficient basis for a complaint." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008). Although the Report is correct that the IP-CAC contains "allegations of specific facts, and not just labels or generalities" (Report at 10), the allegations of specific facts in the IP-CAC are made with respect to other defendants, not with respect to the Toshiba entities. The Toshiba-specific allegations consist of the exact type of conclusory allegations that are insufficient under *Twombly* and its progeny. The Report erred in concluding that the IP-CAC made sufficient allegations with respect to the Toshiba entities.

Given the existence of *Kendall*, the Report is simply incorrect when it states that "[r]esearch has not disclosed any relevant Ninth Circuit cases interpreting [*Twombly* and *Iqbal*] in antitrust conspiracy litigation." Report at 8. *Kendall* was an antitrust conspiracy case that specifically interpreted and applied *Twombly*. *Kendall* explained that "[a] bare allegation of a conspiracy is almost impossible to defend against, particularly where the defendants are large institutions with hundreds of employees entering into contracts and agreements daily." 518 F.3d at 1047. *Kendall* also teaches that a complaint must answer

"the basic questions: who, did what, to whom (or with whom), where, and when?" *Id.* at 1048. With respect to the Toshiba entities, the IP-CAC answers none of these questions.

The Report also errs in concluding that the Indirect Purchaser Plaintiffs made adequate allegations against each of the Toshiba entities. Report at 16. Rather than make specific allegations explaining how each of the Toshiba entities participated in the purported antitrust conspiracy, the Indirect Purchaser Plaintiffs have utilized a corporate family approach that focuses on the alleged actions of the fictitious entity "Toshiba." Contrary to the Report (Report at 11), *Twombly* does require specific factual allegations against each named entity. In *Twombly*, the issue was whether the plaintiffs properly alleged a Section 1 violation with respect to regional service monopolies known as Incumbent Local Exchange Carriers ("ILECs"). The Court noted that, "[a]part from identifying a seven-year span in which the § 1 violations were supposed to have occurred . . . the pleadings mentioned no specific time, place, or person involved in the alleged conspiracies." *Twombly*, 550 U.S. at 565 n.10. Viewing these sparse allegations as a "lack of notice," the Court further noted that "the complaint here furnishes no clue as to which of the four ILECs (much less which of their employees) supposedly agreed, or when and where the illicit agreement took place." *Id.* A party seeking to respond to such allegations would have "little idea where to begin." *Id.* Similarly, the IP-CAC furnishes no clue as to which of the Toshiba entities (and which of their employees) supposedly agreed to join the antitrust conspiracy, and when and how.

Finally, the Report mistakenly concludes that a plaintiff can properly sue an entire corporate family with mere allegations of corporate agency and control. Report at 13. In the Ninth Circuit, in order to show that a parent and subsidiary are not separate and distinct entities, plaintiffs must make out a *prima facie* case that (1) there is such unity of interest and ownership that the separate personalities of the two entities no longer exist; and (2) failure to disregard their separate entities would result in fraud or injustice. *Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001). Contrary to the Report at page 13, *Weinstein v. Saturn Corp.*, 303 Fed. Appx. 424 (9th Cir. 2008), did not hold that "an allegation of corporate agency and control may be enough." Rather, *Weinstein* held that a

complaint that "alleges facts supporting the existence of an agency relationship," contains a sufficient allegation of "substantial control." *Id.* at 426.  Here, the IP-CAC does not allege any facts suggesting an agency and/or control relationship between Toshiba Corp. and its subsidiaries.

### III.  The Report's Conclusions On Withdrawal Are Incorrect

Finally, the Report's conclusions on withdrawal are incorrect.  As demonstrated by the Toshiba entities (Docket Entry 491 at 18-20), even if the *Twombly* pleading standard were met, the Indirect Purchaser Plaintiffs allege that Toshiba Corp. exited the CRT market in 2002, which constitutes withdrawal as a matter of law.

According to the Report, the Toshiba entities' withdrawal argument is insufficient because there remains a factual question whether the formation of the joint venture amounted to a withdrawal by Toshiba Corp. or whether Toshiba Corp. was still receiving financial benefits.  The IP-CAC, however, does not allege that Toshiba Corp. received financial benefits after the creation of the joint venture.  The mere fact that Toshiba Corp. was a shareholder does not mean that it enjoyed financial benefits from the joint venture.  *See Bay Plastics, Inc. v. BT Commercial Corp. (In re Bay Plastics, Inc.)*, 187 B.R. 315, 335 (Bankr. C.D. Cal. 1995) ("the shareholders enjoy the benefits if the gamble is successful, and they should bear the burdens if it is not.").  Accordingly, based upon the allegations of the IP-CAC, the Toshiba entities withdrew from any conspiracy as a matter of law.

### **CONCLUSION**

For these reasons and the reasons contained in the Toshiba entities' motion to dismiss, the Court should reject the Report's recommendations and dismiss the IP-CAC with respect to all of the Toshiba entities.

Respectfully submitted,

Dated:  February 19, 2010                   **WHITE & CASE**LLP

By:  /s/ Christopher M. Curran

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

**CERTIFICATE OF SERVICE**

On February 19, 2010, I caused a copy of "THE TOSHIBA ENTITIES' OBJECTIONS TO THE SPECIAL MASTER'S REPORT, RECOMMENDATIONS AND TENTATIVE RULINGS REGARDING DEFENDANTS' MOTIONS TO DISMISS (INDIRECT ACTION)" to be electronically filed via the Court's Electronic Case Filing System, which constitutes service in this action pursuant to the Court's order of September 29, 2008.

By: /s/ Christopher M. Curran
Christopher M. Curran (*pro hac vice*)

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005