STEVEN A. REISS (*Admitted Pro Hac Vice*)
DAVID L. YOHAI (*Admitted Pro Hac Vice*)
DAVID YOLKUT (*Admitted Pro Hac Vice*)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153-0119
Telephone:   (212) 310-8000
Facsimile:   (212) 310-8007
Email: steven.reiss@weil.com

JEFFREY L. KESSLER (*Admitted Pro Hac Vice*)
A. PAUL VICTOR (*Admitted Pro Hac Vice*)
EVA W. COLE (*Admitted Pro Hac Vice*)
DEWEY & LEBOEUF LLP
1301 Avenue of the Americas
New York, NY 10019
Telephone: (212) 259-8000
Facsimile: (212) 259-7013
Email: jkessler@dl.com

Attorneys for Defendants Panasonic Corporation of North America, MT Picture Display Co., Ltd., and Panasonic Corporation (f/k/a Matsushita Electric Industrial Co., Ltd.)
**[Additional Defendants and Counsel Listed on Signature Pages]**

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **In Re CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION** | ) No.:   M-07-5944 SC ) MDL NO. 1917 ) |
| This Document Relates to: INDIRECT PURCHASER ACTION. | ) **DEFENDANTS' JOINT OBJECTIONS TO THE REPORT, RECOMMENDATIONS AND TENTATIVE RULINGS OF THE SPECIAL MASTER REGARDING DEFENDANTS' MOTION TO DISMISS INDIRECT PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT** |
| | Judge: Hon. Samuel Conti Special Master: Hon. Charles A. Legge (Ret.) |
| | **ORAL ARGUMENT REQUESTED** |

# TABLE OF CONTENTS

Page

INTRODUCTION .................................................................................................. 1

ARGUMENT ....................................................................................................... 4

I.   THE REPORT'S RECOMMENDATION TO ALLOW A VAGUE AND
     UNSUBSTANTIATED "FINISHED PRODUCT" CONSPIRACY TO
     PROCEED WAS ERRONEOUS AND CONTRARY TO *TWOMBLY* AND
     *IQBAL*........................................................................................................... 4

II.  THE COURT SHOULD REMAND DEFENDANTS' MOTION BACK TO
     THE SPECIAL MASTER TO CONSIDER ISSUES RELATING TO
     SUBJECT MATTER JURISDICTION AND ANTITRUST STANDING ................. 9

     A.   The Court Should Remand The Issue Of Subject Matter Jurisdiction
          Under The FTAIA To The Special Master ...................................... 10

     B.   The Court Should Remand The Issue Of Antitrust Standing Under *AGC*
          And Its Progeny To The Special Master......................................... 11

III. THE COURT SHOULD MODIFY THE REPORT'S RECOMMENDATIONS
     CONCERNING FRAUDULENT CONCEALMENT AND FIND THAT
     PLAINTIFFS HAVE FAILED TO PLEAD FACTS SUFFICIENT TO TOLL
     THE STATUTE OF LIMITATIONS FOR ANY OF THEIR FEDERAL OR
     STATE LAW CLAIMS ......................................................................... 14

     A.   The Report Incorrectly Concludes That Plaintiffs' Generalized
          Affirmative Concealment Allegations Are Sufficient ..................... 14

     B.   The Report Incorrectly Concludes That Plaintiffs' Failure To Plead The
          Required Due Diligence And Constructive Knowledge Elements Is Not
          Appropriate For Resolution On A Motion To Dismiss .................. 15

CONCLUSION ................................................................................... 16

MDL NO. 1917 — DEFENDANTS' JOINT OBJECTIONS TO THE SPECIAL MASTER'S REPORT AND RECOMMENDATION REGARDING MOTION TO DISMISS THE IP-CAC

ii

# <u>TABLE OF AUTHORITIES</u>

Page

### FEDERAL CASES

*Ashcroft v. Iqbal*,
129 S. Ct. 1937 (2009) ........................................................................... *passim*

*Associated General Contractors of California v. California State Council of Carpenters*, 459 U.S. 519 (1983) ......................................................... 3, 12, 13

*Barker v. Am. Mobil Power Corp.*,
64 F.3d 1397 (9th Cir. 1995) ........................................................................ 14

*Barton & Pittinos, Inc. v. Smithkline Beecham Corp.*,
118 F.3d 178 (3rd Cir. 1997) ....................................................................... 13

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) .............................................................................. *passim*

*Bhan v. NME Hosps., Inc.*,
772 F.2d 1467 (9th Cir. 1985) ..................................................................... 13

*Cargill, Inc. v. Monfort of Colorado, Inc.*,
479 U.S. 104 (1986) ...................................................................................... 12

*Commercial Street Express LLC v. Sara Lee Corp.*,
No. 08 C 1179, 2008 WL 5377815 (N.D. Ill. Dec. 18, 2008) ...................... 11

*Conmar Corp. v. Mitsui & Co. (U.S.A.), Inc.*,
858 F.2d 499 (9th Cir. 1988) ....................................................................... 15

*Dee-K Enters., Inc. v. Heveafil Sdn. Bhd*,
299 F.3d 281 (4th Cir. 2002) ....................................................................... 11

*In re DRAM Antitrust Litig.*,
516 F. Supp.2d 1072 (N.D. Cal. 2007) ........................................................ 13

*In re DRAM Antitrust Litig.*,
536 F.Supp.2d 1129 (N.D. Cal. 2008) ......................................................... 13

*Emerson Elec. Co. v. Le Carbone Lorraine, S.A.*,
500 F. Supp. 2d 437 (D.N.J. 2007) .............................................................. 11

*In re Intel Corp. Microprocessor Antitrust Litig.*,
452 F. Supp. 2d 555 (D. Del. 2006) ............................................................. 11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# <u>TABLE OF AUTHORITIES</u>

**Page**

*In re Intel Corp. Microprocessor Antitrust Litig.*,
    476 F. Supp. 2d 452, 456 (D. Del. 2007). .................................................................. 11

*Intergraph Corp. v. Intel Corp.*,
    195 F.3d 1346, 1355 (Fed. Cir. 1999).................................................................. 13

*Kendall v. Visa U.S.A., Inc.*,
    518 F.3d 1042 (9th Cir. 2008) ................................................................ 6, 8, 15

*Lucas Auto. Eng., Inc v. Bridgestone/Firestone, Inc.*,
    140 F.3d 1228 (9th Cir. 1998) ............................................................... 12

*Meyer v. Qualcomm Inc.*, No. 08cv655 WQH,
    2009 WL 539902 (S.D. Cal. March 3, 2009) ......................................... 13

*In re Rubber Chemicals Antitrust Litig.*,
    504 F. Supp. 2d 777 (N.D. Cal. 2007) .................................................. 11

*Rutledge v. Boston Woven Hose and Rubber Co.*,
    576 F.2d 248 (9th Cir. 1978) ......................................................... 15, 16

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
    580 F.Supp. 2d 896 (N.D. Cal. 2008) ......................................... 9, 15, 16

*Swoboda v. Pala Mining, Inc.*,
    844 F.2d 654 (9th Cir. 1988) .......................................................... 2

*In re TFT-LCD Antitrust Litig.*,
    586 F. Supp.2d 1109 (N.D. Cal. 2008) ................................................ 9

*In re TFT-LCD Antitrust Litig.*,
    599 F. Supp. 2d 1179 (N.D. Cal. 2009) .............................................. 9

*Toscano v. PGA Tour, Inc.*,
    201 F.Supp.2d 1106 (E.D. Cal. 2002)................................................ 13

