MICHAEL F. TUBACH (SBN 145955)
mtubach@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111
Telephone:  (415) 984-8700
Facsimile:  (415) 984-8701

IAN SIMMONS (*pro hac vice*)
isimmons@omm.com
O'MELVENY & MYERS LLP
1625 Eye Street NW
Washington, DC 20006
Telephone:  (202) 383-5300
Facsimile:  (202) 383-5414

Attorneys For Defendants
**SAMSUNG ELECTRONICS CO., LTD.; and**
**SAMSUNG ELECTRONICS AMERICA, INC.**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE:  CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Case No.: 3:07-cv-5944 SC |
| | MDL No. 1917 |
| This Document Relates To: | **SAMSUNG ELECTRONICS CO., LTD., AND SAMSUNG ELECTRONICS AMERICA, INC.'S OBJECTIONS TO THE SPECIAL MASTER'S REPORT, RECOMMENDATIONS, AND TENTATIVE RULINGS REGARDING THEIR MOTION TO DISMISS DIRECT PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT** |
| DIRECT PURCHASER ACTION | |
| | Judge: Hon. Samuel Conti |
| | Special Master: Hon. Charles A. Legge (Ret.) |

1

## TABLE OF CONTENTS

2

**Page**

3

4
ARGUMENT ................................................................................................................................... 1

5

6
I.      THE SE DEFENDANTS MUST BE DISMISSED FROM THE COMPLAINT
        BECAUSE IT ADEQUATELY ALLEGES A TUBES CONSPIRACY ONLY,
        AND THE SE DEFENDANTS DO NOT SELL TUBES ................................................... 1

7

8
II.     DISMISSAL IS REQUIRED EVEN IF A FINISHED PRODUCTS
        CONSPIRACY IS ALLEGED ........................................................................................... 4

9

10
CONCLUSION ................................................................................................................................ 5

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

# TABLE OF AUTHORITIES

**Page**

3

**Cases**

*Ashcroft v. Iqbal*,
  129 S. Ct. 1937 (2009) .......................................................................................................... 1, 2

*Bailey Lumber & Supply Co. v. Georgia-Pacific Corp.*,
  2009 WL 2872307 (S.D. Miss. Aug. 10, 2009) ............................................................ 5

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................ 1, 2, 5

*Brennan v. Concord EFS, Inc.*,
  369 F. Supp. 2d 1127 (N.D. Cal. 2005) ........................................................................ 4

*Campfield v. State Farm Mut. Auto. Ins. Co.*,
  532 F.3d 1111 (10th Cir. 2008) ..................................................................................... 4

*Copperweld Corp. v. Independence Tube Corp.*,
  467 U.S. 752 (1984) ...................................................................................................... 4

*In re ATM Fee Antitrust Litig.*,
  No. 04-02676 (N.D. Cal. Sept. 4, 2009) ....................................................................... 4

*Kendall v. Visa U.S.A., Inc.*,
  518 F.3d 1042 (9th Cir. 2008) .................................................................................... 2, 4

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986) ...................................................................................................... 3

*Rick-Mik Enters., Inc. v. Equilon Enters., LLC*,
  532 F.3d 963 (9th Cir. 2008) ........................................................................................ 5

1    Defendants Samsung Electronics Co., Ltd. (SEC), and Samsung Electronics America, Inc.

2    (SEA) (the SE Defendants) respectfully submit these objections to the Special Master's Report,

3    Recommendations, and Tentative Rulings (R&R), and respectfully request dismissal of the Direct

4    Purchaser Plaintiffs' Consolidated Amended Complaint (Complaint or DPC).

5                                    **ARGUMENT**

6         The Complaint asserts that defendants, including the SE Defendants, "conspired" to fix

7    the "price at which CRT Products were sold in the United States."  DPC, Dkt. # 436, ¶ 3.  "CRT

8    Products" is defined to include both Cathode Ray Tubes (CRTs or Tubes)—a component in

9    televisions and computer monitors—and the TVs and monitors themselves (Finished Products).

