MICHAEL F. TUBACH (SBN 145955)
mtubach@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111
Telephone:  (415) 984-8700
Facsimile:  (415) 984-8701

IAN SIMMONS (*pro hac vice*)
isimmons@omm.com
O'MELVENY & MYERS LLP
1625 Eye Street NW
Washington, DC 20006
Telephone:  (202) 383-5300
Facsimile:  (202) 383-5414

Attorneys For Defendants
**SAMSUNG ELECTRONICS CO., LTD.; and
SAMSUNG ELECTRONICS AMERICA, INC.**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE:  CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Case No.: 3:07-cv-5944 SC |
| | MDL No. 1917 |
| This Document Relates To:<br><br>INDIRECT PURCHASER ACTION | **SAMSUNG ELECTRONICS CO., LTD., AND SAMSUNG ELECTRONICS AMERICA, INC.'S OBJECTIONS TO THE SPECIAL MASTER'S REPORT, RECOMMENDATIONS AND TENTATIVE RULINGS REGARDING THEIR MOTION TO DISMISS INDIRECT PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT**<br><br>Judge: Hon. Samuel Conti<br>Special Master: Hon. Charles A. Legge (Ret.) |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

ARGUMENT ...................................................................................................................... 1

I.     THE SE DEFENDANTS MUST BE DISMISSED FROM THE COMPLAINT
       BECAUSE IT ADEQUATELY ALLEGES A TUBES CONSPIRACY ONLY,
       AND THE SE DEFENDANTS DO NOT SELL TUBES ................................................... 1

II.    DISMISSAL IS REQUIRED EVEN IF A FINISHED PRODUCTS
       CONSPIRACY IS ALLEGED ............................................................................................ 4

III.   THE COMPLAINT DOES NOT ADEQUATELY ALLEGE THAT THE SE
       DEFENDANTS CAN BE HELD VICARIOUSLY LIABLE FOR THE
       CONDUCT OF THE SDI DEFENDANTS ......................................................................... 4

CONCLUSION .................................................................................................................. 5

1

## TABLE OF AUTHORITIES

2

Page

3

**Cases**

4

*Am. Nat'l Red Cross v. United Way Cal. Capital Region*,
    2007 U.S. Dist. LEXIS 95296 (E.D. Cal. Dec. 18, 2007)............................................................. 5

5

*Ashcroft v. Iqbal*,
    129 S. Ct. 1937 (2009) ......................................................................................................... 2, 5

6

7

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .............................................................................................................. 1, 2

8

*Biggins v. Wells Fargo & Co.*,
    2009 U.S. Dist. LEXIS 64620 (N.D. Cal. July 27, 2009) .......................................................... 5

9

10

*Brennan v. Concord EFS, Inc.*,
    369 F. Supp. 2d 1127 (N.D. Cal. 2005) ....................................................................................... 5

11

*California v. NRG Energy Inc.*,
    391 F.3d 1011 (9th Cir. 2004).................................................................................................... 5

12

13

*Kaplan v. Coldwell Banker Residential Affiliates, Inc.*,
    59 Cal. App. 4th 741 (1997) ....................................................................................................... 4

14

*Kendall v. Visa U.S.A., Inc.*,
    518 F.3d 1042 (9th Cir. 2008)................................................................................................. 2, 5

15

16

*Neilson v. Union Bank of Cal., N.A.*,
    290 F. Supp. 2d 1101 (C.D. Cal. 2003) ..................................................................................... 5

17

*Neu v. Terminex Int'l et. al*,
    2008 U.S. Dist. LEXIS 32844 (N.D. Cal. Apr. 8, 2008) ............................................................ 5

18

19

*Nordberg v. Trilegiant Corp.*,
    445 F. Supp. 2d 1082 (N.D. Cal. 2006) ..................................................................................... 5

20

*Powerex Corp. v. Reliant Energy Servs., Inc.*,
    551 U.S. 224 (2007) .................................................................................................................. 5

21

22

*Weinstein v. Saturn*,
    303 Fed. App'x 424 (9th Cir. 2008).......................................................................................... 4

23

24

25

26

27

28

- ii -

1    Defendants Samsung Electronics Co., Ltd. (SEC), and Samsung Electronics America, Inc.

2    (SEA) (the SE Defendants) respectfully submit these objections to the Special Master's Report,

