PETER ROOT (142348)
DEWEY & LEBOEUF LLP
1950 University Avenue
East Palo Alto, California 94303
Telephone: (650) 845-7000
Facsimile: (650) 845-7333
Email: proot@dl.com

JEFFREY L. KESSLER (*Admitted Pro Hac Vice*)
A. PAUL VICTOR (*Admitted Pro Hac Vice*)
DEWEY & LEBOEUF LLP
1301 Avenue of the Americas
New York, New York 10019
Telephone: (212) 259-8000
Facsimile: (212) 259-7013
Email: jkessler@dl.com

STEVEN A. REISS (*Admitted Pro Hac Vice*)
DAVID L. YOHAI (*Admitted Pro Hac Vice*)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153-0119
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Email: steven.reiss@weil.com

Attorneys for Defendants Panasonic Corporation of North America, MT Picture Display Co., Ltd.,
and Panasonic Corporation (f/k/a Matsushita Electric Industrial Co.)
**[Additional Moving Defendants and Counsel Listed on Signature Pages]**

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **In Re CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION** | No.:  M-07-5944 SC |
| | MDL NO. 1917 |
| This Document Relates to:<br><br>DIRECT PURCHASER ACTION. | **DEFENDANTS' JOINT OBJECTIONS TO THE SPECIAL MASTER'S REPORT AND RECOMMENDATIONS REGARDING DEFENDANTS' JOINT MOTION TO DISMISS THE DIRECT PURCHASER PLAINTIFFS CONSOLIDATED AMENDED COMPLAINT** |

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................. 1

PROCEDURAL BACKGROUND ...................................................................................... 4

ARGUMENT ................................................................................................................... 6

    I.     THE RECOMMENDATION BY THE SPECIAL MASTER THAT
          PLAINTIFFS ALLEGED A PLAUSIBLE CONSPIRACY
          DIRECTED AT FINISHED PRODUCTS IS WRONG AS A MATTER
          OF LAW ................................................................................................ 6

    II.    THE FINDING BY THE SPECIAL MASTER THAT THE COURT
          HAS SUBJECT MATTER JURISDICTION UNDER THE FTAIA
          IS BASED ON THE ERRONEOUS LEGAL PREMISE THAT THE
          DP-CAC PLAUSIBLY ALLEGES A FINISHED PRODUCTS
          CONSPIRACY ..................................................................................... 11

    III.   THE FINDING BY THE SPECIAL MASTER THAT PLAINTIFFS
          HAVE ANTITRUST STANDING IS ALSO BASED ON THE
          ERRONEOUS PREMISE OF A WELL-PLED FINISHED
          PRODUCTS CONSPIRACY .................................................................. 13

    IV.   THE HOLDING BY THE SPECIAL MASTER THAT THE DP-CAC
          SUFFICIENTLY PLEADS FACTS TO ESTABLISH FRAUDULENT
          CONCEALMENT IS WRONG AS A MATTER OF LAW UNDER
          CONTROLLING NINTH CIRCUIT PRECEDENT ........................................ 14

          A.     Plaintiffs Fail to Allege Fraudulent Concealment Facts as to
                  Each Defendant Which is Required Under Binding Ninth
                  Circuit Precedent ................................................................... 14

          B.     The Report Fails to Address the Absence of
                  Affirmative Concealment Allegations Necessary
                  to State a Fraudulent Concealment Claim ............................. 15

          C.     The Report Fails to Consider that the DP-CAC Does
                  Not Allege the Required Due Diligence Allegations
                  Necessary to State a Fraudulent Concealment Claim ............ 16

CONCLUSION ............................................................................................................... 17

1

**TABLE OF AUTHORITIES**

2

<u>Cases</u>                                                                                                Page(s)

3

4

*Ashcroft v. Iqbal,*
     129 S. Ct. 1937 (2009) ...............................................................*passim*

5

6

*Associated General Contractors of California, Inc. v. California State Council of Carpenters,*
     459 U.S. 519 (1983).................................................................*passim*

7

*Barker v. Am. Mobil Power Corp.,*
     64 F.3d 1397 (9th Cir. 1995)...............................................15

8

9

*Bell Atlantic Corp. v. Twombly,*
     550 U.S. 544 (2007)................................................................*passim*

10

11

*Commercial Street Express LLC v. Sara Lee Corp.,*
     No. 08 C 1179, 2008 WL 5377815 (N.D. Ill. Dec. 18, 2008)............................12

12

13

*Conmar Corp. v. Mitsui & Co.,*
     858 F.2d 499 (9th Cir. 1988)...............................................15

14

*Del. Valley Surgical Supply, Inc. v. Johnson & Johnson,*
     523 F.3d 1116 (9th Cir. 2008)...........................................13-14

15

16

*Dee-K Enters., Inc. v. Heveafil Sdn. Bhd,*
     299 F.3d 281 (4th Cir. 2002)...............................................12

17

18

*DM Research, Inc. v. Coll. of Am. Pathologists,*
     170 F.3d 53 (1st Cir. 1999)..................................................10

19

*Emerson Elec. Co. v. Le Carbone Lorraine, S.A.,*
     500 F. Supp. 2d 437 (D.N.J. 2007)........................................12

20

21

*Illinois Brick Co. v. Illinois,*
     431 U.S. 720 (1977)...............................................................*passim*

22

23

*In re Intel Corp. Microprocessor Antitrust Litig.,*
     452 F. Supp. 2d 555 (D. Del. 2006)......................................12

24

25

*In re Intel Corp. Microprocessor Antitrust Litig.,*
     476 F. Supp. 2d 452 (D. Del. 2007)......................................12

26

*In re Late Fee and Over-Limit Fee Litigation,*
     528 F. Supp. 2d 953 (N.D. Cal. 2007).................................10

27

                                                            ii

28

*In re Rubber Chemicals Antitrust Litigation,*
    504 F. Supp. 2d 777 (N.D. Cal. 2007)…......................................................................12

*Kendall v. Visa U.S.A., Inc.,*
    518 F.3d 1042 (9th Cir. 2008)…………………………………………….7, 14, 15

*Lucas Auto. Eng'g, Inc. v. Bridgestone/Firestone, Inc.,*
    140 F.3d 1228 (9th Cir. 1998)……………………………………………………14

*Lucas v. Citizens Commc'ns Co.,*
    409 F. Supp. 2d 1206 (D. Haw. 2005)…………….......................................................10

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
    475 U.S. 574 (1986)…………………………………………………………….10

*Rick-Mik Enters., Inc. v. Equilon Enters., LLC,*
    532 F.3d 963 (9th Cir. 2008)……………………………………………….6, 10

*Rutledge v. Boston Woven Hose & Rubber Co.,*
    576 F.2d 248 (9th Cir. 1978)…………………………………………...........16

*United Phosphorus, Ltd. v. Angus Chem. Co.,*
    131 F. Supp. 2d 1003 (N.D. Ill. 2001)………………………………………….12

