# EXHIBIT A

1   KIRTLAND & PACKARD LLP
2361 Rosecrans Avenue, Fourth Floor
2   El Segundo, California  90245
Telephone: (310) 536-1000
3   Facsimile: (310) 536-1001
Michael L. Kelly - State Bar No. 82063
4   Robert M. Churella - State Bar No. 73319
Robert K. Friedl - State Bar No. 134947
5   Behram V. Parekh - State Bar No. 180361
mlk@kirtlandpackard.com
6   rmc@kirtlandpackard.com
rkf@kirtlandpackard.com
7   bvp@kirtlandpackard.com
Attorneys for Plaintiff Richard A. Weinstein,
8   for himself and all others similarly situated

9

10                    UNITED STATES DISTRICT COURT

11                  NORTHERN DISTRICT OF CALIFORNIA

12   RICHARD A. WEINSTEIN on behalf of          )   Case No.  07-CV-00348-MMC
     himself and all others similarly situated,  )
13                                                )   **THIRD AMENDED COMPLAINT FOR:**
                    Plaintiff,                    )
14                                                )      **1. VIOLATION OF CALIFORNIA'S**
                                                  )      **CONSUMER LEGAL REMEDIES**
15              v.                                )      **ACT**
                                                  )      **2. VIOLATION OF THE UNFAIR**
16                                                )      **COMPETITION LAWS**
     SATURN CORPORATION, EAST BAY                 )      **3. VIOLATION OF THE FALSE**
17   AUTO GROUP INC. dba SATURN OF                )      **ADVERTISING LAWS**
     OAKLAND, and DOES 1 - 100, inclusive,        )      **4. BREACH OF IMPLIED**
18                                                )      **WARRANTY**
                    Defendants.                   )
19                                                )   DEMAND FOR JURY TRIAL
     _____         )
20                                                   CLASS ACTION

21

22          COMES NOW PLAINTIFF RICHARD A. WEINSTEIN, on behalf of himself and all

23   others similarly situated, and brings this action against Defendants Saturn Corporation, Saturn of

24   Oakland, and Does 1 - 100 inclusive, and alleges on information and belief (except for those

25   allegations pertaining directly to Plaintiff himself) as follows:

26                                      **PARTIES**

27          1.      Plaintiff Richard A. Weinstein ("Plaintiff") is an individual residing at all times

28   mentioned herein in the County of Alameda, State of California.

02149-00001  0117280.01

LAW OFFICES
KIRTLAND & PACKARD LLP

2.      Defendant Saturn Corporation ("Saturn") is a Delaware Corporation, doing business at all times mentioned herein in the United States, and doing business at all times mentioned herein in the State of California as Saturn Motor Car Corporation.

3.      Defendant East Bay Auto Group, Inc. is a California Corporation, doing business as Saturn of Oakland, doing business at all times mentioned herein in the United States, doing business at all times mentioned herein in the State of California, and located in Oakland, California ("Saturn of Oakland").

4.      The true names and capacities, whether individual, corporate, associate, representative or otherwise, of the Defendants identified herein as Does 1 - 100 inclusive are unknown to Plaintiff, who therefore sues these Defendants by said fictitious names. Plaintiff will amend this complaint to allege the true names and capacities of Does 1 - 100 when they have been ascertained. Does 1 -100 are in some manner legally responsible for the wrongs and injuries alleged in this complaint. Saturn, East Bay Auto Group, and Does 1 - 100 are collectively referred to herein as "Defendants."

5.      Each of the Defendants acted as the co-conspirator, agent, joint venturer or alter-ego with respect to all acts, violations, and common course of conduct alleged herein, or is otherwise liable.

6.      The acts alleged in this complaint to have been committed by Defendants were authorized, ordered or done by their officers, agents, employees or representatives while actively engaged in the management of the Defendants' businesses.

## JURISDICTION

7.      This matter was filed in the Superior Court of the State of California for the County of Alameda. The case was removed pursuant to 28 U.S.C. § 1441. Defendant asserted jurisdiction pursuant to 28 U.S.C. § 1332(d)(2).

## INTRADISTRICT ASSIGNMENT

8.      This action arose in the County of Alameda. Pursuant to Local Rule 3-2(d), assignment is proper in the San Francisco division of this Court.

LAW OFFICES
KIRTLAND & PACKARD LLP

02149-00001  0117280.01                          -2-

**INTRODUCTION**

9.      This action concerns the purchase by Plaintiff of a 2006 Saturn VUE ("VUE") which was described, advertised, and promoted as featuring the OnStar system, a material part of which included the ability to place and receive telephone calls.  Unbeknownst to Plaintiff and the putative class, the OnStar system's telephone calling component is incapable of performing one of the normal functions expected of a telephone, namely, the ability to navigate the now ubiquitous automated phone systems which require the entry of touch-tones to navigate through a series of menus, reach a specific extension, or even just attempt to speak to a live human being.  At all times prior to the sale of the VUE to Plaintiff, and contrary to the reasonable expectations of Plaintiff and the putative class that Defendants' calling system would have at least the same functionality as a normal telephone or cellular telephone, Defendants, and each of them, never informed Plaintiff and the putative class that the OnStar system in the VUE was incapable, once a call was placed, from allowing the user to transmit the touch-tones that would allow for the navigation of automated phone systems.  Plaintiff requests injunctive relief, restitution and damages, on behalf of himself and all others similarly situated.

**GENERAL ALLEGATIONS**

10.      On September 19, 2006, Plaintiff purchased a 2006 Saturn VUE ("the VUE") from Saturn of Oakland, located at 2401 Broadway, Oakland, California, 94612.

11.      The VUE was manufactured by Saturn and, Plaintiff is informed and believes, Saturn provided the VUE to Saturn retailers, along with all marketing materials concerning the VUE, training regarding the features of the OnStar system, a 2006 Saturn VUE Owner's Manual, OnStar Owner's Guide and an OnStar Compact Disc.

