MARIO N. ALIOTO, ESQ. (56433)
LAUREN C. RUSSELL, ESQ. (241151)
TRUMP, ALIOTO, TRUMP & PRESCOTT, LLP
2280 Union Street
San Francisco, CA  94123
Telephone:  (415) 563-7200
Facsimile: (415) 346-0679
E-mail: malioto@tatp.com
laurenrussell@tatp.com

*Interim Lead Counsel
for the Indirect Purchaser Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. CV-07-5944 SC |
| | MDL No. 1917 |
| | **INDIRECT PURCHASER PLAINTIFFS' RESPONSE TO THE HITACHI DEFENDANTS' OBJECTIONS TO THE REPORT, RECOMMENDATIONS AND TENTATIVE RULINGS OF THE SPECIAL MASTER** |
| **This document relates to:** | |
| **ALL INDIRECT PURCHASER ACTIONS** | The Honorable Samuel Conti |
| | Special Master: Hon. Charles A. Legge (Ret.) |

**I.      The Special Master Correctly Ruled That The IP CAC Plausibly Alleges The Hitachi Defendants' Participation In The CRT Product Conspiracy**

Every court to address what a plaintiff must plead to state an antitrust claim against individual defendants has held that elaborate factual pleading as to each defendant is *not* required.[1]  Yet, the Hitachi Defendants, one of whom has pled guilty to antitrust violations in the parallel *TFT-LCD* case (IP CAC ¶ 220), assert repeatedly in their Objection that Plaintiffs must plead "the who, what, when and where" against *each* defendant.[2]  The Objection ignores and mischaracterizes the relevant law, the IP CAC and the Special Master's Report.  It should therefore be rejected by this Court.

Hitachi's Objection relies solely on a single sound-bite from *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 565 n.10 (2007) ("a specific time, place or person involved in the alleged conspiracies") and *Kendall v. Visa, Inc.,* 518 F.3d 1042, 1048 (9th Cir. 2008) ("who, did what, to whom (or with whom), where, and when").[3]  But as Plaintiffs have already shown, neither *Twombly* nor *Kendall* addresses the question of what a plaintiff must plead against each defendant.[4]  In those cases, there were *no facts* alleged against *any* of the defendants.[5]  In short, Hitachi's reliance on *Twombly* and *Kendall* leaves their Objection wanting because it fails to address any of the relevant case law.  *See supra* n. 1.

---

[1] *See e.g., In Flash Memory Antitrust Litig.,* 2009 U.S. Dist. LEXIS 38941, *8 n.7 (N.D. Cal. Mar. 31, 2009); *In re Static Random Access Memory (SRAM) Antitrust Litig.,* 580 F. Supp. 2d 896, 904 (N.D. Cal. 2008) ("*SRAM I*"); *In re TFT-LCD Antitrust Litig.,* 559 F. Supp. 2d 1179, 1184 (N.D. Cal. 2009) (*TFT-LCD II*"). *See also* Report at 11-12; Indirect Purchaser Plaintiffs' MPA In Opp. to Defendants' Motions to Dismiss, D.N. 536, ("IP. Opp.") at 27-45 (citing cases).

[2] Hitachi's Objections repeat the arguments from their original motion to dismiss.  *See* Hitachi Motion, D.N. 466., and Hitachi Reply, D.N. 549.  Plaintiffs have thus responded to them in full in the IP Opp.

[3] *See* Objection at 2:5-6; 2:11-12; 3:6-8; 3:18-19; 3:25-27; 4:2-6, citing to the same sound-bites from *Twombly* and *Kendall*.

[4] *See* IP Opp. 22-23 (discussing and distinguishing *Twombly* and *Kendall*); *see also* Report at 11 ("The requirement of separate pleading against each defendant in an alleged antitrust conspiracy does not find its genesis in *Twombly*.  *Twombly* does not define such a requirement, but addresses the sufficiency of conspiracy allegations generally.")  Indeed, the Special Master does not even cite to *Kendall*.  The same is true of the courts in *Flash Memory, SRAM I,* and *TFT-LCD II.*

[5] *Twombly,* 550 U.S. at 561-62 (finding that the complaint failed to "set forth a single fact in a context that suggested an agreement"); *Kendall*, 518 F.3d at 1048 (finding there were "no facts alleged to support" the complaint's conspiracy allegations).

The Hitachi Defendants' Objection also fails because, unlike the plaintiffs in *Twombly* and *Kendall,* Plaintiffs here do plead specific facts as to each Hitachi Defendant.[6]  A review of these allegations reveals that they are not "vague" or "conclusory," as Hitachi claims.  Moreover, the Hitachi Defendants would have this Court consider each of these allegations in isolation.  This is not the law.  "The character and effect of a [Sherman Act] conspiracy are not to be judged by dismembering it and viewing its separate parts, but only by looking at is as a whole."[7]  The Hitachi Defendants' attacks on Plaintiffs' agency allegations are similarly unavailing because they also ask the Court to consider Plaintiffs' allegations in isolation.[8]  Viewing the IP CAC as a whole, it plausibly alleges that each of the Hitachi Defendants participated in the conspiracy.[9]

