MARIO N. ALIOTO, ESQ. (56433)
LAUREN C. RUSSELL, ESQ. (241151)
TRUMP, ALIOTO, TRUMP & PRESCOTT, LLP
2280 Union Street
San Francisco, CA  94123
Telephone:  (415) 563-7200
Facsimile: (415) 346-0679
E-mail: malioto@tatp.com
laurenrussell@tatp.com

*Interim Lead Counsel*
*for the Indirect Purchaser Plaintiffs*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. CV-07-5944 SC |
| | MDL No. 1917 |
| | **INDIRECT PURCHASER PLAINTIFFS' RESPONSE TO THE LGE DEFENDANTS' OBJECTIONS TO THE REPORT, RECOMMENDATIONS AND TENTATIVE RULINGS OF THE SPECIAL MASTER** |
| **This document relates to:** | |
| **ALL INDIRECT PURCHASER ACTIONS** | The Honorable Samuel Conti |
| | Special Master: Hon. Charles A. Legge (Ret.) |

i

### I. The LGE Defendants Misconstrue The Applicable Pleading Standards For Fraudulent Concealment

Defendants wrongly contend that the IP CAC must allege specific acts of fraudulent concealment as to each LGE defendant.[1]  As the Report observes, such a requirement "would be contrary to a general principle of conspiracy law that once a party becomes a member of a conspiracy he is bound by all of the acts of the other conspirators."  Report at 21.  Judge Illston found allegations similar to those of the IP CAC sufficient as a matter of law in *In re TFT-LCD (Flat Panel) Antitrust Litig.,* 586 F. Supp. 2d at 1119, 1132 (N.D. Cal. 2008) ("*TFT-LCD I*").[2]

Defendants' cited authorities are unavailing.  In *Barker v. Am. Mobil Power Corp.,* 64 F.3d 1397 (9th Cir. 1995), the plaintiffs alleged fraudulent concealment against defendants who themselves had not committed acts of concealment.  *Id.* at 1402.  That is not the case here.[3]  Also, the *Barker* defendants were independent of one another; *Barker* has been distinguished on that basis.  *See Low v. SD Vendome,* 2003 WL 25678880 at * 7 (C.D. Cal Jan. 7, 2003) (the *Barker* defendants "all were individuals with independent identities and responsibilities, and none was alleged to have been acting on behalf of any of the others").  In *Rutledge v. Boston Woven Hose and Rubber Co.,* 756 F.2d 248 (9th Cir. 1978), the plaintiff's complaint, unlike here, contained only one, bare-boned averment of fraudulent concealment.  *Id.* at 250.  *Conmar Corp. v. Mitsui & Co., Inc.,* 858 F.2d 499, 502 (9th Cir. 1988) states that a plaintiff must plead facts showing that the defendant affirmatively misled it.  Plaintiffs have done exactly that.[4]

---

[1] LG Electronics, Inc., LG Electronics USA, Inc., LG Electronics Taiwan Taipei Co., Ltd.

[2] *See also* Indirect Purchaser Plaintiffs' MPA In Opp. To Defendants' Motions To Dismiss, D.N. 536 ("IP Opp.") at 78-81 (comparing allegations in this case with those found sufficient in *TFT-LCD I*).

[3] Plaintiffs allege that Defendants both engaged in the conspiracy and sought to conceal it.  *See* IP CAC ¶ 168 ("Between at least 1995 and 2001, Defendant LG, through LG Electronics, Inc. and LGETT, participated in at least 100 Glass Meetings at all levels.  After 2001, LG participated in the CRT Product conspiracy through its joint venture" with LP Displays); *id.* ¶ 172 ("Certain [LP Displays] high-level executives had previously attended meetings on behalf of defendants LG and Philips"; ¶ 156(l) ("The agreements reached at the Glass Meetings included: agreements to keep their meetings secret").  The IPCAC also contains numerous examples of specific acts of affirmative concealment taken at these Glass Meetings by the defendants.  *See id. ¶* 290 & Report at 23-24.

[4] *See* Report at 23-24.  Plaintiffs allege that Defendants agreed: "not to discuss publicly, or otherwise reveal, the nature and substance" of their dealings in furtherance of the conspiracy, and

**II.     The LGE Defendants Misconstrue The Applicable Standards For Pleading Agency**

Defendants also argue that the Report ignores principles of corporate separateness and improperly permits conclusory allegations. Both arguments are meritless.

Plaintiffs' agency allegations are well-pled. On a motion to dismiss, a plaintiff is not required to plead agency specifically. *See Weinstein v. Saturn,* 303 Fed. Appx. 424, 426 (9th Cir. 2008), cited in the Report (allegation that "Saturn exercised 'substantial control'" deemed sufficient, irrespective of whether Rule 8 or Rule 9(b) applied); *see also, e.g., Dion LLC v. Infotek Wireless, Inc.*, No. C 07-1431 SBA, 2007 WL 3231738, at *4 (N.D. Cal. Oct. 30, 2007) (plaintiff need only place the defendant on notice that its claim is based on an agency theory).[5]

In *TFT- LCD II,* Judge Illston approved of agency allegations similar—and in some instances nearly identical—to the agency allegations made here. *See TFT- LCD II,* 599 F. Supp. 2d 1179, 1185 (N.D. Cal. 2009) (the complaints, "taken as a whole, [] sufficiently allege each defendant's participation in that conspiracy, as well as present a factual basis for the allegations of agency.")[6] As in that case, Plaintiffs here allege a multinational price-fixing conspiracy organized at the highest levels and carried out at all levels.[7] To effectuate their scheme, Defendants relied on numerous different personnel and entities within their corporate structures.

