GUIDO SAVERI (22349)
  guido@saveri.com
R. ALEXANDER SAVERI (173102)
  rick@saveri.com
GEOFFREY C. RUSHING (126910)
  grushing@saveri.com
CADIO ZIRPOLI (179108)
  cadio@saveri.com
SAVERI & SAVERI, INC.
706 Sansome Street
San Francisco, CA  94111
Telephone:  (415) 217-6810
Facsimile:   (415) 217-6813

*Interim Lead Counsel for the Direct Purchaser Plaintiffs*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Case No. 3:07-CV-5944 SC<br><br>MDL No. 1917<br><br>**CLASS ACTION** |
| This Document Relates to:<br><br>   All Direct Purchaser Actions | **DIRECT PURCHASER PLAINTIFFS' RESPONSE TO THE HITACHI DEFENDANTS' OBJECTIONS TO THE SPECIAL MASTER'S REPORT AND RECOMENDATIONS**<br><br>Judge: Honorable Samuel P. Conti<br>Courtroom No. 1, 17th Floor |

The Direct Purchaser Plaintiffs ("DPPs") respectfully submit this Response to Hitachi's[1] Objections to the Special Master's February 5, 2010 Report (Dkt. No. 612) ("Objections"). For the reasons set forth below, all of Hitachi's objections are baseless, and the Special Master's February 5, 2010 Report (Dkt. No. 597) ("Report") should be adopted in its entirety, including as to Hitachi.

First, Hitachi's assertion that Plaintiffs fail to satisfy the pleading standards of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 564 (2007) ("*Twombly*") because the Consolidated Amended Complaint (Dkt. No. 436) ("CAC") improperly treats all the Hitachi defendants as a single collective entity is wrong as a matter of law. As explained in the DPPs' response to Defendants' joint objections, to survive a motion to dismiss, the CAC need only contain allegations, which *plausibly suggest* that each of the Hitachi entities participated in the conspiracy. Thus, the Special Master correctly held that there is no requirement that Plaintiffs plead detailed facts regarding the specific role of each entity within the Hitachi corporate family.[2]

In any case, Plaintiffs have pleaded that each Hitachi entity acted as an agent for the other entities within the Hitachi corporate family. CAC ¶¶ 30-36, 154. As explained in the DPPs' response to the joint objections, the law in this Circuit is clear that allegations of agency are to be liberally construed and accepted as true at the pleading stage. *See, e.g., Weinstein v. Saturn*

---

[1] Hitachi, Ltd., Hitachi Displays, Ltd. ("Hitachi Displays"), Hitachi America, Ltd. ("Hitachi America"), Hitachi Asia, Ltd. ("Hitachi Asia"), Hitachi Electronic Devices (USA) ("HEDUS"), and Shenzhen SEG Hitachi Color Display Devices, Ltd. ("Hitachi Shenzhen") will be referred to collectively as "Hitachi."

[2] Among other things, the CAC alleges that: (1) the illegal conspiracy was organized at the highest level of the Hitachi corporate family and that it was carried out through regional managers and other subordinate Hitachi employees (CAC¶¶ 6, 151, 154, 157-58); (2) the Hitachi corporate family "participated in over a dozen illegal bilateral and group meetings from 1996 through at least 2001 in which unlawful agreements as to, *inter alia,* price, output restrictions, and customer and market allocation of CRT Products occurred," and that these "included more than ten bilateral meetings and more than five group meetings . . .which took place in Taiwan and China" (CAC ¶¶157-151); (3) the individual participants in the conspiratorial meetings "entered into agreements on behalf of, and reported these meetings and discussions to" other members of the Hitachi family (CAC ¶154); (4) "the individual participants in the conspiratorial meetings and discussions did not always know the corporate affiliation of their counterparts, nor did they distinguish between the entities within a corporate family," CAC ¶154; (5) each Hitachi defendant was a knowing participant in the conspiracy and that none of the Hitachi defendants "effectively withdrew from this conspiracy" (CAC ¶¶157-58); and (6) that Hitachi executive Zenzou Tashima attended conspiratorial meetings (CAC ¶178).

---

*Corp.*, 303 F. App'x 424, 426 (9th Cir. 2008); DPPs' Response to Joint Objections, p. 7, n.10.

Second, Hitachi argues that the CAC does not contain facts sufficient to state a claim that the Hitachi defendants participated in an antitrust conspiracy. The CAC, however, does not rely on inferences drawn from parallel conduct or on allegations based on information or belief. Instead, it contains detailed direct allegations of "actual agreement" – including allegations regarding meetings where Hitachi and its co-conspirators formed illegal agreements to fix prices and restrict output. Such *direct* (not inferential) allegations concerning the "specific time, place, [and] person[s] involved in the alleged conspiracies" unquestionably provide "the notice required by Rule 8." *Twombly*, 565 U.S. at 565 n.10.

