GUIDO SAVERI (22349)
  guido@saveri.com
R. ALEXANDER SAVERI (173102)
  rick@saveri.com
GEOFFREY C. RUSHING (126910)
  grushing@saveri.com
CADIO ZIRPOLI (179108)
  cadio@saveri.com
SAVERI & SAVERI, INC.
706 Sansome Street
San Francisco, CA  94111
Telephone:  (415) 217-6810
Facsimile:   (415) 217-6813

*Interim Lead Counsel for the Direct Purchaser Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Case No. 3:07-CV-5944 SC<br><br>MDL No. 1917<br><br>**CLASS ACTION** |
| This Document Relates to:<br><br>   All Direct Purchaser Actions | **DIRECT PURCHASER PLAINTIFFS' RESPONSE TO SAMSUNG ELECTRONIC CO., LTD. AND SAMSUNG ELECTRONICS AMERICA, INC.'S OBJECTIONS TO SPECIAL MASTER'S REPORT AND RECOMMENDATIONS**<br><br>Judge: Honorable Samuel P. Conti<br>Courtroom No. 1, 17th Floor |

---

DPPS' RESPONSE TO SAMSUNG'S OBJECTIONS TO THE SPECIAL MASTER'S REPORT -- Case No. 3:07-CV-5944 SC

The Direct Purchaser Plaintiffs ("DPPs") hereby respond to the objections of defendants Samsung Electronic Co., Ltd. ("SEC") and Samsung Electronics America, Inc. ("SEAI") to the Special Master's Report and Recommendation (Dkt. No. 597) ("Report").  SEC and SEAI's objection contains nothing more than a rehash of arguments made previously in this case and others, and it also duplicates the arguments made in the Joint Objection.  Specifically, SEC and SEAI argue that: (1) they should be dismissed because they do not manufacture cathode ray tubes and the DPPs' Consolidated Amended Complaint (Dkt. No. 436) ("CAC") merely alleges a conspiracy to fix the prices of tubes and not the finished products that incorporate them; and (2) the CAC's allegations do not provide adequate notice to SEC and SEAI.  As will be shown below, the Special Master's rejection of these two arguments is sound and should be adopted.

In addition to allegations common to all defendants and allegations explaining the plausibility of a price-fixing conspiracy in the CRT industry, the CAC details the interrelationship between the Samsung defendants.  It alleges that SEC "dominated and controlled the finances, policies and affairs" of SEAI, Samsung SDI, Co. Ltd. ("Samsung SDI"), and Samsung SDI's subsidiaries in America, Brazil, China, Malaysia, and Mexico.  CAC ¶¶ 58-66.  It also alleges that individual participants in the conspiratorial meetings and discussions entered into agreements on behalf of, and reported these meetings and discussions to, their respective corporate families.  CAC ¶ 154.  As a result, the entire corporate family was represented in meetings and discussions by their agents and was a party to the agreements reached in them.  CAC ¶ 154.

The CAC describes the Samsung corporate family's participation in the conspiracy in the following detail:

> Samsung, through SEC, Samsung SDI, Samsung Malaysia, Samsung SDI Shenzhen, and Samsung SDI Tianjin, participated in hundreds of illegal bilateral and illegal group meetings from 1995 through at least 2006 in which unlawful agreements as to, *inter alia*, price, output restrictions, and customer and market allocation of CRT Products (including CDT Products and CPT Products) occurred.  These included dozens of bilateral meetings and several hundred group meetings of the types described herein.  These meetings occurred in South Korea, Taiwan, China, Malaysia, Japan, Singapore, Thailand, the United Kingdom, and various locations in Europe.  Samsung never effectively withdrew from this conspiracy.

CAC ¶ 166.

1

DPPS' RESPONSE TO SAMSUNG'S OBJECTIONS TO THE SPECIAL MASTER'S REPORT -- Case No. 3:07-CV-5944 SC

> Samsung America, SAI, Samsung SDI Brazil, and Samsung SDI Mexico were represented at those meetings and were a party to the agreements entered at them. To the extent Samsung America, SEAI and Samsung SDI Mexico distributed CRT Products to direct purchasers, they played a significant role in the conspiracy because Defendants wished to ensure that the prices for such products paid by direct purchasers would not undercut the pricing agreements reached at these various meetings. Thus, Samsung America, SEAI, and Samsung SDI Mexico were active, knowing participants in this conspiracy.

CAC ¶ 167. This is largely identical to the language deemed sufficient by Judge Illston in *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 599 F. Supp. 2d 1179, 1185 (N.D. Cal. 2009). As the DPPs further explained in their joint opposition brief to Judge Legge (Report at 61-62), the Samsung entities hold themselves out to the world as an integrated corporate structure with a unified purpose.

