1   Bruce H. Jackson (State Bar No. 98118)
    (bruce.h.jackson@bakernet.com)
2   Robert W. Tarun (State Bar No. 64881)
    (robert.w.tarun@bakernet.com)
3   **BAKER & McKENZIE LLP**
    Two Embarcadero Center, 11th Floor
4   San Francisco, CA  94111-3802
    Telephone: +1 415 576 3000
5   Facsimile:  +1 415 576 3099

6   Attorneys for Defendant
    TATUNG COMPANY OF AMERICA, INC.

7

8                 UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10                 SAN FRANCISCO DIVISION

| | |
|---|---|
| 11  IN RE: TFT-LCD (FLAT PANEL)<br>12  ANTITRUST LITIGATION<br><br>13<br>14  This Document Relates To:<br>    ALL DIRECT PURCHASER ACTIONS<br>15<br>16<br>17<br>18<br>19 | Case No.  M:07-1827 SI<br>MDL No. 1827<br><br>**MOTION FOR LEAVE TO FILE<br>MOTION TO RECONSIDER MARCH<br>3, 2009, ORDER DENYING MOTION<br>TO DISMISS OR, IN THE<br>ALTERNATIVE, TO VACATE<br>ORDER AND TO ALLOW ORAL<br>ARGUMENT**<br><br>**Dept:  10<br>Before the Honorable Susan Illston** |

20

21

22

23

24

25

26

27

28

               1

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

                                      CASE NO M:07-1827 SI
TUS's MOTION FOR LEAVE TO FILE MOTION TO RECONSIDER MARCH 3, 2009, ORDER DENYING MOTION TO DISMISS
OR, IN THE ALTERNATIVE, TO VACATE ORDER AND TO ALLOW ORAL ARGUMENT

# TABLE OF CONTENTS

Page

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................................1

I.     STATEMENT OF THE ISSUES.................................................................................2

II.    STANDARD APPLIED TO CIVIL LOCAL RULE 7-9 MOTIONS ...........................3

III.   ARGUMENT ................................................................................................................4

     A.   The Court Should Grant TUS Leave to File a Motion for the Court to Reconsider Its Denial of TUS's Motion to Dismiss and to Grant the Motion.............4

         1.   Plaintiffs' Recent Admission that CPT Is Not a Vertically Integrated Single Entity Is the Death Knell for Its Claim Against TUS.......................4

         2.   Neither the Control Exception to *Illinois Brick* Nor *Royal Printing* Constitutes the Basis for a Claim Against TUS.........................................6

         3.   Plaintiffs' Control Argument Should Have Been Rejected Based on the Undisputed Fact that Tatung Taiwan Does Not Control TUS...............8

         4.   Plaintiffs' Control Argument Based on Marketing Materials Should Have Failed Because the Promotion Statements Do Not Justify Piercing the Corporate Veil. ...........................................................................9

         5.   The Court Should Have Resolved Factual Issues on TUS's Rule 12(b)(1) Motion to Dismiss and Thus Erred in Denying TUS's Motion Due to the Presence of Factual Issues...........................................13

     B.   The Court Should Grant TUS Leave to File a Motion to Vacate the Denial of TUS's Motion to Dismiss and to Set the Motion for Oral Argument......................15

IV.   CONCLUSION..........................................................................................................17

i

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **TABLE OF AUTHORITIES**

**CASES**                                                      **Page(s)**

*American Title Ins. Co. v. Lacelaw Corp.,*
 861 F.2d 224 (9th Cir. 1988) ........................................................................6

*American Trading & Prod. Corp. v. Fischbach & Moore, Inc.,*
 311 F. Supp. 412 (N.D. Ill. 1970) ................................................................11

*Ameritec Corp. v. Ameritech Corp.,*
 230 U.S.P.Q. (BNA) 225, 1986 U.S. Dist. LEXIS 26195 (C.D. Cal. May 6, 1986) ...............10

*Coleman v. Corning Glass Works,*
 619 F. Supp. 950 (W.D.N.Y. 1985), *aff'd,* 818 F.2d 874 (1987)............................................11

*Fletcher v. Atex, Inc.,*
 68 F.3d 1451 (2d Cir. 1995)..........................................................................11

*Godwin v. Nat'l Union Fire Ins. Co.,*
 2008 U.S. Dist. LEXIS 10906 (M.D. Ala. 2008)...........................................................5

*Illinois Brick Co. v. Illinois,*
 431 U.S. 720 (1977)....................................................................... passim

*In re Acushnet River & New Bedford Harbor,*
 675 F. Supp. 22 (D. Mass. 1987) ................................................................12

*In re Lernout & Hauspie Sec. Litig.,*
 230 F. Supp. 2d 152 (D. Mass. 2002) ........................................................12

*In re Parmalat Sec. Litig.,*
 375 F. Supp. 2d 278 (S.D.N.Y. 2005).........................................................12

*Merrill Lynch Inv. Managers v. Optibase, Ltd.,*
 337 F.3d 125 (2d Cir. 2002)....................................................................11, 12

*Palmer v. Stassinos,*
 2005 U.S. Dist. LEXIS 41271 (N.D. Cal. June 24, 2005) ........................................4

*Petrol. Co. (Nigeria), Ltd. v. Ashland Oil Co.,*
 456 F. Supp. 831 (D. Del. 1978)................................................................11

*Royal Printing v. Kimberly-Clark Corp.,*
 621 F.2d 323 (9th Cir. 1980) ............................................................. passim

i

CASE NO M:07-1827 SI
TUS's MOTION FOR LEAVE TO FILE MOTION TO RECONSIDER MARCH 3, 2009, ORDER DENYING MOTION TO DISMISS
OR, IN THE ALTERNATIVE, TO VACATE ORDER AND TO ALLOW ORAL ARGUMENT

*Sun Microsystems, Inc. v. Hynix Semiconductor, Inc.,*
   608 F. Supp. 2d 1166 (N.D. Cal. 2009) ...................................................................1, 3, 4, 15

