PAGES 1 – 88

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE SAMUEL CONTI

IN RE: CATHODE RAY TUBE (CRT)    )
ANTITRUST LITIGATION            )
                                   )  NOS. MDL 1917
                                   )     C 07-5944 SC
                                   )
                                   )  SAN FRANCISCO, CALIFORNIA
_____)  THURSDAY, MARCH 18, 2010

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

**FOR DIRECT PURCHASER**    SAVERI & SAVERI
**PLAINTIFFS**              706 SANSOME STREET
                       SAN FRANCISCO, CALIFORNIA  94111
           BY:  **GUIDO SAVERI, ESQUIRE**
                **R. ALEXANDER SAVERI, ESQUIRE**
                **GEOFFREY C. RUSHING, ESQUIRE**

                       PEARSON, SIMON, WARSHAW, PENNY
                       44 MONTGOMERY STREET, SUITE 2450
                       SAN FRANCISCO, CALIFORNIA  94104
           BY:  **BRUCE L. SIMON, ESQUIRE**

                       BERGER & MONTAGUE
                       1622 LOCUST STREET
                       PHILADELPHIA, PENNSYLVANIA  19103
           BY:  **H. LADDIE MONTAGUE, JR., ESQUIRE**

                       HAUSFELD, LLP
                       **44 MONTGOMERY STREET, SUITE 3400**
                       SAN FRANCISCO, CALIFORNIA  94104
           BY:  **MICHAEL P. LEHMANN, ESQUIRE**

(FURTHER APPEARANCES ON FOLLOWING PAGES)

*JOAN MARIE COLUMBINI, CSR # 5435, RPR*
*OFFICIAL COURT REPORTER, U.S. DISTRICT COURT*

**APPEARANCES (CONTINUED):**

| | |
|---|---|
| **FOR DIRECT PURCHASER PLAINTIFFS** | KAPLAN, FOX & KILSHEIMER<br>423 SUMAC ROAD<br>HIGHLAND PARK, ILLINOIS 60035<br>BY: **GARY L. SPECKS, ESQUIRE** |
| | LIEFF, CABRASER, HEIMANN & BERNSTEIN<br>275 BATTERY STREET, 30TH FLOOR<br>SAN FRANCISCO, CALIFORNIA 94111<br>BY: **ERIC B. FASTIFF, ESQUIRE** |
| **FOR INDIRECT PURCHASER PLAINTIFFS** | TRUMP, ALIOTO, TRUMP & PRESCOTT<br>2280 UNION STREET<br>SAN FRANCISCO, CALIFORNIA 94123<br>BY: **MARIO N. ALIOTO, ESQUIRE**<br>**LAUREN C. RUSSELL, ESQUIRE**<br>**JOSEPH M. PATANE, ESQUIRE** |
| | ZELLE, HOFMANN, VOELBEL & MASON<br>44 MONTGOMERY STREET, SUITE 3400<br>SAN FRANCISCO, CALIFORNIA 94104<br>BY: **CRAIG C. CORBITT, ESQUIRE**<br>**QIANWEI FU, ESQUIRE** |
| | GLANCY, BINKOW & GOLDBERG<br>**ONE EMBARCADERO CENTER, SUITE 760**<br>**SAN FRANCISCO, CALIFORNIA 94111**<br>BY: **SYLVIE K. KERN, ESQUIRE** |
| **FOR DEFENDANT LG ELECTRONICS** | SIDLEY AUSTIN, LLP<br>555 CALIFORNIA STREET<br>SAN FRANCISCO, CALIFORNIA 94104<br>BY: **SAMUEL R. MILLER, ESQUIRE**<br>**MARIE FIALA, ESQUIRE** |
| **FOR DEFENDANT PANASONIC COMPANIES** | DEWEY & LEBOEUF, LLP<br>1301 AVENUE OF THE AMERICAS<br>NEW YORK, NEW YORK 10019<br>BY: **JEFFREY L. KESSLER, ESQUIRE**<br>**MOLLY M. DONOVAN, ESQUIRE** |

**APPEARANCES (CONTINUED):**

| | |
|---|---|
| **FOR DEFENDANT** | O'MELVENY & MYERS, LLP |
| **SAMSUNG ELECTRONICS** | 1625 EYE STREET, NW |
| **SAMSUNG ELECTRONICS** | WASHINGTON, DC  20006 |
| **OF AMERICA**     **BY:** | **IAN SIMMONS, ESQUIRE** |

| | |
|---|---|
| **FOR DEFENDANT** | MORGAN, LEWIS & BOCKIUS |
| **HITACHI, LTD** | ONE MARKET, SPEAR STREET TOWER |
| | SAN FRANCISCO, CALIFORNIA  94105 |
| **BY:** | **KENT M. ROGER, ESQUIRE** |
| | **DIANE L. WEBB, ESQUIRE** |

| | |
|---|---|
| **FOR DEFENDANT SAMSUNG** | SHEPPARD, MULLIN, RICHTER & HAMPTON |
| **SDI** | FOUR EMBARCADERO CENTER, 17TH FLOOR |
| | SAN FRANCISCO, CALIFORNIA  94111 |
| **BY:** | **JAMES L. MCGINNIS, ESQUIRE** |

| | |
|---|---|
| **FOR DEFENDANT** | WEIL, GOTSHAL & MANGES, LLP |
| **PANASONIC** | 767 FIFTH AVENUE |
| | NEW YORK, NEW YORK  10153 |
| **BY:** | **DAVID E. YOLKUT, ESQUIRE** |

| | |
|---|---|
| **FOR DEFENDANT** | FRESHFIELDS BRUCKHAUS DERINGER, US, LLP |
| **BEIJING MATSUSHITA** | 701 PENNSYLVANIA AVENUE, NW |
| **COLOR CRT CO. LTD.** | SUITE 600 |
| | WASHINGTON, DC  20004 |
| **BY:** | **KATE S. MCMILLAN, ESQUIRE** |

| | |
|---|---|
| **FOR DEFENDANT TOSHIBA** | WHITE & CASE |
| **AMERICA ELECTRONICS** | 701 THIRTEENTH STREET, NW |
| **COMPONENTS, INC.** | WASHINGTON, DC  20005 |
| **BY:** | **LUCIUS B. LAU, ESQUIRE** |

| | |
|---|---|
| **FOR DEFENDANT PHILIPS** | HOWREY, LLP |
| **ELECTRONICS NORTH** | 1299 PENNSYLVANIA AVENUE, NW |
| **AMERICA CORP.** | WASHINGTON, DC  20004 |
| **BY:** | **JOHN M. TALADAY, ESQUIRE** |

```
1              PROCEEDINGS; THURSDAY, MARCH 18, 2010

2

3         THE CLERK:  CALLING MDL 1917, CIVIL 07-5944, IN RE:

4  CATHODE RAY TUBE ANTITRUST LITIGATION.

5         COUNSEL, PLEASE COME FORWARD AND STATE YOUR

6  APPEARANCE FOR THE RECORD.

7         MR. SAVERI:  GUIDO SAVERI FOR THE DIRECT PURCHASER

8  PLAINTIFFS.

9         MR. ALIOTO:  GOOD MORNING, YOUR HONOR.  MARIO ALIOTO

10 FOR THE INDIRECT PURCHASER PLAINTIFFS.

11        MS. RUSSEL:  GOOD MORNING, YOUR HONOR.  LAUREN

12 RUSSELL ON BEHALF OF THE INDIRECT PURCHASER PLAINTIFFS.

13        MS. KERN:  GOOD MORNING, YOUR HONOR.  SYLVIE KERN FOR

14 THE INDIRECT PURCHASER PLAINTIFFS.

15        MR. CORBITT:  GOOD MORNING, YOUR HONOR.  CRAIG

16 CORBITT, ZELLE HOFMANN FOR THE INDIRECT PURCHASERS.

17        MR. MONTAGUE:  GOOD MORNING, YOUR HONOR.  LADDIE

18 MONTAGUE ON BEHALF OF THE DIRECT PURCHASERS.

19        MR. SIMON:  GOOD MORNING, YOUR HONOR.  BRUCE SIMON ON

20 BEHALF OF THE DIRECT PURCHASERS AS WELL.

21        MR. LEHMANN:  GOOD MORNING, YOUR HONOR.  MICHAEL

22 LEHMANN ON BEHALF OF THE DIRECT PURCHASERS.

23        MR. SPECKS:  GOOD MORNING, YOUR HONOR.  GARY SPECKS,

24 KAPLAN FOX, ON BEHALF OF THE DIRECT PURCHASER PLAINTIFFS.

25        MR. RUSHING:  GOOD MORNING, YOUR HONOR.  GEOFFREY
```

1   RUSHING ON BEHALF OF THE DIRECT PURCHASER PLAINTIFFS.

2            **MR. MILLER:**  SAM MILLER OF SIDLEY AUSTIN ON BEHALF OF

3   LG ELECTRONICS.

4            **MS. FIALA:**  GOOD MORNING, YOUR HONOR.  MARIE FIALA,

5   ALSO ON BEHALF OF LG ELECTRONICS.

6            **MR. KESSLER:**  GOOD MORNING, YOUR HONOR.  JEFFREY

7   KESSLER ON BEHALF OF PANASONIC COMPANIES.

8            **MR. SIMMONS:**  GOOD MORNING, YOUR HONOR.  IAN SIMMONS,

9   O'MELVENY & MYERS, ON BEHALF OF SAMSUNG ELECTRONICS CORPORATION

10  AND SAMSUNG ELECTRONICS OF AMERICA.

11           **MR. TALADAY:**  GOOD MORNING, YOUR HONOR.  JOHN TALADAY

12  ON BEHALF OF THE FOUR PHILIPS ENTITIES.

13           **MR. MCGINNIS:**  JAMES MCGINNIS OF SHEPPARD MULLIN,

14  YOUR HONOR, ON BEHALF OF THE SAMSUNG SDI ENTITIES.  GOOD

15  MORNING.

16           **MR. LAU:**  GOOD MORNING, YOUR HONOR.  LUCIUS LAU,

17  REPRESENTING THE TOSHIBA ENTITIES.

18           **MR. ROGER:**  GOOD MORNING, YOUR HONOR.  KENT ROGER,

19  MORGAN LEWIS, ON BEHALF OF THE HITACHI ENTITIES.

20           **MS. MCMILLAN:**  GOOD MORNING, YOUR HONOR.  KATE

21  MCMILLAN, REPRESENTING THE BEIJING MATSUSHITA COLOR CRT COMPANY.

22           **THE COURT:**  GOOD MORNING, COUNSEL, AND WELCOME.

23           ON THE 8TH OF MARCH, I ISSUED AN ORDER STATING THAT,

24  ACCORDING TO A -- ACTING IN THE SPECIAL MASTER'S REPORT, THE

25  COURT MUST GIVE THE PARTIES NOTICE AND OPPORTUNITY TO BE HEARD,

1  AND THIS IS THE TIME FOR THAT.  HOWEVER, I WOULD THINK THAT THIS

2  IS ENOUGH TO BE HEARD, AND I'VE GONE OVER IT (INDICATING).

3           SO I WOULD LIKE TO SAY THIS, THAT IF YOU HAVE

4  ANYTHING -- YOU'RE ALL HERE.  AS I SAID, WELCOME.  IF YOU HAVE

5  ANYTHING TO ADD, OTHER THAN THE MATTERS IN THESE PAPERS, I'D BE

6  VERY HAPPY TO HEAR THEM.  HOWEVER, I DON'T WANT YOU TO REITERATE

7  WHAT'S IN THE PAPERS.

8           I KNOW THE OBJECTIONS THAT YOU HAVE, THE ANSWERS THAT

9  YOU'VE GIVEN, THE REPLIES THE PLAINTIFFS HAVE GIVEN, AND TO

10 REHASH IT AGAIN IS TO SAY THAT THERE'S NO NEED FOR WRITTEN

11 ARGUMENT.  AND I THINK THE WRITTEN ARGUMENT, TO ME, IS MORE

12 IMPORTANT THAN ORAL ARGUMENT.  BUT I'M VERY HAPPY TO HEAR ORAL

13 ARGUMENT IF YOU HAVE SOMETHING OTHER THAN THAT WHICH IS

14 CONTAINED IN YOUR FIRST PAPERS ON FILE.  OKAY.

15           **MR. MILLER:**  SAM MILLER, SIDLEY AUSTIN, AND I'M GOING

16 TO SPEAK ON BEHALF OF THE DEFENDANTS GENERALLY, AND I HOPE WILL

17 BE VERY EFFICIENT.  WE THINK THERE ARE TWO FUNDAMENTAL ERRORS

18 THAT JUDGE LEGGE MADE, ERRORS OF LAW, AND THAT'S WHY WE'RE HERE.

19           WE DO NOT CONTEST THAT THE PLAINTIFFS HAVE ADEQUATELY

20 ALLEGED A CONSPIRACY WITH RESPECT TO CATHODE RAY TUBES

21 THEMSELVES, THE TUBES THEMSELVES, NOT THE FINISHED PRODUCTS.

22 BUT WE'RE HERE BECAUSE WE BELIEVE THAT THE PLAINTIFFS, THROUGH

23 ARTFUL PLEADING, HAVE ALSO ATTEMPTED TO DRAMATICALLY EXPAND THE

24 SCOPE OF THIS CASE TO INCLUDE FINISHED PRODUCTS, LIKE TVS AND

25 COMPUTER MONITORS, AND THEY HAVE ADDED DEFENDANTS THAT DON'T

1    BELONG IN THIS CASE, DEFENDANTS THAT DON'T EVEN MAKE, AND SOME

2    WHICH HAVE NEVER MADE, THE TUBES, WHICH I WILL SOMETIMES REFER

3    TO AS CRTS.

4             PLAINTIFFS' FINISHED PRODUCT CONSPIRACY ALLEGATIONS

5    MAKE NO SENSE AND ARE IMPLAUSIBLE, AND I'M GOING TO EXPLAIN IN A

6    MINUTE, BUT THE OVERRIDING ISSUE HERE IS THIS:  IF PLAINTIFFS

7    HAVE EVIDENCE THAT THE COMPONENT MAKERS, THE TUBE MAKERS,

8    CONSPIRED TO RAISE THE PRICE OF THE TUBES, IT MAKES NO SENSE

9    THAT THE FINISHED PRODUCT MAKERS WOULD BE PART OF THAT

10   CONSPIRACY.  THEY ARE THE VICTIMS OF A CONSPIRACY, NOT

11   PARTICIPANTS.  AND THIS IS ESPECIALLY TRUE, YOUR HONOR, WHERE

12   THE PLAINTIFFS SPECIFICALLY CONCEDE THAT THE FINISHED PRODUCT

13   MARKET IS COMPETITIVE.

14            I WOULD ASK YOU TO LOOK AT INDIRECT PURCHASER

15   COMPLAINT PARAGRAPH 227 WHERE IT SPECIFICALLY ACKNOWLEDGES THAT

16   THE FINISHED PRODUCT MARKET, THAT IS THE MARKET FOR THE COMPUTER

17   MONITORS AND THE TVS, ARE COMPETITIVE, HIGHLY COMPETITIVE.

18            COUNSEL FOR THE INDIRECT PURCHASERS SPECIFICALLY

19   ADMITTED IN THE ORAL ARGUMENT BEFORE JUDGE LEGGE, AND I QUOTE:

20            "WE KNOW THERE IS VIGOROUS COMPETITION AT

21            THAT LEVEL,"

22            MEANING THE FINISHED PRODUCT LEVEL.

23            "AND WE ARE NOT CONTENDING THERE WAS ANY

24            CONSPIRACY AMONG DELL AND HP AND BEST BUY," AND

25            ALL THOSE PEOPLE.

```
1              SO, I STARTED PRACTICING HERE, YOUR HONOR, 35 YEARS

2   AGO.  I STARTED WITH CLERKING FOR JUDGE WEIGEL AND THEN JUDGE

3   ORRICK DOWN THE HALL FROM YOU, AND THEN I LEARNED ANTITRUST LAW

4   FROM BOB RAVEN AT MORRISON FOERSTER.  AND WE APPLY THE CONLEY

5   VERSUS GIBSON STANDARD, WHICH I KNOW YOU'RE FAMILIAR WITH.

6              BUT UNDER THAT STANDARD, AND I THINK THIS IS WHERE

7   JUDGE LEGGE WENT WRONG, HE BASICALLY SAID THE PLAINTIFFS ARE THE

8   MASTERS OF THEIR OWN COMPLAINT; THEY CAN MAKE WHATEVER

9   ALLEGATIONS THEY WANT AS LONG AS THEY'RE CONCEIVABLE, THEY'RE

10  POSSIBLE, THEN IT WILL BE UP TO DISCOVERY TO SEE WHAT WILL BE

11  SORTED OUT.  AND THAT IS THE STANDARD THAT WAS APPLICABLE FOR

12  MANY YEARS, AND THAT'S BASICALLY A NOTICE STANDARD.

13             BUT THE SUPREME COURT TWO YEARS AGO, OR THREE YEARS

14  AGO NOW, IN TWOMBLY FUNDAMENTALLY CHANGED THAT.  AND THE SUPREME

15  COURT JUST 8 MONTHS AGO IN IQBAL REAFFIRMED WHAT IT SAID, AND

16  SAID, WE MEANT WHAT WE SAID, AND THAT THE OLD CONELY V. GIBSON

17  STANDARD SHOULD NOT BE APPLIED, ESPECIALLY IN COMPLEX AND

18  MASSIVE ANTITRUST CASES WHERE JUST BEING IN THE CASE AND BEING

19  SUBJECTED TO DISCOVERY IS AN ENORMOUS BURDEN.

20             IQBAL MAKES CLEAR, YOUR HONOR, THAT THE TWOMBLY

21  STANDARDS APPLY TO THE KEY QUESTIONS:  WHAT IS THE SCOPE OF THE

22  CONSPIRACY, AND WHO SHOULD BE A DEFENDANT.

23             AND OUR CONTENTION IS, ALTHOUGH THERE WERE ADEQUATE

24  PLEADINGS, FACT PLEADINGS, ABOUT A CONSPIRACY FOR THE TUBES,

25  THERE WERE NOT SUFFICIENT FACTUAL ALLEGATIONS, AS OPPOSED TO
```

1   CONCLUSIONS, FOR THE FINISHED PRODUCT CONSPIRACY, AND THIS MAKES

2   A HUGE DIFFERENCE.  IT MAKES A HUGE DIFFERENCE IN TERMS OF THE

3   SCOPE OF THE CASE, THE SCOPE OF DISCOVERY, THE APPLICABILITY OF

4   THE DIRECT PURCHASER RULE, THE STANDING RULES, AND THE SCOPE OF

5   THE FTAIA, THE FOREIGN TRADE ANTITRUST IMPROVEMENT ACT.

6           SO, JUDGE LEGGE STATED IN HIS OPINION ON PAGE 8:

7               "RESEARCH HAS NOT DISCLOSED ANY RELEVANT

8               NINTH CIRCUIT CASES INTERPRETING *TWOMBLY* AND

9               *IQBAL* IN ANTITRUST CONSPIRACY LITIGATION."

10          AND, UNFORTUNATELY, THAT'S JUST WRONG, BECAUSE THE

11  NINTH CIRCUIT SPECIFICALLY ADDRESSED THAT IN TWO CASES, THE

12  *KENDALL* CASE, 518 F.3D 1042, AND THIS IS WHAT THE ISSUE WAS

13  THERE:  THE NINTH CIRCUIT SAID THE QUESTION HERE IS WHETHER THE

14  PLAINTIFFS, QUOTE, "FAILED TO PLEAD EVIDENTIARY FACTS SUFFICIENT

15  TO ESTABLISH A CONSPIRACY."  THE COURT EMPHASIZED IN *KENDALL*

16  THAT THE COMPLAINT MUST CONTAIN, QUOTE:  "EVIDENTIARY FACTS,

17  WHICH IF TRUE WOULD ESTABLISH AN PROPER AGREEMENT."

18          AND THE COURT IN FOOTNOTE FIVE --

19          **THE COURT:**  IS THAT A MOTION TO DISMISS OR A MOTION

20  FOR SUMMARY JUDGMENT?

21          **MR. MILLER:**  I THINK IT'S A MOTION TO DISMISS.

