### SAVERI & SAVERI, INC.
706 SANSOME STREET
SAN FRANCISCO, CALIFORNIA 94111
TELEPHONE: (415) 217-6810
TELECOPIER: (415) 217-6813

### *Trump Alioto Trump & Prescott* ATTORNEYS LLP
2280 Union Street
San Francisco, California 94123
(415) 563-7200
FAX (415) 346-0679

July 7, 2010

Jeffrey L. Kessler
DEWEY & LEBOEUF LLP
1301 Avenue of Americas
New York, NJ 10019

David L. Yohai
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153

Re:   *In re Cathode Ray Tube (CRT) Antitrust Litigation*, Case No. 07-5944 SC

Dear Jeffrey and David:

This letter is to memorialize our meet and confer discussion held June 9, 2010 regarding the responses of Panasonic Corporation, Panasonic Corporation of North America, and MT Picture Display Co., Ltd. (collectively, the "Panasonic Defendants") to Direct Purchaser Plaintiffs' First Set of Interrogatories, Direct Purchaser Plaintiffs' First Set of Requests for Production of Documents, Direct Purchaser Plaintiffs' Second Set of Requests for Production of Documents, Indirect Purchaser Plaintiffs' First Set of Requests for Production of Documents and Indirect Purchaser Plaintiffs' Second Set of Requests for Production of Documents.

As a preliminary matter, we note that Judge Conti's June 3, 2010 Order (Docket No. 724) at page 3, ¶2. provides that the parties "are to begin the production of the documents which they have agreed to produce by June 18, 2010." Despite this, we have not received a production from your clients. Please advise when you intend to begin your production of documents.

With respect to our June 9, 2010 meet and confer call, at the outset we agreed that it would be most productive to address the three overarching objections by the Panasonic Defendants to Plaintiffs' discovery requests: (1) the Panasonic Defendants' objections with respect to the relevant time period; (2) the Panasonic Defendants' objections with respect to information and documents related to CRTs and CRT Products outside the U.S.; and (3) the

Jeffrey L. Kessler
David L. Yohai
July 7, 2010
Page 2

Panasonic Defendants' objection to the provision of information and the production of documents concerning CRT Products.

As we stated during our call, Plaintiffs are prepared to work with you in good faith to address the Panasonic Defendants' burden concerns. We believe this can be done in a number of well-established ways, such as limiting the custodians whose documents must be searched or by using search terms. The Panasonic Defendants' proposal to place arbitrary limitations on the temporal scope, the geographical scope *and* the subject matter of discovery is unprecedented and extremely unreasonable for many reasons, not least because it will deny Plaintiffs the evidence they need to prove their case.

Moreover, each of your clients' overarching objections is based on a fundamental misunderstanding of the relevant legal standard laid out in the federal rules as to the proper scope of discovery. Under FRCP 26(b) the relevant question is <u>not</u> whether the material sought is admissible or even whether it is "relevant." Rather, the question is whether this material is "reasonably calculated to lead to the discovery of admissible evidence." Rule 26(b)(1). "A request for discovery should be allowed 'unless it is clear that the information sought can have no possible bearing' on the claim or defense of a party." *In re Urethane Antitrust Litig.,* 261 F.R.D. 570, 573 (D. Kan. 2009) (citations omitted). Indeed, "in antitrust cases involving allegations of conspiracy, this liberal policy favoring discovery is particularly appropriate." *Id.* "Broad discovery is permitted [in antitrust cases] because direct evidence of an anticompetitive conspiracy is often difficult to obtain, and the existence of a conspiracy frequently can be established only through circumstantial evidence, such as business documents and other records." *In re Auto. Refinishing Paint Antitrust Litig.,* MDL No. 1426, 2004 U.S. Dist. LEXIS 29160, *8 (E.D. Pa. Oct. 29, 2004). Therefore, even if you are correct that some of the information Plaintiffs seek falls outside the strict confines of what is relevant or admissible at trial, we are nonetheless entitled to this information to the extent it is "reasonably calculated" to lead to the discovery of admissible evidence.

Although not discussed on the call, this letter also raises some issues concerning the Panasonic Defendants' responses to specific document requests in the hope that these issues can be addressed efficiently during our next discussion. Finally, this letter will also address our discussions of Plaintiffs' responses to Defendants' contention discovery.

## I.    The Panasonic Defendants' Objections to Plaintiffs' Relevant Time Period

Plaintiffs allege a conspiracy beginning at least as early as March 1, 1995 and continuing through November 25, 2007. *See* Docket No. 436 at ¶ 1; Docket No. 716 at ¶ 1. Plaintiffs have defined the relevant time period in this case to be January 1, 1995 to the present for all information and documents, except for transactional data for which the relevant period is from January 1, 1991 to the present.

The Panasonic Defendants are currently refusing to produce information and documents prior to the statute of limitations period, which means no discovery prior to November 25, 2003.

As a compromise, you offered to consent to discovery going back to 2002. You stated that the Panasonic Defendants would not produce documents for the entire relevant period (as defined by Plaintiffs) unless the Court issues a ruling finding that Plaintiffs provided sufficient evidence as to the Panasonic Defendants' fraudulent concealment of the conspiracy to withstand summary judgment. You reasoned that the Panasonic Defendants' burden with respect to producing information and documents prior to 2003 was too great to permit such discovery prior to the Court's summary judgment ruling. You claimed, without providing specific examples, that Plaintiffs' request for 19 years of transactional discovery and 15 years of non-transactional discovery was unprecedented in a price-fixing case. As Plaintiffs made clear during our call, your clients' position has no basis in the law or the facts of this case and makes no practical sense. Indeed, defendants have already made this argument and Judge Conti adopted no part of it.

