MARIO N. ALIOTO, ESQ. (56433)
LAUREN C. RUSSELL, ESQ. (241151)
TRUMP, ALIOTO, TRUMP & PRESCOTT, LLP
2280 Union Street
San Francisco, CA  94123
Telephone:  (415) 563-7200
Facsimile: (415) 346-0679
E-mail: malioto@tatp.com
laurenrussell@tatp.com

*Interim Lead Counsel*
*for the Indirect Purchaser Plaintiffs*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION** ) | Master File No. CV-07-5944 SC |
| ) | |
| ) | MDL No. 1917 |
| ) | |
| ) | **INDIRECT PURCHASER PLAINTIFFS' OPPOSITION TO DEFENDANTS' JOINT MOTION TO DISMISS THE SECOND CONSOLIDATED AMENDED COMPLAINT** |
| ) | |
| ) | |
| ) | |
| ) | |
| ) | |
| ) | |
| ) | |
| **This document relates to:** ) | Date: August 24, 2010 |
| ) | Time: 9:00 a.m. |
| **ALL INDIRECT PURCHASER ACTIONS** ) | Before: Hon. Charles A. Legge (Ret.) |
| ) | |
| ) | The Honorable Samuel Conti |
| ) | |

1

**TABLE OF CONTENTS**

2   I.   Introduction……………………………………………………………………   1

3   II.  Argument ………………………………………………………………...   1

4        A.  Plaintiffs' Arkansas And Montana Claims Should Not Be Dismissed………...   1

5             1.  Arkansas' Consumer Protection Statute Encompasses Price Fixing……...   1

6             2.  Plaintiffs, As Indirect Purchasers, Have Standing Under Montana's
                 Antitrust Law…………………………………………………………   2

7        B.  In A Multi-State Class Action, It Is Not Necessary That There Be Named
             Plaintiffs Resident In Every State…………………………………………...   3

8        C.  Plaintiffs Unjust Enrichment Claims Are Proper………………………………   8

9             1.  The Laws Of Arkansas, Massachusetts, And Montana Do Not Bar Indirect
                 Purchaser Claims For Unjust Enrichment…………………………………   8

10            2.  The State Statutes At Issue Do Not Preclude Plaintiffs' Common Law
11               Unjust Enrichment Claims………………………………………………   10

12                 a.  Hawaii……………………………………………………………..   12

                   b.  Minnesota………………………………………………………….   12

13                 c.  Mississippi…………………………………………………………   13

14                 d.  Nebraska…………………………………………………………...   13

15                 e.  Nevada……………………………………………………………..   14

16                 f.  New York…………………………………………………………..   14

17                 g.  North Carolina……………………………………………………..   14

                   h.  Tennessee…………………………………………………………..   15

18                 i.  Vermont……………………………………………………………   15

19                 j.  West Virginia………………………………………………………   16

20                 k.  Wisconsin…………………………………………………………   17

21       D.  Plaintiffs' Claim Under the Massachusetts Consumer Protection Statute
             Should Proceed…………………………………………………………………..   17

22       E.  Plaintiffs' Newly-Asserted State Law Claims Are Not Barred by Their
23           Respective Statutes of Limitations……………………………………………   18

24            1.  Plaintiffs' Newly-asserted Claims Are Timely………………………………   19

                   a.  Plaintiffs' Illinois Antitrust Act Claim Is Timely…………………….   19

25                 b.  Defendants Acknowledge That Fraudulent Concealment Tolls The
26                     Statute Of Limitations On The Other Newly-Asserted Claims…………..   20

27            2.  The Illinois, Maine And Montana Claims "Relate Back" To The
                 Original Pleadings………………………………………………………   21

28

**INDIRECT PURCHASER PLAINTIFFS' OPPOSITION TO DEFENDANTS' JOINT MOTION TO
DISMISS THE SECOND CAC**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3.   The Arkansas And District of Columbia Claims Relate Back To The *Figone* Complaint………………………………………………………… 22

    a.   The *Figone* Complaint Provided Defendants Sufficient Notice Of The Arkansas And District of Columbia Claims……………………….. 22

    b.   The Arkansas And District Of Columbia Claims Will Not Unfairly Prejudice Defendants………………………………………………………. 23

    c.   The New Plaintiffs Have An Identity Of Interest With The Current Plaintiffs……………………………………………………………………. 25

III. Conclusion ………………………………………………………………………... 26

**INDIRECT PURCHASER PLAINTIFFS' OPPOSITION TO DEFENDANTS' JOINT MOTION TO DISMISS THE SECOND CAC**

1

**TABLE OF AUTHORITIES**

2

Page(s)

3

<u>Federal Cases</u>

4

5

*In re Abbott Laboratories Norvir Antitrust Litig.*,
   2007 WL 1689899 (N.D. Cal. 2007)…………………………………………………….8

6

*In re Aftermarket Filters Antitrust Litigation*,
   No. 08-cv-4883, 2009 U.S. LEXIS 104114 (N.D. Ill. Nov. 3, 2009)………..……………1, 5, 8

7

8

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997)………………………..…………………………………………..4, 5

9

*In re Apple & AT&T Antitrust Litig.*,
   596 F. Supp. 2d 1288 (N.D. Cal. 2008)…………………………………………………7

10

11

*Arreola v. Salvador Godinez, et al.*,
   546 F.3d 788, 794-795 (7th Cir. 2008)……………………………………………...…4

12

*Besig v. Dolphin Boating & Swimming Club*,
   683 F.2d 1271 (9th Cir. 1982)…………………………………………………22, 24, 25

13

14

*In re  Brocade Communs. Sys. Derivative Litig.*,
   615 F. Supp. 2d 1018 (N.D. Cal. 2009)…………………………………………………21

15

16

*In re Busiprone Patent & Antitrust Litig.*,
   185 F. Supp. 2d 363 (S.D.N.Y. 2002)…………………………………………………4, 8

17

*Carfagno ex rel. Centerline Holding Co. v. Schnitzer*,
   591 F. Supp. 2d 630 (S.D.N.Y. 2008)……………………………………………………6

18

19

*In re Chocolate Confectionary Antitrust Litigation*,
   602 F.Supp. 2d 538 (M.D.Pa. 2009)……………………………………….……….1, 2, 5, 7

20

21

*Clark v. McDonald's Corp.*,
   213 F.R.D. 198 (D.N.J. 2003)……………..……………………………………………4, 8

22

23

*Clif v. Payco Gen. Am. Credits, Inc.*,
   363 F.3d 1113 (11th Cir. 2004)…………………………………………………………24

24

*Clipper Express v. Rocky Mtn. Motor Tariff Bureau, Inc.*,
   690 F.2d 1240 (9th Cir. 1982)…………………………………………………………...21

25

26

*In re Crazy Eddie Securities Litigation*,
   135 F.R.D. 39 (E.D.N.Y. 1991)……………..………………………………………….8

27

28

iv

**INDIRECT PURCHASER PLAINTIFFS' OPPOSITION TO DEFENDANTS' JOINT MOTION TO DISMISS THE SECOND CAC**

*D.R. Ward Construction Co. v. Rohm and Haas Co.,*
    470 F. Supp. 2d 485 (E.D. Pa. 2006)……………………………………………………16

*DeLodder v. Aerotek, Inc.,*
    No. CV 08-6044 CAS (AGRx), 2009 U.S. Dist. LEXIS 55633 (C.D. Cal. June 15, 2009)…24, 25

*In re Ditropan XL Antitrust Litig.,*
    529 F. Supp. 2d 1098 (N.D. Cal. 2007)………………………………………………...7

*In re Dynamic Random Access Memory (DRAM) Antitrust Litigation,*
    516 F. Supp.2d 1072 (N.D. Cal. 2007)……………………………………...……………1, 2

*Easter v. Am. West,*
    381 F.3d 948 (9th Cir. 2004)………………………………………………...5, 6, 7

*G.F. Co. v. Pan Ocean Shipping Co.,*
    23 F.3d 1498 (9th Cir. 1994)……………………………………………………23

*In re Glacier Bay,*
    746 F. Supp. 1379 (D. Alaska 1990)……………………………………………24, 25

*In re Graphics Processing Units (GPU) Antitrust Litig.,*
    527 F.Supp.2d 1011 (N.D.Cal. 2007)………………………………………..…1, 7

*In re Grand Theft Auto Video Game Consumer Litig.* (No. II),
    No. 06-MD-1739, 2006 U.S. Dist. LEXIS 78064 (S.D.N.Y. Oct. 25, 2006)……………………7

*In re Hypodermic Prods. Antitrust Litig.,*
    2007 WL 1959225 (D.N.J. June 29, 2007)………………………………………………8

*Immigrant Assistance Project of the Los Angeles County Federation of Labor v. I.N.S.,*
    306 F.3d 842 (9th Cir. 2002)……………………………………………………25

*Jepson v. Ticor Title Ins. Co.,*
    2007 U.S. Dist. LEXIS 53480 (W.D. Wash. May 1, 2007)……………………………………6, 8

*In re Juniper Networks, Inc. Secs. Litig.,*
    542 F. Supp. 2d 1037 (N.D. Cal. 2008)……………………………………………23

*In re K-Dur Antitrust Litig.,*
    338 F. Supp. 2d 517 (D.N.J. 2003)……………………………………………………7

*Karahalios v. National Federation of Federal Employees,*
    489 U.S. 527 (1989)……………………………………………………………11

*Kuhl v. Guitar Center Stores, Inc.,*

**INDIRECT PURCHASER PLAINTIFFS' OPPOSITION TO DEFENDANTS' JOINT MOTION TO
DISMISS THE SECOND CAC**

No. 07-C-214, 2008 U.S. Dist. LEXIS 17222 (N.D. Ill. March 5, 2008)............................7

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555, 560-61 (1992)...............................................................................4

*In re Mercury Interactive Corp. Secs. Litig.,*
    No. C 05-3395 JF (PVT), 2007 U.S. Dist. LEXIS 59171 (N.D. Cal. July 30, 2007)............25

*In re Microsoft Corp. Antitrust Litigation,*
    401 F.Supp.2d 461 (D. Md. 2005)........................................................................9

*Moniz v. Bayer Corp.,*
    484 F. Supp. 2d 228 (D. Mass. 2007)..................................................................9

*In re Network Associates, Inc. II Secs. Litig.,*
    No. C 00-4849 MJJ, 2003 U.S. Dist. LEXIS 14442 (N.D. Cal. March 21, 2003)............21, 25

*In re New Motor Vehicles Canadian Export Antitrust Litigation,*
    350 F. Supp. 2d 160 (D. Me. 2004)...........................................................1, 2, 9, 11

*New York City Emples. Ret. Sys. v. Jobs,*
    593 F.3d 1018 (9th Cir. 2010)...........................................................................23

*Ortiz v. Fibreboard Corp.,*
    527 U.S. 815 (1999)...................................................................................4, 5, 6

*Payton v. County of Kane,*
    308 F.3d 673 (7th Cir. 2002)..............................................................................4, 5

*In re Pharm. Indus. Average Wholesale Price Litig.,*
    252 F.R.D. 83 (D. Mass. 2008)........................................................................4, 8

*Plumber's Local Union No. 12 Pension Fund v. Nomura Asset Acceptance Corp.,*
    658 F. Supp. 2d 299 (D. Mass. 2009)...............................................................6

*In re Potash Antitrust Litig.,*
    667 F. Supp. 2d 907 (N.D. Ill. 2009)..................................................................7

*Ramirez v. STi Prepaid LLC,*
    644 F. Supp. 2d 496 (D.N.J. 2009)....................................................................7

*In re Relafen Antitrust Litig.,*
    221 F.R.D. 260 (D. Mass. 2004)....................................................................4, 8, 16

*Rosenbaum v. Syntex Corp.,*
    95 F.3d 922 (9th Cir. 1996)...........................................................................22, 25

**INDIRECT PURCHASER PLAINTIFFS' OPPOSITION TO DEFENDANTS' JOINT MOTION TO DISMISS THE SECOND CAC**

*In re Static Random Access Memory (SRAM) Antitrust Litigation,*
  264 F.R.D. 603 (N.D. Cal. 2009)…………………………………………...…..2

*Sprint Communications Co. v. APCC Services, Inc.,*
  128 S. Ct. 2531 (2008)…………………………………………….…………4

