Dewey & LeBoeuf LLP
1301 Avenue of the Americas
New York, NY 10019-6092

DEWEY & LEBOEUF

tel +1 212 259 8050
fax +1 212 259 7013
jkessler@dl.com

July 19, 2010

Hon. Charles A. Legge
JAMS
Two Embarcadero Center, Suite 1500
San Francisco, CA 94111

RE: *In re Cathode Ray Tube (CRT) Litigation*, No. 07-5944 SC, MDL No. 1917

Dear Judge Legge:

We write on behalf of defendants to provide Your Honor with a more complete paper record in response to the submissions made in plaintiffs' July 15 letter (Dkt. 735) regarding: (i) defendants' individual burden issues in responding to plaintiffs' discovery and (ii) plaintiffs' refusal to provide their factual basis for alleging a conspiracy directed at finished CRT products.

Plaintiffs urge the Court to intervene with respect to defendants' individual burden issues, but plaintiffs do not identify which specific disputes with which specific defendants are ripe. Instead, plaintiffs make blanket assertions lumping together all "defendants" – for example, that "defendants contend that discovery should be limited to issues related to CRTs only." A review of the complete paper record concerning the individual negotiations with the Panasonic defendants illustrates this misstatement. [1] As Panasonic's submission makes clear, because of their highly individualized discovery issues, defendants cannot be grouped together – certain defendants, including the Panasonic defendants, have, in fact, agreed to produce information regarding finished CRT products. Indeed, each set of defendants have engaged in separate discussions on this issue. Moreover, because, as plaintiffs admit, the individual meet and confers are not yet complete, defendants respectfully request that the Court allow the parties to proceed without Court intervention until the August 24 status conference. Defendants expect the separate meet and confers will progress to a point so that their status can by discussed in detail on a defendant-by-defendant basis at that time.

On the other hand, the parties' dispute about the narrow issue of whether plaintiffs

[1] Plaintiffs provided Your Honor with their July 7 meet and confer letter to the Panasonic defendants, but to make the record more complete, we now attach the initial letter on this subject sent by the Panasonic defendants on July 7 (which plaintiffs chose to ignore in their subsequent July 7 letter), and the most recent letter sent by the Panasonic defendants on July 15. Because the meet and confer process is continuing with respect to all defendants, it is premature at this time to provide Your Honor with the correspondence that has been exchanged to date between plaintiffs and each separate defendant.

should be required to properly respond to discovery requesting the factual basis of plaintiffs' allegations of a finished CRT products conspiracy is ripe for Court intervention. Plaintiffs have submitted only part of the correspondence on this issue. We attach the initial letter on this subject sent by defendants to plaintiffs on June 24. As this correspondence demonstrates, all defendants share a common position that they are entitled to this discovery consistent with Rule 11, and plaintiffs have made it clear they are unwilling to respond. We respectfully request that this issue be addressed at the August 24 status conference.

Respectfully submitted,

s/ Jeffrey L. Kessler
Jeffrey L. Kessler

cc: All Counsel via ECF

WEIL, GOTSHAL & MANGES LLP
767 FIFTH AVENUE
NEW YORK, NY 10153
(212) 310-8000
FAX: (212) 310-8007

AUSTIN
BOSTON
BUDAPEST
DALLAS
FRANKFURT
HONG KONG
HOUSTON
LONDON
MIAMI
MUNICH
PARIS
PRAGUE
PROVIDENCE
SHANGHAI
SILICON VALLEY
WARSAW
WASHINGTON, D.C.

DAVID L. YOHAI
DIRECT LINE (212) 310-8275
E-MAIL: david.yohai@weil.com

July 7, 2010

**BY U.S. MAIL & E-MAIL**

Guido Saveri, Esq.
Saveri & Saveri, Inc.
706 Sansome Street
San Francisco, CA 94111

Mario N. Alioto, Esq.
Trump, Alioto, Trump & Prescott, LLP
2280 Union Street
San Francisco, CA 94123

Re: *In re Cathode Ray Tube (CRT) Litigation*, No. 07-5944 SC, MDL No. 1917

Dear Guido and Mario:

I write to follow up on the meet and confer that was held on June 9, 2010 among counsel for Defendants MT Picture Display Co., Ltd. ("MTPD"), Panasonic Corporation of North America ("PNA"), and Panasonic Corporation ("Panasonic," and collectively, the "Panasonic Defendants") and counsel for the Direct and Indirect Purchaser Plaintiffs ("Plaintiffs") relating to the scope of discovery in the above-referenced action.

As you recall, there were three central points of contention as to the scope of discovery discussed at the meet and confer: (1) the relevant time period, (2) the applicable geographic limitations, and (3) the products subject to discovery. The Panasonic Defendants maintain that, by broadly defining each of these categories, Plaintiffs are both seeking information that is not reasonably calculated to lead to discovery of admissible evidence and imposing an undue burden on the Panasonic Defendants that would far outweigh any benefit of the discovery. However, in a good faith effort to come to a reasonable compromise on the scope of discovery, we address the three points of contention below and we provide an initial response

to Plaintiffs' specific request for a further explanation of the significant burdens that would be imposed on the Panasonic Defendants under Plaintiffs' proposed scope of discovery.

