SHEPPARD MULLIN RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
GARY L. HALLING, Cal. Bar No. 66087
JAMES L. McGINNIS, Cal. Bar No. 95788
MICHAEL W. SCARBOROUGH, Cal. Bar No. 203524
Four Embarcadero Center, 17th Floor
San Francisco, California  94111-4106
Telephone:     415-434-9100
Facsimile:     415-434-3947
E-mail:        ghalling@sheppardmullin.com
               jmcginnis@sheppardmullin.com
               mscarborough@sheppardmullin.com

Attorneys for Defendants
SAMSUNG SDI AMERICA, INC.,
SAMSUNG SDI CO., LTD.,
SAMSUNG SDI (MALAYSIA) SDN. BHD.,
SAMSUNG SDI MEXICO S.A. DE C.V.,
SAMSUNG SDI BRASIL LTDA.,
SHENZHEN SAMSUNG SDI CO., LTD. and
TIANJIN SAMSUNG SDI CO., LTD.

**[Additional Moving Defendants and Counsel Listed on Signature Pages]**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION<br><br>This Document Relates to:<br><br>ALL INDIRECT PURCHASER ACTIONS | Case No. 3:07-cv-05944 SC<br><br>MDL No. 1917<br><br>**DEFENDANTS' JOINT REPLY IN SUPPORT OF MOTION TO DISMISS INDIRECT PURCHASER PLAINTIFFS' SECOND CONSOLIDATED AMENDED COMPLAINT**<br><br>Date:     August 24, 2010<br>Time:     9:00 a.m.<br>Place:    JAMS<br>          Two Embarcadero Center<br>          Suite 1500<br>          San Francisco, CA 94111<br>Before:   Hon. Charles A. Legge (Ret.)<br>          Special Master |

## TABLE OF CONTENTS

Page

I.     ARGUMENT ........................................................................................................ 1

    A.     Plaintiffs' New Arkansas And Montana Claims Should Be Dismissed With
        Prejudice. ............................................................................................................ 1

        1.     Arkansas' Consumer Protection Statute Does Not Apply to Price-
                Fixing. ............................................................................................... 1

        2.     Plaintiffs, as Indirect Purchasers, Lack Standing under Montana
                Antitrust Law. ................................................................................... 2

    B.     Plaintiffs' Claims Under The Laws Of Illinois, Maine And Montana Should
        Be Dismissed Immediately For Lack of Standing......................................... 4

    C.     The Majority Of Plaintiffs' Unjust Enrichment Claims Should Be Dismissed
        Without Leave To Amend. ............................................................................. 9

        1.     Plaintiffs Cannot Use Unjust Enrichment as a "Back Door" to
                Recover for Claims Barred Under the Substantive Antitrust Laws of
                Arkansas, Massachusetts and Montana. ......................................... 9

        2.     Plaintiffs Cannot Maintain Unjust Enrichment Claims in States with
                Statutory Schemes that Preclude Equitable Restitution Remedies. ........... 10

            a.     Hawaii ................................................................................. 11

            b.     Minnesota ........................................................................... 12

            c.     Mississippi.......................................................................... 12

            d.     Nebraska.............................................................................. 13

            e.     Nevada................................................................................. 13

            f.     New York ............................................................................ 14

            g.     North Carolina .................................................................... 14

            h.     Tennessee ........................................................................... 14

            i.     Vermont............................................................................... 15

            j.     West Virginia ...................................................................... 15

            k.     Wisconsin ............................................................................ 16

W02-WEST:FMI\402797579.7                           -i-
Case No. 3:07-cv-05944 SC         DEFENDANTS' JOINT REPLY I/S/O MOTION TO DISMISS INDIRECT
MDL No. 1917                     PURCHASER PLAINTIFFS' SECOND CONSOL. AMD. COMPLAINT

D.   Plaintiffs' Claim Under The Massachusetts Consumer Protection Statute Remains Procedurally Deficient............................................................................ 16

E.   The Claims On Behalf Of New Classes Of Arkansas, D.C., Illinois, Maine And Montana Indirect Purchasers Do Not Relate Back To Prior Complaints......... 18

II.   CONCLUSION .................................................................................... 22

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

# TABLE OF AUTHORITIES

2

Page(s)

3

FEDERAL CASES

4

*Allen v. City of Beverly Hills*
   911 F.2d 367 (9th Cir. 1990) ...................................................................... 17

5

6

*In re Apple & AT&TM Antitrust Litig.*
   596 F.Supp.2d 1288 (N.D. Cal. 2008) .......................................................... 6

7

*Arneil v. Ramsey*
   550 F.2d 774 (2d Cir. 1977) ................................................................. 20, 21

8

9

*Besig v. Dolphin Boating & Swimming Club*
   683 F.2d 1271 (9th Cir. 1982) ..................................................................... 20

10

11

*BMW of N. Am., Inc. v. Gore*
   517 U.S. 559 (1996) ...................................................................................... 1

12

*In re Buspirone Patent & Antitrust Litig.*
   185 F.Supp.2d 363 (S.D.N.Y. 2002) ............................................................. 8

13

14

*California Pro-Life Council, Inc. v. Getman*
   328 F.3d 1088 (9th Cir. 2003) ..................................................................... 11

15

16

*Clark v. McDonald's Corp.*
   213 F.R.D. 198 (D. N.J. 2003) ...................................................................... 7

17

*Cliff v. Payco Gen. Am. Credits, Inc.*
   363 F.3d 1113 (11th Cir. 2004) ............................................................. 20, 21

18

19

*Crown, Cork & Seal Co., Inc. v. Parker*
   462 U.S. 345 (1983) .................................................................................... 20

20

21

*CRLA, Inc. v. Legal Services Corp.*
   917 F.2d 1171 (9th Cir. 1990) ....................................................................... 7

22

*DeLodder v. Aerotek, Inc.*
   No. CV 08-6044 CAS (AGRx), 2009 U.S. Dist. LEXIS 55633
   (C.D. Cal. June 15, 2009) ............................................................................ 21

23

24

*In re Ditropan XL Antitrust Litig.*
   529 F.Supp.2d 1098 (N.D. Cal. 2007) .......................................................... 6

25

*Easter v. Am. West*
   381 F.3d 948 (9th Cir. 2004) ..................................................................... 5, 6

26

27

*Foman v. Davis*
   371 U.S. 178 (1962) .................................................................................... 17

28

*Fordice Construction Co. v. Central States Dredging Co.*
    631 F.Supp. 1536 (S.D. Miss. 1986) ................................................................. 13

*Gibson v. Chrysler*
    261 F.3d 927 (9th Cir. 2001) ............................................................................ 19

*In re Glacier Bay*
    746 F. Supp. 1379 (D. Alaska 1990) ................................................................ 21

*In re Graphics Processing Units Antitrust Litig.*
    527 F.Supp.2d 1011 (N.D. Cal. 2007) ............................................................ 2, 6

*Group Health Plan, Inc. v. Philip Morris, Inc.*
    86 F.Supp.2d 912 (D. Minn. 2000) ................................................................. 12

*Healow v. Anesthesia Partners, Inc.*
    92 F.3d 1192, 1996 U.S. App. LEXIS 19949 (9th Cir. 1996) ........................... 3

*Illinois Brick Co. v. Illinois*
    431 U.S. 720 (1977) .......................................................................................... 2

*Jepson v. Ticor Title Ins. Co.*
    2007 U.S. Dist. LEXIS 53480 (W.D. Wash. May 1, 2007) ................................. 6

*Johnson v. Fankell*
    520 U.S. 911 (1997) .......................................................................................... 1

*In re Juniper Networks, Inc. Securities Litigation*
    542 F. Supp. 2d 1037 (N.D. Cal. 2008) ........................................................... 21

*Leachman v. Beech Aircraft Corp.*
    694 F.2d 1301 (D.C. Cir. 1982) ....................................................................... 22

*Lewis v. Casey*
    518 U.S. 343 (1996) .......................................................................................... 7

*Lindner Dividend Fund, Inc. v. Ernst & Young*
    880 F. Supp. 49 (D. Mass. 1995) ..................................................................... 21

*Meijer, Inc. v. Abbott Laboratories*
    2008 WL 4065839 (N.D. Cal. Aug. 27, 2008) .................................................... 5

*Nelsen v. King County*
    895 F.2d 1248 (9th Cir. 1990) ........................................................................... 5

*In re Network Assocs., Inc. II Sec. Litig.*
    No. 00-4849, 2003 U.S. Dist. LEXIS 14442 (N.D. Cal. 2003) .......................... 22

*In re New Motor Vehicles Canadian Export Antitrust Litig.*
    350 F.Supp.2d 160 (D. Me. 2004) ................................................................. 1, 2

*New York City Employees' Ret. Sys. v. Jobs*
    593 F.3d 1018 (9th Cir. 2010) .................................................................. 21

*Ortiz v. Fibreboard Corp.*
    527 U.S. 815 (1999) ........................................................................... 5, 6 7

*Payton v. County of Kane*
    308 F.3d 673 (7th Cir. 2002) ................................................................. 7, 8

*Perry v. Beneficial Fin. Co. of New York, Inc.*
    81 F.R.D. 490 (W.D.N.Y. 1979) ................................................................. 20

*Prado-Steiman v. Bush*
    221 F.3d 1266 (11th Cir. 2000) .................................................................. 5

*Rector v. City & County of Denver*
    348 F.3d 935 (10th Cir. 2003) .................................................................. 7

*In re Relafen Antitrust Litig.*
    221 F.R.D. 260 (D. Mass. 2004) ............................................................ 8, 15

*Rosenbaum v. Syntex Corp.*
    95 F.3d 922 (9th Cir. 1996) ........................................................ 18, 19, 20, 21, 22

*Sadler v. Rexair, Inc.*
    612 F. Supp. 491 (D. Mont. 1985) .............................................................. 3

*Schlesinger v. Reservists Comm. To Stop the War*
    418 U.S. 208 (1974) ............................................................................. 7

*In re Static Random Access Memory (SRAM) Antitrust Litig.*
    264 F.R.D. 603 (N.D. Cal. 2009) .............................................................. 4

*Sullivan v. DB Investments, Inc.*
    __ F.3d __, 2010 WL 2736947 (3d Cir. July 13, 2010) ............................... 9, 20, 22

*In re Terazosin Hydrochloride Antitrust Litig.*
    160 F.Supp.2d 1365 (S.D. Fla. 2001) .......................................................... 6

*In re TFT-LCD (Flat Panel) Antitrust Litig.*
    586 F.Supp.2d 1109 (N.D. Cal. 2008) ("*LCD I*") ..................................... 1, 2, 6

