# DEWEY & LEBOEUF

Dewey & LeBoeuf LLP
1301 Avenue of the Americas
New York, NY 10019-6092

tel   +1 212 259 8050
fax  +1 212 259 7013
jkessler@dl.com

September 3, 2010

Hon. Charles A. Legge
JAMS
Two Embarcadero Center, Suite 1500
San Francisco, CA 94111

RE: *In re Cathode Ray Tube (CRT) Litigation*, No. 07-5944 SC, MDL No. 1917

Dear Judge Legge:

  Pursuant to the procedure set forth by Your Honor at the August 24, 2010 status conference for the resolution of discovery disputes, we write on behalf of defendants to respectfully request that plaintiffs be compelled to provide proper responses to the interrogatories and document requests served by defendants nearly six months ago on March 8, 2010, requesting, among other things, the factual basis for plaintiffs' allegations of a conspiracy to fix the prices of finished CRT products ("Defendants' Finished CRT Products Discovery Requests").

  As Your Honor knows, plaintiffs have refused to properly answer these questions on the basis that it is "premature" for them to reveal the factual basis for the allegations in the consolidated complaints regarding a conspiracy to set the prices for finished CRT products. Plaintiffs' objection lacks any merit and, as set forth below, has been consistently rejected by courts in this and other districts. In addition, plaintiffs' objection ignores the benefits of Defendants' Finished CRT Products Discovery Requests: (i) to streamline this litigation to focus on the facts that are properly at issue; (ii) to help the Court better balance burdens and relevance in determining the appropriate scope of finished CRT products discovery from defendants; (iii) to determine whether there is a Rule 11 issue with plaintiffs' allegations of a finished CRT products conspiracy; and (iv) to possibly facilitate settlement discussions. In short, there is no basis for plaintiffs' refusal to answer Defendants' Finished CRT Products Discovery Requests immediately and in full.

  In particular, defendants and this Court are entitled to know to what degree finished CRT products are at issue in this case. Do plaintiffs actually know of any evidence that defendants have engaged in a conspiracy to fix the prices of finished CRT products or are plaintiffs just relying upon their interpretation of the decision in *In re Sugar Industries Antitrust Litigation*, 579 F.2d 13 (3d Cir. 1978), to support their standing as purported direct purchasers even though their conspiracy claims are really directed solely at CRT components? The answer to this question will significantly

September 3, 2010
Page 2

shape the proper scope of discovery in this case.

1.  **The Meet and Confer Process for Defendants' Finished CRT Products Discovery Requests**

On March 8, 2010, four defendants served the Finished CRT Products Discovery Requests, which contain a total of eleven interrogatories and ten document requests to direct purchaser plaintiffs, and eleven interrogatories and twelve document requests to indirect purchaser plaintiffs.[1] All of Defendants' Finished CRT Products Discovery Requests are narrowly targeted at discovering plaintiffs' factual basis at the time they filed the consolidated complaints for alleging that there was a conspiracy to set or fix the prices of finished CRT products, in addition to a conspiracy to set the prices of the component CRTs.

With respect to the interrogatories served on direct purchaser plaintiffs, MT Picture Display Co., Ltd ("MTPD") requested the factual basis only for certain, identified allegations in the direct purchaser complaint regarding an alleged conspiracy to set the prices of *televisions containing CRTs*. For example, MTPD requested the following information:

- "State with specificity the factual basis (including the Identity of each Document, Person or other evidentiary source upon which You rely) for Your allegation that Defendants conspired, combined and contracted to fix, raise, maintain, and stabilize the price at which televisions containing CRTs were sold in the United States, as alleged in, *inter alia,* Paragraph 3 in the Complaint." *See* MTPD's First Set of Interrogatories to Direct Purchaser Plaintiffs, at Interrogatory 1 (attached hereto as part of Exhibit A).

