# EXHIBIT 14

1  NIALL E. LYNCH (State Bar No. 157959)
   MICHAEL L. SCOTT (State Bar No. 165452)
2  DAVID J. WARD (State Bar No. 239504)
   HEATHER S. TEWKSBURY (State Bar No. 222202)
3  ALEXANDRA J. SHEPARD (State Bar No. 205143)
   Antitrust Division
4  U.S. Department of Justice
   450 Golden Gate Avenue
5  Box 36046, Room 10-0101
   San Francisco, CA  94102
6  Telephone:  (415) 436-6660

7  Attorneys for the United States

8

9                    UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11                      SAN FRANCISCO DIVISION

12  UNITED STATES OF AMERICA          CR 09 - 00329 PJH

13          v.                    )   INDICTMENT
                                  )
14  SAKAE SOMEYA,                 )   VIOLATION:
                                  )   Title 15, United States Code,
15                                )   Section 1 (Price Fixing)
                   Defendant.     )
16                                )   San Francisco Venue

17       The Grand Jury charges that:

18                                 I.

19                    DESCRIPTION OF THE OFFENSE

20       1.      SAKAE SOMEYA is hereby indicted and made a defendant on the charge stated

21  below:

22       2.      From on or about January 1, 2001, until on or about December 31, 2004, the exact

23  dates being unknown to the Grand Jury, the defendant, SAKAE SOMEYA, coconspirator Hitachi

24  Displays Ltd. ("Hitachi"), and other corporations and individuals, entered into and engaged in a

25  combination and conspiracy to suppress and eliminate competition by fixing the prices of thin-

26  film transistor liquid crystal display panels ("TFT-LCD") sold to Dell Inc. or its subsidiaries

INDICTMENT

1   ("Dell") for use in desktop monitors and notebook computers.  The combination and conspiracy

2   engaged in by the defendant, his corporate employer, and other coconspirators was in

3   unreasonable restraint of interstate and foreign trade and commerce in violation of Section 1 of

4   the Sherman Act (15 U.S.C. § 1).

5       3.      Defendant SAKAE SOMEYA joined and participated in the conspiracy from as

6   early as January 1, 2001 and continued until at least December 31, 2004.

7       4.      The charged combination and conspiracy consisted of a continuing agreement,

8   understanding, and concert of action among the defendant, his corporate employer, and other

9   coconspirators, the substantial terms of which were to agree to fix the prices for TFT-LCD to be

10  sold to Dell.

11                              II.

12              MEANS AND METHODS OF THE CONSPIRACY

13      5.      For the purpose of forming and carrying out the charged combination and

14  conspiracy, the defendant, his corporate employer, and other coconspirators did those things that

15  they combined and conspired to do, including, among other things:

16          (a)     attended bilateral meetings and engaged in conversations and

17                  communications in Japan, Korea, and the United States to discuss the

18                  prices of TFT-LCD sold to Dell;

19          (b)     agreed during those meetings, conversations, and communications to

20                  charge prices of TFT-LCD sold to Dell at certain levels;

21          (c)     exchanged information on sales of TFT-LCD sold to Dell, for the purpose

22                  of monitoring and enforcing adherence to the agreed-upon prices.

23          (d)     authorized, ordered, and consented to the participation of subordinate

24                  employees in the conspiracy;

25          (e)     issued price quotations in accordance with the agreements reached;

26          (f)     accepted payment for the supply of TFT-LCD sold at collusive,

INDICTMENT                              2

1             noncompetitive prices to Dell; and

2                 (g)      took steps to conceal the conspiracy and conspiratorial contacts through

3                         various means.

4                                               III.

5                   DEFENDANT AND COCONSPIRATORS

6         6.      Defendant SAKAE SOMEYA is a citizen and resident of Japan.  From at least as

7 early as January 1, 2001 until on or about December 31, 2004, SAKAE SOMEYA was a Senior

8 Manager for Sales & Marketing at Hitachi.  During the period covered by this Indictment,

9 Hitachi was a Japanese company engaged in the business of producing and selling TFT-LCD to

10 customers in the United States and elsewhere.

11         7.      Various corporations and individuals, not made defendants in this Indictment,

12 participated as coconspirators in the offense charged in this Indictment and performed acts and

13 made statements in furtherance of it.

14         8.      Whenever in this Indictment reference is made to any act, deed, or transaction of

15 any corporation, the allegation means that the corporation engaged in the act, deed, or transaction

16 by or through its officers, directors, employees, agents, or other representatives while they were

17 actively engaged in the management, direction, control, or transaction of its business or affairs.

18                                            IV.

19                     TRADE AND COMMERCE

20         9.      TFT-LCD are glass panels composed of an array of tiny pixels that are

21 electronically manipulated in order to display images.  TFT-LCD are manufactured in a broad

22 range of sizes and specifications for use in televisions, notebook computers, desktop computer

23 monitors, cell phones, mobile devices, and other applications.

24         10.      During the period covered by this Indictment, the defendant, his corporate

25 employer, and coconspirators sold and distributed substantial quantities of TFT-LCD in a

26 continuous and uninterrupted flow of interstate and foreign trade and commerce to customers

INDICTMENT                           3

1    located in states or countries other than the states or countries in which the defendant, his

2    corporate employer, and coconspirators produced TFT-LCD.  In addition, payments for TFT-

3    LCD traveled in interstate and foreign trade and commerce.

4           11.    The business activities of the defendant, his  corporate employer, and

5    coconspirators that are the subject of this Indictment were within the flow of, and substantially

6    affected, interstate and foreign trade and commerce.

7                                          V.

8                          JURISDICTION AND VENUE

9           12.    The combination and conspiracy charged in this Indictment was carried out, in

10   part, in the Northern District of California, within the five years preceding the filing of this

11   Indictment.

12   //

13   //

14   //

15   //

16   //

17   //

18   //

19   //

20   //

21   //

22   //

23   //

24   //

25   //

26   //

INDICTMENT                                    4

1 ALL IN VIOLATION OF TITLE 15, UNITED STATES CODE, SECTION 1.

2

3 DATED:                                    A TRUE BILL

4

5 _____
Scott D. Hammond                            FOREPERSON
Acting Assistant Attorney General

6

7 _____
Marc Siegel                                 _____
Director of Criminal Enforcement            Phillip H. Warren
                                            Chief, San Francisco Office

8

9 United States Department of Justice
Antitrust Division

10

11 _____
Joseph P. Russoniello   *SIGNED FOR        _____
United States Attorney   RUSSONIELLO*       Niall E. Lynch
Northern District of California             Assistant Chief, San Francisco Office

12

13

14                                          _____
                                            David J. Ward

15                                          Michael L. Scott
                                            Heather S. Tewksbury

16                                          Alexandra J. Shepard
                                            Attorneys

17                                          U.S. Department of Justice
                                            Antitrust Division

18                                          450 Golden Gate Avenue
                                            Box 36046, Room 10-0101

19                                          San Francisco, CA 94102
                                            (415) 436-6660

20

21

22

23

24

25

26

INDICTMENT                        5

# EXHIBIT 15

1  SIDNEY A. MAJALYA (CSBN 205047)
   LARA M. KROOP (CSBN 239512)
2  MANISH KUMAR (CSBN 269493)
   Antitrust Division
3  U.S. Department of Justice
   450 Golden Gate Avenue
4  Box 36046, Room 10-0101
   San Francisco, CA 94102
5  Telephone: (415) 436-6660
   Facsimile: (415) 436-6687
6  Email: Sidney.Majalya@usdoj.gov

7  Attorneys for the United States

8
                    UNITED STATES DISTRICT COURT
9
                  NORTHERN DISTRICT OF CALIFORNIA
10
                       SAN FRANCISCO DIVISION
11

12  IN RE: OPTICAL DISK DRIVE PRODUCTS        )    MDL Docket No. M:10-2143 VRW
    ANTITRUST LITIGATION                       )
13                                             )    Date:  June 24, 2010
                                               )    Time:  10:00 a.m.
14                                             )    Court: Hon. Vaughn R. Walker
    This Document Relates to All Cases.        )
15                                             )
                                               )
16  _____)

17

18  **UNITED STATES' REPLY TO PLAINTIFFS' OPPOSITION TO MOTION FOR A
    LIMITED STAY OF DISCOVERY**
19

20

21

22

23

24

25

26

27

28

## I.    **Introduction**

In an effort to prevent interference with a closely related criminal antitrust investigation, the United States seeks a limited stay of discovery in the above-captioned matter. The limited stay would remain in effect for one year, at which time the government would report to the Court on the status of the grand jury investigation. The government expects that the proposed stay would be lifted as to document discovery after one year and that full discovery would commence sometime thereafter, as permitted by the Court. The government also seeks to stay discovery relating to grand jury proceedings and communications with the government for the duration of the grand jury investigation and any resulting criminal trials.

