**SAVERI & SAVERI, INC.**
706 SANSOME STREET
SAN FRANCISCO, CALIFORNIA 94111
TELEPHONE: (415) 217-6810
TELECOPIER: (415) 217-6813

*Trump Alioto Trump & Prescott*
ATTORNEYS LLP
2280 Union Street
San Francisco, California 94123
(415) 563-7200
FAX (415) 346-0679

September 10, 2010

Honorable Charles A. Legge
JAMS
Two Embarcadero Center, Suite 1500
San Francisco, CA 94111

Re:     *In Re: Cathode Ray Tube (CRT) Antitrust Litigation,* MDL No. 1917
        (N.D. Cal.)--Letter Brief On Motion To Compel Discovery Of
        Information Antedating November of 2003

Your Honor:

Pursuant to the procedure set forth at the August 24, 2010 status conference regarding discovery, and in the Special Master's "Report Regarding Case Management Order No. 2" (Sept. 8, 2010) (Dkt. No. 754), Direct Purchaser Plaintiffs ("DPPs") and Indirect Purchaser Plaintiffs ("IPPs") (collectively "Plaintiffs") respectfully submit this letter brief motion to compel discovery against Hitachi, Ltd., Hitachi Displays, Ltd., Hitachi Asia, Ltd., Hitachi Electronic Devices (USA), Inc. and Hitachi America, Inc. (collectively the "Hitachi Defendants" or "Hitachi") with respect to discovery for the period prior to November of 2003. On the issue of discovery antedating November of 2003, Plaintiffs and the Hitachi Defendants have reached an impasse in their negotiations. This is one of three separate motions to compel that Plaintiffs are filing against Hitachi; the others relate to the separate issues of what has been called "foreign" discovery and of discovery with respect to products containing cathode ray tubes ("CRTs"), such as monitors and televisions ("CRT Products"). Each of those other motions will be addressed in separate letter briefs because they are conceptually distinct and involve different arguments. Plaintiffs have striven not to engage in duplication in these separate motions. All three are supported by the accompanying "Declaration of R. Alexander Saveri" ("Saveri Decl.").

I.      **Factual Background**

Plaintiffs' Complaints allege a worldwide conspiracy to fix the price of CRTs and CRT Products beginning in March 1, 1995 and continuing to November 25, 2007. *See* "Direct Purchaser Plaintiffs' Consolidated Amended Complaint," ¶ 1 (March 16, 2009) ("DP-CAC") (Dkt. No. 436); "Indirect Purchaser Plaintiffs' Second Consolidated Amended Complaint," ¶ 1 (May 10, 2010) (Dkt. No. 716) ("IP-CAC"). These allegations have been sustained by the Court. The Complaints further allege that the Hitachi Defendants attended at least fifteen meetings in China and Taiwan at which defendant Chunghwa Picture Tubes ("Chunghwa") was also in attendance. *See* DP-CAC ¶¶ 157-58; IP-CAC ¶174. Discovery

Hon. Charles Legge
September 10, 2010
Page 2

received by Plaintiffs to date confirms that the Hitachi Defendants were active, prominent participants in the alleged conspiracy throughout the relevant time period.  Indeed, Hitachi was referred to by its co-conspirators as the "dragon head" of the Japanese defendants.

On March 12, 2010, the DPPs served their Second Set of Requests for Production of Documents and their First Set of Interrogatories on all Defendants.  On March 25, 2010, the IPPs served their Second Set of Requests for Production of Documents on all Defendants.  Plaintiffs have defined the relevant time period for discovery purposes to be January 1, 1995 to the present for all information and documents and January 1, 1991 to the present for transactional data.

In their Responses to Plaintiffs' Requests and Interrogatories, the Hitachi Defendants objected to the relevant time period for Plaintiffs' Document Requests and Interrogatories.  *See, e.g.,* Hitachi, Ltd.'s Objection To Instruction No. 1 of the Direct Purchaser Plaintiffs' Second Set of Requests for Production of Documents.  (Saveri Decl., Ex. 2)[1]  They further objected that the relevant time period should be limited to four years before the first-filed complaint in these cases, *i.e.*, from November 26, 2003 through November 25, 2007. As a result, the Hitachi Defendants have produced a grand total of 457 pages of documents – a stack approximately one and one half inches tall. (Saveri Decl., ¶5).

