**SAVERI & SAVERI, INC.**
706 SANSOME STREET
SAN FRANCISCO, CALIFORNIA 94111
TELEPHONE: (415) 217-6810
TELECOPIER: (415) 217-6813

*Trump Alioto Trump & Prescott*
ATTORNEYS LLP
2280 Union Street
San Francisco, California 94123
(415) 563-7200
FAX (415) 346-0679

September 10, 2010

Honorable Charles A. Legge
JAMS
Two Embarcadero Center, Suite 1500
San Francisco, CA 94111

Re:     *In Re: Cathode Ray Tube (CRT) Antitrust Litigation,* MDL 1917 (N.D.
        Cal.)--Letter Brief On Motion To Compel Discovery With Respect To
        CRT Products

Your Honor:

Pursuant to the procedure set forth at the August 24, 2010 status conference regarding discovery, and in the Special Master's "Report Regarding Case Management Conference No. 2" (Sept. 8, 2010) (Dkt. No. 754), Direct Purchaser Plaintiffs ("DPPs") and Indirect Purchaser Plaintiffs ("IPPs") (collectively "Plaintiffs") respectfully submit this letter brief motion to compel discovery against Hitachi, Ltd., Hitachi Displays, Ltd., Hitachi Asia, Ltd., Hitachi Electronic Devices (USA), Inc. and Hitachi America, Inc. (collectively the "Hitachi Defendants" or "Hitachi") with respect to products containing cathode ray tubes ("CRTs"), which are referred to herein as "CRT Products."  On that issue, Plaintiffs and the Hitachi Defendants have reached an impasse in their negotiations. This is one of three separate motions to compel that Plaintiffs are filing against Hitachi; the others relate to the separate issues of discovery of information antedating November of 2003 and of discovery with respect to foreign conduct and pricing.  Each of those other motions will be addressed in separate letter briefs because they are conceptually distinct and involve different arguments. Plaintiffs have striven not to engage in duplication in these separate motions.  All three are supported by the accompanying "Declaration of R. Alexander Saveri" ("Saveri Decl.").

I.      **Factual Background**

The Hitachi Defendants contend that discovery should be limited to issues related to CRTs only; with a few minor exceptions, they have objected to responding to any discovery related to CRT Products.  Hitachi asserts that Plaintiffs should be required to make an affirmative threshold showing of facts supporting their theories in the case before being allowed any discovery as to CRT Products.  The Hitachi Defendants specifically assert that "any discovery as to 'CRT Products' that is not reasonably related to Plaintiffs' claims with respect to an alleged conspiracy involving CRTs is premature and overly

Hon. Charles Legge
September 10, 2010
Page 2

burdensome until such time as Plaintiffs establish a reasonable basis for their claims regarding 'CRT Products' to justify the enormous burden that Plaintiffs seek to impose on [the Hitachi Defendants] by pursuing discovery as to all such products."  The Hitachi Defendants further claim that the interrogatory responses of Chunghwa Picture Tube Co., Ltd. somehow indicate that there was not a conspiracy for CRT Products, and that these responses therefore should relieve the Hitachi Defendants from their duty to search for and produce documents related to CRT Products, unless Plaintiffs can first produce evidence establishing a *prima facie* case that Defendants engaged in a conspiracy to fix the prices of CRT Products.

## II.    Argument

Hitachi's position is contradicted by Judge Conti's order denying dismissal of the DPP and IPP complaints and the relevant caselaw.  In Judge Conti's opinion upholding the Special Master's recommendation and denying Defendants' motions to dismiss, the Court held that "there can be no doubt that the Direct Purchaser Plaintiffs are alleging conspiracies regarding both CRTs and CRT Products. . . . The trade and commerce allegations mention CRT Products.  The allegations regarding collusive meetings refer to CRT Products.  Indeed, according to the Direct Purchaser Plaintiffs, CRT Products are mentioned 135 times in the Direct Complaint."  "Order Approving and Adopting Special Master's Report, Recommendations and Tentative Rulings re Defendants' Motions to Dismiss," p. 3 (March 30, 2010) (Dkt. No. 665) ("Approval Order").  Judge Conti made a similar point as to the IPPs' complaint. *Id*. at 4. He then stated: "[t]he Court concludes that both complaints allege conspiracies regarding both CRTs and the products into which CRTs are incorporated." *Id*.

