| | |
|---|---|
| **SAVERI & SAVERI, INC.**<br>706 SANSOME STREET<br>SAN FRANCISCO, CALIFORNIA 94111<br>TELEPHONE: (415) 217-6810<br>TELECOPIER: (415) 217-6813 | *Trump Alioto Trump & Prescott*<br>ATTORNEYS LLP<br>2280 Union Street<br>San Francisco, California 94123<br>(415) 563-7200<br>FAX (415) 346-0679 |

September 20, 2010

Honorable Charles A. Legge
JAMS
Two Embarcadero Center, Suite 1500
San Francisco, CA 94111

      Re:   *In Re: Cathode Ray Tube (CRT) Antitrust Litigation,* MDL 1917

Your Honor:

      Pursuant to the procedure set forth at the August 24, 2010 Status Conference regarding discovery, and in Your Honor's September 8, 2010 "Report Regarding Case Management Conference No. 2" [Dkt. 754], Direct Purchaser Plaintiffs ("DPPs") and Indirect Purchaser Plaintiffs ("IPPs") (collectively "Plaintiffs") respectfully submit this letter brief in opposition to the motion to compel responses to contention discovery filed by Defendants on September 3, 2010 [Dkt. 753] ("Mot.").

      Plaintiffs have objected to responding to Defendants' contention discovery at this time because to catalog "all knowledge or information" Plaintiffs have at present regarding Defendants' conspiratorial conduct would be pointless and burdensome. Because discovery has just started, Plaintiffs' responses would be tentative, incomplete and outdated as discovery progresses.

      Plaintiffs' position is consistent with the law which defers contention discovery until after substantial completion of documentary and testimonial discovery, absent a showing of compelling justification. Defendants make no such showing in their papers. None of the four "benefits" Defendants attribute to their premature contention discovery justifies such discovery now.

## I.    The Discovery At Issue

      On March 8, 2010, five Defendants – LGE, MT Picture Display Co., Ltd. ("MTPD"), Samsung Electronics America, Inc., Samsung SDI America, Inc. and Hitachi Displays, Ltd. – served six sets of interrogatories and six sets of document requests on Plaintiffs. With slight variations, over 20 of the requests directed to DPPs and IPPs purport to require Plaintiffs to "state with specificity the factual basis" and identify all documents and witnesses supporting the conspiracy allegations herein against each Defendant.

This, of course, calls for an enormous undertaking and would include not only a catalog of the hundreds of meetings attended by Defendants, but also the structure of the market, the interrelationships of Defendants that are part of corporate families, Defendants' use of trade associations and trade events to facilitate the conspiracy, and much more. (*See e.g.,* DPP CAC ¶¶ 112-199 [Dkt. 436]; IPP CAC ¶¶ 134-212 [Dkt. 716].[1]

## II.   Factual Background

Plaintiffs filed their CACs on March 16, 2009.  In response to voluminous motions to dismiss, on February 5, 2010, the Special Master issued its Report, Recommendation and Tentative Rulings Regarding Defendants' Motions to Dismiss ("Report") [Dkt. 597].  The Special Master found that the CACs alleged a plausible conspiracy against all Defendants as to CRTs and CRT Products and recommended (1) that the motions to dismiss as to the DPP CAC be denied in their entirety; and (2) that the motions to dismiss as to the IPP CAC be denied, except as to a handful of state law causes of action.  Report at 33-34.

On March 30, 2010, the Court rejected Defendants' objections to the Report and adopted it in its entirety.  *See* Order Approving and Adopting Special Master's Report, Recommendation and Tentative Rulings Re Defendants' Motions to Dismiss ("Order") at 1 [Dkt. 665].  Defendants do not dispute that, in adopting the Report, the Court ruled that Plaintiffs (1) alleged sufficient facts to show a conspiracy relating to both CRTs and the products into which CRTs are incorporated ("CRT Products") (Order at 4); (2) that these allegations stated plausible conspiracy claims as to both CRTs and CRT Products (*id*. at 5); and (3) that the CACs alleged sufficient facts plausibly to suggest that each Defendant participated in the alleged conspiracy. *Id*. at 10.  The Court also specifically rejected Defendants' argument that a CRT Products conspiracy does  not logically flow from  a CRT conspiracy, finding: "It is economically plausible that affiliated companies would wish to see any price increases in CRTs passed through to the purchasers of CRT Products." *Id.* at 11.

