Morgan, Lewis & Bockius LLP
One Market, Spear Street Tower
San Francisco, CA 94105-1126
Tel. 415.442.1000
Fax: 415.442.1001
www.morganlewis.com




**Diane L. Webb**
Partner
415.442.1353
dwebb@morganlewis.com

October 4, 2010

The Hon. Charles Legge
JAMS
Two Embarcadero Center, Suite 1500
San Francisco, CA 94111

Re: *In re Cathode Ray Tube (CRT) Antitrust Litigation*, No. 07-5944 SC, MDL No. 1917:
**Letter Brief in Opposition to Plaintiffs' Motion to Compel Discovery of Information Antedating November of 2003**

Dear Judge Legge:

Defendants Hitachi, Ltd. ("HTL"), Hitachi Displays, Ltd. ("HDP"), Hitachi Asia, Ltd. ("HAS"), Hitachi America, Ltd. ("HAL"), and Hitachi Electronic Devices (USA), Inc. ("HED(US)") (collectively, the "Hitachi Defendants") submit this opposition to Indirect Purchaser Plaintiffs' ("IPP") and Direct Purchaser Plaintiffs' ("DPP") (collectively, "Plaintiffs") Motion to Compel Discovery of Information Antedating November of 2003 (Sept. 10, 2010) (Dkt. No 756).[1]

## I. INTRODUCTION

Plaintiffs' motion is unnecessary, premature, and mischaracterizes the Hitachi Defendants' positions regarding what they agreed to produce as well as their continued willingness to work with Plaintiffs regarding the production of documents prior to November 2003 – the pre-statute of limitations period. Rather than complete the meet-and-confer process in good faith, Plaintiffs unexpectedly and unilaterally terminated meet-and-confer discussions. Saveri Decl., Exh. 7.

[1] Plaintiffs title their three motions to compel as "Motion[s] to Compel/Strike Objections Against Hitachi Defendants." *See* Declaration of R. Alexander Saveri ("Saveri Decl.") (Dkt. Nos. 755-758). Nowhere, however, do Plaintiffs identify any specific objection to any specific discovery request much less provide support for why any specific objection should be stricken. In fact, Plaintiffs stated they intended to meet and confer on specific objections, but failed to do so. Saveri Decl., Exh. 4 at 6; Fed. R. Civ. P. 37(a)(1). The Hitachi Defendants oppose Plaintiffs' other two motions by way of separate opposition letter briefs. To the extent applicable, the Hitachi Defendants incorporate by reference herein the arguments set forth in their other oppositions.




Prior to doing so, however, Plaintiffs had never substantively responded to the Hitachi Defendants' meet-and-confer letters. Instead, on September 10, 2010, Plaintiffs announced the parties had reached an "impasse." Saveri Decl., Exh. 7. Hours later, Plaintiffs filed their three premature motions to compel.

Contrary to Plaintiffs' erroneous statements in their motions, the Hitachi Defendants never rejected Plaintiffs' proposal to "narrow and focus the pre-statute of limitations period discovery to a manageable group of custodians." Motion at 2. Instead, as the Hitachi Defendants stated in their August 12 and 27, 2010 correspondence to Plaintiffs, "the Hitachi Defendants continue[d] to be willing to work with Plaintiffs regarding the temporal scope of discovery . . . . [and] expressed [their] willingness to work with Plaintiffs to develop a custodian list and asked that Plaintiffs provide a proposed list of custodians. . . ." Saveri Decl., Exh. 6 at 2; *id*., Exh. 5 at 4.

Indeed, the Hitachi Defendants still await substantive responses to the good faith positions set forth in their August 12 and September 17th letters. Declaration of Diane L. Webb in Support of Oppositions to Motions to Compel ("Webb Decl."), ¶ 10; Exh. D. Had Plaintiffs meaningfully met and conferred, the parties likely would have reached agreement on a number of issues. In fact, several of the issues raised by Plaintiffs' motion are either moot or non-existent.

Further demonstrating that Plaintiffs' motions are premature is their failure to meet and confer with the Hitachi Defendants regarding Plaintiffs' specific discovery requests and the Hitachi Defendants' specific objections thereto. In fact, Plaintiffs stated they wished to discuss the Hitachi Defendants' "numerous additional General and Specific Objections to Plaintiffs' discovery request [*sic*]." Saveri Decl., Exh. 4 at 6. The Hitachi Defendants responded by asking Plaintiffs to provide a "detailed list identifying the disputed requests and objections on which Plaintiffs wish to meet and confer" and that "the Hitachi Defendants will be amenable to addressing the objections on a request-by-request basis." Saveri Decl., Exh. 5 at 6. Again, Plaintiffs failed to respond.

