Morgan, Lewis & Bockius LLP
One Market, Spear Street Tower
San Francisco, CA  94105-1126
Tel.  415.442.1000
Fax: 415.442.1001
www.morganlewis.com



**Diane L. Webb**
Partner
415.442.1353
dwebb@morganlewis.com

October 4, 2010

The Hon. Charles Legge
JAMS
Two Embarcadero Center, Suite 1500
San Francisco, CA 94111

Re:   *In re Cathode Ray Tube (CRT) Antitrust Litigation*, No. 07-5944 SC, MDL No. 1917:
      **Letter Brief in Opposition to Plaintiffs' Motion to Compel Discovery of Foreign Conduct and Pricing**

Dear Judge Legge:

Defendants Hitachi, Ltd. ("HTL"); Hitachi Displays, Ltd. ("HDP"); Hitachi Asia, Ltd. ("HAS"); Hitachi America, Ltd. ("HAL"); and "Hitachi Electronic Devices (USA), Inc. ("HED(US)") (collectively, the "Hitachi Defendants") submit this opposition to Direct Purchaser Plaintiffs' ("DPPs") and Indirect Purchaser Plaintiffs' ("IPPs") (collectively, "Plaintiffs") Motion to Compel Discovery of Foreign Conduct and Pricing (Sept. 10, 2010) (Dkt. 757).[1]

## I.   INTRODUCTION

Plaintiffs accuse the Hitachi Defendants of precluding "highly relevant" discovery. Motion at 5. Specifically, Plaintiffs imply that the Hitachi Defendants have shirked their discovery obligations because they refuse to produce virtually every document related to either their CRT tubes or CRT Products[2] businesses wherever located and without regard to whether or not the document

---

[1] Plaintiffs title their three motions as "Motion[s] to Compel/Strike Objections Against Hitachi Defendants." *See* Declaration of R. Alexander Saveri ("Saveri Decl."), (Dkt. Nos. 755-758). Nowhere, however, do Plaintiffs identify any specific objection to any specific discovery request much less provide support for why any specific objection should be stricken. In fact, Plaintiffs stated they intended to meet and confer with the Hitachi Defendants on specific objections, but had not done so as of the filing of the motions. Saveri Decl., Exh. 4 at 6; Fed. R. Civ. P. 37(a)(1). The Hitachi Defendants oppose Plaintiffs' other two motions by way of separate opposition letter briefs. To the extent applicable, the Hitachi Defendants incorporate by reference herein the arguments set forth in their other oppositions.

[2] "CRT Products" refers to finished products containing CRT tubes, which during the meet and confer Plaintiffs identified as TVs and computer monitors.

The Hon. Charles Legge
October 4, 2010; Page 2



has any connection to U.S. commerce.  Not only is this not the standard, Plaintiffs misstate the Hitachi Defendants' position.  They never objected to producing documents Plaintiffs are legitimately entitled to under Rule 26 and are in the process of collecting, reviewing, and producing responsive materials.  To be clear, the Hitachi Defendants agreed to produce documents that have a relationship to U.S. commerce <u>wherever located</u>.  The Hitachi Defendants' <u>only</u> objection relevant to this motion is to the production of information that clearly relates to purely foreign sales or commerce implicating discrete areas outside of the United States.  This reasonable objection – based on Rule 26(b)'s requirements – takes into account all the circumstances and whether the information sought is of sufficient relevance to justify the burden.

Plaintiffs' discovery demands are unreasonable under Rule 26(b) – particularly in light of the burdens the Hitachi Defendants would face trying to comply, which are multiplied by Plaintiffs' refusal to compromise on the relevant time period and insistence on CRT products discovery equivalent to that for CRT tubes even though Plaintiffs apparently have no reason to believe that there was a conspiracy to set the price of CRT products.  In short, Plaintiffs' current discovery proposal forces the Hitachi Defendants to search for, review, and hand over all documents and data related to their worldwide CRT businesses for the past 19 years – virtually all information for these businesses that the Hitachi Defendants possess.  This is neither a fair nor efficient way to proceed.

