Morgan, Lewis & Bockius LLP
One Market, Spear Street Tower
San Francisco, CA  94105-1126
Tel.  415.442.1000
Fax: 415.442.1001
www.morganlewis.com



**Diane L. Webb**
Partner
415.442.1353
dwebb@morganlewis.com

October 4, 2010

The Hon. Charles Legge
JAMS
Two Embarcadero Center, Suite 1500
San Francisco, CA 94111

Re:     *In re Cathode Ray Tube (CRT) Antitrust Litigation*, No. 07-5944 SC, MDL No. 1917:
        **Letter Brief in Opposition to Plaintiffs' Motion to Compel Discovery with Respect to
        CRT Products**

Dear Judge Legge:

We write on behalf of Hitachi, Ltd. ("HTL"); Hitachi Displays, Ltd. ("HDP"); Hitachi Asia, Ltd.
("HAS"); Hitachi America, Ltd. ("HAL"); and Hitachi Electronic Devices (USA), Inc.
("HED(US)") (collectively, the "Hitachi Defendants") in response Direct Purchaser Plaintiffs'
("DPPs") and Indirect Purchaser Plaintiffs' ("IPPs") (collectively, "Plaintiffs") Motion to
Compel Discovery With Respect to CRT Products (Sept. 10, 2010) (Dkt. No. 758).[1]

## I.     <u>INTRODUCTION</u>

Plaintiffs continue their crusade for unfettered CRT Products discovery despite all indications
that their conspiracy claims are directed primarily at CRT tubes, not finished products.  Indeed,
Plaintiffs' motion is premature in light of Defendants' first-filed, pending motion to compel
Plaintiffs to respond to Defendants' discovery regarding the factual basis for Plaintiffs' CRT
finished products conspiracy allegations ("Defendants' CRT Products Motion," Dkt. No. 753).

---

[1] Plaintiffs title their three motions to compel as "Motion[s] to Compel/Strike Objections Against Hitachi
Defendants."  *See* Declaration of R. Alexander Saveri ("Saveri Decl."), (Dkt. Nos. 755-758).  Nowhere,
however, do Plaintiffs identify any specific objection to any specific discovery request much less provide
support for why any specific objection should be stricken.  In fact, Plaintiffs stated they intended to meet
and confer on specific objections, but failed to do so.  Saveri Decl., Exh. 4 at 6; Fed. R. Civ. P. 37(a)(1).
The Hitachi Defendants oppose Plaintiffs' other two motions by way of separate opposition letter briefs.
To the extent applicable, the Hitachi Defendants incorporate by reference herein the arguments set forth
in their other oppositions.

Honorable Charles A. Legge
October 4, 2010
Page 2



The Hitachi Defendants request that any substantive ruling on Plaintiffs' CRT Products motion against the Hitachi Defendants be deferred until such time as this Court rules upon Defendants' CRT Products Motion.  If this Court grants Defendants' motion, Plaintiffs' responses, or lack thereof, will necessarily inform the scope of CRT Products discovery.

Nonetheless, hastily forcing the issue of CRT Products discovery – without completing the meet-and-confer process – Plaintiffs' motion ignores the realities of the Hitachi Defendants' individual circumstances.  The motion should be denied outright as to HAS, HED(US), and HAL.  HAS and HED(US) never sold CRT Products and have no responsive documents.  Similarly, HAL has no responsive documents.  Plaintiffs' misdirected motion – submitted despite these three entities' repeated disclosures that they lacked the materials Plaintiffs sought – is nothing short of harassment and is emblematic of Plaintiffs' efforts to lump the Hitachi Defendants together without considering that each is situated differently with respect to Plaintiffs' discovery requests.

Furthermore, Plaintiffs misstate the Hitachi Defendants' position regarding CRT Products discovery.  Plaintiffs claim the Hitachi Defendants refuse to produce *all* CRT Products discovery.  *See* Letter Brief on Motion to Compel Discovery with Respect to CRT Products at 1 ("Motion") ("The Hitachi Defendants contend that discovery should be limited to issues related to CRTs only . . . .").  Not so.  Consistent with the approach taken in the *TFT-LCD* litigation, which Plaintiffs misrepresent to make their flawed arguments, the remaining Hitachi Defendants – HTL and HDP – *agreed to* produce transactional- and damages-based CRT Products discovery.

