# Exhibit D
to
**Webb Declaration**

# Exhibit D
to
**Webb Declaration**

Morgan, Lewis & Bockius LLP
One Market, Spear Street Tower
San Francisco, CA 94105
Tel: 415.442.1000
Fax: 415.442.1001
www.morganlewis.com



# Morgan Lewis
COUNSELORS AT LAW

**Diane L. Webb**
Partner
415.442.1353
dwebb@morganlewis.com

**VIA E-MAIL**

September 17, 2010

R. Alexander Saveri, Esq.
Saveri & Saveri, Inc.
706 Sansome Street
San Francisco, California 94111
*Interim Lead Counsel for Direct Purchaser Plaintiffs*

Lauren C. Russell, Esq.
Trump, Alioto, Trump & Prescott LLP
2280 Union Street
San Francisco, California 94123
*Interim Lead Counsel for Indirect Purchaser Plaintiffs*

Re:   *In Re: Cathode Ray Tube (CRT) Antitrust Litigation*, No. 07-5944 SC, MDL No. 1917

Dear Rick and Lauren:

We write on behalf of defendants Hitachi, Ltd. ("HTC"); Hitachi Displays, Ltd. ("HDP"); Hitachi Asia, Ltd. ("HAS"); Hitachi America, Ltd. ("HAL"); and Hitachi Electronic Devices (USA), Inc. ("HED(US)") (collectively, the "Hitachi Defendants") in response to your three, prematurely-filed motions to compel that bypassed any constructive effort to meet-and-confer in good faith, mischaracterize the positions of the Hitachi Defendants, erroneously cite and improperly try to leverage Judge Illston's rulings in the *TFT-LCD* litigation, and ignore Judge Legge's instructions regarding the appropriate length of such letter briefs. In light of the unfinished meet-and-confer dialogue between Plaintiffs and the Hitachi Defendants, the twenty-six, single-spaced pages of briefing amount to nothing more than an attempt to rush the issues of the statute of limitations, foreign discovery, and CRT Finished Products before Judge Legge in an effort to ward off Defendants' motion to compel Plaintiffs to respond to Defendants' finished products conspiracy discovery.

Plaintiffs' scheme to short-circuit meet-and-confer discussions with the Hitachi Defendants to tee up the three motions to compel is evident from the non-responsive meet-and-confer approach taken by Plaintiffs, including their last-minute, sham meet-and-confer letter sent to the Hitachi

DB2/21918974.6

R. Alexander Saveri, Esq.
Lauren C. Russell, Esq.
Page 2

**Morgan Lewis**
COUNSELORS AT LAW

Defendants mere hours before the filing of the motions to manufacture an "impasse" that does not exist. Indeed, the Hitachi Defendants still await a substantive response to the good faith positions set forth in their August 12 letter to Plaintiffs. Had Plaintiffs embraced the additional *seven weeks* to further meet-and-confer with the Hitachi Defendants, rather than engage in a single teleconference and ignore the Hitachi Defendants' subsequent correspondence, Plaintiffs likely would have reached agreement with the Hitachi Defendants on a number of issues now before Judge Legge in the three motions to compel.

In fact, HTC and HDP are willing to agree to the following:

- Time Period (Statute of Limitations) – to produce documents created prior to November 2003 for identified, agreed-upon custodians;

- Foreign Discovery – to produce foreign jurisdiction, contemporaneous documents related to sales in the United States, including foreign transactional discovery. Consistent with Judge Legge's view at the August 24 CMC, as discussed below, such production only would exclude documents related to sales that went to and stayed in foreign countries. *See* 8/24/10 CMC Transcript at 71:7-9; 73:6-10; and

- CRT Finished Products – to produce transactional and damages-based finished products discovery, consistent with the approach taken by Judge Illston in the *TFT-LCD* litigation.

The individual circumstances of the three remaining Hitachi Defendants necessitate a different, narrower scope of discovery that would have benefited from further meet-and-confer discussions. *First*, because HAS never sold any products that entered the United States or manufactured finished products, the issues raised in Plaintiffs' motions to compel are not applicable to HAS. *Second*, HAL has not sold CRT tubes since 1998. *Third*, HED(US) never sold CRT Finished Products and, accordingly, has no CRT Finished Products documents to produce. HED(US) also has not sold CRT tubes since 2003. Nonetheless, HED(US) previously produced transactional documents relating to CRT tubes covering the period 2000-2003.

