# Exhibit F
**to**
**Webb Declaration**

# Exhibit F
**to**
**Webb Declaration**

# DEWEY & LEBOEUF

Dewey & LeBoeuf LLP
1301 Avenue of the Americas
New York, NY 10019-6092

tel  +1 212 259 8050
fax +1 212 259 7013
jkessler@dl.com

September 21, 2010

**BY EMAIL**

Guido Saveri, Esq.
Saveri & Saveri, Inc.
706 Sansome Street
San Francisco, CA 94111

Mario N. Alioto, Esq.
Trump, Alioto, Trump & Prescott LLP
2230 Union Street
San Francisco, CA 94123

Re:   *In Re Cathode Ray Tube (CRT) Antitrust Litigation*

Dear Counsel:

This letter responds to your letter of September 1, 2010 regarding the status of the parties' discussions on the appropriate scope of discovery. We will not respond to every individual issue raised in your letter, but rather we write in an effort to further clarify our positions and to focus on the areas where we believe compromise is possible.

**Relevant Time Period**

As an initial matter, while we note that your letter mischaracterizes the nature and scope of the burdens that the Panasonic defendants would face in producing documents prior to the limitations period, we will not repeat the burdens that were clearly and adequately stated in our previous letters to you. Rather, we simply underscore the fact that the burdens associated with both hard copy and electronic discovery reaching back more than 15 years are significant.

Next, we address the two proposals you have made in an effort to resolve the relevant time period dispute. First, with respect to your custodian-based proposal, we are willing to work with you on a limited number of agreed upon custodians whose records would be searched prior to the limitations period.[1] We suggest that you provide us with your list of proposed custodians at your earliest convenience to facilitate a discussion in this regard.

---

[1] Should we be unable to reach agreement on a list of custodians, however, we reserve the right to stand on our objections.

Second, with respect to the 650 boxes of documents in storage, you have offered to review the documents while preserving our clients' right to claw back documents on relevance and privilege grounds. We are still consulting with our clients regarding your proposal, but we believe that it will be workable, subject to certain guidelines for the review process. We would like to discuss the details of this with you further.

### Relevant Products

The Panasonic defendants have already produced, or have agreed to produce, numerous categories of documents relating to CRT finished products, which would provide plaintiffs with the information requested in their July 7 letter relating to the alleged pass-on or impact of an alleged CRT conspiracy on the price of finished products. In addition, we are now willing to consider proceeding with CRT finished products discovery for a limited number of agreed upon custodians without prejudice to our objections should we be unable to reach agreement on a proposed list of custodians. In this connection, we ask that you provide a list of proposed custodians.

### Geographic Scope

Despite the fact that Judge Legge has now indicated his view that discovery of foreign documents having nothing to do with the U.S. would be inappropriate,[2] you maintain that plaintiffs are entitled to such discovery. We continue to disagree with your position.

We also reiterate that we believe our proposal for limiting production to documents that specifically relate to the U.S. would be the most efficient way to minimize the discovery burdens on the Panasonic entities while still ensuring the production of documents that are "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. Pro. 26(b)(1). By way of reminder, under our proposal, we would search for and produce documents relating to (1) sales of CRTs in the U.S. (including exports to the U.S.), (2) purchases of CRTs in the U.S., (3) specific models of CRTs sold in the U.S., or (4) CRT business plans that refer to the U.S. market.

Such a proposal would "materially reduce the burdens of the search process" because it would allow the Panasonic defendants to limit their search parameters considerably. In addition, while the Panasonic defendants would search foreign locations for such documents if there was a likelihood that such documents existed there, the Panasonic defendants would not search locations which did not relate to the U.S. market, thus significantly reducing the burdens on the Panasonic defendants. We would like to discuss this proposal with you further, which we hope you will reconsider.

---

[2] Defendants "have a right to object to producing information that went to foreign countries that stayed in foreign countries." Transcript of August 24, 2010 Case Management Conference, 71:7-9.

