# Exhibit A

<span style="color:red">CERTIFIED COPY</span>

In Re:  CATHODE RAY TUBE (CRT)        )
        Antitrust Litigation          )
                                      )
CRAGO, INC., et al.,                  )
                                      )   No. 07-5944 SC
                Plaintiffs,           )   MDL No. 1917
                                      )   JAMS Reference
        vs.                           )   No. 1100054618
                                      )
CHUNGHWA PICTURE TUBES, LTD.,         )
                                      )
                Defendants.           )
                                      )
_____  )

PROCEEDINGS

AUGUST 24, 2010

JAMS

Two Embarcadero Center

Suite 1500

San Francisco, California

Before the Honorable Charles A. Legge (Ret.)

Reported by:  Karen Friedman, CSR 5425

```
 1                  A P P E A R A N C E S
 2     SAVERI & SAVERI
       By:  R. ALEXANDER SAVERI, Attorney at Law
 3          GUIDO SAVERI, Attorney at Law
            GEOFFREY C. RUSHING, Attorney at Law
 4          706 Sansome Street
            San Francisco, California 94111
 5          415-217-6813
 6     SHEPPARD, MULLIN, RICHTER & HAMPTON, LLP
       BY:  DYLAN BALLARD, Attorney at Law
 7          DAVID GARCIA, Attorney at Law
            Four Embarcadero Center, 17th Floor
 8          San Francisco, California 94111
            415-434-9100
 9
       ARNOLD & PORTER, LLP
10     BY:  ERIC SHAPLAND, Attorney at Law
            RONALD REDCAY, Attorney at Law
11          777 South Figueroa Street, 44th Floor
            Los Angeles, California 90017
12          213-243-4238
13     PEARSON, SIMON, WARSHAW & PENNY, LLP
       By:  BRUCE SIMON, Attorney at Law
14          44 Montgomery Street, Suite 2450
            San Francisco, California 94104
15          415-433-9008
16     ZELLE, HOFMANN, VOELBEL &  MASON, LLP
       BY:  DEMETRIUS X. LAMBRINOS, Attorney at Law
17          JUDITH A. ZAHID, Attorney at Law
            QIANWEI FU, Attorney at Law
18          CRAIG CORBITT, Attorney at Law
            44 Montgomery Street, Suite 3400
19          San Francisco, California 94104
            415-693-0700
20
       DEWEY & LeBOEUF
21     BY:  JEFFREY L. KESSLER, Attorney at Law
            EVA COLE, Attorney at Law
22          1301 Avenue of the Americas
            New York, New York 10019
23          212-259-8050
       /
24     //
       ///
25     ///
```

PROCEEDINGS - 8/24/2010

```
 1                    A P P E A R A N C E S

 2    TRUMP, ALIOTO, TRUMP & PRESCOTT
      BY:   MARIO ALIOTO, Attorney at Law
 3          LAUREN C. RUSSELL, Attorney at Law
            MARION ALIOTO, Attorney at Law
 4          2280 Union Street
            San Francisco, California 94123
 5          415-563-7200

 6    COOPER & KIRKHAM, P.C.
      BY:   TRACY R. KIRKHAM, Attorney at Law
 7          357 Tehama Street, Second Floor
            San Francisco, California 94103
 8          415-788-3030

 9    O'MELVENY & MYERS
      BY:   IAN SIMMONS, Attorney at Law
10          PATRICK HEIN, Attorney at Law
            1625 I Street NW
11          Washington, D.C. 20006
            202-383-5300

12
      MORGAN, LEWIS & BOCKIUS
13    BY:   DIANE WEBB, Attorney at Law
            JASON ALLEN, Attorney at Law
14          One Market Street, Spear St. Tower
            San Francisco, California 94105
15          415-442-1000

16    KAPLAN, FOX & KILSHEIMER, LLP
      BY:   GARY L. SPECKS, Attorney at Law
17          423 Sumac Road
            Highland Park, Illinois 60035
18          847-831-1585

19    SYLVIE K. KERN, Attorney at Law
            2532 Lake Street
20          San Francisco, California 94121
            415-221-5763
21
      GIBSON, DUNN & CRUTCHER, LLP
22    BY:   RACHEL S. BRASS, Attorney at Law
            555 Mission Street
23          San Francisco, California 94105
            415-393-8200
24    /
      //
25    ///
```

PROCEEDINGS - 8/24/2010

```
 1                    A P P E A R A N C E S

 2   HOWREY, LLP
     BY:   EMILY MAXWELL, Attorney at Law
 3         525 Market Street, # 3600
           San Francisco, California 94105
 4         415-848-4947

 5   BAKER & McKENZIE
     BY:   PATRICK AHERN, Attorney at Law
 6         130 East Randolph Drive
           Chicago, Illinois 60601
 7         312-698-2034

 8   HAUSFIELD, LLP
     BY:   MIKE LEHMAN, Attorney at Law
 9         44 Montgomery Street, Suite 3400
           San Francisco, California 94014
10         415-633-1900

11   BAKER & McKENZIE, Attorneys at Law
     BY:   PATRICK AHERN, Attorney at Law
12         Two Embarcadero Center, 11th Floor
           San Francisco, California 94111
13         415-576-3000

14
     FRESHFIELDS
15   BY:   CHRISTINE LACIAK, Attorney at Law
           701 Pennsylvania Avenue NW
16         Suite 600
           Washington, D.C. 20004
17         202-777-4500

18

19
                       --oOo--
20

21

22

23

24

25
```

PROCEEDINGS - 8/24/2010

1

2                          P R O C E E D I N G S

3      August 24, 2010                            9:04 a.m.

4          JUDGE LEGGE:  Let's get started, out of

5      courtesy to those of you who are here on time.  I have

6      sent sign-up sheets down each side of the tables here.

7      There are four of them in circulation, and please,

8      before you leave, make sure you're signed in on one of

9      those sign-up sheets, and put them back here on the

10     table for my benefit and the benefit of the court

11     reporter.

12             As you see, we do have a court reporter today.

13     She will have the benefit of your identities on the

14     sign-up sheets.  It will be a help to her if, when you

15     speak, you do state your name first, so she can take

16     down an accurate transcript of who has been saying what.

17             And by way of facilities, most of you who are

18     here were here last time, but for those of you who were

19     not here last time, as most of you know, we have a

20     coffee station, tea, soft drinks, nibbles.  Upstairs,

21     near the elevator, we have a bigger refreshment center.

