**SAVERI & SAVERI, INC.**
706 SANSOME STREET
SAN FRANCISCO, CALIFORNIA 94111
TELEPHONE: (415) 217-6810
TELECOPIER: (415) 217-6813

*Trump Alioto Trump & Prescott*
ATTORNEYS LLP
2280 Union Street
San Francisco, California 94123
(415) 563-7200
FAX (415) 346-0679

October 15, 2010

Honorable Charles A. Legge
JAMS
Two Embarcadero Center, Suite 1500
San Francisco, CA 94111

    Re:    *In Re: Cathode Ray Tube (CRT) Antitrust Litigation,* MDL 1917 (N.D. Cal.) – Opposition Letter Brief Re: Motion To Compel Discovery With Respect To Chunghwa Translations

Your Honor:

    **I.**    **Introduction**

The Direct Purchaser Plaintiffs ("DPPs") and Indirect Purchaser Plaintiffs ("IPPs") (collectively "Plaintiffs") respectfully submit this letter brief in opposition to the letter brief filed on September 28, 2010 ("Mot.") by Defendants in support of their motion to compel defendant Chunghwa Picture Tube Company ("Chunghwa") to produce "All translations of DOCUMENTS that [Chunghwa has] provided to Plaintiffs." Chunghwa provided certain translations to Plaintiffs pursuant to its settlement agreements with them and its cooperation obligations under the Antitrust Criminal Penalty Enhancement and Reform Act of 2004 ("ACPERA"). This response is supported by the accompanying declarations of R. Alexander Saveri ("Saveri Decl.") and Mario Alioto ("Alioto Decl.").[1]

Defendants' arguments fail for several reasons. *First*, they ignore the common interest shared by Chunghwa and Plaintiffs. Contrary to Defendants' assertion, Chunghwa and Plaintiffs are not now (and were not at the time the translations were disclosed) adversaries. Rather, they share a common interest in (1) effectuating the terms of their settlement agreements – which require Chunghwa to cooperate confidentially with Plaintiffs in the prosecution of this case against Defendants; and (2) fulfilling Chunghwa's cooperation obligations under ACPERA. Under the common interest doctrine, Defendants' first argument – that Plaintiffs lack standing to assert a work product objection because Chunghwa has no objection to producing the translations – is simply incorrect as a matter of law. Defendants' assertion that "Chunghwa has stated that it has no objection to

---

[1] Although still a nominal defendant, Chunghwa is not a moving party. Plaintiffs' will use the term "Defendants" herein to refer to all defendants except Chunghwa. Defendants agreed to extend the time to oppose their motion until October 15, 2010. Plaintiffs agreed that Defendants' reply brief would not be due until October 27, 2010.

Hon. Charles Legge
October 15, 2010
Page 2

producing the requested translations" is also incorrect.  Consistent with Plaintiffs' position, Chunghwa has objected to producing the translations.  Similarly, Defendants' argument that the work product privilege was waived when Chunghwa provided the translations to Plaintiffs also ignores that disclosure of the translations by Chunghwa to Plaintiffs was made in the context of their common interests – *i.e.,* it was a critical and valuable part of the cooperation bargained for by Plaintiffs in the settlements.  Denying Plaintiffs work product protection for the translations would also contravene the strong policy favoring settlement as well as the policies underlying ACPERA, and provide Defendants with an undeserved windfall worth millions of dollars.

*Second*, as Judge Illston held in the *TFT-LCD* litigation, the stay orders in this litigation preclude discovery of the translations.

*Third*, Defendants do not and cannot argue that, if the translations are protected work product, there is good cause for their production under Federal Rule of Civil Procedure 26(b)(3)(A)(ii).

*Finally*, if the Court is inclined to grant Defendants' motion, Plaintiffs submit that it should also order the production of all translations in Defendants' possession, and order the parties to agree on a translation protocol. Plaintiffs therefore cross-move that Defendants be compelled to produce all translations of documents responsive to Plaintiffs' document requests (or already produced) in their possession.

