| | |
|---|---|
| **SAVERI & SAVERI, INC.**<br>706 SANSOME STREET<br>SAN FRANCISCO, CALIFORNIA 94111<br>TELEPHONE: (415) 217-6810<br>TELECOPIER: (415) 217-6813 | *Trump Alioto Trump & Prescott*<br>ATTORNEYS LLP<br>2280 Union Street<br>San Francisco, California 94123<br>(415) 563-7200<br>FAX (415) 346-0679 |

October 21, 2010

Honorable Charles A. Legge
JAMS
Two Embarcadero Center, Suite 1500
San Francisco, CA 94111

     Re:   *In Re: Cathode Ray Tube (CRT) Antitrust Litigation,* MDL 1917 (N.D. Cal.)--Reply Letter Brief On Motion To Compel Discovery of Foreign Conduct And Pricing

Your Honor:

    The Direct Purchaser Plaintiffs and Indirect Purchaser Plaintiffs (collectively, "Plaintiffs") respectfully submit this letter brief in reply to the opposition letter brief filed on October 4, 2010 ("Opp.") by defendants Hitachi, Ltd. ("HTL"), Hitachi Displays, Ltd. ("HDP"), Hitachi Asia, Ltd. ("HAS"), Hitachi Electronic Devices (USA), Inc. ("HED(US)") and Hitachi America, Inc. ("HAL") (collectively "Hitachi" or "Hitachi Defendants") to Plaintiffs' motion to compel responses to discovery concerning foreign anticompetitive activities and sales data. This reply is supported by the accompanying Supplemental Declaration of R. Alexander Saveri ("Supp. Saveri Decl.").

    In opposition to Plaintiffs' motion, Hitachi raises essentially five arguments, none of which are persuasive. *First*, Hitachi contends that the motion is overbroad in light of its stated intention to withhold only documents that it concludes are unrelated to U.S. commerce. *Second***,** Hitachi incorrectly contends that Plaintiffs seek "limitless" discovery that should be curtailed. *Third*, Hitachi argues that foreign discovery should be limited based upon its anticipated defense under the Foreign Trade Antitrust Improvements Act of 1982, 15 U.S.C. § 6a ("FTAIA"). *Fourth*, Hitachi argues, without substantiation, that responding to discovery would be unduly burdensome. *Fifth*, Hitachi contends that Plaintiffs' motion is premature and additional discovery conferences should take place. Plaintiffs address these arguments in turn.

    **<u>Hitachi's Proposed Limitations Will Exclude Relevant Documents</u>**. The foreign discovery sought is directly relevant to the Plaintiffs' allegations of a global conspiracy that was formulated and furthered by multiple meetings occurring outside the United States.[1] Despite this strong showing of relevance, Hitachi argues that it should be allowed to

---

[1] *See* Letter Brief on Motion To Compel Discovery of Foreign Conduct And Pricing, pp. 1-2.

Hon. Charles Legge
October 21, 2010
Page 2

withhold responsive documents that it determines are unrelated to United States commerce. Opp. at 2.

Hitachi's position is not supported by the relevant case law, which allows discovery of relevant information without geographic limitations. *See In re Urethane Antitrust Litig.*, 261 F.R.D. 570, 574-75 (D. Kan. 2009)("[A] document showing a foreign meeting between representatives of two defendants held shortly before defendants each announced a U.S. price increase of Polyether Polyol products could be used by plaintiffs as circumstantial evidence of the conspiracy, even if the face of the document indicates that the subject of the meeting was a discussion of urethane sales to markets in Africa…."); *In re Aspartame Antitrust Litig.,* Case No. 2:06-CV-1732 LDD, 2008 WL 2275531, at *2 (E.D. Pa. May 13, 2008) (finding that information relating to "non-U.S. manufacture, sale and distribution of aspartame may prove relevant to establishing the existence of a global conspiracy to allocate the market for aspartame, the ability of market participants to engage in domestic price fixing and the mechanisms employed by market participants in price fixing"); *In re Auto. Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2004 U.S. Dist. LEXIS 29160 at *10, *14, *17 (E.D. Pa. Oct. 29, 2004) ("*Auto Paint*") ("Plaintiffs' discovery requests with respect to Defendants' manufacture, sale, and/or distribution of automotive refinishing paint in foreign countries are relevant to their domestic antitrust claims[,]" citing, as an example, foreign meetings of the European Council of the Paint, Printing Ink and Artists' Colours Industry, where a global conspiracy was allegedly formulated).

