**SAVERI & SAVERI, INC.**
706 SANSOME STREET
SAN FRANCISCO, CALIFORNIA 94111
TELEPHONE: (415) 217-6810
TELECOPIER: (415) 217-6813

*Trump Alioto Trump & Prescott*
ATTORNEYS LLP
2280 Union Street
San Francisco, California 94123
(415) 563-7200
FAX (415) 346-0679

October 21, 2010

Honorable Charles A. Legge
JAMS
Two Embarcadero Center, Suite 1500
San Francisco, CA 94111

> **Re:**   ***In Re: Cathode Ray Tube (CRT) Antitrust Litigation*, MDL 1917 (N.D. Cal.)--Reply Letter Brief On Motion To Compel Discovery With Respect To CRT Products**

Your Honor:

The Direct Purchaser Plaintiffs ("DPPs") and Indirect Purchaser Plaintiffs ("IPPs") (collectively "Plaintiffs") respectfully submit this letter brief in reply to the opposition letter brief filed on October 4, 2010 ("Opp.") by defendants Hitachi, Ltd. ("HTL"), Hitachi Displays, Ltd. ("HDP"), Hitachi Asia, Ltd. ("HAS"), Hitachi Electronic Devices (USA), Inc. ("HED(US)") and Hitachi America, Inc. ("HAL") (collectively the "Hitachi Defendants" or "Hitachi") to Plaintiffs' motion to compel responses to discovery concerning finished CRT Products. This response is supported by accompanying: (a) "Supplemental Declaration of R. Alexander Saveri" ("Supp. Saveri Decl."); and (b) "Declaration of Mario Alioto" ("Alioto Decl.").

The Hitachi Defendants' arguments against the motion to compel may be summarized as follows. *First*, they contend that any CRT Products discovery as to HAS, HED(US) and HAL is improper and should be denied outright. Opp. at 4-5. *Second*, they contend that any CRT Products discovery as to HAS and HDP should be limited to United States transactional and sales data. *Id.* at 5-9. The latter point is allegedly supported by: (a) Chunghwa's discovery responses; (b) what has happened in the *TFT-LCD Antitrust Litigation* ("*TFT-LCDs*"); (c) the necessity for a threshold showing under Fed. R. Civ. P. 11 with respect to Plaintiffs' allegations as to a CRT Products conspiracy; and (d) the burden such discovery would place on HTL. None of these arguments pass muster.

**Issues As To HAS, HED(US) and HAL**. The Hitachi Defendants say that HED(US) never made CRT Products. The "Declaration of L. Thomas Heiser" (Oct. 4, 2010) submitted in support of their opposition states that it sold and made CRTs (part of the definition of "CRT Products" contained in the operative complaints) up until 2003, and has never made or sold finished products containing CRTs. *Id.* ¶¶2-3. What he fails to mention is that HED(US) is listed as an "overseas affiliated company" of HDP, which does make finished products containing CRTs, and HDP's website states that "[o]ur display products are popular and highly valued all over the world, and we maintain a system of

Hon. Charles Legge
October 21, 2010
Page 2

close contact with our overseas customers through the network of Hitachi Group," of which HED(US) is a member. http://www.hitachi-displays.com/en/company/group_ overseas/index.html. The current Electronics Manufacturers' website, billed as the "premier industry portal," claims that HED(US)' "[p]roduct line includes a broad array of picture tubes for projection TV's, color display tubes for the personal computer market, and lightweight liquid crystal diode (LCD) displays with its wide viewing angles, high quality images and slim, lightweight modules, used for laptop computers and other applications." http://www.electronics-manufacturers.com/Electronic_components/Electronic_display_ devices/LCD_displays/.  This is enough to raise a factual issue about the accuracy of the Hitachi Defendants' assertions about what HED(US) sells or has sold in the United States that needs to be explored through discovery.

