Mario N. Alioto (56433)
Lauren C. Russell (241151)
TRUMP, ALIOTO, TRUMP & PRESCOTT, LLP
2280 Union Street
San Francisco, CA 94123
Telephone:    (415) 563-7200
Facsimile:     (415) 346-0679

*Interim Lead Counsel for the Indirect Purchaser
Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | MASTER FILE NO. 07-cv-5944 SC |
| | MDL NO. 1917 |
| This Document Relates to: | **DECLARATION OF MARIO N. ALIOTO IN SUPPORT OF REPLY LETTER BRIEF ON MOTION TO COMPEL DISCOVERY WITH RESPECT TO CRT PRODUCTS** |
| ALL ACTIONS | |
| | The Honorable Charles A. Legge |
| | Court:          JAMS |

1    I, Mario N. Alioto, declare as follows:

2    1.    I am a partner at the law firm of Trump, Alioto, Trump & Prescott LLP.  I

3  am admitted to practice law in this District and before the courts of the State of California.  I make

4  this declaration in support of Plaintiffs' Reply Letter Brief On Motion To Compel Discovery With

5  Respect To CRT Products.  Except as otherwise noted, I testify to the following facts based on my

6  person knowledge.

7    2.    The Court has appointed me as Interim Lead Counsel for the Indirect

8  Purchaser Plaintiffs in this multidistrict litigation.  As Interim Lead Counsel, I represent putative

9  nationwide and statewide classes of all persons and entities that indirectly purchased, for their own

10 use and not for resale, CRT Products manufactured and/or sold by defendants or their subsidiaries,

11 affiliates or co-conspirators during the period from March 1, 1995 through at least November 25,

12 2007.  "Indirect Purchaser Plaintiffs' Second Consolidated Amended Complaint," ¶¶ 235, 237

13 (May 10, 2010) (Dkt. No. 716).  In the indirect purchaser complaint, "CRT Products" are defined

14 to consist of: (a) CRTs and (b) products containing CRTs, such as television sets and computer

15 monitors.  *Id.* ¶15.  In other words, the putative members of the indirect purchaser classes are

16 consumers of CRT Products.  As such, relatively few of the putative indirect purchaser class

17 members are likely to have indirectly purchased a stand-alone CRT; most have indirectly

18 purchased a finished CRT product—such as a television set or computer monitor—manufactured

19 and/or sold by defendants or their subsidiaries, affiliates or co-conspirators that contain such a

20 CRT.

21    3.    Because our putative class members indirectly purchased such finished

22 CRT Products, the Indirect Purchaser Plaintiffs need certain discovery regarding finished CRT

23 Products.

24    4.    At class certification, the Indirect Purchaser Plaintiffs will show that the

25 there is a common, classwide method of demonstrating that the overcharge with respect to CRT

26 Products was passed through the distribution chain to consumers who purchased finished CRT

27 Products at retail.

28

5.      The Indirect Purchaser Plaintiffs have retained Dr. Janet Netz, the same expert economist who is working with the indirect purchaser plaintiffs in the *TFT-LCD Antitrust Litigation* and whose testimony and evidence in that case provided a basis for the certification of nationwide and statewide classes of indirect purchasers of TFT-LCD Products.  *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 583, 601-03 (N.D. Cal. 2010).  Dr. Netz, therefore, has substantial experience regarding the types of information that are useful to support a showing of common impact for class certification in a case comparable to this one.  Based on this experience, Dr. Netz will need, in addition to discovery regarding CRTs, the following information (which has been requested from defendants) regarding finished CRT Products:

> a.   Documents and information regarding the different types of finished CRT Products sold by defendants, including but not limited to, different product specifications such as different sizes (*e.g.*, 14 inch vs. 17 inch televisions or monitors) or different technologies (*e.g.*, flat screen CRT televisions vs. regular CRT televisions).
>
> b.   Internal and external studies, analyses or reports regarding the finished CRT Product market, which would include information on various market characteristics such as supply and demand, technology, manufacturing processes, production, capacity, costs, sales and pricing;
>
> c.   Documents and information regarding the cost to manufacture a finished CRT Product, including the cost of the CRT and the various other component costs;
>
> d.   Transactional-level sales and pricing data for finished CRT Products sold during the class period, including customer names and addresses; sales terms; sales dates and shipment dates; product type; discounts, credits and rebates;  shipping charges and terms;
>
> e.   Documents and information regarding the relationship between the sale price of the finished CRT Product and the cost of the CRT, including

but not limited to, any market studies or analyses by Defendants that show how the price of CRT affected the price of the finished CRT Product;

    f.   Documents and information regarding the distribution chain for CRTs and finished CRT Products, from the CRT manufacturer at one end to the consumer of the finished CRT Product at the other, including, but not limited to, the specific entities in the distribution chain, the products sold by these entities, and the amount of product sold by these entities;

    g.   Documents and information, including but not limited to studies or analyses, regarding transfer prices within vertically-integrated defendants that manufacture and sell both CRTs and finished CRT Products,  and retail prices, resale prices, or street prices for finished CRT Products, including how such prices were determined and the factors impacting such determinations.

6.    The Indirect Purchaser Plaintiffs have also subpoenaed electronic transactional data related to purchases and sales of finished CRT Products from various third parties who participated in the market for CRTs and finished CRT Products.  In an effort to limit the burden on these third parties, however, the Indirect Purchaser Plaintiffs have limited their requests to these third parties to only data that is absolutely necessary for our expert's economic analysis.  As parties to this case, the burden of providing the additional above-described information regarding finished CRT Products should fall on the Defendants.

I declare under the penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed this 21st day of October, 2010 in San Francisco, California.

*Mario N. Alioto*
Mario N. Alioto