

17th Floor  |  Four Embarcadero Center  |  San Francisco, CA  94111-4109
415-434-9100 *office*  |  415-434-3947 *fax*  |  **www.sheppardmullin.com**

Writer's Direct Line: 415-774-2963
mscarborough@sheppardmullin.com

October 27, 2010

Hon. Charles A. Legge
JAMS
Two Embarcadero Center, Suite 1500
San Francisco, CA  94111

      Re:    *In re: Cathode Ray Tube (CRT) Antitrust Litigation*
             Master File No. 07-5944 SC; MDL No. 1917
             Reply i/s/o Motion to Compel Production of Chunghwa Translations

Your Honor:

    I write on behalf of defendants in reply to plaintiffs' October 15, 2010 letter brief opposing defendants' motion to compel Chunghwa Picture Tubes, Ltd. ("Chunghwa") to produce all document translations it has provided to the plaintiffs in these actions.  Defendants respectfully request that Your Honor set this motion for in-person oral argument at JAMS on November 3 at 9:00 a.m., along with the two other discovery matters set for hearing at that time.

### 1.    Chunghwa Is The Only Party With Standing To Object To Producing Its Own Translations, And It Has Repeatedly Declined To Do So

    Plaintiffs principally oppose Chunghwa's production of its translations to defendants on work product grounds.  But plaintiffs gloss over the most obvious and fundamental flaw in their objection—namely, that the translations in question are indisputably *not plaintiffs' work product*.  They are Chunghwa's work product.  According to plaintiffs, the translations were created by professional translators hired and paid exclusively by Chunghwa, and each translated document was selected by Chunghwa's attorneys.  *See* Plt. Opp. at 2.  Thus, only Chunghwa has standing to object to producing its own translations on work product grounds.  *See Novak v. Capital Mgmt. & Develop. Corp.*, 241 F.R.D. 389, 394 (D.D.C. 2007) (party lacks standing to assert work product protection over another party's work product).  Indeed, plaintiffs fail to cite *any* authority in which a party was allowed to prevent another party from producing its own work product.

    Plaintiffs' bare assertion that Chunghwa "has objected to producing the translations" is disingenuous.  *See* Plt. Opp. at 1-2.  Chunghwa has repeatedly stated that it "*takes no position on this issue* and *will produce the translations* pursuant to either an agreement between direct purchaser plaintiffs' counsel and Samsung SDI or a court order resolving this issue." *See* Def. Mov. Brief, Ex. B (Chunghwa's responses) (emphases added); *accord* 10/15/2010 Chunghwa Letter Brief (Docket No. 785) (Chunghwa has not produced translations because *plaintiffs* assert a claim of work product protection, but will produce them pursuant to "a ruling on this issue").

SHEPPARD MULLIN RICHTER & HAMPTON LLP
Hon. Charles A. Legge
October 27, 2010
Page 2

Chunghwa has thus waived work product protection with respect to the requested translations. *See U.S. v. Merck-Medco Managed Care*, 2004 WL 2186433, at *1 (E.D. Pa. Sept. 23, 2004) (finding waiver where party stated it would not object on work product grounds).  Plaintiffs' "vicarious" work product objection is irrelevant and ineffective.

### 2. Chunghwa Also Waived Work Product Protection By Providing Its Translations To Plaintiffs, Its Adversaries In This Litigation

It is black-letter law that "voluntary disclosure of work product to an adversary waives the privilege as to other parties." *In re Steinhardt Part.*, 9 F.3d 230, 235 (2d Cir. 1993) (describing the "waiver doctrine").  Thus, in addition to the waiver effected by Chunghwa's failure to object to the production of the requested translations, when Chunghwa voluntarily provided its translations to plaintiffs—its direct adversaries in this litigation—it waived work product protection as to all other parties in this civil litigation, including defendants.

