# EXHIBIT F

## to Defendants' Reply
## iso Motion to Compel
## Production of
## Chunghwa Translations

1   Richard M. Heimann (State Bar No. 63607)
    LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
2   Embarcadero Center West
    275 Battery Street, 28th Floor
3   San Francisco, CA 94111-3339
    Telephone:    (415) 956-1000
4   Facsimile:    (415) 956-1008

5   Bruce L. Saveri (State Bar No. 96241)
    PEARSON, SIMON, WARSHAW & PENNY, LLP
6   44 Montgomery Street, Suite 2450
    San Francisco, CA 94104
7   Telephone:    (415) 433-9000
    Facsimile:    (415) 433-9008

8
    *Interim Co-Lead Counsel for the Direct Purchaser Plaintiffs*
9

10                  UNITED STATES DISTRICT COURT

11                NORTHERN DISTRICT OF CALIFORNIA

12                    SAN FRANCISCO DIVISION

13   IN RE: TFT-LCD (FLAT PANEL)          Master File No. M07-1827 SI
     ANTITRUST LITIGATION
14                                        MDL No. 1827

15                                        **DECLARATION OF JOSEPH R. SAVERI IN**
     This Document Relates to:           **SUPPORT OF DIRECT PURCHASER AND**
16                                        **INDIRECT PURCHASER PLAINTIFFS'**
     ALL DIRECT PURCHASER ACTIONS        **MOTION TO COMPEL PRODUCTION OF**
17                                        **ENGLISH TRANSLATIONS**

18                                        Honorable Fern M. Smith

19

20
            I, Joseph R. Saveri, declare as follows:

21          1.      I am a partner in the law firm of Lieff, Cabraser, Heimann & Bernstein,

22   LLP, a member of the State Bar of California, and am admitted to practice before the United

23   States District Court for the Northern District of California.  I am one of the counsel for the Direct

24   Purchaser Plaintiffs in this action.  I make this declaration based on my own personal knowledge

25   and in support of Direct Purchaser Plaintiffs' Motion to Compel Production of the English

26   Translations.  If called upon to testify, I could and would testify competently to the truth of the

27   matters stated in this Declaration.

28

1        2.        Attached as Exhibit A to this declaration is a true and correct copy of

2    Plaintiffs' Second Set of Requests for Production of Documents.   In Section III paragraphs 1-3,

3    Plaintiffs seek all materials turned over to the grand jury that is currently investigating price-

4    fixing in the TFT-LCD industry.  In Section III paragraphs 6-17, Plaintiffs also seek documents

5    referring or relating to meetings among competitors and other operations of the TFT-LCD cartel.

6        3.        In response to Plaintiffs' Second Set of Requests for Production of

7    Documents, Defendants have produced millions of pages of documents.  Hundreds of thousands

8    of them are not in English.  Defendants have stated they translated some of them, but refuse to

9    disclose how many, when they were translated, for what purpose and whether they have been

10   transmitted to third parties.

11       4.        Attached as Exhibit B to this declaration are true and correct copies of

12   Plaintiffs' June 26, 2009 letters to each defendant regarding English translations.   Each letter is

13   identical in substance, differing only in the defendant addressed.

14       5.        Attached as Exhibit C to this declaration is a true and correct copy of

15   defendant AU Optronics's July 10, 2009 response regarding English translations.

16       6.        Attached as Exhibit D to this declaration is a true and correct copy of

17   defendant Hitachi's July 9, 2009 response regarding English translations.

18       7.        Attached as Exhibit E to this declaration is a true and correct copy of

19   defendant LG Display's July 2, 2009 response regarding English translations.

20       8.        Attached as Exhibit F to this declaration is a true and correct copy of

21   defendant Samsung's July 7, 2009 response regarding English translations.

22       9.        Attached as Exhibit G to this declaration is a true and correct copy of

23   defendant Sharp's July 8, 2009 response regarding English translations.

24       10.       Attached as Exhibit H to this declaration is a true and correct copy of

25   defendant Toshiba's July 2, 2009 response regarding English translations.

26       11.       Since February 2009, Defendants have produced their privilege logs on an

27   ongoing basis.  Some Defendants have not yet produced final privilege logs.  Defendants'

28   privilege logs to date do not identify translations that were withheld from production because they

1   constitute attorney work product.  At the same time, no Defendant disputes that translations exist,

2   are relevant to Plaintiffs' claims, or are called for in Plaintiffs' requests for production of

3   documents.

4          12.    The number of documents already translated by defendants is likely in the

5   hundreds of thousands of pages.  To translate these documents would require Plaintiffs to hire at

6   least a dozen foreign language speakers on a full-time basis to identify foreign language

7   documents for translation.

