Hon. Charles A. Legge (Ret.)
JAMS
Two Embarcadero Center, Suite 1500
San Francisco, CA 94111
Telephone: (415) 774-2644
Fax: (415) 982-5287
Special Master

JAMS

IN RE: CATHODE RAY TUBE (CRT)
ANTITRUST LITIGATION

CRAGO, INC., et al.,

    Plaintiffs,

  vs.

CHUNGHWA PICTURE TUBES, LTD., et al.,

    Defendants.

No. 07-5944 SC
MDL No. 1917
JAMS Reference No. 1100054618

**REPORT AND RECOMMENDATIONS
REGARDING DISCOVERY MOTIONS**

This Document Relates to
ALL CASES

To the Honorable Samuel Conti, United States District Judge:

  This is the Report and Recommendations of the Special Master regarding two of the discovery motions which were heard on November 12, 2010. A separate Procedural and Scheduling Order was issued on November 17, 2010 with respect to the other three motions that were heard, and they will be the subject of further proceedings scheduled by the Special Master.

  1.  Defendants' motion to compel Chunghwa Picture Tubes Limited to produce document translations that it previously provided to plaintiffs.

Chunghwa has previously produced to plaintiffs numerous of its documents in a Chinese language.  As a part of its settlement of this litigation with plaintiffs, Chunghwa has given them English language translations of the produced documents.  The translations were apparently done by an independent interpreter for Chunghwa.  This document request by defendants for production of the translations is not directed to plaintiffs, or to the Antitrust Division.    Plaintiffs are not requested to produce anything.  Nor is the Antitrust Division.  It is a document request directed to Chunghwa.

Counsel for Chunghwa has advised the Special Master that they are aware that plaintiffs have asserted a claim of work product privilege as to the translations.  Counsel states that Chunghwa does not intend to produce the translations to defendants unless there is an agreement between plaintiffs and defendants, or there is a ruling resolving the issue.  Stating it affirmatively, Chunghwa indicates that it will abide by any agreement between the parties, or by a ruling on whether the claim of work product privilege is applicable.  The Special Master was verbally advised by a representative of the Antitrust Division on November 2, 2010 that it is taking no position with respect to the motion or the opposition.  The Antitrust Division is not contending that production of the translations would violate the stay order presently in effect, or would interfere with the investigation or prosecution by the Antitrust Division.

Plaintiffs oppose Chunghwa's production of the translations on grounds of the work product privilege.  Again it must be noted that the motion is not directed to plaintiffs, but only to Chunghwa.

Plaintiffs do not have standing to assert a work product privilege as to the translations.  They were not the work product of plaintiffs or their attorneys.  They were done for Chunghwa by an outside vendor; Chunghwa is the only entity which has a work product privilege regarding the translations.  And Chunghwa has not asserted it.

Plaintiffs argue that they have a limited "common interest" with Chunghwa in the translations, which allows plaintiffs to assert the privilege.  However, there is no legally recognized common interest. This is not a setting of co-defendants or co-plaintiffs sharing information which they have developed for their common interest in prosecuting or defending an action.  Chunghwa and plaintiffs were opponents, not co-parties, during the course of the

litigation.  At the time the privilege first attached, plaintiffs and Chunghwa were clearly adversaries.

Plaintiffs attempt to create a common interest from the fact that Chunghwa and plaintiffs settled this litigation, and the translations were produced to plaintiffs as a part of that settlement. However, entering into a settlement agreement does not create or transfer to plaintiffs any work product privilege.    A settlement does not vest in one party all of the privileges held by the other. Legal privileges cannot be bought and sold.  And numerous cases have held that disclosures made in a settlement are not privileged, and have said that there is no enforceable common interest just because of a settlement.  E.g. In re Chrysler Mortgage Corporation, 860 F.2d 844 (8th Cir. 1988) at page 4; Grumman Aerospace Corporation v. Titanium Metals Corporation, 91 F.R.D. 84 (E.D.N.Y. 1981) at page 7; Khandji v. Keystone Resorts, 140 F.R.D. 697 (D. Colorado 1992) at page 4; Eagle Compressors, Inc. v. HEC Liquidating Corporation, 206 F.R.D. 474 (N.D. Ill. 2002) at pages 7-8; In re Urethane Antitrust Litigation 209 W.L. 2058759 (D. Kan. 2009) at pages 6-7.  If there was a work product privilege, it was held by Chunghwa, and Chunghwa waived the privilege when it voluntarily produced the translations to plaintiffs.

