Morgan, Lewis & Bockius LLP
One Market, Spear Street Tower
San Francisco, CA 94105-1126
Tel. 415.442.1000
Fax: 415.442.1001
www.morganlewis.com



**Diane L. Webb**
Partner
415.442.1353
dwebb@morganlewis.com

January 5, 2011

**VIA ECF**

The Hon. Charles Legge
JAMS
Two Embarcadero Center, Suite 1500
San Francisco, CA 94111

Re:    _In re Cathode Ray Tube (CRT) Antitrust Litigation_, No. 07-5944 SC, MDL No. 1917

Dear Judge Legge:

Pursuant to Your Honor's November 17, 2010 Procedural and Scheduling Order
("Order") (Dkt. No. 809) in the above-referenced matter, defendants Hitachi, Ltd., ("HTL"),
Hitachi Displays, Ltd. ("HDP"), Hitachi Asia, Ltd. ("HAS"), Hitachi America, Ltd. ("HAL"),
and Hitachi Electronic Devices (USA), Inc. ("HED(US)")) (collectively, the "Hitachi
Defendants") provide Your Honor with the following report regarding the status of the custodian
meet-and-confer process and production of materials to facilitate that process.

## I.    PRODUCTION AND EXCHANGE OF INFORMATION

As the parties reported to Your Honor on December 16, 2010, the following information
was produced by the Hitachi Defendants to Plaintiffs pursuant to the Order, as modified by the
parties, to facilitate the custodian meet-and-confer process:

- On December 7, 2010, the Hitachi Defendants provided an evidentiary proffer to
  Plaintiffs, as required by the Order, as modified by the parties; and

- On December 10, 2010, all the Hitachi Defendants, except Hitachi Asia, Ltd. produced
  responsive organization charts to Plaintiffs, as required by the Order, as modified by the
  parties.

Subsequent to the December 16, 2010 report, the parties exchanged the following
information to facilitate the meet-and-confer process:

The Hon. Charles Legge
January 5, 2011
Page 2



- On December 17, 2010, the Hitachi Defendants and Direct Purchaser and Indirect Purchaser Plaintiffs (jointly, "Plaintiffs") exchanged proposed custodian lists for HED(US) and HAL in compliance with the Order, as modified by the parties;

- On December 21, 2010, the Hitachi Defendants and Plaintiffs exchanged proposed custodian lists for HTL, HDP, and HAS in compliance with the Order, as modified by the parties; and

- On December 23, 2010, HAS produced responsive organization charts to Plaintiffs.

In addition to the above, certain of the Hitachi Defendants provided supplemental responses to Direct Purchaser Plaintiffs' Interrogatory No. 2, which calls for the identification of persons with "managerial responsibility for *recommending, reviewing, setting or approving* prices, bids, quotes, or rebates . . . ." (emphasis added).  To date, the following supplemental responses have been provided to Plaintiffs to facilitate the custodian meet-and-confer process:

- On December 17, 2010, HED(US) served its supplemental response to Direct Purchaser Plaintiffs' Interrogatory No. 2;

- On December 22, 2010, HTL[1] and HDP served their supplemental responses to Direct Purchaser Plaintiffs' Interrogatory No. 2; and

- HAS and HAL are continuing to verify information required to provide their supplemental responses to Direct Purchaser Plaintiffs' Interrogatory No. 2.

In addition, HAL is preparing its declaration regarding its efforts to search for responsive documents, as required by the Order.

As outlined above, the Hitachi Defendants have diligently worked to collect and produce documents and information necessary for the custodian meet-and-confer process.

---

[1] HTL stated that it was unable to determine which individuals had actually managerial-level authority "for *recommending, reviewing, setting or approving* prices, bids, quotes, or rebates . . . ." Direct Purchaser Plaintiffs' Special Interrogatory No. 2.  (emphasis added).  This is due to the fact that the requested information concerns various positions held by employees years ago and their accompanying responsibilities.  Most employees with knowledge have since left the Hitachi Defendants' employ.

The Hon. Charles Legge
January 5, 2011
Page 3



## II.     STATUS OF CUSTODIAN MEET-AND-CONFER EFFORTS

In total, Plaintiffs identified an unfathomable number of potential custodians –
approximately *two hundred*.[2]  Plaintiffs' overly broad and unduly burdensome proposed
custodian list is completely contrary to Your Honor's stated purpose of the meet-and-confer – *to
devise a mechanism to manage the scope of discovery*.  At best Plaintiffs' proposed custodian
lists are patently unreasonable; worst case, Plaintiffs are intentionally trying to blow-up the meet-
and-confer process so they can renew their motions to compel against Hitachi after having
obtained significant discovery from the Hitachi Defendants as outlined above.  This Court should
not allow them to do so.

Rather than proposing a reasonable set of proposed custodians, Plaintiffs attempt to
expand discovery and the Hitachi Defendants' discovery burden in this matter exponentially.  In
fact, Plaintiffs' lists seem to include nearly every Hitachi individual whose name appeared on
any document or information provided by the Hitachi Defendants or other defendants thus far.
Plaintiffs' proposed custodian lists go far beyond individuals the Hitachi Defendants identified in
their initial disclosures, supplemental interrogatory responses, and, of course, their own proposed
custodian lists.  Many of Plaintiffs' proposed custodians do not appear on any documents or in
information provided by the Hitachi Defendants.  And, Plaintiffs fail to provide any justification
as to why such individuals may have potentially relevant information and should be included.
Instead, Plaintiffs attempt to turn the meet-and-confer process on its head by submitting a
blunderbuss list and demanding the Hitachi Defendants provide reasons why these unknown
individuals should *not* be included as custodians.  In sum, Plaintiffs' proposed custodian lists are
wholly unreasonable, unduly burdensome, overly broad, oppressive, and must be narrowed
significantly.

