| | |
|---|---|
| **SAVERI & SAVERI, INC.**<br>706 SANSOME STREET<br>SAN FRANCISCO, CALIFORNIA 94111<br>TELEPHONE: (415) 217-6810<br>TELECOPIER: (415) 217-6813 | *Trump Alioto Trump & Prescott*<br>ATTORNEYS LLP<br>2280 Union Street<br>San Francisco, California 94123<br>(415) 563-7200<br>FAX (415) 346-0679 |

February 9, 2011

Your Honor:

Pursuant to the Court's Procedural and Scheduling Order Re: Motions Against the Hitachi Defendants of January 19, 2011 ("Scheduling Order"), the Direct Purchaser Plaintiffs and Indirect Purchaser Plaintiffs (collectively, "Plaintiffs") respectfully submit this report.

The parties met and conferred in person on February 3, 2011 to discuss Hitachi's responses to Plaintiffs' proposed list of 59 custodians ("Plaintiffs' List") submitted to Your Honor during the hearing on January 13, 2011. This report provides a status update on the parties' continuing negotiations regarding the designation of Hitachi custodians (*see* Exhibit A), identifies areas of dispute, and requests that Your Honor resolve these disputes.

### 1. Status of the Parties' Discussions Regarding Custodians

#### a. Plaintiffs' List of 59 Custodians

Hitachi has agreed to designate 16 additional individuals from Plaintiffs' List as custodians. These 16 custodians, added to the 18 previously agreed-upon custodians, total 34 agreed-upon Hitachi custodians to date.

Hitachi is continuing to search for information relating to 10 individuals on Plaintiffs' List. Hitachi informed Plaintiffs that it will complete this search and report back to Plaintiffs by the end of this week.

For 11 of the individuals on Plaintiffs' List, Hitachi requested more information to help identify them. Plaintiffs provided Hitachi with the Bates numbers of the documents where these names appear and the original Chinese characters of the names to address transliteration issues. Hitachi is continuing to search for these 11 individuals using this additional information. Hitachi has informed Plaintiffs that it will complete this search and report back to Plaintiffs by the end of this week.

For 20 of the 59 individuals on Plaintiffs' List, Hitachi responded that "no custodian specific information exists." Many of these individuals were previously identified by Hitachi as individuals with knowledge regarding the case. Plaintiffs asked

Hon. Charles A. Legge
January 5, 2011
Page **2** of **5**

Hitachi to explain this apparent contradiction and provide further details about the absence of documents for these individuals, including the date and circumstances of the destruction of these individuals' files. For those individuals who "departed" a particular Hitachi entity (*see* Exhibit A), Plaintiffs asked Hitachi to confirm that those individuals did not continue to work for another Hitachi entity. If they left the Hitachi group entirely, Plaintiffs asked for their last known contact information. Hitachi agreed to get back to Plaintiffs regarding this additional information and agreed to produce the document retention policies of each Hitachi entity for the relevant periods.

Plaintiffs also asked Hitachi to elaborate on the search criteria used to determine whether responsive information for each custodian exists, including whether Hitachi is searching back-up tapes. Hitachi stated that it did not search back-up tapes as part of its search for custodian-specific information.

Plaintiffs requested that Hitachi provide Plaintiffs with relevant details about available back-up tapes – including the location of the tapes, what format they are in, the cost of restoring the tapes to usable format, and whether a method exists to identify specific backup tapes that are likely to have responsive information for custodians on Plaintiffs' List. Hitachi conceded that custodian-specific information may exist on back-up tapes, but stated that it wanted to postpone any discussion of back-up tapes until later. Plaintiffs disagree with this position, as further explained in Section 2(a) below.

### b. Possible Additional Custodians

Given that Hitachi has so far located custodian files for only 16 out of the 59 individuals on Plaintiffs' List, Plaintiffs explained that it may be necessary to designate additional custodians to ensure sufficient coverage for the pricing, sales, marketing, manufacturing, and production of the relevant products for each Hitachi entity throughout the relevant class period. Both parties agreed to examine the current list of 34 custodians and identify gaps in coverage. The parties will continue to meet and confer about potential additional Hitachi custodians.

Plaintiffs also anticipate that, pursuant to the Court's Scheduling Order, Hitachi will cure its deficient organizational chart production so that the parties can use this information to decide if any additional custodians are necessary.

### 2. Issues in Dispute

### a. Back-up Tapes

Hitachi wants to postpone any discussion of back-up tapes until after the parties have completed their discussions of custodians for whom Hitachi has active custodian files. Hitachi's position is contrary to Federal Rule of Civil Procedure 26(b)(1), which requires Hitachi to provide Plaintiffs with information regarding "the existence,

description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter."

At this stage, Plaintiffs are not asking Hitachi to restore any back-up tapes. Plaintiffs merely want to know, and are entitled to know, what back-up tapes exist, what format they are in, where they are located, whether there is a method to determine if custodian-specific information is stored on a specific back-up tape, and the cost to restore the back-up tapes to a usable format. Plaintiffs need this information to be able to evaluate Hitachi's burden to restore any back-up tapes. Moreover, it is particularly important that Hitachi provide this information in this case because it has no custodian-specific information in its active files for many of the individuals on Plaintiffs' List. Thus, Plaintiffs request that Your Honor order Hitachi to provide Plaintiffs with the requested information regarding Hitachi's back-up tapes.

