# EXHIBIT C

Proceedings

```
 1   think --
 2             SPECIAL MASTER LEGGE:  If you give a complete
 3   answer to this, that is, this chart, suppose you agree
 4   on all of them and you produce everything that they've
 5   asked for, that is going to include, is it not, some
 6   material that you've got in your, quote, previously
 7   collected box?
 8             MS. WEBB:  Absolutely, your Honor.
 9             SPECIAL MASTER LEGGE:  Probably.  And so I
10   don't see any harm by continuing that.
11             MR. GUIDO SAVERI:  Your Honor --
12             MR. SIMON:  Your Honor --
13             Guido?
14             MR. GUIDO SAVERI:  Excuse me.
15             MR. SIMON:  I just was going to ask one
16   question, which would clarify in my mind, because you
17   have to ask the flip side of it too.  And I don't know
18   the answer to it, honestly.  Everybody knows the details
19   more than I do.
20             But it's sounding like unless we affirmatively
21   put somebody on that list from whom they collected, then
22   we don't necessarily get that name affirmatively from
23   defendant.
24             SPECIAL MASTER LEGGE:  I think that's right.
25             MR. SIMON:  Well, then how do we know if, as
```

Proceedings

1   Mr. Saveri was saying, then that those documents were
2   collected from legitimate custodians? And does that
3   mean those documents don't get produced to us? Because
4   the list doesn't necessarily subsume the entirety of who
5   they collected from as legitimate custodians.
6           SPECIAL MASTER LEGGE: That's probably true.
7           MR. SIMON: So, but then there's a gap.
8           SPECIAL MASTER LEGGE: Probably true.
9           MR. SIMON: And I'd be interested in knowing
10  how we close that gap.
11          MS. WEBB: Your Honor, the notion that we
12  collected from someone and it was a relevant custodian
13  is one, I think, we need to take a look at, because what
14  we're trying to come up with are the relevant
15  custodians.
16          SPECIAL MASTER LEGGE: That's right.
17          MS. WEBB: So we -- and I've got to be careful
18  about what I say. But hypothetically, if we
19  overcollected materials, then I don't see why plaintiffs
20  get access to every custodian that was collected from.
21  In fact, that flies in the face of trying to work out a
22  custodian list that everybody can agree upon.
23          MR. SIMON: I guess what I'm asking is -- and
24  I'm not accusing anybody of anything. I'm just asking.
25  I don't want to get into a gotcha situation that there

61

1   was a group of, say, ten names from whom things were
2   collected for purposes of the DOJ subpoena but they
3   don't appear on the list because we don't have a way to
4   know about them, and then there becomes a group of
5   documents associated with those ten people that we never
6   end up getting in the case. That's what I'm concerned
7   about.
8           And there's a way to do that without them
9   revealing who got the DOJ -- you know, who they searched
10  for DOJ purposes by just --
11          MR. GUIDO SAVERI: Turn it over.
12          MR. SIMON: -- having them affirmatively
13  saying which custodians, in addition to the ones we've
14  identified, might be, you know, subject to their
15  searches.
16          And we're not trying -- I don't think
17  anybody's trying to get from defendants the disclosure
18  of what was done in connection with their investigation
19  of the DOJ subpoenas. We just want to make sure we
20  cover the universe of who the relevant custodians are.
21          There's a gap there. I'm not sure -- you
22  know, it's kind of like the Nixon tapes. I want to make
23  sure we don't have 18 minutes that are missing.
24          MS. WEBB: I think that Mr. Simon's
25  characterized it correctly. It's the relevant

```
 1   custodians.  And I, again, can't get into the details;
 2   but based on what I know, I do not believe there are
 3   going to be those gaps.
 4            MR. SIMON:  How do we -- I mean, how do we
 5   know that, though?
 6            Maybe, your Honor, one thing that could
 7   happen, if you were willing to help us out and there's
 8   this concern about we don't want to necessarily convey
 9   what we collected for purposes of the DOJ subpoena,
10   perhaps counsel could give to you in camera the list and
11   you can compare it to the list we have.  And if you're
12   assured that it's totally 100 percent overlapping or
13   there's just one or two, that's one thing.  But if there
14   appears to be 10 or 15 that we don't have on our list,
15   then we need to address that issue.
16            SPECIAL MASTER LEGGE:  Well --
17            MS. WEBB:  I don't think --
18            SPECIAL MASTER LEGGE:  -- let's --
19            MS. WEBB:  -- we can do that --
20            SPECIAL MASTER LEGGE:  Let's not do that.
21            MS. WEBB:  -- your Honor, because --
22            SPECIAL MASTER LEGGE:  Yeah, let's not do
23   that.
24            MR. SIMON:  Okay.  I just want to --
25            SPECIAL MASTER LEGGE:  I'm taking what you
```

63

```
 1    said --
 2              MR. SIMON:  -- express the issue --
 3              SPECIAL MASTER LEGGE:  I'm taking what you
 4    said, and I think counsel is agreeing with you, there's
 5    a possibility there could be a gap.
 6              I think what we have to do is rely upon her
 7    good faith to come back and after she's responded to the
 8    chart of 59 here, whether there are.  And in good faith,
 9    you've gotten documents from others that are not on this
10    list.
11              And then we'll see what we can do about --
12              MR. RICK SAVERI:  That's perfect.
13              SPECIAL MASTER LEGGE:  -- filling in the gap.
14              MR. ALIOTO:  That's fine.
15              MR. RICK SAVERI:  That's great.
16              SPECIAL MASTER LEGGE:  Okay.
17              MR. GUIDO SAVERI:  I think the record should
18    reflect, your Honor, that Ms. Webb made three points why
19    she thought it would be improper to get the names of the
20    DOJ people; one, two, three.  I think the record should
21    reflect that we don't agree with her at all.  We think
22    she's wrong.
23              SPECIAL MASTER LEGGE:  I understand.  Okay.  I
24    understand.  I'm not asking -- silence is not an
25    admission.
```

64

```
 1          MR. GUIDO SAVERI:  That's right.
 2          MR. ALIOTO:  This would be an issue for
 3  another day, your Honor.
 4          SPECIAL MASTER LEGGE:  Yes.
 5          MR. GUIDO SAVERI:  I remember, this is when I
 6  was going to law school, your Honor, I learned something
 7  about something called a negative pregnant.
 8          SPECIAL MASTER LEGGE:  Yes.
 9          MR. GUIDO SAVERI:  Wasn't that?
10          In other words, if you didn't deny it, you, by
11  implication, admit it.
12          SPECIAL MASTER LEGGE:  No, no.
13          MR. GUIDO SAVERI:  What was that?
14          SPECIAL MASTER LEGGE:  No, no, no.  A negative
15  pregnant is where you ask a question whereby giving an
16  answer, you are impliedly answering or denying something
17  else.
18          MR. SIMON:  Right.  When did you stop beating
19  your spouse?
20          SPECIAL MASTER LEGGE:  It's a content
21  question, not a silence question.
22          All right.  Okay.  Now, there is another
23  category you talked about in your letters, and that was
24  the board of directors.
25          Are board members listed on this chart of 59?
```

65