Hon. Charles A. Legge (Ret.)
JAMS
Two Embarcadero Center, Suite 1500
San Francisco, CA 94111
Telephone: (415) 774-2644
Fax: (415) 982-5287
Special Master

JAMS

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | **No. 07-5944 SC**<br>**MDL No. 1917**<br>**JAMS Reference No. 1100054618** |
| CRAGO, INC., et al.,<br><br>                    Plaintiffs,<br><br>        vs.<br><br>CHUNGHWA PICTURE TUBES, LTD., et al.,<br><br>                    Defendants. | **REPORT AND RECOMMENDATIONS RE: MOTIONS FOR DISCOVERY AGAINST THE HITACHI DEFENDANTS** |
| This Document Relates to<br>ALL CASES | |

To the Hon. Samuel Conti, United States District Judge:

Motions have been filed by the direct and indirect plaintiffs against the named Hitachi defendants[1] (collectively called "Hitachi"), regarding plaintiffs' discovery requests to Hitachi. The motions have been the subject of several hearings and prior orders; the orders are documents Nos. 809, 816, 838 and 866.

A further hearing was held by the Special Master on March 7, 2011, at which several issues were discussed. The parties have engaged in numerous meet and confer sessions, and

[1] Hitachi, Ltd., Hitachi Displays, Ltd., Hitachi Asia, Ltd., Hitachi America, Ltd., and Hitachi Electronic Devices (USA), Inc.

1

while such sessions will continue, the Special Master is of the opinion that decisions on some of the issues need to be made at this time so that the discovery processes can move forward more rapidly.  This constitutes the report and recommendations of the Special Master with respect to those issues.

      1.    <u>Designation of Custodians.</u>

At prior hearings, the parties agreed that they would attempt to resolve certain of the discovery disputes by the means of agreeing upon named Hitachi custodians, and producing the relevant documents of those custodians.  The parties initially agreed upon approximately 17 custodians.  In addition, plaintiffs have requested additional custodians to which Hitachi has not agreed.  The total number of custodians now under consideration is approximately 106, not including the initial 17.  Their identities and the status of the discussions between Hitachi and plaintiffs as to each are set forth in an exhibit.  The exhibit is attached to this report, but for reasons of both volume and confidentiality, the Special Master is not filing the exhibit on Pacer.

      (a)    Hitachi has already undertaken some searches with respect to the named persons.  As to some, Hitachi states that it can find no relevant information, often because the person has left the employ of Hitachi.  In such instances, this has caused plaintiffs to request information about document backup tapes and about last known contacts, which two subjects will be separately discussed below.

      (b)    As to the custodians whose records are being searched, Hitachi has agreed to produce the documents on a rolling basis, with all of such discovery estimated to be produced within six months.

      (c)    As a result of meet and confer processes, the parties have now agreed that the following additional persons be designated as custodians: Nos. 4, 5, 6, 8, 11, 12, 22, 30-35, 40, 42, 56, 57 and 60.

      (d)    As to certain designees, Hitachi has agreed to do further investigation: Nos. 2, 14, 20, 25, 26, 28, 45, 49, 50, 52, 63-69, 99 and 106. The Special Master recommends to the Court that Hitachi should complete its investigation of those individuals within thirty days, and that

first priority be given to Nos. 2, 14, 28, 45, and 50.

(e)     No further action is required of Hitachi as to Nos. 46, 47, 51, 53, 54 and 55 unless further specific identification is provided by plaintiffs.

(f)     Proposed custodians Nos. 83 through 98 were identified by plaintiffs because the documents which Chunghwa supplied to the Department of Justice included business cards of those representatives of Hitachi.  Those cards in the possession of Chunghwa indicate that the individuals did meet someone at Chunghwa.  However, those meetings might have no relevance to the subject of this litigation.  And we do not know what question or inquiry from the Department of Justice caused the cards to be produced.  The names of these Hitachi representatives have not otherwise appeared in the Chunghwa documents or in Hitachi's responses to interrogatories.  Absent some other indication of the possible participation by the Hitachi representatives in conduct relevant to this case, Hitachi does not want the burden of doing an investigation of each of them.  Plaintiffs, on the other hand, seek to compel Hitachi to inquire as to each of them, particularly whether they participated in meetings regarding pricing or production.

The Special Master is of the opinion that compelling Hitachi at this time to make multiple company-wide inquiries as to each of these persons is not supported by a sufficient showing of relevance to offset the obvious burden and expense.  In addition, Hitachi's responses to the other pending discovery requests could eliminate or reduce the significance of those individuals.  The Special Master therefore recommends that this request be denied, without prejudice to renewing the request at the time of the completion by Hitachi of the production of its other documents to plaintiffs.

2.      Last Contact Information.

As noted, numerous of the requested custodians have left the employ of Hitachi.  Plaintiffs therefore request their last known contact information.  Such a request is a general practice under the Federal Rules of Civil Procedure, and is consistent with Rule 26(a)(1)A.  While there is a burden on Hitachi in replying about each of the designated former employees,

the records indicate that they were employed by relevant entities while they were with Hitachi. And Hitachi is not being asked to contact those individuals, but only to provide to plaintiffs their last known contact information.   The Special Master therefore recommends that Hitachi be compelled to produce the last known contact information as to the proposed custodians who have left Hitachi's employment; they are Nos. 1, 3, 7, 9, 10, 13, 15-19, 21, 23, 24, 27, 29, 36-39, 41, 48, 58, 59, 61, 62 and 70-82.

