Mario N. Alioto (56433)
Lauren C. Russell (241151)
TRUMP, ALIOTO, TRUMP & PRESCOTT LLP
2280 Union Street
San Francisco, CA 94123
Telephone: 415-563-7200
Facsimile: 415- 346-0679
Email: malioto@tatp.com;
laurenrussell@tatp.com

*Interim Lead Counsel for the
Indirect Purchaser Plaintiffs*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION<br><br>This Document Relates to:<br><br>All Indirect Purchaser Actions | Master File No. CV-07-5944-SC<br><br>MDL No. 1917<br><br>**INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT WITH DEFENDANT CHUNGHWA PICTURE TUBES, LTD.; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing Date: May 4, 2011<br>Time: 2:00 p.m.<br>JAMS: Two Embarcadero Center, Suite 1500<br>Judge: Honorable Charles A. Legge (Ret.) |

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ..................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................1

I.      INTRODUCTION ...........................................................................................1

II.     PROCEDURAL HISTORY ............................................................................2

III.    SUMMARY OF SETTLEMENT TERMS ....................................................4

        A.      Proposed Settlement............................................................................4

        B.      Consideration ......................................................................................5

        C.      Release .................................................................................................5

IV.     PRELIMINARY APPROVAL OF THE SETTLEMENT IS IN THE BEST
        INTEREST OF THE MEMBERS OF THIS SETTLEMENT CLASS.................5

        A.      Class Action Settlement Procedure......................................................5

        B.      Standards For Settlement Approval .....................................................6

        C.      The Proposed Settlement Is Within The Range of Reasonableness ............8

        D.      The Proposed Settlement Class Satisfies Rule 23(a) ..................................10

                1.      The Class Is So Numerous That Joinder Is Impracticable..............10

                2.      The Case Involves Questions Of Law And Fact Common To The Class .......10

                3.      Plaintiffs' Claims Are Typical Of The Claims Of The Class .........12

                4.      Plaintiffs Will Fairly And Adequately Represent The Interests Of The Class 13

        E.      The Proposed Settlement Class Satisfies Rule 23(b)(3) .............................14

                1.      Common Questions Of Law Or Fact Predominate .........................14

                2.      A Class Action Is Superior To Other Methods Of Adjudication....................16

        F.      The Court Should Appoint Plaintiffs' Interim Lead Counsel As Settlement
                Class Counsel..............................................................................................17

V.      PROPOSED PLAN OF NOTICE .................................................................17

VI.     PROPOSED PLAN OF ALLOCATION ......................................................18

VII.    NOTICE COSTS, LITIGATION EXPENSES AND ATTORNEYS' FEES ........18

INDIRECT-PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL
OF CLASS SETTLEMENT – Master File No. CV-07-5944-SC

VIII.  AT THE APPROPRIATE TIME, THE COURT SHOULD SET A FINAL
       APPROVAL HEARING SCHEDULE .................................................................19

IX.    CONCLUSION .........................................................................................................19

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT – Master File No. CV-07-5944-SC

# TABLE OF AUTHORITIES

**CASES**

*Agretti v. ANR Freight Sys., Inc.*
   982 F.2d 242 (7th Cir. 1992) ................................................................. 9

*Amchem Prods. Inc. v. Windsor*
   521 U.S. 591 (1997) .............................................................. 10, 14, 17

*Armstrong v. Davis*
   275 F.3d 849 (9th Cir. 2001) ........................................................... 12

*Blackie v. Barrack*
   524 F.2d 891 (9th Cir. 1975) ........................................................... 11

*Byrd v. Civil Serv. Comm'n*
   459 U.S. 1217 (1983) ...................................................................... 7

*Churchill Vill., L.L.C. v. GE*
   361 F.3d 566 (9th Cir. 2004) ............................................................. 7

*Class Plaintiffs v. City of Seattle*
   955 F.2d 1268 (9th Cir. 1992) ........................................................... 8

*Clement v. American Honda Finance Corp.*
   176 F.R.D. 15 (D. Conn. 1997) .......................................................... 6

*Gautreaux v. Pierce*
   690 F.2d 616 (7th Cir. 1982) ............................................................. 7

*Haley v. Medtronic, Inc.*
   169 F.R.D. 643 (C.D. Cal. 1996) ...................................................... 11

*Hanlon v. Chrysler Corp.*
   150 F.3d 1011 (9th Cir. 1988) .................................................... *passim*

*Harris v. Palm Springs Alpine Estates, Inc.*
   329 F.2d 909 (9th Cir. 1964) ........................................................... 10

*In re AOL Time Warner ERISA Litig.*
   2006 U.S. Dist. LEXIS 70474 (S.D.N.Y. Sept. 27, 2006) ......................... 18

*In re Brand Name Prescription Drugs Antitrust Litig.*
   1994 WL 663590 (N.D. Ill. Nov. 18, 1994) ......................................... 16

*In re Bulk (Extruded) Graphite Prods. Antitrust Litig.*
   2006 WL 891362 (D.N.J. April 4, 2006) .............................................. 12

*In re Cal. Micro Devices Sec. Litig.*
  965 F. Supp. 1327 (N.D. Cal. 1997) ...................................................................... 19

*In re Catfish Antitrust Litig.*
  826 F. Supp. 1019 (N.D. Miss. 1993) ..................................................................... 12

*In re Citric Acid Antitrust Litig.*
  1996 WL 655791(N.D. Cal. Oct. 2, 1996) ............................................................. 12

*In re Corrugated Container Antitrust Litig.*
  80 F.R.D. 244 (S.D. Tex. 1978) .............................................................................. 15

*In re Corrugated Container Antitrust Litig.,*
  1981 U.S. Dist. LEXIS 11004 (S.D. Tex. Jan. 27, 1981).....................................8, 9

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*
  2006 U.S. Dist. LEXIS 39841(N.D. Cal. June 5, 2006) ............................... 11, 12, 15

*In re Linerboard Antitrust Litig.,*
  292 F. Supp. 2d 631 (E.D. Pa. 2003)...............................................................1, 8, 9

*In re Master Key Antitrust Litig.*
  528 F.2d 5 (2d Cir. 1975) ........................................................................................ 15

*In re Mid-Atlantic Toyota Antitrust Litig.*
  564 F.Supp. 1379 (D.Md. 1983) ................................................................................ 9

*In re Nasdaq Market Makers Antitrust Litig.*
  176 F.R.D. 99 (S.D.N.Y. 1997) ................................................................................. 7

*In re Panasonic Consumer Electronic Prod. Antitrust Litig.*
  1989 U.S. Dist. LEXIS 6274 (S.D.N.Y. June 5, 1989) .............................................. 6

*In re Pressure Sensitive Labelstock Antitrust Litig.*
  2007 WL 4140666 (M.D. Pa. Nov. 19, 2007) ......................................................... 12

