# EXHIBIT H

Guido Saveri (22349) guido@saveri.com
R. Alexander Saveri (173102) rick@saveri.com
Geoffrey C. Rushing (126910) grushing@saveri.com
Cadio Zirpoli (179108) cadio@saveri.com
SAVERI & SAVERI, INC.
706 Sansome Street
San Francisco, CA 94111
Telephone:   (415) 217-6810
Facsimile:   (415) 217-6813

*Interim Lead Counsel for the Direct Purchaser
Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | MASTER FILE NO. 07-cv-5944 SC<br><br>MDL NO. 1917 |
| This Document Relates to:<br><br>ALL DIRECT PURCHASER ACTIONS | **DIRECT PURCHASER PLAINTIFFS' RESPONSES TO DEFENDANT SAMSUNG SDI CO., LTD.'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS** |

PROPOUNDING PARTY:        SAMSUNG SDI CO., LTD.

RESPONDING PARTIES:        Plaintiffs Crago, d/b/a Dash Computers, Inc., Arch Electronics, Inc., Electronic Design Company, Hawel A. Hawel, d/b/a City Electronics, Meijer, Inc. and Meijer Distribution, Inc., Nathan Muchnick, Inc., Orion Home Systems, LLC, Paula Call d/b/a Poway-Rancho Bernardo TV, Princeton Display Technologies, Inc., Radio & TV Equipment, Inc., Royal Data Services, Inc., Studio Spectrum, Inc., Wettstein and Sons, Inc. d/b/a Wettstein's. ("Plaintiffs").

SET NO.:        ONE

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiffs object and respond to Defendant Samsung SDI Co., Ltd.'s First Set of Requests for Production of Documents ("Requests") as follows:

## GENERAL OBJECTIONS

Plaintiffs object generally to the Requests, and to each individual request therein, on the following grounds, each of which is incorporated by reference in the responses to the individual requests below.  Each response set forth below incorporates, is subject to, and does not waive any of these general objections.

1.     Plaintiffs reserve all objections regarding the competence, relevance, materiality, privilege, or admissibility of any and all documents responsive to the Requests.  Plaintiffs object to the Requests to the extent they seek information protected by the attorney-client privilege, the work product doctrine, or any other applicable claim of privilege or immunity, or that is otherwise privileged or immune from discovery.

2.     Plaintiffs object to the Requests, including the Definitions, to the extent they seek to impose obligations greater than those imposed by the Federal Rules of Civil Procedure or the Local Rules of the United States District Court for the Northern District of California.

3.     Plaintiffs object to each request, instruction, or definition to the extent it is overly broad, unduly burdensome, vague, ambiguous or does not specify the documents sought with sufficient particularity.

4.     Plaintiffs object to each request, instruction, or definition to the extent it seeks information that is already in the possession of the Defendants or is obtainable from some other source that is more convenient, less burdensome or less expensive.

5.     Plaintiffs object to each request, instruction, or definition to the extent that it impermissibly seeks the premature disclosure of experts and expert information or requires Plaintiffs to disclose analyses, comparative analyses, opinions, or theories that will be the subject of expert testimony.

6.     To the extent any term in the Requests is defined in the Federal Rules of Civil Procedure, Plaintiffs will interpret such term as it is so defined and not as defined in the Requests.

7.     Plaintiffs object to the Requests, including the Definitions and Instructions contained therein, to the extent they seek information or documents that are not within the possession, custody, or control of Plaintiffs.

1    8.    Plaintiffs object to the Requests to the extent they seek to require Plaintiffs to

2  produce every document or all information that supports or otherwise relates to specific

3  contentions in this litigation, on the ground that such requests are overly broad, unduly

4  burdensome, and premature at this stage of litigation.

5    9.    Plaintiffs object to the Requests to the extent that they seek information relating to

6  the sales or use of CRTs and/or CRT PRODUCTS acquired by Plaintiffs, or other downstream

7  data, because such information is not relevant to the claims or defenses of any party. *See, e.g., In*

8  *re Vitamins Antitrust Litig.*, 198 F.R.D. 296, 301 (D.D.C. 2000); *In re Pressure Sensitive*

9  *Labelstock Antitrust Litig.*, 226 F.R.D. 492, 497-498 (M.D. Pa. 2005).

10    10.    Plaintiffs' responses agreeing to produce documents in response to the Requests

11  should not be construed as meaning that documents of the type requested exist, and should only be

12  construed as indicating that Plaintiffs will produce documents of the type requested if they are in

13  Plaintiffs' possession, custody or control, are not privileged or otherwise exempt from production,

14  and can be located and produced through reasonable and good faith effort.

15    11.    Plaintiffs object to the Requests to the extent they are duplicative of document

16  requests served by other defendants in this litigation.  To the extent the Requests seek material that

17  is duplicative to that requested by other document requests that have already been propounded on

18  the direct purchaser class, or served at the same time as these Requests, the direct purchaser

19  plaintiffs will only produce material one time.

20    12.    Plaintiffs object to the document Requests, instructions and definitions to the extent

21  they call for documents or information relating to a time period other than the relevant Class

22  Period as defined in the Direct Purchaser Plaintiffs' Consolidated Amended Complaint.  Plaintiffs

23  will provide documents and information only as to the relevant Class Period.

24

**RESPONSES**

25
**REQUEST FOR PRODUCTION NO. 1:**

26
    All DOCUMENTS YOU IDENTIFIED or were requested to IDENTIFY in response to the

27
INTERROGATORIES served herewith.

28

**RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

Plaintiffs incorporate the General Objections, as well as all objections to the interrogatories to which this request refers, as though fully set forth herein. Plaintiffs further object to this request on the ground that it is vague, ambiguous, overbroad and unduly burdensome, *inter alia,* in its use of the phrase "were requested to IDENTIFY". Subject to these objections, Plaintiffs will produce documents, if any, identified in their response to the interrogatories.

**REQUEST FOR PRODUCTION NO. 2:**

All DOCUMENTS RELATING TO the acquisition of any CRT upon which YOU base any claim in this action, including without limitation (a) copies of all receipts, invoices, purchase orders, or other similar documents evidencing each acquisition; (b) all manuals, installation guides, servicing guides, warranty booklets or other documentation accompanying each acquired CRT; (c) all contracts, agreements, or memoranda of understanding relating to YOUR acquisition of each CRT; and (d) all documents evidencing the type, price, manufacturer, and costs of any CRT YOU acquired.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

Plaintiffs incorporate the General Objections as though fully set forth herein. This request is overbroad and unduly burdensome in that it calls for information not relevant to the claims or defenses of any party. This request also seeks information that is equally available to Defendants. Plaintiffs further object to this request on the ground that it is vague and ambiguous. Plaintiffs further object to this request on the ground that it is unduly burdensome in that it duplicates requests served by other defendants herein. Subject to the foregoing, Plaintiffs will produce documents, if any, responsive to this request.

**REQUEST FOR PRODUCTION NO. 3:**

All DOCUMENTS RELATING TO the acquisition of any CRT PRODUCT upon which YOU base any claim in this action, including without limitation (a) copies of all receipts, invoices, purchase orders, or other similar documents evidencing each acquisition; (b) all manuals, installation guides, servicing guides, warranty booklets or other documentation accompanying

DIRECT PURCHASER PLAINTIFFS' RESPONSES TO DEFENDANT SAMSUNG SDI CO., LTD.'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS

238

1  each acquired CRT PRODUCT; (e) all contracts, agreements, or memoranda of understanding

2  relating to YOUR acquisition of each CRT PRODUCT; and (d) all documents evidencing the

3  type, price, manufacturer, and costs of any CRT PRODUCT YOU acquired.

4  **RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

5       Plaintiffs incorporate the General Objections as though fully set forth herein.  This request

6  is overbroad and unduly burdensome in that it calls for information not relevant to the claims or

7  defenses of any party.  Plaintiffs further object to this request on the ground that it is vague and

8  ambiguous.  Plaintiffs further object to this request on the ground that it is unduly burdensome in

9  that it duplicates requests served by other defendants herein.  This request also seeks information

10  that is equally available to Defendants.  Subject to the foregoing, Plaintiffs will produce

11  documents, if any, responsive to this request.

12  **REQUEST FOR PRODUCTION NO. 4:**

13       All DOCUMENTS RELATING TO YOUR decision(s) to acquire or not acquire a CRT

14  during the RELEVANT PERIOD, including without limitation any consideration by YOU of

15  acquiring alternative items or products.

16  **RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

17       Plaintiffs incorporate the General Objections as though fully set forth herein.  Plaintiffs

18  further object to this request on the ground that it is vague and ambiguous, *inter alia,* in its use of

19  the phrases "decision(s) to . . . not acquire a CRT" and "alternative items or products."  Plaintiffs

20  further object to this request on the ground that it is overly broad and unduly burdensome and calls

21  for information not relevant to the claims or defenses of any party.  Plaintiffs further object to this

22  request on the ground that it is unduly burdensome in that it duplicates requests served by other

23  defendants herein.  Subject to the foregoing, Plaintiffs will produce documents, if any, responsive

24  to this request relating to purchases of CRTs or CRT Products from defendants.

