ALDO A. BADINI (257086)
DEWEY & LEBOEUF LLP
1950 University Avenue
East Palo Alto, CA 94303
Telephone: (650)845-7000
Facsimile:  (650) 845-7333
Email: abadini@dl.com

JEFFREY L. KESSLER (*Admitted Pro Hac Vice*)
A. PAUL VICTOR (*Admitted Pro Hac Vice*)
DEWEY & LEBOEUF LLP
1301 Avenue of the Americas
New York, NY 10019
Telephone: (212) 259-8000
Facsimile: (212) 259-7013
Email: jkessler@dl.com

STEVEN A. REISS (*Admitted Pro Hac Vice*)
DAVID L. YOHAI (*Admitted Pro Hac Vice*)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153-0119
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Email: steven.reiss@weil.com

Attorneys for Defendants Panasonic Corporation of North America, MT Picture Display Co., Ltd., and Panasonic Corporation (f/k/a Matsushita Electric Industrial Co.)

**Dewey & LeBoeuf LLP**
**One Embarcadero Center, Suite 400**
**San Francisco, CA 94111**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE:  CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | No. 07-5944-SC |
| | MDL. No. 1917 |
| This Document Relates to:  DIRECT PURCHASER ACTION | **REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SANCTIONS PURSUANT TO RULE 11** |
| | Date: May 26, 2011 |
| | Time: 10:00 a.m. |

TABLE OF CONTENTS

Page

REPLY MEMORANDUM OF POINTS AND AUTHORITIES ..........................................1

ARGUMENT.......................................................................................................................3

    I.        DP PLAINTIFFS' OPPOSITION DOES NOTHING TO IDENTIFY A
             REASONABLE BASIS FOR THEM TO ALLEGE AN
             AGREEMENT TO SET PRICES OF FINISHED PRODUCTS.......................3

    II.      DEFENDANTS' MOTION IS TIMELY AND FULLY COMPLIES
             WITH ALL PROCEDURAL REQUIREMENTS...........................................11

        A.      THIS MOTION IS NOT PREMATURE..............................................11

        B.      THE MOVING DEFENDANTS FULLY COMPLIED WITH
                THE SAFE HARBOR PROVISION .....................................................13

    III.     DP PLAINTIFFS DO NOT DISPUTE THAT THE PROPER RULE 11
             SANCTIONS ARE TO STRIKE THE OFFENDING ALLEGATIONS
             AND AWARD DEFENDANTS REASONABLE ATTORNEYS' FEES
             AND COSTS ........................................................................................14

CONCLUSION...................................................................................................................15

Dewey & LeBoeuf LLP
One Embarcadero Center, Suite 400
San Francisco, CA 94111

REPLY MEMORANDUM ISO MOTION FOR SANCTIONS PURSUANT TO    Case No. 07-5944-SC
RULE 11, 28 U.S.C. § 1927, AND THE COURT'S INHERENT POWERS    MDL No. 1917

TABLE OF AUTHORITIES

Cases                                                                                                    Page

*Attwood v. Singletary*,
    105 F.3d 610 (11th Cir. 1997) ........................................................................................ 7

*Barber v. Miller*,
    146 F.3d 707 (9th Cir. 1998) ........................................................................................ 12

*Brooke Group Ltd. v. Brown & Williams Tobacco Corp.*,
    509 U.S. 209 (1993) ...................................................................................................... 9

*Catalano, Inc. v. Target Sales, Inc.*,
    446 U.S. 643 (1980) ...................................................................................................... 9

*Community Elec. Serv. v. National Elec. Contractors Ass'n, Inc.*,
    869 F.2d 1235 (9th Cir. 1989) ...................................................................................... 3

*Cooter & Gell v. Hartmarx Corp.*,
    496 U.S. 384 (1990) ................................................................................................. 5, 12

*Elan Microelectronics Corp. v. Apple, Inc.*,
    No. C-09-01531, 2009 WL. 2972374 (N.D. Cal. Sept. 14, 2009) ............................... 8

*In re Biela*,
    202 F.3d 277 (9th Cir. 1999) ........................................................................................ 4

*In re Delta/AirTran Baggage Fee Antitrust Litig.*,
    733 F.Supp.2d 1348 (N.D. Ga. 2010) ........................................................................... 4

*In re Keegan Management Co. Sec. Litig.*,
    78 F.3d 431 (9th Cir. 1996) .......................................................................................... 4

*In re Yagma*,
    796 F.2d 1165 (9th Cir. 1986) .................................................................................... 11

*LaSalle National Bank of Chicago v. County of DuPage*,
    10 F.3d 1333 (7th Cir. 1993) ........................................................................................ 4

*Les Shockley Racing, Inc. v. Nat. Hot Rod Assoc.*,
    884 F.2d 504 (9th Cir. 1989) ........................................................................................ 3

*Marks v. Chicoine*,
    No. C 06-06806 SI, 2007 WL 2408885 (N.D. Cal. Aug. 21, 2007) ............................. 6

*Mary Ann Pensiero, Inc. v. Lingle*,
    847 F.2d 90 (3d Cir. 1988) ........................................................................................... 4

*Metlife Bank, N.A. v. Badostain*,
    No. 1: 10-Cv-118-CWD, 2010 WL 5559693 (D. Idaho Dec. 30, 2010) .................... 14

Dewey & LeBoeuf LLP
One Embarcadero Center, Suite 400
San Francisco, CA 94111

-iii-

*MGIC Indemnity Corp. v. Weisman*,
    805 F.2d 500 (9th Cir. 1986) ........................................................................................8

*Monsanto Co. v. Spray-Rite Service Corp.*,
    465 U.S. 752 (1984) ...................................................................................................10

*Ridder v. City of Springfield*,
    109 F.3d 288 (6th Cir. 1997) ......................................................................................12

*Rodriguez v. Service Employees Int'l*,
    No. C-10-01377 JCS, 2010 WL 3464365 (N.D. Cal. Sept. 1, 2010) .....................11-12

