Guido Saveri (22349) guido@saveri.com
R. Alexander Saveri (173102) rick@saveri.com
Geoffrey C. Rushing (126910) grushing@saveri.com
Cadio Zirpoli (179108) cadio@saveri.com
SAVERI & SAVERI, INC.
706 Sansome Street
San Francisco, CA 94111
Telephone:   (415) 217-6810
Facsimile:    (415) 217-6813

*Interim Lead Counsel for the Direct Purchaser*
*Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | MASTER FILE NO. 07-cv-5944 SC |
| | MDL NO. 1917 |
| This Document Relates to: | **DECLARATION OF R. ALEXANDER SAVERI IN SUPPORT OF OPPOSITION TO MOTION TO COMPEL DIRECT PURCHASER PLAINTIFFS TO PRODUCE DOWNSTREAM DISCOVERY** |
| ALL DIRECT PURCHASER ACTIONS | |
| | The Honorable Charles A. Legge |
| | Court:     JAMS |

I, R. Alexander Saveri, declare as follows:

1.      I am the managing partner at the law firm of Saveri & Saveri, Inc.  I am admitted to practice law in this District and before the courts of the State of California.  I make this declaration in support of the Letter Brief in Opposition to the Motion to Compel Direct Purchaser Plaintiffs to Produce Downstream Discovery.  Except as otherwise noted, I testify to the following facts based on my personal knowledge:

2.      Attached hereto as <u>Exhibit 1</u> is a true and correct copy of "Order Denying Motion to Compel" issued by Judge Spero in *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M-02-1486 PJH (JCS) (N.D. Cal. June 1, 2006);

3.      Attached hereto as <u>Exhibit 2</u> is a true and correct copy of "Flat Panel Discovery Order" issued by the Honorable Fern Smith (Special Master) in *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M:07-md-1827 SI (N.D. Cal. Jan. 13, 2009);

4.      Attached hereto as <u>Exhibit 3</u> is a true and correct copy of "Special Master's Order Re Defendants' Motion to Compel Direct Purchaser Plaintiffs to Documents Relating to Downstream Sales (Hrg. 10/13/10)" issued by Special Master Martin Quinn in *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M:07-md-1827 SI (N.D. Cal. Nov. 10, 2010);

5.      Attached hereto as <u>Exhibit 4</u> is a true and correct copy of the order denying defendants' motion to compel the production of pricing, sales, and marketing documents from plaintiffs, issued by the Honorable Christopher C. Conner in *In re Chocolate Confectionary Antitrust Litig.*, MDL 1935 (M.D. Pa. Jan. 20, 2010);

6.      Attached hereto as <u>Exhibit 5</u> is a true and correct copy of the order denying defendants' discovery motion on the grounds that the information was not relevant or necessary to determine class certification, issued by the Honorable Donetta W. Ambrose in *In re Flat Glass Antitrust Litig. (II)*, MDL No. 1942 (W.D. Pa. Jan. 6, 2010);

7.      Attached hereto as <u>Exhibit 6</u> is a true and correct copy of the order denying Defendants' Motion to Compel Production of Documents, issued by the Honorable Paul A. Magnuson in *In re Monosodium Glutamate Antitrust Litig.*, MDL 00-1328 (PAM/JGL) (D. Minn. Sept. 13, 2000);

8.     Attached hereto as Exhibit 7 is a true and correct copy of the order denying discovery of plaintiffs' costs and profits, issued by the Honorable Patricia C. Pawsett in *In re Carbon Dioxide Antitrust Litig.*, MDL Dkt. No. 940 (M.D. Fla. Nov. 19, 1993);

9.     Attached hereto as Exhibit 8 is a true and correct copy of the order sustaining plaintiffs' objection to a document request relating to the resale of carbon dioxide, finding the information irrelevant to class certification, issued by the Honorable Patricia C. Pawsett in *In re Carbon Dioxide Indus. Antitrust Litig.*, M.D.L. 92-940 (M.D. Fla. Dec. 10, 1992); and

10.    Attached hereto as Exhibit 9 is a true and correct copy of the Indirect Purchaser Plaintiffs' "Notice of Intent to Serve Subpoenas" with Exhibits A-NN omitted.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.


Executed this 31st day of May, 2011 in San Francisco, California.


*R. Alexander Saveri*
R. Alexander Saveri


Crt.415.docx

Declaration of R. Alexander Saveri ISO Opposition to Motion to Compel Production of Downstream Discovery; Master File No. 07-cv-5944 SC; MDL No. 1917

2

EXHIBIT 1

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| In re DYNAMIC RANDOM ACCESS MEMORY (DRAM) ANTITRUST LITIGATION, | No. M-02-1486 PJH (JCS) |
|---|---|
| | **ORDER DENYING MOTION TO COMPEL** |
| This document relates to: | |
| ALL ACTIONS. | |

By letter dated May 30, 2006, Direct Purchaser Plaintiffs and Defendants brought to the Court's attention a dispute concerning the discovery of information pertaining to "Plaintiffs' contracts with their DRAM customers, about how Plaintiffs determined the amounts they charged, or about the amounts they charged in relation to what they paid for DRAM." Joint Letter of May 30, 2006, at 1. Having reviewed the arguments of counsel, the Court rules as follows:

Treating the Joint Letter as a motion to compel, it is DENIED. *See In re Vitamins Antitrust Litig.*, 198 F.R.D. 296, 301 (D.D.C. 2000). While the Court cautions the parties that while, in general, instructions not to answer on relevance grounds are not permitted by the DISCOVERY PLAN, the objection in question was raised before the DISCOVERY PLAN. Nonetheless, Defendants have waited until after the hearing on class certification to raise the issue with the Court. The Court concludes that any marginal relevance that responses to the questions at issue might have to the Direct Purchaser cases is outweighed by the unnecessary burden this discovery would impose on the parties.

