Hon. Charles A. Legge (Ret.)
JAMS
Two Embarcadero Center, Suite 1500
San Francisco, CA 94111
Telephone: (415) 774-2644
Fax: (415) 982-5287
Special Master

## JAMS

IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION

CRAGO, INC., et al.,

Plaintiffs,

vs.

CHUNGHWA PICTURE TUBES, LTD., et al.,

Defendants.

This Document Relates to
ALL DIRECT PURCHASER CASES

No. 07-5944 SC
MDL No. 1917
JAMS Reference No. 1100054618

**REPORT AND RECOMMENDATIONS ON MOTIONS REGARDING FINISHED PRODUCTS**

To the Honorable Samuel Conti, United States District Judge:

### INTRODUCTION

This is the Report and Recommendations of the Special Master regarding two motions about the allegations of a conspiracy to fix the prices of CRT Finished Products. The term "Finished Products" means television sets and computer monitors containing CRTs. The motions at issue result from the fact that the direct purchaser plaintiffs allege a conspiracy of the defendants to fix the prices of both CRTs and Finished Products, and the allegations about

Finished Products have withstood pleading challenges by the defendants under F.R.C.P. Rule 12(b)(6); Document 655. These motions apply only to the <u>direct</u> purchaser cases, because subsequent to the rulings on the motions to dismiss, the indirect purchaser plaintiffs withdrew their claim of a conspiracy encompassing Finished Products; Documents 895 and 904.

## THE PENDING MOTIONS

The motions now under submission are:

1. A motion by defendants Panasonic, MT, Hitachi, and Samsung against the direct purchaser plaintiffs for sanctions under F.R.C.P. Rule 11, on the grounds that the allegations of a Finished Products conspiracy are without the foundation required by Rule 11(b). The moving defendants request that the allegations of a conspiracy encompassing Finished Products be stricken from the consolidated amended complaint. And defendants request a monetary award of the reasonable attorneys fees and costs that defendants have incurred in defending against the allegations of a conspiracy to fix the prices of Finished Products, including the costs of this Rule 11 motion and the discovery about the allegations of a Finished Products conspiracy; see defendants' proposed form of order attached to the motion.

2. A motion for discovery by the direct purchaser plaintiffs against defendants Panasonic and MT. The motion requests discovery from those defendants with respect to Finished Products.

The motions were briefed by both sides, were argued on May 26, 2011, and were submitted for decision. A court reporter was present during the proceedings and a transcript is available. The Special Master has reviewed the moving and opposing papers, the authorities, the exhibits, and the transcript.

## PRELIMINARY POINTS

Before discussing the motions themselves, the Special Master first notes certain important points emphasized during the motion proceedings:

///

2

First, plaintiffs have defined their allegations of a conspiracy as to Finished Products. As noted in Document 810 (pp. 4 and 5), there was some ambiguity as to what conspiracy was alleged involving Finished Products. That ambiguity has now been resolved: plaintiffs state that their complaint alleges the existence of "a single, unitary, conspiracy that encompassed both CRTs and the Finished Products..."; plaintiffs' opposition memorandum (p. 3, ll. 5-7). Plaintiffs disclaim alleging two conspiracies, one for tubes and the other for Finished Products. The complaint can still be read as alleging that the conspiracy as to CRTs had an <u>impact</u> or <u>effect</u> on the prices for the Finished Products, and defendants do not challenge that claim in these motions; defendants' motion (p. 2, fn. 2).

Second, as stated in document 810, the issues raised by the allegations regarding Finished Products are not mere tangential issues. They are important to the cases as a whole, and have a material impact on the scope of the cases; *e.g.*: Who are direct purchasers and who are indirect purchasers? Will damage claims be based upon the prices of television sets and computers, rather than just on the prices of the component CRTs? Discovery will be much expanded and far more expensive if Finished Products are included. It will involve many more "custodians" in defendants' business organizations throughout the world. It will involve television and computer manufacturing and sales, and not just CRT manufacturing and sales; and all of the additional records resulting from that expansion. The distinction also involves the scope of the classes that might be certified, the motions which might be made, the extent of the experts' work, and the trial of the actions.

