Exhibit C

767 Fifth Avenue
New York, NY 10153-0119
+1 212 310 8000 tel
+1 212 310 8007 fax

**Weil, Gotshal & Manges LLP**

**Adam Hemlock**
1-212-310-8281
adam.hemlock@weil.com

May 10, 2011

Honorable Charles A. Legge
JAMS
Two Embarcadero Center, Suite 1500
San Francisco, CA 94111

Re: *In re: Cathode Ray Tube (CRT) Antitrust Litigation*, MDL 1917 (N.D. Cal.) – Letter Brief in
Opposition to Direct Purchaser Plaintiffs' Motion to Compel Discovery With Respect to
CRT Products

Your Honor,

Defendants Panasonic Corporation ("Panasonic"), Panasonic Corporation of North
America ("PNA") and MT Picture Display Co., Ltd. ("MTPD") (collectively "Panasonic
Defendants") respectfully submit this opposition to the Direct Purchaser Plaintiffs' ("DPP")
Motion to Compel Discovery with respect to CRT Products (April 20, 2011) ("DPP Motion").

The DPPs' Motion appears to argue that since the DPPs are not required to establish a
"prima facie" showing of a CRT finished products conspiracy, they are entitled to broad,
unfettered discovery on finished products containing CRTs, such as TVs ("CRT Finished
Products") regardless of the burden on the Panasonic Defendants. The DPP's position is wholly
contrary to the nature of the "unitary" conspiracy alleged, the law (indeed, law cited by the DPPs
in their motion letter brief), and the fact that the Panasonic Defendants have already agreed to
produce significant, responsive discovery at great burden and expense. The Panasonic
Defendants are already producing documents relating to the alleged CRT tube conspiracy, which
would necessarily capture any purported evidence of the finished products element of the DPPs'
claimed "unitary conspiracy" involving both tubes and finished products at the same meetings.
Furthermore, the Panasonic Defendants are producing a wide variety of documents regarding
pass-on or impact of the alleged CRT conspiracy on CRT Finished Products, including, but not
limited to, pricing policies, sales forecasts, and many other documents that directly discuss the
relationship between CRTs and CRT Finished Products.

The Panasonic Defendants object, however, to having to scour the files of over fifty
agreed-upon custodians as well as certain central files on the off-chance that an alleged
"conspiratorial-type" document may be found relating solely to CRT Finished Products. As set

Hon. Charles Legge
May 10, 2011
Page 2

**Weil, Gotshal & Manges LLP**

forth in the Motion for Sanctions Pursuant to Rule 11 (March 21, 2011), the DPPs have failed to adduce any evidence of a conspiracy involving CRT Finished Products, either at the time they filed their complaints or thereafter.  This Court should grant the motion for sanctions and strike the DPPs' claim of a CRT Finished Products conspiracy.[1]  However, even if that motion is denied, the Panasonic Defendants should still not be required to search for the documents that the DPPs seek.  The absence of any evidence of a CRT Finished Products conspiracy dictates that the Panasonic Defendants not be required to undertake the great burden of searching for documents relating to that alleged conspiracy (especially when the Panasonic Defendants are already producing a great volume of CRT Finished Product documents).  The law is clear that if the discovery sought is of such marginal relevance in relation to the burden on the producing party, a motion to compel is appropriately denied.  This is precisely the case here.

**ARGUMENT**

I.   **The DPPs Allege A "Unitary" Conspiracy, And The Panasonic Defendants Have Already Agreed To Produce A Massive Volume Of Documents Relating To DPPs' Allegations**

As the DPPs' discovery responses make patently clear, they are alleging "a unitary conspiracy that encompasses both CRTs and CRT Finished Products (including finished products, primarily televisions and computer monitors)."  See DPPs' Supplemental Responses to MTPD's First Set of Interrogatories, January 31, 2011, ("DPP Resp.") at 8.  The DPPs theory rests on a single set of meetings amongst CRT tube makers.  See DPP Resp. at 16-41; see also Rule 11 Motion at 5-9.  In response to over 50 requests for production of documents served by the DPPs and IPPs, the Panasonic Defendants have already agreed to produce (and have been producing) a wide variety of documents sought by the DPPs relating to CRTs as well as CRT Finished Products.[2]  With respect to all of the below requests and others, *the Panasonic Defendants have already agreed to produce such documents if they address both CRTs and CRT Finished Products*:

- documents produced by the Panasonic Defendants to the Department of Justice; (DPP First Request No. 1)

---

[1]  Indeed, the Indirect Purchaser Plaintiffs ("IPP") voluntarily agreed to withdraw their CRT Finished Products conspiracy claims and all discovery requests directed to discover information in support of those claims.  See Stipulation and Order re: Voluntary Withdrawal of Indirect Purchaser Plaintiffs' Claims as to Alleged Conspiracy Directed Towards CRT Finished Products, at ¶¶ 1-2, Dkt. 904 (Order signed April 22, 2011).

