# Exhibit D

# SAVERI & SAVERI, INC.
706 SANSOME STREET
SAN FRANCISCO, CALIFORNIA 94111
TELEPHONE: (415) 217-6810
TELECOPIER: (415) 217-6813

May 20, 2011

Honorable Charles A. Legge
JAMS
Two Embarcadero Center, Suite 1500
San Francisco, CA 94111

**Re:** *In re: Cathode Ray Tube (CRT) Antitrust Litigation*, MDL 1917 (N.D. Cal) – **Reply Letter Brief in Support of Direct Purchaser Plaintiffs' Motion to Compel Discovery with Respect to CRT Products**

Your Honor:

Direct Purchaser Plaintiffs submit this reply brief in support of their motion to compel finished product discovery from the Panasonic defendants.[1]

Plaintiffs have alleged a price-fixing conspiracy that spans both CRTs and finished products containing CRTs ("Finished Products"). The Court has affirmed the sufficiency of those allegations, after extensive challenge, both in rulings by your Honor and on review by Judge Conti. *See* Ex. 1, pp. 3-4 (Approval Order).[2] Materials relating to Finished Products are thus "relevant to any party's claim or defense," Fed. R. Civ. P. 26(b)(1), and must be produced in discovery. In response to objections by Defendants that the scope of their discovery was unduly burdensome, and at the direction of this Court, Plaintiffs and Defendants have sought to resolve the Defendants' three principal objections through a custodian-based approach to discovery whereby Defendants' search obligations in the first instance would be limited to an agreed list of custodians.

Over the last six months, Plaintiffs and Defendants have engaged in extensive negotiations attempting to reach agreement on the relevant custodian lists, and these negotiations have borne fruit. While Plaintiffs have not reached final agreement with all Defendants regarding the composition of the custodian lists, all Defendants – except

---

[1] Plaintiffs' opening letter of April 20, 2011 also sought to compel production from the LG defendants. LG, however, has agreed to produce "Finished Products" discovery on a custodian basis. Plaintiffs, therefore, agreed to withdraw the motion as against the LG defendants.

[2] Exhibits numbered 1 through 7 refer to the exhibits attached to the April 20, 2011 Declaration of R. Alexander Saveri in Support of Motion to Compel CRT Products Discovery Against Panasonic and LG Defendants. Exhibits numbering 8 and above are attached to the May 20, 2011 Reply Declaration of R. Alexander Saveri in Support of Motion to Compel CRT Products Discovery against the Panasonic Defendants, which accompanies this letter brief.

Hon. Charles Legge
May 20, 2011
Page 2

Panasonic – have agreed that the custodian based approach will resolve their Finished Product objections. Indeed, although it ultimately changed its position, even Panasonic agreed at the outset of the negotiations that an agreement on custodians would resolve its Finished Product objections. Panasonic has agreed to the custodian based approach with regard to its time period and geographical objections, and the parties have agreed on a list of 53 custodians.

Finally, as noted in Plaintiffs' opening letter brief, Your Honor has already ruled with respect to the Hitachi defendants that the custodian based approach resolves the Finished Product objection. Ex. 5, pp. 93, 130 (Hr'g. Tr.)

Despite all of this, Panasonic continues to resist its discovery obligations as to Finished Products. Panasonic offers three arguments, none of which withstand scrutiny. *First*, Panasonic claims that producing documents concerning Finished Products will be unduly burdensome. Panasonic fails to provide, as it must, *any evidence* that Finished Products discovery from the agreed upon 53 custodians would entail an undue burden. Moreover, as noted, this claim ignores the reduction in burden resulting from the custodian based approach. Indeed, because Panasonic has agreed to review the files of the 53 custodians and produce responsive documents, segregating and withholding Finished Product discovery from production will likely increase its burden. *Second*, Panasonic claims that Plaintiffs are so unlikely to uncover evidence of a conspiracy as to Finished Products that they are not entitled to take discovery on the subject. This argument contravenes the Federal Rules of Civil Procedure. Since the Court denied Panasonic's motion to dismiss, it has reiterated that Plaintiffs are not required to make a threshold showing to obtain discovery. Panasonic's argument should not be relitigated on this motion to compel. *Third*, Panasonic complains that it is already producing a "massive volume" of documents. As shown below, Panasonic exaggerates its agreement to produce Finished Products documents, while confusing the quantity of its production with its responsiveness to the relevant issues in this case.

