ALDO A. BADINI (257086)
DEWEY & LEBOEUF LLP
1950 University Avenue
East Palo Alto, CA 94303
Telephone: (650)845-7000
Facsimile: (650) 845-7333
Email: abadini@dl.com

JEFFREY L. KESSLER (*Admitted Pro Hac Vice*)
A. PAUL VICTOR (*Admitted Pro Hac Vice*)
DEWEY & LEBOEUF LLP
1301 Avenue of the Americas
New York, NY 10019
Telephone: (212) 259-8000
Facsimile: (212) 259-7013
Email: jkessler@dl.com

STEVEN A. REISS (*Admitted Pro Hac Vice*)
DAVID L. YOHAI (*Admitted Pro Hac Vice*)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153-0119
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Email: steven.reiss@weil.com

*Attorneys for Defendants Panasonic Corporation of North America, MT Picture Display Co., Ltd., and Panasonic Corporation (f/k/a Matsushita Electric Industrial Co., Ltd.)*

[Additional Moving Defendants and Counsel Listed on Signature Pages]

**IN THE UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION<br><br>This Document Relates to:<br><br>ALL DIRECT PURCHASER CLASS ACTIONS | Case No. 07-5944 SC<br><br>MDL No. 1917<br><br>**DEFENDANTS' OPPOSITION TO DIRECT PURCHASER PLAINTIFFS' OBJECTION TO REPORT AND RECOMMENDATIONS ON MOTIONS REGARDING FINISHED PRODUCTS**<br><br>Date:   July 11, 2011 |

- 1 -

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Nothing in Direct Purchaser Plaintiffs' Objections to the June 15 Report and Recommendations on Motions Regarding Finished Products ("Objections") provides the Court with any basis for reversing Special Master Legge's well-founded conclusions that (i) Direct Purchaser Plaintiffs ("Plaintiffs") violated Rule 11 by alleging agreements to fix prices of finished CRT products without any objectively reasonable basis, and (ii) as a result, the Panasonic Defendants (Panasonic Corporation, Panasonic Corporations of North America, MT Picture Display Co., Ltd.) have no obligation to answer discovery directed at those allegations, which Judge Legge properly recommended be stricken from the Direct Purchaser complaint. Indeed, after correctly applying the applicable legal standard and carefully reviewing the bases proffered by Plaintiffs as support for their allegations of a "single, unitary conspiracy that encompassed both CRTs and the finished products," Special Master Legge correctly held that Plaintiffs had no reasonable Rule 11 basis to allege that the defendants conspired to fix prices for finished CRT products and that, while Plaintiffs are entitled to discovery into the impact of alleged CRT overcharges on finished CRT product prices, they are not entitled to conduct an expansive discovery fishing expedition regarding a conspiracy to fix finished CRT product prices for which there is no reasonable basis in this case.

## STATEMENT OF FACTS

As explained by Judge Legge, Plaintiffs have obscured, since the outset of this case, the critical issue of what conspiracy they are alleging involving finished CRT products. *See* Report and Recommendations on Motions Regarding Finished Products ("Report") at 3, June 15, 2011, Dkt. 947. For practically a year, Defendants[1] had sought to answer this by determining through discovery whether Plaintiffs had alleged a "single, unitary, conspiracy that encompassed both CRTs and the Finished Products," two conspiracies (one to set prices of CRTs and another to set prices of finished CRT products), or an alleged conspiracy limited to CRTs which purportedly had an impact on the

---

[1] "Defendants" refers to the undersigned defendants who have joined in this motion.

1  prices of finished CRT products.  Defendants also sought this discovery to determine whether the
2  facts Plaintiffs knew at the time they filed their complaints could support whatever allegations they
3  were making about finished CRT product price-fixing or whether Plaintiffs had failed to satisfy their
4  burdens under Rule 11.

5  Plaintiffs refused to respond to Defendants' requests, characterizing them as
6  premature and improper "contention discovery."  Defendants moved the Court to compel proper
7  responses and, after full briefing and a hearing, Special Master Legge ordered Plaintiffs to respond,
8  recognizing that "even apart from whether the discovery responses will result in a Rule 11 motion,
9  the requested information is important to the Special Master and to the District Court in defining the
10 permissible scope of discovery, the time necessary for discovery, the respective burdens on the
11 parties, and the scope of the trial."  Report & Recommendations, Dkt. 810, November 18, 2010.

12 On January 31, 2011, Plaintiffs responded to the requests.  Their responses revealed
13 that they were alleging "a single conspiracy to fix prices of CRTs and CRT Finished Products."[2]
14 But, as Special Master Legge later concluded, Plaintiffs provided no reasonable basis in their
15 discovery responses or elsewhere to support their allegations of *any* agreement – whether as part of a
16 single, unitary conspiracy or as part of a separate, second conspiracy – to fix the prices of any
17 finished product that contain a CRT as a component.  Report at 7-13.

