ALDO A. BADINI (257086)
DEWEY & LEBOEUF LLP
Post Montgomery Center
One Montgomery Street, Suite 3500
San Francisco, CA 94104
Telephone: (415) 951-1120
Facsimile: (415) 951-1100
Email: abadini@dl.com

JEFFREY L. KESSLER (*Admitted Pro Hac Vice*)
A. PAUL VICTOR (*Admitted Pro Hac Vice*)
MOLLY M. DONOVAN (*Admitted Pro Hac Vice*)
DEWEY & LEBOEUF LLP
1301 Avenue of the Americas
New York, NY 10019
Telephone: (212) 259-8000
Facsimile: (212) 259-7013
Email: jkessler@dl.com

STEVEN A. REISS (*Admitted Pro Hac Vice*)
DAVID L. YOHAI (*Admitted Pro Hac Vice*)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153-0119
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Email: steven.reiss@weil.com

*Attorneys for Defendants Panasonic Corporation of North America, MT Picture Display Co., Ltd., and Panasonic Corporation (f/k/a Matsushita Electric Industrial Co., Ltd.)*

Additional Moving Defendants and Counsel Listed on Signature Pages

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| In re: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Case No. 07-5944 SC<br>MDL No. 1917 |
| This Document Relates to:<br><br>DIRECT PURCHASER ACTIONS | **DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT AGAINST PURPORTED DIRECT PURCHASER PLAINTIFFS WHO DID NOT PURCHASE CRTS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:   January 19, 2012, 9:00 a.m.<br>Place: JAMS Resolution Center<br>Special Master: Hon. Charles A. Legge |

1  **NOTICE OF MOTION FOR SUMMARY JUDGMENT AGAINST PURPORTED**

2  **DIRECT PURCHASER PLAINTIFFS WHO DID NOT PURCHASE CRTS**

3  To All Parties and their Counsel of Record:

4  PLEASE TAKE NOTICE that on January 19, 2012, or as soon thereafter as the

5  matter may be heard, at the San Francisco Resolution Center of JAMS, Two Embarcadero Center,

6  Suite 1500, San Francisco, California 94111, before the Special Master, the Honorable Charles A.

7  Legge, U.S. District Judge (Ret.) ("Special Master"), pursuant to the Court Order Re: Special Master

8  Duties, so ordered by the Honorable Samuel Conti on April 8, 2009, the moving defendants listed on

9  the signature pages below ("Defendants") will and hereby do move this Court, pursuant to Rule 56

10 of the Federal Rules of Civil Procedure, for an Order Granting Summary Judgment Against

11 Purported Direct Purchaser Plaintiffs Who Did Not Purchase CRTs.

12 This Motion is based upon this Notice of Motion; the accompanying Memorandum of

13 Points and Authorities; the Declaration of Molly M. Donovan; the complete files and records in

14 these consolidated actions; oral argument of counsel; and such other matters as the Court may

15 consider; and seeks a judgment against purported direct purchaser plaintiffs that did not directly

16 purchase the allegedly price-fixed CRTs because they do not have standing to pursue the claims

17 alleged.

18 **STATEMENT OF THE ISSUES**

19 Whether a plaintiff who merely purchased a finished product containing a CRT, but

20 did not directly purchase an allegedly price-fixed, stand alone CRT, has federal antitrust standing as

21 a direct purchaser.

22

23

24

25

26

27

28

# TABLE OF CONTENTS

NOTICE OF MOTION FOR SUMMARY JUDGMENT AGAINST PURPORTED

   DIRECT PURCHASER PLAINTIFFS WHO DID NOT PURCHASE CRTS............................ i

STATEMENT OF THE ISSUES..................................................................................................... i

TABLE OF AUTHORITIES ..................................................................................................... iii

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................................1

PRELIMINARY STATEMENT ....................................................................................................1

PROCEDURAL HISTORY..............................................................................................................2

UNDISPUTED FACTS ....................................................................................................................3

ARGUMENT ....................................................................................................................................5

A.     Under the Straightforward Direct Purchaser Rule, the Finished Products Plaintiffs

        Are, at Best, *Indirect* Purchasers.......................................................................................5

B.     Plaintiffs Do Not Meet any of the Recognized, Limited Exceptions to *Illinois Brick* .............8

C.     Plaintiffs Should Not Be Permitted to Argue for a New Exception to *Illinois Brick* .............11

CONCLUSION...............................................................................................................................12

1

**TABLE OF AUTHORITIES**

2

**Cases Cited**                                                         **Page(s)**

3

*Arizona v. Shamrock Foods Co.*, 729 F.2d 1208 (9th Cir. 1984) ............................... 9, 10

4

*Del. Valley Surgical Supply Inc. v. Johnson & Johnson*,

5

       523 F.3d 1116 (9th Cir. 2008) ............................................... 2, 5, 9, 11, 12

6

*Dickson v. Microsoft Corp.*, 309 F.3d 193 (4th Cir. 2002) ...................................... 11

7

*F.T.C. v. Mylan Laboratories, Inc.*, 62 F. Supp. 2d 25 (D.D.C. 1999) ........................ 6

8

*Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, 392 U.S. 481 (1968) ............... 5, 6, 7

9

*Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977) ........................................ *passim*

10

*In re ATM Fee Antitrust Litig.*, No. C 04-02676 CRB,

11

       2010 WL 3701912 (N.D. Cal. Sept. 16, 2010) ...................................... 10

12

*In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*,

13

       691 F.2d 1335 (9th Cir. 1982) .................................................. 6

14

*In re Linerboard Antitrust Litigation*, 305 F.3d 145 (3d Cir. 2002) ...................... 11, 12

