# Exhibit A

**SAVERI & SAVERI, INC.**
706 SANSOME STREET
SAN FRANCISCO, CALIFORNIA 94111
TELEPHONE: (415) 217-6810
TELECOPIER: (415) 217-6813

September 24, 2010

Eric Shapland
Arnold & Porter LLP
777 South Figueroa Street, 44th Floor
Los Angeles, CA 90017

      Re:   *In re Cathode Ray Tube (CRT) Antitrust Litigation*, No. C-07-5944 SC, MDL 1917

Dear Mr. Shapland:

      As promised during our meet and confer on September 21, 2010, I write to set forth Direct Purchaser Plaintiffs ("DPPs") position regarding the downstream data discovery propounded by certain LG Defendants, Hitachi Defendants and Samsung Defendants. As DPPs have explained, the authority regarding this issue overwhelmingly disfavors the production of downstream data by Plaintiffs. Defendants have failed to cite persuasive authority supporting their position and the information sought is irrelevant. Nonetheless, DPPs will agree to provide certain information regarding whether they purchased products pursuant to "cost-plus" contracts.

      The downstream information sought by defendants has been irrelevant in direct purchaser actions for more than 30 years. *See Illinois Brick Co. v. Illinois*, 431 U.S. 720, 724-25 (1977) ("*Illinois Brick*"); *Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481, 493-94 (1968) ("*Hanover Shoe*"). Whether or not a direct purchaser raises its prices for its own product or passes on the overcharge to its customers has no relevance to how a direct purchaser proves damages. *Hanover Shoe*, 392 U.S. at 489-92. The only prices relevant to proving impact or injury in a federal price-fixing case are the prices defendants and their co-conspirators charged Plaintiffs for their direct purchases. *Id.* at 489. Courts have therefore repeatedly denied antitrust defendants' attempts to take downstream discovery.[1]

---

[1] *See, e.g., Meijer, Inc. v. Abbott Laboratories*, 251 F.R.D. 431 (N.D. Cal. 2008) ("*Abbott Labs.*")(denying motion to compel evidence of downstream sales to demonstrate alleged conflict among class members); *In re Aspartame Antitrust Litig.*, 2008 WL 2275528, at *4 (E.D. Pa. April 8, 2008) (denying motion to compel downstream data and noting that "courts have consistently noted this kind of discovery is not favored")("*Aspartame*"); *In re Automotive Refinishing Paint Antitrust Litig.*, 2006 WL 1479819, at *8 (E.D. Pa. May 26, 2006) ("[W]e will deny defendants' request that we depart from the long-held practice of proscribing discovery of downstream data . . .")("*Auto Paint*"); *In re Pressure Sensitive Labelstock Antitrust Litig.*, 226 F.R.D. 492, 498 (M.D. Pa. 2005) (noting that "courts generally proscribe downstream discovery")("*Labelstock*"); *In re Plastics Additives Antitrust Litig.*, 2004 WL 2743591 at *16 (E.D. Pa. Nov. 29, 2004) ("downstream data is irrelevant to determine whether defendants are liable for price-fixing under the Sherman Act . . . . [C]ourts have refused to require production of downstream data in antitrust price-fixing cases")("*Labelstock*"); *In re Polyester Staple Antitrust Litig.*, Case No. 03-cv-1516 (Dkt. #162), at 10 (W.D.N.C. Feb. 5, 2004) (denying defendants' motion to compel documents concerning downstream discovery based on its "lack of relevance") ("*Poly Staple*"); *In re Vitamins Antitrust Litig.*, 198 F.R.D. 296, 301 (D.D.C. 2000) ("*Vitamins*").

Moreover, the denial of this sort of discovery is not based solely on relevance. Rather, *Hanover Shoe, Illinois Brick,* and other cases evince a policy against such discovery, even if, in some circumstances, it can be argued that it has some marginal relevance. The proscription against downstream discovery is rooted in the Supreme Court's conclusions that pass-on analysis is 1) unreliable; and 2) if allowed, undermines the policies underlying the antitrust laws. *Illinois Brick*, 431 U.S. at 744-45; *Hanover Shoe*, 392 U.S. at 493; *Kansas v. UtiliCorp United, Inc.*, 497 U.S. 199, 209-11 (1990) ("*Utilicorp*"). As Judge Wilken explained in *Abbott Labs.*, in reference to *Valley Drug Co. v. Geneva Pharmaceuticals, Inc.* 350 F. 3d 1181 (11th Cir. 2003), allowing downstream discovery does "not give sufficient weight to what the Supreme Court called the 'principal basis' for its decisions: the practical difficulty of determining whether and to what extent a party benefits from one economic arrangement as opposed to another." *Abbott Labs.,* 251 F.R.D. at 434. In short, analysis of whether or how a plaintiff may have "passed on" an overcharge simply has no place in a direct purchaser antitrust action.

Defendants have submitted several justifications for "downstream" discovery; none justify the discovery they have propounded.

