# SheppardMullin

Sheppard Mullin Richter & Hampton LLP
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111-4109
415.434.9100 main
415.434.3947 main fax
www.sheppardmullin.com

Writer's Direct Line: 415-774-2963
mscarborough@sheppardmullin.com

January 31, 2012

Hon. Charles A. Legge
JAMS
Two Embarcadero Center, Suite 1500
San Francisco, CA 94111

Re: *In re: Cathode Ray Tube (CRT) Antitrust Litigation*
Master File No. 07-5944 SC; MDL No. 1917
Opposition to Plaintiffs' Motion to Compel Production of Translations

Your Honor:

I write on behalf of defendants in opposition to plaintiffs' motion to compel defendants to produce their work product-protected English translations of foreign-language documents produced in this litigation.[1] Defendants collectively have produced hundreds of thousands of foreign-language documents. As set forth in the attorney declarations accompanying this opposition, and summarized below, defense counsel selected a small subset of these documents for rough and preliminary translation into English, based on counsels' opinions about the documents' likely significance to key issues in this litigation, for the purpose of facilitating counsels' advice to their clients. The resulting sets of translations thus reflect counsel's respective legal opinions and case strategy, including their mental impressions, conclusions and legal theories. As a result, and as confirmed by the overwhelming majority of courts to address the question, these translations reflect "opinion" attorney work product, which—except in the rare and inapplicable case where an attorney's mental impressions are actually at issue—is entitled to *absolute* protection from discovery. Plaintiffs do not, and could not, argue that defendants have waived work product protection with respect to any of their translations.[2] This alone should dispose of plaintiffs' motion to compel.

---

[1] Defendants do not oppose plaintiffs' request for the production of English translations of documents produced in this litigation to the extent those translations were prepared in the ordinary course of business and not in anticipation of litigation. Defendants will produce any such non-privileged translations to the extent they exist, are reasonably available, and have not already been produced.

[2] The absence of waiver issues distinguishes plaintiffs' current motion from defendants' prior motion to compel Chunghwa to produce its English-language translations. As the Special Master correctly recommended, and the Court ruled, Chunghwa waived opinion work product protection by voluntarily disclosing its translations to plaintiffs, its adversaries in this litigation. No such waiver has been claimed here.

**SheppardMullin**

Hon. Charles A. Legge
January 31, 2012
Page 2

Alternatively, even if plaintiffs were correct that defendants' translations reflected "ordinary" rather than "opinion" attorney work product, the translations would still be protected from discovery unless plaintiffs demonstrate both (1) a "substantial need" for the translations to prepare their case and (2) an "undue hardship" in obtaining the "substantial equivalent" of the translations by other means. Plaintiffs have made neither showing.

First, plaintiffs complain that, without defense counsels' translations, they would need to determine for themselves "which of the hundreds of thousands of documents produced by Defendants should be translated." Pltf's Mot. at 5. But this is precisely what the attorney work product doctrine is designed to ensure: i.e., "that each side relies on its own wit in preparing their respective cases." *Sporck v. Peil*, 759 F. 2d 312, 315-16 (3d Cir. 1985); *see also Holmgren v. State Farm Mutual Auto Ins. Co.*, 976 F. 2d 573, 576 (9th Cir. 1992) ("The primary purpose of the work product rule is to prevent exploitation of a party's efforts in preparing for litigation."). Plaintiffs' counsel do not have a right to avoid conducting their own legal analysis by piggy-backing on the analysis of defense counsel. Indeed, the fact that plaintiffs assert this as their "substantial need" for defendants' translations further underscores the status of those translations as absolutely protected *opinion* work product.

Second, plaintiffs claim that obtaining defendants' translations would largely spare them the expense of hiring a professional translator. But this is untrue for several reasons. As noted, the translations at issue reflect a small subset of the foreign-language documents produced by defendants; thus, plaintiffs would still need to pay for translations of any of the large number of documents defendants have not had translated. In addition, ***all*** of defendants' translations are uncertified, and therefore, as plaintiffs concede, inadmissible. These uncertified translations were typically created quickly as rough and preliminary translations for counsel's convenience, and many of them are incomplete or may contain inaccuracies. As a result, producing these translations would not spare plaintiffs the expense of obtaining complete certified translations of the underlying documents.