*In re Travel Agent Com'n Antitrust Litig.*,
    583 F.3d 896 (6th Cir. 2009) ........................................................... 6

*United Phosphorus, Ltd. v. Angus Chem. Co.*,
    131 F.Supp.2d 1003 (N.D. Ill. 2001), *aff'd*, 322 F.3d 942 (7th Cir. 2003) ............. 10, 11

*United States v. LSL Biotechs.*,
    379 F.3d 672 (9th Cir. 2004) .......................................................... 10

DEFENDANTS' JOINT OBJECTIONS TO THE SPECIAL
MASTER'S REPORT AND RECOMMENDATION
REGARDING MOTION TO DISMISS THE IP-CAC

iv

# TABLE OF AUTHORITIES

Page

*William O. Gilley v. Enterprises, Inc. v. Atlantic Richfield Co.*,
    588 F.3d 659 (9th Cir. 2009) .......................................................................... 8

## FEDERAL STATUTES AND RULES

Clayton Act,
    15 U.S.C. § 26........................................................................................... 12

Federal Rules of Civil Procedure 8 ...................................................................... 4, 14

Federal Rules of Civil Procedure 9(b).................................................................. 4, 14

Federal Rules of Civil Procedure 53(f)................................................................. 1, 3

Foreign Trade Antitrust Improvements Act of 1982,
    15 U.S.C. § 6a.......................................................................................... 10

Sherman Act,
    15 U.S.C. § 1............................................................................................ 12, 13

# **INTRODUCTION**

Pursuant to Rule 53(f)(2) of the Federal Rules and the Order Appointing Special Master (Docket No. 302), the Joint Defendants ("Defendants") respectfully submit the following objections to the February 5, 2010 Report, Recommendations and Tentative Rulings of the Special Master Regarding Defendants' Motions to Dismiss (the "Report") (Docket No. 597).   The objections detailed herein specifically relate to the portions of the Report concerning Defendants' motion to dismiss the Indirect Purchaser Plaintiffs' Consolidated Amended Complaint (the "IP-CAC") (Docket No. 485).[1]

The fundamental error in the Report is that it permits Plaintiffs to convert a case about an alleged conspiracy to fix the price of Cathode Ray Tubes ("CRTs") in overseas markets – the *only* alleged conspiracy sufficiently pled in the IP-CAC – into a massive fishing expedition in search of a wholly conclusory conspiracy claim involving televisions and computer monitors that incorporate CRTs as one component part ("Finished Products").   The reason Plaintiffs have argued for this unsupportable conversion is because they recognize that their actual claim – that there was an alleged conspiracy involving only foreign commerce CRTs – would not be subject to the subject matter jurisdiction of the United States antitrust laws and would also be subject to dismissal on standing grounds, as no plaintiff is alleged to have actually purchased a CRT, as opposed to a Finished Product.   The Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), makes clear that massive and costly antitrust litigation of this type should not be allowed to move forward on such a tenuous reed.   Nor should Plaintiffs be able to sidestep the jurisdictional and standing

---

[1]   A parallel submission sets forth Defendants' joint objections to the portions of the Report concerning Defendants' motion to dismiss the Direct Purchaser Plaintiffs' Consolidated Amended Complaint (the "DP-CAC").   Defendants also respectfully refer the Court to the Declaration of Jeffrey L. Kessler, filed concurrently with those joint objections, which attaches a transcript of oral argument on Defendants' Motions to Dismiss, which was held before the Special Master on October 5, 2009.   In addition, a number of individual defendants are concurrently filing separate objections to the Report with respect to the Special Master's summary recommendation to deny the individual motions to dismiss.

MDL NO. 1917

DEFENDANTS' JOINT OBJECTIONS TO THE SPECIAL MASTER'S REPORT AND RECOMMENDATION REGARDING MOTION TO DISMISS THE IP-CAC

1

1   requirements of the antitrust laws by simply asserting an implausible conspiracy allegation

2   about Finished Products that bears no relationship to the factual allegations of the Complaint

3   or the scope of the alleged conspiracy being investigated by the Department of Justice

4   ("DOJ") and other competition agencies (all of whom are, according to Plaintiffs,

5   investigating claims of an alleged CRT conspiracy, not one which involves CRT televisions

6   or computer monitors).   *See* IP-CAC (Docket No. 437), at ¶¶ 4, 203-213.

7           Specifically, Defendants object to the conclusion of the Report that the IP-CAC

8   sufficiently alleges a conspiracy to fix the prices not only of CRTs, but also of Finished

9   Products sold in the United States.   *See* Report at 3:19-6:26.   This finding is fundamentally

10  flawed, as it is premised upon Plaintiffs' use of the overarching term "CRT Products"

11  throughout the IP-CAC, which the Complaint artificially defines to sweep together both CRTs

12  and Finished Products.   *See* IP-CAC, at ¶¶ 13-15.   Plaintiffs' use of this "CRT Products"

13  label is nothing more than a definitional slight of hand that should have been rejected by the

14  Special Master.   It does not and cannot satisfy Plaintiffs' obligations to plead *facts* sufficient

15  to give rise to a plausible "Finished Product" television conspiracy and a plausible "Finished

16  Product" computer monitor conspiracy.   *See Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129

17  S.Ct. 1937, 1949 (2009).   The fundamental issue is not whether the Complaint contains

18  conclusory allegations of a "Finished Product" conspiracy, but whether there are sufficient

19  *facts* to make such a conspiracy plausible.   The answer is no.   As detailed herein, a review

20  of the IP-CAC reveals that the only facts animating Plaintiffs' conspiracy allegations concern

21  CRTs, and CRTs alone.

22          The ramifications of the Report's conclusion in this regard are staggering, and merit a

23  *de novo* review by this Court.[2]   As the *Twombly* Court expressly recognized, "'some

24

---

25  [2]  *See, e.g.*, *Swoboda v. Pala Mining, Inc.*, 844 F.2d 654, 656 (9th Cir. 1988) ("A Special
     Master's conclusions of law receive no deference"); Fed. R. Civ. P. 53(f)(4) ("The court must
26  decide *de novo* all objections to conclusions of law made or recommended by a master"); *see
     also* Order Appointing Special Master (Docket No. 302), at ¶ 18 (same).   Pursuant to Federal

27  MDL NO. 1917                                    DEFENDANTS' JOINT OBJECTIONS TO THE SPECIAL
                                                    MASTER'S REPORT AND RECOMMENDATION
28                                                  REGARDING MOTION TO DISMISS THE IP-CAC

1  threshold of plausibility must be crossed at the outset before a . . . case should be permitted to

2  go into its inevitably costly and protracted discovery phase.'"  550 U.S. at 558 (internal

3  citation omitted).  This holding is particularly apt in connection with Plaintiffs' claimed

4  "television and computer monitor" conspiracy, which, if allowed to proceed, portends

5  potentially massive amounts of onerous discovery in order to show that Plaintiffs had no

6  good-faith basis to claim such an implausible conspiracy in the first place.  Defendants

7  respectfully request that the Court modify this conclusion of the Special Master and find that

8  the Complaint does not set forth any facts concerning a purported "Finished Products

9  conspiracy" sufficient to withstand dismissal at the pleading stage.