10   DPC ¶ 1.  The actual facts alleged in the Complaint at most only support a conspiracy to fix the

11   prices of Tubes, not of Finished Products.  The Special Master's contrary conclusion is erroneous,

12   applying a pleading standard that would have been suspect even before *Bell Atl. Corp. v.*

13   *Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), but is certainly

14   incorrect after them.  This is particularly salient as to the SE Defendants, because neither the SE

15   Defendants nor any of their wholly owned subsidiaries manufacture or sell Tubes—only Finished

16   Products.  Moreover, even overlooking that the Complaint fails properly to plead a Finished

17   Products conspiracy, the Special Master erred in finding that the Complaint gave adequate notice

18   to the SE Defendants by alleging that "Samsung"—the moniker plaintiffs use to describe both the

19   SE Defendants, and Samsung SDI and its subsidiaries (the SDI Defendants)—conspired to fix

20   prices of "CRT Products."  Samsung SDI is a separate publicly traded company that sells Tubes

21   and in which it is undisputed that SEC owns an approximately 20% minority stake.  Because

22   "Samsung" includes two separate corporate families, and "CRT Products" includes multiple

23   products at two different levels of the distribution chain, the allegation that "Samsung" fixed

24   "CRT Products" prices does not even put the SE Defendants on notice of the object of the alleged

25   conspiracy, let alone which acts the SE Defendants are alleged to have done.

26   **I.     The SE Defendants Must Be Dismissed From The Complaint Because It Adequately**
     **Alleges A Tubes Conspiracy Only, And The SE Defendants Do Not Sell Tubes**

27        1. Under the Supreme Court's recent decisions in *Twombly* and *Iqbal*, "only a complaint

28

1

1  that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 129 S. Ct. at 1950

2  (citing *Twombly*, 550 U.S. at 556).  Moreover, pleadings that "are no more than conclusions …

3  are not entitled to the assumption of truth." *Iqbal*, 129 S. Ct. at 1950.  Although the Special

4  Master stated that "[r]esearch has not disclosed any relevant Ninth Circuit case interpreting those

5  Supreme Court decisions in antitrust conspiracy litigation," R&R 8, the Ninth Circuit interpreted

6  *Twombly*'s standard in *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042 (9th Cir. 2008), an antitrust

7  conspiracy case.[1]  *Kendall* explains that to state an antitrust conspiracy claim, a complaint must

8  plead not just "ultimate facts (such as conspiracy), but *evidentiary* facts." *Id.* at 1047 (emphasis

9  added).  In particular, a complaint must "answer the basic questions: who, did what, to whom (or

10  with whom), where, and when." *Id.* at 1048.

11      The R&R found that the Complaint alleged a conspiracy to fix all "CRT Products" prices

12  because it contains "multiple allegations stating 'CRT Products.'"  R&R 5.  But "CRT Products"

13  includes several sets of products at different levels of distribution, and the Complaint uses "CRT

14  Products" to mean Tubes, Finished Products, or both.  Thus, it is necessary to scrutinize the

15  underlying "evidentiary facts" alleged to determine the object of the conspiracy (*i.e.*, the "what").

16      The Complaint's allegations of "evidentiary facts" only support a Tubes conspiracy, not a

17  Finished Products conspiracy.  The Complaint relies on government investigations and

18  indictments explicitly limited to Tubes *only*.  *See, e.g.*, DPC ¶¶ 7, 126; SE Mot. to Dismiss

19  (MTD), Dkt. # 482, at 4:14-20.  The Complaint describes the *Tubes* market as concentrated and

20  oligopolistic, and provides share data for that market.  DPC ¶ 112.  In providing that data, the

21  Complaint specifically singles out Samsung SDI, Chunghwa, and LGPD, all manufacturers of

22  Tubes only.  *Id.*  The Complaint further alleges that "*CRT makers*" began to meet in "Glass

23  Meetings" in 1997, *id.* ¶ 137, and describes the "[o]verall *CRT conspiracy*." *Id.* ¶ 139 (emphasis

24  added).  The Complaint alleges that agreed upon prices reflected "inclusion of specific features in

25  a CRT." *Id.* ¶ 144.  In setting the prices of CRTs, defendants allegedly "*considered* the internal

26  pricing of products containing CRTs *in agreeing upon the prices at which CRTs were set.*" *Id.*

27

28
_____

[1] The SE Defendants repeatedly cited *Kendall* in their briefing.  *See, e.g.*, SE MTD, Dkt. # 482, 7:7-8:4, 21:6-8; SE Reply Br., Dkt. # 545, at 2:8-10, 11:1-3, 14:7-9.