3    Recommendations, and Tentative Rulings (R&R) and respectfully request dismissal of the

4    Indirect Purchaser Plaintiffs' Consolidated Amended Complaint (Complaint or IPC).

5                                          **ARGUMENT**

6          Like the direct purchasers' complaint, the Complaint asserts that defendants, including the

7    SE Defendants, "conspired" to fix the "prices of CRT Products sold in the United States."  IPC,

8    Dkt. # 437, ¶ 1.  "CRT Products" is defined to include both Cathode Ray Tubes (CRTs or

9    Tubes)—a component in televisions and computer monitors—and the TVs and monitors

10   themselves (Finished Products).  IPC ¶ 15.  But, as with the direct purchasers' complaint, the

11   actual facts alleged in the Complaint at most only support a conspiracy to fix the prices of Tubes,

12   not Finished Products.  This is particularly critical as to the SE Defendants, because the SE

13   Defendants do not manufacture or sell Tubes—only Finished Products.  Further, even

14   overlooking that the Complaint fails properly to allege a Finished Products conspiracy, the

15   Special Master erred in finding that the Complaint provides the SE Defendants with adequate

16   notice.  The Complaint uses the moniker "Samsung" to describe both the SE Defendants and

17   Samsung SDI and its subsidiaries (the SDI Defendants).  But Samsung SDI is a separate publicly

18   traded company in which it is undisputed that SEC owns only an approximately 20% minority

19   stake.  Because "Samsung" includes two separate corporate families, and "CRT Products"

20   includes multiple products at two different levels of the distribution chain, the allegation that

21   "Samsung" fixed "CRT Products" prices fails to give the SE Defendants notice of the object of

22   the alleged conspiracy (let alone the acts the SE Defendants are alleged to have done).

23         Moreover, to the extent the indirect purchaser plaintiffs seek to hold the SE Defendants

24   vicariously liable for the conduct of the SDI Defendants, their conclusory allegations are

25   inadequate as a matter of law to support that theory of liability.

26   **I.     The SE Defendants Must Be Dismissed From The Complaint Because It Adequately
            Alleges A Tubes Conspiracy Only, And The SE Defendants Do Not Sell Tubes**
27

28         1.  Under the Supreme Court's recent decisions in *Bell Atl. Corp. v. Twombly*, 550 U.S.

                                                1

544 (2007), and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), "only a complaint that states a

plausible claim for relief survives a motion to dismiss." *Iqbal*, 129 S. Ct. at 1950 (citing

*Twombly*, 550 U.S. at 556).  Moreover, pleadings that "are no more than conclusions, are not

entitled to the assumption of truth." *Iqbal*, 129 S. Ct. at 1950.  Although the Special Master

stated that "[r]esearch has not disclosed any relevant Ninth Circuit case interpreting those

Supreme Court decisions in antitrust conspiracy litigation," R&R 8, the Ninth Circuit interpreted

*Twombly*'s standard in *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042 (9th Cir. 2008), an antitrust

conspiracy case.[1]  *Kendall* explains that to state an antitrust conspiracy claim, a complaint must

plead not just "ultimate facts (such as conspiracy), but *evidentiary* facts." *Id.* at 1047 (emphasis

added).  In particular, a complaint must "answer the basic questions: who, did what, to whom (or

with whom), where, and when." *Id.* at 1048.

      The R&R found that the Complaint alleged a conspiracy to fix all "CRT Products" prices

because it contains "multiple allegations stating 'CRT Products.'" R&R 5.  But "CRT Products"

includes several sets of products at different levels of distribution, and the Complaint uses "CRT

Products" to mean Tubes, Finished Products, or both.  Thus, it is necessary to scrutinize the

underlying "evidentiary facts" alleged to determine the object of the conspiracy (*i.e.*, the "what").

      The Complaint's allegations of "evidentiary facts" only support a Tubes conspiracy, not a

Finished Products conspiracy.  The Complaint relies on government investigations and

indictments explicitly limited to Tubes *only*.  *See, e.g.*, IPC ¶¶ 4, 203, 205; SE Mot. to Dismiss

(MTD), Dkt. # 482, at 4:14-20.  The Complaint describes the *Tubes* market as concentrated and

oligopolistic, and provides market share data for that market.  IPC ¶ 122.  In providing that data,

the Complaint specifically singles out Samsung SDI, Chunghwa, and LGPD, all manufacturers of

Tubes only.  *Id.*  In alleging the consolidation of the industry, the Complaint cites two ventures

dedicated to Tubes only.  *Id.* ¶ 125.  The Complaint speaks of the "CRT conspiracy," *id.* ¶¶ 138,

141, and the "CRT price-fixing conspiracy," *id.* ¶ 145.  In describing the purported "Glass

Meetings" between various defendants, the Complaint alleges that "participants exchanged

---

[1] The SE Defendants repeatedly cited *Kendall* in their briefing.  *See, e.g.*, SE MTD, Dkt. # 482, 7:7-8:4, 21:6-8; SE Reply Br., Dkt. # 545, at 2:8-10, 11:1-3, 14:7-9.