*United States v. LSL Biotechs.,*
    379 F.3d 672 (9th Cir. 2004)………………………………………………….11

<u>Statutes</u>                                                                     <u>Page(s)</u>

Federal Trade Antitrust Improvement Act of 1982,
    15 U.S.C. § 6a (2006) ("FTAIA")……………………………………..3, 5, 11, 12, 17

1

**INTRODUCTION**

2      Pursuant to the Order Appointing Special Master (Dkt. 302) and Federal Rule

3   of Civil Procedure 53, to the extent the Special Master has recommended that the Court deny

4   Defendants' Joint Motion to Dismiss the Direct Purchaser Plaintiffs Consolidated Amended

5   Complaint ("DP-CAC"), dated May 19, 2009 (Dkt. 479) ("Joint Motion"), Defendants hereby

6   object to the Report, Recommendations and Tentative Rulings Regarding Defendants'

7   Motions to Dismiss issued by the Special Master on February 5, 2010 (Dkt. 597) ("Report").[1]

8      In particular, Defendants respectfully submit that the recommendations in the

9   Report be rejected because they are based on the erroneous legal conclusion that Direct

10  Purchaser Plaintiffs have alleged a plausible conspiracy covering *both* cathode ray tubes

11  ("CRTs") *and* products incorporating CRTs as a component (*e.g.*, television sets and computer

12  monitors) ("Finished Products").[2] Specifically, the Report concludes that, because the

13  DP-CAC repeatedly uses the defined label "CRT Products," Plaintiffs have properly alleged a

14  conspiracy directed toward the markets for three separate products – CRTs, televisions, and

15  computer monitors. Report at 4:8-6:26. In reaching this conclusion, the Special Master relies

16  solely upon the fact that various paragraphs in the complaint contain allegations in which the

17  defined term "CRT Products" is "mentioned." *Id.*

18      The Special Master's recommendation is wrong as a matter of law. The mere

19  fact that the DP-CAC purports to allege a conspiracy directed at "CRT Products," an artificial

20  construct created by Plaintiffs to sweep in both CRTs and Finished Products, is insufficient to

21  _____

22  [1] This brief contains Defendants' joint objections to the Report relating to the Direct Purchaser
    claims. Defendants are simultaneously filing a joint brief containing their objections to the

23  Indirect Purchaser claims, as well as individual briefs containing objections that relate only to
    specific Defendants. Pursuant to Federal Rule of Civil Procedure 53(f), Defendants request

24  that the Court conduct oral arguments in connection with all of Defendants' objections.

25  [2] Pursuant to the Order Appointing Special Master, "the Court shall review findings of fact
    made or recommended by the Special Master for clear error. The Court shall review *de novo*

26  any conclusions of law made or recommended by the Special Master." Order Appointing
    Special Master (Dkt. 302), June 16, 2008, at 6:5-10. All of the arguments presented here

27  involve errors of law and are thus subject to de novo review.

28  | DEFENDANTS' JOINT OBJECTIONS TO THE SPECIAL MASTER'S | MDL No. 1917 |
    | REPORT REGARDING DEFS.' JOINT MOTION TO DISMISS THE DP-CAC | |

1    satisfy the Supreme Court's new, more stringent standards for pleading a claim under *Bell*

2    *Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and *Ashcroft v. Iqbal*, 129 S. Ct. 1937,

3    1949 (2009).   Under these new authorities, to survive a motion to dismiss, a complaint must

4    not just give "notice" of the nature of the claim, it must include sufficient factual allegations to

5    support a claim that is plausible on its face.  *Twombly*, 550 U.S. at 555; *Iqbal*, 129 S. Ct. at

6    1949.  The Special Master misapplies *Twombly* by holding that, by merely including the words

7    "CRT Products" in the DP-CAC to give "notice," Plaintiffs have alleged sufficient facts to

8    state a plausible conspiracy claim regarding Finished Products.   This view of the law is

9    outdated and overruled by *Twombly* and *Iqbal*.[3]   The Special Master does not identify a single

10   fact alleged by Plaintiffs in the DP-CAC to support the conclusory assertion of a conspiracy

11   directed toward televisions or computer monitors.  Indeed, there are *no* such factual allegations

12   in the DP-CAC.  As set forth below, the only factual allegations in the DP-CAC relate to an

13   alleged conspiracy directed at the overseas sale of CRTs, not the domestic sale of Finished

14   Products.

15          Plaintiffs have deliberately obscured their claims under the artificial label

16   "CRT Products" to cover up the fact that they have no subject matter jurisdiction under the

17   United States antitrust laws, or standing in this Court to pursue the only conspiracy which they

18   have actually pled consistent with *Twombly* – a conspiracy directed at the overseas sale of

19   CRTs. This legal error is fatal to the entire DP-CAC, as the Special Master's rulings on subject

20   matter jurisdiction, *Illinois Brick*, and standing are all based on this erroneous holding.  Indeed,

21   the Direct Purchaser Plaintiffs do not dispute the fact that, under the United States antitrust

22   laws, there is no subject matter jurisdiction over a claim directed at alleged agreements fixing

23   the prices of CRTs in overseas markets, and that Plaintiffs have no standing to assert a federal

24

25   [3] Even under the "notice" view of pleadings – which *Twombly* and *Iqbal* found to be
     insufficient – the DP-CAC could not survive, because the term "CRT Products" includes
26   several distinct products at two different levels of distribution, so the use of that term fails to
     put the defendants on notice of the object of the alleged conspiracy.
27
                                                                                              2
28   DEFENDANTS' JOINT OBJECTIONS TO THE SPECIAL MASTER'S          MDL No. 1917
     REPORT REGARDING DEFS.' JOINT MOTION TO DISMISS THE DP-CAC

1   antitrust claim against such a conspiracy if they did not directly purchase the only product – a

2   CRT – which is the subject of the alleged conspiracy. Yet, an overseas CRT conspiracy is the

3   only conspiracy claim in the complaint that has been pled with specific factual allegations to

4   meet the *Twombly* standard.

5            The Special Master erred, as a matter of law, when he permitted Plaintiffs to

6   avoid these critical issues by purporting to give "notice" that they also claim to allege, without

7   any factual allegations in support, a conspiracy directed at Finished Products sold in the United

8   States.[4] That erroneous conclusion resulted in several further legal errors. Specifically, the

9   holding of the Special Master that the Court has subject matter jurisdiction under the Foreign

10  Trade Antitrust Improvements Act, *see* 15 U.S.C. § 6a (2006) ("FTAIA"), rests on the

11  erroneous premise that the DP-CAC alleges sufficient facts to support such a Finished

12  Products conspiracy claim. While the Report correctly notes that the DP-CAC alleges *no U.S.*

13  *purchases of CRTs* (*see* Report at 4:1-7), it incorrectly concludes that the DP-CAC meets the

14  FTAIA jurisdictional test by also alleging a conspiracy directed at purchases in the U.S. of

15  Finished Products. *Id.* at 17:15-18:10. But, in the absence of factual allegations to support a

16  plausible conspiracy involving Finished Products, the U.S. sale of Finished Products is legally

17  incapable of establishing subject matter jurisdiction over the CRT conspiracy claim actually

18  pled in the DP-CAC.