**AGENCY**

12.      Plaintiff is informed and believes that Saturn of Oakland and other Saturn retail locations, vis-a-vis Plaintiff and the putative class, acted as the agents of Saturn in making statements regarding the features of the VUE and were, at all times relevant herein, authorized to make statements to consumers, including Plaintiff, regarding the features of the VUE in

LAW OFFICES
KIRTLAND & PACKARD LLP

connection with the sale of the VUE to Plaintiff and members of the general public. Plaintiff's information and belief is a result of the following series of facts:

a)      Saturn of Oakland as well as other Saturn retail locations exclusively sell Saturn vehicles;

b)      The Saturn name and Saturn logo, without any "of Oakland" terminology was prominently displayed throughout the Saturn of Oakland retail location;

c)      Similarly, the Saturn name and Saturn logo, without any additional qualifying terminology, is prominently displayed throughout other Saturn retail locations;

d)      Saturn advertising refers to their sales locations as "retailers" and "retail facilities" rather than "dealers" and "dealerships," intentionally setting their sales locations apart, in the minds of consumers, from other car dealerships;

e)      Saturn advertises "no haggle" pricing at all of their retail locations, leading consumers to believe such policy and pricing is set by Saturn and not the individual retailer;

f)      The Saturn Franchise Offering Circular dated March 30, 2006 ("Circular"), which includes a standard franchise agreement, specifically states "Owners and users of motor vehicles may reasonably expect that the vehicles you sell, and the parts, accessories, and service contracts you sell or use in servicing vehicles, are marketed by us [Saturn] or the Parent [General Motors]";

g)      According to the Circular, to be selected as a Saturn dealer, there is a detailed "Selection Process." An applicant must be fully committed (in the opinion of Saturn) to the "Saturn Mission," "Saturn Philosophy" and "Saturn Values."(Doc. 18-3 p. 9)

h)      According to the Circular, Saturn approves and specifies the dealer's location and marketing area. (Doc. 18-3 p. 11)

i)      According to the Circular, Saturn requires that the retail operation be managed by the individual who is the named franchise operator. (Doc. 18-3 p. 13)

j)      According to the Circular, Saturn provides a mandatory design package for the interior and exterior of the retail facility. (Doc. 18-3 p. 19-22)

k)  According to the Circular, Saturn requires three types of training for retailers, "Technical," "Non-Technical" and "Continuous Learning Seminars." (Doc. 18-3, p. 24) There are numerous required training courses including one called "*OnStar: What's behind the Buttons.*" (Doc. 18-5, pp. 1-3, emphasis added)

l)  According to the Circular, Saturn requires retailers to install a computer network with hardware and software conforming to its specifications, permitting the transfer of information between the retailer and Saturn, including a requirement that Saturn have immediate on-line access to all of the retailer's financial accounts and records. (Doc. 18-3 p. 26)

m)  According to the Circular, Saturn requires retailers to purchase Sales and Service Operating Systems to develop and implement sales and service in the retailer's marketing area.  "These systems include the Modules and other materials and programs that promote consistent and competitive display, sales, and service of the products, such as *merchandising materials, product displays, and technical product support materials.*" (Doc. 18-4 p. 1-2, emphasis added);

n)  According to the Circular, Saturn requires retailers "to purchase, maintain and use only signs approved by the Franchiser as designated in the Retail Facilities Guide and the Critical Image Elements Guide, and to make and pay for any changes in signage approved by the FOT." (Doc. 18-7 p. 22);

o)  According to the Circular, Saturn requires its retailer to agree that they "will conduct Retail Facility Operation . . . utilizing . . . the Saturn Consultative Sales Process" which is defined as "the seven-step process that delivers a sales experience focused on the wants and needs of the customer.  It includes reception, interview, selective presentation, walkaround demonstration, purchase consultation, delivery and follow-up." (Doc. 18-7 p. 24; Doc. 18-8 p. 47).

p)  According to the Circular, Saturn provides indemnification to its retailers, including Saturn of Oakland, for a "Failure of a Product to conform to the description *set forth in advertisements or product brochures distributed by Saturn, because of changes in*

LAW OFFICES
KIRTLAND & PACKARD LLP

1   either standard equipment or material component parts, *unless the Retailer received*

2   *notification of the changes* prior to retail delivery of the affected Product by Retailer."

3   (Doc. 18-8 p. 40, emphasis added.);

4        q)      When Plaintiff contacted Saturn of Oakland after the purchase of his vehicle

5   to request help in accessing automated phone systems through OnStar, the sales associate

6   he purchased the vehicle from, Darin Cross, informed him that, coincidentally, a

7   manufacturer's representative was conducting OnStar training for the retailer's sales staff

8   on-site, and that he would ask the representative.  Mr. Cross then phoned back the Plaintiff

9   and informed him that the OnStar trainer has told him that Mr. Cross should read the

10  manual, and that the "Mute" button was to be used to access the automated phone system

11  navigation feature.  Thus, even the manufacturer's own trainer for the OnStar system did

12  not know that the VUE did not have this functionality, and apparently conveyed to retailers

13  the incorrect information that the VUE did, in fact, have this functionality as part of the

14  training process;

15       r)      When Plaintiff took his car in to be "fixed" at the request of the Saturn of

16  Oakland service manager, the service manager called Plaintiff on the afternoon of that day

17  and informed him that it was only after speaking with various individuals at Saturn and

18  OnStar was he able to determine that the VUE did not, in fact, have the automated phone

19  system navigation feature.