Finally, the Hitachi Defendants claim that many of the facts Plaintiffs allege are inconsistent with their participation in the conspiracy.  This is entirely meritless.  Plaintiffs do not, as the Hitachi Defendants claim, allege that the allocation of market share was a "key component" of the conspiracy.  As described above, the Hitachi Defendants' participation in other aspects of the conspiracy is fulsomely alleged.[10]

## II. The Hitachi Defendants' Objections On Statute of Limitations Grounds Are Meritless

The Hitachi Defendants' contention that the IP CAC must allege sufficiently specific acts of fraudulent concealment as to each defendant has no merit.  Such a requirement "would be contrary to a general principle of conspiracy law that once a party becomes a member of a conspiracy he is bound by all of the acts of the other conspirators."  Report at 21.  Judge Illston

---

[6] *See* IP CAC ¶¶ 2, 124, 128(i), 141, 146, 148(a), 159-160, 164, 165, 179, 180, 188 and 220; *see also* Report at 13-14, citing to defendant-specific allegations in the IP CAC.

[7] *Continental Ore Co. v. Union Carbide & Carbon Corp.,* 370 U.S. 690, 698-99 (1962).  *Accord,* Report at 13 ("The context is the entire complaint.") (emphasis in original); *see also* IP Opp. at 28 (citing cases).

[8] *See further* IP Opp. at 45-53; Report at 13.

[9] *See further* IP Opp. at 32-39; Report at 14 ("[E]ach of the moving defendants has more than adequate notice of what that defendant is charged with") (emphasis in original).

[10] *See further* IP Opp. at 53-60 (fully addressing Hitachi's arguments that certain facts alleged in the IP CAC are contradictory or irrelevant).

found very similar allegations sufficient as a matter of law in *TFT-LCD I,* 586 F. Supp. 2d at 1119, 1132.

*Barker v. Am. Mobil Power Corp.,* 64 F.3d 1397 (9th Cir. 1995), is distinguishable. First, *Barker* was a summary judgment case. Second, the *Barker* plaintiffs sought to extend the fraudulent concealment doctrine to defendants who had not themselves committed any acts of concealment, unlike here.[11] Also, the *Barker* defendants were independent of one another; *Barker* has been distinguished on that basis. *See Low v. SD Vendome,* 2003 WL 25678880 at * 7 (C.D. Cal Jan. 7, 2003) (the *Barker* defendants "all were individuals with independent identities and responsibilities, and none was alleged to have been acting on behalf of any of the others"). Here, Plaintiffs allege an inter-connection among defendants.

The Hitachi Defendants' objection that they withdrew from the industry is likewise improper. First, withdrawal does not protect a defendant in cases of fraudulent concealment.[12] Second, withdrawal requires affirmative steps to disavow the conspiracy.[13] Finally, withdrawal raises questions of fact: Whether Hitachi Defendants abandoned the conspiracy upon withdrawal from the industry, and whether Hitachi, Ltd. continued to reap benefits following the spin-off of its CRT business to Hitachi Displays, Ltd. The Report properly concludes that these factual questions are inappropriate for resolution on a motion to dismiss. *See* Report at 26.

### III. Conclusion

For all the foregoing reasons, Plaintiffs respectfully request that the Court adopt the Special Master's tentative ruling and deny the Hitachi Defendants' motion to dismiss.

---

[11] *See* IP CAC ¶ 179 ("Between at least 1996 and 2001, Defendant Hitachi, through Hitachi, Ltd., Hitachi Displays, Hitachi Shenzhen, and Hitachi Asia, participated in several Glass Meetings"); *id.* ¶ 156(l) ("The agreements reached at the Glass Meetings included: agreements to keep their meetings secret"). *See also id* ¶¶ 164-165, 290 (alleging numerous affirmative acts of concealment); Report at 23-24.

[12] *See, e.g., In re Rubber Chemicals,* 504 F. Supp. 2d 777, 790 (N.D. Cal. 2007) (even if the defendant withdrew, a question not reached at the motion to dismiss stage, the plaintiffs' fraudulent concealment allegations would toll the statute of limitations); *see also* Report at 25.

[13] *Morton's Market, Inc. v. Gustafson's Dairy,* 198 F.3d 823, 838 (11th Cir. 1999) (emphasis in original). *See further* IP Opp. at 86-90.

3

INDIRECT PURCHASER PLAINTIFFS' RESPONSE TO THE HITACHI DEFENDANTS' OBJECTIONS TO THE REPORT, RECOMMENDATION AND TENTATIVE RULINGS OF THE SPECIAL MASTER

1  Dated: February 26, 2010            Respectfully submitted,

2                                      **TRUMP, ALIOTO, TRUMP & PRESCOTT, LLP**

3                                      By:    /s/ Mario N. Alioto
                                               Mario N. Alioto (56433)
4                                              Lauren C. Russell (241151)
                                               2280 Union Street
5                                              San Francisco, California 94123
                                               Telephone: (415) 563-7200
6                                              Facsimile: (415) 346-0679
                                               E-mail: malioto@tatp.com
7                                              laurenrussell@tatp.com

8
                                        *Interim Lead Counsel*
9                                       *for the Indirect Purchaser Plaintiffs*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4
**INDIRECT PURCHASER PLAINTIFFS' RESPONSE TO THE HITACHI DEFENDANTS' OBJECTIONS TO THE REPORT, RECOMMENDATION AND TENTATIVE RULINGS OF THE SPECIAL MASTER**