---

"to expel those who failed to do so"; "to limit the number of representatives from each Defendant attending their meetings so as to avoid detection"; "to refrain from listing the individual representatives of the Defendants in attendance at meeting in any meeting report"; "to refrain from taking meeting minutes or taking any kind of written notes during the meetings;" to give "false and pretextual reasons for CRT Product price increases"; agreed "on what to tell customers about price changes"; agreed "upon the content of public statements regarding capacity and supply"; and agreed "to eliminate references in expense reports that might reveal the existence of their unlawful meetings." IP CAC ¶ 290.

[5] *See also Hernandez v. Hilltop Financial Mortgage, Inc*., No. C 06-7401 SI, 2007 WL 3101250, at *8 (N.D. Cal. Oct. 22, 2007) ("Although the plaintiffs do not allege an agency relationship between [the assignee] and the other defendants in their complaint, it is not necessary for a pleading to allege an agency relationship in order to survive a Rule 12(b)(6) motion."); *Gilbert v. Concentra Health Servs., Inc.,* No. 03:07-CV-00264-LRH-VPC, 2008 WL 318356, at *2 (D. Nev. Jan. 31, 2008) ("Because the specific facts will be revealed through discovery, it is not necessary for Plaintiff's amended Complaint to set forth detailed allegations of agency.").

[6] *See also* IP Opp. at 46-48 (comparing the agency allegations in this case with those found sufficient in *TFT-LCD II*).

[7] *See* IP CAC ¶¶ 121-139; 140-165; 166-187; *see also,* IP Opp. at 45-53.

1    Defendants' cited authorities are distinguishable; they address boilerplate agency
2    allegations that do not rely on factual allegations as Plaintiffs' allegations do here.[8] The fact that
3    LPD was a joint venture rather than a subsidiary is of no import.  LPD was allegedly created as a
4    50/50 joint venture between LGE and *another defendant*.  IP CAC ¶ 61.  In fact, Plaintiffs
5    plausibly allege that the joint venture acted as an agent in furtherance of the conspiracy instigated
6    by its two joint venturers.[9]

## III.   Conclusion

For the foregoing reasons, Indirect Plaintiffs respectfully request that the Court deny the LG Entities' Objections in their entirety, and adopt the recommendations of the Special Master.

//

//

//

---

[8] *Biggins v. Wells Fargo,* 2009 WL 2246199, at *11 (N.D. Cal. July 27, 2009) (general allegations, "without more" that were 'insufficient to establish that any named Plaintiff suffered an injury that is traceable' to the defendant"); *Canam Steel v. Mayo,* 2009 U.S. Dist. LEXIS 44059, at *3 (E.D. Cal. May 26, 2009) (plaintiff had made only one, general and conclusory allegation of agency and alleged "no facts indicating that [defendant] was directly responsible for any wrongdoing or that [it] was acting as agent or alter ego of another defendant against whom allegations were properly made)" *In re Cal. Title Ins. Antitrust Litig.,* 2009 WL 1458025, at *8 (N.D. Cal. May 21, 2009) (unlike in *TFT-LCD II,* the plaintiffs did not "attempt to allege any facts to show that the parent corporations knew what their subsidiaries were doing."); *Brennan v. Concord EFS, Inc.,* 369 F. Supp. 2d 1127, 1136 (N.D. Cal. 2005) (alter ego case; allegations were "simply legal conclusions without supporting facts").

[9] *See* IP CAC ¶¶ 125, 125, 127, 128, 168 and 172 (alleging that the same high level executives from LPD who attended the Glass Meetings had previously attended meetings on behalf of LG and Philips).  *United States v. Bestfoods,* 524 U.S. 51, 64-65 (1998), cited by Defendants, notes that a parent observing corporate formalities still may be liable for the wrongs committed by its agents where it is a direct participant in the wrong complained of.  *Sherman v. British Leyland Motors, Ltd.,* 601 F.2d 429, 441 (9th Cir. 1979), decided on summary judgment, turned on the evidence, not an issue of law ("nor insofar as the record discloses" did defendant "have anything to do . . . with any alleged conspiracy"; for this reason, the parent-subsidiary relationship did not justify liability).  Here, Plaintiffs allege that the LGE Defendants participated in the conspiracy between 1995 and 2001, and thereafter through its joint venture.

3

**INDIRECT PURCHASER PLAINTIFFS' RESPONSE TO THE LGE DEFENDANTS' OBJECTIONS TO THE REPORT, RECOMMENDATIONS AND TENTATIVE RULINGS OF THE SPECIAL MASTER**

1 | Dated: February 26, 2010
2
Respectfully submitted,

**TRUMP, ALIOTO, TRUMP & PRESCOTT, LLP**

By:  /s/ Mario N. Alioto
    Mario N. Alioto (56433)
    Lauren C. Russell (241151)
    2280 Union Street
    San Francisco, California 94123
    Telephone: (415) 563-7200
    Facsimile: (415) 346-0679
    E-mail: malioto@tatp.com
    laurenrussell@tatp.com

*Interim Lead Counsel
for the Indirect Purchaser Plaintiffs*