Among other things, the CAC sets forth the numerous conspiratorial meetings between and among defendants – including in particular the Hitachi defendants – at: (a) bilateral meetings (CAC ¶¶5, 6, 138); (b) informal multilateral meetings, *see id.*; (c) formal multilateral "glass" meetings (CAC ¶¶5, 6, 140-53); and (d) "green meetings" (CAC ¶141). It also describes the corporate level attendees at each category of meeting (CAC ¶¶141, 151); how each meeting was concluded, (CAC ¶¶143-44, 148-49); where the meetings were conducted (CAC ¶¶141, 151); and what was discussed and agreed to among the co-conspirators (CAC ¶¶144-152). It further specifies that the Hitachi entities "participated in over a dozen illegal bilateral and group meetings from 1996 through at least 2001 in which unlawful agreements as to, *inter alia*, price, output restrictions, and customer and market allocation of CRT Products occurred. These included more than ten bilateral meetings and more than five group meetings … which took place in Taiwan and China." CAC ¶ 157.[3]

Third, the Special Master correctly held that DPPs' claims against Hitachi are not barred by the four year statute of limitations in 15 U.S.C. § 15(b). The law is clear that the statutory period for a Sherman Act conspiracy does not run so long as the co-conspirators engage in overt acts designed to accomplish its objectives. *Columbia Steel Casting Co. v. Portland Gen. Elec.*

---

[3] Hitachi's further argument that the claim against it must be dismissed because of its decline in market share is meritless. There is nothing inherently inconsistent with Hitachi's decline in market share during the class period and its participation in the conspiracy to fix prices and

2

DPPS' RESPONSE TO HITACHI DEFENDANTS' OBJECTIONS TO SPECIAL MASTER REPORT -- Case No. 3:07-CV-5944 SC

1  *Co.*, 111 F.3d 1427, 1444 (9th Cir.1996); *Pace Indus. v. Three Phoenix Co.*, 813 F.2d 234, 237
2  (9th Cir. 1987).  Here, the CAC clearly alleges that Hitachi's co-conspirators engaged in a variety
3  of overt acts through the end of the class period.  *See* CAC ¶¶ 155, 164, 198, 218.

4  Furthermore, the CAC more than adequately alleges fraudulent concealment.  As
5  explained in the response to the joint objections, the DPPs need not allege acts of fraudulent
6  concealment as against each co-conspirator.  *See* DPP's Response to Joint Objections, pp. 12-13.

7  Finally, Hitachi Ltd.'s argument (at page 5 of its objection) that it withdrew from the
8  conspiracy "in 2002 when Hitachi, Ltd. left the CRT industry and spun off all of its departments
9  related to the display business to Hitachi Displays" ignores settled law that to prove withdrawal,
10 the defendant must show "[a]ffirmative acts inconsistent with the object of the conspiracy and
11 communicated in a manner reasonably calculated to reach co-conspirators."  *United States v.*
12 *United States Gypsum Co.*, 438 U.S. 422, 464-65 (1978).  Hitachi Ltd. could not have withdrawn
13 from the conspiracy simply by spinning off its CRT departments into another Hitachi affiliate,
14 which it continued to "dominate[] and control[]."  CAC ¶34.  In addition, in arguing withdrawal,
15 Hitachi conveniently ignores the fact that the CAC alleges that Hitachi manufactured/sold
16 electronic products containing CRTs throughout the class period.  CAC ¶30.  The CAC alleges
17 that these products, as well as CRTs, were encompassed by Defendants' price-fixing conspiracy.

18 Accordingly, any suggestion by Hitachi that it withdrew from the conspiracy because it
19 ceased selling all products encompassed by the conspiracy in 2002 is emphatically belied by the
20 allegations of the CAC itself.

21 Dated:  February 26, 2010          Respectfully Submitted,

22                                    By _____/s/ *Guido Saveri*_____
                                      Guido Saveri
23                                    R. Alexander Saveri
                                      Geoffrey C. Rushing
24                                    Cadio Zirpoli
                                      SAVERI & SAVERI, INC.
25                                    706 Sansome Street
                                      San Francisco CA  94111
26
                                      *Interim Lead Counsel for the Direct Purchaser Plaintiffs*
27

28 reduce output.  As a participant in the CRT market throughout the class period, Hitachi continued
   to enjoy the benefits of artificially inflated prices for the CRT products it sold.

3

DPPS' RESPONSE TO HITACHI DEFENDANTS' OBJECTIONS TO SPECIAL MASTER
REPORT -- Case No. 3:07-CV-5944 SC

                    Steven F. Benz
                    Andrew C. Shen
                    KELLOGG, HUBER, HANSEN, TODD, EVANS &
                    FIGEL, P.L.L.C.
                    Sumner Square
                    1615 M Street, N.W., Suite 400
                    Washington, DC 20036

                    *On the Brief*

crt.234

---

4

DPPS' RESPONSE TO HITACHI DEFENDANTS' OBJECTIONS TO SPECIAL MASTER REPORT -- Case No. 3:07-CV-5944 SC