In the interest of brevity, the DPPs incorporate by reference their response to the Joint Objection regarding the adequacy of their allegations of a finished products conspiracy. SEC and SEAI do not raise any new or different argument in that regard. As discussed in the response to the Joint Objection, plaintiffs are the masters of their CAC, their intention to allege a finished products conspiracy is clear, and the Special Master did not err in finding that the scope of the conspiracy as alleged includes CRT Products. Because the DPPs have adequately alleged a price-fixing conspiracy extending to CRT Products, which SEC and SEAI unquestionably manufacture, distribute and sell, the first objection must be overruled.

As found by the Special Master, the CAC alleges enough facts to put SEC and SEAI on notice of the claims made against them. The CAC describes the interrelationship between the SEC, SEAI, and the other Samsung defendants. CAC ¶¶ 58-66. It alleges that the individuals who participated in the illegal price-fixing arrangements acted on behalf of entire corporate families, not just the particular entities by which they were employed. *See* CAC ¶ 154.

The case cited by SEC and SEAI – *In re ATM Fee Antitrust Litig.,* No. C 04-02676 CRB, 2009 U.S. Dist. LEXIS 83199 (N.D. Cal. Sept. 4, 2009) – is inapposite because there, plaintiffs did "not distinguish between operating banks and their holding companies." Judge Breyer in that case stated that "[t]here are no allegations in the complaint that tie the holding companies to the alleged conspiracy to set the interchange fee." *Id*. Here, in contrast, Plaintiffs have tied SEC and SEAI to the conspiracy by specifying their role in it. Plaintiffs allege that SEC participated in

2

DPPS' RESPONSE TO SAMSUNG'S OBJECTIONS TO THE SPECIAL MASTER'S REPORT -- Case No. 3:07-CV-5944 SC

illegal bilateral and group meetings in which unlawful agreements were reached, such as agreements on price, output restrictions, and customer and market allocations of CRT Products. CAC ¶ 166.  Additionally, the DPPs allege that SEAI was "represented at those meetings and [was] a party to the agreements entered at them."  CAC ¶ 167.  SEAI "played a significant role in the conspiracy" and was an "active, knowing participant[] in this conspiracy" because it distributed price-fixed CRT Products to direct purchasers.  CAC ¶ 167.

Contrary to SEC and SEAI's assertion, the CAC does allege "who, did what, to whom (or with whom), where, and when."  Objection at 2 (Dkt. No. 616).  The Complaint alleges that "representatives from the highest levels of the respective companies, as well as regional managers and others" met with each other in hundreds of group and bilateral meetings.  CAC ¶ 6. The CAC describes the types of meetings attended, *i.e.*, bilateral meetings, glass meetings, top meetings, management meetings, working level meetings, and green meetings.  CAC ¶¶ 135, 136, 141.  The CAC also describes the types of information exchanged and agreements reached. CAC ¶¶ 138, 142-53.  These meetings occurred in Taiwan, South Korea, Indonesia, Thailand, Singapore, Malaysia, China, U.K., and Europe.  CAC ¶ 6.  Bilateral meetings began in March 1995 and continued through November 25, 2007.  CAC ¶¶ 1, 6.  Informal group meetings began in 1995 and became more formalized in 1997.  CAC ¶ 6.

///

///

///

1    Based on the foregoing, the Special Master concluded that "[t]here is certainly adequate
2 information for each defendant to examine its personnel, and to search its documents and
3 databases.  And each defendant would then know enough to plead, to assert a denial, to allege
4 affirmative defenses, and to prepare for motions if appropriate."  Report at 16.  There is no "clear
5 error" in this factual finding, and the Special Master's recommendation to deny the Samsung
6 defendants' motion to dismiss should be adopted.

Dated:  February 26, 2010                           Respectfully Submitted,
        San Francisco, California

By __/s/ *Guido Saveri*_____

Guido Saveri (22349)
R. Alexander Saveri
Geoffrey C. Rushing
Cadio Zirpoli
SAVERI & SAVERI, INC.
706 Sansome Street
San Francisco CA  94111
Telephone:  (415) 217-6810
Facsimile:   (415) 217-6813

*Interim Lead Counsel for the Direct Purchaser Plaintiffs*

Bruce L. Simon
Jessica L. Grant
Esther L. Klisura
PEARSON SIMON WARSHAW PENNY LLP
44 Montgomery Street, Suite 2450
San Francisco, CA 94104
Telephone: (415) 433-9000
Facsimile: (415) 433-9008

*On the Brief*

crt.237

4
DPPS' RESPONSE TO SAMSUNG'S OBJECTIONS TO THE SPECIAL MASTER'S
REPORT -- Case No. 3:07-CV-5944 SC