*Thornhill Publ'n Co. v. General Tel. & Elecs. Corp.,*
   594 F.2d 730 (9th Cir. 1979) ...................................................................................... passim

*Total Comms. Svcs., Inc. v. Seiscor Technols., Inc.,*
   1990 U.S. Dist. LEXIS 13337 (N.D. Ill. Oct. 9, 1990).........................................................12

*Whittlestone, Inc. v. Handi-Craft Co.,*
   2009 U.S. Dist. LEXIS 15102 (N.D. Cal. Feb. 11, 2009) ......................................................4

*Wiedemann v. Cunard Line, Ltd.,*
   380 N.E.2d 932 (App. Ct. Ill. 1978) ...................................................................................12

**FEDERAL STATUTES**

Federal Rules of Civil Procedure, Rule 12(b)(1) ............................................................... passim

Federal Rules of Civil Procedure, Rule 12(b)(6) .........................................................................14

Federal Rules of Civil Procedure, Rule 56 ...........................................................................14, 15

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

CASE NO M:07-1827 SI
TUS's MOTION FOR LEAVE TO FILE MOTION TO RECONSIDER MARCH 3, 2009, ORDER DENYING MOTION TO DISMISS
OR, IN THE ALTERNATIVE, TO VACATE ORDER AND TO ALLOW ORAL ARGUMENT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### NOTICE OF MOTION AND MOTION

TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, Defendant Tatung Company of America ("TUS") hereby moves the Court for an order granting TUS leave to file a motion to reconsider the Court's March 3, 2009, Order (Dkt #873) denying TUS's Motion to Dismiss Plaintiffs' First Amended Consolidated Complaint (Dkt #856), or, in the alternative, to vacate the March 3, 2009, Order and set TUS's motion for oral argument.

This Motion is based upon this Notice, the Memorandum of Law in support thereof, and such other materials and information that the Court may properly consider at or before the hearing on this Motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendant Tatung Company of America, Inc. ("TUS") brings this motion based on (1) plaintiffs' recent admission on December 30, 2009, that Defendant Chunghwa Picture Tubes, Ltd. ("CPT") is not a vertically-integrated single entity (Dkt. #1440), (2) case law decided after this Court's March 3, 2009, Order denying TUS's motion to dismiss, (3) the Court's failure to address arguments and case law in TUS's motion to dismiss, and (4) the Court's failure to provide TUS the opportunity for oral argument on its motion to dismiss, as all other defendants had.

As the first ground for reconsideration, plaintiffs recently admitted the very issue that they have been contesting with TUS – when plaintiffs admitted that CPT is not a vertically-integrated single entity.   Plaintiffs' Motion for Preliminary Approval, Dkt. #1440.   Plaintiffs made this admission in their motion for preliminary approval of the class action settlement with CPT: "Unlike some of the other defendants in this case, Chunghwa is not a vertically-integrated single entity, and does not sell finished products itself directly in the United States." (Pls. Motion for Prelim. App., p. 7, Dkt. #1440).   As seen below, plaintiffs' admission is the death knell for their arguments based on *Royal Printing*.   Since that case clearly no longer applies to CPT and TUS in light of plaintiffs' admission, plaintiffs' claim against TUS should be dismissed.

Moreover, after this Court's March 3, 2009, Order, Judge Hamilton issued a decision which clarified the standard that district courts should apply to a Rule 12(b)(1) motion under the Ninth Circuit's decision in *Thornhill Publ'n Co. v. General Tel. & Elecs. Corp.*, 594 F.2d 730 (9th Cir. 1979). *See Sun Microsystems, Inc. v. Hynix Semiconductor, Inc.*, 608 F. Supp. 2d 1166 (N.D. Cal. 2009).   Under the proper standard as clarified by Judge Hamilton, this Court should not have denied TUS's motion because of purported factual issues, and instead should have granted TUS's motion to dismiss.

Finally, on March 3, 2009, the Court entered an order denying TUS's motion to dismiss without oral argument. (Dkt #873). However, when TUS and plaintiffs were before the Court on February 27, 2009, when TUS's motion was originally set for oral argument, the Court had indicated that it was not prepared to address TUS's motion and then set the motion for oral argument on March 6, 2009. In addition, TUS's counsel had indicated that oral argument was necessary because plaintiffs had filed a supplemental submission to which TUS had not had an opportunity to respond and that TUS's only opportunity to do so would be at oral argument.[1]  Finally, all of the other defendants and plaintiffs had an opportunity on February 27 to give oral argument on numerous motions to dismiss.

There are several significant arguments in response to plaintiffs' supplemental submission that are important for the Court to consider – most notably that plaintiffs' assertion of control must fail because the family that they contend controls TUS does not even control Tatung Company of Taiwan ("Tatung Taiwan"), much less CPT. In addition, the control exception in *Illinois Brick* and the Ninth Circuit's decision in *Royal Printing* do not set forth an affirmative rule of liability that can be applied against TUS to keep it in this case. For these and other reasons, TUS respectfully asks the Court to grant TUS leave to file a motion to vacate the denial of its motion to dismiss and to set the motion for oral argument.

## I.    STATEMENT OF THE ISSUES

1.    Whether, under Civil Local Rule 7-9, the plaintiffs' recent admission that CPT is not a vertically integrated single entity mandates dismissal of TUS because *Royal Printing* no longer applies.

2.    Whether, under Civil Local Rule 7-9, the Court's failure to apply the indirect

---

[1] The Court did indicate that it would tentatively set TUS's motion for oral argument and would look at the motion to determine whether oral argument was necessary.

Baker & McKenzie LLP
San Francisco

1   purchaser rule as a bar to claims instead of an affirmative theory of liability was a "manifest failure

2   by the Court to consider material facts or dispositive legal arguments which were presented to the

3   Court."

4           3.      Whether, under Civil Local Rule 7-9, the Court's failure to address and apply the

5   cases cited by TUS for the proposition that the stray marketing statements that plaintiffs rely on are

6   insufficient as a matter of law was a "manifest failure by the Court to consider material facts or

7

8   dispositive legal arguments which were presented to the Court."