22          AND THIS IS THE FUNDAMENTAL POINT:  IN THE OLD DAYS

23  *CONELY V. GIBSON* SAID, LET IT GO FORWARD, WE'RE GOING TO GET

24  INTO DISCOVERY, IF THE DEFENDANTS BELIEVE THEY DON'T BELONG

25  THERE, OR THE SCOPE OF THE CONSPIRACY ISN'T AS PLEADED, LET THEM

1    RAISE IT AT SUMMARY JUDGMENT.  BUT THE SUPREME COURT SAID THAT

2    DOESN'T WORK, THERE'S A HUGE COST TO THE COURTS, TO THE PUBLIC,

3    AND TO THE DEFENDANTS, ESPECIALLY IN TODAY'S WORLD OF ELECTRONIC

4    DISCOVERY, AND THAT THE COURT SHOULD PLAY MORE OF A GATEKEEPER

5    ROLE AT THE OUTSET OF THE CASE.

6            IN LOOKING AT THE ALLEGATIONS AND SORTING OUT WHAT

7    ARE LEGAL CONCLUSIONS VERSUS WHAT IS, QUOTE, "EVIDENTIARY

8    FACTS" -- AND THIS WAS REAFFIRMED, YOUR HONOR, JUST THREE MONTHS

9    AGO BY THE NINTH CIRCUIT IN THE CASE CALLED *WILLIAM GILLEY*,

10   G-I-L-L-E-Y, *ENTERPRISES VERSUS ATLANTIC RICHFIELD*, 588 F.3D --

11   I'M SORRY.  YEAH.  588 F.3D 659 WHERE THE COURT SAID:

12           "ON A MOTION TO DISMISS IN AN ANTITRUST

13           CASE, A COURT MUST DETERMINE WHETHER THE

14           ANTITRUST CLAIM IS PLAUSIBLE IN LIGHT OF BASIC

15           ECONOMIC PRINCIPLES."

16           SO, OUR POSITION IS THAT THE CLAIM ABOUT A FINISHED

17   PRODUCT CONSPIRACY, THAT IS THE COMPUTER MONITORS AND THE TVS,

18   MAKES NO ECONOMIC SENSE, AND THERE ARE NOT EVIDENTIARY FACTS,

19   EVIDENTIARY FACTS, NOT CONCLUSIONS, THAT SUPPORT A FINISHED

20   PRODUCT CONSPIRACY.

21           JUDGE LEGGE DID UNDERSTAND AND RECOGNIZE THAT THE

22   MANUFACTURING OF THE TUBES IS MOSTLY, IF NOT ALL, OVERSEAS.  IF

23   YOU WANT, I HAVE A PICTURE WHICH I COULD SHOW YOU -- WE GOT FROM

24   THE INTERNET -- OF A TUBE, AND THEN A MONITOR WITH ALL THE OTHER

25   COMPONENTS, IF THAT WOULD HELP YOU.

1        BUT THERE'S THE TUBE, WHICH IS MADE BY SOME

2   COMPANIES, AND THEN THERE IS THE TV, THE FINISHED PRODUCT, THE

3   TV OR THE COMPUTER MONITOR, WHICH HAS A LOT OF OTHER ELECTRONIC

4   COMPONENTS IN IT.

5        THERE'S CERTAIN COMPANIES THAT MAKE THE TUBES.  THEY

6   SELL THEM TO MANUFACTURERS THAT ASSEMBLE THEM WITH OTHER PARTS

7   AND MAKE THE FINISHED PRODUCTS, AND THOSE FINISHED PRODUCTS, FOR

8   THE MOST PART, ARE MADE TODAY IN ASIA, AND THEN THEY'RE SHIPPED

9   INTO THE UNITED STATES.  THOSE COMPANIES THAT ASSEMBLE THE

10  FINISHED PRODUCTS ARE SOMETIMES REFERRED TO AS ORIGINAL

11  EQUIPMENT MANUFACTURERS, OR OEMS.

12        NOW, JUDGE LEGGE, HE RECOGNIZED, AND WE DON'T

13  DISPUTE, WE NEVER DID DISPUTE, THAT THE PLAINTIFFS INTENDED TO

14  AND ATTEMPTED TO ALLEGE A CONSPIRACY BOTH AS TO THE COMPONENTS,

15  THE TUBES, AND TO THE FINISHED PRODUCTS.  WE UNDERSTAND THAT.

16  BUT WHAT OUR BASIC BEEF IS, IS THAT THE EVIDENTIARY FACTS LISTED

17  IN BOTH COMPLAINTS -- AND I'M NOT GOING -- I'M GOING TO JUST

18  MENTION A FEW IN BOTH, AND I'M ADDRESSING BOTH THE DIRECT AND

19  INDIRECT.

20        AS TO FINISHED PRODUCTS, THEY DON'T CROSS THE LINE.

21  THERE ARE INSUFFICIENT EVIDENTIARY FACTS THAT SUPPORT A

22  PLAUSIBLE CONSPIRACY.  WHY IS THAT?  BECAUSE, AS I SAID,

23  PARAGRAPH 227 OF THE INDIRECT PURCHASER COMPLAINT SPECIFICALLY

24  ADMITTED THAT THE FINISHED PRODUCT MARKET IS COMPETITIVE.

25        SO, WHY DO THE PLAINTIFFS DO THIS?  THEY CREATED AN

1 ARTIFICIAL CONSTRUCT WHICH THEY CALLED, QUOTE, CRT PRODUCTS,

2 CATHODE RAY TUBE PRODUCTS.  THAT ACTUALLY EMBRACES FOUR

3 DIFFERENT KINDS OF THINGS:  COLOR DISPLAY TUBES, WHICH ARE THE

4 TUBES THAT GO INTO THE COMPUTER MONITORS; COLOR PICTURE TUBES,

5 WHICH GO INTO THE TVS, AND THEY'RE TECHNICALLY DIFFERENT.

6 THEY'RE DIFFERENT PRODUCTS.  AND THEN FINISHED PRODUCTS, THE

7 COMPUTER MONITORS AND THE TVS.

8            THESE ARE VERY, VERY EXPERIENCED COUNSEL, AS YOU

9 KNOW.  THEY KNOW HOW TO PLEAD WHEN THEY WANT TO.  THEY MADE UP

10 THIS ARTFUL PLEADING CONSTRUCT CALLED CRT PRODUCTS.  AND WHY DID

11 THEY DO THAT?  I BELIEVE THEY DID IT TO AVOID AND EVADE

12 WELL-ESTABLISHED LEGAL RESTRICTIONS THAT HAVE BEEN DEVELOPED IN

13 THE CASE LAW OVER THE PAST COUPLE OF YEARS THAT PRECLUDE THEM

14 FROM SEEKING TO INCLUDE OVERSEAS SALES IN THE CALCULATIONS OF

15 WHAT THEY'RE TRYING TO PROVE THERE WAS OVERCHARGE ON.

16            I THINK THEY DID IT ON PURPOSE, AND THEY DID IT

17 ARTFULLY.  AND THEY PUT JUDGE LEGGE IN A UNTENABLE POSITION BY

18 CLAIMING THAT THERE WAS A CONSPIRACY BOTH AS TO THE TUBES AND

19 THE FINISHED PRODUCTS.  AND THEY JUST USED THIS TERM, CRT

20 PRODUCTS, SOMETIMES TO REFER TO THE TUBES, SOMETIMES TO REFER TO

21 THE PRODUCTS, AND SOMETIMES TO BOTH, AND THIS IS CONFUSING AND

22 MAKES IT IMPOSSIBLE FOR DEFENDANTS TO RESPOND, BECAUSE THERE ARE

23 SOME DEFENDANTS IN THIS CASE, OUT OF THE 50 THAT HAVE BEEN

24 NAMED, THAT DON'T EVEN MAKE THE TUBES, THAT BUY THE TUBES.

25 THERE ARE SOME THAT MAKES THE TUBES.

1          SO, ACCORDING TO THE THEORY OF THE PLAINTIFFS' CASE,

2    YOU HAVE BUYERS AND SELLERS IN THE SAME CONSPIRACY, AND THAT

3    DOESN'T MAKE SENSE.  IT'S NOT ECONOMICALLY PLAUSIBLE.  AND THE

4    NINTH CIRCUIT HAS SAID TO YOU AT THE BEGINNING OF THE CASE,

5    JUDGE, YOUR ROLE IS TO FIGURE OUT WHAT CLAIMS ARE ECONOMICALLY

6    PLAUSIBLE AND WHAT AREN'T, AND, IF THEY'RE NOT, THEY COULD BE

7    DISMISSED EARLIER THAN UNDER THE OLD REGIME.

8          IN THE ORAL ARGUMENT, ONE OF THE COUNSEL FOR THE

9    PLAINTIFFS SAID THE BUYERS OF THE TUBES, THAT IS THE ASSEMBLERS

10   OF THE MONITORS AND TVS ARE THE VICTIMS HERE.  AND MY CLIENT GOT

11   OUT OF THE TUBE BUSINESS, SPUN IT OFF AND DIVESTED IT IN 2001,

12   LONG BEFORE THE STATUTE OF LIMITATIONS, AND IT IS A BUYER OF

13   TUBES.

14         THERE ARE OTHERS -- AS I SAID, THERE ARE OTHER

15   DEFENDANTS THAT NEVER, NEVER MANUFACTURED TUBES, AND WE BELIEVE

16   THAT UNDER THE NEW REGIME, THESE KIND OF ISSUES CAN AND SHOULD

17   BE SORTED OUT AT THE OUTSET.  AND IF THE PLAINTIFFS HAVE A

18   CLAIM, WE BELIEVE IT IS A MUCH SMALLER, MORE NARROWLY FOCUSED

19   CASE, THAN THEY'RE TRYING TO GET THROUGH THE MOTION TO DISMISS

20   STAGE BY ARTFUL PLEADING.

21         THE SUPREME COURT RECOGNIZED ONE DANGER OF THAT IS IT

22   PUTS ENORMOUS PRESSURE ON DEFENDANTS WHO WERE -- WHO ARE THEN

23   EXPOSED TO ASTRONOMICAL LIABILITY IN THESE TREBLE DAMAGE CASES

24   TO SETTLE THEM.  AND, AS YOU KNOW, MOST OF THESE CASES GET

25   SETTLED.  BUT THE SUPREME COURT SAID THIS IS A -- THIS IS NOT

1   RIGHT, AND THE COURT SHOULD ACT MORE AS A GATEKEEPER UP FRONT.

2          LET ME -- I JUST WANT TO BRIEFLY MENTION SOME OF THE

3   FACTUAL ALLEGATIONS IN THE COMPLAINTS AND POINT OUT TO YOU THAT,

4   REALLY, WHEN YOU READ THEM, YOU WILL -- I HOPE YOU WILL AGREE

5   WITH ME THAT THEY ONLY RELATE TO THE TUBES, NOT THE FINISHED

6   PRODUCTS.

7          PARAGRAPH -- AND I'M TALKING NOW BRIEFLY OF THE

8   DIRECT PURCHASER COMPLAINT, BUT PARAGRAPH 137 TALKS ABOUT

9   MEETINGS OF THE CRT MAKERS.  THAT MEANS THE TUBE MAKERS.  AND I

10  WILL SAY THIS -- AND YOU'LL HEAR IT FROM MR. SAVERI, I'M SURE.

11  THIS IS A VERY UNUSUAL CASE, BECAUSE IN THIS CASE THE PLAINTIFFS

12  HERE KNOW MORE THAN THE DEFENDANTS.

13         THERE IS A COMPANY CALLED CHUNGHWA, WHICH IS

14  COOPERATING WITH THE GOVERNMENT IN ITS INVESTIGATION, AND

15  CHUNGHWA, APPARENTLY, HAS -- IS COOPERATING WITH THE PLAINTIFFS

16  AND PROVIDED THEM WITH LITERALLY HUNDREDS OF THOUSANDS OF PAGES

17  OF DOCUMENTS, MANY OF WHICH ARE IN CHINESE.  ALL RIGHT?

18         SO THEY HAVE HAD THE DETAILS AND FACTS ABOUT THIS

19  FOR -- THAT THE PLAINTIFFS HAD FOR A LONG TIME.  THEY ARE

20  CAPABLE OF, AND I THINK THEY KNOW -- THEY KNOW THAT WHATEVER

21  MEETINGS MAY HAVE TAKEN PLACE OVERSEAS RELATED TO TUBES, NOT TO

22  FINISHED PRODUCTS.  AND WE HAVE OTHER DEFENSES TO THE CLAIMS OF

23  LIABILITY.

24         BUT JUDGE LEGGE JUST MISSED ALL THAT OR IGNORED IT

25  AND DIDN'T DEAL WITH IT, BECAUSE HE JUST TOOK FOR GRANTED THAT

1   THERE WAS A FINISHED PRODUCT CONSPIRACY, AND THEN HE DIDN'T HAVE

2   TO DEAL WITH THE DIFFICULT LEGAL ISSUES WHICH ARE IN THIS CASE.

3   THOSE ARE THE INTERPLAY BETWEEN THE DIRECT PURCHASER RULE, THE

4   OLD *ILLINOIS BRICK* DIRECT PURCHASER RULE, WHICH THE NINTH

5   CIRCUIT JUST RECENTLY REAFFIRMED VERY STRONGLY IN THE *DELAWARE*

6   *VALLEY* CASE; THE JURISDICTIONAL LIMITATIONS IMPOSED BY THE

7   FTAIA, WHICH HAS BEEN THE SUBJECT OF SEVERAL IMPORTANT CASES

8   HERE IN THE NORTHERN DISTRICT:  IN THE *SUN VERSUS HYNIX* CASE, IN

9   THE *DRAM* CASE, AND A CASE IN DELAWARE INVOLVING INTEL, WHERE

10  COURTS HAVE MADE CLEAR WHERE -- IF YOU HAVE A COMPONENT OVERSEAS

11  AND IT'S SUBJECT TO A CARTEL OVERSEAS, AND IT'S MADE OVERSEAS,

12  DELIVERED OVERSEAS, PAID FOR OVERSEAS, AND IS A COMPONENT IN

13  SOMETHING THAT GETS ASSEMBLED AND THEN SHIPPED TO THE U.S., THE

14  SALES OF THOSE SALES ARE OUTSIDE THE JURISDICTION OF THE UNITED

15  STATES; THE PLAINTIFF CANNOT USE THOSE AS THE BASIS OF A DAMAGE

16  CALCULATION.  THAT'S HOW WE BELIEVE THE FTAIA HAS BEEN

17  INTERPRETED AND REQUIRES THAT.

18          JUDGE LEGGE DIDN'T REALLY ADDRESS THOSE ARGUMENTS

19  BECAUSE HE SAID, WELL, IF IT'S A FINISHED PRODUCT CONSPIRACY,

20  THE FINISHED PRODUCTS COME INTO THE U.S., THEY'RE IMPORTED HERE,

21  I DON'T HAVE TO DEAL WITH THOSE JURISDICTIONAL LIMITATIONS.  AND

22  WE THINK THAT IS A FUNDAMENTAL ERROR.

23          BUT, AGAIN, IF YOU LOOK AT THE FACTUAL ALLEGATIONS

24  AND YOU LOOK AT THEM, YOU WILL SEE THAT THEY REALLY ALL RELATE

25  TO TUBES.

1           DIRECT PURCHASER PARAGRAPH 137 TALKS ABOUT MEETINGS

2    OF THE CRT MAKERS.  PARAGRAPH 139 TALKS ABOUT THE TUBE MAKERS.

3    ONE FORTY-FOUR TALKS ABOUT AGREEMENTS ON THE PRICE OF THE TUBES.

4    AGAIN, ALL OVERSEAS.  ONE ELEVEN AND ONE HUNDRED FORTY-SIX TALK

5    ABOUT OUTPUT RESTRICTIONS OR ALLEGED AGREEMENTS ON THAT HAVING

6    TO DID WITH THE TUBES.

7           NOW, SOMETIMES THEY USE THE TERM "CRT PRODUCTS," BUT

8    THAT IS INTENTIONALLY VAGUE AND -- BUT THE FACTS REALLY RELATE

9    TO THE TUBES.

10           CHUNGHWA, AS I SAID, WE NOW ALL KNOW IS THE

11    COOPERATOR.  THEY DON'T MAKE FINISHED PRODUCTS.  THEY JUST MAKE

12    THE TUBES AND WHEN -- IF THE PLAINTIFFS SAY CHUNGHWA MET WITH

13    OTHER COMPANIES, IT WAS THE TUBE MAKERS, MEANING OVERSEAS, NOT

14    THE FINISHED PRODUCT MAKERS, WHO WERE GOING TO BE THE CUSTOMERS.

15    CHUNGHWA ONLY MAKES TUBES.  IT CAN'T BE PART OF A CONSPIRACY

16    ABOUT FINISHED PRODUCTS.

17           THE PLAINTIFFS CONCEDE THAT THEY HAVE NOT SUED MANY

18    OF THE MAJOR FINISHED PRODUCT SELLERS.

19           I AM OLD FASHIONED, YOUR HONOR.  SO, IN MY HOME, I

20    HAVE THE OLD, BIG, FAT CRT TVS, AND I HAVE A GENERAL ELECTRIC,

21    AND I HAVE AN RCA.  AND I INVITE MR. SAVERI OR MR. SIMON, THEY

22    CAN COME OVER AND WATCH TV WITH ME IF THEY WANT, BUT I BET THEY

23    HAVE NEW FLAT SCREENS.

24           BUT MY POINT IS THAT THEY DON'T NAME THOSE PEOPLE.

25    THEY DON'T ALLEGE THAT MOST OF THE MAJOR MANUFACTURERS AND

1  SELLERS OF THE FINISHED PRODUCTS ARE PART OF THE CONSPIRACY.

2  WELL, A CONSPIRACY INVOLVING JUST A FEW OR COMPANIES WITH

3  LIMITED MARKET SHARE DOESN'T MAKE ECONOMIC SENSE.

4          YOU ARE GOING TO HEAR FROM THEM, I UNDERSTAND, IN A

5  PRICE FIXING CASE, THE PLAINTIFFS DON'T HAVE TO ALLEGE THAT --

6  THEY DON'T HAVE TO ALLEGE A RELEVANT MARKET, PER SE.  THEY DON'T

7  HAVE TO.  OKAY?  BUT IF YOU THINK ABOUT IT, AND COURTS HAVE

8  SAID, LET'S LOOK AT THE MARKET SHARE OF THE ALLEGED PARTICIPANTS

9  TO SEE IF THIS ALLEGED CONSPIRACY MAKES ECONOMIC SENSE.  AND IF

10 YOU HAVE AN ALLEGED CONSPIRACY WITH 40 OR 50 -- EVEN 50 PERCENT

11 OF THE MARKET AND THE OTHER PLAYERS ARE NOT PART OF IT, THEN

12 THAT CONSPIRACY DOESN'T MAKE ECONOMIC SENSE.  IT'S NOT

13 PLAUSIBLE, AND THAT IS THE REALITY WITH RESPECT TO THE FINISHED

14 PRODUCT MARKET.

15         YOU DON'T SEE ANY MARKET SHARE DATA IN THEIR

16 COMPLAINTS ABOUT THE FINISHED PRODUCT MARKET.  YOU HAVE DIRECT

17 PURCHASER 112.  THAT PARAGRAPH TALKS ABOUT THE DEFENDANTS HERE,

18 SOME OF THEM 62 PERCENT OF THE TUBE MARKET, BUT THERE ARE NO

19 ALLEGATIONS ABOUT THE FINISHED PRODUCT MARKET.

20         YOU HAVE ALLEGATIONS ABOUT A GOVERNMENT

21 INVESTIGATION.  THOSE ARE ABOUT THE TUBE MARKETS.

22         AND I WOULD SAY THIS, YOU WILL HEAR SOME OTHER

23 JUDGES, CLAUDIA WILKEN HERE LET A CASE GO PAST MOTION TO DISMISS

24 BASED ON ALLEGATIONS OF A GOVERNMENT INVESTIGATION IN THE SRAM

25 MARKET.  SRAM IS A KIND OF MEMORY CHIP THAT GOES IN COMPUTERS.

1   IT'S A COMPONENT.

2          SO, AS YOU KNOW, YOUR HONOR, THE PLAINTIFFS, THEY

3   DON'T WAIT TO SEE HOW THE GOVERNMENT INVESTIGATION PANS OUT

4   BEFORE THEY FILE THE CLASS ACTIONS.  THEY DO IT LIKE THE -- THE

5   NEXT DAY.  SO AS SOON AS THERE'S A NEWS RELEASE ABOUT GOVERNMENT

6   INVESTIGATION OF THIS OR THAT, YOU START SEEING LAWSUITS.

7          WE HAD, I DON'T KNOW, 50, 60, 70 -- WE HAVE A LOT OF

8   LAWSUITS IN THIS MATTER THAT ALL GOT CONSOLIDATED BEFORE YOU.

9          SO *SRAM*, THEY -- JUDGE LEGGE RELIED ON THAT OPINION.

10  MY UNDERSTANDING IS THAT THE GOVERNMENT INVESTIGATED THAT AND

11  CLOSED THE INVESTIGATION.  THERE ARE NO CRIMINAL CHARGES IN THAT

12  CASE.  BUT THE CIVIL CASE GOES ON.

13         *FLASH MEMORY*, AGAIN, ANOTHER CASE BEFORE JUDGE

14  ARMSTRONG HERE, NEWS RELEASE, DOJ INVESTIGATION, CIVIL LAWSUITS

15  FILED.  GOVERNMENT, I BELIEVE, ANNOUNCED INVESTIGATION OF

16  CRIMINAL CONDUCT CLOSED.  CASE GOES ON.

17         *LCD*, THAT'S A DIFFERENT PRODUCT.  IN FACT, YOU HAVE

18  THEM HERE ON YOUR DESK.  THOSE ARE THE FLAT SCREEN COMPUTER

19  MONITORS AND TVS.  THAT IS A CASE PENDING BEFORE JUDGE ILLSTON.

20         AND IN THAT CASE THERE HAVE BEEN CRIMINAL PLEAS.  SO

21  I BELIEVE AT LEAST FOUR COMPANIES HAVE ADMITTED TO SOME CRIMINAL

22  WRONGDOING WITH RESPECT TO THE FLAT PANEL MARKET, NOT THE CRT

23  MARKET.

24         THERE IS AN ERROR IN THE DIRECT PURCHASER COMPLAINT

25  HERE.  PARAGRAPH 124 MAKES AN ALLEGATION THAT THERE WAS A

1  CRIMINAL PLEA BY AN ENTITY CALLED LP DISPLAY.  I'M SURE THAT WAS

2  AN ERROR.  BUT IT'S FALSE, BECAUSE THAT ENTITY DID NOT PLEAD

3  GUILTY.  AND, HOPEFULLY, PLAINTIFFS, WHEN YOU ASK THEM TO AMEND

4  THEIR COMPLAINT, WILL CORRECT THAT.

5            ANOTHER ENTITY THAT'S INVOLVED IN THE LCD MARKET DID

6  PLEAD GUILTY, BUT NOT THE ONE THAT MAKES TUBES, NOT THE ONE THAT

7  THEY NAMED IN THIS CASE.

8            THERE ARE NO CRIMINAL PLEAS RELATING TO THE CRT

9  MARKET YET.  THERE ARE TWO INDIVIDUALS, THEY ARE FORMER

10 EXECUTIVES OF CHUNGHWA, THE COOPERATOR, WHO, APPARENTLY, DID NOT

11 COOPERATE WITH THE GOVERNMENT.  THEY HAVE BEEN INDICTED.  THOSE

12 INDICTMENTS ARE PENDING.  BUT THERE ARE NO TRIALS, AND THERE ARE

13 NO PLEAS BY ANY COMPANY.

14            SO THIS CASE IS DIFFERENT, AND IT'S IN A DIFFERENT

15 POSTURE THAN JUDGE ILLSTON FACED WHEN SHE DECIDED THE SECOND

16 MOTION.  AND, IF YOU RECALL, IN THE FIRST MOTION TO DISMISS IN

17 THE _LCD_ CASE, SHE DID GRANT IT IN PART.  AND THEN LATER THEY

18 REPLED, AND SHE DENIED THE MOTION TO DISMISS, AND THAT CASE IS

19 GOING FORWARD.  BUT BY THE TIME SHE DENIED MOTION TO DISMISS THE

20 SECOND TIME, THERE ALREADY HAD BEEN SEVERAL DEFENDANTS WHO HAD

21 ADMITTED GUILT TO SOME DEGREE OR WITH RESPECT TO THE LCD PANEL

22 MARKET.

23            MY CLIENT IS NOT A SUBJECT IN THAT CRIMINAL CASE.

24 DIDN'T GET A GRAND JURY SUBPOENA.  AND RIGHT NOW I'M OUT UNDER A

25 TOLLING AGREEMENT WITH THESE GENTLEMEN, WHICH I HOPE I'LL STAY

1   OUT OF THAT CASE.  BUT, IN OTHER WORDS, THEY RELY ON WHAT'S

2   GOING ON IN A DIFFERENT CASE WITH DIFFERENT FACTS, AND THAT

3   SHOULDN'T BE A BASIS FOR GOING FORWARD HERE WITH RESPECT TO

4   DIFFERENT PRODUCTS.

5           THE CLOSEST THAT THE DIRECT PURCHASER PLAINTIFFS

6   COME, YOUR HONOR, TO TALKING ABOUT THE FINISHED PRODUCT IS IN

7   PARAGRAPHS 144 AND 146.  AND THERE WHAT THEY SAY IS WHEN THE

8   PEOPLE WERE MEETING AND WHATEVER -- WHEN THE PEOPLE WERE MEETING

9   TO DISCUSS TUBES, THEY TOOK INTO ACCOUNT -- THEY TOOK INTO

10  ACCOUNT WHAT THE PRICE MIGHT BE OF THE FINAL PRODUCTS, BUT

11  THAT -- TO MY MIND, YOUR HONOR, THAT IS NOT SUFFICIENT TO ALLEGE

12  A CONSCIOUS COMMITMENT TO AN ILLEGAL SCHEME TO FIX THE FINISHED

13  PRODUCT PRICES, AND THAT'S WHAT'S REQUIRED FOR CONSPIRACY

14  ALLEGATIONS, A MEETING OF THE MINDS, A CONSCIOUS COMMITMENT TO

15  THE SCHEME TO FIX A PARTICULAR PRODUCT.

16          SO I THINK WHAT THE PLAINTIFFS DID ARTFULLY IS LUMP

17  THESE TWO THINGS TOGETHER, AND, AS I SAID, WHY DID THEY DO THAT?

18  THEY DID THAT TO TRY TO AVOID THE LIMITATIONS ON THE ABILITY TO

19  RECOVER ON SALES OF PRODUCTS OVERSEAS, BECAUSE, AS THEY SAID IN

20  THEIR COMPLAINT, EVERY HOUSEHOLD IN THE UNITED STATES HAS SOME

21  CRT PRODUCT PROBABLY.

22          SO IF THEY CAN GET BY THE MOTION TO DISMISS, THEN

23  THEY ARE LOOKING AT AN -- A MASSIVE CASE, A MASSIVE CASE WHICH

24  WE HAVE TO DEFEND AGAINST.  AND *TWOMBLY* BASICALLY SAID, JUDGE,

25  YOU SHOULDN'T LET THAT HAPPEN AT THE OUTSET IF THE CLAIMS ARE

1  NOT PLAUSIBLE.  OKAY?

2          SO, IT'S OUR VIEW THAT, GIVEN THE MARKET STRUCTURE,

3  GIVEN THE FACT THAT YOU HAVE DEFENDANTS WHO ONLY MADE THE

4  FINISHED PRODUCTS AND NEVER MADE THE TUBES, AND SOME WHO STOPPED

5  MAKING THE TUBES ALMOST TEN YEARS AGO, THAT THE PLAINTIFFS'

6  ALLEGATIONS, IF YOU LOOK AT THEM IN THOSE COMPLAINTS, DON'T

7  CROSS THE LINE, SO TO SPEAK, AS THE SUPREME COURT MENTIONED OR

8  REFERRED TO.  APPLYING *TWOMBLY*, IT WOULD MAKE SENSE, EVEN IF YOU

9  ACCEPT, WHICH WE DO, THAT THERE ARE SUFFICIENT ALLEGATIONS OF A

10  TUBE CONSPIRACY.  IT MAKES SENSE THAT WHOEVER WAS DOING THAT

11  WOULD AT LEAST CONSIDER, WELL, CAN I RAISE THE PRICE, AND IS IT

12  GOING TO HAVE AN IMPACT ON MY BUYERS WHEN THEY TRY TO SELL THE

13  ULTIMATE PRODUCT?

14          BUT THAT'S DIFFERENT.  THAT IS WHAT THE PLAINTIFFS

15  ALLEGE.  BUT THAT'S DIFFERENT, AND I BELIEVE NOT SUFFICIENT

16  UNDER THE PLEADING STANDARD OF MEETING OF THE MINDS AS TO A

17  CONSPIRACY AS TO A PARTICULAR PRODUCT.

18          BECAUSE JUDGE LEGGE ERRED IN THIS FUNDAMENTAL WAY, HE

19  REALLY -- HE DIDN'T ADDRESS A NUMBER OF, I THINK, INTERESTING

20  ISSUES THAT I THINK ARE IMPORTANT IN THIS CASE, THE ISSUE OF

21  *ILLINOIS BRICK* STANDING, THE ISSUE OF THE JURISDICTIONAL

22  LIMITATIONS IMPOSED BY THE FTAIA, THE PRUDENTIAL STANDING

23  REQUIREMENTS UNDER THE *ASSOCIATED GENERAL CONTRACTOR* CASE.

24          HE DIDN'T EVEN CITE OR TAKE INTO ACCOUNT KEY CASES

25  THAT RECOGNIZE THESE LIMITATIONS.  THE NINTH CIRCUIT CASE OF --

1   IT'S CALLED *IN RE: DRAM* LITIGATION.  THAT'S ANOTHER MEMORY CHIP.

2   IT'S ANOTHER COMPONENT CASE, WHICH IS AT 546 F.3D 981.  HE

3   DIDN'T LOOK AT THE MOST RECENT NINTH CIRCUIT CASE ON DEFINING

4   AND LIMITING WHO IS A, QUOTE, DIRECT PURCHASER, FOR *ILLINOIS*

5   *BRICK* RULES AS THE *DELAWARE VALLEY* CASE.  HE DIDN'T LOOK AT THE

6   *SUN VERSUS HYNIX* DECISIONS WHERE YOU -- YOU HAD A CASE WHERE YOU

7   HAD A U.S. MANUFACTURER, SUN MICROSYSTEMS, BASED HERE, THEY WERE

8   SUING FOR ANTITRUST TREBLE DAMAGES BASED UPON THEIR PURCHASES OF

9   DRAM, A COMPONENT THAT GOES INTO A COMPUTER, JUST LIKE A TUBE IS

10  A COMPONENT THAT GOES IN THE MONITOR.

11          AND IN TWO IMPORTANT DECISIONS, JUDGE HAMILTON HERE

12  RULED NO DAMAGE CLAIMS CAN BE ASSERTED BASED UPON SALES OF THE

13  COMPONENTS THAT WERE DELIVERED OVERSEAS AND PAID FOR OVERSEAS.

14          AND IT'S OUR BELIEF THAT IF YOU APPLY THOSE RULES IN

15  THIS CASE, WE WOULD HAVE A MUCH NARROWER CASE.  THERE IS A CASE,

16  BUT IT'S A NARROWER CASE, AND WE BELIEVE THAT'S THE REAL CASE,

17  AND THE PLAINTIFFS DID THEIR BEST AND THEY WERE ARTFUL IN TRYING

18  TO AVOID THAT.

19          SO HERE'S WHAT WE ASK YOU TO DO:  WE ASK YOU TO, IF

20  YOU AGREE WITH US, TO RULE THAT JUDGE LEGGE ERRED IN HIS

21  DETERMINATION THAT THERE WERE ADEQUATE PLEADINGS, MEETING THE

22  *TWOMBLY*, *IQBAL* STANDARD WITH RESPECT TO THE FINISHED PRODUCTS.