First, Judge Conti has denied Defendants' motions to dismiss and upheld Plaintiffs' allegations, including the allegations with respect to the length of the conspiracy and fraudulent concealment. *See* Docket No. 665 at 21-22 (denying Defendants' motions to dismiss based on challenges to the sufficiency of Plaintiffs' fraudulent concealment allegations and noting "discovery is in its early stages"). Judge Conti's ruling paved the way for discovery related to Plaintiffs' allegations, including those prior to the statute of limitations period. While it is standard practice for antitrust plaintiffs to pursue discovery related to all of their claims after a court sustains their complaint, you were unable to cite any precedent in support of your extraordinary proposal to defer discovery relating to the earlier part of the relevant period until after the Court's summary judgment ruling on Plaintiffs' fraudulent concealment evidence or some other unspecified threshold showing by Plaintiffs.

Second, your clients' position ignores the undisputable facts that even if discovery were to be limited to matters related to fraudulent concealment and the application of the statute of limitations, 1) your clients' conduct (and that of all of the other defendants) in concealing the conspiracy before the limitations period would remain relevant; and 2) that as alleged in the complaint (and shown in the Chunghwa meeting notes) many acts of fraudulent concealment were committed in conjunction with the conspiratorial meetings and, therefore, there is no practical way to separate fraudulent concealment discovery from that of the conspiracy itself. Is it really your clients' position that Plaintiffs should submit to a summary judgment proceeding on the statute of limitations yet forego discovery on the question of fraudulent concealment?

Third, even if Plaintiffs were unable to prove their fraudulent concealment allegations, Plaintiffs would still be entitled to discovery regarding the conspiracy prior to the statute of limitations period. Such discovery is relevant to show how the conspiracy formed and when each defendant joined. *See Continental Ore v. Union Carbide & Carbon Corp.,* 370 U.S. 690, 699 (1962) (finding the exclusion at trial of evidence of the pre-limitations origins of a continuing conspiracy was reversible error); *Kellam Energy, Inc. v. Duncan,* 616 F. Supp. 215, 218 (D. Del. 1985) ("The cases clearly establish that the temporal scope of discovery in antitrust suits should not be confined to the limitations period of the antitrust statutes") (citing cases). And again, given that there is significant overlap between the discovery related to fraudulent

concealment and that related to the underlying conspiracy, the burden on the Panasonic Defendants will be the same. Thus, your proposal will not achieve any efficiency or ultimately reduce the burden on the Panasonic Defendants. To the contrary, it will only serve to delay and increase costs for all parties.

Fourth, your arguments related to any purported lack of evidence that the Panasonic Defendants engaged in fraudulent concealment are not well founded. As Plaintiffs discussed, the documents produced by Chunghwa Picture Tube Co., Ltd. contain hundreds of meeting minutes, many including notes of discussions of efforts to maintain the secrecy of the conspiracy. Your assertion that these meeting notes do not show that Panasonic Defendants participated in such discussions, even if true, is beside the point. If Plaintiffs can establish that the Panasonic Defendants were participants in the conspiracy, the Panasonic Defendants will be jointly and severally liable for acts of fraudulent concealment by any of its co-conspirators. *See In re Conseco Ins. Co. Annuity Mktg. & U Sales Practices Litig.,* No. C-05-04726, 2008 WL 4544441, *9 (N.D. Cal. Sept. 30, 2008) (fraudulent concealment allegations can be "attributed generally to 'defendants'" and need not be "allocated individually to any particular Moving Defendant."); *In re Rexplore, Inc. Securities Litig.,* 685 F. Supp. 1132, 1138 (N.D. Cal. 1988) ("[O]nce the plaintiff has been lulled into inaction by the fraudulent concealment of one defendant, the statute of limitations is tolled as to all the defendants") (abrogated on separate grounds); *see also In re Scrap Metal Antitrust Litig.,* 527 F.3d 517, 537 (6thCir. 2008), *cert. denied,* 129 S. Ct. 1673 (2009); *Riddell,* 866 F.2d at 1493; *New York v. Hendrickson Bros., Inc.,* 840 F.2d 1065, 1083-86 (2d. Cir.), *cert. denied,* 488 U.S. 848 (1988). While you took issue with this point of law in our conference, it was resolved against your clients in connection with the motions to dismiss.

Fifth, Plaintiffs' proposed relevant time period is appropriate given the length of the alleged conspiracy. *See New Park Entertainment, LLC v. Elec. Factory Concerts, Inc.,* 2000 U.S. Dist. LEXIS 531, at *10 (E.D. Pa. Jan. 13, 2000) ("The asserted scope of the conspiracy...provides the temporal boundary for discovery."). Plaintiffs' proposed relevant time period is corroborated by Chunghwa Picture Tubes' meeting reports and the U.S. Department of Justice's indictment of Chunghwa Picture Tubes' C.Y. Lin for participating in a conspiracy to fix the price of CRTs from at least March 12, 1997 until at least as late as April 7, 2003. These documents show that the Panasonic Defendants participated in dozens of illegal meetings in furtherance of the conspiracy from 1996 through 2006. In addition, contrary to your assertions, full discovery of long-running antitrust conspiracies is not unusual. For instance, in *In re Sorbates Direct Purchaser Antitrust Litig.,* Civil Action No. 98-4886 (N.D. Cal. Mar. 11, 2002), the district court certified a class of direct purchasers in an antitrust case alleging a 19-year conspiracy from January 1, 1979 to December 31, 1997. The time period in the *Sorbates* litigation was consistent with an indictment by the U.S. Department of Justice for participating in a price-fixing conspiracy from in or about 1979 until about 1996. *See* Indictment of Yuji Komatsu, *et al.,* No. CR 01-0019 (N.D. Cal. Jan. 23, 2001).