*Steinberg v. Nationwide Mut. Ins. Co.,*
  224 F.R.D. 67 (E.D.N.Y. 2004)…………………………………………………8

*In Re Terazosin Hydrochloride Antitrust Litigation,*
  160 F. Supp. 2d 1365 (S.D. Fla. 2001)……………………………………………9

*United States v. Inryco, Inc.*
  642 F.2d 290 (9th Cir. 1981)……………………………………………………20

*United States v. Texas,*
  507 U.S. 529 (1993)…………………………………………………………...10

*In re Wellbutrin XL Antitrust Litig.,*
  260 F.R.D. 143 (E.D. Pa. 2009)………………………………………………...7

*Woodward v. Fidelity Nat'l Title Ins. Co.,*
  2007 U.S. Dist. LEXIS 97455 (D.N.M. December 7, 2007)……………………………7

*Young v. LePone,*
  305 F.3d 1, 16 (1st Cir. 2002)……………………………………………24, 25

### State Cases

*Abraham v. County of Hennepin,*
  639 N.W.2d 342 (Minn. 2002)………………………………………………10

*Allen v. Hunnicutt,*
  230 N.C. 49 (N.C. 1949)…………...……………………………………………15

*Amos v. Oakdale Knitting Co.,*
  416 S.E.2d 166 (N.C. 1992)…………………………………………………10

*Baptist Health v. Murphy,*
  226 S.W.3d 800 (Ark. 2006)…………………………………………………2

*Barstow Road Onwers, Inc., v. Melissa Billings,*
  179 Misc. 2d 958 (First Dist NY 1998)………………………………………14

*Becker v. Mayo Found.,*
  737 N.W.2d 200 (Minn. 2007)…………………………………………………12

**INDIRECT PURCHASER PLAINTIFFS' OPPOSITION TO DEFENDANTS' JOINT MOTION TO DISMISS THE SECOND CAC**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Billingham v. Dornemann,*
    447 Mass. 1113 (2006)………………………..………………………………18

*Broughton v. Dona,*
    101 A.D. 2d 89 (Sup. Ct. NY 1984)……………………………………………14

*Builders Ass'n of N. Nev. v. City of Reno,*
    776 P. 2d 1234 (Nev. 1989)……………………………………………………14

*Burch v. NedPower Mount Storm, LLC,*
    220 W. Va. 443 (W. Va. 2007)…………………………………………………10

*Cann v. George B. Williams Land & Livestock Co.,*
    48 P. 2d 887 (Nev. 1935)………………………………………………………10

*Cassano v. Gogos,*
    20 Mass. App. Ct. 348 (1985)…………………………………………………17

*Christensen v. Lundsten,*
    863 N.Y.S.2d 886 (N.Y. Dist. Ct. 2008)………………………………………10

*Ciardi v. F. Hoffmann-La Roche, LTD.,*
    436 Mass. 53 (Mass. 2002)……………………………………………………9

*City of Rochster v. Campbell,*
    123 N.Y. 405 (Ct. App. N.Y. 1890)……………………………………………15

*Cole v. Rivers,*
    43 Ark. App. 123 (Ark. App. Ct. 1993)………………………………………9

*Comm. of Grievances of N.C. State Bar Ass'n v. Strickland,*
    200 N.C. 630 (N.C. 1931)………………………………………………………15

*Corning v. R.J. Reynolds Tobacco Co.,*
    868 So.2d 331 (Miss. 2004)……………………………………………………13

*Cox v. Microsoft,*
    778 N.Y.S.2d 147 (Supr. Ct. First. Dept. 2004)………………………………14

*Delmas v. Pascagoula State Ry. & Power Co.,*
    103 Miss. 235 (1912)……………………………………………………………13

*Drinkhouse v. Parka Corp.,*
    3 N.Y.2d 82 (Ct. App. N.Y. 1957)……………………………………………14

*Eastern Star Inc., v. Union Bldg. Materials Corp.,*
    6 Haw. App. 125 (1985)………………………………………………………12

**INDIRECT PURCHASER PLAINTIFFS' OPPOSITION TO DEFENDANTS' JOINT MOTION TO DISMISS THE SECOND CAC**

*Elkins v. Microsoft Corp.,*
 174 Vt. 328 (2002)………………………………………………………………16

*Fuchsgruber v. Custom Accessories, Inc.,*
 244 Wis. 2d 758 (Wis. 2001)……………………………………………………10

*G.D. Nelson v. Berry Petroleum Co.,*
 242 Ark. 273 (1967)……………………………………………………..…..2

*Guy v. Mutual of Omaha Insurance Company,*
 79 S.W.3d 528 (Tenn. 2002)……………………………………………10, 15

*Haverty v. Commissioner of Correction,*
 792 N.E.2d 989 (Mass. 2003)……………………………………………………9

*Herring v. Gulick,*
 5 Haw. 57 (1884)………………………………………………………………12

*Hyett v. Northwestern Hosp. for Women & Children,*
 180 N.W. 552 (Minn. 1920)……………………………………………………12

*People v. ex rel Hartigan v. Moore,*
 143 Ill. App. 3d 410 (1986)……………………………………………19, 20

*Kanne v. Visa U.S.A.,*
 272 Neb. 489 (2006)……………………………………………………………13

*Kornosky v. Hoyle,*
 97 Miss. 562 (1910)……………………………………………………………11

*Langle v. Kurkul,*
 146 Vt. 513 (Vt. 1986)…………………………………………………………10

*Lawson v. Bennett,*
 81 S.E.2d 162 (N.C. 1954)………………………………………..…………15

*Lynch v. Merchants National Bank of West Virginia,*
 22 W.Va. 554 (1883)……………………………………………………………16

*Nelson v. Wilson,*
 264 P. 679 (Mont. 1928)…………………………………………………………9

*Nordell v. Kinney,*
 62 Wis. 2d 558 (1974)…………………………………………………………17

**INDIRECT PURCHASER PLAINTIFFS' OPPOSITION TO DEFENDANTS' JOINT MOTION TO DISMISS THE SECOND CAC**

*O'Connell v. Microsoft,*
  2001-2 Trade Cas. (CCH) ¶73419 (Mass. Super. 2001)……………………………………9

*Olson v. Microsoft Corp.,*
  2001 Mont. Dist. LEXIS 2710 (Mt. Super. Feb. 15, 2001)…………………………..……..2, 9

*Perkins v. Heathmarkets, Inc.,*
  2007 NCBC LEXIS 25 (N.C. Sup. Ct.)……………………………………………………15

*R.H. Rigsbee, v. Brogden,*
  184 S.E. 24 (N.C. 1936)……………………………………………………………………15

*Reaves v. Earl-Chesterfield Mill Company,*
  5 S.E.2d 305 (N.C. 1939)……………………………………………………………….....15

*Richards v. Atreva Specialties,*
  66 Mass. App. Ct. 726 (2006)……………………………………………………………17

*Simas v. House of Cabinets, Inc.,*
  53 Mass. App. Ct. 131 (2001)………………………...…………………………………17, 18

*Slaney v. Westwood Auto, Inc.,*
  366 Mass. 688 (1975)……………………………………………………………………17

*Spring v. Geriatric Authority of Holyoke,*
  394 Mass. 274 (1985)……………………………………………………………………17

*State of Arkansas ex rel. Winston Bryant, Attorney General v. R&A Inv. Co.,*
  985 S.W.2d 299 (Ark. 1999)……………………………………………………………1, 2

*State ex rel. Humphrey v. Philip Morris, Inc.,*
  551 N.W.2d 490 (Minn. 1996)……………………………………………………………12

*Smith v. Video Lottery Consultants, Inc.,*
  858 P.2d 11 (Mont. 1993)……………………………………………………………......3

*State ex rel. Wright v. Barney,*
  276 N.W. 676 (Neb. 1937)……………………………………………………………10

*Town of Battleboro v. Silas M. Wait,*
  44 Vt. 459 (1872)……………………………………………………………………16

*Turner v. Harris,*
  198 Tenn. 654 (Tenn. 1955)……………………………………………………………...15

*Watson v. Brown,*
  686 P.2d 12 (Haw. 1984)……………………………………………………………10

x

**INDIRECT PURCHASER PLAINTIFFS' OPPOSITION TO DEFENDANTS' JOINT MOTION TO DISMISS THE SECOND CAC**

*York v. Sullivan,*
  369 Mass. 157 (1975)……………………………………………………………18


<u>Federal Statutes</u>

15 U.S.C. § 2…………………………………………………………………………3


<u>State Statutes</u>

Ark. Code Ann. § 4-75-309………………………………………………………2
Ark. Code Ann. § 4-88-107(a)(10)……………………………………………………1

Haw. Rev. Stat. § 480-13………………………………………………………12

740 Ill. Comp. Stat. Ann. 10/7(2)………………………………...…………………19

Mass. G.L. C. 93A §9………………………………………………………………17
Mass. Gen. Laws ch. 93, §§ 1-14A……………………………………………………17

Minn. Stat. §§ 325D.57………………………………………………………12

Miss. Code Ann. § 75-21-9……………………………………………………………13

Mont. Code Ann. §§ 30-14-205(2)(c)……………………………………………………2
Mont. Code Ann. 30-14-222……………...………………………………………………2
Mont. Code Ann 30-15-205(g)………………………………………………………3

Neb. Rev. Stat. Ann. §59-813……………………………………...…………………13

Nev. Rev. Stat. Ann. § 598A.210…………………………………...………………14

N.Y. Gen. Bus. Law. § 349………………………………………………………14

N.C. Gen. Stat. §§75-16, 75-16.1………………………………………………………...15

Tenn. Code Ann. § 47-25-106……………………………………………………15

Vt. Stat. Ann. Tit. 9 § 2465………………………………………………………15

W.Va. Code § 47-18-9………………………………………………………………16

Wis. Stat. § 133.18 (b)………………………………………………………………17

**INDIRECT PURCHASER PLAINTIFFS' OPPOSITION TO DEFENDANTS' JOINT MOTION TO
DISMISS THE SECOND CAC**

1

<u>Federal Rules</u>

2

Federal Rule of Civil Procedure 23(a).................................................................4

Federal Rule of Civil Procedure 15(c)...............................................................21

3

4

<u>State Rules</u>

5

Mass. R. Civ. P. 41(b)(3)..................................................................................18

6

<u>Treatises</u>

7

Alba Conte & Herbert Newberg,

  *Newberg on Class Actions* §2:5, (4th ed. 2007)..............…..................................................4

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INDIRECT PURCHASER PLAINTIFFS' OPPOSITION TO DEFENDANTS' JOINT MOTION TO DISMISS THE SECOND CAC**

I.      **Introduction**

Indirect Purchaser Plaintiffs ("Plaintiffs") submit this memorandum of points and authorities in opposition to Defendants' Joint Motion to Dismiss the Second Consolidated Amended Complaint ("SCAC"), filed May 10, 2010.

II.     **Argument**

      A.      **Plaintiffs' Arkansas And Montana Claims Should Not Be Dismissed**

            1.   **Arkansas' Consumer Protection Statute Encompasses Price Fixing**

Plaintiffs have stated a valid claim under Arkansas' Deceptive Trade Practices Act (the "ADTPA"). While the ADTPA prohibits certain enumerated practices, it also prohibits "any other unconscionable, false, or deceptive act or practice in business, commerce, or trade." Ark. Code Ann. § 4-88-107(a)(10). In *State of Arkansas ex rel. Winston Bryant, Attorney General v. R&A Inv. Co.*, 985 S.W.2d 299, 302 (Ark. 1999) ("*Bryant*"), a case relied on by Defendants, the Arkansas Supreme Court stated that this "catch-all provision" was included "because the General Assembly could not be expected to envision every conceivable violation under the DTPA," and that "liberal construction of the [A]DTPA is appropriate." *Id*. at 302. Consistent with this principle of liberal construction, several courts have concluded that the provision is sufficiently broad to encompass price fixing.[1]

Defendant's reliance on *In re Graphics Processing Units (GPU) Antitrust Litig.*, 527 F.Supp.2d 1011, 1029-1030 (N.D.Cal. 2007) ("*GPU*") is misplaced. The *GPU* court mistakenly relied on *Bryant's* contract-based analysis in reaching its conclusion that allegations of price fixing do not involve the "grossly unequal bargaining power prohibited by these statutes." *See GPU*, 527 F.Supp.2d at 1030. *Bryant's* "unequal bargaining power" analysis applies only in the

---

[1] *See, e.g., In re Chocolate Confectionary Antitrust Litigation*, 602 F.Supp. 2d 538, 583 (M.D.Pa. 2009) ("*Chocolate*") (conspiracy to fix and stablize chocolate confectionary prices); *In re Aftermarket Filters Antitrust Litigation*, No. 08-cv-4883, 2009 U.S. LEXIS 104114, *35 (N.D. Ill. Nov. 3, 2009) ( conspiracy to fix and stablize aftermarket filters prices); *In re Dynamic Random Access Memory (DRAM) Antitrust Litigation*, 516 F. Supp.2d 1072, 1109 (N.D. Cal. 2007) ("*DRAM I*") ( conpiracy to fix and stablize DRAM prices); *In re New Motor Vehicles Canadian Export Antitrust Litigation,* 350 F. Supp. 2d 160, 178 (D. Me. 2004), *reversed and vacated in part on other grounds,* 522 F.3d 6 (1st Cir. 2008) ("*NMV*") (conspiracy to keep Canadian-manufactured vehicles from entering the U.S. automobile market).