*First*, as to the relevant time period, Plaintiffs are seeking discovery reaching back to at least 1995 or, in many instances, 1991. The statute of limitations only extends back to November 13, 2003. At the meet and confer, the Panasonic Defendants proposed that discovery extend to January 1, 2002. Without making any counterproposal, Plaintiffs rejected any compromise on this issue, claiming that *any* limitation on the time period would be inappropriate. Instead, Plaintiffs asked for an explanation from the Panasonic Defendants of the additional burdens associated with a discovery period reaching back to the early 1990s.

Obviously, going back in time an additional decade would create a tremendous additional burden in terms of searching, reviewing and producing documents. As an initial matter, because the U.S. MTPD subsidiaries are now defunct, hard documents concerning CRTs manufactured in the United States are in storage. Searching through these archived documents – contained in hundreds of boxes in a warehouse – already poses a substantial burden on the Panasonic Defendants. Moreover, it is our understanding that more than 650 boxes of the warehoused documents, or approximately 1.6 million pages, pre-date the statute of limitations period. To be forced to review and produce these documents – many of which are twenty years old – would create a substantial additional burden on the Panasonic Defendants.

With respect to electronic documents maintained by MTPD's U.S. subsidiaries, such documents are stored on several back-up tapes. The cost of restoring the back-up tapes is significant. For example, the cost of restoring just one of the back-up tapes, from which many of the documents already produced to plaintiffs came, was approximately $70,000. By seeking electronic information beyond the statute of limitations period, the Panasonic Defendants would be forced to bear the cost of restoring additional back-up tapes. Moreover, because the back-up tapes often contain duplicative information, there would be an additional cost in reviewing such duplicative data in advance of production.

Further, with respect to information concerning CRT-TVs manufactured in the United States, PNA does not have an enterprise-wide system for maintaining electronic documents from before March 2005. Obligating the Panasonic Defendants to collect documents from before the statute of limitations period would necessitate combing through the individual computers of each PNA employee involved with CRT-TVs, at least some of whom no longer work with the company, to locate any documents from this earlier timeframe. Additionally, as to sales data, PNA has used several different electronic order management systems over the years. Searching for sales data from the early 2000s and 1990s would require restoring a now-defunct system, which would be both expensive and time-consuming.

Finally, these burdens would only be magnified if discovery were extended worldwide. As discussed below, a substantial number of Panasonic affiliates have been involved in the CRT and CRT-TV industries. With respect to sales data alone, these companies (like their U.S. counterparts) employed different recording systems over the years. As a result, the further back in time discovery extends, the greater the logistical difficulty in collecting those documents. Indeed, even assessing the steps required for locating the files that pre-date the statute of limitations period has proven difficult.

*Second*, on the applicable geographic scope, Plaintiffs contend that discovery should be international in breadth without any geographic limitations. The Panasonic Defendants offered that discovery should extend to documents that relate to the United States, regardless of where they are situated. Plaintiffs dismissed this proposal, arguing that all documents around the world are relevant as "circumstantial evidence" even if the information they contain in no way relates to the United States. Plaintiffs did, however, request an explanation of the standards that the Panasonic Defendants would use to determine whether a given document relates to the United States under the Panasonic Defendants' proposal. Accordingly, the Panasonic Defendants propose the following standards: a document would properly fall within the scope of discovery in this matter, subject to Panasonic Defendants' stated objections, if it refers to (1) sales of CRTs[1] in the United States (including exports to the United States), (2) purchasers of CRTs in the United States, (3) specific models of CRTs sold in the United States, or (4) CRT business plans that refer to the United States market.

If discovery were not limited accordingly, Plaintiffs would be sending the Panasonic Defendants on a worldwide fishing expedition. With respect to CRTs, this geographically unlimited proposal would require the Panasonic Defendants to locate, collect, review and produce documents from all around the world regardless of any relevance to the United States, including from the European Union, Indonesia, Japan, Malaysia, and Thailand. As to CRT-TVs, affiliates of the Panasonic Defendants had CRT-TV manufacturing facilities in at least thirteen different countries around the globe outside of North America, including Australia, Brazil, China, India, Indonesia, Japan, Malaysia, the Philippines, Taiwan, Thailand, the United Kingdom, and Vietnam.

Indeed, Plaintiffs' attempt to extend discovery beyond the scope of documents relating to the United States flies in the face of the realities of the CRT industry. During the period of 1995-2007, non-captive sales to the United States of color picture tubes (CPTs), the type of CRTs used in CRT-TVs, represented only 12% of Panasonic's worldwide non-captive sales of CPTs. Furthermore, CRT sales were predominantly regional in nature. CRT manufacturers typically supplied customers located in their region, in particular with respect to

---

[1] The issue of whether discovery should also encompass finished products containing CRTs is discussed below.

medium and large sized tubes, because of the heavy, fragile nature of CRTs, which makes long-distance transport costly, as well as other factors such as currency differences, tariffs, and trade protection laws. Because of the geographic variation in demand for particular CRT sizes, the individual CRT factories servicing those regions would generally limit their production to those sizes demanded in the region (*i.e.*, Panasonic's CRT factories in North America/Europe produced primarily larger size tubes whereas its Southeast Asian factories focused primarily on smaller sizes). Plaintiffs ignore these fundamental facts when they demand discovery that is global in scope.