*In re TFT-LCD Antitrust Litig.*
    599 F.Supp.2d 1179 (N.D. Cal. 2009) ("*LCD II*") ...................................... 3, 10

*United States v. Texas*
    507 U.S. 529 (1993) ........................................................................... 11

*Vernon v. Qwest Communs. Int'l, Inc.*
    643 F.Supp.2d 1256 (W.D. Wash. 2009) ...................................................... 6

*Westways World Travel, Inc. v. AMR Corp.*
    218 F.R.D. 223 (C.D. Cal. 2003) ................................................................. 7

*Williams v. Boeing*
    517 F.3d 1120 (9th Cir. 2008) .................................................................. 5

*Young v. LePone*
    305 F.3d 1 (1st Cir. 2002) ................................................................. 21, 22

STATE CASES

*Arkansas*

*Arkansas Nat'l Life Ins. Co. v. Durbin*
    3 Ark. App. 170 (Ark. Ct. App. 1981) ...................................................... 1

*Baptist Health v. Murphy*
    226 S.W.3d 800, 810-811 (Ark. 2006)................................................. 1, 2

*Cole v. Rivers*
    861 S.W.2d 551 (Ark. 1993) ................................................................ 9, 10

*State v. R & A Inv. Co.*
    985 S.W.2d 299 (Ark. 1999) ..................................................................... 1

*Hawaii*

*Eastern Star Inc. v. Union Bldg. Materials Corp.*
    712 P.2d 1 148, 6 Haw. App. 125 (1985).............................................. 11

*Herring v. Gulick*
    5 Haw. 57 (1884)................................................................................. 11

*Massachusetts*

*Ciardi v. F. Hoffmann-La Roche, LTD.*
    436 Mass. 53 (2002)............................................................................. 9

*Entrialgo v. Twin City Dodge, Inc.*
    368 Mass. 812 (1975) .......................................................................... 17

*Haverty v. Comm'r of Corrs.*
    792 N.E.2d 989 (Mass. 2003) ............................................................. 10

*Kanamaru v. Holyoke Mut. Ins. Co.*
    72 Mass.App.Ct. 396 (Mass. App. Ct. 2008) ..................................... 17

*O'Connell v. Microsoft Corp.*
    2001-2 Trade Cas. (CCH) ¶ 73419,
    13 Mass. L. Rptr. 435 (Mass. Super. 2001). ......................................... 9

W02-WEST:FMI\402797579.7              -vi-

Case No. 3:07-cv-05944 SC          DEFENDANTS' JOINT REPLY I/S/O MOTION TO DISMISS INDIRECT
MDL No. 1917             PURCHASER PLAINTIFFS' SECOND CONSOL. AMD. COMPLAINT

*Osserman v. Jacobs*
   369 Mass. 200 (1975)................................................................................17, 18

*Slaney v. Westwood Auto, Inc.*
   366 Mass. 688 (1975)....................................................................................... 17

*Spring v. Geriatric Authy. of Holyoke*
   394 Mass. 274 (1985)....................................................................................... 17

*York v. Sullivan*
   369 Mass. 157 (1975)....................................................................................... 18

### Minnesota

*Abraham v. County of Hennepin*
   639 N.W.2d 342 (Minn. 2002).......................................................................... 12

*State ex rel. Humphrey v. Philip Morris, Inc.*
   551 N.W.2d 490, 496-498 (Minn. 1996).......................................................... 12

### Mississippi

*Joel v. Joel*
   No. 2009-CA-00474-SCT, 2010 Miss. LEXIS 330 (Miss. July 1, 2010)............... 12

*Owens Corning v. R.J. Reynolds Tobacco Co.*
   868 So.2d 331 (Miss. 2004)...........................................................................12-13

### Montana

*Nelson v. Wilson*
   264 P. 679 (Mont. 1928) .................................................................................. 10

*Olson v. Microsoft Corp.*
   2001 Mont. Dist. LEXIS 2710 (Mt. Super. Feb. 15, 2001)..................................... 4

### Nebraska

*Pilot Investment Group v. Hofarth*
   250 Neb. 475 (1996).......................................................................................... 13

*State ex rel. Wright v. Barney*
   276 N.W. 676 (Neb. 1937)................................................................................ 13

### Nevada

*Builders Ass'n of N. Nev. v. City of Reno*
   776 P.2d 1234 (Nev. 1989)............................................................................... 13

*Stockmeier v. Nevada D.O.C.*
   183 P.3d 133 (Nev. 2008)................................................................................. 13

W02-WEST:FMI\402797579.7

-vii-

Case No. 3:07-cv-05944 SC
MDL No. 1917

DEFENDANTS' JOINT REPLY I/S/O MOTION TO DISMISS INDIRECT
PURCHASER PLAINTIFFS' SECOND CONSOL. AMD. COMPLAINT

*New York*

*Cox v. Microsoft Corp.*
  8 A.D.3d 39 (N.Y. App. Div. 2004) ........................................................................ 14

*Samiento v. World Yacht Inc.*
  10 N.Y.3d 70 (2008) .............................................................................................. 14

*Sperry v. Crompton Corp.*
  26 A.D.3d 488 (N.Y. App. Div. 2006), *aff'd* 8 N.Y.3d 204 (N.Y. 2007) .............. 14

*State of New York v. Daicel Chem. Indus., Ltd.*
  42 A.D.3d 301 (N.Y. App. Div. 2007) ................................................................... 14

*Tennessee*

*Guy v. Mutual of Omaha Ins. Co.*
  79 S.W.3d 528 (Tenn. 2002) ................................................................................. 15

*Turner v. Harris*
  281 S.W.2d 661 (Tenn. 1955) .......................................................................... 14, 15

*Vermont*

*Gallipo v. City of Rutland*
  178 Vt. 244 (2005) ................................................................................................ 15

*Town of Brattleboro v. Wait*
  44 Vt. 459 (1872) .................................................................................................. 15

*West Virginia*

*Lynch v. Merchants Nat. Bank of West Virginia*
  22 W.Va. 554 (1883) ............................................................................................. 16

*Price v. Boone County Ambulance Authority*
  175 W.Va. 676 (1985) ........................................................................................... 16

*Wisconsin*

*State ex rel. Nordell v. Kinney*
  62 Wis.2d 558 (1974) ............................................................................................ 16

DOCKETED CASES

*Figone v. LG Elecs., Inc., et al.*
  No. 07-6331 (N.D. Cal. Dec. 13, 2007) ........................................................... 20, 21

*Nasto v. LG Elecs., Inc., et al.*
  No. 08-1371 (N.D. Cal. Mar. 10, 2008) ........................................................... 20, 21

W02-WEST:FMI\402797579.7
-viii-
Case No. 3:07-cv-05944 SC
MDL No. 1917
DEFENDANTS' JOINT REPLY I/S/O MOTION TO DISMISS INDIRECT
PURCHASER PLAINTIFFS' SECOND CONSOL. AMD. COMPLAINT

1

FEDERAL RULES

2 Fed. R. Civ. P. 23(a) ............................................................................................... 19

3 Fed. R. Civ. P. 23(c)(5) ............................................................................................ 19

4 STATE STATUTES

5 *Arkansas*

6 Ark. Code Ann. § 4-75-309 ........................................................................................ 9

7 Ark. Code Ann. §§ 4-88-107(a)(1)-(9), (11) ............................................................ 2

8 *Nevada*

9 Nev. Rev. Stat. Ann. § 598A.210(2) ....................................................................... 14

10 *Tennessee*

11 Tenn. Code Ann. § 47-25-106 ................................................................................. 15

12 *West Virginia*

13 W.Va. Code § 47-18-9 ............................................................................................. 16

14 OTHER AUTHORITIES

15 Alba Conte & Herbert Newberg, *Newberg on Class Actions*, § 2:5 (4th Ed. 2007) ....................... 8

16

17

18

19

20

21

22

23

24

25

26

27

28

Defendants respectfully submit this Reply Memorandum of Points and Authorities in support of their Joint Motion to Dismiss the Indirect Purchaser Plaintiffs' ("Plaintiffs") Second Consolidated Amended Complaint ("SCAC").

**I.**

**ARGUMENT**

**A.    Plaintiffs' New Arkansas And Montana Claims Should Be Dismissed With Prejudice.**

        **1.    Arkansas' Consumer Protection Statute Does Not Apply to Price-Fixing.**

Plaintiffs argue that price-fixing is an "unconscionable" business practice within the meaning of the Arkansas Deceptive Trade Practices Act ("ADTPA"), yet fail to identify a single Arkansas authority applying the ADTPA to price-fixing or any other antitrust violation. *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F.Supp.2d 1109, 1125 (N.D. Cal. 2008) ("*LCD I*") (no Arkansas court has ever applied the ADTPA in an antitrust context). Instead, Plaintiffs rely on several federal opinions that purport to broadly construe the meaning of "unconscionable" as used in the ADTPA to encompass price-fixing, based almost entirely on the definition of "unconscionable" provided in Black's Law Dictionary. *See In re New Motor Vehicles Canadian Export Antitrust Litig.*, 350 F.Supp.2d 160, 178 (D. Me. 2004) ("*NMV*") (relying on Black's Law Dictionary and the definition of "unconscionable" as used in an Idaho statute).[1]

These cases ignore controlling Arkansas case law interpreting the ADTPA's unconscionability provision. *See BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 577 (1996) ("only state courts may authoritatively construe state statutes."). As explained in Defendants' opening brief, Arkansas courts have found the ADTPA's unconscionability provision satisfied only where defendants exploited a "gross inequality of bargaining power." *See, e.g., State v. R & A Inv. Co.*, 985 S.W.2d 299, 302 (Ark. 1999); *accord Arkansas Nat'l Life Ins. Co. v. Durbin*, 3 Ark. App. 170, 174-175 (Ark. Ct. App. 1981). For example, in *Baptist Health v. Murphy*, on which Plaintiffs rely, the plaintiffs specifically argued that the defendant engaged in "unconscionable" behavior

---

[1]   The other three cases cited by Plaintiffs simply adopt the *NMV* court's definition. *See* Plaintiffs' Opposition ("Opp.") at 1, n. 1 and additional cases cited therein.

1  under the ADTPA by exploiting superior bargaining power.  226 S.W.3d 800, 810-811 (Ark.

2  2006) (defendant's "unconscionable conduct is demonstrated by the use of its power to disrupt the

3  relationships between patients, who are at [defendant's] mercy, with their physicians").  Plaintiffs

4  have made no such allegation here, nor could they.