- "State with specificity the factual basis (including the Identity of each Document, Person, or other evidentiary source upon which You rely) for Your allegation that Defendants agreed to allocate market shares and customers of sales of televisions containing CRTs, as alleged, *inter alia*, Paragraphs 5 and 138 of the Complaint." *Id.* at Interrogatory 5.

LGE served similar interrogatories on direct purchaser plaintiffs requesting their factual basis for specific allegations in the complaint regarding an alleged conspiracy to set the prices of *computer*

---

[1] Specifically, the following requests served on direct purchaser plaintiffs are at issue: LGE's First Set of Requests for Production, LGE's First Set of Interrogatories, First Set of Interrogatories of Defendant MT Picture Display Co., Ltd., First Set of Document Requests of Defendant MT Picture Display Co., Ltd. *See* Exhibit A (attached hereto). And, the following requests served on indirect purchaser plaintiffs are at issue: Samsung SDI America, Inc.'s First Set of Interrogatories, Samsung SDI America, Inc.'s First Set of Requests for Production of Documents, First Set of Interrogatories of Samsung Electronics America, Inc., First Set of Document Requests of Samsung Electronics America, Inc. *See* Exhibit B (attached hereto).

September 3, 2010
Page 3

*monitors containing CRTs.* See Exhibit A.

      Similarly, indirect purchaser plaintiffs were asked in interrogatories served by Samsung SDI America, Inc. ("Samsung SDI") the factual basis for enumerated complaint allegations regarding an alleged conspiracy to set the prices of *computer monitors containing CRTs*:

- "State with specificity the factual basis (including the Identity of each Document, Person or other evidentiary source upon which You rely) for Your allegation that Defendants 'conspired to fix., raise, maintain and/or stabilize prices of monitors containing CRTs,' as alleged in *inter alia*, Paragraphs 1 and 15 of the Complaint." *See* Samsung SDI's First Set of Interrogatories to Indirect Purchaser Plaintiffs, at Interrogatory 1 (attached hereto as part of Exhibit B).

- "For each separate Defendant (regardless of its affiliation with any other Defendant) state with specificity the factual basis (including the Identity of each Document, Person, or other evidentiary source upon which You rely) for Your allegation that it 'agreed to allocate market shares and customers of sales of products containing CRTs,' as alleged in, *inter alia*, Paragraphs 156(i) and 156(j) of the Complaint." *Id.* at Interrogatory 4.

Meanwhile, Samsung Electronics America, Inc. ("Samsung Electronics") asked indirect purchaser plaintiffs their factual basis for certain complaint allegations regarding a purported conspiracy to fix the prices of *televisions containing CRTs*. *See* Exhibit B.

      The document requests to both direct and indirect plaintiffs seek the documents used by them in answering the interrogatories described above. *See* Exhibit A (document requests to direct purchaser plaintiffs) and Exhibit B (document requests to indirect purchaser plaintiffs).

      Plaintiffs responded to Defendants' Finished CRT Products Discovery Requests on May 7, 2010, by objecting to them in full with the very limited exception that plaintiffs purportedly "exercise[d] their right under Federal Rule of Civil Procedure 33(d) to refer to the documents produced to the Department of Justice in connection with the investigation of the Cathode Ray Tube industry, the three indictments of employees of Chunghwa, the JFTC findings against CRT manufacturers and the European Commission Statement of Objections against CRT manufacturers."[2]  *See* Direct Purchaser Plaintiffs' Responses to Defendants' Finished CRT Discovery Requests (attached hereto as Exhibit C) and Indirect Purchaser Plaintiffs' Responses to Defendants' Finished CRT Discovery Requests (attached hereto as Exhibit D) (referring to documents purportedly given to the Department of Justice ("DOJ")). The responses fail to identify any specific facts or specific documents supporting the allegations in the complaints of a conspiracy

---

[2] Plaintiffs could not have relied on the European Commission Statement of Objections in issuing their amended complaints as the statement was released after the complaints were filed and it would have been a violation of European law for plaintiffs to have seen it.

to set the prices of finished CRT products.