Contrary to Direct Purchaser Plaintiffs' contention in their Opposition that the stay the government seeks is of "unnecessary breadth" (*See* Direct Purchaser Plaintiffs' Memo of Points & Authorities in Opp'n ("Directs' Opp.") at 1, Doc. #90), the stay requested by the government is limited in scope, narrowly tailored, and within the range of the stays entered by other courts in this District. Moreover, the position taken by Direct Purchaser Plaintiffs in advocating no stay at all is at odds with the position taken by the government, Defendants, and Indirect Purchasers. To be sure, Indirect Purchasers seek a more narrow stay than that advocated by the government, but Indirect Purchasers recognize that a stay of some sort is appropriate under the circumstances.[1] *See* Plaintiff Wagner's Response to United States' Motion ("Indirect's Rsp.") at 2-3, Doc. #88.

The government's proposed stay seeks to limit the impact on civil litigants while protecting the public's interest in preserving the integrity of the grand jury. The proposed stay deals with three distinct areas of discovery: document discovery; testimonial discovery, *e.g.*, depositions and interrogatories; and discovery related to grand jury proceedings and

---

[1] Prior to the filing of the government's Reply, the Court issued an Order appointing the Hagens Berman firm as interim class counsel for the indirect purchaser plaintiffs. *See* Order Appointing Interim Class Counsel for Indirect Purchasers (June 4, 2010), Doc. #96. Before this Order, two other firms vying for the interim class counsel position filed papers responsive to the government's motion for a stay. *See* Doc. #87, #90. For purposes of its Reply, the government has focused on Direct Purchaser Plaintiff's Opposition (Doc. #90) and the Hagens Berman Response filed on behalf of Indirect Purchaser Aaron Wagner (Doc. #88).

United States' Reply
M:10-2143 VRW

- 1 -

1    communications with the government. *See generally* USA's Proposed Order, Doc. #68-2. In

2    attempting to limit the impact on Plaintiffs, the proposed stay also provides for wide swaths of

3    discovery that can commence immediately, subject to the Federal Rules of Civil Procedure

4    ("FRCP") and any other directive of this Court. *Id.*

5    **II.**    <u>**Argument**</u>

6        **A.**    <u>**Direct Purchasers' Position Demanding That No Stay Be Issued Is Extreme**</u>

7            1. <u>Direct Purchasers' Are Outliers Among the Participants in This Litigation</u>

8        Of the four parties to this matter, only the Direct Purchasers are advocating the position

9    that the Court should issue no stay in this matter. That position is at odds with their fellow

10    plaintiffs who advocate a stay on some depositions and on some communications with the

11    government, and is clearly at odds with the government's and the Defendants' position vis-a-vis

12    a stay.

13        Indirect Purchasers oppose the stay proposed by the government, but acknowledge that a

14    stay is appropriate for the following categories of discovery:

15            (a) **"No depositions** may be taken" (except depositions of

16            Defendants' customers and suppliers). *See* Indirect's Proposed

17            Order at ¶ 5, Doc. #88-1 (emphasis added);

18            (b) There is no prohibition on "the service of **interrogatories,**

19            **requests for admissions, requests for production of documents**

20            **and deposition notices.**" However, "to the extent that such

21            discovery requires the production or responses to such discovery **it**

22            **is hereby stayed for a period of twelve months** from the filing of

23            the consolidated complaint." *Id.* at ¶ 7 (emphasis added); and

24            (c) "**No questions** may be asked at any deposition **about the**

25            **grand jury proceedings** or the **witness' testimony**, if any, **before**

26            **the grand jury or communications with the United States**

27

28

United States' Reply
M:10-2143 VRW

1    **relating to the grand jury proceedings.**" *Id.* at ¶ 5 (emphasis

2    added).

3         Indirect Purchasers' proposed stay does not address all of the concerns raised by the

4    government, but, unlike Direct Purchasers' position, Indirect Purchasers' proposal is more

5    measured and calibrated in light of both the circumstances of this case and similar cases litigated

6    in the Northern District.

7         2. <u>Direct Purchasers' Position on a Stay Is an Outlier in the Northern District</u>

8         Direct Purchasers' position demanding that no stay be issued is at odds with every

9    antitrust case in the Northern District of California in which the Antitrust Division of the

10   Department of Justice has sought a stay of discovery since 2004.  In the four cases in which the

11   Division has sought a discovery stay, the court has granted the government's request at least in

12   part: the dynamic random access memory ("DRAM"), static random access memory ("SRAM"),

13   liquid crystal display ("TFT-LCD"), and cathode ray tube ("CRT") civil cases.  *See* USA's

14   Memo of P&A, Exhibits 1 - 4, Doc. #68-1.

15        As discussed in the government's opening brief, in DRAM and SRAM, orders were

16   entered that stayed interrogatory and deposition discovery (the DRAM order stayed discovery

17   until completion of the grand jury investigation).  *Id.* at 3.  In the two most recent cases, the stays

18   that have been entered have been more expansive.  In TFT-LCD, the stay that was entered

19   covered virtually all discovery for an indefinite period of time.  *Id.*  In its Order, the Court also

20   scheduled a discovery status conference to be held eight months later.  *Id.*  In the CRT matter, a

21   stipulated stay was approved by the Court that again stayed virtually all merits discovery for an

22   initial six-month period.  *Id.* at 3-4.  The CRT stay has subsequently been extended, with

23   document discovery being stayed for approximately eighteen months.  *Id.*  The CRT stay also

24   foreclosed discovery relating to grand jury proceedings and communications with the

25   government for the "pendency of the grand jury proceedings and any resulting criminal trials."

26   *See id.*, Exhibit 4, Doc. #68-1 (*In re: CRT Antitrust Litigation*, No. CV-0705944 -SC (N.D. Cal.),

27   Stipulation and Order to Extend Limited Discovery Stay (January 5, 2010), at 2.).

28   
United States' Reply
M:10-2143 VRW

1    Each provision of the government's proposed stay, including the time period, falls within

2    the parameters of at least one of the stays entered in the four matters discussed above.  The

3    proposed stay, based on the unique facts of this case, sets a stay of document discovery, per TFT-

4    LCD and CRT, a stay of depositions and interrogatories, per DRAM, SRAM, TFT-LCD, and

5    CRT, and a stay on discovery relating to grand jury proceedings and communications with the

6    government, per DRAM, TFT-LCD and CRT.

7    **B.    <u>The Requested Stay Is Carefully Limited in Scope and Duration Based on</u>**

8    **<u>the Facts and Circumstances of This Case</u>**

9    Courts look to the "particular circumstances and competing interests involved in the case"

10   to determine whether to grant a stay.  *Federal Savings and Loan Ins. Corp. v. Molinaro*, 889 F.2d

11   899, 902 (9th Cir. 1989).  The government follows this same principle when determining

12   whether to seek a stay and, if so, the terms of the proposed stay.