Plaintiffs scheduled a telephonic meet and confer with the Hitachi Defendants on June 23, 2010.  During the meet and confer, Plaintiffs offered to narrow and focus the pre-statute of limitations period discovery to a manageable group of custodians.  Hitachi rejected this approach and adhered to its written objections to the relevant time period. Despite repeated requests from Plaintiffs, Hitachi was unable or unwilling to provide Plaintiffs with any detail regarding their alleged undue burden.

In a follow up letter dated July 12, 2010, Plaintiffs set forth the reasons why a temporal limitation on discovery is untenable and reiterated their request that Hitachi identify with specificity their purported burden. (Saveri Decl., ¶6, Ex. 4).  Plaintiffs also repeated their offer to work with the Hitachi Defendants to come up with a list of custodians by identifying those individuals likely to have knowledge of the conspiracy.

By a letter dated August 12, 2010, the Hitachi Defendants steadfastly refused to produce any documents dated prior to 2003, claiming that the "time frame proposed by Plaintiffs extends twelve years beyond the November 2003 statute of limitations" and that the search and production of documents from the requested time frame would be unduly burdensome.  Letter from Diane Webb to Rick Saveri (August 12, 2010) ("Webb Ltr.")

---

[1] Hitachi, Ltd.'s responses to Plaintiffs' First and Second Request for Production of Documents and Responses to Plaintiffs First Set of Interrogatories are attached to the Saveri Declaration as Exhibits 1 – 3.  Each of the other Hitachi Defendants - Hitachi Displays, Ltd., Hitachi Asia, Ltd., Hitachi Electronic Devices (USA), Inc. and Hitachi America, Inc. – objected to plaintiffs discovery in the same manner.

Hon. Charles Legge
September 10, 2010
Page 3

(Saveri Decl., ¶7 , Ex. 5).  Hitachi rejected Plaintiffs' offer to address their alleged burden by focusing on a limited group of custodians:  Hitachi also failed to substantiate their alleged undue burden.

Following the August 24, 2010 case management conference, the Hitachi defendants sent plaintiffs a letter attempting to mask their defiant positions and derail plaintiffs' motions to compel (Saveri Decl., Ex. 6); however, Hitachi's letter fails to advance any previous positions and only highlights their failure to meet and confer in good faith. (See Saveri Decl., Ex. 7)

In sum, the Hitachi Defendants' position appears calculated to deny Plaintiffs discovery into the most important issues in the case: their knowledge of, and participation in the alleged conspiracy.

## II.     Argument

### A.  The Legal Standard For Relevance Under The Federal Rules In General, And In Antitrust Cases In Particular, Is Extremely Broad

Under Fed. R. Civ. P. 26(b)(1), discovery may be obtained "regarding any non-privileged matter that is relevant to any party's claim or defense."  The scope of discovery under the Federal Rules is extremely broad. *Soto v. City of Concord,* 162 F.R.D. 603, 610 (N.D. Cal. 1995) ("*Soto*"). A relevant matter is "any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351 (1978) ("*Oppenheimer*"). Because discovery is designed to define and clarify the issues, it is not limited to only those specific issues raised in the pleadings. *Miller v. Pancucci,* 141 F.R.D. 292, 296 (C.D. Cal. 1992) ("*Miller*") (citing *Oppenheimer,* 437 U.S. at 351).  Rather, "the question of relevancy should be construed 'liberally and with common sense' and discovery should be allowed unless the information sought has no conceivable bearing on the case." *Soto v. City of Concord,* 162 F.R.D. at 610, citing *Miller,* 141 F.R.D. at 296.  "A party does not have to prove a prima facie case to justify a request which appears reasonably calculated to lead to the discovery of admissible evidence."  *In re Urethane Antitrust Litig.,* 261 F.R.D. 570, 573 (D. Kan. 2009) ("*Urethane*").[2]