Indeed, Judge Conti went on to find that both complaints stated viable causes of action against all of the Hitachi entities, including those that made only CRT Products:

> For similar reasons, *the Court finds that the allegations in the Direct Complaint and the Indirect Complaint are sufficient to state a claim as to each of the* Toshiba, LG Electronics, *Hitachi*, and Philips entities.
>
> ****
> Both complaints describe the relationships between the Hitachi entities. Direct Compl. ¶¶ 30-36; Indirect Compl. ¶¶ 87- 93. The complaints allege that Hitachi, Ltd., a Japanese company, dominated and controlled the finances, policies, and affairs of Hitachi America, Ltd., Hitachi Asia, Ltd., Hitachi Displays, Ltd., and Hitachi Electronic Devices (USA), Inc., relating to the antitrust violations alleged. Id. The Direct Purchaser Plaintiffs allege that the Hitachi entities participated in over a dozen illegal bilateral and group meetings from 1996 through at least 2001. Direct Compl. ¶ 157. *They allege that Hitachi America, Ltd., and Hitachi Electronic Devices (USA), Inc. were represented at the meetings and were parties to the agreements entered at them. Id. ¶ 158. They allege that these distributors of CRT Products wished to ensure the prices paid by*

Hon. Charles Legge
September 10, 2010
Page 3

> *consumers did not undercut the pricing agreements regarding CRTs. Id.*
> *The Indirect Purchaser Plaintiffs allege that the Hitachi entities*
> *participated in several Glass Meetings, and that the meetings were*
> *attended by high-level sales managers from Hitachi. Indirect*
> *Compl. ¶ 179.*
>
> \*\*\*\*
> Whether Plaintiffs will be able to prove these allegations
> against each Defendant is another matter entirely. In general,
> Defendants' arguments for dismissal based on a failure to
> adequately plead against each Defendant rely upon arguments more
> appropriate at the summary-judgment stage of these proceedings
> when Defendants can put Plaintiffs to their burden of proof.
> *Taken as a whole, the Court finds that both the Direct Complaint*
> *and the Indirect Complaint plausibly suggest that each Defendant*
> *participated in the alleged conspiracies. Therefore, it would be*
> *inappropriate to dismiss any of the Defendants from this action*
> *without the benefit of discovery.*

Approval Order at 13-16; emphases added.

It is now time for Plaintiffs to obtain "the benefit of discovery" on their sustained complaints. They should not have to make any further showing to obtain the discovery on CRTs and CRT Products that Judge Conti clearly envisioned.[1] Moreover, "[b]road discovery is permitted [in antitrust cases] because direct evidence of an anticompetitive conspiracy is often difficult to obtain, and the existence of a conspiracy frequently can be established only through circumstantial evidence, such as business documents and other records." *In re Auto. Refinishing Paint Antitrust Litig.,* MDL No. 1426, 2004 U.S. Dist. LEXIS 29160, *8 (E.D. Pa. Oct. 29, 2004).[2]

---

[1] And even assuming *arguendo* that the DPPs had not pled adequately a conspiracy that encompasses CRT Products, those products would still be in the direct purchaser case under the analysis of cases such as *In re Sugar Industry Antitrust Litig.*, 579 F.2d 13 (3d Cir. 1978) and *In re Linerboard Antitrust Litig..*, 305 F.3d 145 (3d Cir. 2002).  And, of course, the Hitachi Defendants would still be obligated to produce documents describing the relationship between CRTs and CRT Products in the indirect purchaser case because such documents have a direct bearing on pass-on, which is a central issue there.  Given that the IPPs bought CRT Products, Plaintiffs therefore are entitled to discovery on the relationship between the price of CRTs and the price of CRT Products.

[2] *See also Callahan v. AEV, Inc.*, 947 F. Supp. 175, 179 (W.D. Pa. 1996) ("[d]iscovery in an antitrust case is necessarily broad because allegations involve improper business conduct. . . . Such conduct is generally covert and must be gleaned from records, conduct, and business relationships."); *In re Microcrystalline Cellulose Antitrust Litig.*, 221 F.R.D. 428, 429-30 (E.D. Pa. 2004) ("[A] broad scope of discovery is particularly appropriate in antitrust litigation because, for example, relevant business documents pertaining to the antitrust conspiracy may not exist and covert behavior may have to be proven through less

Hon. Charles Legge
September 10, 2010
Page 4


The Hitachi Defendants' refusal to provide discovery as to CRT Products is meritless.  "A party does not have to prove a prima facie case to justify a request which appears reasonably calculated to lead to the discovery of admissible evidence."  *In re Urethane Antitrust Litig.*, 261 F.R.D. 570, 573 (D. Kan. 2009). *Accord, e.g., Bell v. Lockheed Martin Corp.*, No. 08-692 (RBK/AMD), 2010 WL 2696455, at *5 (D.N.J. June 23, 2010); *Kiln Underwriting Ltd. v. Jesuit High School of New Orleans*, Nos. 06-04350, 06-05060, 06-05057, 2008 WL 4286491, at *3 (E.D. La. Sept. 8, 2008);  *In re Commercial Money Center, Inc. Equip. Lease Litig.*, No. 1:02CV16000, 2007 WL 1306551, at *4 (N.D. Ohio May 3, 2007).

Indeed, the Federal Rules do not impose any duty on Plaintiffs to make a threshold evidentiary showing before they are entitled to discovery of information that is directly relevant to the well-plead allegations in the sustained complaints.  Thus, Hitachi is on no better ground in claiming that it should not be required to search for and produce CRT Products related information and documents, than a claim that it should not be required to search for and produce CRT related information and documents.