These rulings demonstrate that Defendants have adequate notice of the claims against them and the grounds upon which those claims rest, and that Plaintiffs are entitled to discovery relating to their allegations.  Judge Conti's Order specifically noted that "it

---

[1] Defendants' characterization of their discovery as limited to Plaintiffs' knowledge at the time the Consolidated Amended Complaints ("CACs") were filed is also incorrect; there is no question that it seeks the totality of Plaintiffs' ***present*** knowledge.  All of the requests expressly call for "all knowledge or information available to Plaintiffs."  *See e.g.,* MTPD Interrogatories, General Instruction 1; LGE Interrogatories General Instruction No. 1.  Most expressly refer to present knowledge.  MTPD Interrogatories, Nos. 2-6; Samsung SDI Interrogatories, Nos. 1-4; *see also* Samsung Electronics America, Inc.'s document requests, Nos. 6-8. All contain a definition explaining that terms in the present tense include the past and vice versa. *See e.g.,* LGE Interrogatories, Definition L.  None contains language limiting Plaintiffs' obligations to what they knew when the CACs were filed.

Hon. Charles Legge
September 20, 2010
Page 3

would be inappropriate to dismiss any of the Defendants from this action without the benefit of discovery." *Id.* at 16. The Special Master also noted that, as to the CACs, "[t]here is certainly adequate information for each defendant to examine its personnel, and to search its documents and databases." Report at 16. Despite this, Defendants have taken the position that Plaintiffs should not be allowed discovery as to CRT Products (and other broad issues) unless they provide, to the satisfaction of Defendants, "evidence" supporting their claims. On this basis, Defendants have refused to produce documents or otherwise respond meaningfully to Plaintiffs' discovery directed at the conspiracy.[2]

There is no compelling reason to require Plaintiffs to respond to Defendants' contention discovery requests until after substantial completion of discovery. The Court is expressly permitted to order such deferral under Fed. R. Civ. P. 33(a)(2) ("[a]n interrogatory is not objectionable merely because it asks for an opinion or contention that relates to a fact or the application of law to fact, but the court may order that the interrogatory need not be answered until designated discovery is complete…"). Plaintiffs have not withheld any documents based on an objection that contention discovery is premature. The parties have met and conferred, and Defendants have refused to modify their position regarding their contention interrogatories in any respect. Mot., p. 1.[3]

### III.  The Law In The Northern District Requires That Defendants To Show Compelling Justification For Early Contention Discovery

The law is clear that Defendants' contention discovery, served at the beginning of the discovery process, is premature. The leading case in this district concerning the timing and use of contention discovery is *In re Convergent Tech. Secs. Litig.*, 108 F.R.D. 328, 337 (N.D. Cal. 1985) ("*Convergent*"). In *Convergent*, a securities case, the defendants served contention discovery going to, *inter alia,* the question of whether or not certain defendants could be subject to liability as "control persons." The Court concluded that, in general, early contention interrogatories – *i.e.*, those served before the completion of substantial discovery – should be disfavored because they are burdensome and of little use in advancing the litigation, especially where, as here, they seek information primarily in the possession of the propounding party. The Court held, therefore, that while early contention discovery was not *per se* improper, a propounding party bore a heavy burden to justify it:

> [S]uch a party must be able to show that there is good reason to believe that answers to its well-tailored questions will contribute meaningfully to clarifying the

---

[2] Some Defendants have modified their position, but none has made substantial responses to Plaintiffs' conspiracy-related discovery.