Furthermore, Plaintiffs are not entitled to the far-reaching discovery they seek. Not only is Plaintiffs' motion to compel premature, but it also should be denied for several other reasons, including, but not limited to the facts that: (1) many of the documents and information sought are not relevant; (2) many of the documents and information sought do not exist; and/or (3) there are substantial, undue burdens involved in producing even marginally relevant materials going back nineteen years as Plaintiffs request here.

Indeed, Plaintiffs' motion takes a scattershot approach to discovery and fails to acknowledge, much less address, significant differences among the Hitachi Defendants with respect to the discovery Plaintiffs seek to compel. There are five separate Hitachi Defendants. And, as set forth in each of their individual responses to Plaintiffs' discovery requests and during the short-circuited meet-and-confer process, when and where each Hitachi Defendant engaged in the CRT




tubes or CRT Finished Products business differs and, as a consequence, the burdens Plaintiffs' discovery requests impose differ as well.

Some of the Hitachi Defendants never manufactured or sold CRT tubes. Others never manufactured or sold CRT Finished Products. Still others never sold CRT tubes or CRT Finished Products into the United States. The Hitachi Defendants cannot be lumped together as Plaintiffs attempt to do here to obtain an expedient, omnibus discovery ruling against "Hitachi" without regard for the facts. As demonstrated below, each Hitachi Defendant is situated differently and must be examined separately with respect to Plaintiffs' discovery requests and the consequential burdens.

Accordingly, Plaintiffs' motion to compel the production of documents and information prior to the statute of limitations should be denied, and the parties should be ordered to complete the meet-and-confer process.

## II. ARGUMENT

### A. Because Plaintiffs' Motion Is Premature, It Should Be Denied; Plaintiffs Should be Ordered to Continue the Meet-and-Confer Process.

HTL, HDP, and HED(US) previously articulated their willingness to work with Plaintiffs and offered "to produce documents created prior to November 2003 for identified, agreed-upon custodians." Webb Decl. ¶ 10, Exh. D at 2; *see also* Saveri Decl., Exh. 5 at 4 ("If Plaintiffs produce a list of custodians that they believe to be relevant, the Hitachi Defendants are prepared to discuss that list with Plaintiffs in good faith to further the discovery process."); *id*., Exh. 6 at 2 ("[I]n a good faith effort to make progress, we expressed our willingness to work with Plaintiffs to develop a custodian list and asked that Plaintiffs provide a proposed list of custodians. We have yet to receive a response."). This offer mirrors Plaintiffs' proposal to limit discovery to an agreed-upon custodian list. Motion at 10. Plaintiffs, however, never provided the requested custodian list and instead rushed to move to compel.

Because Plaintiffs continue to fashion custodian lists with other defendants, Plaintiffs' uncompromising position as to the Hitachi Defendants – attempting to hold them to a higher standard – appears to be a hypocritical effort to support this premature motion. Webb Decl., ¶ 7, Exh. A at 59:15-17 (I. Simmons for Samsung Electronics: "[M]y discussions thus far [with Plaintiffs] have not been any kind of subject matter limitations, but custodians."); *see id*., ¶ 12; Exh. F ("[Panasonic Defendants] are willing to work with you on a limited number of agreed upon custodians whose records would be searched prior to the limitations period. We suggest that you provide us with your list of proposed custodians at your earliest convenience to facilitate a discussion in this regard."). The Hitachi Defendants' offer to discuss and request for a




proposed custodian list is *no different* from other defendants' proposals. Plaintiffs, however, inexplicably moved against the Hitachi Defendants only.

Accordingly, with respect to HTL, HDP, and HED(US) Plaintiffs' motion should be denied, and the parties should be ordered to complete the meet-and-confer process to develop an agreed-upon custodian list to narrow the scope of Plaintiffs' discovery requests appropriately.