## II.    BACKGROUND

Plaintiffs' complaints allege Sherman Act Section 1 violations and seek class-wide damages for purchases of CRT tubes or CRT Products *in the United States*.  IPPs' Second Amended Compl., ¶¶ 57-58; DPPs' Amended Compl., ¶¶ 45-46.  Plaintiffs recognize that antitrust cases brought in U.S. courts under U.S. antitrust statutes, as a matter of law, cover only harm in the United States.  They do not allege that any purported overcharge was paid overseas.  Yet, in March 2010, Plaintiffs launched discovery on virtually every aspect of the Hitachi Defendants' CRT global operations *without any geographic limitations whatsoever*, going back to at least 1995 and in some cases as far back as 1991.  Plaintiffs seek over 70 broad categories of information.  For example, Plaintiffs request:

- All documents and electronic data relating to sales of CRTs and CRT Products <u>from 1991</u>, including customer names and customer addresses; sales terms; sales and shipment dates; product type, class, category, description, and respective use; sales volume; unit price information, gross price, and actual net prices; discounts, credits and rebates; shipping charges and terms; any other related charges; and amounts paid, dates paid invoice numbers, and purchase order numbers. Declaration of Diane L. Webb in Support of Oppositions to Motions to Compel ("Webb Decl."), ¶¶ 8 and 14; Exhs. B and H (DPPs' Second Set of Requests ("DPPs Second Set") No. 5, IPPs' Second Set of Requests ("IPPs Second Set") No. 5);

The Hon. Charles Legge
October 4, 2010; Page 3



- All documents relating to contracts, offers or proposals for CRT or CRT Products sales from 1991 to the present. *Id.* (DPPs' Second Set No. 9, IPPs' Second Set No. 9);

- All documents relating to each facility that produced CRTs or CRT Products from 1991 and all capacity information for each facility, including, among other things, each type, class, category and respective use of CRT or CRT Products produced and the amounts of each produced during each month of the relevant period. *Id*. (DPPs Second Set No. 10, IPPs Second Set No. 10); and

- For each employee who has or had any non-clerical responsibility relating to pricing for CRTs or CRT Products, all copies of diaries, calendars, appointment books, "to do" lists, day timers or appointment notes; trip and travel logs or records; copies of expense reports; copies of telephone number logs, directories, notebooks, Rolodex cards, bills, statements or records of phone calls; the complete personnel files; and documents relating to membership in trade associations or industry groups. *Id*. (DPPs Second Set No. 28, IPPs Second Set No. 28).[3]

The Hitachi Defendants served timely responses, in which each objected to the extent Plaintiffs' requests sought documents regarding "sales outside of the U.S. and unrelated to U.S. commerce" on the basis that such information is beyond the scope of this litigation, and the parties began to meet and confer. *See e.g.*, Webb Decl., ¶ 16; Exh. J; Saveri Decl., Exh. 5. During this discussion and in subsequent correspondence, the Hitachi Defendants made clear that they intended to produce all documents – even if located in foreign jurisdictions – related to U.S. commerce, including foreign transactional discovery. Webb Decl., ¶ 10; Exh. D. The only foreign CRT documents they proposed to exclude are those related to sales that went to and stayed in foreign countries. Plaintiffs, however, rejected this proposal.