Indeed, the Hitachi Defendants *only* seek to defer discovery related to CRT Products *conspiracy allegations* until such time as Plaintiffs provide *some* evidence of a CRT Products conspiracy.  Plaintiffs' CRT Products conspiracy-related allegations appear to lack evidentiary support – in violation of Rule 11 of the Federal Rules of Civil Procedure – particularly in the wake of Chunghwa Picture Tubes, Ltd.'s ("Chunghwa") admissions.  *After* this Court sustained Plaintiffs' CRT Products conspiracy allegations, Chunghwa – the DOJ amnesty applicant – admitted it is unaware of *any* conspiracy to set finished CRT Products prices.  Considering that Plaintiffs wield Chunghwa's document production as this litigation's Holy Grail, Plaintiffs' attempts to disavow these admissions underscores their importance and emphasizes why this motion is premature.

Critically, this Court's determination that Plaintiffs' alleged claims are "plausible" for pleading purposes does not settle the issue of whether Plaintiffs had a good faith *evidentiary* basis to allege a CRT Products conspiracy in the first place or justify burdensome, worldwide discovery of so-called Finished Products conspiracy materials.  *See*, *e.g.*, Declaration of Diane L. Webb in Support of Oppositions to Motions to Compel ("Webb Decl.") ¶ 7, Exh. A at 50:12-14 (J. Legge: Plaintiffs have "an *obligation* to come forward and say, 'All right, here's the information we know now'" regarding a CRT Products conspiracy.) (emphasis added); *id*. at 50:8-11 (J. Legge: "[T]he plaintiffs have still got the obligation to produce information.  And what information do you [Plaintiffs] have to support the claim that this conspiracy did involve CRT products."); *id*. at

Honorable Charles A. Legge
October 4, 2010
Page 3



51:9-12 (J. Legge recognizing need "to see if there's enough support, *evidentiary* support, *not* pleading support, but to support a claim with respect to CRT products") (emphasis added). Plaintiffs, however, steadfastly refuse to provide even minimal CRT Products conspiracy evidence to substantiate the limitless CRT Products discovery they now seek to compel. The applicable case law and common sense dictate that Plaintiffs should be foreclosed from engaging in a fishing expedition regarding a CRT Products conspiracy not grounded in fact.

Accordingly, for these reasons and as discussed below, the Hitachi Defendants request Plaintiffs' motion be denied and/or deferred until *after* Defendants' CRT Products Motion is resolved.

## II.    BACKGROUND

Although Plaintiffs' conspiracy claims appear to be directed primarily at CRT tubes, their discovery requests formulaically seek documents and information related to both CRT tubes *and* CRT Products – without limitation. *See, e.g.*, Webb Decl. ¶ 8, Exh. B, RFP No. 5 (seeking "All documents and electronic data relating to Your sales of *CRT or CRT products* during the period January 1, 1991 through the present . . .") (emphasis added).

In their individual discovery responses, each Hitachi Defendant made clear it objected to the sweeping inclusion of "CRT Products" in Plaintiffs' discovery requests. Moreover, the Hitachi Defendants specifically asked Plaintiffs to articulate a reasonable basis for their alleged CRT Products conspiracy. *See, e.g.*, Saveri Decl., Exh. 5; Webb Decl. ¶ 25, Exh. S, Objection to Definition No. 10 ("[A]ny discovery as to 'CRT Products' that is not reasonably related to Plaintiffs' claims with respect to an alleged conspiracy involving CRTs is premature and overly burdensome until such time as Plaintiffs establish a reasonable basis for their claims regarding 'CRT Products' to justify the enormous burden that Plaintiffs seek to impose on Responding Party by pursuing discovery as to all such products.").

Throughout the meet-and-confer process summarily truncated by Plaintiffs, the Hitachi Defendants expressed their willingness to work with Plaintiffs regarding CRT Products discovery's scope and simultaneously maintained that the recent Chunghwa admissions warranted a *conspiracy*-related evidentiary showing given the burden that Plaintiffs' so-called Finished Products conspiracy discovery requests imposed. Indeed, during the *one*, live, telephonic meet and confer that Plaintiffs held with the Hitachi Defendants, the Hitachi Defendants asked for – and Plaintiffs flatly rejected the need for – a good faith production of *some* evidence related to Plaintiffs' CRT Products conspiracy allegations. Saveri Decl., Exh. 4. The Hitachi Defendants repeated their request in a detailed August 12, 2010 meet-and-confer letter. *See* Saveri Decl., Exh. 5. Plaintiffs, however, never substantively responded. *See* Saveri Decl., Exh. 6.