Given the Hitachi Defendants' willingness to work with Plaintiffs, the Hitachi Defendants believe that many of the so-called disputes highlighted in Plaintiffs' motions can be resolved through the meet-and-confer process, thereby eliminating unnecessary briefing on prematurely-raised issues. Therefore, the Hitachi Defendants request that Plaintiffs withdraw their three untimely motions and permit the meet-and-confer process to move forward as envisioned by both Judge Legge and the Federal Rules of Civil Procedure.

Plaintiffs' haste to submit these motions to compel explains their evasive conduct when confronted with letters from the Hitachi Defendants in the wake of the *one*, live, telephonic conversation that Plaintiffs agreed to hold with the Hitachi Defendants regarding these issues on June 23. It took Plaintiffs nearly three weeks to send the Hitachi Defendants a letter on July 12, purporting to "memorialize" the meet-and-confer teleconference but unabashedly slanting the

DB2/21918974.6

R. Alexander Saveri, Esq.
Lauren C. Russell, Esq.
Page 3

**Morgan Lewis**
COUNSELORS AT LAW

facts in favor of Plaintiffs. The Hitachi Defendants responded with a brief letter containing a status update on July 27 and a detailed letter on August 12 explaining their positions while expressing a willingness to continue the dialogue with Plaintiffs. Although the Hitachi Defendants highlighted the burden of Plaintiffs' discovery proposals, the Hitachi Defendants never took absolute positions that indicated a refusal to continue discussions in the hope of reaching compromise, as Plaintiffs now erroneously contend.

The Hitachi Defendants expected and still deserve a formal, substantive response from Plaintiffs to the Hitachi Defendants' August 12 letter. That response has never come. Instead, at the August 24 case management conference ("CMC"), Plaintiffs asserted that some unnamed defendants refuse to compromise on issues including discovery relating to CRT Finished Products and discovery extending prior to November 2003. To ensure that Plaintiffs recognized that the Hitachi Defendants understood and believed meet-and-confer efforts were ongoing – and that the Hitachi Defendants were awaiting a response to their August 12 letter – the Hitachi Defendants sent yet another letter to Plaintiffs on August 27 making clear the Hitachi Defendants' discovery positions and emphasizing a desire to engage in further discussions with Plaintiffs.

It is now obvious that Plaintiffs spent the next two weeks – during which they could have met and conferred with the Hitachi Defendants as urged by Judge Legge – preparing for last Friday night's ambush instead of preparing a good faith response to the Hitachi Defendants' prior correspondence. On the evening of September 10, at 5:25 p.m., Plaintiffs sent the Hitachi Defendants a short, non-substantive, self-serving letter essentially stating "we disagree, the issues are ripe" that failed to offer any legal support. Approximately four hours later, at 9:45 p.m., Plaintiffs began filing their motions to compel – a full seven weeks before the official close of the meet-and-confer period on October 29 as set by Judge Legge.

Such calculated actions – designed to prevent any response from the Hitachi Defendants – are not those of Plaintiffs operating in good faith to meet-and-confer. *See* Fed. R. Civ. P. 37(a)(1); *Robinson v. Potter*, 453 F.3d 990, 995 (8th Cir. 2006) (motion to compel properly denied where moving party did not show parties had attempted to confer in good faith to resolve discovery dispute before filing motion); *Soto v. City of Concord*, 162 F.R.D. 603, 623 (N.D. Cal. 1995) ("Sending a letter to the opposing party demanding compliance with a discovery request is not what this Court regards as an earnest attempt to 'meet and confer' on the issues. Rather, a live exchange of ideas and opinions is required."); *Tri-Star Pictures, Inc. v. Unger*, 171 F.R.D. 94, 99 (S.D.N.Y. 1997) ("[T]his Court, perhaps more strictly than most, demands that litigants adhere to the meet-and-confer requirement, and will not condone a violation simply because the potential for compromise appears bleak."); *Hoelzel v. First Select Corp.*, 214 F.R.D. 634, 636 (D. Co. 2003) (single e-mail message not a meaningful meet and confer). Here, Plaintiffs ignored the Hitachi Defendants' correspondence to manufacture issues and file premature, trumped-up motions.