**Specific Discovery Requests**

We agree that a complete resolution of the issues relating to specific discovery requests is subject to a resolution of the overarching issues (time period, geographic scope and relevant product scope) as discussed above. However, in addition to these broad issues, it is our position that some of plaintiffs' requests are otherwise overly-broad, unduly burdensome, vague and/or subject to other legitimate objections.[3]

We are willing to work with you to resolve these disputes and we hope that you are willing to do the same. Since we have yet to discuss the specific discovery requests and any related disputes (and have only corresponded about them via letter), we believe that the most productive way to move forward is to schedule a call to discuss the outstanding issues on the specific requests that remain subject to dispute. We do not believe that any issues are ripe for resolution by the Special Master before such a call. Indeed, it behooves both parties to discuss the issues orally to make sure we clearly understand each other's positions and that nothing has been either misstated or misunderstood through our written correspondence. To facilitate a further discussion on these issues, we set forth below our positions on the relevant requests.

**Direct Purchaser Discovery Requests**

<u>Interrogatory Number 5</u>: While we maintain that it is appropriate to provide a response to Interrogatory Number 5 by identifying relevant documents pursuant to Federal Rule 33(d),[4] we agree to instead provide a written answer to Interrogatory Number 5.[5]

---

[3] Notwithstanding the Panasonic defendants' objections to the discovery requests, we note that the Panasonic defendants have been diligently responding to plaintiffs' discovery requests on a rolling basis. In particular, we note that we have already produced, or agreed to produce, at least some documents in response to almost all of the categories of documents requested by plaintiffs. In addition, we note that, to date, we have made four productions of documents, totaling over 74,000 pages. There can be no question that the Panasonic defendants are working in good-faith to meet their discovery obligations.

[4] *MAI Systems Corporation v. Walbert Enterprises, Inc.*, 1997 WL 312595, at *4 (9th Cir. Jun. 9, 1997) (holding that Rule 33(d) allows a party to answer an interrogatory by specifying and providing business records when the answer may be derived or ascertained from such records); *Parrick v. FedEx Grounds Package System*, 2010 WL 2854314, at *2 (D. Mont. Jul. 19, 2010) ("Under Rule 33(d), a party responding to an interrogatory may, under the conditions specified in the rule, answer the interrogatory by specifying the records from which the answer may be obtained and by making the records available for inspection.") (citing *United States ex rel. Englund v. Los Angeles County*, 235 F.R.D. 675, 680 (E.D.Cal. 2006)); *see also In re Urethane Antitrust Litigation*, 2006 WL 1895456, at *3 (D. Kan. Jul. 7, 2006) ("It is true that, under Rule 33(d), a party responding to interrogatories may choose to produce its business records rather than provide a written answer to an interrogatory.")

[5] As for the information pertaining to CRT Products, we continue to object to this request.

Document Request Numbers 7 (pricing policies, formulas, methods) and 8 (published prices for CRTs and CRT Products): We confirm that we will produce documents relating to the policies, formulas, methods or factors used in determining or quoting discounts or rebates in connection with the sale of CRTs and the published prices of CRTs, including any internal discussions of how published prices were calculated.[6] With respect to CRT Products, we are willing to consider producing this type of information for a limited number of agreed upon custodians.

Document Request Number 10 (capacity and capacity related information): We will produce documents related to proposed changes in capacity to produce CRTs (subsection b); production slowdowns for CRTs (subsection f); projected production forecasts for CRTs (subsection g); and any future plans to construct, joint venture or purchase fabrication plants used to manufacture or produce CRTs (subsection h) to the extent that such documents are readily identifiable. We are also willing to consider producing this information with respect to CRT Products for a limited number of agreed upon custodians. With respect to subsection (d) (the identity of all persons who had decision-making or supervisory responsibility regarding CRTs and CRT Products production), we will produce the information relating to CRTs and are willing to meet and confer with you regarding the identity of relevant custodians in the CRT Products business.

Document Request No. 11 (production processes for CRT Products): Despite the fact that we continue to believe this request is vague, the Panasonic defendants have agreed to produce documents sufficient to describe the processes for producing CRTs. Because of the additional burdens associated with CRT Products discovery, however, we would like to discuss what you mean by this request with respect to CRT Products. The Panasonic defendants would like to better understand what types of documents plaintiffs are seeking in connection with the production of CRT Products. We may be willing to consider producing this information for a limited number of agreed upon custodians.