22     You can go up there and help yourself, also.

23             The restrooms are out the door and out to the

24     right.  You do need a code.  The code is 94111.  You

25     won't have any trouble remembering that because as you

PROCEEDINGS - 8/24/2010

```
1    go out the reception door, the number is plastered on

2    the inside of the door.  Let's proceed.

3          Now, on today's agenda I think we have two

4    broad categories, things to talk about.  One is the

5    motion made by the defendants with respect to the most

6    recent amended indirect complaint, and the other is

7    various matters dealing with, primarily, discovery

8    matters.  And so I think we'll proceed with each of

9    those two things, in that order.

10         Now, during the discussion of the motion with

11   respect to the indirect complaint, I'm probably not

12   going to offer very much there for you because it breaks

13   down, so much of it, into a question of each individual

14   state, and that's a little hard to deal with in an oral

15   setting.

16         So I would suggest that you use as your guide

17   to tell me anything new, anything in addition, or any

18   particular point of emphasis you want me to focus on in

19   connection with that motion.

20         As you can see, we just have a roster and a

21   podium here.  If you want to speak using it, you can

22   either come up here and speak, so your colleagues can

23   hear you, or if you want to take it to your desk, you

24   can do that.

25         So in connection with these two broad
```

Merrill Corporation - San Francisco
800-869-9132                          www.merrillcorp.com/law

PROCEEDINGS - 8/24/2010

```
 1    categories we're going to be talking about today, the
 2    motion to dismiss and then the various discoveries, I'm
 3    trying to signal to you ahead of time, I'm not going to
 4    have much to say on the first of that because it's so
 5    individual to each of the states.  I guess there is one
 6    overarching issue, and that is relation back.  But other
 7    than that, it's state by state.  The answer is not very
 8    easy to handle in oral argument.  So just tell me what
 9    more you think I need to know in light of your
10    positions.
11              MR. ALIOTO:  Mario Alioto.
12              I want to make sure, your Honor, what order you
13    would like to hear these matters.  The motion to
14    dismiss, as your Honor knows, has to do with the
15    indirect purchaser complaint.  The other issue has to do
16    with everyone.  I talked to Mr. Saveri last night, and
17    we discussed the possibility of proceeding with the
18    discovery matters first since they involve everyone, and
19    then taking the motion second since my friends on the
20    direct purchaser side have no interest in that.
21              So it might be better to proceed that way.  But
22    if your Honor chooses --
23              JUDGE LEGGE:  Well, if you don't mind, I prefer
24    to do it the other way.  Because as I'm saying in
25    connection with the motion to dismiss, I'm not going to
```

PROCEEDINGS - 8/24/2010

1    have much to contribute.  I'm going to take down

2    whatever you want me to hear, to take down, but when we

3    get into discovery I'm going to have more feedback, and

4    it's going to be a very freewheeling discussion amongst

5    all of us.  So I would rather get the motion to dismiss

6    done and then deal with the things we need to talk

7    about.  I don't think it will take too long in

8    connection with the motion.

9         Now, by way of other facilities, we are WiFi'd

10   on this floor, so your computers should work wherever

11   you want them to work.  If you do need some office

12   machinery we don't have right here, let me know and you

13   will be directed upstairs to our office center, and the

14   people up there will connect you up and give you access

15   to their facilities there.

16        We have one more room for the plaintiff's side

17   and one more room for the defense side, down the hall;

18   there's enough for you to have a caucus if you need to

19   caucus outside of the conference room here.

20        It's a warm day today; the room in here will

21   probably get warmer, so be as comfortable as you can

22   politely be.  Feel free to bring refreshments in here.

23        With that introduction, and in spite of

24   Mr. Alioto's suggestion, I would like to proceed with

25   the defense joint motion to dismiss the indirect

```
 1    purchaser complaint.  Are you rising to speak to that?
 2            MR. BALLARD:  I am Dylan Ballard.  I'm counsel
 3    for Samsung defendants.  I am here to be speaking on the
 4    motion on behalf of the defendants today.  Eric Shapland
 5    is going to be arguing on the relation back and the
 6    statute of limitation issues.
 7            JUDGE LEGGE:  I'm pausing a little bit on the
 8    mention of statute of limitations because it seems to me
 9    it gets so much into the second phase of this, which is
10    the discovery.
11            MR. BALLARD:  I only meant insofar as the
12    first.
13            JUDGE LEGGE:  As I said, I'm not going to
14    interfere or interpose myself at all.  I have read your
15    motion, I have read the plaintiffs' opposition, and I
16    have read the defendants' reply.  So I know essentially
17    what the issues are.  You just add what you think I need
18    to know in order to rule on the motion.  Thank you.
19            MR. BALLARD:  Okay.  With that guidance in
20    mind, and as your Honor said, a lot of these arguments
21    come down to really parsing some fairly intricate state
22    law issues.  My plan is not to rehash the briefs but to
23    just briefly go through what I think are the key
24    high-level points that will take some benefit from some
25    oral argument.
```

PROCEEDINGS - 8/24/2010

1          We have moved to dismiss plaintiffs' claims

2     under Illinois, Maine, and Montana laws for lack of

3     standing, and it's undisputed, or at least I don't

4     understand plaintiffs to be disputing, that the existing

5     named plaintiffs in this complaint do not today have

6     standing to maintain these claims, because none of these

7     plaintiffs allege that they reside in any of these three

8     states.  None of them allege that they purchased any

9     products in these three states.

10          Instead, what plaintiffs are asking, your

11     Honor, to do is to defer dismissing these claims for

12     lack of standing until the lack-of-certification stage.

13     Even though it's obvious that no one has standing to

14     maintain them.  That's not how standing works.  Standing

15     is a threshold requirement; it goes to the power of the

16     court to address the merits, in the first place, and it

17     isn't something that can just be deferred for another

18     day.  And we've decided in a number of cases to say

19     that's the rule, in the Ninth Circuit, and it's the

20     cases applying that principle to dismiss putative state

21     claims well before certification for lack of standing.

22          And the only exception to this rule that

23     standing has to be addressed immediately occurs in this

24     narrow context; we're talking about a proposed global

25     class settlement and a class cert who obviates prior

PROCEEDINGS - 8/24/2010

1    deficiency in standing.

2           Obviously that's not what we're talking about

3    here, and given the way these classes are defined, we're

4    talking about individual stated classes.  There's not

5    even a theoretical possibility that a Wiggins class cert

6    could, just as plaintiffs lack individual standing,

7    they're never going to have standing to maintain them as

8    a class.  Because to represent a class, you have to be a

9    member of that class.  That's a fundamental principle of

10   class action procedure.  And on the face of this

11   complaint, none of the existing named plaintiffs could

12   ever be members of a class.  In Illinois the classes are

13   -- none of these named plaintiffs purchase products in

14   these states.  So the same deficiency they're facing

15   today they will be facing then.  So waiting for class

16   cert is going to be pointless in this case.  And the

17   case law recognizes that that is the rule.  That you

18   don't need to wait when the same deficiency applies then

19   as it would apply now.  It wouldn't just be pointless to

20   wait, it would be prejudicial to the defendants.  If

21   they're going to try to add people to this complaint,

22   they should be required to do that now and give us a

23   chance to seek discovery from these people and to

24   litigate this case accordingly.