**II.     Statement of Facts**

As the Court is aware, DPPs and IPPs have reached settlements with Chunghwa.  This motion stems directly from the principal consideration received by Plaintiffs in connection with the settlements – Chunghwa's agreement to cooperate with Plaintiffs in the prosecution of this case against Defendants, including specifically, Chunghwa's agreement to provide professional translations of certain documents in its possession that would have otherwise cost Plaintiffs millions of dollars to obtain.

There are English translations of 768 multipage Chinese language documents at issue.  Each translated document was selected by Chunghwa's attorneys from among thousands of other documents.  The translations were performed by professional translators but are not "certified."  Plaintiffs are informed that Chunghwa spent "millions" of dollars to produce these translations.  All of the original documents on which the translations are based were produced to all parties by Chunghwa on March 8, 2010.  All of the Chunghwa translations were produced to the Department of Justice ("DOJ") by Chunghwa pursuant to confidentiality agreements as part of the cooperation required by its leniency application.  Saveri Decl., ¶¶ 3, 4, 5; Alioto Decl., ¶¶ 3, 4, 5.

Along with Chunghwa's monetary payment and its other cooperation, the translations were a critical part of the consideration received by Plaintiffs in the settlements

Hon. Charles Legge
October 15, 2010
Page 3

and were specifically bargained for. For example, the settlement agreement between DPPs and Chunghwa provides for production of English translations of documents evidencing collusive meetings or other conspiratorial conduct known to Chunghwa. Saveri Decl. ¶¶ 2, 6. The settlement also provides that material and information provided by Chunghwa to Plaintiffs shall be maintained in confidence, to the extent allowed by law. Saveri Decl., ¶ 7. The IPP settlement with Chungwha contains similar provisions. Alioto Decl., ¶ 2, 6, 7.

The translations were provided to Plaintiffs only after the settlement agreements were executed. Saveri Decl., ¶ 8; Alioto Decl., ¶ 8.

The parties have met and conferred on translation issues on a number of occasions, culminating in a final meet and confer on September 14, 2010. These issues have included, in addition to the Chunghwa translations, a host of other issues which have or will likely arise relating to foreign language documents which will play a central role in this case. For example, Plaintiffs believe that Defendants have translated large quantities of relevant documents, some of which have been transmitted to the Department of Justice ("DOJ"). In addition, some defendants responded to interrogatories by referring to the contents of foreign language documents. Samsung SDI referred to thousands of pages of Korean documents in response to one of Plaintiffs interrogatories. Saveri Decl., ¶ 10, 11.

Plaintiffs believe that these issues would be most efficiently and fairly addressed collectively at an early point in the case as has occurred in other cases. In particular, Plaintiffs believe, to the extent they are required to produce the Chunghwa translations, Defendants should be required to produce their translations. Defendants have refused to produce any translations of foreign language documents in their possession based on work product and joint defense privilege grounds, or to include the Chunghwa translation issue in a discussion of a translation protocol. Instead, they have insisted on immediate production of the Chunghwa translations. Saveri Decl., ¶¶ 10, 11; Alioto Decl. ¶¶ 10.

### III.   Argument

#### a. The "Common Interest" Doctrine Renders Defendants' Arguments Meritless.

The work product privilege embodied in Fed. R. Civ. Proc. 26(b)(3) protects from disclosure materials produced by a party or its attorneys or representatives "in anticipation of litigation." Defendants do not contend that the translations were not prepared "in anticipation of litigation." Rather, they argue only that (1) the privilege belongs to Chunghwa which has chosen not to assert it; and (2) in any event, Chunghwa waived the privilege when it provided the translations to Plaintiffs. Both arguments are incorrect.