Hitachi's proposal also improperly gives Hitachi discretion to decide what is or is not related to U.S. commerce. This approach was expressly disapproved in *Aspartame*: "Defendants' suggestion that discovery be limited to only those foreign materials that Defendants determine have a substantial effect on U.S. commerce is not acceptable. Though counsel usually plays a vital role in deciding the relevancy of documents to be produced in response to a discovery request, the standard proposed by Defendants is inappropriate." 2008 WL 2275531, at *3. The same holds true here.[2]

**The Foreign Discovery Sought Is Not "Limitless" In Scope.** No one disputes the notion that discovery in antitrust cases is subject to limitations in accordance with the principles set forth in Rule 26. However, discovery *is* necessarily broad in antitrust conspiracy cases: "this liberal policy favoring discovery is particularly appropriate because 'broad discovery may be needed to uncover evidence of invidious design, pattern, or intent.' 'Broad discovery is permitted because direct evidence of an anticompetitive conspiracy is often difficult to obtain, and the existence of a conspiracy frequently can be established only through circumstantial evidence, such as business documents and other records.'" *Urethane*, 261 F.R.D. at 573 (citations omitted). *Accord Aspartame*, 2008 WL 2275531, at *1. As noted above, cases like *Urethane*, *Aspartame* and *Auto Paint*—all

---

[2] Footnote 4 of Hitachi's opposition, arguing that the CRT industry is fundamentally regional in nature, sets forth Hitachi's principal line of defense in this case, namely that whatever CRT related conspiracy may have existed, it did not affect the U.S. market. There can be little doubt that Hitachi intends to withhold evidence of its conspiratorial conduct on the grounds that it relates to markets other than the United States.

Hon. Charles Legge
October 21, 2010
Page 3

decided well after the 2000 amendments to Rule 26(b) that Hitachi cites (Opp. at 4) [3]—properly permit discovery without geographical limitation where plaintiffs allege a global price-fixing conspiracy. Hitachi demonstrates no reason to stray from this standard here.[4]

Moreover, as discussed in Plaintiffs' opening briefs, Plaintiffs have offered to limit Hitachi's discovery obligations by working with Hitachi to develop a list of custodians likely to have discoverable information.[5] Thus, it is disingenuous for Hitachi to claim that Plaintiffs are seeking "every document related to either [Hitachi's] CRT tubes or CRT Products businesses wherever located". Opp. at 1-2.

**The FTAIA Does Not Bar Discovery of Relevant Information**. Hitachi concedes that the FTAIA is not a discovery statute. Opp. at 5. As pointed out in pages 2-3 of

---

[3] Hitachi's reference to the 2000 amendments to Rule 26(b), which includes all information "relevant to the any party's claim or defense", is unpersuasive. "The relevancy of a discovery request is determined by analyzing the allegations contained in the complaint and the substantive law applicable to those allegations." *Aspartame*, 2008 WL 2275531, at *2.

[4] The cases upon which Hitachi relies (Opp. at 4-5) are inapposite. *See Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1065 fn. 5 (9th Cir. 2004) (limiting discovery of immigration status in an employment case for an after-acquired evidence defense given "the substantial risk of chilling the rights of these and future plaintiffs"); *Hallett v. Morgan*, 296 F.3d 732 (9th Cir. 2002)(affirming refusal to order production of prison's internal policies in a §1983 case after conducting *in camera* review); *Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988)(granting discovery stay in malicious prosecution case to determine whether defendant was entitled to immunity); *Franchise Realty Interstate Corp. v. San Francisco Local Joint Exec. Bd. of Culinary Workers*, 542 F.2d 1076 (9th Cir. 1976) (granting motion to dismiss; no valid antitrust violation alleged); *Bryant v. Mattel, Inc.*, Nos. C04-09049, CV 04-09059, CV 05-2727, 2007 WL 5432959, at *3 (C.D. Cal. Apr. 19, 2007) (limiting scope of discovery to products alleged in the complaint in a "serial copycatting" case); *In re Ashworth, Inc. Sec. Litig.*, No. 99-CV-121, 2002 WL 33009225 (S.D. Cal. May 10, 2005) (granting motion to quash subpoena seeking material beyond the claims and defenses); *Pacific Gas & Elec. Co. v. Lynch*, No. C-01-3123, 2002 WL 32812098, at *1 (N.D. Cal. Aug. 19, 2002)(ordering compliance with nonparty subpoena regarding investor-owned utility rate increases); *Koch v. Koch Indus., Inc.*, No. 85-1636-C, 1992 WL 223816, at *10 (D. Kan. Aug. 24, 1992) (limiting discovery of communications with third parties in stock sale case where robust discovery on the issue had already taken place); *United Phosphorus Ltd. v. Angus Chem. Co.*, 131 F.Supp. 2d 1003, 1016-17 (N.D. Ill. 2001), aff'd, , 322 F.3d 942 (7th Cir. 2002), *cert denied*, 540 U.S. 1003 (2003) (finding allegations by India-based prospective manufacturers of tuberculosis medicine ingredient that they would have produced related chemicals in U.S., when there was no evidence of any plans to do so, failed to allege impact on domestic commerce in monopolization claim against U.S company that sought to bar its employee from disclosing technology to the manufacturers).