With respect to HAL, the Hitachi Defendants rely on the "Declaration of Tillie Lim" (Oct. 5, 2010), which states that HAL has never sold or manufactured CRTs since 1998.  *Id*.¶2. Opp. at 5.  The Hitachi Defendants also claim that HAL largely ceased selling CRT Products in 2003.  *Id*. Since the class periods in the DPP and IPP complaints extend back to 1995, these arguments are not dispositive.  Moreover, they appear to be factually incorrect. HAL is the parent of HED(US), so any factual issues as to the latter affect the former.  http://www.hitachi-america.us/.  Moreover, as late as 2005, HAL was trumpeting its new "CRT rear-projection television line" in the United States. http://www.hitachi.us/ about/press/details/05272005_3.html. The same webpage asserts that HAL "produces and markets" "CRT televisions." *See also* http://www.hitachi-america.us/products/ consumer/tv/products/archive/ar_crtproj/details/57F59.html (current HAL website discussing its "High-Brightness CRTs.") Thus, the Hitachi Defendants' representations to the Special Master about HAL also appear to be false and must be explored through discovery.  HAL should also produce any documents from any of its subsidiaries relating to CRT Products, which are within its possession, custody, or control. *See In re ATM Fee Antitrust Litig*., 233 F.R.D. 542, 543-45 (N.D. Cal. 2005).

As for HAS, there is no declaration offered for the assertion that it was never in the CRT Products business, so discovery is needed with respect to it as well.

**Issues As To HTL And HDP**.  It is undisputed that HTL and HDP manufacture and/or sell CRT Products. Despite the fact that the DPPs' and IPPs' complaints have been sustained as to claims of a CRT Products conspiracy, the Hitachi Defendants assert that before they are obligated to turn over information as to finished CRT Products, Plaintiffs must first respond to Defendants' contention interrogatories and satisfy the Hitachi defendants that there is a basis for the claim that a conspiracy occurred with respect to such products.  Opp. at 1-2.  That is simply not the law.  As Fed. R. Civ. P. 26(d)(2)(B) states, "discovery by one party does not require any other party to delay its discovery."  *See Pulsecard, Inc. v. Discover Card Servs., Inc*., 168 F.R.D. 295, 308 (D. Kan. 1996) ("[a] party may not withhold discovery solely because it has not obtained to its satisfaction other discovery"); *Richardson v. City of Antioch*, No. C-08-3470, 2009 WL 982118 at *1 (N.D. Cal. Apr. 13, 2009) ("[t]he Court does not look favorably upon a 'tit for tat' approach to

Hon. Charles Legge
October 21, 2010
Page 3


discovery. A party may not withhold relevant discovery simply on the basis that the other side has not been forthcoming with discovery").

        Nor is the Hitachi Defendants' position consistent with the case law regarding antitrust discovery. As said in *In re Urethane Antitrust Litig.*, 261 F.R.D. 570, 573 (D. Kan. 2009): "[a] party does not have to prove a *prima facie* case to justify a request which appears reasonably calculated to lead to the discovery of admissible evidence."[1]  Indeed, courts in antitrust cases have even permitted broad discovery of conduct not encompassed directly within the allegations of anticompetitive acts contained in the complaint.  *See e.g. In re Domestic Air Transp. Antitrust Litig.*, 141 F.R.D. 556, 565 (N.D. Ga. 1992)("the Court finds the request reasonable and will grant plaintiffs' motion with regard to information concerning hubs and airports not named in the Amended Complaint"); *Emerson Elec. Co. v. Le Carbone Lorraine, S.A.*, No. 05-6042 (JBS)**,** 2008 WL 4126602 at *6 (D.N.J. Aug. 28, 2008) (footnote omitted) (in a case involving an alleged conspiracy in electrical carbon products industry, plaintiffs were entitled to obtain discovery of information relating to a conspiracy with respect to isostatic graphite products; "it does appear that discovery of other evidence of the isostatic graphite cartel should be permitted because it is likely to lead to evidence that may be admissible at trial. Similar cartel activities undertaken in a similar marketplace may be probative of the motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake of Carbone, its officers or employees in the present case under Rule 404(b), Fed.R.Evid."); *In re ATM Fee Antitrust Litig.*, No. C 04-02676 CRB, 2007 WL 1827635 at *3 (N.D. Cal. June 25, 2007)(in antitrust case involving the Star ATM network, the court said that "[t]o the extent that Plaintiffs request the production of materials that themselves contain information about other or foreign ATM networks *and the domestic Star ATM network as well,* the Court finds that the production of such information is not unduly burdensome in light of its greater relevance" (emphases in original)); *Schmidt v. Columbia Pictures, Ltd.*, No. CV LV 85-819 LDG, 1986 WL 13357 at *3 (D. Nev. April 14, 1986) (claim that distributors denied Las Vegas exhibitor access to first-run films; court permitted discovery "relating to the licensing of first-run motion pictures by Defendants to Syufy, Mann and Plitt [other exhibitors] in geographic areas outside Las Vegas at times relevant to this action").  If such discovery is allowed with respect to conduct *not* encompassed within an antitrust complaint, it should certainly be allowed where, as here, Plaintiffs have alleged a *single overarching conspiracy involving CRT Products* for which discovery is now sought.[2]