Plaintiffs do not dispute that this is the general rule, nor could they.  Instead, they attempt to invoke the limited "common interest" exception to the waiver doctrine that applies where privileged information is shared between non-adversaries, such as among codefendants pursuant to a joint defense agreement.  *See Intex Recreation Corp. v. Team Worldwide Corp.*, 471 F.Supp.2d 11, 15-16 (D.D.C. 2007).  As relevant here, this is simply "an exception to the general rule" that attorney work product protection "is waived upon disclosure of privileged information with a third party." *Katz v. AT&T Corp.*, 191 F.R.D. 433, 436 (E.D. Pa. 2000).  Thus, even if the "common interest" exception to the waiver doctrine applies here (which, as discussed below, it cannot), it would only entail that Chunghwa's disclosure of its translations to plaintiffs did not effect a waiver of *Chunghwa's* work product privilege.  It would not, as plaintiffs appear to claim, grant *plaintiffs* their own work product privilege as to Chunghwa's translations.  *See Louisiana Mun. Police Employees Retirement Sys. v. Sealed Air Corp., et al.,* 253 F.R.D. 300, 309 (D. N.J. 2008) (common interest exception only applies "if an underlying privilege has been established.").  Thus, assuming *arguendo* that the common interest waiver exception somehow applies here, the fact remains that only Chunghwa has standing to assert work product protection as to its own translations, and it has repeatedly declined to do so.[1]

---

[1] Plaintiffs rely on case law purportedly holding that "waiver of the common interest privilege [sic] requires consent of all parties *who share the privilege*."  Plt. Opp. at 5 (emphasis added).  In these cases, however, the privileged material in question consisted of communications as to which all of the relevant parties (i.e., both the sender and the recipients) had a claim of privilege.  *See, e.g., In re Imperial Corp. of Am.*, 179 F.R.D. 286, 289 (S.D. Cal. 1998) (privileged communications between creditor committee and debtor in bankruptcy); *Grand Jury Subpoenas*, 902 F.2d 244, 244 (D.C. Cir. 1990) (joint defense communications between parent and subsidiary); *Killebrew*, 1997 WL 208140, at *2 (N.D. Miss. April 11, 1997) (attorney-client privileged communications between codefendants represented by same attorney).  None of these cases involved the situation where, as here, attorney work product was created exclusively

Moreover, the common interest waiver exception does *not* apply where work product is disclosed in connection with an "adversarial" relationship. *See, e.g., TIFD III-E, Inc. v. U.S.*, 223 F.R.D. 47, 50 (D. Conn. 2004) (common interest exception does not apply to disclosures made in connection with "arms length, possibly even adversarial communications"); *Vermont Gas Sys. v. United States Fid. & Guar. Co.*, 151 F.R.D. 268, 277 (D. Vt. 1993) ("The 'common interest' doctrine does not apply where there is an adversarial relationship"). Nor does the exception apply merely because two parties may have or had certain "interests in common." *Denney v. Jenkens*, 362 F.Supp.2d 407, 415 (S.D.N.Y. 2004). Instead, to avoid waiver, the privileged material must have been disclosed pursuant to a "meeting of the minds" to pursue a "an *identical* legal strategy" against a "common adversary." *See, e.g., id.* (emphasis added); *Grochocinski v. Mayer Brown Rowe & Maw LLP*, 251 F.R.D. 316, 327 (N.D. Ill. 2008) (parties' legal strategies must have been "identical, not simply similar"); *Katz v. AT & T Corp.*, 191 F.R.D. 433, 437 (E.D. Pa. 2000) (disclosure must be made between parties who share "common adversary"). Plaintiffs, as the party invoking the common interest exception, bear the burden of showing that each of these facts obtains. *Denney*, 362 F.Supp.2d at 415; *see also In re Juniper Networks, Inc. Securities Litig.*, 2009 WL 4644534, at *1 (N.D. Cal. Dec. 9, 2009).