8          13.    Attached as Exhibit I to this declaration is a true and correct copy of a

9   brochure received from Geotext Translations, Inc. summarizing its services and experience.  As

10  indicated, Geotext is an experienced reliable company that, among other things, provides

11  translations of business records and other documents produced in litigation.

12         14.    In connection with this motion, we asked Geotext to prepare an estimate,

13  based on their experience, of the costs and time required to translate approximately 100,000 pages

14  of documents into English from Japanese, Korean, and Chinese.  Attached as Exhibit J to this

15  declaration is a true and correct copy of the estimate we received in response from Geotext.

16  Geotext estimates it will cost approximately $62.50 per page.  Translating 100,000 pages of

17  documents, therefore, would cost approximately $6,250,000.  Further, Geotext estimates it will

18  take approximately 12-18 months to complete.

19         I declare under penalty of perjury under the laws of the United States that the foregoing is

20  true and correct.  Executed this 9th day of October, 2009, at San Francisco, California.

21

22

23                                        _____
                                          Joseph R. Saveri
24

25

26

27

28

# EXHIBIT A

1 | Richard M. Heimann (State Bar No. 063607)
Joseph R. Saveri (State Bar No. 130064)
2 | Eric B. Fastiff (State Bar No. 182260)
Brendan Glackin (State Bar No. 199643)
3 | LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
275 Battery Street, 30th Floor
4 | San Francisco, CA 94111-3339
Telephone:    (415) 956-1000
5 | Facsimile:    (415) 956-1008

6 | Bruce L. Simon (State Bar No. 096241)
PEARSON, SIMON, SOTER, WARSHAW & PENNY, LLP
7 | 44 Montgomery Street, Suite 1200
San Francisco, CA 94104
8 | Telephone:    (415) 433-9000
Facsimile:    (415) 433-9008
9

10 | *Interim Co-Lead Counsel for the Direct Purchaser Plaintiffs*

11 | Francis O. Scarpulla (State Bar No. 41059)
ZELLE HOFMANN VOELBEL MASON & GETTE LLP
12 | 44 Montgomery Street, Suite 3400
San Francisco, CA 94104
Telephone:    (415) 693-0700
13 | Facsimile:    (415) 693-0770

14 | Joseph M. Alioto (State Bar No. 42680)
ALIOTO LAW FIRM
15 | 555 California Street, Suite 3160
San Francisco, CA 94104
16 | Telephone:    (415) 434-8900
Facsimile:    (415) 434-9200
17

18 | *Interim Co-Lead Counsel for the Indirect Purchaser Plaintiffs*

19 | UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
20 | (SAN FRANCISCO DIVISION)

| | |
|---|---|
| IN RE: TFT-LCD (FLAT PANEL) ANTITRUST LITIGATION | No. M: 07-1827 SI MDL No. 1827 |
| This Document Relates To: ALL ACTIONS | **DIRECT PURCHASER AND INDIRECT PURCHASER PLAINTIFFS' SECOND SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO SHARP CORPORATION** |

27 | **PROPOUNDING PARTY**: Direct Purchaser and Indirect Purchaser Plaintiffs.

28 | **RESPONDING PARTY**:    Sharp Corporation

766795.1    - 1 -    CASE NO. M: 07-1827 SI, MDL NO. 1827

**SET NUMBER:**          Two (2)

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, the Direct and Indirect Purchaser Plaintiffs hereby request that Sharp Corporation respond separately to the following requests for production of documents ("Requests"), and produce the documents specified herein, at a location agreed upon by counsel, within thirty (30) days, consistent with the Court's May 27, 2008, Order.

**I.   DEFINITIONS**

The following Definitions apply to these Requests:

1.    "Agreement" means any oral or written contract, arrangement or understanding, whether formal or informal, between two or more persons, together with all modifications and amendments thereto.

2.    "All" should be construed to include the collective as well as the singular, and means "each," "any," and "every."

3.    "Antitrust regulatory authority" means any governmental antitrust regulatory or investigative entity, whether domestic or foreign, including but not limited to the United States Department of Justice, European Commission, Japanese Fair Trade Commission, or Korea Fair Trade Commission

4.    "Communication" means oral or written communications of any kind, including without limitation electronic communications, e-mails, facsimiles, telephone communications, correspondence, exchanges of written or recorded information, or face-to-face meetings.