Plaintiffs also object on the ground of the stay order in this case, which was entered regarding the Antitrust Division's investigation.  However, the Special Master finds no violation of the stay order.  Defendants are not here seeking anything provided to the Antitrust Division, but only translations provided to plaintiffs.  There is no prohibition in the stay order regarding the production of such information.  And as noted above, the Antitrust Division has advised the Special Master that it was taking no position on this motion.

Plaintiffs also seek to make a so called "cross-motion" to compel defendants to produce any translations in their possession.  However, the Special Master declines to address such motion at this time.  There has been no showing by plaintiffs that defendants have any translations, what those translations are, whether they have been asked for, if any objections have been made, or any legal or factual basis for compelling them to be produced.  The purported cross-motion is therefore denied without prejudice.

Plaintiffs also suggest that a more extensive order should be entered establishing a protocol for translations, apparently including both discovery and use in depositions and trial. That may well be a good idea for consideration in the future.  Indeed, defendants have already

agreed to meet and confer with plaintiffs on a translation protocol. But such a future protocol is no defense to the present motion, which rests on its own merits.

Finally, plaintiffs assert that the translations are "their" translations because plaintiffs paid for them. The record indicates that the translations were supplied by Chunghwa to plaintiffs as a part of the settlement agreement. It does not appear that plaintiffs actually paid any money for them. But plaintiffs argue that if they had not gotten the translations as a part of the settlement, plaintiffs would have demanded more cash. But whatever those circumstances were, they are not a defense to the present motion. Even if Chunghwa had literally sold translations to plaintiffs, that would not be a defense to the motion to produce the translations still held by Chunghwa. Plaintiffs do not assert any legally recognized defense or privilege to Chunghwa's producing the translations to defendants.

The production may also serve to decrease future discovery and litigation burdens on all of the parties. We now have one translation, prepared by an independent translator. There is presently no requirement for other parties to obtain their own translations. And having more translations would undoubtedly result in discovery and motion disputes to reconcile any material differences. The Special Master recognizes that even one translation may be the subject of disputes over accuracy which have to be resolved, but that is certainly easier and less expensive than having to reconcile or choose among several conflicting sets of translations.

For the forgoing reasons the Special Master recommends that defendants' motion to compel plaintiffs to produce the translations of the Chunghwa documents be granted. Unless this recommendation of the Special Master is reversed, vacated or modified by the District Court, the translations should be provided by December 31, 2010.

2.      Defendants' motion to compel plaintiffs to respond to discovery regarding the evidence for plaintiffs' allegations of conspiracy regarding "CRT Products".

The motions to dismiss have determined that plaintiffs' complaints adequately allege a conspiracy regarding CRT Products. Defendants' requested discovery is relevant to that subject matter. The discovery asks what information plaintiffs had at the time of the filing of the complaints about the existence of a conspiracy regarding CRT Products. Defendants' later

4

objective, if they find that plaintiffs had insufficient information to meet the Rule 11 standard, will be to attempt to eliminate that allegation from this case.