Despite Plaintiffs' overly broad and unduly burdensome proposed custodian lists, on
December 28, 2010, the Hitachi Defendants engaged in a two-hour initial meet-and-confer
teleconference with Plaintiffs to discuss proposed custodians and try to understand why Plaintiffs
designated so many proposed custodians.  During the December 28 meet and confer, the parties
were able to agree on a number of custodians to include on the joint custodian list.  Additional
meet-and-confer sessions are necessary, however, as the Hitachi Defendants could not have
anticipated that Plaintiffs would be unreasonable and identify approximately *two hundred
custodians*.

Furthermore, during the December 28, 2010 meet and confer, the Hitachi Defendants
informed Plaintiffs that discussions regarding proposed custodians relating to the Hitachi

---

[2]  To put this in context, Plaintiffs' current proposed custodian lists result in 200 witnesses for the
Hitachi Defendants alone, not considering the other defendant family groups in this matter.

The Hon. Charles Legge
January 5, 2011
Page 4



Defendants' involvement in Finished CRT Products are stayed pursuant to Your Honor's ruling on Plaintiffs' request for more time to respond to Defendants', including Hitachi Displays' (HPD)s, Finished CRT Products discovery and the resulting December 29, 2010 Order.  This includes meet-and-confer discussions regarding HAL,[3] HAS,[4] and HTL[5] proposed custodians.

Despite the unbelievable over-breadth of Plaintiffs' proposed custodian lists, the Hitachi Defendants currently are gathering additional information as a result of the December 28, 2010 meet and confer that will assist the parties to determine which of the parties' proposed custodians are appropriate.  The Hitachi Defendants informed Plaintiffs that the Hitachi Defendants are diligently seeking additional information to determine which proposed custodians likely possess potentially relevant documents or information, as well as reconfirming whether custodian-specific ESI and documents exist for these individuals.

Nonetheless, Plaintiffs, by way of a letter (Exhibit A, without attachments) sent the evening of Friday, December 31, 2010 (New Year's Eve), unreasonably and unilaterally demanded that the Hitachi Defendants provide such additional information and agree on certain broad categories of custodians by January 4, 2011.  This was simply not possible.  As Plaintiffs identified nearly two hundred individual custodians, gathering additional information necessary to continue the meet-and-confer process is not a simple task, particularly given that the Hitachi Defendant client representatives were not available over the intervening December holidays.

The Hitachi Defendants responded to Plaintiffs' December 31, 2010 letter on January 4, 2011 (Exhibit B).  In that letter, the Hitachi Defendants requested Plaintiffs provide additional information regarding certain of their proposed custodians whom the Hitachi Defendants cannot identify and asked Plaintiffs to provide justifications as to why certain proposed custodians should be included, such as, proposed custodians who are not associated with a Hitachi Defendant, and board of directors members who had no control over price, sales, or marketing.

---

[3]  As demonstrated in the Hitachi Defendants' Evidentiary Proffer, Dkt. No. 817, HAL's Electron Tube Division was merged with HED(US) in April 1998.  Evidentiary Proffer at 5:10-13.  Any documents or data related to HAL's sale of CRT tubes were transferred to HED(US) pursuant to the merger.

[4]  Additionally, while HAS provided its proposed list of custodians pursuant to the November 17, 2010 Order, HAS's sales territory *never* included the United States.  Evidentiary Proffer at 4:16-17, 4:21-22, 4:26-5:2.

[5]  As demonstrated in the Evidentiary Proffer, HTL spun off its Display Group to HDP in October 2002.  Evidentiary Proffer at 2:16-19.  As a result, "HDP retains documents relating to HTL's Display Group's manufacturing and sale of CDT tubes and CPT tubes."  *Id*. at 4:3-5.

The Hon. Charles Legge
January 5, 2011
Page 5



Additionally, as stated above, many of the individuals Plaintiffs identified are no longer in the Hitachi Defendants' employ.  If no custodian-specific ESI or documents exist for a particular individual, it is not productive to include such individuals on the joint custodian list.

## III.   CONCLUSION

As a result of Plaintiffs' extraordinarily overly-broad custodian lists, further meet and confer sessions will be necessary for the parties to reach agreement on a joint custodian list – after the Hitachi Defendants are able to complete their investigation regarding Plaintiffs' proposed custodians.  Plaintiffs should not be allowed to hijack the meet-and-confer process by engaging in discovery gamesmanship.

Sincerely,

/s/ Diane L. Webb

Diane L. Webb

*Counsel for the Hitachi Defendants*

cc:  All counsel via ECF

# EXHIBIT A

**SAVERI & SAVERI, INC.**

706 SANSOME STREET
SAN FRANCISCO, CALIFORNIA 94111
TELEPHONE: (415) 217-6810
TELECOPIER: (415) 217-6813

*Trump Alioto Trump & Prescott*

ATTORNEYS LLP
2280 Union Street
San Francisco, California 94123
(415) 563-7200
FAX (415) 346-0679

December 31, 2010

**By Electronic Mail**

Diane L. Webb
Morgan, Lewis & Bockius LLP
One Market, Spear Street Tower
San Francisco, CA 94105-1596

      Re:  *In re Cathode Ray Tube (CRT) Antitrust Litigation*, MDL No. 1917 (N.D. Cal.), December 28, 2010 Meet and Confer

Dear Diane:

      This letter memorializes our telephonic meet and confer on December 28, 2010 regarding Defendants Hitachi, Ltd.'s, Hitachi America, Ltd.'s, Hitachi Asia, Ltd.'s, Hitachi Displays, and Ltd.'s, Hitachi Electronic Devices (USA), Inc.'s  (collectively the "Hitachi Defendants" or "Hitachi") and Direct Purchaser Plaintiffs' and Indirect Purchaser Plaintiffs' (collectively "Plaintiffs") Hitachi custodian list exchange and subsequent follow up by Plaintiffs regarding the same.