### b. Search Terms

During the meet and confer, Plaintiffs learned for the first time that Hitachi has begun searching the agreed-upon custodians' files by applying search terms. Plaintiffs asked to see the list of search terms that Hitachi is using and explained that, if necessary, Plaintiffs would suggest additional search terms. But Hitachi refused to disclose their search terms list to Plaintiffs. Hitachi was unable to cite to any legal authority for its position. Hitachi merely stated that it is too late for Plaintiffs to get involved because it has already run the searches.

Several federal courts have recently issued opinions stating that cooperation amongst counsel in the formation and use of search terms is essential. *See, e.g., William A. Gross Constr. Assoc., Inc. v. Am.Mafrs. Mut. Ins. Co.*, 256 F.R.D. 134, 136 (S.D.N.Y. 2009) (finding that "the best solution in the entire area of electronic discovery is cooperation among counsel," and that the parties should cooperate in "designing search terms"). The Sedona Conference Cooperation Proclamation, upon which these recent opinions rely, counsels parties to "*[j]ointly* develop automated search and retrieval methodologies to cull relevant information." *The Sedona Conference Cooperation Proclamation,* July 2008, page 4 (emphasis added).[1]

Moreover, courts counsel against "secret" or "unilateral" use of search terms, believing that transparency will lead to a more effective search that should reduce the time and cost of gathering documents. In *In re Seroquel Products Liability Litig.,* 244 F.R.D. 650, 662 (M.D. Fla. 2007), the court granted sanctions against the defendant for developing search terms "in secret" and failing to cooperate with the plaintiffs:

> [W]hile key word searching is a recognized method to winnow relevant documents from large repositories, *use of this technique must be a cooperative and informed process.* Rather than working with Plaintiffs

---

[1] A list of Judicial Endorsements of the Sedona Conference Cooperation Proclamation, as of September 30, 2010, is submitted herewith as Exhibit B.

> from the outset to reach agreement on appropriate and comprehensive search terms and methods, [defendant] undertook the task *in secret*.
>
> *   *   *
>
> Many of the other technical problems identified by [plaintiffs] likely could have been resolved far sooner and less expensively had [defendant] cooperated by fostering consultation between the technical staffs responsible for production. Instead, [defendant] shielded its third party technical contractor from all contact with Plaintiffs. *This approach is antithetical to the Sedona Principles and is not an indicium of good faith.*

*Id.* (emphasis added).

In light of the foregoing, Plaintiffs request that Your Honor order Hitachi to disclose its search terms list to Plaintiffs and to cooperate with Plaintiffs and their e-discovery experts to jointly develop appropriate and comprehensive search terms and methodologies for searching.

### c. Custodians Discovered During Hitachi's Investigation

Pursuant to Your Honor's comments during the January 13, 2011 Hearing, Plaintiffs asked Hitachi to confirm whether they have discovered any responsive Hitachi individuals that are not on Plaintiffs' List or included in the 18 previously agreed-upon custodians. *See* Exhibit C, 1/13/2011 Hearing Trans., at p. 64 (J. Legge: "I think what we have to do is rely upon [Ms. Webb's] good faith to come back after she's responded to the chart of 59 here."). Hitachi refused to respond to Plaintiffs' inquiry, again citing the concern that Plaintiffs are trying to discover information about the DOJ investigation.

The October 27, 2010 Stipulation And Order To Extend Limited Stay of Discovery only prohibits discovery into communications between a witness and the DOJ, and discovery regarding the details of the DOJ investigation itself. Plaintiffs are not asking for information about either category. Accordingly, Plaintiffs request that Your Honor order Hitachi to confirm that, to the best of its knowledge, no other responsive custodians exist.

### 3. **Transactional Data**

The parties also briefly discussed transactional data. Specifically, Plaintiffs explained the relevance of worldwide transactional data and asked Hitachi to provide them with information about the transactional data in Hitachi's possession– including, but not limited to, the fields of available data, the format of the data (whether hard copy or electronic for relevant time periods), and whether Hitachi's U.S. sales data is segregated from sales data for other geographic locations. Hitachi indicated they would "get back" to Plaintiffs regarding the information Plaintiffs requested. The parties will continue to meet and confer regarding transactional data.

Hon. Charles A. Legge
January 5, 2011
Page **5** of **5**

### 4. Conclusion

Plaintiffs' meet and confer with Hitachi is continuing. In the meantime, to ensure that discovery in this litigation moves forward without further delay, Plaintiffs request the following immediate relief on disputed issues where the parties have reached an impasse. Plaintiffs request that Your Honor order Hitachi to:

1. Provide Plaintiffs with the requested information on back-up tapes;
2. Disclose its search terms list to Plaintiffs and to cooperate with Plaintiffs and their e-discovery experts to jointly develop appropriate and comprehensive search terms and methodologies for searching; and
3. Confirm that no other responsive custodians exist.

Respectfully submitted,

*Guido Saveri*
Guido Saveri
Interim Lead Counsel for the Direct Purchaser Plaintiffs

*Mario N. Alioto*
Mario N. Alioto
Interim Lead Counsel for the Indirect Purchaser Plaintiffs