### 3.   Back-up Tapes.

As to those custodians where Hitachi has found no relevant custodian specific information, plaintiffs ask whether there are custodian files "in any format." "In any format" means back-up tapes.

The use of back-up tapes, including their search or where necessary their reproduction, poses serious questions of burden and expense.  Each of the Hitachi companies may have its own electronic systems and procedures, each of which were applied with varying degrees of consistency.  However, there are many designees where Hitachi is simply answering that it has found no custodial-specific information.   That includes persons who were identified in the Chunghwa documents and/or in Hitachi's responses to interrogatories.

The Special Master is of the opinion that because of the large number of persons as to whom there is now no documentation available, it may be necessary to make some use of back-up tapes.  As a first step in that process, the Special Master recommends that Hitachi be required to disclose to plaintiffs the basic information about Hitachi's creation and maintenance of back-up tapes.   That includes the companies, the dates, the equipment, a general designation of the servers covered, and the procedures for the creation, maintenance and preservation of the data. Whether further inquiry and use of the tapes will be necessary will probably depend upon the other information which Hitachi is able to provide from other designees or from its more general files.

///

///

4

4.      Search Terms.

Plaintiffs ask Hitachi to disclose the search terminology which Hitachi is using to search for and examine relevant documents.   Plaintiffs also want Hitachi to use the search terms suggested by plaintiffs.   Those requests will also impact the paper records, since those records will be scanned onto electronic records and searched that way.   As a step toward those objectives, plaintiffs also ask that Hitachi run a test sample of 200-300 documents which would be used by the parties to design more complete search terms.

Plaintiffs stress the cooperation proclamation of the so-called Sedona Conference, and court decisions which have endorsed, if not ordered, cooperation in the development of search methodology.   While desirable, such joint development is not a legal requirement in this case. Neither the District Court nor the Special Master were asked to require the joint development of such terms at the beginning of the case or the discovery.   Of particular significance is the fact that plaintiffs and defendants negotiated and stipulated to an order regarding the production of electronically stored information; document number 828.   That stipulation does not include any definition or requirement of search terms.   The Special Master does not believe that after the parties have entered into a stipulation regarding ESI that such an additional burden should be unilaterally imposed upon any of the parties to the stipulation.   While a better system may have been designed at the beginning of the discovery and review process, the parties have stipulated to the present order regarding production of electronically stored information.   The parties should be allowed to proceed under the terms of the stipulated order, and only a later review of the documents produced by Hitachi can determine whether the procedures and methodologies have produced adequate results.

The Special Master therefore recommends that Hitachi not be compelled to produce a sample set of documents, disclose its own search terms, or use the search terms proposed by plaintiffs.  Hitachi has invited plaintiffs to propose search terms, and plaintiffs indicate that they are preparing a list.  The Special Master therefore recommends that Hitachi be obliged to give due consideration to the search terms suggested by plaintiffs.

///

5.   Hitachi's Organizational Charts

Plaintiffs' discovery requests include production of the charts of the organization of the Hitachi companies.   In response, Hitachi produced some heavily-redacted documents.   The subject was considered at a prior discovery hearing and in the resulting order the Special Master stated that the charts produced were not of use to the plaintiffs or to the Court, and that Hitachi should reconsider its production.   As a result, Hitachi supplied revised documents, and apparently also provided a guide to an understanding of the charts.   However, that production still contains large redacted spaces, with no explanation of the reasons for the redactions.   The few sheets showed to the Special Master at the March 7 hearing demonstrated large redactions and are of little use in enabling the Court or the parties to understand Hitachi's organizational structure.   Hitachi says that its redactions were only of non-CRT entities, on the ground that they are not relevant to this case.   However, the organizational structure of Hitachi as a whole could be relevant to issues of control, communication, interrelationships, and legal liability.   The Special Master therefore recommends that Hitachi be ordered to produce to plaintiffs un-redacted versions of its organizational charts.

6.   Transactional Data

Plaintiffs' discovery motions included requests for transactional data.   However, those requests became subsumed by the methodology of resolving the discovery disputes by the use of the "custodian" method.   It is uncertain at this time whether the documents to be supplied by the custodians will contain transactional data.

Hitachi has agreed to immediately meet and confer with plaintiffs about the production of transactional information.   The Special Master recommends that plaintiffs immediately supply to Hitachi and to the Special Master a current identification of the transactional data which it is seeking; and that Hitachi be ordered to meet and confer on the subject of such information within two weeks after its receipt.

///

///

6

7.    Dates

Nothing in this order is meant to preclude Hitachi's counsel from reviewing documents before they are produced to plaintiffs, and Hitachi may assert privileges where appropriate, while supplying plaintiffs with a privilege log.  Hitachi has agreed to produce documents on a "rolling" basis after the documents have been identified and reviewed by Hitachi's counsel.  While some documents have been produced, it appears to the Special Master that the volume is not yet substantial.  The Special Master has recommended certain dates above, and the Special Master further recommends that Hitachi be directed to accelerate its review and production processes, and that there be a target date of September 15, 2011 for the completion of Hitachi's document production obligations.  Hitachi should also advise plaintiffs as soon as possible about when the ESI documents will start to be produced.

Respectfully Submitted.


DATED: March 14, 2011                    _Charles A. Legge_
                                         HON. CHARLES A. LEGGE (RET.)
                                         SPECIAL MASTER


Reviewed and [Approved or Modified].



DATED: _____           _____
                                         HON. SAMUEL CONTI
                                         UNITED STATES DISTRICT JUDGE