*In re Relafen Antitrust Litig.*
  221 F.R.D. 260 (D.Mass. 2004)............................................................................... 14

*In re Rubber Chemicals Antitrust Litig.*
  232 F.R.D. 346 (N.D. Cal. 2005).......................................................................10, 14

*In re Shopping Carts Antitrust Litig.*
  1983 U.S. Dist. LEXIS 11555 (S.D.N.Y. Nov. 18, 1983) ......................................... 6

*In re Static Random Access Memory (SRAM) Antitrust Litig.*
  2008 WL 4447592 (N.D. Cal. Sept. 29, 2008) ........................................................ 15

*In re Static Random Access Memory (SRAM) Antitrust Litig.*
  2009 U.S. Dist. LEXIS 110407 (N.D. Cal. Nov. 25, 2009)...................................... 16

*In re Sugar Industry Antitrust Litig.*
    1976 WL 1374 (N.D. Cal. May 21, 1976) ................................................................ 14

*In re Tableware Antitrust Litig.*
    484 F. Supp. 2d 1078 (N.D. Cal. 2007) ................................................................. 18

*In re Visa Check/Master Money Antitrust Litig.*
    280 F.3d 124 (2d Cir. 2001) ................................................................................. 15

*In re Vitamins Antitrust Litig.*
    2001 U.S. Dist. LEXIS 25071 (D.D.C. July 25, 2001) ........................................... 7

*Lerwill v. Inflight Motion Pictures, Inc.*
    582 F.2d 507 (9th Cir. 1978) ............................................................................... 13

*Newby v. Enron Corp.*
    394 F.3d 296 (5th Cir. 2004) ............................................................................... 19

*Officers for Justice v. Civil Serv. Comm'n*
    688 F.2d 615 (9th Cir. 1982) ................................................................................. 7

*Reiter v. Sonotome Corp.*
    442 U.S. 330 (1979) ............................................................................................. 15

*Slaven v. BP America, Inc.*
    190 F.R.D. 649 (C.D. Cal. 2000) ......................................................................... 11

*Torrisi v. Tucson Elec. Power Co.*
    8 F.3d 1370 (9th Cir. 1993) ................................................................................. 18

*Valentino v. Carter-Wallace, Inc.*
    97 F.3d 1227 (9th Cir. 1996) ............................................................................... 16

*Von Bronkizorst v. Safeco Corp.*
    529 F.2d 943 (9th Cir. 2004) ................................................................................. 6

*Waste Management Holdings, Inc. v. Mowbray*
    208 F.3d 288 (1st Cir. 2000) ............................................................................... 16

*West Virginia v. Chas. Pfizer & Co.*
    314 F. Supp. 710 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d Cir. 1971) .................... 6

*Williams v. Sinclair*
    529 U.S. 1383 (9th Cir. 1975) ............................................................................. 16

*Zenith Radio Corp. v. Hazeltine Research Inc.*
    395 U.S. 100 (1969) ............................................................................................. 15

**FEDERAL STATUTES**

15 U.S.C. § 1 ................................................................................................................. 3, 11

**FEDERAL RULES**

Fed. R. Civ. P. 23 ................................................................................................ *passim*

    Rule 23(a)(1) .......................................................................................................... 10

    Rule 23(a)(2) .......................................................................................................... 11

    Rule 23(a)(3) .......................................................................................................... 12

    Rule 23(b)(3) ............................................................................................ 14, 16, 18

    Rule 23(c)(1)(B) ..................................................................................................... 17

    Rule 23(c)(2)(B) ..................................................................................................... 17

    Rule 23(e) ........................................................................................................ 1, 5, 17

    Rule 23(g)(1)(A) .................................................................................................... 17

**OTHER AUTHORITIES**

4 Newberg on Class Actions

    § 8.32 ...................................................................................................................... 17

    §§ 11.22, *et seq.* ...................................................................................................... 6

    § 11.25 ...................................................................................................................... 7

    § 11.53 ...................................................................................................................... 17

Wright, Miller & Kane, Federal Practice and Procedure: Civil Procedure

    § 1781 (3d. ed. 2004) ........................................................................................... 16

Manual for Complex Litigation (Fourth)

    § 21.62 ...................................................................................................................... 8

    § 21.632 ............................................................................................................... 8, 10

    § 21.651 .................................................................................................................... 19

**NOTICE OF MOTION AND MOTION**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on May 4, 2011 at 2 p.m., before the Honorable Charles A. Legge (Ret.) at the office of JAMS, Two Embarcadero Center, Suite 1500, San Francisco, California, the Indirect-Purchaser Plaintiffs ("Plaintiffs") will move the Court, pursuant to Federal Rule of Civil Procedure 23(e), for entry of an Order:

1.      Certifying a settlement class;

2.      Appointing Plaintiffs' Interim Lead Counsel as Settlement Class Counsel;

3.      Preliminarily approving this class action settlement;

4.      Directing distribution of notice of the settlement to the class and providing class members with opportunity to opt out of or object to the settlement; and

5.      Scheduling final approval of the settlement.

The grounds for this motion are that the proposed class settlement is within the range of reasonableness. The proposed class satisfies the certification requirements for such a settlement. This motion is based on this Notice of Motion and Motion, the supporting Memorandum of Points and Authorities, the accompanying Declaration of Mario N. Alioto, the CRT Indirect-Purchaser Class Settlement Agreement with Chunghwa Picture Tubes, Ltd. ("Settlement Agreement"), any further papers filed in support of this motion, the argument of counsel, and all pleadings and records on file in this matter.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Pursuant to Rule 23 of Federal Rules of Civil Procedure, Indirect Purchaser Plaintiffs ("Plaintiffs") hereby move this Court for an order preliminarily approving a class settlement reached with defendant Chunghwa Picture Tubes, Ltd. ("CPT"). A copy of the Settlement Agreement is attached to the Declaration of Mario N. Alioto ("Alioto Decl."), as Exhibit 1. Plaintiffs allege that Defendants engaged in a long-standing, worldwide scheme to artificially inflate the prices of Cathode Ray Tube ("CRT") Products, as defined below. This Settlement resolves all federal and state-law claims brought by Plaintiffs against CPT. The Settlement obligates CPT to cooperate with Plaintiffs and to pay $10 million in exchange for a release of the class members' antitrust and/or consumer-protection claims. Alioto Decl. ¶¶ 9-11. CPT's sales remain in the case for purposes of computing Plaintiffs' claim against the remaining non-settling Defendants. *Id.* ¶ 12.