25  **REQUEST FOR PRODUCTION NO. 5:**

26       All DOCUMENTS RELATING TO YOUR decision(s) to acquire or not acquire a CRT

27  PRODUCT during the RELEVANT PERIOD, including without limitation any consideration by

28  YOU of acquiring alternative items or products.

815502.1        5       MDL NO. 1917
DIRECT PURCHASER PLAINTIFFS' RESPONSES TO DEFENDANT SAMSUNG SDI CO., LTD.'S FIRST SET
OF REQUESTS FOR PRODUCTION OF DOCUMENTS     239

**RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

Plaintiffs incorporate the General Objections as though fully set forth herein.  Plaintiffs further object to this request on the ground that it is vague and ambiguous, *inter alia,* in its use of the phrases "decision(s) to . . . not acquire a CRT" and "alternative items or products."  Plaintiffs further object to this request on the ground that it is overly broad and unduly burdensome and calls for information not relevant to the claims or defenses of any party.  Plaintiffs further object to this request on the ground that it is unduly burdensome in that it duplicates requests served by other defendants herein.  Subject to the foregoing, Plaintiffs will produce documents, if any, responsive to this request, relating to purchases of CRTs or CRT Products from defendants.

**REQUEST FOR PRODUCTION NO. 6:**

All DOCUMENTS RELATING TO price quotes for CRTs that YOU received from any DEFENDANT, manufacturer, wholesaler, marketer or distributor of CRTs.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

Plaintiffs incorporate the General Objections as though fully set forth herein.  Plaintiffs further object to this request on the ground that it is vague and ambiguous, overly broad and unduly burdensome.  Plaintiffs further object to this request with regard to price quotes from anyone other than Defendants on the ground that such information is not relevant to the claims or defenses of any party or received by Plaintiffs outside the class period on the ground that such information is not relevant to the claims or defenses of any party.  Plaintiffs further object to this request on the ground that responsive information is already in Defendants' possession, or is available through other less burdensome means.  Plaintiffs further object to this request on the ground that it is unduly burdensome in that it duplicates requests served by other defendants herein.  Subject to the foregoing, Plaintiffs will produce documents, if any, responsive to this request relating to price quotes received from defendants.

**REQUEST FOR PRODUCTION NO. 7:**

All DOCUMENTS RELATING TO price quotes for CRT PRODUCTS that YOU received from any DEFENDANT, manufacturer, wholesaler, marketer or distributor of CRT PRODUCTS.

1  **RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

2        Plaintiffs incorporate the General Objections as though fully set forth herein.  Plaintiffs

3  further object to this request on the ground that it is vague and ambiguous, overly broad and

4  unduly burdensome.  Plaintiffs further object to this request with regard to price quotes from

5  anyone other than Defendants or received by Plaintiffs outside the class period on the ground that

6  such information is not relevant to the claims or defenses of any party.  Plaintiffs further object to

7  this request on the ground that responsive information is already in Defendants' possession, or is

8  available through other less burdensome means.  Plaintiffs further object to this request on the

9  ground that it is unduly burdensome in that it duplicates requests served by other defendants

10  herein.  Subject to the foregoing, Plaintiffs will produce documents, if any, responsive to this

11  request relating to price quotes received from defendants.

12  **REQUEST FOR PRODUCTION NO. 8:**

13        All DOCUMENTS RELATING TO COMMUNICATIONS between YOU and any other

14  PERSON, including DEFENDANTS, RELATING TO any actual or potential acquisition by YOU

15  of CRTs during the RELEVANT PERIOD.

16  **RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

17        Plaintiffs incorporate the General Objections as though fully set forth herein.  Plaintiffs

18  further object to this request on the ground that it is vague and ambiguous, overly broad and

19  unduly burdensome.  Plaintiffs further object to this request with regard to communications with

20  anyone other than Defendants on the ground that such information is not relevant to the claims or

21  defenses of any party.  Plaintiffs further object to this request on the ground that responsive

22  information is already in Defendants' possession, or is available through other less burdensome

23  means.  Plaintiffs further object to this request on the ground that it is unduly burdensome in that it

24  duplicates requests served by other defendants herein.  Subject to the foregoing, Plaintiffs will

25  produce documents, if any, responsive to this request relating to communications with defendants.

26  **REQUEST FOR PRODUCTION NO. 9:**

27        All DOCUMENTS RELATING TO COMMUNICATIONS between YOU and any other

28  PERSON, including DEFENDANTS, RELATING TO any actual or potential acquisition by YOU

815502.1              7             MDL NO. 1917

DIRECT PURCHASER PLAINTIFFS' RESPONSES TO DEFENDANT SAMSUNG SDI CO., LTD.'S FIRST SET
OF REQUESTS FOR PRODUCTION OF DOCUMENTS      241

1  of CRT PRODUCTS during the RELEVANT PERIOD.

2  **RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

3       Plaintiffs incorporate the General Objections as though fully set forth herein.  Plaintiffs

4  further object to this request on the ground that it is vague and ambiguous, overly broad and

5  unduly burdensome.  Plaintiffs further object to this request with regard to communications with

6  anyone other than Defendants on the ground that such information is not relevant to the claims or

7  defenses of any party.  Plaintiffs further object to this request on the ground that responsive

8  information is already in Defendants' possession, or is available through other less burdensome

9  means.  Plaintiffs further object to this request on the ground that it is unduly burdensome in that it

10  duplicates requests served by other defendants herein.  Subject to the foregoing, Plaintiffs will

11  produce documents, if any, responsive to this request relating to communications with defendants.

12  **REQUEST FOR PRODUCTION NO. 10:**

13       All DOCUMENTS RELATING TO any rebates, promotional monies, co-op funds,

14  corporate discounts or other financial benefits received in connection with any acquisition by

15  YOU of a CRT during the RELEVANT PERIOD.

16  **RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

17       Plaintiffs incorporate the General Objections as though fully set forth herein.  Plaintiffs

18  further object to this request on the ground that it is vague and ambiguous, overly broad and

19  unduly burdensome.  Plaintiffs further object to this request with regard to transactions with

20  parties other than Defendants on the ground that such information is not relevant to the claims or

21  defenses of any party.   Plaintiffs further object to this request on the ground that responsive

22  information is already in Defendants' possession, or is available through other less burdensome

23  means.  Plaintiffs further object to this request on the ground that it is unduly burdensome in that it

24  duplicates requests served by other defendants herein.  Subject to the foregoing, Plaintiffs will

25  produce documents, if any, responsive to this request relating to transactions with defendants.

26  **REQUEST FOR PRODUCTION NO. 11:**

27       All DOCUMENTS RELATING TO any rebates, promotional monies, co-op funds,

28  corporate discounts or other financial benefits received in connection with any acquisition by

815502.1        8        MDL NO. 1917
DIRECT PURCHASER PLAINTIFFS' RESPONSES TO DEFENDANT SAMSUNG SDI CO., LTD.'S FIRST SET
OF REQUESTS FOR PRODUCTION OF DOCUMENTS     242

1   YOU of a CRT PRODUCT during the RELEVANT PERIOD.

2   **RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**

3          Plaintiffs incorporate the General Objections as though fully set forth herein.  Plaintiffs

4   further object to this request on the ground that it is vague and ambiguous, overly broad and

5   unduly burdensome.  Plaintiffs further object to this request with regard to transactions with

6   parties other than Defendants on the ground that such information is not relevant to the claims or

7   defenses of any party.   Plaintiffs further object to this request on the ground that responsive

8   information is already in Defendants' possession, or is available through other less burdensome

9   means.  Plaintiffs further object to this request on the ground that it is unduly burdensome in that it

10  duplicates requests served by other defendants herein.  Subject to the foregoing, Plaintiffs will

11  produce documents, if any, responsive to this request relating to transactions with defendants.

12  **REQUEST FOR PRODUCTION NO. 12:**

13         DOCUMENTS sufficient to identify all purposes for which YOU acquired, sold, used or

14  manufactured CRTs during the RELEVANT PERIOD.

15  **RESPONSE TO REQUEST FOR PRODUCTION NO. 12:**

16         Plaintiffs incorporate the General Objections as though fully set forth herein.  Plaintiffs

17  also object to this request on the grounds that it is vague and ambiguous, overly broad and unduly

18  burdensome.  Plaintiffs further object to this request on the grounds that it seeks material neither

19  relevant nor reasonably calculated to lead to the discovery of admissible evidence.  Plaintiffs

20  further object and will not produce documents responsive to this request on the ground that it

21  seeks downstream information not relevant to the claims or defenses of any party. *See, e.g., In re*

22  *Vitamins Antitrust Litig.*, 198 F.R.D. 296, 301 (D.D.C. 2000); *In re Pressure Sensitive Labelstock*

23  *Antitrust Litig.*, 226 F.R.D. 492, 497-498 (M.D. Pa. 2005).  Plaintiffs also object to this request on

24  the grounds that it is duplicative of document requests and other discovery served by other

25  defendants herein.

26  **REQUEST FOR PRODUCTION NO. 13:**

27         DOCUMENTS sufficient to identify all purposes for which YOU acquired, sold, used or

28  manufactured CRT PRODUCTS during the RELEVANT PERIOD.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

Plaintiffs incorporate the General Objections as though fully set forth herein.  Plaintiffs also object to this request on the grounds that it is vague and ambiguous, overly broad and unduly burdensome.  Plaintiffs further object to this request on the grounds that it seeks material neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.  Plaintiffs further object and will not produce documents responsive to this request on the ground that it seeks downstream information not relevant to the claims or defenses of any party. *See, e.g., In re Vitamins Antitrust Litig.*, 198 F.R.D. 296, 301 (D.D.C. 2000); *In re Pressure Sensitive Labelstock Antitrust Litig.*, 226 F.R.D. 492, 497-498 (M.D. Pa. 2005).  Plaintiffs also object to this request on the grounds that it duplicative of document requests and other discovery served by other defendants herein.