*Simmons v. County of Los Angeles*,
    No. CV 04-9731 SVW (JC), 2009 WL 6769335 (C.D. Cal. Sept. 1, 2009) .................6

*Townsend v. Holman Consulting Corp.*,
    929 F.2d 1358 (9th Cir. 1990) ......................................................................................3

*U.S. v. Socony-Vaccum Oil Co.*,
    310 U.S. 150 (1940) .....................................................................................................9

*Van Scoy v. Shell Oil Co.*,
    No. 95-16315, 98 F.3d 1348, 1996 WL 563449 (9th Cir. Oct. 2, 1996).......................7

*White v. R.M. Packer, Inc.*,
    No. 10-1130, 2011 WL 565655 (1st Cir. Feb. 18, 2011) .............................................9

*Wingle v. U.S.*,
    No. CV-F-05-160RECLJO, 2005 WL 2604184 (E.D. Cal. Oct. 13, 2005) ................12

*Zion v. Nassan*,
    727 F.Supp.2d 388 (W.D. Pa. 2010) ...........................................................................4

Statutes

Fed. R. Civ. P. 11(c)(2)........................................................................................................13

Fed. R. Civ. P. 11 Advisory Committee Notes.......................................................................13

N.D. Cal. Local Rule 7-8(c)..................................................................................................12

**Dewey & LeBoeuf LLP**
**One Embarcadero Center, Suite 400**
**San Francisco, CA 94111**

-iv-

REPLY MEMORANDUM ISO MOTION FOR SANCTIONS PURSUANT TO
RULE 11, 28 U.S.C. § 1927, AND THE COURT'S INHERENT POWERS

Case No. 07-5944-SC
MDL No. 1917

**Dewey & LeBoeuf LLP**
One Embarcadero Center, Suite 400
San Francisco, CA 94111

1

### REPLY MEMORANDUM OF POINTS AND AUTHORITIES

2      Direct Purchaser Plaintiffs ("DP Plaintiffs") have not come forward with a single

3   piece of evidence capable of supporting the conclusion that there was a good faith factual basis

4   for them to file a complaint alleging an agreement to fix the prices of Finished Products

5   (products containing CRTs, such as television sets and computer monitors), either as part of a

6   separate Finished Products conspiracy claim, or as part of a purported "unitary" conspiracy that

7   involved both Finished Products and CRTs.  Instead, in their Opposition ("Opp'n"), the DP

8   Plaintiffs simply repeat the same evidence they previously identified in their interrogatory

9   responses – the oral proffer given by Chunghwa Picture Tubes, Ltd. ("Chunghwa"), a company

10  that only manufactured and sold CRTs and has expressly denied knowledge of any agreement to

11  fix prices of or otherwise restrain output of Finished Products; the existence of government

12  investigations directed only at fixing prices of CRTs (not Finished Products); and publicly

13  available information about the market for CRTs – none of which comes close to providing a

14  good faith factual basis to support a claim that defendants agreed to "fix target prices and price

15  guidelines" for Finished Products.  DP-Complaint ¶ 5.  The Indirect Purchaser Plaintiffs already

16  have agreed to drop their allegations that there was an agreement to set the prices of Finished

17  Products in light of Defendants' motion.[1]  *See* Dkt. No. 904 (April 22, 2011).  But, the DP

18  Plaintiffs are apparently unwilling similarly to do the right thing on their own volition by

19  withdrawing their claims of an agreement to set prices of Finished Products and streamlining the

20  case to focus on just those allegations that have a Rule 11 basis.  Absent this Court's

21  intervention, DP Plaintiffs are determined to try to expand their case radically with Finished

22  Products claims that have no evidentiary support and should never have been brought in the first

23  place.

24      Rule 11 should be used sparingly by the courts, but this is precisely the type of

25  situation for which the Rule was intended.  The Rule does not allow Plaintiffs to expand

26  massively the scope of their complaint based merely on <u>speculation</u> that allegations of one

27  [1] As used herein, "Defendants" refers to the undersigned defendants who have joined in this
motion.

28

REPLY MEMORANDUM ISO MOTION FOR SANCTIONS PURSUANT TO        Case No. 07-5944-SC
RULE 11, 28 U.S.C. § 1927, AND THE COURT'S INHERENT POWERS        MDL No. 1917

1 || conspiracy might support another.  This is particularly true where the primary source of evidence

2 || on which DP Plaintiffs have relied in bringing their complaint expressly denies the speculative

3 || agreement to price-fix Finished Products.  Despite the suggestion of the DP Plaintiffs to the

4 || contrary (*see* Opp'n at 12 asserting that "the mere presence of a deficient or even frivolous

5 || allegation does not necessary violate the rule"), Rule 11 requires that every factual contention in

6 || a complaint have a good faith foundation.

7 || Nor can Plaintiffs stave off this motion by claiming that a finding of a Rule 11

8 || violation would "contravene" this Court's previous denial of Defendants' motions to dismiss.

9 || While all factual allegations are taken as true in deciding whether a conspiracy has been

10 || plausibly alleged under Rule 12(b)(6) (*see* Opp'n at 16 n.10), Rule 11 applies an entirely

11 || different test, and with good reason.  The purpose of Rule 11 is to make sure that plaintiffs do

12 || not assert speculative claims without a good faith factual basis – subjecting the parties and the

13 || courts to an expansive discovery fishing expedition – because those claims would have to be

14 || accepted as true for purposes of a motion to dismiss.  What Judge Conti stated about the DP

15 || Plaintiffs' conspiracy allegations in denying defendants' motion to dismiss – "[i]t is

16 || economically plausible that affiliated companies would wish to see any price increases in CRTs

17 || passed through to the purchasers of CRT Products" – does not, as Plaintiffs contend, suggest that

18 || the Court has in any way ruled that the DP Plaintiffs had a good faith, Rule 11 basis for their

19 || Finished Products claims.  Opp'n at 16.  Whether DP Plaintiffs had a good faith basis under Rule

20 || 11 for their allegations of an agreement to fix the prices of Finished Products has never

21 || previously been decided by the Court.  It is necessary to do so now to prevent this case from

22 || subjecting Defendants to burdensome and costly global discovery directed at speculative

23 || Finished Product allegations, which the DP Plaintiffs have never had any good faith basis to

24 || allege.