IT IS SO ORDERED.

Dated: June 1, 2006

JOSEPH C. SPERO
United States Magistrate Judge

United States District Court

For the Northern District of California

EXHIBIT 2

Hon. Fern M. Smith (Ret.)
JAMS Inc.
Two Embarcadero Center, Suite 1500
San Francisco, California 94111
(415) 982-5267
(415) 982-5287 (fax)

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

In Re: TFT-LCD (FLAT PANEL)
ANTITRUST LITIGATION

Case No. M 07-1827 SI

**FLAT PANEL DISCOVERY ORDER**

Following a lengthy in-person hearing on December 18, 2009, counsel for Plaintiffs and certain of the Defendants agreed to meet and confer in order to reach resolution on some remaining document recovery requests. Despite good faith attempts, the dispute was not resolved, and the Special Master received a letter from Plaintiffs on January 6, 2009, and from Cleary Gotttlieb, on January 7, 2009, on behalf of the relevant Defendants, setting forth the parties' respective positions.

Having reviewed the letters, and considering the prior briefing and hearing, the Special Master issues this ruling:

Plaintiffs are correct that "downstream discovery" is disfavored. Further, the information requested in Item #1 on Page 2 of Defendants' January 7 letter is overbroad and unreasonably burdensome on its face. Defendants have not demonstrated that their alleged need for this information outweighs the burden of producing it. This request is denied at this time.

Plaintiffs shall answer Items #2 and 4 by way of answers to Interrogatories and produce examples of form contracts in response to Item #3. They shall also inform Defendants as to how many relevant non-form contracts exist. Should Defendants believe that those answers are insufficient, they may seek further relief.

So Ordered.

Dated: January 13, 2009

Hon. Fern M. Smith (Ret.)
Special Master

EXHIBIT 3

Martin Quinn
JAMS
Two Embarcadero Center, Suite 1500
San Francisco, CA 94111
Telephone: (415) 982-5267
Fax: (415) 982-5287

SPECIAL MASTER

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: TFT-LCD (FLAT PANEL) ANTITRUST LITIGATON | **CASE NO. M:07-cv-01827-si** <br><br> **MDL No. 1819** <br><br> **SPECIAL MASTER'S ORDER RE DEFENDANTS' MOTION TO COMPEL DIRECT PURCHASER PLAINTIFFS TO PRODUCE DOCUMENTS RELATING TO DOWNSTREAM SALES (Hrg. 10/13/10)** |
| This Order Relates to: <br><br> ALL CASES | |

    The motion by defendants to compel Direct Purchaser Plaintiffs ("DPP's) to produce documents relating to their sales of TFT-LCD Panels and Products to their customers in response to Request No. 3 in defendants' First Set of Requests for Production of Documents dated July 22, 2008, was heard on October 13, 2010. Counsel for all affected parties were present or attended by telephone. Having considered all the evidence and argument submitted by the parties, I now make the following Order.

## Background Facts and Contentions

Request No. 3 demands that each DPP produce essentially every document relating in any way to every sale of a TFT-LCD panel or finished product. It seeks documents evidencing date and place of sale, identity of buyer, type of panel or product sold, quantity and the list and net price of each sale, manufacturer of each item sold, taxes, duties and freight charges paid, terms and conditions of every sale, copies of all receipts and purchase orders, copies of all instruction manuals – and so on. To describe the request as comprehensive would be an understatement.

DPP's objected that discovery of data regarding downstream sales – that is, resales by antitrust plaintiffs to their own customers – is barred by applicable U.S. Supreme Court authority. *Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481, 493-494 (1968). DPP's argue that such data is irrelevant to their claims of price-fixing against the flat panel manufacturers in this case, because whether a direct purchaser passes alleged overcharges along to its own customers is considered irrelevant to its claim for damages against the price-fixer. DPP's also argue that the request is unduly burdensome since it requires retrieval and analysis of many thousands of hard-copy and electronic documents many years old. They note that this disproportionate burden has led courts to conclude that requiring production of downstream sales data would chill the bringing of antitrust cases.[1]

Defendants acknowledge that downstream sales data would be irrelevant to the DPP case, but maintain that it is relevant to the Indirect Purchaser Plaintiffs' class action against them. Although the Direct Purchaser Plaintiffs are not parties to the IPP case, defendants argue that the DPP's are third parties in possession of information relevant to the IPP case who may be subpoenaed to produce relevant responsive documents like any other third party.

The Court previously addressed this issue in Special Master Smith's Order of 1/13/09, Dkt. No. 787, in which defendants' request for downstream sales data was basically denied except for some limited information about each plaintiff's general sales practices. The Special Master noted that downstream sales discovery was "disfavored" and that the information

---

[1] *Meijer, Inc. v. Abbott Laboratories*, 251 F.R.D. 431, 434 (N.D. Cal. 2008) ["[T]he Supreme Court has cautioned that the effectiveness of antitrust actions may be substantially reduced if defendants are allowed to pursue an inquiry into downstream activities and the massive discovery that such an inquiry would entail."]

requested – presumably the same information requested in this motion – was "overbroad and unreasonably burdensome."

The parties met-and-conferred to no avail. This motion was filed on September 23, 2010.

## Analysis

The opening issue is why the Court should depart from Special Master Smith's prior ruling. Defendants argue that the circumstances have changed. The 2009 Order was issued in the context of class certification, and the Court was unpersuaded that this discovery was relevant or useful to certification.[2] This case and the IPP class action are now past the certification stage. Defendants argue that their need for downstream sales data in the IPP case is more pressing now than it was about two years ago. Defendants note that the Indirect Purchaser Plaintiffs are now contending that 100% of the alleged overcharges resulting from illegal price-fixing were passed on to them as the ultimate buyers of the panels and products. Therefore, defendants want evidence to dispute that contention, and thus to reduce the damages the IPP's may recover. One source of such evidence would be the downstream sales effected by the DPP's in this case.