Third, plaintiffs frequently argue that defendants' Rule 12(b)(6) motions directed to the allegations of Finished Products were denied. However, that denial decided only that the allegations on their face were sufficient to state a cause of action. No issues of evidence or discovery were resolved by those motions. We are only now at the stage of addressing the questions of (1) whether there was sufficient evidence under Rule 11 to allege a conspiracy to fix the prices of Finished Products; and if so, (2) the burdens of the discovery on that issue. Those questions are governed by separate standards that were not resolved in the Rule 12(b)(6) motions.

Fourth, plaintiffs' counsel argued that the Rule 11 motion is a personal attack on counsels' integrity and competence. The Special Master does not so view it. It is a dispute about the existence of evidence. Defendants have made no accusations of bad faith or willful misconduct. And disputes about the existence and sufficiency of evidence are part of the controversies in litigation. Trial counsel must deal with such issues and argue and resolve them on a daily basis. And as discussed below, the legal standards for measuring this motion are objective ones, not ones of integrity or competence.

The Special Master now turns to specific discussion of the two motions.

## DEFENDANTS' MOTION FOR SANCTIONS UNDER RULE 11

As stated, defendants' contention is that the allegations made in the amended complaint of a conspiracy regarding Finished Products were without the required foundation under Rule 11(b).

<u>Procedural Objections to the Motion</u>

Plaintiffs raise two procedural objections to the consideration of defendants' motion:

1. Plaintiffs contend that defendants have failed to comply with Rule 11's "Safe Harbor" provision; Rule 11(c)(1)(A). That rule requires that the moving party serve its moving papers at least 21 days in advance of filing them with the Court. The purpose of the rule is to give the filer of the contested document an opportunity to review the motion and withdraw or amend the document, and thereby avoid sanctions. Plaintiffs concede that defendants sent them the motion papers in advance of filing. However, plaintiffs contend that defendants did not comply with the requirements of the rule because an attorney's supporting declaration attaching certain exhibits, and a draft proposed order, were not served until a few days within the required 21 day time period.

However, the motion was served on plaintiffs 21 days ahead of time, and it defined precisely what the motion was, what relief was sought, and the grounds on which it was made. All of the exhibits supplied with the attorney's declaration were identified in the motion and were available to plaintiffs well prior to the filing of the motion. What the declaration did was

identify and verify the documents for admission before the Special Master and the Court. There was adequate compliance with the rule. In the language of the advisory committee notes to the 1993 amendment, the purpose of the safe-harbor is to "stress the seriousness of the motion" and "define precisely the conduct claimed to violate the rule…" Defendants' papers did so. And there is no argument by plaintiffs that had they known of the papers that were submitted to them a few days later they would have withdrawn their complaint.

2. Plaintiffs' second procedural objection is that the motion is premature. Their argument is that a Rule 11 motion must be preceded by a dispositive ruling or an event determining that the allegations lack merit. However, the Special Master disagrees.

There is nothing in Rule 11 which states that the motion cannot be filed until after some substantive ruling or event. Indeed, the advisory committee notes to Rule 11 state that the "time when sanctions are to be imposed rests in the discretion of the trial judge", and the "1993 revision leaves for resolution on a case-by-case basis, considering the particular circumstances involved, the question as to when a motion for violation of Rule 11 should be served and when, if filed, it should be decided." *Rodriguez vs. Service Employees International,* No. C10-01377 JCS, 2010 WL 3464365 (N.D. Cal. 2010).

This circuit has held that a party cannot wait until after summary judgment to move for sanctions under Rule 11; *Barber vs. Miller* 146 F.3rd 707 (9th Circuit 1998). And the rules of this Northern District provide that "the motion… must be made as soon as practicable after the filing party learns of the circumstances that it alleges make the motion appropriate..." Northern District Local Rule 7-8(c). The United States Supreme Court has held that district courts may adopt such local rules establishing the timeliness standards for Rule 11 motions; *Cooter & Gell vs. Hartmarx Corporation,* 496 U.S. 384 (1990).

This motion was filed as soon as defendants were able to obtain from plaintiffs the necessary discovery about their allegations of a conspiracy to fix the prices of Finished Products. And because of the importance of those allegations to the scope of this case as discussed above, it would not have been proper for defendants to have postponed addressing the issue.