[2]  See Objections and Responses of Panasonic Defendants to Direct Purchaser Plaintiffs' First Set of Requests for Production of Documents ("DPP First Requests") (dated May 12, 2010); Objections and Responses of Panasonic Defendants to Direct Purchaser Plaintiffs' Second Set of Requests for Production of Documents ("DPP Second Requests") (dated May 12, 2010); and Objections and Responses of Panasonic Defendants to Indirect Purchaser Plaintiffs' Second Set of Requests for Production of Documents (dated May 28, 2010).

Hon. Charles Legge
May 10, 2011
Page 3

**Weil, Gotshal & Manges LLP**

- communications between competitors; (DPP Second Request No. 26)

- meetings between competitors; (DPP Second Request No. 27)

- detailed sales data and inventory levels; (DPP Second Request Nos. 5 and 13)

- business plans, planning analyses, budgets, forecasts, sales and profit projections; (DPP Second Request No. 17)

- documents relating to market shares for production, capacity, sales and shipments; (DPP Second Request No. 19)

- documents relating to conditions of supply and demand; (DPP Second Request No. 23) and

- documents relating to the relationship between prices for CRTs and CRT finished products and the costs. (DPP Second Request No. 15)

Under the DPPs "unitary conspiracy" theory of the case, the Panasonic Defendants are already producing documents (if any) that the DPPs seek. However, the DPPs wish to go beyond this substantial discovery and require the Panasonic Defendants to go on a wild goose chase for possible documents relating solely to CRT Finished Products in the hopes that something, maybe, will turn up that supports their unfounded theory of a CRT Finished Products conspiracy. It is not appropriate for the Panasonic Defendants to undertake this burdensome effort when (1) the DPPs are already receiving what is reasonably related to their alleged unitary conspiracy, and (2) the likelihood of unearthing any additional documents after such a costly effort is insufficient to compel the Panasonic Defendants to undertake such a significant burden.

## II. The Discovery Burden On The Panasonic Defendants Is Already Significant, And Should Not Be Compounded By A Search For Documents When The DPPs Have Not Established Any Likelihood That Such Documents Exist At All

### A. The Panasonic Defendants are already producing a massive volume of responsive documents at considerable burden and expense

The Panasonic Defendants have already agreed to produce a massive volume of documents, data and central files that relate to both CRT tubes and CRT Finished Products. Over the past year, and in compliance with their discovery obligations, the Panasonic Defendants have been diligently gathering, searching, and reviewing over hundreds of thousands of documents in response to Plaintiffs' discovery requests relating to CRT tubes. The Panasonic Defendants have already produced over 40 thousand documents to Plaintiffs, including a worldwide sales database for CRTs. The Panasonic Defendants will also be producing U.S. sales data for CRT Finished Products. In short, the DPPs have received, and will continue to receive, a massive volume of discovery with which they can attempt to support their claims and allegations.

Hon. Charles Legge
May 10, 2011
Page 4

Although the DPPs acknowledge in their motion to compel that the Panasonic Defendants have agreed to produce documents from 53 custodians' files (which includes custodians that worked in the Panasonic TV divisions), they fail to acknowledge the burden placed upon the Panasonic Defendants. The agreed-upon custodians are current or former employees that worked at over 10 different entities within the Panasonic family in multiple jurisdictions. Their documents are stored in multiple formats, ranging from stored paper documents to computer hard drives to server systems. Many of the documents within these custodian files are in a foreign language that will require review by attorneys fluent in multiple languages.

> B.   <u>Searching for and producing additional documents is an unreasonable burden and expense for the Panasonic Defendants in light of the DPPs failure to establish that such documents are likely to exist</u>

Not satisfied with the documents already agreed to be produced, the DPPs seek additional documents at significant expense to the Panasonic Defendants. The DPPs make no mention of the specific discovery requests on which they base their motion to compel, nor do they acknowledge the costs and burdens that would be involved. However, it is clear that compliance with their overbroad document requests would be unduly burdensome.

For example, the DPPs' Second Request No. 27 seeks documents relating to <u>any</u> meeting attended by the Panasonic Defendants, any other Defendant or any manufacturer of CRT or CRT Finished Products during which there was any communication concerning the production, marketing, pricing, distribution, inventory levels or sale of CRT or CRT Finished Products. The Panasonic Defendants have agreed to respond to this request as it relates to CRTs. However, it would vastly expand the search that has to be done, and yield enormous quantities of irrelevant information, if the Panasonic Defendants were to search for every document that related to a meeting with the Panasonic CRT business and the CRT Finished Product manufacturers to which it sold tubes, as this would likely pick up thousands of entirely innocuous meeting. In essence, the Panasonic Defendants would be required to comb through reams of ordinary documents and e-mails regarding routine sales of tubes to Panasonic's customers spanning over many years.