**A. Production of All Relevant Finished Products Documents is Reasonable Here**

Compelling Panasonic to search for and produce relevant Finished Products discovery will not saddle it with undue burden or unjustifiable expense. Panasonic's Opposition ignores the nature of this case and the history of the parties' negotiations on Finished Products discovery. Its burden argument rings hollow for at least three reasons.

Hon. Charles Legge
May 20, 2011
Page 3

**(1)  Searching for relevant Finished Products documents in the files of 53 agreed-upon custodians – negotiated down from an initial list of 89 proposed individuals – is reasonable given Panasonic's size, the number of Panasonic-related entities, the length of the relevant time period and Panasonic's refusal to represent that files even exist for some of the agreed-upon custodians.[3]**

As an initial matter, Panasonic has failed to offer any evidence supporting its claims of undue burden.  As explained in Plaintiffs' opening letter brief, such evidence is essential to oppose a motion to compel on such grounds.  *See* Plaintiffs' April 20, 2011 Opening Motion To Compel Finished Products at p. 5.

In any event, Panasonic's likely discovery expenses are not undue burden.  Panasonic has some 385,000 employees worldwide in a collection of literally hundreds of affiliated companies.  *See* Ex. [20] (Panasonic's Form 20-F for the period ending March 31, 2010, p. 18)  Searching the files of 53 individuals can hardly be burdensome, especially when Panasonic has yet to state whether they even have files to search.  *See, e.g.*, Ex. [12] (Panasonic's Dec. 16, 2010 ltr., p. 4 (stating that Panasonic does "not intend to engage in [the] exercise [of representing whether potential custodians have files in existence] . . .We are not going to discuss what each custodian may have at this point."))  To the extent that the files of these 53 agreed-upon custodians have already been collected, compelling Panasonic to search for any relevant Finished Products documents poses little additional burden.  *See* Ex. [18] (Plaintiffs' May 6, 2011 ltr., p. 4)   Searching for documents relating to Finished Products will ***not*** add one single individual to this list.  Under contemporary practice, where document review is done primarily on computers using a document database for a given custodian, including Finished Product documents is unlikely to significantly alter the number of documents retrieved from any particular custodian.[4]

Searching for Finished Product documents will require little more than the search that Panasonic is now undertaking.  Indeed, it would appear that excluding Finished Product documents will involve more effort than including them – Panasonic will be making a determination to exclude documents that it would otherwise produce.   On a practical level, searching for Finished Product documents may add a handful of search terms to Panasonic's cull of the documents that it has likely already retrieved.   Indeed,

---

[3] *See* Exs. [14] (Plaintiffs' Nov. 18, 2010 ltr., pp. 1-2) and [8] (Plaintiffs' Dec. 14, 2010 ltr., p. 5).
[4]  Common practice, for instance, would be to retrieve a custodian's entire e-mail "mailbox," which is not pre-screened to eliminate materials related to one topic or another.

Hon. Charles Legge
May 20, 2011
Page 4

Plaintiffs have recently proposed Finished Products search terms, which were painstakingly compiled in an effort to limit the burden of producing irrelevant documents.  None of this is tantamount to "undue burden" for a company of Panasonic's size and sophistication.

>**(2)  Panasonic initially agreed to proceed with Finished Products discovery on a custodian-based approach as a way to address its objections (including burden), yet abandoned that position *before* Plaintiffs responded to Defendants' contention interrogatories.**[5]

Panasonic's flip-flop suggests that considerations of burden are ***not*** driving Panasonic's position so much as considerations of strategy or the incriminating contents of the forestalled production.  Panasonic's stratagem should not be rewarded – it should not be relieved from providing discovery that it agreed to undertake at the outset of the parties' negotiations regardless of whether Panasonic is making Plaintiffs fight for what it is actually willing to produce or because Panasonic got cold feet once it saw what the documents said.