18 As a result, Defendants provided both Direct and Indirect Purchaser Plaintiffs with
19 the proper notice and ultimately filed a Rule 11 motion with Special Master Legge on March 21,
20 2011.  Thereafter, on April 20, 2011, Indirect Purchaser Plaintiffs voluntarily stipulated to
21 "withdraw their CRT Finished Products Conspiracy Claims stated in the Indirect [Third Amended
22 Complaint]" and to "withdraw any and all requests for discovery directed to discover information in
23 support of the CRT Finished Products Conspiracy Claims."  Stipulation and Order, Dkt. 904, ¶¶ 1-2.
24 (Order signed April 22, 2011).  Direct Purchaser Plaintiffs did not join the Stipulation and thus,
25 remain subject to the Rule 11 Motion.

---

[2] *See* Exhibits A-F to Declaration of Jeffrey Kessler in Support of Motion for Sanctions Pursuant to Rule 11, dated March 21, 2011, Dkt. 892 ("Kessler Decl., March 21").

- 3 -

DEFENDANTS' OPP'N TO DIRECT                                           Case No. 07-5944 SC
PURCHASER PLAINTIFFS' OBJECTION                                       MDL NO. 1917

1       In addition, on April 20, 2011, Direct Purchaser Plaintiffs submitted a separate
2  Motion to Compel Finished Products Discovery against the Panasonic Defendants ("Motion to
3  Compel"), seeking discovery directed at the alleged agreements by Defendants to set the prices of
4  finished CRT products.  *See* Exhibit B to Declaration of Jeffrey Kessler in Support of Defendants'
5  Motion to Adopt Special Master's Reports and Recommendations Regarding Finished Products,
6  dated June 29, 2011, Dkt. 953 ("Kessler Decl., June 29").  The Panasonic Defendants responded by
7  letter brief on May 10, 2011, noting that they were already producing "a wide variety of documents
8  regarding pass-on or impact of the alleged CRT conspiracy on CRT Finished Products," but, as fully
9  set forth in the Rule 11 Motion, Plaintiffs are not entitled to all documents relating solely to the
10 allegations of a finished products conspiracy because Plaintiffs had "failed to adduce any evidence
11 of a conspiracy involving CRT Finished Products, either at the time they filed their complaints or
12 thereafter."  Kessler Decl., June 29, Ex. C.
13      On May 26, 2011, Special Master Legge heard argument on both motions and
14 subsequently issued a fourteen page Report, including an extensive, well-reasoned analysis of the
15 relevant case law.  As part of his analysis, Judge Legge recognized what is at stake because of
16 Plaintiffs' allegations regarding finished CRT product price-fixing:  these "are not mere tangential
17 issues," but have a "material impact on the scope of the cases," including who are direct and indirect
18 purchasers, what damages will be based on, whether discovery should be "much expanded and far
19 more expensive" by including finished products, the scope of classes that might be certified, and so
20 forth.  Report at 3.
21      Judge Legge properly rejected Plaintiffs' assertion (repeated again in their
22 Objections) that the Court already decided these critical issues as part of the Rule 12(b)(6) motions,
23 which in fact "decided only that the allegations on their face were sufficient to state a cause of
24 action."  *Id*.  Judge Legge correctly stated that "[w]e are only now at the stage of addressing the
25 questions of whether there was sufficient evidence under Rule 11 to allege a conspiracy to fix the
26 prices of Finished Products," which is governed by a "separate standard" not resolved on the
27 motions to dismiss.  *Id.*
28

- 4 -

DEFENDANTS' OPP'N TO DIRECT                                          Case No. 07-5944 SC
PURCHASER PLAINTIFFS' OBJECTION                                      MDL NO. 1917

1    As a result, Judge Legge, applying the correct Rule 11 standard, went on to review
2 carefully the support – direct *and* indirect *and* circumstantial – that Plaintiffs proffered as support for
3 their allegations of a conspiracy involving finished CRT products.  After analyzing that proffer,
4 Judge Legge recommended that Defendants' Rule 11 Motion be granted, that the allegations of
5 agreements to fix prices of finished CRT products be stricken, and that Plaintiffs' Motion to Compel
6 directed at those allegations be denied.

7    Specifically, after giving Plaintiffs "the full benefit of inferences" from all the support
8 Plaintiffs proffered as a basis for their allegations of a conspiracy to set finished CRT product prices,
9 Special Master Legge concluded:

> [P]laintiffs have not demonstrated objectively reasonable evidentiary support for their allegation that there was a conspiracy among the defendants to fix the prices <u>of Finished Products</u>.  As stated, plaintiffs have presented no direct evidence of such an agreement regarding Finished Products.  They have evidence that defendants met together, and giving plaintiffs the full benefit of inferences from such evidence, that there may have been an agreement to fix the prices of <u>CRTs</u> . . . However, the Special Master, even after giving plaintiffs all the inferences to which they are entitled, cannot see any objectively reasonable evidentiary support, direct or circumstantial, for a conspiracy to fix the prices of Finished Products.