15

*In re Optical Disk Drive Antitrust Litig.*, No. 3:10-md-02143,

16

       2011 WL 3894376 (N.D. Cal. Aug. 3, 2011) ...................................... 7

17

*In re Refrigerant Compressors Antitrust Litigation*, __ F. Supp. 2d __,

18

       2011 WL 243392 (E.D. Mich. June 13, 2011) ..................................... 7

19

*In re Sugar Industry Antitrust Litigation*, 579 F. 2d 13 (3d Cir. 1978) .................. 11, 12

20

*In re TFT-LCD (Flat Panel) Antitrust Litigation*, No. M 07-0827,

21

       2011 WL 5357906 (N.D. Cal. Nov. 7, 2011) ...................................... 9

22

*In re Vitamins Antitrust Litig.*, No. 99-197, 2001 WL 855463 (D.D.C. July 2, 2001) ........ 6

23

*Kansas v. UtiliCorp United, Inc.*, 497 U.S. 199, 208 (1990) ......................... 2, 5, 11, 12

24

*Mid-West Paper Prods. Co. v. Continental Grp., Inc.*, 596 F.2d 573 (3d Cir. 1979) ......... 6

25

*Reynoso v. U.S.*, No. 10-00098 SC,

26

       2010 WL 5387759 (N.D. Cal. Dec. 21, 2010) (J. Conti) .............................. 5

27

*Royal Printing Co. v. Kimberly Clark Corp.*, 621 F.2d 323 (9th Cir. 1980) ................. 9

28

- iii -

*Stanislaus Food Products v. USS-POSCO Industries*, No. CV F 09-0560 LJO SMS,

2010 WL 3521979 (E.D. Cal. September 3, 2010) .................................................7

**Statute(s)/Rule(s)** **Page(s)**

Fed. R. Civ. P. 56 ...........................................................................................5

**MEMORANDUM OF POINTS AND AUTHORITIES**

**PRELIMINARY STATEMENT**

Pursuant to the Direct Purchaser Plaintiffs' ("DPPs") Stipulation to Dismiss [Dkt No. 996], the DPPs no longer allege that Defendants entered into any anticompetitive agreements concerning finished products containing CRTs ("Finished Products"). Thus, defendants are entitled to summary judgment against the overcharge claims of any purported DPP who merely bought a Finished Product and did not directly purchase the only product alleged to be price-fixed: a component CRT ("Finished Products Plaintiffs"). There is no reason for any discovery or further proceedings against plaintiffs who lack direct purchaser standing as a matter of law.

Under the straightforward rule of *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), only the first, direct purchaser of the price-fixed product has antitrust standing to recover alleged overcharges. It is undisputed that at least eight of the DPPs did not purchase CRTs *at all* and their direct purchaser claims must therefore be dismissed. This is true even if the Finished Products Plaintiffs purchased a television or monitor containing a CRT from a purported member of the alleged conspiracy: such a claim contravenes the policy of *Illinois Brick* against litigating the speculative question of whether conspiratorially set overcharges were passed-on to purchasers of non-priced-fixed goods. Indeed, it would exponentially complicate federal antitrust claims if courts were required to adjudicate whether an alleged overcharge for CRTs was passed-on, and by how much, in the price of a television or monitor sold in a different downstream market, with a different array of competitors, including major finished product manufacturers who are not alleged to be conspirators (such as HP and Dell for monitors and Sharp, Sony and Vizio for televisions, to the extent they purchased CRTs directly from one of the Defendants). Television and monitor manufacturers are in fact the true direct purchasers of CRTs and thus have standing to carry out the deterrence function of the antitrust laws. The purchasers of televisions and monitors, by contrast, are *in*direct purchasers of CRTs and not entitled to assert a federal antitrust damages claim for their purchases of finished products.

Given the strong policy concerns underlying the direct purchaser doctrine, the

- 1 -

Supreme Court has established a heavy presumption against creating or expanding exceptions to *Illinois Brick*. *See, e.g.*, *Kansas v. UtiliCorp United, Inc.*, 497 U.S. 199, 208 (1990); *Del. Valley Surgical Supply Inc. v. Johnson & Johnson*, 523 F.3d 1116, 1120-21 (9th Cir. 2008). And, as demonstrated below, none of the already recognized exceptions permits an indirect purchaser of a finished product to sue as a purported direct purchaser of a CRT.

## PROCEDURAL HISTORY

At the outset of this case, the DPPs alleged a conspiracy to price-fix "CRT Products," defined to include both the component CRTs *and* Finished Products. The fact that the DPPs alleged an agreement as to Finished Products (as opposed to just CRTs) had a decisive impact on the Court's decision to deny Defendants' Rule 12(b)(6) motions to dismiss the claims by the Finished Products Plaintiffs for lack of standing:

> Defendants also move to dismiss based upon an argument of plaintiffs'
> supposed lack of standing under [*AGC* and *Illinois Brick*]. However,
> that argument is based in turn upon defendants' perception that the
> complaints allege a price fixing conspiracy only as to CRTs. And, the
> Special Master interprets the complaints as alleging a conspiracy as to
> CRT Products as well.