*First*, relying on *Meijer, Inc. v. Warner Chilcott Holdings Co., III, Ltd.,* 245 F.R.D. 26, 35 (D.D.C. 2007) ("*Warner Chilcott*"), Defendants have asserted that they are entitled to documents, financial records and transactional data reflecting Plaintiffs' sales of CRTs or CRT Products. In that case, however, the Court held only that: 1) discovery related specifically to the issue of whether a direct purchaser plaintiff resold the product in issue pursuant to a "cost-plus" contract meeting the requirements set forth in *Hanover Shoe* might be permissible, and 2) directed the parties to meet and confer further on the issue. *Id*. This directive, moreover, was premised on the Court's assumption that the defendant could identify a good faith basis for such an inquiry. *See id*. The Court in no way held that the broad discovery of downstream data Defendants seek here was appropriate.

Despite the fact that your clients have not propounded discovery narrowly focused on the question of cost plus contracts, we informed you on Tuesday that Plaintiffs would consider responding to discovery going to that issue specifically. This will confirm that Plaintiffs are willing respond to an interrogatory framed as follows: With reference to the purchases of CRTs and/or CRT Products upon which you base your claims herein, please state whether you resold any of those products pursuant to a "cost plus" contract.

*Second*, you have asserted that Defendants are entitled to downstream discovery in order to determine whether they can assert the "functional equivalent to a cost-plus contract" exception as a defense herein. As we have explained, Plaintiffs do not believe that such an exception exists. As you have explained it, this exception would apply to the extent that Defendants were able to prove – via examination of Plaintiffs financial data, tax returns etc. – that their revenue and or profits increased as the prices of CRTs and CRT Products increased such that they suffered no damage. In other words, Defendants seek downstream discovery to perform the very pass-on analysis proscribed by the Supreme Court.

Eric Shapland
September 24, 2010
Page 3

As we discussed during the meet and confers, the Supreme Court rejected such an argument in *UtiliCorp*, 497 U.S. 217-18. There the Court held that despite a law which *required* a utility to pass-on 100% of any price increase to its customers, the "cost-plus" contract exception did not apply. *Id.* The Supreme Court also rejected a similar argument in *Illinois Brick* where one of the plaintiffs had purchased from a contractor who applied a "cost-plus" methodology. 341 U.S. at 744 (mere percentage mark-up contract not sufficient to support the "cost-plus" defense). The "cost-plus" exception only applies to pre-existing contracts that fix, in advance, the amount of products to be purchased and the price of those products. *See Hanover Shoe*, 392 U.S. at 494. Ninth Circuit authority also contradicts your position. *See Delaware Valley Surgical Supply, Inc. v. Johnson & Johnson*, 523 F.3d 1116, 1123 (9th Cir. 2008) (rejecting argument that broader cost-plus contract exception should be applied); *In re Ditropan XL Antitrust Litigation*, 2007 WL 2978329, at *4 (N.D. Cal. Oct 7, 2007) (in *UtiliCorp* "the Supreme Court cautioned lower federal courts against creating new exceptions to the *Illinois Brick* rule.").

During both of our meet and confer sessions, you indicated that you had Ninth Circuit authority to support the existence of a "functional equivalent to a cost plus contract" exception, and Plaintiffs asked that you provide it to us. You have not done so. The sole case you have identified – *In re Beef Industry Antitrust Litig.*, 600 F.2d 1148 (5th Cir. 1979) – not only is not a Ninth Circuit case, it predates *UtiliCorp.*, and contradicts the above Ninth Circuit authority.

*Third,* you have asserted the downstream discovery you seek is relevant to class certification issues – namely, typicality and adequacy. This attempt to circumvent the holding and rationale of *Hanover Shoe* is also without merit and has also been repeatedly rejected. *See, e.g., Abbott Labs.*, 251 F.R.D. at 435; *In re: Flat Glass Antitrust Litig. (II)*, Case No. 08-0180-DWA (Dkt. # 238) (W.D. Pa. Jan. 6, 2010) (denying defendants' motion to compel production of downstream data because information was not "relevant or necessary to determine class certification").

Defendants' reliance on *Valley Drug Co. v. Geneva Pharms. Inc.*, 350 F.3d 1181 (11th Cir. 2003) is misplaced. That decision is an anomaly, based on the peculiar facts of that case and the unique circumstances of the wholesale name brand and generic pharmaceuticals distribution network. The *Valley Drug* case involved unique pricing characteristics in the drug industry and a clearly identified conflict. None of the economic peculiarities of the drug industry described in *Valley Drug* are present in this case and Defendants have not even attempted to identify a specific conflict among class members.