The rough and uncertified nature of defendants' translations also undermines plaintiffs' claim that production of defendants' translations would somehow further the goal of having "one translation" for each foreign-language document. Defendants' uncertified, *inadmissible* translations could not possibly serve as the "one translation" for a given document. Plaintiffs have not agreed to stipulate to the accuracy of defendants' translations, nor are plaintiffs likely to forego obtaining their own competing translations in the likely event that they disagree with certain aspects of those produced by defendants. Compelling production of defendants' translations thus would ensure—not avoid—the injection of multiple, competing translations into this litigation.

Instead, what this litigation needs is what defendants have repeatedly offered to negotiate for more than a year (with no response from plaintiffs), and what defendants recently prepared on their own and shared with plaintiffs in a specific written draft: a workable, streamlined protocol for the creation and use of certified translations in this litigation.

# SheppardMullin

Hon. Charles A. Legge
January 31, 2012
Page 3

### 1.   Background

To generally summarize the attorney declarations submitted in support of defendants' opposition, the translations sought by plaintiffs' motion are of documents that were identified, selected, and translated by defense counsel or under defense counsel's direction in preparation for this litigation. *See, e.g.,* Declaration of Michael W. Scarborough ("Scarborough Decl."), ¶¶ 4-5; Declaration of Kent M. Roger ("Roger Decl."), ¶ ¶ 3-5; Declaration of Dana E. Foster ("Foster Decl."), ¶¶ 7-10; Declaration of Adam C. Hemlock ("Hemlock Decl."), ¶ 4. Defense counsel able to read the foreign languages at issue conducted a large-scale review of the foreign-language documents produced in these actions and identified a small number of those documents as appropriate for translation into English, based on counsel's conclusions about those documents' significance to issues presented or anticipated in this litigation. *See, e.g.,* Scarborough Decl., ¶ 4; Roger Decl., ¶¶ 3-4 ; Foster Decl., ¶¶ 8-9; Hemlock Decl., ¶ 4. The purpose of these targeted translations was to allow key documents to be read and understood by defense counsel who are not able to read the foreign languages at issue, and to facilitate counsel's advice to their respective clients regarding this litigation. *See, e.g.,* Scarborough Decl., ¶ 5; Roger Decl., ¶ 5; Foster Decl., ¶¶ 7-9; Hemlock Decl., ¶¶ 4-5. Defense counsel did not create or commission categorical or *en masse* translations. *See, e.g.,* Scarborough Decl., ¶¶ 3-4; Roger Decl., ¶ 4; Foster Decl., ¶¶ 4-5; Hemlock Decl., ¶ 4.

Plaintiffs assert that defendants collectively have produced approximately two hundred thousand foreign language documents. *See* Pltf.'s Mot. at 1. Defense counsel estimate that they have collectively translated all or part of less than 2,500 documents into English, or slightly more than 1% of defendants' total produced foreign-language documents. *See, e.g.,* Scarborough Decl., ¶ 4; Roger Decl., ¶ 6; Foster Decl., ¶ 7; Hemlock Decl., ¶ 4. Several defendants, including the Samsung Electronics, Beijing Matsushita, Tatung, and Philips entities, have not created or commissioned any document translations. *See, e.g.,* Declaration of Courtney Bird, ¶ ¶ 4-5; Declaration of Terry Calvani, ¶¶ 4-5; Declaration of Rachel S. Brass, ¶ 3; Declaration of Andreas Stargard, ¶ ¶ 4-5. The LG Electronics entities have not created or commissioned any complete translations of foreign-language documents; their outside counsel have instructed bilingual attorneys to make a limited number of unofficial English-language summaries of a core set of documents selected by counsel for purposes of facilitating counsels' internal review and provision of legal advice. *See* Declaration of Eric Shapland, ¶ ¶ 5-8.

None of defendants' existing translations are certified official translations. *See, e.g.,* Scarborough Decl., ¶ 5; Roger Decl., ¶ 6; Foster Decl., ¶ 10; Hemlock Decl., ¶ 5. Defendants' translations typically were prepared as quickly as possible as rough and preliminary translations for the convenience of counsel. *See, e.g.,* Scarborough Decl., ¶ 5; Roger Decl., ¶ 6; Foster Decl., ¶¶ 7-10; Hemlock Decl., ¶ 5. As a result, many of the translations are incomplete, and some may be inaccurate in certain respects. *See, e.g.,* Scarborough Decl., ¶ 5; Roger Decl., ¶ 6; Foster Decl., ¶ 10; Hemlock Decl., ¶ 5.