10  Moreover, with this one erroneous finding, the Report simply dispenses, without

11  analyzing, Defendants' substantive arguments concerning subject matter jurisdiction under

12  the Foreign Trade Antitrust Improvements Act ("FTAIA") and antitrust standing under the

13  principles articulated in *Associated General Contractors of California v. California State*

14  *Council of Carpenters*, 459 U.S. 519 (1983) ("*AGC*").  *See* Report at 16:21-19:9.

15  Defendants request that this Court remand each of these issues back to the Special Master,

16  with instructions to consider Defendants' arguments against a Complaint that, at most, alleges

17  a conspiracy to fix the prices of CRTs alone.  *See* Fed. R. Civ. P. 53(f)(1) ("In acting on a

18  master's order, report, or recommendations, the court . . . may adopt or affirm, modify, wholly

19  or partly reject or reverse, or resubmit to the master with instructions").

20  Defendants also object to the finding of the Report that Plaintiffs have properly

21  alleged acts of fraudulent concealment sufficient to toll the applicable statutes of limitation.

22  *See* Report at 19:12-24:23.  Specifically, the Report incorrectly concludes that the Plaintiffs'

23  generalized affirmative concealment allegations – which, among other things, fail to specify

24  _____

25  Rule of Civil Procedure 53(f)(1), Defendants request that the Court conduct oral arguments in
   connection with all of Defendants' objections ("In acting on a master's order, report, or
26  recommendations, the court must give the parties notice and an opportunity to be heard").

27  MDL NO. 1917                        DEFENDANTS' JOINT OBJECTIONS TO THE SPECIAL
                                        MASTER'S REPORT AND RECOMMENDATION
28                                      REGARDING MOTION TO DISMISS THE IP-CAC

3

1   with particularity *which* Defendant engaged in *what* specific concealment act – are sufficient

2   under Rule 9 of the Federal Rules of Civil Procedure.   Moreover, the Report erred as a

3   matter of law in concluding that it was "not appropriate" to address Plaintiffs' admitted failure

4   to engage in due diligence, despite having constructive knowledge of their claims based on

5   publicly-available information found in the Complaint itself.

6        Finally, Defendants do agree with, and respectfully submit that this Court adopt, the

7   Report's recommendations to dismiss Plaintiffs' claims under (i) Nebraska law based on sales

8   made by Defendants prior to July 20, 2002; (ii) Nevada law based on sales made by

9   Defendants prior to 1999; (iii) Massachusetts' Consumer Protection Act; (iv) Rhode Island's

10  Unfair Trade Practices and Consumer Protection Act; and (v) Kansas's common law of unjust

11  enrichment.   *See* Report at 28:21-29:10; 29:15-30:3; 30:18-31:7; 31:21-32:2.

12                                          **ARGUMENT**

13

14  **I.   THE REPORT'S RECOMMENDATION TO ALLOW A VAGUE AND
        UNSUBSTANTIATED "FINISHED PRODUCT" CONSPIRACY TO PROCEED
        WAS ERRONEOUS AND CONTRARY TO *TWOMBLY* AND *IQBAL***

15

16       The Report's principal recommendation – that Plaintiffs have sufficiently alleged a

17  conspiracy to fix the prices of both CRTs *and all finished products containing CRTs* – must

18  be rejected under the principles announced by the Supreme Court in *Twombly* and *Iqbal*.   It

19  is not enough for the Report to rely upon the "repetitive allegations . . . regarding 'CRT

20  Products'" found in the IP-CAC.   *See* Report at 6:1-3.   Mere "labels" and

21  artificially-constructed terms of art are plainly insufficient to meet the pleading requirements

22  imposed by Rule 8 of the Federal Rules.   *See Twombly*, 550 U.S. at 555.   Rather, a

23  well-pled Complaint must "contain sufficient factual matter, accepted as true, to 'state a claim

24  to relief that is plausible on its face,'" and not simply conceivable.   *Iqbal*, 129 S.Ct. at 1949

25  (quoting *Twombly*, 550 U.S. at 570).   Indeed, a complaint that does not permit the court to

26  infer "more than the mere possibility of misconduct . . . has alleged – *but it has not 'shown'* –

27  MDL NO. 1917                              DEFENDANTS' JOINT OBJECTIONS TO THE SPECIAL
                                             MASTER'S REPORT AND RECOMMENDATION
28                                           REGARDING MOTION TO DISMISS THE IP-CAC

                                              4

1  'that the pleader is entitled to relief.'"   *Id.* at 1950 (internal citations omitted) (emphasis

2  added).

3          The only arguably plausible conspiracy contained in the IP-CAC concerns CRTs, and

4  CRTs alone.    With respect to a purported Finished Product conspiracy – which would be

5  illogical even if it were to have been properly pled – Plaintiffs have wholly failed to meet

6  their burden of setting forth facts sufficient to state a claim to relief that is plausible on its face.

7  *Twombly*, 550 U.S. at 570; *Iqbal*, 129 S.Ct. at 1949.   Indeed, the Special Master's conclusion

8  is *directly* at odds with the telling admission in Paragraph 227 of the IP-CAC that the Finished

9  Product market is "subject to *vigorous price competition*" (emphasis added).    Among other

10  examples of Plaintiffs' wholesale failure to plead a "Finished Product" conspiracy:

11

12  • The IP-CAC itself speaks of the "CRT conspiracy," IP-CAC, at ¶¶ 138, 141, and the "CRT price-fixing conspiracy," *id.* at ¶ 145.

13

14  • All of Plaintiffs' factual allegations concerning the alleged price-fixing conspiracy pertain to CRTs, rather than Finished Products.   *Id.* at ¶¶ 152,[3] 154,[4] 155,[5] and 198.[6]

15

16  • The IP-CAC provides market concentration allegations only for CRTs, not for Finished Products.   *Id.* at ¶ 122.

17  _____

18  [3]  ¶ 152 alleges that certain Defendants met at so-called "glass meetings" and purportedly "exchanged competitive information such as proposed future *CRT* pricing"; "discuss[ed] and

19  agree[d] upon what price each would charge for *CRTs* to be sold"; and "discussed and agreed upon prices of *CRTs* that were sold to specific customers . . . ." (emphasis added).

20  [4]  ¶ 154 alleges, *inter alia*, that "Defendants ensured that all direct purchaser [Original Equipment Manufacturers] paid supracompetitive prices for *CRTs*" (emphasis added).

21  [5]  ¶ 155 is the closest that Plaintiffs come to allegations about televisions and computer

22  monitors, as it concerns the purported *impact*, or "pass-through," that the alleged "*CRT* conspiracy" had on those downstream products.   "Each of the participants in these meetings

23  knew, and in fact discussed, the *significant impact that the price of CRTs had on the cost of the finished products into which they were placed*"); *see also* ¶ 223 ("The Defendants . . .

24  *monitored* the prices of televisions and computer monitors . . . on a regular basis") (emphases added).   These allegations of price "monitoring" and pass-through, though, do not allege a

25  conspiracy to *fix prices* or otherwise restrict competition in these markets.

26  [6]  ¶ 198 alleges that "Defendants also conspired to limit production of *CRTs* by shutting down production lines . . . ."

27                     DEFENDANTS' JOINT OBJECTIONS TO THE SPECIAL

28                                                   MASTER'S REPORT AND RECOMMENDATION
                                                   REGARDING MOTION TO DISMISS THE IP-CAC

- Plaintiffs' only allegations regarding parallel pricing are specific to the prices of CRTs.   *Id.* at ¶¶ 193-196.

- In alleging the consolidation of the industry, the IP-CAC cites two ventures dedicated to CRTs only.   *Id.* at ¶ 125.