1   (emphasis added).  The "agreements encompassed not only prices charged to third party

2   customers," but also covered "prices *charged by the CRT manufacturing arm* of each such

3   integrated company to the corporate division or subsidiary that manufactured or sold computer

4   monitors, televisions, or similar products," and defendants merely "*considered* the internal

5   pricing of products containing CRTs"—*i.e.*, Finished Products—"*in agreeing upon the prices* at

6   which *CRTs* were set."  DPC ¶ 144 (emphasis added).  In the allegations about parallel reductions

7   in capacity, the Complaint describes only closure of *CRT* plants.  *Id.* ¶¶ 182-87.  Finally, it alleges

8   that the "[o]verall *CRT conspiracy affected* worldwide prices … that Defendants charged for CRT

9   Products," not that prices for "CRT Products" other than Tubes were fixed.  *Id.* ¶ 139 (emphasis

10   added).

11          In contrast, the Complaint nowhere describes the market concentration for Finished

12   Products, and fails to name as defendants some of the largest TV and monitor manufacturers

13   (such as Sharp, Dell, Gateway, Sanyo, Vizio, and Sony Corporation, among others).  Thus, the

14   Complaint includes no plausible facts suggesting *how* the prices of Finished Products could have

15   been fixed.  The only plausible reading of the Complaint's allegations is that defendants sought to

16   fix the prices of *Tubes* only.

17          2.  Because the Complaint only plausibly alleges a Tubes conspiracy, the SE Defendants

18   should be dismissed from the Complaint, because they do not make or sell Tubes—the alleged

19   object of the conspiracy—and their only association with Tubes is an approximately 20% equity

20   stake in Samsung SDI.  This leads to at least two additional reasons for dismissal unique to the

21   SE Defendants.  ***First***, it "makes no economic sense," *Matsushita Elec. Indus. Co. v. Zenith Radio*

22   *Corp.*, 475 U.S. 574, 587 (1986), for the SE Defendants to conspire to increase the price of

23   products they do not make but rather buy.[2]  ***Second***, even if it were plausible that the SE

24   Defendants agreed to fix the prices of their components, any such price-fixing agreement could

25   only be with parties at a different level of distribution.  Thus, unlike a "horizontal" conspiracy,

26   this alleged "vertical" conspiracy would be analyzed under the rule of reason.  And because

27   plaintiffs have not alleged any facts relevant to rule-of-reason analysis, including no allegations

28   _____
    [2] *See* SE MTD, Dkt. # 482, at 8:19-10:10, 12:21-14:2; SE Reply Br., Dkt. #545, at 5:3-7:9.

1   concerning a legally relevant market, the Complaint is legally inadequate and must be dismissed.

2   *See Campfield v. State Farm Mut. Auto. Ins. Co.*, 532 F.3d 1111, 1119-20 (10th Cir. 2008).[3]

3   **II.     Dismissal Is Required Even If A Finished Products Conspiracy Is Alleged**

4        1.  Even if one ignores the Complaint's failure plausibly to plead facts about a Finished

5   Products conspiracy through the use of the term "CRT Products," it must still be dismissed

6   because it fails to "answer the basic questions: who, did what, to whom …." *Kendall*, 518 F.3d at

7   1048.  In particular, the Complaint combines two separate entities—the SE Defendants and the

8   SDI Defendants—into an entirely artificial "Samsung," which exists only in the Complaint.

9   Moreover, the Complaint uses the collective term "CRT Products," which includes both Tubes

10  (components) and Finished Products.  This pleading-by-obfuscation fails entirely to put the SE

11  Defendants on notice of the allegations against them.

12       Allegations against "Samsung" are inadequate to put the SE Defendants on notice of the

13  allegations against *them* in particular, because the SE Defendants and the SDI Defendants are

14  separate corporate families, with separate parents and subsidiaries.  The Special Master concluded

15  that the Complaint makes adequate allegations as to each of the defendants because "for pleading

16  purposes," allegations made against a parent corporation can be imputed to subsidiaries.  R&R

17  13.  That is incorrect even as to wholly owned subsidiaries, *see, e.g.*, *In re ATM Fee Antitrust*

18  *Litig.*, No. 04-02676, slip op. at 25 (N.D. Cal. Sept. 4, 2009) (Breyer, J.) (citing *Brennan v.*