1  competitive information such as proposed future *CRT* pricing, sales, volume …"; that those

2  participants "discuss[ed] and agree[d] upon what price each would charge for *CRTs* to be sold in

3  the following month or quarter"; that they "discussed and agreed upon target prices, price

4  increases, so-called 'bottom' prices, and price ranges for *CRTs*"; and that they "discussed and

5  agreed upon prices of *CRTs* that were sold to specific customers…." *Id.* ¶ 152 (emphasis added).

6  The alleged "conspiracy included agreements on the prices at which certain Defendants would

7  sell *CRTs* to their own corporate subsidiaries and affiliates that manufactured end products, such

8  as televisions and monitors." IPC ¶ 154 (emphasis added). The Complaint alleges that

9  defendants limited production of *Tubes*, not Finished Products. *Id.* ¶¶ 198-99. Finally, the

10 Complaint states that "[t]he purpose of Defendants' conspiratorial conduct was to fix, raise,

11 maintain and stabilize the price of *CRTs* and, as a direct and foreseeable result, CRT Products."

12 IPC ¶ 237.

13      In contrast, as with the direct purchasers' complaint, the Complaint nowhere describes the

14 market concentration for Finished Product, and fails to name as defendants some of the largest

15 TV and monitor manufacturers (such as Sharp, Dell, Gateway, Sanyo, Vizio, and Sony

16 Corporation, among others). Indeed, the Complaint alleges that Finished Product manufacturers

17 "are all subject to vigorous price competition, whether selling CRT TVs or computer monitors."

18 IPC ¶ 227. That allegation is wholly inconsistent with a Finished Products price-fixing

19 conspiracy, particularly without any market concentration allegations. Thus, the Complaint

20 includes no plausible facts suggesting *how* the prices of Finished Products could have been fixed.

21 The only plausible reading of the Complaint's allegations is that defendants sought to fix the

22 prices of *Tubes* only.

23      2. Because the Complaint only plausibly alleges a Tubes conspiracy, the SE Defendants

24 should be dismissed from the Complaint for precisely the same reasons as with the direct

25 purchasers' complaint: the Complaint's allegations of a Tubes conspiracy make no sense as to the

26 SE Defendants, which do not make Tubes but *purchase* them as components, and the Complaint

27 in any event alleges a vertical conspiracy with no allegations of a legally relevant market. *See* SE

28 Defendants' Objections to R&R (Direct Purchaser Complaint), at 3:17-4:2.

3

**II.     Dismissal Is Required Even If A Finished Products Conspiracy Is Alleged**

Even if one ignores the Complaint's failure plausibly to plead facts about a Finished Products conspiracy, it must still be dismissed as to the SE Defendants for the reasons explained in the SE Defendants' objections to the R&R to the direct purchasers' complaint. The term "Samsung" is used to describe both the SE Defendants and the separate SDI Defendants. And this problem is compounded by the use of the term "CRT Products," which describes several different types of products (CRTs, Televisions, and Monitors) at two different levels of distribution. The SE Defendants thus have no notice as to the scope or nature of the allegations against them (or even if the allegations are against *them* at all). *See* SE Defendants' Objections to R&R (Direct Purchaser Complaint), at 4:3-5:16. Moreover, a "CRT Products" conspiracy is wholly implausible as to the SE Defendants. *See id.*, at 5:16-21.

**III.    The Complaint Does Not Adequately Allege That The SE Defendants Can Be Held Vicariously Liable For The Conduct Of The SDI Defendants**

Unlike the direct purchaser plaintiffs, the indirect purchaser plaintiffs seek to rely on an agency theory of liability, such that the SE Defendants may be held liable for the conduct of Samsung SDI. Their only allegations of agency, however, are that SEC "dominated and controlled" the SDI Defendants. IPC ¶¶ 64-70.[2] The Special Master found that "in this circuit an allegation of corporate agency and control may be enough." R&R 13 (citing *Weinstein v. Saturn*, 303 Fed. App'x 424 (9th Cir. 2008)). But the non-precedential opinion in *Weinstein* merely found that the allegations (which were not detailed in the opinion) taken together allege that Saturn exercised "'substantial control'" over its dealerships. *Id.* (quoting *Kaplan v. Coldwell Banker Residential Affiliates, Inc.*, 59 Cal. App. 4th 741, 745 (1997)). The allegations in the *Weinstein* complaint were in fact substantial, and are not in any way comparable to plaintiffs' conclusory "dominate and control" allegations.[3]

---

[2] The direct purchasers' complaint contains identical allegations, DPC ¶¶ 61-66, and to the extent plaintiffs rely on an agency theory of liability, the reasons for the invalidity of the indirect purchasers' agency theory apply equally to the direct purchasers. *See* SE Defendants' Objections to R&R (Direct Purchaser Complaint), at 4 n.4.