19           Similarly, the Report erroneously recommends that, because Plaintiffs claim to

20  have made purchases *of unspecified "CRT Products"* directly from Defendants, Direct

21  Purchaser Plaintiffs have antitrust standing under both *Illinois Brick Co. v. Illinois*, 431 U.S.

22  720 (1977), and *Associated General Contractors of California, Inc. v. California State Council*

23

24  [4] Defendants do not believe that the Direct Purchaser Plaintiffs have a good faith basis,
    consistent with Rule 11, to allege a conspiracy directed at the sale of Finished Products in the
25  United States. *See* Fed. R. Civ. P. 11. In this regard, it should be noted, as discussed below,
    that all of the government investigations that Plaintiffs reference in the DP-CAC are described
26  by Plaintiffs as relating to an alleged conspiracy involving CRTs, not Finished Products
    incorporating CRTs.
27

                                                                                         3
28

1    *of Carpenters* ("*A.G.C.*"), 459 U.S. 519 (1983).  This conclusion is once again based on the

2    erroneous premise that the DP-CAC properly alleges a conspiracy relating to Finished

3    Products, as opposed to just CRTs. Report at 18:13-19.  Indeed, there are no allegations in the

4    DP-CAC that any Plaintiff purchased a CRT, as opposed to a Finished Product, directly from

5    any of the Defendants.

6           Because the Special Master erroneously concluded that the DP-CAC pled

7    sufficient facts to support a conspiracy directed at Finished Products, he did not consider the

8    jurisdictional and standing defects in the claim directed at the foreign sale of CRTs, which is

9    the only conspiracy claim properly pled in the DP-CAC.  Accordingly, the subject matter

10   jurisdiction and standing issues should be remanded back to the Special Master so that he can

11   consider them in the context of a ruling by this Court that the DP-CAC only alleges a

12   conspiracy directed at the overseas sales of CRTs.

13          Finally, the Special Master's holding that Plaintiffs have alleged sufficient facts

14   to satisfy the heightened requirements for pleading fraudulent concealment and to toll the

15   applicable limitations period is wrong as a matter of law.  While the Special Master notes that

16   "Plaintiffs have not alleged fraudulent concealment on a defendant-by-defendant basis," he

17   incorrectly concludes that pleading the facts of fraudulent concealment with respect to each

18   defendant is not required as a matter of law. Report at 21:5-22:4.  This is directly contrary to

19   controlling authorities of the Ninth Circuit, and to the Supreme Court's rulings in *Twombly* and

20   *Iqbal*.  Moreover, the Report overlooks Plaintiffs' failure to allege any specific acts by

21   Defendants to conceal the alleged conspiracy and it disregards Plaintiffs' admitted and

22   unexplained failure to conduct the requisite due diligence.

23                              **PROCEDURAL BACKGROUND**

24          On March 16, 2009, Direct Purchaser Plaintiffs filed the DP-CAC alleging a

25   purported conspiracy in various foreign markets for CRTs under Section 1 of the Sherman Act,

26   15 U.S.C. § 1. (Dkt. 436).  On May 18, 2009, Defendants filed their Joint Motion to Dismiss

27                                                                                    4

28   | DEFENDANTS' JOINT OBJECTIONS TO THE SPECIAL MASTER'S | MDL No. 1917 |
     | REPORT REGARDING DEFS.' JOINT MOTION TO DISMISS THE DP-CAC | |

1   the DP-CAC on the grounds that, among other things, the complaint allegations fail to

2   establish subject matter jurisdiction under the FTAIA, the purported Direct Purchaser

3   Plaintiffs lack standing to bring antitrust claims under *Illinois Brick* and *A.G.C.*, and Plaintiffs

4   did not plead facts sufficient to satisfy the requirements for tolling the statute of limitations,

5   which bars claims accruing before November 26, 2003.  (Dkt. 479).

6          In an effort to overcome their inability to allege an actionable conspiracy claim

7   covering the sale of CRTs outside the United States, Plaintiffs asserted, in their Opposition to

8   Defendants' Joint Motion to Dismiss, that the DP-CAC also alleges a conspiracy in the U.S.

9   market to fix the prices of *Finished Products* incorporating CRTs as a component.  (Dkt. 503).

10  On September 24, 2009, Defendants filed their Joint Reply in Support of their Motion to

11  Dismiss the DP-CAC, arguing that, under *Twombly*, no such conspiracy directed at Finished

12  Product sales in the United States is plausibly alleged in the DP-CAC.  (Dkt. 503) ("Reply").[5]

13          In his Report, Judge Legge erred as a matter of law in holding that Plaintiffs had

14  sufficiently pled facts to support a conspiracy claim directed at Finished Products sold in the

15  United States.  Report at 3:20-11:4.  Based on this erroneous holding, Judge Legge rejected

16  Defendants' motion to dismiss the DP-CAC based on lack of subject matter jurisdiction,

17  *Illinois Brick*, and standing, without even addressing Plaintiffs' legal inability to assert the only

18  properly pled conspiracy claim in the DP-CAC – a claim regarding the foreign sales of CRTs.

19  *Id.* at 16:21-19:9.  Judge Legge also erroneously held that there were sufficient facts pled in the

20  DP-CAC to toll the statute of limitations.  *Id.* at 19:13-24:23.

21

22

23

24

_____

25  [5] On October 5, 2009, Judge Legge conducted a hearing on Defendants' motions to dismiss.
    Pursuant to Paragraph 17 of the Order Appointing Special Master, we are submitting the
26  hearing transcript as Exhibit 1 to the Declaration of Jeffrey Kessler, filed concurrently
    herewith.

27                                                                                      5

28  DEFENDANTS' JOINT OBJECTIONS TO THE SPECIAL MASTER'S          MDL No. 1917
    REPORT REGARDING DEFS.' JOINT MOTION TO DISMISS THE DP-CAC

1

**ARGUMENT**

2   **I.    THE RECOMMENDATION BY THE SPECIAL MASTER THAT**
3   **PLAINTIFFS ALLEGED A PLAUSIBLE CONSPIRACY**
     **DIRECTED AT FINISHED PRODUCTS IS WRONG AS A MATTER OF LAW**

4

5   In the section of the Report entitled "Relevant Products," the Special Master

erroneously held that the DP-CAC alleges a conspiracy directed at *both* CRTs and Finished

6   Products. *See* Report at 3:20-7:4. This conclusion is based on the mere fact that the DP-CAC

7   contains various *conclusory* allegations regarding "CRT Products." For example, the Special

8   Master notes that the DP-CAC includes "allegations regarding both" CRTs and "CRT

9   Products," and "repeatedly make[s] allegations regarding both products in the same

10  paragraphs." Report at 4:10-26. The Special Master further notes that "CRT Products" are

11  "identified" in the "very first paragraph" of the DP-CAC, and that, throughout the complaint,

12  "CRT Products" are "discussed" and "expressly mentioned." *Id.* The Special Master holds

13  that, by including such references to "CRT Products" in the DP-CAC, Plaintiffs "obviously

14  intended" to and did allege a conspiracy directed at the market for Finished Products. *Id.* at

15  4:10-26, 6:21-26.