20                                      **KNOWLEDGE**

21  13.     For the above stated reasons, Plaintiff is also informed and believes that at all times

22  relevant herein, Saturn knew consumers, such as Plaintiff and members of the putative class,

23  would rely upon the knowledge and representations and/or omissions of Saturn retailers, such as

24  Saturn of Oakland and Saturn's marketing materials, to advise them as to the features of Saturn's

25  products, including the VUE, that Defendant failed to accurately inform such Saturn retailers that

26  the VUE did not, in fact, have the automated phone system navigation feature, and Plaintiff did, in

27  fact, rely upon the knowledge and representations and/or omissions of Saturn of Oakland and

28  Saturn's marketing materials in learning about the features of the VUE.

02149-00001  0117280.01                          -6-

LAW OFFICES
KIRTLAND & PACKARD LLP

## FACTS AND REPRESENTATIONS/OMISSIONS

14.    Prior to 1999, cars that came equipped with the General Motors Corporation's ("GM") OnStar system featured the ability to make telephone calls using a built-in telephone handset which came complete with a numeric pad.  From that numeric pad, once a call was placed, a user could press the keys, just as in any regular telephone, in order to navigate automated phone systems.  From the model year 2000 onwards, cars made by GM's subsidiaries began to be manufactured without such a handset, and, instead, were advertised as having a "hands-free" "voice-activated" calling system.

15.    Defendants, and each of them, advertised the VUE as having, as one of its "Safety and Security" features, the OnStar system with a voice-activated calling ability called "Hands-Free Calling."  Specifically, the hands-free calling capability of OnStar was advertised using the slogan "Keep your hands on the wheel and your eyes on the road with OnStar Hands-Free Calling."  Defendants further stated in their advertising, press releases, and on Saturn's website that "OnStar has the only built-in, hands-free wireless calling system of its kind, providing you with a safer, more reliable connection;" that "OnStar Hands-Free Calling allows drivers to make and receive hands-free, voice-activated calls from their vehicle;" and that "OnStar Personal Calling allows drivers to make and receive hands-free, voice-activated phone calls through a nationwide cellular network."  In one particular advertisement, an actual OnStar user is portrayed saying "I don't believe in cell phones when I'm driving, so this is my salvation."  Thus Defendants, and each of them, advertised the OnStar system, in part, as a *built-in, hands-free cellular telephone*.  In fact, the OnStar system does, in actual fact, use cellular technology and cellular service to provide its hands-free calling functionality.

16.    In a brochure advertising the VUE, and received by Plaintiff from Saturn of Oakland, and which, upon information and belief, was published by Defendant Saturn and contains the statement "(c)2005 Saturn Corporation," the VUE is described as "now featur[ing] OnStar, standard on every VUE, including a one-year subscription to the Safe & Sound Service Plan."  The same brochure prominently displays multiple pictures of the VUE's rear-view mirror, with a button showing a telephone-handset as part of the OnStar system, and multiple pictures of

KIRTLAND & PACKARD LLP
LAW OFFICES

1   the steering-wheel controls, which shows the button used for voice-activated vehicle features.

2   Both of these features are described by the brochure as being "standard" with all VUE vehicles.

3        17.    In a brochure specifically advertising the OnStar system, which, upon information

4   and belief, was distributed by Defendant Saturn to its retailers during the relevant time period, and

5   containing the statement "ONS-BROUPDATE-JUNE06," an entire panel is devoted to "OnStar

6   Hands-Free Calling." The brochure identifies, in a chart, that part of the "Safe & Sound Service

7   Plan" includes the service "Hands-Free Calling [which] [a]llows you to make and receive voice-

8   activated phone calls in your vehicle" and identifies the Saturn VUE as one of cars in a list under

9   the heading "ONSTAR IS AVAILABLE FACTORY-INSTALLED IN THESE 2006/2007

10   MODELS." The brochure further states, in relevant part, "Make and receive calls from your

11   OnStar-equipped vehicle;" "OnStar-equipped vehicles give you access to built-in, voice-activated

12   hands-free calling and an opportunity to try it out at no charge;" "A safe and reliable way to make

13   and receive calls in your vehicle. Call at the touch a single button with no cell phone to hold or

14   dial;" and "New! Ask about our Shared Minutes Plan, and share your cell phone minutes with

15   your vehicle for great savings."

16        18.    An ordinary cellular telephone, including those hands-free kits built-in to other

17   brands of cars, after-market hands-free car kits, and any modern telephone of whatever kind,

18   allows for the transmission of Dual-Tone Multi-Frequency ("DTMF") signaling, commonly

19   known as "Touch-Tones," standardized by ITU-T Recommendation Q.23.

20        19.    Once a call is placed, however, the OnStar system contained in the VUE provides

21   no method for the transmission of Touch-Tones.

22        20.    The lack of ability of the OnStar system to transmit Touch-Tones once a call is

23   placed renders the OnStar system incapable of performing an essential modern function of an

24   ordinary telephone, namely, the ability to navigate automated phone systems. To be clear, not

25   only does the OnStar system in the VUE not provide the ability to navigate automated phone

26   systems "hands-free," it provides *no* ability to navigate automated phone systems *at all*.

27        21.    A reasonable consumer, unless specifically informed of the fact that the OnStar

28   system is incapable of providing all the features of an in-car cellular telephone, would reasonably

LAW OFFICES
KIRTLAND & PACKARD LLP

1   assume that it was capable of the full functionality of a normal telephone, including the ability to

2   navigate automated phone systems.

3         22.     Defendants, and each of them, failed to specifically disclose, in both written and

4   oral communications, that the OnStar system provided in the VUE lacks, as part of its

5   functionality, the ability to dial extension numbers and navigate automated phone systems. This is

6   a standard feature available in ordinary cellular phones, other non-Saturn vehicles with built-in

7   cellular phones or cellular phone kits, after-market hands-free car kits for cellular telephones, and

8   available in other vehicles with the OnStar system.

9         23.     At least one version of the OnStar Owners Guide, provided to consumers in 2006,

10   further provides on page 4:

11                    White-Dot Button – Press this button to end any call or to

12                    place and receive calls with OnStar Personal Calling, a

13                    hands-free, voice-activated phone that is fully integrated into

14                    your vehicle.