9           4.      Whether, under Civil Local Rule 7-9, based on the new case law in *Sun*

10  *Microsystems, Inc. v. Hynix Semiconductor, Inc.*, 608 F. Supp. 2d 1166 (N.D. Cal. 2009), this Court

11  erred in denying TUS's Rule 12(b)(1) motion to dismiss due to supposed factual issues.

12          5.      Whether the Court should grant TUS's motion for leave to file a motion to vacate the

13  Court's March 3, 2009, Order Denying TUS's Motion to Dismiss Plaintiffs' First Amended

14

15  Consolidated Complaint, and set the Motion for oral argument, or, in the alternative for

16  reconsideration of the March 3, 2009, Order.

17

18  **II.     STANDARD APPLIED TO CIVIL LOCAL RULE 7-9 MOTIONS**

19          This Court determines motions for leave to file a motion for reconsideration under Civil

20  Local Rule 7-9. Under Civil Local Rule 7-9(b), before leave to file a motion for reconsideration is

21  granted, the moving party must specifically show: (1) that at the time of the motion for leave, a

22  material difference in fact or law exists from that which was presented to the Court before entry of

23  the interlocutory order for which reconsideration is sought. The party also must show that in the

24  exercise of reasonable diligence the party applying for reconsideration did not know such fact or law

25  at the time of the interlocutory order; or (2) The emergence of new material facts or a change of law

26  occurring after the time of such order; or (3) A manifest failure by the Court to consider material

27

28  facts or dispositive legal arguments which were presented to the Court before such interlocutory

3

1  order. *Whittlestone, Inc. v. Handi-Craft Co.*, 2009 U.S. Dist. LEXIS 15102, *3-4 (N.D. Cal. Feb. 11,

2  2009); *Palmer v. Stassinos*, 2005 U.S. Dist. LEXIS 41271 (N.D. Cal. June 24, 2005).

3

4  **III.    ARGUMENT**

5          **A.    The Court Should Grant TUS Leave to File a Motion for the Court to**

6                  **Reconsider Its Denial of TUS's Motion to Dismiss and to Grant the Motion.**

7          The Court should grant TUS leave to file a motion for the Court to reconsider its denial of

8  TUS's motion to dismiss and to grant the motion, for several reasons.  First, new factual material, in

9  the form of plaintiffs' recent admission that CPT is not a vertically integrated single entity, justifies

10  reconsideration of the application of this Court's March 3, 2009, and the application of *Royal*

11  *Printing* to plaintiffs' claim against TUS.  Second, the new case law in *Sun Microsystems, Inc. v.*

12  *Hynix Semiconductor, Inc.*, 608 F. Supp. 2d 1166 (N.D. Cal. 2009), which clarified the standard that

13  district courts should apply to a Rule 12(b)(1) motion under the Ninth Circuit's decision in *Thornhill*

14  *Publ'n Co. v. General Tel. & Elecs. Corp.*, 594 F.2d 730 (9th Cir. 1979), justifies reconsideration of

15  this Court's ruling that TUS's motion to dismiss had to be denied in light of supposed factual issues.

16  Finally, reconsideration is warranted because this Court manifestly failed to consider material facts

17  and dispositive legal arguments presented to the Court when it (i) failed to apply the indirect

18  purchaser rule as a bar to claims instead of an affirmative theory of liability; and (ii) failed to address

19  and apply the cases cited by TUS for the proposition that the stray marketing statements that

20  plaintiffs rely on are insufficient as a matter of law.

21

22          **1.    Plaintiffs' Recent Admission that CPT Is Not a Vertically Integrated**

23                  **Single Entity Is the Death Knell for Its Claim Against TUS.**

24          As stated above, plaintiffs' admission that CPT is not a vertically integrated single entity is

25  the death knell for their claim against TUS.  Indeed, whether CPT and TUS were vertically

26  integrated as a single entity was plaintiffs' central argument and contention in opposing TUS's

4

Baker & McKenzie LLP
San Francisco

CASE NO M:07-1827 SI
TUS's MOTION FOR LEAVE TO FILE MOTION TO RECONSIDER MARCH 3, 2009, ORDER DENYING MOTION TO DISMISS
OR, IN THE ALTERNATIVE, TO VACATE ORDER AND TO ALLOW ORAL ARGUMENT

1    motion to dismiss and the application of the indirect purchaser rule under *Illinois Brick.*  Finally,

2    plaintiffs' contention that CPT and TUS were vertically integrated and a single entity was the basis

3    for this Court's holding that there were factual issues regarding the possible application of *Royal*

4    *Printing*, which plaintiffs' recent admission renders inapplicable.  For the above reasons, plaintiffs'

5    claim against TUS should be dismissed or, at the very least, this Court should reconsider its Order

6    denying TUS's motion to dismiss.

7

8        First, as this Court noted in its March 3, 2009, Order, plaintiffs' central argument and

9    contention opposing TUS's motion to dismiss and the application of the indirect purchaser rule was

10   that CPT and TUS were vertically integrated and a single entity.  Thus, this Court noted: "In

11   response, plaintiffs argue that TUS and defendant Chunghwa Picture Tubes, Ltd. ('CPT') are

12   considered a single entity for purposes of the antitrust laws ...." (March 3, 2009, Order, p. 2, Dkt.

13   #873.)  *See also* Plaintiffs' Opposition to Tatung Company of America, Inc.'s Motion to Dismiss, p.

14   1, Dkt. #804 (noting that "Chunghwa and Tatung America are considered a single entity for

15   purposes of the antitrust laws..." and referring to "the economic reality of Tatung-Chunghwa's

16   status as a single entity under the antitrust laws").  Plaintiffs' admission now that CPT is not a

17

18   vertically integrated single entity flatly contradicts their prior position.[2]  Based on plaintiffs'

19   admission now, this Court should reconsider its March 3, 2009, Order, hold that the indirect

20   purchaser rule applies to bar plaintiffs' claim against TUS, and dismiss that claim. *See, e.g., Godwin*

21   *v. Nat'l Union Fire Ins. Co.*, 2008 U.S. Dist. LEXIS 10906 (M.D. Ala. 2008) (granting motion to

22   reconsider denial of summary judgment based on plaintiffs' subsequent judicial admission).