23          WE ASK YOU THEN TO REMAND THIS TO HIM, AS YOU HAVE

24  THE POWER TO DO UNDER RULE 53(F), TO RECONSIDER THE LEGAL

25  ARGUMENTS ON STANDING, AND FTAIA, AND OTHER ISSUES.  WE'RE NOT

```
 1   ASKING YOU TO ADDRESS THOSE TODAY.  WE'RE ASKING YOU, IF YOU

 2   AGREE WITH US, TO REMAND THE CASE, BECAUSE HE REALLY DIDN'T

 3   CONSIDER THEM.  HE BASICALLY GLOSSED OVER THAT BY AGREEING THAT

 4   THERE WERE SUFFICIENT ALLEGATIONS OF FINISHED PRODUCTS.

 5            I HAVE A PROPOSED ORDER.  IT'S VERY SHORT, LESS THAN

 6   ONE PAGE, WHICH I'LL GIVE TO MR. SAVERI AND MR. -- MARIO.

 7            AND IF I MAY HAND ONE TO YOU?  AND THAT'S OUR BASIC

 8   BEEF.

 9            THERE ARE OTHER -- THERE'S ONE OTHER MAJOR LEGAL

10   ISSUE, WHICH I'LL JUST BRIEFLY MENTION, AND THAT IS THAT JUDGE

11   LEGGE, HE RECOGNIZED -- IN FACT, HE ADMITTED ON PAGE 21 THAT THE

12   PLAINTIFFS HAVE NOT ALLEGED FRAUDULENT CONCEALMENT ON A

13   DEFENDANT-BY-DEFENDANT BASIS.

14            SO HE ADMITTED THAT.  BUT HE SAID, I DON'T THINK THEY

15   HAVE TO; DOESN'T MAKE SENSE TO ME.  AND, IN DOING SO, THIS IS

16   THE JUDGE'S OTHER FUNDAMENTAL LEGAL ERROR.  HE IGNORED WHAT WE

17   CONSIDER TO BE THE CONTROLLING NINTH CIRCUIT LEGAL PRECEDENT,

18   THE *BARKER VERSUS AMERICAN MOBILE POWER CORP. COMPANY* CASE.

19   IT'S 64 F.3D 1397.  AND THIS IS WHAT THE NINTH CIRCUIT STATED.

20   IT STATED:

21              "PLAINTIFFS CANNOT USE THE FRAUDULENT

22              CONCEALMENT BY ONE DEFENDANT AS A MEANS TO TOLL

23              THE STATUTE OF LIMITATIONS AGAINST OTHER

24              DEFENDANTS."

25            SO HERE THE FIRST OF THESE CASES WAS FILED IN 2007,
```

1   AND, AS YOU KNOW, THERE'S A FOUR-YEAR STATUTE OF LIMITATIONS.

2          SO, IN OUR VIEW, THE CASE SHOULD BE LIMITED TO

3   PURCHASES AND OVERCHARGES, IF THEY CAN PROVE ANY, OVERCHARGES ON

4   PURCHASES BY THE PLAINTIFFS FROM NOVEMBER 2003 FORWARD, GOING

5   BACK FOUR YEARS.

6          THERE ARE MANY CASES THAT SAY THE STATUTE OF

7   LIMITATIONS IS IMPORTANT.  DEFENDANTS SHOULD NOT BE PUT TO THE

8   BURDEN OF DEFENDING AGAINST STALE CLAIMS, AND THAT IT IS THE

9   BURDEN OF THE PLAINTIFF TO PROVE FRAUDULENT CONCEALMENT.

10         *CONMAR*, WHICH IS THE LEADING NINTH CIRCUIT CASE, OR

11   ONE OF THEM, SAYS PLAINTIFFS MUST PROVE AN AFFIRMATIVE

12   MISREPRESENTATION TO THE PLAINTIFF, TO THE PLAINTIFF BY THE

13   DEFENDANT.  AND WHEN YOU LOOK AT THE FRAUDULENT CONCEALMENT

14   ALLEGATIONS, THAT -- THOSE REQUIREMENTS ARE JUST NOT MET.  IN

15   FACT, JUDGE LEGGE ADMITTED THERE ARE NOT FRAUDULENT CONCEALMENT

16   ALLEGATIONS WITH RESPECT TO EACH OF THE 50 DEFENDANTS.  AND MY

17   CONTENTION IS, EVEN AS TO THE ONES THAT THEY DID DO, AND THEY

18   DID HAVE SOME ABOUT LG, THEY'RE NOT SUFFICIENT.

19         NOW, HE JUST SAID, I DON'T THINK THAT THAT MAKES

20   SENSE.  IT DOESN'T GIBE, IN MY MIND, WITH THE GENERAL CONSPIRACY

21   RULE THAT THE ACT OF ONE CONSPIRATOR WITHIN THE SCOPE OF THE

22   CONSPIRACY IS ATTRIBUTABLE TO ALL CONSPIRATORS.

23         SO HE JUST SAID -- HE DIDN'T EVEN CITE THIS CASE.  IT

24   WAS ARGUED TO HIM, BUT HE JUST SAID IT DOESN'T SEEM TO ME TO

25   APPLY IN A CONSPIRACY CASE.

1          BUT WE ARGUED TO HIM AND WE POINTED OUT THAT THE

2   *BARKER* CASE, WHICH IS AN ERISA CASE, IT IS NOT AN ANTITRUST

3   CASE, BUT FOR THE STATEMENT I READ, IT RELIES ON AT LEAST THREE

4   CASES WHICH ARE CONSPIRACY CASES, RICO CONSPIRACY, SECURITIES

5   FRAUD AND RICO, STATE LAW CONSPIRACIES.

6          SO THE NINTH CIRCUIT KNEW WHAT IT WAS DOING WHEN IT

7   APPLIED THAT RULE AND ADOPTED IT AND SAID THAT THAT IS THE RULE

8   IN THE NINTH CIRCUIT.

9          I ALSO APPRECIATE YOU'LL PROBABLY HEAR THERE ARE

10  OTHER CIRCUITS THAT HAVE A DIFFERENT RULE.  THE SIXTH CIRCUIT.

11  BUT OUR CONTENTION IS, YOUR HONOR, THAT UNTIL THE NINTH CIRCUIT

12  CHANGES THE LAW HERE, *BARKER* IS THE CONTROLLING PRECEDENT.  AND

13  JUDGE LEGGE ADMITTED THAT THE COMPLAINTS ARE DEFECTIVE UNDER THE

14  *BARKER* RULE.

15         SO THAT'S THE SECOND FUNDAMENTAL POINT.

16         I WILL LEAVE FOR YOUR HONOR -- I THINK SOME OF THE

17  OTHER DEFENDANTS WOULD LIKE TO RAISE VERY BRIEFLY ISSUES ABOUT

18  WHAT I'LL CALL LUMPING TOGETHER OF DIFFERENT DEFENDANTS AND

19  DIFFERENT CORPORATE GROUPS, BECAUSE THAT'S ANOTHER PROBLEM, IN

20  OUR VIEW, WITH JUDGE LEGGE'S RULING.

21         HE JUST BASICALLY SAID, I'M GOING ACCEPT VAGUE

22  ALLEGATIONS OF AGENCY, THAT IS, YOU KNOW, ONE COMPANY WITHIN A

23  CORPORATE FAMILY ACTED FOR ALL OF THEM.  WE DON'T THINK THAT'S

24  THE LAW.  AND I KNOW THAT THE PHILIPS COUNSEL HAS REASONS WHY

25  YOU SHOULD DISREGARD JUDGE LEGGE'S RELIANCE ON A NINTH CIRCUIT

1  CASE CALLED *WEINSTEIN*, WHICH IS A -- IT SPECIFICALLY SAYS IT IS

2  NOT A PRECEDENTIAL DECISION.  AND OTHERS, I THINK, CAN ADDRESS

3  THAT.

4         THEN I THINK THOSE ARE OUR FUNDAMENTAL PROBLEMS.

5         **THE COURT:**  TELL ME, WHAT IS YOUR DEFINITION AND WHAT

6  ARE THE PARAMETERS OF THE WORD "PLAUSIBLE"?

7         **MR. MILLER:**  WELL, AS YOU SEE OR YOUR CLERKS RESEARCH

8  THE *TWOMBLY* DECISION, YOU WILL SEE DIFFERENT JUDGES PROBABLY

9  HAVE A DIFFERENT THRESHOLD FOR WHAT IS REQUIRED.  BUT I -- TO

10  ME, IT'S EVIDENCE -- I'M SORRY.  YEAH, EVIDENTIARY FACTS THAT

11  MAKE YOU BELIEVE THAT YOU'RE GOING TO, WITH DISCOVERY, SHOW AN

12  ILLEGAL AGREEMENT.

13         SO IT IS A HIGHER THRESHOLD.  IT'S NOT PROBABILITY.

14  I KNOW THAT.  BUT IT'S NOT POSSIBLE OR CONCEIVABLE OR MAYBE.  I

15  DON'T KNOW IF THAT ANSWERS YOUR QUESTION.

16         **THE COURT:**  WOULD YOU CALL IT AN AMBIGUOUS TERM?

17         **MR. MILLER:**  I THINK COURTS HAVE STRUGGLED TO DEFINE

18  IT.  I THINK I'LL PUT IT THIS WAY:  FINISHED PRODUCT CONSPIRACY

19  IS NOT PLAUSIBLE GIVEN THE FACTS ALLEGED.  THAT, I CAN TELL YOU.

20  I KNOW THAT.

21         **THE COURT:**  HOW DO YOU KNOW THAT?

22         **MR. MILLER:**  WELL, I BELIEVE THAT, YOUR HONOR.

23         **THE COURT:**  THANK YOU.

24         **MR. MILLER:**  OKAY.  UNLESS -- DO YOU HAVE ANY OTHER

25  QUESTIONS?

1          **THE COURT:**  NO, THAT'S FINE.

2          ANYBODY ELSE?

3          **MR. SIMMONS:**  JUST A MINUTE, YOUR HONOR.

4          **THE COURT:**  SURE.

5          **MR. SIMMONS:**  THANK YOU.  IAN SIMMONS, O'MELVENY &

6    MYERS, FOR SAMSUNG ELECTRONICS CORPORATION AND SAMSUNG

7    ELECTRONICS OF AMERICA.

8          THANK YOU, YOUR HONOR, FOR HEARING US TODAY.  I'M

9    GOING TO BE JUST A MINUTE AND A HALF, HOPEFULLY.

10         MY CLIENTS, SAMSUNG ELECTRONICS CORP. AND SAMSUNG

11   ELECTRONICS CORP. OF AMERICA DO NOT MAKE THE TUBES, WHAT

12   MR. MILLER CALLED THE INPUT, THE COMPONENT.  THE PLAINTIFFS

13   DON'T CONTEST OTHERWISE.  THEY DON'T ALLEGE WE MAKE TUBES.  THEY

14   DON'T DENY THAT WE DO NOT.

15         THE SECOND *TWOMBLY* CASE FROM THE SUPREME COURT THAT

16   CAME DOWN LAST TERM, YOUR HONOR, THE *IQBAL* CASE WRITTEN BY

17   JUSTICE KENNEDY, *IQBAL* BUILDS UPON *TWOMBLY*, AND IT MAKES CLEAR,

18   IT DOESN'T JUST REPEAT, WHAT IS IN THE *TWOMBLY* CASE.

19         THE SUPREME COURT IN *IQBAL* SAYS THAT THE *TWOMBLY*

20   STANDARD, EVIDENTIARY FACTS SHOWING UNDER RULE 8, USES THE VERB

21   "SHOW," FACTS THAT SHOW AN ENTITLEMENT TO A CLAIM FOR RELIEF,

22   THOSE FACTS SHOULD APPLY TO EACH DEFENDANT THAT IS HAULED INTO

23   COURT FROM WHOM THE AGGRIEVED -- PURPORTED AGGRIEVED PARTY SEEKS

24   A CLAIM FOR RELIEF.

25         I URGE THE COURT TO READ *IQBAL*.  *IQBAL* MAKES CLEAR

1    THAT *TWOMBLY* STANDARD APPLIES TO EACH OF THE DEFENDANTS HAULED

2    IN HERE.

3            MY TWO CLIENTS, YOUR HONOR, ARE BUYERS OF THE TUBES.

4    ALL OF THE EVIDENTIARY FACTS, WHEN YOU GO THROUGH AND SCRUTINIZE

5    THE COMPLAINT, THE EVIDENTIARY FACTS ABOUT MEETINGS, THE

6    EVIDENTIARY FACTS ABOUT THE CHUNGHWA INDICTMENT ALL PERTAIN TO

7    TUBES, A PRODUCT THAT MY TWO CORPORATE CLIENTS BUY, THEY DON'T

8    MAKE, AND THEY DON'T SELL.  WHY WOULD WE CONSPIRE TO PAY MORE

9    FOR A PRICE THAT WE BUY?

10           WE SHOULD NOT BE IN THIS CASE.  WE SHOULD NOT BE

11   SUBJECT TO THE RULE THAT LET THE PLAINTIFFS HAVE DISCOVERY.

12   THESE ARE BIG COMPANIES.  MR. MILLER TOUCHED ON THE BURDENS

13   INVOLVED IN ELECTRONIC DISCOVERY.  IT'S NOT RIGHT.  WE SHOULDN'T

14   BE HERE.  WE SHOULD BE KNOCKED OUT.  AND I RESPECTFULLY URGE YOU

15   TO SEND IT BACK TO JUDGE LEGGE FOR THAT REASON.

16           A COUPLE OF OTHER QUICK POINTS.

17           MR. MILLER TOUCHED ON THE BLURRING TOGETHER OF

18   CORPORATE ENTITIES.  WHEN YOU GO THROUGH THE COMPLAINT, IT IS

19   REPLETE, BOTH OF THEM, REPLETE WITH VAGUE TERMS LIKE "SAMSUNG."

20   WHICH SAMSUNG ARE THEY TALKING ABOUT?  ARE THEY TALKING ABOUT

21   SAMSUNG ELECTRONICS OF AMERICA?  SAMSUNG ELECTRONICS

22   CORPORATION?  MY TWO CLIENTS?  ARE THEY TALKING ABOUT THE

23   ENTITIES REPRESENTED BY MR. MCGINNIS AT SHEPPARD MULLIN, WHICH

24   MY TWO ENTITIES ONLY HAVE A 20 PERCENT OWNERSHIP INTEREST IN?

25           THEY'RE NOT SUBSIDIARIES.  THIS IS NOT A

1  PARENT-SUBSIDIARY RELATIONSHIP.  THEY DO NOT PLEAD FACTS SAYING

2  THEY ARE MY AGENT.

3          THERE ARE SOME VAGUE CONCLUSORY ALLEGATIONS SAYING

4  SAMSUNG DOMINATED AND CONTROLLED SDI, BUT THAT'S A LEGAL

5  CONCLUSION.  THEY DON'T SHOW -- THE NINTH CIRCUIT IS ABSOLUTELY

6  CLEAR ABOUT THIS, AND WE BRIEFED THIS CASE EXTENSIVELY.

7          *CALIFORNIA VERSUS NRG ENERGY*, 391 F.3D 1011, 1024.

8  ALLEGATIONS LIKE DOMINATING AND CONTROL ARE INSUFFICIENT.  THE

9  *U.S. VERSUS BESTFOODS* CASE, 524 US 51 AT 61 AND 62, 1998 SUPREME

10 COURT CASE, SAID EVEN IN A WHOLLY-OWNED SUBSIDIARY, WHICH IS NOT

11 THE CASE BETWEEN MY TWO CLIENTS AND THE SAMSUNG -- THE SDI

12 ENTITY, WHICH DOES MAKE TUBES -- FACTS HAVE TO BE PLEADED TO

13 OVERCOME THE PRESUMPTION OF SEPARATENESS.

14         SO, YOUR HONOR, I WOULD JUST ASK YOU TO TAKE A CLOSE

15 LOOK.  THERE IS RELIEF YOU CAN GRANT HERE.  THERE ARE PARTIES

16 THAT SHOULD BE DISMISSED FROM THIS CASE, AND MY TWO CLIENTS ARE

17 TWO OF THEM.  *IQBAL* MADE THAT CLEAR.  *TWOMBLY* APPLIES ON A

18 PARTY-BY-PARTY BASIS.

19         THANK YOU FOR YOUR TIME.

20     **MR. LAU:**  LUCIUS LAU FROM WHITE & CASE, REPRESENTING

21 THE TOSHIBA ENTITIES.  MAY IT PLEASE THE COURT?  I'M GOING TO

22 RESPOND TO AN ISSUE THAT HAS NOT BEEN FULLY BRIEFED, AND THIS

23 PERTAINS TO OUR ARGUMENT THAT THE ALLEGATIONS MADE BY THE

24 PLAINTIFFS THAT MAKE THE EXISTENCE OF A CRT ANTITRUST CONSPIRACY

25 PLAUSIBLE, THOSE ALLEGATIONS DON'T APPLY TO US.  THE ALLEGATIONS

1    MADE AGAINST THE TOSHIBA ENTITIES ARE VERY DIFFERENT.  THEY'RE

2    FAR, FAR NARROWER.

3           I'M NOT GOING TO GO INTO THOSE DIFFERENCES HERE

4    BECAUSE THEY ARE FULLY EXPLAINED IN OUR BRIEF.  WHAT I WOULD

5    LIKE TO DISCUSS VERY QUICKLY IS HOW THE INDIRECT PLAINTIFFS HAVE

6    RESPONDED TO OUR ARGUMENT.

7           IF YOU LOOK AT PAGE TWO OF THEIR RESPONSE BRIEF, THEY

8    STATE AS FOLLOWS, QUOTE:

9              "CONTRARY TO FUNDAMENTAL PLEADING

10             PRINCIPLES, THE TOSHIBA DEFENDANTS SEEK TO

11             ISOLATE PLAINTIFFS' TOSHIBA-SPECIFIC ALLEGATIONS

12             FROM THE TOTALITY OF THE FACTS ALLEGED AND

13             MISCHARACTERIZED THEM AS CONCLUSORY," END QUOTE.

14          IN SUPPORT OF THIS PROPOSITION, THEY CITE TO THE

15    SUPREME COURT'S 1962 DECISION IN *CONTINENTAL ORE COMPANY*.

16          YOUR HONOR, *CONTINENTAL ORE* DID NOT INVOLVE PLEADING

17    STANDARDS.  THAT CASE INVOLVED THE SUBSTANTIVE LAW OF

18    CONSPIRACY.  IF YOU LOOK AT PAGE 699 OF THE *CONTINENTAL ORE*

19    DECISION IT STATES AS FOLLOWS, QUOTE:

20             "THE DUTY OF THE JURY WAS TO LOOK AT THE

21             WHOLE PICTURE AND NOT MERELY AT THE INDIVIDUAL

22             FIGURES IN IT."  END QUOTE.

23          SO JUST IN RESPONDING TO THE INDIRECT PURCHASERS'

24    ARGUMENT, ONE DOES NEED TO LOOK AT, SPECIFICALLY, WHAT ARE THE

25    ALLEGATIONS MADE AGAINST EACH INDIVIDUAL DEFENDANT.

1          *TWOMBLY* FOOTNOTE TEN SAYS, A COMPLAINT, IN ORDER TO

2    PROVIDE ADEQUATE NOTICE, NEEDS TO IDENTIFY A SPECIFIC TIME, A

3    SPECIFIC PLACE, AND A SPECIFIC PERSON, AND THAT HASN'T BEEN

4    SATISFIED HERE WITH RESPECT TO THE TOSHIBA ENTITIES.

5          THANK YOU VERY MUCH, YOUR HONOR.

6          **MR. KESSLER:**  GOOD MORNING, AGAIN, YOUR HONOR.

7    JEFFREY KESSLER.  I REPRESENT THE PANASONIC ENTITIES.

8          PANASONIC NORTH AMERICA IS A SALES COMPANY.  IT

9    DOESN'T MANUFACTURE THE TUBES.  IT DOESN'T MANUFACTURE THE

10   TELEVISIONS.  IT BUYS TELEVISIONS, AND IT SELLS TELEVISIONS.

11         THERE IS ONE ALLEGATION, ONE PARAGRAPH IN THE ENTIRE

12   DIRECT PURCHASER COMPLAINT AND ONE IN THE INDIRECT PURCHASER

13   COMPLAINT RELATING TO THIS COMPANY.  JUST ONE.

14         HERE'S WHAT THEY SAY ENTIRELY IN THE INDIRECT CASE,

15   182: "PANASONIC NA," THAT'S MY CLIENT, "WAS REPRESENTED AT

16   THOSE MEETINGS" -- THEY HAD A VARIETY OF TUBE MEETINGS -- "AND

17   WERE A PARTY TO THE AGREEMENTS ENTERED AT THEM."  WHOLLY

18   CONCLUSORY.

19         THERE'S NO WAY THAT CAN MEET A *TWOMBLY* STANDARD.  ALL

20   THEY DID IS MAKE ALLEGATIONS ABOUT OTHER COMPANIES AND THEN

21   THROW IN A SENTENCE THAT SAYS, OH, YOU WERE REPRESENTED AT THOSE

22   MEETINGS AND YOU WERE IN THE CONSPIRACY.  IF ANYTHING IS CLEAR

23   UNDER *TWOMBLY*, THAT IS NOT ENOUGH FACTUAL PLEADING UNDER ANY

24   STANDARD.  THEN IT SAYS:

25         "TO THE EXTENT PANASONIC NA SOLD OR

1          DISTRIBUTED CRT PRODUCTS TO DIRECT PURCHASERS,

2          THEY PLAYED A SIGNIFICANT ROLE IN THE

3          CONSPIRACY."

4          SO THE MERE FACT THAT WE SOLD TELEVISIONS PUTS US IN

5     THE CONSPIRACY.  YOUR HONOR, I WOULD SUBMIT THAT CAN'T POSSIBLY

6     BE ENOUGH TO SUBJECT THIS COMPANY TO YEARS OF MASSIVE ANTITRUST

7     LITIGATION.

8          NOW, IN THE -- THAT WAS THE INDIRECT CASE.

9          THE DIRECT CASE SAYS THE FOLLOWING, "PCNA," THAT'S

10    PANASONIC NORTH AMERICA, "WAS REPRESENTED AT THOSE MEETINGS AND

11    WAS A PARTY TO THE AGREEMENTS ENTERED AT THEM."  THE SAME

12    ALLEGATION.  WHOLLY, COMPLETELY CONCLUSORY.

13         SO PANASONIC NORTH AMERICA SALES COMPANY SHOULD NOT

14    BE IN THIS CASE.

15         ANOTHER ONE OF MY CLIENTS, PANASONIC CORPORATION, DID

16    NOT MAKE TUBES.  WHAT DO THEY SAY ABOUT PANASONIC CORPORATION?

17    ALL THAT THEY SAY -- THIS IS THE DIRECT COMPLAINT, PARAGRAPH

18    162, IS "PANASONIC" -- DOESN'T SAY WHICH PANASONIC COMPANY --

19    "DIRECTLY OR THROUGH MATSUSHITA MALAYSIA -- " WHO IS MATSUSHITA

20    MALAYSIA?  IT'S NOT A NON-PARTY TO THE CASE, A DEFUNCT ENTITY

21    THAT'S OUT OF BUSINESS.

22         SO WE CAN'T EVEN TELL IS THIS A CLAIM ABOUT PANASONIC

23    CORPORATION, OR IS IT THROUGH --

24          "MATSUSHITA MALAYSIA PARTICIPATED IN SEVERAL

25          DOZEN ILLEGAL BILATERAL OR GROUP MEETINGS FROM

```
1              1996 TO AT LEAST 2003, IN WHICH UNLAWFUL

2              AGREEMENTS AS TO INTER ALIA PRICE, OUTPUT

3              RESTRICTIONS AND CUSTOMER AND MARKET ALLOCATION

4              OF CRT PRODUCTS OCCURRED.  THESE INCLUDED

5              BILATERAL MEETINGS AND GROUP MEETINGS OF THE

6              TYPE DESCRIBED HEREIN.  THESE MEETINGS TOOK

7              PLACE IN TAIWAN, MALAYSIA, AND CHINA.  PANASONIC

8              NEVER EFFECTIVELY WITHDREW."

9          THAT'S THE ENTIRE CLAIM.  NO DETAILS, WHICH MEETINGS,

10  WHAT WAS SAID.  AND THEY USE THIS TERM "CRT PRODUCTS," WHICH

11  COULD BE A CRT.  IT COULD BE A TELEVISION.  IT COULD BE A

12  MONITOR.  IT COULD BE A TUBE FOR A MONITOR.  PANASONIC DIDN'T

13  MAKE THE TUBES.  IT BOUGHT THE TUBES.  IT WOULD HAVE BEEN A

14  VICTIM IN THIS CONSPIRACY.

15          FOR THIS ONE PARAGRAPH OUT OF A COMPLAINT OF HUNDREDS

16  OF PARAGRAPHS YOU CAN'T DRAG IN A COMPANY.

17          NOW, MY THIRD CLIENT, MTPD, A TUBE COMPANY, THEY MAKE

18  SPECIFIC CLAIMS ABOUT MTPD.  WE DO NOT MOVE TO DISMISS ON

19  TWOMBLY GROUNDS FOR THAT COMPANY, BECAUSE THIS CASE COULD ONLY

20  BE A TUBE CASE.

21          WHAT THEY CAN'T DO IS TAKE A NARROW CASE -- THE ONLY

22  CASE THE GRAND JURY IS INVESTIGATING, AS YOUR HONOR KNOWS,

23  YOU'VE SEEN SUBMISSIONS FROM THE GOVERNMENT, IT'S ALL ABOUT

24  TUBES -- THE ONLY INDUSTRY THAT CHUNGHWA WAS IN, TUBES, THEY

25  CAN'T USE THAT TO MAKE THE CASE 50 TIMES BIGGER BY CHANGING IT
```