In the parallel *TFT-LCD* litigation, plaintiffs alleged an 11 year conspiracy from January 1, 1996 through December 31, 2006. There, the Special Master ordered defendants to produce transactional data for the two years before and two years after the class period. *See In re TFT-*

Jeffrey L. Kessler
David L. Yohai
July 7, 2010
Page 5

*LCD (Flat Panel) Antitrust Litig.,* Civil Action No. 08-mdl-1827, Docket No. 618 (N.D. Cal. May 15, 2008); *see also In re SRAM Antitrust Litig.,* Civil Action No. 07-cv-1819, Docket No. 442 (N.D. Cal. May 20, 2008) ("A reasonable discovery period for transactional SRAM data is from 11/1/95 to 12/31/07, which is two years before and two years after the dates set forth in the DOJ subpoena"). In other words, the defendants in *TFT-LCD* and *SRAM* produced transactional data going back 15 years and 13 years respectively. These defendants also produced non-transactional – *i.e.,* conspiratorial – discovery for the entire class period. Indeed, limiting the temporal scope of non-transactional discovery was never even raised by defendants in these cases, despite the long class periods.

Sixth, the Panasonic Defendants claim that providing discovery for Plaintiffs' relevant time period would impose an undue burden. The Panasonic Defendants have not, however, provided any information as to the burden entailed. It is well established that "[g]iven the broad scope of discovery in federal cases, a party objecting to discovery on the basis of vagueness, overbreadth, oppression or burden must state specific facts in support of its objection." *Johnson & Johnston v. R.E. Serv. Co., Inc.,* 2004 U.S. Dist. LEXIS 26973, at *5 (N.D. Cal. Nov. 2, 2004). *See also Flanagan v. Benicia Unified School Dist.,* 2008 U.S. Dist. LEXIS 39386, at *11-*12 (E.D. Cal. May 14, 2008) ("A successful objection should specifically state the objection and how it relates to the particular request being opposed, and not merely incant the familiar litany that a request is 'overly broad and burdensome'. . . . Rather, the objection must show specifically how, despite the broad and liberal construction afforded the federal discovery rules, each request is irrelevant or overly broad, burdensome or oppressive."). You could not provide any details as to the nature of this burden for either documents or transactional data. You therefore agreed to provide specific details concerning the Panasonic Defendants' burdens in providing discovery prior to the statute of limitations period, including the different burdens associated with the transactional and non-transactional discovery requests. Once Plaintiffs have an understanding as to the actual burdens encountered by the Panasonic Defendants in providing discovery prior to the statute of limitations period, we will be able to discuss potential modifications concerning the relevant time period, if appropriate.

Finally, the Court has already rejected your clients' position. Defendants asked the Court to impose the limitations inherent in your clients' position at the hearing on their objections to the Special Master's ruling on the motions to dismiss, and, at the Court's direction, the parties exchanged letter briefs on the issue. The Court did not, however, accept any of the limitations Defendants requested. Rather, it suggested only that the parties seek to "streamline and efficiently manage" discovery if possible, as well as explore the possibility of addressing the statute of limitations issue by means of a summary judgment motion "**after discovery.**" Order Approving and Adopting Special Master's Report, Recommendations and Tentative Rulings re Defendants' Motions to Dismiss, p. 23, n. 2. (Docket # 665) (March 30, 2010) (emphasis added). For you to read this as a directive to Plaintiffs to accede to summary judgment on issues as to which they have not been allowed full discovery is fantasy. "Streamline" does not mean "forego."

For all these reasons, Plaintiffs do not believe that any time period limitation is appropriate given the facts of this case. That does not mean, however, that Plaintiffs are not willing to make any compromise on this issue. As we explained at the case management conference before Judge Legge, and in our discovery conference, we are willing to work with you to identify a group of custodians for your clients' initial production of documents. With regard to non-transactional data – *i.e.*, conspiratorial evidence – Plaintiffs propose to limit discovery initially to documents covering the entire Relevant Time Period from the files of: (a) those from the Panasonic Defendants who participated in any of the bilateral or Glass meetings identified in the DPPs' or the IPPs' Consolidated Amended Complaints ("CAC"); (b) those from the Panasonic Defendants who consulted with any such meeting participant, or who received an oral or written report on any of those meetings; (c) any employee of any Panasonic Defendant who had other discussions or agreements upon pricing with another defendant or co-conspirator with respect to the products identified in the CAC; (d) any employee of any Panasonic Defendant who consulted with any such meeting participant, or who received an oral or written report on any of those discussions; and (e) any employee of any Panasonic Defendant who had ultimate price-setting authority for the products identified in the CAC. With regard to electronically stored documents, Plaintiffs are willing to discuss the use of search terms. Plaintiffs reserve the right to seek additional discovery at a later time.

As to transactional data, Plaintiffs are willing to work with your clients to minimize the burden of gathering this data to the extent it is not available in electronic or summary form. In this regard, however, Plaintiffs will require specific explanations of your clients' burdens, as well as the manner in which this data is, or has been, maintained. Plaintiffs are also willing to work to minimize any specific burdens you may identify in connection with any of the discovery so far propounded.