1

1  narrow context of of contract interpretation.[2]  In the Arkansas Supreme Court's view,

2  unconscionability is more appropriately defined as an act that "affront[s] the sense of justice,

3  decency, or reasonableness," including acts "violative of public policy or a statute."[3]  As

4  Plaintiffs have alleged, Defendants' price fixing deprived consumers of the ability to obtain the

5  prices they would have recieved in a competitive market.  *See* SCAC at ¶275.  This unjust and

6  unreasonable conduct is not only by definition unconscionable under the ADTPA but also

7  constitutes a violation of Arkansas' strong public policy against price fixing.[4]

8  ## 2.  Plaintiffs, As Indirect Purchasers, Have Standing Under Montana's Antitrust Law

9

10  Montana's antitrust statute expressly forbids price fixing, and provides a private right of

11  action, which permits any "person who is or will be injured" the right to seek to injunctive relief

12  and treble damages.  *See* Mont. Code Ann. §§ 30-14-205 and 30-14-222.  This statute does not

13  limit recovery to direct purchasers or in any way bar actions brought by indirect purchasers.  *See*

14  *Olson v. Microsoft Corp.,* 2001 Mont. Dist. LEXIS 2710, at *23 (Mt. Super. Feb. 15, 2001)

15  ("There is nothing in the statute which limits or restricts an injured person to a direct purchaser.

16  Based on the plain language of the statute, the Court concludes that the Illinois Brick rule does

17  not apply to the Montana UTPA.  Therefore, [Olson's claim against Microsoft for violation of §

18  30-14-205] should not be dismissed.").  In fact, a district court in the Northern District of

19  California recently certified an indirect purchaser class under Montana's statute in a price fixing

20  _____

21  [2] *See Bryant*, 985 S.W.2d at 302 (stating that this element is part of a "test for determining unconscionability in contract cases"); *NMV*, 350 F.Supp. 2d at 178 ("[the] contract law definition does not

22  seem pertinant to evaluating an alleged antitrust conspiracy").

23  [3] *See Baptist Health v. Murphy*, 226 S.W.3d 800, 810-11 (Ark. 2006); *see also NMV*, 350 F.Supp. 2d at 178 (quoting same definition from Black's Law Dictionary 1561 (8th ed. 2004)); *DRAM I*, 516 F.Supp. 2d

24  at 1109 (adopting *NMV's* construction of the ADTPA); *Chocolate*, 602 F.Supp. 2d at 583 and n. 57 (same).  Accordingly, in *In re TFT-LCD*, another case relied upon by the Defendants, the court's

25  reluctance to "expansively interpret" the ADTPA also runs afoul of the mandate of the Arkansas Supreme Court in *Bryant* that the ADTPA be liberally construed.  *See Bryant*, 985 S.W.2d at 302.

26  [4] *See, e.g.*, Ark. Code. Ann. § 4-75-309 (any entity that engages in price fixing "shall be deemed and adjudged guilty of a conspiracy to defraud"); *G.D. Nelson v. Berry Petroleum Co*., 242 Ark. 273, 276

27  (1967) (price fixing gives rise to an "Illegal Exaction" claim under Arkansas' State Constitution Article XVI, Section 13).

28

2

1    case.  *See In re Static Random Access Memory (SRAM) Antitrust Litigation*, 264 F.R.D. 603, 613

2    (N.D. Cal. 2009).

3          Defendants' reliance on *Smith v. Video Lottery Consultants, Inc.*, 858 P.2d 11, 13 (Mont.

4    1993) is misplaced.  The *Smith* court interpreted two provisions of Montana's antitrust statute,

5    Mont. Code Ann. 30-15-205(2)(c), which is "modeled after § 1 of the Sherman Act," and Mont.

6    Code Ann 30-15-205(g), which is "very similar to § 2 of the Sherman Act, which prohibits the

7    creation of a monopoly."  858 P.2d at 13.  The portion of the *Smith* opinion cited by Defendants

8    pertains only to 30-15-205(2)(g).  Moreover, the court dismissed Plaintiffs monopolization claim

9    not because of any purported issue related to "standing" but because Plaintiffs' allegation of a

10   "brand monopoly over the manufacturer's own product… is not a violation of *15 U.S.C. § 2*."  *Id*.

11   (internal quotes omitted; emphasis and ellipse in original).  In contrast, when considering

12   plaintiffs' claim under Mont. Code Ann. 30-15-205(2)(c), the *Smith* court held that this provision

13   "facially appears to be broader than the Sherman Act" and that  "dismissing the complaint on

14   Count One was premature and thus error."  *Id*. at 13 (upholding reversal of trial court's

15   dismissal).  Thus, the *Smith* opinion did not even purport to address issues of indirect purchaser

16   standing under *Illinois Brick*.

      **B.**    **In A Multi-State Class Action, It Is Not Necessary That There Be Named Plaintiffs Resident In Every State**

19         Defendants argue that the Plaintiffs lack standing to bring claims based on violations of

20   the Illinois, Maine and Montana antitrust laws because no named Plaintiff "hails from" those

21   states.  *See* Mot. at 6-8.  This argument is without merit.  In a multi-state class action, where the

22   named plaintiffs have individual standing,[5] it is not necessary that there be a named plaintiff

23   resident in every state.

---

[5] The elements of constitutional standing are well-established: "[I]n order to have Article III standing, a plaintiff must adequately establish: (1) an injury in fact (i.e., a 'concrete and particularized' invasion of a 'legally protected interest'); (2) causation (i.e., a 'fairly … trace[able]' connection between the alleged injury in fact and the alleged conduct of the defendant); and (3) redressability (i.e., it is 'likely' and not 'merely speculative' that the plaintiff's injury will be remedied by the relief plaintiff seeks in bringing

3

1    Defendants do not challenge the named Plaintiffs' individual Article III standing.

2  Therefore, the issue is whether the named Plaintiffs, who were injured by Defendants' alleged

3  conduct in the same manner as residents of Illinois, Maine and Montana, may bring claims on

4  behalf of similarly-situated residents of those states.  In short, Defendants confuse the issue of

5  "standing" with issues that are more properly addressed in connection with the class certification

6  analysis, including whether the named plaintiffs are "adequate" to represent the class, or have

7  claims "typical" of absent class members.[6]  The question is whether the named plaintiffs may

8  properly represent the putative class, not whether they have standing to bring their claims in the

9  first instance.[7]

10    Accordingly, many courts have held that when named plaintiffs allege injury caused by

11  certain defendants and purport to represent a class of those similarly injured by those same

12  defendants under analogous laws in other states, a separate representative for each state is not

13  necessary.[8]  In so holding, many of these courts relied upon *Ortiz v. Fibreboard Corp.*, 527 U.S.

14  815, 831 (1999).  *Ortiz* holds that in cases where class certification issues are "logically

15  antecedent to Article III concerns and themselves pertain to statutory standing," then the issue of

16  Rule 23 certification should be treated before addressing standing.  Class certification issues are

---

18  suit)." *Sprint Communications Co. v. APCC Services, Inc.,* 128 S. Ct. 2531, 2535 (2008) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)) (internal quotation marks omitted).

19  
20  [6] *See* Fed. R. Civ. P. 23(a)(3) and (4);  *Arreola v. Salvador Godinez, et al.*, 546 F.3d 788, 794-795 (7th Cir. 2008) (citing *Payton v. County of Kane*, 308 F.3d 673, 677 (7th Cir. 2002) ("the inherent problem with the idea of 'standing to bring a class action' is that it 'conflates the standing inquiry with the inquiry under Rule 23 about the suitability of a plaintiff to serve as a class representative'").

21  
22  [7] *See* Alba Conte & Herbert Newberg, *Newberg on Class Actions* §2:5, (4th ed. 2007) ("*Newberg*") (highlighting that once the class representative meets threshold individual standing, "a proper party to raise a particular issue is before the court," "and there [is] no . . . separate class standing requirement in the constitutional sense.  The presence of individual standing is sufficient to assert [common] issues. . .").

23  
24  [8] *See, e.g., In re Pharm. Indus. Average Wholesale Price Litig.*, 252 F.R.D. 83, 104 (D. Mass. 2008) (citing *In re Relafen Antitrust Litig.*, 221 F.R.D. 260, 266-70 (D. Mass. 2004)) ("There is no substantial conflict of interest between the three state groupings which would necessitate a class representative from each group."); *In re Buspirone Patent & Antitrust Litig.*, 185 F. Supp. 2d 363, 377 (S.D.N.Y. 2002) ("when a class action raises common issues of conduct that would establish liability under a number of States' laws, it is possible for those common issues to predominate and for class certification to be an appropriate mechanism for handling the dispute."); *Clark v. McDonald's Corp.*, 213 F.R.D. 198, 204-205 (D.N.J. 2003) (deferring defendants' argument that the named plaintiff did not have standing to assert claims on behalf of class members in other states until after Rule 23 certification).

4

**INDIRECT PURCHASER PLAINTIFFS' OPPOSITION TO DEFENDANTS' JOINT MOTION TO DISMISS THE SECOND CAC**

1  "logically antecedent" to questions about standing where the putative class representative is

2  personally injured and so the standing issue "would not exist but for the [class] certification."

3  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613-14 (1997).  *See also Payton*, 308 F.3d at 680

4  (noting that where "putative representatives were personally injured," *Ortiz* directs courts to

5  "consider issues of class certification prior to issues of standing").

6        Most recently in *In re Aftermarket Filters Antitrust Litig.*, when confronted with the very

7  argument made by Defendants here, the court agreed with the indirect purchaser plaintiffs that

8  class certification issues were "logically antecedent" to standing concerns and deferred ruling on

9  standing until class certification:

10      In the instant case, all of the plaintiffs, named and unnamed, have Article III
standing to sue defendants.  All plaintiffs have allegedly suffered identical injuries

11  caused by several parties related by a conspiracy to fix prices.  *Payton*, 308 F.3d at
679.  Therefore, the named plaintiffs' capacity to represent individuals from other

12  states depends upon obtaining class certification, and the standing issue would not
exist but for their assertion of state law claims on behalf of class members in those

13  states.  *In re: Chocolate Confectionary Antitrust Litigation*, 602 F. Supp.2d 538,
579-80 (M.D. Pa. 2009).  Thus, any "standing" issues arise from plaintiffs'

14  attempts to represent the proposed classes.  These are class certification issues

15  "logically antecedent" to the standing concerns.

16  2009 U.S. Dist. LEXIS 104114, *24-25.  Like *Ortiz* and the above-listed cases, this is a case in

17  which class certification issues are "logically antecedent" to those of Article III standing.  The

18  named Plaintiffs have established personal Article III standing.  Thus, Defendants' standing

19  challenge is an issue that would not arise but for the named Plaintiffs' assertion of claims on

20  behalf of a putative class.  Accordingly, the *Ortiz* exception applies and this Court should defer

21  consideration of Defendants' "standing" challenge until class certification.