Plaintiffs similarly ignore the immense logistical burdens of their proposal for a global fishing expedition. The Panasonic corporate family is large and geographically disparate, and does not maintain a centralized global IT system. Panasonic has approximately 741 affiliates around the world. Many, if not all, of these affiliates used different IT systems according to the regional needs of each company and to comport with local requirements and regulations. Accordingly, retrieving electronic documents from each affiliate around the world would involve an enormous burden.

*Third*, as to the relevant products, Plaintiffs are seeking discovery on both CRTs and finished products containing CRTs, such as CRT-TVs and computer monitors. Indeed, Plaintiffs made no attempt in their discovery requests to differentiate between information relating to CRTs and information relating to products containing CRTs. Instead, each discovery request – regardless of the specific topic on which information is requested – calls for the information for both CRTs and products containing CRTs. The Panasonic Defendants stated at the meet and confer that they would produce documents relating to CRT-TVs sold to the United States irrespective of the country of manufacture, including production, price and cost information. As already specified in the Panasonic Defendants' objections and responses to Plaintiffs' discovery requests, such documents would provide Plaintiffs with all they need to pursue their CRT conspiracy claims with respect to the alleged impact on the price of finished products containing CRTs.[2] Plaintiffs agreed to identify the specific discovery requests for which they believe they actually need information relating to products containing CRTs. However, to date, Plaintiffs have not done so.

---

[2] In this connection, it bears noting that while Plaintiffs seek discovery relating to products containing CRTs, during the meet and confer, Plaintiffs insisted that they themselves were under no obligation to respond to certain of the defendants' interrogatories as to the factual basis for Plaintiffs' allegations of a conspiracy directed at such products. Plaintiffs contended that these discovery requests constituted "contention interrogatories." At Plaintiffs' request, these defendants provided a letter under separate cover, dated June 24, 2010, explaining why the case law cited by Plaintiffs does not justify Plaintiffs' failure to answer the interrogatories immediately and in full.

We look forward to working with you to resolve these issues. Please let us know your thoughts on the above.

Very truly yours,

David L. Yohai

cc: Jeffrey L. Kessler, Esq.

WEIL, GOTSHAL & MANGES LLP
767 FIFTH AVENUE
NEW YORK, NY 10153
(212) 310-8000
FAX: (212) 310-8007

AUSTIN
BOSTON
BUDAPEST
DALLAS
FRANKFURT
HONG KONG
HOUSTON
LONDON
MIAMI
MUNICH
PARIS
PRAGUE
PROVIDENCE
SHANGHAI
SILICON VALLEY
WARSAW
WASHINGTON, D.C.

DAVID L. YOHAI
DIRECT LINE (212) 310-8275
E-MAIL: david.yohai@weil.com

July 15, 2010

**BY EMAIL**

Guido Saveri, Esq.
Saveri & Saveri, Inc.
706 Sansome Street
San Francisco, CA 94111

Mario N. Alioto, Esq.
Trump, Alioto, Trump & Prescott, LLP
2280 Union Street
San Francisco, CA 94123

Re: *In re Cathode Ray Tube (CRT) Litigation*, No. 07-5944 SC, MDL No. 1917

Dear Guido and Mario:

We write in response to your letter of July 7, 2010, on the subject of our meet and confer discussion held June 9, 2010. For present purposes, we will not address every point in your seventeen-page letter, but we will respond to the topics that are most critical in reaching a compromise on the outstanding discovery issues, and we will correct a number of significant misstatements in your letter.

As discussed during the meet and confer, plaintiffs have made a significant number of broad requests for (i) information and documents dating back to at least 1995 (and in some cases to 1991), (ii) information relating to overseas purchases, sales, and production, as well as foreign conduct regardless of whether it is in any way connected to the U.S., and (iii) information relating to CRTs *and* finished products containing CRTs regardless of its potential relevance to plaintiffs' claim of an alleged conspiracy directed at CRTs. Plaintiffs continue to claim they are entitled to engage in this global fishing expedition on the basis that the information being requested might be of tangential relevance to plaintiffs' claims or could possibly lead to circumstantial evidence of plaintiffs' allegations. Despite plaintiffs' theory, this

is *not* the standard for conducting discovery. Instead, all discovery is subject to the limitations set forth in Federal Rule 26 and, in particular, wide-ranging discovery is *not* permitted where, as here, its potential relevance is outweighed by undue burden and expense. *See, e.g., Philadelphia Indem. Ins. Co. v. Westchester Surplus Lines Ins. Co.*, 2010 WL 1032586, at *1 (N.D. Cal. 2010) (denying request for discovery of "some potential relevance" because burden "would be quite disproportionate."); *Himoinsa Power Sys., Inc. v. Power Link Machine Co., Ltd.*, 2010 WL 2265160, at *2 (D. Kan. 2010) (denying requests by plaintiff to engage in "fishing expedition" and noting that "all discovery is subject to the limitations in 26(b)(2)(C) (e.g., cumulative, more convenient source, burden, expense, needs of the case).").

In this connection, plaintiffs' July 7 letter requests that the Panasonic defendants identify the specific burdens relating to the collection, review, and production of global information regarding CRTs and CRT products without time limitation. As you know, we just did that in our letter dated July 7, 2010, where we provided a detailed explanation of the immense burdens associated with plaintiffs' demands for worldwide discovery relating to CRTs and CRT products dating back to the early 1990s.