5          Moreover, contrary to Plaintiffs' assertion, the fact that Arkansas courts almost

6  exclusively have applied the ADTPA's unconscionability provision in "contract cases" *supports*,

7  rather than refutes, the conclusion that the provision does not apply in the antitrust context.[2]

8  Plaintiffs rely on *NMV*, which rejected the Arkansas courts' definition of "unconscionable" on the

9  grounds that it did "not seem pertinent to evaluating an alleged antitrust conspiracy."  350

10  F.Supp.2d at 178.  That reasoning, however, simply assumes that the ADTPA applies to antitrust

11  violations.

12          The only courts that have properly construed the ADTPA in light of relevant

13  Arkansas case law have concluded that the ADTPA does not apply to price-fixing.  *See, e.g., In re*

14  *Graphics Processing Units Antitrust Litig.*, 527 F.Supp.2d 1011, 1029-1030 (N.D. Cal. 2007)

15  (under Arkansas case law, ADTPA "requires something more than merely alleging that the price of

16  a product was unfairly high"); *LCD I*, 586 F.Supp.2d at 1125 (refusing to "expansively interpret"

17  the ADTPA in absence of Arkansas case law applying statute to antitrust violations).  These

18  authorities are the more persuasive, and Plaintiffs' claim under the ADTPA should be dismissed.

19       **2.      Plaintiffs, as Indirect Purchasers, Lack Standing under Montana Antitrust Law.**

20          Montana has not legislatively or judicially "repealed" the bar on indirect purchaser

21  damage actions set forth by the U.S. Supreme Court in *Illinois Brick Co. v. Illinois*, 431 U.S. 720

22  (1977).  Nevertheless, Plaintiffs argue that the private standing provision of Montana's antitrust

23  statute, which is substantively identical to the private standing provision of the federal Clayton

24  Act, should be interpreted to confer standing on indirect purchasers because it does not expressly

25  limit recovery to direct purchasers.

26  _____

27  [2]  The ADTPA enumerates ten illustrative examples of "deceptive and unconscionable trade
    practices," none of which bear any resemblance to antitrust violations.  *See* Ark. Code Ann. §§ 4-
    88-107(a)(1)-(9), (11).  Almost all of the examples address advertising practices.

28

1           This argument flies in the face of controlling Montana authority, which requires

2  that Montana's antitrust law be construed in accordance with federal law.  In *Smith v. Video*

3  *Lottery Consultants, Inc.*, the Montana Supreme Court noted that the provision of Montana's

4  antitrust law prohibiting the creation of a monopoly was "very similar to § 2 of the Sherman Act,"

5  and thus held that it would "give due weight to the federal courts' interpretation" of § 2 in

6  construing the Montana provision.  858 P.2d 11, 13 (Mont. 1993).  Plaintiffs appear to argue that

7  this holding should be limited to the monopoly provision at issue in *Smith*.[3]  On the contrary,

8  subsequent courts, including the Ninth Circuit, have recognized that *Smith* mandates consideration

9  of federal authorities whenever the relevant Montana and federal antitrust provisions are similar.

10  *See, e.g., Healow v. Anesthesia Partners, Inc.*, 92 F.3d 1192, 1996 U.S. App. LEXIS 19949, at

11  *13 (9th Cir. 1996) ("Because Montana modeled its laws after the federal antitrust laws, the

12  Supreme Court of Montana has stated that it gives due weight to federal interpretation of antitrust

13  violations.  Thus, we will evaluate [Plaintiff's] state and federal antitrust claims under the

14  applicable federal case law."); *Sadler v. Rexair, Inc.*, 612 F. Supp. 491, 495 (D. Mont. 1985)

15  ("With such similar purpose behind the federal and Montana statutes . . . the Court will follow the

16  federal precedent in determining what is necessary to state a claim under [the Montana antitrust

17  statute].").  Moreover, Plaintiffs fail to even address Judge Illston's ruling in the *LCD* litigation—a

18  case involving allegations similar to Plaintiffs' allegations here—that, under *Smith*, the Montana

19  statute must be construed in accordance with federal standing provisions to preclude indirect

20  purchaser actions.  *In re TFT-LCD Antitrust Litig.*, 599 F.Supp.2d 1179, 1186-1187 (N.D. Cal.

21  2009) ("*LCD II*").

22           Indeed, Plaintiffs' only response to the above authority is to rely on an unpublished

---

24  [3] Plaintiffs' discussion of the portion of the *Smith* opinion addressing section 30-15-205(2)(c) of
the Montana statute is a red herring.  The *Smith* court noted that this provision appeared to provide

25  that "one person acting alone may violate the Montana statute," in contrast with the Sherman Act's
requirement that two or more persons be involved in an unlawful restraint of trade.  858 P.2d at

26  13.  These provisions are completely irrelevant to the issue at hand.  The only provision of the
Montana statute at issue here is the private standing provision, § 30-14-222, which, like the

27  monopoly provision construed by the *Smith* court, is virtually identical to the private standing
provision of the federal Clayton Act.

W02-WEST:FMI\402797579.7               -3-
Case No. 3:07-cv-05944 SC              DEFENDANTS' JOINT REPLY I/S/O MOTION TO DISMISS INDIRECT
MDL No. 1917                        PURCHASER PLAINTIFFS' SECOND CONSOL. AMD. COMPLAINT

1  Montana trial court slip opinion, *Olson v. Microsoft Corp.*, 2001 Mont. Dist. LEXIS 2710, at *22-

2  23 (Mt. Super. Feb. 15, 2001), ruling that the "plain language" of the Montana statute's standing

3  provision, even though identical to the analogous federal provision, should not be read to preclude

4  indirect purchaser actions because Montana has a "policy favoring access to the courts."  That

5  ruling, however, which predated Judge Illston's ruling in *LCD*, wrongly ignored the dictate of the

6  Montana Supreme Court to rely on federal authorities in construing Montana's antitrust statute.[4]

7  **B.**     **Plaintiffs' Claims Under The Laws Of Illinois, Maine And Montana Should Be**

8          **Dismissed Immediately For Lack of Standing.**

9          Plaintiffs apparently concede, as they must, that they presently lack standing to

10  maintain claims under the laws of Illinois, Maine and Montana, because no named plaintiff resides

11  in those states or claims injury under their laws.  Nevertheless, Plaintiffs contend the Court should

12  "defer" dismissing these claims for lack of standing until the class certification stage.  Contrary to

13  Plaintiffs' argument, however, the Ninth Circuit has expressly rejected the notion that trial courts

14  presiding over putative class actions should defer their threshold constitutional duty to assess

15  whether the existing named plaintiffs have standing to maintain the claims they assert.  Moreover,

16  even under the case law from other circuits relied upon by Plaintiffs, no such "deferral" is

17  available in this case because the existing named plaintiffs—none of whom claim injury under

18  Illinois, Maine or Montana laws—lack standing to ever serve as class representatives for the

19  putative Illinois, Maine and Montana classes.  Thus, absolutely no purpose would be served by

20  waiting until the class certification stage to dismiss Plaintiffs' Illinois, Maine and Montana claims

21  for lack of standing.[5]

22  _____

23  [4]  Plaintiffs note that a Montana indirect purchaser class was certified in *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 264 F.R.D. 603 (N.D. Cal. 2009) ("*SRAM*").  However, the issue of standing under the Montana statute was not addressed in the *SRAM* court's

24  certification order.  *See id.*  Moreover, the non-settling defendants in *SRAM* recently filed a motion for summary judgment arguing, *inter alia*, that the indirect purchaser plaintiffs lack standing under

25  Montana's antitrust statute for the same reasons asserted here.  The hearing on that motion is set for October 14, 2010.

26  [5]  Indeed, allowing Plaintiffs to wait until the class certification stage before attempting to amend their complaint to add new named plaintiffs who reside in Illinois, Maine and Montana,

27  respectively, would prejudice Defendants by unnecessarily delaying Defendants' opportunity to seek discovery from those new named plaintiffs.

28

In general, standing "is a jurisdictional element that must be satisfied prior to class certification." *Nelsen v. King County*, 895 F.2d 1248, 1249-1250 (9th Cir. 1990). Accordingly, "'it is well-settled that prior to the certification of a class . . . the district court must determine that at least one named class representative has Article III standing to raise each class []claim.'" *Meijer, Inc. v. Abbott Laboratories* 2008 WL 4065839, at *4 (N.D. Cal. Aug. 27, 2008) (*quoting Wooden v. Bd. of Regents of Univ. Sys. of Ga.*, 247 F.3d 1262, 1287-1288 (11th Cir. 2001)); *accord Williams v. Boeing*, 517 F.3d 1120, 1127 (9th Cir. 2008) ("At least one *named* plaintiff must satisfy the actual injury component of standing in order to seek relief on behalf of himself or the class.") (emphasis in original). "It is not enough that a named plaintiff can establish a case or controversy between himself and the defendant by virtue of having standing as to one of many claims he wishes to assert. Rather, each claim must be analyzed separately, and a claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim." *Prado-Steiman v. Bush*, 221 F.3d 1266, 1279-1280 (11th Cir. 2000).

Plaintiffs attempt to avoid this well-established rule by relying almost entirely on case law from other Circuits interpreting the U.S. Supreme Court's decision in *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 831 (1999). *See* Opp. at 4:10-5:21 & n. 8; 7:10-16 & n. 10 and cases cited therein. As explained in Defendants' opening brief, however, the Ninth Circuit has recognized that *Ortiz* provides only a narrow exception to the rule that standing should be resolved prior to class certification in the "very specific situation" of evaluating a global class action settlement, and has **expressly** held that *Ortiz* does not alter the well-established rule outside the global settlement context that district courts can and should address standing issues prior to class certification:

> Although the court in *Fibreboard* examined class issues before the question of Article III standing, it did so in the very specific situation of a mandatory global settlement class. ***Fibreboard does not require courts to consider class certification before standing***….[A] court must be sure of its own jurisdiction before getting to the merits.