During a June 9 telephonic meet and confer, plaintiffs claimed they are not required to answer Defendants' Finished CRT Products Discovery Requests, citing *In re Convergent Technologies Securities Litigation*, 108 F.R.D. 328 (N.D. Cal. 1985) ("*In re Convergent*") and *In re eBay Seller Antitrust Litigation*, 2008 WL 5212170 (N.D. Cal. Dec. 11, 2008) ("*In re eBay*"), which purportedly support plaintiffs' position that defendants' requests constitute "contention" discovery and are therefore "premature." As requested by plaintiffs, defendants reviewed this authority which, as described more fully below, does not justify plaintiffs' failure to answer immediately the requests at issue.

Accordingly, in a letter dated June 24, 2010, defendants responded to plaintiffs that their objections are not valid and that specifically, neither *In re Convergent* nor *In re eBay* support plaintiffs' continued refusal to answer defendants' discovery. Rather, defendants explained to plaintiffs that immediate responses to Defendants' Finished CRT Products Discovery Requests are warranted given the controlling authority identified by defendants in their June 24 letter that the discovery requests are both proper and timely. *See* Letter from Jeffrey L. Kessler to Guido Saveri and Mario N. Alioto, dated June 24, 2010 [Dkt. 737]. For example, defendants noted that plaintiffs must have had some factual basis for the allegations in the complaints before they were filed and, thus, an objection to Defendants' Finished CRT Products Discovery Requests on the ground that "discovery has just begun" is improper.

In reply, in a letter dated July 14, 2010, plaintiffs again objected to providing any substantive responses to Defendants' Finished CRT Products Discovery Requests. The reason: plaintiffs claimed they "have not had an opportunity to conduct meaningful discovery, and, therefore, any response would be tentative and incomplete and would have to be redone, at great further effort later." Plaintiffs further refused to answer the requests at issue purportedly because "defendants have much greater access to evidence concerning their own behavior." *See* Letter from Geoffrey C. Rushing and Mario N. Alioto to Jeffrey L. Kessler, dated July 14, 2010 [Dkt. 735-2].

As discussed with Your Honor at the August 24 status conference, the parties have reached an impasse as to whether plaintiffs are required to provide immediate and proper responses to Defendants' Finished CRT Discovery Requests and, thus, the parties agree that this issue is now ripe for Your Honor's determination.

### 2. Defendants' Finished CRT Products Discovery Requests are Both Proper and Timely

Plaintiffs' objection to answering Defendants' Finished CRT Products Discovery Requests on the ground that they constitute "contention" discovery is invalid: "contention

interrogatories are allowed."[3]  *Boyd*, 2008 WL 2691727, at *1 (citing Fed. R. Civ. P. 33(a)(2)). Indeed, "[c]ourts generally approve of appropriately timed contention interrogatories as they tend to narrow issues, avoid wasteful preparation, and, it is hoped, expedite a resolution of the litigation." *See Roberts v. Heim*, 130 F.R.D. 424, 427 (N.D. Cal. 1989).

More specifically, with respect to timing, courts have held that early contention interrogatories are proper where, as here, they seek the factual basis for certain allegations. For example:

- In *Cable & Computer Technologies, Inc.*, the District Court for the Central District of California compelled plaintiffs to answer the exact same kind of interrogatories at issue here requesting that plaintiffs state facts "upon which a particular, specified allegation in the Complaint is based." In particular, the court held that the interrogatories "are straightforward 'factual' contention interrogatories which plaintiff should also be able to answer now. Requiring the answer to these 'factual' contention interrogatories is 'consistent with Rule 11 of the Federal Rules of Civil Procedure, [which requires that] plaintiffs must have some factual basis for the allegations in their complaint.' Accordingly, plaintiffs 'must answer [the] interrogatories with information as they now possess. . . .'" 175 F.R.D. 646, 651-52 (C.D. Cal. 1997).