13   Direct Purchaser Plaintiffs claim that the "DOJ sets forth a boilerplate recitation . . . of

14   adverse consequences," and characterize the concerns about civil discovery raised by the

15   government as "misplaced, speculative and unfounded."  *See* Direct's Opp. at 1.  Plaintiffs make

16   this statement with full knowledge that the government has submitted an under-seal declaration

17   in support of its motion to the Court.  The government has stated a factual basis for its request for

18   a limited stay in the Under Seal Declaration of Sidney A. Majalya ("Majalya Decl.").  *See*

19   Majalya Decl. Doc. #98.  The facts elucidated in the Majalya Declaration bear directly on the

20   harms about which the government is concerned.  *See* Majalya Decl. at ¶¶ 15-25.  For the reasons

21   explained in the Majalya Declaration, the government is proposing a twelve-month stay on what

22   is essentially "merits-related" discovery.[2]  *See* Majalya Decl.  While this request is unique to the

23

24   ───────────────

          [2]Indirect Purchasers argue that the period of the government's proposed stay is
25   "indefinite" and the Court should deny the stay on that basis.  *See* Indirect's Rsp. at 5.  However,
     the proposed stay is no more indefinite than that ordered by Judge Illston in TFT-LCD.  *See*
26   Exhibit 3 to USA's Memo of P&A, Doc. #68-1(*In re: TFT-LCD Antitrust Litigation*, No. M-07-
     1827 SI (N.D. Cal.), Order Granting United States' Motion to Stay Discovery (September 25,
27   2007), at 2. (Order staying virtually all discovery "[u]ntil further order of the Court.")).

28   United States' Reply
     M:10-2143 VRW
                                            - 4 -

1   facts of this case, similar stays have been entered in the DRAM, SRAM, TFT-LCD, and CRT

2   civil cases. *See* USA's Memo of P&A, Exhibits 1 - 4, Doc. #68-1.

3          The stay proposed by the government here is most analogous to the stay stipulated to by

4   the parties and entered by the Court in CRT.[3] The length of the requested stay is longer than that

5   originally requested in CRT. However, the length of the requested stay closely tracks what has

6   actually happened in the CRT matter. The parties in CRT have stipulated to no fewer than three

7   extensions and, in doing so, have stayed discovery (to varying degrees) for a period approaching

8   24 months (with document discovery being stayed for a total of eighteen months). *Id.* at Exhibit

9   4. In addition, language in the proposed stay relating to the prohibition on discovery relating to

10  grand jury proceedings and communications with the government comes directly from the

11  stipulated stay in CRT. *Id.* The parties there agreed to forgo discovery of such communications.

12  Plaintiffs have not articulated any rationale as to why they stipulated to a stay on discovery of

13  such communications in the CRT matter, but cannot do so here. The government, consistent

14  with its position in CRT, believes that these categories of discovery are potentially damaging to

15  the government's ability to prosecute cases effectively, are unnecessary for the effective

16  prosecution of the civil litigation, and should be off limits.

17         The stay proposed by the government specifically includes "translations produced to the

18  United States" as part of the definition of "communications with the United States." *See*

19  [Proposed] Order Granting the United States' Motion for a Limited Stay of Discovery (Doc. #68-

20  2). This explicit reference to translations follows Judge Illston's Order in the TFT-LCD civil

21  cases, holding that translations produced to the government fall within the definition of

22  "communications with the United States." *See In re: TFT-LCD Antitrust Litigation*, No. CV-07-

23  1827-SI (N.D. Cal.), Order Granting in Part and Denying in Part Direct Plaintiffs' Objections to

24

25

_____

26         [3]Many of the counsel representing plaintiffs in this civil litigation represent plaintiffs in
    the CRT civil litigation and are signatories to the stipulation to stay discovery there, including
27  lead counsel for Direct Purchaser Plaintiffs, Saveri & Saveri Inc.

28  United States' Reply
    M:10-2143 VRW
                                        - 5 -

1    Special Master's Report and Recommendation Regarding Translations; Adopting Report and

2    Recommendation (January 21, 2010) (Doc. #1493).

3        **C.**     **Direct Purchaser Plaintiffs Fail To Give Any Weight to What Should Be a**

4              **Critical Factor in Deciding Whether To Issue a Stay**

5        Under the fifth *Molinaro* factor, a critical factor in deciding whether to issue a stay is the

6    interest in protecting the criminal investigation. *See Molinaro*, 889 F.2d at 903. Plaintiffs fail to

7    give any weight to the public's interest in effective criminal enforcement. As stated in the

8    government's opening brief, the DOJ's and the public's interest in a stay are twofold: "(1) to

9    ensure that the liberal discovery laws under civil cases are not improperly used for criminal

10    discovery; and (2) to ensure that information gathered by the government and presented to the

11    grand jury is not disclosed." *See* USA's Memo of P&A at 7. In fact, the interest of the

12    government in protecting its criminal investigation should be afforded great weight. *See*

13    *Bureerong v. Uvawas*, 167 F.R.D. 83, 86-87 (C.D. Cal. 1996). In light of that, and the well-

14    established principle that it is in the public interest that prosecution of a criminal case is entitled

15    to precedence over the rights of civil litigants when application of liberal discovery rules would

16    circumvent the more limited rules of criminal discovery, a limited stay of discovery is justified.

17    *See Osband v. Woodford*, 290 F.3d 1036, 1042-43 (9th Cir. 2002) (quoting *McSurely v.*

18    *McClellan*, 426 F.2d 664, 671-72 (D.C. Cir. 1970) ("[C]ivil discovery may not be used to subvert

19    limitations on discovery in criminal cases, either by the government or by private parties.");

20    *Campbell v. Eastland*, 307 F.2d 478, 487 (5th Cir. 1962) ("A litigant should not be allowed to

21    make use of the liberal discovery procedures applicable to a civil suit as a dodge to avoid the

22    restrictions on criminal discovery and thereby obtain documents he would not otherwise be

23    entitled to for use in his criminal suit.").

24        Direct Purchaser Plaintiffs brush aside the government's concerns and state summarily

25    that prosecution of the civil case will not hinder the DOJ's investigation. *See* Direct's Opp. at

26    18. The government's concern that liberal civil discovery rules will be used to circumvent the

27    criminal discovery rules is not a "hypothetical parade of horribles." *Id.* Plaintiffs know full well

28

United States' Reply
M:10-2143 VRW

that the full discovery requirements under the FRCP would result in Defendants receiving documents and other information from codefendants that have a direct bearing on the criminal investigation. Assuming the Defendants in question are subjects of the criminal investigation, they would reap the benefits of civil discovery at the expense of the government's criminal investigation. Under the Federal Rules of Criminal Procedure, subjects of the investigation would not be entitled to any discovery pre-indictment. *See* Fed. R. Crim P. 16. Furthermore, depositions are not generally permitted under the criminal rules even after indictment. To the extent any Defendant is permitted to take depositions in the civil case that bear on the criminal investigation, that Defendant would be receiving a benefit not permitted to them under the criminal rules. A limited stay of discovery would, for the time being, prevent Defendants from taking civil discovery and would permit the government to push its criminal case forward.

It is purely speculative to assume, as Plaintiffs do, that Defendants are already sharing documents and other information (*See* Direct's Opp. at 18), but it is a certainty that Defendants will get each other's documents and other information through civil discovery. Defendants have interests that vary. Some will no doubt enter into joint defense agreements, but others may wish to cooperate with the government. Cooperators, in an effort to get the most benefit from their cooperation, would likely decline to share documents with their fellow Defendants, opting instead to offer the documents to the government as part of their cooperation.