Moreover, "[b]road discovery is permitted [in antitrust cases] because direct evidence of an anticompetitive conspiracy is often difficult to obtain, and the existence of a

---

[2] *Accord, e.g., Bell v. Lockheed Martin Corp.,* No. 08-692 (RBK/AMD), 2010 WL 2696455, at *5 (D.N.J. June 23, 2010); *Kiln Underwriting Ltd. v. Jesuit High School of New Orleans*, Nos. 06-04350, 06-05060, 06-05057, 2008 WL 4286491, at *3 (E.D. La. Sept. 8, 2008);  *In re Commercial Money Center, Inc. Equip. Lease Litig.,* No. 1:02CV16000, 2007 WL 1306591, at *4 (N.D. Ohio May 3, 2007).

Hon. Charles Legge
September 10, 2010
Page 4

conspiracy frequently can be established only through circumstantial evidence, such as business documents and other records." *In re Auto. Refinishing Paint Antitrust Litig.,* MDL No. 1426, 2004 U.S. Dist. LEXIS 29160, *8 (E.D. Pa. Oct. 29, 2004).[3]

      **B.**  **The Party Resisting Discovery Has A Heavy Burden To Establish Lack Of Relevance Or That A Request Is Unduly Burdensome**

      When the discovery sought appears relevant, the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the broad scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure. *Urethane,* 261 F.R.D. at 573.  *See Blankenship v. Hearst Corp.,* 519 F.2d 418, 429 (9th Cir. 1975) ("[u]nder the liberal discovery principles of the Federal Rules defendants [are] required to carry a heavy burden of showing why discovery [should be] denied.").

      "The party claiming that a discovery request is unduly burdensome must allege specific facts which indicate the nature and extent of the burden, usually by affidavit or other reliable evidence." *Jackson v. Montgomery Ward & Co.*, 173 F.R.D. 524, 528-29 (D. Nev. 1997).  Furthermore, even if a party is able to demonstrate burden with sufficient specificity, the burden associated with production must be disproportionate to the claims at stake in the litigation.  *See* Fed. R. Civ. P. 26(b)(2)(C)(iii) (directing courts to consider "the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues" in assessing burdensomeness).  In large antitrust cases like this one, involving an industry that generated billions of dollars in revenue *per year* during a lengthy class period, courts have refused to accept defendants' arguments based on cost burdens because of the significant claims at stake. *See, e.g., Parkdale Am., LLC v. Travelers Casualty & Surety Co. of Am., Inc.*, 2007 U.S. Dist. LEXIS 88820, at *35 (W.D.N.C. Nov. 19, 2007) (finding that a cost of $20,000 is not a sufficient burden to excuse production in a case involving a $3,000,000 insurance policy); *In re Brand Name Prescription Drugs Antitrust Litig.*, 1995 U.S. Dist. LEXIS 8281  (N.D. Ill. Jun. 13, 1995) (requiring a defendant to produce e-mails from backup tapes

---

[3] *See also Callahan v. AEV, Inc.*, 947 F. Supp. 175, 179 (W.D. Pa. 1996) ("[d]iscovery in an antitrust case is necessarily broad because allegations involve improper business conduct. . . . Such conduct is generally covert and must be gleaned from records, conduct, and business relationships."); *In re Microcrystalline Cellulose Antitrust Litig.*, 221 F.R.D. 428, 429-30 (E.D. Pa. 2004) ("[A] broad scope of discovery is particularly appropriate in antitrust litigation because, for example, relevant business documents pertaining to the antitrust conspiracy may not exist and covert behavior may have to be proven through less direct means."); *In re Aspartame Antitrust Litig.*, No. 2:06-CV-1732-LDD, 2008 WL 2275531, at *1 (E.D. Pa. May 13, 2008) ("[t]his broad scope of discovery 'has been held to be particularly appropriate in antitrust cases.'" (citation omitted)); *B-S Steel of Kan., Inc. v. Tex. Indus., Inc.*, No. 01-2410, 2003 WL 21939019, at *3 (D. Kan. July 22, 2003) (quoting *United States v. Dentsply Int'l., Inc.*, No. 99-5, 2000 WL 654286, at *5 (D. Del. May 10, 2000)).

in a large antitrust class action case despite costs ranging between $50,000 to $70,000 associated with formatting and searching the backup tapes).