Of special relevance here is what the district court in the related *TFT-LCD* litigation has done on this issue. There, it certified classes with respect to TFT-LCD panels and/or products containing such panels. *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 291, 305-07, 315 (N.D. Cal. 2010) (certifying direct purchaser classes of those who bought TFT-LCD panels and those who bought television, computer monitor, or notebook computer containing a TFT-LCD panel); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 583, 604-14 (N.D. Cal. 2010) (certifying indirect purchaser classes of those who bought TFT-LCD panels incorporated in televisions, monitors and/or laptop computers). There, as here, the defendants contended that any conspiracy extended only to TFT-LCD panels, not the products containing them. 267 F.R.D. at 306 ("[d]efendants argue, as they did in the motion to dismiss the complaint, that plaintiffs who purchased TFT-LCD products directly from defendants are actually indirect purchasers because the alleged price-fixing conspiracy existed only with regard to TFT-LCD panels, and not finished products").

Despite these contentions, the court in the *TFT-LCD* litigation has permitted discovery to go forward as to *both* TFT-LCD panels *and* products containing them. Initially, at the request of the United States Department of Justice ("DOJ"), a stay of discovery was entered in that case that encompassed both documents and depositions. The

---

direct means."); *In re Aspartame Antitrust Litig.*, No. 2:06-CV-1732-LDD, 2008 WL 2275531, at *1 (E.D. Pa. May 13, 2008) ("[t]his broad scope of discovery 'has been held to be particularly appropriate in antitrust cases.'" (citation omitted)); *B-S Steel of Kan., Inc. v. Tex. Indus., Inc.*, No. 01-2410, 2003 WL 21939019, at *3 (D. Kan. July 22, 2003) (quoting *United States v. Dentsply Int'l., Inc.*, No. 99-5, 2000 WL 654286, at *5 (D. Del. May 10, 2000)).

Hon. Charles Legge
September 10, 2010
Page 5

stay order permitted transactional discovery with respect to "LCD products." *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M:07-1827 SI, 2007 WL 2782951, at *1 (N.D. Cal. Sept. 25, 2007). Less than a year later, the parties and the DOJ agreed to a modification of the stay; a stay on merits-related discovery was continued at the DOJ's request until January of 2009, but the modification stated:

> The Stay Order does not prohibit third party discovery; discovery concerning the purchase or sale of TFT-LCD panels and finished products containing TFT-LCD panels by Defendants to third parties, one another, or by or between a Defendants' subsidiaries, joint ventures, or affiliates; discovery concerning the purchase or sale of TFT-LCD panels and finished products containing TFT-LCD panels by or to putative class members; and discovery concerning a Defendants' (or its subsidiaries, joint ventures, or affiliates') production capacity, capacity utilization, production costs, inventory levels, sales volumes, product lines, profitability, competitive position, market share, sales terms and conditions, costs, prices, shipments, customers, or distributors, to the extent consistent with the first sentence of this paragraph.

"Joint Recommendation And Proposed Order re Stay of Discovery" ¶2 (May 27, 2008) (Dkt. No. 631) (Saveri Decl., Ex. 16)  An issue arose about the defendants providing information on TFT-LCD products under this order to the direct purchaser plaintiffs, but not to the indirect purchaser plaintiffs.  At a hearing held on September 30, 2008, the district court stated that to the extent such information was produced to the indirect purchasers, it had to be produced to the direct purchasers as well. Transcript of Hearing of September 30, 2008 at 16 (Dkt. No. 679) (Saveri Decl., Ex. 17). *See* "Civil Pretrial Minutes" (Oct. 2, 2008) (Dkt. No. 680) (Saveri Decl., Ex. 18).

Once the stay requested by the DOJ expired, full discovery as to both TFT-LCD panels and TFT-LCD products has gone forward. Saveri Decl. ¶21.  Hitachi Displays, Ltd. is a common defendant represented by the same counsel in both the TFT-LCD class litigation and in this case.  It, as well as the other defendants in the former case, have not refused to provide discovery relating to TFT-LCD products.

Here, as of March 8, 2010, there is no stay whatsoever on merits-related non-deposition discovery; the only stay is with respect to merits-related depositions.  Hitachi Displays, Ltd. is a common defendant represented by the same counsel in both the TFT-LCD class litigation and in this case.  Therefore, under the logic of *TFT-LCDs*, non-deposition discovery as to CRT Products should go forward.

Hon. Charles Legge
September 10, 2010
Page 6

**III.     Conclusion**

      For all of the foregoing reasons, Plaintiffs' motion to compel discovery with respect to CRT Products should be granted.

                Yours sincerely,

                /s/ *Guido Saveri*_____
                Guido Saveri
                Interim Lead Counsel for the
                Direct Purchaser Plaintiffs

                /s/ *Mario Alioto*_____
                Mario Alioto
                Interim Lead Counsel for the
                Indirect Purchaser Plaintiffs

cc: All Counsel via ECF

crt.308