[3] Defendants' second round of discovery – thirteen sets served by 5 defendants – contains over 20 additional contention requests asking for the factual basis of many other allegations in the CACs, including the existence of a conspiratorial overcharge, the impact of the alleged conspiracy, the participation of corporate families in the conspiracy, and the appropriateness of class certification herein.

issues in the case, narrowing the scope of the dispute, or setting up early settlement discussions, or that such answers are likely to expose a substantial basis for a motion under Rule 11 or Rule 56. A party seeking early answers to contention interrogatories cannot meet its burden of justification by vague or speculative statements about what might happen if the interrogatories were answered. Rather, the propounding party must present specific, plausible grounds for believing that securing early answers to its contention questions will materially advance the goals of the Federal Rules of Civil Procedure. ***The Court will be especially vigilant in its evaluation of proffered justifications when a complaint is not facially infirm and when defendants appear to have control over or adequate access to much of the evidence relevant to their alleged misconduct.***

*Id.* at 338-39 (emphasis added).

Because it was "conceivable" that a jury could find for the plaintiffs on their "control person" allegations, the Court found it was not likely that a judge would grant summary judgment or that plaintiffs would withdraw their claims – the only ways to resolve the issue – without further discovery. *Id.* at 344-45. For this reason the Court further held that early responses to contention discovery – as opposed to responses after discovery – would not advance the case and denied the motion to compel. *Id.* In such circumstances, the Court emphasized that the defendants could not carry their burden without a strong evidentiary showing of their own. *Id.; see also id.* at 340 (". . . because this is *not* a situation in which it is clear that there is no substance to plaintiffs' claims, and because defendants have access to much of the evidence about their alleged misbehavior, the court will not enter an order that generally compels plaintiffs to answer the interrogatories that are the subject of the pending motions.")

The *Convergent* court also rejected the argument that Defendants were entitled to early contention discovery regarding the basis for the plaintiffs' complaint at the time it was filed under Fed. R. Civ. P. 11. *Id.* at 346.

More recently, in *In re eBay Seller Antitrust Litig.*, No. C 07-1882 JJF, 2008 WL 5212170 at *1 (N.D. Cal. Dec. 11, 2008) ("*eBay*"), the Court, in an antitrust class action, refused to compel answers to early contention discovery. The Court applied the *Convergent* analysis, and noted that: "[c]ourts using their Rule 33(a)(2) discretion generally disfavor contention interrogatories asked before discovery is undertaken. . . . In fact, courts tend to deny contention interrogatories filed before substantial discovery has taken place, but grant them if discovery almost is complete." *Id.; see also City & County of San Francisco v. Tutor- Saliba Corp.*, 218 F.R.D. 219, 222 (N.D. Cal. 2003) (Plaintiffs need not respond to discovery where "[d]efendants seek, in effect, responses similar to broad contention interrogatories which in most circumstances are premature at this early stage of litigation"); *Tennison v. County of San Francisco*, 226 F.R.D. 615, 618 (N.D. Cal. 2005) (granting motion to compel contention interrogatory responses because "[a]t this juncture, discovery is nearly complete"); *Gen Probe, Inc. v. Beckton & Dickinson Co.,* No. 09cv2319

BEN (NLS), 2010 WL 2011556 at *1 (S.D. Cal. May 19, 2010) ("[s]everal courts have found contention interrogatories served toward the beginning of a litigation to "be of questionable value to the goal of efficiently advancing the litigation"); *Kim v. City of Santa Clara*, No. C 09-0025 RS, 2009 WL 4021389 at *2 (N.D. Cal. Nov. 19, 2009) ("no point" in forcing plaintiff to give contention responses "until discovery regarding the incident is complete or nearly so"); *In re Wells Fargo Residential Mortgage Lending Discrimination Litig.*, No. C 09-1930 MMC (JL), 2009 WL 1771368 at *7 (N.D. Cal. June 19, 2009) ("[n]either Fed.R.Civ.P. 33(a)(2) nor applicable case law requires Plaintiffs to answer the contention interrogatories until Wells Fargo has produced the information necessary for them to do so").