**B. Plaintiffs' Discovery Requests Span More Than Nineteen Years and Constitute An Undue Burden.**

As outlined above, the Hitachi Defendants agreed to meet and confer with Plaintiffs to discuss producing documents on a custodian basis to minimize the significant burdens the Hitachi Defendants would face if they had to produce documents responsive to Plaintiffs' hundreds of discovery requests going back some nineteen years. The burden to respond to Plaintiffs' requests would be substantial.

Discovery is not permitted when "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C)(iii); *id.* 26(b)(2)(B) ("A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost.").

Thus, while a party may request discovery that is relevant, the responding party is not obligated to produce it where the burden to do so outweighs the potential benefit of the discovery in the litigation. *See In re ATM Fee Antitrust Litigation*, No. C 04-02676 CRB, 2007 WL 1827635, at *2 (N.D. Cal. Jun. 25, 2007) ("Although the discovery rules entitle Plaintiffs to seek all material 'reasonably calculated to lead to the discovery of admissible evidence,' their theoretical entitlement yields to practical considerations when 'the burden or expense of the proposed discovery outweighs its likely benefit.'"); *Carlson Cos. v. Sperry & Hutchinson Co.*, 374 F. Supp. 1080, 1088 (D. Minn. 1974) (monopolization case recognizing that "when the requests approach the outer bounds of relevance and the information requested may only marginally enhance the objectives of providing information to the parties or narrowing the issues, the Court must then weigh that request with the hardship to the party from whom the discovery is sought.").




Here, Plaintiffs' motion focuses almost exclusively on the purported relevance of pre-statute-of-limitations discovery. Plaintiffs miss the mark.[2] The more salient inquiry is to examine the very real and undue burdens that would be imposed on the Hitachi Defendants if they were required to search for, review, and produce far-ranging, often irrelevant discovery for a nineteen-year period.

Courts have recognized that discovery in antitrust litigation can be extremely burdensome and that there are limits. *Franchise Realty Interstate Corp. v. San Francisco Local Joint Exec. Bd. of Culinary Workers*, 542 F.2d 1076, 1082 (9th Cir. 1976) ("Particularly in antitrust litigation, the long drawn out process of discovery can be both harassing and expensive."); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 546 (2007) (noting "[i]t is one thing to be cautious before dismissing an antitrust complaint in advance of discovery, but quite another to forget that proceeding to antitrust discovery can be expensive. That potential expense is obvious here, where plaintiffs represent a putative class of at least 90 percent of subscribers to local telephone or high-speed Internet service in an action against America's largest telecommunications firms for unspecified instances of antitrust violations that allegedly occurred over a 7-year period.").

Plaintiffs seek documents as far back as 1991 – twice as long as the period that was at issue in *Twombly*. Combined, Plaintiffs served over one hundred document requests and interrogatories on the Hitachi Defendants alone, which cover an extremely broad range of topics, including CRT tubes and CRT Products sales data, production capacity, manufacturing costs, corporate financial data, business plans, budgets, market analysis, and competitor communications and meetings. *See*, *e.g.*, Webb Decl., ¶ 8; Exh. B, Request Nos. 5, 10, 12, 16, 17, 26, and 27.

To require the Hitachi Defendants to search for, review, and produce documents, without any limitation, in response to Plaintiffs' numerous, overly broad discovery requests – spanning nineteen years – constitutes an extraordinary burden, especially given that <u>all</u> of the Hitachi Defendants had withdrawn from the CRT tubes business by at least 2003, nearly four years prior to Plaintiffs' filing their complaints.

### C. Unlimited Production of Pre-Statute of Limitations Documents Is Unduly Burdensome.

Courts have barred unlimited discovery into events predating the statute of limitations period. *See*, *e.g.*, *American Chiropractic Ass'n v. Trigon Healthcare*, Case No. 1:00CV00113, 2002 U.S.

---

[2] Plaintiffs erroneously reference discovery rulings and the plea agreement in the *TFT-LCD* litigation in a transparent attempt to gain leverage. In referring to the *TFT-LCD* litigation, Plaintiffs misstate Judge Illston's rulings and fail to provide any justification as to why the *TFT-LCD* litigation is relevant in any way to their motions here. *See* Section III. B. 2, Hitachi Defendants' Opposition to Plaintiffs' Motion to Compel Finished Products Discovery.