---

[3] The Hitachi Defendants also objected to Plaintiffs' requests that seek documents: (1) relating to, prepared for, submitted to, or received from any foreign governmental or legislative investigative body relating to the production, sale, marketing, pricing or distribution of CRT or CRT Products (DPP Second Set No. 34, IPP Second Set No. 34) and (2) relating to proffers, transcripts, notes, summaries, testimony, witness statements, or responses to requests for information produced by defendants to, or were seized by any, foreign governmental agency in Italy, Canada, the European Union, India, Hong Kong, Hungary, Thailand, Malaysia, Korea, Japan, Singapore, China or Taiwan (DPP Second Set No. 35, IPP Second Set No. 35). Plaintiffs' current motions do not challenge these specific objections. Nowhere do Plaintiffs argue the complex issues arising out of requests for broad foreign regulator discovery, none of the cases they rely upon address such issues directly, and any such motion would necessarily be a much more involved process (as is occurring in the TFT-LCD action), including the need to seek the input and positions of any foreign bodies involved. Report of Special Master, *In re Methionine Antitrust Litig.*, MDL No. 01-1311 CRB (N.D. Cal. June 17, 2002) (holding requiring production of documents created for foreign authorities would violate international comity and investigatory and self-evaluative privileges); *Aronson v. McKesson HBOC*, No. 99-CV-20743, 2005 WL 934331 (N.D. Cal. Mar. 31, 2005) (discussing work product doctrine in circumstance of disclosure to government).

The Hon. Charles Legge
October 4, 2010; Page 4



Instead, Plaintiffs demand the Hitachi Defendants provide <u>all documents</u>, regardless of whether they have anything to do with U.S. commerce or the U.S. market, for CRT tubes or CRT Products; for example, all sales information for CRTs made in Japan sold in Japan to a Japanese customer. Similarly, they would have the Hitachi Defendants produce personal employment information for employees who had no responsibility for sales to or from the United States.[4] This does not make sense and surely is not contemplated by Rule 26, especially in light of the burdens imposed to collect, review, and produce documents that have no relationship to the United States.

### III.     ARGUMENT

####      A.     Plaintiffs' Requests for Documents That Exclusively Relate to Foreign Markets Fall Outside the Bounds of Proper Discovery.

#####           1.     Relevancy in antitrust cases is not limitless.

Though the scope of permissible discovery in antitrust cases may be broad, it is not without bounds. *Pacific Gas and Elec. Co. v. Lynch*, No. C-01-3123, 2002 WL 32812098, at *1 (N.D. Cal. Aug. 19, 2002) ("Relevancy, for the purposes of discovery, is defined broadly, although it is not without 'ultimate and necessary boundaries.'") (citations omitted).[5] Specifically, Rule 26 permits discovery of matters "relevant to the *claim* or *defense* of any party." Fed. R. Civ. P. 26(b)(1) (emphasis added); *Bryant v. Mattel, Inc.*, Nos. C04-09049, CV 04-09059, CV 05-2727, 2007 WL 5432959, at *3 (C.D. Cal. Apr. 19, 2007) ("Rule 26 of the Federal Rules of Civil Procedure provides that '[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party.' Fishing expeditions to discover new claims, however, are not permitted.") (citation omitted). Inquiry into the subject matter of the action requires a showing of good cause. Fed. R. Civ. P. 26(b)(1).

Following Rule 26's 2000 amendments, parties may no longer seek tangentially-related discovery in hopes it may yield some shred of evidence. *In re Ashworth, Inc. Sec. Litig.*, 2002

---

[4] Plaintiffs ignore the realities of the CRT industry. CRT sales were predominantly regional in nature. CRT manufacturers typically supplied customers located in their region, particularly with respect to medium and large sized tubes, because of the heavy, fragile nature of CRTs, which makes long-distance transport costly, including other factors such as currency differences, tariffs, and trade protection laws. Because of the geographic variation in demand for particular CRT tube sizes, the individual CRT tube factories servicing those regions would generally limit their production to those sizes demanded in the region. For example, HAS never sold products to the U.S.

[5] *See also*, *In re ATM Fee Antitrust Litig.*, No. C04-02676, 2007 WL 1827635, at *2 (N.D. Cal. Jun. 25, 2007) ("Although the discovery rules entitle Plaintiffs to seek all material 'reasonably calculated to lead to the discovery of admissible evidence,' their theoretical entitlement yields to practical considerations when 'the burden or expense of the proposed discovery outweighs its likely benefit.'"); *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1072 (9th Cir. 2004) ("District courts need not condone the use of discovery to engage in 'fishing expeditions.'").