Instead, Plaintiffs manufactured an "impasse" in an apparent attempt to pave the way for their

Honorable Charles A. Legge
October 4, 2010
Page 4



premature motions to compel.  Saveri Decl., Exh. 7.  That Plaintiffs short-circuited the meet and confer to tee up their motions is evident from their non-responsive meet-and-confer approach, including their last-minute letter sent mere hours before they filed their motions.[2]  Such  actions – calculated to prevent any response from the Hitachi Defendants – are not those of parties operating to meet and confer in good faith.  *See* Fed. R. Civ. P. 37(a)(1); *Robinson v. Potter*, 453 F.3d 990, 995 (8th Cir. 2006) (upholding denial of motion to compel where moving party failed to show parties attempted to confer in good faith to resolve discovery dispute before filing motion); *Soto v. City of Concord*, 162 F.R.D. 603, 623 (N.D. Cal. 1995) ("Sending a letter to the opposing party demanding compliance with a discovery request is not what this Court regards as an earnest attempt to 'meet and confer' on the issues.  Rather, a live exchange of ideas and opinions is required.").

In response to Plaintiffs' motions, the Hitachi Defendants sent yet another meet-and-confer letter, emphasized the significant common ground among the parties, highlighted the Hitachi Defendants' willingness to resolve discovery issues without court intervention, and asked Plaintiffs to withdraw their motions.  Webb Decl. ¶ 10, Exh. D.  Plaintiffs, however, did not withdraw the motions, thereby circumventing the meet-and-confer process envisioned by Your Honor and the Federal Rules of Civil Procedure.

## III.   <u>ARGUMENT</u>

Despite Plaintiffs' references to the "Hitachi Defendants" as a monolithic corporate family, each is separately situated and, accordingly, warrants an individual analysis as to the propriety of Plaintiffs' CRT Products discovery requests.[3]

### A.   *Any* CRT Products Discovery as to HAS, HED(US), and HAL is Improper.

Plaintiffs' motion to compel discovery with respect to CRT Products should be denied outright as to HAS, HED(US), and HAL.  *First*, HED(US) was *never* in the CRT Products business.  Declaration of Thomas Heiser in Opposition to Motions to Compel/Strike Objections Against

---

[2]  Friday, September 10, at 5:25 p.m., Plaintiffs sent the Hitachi Defendants a short, non-substantive, self-serving letter stating "we disagree, the issues are ripe" without any legal support.  *See* Saveri Decl., Exh. 7.  Approximately four hours later, at 9:45 p.m., Plaintiffs began filing their motions to compel – a full *seven weeks* before the official close of the meet-and-confer period on October 29 as set by Your Honor.

[3]  Ignoring the Hitachi Defendants' individual circumstances, Plaintiffs attached a single Hitachi Defendant's discovery responses – HTL – to the Saveri declaration in support of their three motions to compel.  *See* Saveri Decl. at ¶¶ 2-4, Exhs. 1-3.  The Saveri Declaration mistakenly states, "Each of the other Hitachi Defendants – Hitachi Displays, Ltd., Hitachi Asia, Ltd., Hitachi Electronic Devices (USA), Inc. and Hitachi America, Inc. – objected to plaintiffs' discovery in the same manner."  *Id*.  This is simply not the case.  Each objected on grounds specific to the particular responding Hitachi entity.

Honorable Charles A. Legge
October 4, 2010
Page 5



Hitachi Defendants ("Heiser Decl."), ¶ 3.  Nor was HAS.  Accordingly, HED(US) and HAS do not have any responsive documents.  Indeed, HED(US) never manufactured or sold CRT Products.  *Id.*  Similarly, HAS not only never manufactured CRT Products, but it also never sold CRT Products into the United States.

*Second*, upon a diligent search and reasonable inquiry, HAL informed Plaintiffs that it no longer possesses any responsive documents.  *See, e.g.*, Declaration of Tillie Lim in Support of the Hitachi Defendants' Oppositions to Motions to Compel[4] ("Lim Decl."), ¶ 3; Webb Decl., ¶ 18, Exh. L, Response to RFP No. 5 [SIC] No. 51, (responding that HAL "undertook a reasonable, not unduly burdensome search and did not identify any documents responsive" to request seeking sales data for CRT tubes or CRT Products).  HAL stopped selling CRT tubes in 1998 (Lim Decl., ¶ 2) and, for the most part, stopped marketing and selling CRT Products in 2003.