**Morgan Lewis**
COUNSELORS AT LAW

R. Alexander Saveri, Esq.
Lauren C. Russell, Esq.
Page 4

Critically, Plaintiffs' overbroad motions to compel mischaracterize both the positions of the Hitachi Defendants and discovery rulings in the *TFT-LCD* litigation. In fact, at the August 24 CMC, even Judge Legge espoused positions mirroring Hitachi's. *See* 8/24/10 CMC Transcript at 50:8-11 (J. Legge on CRT Finished Products: "[T]he plaintiffs have still got the obligation to produce information. And what information do you have to support the claim that this conspiracy did involve CRT products."); 8/24/10 CMC Transcript at 71:7-9 (J. Legge on foreign discovery: "[T]hey [Defendants] have a right to object to producing information that went to foreign countries that stayed in foreign countries."); 8/24/10 CMC Transcript at 73:6-10 (J. Legge on foreign discovery: "[T]he basic distinction, I believe, is if your conspiracy is alleging an impact on the United States, you get it. If all you can show is sale to a foreign market that stays in a foreign market, I've got trouble with it.").

Additionally, Plaintiffs feign ignorance of their *own* promises made during the limited meet-and-confer efforts they attempted with the Hitachi Defendants. For example, during the June 23 meet-and-confer teleconference, Plaintiffs asserted that they possess a list of document custodians for the Hitachi Defendants and that Plaintiffs would provide that list to the Hitachi Defendants. Similarly, Plaintiffs wrote in their July 12 letter that they are "willing to help craft an appropriate custodian list by sharing . . . the names of specific individuals employed by one or more Hitachi entities known to Plaintiffs to have participated in meetings in furtherance of the conspiracy." Contrary to the position they now stake out, however, Plaintiffs never explicitly predicated the disclosure of this custodian list on the Hitachi Defendants first providing burden information deemed satisfactory by Plaintiffs. The Hitachi Defendants' August 12 letter specifically requested that Plaintiffs provide a list of custodians so that the parties could work towards a mutually-acceptable compromise.

Moreover, the Hitachi Defendants' August 12 letter set forth their burdens in detail. For example, the Hitachi Defendants previously emphasized that HAS never sold any products that entered the United States or manufactured finished products and that review and production of potentially responsive documents from HTC and HDP requires special, expensive processing given the condition of the documents. Despite the Hitachi Defendants' good faith effort to provide Plaintiffs with burden information, Plaintiffs still have not produced the long-promised custodian list or the Chunghwa translations necessary to assess the purported involvement of any of the Hitachi Defendants' employees in competitor meetings. Because Plaintiffs continue to fashion custodian lists with other defendants, Plaintiffs' uncompromising position as to the Hitachi Defendants – attempting to hold them to a higher standard – is a hypocritical effort to support Plaintiffs' premature motions to compel. *See* 8/24/10 CMC Transcript at 59:15-17 (I. Simmons for Samsung Electronics: "[M]y discussions thus far [with Plaintiffs] have not been any kind of subject matter limitations, but custodians.").

Furthermore, Plaintiffs' references to the Hitachi Defendants' document production as "a grand total of 457 pages" are a complete red herring. *See* Declaration of R. Alexander Saveri in Support of Motion to Compel / Strike Objections Against Hitachi Defendants ("Saveri Decl.") at

R. Alexander Saveri, Esq.
Lauren C. Russell, Esq.
Page 5

**Morgan Lewis**
COUNSELORS AT LAW

¶ 5. The bulk of the productions in this litigation consist of documents previously produced to the U.S. Department of Justice ("DOJ"). Accordingly, the Hitachi Defendants' production at this point in the *CRT* litigation is relatively small because the Hitachi Defendants produced fewer documents to the DOJ. Indeed, it is especially insincere for Plaintiffs to paint the Hitachi Defendants as withholding documents when, after approximately three months, the parties continue to negotiate the ESI protocol that will govern document productions.