Document Request 15 (relationship between pricing and costs): We will produce documents relating to the relationship between prices for CRTs or CRT Products and the costs of producing, marketing, selling or distributing CRTs or CRT Products to the extent that such documents were maintained by the Panasonic defendants' CRT factories, subject to the above discussion regarding geographic scope. We are also willing to consider producing this information with respect to CRT Products for a limited number of agreed upon custodians.

Document Request 17 (business plans, planning analyses, budgets, forecasts and sales or profit projections for CRT Products): We agree to produce this information to the extent that such documents were maintained by the Panasonic defendants' CRT factories, subject to the above discussion regarding geographic scope. We are also willing to consider producing this information with respect to CRT Products for a limited number of agreed upon custodians.

---

[6] Please note that all statements and concessions in this letter are subject to the specific and general objections set forth in our written objections and responses to the discovery requests ("Written Objections").

        <u>Document Requests 19 (percentage or share of industry production, capacity, sales or shipments of CRTs or CRT Products), 21 (comparisons of CRTs and CRT Products you sell with those sold by others), and 23 (conditions of supply and demand for CRTs and CRT Products)</u>: In addition to formal market studies and published sources, we agree to produce documents relating to these subjects to the extent they are readily identifiable and were maintained by the Panasonic defendants' CRT factories, subject to the above discussion regarding geographic scope. We are also willing to consider producing such readily identifiable information with respect to CRT Products for a limited number of agreed upon custodians.

        <u>Document Request 24 (proposed or executed purchases, sales, acquisitions, mergers, joint ventures, divestitures, transfers, spin-offs or any other change in ownership of a company relating to CRTs)</u>: We have already agreed to provide you with the joint venture agreement for MT Picture Display Co., Ltd., along with related closing documents. We are not sure what additional information you are seeking in this document request. Thus, it would be difficult to search for this information in a meaningful way. However, we are willing to further meet and confer with you about this request.

        <u>Document Request 28 (diaries, calendars, appointment books, travel records, telephone logs and bills, trade association membership information, and personnel files for employees with responsibility for pricing of CRTs or CRT Products), 29 (membership in trade associations), 30 (trade association meetings), 31 (documents submitted to or received from trade associations) and 38 (termination, retirement, discipline, discharge or suspension of any director, officer or employee with responsibility relating to CRTs)</u>: We believe the disputes with respect to these document requests could be resolved for a limited number of agreed upon custodians. Thus, we do not believe we have reached an impasse on these document requests.

        <u>Document Request 37 (documents relating to, prepared for, submitted to, or received as a result of any internal or external investigation or research into anticompetitive conduct with respect to CRTs or CRT Products)</u>: We maintain our objections that the information being sought by this document request is protected from disclosure by the attorney-client privilege, work product protections, confidentiality restrictions, and the Court's Order to Extent Limited Discovery, dated January 30, 2010.

        Finally, with respect to <u>Document Request Number 14 (trades or swaps)</u>, we confirm that your understanding that our use of the term "sales" does not mean that our clients will not produce documents related to other transactions such as swaps and trades.

**Indirect Purchaser Discovery Requests**

        <u>Document Requests 44 (the extent to which OEMs or any other entities involved in the manufacture, distribution, or resale of CRT Products pass through the cost of CRTs or CRT Products to their respective customers) and 46 (retail prices, resale price, or street prices of CRTs or CRT Products)</u>: We agree to produce these documents to the extent they are readily identifiable and were maintained by the Panasonic defendants' CRT factories, subject to the above discussion regarding geographic scope. We are also willing to consider producing such readily identifiable information with respect to CRT Products for a limited number of agreed upon custodians.

September 21, 2010
Page 6

      <u>Document Request 45 (distribution channels for CRTs and CRT Products)</u>: We look forward to meeting and conferring regarding this request.

* * *

      We look forward to hearing from you on the above and to scheduling a telephonic meet and confer to discuss these issues orally.

                                         Sincerely,

                                         Jeffrey L. Kessler