25          We've also moved to dismiss plaintiffs' unjust

PROCEEDINGS - 8/24/2010

```
 1    enrichment claims in 14 states.  I'm not going to try to
 2    get into the law in each of those states but just, in
 3    our first motion to dismiss we argued that plaintiffs
 4    cannot seek recovery under unjust enrichment theory in
 5    states where the underlying statute either completely
 6    bars plaintiff from bringing suit or where the statute
 7    precludes plaintiffs from recovering the type of
 8    restitutionary relief that they're seeking under this
 9    unjust enrichment theory.  And the principle underlying
10    both of those is that you can't just recast what is at
11    bottom an antitrust claim as an unjust enrichment claim
12    to avoid statutory legislature-enacted limitations on
13    recovery.  And in your Honor's recommendations on the
14    first motion, it was our reading that your Honor agreed
15    with those arguments, at least as a general proposition,
16    but wanted to see a state-by-state breakdown on the law
17    on that to ensure that these principles really are
18    adhered to in the state.  So you tentatively ruled that
19    that motion to dismiss be denied without prejudice, and
20    Judge Conti adopted that ruling.  So this go-around, we
21    took that observation to heart, without the need for a
22    state-by-state breakdown.  That's exactly what we
23    provided on pages 9 to 15 of our opening brief.  We
24    ultimately asked for additional pages on the reply brief
25    to make sure that we had fully responded to plaintiffs
```

PROCEEDINGS - 8/24/2010

1    in each state.

2          Like I said, I'm not going to try to get into

3    the law of each state; that's fully set out in the

4    briefing.  But just to show how these two arguments

5    break down, in 3 of these 14 states -- we're talking

6    about Arkansas, Massachusetts and Montana -- the

7    underlying statute completely precludes plaintiffs from

8    suing.  In the case of Arkansas it's because the statute

9    they're suing under does not cover price fixing.  In the

10   other two states it's because those states simply adhere

11   to Illinois break, they don't have standing to sue.  You

12   can't use unjust enrichment as an end run to recover.

13         On the other 11 states, we've cited to case law

14   for each state.  First of all, we've cited the statute

15   showing it does not apply to restitution, and then we've

16   cited to state law, stating that it adheres to this

17   canon, that where the legislature enacts a statute and

18   it enumerates the available remedies, those remedies are

19   presumed exclusive.  In other words, where the

20   legislature leaves something out, it assumes it's done

21   that intentionally.  The legislatures in each of those

22   states have done it to preclude the types of common-law

23   remedies we're talking about.

24         Inversely, plaintiffs have not cited to one

25   case, not a single case to any of these 14 states,

1    allowing a plaintiff to bring an unjust enrichment claim

2    based on what, at bottom, are price-fixing claims.  They

3    don't have one case like that.

4           And I'll just note briefly, regarding our

5    motion to dismiss plaintiffs' claim under Massachusetts

6    consumer protection statute, this is the second time

7    plaintiffs have failed to comply with this requirement

8    under Massachusetts law that they serve us with a demand

9    letter 30 days prior to bringing their claim, and they

10   try to paint this as some dry technical requirement.

11   But the bottom line is, that as your Honor recognized

12   when you recommended the dismissal of the claim the

13   first time, the Massachusetts courts have made it

14   absolutely clear this is an absolute prerequisite suit.

15   There are no exceptions.  Moreover, the rule in both

16   federal court and in Massachusetts is that you only get

17   two bites at the apple.  So they have had two chances to

18   get this right.  They don't have any excuse for not

19   getting it right, and they shouldn't get a third time.

20   This is a claim that should be dismissed a second time,

21   and this time the dismissal should be with prejudice.

22          And I think those are the key high-level

23   points, keeping your Honor's guidance at the outset in

24   mind.  I may have a few more comments, hearing what

25   plaintiff has to say.

PROCEEDINGS - 8/24/2010

1           JUDGE LEGGE:  If somebody wants to speak on

2     relation back and statute of limitations.

3           MR. SHAPLAND:  Good morning, your Honor.  Eric

4     Shapland on behalf of the LGE defendants.  I'm going to

5     cover relation back.  The first point is about focus.

6     The new pleading contains five classes of state indirect

7     purchasers that were not contained in the first

8     consolidated amended complaint.  Those states are

9     Montana, Illinois, Maine, Arkansas, and D.C.  The new

10    pleading therefore adds five state classes to this

11    action and expands in technical terms --

12          JUDGE LEGGE:  D.C. has its own District of

13    Columbia statutes on the subject; not just the federal.

14          MR. SHAPLAND:  I don't understand the question,

15    your Honor.

16          JUDGE LEGGE:  The District of Columbia.  It's

17    not a state.  Is the legislature governing that, other

18    than Congress passed legislation?

19          MR. SHAPLAND:  Correct.  The D.C. indirect

20    purchasers are bringing claims under the laws of the

21    District of Columbia.  So by adding these five new

22    classes, what the indirect purchasers have done is

23    they've added to the number and generic identities of

24    the indirect purchasers who are seeking recovery of

25    alleged overcharges in these proceedings.  Plaintiffs

1    can't use relation back to avoid the limits on such an

2    expansion of the number of plaintiffs in this case that

3    are imposed by the applicable statutes of limitations.

4    The standard for relation back varies depending on

5    whether or not the new pleading is adding merely new

6    claims or also new parties.  When the new pleading is

7    adding new claims, a very liberal, same transaction or

8    occurrence applies.  But when the plaintiffs are adding

9    new parties to the action, a more stringent rule applies

10   and significantly limits the application of the

11   relation-back doctrine.  That's because the

12   relation-back doctrine is not an open invitation for

13   plaintiffs to join an earlier filed suit.

14          My second point is that plaintiffs in part

15   apply the wrong standard.  Because five new classes have

16   been added to this action the defendants apply the

17   standard that applies to new parties.

18          Plaintiffs take a different approach.  They

19   apply the liberal standard as to two other standards,

20   the Montana and the Illinois classes.  Not because the

21   Montana and Illinois classes have been part of this

22   proceeding; they haven't.  They do it because they

23   haven't even added the plaintiffs who would represent

24   the classes to this action.

25          In our reply we detail exactly why plaintiffs'

1    argument would completely eviscerate the statute of

2    limitations and create a new relation back to be an end

3    run around the statute of limitations.  And I don't

4    think you'll hear today an argument that the liberal

5    standard to relation back applies to any of the classes.

6         My third and final point is that to the extent

7    that plaintiffs apply the appropriate standard, the

8    stringent standard, they misinterpret it.  The stringent

9    standard requires that plaintiffs prove notice, a lack

10   of prejudice, and an identity of interest.  But what do

11   these three vague elements mean?  They come up all the

12   time in the law in a variety of different contexts, and

13   in each context they have a slightly different meaning

14   based on the policies that are at issue.

15        What plaintiffs do here is they take meanings

16   of these different elements of these different contexts

17   in the law.  And what we need to do is we make sure we

18   apply these elements with the actual policy that's at

19   issue here.  And that's the repose reflected in the

20   statute of limitations.

21        For example, the notice required here is not

22   like the notice required under Rule 8's requirement for

23   a sufficient pleading.  Under Rule 8, what a pleading is

24   supposed to do is supposed to give the defendant notice

25   of the subject matter of the cause of action.  And

1    that's sufficient because what the purpose is, is that

2    the defendant should be able to prepare its defense.

3    Here it's not just the subject matter, but it's also the

4    size of the litigation that the defendants must be put

5    on notice of.

6         They must be put on notice of the number and

7    the generic identities of the plaintiffs who are

8    pressing claims in this action.  And that's because when

9    the statute of limitations passes, the defendants should

10   be able to enjoy the repose that comes from knowing that

11   the size and the generic identities of the plaintiffs

12   will not be expanded.