The common interest doctrine (sometimes also referred to as the "common interest privilege" or "community of interest privilege"), is an extension of the attorney client and work product privileges and operates to preserve the privilege despite the disclosure of

Hon. Charles Legge
October 15, 2010
Page 4


confidential information to third parties "whenever multiple clients share a common interest about a legal matter." *In re Grand Jury Subpoenas,* 902 F.2d 244, 249 (D.C. Cir. 1990) ("*Grand Jury Subpoenas*"), quoting *United States v. Schwimmer,* 829 F. 2d 237, 243-44 (2d Cir. 1989). Courts have applied the common interest rule in a wide variety of circumstances:

> Recognizing that it is often preferable for co-defendants represented by different attorneys in criminal proceedings to coordinate their defense, courts developed the joint-defense privilege. In its original form, it allowed the attorneys of criminal co-defendants to share confidential information about defense strategies without waiving the privilege as against third parties. Moreover, one co-defendant could not waive the privilege that attached to the shared information without the consent of all others. Later, courts replaced the joint-defense privilege, which only applied to criminal co-defendants, with a broader one that protects all communications shared within a proper "community of interest," whether the context be criminal or civil..... Thus, the community-of-interest privilege allows attorneys representing different clients with similar legal interests to share information without having to disclose it to others. It applies in civil and criminal litigation, and even in purely transactional contexts.

*In re Teleglobe Communications Corp.,* 493 F.3d 345, 363-64 (3d Cir. 2007) (footnotes omitted). The doctrine does not require that each participant be a party to pending litigation and applies even where communicating parties have adverse interests:

> The common interest privilege does not require a complete unity of interests among the participants. The privilege applies where the interests of the parties are not identical, and it applies even where the parties' interests are adverse in substantial respects. . . . The privilege applies even where a lawsuit is foreseeable in the future between the codefendants.

*In re Mortgage & Realty Trust,* 212 B.R. 649, 653 (C.D. Cal. 1997) (citations omitted).

The rule applies fundamentally to prevent waiver, and has often been applied with regard to the work product privilege. *United States v. American Telephone and Telegraph Company,* 642 F.2d 1285, 1298-99 (D.C. Cir. 1980) ("*AT&T*"). Indeed, the rule has a broader and more lenient application with regard to the work product privilege than the attorney client privilege, because its purpose is to encourage effective trial preparation by preventing an adversary from taking advantage of that preparation, rather than protecting confidentiality. *Id.* at 331. Waiver of the work product privilege is found only if disclosure to a third party substantially increases the likelihood of its dissemination to litigation adversaries. *Id.* at 331 ("[a] disclosure made in the pursuit of such trial preparation, and not inconsistent with maintaining secrecy against opponents, should be allowed without waiver of the privilege."); *Aronson v. McKesson HBOC,* 2005 WL 934331 *6 (N.D. Cal. 2005) ("*Aronson*") (same, citing cases). Courts have found a "common interest" preventing

waiver in a wide variety of circumstances. *See e.g., AT&T,* 642 F. 2d at 1298 (listing cases); *Stix Prods., Inc. v. United Merchants & Mfgrs., Inc.,* 47 F.R.D. 334, 338 (disclosure between parties one of whose interests in prospective patent litigation may turn on the success of the other party in a separate patent litigation); *Nidec Corporation v. Victor Co. of Japan,* 2007 WL 2156256 *2 No. C-05-0686 SBA (EMC) (N.D. Cal. July 26, 2007) (disclosure of litigation abstract prepared by counsel to prospective buyers).