[5] Letter Brief On Motion To Compel Discovery of Information Antedating November of 2003, p. 2.

Hon. Charles Legge
October 21, 2010
Page 4

Plaintiffs' opening letter brief, every reported case dealing with foreign discovery and the FTAIA has found the statute did not bar such discovery. Hitachi does not dispute that point, and, as noted above, case law uniformly supports allowing the discovery here.

The *TFT-LCD Antitrust Litigation* is also instructive. There, plaintiffs alleged a worldwide conspiracy to fix the prices of TFT-LCDs and TFT-LCD Products, implemented by defendants through, *inter alia*, many bilateral and group meetings conducted in foreign countries. The defendants raised an FTAIA defense to certification of direct and indirect purchaser classes. In granting certification of both classes, the court ruled that the FTAIA issues were properly dealt with on a common basis ***and on a full discovery record***. *In re TFT-LCD Antitrust Litig.*, 267 F.R.D. 291, 307-08 (N.D. Cal. 2010) (rejecting FTAIA as defense to direct purchaser class certification); *In re TFT-LCD Antitrust Litig.*, 267 F.R.D. 583, 599 (N.D. Cal. 2010) (rejecting FTAIA as defense to indirect purchaser class certification: "The Court will be required to determine whether defendants import goods, whether defendants' conduct is 'foreign' and outside the scope of the Sherman Act, and, if foreign conduct is involved, whether that foreign conduct sufficiently affects domestic commerce: these are questions that can be decided on a class-wide basis"). Thus, any FTAIA limitations should be decided with the benefit of full discovery, and Plaintiffs should not be denied the very discovery needed to challenge affirmative defenses.

Hitachi's criticism of Plaintiffs' citations to cases antedating the Supreme Court's decision in *F. Hoffman LaRoche, Ltd. v. Empagran S.A.*, 542 U.S. 155 (2004) ("*Empagran*"), is also without merit. Opp. at 8. Indeed, many of those earlier decisions have been relied on with approval in post-*Empagran* decisions and their logic is no less applicable here. *See Urethane*, 261 F.R.D. at 573-74 & nn. 12, 17-20, 575 n. 26; *Aspartame*, 2008 WL 2275531, at \*2; *In re Intel Corp. Microprocessor Antitrust Litig.*, No. 05-1717, 2007 WL 137152, at \*5 (D. Del. Jan. 12, 2007). Tellingly, Hitachi fails to address the fact that cases like *Urethane* or *Aspartame* ordered broad-based foreign discovery with respect to matters that did not expressly deal with U.S. commerce, as described above. In short, the cases Plaintiffs cite are directly on point and support the discovery sought.

**Hitachi Has Failed To Articulate Any Undue Burden**. Hitachi has had ample opportunity to demonstrate what, if any, undue burden it would suffer by complying with the discovery sought. It has not done so. In opposition to Plaintiffs' motion to compel, Hitachi attempts to quantify its burden by identifying eight gigabytes and 52 boxes of potentially responsive data from HTL, 64 boxes of potentially relevant documents from HDP, and as many as 258,000 potentially responsive documents from HED (US).[6] In the context of a major antitrust conspiracy case, however, these numbers are underwhelming. In *TFT-LCD*, for example, a total of ***20-25 million pages of documents*** have been produced.[7] The Hitachi entities (including HDP, which is a defendant in both cases) have

---

[6] *See* Declaration of Diana L. Webb In Support of Oppositions to Motion to Compel/Strike Objections Against Hitachi Defendants, ¶¶ 2-6.