---

[1] The one antitrust case that the Hitachi Defendants cite is distinguishable. *See Rebel Oil Co., Inc. v. Atlantic Richfield Co.*, 133 F.R.D. 41, 45 (D. Nev. 1990) (single-firm domestic monopolization case; court ordered discovery on relevant market to precede discovery on predatory pricing).

[2] Moreover, even if no conspiracy as to CRT Products had been alleged, the IPPs would be entitled to discovery as to finished CRT Products for purposes of class certification. See *In re TFT-LCD (Flat Panel) Antitrust Litig.,* 267 F.R.D. 583, 603 (N.D. Cal. 2010); *In re Static Random Access Memory (SRAM) Antitrust Litig.,* 264 F.R.D. 603, 605-06 (N.D.Cal.

Hon. Charles Legge
October 21, 2010
Page 4


        Chunghwa's asserted "admissions" that it is "unaware" of a finished products
conspiracy is immaterial to Plaintiffs' motion. It is not evidence; at best, it is inadmissible
hearsay.  *First Acceptance Ins. Co. v. Ramirez,* 2010 WL 779315 at \*6 (M.D. Fla. Feb. 26,
2010) (admissions of defendant not admissible against plaintiff). *Accord Riberglass, Inc. v.
Techni-Glass Indus., Inc.,* 811 F. 2d 565, 566 (11th Cir. 1987) (deemed admission of
defendant not admissible against other defendants).  It is simply the self-serving statement--
on information and belief, no less--of a defendant which, despite its settlement here, still
faces enormous liability in opt-out litigation.

        Nor is there any basis for denying such discovery until Plaintiffs can make some
showing with respect to a claimed Rule 11 violation. This point was explained at pages 9-
10 of Plaintiffs' September 20, 2010 letter brief opposing Defendants' motion to compel
responses to contention interrogatories; that discussion is incorporated by reference here.

        With respect to what has occurred in *TFT-LCDs*, it is the Hitachi Defendants who
have not been accurate in discussing the facts in that case.  Paragraph 2 of the May 27,
2008 stay order in that case (attached as Exhibit 16 to the "Declaration of R. Alexander
Saveri" (Sept. 9, 2010) ("Saveri Decl.") (Dkt. No. 755-6)) limited *all* merits-related
discovery as to *both* TFT-LCD panels *and* TFT-LCD finished products until January 9,
2009, when the stay requested by the Department of Justice ("DOJ") would expire.
Conversely, it permitted various types of non-merits related discovery to go forward in the
interim as to *both* TFT-LCD panels *and* TFT-LCD finished products.  At the hearing held
on September 30, 2008 (attached as Exhibit 17 to the Saveri Decl.), counsel for the direct
purchasers stated that some defendants were producing information on finished TFT-LCD
Products pursuant to the May 27 order.  Transcript of September 30, 2008 Hearing at 9-10.
Judge Illston said that with respect to the three types of finished products on which the
indirect purchasers in *TFT-LCDs* sued--televisions, laptops and monitors--discovery sought
by the indirect purchasers on those products should be furnished to the direct purchasers as
well.  *Id*. at 10-11. The passage on page 11 of the transcript quoted by Hitachi merely
reflected Judge Illston's view that discovery as to *other types of finished TFT-LCD
products* would be held in abeyance *until she ruled on the viability of amended complaints*.