Here, plaintiffs do not and cannot meet this burden. Most glaringly, plaintiffs and Chunghwa did not share a "common interest" with respect to Chunghwa's translations for the simple reason that they were *direct adversaries* in this litigation.[2] *See, e.g., TIFD III-E*, 223 F.R.D. at 50; *Vermont Gas*, 151 F.R.D. at 277. Nor have plaintiffs shown that they and Chunghwa agreed to pursue an "identical legal strategy" against Chunghwa's codefendants. Indeed, plaintiffs fail to cite to a *single case* in which a "common interest" was found between a defendant and a plaintiff in the same litigation. Instead, plaintiffs rely on facially inapposite case law applying the common interest waiver exception to disclosures between non-adversaries pursuing identical claims or defenses against a common opponent. *See, e.g., In re Grand Jury Subpoenas*, 902 F.2d 244, 249 (D.C. Cir. 1990) (common interest found between two plaintiffs who were jointly prosecuting a claim against the same defendant); *U.S. v. American Telephone & Telegraph Co.*, 642 F.2d 1285, 1300 (D.C. Cir. 1980) (plaintiff shared common interest with prosecution in related antitrust action in pursuing "overlapping" claims against a common

---

by one party and subsequently disclosed to another party. Thus, contrary to plaintiffs' characterization, this is not a situation where two parties "share the privilege" with respect to the disclosed material.

[2] Plaintiffs assert that the common interest waiver exception may apply despite adversity of the parties. Plt. Opp. at 4. However, plaintiffs' only authority for this proposition is a case applying the exception in the specific and obviously irrelevant context of statutory reorganization discussions between a creditor committee and debtor in bankruptcy. *See In re Mortgage & Realty Trust*, 212 B.R. 649, 653 (C.D. Cal. 1997) (creditor committee cannot perform statutory role without confidential access to debtor's records).

SHEPPARD MULLIN RICHTER & HAMPTON LLP

defendant); *Killebrew v. City of Greenwood*, 1997 WL 208140, at *2 (N.D. Miss. April 11, 1997) (defendant's sharing of legal opinions with codefendants was protected by common interest exception); *Nidec Corp. v. Victor Co. of Japan*, 2007 WL 2156256, at *2 (N.D. Cal. July 26, 2007) (company and prospective buyers of company had common interest in progress of pending litigation against the company); *Stix Prods., Inc. v. United Merchants & Mfgrs., Inc.*, 47 F.R.D. 334, 338 (S.D.N.Y. 1969) (plaintiffs and third party shared common interest in defeating defendant, where plaintiffs' success would ensure that defendant could not bring future claims against third party).

Nonetheless, plaintiffs claim that they and Chunghwa share a "common interest" "in effectuating their settlement agreements." Plt. Opp. at 5. Conveniently absent from plaintiffs' opposition, however, is a *single authority* addressing the applicability of the common interest waiver exception in the settlement context. That is because courts have consistently held that the common interest waiver exception ***does not apply*** to disclosures of work product pursuant to a settlement agreement. *See, e.g., In re Chrysler Motors Corp.*, 860 F.2d 844, 846-847 (8th Cir. 1988) ("Disclosure to an adversary waives the work product protection as to items actually disclosed, even where disclosure occurs in settlement."); *Grumman Aerospace Corp. v. Titanium Metals Corp. of Am.*, 91 F.R.D. 84, 90 (E.D.N.Y. 1981) (common interest doctrine does not apply to work product disclosed in connection with settlement agreement); *Khandji v. Keystone Resorts Mgmt., Inc.*, 140 F.R.D. 697, 700 (D. Colo. 1992) (same); *Eagle Compressors, Inc. v. HEC Liquidating Corp.*, 206 F.R.D. 474, 479-480 (N.D. Ill. 2002) ("Defendant intended to impart its attorney's mental impressions and conclusions for the purpose of advancing its settlement posture. It is now too late to put the genie back into the bottle."); *In re Urethane Antitrust Litig.*, 2009 WL 2058759, at *5 (D. Kan. July 15, 2009) (work product is waived when disclosed pursuant to settlement; common interest doctrine does not apply). These courts have observed that "[t]he mere fact that opposing parties may have a common interest in settling claims does not neutralize the fact of disclosure, because that common interest always exists between opposing parties in any attempt at settlement." *See, e.g., Khandji*, 140 F.R.D. at 700; *In re Chrysler*, 860 F.2d at 846-847; *Grumman*, 91 F.R.D. at 90.