5.    "Document" has the same full meaning as construed by Fed. R. Civ. P. 34 and includes without limitation the original (or identical duplicate when the original is not available) and all non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notation, or highlighting of any kind) and drafts of all writing, whether handwritten, typed, printed or otherwise produced, and includes, without limitation, letters, correspondence, memoranda, legal pleadings, notes, reports,

1   agreements, calendars, diaries, travel or expense records, summaries, records, messages or logs of

2   telephone calls, conversations or interviews, telegrams, mailgrams, facsimile transmissions

3   (including cover sheets and confirmations), electronic mail, minutes or records of meeting,

4   compilations, notebooks, laboratory notebooks, work papers, books, pamphlets, brochures,

5   circulars, manuals, instructions, sales, advertising or promotional literature or materials, ledgers,

6   graphs, charts, blue prints, drawings, sketches, photographs, film and sound reproductions, tape

7   recordings, or any other tangible materials on which there is any recording or writing of any sort.

8   The term also includes the file, folder tabs, and/or containers and labels appended to, or

9   associated with, any physical storage device associated with each original and/or copy of all

10   documents requested herein.

11        6.   "Electronically stored information" ("ESI") has the same full meaning as

12   construed by Fed. R. Civ. P. 26 and 34 and includes, without limitation, the following:

13            a.   activity listings of electronic mail receipts and/or transmittals;

14            b.   output resulting from the use of any software program, including

15   without limitation word processing documents, spreadsheets, database files, charts, graphs and

16   outlines, electronic mail, AOL Instant Messenger (or similar program) or bulletin board

17   programs, operating systems, source code, PRF files, PRC files, batch files, ASCII files, and all

18   miscellaneous media on which they reside and regardless of whether such electronic data exist in

19   an active file, deleted file, or file fragment;

20            c.   any and all items stored on computer memories, hard disks, floppy

21   disks, CD-ROM, magnetic tape, microfiche, or on any other vehicle for digital data storage and/or

22   transmittal, including without limitation a personal digital assistant, e.g., Palm Pilot, Blackberry,

23   Treo or other device.

24        7.   "Employee" means without limitation any current or former officer,

25   director, executive, manager, secretary, staff member, messenger, agent or other person who is or

26   was employed by a Defendant.

27        8.   "Including" is used to illustrate a Request with particular types of

28   documents requested, and should not be construed as limiting the Request in any way.

1    9.    "Meeting" means, without limitation, any assembly, convocation,

2    encounter, or contemporaneous presence (whether in person or via any electronic computer-

3    assisted, digital, analog, or telephonic method of communication) of two or more persons for any

4    purpose, whether planned, arranged, scheduled or not.

5    10.    "Or" should be construed to require the broadest possible response, and

6    should be read as "and/or."

7    11.    "Person" includes without limitation any natural person, corporation,

8    partnership, government entity, and any other form of legal or business entity.

9    12.    "Relating to," "referring to," "regarding," or "with respect to" mean

10    without limitation discussing, describing, reflecting, dealing with, pertaining to, analyzing,

11    evaluating, estimating, constituting, concerning, containing, mentioning, studying, surveying,

12    projecting, assessing, recording, summarizing, criticizing, reporting, commenting or otherwise

13    involving, in whole or in part.

14    13.    "Subsidiary," "affiliate" and "joint venture" refer to any entity or person in

15    which you have any financial or ownership interest.

16    14.    "TFT-LCD Products" refers to Thin Film Transistor Liquid Crystal

17    Display panels and products containing Thin Film Transistor Liquid Crystal Display panels.

18    15.    "You," "your" or "your company" means Sharp Corporation, its

19    predecessors, successors, subsidiaries, departments, divisions and/or affiliates, including without

20    limitation any organization or entity which you manage or control, together with all present and

21    former directors, officers, employees, agents, representatives, or any persons acting or purporting

22    to act on behalf of you.

23    **II.    INSTRUCTIONS**

24    1.    Pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, these

25    document requests shall be deemed to be continuing in nature so that if you, your directors,

26    officers, employees, agents, representatives or any person acting on your behalf, subsequently

27    discover or obtain possession, custody or control of any document previously requested or

28    required to be produced, you shall promptly make such document available.

1       2.      In producing documents and ESI, you are to furnish all documents or ESI

2 in your possession, custody or control, regardless of the physical location of the documents or

3 whether such documents or materials are possessed directly by you or your directors, officers,

4 agents, employees, representatives, subsidiaries, managing agents, affiliates, investigators, or by

5 your attorneys or their agents, employees, representatives or investigators.

6       3.      In producing documents and ESI, you are requested to produce the original

7 of each document or item of ESI requested, together with all non-identical copies and drafts of

8 such document. If the original of any document or item of ESI cannot be located, a copy shall be

9 produced in lieu thereof, and shall be legible and, for a document, bound or stapled in the same

10 manner as the original.