That objective, and plaintiffs' objections to it, invite a closer examination of what plaintiffs have alleged about a conspiracy involving CRT Products. Is it a single conspiracy about both CRTs and CRT Products? Is it two conspiracies, one regarding CRTs and the other regarding CRT Products? Or is it simply an assertion that the alleged conspiracy about CRTs had an impact on the prices for CRT Products? The language of the pleadings is susceptible to any one of those interpretations. See the Direct Purchaser Consolidated Amended Complaint, paragraphs 1, 85, 144 and 146. The Special Master's report of February 5, 2010 did not draw such distinctions, but simply found that the complaints adequately alleged a conspiracy with respect to CRT Products. Nor did Judge Conti's confirming order of March 30, 2010 discuss such distinctions. Indeed, at the pleading stage there was really no necessity for drawing such distinctions.

Even at this present stage of the discovery, there is no necessity for making a binding ruling. Under any of the three scenarios --- one conspiracy alleging both CRT Products and CRTs, one conspiracy for CRTs and one for CRT Products, or a conspiracy involving CRTs which merely impacted the prices of CRT Products --- discovery with respect to CRT Products is still relevant to the allegations of the complaint.

Plaintiffs object is that discovery focusing on their present evidence regarding CRT Products is premature. But having pleaded at least a conspiracy involving CRT Products, plaintiffs are obligated at the discovery stage to supply what information they have on that subject. And it is apparent that the allegations involving CRT Products, in addition to just CRTs, have a very material impact on the scope of the discovery, the motions and the trial of these actions. Identifying the correct product line or lines is a major event of considerable importance to the cases.

Plaintiffs' principal argument is that the interrogatories involving CRT Products are "contention" interrogatories. Extensive contention interrogatories have long been a burden on parties and courts. They have been disapproved by numerous courts as being premature and burdensome. However, the defendants here have not used contention type interrogatories about all the allegations of the complaints. Rather, the present discovery is directed to just one issue: is

there evidence that there was a conspiracy that fixed the prices of CRT Products?  And as stated, that issue is very material to these cases.  Plaintiffs also argue that allowing this contention interrogatory will open the door to contention interrogatories about every allegation.  But any future misuse of contention type interrogatories can be controlled by the Special Master and/or the District Court Judge if and when that problem arises.

Nor does this requested discovery impose an undue burden on plaintiffs.  They are not being asked to search through voluminous historical files and records.  When they prepared their complaints they had necessarily gathered some information with respect to their allegations, and they should have that information available.

Plaintiffs argue that it would be an improper use of Rule 11 for defendants to use plaintiffs' discovery responses (assuming they were favorable to defendants) to seek immediate relief.  But that argument is for another day.  Since the requested information is relevant to the allegations, and even apart from whether the discovery responses will result in a Rule 11 motion, the requested information is important to the Special Master and to the District Court in defining the permissible scope of discovery, the time necessary for discovery, the respective burdens on the parties, and the scope of the trial.

Plaintiffs also argue that defendants are refusing to answer plaintiffs' discovery regarding CRT Products.  But that does not make defendants' requests to plaintiffs irrelevant.  Defendants' production will be considered in the context of a motion or motions for production by plaintiffs, one of which is already before the Special Master.

Finally, plaintiffs argue that information regarding CRT Products is within defendants' knowledge.  Probably so.  But there is still the large burden of searching for it worldwide.  And that argument does not relieve plaintiffs of their obligation to tell defendants what they know about the allegations.

The Special Master therefore recommends to the District Court that plaintiffs be compelled to provide complete responses to defendants' discovery requests "regarding CRT Products".  More specifically, the District Court should grant the following requests served on the Direct Purchaser Plaintiffs: LGE's first set of requests for production and first set of interrogatories, and MT Picture Display Company Ltd's. first set of interrogatories and first set of document requests; and the following requests served on the Indirect Purchaser Plaintiffs:

Samsung SDI America, Inc.'s first set of interrogatories and first set of requests for production of documents, and Samsung Electronics America, Inc.'s first set of interrogatories and first set of document requests.

Unless this recommendation of the Special Master is reversed, vacated, or modified by the District Court, the responses should be provided by December 31, 2010.

Respectfully Submitted,


November 18, 2010

Hon. Charles A. Legge

Special Master