      On December 17, 2010 and December 21, 2010, the parties exchanged lists of proposed custodians for Hitachi's United States and Asian entities, respectively. Plaintiffs' proposed lists contained two hundred individuals in total.  The Hitachi Defendants submitted a list of only twenty-three individuals for all five of Hitachi's entities.  Despite having Plaintiffs' lists for a week and a half before the parties' December 28 meet and confer, the Hitachi Defendants were unwilling or unprepared to discuss *any* of the individual custodians, instead stating that they would "get back" to Plaintiffs.  As a result, the December 28 meet and confer was not as productive as it should have been given the tight schedule ordered by the Court.  Moreover, the Hitachi Defendants have yet to provide Plaintiffs with any justification as to why any of the custodians that Plaintiffs identified should be excluded from Hitachi's search and production.

      As you are aware, the parties are required to report to Judge Legge regarding the custodian lists by January 5, 2011.  As such, to the degree the Hitachi Defendants objects to any custodian on Plaintiffs' proposed lists, please provide written justification explaining why the Hitachi Defendants believe that individual should be excluded no later than January 4, 2010.  If Plaintiffs do not receive an explanation by that date, we

will request that Plaintiffs' list of custodians as augmented herein be adopted as the initial custodian list to govern the Hitachi Defendants' initial production of documents.

## 1. Deficiencies In The Production Of The Hitachi Defendants' Organizational Charts

During our call, Plaintiffs identified significant deficiencies in the Hitachi Defendants' production of organizational charts. *First*, while Hitachi America, Ltd. ("HAL") produced responsive charts for its Home Electronics America ("HHAE") and Hitachi America Ltd. Home Electronics Divisions ("HAL-HED") for the years 1999-2005, it only produced charts for the years 2004 and 2005 for its high level officials. *See* HAL-CRT 49-50. Because the relevant class period for this case spans from 1995-2007, and the evidentiary proffer by the Hitachi Defendants indicates that HAL was involved in tube sales and production from 1995-1998, complete organizational charts from all relevant years should be produced.

*Second*, Plaintiffs advised that Hitachi Asia Ltd.'s ("HAS") production of organizational charts is similarly deficient. *See* HAS-CRT 1-5. Specifically, HAS produced only five pages of heavily redacted organizational charts in response to Plaintiffs' requests. The redactions make it impossible to discern the relative roles and positions of the few individuals identified. Additionally, no HAS charts were produced for the years 1995-2005, which has further frustrated Plaintiffs' efforts to assess which HAS custodians' files should be searched.

*Third*, the organizational charts produced on behalf of Hitachi Displays Ltd. ("HDP") are also deficient as a result of extensive redactions. *See, e.g.*, HDP-CRT 224-240. These redactions, as well as redactions in the HAS charts, are entirely inappropriate. As a preliminary matter, information contained in outdated organizational charts cannot be properly characterized as Confidential under the terms of the Protective Order. Moreover, even assuming that certain names on the organizational charts were entitled to protection, unilaterally redacting information that the Hitachi Defendants alone have deemed to be irrelevant is inappropriate and has drastically reduced the usefulness of the documents.

Because the December 8, 2010 deadline to produce responsive organizational charts has long passed, *see* Dkt. 809, pg. 2 (Procedural and Scheduling Order), Plaintiffs ask that you produce complete and unredacted organizational charts immediately. Plaintiffs reserve their right to identify additional custodians upon receiving complete organizational charts.

## 2. Files Previously Pulled In Connection With These Or Related Proceedings

On October 15, 2010, counsel for the Hitachi Defendants provided a breakdown of data that Hitachi previously pulled and loaded into their database in connection with this case and the United States Department of Justice's related grand jury investigation. During our December 28 call, Plaintiffs asked what criteria Hitachi used to pull this data,

Diane L. Webb
December 31, 2010
Page 3 of 8

including which individuals' files have been pulled and loaded into the database. Because the Hitachi Defendants can articulate no undue burden associated with producing responsive documents from this database, they should be produced immediately and in full.  Despite the ease with which these relevant documents can be produced, the Hitachi Defendants have refused to agree to do so.  Please provide Plaintiffs with a complete list of all documents previously pulled (including the names of individuals whose files have been pulled) and verify that all responsive documents from Hitachi's database will be produced forthwith.  If you are refusing to produce these files without exception, please articulate your position with specificity and in writing by January 4, 2011.

Additionally, you stated during the parties' meet and confer on June 23, 2010 that Hitachi Defendants have "collected significant documents and data back to 1991."  *See* Letter from Rick Saveri and Lauren Russell to Diane Webb, pg. 3, dated July 12, 2010. However, during our meet and confer on December 28, 2010, the Hitachi Defendants stated that "no files existed" for certain relevant individuals, such as James Aden of HAL and HED(US), because these files were "too old."  Hitachi could not explain whether these documents had been destroyed pursuant to the companies' preexisting document retention policy.  Regardless, you indicated that Hitachi would search for Mr. Aden's name and collect relevant documents accordingly.  Plaintiffs ask that you do so without delay and produce all relevant documents for this and other witnesses whose custodial files you maintain no longer exist.