CPT has agreed to cooperate with Plaintiffs in the prosecution of this action by providing information relating to the existence, scope, and implementation of the conspiracy alleged in the Complaint. *Id.* ¶ 13. CPT's early cooperation proved invaluable, as it gave Plaintiffs detailed information about the conspiratorial "Glass Meetings," including the identities of the participants, the time, place and agenda of such meetings, as well as the type of price-fixing agreements reached at such meetings. Courts generally approve so-called "ice-breaker" settlements such as this one, because of the many benefits to the Class. *See In re Linerboard Antitrust Litig.,* 292 F. Supp. 2d 631, 643 (E.D. Pa. 2003).

This settlement is contingent upon the certification by this Court of a settlement class, as defined below, and Plaintiffs hereby seek provisional certification of that class. The settlement class is a nationwide class of indirect-purchasers of CRT Products ("Settlement Class"). CRT Products are defined to mean Cathode Ray Tubes of any type (e.g. color display tubes, color picture tubes and monochrome display tubes) and products containing Cathode Ray Tubes. *Id.* ¶ 10.

The issue at the preliminary approval stage is not whether the proposed settlement is fair, reasonable and adequate, but rather, whether it is within the range of possible approval to justify publishing notice of the settlement to the class members and scheduling final approval proceedings.

1

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT – Master File No. CV-07-5944-SC

The Settlement here was reached after extensive arm's-length negotiations between experienced and informed counsel, and easily meets the standards for preliminary approval. Accordingly, Plaintiffs seek an order: (1) granting preliminary approval of the class Settlement with defendant CPT; and (2) provisionally certifying the Settlement Class.

In addition to seeking approval of the CPT Settlement, Plaintiffs anticipate making an interim request for litigation expenses, as well as for an amount to be held in trust to pay for future expenses. At the appropriate time, Plaintiffs will request a fee award of up to twenty-five percent (25%) from the CPT settlement fund. Notice of this Settlement must be provided to the absent class members. A form of notice that satisfies procedural due process is submitted herewith.

## II.  **PROCEDURAL HISTORY**

This multidistrict litigation arises from an alleged international cartel's conspiracy to fix the prices of CRT Products worldwide, specifically including the United States, during the period March 1, 1995 through November 25, 2007. *See* Third Consolidated Amended Complaint ("TCAC") ¶ 1, Docket No. 827. The first cases were filed in November 2007. The Judicial Panel on Multidistrict Litigation transferred these proceedings to this Court in February 2008. Alioto Decl. ¶ 2. On May 9, 2008 the Court appointed Mario N. Alioto of Trump, Alioto, Trump & Prescott, LLP as Interim Lead Counsel. *See* Order Appointing Interim Lead Counsel, Docket No. 47. *Id.* ¶ 3.

As Interim Lead Counsel, Mr. Alioto immediately began organizing Plaintiffs' Counsel and interviewing class representatives from the various states. Mr. Alioto also met on numerous occasions with Interim Lead Counsel for the Direct Purchaser Plaintiffs and Liaison Counsel for the Defendants to prepare a scheduling order. Plaintiffs served their first set of document requests on Defendants in June 2008 seeking production of the documents Defendants had produced to the Grand Jury. However, the Department of Justice's Antitrust Division ("DOJ") moved to intervene and sought a stay of all merits discovery. Thereafter, Plaintiffs engaged in extensive negotiations with the DOJ, the Direct Purchaser Plaintiffs and Defendants and worked out a Stipulated Order that provided for a stay of all merits discovery until September 12, 2009. This stay was extended by the parties on several occasions. The Stipulated Order also contained various document requests to Defendants, which sought mainly sales and cost data. Certain Defendants produced a small amount

of documents responsive to these requests in November 2008.  Plaintiffs have reviewed and analyzed these documents with the help of their expert economists.  *Id.* ¶ 4.

In July 2008, Mr. Alioto began settlement negotiations with CPT's counsel.  At numerous in-person and telephonic meetings, the terms of the settlement were vigorously negotiated among counsel who are experienced in antitrust law and class actions.  On February 5, 2009, Plaintiffs and CPT reached agreement on the principle terms of a settlement, which were memorialized in a memorandum of understanding.  Pursuant to the memorandum of understanding, CPT's counsel provided Plaintiffs' counsel with information regarding the conspiracy during a series of discussions.  The information provided by CPT was invaluable in assisting Plaintiffs in the preparation of their Consolidated Amended Complaint ("CAC").  Plaintiffs and CPT signed a formal Settlement Agreement on April 18, 2009.  *Id.* ¶ 5; Ex. 1.

Plaintiffs filed their CAC on March 16, 2009.  The CAC pled a nationwide injunctive relief claim under Section 1 of the Sherman Act (15 U.S.C. § 1), as well as damage and/or restitutionary claims under the laws of 22 separate states.  Defendants filed one joint motion and nine separate motions to dismiss the CAC.  The briefs filed in support of and in opposition to Defendants' motions totaled more than 700 pages.  Judge Legge conducted a hearing on the motions on October 3, 2009, at JAMS and heard almost 9 hours of oral argument.  Judge Legge issued his rulings on the motions to dismiss on February 5, 2010, and denied in part and granted in part Defendants' motions to dismiss.  Defendants objected to those rulings that were unfavorable to them.  Defendants' objections were heard by Judge Conti and rejected in an Order dated March 31, 2010.  Defendants then moved the Court for permission to bring an interlocutory appeal pursuant to 28 U.S.C. § 1292(b).  Judge Conti heard and denied Defendants' motion by Order dated April 30, 2010.  *Id.* ¶ 6.

The DOJ's stay of merits discovery was partially lifted on March 8, 2010 and Defendants began their rolling production of documents, including Grand Jury documents, to Plaintiffs.  Plaintiffs have loaded these documents onto a web-based electronic document management system for review and analysis.  Plaintiffs have also propounded additional discovery on Defendants and served subpoenas on approximately fifty (50) third parties.  Defendants have propounded several sets of document requests and interrogatories on Plaintiffs as well.  Plaintiffs are currently engaged

in extensive meet-and-confer discussions with each defendant. Many third parties have already produced their data to Plaintiffs. Plaintiffs are continuing to meet and confer with others in order to facilitate their productions. *Id.* ¶ 7.

On May 14, 2010, the Special Master held a Case Management Conference at which the parties discussed pretrial scheduling, Defendants' Answers and discovery. Plaintiffs filed their Second Consolidated Amended Complaint ("SCAC") on May 10, 2010. The SCAC amended certain state law claims that were dismissed with leave to amend by the Court. In addition, the SCAC brought claims on behalf of 4 additional states, bringing the total number of states to 26. Pursuant to a Stipulated Order, Defendants agreed not to oppose the filing of the SCAC but moved to dismiss some of Plaintiffs' additional state law claims. Judge Legge held a hearing on the motion to dismiss the SCAC on August 24, 2010, and issued his Report and Recommendation that the motion be granted as to certain state law claims and denied as to others. Pursuant to stipulation of the parties, an Order Modifying And Adopting Judge Legge's Report and Recommendation was entered on October 26, 2010. Plaintiffs filed their Third Consolidated Amended Complaint on December 11, 2010, bringing claims on behalf of 23 states. *Id.* ¶ 8.