**REQUEST FOR PRODUCTION NO. 14:**

All DOCUMENTS concerning budgets, forecasts or strategies with respect to YOUR acquisitions or sales of CRTs.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

Plaintiffs incorporate the General Objections as though fully set forth herein.  Plaintiffs also object to this request on the grounds that it is vague and ambiguous, overly broad and unduly burdensome.  Plaintiffs further object to this request on the grounds that it seeks material neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.  Plaintiffs further object and will not produce documents responsive to this request on the ground that it seeks downstream information not relevant to the claims or defenses of any party. *See, e.g., In re Vitamins Antitrust Litig.*, 198 F.R.D. 296, 301 (D.D.C. 2000); *In re Pressure Sensitive Labelstock Antitrust Litig.*, 226 F.R.D. 492, 497-498 (M.D. Pa. 2005).  Plaintiffs also object to this request on the grounds that it is duplicative of document requests and other discovery served by other defendants herein.

**REQUEST FOR PRODUCTION NO. 15:**

All DOCUMENTS concerning budgets, forecasts or strategies with respect to YOUR acquisitions or sales of CRT PRODUCTS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 15:**

Plaintiffs incorporate the General Objections as though fully set forth herein. Plaintiffs also object to this request on the grounds that it is vague and ambiguous, overly broad and unduly burdensome. Plaintiffs further object to this request on the grounds that it seeks material neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs further object and will not produce documents responsive to this request on the ground that it seeks downstream information not relevant to the claims or defenses of any party. *See, e.g., In re Vitamins Antitrust Litig.*, 198 F.R.D. 296, 301 (D.D.C. 2000); *In re Pressure Sensitive Labelstock Antitrust Litig.*, 226 F.R.D. 492, 497-498 (M.D. Pa. 2005). Plaintiffs also object to this request on the grounds that it is duplicative of document requests and other discovery served by other defendants herein.

DATED: July 9, 2010

By:     /s/ Guido Saveri
SAVERI & SAVERI, INC.
706 Sansome Street
San Francisco, CA 94111
Telephone:     (415) 217-6810
Facsimile:     (415) 217-6813

*Interim Lead Counsel for the Direct Purchaser Plaintiffs*

Crt.279a

# EXHIBIT I

# ARNOLD & PORTER LLP

Eric Shapland
Eric.Shapland@aporter.com

213.243.4238
213.243.4199 Fax

44th Floor
777 South Figueroa Street
Los Angeles, CA 90017-5844

August 2, 2010

**VIA E-MAIL**

Guido Saveri
Rick Saveri
Geoffrey Rushing
Cadio Zirpoli
Saveri & Saveri, Inc.
706 Sansome Street
San Francisco, California 94111

Re:   *In Re Cathode Ray Tube (CRT) Antitrust Litigation,*
       No. C 07-5944 SC, MDL No. 1917

Dear Messrs. Saveri, Saveri, Rushing and Zirpoli:

On behalf of LG Electronics, Inc., LG Electronics USA, Inc. and LG Electronics Taiwan Taipei Co., Ltd. (collectively, the "LGE Defendants"), I am writing regarding the Direct Purchaser ("DP") Plaintiffs' Responses to the LGE Defendants' Second Set of Requests for Production of Documents.

In that set of requests, the LGE Defendants ask the DP Plaintiffs to produce certain financial and pricing data, including financial statements regarding their CRT or CRT-product business; revenues, costs, profits and losses from CRTs or CRT products; documents regarding any effect on profit or loss as a result of CRT or CRT-product prices or price changes; documents regarding cost-cutting or cost-saving measures relating to CRTs or CRT products; and tax filings for the relevant time period. The DP Plaintiffs have objected to all of these requests and refused to produce responsive documents.

The DP Plaintiffs' blanket refusal essentially rests on two grounds. First, the DP Plaintiffs characterize the information sought as "downstream data" that is "irrelevant to the claims or defenses of any party" because *Hanover Shoe, Inc. v. United Machinery Corp.*, 392 U.S. 481 (1968), bars pass-on defenses. Second, they object to the production of tax filings, covered by Request No. 14, on the ground that such filings are privileged. The DP Plaintiffs' remaining objections to Request Nos. 5 through 13 are mere boilerplate.

Neither of the DP Plaintiffs' grounds for refusing production has merit.

# ARNOLD & PORTER LLP

Guido Saveri, Esq.
August 2, 2010
Page 2

(1)     It is well settled that downstream discovery is appropriate for several reasons.  First, it may reveal the applicability of an exception to the rule against pass-on defenses, *Hanover Shoe, Inc.*, 392 U.S. at 494 (discussing exception for pre-existing cost-plus contracts), and is therefore appropriate, *e.g.*, *Meijer, Inc. v. Warner Chilcott Holdings Co., III, Ltd.*, 245 F.R.D. 26, 35 (D.D.C. 2007) (allowing discovery of downstream data to determine whether cost-plus exception applied).  Second, downstream discovery is appropriate to explore grounds for opposing certification of a direct purchaser plaintiff class.  *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1191-96 (11th Cir. 2003) (ordering downstream discovery over direct purchasers' objection because "neither *Hanover Shoe* nor *Illinois Brick* addressed a party's burden to satisfy the class certification prerequisites established by Rule 23(a)").  Further, downstream discovery is appropriate to determine the amount of pass-on damages that Indirect Purchaser Plaintiffs can seek to recover as a result of their purchases from the DP Plaintiffs.  The authorities that Plaintiffs rely on are not persuasive because they failed to consider all of these ways in which downstream discovery is relevant and refused to order such discovery based only on undue burden grounds.  *In re Pressure Labelstock Antitrust Litig.*, 226 F.R.D. 492, 497 (M.D. Pa. 2005); *In re Vitamins Antitrust Litig.*, 198 F.R.D. 296, 301 (D.D.C. 2000).

(2)     Tax filings are not privileged.  *Heathman v. United States Dist. Court for Cent. Dist. of Cal.*, 503 F.2d 1032, 1035 (9th Cir. 1974) (holding tax returns subject to discovery because they are neither privileged nor protected by the right of privacy); *see* 23 Wright & Miller, Federal Practice & Procedure Evidence, § 5431 (tax returns not privileged under federal law).  To address concerns about confidentiality, the DP Plaintiffs can produce their tax filings with any confidentiality designation that is appropriate under the protective order entered in this litigation.  *See Fresenius Med. Care Holding Inc. v. Baxter Int'l, Inc.*, 224 F.R.D. 644, 654 n.3 (N.D. Cal. Feb. 5, 2004) (documents could be designated under protective order and thus were not privileged merely because they contained confidential business information).

Accordingly, please provide supplemental responses to these requests as soon as possible, or let me know at your earliest convenience when you will be available to discuss your objections.

Best Regards,

Eric Shapland

# ARNOLD & PORTER LLP

Guido Saveri, Esq.
August 2, 2010
Page 3

cc:     Mario N. Alioto, Esq.
        Lauren Russell, Esq.
        All Defense Counsel

# EXHIBIT J

Morgan, Lewis & Bockius LLP
One Market, Spear Street Tower
San Francisco, CA 94105
Tel:  415.442.1000
Fax: 415.442.1001
www.morganlewis.com

# Morgan Lewis
### COUNSELORS AT LAW

**Diane L. Webb**
Partner
415.442.1353
dwebb@MorganLewis.com

August 3, 2010

**VIA E-MAIL AND U.S. MAIL**

Guido Saveri, Esq.
Saveri & Saveri, Inc.
706 Sansome Street
San Francisco, CA  94111

Re:     *In re Cathode Ray Tube (CRT) Antitrust Litig.*, MDL No. 1917 (N.D. Cal.)

Dear Guido:

        We write concerning Direct Purchaser Plaintiffs' ("Plaintiffs") responses to Defendant Hitachi America, Ltd.'s ("HAL") First Set of Requests for Production of Documents ("Document Requests") and First Set of Interrogatories ("Interrogatories"), which we received on June 12, 2010.  Plaintiffs' responses are deficient in several respects as set forth below.

## I.     PLAINTIFFS ERRONEOUSLY OBJECT ON THE GROUND THAT THE DISCOVERY REQUESTS SEEK DOWNSTREAM DATA

        HAL requested information and documents related to Plaintiffs' sales of CRTs and CRT Products.  *See* Document Requests Nos. 2, 3, 4, 5, 6, 7, 8, 9, 10, and 11 and Interrogatories Nos. 2, 3, 4, 5, 6, 7, 8, and 9.  In response to these Document Requests and Interrogatories, Plaintiffs flat-out refuse to produce documents or provide responsive information.  Rather, Plaintiffs incorrectly object that discovery relating to downstream data is irrelevant.  Plaintiffs' objection is without merit.