25 || At best, the DP Plaintiffs contend that the Chunghwa proffer provided them with

26 || a factual basis to assert that the market prices of Finished Products were "considered" by

27 || Defendants in meetings about CRTs and that Defendants "set the prices of tubes" knowing what

28 || - 2 -

Dewey & LeBoeuf LLP
One Embarcadero Center, Suite 400
San Francisco, CA 94111

1    the Finished Products market could bear.  Even assuming *arguendo* that this assertion could be

2    properly pled, such allegations do not come close to providing a good faith basis for alleging a

3    conspiracy to fix the prices of, or otherwise restrain trade in, the sale of Finished Products.

4    Rather, this merely reflects a consideration inherent in any price increase by a component part

5    maker.  A price increase for tubes that Finished Product makers will not pay for – by cutting into

6    their profit margins, passing on cost increases to downstream customers, or both – will not be

7    profitable for a tube maker.

8            Accordingly, the Finished Products agreement allegations should be stricken from

9    the DP Plaintiffs' complaint as a Rule 11 sanction, so that the scope of discovery can be tailored

10   to the alleged CRT conspiracy, including any alleged downstream effects on the market for

11   Finished Products, without subjecting the parties and the Court to additional massive allegations

12   of an entirely speculative claim that defendants agreed to set prices of Finished Products for

13   which there is no evidentiary support and thus, never belonged in this case.

14                                  **ARGUMENT**

15   **I.     DP PLAINTIFFS' OPPOSITION DOES NOTHING TO IDENTIFY A
            REASONABLE BASIS FOR THEM TO ALLEGE**
16          **AN AGREEMENT TO SET PRICES OF FINISHED PRODUCTS**

17           The DP Plaintiffs claim that they have satisfied Rule 11, not because they had

18   actual evidence or information to support the existence of an agreement to fix the prices of

19   Finished Products at the time they filed their complaint, but because the Rule 11 standard is

20   "very low."  Opp'n at 1.  In particular, the DP Plaintiffs assert that Rule 11 sanctions are

21   "inappropriate unless the pleading motion or other paper is frivolous as a whole . . . The mere

22   presence of a deficient or even frivolous allegation does not necessarily violate the rule."  Opp'n

23   at 11-12, citing *Les Shockley Racing, Inc. v. Nat. Hot Rod Assoc.*, 884 F.2d 504 509-10 (9th Cir.

24   1989) (citing *Community Elec. Serv. v. National Elec. Contractors Ass'n, Inc.*, 869 F.2d 1235,

25   1242 (9th Cir. 1989)).  But, that proposition from *Les Shockley* and *Community Electric* was

26   overruled by *Townsend v. Holman Consulting Corp*., 929 F.2d 1358, 1363 (9th Cir. 1990), which

27   made it clear that Rule 11 is violated by specific allegations in a complaint that lack good faith

28                                        - 3 -

*Dewey & LeBoeuf LLP*
*One Embarcadero Center, Suite 400*
*San Francisco, CA 94111*

**Dewey & LeBoeuf LLP**
**One Embarcadero Center, Suite 400**
**San Francisco, CA 94111**

1    support, regardless of whether other allegations have a good faith factual basis. *Id.* ("It would ill

2    serve the purpose of deterrence to allow . . . a 'safe harbor' for improper or unwarranted

3    allegations."). *See In re Biela*, 202 F.3d 277 (9th Cir. 1999) ("[a] pleading need not be frivolous

4    or harassing as a whole; rather a partially frivolous pleading is subject to Rule 11 sanctions.").

5    Thus, even assuming *arguendo* that the DP Plaintiffs had a good faith factual basis for alleging

6    an agreement to set the price of CRTs, they cannot avoid the conclusion that Rule 11 has been

7    violated because they did not have a good faith factual basis for their additional claim that the

8    alleged conspiracy involved fixing the prices of Finished Products.

9           Nor can the DP Plaintiffs escape the Rule 11 requirements by citing *In re*

10   *Delta/AirTran Baggage Fee Antitrust Litigation*, 733 F. Supp. 2d 1348 (N.D. Ga. 2010), *Zion v.*

11   *Nassan*, 727 F. Supp. 2d 388 (W.D. Pa. 2010), *Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90

12   (3d Cir. 1988), and *LaSalle National Bank of Chicago v. County of DuPage*, 10 F.3d 1333 (7th

13   Cir. 1993), for the purported proposition that Rule 11 should be applied leniently in antitrust

14   conspiracy cases. *Delta/Air Tran* is not a Rule 11 case and *Zion* does not involve antitrust

15   conspiracy allegations. *Mary Ann Pensiero* and *La Salle National Bank* simply note that

16   antitrust conspiracies can be difficult to prove. They do not support the notion that plaintiffs are

17   therefore excused from having a good faith basis for alleging a particular conspiracy in an

18   antitrust case. Indeed, there is nothing in the text of Rule 11 to indicate that its requirements do

19   not apply in Sherman Act cases. To the contrary, it is precisely in such cases, where the

20   potential for massive discovery is so great, that Rule 11 serves its most important purpose.

21          As set forth in Defendants' moving brief, the Finished Products conspiracy

22   allegations at issue do not meet the Rule 11 standard both because they were filed without a

23   reasonable investigation *and* because there was no good faith basis for asserting an agreement to

24   set the prices of Finished Products. Although the DP Plaintiffs claim that the Ninth Circuit's

25   decision in *In re Keegan Management Company Securities Litigation*, 78 F.3d 431 (9th Cir.