So far, defendants' argument is flawless. Downstream sales data may be more relevant to damages in the IPP case than it was to certification. And surely the sales data of the DPP's is one source of evidence as to whether alleged overcharges were passed on to the IPP's. But it is not the only source. Defendants have already obtained sales data from other companies, and are continuing to do so. They have served about 70 subpoenas on non-parties for sales data for use in the IPP case, although they complain that much of this data will come from large retailers such as Costco, and will thus not be sufficiently representative on which to base an expert conclusion. In contrast, the eleven representative DPP's from whom this discovery is sought are relatively small Mom-and-Pop companies. Defendants argue that these other 70 non-parties have not flatly objected to producing this data, and ask why DPP's should escape an equivalent burden simply because they happen to be parties in a companion case.

I conclude there are three good reasons why defendants' arguments ought not to prevail: case law is squarely against their position; there is no compelling justification for undoing

---

[2] Special Master Smith's Order did not refer to certification, but I accept for purposes of argument that it was issued in that broad context.

Special Master Smith's prior order; and defendants have not demonstrated any need to obtain this extraordinarily burdensome discovery from these eleven plaintiffs.

Case Law  All parties appear to agree, at least for purposes of this motion, that downstream sales data is irrelevant, and perhaps inadmissible, in the Direct Purchaser case pursuant to *Hanover Shoe, ibid.* and *Illinois Brick Co.* v. Illinois, 431 U.S. 720, 724-25 (1977). Following this rule, many courts have barred discovery of downstream sales data. *E.g., In re Vitamins Antitrust Litigation*, 198 F.R.D. 296, 300-01 (D.D.C. 2000); *In re Plastics Additives Antitrust Litig.*, 2004 WL 2743591 (E.D. Pa. Nov. 29, 2004).  These rulings have been based both on the lack of relevance of such data and the concern that requiring such intrusive and burdensome discovery would deter parties from filing antitrust cases and thus undermine the enforcement of antitrust laws.

Even where, as here, there are companion indirect purchaser claims, courts have refused to require production of downstream sales data.  *In re Vitamins Antitrust Litig., supra at 301* ["(T)he proposition that there are indirect purchasers in this case who may assert claims for damages other than direct overcharges is not sufficient to carry defendants' burden of showing this information ought to be produced by the direct purchasers."] *;In re Aspartame Antitrust Litig.*, 2008 WL 2275528, at *6 (E.D. Pa. Apr. 8, 2008).

Defendants cite only one case that allowed discovery of downstream data, *In re Urethane Antitrust Litig..237 F.R.D. 454 (D. Kan. 2006).*  In *Urethane* a magistrate judge did require production of downstream sales data because he found it relevant to class certification issues, and distinguished *Vitamins* as not dealing with certification.  Of course, this discovery here is not sought for certification purposes. Moreover, with all respect to the Kansas court, the great weight of authority is to the contrary.

Special Master Smith's Order  The very same issues – relevance to the indirect purchaser case, fairness of putting the DPP's in the same position as other purchasers in the marketplace who are producing sales data in response to subpoenas – were argued to Special Master Smith. Defendants have not convincingly shown any change in circumstances that should lead me to reach a different conclusion.

Burden Compared to Benefit:  Defendants concede that they have served 70 subpoenas on other sellers of TFT-LCD panels or products in the marketplace.  But they contend rather

4

unconvincingly that the rest of the nationwide marketplace is not sufficient – they need the data from these eleven Direct Purchaser Plaintiffs. Defendants do not dispute that production of this data for these eleven small companies will be quite burdensome. But they ask: if these 70-plus non-parties are undergoing the burden of producing this data, so far without complaint, why should DPP's, who have volunteered to be representative plaintiffs and are well-represented by counsel, escape a comparable burden? This is clearly a fair question. The response is that the Federal Rules require a court to limit discovery when the burden of producing it is disproportionate to the benefit. Fed. R. Civ. P. 26(b)(2)(C)(iii). If, as I conclude, the potential usefulness of downstream sales data from these eleven companies is slight given the availability of data from other marketplace sellers, and the burden on them to produce it is great, the Court should restrict the requested production. The fact that many subpoenaed parties find it in their best interest to produce data rather than fight about it ultimately has little impact on this Court's obligation to adhere to the principle of proportionality in discovery.

Order

Good cause appearing, it is ORDERED that defendants' motion to compel is DENIED.

Dated: November 5, 2010

_____/s/_____
Martin Quinn
Special Master

EXHIBIT 4

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: CHOCOLATE CONFECTIONARY ANTITRUST LITIGATION | : : : | **MDL DOCKET NO. 1935**<br>**(Civil Action No. 1:08-MDL-1935)** |
| | : | **(Judge Conner)** |
| | : | |
| THIS DOCUMENT APPLIES TO: | : : | |
| ALL CASES | : | |

### ORDER

AND NOW, this 20th day of January, 2010, upon consideration of the motion (Doc. 726) to dismiss pursuant to Rule 12(b)(1), filed by defendant Hershey Canada, Inc., the motion (Doc. 731) to compel the production of pricing, sales, and marketing documents from plaintiffs, filed by defendants, and the motion (Doc. 733) to compel Mars, Inc. to produce responsive documents from the files of its wholly-owned subsidiary, Mars Canada, Inc., filed by plaintiffs, and for the reasons set forth by the court on the record at the hearing on January 19, 2010, it is hereby ORDERED that:

1. The motion (Doc. 726) to dismiss pursuant to Rule 12(b)(1) is DENIED.

2. The motion (Doc. 731) to compel the production of pricing, sales, and marketing documents from plaintiffs is DENIED.

3. The motion (Doc. 733) to compel Mars, Inc. to produce responsive documents from the files of its wholly-owned subsidiary, Mars Canada, Inc. is GRANTED. See FED. R. CIV. P. 34.