The Special Master therefore recommends that plaintiffs' procedural objections to the

5

consideration of this motion be overruled.

Legal Standards for a Rule 11 Motion

Legal standards for the application of Rule 11 have been variously applied in this circuit, depending upon the allegations and the issues in particular cases. However, some objective standards are evident.

One must start with the language of F.R.C.P. Rule 11(b). The rule provides that by presenting a filing to a court, including a complaint, the filer is "certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the allegations… have evidentiary support…" Rule 11(b)(3). There is an "out" here if the filer identifies specific factual contentions that are "likely to have evidentiary support after a reasonable opportunity for further investigation or discovery;" however, plaintiffs have not asserted that exception.

This circuit has applied Rule 11 in at least three somewhat relevant decisions: *Unioil vs. EF Hutton Inc.*, 809 F.2nd 548 (9th Circuit 1987); *Townsend vs. Holman Consulting Corporation*, 929 F. 2nd 1358 (9th Cir. 1991); and *In Re: Keegan Management Co. Sec. Litigation*, 78 F.3rd 431 (9th Cir. 1996). Those authorities do not state a clear-cut rule of jurisprudence for application in all Rule 11 motions. However, the Special Master concludes from a synthesis of the rule language and those decisions that there are two requirements which are applicable here. First, there has to be a pre-filing "inquiry reasonable under the circumstances." And second, the allegations under challenge must "have evidentiary support."

Reasonable Inquiry

With respect to the first requirement, the Special Master recommends that the Court find that there was an inquiry which was reasonable under the circumstances. Plaintiffs had the advantage of certain proceedings which assisted their inquiries. Those included a detailed proffer of evidence made by alleged co-conspirator and co-defendant Chunghwa Picture Tubes Limited. There were also governmental investigations, including a grand jury investigation of an alleged CRT conspiracy in this case which resulted in several indictments. And plaintiffs did an extensive review of publicly available information regarding CRTs, CRT products, the industry,

6

the participants in it, and the relationships among them. While that review may not have disclosed any actual <u>evidence</u> of a conspiracy, it added important context to the more specific information which was provided by Chunghwa. Plaintiffs also conferred with an economic expert. The Special Master therefore recommends that the Court find that the investigation met the objective standard of an inquiry which was "reasonable under the circumstances."

<u>Evidentiary Support</u>

The second requirement is that there be "evidentiary support", which the Special Master concludes should be "objectively reasonable." And that evidence must support the conspiracy that is at issue; that is, the alleged fact of a conspiracy among defendants to fix the prices of Finished Products. It is not enough to show a conspiracy to fix the prices of the tubes. A conspiracy to fix the price of a component part does not equal a conspiracy to fix the prices of Finished Products. Nor is it enough to show that fixing the price of a component might <u>impact</u> the price of the Finished Product. Impact does not equal conspiracy.

Before discussing the proffered evidence, an additional legal issue is whether the evidence must have been known at the time of the filing of the complaint, or whether subsequently obtained information can be considered. One might conclude from the language of Rule 11 that it must be evidence which was known at the time of the filing of the complaint. However, other cases, particularly *Keegan,* have used information <u>acquired</u> after the filing of the complaint. A synthesis of the holdings is probably that in deciding a Rule 11 motion, a Court can consider evidence that was obtained up to the time of the filing of the motion, even if some of that evidence was not known until after the filing of the complaint.

What evidence is there that defendants engaged in a conspiracy to fix the prices of the Finished Products as well as the CRTs themselves? Of course, plaintiffs do not have to establish a preponderance of the evidence at this stage in the case. But they must demonstrate <u>some</u> objectively reasonable evidence that supports this charge of a conspiracy as to Finished Products.

The Special Master cannot find from the proffered evidence any <u>direct</u> evidence that the parties met and agreed to fix the prices of Finished Products. And there is some evidence that they did <u>not</u> do so. For example, Chunghwa, who is a manufacturer of CRTs, but not Finished

Products, and who appears to be central to meetings that defendants held, filed an answer to discovery that stated it was not aware of any conspiracy to fix the prices of Finished Products; exhibit Q to the declaration of Mr. Kessler. Plaintiffs argue that the Special Master and the Court should not consider Chunghwa's discovery responses. However, plaintiffs certainly opened the issue of Chunghwa's knowledge by arguing that the evidence they obtained from Chunghwa is a principal basis for their claimed conspiracy to fix Finished Product prices. And Chunghwa's knowledge of the alleged meetings provides plaintiffs with relevant evidence about the alleged conspiracy to fix CRT prices. Plaintiffs cannot reasonably expect the Special Master and the Court to consider only the parts of Chunghwa's evidence that support plaintiffs' argument.