Similarly, with respect to DPPs' Second Request Nos. 7-8, the Panasonic Defendants are already producing the prices of their CRT Finished Products sold in the United States as well as the documents reflecting the policies and methods for establishing those prices. However, the DPPs additionally seek all documents "discussing" the pricing of CRT Finished Products, which would obviously be the subject of a vast volume of everyday, routine communications having no relationship to any alleged conspiracy at all. The Panasonic Defendants should not be compelled to search through this volume when the DPPs offer no evidence of any CRT Finished Product conspiracy.

The DPPs continue to claim they are entitled to the above types of information relating to CRT Finished Products on the basis that the information being requested might be of tangential relevance to the DPPs' claims or could possibly lead to circumstantial evidence of DPPs' allegations. Despite the DPPs' theory, this is <u>not</u> the standard for conducting discovery. Instead, all discovery is subject to the limitations set forth in Federal Rule 26 and, in particular, wide-

ranging discovery is <u>not</u> permitted where, as here, its potential relevance is outweighed by undue burden and expense.  As noted by the DPPs in their moving brief, if the harm or burden to the producing party is great relative to the marginal relevance of the discovery sought, a motion to compel production of discovery is appropriately denied.  <u>See</u> DPPs' Motion at 5 (citing <u>In re Urethane Antitrust Litig.</u>, 261 F.R.D. 570, 573 (D. Kan. 2009); <u>see also</u> Fed. R. Civ. P. 26(b)(2)(C)(iii) (discovery is <u>not</u> permitted when "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, . . . and the importance of the discovery in resolving the issues"); <u>Nugget Hydroelectric, L.P. v. Pac. Gas & Elec. Co.</u>, 981 F.2d 429, 438-39 (9th Cir. 1992) (propounding party failed to make a "'specific showing that the burdens of production would be minimal and that the requested documents would lead to relevant evidence'"); <u>Philadelphia Indem. Ins. Co. v. Westchester Surplus Lines Ins. Co.</u>, 2010 WL 1032586, at *1 (N.D. Cal. 2010) (denying request for discovery of "some potential relevance" because burden "would be quite disproportionate."); <u>In re ATM Fee Antitrust Litig.</u>, No. C 04-02676 CRB, 2007 WL 1827635, at *2 (N.D. Cal. June 25, 2007) ("Although the discovery rules entitle Plaintiffs to seek all material 'reasonably calculated to lead to the discovery of admissible evidence,' their theoretical entitlement yields to practical considerations when 'the burden or expense of the proposed discovery outweighs its likely benefits.'")

Indeed, this Court has "broad discretion" in managing discovery for the purpose of "sifting the issues in order that the suit will go to trial only on questions involving honest disputes of fact or law."  <u>Delta Sys., Inc. v. TRW</u>, No. 87-4014, 1989 WL 41706, at *6 (9th Cir. Apr. 21, 1989) (quoting <u>Campbell Indus. v. M/V Gemini</u>, 619 F.2d 24, 27 (9th Cir. 1980)); <u>Little v. City of Seattle</u>, 863 F.2d 681, 685 (9th Cir. 1988) ("The district court has wide discretion in controlling discovery.").  Your Honor agreed that the Plaintiffs' basis for a CRT Finished Products conspiracy "is important to the Special Master and to the District Court in <u>defining the permissible scope of discovery</u> . . ." in this proceeding.  <u>See</u> Report and Recommendations Regarding Discovery Motions at 6, November 18, 2010, Dkt. 810.  (emphasis added).  The additional search for "finished products conspiracy documents" would materially add to the Panasonic Defendants' burden.  The DPPs motion letter brief sidesteps this issue, and does not acknowledge the burden at all, or for that matter explain why the burden is reasonable.

As with the vast majority of materials already being produced, the search for these alleged documents would require the inclusion of additional search terms, resulting in materially more documents that must be reviewed one-by-one at significant expense.  This would result in adding even more categories of documents to search for and produce which would require more review of documents, more translation, and more volume of materials to be collected, managed, reviewed and produced.

The Panasonic Defendants do not argue here that they should not comply with agreed-upon discovery related to the alleged CRT conspiracy.  However, the DPPs' argument that antitrust discovery is broad and, thus, they are entitled to everything, is simply unavailing.  All discovery – including discovery in antitrust cases – is subject to Rule 26's limitations.  Because the DPPs have provided zero evidence that meetings took place concerning solely televisions or monitors containing CRTs, as shown in the Rule 11 Motion, the Panasonic Defendants should

Hon. Charles Legge
May 10, 2011
Page 6

Weil, Gotshal & Manges LLP

not be subject to further burdensome discovery by adding a whole other category of documents to search when there is no good faith basis for the DPPs to be pursuing such a discovery fishing expedition.

## III.   CONCLUSION

For the foregoing reasons, the DPPs' motion to compel CRT Finished Products discovery should be denied.


Yours sincerely,

*/s/ Adam Hemlock*_____
Adam Hemlock
Weil, Gotshal & Manges LLP
Counsel for the Panasonic Defendants


cc:    All Counsel via e-mail