>**(3) Relative to the size of the Finished Products market at issue in this case, and considering that Panasonic is a large multinational corporation with considerable assets, searching for documents related to a limited number of Finished Products issues entails a justifiable expense.**

Plaintiffs have alleged, and will seek to prove damages from, a conspiracy targeting the multi-billion dollar market for Finished Products, and are entitled to documents supporting their claims.  *See* Ex. 4 (Approval Order, p. 3).  *See also* Rule 11 Opp., p. 7, n.3.  Panasonic is a huge corporation with enormous resources.  It had nearly $100 billion in sales worldwide in 2010, including some $9 billion in the United States.  *See* Ex. [20] (Panasonic's Form 20-F for the period ending March 31, 2010, p. 154).  In view of the gravity of the allegations against Panasonic, as well as the resources at its disposal, the cost of responding to discovery is not oppressive, and Panasonic has not submitted any evidence to prove otherwise.

---

[5] *See* Exs. [15] (Sept. 2, 2010 e-mail from D. Yohai to G. Rushing and others, stating that "we are willing, at this point, to discuss a limited custodians based approach with you on issues of time period and products scope without prejudice to our overarching objections on these issues"), [16] (Panasonic's Sept. 21, 2010 ltr., pp. 4-5), [8] (Plaintiffs' Dec. 14, 2010 ltr., p. 2), [17] (Panasonic's Jan. 27, 2011 ltr., p. 1).  *See also* Ex. [19] (Panasonic's Nov. 5, 2010 ltr., pp. 1-2).

Hon. Charles Legge
May 20, 2011
Page 5

### B. Discovery Disputes Are Not an Appropriate Forum to Revisit Panasonic's Motion to Dismiss

Panasonic's claim that Plaintiffs have not provided enough evidence of collusion to warrant discovery as to Finished Products is yet a third attempt to litigate a motion to dismiss as to Finished Products. Panasonic's call for evidence to justify discovery concerning claims that this Court already has upheld does not square with Rule 26, which allows Plaintiffs to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Nor does it comport with the Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). There, a dissenting Justice Stevens urged that "careful case management" could prevent any discovery abuse that might result if insufficient complaints were allowed to proceed. *See id.* at 573. The majority unambiguously rejected Justice Stevens's argument. *See id.* at 543-44 & n.6. The Supreme Court has promulgated a single, threshold test at the motion to dismiss stage. If Plaintiffs pass that test – which we have – then discovery proceeds on the claims in the Complaint. Panasonic's imposition of a ladder of escalating proof thresholds required to enable discovery directly related to the claims or defenses stated in the Complaint is incompatible with the reasoning and outcome of *Twombly*.

### C. Panasonic Exaggerates What It Has Agreed to Produce

*Finally,* Panasonic exaggerates what it has in fact agreed to produce. Panasonic's Opposition creates the impression that it has agreed to produce (or has already produced) a wide variety of Finished Products documents. This is not correct. In fact, Panasonic has unduly limited the scope of what little it has agreed to produce as to Finished Products and in some instances has simply refused to produce entire categories of relevant Finished Products documents that Plaintiffs have requested. Certain Panasonic defendants have produced virtually no documents. Defendant Panasonic Corporation – the Japanese parent corporation – has produced only 517 pages of documents. Defendant Panasonic North America has produced no documents.

Hon. Charles Legge
May 20, 2011
Page 6

> **(1) Panasonic is limiting production of documents relating to pricing policies for Finished Products to the actual policies themselves, and Panasonic expressly refuses to produce internal communications between Panasonic's CRT personnel and personnel in its Finished Products units that relate to prices for Finished Products and other matters relevant to Plaintiffs' conspiracy claims.** (DPPs' Second Request No. 7)[6]

The withheld documents are directly relevant to Plaintiffs' claims of a CRT and Finished Products conspiracy involving vertically-integrated companies like Panasonic. These documents are likely to show how, in practice, the price of CRTs influence the price of Finished Products and vice versa, thus providing evidence of the operation and effects of the conspiracy. *See* Plaintiffs' Mem. of Points and Authorities in Opposition to Certain Defendants' Motion for Rule 11 Sanctions (here, "Rule 11 Opp."), pp. 14-15 and DPPs' Supp. Responses to Defendant MT Picture Display Co., Ltd.'s First Set of Interrogatories, pp. 46-50 (describing conspiratorial meetings involving discussion of Finished Products).