Report at 11-12

   As explained below, Judge Legge did not abuse his discretion in finally resolving the proper scope of this case and ending what otherwise would have been massive discovery by Plaintiffs into a conspiracy they never had any Rule 11 foundation to allege.  Judge Legge also held that, despite his Rule 11 rulings, Plaintiffs still may pursue a claim that the alleged CRT conspiracy had downstream impacts on the finished products market and Defendants have agreed to produce discovery related to that claim.

## ARGUMENT

   As a threshold issue, Plaintiffs have not identified the correct standard of review. Objections at 5 (citing *Golden Eagle Distribution Corp. v. Burroughs Corp.*, 801 F.2d 1531 (9th Cir. 1986) and urging that a combination of *de novo* and clear error standard be applied).  Pursuant to the Supreme Court's decision in *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990), the Rule 11

- 5 -

DEFENDANTS' OPP'N TO DIRECT  
PURCHASER PLAINTIFFS' OBJECTION

Case No. 07-5944 SC  
MDL NO. 1917

1  inquiry involves issues deeply rooted in factual determinations and thus, the proper standard of
2  review is not *de novo*, but clear error or abuse of discretion.  496 U.S. at 401-402.  *See* Order
3  Appointing Special Master, ¶ 18 (June 16, 2008) (Dkt. 302) (recommendations based on factual
4  determinations to be reviewed under clear error standard).

## I. THE SPECIAL MASTER APPLIED THE CORRECT STANDARD IN CONCLUDING THAT THE RULE 11 MOTION BE GRANTED

Plaintiffs assert that Special Master Legge "did not apply the appropriate standard of law in recommending that the Court grant Defendants' motion for Rule 11 sanctions."  Objections at 6.  They urge that Judge Legge was wrong in concluding that *Townsend v. Holman Consulting Corp.,* 929 F.2d 1358 (9th Cir. 1990), and *In re Keegan Management Co. Sec. Litigation*, 78 F.3d 431 (9th Cir. 1996), do "not state a clear-cut rule of jurisprudence for application in all Rule 11 motions," and that here, based on case law and the language of the Rule itself, Plaintiffs could have satisfied Rule 11 only by conducting a reasonable pre-filing inquiry *and* by having support for the challenged allegations.  *Id*.  Judge Legge did not err in rejecting Plaintiffs' opposite view – that, so long as they conduct an ostensibly "reasonable" pre-filing inquiry, Plaintiffs are free to make whatever allegations they want *even if their pre-filing inquiry reveals no evidence or objectively reasonable basis to support them*.  Plaintiffs' view makes no sense and, indeed, is not the law.

Rather, as correctly recognized by Judge Legge, the cases cited by Plaintiffs – *Townsend*, *Keegan*, *In re Hayes Microcomputer Products, Inc. Patent Litigation*, 766 F. Supp. 818 (N.D. Cal. 1991), and *Montrose Chem. Corp. v. Am. Motorists Ins. Co.*, 117 F.3d 1128 (9th Cir. 1997) – do not articulate the standard that applies where (as here) Plaintiffs were found to have conducted a reasonable inquiry, but despite its results (no reasonable support), Plaintiffs proceeded to make allegations without a reasonable basis.  Each of the authorities cited by Plaintiffs either addresses inapposite situations or supports the position advanced by Defendants and Judge Legge:

<u>Keegan.</u>  Although the court remarked in *dicta* that "[a]n attorney may not be sanctioned for a complaint that is not well-founded, so long as she conducted a reasonable inquiry," the question actually addressed by the court was:  "May [an attorney] be sanctioned for a complaint

- 6 -

DEFENDANTS' OPP'N TO DIRECT  
PURCHASER PLAINTIFFS' OBJECTION

Case No. 07-5944 SC  
MDL NO. 1917

1  which *is* well-founded, solely because she failed to conduct a reasonable inquiry?"  78 F.3d at 434.
2  The court's conclusion – that Rule 11 is satisfied where an attorney conducts a reasonable
3  investigation *and* files an objectively (as opposed to subjectively) well-founded complaint – is based
4  on the principle that complaints with "merit on their face" should not be sanctioned.  Here, the
5  situation is the reverse – Plaintiffs' complaint, as held by Judge Legge, *does not* have merit on its
6  face and thus is not governed by *Keegan*.  Further, nowhere does *Keegan* hold that a plaintiff who
7  conducts a reasonable investigation, but finds nothing to support his claims, may proceed in making
8  allegations that lack any objectively reasonable support.

9  <u>Townsend.</u>  In *Townsend*, the court concluded that the plaintiff violated Rule 11
10 because he conducted "absolutely no inquiry" before filing an amended complaint.  929 F.2d at
11 1365.  The court easily concluded that the inquiry was unreasonable because (as here) the plaintiff
12 advanced allegations that were "baseless" and inconsistent with evidence that was disclosed prior to
13 the filing.  *Id.* at 1366.  Importantly, the decision makes it clear that Rule 11 is violated where (as
14 here) Plaintiffs make allegations that are not objectively reasonable, and although the case does state
15 that Rule 11 is violated by filings that are "both baseless and made without a reasonable and
16 competent inquiry," *id.* at 1362, there is nothing in the decision to indicate that, by this language, the
17 court meant that Plaintiffs may file an objectively baseless complaint simply because it was
18 investigated first, but the investigation did not support the allegations later made.