Special Master's Report, Recommendations and Tentative Rulings, Regarding Defendants' Motions to Dismiss [Dkt. No. 597] (February 5, 2010), at 20-21 *adopted in* Order Approving and Adopting Special Master's Report Recommendations and Tentative Rulings, Re: Defendants' Motions to Dismiss [Dkt. No. 665] (March 30, 2010), at 18-19 ("Here, the Direct Purchaser Plaintiffs allege they purchased CRTs *or CRT Products* from Defendants or their subsidiaries at inflated prices due to Defendants' unlawful conduct . . . This is the type of injury the antitrust laws were intended to address.") (emphasis added).

Following the motions to dismiss and after a period of discovery, certain defendants submitted a Rule 11 motion against the DPPs based on the fact that they had no reasonable basis to allege an agreement as to Finished Products. Special Master Legge agreed, granted the Rule 11 motion and recommended that the Finished Products conspiracy claims be stricken. *See* Report and Recommendations on Motions Regarding Finished Products ("Rule 11 Report") at 3, June 15, 2011,

- 2 -

Dkt. No. 947 (holding that DPPs had "no reasonable basis" to "allege any agreement" "to fix the prices of any Finished CRT Product."). Special Master Legge recognized that dismissing such claims would have a "material impact on the scope" of this case, including the parties that qualify as direct purchasers, the basis of the damages claimed, the scope of classes that might be certified, and so forth. *Id.*

Before Judge Conti decided whether to adopt the Special Master's Rule 11 Report, the DPPs voluntarily stipulated to "withdraw their CRT Finished Products Conspiracy Claims." [Dkt. No. 996] (so ordered by the Court on August 26, 2011) ("DPP Stipulation to Dismiss").

Consequently, this case narrowed to involve a conspiracy as to CRTs only and the "material" standing issue that Special Master Legge identified in his Report – i.e., who is a direct purchaser and who is not – is now ripe for resolution. From a case management standpoint, it will significantly benefit the parties and the Court to determine if certain plaintiffs do not have direct purchaser status *before* Defendants incur the burden and expense of deposing them for purposes of class or merits discovery, and *before* deciding any Federal Rule 23 class certification issues. Because the Finished Products Plaintiffs have no standing to sue for federal antitrust damages, a defect incurable as a matter of law, their claims should be dismissed on summary judgment now.

## UNDISPUTED FACTS

Pursuant to the DPP Stipulation to Dismiss, it is undisputed the DPPs no longer allege any agreement to fix the prices of Finished CRT Products and the only products alleged to be price-fixed are CRTs. *See* DPP Stipulation to Dismiss [Dkt. No. 996] (August 26, 2011).

It is further undisputed that the following Plaintiffs named in the DPP complaint did not purchase CRTs:

- **Arch Electronics, Inc.** *See* the Declaration of Molly M. Donovan, dated December 12, 2011, Exh. A, September 24, 2010 Letter from Geoffrey Rushing to Eric Shapland representing that Arch Electronics, Inc. did not purchase CRTs.[1]

---

[1] All relevant discovery responses by the DPPs are attached to the Declaration of Molly M. Donovan, dated December 12, 2011 (hereinafter "Donovan Decl.") filed concurrently herewith.

- 3 -

- **Crago d/b/a Dash Computers, Inc.**  *See* Donovan Decl., Exh. B, Plaintiff Crago D/B/A Dash Computer, Inc.'s Responses to Defendant Hitachi America, Ltd.'s First Set of Interrogatories (dated Jul. 7, 2010), Responses to Interrogatories 10, 12, 24 ("Plaintiff responds that it did not purchase CRTs (as opposed to CRT Products) during the Relevant Period").

- **Electronic Design Company.**  *See* Donovan Decl., Exh. C, Plaintiff Electronic Design Company's Responses to Defendant Samsung SDI Co. Ltd.'s First Set of Interrogatories (dated July 7, 2010), Response to Interrogatory 12 ("During the Relevant Period, Plaintiff did not purchase CRTs");.

- **Meijer, Inc. and Meijer Distribution, Inc.**  *See* Donovan Decl., Exh. D, Meijer, Inc.'s and Meijer Distribution, Inc.'s Responses to Defendant Hitachi America, Ltd.'s First Set of Interrogatories (dated July 8, 2010), Response to Interrogatory 6 ("Meijer responds that it has not purchased CRTs").

- **Nathan Muchnick, Inc.**  *See* Donovan Decl., Exh. E, Nathan Muchnick, Inc.'s Responses to Defendant Hitachi America, Ltd.'s First Set of Interrogatories (dated July 7, 2010), Responses to Interrogatories 6, 7 ("Plaintiff responds that it purchased CRT Products"); September 24, 2010 Letter from Geoffrey Rushing to Eric Shapland representing that Nathan Muchnick, Inc. did not purchase CRTs

- **Orion Home Systems, LLC.**  *See* Donovan Decl., Exh. F, Plaintiff Orion Home Systems, LLC's Responses to Defendant Hitachi America, Ltd.'s First Set of Interrogatories (dated July 9, 2010), Response to Interrogatory 6 ("Plaintiff responds that it did not purchase CRTs (as opposed to CRT Products) during the Relevant Period")

- **Radio & TV Equipment, Inc.**  *See* Donovan Decl., Exh. G, Plaintiff Radio & TV Equipment, Inc.'s Responses to Defendant Hitachi America, Ltd.'s First Set of Interrogatories (dated July 8, 2010), Response to Interrogatory 10 ("Radio & TV Equipment, Inc. did not purchase any CRTs during the Relevant Period.  It only purchased CRT Products.").