*Valley Drug* is also inconsistent with the law of the Ninth Circuit and was wrongly decided. It has been criticized by several courts, including, recently, *Abbott Labs.*: "the Eleventh Circuit's holding fails to appreciate the true import of the *Hanover Shoe* rule that a direct purchaser may recover the full amount of the overcharge, even if he is otherwise benefited, because the antitrust injury occurs and is complete when the defendant sells at the illegally high price" (internal quotations and citations omitted). *See also Warner Chilcott Holdings Co., III,*

*Ltd.* 246 F.R.D. at 303-04; *In re Wellbutrin SR Direct Purchaser Antitrust Litig.* 2008 WL 1946848 (E.D. Pa. May 2, 2008). [2]

*Fourth*, you have asserted that the discovery is relevant to damages and other merits issues. This argument too has been rejected many times. *See, e.g., Aspartame*, 2008 WL 2275528, at *4; *Auto Paint*, 2006 WL 1479819, at *7; *Vitamins*, 198 F.R.D. at 300-01. In *Aspartame*, the defendants sought downstream discovery, arguing that "information concerning the changes in supply, demand, pricing and discounting" would "demonstrate whether there are such significant differences in the product markets for putative class members that the individual issues will predominate over common issues for the class." 2008 WL 2275528, at *4. The court rejected the argument, explaining that:

> [I]n light of the considerable size of the aspartame market the Court does not find Plaintiffs' potential resales sufficiently significant to justify the burden on the Plaintiffs for providing individualized downstream discovery. Any analysis of the multi-billion dollar aspartame market is unlikely to be at all affected by this information.

*Id.*

Even if defendants were to obtain all of the voluminous downstream information they seek from each of the named class representatives, it will not meaningfully assist in damages analysis herein. In a market comprising tens of billions of dollars in sales, information from 13 individual purchasers would constitute a meaningless sample, and would be completely swamped by data available from other sources.

*Fifth*, you have asserted that the discovery is relevant to "pass-on" issues in the indirect purchaser case. Again, courts have rejected arguments that downstream discovery is proper simply because direct and indirect purchaser cases are consolidated before a single court. *See, e.g., Vitamins*, 198 F.R.D. at 301 ("the proposition that there are indirect purchasers in this case who may assert claims for damages other than direct overcharges is not sufficient to carry defendants' burden of showing this information ought to be produced by the direct purchasers"); *Poly Staple*, Case No. 03-cv-1516, at 6. Nor have you provided any authority to support your position. Moreover, as noted above, there is no need for this information from DPPs, whose sales comprise a tiny fraction of a multi-billion dollar market, when a vast amount of relevant information in the indirect purchaser case will be produced at less expense and burden to DPPs.

Finally, there is little question that the burden of producing downstream discovery far outweighs any arguable marginal relevance to issues in this case. Discovery may be limited by the Court if it finds that "the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(iii). Here, the marginal

---

[2] *In re Urethane Antitrust Litigation*, 237 F.R.D. 454 (D. Kan. 2006), is another anomaly. In that case the court also failed to properly consider the underpinnings of the rule against "pass-on" analysis.

Eric Shapland
September 24, 2010
Page 5

relevance, if any, of the downstream information is far outweighed by the undue burden that plaintiffs will incur if compelled to produce the voluminous information defendants seek. *See Aspartame*, 2008 WL 2275528, at *5 (denying motion to compel because "marginal value" of the downstream data was "outweighed by the burden on plaintiffs of this type of discovery"); *Vitamins*, 198 F.R.D. at 301 (denying motion to compel downstream information because the "burden outweighs any potential benefit defendants might yield from this data"); *Poly Staple*, Case No. 03-cv-1516, at 9 (finding "burden to Plaintiffs far outweighs any potential benefit to Defendants").

For the foregoing reasons, apart from the focused discovery regarding whether plaintiffs purchased pursuant to "cost-plus" contracts, DPPs will not agree to provide the "downstream" discovery Defendants seek. Nor do we believed that Defendants have a reasonable basis for a motion to compel. If you wish to discuss any of the foregoing, please do not hesitate to contact me.

Lastly, you have requested that Plaintiffs clarify their responses regarding their purchases of CRT Tubes and/or CRT products from Defendants.

The following plaintiffs purchased CRT Tubes: Hawel A. Hawel, d/b/a City Electronics; Paula Call d/b/a Poway-Rancho Bernardo TV; Princeton Display Technologies, Inc.; and Wettstein and Sons, Inc., d/b/a Wettstein's.

The following Plaintiffs purchased CRT Products: Arch Electronics, Inc.; Crago, d/b/a Dash Computers, Inc.; Electronic Design Company; Meijer, Inc. and Meijer Distribution, Inc.; Nathan Muchnick, Inc.; Orion Home Systems, LLC; Radio & TV Equipment, Inc.; Royal Data Services, Inc.; Studio Spectrum, Inc.' and Wettstein and Sons, Inc., d/b/a Wettstein's.

To the extent you require any additional information regarding Plaintiffs' individual responses, we are willing to discuss it.

Sincerely,

*/s/ Geoffrey C. Rushing*
Geoffrey C. Rushing

cc: Diane Webb
　　Michelle Chiu
　　Dylan Ballard