**SheppardMullin**

Hon. Charles A. Legge
January 31, 2012
Page 4

2.   <u>Argument</u>

The attorney work product doctrine shields from discovery materials that an attorney or someone working under an attorney's instruction prepares in anticipation of litigation. *See United States v. Chevron Texaco Corp.*, 241 F. Supp. 2d 1065, 1081 (N.D. Cal. 2002). There are two "levels" of attorney work product: "opinion" work product, and "ordinary" work product. Opinion work product, which reflects an attorney's "mental impressions, conclusions, opinions, or legal theories," *SEC v. Roberts*, 254 F.R.D. 371, 376 (N.D. Cal. 2008) (citing Fed. R. Civ. P 26(b)(3)(B)), is "accorded an almost absolute protection from discovery." *Sporck*, 759 F. 2d at 315-16. This is "because any slight factual content that such items may have is generally outweighed by the adversary system's interest in maintaining the privacy of an attorney's thought processes and in ensuring that each side relies on its own wit in preparing their respective cases." *Id.* at 316. Accordingly, opinion work product is discoverable *only* in the rare instance where an attorney's "mental impressions are at issue in a case and the need for the material is compelling." *Holmgren v. State Farm Mutual Auto Ins. Co.*, 976 F. 2d 573, 577 (9th Cir. 1992); *accord Roberts*, 254 F.R.D. at 376; *Upjohn Co. v. U.S.*, 449 U.S. 383, 401 (1981) (opinion work product "cannot be disclosed simply on a showing of substantial need and inability to obtain the equivalent without undue hardship.").

"Ordinary" work product is that which does not reveal the mental impressions, conclusions, opinions or legal theories of counsel. Ordinary work product is also protected from discovery, unless the party seeking disclosure demonstrates both that (1) it has a "substantial need for the materials to prepare its case" and (2) it "cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. Proc. 26(b)(3)(A)(ii); *In re Grand Jury Subpoena*, 357 F.3d 900, 906 (9th Cir. 2004).

a.   <u>Defendants' Translations Prepared In Anticipation Of Litigation Reflect Opinion Attorney Work Product, And Are Therefore Absolutely Protected From Disclosure.</u>

Opinion work product includes materials that would reveal counsel's "legal strategy, intended lines of proof [and] his evaluation of the strengths and weaknesses of his case." *Sporck*, 759 F 2d at 316; *see also Connolly Data Systems, Inc. v. Victor Technologies, Inc.*, 114 F.R.D. 89, 96 (S.D. Cal. 1987) (the opinion work product doctrine bars discovery of "the facts to which an attorney appeared to attach significance or any other matter that reveals an attorney's mental impressions, theories, conclusions or opinions concerning the case").

*Sporck* is the leading case regarding the protection of opinion work product based on an attorney's selection of documents. There, the court held that defense counsel's "selection and compilation" of documents "in preparation for pretrial discovery" constituted opinion work product, noting that "[i]n selecting and ordering a few documents out of thousands, counsel could not help but reveal important aspects of his understanding of the case." 759 F.2d at 315-316; *accord Shelton v. American Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986) ("We hold

**SheppardMullin**
Hon. Charles A. Legge
January 31, 2012
Page 5

that where, as here, the deponent is opposing counsel and has engaged in a selective process of compiling documents from among voluminous files in preparation for litigation, the mere acknowledgment of the existence of those documents would reveal counsel's mental impressions, which are protected work product.").