- The allegations concerning the existence of certain regulatory investigations solely relate to CRTs, and not the very different markets for Finished Products.   *Id.* at ¶¶ 4, 203-213.

- The DOJ's indictment against the former Chairman of one former Defendant alleges price-fixing only with respect to CRTs.   *Id.* at ¶¶ 4, 205.

- Plaintiffs have made no allegations against, let alone named as Defendants, many of the biggest sellers of televisions and computer monitors – such as Sharp, Dell, Hewlett Packard, Sanyo and Sony, among others.   Any purported conspiracy concerning "televisions and computer monitors" is thus rendered not just implausible, but nonsensical.   *See Twombly*, 550 U.S. at 570.

- Contrary to Plaintiffs' self-serving definition of "CRT Products," it is clear from the IP-CAC that Plaintiffs concede, as they must, that "CRTs" and "CRT Products" are completely separate products that exist in separate markets.   *See, e.g.*, IP-CAC, at ¶ 227 (discussing the "market for CRTs" and the "market for CRT Products"); ¶ 230 ("*CRTs* are a direct and substantial cost of *CRT Products*") (emphasis added).

From the above, it is clear that the mere recitation of the term "CRT Products" does not provide a plausible, factual predicate for Plaintiffs' conspiracy claims with respect to all finished products containing CRTs.[7]   As Defendants have argued, it is inherently implausible

---

[7] Nor should the mere incantation of an artificial label be enough to open the floodgates to onerous, exorbitant discovery concerning Finished Products in addition to CRTs.   As the *Twombly* Court properly recognized, "proceeding to antitrust discovery can be expensive." *Twombly*, 550 U.S. at 558; *see also Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008) (a "bare assertion of conspiracy will not suffice" under *Twombly* "because discovery in antitrust cases frequently causes substantial expenditures and gives the plaintiff the opportunity to extort large settlements even where he does not have much of a case"); *In re Travel Agent Com'n Antitrust Litig.*, 583 F.3d 896, 908-09 (6th Cir. 2009) ("Pursuant to *Twombly*, district courts must assess the plausibility of an alleged illegal agreement *before* parties are forced to engage in protracted litigation and bear excessive discovery costs") (emphasis in original).

DEFENDANTS' JOINT OBJECTIONS TO THE SPECIAL
MASTER'S REPORT AND RECOMMENDATION
REGARDING MOTION TO DISMISS THE IP-CAC

1   to conflate products as varied as a CRT tube, a television set, and a computer monitor – which

2   are each manufactured, bought and sold in completely different markets – under an omnibus

3   category, and to summarily suggest that each product was part of an overarching conspiracy.[8]

4   Nothing in the IP-CAC provides a basis for such a sweeping claim.   While the Report does

5   set forth the various instances throughout the Complaint "stating 'CRT Products,'" those

6   instances do not provide a factual basis for Plaintiffs' conspiracy claims.   Rather, those

7   paragraphs consist solely of conclusory generalities or relate to issues that do not go to the

8   alleged conspiracy itself, such as "the definitions of the products," "plaintiffs' purchases,"

9   "defendants' manufacturing, distribution and sale," and rote recitations of the claimed

10  Sherman Act and state law violations.   *See* Report at 5:5-16.

11          To the extent that the Report cites to paragraphs 140-188 of the IP-CAC, wherein

12  Plaintiffs at times used the term "CRT Products" in connection with "allegedly illegal

13  agreements," there are simply no facts from which to conclude that any of the claimed

14  conspiratorial acts or meetings had anything to do with televisions or computer monitors, as

15  opposed to CRTs alone (a product also encompassed within Plaintiffs' blunderbuss "CRT

16  Products" label).   *See, e.g.*, IP-CAC, at ¶¶ 152, 154 and 155.   Similarly, the Report cites the

17  Complaint as alleging "unusual price movements" (Report at 10:18-19), but fails to point out

18  that each such purported example in the Complaint (included in a section entitled "The *CRT

19  Market* During the Conspiracy") only concerns pricing for CRT tubes.   *Id.* at ¶¶ 192-202.

20  The same is true with respect to the "governmental antitrust investigations" also referenced in

21  the Report.   Report at 10:19-20 (citing IP-CAC, at ¶¶ 203-221).

22          At bottom, the Report fails to provide a plausible basis under *Twombly* and *Iqbal* to

23  allow a purported "Finished Products conspiracy" to survive.   Among other fatal flaws

24  ─────────────────

25  [8]  It is further implausible to suggest the existence of such a monolithic conspiracy given the
    many individual defendants that do not make, manufacture or sell CRTs, but rather *purchase*
    CRTs and incorporate them into products that they do sell.   Plaintiffs provide no plausible
26  justification for such an illogical conspiracy.

27   MDL NO. 1917                                    DEFENDANTS' JOINT OBJECTIONS TO THE SPECIAL
                                                      MASTER'S REPORT AND RECOMMENDATION
28                                                   REGARDING MOTION TO DISMISS THE IP-CAC

7

1   unaccounted for in the Report, the IP-CAC is devoid of evidentiary factual allegations

2   concerning the time, place and manner of such a conspiracy.   *See Twombly*, 550 U.S. at 557

3   ("a naked assertion of conspiracy in a § 1 complaint" without further "factual enhancement . . .

4   stops short of the line between possibility and plausibility"); *Iqbal*, 129 S.Ct. at 1950 ("legal

5   conclusions . . . must be supported by factual allegations").   Plaintiffs also fail to provide any

6   allegations concerning the concentration of the Finished Products market.   Instead, Plaintiffs

7   admit that the market for Finished Products is "*subject to vigorous price competition*."

8   IP-CAC, at ¶ 227 (emphasis added).   Thus, apart from failing to include even a single

9   allegation suggesting that Finished Product prices were fixed, Plaintiffs provide no allegations

10   that could plausibly explain *how* the prices for Finished Products could have been fixed in an

11   admittedly competitive market.   These critical factual allegations – omitted completely from

12   the IP-CAC – are exactly the types of facts that must be pled under *Twombly* and *Iqbal* in

13   order to survive a motion to dismiss.

14          Moreover, the caselaw cited in the Report does not provide a basis for the Report's

15   sweeping conclusion concerning a "Finished Products conspiracy."   As an initial matter, the

16   Report incorrectly states that there are no relevant Ninth Circuit cases interpreting *Twombly*

17   and *Iqbal* in "antitrust conspiracy litigation."   Report at 8:6-7.   Defendants respectfully

18   refer the Court to *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042 (9th Cir. 2008) and *William O.*

19   *Gilley v. Enterprises, Inc. v. Atlantic Richfield Co.*, 588 F.3d 659 (9th Cir. 2009) for two

20   recent articulations of the *Twombly* pleading standards in Section 1 cases.   In *Kendall*, the

21   Ninth Circuit stated that in order to survive dismissal, plaintiffs "must plead not just ultimate

22   facts (such as a conspiracy), but evidentiary facts" concerning the claimed conspiracy.   518

23   F.3d at 1047.   That is because "a bare allegation of a conspiracy is almost impossible to

24   defend against, particularly where the defendants are large institutions with hundreds of

25   employees entering into contracts and agreements daily."   *Id.*   These considerations apply

26

27   MDL NO. 1917                                              DEFENDANTS' JOINT OBJECTIONS TO THE SPECIAL
                                                              MASTER'S REPORT AND RECOMMENDATION
28                                                            REGARDING MOTION TO DISMISS THE IP-CAC

1    in spades in this case, where Plaintiffs have failed to provide *any* evidentiary facts to support

2    their conspiracy claims concerning Finished Products.