19  *Concord EFS, Inc*., 369 F. Supp. 2d 1127, 1136 (N.D. Cal. 2005)) (dismissing complaint that

20  "merely lump[ed] together allegations against the holding company and its subsidiary"), but

21  certainly has no application to the SE Defendants.  "A parent and its *wholly owned subsidiary*

22  have a complete unity of interest."  *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752,

23  771 (1984) (emphasis added).  The SDI Defendants are not wholly owned subsidiaries; they are

24  separate, publicly traded entities in which SEC owns an approximately 20% stake.[4]  The SE

25  
26  [3] *See* SE MTD, Dkt. # 482, at 14:3-15:8; SE Reply Br., Dkt. # 545, at 7:10-10:3.

27  [4] The direct purchasers have abandoned any agency theory of liability.  DP Opp. Br., Dkt. # 531, at 63 ("[T]he basis of the SE Defendants' inclusion in the Complaint is predicated . . . not on a theory of vicarious liability").  Any such theory is in any event not supported by the Complaint.

28  *See* SE Objections to R&R (Indirect Purchaser Complaint), at 4:12-5:13 & n.2.

1    Defendants would not, as the Special Master stated, "be satisfied only with a complaint that made

2    separate allegations against each defendant, and in each allegation repeated all of the necessary

3    facts."  R&R 15.  But *all* the relevant factual allegations in the Complaint are against "Samsung,"

4    not the SE Defendants.

5           Moreover, even if pleadings against "Samsung" could be appropriate in *some* cases, they

6    are not appropriate in *this* case, where the Complaint also repeatedly uses the term "CRT

7    Products"—multiple products at two levels of distribution.  This definitional obfuscation itself

8    suffices for dismissal, because the Complaint as a consequence fails adequately to allege the

9    "nature of the conspiracy or agreement."  *Rick-Mik Enters., Inc. v. Equilon Enters., LLC*, 532

10   F.3d 963, 976 (9th Cir. 2008).[5]  But this problem is compounded by the use of "Samsung."  An

11   allegation that "Samsung" agreed to fix the prices of "CRT Products" could mean an agreement,

12   for example, between i) the SE Defendants and non-Samsung entities as to Tubes; ii) the SDI

13   Defendants and non-Samsung entities as to Tubes; iii) the SE Defendants and non-Samsung

14   entities as to Finished Products; or iv) the SE Defendants and the SDI Defendants as to Tubes.

15   Such allegations give the SE Defendants no notice as to the scope or nature of the allegations

16   against them (or even if the allegations are against *them* at all).

17          2.  Finally, a "CRT Products" conspiracy is wholly implausible as to the SE Defendants.

18   If the Complaint (as read by the Special Master) is to be believed, the SE Defendants conspired to

19   price-fix their components, and then conspired to price-fix the products they sell.  But if the SE

20   Defendants could price-fix their own products, they would have no reason whatever also to

21   conspire to increase the prices of their components.  Even on that reading, the Complaint must be

22   dismissed as implausible.  *Twombly*, 550 U.S. at 556.

23                                         **CONCLUSION**

24          For the foregoing reasons, the Complaint should be dismissed as to the SE Defendants.

25

26   _____

27   [5] *See, e.g.*, *Bailey Lumber & Supply Co. v. Georgia-Pacific Corp.*, 2009 WL 2872307, at *2-3
     (S.D. Miss. Aug. 10, 2009) (refusing to treat the "structural panel" market as one market, when
     "OSB and plywood" have separate manufacturing, are used in different ways, market shares in
28   the two markets differed, and only one market had a history of antitrust violations).

1   Dated: February 19, 2010

2

3                                                      Respectfully submitted,
                                                       O'MELVENY & MYERS LLP
4

5                                                      By:  /s/ Ian Simmons_____
                                                            Ian Simmons (*pro hac vice*)
6
                                                       1625 Eye Street NW
7                                                      Washington, DC 20006
                                                       Telephone:  (202) 383-5300
8                                                      Facsimile:  (202) 383-5414
                                                       Email: isimmons@omm.com
9
                                                       *Attorneys for Defendants Samsung*
10                                                     *Electronics Co., Ltd., and Samsung*
                                                       *Electronics America, Inc.*
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

6