[3] The complaint's agency allegations include that: the dealership sells exclusively Saturn vehicles; Saturn leads customers to believe that *it*, rather than the dealer, sets pricing policy;

4

1   Plaintiffs' "dominate and control" allegations are wholly inadequate to support an agency

2   theory of liability.  Pleadings that "are no more than conclusions … are not entitled to the

3   assumption of truth." *Iqbal*, 129 S. Ct. at 1950.  That is particularly true in the context of

4   allegations of agency, where "[i]ndependence is to be presumed." *California v. NRG Energy Inc.*,

5   391 F.3d 1011, 1024 (9th Cir. 2004), *rev'd on other grounds*, *Powerex Corp. v. Reliant Energy*

6   *Servs., Inc.*, 551 U.S. 224 (2007).  Thus, numerous cases have explained that a plaintiff must

7   "plead more specific facts" demonstrating an agency relationship. *Neilson v. Union Bank of Cal.,*

8   *N.A.*, 290 F. Supp. 2d 1101, 1116 (C.D. Cal. 2003) (internal quotation omitted).[4]

9   Plaintiffs' allegation that SEC "dominated and controlled" the SDI Defendants is a legal

10  conclusion, not an "evidentiary" factual allegation of the sort required at the pleadings stage.

11  *Kendall*, 518 F.3d at 1047-48.  That conclusory allegation should not be afforded the assumption

12  of truth under *Iqbal*.  And because that is plaintiffs' *only* allegation to support an agency theory,

13  that theory cannot progress on these pleadings.

## CONCLUSION

15  For the foregoing reasons, the Complaint should be dismissed as to the SE Defendants.

---

Saturn must find that all potential dealers are fully committed to Saturn's mission and values;
Saturn approves each dealer's location and marketing area; Saturn provides a mandatory design
package for dealerships' interior and exterior; Saturn requires its dealers to participate in
numerous training courses; etc.  *See* Am. Compl., Dkt # 27, ¶ 12, *Weinstein v. Saturn Corp.*, No.
07-CV-00348 (N.D. Cal.) (Chesney, J.).

[4] *See, e.g., Biggins v. Wells Fargo & Co.*, 2009 U.S. Dist. LEXIS 64620, at *33–36 (N.D. Cal.
July 27, 2009) (rejecting allegation that one company is the "agent, subsidiary, parent" of another
because such allegations "are nothing more than bare legal conclusions" inadequate under
*Twombly*); *Neu v. Terminex Int'l et. al*, 2008 U.S. Dist. LEXIS 32844, * 18-19 (N.D. Cal. Apr. 8,
2008) (dismissing claims against parent company based on conclusory allegations of control);
*Am. Nat'l Red Cross v. United Way Cal. Capital Region*, 2007 U.S. Dist. LEXIS 95296, at *30
(E.D. Cal. Dec. 18, 2007) (rejecting complaint that did not "allege one fact that suggests such an
agency relationship.  This bare legal conclusion is not sufficient to withstand a motion to
dismiss"); *Nordberg v. Trilegiant Corp.*, 445 F. Supp. 2d 1082, 1103 (N.D. Cal. 2006) (rejecting
conclusory agency and alter ego allegations because they lacked any "specific factual allegations"
against the defendant); *Brennan v. Concord EFS, Inc*., 369 F. Supp. 2d 1127, 1136 (N.D. Cal.
2005) (holding that the allegation that "Bank One exercised such dominion and control over Bank
One, NA and Bank One Arizona that it [was] liable according to the law for the acts of Bank
One," was an inadequate legal conclusion and granting the defendants' motion to dismiss).

5

Dated: February 19, 2010

Respectfully submitted,
O'MELVENY & MYERS LLP


By:  /s/ Ian Simmons
     Ian Simmons (*pro hac vice*)

1625 Eye Street NW
Washington, DC 20006
Telephone:  (202) 383-5300
Facsimile:  (202) 383-5414
Email: isimmons@omm.com

*Attorneys for Defendants Samsung*
*Electronics Co., Ltd., and Samsung*
*Electronics America, Inc.*

6