16  None of these assertions, however, come close to satisfying the new pleading

17  standards set forth in *Twombly*. Specifically, while the DP-CAC contains many factual

18  allegations directed at an alleged foreign conspiracy involving CRTs, its use of the phrase

19  "CRT Products" to refer to both CRTs and Finished Products is *wholly conclusory* and, thus,

20  insufficient to put Defendants on notice of the nature of the alleged conspiracy, let alone to

21  state a claim under the new, more rigorous pleading standards of *Twombly*. *See* 550 U.S. at

22  570 (complaint allegations containing mere labels and conclusions are insufficient to state an

23  antitrust conspiracy claim); *see also Rick-Mik Enters., Inc. v. Equilon Enters., LLC*, 532 F.3d

24  963, 976-77 (9th Cir. 2008) (price-fixing claim fails under *Twombly* where, among other

25  things, "[t]he nature of the conspiracy or agreement is not alleged").

26

27                                                                                    6

1    For example, the DP-CAC sometimes uses the term "CRT Products" to refer

2    solely to CRTs:

3        MTPD was formed as a *CRT* joint venture . . . . MTPD manufactured, sold, and
         distributed *CRT Products* . . ." DP-CAC at ¶ 79 (emphases added).

4

5        BMCC is the second largest producer of *CRTs* for televisions in China.  During
         the class period, BMCC manufactured, sold, and distributed *CRT Products* . . ."

6        DP-CAC at ¶ 80 (emphases added).

7        In 1996, another industry source noted that "the price of the *14" tube* is at a
         sustainable USD50 and has been for some years . . ." In reality, consumer

8        prices for *CRT Products* never approached $50 in 1997, and were consistently
         double this price.  DP-CAC at ¶¶ 189-190 (emphases added).

9

10   While, other times, the DP-CAC uses the term "CRT Products" to refer solely to Finished

11   Products:

12       The Class definition encompasses those who bought a *CRT Product* directly
         from a Defendant, even if the *CRT contained therein* was manufactured by an

13       affiliated entity, principal, agent or co-conspirator.  DP-CAC at ¶ 86 (emphases
         added).

14

15   *See also* DP-CAC ¶ 144 ("in the case of vertically integrated manufacturers who produced

16   both CRTs and CRT Products").  This ambiguous use of the label "CRT Products" does not

17   even put Defendants on notice as to the object of the alleged conspiracy.  *Kendall v. Visa*

18   *U.S.A., Inc.*, 518 F.3d 1042, 1048 (9th Cir. 2008) (holding that a complaint must answer "the

19   basic questions: who, did what, to whom (or with whom), where and when?" to plead an

20   antitrust conspiracy).

21       More importantly, the allegation of a Finished Products conspiracy does not

22   come close to meeting the *new* pleading standards set forth in *Twombly*, which require that

23   Plaintiffs plead specific *facts* capable of plausibly supporting the conspiracy being alleged.

24   *See Twombly*, 550 U.S. at 555 (a plaintiff's "[f]actual allegations must be enough to raise a

25   right to relief above the speculative level").  In fact, the section of the Report addressing

26   *Twombly*, which is entitled "Pleading a Conspiracy," holds that Plaintiffs have properly pled a

27                                                                                              7

28

1   conspiracy claim, but it does not even address whether the plausible conspiracy alleged

2   involves CRTs, Finished Products, or both.  Nor does the Report point to any *factual*

3   *allegations* sufficient to support a conspiracy claim directed at *Finished Products*.  *See* Report

4   at 7:6-11:4.

5            Indeed, the only *factual* allegations of a conspiracy in the DP-CAC relate to a

6   purported conspiracy *for CRTs* in various foreign markets.   For example, the factual

7   allegations regarding the organizational structure of, participants in, and subjects discussed at,

8   various alleged conspiratorial meetings, relate solely to an alleged conspiracy involving CRTs.

9   *See* DP-CAC ¶ ¶ 137 (alleging meetings of "*CRT* makers"); ¶ 144 (alleging agreements on

10  *CRT* prices); ¶¶ 111, 146 (alleging agreements on output restrictions for *CRTs*); ¶ 188 (alleging

11  "unusual price movements in the *CRT* market."); ¶ 188 (alleging that despite the "existence of

12  economic conditions warranting a drop in prices, *CRT* prices nonetheless remained stable")

13  (emphases added throughout).   The DP-CAC does not allege *any facts* – as opposed to

14  conclusory assertions – to support a claim that any of the alleged conspiratorial meetings or

15  agreements restricted competition in the sale of *Finished Products*.

16           Nor does the DP-CAC allege any facts to support a claim that Defendants

17  agreed to fix the prices of *Finished Products*.  To the contrary, Plaintiffs allege only that in

18  reaching purported price-fixing agreements regarding the overseas sale of CRTs, CRT makers

19  also "considered the internal pricing of products containing CRTs." DP-CAC ¶ 144; *see also* ¶

20  146.[6]  The Special Master bases his finding of a purported conspiracy relating to Finished

21  Products on the "factual allegations of the contacts, meetings and agreements" set forth in

22  paragraphs 134-153 of the DP-CAC.  Report at 9:15-10:8.  But, the only factual allegations

23  contained in this section of the DP-CAC relate to an alleged conspiracy in the market for *CRTs*

24  – not Finished Products.  For example, paragraph 137 alleges facts about meetings among the

25  _____

26  [6] As asserted by Indirect Purchaser Plaintiffs, the market for Finished Products has
    experienced intense price declines and "vigorous price competition" for decades. IP-CAC ¶

27  227.
                                                                                                8

makers of "CRTs," and paragraphs 144 and 146 allege agreements as to the "prices reflecting inclusion of specific features in a CRT," and a conspiracy to set prices for CRTs. While this section of the DP-CAC includes the words "CRT Products," it alleges no *factual* basis for any conspiracy directed at anything other than CRTs.

The remaining allegations cited by the Special Master as supporting a conspiracy claim under *Twombly* also relate *only* to CRTs and not Finished Products. Report at 9:15-10:8. For example, the Report cites the complaint paragraphs regarding a criminal antitrust investigation being conducted by the Department of Justice ("DOJ"). Report at 9:25-26. Yet, Plaintiffs themselves allege that the DOJ investigation involves only a purported conspiracy involving *CRTs*. DP-CAC ¶ 125 ("The United States investigation of the *CRT conspiracy* is being conduct by the DOJ's Antitrust Division's office in the Northern District of California.") (emphasis added).