15         24.     In describing OnStar Personal Calling, the same version of the OnStar Owners

16   Guide states:

17                    OnStar Personal Calling (OPC) operates with the touch of a

18                    button and a few simple voice commands. . . . Whether you

19                    are placing or receiving a call, *once you press the white-dot*

20                    *button, you don't have to take your hands off the wheel or*

21                    *your eyes off the road.*

22         (P.16, emphasis added).  There is no disclaimer in this section that certain vehicles do not

23   have the ability to navigate automated phone systems using OnStar Personal Calling.

24         25.     Consistent with this messaging, Defendants further specifically represented to

25   Plaintiff, through Saturn of Oakland, that the VUE's OnStar system was fully functional as a

26   cellular telephone replacement and, specifically, that it worked to navigate automated phone

27   systems.  The representation was made on or about September 19, 2006, at Saturn of Oakland, by

28   a sales representative by the name of Darin Cross and was made to Plaintiff Richard A. Weinstein.

LAW OFFICES
KIRTLAND & PACKARD LLP

02149-00001  0117280.01                          -9-

1  Mr. Cross specifically represented to Plaintiff that the VUE's OnStar "Hands-Free Calling"

2  system worked with automated phone systems to allow Plaintiff to navigate those systems "hands-

3  free." Prior to the purchase of Plaintiff's VUE, neither Mr. Cross, nor any other employee of

4  Saturn or Saturn of Oakland advised Plaintiff, in either written or oral materials, that the system

5  installed in the VUE lacked the ability to navigate automated phone systems.

6       26.   Following the purchase of the VUE, Plaintiff contacted Mr. Cross at Saturn of

7  Oakland because he was unable to navigate automated phone systems using the OnStar system on

8  the VUE. Mr. Cross informed Plaintiff that, coincidently, a corporate representative was

9  conducting OnStar training at Saturn of Oakland, and Mr. Cross would ask the representative and

10  get back to Mr. Weinstein. Mr. Cross called Mr. Weinstein back and told Mr. Weinstein that Mr.

11  Cross was told by the representative that Mr. Weinstein should consult the OnStar User Guide

12  which would describe how to navigate automated phone systems, that there was also a CD that

13  Mr. Weinstein could listen to if he had problems, but that generally, Mr. Weinstein needed to use

14  the "mute" button on his car in order to use this feature. He was told to consult the manual for a

15  description of how to do so. Even at this stage, Plaintiff was not informed that the VUE did not,

16  in fact, have the ability to navigate automated phone systems.

17       27.   The VUE was sold to Plaintiff with the "2006 Saturn VUE Owner's Manual"

18  ("Manual"). On page 2-33 of the Manual, OnStar Hands-Free Calling is listed as a feature of the

19  Safe and Sound Plan of the OnStar system. The Manual states "Hands-Free calling is fully

20  integrated into the vehicle" and refers the reader to the OnStar Owner's Guide ("Guide") "to find

21  out more."

22       28.   Nowhere in the Manual, the Guide, or any other information provided to Plaintiff,

23  is there any disclaimer that the OnStar system is incapable of navigating automated phone systems

24  *at all*. Further, nowhere in the Manual, the Guide, or any other information provided to Plaintiff,

25  is there a list of vehicles which specifically do or do not have the ability to access automated

26  phone systems.

27       29.   The VUE was also accompanied by a compact disc manual.  Track 8 of the disc is

28  entitled "Dialing Numbers for Extensions or Voice Mail." Nowhere on or in this compact disc or

LAW OFFICES
KIRTLAND & PACKARD LLP

1    its packaging is there any disclaimer that the OnStar system is incapable of navigating automated

2    phone systems at all, nor is there a list of vehicles which do or do not have the ability to access

3    automated phone systems.

4        30.    Nowhere in the Manual, the Guide, or any other information provided to Plaintiff is

5    there any disclaimer that states that the VUE does not have the ability to navigate automated

6    phone systems *at all*.

7        31.    When Plaintiff still could not navigate automated phone systems with the OnStar

8    system using the "mute" button, he contacted Saturn of Oakland again. The service manager at

9    Saturn of Oakland told him that it was probably a "software problem" and to bring the car in for

10    repair, which Plaintiff did. Later that day, the service manager called Plaintiff and informed him

11    that after he, and his general manager, had spoken to corporate representatives at Saturn and

12    OnStar, they had discovered, for the first time, that the ability to navigate automated phone

13    systems was not available on the VUE.

14        32.    Plaintiff is informed and believes that at all times prior to this service call, Saturn

15    of Oakland (including the aforementioned sales representative and service manager) believed and

16    told Plaintiff that the OnStar system in the VUE was fully functional and had the ability to

17    navigate automated phone systems.

18        33.    Plaintiff is informed and believes that the source of Saturn of Oakland's belief and

19    representations as to the features of the VUE was solely as a result of information obtained or

20    failed to be obtained from Defendant Saturn. Plaintiff's information and belief is based on the

21    facts listed above in Paragraph 10 and incorporated by reference herein and the following

22    additional facts:

23        a)    As part of the franchise agreement, Saturn requires all employees of its

24    retailers to undergo a detailed training program. The agreement specifically provides that:

25            "The training of all Retailer team members is critical ... The Retailer

26            therefore agrees that all team members will participate in both the

27            initial and ongoing training programs identified in the Saturn Retail

28            Training Catalogue of Programs and Services, and any others

LAW OFFICES
KIRTLAND & PACKARD LLP

KIRTLAND & PACKARD LLP
LAW OFFICES

1    approved by the FOT[1], within the time frames specified.

2         (Doc. 18-7,  p. 33)

3         One of the "required training courses" for New Vehicle Sales Managers and Sales

4    Consultants is a course called "OnStar: What's Behind the Buttons." (Doc. 18-5, p. 2).

5         b)    When Plaintiff called Mr. Cross due to his inability to navigate automated

6    voice systems "hands-free," Mr. Cross contacted a corporate representative in order to

7    provide Plaintiff with assistance;

8         c)    When Plaintiff contacted the service manager due to his inability to

9    navigate automated voice systems, the service manager was unable to determine that the

10   VUE did not have this feature until the service manager or another Saturn of Oakland

11   employee contacted the manufacturer;

12        d)    No other source of information other than the manufacturer has been

13   consulted by Saturn of Oakland with regard to its information about detailed features of the

14   VUE, including whether or not it has the ability to navigate automated voice systems

15   "hands-free."