23

24       Second, the application of *Royal Printing* to plaintiffs' claim against TUS and the supposed

25   factual issues relating to the application of *Royal Printing* were the key to this Court's denial of

26   TUS's motion to dismiss. See March 3, 2009, Order, pp. 2-3, Dkt. #873.  However, plaintiffs'

27

28   _____

[2] Plaintiffs' admission now that CPT is not a vertically integrated single entity, when combined with their prior insistence to the contrary, borders on subterfuge, as well as sanctionable conduct.

1   admission now that CPT is not a vertically integrated single entity renders *Royal Printing*

2   inapplicable, by plaintiffs' own admission, to their claim against TUS.  Indeed, plaintiffs' admission

3   that CPT was not a vertically integrated single entity effectively ends the issue, which removes the

4   supposed factual issues on which this Court denied TUS's motion to dismiss.  *See, e.g., American*

5   *Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988) ("Judicial admissions...have the

6   effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact.").

7   Therefore, this Court should reconsider its denial of TUS's motion to dismiss and should grant

8

9   TUS's motion.

10

11           **2.**        **Neither the Control Exception to *Illinois Brick* Nor *Royal Printing*** **Constitutes the Basis for a Claim Against TUS.**

12

13         The Court failed to apply the indirect purchaser rule as a bar, instead of an affirmative theory

14   of liability, entitling plaintiffs to relief.  Plaintiffs cannot state a claim against TUS under the control

15   exception to *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), or under *Royal Printing v. Kimberly-*

16   *Clark Corp.*, 621 F.2d 323 (9th Cir. 1980), because neither represents an affirmative theory of

17   liability against middleman TUS.  Instead, the control exception to *Illinois Brick* and the decision in

18   *Royal Printing* merely provide that the purchasers from TUS can bring an action against the

19

20   manufacturer(s) of LCD panels for the purchases that they made from TUS.  Absent any allegations

21   that TUS knew of and participated in the alleged conspiracy, plaintiffs cannot state a claim against

22   TUS.

23         The control exception to *Illinois Brick* and the Ninth Circuit's holding in *Royal Printing* do

24   not set forth an affirmative theory of liability pursuant to which a middleman can be sued for claims

25   arising out of an alleged antitrust conspiracy.  They only provide that purchasers from the

26

27   middleman can bring an action against the alleged conspirator manufacturers.  Viewed in this proper

28   light, neither the control exception in *Illinois Brick* nor *Royal Printing* supports a claim against TUS.

6

Baker & McKenzie LLP
San Francisco

CASE NO M:07-1827 SI
TUS's MOTION FOR LEAVE TO FILE MOTION TO RECONSIDER MARCH 3, 2009, ORDER DENYING MOTION TO DISMISS
OR, IN THE ALTERNATIVE, TO VACATE ORDER AND TO ALLOW ORAL ARGUMENT

The facts in *Royal Printing* support the contention that it does not provide that the middleman can be sued for claims arising out of an antitrust conspiracy. In that case, only the manufacturers alleged to have conspired were sued, and plaintiffs were seeking to recover for their purchases from the wholesaling divisions or wholly-owned subsidiaries of those manufacturers. *Royal Printing*, 621 F.2d at 324. The plaintiffs were not, however, seeking to recover from the middlemen themselves – the wholesaling divisions and the wholly-owned subsidiaries – only from the alleged conspirator manufacturers.

Moreover, *Royal Printing* and the other cases cited by plaintiffs recognize that suits against intermediaries, like TUS is alleged to be, are barred because allowing them to proceed would impermissibly heighten the risk of multiple recovery and thwart the policy rationale behind *Illinois Brick* and its progeny. The plaintiffs here, if at all entitled to sue as direct purchasers, would be in a position to recover the entire alleged overcharge by suing only the manufacturers, including CPT. By giving Direct Plaintiffs the opportunity to sue the alleged "middleman" TUS, the risk of multiple recovery rises to an intolerable level under *Illinois Brick*. *See Royal Printing*, 621 F. 3d at 327 n.8 ("The *Illinois Brick* Court considered and rejected the arguments that 'it is better for the defendant to pay sixfold or more damages than for an injured party to go uncompensated....'".). Thus, even if Direct Plaintiffs' allegations were deemed sufficient to treat CPT and TUS as a single entity (which they are not), *Illinois Brick* would still bar any claim against TUS because it would create an intolerable risk of multiple recoveries from TUS directly and from the manufacturers themselves for the same purchases. Unraveling these transactions to determine which ones should not be double- and triple-counted are exactly the type of complexity and speculation that *Illinois Brick* forecloses.

The Court's failure to consider this argument constituted a manifest failure, under Local Rule 7-9, to consider material facts or dispositive legal arguments which were presented to the Court. Accordingly, the Court should grant TUS's motion for leave to file a Rule 7-9 motion.

7

3.      **Plaintiffs' Control Argument Should Have Been Rejected Based on the Undisputed Fact that Tatung Taiwan Does Not Control TUS.**

This Court should have rejected plaintiffs' control argument as a matter of law based on the undisputed fact that Tatung Taiwan did not and could not control TUS.  One of plaintiffs' two central arguments is that TUS is controlled by Tatung Taiwan because all of TUS's shares are owned by various descendants of T.S. Lin, the now-deceased founder of Tatung Taiwan.  *See Plaintiffs' Supplemental Brief in Opposition to Defendant Tatung Company of America, Inc's Motion to Dismiss*, p. 2.  However, Plaintiffs' assertion that CPT somehow controlled TUS through Tatung Taiwan is impossible because Tatung Taiwan itself did not and does not control TUS.  In addition to the unrefuted evidence that neither Tatung Taiwan nor CPT controlled TUS, which was presented in the depositions of Michael Lai and Edward Chen,[3] the family that plaintiffs argue controls TUS (DP-FACC ¶ 52) does not control Tatung Taiwan.  This fact is the death knell for plaintiffs' control argument.  Tatung Taiwan is a public company and the family that plaintiffs argue controls TUS owns only 4.7% of Tatung Taiwan.  (*Request for Judicial Notice*, Ex. A at 31, Dkt #869).