1   TO TELEVISIONS AND MONITORS AND TAKING IT BACK IN A CASE THAT

2   THEY WANT TO GO BACK TO 1994, 16 YEARS OF DISCOVERY, YOUR HONOR.

3           SO WE WOULD SAY THAT YOU HAVE TO LOOK AT THIS

4   DEFENDANT BY DEFENDANT.  THAT'S WHAT THE CASES INDICATE.  AND

5   ONCE YOU DO THAT, CAN'T POSSIBLY PUT THESE COMPANIES IN.

6           WHAT I WOULD SUGGEST IS JUDGE LEGGE DID NOT THINK HE

7   HAD TO DO THIS DEFENDANT BY DEFENDANT.  SO ALL YOUR HONOR HAS TO

8   DO IS REMAND BACK TO JUDGE LEGGE AND SAY, JUDGE, YOU NEED TO

9   LOOK AT THIS DEFENDANT BY DEFENDANT UNDER THE STANDARDS, AND

10  THEN WE'LL SEE WHETHER OR NOT THE CASE SHOULD GO FORWARD.

11          FINALLY, YOUR HONOR, YOU ASKED A QUESTION OF

12  MR. MILLER, YOU KNOW, HOW DOES HE KNOW IT'S NOT PLAUSIBLE.  SO I

13  HAVE A SLIGHTLY DIFFERENT ANSWER TO MR. MILLER, BECAUSE I DO

14  THINK WE KNOW IT'S NOT PLAUSIBLE THE WAY THE SUPREME COURT

15  DEFINED IT IN *TWOMBLY*.

16          IN *TWOMBLY*, THEY SAID IT HAD TO BE ECONOMICALLY

17  PLAUSIBLE BASED ON THE FACTUAL ALLEGATIONS, AND THEY LOOKED AT

18  THE MARKET FACTS ALLEGED.  FOR FINISHED PRODUCTS, THERE ARE NO

19  MARKET FACTS ALLEGED.  THEY HAVEN'T ALLEGED MARKET SHARE.

20          THEY HAVEN'T JOINED SOME OF THE BIGGEST TV COMPANIES

21  IN THE WORLD, SONY, FOR EXAMPLE; SHARP, FOR EXAMPLE; VIZIO.

22  THEY JUST DON'T JOIN THEM.  IN THE MONITOR MARKET, THEY HAVEN'T

23  JOINED OR ALLEGED ANYTHING ABOUT DELL, HP, IPM.  THEY MAKE MOST

24  OF THE MONITORS IN THIS COUNTRY.

25          UNDER *TWOMBLY*, THAT IS ECONOMICALLY IMPLAUSIBLE.

1    THAT'S HOW THE SUPREME COURT DEFINED IT IN AN ANTITRUST CASE.

2    SO, YES, I CAN ANSWER DEFINITIVELY ON THIS RECORD, WHAT THEY'VE

3    ALLEGED, THEY CAN'T SHOW IT'S ECONOMICALLY PLAUSIBLE, YOUR

4    HONOR.

5            THEY TRY TO GET AROUND THAT IN THE MEETINGS, BUT WHEN

6    YOU LOOK AT THE MEETINGS, THEY ARE ALL TUBE MEETINGS.  AND THE

7    ONLY WAY THEY TRY TO OBSCURE THAT IS BY SAYING CRT PRODUCTS, BUT

8    CRT PRODUCTS INCLUDE TUBES, AND THEY TRY TO GLOSS OVER THE FACT.

9    THEY HAVE NO ALLEGATIONS OF ANY MEETINGS WHERE ANYTHING WAS DONE

10   ABOUT FINISHED PRODUCTS.

11           THANK YOU, YOUR HONOR.  I APOLOGIZE FOR TAKING SO

12   MUCH TIME.

13           **THE COURT:**  ANYONE ELSE?

14           **MR. TALADAY:**  YOUR HONOR, GOOD AFTERNOON.  I'M JOHN

15   TALADAY FROM HOWREY.  I'M REPRESENTING THE PHILIPS DEFENDANTS.

16           I WAS CALLED UPON MY COLLEAGUE TO MENTION THE

17   *WEINSTEIN* CASE, WHICH I WILL JUST BRIEFLY.

18           THE SOLE BASIS IN JUDGE LEGGE'S REPORT FOR SUSTAINING

19   THE AGENCY ARGUMENTS THAT PLAINTIFFS HAVE MADE BY WHICH THEY

20   LUMP TOGETHER ALL OF THE DEFENDANTS -- AND I'LL SPEAK WITH

21   SPECIFIC REFERENCE TO THE PHILIPS DEFENDANTS -- WAS -- BY WAY OF

22   SUPPORT WAS THE *WEINSTEIN* CASE.

23           THE *WEINSTEIN* CASE WAS A MEMORANDUM OPINION BY THE

24   NINTH CIRCUIT, FOUR PARAGRAPHS LONG, AND THE JUDGE RELIED ON THE

25   MISREPRESENTATION, FRANKLY, BY PLAINTIFFS THAT MERE ALLEGATIONS

1   OF SUBSTANTIAL CONTROL ARE SUFFICIENT TO STATE AN AGENCY CLAIM.

2            YOUR HONOR, WHAT *WEINSTEIN* SAID, AND I WILL QUOTE

3   THIS PART, IS THAT:

4                "THE COMPLAINT ALLEGED FACTS SUPPORTING THE

5                EXISTENCE OF AN ACTUAL AGENCY RELATIONSHIP

6                BETWEEN SATURN AND EAST BAY AUTO GROUP WITH

7                SUFFICIENT PARTICULARITY TO SURVIVE DISMISSAL."

8            THE KEY POINT, YOUR HONOR, IS THAT THE *WEINSTEIN*

9   OPINION, SHORT AS IT IS, MUST BE READ IN CONJUNCTION WITH THE

10  *WEINSTEIN* COMPLAINT.

11           I WILL GIVE YOU JUST A FEW BRIEF EXAMPLES OF THE

12  PARTICULARITY WITH WHICH THE *WEINSTEIN* COMPLAINT ALLEGED AGENCY,

13  AND I WILL BRIEFLY CONTRAST IT WITH THE PLAINTIFFS' ALLEGATIONS.

14           NUMBER ONE, THE *WEINSTEIN* COMPLAINT SAID THAT THE

15  FRANCHISE AGREEMENT BETWEEN SATURN AND EAST BAY AUTO GROUP

16  STATED VERY SPECIFICALLY THAT CUSTOMERS MAY RELY ON THE

17  INTERACTION BETWEEN THE PARTIES AS A BASIS FOR ASSUMING THAT

18  THEY ARE WORKING TOGETHER AND REPRESENTING ONE ANOTHER.

19           NUMBER TWO, THEY POINTED TO THE FACT THAT THE SATURN

20  LOGO, WITHOUT ANY SPECIFICITY AS TO THE EAST BAY AUTO GROUP, WAS

21  PROMINENTLY DISPLAYED AT THE RETAIL LOCATION.

22           NUMBER THREE, AND FINALLY, THE NO-HAGGLE POLICY WHICH

23  WAS APPLIED THROUGHOUT SATURN GROUP GAVE THE IMPRESSION THAT

24  EACH DISTRIBUTOR WAS ALSO ACTING AS A AGENT.

25           THERE'S SOME PARTICULARITY THERE, YOUR HONOR.  HERE

1   WHAT THE PLAINTIFFS SAY IN PARAGRAPH 154 IS THAT IN THE EVENT

2   THAT THEY SHOULD MENTION THAT ONE OF THE CORPORATE FAMILY

3   MEMBERS ATTENDED THE MEETINGS THAT THEY ALLEGE, IT SHOULD BE

4   ASSUMED THAT ALL OTHERS WERE REPRESENTED THERE.  THEY SAY

5   NOTHING ABOUT THE BASIS FOR THAT ASSUMPTION OF AGENCY.

6           WITH RESPECT TO THE PHILIPS DEFENDANTS, THEY SIMPLY

7   SAY THAT ROYAL PHILIPS OR ITS SUBSIDIARIES, WHICH ARE THE OTHER

8   THREE PHILIPS COMPANIES MENTIONED, ATTENDED, NOT BOTH, BUT OR,

9   AND THEN THEY ALLEGE THAT THEY WERE ALL REPRESENTING ONE

10  ANOTHER.  THERE IS NOT A SINGLE ALLEGATION OF THE BASIS ON WHICH

11  THEY ASK YOU TO ASSUME THAT THERE IS AN AGENCY RELATIONSHIP

12  THERE.

13          THESE ARE INDIVIDUAL COMPANIES, YOUR HONOR.  THEY ARE

14  ENTITLED TO AN ASSUMPTION OF CORPORATE SEPARATENESS.  WE CITED A

15  LONG LIST OF CONTROLLING CASES TO THAT EFFECT.

16          YOUR HONOR, YOU SHOULD NOT IGNORE THE REQUIREMENT

17  THAT PLAINTIFFS HAVE TO ALLEGE SPECIFIC FACTS AS TO THE AGENCY

18  RELATIONSHIP BETWEEN THESE DEFENDANTS, AND THE PHILIPS

19  DEFENDANTS, ON THAT BASIS, SHOULD BE DISMISSED FROM THIS CASE.

20          THANK YOU, YOUR HONOR.

21       **MS. FIALA:**  GOOD MORNING, YOUR HONOR.  MARIE FIALA.

22  TOGETHER WITH MR. MILLER, WE REPRESENT THE LG DEFENDANTS.

23          BRIEFLY, YOUR HONOR, OUR CLIENTS ARE THREE ENTITIES:

24  LG ELECTRONICS, WHICH IS A KOREAN COMPANY THAT MAKES AND SELLS

25  FINISHED PRODUCTS; LG U.S.A., WHICH IS A UNITED STATES COMPANY

1   INCORPORATED IN DELAWARE.  IT DOESN'T MAKE TUBES OR FINISHED

2   PRODUCTS.  IT MARKETS AND SELLS FINISHED PRODUCTS IN THE UNITED

3   STATES.  AND LG TAIWAN-TAIPEI, WHICH IS A TAIWANESE COMPANY THAT

4   MARKETS AND SELLS FINISHED PRODUCTS IN TAIWAN, ALSO MAKES

5   NEITHER TUBES NOR FINISHED PRODUCTS.

6          AS MR. MILLER DESCRIBED EARLIER, LG ELECTRONICS HAS

7   NOT BEEN IN THE TUBES BUSINESS SINCE 2001 WHEN IT SPUN OFF THE

8   TUBES BUSINESS TO A COMPLETELY SEPARATE COMPANY, LP DISPLAYS, LP

9   DISPLAYS.

10         NOW, THERE ARE 50 DEFENDANTS, AND YET EACH OF OUR

11   CLIENTS ARE ENTITLED TO THE SAME SCRUTINY OF THE ALLEGATIONS

12   AGAINST THEM AS IF THEY WERE THE ONLY DEFENDANTS OR IF THERE

13   WERE ONLY ONE.  WHY IS THAT?  BECAUSE, AS JUDGE ILLSTON SAID IN

14   HER FIRST DECISION ON THE MOTION TO DISMISS IN THE *LCD* CASE, AT

15   THE HEART OF THE CONSPIRACY IS AN AGREEMENT AND A CONSCIOUS

16   DECISION BY EACH DEFENDANT TO JOIN IT.  THAT WAS THE LAW WELL

17   BEFORE *TWOMBLY*.  IT IS MOST CERTAINLY THE LAW AFTER *TWOMBLY* AND

18   *IQBAL*, PROVIDED FOR A HEIGHTENED PLEADING STANDARD.

19         SO WHAT DO THE PLAINTIFFS DO WITH RESPECT TO THE LG

20   COMPANIES TO BRING THEM INTO THE SCOPE OF THIS ALLEGED

21   CONSPIRACY?  THEY DO TWO THINGS.

22         NUMBER ONE, THEY SAY THESE ARE LG COMPANIES.

23   DISREGARD THE CORPORATE SEPARATENESS; WE'RE GOING TO LUMP THEM

24   TOGETHER.  IN ALL OF OUR ALLEGATIONS WE ARE GOING TO SAY THE LG

25   COMPANIES DID THIS, THE LG COMPANIES DID THAT.  THAT'S THE FIRST

1    THING THEY DO.

2            THE SECOND THING THEY DO, BECAUSE THEY WANT TO BRING

3    THE LG COMPANIES WITHIN THE SCOPE OF THE TUBES CONSPIRACY, IS

4    THEY SAY, LPD, LP DISPLAYS, A COMPLETELY SEPARATE COMPANY IN

5    WHICH LG ELECTRONICS HAS MINORITY OWNERSHIP INTEREST, THEY SAY

6    LPD ACTED AS THE AGENT FOR ALL OF THE OTHER LG COMPANIES AFTER

7    2001.

8            THE LG COMPANIES WERE NOT IN THE TUBES BUSINESS.  SO

9    THE PLAINTIFFS SAY, WELL, LP DISPLAYS WAS IN THE TUBES BUSINESS;

10   THEY ACTED AS THE AGENT FOR THE LG COMPANIES.  THAT'S HOW THEY

11   ATTEMPT TO BRING THE CLAIMS AGAINST THE LG COMPANIES WITHIN THE

12   STATUTE OF LIMITATIONS AND TO INCLUDE THEM AS TO THE TUBES

13   ALLEGATIONS AS WELL AS THE FINISHED PRODUCTS ALLEGATIONS.

14           YOUR HONOR, WE HOPE THE COURT WILL AGREE WITH

15   MR. MILLER'S ARGUMENT THAT THE FINISHED PRODUCTS ALLEGATIONS ARE

16   IMPLAUSIBLE AND DEFICIENT.  BUT EVEN IF THE COURT DISAGREES,

17   EVEN IF THE COURT DISAGREES, UNDER THE PLEADINGS STANDARDS THAT

18   PREVAILED LONG BEFORE *TWOMBLY*, WE SUBMIT THAT THE COURT SHOULD

19   REQUIRE REMAND, WITH DIRECTION TO REQUIRE REPLEADING TO STATE

20   SPECIFICALLY HOW AND WHY EACH OF THESE SEPARATE COMPANIES ARE

21   ALLEGED TO HAVE ENTERED INTO AN AGREEMENT AND MADE A CONSCIOUS

22   DECISION TO JOIN IN THAT CONSPIRACY.  THOSE FACTS ARE SIMPLY NOT

23   THERE.

24           ALL WE HAVE IN THE COMPLAINTS, BOTH OF THEM, ARE MERE

25   CONCLUSIONS, A LUMPING TOGETHER OF ALL OF THESE SEPARATE

1  COMPANIES INTO ONE LG ENTITY, AND A BARE CONCLUSION OF AGENCY

2  UNSUPPORTED BY ANY FACTS.

3          AS YOU HEARD FROM OTHER COUNSEL, AND, AS I KNOW THE

4  COURT IS WELL AWARE, THAT SIMPLY RUNS COUNTER, AND, WITH ALL

5  RESPECT, JUDGE LEGGE SIMPLY ERRED IN ASSUMING THAT IS ENOUGH.

6  THAT RUNS COUNTER TO MANY YEARS OF PRECEDENT SAYING THAT A

7  PARENT AND A SUBSIDIARY ARE ASSUMED TO BE SEPARATE.

8          THAT'S THE *BESTFOODS* CASE FROM UNITED STATES SUPREME

9  COURT.  THAT'S THE *SHERMAN* CASE AND THE *NRG* CASE FROM THE NINTH

10  CIRCUIT.

11          PARENT AND SUBSIDIARY ARE ASSUMED TO BE SEPARATE.

12  THE MERE ALLEGATION THAT THEY SHARE LG AS A PART OF THEIR NAME

13  IS NOT ENOUGH TO BRING THEM WITHIN THE SCOPE OF THE CONSPIRACY.

14          THAT'S ALL I HAVE THIS MORNING.  THANK YOU, YOUR

15  HONOR.

16          **THE COURT:**  ANYONE ELSE?

17          **MS. MCMILLAN:**  GOOD MORNING, YOUR HONOR.  KATE

18  MCMILLAN.  I REPRESENT BEIJING MATSUSHITA COLOR CRT COMPANY,

19  BMCC FOR SHORT.

20          **THE COURT:**  WHICH COMPANY IS THAT?

21          **MS. MCMILLAN:**  BEIJING MATSUSHITA COLOR CRT COMPANY,

22  BMCC.

23          AND I'LL BE VERY BRIEF THIS MORNING, YOUR HONOR.  I

24  JUST WANT TO POINT OUT A FEW FACTS SPECIFIC TO MY CLIENT.

25          BMCC IS A CHINESE CRT MANUFACTURER.  THEY ONLY

1  MANUFACTURE THE TUBES.  THEY DO NOT MANUFACTURE, AND NEVER HAVE

2  MANUFACTURED, DISTRIBUTED, OR SOLD ANY TELEVISIONS OR ANY

3  COMPUTER MONITORS.  IN FACT, THEY ALSO HAVE NO SUBSIDIARIES THAT

4  MANUFACTURE OR SELL COMPUTERS OR TELEVISION MONITORS.

5          SO, IT MAKES NO SENSE TO THINK THAT BMCC COULD HAVE

6  CONSPIRED WITH ITS CUSTOMERS TO RAISE THE PRICES OF GOODS SOLD

7  TO THOSE CUSTOMERS OR PRODUCTS MANUFACTURED BY THE CUSTOMERS AND

8  SOLD DOWN THE LINE.

9          PLAINTIFFS ATTEMPT TO OBSCURE THE DEFICIENCIES IN

10  THEIR COMPLAINTS AS TO BMCC BY REFERRING GENERALLY TO DEFENDANTS

11  OR DEFENDANT GROUPS.

12          THE SPECIAL MASTER'S REPORT IGNORES THE FACT THAT

13  BMCC IS NOT A PARENT OR A CORPORATE SUBSIDIARY OF ANY OTHER

14  DEFENDANT IN THIS LITIGATION.  BMCC CANNOT BE LUMPED IN WITH ANY

15  OTHER DEFENDANTS FOR PURPOSES OF ADEQUATE NOTICE.

16          IN ADDITION, I'D LIKE TO BRIEFLY POINT OUT THAT BMCC

17  IS NOT LIKE MANY OF THE OTHER DEFENDANTS THAT PLAINTIFFS ATTEMPT

18  TO GROUP TOGETHER FOR PURPOSES OF THEIR PLEADINGS.

19          BMCC IS NOT ALLEGED TO BE A TARGET OF THE U.S.

20  DEPARTMENT OF JUSTICE CRT INVESTIGATION.  IN FACT, BMCC HAS NOT

21  RECEIVED A SUMMONS OR A GRAND JURY SUBPOENA IN THAT MATTER.

22  BMCC IS ALSO NOT ALLEGED TO BE A TARGET OF ANY OTHER

23  INTERNATIONAL GOVERNMENT ANTITRUST INVESTIGATIONS OR ANY OTHER

24  U.S. GOVERNMENT ANTITRUST INVESTIGATIONS.

25          BMCC IS NOT ALLEGED TO HAVE PARTICIPATED IN ANY TRADE

1   ASSOCIATION MEETINGS OR TRADE EVENTS.  THERE ARE NO ALLEGATIONS

2   AS TO WHO AT BMCC ALLEGEDLY PARTICIPATED IN MEETINGS, OR WHEN OR

3   WHERE THOSE MEETINGS TOOK PLACE.  AND THERE ARE NO ALLEGATIONS

4   AS TO BMCC PRICES, PRICE INCREASES, CAPACITY, OR PRODUCTION AND

5   HOW THEY COMPARED TO THOSE OF THE COMPETITION.

6          SO, IN SUM, PLAINTIFFS HAVE NOT ALLEGED A PLAUSIBLE

7   CLAIM FOR RELIEF, NOR HAVE THEY ALLEGED SUFFICIENT FACTS THAT

8   BMCC JOINED A CONSPIRACY OR PLAYED ANY ROLE IN IT; THEREFORE,

9   WITHOUT REPEATING THE ARGUMENTS THAT HAVE BEEN MADE EARLIER

10  TODAY, WE RESPECTFULLY ASK THAT YOU RESUBMIT THIS MATTER TO THE

11  SPECIAL MASTER FOR RECONSIDERATION.

12         THANK YOU.

13         **THE COURT:**  ANYONE ELSE?  ALL RIGHT.

14         MR. SAVERI, IT SEEMS TO ME, BESIDES THE SPECIFIC

15  OBJECTIONS THAT THEY'VE MADE TO THE COMPLAINTS, THERE SEEMS TO

16  BE A THEME RUNNING THROUGH THEIR OBJECTIONS THAT PROBABLY THE

17  DEFENDANT SHOULD BE CONSIDERED INDIVIDUALLY, ONE BY ONE, RATHER

18  THAN LUMPING THEM ALL TOGETHER.  ALSO, THAT IN YOUR PLEADINGS

19  THAT YOU'VE TAKEN A SHOTGUN APPROACH IN WHICH YOU -- EVERYBODY

20  IN THE NEIGHBORHOOD IS IN THE CONSPIRACY AND BY THE CONSPIRACY

21  OR THE AGENCY RELATIONSHIPS THAT THEY'RE ALLEGING.

22         SO I'D LIKE HEAR SOMETHING ABOUT THAT AND WHETHER OR

23  NOT YOU THINK THAT THERE SHOULD BE A DEFENDANT-BY-DEFENDANT

24  APPROACH, BECAUSE THERE ARE MANY ENTITIES INVOLVED.  EACH

25  CORPORATION HAS MANY ENTITIES.  SHOULD THEY BE CONSIDERED AS ONE

1  OR SHOULD THEY BE CONSIDERED AS SEPARATE ENTITIES?

2            **MR. SAVERI:**  WITH REFERENCE TO THE LATTER PART, THEY

3  SHOULD BE CONSIDERED AS ONE, BECAUSE, IN OUR COMPLAINT, WE

4  SPECIFICALLY ALLEGE THAT THERE WERE ALMOST 300 MEETINGS THAT

5  TOOK PLACE AMONG THE DEFENDANTS THAT WE HAVE SUED, AND AT THOSE

6  MEETINGS, FAMILIES ATTENDED, THE FAMILIES ATTENDED, PEOPLE FROM

7  THE FAMILIES ATTENDED, AND THEY ATTENDED AS REPRESENTATIVES OF

8  THE FAMILY.  SO IT'S NOT NECESSARY TO INDIVIDUALLY ALLEGE FACTS

9  AGAINST EACH ONE.  THIS IS THE SAME ARGUMENT, THE SAME ARGUMENT

10 THAT WAS MADE IN FRONT OF JUDGE ILLSTON ON THE *LCD* CASE.

11           **THE COURT:**  IS THERE SPECIFICITY REQUIRED SO FAR AS

12 WHICH MEETINGS, WHEN MEETINGS, WHEN THEY WERE HEARD, WHOM WAS

13 THERE?  IS THAT SPECIFICITY REQUIRED UNDER *IQBAL*?

14           **MR. SAVERI:**  NO, IT'S NOT REQUIRED UNDER *IQBAL*, AND

15 IT'S NOT REQUIRED BY THE DISTRICT COURT CASES HERE.

16           JUDGE ILLSTON SAID IT'S NOT REQUIRED.  JUDGE WILKEN

17 SAID IT'S NOT REQUIRED.  AND JUDGE HAMILTON SAID IT'S NOT

18 REQUIRED.  AND THE LAW DOES NOT REQUIRE IT.

19           MOREOVER, WE HAVE ALLEGED THOSE IN OUR COMPLAINT.  WE

20 HAVE ALLEGED THE DEFENDANTS THAT WERE THERE.  WE ALLEGED THE

21 MEETINGS THAT TOOK PLACE.  WE ALLEGED WHAT THEY DISCUSSED.  WE

22 ALLEGED THAT THEY HAD DISCUSSIONS RELATING TO FIXING PRICES,

23 RESTRICTING OUTPUT, ALLOCATED TARIFFS.  OUR COMPLAINT IS AS

24 DETAILED AS ONE CAN SEE.

25           FOR INSTANCE, MR. MILLER TALKS ABOUT THE ISSUE OF HIS

1   35 YEARS AND EXPERIENCE AND HOW A COMPLAINT -- THE FACTS SHOULD

2   BE ALLEGED IN A COMPLAINT.

3          IN OUR COMPLAINT, WE ARE VERY SPECIFIC ON WHAT WE

4   ALLEGE ON THE INDIVIDUAL MEETINGS THAT TOOK PLACE.  AND, AS I

5   SAID, THE SAME ISSUES, THE IDENTICAL ISSUES, YOUR HONOR, WERE

6   RAISED IN JUDGE ILLSTON'S COURT.

7          NOW, THE ONLY DIFFERENCE BETWEEN THE *LCD* CASE IN

8   JUDGE ILLSTON'S COURT IS THAT IN THE *LCD* CASE, THEY ALLEGE THERE

9   WERE 300 MEETINGS THAT TOOK PLACE.  IN OUR CASE WE ARE ALLEGING

10  THAT THERE WERE 500 MEETINGS, 500 BILATERAL MEETINGS.  AND WE

11  HAVE SPECIFIED THE PARTIES THAT WERE THERE.  WE HAVE SPECIFIED

12  WHEN THE MEETINGS TOOK PLACE.  WE HAVE SPECIFIED WHAT WAS SAID

13  AT THE MEETINGS.  AND WE SPECIFIED THE AGREEMENTS THAT WERE MADE

14  AT THE MEETING.  AND WE ALSO ALLEGED IN DETAIL THAT WHEN THESE

15  PEOPLE SHOWED UP AT THESE MEETINGS, THEY SHOWED UP ON BEHALF OF

16  THE FAMILY GROUP AND SPOKE FOR THE FAMILY GROUP AND REPRESENTED

17  THAT THEY WERE SPEAKING FOR EVERYBODY.

18         THOSE WERE SPECIFICALLY ALLEGED IN OUR COMPLAINT, AND

19  IT'S NOT NECESSARY TO BREAK IT UP INDIVIDUALLY BY INDIVIDUALLY,

20  AND THE CASES SUPPORT US ON THAT.

21         **THE COURT:**  DID *IQBAL* CHANGE YOUR PLEADING

22  REQUIREMENTS?

23         **MR. SAVERI:**  NO.