Plaintiffs believe this approach is more than reasonable. As we have discussed, this is an extraordinary case. The Chunghwa documents alone document in detail over five hundred price fixing meetings, including dozens attended by the Panasonic Defendants. There can be little question that your clients have, or should have, a great deal of knowledge of the conspiracy. The files of the attendees and others with knowledge of the meetings identified in the Chunghwa documents represent the obvious starting point for your clients' search. For your clients to take the position that they should not have to search or produce documents from these files – as they apparently do – is preposterous. Moreover, the meeting notes also contain, *inter alia*, detailed information about the parties' business, including production and sales figures, pricing, capacity, future plans, and much else. The scope and depth of this information strongly suggests that the attendees of the conspiratorial meetings were supported by a larger group of individuals within each corporate group.

Plaintiffs also believe that this approach is consistent with Judge Legge's expressed expectations at the case management conference.

## II.     The Panasonic Defendants' Objection to Providing Information Regarding CRTs and CRT Products Outside the U.S.

The Panasonic Defendants are currently objecting to producing information and documents deemed by you to relate to matters "outside the United States," on the grounds that such material is irrelevant. While you agreed to produce all relevant documents related to the U.S. and those documents discussing "worldwide" cartel activity, you were unable to provide guidelines as to how you would make a determination that a particular document relates to matters "in" the United States. More importantly, Plaintiffs maintain, and the case law agrees, that evidence concerning CRT and CRT Products sold outside the U.S. is highly relevant to our claims. As we discussed, the question of whether defendants' conspiratorial activity was directed at or involved the United States such that it is actionable notwithstanding the FTAIA is an important issue in this case. While defendants are free to argue that their conduct is not actionable under U.S. law, defendants cannot deny Plaintiffs discovery bearing on that question.

The Court has sustained Plaintiffs' allegations that defendants, including the Panasonic Defendants, engaged in a "global conspiracy" with respect to CRTs and CRT Products and that illegal cartel meetings occurring in countries all around the world. *See, e.g.*, Docket No. 716 at ¶¶ 4, 112 (alleging a "global conspiracy") and Docket No. 436 at ¶¶ 122-133 (alleging that international antitrust authorities are investigating anticompetitive activities in the CRT and CRT Products industries); ¶¶ 134-153 (alleging that Defendants effectuated their conspiracy through meetings in Taiwan, South Korea, Indonesia, Thailand, Singapore, Malaysia, China, the United Kingdom, and Europe). The purpose of this conspiracy was to artificially elevate CRTs and CRT Product prices globally. This obviously included prices in the United States, which was the largest consumer market for these products during the relevant period. It is no surprise that the U.S. Department of Justice's indictment of C.Y. Lin refers to a CRT conspiracy to fix prices "in the U.S. and elsewhere." Accordingly, evidence concerning CRTs and CRT Products sold outside the U.S. is clearly relevant to Plaintiffs' claims.

Even if Plaintiffs' allegations had been limited to a conspiracy in the U.S., evidence relating to anticompetitive conduct outside the U.S. would still be discoverable, because it is reasonably calculated to lead to the discovery of admissible evidence. Courts have repeatedly held that evidence of foreign price-fixing activities is relevant to establishing price-fixing conspiracies in the U.S. *See In re EPDM Antitrust Litig.*, 681 F. Supp. 2d 141, 163 (D. Conn. 2009) (in denying defendants' motion for summary judgment, the court rejected defendants' contention that evidence of anticompetitive conduct in Europe should be excluded, finding that "the existence of a European conspiracy makes it more likely that the defendants engaged in a U.S. EPDM conspiracy"); *In re Plastic Additives Antitrust Litig.*, 2004 WL 2743591, at *14 (E.D. Pa. Nov. 29, 2004) (discovery of foreign markets can "illuminate[] defendants' motive and opportunity for the alleged conspiracy within the United States, the breadth of the conspiracy, and the manner by which defendants fraudulently concealed the conspiracy"); *In re Vitamins Antitrust Litig.*, 2001 WL 1049433, at *11 (D.D.C. June 20, 2001) (finding that foreign discovery "would be relevant to show the breadth of the conspiracy, the role that each defendants' executives played in implementing, expanding, enforcing and concealing the conspiracy, and how the conspiracy was maintained for the length of time alleged" where plaintiffs' claims were limited to U.S. injuries). In *TFT-LCD* and *SRAM*, the Special Master

relied upon "the weight of authority, including from the United States Supreme Court," to order defendants to produce transactional data for sales outside the U.S.  *See In re TFT-LCD*, Civil Action No. 08-mdl-1827, Docket No. 618; *In re SRAM*, Civil Action No. 07-cv-1819, Docket No. 442.

As with the relevant time period issue, Plaintiffs are willing to address issues of burden by working with you to identify custodians most likely to have relevant information and to limit defendants' production, in the first instance, to those custodians.

**III.    The Panasonic Defendants' Objection to Providing
Discovery Concerning CRT Products**

The Panasonic Defendants are also objecting to producing information and documents related to CRT Products.  You claim that Plaintiffs have failed to provide a "reasonable basis for their claims regarding 'CRT Products'".  *See* Defendants General Objection 19 to Plaintiffs' Second Set of Document Request.  You suggest that this summary-judgment-like showing should be a prerequisite to Plaintiffs' discovery on the finished product allegations even though these allegations have already been deemed sufficient by the Court in its decision sustaining the complaints.  This argument is in direct conflict with both well established law[1] and with Judge Conti's opinion denying Defendants' motions to dismiss, where the Court held: "[T]here can be no doubt that the Direct Purchaser Plaintiffs are alleging conspiracies regarding both CRTs and CRT Products. . . . The trade and commerce allegations mention CRT Products.  The allegations regarding collusive meetings refer to CRT Products.  Indeed, according to the Direct Purchaser Plaintiffs, CRT Products are mentioned 135 times in the Direct Complaint."  (Docket No. 665 at 3).  Further, as discussed above with respect to the Panasonic Defendants' objections to the relevant time period, the Panasonic Defendants have failed to provide any detail as to the burden associated with producing responsive documents concerning CRT Products.