22        Defendants reliance upon *Easter v. Am. West,* 381 F.3d 948 (9th Cir. 2004) is misplaced.

23  In *Easter*, representative plaintiffs filed a class action against various mortgage companies and

24  investment trusts (the "Trust Defendants") for violations of Washington state usury and consumer

25  protection laws.  The Ninth Circuit held that the named plaintiffs lacked standing to sue certain

26  Trust Defendants because "[a]s to those trusts which have never held a named plaintiff's loan,

27

28

5

1    [plaintiffs] cannot allege a traceable injury." *Id.* at 961-62.[9]  The court also rejected the

2    plaintiffs' argument that the Trust Defendants were "juridically linked" because there was "no

3    evidence that their alleged injuries were the result of a conspiracy or concerted scheme between

4    the Trust Defendants." *Id.* at 962.

5         In contrast to *Easter*, each of the named Plaintiffs in this case allege that they were

6    personally injured by the Defendants' conspiracy to fix the prices of CRTs and CRT Products,

7    and merely purport to represent a class of those similarly injured by these same Defendants under

8    analogous laws in Illinois, Maine and Montana.  The ability of the named Plaintiffs to adequately

9    represent class plaintiffs in these states and the extent to which common issues of law and fact

10   predominate across the putative class members are factors that should be considered in the class

11   certification phase of this case.

12        Furthermore, contrary to Defendants' assertion, *Easter* did not hold that *Ortiz* only applies

13   in the context of a global settlement class where the class certification issue is dispositive.  The

14   Ninth Circuit merely noted that *Ortiz* was decided in the context of a global settlement class.  381

15   F.3d at 962.  It did not state that *Ortiz*'s holding was *limited* to that specific factual situation.

16   Indeed, in *Jepson v. Ticor Title Ins. Co.*, a case analogous to this one, the court rejected the

17   defendant's claim that *Easter* limited *Ortiz* to the context of a global settlement class:

18            *Defendant's conclusory assertion that Easter limited Ortiz to only those*
             *circumstances involving "a mandatory global settlement class" is unpersuasive.*
19           *Ortiz indicated that such sequencing is appropriate when the class certification is*
             *logically antecedent to Article III standing issues.  The global settlement class at*
20           *issue in that case was but one instance of such a situation.  Defendant provides no*
             *reason why it would be the only one.*
21

22   2007 U.S. Dist. LEXIS 53480, *5-6, n.2 (W.D. Wash. May 1, 2007) (emphasis added).

23

24   _____

25   [9] *Plumber's Local Union No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*, 658 F. Supp. 2d 299,
     303-305 (D. Mass. 2009) and *Carfagno ex rel. Centerline Holding Co. v. Schnitzer*, 591 F. Supp. 2d 630
26   (S.D.N.Y. 2008) (Mot. at 7) are similarly distinguishable.  Like in *Easter*, the named plaintiffs in
     *Plumber's Union* lacked standing to assert claims against certain defendants because none of the named
27   plaintiffs had purchased securities from those defendants.  658 F. Supp. 2d at 303-305.  Likewise in
     *Carfagno,* the named plaintiff lacked standing to bring a claim for dilution of stock value because "such
28   [a] claim should properly be brought as a derivative action rather than as a direct action." 591 F. Supp. 2d

INDIRECT PURCHASER PLAINTIFFS' OPPOSITION TO DEFENDANTS' JOINT MOTION TO
DISMISS THE SECOND CAC

1   Defendants' additional authorities are equally unpersuasive.  The court in *In re Ditropan*

2   *XL Antitrust Litig.,* 529 F. Supp. 2d 1098, 1107 (N.D. Cal. 2007), erroneously applied *Easter* to

3   facts analogous to this case.  As demonstrated above, *Easter* is inapplicable to the facts of this

4   case.  *In re GPU,* 527 F. Supp. 2d at 1026-1027 also incorrectly applies *Easter*.  Moreover, the

5   plaintiffs in *GPU* effectively conceded the standing issue in their opposition brief because of the

6   recently decided *In re Ditropan*.  Because of this concession, the *GPU* court adopted the

7   defendants' arguments in its opinion.  *In re Apple & AT&T Antitrust Litig.,* 596 F. Supp. 2d 1288,

8   1309 (N.D. Cal. 2008) follows *In re Ditropan* and *GPU* without any analysis.  It is therefore

9   wrong for the same reasons.

10   Additionally, these cases, along with *In re Potash Antitrust Litig.,* 667 F. Supp. 2d 907,

11   920-924 (N.D. Ill. 2009) and *In re Wellbutrin XL Antitrust Litig.,* 260 F.R.D. 143, 151-156 (E.D.

12   Pa. 2009), are outliers on this issue.  Defendants fail to acknowledge that the vast majority of

13   cases to address the question of standing in this specific factual context have found that where the

14   named plaintiffs have individual standing, class certification issues are "logically antecedent" to

15   standing concerns, and that therefore a named plaintiff is not required for every state at this stage

16   in the case.[10]

17

18   at 637.  Because in both cases the named plaintiffs' lack of standing was independent of their class claims, it was appropriate to address standing before class certification.

19   [10] *See, e.g., Chocolate*, 602 F. Supp.2d at 579-80 ("the plaintiffs' capacity to represent individuals from

20   other states depends upon obtaining class certification, and the standing issue would not exist but for their assertion of state law antitrust claims on behalf of class members in these states.  Therefore, the standing

21   issues arise from plaintiffs' attempts to represent the proposed class.  These class certification issues are 'logically antecedent' to the standing concerns, and the court will defer ruling on the latter until class

22   certification proceedings.") (internal citations omitted); *In re Grand Theft Auto Video Game Consumer Litig.* (No. II), No. 06-MD-1739, 2006 U.S. Dist. LEXIS 78064, *3 (S.D.N.Y. Oct. 25, 2006) ("The

23   relevant question . . . is not whether the Named Plaintiffs have standing to sue Defendants-they most certainly do-but whether their injuries are sufficiently similar to those of the purported Class to justify the

24   prosecution of a nationwide class action.  This question is . . . appropriately answered through the class certification process."); *Kuhl v. Guitar Center Stores, Inc.,* No. 07-C-214, 2008 U.S. Dist. LEXIS 17222,

25   *3-8 (N.D. Ill. March 5, 2008) (rejecting, prior to the class certification stage, defendant's motion to dismiss for lack of standing the named plaintiffs' class action claims on behalf of plaintiffs in states other

26   than Illinois, where the named plaintiffs' injuries occurred); *In re K-Dur Antitrust Litig.,* 338 F. Supp. 2d 517, 543-544 (D.N.J. 2003) ("This Court will not address this Article III standing issue prior to

27   determining class certification."); *Ramirez v. STi Prepaid LLC,* 644 F. Supp. 2d 496, 505-506 (D.N.J. 2009) (same); *Woodward v. Fidelity Nat'l Title Ins. Co.,* 2007 U.S. Dist. LEXIS 97455, *12 (D.N.M.

28

7

1    Defendants' arguments are further refuted by the fact that courts regularly address the

2    propriety of multi-state class actions, and certify class actions without requiring a class

3    representative be named for each state whose law is at issue.[11]  Thus, this Court should defer

4    Defendants' "standing" challenge until class certification when Plaintiffs will have the

5    opportunity to fully brief the requirements of Rule 23.

6         **C.    Plaintiffs Unjust Enrichment Claims Are Proper**

7    This Court should once again reject Defendants' motion to dismiss Plaintiffs' unjust

8    enrichment claims.  The first time this issue was heard, the Special Master denied Defendants'

9    request because it asked for a "sweeping dismissal of the unjust enrichment claims" but did not

10   "discuss the applicable laws of each state to explain why the remedies may or may not be

11   available under its statutory scheme or its common law."  *See* Special Master's Report dated

12   February 5, 2010 at 32:15-20.  Defendants have repeated this mistake here.  Defendants argue

13   that Plaintiffs cannot maintain unjust enrichment claims in states that have "barred" indirect

14   purchase suits (Mot. at 9), or in states with statutory schemes that "preclude" equitable restitution

15   remedies (Mot. at 10).  Both of these arguments fail.

16        **1.    The Laws Of Arkansas, Massachusetts, And Montana Do Not Bar
17              Indirect Purchaser Claims For Unjust Enrichment**

18   Defendants incorrectly assert the Plaintiffs are using unjust enrichment as a "back door"

19   to recover for claims "barred" under the state laws of Arkansas, Massachusetts and Montana.  To

20

21   December 7, 2007) (same); *Jepson v. Ticor Nat'l Ins. Co.*, 2007 U.S. Dist. LEXIS 53480, * 3-5 (W.D.
     Wash. May 1, 2007) (same); and *In re Hypodermic Prods. Antitrust Litig.*, 2007 WL 1959225, at *15
22   (D.N.J. June 29, 2007) (same); *In re Busiprone*, 185 F. Supp. 2d at 377 (same); *In re Aftermarket Filters*,
     2009 U.S. Dist. LEXIS 104114, *24-25 (same); *In re Pharm. Indus. Average Wholesale Price Litig.*, 252
23   F.R.D. at 104 (same); *In re Relafen Antitrust Litig.*, 221 F.R.D. at 266-70 (same); *Clark v. McDonald's
     Corp.*, 213 F.R.D. at 204-205 (same); *Vernon v. Qwest Communs. Int'l, Inc.*, 643 F. Supp. 2d 1256, 1263-
24   1264 (W.D. Wash. 2009) (same); *Hoving v. Transnation Title Ins. Co.*, 545 F. Supp. 2d 662, 666-668
     (E.D. Mich. 2008) (same).

25   [11] *See, e.g.*, *Steinberg v. Nationwide Mut. Ins. Co.*, 224 F.R.D. 67, 80 (E.D.N.Y. 2004) (certifying
     nationwide class action brought under various state laws by single named plaintiff who suffered injury in
26   only one state); *In re Abbott Laboratories Norvir Antitrust Litig.*, 2007 WL 1689899, at *9 (N.D. Cal.
     2007) (certifying a nationwide unjust enrichment class where the two named plaintiffs were California
27   residents); *In re Crazy Eddie Securities Litigation*, 135 F.R.D. 39, 41 (E.D.N.Y. 1991) (certifying
     multistate class on state law claims with only a representative from one state).  To

28
                                                    8
     **INDIRECT PURCHASER PLAINTIFFS' OPPOSITION TO DEFENDANTS' JOINT MOTION TO
     DISMISS THE SECOND CAC**

1   the contrary, clear and unambiguous case law demonstrates that indirect purchaser actions are not

2   "barred" by the laws of any of these states.[12]

3       Defendants cite *O'Connell v. Microsoft*, 2001-2 Trade Cas. (CCH) ¶73419, *9-10 (Mass.

4   Super. 2001), to support their claim that "Massachusetts adheres to *Illinois Brick's* ban on

5   indirect purchaser suits." *See* Mot. at 10. The trial court in *O'Connell* merely held that indirect

6   purchasers cannot bring claims under the Massachusetts Antitrust Act (Mass. Gen. Laws ch. 93,

7   §§ 1-14A) but declined to express its views on the claims under the Massachusetts Consumer

8   Protection Act (Mass. Gen. Laws ch. 93A, § 9). 2001-2 Trade Cas. (CCH) ¶73419, *10. After

9   *O'Connell* was decided, Massachusetts' highest court explicitly held in another case that "*G.L. c.*

10  *93A* <u>allows</u> indirect purchasers to bring a cause of action for anticompetitive conduct that would

11  be precluded under the Antitrust Act." *Ciardi,* 436 Mass. at 64 (emphasis added).

12      The three state court cases Defendants cite (Mot. at 9) discuss equitable remedies, but do

13  not establish a legislative intent to bar indirect purchaser actions, nor do they have anything to do

14  with these states' antitrust or consumer protection laws.[13] The two federal antitrust cases cited by

15  Defendants (Mot. at 9) also do not establish an intent by these states to bar indirect purchaser

16  suits.[14]

17

18  _____

19  [12] *See, e.g., NMV*, 350 F.Supp.2d at 178-79 (holding that there is "no support in the ADTPA or Arkansas
20  caselaw for a ban on indirect purchaser suits," and that "Arkansas also does not prohibit indirect purchaser
    suits under its antitrust laws"); Section II.A.2. *supra*, discussing the court's holding in *Olson* that "[t]here
    is nothing in the statute which limits or restricts an injured person to a direct purchaser," and that "[b]ased
21  on the plain language of the statute, the Court concludes that the Illinois Brick rule does not apply to the
    Montana UTPA"; *Ciardi v. F. Hoffmann-La Roche, LTD.*, 436 Mass. 53, 61 (Mass. 2002) (stating that
22  "[t]he plain and unambiguous language of *G.L.c. 93A* reveals no legislative intent to limit lawsuits for
    price-fixing to direct purchasers"); *Moniz v. Bayer Corp.* 484 F. Supp. 2d 228, 231 (D.Mass. 2007)
23  (upholding Massachusetts state law price fixing claim brought by indirect purchasers under G.L. ch.93A
    for price fixing against manufacturers of rubber products).