1. Time Period

Specifically, with respect to the relevant time period for discovery, we previously explained that it would be unreasonable and unduly burdensome for the Panasonic defendants to search the more than 650 boxes of documents warehoused in the U.S. which contain information that is up to twenty-years-old and likely of little or no relevance to plaintiffs' claims. Nor would it be reasonable to incur the excessive costs of restoring back-up tapes and defunct electronic systems to search for information dating back to the early 1990s.

These burdens are not mitigated by plaintiffs' proposal to (i) identify a group of custodians who purportedly participated in or otherwise knew about alleged competitor meetings and then (ii) search the files of those custodians with no time restriction at all. Notwithstanding that this loaded proposal inappropriately assumes a number of unproven propositions, even if such custodians could be identified, this proposal does not lessen the burdens and expenses associated with searching twenty-year-old documents warehoused all around the world, restoring back-up tapes, or identifying and reviving defunct electronic data systems. Plaintiffs' proposal also ignores the logistical burden of locating transactional data in the significant number of Panasonic affiliates that have been involved in the CRT and CRT-TV industries over the years, many of which have employed different recording and data systems during various time periods, and none of which may categorize transactional data by custodian.

These burdens, however, *would* be mitigated by agreeing to an initial cut-off date for discovery, as we suggested during the meet and confer and in our July 7 letter. Indeed, contrary to the statements made in your letter that the Panasonic defendants "refuse to produce

information and documents prior to the state of limitations period" without a court order, we made it clear on June 9 that, in an effort to reach a compromise on the timing issue without court intervention, the Panasonic defendants would be willing to conduct discovery going back to 2002 or some other reasonable date prior to the start of the limitations period.

Despite plaintiffs' initial agreement to compromising once the Panasonic defendants had articulated the burdens associated with the time period (which we have done), plaintiffs now appear unwilling negotiate any cut-off date for discovery. This is unreasonable, particularly in light of plaintiffs' continued refusal to provide any evidence whatsoever of plaintiffs' alleged reliance or supposed due diligence to justify plaintiffs' position that discovery should go beyond the limitations period based on a theory of fraudulent concealment. For example, plaintiffs repeatedly claim that the "Chunghwa meeting notes" reveal "many acts of fraudulent concealment" and include "notes of discussions of efforts to maintain the secrecy of the conspiracy," but, for reasons unknown to us, plaintiffs refuse to identify a single document fitting this description as to any defendant, let alone the Panasonic defendants.[1]

Plaintiffs also misstate the Panasonic defendants' proposal to defer discovery relating to the early time period until plaintiffs can make a threshold showing of fraudulent concealment. Contrary to what you state in your letter, defendants did not suggest that plaintiffs submit to a summary judgment proceeding on the statute of limitations while foregoing all discovery on the alleged fraudulent concealment. Instead, the Panasonic defendants requested that plaintiffs make some threshold factual showing to support their allegations: (i) that plaintiffs relied on misrepresentations made by the Panasonic defendants to conceal the conspiracy and (ii) that plaintiffs conducted the requisite due diligence to discover their claims. In exchange, the Panasonic defendants would produce information that should have given plaintiffs early notice of their claims. The Panasonic defendants agreed to meet and confer further regarding the particulars of this proposal, *i.e.*, the type of threshold showing that would satisfy all parties and that could lead to a reasonable, early determination as to whether discovery dating back to the early 1990s is legitimately necessary.

Moreover, contrary to plaintiffs' suggestion, there is in fact precedent for the Court to order this type of process which would defer discovery on the early time periods until a threshold showing can be made by plaintiffs relating to fraudulent concealment. First, trial courts have "broad discretion" in managing discovery for the purpose of "sifting the issues in order that the suit will go to trial only on questions involving honest disputes of fact or law." *Delta Sys., Inc. v. TRW*, 1989 WL 41706, at *6 (9th Cir. 1989). Second, courts have exercised such discretion to place initial limits on discovery pending plaintiffs' ability to make some evidentiary showing that establishes a reasonable basis to allow further, more wide-ranging

---

[1] As we have previously made clear, fraudulent concealment must be established as to each defendant individually. *See, e.g., Barker v. Am. Mobil Power Corp.*, 64 F.3d 1397, 1402 (9th Cir. 1995).

discovery to proceed. *See, e.g., Rebel Oil Co., Inc. v. Atlantic Richfield Co.*, 133 F.R.D. 41, 45 (D. Nev. 1990) (granting responding party's motion for protective order and deferring expansive discovery pending propounding party's threshold showing).

Finally, plaintiffs repeatedly insist that, because the Court has sustained the complaints and denied defendants' motions to dismiss the allegations of fraudulent concealment, plaintiffs will not agree to any time restriction on discovery. Obviously, this is not the expectation of the Court given Judge Legge's order that the parties meet and confer in an effort to reach a compromise on the timing issue (Report, at 4) and Judge Conti's express concern about the broad scope of the complaint in terms of time period and his request that this parties "streamline and efficiently manage" discovery (Order Approving and Adopting Special Master's Report, Recommendations and Tentative Rulings re Defendants' Motions to Dismiss, at 23 n.2 [Dkt. No. 665], March 30, 2010).