*Easter v. Am. West*, 381 F.3d 948, 962 (9th Cir. 2004) (emphasis added; citations and quotations omitted). The district courts of the Ninth Circuit, in harmony with ample authority from other

Circuits,[6] have consistently followed *Easter* in cases closely analogous to this one by dismissing putative class claims prior to the class certification stage where no named plaintiff had standing to pursue them.  *See, e.g., In re Graphics Processing Units Antitrust Litig.,* 527 F.Supp.2d at 1026-1027 ("A class cannot assert a claim on behalf of an individual that they cannot represent."); *In re Ditropan XL Antitrust Litig.*, 529 F.Supp.2d 1098, 1107 (N.D. Cal. 2007) (same); *In re Apple & AT&TM Antitrust Litig.*, 596 F.Supp.2d 1288, 1309 (N.D. Cal. 2008) (same); *LCD I*, 586 F.Supp.2d at 1124-1125 (in light of ample Ninth Circuit authority, indirect plaintiffs stipulated at pleading stage to dismissal of all claims from states that lacked named plaintiff).  Plaintiffs cannot avoid the binding authority of *Easter* and its progeny by relying on case law from other Circuits.[7]

Plaintiffs next attempt to distinguish *Easter* on the grounds that the *Easter* plaintiffs' lack of standing was "independent of their class claims."  Opp. at 5:22-6:1 & n. 9.  But the posture of *Easter* was analogous to that here:  the Ninth Circuit held that because none of the named plaintiffs had standing to maintain claims against certain of the defendants, the claims against those defendants were properly dismissed prior to class certification, regardless of whether the putative class, if certified, would include members who had standing to maintain such claims.  *See* 381 F.3d at 961-962.  Similarly here, none of the named plaintiffs have standing to maintain claims under Illinois, Maine or Montana laws; as a result, these claims should immediately be dismissed, without "deferring" the issue to the class certification stage.[8]

---

[6]  *See* Defendants' Opening Brief ("Mot.") at 6-8 and authorities cited therein.  *See also In re Terazosin Hydrochloride Antitrust Litig.*, 160 F.Supp.2d 1365, 1370-1372 (S.D. Fla. 2001) ("Analyzing each of the [named plaintiffs'] state law claims separately, it is clear that no named plaintiff suffered an injury giving rise to an antitrust claim in [several states]….Class allegations that others suffered injuries giving rise to claims add nothing to the question of standing.") (internal quotations and punctuation omitted).

[7]  Plaintiffs cite only two cases from the Ninth Circuit holding that *Ortiz* applies outside the global settlement context, *Jepson v. Ticor Title Ins. Co.*, 2007 U.S. Dist. LEXIS 53480, at *5-6, n. 2 (W.D. Wash. May 1, 2007), and *Vernon v. Qwest Communs. Int'l, Inc.*, 643 F.Supp.2d 1256, 1263-1264 (W.D. Wash. 2009).  These cases misinterpret and ignore, respectively, the express language of *Easter*, and are in the clear minority of decisions in the Ninth Circuit.

[8]  Plaintiffs' discussion of the "juridical link" aspect of the *Easter* opinion is another red herring.  *See* Opp. at 6:1-6:11.  As explained in *Easter*, the "juridical link" doctrine applies in certain circumstances to preclude dismissal for lack of standing on the specific grounds that no named plaintiff was injured by a particular defendant.  381 F.3d at 962.  That, however, is ***not*** the asserted grounds for Plaintiffs' lack of standing in this case.  Plaintiffs lack standing to maintain Illinois,

1    Moreover, even the cases relied upon by Plaintiffs applying the *Ortiz* exception

2  outside the context of a global settlement have recognized that the exception "does *not* apply if the

3  standing issue would exist regardless of whether the named plaintiff filed his claim alone or as

4  part of a class." *Clark v. McDonald's Corp.*, 213 F.R.D. 198, 204 (D. N.J. 2003) (emphasis in

5  original).  Here, Plaintiffs apparently contend that their lack of standing to bring claims on their

6  own behalf under Illinois, Maine and Montana law will be rendered irrelevant if the putative

7  Illinois, Maine and Montana indirect purchaser classes are certified.  *See* Opp. at 4:1-9.  This is not

8  even a theoretical possibility, however, because just as the existing named plaintiffs lack standing

9  to maintain Illinois, Maine or Montana claims on their own behalf, they also lack standing to serve

10  as class representatives for the Illinois, Maine and Montana classes.

11    "To have standing to sue as a class representative it is essential that a plaintiff must

12  be a part of that class."[9]  *Schlesinger v. Reservists Comm. To Stop the War*, 418 U.S. 208, 216

13  (1974); *Lewis v. Casey*, 518 U.S. 343, 357 (1996) ("That a suit may be a class action adds nothing

14  to the question of standing, for even named plaintiffs who represent a class must allege and show

15  that they personally have been injured, not that injury has been suffered by other, unidentified

16  members of the class to which they belong and which they purport to represent."); *Rector v. City*

17  *& County of Denver*, 348 F.3d 935, 949-950 (10th Cir. 2003) ("It should be obvious that there

18  cannot be adequate typicality between a class and a named representative unless the named

19  representative has individual standing to raise the legal claims of the class."); *CRLA, Inc. v. Legal*

20  *Services Corp.*, 917 F.2d 1171, 1175 (9th Cir. 1990); *Westways World Travel, Inc. v. AMR Corp.*,

21  218 F.R.D. 223, 230 (C.D. Cal. 2003).[10]  Here, no named plaintiff has standing to represent the

22

23  Maine and Montana claims, not because no named plaintiff was personally injured by certain

24  defendants, but because no named plaintiff suffered any injury whatsoever under Illinois, Maine and Montana laws.

25  [9]  Plaintiffs thus draw a false distinction between their "individual" standing and their ability to "properly represent" the Illinois, Maine and Montana classes.  Opp. at 4:1-9.  Plaintiffs' lack of

26  individual standing to bring Illinois, Maine and Montana claims would also preclude them from serving as class representatives.

27  [10]  *Payton v. County of Kane*, 308 F.3d 673, 682 (7th Cir. 2002), relied upon by Plaintiffs, is in accord with this authority.  There, the Seventh Circuit noted that "a named plaintiff cannot acquire

28  standing to sue by bringing his action on behalf of others who suffered injury which would have

1  putative Illinois, Maine or Montana classes because no named plaintiff is a member of those

2  putative classes.[11]  *See* SCAC, ¶ 237 (defining each putative state class as consisting of persons

3  who indirectly purchased CRT products in the relevant state).

4  Despite this well-established authority, Plaintiffs take the position that the existing

5  named plaintiffs are capable of representing the putative Illinois, Maine and Montana classes.

6  However, Plaintiffs fail to cite a *single case* in which a named plaintiff was allowed to represent a

7  class of which she was not a member.  Instead, Plaintiffs rely on several district court opinions

8  certifying *nationwide* classes based on violations of various state statutes, without requiring a

9  separate class representative for each state.  *See* Opp. at 4:10-13, n. 8; 8:1-3, n. 11; and cases cited

10  therein.  Plaintiffs' reliance on these cases is misplaced for the simple reason that Plaintiffs do not

11  seek to certify a nationwide class based on violations of state laws.  Rather, Plaintiffs seek to

12  certify twenty-six separate state classes.  *See* SCAC, ¶ 236.  As discussed, Plaintiffs cannot

13  represent the putative Illinois, Maine or Montana classes because no named plaintiff is a member

14  of those classes.[12]

15  Moreover, even if Plaintiffs did seek to certify a nationwide indirect purchaser class

16  based on state law claims, such a class is unavailable in antitrust cases because the fundamental

17  differences in the state laws invoked by Plaintiffs preclude nationwide class treatment.  Only two

18  of the cases cited by Plaintiffs certifying nationwide classes arose in the antitrust context.[13]  These

19  cases are unpersuasive in light of the recent holding of the Third Circuit—the first Federal Court

---

20 afforded them standing had they been named plaintiffs" because "[s]tanding cannot be acquired

21 through the back door of a class action."  The *Payton* court found this principle satisfied because,
unlike here, the putative class representatives before it "were personally injured by the operation

22 of the *very same statute* that caused the injuries to all other members of the proposed class."  *Id.*
(emphasis added).

23 [11]  Plaintiffs cite Alba Conte & Herbert Newberg, *Newberg on Class Actions*, § 2:5 (4th Ed. 2007)

24 for the proposition that a class representative's "individual standing is sufficient to assert
[common] issues….".  As explained, however, no named plaintiff has "individual standing" to
represent the Illinois, Maine or Montana classes.

25 [12]  By contrast, the named plaintiffs in the cases relied upon by Plaintiffs were, by definition,

26 members of the nationwide classes they sought to represent.

27 [13]  *See In re Relafen Antitrust Litig.*, 221 F.R.D. 260, 266-270 (D. Mass. 2004) (certifying
nationwide classes based on violations of various state antitrust statutes); *accord In re Buspirone
Patent & Antitrust Litig.*, 185 F.Supp.2d 363, 377 (S.D.N.Y. 2002).

28

---

of Appeals to address the issue[14]—that the "fundamental" differences between state antitrust, consumer protection and unjust enrichment laws preclude certification of a nationwide indirect purchaser class. *See Sullivan v. DB Investments, Inc.*, __ F.3d __, 2010 WL 2736947, at *9 (3d Cir. July 13, 2010) ("The[] variations in state antitrust law are not trivial.  They represent fundamental policy differences among the several states, and they are in consequence as different as it is possible to be") (*petition for reh'g filed*).  Indeed, the putative nationwide indirect purchaser class categorically rejected by the *Sullivan* court was a proposed *settlement* class, *see id.*; it thus follows *a fortiori* that such a class cannot be certified under the stricter standards applied to litigation classes.

**C.**    **The Majority Of Plaintiffs' Unjust Enrichment Claims Should Be Dismissed Without Leave To Amend.**

    **1.**    **Plaintiffs Cannot Use Unjust Enrichment as a "Back Door" to Recover for Claims Barred Under the Substantive Antitrust Laws of Arkansas, Massachusetts and Montana.**

Arkansas,[15] Massachusetts[16] and Montana[17] do not allow indirect purchasers to sue under their antitrust statutes.  Moreover, each of these states hold that a plaintiff whose rights are limited by statute may not circumvent those limitations by asserting an equitable cause of action. *Cole v. Rivers*, 861 S.W.2d 551, 553 (Ark. 1993) (plaintiff whose rights are limited by statute may

---

[14]  *See Sullivan v. DB Investments, Inc.*, 2010 WL 2736947, at *8 (3d Cir. July 13, 2010) ("neither we nor our sister courts of appeals have considered whether variations among state antitrust statutes" preclude indirect purchasers from obtaining certification of a nationwide class).

[15]  Arkansas' antitrust statutes prohibit certain defined conduct, including price-fixing.  *See* Ark. Code Ann. § 4-75-309.  But Arkansas provides no private right of action under this statute, whether for direct or indirect purchasers.  *See id.* § 4-75-315 (authorizing suit by Arkansas attorney general); *Sullivan*, 2010 WL 2736947, at *9 n.11 (only attorney general may recover for indirect purchasers in antitrust claims under Arkansas antitrust statute).