- "Requiring a party to answer contention interrogatories is 'consistent with Rule 11 of the Federal Rules of Civil Procedure, [which requires that] plaintiffs must have some factual basis for the allegations in their complaint. . . .'" Plaintiffs must "have a basis for their allegations in the complaint, and contention interrogatories seek information about that basis; thus, an objection that '[d]iscovery has only just begun' makes no sense at all." *United States ex. rel. O'Connell v. Chapman University*, 245 F.R.D. 646, 649-650 (C.D. Cal. 2007) (granting motion to compel with respect to early propounded contention interrogatories) (citation omitted).[4]

---

[3] Defendants' Finished CRT Products Discovery Requests merely seek the facts plaintiffs purportedly knew at the time they filed their complaints that support their allegations regarding a finished CRT products conspiracy. As an initial matter, some courts do not even consider this type of discovery as "contention" discovery. *See e.g., Dot Com Entertainment Grp., Inc. v. The Cyberbingo Corp.*, 237 F.R.D. 43, 44 (W.D.N.Y. 2006) (interrogatories seeking "all facts upon which defendants base their allegation that Plaintiff's patent is invalid" are not contention interrogatories); *Boyd v. Tornier, Inc.*, 2008 WL 2691727, at *1 (S.D. Ill. June 30, 2008) (interrogatories that "merely ask for the facts which form the basis of specified allegations made in the complaint" are not contention interrogatories). Unlike "contention" discovery, defendants' discovery does not ask plaintiffs to explain "why or how" they may establish their claims or to "advance legal argument in support of" their claims, but simply require plaintiffs to "disclose the evidentiary basis" for enumerated allegations made in the complaints. *Dot Com*, 237 F.R.D. at 44-45.

September 3, 2010
Page 6

- "Plaintiff should provide as much information as possible regarding his claims without delay and as early as required. Defendants are 'entitled to know the factual basis of plaintiff's allegations.' Plaintiff is not entitled to withhold discovery information until he has obtained to his own satisfaction all discovery from Defendants. Plaintiff must be aware of some of the specific facts upon which the allegations in his Complaint are based, otherwise he would not have made the allegations in the first place. For this reason, the Court finds that the contention interrogatories here are not premature and Plaintiff shall be required to fully answer them." *Johnson v. Kraft Foods North America, Inc.*, 236 F.R.D. 535, 544-545 (D. Kan. 2006).

The authority cited by plaintiffs during the June 9 meet and confer and in their July 14, 2010 letter does not hold otherwise. *See In re Convergent*, 108 F.R.D. at 337 (noting that early answers to contention interrogatories might expose frivolous or unsupportable claims); *In re eBay*, 2008 WL 5212170, at *1 (noting that contention interrogatories may be appropriate if they contribute meaningfully to, among other things, "exposing a substantial basis for a motion under Rule 11 . . ."). In fact, contrary to plaintiffs' suggestion, the court in *In re Convergent*, did *not* hold that early "contention interrogatories" are *per se* objectionable. 108 F.R.D. at 333 citing Fed. R. Civ. P. 33 (interrogatories are "*not* necessarily objectionable merely because an answer . . . involves an opinion or contention that relates to fact or the application of law to fact.") (emphasis added). Instead, the court held that the propriety of contention interrogatories ought to be determined on a case-by-case basis, and early contention interrogatories are appropriate where, as here, the questions are "well-tailored" and the answers will "contribute meaningfully to clarifying the issues in the case, narrowing the scope of the dispute, or setting up early settlement discussions, or that such answers are likely to expose a substantial basis for a motion under Rule 11 . . ." *Id.* at 338.[5] *See*

---

[4] *See also Continental Illinois National Bank & Trust Company of Chicago v. Caton*, 136 F.R.D. 682, 689 (D. Kan. 1991) ("[I]nterrogatories, or other discovery thrusts, directed at complaints, answers, replies or other basic pleadings . . . to discover the detail factual basis for a particular allegation or alleged cause of action, or to test whether there is any factual basis at all for a particular allegation or alleged cause of action, are entirely proper and appropriate. The court encourages such discovery. Hopefully, the result of such discovery will impel parties and their counsel toward pleadings, motions and other papers that are 'well grounded in fact and warranted by existing law, etc.,' as required by Rule 11.").