### D.    A Criminal Conviction Would Aid Plaintiffs

Direct Purchaser Plaintiffs argue that "tethering" the civil case to the criminal case in this matter is unfair. *See* Direct's Opp. at 12. This argument is fundamentally flawed, given the fact that the cases brought by Plaintiffs postdate and, in fact, stem directly from the grand jury investigation looking into anitcompetitive activity in the optical disk drive market. Regardless, it is undeniable that a criminal conviction, whether reached by plea agreements or trial, would benefit civil plaintiffs. Granted, the grounds upon which a defendant's conviction stand might be narrower than the allegations in a civil suit, but, as to the portions of the case that are in parallel, civil plaintiffs would not have to prove liability.

United States' Reply
M:10-2143 VRW

- 7 -

**E.**     **Discovery Relating to Overseas Documents**

Direct Purchaser Plaintiffs argue that they have the ability, through discovery, to obtain documents outside the United States and therefore outside the government's subpoena power. *See* Direct's Opp. at 14. Regardless of the reach of Plaintiffs' civil discovery powers, the government's requested stay would cover discovery outside the United States. The government believes that documents and other evidence relevant to its investigation do exist outside the United States. The government's interest in preventing premature discovery from moving forward on evidence outside the United States is as compelling as the case for documents inside the United States. In fact, given the nature of international cartel cases, evidence located outside the United States is often more important than evidence located within the United States.

**F.**     **Civil Discovery Threatens the Integrity of the Grand Jury**

Were the Court to adopt the position advocated by Direct Purchaser Plaintiffs regarding a stay, the integrity of the grand jury process would be threatened. The probability of Plaintiffs and Defendants deposing witnesses and asking questions that go to the heart of what the grand jury is investigating is quite high. *See* Majalya Declaration at ¶ 38. Witnesses could be asked a range of questions that could reveal whom the grand jury is targeting and what questions the grand jury has been asking certain witnesses. The requested stay would prevent these types of inquiries and would serve to protect the grand jury process. Plaintiffs have articulated no reason why such questioning should not be foreclosed, given that questions relating to the substance of what any particular witness actually knows or has personally done are perfectly acceptable.

////

///

///

///

///

///

United States' Reply
M:10-2143 VRW

III.    **Conclusion**

For the foregoing reasons and the reasons stated in the United States' previous filings relating to its Motion for a Limited Stay of Discovery, the United States respectfully requests that the Court order a limited stay of discovery as specified in the Proposed Order (Doc. #68-2), to be followed by staged discovery on a schedule to be determined pending a progress report by the United States to the Court.

Dated: June 10, 2010                          Respectfully submitted,

                                              /s/ Sidney A. Majalya
                                              Sidney A. Majalya
                                              Attorney, San Francisco Office
                                              Antitrust Division
                                              U.S. Department of Justice

United States' Reply
M:10-2143 VRW

# CERTIFICATE OF SERVICE

I, Liliana C. Vallejo, certify:

That I am a citizen of the United States and employed by the United States Department of Justice, Antitrust Division, at 450 Golden Gate Avenue, Room 10-0101, San Francisco, California 94102; I am over the age of eighteen years; and I am not a party to the within action.

That, on June 10, 2010, I electronically filed with the Clerk of the United States District Court, Northern District of California, using its ECF system, the following documents:

**United States' Reply to Plaintiffs' Opposition to Motion for a Limited Stay of Discovery.**

Under N.D. Cal. Local Rule General Order 45, all parties appearing in this matter will receive an electronic copy of said filed documents.

I declare under penalty of perjury, under the laws of the United States of America, that the above is true and correct.

Executed on June 10, 2010 at San Francisco, California.


/s/ Liliana C. Vallejo
Liliana C. Vallejo

CERTIFICATE OF SERVICE
M:10-2143 VRW

# EXHIBIT 16

1
Bruce L. Simon (State Bar No. 096241)
PEARSON, SIMON, SOTER, WARSHAW & PENNY, LLP
2
44 Montgomery Street, Suite 1200
San Francisco, CA 94104
3
Telephone:     (415) 433-9000
Facsimile:     (415) 433-9008
4

5
Richard M. Heimann (State Bar No. 063607)
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
275 Battery Street, 30th Floor
6
San Francisco, CA 94111-3339
Telephone:     (415) 956-1000
7
Facsimile:     (415) 956-1008

8
*Interim Co-Lead Counsel for the Direct Purchaser Plaintiffs*

9
Francis O. Scarpulla (State Bar No. 41059)
ZELLE HOFMANN VOELBEL MASON &
10
GETTE LLP
44 Montgomery Street, Suite 3400
11
San Francisco, CA 94104
Telephone:     (415) 693-0700
12
Facsimile:     (415) 693-0770

13
*Interim Co-Lead Counsel for the Indirect Purchaser Plaintiffs*

14
Albert J. Boro, Jr. (State Bar No. 126657)
PILLSBURY WINTHROP SHAW PITTMAN LLP
15
50 Fremont Street
San Francisco, CA 94105
16
Telephone:  (415) 983-1000
Facsimile:  (415) 983-1200
17
*Defendants' Liaison Counsel*

18

19
UNITED STATES DISTRICT COURT

20
NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

21
IN RE:  TFT-LCD (FLAT PANEL)              Master File No. M:07-1827 SI
22
ANTITRUST LITIGATION                      MDL No. 1827

23
This Document Relates To:                 **JOINT RECOMMENDATION AND
24                                          [PROPOSED] ORDER RE STAY OF
ALL ACTIONS                               DISCOVERY**
25

26

27

28
                                          JOINT RECOMMENDATION AND[PROPOSED]
                                          ORDER RE STAY OF DISCOVERY
                                          MASTER FILE NO. M:07-1827 SI, MDL NO. 1827

# JOINT RECOMMENDATION

The U.S. Department of Justice, the Interim Co-Lead Counsel for the Direct Purchaser Plaintiffs and the Proposed Class, one Interim Co-Lead Counsel for the Indirect Purchaser Plaintiffs and the Proposed Class, and the Defendants[1] make this joint recommendation to the Court to modify the September 25, 2007 Order Granting the United States' Motion to Stay Discovery, and request that the Court adopt the attached [Proposed] Order.

DATED: May 21, 2008                    **UNITED STATES DEPARTMENT OF JUSTICE**


By:  /s/ Niall E. Lynch
      NIALL E. LYNCH
*Intervenor United States*

DATED: May 21, 2008                    **PEARSON, SIMON, SOTER, WARSHAW &
PENNY, LLP**


By:  /s/ Bruce L. Simon
      BRUCE L. SIMON
*Interim Co-Lead Counsel for the Direct Purchaser
Plaintiffs and the Proposed Class*

DATED: May 21, 2008                    **LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP**


By:  /s/ Richard M. Heimann
      RICHARD M. HEIMANN
*Interim Co-Lead Counsel for the Direct Purchaser
Plaintiffs and the Proposed Class*

DATED: May 21, 2008                    **ZELLE HOFMANN VOELBEL MASON &
GETTE LLP**


By:  /s/ Francis O. Scarpulla
      FRANCIS O. SCARPULLA
*Interim Co-Lead Counsel for the Indirect Purchaser
Plaintiffs and the Proposed Class*

---

[1] This Joint Recommendation reflects the consensus view of the Defendants and Plaintiffs, except for one Interim Co-Lead Counsel for the Indirect Purchaser Plaintiffs who objects to it in its entirety.

DATED: May 21, 2008

**PILLSBURY WINTHROP SHAW PITTMAN LLP**


By:   /s/ Albert J. Boro, Jr.
            ALBERT J. BORO, JR
*Defendants' Liaison Counsel*


      Pursuant to General Order 45, Part X-B, the filer attests that concurrence in the filing of this document has been obtained from Niall E. Lynch, Bruce L. Simon, Richard M. Heimann, and Francis O. Scarpulla.