### C.  The Hitachi Defendants Should Be Compelled to Produce Pre-November 2003 Discovery

Plaintiffs' request for discovery preceding November of 2003 is appropriate in this case for several reasons.

*First*, Judge Conti has denied Defendants' motions to dismiss and upheld Plaintiffs' allegations, including the allegations with respect to the length of the conspiracy and fraudulent concealment.  *See* "Order Approving and Adopting Special Master's Report, Recommendations and Tentative Rulings re Defendants' Motions to Dismiss, pp. 21-22 (March 30, 2010) (Docket No. 665) ("Approval Order") (denying Defendants' motions to dismiss based on challenges to the sufficiency of Plaintiffs' fraudulent concealment allegations and noting "discovery is in its early stages").  Judge Conti's ruling paved the way for discovery related to Plaintiffs' allegations, including those prior to the statute of limitations period.  It is standard practice for antitrust plaintiffs to pursue discovery related to all of their claims after a court sustains their complaint.

*Second*, Judge Conti has also already rejected the Hitachi Defendants' position. Defendants asked the Court to impose the limitations inherent in its position at the hearing on their objections to the Special Master's ruling on the motions to dismiss, and, at the Court's direction, the parties exchanged letter briefs on the issue.  The Court did not, however, accept any of the limitations that Defendants requested.  Rather, it suggested only that the parties seek to "streamline and efficiently manage" discovery if possible, as well as explore the possibility of addressing the statute of limitations issue by means of a summary judgment *after discovery*."  Approval Order, p. 23 n. 2 (emphasis added).

*Third*, Plaintiffs' proposed relevant time period is appropriate given the length of the alleged conspiracy.  *See New Park Entertainment, LLC v. Elec. Factory Concerts, Inc.*, 2000 U.S. Dist. LEXIS 531 at *10 (E.D. Pa. Jan. 13, 2000) ("[t]he asserted scope of the conspiracy…provides the temporal boundary for discovery.").  Plaintiffs' proposed relevant time period is corroborated by: (a) Chunghwa's meeting reports, (b) the United States Department of Justice's ("DOJ") indictment of Chunghwa's C.Y. Lin for participating in a conspiracy to fix the price of CRTs from at least January 28, 1997 until at least as late as April 7, 2003 (when Mr. Lin left Chunghwa) ("Indictment" ¶2 (Feb. 10, 2009) (Dkt. No. 1) in *United States v. Lin*, No. CR 09-0131 WHA (N.D. Cal.) (Saveri Decl., Ex. 8)); (c) the DOJ's indictment of Chunghwa's Wen Jung Cheng for participating in a conspiracy to fix the price of CRTs that lasted from at least January of 1997 to at least March of 2006 ("Indictment" ¶2 (Aug. 18, 2009) (Dkt. No. 1) in *United States v. Cheng*, No. Cr 09-836 PJH (N.D. Cal.) (Saveri Decl., Ex. 9)); and (d) the DOJ's indictment of Chunghwa's Alex Yeh for participating in a conspiracy to fix the price of CRTs that lasted from at least January of 1997 to at least March of 2006 ("Indictment" ¶2 (March 30, 2010)

(Dkt. No. 1) in *United States v. Yeh*, No. Cr 10-0321 (N.D. Cal.) (Saveri Decl., Ex. 10)). The DOJ has noted that "[t]he worldwide market for CRTs . . . in 1997, at the start of the conspiracies, has been estimated as approximately $26 billion."[4]

Full discovery of long-running antitrust conspiracies is not unusual. For instance, in *In re Sorbates Direct Purchaser Antitrust Litig.*, Civil Action No. 98-4886 (N.D. Cal. Mar. 11, 2002) ("*Sorbates*"), the district court certified a class of direct purchasers in an antitrust case alleging a 19-year conspiracy from January 1, 1979 to December 31, 1997. The time period in the *Sorbates* litigation was consistent with an indictment by the DOJ with respect to participation in the price-fixing conspiracy from in or about 1979 until about 1996. *See United States v. Komatsu*, No. CR 01-0019 (N.D. Cal. Jan. 23, 2001).