This authority demonstrates the impropriety of Defendants' contention discovery. Responding to the over 20 requests directed separately to DPPs and IPPs will require an enormous amount of work. Because Plaintiffs have not had an opportunity to conduct meaningful discovery, their responses will be tentative and incomplete. Undoubtedly, Defendants will seek to have them be redone, at great further effort, after the completion of discovery. *See eBay,* 2008 WL 5212170 at *2 ("Indeed, if [the plaintiff] were to respond now, his answers likely would be materially incomplete as soon as eBay begins its document production."). This is especially so where, as here, the complaints have withstood Rule 12 motions and Defendants have much greater access to evidence concerning their own behavior. *See Convergent,* 108 F.R.D. at 339; *see also id.* at 337-38 ("in cases where defendants presumably have access to most of the evidence about their own behavior, it is not at all clear that forcing plaintiffs to answer these kinds of questions, early in the pretrial period, is sufficiently likely to be productive to justify the burden that responding can entail.")

Defendants' principal cases are distinguishable. None are from the Northern District of California, and two – *Cable & Computer Tech., Inc. v. Lockheed Saunders, Inc.,* 175 F.R.D. 646 (C.D. Ca.. 1997) ("*Cable*"), and *United States ex. rel. O'Connell v. Chapman University,* 245 F.R.D. 646 (C.D. Cal. 2007) ("*O'Connell*") – did not apply *Convergent.* In each of these cases, contrary to the law in this District, the Court imposed on the party resisting discovery the burden to justify not responding to early contention discovery. *O'Connell*, 245 F.R.D. at 648; *Cable*, 175 F.R.D. at 653. And unlike this case, both cases involved discovery targeting information within the plaintiff's *personal* knowledge. *Cable* was a breach of contract case. Although the opinion does not specify the precise subject matters of the interrogatories at issue, it appears – consistent with a breach of contract action based on a course of dealing between the parties – they dealt with matters within the knowledge of the plaintiff. *See Cable*, 175 F.R.D at 651 n.3, 648-50. *O'Connell* was a *qui tam* action and involved discovery apparently directed at the personal knowledge of the plaintiff. *Johnson v. Kraft Foods North America, Inc.,* 236 F.R.D. 535 (D. Kan. 2006) is also inapposite. It was an employment discrimination case; the discovery at issue was directed at the discrimination plaintiff allegedly experienced, and, therefore, was peculiarly within his knowledge. The opinion also does not disclose the stage of the litigation at which the discovery was served. *See id.* at 544-45.

Defendants' other cases are also inapposite. Many do not even address the question of whether contention discovery is proper before the completion of discovery. For example, *Lucero v. Valdez,* 240 F.R.D. 591 (D.N.M. 2007) did not involve premature contention interrogatories. To the contrary, the court ordered that because "discovery should be substantially completed on those issues by now, Defendants' contention interrogatories that seek to clarify the basis for and scope of Lucero's claims are appropriate at this time." *Id*. at 594. *Continental Illinois National Bank & Trust Company of Chicago v. Caton,* 136 F.R.D. 682 (D. Kan. 1991) involved discovery served after substantial discovery, and did not involve an objection that contention interrogatories were premature. *Id.* at 683; *see also id.* at 685-86. Similarly, *Refac v. Hitachi, Ltd. et al.,* 921 F. 2d 1247 (Fed. Cir. 1990) did not involve an objection to a premature contention interrogatory. It involved an apparently frivolous patent action which the trial court dismissed as a result of plaintiff's violations of discovery orders. *See id.* at 1254-55. Likewise, the opinion in *Boyd v. Tornier, Inc.*, No. 07-751 MJR, 2008 WL 2691727 (S.D. Ill. June 30, 2008) is cursory, does not disclose the nature of the case and contains no meaningful discussion of the discovery at issue. It holds primarily that the plaintiff waived its objections. *Id.* at *1. [4]

In sum, Defendants' arguments in favor of contention discovery have no merit. Accordingly, Plaintiffs are entitled to defer their responses to this discovery until discovery has been completed.