Dist. LEXIS 11571, at *2-4 (W.D. Va. June 26, 2002) (barring discovery dating six years prior to limitations period in action claiming anti-competitive activities); *In re Fertilizer Antitrust Litig*., Master File No. MF-75-1, 1979 WL 1690 at *10, (E.D. Wash. Sept. 14, 1979) (prohibiting pre-statute-of-limitations discovery because "plaintiffs have not presented sufficient justification for the burden that would be placed on the defendants and the court by extending the time frames for discovery").

In cases where courts permitted pre-statute-of-limitations discovery, they required that the purported benefits of such historical discovery be weighed against the burdens. For example, in *In re ATM Fee Antitrust Litig.*, the court noted it "recognizes that historical information is important to Plaintiffs' case," but "[a]t the same time, the Court appreciates the burden of sifting through 700 boxes and the many millions of documents contained therein." 2007 WL 1827635, at *6. Thus, here, where the requested documents span nearly two decades, any purported benefit Plaintiffs may obtain must be weighed against the significant burdens involved in searching for, reviewing, and producing such documents.

Plaintiffs erroneously argue that, even in the face of established burden, "the Court may nonetheless order discovery if the Plaintiffs show good cause. *See* Fed. R. Civ. P. 26(b)(2)." Motion at 9. Plaintiffs are presumably referring to Fed. R. Civ. P. 26(b)(2)(B), which relates to "specific limitations on electronically stored information," not to all discovery permitted under the Federal Rules.

For example, *In re Folding Carton Antitrust Litig*. upon which Plaintiffs rely, is inapplicable. Motion at 9-10 (relying on *In re Folding Carton Antitrust Litig*., 83 F.R.D. 260 (N.D. Ill. 1979)). *Folding Carton* was decided 17 years before subparagraph B was added to Rule 26(b)(2) in 2006. Accordingly, *Folding Carton* did not address whether good cause had been established to justify the discovery of old electronically stored information ("ESI") in the face of undue burdens, like those present here, but rather addressed the general balancing test of burden and relevance.

Furthermore, the Hitachi Defendants are able to demonstrate significant, undue burdens. Where a party demonstrates that producing information would be "reasonably inaccessible because of undue burden or cost," a requesting party is entitled to that it only if it "shows good cause." Fed. R. Civ. P. 26(b)(2)(B); *see also Daimler Truck N. Am. LLC v. Younessi*, No. 08-MC-5011RBL, 2008 WL 2519845 at *4 (W.D. Wash. June 20, 2008) (finding requesting party failed to establish good cause to overcome burdens producing party demonstrated to produce electronically stored information that required a "broad ranging search" to obtain). And, despite Plaintiffs' misplaced efforts to lump the five Hitachi Defendants into a non-existent collective, "Hitachi," each one is a separate and distinct corporate entity. Each Hitachi Defendants' role and participation in the CRT business differs, and their respective burdens to produce pre-statute of limitations documents in response to Plaintiffs' requests must be evaluated separately.




1. **Plaintiffs' motion as to HTL, HDP, and HED(US) is improper and should be denied.**

As demonstrated above, Plaintiffs' motion is premature, and they should be ordered to complete the meet-and-confer process. HTL, HDP and HED(US) agreed in good faith to discuss the creation of an agreed-upon list of custodians from whom pre-statute of limitations documents will be collected and produced, despite the substantial burdens and expense to collect, review, and produce documents that predate the statute of limitations period.

Specifically, both HTL and HDP were out of the CRT tubes business well prior to 2003. Saveri Decl., Exh. 5 at 3; Hitachi Defendants' Request for Judicial Notice in Support of Oppositions to Motions to Compel ("RJN"), ¶ 1; Exh. 1. And, HED(US) has not sold CRT tubes since 2003. Webb Decl., ¶ 9, Exh. C at 4; Declaration of Thomas Heiser in Opposition to Plaintiffs' Motion to Compel/Strike Objections Against the Hitachi Defendants ("Heiser Decl."), ¶ 2. Yet, Plaintiffs erroneously seek to compel these entities to produce CRT-related documents up through 2007 as well as CRT Finished Products materials.

HTL, for example, announced its exit from the CRT tubes business on July 26, 2001. RJN, ¶ 1; Exh. 1. HTL also informed Plaintiffs that it spun off its display business to HDP on February 28, 2002. Webb Decl., ¶ 13, Exh. G. Thus, HDP never actually sold CRTs or CRT Finished Products but retains HTL's long-defunct businesses' historical documents.