The Hon. Charles Legge
October 4, 2010; Page 5



WL 33009225, at *2 (S.D. Cal. May 10, 2002) ("The rule change signals to the court that it has the authority to confine discovery to the claims and defenses asserted in the pleadings, and signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not identified in the pleadings."). Even in antitrust cases, courts craft parameters to guard against broad productions of irrelevant documents. *Franchise Realty Interstate Corp. v. San Francisco Local Joint Exec. Bd. of Culinary Workers*, 542 F.2d 1076, 1083 (9th Cir. 1976) (concerning antitrust litigation: "[t]he potential for possible abuse of the liberal discovery provisions of the Federal Rules of Civil Procedure may likewise exist in this type of case to a greater extent than they do in other litigation.").

Indeed, the Supreme Court has recognized that "private antitrust litigation can be enormously expensive . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 573 (2007). It is axiomatic that, even in cases where complaints have been upheld on motions to dismiss, discovery is governed by Rule 26's restrictions and is subject to courts' discretion to reasonably limit its scope to control expense and burden. *Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988) (upholding discovery stay: "The district court has wide discretion in controlling discovery. Such rulings will not be overturned unless there is a clear abuse of discretion."); *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002) ("[B]road discretion is vested in the trial court to permit or deny discovery, and its decision to deny discovery will not be disturbed except upon the clearest showing that denial of discovery results in actual and substantial prejudice to the complaining litigant."). Accordingly, Plaintiffs' efforts to cast a worldwide net around information plainly not impacting U.S. commerce ensures production of documents with "no possible bearing" on the claims or defenses in this case must be rejected.

> **2.    Relevancy is defined by reference to this action's claims and defenses.**

While the Foreign Trade Antitrust Improvements Act of 1982, 15 U.S.C. § 6a ("FTAIA"), is not a "discovery" statute, it necessarily informs the question of when – and to what extent – foreign activities may be relevant and, therefore, subject to discovery pursuant to Rule 26(b)(1). Under the FTAIA, the U.S. antitrust laws do not apply to foreign trade or commerce unless there are anticompetitive effects on U.S. commerce that are direct, substantial, and reasonably foreseeable. *F. Hoffman-LaRoche Ltd. v. Empagran S.A.*, 542 U.S. 155, 162 (2004); *see also Empagran S.A. v. F. Hoffman-LaRoche Ltd.*, 417 F.3d 1267 (D.C. Cir. 2005).

The Supreme Court's rationale in *Empagran* is important even in this discovery context. Indeed, it makes clear that the U.S. antitrust laws are not designed to govern the world but, rather, address only that anticompetitive conduct with the requisite domestic effects in the U.S. Where there is not a "direct, substantial and reasonably foreseeable effect" on U.S. commerce, then there is an "insubstantial" justification to "interfere with a foreign nation's ability independently to regulate its own commercial affairs." *Empagran*, 542 U.S. at 165.

The deference accorded foreign sovereigns in "maintain[ing] the integrity of [their] own antitrust enforcement system[s]" is not to be reduced because this dispute is about the extent of permissible discovery rather than, as a threshold matter, whether a Sherman Act claim can be brought in the first place. *Id*. at 168-69. Indeed, "[d]iscovery for use in a judicial or

The Hon. Charles Legge
October 4, 2010; Page 6



administrative proceeding is an exercise of jurisdiction by a state." *Restatement (Third) of Foreign Relations Law of the U. S.*, § 442 cmt. A (1987); *see Société Nationale Industrielle Aerospatiale v. U.S. Dist. Court for the So. Dist. of Iowa*, 482 U.S. 522, 546 (holding "comity" should temper discovery in "suits involving foreign states"). Thus, Plaintiffs miss the point when they claim that "nothing in the FTAIA or the cases interpreting it suggests that the statute precludes discovery of information relating to foreign commerce." Motion at 2.