In light of these facts, Plaintiffs' continued push for CRT Products discovery from HAS, HED(US), and HAL is outright harassment.  *See* Webb Decl., ¶ 10, Exh. D.  These entities have no CRT Products discovery to produce, and, accordingly, the motion should be denied summarily as to them.

> **B.      CRT Products Discovery as to HTL and HDP Should Be Limited to U.S. Sales Transactional Data and Damages.**

For the reasons set forth below, the remaining Hitachi Defendants – HTL and HDP – agreed to produce transactional- and damages-related CRT Products discovery but maintained that any discovery related to a CRT Products *conspiracy* is improper at this juncture.

> **1.      Chunghwa's discovery responses justify a threshold evidentiary inquiry into Plaintiffs' CRT Products conspiracy allegations.**

At the August 24, 2010 CMC, discussing discovery related to a CRT Products conspiracy, Your Honor told Plaintiffs:  "I think you've got an obligation to come forward and say, 'All right, here's the information we know now.'"  Webb Decl., ¶ 7, Exh. A at 50:12-14; *see also id.* at 50:8-11 (J. Legge: "[T]he plaintiffs have still got the obligation to produce information.  And what information do you [Plaintiffs] have to support the claim that this conspiracy did involve CRT products.").

Indeed, this Court has "broad discretion" in managing discovery for the purpose of "sifting the issues in order that the suit will go to trial only on questions involving honest disputes of fact or law." *Delta Sys., Inc. v. TRW*, No. 87-4014, 1989 WL 41706, at *6 (9th Cir. Apr. 21, 1989) (quotations omitted); *see Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988) ("The district

---

[4] Due to logistics the Lim Declaration will be submitted following this filing.

Honorable Charles A. Legge
October 4, 2010
Page 6



court has wide discretion in controlling discovery.").  Plaintiffs largely cite to non-antitrust decisions to contest having to establish a "prima facie case" as a prerequisite to discovery, even though the Hitachi Defendants seek *an*y evidence – not a prima facie case – that Plaintiffs' CRT Products conspiracy allegations have merit.  In fact, antitrust courts *have* exercised such discretion to place initial limits on discovery pending plaintiffs' ability to make some evidentiary showing that establishes a reasonable basis to allow further, more wide-ranging discovery to proceed.  *See, e.g.*, *Rebel Oil Co. v. Atlantic Richfield Co.*, 133 F.R.D. 41, 45 (D. Nev. 1990) (granting responding party's protective order motion and deferring expansive discovery in antitrust action pending propounding party's threshold showing); *see also Westchester Fire Ins. Co. v. Household Int'l, Inc.*, 167 Fed. Appx. 895, 899 n.2 (3d Cir. 2006) (holding "the District Court did not exceed the permissible bound of" its "wide latitude in structuring discovery" by "requiring [plaintiffs] to make a preliminary showing that they can satisfy other elements of their fraud claim . . . before permitting discovery" into other elements of the claim).

Plaintiffs' steadfast refusal to make any CRT Products conspiracy showing is all the more unreasonable in light of defendant Chunghwa Picture Tubes, Ltd.'s ("Chunghwa") May 2010 discovery responses in which it admits that it is unaware of *any* conspiracy to set the prices of finished CRT Products.  Webb Decl. ¶ 11, Exh. E, Responses to RFA Nos. 1-4.  Given that Chunghwa is the DOJ amnesty applicant upon which Plaintiffs have relied at every turn to support their allegations, it is telling that Plaintiffs now shy away from Chunghwa's admissions and claim its responses lack importance or are somehow incompetent.