What is more, the Hitachi Defendants previously produced some transactional information related to CRT Finished Products and continue to review additional documents for potential production. Additionally, Plaintiffs no doubt will receive documents related to competitor meetings regardless of whether those documents are foreign- or U.S-based if it is not clear on the face of the document that it pertains to foreign sales only. For the sake of getting their motions on file as early as possible, however, Plaintiffs ignored the overtures of the Hitachi Defendants in their August 12 and August 27 letters, misconstruing the Hitachi Defendants' references to burdens and relevance as unwillingness to compromise.

Similarly, Plaintiffs erroneously reference discovery rulings from the *TFT-LCD* litigation in an attempt to gain leverage in the *CRT* litigation. Plaintiffs' declaration in support of the three motions misleadingly states that *complete* finished products discovery was allowed in the *TFT-LCD* litigation. Saveri Decl. at ¶ 21 ("It is my understanding that once the DOJ's limited stay of discovery expired in the TFT-LCD Litigation, full discovery as to TFT-LCD panels and products has proceeded."); *see* Plaintiffs' Motion to Compel re: CRT Products at 5 (stating Hitachi Displays, Ltd. "as well as the other defendants in the former case, have not refused to provide discovery relating to TFT-LCD products").

This simply is not true and is belied by the very September 30, 2008 hearing transcript from the *TFT-LCD* litigation that Plaintiffs attach as Exhibit 17 to the declaration in support of their motions to compel. Indeed, at that hearing, Judge Illston stated: "I'm ***not*** going to order that discovery with respect to all finished products be opened at this time. . . . I'm not going to alter what she [Judge Smith] said because we are still at a relative pleading stage on that." 9/30/08 Transcript of Proceedings, *In re: TFT (Flat Panel)*, No. M C-07-1827 (SI) at 11:8-12 (emphasis added). Denying full discovery, Judge Illston further instructed that, if Plaintiffs wanted further discovery with respect to finished products that they did not have, then that issue needed to be raised with Judge Smith. *See* 9/30/08 Transcript of Proceedings, *In re: TFT (Flat Panel)*, No. M C-07-1827 (SI) at 12:24-13:3 ("[T]hat's an issue that I think independently just needs to be floated, and you can float it. I would think that you'd start with Judge Smith on that one."). Plaintiffs, however, never sought full-blown finished products discovery via a motion to compel before Judge Smith. This factual misstatement regarding the *TFT-LCD* litigation is but one example of Plaintiffs' tactics to rush issues in the *CRT* action to Judge Legge before fully exhausting the meet-and-confer process.

Given that Plaintiffs still owe the Hitachi Defendants both a substantive response to their multiple letters as well as the custodian list Plaintiffs unconditionally promised – and that the

DB2/21918974.6

Morgan Lewis
COUNSELORS AT LAW

R. Alexander Saveri, Esq.
Lauren C. Russell, Esq.
Page 6

Hitachi Defendants have supplied burden information and expressed willingness to continue negotiations on numerous occasions – Plaintiffs cannot represent in good faith that the issues are ripe for briefing in the three motions to compel. To set up a test case, Plaintiffs have singled out the Hitachi Defendants and seek to hold them to a higher standard, a fact evidenced by the other continued meet-and-confer discussions even as Plaintiffs rebuff the Hitachi Defendants' efforts.

Accordingly, in light of the discovery positions set forth above by the Hitachi Defendants, and their continued willingness to seek a compromise with Plaintiffs, the Hitachi Defendants request that Plaintiffs withdraw their three, prematurely-filed motions and permit the meet-and-confer process to move forward as envisioned by both Judge Legge and the Federal Rules of Civil Procedure.

Very truly yours,

Diane L. Webb

cc:   Hon. Charles Legge (via U.S. mail)
      Guido Saveri, Esq. (via e-mail)
      Mario Alioto, Esq. (via e-mail)
      Jennie Anderson, Esq. (via e-mail)
      Steven Benz, Esq. (via e-mail)

DB2/21918974.6