13        And under that standard it's important to

14   recognize that claims by one class are not notice that

15   there are going to be coming claims from other classes,

16   even if both classes allege claims that arise out of the

17   same transaction or occurrence.  Therefore, in this

18   case, suits by California residents, under California

19   law, seeking to assert California classes of indirect

20   purchasers don't provide notice to the defendants of

21   coming claims by the D.C., Arkansas, Montana, and

22   Illinois classes, and the plaintiffs who sat on their

23   rights should have their claims barred.

24        The two final elements.  One is prejudice.  The

25   plaintiffs deny that an expansion of liability that

PROCEEDINGS - 8/24/2010

```
1    results from the addition of these five new classes is

2    prejudicial to the defendants.  To do so, plaintiffs

3    rely on a concept of prejudice that we all know from

4    evidence law.  We're all taught in law school that

5    evidence isn't prejudicial merely because it's bad for

6    the defendants' case or it somehow expands the scope of

7    liability.  But here the policies are different.

8    Evidence is concerned about impermissible inferences.

9    Here, relation back focuses on protecting the repose

10   that follows from the statute of limitations.

11            With that goal in mind, relation back is

12   certainly prejudicial when it expands the liability by

13   permitting new state classes to join the litigation, and

14   to that effect, in Leachman v. Aircraft, a new state

15   that states its claims did not relate back; even if

16   there is no showing of specific evidence, defendants

17   would still be deprived of their interest in repose at

18   that expansion of liability equated to prejudice.

19            A similar holding was held by the First Circuit

20   in Young v. Lepone where it called the prejudice

21   manifest, resulting in an expansion of liability.

22            The last point has to do with identity of

23   interest, and there the plaintiffs argued that the new

24   class claims are based on the very same alleged

25   misconduct as the claims of the original class members.
```

```
 1   That argument equates the identity of interest
 2   requirement with the same transaction in current
 3   requirement that applies to relation back for new
 4   claims.  Clearly, more is required.
 5           Again in Young v. Lepone, the First Circuit
 6   required a fairly advanced degree of notice, and it went
 7   on to reason what I thought is worth discussing here.
 8           "We repudiate that an action filed by one
 9   plaintiff gives notice of an appending rejoinder of any
10   and all" --
11           Such a law would make a mockery of the premise
12   of repose.  We, like other courts, flatly reject the
13   proposition is available merely because a new
14   plaintiffs' claims arise from the same transaction or
15   occurrence as the original plaintiffs' claims.
16           Plaintiffs do not even attempt to satisfy this
17   higher standard for identity of interest, and to do so
18   they would have to show, for example, that the new class
19   of Montana purchasers was going to be represented by a
20   plaintiff who, when ultimately joining this action,
21   would be joining an existing class of Montana indirect
22   purchasers.
23           And with that, I would cede the podium to the
24   plaintiffs and save any remarks for rebuttal.
25           JUDGE LEGGE:  Do you want to come to the
```

PROCEEDINGS - 8/24/2010

```
 1    podium?

 2           MS. RUSSELL:  Lauren Russell with Trump,

 3    Alioto, Trump & Prescott on behalf of the indirect

 4    purchaser plaintiffs.

 5           Before we begin, your Honor, I'm going to hand

 6    you a chart that I've prepared.  I've already given

 7    copies to defense counsel, and it's a list of the cases

 8    cited and the parties, its briefs, and it's just a list

 9    of the defendants' cases and our case.  And they are the

10    only cases that are actually on point in the briefs.

11           The plaintiffs have cited to cases that deal

12    with the exact factual situation herein.

13           The cases in the chart deal with the exact

14    factual situation before the court, and that is, that

15    you have named plaintiffs who have themselves Article

16    III standing.  And Article II standing in a

17    constitutional sense means that they have suffered an

18    injury in fact.  And in this case they have suffered an

19    injury because they paid more for CRT televisions and

20    monitors.  This injury is fairly traceable to the

21    defendants' unlawful price-fixing conspiracy, which

22    caused the prices for CRTs and monitors to be higher

23    than it would be in a competitive market.  Thus, from a

24    constitutional standpoint, there's no concern over this

25    court's power to hear this case.
```

1            There is a justiciable case, or controversy,

2      before the court.  Unlike the cases that the defendants

3      have cited to you, in those cases you have plaintiffs

4      who have not suffered the injury that they were trying

5      to represent.

6            Here you don't have a situation where the named

7      plaintiffs are trying to piggyback on the injuries of

8      unnamed class members.  The defendants' argument that

9      the named plaintiffs lacked standing would simply not

10     arise if it were not for the fact that the named

11     plaintiffs are attempting to assert class claims on

12     behalf of similarly situated purchasers in other states

13     under analogous state laws.  Therefore, the issues the

14     plaintiffs raise is whether the named defendants have

15     standing to represent a proposed class and whether the

16     named plaintiffs should depend on Rule 23 criteria, and

17     this is simply not right for determination.  The basis

18     for this law that I have just stated to you is the

19     Supreme Court's opinion in Ortiz v. Fibreboard.  In

20     Ortiz, the Supreme Court noted that "When questions of

21     both Article II jurisdiction and class certification are

22     presented, the class certification questions at times

23     should be treated" -- I'm quoting -- "should be treated

24     first because the class certification issues are

25     logically antecedent to Article III concerns and pertain

PROCEEDINGS - 8/24/2010

```
 1    to statutory standing, which may be treated before
 2    Article 3 standing."
 3            This is a case like Ortiz, where the defendants
 4    are challenging plaintiffs' statutory standing, not
 5    Article III, to bring claims under Illinois, Montana,
 6    and Maine.
 7            They have all suffered the same injury.  They
 8    all have present common issues, and this should be
 9    analyzed under Rule 23.  This is not a case of threshold
10    individual standing.  Now, admittedly, this is an
11    exception to the normal rule that standing should be
12    addressed first, and it's an exception that has
13    developed because of the unique posture of a class
14    action.
15            Newberg on Class Actions has discussed this,
16    and significantly, this seminal treatise on class action
17    supports the plaintiffs' position in this case.
18            And I would like to quote for you from Newberg,
19    section 2.1, 4th edition.
20            And this also is referred to in our briefs.
21    I'm quoting.  "Anyone with individual standing who
22    satisfies Rule 23 criteria may bring a class action.
23    Like many legal principles relatively easy to stick and
24    commonly accepted, the application of this rule in
25    specific cases has been far from uniform.  The lack of
```

PROCEEDINGS - 8/24/2010

1    consistency is understandable, given the fact that

2    overlapping concepts have undergone almost revolutionary

3    change in the last several years and are infused with

4    substantial elements of judicial discretion.  Functional

5    tasks have replaced any requirement for the existence of

6    a class and membership in the class rather than some

7    existential class with a determinate relationship.  The

8    only common bond commanded is a common legal controversy

9    measured by the common question of fact or law.

10            We have that here.  We have named plaintiffs

11   who have exactly the same injury; they purchased the

12   same products, and they're moving to certify a class

13   with analogous state laws, where the substantive

14   elements of these laws are the same.  And the defendants

15   completely ignore the fact that the vast majority of

16   cases that have addressed the specific factual

17   situation, as I demonstrated in the chart, I believe.