In *Aronson,* the court held that production of work product to a government agency pursuant to a confidentiality agreement did not waive the privilege, even where the government agency was "adverse." *See Aronson ,* 2005 WL 934331 *10 ("[t]he [work product materials] have resulted in significant benefits to the government: permitting the government to focus its investigation on the primary wrongdoers, filtering documents produced to the SEC, and permitting the government to deploy fewer employees to investigate McKesson. Therefore, taking into consideration the benefit to the public of permitting disclosure of work product to the government and in light of the cases cited above rejecting selective waiver but endorsing the preservation of work product protection under negotiated confidentiality with the government, the court finds that the facts presented by this case warrant the conclusion that McKesson did not waive work product protection . . . ")

Finally, waiver of the common interest privilege requires consent of all parties who share the privilege. *In re Imperial Corporation of America,* 179 F.R.D. 286, 289 (S.D. Cal. 1998) ("*Imperial*"); *Grand Jury Subpoenas,* 902 F. 2d at 248; *Killebrew v. City of Greenwood, Mississippi*, 1997 WL 208140 *2, No. 4:95CV355-B-B, (N.D. Miss. April 11, 1997).

### i. Plaintiffs and Chunghwa Share Common Interests.

There is no question that Plaintiffs and Chunghwa share common interests sufficient to mandate the application of the common interest doctrine. First, they share a "common interest" in effectuating their settlement agreements. Both agreements expressly require Chunghwa to provide confidential information regarding the alleged conspiracy, including translations. Both require that the information be maintained confidentially. Chunghwa's cooperation, including the monetary value of the translations, was a material part of the consideration received by Plaintiffs pursuant to both agreements. The disclosure of the translations to Plaintiffs was made only after the agreements were executed, and pursuant to the express provisions therein. Saveri Decl., ¶ 8; Alioto Decl. ¶ 8.

Additionally, Chunghwa seeks the benefits accruing to a leniency applicant under ACPERA. To receive the benefits of ACPERA, including substantially reduced civil liability, Chunghwa is required to cooperate with Plaintiffs by, *inter alia,* "providing a full account to [Plaintiffs] of all facts" relating to the conspiracy, including "all documents or other items potentially relevant to the civil action." 15 U.S.C. §213. The plain intent of ACPERA is to create incentives for members of price-fixing conspiracies to turn on their

co-conspirators and "rat them out." Once Chunghwa elected to do so and settled with Plaintiffs, it, like Plaintiffs, became an adversary of the Defendants, with an interest in the successful prosecution of Plaintiffs' case against them. Indeed, although Chunghwa has resolved its differences with Plaintiffs, it will likely face actions filed on behalf of opt-out plaintiffs; the liability reducing provisions of ACPERA therefore remain important.

Moreover, ACPERA mandated cooperation is manifestly meant to facilitate civil recoveries against non-cooperating defendants, not to benefit them. To hold that a leniency applicant who attempts to satisfy its cooperation obligations by providing work product to Plaintiffs waives the privilege would contravene the purposes of ACPERA (and reduce a Plaintiff's incentive to settle) by chilling effective means of cooperation and providing the benefits of that cooperation to non-cooperating defendants.

Plainly, therefore, at the time the translations were disclosed, Chunghwa and Plaintiffs had a "sufficient commonality of interests" that the common interest privilege may be asserted. *Imperial,* 179 F.R.D. at 289.

### ii. Plaintiffs Have Standing to Assert the Work Product Privilege.

In light of the existence of the common interest privilege, Defendants' argument that Plaintiffs lack standing to assert the work product privilege is incorrect. As noted above, the common interest privilege belongs to both parties to the communication. *See id.* ("waiver of the privilege requires the consent of all parties who share the privilege.") The cases upon which defendants rely are inapposite. Neither involved the common interest doctrine. *Novak v. Capital Mgmt. & Develop. Corp.*, 241 F.R.D. 389, 394 (D.D.C. 2007); *Green v. Sauder Moldings, Inc.,* 223 F.R.D. 304, 306-07 (E.D. Va. 2004).