[7] *See* "Special Master's Order re Motion of Direct Action Plaintiffs To Compel Production of Documents," p. 2 (Sept. 3, 2010) in *In re TFT-LCD (Flat Panel) Antitrust Litig.,* Civil Action No. 07-MDL-1827 (N.D. Cal.) (Dkt. No. 2020).

Hon. Charles Legge
October 21, 2010
Page 5

produced **1.2 million documents** so far, many of them from foreign sources. Supp. Saveri Decl. ¶ 2.  Other antitrust cases involved similarly large productions.  *E.g., In re Fine Paper Antitrust Litig.,* 685 F.2d 810, 818 (3rd Cir. 1982), *cert. denied*, 459 U.S. 1186 (1983) (nearly **two million documents** produced); *In re Brand Name Prescription Drugs Antitrust Litig.,* 123 F.3d 599, 614 (7th Cir.1997), *cert. denied*, 522 U.S. 1153 (1998) (over **fifty million pages** produced); *In re Linerboard Antitrust Litig.,* 296 F.Supp.2d 568, 577 (E.D.Pa.2003) (**millions** of pages produced). Notably, decisions involving foreign discovery have cited these case statistics in concluding that defendants' claims of burden were unpersuasive.  *See, e.g., Auto Paint*, 2004 U.S. Dist. LEXIS 29160 at *18; *In re Plastics Additives Antitrust Litig.*, No. Civ. A. No. 03-2038, 2004 WL 2743591, at *14 (E.D. Pa. Nov. 29, 2004).[8]

Moreover, it is axiomatic that the burden on Hitachi would only be *increased* by its proposal to screen documents for those involving U.S. commerce.  As the court in *Auto Paint* explained, "Defendants have already agreed to produce all documents and information, regardless of their location, that relate to the United States. . . .  Broadening the scope of discovery to include foreign activities will likely require Defendants to search through the same sets of documents, and will not obligate them to conduct a separate 'filtering' process to separate out only those documents that relate to the United States." 2004 U.S. Dist. LEXIS 29160 at *19-*20.  *See also Urethane*, 261 F.R.D. at 575.

**Plaintiffs' Motion Is Ripe**. As the letter briefing on this motion amply demonstrates, it is not premature. The parties have a fundamental disagreement regarding Hitachi's discovery obligations under Rule 26.  No additional conferral sessions are going to alter the parameters of that disagreement. No further discussions about appropriate custodians are going to advance proceedings, given the basic dispute between the parties regarding what type of foreign discovery ought to be produced. The motion is therefore ripe for decision now.

---

[8] The authorities Hitachi cites (Opp. at 9-10) do not hold otherwise and, if anything, support Plaintiffs' position. *See Rebel Oil Co., Inc. v. Atlantic Richfield Co*., 133 F.R.D. 41, 45 (D. Nev. 1990) (ordering discovery on relevant market to precede discovery on predatory pricing in single-firm domestic monopolization case); *In re ATM Fee Antitrust Litig*., No. C 04-02676 CRB, 2007 WL 1827635, at *3 (N.D. Cal. June 25, 2007)(finding that discovery of materials containing information about foreign ATM networks as well as the domestic Star ATM network "not unduly burdensome in light of its greater relevance"); *Schmidt v. Columbia Pictures, Ltd*., No. CV LV 85-819 LDG, 1986 WL 13357, at *3 (D. Nev. April 13, 1986) (permitting discovery "relating to the licensing of first-run motion pictures by Defendants to [other exhibitors] in geographic areas outside Las Vegas" regarding a claim that distributors denied Las Vegas exhibitor access to first-run films).  For the reasons explained in Plaintiffs' reply letter brief with respect to CRT Products, Hitachi's arguments as to specific companies are also unavailing. Indeed, Judge Conti, in denying motions to dismiss, referred to the allegations with respect to corporate families generally and the Hitachi corporate family specifically (including its foreign constituents) in the operative complaints. *In re Cathode Ray Tube (CRT) Antitrust Litig*., No. CV 07-5944 SC, 2010 WL 3632775, at *5, *7 (N.D. Cal. March 30, 2010).

Hon. Charles Legge
October 21, 2010
Page 6

    Yours sincerely,

/s/ *Guido Saveri*_____
Guido Saveri
Interim Lead Counsel for the
Direct Purchaser Plaintiffs

/s/ *Mario Alioto*_____
Mario Alioto
Interim Lead Counsel for the
Indirect Purchaser Plaintiffs

cc: All Counsel via ECF