        On March 3, 2009, the Court upheld both direct purchaser and indirect purchaser
amended complaints. *In re TFT-LCD (Flat Panel) Antitrust Litig.,* 599 F.Supp.2d 1179
(N.D. Cal. 2009).  At about the same time, the stay requested by the DOJ expired.  Since
then, merits discovery has gone forward with respect to *both* TFT-LCD panels *and* TFT-
LCD finished products, both here and abroad.  A total of 20-25 million pages of documents

---

2009) (considering products in which TFT-LCD panels or SRAM were used).  *See* Alioto
Decl. ¶¶ 3-6. Likewise, the DPPs would be entitled to such discovery under the teachings
of *In re Sugar Industry Antitrust Litig.*, 579 F.2d 13, 17-18 (3d Cir. 1978) and *In re
Linerboard Antitrust Litig.*, 305 F.3d 145, 159-60 (3d Cir. 2002), *cert. denied*, 538 U.S.
977 (2003).

Hon. Charles Legge
October 21, 2010
Page 5


have been produced.[3]  Hitachi entities (including HDP, which is a defendant in both cases) have produced 1.2 million pages of documents so far, *including documents relating to finished TFT-LCD Products*. Supp. Saveri Decl. ¶ 2.  The Hitachi Defendants do not and cannot dispute that fact.  As noted at page 4 of Plaintiffs' initial letter brief, the court certified classes with respect to *both* TFT-LCD panels *and* TFT-LCD finished products; it certified the direct purchaser class, despite contentions that the alleged price-fixing conspiracy existed only with regard to TFT-LCD panels, and not finished products.  The Hitachi Defendants do not and cannot dispute that fact either.  In sum, Plaintiffs reiterate their point that the example of *TFT-LCDs* confirms the propriety of the discovery sought in this case as to finished CRT Products.

As for the burden associated with HTL having to produce 52 boxes of hard copy documents and eight gigabytes of ESI,[4] this is *de minimis* in a complex antitrust case such as this one.[5]  Plaintiffs' motion to compel should therefore be granted.

Yours sincerely,

/s/ *Guido Saveri*_____
Guido Saveri
Interim Lead Counsel for the
Direct Purchaser Plaintiffs

/s/ *Mario Alioto*_____
Mario Alioto
Interim Lead Counsel for the
Indirect Purchaser Plaintiffs

---

[3] *See* "Special Master's Order re Motion of Direct Action Plaintiffs To Compel Production of Documents," p. 2 (Sept. 3, 2010) in *In re TFT-LCD (Flat Panel) Antitrust Litig.,* Civil Action No. 07-MDL-1827 (N.D. Cal.) (Dkt. No. 2020).

[4] No burden claim is advanced as to HDP.

[5] *See, e.g., In re Fine Paper Antitrust Litig.,* 685 F.2d 810, 818 (3d Cir. 1982), *cert. denied*, 459 U.S. 1186 (1983) (finding no abuse of discretion where trial court permitted taking of *270 depositions* and production of nearly *two million documents* in a complex, nationwide antitrust claim); *Int'l Bus. Machs. Corp. v. United States,* 480 F.2d 293, 295 (2d Cir. 1973), *cert. denied*, 416 U.S. 980 (1974) (stating that defendant produced approximately *seventeen million documents* in discovery for a government antitrust case and a private multidistrict litigation action); *In re Lease Oil Antitrust Litig.,* 186 F.R.D. 403, 429 (S.D. Tex. 1999) (noting that defendants produced *millions of pages of documents* in antitrust action over royalty payments by various oil companies); *In re Brand Name Prescription Drugs Antitrust Litig.,* 123 F.3d 599, 614 (7th Cir.1997), *cert. denied*, 522 U.S. 1153 (1998) (pretrial discovery involved more than *1,000 depositions* and *over fifty million pages of documents*); *In re Linerboard Antitrust Litig.,* 296 F.Supp.2d 568, 577 (E.D.Pa.2003) (pretrial discovery required production of *millions of pages of documents*).

Hon. Charles Legge
October 21, 2010
Page 6


cc: All Counsel via ECF