Plaintiffs next rely on *Aronson v. McKesson HBOC*, a case in which the court held that a defendant's disclosure of work product to the SEC did not effect a waiver because the disclosure allowed the SEC to conserve investigational resources and thus created a "benefit to the public." 2005 WL 934331, at *10 (N.D. Cal. March 31, 2005). By contrast, as the *McKesson* court expressly observed, no such "public benefit" arises where, as here, work product is disclosed by a defendant to a private plaintiff. *See id.,* at * 9 (drawing "a distinction between disclosure to a private entity (resulting in waiver) and disclosure to a government entity pursuant to a confidentiality agreement (maintaining work product protection)").

Plaintiffs finally assert that they and Chunghwa shared a "common interest" because Chunghwa produced its translations as a form of "cooperation" in exchange for reduced civil liability under the Antitrust Criminal Penalties Enforcement Reform Act, P.L. 108-237, § 213(b) ("ACPERA"). But as explained above, the fact that Chunghwa may have provided its

translations to plaintiffs in hopes of receiving a reduced settlement figure does not amount to a "common interest" within the meaning of the common interest waiver exception. *See, e.g., Eagle Compressors,* 206 F.R.D. at 479-480 (common interest exception did not apply where defendant disclosed work product "for the purpose of advancing its settlement posture"); *Khandji*, 140 F.R.D. at 700 ("[t]he mere fact that opposing parties may have a common interest in settling claims" does not satisfy the common interest exception). Moreover, plaintiffs fail to cite *any* authority for their assertion that ACPERA was intended to allow civil plaintiffs to acquire an exclusive right to all evidence produced to them by an amnesty applicant merely by characterizing the production as a form of "cooperation." Nor does anything in ACPERA's text or legislative history remotely suggest that it was intended to create a new discovery privilege or otherwise restrict the disclosure of potentially relevant information. *See Olam v. Congress Mortg. Co.*, 68 F.Supp.2d 1110, 1120 (N.D. Cal. 1999) (a federal statute will not be construed to create a new evidentiary privilege unless it does so expressly).

### 3. Plaintiffs Did Not "Purchase" The Right To Assert Work Product Protection Over Chunghwa's Translations

Plaintiffs also contend that, because plaintiffs "essentially paid Chunghwa for these translations" by entering into settlement agreements with Chunghwa under which "[t]he value of the translations was a significant part of the consideration Plaintiffs received," Chunghwa's translations became *plaintiffs'* work product. *See* Plt. Opp. at 7 ("certain kinds of work product are created not only by the work of attorneys, but also, as here, by the expenditure of money."). Not surprisingly, plaintiffs fail to cite *any* authority in support of their bizarre theory that a party may effectively "purchase" another party's work product privilege—despite the fact that the "purchasing" party had absolutely no involvement in creating the work product—by "paying for" the underlying documents. Even if plaintiffs' settlements with Chunghwa could be somehow characterized as equivalent to "purchasing" Chunghwa's translations, discovery privileges may not be bought and sold. Accordingly, as Your Honor has already observed, the fact that plaintiffs claim to have "paid for" Chunghwa's translations is simply irrelevant from a discovery perspective. *See* Def. Mov. Brief, Ex. D (8/24/10 Hr. Tr. at 95) ("So you paid for them. From a discovery point of view, so what?").

### 4. Further Production Of The Chunghwa Translations Does Not Implicate The Court's Stay Orders

Plaintiffs alternatively contend that, even if they lack a work product objection with respect to the Chunghwa translations, production of the translations is nonetheless barred by the discovery stay orders in this case. Plaintiffs rely entirely on Judge Illston's order in the *LCD* case, which, although based on a substantively identical stay provision, was decided on dispositively different facts. In *LCD*, the plaintiffs served document requests on defendants seeking any translations that defendants had provided to DOJ. *See* Ex. F (*In re TFT-LCD Antitrust Litig.*, No. 07-1827 SI, Docket No. 1429, Decl. Ex. A, Request No. 3) (seeking among other things, "communications that [defendants] have received from or sent to the United States

SHEPPARD MULLIN RICHTER & HAMPTON LLP
Hon. Charles A. Legge
October 27, 2010
Page 6