11       4.      Documents or ESI not otherwise responsive to these Requests shall be

12 produced if such documents or ESI mention, discuss, refer to, or explain the documents that are

13 called for by these Requests, or if such documents are attached to documents called for by these

14 Document Requests and constitute routing slips, transmittal memoranda, letters, cover sheets,

15 comments, evaluations or similar materials.

16       5.      All documents and ESI shall be produced in the same order as they are kept

17 or maintained by you in the ordinary course of your business. If any documents or items of ESI

18 have been removed from the files in which they were found for purposes of producing them in

19 response to these requests, indicate for each document the file(s) from which the document(s) was

20 (were) originally located. ESI shall be produced in accordance with the protocol negotiated

21 between the parties and attached as Exhibit A to the parties' January 10, 2008 Joint Case

22 Management Conference Statement.

23       6.      All documents shall be produced in the file folder, envelope or other

24 container in which the documents are kept or maintained by you. If for any reason the container

25 cannot be produced, produce copies of all labels or other identifying marks.

26       7.      Documents and ESI shall be produced in such fashion as to identify the

27 department, branch or office in whose possession they were located and, where applicable, the

28

1  natural person in whose possession they were found and the business address of each document's

2  custodian(s).

3        8.      Documents attached to each other should not be separated, including, but

4  not limited to, e-mail attachments.

5        9.      If a document or item of ESI once existed and has subsequently been lost,

6  destroyed, or is otherwise missing, please provide sufficient information to identify the document

7  and state the details concerning its loss.

8        10.     All documents produced in paper form should be numbered sequentially,

9  with a unique number on each page, and with a prefix identifying the party producing the

10  document.

11        11.     In responding to these requests you are to include documents: (a) obtained

12  from witnesses who gave information to any antitrust regulatory authority or investigatory body;

13  (b) that constitute, or refer or relate to, summaries of testimony or other statements in connection

14  with any antitrust regulatory authority or investigatory body proceedings or investigations; or

15  (c) obtained on your behalf by counsel in preparing for testimony or interviews before any

16  antitrust regulatory authority or investigatory body.

17        12.     If you claim the attorney-client privilege or any other privilege or work

18  product protection for any document, provide a detailed privilege log that contains at least the

19  following information for each document that you have withheld:

20              a.      state the date of the document or item of ESI ;

21              b.      identify each and every author of the document or item of ESI;

22              c.      identify each and every person who prepared or participated in the

23  preparation of the document or item of ESI;

24              d.      identify each and every person who received the document or item

25  of ESI;

26              e.      identify each and every person from whom the document or item of

27  ESI was received;

28              f.      provide a general description of the subject matter;

766795.1                          - 6 -                    CASE NO. M: 07-1827 SI, MDL NO. 1827

DIRECT PURCHASER AND INDIRECT PURCHASER PLAINTIFFS' SECOND SET OF REQUESTS FOR PRODUCTION

g.      state the present location of the document or item of ESI and all copies thereof;

h.      identify each and every person having custody or control of the document or item of ESI and all copies thereof;

i.      identify the numbered request(s) to which the document or item of ESI is responsive; and

j.      provide sufficient information concerning the document or item of ESI and the circumstances thereof to explain the claim of privilege or protection and to permit the adjudication of the propriety of the claim.

13.     If you assert privilege with respect to part of a responsive document or item of ESI, redact the privileged portion and indicate clearly on the document where the material was redacted.  Produce the redacted document or item of ESI even if you believe that the non-redacted portion is not responsive.  Identify the redacted portions on the privilege log in the same manner as withheld documents.  Non-responsiveness of a portion of a document or item of ESI is not a sufficient basis for redaction.

14.     Pursuant to Federal Rule of Civil Procedure 34(b)(ii), and in accordance with the parties' stipulated Protocol Governing the Production of Electronically Stored Information ("ESI") set forth in Exhibit A to the Joint Management Conference Statement dated January 10, 2008, Plaintiffs hereby designate the following as the form or forms of production for ESI:

Production of Data:

ESI is to be produced in 300 DPI Group IV Monochrome Tagged Image File Format (.TIFF or .TIF) files.  TIFF files shall be produced in single-page format along with image load files (.DII file and .OPT file and .LFP file).  All documents are to be provided with multi-page searchable text (.TXT) files.  These text files and image load files should indicate page breaks, to the extent possible.

During the process of converting ESI from the electronic format of the application in which the ESI is normally created, viewed and/or modified to TIFF, metadata values should be

1    extracted and produced in a load file ("metadata load file").