### 3.  <u>Issues Regarding The Scope of Discovery</u>

The Hitachi Defendants contend that they are not required to meet and confer regarding many of Plaintiffs' proposed custodians due to the claimed unresolved "finished products versus tubes" issue in this case.  This position is contrary to the Judge Legge's express order that the parties meet and confer regarding finished product custodians by December 29, 2010.  *See* Dkt. #809, pg. 2 (Procedural and Scheduling Order).[1]

The parties' disagreement on scope notwithstanding, Hitachi agreed to investigate and confirm whether custodians identified by Plaintiffs were involved in the finished product side of the business before attempting to defer any discussion of that custodian because many of Hitachi's entities manufactured both tubes and finished products.  To date, the Hitachi Defendants have not followed up with Plaintiffs on this issue.  Please provide Plaintiffs with a list of individuals who you claim should be deferred on such basis and the grounds for your claim no later than January 4, 2011.

---

[1] Contrary to the Hitachi Defendants' position, it is not clear that Judge Legge's Order Granting Extensions of Time for Finished CRT Products Discovery issued on December 29, 2010 (Dkt. #832) overrides his previous scheduling order. Plaintiffs suggest the parties immediately seek clarification from Judge Legge as to the effect of his most recent order on the meet and confer process.

Diane L. Webb
December 31, 2010
Page 4 of 8

Plaintiffs also asked during our call that all of the identified custodians' files be produced across Hitachi entities and that, to the extent a custodian worked at more than one Hitachi entity, those custodial files be searched as well.  If the Hitachi Defendants object to this request, please advise immediately in writing.

Additionally, you agreed that files maintained by a custodian's secretaries and/or assistants would also be searched and produced.

4.  **Summary of The Parties' Meet and Confer Regarding Specific Hitachi Custodians**

a.  Individual Hitachi Custodians Whose Files Both Parties Agree Should Be Searched

Both parties identified the following Hitachi individuals on their respective proposed custodian lists, which were exchanged on December 17, 2001 (Hitachi's United States entities) and December 21, 2001 (Hitachi's Asian entities):

- **Lloyd Thomas Heiser**, Hitachi Electronic Devices (USA) ("HED(US)")
- **Yosuke Nakanishi**, HED(US)
- **Yoshimichi Shibuya**, HED(US)
- **Noburo Toyama**, HED(US)
- **Kenichi Hazuku**, Hitachi Asia ("HAS") and Hitachi Ltd. ("HTC")
- **Yoshiyuki Imoto,** HTC
- **Akihiro Harasawa,** Defendants listed as "HAS"; Plaintiffs found this individual on an HTC org chart - HTC-CRT 269
- **Hidetake Ono,** Hitachi Displays Ltd. ("HDP")
- **Kazuo Oohashi,** HDP and HTC
- **Genichi Watanabe,** HDP, HED(US)
- **Yuichi Kumazawa,** HDP
- **Raymond Teng,** HAS, Displays Div.
- **Y. Matsushima**, Hitachi America Limited Home Electronics Division ("HAL-HED")
- **Gary Bennett**, HAL-HED
- **Rick Stans**, HAL-HED
- **Masahiro "Dave" Fukada**, HAL-HED
- **Shigetaica Hikosaka**, HAL-HED

The Hitachi Defendants represented that they have reviewed a significant number of these individuals' hard copy files and that they would begin producing relevant documents for these custodians on a rolling basis, but did not identify a production date. You were also unable to estimate when you would begin producing electronically stored information, or when that production would be completed.  Please provide Plaintiffs with an estimated timeframe for these productions no later than January 4, 2011.

Diane L. Webb
December 31, 2010
Page 5 of 8

b.   Custodians Identified In The Hitachi Defendants' Initial Disclosures

The Hitachi Defendants excluded from their list of proposed custodians multiple individuals who were identified in their Rule 26(a) Initial Disclosures as having information upon which Hitachi may rely upon at trial.  Plaintiffs advised that all such individuals should be included on the joint custodian list without further discussion.  You were unwilling to agree to this request on our call, but indicated you would think about it.  Please confirm whether you object to including on the joint list of custodians any individuals listed in your Initial Disclosures.

c.   Custodians Identified In Documents Produced By Chunghwa

Similarly, all Hitachi custodians identified in documents produced by the Chunghwa defendants should be included on the joint custodian list without further discussion, as these individuals are known to have attended unlawful, anticompetitive meetings with other defendants.  You indicated Hitachi would likely agree, but asked Plaintiffs to identify these individuals with greater specificity.  Plaintiffs did so by providing a list of those individuals and identifying the documents in which those individuals are identified by Bates number in an email dated December 28.  As indicated below in Section 6, that list is also attached hereto as Appendix B.  Please confirm that Hitachi will agree to include these individuals on the joint custodian list.

d.   Hitachi Custodians Plaintiffs Identified in Their Initial Exchange List and Who Hitachi Defendants Also Identified in Their Supplemental Responses to Direct Purchaser Plaintiffs' First Set of Interrogatories, No. 2

Direct Purchaser Plaintiffs' First Set of Interrogatories, Interrogatory No. 2 asked the Hitachi Defendants to "identify each current and former employee who has or had any managerial responsibility for recommending, reviewing, setting or approving prices, bids, quotes, or rebates for Your CRT and/or CRT Products during the Relevant Time Period."

On December 17, 2010, Defendant HED(US) submitted its Supplemental Response to Direct Purchaser Plaintiffs' First Set of Interrogatories, Interrogatory No. 2 ("Supplemental Responses"), after the parties had exchanged proposed custodian lists for Hitachi's American Entities.  On December 22, 2010, Defendant HTC and Defendant HDP submitted their Supplemental Response to Direct Purchaser Plaintiffs' First Set of Interrogatories, Interrogatory No. 2 – again, after both parties had exchanged proposed custodian lists for Hitachi's Asia Entities on December 21, 2010.