## III.   SUMMARY OF SETTLEMENT TERMS

### A.   Proposed Settlement

This Settlement resolves all claims against defendant CPT for its part in the alleged conspiracy to fix prices of CRT Products indirectly purchased from Defendants. Alioto Decl. ¶ 9. The proposed Settlement Class is defined as:

> All individuals and entities who, at any time during the period beginning March 1, 1995 and continuing through November 25, 2007, purchased CRT Products indirectly from the Defendants or their parents, subsidiaries, and/or affiliates and who could assert, against any Defendant, antitrust claims under the laws of the United States, (including its territories and protectorates) or any State.

The officers, directors and employers of the defendants, the judge presiding over this action (and the judge's immediate family) and all governmental bodies are excluded from this Settlement Class. The Settlement Agreement defines "CRT Products" to mean cathode ray tubes of any type

(e.g. color display tubes, color picture tubes and monochrome display tubes) and products containing cathode ray tubes. *Id.* ¶ 10, Ex. 1 at ¶ 2.

**B.    Consideration**

CPT agreed to pay Ten Million Dollars ($10,000,000) to settle all indirect purchaser claims against CPT, which has been deposited into an interest-bearing, US Treasury guaranteed escrow account. *Id.* ¶ 11.

In addition to the monetary value, the Settlement confers significant additional benefits. First, CPT has agreed to provide (and has provided) Plaintiffs with significant and valuable cooperation in the prosecution of the case against the remaining defendants. CPT's obligations include producing, in the United States, relevant documents and witnesses for discovery and trial. *Id.* ¶ 13. Second, CPT's sales remain in the case for purposes of computing damages against the non-settling Defendants. *Id.* ¶ 12.

**C.    Release**

Upon this Settlement becoming final, Plaintiffs and class members will release all federal and state-law claims against CPT "concerning the manufacture, supply, distribution, sales or pricing of CRT Products. . . ." *Id.* ¶ 14, Ex. 1 at ¶ 13. The release does not, however, include claims arising from the sale of CRT Products by other Defendants or their co-conspirators. Furthermore, the release does not include claims for product defect, personal injury or breach of contract. *Id.* ¶ 14, Ex. 1 at ¶¶ 3, 13, 15, 32.

**IV.    <u>PRELIMINARY APPROVAL OF THE SETTLEMENT IS IN THE BEST INTEREST OF THE MEMBERS OF THIS SETTLEMENT CLASS</u>**

**A.    Class Action Settlement Procedure**

A class action may not be dismissed, compromised, or settled without the express approval of the Court. Judicial decisions under Rule 23(e) have led to a well-defined procedure and specific criteria for approval of class action settlements, which are:

> 1.    Certification of a settlement class and preliminary approval of the proposed settlement;
>
> 2.    Dissemination of notice of the settlement to all affected class members; and

> 3.     A formal fairness hearing, (called the "Final Approval Hearing"), at which class members may be heard regarding the settlement, and at which counsel may introduce evidence and present argument concerning the fairness, adequacy, and reasonableness of the settlement.

*See* 4 Newberg on Class Actions §§ 11.22, *et seq*. (4th ed. 2002) ("*Newberg*") (describing class action settlement procedure).  This process safeguards class members' procedural due process rights and enables the Court to fulfill its role as the guardian of class interests.

Plaintiffs respectfully request that this Court take the first step in the settlement approval process and certify the proposed Settlement Class and preliminarily approve the CPT Settlement. Plaintiffs further request that the Court appoint Plaintiffs' Interim Lead Counsel as Class Counsel for this Settlement.

## B.     Standards for Settlement Approval

It is well established that there is an overriding public interest in settling litigation, particularly complex multi-party litigation.  *See, e.g., Clement v. American Honda Finance Corp*., 176 F.R.D. 15, 25 (D. Conn. 1997); *Von Bronkizorst v. Safeco Corp*., 529 F.2d 943, 950 (9th Cir. 2004) ("It hardly seems necessary to point out that there is an overriding public interest in settling and quieting litigation.").  Courts have particularly recognized that compromise is favored for antitrust litigation—which is notoriously difficult and unpredictable.  *See In re Shopping Carts Antitrust Litig.,* No. MDL 451-CLB, M-21-29, 1983 U.S. Dist. LEXIS 11555, at *17-18 (S.D.N.Y. Nov. 18, 1983); *West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d Cir. 1971).

Courts generally apply a two-step approach to the settlement approval process in class proceedings.  *In re Panasonic Consumer Electronic Prod. Antitrust Litig*., No. 89 Civ. 0368 (SWK), 1989 U.S. Dist. LEXIS 6274, at *2 (S.D.N.Y. June 5, 1989).  In the first step, usually called "preliminary approval," the court reviews the proposed settlement for obvious deficiencies.  The grant of preliminary approval then triggers a notice and claim period during which the parties make reasonable efforts to notify all potential beneficiaries of the settlement pursuant to a notice process approved by the court.  *Id.*  Preliminary approval is distinct from the second step in the process–a fairness hearing and determination of "final approval."

Preliminary approval requires a court simply to find that the proposed settlement fits "within the *range* of possible approval" and should be given further consideration. *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982) (emphasis added). Preliminary approval of a proposed class action settlement is appropriate "if the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys and appears to fall within the range of possible approval." *In re Vitamins Antitrust Litig.*, No. 99-197 (TFH), 2001 U.S. Dist. LEXIS 25071, at *30 (D.D.C. July 25, 2001); *see also In re Nasdaq Market Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997). Preliminary approval is intended to "ascertain whether there is any reason to notify class members of the proposed settlement and to proceed with a fairness hearing." *Pierce*, 690 F.2d at 621; *see also Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1027 (9th Cir. 1988). In contrast, the purpose of the final approval fairness hearing is to determine whether the settlement is fair, reasonable and adequate after notice has been given to the class.

The approval of a proposed settlement of a class action is a matter of discretion for the trial court. *Churchill Vill., L.L.C. v. GE*, 361 F.3d 566, 575 (9th Cir. 2004). In exercising that discretion, however, the Court should recognize that as a matter of sound policy, settlements of disputed claims are encouraged and a settlement approval hearing should "not be turned into a trial or rehearsal for trial on the merits." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982), *cert. denied sub nom. Byrd v. Civil Serv. Comm'n*, 459 U.S. 1217 (1983). Furthermore, courts must give "proper deference" to the settlement agreement, because "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon*, 150 F.3d at 1027 (quotations omitted).