        Plaintiffs erroneously rely upon *In re Vitamins Antitrust Litig.*, 198 F.R.D. 296 (D.D.C. 2000) and *In re Pressure Sensitive Labelstock Antitrust Litig.*, 226 F.R.D. 492 (M.D. Pa. 2005), in support of their objection that the discovery requests "call[] for downstream material concerning sales of CRTs by Plaintiffs and such material is not relevant to the claims or defenses of any party."  Response to Request for Production No. 2; *see, e.g.*, plaintiff Arch Electronics, Inc.'s Response to Interrogatory No. 2 ("Plaintiff further objects and will not respond to this interrogatory because it impermissibly calls for downstream information concerning sales of



Guido Saveri, Esq.
August 3, 2010
Page 2

CRTs by Plaintiff and such information is not relevant to the claims or defenses of any party.").

It is well-settled that downstream data may be used for other relevant purposes in federal antitrust litigation, other than asserting a pass-on defense. *In re Vitamins*, 198 F.R.D. at 298. ("*Hanover Shoe* and its progeny do not render irrelevant plaintiffs' individualized downstream data [when] defendants are not seeking discovery of this data in order to assert a pass-on defense."). For example, downstream data may be used to establish whether Plaintiffs meet the class certification standards of Federal Rule of Civil Procedure 23. *See In re Urethane Antitrust Litig.*, 237 F.R.D. 454, 462-64 (D. Kan. 2006). It is relevant for class certification purposes if Plaintiffs sold CRTs and/or CRT Products to distinctly divergent customers. *See California v. Infineon Technologies AG*, No. C 06-4333 PJH, 2008 WL 4155665 (N.D. Cal. Sept. 5, 2008). Moreover, downstream data may reveal inherent conflicts of interest among Plaintiffs that would make class certification inappropriate. *See Valley Drug Co. v. Geneva Pharmaceuticals, Inc.*, 350 F.3d 1181 (11th Cir. 2003); *Natchitoches Parish Hosp. Serv. v. Tyco Int'l, Ltd.*, 247 F.R.D. 253, 267-68 (D. Mass. 2008). And, downstream data may be used to determine whether an exception to the rule against the use of pass-on defenses is applicable. *See Hanover Shoe, Inc. v. United Machinery Corp.*, 392 U.S. 481, 494 (1968) (noting some exceptions to the pass-on defense, such as fixed quantity, pre-existing, cost-plus contracts). Moreover, the authority Plaintiffs rely on is not persuasive because those cases did not consider all of the ways in which downstream discovery is relevant, and the courts in those cases refused to permit discovery based only on undue burden grounds. *In re Pressure*, 226 F.R.D. at 497; *In re Vitamins*, 198 F.R.D. at 301.

Additionally, a "pass-on" defense is also available against various state law claims that Indirect Purchaser Plaintiffs alleged in their complaint. *See, e.g.*, <u>District of Columbia</u>, D.C. St. 28-4509(b); <u>Hawaii</u>, H.R.S. § 480-13(2); <u>North Dakota</u>, N.D.C.C. § 51-08.1-08(4); <u>New Mexico</u>, N.M. Stat. § 57-1-3; <u>New York</u>, N.Y. Gen. Bus. Law § 340.6. Thus, downstream discovery data from Direct Purchaser Plaintiffs is relevant to establish and necessary to defend against certain of Indirect Purchaser Plaintiffs' state law claims.

Likewise improper are Plaintiffs' General Objection No. 9 to HAL's Documents Requests and General Objection No. 12 to HAL's Interrogatories that "evidence other than that related to direct purchases of CRTs Products from the named defendants in this action has been barred by the United States Supreme Court. *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977)." *See also*, Plaintiffs' Responses to Document Requests, Nos. 2, 3, 4, 5, 6, 7, 8, and 9 (objecting on ground that the requests seek "material other than that related to direct purchases of CRTs [or CRT Products] from the named defendants in this action."). Plaintiffs misstate *Illinois Brick*'s holding and its impact on discovery.

In *Illinois Brick*, the Supreme Court rejected the offensive use of "pass-on" theories by plaintiffs in federal antitrust litigation. *Illinois Brick*, 431 U.S. at 728 ("We granted certiorari . . . to resolve a conflict among the Courts of Appeals on the question whether the offensive use of



Guido Saveri, Esq.
August 3, 2010
Page 3

pass-on authorized by the decision below is consistent with *Hanover Shoe*'s restrictions on the defensive use of pass-on. We hold that it is not, and we reverse."). The Supreme Court did *not*, however, hold that evidence regarding the price at which direct purchaser plaintiffs sold allegedly price-fixed products is *per se* irrelevant or inadmissible in federal antitrust litigation.

In fact, as addressed above, there are several instances where this evidence is relevant to issues other than the pass-on defense (or offensive use), such as class certification standards and establishing conflicts among the proposed class of plaintiffs. And, as demonstrated above, the pass-on defense is available with respect to certain state law claims alleged in this case by Indirect Purchaser Plaintiffs. Accordingly, Plaintiffs' *Illinois Brick* objection is unfounded, and Plaintiffs may not withhold responsive documents and information on this basis.

Accordingly, Plaintiffs' refusal to submit to discovery on the ground that the requests seek downstream data is without merit, and we ask Plaintiffs to provide substantive responses immediately.

## II.   PLAINTIFFS' IMPROPERLY OBJECT THAT HAL'S DOCUMENT REQUESTS AND INTERROGATORIES ARE IRRELEVANT

Plaintiffs object to nearly all of HAL's Document Requests and Interrogatories on the ground that they seek documents and information that are "irrelevant to the issues raised and damages claimed in this case and is not likely to lead to the discovery of admissible evidence." *See* Responses to Document Requests, Nos. 2, 3, 4, 5, 6, 7, 8, 9, 10, and 11; Plaintiffs' Responses to Interrogatories[1] Nos. 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, and 13. Plaintiffs' objections on this ground are unfounded.

The Federal Rules explicitly permit parties to obtain discovery "that is relevant to any party's claim or defense," and that "relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. Proc. 26(b)(1); *see also Phoenix Solutions Inc. v. Wells Fargo Bank, N.A.*, 254 F.R.D. 568, 575 (N.D. Cal. 2008) ("[t]he scope of discovery permissible under Rule 26 should be liberally construed; the rule contemplates discovery into any matter that bears on or that reasonably could lead to other matters that could bear on any issues that is or may be raised in a case.").

As stated above, Document Requests Nos. 2, 3, 4, 5, 6, 7, 8, 9, 10, and 11 and

---

[1] The individual plaintiffs' objections and responses to HAL's Interrogatories are, for the most part, verbatim or very similar. Unless addressing a specific, unique response by an individual Plaintiff, HAL will refer to the individual plaintiffs' responses to HAL's Interrogatories collectively as "Plaintiffs' Responses to Interrogatories."



Guido Saveri, Esq.
August 3, 2010
Page 4

Interrogatories Nos. 2, 3, 4, 5, 6, 7, 8, and 9 seek materials regarding Plaintiffs' downstream sales of CRTs and CRT Products.  As demonstrated above, these requests are relevant to the claims and defenses at issue in this case.  Thus, Plaintiffs' objections on grounds of relevancy and that the requests are not "likely to led to the discovery of admissible evidence" are without merit, and Plaintiffs should provide compliant, substantive responses immediately.

Additionally, Interrogatories Nos. 10 and 11 seek identification of the "product specifications for each acquisition or potential acquisition of CRTs [or CRT Products] during the RELEVANT PERIOD."  This information is relevant.  It demonstrates distinctions among the potential class members with respect to the types of CRTs and CRT Products each plaintiff allegedly purchased, which is relevant to determining whether Rule 23 class certification standards can be met.  If Plaintiffs withheld any responsive information on the basis of their relevance objections, please produce such information immediately.

Interrogatories Nos. 12 and 13 requested Plaintiffs to state, "with respect to each CRT [or CRT Product] that [Plaintiffs] acquired during the RELEVANT PERIOD" the "total dollar amount by which YOU allege YOU were overcharged as a result of the allegations in the Complaint."  This information is squarely related to Plaintiffs' claimed damages.  If Plaintiffs withheld any responsive information on the basis of their relevance objections, please produce such information immediately.

## III.   PLAINTIFFS FAIL TO PROVIDE ANY EXPLANATION OF THE PURPORTED BURDEN TO PRODUCE THE REQUESTED DOCUMENTS AND RESPOND TO INTERROGATORIES

Plaintiffs baldly object to the vast majority of HAL's Document Requests and Interrogatories as "overly broad" and "unduly burdensome."  *See, e.g.,* Plaintiffs' Response to Document Request No. 2; *see, e.g.,* plaintiff Arch Electronics, Inc.'s Response to Interrogatory No. 2.  Plaintiffs fail, however, to articulate any specific burden, much less one that is unduly burdensome, to produce the requested information.  *See* Responses to Document Requests, Nos. 2, 3, 4, 5, 6, 7, 8, 9, 10, 11 and Plaintiffs' Responses to Interrogatories, Nos. 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, and 13.

As demonstrated in above Sections I. and II., HAL's requests are narrowly tailored and seek highly relevant information.  To the extent information or documents have been withheld on the basis of the requested discovery being "over broad" and "unduly burdensome," Plaintiffs' objections fail.