26   1996), has been "ignored" by Defendants, the same standard that was articulated in *Keegan* was

27   applied by Defendants in their moving brief. *See* Defs.' Moving Br. at 5 ("In assessing whether

28

- 4 -

REPLY MEMORANDUM ISO MOTION FOR SANCTIONS PURSUANT TO          Case No. 07-5944-SC
RULE 11, 28 U.S.C. § 1927, AND THE COURT'S INHERENT POWERS          MDL No. 1917

1  an attorney has satisfied his Rule 11 obligations, the court must consider 'factual questions

2  regarding the nature of the attorney's pre-filing inquiry and the factual basis of the pleading.'

3  *Cooter & Gell*, 496 U.S. at 399.").  In fact, all DP Plaintiffs had to do was ask Chunghwa –

4  which has been cooperating with DP Plaintiffs – whether it is aware of an agreement to fix the

5  prices of Finished Products; and, as the Court knows, Chunghwa has formally admitted it is not.

6           Nevertheless, DP Plaintiffs boldly assert that their "extensive" pre-filing

7  investigation uncovered substantial evidence that the alleged conspiracy "encompassed"

8  Finished Products.  But, the DP Plaintiffs do not identify any aspect of their pre-filing

9  investigation that yielded any good faith support for their claim that defendants "conspired,

10 combined, and contracted to fix, raise, maintain, and stabilize the price at which" finished CRT

11 Products "were sold in the United States."  DP-Complaint at ¶ 3.  Instead, they merely repeat

12 what alleged evidence they uncovered relating to their claims of a conspiracy to purportedly fix

13 the prices of CRTs.

14           1.  The Chunghwa Proffer.  The DP Plaintiffs make much of the fact that, prior to

15 filing their complaint, they received an extensive oral proffer from Chunghwa about the alleged

16 conspiracy.  Opp'n at 4.  But this proffer cannot possibly have supported the DP Plaintiffs'

17 Finished Product agreement allegations as Chunghwa – a company that only manufactured and

18 sold CRTs (not Finished Products) – served a conclusive set of responses to requests for

19 admissions in this case stating unambiguously that it had no knowledge or evidence of any

20 conspiracy to set prices of Finished Products.  Defendant Chunghwa Picture Tubes, Ltd.'s

21 Responses and Objections to Defendant LG Electronics USA Inc.'s First Set of Request for

22 Admissions at 3-4, May 10, 2010 ("RFA Responses").  The mere fact that Chunghwa may have

23 indicated to the DP Plaintiffs that the prices of Finished Products were taken into account during

24 alleged meetings about CRTs (Opp'n at 4), could not provide any good faith basis for the DP

25 Plaintiffs alleging a conspiracy to fix the prices of Finished Products.  Indeed, it is clear that the

26 "hundreds of meetings" disclosed by Chunghwa did not (as Chunghwa itself has admitted)

27 involve any agreement to set the prices of Finished Products.

28                                                       - 5 -

Dewey & LeBoeuf LLP
One Embarcadero Center, Suite 400
San Francisco, CA 94111

1      DP Plaintiffs urge the Court to ignore Chunghwa's RFA Responses, but their

2   arguments are unavailing for several reasons.

3      First, contrary to the DP Plaintiffs' assertions, courts routinely hold that responses

4   to requests for admissions are *not* hearsay.  *See, e.g., Simmons v. County of Los Angeles*, No. CV

5   04-9731 SVW (JC), 2009 WL 6769335 (C.D. Cal. Sept. 1, 2009) (relying on defendants'

6   responses to requests for admissions in deciding motion for summary judgment); *Marks v.*

7   *Chicoine*, No. C 06-06806 SI, 2007 WL 2408885, at *2 (N.D. Cal. Aug. 21, 2007) (holding that

8   responses to requests for admissions are admissible).  And, in any event, the Court is free to

9   consider these admissions, whether admissible in evidence at trial or not, to evaluate whether the

10  DP Plaintiffs had a good faith basis for filing their Finished Products conspiracy claims on the

11  basis of the Chunghwa proffer.

12      Second, the RFAs asked Chunghwa to admit or deny the very question at issue

13  here:  whether it was aware "of any agreement among Manufacturers or Sellers of CRT Finished

14  Products, including any Defendants who are Manufacturers or Sellers of CRT Products,

15  concerning the prices at which any such Manufacturers or Sellers sell those Finished Products."

16  This request, contrary to the DP Plaintiffs' assertion, in no way assumes "a separate Finished

17  Product conspiracy, rather than the unitary conspiracy Plaintiffs actually allege," and goes to the

18  dispositive question of what information the DP Plaintiffs did or did not have prior to filing the

19  complaint to support an allegation that Defendants agreed to fix prices of Finished Products.  The

20  RFAs are conclusive evidence that the DP Plaintiffs could not have properly relied upon the

21  Chunghwa proffer as a basis for filing such a claim.

22      Third, the fact that Chunghwa's RFA Responses were not served until after the

23  complaints were filed is of no moment.  The point is that, as noted above, as part of their pre-

24  filing investigation, the DP Plaintiffs had the good faith obligation, if they intended to rely on the

25  Chunghwa proffer, to determine if Chunghwa believed that it had any information to support the

26  existence of a Finished Products conspiracy.  We now know that, if Chunghwa had been asked

27  that question, the answer would have been no, and the DP Plaintiffs could not have possibly

28                                              - 6 -

Dewey & LeBoeuf LLP
One Embarcadero Center, Suite 400
San Francisco, CA 94111

Dewey & LeBoeuf LLP
One Embarcadero Center, Suite 400
San Francisco, CA 94111

1  believed that the information provided to them by Chunghwa satisfied their Rule 11 obligations

2  with respect to a claim that Defendants agreed to fix the prices of Finished Products.

3        Further, in the period since the RFAs were served on May 10, 2010, the DP

4  Plaintiffs have continued to insist that the Chunghwa evidence provides the principal support for

5  their Finished Products conspiracy claim, despite Chunghwa's clear admissions to the contrary.