                               _S/ Christopher C. Conner_
                               CHRISTOPHER C. CONNER
                               United States District Judge

EXHIBIT 5

Case 5:06-md-01755-GS-VVP Document 1247 Filed 08/27/10 Page 44 of 44
Case 2:08-mc-00180-DWA   Document 238   Filed 01/06/10   Page 1 of 1
Case 2:08-mc-00180-DWA   Document 224-2   Filed 12/07/2009   Page 1 of 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: FLAT GLASS ANTITRUST LITIGATION (II) | : <br> : <br> : |
| | : |
| This Document Relates to: <br> All Actions | :    **Mater Docket:** <br> :    **Misc. No.: 08-180 (DWA)** <br> :    **MDL No.: 1942** <br> : <br> :    **Honorable Donetta W. Ambrose** <br> : <br> : <br> : |

### [~~PROPOSED~~] ORDER

Upon consideration of Defendants' Motion to Compel Plaintiffs to Produce Sales
_as well as the Reply and the Sur-Reply_
Data, and Plaintiffs' response thereto, it is hereby ORDERED that the Motion is ~~GRANTED and~~ _denied as I_
_am not persuaded by Δs that such information is relevant or necessary to_
~~that Plaintiffs shall produce documents responsive to Requests Nos. 3 and 11 in Defendants'~~
_determine class certification._
~~First Set of Requests for Production of Documents within twenty-one (21) days.~~

Dated: _1/6/10_                         _Donetta J. Ambrose_
                                       **Judge Donetta W. Ambrose**
                                       **United States District Judge**

EXHIBIT 6

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

In re: Monosodium Glutamate Antitrust Litigation          MDL 00-1328 (PAM/JGL)

**ORDER**

---

This matter is before the Court on a Partial Motion to Dismiss by Defendants Takeda

Vitamin & Food USA, Inc., Ajinomoto U.S.A., Inc., and Daesang America, Inc., and the

parties' cross motions to compel production of documents. The parties appeared for oral

argument before this Court on September 12, 2000, at 2:00 p.m.

Based on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED**

that:

1.  Defendants' Partial Motion to Dismiss (Clerk Doc. No. 53) is **GRANTED
    WITHOUT PREJUDICE**, and Plaintiffs have leave to amend the Complaint to re-
    plead the fraudulent concealment claim with specificity within thirty (30) days from
    the date of this Order;

2.  Plaintiffs' Motion to Compel Production of Documents (Clerk Doc. No. 44) is
    **GRANTED** to the extent that the relevant time period of discovery begins on January
    1, 1990, and **DENIED** with respect to Plaintiffs' indiscriminate request for documents
    that Defendants provided to the Grand Jury; and

3.  Defendants' Motion to Compel Production of Documents (Clerk Doc. No. 47)
    concerning Plaintiffs' sales of FFE-Containing Products and non-FFE business units

FILED  SEP 1 4 2000
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD_____
DEPUTY CLERK_____

is **DENIED** for lack of relevance.

Dated: _September 13_, 2000

Paul A. Magnuson
United States District Court Judge

2

EXHIBIT 7

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

IN RE CARBON DIOXIDE
ANTITRUST LITIGATION

MDL Docket No. 940
Judge Patricia C. Fawsett

THIS DOCUMENT RELATES TO:
ALL ACTIONS

RECEIVED

NOV 1 9 1993

LITCHFORD, CHRISTOPHER
& RUTA

## ORDER

This case comes before the Court upon the following
matters:

(1) Plaintiffs' Rule 37(B) Motion to Compel BOC Group,
Inc. to comply with the Court's July 12, 1993 Order
Authorizing Rule 30(b)(6) Depositions and for Sanctions (Doc.
No. 242, filed September 7, 1993); and Response of the BOC
Group, Inc. (Doc. No. 245, filed September 20, 1993).

Plaintiffs contend that Defendant BOC has failed to
comply with this Court's Order of July 12, 1993, that required
Defendants to produce knowledgeable witnesses in response to
Plaintiffs' Amended Notice of Rule 30(b)(6) Deposition.
Plaintiffs assert that the witness provided by BOC for its
deposition on August 24, 1993, had inadequate knowledge about
many of the topics specified in Plaintiffs' Notice.
Specifically, Plaintiffs state that the witness knew nothing



Case 1:00-md-01335-JGSVVP Document 11-247 filed 08/27 Page Page 14 of 44
- SENT BY:LITCHFORD. CHRISTOPHER:11-19-93 : 9:56AM :          LCR ORLANDO-          2155690958:#14/26

about three databases which Plaintiffs claim are key to their investigation of Defendants' alleged conspiracy: the Special Pricing Request, Competitive Accounts, and New Business Information databases.

BOC responds that the Plaintiff is demanding additional information not sought by its Notice of Deposition. BOC argues that the subject matter of Plaintiffs' Notice was limited to "the form and location of records maintained by the BOC group in a computer readable form" on various subjects relating to carbon dioxide or nitrogen. BOC says that it has fully complied with this more limited version of Plaintiffs' Notice and the Court's July 12 Order.

The Court finds that BOC's reading of Plaintiffs' Deposition Notice is too narrow. The Plaintiffs clearly sought more than just the "form and location" of records kept by BOC. The deposition testimony reveals that BOC's witness knew nothing about the three key databases on which Plaintiffs sought information even though Plaintiffs included documents regarding each of them in the materials they predesignated for use at the BOC Rule 30(b)(6) deposition. The witness also had no knowledge of data maintained on computers in regional offices and productions plants, and limited knowledge of databases maintained by his own department.