So what <u>indirect</u> or <u>circumstantial</u> evidence is there that provides objectively reasonable support for the allegation that defendants conspired to fix the prices of Finished Products?

(1) Pursuant to Chunghwa's settlement agreement, Chunghwa met with plaintiffs' counsel on several occasions. It was not allowed by the Department of Justice to provide documents to plaintiffs, but Chunghwa read various notes of meetings to plaintiffs' counsel. The information was extensive, identifying over 500 alleged meetings among the defendants, and the matters discussed at those meetings. The meetings allegedly resulted in agreements among defendants to fix the prices <u>of the CRTs</u>. In allegedly setting those prices, defendants discussed their possible effect on Finished Product prices, and discussed whether the prices of the Finished Products were high enough to allow for CRT price increases. Again, there is no direct evidence, even from Chunghwa, that the defendants <u>agreed</u> to fix the prices of the Finished Products; and as stated above, Chunghwa has denied any knowledge of such discussions. It appears from certain of the information provided by Chunghwa that the CRT prices which defendants allegedly wanted to increase were constrained by the market prices for the Finished Products. And it may be that the defendants' discussions included consideration of the impact on the Finished Products prices of increases in the prices of the CRTs. While that is not evidence of a conspiracy to fix Finished Products prices, it does indicate support for plaintiff's contentions that defendants met, fixed prices <u>for the CRTs</u>, and at least considered some relationship between

CRT prices and Finished Products prices.

(2) Plaintiffs claim that a second type of evidence for the existence of a conspiracy regarding Finished Products is government investigations, including the antitrust division's investigation in this case. Plaintiffs particularly note the indictments which have been returned and some guilty pleas. However, Finished Products were <u>not</u> a subject of the indictments or the guilty pleas. Those encompassed only the CRTs themselves.

In arguing about the evidence from the investigations and indictments, plaintiffs say that "These investigations confirmed that the prices set for CRTs directly increase the prices of Finished Products;" plaintiffs' memorandum (p. 4, ll. 27-28). However, that is an argument that the CRT prices <u>impacted</u> the prices of the Finished Products. That is not evidence of a conspiracy, but simply a conclusion about the cost of the largest component part affecting the total cost of the final product. The quoted press release about the indictment of Mr. Cy Lin of Chunghwa in plaintiffs' memorandum (p. 5, ll. 1-3) said that the CRT conspiracy harmed Americans who purchased computers and televisions using CRTs sold at fixed prices. Again, that is not a statement of a <u>conspiracy to fix</u> the prices of the Finished Products, but only that the increased cost of the CRTs impacted purchasers of the Finished Products. In this motion, defendants do not seek to preclude plaintiffs from alleging and proving the <u>impact</u> of the CRT price increases.

So far, the United States has not lent its weight to any charge that defendants actually conspired to fix the prices for Finished Products. And the government has not pursued many of the Finished Product manufacturers who are significant in the television and computer industries, but who do not manufacture CRTs. That does not preclude plaintiffs from attempting to allege a Finished Products conspiracy. But their quoted arguments about governmental action do not support their claim.

(3) Plaintiffs cite their research regarding the defendant companies and the business relationships among them. The research included public financial data, regulatory filings, and published articles. That research certainly demonstrates that some of the companies were vertically integrated, some were members of corporate families that manufactured Finished

Products, and certain corporate families were operated as an integrated or coordinated unit by a parent corporation. And many defendants sold products to one another. The same is true of plaintiffs' research into the structure and history of the manufacture of CRTs and CRT products, recited on page 5 of plaintiffs' memorandum, ll. 16-26. While such an industry could be fertile ground for a conspiracy, it is not <u>evidence of</u> a conspiracy. And none of that evidence shows that there were in fact meetings of the defendants to fix the prices of Finished Products.