> **(2) Panasonic is producing only those documents that "directly discuss" the relationship between prices for Finished Products and Panasonic's cost of producing, marketing, selling or distributing Finished Products.** (DPPs' Second Request No. 15)

Panasonic's limitation is unreasonable because it will likely foreclose discovery of relevant internal communications regarding the pricing and costs of Finished Products. As with documents relating to Finished Products pricing policies, Panasonic has refused to produce what is essentially an entire category of relevant documents concerning the relationship between Finished Products pricing and costs of Finished Products. This limits Plaintiffs' discovery of information relevant to their conspiracy allegations as to both product levels. *See* Exs. 1 (Approval Order, pp. 11-13), 4 (Panasonic's Mar. 2, 2011 ltr., pp. 2-3) and [10] (Plaintiffs' Mar. 10, 2011 ltr., pp. 2-3). *See also* Rule 11 Opp., pp. 14-15.

---

[6] *See* Exs. [8] (Plaintiffs' Dec. 14, 2010 ltr., p. 2), [9] (Plaintiffs' Feb. 23, 2011 ltr., pp. 3-4), [4] (Panasonic's Mar. 2, 2011 ltr., pp. 2-3) and [10] (Plaintiffs' Mar. 10, 2011 ltr., pp. 2-3)

Hon. Charles Legge
May 20, 2011
Page 7

> **(3) Panasonic refuses to produce documents concerning communications and meetings between competitors relating to Finished Products, having limited its production only to CRT tube documents.** (DPPs' Second Request Nos. 26-27)[7]

Panasonic does not explain its reasoning, but evidently it asserts that, if there is a single conspiracy spanning both CRTs and Finished Products, the conspiring parties could never have discussed their conspiratorial efforts when discussing only Finished Products. This is unlikely. Logically, discussions relating to CRTs, to Finished Products or to both could provide the context for discussing conspiratorial efforts. For instance, a discussion that someone was cheating on the conspiratorial agreement by cutting CRT-TV prices could easily occur without reference to CRTs, let alone price fixing as to CRTs.

> **(4) Panasonic refuses to produce any documents relating to the capacity and production processes for Finished Products**. (DPPs' Second Request Nos. 10-11)

These documents are relevant to Plaintiffs' claims of collusive production curtailment and to showing common, class-wide impact. *See* Ex. 4 (Panasonic's Mar. 2, 2011 ltr., p. 2).

> **(5) Panasonic mischaracterizes Plaintiffs' requests.**

For instance, Panasonic casts Plaintiffs' requests as seeking documents "relating solely to Finished Products" when Plaintiffs are actually requesting documents relating to, *inter alia*, the relationship between CRT tubes and Finished Products. *See, e.g.*, Ex. [9] (Plaintiffs' Feb. 23, 2011 ltr., pp. 3-4).

---

[7] *See* Exs. [12] (Panasonic's Dec. 16, 2010 ltr., p. 2 (stating that "we have objected to producing alleged 'conspiratorial' types of documents relating to CRT-TVs")) and [9] (Plaintiffs' Feb. 23, 2011 ltr., pp. 3-4). *See also* Ex. [13] (Objections and Responses of Panasonic Defendants to DPPs' Second Set of Requests for Production, pp. 22-23).

**(6) Panasonic conflates the volume of its production – the vast majority of which was produced from its American CRT tube manufacturing entity, which did not produce or sell Finished Products – with the substance of what is actually being produced.**

For example, Panasonic overstates the importance of its productions of U.S. sales and inventory data for Finished Products, and mischaracterizes those data productions as "detailed." (DPPs' Second Requests No. 5 and 13) Transactional data is only one piece of a larger puzzle, and does not capture the kind of internal analyses of the Finished Products market that can directly support Plaintiffs' claims. *See* Ex. [8] (Plaintiffs' Dec. 14, 2010 ltr., p. 2). Moreover, what Panasonic has produced by way of Finished Products sales and inventory data has been insufficiently detailed – many documents produced thus far only include high-level summary transactional sales information, for instance – limiting their utility to Plaintiffs' case. *See* Exs. [9] (Plaintiffs' Feb. 23, 2011 ltr., p. 5) and [11] (Apr. 1, 2011 e-mail and accompanying memo re: transactional data from D. Lambrinos to J. Kessler & D. Yohai).

For the foregoing reasons, Plaintiffs' motion to compel should be granted.

                                                                                         Yours sincerely,

                                                                                         /s/ *Guido Saveri*
                                                                                         Guido Saveri
                                                                                        Interim Lead Counsel for the Direct Purchaser Plaintiffs

cc:     All Counsel via E-Mail

crt.411