19 <u>In re Hayes.</u>  Plaintiffs cite *In re Hayes* apparently because it repeats the passage from
20 *Townsend* that "a filing that is both baseless and made without a reasonable and competent inquiry"
21 violates Rule 11.  766 F. Supp. at 828.  But again, there is nothing in the decision (which regarding
22 Rule 11 is very brief) to suggest that the Court meant that the Rule permits Plaintiffs to make
23 objectively baseless allegations simply because they purport to have conducted a "reasonable"
24 investigation that yielded no evidence in support of their claims.

25 <u>Montrose.</u>  In *Montrose*, the plaintiffs' allegations *were* objectively reasonable, but
26 their pre-filing inquiry was not.  117 F.3d at 1135.  This is not the situation presented here where
27 Plaintiffs' allegations *are not* objectively reasonable.  Thus, *Montrose* is inapposite.

28

- 7 -

DEFENDANTS' OPP'N TO DIRECT                                              Case No. 07-5944 SC
PURCHASER PLAINTIFFS' OBJECTION                                          MDL NO. 1917

1  Plaintiffs ignore the text of the Rule itself and the Rule 11 decisions that *do* control
2  here.  The Rule states, in pertinent part, that when an attorney presents a signed paper to a court, that
3  person is certifying that to the best of his or her "knowledge, information, and belief, formed after an
4  inquiry reasonable under the circumstances . . .(3) the factual contentions have evidentiary support
5  or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for
6  further investigation or discovery." Fed. R. Civ. Proc. 11(b)(3).  Plaintiffs' interpretation of the
7  Rule would make subsection (b)(3) meaningless as it would eviscerate the requirement that
8  allegations and factual contentions have or will likely have evidentiary support.
9  This was made clear by the Supreme Court in *Cooter & Gell*: "Determining whether
10 an attorney has violated Rule 11 involves a consideration of three types of issues.  The court must
11 consider factual questions regarding the nature of the attorney's prefiling inquiry *and* the factual
12 basis of the pleading or other paper.  Legal issues are raised in considering whether a pleading is
13 'warranted by existing law or a good faith argument' for changing the law and whether the
14 attorney's conduct violated Rule 11."  496 U.S. at 399 (emphasis added).  If Plaintiffs' view
15 prevailed, a court could stop its analysis after considering the nature of the pre-filing inquiry and
16 ignore "the factual basis of the pleading or other paper."  This cannot be the correct result as it would
17 permit utterly baseless claims, without any reasonable support, to go forward.  In fact, the correct
18 result, reached by Judge Legge, is the one supported by the applicable case law.
19 For example, in *Elan Microelectronics Corp. v. Apple, Inc.,* No. C-09-01531, 2009
20 WL 2972374 (N.D. Cal. Sept. 14, 2009), the Court adopted the same reasoning advanced here by
21 Defendants and Judge Legge in holding, without mentioning anything about the reasonableness of
22 the pre-filing inquiry, that the Rule is violated solely by making claims without a reasonable factual
23 basis or justification.  *Id*. at *3.
24 Similarly, the court in *Truesdell v. Southern California Permanente Medical Group*,
25 209 F.R.D. 169 (C.D. Cal. 2002), held that "Rule 11 sanctions are" "justified solely on the basis of
26 Plaintiff's counsel's persistent prosecution of claims without any reasonable basis in the law." *Id*. at
27 177.  This is consistent with the "central purpose of Rule 11" "to deter baseless filings in District
28

- 8 -

DEFENDANTS' OPP'N TO DIRECT                                                  Case No. 07-5944 SC
PURCHASER PLAINTIFFS' OBJECTION                                              MDL NO. 1917

1  Court and thus…streamline the administration and procedure of federal courts." *Id*. at 176.
2  Plaintiffs' position, on the other hand, would *not* give effect to this central goal of deterrence
3  because it would allow any and all baseless claims to go forward premised simply on the fact that a
4  reasonable investigation was conducted, even if it yielded no support for the claims.

5     The only conclusion that is consistent with the text of the Rule, its central purpose,
6  and controlling decisions, is Judge Legge's conclusion that, despite having conducted a reasonable
7  investigation, Plaintiffs violated Rule 11 by filing allegations with no objectively reasonable basis.