- **Royal Data Services, Inc.**  *See* Donovan Decl., Exh. H, Plaintiff Royal Data Services, Inc.'s Responses to Defendant Hitachi America, Ltd.'s First Set of Interrogatories, Response to Interrogatory 6 ("Plaintiff responds that it did not purchase CRTs (as opposed to CRT Products) during the Relevant Period").

- **Studio Spectrum, Inc.**  *See* Donovan Decl., Exh. I, Studio Spectrum Inc.'s Responses and Objections to Defendant Hitachi America, Ltd.'s First Set of Interrogatories (dated July 7, 2010), Response to Interrogatory 6 ("Plaintiff purchased only CRT Products").

Because these Finished Products Plaintiffs did not purchase a CRT, they are, at best, *indirect* purchasers and their purported direct purchaser claims must be dismissed with prejudice.

- 4 -

**ARGUMENT**

Summary judgment should be granted where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *Reynoso v. U.S.*, No. 10-00098 SC, 2010 WL 5387759, at *2 (N.D. Cal. Dec. 21, 2010) (J. Conti) *citing* Fed. R. Civ. P. 56. Direct purchaser standing to seek antitrust damages is an issue that is appropriate for summary judgment (*see e.g.*, *Del. Valley Surgical Supply Inc. v. Johnson & Johnson*, 523 F.3d 1116, 1122 (9th Cir. 2008)), and the record regarding the Finished Products Plaintiffs' lack of antitrust standing is ripe for a summary judgment determination now.

**A.    Under the Straightforward Direct Purchaser Rule, the Finished Products Plaintiffs Are, at Best, *Indirect* Purchasers**

As recognized by the Ninth Circuit, *Illinois Brick* establishes "a bright line rule" that only the first direct purchaser of an allegedly price-fixed product may bring suit for federal antitrust damages. *Del. Valley Surgical Supply Inc. v. Johnson & Johnson*, 523 F.3d 1116, 1120-21, 1122 (9th Cir. 2008). Here, the allegedly price-fixed products are CRTs and thus a plaintiff must establish that it directly purchased a CRT from an alleged conspirator to bring a federal antitrust claim. *UtiliCorp*, 497 U.S. at 207.

This "direct purchaser" rule is the result of two Supreme Court decisions. The first, *Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, 392 U.S. 481 (1968), was a monopolization case in which the defendant argued that the plaintiff did not suffer injury because it had passed-on the alleged overcharges to its own customers. *Id.* at 492. The Supreme Court held that the defendant "was not entitled to assert a passing-on defense" (*id.* at 494) because of the Court's concern that litigating "pass-on" could be an "insurmountable" task that would require "additional long and complicated proceedings involving massive evidence and complicated theories." *Id.* at 493. Based on that concern, the Court contemplated an exception to the direct purchaser bar only in circumstances where there could be no dispute that the alleged overcharge was passed-on – for example, where the "overcharged buyer has a pre-existing 'cost-plus' contract, thus making it easy

- 5 -

1    to prove that he has not been damaged." *Id*. 494.

2            In *Illinois Brick*, the Supreme Court extended the *Hanover Shoe* principle to foreclose

3    the *offensive* use of a pass-on theory, concluding that the "vigorous private enforcement of the

4    antitrust laws" is best achieved by allowing only direct payers of an unlawfully fixed price to sue for

5    antitrust damages.  431 U.S. at 745.  In barring indirect purchasers from suing under the federal

6    antitrust laws, the Court was particularly concerned with avoiding the "evidentiary complexities and

7    uncertainties" involved in determining how much of an alleged overcharge was paid by the direct

8    purchasers and how much, if any, was passed-on to the indirect purchasers.  *Id.* at 732.  The Court

9    held that the task would unnecessarily "complicate treble-damages actions with attempts to trace the

10   effects of the overcharge on the purchaser's prices, sales, costs, and profits, and of showing that

11   these variables would have behaved differently without the overcharge." *Id.* at 725.  The Court

12   concluded that "[h]owever appealing this attempt to allocate the overcharge might seem in theory, it

13   would add whole new dimensions of complexity to treble-damages suits and seriously undermine

14   their effectiveness." *Id.* at 737.

15           Courts have rigorously applied these policies in rejecting "pass-on" theories in direct

16   purchaser cases.  For example, courts have repeatedly dismissed direct purchaser claims for

17   "umbrella" damages – damages for purchases from non-conspirator competitors based on the

18   premise that such competitors, though not members of the alleged conspiracy, raised their prices in

19   response to conspiratorial agreements – because it would be too complex to establish how the

20   purported conspiracy impacted the "umbrella" sales and by how much.  *See, e.g.*, *F.T.C. v. Mylan*

21   *Laboratories, Inc.*, 62 F. Supp. 2d 25, 38 (D.D.C. 1999) (describing "umbrella liability").

22   Specifically, courts have stated that "ascertaining the appropriate measure of [umbrella] damages is a

23   highly speculative endeavor" (*id.*), and would transform antitrust litigations into "complex economic

24   proceeding[s] that the *Illinois Brick* Court was desirous of avoiding if at all possible." *In re Vitamins*

25   *Antitrust Litig.*, No. 99-197, 2001 WL 855463 (D.D.C. July 2, 2001) quoting *Mid-West Paper Prods.*

26   *Co. v. Continental Grp., Inc.*, 596 F.2d 573 (3d Cir. 1979); *see also In re Coordinated Pretrial*

27   *Proceedings in Petroleum Prods. Antitrust Litig.*, 691 F.2d 1335 (9th Cir. 1982) (rejecting an

28                                                   - 6 -

1  umbrella theory of recovery on the grounds that it requires undue speculation and complex economic

2  inquiry).