The vast majority of courts, including Judge Illston in the pending *TFT-LCD* antitrust litigation, have reached the same conclusion as *Sporck*, holding that an attorney's selection of documents in preparation for litigation—including for purposes of translation into another language—reflect the attorney's ***opinion*** work product, and are thus absolutely protected from discovery. *See, e.g.*, Scarborough Decl., Ex. A (*In re: TFT-LCD (Flat Panel) Antitrust Litig.*, Case No. M:07-cv-01827-SI, Docket No. 1493 (January 21, 2010)) at 1 ("With regard to those translations that were prepared at the direction of counsel for Toshiba, LG, Sharp, and Chi Mei, the Court agrees with the Special Master that those translations constitute opinion work product."); *In re Application For An Order For Judicial Assistance*, 244 F.R.D. 434, 441 (N.D. Ill. 2007) ("The Court now similarly holds that because McDonald's translated documents were created at the direction of attorneys in anticipation of litigation, and thus the elements of the work-product doctrine are satisfied, those documents are properly protected. The motion to compel this category of documents is denied."); *Sedlacek v. Morgan Nitney Trading Group, Inc.*, 795 F. Supp. 329, 331-32 & n. 1 (C.D. Cal. 1992) (the *Sporck* "rule prohibits discovery which would indicate the selection process employed by counsel because the mere listing of documents evidences the strategy and legal opinions of counsel."); *United States v. Bagley*, 212 F.R.D. 554, 563-64 (C.D. Cal. 2003) (selection of documents by counsel in preparation for litigation is opinion work product); *Laxalt v. McClatchy*, 116 F.R.D. 438, 444 (D. Nev. 1087) ("By revealing the fact that the deponents' knowledge of a certain document exists only in that they were shown the document by defendants' counsel, significant trial strategy could be revealed as in *Sporck*"); *Central Valley Chrysler-Jeep v. Witherspoon*, 2006 WL 2600149, at *3 (E.D. Cal. Sept. 11, 2006) ("Discovery of an attorney's selection and compilation of documents is prohibited to the extent it would reveal an attorney's legal strategy, his intended lines of proof, his evaluation of the strengths and weaknesses of his case, and the inferences he draws from interviews of witnesses."); *Johnson v. Ocean Ships, Inc.*, 2006 WL 2166192, at *3 (W.D. Wash. July 3 1, 2006) (defense counsel's selection of documents in preparing affirmative defenses "reveals defense counsel's mental impressions, is work product and so is privileged."); *see also James Julian, Inc. v. Raytheon Co.*, 93 F.R.D. 138, 144 (D. Del.1982) (document binder compiled by counsel undiscoverable as opinion work product because it revealed counsel's subjective selection process).

As this case law underscores, and contrary to plaintiffs' assertion, there is nothing "speculative" about the status of defendants' translations as reflecting opinion work product. Defense counsel have reviewed hundreds of thousands of documents in connection with this litigation. Defense counsel carefully considered the potential significance of the contents of foreign-language documents, and then identified and isolated only a tiny fraction for translation. Compelling defendants to produce these translations would reveal the documents defense counsel have deemed most important, and would effectively hand plaintiffs a roadmap to defense

## SheppardMullin

Hon. Charles A. Legge
January 31, 2012
Page 6

counsel's strategic thinking regarding the strengths and weaknesses of their respective cases. These are precisely the types of "mental impressions, theories, conclusions or opinions concerning the case" that the opinion work product doctrine is designed to protect. *Connolly*, 114 F.R.D. at 96.

Plaintiffs completely ignore *Sporck* and its progeny, and instead focus on a handful of scattered district court opinions that either contain no analysis, ignore the well-established distinction between opinion and ordinary work product, or are inapposite. Plaintiffs rely heavily, just as the plaintiffs did in the *TFT-LCD* litigation before Judge Illston, on *In re Air Crash Disaster Near Warsaw, Poland*, 1996 WL 684434 (E.D.N.Y. Nov. 19, 1996). While that case adopted, with no analysis, the minority view that the translations at issue were ordinary rather than opinion work product, it also recognized that an attorney's selection of documents will constitute opinion work product as long as the risk of exposing counsel's thought processes is more than merely "speculative." *Id.* at *2. Here, defendants rely not on speculation but on the specific facts attested to in the accompanying attorney declarations. As summarized above, defense counsel selected only a small fraction of their produced foreign language documents for full or partial translation, based on their opinions about the significance of those documents to key issues in this litigation. Producing these translations would thus reveal counsel's opinion work product. Indeed, as the *Sporck* court observed, "in a case such as this, involving extensive document discovery, the process of selection and distillation is often more critical than pure legal research." 759 F.2d at 316.

Two other cases cited by plaintiffs simply ignore established principles of work product protection. *Pabst Licensing GmbH Patent Litig.*, 2001 WL 797315 (E.D. La. July 12, 2001) at *23-24, contains no reasoning in support of its conclusion that requiring the plaintiff in that case to obtain translations of 17 pages of documents would be an "undue burden," and fails even to acknowledge the distinction between opinion and ordinary work product, tacitly assuming that production of the translations at issue could be compelled based on a showing of "substantial need" and "undue hardship." *In re Certain Microlithographic Machines*, U.S.I.T.C. Inv. No. 337-TA-468, 2002 WL 1809398 (U.S. International Trade Commission June 11, 2001) is a non-precedential order by an administrative law judge that simply gets the law wrong, holding that the translations at issue were *per se* discoverable because the underlying foreign-language documents were discoverable—a novel proposition that entirely ignores the concepts of opinion and ordinary attorney work product.