3         The Report's reliance on the *SRAM* litigation from this District is unavailing with

4    respect to a purported Finished Products conspiracy.   *See* Report at 9:4-14 (citing *In re Static*

5    *Random Access Memory (SRAM) Antitrust Litig.*, 580 F.Supp.2d 896 (N.D. Cal. 2008).   In

6    *SRAM*, the court's decision concerned a purported price-fixing conspiracy related to SRAM

7    itself, rather than all end-products that incorporate SRAM.   *See, e.g., id.* at 901 (summarizing

8    plaintiffs' allegations concerning the "market for SRAM").   The *SRAM* court *did not*

9    consider, and certainly did not allow, an amorphous conspiracy case to proceed with respect

10   to any and all end-products that might incorporate SRAM, such as computers, cell phones and

11   digital cameras.   Similarly, the Report's citation to Judge Illston's decisions in the *TFT-LCD*

12   litigation – another "component case" pending in this District – proves too much.   *See*

13   Report at 8:19-9:3 (citing *In re TFT-LCD Antitrust Litig.*, 586 F. Supp.2d 1109 (N.D. Cal.

14   2008) and 599 F. Supp.2d 1179 (N.D. Cal. 2009)).   Judge Illston held only that Plaintiffs'

15   conspiracy allegations with respect to the LCD panels themselves could survive past a motion

16   to dismiss, but did not make a specific finding concerning all finished products that contain

17   the panels.

18   **II.    THE COURT SHOULD REMAND DEFENDANTS' MOTION BACK TO THE
         SPECIAL MASTER TO CONSIDER ISSUES RELATING TO SUBJECT
19       MATTER JURISDICTION AND ANTITRUST STANDING**

20        Having made the principal recommendation that the "relevant products alleged in the

21   Complaint" are both CRTs and Finished Products, the Report proceeds to summarily reject

22   Defendants' dispositive arguments concerning subject matter jurisdiction and antitrust

23   standing.   Because the Report made this determination based on an erroneous premise about

24   the scope of the Complaint, this Court should remand Defendants' motion back to the Special

25   Master, with instructions to consider all of Defendants' arguments.

26

27   MDL NO. 1917                              DEFENDANTS' JOINT OBJECTIONS TO THE SPECIAL
                                                      MASTER'S REPORT AND RECOMMENDATION
28                                              REGARDING MOTION TO DISMISS THE IP-CAC

                                          9

**A.    The Court Should Remand The Issue Of Subject Matter Jurisdiction Under The FTAIA To The Special Master**

The Report does not dispute the proposition set forth in Defendants' Joint Motion that, under the FTAIA, the Sherman Act does not apply to conduct involving foreign trade unless that conduct has direct, substantial, and reasonably foreseeable anticompetitive effects on U.S. commerce.    Report at 16:22-17:25 (citing 15 U.S.C. § 6a (2006)).    Nor does the Report dispute that the IP-CAC is replete with allegations of foreign conduct concerning foreign CRT sales.    To the contrary, the Report correctly concludes that there is no market in the U.S. for CRTs:

> It is apparent that the CRTs are manufactured *abroad* and are sold to *foreign* other-equipment manufacturers, which incorporate the CRTs into their products, such as computers and television sets.    And it is the assembled products containing the CRTs which are then sold into the United States through the chain of distribution, and are ultimately sold and purchased in retail markets of the United States.    *Apart from the CRTs being contained in the assembled products, there is apparently no separate market for CRTs in the United States.*

Report at 4:1-7 (emphasis added).[9]

However, the Report is flawed in concluding that the allegations in the IP-CAC are sufficient to establish jurisdiction because they "encompass CRT Products," purportedly "manufactured by the defendants" and "imported into the United States, and bought and sold in United States trade and commerce . . ."    *Id.* at 17:19-25.    Indeed, in the absence of facts supporting a conspiracy for Finished Products, sales of Finished Products in the U.S. are irrelevant in establishing jurisdiction.    *See supra* Section I.    In this respect, it is significant that the FTAIA bars antitrust actions where, as here, Plaintiffs allege "restraints in foreign markets *for inputs*," such as CRTs, "that are used abroad to manufacture downstream products . . . that may later be imported into the United States."    *United Phosphorus, Ltd. v.*

---

[9]  This is fatal to the complaint as the FTAIA bars jurisdiction over foreign sales.    *See United States v. LSL Biotechs.*, 379 F.3d 672, 680 (9th Cir. 2004) (holding that the FTAIA controlled where plaintiffs alleged an agreement between domestic and foreign corporations to restrict the sale of modified seeds in Mexico).

DEFENDANTS' JOINT OBJECTIONS TO THE SPECIAL MASTER'S REPORT AND RECOMMENDATION REGARDING MOTION TO DISMISS THE IP-CAC

1   *Angus Chem. Co.*, 131 F.Supp.2d 1003, 1014 (N.D. Ill. 2001), *aff'd*, 322 F.3d 942 (7th Cir.

2   2003) (emphasis added); *see id.* (domestic effects, if any, of such inputs "would obviously not

3   be 'direct,' much less 'substantial' and 'reasonably foreseeable'"); *In re Intel Corp.*

4   *Microprocessor Antitrust Litig.*, 476 F. Supp. 2d 452, 456 (D. Del. 2007).

5          For these reasons, to the extent the Court holds (as it should) that there is no plausible

6   conspiracy alleged for Finished Products, Defendants respectfully request that the Court

7   remand the FTAIA issue to the Special Master, so he may consider the legal arguments raised

8   by Defendants' Joint Motion that are not reached in the Report.[10]   Specifically, Defendants

9   urge this Court to adopt the efficient case management approach of the court in *Intel*, by

10  dismissing claims based on foreign sales *at the pleading stage.   See In re Intel Corp.*

11  *Microprocessor Antitrust Litig.*, 452 F. Supp. 2d 555, 559-60 (D. Del. 2006); *see also*

12  *Commercial Street Express LLC v. Sara Lee Corp.*, No. 08 C 1179, 2008 WL 5377815 (N.D.

13  Ill. Dec. 18, 2008) (dismissing claims for lack of subject matter jurisdiction under the FTAIA

14  at the pleading stage); *Emerson Elec. Co. v. Le Carbone Lorraine, S.A.*, 500 F. Supp. 2d 437

15  (D.N.J. 2007) (same).

16          **B.      The Court Should Remand The Issue Of Antitrust Standing Under**
                       ***Associated General Contractors* And Its Progeny To The Special Master**
17
18          The Report found that Plaintiffs had adequately established antitrust standing because

19  "the Special Master interprets the complaints as alleging a conspiracy as to CRT Products" in

20  addition to CRTs.   Report at 18:18-19.   Rather than determine whether Plaintiffs had truly

21  [10]  For example, the Special Master concludes that the allegations in the IP-CAC are sufficient
    to establish subject matter jurisdiction because the Complaint alleges "conduct *in* the United
22  States facilitating the conspiracy."   Report at 18:2-3 (emphasis in original).   Even assuming,
    *arguendo*, that the complaint alleges conduct in the U.S., this Court squarely rejected such a
23  theory in *In re Rubber Chemicals Antitrust Litigation*, holding that, for purposes of the
    FTAIA, foreign conduct cannot be "'combined with domestic conduct in an attempt to confer
24  jurisdiction over the foreign conduct under the rubric of a single claim.'"   504 F. Supp. 2d
    777, 784 (N.D. Cal. 2007) (quoting *In re Intel Corp. Microprocessor Antitrust Litig.*, 452 F.
25  Supp. 2d 555, 562 (D. Del. 2006) ("*Intel*")); *see also Dee-K Enters., Inc. v. Heveafil Sdn. Bhd*,
    299 F.3d 281, 294-95 (4th Cir. 2002) (the FTAIA applies where, as here, the "acts, targets,
26  and effects" are "primarily foreign").