Similarly, the Special Master's citation to the alleged plea and indictment of C.Y. Lin of Chunghwa PT further demonstrates that Plaintiffs have not pled a plausible conspiracy involving Finished Products. Report at 9:25-26. The indictment of Mr. Lin refers to an alleged conspiracy that relates only to *CRTs. See* Saveri Decl. in Supp. of Pls.' Opp'n, Ex. 7 (Dkt. 530-4), at 1-5; *see also* DP-CAC ¶¶ 125-31, 133 (alleging that foreign and domestic antitrust enforcement agencies are investigating an alleged *CRT* conspiracy). As the DOJ stated in a public announcement cited by Plaintiffs, the indictment charges Lin with conspiring in the markets for color display tubes ("CDTs") and color picture tubes ("CPTS"), the two main types of CRTs. *Id.* at ¶¶ 125-126 (charging that Lin and co-conspirators took various steps to: "discuss the prices, output and market shares of CDTs"; "charge prices of CDTs at certain target levels or ranges"; "reduce output of CDTs by shutting down CDT production

1  lines"; "discuss the prices of CPTs"; and "charge prices of CPTs at certain target levels or

2  ranges"). There is no allegation relating to any alleged conspiracy for Finished Products.[7]

3         Indeed, while the DP-CAC alleges market concentration and share data for the

4  CRT market, *id.* ¶ 112, it fails to allege *any* market data for Finished Products, let alone

5  Defendants' collective market share in the sale of any particular Finished Products in the U.S.

6  This failure is not just a technicality, for it renders any Finished Products price-fixing

7  conspiracy economically implausible. What is more, Plaintiffs have not named as Defendants,

8  or as participants in any alleged Finished Products conspiracy, numerous companies – for

9  example, Sony Corporation, Sharp, Sanyo, and Vizio in the sale of CRT televisions, and Dell,

10  Apple, Gateway, and Hewlett Packard in the sale of monitors – that have *major shares* in U.S.

11  markets for these Finished Products. Without such participants, any alleged conspiracy in

12  Finished Products would make no economic sense and cannot state a plausible claim under

13  *Twombly. See* 550 U.S. at 570; *Rick-Mik Enters.*, 532 F.3d at 976-77; *In re Late Fee and*

14  *Over-Limit Fee Litigation*, 528 F. Supp. 2d 953, 962 (N.D. Cal. 2007); *see also Matsushita*

15  *Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *DM Research, Inc. v. Coll. of*

16  *Am. Pathologists*, 170 F.3d 53, 56 (1st Cir. 1999) (affirming dismissal of a complaint where

17  allegation of conspiracy was economically implausible); *Lucas v. Citizens Commc'ns Co.*, 409

18  F. Supp. 2d 1206, 1214-15 (D. Haw. 2005) (holding that a plaintiff must allege an

19  economically plausible conspiracy).

20         In sum, even under the most liberal view of *Twombly* and *Iqbal*, the DP-CAC

21  alleges no facts capable of supporting a plausible Finished Products conspiracy claim. Thus,

22  as the Supreme Court has made clear, Plaintiffs should not be allowed to use this litigation as a

23

24  [7] The DP-CAC also contains allegations regarding investigations conducted by competition
authorities in other jurisdictions, but Plaintiffs allege that all such investigations involve CRTs.

25  DP-CAC at ¶¶ 127-133 (alleging that investigation by Japanese Fair Trade Commission
involved production facilities of "CRTs"; Korean Fair Trade Commission is allegedly

26  investigating a company's "CRT subsidiary; Hungarian investigation allegedly involves "the
manufacturing and distribution of cathode-ray tubes").

27                                                        10

28  DEFENDANTS' JOINT OBJECTIONS TO THE SPECIAL MASTER'S      MDL No. 1917
REPORT REGARDING DEFS.' JOINT MOTION TO DISMISS THE DP-CAC

1   fishing expedition to pursue burdensome and costly discovery in search of an actionable

2   conspiracy which they have not plausibly alleged. *Iqbal*, 129 S. Ct. at 1950; *see Twombly*, 550

3   U.S. at 546 ("[I]t is one thing to be cautious before dismissing an antitrust complaint in

4   advance of discovery . . . but quite another to forget that proceeding to antitrust discovery can

5   be expensive."); *id.* at 560 n.6 (describing antitrust discovery as a "sprawling, costly, and

6   hugely time-consuming undertaking"). As a result, all of the conclusory complaint allegations

7   regarding a Finished Products conspiracy must be dismissed.

8   **II.    THE FINDING BY THE SPECIAL MASTER THAT**
         **THE COURT HAS SUBJECT MATTER JURISDICTION UNDER THE FTAIA**
9       **IS BASED ON THE ERRONEOUS LEGAL PREMISE THAT THE DP-CAC**
         **PLAUSIBLY ALLEGES A FINISHED PRODUCTS CONSPIRACY**
10

11          The Report does not dispute the proposition set forth in Defendants' Joint

12   Motion that, under the FTAIA, the Sherman Act does not apply to alleged conspiracies

13   involving foreign trade unless the foreign conduct alleged has direct, substantial, and

14   reasonably foreseeable anticompetitive effects on U.S. commerce. Report at 16:22-17:25

15   citing 15 U.S.C. § 6a (2006). Nor does the Report dispute that the DP-CAC is directed at

16   claims of a foreign conspiracy involving overseas CRT sales. As stated in the Report:

17          It is apparent that the CRTs are manufactured *abroad* and are sold to *foreign*
             other-equipment manufacturers, which incorporate the CRTs into their
18          products, such as computers and television sets. And it is the assembled
             products containing the CRTs which are then sold into the United States
19          through the chain of distribution, and are ultimately sold and purchased in retail
             markets of the United States.
20

21   Report at 4:1-5, 17:15-25 (emphases added).[8]

22          However, the Report erred, as a matter of law, in concluding that the conspiracy

23   allegations in the DP-CAC are sufficient to establish subject matter jurisdiction because they

24   _____

25   [8] This finding by the Special Master is fatal to the complaint's allegations relating to CRTs as
     the FTAIA bars jurisdiction over any conspiracy directed at foreign CRT sales. *See United*
26   *States v. LSL Biotechs.*, 379 F.3d 672, 680 (9th Cir. 2004) (holding that the FTAIA barred
     jurisdiction where Plaintiffs alleged an agreement between domestic and foreign corporations
27   to restrict the sale of modified seeds in Mexico).