16   34.    The Hands-Free Calling feature is of particular importance to consumers because

17   of increasing national public awareness of the dangers of using wireless phones while driving,

18   unless the driver is using a hands-free device.  For example, on September 15, 2006, Governor

19   Schwarzenegger signed Senate Bill 1613 prohibiting the use of cell phones by drivers unless the

20   driver is using a hands-free device, starting July 1, 2008.  The failure of the OnStar system on the

21   VUE to dial extension numbers and navigate automated phone systems makes it unfit for the

22   purpose for which it was sold, i.e. to permit it to be used as a replacement cellular telephone,

23   because a user encountering an automated phone system could not complete his or her call using

24   the system.  The ability of the VUE to provide a built-in cellular phone replacement with hands-

25   free capabilities was a fact material to consumers' consideration of the VUE for purchase, as

26   evidenced by Defendants' advertising.  The inability of the VUE to navigate automated phone

27

28

_____

[1]"Franchise Operating Team"

1   systems is a fact material to a consumer's consideration of the VUE for purchase.  Defendant

2   Saturn knew the VUE did not have the ability to navigate automated phone systems and failed to

3   disclose that fact to Plaintiff and consumers prior to their purchase of their vehicles.

4         35.      Because of the importance of Hands-Free Calling to promote safety and to comply

5   with the law, as effective July 1, 2008, and because consumers such as Plaintiff would reasonably

6   believe that a built-in cellular telephone replacement would permit them to navigate automated

7   phone systems, and because the VUE was sold with detailed instructions as to how to navigate

8   automated phone systems, and because Saturn retailers, such as Saturn of Oakland, apparently

9   *themselves* believed the VUE had the ability to navigate automated phone systems, and because

10  Saturn knew its retailers would either represent the VUE had this feature or would omit to disclose

11  that the feature was not present in the VUE, and because Saturn knew consumers such as Plaintiff

12  would reasonably rely upon the representations and/or omissions of retailers such as Saturn of

13  Oakland, Saturn had a *duty* to disclose to Plaintiff and other purchasers of the VUE that the VUE

14  *did not* have that important feature.  Defendant Saturn, however, failed to disclose this material

15  fact both to its retailers and to end purchasers.

16        36.      The duty owed by Saturn to Plaintiffs and all others similarly situated, is to

17  accurately represent, through its advertising and retail network, the specific inability of the VUE

18  to navigate automated phone systems.  This duty stems from its responsibility, which it voluntarily

19  assumed, to advertise the vehicle for sale with the OnStar system, to advertise and promote the

20  existence of cellular replacement hands-free voice-activated calling in its vehicles under the

21  slogan "keep your hands on the wheel and your eyes on the road," to insist on providing a

22  comprehensive and mandatory training program for its retailers' employees, which specifically

23  included a course on the OnStar system, to insist on sole rights to create and approve marketing

24  materials for Saturn products, and Saturn's knowledge that its retailers' employees would transmit

25  to Plaintiff and consumers the information regarding the ability or inability of specific vehicles to

26  navigate automated phone systems using the OnStar Hands-Free service.

27        37.      According to Defendant Saturn's representation, the ability to navigate automated

28  phone systems could be included in the VUE for a minimal cost of $60.

LAW OFFICES

KIRTLAND & PACKARD LLP

02149-00001  0117280.01                       -13-

38.    Had Plaintiff known that the OnStar system on the VUE lacked the ability to dial extension numbers and navigate automated phone systems, he would not have purchased the VUE and sustained damages.

## CLASS ACTION ALLEGATIONS

### CLRA CLASS

39.    Plaintiff brings this action pursuant to the class action provision of the California *Consumers Legal Remedies Act* ("CLRA") on behalf of himself and a class of all others similarly situated within the United States of America ("the CLRA Class") described as follows:

> As against Defendant Saturn, every consumer who purchased a
> Saturn VUE, from Saturn or at one its retailers, in the United States
> from the date that the Saturn VUE was first manufactured to the
> present, that contained an OnStar system in which the Hands-Free
> Calling feature lacks the ability to dial extension numbers and
> navigate automated phone systems. Excluded from the CLRA Class
> are Defendants, Defendants' officers, directors and employees,
> attorneys, and any entity in which Defendants have a controlling
> interest. Also excluded are any judge, justice or judicial officer
> presiding over this matter, their judicial staff and the immediate
> families thereof;
>
> Or in the alternative,
>
> If a nationwide class is unavailable under the law, an identical class consisting
> only of those consumers who purchased a VUE in California;
>
> And
>
> A sub-class of consumers of either a Nationwide or California class,
> as against Defendant Saturn of Oakland, which consists of those
> consumers meeting the definition of the primary class, who
> purchased their vehicle at Saturn of Oakland.

LAW OFFICES
KIRTLAND & PACKARD LLP

1     40.   It is impractical to bring all members of the CLRA Class before this Court.

2     41.   The questions of law or fact common to the CLRA Class are substantially similar

3  and predominate over the questions affecting individual members.

4     42.   The claims of Plaintiff are typical of the claims of the CLRA Class.

5     43.   Plaintiff will fairly and adequately protect the interests of the CLRA Class.