Tatung Taiwan is a public company listed on the Taiwan Stock Exchange.  TUS submitted a list of Tatung Taiwan's shareholders from its Annual Report and the Court took judicial notice of this submission.  (Dkt. #869).  T.S. Lin's family members hold only 4.7% of Tatung Taiwan's shares.  In addition, there are several investment funds that hold significant shareholdings in Tatung Taiwan – shareholdings that are significantly greater than the 4.7% shareholding of T.S. Lin's family.  Finally, Tatung Taiwan, as a public company, is owned by all of its shareholders and is governed by a duly-elected Board of Directors, like any public company.  Thus, Plaintiffs' assertion that the family of T.S. Lin controls Tatung Taiwan must be rejected based on the undisputed facts, of which this Court has already taken judicial notice.  Therefore, it follows that, since the T.S. Lin

---

[3] *See* Exhibits A and B to TUS's Mot. to Dismiss (Dkt #856).

Baker & McKenzie LLP
San Francisco

1    family is plaintiffs' only link to Tatung Taiwan's alleged control of TUS, plaintiffs' control

2    argument with respect to TUS must fail.  Ignoring this legal argument – based on undisputed facts –

3    constitutes a manifest failure by the Court to consider a dispositive legal argument under Civil Local

4    Rule 7-9.  As such, the Court should grant TUS leave to file a motion for reconsideration of the

5    March 3 Order.

6

7            **4.      Plaintiffs' Control Argument Based on Marketing Materials Should Have
                        Failed Because the Promotion Statements Do Not Justify Piercing the**
8            **Corporate Veil.**

9            In addition, the Court failed to address and apply the cases cited by TUS for the proposition

10   that the stray marketing statements that plaintiffs rely on are insufficient as a matter of law.  This

11   was a manifest failure to consider dispositive legal arguments.  Even if there were admissible

12   statements from TUS in its marketing materials that it was a subsidiary of Tatung Taiwan and

13   referring to Tatung Taiwan and CPT together, those statements are insufficient as a matter of law to

14   overcome the objective facts of corporate separateness between TUS, Tatung Taiwan and CPT.

15   There are numerous cases which hold that stray statements made in marketing materials do not

16   establish control, especially where, as here, there also exists evidence of a lack of corporate control

17   in terms of a lack of overlapping majority ownership and operational or financial control.

18

19           As stated above and in TUS's reply brief, even if the Court would consider the stray

20   statements in TUS's marketing materials with respect to Tatung Taiwan and CPT, these statements

21   as a matter of law are insufficient to support plaintiffs' control argument.  TUS cited numerous cases

22   which have rejected exactly the same argument set forth by plaintiffs here.  In those cases, which the

23   Court did not address or discuss, the courts rejected the argument that statements in marketing

24   materials were sufficient to support an assertion of control and to overcome the objective facts with

25   respect to a lack of control.  Those objective facts in this case are (a) that Tatung Taiwan owns only

26   50% of TUS; (b) that Tatung Taiwan does not exert any financial, operational or other control over

27

28

9

Baker & McKenzie LLP
San Francisco

CASE NO M:07-1827 SI
TUS's MOTION FOR LEAVE TO FILE MOTION TO RECONSIDER MARCH 3, 2009, ORDER DENYING MOTION TO DISMISS
OR, IN THE ALTERNATIVE, TO VACATE ORDER AND TO ALLOW ORAL ARGUMENT

TUS; (c) that Tatung Taiwan owns only 30% of CPT; and (d) most importantly, that CPT, the alleged conspirator manufacturer, has no ownership in TUS and exerts no financial, operational or other control over TUS.

In spite of the above and overwhelming objective facts of TUS's corporate separateness, plaintiffs make the bold claim that TUS should be party to their lawsuit because TUS "views itself as a close and 'integrated' member of a corporate family that is controlled by Tatung Taiwan and that includes Tatung America's 'sister' company, Chunghwa." (Pls. Supp. Brief at 4.) Plaintiffs base this claim on ambiguous statements – culled from tens of thousands of documents released during discovery – describing TUS as a Tatung Taiwan "subsidiary" or as a CPT "sister," or suggesting to "potential customers" that the three companies were part of an "integrated" family. (Pls. Supp. Brief at 5-6.)

However, such statements do not dissolve the corporate form or otherwise bring TUS within the proper purview of plaintiffs' lawsuit. As at least one district court in California has recognized, such statements do not have the power to compel participation in a lawsuit where jurisdiction is otherwise lacking. *See Ameritec Corp. v. Ameritech Corp.*, 230 U.S.P.Q. (BNA) 225, 1986 U.S. Dist. LEXIS 26195, *8 (C.D. Cal. May 6, 1986). In *Ameritec*, the district court granted the defendant's motion to dismiss for lack of personal jurisdiction despite certain advertisements and publications referring to the "Ameritech Family of Companies" and the subsidiary's advertisements using the pronoun "we" in reference to regional branches. *Id.* As the court explained, "[d]espite suggestive advertisements which could be inferred to imply that the moving defendants are a unitary business, if the operations of the corporations are kept distinct and separate, the court may decline jurisdiction over the matter." *Id.* at *11 (citing *Manville Boiler Co. v. Columbia Boiler Co. of Pottstown,* 269 F.2d 600, 606 (4th Cir. 1959), *cert denied,* 361 U.S. 901 (1959)). The court went on to reject the plaintiffs' alter ego theory, as plaintiffs had failed to make the requisite showing "that

10

Baker & McKenzie LLP
San Francisco

CASE NO M:07-1827 SI
TUS's MOTION FOR LEAVE TO FILE MOTION TO RECONSIDER MARCH 3, 2009, ORDER DENYING MOTION TO DISMISS
OR, IN THE ALTERNATIVE, TO VACATE ORDER AND TO ALLOW ORAL ARGUMENT

1   the corporate entities [were] set up with fraudulent intent or in bad faith." *Id.* at *14 (citing *Seymour*

2   *v. Hull & Moreland Engineering*, 605 F.2d 1105, 1111 (9th Cir. 1979)).