24         **THE COURT:**  IN WHAT REGARD?

25         **MR. SAVERI:**  I THINK WE MEET THE QUALIFICATIONS OF

1    *IQBAL*, AND I THINK WE MEET THE QUALIFICATIONS OF --

2              **THE COURT:**  *TWOMBLY*.

3         **MR. SAVERI:**  -- OF *TWOMBLY*.  I THINK WE MEET THEM

4    VERY SPECIFICALLY.  AND, AS I SAID, OUR COMPLAINT IS PROBABLY

5    MORE DETAILED THAN ANY COMPLAINT YOU'VE EVER SEEN.

6              MR. MILLER TALKS ABOUT HIS 35 YEARS OF EXPERIENCE.

7    LET ME TELL YOU ABOUT MY 50 YEARS OF EXPERIENCE.  OKAY.  I

8    DRAFTED MORE THAN ONE HUNDRED --

9              **THE COURT:**  YOU WANT ME TO TELL YOU ABOUT MY 60?

10             **MR. SAVERI:**  I THINK I'M GETTING CLOSE TO 60, JUDGE.

11             I DRAFTED MORE THAN ONE HUNDRED COMPLAINTS, AND I'VE

12   NEVER SEEN A COMPLAINT, I'VE NEVER SEEN A COMPLAINT THAT IS MORE

13   DETAILED WITH ALLEGATIONS OF CONSPIRATORIAL MEETINGS AS I'VE

14   SEEN IN THIS CASE.  I HAVE NEVER SEEN THEM.

15             THE REASON WE HAVE SO MUCH INFORMATION IS THAT, AS WE

16   SAY, SOMEBODY BLEW THE WHISTLE.  CHUNGHWA BLEW THE WHISTLE AND

17   WENT TO THE DEPARTMENT OF JUSTICE.  AND THEY ARE THE AMNESTY

18   APPLICANT.

19             AS A RESULT OF THE INFORMATION THAT WE HAVE, WE HAVE

20   A COMPLAINT THAT ALLEGES MEETING, AFTER MEETING, AFTER MEETING,

21   AFTER MEETING, AND AFTER MEETING.  AS I'VE SAID, I'VE NEVER SEEN

22   A COMPLAINT WITH SUCH SPECIFIC ALLEGATIONS AS I'VE SEEN IN THIS

23   CASE.

24             AND, AGAIN, TO ANSWER YOUR QUESTION, WE CERTAINLY

25   COMPLY WITH *TWOMBLY* AND *IQBAL*, AND WE ALSO COMPLY WITH THE CASES

1   IN THIS DISTRICT THAT SAY YOU DO NOT HAVE TO ALLEGE EACH FACT

2   AGAINST EACH DEFENDANT.  THE CASES -- AS I SAID, THREE CASES, WE

3   RELY ON THAT, ON JUDGE ILLSTON, ON JUDGE WILKEN, AND ON JUDGE

4   HAMILTON, AND THE LAW DOESN'T REQUIRE IT.

5           NOW, WITH REFERENCE TO SOME OF THE OTHER ARGUMENTS

6   HERE, I JUST WANT TO MAKE TWO POINTS.

7           NUMBER ONE, THE DIRECT PURCHASERS ARE NOT BOUND BY

8   ANY ALLEGATIONS THAT THE INDIRECT PURCHASERS MIGHT HAVE MADE

9   WITH REFERENCE TO COMPETITION.  THEY ARE -- THEY REPRESENT

10  INDIRECT BUYERS THAT ARE DIFFERENT FROM US, SO WE ARE NOT BOUND

11  BY ANYTHING THEY MAY SAY IN THEIR COMPLAINT.  OUR COMPLAINT

12  STANDS ON ITS OWN.

13          SECONDLY, THEY MAKE A BIG, BIG, BIG ARGUMENT ABOUT

14  THE PLAUSIBILITY OF THIS CASE.  I MEAN, WE'VE ALLEGED IN OUR

15  COMPLAINT, IN OUR PAPERS, THAT THIS CONSPIRACY WOULDN'T HAVE

16  WORKED UNLESS THERE WAS A PRICE FIX, BOTH ON THE TUBES AND ON

17  THE FINISHED PRODUCT.  AND, IN THAT CONNECTION, WE WOULD REFER

18  YOUR HONOR TO PAGES FIVE AND SIX, FIVE AND SIX OF OUR BRIEF, AND

19  ALSO PARAGRAPHS 158, 161, 163, 165, 167, AND 169 THROUGH 172,

20  WHICH SET FORTH THE ECONOMIC RATIONALE FOR A PRICE FIX ON THE

21  TUBES.  THEY SPECIFICALLY ALLEGE WHY THERE WAS AN ECONOMIC

22  REASON AND WHY IT MADE SENSE.  SO WE WOULD REFER YOUR HONOR TO

23  THOSE PARAGRAPHS IN OUR COMPLAINT.

24          OTHER THAN THAT, ALL THE ARGUMENTS THAT HAVE BEEN

25  MADE THIS MORNING WERE MADE IN FRONT OF JUDGE LEGGE.  THERE IS

1   NOTHING NEW THAT THEY REALLY SAID THIS MORNING THAT WAS NOT SAID

2   IN FRONT OF JUDGE LEGGE.

3          HERE'S THE TRANSCRIPT OF THE HEARING BEFORE JUDGE

4   LEGGE.  IT'S 350 PAGES.  THE ARGUMENT WENT ON FOR NINE HOURS.

5   THE TOTAL PAGES THAT WERE SUBMITTED TO JUDGE LEGGE WERE MORE

6   THAN 400 PAGES.  AND THERE IS NOTHING THAT WAS SAID TODAY THAT

7   WAS ANYTHING DIFFERENT THAT WAS PRESENTED IN THE PAPERS THAT

8   THEY FILED AND ARGUMENTS THAT WERE MADE IN FRONT OF JUDGE LEGGE.

9   AND WE HAVE STATED IN OUR PAPERS.

10          **THE COURT:**  THEY'RE SAYING JUDGE LEGGE WAS WRONG.

11          **MR. SAVERI:**  I'M NOT SAYING JUDGE LEGGE WAS WRONG.

12  I'M SAYING HE WAS ABSOLUTELY RIGHT IN ALL THE CONCLUSIONS HE

13  DID.  HE HAD A FULL RECORD BEFORE HIM.  NOTHING HAS BEEN SAID

14  TODAY THAT'S ANYTHING DIFFERENT.

15          HE DIDN'T TAKE TWO OR THREE DAYS TO WRITE THE

16  OPINION.  HE TOOK FOUR MONTHS TO ANALYZE EVERYTHING THAT WAS

17  SAID.  HE CAME OUT WITH A VERY ANALYTICAL OPINION OF 42 PAGES

18  THAT ANSWERED EVERY ISSUE THAT WAS RAISED IN THE PAPERS THAT

19  WERE PRESENTED TO HIM AND ANSWERED EVERY ISSUE THAT WAS RAISED

20  THIS MORNING BY THE DEFENDANTS.

21          THERE IS NOTHING NEW THAT WAS SAID THIS MORNING THAT

22  WASN'T SAID IN FRONT OF JUDGE LEGGE OR PRESENTED IN THE BRIEFS.

23          NOW, THEY TALK ABOUT *ILLINOIS BRICK* A LOT -- NOT

24  *ILLINOIS BRICK*, BUT THE *CONTINENTAL ORE* CASE.  THEY SEEM TO LIKE

25  TO TALK ABOUT THE *CONTINENTAL ORE* CASE.  I HAPPENED TO WRITE

1    PART OF THE BRIEFS IN THE *CONTINENTAL ORE* CASE.  THAT IS THE

2    BEST ANTITRUST CASE IN THE SUPREME COURT.

3           WHAT *CONTINENTAL ORE* CASE SAYS, IF YOU WANT TO GET

4    SOPHISTICATED, YOU CANNOT DECOMPARTMENTALIZE A CONSPIRACY AND

5    LOOK AT THE INDIVIDUAL PARTS; YOU'VE GOT TO LOOK AT THE WHOLE

6    THING.

7           WE, IN NORTH BEACH, SAY, YOU CAN'T CUT UP THE SALAMI

8    AND LOOK AT EVERY SLICE; YOU'VE GOT TO LOOK AT THE WHOLE THING.

9    THAT IS THE PRINCIPLE THAT IS APPLICABLE IN CASES WHERE YOU

10   ALLEGE A CONSPIRACY.  THAT IS WHAT JUDGE LEGGE LOOKED AT AND

11   CAME TO THE CONCLUSION THAT A COMPLAINT IS SUFFICIENT TO SATISFY

12   BOTH *TWOMBLY* AND *IQBAL* AND ALL THE ARGUMENTS WERE MADE BY THE

13   DEFENDANTS.

14          WITH THE EXCEPTION OF THOSE COMMENTS, WE ARE WILLING

15   TO SUBMIT THIS ARGUMENT ON OUR BRIEFS.

16      **THE COURT:**  WHAT DO YOU SAY ABOUT THEIR ECONOMIC

17   FEASIBILITY ARGUMENT?

18      **MR. SAVERI:**  I THINK I WOULD LIKE MR. MONTAGUE TO

19   ANSWER THAT ISSUE ON THE FEASIBILITY ARGUMENT BECAUSE HE WROTE

20   THE BRIEFS, IF I MAY, YOUR HONOR.

21      **THE COURT:**  WHAT DO YOU THINK ABOUT THE STATUTE OF

22   LIMITATIONS PROBLEM?

23      **MR. SAVERI:**  THE STATUTE OF LIMITATIONS PROBLEMS,

24   WE'VE DISCUSSED THAT, AND THE CASES SUPPORT OUR SITUATION, THAT

25   THE ALLEGATIONS THAT WE MADE IN THE STATUTE OF LIMITATIONS ARE

1   SUFFICIENT TO GET BY THE DECISIONS IN THIS CIRCUIT AND OTHER

2   CIRCUITS, THAT THE ALLEGATIONS THAT WE MADE ARE MORE THAN

3   SUFFICIENT, THAT YOU DON'T HAVE TO ALLEGE SPECIFIC ALLEGATIONS

4   AGAINST EACH DEFENDANT.

5           I THINK THE ANTI -- THE STATUTE OF LIMITATIONS

6   ARGUMENT THAT IS BEING MADE BY THE DEFENDANTS IS NOT CORRECT,

7   AND I THINK THAT THE ALLEGATIONS THAT WE MADE IN OUR COMPLAINT

8   ARE SUFFICIENT TO COMPLY WITH THE STANDARDS IN THIS DISTRICT AND

9   IN THIS CIRCUIT.

10          **THE COURT:**  THANK YOU.

11          **MR. SAVERI:**  WOULD YOU LIKE TO HEAR FROM

12  MR. MONTAGUE, PLEASE?

13          **THE COURT:**  ABSOLUTELY.

14          **MR. MONTAGUE:**  THANK YOU, YOUR HONOR.  GOOD MORNING.

15          I THOUGHT IT WAS INTERESTING THAT MR. MILLER HAD TO

16  RELY UPON WHAT THE INDIRECT PURCHASERS ALLEGED AND WE DID NOT

17  ALLEGE IN ORDER TO MAKE THEIR ECONOMIC INFEASIBILITY OR

18  IMPLAUSIBILITY ARGUMENT.

19          BUT, QUITE TO THE CONTRARY, AND MR. SAVERI ALLUDED TO

20  OUR BRIEF, WE STATE, AND WE DO ALLEGE, THAT THE DEFENDANTS

21  THEMSELVES MAKE ABOUT 77 TO 80 PERCENT OF ALL OF THE CRT TUBES.

22  SO ALL THESE OTHER RETAILERS WHO DON'T PURCHASE, WHO DON'T MAKE

23  TUBES, HAVE TO BUY THEM FROM THESE DEFENDANTS.  SO, OBVIOUSLY,

24  THEY HAVE TO INCORPORATE THE COSTS OF THOSE TUBES IN THEIR FINAL

25  PRICE.

1          THE DEFENDANTS THEMSELVES WHO ALSO INCORPORATE THE

2    TUBES INTO THE FINISHED PRODUCTS THAT THEY MAKE -- WHEN I SAY

3    "THEY MAKE," THEIR SUBSIDIARIES MAKE, THEIR INTEGRATED PARTS

4    MAKE, THEIR FAMILY CORPORATE MEMBERS MAKE, THAT'S WHAT WE

5    ALLEGED.  IF THEY DIDN'T MAKE SURE THAT THE PRICE OF THE

6    FINISHED PRODUCT DIDN'T INCORPORATE THE FULL PRICE OF THE CRT

7    TUBE WHICH THEY'RE MAKING, WHAT IS THE POINT OF GOING TO ALL

8    THIS TROUBLE, HAVING 500 MEETINGS AND SO, TO HAVE A CONSPIRACY?

9          IN FACT, I THINK, YOUR HONOR, THAT MR. SIMMONS, WHEN

10   HE REFERRED TO SAMSUNG, AS WHY WOULD THEY BE A MEMBER OF THE

11   CONSPIRACY, WELL, I THINK THAT THEY -- THEIR ARGUMENT, THE FACT

12   THAT THEY DON'T MAKE TUBES ACTUALLY PROVES OUR POINT, BECAUSE IN

13   PARAGRAPHS 166 AND 167 OF THE COMPLAINT, WE ALLEGE THAT SAMSUNG

14   AND ALL OF THE DIFFERENT SAMSUNG COMPANIES PARTICIPATED IN

15   HUNDREDS OF ILLEGAL BILATERAL AND ILLEGAL GROUP MEETINGS FROM

16   1995 TO AT LEAST 2006.  AND WE SAY -- WE HAVE IT BOTH IN

17   PARAGRAPH 166 AND 167.

18          SO, IT DOESN'T -- THAT JUST FORTIFIES THE FACT THAT

19   IT MAKES ECONOMIC SENSE THAT THE MANUFACTURERS OF CRT PRODUCTS,

20   SOME OF THEM JOINED THIS CONSPIRACY, ATTENDED THOSE MEETINGS.

21   WHY WOULD THEY ATTEND THE MEETINGS IF THEY WEREN'T THERE TO SEE

22   THAT THE PRICES WERE UPHELD?

23          THAT'S BASICALLY THE THEORY WE HAVE, AND I THINK WE

24   ALSO SAY IT IN EACH PARAGRAPH FOR EACH CORPORATE FAMILY WHEN WE

25   SAY, DEFENDANTS WISH TO ENSURE -- WE TALK ABOUT THE CRT

1   PRODUCTS' MANUFACTURING LEG OF THESE CORPORATE FAMILIES.  WE SAY

2   THE DEFENDANTS WISH TO ENSURE THAT THE PRICES FOR SUCH PRODUCTS

3   PAID BY DIRECT PURCHASERS WOULD NOT UNDERCUT THE PRICE OF

4   SOMETHING REACHED IN THEIR VARIOUS AGREEMENTS; THUS, SAMSUNG

5   COMPANIES WERE ACTIVE, KNOWING PARTICIPANTS IN THE CONSPIRACY.

6          WE SAY THAT FOR EACH CORPORATE FAMILY.  OTHERWISE,

7   WHY ARE THEY FIXING PRICES OF CRT?  IF THEY'RE NOT SEEING WHEN

8   THEY USE THEM IN THEIR OWN FINISHED PRODUCTS THAT PRICE FIX IS

9   NOT CARRIED FORTH AND GIVES THEM THE REVENUE THAT THEY WORKED SO

10  HARD TO MAKE SURE IS AT AN ARTIFICIALLY HIGH LEVEL.

11         THANK YOU.

12         **THE COURT:**  THANK YOU.  ANYONE ELSE?

13         **MR. ALIOTO:**  GOOD AFTERNOON, YOUR HONOR.  MARIO

14  ALIOTO ON BEHALF OF THE INDIRECT PURCHASERS.

15         IT'S ALL IN OUR BRIEFS, YOUR HONOR.  WE FILED A

16  VERY -- 150-PAGE BRIEF IN FRONT OF JUDGE LEGGE, AND THEN THE

17  SHORT VERSION OF THAT BRIEF IN RESPONSE TO THE OBJECTIONS.  OUR

18  ARGUMENTS ARE ALL IN THERE.  THERE'S NOTHING NEW TO RESPOND TO,

19  SO I'M NOT GOING TO REPEAT WHAT'S IN OUR PAPERS.  I WILL MAKE

20  JUST A COUPLE OF OBSERVATIONS, YOUR HONOR.

21         THIS COMPLAINT, OUR INDIRECT PURCHASER COMPLAINT, WAS

22  FILED MARCH 16TH, 2009, ALMOST A YEAR AGO.  THESE PROCEEDINGS,

23  EXHAUSTIVE BRIEFING, PROLONGED ARGUMENT.  JUDGE LEGGE HAD IT

24  UNDER SUBMISSION FOR QUITE SOME TIME, SPENT ALMOST A MONTH

25  DRAFTING AND REVISING HIS OPINION.  THE ISSUES HAVE BEEN ENTERED

1    AND DECIDED.  THERE'S ABSOLUTELY NO NEED FOR THIS TO GO BACK TO

2    JUDGE LEGGE.  WE WANT TO GET ON WITH IT.  WE WANT TO GET SOME

3    ANSWERS FILED AND GET THE CASE MOVING.

4            WHAT DID JUDGE LEGGE DO?  HE MADE A DETERMINATION OF

5    PLAUSIBILITY UNDER *IQBAL*, AND THIS IS -- THIS IS WHAT WE HAVE TO

6    WORK WITH UNDER *IQBAL*.

7            HOW DO YOU DETERMINE PLAUSIBILITY?

8            YOU MAKE A CONTEXT-SPECIFIC INQUIRY, THAT -- IN WHICH

9    THE COURT DRAWS ON ITS JUDICIAL EXPERIENCE AND COMMON SENSE.

10   THAT'S WHAT *IQBAL* SAYS, AND THAT'S WHAT JUDGE LEGGE DID.  HE

11   LOOKED AT THE COMPLAINTS IN THEIR ENTIRETY, AND HE DREW ON HIS

12   SUBSTANTIAL EXPERIENCE AND HIS COMMON SENSE TO MAKE HIS

13   DETERMINATION.

14           AND THIS IS THE DETERMINATION HE MADE WITH RESPECT TO

15   THE INDIRECT PURCHASER COMPLAINT, WE'RE READING NOW FROM HIS

16   REPORT.  I'M JUST GOING TO READ ONE PARAGRAPH, BECAUSE I THINK

17   HE SUMS IT UP PRETTY WELL HERE.  I'M NOT GOING TO DO IT MYSELF.

18   I'LL JUST TAKE JUDGE LEGGE'S LANGUAGE AT PAGE 10 OF HIS REPORT.

19               "PLAINTIFFS HAVE ALLEGED THE STRUCTURE OF

20               THE CRT PRODUCT MARKET AND ITS SUSCEPTIBILITY TO

21               PRICE-FIXING ARRANGEMENTS,"

22           CITING PARAGRAPHS 121 THROUGH 139, THAT'S 18 SEPARATE

23   PARAGRAPHS ON THAT ISSUE.

24               "THE COMPLAINT ALSO ALLEGES AGREEMENTS AND

25               ACTIONS BY THE DEFENDANTS TO FIX PRICES AND

1          PRODUCTION LEVELS,"

2          PARAGRAPHS 140 THROUGH 188, 48 PARAGRAPHS, WITH

3   SPECIFICITY.

4              "THOSE ALLEGATIONS NOT BE QUOTED IN DETAIL.

5              SUFFICE IT TO SAY THAT THEY ALLEGE MEETINGS,

6              LOCATIONS, DATES, TYPES OF MEETINGS, SPECIFIC

7              AGREEMENTS REACHED AT THE MEETINGS, AND THE

8              PARTICIPATION OF SPECIFIC DEFENDANTS.

9              "FOR EXAMPLE, PARAGRAPHS 166 THROUGH 168

10             ALLEGE DATES, COMPANIES, AND SOME PERSONS

11             PRESENT AND PARTICIPATING IN THE CONSPIRACY.

12             "THE COMPLAINT ALLEGES UNUSUAL PRICE

13             MOVEMENTS WHICH ARE CONTRARY TO PRINCIPLES OF

14             SUPPLY AND DEMAND."

15          PARAGRAPHS 192 THROUGH 202, ANOTHER TEN SEPARATE

16   ALLEGATIONS.  AND ALSO GOVERNMENT ANTITRUST INVESTIGATIONS ARE

17   ALSO CITED.

18          THERE HASN'T BEEN A COMPLAINT WITH THIS MUCH

19   SPECIFICITY, TO MY KNOWLEDGE, YOUR HONOR, IN A LONG TIME, IF

20   EVER.  AND JUDGE LEGGE, WITH THE BENEFIT OF ALL THE BRIEFS, WITH

21   THE BENEFIT OF THESE VERY, VERY DETAILED COMPLAINTS, REACHED

22   THIS CONCLUSION AND THIS SUMMARY.  SO I THINK THAT THE RECORD IS

23   PRETTY CLEAR AT THIS POINT, YOUR HONOR, THAT THE CLAIMS ARE

24   STATED.  THEY'RE STATED BEYOND ANY EXPECTATION OF ANY OF THESE

25   CASES WITH REGARD TO SPECIFICITY, AND THE CASES SHOULD BE -- THE

1  COMPLAINT SHOULD BE ANSWERED AT THIS POINT WITHOUT ANY FURTHER

2  PROCEEDINGS, YOUR HONOR.

3         THANK YOU.

4         **MR. MILLER:**  VERY BRIEFLY, YOUR HONOR.