Your argument also ignores the fact that many of the defendants, including the Panasonic Defendants, are vertically integrated entities that produce (or produced) both CRTs and CRT Products.  Indeed, Panasonic Corporation itself, and not just its subsidiaries or affiliates, manufactured and sold both CRTs and CRT Products for the majority of the class period (1995-2003).  There is also evidence that the defendants discussed increasing end-product pricing and issues concerning vertical integration on a regular basis.  Judge Conti agreed with Plaintiffs that these facts make a CRT Product conspiracy economically plausible.  Docket No. 665 at 12-13 ("Such allegations make economic sense to the Court, especially given that MTPD was engaged in the manufacture of CRTs and is a Panasonic-related entity.").

And even if you were correct that there is no evidence of a separate "CRT Products Conspiracy," those products would still be in the direct purchaser case under the analysis of

---

[1] *See e.g., In re Urethane,* 261 F.R.D. at 573, *citing Mackey v. IBP,* 167 F.R.D. 186, 193 (D. Kan. 1996) ("A party does not have to prove a prima facie case to justify a request which appears reasonably calculated to lead to the discovery of admissible evidence.")

cases such as *In re Sugar Industry Antitrust Litigation*, 579 F.2d 13 (3d Cir. 1978) and *In re Linerboard Antitrust Litigation.*, 305 F.3d 145 (3d Cir. 2002). And, of course, you would still be obligated to produce documents describing the relationship between CRTs and CRT Products in the indirect purchaser case because such documents have a direct bearing on pass-on, which is a central issue there. Given that the Indirect Purchasers bought CRT Products, Plaintiffs therefore are entitled to discovery on the relationship between the price of CRTs and the price of CRT Products. See Indirect Purchasers' Second Set of Document Requests 42-46.

Despite the fact that Plaintiffs' claims concerning CRT Products are clearly articulated and have been sustained by the Court, Plaintiffs have agreed to attempt to narrow some of the discovery requests with respect to CRT Products, and we will be prepared to discuss these proposals during our next meet and confer discussion. As discussed, however, any such narrowing can only be done in the context of specific burden showings by the Panasonic Defendants.

Again, Plaintiffs are willing to address issues of burden by working with you to identify custodians most likely to have relevant information and to limit defendants' production, in the first instance, to those custodians.

## IV.   Plaintiffs' Responses to the Panasonic Defendants' Discovery

Plaintiffs will respond separately to Mr. Kessler's letter of June 24, 2010.

## V.   Issues Concerning Specific Discovery Requests

Although we did not discuss specific discovery requests on the June 9, 2010 call, Plaintiffs are addressing certain issues from Direct Purchaser Plaintiffs' First Set of Interrogatories, Direct Purchaser Plaintiffs' Second Set of Document Requests, and Indirect Purchaser' Second Set of Document Requests[2] here in the hope that this will lead to a more productive discussion during our next meet and confer session.

## Interrogatory No. 5 (Communications Between You and Any Other Producer of CRT and CRT Products, Including Date, Location, Participants, Subject Matter, Subsequent Actions, and Persons With Knowledge of the Communications)

Plaintiffs reserve our rights to generally pursue further interrogatory responses from the Panasonic Defendants. At the outset, however, we wish to address the Panasonic Defendants' responses to Interrogatory No. 5. The Panasonic Defendants indicated that they will identify documents sufficient to identify communications or meetings between the Panasonic Defendants and other sellers of CRTs, subject to their overarching objections. Plaintiffs request that the

---

[2] The Direct Purchaser Plaintiffs' Second Set of Document Requests and the Indirect Purchaser Plaintiffs' Second Set of Document Requests are identical except for the Request Nos. 42-46 in the indirect plaintiffs' requests. Therefore, the discussion below will relate to the Panasonic Defendants' responses to both sets of Requests, except where noted.

Panasonic Defendants provide a written response to Interrogatory No. 5. This Interrogatory goes to the core issue in this case – the meetings that facilitated the conspiracy – and Panasonic's response will narrow the issues and enable Plaintiffs to more efficiently identify potential custodians and deponents.

Courts in other antitrust cases have consistently compelled answers to similar interrogatories. *See, e.g., In re TFT-LCD Antitrust Litig.*, Civil Action No. 07-1827, Docket No. 983, Order dated May 13, 2009 at ¶ 2 (finding similar interrogatories will "narrow the focus of deposition discovery"); *In re Shopping Carts Antitrust Litig.*, 95 F.R.D. 299, 307 (S.D.N.Y. 1982) ("Providing this information by interrogatories may effect judicial economy and economic savings to the parties. Plaintiffs will know whom they have to depose; unnecessary depositions may be avoided…important conversations, communications and documents will be highlighted; delay may be avoided; and the issues for trial may be narrowed."); *In re Residential Doors Antitrust Litig.*, 900 F. Supp. 749, 753, 757 (E.D. Pa. 1995) (compelling responses to interrogatories regarding meetings and communications with competitors); *In re Potash Antitrust Litig.*, 161 F.R.D. 405, 408-09 & n. 5-6 (D. Minn. 1995) ("[W]e reject the Defendants' prodding to direct the Plaintiffs to exhaust their depositional discovery in determining who among the Defendants' officers, directors, and employees may have conferred in an effort to fix the price of potash…[W]e agree with the Courts which have preceded us in recognizing the superiority of Interrogatories in effectively ferreting out information that could be ascertained by the more invasive and costly means of deposition – at least as a classic instrument of first-wave discovery.").