24  [13] *See, e.g., Haverty v. Commissioner of Correction*, 792 N.E.2d 989, 992 (Mass. 2003) ("good-time
25  credits" for state inmates); *Cole v. Rivers,* 43 Ark. App. 123, 126 (Ark. App. Ct. 1993) ("constructive
    trusts"); *Nelson v. Wilson*, 264 P. 679, 683 (Mont. 1928) (*inter vivos* gifts and gifts *causa mortis*).

26  [14] *See, e.g. In Re Terazosin Hydrochloride Antitrust Litigation*, 160 F. Supp. 2d 1365, 1379-80 (S.D. Fla.
27  2001) (discusses unjust enrichment generally); *In re Microsoft Corp. Antitrust Litigation*, 401 F.Supp.2d
    461, 464 (D.Md. 2005) (discusses South Carolina only). Plaintiffs have not asserted any claim under the
28  laws of South Carolina in this case.

**INDIRECT PURCHASER PLAINTIFFS' OPPOSITION TO DEFENDANTS' JOINT MOTION TO DISMISS THE SECOND CAC**

## 2.      The State Statutes At Issue Do Not Preclude Plaintiffs' Common Law Unjust Enrichment Claims

Defendants incorrectly assert that Plaintiffs' unjust enrichment claims should be dismissed because the corresponding state antitrust and consumer protection statutes have implicitly precluded the availability of common law remedies for violations of those state laws. *See* Mot. at 10.[15]  To the contrary, it is black letter law that the enactment of a statute does not abrogate a preexisting common law claim, such as unjust enrichment, unless the legislature expressly so states:

> '[S]tatutes which invade the common law…are to be read with a presumption favoring the retention of long-established and familiar principles, except when a statutory purpose to the contrary is evident.'  In such cases, Congress does not write upon a clean slate.  In order to abrogate a common-law principle, the statute must 'speak directly' to the question addressed by the common law.

*United States v. Texas*, 507 U.S. 529, 534 (1993) (internal citations omitted).[16]

---

[15] Under this theory, Defendants move to dismiss Plaintiffs' unjust enrichment claims for the following states:  Hawaii, Minnesota, Mississippi, Nebraska, Nevada, New York, North Carolina, Tennessee, Vermont, West Virginia, and Wisconsin.

[16] *Accord Watson v. Brown*, 686 P.2d 12, 15 (Haw. 1984) ("A statutory remedy is, as a rule, merely cumulative and does not abolish an existing common law remedy unless so declared in express terms or by necessary implication."); *Abraham v. County of Hennepin*, 639 N.W.2d 342, 346-47 (Minn. 2002) ("[U]nless a statute provides that its remedy is exclusive, a party should not be prevented from bringing concurrent claims."); *State ex rel. Wright v. Barney*, 276 N.W. 676, 683 (Neb. 1937) ("For, it is also a maxim of the common law that 'a statute made in the affirmative, without any negative, express or implied, does not take away the common law."); *Cann v. George B. Williams Land & Livestock Co.*, 48 P. 2d 887, 890-91 (Nev. 1935) ("If a statute gives a remedy in the affirmative, without containing any express or implied negative, for a matter which was actionable at common law, this does not as a rule take away the common-law remedy, but the party may still sue at common law as well as upon the statute."); *Christensen v. Lundsten*, 863 N.Y.S.2d 886, 889 (N.Y. Dist. Ct. 2008) ("Statutes arising after the creation of the common law are held to abrogate it only to the extent of the 'clear import of the language used' and only to the extent the 'statute absolutely requires.'"); *Amos v. Oakdale Knitting Co.*, 416 S.E.2d 166, 171 (N.C. 1992) ("[I]f our state legislature has expressed its intent to supplant the common law with exclusive statutory remedies, then common law actions…will be precluded."); *Guy v. Mutual of Omaha Insurance Company*, 79 S.W.3d 528, 536 (Tenn. 2002) ("where a common law right exists and a statutory remedy is subsequently created, the statutory remedy is cumulative absent language showing that it is intended to be exclusive") (internal quotations omitted); *Langle v. Kurkul*, 146 Vt. 513, 516 (Vt. 1986) (" The common law is changed by statute only if the statute overturns the common law in clear and unambiguous language, or if the statute is clearly inconsistent with the common law, or the statute attempts to cover the entire subject matter."); *Burch v. NedPower Mount Storm, LLC*, 220 W. Va. 443, 451 (W.Va. 2007) ("In determining the meaning of a statute, it will be  presumed, in the absence of words therein, specifically indicating the contrary, that the legislature did not intend to innovate upon, unsettle, disregard, alter or violate the common law") (internal citations omitted); *Fuchsgruber v. Custom Accessories, Inc.*, 244 Wis.

10

1    Because unjust enrichment existed in the common law well before the passage of any of

2  these statutes, Defendants must affirmatively demonstrate that the state legislatures at issue

3  intended to abrogate these common law claims.  But none of these state statutes have such

4  express language.  And Defendants cite no other authority demonstrating that the state

5  legislatures <u>intended</u> to abrogate the common law unjust enrichment claims by the enactment of

6  their antitrust or consumer protection statutes.  The mere fact that a state's antitrust or consumer

7  protection statute does not specifically list unjust enrichment as a remedy does not mean that its

8  legislature intended to exclude it.

9    The two federal cases cited by Defendants (Mot. at 10) do not support their position.  In

10  *NMV*, for example, the district court <u>denied</u> a similar motion to dismiss, and held that the

11  "request for restitutionary relief can remain for the states where state antitrust remedies remain."

12  350 F. Supp. 2d at 212.  The *NMV* court found that the defendants in *NMV* "presented <u>no</u>

13  <u>authority</u> to show that where state law *does* allow an indirect purchaser to recover for violating

14  state antitrust statutes, the recovery must be measured only by the damage to the plaintiff rather

15  than by illicit gain to the defendant."  *Id*. at 211 (underline emphasis added; italics in original)

16  The court stated that while it was "<u>possible</u> that a particular state antitrust statute <u>explicitly</u>

17  limit[ed] its relief to compensatory damages… and therefore should be read to preclude the

18  common law restitutionary remedy… defendants [had] <u>not</u> yet made such arguments."  *Id*. at 212

19  (emphasis added).  The Defendants in this case have also failed to make such a showing.

20    *Karahalios v. National Federation of Federal Employees*, 489 U.S. 527 (1989) is

21  irrelevant because it does not discuss the specific laws at issue in this case.  The issue in

22  *Karahalios* was whether Congress intended to create a private right of action under Title VII of

23  the Civil Service Reform Act, not whether a particular state's antitrust or consumer protection

24  statute precluded unjust enrichment claims covering the same underlying conduct.  *Id*. at 529.

25

---

26  2d 758, 773 (Wis. 2001) (" It is axiomatic that a statute does not abrogate a rule of common law unless the abrogation is clearly expressed and leaves no doubt of the legislature's intent"); and *Kornosky v. Hoyle*, 97

27  Miss. 562, 566 (1910) (remedial statute, which provided "further protection" to its beneficiary, did not abrogate preexisting common law rights).

28

**INDIRECT PURCHASER PLAINTIFFS' OPPOSITION TO DEFENDANTS' JOINT MOTION TO DISMISS THE SECOND CAC**

### a.   Hawaii

Hawaii's antitrust statute does not, on its face, preclude unjust enrichment claims or state that its remedies are exclusive.  *See* Haw. Rev. Stat. § 480-13.  Indeed, a state appellate court has held that § 480-13 is not exclusive, and that it did not supersede common law fraud claims.  *See Eastern Star Inc., v. Union Bldg. Materials Corp.*, 6 Haw. App. 125, 141 (1985) (reversing trial courts' dismissal).  *Herring v. Gulick*, 5 Haw. 57, 59 (1884), which Defendants cite, concerned a narrowly tailored land-use statute and has nothing to do with Hawaii's antitrust statute.  The *Herring* court held that land-use statute provided an "exclusive" remedy to injured persons because it was "complete," and   constituted "an entire substitution" for common law causes of action.  *Id*.  Hawaii's courts have issued no such holding with respect to its antitrust laws.  Therefore, this Court should not infer that Hawaii's common law unjust enrichment claims are superseded by its antitrust statute.

### b.   Minnesota

Minnesota's antitrust statute does not, on its face, preclude unjust enrichment claims or state that its remedies are exclusive.  *See* Minn. Stat. §§ 325D.57.  Defendants cite no authority establishing that Minnesota's state legislature intended its antitrust statute to be exclusive of all other remedies.  *Becker v. Mayo Found.*, 737 N.W.2d 200, 207 (Minn. 2007) held that the Child Abuse Reporting Act ("CARA") did not "expressly create a cause of action for failure to support child abuse," and that absent an express provision the court would not infer one.  *Becker* does not discuss Minnesota's antitrust statute, which <u>does</u> provide a private right of action.  *See* Minn. Stat.  § 325D.57.  In *Hyett v. Northwestern Hosp. for Women & Children*, 180 N.W. 552 (Minn. 1920) ("*Hyett*"), which also does not discuss Minnesota's antitrust statute, the court held that Minnesota's Workmen's Compensation Act was exclusive of all other remedies because the Minnesota state legislature <u>intended</u> it to be "a comprehensive act embracing the[] exclusive rights" of Minnesota's employers and employees."  *Id*. at 553.  There has been no such holding with respect to Minnesota's antitrust laws.  In fact, in *State ex rel. Humphrey v. Philip Morris,*

1    *Inc.*, 551 N.W.2d 490, 495-98 (Minn. 1996), Minnesota's Supreme Court held that a plaintiff had

2    standing to pursue relief under Minnesota's antitrust statute and for unjust enrichment.

3                              **c.      Mississippi**

4          Mississippi's antitrust statute does not, on its face, preclude unjust enrichment claims or

5    state that its remedies are exclusive.  *See* Miss. Code Ann. § 75-21-9.  Defendants cite no

6    authority establishing that Mississippi's state legislature intended its antitrust statute to be

7    exclusive of all other remedies.  Defendant's reliance on *Delmas v. Pascagoula State Ry. &*

8    *Power Co.*, 103 Miss. 235, 243 (1912) is misplaced.  The *Delmas* court held only that liability

9    under the "penalty clause of [Mississippi's antitrust] statute" could not exceed $500, not that the

10   remedies enumerated in the statute itself were exclusive of all others.  *Id.* at 244.  Moreover, in a

11   case against tobacco companies for unjust enrichment and violation of state antitrust statute, the

12   Supreme Court of Mississippi concluded that "the unjust enrichment claim was viable under

13   Mississippi law."  *See Corning v. R.J. Reynolds Tobacco Co.*, 868 So.2d 331 (Miss. 2004).

14                             **d.      Nebraska**

15         Nebraska's antitrust and consumer protection statutes do not, on their face, preclude

16   unjust enrichment claims or state that their remedies are exclusive of all others.  Neb. Rev. Stat.

17   Ann. §59-813.  Defendants cite no authority establishing that Nebraska's state legislature

18   intended these statutes to be exclusive of all other remedies.  The fact that Nebraska's antitrust

19   and consumer protection statutes provide for "actual damages" and that only the attorney general

20   can bring claims for injunctive relief is beside the point.  *See* Neb. Rev. Stat. Ann. § 59-813.  In

21   *Kanne v. Visa U.S.A.*, 272 Neb. 489, (2006), a case Defendants rely on, Nebraska's Supreme

22   Court dismissed plaintiffs' unjust enrichment claims "because [*inter alia*] appellants did <u>not</u> state

23   a cause of action under either the Junkin [Antitrust] Act or the Consumer Protection Act."  *Id.* at

24   492 (emphasis added).  Had plaintiffs stated a cause of action under the state statutes, their unjust

25   enrichment claims would also have survived.  Therefore, the *Kanne* Court did not hold, as

26   Defendants suggest, that plaintiffs' unjust enrichment claims were precluded by Nebraska's

27   antitrust statute.