2. Geographical Scope

With respect to the issue of the geographical scope of discovery, we have already addressed this subject our July 7 letter, in which we proposed specific guidelines for determining whether documents relate to the U.S. As set forth above, plaintiffs are not entitled to discovery from over thirteen countries around the world on the basis that such discovery could possibly reveal "circumstantial evidence" of their claims, without taking into account the immense logistical burdens we have identified that would make unlimited global discovery inordinately time consuming and costly. Again, plaintiffs' proposal that the Panasonic defendants limit searches to custodians who had "price-setting authority for the products identified in the CAC" does not mitigate the burden of conducting a worldwide investigation to determine who, for example, had pricing authority for CRT-TVs manufactured in Australia, Brazil, China, India, Indonesia, Japan, Malaysia, the Philippines, Taiwan, Thailand, the United Kingdom, and Vietnam, but which were not sold in the U.S. Further, plaintiffs' proposal does nothing to reduce the burdens of searching for, processing, reviewing, and producing global sales, capacity, cost, and production data, which could be housed on various servers around the world (some of which are now defunct), and which may not organized by custodian.

3. Relevant Products

With respect to the issue of relevant products, the statement in your letter that the Panasonic defendants are objecting to producing any information related to CRT products is completely inaccurate. As set forth in our written discovery and as we explained during the meet and confer and again in our July 7 letter, the Panasonic defendants *are* willing to produce (and have already produced) information regarding CRT-TVs sold in the United States irrespective of the country of manufacture, including production, price and cost information. Such documents would provide plaintiffs the information requested in their July 7 letter relating to the alleged

pass-on or impact of an alleged CRT conspiracy on the price of finished products. Notably, during the meet and confer, plaintiffs agreed to consider this compromise and to identify the specific requests for which plaintiffs believe they actually need information relating to products containing CRTs, but plaintiffs have failed to do so. Moreover, until plaintiffs will agree to answer the interrogatories and document requests served on them over three months ago on March 8, 2010, requesting, among other things, the factual basis for plaintiffs' allegations of a conspiracy directed at finished CRT products, it makes no sense to attempt to determine the information that the Panasonic defendants will have to produce as regards CRT-TVs.

4. Other Issues

We now turn to the new issues you raise for the first time in your July 7 letter regarding Direct Purchaser Plaintiffs' Second Set of Document Requests, Direct Purchaser Plaintiffs First Set of Interrogatories, and Indirect Purchaser Plaintiffs' Second Set of Document Requests (collectively, the "Discovery Requests"). We are willing to discuss these issues further during a scheduled meet and confer but, for now, our initial responses are as follows.

Interrogatory No. 5: The Panasonic defendants' response to Interrogatory No. 5 is not only reasonable, but is also expressly authorized by the Federal Rules. *See* Fed. R. Civ. P. 33(d). Indeed, plaintiffs recognize this when they themselves have purported to answer several interrogatories by referring defendants to "the documents produced to the Department of Justice in connection with the investigation of the Cathode Ray Tube industry, which were served on all parties by certain Defendants March 8, 2010 . . . pursuant to Rule 33(d)," without even specifying which grand jury production (among many) are being referenced, let alone identifying any relevant documents by bates number. *See, e.g.*, Indirect Purchaser Plaintiffs' Objections and Responses to Toshiba America Information Systems, Inc.'s First Set of Requests for Production of Documents, at 11.

Document Request No. 6: Plaintiffs request that the Panasonic defendants "make an initial production" of software instructions and manuals necessary to operate transactional data. We suggest that the more efficient route is for plaintiffs to review the transactional data the Panasonic defendants have produced and, to the extent plaintiffs are unable to access or operate the data, the Panasonic defendants will endeavor to produce the relevant manuals, if any.

Document Request No. 7: Plaintiffs request that, in addition to "pricing policies," the Panasonic defendants produce documents relating to the methods, formulas, or factors to be used in determining prices for CRTs and finished CRT products. Subject to the specific and general objections set forth in our written objections and responses to the Discovery Requests (including our objections with respect to time period and geographical scope) (the "Written Objections"), the Panasonic defendants agree to produce these types of documents to the extent they exist and are within the Panasonic defendants' possession.

Document Request No. 8: Plaintiffs request that, in addition to publications showing the Panasonic defendants' prices for CRTs and CRT products, the Panasonic defendants also produce publications showing the prices charged by other CRT or CRT product manufacturers. Subject to the Written Objections, the Panasonic defendants agree to produce these types of documents to the extent they exist and are within the Panasonic defendants' possession.

Document Request 10: Plaintiffs request documents relating to "proposed changes in capacity," slowdowns, and other information regarding capacity for the production of CRTs and CRT products regardless of their connection to the U.S. As stated in the written discovery responses and subject to the Written Objections, the Panasonic defendants will produce the following types of documents for each of Panasonic's CRT production facilities in the United States: documents regarding the capacity, rated capacity, production, capacity utilization, actual changes in capacity, any reasons for such changes, types of CRTs produced, and the openings and closings of plants or production lines.

Document Request No. 11: Plaintiffs request that in addition to producing documents relating to the industry standards for producing CRTs, the Panasonic defendants also produce documents sufficient to describe the processes for producing CRT and CRT products. Although this request is vague, subject to the Written Objections, the Panasonic defendants agree to produce these types of documents relating to CRTs to the extent they exist and are within the Panasonic defendants' possession.