[16]  *Ciardi v. F. Hoffmann-La Roche, LTD.*, 436 Mass. 53, 55 (Mass. 2002) (indirect purchasers "have no standing to bring [price-fixing] claims under the Massachusetts Antitrust Act"); *O'Connell v. Microsoft Corp.*, 2001-2 Trade Cas. (CCH) ¶ 73419, 13 Mass. L. Rptr. 435 (Mass. Super. 2001).  *See also* Indirect Purchaser Plaintiffs' Opposition to Defendants' Separate and Joint Motions to Dismiss the IP CAC (Aug. 4, 2009) (Dkt. No. 536), at p. 141 (Plaintiffs' price-fixing claims are "not viable" under Massachusetts antitrust statute).

[17]  *See* pp. 2-4, *supra*.

---

not recover for same alleged injury in equity); *Haverty v. Comm'r of Corrs.*, 792 N.E.2d 989, 994 (Mass. 2003) (court has no power to grant equitable relief in the form of good-time credits for prisoners, where statute limits the award of such credits); *Nelson v. Wilson*, 264 P. 679, 683 (Mont. 1928) (where law defines party's rights to give and receive gifts, court sitting in equity cannot disregard those "established rules and precedents").  Similarly here, Plaintiffs may not recover in equity based on price-fixing allegations, when the antitrust statutes in these states prohibit them from recovering at law.  Federal courts frequently dismiss unjust enrichment claims for this reason.  *See, e.g., LCD II*, 599 F.Supp.2d at 1192 (dismissing unjust enrichment claims including, *inter alia*, claims under Massachusetts and Montana common law, because "permitting such claims would allow plaintiffs to circumvent limitations of state antitrust laws").

In their opposition, Plaintiffs fail to cite a single case from any of these states allowing indirect purchasers to pursue unjust enrichment claims.  Instead, Plaintiffs cite one federal case in which an indirect purchaser was allowed to bring suit under the Arkansas **consumer protection** statute, and Massachusetts cases where indirect purchasers were allowed to sue under that state's **consumer protection** statute.  Opp. at 9 n.12.  With regard to these states, Plaintiffs appear to argue that, because these courts allowed an indirect purchaser to sue under these consumer protection statutes, Plaintiffs here should be allowed to sue for unjust enrichment under the common law of these states.

This argument misses the point.  Whether or not Plaintiffs are able to state a claim under these consumer protection statutes, the fact remains that the antitrust laws of these states do not allow indirect purchasers to recover.  Plaintiffs' complaint alleges, at base, antitrust violations.  Plaintiffs may not sidestep the substantive limitations imposed by these states by applying the label "unjust enrichment" to antitrust claims.

## 2.   Plaintiffs Cannot Maintain Unjust Enrichment Claims in States with Statutory Schemes that Preclude Equitable Restitution Remedies.

Plaintiffs argue that they should be allowed to bring unjust enrichment claims under the common law of eleven states, despite language in the antitrust or consumer protection statutes of those states that do not provide for such a remedy.  However, Plaintiffs do not cite a *single case* from any of the states at issue that allows an indirect purchaser to bring an unjust

1   enrichment claim based on price-fixing allegations.

2           Instead, Plaintiffs cite a U.S. Supreme Court case for the supposed proposition that

3   "enactment of a statute does not abrogate a preexisting common law claim, such as unjust

4   enrichment, unless the legislature <u>expressly</u> so states."  Opp. at 10 (citing *United States v. Texas*,

5   507 U.S. 529, 534 (1993)) (Plaintiffs' emphasis).  This is not the Court's holding.  In *Texas*, the

6   Court expressly stated that Congress is not required to "affirmatively proscribe" a common law

7   doctrine at issue, but rather may abrogate the common law if "a statutory purpose to the contrary is

8   evident."  *Id.* at 534 (internal quotations omitted) (citing *Astoria Federal S. & L. Assoc. v.*

9   *Solimino*, 501 U.S. 104, 108 (1991) (Congress need not "state precisely any intention" to abrogate

10  the common law)).  Moreover, the Court analyzed the effect of ***federal*** legislation on a ***federal***

11  common-law right, and acknowledged that different standards apply when analyzing the effect of

12  legislation on ***state*** common law.  *United States v. Texas*, 507 U.S. at 534.  In short, the *Texas*

13  case offers no support for Plaintiffs' argument.

14          Plaintiffs also argue that their unjust enrichment claims should survive, because

15  "unjust enrichment existed in the common law well before the passage of any of these statutes",

16  Opp. at 11.  Plaintiffs provide no authority to support this sweeping assertion, and the Court

17  should reject it.

18                  a.      <u>Hawaii</u>

19          The case Plaintiffs rely upon involved neither an antitrust nor an unjust enrichment

20  claim.  *Eastern Star Inc. v. Union Bldg. Materials Corp.*, 6 Haw. App. 125 (1985).  Moreover, it is

21  a decision from a Hawaii intermediate appellate court, and as such has no precedential value for

22  this Court.  *Cf. California Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1099 (9th Cir. 2003)

23  (federal courts obligated to follow decisions of state's intermediate appellate courts on state law

24  issues absent convincing evidence that the state's highest court would decide the matter

25  differently).  Here, Defendants have cited a case from Hawaii's Supreme Court, holding that a

26  statute providing an adequate remedy for private parties supersedes a remedy at common law.

27  *Herring v. Gulick*, 5 Haw. 57, 59 (1884).  The court is bound to follow this precedent from

28  Hawaii's highest court.  *Johnson v. Fankell*, 520 U.S. 911, 916 (1997).  Because Hawaii's antitrust

1   statute provides an adequate legal remedy, Plaintiffs are foreclosed from pursuing an unjust

2   enrichment claim based on the same allegations of anticompetitive conduct.

3                      b.      Minnesota

4                      Plaintiffs cite *Abraham v. County of Hennepin*, 639 N.W.2d 342 (Minn. 2002) for

5   the proposition that a party "should not be prevented from bringing concurrent claims." Opp. at 10

6   n.16. But that case analyzed plaintiff's claims under two statutes (the Minnesota Occupational

7   Safety and Health Act and the Minnesota Whistleblower Act), and did not involve an equitable,

8   common-law claim. *Id.* at 345. Moreover, the *Abraham* court based its holding on language in

9   the Whistleblower Act that expressly provided that its remedies should be "[i]n addition to any

10  remedies otherwise provided by law." *Id.* at 347 (quoting Minn. Stat. § 181.935(a)). No such

11  language appears in Minnesota's Antitrust Act.

12                     The other Minnesota case cited by Plaintiffs, *State ex rel. Humphrey v. Philip

13  Morris, Inc.*, does not address the issue of exclusive remedies at all. *See* 551 N.W.2d 490, 496-

14  498 (Minn. 1996) (evaluating defense claims of pass-through and challenges to plaintiffs' claimed

15  associational standing). In contrast, Defendants have demonstrated that, where a statute

16  enumerates the type of relief available for a violation, Minnesota courts do not provide additional

17  remedies. *See* Mot. at 11. Federal courts have applied this principle to dismiss unjust enrichment

18  claims that are brought in conjunction with claims under the Minnesota Antitrust Act. *See Group

19  Health Plan, Inc. v. Philip Morris, Inc.*, 86 F.Supp.2d 912, 918 (D. Minn. 2000) ("Plaintiffs may

20  not assert a direct equitable claim of unjust enrichment against Defendants because they have an

21  adequate remedy at law.").

22                     c.      Mississippi

23                     Defendants have demonstrated that Mississippi's antitrust statute limits equitable

24  relief to suits brought by the state's Attorney General, and that Mississippi courts limit relief for

25  antitrust violations to remedies enumerated in the statute. *See* Mot. at 11-12. Moreover,

26  Mississippi courts deny equitable relief to plaintiffs who have an adequate remedy at law. *Joel v.

27  Joel*, No. 2009-CA-00474-SCT, 2010 Miss. LEXIS 330, at *9-10 & n.10 (Miss. July 1, 2010).

28  Plaintiffs misrepresent the holding of *Owens Corning v. R.J. Reynolds Tobacco Co.*, 868 So.2d

W02-WEST:FMI\402797579.7                                    -12-

Case No. 3:07-cv-05944 SC                                DEFENDANTS' JOINT REPLY I/S/O MOTION TO DISMISS INDIRECT
MDL No. 1917                                             PURCHASER PLAINTIFFS' SECOND CONSOL. AMD. COMPLAINT

331 (Miss. 2004).  That court, in fact, upheld a summary judgment ruling for defendants on both

plaintiffs' antitrust and unjust enrichment claims, because plaintiff was injured, if at all, only

indirectly.  *See id.* at 334, 338.  Plaintiffs quote a portion of that opinion discussing another case,

*Fordice Construction Co. v. Central States Dredging Co.*, 631 F.Supp. 1536 (S.D. Miss. 1986).

The statement "the unjust enrichment claim was viable under Mississippi law" was the holding of

the *Fordice* court, which the *Owens Corning* court distinguished.  *See Owens Corning*, 868 So.2d

at 342.

        d.    <u>Nebraska</u>

        Nebraska follows the "elemental canon" of statutory construction that remedies

enumerated in a statute are presumed to be exclusive.  Mot. at 12.  Thus, Nebraska courts do not

allow plaintiffs to pursue equitable claims based on violations of a statute, where the statute

provides an adequate remedy.  *See, e.g., Pilot Investment Group v. Hofarth*, 250 Neb. 475, 483

(1996) (an adequate remedy is one "which is plain and complete and as practical and efficient to

the ends of justice and its prompt administration as the remedy in equity").  The sole Nebraska

case relied upon by Plaintiffs, *State ex rel. Wright v. Barney*, 276 N.W. 676, 683 (Neb. 1937),

does not address a statute granting a private right of action, but rather examines whether a

statutory provision allowing a writ of certiorari abolished the common-law writ of prohibition.

That court's holding is based on the legislature's repeal of the statute in question, which of course

has no relevance to Plaintiffs' claims under Nebraska law in this case.  *See id.* at 686-687 ("When

a statute abrogating a rule or principle of the common law is repealed, the common-law principle

or rule is *ipso facto* revived.").

        e.    <u>Nevada</u>

        The case cited by Defendants, *Builders Ass'n of N. Nev. v. City of Reno*, 776 P.2d 1234,

1235 (Nev. 1989), holds that when a statute expressly provides a remedy, Nevada courts will not read

other remedies into the statute.  *See, e.g., Stockmeier v. Nevada D.O.C.*, 183 P.3d 133, 136 (Nev. 2008)

("because the statute's express provision of such remedies reflects the Legislature's intent to provide only

those specified remedies, we decline to engraft any additional remedies") (*citing Builders Ass'n of N.