[5] Moreover, in *Cable & Computer Tech.*, the District Court for the Central District of California noted that, since *In re Convergent*, the Northern District has "modified" its general position on contention interrogatories, "noting that contention interrogatories may in certain cases be the most reliable and cost-effective discovery device, which would be less burdensome than depositions at which contention questions are propounded." *Cable & Computer Tech.*, 175 F.R.D. at 652 citing *McCormick-Morgan, Inc. v. Teledyne_Industries, Inc.*, 134 F.R.D. 275, 287 (N.D. Cal. 1991) (holding that well-framed contention interrogatories rather than depositions are the most appropriate vehicle for establishing alleged patent infringers' contentions).

September 3, 2010
Page 7

also *In re eBay*, 2008 WL 5212170 at *1 (the rules regarding contention interrogatories are "non-rigid" and should be viewed on a case-by-case basis).[6] Not surprisingly then, the court in *In re Convergent* ordered plaintiffs to "promptly disclose to defendants all documents in plaintiffs' control that support or contradict any of the controverted allegations" in the complaint, something which plaintiffs here have refused. 108 F.R.D. at 341.

      The additional authority cited by plaintiffs in their July 14 letter also does not support plaintiffs' position. *See* Dkt. 735-2, at 2. Plaintiffs cite *Kim v. City of Santa Clara*, No. C 09-0025 RS, 2009 WL 4021389 (N.D. Cal. Nov. 19, 2009), for the proposition that Defendants' Finished CRT Discovery Requests are premature. Dkt. No. 735-2, at 1. But in that case, the interrogatories at issue requested from plaintiff "all the facts existing *at the time of the incident* [being complained of] and known [at the time] to [*defendant's* employee-police officers]." *Kim*, 2009 WL 4021389, at *2 (emphases added). By contrast, Defendants Finished CRT Products Discovery Requests do not seek all relevant facts existing at the time of the purported price-fixing, but are strictly limited to the specific facts known and relied upon by plaintiffs at the time they drafted the complaints to allege a conspiracy to set the prices of finished CRT products – information which is uniquely within plaintiffs' knowledge.[7] Similarly, in *Gen Probe, Inc. v. Becton, Dickinson & Co.*, No. 09 CV 2319 BEN (NLS), 2010 WL 2011526 (S.D. Cal. May 19, 2010), another case cited by plaintiffs, the court declined to compel the defendant to provide all facts in support of its affirmative defenses of waiver, estoppel, and laches because relevant information about the defenses was solely within plaintiff's possession, including the reason for plaintiff's delay in filing its lawsuit. Again, the situation here is the opposite – the facts relied upon by plaintiffs in fashioning their complaints are solely within plaintiffs' knowledge and do not require any additional information from defendants.[8]

---

[6] *See also Lucero v. Valdez*, 240 F.R.D. 591, 594-595 (D.N.M. 2007) (holding that well-tailored contention interrogatories served shortly after the filing of a new complaint were not premature: "[a]lthough these interrogatories track many of the allegations in the Amended Complaint, they . . . do not seek 'each and every fact' in support of those claims.").

[7] As Your Honor knows from the August 24 status conference, plaintiffs are also objecting to Chunghwa Picture Tubes Ltd. ("Chunghwa") producing to defendants English translations of Chunghwa's document productions, which translations have already been provided by Chunghwa to plaintiffs. Plaintiffs cannot repeat their mantra that plaintiffs and defendants have equal access to the information produced in this case, while simultaneously blocking defendants from obtaining English versions of the Chunghwa documents which plaintiffs have purportedly relied upon to make their complaint allegations of a finished CRT products conspiracy.