JOINT RECOMMENDATION AND [PROPOSED]
ORDER RE STAY OF DISCOVERY
MASTER FILE NO. M:07-1827 SI, MDL NO. 1827

1  **PROPOSED ORDER**

2

3          The Order of September 25, 2007 (the "Stay Order"), Granting the United States'

4  Motion to Stay Discovery is modified as follows:

5          1.      Upon entry of this Stipulation as an order of the Court, the Stay Order shall no

6  longer prohibit discovery in this case, except as set forth below:

7          2.      Until January 9, 2009, the Stay Order shall continue to prohibit discovery seeking

8  evidence of an alleged conspiracy in violation of Section 1 of the Sherman Act involving TFT-

9  LCD panels and finished products containing TFT-LCD panels, including discovery that refers,

10 reflects or relates to any understandings, agreements, contacts, meetings, or communications by

11 and between defendants.   The Stay Order does not prohibit third party discovery; discovery

12 concerning the purchase or sale of TFT-LCD panels and finished products containing TFT-LCD

13 panels by Defendants to third parties, one another, or by or between a Defendants' subsidiaries,

14 joint ventures, or affiliates; discovery concerning the purchase or sale of TFT-LCD panels and

15 finished products containing TFT-LCD panels by or to putative class members; and discovery

16 concerning a Defendants' (or its subsidiaries, joint ventures, or affiliates') production capacity,

17 capacity utilization, production costs, inventory levels, sales volumes, product lines, profitability,

18 competitive position, market share, sales terms and conditions, costs, prices, shipments,

19 customers, or distributors, to the extent consistent with the first sentence of this paragraph.  By

20 way of example and not limitation, the Stay Order as modified herein would not prohibit the

21 production of evidence in discovery relating to a sales agreement between two defendants for

22 TFT-LCD panels, but would prohibit the production of evidence in discovery concerning

23 communications between the same two defendants that relate to an alleged violation of Section 1

24 of the Sherman Act, even if such communications occur in the context of the discoverable sales

25 agreement between those defendants.  (The reference to products containing TFT-LCD panels

26 herein is not intended to have any bearing on the parties' pending dispute as to whether discovery

27 concerning such products should otherwise be permitted.)

28         3.      The Stay Order shall continue to prohibit all discovery, including without

- 3 -

1   limitation, document requests, interrogatories, requests for admissions, or depositions that refer,

2   reflect or relate to any party's or witness' communications with the United States or with the

3   grand jury (including, but not limited to, the fact or the existence of such communications),

4   relating to the grand jury proceedings concerning the TFT-LCD industry, except as provided for

5   in Paragraph 5 or by order of the Court upon good cause shown and consistent with governing

6   law.

7         4.      Notwithstanding the foregoing, the fact that information or a document was

8   communicated to the United States or the grand jury during the course of grand jury proceedings

9   does not make the information or document non-discoverable from defendants.

10        5.      On January 9, 2009, each served defendant who has appeared in this case and

11  produced documents to the grand jury shall produce to the other parties (to extent they or their

12  claims have not been dismissed) all documents produced to the grand jury without a discovery

13  request. Every 90 days thereafter, each served defendant who has appeared in this case and

14  produced documents to the grand jury shall produce to the other parties (to extent they or their

15  claims have not been dismissed), on a rolling basis, all documents produced to the grand jury

16  during the preceding 90 days.  Notwithstanding the foregoing, (i) with respect to documents

17  seized pursuant to a search warrant or documents produced in response to grand jury subpoenas

18  served after the date of this Stipulation, nothing in this Stipulation and Order shall prevent any

19  defendant from objecting to production on appropriate grounds under the Federal Rules of Civil

20  Procedure; (ii) defendants reserve their rights to claim that documents are protected from

21  disclosure by the attorney-client privilege, attorney work product doctrine, or similar privileges or

22  protections, and shall list any such documents and the basis for the claim on a privilege log to be

23  produced on the same date as the production from which they were withheld; and (iii) to the

24  extent documents contain private information concerning an individual, the production of which

25  would violate an individual's reasonable expectations of privacy, a defendant shall list any such

26  documents and the basis for the claim on a privacy log to be produced on the same date as the

27  production from which they were withheld, and shall make such document available for review

28  by counsel for the other parties in the office of defendant's counsel or at a mutually agreeable

JOINT RECOMMENDATION AND [PROPOSED]
ORDER RE STAY OF DISCOVERY
MASTER FILE NO. M:07-1827 SI, MDL NO. 1827

location in order to resolve such privacy claims.

6.     The Stay Order does not prohibit class certification discovery prior to January 9, 2009, except as prohibited by the other terms of this stipulation.

7.     The Stay Order does not prohibit the service of interrogatories, requests for admissions, requests for production of documents, and deposition notices; except to the extent that such discovery requires the production of discovery which is stayed hereunder, substantive responses shall not be produced before January 9, 2009.  However, the Stay Order does not prohibit formal responses to such discovery or the resolution of the Parties' objections to such discovery pursuant to the discovery dispute resolution procedures already adopted by the Court, so as to minimize any delay in discovery caused by the Stay Order.  All parties retain all rights under the Federal Rules of Civil Procedure and all other applicable rules and laws.

8.     All formal discovery requests shall be served on the U.S. Department of Justice ("DOJ").  The DOJ and any party may object to discovery on the basis that the requested discovery seeks information or documents prohibited under this stipulation.  Any such objections shall be subject to the discovery dispute resolution procedures already adopted by the Court.

9.     All parties and the United States reserve their rights with respect to discovery conducted after January 9, 2009.  However, any party or the United States can request a modification of the discovery permitted hereunder upon a showing of good cause.

SO ORDERED.

DATED: _5/27/08_____

The Honorable Susan Illston
United States District Court Judge

JOINT RECOMMENDATION AND [PROPOSED]
ORDER RE STAY OF DISCOVERY
MASTER FILE NO. M:07-1827 SI, MDL NO. 1827

# EXHIBIT 17

```
 1                  UNITED STATES DISTRICT COURT

 2                NORTHERN DISTRICT OF CALIFORNIA

 3             BEFORE THE HONORABLE SUSAN ILLSTON, JUDGE

 4

 5

 6    ------------------------------)
                                    )
 7    IN RE:  TFT (FLAT PANEL)      )
                                    )         No. M C-07-1827 (SI)
 8    ------------------------------)
                                       San Francisco, California
 9                                     Tuesday, September 30, 2008
                                          (21 pages)
10

11
                      TRANSCRIPT OF PROCEEDINGS
12
      APPEARANCES:
13
         (via telephone)
14

15    For Plaintiffs:         BRUCE LEE SIMON
                               Pearson, Simon, Soter, Warshaw &
16                               Penny, LLP
                               San Francisco, California
17
                               JOSEPH M. ALIOTO
18                             Alioto Law Firm
                               San Francisco, California
19
                               FRANCIS ONOFREI SCARPULLA
20                             MATTHEW R. SCHULTZ
                               Zelle, Hofmann, Voelbel, Mason &
21                               Gette, LLP
                               San Francisco, California
22
                               RICHARD MARTIN HEIMANN
23                             BRENDAN PATRICK GLACKIN
                               Lieff, Cabraser, Heimann &
24                               Bernstein, LLP
                               San Francisco, California
25
```

```
1    APPEARANCES (cont.):

2    For Plaintiffs:          ELIZABETH C. PRITZKER
                              Gerard, Gibbs LLP
3                             San Francisco, California

4                             JACK WING LEE
                              Minami Tamaki LLP
5                             San Francisco, California

6
     For Defendants:          ALBERT J. BORO JR.
7                             JACOB R. SORENSEN
                              Pillsbury, Winthrop, Shaw,
8                               Pittman LLP
                              San Francisco, California
9
                              KENT MICHAEL ROGER
10                            Morgan, Lewis & Bockius LLP
                              San Francisco, California
11
                              GEORGE DOMINIC NIESPOLO
12                            JENNIFER FISHER
                              Duane Morris LLP
13                            San Francisco, California

14                            JAMES L. McGINNIS
                              Sheppard, Mullin
15                            San Francisco, California

16

17

18

19

20

21

22

23

24

25
```

1   <u>Tuesday, September 30, 2008</u>

2                                                          (2:05 p.m.)