In the parallel *TFT-LCD* litigation, plaintiffs alleged an 11-year conspiracy from January 1, 1996 through December 31, 2006. There, the Special Master ordered defendants to produce transactional data for the two years before and two years after the class period. *See* "Order Clarifying Discovery Limits Allowed Under Court's Stay Order" (May 15, 2008) in *In re TFT-LCD (Flat Panel) Antitrust Litig.,* Civil Action No. 07-MDL-1827 (N.D. Cal.) (Dkt. No. 618) (Saveri Decl., Ex. 11). *See also* "SRAM Discovery Order Re: Limits on Production of Transactional Data" (May 20, 2008) (Dkt. No. 442) in *In re Static Random Access Memory (SRAM) Antitrust Litig.,* Civil Action No. 07-md-1819 (N.D. Cal.) (Saveri Decl., Ex. 12) ("[a] reasonable discovery period for transactional SRAM data is from 11/1/95 to 12/31/07, which is two years before and two years after the dates set forth in the DOJ subpoena"). In other words, the defendants in *TFT-LCD* and *SRAM* produced transactional data going back 15 years and 13 years, respectively. These defendants also produced non-transactional – *i.e.,* conspiratorial – discovery for the entire class period. Indeed, limiting the temporal scope of non-transactional discovery was never even raised by defendants in these cases, despite the long class periods.

*Fourth*, in March of 2009, Hitachi Displays Ltd. ("HDL") agreed to plead guilty and pay a $31 million fine for its role in a related conspiracy to fix prices in the sale of TFT-LCD panels sold to the United States during the period from April 1, 2001 to at least March 31, 2004. *See* "Plea Agreement" ¶4 (May 17, 2009) in *United States v. Hitachi Displays, Ltd*., No. Cr-09-0247 SI (N.D. Cal.) (Saveri Decl., Ex. 13). HDL (in addition to Hitachi, Ltd., Hitachi America, Ltd. and Hitachi Electronic Devices (USA), Inc.)  is one of the defendants in this case and is represented by the same counsel in both the TFT-LCDs and CRTs class actions. This guilty plea was again the result of HDL attending bilateral meetings outside the United States, and having conversations and communications in Japan, Korea and elsewhere to discuss fixing prices to U.S. customers, which is exactly the same type of conduct that Hitachi is accused of committing here. The DOJ also indicted Sakae Someya, an executive of HDL, who participated in these meetings. *See* "Indictment" (March 31, 2009) (Dkt. No. 1) in *United States v. Someya*, Cr 09-00329 PJH

---

[4] http://www.justice.gov/opa/pr/2009/February/09-at-110.html

Hon. Charles Legge
September 10, 2010
Page 7

(N.D. Cal.) (Saveri Decl., Ex. 14).  Plaintiffs' understanding is that Mr. Someya is a
fugitive from justice. (Saveri Decl., ¶16).