**IV.    Defendants Have Not Carried Their Burden To Demonstrate That Early Contention Discovery Will Materially Advance These Cases**

Defendants assert that early responses to their contention discovery will (a) "streamline this litigation to focus on the facts that are properly at issue," (b) "help the Court better balance burdens and relevance in determining the appropriate scope of finished CRT products from defendants," (c) "determine whether there is a Rule 11 issue with plaintiffs' allegations of a finished CRT products conspiracy," and (d) "facilitate

---

[4] *Roberts v. Heim,* 130 F.R.D. 424, 427 (N.D. Cal. 1989) involved narrow issues which appeared to have been within the knowledge of the plaintiffs, and which the court held could be answered without undue burden. It also does not disclose the state of discovery at the time the contention interrogatories were served, although the opinion was issued after plaintiffs had flouted a prior order requiring discovery. *Id. Dot Com Entertainment Group, Inc. v. The Cyberbingo Corp.,* 237 F.R.D. 43 (W.D.N.Y. 2006), was a patent case and involved, after apparently approximately 18 months of litigation, a contention interrogatory going to the basis for the defendant's assertion that the plaintiff's patent was invalid based on prior art and obviousness. The court confirmed, in addition, that except for discovery directed at these specific issues, contention interrogatories are generally delayed in patent cases until the completion of discovery. *Id.* at 44-45. There is also no basis for Defendants' claim that Northern District law has been "modified" since *Convergent*. In *McCormick-Morgan, Inc. v. Teledyne Industries, Inc.,* 134 F.R.D. 275, 286-87 (N.D. Cal. 1991), the Court required responses to contention discovery only *after* discovery closed.

settlement discussions." Mot., p.1. None of these supposed "benefits" has any factual basis. Each is premised on self-serving conjecture and speculation.

### A. Defendants Fail To Demonstrate That Early Responses To Contention Discovery Will "Streamline" These Cases or Aid the Court in Determining the Scope of Discovery

Defendants' arguments that responses to contention discovery will "streamline" the cases and aid the Court in determining the scope of discovery do not withstand scrutiny. By "streamline" the Defendants mean that substantive issues – principally "the critical question of whether this case properly involves only the conspiracies to fix the price of CRTs . . . or also involves a conspiracy to fix the prices of finished CRT Products" – should be "resolve(d)" in their favor now. Mot., p. 8. But Defendants do not explain how such "streamlining" would occur. It seems they seek either (a) an express ruling by the court; or, (b) a denial of discovery, which would of course "resolve" these issues in Defendants' favor as a practical matter. Not surprisingly, Defendants offer no authority in support of their novel position.

As in *Convergent*, apart from Plaintiffs' withdrawal of their claims, the only means to "narrow the issues" is summary judgment. It is fundamental, however, that such a motion can and should be deferred if further discovery is needed. Fed. R. Civ. P. 56(f); *Convergent,* 108 F.R.D. at 344-45. Indeed, Judge Conti's Order explicitly acknowledges that summary judgment proceedings must occur only "(a)fter discovery." Order, p. 23 n. 2.

Moreover, there is also no reason to believe that Plaintiffs would not prevail on a motion for summary judgment, much less that their allegations are not "conceivable." They have already – after searching inquiry – been upheld as "plausible." Nor have Defendants, as required by *Convergent*, submitted competent evidence to show otherwise. *See* 108 F.R.D. at 344 ("Given defendants' failure to demonstrate the facial implausibility of plaintiffs' allegations of control, the court would be appreciably more inclined to compel (at this stage) the discovery defendants seek if defendants submitted declarations or other competent evidence tending to refute plaintiffs' allegations that Harris and Meise are in the controlling group.")

Defendants' arguments that a conspiracy extending to finished products "does not logically flow from a tubes conspiracy" are specious. *First*, they are simply a rehash of their motion to dismiss arguments that such a conspiracy was not "plausible." These arguments have been rejected repeatedly.