With respect to ESI, there are approximately 8 gigabytes of HTL data that also may contain information responsive to Plaintiffs' requests. Webb Decl., ¶ 2. The cost to process and review this ESI likewise is substantial. Processing costs are estimated to be at least $12,000. *Id*. A review of this size would likely entail at least 7 weeks, require a team of 5 reviewers, working 8-hour days, at a cost of at least $135,000. *Id*. Additionally, there are approximately 52 HTL boxes of historical documents that potentially contain documents responsive to Plaintiffs' many discovery requests. *Id*., ¶ 3.

Similarly, there are 64 boxes HDP containing historical documents. *Id*., ¶ 4. Given the age of these documents, they are extremely fragile and require special care and processing before they can be reviewed much less produced. *Id*. The cost to copy and review these documents is substantial. *Id*.; Saveri Decl., Exh. 5 at 3.

With respect to HED(US) documents, the burden and expense of reviewing and producing documents will be in the hundreds of thousands of dollars. Webb Decl., ¶¶ 5-6. The potential responsive document universe comprises hundreds of boxes of hard copy documents, as well as several gigabytes of ESI. *Id*. This represents an unsupportable, unduly burdensome expense for a small company such as HED(US). Heiser Decl., ¶¶ 1-4.




HED(US) has only forty employees and annual revenues of only $24-30 million. *Id.*, ¶ 4. Yet, HED(US) has identified at least 11 gigabytes of pre-statute-of-limitations data (approximately 84,000 documents) that may contain responsive material. In fact, it would take 5 reviewers, working 8-hour days, at least 11 weeks to review these materials and ready them for production. Webb Decl., ¶ 5. All and all, it would cost at least $186,000 to conduct such a review. *Id*. This is an untenable and undue financial burden for HED(US). Noteworthy is that this estimate does not include the approximately 15 gigabytes (62,000 documents) of potentially responsive statute-of-limitations-period documents that HED(US) is in the process of reviewing and readying for production. *Id.*, ¶ 6. Moreover, there are approximately 112,000 undated HED(US) hard-copy documents that it is also reviewing. *Id*. The estimated cost to conduct these two latter categories of review alone is at least $383,500. *Id*.

The burdens HED(US) will experience in collecting, reviewing and producing documents responsive to Plaintiffs' requests for a nineteen-year period weigh in favor of narrowing Plaintiffs' discovery requests. In *In re ATM Fee Antitrust Litigation*, the court recognized that "sifting through 700 boxes and the many millions of documents contained therein" of historical data from a ten-year period constituted a significant burden. 2007 WL 1827635, at *6. As the above makes plain, the burden on HED(US) to produce pre-statute of limitations documents outweighs any potential benefits Plaintiffs may derive.

Because of the significant burdens involved in producing documents responsive to Plaintiffs' hundreds of requests for a time span of nineteen years, HTL, HDP, and HED(US) sought to minimize those burdens through meet and confer efforts with Plaintiffs. Thus, HTL, HDP and HED(US) agreed to work with Plaintiffs and requested Plaintiffs provide a suggested-list of custodians for whom pre-statute of limitations documents would be collected and reviewed. Plaintiffs never provided such a list. Accordingly, Plaintiffs' motion should be denied, and they should be ordered to resume meeting and conferring.

2. **Plaintiffs' motion is improper as to HAS and should be denied.**

HAS is situated differently from all other Hitachi Defendants. HAS is located in Singapore. It never sold CRTs into the United States, a fact that Plaintiffs were informed of as early as October 15, 2008. Webb Decl., ¶ 9, Exh. C at 4. Saveri Decl., Exh. 5 at 4 ("HAS . . . never sold any products that entered the U.S. nor manufactured finished products."). Further, as HAS informed Plaintiffs in its discovery responses, HAS withdrew from the CRT tubes business in 2002, well prior to the statute of limitations period. Webb Decl., ¶ 9, Exh. C at 4.