In fact, all the cases Plaintiffs cite recognize that the FTAIA counsels that foreign discovery should be permitted only "to the extent it is otherwise relevant to the claims asserted." Motion at 2; *see, e.g., In re Intel Corp. Microprocessor Antitrust Litig.*, No. 05-1717, 2007 WL 137152, at *11 (D. Del. Jan. 12, 2007) ("*Intel*") (finding only "FTAIA does not prohibit the discovery of information that is otherwise discoverable" and permitting foreign discovery related to exports from United States) (emphasis added); *In re Aspartame Antitrust Litig.*, No. 2:06-CV-1732, 2008 WL 2275531, at *2 (E.D. Pa. May 13, 2008) (recognizing *Empagran* "does not preclude all foreign discovery *in connection with establishing domestic antitrust violations*") (emphasis added); *In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538, 576 n.44 (M.D. Pa. 2009) (recognizing foreign discovery must be "relevant to domestic claims" and FTAIA guides proper scope of discovery); *In re Automotive Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2004 U.S. Dist. LEXIS 29160, at *9-10 (E.D. Pa. Oct. 29, 2004) (ordering foreign discovery only because discovery requests were deemed relevant to domestic antitrust claims); *In re Urethane Antitrust Litig.*, 261 F.R.D. 570, 575 (D. Kan. 2009) (recognizing "nothing in the FTAIA or *Empagran* precludes discovery related to foreign commerce that is *relevant to antitrust claims alleging a domestic injury*") (emphasis added) (internal citations omitted).

This standard – the effect on U.S. commerce – is precisely the standard the Hitachi Defendants set forth as a guide for measuring the relevancy of Plaintiffs' discovery requests pursuant to Rule 26(b)(1). The Hitachi Defendants' agreed to produce all documents, wherever located, if they refer to: (1) sales of CRTs in the United States (including exports to the United States); (2) purchasers of CRTs in the United States; (3) specific models of CRTs sold in the United States; or (4) CRT business plans that refer to the U.S. market. Saveri Decl., Exh. 5 at 5. In addition, the Hitachi Defendants agreed to produce documents where it is ambiguous whether the subject of the document is foreign or U.S. commerce. *Id*. The only documents and information the Hitachi Defendants propose to exclude from discovery are those related to sales that were made in foreign countries – parameters this Court already indicated are appropriate. Webb Decl., ¶ 7; Exh. A at 71:7-9 (Defendants "have a right to object to producing information that went to foreign countries that stayed in foreign countries"); *id*., at 73:6-10 ("[T]he basic distinction, I believe, is if your conspiracy is alleging an impact on the United States, you get it. If all you can show is sale to a foreign market that stays in a foreign market, I've got trouble with it.").

Thus, Plaintiffs' argument that the proposed geographic limitations will exclude highly relevant documents from the production makes no sense. Motion at 5-6. In fact, Plaintiffs can only point to a single category of documents that, in their view, are relevant and would not be produced

The Hon. Charles Legge
October 4, 2010; Page 7



under the Hitachi Defendant's proposal. Specifically, Plaintiffs claim all non-U.S. transactional data is relevant to their common-impact and pass-through class certification analysis. *Id*. at 7.[6]

The Hitachi Defendants underscore that they have not categorically objected to producing foreign transactional data. To the extent such information is relevant to U.S. commerce, it will be produced. They maintain, however, that information relating to CRT tubes sold abroad that were incorporated into CRT Products manufactured abroad, which may or may not have been ultimately sold into the U.S. after passing through various OEM and retail channels, do not have a direct, substantial and reasonably foreseeable effect on domestic commerce. "The FTAIA explicitly bars antitrust actions alleging restraints in foreign markets for inputs . . . that are used abroad to manufacture downstream products . . . that may later be imported into the United States." *See United Phosphorous Ltd. v. Angus Chem. Co.,* 131 F. Supp. 2d 1003, 1009, 1014 (N.D. Ill. 2001) (noting domestic effects, if any, of such inputs "would obviously not be 'direct,' much less 'substantial' and 'reasonably foreseeable.'") (citation omitted); *In re Intel*, 476 F. Supp. 2d 452, 456 (D. Del. 2007).