Rather, Plaintiffs devote nearly a third of their motion reiterating Judge Conti's order that denied Defendants' motions to dismiss to suggest that expansive discovery is warranted because Judge Conti found Plaintiffs' allegations sufficient for pleading purposes.  Judge Conti, however, did *not* order that Plaintiffs are entitled to unlimited CRT Products discovery.  *See* Order Approving and Adopting Special Master's Report, Recommendations and Tentative Rulings re: Defendants' Motions to Dismiss (Mar. 30, 2010) (Dkt. No. 665) at 16 (recognizing only "it would be inappropriate to dismiss any of the Defendants from this action without the benefit of discovery").  The fact that this Court ruled that Plaintiffs' alleged claims are "plausible" as a pleading matter is wholly separate from whether Plaintiffs had, or now have, a good faith *evidentiary* basis for alleging a CRT Products conspiracy in the first place.  On that point, at the August 24, 2010 CMC, Your Honor specifically recognized the need "to see if there's enough support, *evidentiary* support, *not* pleading support, but to support a claim with respect to CRT products."  *See* Webb Decl., ¶ 7, Exh. A at 51:9-12 (emphasis added).  The Chunghwa admissions underscore that Plaintiffs' conspiracy claims are directed primarily at CRT tubes and that a CRT Products conspiracy does not logically flow from a tubes conspiracy.  Accordingly, Plaintiffs should first produce evidentiary support for their CRT Products allegations *before* the scope of discovery they may obtain from the Hitachi Defendants is determined.

Honorable Charles A. Legge
October 4, 2010
Page 7



### 2. HTL and HDP's discovery proposal is consistent with *TFT-LCD*.

Plaintiffs go to great lengths to characterize the *TFT-LCD* litigation as a benchmark for how discovery should proceed here.  Plaintiffs, however, *misstate* Judge Illston's rulings in the *TFT-LCD* litigation and ignore the fact that *conspiracy*-related, merits discovery concerning finished products did not go forward there.  Indeed, HTL and HDP's discovery proposal – to engage in CRT Products transactional, damages-based discovery – is entirely consistent with the *TFT-LCD* litigation's approach.[5]  While *some* finished products discovery has been conducted in the *TFT-LCD* litigation, Plaintiffs go too far and inaccurately assert that "*full* discovery as to both TFT-LCD panels and TFT-LCD products has gone forward."  Motion at 5 (emphasis added).  That statement is belied by the lengthy excerpt Plaintiffs quote from the modification of the DOJ's stay order in *TFT-LCD*, which only permitted discovery "concerning the purchase or sale" of finished products, not discovery concerning a TFT-LCD finished products conspiracy.  *See* Saveri Decl., Exh. 16 at ¶ 2.

In fact, that very modification to the stay order – in a section inexplicably omitted by Plaintiffs in their motion – explicitly *excluded* discovery of conspiracy-related documents and information, the same discovery that the Hitachi Defendants contend is improper here:

> [T]he Stay Order shall continue to prohibit discovery seeking evidence of an alleged conspiracy in violation of Section 1 of the Sherman Act involving TFT-LCD panels and finished products containing TFT-LCD panels, including discovery that refers, reflects, or relates to any understandings, agreements, contacts, meetings, or communications, by and between defendants.

*Id*.  Moreover, at a September 30, 2008 hearing cited by Plaintiffs in their motion, Judge Illston ruled:  "I'm *not* going to order that discovery with respect to all finished products be opened at this time. . . .  I'm not going to alter what she [Judge Smith] said because we are still at a relative pleading stage on that."  Saveri Decl., Exh. 17 at 11:8-12 (emphasis added).  Judge Illston denied full TFT-LCD finished products discovery and further instructed that, if Plaintiffs wanted additional discovery with respect to finished products that they did not have, then that issue needed to be raised with Judge Smith.  *See id*. at 12:24-13:3 ("[T]hat's an issue that I think independently just needs to be floated, and you can float it.  I would think that you'd start with Judge Smith on that one.").  Plaintiffs, however, never sought full finished products discovery via a motion to compel before Judge Smith.

---

[5]  This type of CRT Product pricing and sales data that HTL and HDP offered is exactly the non-conspiracy-related discovery that Plaintiffs seek in their motion.  *See* Motion at 3 n.1 (claiming entitlement to "discovery on the relationship between the price of CRTs and the price of CRT Products").

Honorable Charles A. Legge
October 4, 2010
Page 8



Accordingly, HTL and HDP *agree* – and have agreed all along – that finished products discovery should proceed by way of the production of transactional- and damages-based CRT Products discovery, *not* merits-based discovery related to an unsupported CRT Products *conspiracy*.