18   The defendants have cited you only 5 cases that address

19   the specific situation, and we have cited 14.  And

20   obviously the majority of these cases have come to

21   command, since the passage of CAFA in 2005.

22            So all of these other cases that defendants

23   cite, where they pooh statements about standing, and you

24   must be a member of the class, and it's a threshold

25   issue, none of these cases have anything to do with what

```
 1    is going on in this case.  And I urge your Honor to read
 2    the cases that are in the chart that I have given to you
 3    there.
 4              One other point I might add.  The defendants
 5    rely very heavily on the Ninth Circuit's opinion in
 6    Easter v. American -- excuse me.  Easter v. American
 7    West Financial.  The cite is 381 Fed.3d 948.  And that
 8    was a Ninth Circuit case from 2004.
 9              And I heard defense counsel in his oral
10    argument claim that Ortiz and the logical antecedent
11    exception only applies in the concept of a mandatory
12    global settlement.  That is simply not true.  And
13    defendants rely on Easter for that.
14              Easter is utterly factual and distinctive in
15    this case.  There the named plaintiffs had not purchased
16    a loan from certain of the defendants that they were
17    seeking to bring into the case.  There was no conspiracy
18    alleged, and therefore these defendants were not linked
19    in any way.  And so the plaintiffs, in order to show
20    threshold Article III standing, they had to show an
21    injury that was directly traceable to those defendants.
22    And they were completely unable to do that, and that's
23    why it was appropriate in Easter to address standing
24    first.
25              There is a case from the Western District of
```

PROCEEDINGS - 8/24/2010

 1    Washington that has completely rejected the defendants'

 2    reading of Easter.  And incidentally, the case is Jepson

 3    v. Ticor; the cite is 2007 Westlaw 2060856, and that's

 4    the Western District of Washington, May 1st, 2007.

 5              In Jepson, plaintiffs had alleged various

 6    causes of action stemming from an alleged and implied

 7    contract between himself and defendant.

 8              In addition, the plaintiffs sought to represent

 9    a class of individuals who have suffered similar

10    injuries under the laws of the State of Washington,

11    Idaho, Washington, New Mexico, and Arizona.

12              Like here, the plaintiffs stated the defendants

13    lacked standing.  Under Ortiz, the class certification

14    was logically antecedent, and in addition the Jepson

15    court expressly rejected the defendants' standing that

16    Easter lacked a mandatory global setting of class.

17              Defendants' conclusory assertion that Easter

18    limited Ortiz to only those circumstances involving a

19    mandatory settlement class is unpersuasive.  Ortiz

20    stated that when the class certification is logically

21    antecedent, the global settlement class in that case is

22    but one instance of such a certification.  Defendants

23    provide no reason why it would be to only one.

24              The three cases that defendants cite from the

25    Northern District of California all follow Easter,

1    erroneously, in our opinion.  They fought the argument

2    that Easter limited the application of Ortiz and ignored

3    the fact that the vast majority of cases all over the

4    United States have not found that.

5           One final point.  Defendants have made an

6    argument for the first time, in their reply, that

7    because we are not members, or named plaintiffs are not

8    members of an Illinois, Montana, or the named class,

9    that they will never have standing and that there's no

10   point in deferring this to class certification.

11          That demonstrates our point.  This entire

12   argument is premature.  We have not moved for class

13   certification yet.  We will define our class when the

14   time comes, and when the time comes we may decide to

15   group together different state laws by their

16   similarities, and we may choose to have one class

17   representative for different state laws.  And there is

18   plenty of precedent for doing that.  A class definition

19   evolves throughout the case, and to make a judgment now

20   as to whether a particular plaintiff is a member of a

21   class is premature.

22          Thank you, Your Honor.  Unless you have any

23   questions, that's all I have.

24          JUDGE LEGGE:  Anything further?

25          MR. LAMBRINOS:  Demetrius Lambrinos.  I

PROCEEDINGS - 8/24/2010

```
1    represent the indirect plaintiffs.  I'm going to address
2    the same high points in the unjust enrichment claims.
3    Your Honor, before I start, I'm going to highlight a
4    couple of cases; here's four cases: one federal case and
5    three state cases.
6            On the unjust enrichment claim, your Honor, the
7    defendants argue that we cannot recast our claims to
8    overcome a complete statutory bar on indirect purchaser
9    claims.
10           Your Honor, this argument is based on a false
11   premise.  There's no complete statutory bar on indirect
12   purchaser claims in any of these states.  The defendants
13   don't cite a single case that says that the
14   unavailability of recovery acts as a complete statutory
15   bar.  Even if you look at the individual cases, the
16   cases we just handed you.  For example, we look at
17   Arkansas; they say that price fixing is not allowed.
18   But if you look at the New Motor Vehicles case, it
19   discusses price fixing under the Deceptive Trade
20   Practices Act.  It distinguishes the defendants'
21   authority and it says their authority, is based, in
22   particular it relies on a contract-based definition;
23   only applies in contract cases.  And when you look at
24   the Arkansas State Supreme Court in the second case I
25   handed you, which is the Baptist Health case, the
```

PROCEEDINGS - 8/24/2010

1    Baptist Health case uses the same definition of

2    "unconscionable" used in New Motor Vehicles.  It

3    affronts the sense of justice, decency, and

4    reasonableness.  This case doesn't speak about

5    bargaining power, which the defendants' entire brief is

6    based on.

7            They also state it applies mainly to contract

8    cases, but they don't cite any cases to deal with that.

9            Under Arkansas' consumer protection law,

10   indirect purchaser actions are also allowed.  That's

11   also discussed in the New Motor Vehicles case.

12           As to Montana, the defendants argue that

13   because Montana's antitrust statute adheres to Illinois

14   brick, that there's no viable claim.  But, your Honor,

15   if we look at the Olson case, this is from the superior

16   court in Montana, they argued that the statutory

17   construction of Montana's act should not be interpreted

18   as a bar on indirect purchasers.  This is the only

19   Montana case cited by either side, and just because

20   there's a statutory bar in one state statute, that's not

21   a complete statutory bar in all indirect purchaser

22   actions.

23           This is the same from Massachusetts.  If we

24   look at Ciardi v. Hoffman LaRoche, the Supreme Court

25   held that indirect purchaser actions are permitted under

1    Massachusetts Consumer Protection Act.  The defendants'

2    argument is based on a false premise, and the unjust

3    enrichment claims don't unduly circumvent state

4    statutes.

5           If we look at the second issue: whether or not

6    there's a new, right, exclusive remedy for all of the

7    state statutes, prescribed to purportedly support unjust

8    enrichment claims.

9           The first thing I would like to quote from is

10   your holding on the defendants' first motion to dismiss,

11   where you stated that "The defendants have not carried

12   their burden to establish the intent of the legislature

13   in enacting a specific statute or a decision of a

14   particular state court precludes relief for restitution

15   or unjust enrichment.  It is the defendants' burden to

16   show that any particular state statute voices an express

17   intent to obviate the common law."  They haven't carried

18   their argument.  The entire intent was that the

19   plaintiffs didn't intend to exclude the common law.

20   That's not our burden.  It's theirs.

21           The second is, the defense counsel states there

22   is not a single state where there is unjust enrichment.