### iii. Defendants Mischaracterize Chunghwa's Position.

Defendants' assertion that "Chunghwa has stated that it has no objection to producing the requested translations" is also not correct. Chunghwa objected to Defendants' discovery and refused to produce the translations. Chunghwa Discovery Response to Request No. 1 (pp. 3-4). Chunghwa takes the position that it will not disclose the translations absent a court order or agreement of the parties. Chunghwa's position is consistent with Plaintiffs' position and its obligation not to disclose the contents of its communications with Plaintiffs. Chunghwa Letter Brief dated October 15, 2010 [Dkt. 785]. For this reason as well, Defendants' assertion that there is no party before the court with standing to assert the work product privilege is incorrect.

### iv. Disclosure of the Translations to Plaintiffs Did Not Waive the Work Product Privilege.

Defendants' assertion that Chunghwa's disclosure of the translations to Plaintiffs waived the work product privilege also fails to account for the common interest rule. As noted above, the essence of the rule is that it prevents a waiver of privilege where disclosure is made to a third party. *See e.g., AT&T,* 642 F.2d at 1298-99.

The cases relied upon by Defendants are inapposite. *In re Steinhardt Part.,* 9 F.3d 230, 235, 236 (2d Cir. 1993) did not involve an assertion of "common interest" and the Court explicitly reserved that issue. *U.S. v. Bergonzi,* 216 F.R.D. 487, 497 (N.D. Cal. 2003), *appeal dismissed*, 403 F.3d 1048 (9th Cir. 2005) ("*Bergonzi*") is also inapposite. *Bergonzi* involved the same materials at issue in *Aronson* but was a criminal case. *See Aronson,* 2005 WL 934331 *10 n. 13 (distinguishing *Bergonzi*). The *Bergonzi* court essentially held that only an "unconditional" confidentiality agreement could prevent waiver. *Bergonzi,* 216 F.R.D. at 496-97. *Aronson* rejected this standard, holding that a confidentiality provision was adequate where the re-disclosure allowed was "no broader than required to make voluntary disclosure by McKesson useful to the government. The re-disclosure provisions are logical preconditions for the government's agreeing to treat the materials as privileged and confidential." *Aronson,* 2005 WL 934331 *10.

Additionally, certain kinds of work product are created not only by the work of attorneys, but also, as here, by the expenditure of money. The hundreds of pages of translations at issue here were created by professional translators at significant cost. The value of the translations was a significant part of the consideration Plaintiffs received in the settlements, in return for the releases of liability provided to Chunghwa. Saveri Decl., ¶¶ 2, 3; Alioto Decl. ¶¶ 2, 3. Because Plaintiffs essentially paid Chunghwa for these translations, just as they would have paid a professional translator, it is appropriate that the work product privilege be maintained. To provide them to Defendants is simply to reward them with a windfall.

### b. The Stay Orders In Place In This Litigation Preclude Discovery of the Chunghwa Translations.

The court has entered three stay orders in this case; each precludes discovery of materials which reflect, refer or relate to communications between defendants and the DOJ. Saveri Decl., exs. 1, ¶ 12 [Dkt. 379]; 2, ¶ 13 [Dkt. 425]; 3, ¶ 14 [Dkt. 590]. The DOJ has repeatedly emphasized its concern in this case that translations provided to it by defendants should not be subject to discovery, and has taken the position, joined by Defendants, that the stay orders preclude discovery of translations in Defendants' possession which have been provided to the DOJ. In the *TFT-LCD* case, Judge Illston held that identical language in a stay order there precluded production of translations pursuant to discovery requests regardless of whether or not the work product privilege had been waived by transmission to the DOJ: "As to those translations that were provided to the Department of Justice, even if

Hon. Charles Legge
October 15, 2010
Page 8

there was a waiver, plaintiffs are nevertheless not entitled to those translations because the May 27, 2008 Joint Recommendation and Order re Stay of Discovery prohibits all discovery that "refer, reflect or relate to any party's or witness' communications with the United States . . ." "Order Granting In Part And Denying In Part Direct Purchaser Plaintiffs To Special Master's Report And Recommendations Regarding Translations; Adopting Report And Recommendations" (Jan. 21, 2010) (Dkt. No. 1493) in *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M: 07-1827 SI (N.D. Cal.) (Saveri Decl., ¶ 16, ex. 5). Because the translations at issue here were provided to the DOJ by Chunghwa, the stay orders in place in this litigation, as in *TFT-LCD,* therefore also preclude production of the Chunghwa translations.