Department of Justice").  Judge Illston held these requests were improper because they requested defendants' communications with DOJ.  *See* Saveri Decl., Ex. 5 at 1:23-2:5.  Here, by contrast, Samsung SDI's requests do not ask for Chunghwa's communications with DOJ, but seek only those translations that Chunghwa has provided *to plaintiffs*.  *See* Def. Mov. Brief, Ex. A (Samsung SDI requests to Chunghwa).  Allowing plaintiffs to make use of these translations in this civil litigation, while depriving defendants of the same opportunity, would violate the "basic philosophy underlying discovery procedure" that "prior to trial *every party to a civil action* is entitled to the disclosure of all relevant information." *Safeco Ins. Co. of Am. v. Rawstrom*, 183 F.R.D. 668, 671 (C.D. Cal. 1998) (*quoting* 8 Charles A. Wright, Arthur R. Miller & Richard L. Marcus, FEDERAL PRACTICE & PROCEDURE: CIVIL § 2001 (2d ed.1994)) (emphasis added).  Moreover, if plaintiffs' interpretation of the discovery stay orders were accepted, it would require an extraordinary finding that Chunghwa's disclosure of its translations *to plaintiffs* violated the stay, because the translations were also provided to DOJ.  Such a finding, of course, logically would require plaintiffs to destroy all of the Chunghwa translations, and all of their derivative work product based on those translations.  While this would indeed be an absurd result, and it is not defendants' preferred relief, it is the only logical conclusion of plaintiffs' arguments based on the discovery stay orders.

### 5. **Plaintiffs' Cursory "Cross-Motion" To Compel Production Of Defendants' Translations And Request To Develop A Translations Protocol Are Red Herrings And Should Not Be Allowed To Further Delay Production Of The Chunghwa Translations**

Finally, plaintiffs purport to expand the scope of the dispute at hand by interposing a throw-away, six-line "cross-motion" to compel defendants to produce any translations in their possession.  Plaintiffs' "motion" marks the first time plaintiffs have made a request for defendants' translations in writing, consists of a total of three sentences, and is completely unsupported by any legal argument or authority.  Plaintiffs' "motion" is a stall tactic that has nothing to do with, and should not be allowed to further delay resolution of, the only issue properly presented here—defendants' clear-cut right to discovery of the Chunghwa translations.

Indeed, separate and apart from plaintiffs' failure to engage in a required meet and confer dialog, plaintiffs' purported requests for defendants' translations stand on entirely different legal footing than defendants' motion.  As explained, Chunghwa waived work product protection by failing to assert its own work product interests *and also* by providing its translations to plaintiffs, its adversaries in this civil litigation.  By contrast, defendants have not provided their translations to any adversary in this litigation or otherwise waived work product protection.  Accordingly, in the event Your Honor elects to entertain an independent motion to compel defendants' translations following a genuine prefatory attempt by plaintiffs to meet and confer, defendants will be prepared to submit briefing and attorney declarations establishing that (1) all translations in defendants' possession are protected attorney work product; and (2) to the extent any defendant has shared translations with any other defendant in this case, that disclosure was

SHEPPARD MULLIN RICHTER & HAMPTON LLP
Hon. Charles A. Legge
October 27, 2010
Page 7

within the scope of the joint defense privilege.  For now, plaintiffs' "cross-motion" should be denied as premature.

Plaintiffs' final red herring is a request that Your Honor "do something similar" to Judge Walker's order in the Optical Disc Drive Litigation directing the parties to meet and confer on a translations protocol governing the ways in which translations may be used in this litigation.  This is a non-issue because, as noted in defendants' opening letter brief, defendants share plaintiffs' desire for a translations protocol and have *already* agreed to meet and confer with plaintiffs on translation protocol issues at their convenience.  Plaintiffs have simply not yet taken defendants up on that offer.  Regardless, the parties' future discussions about a protocol governing how translations may be *used* in this litigation should have no effect on the disposition of this motion, which concerns only defendants' right to *discovery* of the Chunghwa translations.

For all of the reasons set forth above and in defendants' moving papers, defendants respectfully request that Your Honor compel Chunghwa to immediately produce to defendants all document translations it has provided to the plaintiffs in this action.

Respectfully submitted,

*/s/ Michael W. Scarborough*

Michael W. Scarborough

for SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

W02-WEST:FMI\403000879.3

cc:   All Counsel via ECF