2        To the extent they are available, the metadata values that are to be extracted and produced

3    in the metadata load files (.DAT file using concordance standard delimiters and .IDX file) are:

4        Metadata from Email:

5            Email Subject

6            Email Author

7            Email Recipient

8            Email CC

9            Email BCC

10           Email Received Date

11           Email Received Time

12           Email Sent Date

13           Email Sent Time

14           Email Conversation Thread Text

15           Metadata from Electronic Files:

16           File Name

17           File Author

18           File Manager

19           File Created Date

20           File Created Time

21           File Modified Date

22           File Modified Time

23           File Extension

24           Data for both Email and Electronic Files:

25           Custodian

26           Source

27           Original Path

28           MD5 Hash

1    To the extent reasonably available, the "Custodian," "Source" or "Original Path" field

2    with respect to ESI gathered from an individual's hard drive will provide metadata sufficient to

3    identify the individual custodian from whose hard drive such ESI has been gathered.

4    For all documents (for example, email) that contained an attachment, to the extent

5    available, the following fields should be produced as part of the metadata load file to provide the

6    parent/child or parent/sibling relationship:

7        Production Number Begin

8        Production Number End

9        Production Attachment Range Number Begin

10       Production Attachment Range Number End

11       Attachment Name

12       Production Doc Page Count

13    The parties may de-duplicate identical ESI by custodian, but not on any broader scale.

14    Production of Excel and Access ESI

15    Unless such materials contain privileged information, MS-Excel spreadsheets and MS-

16    Access databases shall be produced in native format.  The metadata load file shall contain a link

17    to the produced MS-Excel spreadsheets and MS-Access databases via data values called "Native

18    Link."  The Native Link values should contain the full directory path and file name of the MS-

19    Excel spreadsheet and MS-Access database as contained in the produced media.

20    Production of responsive data contained in relational databases other than MS-Access

21    should be achieved via a report or export of such data to MS-Excel spreadsheets that will be

22    produced.

23    Produced native MS-Excel files and MS-Access databases should be accompanied by a

24    reference file containing the name of the file and MD5 hash value for each produced file.  To the

25    extent such materials contain information subject to a claim of privilege, they shall be produced

26    in the form of a redacted .TIFF image.

27    Production of Audio Files

28    Audio files are to be produced in the native audio file format in which they were

1    maintained in the ordinary course of business.  Produced native audio files should be

2    accompanied by a reference file containing the name of the file and MD5 hash value for each

3    produced file.  If the audio files are maintained in a non-standard format, they should be produced

4    in MP3 format.

5         Bates Numbering

6         Bates number and any confidentiality designation should be electronically branded on

7    each produced TIFF image of ESI.

8         15.   Unless a different time period is specified, the relevant time period is

9    January 1, 1993 through the present (hereinafter the "Relevant Period").  These Requests seek all

10   responsive information concerning the Relevant Period, regardless of whether the particular

11   document or item of ESI was created or generated during the Relevant Period.

12   **III.    DOCUMENT REQUESTS**

13        1.   All documents that were submitted to, or seized by, the United States

14   Department of Justice or any other antitrust regulatory authority in response to or in connection

15   with any investigation relating to TFT-LCD Products.

16        2.   All documents which you submitted pursuant to a grand jury subpoena or

17   civil investigative demand in regard to any investigation relating to TFT-LCD Products.

18        3.   All documents, including all civil investigative demands, subpoenas,

19   requests for documents, and communications that you have received from or sent to the United

20   States Department of Justice or any other antitrust regulatory authority, or any grand jury,

21   regarding TFT-LCD Products, including all correspondence with said entities discussing,

22   reflecting or referring to any limitations placed upon the scope of your responses to such

23   demands, subpoenas or requests.

24        4.   All position papers and prepared remarks (including any drafts of such

25   papers or remarks) given, submitted or presented or intended to be given, submitted or presented

26   to any antitrust regulatory authority, all transcripts of testimony given to any antitrust regulatory

27   authority in connection with or in response to any investigation regarding TFT-LCD Products,

28

1   and all transcripts of proceedings relating to any antitrust regulatory authority's investigation

2   regarding TFT-LCD Products.

3         5.     All indices and lists that catalogue or describe the documents identified in

4   Requests 1-4, above, including privilege logs.

5         6.     All documents that refer, reflect or relate to any understanding, agreement,

6   commitment or contract, between or among any manufacturer of TFT-LCD Products, pertaining

7   to the sale, production, pricing or distribution of TFT-LCD Products

8         7.     All documents that reflect, refer or relate to meetings and communications

9   between manufacturers or sellers of TFT-LCD Products relating to TFT-LCD Products.