**Forty-three individuals** are listed in **both** Plaintiffs' proposed custodian lists and in Hitachi Defendants Supplemental Responses.  Despite the parties' exchange of proposed custodian lists before our meet and confer, the Hitachi Defendants were unprepared to provide any information or explanation as to why the files of individuals listed on both Plaintiffs' custodian lists and Hitachi Defendants' Supplemental Responses should not be searched.  Instead, you merely stated that you would look into whether

Diane L. Webb
December 31, 2010
Page 6 of 8

Hitachi would agree to search and produce relevant documents from these individuals' files.  On December 28, 2010, immediately following our telephonic meet and confer, Plaintiffs responded to Hitachi's request to expressly identify the individuals listed in both parties' submissions by email.

For your convenience, attached as **<u>Appendix A</u>** is a chart memorializing details from our meet and confer discussion wherein Plaintiffs explained their reasoning behind including the listed individuals on their proposed custodian lists.  These custodial files should be searched based on the individual's mention in documents produced by the Hitachi Defendants and on Hitachi's own admission that these individuals had managerial responsibility for setting prices.

Please let us know whether the Hitachi Defendants will agree to include these individuals on the joint custodian list or provide a detailed explanation in writing as to why any such individuals should be excluded by January 4, 2011.

    e.   <u>Individuals that Plaintiffs Propose Adding Based on Defendants HED(US), HTC, and HDP's Supplemental Responses to Direct Purchaser Plaintiffs' First Set of Interrogatories, Interrogatory No. 2</u>

Plaintiffs did not previously encounter the following individuals in any of Hitachi's production of documents or organizational charts, but propose adding them based on the description of their roles during the relevant time period as set forth in Defendant Hitachi's Supplemental Responses.  You stated that you were amenable to considering these individuals as potential custodians and will report back to Plaintiffs after further investigating their roles within Hitachi.  Considering these individuals were identified by Hitachi in its Supplemental Responses as having pricing authority, they should be included on the joint custodian list without further discussion.

- **Yasuo Mizutani** - you listed this person as a "HAS" individual on your custodian exchange list submitted on 12/21/2010 – Plaintiffs would like more information on him.
- **Takao Endo**
- **Koji Hara**
- **Yoshinori Ishida**
- **Yasufumi Naraki**
- **Kosuke Ozeki**
- **Koichi Wakabayashi**
- **Hideo Yamada**
- **Ikuo Yuki**
- **Tadashi Ishibashi**
- **Nobuaki Ito**[2]

---

[2] This list excludes the HAS individuals who Plaintiffs proposed adding during the meet and confer based on the HAS organizational charts that HAS submitted to Plaintiffs on

Diane L. Webb
December 31, 2010
Page 7 of 8

If Hitachi is unwilling to include these individuals on the joint custodian list, please advise in writing, along with Hitachi's explanation as to why these individuals should be excluded, no later than January 4, 2011.

        f.   <u>The Parties' Respective Positions Regarding the Hitachi Board Members</u>

Plaintiffs listed several Hitachi board members as potential custodians because these individuals had the authority to dictate the overarching goals and business philosophies of the Hitachi corporations, which might be reflected in their files. Moreover, in addition to being board members, a number of these individuals were also identified in Hitachi's responses to the Department of Justice Subpoena Requests, in their Initial Disclosures pursuant to Rule 26(a) and/or in the organizational charts produced. *See, e.g.,* HED(US)-DOJ-CRT 000000001 – HED(US)-DOJ-CRT00000068.

You agreed to investigate the Department of Justice inquiries and exact roles of these individuals more closely and report back to Plaintiffs regarding which individuals listed, if any, were involved in business decisions or had knowledge of relevant products and related issues (pricing, capacity, etc.) during the relevant time period. We have yet to hear back from you regarding Hitachi's position. Plaintiffs request that you agree to include these individuals on the joint custodian list or provide an explanation in writing as to why any identified Board Member should be excluded no later than January 4, 2011.

**5.   Additional Information Plaintiffs Provided to Hitachi Defendants in Order to Facilitate Agreement on Custodian Lists**

During the December 28 meet and confer, Hitachi Defendants requested additional information from Plaintiffs regarding the grounds for certain individuals' inclusion on Plaintiffs' proposed custodian lists. Despite the fact that Hitachi Defendants have greater access to information regarding the role and responsibilities of the Hitachi employees identified, counsel for Hitachi were wholly unprepared or unwilling to meet and confer with respect to any these individuals or articulate any reason why they should be excluded from the custodian list. Regardless, Plaintiffs promptly responded to Hitachi Defendants' request for further information in an email on the same day in order to facilitate further discussion about these custodians. We are providing this information again in **Appendix B** (Hitachi Individuals listed in Chunghwa Meetings), **Appendix C** (HTC Individuals), and **Appendix D** (HAL-HED Individuals) for your convenience.

We anticipate receiving your follow-up responses to our meet and confer by January 4, 2011 so that we can prepare our report regarding the status of the custodian lists to the Special Master by January 5, 2011 pursuant to Judge Legge's Procedural and

---

December 24, 2010 (two days after the agreed upon date for the custodian list exchange for Hitachi's Asia Entities).

Diane L. Webb
December 31, 2010
Page 8 of 8

Scheduling Order.  Plaintiffs also propose a further meet and confer on January 7, 2010.
Please let us know your availability.