To grant preliminary approval of this class action settlement, the Court need only find that the settlement falls within "the range of reasonableness." *Newberg* § 11.25. The Manual for Complex Litigation (Fourth) § 21.632 (2004) ("*Manual*") characterizes the preliminary approval

stage as an "initial evaluation" of the fairness of the proposed settlement made by the court on the basis of written submissions and informal presentation from the settling parties. *Manual* § 21.632. The *Manual* summarizes the preliminary approval criteria as follows:

> Fairness calls for a comparative analysis of the treatment of the class members *vis-à-vis* each other and *vis-à-vis* similar individuals with similar claims who are not in the class. Reasonableness depends on an analysis of the class allegations and claims and the responsiveness of the settlement to those claims. Adequacy of the settlement involves a comparison of the relief granted to what class members might have obtained without using the class action process.

*Manual* § 21.62. A proposed settlement may be finally approved by the trial court if it is determined to be "fundamentally fair, adequate, and reasonable." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). While consideration of the requirements for final approval is unnecessary at this stage, all of the relevant factors weigh in favor of the Settlement proposed here. As shown below, the proposed Settlement is fair, reasonable and adequate. Therefore, the Court should allow notice of this Settlement to be disseminated to the Class.

### C. The Proposed Settlement Is Within The Range of Reasonableness

Plaintiffs' proposed Settlement with CPT is within the range of reasonableness. First, CPT is the first defendant to settle with Plaintiffs in this case. Courts have recognized the "significant value" of such "ice-breaker" settlements:

> The Court also notes that this settlement has significant value as an 'ice-breaker' settlement—it is the first settlement in the litigation—and should increase the likelihood of future settlements. An early settlement with one of many defendants can 'break the ice' and bring other defendants to the point of serious negotiations.

*In Re Linerboard,* 292 F. Supp. 2d at 643, citing *In re Corrugated Container Antitrust Litig.,* MDL No. 310, 1981 U.S. Dist. LEXIS 11004, at *19 (S.D. Tex. Jan. 27, 1981).

Second, the Settlement Agreement obligates CPT to provide significant cooperation to Plaintiffs in pursuing this case against the non-settling Defendants. In fact, CPT has already provided significant cooperation to Plaintiffs. In February of 2009, CPT's counsel described the Defendants' price-fixing conspiracy in detail during a series of discussions with Plaintiffs' Interim

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT – Master File No. CV-07-5944-SC

Lead Counsel pursuant to the Settlement.  This information was invaluable to Plaintiffs in drafting their CAC and overcoming Defendants' motions to dismiss.  And when the DOJ's stay of merits discovery was lifted in March of 2010, CPT produced approximately 500 translated meeting reports evidencing anti-competitive agreements between the Defendants.  In the future, CPT will make available witnesses with personal knowledge of the Defendants' conspiracy for interviews with Plaintiffs.  These witnesses will also testify against the non-settling Defendants if required.  "The provision of such assistance is a substantial benefit to the classes and strongly militates toward approval of the Settlement Agreement."  *In re Linerboard,* 292 F. Supp. 2d at 643.  *See also In re Mid-Atl. Toyota Antitrust Litig.,* 564 F. Supp. 1379, 1386 (D. Md. 1983) (concluding that commitment to cooperate is appropriate factor to consider in approving partial settlement); *In re Corrugated Container,* 1981 U.S. Dist. LEXIS 11004, at *16 ("The cooperation clauses constituted a substantial benefit to the class.").

Third, the Settlement Amount of $10,000,000 is significant and compares favorably to other settlements reached in indirect purchaser class actions.  *See, e.g., In re Static Random Access Memory (SRAM) Antitrust Litig.,* 07-md-1819 (N.D. Cal. June 10, 2010) (Order Preliminarily Approving Class Action Settlements $25,400,000; *In re OSB Antitrust Litig.,* 06-00826 (E.D. Pa. Dec. 19, 2008) (Order Finally Approving Class Action Settlements $9,940,000).  In addition, "the settlement provides [P]laintiffs with an immediate financial recovery that ensures funding to pursue the litigation against the non-settling [D]efendants."  *In re Linerboard,* 292 F. Supp. 2d at 643.

Finally, the grant of preliminary approval of the CPT Settlement will not adversely affect the remainder of the case or unfairly prejudice the non-settling Defendants.  In fact, it may aid in the ultimate resolution of this case.  "In complex litigation with a plaintiff class, 'partial settlements often play a vital role in resolving class actions.'" *Agretti v. ANR Freight Sys., Inc.*, 982 F.2d 242, 247 (7th Cir. 1992) (quoting Manual for Complex Litigation Second, § 30.46 (1986)).

For all the aforementioned reasons, the proposed Settlement meets the judicially established criteria for class action settlements and warrants notice of its terms to the class members.

//

//

9

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT – Master File No. CV-07-5944-SC

**D.** **The Proposed Settlement Class Satisfies Rule 23(a)**

Before granting preliminary approval of a settlement, the Court must determine that the proposed settlement presents a proper class for settlement purposes. *See Manual* § 21.632; *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Rule 23 governs the issue of class certification, whether the proposed class is a litigated class or, as here, a settlement class. All criteria for certification of a class for litigation purposes, except manageability, apply to certification for settlement purposes. *Amchem Prods.*, 521 U.S. at 620. Courts routinely and properly certify classes for settlement purposes only. *Id.* at 619-29.

Certification is appropriate where the proposed class and the proposed class representatives meet the four prerequisites of Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation. In addition, certification of a class action for damages requires a showing that "questions of law and fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The proposed Settlement here likewise satisfies each of these criteria.

**1.** **The Class Is So Numerous That Joinder Is Impracticable**

The first requirement for maintaining a class action is that its members are so numerous that joinder would be "impracticable." Fed. R. Civ. P. 23(a)(1). Here, the Settlement Class (individuals and entities who purchased CRT Products from March 1, 1995 through November 25, 2007 in the United States) consists of millions of members nationwide. "Numerosity" is easily established. *See Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964); *In re Rubber Chemicals Antitrust Litig.*, 232 F.R.D. 346, 350 (N.D. Cal. 2005) (a finding of numerosity may be supported by common sense assumptions).

**2.** **The Case Involves Questions of Law and Fact Common to the Class**

The second prerequisite to class certification is the existence of questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2). The Ninth Circuit has made it clear that the commonality requirement is to be "construed permissively." *Hanlon*, 150 F.3d at 1019. Courts have held that a single common issue of law or fact is sufficient to satisfy the commonality requirement.

1 | *Slaven v. BP America, Inc.*, 190 F.R.D. 649, 655 (C.D. Cal. 2000); *Haley v. Medtronic, Inc.*, 169

2 | F.R.D. 643, 647 (C.D. Cal. 1996). Commonality can be established by showing "that the class is

3 | united by a common interest." *Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975).