## IV.   THE REQUESTS AND INTERROGATORIES ARE NOT VAGUE AND AMBIGUOUS

Plaintiffs wholesale object to HAL's Document Requests and Interrogatories as "vague



and ambiguous." *See* Plaintiffs' Responses to Document Requests, Nos. 2, 3, 4, 5, 6, 7, 8, 9, 10, and 11 and Plaintiffs' Responses to Interrogatories, Nos. 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, and 13. Yet, Plaintiffs fail to identify a specific term or phrase they are unable to understand.

## V.   THE DOCUMENT REQUESTS AND INTERROGATORIES ARE NOT DUPLICATIVE

Plaintiffs further object that several of HAL's Document Requests and Interrogatories are "duplicative of document requests and other discovery served by other defendants herein." *See* Responses to Document Requests, Nos. 2, 3, 4, 5, 6, 7, 8, and 9, and Plaintiffs' Responses to Interrogatories, Nos. 6, 7, 8, 9, 10 and 11.

Plaintiffs fail to identify in what respect HAL's discovery requests are duplicative of other Defendants' document requests or other discovery requests. Moreover, the fact that other Defendants may have sought similar discovery from Plaintiffs does not relieve Plaintiffs of their obligation to respond to HAL's specific discovery requests. Thus, this objection is without merit. Please produce any responsive documents and information Plaintiffs have withheld on this basis.

## VI.   PLAINTIFFS ERRONEOUSLY OBJECT ON THE BASIS OF PRIVILEGE

Plaintiffs object to Document Requests Nos. 10 and 11, and Interrogatories Nos. 6, 7, 12, and 13 on the grounds that the discovery requests call for "the disclosure of information that is protected by the attorney-client privilege, the work product doctrine, or is otherwise privileged or immune from discovery." *See, e.g.*, Plaintiffs' Responses to Document Requests, Nos. 10 and 11; *see, e.g.*, Plaintiffs' Responses to Interrogatories, Nos. 6 and 7.

Document Requests Nos. 10 and 11 seek documents "concerning any products that are marketed or sold as substitutes for any CRT [or CRT PRODUCT] that YOU acquired, sold, or were distributed by YOU." It is difficult to understand how these requests seek privileged material. Contrary to Plaintiffs' objections, these requests do not call for the disclosure of privileged information. If Plaintiffs are withholding documents responsive to these requests, Plaintiffs should provide a privilege log identifying the documents withheld.

Similarly, Interrogatories Nos. 6, 7, 12, and 13 do not call for the disclosure of privileged information. These Interrogatories seek the "gross dollar amounts, unit volumes, and types of CRTs [and CRT PRODUCTS] YOU acquired or sold" (Interrogatories Nos. 6 and 7), and "with respect to each CRT [or CRT PRODUCT] that YOU acquired during the RELEVANT PERIOD, state the total dollar amount by which YOU allege YOU were overcharged as a result of the allegations in the Complaint" (Interrogatories Nos. 12 and 13). If Plaintiffs are withholding documents responsive to these requests, then Plaintiffs must produce a privilege log identifying the documents withheld; otherwise, responsive information should be produced immediately.



Guido Saveri, Esq.
August 3, 2010
Page 6

## VII.   PLAINTIFFS ERRONEOUSLY OBJECT THAT THE DOCUMENT REQUESTS AND INTERROGATORIES SEEK DISCOVERY OF EXPERT MATERIAL

Plaintiffs also object to Document Requests Nos. 10 and 11 on the basis that these requests seek expert material.  *See, e.g.*, Plaintiffs' Response to Document Request No. 10 ("Plaintiffs further object to this request to the extent that it impermissibly seeks the premature and non-reciprocal disclosure of experts and expert information, or requires Plaintiffs to set forth factual analyses, comparative analyses, opinions, or theories that may be the subject of expert testimony.").  Document Requests Nos. 10 and 11 seek information regarding "products that are marketed or sold as substitutes for any CRT [or CRT PRODUCT] that YOU acquired, sold, or were distributed by YOU."  By these requests, HAL is not seeking the disclosure of expert material.

Likewise, HAL does not seek the disclosure of expert material in response to Interrogatories Nos. 6, 7, 12, and 13.  *See, e.g.*, Plaintiffs' Response to Interrogatory No. 6 ("Plaintiff further objects to this interrogatory to the extent that it impermissibly seeks the premature and non-reciprocal disclosure of experts and expert information, or requires Plaintiffs to set forth factual analyses, comparative analyses, opinions, or theories that may be the subject of expert testimony.").  These Interrogatories seek information regarding "the gross dollar amounts, unit volumes, and types of CRTs [or CRT PRODUCTS] YOU acquired or sold," and "the total dollar mount by which YOU allege YOU were overcharged as a result of the allegations in the Complaint."

## VIII.   PLAINTIFFS' RESPONSES TO SPECIFIC DOCUMENT REQUESTS AND INTERROGATORIES ARE DEFICIENT

In addition, Plaintiffs' responses to specific Document Requests and Interrogatories are also deficient.  These specific responses are addressed below.

### A.   Responses to Document Requests No. 6 and 7.

Document Requests Nos. 6 and 7 seek "all documents concerning YOUR corporate policies, practices, and procedures, whether formal or informal, for making decisions concerning the acquisition or sale of CRTs [or CRT PRODUCTS] . . . during the RELEVANT PERIOD."

Plaintiffs respond, in part, that they will "produce relevant documents concerning their acquisition of CRTs and CRT Products from defendants during the class period."  Plaintiffs impermissibly limit their production of documents relating to Plaintiffs' acquisition of CRTs and CRT Products to those which Plaintiffs unilaterally contend are "relevant."  Plaintiffs must produce all documents that are responsive to Document Requests Nos. 6 and 7.



Guido Saveri, Esq.
August 3, 2010
Page 7

**B.     Responses to Document Requests Nos. 10 and 11.**

Document Requests Nos. 10 and 11 seek "ALL DOCUMENTS concerning any products that are marketed or sold as substitutes for any CRT [or CRT PRODUCT] that YOU acquired, sold, or were distributed by YOU."

Plaintiffs object to these requests and refuse to produce responsive documents to the extent they sought "documents concerning products acquired by Plaintiffs outside the class period on the ground that such information is not relevant to the claims or defenses of any party." Please confirm that Plaintiffs will produce responsive documents regarding CRTs and CRT Products acquired by Plaintiffs during "the Class Period alleged in paragraph 1 of the COMPLAINT, *i.e.*, March 1, 1995 to November 25, 2007."

Plaintiffs further object to these requests and refuse to produce responsive documents "to the extent [they seek] documents concerning products sold by Plaintiffs at any time." As addressed above, this objection is without merit. The documents requested are relevant to the claims and defenses at issue in this litigation. Please produce documents responsive to these requests immediately.

Finally, Plaintiffs respond that "information about substitutes for CRTs [or CRT Products] acquired by Plaintiffs is equally available to Defendants." This is a deficient response. Information responsive to these requests is exclusively within Plaintiffs' possession. Plaintiffs provide no specific reasons as to why they are unable to produce documents in their possession that are responsive to these Document Requests. Please produce all responsive documents that Plaintiffs have withheld on this basis immediately.

**C.     Responses to Interrogatories Nos. 12 and 13.**

Interrogatories Nos. 12 and 13 request Plaintiffs, "with respect to each CRT [or CRT PRODUCT] YOU acquired during the RELEVANT PERIOD, state the total dollar amount by which YOU allege YOU were overcharged as a result of the allegations in the Complaint." Plaintiffs refuse to respond to these Interrogatories on the ground they constitute "premature contention interrogator[ies]." Plaintiffs' Responses to Interrogatories, Nos. 12 and 13. Plaintiffs' objections are unfounded.

These Interrogatories request the facts currently in Plaintiffs' possession that support the alleged harm suffered and Plaintiffs' claimed damages, as described in their Complaint. *See, e.g.*, Direct Purchaser Plaintiffs' Consolidated Amended Complaint at ¶ 222 ("During the Class Period, Plaintiffs . . . purchased CRT Products directly from Defendants . . . and, by reason of the antitrust violations herein alleged, paid more for such products than they would have paid in the absence of such antitrust violations."). Thus, Interrogatories Nos. 12 and 13 are *not* properly



Guido Saveri, Esq.
August 3, 2010
Page 8

considered contention interrogatories.[2]

The authority Plaintiffs cite does not support their assertion that they need not respond to Interrogatories Nos. 12 and 13. *See In re eBay Seller Antitrust Litig.*, No. C 07-1882 JF, 2008 WL 5212170 at *1 (N.D. Cal. Dec. 11, 2008) ("Rule 33(a)(2) provides that interrogatories may relate to any matter that may be inquired into under Rule 26(b) and is not objectionable merely because it asks for contentions that relate to fact or the application of law to fact."); *see also In re Convergent Technologies Securities Litig.*, 108 F.R.D. 328, 333 (N.D. Cal. 1985) (noting interrogatories are "not *necessarily* objectionable merely because it calls for an opinion or contention.") (emphasis in original).

Interrogatories Nos. 12 and 13 are specific and narrowly tailored. They seek specific facts regarding the amount of overcharge Plaintiffs allege they paid as a result of the allegations in their Complaint. Accordingly, Interrogatories Nos. 12 and 13 are not contention interrogatories, and Plaintiffs must provide adequate responses. Please do so immediately.