6  This also violates Rule 11, as it is the DP Plaintiffs' duty to drop baseless claims once it becomes

7  clear they have no merit – something the Indirect Purchaser Plaintiffs rightfully recognized. *See*

8  *Van Scoy v. Shell Oil Co.*, No. 95-16315, 98 F.3d 1348, 1996 WL 563449, at *3 (9th Cir. Oct. 2,

9  1996)(unpublished)("Sanctions are appropriate for insisting upon a position after it is no longer

10  tenable....")(citation omitted); *Attwood v. Singletary*, 105 F.3d 610, 613 (11th Cir. 1997) ("Rule

11  11 requires [the plaintiff] to make reasonable inquiries into the veracity of information filed

12  before the court and to advise the court of any changes. Contrary to [plaintiff's] assertion, his

13  obligations under Rule 11 are not measured solely at the time of filing.").

14        2. Government Investigations. Similarly, there is no basis for the DP Plaintiffs'

15  assertion that their allegations of a Finished Products price-fixing agreement are reasonable

16  because of the existence of the various DOJ and foreign investigations, described in press

17  releases or later in plea agreements, all of which relate to an alleged conspiracy in CRTs. Opp'n

18  at 4-5. While some information in these documents may suggest that downstream users of

19  computers and televisions could have been harmed by the alleged price-fixing of CRTs, such

20  information would relate only to indirect impact and injury and would not provide any support

21  for the allegation made by DP Plaintiffs here that defendants conspired to set the prices of

22  Finished Products. Indeed, the fact that these government investigations only relate to CRTs, as

23  opposed to Finished Products, should have been a reason for the DP Plaintiffs to have limited

24  their allegations in the complaint absent any other basis to assert a Finished Products conspiracy

25  claim. None of the press releases or plea agreements refer to any agreement (tacit or otherwise)

26

27

28

- 7 -

Dewey & LeBoeuf LLP
One Embarcadero Center, Suite 400
San Francisco, CA 94111

1    to set the prices of Finished Products.[2]  Indeed, Defendants such as Samsung Electronics

2    Company, Ltd. and Samsung Electronics America, Inc. that only manufacture and sell Finished

3    Products (not CRTs), are not even subject to the government investigations DP Plaintiffs claim

4    to have relied upon in bringing their complaint.

5            The fact that the scope of an alleged conspiracy in a civil case may exceed the

6    scope of a conspiracy pled to in a criminal case is not the issue.  Opp'n at 17.  If the DP Plaintiffs

7    had an alternative reasonable basis for asserting a Finished Products conspiracy claim, then they

8    would not be limited by the scope of the criminal proceedings.  However, where as here, those

9    proceedings are being relied upon to provide Rule 11 support, the DP Plaintiffs are precluded

10   from making an allegation based on pure speculation that they can possibly unearth, through a

11   discovery fishing expedition, a conspiracy broader than that being charged by the DOJ or other

12   government agencies.  *MGIC Indemnity Corp. v. Weisman*, 803 F.2d 500, 505 (9th Cir. 1986);

13   *Elan Microelectronics Corp. v. Apple, Inc.*, No. C-09-01531, 2009 WL 2972374, at *4 (N.D.

14   Cal. Sept. 14, 2009) ("Simply guessing or speculating that there may be a claim is not enough.").

15           3.  <u>Consultation with Purported Expert</u>.  As a new ground to resist Rule 11

16   sanctions, the DP Plaintiffs claim that, prior to filing their complaint, they took into account the

17   undisclosed opinion of a purported "expert economist" who supposedly speculated that there

18   could have been a conspiracy "encompassing" Finished Products.  However, there is no

19   indication that this economist had any evidence – other than that otherwise cited by the DP

20   Plaintiffs in their Opposition – upon which to base such speculation, and the fact that he is an

21   expert does not give the DP Plaintiffs a pass from satisfying their Rule 11 obligations regarding

22   factual contentions made in their complaint.  Indeed, there is nothing in the DP Plaintiffs' limited

23   disclosure about this expert consultation to suggest that such an expert did any analysis which

24   [2] DP Plaintiffs now seek to rely upon the Joint Sentencing Memorandum ("JSM") recently filed
25   by the DOJ and defendant Samsung SDI (which does not make or sell any finished CRT
     products) because it contains the term "cathode ray tube products."  Opp'n at 17 n.11. However,
26   the text of the Memorandum specifically indicates that the term "Products" in that document
     refers to cathode display tubes and cathode picture tubes, not Finished Products.  This
27   Memorandum thus provides further evidence of why the DP Plaintiffs have no basis to assert a
     Finished Products conspiracy claim.

28                                          - 8 -

REPLY MEMORANDUM ISO MOTION FOR SANCTIONS PURSUANT TO     Case No. 07-5944-SC
RULE 11, 28 U.S.C. § 1927, AND THE COURT'S INHERENT POWERS       MDL No. 1917

Dewey & LeBoeuf LLP
One Embarcadero Center, Suite 400
San Francisco, CA 94111

1    would support a good faith allegation of an agreement to set the prices of Finished Products, as

2    opposed to an alleged CRT conspiracy which may have had an impact on downstream

3    customers.  Whatever DP Plaintiffs are referring to here, it is useful to bear in mind that Rule 11

4    concerns the inquiry into factual support for an allegation and, as the Supreme Court has stated,

5    "[e]xpert testimony is useful as a guide to interpreting facts, but it is not a substitute for them."

6    *Brooke Group Ltd. v. Brown & Williams Tobacco Corp.*, 509 U.S. 209, 242 (1993).

7            The DP Plaintiffs claim that, based on the economic possibility that agreements

8    on CRT tubes could have affected downstream prices, it was proper for them to allege an

9    agreement to set the prices of Finished Products because the law "forbids tacit agreements and

10   'indirect' fixes on any aspect of price."  Opp'n at 13.  The authorities relied upon by the DP

11   Plaintiffs, however, do not support the contention that possible, downstream market effects (even

12   if anticipated by conspirators) amount to an agreement to fix prices of the downstream products.