Accordingly, the Plaintiffs' Rule 37(B) Motion to Compel BOC Group to Comply With the Court's July 12, 1993, Order Authorizing Rule 30(b)(6) Depositions is GRANTED. Defendants

2

shall provide the documents Plaintiffs' seek, and shall produce knowledgeable witnesses to respond to Plaintiffs' additional concerns.

(2) Certain Plaintiffs' Motion for a Protective Order to Quash Defendant BOC's Rule 30(b)(6) Deposition Notice and Memorandum of Law in Support Thereof (Doc. Nos. 246 & 247, filed September 22, 1993); Defendants' Response to Motion for a Protective Order (Doc. No. 267, filed October 7, 1993).

BOC seeks to take depositions of Plaintiffs' corporate personnel knowledgeable about the information that Plaintiffs maintain on computer with respect to their sales, profits, and costs of the products for which liquid carbon dioxide and or nitrogen is used.   BOC also wants to take depositions of corporate personnel knowledgeable about the information that Plaintiffs maintain on computer relating in general to liquid carbon dioxide and nitrogen.

Plaintiffs argue that, as a matter of law, Defendants are not entitled to information about sales, profits, and costs where, as here, Plaintiffs are merely seeking to recover the amount of overcharges resulting from defendants' alleged antitrust violations on commodities sold to Plaintiffs. Plaintiffs also state that they have already described all responsive information that they maintain on computer in formal Responses to Defendants' Second Document Request and have produced all information regarding their purchases of liquid carbon dioxide that they maintain on computer.

3

Case 1:06-md-01755-GJS-VVP Document 1247 Filed 08/27/12 Page 1 of 44
SENT BY:LITCHFORD. CHRISTOPHER:11-19-93 : 9:57AM :          LCR ORLANDO→          2155690958:#16/26

Therefore, they ask the Court to enter a protective order quashing Defendants' Rule 30(b)(6) Deposition Notice.

Defendants argue that information about the Plaintiffs' costs and profits is highly relevant to Plaintiffs' theory of liability. Defendants assert that if Plaintiffs intend to construct an inference of conspiracy from evidence of Defendants' allegedly "excessive" profits or "unreasonably high" prices, that Defendants are entitled to show that Plaintiffs' own profits were the same or even greater. Defendants also assert that Plaintiffs have produced nothing in computer readable form regarding purchases they made of liquid carbon dioxide.

The Court finds that Defendants are not entitled to information about Plaintiffs' costs and profits. A long line of cases has held that the price at which plaintiffs sold their products has no relevance to the issue of whether defendants fixed prices in violation of the Sherman Act. See In re Wirebound Boxes Antitrust Litigation, 131 F.R.D. 578 (D.Minn. 1990); Illinois Brick Co. v. Illinois, 431 U.S. 720 (1977); and Hanover Shoe v. United Shoe Machinery Corp., 392 U.S. 481, 489 (1968). The Court acknowledged the force of these precedents in its Order of December 12, 1992 (Doc. No. 50) when it sustained Plaintiffs' objections to Defendants' discovery requests concerning possible resale of liquid carbon dioxide.

The Court is unable to ascertain from the pleadings

4

submitted to it what, if anything, the Plaintiffs have provided in response to Defendants' request for computerized information relating to Plaintiffs' purchases of liquid carbon dioxide.   Therefore, the Court will conduct a 15 minute telephonic hearing at 11:30 a.m. on Thursday, December 2, 1993,  to consider Plaintiffs' Motion as it relates to providing this information. Counsel for the Plaintiff shall set up the telephone hearing.

Accordingly, Plaintiffs' Motion for a Protective Order to Quash Defendants' Rule 30(b)(6) Notice of Deposition is **GRANTED** as to production of information related to Plaintiffs' profits and costs, and **DEFERRED** as to production of computerized information related to Plaintiffs' purchases of liquid carbon dioxide.

(3) Defendants' Motion to Dismiss Certain Individual Plaintiffs (Doc. No. 254, filed September 28, 1993); Individual Plaintiffs' Opposition to the Motion to Dismiss Certain Individual Plaintiffs (Doc. No. 279, filed October 29, 1993).

Defendants claim that Plaintiffs have misled the Court by stating that they only represent 25 opt-out Plaintiffs when, in fact, the number is closer to 1200. Defendants base their argument on the fact that Plaintiffs have stated that they represent all of the "predecessors, subsidiaries, divisions, and affiliates" of the named opt-out Plaintiffs. Defendants assert that these other entities are virtually all

5

separate corporations with separate claims which have not properly opted out of the class action. Defendants accuse the Plaintiffs of "hiding" these additional plaintiffs, thereby preventing Defendants from making arguments that would have defeated class certification. Therefore, Defendants ask the Court to dismiss the claims of all parties purporting to be plaintiffs except for the 25 companies actually named in the Anheuser-Busch and PepsiCo actions.

Plaintiffs respond that the "one thousand plus" opt-out plaintiffs referred to in Defendants' Motion are not separate legal entities.   Plaintiffs state that 1,000 of them are predecessor companies, divisions, and trade names of the 25 named opt-out Plaintiffs, whose claims belong to the named Plaintiffs as a matter of law.  The other approximately 165 parties are subsidiaries of Plaintiffs' and they have ratified the filing of these actions on their behalf.  Plaintiffs also dispute Defendants' contention that they hid these parties until after the class was certified, pointing out that the two complaints Plaintiffs filed in September 1992, and May 1993, explicitly allege that the claims are brought on behalf of each Plaintiff and its "predecessors, subsidiaries, divisions, and affiliates."