(4) Plaintiffs also consulted an expert economist who reportedly examined the structure and history of the CRT products market, and "provided Plaintiffs with his opinion that there was evidence to support a conspiracy encompassing both CRTs and Finished Products..."; plaintiffs' memorandum, pp. 5-6. However, the economist has not been identified, the scope of his work has not been identified, the factual bases for his opinion have not been identified, and his opinions and conclusions have not been submitted to the Special Master. All that is known about the expert's work and conclusions are a generalized statement in the declaration of Mr. Guido Saveri (paragraph 7), "that there was evidence supporting the existence of a conspiracy encompassing both CRTs and Finished Products." While that declaration certainly establishes the fact that plaintiffs consulted with an expert, and adds support to the sufficiency of plaintiffs' "reasonable inquiry," that summary does not state factual evidence of a conspiracy to fix Finished Products prices.

## Conclusions Regarding Evidentiary Support

The question is whether plaintiffs' proffered evidence is objectively reasonable support for the allegation that there was a conspiracy among defendants to fix the prices of the Finished Products. To help answer that question, what facts must be established by the evidence in order to demonstrate an antitrust conspiracy? The Special Master has reviewed the decisions that were cited by the parties to define that standard. *e.g.*: *United States v. Socony-Vacuum Oil Company*, 310 U.S. 150 (1940); *Catalano Inc. v. Target Sales Inc.* 446 U.S. 643 (1980); *Monsanto Company v. Spray-Rite Service Corporation* 465 U.S. 752 (1984); and *In Re: Sugar Industry Antitrust Litigation*, 579 F. 2nd 13 (3rd Cir. 1978). Most of those decisions involved primarily the issues of what conduct did or did not constitute a violation of the antitrust laws. In the process of

resolving those issues, the courts stated or inferred that the evidence of an anti-trust conspiracy could be indirect or circumstantial, and that plaintiffs are entitled to draw inferences from evidence. The Special Master believes that the most relevant discussion of what facts are necessary to show a conspiracy is in *Monsanto Company v. Spray-Rite*, at pages 763 and following:

> "On a claim of concerted price-fixing, the antitrust plaintiff must present evidence sufficient to carry its burden of proving that there was such an agreement. If an inference of such an agreement may be drawn from highly ambiguous evidence, there is considerable danger that the doctrines enunciated [in prior U.S. Supreme Court decisions] will be seriously eroded." Page 763.
>
> "[T]he antitrust plaintiff should present direct or circumstantial evidence that reasonably tends to prove that the manufacturer and others 'had a conscious commitment to a common scheme designed to achieve an unlawful objective . . . . Circumstances must reveal a unity of purpose or a common design and understanding, or a meeting of the minds, in an unlawful arrangement.'" Page 764.
>
> "The correct standard is that there must be evidence that tends to exclude the possibility of independent action [by the manufacturer and distributor, which was the fact issue in that case]. That is, there must be direct or circumstantial evidence that reasonably tends to prove that the manufacturer and others had a conscious commitment to a common scheme designed to achieve an unlawful objective." Page 768.

Again, plaintiffs need not have enough evidence to prove their claim at this stage. But, based upon the standards of the rule and the applicable cases, the Special Master must conclude that plaintiffs have not demonstrated objectively reasonable evidentiary support for their allegation that there was a conspiracy among the defendants to fix the prices of Finished Products. As stated, plaintiffs have presented no direct evidence of such an agreement regarding Finished Products. They have evidence that defendants met together, and giving plaintiffs the full benefit of inferences from such evidence, that there may have been an agreement to fix the prices of CRTs. They have also shown that CRTs are a major component, if not the major component, of the cost of television sets and computers. They also have evidence that the

meetings of the defendants regarding CRTs considered, or mentioned, or acknowledged the prices of Finished Products. But there is no evidence that they agreed, by words or by acts, to fix the prices of Finished Products. Indeed, the meetings appear to assume that the Finished Products prices were separately determined by other factors, and the defendants' discussions were whether their increases of the CRT prices could be absorbed within those prices for the Finished Products. Or, stated another way, the CRT prices would be raised if the existing prices of the Finished Products could absorb them. That might indicate that the Finished Product prices drove the CRT prices, and not the other way around. Plaintiffs also have evidence of an industry where there is vertical integration of certain corporate families, where defendants buy and sell products among one another, and where some defendants, but not all, manufacture Finished Products as well as CRTs. However, the Special Master, even after giving plaintiffs all of the inferences to which they are entitled, cannot see any objectively reasonable evidentiary support, direct or circumstantial, for a conspiracy to fix the prices of Finished Products.