## II. THE SPECIAL MASTER CORRECTLY CONCLUDED THAT PLAINTIFFS' FINISHED PRODUCTS ALLEGATIONS LACK ANY OBJECTIVELY REASONABLE BASIS

   Plaintiffs assert that the issues raised in Defendants' Rule 11 motion have already been rejected by the Court's 12(b)(6) holding that Plaintiffs' complaint "contain[s] sufficient factual allegations to give rise to plausible conspiracy claims regarding both CRTs and CRT Products." Objections at 9. Plaintiffs are wrong. As Special Master Legge correctly held, on the motions to dismiss, the Court decided "only that the allegations on their face were sufficient to state a cause of action. No issues of evidence or discovery were resolved by those motions." Report at 3. Indeed, as part of the 12(b)(6) motions, Defendants did *not* (as Plaintiffs contend) argue that allegations should be stricken due to "insufficient evidence," (Objections at 10), but instead urged that allegations be dismissed because they were insufficient *as a matter of pleading*. As Judge Legge held, the issue of what was pled for purposes of Rule 8 is completely distinct from the Rule 11 inquiry directed at what was objectively reasonable to plead. *See Elan*, 2009 WL 2972374, at *4 ("whether a party has complied with Rule 11(b) and whether it has complied with Rule 8 are two separate inquiries. Rule 8 requires factual allegations sufficient to 'show' entitlement to relief. Under Rule 11, an attorney or unrepresented party ordinarily is deemed to be representing, under penalty of Rule 11 sanctions, that 'the factual contentions *have* evidentiary support'").

   Plaintiffs also assert that the issues raised by the Rule 11 motion are premature and should wait until summary judgment to be decided. Objections at 10-11. But if, as Plaintiffs

- 9 -

1  suggest, this motion is premature, it is unclear when exactly it could ever be filed.  Defendants'
2  motions to dismiss have been denied and it is well-established that waiting to move for sanctions
3  until after summary judgment is improper.  *See Barber v. Miller*, 146 F.3d 707, 711 (9th Cir. 1998)
4  ("In light of the clear language and intent of the amended Rule, we agree with the Sixth Circuit that
5  'a party cannot wait until after summary judgment to move for sanctions under Rule 11.'").
6  Moreover, Northern District of California Local Rule 7-8(c) states, "[t]he motion must … be made
7  as soon as practicable after the filing party learns of the circumstances that it alleges make the
8  motion appropriate."  Here, Defendants moved for Rule 11 sanctions immediately after Plaintiffs
9  provided interrogatory responses revealing that the allegations of a conspiracy fixing prices for
10  finished CRT products were made without any objectively reasonable basis for doing so.

11            Plaintiffs also argue that the "Special Master…erred by requiring" "direct evidence"
12  of an "explicit agreement on Finished Product Prices."  Objections at 11-12.  This is false. On its
13  face, the Report makes it clear that Judge Legge reviewed the direct, indirect, and circumstantial
14  "evidence" put forth by Plaintiffs, gave Plaintiffs the benefit of all reasonable inferences, and held
15  Plaintiffs to the lowest possible standard of only having to show "some" objectively reasonable basis
16  that supports the charge of a conspiracy as to Finished Products, *even if* that basis was not known
17  until *after* the complaint was filed, but before the Rule 11 motion is decided.  Report at 7-8.
18  Applying this very liberal standard, Special Master Legge still could not find from "the proffered
19  evidence any direct evidence" (*id*. at 7) *or* "any indirect or circumstantial evidence" (*id*. at 8-13) that
20  provides an objectively reasonable basis to contend that Defendants agreed to fix the prices of
21  Finished Products (*id*. at 7).[3]  To the contrary, Special Master Legge concluded that the only
22  evidence proffered by Plaintiffs suggests that Defendants "did *not* do so."  *Id*. at 7.

---

[3] Plaintiffs' assertion that "a price-fixing agreement may operate indirectly" and "need not explicitly set the price of the product at issue" gets them nowhere.  Objections at 11.  The authorities relied upon by Plaintiffs do not support the contention that possible, downstream market effects (even if anticipated by conspirators) amount to an agreement to fix prices of the distinct downstream products.  Rather, the cases cited by Plaintiffs address only the non-controversial point that an agreement with the purpose of fixing the price of a particular product is illegal even it involves indirect means, such as agreeing to control the supply of the product (*U.S. v. Socony-Vacuum Oil Co.*, 310 U.S. 150 (1940)), or agreeing to eliminate credit for purchasing the product (*Catalano, Inc. v. Target Sales, Inc.*, 446 U.S. 643 (1980)).

- 10 -

DEFENDANTS' OPP'N TO DIRECT                                              Case No. 07-5944 SC
PURCHASER PLAINTIFFS' OBJECTION                                          MDL NO. 1917

1     Special Master Legge did not abuse his discretion in applying these established legal
2 principles and concluding that, based on the proffered evidence, Plaintiffs had no objectively
3 reasonable basis to allege a conspiracy involving finished CRT products:[4]

4     <u>The Chunghwa Information</u>.  Plaintiffs emphasize the fact that, prior to filing their
5 complaint, they received an "extensive" oral proffer from Chunghwa about the alleged "unitary"
6 conspiracy.  Objections at 12-13.  However, as the Special Master correctly found, the proffered
7 information from Chunghwa – a company that only manufactured and sold CRTs (not finished
8 products) –was limited to alleged agreements regarding the prices of CRTs, not finished products.
9 Report at 8.  Indeed, Plaintiffs make no contention that those documents identify any agreement
10 among defendants to fix the price for finished CRT products.  This is clear based on the documents
11 produced by Chunghwa, which merely indicate that "defendants' discussions included consideration
12 of the *impact* on the Finished Products prices of the increases the prices of CRTs," which is "not
13 evidence of a conspiracy to fix Finished Products prices."  *Id*.