3          Courts have reached similar conclusions in recent component part cases.  In *In re*

4  *Refrigerant Compressors Antitrust Litigation*, __ F. Supp. 2d __, 2011 WL 243392 (E.D. Mich. June

5  13, 2011), the court dismissed claims of purported direct purchaser plaintiffs who did not purchase

6  the allegedly price-fixed compressor component, but instead claimed to have purchased finished

7  refrigerators containing compressors.  *Id.* at *1.  As here, the compressor plaintiffs only alleged a

8  conspiracy to price-fix components and did not allege a conspiracy to price-fix finished compressor

9  products.  *Id.* at *3.  The court held that plaintiffs who alleged that they only purchased a

10  downstream, finished product lacked antitrust standing:  "the only persons or entities that have

11  standing to assert federal antitrust claims in this action are those persons or entities who directly

12  purchased compressors" and not "Compressor Products."  *Id.* at *9; *see also In re Optical Disk Drive*

13  *Antitrust Litig.*, No. 3:10-md-02143, 2011 WL 3894376 (N.D. Cal. Aug. 3, 2011) (holding that,

14  absent a plausible conspiracy to price-fix finished products, to establish direct purchaser standing,

15  plaintiffs must allege that they directly "purchased actual ODDs" and not finished "ODD Products").

16          Similarly, the court in *Stanislaus Food Products v. USS-POSCO Industries*, No. CV F

17  09-0560 LJO SMS, 2010 WL 3521979 (E.D. Cal. September 3, 2010), dismissed for lack of

18  standing the federal antitrust claims of a plaintiff who did not purchase the allegedly price-fixed

19  components (tin and hot-band steel), but merely purchased finished tin products:  "plaintiff has cited

20  no authority for the proposition that it could be a direct purchaser where the product has been altered

21  along the distribution channel.  Here, [the component products] are transformed into another

22  product, the tin cans, which are then purchased by plaintiff . . . Plaintiff is an *in*direct purchaser."  *Id*.

23  at *5-7 (emphasis added).

24          These component part decisions denying antitrust standing are consistent with the

25  important policies against litigating "pass-on" set forth in *Hanover Shoe* and *Illinois Brick*.  They all

26  avoid the complex exercise of tracking the supposed overcharge for the component after it was

27  altered to become part of a separate finished product resold at a different level of the downstream

28

- 7 -

distribution chain, in a different market, with different competitors.

The claims by the Finished Products Plaintiffs here would require the same prohibited attempt to determine how much, if any, of the alleged overcharge for CRTs was "passed-on" from the sale of the component to the sale of the finished product in a very different market, either for monitors or televisions, with numerous major competitors who are not alleged to have been part of any conspiracy – HP, Dell and Apple in monitors and companies like Vizio, Sharp, Sanyo and Sony in televisions.  Counsel for the DPPs has already acknowledged this complication of proving pass-on (or absorption) of the CRT overcharge, which requires that the claims of the Finished Products Plaintiffs be dismissed:

> COURT: What if a manufacturer buys a higher priced tube but decides to absorb the increased cost itself without increasing its product?
>
> MR. SIMON:  Then we'll find out how much of that is in discovery and we'll see what impact that is.  But we don't know that now.
>
> COURT: That's impact, isn't it?
>
> MR. SIMON: It is, but it's not all the impact.  It may be one percent of the impact or it may be ten percent of the impact or it maybe [sic] 50 percent of the impact.

Donovan Decl., Exh. J, Tr. of Mot. Hr'g at 85-86 (May 26, 2011); 90 ("COURT: . . . Can't at the manufacturing and retail product, can't they decide to absorb that cost in order to stay competitive with their other competitors in the market place for television sets . . . .").

**B.    Plaintiffs Do Not Meet any of the Recognized, Limited Exceptions to *Illinois Brick***

As *indirect* purchasers, the Finished Products Plaintiffs cannot sue as part of the direct plaintiff case unless a recognized exception to *Illinois Brick* applies.[2]  In view of the "bright line" *Illinois Brick* bar, this Circuit has recognized only two limited exceptions where indirect purchasers may assert damage claims under the federal antitrust laws:  (i) where the indirect plaintiff

---

[2] As discussed below, *UtiliCorp* limits the exceptions to those explicitly set out in *Illinois Brick* and expanding the exceptions would contravene the Supreme Court's express concerns that inform the direct purchaser rule.  *See infra* Sec. C "Plaintiffs Will Argue for An Impermissible Exception to *Illinois Brick*"

- 8 -

1   purchased the price-fixed product from an intermediary that is owned or controlled by the defendant

2   manufacturer of the product (the "control exception") (*see Royal Printing Co. v. Kimberly Clark*

3   *Corp.*, 621 F.2d 323, 326 (9th Cir. 1980)), or (ii) where the indirect purchaser of the allegedly price-

4   fixed product "establishes a price-fixing conspiracy between the manufacturer and the middleman

5   (the "co-conspirator exception") (*see Arizona v. Shamrock Foods Co.*, 729 F.2d 1208, 1211 (9th Cir.

6   1984)).[3]  *See Del. Valley Surgical*, 523 F.3d at 1123, n.1.  Neither of these exceptions applies here.