The remaining cases relied upon by plaintiffs are simply inapposite. In *Contretas v. Isuzu Motors*, 1999 WL 33290667, at *2 (W.D. Tex. April 2, 1999) the court acknowledged that "federal courts have long recognized that an attorney's selection and ordering of documents may be protected work product," but held that this principle was inapplicable because defense counsel had not in fact had any input in selecting the documents to be translated. *Howes v. Med. Components, Inc.*, 698 F.Supp. 574, 581 (E.D. Pa. 1988) did not involve an attorney's selection of documents for translation in connection with litigation, but rather a patent attorney's English summaries for his client of proceedings before the Japanese Patent Office.

## SheppardMullin

Hon. Charles A. Legge
January 31, 2012
Page 7

In short, under Fed. R. Civ. P. 26(b)(3)(B), the Court "must protect against disclosure" of the opinion work product reflected in defendants' translations, and should deny plaintiffs' motion to compel on that basis alone.

### b. Even if Defendants' Translations Were Only "Ordinary" Work Product, Plaintiffs Cannot Demonstrate a Substantial Need, Nor Undue Hardship.

Plaintiffs do not dispute that defendants' translations are entitled to some level of work product protection. Instead, they (incorrectly) assert that defendants' translations reflect only "ordinary," rather than "opinion" work product. As plaintiffs concede, however, even if that were true, the translations would still be completely protected from discovery unless plaintiffs make two separate, essential showings: (1) that they have a "substantial need for [defendants' translations] to prepare [their] case"; and (2) that they "cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii). Plaintiffs do not even try to demonstrate "substantial need," and their bare assertions of "undue hardship" are baseless and inaccurate.

First, as noted, Rule 26 requires plaintiffs to demonstrate a "substantial need" for defendants' translations in order "*to prepare [their] case.*" *Id.* (emphasis added). Plaintiffs do not even attempt to make this showing. Instead, they argue that they need defendants' translations to avoid the "expense, inconvenience and delay" of translating the underlying documents themselves. Pltf.'s Mot. at 5. But this is not a showing of substantial need; it is an assertion of burden—a distinct requirement under Rule 26. Simply put, plaintiffs have no need for defendants' translations, much less a substantial need, because they are fully capable of translating the foreign-language documents produced in this case on their own. Indeed, plaintiffs state that they have already retained "a number of attorneys who are fluent in the several different languages at issue in this case to review and identify foreign language documents for translation." Pltf.'s Mot. at 5. Plaintiffs can obtain what they seek by simply having this team of attorneys do the work they have been retained to do. This dooms any showing of substantial need, and with it plaintiffs' motion.

Second, even if plaintiffs could overcome the "substantial need" requirement, their baseless assertions of burden do not demonstrate that requiring plaintiffs' counsel to do their own translations work would be an "undue hardship." Plaintiffs begin by asserting, without any basis, that defendants have already translated an "enormous number of foreign documents." Pltf.'s Mot. at 5. As set forth in the attorney declarations accompanying this opposition, this is just errant conjecture. The translations at issue represent but a tiny fraction of the foreign-language documents produced by defendants in this litigation. Similarly, Plaintiffs try to claim that, without defendants' translations, they will be forced to "translate[] millions of pages." *Id.* This is absurd. Plaintiffs already have retained a team of attorneys qualified to review and identify foreign language documents for translation. *Id.* There is thus no reason for plaintiffs to first translate all foreign-language documents into English and then review them. In any event,

**SheppardMullin**
Hon. Charles A. Legge
January 31, 2012
Page 8

even if it were plaintiffs' burden to undertake such an effort, defendants' comparatively small set of translations would provide plaintiffs little relief.