27  MDL NO. 1917                    DEFENDANTS' JOINT OBJECTIONS TO THE SPECIAL
                                              MASTER'S REPORT AND RECOMMENDATION
28                                            REGARDING MOTION TO DISMISS THE IP-CAC

11

1   met the five-pronged *AGC* test, *see* 459 U.S. at 537-544, the Report simply assumed the

2   existence of standing based upon its interpretation of the Complaint's scope.   Because that

3   threshold determination was erroneous for all of the reasons set forth above, *see supra* Section

4   I, this Court should remand the issue of antitrust standing for a proper resolution.

5           Defendants have argued that Plaintiffs failed to establish antitrust standing under the

6   antitrust laws of fourteen out of the seventeen states at issue; under the consumer protection

7   laws of Nebraska and New York; and under the federal antitrust laws.[11]   The Report agrees

8   with Defendants that *AGC* standing is measured on a state-by-state basis "by the scope of the

9   states' 'repealer' statutes."   Report at 19:1-2.   Rather than undertaking that analysis,

10  however, the Report simply stated *ipse dixit* that Plaintiffs "have alleged the elements of

11  standing under *AGC*."   *Id.* at 18:13-19:9.   There is no analysis or reasoning accompanying

12  or justifying that recommendation other than the fact that Plaintiffs purchased "CRT

13  Products."   Because Defendants have shown that Plaintiffs have alleged no facts concerning

14  a conspiracy as to Finished Products, however, this is plainly not sufficient.

15          Defendants respectfully refer the Court to pages 16-29 of their joint moving brief

16  (Docket No. 485), and 11-20 of their joint reply (Docket No. 555), for a complete articulation

17  of Defendants' arguments concerning antitrust standing.   As more fully set forth in those

18  papers, which are incorporated herein by reference, Defendants submit that all of the *AGC*

19  factors preclude a finding of antitrust standing for Plaintiffs.   For example, Plaintiffs'

20  allegations fail to meet either of the categories for "market participation" that are enumerated

21

22  [11]  With respect to Plaintiffs' federal claims for injunctive relief pursuant to Section 1 of the
    Sherman Act and Section 16 of the Clayton Act, Defendants object to the Report's summary
23  conclusion that "plaintiffs have adequately pled standing to bring their injunctive claims."
    In *Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 104, 111-113 (1986), the Supreme
24  Court held that plaintiffs seeking injunctive relief must still plead (and ultimately
    demonstrate), among other things, that they have suffered an antitrust injury.   Thus, under
25  both Sections 4 and 16 of the Clayton Act, plaintiffs must plead an injury "of the type the
    antitrust laws were designed to prevent."   *See Lucas Auto. Eng., Inc v. Bridgestone/Firestone,
26  Inc.*, 140 F.3d 1228, 1234-35 (9th Cir. 1998).

28

1    by the Ninth Circuit as a prerequisite to a finding of "antitrust injury," which is a *sine qua non*

2    of antitrust standing.[12]     Specifically, Plaintiffs do not even *attempt* to allege that the

3    televisions and computer monitors they actually bought are "reasonabl[y] interchangeab[le],"

4    or experience "cross-elasticity of demand," with CRTs.   *See*, *e.g.*, *Bhan v. NME Hosps., Inc.*,

5    772 F.2d 1467, 1470-71 (9th Cir. 1985).   Thus, Plaintiffs cannot claim that they have been

6    injured in a way that the antitrust laws were enacted to prevent.   Moreover, because the facts

7    underlying Plaintiffs' allegations concern, if anything, CRTs and not Finished Products,

8    Plaintiffs, as purchasers of Finished Products, cannot show that their alleged injury was

9    anything other than remote, speculative, unmanageably complex, and duplicative.   *See AGC*,

10   459 U.S. at 539-44.

11       Notably, the Report fails to include Judge Hamilton's well-reasoned opinions in the

12   *DRAM* cases in its recitation of relevant cases from the Northern District of California.

13   There, the court rejected similar claims brought by indirect purchasers of finished computers

14   and "other electronic equipment" which incorporated DRAM as a component part on antitrust

15   standing grounds.   *In re DRAM Antitrust Litig.*, 516 F.Supp. 2d 1072, 1083-1093 (N.D. Cal.

16   2007) ("*DRAM I*"); *In re DRAM Antitrust Litig.*, 536 F.Supp. 2d 1129, 1135-1142 (N.D. Cal.

17   2008) ("*DRAM II*").   Specifically, Judge Hamilton found that plaintiffs who bought finished

18   products containing DRAM chips purchased in a "secondary market that is incidental to the

19   primary price-fixed market," and thus could not prove antitrust injury.   *See DRAM I*, 516

20   F.Supp. 2d at 1091; *DRAM II*, 536 F.Supp. 2d at 1136.[13]   The same conclusion is mandated

21

22   [12]  *See*, *e.g.*, *Toscano v. PGA Tour, Inc.*, 201 F.Supp.2d 1106, 1116 (E.D. Cal. 2002) ("the
     absence of antitrust injury is fatal").

23   [13]  *See also Meyer v. Qualcomm Inc.*, No. 08cv655 WQH, 2009 WL 539902 *7 (S.D. Cal.
     March 3, 2009) (dismissing indirect purchaser plaintiff's Sherman Act Section One claim
24   where allegedly restrained technology was a component of product plaintiff purchased, and
     plaintiff failed to allege facts showing that he participated in the relevant market); *Intergraph
25   Corp. v. Intel Corp.*, 195 F.3d 1346, 1355 (Fed. Cir. 1999) (finding that a manufacturer of
     graphics workstations did not compete in the market for microprocessors incorporated within
26   the workstations); *Barton & Pittinos, Inc. v. Smithkline Beecham Corp.*, 118 F.3d 178, 182-84
     (3rd Cir. 1997) (Alito, J.) (marketer of vaccine was not a participant in the market for the

27   MDL NO. 1917                              DEFENDANTS' JOINT OBJECTIONS TO THE SPECIAL
                                               MASTER'S REPORT AND RECOMMENDATION
28                                             REGARDING MOTION TO DISMISS THE IP-CAC

1    here, and Defendants respectfully request that this Court remand Defendants' antitrust

2    standing arguments back to the Special Master for renewed consideration.