                                                                                            11
28   DEFENDANTS' JOINT OBJECTIONS TO THE SPECIAL MASTER'S               MDL No. 1917
     REPORT REGARDING DEFS.' JOINT MOTION TO DISMISS THE DP-CAC

"encompass[] CRT Products," purportedly "manufactured by the defendants" and "imported into the United States, and bought and sold in United States trade and commerce . . ." *Id.* at 17:19-25. As the allegations of a Finished Products conspiracy are insufficient under *Twombly*, the mere sale of Finished Products in the U.S. to Plaintiffs is insufficient to establish subject matter jurisdiction under federal antitrust law. Specifically, the FTAIA bars antitrust actions where, as here, Plaintiffs allege "restraints in foreign markets *for inputs*," such as CRTs, "that are used abroad to manufacture downstream products…that may later be imported into the United States." *United Phosphorus, Ltd. v. Angus Chem. Co.*, 131 F. Supp. 2d 1003, 1014 (N.D. Ill. 2001) (emphasis added); *see also id.* (domestic effects, if any, of such inputs "would obviously not be 'direct,' much less 'substantial' and 'reasonably foreseeable'"); *In re Intel Corp. Microprocessor Antitrust Litig.*, 476 F. Supp. 2d 452, 456 (D. Del. 2007). Because the Special Master did not address this argument in his Report, Defendants respectfully request that the Court remand the FTAIA issue to the Special Master, so he may reconsider the jurisdictional issue in light of the conclusion that the DP-CAC only plausibly alleges a conspiracy relating to the foreign sale of CRTs.[9] Specifically, Defendants urge this Court to adopt the efficient case management approach of the court in *Intel*, by dismissing claims based on foreign sales *at the pleading stage*. *Intel*, 452 F. Supp. 2d 555, 559-60. *See, also, Commercial Street Express LLC v. Sara Lee Corp.*, No. 08 C 1179, 2008 WL 5377815 (N.D. Ill. Dec. 18, 2008) (dismissing claims for lack of subject matter jurisdiction under the FTAIA at the pleadings stage); *Emerson Elec. Co. v. Le Carbone Lorraine, S.A.*, 500 F. Supp. 2d 437 (D.N.J. 2007) (same).

---

[9] As this Court held in *In re Rubber Chemicals Antitrust Litigation*, for purposes of the FTAIA, foreign conduct cannot be "'combined with domestic conduct in an attempt to confer jurisdiction over the foreign conduct under the rubric of a single claim.'" 504 F. Supp. 2d 777, 784 (N.D. Cal. 2007) (quoting *In re Intel Corp. Microprocessor Antitrust Litig.*, 452 F. Supp. 2d 555, 562 (D. Del. 2006) ("*Intel*")); *see also Dee-K Enters., Inc. v. Heveafil Sdn. Bhd*, 299 F.3d 281, 294-95 (4th Cir. 2002) (the FTAIA applies where, as here, the "acts, targets, and effects" are "primarily foreign").

DEFENDANTS' JOINT OBJECTIONS TO THE SPECIAL MASTER'S                    MDL No. 1917
REPORT REGARDING DEFS.' JOINT MOTION TO DISMISS THE DP-CAC

III.   **THE FINDING BY THE SPECIAL MASTER THAT
PLAINTIFFS HAVE ANTITRUST STANDING IS
ALSO BASED ON THE ERRONEOUS PREMISE OF A WELL-PLED
FINISHED PRODUCTS CONSPIRACY**

The Report also does not address the argument raised in Defendants' Joint

Motion that Plaintiffs who only allege direct purchases from Defendants of downstream

Finished Products that *incorporated* an allegedly price-fixed CRT lack antitrust standing. The

Report's recommendations are wrong, under both the *Illinois Brick* direct purchaser rule and

the standing principles of *A.G.C.* Indeed, the Report does not dispute the fact that the DP-CAC

does not allege that any Plaintiffs made purchases of CRTs (as opposed to Finished Products)

directly from any Defendant. Instead, the Special Master erroneously concluded that Plaintiffs

have established direct purchaser antitrust standing simply because they allege purchases from

Defendants of "CRT Products":

> Both complaints allege that Plaintiffs have purchased CRT Products from the
> defendants. The allegation is that because the prices at which [Plaintiffs]
> purchased the products were inflated by the alleged conspiracy, Plaintiffs have
> suffered antitrust injuries and their claimed injuries are not remote under *A.G.C.*
> And because the Plaintiffs in the direct case purchased CRT Products from the
> defendants, they are not indirect purchasers under *Illinois Brick*.

Report at 18:20-25.

This recommendation is not legally supportable in the absence of factual

allegations in the DP-CAC sufficient to support a plausible conspiracy involving Finished

Products. Because Plaintiffs do not assert that they purchased CRTs, it can only be concluded

that they purchased Finished Products – products for which there is no plausible antitrust

claim.

This is fatal under the direct purchaser rule set forth in *Illinois Brick*, which

established a "bright line rule [that] . . . only direct purchasers" of the product allegedly

price-fixed "have standing under Section 4 of the Clayton Act to seek damages for antitrust

violations. *Del. Valley Surgical Supply, Inc. v. Johnson & Johnson*, 523 F.3d 1116, 1120-21

13

1   (9th Cir. 2008).  It is also fatal under the test for antitrust standing articulated in *A.G.C.*, which

2   requires, among other things, that an antitrust plaintiff allege "antitrust injury" – *i.e.*, injury that

3   is of the type the antitrust laws were intended to rectify – and satisfy various "remoteness"

4   factors addressing (i) the nature of plaintiff's alleged injury; (ii) the directness of the injury;

5   (iii) the speculative measure of the harm; (iv) the risk of duplicative recovery; and (v) the

6   complexity in apportioning damages. 459 U.S. at 537-44.  *See also Lucas Auto. Eng'g, Inc.*,

7   140 F.3d at 1232 (9th Cir. 1998).  The Special Master did not address any of these factors, or

8   the direct purchaser rule of *Illinois Brick*, in the context of a complaint that only alleges a

9   plausible conspiracy directed at the overseas sales of CRTs.

10           Thus, once the Court finds that the DP-CAC fails to allege a plausible Finished

11   Products conspiracy, the Court should remand to Judge Legge the arguments raised in

12   Defendants' Joint Motion for dismissal under *Illinois Brick* and *A.G.C.* that the alleged CRT

13   conspiracy claim cannot support Plaintiffs' standing to assert an antitrust claim.  *See* Joint

14   Motion at 13:16-18:17.

15   **IV.   THE HOLDING BY THE SPECIAL MASTER THAT THE DP-CAC**
     **SUFFICIENTLY PLEADS FACTS TO ESTABLISH FRAUDULENT**
16   **CONCEALMENT IS WRONG AS A MATTER OF LAW UNDER**
     **CONTROLLING NINTH CIRCUIT PRECEDENT**
17

18       **A.   Plaintiffs Fail to Allege Fraudulent Concealment Facts as to Each**
              **Defendant Which is Required Under Binding Ninth Circuit Precedent.**
19
             The Report recognizes that "Plaintiffs have not alleged fraudulent concealment
20
     on a defendant-by-defendant basis." Report at 21:5-7.  Nevertheless, the Report incorrectly
21
     excuses Plaintiffs' failure to meet the individual defendant pleading requirements on the
22
     purported ground that this case involves a "large international conspiracy." *Id.* at 21:12-15
23
             In doing so, the Report cites *no* authority that supports a departure on this basis
24
     from the applicable pleading requirements. *Id.*  A complaint must answer "the basic questions:
25
     who, did what, to whom (or with whom), where and when?" to plead an antitrust conspiracy.
26
     *Kendall*, 518 F.3d at 1048.  Plaintiffs' barebones fraudulent concealment allegations against an
27
                                                                                          14
28   ───────────────────────────────────────────────────────────
     DEFENDANTS' JOINT OBJECTIONS TO THE SPECIAL MASTER'S          MDL No. 1917
     REPORT REGARDING DEFS.' JOINT MOTION TO DISMISS THE DP-CAC

1    undifferentiated group of "Defendants" fall far short of satisfying *Twombly*'s and *Iqbal*'s

2    pleading requirement that Plaintiffs identify "facts such as a 'specific time, place or person

3    involved in the alleged conspiracies.'" *Id.* at 1047 (quoting *Twombly*, 127 S. Ct. at 1970 n.10).