6  **UCL/FAL CLASS**

7     44.   Plaintiff also brings this action pursuant to the California *Business and Professions*

8  *Code* §§ 17200 *et seq.* ("UCL") and 17500 *et seq.* ("FAL"), *Code of Civil Procedure* § 382, and

9  the Federal Rules of Civil Procedure, on behalf of himself and a class of all others similarly

10  situated within the United States of America ("the UCL/FAL Class") described as follows:

11          As against Defendant Saturn, every consumer who purchased a

12          Saturn VUE, from Saturn or at one its retailers, in the United States

13          from the date that the Saturn VUE was first manufactured to the

14          present, that contained an OnStar system in which the Hands-Free

15          Calling feature lacks the ability to dial extension numbers and

16          navigate automated phone systems.  Excluded from the UCL/FAL

17          Class are Defendants, Defendants' officers, directors and

18          employees, attorneys, and any entity in which Defendants have a

19          controlling interest.  Also excluded are any judge, justice or judicial

20          officer presiding over this matter, their judicial staff and the

21          immediate families thereof;

22          Or in the alternative,

23          If a nationwide class is unavailable under the law, an identical class consisting

24          only of those consumers who are citizens of California and/or who purchased a

25          VUE in California or from a California entity;

26          And

27          A sub-class of consumers of either a Nationwide or California class,

28          as against Defendant Saturn of Oakland, which consists of those

LAW OFFICES
KIRTLAND & PACKARD LLP

1  consumers meeting the definition of the primary class, who

2  purchased their vehicle at Saturn of Oakland.

3      45.   The UCL/FAL Class is so numerous that individual joinder of all members of the

4  Class is impractical.  While the exact number of class members is unknown to Plaintiff at this time

5  and can only be ascertained through discovery, Plaintiff believes there are at least thousands of

6  members of the proposed class.

7      46.   There is a well defined community of interest among the members of the proposed

8  UCL/FAL Class.  Plaintiff, like other members of the class, purchased the VUE which contained

9  an OnStar system in which the Hands-Free Calling feature lacks the ability to dial extension

10  numbers and navigate automated phone systems.  The factual basis of Defendants' misconduct are

11  common to all members of the class and represent a common practice of wrongful conduct

12  resulting in damages to all members of the class.

13      47.   There are numerous questions of law and fact common to Plaintiff and the

14  members of the UCL/FAL Class and those questions predominate over any questions that affect

15  individual members of the class.  These common questions include (but are not necessarily limited

16  to):

17      a)   Whether all VUEs which contained an OnStar system with a Hands-Free

18          Calling feature lacked the ability to dial extension numbers and navigate automated

19          phone systems.

20      b)   Whether Defendants' conduct violates the CLRA or other laws;

21      c)   Whether Defendants' conduct is "unfair" under Section 17200;

22      d)   Whether Defendants' conduct is "fraudulent" under Section 17200;

23      e)   Whether Defendants' advertising is misleading;

24      f)   Whether Plaintiff and members of the class have sustained damages;

25      g)   The amount of damages sustained by Plaintiff and members of the class;

26      h)   Whether injunctive relief is necessary and/or appropriate; and

27      i)   Whether other remedies are available to Plaintiff and members of the class.

28

LAW OFFICES
KIRTLAND & PACKARD LLP

48.     Plaintiff's claims are typical of the claims of the other members of the UCL/FAL Class. Plaintiff and all other members of the class have suffered injury in fact and lost money or property as a result of the unfair competition and/or false advertising alleged herein. Plaintiff will fairly and adequately represent and protect the interests of the UCL/FAL Class. Plaintiff has retained counsel with substantial experience in prosecuting consumer class actions. Plaintiff and his counsel are committed to vigorously prosecute this action on behalf of the class and have the financial resources necessary to do so. Neither Plaintiff nor his counsel have any interest adverse to those of the class.

49.     A class action is superior to all other methods for the fair and efficient adjudication of this controversy since individual joinder of all members of the class is impractical. Furthermore, as the damages suffered by each individual member of the class may be relatively small, the expense and burden of individual litigation would make it difficult to impossible for individual members of the class to redress the wrongs done to them. The cost to the court system of such individual adjudication would be substantial. Individual litigation would also present the potential for inconsistent or contradictory judgments and would magnify the delay and expense to all parties and the court system in multiple trials of identical factual issues. By contrast, the conduct of this action as a class action presents fewer management difficulties, manages the resources of the parties and the court system and protects the rights of each class member.

## BREACH OF IMPLIED WARRANTY CLASS

50.     Plaintiff also brings this action under a claim for a breach of implied warranty on behalf of himself and a class of all others similarly situated within the United States of America ("the Warranty Class") described as follows:

> As against Defendant Saturn, every consumer who purchased a
> Saturn VUE, from Saturn or at one its retailers, in the United States
> from the date that the Saturn VUE was first manufactured to the
> present, that contained an OnStar system in which the Hands-Free
> Calling feature lacks the ability to dial extension numbers and
> navigate automated phone systems. Excluded from the Warranty

LAW OFFICES
KIRTLAND & PACKARD LLP

02149-00001  0117280.01

-17-

1    Class are Defendants, Defendants' officers, directors and

2    employees, attorneys, and any entity in which Defendants have a

3    controlling interest.  Also excluded are any judge, justice or judicial

4    officer presiding over this matter, their judicial staff and the

5    immediate families thereof;

6    Or in the alternative,

7    If a nationwide class is unavailable under the law, an identical class consisting

8    only of those consumers who are citizens of California and/or purchased a VUE in

9    California or from a California entity;

10   And

11   A sub-class of consumers of either a Nationwide or California class,

12   as against Defendant Saturn of Oakland, which consists of those

13   consumers meeting the definition of the primary class, who

14   purchased their vehicle at Saturn of Oakland.

15   51.   The Warranty Class is appropriate for certification for all the same reasons noted in

16   paragraphs 45 through 49 above as well as the existence of other common questions of law and

17   fact specifically related to the Warranty Class.  These common questions include (but are not

18   necessarily limited to):

19   a)   Whether all VUEs which contained an OnStar system which lacked the

20        ability to dial extension numbers and navigate automated phone systems.