3       Likewise, numerous courts have consistently recognized that loose language similar to that

4   quoted by plaintiffs does not support piercing the corporate veil. In *Fletcher v. Atex, Inc.*, 68 F.3d

5   1451, 1460 (2d Cir. 1995), the Second Circuit Court of Appeals affirmed the district court's rejection

6   of the plaintiff's argument, based on statements of corporate identity, that the veil should be pierced.

7   The subsidiary had "frequently" used the parent's logo on its paperwork and packaging and had

8   described itself as a business unit or division of the parent in promotional literature; for its part, the

9   parent had, in its annual reports, characterized the subsidiary as a recent acquisition and as a

10   subsidiary. *Id.*   Like several other courts before it, the court reasoned that corporate promotion

11   through a family identity is merely a form of puffery that in no way blurs the reality of corporate

12

13   distinctiveness:

14
15           Viewed in the light most favorable to the plaintiffs, these statements and the use of the
             [parent's] logo are not evidence that the two companies operated as a "single
16           economic entity." *See Coleman v. Corning Glass Works*, 619 F. Supp. 950, 956 (W.D.N.Y.
             1985) (upholding corporate form despite "loose language" in annual report about "merger"
17           and parent's reference to subsidiary as a "division"), *aff'd*, 818 F.2d 874 (1987); *Japan
             [Petrol. Co. (Nigeria), Ltd. v. Ashland Oil Co.*, 456 F. Supp. 831, 846 (D. Del. 1978)] (noting
18           that representations made by parent in its annual reports that subsidiary serves as an agent
             "may result from public relations motives or an attempt at simplification"); *American
19           Trading & Prod. Corp. v. Fischbach & Moore, Inc.*, 311 F. Supp. 412, 416 (N.D. Ill. 1970)
             ("boastful" advertising and consideration of subsidiaries as "family" do not prove that
20           corporate identities were ignored).

21
22   *Fletcher*, 68 F.3d at 1460-61. Later, in *Merrill Lynch Inv. Managers v. Optibase, Ltd.*, 337 F.3d 125,

23   130 (2d Cir. 2002), the Second Circuit rejected the plaintiff's contention that two subsidiaries of a

24   common parent were agents of one another for the purposes of enforcing against both of them an

25   arbitration agreement signed by only one.  Upholding an order of injunction issued by the district

26   court, the Court held that the subsidiaries were not mutual agents, even where one subsidiary had

27

28                                        11

1    "market[ed] the services of the entire Merrill Lynch family of companies to clients; and … the

2    Merrill Lynch companies present[ed] to the public the image of a single, integrated firm." *Id.*

3        Numerous U.S. district courts have likewise refused to pierce the veil on the basis of

4    conditions like those advanced here by the plaintiffs. *See, e.g., In re Parmalat Sec. Litig.*, 375 F.

5    Supp. 2d 278, (S.D.N.Y. 2005) (declining to deem related entities alter egos despite marketing

6    materials indicating a "close relationship" and the existence of "overlapping executives," as

7

8    complaint did not indicate an intermingling of funds or a failure to adhere to corporate formalities);

9    *In re Lernout & Hauspie Sec. Litig.*, 230 F. Supp. 2d 152, 170 (D. Mass. 2002) (web page suggesting

10   that KPMG International marketed itself as a single entity could not support its being held

11   vicariously liable for acts of KPMG UK based on apparent authority); *Total Comms. Svcs., Inc. v.*

12   *Seiscor Technols., Inc.*, 1990 U.S. Dist. LEXIS 13337, *15-16 (N.D. Ill. Oct. 9, 1990) (subsidiary's

13

14   use of parent Raytheon's logo and motto "A Raytheon company" and statement by Raytheon

15   chairman that such use was required and intended to convey "a unity of purpose and quality of

16   business integrity that are unexcelled" could not support piercing); *In re Acushnet River & New*

17   *Bedford Harbor*, 675 F. Supp. 22, 34-35 (D. Mass. 1987), *rev'd in part on other grounds,*

18   *Lumbermens Mut. Cas. Co. v. Belleville Indus.*, 938 F.2d 1423 (1st Cir. 1991) ("The practice of

19   identifying a subsidiary's products with the name of the parent is a frequently used marketing

20   strategy which, given the understandings of the marketplace, does not imply a disrespect for

21   separateness."); *Wiedemann v. Cunard Line, Ltd.*, 380 N.E.2d 932, 938-39 (App. Ct. Ill. 1978)

22   ("[U]se of the name 'Cunard' by not only defendant Cunard Line Ltd. but also by other subsidiaries

23

24   of the parent company for advertising purposes, while it might lead to confusion in the minds of the

25   public as noted by the trial court, does not make Cunard liable for the torts of the other subsidiary").

26       The wayward examples cited by plaintiffs that allegedly convey that TUS, Tatung

27   Taiwan, and CPT were or considered themselves to be parts of an integrated family are no more

28                                                                12

1   egregious than the wide array of examples rejected in the cases cited above.  Even if true and

2   admissible, the isolated use of the family of companies in advertising cannot justify disregarding the

3   corporate form for the purposes of continuing to compel TUS's participation in this lawsuit.  Neither

4   TUS, Tatung Taiwan, nor CPT has ever denied TUS's existence as a separately incorporated entity,

5   and plaintiffs have not alleged an intermingling of corporate funds or a failure to adhere to corporate

6   formalities.  Therefore, even if the Court considers and even credits the stray statements contained in

7   marketing materials set forth by plaintiffs, these statements, as a matter of law, are insufficient to

8   provide the basis for a claim against TUS.