5         ALL THE ALLEGATIONS ABOUT THE MEETINGS, THEY ALL

6  RELATE TO THE TUBES.  THAT'S OUR POINT.  WHEN YOU LOOK AT THEM

7  AND YOU LOOK AT THE FACTS ALLEGED, IT'S ALL ABOUT THE TUBES.

8         AND THE PLAINTIFFS SPECIFICALLY ACKNOWLEDGE, AND

9  MR. MARIO ALIOTO, HIS COMPLAINT IN PARAGRAPH 152 AND 154, THEY

10 SPECIFICALLY DISTINGUISH AGREEMENTS ON THE PRICE OF THE TUBES

11 AND THE SALES TO WHAT THEY CALL THE DIRECT PURCHASERS.  THE

12 DIRECT PURCHASERS ARE THE TV MAKERS AND MONITOR MAKERS, THE OEMS

13 THAT WE DESCRIBED BEFORE.

14        SO THEY SPECIFICALLY -- WE UNDERSTAND.  THAT'S WHY WE

15 SAID WE'RE NOT MAKING A *TWOMBLY* ARGUMENT WITH RESPECT TO

16 ALLEGATIONS ON A TUBE CONSPIRACY.  OKAY?

17        WE ARE RAISING THE POINT, AND *IQBAL* MAKES THIS CLEAR,

18 THAT YOU ARE REQUIRED TO LOOK DEFENDANT BY DEFENDANT AS TO

19 WHETHER THERE ARE SUFFICIENT EVIDENTIARY FACTS TO SUBJECT THE

20 DEFENDANT TO THE BURDEN OF THE DISCOVERY.  AND THE SUPREME COURT

21 DID THAT SPECIFICALLY AND INDIVIDUALLY AS TO THE DEFENDANTS IN

22 THE *IQBAL* CASE, JOHN ASHCROFT AND ROBERT MUELLER.

23        SO OUR POINT IS, AS A MATTER OF LAW, TO ANSWER YOUR

24 QUESTION, YES, YOU HAVE TO APPLY THE *IQBAL* STANDARDS DEFENDANT

25 BY DEFENDANT.  AND, ACTUALLY, MR. MONTAGUE ADMITTED, EVEN AS TO

1   SAMSUNG, THEY DID JUST LUMP EVERYBODY TOGETHER.

2           ON THE ECONOMIC POINTS, ALL THE ARGUMENTS THEY MAKE,

3   AND THEY MADE SOME IN THE PAPERS AND BEFORE THE COURT THAT

4   REALLY AREN'T ALLEGED SPECIFICALLY IN THE COMPLAINT, BUT THEY

5   ALL HAVE TO DO WITH THE TUBE MARKET.

6           EVEN IF PANASONIC, AND I'M JUST USING THAT AS A

7   HYPOTHETICAL, EVEN IF THEY WANTED TO RAISE THE PRICE OF THE

8   FINISHED PRODUCT, THE TV, GIVEN THE FACT THAT THEY HAVE A

9   RELATIVELY SMALL MARKET SHARE, THEY CAN'T DO IT IF THERE ARE

10  OTHER MAJOR COMPETITORS OUT THERE ON THE FINISHED PRODUCTS, THE

11  SONYS, THE RCAS, THE GENERAL ELECTRICS.  YOU CAN'T RAISE THE

12  PRICE OF THE FINISHED PRODUCT IF THE FINISHED PRODUCT MARKET IS

13  COMPETITIVE.

14          I DON'T THINK THE DIRECT PURCHASERS CAN RUN AWAY FROM

15  THEIR COMPANION COMPLAINT, THE INDIRECT PURCHASER COMPLAINT.

16  THEY ARE BOTH HERE BEFORE YOU.  THEY CAN'T MAKE INCONSISTENT

17  ALLEGATIONS.

18          SO ALL THE ECONOMIC FACTORS THAT YOU HAVE HEARD AND

19  ARE ALLEGED HAVE TO DO WITH THE TUBE MARKET, THE HIGH

20  CONCENTRATION OF THE TUBE MARKET.

21          WE CITED AN INTERESTING RECENT CASE TO JUDGE LEGGE

22  CALLED _BAILEY LUMBER VERSUS GEORGIA-PACIFIC_, 2009 WESTLAW,

23  2872307.  IT'S AN AUGUST 2009 CASE, WHERE THE PLAINTIFFS THERE,

24  AGAIN, TRIED TO LUMP TOGETHER TWO DIFFERENT PRODUCTS, PLYWOOD

25  AND SOMETHING CALLED ORIENTED-STRAND BOARD, SOMETHING THEY NOW

1  PUT IN HOUSES AND NEW CONSTRUCTION.  BUT THE PLAINTIFF TRIED TO

2  LUMP THOSE TOGETHER AND MAKE UP AN ARTIFICIAL CONSTRUCT CALLED

3  STRUCTURAL PANELS, WHICH IS JUST LIKE WHAT HERE THE PLAINTIFFS,

4  IN OUR VIEW, ARE DOING CREATING THIS ARTIFICIAL CONSTRUCT, CRT

5  PRODUCTS.

6          AND THE COURT WENT THROUGH THAT AND SAID, THESE ARE

7  DIFFERENT PRODUCTS, DIFFERENT MARKETS, EVEN THOUGH IN THE *OSB*

8  CASE THERE HAD BEEN A PRIOR ANTITRUST ACTION.  HE SAID THESE ARE

9  DIFFERENT PRODUCTS; I'M NOT GOING TO ACCEPT AT THE PLEADING

10 STAGE THIS ARTIFICIAL CONSTRUCT MARKET.

11         JUDGE ILLSTON -- AGAIN, WE TALKED ABOUT HER OPINION.

12 THE FIRST TIME AROUND SHE GRANTED THE MOTION TO DISMISS.  THE

13 SECOND TIME SHE DID NOT RULE ON THE ISSUE OF THE INCLUSION OF

14 THE FINISHED PRODUCTS IN DETAIL.  THE CASE THERE INVOLVES,

15 AGAIN, THE PANELS, NOT THE -- AND SHE DID SAY, I'M GOING TO LOOK

16 AT THAT LATER.  SHE DID SAY THE DEFENDANTS CAN RAISE THE

17 QUESTION OF WHAT'S THE RIGHT PRODUCT LATER IN THE CASE.  SHE

18 DIDN'T MAKE A DETERMINATION THAT IT WAS -- THAT IT WAS PROPER TO

19 HAVE A CASE ON BOTH TUBES OR PANELS AND FINISHED PRODUCTS.

20         AND WHAT WE BELIEVE IS WHEN IT'S REMANDED, JUDGE

21 LEGGE SHOULD ASK THEM TO REPLEAD SO THAT THEY CAN MAKE SPECIFIC

22 ALLEGATIONS ABOUT WHAT RELATION TO THE TUBES AND WHAT RELATES TO

23 THE FINISHED PRODUCTS.

24         YOU DON'T SEE -- I MEAN, YOU HAVE A CONCLUSION.  THEY

25 SAY, WELL, THE FINISHED PRODUCT PRICES DIDN'T GO DOWN AS MUCH AS

1   THEY CLAIM THEY COULD HAVE OR WOULD HAVE IN A COMPETITIVE

2   MARKET.   THEY MAKE A CONCLUSION.   BUT UNLIKE IN SOME COMPLAINTS,

3   THEY DON'T HAVE FACTS ABOUT THAT IN DETAIL, AND THE FACTS THEY

4   HAVE ARE CONFUSING, BECAUSE THEY HAVE A CHART FOR JUST TWO OR

5   THREE YEARS OF WHAT THEY CALL AVERAGE PRICES OF CRT PRODUCTS,

6   BUT YOU CAN'T TELL ARE THEY TALKING ABOUT THE TUBES OR THE

7   FINISHED PRODUCTS?

8           WE KNOW, AND YOU KNOW, AND THEY KNOW THAT, IN FACT,

9   THE CRT MARKET HAS PLUMMETED, THAT THE PRICES HAVE GONE DOWN

10  OVER THE LAST FIVE, SIX, SEVEN, TEN YEARS.

11          AND, REMEMBER, THEY WANT TO GO BACK 20 YEARS IN

12  DISCOVERY.   THERE IS DISCOVERY HAPPENING.   MR. ALIOTO SAID THE

13  CASE SHOULD GO FORWARD.   WELL, WE JUST PRODUCED DOCUMENTS.   WE

14  JUST ASKED THEM FOR DOCUMENTS.   AND THEY'RE HUNDREDS OF

15  THOUSANDS OF DOCUMENTS WE NOW HAVE TO LOOK AT AND TRANSLATE.

16          SO, AGAIN, I THINK WE BELIEVE THAT JUDGE LEGGE LOOKED

17  AT THIS, BUT HE ERRED IN TWO FUNDAMENTAL WAYS, AS I SAID, AND

18  YOU SHOULD REMAND IT TO HIM.

19          **THE COURT:**  YOU KNOW, THINKING ABOUT -- I DON'T KNOW

20  HOW I'M GOING TO RULE YET.   I'M NOT GOING TO TELL YOU RIGHT NOW.

21  BUT THE CASE IS GOING TO GO ON ONE WAY OR ANOTHER WHETHER IT'S

22  REMANDED FOR FURTHER OBSERVATION BY JUDGE LEGGE OR IT'S GOING TO

23  BE AFFIRMED AND THE CASE WILL GO ON.   I THINK THAT PROBABLY THE

24  STATUTE OF LIMITATIONS MATTER SHOULD BE SOLVED RATHER EARLY IN

25  THIS CASE.

1        **MR. MILLER:**  WE AGREE, BECAUSE IT MAKES A HUGE

2  DIFFERENCE.

3        **THE COURT:**  BECAUSE, FIRST OF ALL, IF IT'S NOT

4  DECIDED EARLIER ON, MR. SAVERI IS GOING TO PUT A LOT OF PEOPLE

5  TO A LOT OF TROUBLE AND A LOT OF EXPENSES TO LATER ON FIND OUT

6  THE STATUTE OF LIMITATIONS IS ONLY FOUR YEARS OLD OR TOLLED TO

7  EIGHT YEARS, OR TWELVE YEARS, OR WHAT HAVE YOU.  IT SEEMS TO ME

8  THE BEST WAY TO HANDLE IT IS SOLVE THE STATUTE OF LIMITATIONS

9  FIRST AND GET RID OF THE OTHER MINUTIA LATER ON.

10        I DON'T KNOW HOW YOU PEOPLE FEEL ABOUT THAT.  WE CAN

11  DO THAT WITH APPROPRIATE MOTIONS.

12        **MR. MILLER:**  I THINK I WILL REQUIRE SOME DISCOVERY,

13  BUT MAYBE WHAT I WOULD SUGGEST, YOUR HONOR --

14        **THE COURT:**  I'M SUGGESTING IT.  YOU CAN DO WHAT YOU

15  WANT TO DO.  IT'S YOUR CASE.  I GET PAID BY THE YEAR.

16        **MR. MILLER:**  I THINK THAT'S SOMETHING THAT -- WHAT I

17  WOULD SUGGEST IS WE HAVE AN OPPORTUNITY TO DISCUSS THAT.  IT

18  WOULD REQUIRE -- WE WOULD HAVE TO TAKE THE DEPOSITIONS OF THE

19  NAMED PLAINTIFFS.

20        **THE COURT:**  WHY DON'T YOU AND MR. SAVERI AND

21  MR. ALIOTO AND THE REST OF THE COUNSEL HERE DISCUSS THAT?  IF

22  YOU WANT, I'D BE VERY HAPPY TO ENTERTAIN THOSE MOTIONS.  I THINK

23  IT WOULD SAVE YOU ALL A LOT OF TIME, EFFORT, AND MONEY.

24        **MR. MILLER:**  I THINK THAT COULD HAPPEN -- YOU COULD

25  REMAND IT, AS WE SUGGEST YOU SHOULD, AND WE STILL SHOULD ADDRESS

1  THAT AND MAYBE ADDRESS LIMITING THE ISSUES OR SEQUENCING THE

2  ISSUES.  AS I SAID, THERE IS DISCOVERY HAPPENING --

3      **THE COURT:**  I WASN'T -- I WAS SUGGESTING -- IF I

4  REMANDED IT, I WOULD INCLUDE THAT IN THE REMAND.

5      **MR. MILLER:**  OKAY.

6      **THE COURT:**  IF I DIDN'T REMAND IT, THEN, I THINK --

7  SUPPOSE ARGUENDO I SAID, I'M GOING TO AFFIRM THE SPECIAL

8  MASTER'S ORDER AND MOVE FORWARD.  WELL, I THINK BEFORE YOU MOVE

9  FORWARD, GENERALLY, YOU MOVE FORWARD WITH ALL THE PROBLEMS YOU

10 HAVE WITH THE CASE, RATHER THAN SOME OF SPECIFIC PROBLEMS WHICH

11 SHOULD CAUSE YOU A LOT OF -- IF YOU HAD TO GO BACK 20 YEARS --

12     **MR. MILLER:**  IT'S AN ENORMOUS BURDEN.

13     **THE COURT:**  IT SEEMS LIKE -- AND THEN LATER ON, TO

14 HAVE IT CHOPPED OFF, SEEMS LIKE A LOT OF WASTED EFFORT.  YOU

15 PEOPLE DECIDE WHAT YOU WANT TO DO, AND I'LL BE HAPPY TO

16 ACCOMMODATE YOU.

17     **MR. MILLER:**  I THINK THAT'S A VERY GOOD IDEA, EITHER

18 WAY.  AND THEN I THINK WE WILL DISCUSS THAT WITH THE LEAD

19 COUNSEL FOR DIRECTS AND INDIRECTS.  IF WE NEED TO GET BACK TO

20 YOU --

21     **THE COURT:**  FINE.

22     **MR. MILLER:**  -- OR JUDGE LEGGE ON THAT, THEN WE WILL

23 SOON.

24     **THE COURT:**  FINE.  ANYONE ELSE LIKE TO SAY SOMETHING?

25     **MR. SIMMONS:**  THIS IS IAN SIMMONS, YOUR HONOR,

1  O'MELVENY & MYERS, FOR SAMSUNG ELECTRONICS CORPORATION AND

2  SAMSUNG ELECTRONICS OF AMERICA.

3          ONCE AGAIN, THANK YOU FOR YOUR TIME.  I HOPE TO BE A

4  MINUTE, 45 SECONDS.

5          MR. MONTAGUE POINTED OUT PARAGRAPH 166 AND 167 OF THE

6  DIRECT PURCHASER COMPLAINT.  THAT PROVES THE POINT MR. MILLER

7  HAS MADE AND I HAVE MADE BEFORE, YOUR HONOR.

8          THOSE TWO PARAGRAPHS SAY SAMSUNG, THROUGH SEC,

9  SAMSUNG SDI, SAMSUNG MALAYSIA, SAMSUNG CHAYSON, ALL THESE --

10 SAMSUNG DID SOMETHING.  THOSE TWO PARAGRAPHS, YOUR HONOR, I

11 RESPECTFULLY SUBMIT ARE AN OBLITERATION OF THE CORPORATE

12 SEPARATENESS THAT APPLIED UNDER *BESTFOODS*.

13         THAT IS THE KIND OF PLEADING THAT *IQBAL* EXPRESSLY

14 SAYS IS LEGALLY INSUFFICIENT.  ON PAGE 14 OF THE *IQBAL* SLIP

15 OPINION FROM LAST TERM, THE SUPREME COURT IS CLEAR:  TO SURVIVE

16 A MOTION TO DISMISS, A COMPLAINT MUST CONTAIN SUFFICIENT FACTUAL

17 MATTER ACCEPTED AS TRUE.  SUPREME COURT POINTS OUT YOU DO NOT

18 ACCEPT; YOU FIRST DETERMINE THE KINDS OF PARAGRAPHS THAT ARE NOT

19 ENTITLED TO THE PRESUMPTION OF TRUTH.  YOU ELIMINATE THOSE.

20         YOU DETERMINE THE FACTUAL ALLEGATIONS THAT ARE

21 ENTITLED TO THE PRESUMPTION OF TRUTH THAT ALLOWS A COURT TO DRAW

22 THE REASONABLE INFERENCE THAT THE DEFENDANT, OR A DEFENDANT, HAS

23 ACTED UNLAWFULLY.  IT IS DEFENDANT BY DEFENDANT.

24         *IQBAL* BUILDS ON *TWOMBLY*.  IT DOESN'T SIMPLY REPEAT

25 IT.  ONE SIXTY-SIX AND ONE SIXTY-SEVEN PROVE *IQBAL'S* POINT.

1   THOSE PARAGRAPHS SHOULD BE IGNORED AND MY TWO CLIENTS SHOULD BE

2   DISMISSED.

3         ONE FINAL POINT THAT BEARS MENTIONING, AS

4   MR. MILLER'S MADE CLEAR, IF THERE'S A CASE HERE, IT'S ABOUT

5   TUBES.  SAMSUNG ELECTRONICS CORPORATION, SAMSUNG ELECTRONICS OF

6   AMERICA HAVE NOT RECEIVED ANY GRAND JURY SUBPOENA.  WHY?  THEY

7   DON'T MAKE TUBES.  THEY BUY THEM.  THEY DIDN'T PRODUCE ANY

8   DOCUMENTS TO THE GRAND JURY ON CRTS.  WHY?  WE ARE PURCHASERS.

9   WHY WOULD WE CONSPIRE AS TO A PRODUCT WE BUY?  YOU HAVE NOT

10  HEARD AN ANSWER TO THAT, AND I WOULD ASK THE COURT TO REMAND,

11  AND I WOULD ASK FOR MY CLIENTS TO BE DISMISSED.

12        THANK YOU FOR YOUR INDULGENCE.

13        **MR. LAU:**  THANK YOU, YOUR HONOR.  MR. LAU AGAIN

14  REPRESENTING THE TOSHIBA ENTITIES.

15        IN HIS ARGUMENT, MR. SAVERI NOTED THAT THIS COMPLAINT

16  ALLEGES THE EXISTENCE OF ALMOST 300 MEETINGS.  AND THEN, IN

17  RESPONSE TO YOUR HONOR'S QUESTION ABOUT WHETHER IT -- WHETHER

18  SPECIFICITY IS REQUIRED, MR. SAVERI SAID WE DO HAVE SPECIFIC

19  ALLEGATIONS IN THE COMPLAINTS.

20        I DISAGREE WITH HIS POSITION WITH RESPECT TO THE

21  TOSHIBA ENTITIES, BECAUSE IF YOU LOOK AT PARAGRAPH 171 OF THE

22  DIRECT PURCHASERS' COMPLAINT, THAT PARAGRAPH, IN RELEVANT PART,

23  STATES, QUOTE:

24             "TOSHIBA, THROUGH TC AND TDDT, PARTICIPATED

25             IN OVER 50 ILLEGAL BILATERAL AND GROUP MEETINGS

1          BETWEEN 1995 AND 2003 IN WHICH UNLAWFUL

2          AGREEMENTS OCCURRED," END QUOTE.

3          SO 50 MEETINGS OVER AN EIGHT-YEAR PERIOD.  THAT, YOUR

4    HONOR, THAT'S NOT THE SPECIFICITY THAT *TWOMBLY* WAS TALKING

5    ABOUT, AND I KNOW THIS BECAUSE, AGAIN, I LOOK AT FOOTNOTE 10 OF

6    *TWOMBLY*, WHERE THE COURT NOTED THAT QUOTE:

7          "APART FROM IDENTIFYING A SEVEN-YEAR SPAN IN

8          WHICH THE SECTION 1 VIOLATIONS WERE SUPPOSED TO

9          HAVE OCCURRED, THE PLEADINGS MENTION NO SPECIFIC

10         TIME, PLACE OR PERSON INVOLVED IN THE ALLEGED

11         CONSPIRACIES," END QUOTE.

12         AND THE *TWOMBLY* COURT LATER SAID THAT A PARTY SEEKING

13   TO RESPOND TO SUCH ALLEGATIONS WOULD HAVE, QUOTE, "LITTLE IDEA

14   WHERE TO BEGIN," UNQUOTE.

15         AND THAT'S US, YOUR HONOR.  BASED ON THEIR

16   ALLEGATIONS, ALL WE KNOW IS THERE WERE 50 MEETINGS THAT OCCURRED

17   SOMETIME BETWEEN 1995 AND 2003.  THAT DOES NOT PROVIDE US WITH

18   THE NOTICE TO WHICH WE ARE ENTITLED TO UNDER *TWOMBLY*.

19         THANK YOU, YOUR HONOR.

20         **MR. KESSLER:**  VERY QUICKLY, YOUR HONOR.