**Document Request No. 6 (Software Instructions,
Manuals Necessary to Operate Transactional Data)**

You proposed to meet and confer with respect to Request No. 6. While Plaintiffs are also willing to discuss the Panasonic Defendants' production of materials responsive to Request No. 6, we believe that the most efficient approach is for the Panasonic Defendants to make an initial production, which Plaintiffs can then review and determine whether further production is necessary.

**Document Request No. 7 (All Documents Relating to
Pricing Policies, Including Rebates or Discounts)**

The Panasonic Defendants have indicated that they will produce documents sufficient to show "pricing policies" for CRTs and CRT Products sold in the U.S., subject to the relevant time period objection. However, the Request is substantially broader, calling for "all documents relating to policies, methods, formulas, or factors to be used in determining, computing, or quoting prices, including any rebates or discounts, in connection with the sale of CRT and CRT Products." Please confirm that the Panasonic Defendants' response to produce "pricing policies" will include not only policies but also pricing methods, formulas, or factors to be used in determining, computing or quoting prices, including rebates or discounts. Please also advise

Jeffrey L. Kessler
David L. Yohai
July 7, 2010
Page 11

Plaintiffs as to the burden associated with producing all responsive documents as opposed to those sufficient to show.

**Document Request No. 8 (Published Prices for CRT or CRT Products)**

The Panasonic Defendants responded that they will produce responsive documents sufficient to show their published prices. This is not sufficient. Document Request No. 8 seeks "all documents relating to any published prices for CRT or CRT Products," which would include prices published by other producers of CRTs or CRT Products found in the Panasonic Defendants' files. This Request would also include any internal discussions of how published prices were calculated. Such documents are highly relevant to demonstrating price coordination among Defendants. Please advise whether the Panasonic Defendants will produce such documents.

**Document Request No. 10 (Capacity and Capacity Related Information)**

The Panasonic Defendants' written responses to Request No. 10 omitted to address several subparts of the Request, specifically subpart b with respect to proposed changes in capacity, subpart d, subpart f with respect to slowdowns, subpart g, and subpart h. Please advise whether the Panasonic Defendants intend to produce documents in response to these subparts. The Panasonic Defendants also respond that they will produce documents sufficient to show the information requested in Document Request No. 10, but the Request calls for all responsive documents. Please advise Plaintiffs as to the burden associated with producing all responsive documents as opposed to those sufficient to show.

**Document Request No. 11 (Processes for Producing CRTs or CRT Products)**

The Panasonic Defendants responded that they would produce documents sufficient to show any industry standards for producing CRTs in response to Document Request No. 11. However, Request No. 11 seeks "documents sufficient to describe the processes for producing CRT and CRT Products, *including but not limited to,* any industry standards." (Emphasis supplied). Please advise whether the Panasonic Defendants will produce internal documents describing the production processes for CRTs and CRT Products in addition to documents reflecting industry standards. If not, please provide specific details regarding the burden associated with producing such documents.

**Document Request No. 14 (Swaps, Trades, Sales Between Panasonic Affiliates and With Any Other Producer of CRTs or CRT Products)**

Request No. 14 seeks "documents sufficient to identify and quantify all swaps, trades, sales, purchases or transfers of CRT or CRT Products between you and any of your affiliates, or between you and any other producer of CRT or CRT Products, and the price or any other

consideration involved in every such sale, swap, trade, purchase or transfer." The Panasonic Defendants responded that they would produce documents "sufficient to show intercompany transfers of CRTs" between Panasonic affiliates in the U.S., subject to the relevant time period objection. The Panasonic Defendants' responses do not address sales, swaps, trades, purchases or transfers between the Panasonic Defendants and other producers of CRTs or CRT Products. These documents are relevant to establishing the interrelationships between the co-conspirators with respect to CRT and CRT Products. Please advise Plaintiffs whether the Panasonic Defendants will produce such documents.

**Document Request No. 15 (Relationship Between Prices and Costs)**

The Panasonic Defendants referred to their responses to Request Nos. 8 (published prices) and 12 (cost information) in response to Request No. 15. While related, Request No. 15 seeks responsive documents on an issue distinct from pricing information and cost information, specifically the relationship between costs and price, which is intended to encompass the relationship between the pricing of CRTs and CRT Products. Please advise whether the Panasonic Defendants will produce responsive documents relating to the relationship between pricing of CRTs and CRT Products and the costs of producing, marketing, selling or distributing CRTs and CRT Products.

**Request No. 17 (Business Plans, Planning Analyses,
Budgets, Forecasts, and Sales or Profit Projections)**

The Panasonic Defendants' response to Request No. 17 mentions only business plans but does not address the other categories of documents sought, including planning analyses, budgets, forecasts, and sales or profit projections. Please advise whether the Panasonic Defendants will produce these types of documents.

**Request No. 19 (Percentage or Share of Industry Production,
Capacity, Sales or Shipments of CRTs or CRT Products)**

Request No. 19 seeks "all documents relating to your percentage or share of industry production, capacity, sales or shipments of CRT or CRT Products, or the percentage of share of industry production, capacity, sales or shipments of any other producer or seller of CRTs or CRT Products at any time during the period January 1, 1991 through the present." The Panasonic Defendants have agreed to produce "any formal studies" subject to their other objections. However, the Request encompasses additional documents beyond "formal studies," including internal analyses. Please advise whether the Panasonic Defendants will produce the additional documents sought by Request No. 19.