28

13

**INDIRECT PURCHASER PLAINTIFFS' OPPOSITION TO DEFENDANTS' JOINT MOTION TO
DISMISS THE SECOND CAC**

1

#### e.      Nevada

2          Nevada's Unfair Trade Practices Act (the "NUPTA") does not, on its face, preclude

3   unjust enrichment claims or state that its remedies are exclusive of all others.  Nev. Rev. Stat.

4   Ann. § 598A.210.  Defendants cite no authority establishing that Nevada's state legislature

5   intended NUPTA to be exclusive of all other remedies.  *Builders Ass'n of N. Nev. v. City of Reno*,

6   776 P. 2d 1234 (Nev. 1989), which Defendants rely on, held that Nevada's Budget Act (NRS

7   354.5989) did not provide a "private right of action," and did not discuss NUPTA.  *Builders* also

8   did not address the situation we have here – i.e. one where plaintiffs have two sets of available

9   remedies that co-exist; one at common law and the other under a statute.  Instead, the *Builders*

10  court cautioned other courts against "reading other remedies into the statute" and creating

11  additional private rights of action where none previously existed.  *Id*. at 1235.

#### f.      New York

13         New York's consumer protection statute does not, on its face, preclude unjust enrichment

14  claims or state that its remedies are exclusive of all others.  N.Y. Gen. Bus. Law § 349.  None of

15  the cases cited by Defendants even discuss this statute, much less establish that it was intended

16  by New York's legislature to supercede common law unjust enrichment claims.[17]  A New York

17  appellate court has held, however, that plaintiffs stated valid claims <u>both</u> for common law unjust

18  enrichment and under New York's antitrust statute based on their allegation that they paid

19  "artificially inflated prices for defendant's products."  *See Cox v. Microsoft*, 778 N.Y.S.2d 147,

20  148 (Supr. Ct. First. Dept. 2004).  This is a clear indication that New York's consumer protection

21  statute was likewise not intended to preclude common law unjust enrichment claims.

#### g.      North Carolina

23         North Carolina's antitrust and consumer protection statutes do not, on their face, preclude

24  unjust enrichment claims or state that their remedies are exclusive of all others.  *See* N.C. Gen.

25

26  _____

27  [17] *See, e.g., Barstow Road Onwers, Inc., v. Melissa Billings*, 179 Misc. 2d 958 (First Dist NY 1998)
    (discussing the Fair Debt Collection Practices Act); *Drinkhouse v. Parka Corp.*, 3 N.Y.2d 82 (Ct. App.

28  N.Y. 1957) (discussing State Residential Rent Law); *Broughton v. Dona*, 101 A.D. 2d 89 (Sup. Ct. NY

14

1    Stat. §§75-16, 75-16.1.  Moreover, the cases Defendants cite merely articulate a generalized

2    principle; they do not discuss the particular statutes at issue here, nor do they establish North

3    Carolina's intent to preclude common law unjust enrichment claims for antitrust violations.[18]

4                    **h.      Tennessee**

5           Tennessee's antitrust statute does not, on its face, preclude unjust enrichment claims or

6    state that its remedies are exclusive of all others.  *See* Tenn. Code Ann. § 47-25-106 (Tennessee's

7    "Trade Practices Act" or "TPA").  Defendants do not cite any legal authority establishing that

8    Tennessee's legislature intended the TPA's remedies to be exclusive.  In fact, *Guy v. Mutual of*

9    *Omaha Insurance Company*, 79 S.W.3d 528 (Tenn. 2002) underlinesupports Plaintiffs' position that the

10   absence of such express language in the TPA necessarily means that Plaintiffs' common law

11   unjust enrichment claims are not precluded.  *See Guy*, 79 S.W.3d at 536 (internal quotations

12   omitted) ("where a common law right exists and a statutory remedy is subsequently created, the

13   statutory remedy is cumulative absent language showing that it is intended to be exclusive . . .

14   rules of common law are not repealed by implication").[19]

15                   **i.      Vermont**

16          Vermont's antitrust statute (the "VCFA") does not, on its face, preclude unjust

17   enrichment claims or state that its remedies are exclusive.  *See* Vt. Stat. Ann. Tit. 9 § 2465.

18   Defendants cite no authority to support their claim that the VCFA's "full consideration"

19

20   1984) (discussing section 127 of New York's Insurance Law statute); *City of Rochester v. Campbell*, 123
     N.Y. 405 (Ct. App. N.Y. 1890) (discussing a municipal sidwalk ordinance).

21   [18] *See Lawson v. Bennett*, 81 S.E.2d 162, 166 (N.C. 1954) (discussing North Carolina's divorce statute);
     *Allen v. Hunnicutt*, 230 N.C. 49, 50 (N.C. 1949) (discussing North Carolina's paternity laws); *Reaves v.*

22   *Earl-Chesterfield Mill Company*, 5 S.E.2d 305, 307 (N.C. 1939) (discussing North Carolina's Workmen's
     Compensation Act); *R.H. Rigsbee, v. Brogden*, 184 S.E. 24, 26 (N.C. 1936) (discussing the provisions

23   North Carolina's tax code dealing with wills and estates); *Comm. of Grievances of N.C. State Bar Ass'n v.*
     *Strickland*, 200 N.C. 630, 632 (N.C. 1931) (discussing North Carolina's attorney disbarment statute).

24   Finally, plaintiffs in North Carolina have been permitted to pursue claims for unfair and deceptive trade
     practices and unjust enrichment in the same suit.  *See, e.g., Perkins v. Heathmarkets, Inc.*, 2007 NCBC

25   LEXIS 25, *1 and 79-80 (N.C. Sup. Ct.).

26   [19] *Turner v. Harris*, 198 Tenn. 654 (Tenn. 1955), the only other Tennessee case cited by Defendants, does
     not discuss the TPA and is consistent with *Guy*.  The *Turner* court held that the remedies under

27   Tennessee's "Financial Responsibility Law" were exclusive because the act created a "new right" that did
     not exist at common law and prescribed limited remedies for its enforcement. *Id.* at 664.  That is not the

28   case here as common law unjust enrichment predates the TPA.

                                                     15

1    provision automatically precludes all other remedies.  Mot. at 14.  *Elkins v. Microsoft Corp.*, 174

2    Vt. 328, 331 (2002) did not hold, as Defendants suggest, that "the Vermont Legislature intended

3    to exclude preexisting remedies for antitrust remedies not set forth in the statute."  *See* Mot. at 14.

4    Rather, the court found that "Act 65 did not effectuate a change in Vermont law and that an

5    indirect purchaser was entitled to bring a cause of action under the VCFA prior to the 2000

6    amendment."  174 Vt. at 338.  This finding was made in response to Microsoft's argument that

7    the enactment of § 2465(b), which explicitly authorized suits by indirect purchasers, meant that

8    indirect purchasers did not previously have standing to sue under § 2461(b).  *See id.*  Finally,

9    federal courts recognize that Plaintiffs may pursue common law unjust enrichment claims even

10   when they are also seeking relief under the Vermont's antitrust statutes.[20]

11                           **j.      West Virginia**

12           West Virginia's antitrust statute does not, on its face, preclude unjust enrichment claims

13   or state that its remedies are exclusive.  *See* W.Va. Code § 47-18-9.  Defendants cite no legal

14   authority establishing that West Virginia's legislature intended this statute to be exclusive of all

15   other remedies.  Instead, Defendants cite a case from 1883, which addresses whether the National

16   Currency Act abrogated the common law remedy of *assumpsit*, not whether West Virginia's

17   antitrust statute abrogates the common law remedy of unjust enrichment.  *See Lynch v.*

18   *Merchants National Bank of West Virginia*, 22 W.Va. 554, 555-557 (1883).  Absent an express

19   holding to the contrary, this Court should not infer that West Virginia's common law unjust

20   enrichment claims are implicitly superseded by its antitrust statute.

---

22   [20] *See, e.g., In re Relafen*, 221 F.R.D. at 288 (certifying indirect purchaser classes under both Vermont's
23   antitrust statute and common law unjust enrichment claims in an antitrust case); *D.R. Ward Construction
     Co. v. Rohm and Haas Co.*, 470 F. Supp. 2d 485, 507 (E.D. Pa. 2006) (denying defendant's motion to
24   dismiss and because "Vermont [] permit[s] indirect purchasers to pursue antitrust claims; thus, an unjust
     enrichment claim would not circumvent the procedural and substantive limitations of [its] antitrust
25   statutes"). *Town of Battleboro v. Silas M. Wait*, 44 Vt. 459, 460-61 (1872) ("*Battleboro*"), also cited by
     Defendants, does not discuss Vermont's antitrust statute or unjust enrichment.  Moreover, the *Battleboro*
26   court held that statutory remedies are exclusive only when they create a "new duty," and that "[w]here a
     new penalty is applied for a matter which at common law was an indictable offence either remedy may be
27   pursued." *Id.*

28
                                            16

### k.  Wisconsin

Wisconsin's antitrust statute does not, on its face, preclude unjust enrichment claims or state that its remedies are exclusive.  *See* Wis. Stat. § 133.18 (b).  Defendants cite no legal authority establishing that Wisconsin's legislature intended this statute to be exclusive of all other remedies.  Significantly, Wisconsin's antitrust statute does contain a prohibition against obtaining damages against government officials.  Wis. Stat. § 133.18 (b).  This demonstrates that Wisconsin's legislature made explicit decisions about what claims to exclude, and chose not to exclude claims for unjust enrichment.  *Nordell v. Kinney*, 62 Wis. 2d 558 (1974) did not hold that Wisconsin's antitrust statute was intended to abrogate common law unjust enrichment claims.  Instead, the *Nordell* court held that the treble damage provision in Wisconsin's antitrust statute functioned as a penalty; that the statute was the core cause of action being asserted; and that the trial court's choice of venue was therefore appropriate.  *Id*. at 562.  This Court should not infer that Wisconsin's unjust enrichment claims are implicitly superseded by its antitrust statute.

### D.  Plaintiffs' Claim Under the Massachusetts Consumer Protection Statute Should Proceed

Defendants seek to dismiss Plaintiffs' claims under Mass. G.L. c. 93A §9 (hereinafter "Chapter 93A") by arguing that Plaintiffs failed to technically comply with the "demand letter" requirements of Chapter 93A.[21]  Specifically, Defendants maintain that Plaintiffs did not wait thirty days after sending the demand letter before filing their SCAC.  Given the factual and procedural circumstances underlying this case, the Court should reject Defendants' argument.

Defendants have had knowledge of the facts and circumstances needed to make a reasonable offer of settlement within the meaning and purpose of Chapter 93A §9(3) since Plaintiffs' filed their CAC on March 16, 2009.  Plaintiffs mailed their formal demand letter on

---

[21] To adequately fulfill the substantive requirements for a demand letter under Mass. G.L. c. 93A §9(3), Plaintiffs' demand letter need only: (a) identify the Plaintiffs as claimants, *id.*; (b) reasonably describe Defendants' unfair or deceptive acts or practices, *id.*; *Simas v. House of Cabinets, Inc.*, 53 Mass. App. Ct. 131, 139 (2001), (c) reasonably describe the injury suffered, *id.*; *Richards v. Arteva Specialties*, 66 Mass. App. Ct. 726, 734 (2006); (d) generally specify the relief sought, *Spring v. Geriatric Authority of Holyoke*, 394 Mass. 274 (1985); *Slaney v. Westwood Auto, Inc.*, 366 Mass. 688, 704 (1975); and (e) indicate that Plaintiff is seeking relief under Chapter 93A. *Cassano v. Gogos*, 20 Mass. App. Ct. 348, 349-53 (1985).

17

1  May 7, 2010.  *See* Appendix A. Plaintiffs' SCAC alleged that a written demand for relief was

2  mailed to each of the Defendants, and that the letter: (1) identified the Massachusetts Plaintiffs;

3  (2) reasonably described Defendants' unfair and deceptive acts and practices, the injury suffered,

4  and the damages sought; and (3) requested that Defendants make a reasonable, class-wide tender

5  of settlement.  *See* SCAC ¶ 280(h).