Document Request No. 14: Plaintiffs request that, in addition to documents sufficient to show "intercompany transfers," the Panasonic Defendants also produce documents sufficient to show sales of CRTs or CRT Products between the Panasonic defendants and other producers of CRTs or CRT products. Subject to the Written Objections, the Panasonic defendants agree to produce these types of documents to the extent they exist and are within the Panasonic defendants' possession.

Document Request No. 15: Plaintiffs request that the Panasonic defendants produce documents sufficient to show the relationship between the pricing of CRTs and CRT products. Based on our reading of this request, it is encompassed by and duplicative of Document Requests Nos. 8 and 12.

Document Request No. 17: Plaintiffs ask that, in addition to business plans, the Panasonic defendants produce planning analyses, budgets, forecasts and other sales or profit productions. Subject to the Written Objections, the Panasonic defendants agree to produce these types of documents relating to CRTs to the extent they exist and are within the Panasonic defendants' possession.

Document Request No. 19, 20, 23, Indirect Purchaser Requests 43, 44, 46: Plaintiffs request that, in addition to formal publications and formal studies, the Panasonic defendants produce a significant number of additional documents relating to market share information, comparison of CRTs and CRT products across manufacturers, conditions of supply and demand, CRTs products resold by third parties, pass-though, and retail prices of CRTs and CRT products. Although the Panasonic defendants are willing to meet and confer regarding these various requests, they are overly burdensome and it is too difficult logistically to search for this type of wide-ranging information, especially given the fact that it is largely duplicative of information the Panasonic defendants will endeavor to produce in the form of formal studies and published resources.

Document Request No. 24: Plaintiffs request that, in addition to the joint venture and closing documents, the Panasonic defendants produce all documents relating to the joint venture. Again, it is our position that this request is too burdensome in light of the fact that MTPD is now a defunct entity and it is too difficult logistically to search for this information, especially given the fact that it is largely duplicative of information the Panasonic defendants will endeavor to produce in the form of the joint venture agreement and closing documents.

Document Request No. 28: Plaintiffs request that the Panasonic defendants propose a list of custodians whose files will be searched for diaries, calendars, travel records and related information. Our concerns regarding plaintiffs' proposals regarding the identities of custodians are set forth above.

Document Request No. 29: Plaintiffs request that the Panasonic defendants produce all documents concerning participation by U.S.-based employees in foreign trade associations concerning CRT or CRT products. The Panasonic defendants' objections to this proposal as regards "CRT products," have already been made clear, *i.e.*, that such information is not reasonably calculated to lead to the discovery of admissible evidence relating to a conspiracy directed at CRTs. With respect to CRTs and subject to the Written Objections, to the extent any trade association meetings had some connection to the U.S. pursuant to the guidelines set forth in our July 7 letter, the Panasonic defendants agree to produce these types of documents to the extent they exist and are within the Panasonic defendants' possession.

Document Request No. 32: Plaintiffs request that, in addition to announcements and press releases issued by the Panasonic defendants, the Panasonic defendants also produce press releases issued by competitors relating to CRT or CRT Products. Subject to the Written Objections, the Panasonic defendants agree to produce these types of documents relating to CRTs to the extent they exist and are within the Panasonic defendants' possession.

Document Request No. 37: Due to attorney-client privilege and work product protections, confidentiality restrictions, and the Court's Order to Extend Limited Discovery Stay,

dated January 30, 2010., the Panasonic Defendants will not produce documents relating to any internal or external investigation with respect to CRTs or CRT Products.

Document Request No. 38: Plaintiffs request that the Panasonic defendants produce all documents relating to the termination, retirement, discipline, discharge or suspension of any employee with responsibility related to CRTs or CRT products since 1995. The number of people to whom this request could apply is virtually unlimited, considering that Panasonic has 741 affiliates around the world, and specifically, employees in the CRT and CRT products industries have been assigned to locations in over 13 countries at various times. To produce the employment histories of all such persons is unreasonable, especially considering that this information is not reasonably calculated to lead to the discovery of admissible evidence.

Indirect Purchaser Request No. 42: For this request, the Panasonic defendants have agreed to produce documents "relating to the sale price of CRT Products sold in the United States and the cost of CRTs and/or any other component of CRT Products sold in the U.S." The additional documents being requested now, *i.e.*, that describe the economic relationship between the sale price of CRT Products and the cost of CRTs," are encompassed by and duplicative of the above information that the Panasonic defendants have already agreed to produce.

Indirect Purchaser Request No. 45: As stated in the Written Objections, the Panasonic defendants are willing to schedule a meet and confer regarding this request.

Finally, we want to correct plaintiffs' statement that no documents were produced by the Panasonic defendants pursuant to Judge Conti's June 3, 2010 Order. In addition to the documents produced pursuant to the grand jury subpoena, on June 18, 2010, the Panasonic defendants produced to both direct and indirect plaintiffs over 16,000 pages of electronic documents via CD.

We look forward to a further meet and confer after you have completed the items you said you would undertake to do in terms of specifying the requests for which plaintiffs believe they actually need information relating to finished CRT products and responding to the information we have provided regarding our production burdens and the review guidelines for identifying documents relating to the U.S.

Very truly yours,

David L. Yohai / B.S.Y.

David L. Yohai

cc: Jeffrey L. Kessler, Esq.