Nev.*, 776 P.2d at 1235).  The statute Plaintiffs purport to invoke, Nevada's Unfair Trade Practices Act,

1   limits recovery to treble damages, attorneys' fees and costs.  Nev. Rev. Stat. Ann. § 598A.210(2).  The

2   Court should decline Plaintiffs' bid to "engraft" an additional equitable remedy.

### f.   New York

4   New York courts have declined to follow the holding of *Cox v. Microsoft Corp.*, 8

5   A.D.3d 39 (N.Y. App. Div. 2004), the case on which Plaintiffs rely, when indirect purchasers

6   make an unjust enrichment claim premised on price-fixing allegations.  *See Sperry v. Crompton*

7   *Corp.*, 26 A.D.3d 488, 489 (N.Y. App. Div. 2006) (dismissing indirect purchaser plaintiffs' unjust

8   enrichment claim premised on price-fixing allegations, expressly "declin[ing] to follow" the *Cox*

9   opinion), *aff'd* 8 N.Y.3d 204, 215-216 (N.Y. 2007) (unjust enrichment claim "does not lie under

10  the circumstances of this case" because New York antitrust statute governs plaintiffs' claims); *see*

11  *also State of New York v. Daicel Chem. Indus., Ltd.*, 42 A.D.3d 301, 304 (N.Y. App. Div. 2007)

12  (affirming dismissal of unjust enrichment claim premised on price-fixing allegations brought by

13  indirect purchaser); *Samiento v. World Yacht Inc.*, 10 N.Y.3d 70, 81 (2008) (affirming dismissal of

14  unjust enrichment claim because "plaintiffs have an adequate remedy at law").

### g.   North Carolina

16  Plaintiffs cite *Perkins v. Healthmarkets, Inc.*, 2007 NCBC LEXIS 25 (N.C. Super.

17  Ct. July 30, 2007), a case that does not discuss the issue of exclusive remedies at all, but rather

18  evaluates whether North Carolina requires a plaintiff to allege a direct transfer of benefits to state a

19  claim for unjust enrichment.  *See id.* at *84.  In contrast, Defendants have cited extensive authority

20  from North Carolina courts holding that remedies expressly set forth in state statutes are exclusive.

21  *See* Mot. at 13.  North Carolina courts have applied this principle to dismiss claims for unjust

22  enrichment where plaintiff has a statutory remedy.  *See, e.g., Frazier v. Beard*, 1996 NCBC

23  LEXIS 3, at *15-16 (N.C. Super. Ct. Oct. 24, 1996) ("unjust enrichment is an equitable doctrine

24  designed to provide a remedy where an aggrieved party has no adequate remedy at law"), *aff'd* 130

25  N.C. App. 484 (N.C. Ct. App. 1998).

### h.   Tennessee

27  Contrary to Plaintiffs' assertion, neither of the Tennessee cases cited by Defendants

28  support Plaintiffs here.  In *Turner v. Harris*, 281 S.W.2d 661 (Tenn. 1955), the court affirmed a

1   trial court order sustaining defendant's demurrer to plaintiff's claim in equity, precisely because the

2   statute in question provided a remedy, which the court treated as exclusive.  *Id.* at 663-64

3   ("[w]here the language of the statute is clear in limiting its application to a particular class of cases

4   and leaves no room for doubt as to the intention of the legislature, there is no authority to

5   transcend or add to the statute") (quoting 50 Am. Jur., Section 229).  In *Guy v. Mutual of Omaha*

6   *Ins. Co.*, 79 S.W.3d 528, 536 (Tenn. 2002), the court stated that "[i]f a statute creates a new right

7   and prescribes a remedy for its enforcement, then the prescribed remedy is exclusive."  Tennessee

8   courts look to the "natural and ordinary meaning of the language" in the statute to discern

9   legislative intent.  *Id.*  Here, Tenessee's antitrust statute clearly limits recovery to "the full

10   consideration or sum paid by the person for any goods, wares, merchandise, or articles, the sale of

11   which is controlled by [an unlawful] combination or trust."  Tenn. Code Ann. § 47-25-106.

12                  i.      <u>Vermont</u>

13              Plaintiffs fail to adequately address authority from Vermont's highest court, holding

14   that "[i]f [a] statute which imposes a new duty also provides a particular remedy, that remedy is

15   usually the only remedy the injured party has."  *Town of Brattleboro v. Wait*, 44 Vt. 459, 460-461

16   (1872).  In fact, Vermont's Supreme Court has applied this principle to affirm dismissal of unjust

17   enrichment claims, where a statute governed the parties' rights.  *See Gallipo v. City of Rutland*,

18   178 Vt. 244, 267 (2005) ("in an area of law created entirely through statutory enactment, we are

19   hesitant to create rights where the Legislature chose not to do so").  In response, Plaintiffs cite two

20   federal cases from outside Vermont, one of which is a class certification decision that contains no

21   analysis of Vermont law.  *In re Relafen Antitrust Litig.*, 221 F.R.D. 260 (D. Mass. 2004).[18]

22                  j.      <u>West Virginia</u>

23              Plaintiffs do not challenge the holding by West Virginia's highest court that,

24   "[w]here a statute creates a new offence and denounces the penalty, or gives a new right and

25

_____

26   [18]  *See also* Indirect Purchaser Plaintiffs' Memorandum of Points and Authorities in Opposition to
     Defendants' Separate and Joint Motions to Dismiss the Indirect Purchaser Consolidated Amended

27   Complaint (filed Aug. 4, 2009) (Dkt. No. 536), at 129 (class certification decisions are "not
     instructive" when evaluating a motion to dismiss).

28

1   declares the remedy, the punishment or the remedy can be only that which the statute

2   prescribes."[19] *Lynch v. Merchants Nat. Bank of West Virginia*, 22 W.Va. 554, 555-557 (1883).

3   West Virginia courts continue to adhere to this principle.  *See Price v. Boone County Ambulance*

4   *Authority*, 175 W.Va. 676, 678 (1985) ("where a new right is created by statute, the remedy

5   provided for its violation is exclusive").  When the West Virginia Legislature created a statutory

6   right of action for antitrust violations, it expressly set forth the remedies for such violations, and

7   they do not include equitable restitution remedies.  *See* W.Va. Code § 47-18-9.  Thus, Plaintiffs

8   are barred under long-established West Virginia law from obtaining restitutionary relief based on

9   the same alleged conduct that forms the basis for their antitrust claims.

10                    k.       Wisconsin

11          Plaintiffs simply ignore the Wisconsin Supreme Court's express holding that the

12   remedies set forth in Wisconsin's antitrust statute, which do not include equitable restitution,

13   "***completely cover the field*** of both civil, criminal, and quasi-criminal relief for the acts statutorily

14   declared illegal."  *State ex rel. Nordell v. Kinney*, 62 Wis.2d 558, 562 (1974) (quoting *John Mohr*

15   *& Sons, Inc. v. Jahnke*, 55 Wis.2d 402, 412 (1972) (emphasis added and internal quotations

16   omitted).  Accordingly, Plaintiffs are foreclosed from obtaining equitable restitution by recasting

17   their claim under Wisconsin's antitrust statute as one for unjust enrichment.

18   **D.      Plaintiffs' Claim Under The Massachusetts Consumer Protection Statute Remains**

19          **Procedurally Deficient.**

20          Plaintiffs effectively concede, as they must, that they have failed to serve

21   Defendants with a "written demand for relief" at least 30 days prior to filing suit, as expressly

22   required by Massachusetts' consumer protection statute, Mass. G.L. c.93A, § 9 (the

23   "Massachusetts statute").  As explained in Defendants' opening brief, the prerequisites to suit set

24   forth in the Massachusetts statute are absolute, and Plaintiffs repeated failure to allege full

25

---

26   [19] Plaintiffs merely note that the *Lynch* Court applied this basic principle to a different common
     law remedy than the one at issue in this case.  *See* Opp. at 16:15-20.  As the quoted language

27   makes clear, however, the principle applies equally to all common law remedies that are abrogated
     by the remedies provided in an applicable statute.

28

1   compliance with those prerequisites means their consumer protection claim *must* be dismissed.

2   *See, e.g., Kanamaru v. Holyoke Mut. Ins. Co*., 72 Mass.App.Ct. 396, 407-408 (Mass. App. Ct.

3   2008) (a "plaintiff *must* . . . plead that he has complied with this [demand letter] requirement as a

4   prerequisite to suit.") (emphasis added).[20]

5         Plaintiffs attempt to avoid this bright-line rule by declaring that the "purpose" of

6   the 30-day service requirement is not implicated here because, according to Plaintiffs, "Defendants

7   have no intention of making a settlement offer."[21]  In addition to being entirely baseless, this

8   conjecture does nothing to obviate Plaintiffs' failure to comply with the Massachusetts statute.

9   Moreover, the purpose of the 30-day requirement is to provide Defendants with a 30-day period in

10  which to consider settlement *prior to being served with a complaint.  See Slaney v. Westwood*

11  *Auto, Inc.*, 366 Mass. 688, 704 (1975) (purpose of demand letter requirement is to give defendant

12  "opportunity" to consider settlement prior to suit).  Plaintiffs' failure to provide Defendants with

13  this 30-day period violates the statute, regardless of whether Defendants ultimately make a

14  settlement offer.

15        Finally, Plaintiffs' repeated failure to comply with the Massachusetts statute

16  requires that their consumer protection claim be dismissed *with prejudice*.  Where, as here, a

17  plaintiff was previously granted leave to amend and failed to cure a deficiency, the court should

18  refuse to grant a second leave to amend on the same issue.  *See, e.g., Foman v. Davis*, 371 U.S.

19  178, 182 (1962) (leave to amend properly denied for "undue delay" where plaintiff was previously

20  granted leave to amend and failed to cure deficiency); *accord Allen v. City of Beverly Hills*, 911

21  F.2d 367, 373 (9th Cir. 1990); *see also Osserman v. Jacobs*, 369 Mass. 200, 204-205 (1975)

22  ("where a pleading is dismissed as defective and an amendment is filed which fails to cure it…the

23  plaintiff has been given two chances to state his case and is not entitled to burden the courts and

24  ---

[20]   *See also Spring v. Geriatric Authy. of Holyoke*, 394 Mass. 274, 287 (1985) (demand letter is
25  special element of consumer protection claim that must be alleged and proved); *accord Entrialgo
    v. Twin City Dodge, Inc.*, 368 Mass. 812 (1975).

26  [21]   Similarly, Plaintiffs' discussion of the rules governing the *content* of "demand letters" under the
    Massachusetts statute is yet another red herring.  *See* Opp. at 17:15-18:18, n. 21, n.22 and
27  authorities cited therein.  The content of Plaintiffs' "demand letter" has absolutely nothing to do
    with whether that letter was timely.