[8] Plaintiffs also cite *Wells Fargo Residential Mortgage Lending Discrimination Litigation*, No. C 09-1930 MMC (JL), 2009 WL 1771368 (N.D. Cal. June 19, 2009). Dkt. No. 735-2, at 2. But, in that case, plaintiffs had already provided answers to defendant's "contention" discovery requests, and the narrow issue being addressed by the court was whether plaintiffs were required to supplement their answers with "detailed damage information." *Id.* at *7. Plaintiffs *agreed* to provide such information as soon as

### 3. Plaintiffs Should be Compelled to Answer Defendants' Discovery Responses Immediately and In Full

Proper responses by plaintiffs to Defendants' Finished CRT Products Discovery Requests easily meet the case-by-case test urged by plaintiffs from *In re Convergent* for determining whether plaintiffs are required to immediately respond to "contention" requests.

*First*, proper responses by plaintiffs to Defendants' Finished CRT Products Discovery Requests would clarify the issues in the case and may substantially narrow the scope of the dispute. Specifically, plaintiffs' responses will help resolve the critical question of whether this case properly involves only the conspiracies to fix the prices of CRTs, which are at issue in the DOJ investigation, or also involves a conspiracy to fix the prices of finished CRT products. In this respect, plaintiffs' current responses to Defendants' Finished CRT Products Discovery Requests – citing, without any specificity, to all of the documents produced to the DOJ and other competition authorities – underscore why defendants need proper answers to their discovery now: plaintiffs' responses suggest that their allegations of a finished CRT products conspiracy are solely based on evidence regarding the tubes conspiracy that is being investigated by various competition agencies. There is no evidence that these government investigations involve any alleged conspiracy to set the prices of finished CRT products as opposed to CRT components.

The refusal by plaintiffs to properly answer the interrogatories and identify the purported basis for their CRT finished products conspiracy allegations is particularly troubling given the fact that Chunghwa, the DOJ amnesty applicant, is a maker of tubes only and has admitted that it is not aware of any conspiracy to set the prices of finished CRT products. *See* Responses by Chunghwa to Defendants' Requests for Admissions (attached hereto as Exhibit E). The admissions by Chunghwa underscore the fact that a finished CRT products conspiracy does not logically flow from a tubes conspiracy. To begin with, there are different participants in the two separate markets for tubes and for finished CRT products. With respect to defendants alone, MTPD and Samsung SDI, for example, made only tubes and never made finished CRT products, while Samsung Electronics Co., Ltd., for example, made finished CRT products, but never made tubes, and still other defendants, like LGE, made tubes at one time but then made only finished products. Other companies – for example, Sony Corporation, Sharp, Sanyo, Visio, Dell, Apple, Gateway, and Hewlett Packard –have major shares in the U.S. market for various finished CRT products (and never made tubes), but are not named as defendants in the consolidated complaints alleging a purported conspiracy to set the prices of finished CRT products. Resolving the issue of whether plaintiffs, in fact, have any evidentiary support for the alleged conspiracy in separate markets for

---

(i) defendants provided certain "loan level data," which was solely within defendant's possession, and (ii) plaintiffs' experts had an opportunity to "statistically analyze" it. *Id.* The court agreed with this compromise. Here, by contrast, to answer Defendants' Finished CRT Products Discovery Responses, plaintiffs do not require any information from defendants (who have no idea what information was relied upon by plaintiffs in fashioning the finished CRT products conspiracy allegations in the complaints).

finished CRT products will provide important and meaningful information as to the appropriate scope of this dispute.

Further, with respect to the scope of discovery, until plaintiffs reveal their factual basis, if any, for the complaint allegations regarding a conspiracy to fix the prices of finished CRT products, it is not possible for the Court to fully balance relevance and burdens to determine the information *defendants* should search for, review, and produce regarding CRT televisions and computer monitors. Defendants should not be made to go on a worldwide fishing expedition for conspiratorial evidence in the CRT-TV or CRT monitor industries if plaintiffs had no good faith basis for alleging a plausible conspiracy to set the prices of such products at the time they filed the complaints. In this respect, plaintiffs' responses to Defendants' Finished CRT Products Discovery Requests are essential to enable the Court to better balance burdens and relevance in determining the proper scope of finished CRT products information that defendants should produce. As a result, the amount of information, potential custodians, and locations of documents subject to discovery going forward will very likely be significantly reduced.