3            (In chambers; via telephone:)

4            THE COURT:  Okay, Counsel.  For plaintiff I have Miss

5   Pritzker, Mr. Simon, Mr. Lee and Mr. Scarpulla, and

6   Mr. Schultz.

7            MR. ALIOTO:  And Mr. Alioto, your Honor.

8            THE COURT:  Mr. Alioto, Mr. Heimann and Mr. Glackin.

9   Is that everybody on the plaintiff's side?

10           MR. SIMON:  Yes, your Honor.

11           MR. HEIMANN:  Yes, your Honor.

12           THE COURT:  And for defendants, Mr. Boro, Mr. Roger,

13   Mr. -- are these all Mr.'s -- Mr. Sorensen, Mr. Niespolo,

14   Mr. McGinnis, Ms. Fisher.  Is that everybody?

15           MS. FISHER:  That's everybody, your Honor.

16           THE COURT:  Okay.  Well, I am wondering why we've all

17   gathered together.  I did read the materials that you submitted

18   and what I would like to know is what is the actual dispute

19   that we're talking about here.

20           MR. SIMON:  I think that really there's one major

21   thing in dispute -- and I don't think it's in dispute,

22   really -- which is the issue from the direct plaintiffs'

23   perspective, the issue of finished products.

24           THE COURT:  Okay.

25           MR. SIMON:  And I think the way --

```
 1              THE COURT:  Just right now tell me what the issue is.
 2    I suspected that was going to be one.  Is there anything else?
 3              MR. SIMON:  Well, there's two issues with respect to
 4    marketing and distribution channels, as well as customers and
 5    suppliers, which I think events have pretty much overtaken them
 6    in light of the new stay order that we all stipulated to and in
 7    light of your motion to dismiss ruling and the discovery that's
 8    ongoing, because those really related to the first set of
 9    discovery that we did back at the time the original order was
10    entered, and we now have new discovery going on with respect
11    to, you know, the later stipulated-to modified stay order.
12              So even though those -- there are parts of those
13    which, you know, are not in dispute, there's at least one minor
14    part where it comes down to the, you know, identification of
15    sales, marketing, distribution channels, and customers,
16    suppliers or their employers is limited to independent third
17    parties.  I think that's an independent purchaser issue, the
18    limitation to independent third parties.  That, you know, is
19    probably technically in dispute, but not a particularly big
20    item in the scheme of things as we sit here today.
21              THE COURT:  Okay.
22              MR. SIMON:  So I think the one thing, if I had to
23    predict, from the direct purchaser plaintiffs' perspective,
24    finished products is not in dispute, but I suspect that's the
25    one thing maybe defendants would probably say is.  Otherwise, I
```

1    think the order, you know, can be entered as-is, as was

2    suggested in our proposed order.

3            We do have the one issue, but it's not in dispute, but

4    nonetheless it's an issue for some future date, that

5    Judge Smith did limit the discovery to two years before and

6    after the dates in the grand jury subpoena -- subpoenas.  We

7    don't know those dates yet.  So, you know, we're not disputing

8    that at this point, but everybody's reserving their rights with

9    respect to the time period when, you know, full merits

10   discovery opens up and we get the grand jury documents on

11   January 9th.

12           THE COURT:  So what do the defendants say the dispute

13   is?

14           MR. BORO:  Al Boro, your Honor.  This is Al Boro.  Our

15   view was that the request by the direct purchasers and indirect

16   purchasers to modify the Special Master's order to basically

17   strike from it the provisions dealing with the customers,

18   suppliers, employees, the type of data and revisions dealing

19   with the limitation and type of goods, is not proper.  That the

20   order is fine in our view and should have been adopted as-is.

21           But to the extent that the order needs to be modified,

22   that should be sent to the Special Master in the first

23   instance.

24           THE COURT:  What, to have a petition for rehearing?

25   Is that what you're saying?

```
 1        MR. BORO:  Yeah, rehearing in light of the Court's
 2   August 25th order to decide, to let the Special Master in the
 3   first instance frame what should be the ongoing discovery
 4   order.  The way that the plaintiffs have set up their proposed
 5   order really just says that the Special Master's interpretation
 6   of various phrases are moot, it provides no real guidance to
 7   the parties as to what discovery is proper or not, and just
 8   seems to be a shorthand way of addressing this instead of
 9   asking the Special Master to refine her order now in light of
10   your August 25th order.
11        THE COURT:  Well, I thought what they were saying is
12   that the stipulated order that I entered, based on all the
13   parties' agreements, undercut the need for some of the
14   definitional parts of Judge Smith's order.
15        MR. SIMON:  That is what we're saying, your Honor, and
16   with respect to finished products, your motion to dismiss
17   order.
18        THE COURT:  I don't want to hear about that yet.  I
19   want to hear about this other thing.
20        MR. SIMON:  That is correct, how you stated it.
21        MR. BORO:  And your Honor, I think the stipulated
22   order allows generally for discovery to occur in the case.  But
23   it doesn't really address, for example, the salutary aspects of
24   the Special Master's order of saying how the data should be
25   produced:  Monthly, quarterly and yearly statistical data.  Nor
```

1  the, you know, what sort of customer supplier data is relevant.

2  So our view is really this should be taken up by the Special

3  Master, provide the parties some guidance, instead of what we

4  ruled as an order that we were never asked to confer on, that

5  was just submitted at the 11th hour.

6      MR. SIMON: Bruce Simon again. I don't quite

7  understand what Mr. Boro just said about the terms of how it's

8  produced and those things not being clear because our order

9  simply says, Modify certain terms. The others remain in place,

10  including the terms by which they produce their documents. And

11  in fact, we are getting produced documents that comply with

12  those terms right now. So I'm not sure there's any confusion

13  whatsoever on the defense side, and that's the subject of

14  ongoing discussions.

15      The other thing is is that, you know, we really would

16  be putting into place like almost like a triple track on this.

17  We had much meet and confer letters exchanged. Judge Smith was

18  very helpful in guiding us. Then we had the hearing, we made a

19  ruling. We entered into a stipulation, specifically setting a

20  date when we would respond to this that triggered off your

21  order on the motion to dismiss. Plaintiffs did exactly what

22  the stipulation said, which filed a response on the seventh

23  day.

24      Defendants did not do exactly what the stipulations

25  said and didn't file their response in a timely manner, and now

```
 1   what they want to do is kick it back to the Special Master to
 2   make rulings, which then we'll be back on the phone with you at
 3   some later date having the same discussion about things which
 4   don't really need to have all that time and effort spent on
 5   them.
 6           So that's the direct purchaser plaintiffs' view, at
 7   least, and I think the indirect purchasers join in that.
 8           THE COURT:  What concerns me is this:  Judge Smith
 9   issued her ruling back in May.  Then the stipulated order that
10   you requested I sign, which I did sign, was entered after Judge
11   Smith's ruling, correct?
12           MR. SIMON:  Correct.
13           MR. BORO:  That's correct, your Honor.
14           THE COURT:  So you knew what she had said by then.
15   You then stipulate to do something.  So how can it be that
16   we're having a debate over whether or not what you stipulated
17   to changes, interprets, undoes or moots what Judge Smith
18   already did?  You know, it's just -- it's a puzzle to me.
19           I think what you should do is do what you said you
20   would do in the subsequent stipulated order, because that's
21   something I ordered and you all signed off on.  So you should
22   do that.  I think you should do the other things that
23   Judge Smith ordered that you do.
24           And the one thing I think is a legitimate open
25   question is the finished products issue.
```

1          MR. SCARPULLA:  Your Honor, this is Francis Scarpulla

2     for the indirects.  Judge Smith's order required the defendants

3     to give the indirect purchasers information about finished

4     products, but did not provide that the directs were to get the

5     same information.  However, my recollection is that one of the

6     early orders in the case, one of the early pretrial orders,

7     stated that all discovery, whether taken by the indirects or

8     the directs, was available to all parties in the case.  So

9     we're happy with it; we got it.  The only issue is whether the

10    directs get the same thing.