        *Fifth*, any argument as to a purported lack of evidence that the Hitachi Defendants
engaged in fraudulent concealment are not well founded.  The documents produced by
Chunghwa contain hundreds of meeting minutes, many including notes of discussions of
efforts to maintain the secrecy of the conspiracy.  These notes identify by name
representatives of Hitachi who were present at these meetings as far back as 1996. Thus,
Hitachi participated directly in these concealing acts.  But even assuming *arguendo* that it
had not done so, once Plaintiffs establish that the Hitachi Defendants were participants in
the conspiracy, they will be jointly and severally liable for acts of fraudulent concealment
by any of its co-conspirators.  *See In re Conseco Ins. Co. Annuity Mktg. & U Sales
Practices Litig.,* No. C-05-04726, 2008 WL 4544441, at *9 (N.D. Cal. Sept. 30, 2008)
(fraudulent concealment allegations can be "attributed generally to 'defendants'" and need
not be "allocated individually to any particular Moving Defendant.");  *In re Rexplore, Inc.
Securities Litig.,* 685 F. Supp. 1132, 1138 (N.D. Cal. 1988) ("once the plaintiff has been
lulled into inaction by the fraudulent concealment of one defendant, the statute of
limitations is tolled as to all the defendants") (abrogated on separate grounds). *See also In
re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 537 (6th Cir. 2008), *cert. denied*, 129 S. Ct.
1673 (2009); *Riddell v. Riddell Washington Corp.*, 866 F.2d 1480, 1493 (D.C. Cir. 1989);
*New York v. Hendrickson Bros., Inc.*, 840 F.2d 1065, 1083-86 (2d. Cir.), *cert. denied*, 488
U.S. 848 (1988).  This issue was resolved against the Hitachi Defendants in connection
with the motions to dismiss.

        *Sixth*, the Hitachi Defendants' position ignores the undisputable facts that even if
discovery were to be limited to matters related to fraudulent concealment and the
application of the statute of limitations, (a) their conduct (and that of all of the other
defendants) in concealing the conspiracy before the limitations period would remain
relevant; and (b) that as alleged in the DPP and IPP complaints (and as shown in the
Chunghwa meeting notes) many acts of fraudulent concealment were committed in
conjunction with the conspiratorial meetings and, therefore, there is no practical way to
separate fraudulent concealment discovery from that of the conspiracy itself. The Ninth
Circuit has instead held that affirmative acts that further the conspiracy may also establish
fraudulent concealment.  *See Conmar Corp. v. Mitsui & Co. (U.S.A.), Inc.*, 858 F. 2d 499,
505 (9th Cir. 1988) *cert. denied sub mom. VSL Corp., Inc. v. Conmar Corp.*, 488 U.S. 1010
(1989) ("[a] plaintiff alleging fraudulent concealment must establish that its failure to have
notice of its claim was the result of affirmative conduct by the defendant . . . Conmar's
amended complaint charges that Mitsui affirmatively acted to conceal its anticompetitive
behavior by creating customs and other documents falsely reporting prices for PC-strand.
A jury could believe that the filing of false customs forms was affirmative conduct
sufficient for a finding of fraudulent concealment which prevented Conmar from being

alerted to the manipulation of PC-strand prices.").[5]

      *Seventh*, even if Plaintiffs were unable to prove their fraudulent concealment allegations, Plaintiffs would still be entitled to discovery regarding the conspiracy prior to the statute of limitations period. Such discovery is relevant to show how the conspiracy formed and when each defendant joined. "It is well-settled that a plaintiff may introduce background evidence to establish a continuing course of conduct or to cast light on the character of an existing conspiracy." *Reid Bros. Logging Co. v. Ketchikan Pulp Co.*, 699 F.2d 1292, 1305 (9th Cir.), *cert. denied sub nom. Alaska Lumber & Pulp Co., Inc. v. Reid Bros. Logging Co.*, 464 U.S. 916 (1983). *Accord In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litig.*, 906 F.2d 432, 453 (9th Cir. 1990), *cert. denied sub nom. Chevron Corp. v. State of Ariz.*, 500 U.S. 959 (1991) ("even if the statute has not been tolled, we think that the pre-[*U.S. v.*] *Container* evidence [of direct communications between competitors] is nonetheless relevant in helping establish the appellees' intent and purpose in disseminating, during the post-*Container* period, information concerning dealer tankwagons and levels of dealer support and assistance"); *Whittaker Corp. v. Execuair Corp.*, 736 F.2d 1341, 1347 (9th Cir. 1984) ("[e]vidence of events or transactions which cannot be the subject of a suit by virtue of a statute of limitations bar may be introduced to show the nature and character of transactions under scrutiny or to establish a course of conduct"). [6]