*Second*, it is Defendants' arguments that are illogical. Their reliance on the "facts" that certain Defendants never made tubes or never manufactured finished products misses the forest for the trees. Virtually every Defendant was part of a corporate family that made both tubes and finished products. Defendants would have the Court believe that wholly owned subsidiaries were secretly conspiring against their parent companies. Moreover, some individual Defendants – for example LGE, one of the largest and most important

Hon. Charles Legge
September 20, 2010
Page 8

conspirators – did make both tubes and finished products during the conspiracy. That some finished products manufacturers are not named herein is also immaterial. As Defendants note, these entities did not manufacture tubes; therefore they could obtain the most important component of their products *only from the conspirators and only at inflated prices.* Finally, Chunghwa's "admission" that it is "unaware" of a finished products conspiracy is immaterial. It is not evidence; at best, it is inadmissible hearsay. *First Acceptance Insurance Company v. Ramirez,* 2010 WL 779315, *6 (M.D. Fla. Feb. 26, 2010) (admissions of defendant not admissible against plaintiff). *Accord Fiberglass, Inc. v. Techni-Glass Indus., Inc.,* 811 F. 2d 565, 566 (11th Cir. 1987) (deemed admission of defendant not admissible against other defendants). It is simply the self-serving statement – on information and belief, no less – of a defendant which, despite its settlement here, still faces enormous liability in opt-out litigation.[5]

*Third*, Defendants' related argument that Plaintiffs' responses are "essential to enable the Court to better balance burdens and relevance in determining the proper scope of finished CRT products" discovery is also meritless. Again, Plaintiffs' complaints have been upheld by the Special Master and by the Court, despite Defendants' identical attacks renewed here. It follows that Plaintiffs are entitled to discovery regarding the allegations of their Complaints. There simply is no requirement that a plaintiff make a "threshold" factual showing in order to be entitled to discovery.[6]

Finally, Defendants' claim that their discovery seeks only the basis for Plaintiffs' allegations as known by them at the time the CACs were filed further demonstrates weakness of their "streamlining" argument. Defendants essentially propose that a "critical question" in this case be "resolved," and/or the scope of discovery herein determined, solely on the basis of *evidence* in the possession of Plaintiffs at the time their complaints were filed, regardless of: (1) the allegations of the complaints; (2) the fact that discovery is in its infancy; and (3) information Plaintiffs have since acquired. Again, Defendants cite no authority in support of this nonsensical proposition.

---

[5] In the DRAM direct purchaser case, for example, class members with approximately 80% of the purchases at issue opted out of the class.

[6] *In re Urethane Antitrust Litig.*, 261 F.R.D. 570, 573 (D. Kan. 2009). *Accord, e.g., Bell v. Lockheed Martin Corp.*, No. 08-692 (RBK/AMD), 2010 WL 2696455, at *5 (D.N.J. June 23, 2010); *Kiln Underwriting Ltd. v. Jesuit High School of New Orleans*, Nos. 06-04350, 06-05060, 06-05057, 2008 WL 4286491, at *3 (E.D. La. Sept. 8, 2008); *In re Commercial Money Center, Inc. Equip. Lease Litig.*, No. 1:02CV16000, 2007 WL 1306591, at *4 (N.D. Ohio May 3, 2007).

Hon. Charles Legge
September 20, 2010
Page 9

### B. Responses To The Contention Discovery At This Time Are Not Likely to Expose A Substantial Basis For A Motion Under Rule 11

Defendants also argue that Plaintiffs should respond to the contention discovery because their "responses *could* show whether there are any Rule 11 issues with plaintiffs' allegations."(Mot. at 9) (Emphasis added).  This argument fails for several reasons.

*First,* as the *Convergent* court held, the party seeking discovery into a possible Rule 11 violation must present a *substantial justification*:

> The latter inquiry, focusing on the nature of the homework plaintiffs and their counsel did before filing the complaint, would be appropriate not under normal discovery rules, but only under Rule 11.  It seems to this court that it would be unwise and unwarranted to permit Rule 11 discovery (i.e., discovery into the quality and scope of the investigation that preceded the filing of a claim) until after the party seeking the Rule 11 discovery has shown, through traditional discovery, that there is more than a speculative basis for believing that its opponent may have violated the norms set forth in Rule 11.  The interests potentially invaded by Rule 11 interrogatories are considerable; a party seeking to invade those interests should be required to present a substantial justification.