Because HAS never sold any products that entered the United States or manufactured finished products, Plaintiffs' motion as to HAS should be denied outright.[3] Foreign conduct is generally

[3] *See generally* Hitachi Defendants' Opposition to Plaintiffs' Motion to Compel Foreign Discovery.




outside the reach of the U.S. antitrust laws. *See Hoffmann-LaRoche v. Empagram S.A.*, 542 U.S. 155, 158 ("The Foreign Trade Antitrust Improvements Act of 1982 (FTAIA) excludes from the Sherman Act's reach much anticompetitive conduct that causes only foreign injury. It does so by setting forth a general rule stating that the Sherman Act 'shall not apply to conduct involving trade or commerce . . . with foreign nations.' 96 Stat. 1246, 15 U.S.C. § 6a."). Under the FTAIA, the U.S. antitrust laws do not apply to foreign trade or commerce unless there are anticompetitive effects on U.S. commerce that are direct, substantial, and reasonably foreseeable. *F. Hoffman-LaRoche Ltd. v. Empagran S.A.*, 542 U.S. 155, 162 (2004); *see also Empagran S.A. v. F. Hoffman-LaRoche Ltd.*, 417 F.3d 1267 (D.C. Cir. 2005).

The Supreme Court's rationale in *Empagran* makes clear that the U.S. antitrust laws are not designed to govern the world but, rather, address only anticompetitive conduct that has the requisite domestic effects in the United States. Where there is not a "direct, substantial and reasonably foreseeable effect" on U.S. commerce, then there is an "insubstantial" justification to "interfere with a foreign nation's ability independently to regulate its own commercial affairs." *Id*. at 165.

The Hitachi Defendants agreed to produce all documents, wherever located, within the statute of limitations period if they refer to: (1) sales of CRTs in the United States (including exports to the United States); (2) purchasers of CRTs in the United States; (3) specific models of CRTs sold in the United States; or (4) CRT business plans that refer to the U.S. market. In addition, the Hitachi Defendants agreed to produce documents where it is ambiguous whether the document refers to foreign or U.S. commerce.

The Hitachi Defendants, however, propose to exclude documents related to CRT sales that went to and stayed in foreign countries[4] – such as HAS's – which this Court previously indicated may be appropriate. Webb Decl., ¶ 7, Exh. A at 71:7-9 (Defendants "have a right to object to producing information that went to foreign countries that stayed in foreign countries); *id*. at 73:6-10 ("[T]he basic distinction, I believe, is if your conspiracy is alleging an impact on the United States, you get it. <u>If all you can show is sale to a foreign market that stays in a foreign market, I've got trouble with it</u>.") (emphasis added).

Accordingly, the materials Plaintiffs request from HAS are irrelevant to Plaintiffs' antitrust claims. To require HAS to search for, review, and produce irrelevant documents and information is unduly burdensome on its face. Plaintiffs' motion as to HAS is improper and should be denied in its entirety.

---

4 Plaintiffs submitted a separate motion to compel with respect to discovery of foreign conduct and pricing (Dkt. No. 757), to which the Hitachi Defendants filed a separate opposition.




**3. Plaintiffs' motion is improper as to HAL and should be denied.**

HAL presents an entirely different scenario. HAL discontinued selling CRTs in 1998. Webb Decl., ¶ 10, Exh. D at 2; Declaration of Tillie Lim in Support of the Hitachi Defendants' Oppositions to Motions to Compel ("Lim Decl."), ¶ 2.[5] Accordingly, HAL exited the CRT tubes business at least five years prior to the statute-of-limitations period and almost ten years prior to Plaintiffs filing their complaints.

Furthermore, upon a diligent search and reasonable inquiry, HAL informed Plaintiffs in its responses to Plaintiffs' discovery requests that HAL no longer possesses any responsive CRT documents. Lim Decl., ¶ 3; Webb Decl., ¶ 16; Exh. J. Plaintiffs, nonetheless, brought a baseless motion to compel HAL to produce documents and information it does not possess. Plaintiffs' motion should be denied.

## III. CONCLUSION

The Hitachi Defendants request that Plaintiffs' Motion to Compel Discovery of Information Antedating November of 2003 be denied in its entirety as either premature or unsupported. HTL, HDP, and HED(US) are willing to work with Plaintiffs to arrive upon a mutually-agreed custodian list to help narrow Plaintiffs' discovery requests and mitigate the burden. For example, HED(US) faces significant, undue burdens if required to review and produce documents for the entire period Plaintiffs request. This is especially so when viewed in light of the number of HED(US) employees and its annual revenues. HAS presents an entirely different case as it never sold CRT tubes into the U.S. And, HAL has no documents to produce.

Sincerely,

/s/ Diane L. Webb
Diane L. Webb

cc: All Counsel via ECF

---

[5] Due to logistics the Lim Declaration will be submitted following this filing.