### 3. The cases Plaintiffs cite are inapposite and distinguishable.

Plaintiffs contend that all conduct and related CRT tube or CRT Products sales anywhere in the world are somehow relevant to U.S. domestic commerce and that the mere incantation of the phrase "global conspiracy" is sufficient to warrant world-wide discovery. Not surprisingly, none of the cases Plaintiffs cite supports such a categorical approach. It is axiomatic that limitations on discovery must be set on a case-by-case basis. *Koch v. Koch Indus., Inc.*, No. 85-1636-C, 1992 WL 223816, at *10 (D. Kan. Aug. 24, 1992) ("Management of discovery is a largely empirical exercise requiring judges to balance the inquirer's right to know against the responder's right to be free from unwarranted intrusions, and then to factor in systemic concerns. Limits can best be set case by case.") (internal quotations omitted).[7] Indeed, in the cases relied on by Plaintiffs, the courts undertook just such a case-specific analysis and weighed the relevance of the particular discovery sought against the specific and individual burdens of producing the discovery. *See*, *e.g., In re Automotive Refinishing Paint Antitrust Litig.*, 2004 U.S.

---

[6] With respect to Plaintiffs' blanket statements that foreign evidence may be relevant in global price-fixing cases (Motion at 5-6), the Hitachi Defendants propose to exclude only those document categories that are unambiguously irrelevant to Plaintiffs' U.S. claims.

[7] *See also*, *Mazzella v. RCA Global Communications, Inc.*, No. 83 Civ. 3716, 1984 WL 55541, at *8 (S.D.N.Y. Mar. 28, 1984) ("In deciding upon the scope of discovery, the court is to balance, on a case-by-case basis, the degree of relevance and the discovering party's need for the information against the burdensomeness of production."); *United States v. Medtronic, Inc.*, Nos. 95-1236, 96-1309, 2000 WL 1478476, at *1 (D. Kan. Jul. 13, 2000) ("Because each case and its related facts vary considerably, limitations [on discovery] are set on a case by case basis.").

The Hon. Charles Legge
October 4, 2010; Page 8



Dist. LEXIS 29160, at *15 ("the scope and conduct of discovery are well within the sound discretion of the trial court.").[8]

In this regard, Plaintiffs' reliance on what the Hitachi Defendants did or did not do in connection with discovery in the *TFT-LCD* litigation is particularly inappropriate. Leaving aside that Plaintiffs erroneously describe the *TFT-LCD* discovery rulings,[9] the scope of discovery there and the burdens involved in responding to that discovery differ from here. In particular, the *TFT-LCD* litigation involved newer technology and the relevant time period for discovery was shorter. As set forth below, the burdens the Hitachi Defendants would face here are significant and outweigh the potential relevance, if any, of discovery that only relates to foreign sales or commerce.

Moreover, five of the decisions Plaintiffs cite do not deal directly with the implications of *Empagran*. In fact, *In re Vitamins*, and *U.S. v. Dentsply Int'l, Inc.*, 2000 WL 654286 (D. Del., May 10, 2000) were decided before *Empagran*.[10] *In re Plastics Additives* and *Smithkline Beecham Corp. v. Apotex Corp.*, No. 99-4304, 2006 WL 279073, at *3 (E.D. Pa. Jan. 31, 2006) do not mention the decision.[11] While *In re Automotive Refinishing Paint* does contain a reference to *Empagran*, nowhere does it discuss relevant international comity concerns.