###   C.    A Threshold Evidentiary Showing Will Resolve Whether a Rule 11 Issue Exists Regarding Plaintiffs' CRT Products Conspiracy Allegations.

A threshold evidentiary inquiry also will illuminate whether Plaintiffs violated Rule 11 by alleging a CRT Products conspiracy lacking an evidentiary basis.  Plaintiffs' counsel's signatures on the complaints serve as representations that "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . . ."  Fed. R. Civ. P. 11(b)(3); *Westchester Fire Ins. Co.*, 167 Fed. Appx. at 899 n.2 (holding "the District Court did not exceed the permissible bounds of" its "wide latitude in structuring discovery" by "requiring [plaintiffs] to make a preliminary showing that they can satisfy" certain elements of their claims before allowing broad discovery to go forward; rejecting plaintiffs' argument that they are "entitled to full discovery once their claims survived [defendants'] motion to dismiss").

Plaintiffs' evasive responses to repeated requests for *any* evidence[6] – especially in light of Chunghwa's admissions and the fact that there are numerous entities with major U.S. CRT Products market share that Plaintiffs have not named as defendants – suggests Plaintiffs lack any basis to allege a CRT Product conspiracy.  *See* Fed. R. Civ. P. 11(c); *Battles v. City of Ft. Myers*, 127 F.3d 1298, 1300 (11th Cir. 1997) (finding attorney subject to Rule 11 sanctions for going to trial without making sufficient investigation to ensure he could procure evidence to support client's claims); *Refac Int'l, Ltd. v. Hitachi, Ltd.*, 921 F.2d 1247, 1253 (Fed. Cir. 1990) (noting plaintiff's inability to respond to discovery requests fully raised at least suspicion action filed in violation of Rule 11).[7]

---

[6]  As Your Honor is aware, Plaintiffs also object to producing English translations of Chunghwa's documents which Chunghwa provided to Plaintiffs, let alone identify any of the documents on which they rely to allege a CRT Products conspiracy.  Accordingly, the Hitachi Defendants lack equal access to the evidence produced in this case, and Defendants moved to compel the production of these translations (Dkt. No. 765).

[7]  Similarly, the case law recognizes that early contention discovery – such as the discovery Defendants' propounded regarding Plaintiffs' CRT Finished Products conspiracy allegations – is appropriate where the discovery seeks the factual basis for specific allegations made in a complaint and, thus, may expose a basis for a Rule 11 motion.  *See, e.g., Cable & Computer Tech., Inc. v. Lockheed Saunders, Inc.,* 175 F.R.D. 646, 651-52 (C.D. Cal. 1997); *United States ex. rel. O'Connell v. Chapman Univ.*, 245 F.R.D. 646, 649-650 (C.D. Cal. 2007); *Johnson v. Kraft Foods N. Am. Inc.*, 236 F.R.D. 535, 544-45 (D. Kan. 2006); *Continental Ill. Nat. Bank & Trust Co. of Chicago v. Caton*, 136 F.R.D. 682, 689 (D. Kan. 1991).

Honorable Charles A. Legge
October 4, 2010
Page 9



Defendants' CRT Products Motion should proceed before Plaintiffs' motion.  If, as appears, Plaintiffs' allegations lack evidentiary support, their motion should be denied.

### D.     The Burden of CRT Products Conspiracy Discovery Outweighs Any Purported Benefit.

Plaintiffs' argument boils down to this:  "antitrust discovery is broad, so we should get everything."  None of Plaintiffs' cited cases, however, involved expansive discovery requests where, as here, Plaintiffs' allegations have been contradicted by the DOJ amnesty applicant's own admissions, and the sought-after discovery responses would exponentially increase the burden and expense without necessarily advancing the case.  Critically, Plaintiffs fail to cite any case specifically entitling them to CRT Products conspiracy discovery.  Instead, Plaintiffs fall back on platitudes that the scope of antitrust discovery is broad, plucked from cases with little to no relevance to the issue of CRT Products discovery.  *See* Mot. at 3; *In re Microcrystalline Cellulose Antitrust Litig.*, 221 F.R.D. 428, 430 (E.D. Pa. 2004) (cited by Plaintiffs) (*denying* plaintiffs' request for broad discovery across an additional three years and stating production "unreasonable given the minimal potential benefits of this information"); *In re Aspartame Antitrust Litig.*, No. 2:06-CV-1732-LDD, 2008 WL2275531, at *1, 3 (E.D. Pa. May 13, 2008) (cited by Plaintiffs) (evaluating discovery's *geographic* scope, noting antitrust discovery "is not limitless," and ordering parties to meet and discuss reasonable limits for discovery requests).[8]