23           There are several cases cited in the

24   defendants' brief where unjust enrichment and antitrust

25   are in the same case.  For example, in Cox v. Microsoft,

1     unjust enrichment and antitrust simultaneously.

2          And the last point I want to make here is if

3     you went and looked at each of the state statutes that

4     they cite in their briefs which speak of the damage

5     provisions, none of these statutes on their face purport

6     to supersede the common law.

7          We have a huge footnote listing the laws of the

8     jurisdictions of every single state at issue in this

9     case, and each one of those cases, when you say that a

10    state statute obviates the common law, there has to be

11    express intent voiced in the statute, not the contrary.

12    If they can't prove that as to each particular common

13    law, and none of the state statutes purport to obviate

14    the common law.

15          Those are those arguments, your Honor.  I will

16    cede the floor to Sylvie.

17          MS. KERN:  Good morning, your Honor.  Sylvie

18    Kern for the indirect purchaser plaintiffs.  I'm going

19    to address the relation-back argument, and before I

20    begin, I just want to hand your Honor a copy of the

21    Figone complaint, which I will be addressing, with some

22    highlighted sections.

23          I'm not going to re-argue what is in our

24    briefs.  I simply want to make three new points.  First,

25    I want to clarify what's at issue here.  Defendants have

PROCEEDINGS - 8/24/2010

1    tagged onto their motion to dismiss a request for an

2    order that the claims do not relate back.  Well, the

3    claims are timely on their face with one exception, and

4    one exception only, which is the Montana antitrust

5    claim, which is subject to a two-year limitations

6    period.

7         So the sole issue here is whether the claims

8    relate back to the Figone complaint both with respect to

9    the Montana claim and with respect to fraudulent

10   dealing..

11        So that brings me to my second point, which is

12   that the claims of existing plaintiffs which were

13   brought under Illinois, Maine, and Montana laws relate

14   back.  For purposes of these claims, because there are

15   no new plaintiffs, the test for relation back is very

16   straightforward.  It's a test under Rule 15(c)(1)B, and

17   the test is whether the claims arise out of the same

18   conduct, transaction, or occurrence, as the previous

19   claims, and the claims do relate back.  They rely on the

20   same factual allegations.  And I will simply refer the

21   court to our brief, pages 21 to 22.

22        I want to respond to defendants' arguments on

23   standing.  Either plaintiffs have standing or they

24   don't.  We've already heard argument on this issue.  We

25   believe that they do have standing.  If they have

```
 1   standing, then whether the issue is whether there's
 2   relation back, and that test depends solely on the rule
 3   15(c)1B test.  The relation back analysis is separate
 4   from the standing analysis.
 5           Defendants cite the Syntex case in their brief.
 6   They claim that if our analysis were correct, that
 7   existing plaintiffs could assert these claims, then the
 8   plaintiffs in Syntex would have done the same thing.
 9   They wouldn't have resorted to bringing in new
10   plaintiffs.  But our case is not the Syntex case.
11           In Syntex, new plaintiffs had an entirely
12   different cause of action from the original plaintiffs.
13   They purchased stock at different times and they relied
14   on different disclosures by the defendants.  There were
15   different injuries in different class periods.  That is
16   not the case here.  Also, Syntex was a securities case,
17   and the reliance and intent issues that occurred there
18   and differentiated the Syntex plaintiffs are not
19   relevant here.
20           Finally, with respect to the claims of the
21   newly named plaintiffs who are asserting claims under
22   Arkansas and D.C. laws, the test here is whether, when
23   they are new plaintiffs, is whether there is notice,
24   lack of prejudice, and identity of interest.  We have
25   already addressed those issues in our briefs, so I won't
```

1    belabor them.  But I will highlight the fundamental

2    point that defendants failed to address, that I believe

3    is fatal to their argument.  And that is that here the

4    newly named plaintiffs were already asserted class

5    members in Figone, and even in other complaints we

6    discussed, that are also at page 23, note 33, of our

7    brief.  And in the complaint that I handed to your

8    Honor, you will note that Figone expressly alleges a

9    District of Columbia antitrust claim, an Arkansas and

10   District of Columbia consumer protection claim, and also

11   a nationwide unjust enrichment claim.

12            Now, this is dispositive for two reasons.  One,

13   this distinguishes all of the defendants' cases,

14   including the new cases that are cited in their reply

15   brief.  We've already addressed some of them in our

16   brief; the Basig case, B-a-s-i-g.  But defendants also

17   cite to Perry.  In Perry, the new plaintiff added

18   allegations that weren't there before.  There were no

19   previously asserted class members here; and that's at 81

20   FRD 490 at 494.  The same thing in the Arneil,

21   A-r-n-e-i-l, case.  The new plaintiffs were not part of

22   the original class; 550 Fed.2d 774 at 782.

23            And finally, in Leachman, which counsel

24   referred to today, the amended complaint brought in an

25   entire new party; that's at 694 Fed.2d 1301 at 1310.

PROCEEDINGS - 8/24/2010

```
 1    That case involved a plane crash.  The first complaint

 2    was brought by the widow of the pilot, and the later

 3    complaint was brought by a corporate plaintiff, the

 4    owner of the plane.  The corporate plaintiff had a

 5    different cause of action.

 6         So in all of these cases the new plaintiffs

 7    were not previously asserted class members.

 8         JUDGE LEGGE:  You have given me the Figone

 9    complaint, but is there a citation in your brief to what

10    Judge Chesney said about it with respect to this

11    relation back issue?  Is there a case interpreting this

12    complaint?

13         MS. KERN:  That's the complaint in our case.

14         JUDGE LEGGE:  I'm sorry.  This is the present

15    complaint?

16         MS. KERN:  Yes.  This why this is so important.

17         JUDGE LEGGE:  I'm sorry, but I have nothing to

18    identify it with the cathode ray tube litigation.  I

19    thought you were arranging this for its authority here

20    in the Northern District, because there is nothing here

21    that identifies it as being part of our case.

22         MS. KERN:  Yes, I'm looking for that right now,

23    your Honor.

24         JUDGE LEGGE:  I see in the nature of the case,

25    it's talking about cathode ray tubes.
```

1          MS. KERN:   I know the reference is in our

2     brief.

3          JUDGE LEGGE:   Now that I have that guidance,

4     this is in this case?

5          MS. KERN:   Yes.

6          JUDGE LEGGE:   I couldn't tell that from the

7     caption.

8          MS. KERN:   Yes, if your Honor can look at page

9     21, footnote 8.

10          JUDGE LEGGE:   Page 21 of what?

11          MS. KERN:   Page 21 of our brief of footnote 29.

12     The very last sentence states that "Figone was related

13     to the lead case by order of this court," dated January

14     4, 2008.  And it shows docket number 24.

15          JUDGE LEGGE:   Okay.  Thank you.

16          MS. KERN:   So I was stating that the first

17     reason that, the fact that these plaintiffs had already

18     been asserted class members was important.  There's a

19     second reason, which is that under Syntex, the case that

20     defendants rely on, the equitable tolling doctrine

21     applies.  And I'll just refer the court to Syntex at 95

22     Fed.3d, 95 to 96.  Syntex also cites, relies upon

23     another case, the Sawtelle v. Dupont, 22 Fed.2d, and

24     basically what these two cases say is that the equitable

25     tolling doctrine tolls the statute of limitations for

PROCEEDINGS - 8/24/2010

 1    all class members, and even allegations of a nationwide

 2    class are sufficient to toll the statute of limitations.