### c. Defendants' Concede That They Have No "Substantial Need" of the Chunghwa Translations

Defendants do not contend that they are entitled to the translations even if they are subject to the work product privilege on the grounds that they have a "substantial need of the materials" under Fed. R. Civ. Proc. 23(b)(3). Nor can they, for several reasons. First, Defendants have had the original Chinese language version of every translated document in their possession since March, 2010. Saveri Decl., ¶ 4; Alioto Decl. ¶ 4. Second, virtually all defendants have substantial operations in Chinese speaking countries and hundreds if not thousands of Chinese speaking officers and employees. There can be little doubt that Defendants have already analyzed and, to the extent they need them, made their own translations of many, if not all of the translated documents.[2] Third, while made by professional translators, the translations are not admissible evidence in their present form because they have not been certified. While it is possible that some of the translations could become evidence, Plaintiffs submit that it is not appropriate to order their production unless and until there is a translation protocol in place in this case providing for both (1) the efficient resolution of disputes about the accuracy of translations; and (2) the equitable sharing of translation expenses in this case.

### d. In the Alternative, This Court Should Order Production of Translations By All Parties

In the alternative, if the Court concludes that the translations of the Chunghwa documents are discoverable, Plaintiffs will, of course, produce them. However, if such an order is issued, Plaintiffs should be equally entitled to discover translations of foreign language documents relevant to this case in the possession, custody or control of any defendant. In stark contrast to the collective Chinese language resources of Defendants, Plaintiffs' primary means to analyze these documents is through the use of expensive

---

[2] To the extent one or more Defendants does not have such Chinese language resources, it is likely that they have obtained translations from other Defendants pursuant to a joint defense agreement, or simply hired their own translators. Defendants should be required to disclose the extent to which they have translated the Chunghwa documents.

translations. Plaintiffs therefore cross-move to compel such translations, except to the extent such production violates the stay orders.

Moreover, there are other actual (and many more potential) disputes among the parties regarding translations. As noted above, for example, Samsung SDI has responded to certain of Plaintiffs' interrogatories by referring, pursuant to Fed. R. Civ. Proc. 33(d), to thousands of pages of foreign language documents. This is improper and Samsung SDI should be compelled to produce translations of these documents. Plaintiffs respectfully submit that instead of having to deal with piecemeal motions to compel on the discoverability of translations of foreign language documents throughout this case, it would be more useful to develop an early translation protocol governing the use and production of all such translations, and to delay the production of translations until such a protocol is in place. Chief Judge Vaughn Walker recently ordered the parties to develop such a protocol at an early stage in the Optical Disk Drives Antitrust Litigation. Saveri Decl., ¶ 15. The parties in the litigation between Intel and AMD stipulated to such a protocol at an early point. "Stipulation And Order Regarding English Translations" (May 4, 2006) in *In re Intel Microprocessor Antitrust Litig*., MDL Dkt. No. 05-1717 (JJF) (D. Del.), Saveri Decl., ¶ 17, ex. 6. Plaintiffs believe that it would be efficient for the Special Master to do something similar here.

### IV. Conclusion

For all the reasons stated above, Plaintiffs respectfully submit that Defendants' motion to compel discovery of the Chunghwa translations should be denied.

    Yours sincerely,

/s/ *Guido Saveri*_____
Guido Saveri
Interim Lead Counsel for the
Direct Purchaser Plaintiffs

/s/ *Mario Alioto*_____
Mario Alioto
Interim Lead Counsel for the
Indirect Purchaser Plaintiffs

cc: All Counsel via ECF