10        8.     All documents that reflect, refer or relate to meetings and communications

11  between manufacturers or sellers of TFT-LCD Products relating to the price of TFT-LCD

12  Products.

13        9.     All documents that reflect, refer or relate to meetings and communications

14  between manufacturers or sellers of TFT-LCD Products relating to the volume of TFT-LCD

15  Products sold or produced.

16        10.    All documents that reflect, refer or relate to meetings and communications

17  between manufacturers or sellers of TFT-LCD Products relating to the market share of

18  manufacturers or producers of TFT-LCD Products.

19        11.    All documents that reflect, refer or relate to meetings and communications

20  between manufacturers or sellers of TFT-LCD Products relating to any customer that purchased

21  TFT-LCD Products or any potential customers of TFT-LCD Products.

22        12.    All documents that reflect, refer or relate to meetings and communications

23  between manufacturers or sellers of TFT-LCD Products relating to limiting the sale of TFT-LCD

24  Products in any way.

25        13.    All documents that reflect, refer or relate to meetings and communications

26  between manufacturers or sellers of TFT-LCD Products relating to eliminating any producer of

27  TFT-LCD Products from the market.

28

14.     All documents that reflect, refer or relate to meetings and communications between manufacturers or sellers of TFT-LCD Products relating to production capacity or capacity utilization for TFT-LCD Products.

15.     All documents that reflect, refer or relate to meetings and communications between manufacturers or sellers of TFT-LCD Products relating to proposed or actual joint ventures, mergers, acquisitions, licensing agreements, technology exchanges or other business arrangements with other producers or sellers of TFT-LCD Products.

16.     All documents that reflect, refer or relate to meetings and communications between manufacturers or sellers of TFT-LCD Products relating to current or future capacity for TFT-LCD Products.

17.     All documents that reflect, refer or relate to meetings and communications between manufacturers or sellers of TFT-LCD Products relating to the timing or implementation of technological advancements in TFT-LCD Products.

18.     All documents provided to or received from the named Plaintiffs in the above-captioned actions, including but not limited to, all documents referring to sales or potential sales of TFT-LCD Products to the named Plaintiffs, including information regarding prices, quantities and dates of purchase.

19.     Any promotional documents and public statements, announcements, disclosures, or press releases issued by you, any Defendant or any of your competitors referring or relating to the price, production, manufacture, distribution, marketing or sale of TFT-LCD Products, including any media files maintained by you.

20.     All business plans, analyses, reports, studies, memoranda, budgets, forecasts, product roadmaps, slide presentations, or sales or profit projections referring or relating, in whole or in part, to TFT-LCD Products.

21.     All documents which analyze, evaluate or summarize information referring or relating to the manufacture, distribution, marketing, pricing or selling of TFT-LCD Products including, without limitation, documents referring or relating to sales volumes, product lines,

1   profitability, competition, market share, competitive position, production capacity, or sales

2   territories.

3        22.    All documents relating to any actual, proposed or prospective price

4   announcements, price changes, price lists and/or changes in the conditions of sale relating to your

5   TFT-LCD Products, or to any other Defendant or manufacturer of TFT-LCD Products, and all

6   internal notes, memoranda, analyses and correspondence relating thereto.

7        23.    Documents and electronic data sufficient to identify or set forth the

8   following information relating to your sale of TFT-LCD Products to members of the class as

9   defined in the Consolidated Amended Complaints:  customer names and addresses, sales terms

10   and conditions, sales dates, product descriptions, unit price information, purchase volumes,

11   purchase prices, gross prices, actual net prices, discounts, credits, rebates, transportation charges

12   or terms, any other related charges, and shipment dates.

13        24.    Documents sufficient to show: (a) how to operate or run any of the

14   programs maintained on the computer-related equipment or system utilized by you to maintain

15   the data produced in response to Request No. 23, and (b) the meaning of the data produced in

16   response to Request No. 23, including all record layouts, data dictionaries, field codes, and other

17   codes or descriptions.

18        25.    All agreements relating to the production, sale, marketing, licensing, or

19   distribution of your TFT-LCD Products.

20        26.    All documents relating to your participation in or control of subsidiaries,

21   affiliates and joint ventures engaged in any business relating to TFT-LCD Products, including

22   articles of incorporation, joint venture agreements, and any other organizing documents.

23        27.    All customer "call", visit or travel and entertainment reports, including

24   expense reports, reflecting visits to, or meetings or communications with customers with

25   operations in the United States.

26        28.    Documents sufficient to show any method, formula, policy, practice or

27   calculation utilized for computing or granting discounts, rebates, or other allowances to your

28   customers for the purchase of your TFT-LCD Products.