Sincerely,

*/s/ R. Alexander Saveri*
R. Alexander Saveri
Saveri & Saveri, Inc.
Interim Lead Counsel for the Direct Purchaser
Plaintiffs

*/s/ Lauren C. Russell*
Lauren Russell
Trump Alioto Trump & Prescott LLP
Interim Lead Counsel for the Indirect Purchaser
Plaintiffs

cc.     Jennie Lee Anderson
        Jessica Moy
        Steven F. Benz
        Thomas B. Samuels
        Andrew Shen

# EXHIBIT B

Morgan, Lewis & Bockius LLP
One Market, Spear Street Tower
San Francisco, CA 94105
Tel:  415.442.1000
Fax:  415.442.1001
www.morganlewis.com

# Morgan Lewis
C O U N S E L O R S   A T   L A W

**Diane L. Webb**
Partner
415.442.1353
dwebb@morganlewis.com

## VIA ELECTRONIC MAIL

January 4, 2010

R. Alexander Saveri, Esq.
Saveri & Saveri, Inc.
706 Sansome Street
San Francisco, California 94111
*Interim Lead Counsel for Direct Purchaser Plaintiffs*

Lauren C. Russell, Esq.
Trump, Alioto, Trump & Prescott LLP
2280 Union Street
San Francisco, California 94123
*Interim Lead Counsel for Indirect Purchaser Plaintiffs*

Re:     <u>*In Re: Cathode Ray Tube (CRT) Antitrust Litigation*, No. 07-5944 SC, MDL No. 1917:</u>
        <u>December 31, 2010 Correspondence</u>

Dear Rick and Lauren:

        We write in response to your letter sent the evening of December 31, 2010, regarding the above-referenced matter and the parties' meet-and-confer efforts to arrive at a joint custodian list.

## I.      INTRODUCTION

        On December 17, 2010, and December 21, 2010, Defendants Hitachi, Ltd. ("HTL"), Hitachi Displays, Ltd. ("HDP"), Hitachi Asia, Ltd. ("HAS"), Hitachi America, Ltd. ("HAL"), and Hitachi Electronic Devices (USA), Inc. ("HED(US)") (collectively, the "Hitachi Defendants") exchanged with Direct Purchaser Plaintiffs and Indirect Purchaser Plaintiffs (jointly, "Plaintiffs") proposed custodian lists, as required by Judge Legge's November 17, 2010 Procedural and Scheduling Order, Dkt. No. 809, ("November 17, 2010 Order").

**Morgan Lewis**
COUNSELORS AT LAW

R. Alexander Saveri, Esq.
Lauren C. Russell, Esq.
Page 2

In total, Plaintiffs identified an unfathomable number of potential custodians – approximately *two hundred*. Plaintiffs' overly broad and unduly burdensome proposed custodian list is completely contrary to Judge Legge's stated purpose of the meet-and-confer – to devise a mechanism to manage the scope of discovery.

Rather than proposing a reasonable set of proposed custodians, Plaintiffs attempt to expand discovery and the Hitachi Defendants' discovery burden in this matter exponentially. In fact, Plaintiffs' lists seem to include nearly every Hitachi individual whose name appeared on any document or information provided by the Hitachi Defendants or other defendants thus far.

Plaintiffs' proposed custodian lists go far beyond individuals the Hitachi Defendants identified in their initial disclosures, supplemental interrogatory responses, and, of course, their own proposed custodian lists. Many of Plaintiffs' proposed custodians do not appear on any documents or in information provided by the Hitachi Defendants. And, Plaintiffs fail to provide any justification as to why such individuals may have potentially relevant information and should be included. Instead, Plaintiffs attempt to turn the meet-and-confer process on its head by submitting a blunderbuss list and demanding the Hitachi Defendants provide reasons why these unknown individuals should *not* be included as custodians. In sum, Plaintiffs' proposed custodian lists are wholly unreasonable, unduly burdensome, overly broad, oppressive, and must be narrowed significantly.

Notwithstanding that *Plaintiffs* should be prepared to explain why approximately two hundred proposed custodians is appropriate and why such expansive discovery is warranted (which it is not), the Hitachi Defendants in good faith agreed to investigate and provide additional information regarding certain proposed custodians, including determining whether potentially responsive ESI or documents exists. Understandably, the Hitachi Defendants will not agree on a particular proposed custodian if ESI and documents no longer exist – this is particularly important given that many of Plaintiffs' proposed custodians left the Hitachi Defendants' employ years before this lawsuit was filed.

Nonetheless, Plaintiffs' December 31, 2010 letter unilaterally and unreasonably demands the Hitachi Defendants respond to requests for additional information by January 4, 2010. As we informed you during the initial December 28, 2010 meet-and-confer conference, many of our client contacts were unavailable over the Christmas and New Year holidays, a fact you understood and acknowledged. In fact, one of our clients informed us they will not be to respond to our requests until after January 10, 2011. Thus, while we are actively collecting information to further our next meet-and-confer session, Plaintiffs' unilateral demand that the Hitachi Defendants respond by January 4, 2010, is patently unreasonable and contrary to your representations that you understood that the December 28th meet and confer was an initial starting point and that the meet-and-confer process would continue as each side gathered and exchanged more information.

## Morgan Lewis
COUNSELORS AT LAW

R. Alexander Saveri, Esq.
Lauren C. Russell, Esq.
Page 3

Plaintiffs' attempt to use the January 5, 2011 deadline for providing a "report to the Special Master," as required by the November 17, 2010 Order, to demand complete responses to the extensive information Plaintiffs requested during the December 28, 2010 teleconference is a pretense. The Hitachi Defendants complied with the November 17, 2010 Order by providing the Evidentiary Proffer, their organization charts to the extent they still exist, and exchanged proposed custodian lists. Furthermore, HTL, HDP, and HED(US) produced supplemental responses to Direct Purchaser Plaintiffs' Interrogatory No. 2.

The Hitachi Defendants have engaged and continue to engage in the meet-and-confer process in good faith. Nothing in the November 17, 2010 Order requires that the Hitachi Defendants and Plaintiffs complete the meet-and-confer process by January 5, 2011. In fact, Plaintiffs agree with this point. During a conversation I had with Lauren Russell in mid-December, we discussed and agreed that our December 28th meet and confer would be an initial starting point that would likely result in both parties collecting additional information to facilitate further meet and confers and that on January 5, 2011, we would report the same to Judge Legge, namely, that the parties had met and conferred and that such efforts were continuing.