4 |      Here, all class members share numerous common questions of law and fact that go to the

5 | central issue in this matter—that is, whether the Defendants engaged in a price-fixing agreement

6 | which injured Plaintiffs when they paid more for CRT Products than they would have, absent the

7 | alleged price-fixing conspiracy. These common questions of law and fact predominate over any

8 | individual questions. The overarching and unifying allegations in this action are that CPT and other

9 | CRT Products manufacturers engaged in a global cartel to fix the prices of CRT Products sold in the

10 | United States. These allegations give rise to numerous questions of law or fact common to the class,

11 | such as:

12 |     1.    whether Defendants engaged in a contract, combination, and/or conspiracy to fix, raise, maintain, or stabilize prices of CRT

13 | Products sold in the United States;

14 |     2.    whether the contract, combination, and/or conspiracy violated Section 1 of the Sherman Act (15 U.S.C. § 1) such that

15 | injunctive relief is available to Plaintiffs;

16 |     3.    whether such conspiracy violates the antitrust, consumer protection or other similar laws of the 26 states under whose laws

17 | these suits were brought;

18 |     4.    the duration of the illegal contract, combination, and/or conspiracy;

19 |

20 |     5.    whether Defendants' conduct resulted in an unlawful overcharge on the price of CRT Products;

21 |     6.    whether the unlawful overcharge on the price of CRT Products was passed-through to the indirect purchasers, and if so,

22 | the appropriate classwide measure of damages.

23 |     These questions revolve around the existence, scope, effectiveness, and implementation of

24 | Defendants' conspiracy and are central to each class member's claims. Similar common questions

25 | have been routinely found to satisfy the commonality requirement in other antitrust class actions. *In*

26 | *re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, Case No. M 02-1486 PJH, 2006 U.S.

27 | Dist. LEXIS 39841, at *29 (N.D. Cal. June 5, 2006) ("the very nature of a conspiracy antitrust action

28 |

1    compels a finding that common questions of law and fact exist."); *In re Rubber Chem. Antitrust*

2    *Litig.*, 232 F.R.D. 346, 351 (N.D. Cal. 2005).

3              **3.      Plaintiffs' Claims Are Typical of the Claims of the Class**

4              The "claims . . . of the representative parties [must be] typical of the claims . . . of the class."

5    Fed. R. Civ. P. 23(a)(3).  "Under the rule's permissive standards, representative claims are 'typical'

6    if they are reasonably co-extensive with those of absent class members; they need not be

7    substantially identical."  *Hanlon*, 150 F.3d at 1020.  In this case, the claims of the representative

8    Plaintiffs are typical of the claims of the class members because they all indirectly purchased CRT

9    Products sold by Defendants at allegedly supra-competitive levels as a result of the price-fixing

10   conspiracy.  Similarly, differences that may exist in the amount of injury suffered by each class

11   member do not render Plaintiffs' claims atypical.  *Armstrong v. Davis*, 275 F.3d 849, 869 (9th Cir.

12   2001).

13             As with commonality, typicality is easily satisfied in horizontal price-fixing cases because

14   "in instances wherein it is alleged that the defendants engaged in a common scheme relative to all

15   members of the class, there is a strong assumption that the claims of the representative parties will be

16   typical of the absent class members."  *In re Catfish Antitrust Litig.*, 826 F. Supp. 1019, 1035 (N.D.

17   Miss. 1993);  *In re Citric Acid Antitrust Litig.*, Case No. 95-1092, 1996 WL 655791, at * 3 (N.D.

18   Cal. Oct. 2, 1996).  Furthermore, courts have rejected the argument that factual differences among

19   individual transactions undermine typicality, so long as the damages of plaintiffs and the class arise

20   from the purchase of products affected by the conspiracy.  *See DRAM*, 2006 U.S. Dist. LEXIS

21   39841, at *33; *In re Bulk (Extruded) Graphite Prods. Antitrust Litig.*, Case No. Civ. 02-6030

22   (WHW), 2006 WL 891362, at *5 (D.N.J. April 4, 2006); *In re Pressure Sensitive Labelstock*

23   *Antitrust Litig.*, Case No. 3:03-MDL-1556, 2007 WL 4140666, at *10 (M.D. Pa. Nov. 19, 2007)

24   ("Typicality is usually satisfied in a horizontal antitrust conspiracy case, even though a plaintiff may

25   have purchased different product types or quantities or received different prices, or a plaintiff

26   purchased from one defendant but not another.").

27             In this case, the claims of the representative Plaintiffs arise from the same price-fixing

28   conspiracy that give rise to the claims of the class.  Plaintiffs assert the same legal claims on behalf

of themselves and the proposed class, namely, that they purchased CRT Products and that they were overcharged as a result of the antitrust conspiracy between CPT and other CRT Products manufacturers. Defendants' price-fixing scheme is the basis for the claims of every named Plaintiff and class member who purchased the price-fixed CRT Product indirectly from Defendants. Therefore, Plaintiffs' claims are typical of the claims of the other class members, and certification is appropriate.

### 4. Plaintiffs Will Fairly and Adequately Represent the Interests of the Class

The final requirement of Rule 23(a) is that the representative plaintiffs fairly and adequately represent the interests of the class. A representative plaintiff is an adequate representative of the class if he or she: (1) does not have any interests that are antagonistic to or in conflict with the interests of the class; and (2) is represented by "qualified counsel" who will vigorously prosecute the interests of the class. *Hanlon,* 150 F.3d at 1020; *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978).

Here, the interests of the representative Plaintiffs are not antagonistic to the class because they are all similarly interested in obtaining prompt and valuable relief from Defendants. Plaintiffs have a genuine interest in the litigation and understand the allegations in this case. They have reviewed the pleadings in this case, are in the process of responding to written discovery and producing documents requested. Alioto Decl., ¶ 17. The interests of all Plaintiffs and class members are aligned because they all suffered similar injury in the form of higher CRT Products prices due to the conspiracy, and they all seek the same relief. By proving their own claims, Plaintiffs will necessarily be proving the claims of their fellow class members.

Additionally, Plaintiffs are represented by counsel who are highly qualified in class action litigation and have competently and aggressively prosecuted this complex case. Plaintiffs' counsel, Trump, Alioto, Trump & Prescott LLP, was appointed by the Court as Interim Lead Class Counsel on May 9, 2010. They have undertaken the responsibilities assigned to them by the Court and have directed the efforts of other Plaintiffs' counsel in vigorously prosecuting this action. *See* Section II., *infra* (further discussing the qualifications and work performed by Lead Counsel).