## IX.   PLAINTIFFS' IMPROPERLY REFER TO THEIR PRODUCTION OF DOCUMENTS IN RESPONSE TO THE INTERROGATORIES

The Federal Rules of Civil Procedure permit a party to produce business records in response to an interrogatory. Fed. R. Civ. P. 33(d). Rule 33(d)(1), however, requires the answering party to "specify[] the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could." *Id.* 33(d)(1). Plaintiffs' responses referring HAL to Plaintiffs' entire document productions do not comport with Rule 33(d) and, accordingly, are deficient as demonstrated below:

- Plaintiff Arch Electronics, Inc. responds to Interrogatories Nos. 6, 7, 10, and 11 by stating that the requested information "may be derived from their production of documents. *See* Bates Numbered Documents ARCH000001-902."

- Plaintiff Meijer, Inc. and Meijer Distribution, Inc. respond to Interrogatories Nos. 7 and 9 by stating that the requested information "may be derived from their production of documents."

- Plaintiff Nathan Muchnick, Inc. responds to Interrogatories Nos. 7 and 11 by stating that the requested information "may be derived from their production of documents. *See* Bates Numbered Documents NM00001-1322."

---

[2]  Defendants previously provided Plaintiffs with authority that Plaintiffs' objections that they are not required to respond to "contention interrogatories" are invalid. *See* June 24, 2010 correspondence from Jeffrey Kessler, Esq., to Guido Saveri, Esq., and Mario Alioto, Esq.



- Plaintiff Radio & TV Equipment, Inc. responds to Interrogatories Nos. 6, 7, 10 and 11 by stating that the requested information "may be derived from their production of documents." Plaintiff Radio & TV Equipment, Inc. produced over three thousand pages of documents. Plaintiff Radio & TV Equipment, Inc. must specify the specific Bates numbers of the documents that respond to *each* Interrogatory, and cannot point wholesale to its production of thousands of pages of documents.

- Plaintiff Princeton Display Technology, Inc. refers to its production of documents in response to Interrogatories Nos. 6 and 7. No documents were produced, however. Please promptly produce the referenced documents and provide supplemental responses that identify which documents, in particular, are responsive to these Interrogatories.

Finally, in his July 12, 2010 correspondence Cadio Zirpoli, Esq., states, "DPP will supplement this production as additional, non-privileged responsive documents become available." HAL notes that several individual Plaintiffs produced very small quantities of documents, yet they rely upon their document productions to respond to HAL's Interrogatories (*e.g.*, plaintiff Crago d/b/a Dash Computer Inc. (CRAGO0000001-7); plaintiff Orion Home Systems, LLC (ORION0000001); plaintiff Paula Call d/b/a Poway-Rancho Bernardo TV (PC0000001-19)). Please confirm when HAL may expect the production of additional documents from Plaintiffs and supplemental responses to HAL's Interrogatories identifying the specific Bates numbers of the documents that Plaintiffs believe are responsive to each specific Interrogatory.

## X.   IDENTIFICATION OF PLAINTIFFS WHO PURCHASED CRTS AND/OR CRT PRODUCTS

Based on Plaintiffs' interrogatory responses, it appears the following individual Plaintiffs purchased CRTs from Defendants: Arch Electronics, Inc.; Hawel d/b/a City Electronics; Paula Call d/b/a Poway-Rancho Bernardo TV; Princeton Display Technologies, Inc.; Radio and TV Equipment, Inc.; and Wettstein and Sons, Inc. d/b/a Wettstein's.

Based on those same responses, it appears that the following individual Plaintiffs purchased CRT Products from Defendants: Crago d/b/a Dash Computers, Inc., Electronic Design Co.; Meijer, Inc. and Meijer Distribution, Inc.; Nathan Muchnick, Inc.; Orion Home Systems, LLC; Paula Call d/b/a Poway-Rancho Bernardo TV; Princeton Display Technologies, Inc.; Radio & TV Equipment, Inc.; Royal Data Services, Inc.; Studio Spectrum, Inc.; and Wettstein and Sons, Inc. d/b/a Wettstein's.

It is unclear, however, whether plaintiff Electronic Design Co. purchased CRTs and CRT Products, or whether it exclusively purchased CRT Products from one or more of the



Defendants. For example, Interrogatory No. 6 sought "the gross dollar amounts, unit volumes, and types of CRTs YOU acquired or sold." In response, plaintiff Electronic Design Co. states, "Plaintiff's purchases of CRT Products from the defendants may be derived from its production of documents. *See* Bates Range EDC0000001-38." It is unclear from this response whether Plaintiff Electronic Design Co. purchased CRTs from any of the Defendants, which is the specific information sought in Interrogatory No. 6, or whether Plaintiff Electronic Design Co. purchased only CRT Products and erroneously referred to those purchases in its response. Thus, this response is inadequate and must be clarified.

Additionally, it is also unclear whether plaintiff Nathan Muchnick, Inc. purchased only CRT Products from one or more of the Defendants, or whether it also purchased CRTs. In response to Interrogatory No. 6, which again sought "the gross dollar amounts, unit volumes, and types of CRTs YOU acquired or sold," plaintiff Nathan Muchnick, Inc. responds "that it purchased CRT Products." Please confirm that plaintiff Nathan Muchnick did not purchase CRTs from Defendants, and only purchased CRT Products.

## XI. CONCLUSION

We would appreciate receiving your response by August 10, 2010, in light of the August 24, 2010 Case Management Conference.

Sincerely,

Diane L. Webb

c: Cadio Zirpoli, Esq.
Melissa Shapiro, Esq.
Mario N. Alioto, Esq.
Lauren C. Russell, Esq.
Defense Counsel (via e-mail)

# EXHIBIT K

# ARNOLD & PORTER LLP

**Eric Shapland**
Eric.Shapland@aporter.com

+1 213.243.4238
+1 213.243.4199 Fax

777 South Figueroa Street
Forty-Fourth Floor
Los Angeles, CA 90017-5844

September 16, 2010

**VIA E-MAIL**

Geoffrey Rushing
Cadio Zirpoli
Saveri & Saveri, Inc.
706 Sansome Street
San Francisco, California 94111

      Re:    *In Re Cathode Ray Tube (CRT) Antitrust Litigation*
              No. 07-cv-5944 SC; MDL No. 1917

Dear Cadio and Geoff:

      I write to continue our meet and confer over the LGE and Hitachi Defendants' requests for discovery into the DP Plaintiffs' sales of CRTs and CRT finished products, so-called "downstream discovery" because it relates to the flow of tubes and finished products down the stream of commerce from alleged "direct" purchasers. My purpose is to follow up on our September 7 conference and to make our upcoming conference as productive as possible. I also want to raise the fact that the DP Plaintiffs have objected to downstream discovery propounded by Samsung SDI Co., Ltd., and I propose that we include that discovery within the scope of our meet and confer to avoid a piecemeal approach to the issue.[1]

---

[1] The DP Plaintiffs have applied the "downstream discovery" label and objection to all or part of Request Nos. 5 through 14 of the LGE Defendants' Second Set of Requests for Production of Documents; Request Nos. 2 through 11 of Hitachi America, Ltd.'s First Set of Requests for Production of Documents; Interrogatory Nos. 2 through 9 of Hitachi America, Ltd.'s First Set of Interrogatories; and Request Nos. 12 through 15 of Samsung SDI Co., Ltd.'s First Set of Requests for Production of Documents. To the extent that some of these requests also seek information about the DP Plaintiffs' acquisition of CRTs or CRT finished products and the DP Plaintiffs have not objected on the ground that the requests seek downstream discovery, they are not covered by this meet and confer or the proposed resolution below.

# ARNOLD & PORTER LLP

Geoffrey Rushing
Cadio Zirpoli
September 16, 2010
Page 2

As we discussed previously, the defendants are pursuing downstream discovery because it will lead to information relevant to (1) the applicability of an exception to *Hanover Shoe*; (2) the named DP Plaintiffs' qualifications as representatives of their alleged class, among other issues related to the DP Plaintiffs' claims; and (3) damages and class certification for the IP Plaintiffs' claims.  You recognized some basis for discovery related to a cost-plus exception to *Hanover Shoe*.  But you argued that the defendants' discovery requests are overly broad and burdensome because: (1) the defendants would not be able to trigger an exception to *Hanover Shoe* for the functional equivalent of a cost-plus contract; (2) *Hanover Shoe* reflects a general presumption against downstream discovery; (3) downstream discovery for purposes of the IP Plaintiffs' action is inappropriate because that is a different action; and (4) one form of requested downstream discovery -- for tax filings -- is subject to a qualified privilege that may limit discoverability here.

Having considered your arguments, the defendants continue to believe that their downstream discovery requests are appropriate.  You have identified no specific burden in responding to the downstream discovery requests.  As to each of your arguments:

(1)   Now is not the time to argue whether a particular exception to *Hanover Shoe* applies; the defendants should have access to the facts to determine whether they want to assert an exception.[2]

(2)   *Hanover Shoe* states a substantive rule of damages, not a privilege against discovery relevant to other issues in a case.  Courts therefore permit downstream discovery against direct purchaser plaintiffs to explore, for example, issues related to class certification.  *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1191-96 (11th Cir. 2003).

(3)   Your objection that the IP Plaintiffs are parties to a separate action among consolidated and overlapping actions can only be an effort to delay legitimate discovery.