13   Instead, the cases cited by the DP Plaintiffs address only the non-controversial point that an

14   agreement with the purpose of fixing the price of a particular product is illegal even if the

15   agreement is to price-fix the product through indirect means, such as agreeing to control the

16   supply of the product (*U.S. v. Socony-Vacuum Oil Co.*, 310 U.S. 150 (1940)), or agreeing to

17   eliminate credit for purchasing the product (*Catalano, Inc. v. Target Sales, Inc.*, 446 U.S. 643

18   (1980)).  DP Plaintiffs' remaining authorities merely state that, to be illegal, an agreement need

19   not be expressly stated where "uniform behavior among competitors" is preceded by

20   "conversations implying that later uniformity might prove desirable or [is] accompanied by other

21   conduct that in context suggests that each competitor failed to make an independent decision."

22   *White v. R.M. Packer, Inc.*, No. 10-1130, 2011 WL 565655 at *2 (1st Cir. Feb. 18, 2011).

23   Indeed, the *White* case cited by DP Plaintiffs actually held that several "plus" factors identified

24   by plaintiffs showed nothing more than an opportunity for conscious parallelism.

25           Here, DP Plaintiffs identify no discussion among defendants about the desirability

26   of their charging similar prices for Finished Products, what those prices might be, or even that

27   Finished Products were later sold by defendants at uniform prices.  (Indeed, many defendants do

- 9 -

28

REPLY MEMORANDUM ISO MOTION FOR SANCTIONS PURSUANT TO      Case No. 07-5944-SC
RULE 11, 28 U.S.C. § 1927, AND THE COURT'S INHERENT POWERS            MDL No. 1917

**Dewey & LeBoeuf LLP**
One Embarcadero Center, Suite 400
San Francisco, CA 94111

1   not sell Finished Products at all).  As the Supreme Court stated in *Monsanto Co. v. Spray-Rite*

2   *Service Corp.*, 465 U.S. 752 (1984), an illegal conspiracy is a "*conscious commitment* to a

3   common scheme designed to achieve an unlawful objective."  *Id.* at 768.  There is simply no

4   support in the cases cited by DP Plaintiffs, or in the Chunghwa documents, to satisfy their Rule

5   11 obligations.[3]

6           4. <u>Market Research</u>.  DP Plaintiffs assert that their "extensive" pre-filing research

7   regarding the Finished Products market revealed "anomalous" pricing, a "highly concentrated

8   industry," a standardized product, and a history of joint ventures within the industry.  But, as set

9   forth in the DP Plaintiffs' complaint, all of this research relates to the market for CRTs, not

10  Finished Products.  Indeed, DP Plaintiffs' complaint contains no factual allegations about joint

11  ventures in the market for televisions or monitors; no factual allegation about those markets

12  having experienced anomalous pricing; and, no allegations about those markets even being

13  highly concentrated.  To the contrary, as the DP Plaintiffs have never contested in the past, the

14  markets for Finished Products are not highly concentrated, and numerous companies with

15  substantial market shares in the U.S. for Finished Products are not even mentioned in the

16  complaint (for example, Sony Corporation, Sharp, Sanyo, and Visio in the television market, and

17  Dell, Apple, Gateway, and Hewlett Packard in the computer monitor market).

18          5. <u>Miscellaneous Facts</u>.  Finally, there is no support for the alleged Finished

19  Products conspiracy in the other miscellaneous facts cited by the DP Plaintiffs.  For example, the

20  fact that some, but not all, of the Defendants here also were involved in LCD or other

21  government investigations or litigations relating to <u>different</u> products obviously provides no

22  evidence at all of an alleged Finished Products conspiracy relating to CRT televisions or

23  computer monitors.  Nor does the fact that some, but not all, of the Defendants have affiliated

24  companies involved in both the CRT business and the Finished Products business provide any

25  ---
[3] The one document cited by the DP Plaintiffs in their motion involves a "top management"
26  meeting where CRT tube makers purportedly mentioned the then-current retail prices of
    computer monitors to determine what prices Finished Products makers might be willing to pay
27  for CRT tubes.  Opp'n at 15.  This document does not in any way provide a good faith basis for
    alleging an agreement to price-fix Finished Products.

28                                          - 10 -

Dewey & LeBoeuf LLP
One Embarcadero Center, Suite 400
San Francisco, CA 94111

1   good faith basis for alleging an agreement to fix the prices of Finished Products.  Whether

2   viewed separately or together, none of these facts are sufficient to satisfy the Rule 11 test

3   because they fail to provide DP Plaintiffs with a good faith basis for alleging an agreement to set

4   the prices of Finished Products.

5          In light of all the above, it is clear why, after reviewing Defendants' Rule 11

6   motion, Indirect Purchaser Plaintiffs decided not to pursue their allegations of an agreement to

7   fix the prices of Finished Products and instead, decided only to pursue claims based on an

8   alleged conspiracy to fix the prices of tubes with an alleged effect on downstream market prices.

9   The DP Plaintiffs have no good faith basis to pursue any broader conspiracy claim.

10  **II.     DEFENDANTS' MOTION IS TIMELY AND FULLY**
    **COMPLIES WITH ALL PROCEDURAL REQUIREMENTS**

11         **A.     This Motion Is Not Premature**

12         The combination of local rules and Ninth Circuit precedent makes it clear that the

13  determination of when a Rule 11 motion should be filed is made on a case-by-case basis.  *See In*

14  *re Yagman*, 796 F.2d 1165, 1182 (9th Cir. 1986)("Each case must be taken individually and

15  evaluated in light of its own peculiar circumstances.").