The Court finds that the Defendants' fears of being deluged by actions from "one thousand plus" plaintiffs "lurking on the sidelines" are groundless.  The Defendants raised this issue previously when they sought to stay the non-

6

class action cases and to have the class de-certified. (Doc. Nos. 228, 230-235, filed August 25, 1993). The Defendants claimed that the efficiencies of a class action would be defeated because the opt-out plaintiffs numbered more than 1,000 and intended to pursue their claims. After the August 26 hearing, the Court entered an Order denying Defendants' requests. The Defendants have presented nothing new in this Motion to convince the Court that they are in danger of being overwhelmed by complaints from unknown individual plaintiffs. Plaintiffs have demonstrated that they own the vast majority of the "one thousand plus" claims, thus eliminating the possibility of additional claims being filed. The ratification notices filed by the remaining plaintiffs should allay any other fears the Defendants may have of being ambushed at the last minute by unexpected plaintiffs.

Accordingly, the Defendants' Motion to Dismiss Certain Individual Plaintiffs (Doc. No. 254) is DENIED.

(4) Defendants' Joint Motion and Memorandum to Compel Certain Opt-Out Plaintiffs to Respond to Defendants' Joint Interrogatories 3, 32(a) and 32(b) (Doc. No. 255, filed September 28, 1993); Plaintiffs' Opposition to Defendants' Joint Motion to Compel Certain Opt-Out Plaintiffs to Respond to Defendants' Joint Interrogatories 3, 32(a) and 32(b) (Doc. No. 280, filed October 29, 1993).

After careful consideration of the Motions and Exhibits presented by both parties, the Court finds that the Plaintiffs

7

have provided the Defendants with all the information and documents they possess which are responsive to Interrogatories 3, 32(a), and 32(b). Accordingly, the Defendants' Joint Motion and Memorandum to Compel Certain Opt-Out Plaintiffs to Respond to Defendants' Joint Interrogatories 3, 32(a), 32(b) (Doc. No. 255) is DENIED.

(5) Agreed Motion to Extend Time for Individual Plaintiffs' Responses to Defendants' Motions to Dismiss and to Compel. (Doc. No. 265, filed October 6, 1993).

Upon consideration, the Agreed Motion to Extend Time for Individual Plaintiffs' Responses to Defendants' Motions to Dismiss and to Compel is GRANTED.

(6) Defendants' Joint Motion and Memorandum to Compel Certain Plaintiffs to Answer Interrogatories and to Produce Documents Concerning the Wiesemanns (Doc. No. 271, filed October 14, 1993); Individual Plaintiffs' Response to Defendants' Joint Motion and Memorandum to Compel Certain Plaintiffs to Answer Interrogatories and to Produce Documents Concerning the Wiesemanns (Doc. No. 277, filed October 28, 1993); Plaintiff, State of Florida's Response to Defendants' Joint Motion and Memorandum to Compel Certain Plaintiffs to Answer Interrogatories and to Produce Documents Concerning the Wiesemanns (Doc. No. 278, filed October 28, 1993).

The Defendants ask the State of Florida, the Individual Plaintiffs, the Class Plaintiffs, and Archer Daniels Midland Company ("ADM") to serve written responses to the following

8

interrogatories and produce documents in response to the following requests:

> (1) Describe in detail all information provided to you by Robert O. Wiesemann, Sr.; Eric P. ("Rick") Wiesemann; or Robert O. Wiesemann, Jr. concerning (i) any allegation in the State of Florida's First Amended Complaint, the Individual Plaintiffs' Second Amended Complaint or the First Consolidated Class Action Complaint; (ii) any allegation or investigation of anticompetitive conduct in in the carbon dioxide industry or by any participant in that industry; (iii) any proposed modification to any consent decree pertaining to the carbon dioxide industry or any participant in that industry; (iv) the "lack of competition in the carbon dioxide business" as stated in Benedict P. Kuehne's June 23, 1993 letter to Scott E. Clodfelter (AGO43145A55A) ("Kuehne letter"); or (v) "Bob and Rick Wiesemann['s]...involvement in the liquid $CO_2$ business," as stated in the Kuehne letter.
>
> (2) This interrogatory is directed to ADM alone. Describe in detail how "ADM helped Rick Wiesemann build his own liquid $CO_2$ business, and assisted Bob Wiesemann's business" as stated in the Kuehne letter.
>
> (3) This interrogatory is directed to the State of Florida alone. Describe in detail all information provided to you by Jim Davis a/k/a "Mr. Barton," as stated in the Kuehne letter.
>
> (4) Produce all documents which constitute, concern, reflect or relate to information provided to you by Robert O. Wiesemann, Sr.; Eric P. Wiesemann; or Robert O. Wiesemann, Jr. concerning the subject matters set forth in Interrogatory 1.
>
> (5) Produce all documents that you have received from Robert O. Wiesemann concerning the subject matters set forth in Interrogatory 1.

Defendants assert that they need this information to prepare for deposing the Wiesemanns and to defend against Plaintiffs' charges.

The Plaintiffs contend that to respond to Defendants'

interrogatories, Plaintiffs' counsel would have to provide a summary of every matter of substance contained in their notes of their discussions with the Wiesemanns and to summarize any information they can recall obtaining from the Wiesemanns that they did not write down. They argue that that material is covered by the work product doctrine and that the Defendants have not shown the exceptional need required for the disclosure of work product. They also assert that the Defendants' effort to compel an answer at this time violates the Court's May 3, 1993 Order regarding the timing for further answers to contention interrogatories.