Remedies

The Special Master therefore recommends to United States District Judge Samuel Conti that the Rule 11 motion of defendants be granted. As a result, the Special Master recommends that plaintiffs' allegations of a conspiracy that encompasses Finished Products be stricken from plaintiffs' consolidated amended complaint. However, plaintiffs' assertions that alleged price fixing of CRTs <u>affected</u> or <u>impacted</u> the prices of Finished Products remain in the case.

Defendants also request a monetary award of reasonable attorneys fees and costs that defendants have incurred in defending against the allegations of a Finished Products conspiracy, including the costs of this Rule 11 motion, and the costs of obtaining compliance with such discovery requests.

Rule 11(c) provides that the Court may "impose an appropriate sanction." Subdivision (c)(2) of that rule provides that the sanction "shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." Sanctions may include "some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation." The rule states in several places that sanctions "may" be awarded by the

Court. They are not mandatory.

The Special Master recommends that monetary sanctions not be awarded. The Special Master is of the opinion that the remedy of striking the Finished Products allegations from the complaint is "sufficient to deter repetition of such conduct or comparable conduct by others similarly situated."

The issue of Finished Products has been a focal point of this litigation since the first motions to dismiss. It has been expensive for both sides. The motions to dismiss made by defendants on that issue were not appropriate, because the Rule 12(b)(6) standard is what is contained on the face of the complaint. Defendants have of course incurred expenses that they would not have had to incur if plaintiffs had not made Finished Product conspiracy allegations. However, if the Court agrees with the Special Master, those allegations and their resulting litigation consequences are out of the case and confer a substantial future benefit on defendants. Given the structure of the industry and the evidence which plaintiffs obtained about an alleged conspiracy involving CRTs, plaintiffs' allegations about Finished Products are not so egregious as to merit any more severe sanction. The expenses which plaintiffs have incurred as a result of attempting to support the allegations, combined with the granting of this motion, are sufficient deterrence for the future. The Special Master therefore recommends that defendants' request for attorneys' fees and costs be denied.

## PLAINTIFFS' DISCOVERY MOTION

A motion for discovery has been made by the direct purchaser plaintiffs against defendants Panasonic and MT. The motion requests discovery against those defendants with respect to Finished Products. Plaintiffs requested form of relief is simply that "plaintiffs' motion to compel discovery with respect to CRT [Finished Products] should be granted;" April 20, 2011 letter from counsel (p. 8). And counsel's letter of May 20, 2011 requests simply that "plaintiffs' motion to compel should be granted."

In the section above, the Special Master recommends that the Rule 11 motion by defendants be granted. If that recommendation is adopted by the Court, the issue of a conspiracy

to fix the prices of Finished Products will be eliminated from the case. For that reason, the Special Master recommends that if the Rule 11 motion is granted, this discovery motion by plaintiffs be denied. Provided however, some discovery about Finished Products is still relevant if it is limited to the issue of the <u>impact</u> or <u>effect</u> on Finished Product prices of the alleged conspiracy to fix the prices of the CRTs. Plaintiffs should be given leave to amend or supplement their discovery requests, if necessary, to comply with that limitation.

## SUMMARY OF RECOMMENDATIONS

For the reasons discussed above, the Special Master recommends to the District Court that:

1. Plaintiffs' procedural objections to the consideration of the Rule 11 motion be denied.

2. Defendants' Rule 11 motion be granted.

3. The allegations of the complaint purporting to allege a conspiracy to fix the prices of Finished Products be stricken from the complaint.

4. Defendants' request for monetary sanctions be denied.

5. Plaintiffs' motion for Finished Products discovery be denied.

6. Provided however, that the issue of the possible impact or effect of the alleged fixing of prices of the CRTs on the prices of Finished Products shall remain in the case, and is a proper subject of discovery.

Respectfully Submitted,

DATED: June 15, 2011

_____
Hon. Charles A. Legge (Ret.)
Special Master