14     Moreover, Chunghwa served a conclusive set of responses to requests for admissions
15 ("RFAs") in this case stating unambiguously that it *has no knowledge or evidence of any conspiracy*
16 *to set prices of Finished Products*.  See Defendant Chunghwa Picture Tubes, Ltd.'s Responses and
17 Objections to Defendant LG Electronics USA, Inc.'s First Set of Requests For Admissions, Kessler
18 Decl., March 21, Ex. Q.  Judge Legge did not abuse his discretion in concluding that these responses
19 are evidence that, opposite from what Plaintiffs have alleged, Chunghwa did not provide Plaintiffs
20 with any basis to contend that Defendants agreed to set finished product prices or otherwise restrain
21 competition for finished products.  Further, Plaintiffs cannot ignore the responses for the purported
22 reason that they are "hearsay" or would be inadmissible as evidence at trial.[5]  Indeed, plaintiffs

---

[4] Plaintiffs completely mis-cite *Doctors Med. Ctr. of Modesto, Inc. v. Principal Life Insurance Co.*, 2011 WL 720046, at *5 (E.D. Cal. Feb. 22, 2011), for the proposition that, to prevail on a Rule 11 motion, Defendants must proffer "irrefutable proof" disproving Plaintiffs' allegations.  Objections at 12.  In that case, the defendant did volunteer that it had "irrefutable proof," but the Rule 11 motion was denied *not* because defendant's evidence turned out to be refutable, but because (unlike here) the plaintiff could establish some objectively reasonable basis supporting its claims.  *Id.*

[5] In any event, courts routinely hold that responses to requests for admissions are *not* hearsay.  *See, e.g., Simmons v. County of Los Angeles*, No. CV 04-9731 SVW (JC), 2009 WL 6769335 (C.D. Cal.

- 11 -

DEFENDANTS' OPP'N TO DIRECT                                      Case No. 07-5944 SC
PURCHASER PLAINTIFFS' OBJECTION                                  MDL NO. 1917

1  "cannot reasonably expect" the Court to "consider only the parts of Chunghwa's evidence that [purportedly] support plaintiffs' argument," (the "hundreds of meetings" Plaintiffs rely upon) while ignoring the admissions which make it clear that these meetings had nothing to do with any alleged agreement relating to finished products.  Report at 8.

Finally, the RFAs asked Chunghwa to admit or deny the exact question at issue here: whether it was aware "of any agreement among Manufacturers or Sellers of CRT Finished Products, including any Defendants who are Manufacturers or Sellers of CRT Products, concerning the prices at which any such Manufacturers or Sellers sell those Finished Products."  This request, contrary to the Plaintiffs' assertion, in no way assumes "a separate Finished Product conspiracy, rather than the unitary conspiracy Plaintiffs actually allege."  *See* Objections at 17.  Rather, it goes to the dispositive question of what factual information the Plaintiffs did or did not have prior to filing the complaint to support an allegation that Defendants agreed to fix prices of finished products.

Government Investigations and Indictments.  The Special Master rejected Plaintiffs' assertion that their finished products price-fixing allegations are reasonably supported by the DOJ and foreign investigations, described in press releases and plea agreements, each of which (as recognized by Special Master Legge) relates to an alleged conspiracy in CRTs, not finished products.  Report at 9.  As the Special Master correctly determined, although these documents may suggest that downstream users of computers and televisions may at some time have been affected by the alleged price-fixing of CRTs, this relates only to whether the alleged CRT conspiracy had downstream *impacts* and does *not* support an allegation that Defendants conspired to price-fix finished products.  In addition, the government has *not* "lent its weight" to any charge that

---

Sept. 1, 2009) (relying on defendants' responses to requests for admissions in deciding motion for summary judgment); *Marks v. Chicoine*, No. C 06-06806 SI, 2007 WL 2408885, at *2 (N.D. Cal. Aug. 21, 2007) (holding that responses to requests for admissions are admissible).  And, the Court is free to consider these admissions, whether admissible in evidence at trial or not, to evaluate whether the Plaintiffs had a good faith basis for filing and maintaining their finished products conspiracy claims on the basis of the Chunghwa proffer.