7           In *Royal Printing*, Royal Printing purchased paper (the price-fixed product) from a

8   division of one of the alleged conspirators, through independent wholesaling firms, and from a

9   subsidiary of an alleged conspirator.  621 F.2d at 324.  The court held that Royal Printing was not

10  barred from suing with respect to its purchases from a "controlled" "division or subsidiary of a co-

11  conspirator" because claims based on such purchases did not depend on "pass-on" and did not

12  implicate the "interaction of supply and demand" or other "complex market interactions."  *Id.* at 326.

13  Here, the Finished Product Plaintiffs did not purchase the allegedly price-fixed product – a CRT –

14  from anyone, let alone from a "controlled" intermediary.  To the contrary, it is undisputed that the

15  Finished Products Plaintiffs only purchased an altered, downstream finished product sold in a

16  finished product market with supply and demand conditions.  *Cf. Royal Printing Co.*, 621 F.2d at

17  326 (allowing antitrust standing to plaintiffs who purchased the same product (paper) from a

18  controlled intermediary).

19          Judge Illston's recent decision in *In re TFT-LCD (Flat Panel) Antitrust Litigation*,

20  No. M 07-0827, 2011 WL 5357906 (N.D. Cal. Nov. 7, 2011), suggesting that *Royal Printing* grants

21  standing to indirect purchasers of downstream products is incorrect and does not address the

22  fundamental polices of *Illinois Brick* that bar such a broad new exception to the direct purchaser test.

23  *See id.* at *1, 2.  Specifically, *In re TFT-LCD* ignores the fact that Royal Printing purchased the

24  actual price-fixed product and it does not address the fact that proving "pass-on" from a component

---

[3] Courts have also recognized the "cost-plus exception" for indirect purchasers who bought the price-fixed product from an intermediary with a pre-existing cost-plus contract, but the Finished Products Plaintiffs have not invoked that exception, and it too has been applied only when the indirect purchaser buys the price-fixed product.

DEFENDANTS' MOT. FOR SUMMARY JUDGMENT                    Case No. 07-5944 SC
AGAINST PURPORTED DPPs WHO DID NOT PURCHASE CRTs        MDL NO. 1917

1    sale to a finished product sale involves economic issues even more complex than those in *Illinois*

2    *Brick*.  Indeed, the price-fixed component's effect on the finished product's price is comingled with

3    numerous other inputs – from thousands of other component part costs, to variable labor and

4    manufacturing facility costs, to numerous fixed manufacturing costs – even before it is subject to

5    economic conditions that influence the pass-on of an overcharge over a single finished product at

6    one step in the chain of distribution to the next.  Inquiring into such issues creates the complex

7    litigation quagmire of "pass-on" that the Supreme Court has directed courts to avoid, especially

8    where (as here) actual unrelated companies purchased the price-fixed product (*e.g.,* Sony, Sharp,

9    Vizio, Dell, HP, and Apple, to the extent they actually purchased CRTs directly from one of the

10   Defendants) and are capable of bringing their own direct purchaser claims.

11            The co-conspirator exception to *Illinois Brick* is similarly inapplicable here.  The

12   Ninth Circuit applied it only once in *Arizona v. Shamrock Foods Co.*, 729 F.2d 1208 (9th Cir. 1984)

13   ("*Shamrock*"), a case where (unlike here) the plaintiffs purchased the allegedly price-fixed product,

14   not a downstream, finished product in which the allegedly price fixed component was incorporated.

15   In that case, consumers alleged that dairy producers conspired among themselves and with retailers

16   to fix the retail price of milk directly purchased by the consumers from the conspiring retailers.  *Id.*

17   at 1210-11.  The Ninth Circuit held that *Illinois Brick* did not apply because the retail price paid by

18   consumers was the very price that purportedly was fixed and thus plaintiffs' recovery did not depend

19   on "pass-on."  *See In re ATM Fee Antitrust Litig.*, No. C 04-02676 CRB, 2010 WL 3701912, at *5

20   (N.D. Cal. Sept. 16, 2010) (explaining that "[s]trictly speaking, the co-conspirator 'exception' . . . is

21   not an exception to the direct purchaser rule.  *Shamrock Foods* stands for the proposition that a

22   plaintiff may sue for damages when the price that they have paid directly is the one that was

23   unlawfully fixed.  That holding is fully consistent with *Illinois Brick* . . . .").  Here, by contrast, the

24   Finished Product Plaintiffs did not buy the allegedly price-fixed product, and they admit that there

25   was no price-fixing of the finished products that they did buy.  Thus, the Finished Product Plaintiffs

26   *would* be required to show "pass-on" to establish damage and this is precisely what *Illinois Brick*

27   forbade.

                                            - 10 -

28

1

C.   **Plaintiffs Should Not Be Permitted to Argue for a New Exception to *Illinois Brick***

2

Adopting a new exception, or expanding one of the two existing exceptions to apply

3

here, would directly contravene the Supreme Court's warning in *UtiliCorp* against further exceptions

4

to the direct purchaser bar.  There, the Supreme Court rejected claims by the States of Kansas and

5

Missouri seeking to recover damages on behalf of consumers who had purchased gas at inflated prices as

6

the result of a conspiracy.  497 U.S. at 204-205.  The Court expressly recognized that the direct

7

purchaser rule "often den[ies] relief to consumers who have paid inflated prices because of their status as

8

indirect purchasers," but that there is nevertheless "ample justification" "*not to carve out exceptions to*

9

*the direct purchaser rule . . . .*"  497 U.S. at 212, 216 (emphasis added and internal quotation omitted).