Plaintiffs next attempt to rely on a single inflated cost and time estimate they received for translation services in the LCD antitrust litigation in 2009. This three-year-old estimate, which plaintiffs apparently have not attempted to update, unreasonably assumed that each translated document would have 250 words per page, based on plaintiffs' provision of a single sample document to a single translation firm, Geotext Translations, Inc. *See* Scarborough Decl., Ex. B (Oct. 5, 2009 Letter from Steve Walsh, Geotext Translations, Inc. to Andrew Kingsdale at 1) ("Based on the sample document that you sent me, we estimate there to be approximately 250 English words per page."). The estimate thus does not account for the fact that the vast majority of the documents produced by defendants in this CRT litigation are emails, presentations, and other documents not written in standard prose, which contain many fewer than 250 words per page. In addition, at the time of plaintiffs' request for an estimate in 2009, Geotext lacked the capacity to take on plaintiffs' proposed translation project, inflating Geotext's time and cost predictions. *See id.* at 2 (claiming that Geotext would need to initiate a "major recruitment effort" to "identify and build" a team of Korean translators because Geotext lacked sufficient managerial and support resources to handle plaintiffs' proposed project; "[i]n addition, we would need to hire support staff and project managers dedicated strictly to this project."). Plaintiffs could have obtained an accurate—and dramatically lower—time and cost estimate by simply selecting a translations firm (or firms) with capacity to do the work requested, and by providing those translators with a reasonable words per page estimate.

Plaintiffs conclude by framing their motion as an effort at "avoiding the additional discovery and motion practice involved in trying to reconcile conflicting translations," because production of defendants' translations supposedly would further the goal of having "one translation" for each underlying foreign-language document. Pltf.'s Mot. at 6. But this claim is belied by the fact that plaintiffs have not, and almost certainly would not, stipulate to the accuracy of defendants' translations, nor forego obtaining their own competing translations of the same underlying documents in the likely event that they disagree with some aspect of defendants' translation. Moreover, as noted, all of defendants' translations are uncertified, rough and preliminary translations prepared for the convenience of defense counsel to facilitate the provision of legal advice to their clients, not evidentiary purposes. Thus, even if produced, these unofficial, often incomplete, sometimes inaccurate translations would not be admissible, as plaintiffs have previously conceded, and could not possibly serve as the "one translation" for a given foreign-language document in this case. *See* Scarborough Decl., Ex. C (Plaintiffs' brief in Opposition to Motion to Compel Production of Chunghwa translations, at 8) (uncertified translations "are not admissible evidence"); *see also N.L.R.B. v. Doral Bldg. Serv., Inc.*, 666 F.2d 432, 435 (9th Cir. 1982) (defendant could not cross-examine witnesses using "unofficial" and "unverified" English translations; hearing should have been stayed until official translation could be prepared); *ICE Corp. v. Hamilton Sundstrand, Inc.*, 2008 WL 4290940, at *2 (D. Kan. Sept. 10, 2008) (excluding "uncertified translation"); *Prudential Ins. Co. of America v. Buenviaje,*

**SheppardMullin**

Hon. Charles A. Legge
January 31, 2012
Page 9

2002 WL 433137, at *2 (N.D. Ill. Mar. 20, 2002) ("unauthenticated translations" inadmissible as evidence in support of motion for summary judgment).

    Finally, plaintiffs' claimed motivation to expeditiously resolve translation issues in this litigation—with this motion as the purported vehicle for doing so—rings hollow. Since defendants' motion to compel Chunghwa to produce the translations it provided to plaintiffs well over a year ago, defendants have been clear in their willingness to negotiate an efficient protocol governing the creation and use of translations in this litigation. Yet plaintiffs have never made a proposal on any such protocol, or even initiated a meet and confer to discuss one. Instead, it was defendants that prepared a translations protocol, closely modeled after the order in place in the *TFT-LCD* litigation, which they shared with plaintiffs in draft a week before the last hearing with Your Honor on January 19. *See* Scarborough Decl., Ex. D (Draft Case Management and Discovery Protocol, proposed for discussion on January 12, 2012, at Part XV, pp. 13-15). Plaintiffs have yet to respond to this proposal. While defendants' draft protocol may not be the perfect solution, it does present a workable framework for managing the translation process predictably and cost effectively, with a clear path toward the goal of "one [certified and admissible] translation." If plaintiffs are serious about their stated goal of avoiding needless disputes and uncertainty on translations issues, they should be focusing on finalizing a translations protocol rather than attempting to appropriate defendants' protected work product.

    For all of these reasons, plaintiffs' motion to compel should be denied in full.

    Respectfully submitted,

    */s/ Michael W. Scarborough*

    Michael W. Scarborough

    for SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

W02-WEST:5DYB1\404512431.4

cc: All Counsel via ECF