3

4    **III.    THE COURT SHOULD MODIFY THE REPORT'S RECOMMENDATIONS CONCERNING FRAUDULENT CONCEALMENT AND FIND THAT PLAINTIFFS HAVE FAILED TO PLEAD FACTS SUFFICIENT TO TOLL THE STATUTE OF LIMITATIONS FOR ANY OF THEIR FEDERAL OR STATE LAW CLAIMS**

5

6

7        **A.    The Report Incorrectly Concludes That Plaintiffs' Generalized Affirmative Concealment Allegations Are Sufficient**

8        Plaintiffs fail to plead their fraudulent concealment claim sufficiently and fail to

9    satisfy the heightened pleading requirements imposed by Rule 9 of the Federal Rules.[14]   *See*

10   Report at 21:5-9 ("the pleading of fraudulent concealment is not governed solely by FRCP

11   Rule 8, but also by the stricter pleading requirements of RCP Rule 9(b))").   Plaintiffs may

12   not "generally use the fraudulent concealment by one defendant as a means to toll the statute

13   of limitations against other defendants."   *Barker v. Am. Mobil Power Corp.*, 64 F.3d 1397,

14   1402 (9th Cir. 1995).   The Report acknowledges that the IP-CAC fails to allege that *each*

15   Defendant engaged in acts of fraudulent concealment.   Report at 21:5-6.   Nevertheless, it

16   incorrectly concludes that Plaintiffs' affirmative-concealment allegations are sufficient to

17   overcome a motion to dismiss.   They are not.   The IP-CAC's allegations fail to specify

18   *which* Defendant engaged in *what* specific concealment act.   *Id.*   The IP-CAC consists of,

19   and relies upon, only generalized, conclusory allegations that some unspecified group of

20   "Defendants" were members of a conspiracy that "they affirmatively concealed."   IP-CAC,

21   at ¶ 290.   Such allegations are insufficient as a matter of law.[15]

22

23   "package of marketing and distribution of the vaccine," because marketing alone was not "reasonably interchangeable" with the package).

24   [14]  Defendants also incorporate by reference their arguments concerning fraudulent

25   concealment as set forth in Defendants' joint objections to the portions of the Report concerning Defendants' motion to dismiss the DP-CAC.

26   [15]  The Report purports to rely upon the "tolling allegations" set forth in Paragraph 290 of the IP-CAC, which include several acts of affirmative conduct allegedly taken by "Defendants."

27   MDL NO. 1917                                    DEFENDANTS' JOINT OBJECTIONS TO THE SPECIAL
                                                     MASTER'S REPORT AND RECOMMENDATION
28                                                   REGARDING MOTION TO DISMISS THE IP-CAC

1        In this Circuit, as elsewhere, Plaintiffs are required to set forth separate factual

2    allegations as to each Defendant that provide notice of who allegedly did what to whom,

3    when and where.   *See Kendall*, 518 F.3d at 1048 (stating complaint must answer "the basic

4    questions: who, did what, to whom (or with whom), where and when?").   Plaintiffs'

5    allegations come up well short of this standard, and Plaintiffs therefore fail to satisfy their

6    pleading burden.   They fail to allege fraudulent concealment with the required level of

7    specificity.

8        **B.     The Report Incorrectly Concludes That Plaintiffs' Failure To Plead The
            Required Due Diligence And Constructive Knowledge Elements Is Not
9            Appropriate For Resolution On A Motion To Dismiss**

10       The Report does not properly address Plaintiffs' self-acknowledged failure to plead

11   the requisite due diligence.   This defect is fatal to Plaintiffs' fraudulent concealment claim.

12   *Rutledge*, 576 F.2d at 249-50.   Rather, the Report incorrectly concludes, "lack of due

13   diligence and constructive knowledge are *factual* issues not appropriate for a motion to

14   dismiss."   Report at 24:15-16 (emphasis in the original).

15       To the contrary, the IP-CAC is replete with allegations concerning *publicly-available*

16   facts that put Plaintiffs on notice well before the tolling period.   Plaintiffs admit they had

17   constructive notice of their claims that, as a result, triggered their due diligence obligations.

18   *Rutledge*, 576 F.2d at 249-50.   In fact, the publicly-available information alleged and relied

19   upon by Plaintiffs was available well before November 26, 2003.   As a result, "the time bar

20   is apparent on the face of complaint" and dismissal is appropriate.   *See In re SRAM Antitrust*

21

22   _____

23   Report at 23:16-24:3.   As the Report observes, however, this paragraph does "not nam[e]
     each defendant."   *Id.* at 23:20.   Moreover, *none* of these allegations involves the type of

24   active concealment designed to *mislead* the Plaintiffs regarding the existence of the alleged
     conspiracy.   *See Conmar Corp. v. Mitsui & Co. (U.S.A.), Inc.*, 858 F.2d 499, 502 (9th Cir.

25   1988).   At best, the allegations cited by Plaintiffs are of "silence or passive conduct" by the
     Defendants, which are insufficient to establish the affirmative conduct necessary for a

26   fraudulent concealment claim.   *Rutledge v. Boston Woven Hose and Rubber Co.*, 576 F.2d
     248, 250 (9th Cir. 1978).

27   MDL NO. 1917                                    DEFENDANTS' JOINT OBJECTIONS TO THE SPECIAL
                                                     MASTER'S REPORT AND RECOMMENDATION
28                                                   REGARDING MOTION TO DISMISS THE IP-CAC

1   *Litig.*, 580 F. Supp. 2d at 904 (internal citation omitted); *accord Rutledge*, 576 F.2d at 250

2   (affirming dismissal of complaint as time-barred).

3                                              **CONCLUSION**

4            For all of the reasons stated above, Defendants respectfully object to the Special

5   Master's Report, except for those recommendations concerning state law which Defendants

6   submit should be adopted.[16]   Defendants further request that the Court modify the Report's

7   conclusions accordingly, and remand Defendants' motion to dismiss back to the Special

8   Master for additional consideration consistent with your Honor's modifications.

9

10  Dated: February 19, 2010                    By:   /s/ David L. Yohai
                                                STEVEN A. REISS (*pro hac vice*)
11                                              Email: steven.reiss@weil.com
                                                DAVID L. YOHAI (*pro hac vice*)
12                                              Email: david.yohai@weil.com
                                                DAVID E. YOLKUT (*pro hac vice*)
13                                              Email: david.yolkut@weil.com
                                                **WEIL, GOTSHAL & MANGES LLP**
14                                              767 Fifth Avenue
                                                New York, New York 10153-0119
15                                              Telephone: (212) 310-8000
                                                Facsimile: (212) 310-8007
16
17
                                                GREGORY D. HULL (57367)
18                                              Email: greg.hull@weil.com
                                                **WEIL, GOTSHAL & MANGES LLP**
19                                              201 Redwood Shores Parkway
                                                Redwood Shores, California 94065-1175
20                                              Telephone: (650) 802-3000
                                                Facsimile: (650) 802-3100
21

22

23   _____

24   [16]  As set forth above, Defendants agree with, and submit that this Court adopt, the Report's
     recommendations to dismiss Plaintiffs' claims under (i) Nebraska law based on sales made by
     Defendants prior to July 20, 2002; (ii) Nevada law based on sales made by Defendants prior
25   to 1999; (iii) Massachusetts' Consumer Protection Act; (iv) Rhode Island's Unfair Trade
     Practices and Consumer Protection Act; and (v) Kansas's common law of unjust enrichment.
26   *See* Report at 28:21-29:10; 29:15-30:3; 30:18-31:7; 31:21-32:2.