4              Accordingly, the Report's reliance on "general principle[s] of conspiracy law"

5    is misplaced. Report at 21:17-21. Plaintiffs may not "generally use the fraudulent

6    concealment by one defendant as a means to toll the statute of limitations against other

7    defendants." *Barker v. Am. Mobil Power Corp.*, 64 F.3d 1397, 1402 (9th Cir. 1995). Instead,

8    Plaintiffs must identify each member of the alleged conspiracy and must also state facts

9    sufficient to allege *each* Defendant's role in fraudulently concealing the alleged conspiracy.

10   The DP-CAC's allegations fail to satisfy these requirements, as the Report acknowledges.

11   Report at 21:5-7 ("[P]laintiffs have not alleged fraudulent concealment on a

12   defendant-by-defendant basis.").

**B.    The Report Fails to Address the Absence of Affirmative Concealment Allegations Necessary to State a Fraudulent Concealment Claim.**

13

14             While the Report sets forth the applicable pleading requirements for a

15   fraudulent concealment claim to withstand a motion to dismiss, it  neglects to address

16   Plaintiffs' failure to allege specific facts regarding fraudulent concealment. In particular, the

17   plaintiff must "specifically allege additional acts by the conspirators to hide their activities."

18   Report at 23:19-20; *see also Conmar Corp. v. Mitsui & Co.*, 858 F.2d 499, 502 (9th Cir. 1988)

19   ("Conmar carries the burden of pleading and proving fraudulent concealment; it must plead

20   facts showing that Mitsui affirmatively misled it...."). The Report also fails to address

21   whether Plaintiffs adequately pled the required affirmative-concealment "facts." Plaintiffs did

22   not do so.

23             As Defendants pointed out in their Joint Motion and Reply, the DP-CAC

24   contains not a single allegation concerning specific acts by any Defendant to conceal an

25   alleged conspiracy. Joint Motion at 20:18-23:18; Reply at 21:5-22:18. The Report does not

26   address this material pleading defect. Plaintiffs have failed to satisfy their pleading burden,

27                                                                                        15

1  and the statute of limitations may not be tolled.  As a consequence, all claims for damages

2  accruing more than four years prior to the filing of the original complaints, *i.e.*, before

3  November 26, 2003, should be stricken.

C.  **The Report Fails to Consider that the DP-CAC Does Not Allege the Required Due Diligence Allegations Necessary to State a Fraudulent Concealment Claim.**

The Report also does not consider Plaintiffs' self-acknowledged failure to plead any due diligence, which is fatal to a fraudulent concealment claim.  *Rutledge v. Boston Woven Hose & Rubber Co.*, 576 F.2d 248, 249-50 (9th Cir. 1978).  Instead, the Report glosses over Plaintiffs' failure to exercise due diligence by conceding that "the portions of the complaints cited by defendants do not really indicate whether the acts were known at the time, or did not become known until after Plaintiffs became aware of the alleged conspiracy in 2007." Report at 22:20-23.  This lack of precision precisely demonstrates Plaintiffs' failure to plead fraudulent concealment with the requisite particularity.

Plaintiffs conclusorily assert they "could not have discovered . . . the existence of the conspiracy alleged herein until November of 2007," yet fail to provide *any* details about why they should be excused from their due diligence obligations.  Pls.' Opp'n at 32:6-8.  In fact, Plaintiffs own conspiracy allegations rely upon *publicly available* information – information that was available well before November 26, 2003 – that put Plaintiffs on constructive notice of their claims and, as a result, triggered Plaintiffs' due diligence obligations.  *See* Joint Motion at 26:13-19; *Rutledge*, 576 F.2d at 249-50.

The Report fails to consider the DP-CAC's multiple fact allegations concerning prior and long-standing notice of a possible CRT conspiracy, and, more importantly, disregards Plaintiffs' admission that they did not conduct *any* due diligence.  Pls.' Opp'n at 32:11-18.  Plaintiffs' failure to plead required elements of a fraudulent concealment claim is insufficient to toll the statute of limitations.

16

1

**CONCLUSION**

2          For all of the reasons stated above, this Court should reject the Report of the

3    Special Master insofar as it finds that an actionable conspiracy has been alleged with respect to

4    Finished Products, as opposed to CRTs.  Further, as a consequence of this ruling, the Court

5    should remand to Judge Legge the arguments raised in Defendants' Joint Motion for dismissal

6    under the FTAIA, *Illinois Brick*, and *A.G.C.*  Finally, the Court should hold that the DP-CAC

7    does not allege sufficient facts to plead fraudulent concealment and toll the applicable statute

8    of limitations period in this case.

9    DATED: February 19, 2009              By:  ___/s/ Jeffrey L. Kessler___
                                          JEFFREY L. KESSLER (*pro hac vice*)
10                                         Email: jkessler@dl.com
                                          A. PAUL VICTOR (*pro hac vice*)
11                                         Email: pvictor@dl.com
                                          EVA W. COLE (*pro hac vice*)
12                                         Email : ecole@dl.com
13                                         **DEWEY & LEBOEUF LLP**
                                          1301 Avenue of the Americas
14                                         New York, New York 10019
                                          Telephone: (212) 259-8000
15                                         Facsimile: (212) 259-7013

16                                         PETER ROOT (142348)
17                                         Email: proot@dl.com
                                          **DEWEY & LEBOEUF LLP**
18                                         1950 University Avenue
                                          East Palo Alto, California 94303
19                                         Telephone: (650) 845-7000
                                          Facsimile: (650) 845-7333
20

21                                         STEVEN A. REISS (*pro hac vice*)
                                          Email: steven.reiss@weil.com
22                                         DAVID L. YOHAI (*pro hac vice*)
                                          Email: david.yohai@weil.com
23                                         DAVID E. YOLKUT (*pro hac vice*)
                                          Email: david.yolkut@weil.com
24                                         **WEIL, GOTSHAL & MANGES LLP**
25                                         767 Fifth Avenue
                                          New York, New York 10153-0119
26                                         Telephone:  (212) 310-8000

27                                                                                      17