21   b)   Whether the OnStar system constitutes a part of the VUE for which an

22        implied warranty was applicable;

23   c)   Whether one of the ordinary purposes for which the OnStar system was sold

24        was the ability to use it as a telephone;

25   d)   Whether one of the ordinary purposes of a telephone is allowing the user to

26        navigate automated phone systems;

27   e)   Whether the OnStar system failed to perform this ordinary purpose;

28

1        f)     Whether the OnStar system was knowingly sold by Defendants for the

2            particular purpose of providing "hands-free" "voice-activated" calling;

3        g)    Whether the implied warranty for a particular purpose was breached by

4            Defendants by failing to include in the OnStar system in the VUE the

5            ability to navigate automated phone systems "hands-free";

6        h)    Whether remedies for breach of warranty are available to Plaintiff and

7            members of the class; and

8        i)    The nature of the remedies available to Plaintiff and members of the class.

9                **FIRST CAUSE OF ACTION**

10               **AGAINST ALL DEFENDANTS**

11   **VIOLATION OF CALIFORNIA'S *CONSUMERS LEGAL REMEDIES ACT***

12     52.    Plaintiff hereby incorporates, as if set forth in full, each and every preceding and

13 subsequent allegation in this complaint.

14     53.    The Defendants' acts and omissions violate the following portions of the California

15 *Consumers Legal Remedies Act*:

16        a)    *Civil Code* § 1770(a)(5) "Representing that goods or services have ...

17            characteristics ... uses, benefits ... which they do not have ..."

18        b)    *Civil Code* § 1770(a)(9) "Advertising goods or services with intent not to

19            sell them as advertised."

20     54.    Plaintiff and the members of the CLRA Class risk irreparable injury as a result of

21 the Defendants' acts and omission in violation of the CLRA and these violations present a

22 continuing risk to the class and members of the public.

23     55.    Plaintiff filed, concurrently with the original complaint, the venue affidavit

24 required by *Civil Code* § 1780(c).  In addition, on November 24, 2006, Plaintiff provided the

25 notice to Defendants required under *Civil Code* § 1782(a) via letter by certified mail.  No

26 appropriate correction, repair, replacement, or other remedy has been given, or has agreed to be

27 given, to Plaintiff.

28

LAW OFFICES
KIRTLAND & PACKARD LLP

56.     Pursuant to *Civil Code* § 1780(a)(2) Plaintiff seeks an order enjoining Defendants from advertising and selling the VUE in the United States as equipped with OnStar without either (a) ensuring that the Hands-Free Calling feature, including the ability to dial extension numbers and navigate automated phone systems, is fully functional on all VUE automobiles sold in the United States, or (b) affirmatively warning each purchaser, prior to purchase, that the Hands-Free Calling feature is limited as a cellular telephone replacement in that it lacks the ability to dial extension numbers and navigate automated phone systems.  Unless Defendants are enjoined from violations of the CLRA alleged herein, the members of the class and the general public, who lack an adequate remedy at law to deter Defendants' wrongful conduct, will be irreparably harmed.

57.     Plaintiff has suffered economic damage as a result of Defendant's violations of *Civil Code* § 1770.  Defendant's conduct is sufficiently blameworthy to merit the imposition of punitive damages pursuant to *Civil Code* § 1780(a)(4) to punish, deter, and make an example of Defendant.  In addition, Plaintiff and the class are entitled to an award of attorneys' fees and costs against Defendant pursuant to the provisions of *Civil Code* § 1780(d).

## SECOND CAUSE OF ACTION

## AGAINST ALL DEFENDANTS

## VIOLATION OF THE UNFAIR COMPETITION LAWS

58.     Plaintiff hereby incorporates, as if set forth in full, each and every preceding and subsequent allegation in this complaint.

59.     California *Business and Professions Code* § 17200 *et seq.*, also known as the California Unfair Competition Law ("UCL") prohibits acts of "unfair competition," including any unlawful, unfair, fraudulent or deceptive business act or practice as well as "unfair, deceptive, untrue or misleading advertising."  Defendants violated Section 17200 *et seq.* by representing through their agents that the OnStar system had the ability to navigate automated phone systems and/or by failing in their duty to disclose that the OnStar system in the VUE is lacking that feature.

60.     As a direct and proximate result of Defendants' illegal business practices, Plaintiff and the members of the UCL/FAL Class have suffered injury and have lost money or property.

02149-00001  0117280.01                          -20-

KIRTLAND & PACKARD LLP
LAW OFFICES

61.     The illegal business practices described herein present a continuing threat to Plaintiffs, the class and members of the public in that Defendants persist and continue to engage in these practices, and will not cease doing so unless and until forced to do so by this Court. Defendants' conduct will continue to cause irreparable injury to Plaintiff and the class unless enjoined or restrained.

## THIRD CAUSE OF ACTION

## AGAINST ALL DEFENDANTS

## VIOLATION OF THE FALSE ADVERTISING LAWS

62.     Plaintiff hereby incorporates, as if set forth in full, each and every preceding and subsequent allegation in this complaint.

63.     *Business and Professions Code* § 17500 provides that "[i]t is unlawful for any ... corporation ... with intent ... to dispose of ... personal property ... to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated ... from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement ... which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading...."

64.     Defendants' representations that the OnStar system had the ability navigate automated phone systems and/or their failure to disclose that the OnStar system in the VUE is lacking that feature, when Defendants had a duty to so disclose as alleged above, is misleading.

65.     As a direct and proximate result of Defendants' misleading advertising, Plaintiffs and the members of the UCL/FAL Class have suffered injury in fact and have lost money or property.

66.     The misleading advertising described herein presents a continuing threat to Plaintiff and the class in that Defendants persist and continue to engage in these practices, and will not cease doing so unless and until forced to do so by this Court. Defendants' conduct will continue to cause irreparable injury to Plaintiff and the class unless enjoined or restrained.

## FOURTH CAUSE OF ACTION

## AGAINST ALL DEFENDANTS

## BREACH OF IMPLIED WARRANTY

67.    Plaintiff hereby incorporates, as if set forth in full, each and every preceding and subsequent allegation in this complaint.