9

10         The Court's failure to consider this argument constituted a manifest failure, under Local Rule

11   7-9, to consider material facts or dispositive legal arguments which were presented to the Court.

12   Accordingly, the Court should grant TUS's motion for leave to file a Rule 7-9 motion.

13

14       **5.**    **The Court Should Have Resolved Factual Issues on TUS's Rule 12(b)(1)**

15           **Motion to Dismiss and Thus Erred in Denying TUS's Motion Due to the**
            **Presence of Factual Issues.**

16         Finally, that plaintiffs have offered supposed evidence of control – their family argument and

17   the marketing statements, neither of which, as seen above, is sufficient, as a matter of law – does not

18   automatically mean that TUS's motion should have been denied because there is a factual issue.

19   Even if plaintiffs' supposed evidence does not fail as a matter of law to support an assertion of

20   control, it is proper and appropriate for the Court to resolve factual issues on a motion to dismiss

21   brought under Rule 12(b)(1) of the Federal Rules of Civil Procedure. *See Thornhill Publ'n Co. v.*

22   *General Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979).

23

24         First, as seen above, this Court should have rejected as a matter of law plaintiffs' arguments

25   based on alleged control of TUS by Tatung Taiwan through the T.S. Lin family and based on TUS's

26   marketing materials, and thus did not need to decide whether it could or could not resolve any

27   factual issues.

28

Baker & McKenzie LLP
San Francisco

1     Moreover, even if plaintiffs present supposed evidence to refute TUS's facts – and TUS

2    submits that the supposed facts submitted by plaintiffs are insufficient as a matter of law to justify

3    the denial of TUS's motion – the Court can and should resolve any factual disputes between TUS's

4    submissions and plaintiffs' submissions, on TUS's 12(b)(1) motion. This is the instruction of the

5    Ninth Circuit in *Thornhill*. In that case, the Court stated that a district judge may consider the

6    evidence presented with respect to the jurisdictional issue and rule on that issue, resolving factual

7    disputes if necessary. 594 F.2d at 733. Thus, the Court stated, "Where the jurisdictional issue is

8    separable from the merits of the case, the judge may consider the evidence presented with respect to

9    the jurisdictional issue and rule on that issue, resolving factual disputes if necessary." *Id.* (citations

10    omitted). The Court went on to distinguish the standard for a Rule 12(b)(1) motion based on a

11    factual attack from the standard for a Rule 56 motion for summary judgment. Thus, the Court

12    stated:

> The standards applicable to a Rule 12(b)(1) speaking motion differ greatly from the standards
> for ruling on a motion for summary judgment. Faced with a factual attack on subject matter
> jurisdiction,
>
>> "the trial court may proceed as it never could under Rule 12(b)(6) or Fed. R. Civ. P.
>> 56. ... No presumptive truthfulness attaches to plaintiff's allegations, and the
>> existence of disputed material facts will not preclude the trial court from evaluating
>> for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the
>> burden of proof that jurisdiction does in fact exist."

*Id.* (citation omitted). Since the jurisdictional issue raised here is not intertwined with the merits, the

Court should not have denied TUS's Rule 12(b)(1) motion to dismiss due to a factual dispute, and

should instead have resolved the dispute. Indeed, lack of standing under *Illinois Brick* is not

intertwined with the merits of plaintiffs' claim because there is no part of the consideration of

*Illinois Brick*'s application that impacts an element that plaintiffs need to prove in order to prove

their claim under Section 1 of the Sherman Act.

14

Baker & McKenzie LLP
San Francisco

CASE NO M:07-1827 SI
TUS's MOTION FOR LEAVE TO FILE MOTION TO RECONSIDER MARCH 3, 2009, ORDER DENYING MOTION TO DISMISS
OR, IN THE ALTERNATIVE, TO VACATE ORDER AND TO ALLOW ORAL ARGUMENT

On this point, the recent decision in *Sun Microsystems, Inc. v. Hynix Semiconductor, Inc.,* 608 F. Supp. 2d 1166 (N.D. Cal. 2009), is instructive. In that case, Judge Hamilton held that, under *Thornhill*, the proper standard to be applied to the Rule 12(b)(1) motion before her was not the Rule 56 standard, but rather the Rule 12(b)(1) standard that allowed her to make factual findings. In so holding, the Judge noted that the issue raised by the Rule 12(b)(1) motion was not so enmeshed with the substantive issues of plaintiffs' Section 1 Sherman Act claim. Thus, the Judge wrote:

> [A]s applied here, *Thornhill* is best read as suggesting that the 12(b)(1) standard, rather than a Rule 56 standard, is appropriate. The jurisdictional issues in the case – while factual in nature – do not appear to be so "enmeshed" with the substantive issues of plaintiff's Sherman Act claim such as to require Rule 56 treatment. As the *Thornhill* court contemplated, the jurisdictional issue in Sun's Sherman Act and Cartwright Act claims (insofar as the foreign purchase based claims are concerned) is whether defendants' conduct had a sufficient relationship with the domestic effects of that conduct and plaintiff's injury, so as to be subject to regulations under the FTAIA. The substantive issues of plaintiff's claims, however, are whether defendants participated in anti-competitive conduct by conspiring to fix prices. Since the two issues are distinct, analysis pursuant to 12(b)(1) standards is appropriate. Accordingly, the court shall consider the factual evidence presented and resolve factual disputes as necessary to determine the existence of jurisdiction as a matter of law.