21         I THINK YOUR HONOR HAS YOUR FINGER ON THE -- ON THE

22   ISSUE IN THE CASE, WHICH IS HOW CAN WE TURN THIS CASE INTO THE

23   MORE MANAGEABLE, LIMITED CASE IT SHOULD BE, BOTH ON THE STATUTE

24   OF LIMITATIONS BASIS AND ON A PRODUCT SCOPE BASIS, AS OPPOSED TO

25   DOING TWO OR MORE YEARS OF DISCOVERY WITH UNBELIEVABLE COSTS

1 WITH DEFENDANTS WHO DON'T BELONG IN THE CASE, ONLY TO FIND OUT

2 THEN TWO YEARS FROM NOW THAT THERE SHOULD HAVE BEEN A FOUR-YEAR

3 STATUTE OF LIMITATIONS AND THE CASE, AT MOST, SHOULD HAVE ONLY

4 BEEN TUBES, NOT TELEVISIONS OR COMPUTER MONITORS.

5          THAT'S REALLY GUIDANCE WE'RE LOOKING FOR YOU TO GIVE

6 TO JUDGE LEGGE.

7          ON THE STATUTE POINT IN PARTICULAR, IF YOU JUST GIVE

8 THE GUIDANCE TO JUDGE LEGGE THAT IT HAS TO BE DEFENDANT BY

9 DEFENDANT, AS THE NINTH CIRCUIT SAID, AND THEY HAVE NO RESPONSE

10 TO -- THEY HAVE NO RESPONSE TO THAT, YOUR HONOR, OTHER THAN

11 SAYING, WE MET THE REQUIREMENTS.  JUDGE LEGGE SAID I DIDN'T DO

12 IT DEFENDANT BY DEFENDANT, THERE'S NO DOUBT ABOUT THAT.

13          FOR THE FRAUDULENT CONCEALMENT, IT MUST BE DEFENDANT

14 BY DEFENDANT.  IF YOU TELL THAT TO JUDGE LEGGE, HE'S GOING TO

15 DISMISS THE STATUTE OF LIMITATIONS BECAUSE THERE IS NO

16 DEFENDANT-BY-DEFENDANT EVIDENCE.  I MEAN, HE'LL GO BACK, SO

17 WE'LL QUICKLY GET DOWN TO THE FOUR YEARS.  BUT JUDGE LEGGE CAN

18 CONSIDER THAT ONCE YOU TELL HIM THE NINTH CIRCUIT SAID DEFENDANT

19 BY DEFENDANT.

20          MY CLIENT PNA, FOR EXAMPLE, DIDN'T ATTEND -- ONE OF

21 MY CLIENTS, PNA, DIDN'T ATTEND ANY OF THE MEETINGS.  THEY'RE A

22 U.S. SALES COMPANY.  THEY DID NOTHING TO FRAUDULENTLY CONCEAL

23 ANYTHING.  THEY COULDN'T ALLEGE ANYTHING ABOUT MY CLIENT.

24          SO, AGAIN, THAT'S THE TYPE OF GUIDANCE WE NEED IN

25 REVIEWING THESE RECOMMENDATIONS.

1          ON THE SCOPE I WOULD SAY, YOUR HONOR, AND I'M JUST

2    GOING TO READ TO YOU WHAT THEY SAY ABOUT THE MEETINGS, IN ALL

3    THESE MEETINGS, THESE ARE ALL OF THEM THAT CHUNGHWA ATTENDED,

4    THAT THE GRAND JURY IS INVESTIGATING, PARAGRAPH 152 OF THE

5    INDIRECT COMPLAINT SAYS THEY ALL FOLLOWED A FAIRLY TYPICAL

6    AGENDA.  WHAT WAS THE AGENDA?  I'M READING.

7              "FIRST, THE PARTICIPANTS EXCHANGED

8              COMPETITIVE INFORMATION, SUCH AS PROPOSED FUTURE

9              CRT PRICING."

10             NOT FINISHED PRODUCTS.  CRTS.

11             THEN THEY GO ON TO SAY:

12             "THE MEETING PARTICIPANTS THEN USE THIS

13             INFORMATION TO DISCUSS AND AGREE UPON WHAT PRICE

14             EACH WOULD CHARGE FOR CRTS," NOT FINISHED

15             PRODUCTS, "TO BE SOLD IN THE FOLLOWING MONTH OR

16             QUARTER.

17             "THEY DISCUSSED AND AGREED UPON TARGET

18             PRICES, PRICE INCREASES, SO-CALLED BOTTOM PRICE

19             AND PRICE RANGES FOR CRTS."

20             NOT FINISHED PRODUCTS.

21             SO WHAT THEY TRY TO DO IS TAKE -- WE AGREE THEY HAVE

22    SPECIFIC ALLEGATIONS ABOUT CRTS.  AND THEN THEY GO, WELL, BUT

23    IT'S ALL CRT PRODUCTS.  THAT MULTIPLIES THE CASE 35, 40 TIMES IN

24    SCOPE AND BRINGS IN A WHOLE GROUP OF DEFENDANTS WHO HAVE NOTHING

25    TO DO WITH THE TUBES, WHO, IF ANYTHING, ARE THE ALLEGED VICTIMS.

1      AND ON THE ISSUE YOU ASKED ABOUT ECONOMIC

2  IMPLAUSIBILITY, YOU ASKED THEM TO ADDRESS, AND THEY CAME UP --

3  AND THEY CITED YOU PARAGRAPHS THAT ARE MARKET SHARES AND

4  STRUCTURES ONLY ABOUT THE CRT MARKET, NOTHING ABOUT THE

5  TELEVISION MARKET.

6      THERE'S NOTHING IN THEIR COMPLAINT ABOUT MARKET

7  SHARES OF TELEVISIONS.  THERE'S NOTHING IN THEIR COMPLAINT ABOUT

8  MARKET SHARES OF MONITORS.  THERE'S NOTHING IN THEIR COMPLAINTS

9  ABOUT ANY STRUCTURAL CHARACTERISTICS OF THE TELEVISION OR

10 MONITOR MARKET.

11      THAT'S WHAT *TWOMBLY* SAID THEY CAN'T DO ON ECONOMIC

12 IMPLAUSIBILITY, YOUR HONOR.

13      SO WE'RE REALLY KIND OF BEGGING YOU TO GIVE JUDGE

14 LEGGE THIS GUIDANCE SO THAT THIS CASE DOESN'T BECOME A RUNAWAY

15 TRAIN OF UNBELIEVABLE PROPORTIONS.  WHEN THEY'VE PLEAD A NARROW

16 CASE IS THE ONLY CASE JUDGE LEGGE SHOULD BE LOOKING AT.

17      THANK YOU, YOUR HONOR.

18      **THE COURT:**  EXCUSE ME.  DOES SOMEBODY WANT TO REPLY

19 TO HIS OBJECTIONS?  HE SAYS HE SHOULDN'T BE IN IT AT ALL.

20      **MR. SPECKS:**  WHAT THE DEFENDANTS WOULD LIKE TO DO,

21 YOUR HONOR, HERE IS REWRITE OUR COMPLAINT IN A MANNER WHERE THEY

22 CAN GET IT DISMISSED.

23      THE FACT OF THE MATTER IS OUR COMPLAINT IS REPLETE

24 WITH ALLEGATIONS ALLEGING A CRT PRODUCTS CONSPIRACY.  THERE IS

25 NO WAY THAT A REASONABLE READING OF OUR COMPLAINT -- THAT ANYONE

1   COULD SAY THAT THE ONLY THING WE ALLEGE A CONSPIRACY ON ARE

2   CRTS.  THAT'S NUMBER ONE.

3           SO WHAT WE HAVE THERE ARE A CHERRY PICKING OF AN

4   ALLEGATION IN THE COMPLAINT.  THEY COME UP HERE AND REPEAT THE

5   ALLEGATION AND IGNORE THE OTHER ALLEGATIONS.  THAT'S WHY THE

6   COMPLAINT HAS TO BE READ AS A WHOLE.  THAT'S FIRST OF ALL.

7           SECOND OF ALL, ON FRAUDULENT CONCEALMENT, WE DO NOT

8   HAVE TO PLEAD INDIVIDUAL ALLEGATIONS AS TO EACH DEFENDANT'S ACT

9   OF CONCEALMENT.

10          WE CITE THREE APPELLATE DECISIONS IN OUR BRIEFS WHERE

11  THE COURTS HAVE HELD THAT AS A MATTER OF SUBSTANTIVE CONSPIRACY

12  LAW, ACTS UNDERTAKEN DURING COURSE OF AND IN FURTHERANCE OF A

13  CONSPIRACY, INCLUDING ACTS OF CONCEALMENT BY ONE DEFENDANT

14  CO-CONSPIRATOR, ARE ATTRIBUTABLE TO ALL DEFENDANT

15  CO-CONSPIRATORS.

16          THE CASE THEY RELY ON, THE *BARKER* CASE IN THE NINTH

17  CIRCUIT, WAS NOT A CONSPIRACY CASE.  THERE WAS NO ALLEGATION OF

18  CONSPIRACY.  AND TO THE EXTENT THE *BARKER* CASE RELIED ON SOME

19  DISTRICT COURT DECISIONS OUT OF NEW YORK, THEY'RE INCONSISTENT

20  WITH SECOND CIRCUIT'S DECISION, WHICH WE CITE IN *HENDRICKSON*

21  *BROTHERS*, WHICH HOLDS THAT ACTS OF ONE CO-CONSPIRATOR -- ACTS OF

22  CONCEALMENT OF ONE CO-CONSPIRATOR ARE ATTRIBUTABLE TO ANOTHER

23  CO-CONSPIRATOR.

24          SO, THE *BARKER* CASE DOES NOT STAND FOR THE

25  PROPOSITION THAT IN A CONSPIRACY CASE YOU HAVE TO ALLEGE ACTS OF

1  CONCEALMENT BY EACH AND EVERY CO-CONSPIRATOR.

2        THE *TWOMBLY* AND *IQBAL* DECISIONS DID NOT OVERRULE THE

3  CASE LAW THAT'S BEEN AROUND FOR A HUNDRED YEARS ON SUBSTANTIVE

4  CONSPIRACY LAW.

5        I HAVE NOTHING FURTHER.  THANK YOU.

6        **MR. TALADAY:**  THANK YOU.  JOHN TALADAY AGAIN FOR

7  PHILIPS DEFENDANTS.

8        YOUR HONOR, THE PLAINTIFFS WOULD HAVE YOU BELIEVE

9  THAT BECAUSE THEY'VE ALLEGED DETAILED FACTS ABOUT AN ALLEGED

10  CONSPIRACY, THAT THEY NEED NOT ALLEGE INDIVIDUALIZED FACTS ABOUT

11  DEFENDANTS.

12        YOUR HONOR, I WANTED TO POINT OUT THAT IN THE *IQBAL*

13  DECISION, THE SUPREME COURT ACCEPTED AS TRUE THAT THE WRONGFUL

14  CONDUCT ALLEGED BY THE PLAINTIFFS HAD BEEN SUFFICIENTLY PLED.

15  THE ONLY ISSUE BEFORE THE COURT IS WHETHER, AS TO ATTORNEY

16  GENERAL ASHCROFT, FBI DIRECTOR MUELLER, THERE WAS SUFFICIENT

17  ALLEGATIONS TO BIND THEM TO THAT WRONGFUL CONDUCT.

18        SO IF, AS PLAINTIFFS WOULD HAVE YOU BELIEVE, DETAILED

19  ALLEGATIONS ABOUT WRONGFUL CONTACT WERE SUFFICIENT TO BINDING

20  THE TWO DEFENDANTS, *IQBAL* WOULD HAVE TO HAVE BEEN DECIDED

21  CONTRARY TO THE OUTCOME.

22        I THINK THE PLAINTIFFS' DEFENSES, YOUR HONOR, ARE A

23  GREAT EXAMPLE OF THIS.  WE DID NOT PRODUCE CRTS FOR NEARLY TEN

24  YEARS.

25        THE ALLEGATIONS IN PARAGRAPH 164 OF THE COMPLAINT

1   STATE VERY CLEARLY THAT THE PHILIPS DEFENDANTS DID NOT ATTEND

2   MEETINGS AFTER 2001, YET THE PLAINTIFFS' ATTEMPT TO BIND US TO

3   THIS WRONGFUL CONDUCT, MERELY BY ALLEGING THAT OTHER PARTIES

4   ATTENDED AND WE'RE SOMEHOW GROUPED IN WITH THEM ON VAGUE

5   ALLEGATIONS OF AGENCY.  THOSE KINDS OF ALLEGATIONS CANNOT STAND.

6   *IQBAL* DIRECTLY OPPOSES THE POSITION THAT PLAINTIFFS ARE TAKING.

7           THANK YOU.

8           **THE COURT:**  ANYONE ELSE?

9           **MR. SIMON:**  BRUCE SIMON ON BEHALF OF THE DIRECT

10  PURCHASER PLAINTIFFS.  I DID A LARGE PORTION OF THE ARGUMENT IN

11  FRONT OF JUDGE LEGGE WITH RESPECT TO THE FINISHED PRODUCTS, AND,

12  YOU KNOW, ONE OF THE THINGS ABOUT ORAL ARGUMENT, PEOPLE CAN SAY

13  A LOT OF THINGS, AND IT'S IN THE PAPERS, BUT THEY ELUCIDATE ON

14  IT AND PERHAPS STRETCH.

15          JUDGE LEGGE CITED 168 PARAGRAPHS AT PAGE 5 OF HIS

16  RECOMMENDATION, LINES 6 THROUGH 20, WHERE CRT PRODUCTS ARE USED

17  IN THIS COMPLAINT.

18          COUNSEL MENTIONED THE *LCD* CASE.  I'M ONE OF THE

19  CO-LEAD COUNSEL IN THE *LCD* CASE.  JUDGE ILLSTON IN THAT CASE

20  FOUND SO AS LONG AS YOU BOUGHT A PRODUCT THAT WAS THE SUBJECT OF

21  A CARTEL DIRECTLY FROM ONE OF THE DEFENDANTS, ON A MOTION TO

22  DISMISS THAT CANNOT BE ELIMINATED AS A CLAIM AND IT IS

23  ESSENTIALLY A FACTUAL ISSUE THAT SHE WILL DEAL WITH AT SUMMARY

24  JUDGMENT.

25          THAT'S EXACTLY WHAT EVERY ARGUMENT HERE IS TRYING TO

1   HAVE YOU DO:  WEIGH THE EVIDENCE RIGHT NOW WHEN DISCOVERY HASN'T

2   BEEN PRODUCED, AND THAT, IN FACT, IS WHAT IS GOING ON HERE.

3           IN FACT, IT'S IMPLAUSIBLE, THE ARGUMENT THAT THEY

4   MAKE.  WITHOUT THE TUBE, THERE CAN BE NO TV.  WITHOUT THE TUBE,

5   THERE CAN BE NO MONITOR.  THE PRICES ARE INEXTRICABLY

6   INTERTWINED, AND WE ALLEGE IT IN THE COMPLAINT.

7           AND, SPECIFICALLY, IN PARAGRAPHS 144 AND 146, IF YOU

8   AND YOUR CLERKS TAKE A LOOK AT IT, YOU'LL SEE WE ALLEGE

9   SPECIFICALLY THERE THAT THE PRICES FOR CRTS ARE SET WITH AN EYE

10  TO WHAT THE PRICE OF THE FINISHED PRODUCT WILL BE.  AND

11  THAT'S -- THAT HAS TO BE THE CASE.

12          SEVEN OF THE ELEVEN DEFENDANT FAMILIES HERE ARE WHAT

13  I'LL CALL VERTICALLY INTEGRATED COMPANIES.  THEY DO EVERYTHING

14  FROM SOUP TO NUTS.  THEY MAKE THE TUBE.  THEY PUT IT TOGETHER.

15  AND THEY SELL IT IN THE UNITED STATES.  IT WOULD BE A FICTION TO

16  LOOK AT THOSE COMPANIES AS BEING ANYTHING BUT ONE ENTITY.

17          AND ONE POINT I WANT TO MAKE ON SAMSUNG, BECAUSE I

18  DID THAT PART OF THE ARGUMENT, THIS IS A REFERENCE THAT WAS MADE

19  IN THE TRANSCRIPT OF JUDGE LEGGE AT PAGES 244 AND 246.

20          COUNSEL GOT UP AND SAYS A LOT OF THINGS.  SAMSUNG'S

21  COUNSEL GETS UP HERE AND SAYS HIS CLIENT, SAMSUNG ELECTRONICS

22  CORPORATION, THE PARENT COMPANY, AND SAMSUNG ELECTRONICS

23  AMERICA, THE COMPANY UNDER SAMSUNG ELECTRONIC CORPORATION,

24  REALLY DON'T HAVE ANYTHING TO DO WITH THE TUBE MANUFACTURERS,

25  WHICH ARE COMPANIES CALLED SDI.

```
 1              NUMBER ONE, THE SDI SAMSUNG COMPANIES, THEY HAVEN'T

 2    MOVED HERE.  THEY HAVE NOT MADE MOTION.

 3              IN THE SAMSUNG 2008 ANNUAL REPORT, SAMSUNG

 4    ELECTRONICS CORPORATION, THEY SAY -- AND THIS IS A FILING WITH

 5    AUDITED FINANCIAL STATEMENTS.

 6                   "INVESTMENTS IN BUSINESS ENTITIES IN WHICH

 7                   THE COMPANY HAS THE ABILITY TO EXERCISE

 8                   SIGNIFICANT INFLUENCE OF THE OPERATING AND

 9                   FINANCIAL POLICIES ARE ACCOUNTED FOR IN A

10                   PARTICULAR WAY."

11              AND ONE OF THE COMPANIES THAT IS DISCLOSED IN HERE AS

12    BEING A COMPANY THEY HAVE SIGNIFICANT INFLUENCE OVER IS SDI, THE

13    COMPANY THAT MAKES THE TUBES.  YOU CAN'T HAVE A COMPANY WITH ALL

14    ITS AFFILIATES AND PARENTS AND SUBSIDIARIES WORKING TOGETHER

15    WITHOUT HAVING THEM BE INTEGRATED.

16              IN FACT, ALL THE MONEY THAT FLOWS FROM THE TUBE

17    MANUFACTURER AND FLOWS FROM THE SALES OF THESE PRODUCTS AND THE

18    FINISHED PRODUCTS FLOWS UP TO THE PARENT COMPANY, SAMSUNG, AND

19    THAT'S THE WAY IT IS FOR SEVEN OUT OF THE ELEVEN ENTITIES HERE.

20    IT WOULD BE A FICTION, IN FACT, TO RULE THE OTHER WAY.  JUDGE

21    LEGGE GOT THAT, AND THAT'S WHY JUDGE LEGGE RULED THE WAY HE DID.

22              I WOULD SAY IN TERMS OF FRAUDULENT CONCEALMENT AND

23    STATUTE OF LIMITATIONS, THEY ARE VERY FACT INTENSIVE, AS YOUR

24    HONOR KNOWS.  JUDGE LEGGE MADE A RULING BASED ON THE ALLEGATIONS

25    IN THE COMPLAINT.  DISCOVERY HAS BEEN PRODUCED.  DOCUMENTS HAVE
```

1  BEEN PRODUCED IN THIS CASE.

2  IT WOULD BE VERY DIFFICULT TO RULE ON FRAUDULENT

3  CONCEALMENT AND STATUTE OF LIMITATIONS WITHOUT LOOKING AT THE

4  OVERALL SCOPE OF THE CONSPIRACY, AND HOW DETAILED THE MEETINGS

5  WERE, AND HOW THEY TRIED TO KEEP THEM SECRET, SOME OF WHICH

6  WE'VE ALREADY GIVEN YOU, YOUR HONOR.

7  LASTLY, BUT NOT LEAST, I THINK IF YOU TOOK THE

8  APPROACH JUDGE ILLSTON DID IN *LCD* AND TOOK THE ARGUMENTS AS MADE

9  BY DEFENDANTS AND INTERPRETED THEM AS TO WHAT THEY REALLY ARE,

10  WHAT ARE THE FACTS THAT RELATE TO THE PRODUCTS IN THIS CASE,

11  THEN WE COULD DO THAT ONCE WE HAVE THE FULL BENEFIT OF

12  DISCOVERY.  AND LIKE IN *LCD*, I THINK WE WILL FIND THAT THEY NOT

13  ONLY TALK ABOUT THE FINISHED PRODUCTS, BUT THERE'S AN

14  INEXTRICABLE RELATIONSHIP BETWEEN THE TUBES AND THE FINISHED

15  PRODUCTS, AND THAT'S THE FACTS IN *LCD*, AND I THINK THAT'S WHAT

16  THE FACTS IN THIS CASE WILL BE AS WELL.

17  **THE COURT:**  DO YOU SEE THE STATUTE OF LIMITATIONS

18  APPLYING EQUALLY TO EVERYONE THAT'S IN THE DIRECT -- YOU'RE IN

19  THE INDIRECT?

20  **MR. SIMON:**  I AM IN THE DIRECT CASE.

21  **THE COURT:**  AS THE INDIRECT DEFENDANTS APPLIES

22  EQUALLY TO EACH ONE OF THEM?

23  **MR. SIMON:**  I THINK YOU HAVE TO LOOK AT BOTH CASES

24  SEPARATELY, BUT THERE WILL BE OVERALL ISSUES ABOUT HOW THEY

25  TRIED TO COVER UP WHAT THEY WERE DOING AND WHAT KNOWLEDGE THERE

1  WOULD BE THAT WOULD APPLY TO BOTH.  BUT IN TERMS OF THE

2  PRODUCTS -- AND WE'RE DIRECT PURCHASERS VERSUS INDIRECT

3  PURCHASERS -- THERE MAY BE SOME DIFFERENCES AS TO HOW THEY DID

4  THINGS THAT MIGHT APPLY DIFFERENTLY.  THAT'S WHY WE HAVE TO HAVE

5  THE DISCOVERY, FRANKLY.

6          **THE COURT:**  WELL, YOU HAVE TO HAVE DISCOVERY.  BUT

7  ARE YOU SATISFIED WITH AN ORDER THAT WOULD SAY DISCOVERY FOR THE

8  INDIRECT GOES BACK FIVE YEARS, FOUR YEARS, A PARTICULAR PERIOD

9  OF TIME?  OR IS IT GOING TO BE INDIVIDUAL AS TO VARIOUS

10  DEFENDANTS?

11          **MR. SIMON:**  I THINK IT WOULD NOT BE INDIVIDUAL AS

12  TO --

13          **THE COURT:**  IT WILL OR WILL NOT?

14          **MR. SIMON:**  WILL NOT BE INDIVIDUAL AS TO VARIOUS

15  DEFENDANTS.

16          I THINK YOU'LL FIND IN THE DISCOVERY -- AND THE

17  DOCUMENTS HAVE BEEN PRODUCED NOW.  WE'VE JUST GOTTEN THEM.  WE

18  HAVEN'T LOOKED THROUGH ALL OF THEM -- THAT WHEN THEY MET

19  TOGETHER, THEY MET TOGETHER AND TRIED TO KEEP IT SECRET IN A

20  UNIFIED MANNER, AND UNLESS ONE OF THEM WENT OUT AND DISCLOSED,

21  IT WOULD APPLY TO ALL OF THEM.

22          IF YOU ARE TALKING ABOUT THE DEFENDANTS, THE STATUTE

23  OF LIMITATIONS ARGUMENTS WOULD APPLY TO ALL OF THEM.

24          SOME OF THEM GO IN AND OUT OF THE MARKET AT DIFFERENT

25  TIMES, YOUR HONOR, BUT, AS YOU KNOW, UNDER CONSPIRACY LAW, IF

1   THEY'RE IN FOR A PENNY, THEY'RE IN FOR A POUND.

2           **THE COURT:**  UNLESS THEY VOLUNTARILY ABANDON THE

3   CONSPIRACY, THEN THEY'RE OUT.

4           **MR. SIMON:**  WHICH NONE OF THEM HAVE SHOWN AT THIS

5   POINT.

6           **THE COURT:**  SO YOU WOULD BE SATISFIED, ARGUENDO NOW,

7   WITH THE COURT COMING OUT AND SAYING THERE'S A FOUR-YEAR STATUTE

8   OF LIMITATIONS ON THE INDIRECT DEFENDANTS?

9           **MR. SIMMONS:**  WHEN YOU SAY THE INDIRECT DEFENDANTS --

10          **THE COURT:**  I MEAN THE DEFENDANTS THAT ARE NAMED IN

11  YOUR COMPLAINT.

12          **MR. SIMON:**  IN THE DIRECT PURCHASER COMPLAINT, IF YOU

13  MADE A RULING -- AND WE, OBVIOUSLY, WOULD WANT YOU TO MAKE THE

14  RULING BECAUSE OF THE FRAUD CONCEALMENT, IT GOES BACK -- BUT

15  WHATEVER RULING YOU MAKE ON THE NUMBER OF YEARS WOULD APPLY.

16          **THE COURT:**  I'M NOT SAYING ANYTHING ABOUT NUMBER OF

17  YEARS.  A NUMBER.  YOU WOULD BE SATISFIED IT APPLIES TO FOUR

18  YEARS, AND NOT AN INDIVIDUAL STATUTE OF LIMITATIONS?  I AM

19  TRYING TO GET IT STRAIGHT WHAT YOU'RE THINKING OF.

20          **MR. SIMON:**  YOU COULD MAKE A STATUTE OF LIMITATIONS

21  DETERMINATION ON THE DEFENDANTS AS A GROUP IN THE DIRECT

22  PURCHASER ACTION, AND THE FRAUDULENT CONCEALMENT ALLEGATIONS

23  APPLY TO ALL OF THEM, AS MR. SPECKS JUST ARGUED TO YOU THE LAW

24  IS.

25          **THE COURT:**  I'LL PROBABLY HAVE TO ASK MR. SAVERI

1   THIS.  WOULD THAT APPLY ALSO TO THE DIRECT?

2          **MR. SIMON:**  I'M SPEAKING ON BEHALF OF THE DIRECTS.

3   IT WOULD APPLY IN THE DIRECTS.

4          **THE COURT:**  DIRECT AND INDIRECT?

5          **MR. SAVERI:**  MR. ALIOTO REPRESENTS THE INDIRECT, YOUR

6   HONOR.

7          **THE COURT:**  OKAY.  MR. ALIOTO THEN.

8          WOULD THE STATUTE OF LIMITATIONS FOR THE DIRECT AND

9   INDIRECT BE THE SAME, OR ARE THEY DIFFERENT?

10         **MR. ALIOTO:**  THE STATUTE OF LIMITATIONS IN THE

11  INDIRECT CASE ARE A LITTLE -- THE STATE STATUTES OF LIMITATIONS

12  APPLY IN THE INDIRECT CASE, YOUR HONOR.  AND THE STATE STATUTE

13  OF LIMITATIONS LAW APPLIES.  BUT WE BELIEVE THAT'S VERY SIMILAR,

14  IF NOT THE SAME, AS THE LAW IN THE DIRECT CASE.

15         SO I THINK IF I KNOW WHAT YOUR HONOR IS ASKING, ARE

16  YOU GOING TO BE DEALING WITH A BUNCH OF DIFFERENT ISSUES IN THE

17  INDIRECT CASE AND THE DIRECT CASE ON THE STATUTE OF LIMITATIONS,

18  IF I UNDERSTAND YOUR HONOR CORRECTLY?

19         **THE COURT:**  THAT'S IT.

20         **MR. ALIOTO:**  I DON'T BELIEVE SO, YOUR HONOR.  I THINK

21  IT'S GOING TO BE BASICALLY THE SAME PRINCIPLES.

22         **THE COURT:**  OKAY.  FINE.

23         LET'S HEAR FROM THE DEFENDANT.

24         **MR. SIMMONS:**  AGAIN, THANK YOU, YOUR HONOR.  IAN

25  SIMMONS FOR SAMSUNG ELECTRONICS CORPORATION, SAMSUNG ELECTRONICS

1    OF AMERICA.

2            YOUR HONOR, MR. SIMON READ TO THE COURT FROM AN SEC

3    FILING WHERE MY CLIENT -- I DON'T KNOW WHETHER IT'S SAMSUNG

4    ELECTRONICS CORPORATION, OR SEA, OR SEC IS DISCLOSING THAT IT

5    OWNS 20 PERCENT OF SAMSUNG SDI, THE TUBE MAKER.  IT'S BY LAW

6    REQUIRED TO DISCLOSE WHERE IT HAS AN EQUITY INTEREST.

7    TWENTY PERCENT DOESN'T MEAN CONTROLLING.

8            NOTHING HE READ IS ALLEGED IN THE COMPLAINT, MUCH

9    LESS FACTS THAT AN EQUITY HOLDER DOMINATES AND CONTROLS BY

10   SPECIFIC ACTIONS THE OPERATION OF THE TUBE MAKER.  HE MENTIONED

11   THAT THE TUBE MAKER, SDI, DIDN'T MOVE.  THAT'S CORRECT.

12           AS MR. MILLER HAS EXPLAINED, MR. KESSLER, ALL OF US,

13   THIS IS A TUBES CASE, SO THEY'VE PROVED OUR POINT.

14           THAT SEC FILING WHERE YOU'RE DISCLOSING AN EQUITY

15   INTEREST, 20 PERCENT, THAT'S IN OUR BRIEFS, DOESN'T MEET --

16   DOESN'T SAY ANYTHING ABOUT US BEING A PUPPETEER, DOMINATING AND

17   CONTROLLING THROUGH SPECIFIC ACTIONS.  IT'S SIMPLY NOT IN THE

18   COMPLAINT, AND IT HAS TO BE UNDER *IQBAL*, UNDER *BESTFOODS* AND

19   UNDER THE *NRG* CASE.

20           THANK YOU, YOUR HONOR.

21       **MR. KESSLER:**  YOUR HONOR, I PROMISE THIS WILL BE

22   EXTREMELY BRIEF.

23           HE MENTIONED *LCD* AND JUDGE ILLSTON'S DECISION.  IT'S

24   VERY IMPORTANT.

25           *LCD* DID NOT GO TO AN ALLEGATION OF CONSPIRACY IN THE

1  FINISHED PRODUCTS FOR THE LCD.  SO THEY DON'T HAVE THIS

2  GIGANTIC, EXPANSIVE ISSUE.  WHAT THEY HAVE IS INDIRECT

3  PURCHASERS, STANDING ISSUES ABOUT BUYING FINISHED PRODUCTS,

4  WHICH IS ENTIRELY DIFFERENT.

5          SOMEONE COULD CLAIM TO BE AN INDIRECT PURCHASER.  BUT

6  THE CONSPIRACY HERE, THEY'RE TRYING ALLEGE IN TWO DIFFERENT

7  MARKETS, WHICH IS A BIG PROBLEM.

8          THE SECOND PART RELATED TO THAT IS HE SAID, WELL,

9  THERE'S 164 PARAGRAPHS THAT MENTION CRT PRODUCTS.  THAT'S TRUE.

10 CRT PRODUCTS INCLUDE CRTS.  SO WHAT THEY DID BY THIS TACTIC,

11 THIS PLEADING TACTIC, IS WHEN THEY SAY THERE WERE MEETINGS

12 DISCUSSING CRT PRODUCTS, IT TURNS OUT IT'S ONLY CRTS, WHICH ARE

13 PART OF CRT PRODUCTS.

14          SO WHAT YOUR HONOR NEEDS TO DO IS SAY, BREAK IT UP.

15 THAT'S WHAT THE JUDGE SHOULD HAVE DONE, TELL US WHAT YOU REALLY

16 HAVE ABOUT FINISHED PRODUCTS BEFORE WE GO THROUGH THIS.

17          AND, FINALLY, MR. SIMON'S CLIENTS INCLUDE A COMPANY

18 LIKE SHARP OR A COMPANY LIKE SONY WHO BOUGHT THE TUBES.

19 ACCORDING TO MR. SIMON'S ANALYSIS, THEY ALL SHOULD BE DEFENDANTS

20 IN THIS CASE, HIS OWN CLIENTS, BECAUSE HE'S SAYING, WELL, IT'S

21 INEXTRICABLY LINKED, THE VICTIMS ARE LINKED WITH THE ALLEGED

22 PARTICIPANTS.  THAT'S THE FUNDAMENTAL PROBLEM HERE.

23          THERE ARE PEOPLE ON THIS SIDE WHO ARE JUST LIKE SONY,

24 WHO ARE JUST LIKE SHARP.  ALL THEY DID WAS BUY THE TUBES.  BUT

25 IF THEY'RE LINKED, THEN THEY ALL SHOULD BE DEFENDANTS.  BUT

1   THOSE ARE HIS VERY CLIENTS.  THOSE ARE THE DIRECT PURCHASERS,

2   YOUR HONOR.

3           IT JUST DOESN'T MAKE ANY ECONOMIC SENSE, WHICH IS WHY

4   WE BELIEVE IT HAS TO BE DISMISSED.

5           **MR. SIMON:**  WITH DUE WITH RESPECT TO MR. KESSLER, WHO

6   I DON'T BELIEVE IS IN THE *LCD* CASE, AND I'M CO-LEAD COUNSEL

7   THERE, TO CORRECT HIM, AND THE RECORD WILL REFLECT IN THAT CASE,

8   THAT IT IS A CASE WHICH ALLEGES THE PANELS, THE EQUIVALENT OF

9   TUBES, AND THE FINISHED PRODUCTS.

10          IN FACT, IN THE *LCD* DECISION OF JUDGE ILLSTON ON THE

11  MOTION TO DISMISS, WHICH IS 586 F.SUPP.2D 1109, AT PAGE 1118,

12  SHE SAYS:

13              "HERE THE COMPLAINT ALLEGES THAT THE DIRECT

14              PURCHASER PLAINTIFFS PURCHASED TFT LCD

15              PRODUCTS,"

16          SAME TERM AS USED HERE:

17              "DIRECTLY FROM CARTEL MEMBERS AT

18              SUPER-COMPETITIVE PRICES AS A RESULT OF A

19              CONSPIRACY TO FIX PRICES.

20              "DEFENDANTS DO NOT CITE ANY CASE HOLDING

21              THAT A PLAINTIFF WHO PURCHASED DIRECTLY FROM

22              ALLEGED CARTEL DOES NOT HAVE STANDING.  IN

23              CONTRAST, COURTS HAVE FOUND ANTITRUST STANDING

24              WHERE PLAINTIFFS PURCHASED DOWNSTREAM GOODS,"

25              THE FINISHED PRODUCTS.

```
1              "FROM A CARTEL OF MANUFACTURERS WHO MADE AND

2          FIXED THE PRICE OF A COMPONENT OF THOSE GOODS."

3              AND IT CITES TO TWO VERY IMPORTANT CASES WHICH HAVE

4   NOT BEEN MENTIONED BY ONE DEFENSE COUNSEL TODAY, YOUR HONOR.

5   LINERBOARD AT 305 F.3D 145, SUGAR AT 579 F.2D 13.  AND THE SUGAR

6   CASE IS ONE THAT SAYS, IF YOU DO NOT ALLOW A DIRECT PURCHASER TO

7   SUE FOR A FINISHED PRODUCT THAT CONTAINS A PRICE FIXED

8   COMPONENT, YOU WILL EFFECTIVELY CREATE A GAPING HOLE IN ANTI AND

9   TRUST PRIVATE ENFORCEMENT.

10             GAPING HOLE IS WHAT THEY'RE ASKING YOU TO LEAVE IN

11  THIS CASE.  WE KNOW WHY THEY WANT A GAPING HOLE, BECAUSE IT

12  MAKES THE CASE SMALLER.  THAT DOESN'T ANSWER THE QUESTION.  AND

13  IN DUE RESPECT TO MR. KESSLER, HE'S WRONG ABOUT LCD.

14         MR. MONTAGUE:  YOUR HONOR, CAN YOU TOLERATE ONE MORE?

15         THE COURT:  SURELY.

16         MR. MONTAGUE:  THANK YOU.  LADDIE MONTAGUE.

17             I WOULD LIKE TO CLEAR UP THE IQBAL CASE FOR THE

18  MOMENT, BECAUSE I THINK THE DEFENDANTS HAVE PUSHED IT FAR BEYOND

19  WHAT ITS INTENTION WAS.

20             IQBAL WAS NOT A CONSPIRACY CASE.  IT WAS A CASE UNDER

21  BIVENS, WHERE, IN ORDER TO LINK A DEFENDANT TO A PARTICULAR ACT,

22  YOU HAD TO PROVE THEIR INTENT, AND THAT'S ALL THAT CASE REFERRED

23  TO.  IT HAS NO APPLICATION TO A CASE LIKE THIS.  IN EVERY

24  CONSPIRACY CASE THAT HAS DEALT WITH, THAT ISSUE HAS SAID THAT IT

25  DOESN'T APPLY, AND IT'S BEEN DISTINGUISHED.  THAT'S THE FIRST
```