**Request No. 21 (Comparisons of CRTs and CRT Products
You Sell With Those Sold By Others)**

The Panasonic Defendants agreed to produce "published materials" in response to this Request. While "published materials" are included within the Request, Request No. 19 is substantially broader, calling for "all documents that compare or contrast each type, class, or category of CRT or CRT Products produced or sold by you with that of any other producer or seller of CRT or CRT Products." Please advise whether the Panasonic Defendants will produce additional responsive documents to Request No. 19, including but not limited to internal analyses.

**Request No. 23 (Conditions of Supply or Demand)**

Similar to its responses to Request Nos. 19 and 21, the Panasonic Defendants' response to Request No. 23 states that they will produce "pre-existing formal market studies or industry reports" relating to conditions of supply and demand subject to their overarching objections regarding geographic scope and time period. Request No. 23 seeks all documents relating to conditions of supply or demand for CRTs or CRT Products, which would include, *inter alia*, the Panasonic Defendants' internal analyses and discussions with competitors regarding supply and demand. Please advise whether the Panasonic Defendants will produce additional responsive documents to Request No. 23 beyond formal market studies or industry reports.

**Request No. 24 (Documents Relating to Proposed or Executed Purchases, Sales, Acquisitions, Mergers, Joint Ventures, Divestitures, Transfers, Spin-Offs or Any Other Change in Ownership of You or Another Company Relating to CRT or CRT Products)**

Defendants Panasonic Corporation and Panasonic Corporation of North America have refused to produce any documents in response to Request No. 24. Defendant MT Picture Display Co., Ltd. has agreed to produce only its joint venture agreement and any associated closing documents. Documents responsive to Request No. 24 are directly relevant to Plaintiffs' allegations. *See, e.g.,* Docket No. 436 at ¶ 114 [add indirect CAC cite] ("Involvement in long-standing joint ventures, both in the CRT market and closely related markets, also gave these supposed competitors continuous opportunities to discuss pricing, capacity utilization, and other important prospective market information. The mutually beneficial nature of the business relations between certain Defendants not only provided the opportunity to conspire; it also created a financial incentive to do so."). Please advise whether Panasonic Corporation and Panasonic Corporation of North America will produce the requested documents. If not, please provide specific details of the burden associated with producing these documents.

**Request No. 28 (Diaries, Calendars, Appointment Books, Travel Records, Telephone Logs and Bills, Trade Association Membership Information, and Personnel Files for Employees With Responsibilities for Pricing of CRTs or CRT Products)**

You proposed to meet and confer with respect to Request No. 28. While Plaintiffs are also willing to discuss the Panasonic Defendants' production of materials responsive to Request

Jeffrey L. Kessler
David L. Yohai
July 7, 2010
Page 14

No. 28, we believe that the most efficient approach is for the Panasonic Defendants to make an initial production of responsive materials for all persons the identification of whom is sought in Interrogatories Nos. 2 and 5.

**Document Requests Nos. 29 (Membership in Trade Associations), 30 (Documents Relating to Trade Association Meetings), and 31 (Documents Submitted to or Received from Trade Associations)**

Notwithstanding the Panasonic Defendants' objection regarding issues "outside the U.S.," your proposed production in response to Requests Nos. 29, 30, and 31 is unduly narrow. Any responsive documents concerning participation by U.S.-based employees in foreign trade associations concerning CRT or CRT Products should be produced.

**Document Request No. 32 (Announcements and Press Releases)**

The Panasonic Defendants respond that they will produce responsive documents that they issued, but the Request also seeks such documents issued by any of your competitors. Please advise whether the Panasonic Defendants will produce statements, announcements, disclosures or press releases issued by your competitors relating to CRT or CRT Products that are found in the files of the Panasonic Defendants.

**Request No. 37 (Documents Relating to, Prepared for, Submitted to, or Received by You as a Result of Any Internal or External Investigation or Research into Anticompetitive Conduct With Respect to CRTs or CRT Products)**

The Panasonic Defendants are refusing to produce any documents in response to Request No. 37. We do not believe this is in any respect encompassed by the Court's January 30, 2010 Order and in any event this would encompass numerous documents unquestionably outside the scope of that Order.

**Request No. 38 (Documents Relating to the Termination, Retirement, Discipline, Discharge or Suspension of Any Director, Officer or Employee with Responsibility Related to CRTs or CRT Products)**

The Panasonic Defendants have refused to produce any documents in response to this Request, citing, *inter alia*, undue burden. Please specify the burden associated with responding to this Request, including but not limited to the number of individuals for whom documents would need to be produced. At a minimum, Plaintiffs request such information for those managerial employees for whom identification is sought in response to Interrogatory No. 2 and those personnel attending conspiratorial meetings for whom identification is sought in response to Interrogatory No. 5

**Indirect Purchasers Request No. 42 (Documents describing the relationship between the sale price of CRT Products and the Cost of CRTs and/or any other component of CRT Products)**

The Panasonic Defendants object that this request is vague as to the term "relationship." This objection is baseless. The Panasonic Defendants are sophisticated entities with detailed knowledge of the relationship between the costs of CRTs and other components and the prices it, and other entities, charge for CRT Products. This relationship between cost and price is fundamental to their business model and is a matter of basic economics. Nevertheless, to clarify, Plaintiffs (hereafter refers to the Indirect Purchaser Plaintiffs) seek documents in the form of emails, presentations, spreadsheets, formal and informal studies that describe the relationship between the cost of CRTs and other components and the price of CRT Products. These documents would include, but would not be limited to, market forecasts, discussions of "Bills of Materials" (BOMs) and studies discussing supply and demand for CRTs and CRT Products.