6          The purpose of a Chapter 93A demand letter is to encourage negotiation and settlement of

7  claims arising from allegedly unlawful conduct and to allow the defendant to limit the damages a

8  plaintiff might recover by making a reasonable offer of settlement.[22]  Despite having well over 30

9  days notice of Plaintiffs' claims in Massachusetts, Defendants have yet to make *any* offer for

10  settlement, let alone a reasonable offer for settlement.  None of the Defendants, except the

11  Hitachi Defendants, even responded to Plaintiffs' demand letter.  The Defendants are using the

12  demand letter requirement, whose purpose is to facilitate and encourage settlement, as a delaying

13  tactic.  The Defendants have no intention of making a settlement offer.

14          The Defendants have now had the Plaintiffs' demand letter for well over 30 days.

15  Plaintiffs can thus proceed with their claim.  There is no basis to dismiss this claim on its

16  merits.[23]  Thus, if the Court were to grant Defendants' motion, it would have to do so with leave

17  to amend.  Plaintiffs would then file another amended complaint, making exactly the same claim.

18  There is no reason why Plaintiffs should have to do so.

19      **E.      Plaintiffs' Newly-Asserted State Law Claims Are Not Barred by Their
                  Respective Statutes of Limitations**
20

21          The SCAC alleges the following additional claims on behalf of indirect purchasers.  First,

22  existing plaintiffs allege antitrust and unjust enrichment claims under the laws of Illinois, Maine

23  _____

24  [22] *Billingham v. Dornemann*, 447 Mass. 1113 (2006) (citing *Simas v. House of Cabinets, Inc.*, 53 Mass.
     App. Ct. at 139).  To accomplish the purposes of the demand letter requirement, a demand letter should
25  "define the injury suffered and the relief demanded in a manner that provides the prospective defendant
     with an opportunity to review the facts and law to see if the requested relief should be granted."  *Simas*,
26  757 N.E.2d at 283 (citing *York v. Sullivan*, 369 Mass. 157, 162-63 (1975)).

27  [23] Even if Plaintiffs' SCAC is dismissed, that dismissal should not be on the merits, or with prejudice, and
     such a dismissal does not ordinarily bar a suit brought after thirty days have run.  *See York*, 369 Mass. 157
28  (1975); *see also* MASS. R. CIV. P. 41(b)(3).

1   and Montana. [24]   *See* SCAC ¶¶ 254, 257, 261 (antitrust claims); ¶¶ 286-289 (unjust enrichment

2   claims).  Second, newly-added named plaintiffs—putative class members in class actions filed

3   prior to consolidation of the complaints—allege consumer protection/unfair practice claims, and

4   unjust enrichment claims, under the laws of Arkansas and the District of Columbia (SCAC ¶¶

5   275, 277, 286-289); and an antitrust claim under the laws of the District of Columbia. *Id.* ¶¶ 252.

6          Defendants argue that these claims should be dismissed because they do not relate back to

7   prior complaints.  This argument is without merit.  The relation-back doctrine does not even

8   come into play where, as here, the statute of limitations has not run or has been tolled by

9   Defendants' fraudulent concealment.  And in any event, Plaintiffs' newly-asserted claims meet

10  the "relation back" test.  The newly-asserted claims should therefore go forward.

11              **1.     Plaintiffs' Newly-asserted Claims Are Timely**

12         Plaintiffs' newly-asserted claims are timely, even assuming no relation back, because the

13  statutes of limitations have not run or have been tolled.

14              **a.     Plaintiffs' Illinois Antitrust Act Claim Is Timely**

15         The Illinois Antitrust Act states in relevant part:  "Any action for damages under this

16  subsection is forever barred unless commenced within 4 years after the cause of action accrued . .

17  . ."  740 Ill. Comp. Stat. Ann. 10/7(2).  In *People v. ex rel Hartigan v. Moore ("Hartigan"),* 143

18  Ill. App. 3d 410 (1986), the Illinois appellate court, interpreting a prior version of the Act, held

19  that a cause of action accrues at the time of the commission of the last overt act in support of the

20  conspiracy alleged, rather than on the initial date of the conspiracy.

21         In *Hartigan,* the Illinois Attorney General had instituted a civil action against the

22  defendants, alleging violations of the Illinois Antitrust Act through a combination and conspiracy

23  to fix prices and obtain a public contract through a bid-rigging scheme.  Section 7(4) of the

24  Illinois Antitrust Act at that time stated:  "The action must be brought within 4 years after the

25  commission of the <u>act</u> upon which it is based."  *Hartigan,* 143 Ill. App. 3d at 412 (emphasis in

26  _____

27  [24] As discussed *supra* in Section II.B., the named Plaintiffs may allege claims under Illinois, Maine and
28  Montana law even though none of the named Plaintiffs resides in those states.

19

1   original), citing Ill. Rev. Stat. 1983, ch. 38, par. 60 7(4).  Answering the question which "act"

2   triggered the statute of limitations, a question of first impression, the court interpreted the word

3   "act" to mean "the market conduct proscribed in the Act."  *Id.* at 411.  "[T]he 'illegal act charged

4   in the complaint [wa]s the conspiracy to fix prices which continued at least until" a contract

5   payment was made to the selected bidder.  *Id.* at 413.  The complaint was brought within 4 years

6   of that date and was therefore timely.  *Hartigan* relied on *United States v. Inryco, Inc.* 642 F.2d

7   290, 293 (9th Cir. 1981), cert. dismissed (1982), 454 U.S. 1167 (statute of limitations on

8   Sherman Act conspiracy does not run as long as conspirators "engage in overt acts designed to

9   accomplish its objectives").

10      Here, Plaintiffs allege that Defendants' conspiracy continued at least through November

11  25, 2007.  *See* SCAC ¶ 136.  Plaintiffs filed the SCAC on May 10, 2010, within four years of the

12  last overt act alleged, November 25, 2007.  Therefore, the Illinois Antitrust Act claim is timely.

### b. Defendants Acknowledge That Fraudulent Concealment Tolls The Statute of Limitations On The Other Newly-Asserted Claims

16      Plaintiffs' other newly-asserted claims are also timely.  As Defendants acknowledge, the

17  three, four, five and six-year limitations period for each of these claims is subject to tolling for

18  fraudulent concealment.  *See* Mot. at 16 n. 5.[25]  Defendants contend that Plaintiffs need to

19  "prove" at this stage of the proceedings that the fraudulent concealment alleged continued into

20  the relevant limitations period.  *See id.*  This is incorrect.  At the motion to dismiss phase, the

21  Court may accept Plaintiffs' claims as alleged.

22      Plaintiffs allege that Defendants' conspiracy lasted at least until November 25, 2007, and

23  that because of Defendants' affirmative acts of concealment and the self-concealing nature of

---

[25] Plaintiffs agree with Defendants' characterization of the applicable limitations periods:  two years—Montana antitrust claim; three years—Arkansas and District of Columbia unjust enrichment claims; four years—District of Columbia antitrust claim; five years—Arkansas consumer protection claim, and Illinois and Montana unjust enrichment claims; and six years—Maine antitrust and unjust enrichment claims.  *See* Mot. at 16 n. 5.  The Illinois antitrust claim, as discussed above, is subject to a four-year period triggered by the last overt act of the conspiracy, rather than tolling by fraudulent concealment.

**INDIRECT PURCHASER PLAINTIFFS' OPPOSITION TO DEFENDANTS' JOINT MOTION TO DISMISS THE SECOND CAC**

1   their conspiracy, they did not discover the true facts until shortly prior the commencement of the

2   litigation.  *See* SCAC ¶¶ 1, 291.  Further, Plaintiffs allege that "[t]hroughout the relevant period,

3   Defendants affirmatively and fraudulently concealed their unlawful conduct against Plaintiffs and

4   the Classes."  *Id.* ¶ 290.  This Court has already found these allegations sufficient to toll the

5   applicable statutes of limitations.  *See* Special Master's Report and Recommendations (February

6   5, 2010) at 24:18-22 and Order Approving Report (March 10, 2010) at 22:27-23:3.

7          The first putative class action brought on behalf of indirect purchasers was filed on

8   November 13, 2007.[26]  The SCAC was filed on May 10, 2010.  Even without relation back,

9   Plaintiffs' claims were brought well within three years from Plaintiffs' initial awareness of

10  Defendants' continuing wrongful conduct.  The claims are therefore timely under the respective

11  three, four, five and six-year statutes of limitations.[27]

12                  **2.     The Illinois, Maine And Montana Claims "Relate Back" To The
                             Original Pleadings**

13

14         "'[T]he relation back doctrine of Rule 15(c) is to be liberally applied.'"[28]  Plaintiffs'

15  Illinois, Maine and Montana claims relate back to an earlier pleading: the Complaint filed in

16  *Figone v. LG Electronics, Inc. et al.*, Case No. CV-07-6331 ("*Figone*"), on December 13, 2007.[29]

17         The existing putative representative plaintiffs allege additional antitrust, consumer

18  protection/unfair practice, and unjust enrichment claims, under Illinois, Maine and Montana state

19

20  ---

    [26] *See Kindt v. Matsushita Electrical Industrial Co., Ltd.*, No. 07-cv-10322 (GBD), filed in the U.S.
21  District Court for the Southern District of New York and subsequently transferred to this Court by the
    Judicial Panel on Multidistrict Litigation and consolidated with this case. No. 3:08-cv-1345 (N.D. Cal.)

22  [27] The Montana antitrust claim is subject to a two-year limitations period.  The Montana claim is
    nonetheless valid because, as demonstrated *infra*, it relates back to the filing of the original pleadings.
23
    [28] *In re  Brocade Commns. Sys. Derivative Litig.*, 615 F. Supp. 2d 1018, 1038 (N.D. Cal. 2009), citing
24  *Clipper Express v. Rocky Mtn. Motor Tariff Bureau, Inc.*, 690 F.2d 1240, 1260 n.29 (9th Cir. 1982).

25  [29] *Figone* is the "original pleading" for purposes of Rule 15(c) (Fed. R. Civ. P. 15(c)(1)(B)),because it
    named the same parties and alleged the same set of operative facts and temporal allegations as the CAC
26  and the SCAC.  Plaintiffs' claims need not relate back to the earliest complaint on file.  *See, e.g., In re
    Network Associates, Inc. II Secs. Litig.*, No. C 00-4849 MJJ, 2003 U.S. Dist. LEXIS 14442, at *22 n. 12
27  (N.D. Cal. March 21, 2003) ("for purposes of Plaintiff's relation back argument, the new claims need only
    relate back to the [Consolidated Complaint]."). *Figone* was related to the lead case, No. 07-cv-5944, by
28  Order of this Court dated January 4, 2008.  *See* Dkt. No. 24.

**INDIRECT PURCHASER PLAINTIFFS' OPPOSITION TO DEFENDANTS' JOINT MOTION TO
DISMISS THE SECOND CAC**

1   laws, on behalf of the residents of those jurisdictions.[30]  *See* SCAC ¶¶ 254, 257, 261 and 288.  An

2   amendment to add new claims by existing parties relates back to the original pleading if "the

3   amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set

4   out — or attempted to be set out — in the original pleading."  Fed. Civ. P. 15(c)(1)(B).  The

5   proposed amendment meets that standard.  The new claims are based on the identical conduct set

6   out in *Figone*.  They also cause no prejudice to Defendants.  *See Besig v. Dolphin Boating &*

7   *Swimming Club,* 683 F.2d 1271, 1279 (9th Cir. 1982) ("Relation back imposes no prejudice when

8   an amendment restates a claim with no new facts.").[31]

9            **3.       The Arkansas And District of Columbia Claims Relate Back To The**
                        ***Figone* Complaint**
10

11          The claims brought by the newly-named representative plaintiffs relate back to *Figone* as

12   well.  A claim brought by new plaintiffs relates back if:  "(1) the original complaint gave the

13   defendant adequate notice of the claims of the newly proposed plaintiff; (2) the relation back

14   does not unfairly prejudice the defendant; and (3) there is an identity of interests between the

15   original and newly proposed plaintiff."  *Rosenbaum v. Syntex Corp.,* 95 F.3d 922, 935 (9th Cir.

16   1996).  The SCAC meets these three prongs.