Dewey & LeBoeuf LLP
1301 Avenue of the Americas
New York, NY 10019-6092

tel +1 212 259 8050
fax +1 212 259 7013
jkessler@dl.com

DEWEY & LEBOEUF

June 24, 2010

**BY EMAIL**

Guido Saveri, Esq.
Saveri & Saveri, Inc.
706 Sansome Street
San Francisco, CA 94111

Mario N. Alioto, Esq.
Trump, Alioto, Trump & Prescott LLP
2230 Union Street
San Francisco, CA 94123

Re: *In Re Cathode Ray Tube (CRT) Antitrust Litigation*

Dear Counsel:

As a follow-up to our June 9 meet and confer, we are writing regarding the interrogatories served by defendants dated March 8, 2010, requesting, among other things, the factual basis for plaintiffs' allegations of a conspiracy directed at finished "CRT Products" (the "Interrogatories").[1] Plaintiffs responded to the Interrogatories on May 7, 2010, but the responses fail to disclose any facts or documents supporting the allegations in the complaints of a finished "CRT Products" conspiracy. During our meet and confer, plaintiffs claimed that In re Convergent Technologies Securities Litigation, 108 F.R.D. 328 (N.D. Cal. 1985) ("In re Convergent") and In re eBay Seller Antitrust Litigation, 2008 WL 5212170 (N.D. Cal. Dec. 11, 2008) ("In re eBay"), provide authority for plaintiffs to refuse to answer the Interrogatories on the ground that they are "contention interrogatories" and therefore premature. As discussed, we have reviewed the authority

[1] As previously discussed, we have been designated to meet and confer on behalf of the defendants who served the following requests on direct purchaser plaintiffs: LGE's First Set of Requests for Production, LGE's First Set of Interrogatories, First Set of Interrogatories of Defendant MT Picture Display Co., Ltd., First Set of Document Requests of Defendant MT Picture Display Co., Ltd., Defendant Hitachi Displays, Ltd.'s First Set of Document Requests, and Defendant Hitachi Displays, Ltd.'s First Set of Interrogatories. We have also been designated to meet and confer on behalf of the defendants who served the following requests on indirect purchaser plaintiffs: Samsung SDI America, Inc.'s First Set of Interrogatories, Samsung SDI America, Inc.'s First Set of Requests for Production of Documents, First Set of Interrogatories of Samsung Electronics America, Inc., First Set of Document Requests of Samsung Electronics America, Inc., Hitachi Displays, Ltd.'s First Set of Document Requests, and Hitachi Displays, Ltd.'s First Set of Requests for Interrogatories.

cited by plaintiffs which, in fact, does not justify plaintiffs' failure to answer the Interrogatories immediately and in full.

To begin with, the Interrogatories merely seek the facts currently in plaintiffs' possession that support specified allegations made in the complaints and thus, are not properly considered "contention interrogatories." See, e.g., Dot Com Entertainment Group, Inc. v. The Cyberbingo Corporation, 237 F.R.D. 43, 44 (W.D.N.Y. 2006) (interrogatories seeking "all facts upon which defendants base their allegation that Plaintiff's patent is invalid" are not contention interrogatories); Boyd v. Tornier, Inc., 2008 WL 2691727, at *1 (S.D. Ill. June 30, 2008) (interrogatories that "merely ask for the facts which form the basis of specified allegations made in the complaint" are not contention interrogatories). Significantly, unlike contention interrogatories, the Interrogatories do not ask plaintiffs to explain "why or how" they may establish their claims or to "advance legal argument in support of their" claims, but simply require plaintiffs to "disclose the evidentiary basis" for enumerated allegations made in the complaints. Dot Com, 237 F.R.D. at 44-45.

Moreover, regardless of whether they are deemed "contention interrogatories," there is no basis for plaintiffs' refusal to answer the Interrogatories now. Indeed, "[c]ourts generally approve of appropriately timed contention interrogatories as they tend to narrow issues, avoid wasteful preparation, and, it is hoped, expedite a resolution of the litigation." See Roberts v. Heim, 130 F.R.D. 424, 427 (N.D. Cal. 1989)).[2] More specifically, with respect to timing, courts have held that early contention interrogatories are proper where, as here, they seek the factual basis for specific allegations made in complaints and thus, may expose a basis for a Rule 11 motion.[3] For example:

- "[The interrogatories] are straightforward 'factual' contention interrogatories which plaintiff should also be able to answer now. Requiring the answer to these 'factual' contention interrogatories is 'consistent with Rule 11 of the Federal Rules of Civil Procedure, [which requires that] plaintiffs must have some factual basis for the allegations in their complaint.' Accordingly, plaintiffs 'must answer [the] interrogatories with information as they now possess. . . .'" Cable & Computer Tech., 175 F.R.D. at 651-52 (also noting that if the concern in answering a contention interrogatory is that the answer may limit the party's proof at trial, "[such a] concern

[2] Further, the burden ought to be placed on plaintiffs – the party resisting discovery – rather than shifting the burden to the proponent of the interrogatories. See, e.g., Cable & Computer Tech., Inc. v. Lockheed Saunders, Inc., 175 F.R.D. 646, 652 (C.D. Cal. 1997) ("this Court prefers to consider contention interrogatories in the same manner it would consider any interrogatory, placing the burden on the party opposing discovery rather than shifting the burden to the proponent of the contention interrogatories to justify their propoundment.").