28

1   the opposing parties with further attempts.").[22]

2   **E.      The Claims On Behalf Of New Classes Of Arkansas, D.C., Illinois, Maine And**

3   **Montana Indirect Purchasers Do Not Relate Back To Prior Complaints.**

4               Plaintiffs offer three responses to the Defendants' showing that claims added for

5   five new state classes do not relate back to prior complaints in this proceeding.

6               (1)     Plaintiffs erroneously suggest that relation back is unnecessary because it

7   "does not even come into play where, as here, the statute of limitations has not run or has been

8   tolled" (Opp. at 19:7-9), and that Defendants prematurely call for proof of fraudulent concealment

9   for tolling (Opp. at 20:18-20).  For this motion, however, Defendants accept allegations that a

10  conspiracy was concealed until the first complaint was filed.  Even so, the Montana claim's two-

11  year statute has expired unless the SCAC relates back to a prior complaint.  Mot. at n.5.  Plaintiffs

12  bury their concession on that point.  Opp. at 21 n.27.  As to the other four new state classes,

13  Defendants are entitled to an order stating that the new class claims do not relate back to make

14  clear that those classes need to prove fraudulent concealment until a later point in time than the old

15  classes will.  Mot. at n.5.  Plaintiffs' promise that they will do so (Opp. at 20:16-21:11) provides

16  no justification for not entering such an order because relation back does not excuse such a

17  showing.

18              (2)     To avoid application of *Rosenbaum v. Syntex Corp.*, 95 F.3d 922, 935 (9th

19  Cir. 1996), to the new Illinois, Maine and Montana classes, Plaintiffs offer logic that subverts the

20  statutes of limitations.  *Syntex* governs the relation back of amendments adding new plaintiffs to

21  an action.  Its standard, which is more stringent than that for amendments adding only new claims,

22  prevents relation back from becoming an open invitation for every plaintiff whose claims are time-

23  barred from joining an earlier filed action.  Mot. at 16-17.  Plaintiffs seek to avoid *Syntex*'s

24

25  [22]  *York v. Sullivan*, 369 Mass. 157, 164-165 (1975), relied upon by Plaintiffs, is inapposite.  That
    case held, in *dicta*, that the plaintiff's claim should not be dismissed with prejudice where the
26  plaintiff had arguably failed to comply with the 30-day requirement in the first instance.  Here, by
    contrast, Plaintiffs have already been given a chance to remedy the deficiency in their claim and
27  have failed to do so.  As noted, in such situations, Massachusetts law, in accord with federal law,
    denies Plaintiffs a second leave to amend.

28

stringent standard by arguing that the new Illinois, Maine and Montana classes involve no new plaintiffs, just new claims.  The rationale is astonishing.  It is not that the CAC or any prior consolidated or transferred action in this proceeding involved a plaintiff from each of those states.  Rather, it is that **no plaintiffs** have yet joined these proceedings to press the new class claims[23] and therefore, the logic goes, the claims involve no new plaintiffs.  *See* Opp. at 18:21-19:1 & n.24.  But assuming these claims somehow survive dismissal now, adding these classes requires, at some point, naming new class representatives, Fed. R. Civ. P. 23(a) & (c)(5), and thus new plaintiffs, *Gibson v. Chrysler*, 261 F.3d 927, 940-42 (9th Cir. 2001).

To suggest that this delay in adding new plaintiffs allows them to avoid *Syntex*, Plaintiffs seek to rely on their standing argument.  Opp. at n.24.  Relation back, however, is a separate analysis, which addresses whether plaintiffs with standing should be able to avoid time-bars by relying on previously filed suits.  Moreover, the *Syntex* standard specifically addresses concerns that arise when, as here, relation back would expand the number of parties on whose behalf an action proceeds.  Indeed, *Syntex* itself refused to permit relation back where new plaintiffs "wanted to expand the class in order to become class members" and thereby circumvent the statute of limitations.  *Syntex*, 95 F.3d at 936.  If Plaintiffs' rationale for avoiding *Syntex* were correct, the new plaintiffs in *Syntex* simply would have relied on the existing plaintiffs to assert claims for them.  The same would be true in any action where a statute of limitations had run on claims or classes of claims arising from the same occurrence.

(3)    Plaintiffs argue that they can satisfy *Syntex's* notice, lack-of-prejudice and identity-of-interest requirements for the new Arkansas and D.C. classes.  Opp. at 22-25.[24]  In doing so, they fail to interpret those requirements in light of the policy behind the statutes of limitation.  In fact, none of the new classes can satisfy *Syntex*.

---

[23]  As Defendants explained in their Moving brief and *supra* at pp. 4-9, this is grounds for immediate dismissal of each of these claims based on lack of standing.

[24]  Plaintiffs make no argument that the new Illinois, Maine and Montana classes can satisfy the *Syntex* standard.  Rather, they apply the lower standard applicable to new claims among existing parties.  Opp. at 21:12-22:8.  As just discussed, the lower standard is not applicable to these new state classes.

1          (a) <u>Notice</u>.  Plaintiffs argue that two kinds of complaints now superseded by the

2  CAC once provided Defendants with sufficient notice under *Syntex* that the Arkansas and D.C.

3  classes were impending.  Opp. at 22-5-6; 22-24.  The first type is one in which a plaintiff sought to

4  represent a nationwide class of indirect purchasers for monetary recovery under the laws of

5  various states, including Arkansas and D.C.  *E.g.*, *Figone v. LG Elecs., Inc., et al.*, No. 07-6331

6  (N.D. Cal. Dec. 13, 2007).  The other type of complaint is one in which plaintiffs attempted to

7  bring actions for Arkansas and D.C. indirect purchaser subclasses.  *E.g., Nasto v. LG Elecs., Inc.,*

8  *et al.*, No. 08-1371 (N.D. Cal. Mar. 10, 2008).

9          Plaintiffs' argument fails because in neither type of action did a plaintiff from

10  Arkansas or D.C. (or Illinois, Maine or Montana for that matter) purport to represent a class of

11  indirect purchasers from his or her state.  In *Figone*, for example, the plaintiff purporting to

12  represent a nationwide class was an indirect purchaser from California.  State laws vary so greatly

13  that a nationwide class of indirect purchasers seeking monetary recovery for a restraint of trade

14  cannot be certified.  *Sullivan v. DB Invs., Inc.*, 2010 WL 2736947, at *8-14.[25]  State-specific

15  classes would be necessary to expand the size of this litigation to cover Arkansas and D.C.

16  purchasers.  The plaintiffs in *Nasto* attempted to bring actions for Arkansas and D.C. indirect

17  purchaser subclasses without joining plaintiffs from those states.  Before *Nasto*'s state subclasses

18  could proceed, plaintiffs from Arkansas and D.C. would have to join the action.  Yet to satisfy

19  *Syntex*, Plaintiffs must show that Defendants had notice of not merely the prospective litigation's

20  subject matter but also its size.  *Cliff v. Payco Gen. Am. Credits, Inc*., 363 F.3d 1113, 1132-33

21  (11th Cir. 2004); *Arneil v. Ramsey*, 550 F.2d 774, 782-83 (2d Cir. 1977), *overruled on other*

22  *grounds*, *Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345, 349-50 (1983).  Under that

23  standard, claims by an individual do not provide notice of coming class claims, *Perry v. Beneficial*

24  *Fin. Co. of New York, Inc*., 81 F.R.D. 490, 494-95 (W.D.N.Y. 1979), and claims by one class do

25  not provide notice of coming claims by another class, *Cliff*, 363 F.3d at 1132-33; *Young v.*

---

27  [25]  An "uncertifiable class" cannot be a basis for relation back.  *Besig v. Dolphin Boating &*
*Swimming Club*, 683 F.2d 1271, 1279 n.5 (9th Cir. 1982).  For that reason alone, Plaintiffs'
reliance on *Figone* is misplaced.

W02-WEST:FMI\402797579.7         -20-

Case No. 3:07-cv-05944 SC      DEFENDANTS' JOINT REPLY I/S/O MOTION TO DISMISS INDIRECT
MDL No. 1917         PURCHASER PLAINTIFFS' SECOND CONSOL. AMD. COMPLAINT

*LePone*, 305 F.3d 1, 17 (1st Cir. 2002); *Arneil*, 550 F.2d at 782-83.  Rather, the statute of limitations remains as a bar to such late filing classes.  Mot. at 17:7-19.  Therefore, suits by residents of California with rights under California law, for example, do not provide Defendants with notice whether residents in Arkansas or D.C. will bring their own class claims, and they do not permit residents in those states to delay in filing claims needed to advance their interests.[26]

Plaintiffs' argument also fails because the CAC abandoned *Figone*'s nationwide-class for indirect purchaser damages claims and *Nasto*'s classes for Arkansas and D.C.  The CAC's omission of those classes (and the omission of the Arkansas class action that Defendants noted in their opening papers (Mot. at n.3)) left Defendants without notice of impending claims by those classes.  *Cf. Lindner Dividend Fund, Inc. v. Ernst & Young*, 880 F. Supp. 49, 53-54 (D. Mass. 1995) ("[W]hen a defendant is dropped from the class action, that defendant is no longer notified of any claims against it . . . .").  Plaintiffs' argument to the contrary (Opp. at 23) and its citation to *New York City Employees' Ret. Sys. v. Jobs*, 593 F.3d 1018 (9th Cir. 2010), conflate two distinct issues – the right to amend under Rule 15(a), which is the only issue *Jobs* addresses, and an amendment's relation back to a previous complaint under Rule 15(c), which *Jobs* does not address.

(b) <u>Lack of Prejudice</u>.  Plaintiffs contend that increased liability exposure is not sufficient to establish prejudice under *Syntex*.  Opp. at 24-25.  Neither Plaintiffs nor the cases they cite – *In re Glacier Bay*, 746 F. Supp. 1379 (D. Alaska 1990), and *DeLodder v. Aerotek, Inc.*, No. CV 08-6044 CAS (AGRx), 2009 U.S. Dist. LEXIS 55633 (C.D. Cal. June 15, 2009) – offer reasoning on the point.  Increasing liability may not be considered prejudicial in some contexts.  But it is here.  The purpose of a *Syntex* analysis is to protect repose created by statutes of limitations.  Any significant increase in liability exposure from the addition of plaintiffs with time-

---

[26]  For these reasons, Plaintiffs' reliance on *In re Juniper Networks, Inc. Securities Litigation*, 542 F. Supp. 2d 1037 (N.D. Cal. 2008) (Opp. at 23:7-12), is misplaced.  There, the original plaintiff's complaint was "filed on behalf of all those who purchased Juniper 'securities,' not just stocks."  *Id.* at 1052-53.  Therefore, while the original plaintiff was a stock purchaser, Juniper had notice that claims by note purchasers were also included in the action because notes are securities too.  *Id.* Here, *Juniper Networks* simply makes clear that, although the plaintiff in *Figone* may have purchased one type of CRT product, his action put Defendants on notice of actions by purchasers of other types of CRT products.