*Second,* plaintiffs should be compelled to provide proper responses to Defendants' Finished CRT Discovery Requests for the independent reason – recognized in the caselaw – that plaintiffs' responses could reveal whether there are any Rule 11 issues with plaintiffs' allegations of a finished CRT products conspiracy. Indeed, plaintiffs' responses thus far – merely citing, without specification, to all documents given to competition authorities and the DOJ – heightens the Rule 11 inquiry. *See Refac Int'l, Ltd. v. Hitachi, Ltd. et al.*, 921 F.2d 1247, 1253 (Fed. Cir. 1990) (noting that plaintiff's inability to respond fully to discovery requests raised at least the suspicion that the action was originally filed in violation of Rule 11). The fact that the Court has already ruled that plaintiffs' alleged claims are "plausible" as a matter of pleading, is an issue wholly separate from whether plaintiffs had a good faith *evidentiary* basis for alleging their finished CRT products conspiracy claims in the first place.

*Third,* proper responses by plaintiffs to Defendants' Finished CRT Products Discovery Responses may facilitate early settlement discussions, particularly with respect to those defendants who only produced or sold finished CRT products and would not have plausibly engaged in a conspiracy to fix the prices of component CRTs they themselves purchased.

The above reasons for compelling plaintiffs to properly answer defendants' discovery requests substantially outweigh the reasons identified by plaintiffs for not responding. For example, Plaintiffs assert that responding to Defendants' Finished CRT Products Discovery Requests "will require an enormous amount of work, and to do so now would be extremely unproductive." Dkt. 735-2, at 2. Plaintiffs' claim is belied by the fact that plaintiffs should have already made an inquiry into the factual basis for their finished CRT products conspiracy claims prior to filing the complaints back in March of 2009. *See* Fed. R. Civ. Proc. 11 (requiring parties to conduct a reasonable investigation prior to filing their pleadings). Apart from this initial investigation which should already be completed, plaintiffs cannot identify any additional "work" or particular burdens that would justify their failure to produce the highly relevant and narrow information being requested by defendants. Indeed, defendants are only seeking the information

plaintiffs knew at the time they filed their complaints, so there is no burden at all other than for plaintiffs to identify that information with the required specificity.[9]

Finally, plaintiffs' efforts to avoid properly answering the interrogatories by referring, en masse, to all documents submitted to the DOJ or foreign competition authorities is completely unavailing. Federal Rule 33(d) requires that documents cited in response to an interrogatory be specifically identified. Fed. R. Civ. P. 33(d). It is completely improper for plaintiffs to tell defendants to go searching through tens of thousands of documents to try to guess which of these documents, if any, were actually relied upon by plaintiffs as a basis for asserting their finished CRT products conspiracy allegations.

For all the foregoing reasons, defendants respectfully request that the Court order plaintiffs to provide immediate and proper answers to Defendants' Finished CRT Products Discovery Requests. To the extent plaintiffs' responses refer to documents produced in this litigation, plaintiffs should be ordered to identify specific documents by bates number.

Respectfully submitted,

s/ Jeffrey L. Kessler
Jeffrey L. Kessler

cc: All Counsel via ECF

---

[9] Plaintiffs' additional excuse for not answering Defendants' Finished CRT Products Discovery Requests – that "any response" by plaintiffs "would be tentative and incomplete" and "have to be redone later" (Dkt. 735-2, at 2) – is equally unavailing. *See Cable & Computer Tech.*, 256 F.R.D. at 682 (if the concern in answering a contention interrogatory is that the answer may limit the party's proof at trial, "[such a] concern is misplaced in that, among other things, the trial court may permit the withdrawal or amendment of an answer to an interrogatory.").