11         THE COURT:  Is that right, Mr. Simon?

12         MR. SIMON:  I agree that all the discovery was

13    supposed to be shared so we won't go through duplication, but

14    the order does say -- Judge Smith's original order does say

15    that identification -- this is in Paragraph III, of types of

16    products sold by the responding defendants which covers

17    finished products for the indirect plaintiffs only, so it does

18    say that.  But we think that in light of the way that the

19    subsequent order, which was entered on May 27th, which we all

20    agreed to, and despite the fact that there's a disclaimer in

21    there that nobody prejudiced their rights for any ongoing

22    discovery dispute, we do specifically -- we specifically refer

23    to TFT LCD panels and finished products, and that has been an

24    ongoing discussion since that order was entered and documents

25    are being produced, some documents are being produced related

1    to finished products, some people have agreed in that respect.

2    Other defendants haven't agreed.  So there should be no

3    question, you know, about the applicability of the order that

4    you entered on May 27th as it impacts all these discussions.

5         So I tend to agree with you, that if we just implement

6    that order, other than the finished product issue, we can go

7    forward and are going forward.

8         MR. BORO:  Your Honor, this is Al Boro for the

9    defendants.  The way we had interpreted that part of Judge

10   Smith's order was that she was saying that the only finished

11   products that she thought there was a sufficient showing to

12   have discovery on were the ones at issue in the indirect

13   purchaser case, which were televisions, computer monitors and

14   notebook computers, and not the variety -- in fact, the

15   multitude of other types of consumer goods that might happen to

16   incorporate an LCD screen.

17        THE COURT:  Was that your understanding,

18   Mr. Scarpulla?

19        MR. SCARPULLA:  We only sued for those three products

20   and only asked for information about those three finished

21   products.  TVs, laptops and monitors only, period.

22        THE COURT:  Okay.  Well, what we'll do is this:  We're

23   going to adopt what Mr. Simon said with respect to Judge

24   Smith's order, and then the subsequent stipulated order in

25   terms of just doing what those things say.  I'm going to -- I

1    believe that you can do that and you should do that.

2              The live issue is that is the finished products

3    question.  I also concur that any discovery that's produced to

4    one party should be shared among all parties.  So discovery

5    that Mr. -- that the indirects have requested concerning those

6    three categories of finished products should be provided to

7    everybody when the time comes.

8              But I'm not going to rule that -- I'm not going to

9    order that discovery with respect to all finished products be

10   opened at this time.  That's something I'm going to -- I'm not

11   going to alter what she said because we are still at a relative

12   pleading stage on that.

13             MR. SIMON:  But your Honor, does -- practically

14   speaking then, because this makes a difference about, you know,

15   how vociferously we want to argue this -- does that mean

16   whatever finished product information on those particular major

17   products that are produced, the indirects -- the directs will

18   have -- be able to use as if it's produced to them?

19             THE COURT:  Yes, that would be my expectation.

20             MR. SIMON:  One thing I'd like to say is that it is

21   very clear, since events have overtaken us a bit in our

22   discussions going forward, that since the May 27thth order that

23   you entered that we all agreed to allow for full-fledged class

24   certification discovery, which, you know, we need for class

25   certification, and in light of the defendants have made it well

```
 1    known since their motions to dismiss that they intend to oppose
 2    the class on some basis having to do with the finished product
 3    issue, that it would be a little inconsistent to say, you know
 4    that we don't get the finished products, even if it's limited
 5    by the three that the indirects are asking for directly in our
 6    case to use for class certification.  Since we go first, that
 7    information is needed and it is clear that defendants are going
 8    to fight about that when we get to class cert.  So we would be
 9    coming back to you, unless we get all that information before
10    the class cert briefs are due, and saying we don't have the
11    full discovery in which -- in refuting their opposition when it
12    comes in, and I don't think we want to be six months down the
13    line when their opposition is facing us asking for discovery
14    that we could be getting right now.  That's one thing I know
15    I'm concerned about.  I know that data is something that you're
16    going to see in those papers.
17             THE COURT:  Well, if -- whatever discovery is provided
18    to the indirect purchasers based on the existing orders should
19    be provided to the directs as well.  And as far as I'm
20    concerned, it can be used however any evidence can be used in
21    this case.  If there's a separate issue, Mr. Simon, that
22    there's a special kind of defense they're going for make to the
23    class certification request, that's based on data with respect
24    to finished products that you don't have or that are beyond the
25    three categories that Mr. Scarpulla mentioned, that's an issue
```

1    that I think independently just needs to be floated, and you

2    can float it.  I would think you'd start with Judge Smith on

3    that one.  But it seems to me that's a distinct discovery issue

4    that you should just deal with.

5        MR. SIMON:  I understand, your Honor.

6        THE COURT:  And I certainly am going to make sure that

7    you get whatever discovery you need so that the class questions

8    can be fairly resolved.

9        MR. SIMON:  Could I make a request of defense counsel?

10   Maybe they could just say this on the record in front of your

11   Honor now.  We could eliminate hours of meeting and conferring

12   and letters going back and forth, much of which is going back

13   and forth behind the scenes that you haven't seen, fortunately,

14   your Honor, but if they will say on the record now that they

15   will produce the finished product information for those three

16   major categories of products, both the directs and indirects,

17   and they won't hold up Judge Smith's order or anything else as

18   an impediment to that, we probably could solve a lot of

19   discussions that are supposed to happen over the next, you

20   know, several weeks about what we're entitled to get and what

21   we're not entitled to get, and it might be what you said:  If

22   they agree to that, we could -- we could eliminate that whole

23   issue.

24       MR. BORO:  Bruce, I don't think that's a fair question

25   to pose.  As you know, just speaking for Sharp, we've already

```
 1    produced to you a few hundred thousand pages of documents and
 2    we are in the process of adding -- producing to you some sample
 3    SAP data next week, which is a very large task given the size
 4    of our client and their operations.  But each defendant's in a
 5    different position, and there is a motion pending that's going
 6    to be heard on Friday before the Special Master dealing with
 7    specific discovery issues.  So I don't think it's fair to ask
 8    us to make some commitment now or prejudgment when it's a more
 9    complicated question that involves in part what's going on on
10    Friday, and we should have this discussion on Friday before the
11    Special Master when it's been fully briefed.
12            MR. SIMON:  The discussion on Friday, your Honor, is a
13    discussion about 30(b)(6) depositions that we asked for for
14    class certification, which goes to the categories of things
15    that we all stipulated to we could do for class discovery and
16    you ordered on May 27th, 2008.  It doesn't have anything to do
17    with documents that are being produced.
18            And what we're asking -- what I'm asking specifically
19    is to eliminate a barrier which has been artificially set up by
20    some defendants that they're not going to produce any finished
21    product information until this issue that we're talking about
22    today is cleared up.  And they don't interpret your language in
23    your motion for dismiss that we need to address that issue on a
24    fuller record, when, as a factual question, when discovery is
25    completed, that's Page 8, Line 20 to Page 9, Line 2 of your
```

     1    August 25th order -- they don't interpret it that way.

     2             So if we could just get the defendants to say today,

     3    on documents purely, not depositions or anything else, that

     4    they will go ahead and produce, that they should produce, both

     5    the directs and indirects, both under Judge Smith's order and

     6    your interpretation today, we would save a huge amount of time.