---

[5] *See also E.W. French & Sons, Inc. v. General Portland, Inc.*, 885 F.2d 1392, 1399 (9th Cir. 1989) ("[t]he question in reviewing this directed verdict is whether the alleged denials [of price-fixing by the defendant] coupled with the alleged use of 'plain white envelopes' to mail pricing information to its competitors permits only one reasonable conclusion: that General Portland did not fraudulently conceal a conspiracy. We believe that a reasonable juror could conclude that this evidence sufficed to show that General Portland sought to fraudulently conceal the alleged conspiracy."); *In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litig.*, 782 F. Supp. 487, 490 (C.D. Cal. 1991) ("[A] reasonable jury could find defendants' network for inter-company telephone communications was designed to conceal their alleged conspiracy . . . In light of other evidence of price exchanges, a jury could infer that the purpose of the practice of limiting pricing communications to verbal communications only was to conceal their existence.").

[6] *Accord Continental Ore v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 699 (1962) (finding the exclusion at trial of evidence of the pre-limitations origins of a continuing conspiracy was reversible error); *Toledo Mack Sales & Service, Inc. v. Mack Trucks, Inc.*, 530 F.3d 204, 217-218 (3d Cir. 2008) ("Toledo seeks damages only for acts committed in furtherance of the conspiracy from 1998 to 2002, within the limitations period, but it is entitled to present evidence from outside the period to sustain its burden of proof . . . Toledo was not required to prove an illegal conspiracy with evidence restricted to the limitations period. Its burden was, rather, to present evidence sufficient to allow a rational jury to conclude that Mack and its dealers committed during the limitations period overt acts in furtherance of an illegal conspiracy or conspiracies, even if the conspiracies began

Hon. Charles Legge
September 10, 2010
Page 9

*Finally*, the Hitachi Defendants claimed in their objections that providing discovery for Plaintiffs' relevant time period would impose an undue burden.  It is well established, however, that "[g]iven the broad scope of discovery in federal cases, a party objecting to discovery on the basis of vagueness, overbreadth, oppression or burden must state specific facts in support of its objection."  *Johnson & Johnston v. R.E. Serv. Co., Inc.*, 2004 U.S. Dist. LEXIS 26973 at *5 (N.D. Cal. Nov. 2, 2004).  *See also Flanagan v. Benicia Unified School Dist.*, 2008 U.S. Dist. LEXIS 39386, at *11-*12 (E.D. Cal. May 14, 2008) ("[a] successful objection should specifically state the objection and how it relates to the particular request being opposed, and not merely incant the familiar litany that a request is 'overly broad and burdensome'. . . . Rather, the objection must show specifically how, despite the broad and liberal construction afforded the federal discovery rules, each request is irrelevant or overly broad, burdensome or oppressive.").  These common-sense rules were developed to prevent responding parties from asserting "undue burden" where none exists.  *See Waddell & Reed Financial, Inc. v. Torchmark Corp.*, 222 F.R.D. 450, 454 (D. Kan. 2004).

Even assuming that the Hitachi Defendants have demonstrated burden (which they have not), the Court may nonetheless order discovery if the Plaintiffs show good cause.  *See* Fed. R. Civ. P. 26(b)(2).  As discussed above, evidence of Hitachi's price-fixing activities and acts of fraudulent concealment prior to November 2003 is highly relevant to Plaintiffs' claims.  Furthermore, as the Chunghwa meeting reports discussed herein clearly demonstrate, Plaintiffs are not sending Hitachi on a "fishing expedition."  *See* Webb Ltr, pp. 2, 4, 5, 6.  When dealing with discovery of such crucial and basic significance to a case, courts have held that the information sought is discoverable even if its production is burdensome and expensive.  *See, e.g., In re Folding Carton Antitrust Litig.*, 83 F.R.D. 260,