*Convergent,* 108 F.R.D. at 346.  Here, Defendants have failed to present *any* justification for Rule 11 discovery.  Defendants' assertions that Plaintiffs' discovery responses "*could* show whether there are any Rule 11 issues" are wholly speculative and indeed are contradicted by the record.  As in *Convergent,* the allegations of the CACs are "conceivable" and "plausible," and, as explained above, not only have Defendants failed to make an evidentiary showing to the contrary, their attacks on the "logic" of the CACs are meritless.  There is little question that Plaintiffs meet the requirements of Rule 11.  *See e.g., United States v. Stringfellow*, 911 F.2d 225, 226 (9th Cir. 1990) (quoting *Eastway Construction Corp. v. City of New York*, 762 F. 2d 243, 254 (2d Cir. 1985)); *McMahon v. Best*, No. C-00-00616 CRB, 2000 WL 1071828, at *6 (N.D. Cal. July 21, 2000) (Rule 11 violation occurs only where "it is patently clear that a claim has absolutely no chance of success under the existing precedents, and where no reasonable argument can be advanced to extend, modify or reverse the law as it stands.")

*Second*, the Rule 11 analysis has two components; a violation occurs only if:  (1) the action is objectively baseless; **and** (2) it was filed without an objectively reasonable inquiry by the attorney.  *See e.g., Keegan Management Co., Securities Litigation*, 78 F.3d 431, 434 (9th Cir. 1995).  The first determination, however, is an evidentiary one based on all evidence and information available, not just that known at the time a complaint was filed:

> We conclude that the district court based its decision on an erroneous view of the law when it focused on the plaintiffs' attorneys' subjective knowledge at the time they filed the complaint. It therefore abused its discretion. . .

Hon. Charles Legge
September 20, 2010
Page 10

> [citations omitted] The district court itself conceded that plaintiffs' pretrial evidence was enough to render their complaint nonfrivolous. Under these circumstances, Rule 11 sanctions could not be properly imposed.

*Id.* at 435. Thus, an account of the information and evidence possessed by Plaintiffs at the time of the CACs – *i.e.,* the second prong of the *Keegan* analysis – cannot demonstrate a substantial basis for a Rule 11 violation because it addresses only one of the two elements. *See Convergent,* 108 F.R.D. at 346. The first element, moreover, can be addressed only in the context of a dispositive motion – *e.g.,* summary judgment – which, again, requires discovery.

*Third,* it is well-settled that where, as here, the information needed to prove a claim is within Defendants' custody and/or control, the court is required to deny Rule 11 sanctions. *See, e.g., Mary Ann Pensiero, Inc. v. Lingle,* 847 F. 2d 90, 95 (3d Cir. 1988) (difficulty of proving claim and complexity of factual issues, especially where proof is in Defendants' control, mandates denial of Rule 11 sanctions).

*Finally,* it is not appropriate (and there is no legal support) for Defendants to attempt to interpose Rule 11 proceedings as a condition for discovery. *See* 1993 Advisory Committee Notes to Fed. R. Civ. P. 11 (Rule 11 motions "should not be employed as a discovery device or to test the legal sufficiency or efficacy of allegations in the pleadings.") Thus, Rule 11 does not provide any justification for compelling Plaintiffs to respond to Defendants' premature contention discovery.

### C. Responses To The Contention Discovery Will Not Materially Advance Settlement Negotiations

This purported justification is purely speculative. Defendants offer no concrete explanation of how early responses to their contention discovery will lead to settlement discussions that would not otherwise occur. There is no likelihood that Plaintiffs would agree to a settlement based on Defendants' position – *i.e.,* that CRT products were not part of the conspiracy – without discovery into the question.

### V. Conclusion

For all the foregoing reasons, Defendants' motion to compel early contention discovery should be denied.

Yours sincerely,

/s/ *Guido Saveri*_____
Guido Saveri
Interim Lead Counsel for the
Direct Purchaser Plaintiffs

Hon. Charles Legge
September 20, 2010
Page 11

/s/ *Mario Alioto*_____
Mario N. Alioto
Interim Lead Counsel for the
Indirect Purchaser Plaintiffs

cc: All Counsel via ECF
crt.317