Indeed, Plaintiffs take *In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*, 681 F. Supp. 2d 141 (D. Conn. 2009), completely out of context. Contrary to Plaintiffs' statement (Motion at 4), the court *did not* find that the "existence of a European conspiracy makes it more likely that that the defendants engaged in a U.S. EPDM conspiracy." Rather, in connection with defendants' motion for summary judgment and request to strike certain foreign evidence, the court recognized that should plaintiffs try offer evidence for this purpose, defendants could argue

---

[8] *In re Plastics Additives Antitrust Litig.*, No. 03-2038, 2004 WL 2743591 at *14 (E.D. Pa. Nov. 29, 2004) ("defendants have not provided this Court with specific, individualized reasons why the production of documents . . . would be burdensome in this litigation"); *In re Vitamins Antitrust Litig.*, No. 99-197-TFH, 2001 WL 1049433 at *13 (D.D.C. June 20, 2001) (finding defendants did not "sufficiently explain[] how producing [the foreign documents] would unduly burden them"); *In re Urethane*, 261 F.R.D. at 575 (finding defendants made only "two passing references to the 'burden' that they will suffer if they are forced to produce" the requested documents).

[9] *See* Section III. B. 2, Hitachi Defendants' Opp. to Plaintiffs' Motion to Compel Finished Products Discovery.

[10] *Dentsply* is particularly inapposite. It was a monopoly case in which the U.S. alleged that both domestic and foreign artificial tooth manufacturers competed with defendant more successfully outside the U.S. As a result, *limited* foreign discovery was allowed on information relevant to a comparison between defendant's U.S. market share and five other countries that had similar "mature markets."

[11] *Smithkline* is also distinguishable. The foreign discovery permitted in that case (a patent infringement case with monopolization counterclaims), namely, communications with three pharmacopoeial organizations, two of which were foreign, was permitted because the allegations related to attempts to influence the standards promulgated by those organizations, making such communications relevant.

The Hon. Charles Legge
October 4, 2010; Page 9



that it would be improper to do so. *Id*. at 163. *EPDM* dealt with evidentiary concerns, not the scope of foreign discovery or the Rule 26 relevance/burden analysis conducted in that case.

As for *In re Aspartame*, the court acknowledged antitrust discovery "is not limitless." 2008 WL 2275531, at *1. Rather than order indefinable, limitless discovery, the court recognized the "vital role" capable defense counsel play in deciding the relevancy of documents to be produced, and ordered the parties to meet and confer to continue to discuss reasonable limits on the discovery requests.[12] *Id*. at *3. The same result should follow here.

Defendants do not dispute that some foreign materials may be relevant to Plaintiffs' claims, but all foreign materials, irrespective of their relation to any potential effect on U.S. commerce, clearly are not all relevant or reasonably calculated to lead to the discovery of admissible evidence. As drafted, however, Plaintiffs' document requests require the Hitachi Defendants to search for, review, and produce the kind of localized, purely foreign information – *e.g.*, local customer lists in Singapore or emails announcing that a particular shipment has cleared customs in Mexico – that has no conceivable bearing on Plaintiffs' allegations that a global conspiracy existed that directly, substantially, and was reasonably foreseeable to effect U.S. commerce.

### B. Absent the Proposed Reasonable "U.S. Commerce" Limitation, the Hitachi Defendants Will be Subject to Undue Burden.

This District has recognized in antitrust cases where plaintiffs seek foreign discovery that burden concerns are critical. *In re ATM Fee,* 2007 WL 1827635 at *3. In *In re ATM Fee Antitrust Litig.,* the court found the usefulness of the foreign discovery "pale[d] in comparison to the burden of requiring . . . defendant to provide any and all information about its global industry and its competitors, as opposed to the anticompetitive practice alleged." *Id.*[13] Plaintiffs' document requests, however, require the Hitachi Defendants to produce virtually every document in their possession having anything to do with CRT tubes or CRT Products *anywhere in the world*. The burden involved with Plaintiffs' proposed discovery obviously would be extraordinary. The Hitachi Defendants are geographically disparate. Both HTL and HDP, for example, were out of the CRT business well prior to 2003. Saveri Decl., Exh. 5 at 3; the Hitachi Defendants Request for Judicial Notice in Support of Oppositions ("RJN"), ¶ 1; Exh. 1. Yet, Plaintiffs erroneously seek to compel these entities to produce worldwide CRT tubes-related documents up through 2007 as well as CRT Products materials. And, HAS, on the other hand, is