All discovery – including discovery in antitrust cases – is subject to Rule 26's limitations.  In particular, wide-ranging discovery is *not* permitted where, as here, "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues."  Fed. R. Civ. P. 26(b)(2)(C)(iii).  In that vein, courts place appropriate boundaries on antitrust discovery to prevent plaintiffs from imposing incredible burdens on defendants.  *See In re ATM Fee Antitrust Litig.*, No. C04-0276 CRB, 2007 WL 1827635, at *2 (N.D. Cal. June 25, 2007) ("[T]he Court agrees with Defendants that the tremendous scope of these discovery demands are unduly burdensome.  Although the discovery rules entitle Plaintiffs to seek all material 'reasonably calculated to lead to the discovery of admissible evidence,' their theoretical entitlement yields to practical considerations when 'the burden or expense of the proposed discovery outweighs its likely benefit.'") (quoting Fed. R. Civ. P. 26(b)(2)(C)(iii)); *Franchise Realty Interstate Corp. v. San Francisco Local Joint*

---

[8]  *See also In re Auto. Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2004 U.S. Dist. LEXIS 29160, *8 (E.D. Pa. Oct. 29, 2004) (cited by Plaintiffs) (addressing appropriate *geographic* – not *substantive* – scope of discovery in case with no distinction between component and finished products); *Callahan v. AEV, Inc.*, 947 F. Supp. 175, 179 (W.D. Pa. 1996) (cited by Plaintiffs) (weighing merely whether to disclose grand jury transcript in antitrust case regarding *local* Pennsylvania beer sales).

Honorable Charles A. Legge
October 4, 2010
Page 10



*Exec. Bd. of Culinary Workers*, 542 F.2d 1076, 1082 (9th Cir. 1976) ("Particularly in antitrust litigation, the long drawn out process of discovery can be both harassing and expensive."); *Carlson Cos. v. Sperry & Hutchinson Co.*, 374 F. Supp. 1080, 1088 (D. Minn. 1974) (monopolization case recognizing that "when the requests approach the outer bounds of relevance and the information requested may only marginally enhance the objectives of providing information to the parties or narrowing the issues, the Court must then weigh that request with the hardship to the party from whom the discovery is sought.").

Plaintiffs' CRT Products conspiracy document requests require the Hitachi Defendants to produce virtually every document in their possession that has anything to do with CRT Products located anywhere in the world. Webb Decl., ¶¶ 8, 14, Exhs. B and H. There are approximately 52 HTL boxes of historical, hard copy documents that may be responsive to Plaintiffs' discovery requests as currently drafted. *Id.*, ¶ 3. Likely included among these boxes are very old, fragile documents, some of which are oversized, handwritten, or stored on perforated paper, that require expensive special processing and handling before they can be reviewed. *Id.* Many of these documents are likely foreign language documents that would require review by attorneys fluent in multiple foreign languages. There are also 8 gigabytes of HTL ESI that may be responsive to the requests as drafted. *Id.*, ¶ 2. Data processing costs would be at least $12,000. *Id.* A review of this size would likely entail at least 7 weeks, require a team of 5 reviewers, working 8-hour days, at a cost of at least $135,000. *Id.*

In sum, the burden on the Hitachi Defendants is significant. CRT tubes and CRT Products are sold in separate markets via separate distribution channels. While the Hitachi Defendants diligently have been collecting tube-related discovery, broad-based CRT Products discovery – beyond transactional- and damages-related data – drastically expands the search for responsive documents. In light of Plaintiffs' apparent lack of evidentiary support for their CRT Products conspiracy allegations, they should not be allowed to send the Hitachi Defendants down a proverbial rabbit hole. *See In re ATM Fee Antitrust Litig.*, 2007 WL 1827635, at *5 ("[T]he potential for turning up a needle does not require Defendants to sift through this haystack.").

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs' motion to compel CRT Products conspiracy discovery should be denied and/or deferred until after Defendants' CRT Products Motion is resolved.

Sincerely,

/s/ Diane L. Webb
Diane L. Webb

cc:  All counsel (via ECF)

DB2/21933259.8