 3         I want to address a few final points made by

 4    defendants.  Defense counsel was discussing the policies

 5    I believe I discussed; the case law, and with respect to

 6    prejudice, we have already discussed that in our briefs.

 7    I will look for the court to grace your point.

 8         And defense counsel also mentioned the Young

 9    case.  We addressed that in our brief, as well.  I

10    apologize, we've provided the wrong case cite.  It's,

11    the Young case is 305 Fed.3d 1, and I wanted to direct

12    the court to page 16, which is the page that defendant

13    quoted from.

14         And there's some very interesting language on

15    that page which totally supports our position, which is

16    that the new plaintiff's claims were fundamentally

17    different from the claims of the original plaintiffs.

18    And I'll just briefly cite a quote to the court, what I

19    mean.

20         The original plaintiff was Cape Ann, on the

21    court side.

22         This is at page 16.  "The new plaintiffs'

23    underlying 12B claims differ from Cape Ann in a

24    significant respect.  Cape Ann reacquired its stock and

25    proceeded to take an active role in the company's

1    affairs.   In contrast, the new plaintiffs purchased

2    their shares on the open market at a much wider range in

3    time, on the open market, and thereafter were passive

4    investors."

5              So we have a completely different case than we

6    do here.

7              Finally, a different, two more points.

8    Defendants argue that plaintiffs abandoned their earlier

9    complaints because they were not included in the

10   consolidated complaints.  We cited the Jobs case, which

11   is a non-circuit case, which came down this year, and

12   that case is directly on point.  There is no waiver.

13             And finally, in the Blender dividend case, that

14   involved the reasserting of claims against a defendant

15   that had been dropped, and here the issue has nothing to

16   do with a dropped defendant.

17             That's all I have to say, your Honor.  I think

18   that the claims by both the existing plaintiffs and the

19   new plaintiffs relate back, and the court should deny

20   defendants' request.

21             MR. ALIOTO:  Mario Alioto, your Honor.  On the

22   Massachusetts unfair competition claim, the requirement

23   that the demand letter be sent in advance for the claim,

24   we've put the demand letter in the record.  It's

25   attached as an appendage to our opposition brief, and I

1    would draw your Honor's attention to that.  It's a very

2    comprehensive demand letter.

3         We note in our opposition brief that we had

4    served that upon counsel for all eight or nine of the

5    defendant groups.  We received, at the time of the

6    brief, as we noted in the brief, we received only one

7    response to that demand letter.

8         As of this date we have still only received one

9    demand; the eight other groups have just completely

10   ignored it.

11        I think it's fair to say that the purpose of

12   that demand statute is to give the defendant no advance

13   notice of the litigation, so that they can avoid the

14   litigation.  That's what we have attempted to do.

15        The litigation is not going to be avoided.

16   There are not going to be settlements.  The litigation

17   is ongoing, it's off and rolling, and the argument that

18   they simply haven't had enough time to respond, or the

19   statutory timing is off, is just a classic example of

20   using a statute that is designed to protect the

21   defendant, and they are now turning it around and using

22   it as a device to escape liability.  So that's what

23   that's all about, your Honor.

24             JUDGE LEGGE:  And this is your letter here.

25             MR. ALIOTO:  That's the letter.  There's no

 1    question about any deficiency in that letter.  There's

 2    no question about any service, on any service on any

 3    defendant.  As I noted, your Honor, there's only one

 4    defendant; the Hitachi group is the only defendant that

 5    even responded.  No other defendant even responded, and

 6    the first indication we had about that, that there was a

 7    problem, is when we got a motion to dismiss.  And they

 8    said they haven't had enough time, or we haven't given

 9    them the full 30 days' notice under the Massachusetts

10    statute.

11            I think that that's --

12            JUDGE LEGGE:  What is this letter?  You sent

13    this to whom?

14            MR. ALIOTO:  To counsel for all of the defense,

15    all of the defendants.

16            JUDGE LEGGE:  So this is just an exemplar of an

17    identical letter that you sent?

18            MR. ALIOTO:  Yes.  This one went to Morgan,

19    Lewis.  There were nine or ten other addresses, and we

20    covered all of the defendant groups.  And as I say,

21    there is no problem, there's no challenge to the letter,

22    there's no claim that the letter is deficient or that it

23    doesn't include all of the statutory requirements.  The

24    argument is they should have been given more time and it

25    should have been served on them further in advance of

1    the filing of the complaint.

2              And the point is that if you look to the

3    purpose of the statute, and the purpose of the statute

4    is to give the defendant advance notice of the claim in

5    order that it might be settled or negotiated and the

6    defendant might avoid the lawsuit.  There's no real

7    possibility of that happening.  It's just not going to

8    happen.  They haven't responded.  Nobody has any

9    interest in pursuing this further.  So for them to come

10   in and claim that they need more time is just a waste of

11   time, and the claim ought to be allowed to proceed at

12   this point.  Thank you.

13             JUDGE LEGGE:  I will give you collectively five

14   minutes.  You are giving me a lot.

15             MR. LAMBRINOS:  Demetrius Lambrinos.

16             Your Honor, I wanted to clarify when I was

17   talking about the Montana statute, I should have made

18   reference to Montana's antitrust law.  And the Olson

19   case states that it does not apply.  There is no

20   statutory bar in Montana.  Thank you.

21             MR. BALLARD:  I'm sorry, your Honor, when you

22   said we're collectively limited to five minutes, did you

23   mean plaintiffs?

24             JUDGE LEGGE:  All of you.

25             MR. BALLARD:  I would like an opportunity --

PROCEEDINGS - 8/24/2010

1            JUDGE LEGGE:  Come on, now.  You've given me
2   already a lot that I have here.  So just be very short.
3            MR. BALLARD:  Dylan Ballard.
4            On the standing issue, I'll just take these in
5   the order that plaintiff raised them.  I'm not sure what
6   to make of plaintiffs' assertion that they have Article
7   III standing.  If they mean that they have standing to
8   bring claims in states where they allege that they do
9   reside but they allege that they did purchase products
10  in those states, that's completely beside the point.
11  You have to have standing to maintain each of the claims
12  in your complaint.  If they had brought this as solely
13  an Illinois action, there would be no question that that
14  entire action would lack standing.  I'm just puzzled.
15  If that's what plaintiffs say, that they've suffered
16  injury in each of those states, they haven't purchased
17  products in those states.  The statute doesn't come into
18  play.
19            The plaintiffs' counsel made a comment that
20  this is a Rule 23 issue, not a standing issue.  Well,
21  every case that any party cites recognizes this is a
22  standing issue.  Every case recognizes this is a
23  standing issue.  The only issue is when this gets
24  decided.
25            Turning to the chart -- I just received this

```
 1    before the hearing, so I haven't had an opportunity to
 2    make sure it's accurate, but just on its face, missing
 3    from this chart are by far the two most important cases
 4    on this issue, and that's Ortiz itself, the Supreme
 5    Court case we're relying on --
 6              JUDGE LEGGE:  It's a footnote here.
 7              MR. BALLARD:  Right, but it's not represented
 8    as a case in our favor, which it definitely is.  That
 9    case recognizes the general rule outside the mandatory
10    global settlement class context, that standing must be
11    addressed immediately.
12              And the other case they ignore is the Easter
13    case from the Ninth Circuit, which should be at the very
14    top of the left column.  It's interpreting the Ortiz
15    case; limiting it to the global settlement class
16    context.  And we've quoted from that case -- I won't
17    read it, but it's on page 5 of our reply brief, and it
18    says that expressly, Ortiz is limited to that context.
19              Another disparity in this chart is that our
20    column is full of Ninth Circuit authority; we've got
21    three Northern District cases here, including Judge
22    Alsup's opinion, in GTU MDL; all of the cases follow the
23    Easter case in saying that standing must be addressed
24    immediately.
25              Plaintiffs' only other response to my other
```