1         29.     Documents sufficient to identify each of your plants that manufactured

2  TFT-LCD Products during the Relevant Period, and for each such plant, all documents relating

3  to:

4          a.     capacity, rated capacity, and capacity utilization for each year (or

5  fraction thereof) of the Relevant Period;

6          b.     any proposed or actual change in the capacity to produce TFT-LCD

7  Products;

8          c.     any reason for changes in each plant's actual output of TFT-LCD

9  Products;

10         d.     for every shutdown in the production of TFT-LCD Products, all

11  documents relating to any reason for stopping or restarting production; and

12         e.     the financial investment, planning, and technical expertise required

13  to construct, operate, and maintain the manufacturing plant.

14         30.     All documents analyzing or describing the cost of manufacturing TFT-

15  LCD products, including the cost of individual components or inputs, including but not limited to

16  contracts for the purchase of such components or inputs.

17         31.     Documents sufficient to identify and quantify all swaps, trades, exchanges,

18  sales, purchases or transfers of TFT-LCD Products, or the inputs used to produce TFT-LCD

19  Products, between you and any of your affiliates, or between you and any other producer or seller

20  of TFT-LCD Products, and the price or any other consideration involved in such sale, swap, trade,

21  purchase or transfer.

22         32.     All documents relating to the sharing of technology relating to TFT-LCD

23  Panels, including cross-licensing agreements, between you and any of your affiliates, or between

24  you and any other producer or seller of TFT-LCD Products.

25         33.     Documents sufficient to show, for each year during the Relevant Period:

26         a.     your monthly and annual gross costs of manufacturing TFT-LCD

27  Products;

28

b.      your monthly and annual fixed costs of manufacturing TFT-LCD

Products;

c.      your monthly and annual variable costs of manufacturing TFT-LCD

Products;

d.      your monthly and annual costs of inputs and other components used

in manufacturing TFT-LCD Products.

34.     All internal or public annual, quarterly or monthly financial statements,

summaries, or analyses generated by you that relate to your TFT-LCD Products, including profit

and loss statements and expected or realized rates of return on investment.

35.     All documents showing prices, discounts, rebates, resale price maintenance

schemes, price premiums, profit margins, and profitability for your or any other competitor's

TFT-LCD Products, whether sold in the United States or elsewhere.

36.     All documents referring to or relating to your percentage share of industry

production of sales (or other measure of market share) of TFT-LCD Products, or that of any other

manufacturer, producer, or distributor of TFT-LCD Products.

37.     Documents sufficient to identify all of your TFT-LCD Products that

incorporate TFT-LCD Products manufactured by other entities.

38.     Documents sufficient to identify all TFT-LCD Products manufactured by

other entities that incorporate TFT-LCD Products manufactured by you.

39.     All documents, including both internal and external documents and

communications, relating to any trade association, organization or committee or subcommittee

relating to TFT-LCD Products (including but not limited to the Taiwan TFT-LCD Association,

the Electronic Display Industrial Research Association of Korea, the Korea Display Equipment

Material Industry Association, the United States Display Consortium, the Semiconductor

Equipment Association of Japan, the Society for Information Display, and the Global FPD

Partners' Conference).

40.     All agendas, minutes, notes or memoranda of any Board of Directors or

meeting of any committee thereof relating to TFT-LCD Products.

1        41.     For each person identified in response to Plaintiffs' First Set of

2  Interrogatories, No. 2, produce:

3            a.     the personal and company copy of all diaries, calendars, pocket

4  calendars, personal digital assistants, appointment books, and appointment notes, electronic and

5  non-electronic;

6            b.     the personal and company copy of all trip and travel logs, records,

7  and supporting documents;

8            c.     the personal and company copy of all expense, reimbursement,

9  golf, travel and entertainment records and supporting documents;

10            d.     the personal and company copy of all telephone number logs,

11  directories, notebooks, card files (such as Rolodex cards) and memoranda;

12            e.     all long distance and cellular telephone bills, statements, records

13  and supporting documents concerning long distance or cellular telephone calls by such

14  employees; and

15            f.     personnel files created and/or maintained by you.

16        42.     All documents identifying your corporate organization with respect to

17  TFT-LCD and TFT-LCD product operations, including, but not limited to, organizational charts,

18  personnel bios, and individual job descriptions.

19        43.     Organizational charts sufficient to identify those persons who act as

20  custodians of information for your company, including without limitation, all of your Information

21  Services or Information Technology Departments and the records managers for each business unit

22  involved in the manufacture, marketing, distribution, or sale of TFT-LCDs and TFT-LCD products.