To continue this process, below we address specific issues you raised in the December 31, 2010 correspondence.

## II.   ON GOING MEET-AND-CONFER EFFORTS

### A.   Plaintiffs Erroneously Assume That Individuals The Hitachi Defendants Identified in Their Supplemental Interrogatory Responses are *Per Se* Appropriate Custodians and from Whom Documents and/or ESI is Available.

Plaintiffs incorrectly assert that the "custodial files" for the individuals identified in the Hitachi Defendants' supplemental interrogatory responses "should be searched based on . . . Hitachi's own admission that these individuals had managerial responsibility for setting prices," and that they should be included "on the joint custodian list without further discussion." Plaintiffs are incorrect.

First, Plaintiffs characterization of Interrogatory No. 2 does not accurately describe the call of the interrogatory. In fact, Interrogatory No. 2 seeks the identification of employees with "managerial responsibility for *recommending, reviewing, setting or approving* prices, bids, quotes, or rebates . . . ." (emphasis added). Thus, the individuals identified in the supplemental responses did not necessarily have managerial responsibility for setting prices and some simply may have had the ability to recommend or review prices as part of their job responsibilities.

Second, as HTL explicitly stated in its supplemental interrogatory response, it is "unable to determine whether all employees" it identified "had authority or were involved in" the activities listed in the interrogatory. Accordingly, it is improper for Plaintiffs' to contend that *all*

**Morgan Lewis**
C O U N S E L O R S   A T   L A W

R. Alexander Saveri, Esq.
Lauren C. Russell, Esq.
Page 4

employees identified in the Hitachi Defendants' supplemental interrogatory responses are *per se* reasonable custodians. That is, in fact, the purpose of our joint meet-and-confer efforts, to try to arrive at appropriate custodians and manage discovery.

Third, it is one thing for the Hitachi Defendants to identify individuals who *may* possess potentially relevant information, it is quite another for Plaintiffs to attempt to designate all such individuals as custodians from whom discovery *will* be sought. As the Hitachi Defendants informed Plaintiffs multiple times, because of the many years that have passed since the Hitachi Defendants were involved in the CRT Tubes and Finished CRT Products businesses, many such individuals are no longer employed by any Hitachi Defendant. Thus, for many individuals, custodial files simply no longer exist. The Hitachi Defendants are in good faith reconfirming which custodial files are available. The Hitachi Defendants will not agree to include certain custodians without reconfirming whether custodian-specific information is, in fact, available.

**B.    Further Meet-and-Confer Discussions Regarding Custodians Related to CRT Finished Products are Stayed.**

As you are aware, pursuant to Judge Legge's December 29, 2010 Order Granting Extensions of Time for Finished CRT Products Discovery, Dkt. No. 832 ("December 29, 2010 Order"), "the deadlines with respect to meet and confer discussions . . . regarding the scope of discovery relating to Finished CRT Products are extended until January 31, 2011." December 29, 2010 Order, ¶ 2. Accordingly, further discussions regarding proposed custodians relating to the Hitachi Defendants' involvement in Finished CRT Products are stayed and will not take place until after Plaintiffs comply with the December 29, 2010 Order and produce Finished CRT Products discovery in response to Defendants' requests. This includes meet-and-confer discussions regarding HAL,[1] HAS,[2] and HTL[3] proposed custodians.

---

[1] As demonstrated in the Hitachi Defendants' Evidentiary Proffer, Dkt. No. 817, HAL's Electron Tube Division was merged with HED(US) in April 1998. Evidentiary Proffer at 5:10-13. Any documents or data related to HAL's sale of CRT tubes were transferred to HED(US) pursuant to the merger.

[2] Additionally, while HAS provided its proposed list of custodians pursuant to the November 17, 2010 Order, HAS's sales territory *never* included the United States. Evidentiary Proffer at 4:16-17, 4:21-22, 4:26-5:2.

[3] As demonstrated in the Evidentiary Proffer, HTL spun off its Display Group to HDP in October 2002. Evidentiary Proffer at 2:16-19. As a result, "HDP retains documents relating to HTL's Display Group's manufacturing and sale of CDT tubes and CPT tubes." *Id.* at 4:3-5.

R. Alexander Saveri, Esq.
Lauren C. Russell, Esq.
Page 5

**Morgan Lewis**
COUNSELORS AT LAW

### C.   Plaintiffs' Custodian Lists Improperly Include a Number of Irrelevant Boards of Directors Proposed Custodians.

As we stated during the initial meet and confer, among other things, Plaintiffs have not provided any justification as to why individuals whose only capacity is/was that of a member of a board of directors of a Hitachi Defendant should be included as a proposed custodian. This again demonstrates the broad and unreasonable approach Plaintiffs took in identifying their proposed custodians. None of these individuals were identified by the Hitachi Defendants in their initial disclosures or in the Hitachi Defendants' supplemental responses to Direct Purchaser Plaintiffs' Interrogatory No. 2. These individuals are[4]:

- Eisuke Arai – HED(US)
- Maseo Hisada – HED(US)
- Tadashi Ishibashi – HED(US)
- Shuji Nakahishi – HED(US)
- Tsuneo Tanaka – HED(US)
- Koichi Ueno – HED(US)

### D.   Plaintiffs Fail to Provide Sufficient Information Regarding Several Proposed Custodians.

Plaintiffs fail to provide information regarding several proposed custodians; namely, from what source of information these individuals' names were derived. The Hitachi Defendants are unable to determine whether these individuals should be considered as potential custodians without such information. For the following individuals, please provide the source of information from which Plaintiffs identified the following individuals:

- Ideo Suzuku – HED(US)
- Tsunco Tanaka – HED(US)
- Maso Taniguichi – HED(US)
- Toshizaku Akimoto – HTL
- Hideo Tsutsui – HTL
- Yamamoto Kazuaki – HTL
- Tajimi Yoshitaka – HTL
- Tamura Yukio – HTL
- M. Fu[illegible] – HAL
- H. [illegible] – HAL

---

[4] To the extent there are other such board members that Plaintiffs identified with respect to Hitachi Defendant entities involved in Finished CRT Products, those will addressed at a later date should a meet and confer on Finished CRT Products become necessary.