//

### E. The Proposed Settlement Class Satisfies Rule 23(b)(3)

Once the four prerequisites of Rule 23(a) are met, as they are here, Plaintiffs are entitled to proceed with a class action under Rule 23(b)(3) if the Court finds that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." The Settlement Class meets both requirements.

#### 1. Common Questions of Law or Fact Predominate

"Predominance," under Rule 23(b)(3), "is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws." *Amchem Prods.*, 521 U.S. at 625. The weight of authority holds that in horizontal price-fixing cases like this one, the predominance requirement is readily met. The existence of a conspiracy is the overriding issue common to all plaintiffs, sufficient to satisfy the Rule 23(b)(3) predominance requirement. *See, e.g., In re Rubber Chemicals*, 232 F.R.D. at 352 ("the great weight of authority suggests that the dominant issues in cases like this are whether the charged conspiracy existed and whether price-fixing occurred"); *In re Sugar Industry Antitrust Litig.*, MDL Dkt No. 201, 1976 WL 1374, at *23 (N.D. Cal. May 21, 1976) ("[i]t is the allegedly unlawful horizontal price-fixing arrangement among defendants that, in its broad outlines, comprises the predominating, unifying common interest" between the representative plaintiffs and potential class members).

Here, the existence of a CRT Product conspiracy and Defendants' acts in furtherance of the conspiracy are the predominant common questions. To demonstrate that the CRT Product price-fixing conspiracy existed, Plaintiffs will necessarily focus on the conduct of the Defendants, rather than the conduct of individual class members. Specifically, Defendants allegedly entered into and implemented a conspiracy to set the prices of CRT Products at *supra*-competitive levels through a series of high-level meetings and agreements during the class period. Proof of how Defendants implemented and enforced their conspiracy will be common for all class members, because it will be predicated on establishing the existence of Defendants' antitrust conspiracy to fix the price of CRT Products. *See, e.g., In re Relafen Antitrust Litig.*, 221 F.R.D. 260, 275 (D.Mass. 2004) ("The alleged antitrust violation relates solely to SmithKline's conduct, and as such, constitutes a common issue

subject to common proof."); *In re Corrugated Container Antitrust Litig.*, 80 F.R.D. 244, 250 (S.D. Tex. 1978) ("The court is persuaded that the conspiracy issues—whether price information was exchanged; if it was, with what intent; whether action was taken by the defendants based upon such exchanges, etc.—is susceptible of generalized proof, since it deals primarily with what the defendants themselves did and said.").

Likewise, antitrust injury, particularly in a price-fixing case, is an issue common to the class because it is readily determined based on a common evidentiary showing. The relevant legal standard in establishing an antitrust injury is demonstrating that Plaintiffs suffered some harm to business or property as a result of Defendants' unlawful conduct. *SRAM*, Case No. C 07-01819 CW, 2008 WL 4447592, at *5 (N.D. Cal. Sept. 29, 2008) ("If [plaintiffs] establish at the trial for liability that the defendants engaged in an unlawful national conspiracy which had the effect of stabilizing prices above competitive levels, and further establish that [plaintiffs] were consumers of that product, we would think that the jury could reasonably conclude that [defendants'] conduct caused injury to each [plaintiff].") *See also Reiter v. Sonotome Corp.*, 442 U.S. 330, 337-41 (1979); *Zenith Radio Corp. v. Hazeltine Research Inc.*, 395 U.S. 100, 126 (1969); *In re Master Key Antitrust Litig.*, 528 F.2d 5, 12 n.11 (2d Cir. 1975). Therefore, common issues relating to the existence and effect of the alleged conspiracy to set CRT Products prices predominate over any questions arguably affecting individual class members. These issues are "overriding issues" satisfying the predominance requirement.

The existence of potential individualized damage issues does not defeat the predominance of the common liability issues. *See, e.g., In re Visa Check/Master Money Antitrust Litig.*, 280 F.3d at 138 (citing and discussing cases). Courts in this District have recognized that "classes were certified . . . regardless whether some members of the class negotiated price individually, or whether—as here— differences among product type, customer class, and method of purchase existed." *DRAM*, 2006 U.S. Dist. LEXIS 39841, at *47. This is true even if there are individual state law issues, as long as the common issues still outweigh the individual ones, e.g., as long as common theory can be alleged as to liability and impact that can be pursued by the class. *Cf., e.g., In re Visa Check/Master Money Antitrust Litig.*, 280 F.3d 124, 138 (2d Cir. 2001) (citing and quoting with approval *Williams*

1  *v. Sinclair*, 529 U.S. 1383, 1388 (9th Cir. 1975)); *Waste Management Holdings, Inc. v. Mowbray*,

2  208 F.3d 288, 294-295 (1st Cir. 2000).  Issues common to the classes predominate in this case.  All

3  indirect-purchasers paid overcharges that were caused by the Defendants' price-fixing activities.

4  The presence of these common issues of liability and impact favors class certification of the

5  Settlement Class, even if individual issues may exist as to the dollar amount of damages suffered by

6  each class member.

## 2. A Class Action Is Superior to Other Methods of Adjudication

7       The superiority prong of Rule 23(b)(3) requires balancing the merits of a class action with

8  available alternate methods of adjudication.  *See Valentino v. Carter-Wallace, Inc*., 97 F.3d 1227,

9  1234 (9th Cir. 1996).  "[I]f common questions are found to predominate in an antitrust action, then

10  courts generally have ruled that the superiority prerequisite of Rule 23(b)(3) is satisfied."  Wright,

11  Miller & Kane, *Federal Practice and Procedure: Civil Procedure* § 1781 at 254-55 (3d ed. 2004).

12  That is because in price-fixing cases, "the damages of individual indirect purchasers are likely to be

13  too small to justify litigation, but a class action would offer those with small claims the opportunity

14  for meaningful redress."  *SRAM*, No. C 07-01819 CW, 2009 U.S. Dist. LEXIS 110407, at *60 (N.D.

15  Cal. Nov. 25, 2009).

16       In this case, a class action is superior to individual litigation because it would be a waste of

17  judicial resources to require numerous separate trials relating to the same legal dispute.  *See In re

18  Brand Name Prescription Drugs Antitrust Litig*., Case No. 94 C 897, 1994 WL 663590, at *6 (N.D.

19  Ill. Nov. 18, 1994) ("We fail to see the logic in defendants' contention that 50,000 individual actions

20  are less complex than a single action.")  As noted by Judge Wilken in *SRAM*, the damages alleged by

21  individual members of the class are relatively small, and the expense and burden of individual

22  litigation would make it impracticable for them to seek redress individually.  *SRAM*, 2009 U.S. Dist.

23  LEXIS 110407, at *60.  Moreover, the interests of class members in individually controlling the

24  prosecution of separate claims are outweighed by the efficiency of the class mechanism.  Finally,

25  separate adjudication of claims creates a risk of inconsistent rulings, which further favors class

26  treatment.  Therefore, a class action is the superior method of adjudicating the claims raised in this

27  case.