---

[2] Moreover, the defendants disagree with your contention that *Kansas v. Utilicorp United, Inc.*, 497 U.S. 199 (1990), rejects an exception to *Hanover Shoe* for the functional equivalent of a cost-plus contract.  *Utilicorp* actually held only that "we would not apply the exception here." *Id.* at 218.

# ARNOLD & PORTER LLP

Geoffrey Rushing
Cadio Zirpoli
September 16, 2010
Page 3

     (4)     Finally, there is no privilege for tax filings. *Heathman v. United States Dist. Court for Cent. Dist. of Cal.*, 503 F.2d 1032, 1033-35 (9th Cir. 1974). In any event, no qualified privilege would apply here because the confidentiality order in the case will protect against the filings' disclosure and use outside of this proceeding. *Fresenius Med. Care Holding Inc. v. Baxter Int'l, Inc.*, 224 F.R.D. 644, 654 n.3 (N.D. Cal. 2004).

Nevertheless, the defendants continue to be willing to consider ways to reach an informal resolution of this dispute. We, therefore, propose for discussion during our next call:

     (1)     In response to LGE Document Request Nos. 8 and 9, Hitachi Document Request Nos. 2 and 3, and Hitachi Interrogatory Nos. 4 and 5, each DP Plaintiff will produce any contract it entered for the sale of CRTs or CRT finished products, or represent that it has no such contracts. Each DP Plaintiff will also produce any form contracts that it used and describe the terms of any contracts that may no longer be in its possession.

     (2)     In response to LGE Document Request Nos. 5 through 7, each DP Plaintiff will produce financial statements and documents sufficient to show its monthly or annual revenue, costs and profits from CRT or CRT finished product sales. This aggregated data should be easily accessible to the DP Plaintiffs from multiple alternative sources.

     (3)     The LGE Defendants will waive their Request No. 14 -- for tax filings -- if and to the extent a DP Plaintiff provides reliable documents in response to LGE Document Request Nos. 5 through 7, as narrowed above in paragraph (2).

     (4)     In response to Hitachi Document Request Nos. 6 and 7, each DP Plaintiff will produce any policies or procedures that it has had for setting the price at which it sold CRTs or CRT finished products.

     (5)     In response to Hitachi Document Request Nos. 2 and 3 and Interrogatory Nos. 2 through 7, each DP Plaintiff will disclose whether it has transaction-level data for its sales of CRTs or CRT finished products, what format that data is in, and how far back it goes. The parties will then discuss whether

261

# ARNOLD & PORTER LLP

Geoffrey Rushing
Cadio Zirpoli
September 16, 2010
Page 4

and to what extent the data should be produced.  Through this process, plaintiffs will preserve any objection they have that the collection and production of transaction-level data is overly burdensome.  Instead, they will be providing the information they would need to produce to establish a burden objection.  To date, the DP Plaintiffs have provided nothing to substantiate the contention that producing transaction-level data is overly burdensome.

(6)    In response to SDI Document Request Nos. 14 and 15, each DP Plaintiff will produce budgets, forecasts or strategies for its acquisition or sale of CRTs or CRT finished products.

(7)    Finally, in response to Hitachi Interrogatory Nos. 8 and 9, each DP Plaintiff will identify the individual or individuals responsible for acquiring or pricing CRTs or CRT finished products.  Each individual identified will be designated by the identifying DP Plaintiff as a document custodian from which the DP Plaintiff will collect and produce documents on the general topics in LGE Document Request Nos. 6 through 13, Hitachi Document Request Nos. 4 through 11, and Samsung SDI Document Request Nos. 12 through 15.  The parties will continue to meet and confer over the identity and number of potential additional custodians.

I look forward to discussing this proposal with you during our next conference.

Best regards,

/s/  Eric Shapland
Eric Shapland

cc:    Diane Webb
Michael Scarborough
Guido Saveri
Rick Saveri
Mario N. Alioto
Lauren Russell
All Defense Counsel

# EXHIBIT L

# SAVERI & SAVERI, INC.

706 SANSOME STREET
SAN FRANCISCO, CALIFORNIA 94111
TELEPHONE: (415) 217-6810
TELECOPIER: (415) 217-6813

September 24, 2010

Eric Shapland
Arnold & Porter LLP
777 South Figueroa Street, 44th Floor
Los Angeles, CA 90017

Re:     *In re Cathode Ray Tube (CRT) Antitrust Litigation*, No. C-07-5944 SC, MDL
          1917

Dear Mr. Shapland:

As promised during our meet and confer on September 21, 2010, I write to set forth Direct Purchaser Plaintiffs ("DPPs") position regarding the downstream data discovery propounded by certain LG Defendants, Hitachi Defendants and Samsung Defendants. As DPPs have explained, the authority regarding this issue overwhelmingly disfavors the production of downstream data by Plaintiffs. Defendants have failed to cite persuasive authority supporting their position and the information sought is irrelevant. Nonetheless, DPPs will agree to provide certain information regarding whether they purchased products pursuant to "cost-plus" contracts.

The downstream information sought by defendants has been irrelevant in direct purchaser actions for more than 30 years. *See Illinois Brick Co. v. Illinois*, 431 U.S. 720, 724-25 (1977) ("*Illinois Brick*"); *Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481, 493-94 (1968) ("*Hanover Shoe*"). Whether or not a direct purchaser raises its prices for its own product or passes on the overcharge to its customers has no relevance to how a direct purchaser proves damages. *Hanover Shoe*, 392 U.S. at 489-92. The only prices relevant to proving impact or injury in a federal price-fixing case are the prices defendants and their co-conspirators charged Plaintiffs for their direct purchases. *Id.* at 489. Courts have therefore repeatedly denied antitrust defendants' attempts to take downstream discovery.[1]

---

[1] *See, e.g., Meijer, Inc. v. Abbott Laboratories*, 251 F.R.D. 431 (N.D. Cal. 2008) ("*Abbott Labs.* ")(denying motion to compel evidence of downstream sales to demonstrate alleged conflict among class members); *In re Aspartame Antitrust Litig.*, 2008 WL 2275528, at *4 (E.D. Pa. April 8, 2008) (denying motion to compel downstream data and noting that "courts have consistently noted this kind of discovery is not favored")("*Aspartame*"); *In re Automotive Refinishing Paint Antitrust Litig.*, 2006 WL 1479819, at *8 (E.D. Pa. May 26, 2006) ("[W]e will deny defendants' request that we depart from the long-held practice of proscribing discovery of downstream data . . .")("*Auto Paint*"); *In re Pressure Sensitive Labelstock Antitrust Litig.*, 226 F.R.D. 492, 498 (M.D. Pa. 2005) (noting that "courts generally proscribe downstream discovery")("*Labelstock*"); *In re Plastics Additives Antitrust Litig.*, 2004 WL 2743591 at *16 (E.D. Pa. Nov. 29, 2004) ("downstream data is irrelevant to determine whether defendants are liable for price-fixing under the Sherman Act . . . . [C]ourts have refused to require production of downstream data in antitrust price-fixing cases")("*Labelstock*"); *In re Polyester Staple Antitrust Litig.*, Case No. 03-cv-1516 (Dkt. #162), at 10 (W.D.N.C. Feb. 5, 2004) (denying defendants' motion to compel documents concerning downstream discovery based on its "lack of relevance") ("*Poly Staple*"); *In re Vitamins Antitrust Litig.*, 198 F.R.D. 296, 301 (D.D.C. 2000) ("*Vitamins*").

Eric Shapland
September 24, 2010
Page 2

Moreover, the denial of this sort of discovery is not based solely on relevance. Rather, *Hanover Shoe, Illinois Brick,* and other cases evince a policy against such discovery, even if, in some circumstances, it can be argued that it has some marginal relevance. The proscription against downstream discovery is rooted in the Supreme Court's conclusions that pass-on analysis is 1) unreliable; and 2) if allowed, undermines the policies underlying the antitrust laws. *Illinois Brick,* 431 U.S. at 744-45; *Hanover Shoe,* 392 U.S. at 493; *Kansas v. UtiliCorp United, Inc.,* 497 U.S. 199, 209-11 (1990) ("*Utilicorp*"). As Judge Wilken explained in *Abbott Labs.,* in reference to *Valley Drug Co. v. Geneva Pharmaceuticals, Inc.* 350 F. 3d 1181 (11th Cir. 2003), allowing downstream discovery does "not give sufficient weight to what the Supreme Court called the 'principal basis' for its decisions: the practical difficulty of determining whether and to what extent a party benefits from one economic arrangement as opposed to another." *Abbott Labs.,* 251 F.R.D. at 434. In short, analysis of whether or how a plaintiff may have "passed on" an overcharge simply has no place in a direct purchaser antitrust action.

Defendants have submitted several justifications for "downstream" discovery; none justify the discovery they have propounded.

*First,* relying on *Meijer, Inc. v. Warner Chilcott Holdings Co., III, Ltd.,* 245 F.R.D. 26, 35 (D.D.C. 2007) ("*Warner Chilcott*"), Defendants have asserted that they are entitled to documents, financial records and transactional data reflecting Plaintiffs' sales of CRTs or CRT Products. In that case, however, the Court held only that: 1) discovery related specifically to the issue of whether a direct purchaser plaintiff resold the product in issue pursuant to a "cost-plus" contract meeting the requirements set forth in *Hanover Shoe* might be permissible, and 2) directed the parties to meet and confer further on the issue. *Id.* This directive, moreover, was premised on the Court's assumption that the defendant could identify a good faith basis for such an inquiry. *See id.* The Court in no way held that the broad discovery of downstream data Defendants seek here was appropriate.