16         There is no rigid rule, as DP Plaintiffs claim, that a Rule 11 motion cannot be

17  filed until after a dispositive ruling dismissing the claims is granted.  For example, the decision

18  in *Rodriguez v. Service Employees International*, cited by Plaintiffs, reveals that the Rule 11

19  motion at issue was brought before a motion to dismiss was filed and the court in that case, citing

20  the Advisory Committee Notes to Rule 11, merely stated the correct rule (advanced by

21  defendants here):  "[t]he time when sanctions are to be imposed rests in the discretion of the trial

22  judge …[t]he [1993] revision leaves for resolution on a case-by-case basis, considering the

23  particular circumstances involved, the question as to when a  motion for violation of Rule 11

24  should be served and when, if filed, it should be decided."  No. C-10-01377 JCS, 2010 WL

25  3464365, at *1-2 (N.D. Cal. Sept. 1, 2010).  Similarly off-point is the decision in *Wingle v. U.S.*

26  where, before responding to the complaint, the United States moved for sanctions against a *pro*

27

28                                                  - 11 -

REPLY MEMORANDUM ISO MOTION FOR SANCTIONS PURSUANT TO          Case No. 07-5944-SC
RULE 11, 28 U.S.C. § 1927, AND THE COURT'S INHERENT POWERS         MDL No. 1917

**Dewey & LeBoeuf LLP**
One Embarcadero Center, Suite 400
San Francisco, CA 94111

1    *se* plaintiff on the basis that his complaint was "unintelligible" and failed to state a claim upon

2    which relief could be granted.  No. CV-F-05-160RECLJO, 2005 WL 2604184, at *5 (E.D. Cal.

3    Oct. 13, 2005).  In this case, by contrast, the Court now has before it a discovery record, in the

4    form of interrogatory answers and answers to requests for admissions, which demonstrate that

5    the DP Plaintiffs had no good faith factual basis for asserting their Finished Products conspiracy

6    claims, and there is a pressing need to consider Rule 11 now, before the parties and the Court are

7    subjected to a massive discovery fishing expedition on claims that do not have any basis to be

8    asserted.

9          If, as the DP Plaintiffs suggest, this motion is premature, it is unclear when

10   exactly it should be filed.  Defendants' motions to dismiss have been denied and it is well-

11   established that waiting to move for sanctions until after summary judgment is improper.  *See*

12   *Barber v. Miller*, 146 F.3d 707, 711 (9th Cir. 1998) ("In light of the clear language and intent of

13   the amended Rule, we agree with the Sixth Circuit that 'a party cannot wait until after summary

14   judgment to move for sanctions under Rule 11.'")(quoting *Ridder v. City of Springfield*, 109 F.3d

15   288 (6th Cir. 1997)).  Moreover, Northern District of California Local Rule 7-8(c) states, "[t]he

16   motion must … be made as soon as practicable after the filing party learns of the circumstances

17   that it alleges make the motion appropriate."  *See Cooter & Gell v. Hartmax Corp.*, 496 U.S.

18   384, 398 (1990) ("[d]istrict courts may, of course, adopt local rules establishing timeliness

19   standards for filing and deciding Rule 11 motions." (citation omitted)).

20         Indeed, now is precisely the time in this litigation when it is appropriate for the

21   Court to determine the Rule 11 issue.  For almost a year, Defendants sought to determine the

22   factual basis for the allegations in DP Plaintiffs' complaint that defendants participated in a

23   conspiracy encompassing the alleged price-fixing of Finished Products.  Defendants sought this

24   discovery to determine whether the plaintiffs had any facts at the time they filed their complaints

25   to support such allegations, and to give plaintiffs an opportunity to withdraw these allegations

26   prior to Defendants filing a Rule 11 motion.  However, Plaintiffs objected to defendants'

27   discovery requests to disclose this information, characterizing them as premature, and only

28                                         - 12 -

Dewey & LeBoeuf LLP
One Embarcadero Center, Suite 400
San Francisco, CA 94111

1   responded after they were ordered to do so by this Court.  Once the discovery responses were

2   finally made, it became clear that Plaintiffs had no good faith basis to support any allegation that

3   Defendants agreed to set prices of Finished Products.  Defendants thus gave Plaintiffs the

4   required Rule 11 notice, and eventually, the Indirect Purchaser Plaintiffs decided to withdraw

5   their Finished Products conspiracy claims.  The DP Plaintiffs, however, would not relent, making

6   this the necessary and appropriate time for the Court to consider Rule 11.  As this Court noted,

7   resolving this issue will enable it to better determine "the permissible scope of discovery, the

8   time necessary for discovery, the respective burdens on the parties, and the scope of the trial."

9   Report and Recommendations Regarding Discovery Motions, Dkt. No. 810, at 6 (Nov. 18, 2010)

10   ("Report").

11   **B.      The Moving Defendants Fully Complied
              With The Safe Harbor Provision**

12          The DP Plaintiffs were granted the benefit of a full 21-day "safe-harbor" period

13   (Fed. R. Civ. P. 11(c)(2)), and had a full opportunity to respond to this motion and understand

14   what Rule 11 violations were being asserted.  The purpose of the "safe-harbor" period is to

15   notify the non-moving party of its alleged violation and to give it an opportunity to correct the

16   violation or withdraw the offending allegations without sanctions being imposed.  Fed. R. Civ. P.

17   11 Advisory Committee Notes 1993 Amendments (the purpose of the safe-harbor is "[t]o stress

18   the seriousness of a motion for sanctions and to define precisely the conduct claimed to violate

19   the rule….").