The Court finds that the information sought by Defendants is covered by the work product doctrine. Although, as Defendants assert, Fed. R. Civ. P. 26(b)(3) only applies to discovery of documents and other tangible things, when discovery of "work product" is sought through interrogatories, the principles enunciated in Hickman v. Taylor, 329 U.S. 495 (1947), apply. Hickman v. Taylor makes it clear that counsel cannot be compelled to describe what they learned in witness interviews without a showing of exceptional need. To justify disclosure, a party must show the importance of the information to the party's case and the difficulty the party will face in obtaining substantially the same information from other sources. Where, as here, the opposing has access to the same witness, there is no exceptional need which would justify disclosure. See Castle v. Sangamo Weston, Inc., 744 F.2d 1464

10

(11th Cir. 1984) (order compelling production of statements taken by attorneys with respect to employment discrimination litigation was an abuse of discretion, since the defendant could have deposed the witnesses to obtain their statements).[1]

The Court also finds that the Defendants' document request is premature in light of the Court's Order of May 3, 1993. Accordingly, the Defendants' Joint Motion to Compel Certain Plaintiffs to Answer Interrogatories and to Produce Documents Concerning the Wiesemanns (Doc. No. 271) is DENIED.

(7) Defendants' Motion to Strike Certain Portions of Plaintiffs' Supplemental Milburn Submission (Doc. No. 272, filed October 15, 1993); and Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Strike (Doc. No. 281, filed October 29, 1993).

Upon careful consideration of the parties' pleadings and exhibits, the Defendants' Motion to Strike Certain Portions of Plaintiffs' Supplemental Milburn Submission (Doc. No. 272) is DENIED.

(8) Defendants' Motion to Dismiss Complaints of Those Plaintiffs That Did Not Request Exclusion From the Class and Memorandum in Support Thereof (Doc. Nos. 269 & 270, filed

---

[1] This Court denied a similar attempt by Defendants to compel the production of notes taken by a Florida Attorney General during two 1991 interviews with Robert Wiesemann, Sr. In its Order, the Court noted that BOC had not demonstrated a "substantial need" for the notes because the identity of the interviewee was known and the Court had authorized his deposition. (92-348, Doc. No. 58, filed February 12, 1993).

11

October 14, 1993); and Class Plaintiffs' Memorandum in Opposition to Defendants' Motion to Dismiss Complaints of Plaintiffs That Did Not Request Exclusion From the Class (Doc. No. 276, filed October 27, 1993).

Defendants seek to dismiss the complaints of ten (10) Plaintiffs who did not request to be excluded from the class and were not named as class representatives.[2] On April 19, 1993, this Court certified a class consisting of "[a]ll individuals and entities...in the continental United States that purchased carbon dioxide directly from any Defendant...at any time during the period of January 1, 1968 to and including October 26, 1992." (Doc. No. 142). On June 15, 1993, this Court approved a Class Notice to be mailed to class members which provided that to be excluded from the class a purchaser of carbon dioxide must make a written request to be excluded that must be mailed on or before July 26, 1993. The Plaintiffs that are the subject of this motion never requested exclusion from the class.

---

[2]Defendants seek to dismiss the complaints of the following Plaintiffs: Bemidji Welders Supply, Inc., No. 92-805-CIV-ORL-19; Dakota Beverages, Inc.; Pepsicola Bottling Company of Fargo, Inc.; Min-Dak Beverages, Inc.; Pepsicola Bottling Company of Sioux Falls, Inc., No. 92-995-CIV-ORL-19; Fairbank Reconstruction Corporation,; Fairbank Farms, Inc., No. 92-411-CIV-ORL-19; Flame Welding Supply, Inc., No. 92-406-CIV-ORL-19; Gas Arc Supply, Inc., No. 93-187-CIV-ORL-19; Michael J. Iannacone, as bankruptcy trustee of The French Accent, Inc., 93-339-CIV-ORL-19; Industrial Testing Laboratories, Inc., No. 92-524-CIV-ORL-19; Multi-Flow Dispenseers, No. 92-454-CIV-ORL-19; Schwan's Sales Enterprises, Inc., No. 93-128-CIV-ORL-19; and Vineland Syrup, Inc., No. 92-767-CIV-ORL-19.

12

The Court finds that because these Plaintiffs did not exercise their right to opt out of the class, they remain class members. The individual Plaintiffs may take no further independent action in matters before this Court, and their complaints shall be deemed merged with the complaint of the class action representatives, Case Number 92-940-CIV-ORL-19. Accordingly, the Defendants' Motion to Dismiss Certain Individual Plaintiffs That Did Not Request Exclusion From the Class (Doc. No. 269) will be treated as a Motion to Consolidate. That motion is GRANTED, and all other proceedings and filings incident to such ten individual complaints shall be terminated.

(9) Defendants' Motion for Leave to File Reply Memorandum In Support of Motion to Dismiss Certain Individual Plaintiffs (Doc. No. 283, filed November 10, 1993); Opposition to Defendants' Motion for Leave to File Reply Memorandum in Support of Motion to Dismiss Certain Individual Plaintiffs (Doc. No. 284, filed November 12, 1993).

Upon consideration, the Defendants' Motion for Leave to File Reply Memorandum in Support of Motion to Dismiss Certain Individual Plaintiffs is DENIED.

DONE AND ORDERED at Orlando, Florida, this _18th_ day November, 1993.

PATRICIA C. FAWSETT
UNITED STATES DISTRICT JUDGE

13

Copies to:
All Counsel of Record.

14

EXHIBIT 8

36 39 94   13:25   215 569 0955   XEREDITH & COHEN --- SPECKS GOLDBERG
31  07  AENUX  8:0copier  fut:  0-9U-94 , 10:56                     4028209079         &.5 968 .05010

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

IN RE CARBON DIOXIDE INDUSTRY
ANTITRUST LITIGATION

Case No. M.D.L. 92-940

THIS DOCUMENT RELATES TO
ALL ACTIONS

## ORDER

This case comes before the Court at a telephonic hearing on December 9, 1993, to consider Class Plaintiffs' Objections to Defendants' Joint Interrogatories to Class Plaintiff Relating to Class Certification and Class Plaintiffs' Objections to Defendants' Joint Document requests to Class Plaintiffs Relating to Class Certification.