- 12 -

DEFENDANTS' OPP'N TO DIRECT  
PURCHASER PLAINTIFFS' OBJECTION

Case No. 07-5944 SC  
MDL NO. 1917

Defendants "conspired to fix the prices of finished products;" nor has it pursued or indicted numerous finished product manufacturers who are significant in the finished products markets.[6]  *Id.*

Corporate Relationships and Market Research.  The Special Master also did not err in concluding that an agreement to price-fix finished products cannot be reasonably pursued based on Plaintiffs' market and corporate relationship research.  *Id.* at 9-10.  Judge Legge gave Plaintiffs the benefit of the doubt that their research did in fact unveil a market ripe for conspiracy, but nevertheless correctly held that a market that is "fertile ground for a conspiracy" does not constitute reasonable "evidence" of "meetings" to fix prices of products within that market.  *Id*.

Consultation with Purported Expert.  Nor can Plaintiffs avoid Rule 11 sanctions by claiming that, prior to filing their complaint, they took into account the undisclosed opinion of a purported "expert economist" who supposedly concluded that there could have been a conspiracy "encompassing" Finished Products.  Report at 10.  Indeed, despite an invitation for Plaintiffs to submit the expert analysis *in camera* (*see* May 26, 2011 Motion Hearing Transcript at 125-26, Kessler Decl., June 29, Ex. A), "the economist has not been identified, the scope of his work has not been identified, the factual bases for his opinions have not been identified, and his opinions and conclusions [were not] submitted to the Special Master."[7]  Report at 10.  Thus, Judge Legge had no basis to infer that the "expert" consultation provided an objectively reasonable basis for Plaintiffs' finished products conspiracy allegations.[8]

---

[6] Neither *Starr v. Sony BMG Music Entm't,* 592 F.3d 314, 325 (2d Cir. 2010), nor *Fisher Bros. v. Cambridge-Lee Indus.*, 585 F. Supp. 69, 72 (E.D. Pa. 1983), are Rule 11 cases and, in any event, they do not hold that a government investigation regarding product A is a reasonable basis to allege a conspiracy regarding product B.

[7] In the two Rule 11 cases relied upon by Plaintiffs to support their argument that the Special Master erred in concluding that Plaintiffs' consultation with an expert does *not* provide factual support for their allegations, the plaintiffs provided significantly more information about the expert's opinions to the court.  *See Carlton Group, Ltd. v. Tobin*, No. 02 Civ. 5065 SAS, 2003 WL 21782650, at *4-5 (S.D.N.Y. July 31, 2003) (both experts filed declarations with the court); *Servicemaster Co., L.P. v. FTR Transport, Inc.*, 868 F. Supp. 90, 97 (E.D. Pa. 1994) (the court was able to confirm that the plaintiffs obtained two expert opinions that supported their view of the facts).

[8] Moreover, whatever expert opinion Plaintiffs claim to have received, Rule 11(b)(3) concerns the inquiry into objectively reasonable *factual* support for an allegation and, as the Supreme Court has stated, "[e]xpert testimony is useful as a guide to interpreting market facts, but it is not a substitute for them."  *Brooke Group Ltd. v. Brown & Williams Tobacco Corp.*, 509 U.S. 209, 242 (1993).

- 13 -

Miscellaneous Facts. The fact that some, but not all, of the defendants are involved in LCD or other government investigations relating to *different* products obviously provides no reasonable basis for Plaintiffs to allege a conspiracy relating to CRT televisions or computer monitors. Nor does the fact that some, but not all, of the defendants have affiliated companies involved in both the CRT business and the finished products business provide any good faith basis for alleging an agreement to fix the prices of finished products.

Finally, even with the benefit of thousands of pages of documents that have been produced by defendants since the start of this litigation, including all the documents produced by certain defendants pursuant to grand jury subpoenas, Plaintiffs *still* cannot identify any discussion among defendants that reasonably supports a claim of finished product price-fixing, or even that finished products were sold by defendants at uniform prices.[9] Thus, it is not surprising that, to this day, the government has not come forth with any indictments or plea agreements concerning any conspiracy to fix the prices of finished products.

In the absence of any such objectively reasonable evidence, Plaintiffs' allegations of a unitary conspiracy to fix the prices of both CRTs and finished products fail the Rule 11 test and thus, "shall" be sanctioned by this Court. Fed. R. Civ. Proc. 11. "The district court has wide discretion in determining the appropriate sanction for a Rule 11 violation," (*Mellow v. Sacramento Cnty.*, 365 Fed. App'x. 57, at *1 (9th Cir. 2010)), and should adopt Special Master Legge's recommendation that the Court strike the allegations of a conspiracy encompassing finished products from Plaintiffs' complaint. Striking these claims is the most effective means to prevent Plaintiffs from using baseless allegations to engage in a discovery fishing expedition, confuse the proper class definitions, require needless expert testimony, and otherwise improperly increase the Court's and the parties' case management burdens over claims that do not have a Rule 11 basis.[10]

---

[9] For example, prior to the filing of the Rule 11 motion, defendant SEA produced to Plaintiffs over 500,000 pages of documents pertaining to CRT finished products; Plaintiffs' Objections do not point to a single document from this mass that SEA produced at great expense.

[10] Defendants do not challenge Judge Legge's decision not to recommend that Plaintiffs also be sanctioned monetarily.