10

The Court concluded that, while there is "the possibility of an exception for cost-plus contracts," the

11

Court should not and would not create another new exception to the direct purchaser bar.  *Id.* at 218;  *see*

12

*also Dickson v. Microsoft Corp.*, 309 F.3d 193, 214 (4th Cir. 2002) (noting that courts have properly

13

read *UtiliCorp* as "caution[ing] lower federal courts against creating new exceptions to the *Illinois*

14

*Brick* rule").  The Ninth Circuit has expressly followed this.  *See Del. Valley Surgical*, 523 F.3d at

15

1123 ("Appellants fail to persuade this court that there is anything extraordinary about the facts of

16

this case warranting a deviation from the firmly established *Illinois Brick* rule.").

17

Plaintiffs have previously urged a different approach inconsistent with both *UtiliCorp*

18

and *Delaware Valley*.  In their Opposition to Defendants' Joint Motion to Dismiss, they relied upon

19

in *In re Sugar Industry Antitrust Litigation*, 579 F. 2d 13 (3d Cir. 1978) ("*Sugar*"), and *In re*

20

*Linerboard Antitrust Litigation*, 305 F.3d 145 (3d Cir. 2002) ("*Linerboard*"), for the supposed

21

proposition that this Court should adopt a new exception to *Illinois Brick* to permit suit by plaintiffs

22

who purchased finished goods, not subject to any conspiracy, from a group of "manufacturers who

23

also made, and fixed the price of, a component of those goods." [Dkt. No. 531] (August 3, 2009), at

24

36-37 (arguing that *Illinois Brick's* "proscription against recovery for indirect purchases does not

25

extend to the product as well as the buyer").  But, that has never been the law in this Circuit and

26

should not be adopted now.

27

The exception to *Illinois Brick* created in *In re Sugar* was abrogated by the Supreme

28

- 11 -

1  Court's subsequent holding in *UtiliCorp* that *Illinois Brick* is absolute and not subject to new

2  exceptions. *UtiliCorp* 497 U.S. at 208; *Del. Valley Surgical Supply*, 523 F.3d at 1120-21.

3  Moreover, to the extent that *In re Sugar* and *In re Linerboard* allow indirect purchasers who did not

4  buy the price-fixed product to sue for federal antitrust damages, they directly contravene the policy

5  animating *Illinois Brick* by requiring "courts to disentangle the proper recovery for each party in the

6  distribution chain" and determine complex and speculative theories of pass-on between different

7  products and markets. *See Del. Valley Surgical Supply*, 523 F.3d at 1124.

8          In this connection, there is no dispute that the finished products markets at issue – in

9  which televisions and monitors were sold – were subject to "vigorous competition" and involved

10  numerous companies not alleged to be part of any conspiracy (*e.g.,* Sony, Sharp, Dell, and Apple).

11  Indirect Purchaser Consol. Am. Compl. ¶ 227. Proving how much or whether any alleged

12  overcharges for CRTs were passed-on under these circumstances is precisely what the Supreme

13  Court has instructed courts not to do. *UtiliCorp,* 497 U.S. at 208.

14                                **CONCLUSION**

15          For all these reasons, there is no genuine issue of material fact and Defendants are

16  entitled to a judgment as a matter of law, dismissing the purported direct purchaser claims of the

17  Finished Products Plaintiffs who did not purchase the allegedly price-fixed CRTs.

18  Dated: December 12, 2011                DEWEY & LEBOEUF LLP

19                                By:   /s/ Jeffrey L. Kessler

20                                JEFFREY L. KESSLER (*pro hac vice*)
                              E-mail: jkessler@dl.com

21                                A. PAUL VICTOR (*pro hac vice*)
                              E-mail: pvictor@dl.com

22                                Molly M. Donovan (*pro hac vice*)
                              Email : mmdonovan@dl.com

23                                **DEWEY & LEBOEUF LLP**
                              1301 Avenue of the Americas

24                                New York, NY 10019
                              Telephone: (212) 259-8000

25                                Facsimile: (212) 259-7013

26                                ALDO A. BADINI (257086)
                              Email: abadini@dl.com

27                                **DEWEY & LEBOEUF LLP**
                              Post Montgomery Center

28

- 12 -

One Montgomery Street, Suite 3500
San Francisco, CA 94104
Telephone: (415) 951-1120
Facsimile:  (415) 951-1100
Email: abadini@dl.com

STEVEN A. REISS (*pro hac vice*)
E-mail: steven.reiss@weil.com
DAVID L. YOHAI (*pro hac vice*)
E-mail: david.yohai@weil.com
DAVID E. YOLKUT (*pro hac vice*)
Email: david.yolkut@weil.com
**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, New York 10153-0119
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

GREGORY D. HULL (57367)
E-mail: greg.hull@weil.com
**WEIL, GOTSHAL & MANGES LLP**
201 Redwood Shores Parkway
Redwood Shores, California 94065-1175
Telephone: (650) 802-3000
Facsimile: (650) 802-3100

*Attorneys for Defendants Panasonic
Corporation of North America, MT Picture
Display Co., Ltd. and Panasonic Corporation
(f/k/a Matsushita Electric Industrial Co.)*

FRESHFIELDS BRUCKHAUS
    DERINGER US LLP

By:   /s/ Richard Snyder
TERRY CALVANI (SBN 53260)
E-mail: terry.calvani@freshfields.com
CHRISTINE LACIAK(*Admitted Pro Hac
Vice*)
E-mail: christine.laciak@freshfields.com
RICHARD SNYDER (*Admitted Pro Hac Vice*)
E-mail: richard.snyder@freshfields.com
**FRESHFIELDS BRUCKHAUS
    DERINGER US LLP**
701 Pennsylvania Avenue NW, Suite 600
Washington, DC  20004
Telephone: (202) 777-4565
Facsimile: (202) 777-4555