27   MDL NO. 1917                              DEFENDANTS' JOINT OBJECTIONS TO THE SPECIAL
                                               MASTER'S REPORT AND RECOMMENDATION
28                                             REGARDING MOTION TO DISMISS THE IP-CAC

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

By:  ___/s/ Jeffrey L. Kessler_____
JEFFREY L. KESSLER (*pro hac vice*)
Email: jkessler@dl.com
A. PAUL VICTOR (*pro hac vice*)
Email: pvictor@dl.com
EVA W. COLE (*pro hac vice*)
Email: ecole@dl.com
**DEWEY & LEBOEUF LLP**
1301 Avenue of the Americas
New York, NY 10019
Telephone: (212) 259-8000
Facsimile: (212) 259-7013

*Attorneys for Defendants Panasonic*
*Corporation of North America, MT Picture*
*Display Co., Ltd., and Panasonic Corporation*
*(f/k/a Matsushita Electric Industrial Co., Ltd.)*

By:  ___/s/ Gary L. Halling_____
GARY L. HALLING (66087)
Email: ghalling@sheppardmullin.com
JAMES L. MCGINNIS (95788)
Email: jmcginnis@sheppardmullin.com
MICHAEL SCARBOROUGH (203524)
Email: mscarborough@sheppardmullin.com
**SHEPPARD, MULLIN, RICHTER &**
**HAMPTON LLP**
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone: (415)-434-9100
Facsimile: (415)-434-3947

*Attorneys for Defendants Samsung SDI*
*America, Inc., Samsung SDI Co., Ltd., Samsung*
*SDI (Malaysia) Sdn. Bhd., Samsung SDI*
*Mexico S.A. de C.V., Samsung SDI Brasil Ltda.,*
*Shenzhen Samsung SDI Co. Ltd., and Tianjin*
*Samsung SDI Co., Ltd.*

By:  ___/s/ Ian Simmons_____
MICHAEL TUBACH (145955)
Email: mtubach@omm.com
**O'MELVENY & MYERS LLP**
Two Embarcadero Center, 28th Floor
San Francisco, California 94111-3823

MDL NO. 1917

DEFENDANTS' JOINT OBJECTIONS TO THE SPECIAL
MASTER'S REPORT AND RECOMMENDATION
REGARDING MOTION TO DISMISS THE IP-CAC

Telephone: (415) 984-8876
Facsimile: (415) 984-8701

IAN SIMMONS (*pro hac vice*)
Email: isimmons@omm.com
**O'MELVENY & MYERS LLP**
1625 Eye Street, NW
Washington, DC 20006
Telephone: (202) 383-5300
Faacsimile: (202) 383-5414

*Attorneys for Defendants Samsung Electronics
Co., Ltd. and Samsung Electronics America,
Inc.*

By:  ___/s/ Samuel Miller_____
Samuel R. Miller (SBN 66871)
Email: srmiller@sidley.com
Marie L. Fiala (SBN 79676)
Email: mfiala@sidley.com
Ryan M. Sandrock (SBN 251781)
Email: rsandrock@sidley.com
Robert B. Martin, III (SBN 235489)
Email: rbmartin@sidley.com
SIDLEY AUSTIN LLP
555 California Street, 20th Floor
San Francisco, California    94104
Telephone: (415) 772-1200
Facsimile: (415) 772-7400

*Attorneys for Defendants LG Electronics, Inc.,
LG Electronics USA, Inc., and LG Electronics
Taiwan Taipei Co., Ltd.*

By:  ___/s/ Ethan E. Litwin_____
ETHAN E. LITWIN (*pro hac vice*)
Email: LitwinE@howrey.com
**HOWREY LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 896-6500
Facsimile: (212) 896-6501

*Attorneys for Defendant Philips Electronics
North America Corporation, Koninklijke*

MDL NO. 1917

DEFENDANTS' JOINT OBJECTIONS TO THE SPECIAL
MASTER'S REPORT AND RECOMMENDATION
REGARDING MOTION TO DISMISS THE IP-CAC

18

1

*Philips Electronics N.V., Philips Electronics Industries (Taiwan ), Ltd., and Philips da Amazonia Industria Electronica Ltda.*

2

3

By: /s/ Bruce H. Jackson
BRUCE H. JACKSON (98118)

4

Email: bruce.h.jackson@bakernet.com
ROBERT W. TARUN (64881)

5

Email: robert.w.tarun@bakernet.com

6

**BAKER & MCKENZIE LLP**
Two Embarcadero Center, 11th Floor

7

San Francisco, CA 94111-3802
Telephone: (415) 576-3000

8

Facsimile: (415) 576-3099

9

PATRICK J. AHERN (*pro hac vice*)

10

Email: patrick.j.ahern@bakernet.com
ROXANE C. BUSEY (*pro hac vice*)

11

Email: roxane.c.busey@bakernet.com
KAREN SEWELL *(pro hac vice)*

12

Email: karen.sewell@bakernet.com

13

**BAKER & MCKENZIE LLP**
130 E. Randolph Dr., Suite 3500

14

Chicago, IL 60601
Telephone: (312) 861-8000

15

16

*Attorneys for Tatung Company of America, Inc.*

By: /s/ Kent M. Roger

17

KENT M. ROGER (95987)

18

Email: kroger@morganlewis.com
MICHELLE PARK CHIU (248421)

19

Email: mchiu@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**

20

One Market, Spear Street Tower
San Francisco, CA 94105-1126

21

Telephone: (415) 442-1000
Facsimile: (415) 442-1001

22

23

*Attorneys for Defendants Hitachi, Ltd., Hitachi Asia, Ltd., Hitachi America, Ltd., Hitachi Electronic Devices (USA), Inc., and Hitachi Displays, Ltd.*

24

25

26

27

DEFENDANTS' JOINT OBJECTIONS TO THE SPECIAL MASTER'S REPORT AND RECOMMENDATION REGARDING MOTION TO DISMISS THE IP-CAC

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

By: /s/ Terry Calvani

TERRY CALVANI (53260)
Email: terry.calvani@freshfields.com
BRUCE C. MCCULLOCH (*pro hac vice*)
Email: bruce.mcculloch@freshfields.com
**FRESHFIELDS BRUCKHAUS DERINGER
US LLP**
701 Pennsylvania Avenue, N.W., Suite 600
Washington, DC 20004
Telephone: (202) 777-4500
Facsimile: (202) 777-4555

*Attorneys for Defendant Beijing Matsushita
Color CRT Company, Ltd.*

By: /s/ George L. Paul

CHRISTOPHER M. CURRAN (*pro hac vice*)
Email:   ccurran@whitecase.com
GEORGE L. PAUL (*pro hac vice*)
Email:   gpaul@whitecase.com
LUCIUS B. LAU (*pro hac vice*)
Email:   alau@whitecase.com
**WHITE & CASE LLP**
701 Thirteenth Street, N.W.
Washington, DC  20005
Telephone: (202) 626-3600
Facsimile: (202) 639-9355

*Attorneys for Defendants Toshiba Corporation,
Toshiba America Electronic Components, Inc.,
Toshiba America Information Systems, Inc.,
Toshiba America, Inc., and Toshiba America
Consumer Products, L.L.C.*

By: /s/ William Diaz

WILLIAM DIAZ (232297)
Email: wdiaz@mwe.com
**MCDERMOTT WILL & EMERY**
18191 Von Karman Avenue
Suite 500
Irvine, CA 92612-7108
Telephone: (949) 851-0633
Facsimile: (949) 851-9348

*Attorneys for Samtel Color, Ltd.*

MDL NO. 1917

DEFENDANTS' JOINT OBJECTIONS TO THE SPECIAL
MASTER'S REPORT AND RECOMMENDATION
REGARDING MOTION TO DISMISS THE IP-CAC

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Pursuant to General Order No. 45, § X-B, the filer attests that concurrence in the filing of this document has been obtained from each of the above signatories.*

MDL NO. 1917

DEFENDANTS' JOINT OBJECTIONS TO THE SPECIAL
MASTER'S REPORT AND RECOMMENDATION
REGARDING MOTION TO DISMISS THE IP-CAC