28   DEFENDANTS' JOINT OBJECTIONS TO THE SPECIAL MASTER'S          MDL No. 1917
     REPORT REGARDING DEFS.' JOINT MOTION TO DISMISS THE DP-CAC

Facsimile:  (212) 310-8007

GREGORY D. HULL (57367)
Email: greg.hull@weil.com
**WEIL, GOTSHAL & MANGES LLP**
201 Redwood Shores Parkway
Redwood Shores, California 94065-1175
Telephone: (650) 802-3000
Facsimile: (650) 802-3100

*Attorneys for Defendants Panasonic*
*Corporation of North America, MT Picture*
*Display Co., Ltd., Panasonic Corporation (f/k/a*
*Matsushita Electric Industrial Co.)*


By:  ___/s/ Gary L. Halling___
GARY L. HALLING (66087)
ghalling@sheppardmullin.com
JAMES L. MCGINNIS (95788)
jmcginnis@sheppardmullin.com
MICHAEL SCARBOROUGH (203524)
mscarborough@sheppardmullin.com
**SHEPPARD, MULLIN, RICHTER &**
**HAMPTON LLP**
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone: (415)-434-9100
Facsimile: (415)-434-3947

*Attorneys for Defendants Samsung SDI*
*America, Inc., Samsung SDI Co., Ltd.,*
*Samsung SDI (Malaysia) Sdn. Bhd., Samsung*
*SDI Mexico S.A. de C.V., Samsung SDI Brasil*
*Ltda., Shenzhen Samsung SDI Co. Ltd., and*
*Tianjin Samsung SDI Co., Ltd.*


By:  ___/s/ Michael Tubach___
MICHAEL TUBACH (145955)
Email: mtubach@omm.com
**O'MELVENY & MYERS LLP**
Two Embarcadero Center, 28th Floor
San Francisco, California 94111-3823
Telephone: (415) 984-8876

18

DEFENDANTS' JOINT OBJECTIONS TO THE SPECIAL MASTER'S                    MDL No. 1917
REPORT REGARDING DEFS.' JOINT MOTION TO DISMISS THE DP-CAC

Facsimile: (415) 984-8701

By: ___/s/ Ian Simmons___
IAN SIMMONS (*pro hac vice*)
Email : isimmons@omm.com
**O'MELVENY & MYERS LLP**
1625 Eye Street, NW
Washington, DC 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414

*Attorneys for Defendants Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc.*

By: ___/s/ Samuel Miller___
SAMUEL R. MILLER (66871)
Email: srmiller@sidley.com
MARIE L. FIALA (79676)
Email: mfiala@sidley.com
RYAN M. SANDROCK (251781)
Email: rsandrock@sidley.com
ROBERT B. MARTIN, III (235489)
rbmartin@sidley.com
**SIDLEY AUSTIN LLP**
555 California Street, 20th Floor
San Francisco, California 94104
Telephone : (415) 772-1200
Facsimile: (415) 772-7400

*Attorneys for Defendants LG Electronics, Inc., LG Electronics USA, Inc., and LG Electronics Taiwan Taipei Co., Ltd.*

By: ___/s/ Ethan E. Litwin___
ETHAN E. LITWIN  (*pro hac vice*)
Email: LitwinE@howrey.com
**HOWREY LLP**
601 Lexington Avenue, 54th Floor
New York, New York 10022
Telephone: (212) 896-6500
Facsimile: (212) 896-6501

19

DEFENDANTS' JOINT OBJECTIONS TO THE SPECIAL MASTER'S
REPORT REGARDING DEFS.' JOINT MOTION TO DISMISS THE DP-CAC

MDL No. 1917

By:  /s/ John Taladay
JOHN TALADAY (*pro hac vice*)
Email: TaladayJ@howrey.com
**HOWREY LLP**
1299 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2402
Telephone: (202) 783-0800
Facsimile: (202) 383-6610

*Attorneys for Defendant Philips Electronics*
*North America Corporation, Koninklijke*
*Philips Electronics N.V., Philips Electronics*
*Industries Ltd., Philips Consumer Electronics*
*Co., Philips Electronics Industries (Taiwan),*
*Ltd., and Philips da Amazonia Industria*
*Electronica Ltda.*

By: /s/ Kent M. Roger
KENT M. ROGER (95987)
Email:  kroger@morganlewis.com
DIANE L. WEBB (197851)
Email:  dwebb@morganlewis.com
MICHELLE PARK CHIU (248421)
Email:  mchiu@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
One Market, Spear Street Tower
San Francisco, California 94105-1126
Telephone: (415) 442-1000
Facsimile: (415) 442-1001

*Attorneys for Defendants Hitachi, Ltd., Hitachi*
*Asia, Ltd., Hitachi America, Ltd., Hitachi*
*Electronic Devices (USA), Inc., and Hitachi*
*Displays, Ltd.*

By: /s/ Terry Calvani
TERRY CALVANI (53260)
Email: terry.calvani@freshfields.com
BRUCE C. MCCULLOCH (*pro hac vice*)
Email: bruce.mcculloch@freshfields.com
**FRESHFIELDS BRUCKHAUS DERINGER**
**US LLP**
701 Pennsylvania Avenue, N.W.
Suite 600

20

DEFENDANTS' JOINT OBJECTIONS TO THE SPECIAL MASTER'S                     MDL No. 1917
REPORT REGARDING DEFS.' JOINT MOTION TO DISMISS THE DP-CAC

Washington, DC  20004
Telephone:  (202) 777-4500
Facsimile:  (202) 777-4555

***Attorneys for Defendant Beijing Matsushita***
***Color CRT Company, Ltd.***


By: /s/ George L. Paul
CHRISTOPHER M. CURRAN (*pro hac vice*)
Email:  ccurran@whitecase.com
GEORGE L. PAUL (*pro hac vice*)
Email:  gpaul@whitecase.com
LUCIUS B. LAU (*pro hac vice*)
Email:  alau@whitecase.com
**WHITE & CASE LLP**
701 Thirteenth Street, N.W.
Washington, DC  20005
Telephone: (202) 626-3600
Facsimile: (202) 639-9355

***Attorneys for Defendants Toshiba Corporation,***
***Toshiba America Electronic Components, Inc.,***
***Toshiba America Information Systems, Inc.,***
***Toshiba America, Inc., and Toshiba America***
***Consumer Products, L.L.C.***

By: /s/ William Diaz
WILLIAM DIAZ (232297)
Email:  wdiaz@mwe.com
**MCDERMOTT WILL & EMERY**
18191 Von Karman Avenue
Suite 500
Irvine, California 92612-7108
Telephone:  (949) 851-0633
Facsimile:  (949) 851-9348

***Attorneys for Samtel Color, Ltd.***


*Pursuant to General Order No. 45, § X-B, the filer attests that concurrence in the filing of this document has been obtained from each of the above signatories.*

21

DEFENDANTS' JOINT OBJECTIONS TO THE SPECIAL MASTER'S
REPORT REGARDING DEFS.' JOINT MOTION TO DISMISS THE DP-CAC

MDL No. 1917