68.    Defendants impliedly warrant that the OnStar system, which is a part of the VUE, is fit for the ordinary purpose for which the product is sold.

69.    An ordinary purpose for which the OnStar system is sold is to provide the purchaser with a telephone built-in to the car.

70.    An ordinary cellular telephone, as does any modern telephone, allows for the transmission of DTMF signaling, commonly known as "Touch-Tones," standardized by ITU-T Recommendation Q.23.

71.    Once a call is placed, the OnStar system contained in the VUE provides no method for the transmission of Touch-Tones.

72.    The lack of ability of the OnStar system in the VUE to transmit Touch-Tones once a call is placed renders the OnStar system incapable of performing an essential modern function of an ordinary telephone, namely, the ability to navigate automated phone systems, which have become ubiquitous in this day and age.

73.    The OnStar system in the VUE is not fit for one of the ordinary purposes for which it is sold, namely, that of a telephone, in that the OnStar system lacks, as part of its functionality, the ability to dial extension numbers and navigate automated phone systems, which is available in ordinary telephones, cellular phones, other non-Saturn vehicles with built-in cellular phones or built-in hands-free kits, after-market car kits, and other vehicles with the OnStar system.

74.    Further, Defendants knew that consumers who purchased the VUE relied upon Defendants' expertise and skill, judgment and knowledge in furnishing automobiles equipped with "hands-free" "voice-activated" calling, so that the driver can avoid the danger of using a wireless phone that requires the use of his or her hands while driving, and comply with new laws such as California's Senate Bill 1613, which is effective July 1, 2008.

LAW OFFICES
KIRTLAND & PACKARD LLP

75.     The OnStar system contained in the VUE is not fit for that particular purpose, namely, the ability to navigate automated phone systems "hands-free," in that its OnStar system lacks, as part of its "hands-free" "voice-activated" functionality, the ability to dial extension numbers and navigate automated phone systems, which is available in other vehicles with the OnStar system.

76.     Plaintiff, and every member of the classes alleged herein, have been similarly damaged as a result of this breach of warranty.

### PRAYER FOR RELIEF

WHEREFORE, on behalf of himself and all others similarly situated, Plaintiff prays for the following relief:

1.     An order certifying this action as a Plaintiff class action, as set forth herein above;

2.     For compensatory damages;

3.     For restitution;

4.     For preliminary and permanent injunctive relief prohibiting Defendants from continuing the wrongful practices alleged in the complaint;

5.     For preliminary and permanent injunctive relief requiring Plaintiffs to repair and/or replace the OnStar system in order to enable it to navigate automated phone systems;

6.     For costs and attorneys' fees as permitted by law;

7.     For punitive damages; and

8.     For such other and further relief as the Court may deem proper.

DATED: May 25, 2007                              KIRTLAND & PACKARD LLP


                                                 By:     /s/
                                                 BEHRAM V. PAREKH, Of Counsel
                                                 Counsel for Plaintiff RICHARD A.
                                                 WEINSTEIN,  for himself and all others
                                                 similarly situated

LAW OFFICES
KIRTLAND & PACKARD LLP

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury for all causes of actions so triable.

DATED: May 25, 2007                    KIRTLAND & PACKARD LLP


                                       By:   _____/s/_____
                                       BEHRAM V. PAREKH, Of Counsel
                                       Counsel for Plaintiff RICHARD A.
                                       WEINSTEIN,  for himself and all others
                                       similarly situated

LAW OFFICES

KIRTLAND & PACKARD LLP

1  DAVID M. LISI (SBN 154926)
   Email: lisid@howrey.com
2  HOWREY LLP
   1950 University Avenue, 4th Floor
3  East Palo Alto, CA 94303
   Telephone: (650) 798-3530
4  Facsimile:  (650) 798-3600

5  JOHN M. TALADAY (pro hac vice)
   Email: taladayj@howrey.com
6  Richard A. Ripley (pro hac vice)
   Email: ripleyr@howrey.com
7  HOWREY LLP
   1299 Pennsylvania Ave NW
8  Washington, DC 20004
   Telephone: (202) 383-6564
9  Facsimile:  (202) 383-6610

10 JOSEPH A. OSTOYICH (pro hac vice)
   Email: ostoyichj@howrey.com
11 HOWREY LLP
   1299 Pennsylvania Ave NW
12 Washington, DC 20004
   Telephone: (202) 383-7241
13 Facsimile:  (202) 383-6610

14 ETHAN E. LITWIN (pro hac vice)
   Email: litwine@howrey.com
15 HOWREY LLP
   Citigroup Center
16 153 E. 53rd Street, 54th Floor
   Telephone:  (212) 896-6500
17 Facsimile:  (212) 896-6501

18
   Attorneys for Defendant Philips Electronics North America
19 Corporation

20              UNITED STATES DISTRICT COURT

21            NORTHERN DISTRICT OF CALIFORNIA

22               SAN FRANCISCO DIVISION

23 IN RE:  Cathode Ray Tube (CRT) Antitrust     )   Case No. 3:07-CV-5944-SC
   Litigation                                   )
24                                              )
                                                )   **DECLARATION/ATTESTATION OF**
25 _____          )   **DAVID M. LISI RE SIGNATURE OF**
                                                )   **RICHARD A. RIPLEY**
26 This Relates to All Actions.                 )
                                                )
27                                              )
   _____          )
28

LISI DECL/ATTESTATION RE RIPLEY SIGNATURE
CASE NO. 3:07-CV-5944-SC
DM_US:22863246_1

I, David M. Lisi, hereby declare:

Pursuant to General Order No. 45, § X(b), I attest under penalty of perjury that concurrence in the filing of the Letter Brief from Richard A. Ripley to The Honorable Charles A. Legge dated October 15, 2009 has been obtained from its signatory.

Dated:  October 15, 2009

/s/ David M. Lisi
David M. Lisi

LISI DECL/ATTESTATION RE RIPLEY SIGNATURE
CASE NO. 3:07-CV-5944-SC