*Id.* at 1185. Based on *Thornhill* and *Sun Microsystems*, this Court should, if necessary, make factual findings that TUS was not controlled by CPT at all and in any event not to the extent necessary to establish either a single enterprise or the control exception to *Illinois Brick.*

**B.    The Court Should Grant TUS Leave to File a Motion to Vacate the Denial of TUS's Motion to Dismiss and to Set the Motion for Oral Argument.**

For several reasons, the Court should grant TUS leave to file a motion to vacate the Court's denial of TUS's motion to dismiss and to set the motion for oral argument. First, concepts of fundamental fairness dictate that TUS should have the same opportunity to address the Court in oral argument as all of the other defendants had in connection with their motions. Second, as counsel for TUS stated in court on February 27, 2009, plaintiffs' supplemental submission – which the Court relied on in its March 3 Order – raised new factual materials and new arguments that TUS would only have been able to respond to in the oral argument on February 27, 2009. However, when oral

15

1  argument did not take place on February 27, 2009, the oral argument set for March 6, 2009, was then

2  the only chance for TUS to respond to the new factual materials and new arguments raised in

3  plaintiffs' supplemental submission. Therefore, for these reasons, the Court should grant TUS leave

4  to file a motion to vacate the Court's denial of TUS's motion to dismiss and to set the motion for

5  oral argument.

6

7      First, when all of the parties appeared before the Court on February 27, 2009, to argue the

8  numerous motions to dismiss the First Amended Complaint, the Court announced the various

9  motions that it had before it but did not mention TUS's motion to dismiss.  After counsel for the

10  defendants and the plaintiffs had given oral argument to the Court with respect to numerous motions

11  to dismiss, counsel for TUS raised the fact that the Court had not mentioned TUS's motion and

12  offered, in the interests of the Court's time that day, with a full motion calendar, to argue the case on

13  another day, and proposed a week later on March 6, 2009.  The Court responded that it did not show

14  TUS's motion as being scheduled for February 27.  Counsel for plaintiffs stated that it was his

15  understanding TUS's motion was scheduled for February 27.  The Court then tentatively set TUS's

16  motion for oral argument for March 6.  Counsel for TUS stated that oral argument was important to

17  TUS because plaintiffs had submitted a supplemental submission and TUS wanted to respond in oral

18  argument to certain new issues and facts made by plaintiffs.  Finally, TUS's counsel was prepared to

19  argue its motion to dismiss on February 27.  In light of the above, concepts of fundamental fairness

20  dictate that, since all of the defendants and all of the plaintiffs had the opportunity to give oral

21  argument on the numerous motions to dismiss on February 27, TUS should also be allowed to give

22  oral argument in support of its motion to dismiss.

23      Second, plaintiffs submitted a supplemental submission on February 20, 2009, in opposition

24  to TUS's motion to dismiss.  That supplemental submission was based on the depositions of Edward

25  Chen and Michael Lai, taken by the plaintiffs on February 13, 2009.  That supplemental submission

16

1    thus raised new factual materials and new arguments that TUS did not have an opportunity to

2    respond to in writing prior to what it thought was going to be the oral argument on February 27,

3    2009.  When oral argument did not occur on February 27, TUS did not get its opportunity to address

4    the new facts and arguments contained in plaintiffs' supplemental submission on that day, but

5    justifiably thought that it would have that opportunity on March 6, 2009.  When the Court ruled on

6    TUS's motion without providing TUS with the opportunity for oral argument, TUS lost its

7    opportunity to address in any way the new factual materials and new arguments that plaintiffs had

8    made in their submission.  This result, simply put, was unfair to TUS.  Moreover, it put the Court in

9    a position where it could not possibly evaluate all the material facts and legal arguments pertinent to

10   TUS's motion to dismiss.  Thus, the Court should vacate its denial of TUS's motion to dismiss and

11   set the motion for oral argument.

## IV.    CONCLUSION

For the reasons stated above, the Court should grant TUS leave to file a motion to reconsider the Court's March 3, 2009, order denying TUS's motion to dismiss, or, alternatively, to vacate the March 3 Order and set TUS's motion to dismiss for oral argument.

Dated:  February 4, 2010                              **BAKER & McKENZIE LLP**


                                                      By: _/s/  Patrick J. Ahern_
                                                          Patrick J. Ahern
                                                          Attorneys for Defendant
                                                          TATUNG COMPANY OF AMERICA, INC.

Baker & McKenzie LLP
San Francisco

1

Bruce H. Jackson (State Bar No. 98118)
   (bruce.h.jackson@bakernet.com)
Robert W. Tarun (State Bar No. 64881)
   (robert.w.tarun@bakernet.com)
**BAKER & McKENZIE LLP**
Two Embarcadero Center, 11th Floor
San Francisco, CA  94111-3802
Telephone:  +1 415 576 3000
Facsimile:   +1 415 576 3099

Attorneys for Defendant
TATUNG COMPANY OF AMERICA, INC.

Of Counsel:

Patrick J. Ahern
   (patrick.j.ahern@bakernet.com)
Karen Sewell
   (karen.sewell@bakernet.com)
**BAKER & McKENZIE LLP**
One Prudential Plaza
130 East Randolph Drive
Chicago, IL  60601
Telephone:  +1 312 861 8000
Facsimile:   +1 312 861 2899

Attorneys for Defendant
TATUNG COMPANY OF AMERICA, INC.

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

18

Baker & McKenzie LLP
San Francisco

CASE NO M:07-1827 SI
TUS's MOTION FOR LEAVE TO FILE MOTION TO RECONSIDER MARCH 3, 2009, ORDER DENYING MOTION TO DISMISS
OR, IN THE ALTERNATIVE, TO VACATE ORDER AND TO ALLOW ORAL ARGUMENT

1

2

## CERTIFICATE OF SERVICE

3      The undersigned counsel hereby certifies that a true and correct copy of the foregoing document was served upon the parties and counsel of record, through the Court's ECF system, on February 4, 2010.

4

5

6                                  /s/ Patrick J. Ahern

7                                  Patrick J. Ahern
                                   One of the Attorneys for Defendant
8                                  Tatung Company of America, Inc.

9

10

CHIDMS1/2691556.3

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Baker & McKenzie LLP
San Francisco

CASE NO M:07-1827 SI
TUS's MOTION FOR LEAVE TO FILE MOTION TO RECONSIDER MARCH 3, 2009, ORDER DENYING MOTION TO DISMISS
OR, IN THE ALTERNATIVE, TO VACATE ORDER AND TO ALLOW ORAL ARGUMENT