1    THING I WOULD LIKE TO SAY.

2              SECONDLY, I'D LIKE -- I'M NOT GOING TO READ IT, BUT,

3    YOUR HONOR, PLEASE LOOK AT PARAGRAPH 154 OF THE DIRECT PURCHASER

4    COMPLAINT, AND I'M TALKING ON BEHALF OF THE DIRECT PURCHASERS.

5    THAT IS THE COMPLAINT -- THAT IS THE PARAGRAPH WHICH EXPLAINS

6    EXACTLY WHAT THESE CORPORATE FAMILIES ARE AND HOW THE ATTENDANCE

7    AT THE MEETINGS AND THE INFORMATION WAS TRANSFERRED WITHIN THE

8    CORPORATE FAMILIES, AND THAT IS THE BASIS FOR WHY WE -- THAT IS

9    THE BEGINNING OF WHY WE SAY THAT THE -- ALL THE DIFFERENT

10   ASPECTS OF THE CORPORATE FAMILY, THOSE THAT MAKE THE TUBES AND

11   THOSE THAT MAKE THE FINISHED PRODUCTS ARE INVOLVED IN THIS

12   CONSPIRACY.

13             THE DEFENDANTS HAVE BEEN ARGUING THIS AS IF IT'S A

14   MOTION FOR SUMMARY JUDGMENT, AND IT'S NOT.  IT'S A MOTION TO

15   DISMISS.  ALLEGATIONS MUST BE TAKEN AS TRUE.  AND I BELIEVE IT

16   WAS JUDGE ARMSTRONG SAID, IN THE *GRAPHICS* CASE SAID:

17             "BUT AS THE PRIOR DEFENDANT'S MOTION TO

18             DISMISS NOTICE, DIRECT ALLEGATIONS OF CONSPIRACY

19             ARE NOT ALWAYS POSSIBLE, GIVEN THE SECRET NATURE

20             OF CONSPIRACIES, NOR ARE DIRECT ALLEGATIONS

21             NECESSARY."

22             WE HAVE SAID AS MUCH AS WE CAN POSSIBLY SAY WITHOUT

23   HAVING DISCOVERY ON WHAT WENT ON AT THESE MEETINGS, WHO ATTENDED

24   THEM.

25             IN FACT, WITH RESPECT TO THE CRT PRODUCTS IN

1    PARAGRAPH 143, AMONGST OTHER THINGS, WE ALLEGE THAT WITH RESPECT

2    TO THE MEETINGS ON THE CPT PRODUCTS, WHICH ARE -- CPT ARE THE

3    TUBES THAT GO INTO TELEVISIONS.  SO CPT PRODUCTS WOULD BE

4    TELEVISIONS.  WE SAY, ONE PERSON TYPICALLY SERVED AS THE CHAIR

5    OF THOSE MEETINGS SINCE 2002.

6             SO WE ACTUALLY HAVE AN ACTUAL ALLEGATION WITH RESPECT

7    TO A CPT -- CRT PRODUCT MEETING IN WHICH THE -- WHICH INVOLVED

8    TELEVISIONS.

9             EARLIER WE -- IN PARAGRAPH 140 WE SAY, AGREEMENTS AS

10   TO CRT PRODUCTS WERE CONDUCTED THROUGH THE BILATERAL MEETINGS AS

11   DESCRIBED ABOVE THROUGH INFORMAL MULTILATERAL MEETINGS AND

12   THROUGH MORE FORMAL GLASS MEETINGS.  ALL OF THOSE ARE FULLY

13   DESCRIBED IN THE COMPLAINT.  SO, WE SPECIFICALLY SAY THAT THE

14   AGREEMENTS AS TO CRT PRODUCTS WAS REACHED AT THOSE PARTICULAR

15   MEETINGS.

16            WITH RESPECT TO THE INDIVIDUAL DEFENDANT'S

17   ALLEGATIONS, AND WE'VE REFERRED TO JUDGE ILLSTON AND THE *LCD*

18   CASE, BUT IN THAT CASE, AFTER THE PLEADINGS WERE MADE, WHICH

19   WERE ALMOST IDENTICAL HERE INVOLVING THE SAME DEFENDANTS,

20   INVOLVING, BASICALLY, THE SAME PLEADINGS, SHE SAID:

21                 "THE COURT FINDS THAT THE AMENDED

22                 CONSOLIDATED COMPLAINTS MORE THAN ADEQUATELY

23                 ALLEGED AN INVOLVEMENT OF EACH DEFENDANT AND PUT

24                 DEFENDANTS ON NOTICE THAT THE CLAIMS AGAINST

25                 THEM.  CONTRARY TO THE DEFENDANTS' SUGGESTION,

```
 1              NEITHER TWOMBLY, NOR THE COURT'S PRIOR ORDER

 2              REQUIRES ELABORATE FACT PLEADINGS.  FURTHER, THE

 3              SUPREME COURT HAS RECOGNIZED, IN COMPLEX

 4              ANTITRUST LITIGATION, MOTIVE AND INTENT PLAY

 5              LEADING ROLES AND THE PROOF IS LARGELY IN THE

 6              HANDS OF THE ALLEGED CONSPIRATORS."

 7          I BELIEVE WE HAVE MORE THAN ENOUGH WHERE WE HAVE

 8  ALLEGED CONSPIRACY EXISTS, WHICH THE DEFENDANTS SAY WE'VE

 9  ALLEGED A CONSPIRACY.  WE'VE PUT MEMBERS OF THAT CONSPIRACY WHO

10  MANUFACTURED BOTH CRTS AND CRT PRODUCTS AS ATTENDING THOSE

11  MEETINGS.  WE'VE ALLEGED THOSE PRODUCTS WERE FIXED.  THAT'S ALL

12  WE HAVE TO DO TO SATISFY THE ISSUE OF WHAT PRODUCTS ARE INVOLVED

13  IN THE CASE.

14          AND, AGAIN, WHAT JUDGE ILLSTON SAID WITH THIS VERY

15  SAME THING WAS:

16              "TO THE EXTENT THE DEFENDANTS RAISE

17              QUESTIONS ABOUT THE SCOPE OF THE MARKET, THAT IS

18              WHICH PRODUCTS WERE INVOLVED, THE COURT FINDS

19              THAT THESE ARE FACTUAL QUESTIONS THAT ARE BETTER

20              ADDRESSED ON A FULLER RECORD AND NOT AT THE

21              PLEADING STAGE."

22          WE BELIEVE THAT WE HAVE DEFINITELY FULFILLED THAT

23  PARTICULAR FUNCTION.

24          THE LAST THING I'D LIKE TO ADDRESS, VERY QUICKLY --

25  I'M JUST GOING TO GIVE YOU PARAGRAPH NUMBERS, BECAUSE I BELIEVE
```

1   THAT MR. KESSLER, WITH RESPECT TO PANASONIC, REALLY HAS

2   MISSPOKEN WITH RESPECT TO WHETHER PANASONIC EVER PRODUCED TUBES,

3   AS WELL AS CRT PRODUCTS, AND I REFER YOUR HONOR TO PARAGRAPH 46

4   OF OUR COMPLAINT AND 47 OF OUR COMPLAINT.

5           AND THEN, WITH RESPECT TO SOME OF THEIR ACTIONS WITH

6   RESPECT TO THE CONSPIRACY, WE HAVE ALLEGATIONS IN PARAGRAPHS 162

7   AND 163 THAT THEY'VE ATTENDED MEETINGS, AND THEN WE HAVE

8   ALLEGATIONS IN PARAGRAPHS 181 THROUGH 185 WHERE THEY ACTUALLY

9   IMPLEMENTED CERTAIN ACTIONS AS A RESULT OF THE CONSPIRACY.

10          THANK YOU.

11          **THE COURT:**  THANK YOU.  ONE MORE?

12          **MR. MILLER:**  YOUR HONOR, I'M NOT A YOUNG MAN LIKE

13   YOU.  IF I DON'T TAKE A COMFORT BREAK, IF I DON'T GO TO THE

14   BATHROOM, I'LL BE IN BIG TROUBLE.

15          **THE COURT:**  ALL RIGHT.  FINE.

16          **MR. MONTAGUE:**  YOU CAN CONTINUE.

17          **THE COURT:**  YOU SURE YOU DON'T WANT TO STAY HERE AND

18   LISTEN TO THIS?

19          **MR. CORBITT:**  I ONLY HAVE A MINUTE, YOUR HONOR.

20   CRAIG CORBITT FOR THE INDIRECT PLAINTIFFS.

21          I DON'T KNOW HOW MUCH MORE THE DEFENDANTS WANT TO

22   SAY, BUT YOUR HONOR HAS HEARD THE EXTREMELY LENGTHY ARGUMENTS

23   TODAY, WITH THE ADMONITION NOT TO REPEAT ANYTHING THAT WAS IN

24   THE BRIEFS, I THINK VIRTUALLY EVERYTHING YOU HEARD WAS IN THE

25   BRIEFS FROM ONE SIDE OR ANOTHER.

1          BUT I WOULD JUST LIKE TO RESPOND BECAUSE I THINK IT

2    JUST ILLUSTRATES A RECURRING THEME HERE, WHICH IS THE

3    DEFENDANTS, APPARENTLY, HOPE THAT YOUR HONOR WILL NOT CAREFULLY

4    REVIEW THE COMPLAINT, WILL NOT READ JUDGE LEGGE'S

5    RECOMMENDATIONS, AND WILL NOT READ THE BRIEFS THAT THE PARTIES

6    HAVE FILED, BECAUSE THEY'RE JUST A NUMBER OF STATEMENTS THAT

7    THEY HAVE MADE TODAY THAT ARE FLATLY INCONSISTENT WITH WHAT'S IN

8    THE COMPLAINT AND WITH THINGS THAT JUDGE LEGGE ACTUALLY SAID.

9          I'D JUST LIKE TO GIVE A COUPLE OF VERY BRIEF

10   EXAMPLES.

11         FIRST OF ALL, COUNSEL GOT UP HERE AND TRIUMPHANTLY

12   REFERRED TO PARAGRAPH 152 OF THE INDIRECT COMPLAINT ABOUT THE

13   TYPICAL AGENDA AT THE GLASS MEETINGS, AND THEN READ FROM IT, AND

14   THAT IT ONLY SAID CRTS, AND, THEREFORE, THIS WAS SOME

15   DEVASTATING ADMISSION BY THE INDIRECTS THAT THERE WAS NOTHING TO

16   DO WITH CRT PRODUCTS THAT WENT ON AT THOSE GLASS MEETINGS, WHICH

17   ARE HIGH-LEVEL CONSPIRACY MEETINGS.

18         ALL HE HAD TO DO -- AND I'M SURE HE HAS, AND THE REST

19   OF THE DEFENDANTS HAVE, AND I RECOMMEND TO YOUR HONOR, IS LOOK

20   DOWN THREE PARAGRAPHS TO PARAGRAPH 155 AND 156 OF THE INDIRECT

21   COMPLAINT WHERE THERE ARE SPECIFIC ALLEGATIONS ABOUT DISCUSSIONS

22   AND AGREEMENTS WITH RESPECT TO CRT PRODUCTS.

23         ONE FIFTY-SIX IN PARTICULAR, A, AGREEMENTS ON CRT

24   PRODUCT PRICES, INCLUDING ESTABLISHING TARGET PRICES, BOTTOM

25   PRICES, PRICE RANGES AND PRICE GUIDELINES; B, PLACING AGREED

1  UPON PRICE DIFFERENTIALS ON VARIOUS ATTRIBUTES OF CRT PRODUCTS,

2  SUCH AS QUALITY OR CERTAINLY TECHNICAL SPECIFICATIONS; C,

3  AGREEMENTS ON PRICING FOR INTERCOMPANY CRT PRODUCT SALES TO

4  VERTICALLY INTEGRATED CONSUMERS.

5          SO THE ALLEGATION WHICH COUNSEL MADE TO YOUR HONOR

6  THAT ALL WE SAY ABOUT THE GLASS MEETINGS, ALL WE ALLEGE, REFER

7  TO CRTS AND NOT CRT PRODUCTS IS FLAT WRONG.

8          SIMILARLY, THE STATEMENTS THAT DEFENDANTS HAVE MADE

9  AT VARIOUS POINTS TODAY THAT JUDGE LEGGE, YOU KNOW, DIDN'T DO A

10  THOROUGH JOB, DIDN'T LOOK AT THIS, THAT, THE OTHER THING, DIDN'T

11  CONSIDER VARIOUS ISSUES BECAUSE HE FELL FOR THIS PLEADING TRAP

12  THAT WE SUPPOSEDLY SET ABOUT CRT PANELS, OR CRT TUBES, EXCUSE

13  ME, OR CRT PRODUCTS, THAT'S ALSO FLAT WRONG.

14          FOR EXAMPLE, THERE WAS A CONTENTION MADE EARLIER

15  TODAY THAT BECAUSE JUDGE LEGGE ACCEPTED ALLEGATIONS OF THE

16  INDIRECT AND THE DIRECT COMPLAINT ABOUT THE EXISTENCE OF CRT

17  PRODUCT CONSPIRACIES, THAT MEANT THAT HE DIDN'T LOOK AT ANY OF

18  THE UNDERLYING ARGUMENTS ABOUT THE FOREIGN TRADE ANTITRUST

19  IMPROVEMENT ACT OR ANTITRUST STANDING ISSUES UNDER ASSOCIATED

20  GENERAL CONTRACTORS.

21          TO THE CONTRARY, IF YOU LOOK AT PAGES 17 AND 18 OF

22  JUDGE LEGGE'S REPORT, YOU WILL FIND IN HIS DISCUSSION OF THE

23  FTAIA ISSUE, HE SAYS THAT THE COMPLAINTS CONTAIN NUMEROUS

24  ALLEGATIONS ABOUT CONDUCT IN THE UNITED STATES FACILITATING

25  CONSPIRACY; THESE ARE NOT CASES OF FOREIGN PLAINTIFFS ATTEMPTING

1   TO ABUSE UNITED STATES COURTS AND UNITED STATES ANTITRUST LAWS

2   TO SEEK REDRESS FOR INJURIES BROUGHT ABOUT BY FOREIGN COMMERCE,

3   WHICH WERE THE CASES THEY RELIED ON.

4          SIMILARLY, FOR ANTITRUST STANDING, UNDER *ASSOCIATED*

5   *GENERAL CONTRACTORS*, OR *AGC*, WHERE THEY SAY JUDGE LEGGE PAID NO

6   ATTENTION BECAUSE OF HIS ACCEPTING THE CRT PRODUCT ARGUMENT, HE

7   SAYS SPECIFICALLY THAT THE PLAINTIFFS IN THE INDIRECT CASE ARE

8   INDIRECT PLAINTIFFS, THE COMPLAINT IS WRITTEN ACCORDINGLY; THEY

9   HAVE ALLEGED ANTITRUST INJURIES, THE CLAIMED INJURIES ARE NOT

10  REMOTE; INDIRECT PLAINTIFFS -- I'M LOOKING AT PAGE 18, LINE 26

11  AND INTO LINE 19 (SIC) HAVE ALLEGED -- THEY HAVE ALLEGED THE

12  ELEMENTS OF STANDING UNDER *AGC*.

13         JUDGE LEGGE SPECIFICALLY LOOKED AT AND FOUND THAT THE

14  ALLEGATIONS WERE SUFFICIENT UNDER *ASSOCIATED GENERAL*

15  *CONTRACTORS*, LOOKED AT AND FOUND THAT THE ALLEGATIONS WERE

16  SPECIFIC AND WERE SUFFICIENT UNDER THE FOREIGN TRADE ANTITRUST

17  IMPROVEMENT ACT.

18         SO THERE'S NO NEED TO REMAND ANYTHING TO JUDGE LEGGE

19  TO ASK HIM TO TAKE ANOTHER FOUR MONTHS, AND HAVE ANOTHER NINE

20  HOURS OF ARGUMENT, AND ANOTHER 700 PAGES, WHICH MR. SAVERI

21  ACTUALLY UNDERESTIMATED, OF PAPERS FILED IN THIS MATTER.  HE DID

22  A VERY THOROUGH JOB, VERY PROFESSIONAL JOB.

23         I, TOO, HAVE BEEN PRACTICING FOR A LONG TIME.  ONE OF

24  MY FIRST CASES, I'M SURE YOUR HONOR DOESN'T REMEMBER ME, BUT I

25  USED TO WORK WITH FRED FURTH ON THE *RALPH WILSON* CASE.  I THINK

1    THE FIRST TIME I EVER APPEARED IN COURT WAS BEFORE YOUR HONOR

2    MANY YEARS AGO IN CONNECTION WITH THAT CASE.  I HAD A NUMBER OF

3    CASES WITH JUDGE LEGGE.  HE CERTAINLY IS NOT WILDLY RADICAL.  HE

4    IS A VERY CAREFUL, CONSERVATIVE, AT LEAST WE ALWAYS THOUGHT AS

5    PLAINTIFF'S LAWYERS, CAREFUL JUDGE.  HE DID A VERY CAREFUL JOB

6    HERE, THE RIGHT JOB.  AND WE URGE YOUR HONOR TO AFFIRM IN ALL

7    RESPECTS JUDGE LEGGE'S REPORT AND RECOMMENDATIONS.

8            THANK YOU.

9            **MR. KESSLER:**  YOUR HONOR, JUST A POINT OF PERSONAL

10   PRIVILEGE, ONLY BECAUSE COUNSEL STATED THAT I SOMEHOW MISLEAD

11   THE COURT BY GOING TO PARAGRAPH 152 AND IGNORING THE FOLLOWING

12   PARAGRAPHS.  I URGE YOUR HONOR TO LOOK AT THOSE FOLLOWING

13   PARAGRAPHS THEY MENTION, 155, 156, BECAUSE IT PROVES MY POINT.

14           WHAT THEY DO, YOUR HONOR, IN 156 IS THEY MAKE

15   ALLEGATIONS ABOUT CRT PRODUCTS, CRT PRODUCTS THEY DEFINED TO

16   INCLUDE THE TUBES AND THE TELEVISIONS, THE TUBES AND THE

17   MONITORS.

18           SO WHEN THEY MAKE THAT ALLEGATION, YOU DON'T KNOW, I

19   DON'T KNOW, NO ONE KNOWS, ARE THEY ALLEGING ABOUT THE CRTS, THE

20   TUBES, OR ARE THEY ALLEGING ABOUT THE TELEVISIONS, OR ARE THEY

21   ALLEGING BOTH?

22           WHAT OUR POSITION IS, BECAUSE WE KNOW FROM THE OTHER

23   PARAGRAPHS, AND CHUNGHWA, AND EVERYTHING ELSE, THAT THESE

24   MEETINGS ONLY INVOLVE TUBE PRICES, THIS LUMPING TOGETHER UNDER

25   THE CONCEPT OF CRT PRODUCTS IS A DELIBERATE ATTEMPT TO MAKE IT

1  IMPOSSIBLE TO TELL.

2          SO IT'S VERY SIMPLE.  ALL THAT NEEDS TO BE DONE IS

3  MAKE THEM PLEAD SEPARATELY FINISHED PRODUCTS VERSUS CRTS.  IF

4  THEY HAD TO DO THAT UNDER *TWOMBLY*, THERE IS ABSOLUTELY NO WAY WE

5  WOULD HAVE THIS CONFUSION.

6          THAT'S ALL I HAVE TO SAY, YOUR HONOR.  THANK YOU.

7          **THE COURT:**  ANYBODY ELSE AT THIS STAGE?  I WOULD LIKE

8  EVERYBODY TO BE HAPPY.  THE UNHAPPINESS COMES LATER.

9          THE MAIN THING I'M INTERESTED, THE WHOLE THING -- I'M

10  NOT GOING TO TAKE ANY FOUR MONTHS, I CAN TELL YOU THAT; I WANT

11  THIS CASE TO BE ROLLING ALONG -- IS THE MATTER OF THE STATUTE OF

12  LIMITATIONS.  I THINK THAT'S ONE OF THE IMPORTANT MATTERS IN THE

13  CASE SO FAR, IS THE AMOUNT OF TIME, LABOR, AND EFFORT, AND WHAT

14  HAVE YOU.  IF YOU CAN GET TOGETHER WITHIN THE NEXT WEEK TO TEN

15  DAYS, LET ME KNOW WHAT YOUR ATTITUDE ON THAT IS.  IF YOU COME TO

16  A CONCLUSION, FINE.  IF YOU CAN'T, THAT'S FINE, TOO.  I'LL MAKE

17  THE CONCLUSION THEN.  THANK YOU VERY MUCH.

18          **THE CLERK:**  ALL RISE.  THIS COURT STANDS IN RECESS.

19                  (PROCEEDINGS ADJOURNED.)

20

21

22

23

24

25

**CERTIFICATE OF REPORTER**

      I, JOAN MARIE COLUMBINI, OFFICIAL REPORTER FOR THE

UNITED STATES COURT, NORTHERN DISTRICT OF CALIFORNIA, HEREBY

CERTIFY THAT THE FOREGOING PROCEEDINGS IN MDL 1917,

C 07-5944 SC, IN RE:  CATHODE RAY TUBE ANTITRUST LITIGATION,

WERE REPORTED BY ME, A CERTIFIED SHORTHAND REPORTER, AND WERE

THEREAFTER TRANSCRIBED UNDER MY DIRECTION INTO TYPEWRITING;

THAT THE FOREGOING IS A FULL, COMPLETE AND TRUE RECORD OF SAID

PROCEEDINGS AS BOUND BY ME AT THE TIME OF FILING.

      THE VALIDITY OF THE REPORTER'S CERTIFICATION OF SAID

TRANSCRIPT MAY BE VOID UPON DISASSEMBLY AND/OR REMOVAL FROM THE

COURT FILE.

                  S/B JOAN MARIE COLUMBINI

           _____

             JOAN MARIE COLUMBINI, CSR 5435, RPR

                 FRIDAY, MARCH 26, 2010