The Panasonic Defendants also object that this request is not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks foreign prices. This objection is also baseless. Even in the extreme case where the prices referred to relate solely to overseas sales of CRTs and CRT Products, documents that describe the cost/price relationship are relevant regardless of the geographic market at issue. The fundamental laws of supply and demand do not change on the basis of geography, and Plaintiffs' experts can use foreign sales data to underpin their assumptions as to the relationship between cost and price in the U.S. market.

Notwithstanding these objections, the Panasonic Defendants agree to produce documents "relating to the sale price of CRT Products sold in the United States and the cost of CRTs and/or any other component of CRT Products sold in the United States." This response does not capture what Plaintiffs are looking for because it appears to promise documents pertaining to the sale price of CRT products on the one hand, and documents pertaining to the cost of CRTs and CRT components on the other. This is not sufficient. The Panasonic Defendants should produce documents and electronic data which describe the economic relationship between the sale price of CRT Products and the cost of CRTs and/or any other component of CRT Products.

**Indirect Purchaser Request No. 43 (Documents that reflect, refer, or relate (i.e describe) how the price of CRTs or CRT Products sold by the Panasonic Defendants or by any of their competitors affected the prices of CRT Products resold by third parties)**

The Panasonic Defendants object that this request is vague as to the phrase "reflect, refer, or relate". To clarify, this phrase is a stand-in for the term "describe," and seeks documents similar to those sought by Request No. 42. Panasonic also repeats its objection that this request is improper as it seeks foreign sales data. This objection fails for the reasons identified above.

Subject to these objections, the Panasonic Defendants agree to produce "formal studies... reflecting how the price of CRTs sold by Panasonic in the United States affect the prices of CRT Products resold by third parties in the United States." This is not satisfactory. Plaintiffs are entitled to all studies (whether formal or informal), emails, PowerPoints or any other documents that describe how the price of CRTs sold by the Panasonic Defendants anywhere affects the prices of CRT Products resold by third parties anywhere. The geographic location of a particular

sale or re-sale has no bearing to the economic question of pass-on, as the economic laws of supply and demand to not change on the basis of geography.

**Indirect Purchasers' Request No. 44 (Documents that reflect, refer or relate (i.e. describe) the extent to which OEMs or any other entities involved in the manufacture, distribution, or resale of CRT Products, pass through the cost of CRTs or CRT Products to their respective customers)**

The Panasonic Defendants repeat their objection that the use of the phrase "reflect, refer, or relate" in this request is vague. As explained above, this phrase is a stand-in for "describe." The Panasonic Defendants then add in an objection that such documents are not within their control. This is makeweight. Plaintiffs seek any document the Panasonic Defendants possess that describes how OEMs and other entities involved in the manufacture, distribution, or resale of CRT Products, pass through the costs of CRTs or CRT Products to their respective customers. Finally, subject to these objections, the Panasonic Defendants agree to produce "formal studies" describing the extent to which these entities pass through the cost of CRTs and CRT Products. This agreement is insufficient. Plaintiffs are entitled to <u>any</u> document describing this relationship, not just "formal studies."

**Indirect Purchasers' Request No. 45 (documents and data that reflect, refer, or relate to (i.e. describe) the distribution channels for CRTs and CRT products)**

The Panasonic Defendants object that the phrase "reflect, refer, or relate to" is vague. This is discussed above. The Panasonic Defendants also object that the terms "distribution channels" and "distribution chains" are vague. These terms are commonly used in many industries and are therefore far from vague. To clarify, Plaintiffs are seeking information which describes the series of transactions through which CRTs and CRT Products travel between the time they are manufactured by the Panasonic Defendants and the time they reach the end-user. The Panasonic Defendants clearly have such information as this is fundamental to their business model. Indeed, the Panasonic Defendants would not be in the business of manufacturing CRTs or CRT Products if there were not end users who ultimately purchased them.

**Indirect Purchaser Request No. 46 [Documents and data that reflect, refer, or relate to (i.e. describe) retail prices, resale price, or street prices of CRTs or CRT Products]**

The Panasonic Defendants object that the phrases "retail prices" and "street prices" are vague and undefined. Again, this objection is not well taken. These are fundamental business terms and are commonly used in the industry. Plaintiffs seek information concerning the price that end users pay for CRTs and CRT Products. That price may be referred to as a "retail" price or a "street" price, or some other price. Regardless of the name, Plaintiffs are entitled to this information as it has a direct bearing on the extent to which end-users were impacted by the Panasonic Defendants' illegal conduct. The Panasonic Defendants again repeat their baseless objection that this request is improper in that it seeks information on foreign transactions. Plaintiffs have responded to this concern above. Finally, the Panasonic Defendants agree,

Jeffrey L. Kessler
David L. Yohai
July 7, 2010
Page 17

subject to their objections, to product "formal studies" that reflect the "prices" of CRTs or CRT Products in the United States. This is not responsive to Plaintiffs' request. Plaintiffs request, and are entitled to, all documents describing retail or street prices of CRTs and CRT Products paid by end users regardless of their geographic location.

Sincerely,


/s/ R. Alexander Saveri
 R. Alexander Saveri
Interim Lead Counsel for the Direct Purchaser Plaintiffs


/s/ Mario N. Alioto
Mario N. Alioto
Interim Lead Counsel for the Indirect Purchaser Plaintiffs


crt.284