17            **a.       The *Figone* Complaint Provided Defendants Sufficient Notice**
                        **Of The Arkansas And District of Columbia Claims**
18

19          Defendants argue that they did not receive adequate notice of the Arkansas and District of

20   Columbia claims, but omit to mention the notice they received in *Figone* and other pleadings.

21   *Figone* alleged District of Columbia antitrust claims, Arkansas and District of Columbia

22   consumer protection/unfair practice claims, and unjust enrichment claims.  *See Figone* Compl. ¶¶

23   109, 130, 132, 148-151.  The defendants against whom these claims were asserted are named in

24   _____

25   [30] The plaintiffs named in the SCAC are not residents of Illinois, Maine, or Montana.  Nonetheless, they
     have standing to assert such claims.  *See supra* at Section II.B.  Accordingly, there are no new plaintiffs
     with respect to these claims.

26   [31] In addition, Defendants were on notice.  *See Kindt* ¶¶ 5, 20, 29-33; ¶ 57 (Maine antitrust claim); ¶¶ 82-
     83 (claims under Maine and Montana consumer statutes); and ¶¶ 95-97 (nationwide unjust enrichment
27   claims); *Figone* ¶¶ 112, 136 (Maine antitrust and consumer protection claims); and ¶¶ 148-151
     (nationwide unjust enrichment).

28
                                                      22
     _____
          **INDIRECT PURCHASER PLAINTIFFS' OPPOSITION TO DEFENDANTS' JOINT MOTION TO**
                              **DISMISS THE SECOND CAC**

1   the SCAC, and share a "community of interest" with the remaining named defendants.[32]  *See*

2   *G.F. Co. v. Pan Ocean Shipping Co.,* 23 F.3d 1498, 1503 (9th Cir. 1994) ("Rule 15(c) notice is

3   satisfied when 'the parties are so closely related in their business operations or other activities

4   that the institution of an action against one serves to provide notice of the litigation to the

5   other.'") (citation omitted).  Other complaints alleged similar claims.[33]  The notice provided was

6   adequate.

7           Significantly, all of these initial complaints were class actions.  Defendants cannot

8   complain that the SCAC newly-named plaintiffs are newcomers to the litigation since they were

9   members of the originally-alleged classes.  *See, e.g., In re Juniper Networks, Inc. Secs. Litig.,* 542

10  F. Supp. 2d 1037, 1052-53 (N.D. Cal. 2008) (although noteholders were not added as named

11  plaintiffs until the filing of the amended consolidated class action complaint, original class action

12  filed on their behalf put defendants on notice).

13          The fact that the March 16, 2009 CAC did not incorporate the Arkansas and District of

14  Columbia claims alleged in *Figone* makes no difference.  First, Plaintiffs have the right to

15  reallege those claims now.  *See New York City Emples. Ret. Sys. v. Jobs*, 593 F.3d 1018, 1025

16  (9th Cir. 2010) (lead plaintiff who omitted from a consolidated complaint a claim alleged in the

17  original complaint, filed by different plaintiffs, did not waive the right to reallege that claim in

18  the subsequent amendments in the district court).  Defendants were thus on notice that the claims

19

20  [32] *Figone* named the following defendants:  LG Electronics, Inc.; Samsung Electronics Co., Ltd.; Samsung SDI Co., Ltd.; Samsung Electronics America, Inc.; Samsung SDI America, Inc.; Samtel Color, Ltd.;

21  Toshiba Corporation; Toshiba America Electronic Components, Inc.; Toshiba America Information Systems, Inc.; Matsushita Toshiba Picture Display Co., Ltd.; Matsushita Electric Industrial Co., Ltd.

22  (n/k/a Panasonic Corporation); Panasonic Corporation of North America; Beijing-Matsushita Color CRT Company, Ltd.; Orion Electric Co., Ltd. (named in the SCAC only); Hitachi Ltd.; Hitachi America Ltd.;

23  Hitachi Asia, Ltd.; Chunghwa Picture Tubes Ltd.; Chunghwa Picture Tubes (Malaysia) Sdn. Bhd.; LP Displays International, Ltd.; Koninklijke Philips Electronics N.V.; Philips Electronics North America;

24  Irico Group Corp.; Irico Display Devices Co., Ltd.; Thai CRT Company, Ltd.; and Tatung Company of America, Inc.  *See Figone* Comp. p. 1.

25  [33] *See Kindt* Compl. ¶¶ 53, 77, 79, 95-97 (claims under the laws of Arkansas and the District of Columbia, and unjust enrichment claims; *Nasto* Compl., 08-cv-01371 (N.D. Cal.) (filed March 10, 2008), Dkt. 1 ¶¶

26  118, 139, 141, 156-159; *Terry* Compl., 08-cv-01559 (N.D. Cal.) (filed March 21, 2008), Dkt. 1 ¶¶ 113, 134, 136, 151-154; *Juetten* Compl., 07-cv-6225 (N.D. Cal.) (filed December 10, 2007), Dkt. 1 ¶¶ 104-107

27  (unjust enrichment claims); *Stack* Compl., 07-cv-01319 (N.D. Cal.) (filed March 7, 2008), Dkt. 1 ¶¶ 141-144 (unjust enrichment claims).

28

**INDIRECT PURCHASER PLAINTIFFS' OPPOSITION TO DEFENDANTS' JOINT MOTION TO DISMISS THE SECOND CAC**

1   might be realleged at a later date.  Second, even assuming the statute of limitations was not tolled

2   between March 16, 2009, and May 10, 2010 (the date the SCAC was filed) the Arkansas and

3   District of Columbia claims were still brought within three years (the shortest limitations period)

4   from Plaintiffs' discovery of their injury.[34]

5       None of Defendants' cited authorities regarding notice is on point.  *Besig v. Dolphin*

6   *Boating & Swimming Club* discussed substitution of plaintiffs whose interests differed from those

7   of the original plaintiff.  683 F.2d at 1279 ("The amended complaint transformed the case from

8   one seeking equal [club] membership access to one seeking identical nonmember access.").  In

9   *Young v. LePone,* 305 F.3d 1, 16 (1st Cir. 2002), the original complaint was not brought as a

10  class action, and the new plaintiffs had differing interests than the original plaintiff.  In *Clif v.*

11  *Payco*, the court found that a later complaint, which plead a nationwide class did not relate back

12  to the first complaint, which contained only a Florida class.  363 F.3d 1113, 1132 (11th Cir.

13  2004).  In contrast, *Figone* pleads Arkansas and District of Columbia claims and classes, thus

14  putting Defendants on notice.

15              **b.      The Arkansas And District Of Columbia Claims Will Not**
                **Unfairly Prejudice Defendants**
16

17      The addition of the Arkansas and District of Columbia claims will not unfairly prejudice

18  the Defendants.  An increase in liability exposure is not grounds to deny relation back, as

19  Defendants claim.  "The addition of new plaintiffs who are similarly situated to the original

20  plaintiffs does not cause defendants any prejudice except that defendants incur the potential for

21  increased liability.  Increased liability is not sufficient prejudice to deny the relation back of such

22  plaintiffs."[35]  *Besig* and *Young*, both cited by Defendants, are distinguishable for reasons already

23  discussed.[36]

24  _____

25  [34] At most, the statute of limitations would have run one year and 85 days (one year and 55 days from
    March 16, 2009, the date the CAC was filed, to May 10, 2010, the date the SCAC was filed) plus 30 days
26  (from November 13, 2007, the day the first complaint was filed, to December 13, 2007, the date *Figone*
    was filed).
27
28  [35] *In re Glacier Bay,* 746 F. Supp. 1379, 1391 (D. Alaska 1990) (internal citation omitted).  *See also*
    *DeLodder v. Aerotek, Inc.,* No. CV 08-6044 CAS (AGRx), 2009 U.S. Dist. LEXIS 55633, at *13 (C.D.

24

**INDIRECT PURCHASER PLAINTIFFS' OPPOSITION TO DEFENDANTS' JOINT MOTION TO**
**DISMISS THE SECOND CAC**

1

2

### c.   The New Plaintiffs Have An Identity Of Interest With The Current Plaintiffs

3

Lastly, the new plaintiffs have an identity of interest with the current plaintiffs.  In *In re*

4

*Network Associates,* Judge Jenkins held that because the claims of new proposed class members

5

were "based on the same underlying allegations as the original class members . . . the new

6

members share sufficiently similar interest with the original class members to allow relation back

7

[of] claims."  2003 U.S. Dist. LEXIS 14442, at *24-25.  Likewise here, the claims of the new

8

class plaintiffs are based on the very same alleged misconduct as the claims of the original class

9

members and, as noted, they are identical with respect to both the time frame and the conduct

10

alleged.[37]  In short, Plaintiffs' claims are timely, but even if they were not, they relate back to the

11

*Figone* Complaint.

12

---

13

Cal. June 15, 2009) (quoting *Glacier Bay* and permitting relation back of claims adding a class representative, adding a new class, and adding new claims, in an overtime unpaid wage class action).

14

[36] Nor do Defendants argue that any other prejudice would result, and indeed none would.  As discussed, Plaintiffs seek to reassert previously alleged antitrust, consumer protection/unfair trade practice, and unjust enrichment claims, stemming from the same set of previously asserted operative facts.  *See* SCAC

15

16

¶¶ 136-183; *Figone* ¶¶ 70-93; *see also* CAC ¶¶ 140-188.  In addition, the proposed claims are temporally identical to those already asserted with respect to both the operative facts regarding Defendants' conduct, and the plaintiffs' purchases.  Accordingly, Defendants are not faced with the burden of defending against

17

new legal theories, fact patterns, or an expanded time period.  Finally, the case is still in the earliest stages of litigation—only motions to dismiss have been filed, no class has been certified yet, and very little

18

merits discovery has occurred to date.  *See DeLodder,* 2009 U.S. Dist. LEXIS 55633, at *12 (no prejudice evident given lack of discovery in case).

19

20

[37] Defendants' cases are inapposite.  Several of the cases Defendants rely on were brought under Securities Act § 10(b)(5) where plaintiffs' reliance or Defendant's intent at the time of the transaction are elements of the underlying claim.  Given these subjective elements, which do not exist in a price fixing

21

case, the interests of a particular plaintiff may differ depending the time and circumstance of a securities purchase.  *See In re Mercury Interactive Corp. Secs. Litig.,* No. C 05-3395 JF (PVT), 2007 U.S. Dist.

22

LEXIS 59171, at *15 (N.D. Cal. July 30, 2007); *Young,* 30 F.3d at 8 (new plaintiffs' claims differed in "significant respects," having "purchased their shares on the open market at a much wider range of times

23

and prices," and thereafter become "purely passive investors"); *Network Associates* distinguished *Syntex,* 95 F.3d at 935, noting that in *Syntex,* "the claims of the proposed plaintiffs are different because [they]

24

bought stock at different values *and after different disclosures and statements were made by Defendants and analysts.*" *In re Network Associates,* 2003 U.S. Dist. LEXIS 14442, at *25 (emphasis in original); *see*

25

*also Immigrant Assistance Project of the Los Angeles County Federation of Labor (AFL-CIO) v. I.N.S.,* 306 F.3d 842, 858-859 (9th Cir. 2002) (distinguishing *Syntex* because the plaintiffs were "similarly

26

situated").  Finally, unlike in *Besig,* here the goals of all plaintiffs are identical, not hostile; the "central issue of this litigation" is the same; and "the focus of the litigation" did not "change[] distinctly upon the

27

amendment of the complaint."  683 F.2d. at 1279.

28

25

III.    **Conclusion**

For all of the foregoing reasons, Defendants' joint motion to dismiss the Second Consolidated Amended Complaint must be denied.

Dated: July 16, 2010                          Respectfully submitted,

**TRUMP, ALIOTO, TRUMP & PRESCOTT, LLP**

By:    /s/ Mario N. Alioto
       Mario N. Alioto (56433)
       Lauren C. Russell (241151)
       2280 Union Street
       San Francisco, California 94123
       Telephone: (415) 563-7200
       Facsimile: (415) 346-0679
       E-mail: malioto@tatp.com; laurenrussell@tatp.com

       *Interim Lead Counsel*
       *for the Indirect Purchaser Plaintiffs*

**INDIRECT PURCHASER PLAINTIFFS' OPPOSITION TO DEFENDANTS' JOINT MOTION TO DISMISS THE SECOND CAC**