[3] See Refac Int'l, Ltd. V. Hitachi, Ltd. et al., 921 F.2d 1247, 1253 (Fed. Cir. 1990) (noting that plaintiff's inability to respond fully to discovery requests raised at least the suspicion that the action was originally filed in violation of Rule 11).

is misplaced in that, among other things, the trial court may permit the withdrawal or amendment of an answer to an interrogatory.") (citation omitted).

- "Requiring a party to answer contention interrogatories is 'consistent with Rule 11 of the Federal Rules of Civil Procedure, [which requires that] plaintiffs must have some factual basis for the allegations in their complaint. . . .'" Plaintiffs must "have a basis for their allegations in the complaint, and contention interrogatories seek information about that basis; thus, an objection that '[d]iscovery has only just begun' makes no sense at all." United States ex. rel. O'Connell v. Chapman University, 245 F.R.D. 646, 649-650 (C.D. Cal. 2007) (granting motion to compel with respect to early propounded contention interrogatories) (citation omitted).[4]

- "Plaintiff should provide as much information as possible regarding his claims without delay and as early as required. Defendants are 'entitled to know the factual basis of plaintiff's allegations.' Plaintiff is not entitled to withhold discovery information until he has obtained to his own satisfaction all discovery from Defendants. Plaintiff must be aware of some of the specific facts upon which the allegations in his Complaint are based, otherwise he would not have made the allegations in the first place. For this reason, the Court finds that the contention interrogatories here are not premature and Plaintiff shall be required to fully answer them." Johnson v. Kraft Foods North America, Inc., 236 F.R.D. 535, 544-545 (D. Kan. 2006).

The authority cited by plaintiffs does not hold otherwise. See In re Convergent, 108 F.R.D. at 337 (noting that early answers to contention interrogatories might expose frivolous or unsupportable claims); In re eBay, 2008 WL 5212170, at *1 (noting that contention interrogatories may be appropriate if they contribute meaningfully to, among other things, "exposing a substantial basis for a motion under Rule 11 or Rule 56."). In fact, contrary to plaintiffs' suggestion, the court in In re Convergent, did not hold that early "contention interrogatories" are per se objectionable. 108 F.R.D. at 333 citing Fed. R. Civ. P. 33 (interrogatories are "not necessarily objectionable merely because an answer . . . involves an opinion or contention that relates to fact or the application of law to fact.") (emphasis added). Instead, the court held that the propriety of contention interrogatories ought to be determined on a case-by-case basis, and early contention interrogatories are appropriate where, as here, the questions are "well-tailored" and the answers will "contribute meaningfully to clarifying the issues in the case, narrowing the scope of the dispute, or setting up early settlement discussions, or that such answers are likely to expose a substantial basis for a motion under Rule 11 or Rule 56." Id. at 338.[5] See also In re eBay, 2008 WL 5212170 at *1 (the rules regarding

---

[4] See also Continental Illinois National Bank & Trust Company of Chicago v. Caton, 136 F.R.D. 682, 689 (D. Kan. 1991) ("[I]nterrogatories, or other discovery thrusts, directed at complaints, answers, replies or other basic pleadings . . . to discover the detail factual basis for a particular allegation or alleged cause of action, or to test whether there is any factual basis at all for a particular allegation or alleged cause of action, are entirely proper and appropriate. The court encourages such discovery. Hopefully, the result of such discovery will impel parties and their counsel toward pleadings, motions and other papers that are 'well grounded in fact and warranted by existing law, etc.', as required by Rule 11.").

[5] Moreover, in Cable & Computer Tech., the District Court for the Central District of California noted that, since In re Convergent, the Northern District has "modified" its general position on contention interrogatories, "noting that contention interrogatories may in certain cases be the most reliable and cost-

contention interrogatories are "non-rigid" and should be viewed on a case-by-case basis). Not surprisingly then, the court in In re Convergent ordered plaintiffs to "promptly disclose to defendants all documents in plaintiffs' control that support or contradict any of the controverted allegations" in the complaint, something which plaintiffs here have refused. 108 F.R.D. at 341.

As previously explained during our meet and confer, the Interrogatories are well-tailored and request the factual basis only for specific allegations made in the complaints. See e.g., Lucero v. Valdez, 240 F.R.D. 591, 594-595 (D.N.M. 2007) (holding that well-tailored contention interrogatories were not premature: "[a]lthough these interrogatories track many of the allegations in the Amended Complaint, they specifically target new claims made in the Amended Complaint and do not seek 'each and every fact' in support of those claims."). Moreover, plaintiffs' responses could significantly narrow the scope of the dispute, clarify the issues in controversy, or expose plaintiffs' good faith basis, or lack thereof, for alleging in the complaints that there was a supposed conspiracy directed at finished "CRT Products." Thus, in light of the case law cited above, we would request that plaintiffs reconsider their objections to answering the Interrogatories. If plaintiffs will not provide proper answers, we will have no choice but to pursue this matter before Judge Legge in our next status report and request that he set a letter briefing schedule for this issue.

Sincerely,

Jeffrey L. Kessler

---

effective discovery device, which would be less burdensome than depositions at which contention questions are propounded." Cable & Computer Tech., 175 F.R.D. at 652 citing McCormick-Morgan, Inc. v. Teledyne Industries, Inc., 134 F.R.D. 275, 287 (N.D. Cal. 1991) (holding that well-framed contention interrogatories rather than depositions are the most appropriate vehicle for establishing alleged patent infringers' contentions).