1   barred claims impairs that repose and prejudices a defendant's rights.  *Leachman v. Beech Aircraft*

2   *Corp.*, 694 F.2d 1301, 1309 (D.C. Cir. 1982) ("Even if, as here, there were no showing of specific

3   prejudice in the sense of lost or destroyed evidence, defendants would still be deprived of their

4   interest in repose."); *Young v. LePone*, 305 F.3d 1, 17 (1st Cir. 2002).

5               (c)  Identity of Interest.  Plaintiffs also argue that there is a sufficient identity of

6   interest because the new and old class claims are based on the same alleged misconduct.  Opp. at

7   25.  Defendants' authorities make clear that more is required.  Mot. at 18:4-11.  To adequately

8   protect the policies behind the statute of limitations, courts should require "a fairly advanced

9   degree of privity."  *Young*, 305 F.3d at 15; *see also Leachman*, 694 F.2d at 1309 (reasoning that

10  the new plaintiffs already must have been unofficially involved in the proceeding).  Plaintiffs do

11  not even attempt to satisfy this standard.  Moreover, Plaintiffs overstate the similarity between the

12  new and old classes.  The new classes' claims and the old classes' claims for monetary recovery

13  arise under different states' laws, which vary in substantive requirements and available relief.  *See*

14  *Sullivan*, 2010 WL 2736947, at *9.  They also arise from transactions in different geographic

15  regions of the country, which may bear a different portion (none to all) of the overcharge alleged.

16  Plaintiffs' reliance on *In re Network Assocs., Inc. II Sec. Litig.*, No. 00-4849, 2003 U.S. Dist.

17  LEXIS 14442 (N.D. Cal. 2003), is misplaced.  There, the court merely permitted securities

18  plaintiffs to extend the class period backwards after the defendant restated its financials.  The new

19  plaintiffs were merely swept in with these amendments because they were otherwise within the

20  prior class and both old and new plaintiffs asserted identical claims.

## II.

## CONCLUSION

23              For the foregoing reasons, and for those set forth in Defendants' prior briefing, the

24  above-discussed claims in the SCAC should be dismissed.  Furthermore, the Court should find

25  that Plaintiffs' claims on behalf of new classes for Arkansas, Illinois, Maine, Montana and District

26  of Columbia indirect purchasers do not relate back to prior complaints, and thus the applicable

27  statutes of limitations for claims asserted by these new classes run backwards from May 10, 2010,

28  the filing date of the SCAC.

| | |
|---|---|
| 1 | Dated:  July 30, 2010 |

By: ___/s/ Michael W. Scarborough___
GARY L. HALLING (66087)
Email: ghalling@sheppardmullin.com
JAMES L. McGINNIS (95788)
Email: jmcginnis@sheppardmullin.com
MICHAEL W. SCARBOROUGH (203524)
Email: mscarborough@sheppardmullin.com
**SHEPPARD, MULLIN, RICHTER &**
**HAMPTON LLP**
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone: (415)-434-9100
Facsimile: (415)-434-3947

*Attorneys for Defendants Samsung SDI America,*
*Inc., Samsung SDI Co., Ltd., Samsung SDI*
*(Malaysia) Sdn. Bhd., Samsung SDI Mexico S.A. de*
*C.V., Samsung SDI Brasil Ltda., Shenzhen*
*Samsung SDI Co. Ltd. and Tianjin Samsung SDI*
*Co., Ltd.*

By: ___/s/ David L. Yohai___
STEVEN A. REISS (*pro hac vice*)
Email: steven.reiss@weil.com
DAVID L. YOHAI (*pro hac vice*)
Email: david.yohai@weil.com
DAVID E. YOLKUT (*pro hac vice*)
Email: david.yolkut@weil.com
**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, New York 10153-0119
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007

GREGORY D. HULL (57367)
Email: greg.hull@weil.com
**WEIL, GOTSHAL & MANGES LLP**
201 Redwood Shores Parkway
Redwood Shores, California 94065-1175
Telephone: (650) 802-3000
Facsimile: (650) 802-3100

By: ___/s/ Jeffrey L. Kessler___
JEFFREY L. KESSLER (*pro hac vice*)
Email: jkessler@dl.com
A. PAUL VICTOR (*pro hac vice*)
Email: pvictor@dl.com
EVA W. COLE (*pro hac vice*)
Email: ecole@dl.com
**DEWEY & LEBOEUF LLP**
1301 Avenue of the Americas
New York, NY 10019
Telephone: (212) 259-8000

W02-WEST:FMI\402797579.7
Case No. 3:07-cv-05944 SC
MDL No. 1917

DEFENDANTS' JOINT REPLY I/S/O MOTION TO DISMISS INDIRECT
PURCHASER PLAINTIFFS' SECOND CONSOL. AMD. COMPLAINT

1   Facsimile: (212) 259-7013

2   ***Attorneys for Defendants Panasonic Corporation of***
    ***North America, MT Picture Display Co., Ltd. and***
3   ***Panasonic Corporation (f/k/a Matsushita Electric***
    ***Industrial Co., Ltd.)***
4

5   By: ___/s/ Ian Simmons_____
    IAN SIMMONS (*pro hac vice*)
6   BEN BRADSHAW (SBN 189925)
    Email: isimmons@omm.com
7   **O'MELVENY & MYERS LLP**
    1625 Eye Street, NW
8   Washington, DC 20006
    Telephone: (202) 383-5300
9   Facsimile: (202) 383-5414

10  ***Attorneys for Defendants Samsung Electronics Co.,***
    ***Ltd. and Samsung Electronics America, Inc.***
11

12  By: ___/s/ Ronald C. Redcay_____
13  RONALD C. REDCAY (SBN 67236)
    Email: ronald.redcay@aporter.com
14  **ARNOLD & PORTER LLP**
    777 South Figueroa Street, Forty-Fourth Floor
15  Los Angeles, California 90017-5844
    Telephone: 213.243.4000
16  Facsimile: 213.243.4199

17  SAMUEL R. MILLER (SBN 66871)
    Email: srmiller@sidley.com
18  MARIE L. FIALA (SBN 79676)
    Email: mfiala@sidley.com
19  RYAN M. SANDROCK (SBN 251781)
    Email: rsandrock@sidley.com
20  ROBERT B. MARTIN, III (SBN 235489)
    Email: rbmartin@sidley.com
21  **SIDLEY AUSTIN LLP**
    555 California Street, 20th Floor
22  San Francisco, California 94104
    Telephone:     (415) 772-1200
23  Facsimile:      (415) 772-7400

24  ***Attorneys for Defendants LG Electronics, Inc.,***
    ***LG Electronics USA, Inc. and LG Electronics***
25  ***Taiwan Taipei Co., Ltd.***

26

27

28

W02-WEST:FMI\402797579.7

-24-

Case No. 3:07-cv-05944 SC          DEFENDANTS' JOINT REPLY I/S/O MOTION TO DISMISS INDIRECT
MDL No. 1917                       PURCHASER PLAINTIFFS' SECOND CONSOL. AMD. COMPLAINT

By: ___/s/ John M. Taladay_____
JOHN M. TALADAY (*pro hac vice*)
Email:  TaladayJ@howrey.com
**HOWREY LLP**
1299 Pennsylvania Ave. NW
Washington, DC 20004
Telephone: (202) 783-0800
Facsimile: (202) 383-6610

*Attorneys for Defendant Philips Electronics North America Corporation, Koninklijke Philips Electronics N.V., Philips Electronics Industries (Taiwan ), Ltd. and Philips da Amazonia Industria Electronica Ltda.*

By: ___/s/ Bruce H. Jackson_____
BRUCE H. JACKSON (98118)
Email: bruce.h.jackson@bakernet.com)
ROBERT W. TARUN (64881)
Email: robert.w.tarun@bakernet.com
**BAKER & MCKENZIE LLP**
Two Embarcadero Center, 11th Floor
San Francisco, CA  94111-3802
Telephone: (415) 576-3000
Facsimile: (415) 576-3099

PATRICK J. AHERN (*pro hac vice*)
Email: patrick.j.ahern@bakernet.com
ROXANE C. BUSEY (*pro hac vice*)
Email: roxane.c.busey@bakernet.com
KAREN SEWELL (*pro hac vice*)
Email: karen.sewell@bakernet.com
**BAKER & MCKENZIE LLP**
130 E. Randolph Dr., Suite 3500
Chicago, IL 60601
Telephone: (312) 861-8000

*Attorneys for Tatung Company of America, Inc.*

By: ___/s/ Kent M. Roger_____
KENT M. ROGER (95987)
Email: kroger@morganlewis.com
MICHELLE PARK CHIU (248421)
Email: mchiu@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
One Market, Spear Street Tower
San Francisco, CA 94105-1126
Telephone: (415) 442-1000
Facsimile: (415) 442-1001

*Attorneys for Defendants Hitachi, Ltd., Hitachi Asia, Ltd., Hitachi America, Ltd., Hitachi Electronic Devices (USA), Inc. and Hitachi Displays, Ltd.*

1

2

By: ___*/s/ Terry Calvani*_____

TERRY CALVANI (53260)
Email: terry.calvani@freshfields.com
BRUCE C. MCCULLOCH (*pro hac vice*)
Email: bruce.mcculloch@freshfields.com
**FRESHFIELDS BRUCKHAUS DERINGER US LLP**
701 Pennsylvania Avenue, N.W., Suite 600
Washington, DC 20004
Telephone: (202) 777-4500
Facsimile: (202) 777-4555

*Attorneys for Defendant Beijing Matsushita
Color CRT Company, Ltd.*

By: ___*/s/ Lucius B. Lau*_____

CHRISTOPHER M. CURRAN (*pro hac vice*)
Email:  ccurran@whitecase.com
GEORGE L. PAUL (*pro hac vice*)
Email:  gpaul@whitecase.com
LUCIUS B. LAU (*pro hac vice*)
Email:  alau@whitecase.com
**WHITE & CASE LLP**
701 Thirteenth Street, N.W.
Washington, DC  20005
Telephone: (202) 626-3600
Facsimile: (202) 639-9355

*Attorneys for Defendants Toshiba Corporation,
Toshiba America Electronic Components, Inc.,
Toshiba America Information Systems, Inc.,
Toshiba America, Inc. and Toshiba America
Consumer Products, L.L.C.*

Pursuant to General Order No. 45, § X-B, the filer attests that concurrence in the filing of this document has been obtained from each of the above signatories.