     7             MR. BORO:  Bruce, but I think the posture we're at,

     8    I'm having trouble understanding what your request is.  I think

     9    the posture we're at procedurally is that Judge Smith's order

    10    has come up to be confirmed and entered by the Court.  The

    11    defendants do not object to it.  What they are objecting to is

    12    to plaintiffs' attempts to modify that order, to have an order

    13    saying various parts were moot.  And presumably the Court would

    14    now confirm Judge Smith's order, and then if plaintiffs thought

    15    that a particular defendant wasn't complying with Judge Smith's

    16    order, that's something they could bring up in the normal

    17    course.

    18             But I don't, you know, think right now, with only a

    19    few of the defendants on the line, it's proper for us to be

    20    playing the position of having to stipulate or make a

    21    representation on something on the spur of the moment.  We only

    22    have here four defendants.

    23             MR. NIESPOLO:  George Niespolo.  Let me just say that

    24    there are defendants who are not represented here who I assume

    25    Bruce is talking about.  And I certainly am in no position to

1   make an agreement with regard to a dispute that Bruce Simon

2   might be having with that particular defendant's counsel

3   regarding the production of documents, for whatever the

4   reasons.

5           I would, you know, strongly urge that this go forward

6   on a normal basis, which is if the direct plaintiffs are having

7   a problem with regard to the production of particular

8   documents, then, you know, they have a venue and a means by

9   which to raise that issue with regard to that particular

10  defendant.

11          THE COURT: All right. Tell you what. If you're

12  going to be seeing Judge Smith on Friday, you can tell her that

13  what I said was as follows: I thought her order was terrific

14  and I told her thank you. I adopt it. I also recognize that

15  there was an order which followed it which was done by

16  stipulation of the parties and entered by me and I'm directing

17  you all to follow that as well. I'm -- and you may all share

18  with her that to the extent that discovery is produced on, for

19  example, the three categories of finished products to the

20  indirect purchaser plaintiffs, it should also be produced to

21  the direct purchaser plaintiffs, because it's my view that all

22  discovery produced in this case may be used in this case. And

23  that if there's a separate set of issues concerning whether

24  other -- data with respect to other finished products needs to

25  be provided now to the direct purchaser plaintiffs, that needs

```
 1    to be -- you need to address that issue in the first instance
 2    with her.  But we are farther down the road than we were when
 3    she issued her order in May in terms of the rulings on the
 4    motion -- the prior motion for dismiss.  So she should take
 5    that into account.
 6              So can you tell her those things on Friday?  And on
 7    Friday presumably anybody who wants to be there is going to be
 8    there.
 9              MR. SIMON:  Right.  I know I will be there on behalf
10    of the direct purchasers as well as somebody from Richard's
11    office, and we'll be happy to communicate that then I'm sure.
12              THE COURT:  I was thinking of Mr. Niespolo's point.
13    There are defendants there who aren't here.  Everybody knows
14    about Judge Smith's hearing.
15              MR. SIMON:  There were only three defendants subject
16    to the motions on Friday.  I believe it's Sharp, Samsung and
17    Hitachi, and they have specific issues.  So we're not going to
18    have the full bevy of "defendants", quote-unquote, represented
19    with a ripe issue in front of Judge Smith on Friday.  But
20    certainly those three defendants have been some of the most
21    vocal people about finished products as well.
22              We don't have all the finished product information.
23    So I think it's appropriate to communicate that.
24              THE COURT:  You can start there.  And then do what you
25    have to do after that.  But --
```

 1          MR. GLACKIN:  Brendan Glackin from Lieff, Cabraser.

 2   After we have the transcript of this call, would it be

 3   appropriate for us to prepare an agreed form of order for you

 4   to sign?

 5          THE COURT:  An agreed form?  If you give me an agreed

 6   form, I'll sign it, yes.

 7          MR. BORO:  And I believe, your Honor, though, that the

 8   procedural posture of that is just confirming the Special

 9   Master's order.

10          THE COURT:  I believe, Mr. Boro, that the procedural

11   posture we're at is we're doing what I just said, which is I

12   confirm the Special Master's order; I urge you all in addition

13   to comply with the subsequent order that I issued which had

14   some agreed-upon language presented by all the parties to me.

15   And that the issue was raised about the -- to confirm that

16   there is a prior order out there that says the discovery

17   produced to one party may be produced to all parties, and I'm

18   confirming that.

19          And I'm also further directing that when you talk to

20   Judge Smith, if this question of finished product data

21   continues to be a problem, and particularly if it's going to be

22   a problem in light of the class certification motions which

23   will ultimately be filed, that that should be addressed with

24   her.

25          MR. BORO:  Okay.  Thank you, your Honor.  I

 1    understand.  And just so you have context on the finished

 2    product issue, there are, in our view, potentially, you know,

 3    tens and tens of products out there, very different, and that's

 4    why it's an issue.  It's not sufficient just to say "finished

 5    products", period.

 6                THE COURT:  All right.  I recognize there's going to

 7    be subtleties there that I don't know anything about.  I'm just

 8    saying you should start on that.  But I certainly don't want to

 9    find ourselves impeded or delayed in any way on the class

10    questions by virtue of -- because we didn't think of that now.

11    So I think you should get started on that.

12                MR. BORO:  Thank you, your Honor.

13                MR. SIMON:  Your Honor, could we in light of the fact

14    we're going Friday to see Judge Smith, ask your court reporter

15    there to prepare a transcript so there's no question about what

16    you said on the record?

17                MR. BORO:  Everybody understands it --

18                THE COURT:  Hush, now.

19                (Off the record)

20                THE COURT:  She says she can get it to you by

21    tomorrow.  So you all owe her a cup of coffee.

22                MR. SIMON:  We will give her a cup of coffee and

23    whatever else we need to.

24                THE COURT:  Thank you all.

25                MR. SIMON:  Thank you, your Honor.

1          MR. BORO:  Thank you.

2          MR. ALIOTO:  Thank you.

3          MR. NIESPOLO:  Thank you.

4          (Adjourned)

5                              oOo

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                    CERTIFICATE OF REPORTER

3

4          I, Connie Kuhl, Official Reporter for the United

5    States Court, Northern District of California, hereby certify

6    that the foregoing proceedings in Case No. M C-07-1827 (SI),

7    IN RE: TFT (FLAT PANEL), were reported by me, a certified

8    shorthand reporter, and were thereafter transcribed under my

9    direction into typewriting; that the foregoing is a true record

10   of said proceedings as bound by me at the time of filing.

11         The validity of the reporter's certification of said

12   transcript may be void upon disassembly and/or removal from the

13   court file.

14                    *Connie Kuhl*

15         _____

16              Connie Kuhl, RMR, CRR

17            Wednesday, October 1, 2008

18

19

20

21

22

23

24

25

# EXHIBIT 18

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

CIVIL PRETRIAL MINUTES

Date: 9/30/08

Case No.   M-07-1827 SI           Judge:  SUSAN ILLSTON

Title: IN RE: TFT-LCD (FLAT PANEL) ANTITRUST LITIGATION

Attorneys: E. Pritzker, Alioto, Lee, Scarpula, Heimann, Simon, Glackin, Boro, Roger, Sorensen, McGuinnis, Fisher, Niespolo, Schultz

Deputy Clerk:  Tracy Sutton  Court Reporter: none

**PROCEEDINGS**

1) Telephone Conference - HELD
2) _____
3) _____

Order to be prepared by:  ( )Pltf    ( )Deft    ( )Court

Disposition :  ( ) GRANTED, ( ) DENIED, ( ) GRANTED/DENIED IN   ( )   SUBMITTED
                                                          PART

Case continued to _____ for Further Case Management Conference

Case continued to

ORDERED AFTER HEARING:

 Any discovery produced shall be provided to all parties.  The parties shall comply with the terms of both Judge Smith's earlier discovery order as well as the May 2008 discovery order that was stipulated to by the parties.

The discovery regarding finished products that is produced to the indirect purchaser plaintiffs may be used by the direct purchaser plaintiffs.

The parties should bring any other disputes regarding the need for additional discovery re finished products to Judge Smith in the first instance.