---

before the limitations period"); *Kellam Energy, Inc. v. Duncan,* 616 F. Supp. 215, 218 (D. Del. 1985) ("[t]he cases clearly establish that the temporal scope of discovery in antitrust suits should not be confined to the limitations period of the antitrust statutes") (citing cases); *F.T.C v. Lukens Steel Co.*, 444 F. Supp. 803, 805 (D.D.C. 1977) ("[t]he discovery rules should normally be liberally construed to permit discovery in antitrust cases.  The courts have, as a result, frequently permitted discovery of information or documents relatively remote in time and in periods prior to the time when recovery may be had"); *In re Shopping Carts Antitrust Litigation*, 95 F.R.D. 299, 308 (S.D.N.Y. 1982) (permitting discovery beyond the alleged conspiracy period and stating that "if an economically effective price conspiracy takes place over a long period of time and the industry suddenly becomes competitive, then ordinarily sales and profits of individual companies will change suddenly.  A dramatic and sudden change might tend to indicate that a conspiracy did exits. The data will also provide plaintiffs with information relevant to damages.  Plaintiffs are entitled to obtain such information through their interrogatories"); *Westwood Lumber Co, Inc. v. Weyerhaeuser Co.*, 2003 U.S. Dist. LEXIS 27213, *13 (D. Ore. Dec. 29, 2003) ("[t]hat Plaintiffs may be unable to recover damages for injuries inflicted prior to 1999 does not automatically render defendant's pre-1999 conduct inadmissible. . .").

Hon. Charles Legge
September 10, 2010
Page 10

265 (D.C. Ill 1979) (stating that "the information sought by the interrogatories about purchasing practices is relevant to proof of conspiracy, impact, and class certification. Because the interrogatories themselves are relevant, the fact that answers to them will be burdensome and expensive 'is not in itself a reason for refusing to order discovery which is otherwise appropriate.'") (quoting 4A Moore's Federal Practice § 34.19(2), at 34-106); *see also W.E. Aubuchon Co., Inc. v. BeneFirst*, LLC, 245 F.R.D. 38, 43-45 (D. Ma. 2007).

### D.  Plaintiffs Will Work With the Hitachi Defendants To Minimize Their Purported Burden

For all of these reasons, Plaintiffs do not believe that any time period limitation is appropriate given the facts of this case.  That does not mean, however, that Plaintiffs were not willing to make any compromise on this issue.

As set forth in Plaintiffs' July 12, 2010 letter to the Hitachi Defendants (Saveri Decl. Ex. 4), if the Hitachi Defendants agree to identify with specificity their purported undue burden--including, but not limited to, a description of how hard copy and electronic documents are stored, Defendants' back-up policy, the relevant facilities that will need to be searched, and the relevant custodians who had authority over pricing, marketing, and sales of CRTs and CRT products throughout the time period--Plaintiffs have offered to confer with them to discuss ways to conduct an efficient search for relevant documents, including conducting searches by custodian and by use of search terms.  Plaintiffs also expressed their willingness to help craft an appropriate custodian list by sharing with the Hitachi Defendants the names of specific individuals employed by one or more Hitachi entity known to Plaintiffs to have participated in meetings in furtherance of the conspiracy.

The Hitachi Defendants, however, have rejected Plaintiffs proposal, claiming among other things that their purported burdens could only be "mitigated by . . .an initial cut-off date for discovery" and that "[t]he Hitachi Defendants will not go on a global fishing expedition for CRT Finished Products discovery without some factual basis warranting the imposition of such an enormous burden."  Webb Ltr. at 4, 6. This position is unreasonable, unsupported by the case law, and should be rejected by the Court.

### III.  Conclusion

For all of the foregoing reasons, Plaintiffs' motion to compel discovery of information prior to November of 2003 should be granted.

Yours sincerely,

/s/ *Guido Saveri*                         /s/ *Mario Alioto*
Guido Saveri                              Mario Alioto
Interim Lead Counsel for the           Interim Lead Counsel for the
Direct Purchaser Plaintiffs             Indirect Purchaser Plaintiffs

cc: All Counsel via ECF