---

[12] In *In re Intel*, the court only granted foreign discovery in connection with exports from the U.S.

[13] *See also Rebel Oil Co., Inc. v. Atl. Richfield Co.*, 133 F.R.D. 41, 45-46 (D. Nev. 1990) (adopting bifurcated approach whereby initial discovery restricted to relevant markets and entry barriers because of great hardship and expense if defendant complied with "sweeping" discovery requests); *Schmidt v. Columbia Pictures Indus. Inc.*, No. CV LV 85-819 LDG, 1986 WL 13357, at *2-3 (D. Nev. April 14, 1986) (refusing "nationwide roving commission" that would "bog down the discovery process" and holding discovery limited to document categories relating to certain geographic areas); *see also Manual for Complex Litig. (Fourth)*, § 11.41 (2010) ("underlying principle of proportionality means that even in complex litigation, discovery does not require leaving no stone unturned").

The Hon. Charles Legge
October 4, 2010; Page 10



located in Singapore.  It never sold CRTs into the U.S., which Plaintiffs were informed of as early as October 15, 2008.  Webb Decl., ¶9; Exh. C at 4.  HAS never manufactured CRT Products.  Saveri Decl., Exh. 5 at 4.  Further, HAS informed Plaintiffs in its discovery responses that it withdrew from the CRT business in 2002.  Webb Decl., ¶ 9; Exh. C at 4.

Moreover, most of the so-called foreign documents Plaintiffs request are foreign language documents, which require review by attorneys who are also fluent in foreign languages at significant cost.  Many are very old, fragile documents that will require special care and attention to review and produce, including documents that are oversized, handwritten, or stored on perforated paper, all of which will require special processing before review.  Webb Decl., ¶¶ 3-4.

Nonetheless, the Hitachi Defendants previously indicated their willingness to work with Plaintiffs and offered "to produce documents for identified, agreed-upon custodians."  *Id*., ¶ 10; Exh. D at 2; *see also* Saveri Decl., Exh. 5 at 4 ("If Plaintiffs produce a list of custodians that they believe to be relevant, the Hitachi Defendants are prepared to discuss that list with Plaintiffs in good faith to further the discovery process."); Saveri Decl., Exh. 6 at 2 ("[I]n a good faith effort to make progress, we expressed our willingness to work with Plaintiffs to develop a custodian list and asked that Plaintiffs provide a proposed list of custodians.  We have yet to receive a response.").  Plaintiffs never provided a proposed custodian list and rushed to move to compel.[14] Their motion should be denied, and the parties should be ordered to continue to meet and confer.

## IV.     CONCLUSION

As a matter of elemental fairness, the Hitachi Defendants should not be required to respond to sweeping and limitless discovery pertaining to matters unrelated to the U.S.  Plaintiffs' motion should be denied, and the parties should be ordered to complete the meet-and-confer process.

Sincerely,

/s/ Diane L. Webb
Diane L. Webb

cc: All Counsel via ECF

---

[14]  In the event this Court grants Plaintiffs' motion, it should require that Plaintiffs bear the cost of producing data from overseas, which is very expensive to search for, review, and produce.  *See OpenTV v. Liberate Tech.*, 219 F.R.D. 474, 476-77 (N.D. Cal. 2003) (ordering production costs be shared with respect to the retrieval of relatively inaccessible electronic data, which includes data stored on backup tapes or "other data not organized for retrieval of individual documents or files").