1    argument, that waiting for class certification is

2    pointless, their only response is that they may change

3    their class standing as this motion evolves.  They've

4    defined these classes for the purpose, and they have the

5    burden of pleading.  It's beside the point.  We have to

6    deal with the definitions they're giving us today.

7            Just briefly, they talked about our claims.

8    The Arkansas consumer protection statute should be

9    dismissed.  I did not address that in the Alsup because

10   we acknowledge that there is a split of authority there,

11   and your Honor is going to have to choose sides on that.

12   And the issue concerns what does the term

13   "unconscionable," as used in that statute, amount to.

14   And our cases, the cases on our side of the split, make

15   an attempt to interpret Arkansas case law, including

16   Judge Alsup in the GTU case, and they hold you have to

17   have exploited superior bargaining power.  And that does

18   not apply in a price-fixing case.  Their cases rely on

19   Black's Law Dictionary for the definition of

20   "unconscionable," and there's no attempt to define the

21   meaning of the state law, which should rely on state

22   statutory interpretation.

23           In Montana, they say we don't cite any Montana

24   case, which is not true.  We cite that where a Montana

25   statute is patterned after federal law, federal law is

1    persuasive.  And Judge Illston in the LCD case took that

2    to heart, and she held that because the Montana is

3    virtually identical to Clayton, precludes plaintiffs

4    from suing under Montana law.

5              Finally, on unjust enrichment.  This is not a

6    burden issue as to whether these state statutes preclude

7    recovery of relief.  This is statutory.

8              They referred your Honor to a footnote where

9    they cited to cases where they say you need

10   Congressional intent to abrogate remedies.  We agree

11   with that.  The point is that all of these states adhere

12   to this cannon of statutory legislation.  It's a way of

13   getting to that final conclusion that there is

14   legislative intent.  And we've laid that out state by

15   state, and we have done that over the course of many

16   pages of opening and reply briefs.

17             And in keeping with your Honor's guidance in

18   mind, I will leave it there and turn it over to

19   Mr. Shapland.

20             JUDGE LEGGE:  You're going to have to be very

21   brief.

22             MR. SHAPLAND:  First point, the plaintiffs

23   still argue that the Montana and Illinois new classes

24   are subject to the new statute.  I just want to note it

25   is ironic that they try to avoid stringent statute by

PROCEEDINGS - 8/24/2010

1    not maintaining plaintiffs to represent these Montana

2    and Illinois statutes.  That would eviscerate this.

3    Plaintiffs don't address that or purport how to explain

4    how it wouldn't.

5            Plaintiffs rely on Figone.  First thing I want

6    to note about Figone is, you flip through it and you

7    notice there are no Montana law claims.  The second

8    thing I want to note about Figone is that the first and

9    second consolidated amended complaints do not allege

10   nationwide class actions of indirect purchasers.  That's

11   what Figone purports to be.  The concept of a nationwide

12   class of indirect purchasers was abandoned when the

13   plaintiffs filed their first consolidated amended

14   complaint.  It's not repeated in the second consolidated

15   amended complaint.  By abandoning those claims,

16   defendants had noticed there was not going to be a

17   nationwide claim against them.  They did not have notice

18   of the number and generic identities from these five new

19   states.

20           Plaintiffs rely on a case called Jobs to reach

21   a different result.  Jobs is a 15A pleading case.  It

22   simply examines whether or not the plaintiff had the

23   right to amend its case.  It was not a relation-back

24   case.

25           Finally, Figone is a nationwide case, but you

1      haven't have nationwide purchasers in an antitrust case.

2              What Figone would have to do in order for this

3      case to proceed against us with the scope of the

4      proposed litigation is that five new classes would have

5      to join this suit, state classes, and Figone would have

6      to identify plaintiffs from those states to join the

7      suit and assert those claims.

8              Until that time occurs, the plaintiffs are able

9      to enjoy the repose that comes when statutes of

10     limitations pass without that happening.  The notice

11     that they currently have is that this case is not

12     proceeding against them with respect to the five state

13     claims.

14             The final point that I wanted to make is that

15     plaintiffs tend to urge a greater similarity of interest

16     in some of these security cases than actually existed

17     between the securities plaintiffs under the old claims

18     and the new claims in the Young and the Syntex case.

19             The first point to make about that is, to some

20     extent the plaintiffs overstate the differences between

21     these new and old plaintiffs in the securities cases.

22     The courts in those cases made clear that what they were

23     doing was rejecting application of the same transaction

24     in occurrence test in those cases, and they make clear

25     that when you add new parties you have to show notice,

PROCEEDINGS - 8/24/2010

1    prejudice, lack of prejudice, and an identity of

2    interest.  And I think, too, the plaintiffs overstate

3    the extent to which there is a similarity between the

4    claims of the new classes here and the old classes here.

5    The first point is that the classes arise under the laws

6    of different states, which vary widely, as the Sullivan

7    case points out.

8         And the second point is the cases arise from

9    different geographic places, and the extent to which

10   they may be paying an overcharge vary.

11        With that, I rest.

12        JUDGE LEGGE:  All right.  Let's take a recess

13   until 10:30, and then we'll start on the discovery and

14   related issues.

15        (Off the record.)

16        JUDGE LEGGE:  Let's get onto our discovery and

17   related issues.

18        What I have read are the three letters to me

19   from you folks describing the discovery issues and

20   questions.  These are a letter from the plaintiffs of

21   July 15 and two letters from the defendants, July 15 and

22   July 19.

23        You sent me a thick packet of correspondence

24   reflecting your communications with one another.  I've

25   skimmed over that.  I don't intent to judge it, because

PROCEEDINGS - 8/24/2010

1

2        I, KAREN A. FRIEDMAN, a Certified Shorthand

3    Reporter, hereby certify that the foregoing proceedings

4    were taken in shorthand by me at the time and place

5    therein stated, and that the said proceedings were

6    thereafter reduced to typewriting, by computer, under my

7    direction and supervision.

8

9        DATED:    September 2, 2010

10

11

12        KAREN A. FRIEDMAN, CSR No. 5425

13

14

15

16

17

18

19

20

21

22

23

24

25