23        44.     Organizational charts sufficient to identify those persons responsible for ESI

24  management, organization, retention, preservation and destruction of ESI, both from a company-

25  wide prospective and within each business unit involved in the manufacture, marketing, distribution,

26  or sale of TFT LCDs and TFT-LCD products.

27        45.     Documents sufficient to identify all employees who are responsible for

28  conducting back-ups or for archiving email messages.

1      46.     Documents sufficient to identify hardware or software used to perform such

2  backups from the date you learned of the DOJ investigation to the present.

3      47.     All documents generated or prepared by any other defendant.

4      48.     All documents that contain information relating to the price, production, or

5  supply of your competitors' TFT-LCD Products.

6      49.     All documents relating to your corporate policies or practices regarding

7  compliance with United States antitrust laws.

8      50.     All documents, including all communications, relating to the termination,

9  retirement, discipline, demotion, discharge, suspension, or change in position or responsibility of

10  any of your directors, officers, or employees who had any responsibility or input  relating to the

11  production, manufacture, distribution, marketing, pricing or sale of TFT-LCD Products.

12      51.     All documents relating to the cost of producing TFT-LCD panels relative

13  to the cost of producing products containing TFT-LCDs.

14      52.     All documents you provided to or received from market research firms and

15  financial analysts, including but not limited to DisplaySearch and iSuppli, relating to TFT-LCD

16  Products, including all communications.

17      53.     All documents relating to any proposed or actual joint venture, merger,

18  acquisition, sale, licensing agreement, swap, or any other business arrangement between your

19  company and any other manufacturer or seller of TFT-LCD Products.

20      54.     All documents relating to the price elasticity of supply and demand for

21  TFT-LCD Products.

22      55.     Documents that reflect or describe your document retention policies and

23  any litigation hold implemented in connection with this litigation, including the date that any

24  litigation hold was implemented.

25      56.     Documents that reflect or describe your policies, procedures and guidelines

26  for your company's use or retention of email, instant messages or other forms of electronic

27  communication.

28      57.     All documents you intend to use or rely upon at trial.

Dated: June 9, 2008                    LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP


                                       By:  /s/ Brendan Glackin
                                          _____


                                       Richard M. Heimann (State Bar No. 063607)
                                       Joseph R. Saveri (State Bar No. 130064)
                                       Eric B. Fastiff (State Bar No. 182260)
                                       Brendan Glackin (State Bar No. 199643)
                                       LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
                                       275 Battery Street, 30th Floor
                                       San Francisco, CA  94111-3339
                                       Telephone:  (415) 956-1000
                                       Facsimile:  (415) 956-1008

                                       Bruce L. Simon (State Bar No. 096241)
                                       PEARSON, SIMON, SOTER, WARSHAW & PENNY,
                                       LLP
                                       44 Montgomery Street, Suite 1200
                                       San Francisco, CA  94104
                                       Telephone:  (415) 433-9000
                                       Facsimile:  (415) 433-9008

                                       *Interim Co-Lead Counsel for the Direct Purchaser Plaintiffs*


                                       Francis O. Scarpulla (State Bar No. 41059)
                                       ZELLE HOFMANN VOELBEL MASON & GETTE LLP
                                       44 Montgomery Street, Suite 3400
                                       San Francisco, CA  94104
                                       Telephone:  (415) 693-0700
                                       Facsimile:  (415) 693-0770

                                       Joseph M. Alioto (State Bar No. 42680)
                                       ALIOTO LAW FIRM
                                       555 California Street, Suite 3160
                                       San Francisco, CA  94104
                                       Telephone:  (415) 434-8900
                                       Facsimile:  (415) 434-9200

                                       *Interim Co-Lead Counsel for the Indirect Purchaser
                                       Plaintiffs*

766795.1                          - 18 -              CASE NO. M: 07-1827 SI, MDL NO. 1827

DIRECT PURCHASER AND INDIRECT PURCHASER PLAINTIFFS' SECOND SET OF REQUESTS FOR PRODUCTION

Elizabeth C. Pritzker
GIRARD GIBBS LLP
601 California Street, 14th Floor
San Francisco, CA 94108
Telephone: (415) 981-4800
Facsimile:    (415) 981-4846

*Interim Liaison Counsel for the Direct Purchaser Plaintiffs
and the Proposed Class*

Jack W. Lee
MINAMI TAMAKI LLP
360 Post Street, 8th Floor
San Francisco, CA 94108-4903
Telephone:    (415) 788-9000
Facsimile:          (415) 398-3887

*Interim Indirect Purchaser Liaison Counsel*

# Original Exhibits B-J to the Declaration of Joseph R. Saveri have been excerpted from this filing but are available through PACER