Morgan Lewis
COUNSELORS AT LAW

R. Alexander Saveri, Esq.
Lauren C. Russell, Esq.
Page 6

- Y. Shil[illegible] – HAL
- G. Wilson – HAL

Once Plaintiffs provide the sources from which they identified the above individuals, we will be able to investigate whether these individuals are suitable custodians.

In addition, Plaintiffs proposed five custodians who are identified as related to "SEG Hitachi": Guojun Yang, Jianmin Huang, Peng Guo, Chenqun Li, and Yufang Wang. As the Hitachi Defendants previously informed Plaintiffs, and as Plaintiffs stated they understood during the meet and confer, SEG Hitachi is not a Hitachi entity and Morgan Lewis does not represent SEG Hitachi. If Plaintiffs can provide information as to why they believe such individual are properly identified as Hitachi Defendant custodians, we would be happy to discuss this issue with you further.

**E.      Plaintiffs are Not Entitled to Custodian Information Protected by The Attorney-Client Privilege and/or Attorney Work Product Doctrine and Subject to the DOJ Stay.**

During our meet-and-confer teleconference, and in Plaintiffs' December 31, 2010 letter, they requested "what criteria Hitachi used to pull [data previously loaded into their database in connection with this case and the United States Department of Justice's related grand jury investigation], including which individuals' files have been pulled and loaded into the database." This is not the appropriate focus. The focus should be the identification of and agreement on a list of relevant custodians.

Additionally, by way of this request Plaintiffs improperly seek information protected by the attorney-client privilege and attorney-work-product doctrine, as well as information that is prohibited from disclosure by the October 27, 2010 Stipulation and Order to Extend Limited Discovery Stay ("October 27, 2010 Discovery Stay") entered in this case. The information regarding the criteria used to collect relevant data in response to the Department of Justice's ("DOJ") grand jury investigation, a separate case from the instant litigation, inherently will reflect the mental processes of the Hitachi Defendants' attorneys in connection with the grand jury investigation and are protected by the attorney work product doctrine and/or the attorney-client privilege. *See Sporck v. Peil*, 759 F.2d 312, 316 (3d Cir. 1985) (finding attorney's process in selecting documents was protected by work product doctrine, as materials that reveal attorney's thought processes must be afforded protection). Plaintiffs are not entitled to the Hitachi Defendants' work product.

Moreover, the information Plaintiffs demand will reveal the specific subject matters at issue in the grand jury investigation, including, but not limited to, the recipients of subpoenas and negotiations with the DOJ, all of which is explicitly prohibited by the October 27, 2010 Discovery Stay. The "criteria" used to select data and other information collected with respect to the grand jury investigation will necessarily reveal facts regarding the subject matter of the grand



R. Alexander Saveri, Esq.
Lauren C. Russell, Esq.
Page 7

jury investigation. Production of such information is specifically prohibited by the October 27, 2010 Discovery Stay. Accordingly, Plaintiffs are not entitled to the requested information for this additional reason.

The Hitachi Defendants will, however, be prepared to meet and confer as to whether specific custodial information is available as part of the ongoing discussions regarding appropriate custodians.

### F.     The Hitachi Defendants' Production of Organization Charts is Not Deficient.

Contrary to Plaintiffs' assertion, the Hitachi Defendants produced responsive organization charts as required by the November 17, 2010 Order, to the extent they can be located. Plaintiffs complain that HAL and HAS did not produce organization charts for the years 1995-1998, and 1995-2005, respectively. HAL and HAS produced responsive organization charts in their possession, custody, and control. If additional responsive organization charts are located for the time period requested, those documents will be produced.

Moreover, HDP's organizational charts are not deficient as Plaintiffs claim. As Plaintiffs were informed during the initial meet-and-confer teleconference, and during a previous telephone conversation with Ms. Russell, HDP redacted sections of its organization charts that contained information that is not related to the CRT tubes business. Such information is not relevant to this litigation, and Plaintiffs acknowledged during our December 27 telephone conference that they are not entitled to such information. Plaintiffs' complaint that any redactions have "drastically reduced the usefulness of the documents" is belied by the fact that Plaintiffs relied heavily on the organization charts to create proposed custodian lists that comprise nearly two hundred custodians.

Nonetheless, to the extent Plaintiffs have questions regarding the organizational structure of HDP's divisions involved in the CRT tubes business as a result of these redactions, please provide us with your questions.

## III.   CONCLUSION

The Hitachi Defendants are engaged fully in the meet-and-confer process regarding the identification of appropriate custodians from whom discovery should be sought and currently are seeking additional information to facilitate that process. Plaintiffs, however, must demonstrate a willingness to approach this process as a discovery management tool, not as an unlimited mechanism to expand the scope of discovery and burden on the Hitachi Defendants.

We look forward to discussing the proposed custodian lists with you further once we obtain more information to facilitate that process and look forward to your response to our questions above.

**Morgan Lewis**
COUNSELORS AT LAW

R. Alexander Saveri, Esq.
Lauren C. Russell, Esq.
Page 8

Very truly yours,

Diane L. Webb

cc:   Guido Saveri, Esq.
      Mario Alioto, Esq.
      Jennie Anderson, Esq.
      Steven Benz, Esq.