### F.   The Court Should Appoint Plaintiffs' Interim Lead Counsel as Settlement Class Counsel

Rule 23(c)(1)(B) states that "[a]n order certifying a class action . . . must appoint class counsel under Rule 23(g)."  The court must consider "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources counsel will commit to representing the class."  Fed. R. Civ. P. 23(g)(1)(A).

On May 9, 2008, after considering competing motions, the Court appointed Mario N. Alioto of Trump, Alioto, Trump & Prescott LLP as Interim Lead Class Counsel.  *See* Order Appointing Interim Lead Counsel, Docket No. 47.  The work done by Class Counsel since being appointed, as set out in Section II above, provides a substantial basis for the Court's earlier finding that they satisfy each applicable criterion under Rule 23(g), and are well qualified to serve as Class Counsel. Accordingly, Trump, Alioto, Trump & Prescott LLP should be appointed as Settlement Class Counsel for purposes of this Settlement.

### V.   PROPOSED PLAN OF NOTICE

Rule 23(e)(1) states that, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise." Notice of a proposed settlement must inform class members of the following:  (1) the nature of the pending litigation; (2) the general terms of the proposed settlement; (3) that complete information is available from the court files; and (4) that any class member may appear and be heard at the fairness hearing.  *See Newberg* § 8.32.  The notice must also indicate an opportunity to opt-out, that the judgment will bind all class members who do not opt-out, and that any member who does not opt-out may appear through counsel.  Fed. R. Civ. P. 23(c)(2)(B).

The form of notice is "adequate if it may be understood by the average class member." *Newberg* § 11.53.  Notice to the class must be "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Amchem Prods*., 521 U.S. at 617.  Publication notice is an acceptable method of providing notice

1    where the identity of specific class members is not reasonably available. *See In re Tableware*
2    *Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007) (citing *Manual* § 21.311).

3        Plaintiffs' counsel have retained an experienced class action administrator, The Notice
4    Company, to give notice of this settlement to the members of the Class.  The notice program will
5    consist of both mailed and published notice, as well as posting the Notice on the Internet.  This
6    notice program will be similar to that employed in the indirect purchaser *SRAM* case and that
7    currently being proposed in the indirect purchaser *LCD* case,  and fulfills all the requirements of
8    Federal Rule of Civil Procedure 23 and due process. *See, e.g., Torrisi v. Tucson Elec. Power Co*., 8
9    F.3d 1370, 1374-75 (9th Cir. 1993); *In re AOL Time Warner ERISA Litig.*, 2006 U.S. Dist. LEXIS
10   70474, at *30-31 (S.D. N.Y. Sept. 27, 2006).

11   **VI.   PROPOSED PLAN OF ALLOCATION**

12       Plaintiffs propose that distribution of settlement funds be deferred until the termination of the
13   case, when there might be additional settlement funds from other settling defendants to distribute,
14   and because piecemeal distribution of each settlement is expensive, time-consuming, and likely to
15   cause confusion to class members.  Plaintiffs will address any allocation issues which arise at that
16   time as well.  Until that time, any settlement funds, not used to pay prior out-of-pocket expense or
17   future litigation costs, will accrue interest for the benefit of the class.  Deferring allocation of
18   settlement funds is a common practice in cases where claims against other defendants remain.  See
19   *Manual* § 21.651.

20   **VII.   NOTICE COSTS, LITIGATION EXPENSES AND ATTORNEYS' FEES**

21       The CPT Settlement Agreement provides that up to $500,000 of the settlement fund may be
22   used to pay for notice costs.  Alioto Decl., ¶ 15, Ex. 1 at ¶ 19(a).  The Agreement also states that
23   Plaintiffs' counsel may apply to the Court for reimbursement of litigation expenses out of the
24   settlement fund.  Alioto Decl., ¶ 15, Ex. 1  at ¶ 23.  Prior to the final approval hearing, Plaintiffs will
25   move for the creation of a litigation expense fund in the amount of $2.5 million for the
26   reimbursement of out-of-pocket expenses incurred to date and for payment of future out-of-pocket
27   expenses that may be incurred in prosecuting this case.  Any unused portion of that fund will be
28   disbursed to the class, along with the other net settlement funds.  Such litigation-expense funds have

been established and approved in other class actions. *See, e.g., Newby v. Enron Corp.*, 394 F.3d 296, 303 (5th Cir. 2004) (affirming approval of class settlement where $15 million of settlement proceeds were used to create a litigation expense fund); *In re Cal. Micro Devices Sec. Litig.*, 965 F. Supp. 1327, 1337 (N.D. Cal. 1997) (approving class counsel's request for a $1.5 million litigation fund "[b]ecause the remainder of the case appears to have potential value for the class"). Plaintiffs' request for a litigation expense fund will be fully explained in the proposed settlement class notice.

Finally, Plaintiffs' counsel will not seek an award of attorneys' fees at this time. Plaintiffs' counsel will seek an award of attorneys' fees in conjunction with the approval of future settlement(s), or at some other later date. Plaintiffs' counsels' request for fees for this Settlement will not exceed 25% of the amount of this Settlement.

## VIII. THE COURT SHOULD SET A FINAL APPROVAL HEARING SCHEDULE

The last step in the settlement approval process is the final approval hearing, at which the Court may hear all evidence and argument necessary to evaluate the proposed settlement. At that hearing, proponents of the Settlement may explain and describe its terms and conditions and offer argument in support of settlement approval and members of the Settlement Class, or their counsel, may be heard in support of or in opposition to the Settlement. Plaintiffs' respectfully suggest that the Court set the following final approval schedule, culminating in a final approval hearing:

| Event | Date |
|---|---|
| Notice Publication Date and Mailed Notice to Commence | Within 30 days of Order Granting Preliminary Approval |
| Exclusion Date | Within 60 days of Notice Publication Date |
| Objection Date | Within 60 days of Notice Publication Date |
| Final Hearing | 120 days from Order Granting Preliminary Approval |

## IX. CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that the Court: (1) grant preliminary approval of the class settlement with defendant CPT; (2) certify the proposed settlement class; and (3) set a schedule for final approval.

19

Dated: March 28, 2011

Respectfully submitted,

_____/s/ Mario N. Alioto_____
Mario N. Alioto

Mario N. Alioto (56433) malioto@tatp.com
Lauren C. Russell (241151)laurenrussell@tatp.com
TRUMP, ALIOTO, TRUMP & PRESCOTT LLP
2280 Union Street
San Francisco, CA 94123
Telephone: 415-563-7200
Facsimile: 415-346-0679

*Interim Lead Counsel for Indirect-Purchaser Plaintiffs*