Despite the fact that your clients have not propounded discovery narrowly focused on the question of cost plus contracts, we informed you on Tuesday that Plaintiffs would consider responding to discovery going to that issue specifically. This will confirm that Plaintiffs are willing respond to an interrogatory framed as follows: With reference to the purchases of CRTs and/or CRT Products upon which you base your claims herein, please state whether you resold any of those products pursuant to a "cost plus" contract.

*Second,* you have asserted that Defendants are entitled to downstream discovery in order to determine whether they can assert the "functional equivalent to a cost-plus contract" exception as a defense herein. As we have explained, Plaintiffs do not believe that such an exception exists. As you have explained it, this exception would apply to the extent that Defendants were able to prove – via examination of Plaintiffs financial data, tax returns etc. – that their revenue and or profits increased as the prices of CRTs and CRT Products increased such that they suffered no damage. In other words, Defendants seek downstream discovery to perform the very pass-on analysis proscribed by the Supreme Court.

Eric Shapland
September 24, 2010
Page 3

As we discussed during the meet and confers, the Supreme Court rejected such an argument in *UtiliCorp*, 497 U.S. 217-18.  There the Court held that despite a law which *required* a utility to pass-on 100% of any price increase to its customers, the "cost-plus" contract exception did not apply.  *Id.*  The Supreme Court also rejected a similar argument in *Illinois Brick* where one of the plaintiffs had purchased from a contractor who applied a "cost-plus" methodology.  341 U.S. at 744 (mere percentage mark-up contract not sufficient to support the "cost-plus" defense).  The "cost-plus" exception only applies to pre-existing contracts that fix, in advance, the amount of products to be purchased and the price of those products.  *See Hanover Shoe*, 392 U.S. at 494.   Ninth Circuit authority also contradicts your position.  *See Delaware Valley Surgical Supply, Inc. v. Johnson & Johnson*, 523 F.3d 1116, 1123 (9th Cir. 2008) (rejecting argument that broader cost-plus contract exception should be applied); *In re Ditropan XL Antitrust Litigation*, 2007 WL 2978329, at *4 (N.D. Cal. Oct 7, 2007) (in *UtiliCorp* "the Supreme Court cautioned lower federal courts against creating new exceptions to the *Illinois Brick* rule.").

During both of our meet and confer sessions, you indicated that you had Ninth Circuit authority to support the existence of a "functional equivalent to a cost plus contract" exception, and Plaintiffs asked that you provide it to us.  You have not done so.  The sole case you have identified – *In re Beef Industry Antitrust Litig.*, 600 F.2d 1148 (5th Cir. 1979) – not only is not a Ninth Circuit case, it predates *UtiliCorp.*, and contradicts the above Ninth Circuit authority.

*Third,* you have asserted the downstream discovery you seek is relevant to class certification issues – namely, typicality and adequacy.  This attempt to circumvent the holding and rationale of *Hanover Shoe* is also without merit and has also been repeatedly rejected.  *See, e.g., Abbott Labs.*, 251 F.R.D. at 435; *In re: Flat Glass Antitrust Litig. (II)*, Case No. 08-0180-DWA (Dkt. # 238) (W.D. Pa. Jan. 6, 2010) (denying defendants' motion to compel production of downstream data because information was not "relevant or necessary to determine class certification").

Defendants' reliance on *Valley Drug Co. v. Geneva Pharms. Inc.*, 350 F.3d 1181 (11th Cir. 2003) is misplaced.  That decision is an anomaly, based on the peculiar facts of that case and the unique circumstances of the wholesale name brand and generic pharmaceuticals distribution network.  The *Valley Drug* case involved unique pricing characteristics in the drug industry and a clearly identified conflict.  None of the economic peculiarities of the drug industry described in *Valley Drug* are present in this case and Defendants have not even attempted to identify a specific conflict among class members.

*Valley Drug* is also inconsistent with the law of the Ninth Circuit and was wrongly decided.  It has been criticized by several courts, including, recently, *Abbott Labs.*: "the Eleventh Circuit's holding fails to appreciate the true import of the *Hanover Shoe* rule that a direct purchaser may recover the full amount of the overcharge, even if he is otherwise benefited, because the antitrust injury occurs and is complete when the defendant sells at the illegally high price" (internal quotations and citations omitted).  *See also Warner Chilcott Holdings Co., III,*

Eric Shapland
September 24, 2010
Page 4

*Ltd.* 246 F.R.D. at 303-04; *In re Wellbutrin SR Direct Purchaser Antitrust Litig.* 2008 WL 1946848 (E.D. Pa. May 2, 2008). [2]

   *Fourth*, you have asserted that the discovery is relevant to damages and other merits issues. This argument too has been rejected many times. *See, e.g., Aspartame*, 2008 WL 2275528, at *4; *Auto Paint*, 2006 WL 1479819, at *7; *Vitamins*, 198 F.R.D. at 300-01. In *Aspartame*, the defendants sought downstream discovery, arguing that "information concerning the changes in supply, demand, pricing and discounting" would "demonstrate whether there are such significant differences in the product markets for putative class members that the individual issues will predominate over common issues for the class." 2008 WL 2275528, at *4. The court rejected the argument, explaining that:

> [I]n light of the considerable size of the aspartame market the Court does not find Plaintiffs' potential resales sufficiently significant to justify the burden on the Plaintiffs for providing individualized downstream discovery. Any analysis of the multi-billion dollar aspartame market is unlikely to be at all affected by this information.

*Id.*

   Even if defendants were to obtain all of the voluminous downstream information they seek from each of the named class representatives, it will not meaningfully assist in damages analysis herein. In a market comprising tens of billions of dollars in sales, information from 13 individual purchasers would constitute a meaningless sample, and would be completely swamped by data available from other sources.

   *Fifth*, you have asserted that the discovery is relevant to "pass-on" issues in the indirect purchaser case. Again, courts have rejected arguments that downstream discovery is proper simply because direct and indirect purchaser cases are consolidated before a single court. *See, e.g., Vitamins*, 198 F.R.D. at 301 ("the proposition that there are indirect purchasers in this case who may assert claims for damages other than direct overcharges is not sufficient to carry defendants' burden of showing this information ought to be produced by the direct purchasers"); *Poly Staple*, Case No. 03-cv-1516, at 6. Nor have you provided any authority to support your position. Moreover, as noted above, there is no need for this information from DPPs, whose sales comprise a tiny fraction of a multi-billion dollar market, when a vast amount of relevant information in the indirect purchaser case will be produced at less expense and burden to DPPs.

   *Finally*, there is little question that the burden of producing downstream discovery far outweighs any arguable marginal relevance to issues in this case. Discovery may be limited by the Court if it finds that "the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(iii). Here, the marginal

---

[2] *In re Urethane Antitrust Litigation*, 237 F.R.D. 454 (D. Kan. 2006), is another anomaly. In that case the court also failed to properly consider the underpinnings of the rule against "pass-on" analysis.

Eric Shapland
September 24, 2010
Page 5

relevance, if any, of the downstream information is far outweighed by the undue burden that plaintiffs will incur if compelled to produce the voluminous information defendants seek. *See Aspartame*, 2008 WL 2275528, at *5 (denying motion to compel because "marginal value" of the downstream data was "outweighed by the burden on plaintiffs of this type of discovery"); *Vitamins*, 198 F.R.D. at 301 (denying motion to compel downstream information because the "burden outweighs any potential benefit defendants might yield from this data"); *Poly Staple*, Case No. 03-cv-1516, at 9 (finding "burden to Plaintiffs far outweighs any potential benefit to Defendants").

For the foregoing reasons, apart from the focused discovery regarding whether plaintiffs purchased pursuant to "cost-plus" contracts, DPPs will not agree to provide the "downstream" discovery Defendants seek. Nor do we believed that Defendants have a reasonable basis for a motion to compel. If you wish to discuss any of the foregoing, please do not hesitate to contact me.

Lastly, you have requested that Plaintiffs clarify their responses regarding their purchases of CRT Tubes and/or CRT products from Defendants.

The following plaintiffs purchased CRT Tubes: Hawel A. Hawel, d/b/a City Electronics; Paula Call d/b/a Poway-Rancho Bernardo TV; Princeton Display Technologies, Inc.; and Wettstein and Sons, Inc., d/b/a Wettstein's.

The following Plaintiffs purchased CRT Products: Arch Electronics, Inc.; Crago, d/b/a Dash Computers, Inc.; Electronic Design Company; Meijer, Inc. and Meijer Distribution, Inc.; Nathan Muchnick, Inc.; Orion Home Systems, LLC; Radio & TV Equipment, Inc.; Royal Data Services, Inc.; Studio Spectrum, Inc.' and Wettstein and Sons, Inc., d/b/a Wettstein's.

To the extent you require any additional information regarding Plaintiffs' individual responses, we are willing to discuss it.

Sincerely,

*/s/ Geoffrey C. Rushing*
Geoffrey C. Rushing

cc:   Diane Webb
      Michelle Chiu
      Dylan Ballard