20          The DP Plaintiffs do not assert, because they cannot, that they did not receive the

21   draft motion 21 days prior to it being filed or that the draft motion failed to precisely define, and

22   thus put Plaintiffs on notice of, their Rule 11 violations.  Rather, DP Plaintiffs merely assert that

23   they were not provided with a non-substantive declaration of Jeffrey Kessler attaching 17

24   exhibits, all of which were identified in the draft motion and were fully available to the DP

25   Plaintiffs, and a proposed order (not even required by the text of the rule to be provided).

26   Plaintiffs cannot seriously argue that the notice and safe harbor provisions of the Rule were not

27

28                                                    - 13 -

REPLY MEMORANDUM ISO MOTION FOR SANCTIONS PURSUANT TO          Case No. 07-5944-SC
RULE 11, 28 U.S.C. § 1927, AND THE COURT'S INHERENT POWERS              MDL No. 1917

**Dewey & LeBoeuf LLP**
One Embarcadero Center, Suite 400
San Francisco, CA 94111

1    complied with or that they did not have an adequate opportunity to consider withdrawing the

2    offending claims.[4]

3    **III.    DP PLAINTIFFS DO NOT DISPUTE THAT THE
4              PROPER RULE 11 SANCTIONS ARE TO STRIKE
              THE OFFENDING ALLEGATIONS AND AWARD
5              DEFENDANTS REASONABLE ATTORNEYS' FEES AND COSTS**

6            Finally, the DP Plaintiffs do not dispute that, without legally sufficient support for

7    their Finished Products price-fixing claims, the proper remedy is for the Court to strike those

8    allegations from the DP Plaintiffs' complaint.  This remedy is particularly appropriate here

9    where striking the allegations is the most effective means to streamline the case and to prevent a

10   massive discovery fishing expedition regarding a Finished Products conspiracy which does not

11   belong in the case.  As this Court knows, even just the claims relating to the alleged CRT

12   conspiracy are being used by the DP Plaintiffs to seek nearly twenty years of global discovery.

13   There is no basis to further burden this already expansive and unwieldy MDL litigation with

14   additional global conspiracy claims that have no Rule 11 foundation.  Rule 11 was adopted to

15   prevent just such an abuse of the litigation process.

16           Nor do the DP Plaintiffs dispute that, if Defendants are successful on this motion,

17   they are entitled to the additional remedy of reasonable attorneys' fees and costs that Defendants

18   have incurred in defending against the unsupported allegations of a conspiracy encompassing

19   Finished Products, including the cost of this motion and engaging in discovery relating to

20   Plaintiffs' allegations of a Finished Products conspiracy.  Such sanctions are the most common

21   remedy for a Rule 11 violation.

22

23

24

25   _____
     [4] Plaintiffs' reliance on *Metlife Bank, N.A. v. Badostain* is misplaced.  In *Metlife*, defendants'
26   Rule 11 motion was denied because they refused to provide plaintiffs with a supporting
     declaration after plaintiffs requested it.  No. 1: 10-Cv-118-CWD, 2010 WL 5559693, at *5 (D.
27   Idaho Dec. 30, 2010).  Further, it is unclear from the *Metlife* opinion whether the plaintiffs were
     in possession of or had access to the documents attached to the declaration, as is the case here.

28                                               - 14 -

**CONCLUSION**

For all the foregoing reasons and those set forth in Defendants' moving brief, Defendants respectfully request that the Court:  (i) declare the DP Plaintiffs to be in violation of Rule 11 and strike all allegations in their complaint asserting any agreement to fix the prices of, or otherwise restrain trade in, the sale of any Finished Products; and (ii) award Defendants monetary sanctions in the amount of the reasonable attorneys' fees and costs they have incurred in defending against such allegations, including the costs of this motion.  If Defendants are awarded monetary sanctions, they respectfully request 10 days after the Court's ruling on this motion to submit an appropriate fee request.

DATED:  May 10, 2011

By: ___/s/ Jeffrey L. Kessler___
JEFFREY L. KESSLER (*pro hac vice*)
Email: jkessler@dl.com
A. PAUL VICTOR (*pro hac vice*)
Email: pvictor@dl.com
**DEWEY & LEBOEUF LLP**
1301 Avenue of the Americas
New York, New York 10019
Telephone: (212) 259-8000
Facsimile: (212) 259-7013

ALDO A. BADINI (257086)
Email: abadini@dl.com
**DEWEY & LEBOEUF LLP**
1950 University Avenue
East Palo Alto, California 94303
Telephone: (650) 845-7000
Facsimile: (650) 845-7333

STEVEN A. REISS (*pro hac vice*)
Email: steven.reiss@weil.com
DAVID L. YOHAI (*pro hac vice*)
Email: david.yohai@weil.com
DAVID E. YOLKUT (*pro hac vice*)
Email: david.yolkut@weil.com
**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, New York 10153-0119
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007

- 15 -

**Dewey & LeBoeuf LLP**
One Embarcadero Center, Suite 400
San Francisco, CA 94111

Dewey & LeBoeuf LLP
One Embarcadero Center, Suite 400
San Francisco, CA 94111

GREGORY D. HULL (57367)
Email: greg.hull@weil.com
**WEIL, GOTSHAL & MANGES LLP**
201 Redwood Shores Parkway
Redwood Shores, California 94065-1175
Telephone: (650) 802-3000
Facsimile: (650) 802-3100

*Attorneys for Defendants Panasonic Corporation of North America, MT Picture Display Co., Ltd., Panasonic Corporation (f/k/a Matsushita Electric Industrial Co.)*

By: /s/ Diane L. Webb
Diane L. Webb (197851)
Email:  dwebb@morganlewis.com
Scott A. Stempel (*pro hac vice*)
Email:  sstempel@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
One Market, Spear Street Tower
San Francisco, California 94105-1126
Telephone: (415) 442-1000
Facsimile: (415) 442-1001

*Attorneys for Defendants Hitachi, Ltd., Hitachi Asia, Ltd., Hitachi America, Ltd., Hitachi Electronic Devices (USA), Inc., and Hitachi Displays, Ltd.*

By:    /s/ Ian Simmons
IAN SIMMONS (*pro hac vice*)
Email: isimmons@omm.com
BEN BRADSHAW (189925)
Email: bbradshaw@omm.com
**O'MELVENY & MYERS LLP**
1625 Eye Street, NW
Washington, DC 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414

*Attorneys for Defendants Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc.*

- 16 -

REPLY MEMORANDUM ISO MOTION FOR SANCTIONS PURSUANT TO RULE 11, 28 U.S.C. § 1927, AND THE COURT'S INHERENT POWERS          Case No. 07-5944-SC          MDL No. 1917