The following issues were addressed:

1. Plaintiffs objected to Defendants' request for information pertaining to the engagement of counsel in this case on attorney-client privilege grounds. Plaintiffs submitted three documents to the Court for in camera review, and the Court determined that the documents were in fact engagement letters of counsel. Defendants indicated that they did not request production of these three items.

2. Defendants sought to compel production of documents described in Document Request No. 4 pertaining to the resale of

1

·06·30·94   12:25   ☎215 568 0858                   MEREDITH & COHEN --- SPECKS GOLDBERG   ☎003·004

carbon dioxide. In their Response to that request, Plaintiffs stated that they would produce the documents to the extent they exist. Plaintiffs confirmed at the telephonic conference that these documents would be produced, and that there was no objection by Plaintiffs to Document Request No. 4. Therefore, there is no issue for the Court to determine.

3.   Plaintiffs objected to Defendants' Document Request No. 9 which relates to the resale of carbon dioxide. Plaintiffs argued that the information was neither relevant to class certification nor reasonably calculated to lead to the discovery of admissible evidence. In _Hanover Shoe, Inc. v. United Shoe Machinery Corp._, 392 U.S. 481 (1968) the Supreme Court rejected as a matter of law the "pass-on defense" under which antitrust defendant's had argued that the direct purchasers were not the injured party because they "passed on" the inflated prices to indirect purchasers.[1] In _Illinois Brick Co. v. Illinois_, 431 U.S. 720 (1979), the Court also rejected the use of "pass-on theories" offensively. The Court held that indirect purchasers lack standing to sue antitrust defendants; only direct purchasers may bring antitrust claims.

Therefore, Defendants' Document Request No. 9 concerning the resale by Plaintiffs of carbon dioxide is not relevant to class certification, and Plaintiffs' Objection to Document

---

[1] "Cost-plus" contracts are the exception to this rule. They do not present the same problems in identifying damages, and Plaintiffs' have indicated that they will produce documents relating to "cost-plus" contracts.

2

MEREDITH & COHEN --- SPECKS GOLDBERG

Request No. 9 is SUSTAINED.

DONE AND ORDERED at Orlando, Florida, this _____ day

December, 1992.

PATRICIA C. FAWSETT
UNITED STATES DISTRICT JUDGE

Copies to:
All Counsel of Record.

3

EXHIBIT 9

1  Mario N. Alioto (56433)
   Lauren C. Russell (241151)
2  TRUMP, ALIOTO, TRUMP & PRESCOTT, LLP
   2280 Union Street
3  San Francisco, CA 94123
   Telephone:   (415) 563-7200
4  Facsimile:   (415) 346-0679
   malioto@tatp.com
5  laurenrussell@tatp.com

6  *Interim Lead Counsel for Indirect*
   *Purchaser Plaintiffs*
7

8

9              UNITED STATES DISTRICT COURT

10           NORTHERN DISTRICT OF CALIFORNIA

11              SAN FRANCISCO DIVISION

12

13 IN RE CATHODE RAY TUBE (CRT)          ) Case No. CV-07-5944-SC
   ANTITRUST LITIGATION                  )
                                         ) MDL No. 1917
14 ─────────────────────────────────     )
   This Document Relates to:             ) **NOTICE OF INTENT TO SERVE**
15                                        ) **SUBPOENAS**
   All Actions                           )
16                                        )
                                         )
17 ─────────────────────────────────     )

18

19

20

21

22

23

24

25

26

27

28

1      NOTICE IS HEREBY GIVEN that the Indirect Purchaser Plaintiffs in the above-captioned

2  action shall serve subpoenas for production of documents on the entities listed below.  Subpoenas

3  for the production of documents from these entities are attached hereto as the exhibit listed.

| **Exhibit** | **Entity Subpoenaed** |
|---|---|
| A. | Acer America Corporation |
| B. | Amazon.com, Inc. |
| C. | AOC |
| D. | Apple |
| E. | Arrow Electronics |
| F. | BenQ USA Corp. |
| G. | Best Buy Co., Inc. |
| H. | Buy.com |
| I. | CDW Corporation |
| J. | Costco |
| K. | CTX Technology |
| L. | Dell Inc. |
| M. | Envision Display |
| N. | Fry's Electronics, Inc. |
| O. | Funai Corporation, Inc. |
| P. | Gateway, Inc. |
| Q. | Iiyama North America, Inc. |
| R. | Ingram Micro Inc. |
| S. | Lenovo |
| T. | Meijer, Inc. |
| U. | NEC Display Solutions of America |
| V. | Newegg.com |
| W. | Nexgen |
| X. | nowdirect.com |
| Y. | Office Depot |
| Z. | Office Max |
| AA. | PC Connection |
| BB. | PC Mall |
| CC. | Proview Technology, Inc. |
| DD. | RadioShack Corporation |
| EE. | Sam's Club |
| FF. | Sanyo North America Corporation |
| GG. | Sharp Electronics Corporation |
| HH. | Sony Corporation of America |
| II. | Staples |
| JJ. | SYNAP |
| KK. | Target |
| LL. | Tech Depot |

2

1   MM.         Wal-Mart Stores, Inc.
    NN.         Zones

2   Dated: January 16, 2009                    By:   /s/ Mario N. Alioto

3

4                                              Mario N. Alioto (56433)
                                               Lauren C. Russell (241151)
5                                              TRUMP, ALIOTO, TRUMP & PRESCOTT, LLP
                                               2280 Union Street
                                               San Francisco, CA 94123
6                                              Telephone:      (415) 563-7200
                                               Facsimile:      (415) 346-0679
7                                              malioto@tatp.com
                                               laurenrussell@tatp.com

8
                                               *Interim Lead Counsel for Indirect*
9                                              *Purchaser Plaintiffs*

10

11  #3215403v1

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                         3

# EXHIBITS A-NN OMITTED