- 14 -

### III. THE SPECIAL MASTER CORRECTLY RECOMMENDED THAT PLAINTIFFS' MOTION TO COMPEL BE DENIED

Judge Legge properly ruled that, "if [the Rule 11] recommendation is adopted by the Court, the issue of a conspiracy to fix the prices of Finished Products will be eliminated from the case. For that reason, the Special Master recommends that if the Rule 11 motion is granted, this discovery motion by plaintiffs be denied." Report at 13-14.

In this regard, Plaintiffs' claim that discovery burdens "were a primary concern animating the Special Master's ruling" (Objections at 18), ignores the six pages of exacting analysis conducted by Special Master Legge detailing Plaintiffs' lack of any reasonable support for the finished products allegations. Once those allegations are removed from the case, it follows that discovery directed against them should be denied. As stated by Plaintiffs in their April 20, 2011 letter brief to Special Master Legge, "[a] party resisting discovery bears the burden of establishing either (1) that the requested discovery does not fall within the broad scope of relevance as defined by Fed.R.Civ.P. 26(b)(1), or (2) is of such marginal relevance that the potential harm or burden occasioned by the discovery would outweigh the ordinary presumption in favor of broad disclosure." Kessler Decl., June 29, Ex. B, at 5. It is hard to imagine a discovery request of less relevance than one bearing only upon an allegation stricken from a complaint.[11]

### CONCLUSION

For all these reasons, Plaintiffs' Objections should be denied and the Special Master's Report should be adopted in its entirety.

Dated: July 11, 2011            DEWEY & LEBOEUF LLP

By:   /s/ Jeffrey L. Kessler
JEFFREY L. KESSLER (*pro hac vice*)
Email: jkessler@dl.com
A. PAUL VICTOR (*pro hac vice*)
Email: pvictor@dl.com

---

[11] If the Court is not inclined to adopt Special Master Legge's Rule 11 findings, then Defendants respectfully request Your Honor remand back to Judge Legge Plaintiffs' Motion to Compel for his full consideration.

**DEWEY & LEBOEUF LLP**
1301 Avenue of the Americas
New York, NY 10019
Telephone: (212) 259-8000
Facsimile: (212) 259-7013

ALDO A. BADINI (257086)
Email: abadini@dl.com
**DEWEY & LEBOEUF LLP**
1950 University Avenue
East Palo Alto, California 94303
Telephone: (650) 845-7000
Facsimile: (650) 845-7333

STEVEN A. REISS (*pro hac vice*)
Email: steven.reiss@weil.com
DAVID L. YOHAI (*pro hac vice*)
Email: david.yohai@weil.com
DAVID E. YOLKUT (*pro hac vice*)
Email: david.yolkut@weil.com
**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, New York 10153-0119
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

GREGORY D. HULL (57367)
Email: greg.hull@weil.com
**WEIL, GOTSHAL & MANGES LLP**
201 Redwood Shores Parkway
Redwood Shores, California 94065-1175
Telephone: (650) 802-3000
Facsimile: (650) 802-3100

*Attorneys for Defendants Panasonic Corporation of North America, MT Picture Display Co., Ltd. and Panasonic Corporation (f/k/a Matsushita Electric Industrial Co.)*

By:  /s/ Kent M. Roger
KENT M. ROGER (95987)
Email:  kroger@morganlewis.com
MICHELLE PARK CHIU (248421)
Email: mchiu@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
One Market, Spear Street Tower
San Francisco, California 94105-1126
Telephone: (415) 442-1000
Facsimile: (415) 442-1001

J. CLAYTON EVERETT, JR (pro hac vice)
Email: jeverett@morganlewis.com
SCOTT A. STEMPEL (pro hac vice)
Email:  sstempel@morganlewis.com

- 16 -

DEFENDANTS' OPP'N TO DIRECT
PURCHASER PLAINTIFFS' OBJECTION

Case No. 07-5944 SC
MDL NO. 1917

|   |   |
|---|---|
| 1 | **MORGAN, LEWIS & BOCKIUS LLP** |
|   | 1111 Pennsylvania Avenue, NW |
| 2 | Washington, DC 20004 |
|   | Telephone: (202) 739-3000 |
| 3 | Facsimile: (202) 739-3001 |

*Attorneys for Defendants Hitachi, Ltd., Hitachi Asia, Ltd., Hitachi America, Ltd., Hitachi Electronic Devices (USA), Inc., and Hitachi Displays, Ltd.*

By: /s/ Ian Simmons
IAN SIMMONS (pro hac vice)
Email: isimmons@omm.com
BEN BRADSHAW (189925)
Email: bbradshaw@omm.com
**O'MELVENY & MYERS LLP**
1625 Eye Street, NW
Washington, DC 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414

*Attorneys for Defendants Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc.*

- 17 -

DEFENDANTS' OPP'N TO DIRECT PURCHASER PLAINTIFFS' OBJECTION

Case No. 07-5944 SC
MDL NO. 1917