*Attorneys for Beijing-Matsushita Color CRT
Company, Ltd.*

MORGAN, LEWIS & BOCKIUS LLP

- 13 -

By:   /s/ Kent M. Roger
KENT M. ROGER (95987)
E-mail: kroger@morganlewis.com
MICHELLE PARK CHIU (248421)
E-mail: mchiu@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
One Market, Spear Street Tower
San Francisco, California 94105-1126
Telephone: (415) 442-1000
Facsimile: (415) 442-1001

J. CLAYTON EVERETT, JR. (*pro hac vice*)
E-mail: jeverett@morganlewis.com
SCOTT A. STEMPEL (*pro hac vice*)
E-mail: sstempel@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
111 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone: (202) 739-3000
Facsimile: (202) 739-3001

*Attorneys for Defendants Hitachi, Ltd., Hitachi Displays, Ltd., Hitachi Asia, Ltd., Hitachi America, Ltd., and Hitachi Electronic Devices (USA), Inc.*

ARNOLD & PORTER LLP

By:   /s/ Ronald C. Redcay
RONALD C. REDCAY (67236)
Email: Ronald.Redcay@aporter.com
D. ERIC SHAPLAND (193853)
Email: Eric.shapland@aporter.com
**ARNOLD & PORTER LLP**
777 South Figueroa Street, Forty-Fourth Floor
Los Angeles, California  90017-5844
Telephone:  (213) 243-4000
Facsimile:  (213) 243-4199

*Attorneys for Defendants LG Electronics, Inc.; LG, LG Electronics USA, Inc.,; and LG Electronics Taiwan Taipei Co., Ltd.*

BAKER BOTTS LLP

By:   /s/ Jon V. Swenson
JON V. SWENSON  (SBN 233054)
E-mail: jon.swenson@bakerbotts.com
**BAKER BOTTS LLP**
620 Hansen Way
Palo Alto, CA 94304
Telephone: (650) 739 7514
Facsimile: (650) 739 7614

- 14 -

JOHN M. TALADAY (*pro hac vice*)
E-mail: john.taladay@bakerbotts.com
JOSEPH OSTOYICH  (*pro hac vice*)
E-mail: joseph.ostoyich@bakerbotts.com
ANDREAS STARGARD (*pro hac vice*)
E-mail: andreas.stargard@bakerbotts.com
**BAKER BOTTS LLP**
1299 Pennsylvania Avenue, N.W.
Washington D.C. 20004-2400
Telephone: (202) 639-7700
Facsimile:  (202) 639-7890

*Attorneys for Philips Electronics North
America Corporation and Koninklijke Philips
Electronics N.V.*

SHEPPARD MULLIN RICHTER &
      HAMPTON

By:   /s/ James L. McGinnis
GARY L. HALLING, Cal. Bar No. 66087
E-mail: ghalling@sheppardmullin.com
JAMES L. MCGINNIS, Cal. Bar No. 95788
E-mail: jmcginnis@sheppardmullin.com
MICHAEL W. SCARBOROUGH, Cal. Bar
No. 203524
E-mail: mscarborough@sheppardmullin.com
**SHEPPARD MULLIN RICHTER &
      HAMPTON**
Four Embarcadero Center, 17th Floor
San Francisco, California  94111
Telephone:  (415) 434-9100
Facsimile:  (415) 434-3947

*Attorneys for Defendants Samsung SDI
America, Inc. and Samsung SDI Co., Ltd.*

O'MELVENY & MYERS LLP

By:   /s/ Ian Simmons
IAN SIMMONS (pro hac vice)
E-mail: isimmons@omm.com
BEN BRADSHAW (189925)
E-mail: bbradshaw@omm.com
**O'MELVENY & MYERS LLP**
1625 Eye Street, NW
Washington, DC 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414

*Attorneys for Defendants Samsung Electronics
Co., Ltd. and Samsung Electronics America,
Inc.*

- 15 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BAKER & MCKENZIE LLP

By:   /s/ Patrick J. Ahern
PATRICK J. AHERN (*admitted pro hac vice*)
E-mail: Patrick.Ahern@bakermckenzie.com
**BAKER & MCKENZIE LLP**
One Prudential Plaza
130 E. Randolph Drive
Chicago, IL 60601
Telephone: (312) 861-8000
Facsimile: (312) 698-2899

*Attorneys for Defendant Tatung Company of
America, Inc.*

WHITE & CASE LLP

By:   /s/ Lucius B. Lau
CHRISTOPHER M. CURRAN (*pro hac
vice*)
E-mail: ccurran@whitecase.com
GEORGE L. PAUL (*pro hac vice*)
E-mail: gpaul@whitecase.com
LUCIUS B. LAU (*pro hac vice*)
E-mail: alau@whitecase.com
**WHITE & CASE LLP**
701 Thirteenth Street, N.W.
Washington, DC  20005
Telephone: (202) 626-3600
Facsimile: (202) 639-9355

*Attorneys for Defendants Toshiba
Corporation, Toshiba America, Inc., Toshiba
America Information Systems, Inc., Toshiba
America Consumer Products, L.L.C., and
Toshiba America Electronic Components,
Inc.*

- 16 -