SHEPPARD MULLIN RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
GARY L. HALLING, Cal. Bar No. 66087
JAMES L. McGINNIS, Cal. Bar No. 95788
MICHAEL W. SCARBOROUGH, Cal. Bar No. 203524
Four Embarcadero Center, 17th Floor
San Francisco, California  94111-4106
Telephone:      415-434-9100
Facsimile:      415-434-3947
E-mail:         ghalling@sheppardmullin.com
                jmcginnis@sheppardmullin.com
                mscarborough@sheppardmullin.com

Attorneys for Defendants
SAMSUNG SDI AMERICA, INC.,
SAMSUNG SDI CO., LTD.,
SAMSUNG SDI (MALAYSIA) SDN. BHD.,
SAMSUNG SDI MEXICO S.A. DE C.V.,
SAMSUNG SDI BRASIL LTDA.,
SHENZHEN SAMSUNG SDI CO., LTD. and
TIANJIN SAMSUNG SDI CO., LTD.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Case No. 07-5944 SC |
| | MDL No. 1917 |
| This Document Relates to: | **DECLARATION OF MICHAEL W. SCARBOROUGH IN SUPPORT OF SAMSUNG SDI DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF TRANSLATIONS** |
| ALL ACTIONS | |

I, MICHAEL W. SCARBOROUGH, do hereby declare:

1.      I am an attorney licensed to practice law in the State of California and in the United States District Court for the Northern District of California.  I am a partner with the firm of Sheppard, Mullin, Richter and Hampton LLP ("Sheppard Mullin"), counsel of record for defendants Samsung SDI America, Inc., Samsung SDI Co., Ltd., Samsung SDI (Malaysia) Sdn. Bhd., Samsung SDI Mexico S.A. de C.V., Samsung SDI Brasil Ltda., Shenzen Samsung SDI Co., Ltd., and Tianjin Samsung SDI Co., Ltd. (collectively "SDI") in this matter.  I make this declaration in support of defendants' opposition to plaintiffs' motion to compel production of translations.  If called as a witness, I could, and would, testify to the matters set forth in this declaration of my own personal knowledge.

2.      I have been a member of the team representing SDI in this civil litigation since 2007.  As part of my representation of SDI, I have participated in and supervised the collection, review, analysis and production of documents produced by SDI in this litigation.

3.      Many of the documents collected by SDI for purposes of this litigation are either partially or completely in the Korean language.  Thousands of such documents exist in SDI's production of more than 200,000 pages in this litigation.

4.      Neither SDI nor Sheppard Mullin has translated all or even most of the Korean-language documents in SDI's production.  Rather, from this production, a team of in-house SDI and outside Sheppard Mullin attorneys have, to date, carefully selected for translation less than 400 documents based on their potential significance to this litigation.  The work of these attorneys in selecting documents for translation involved legal analysis and judgment.

5.      None of the translations created or commissioned by SDI or Sheppard Mullin is certified, and none were intended to be official translations.  More than 90% of the translations were done either by bilingual outside or inside counsel, not by outside vendors.  These translations were prepared as rough and preliminary translations for the convenience of SDI's legal team to facilitate the provision of legal advice to SDI regarding this litigation.  In addition, many

of these translations are incomplete, and I am informed and believe that some translations may be inaccurate in certain respects.

6.     Attached hereto as Exhibit "A" is a true and correct copy of the Order Granting in Part and Denying in Part Direct Plaintiffs' Objections to Special Master's Report and Recommendation Regarding Translations and Adopting Report and Recommendation, entered by the Honorable Susan Illston in *In re: TFT-LCD (Flat Panel) Antitrust Litig.*, Case No. M:07-cv-01827-SI on January 21, 2010 as Docket Number 1493.

7.     Attached hereto as Exhibit "B" is a true and correct copy of a letter dated October 5, 2009 from Steve Walsh of Geotext Translations, Inc. to Andrew Kingsdale, submitted by the plaintiffs in support of their motion to compel production of defendants' translations in *In re: TFT-LCD (Flat Panel) Antitrust Litig.*, Case No. M:07-cv-01827-SI.

8.     Attached hereto as Exhibit "C" is a true and correct copy of the October 15, 2010 letter brief submitted by plaintiffs in this litigation to the Special Master in opposition to defendants' motion to compel production of translations created by defendant Chunghwa.

9.     Attached hereto as Exhibit "D" is a true and correct copy of the draft Case Management and Discovery Protocol proposed by defendants in this litigation for purposes of discussion with plaintiffs on January 12, 2012.  Part XV, at pages 13-15, pertains to a proposed protocol for the creation and use of certified translations in this litigation.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

DATED:  January 31, 2012

By     _____*/s/ Michael W. Scarborough*_____
                MICHAEL W. SCARBOROUGH

-2-

# Exhibit A

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

IN RE: TFT-LCD (FLAT PANEL) ANTITRUST LITIGATION

_____/

This Order Relates to:

ALL CASES

_____/

No. M 07-1827 SI

MDL. No. 1827

**ORDER GRANTING IN PART AND DENYING IN PART DIRECT PLAINTIFFS' OBJECTIONS TO SPECIAL MASTER'S REPORT AND RECOMMENDATION REGARDING TRANSLATIONS; ADOPTING REPORT AND RECOMMENDATION**

On January 21, 2010, the Court heard argument on the direct purchaser plaintiffs' objections to the Special Master's December 14, 2009 Report and Recommendation Re: Direct Purchaser Plaintiffs' and Indirect Purchaser Plaintiffs' Motion to Compel Production of Translations. Pursuant to Pretrial Order No. 4, the Court reviews the Special Master's conclusions of law *de novo* and factual findings for clear error.

With regard to those translations that were prepared at the direction of counsel for Toshiba, LG, Sharp, and Chi Mei, the Court agrees with the Special Master that those translations constitute opinion work product. *See Sporck v. Peil*, 759 F.2d 312, 315-16 (3d Cir. 1985). For those translations that were not sent to the Department of Justice, such as those prepared by the Toshiba entities, there has been no waiver of the attorney work product protection. As to those translations that were provided to the Department of Justice, even if there was a waiver, plaintiffs are nevertheless not entitled to those translations because the May 27, 2008 Joint Recommendation and Order re Stay of Discovery prohibits all discovery that "refer, reflect or relate to any party's or witness' communications with the United States . . . ." Docket No. 631 ¶ 3. Accordingly, the Court DENIES the direct purchaser plaintiffs'

United States District Court
For the Northern District of California

1    objections as to translations prepared at the direction of counsel for Toshiba, LG, Sharp, and Chi Mei

2    (Docket No. 1431) and ADOPTS the Report and Recommendation (Docket No. 1420) insofar as it

3    relates to those translations.

4         With regard to translations, if any, that were prepared by Samsung, Hitachi, AU Optronics,

5    HannStar, Chunghwa Picture Tubes, Epson, and Sanyo, there has been no showing that the translations

6    were prepared at the direction of counsel.  To the extent that any of these defendants provided

7    translations to the Department of Justice, discovery of those translations would be barred by the May

8    27, 2008 order.  However, if these defendants possess translations that were not provided to the

9    Department of Justice, such translations are discoverable absent a showing that they are protected as

10   attorney work product.  Accordingly, as to each of the defendants Samsung, Hitachi, AU Optronics,

11   HannStar, Chunghwa Picture Tubes, Epson, and Sanyo, the Court GRANTS plaintiffs' motion and

12   orders that any such translations be produced, unless within 15 days of the filing date of this order, such

13   defendant files a declaration with this Court (1) stating a sufficient factual basis for any assertion of

14   attorney work product, and (2) showing good cause why the factual basis for an assertion of privilege

15   was not made before Judge Smith in the first instance or in opposing the direct purchaser plaintiffs'

16   motion in this Court.  If any defendant files such a declaration, direct purchaser plaintiffs may file a

17   response within 5 days, and the Court will take the matter under submission.

19        **IT IS SO ORDERED.**

21   Dated: January 21, 2010

                                    SUSAN ILLSTON
                                    United States District Judge

2

# Exhibit B



**GEOTEXT**
Translations, Inc.

Monday, October 05, 2009

Andrew Kingsdale
Lieff, Cabraser, Heimann & Bernstein
Embarcadero Center West 275 Battery Street, 30th Floor
San Francisco, CA 94111-3339

### Korean/Japanese/Chinese Translation Estimate

Dear Mr. Kingsdale:

Thank you again for reaching out to us regarding your project. As I understand it, you are expecting to receive approximately 100,000 pages of documents in multiple languages that will require certified translations. Based on the sample document that you sent me, we estimate there to be approximately 250 English words per page and therefore approximately 25 million words for translation.

Given the anticipated volume, we are pleased to offer you the following discounted per-word rates:

| Language | Standard Service | Expedited |
|----------|------------------|-----------|
| Korean | $0.25 | $0.30 |
| Japanese | $0.25 | $0.30 |
| Chinese | $0.25 | $0.30 |

For 100,000 pages the following is our total cost estimate at each level of service:

**Standard Service: $6,250,000**
**Expedited Service: $7,500,000**

For certification, we charge on an hourly basis and we are pleased to offer discounted hourly rates of $80 for standard service and $95 for expedited service. We estimate the total number of hours to edit these documents for certification to be 19,000 hours. The following is our cost estimate for Standard and Expedited Service:

**Standard: $1,520,000**
**Expedited: $1,805,000**

New York  259 West 30th Street, 17th Floor, New York, NY 10001, U.S.A. tel 212.631.7432 fax 212.631.7778
San Francisco  220 Montgomery Street, 3rd Floor, San Francisco, CA 94104, U.S.A. tel 415.676.9500 fax 415.520.0525
London  107-111 Fleet Street, London EC4A 2AB, United Kingdom tel +44.(0)20.7936.9002 fax +44.(0)20.7990.9909
Hong Kong  20th Floor, Central Tower, 28 Queen's Road, Central, Hong Kong tel +852.2159.9143 fax +852.3010.0082
translations@geotext.com  I  www.geotext.com

For a project of this size, a major recruitment effort would need to be made in order to identify and build our team of technical Korean translators.  In addition, we would need to hire support staff and project managers dedicated strictly to this project.  As such, we estimate that managing a project of this size would take between 12-18 months.

These rates are inclusive of several value-adding services:

- Initial translation performed by professional translators with requisite subject matter expertise.
- Editing – complete review and edit performed by translators equally qualified to those working on the initial translations.
- Formatting – standard formatting to match the original document.
- Proofreading.
- Glossary implementation and development.  We create and distribute project-specific glossaries to our translators and expand these glossaries throughout the translation process.  Terminology will, of course, be subject to your approval and updated based on your feedback.  Glossaries help ensure that your terminology preferences are consistently implemented across all translations.
- End-to-end project management.

Please note that we also offer a range of cost-saving strategies such as summary translation, on-site document review, screening for duplicates, and revisions of similar documents.  For these services, and post-editing of machine translation files, we would be pleased to offer you discounted hourly rates of $80 for standard turnaround and $95 for expedited turnaround.

I look forward to assisting you with this project.  Please let us know if you would like to proceed.

If you have any questions at all, please don't hesitate to ask.

Best regards,

Steve Walsh
West Coast Client Manager

# Exhibit C

**SAVERI & SAVERI, INC.**
706 SANSOME STREET
SAN FRANCISCO, CALIFORNIA 94111
TELEPHONE: (415) 217-6810
TELECOPIER: (415) 217-6813

*Trump Alioto Trump & Prescott*
ATTORNEYS LLP
2280 Union Street
San Francisco, California 94123
(415) 563-7200
FAX (415) 346-0679

October 15, 2010

Honorable Charles A. Legge
JAMS
Two Embarcadero Center, Suite 1500
San Francisco, CA 94111

      **Re:**    *In Re: Cathode Ray Tube (CRT) Antitrust Litigation,* **MDL 1917 (N.D. Cal.) – Opposition Letter Brief Re: Motion To Compel Discovery With Respect To Chunghwa Translations**

Your Honor:

      **I.**    **Introduction**

      The Direct Purchaser Plaintiffs ("DPPs") and Indirect Purchaser Plaintiffs ("IPPs") (collectively "Plaintiffs") respectfully submit this letter brief in opposition to the letter brief filed on September 28, 2010 ("Mot.") by Defendants in support of their motion to compel defendant Chunghwa Picture Tube Company ("Chunghwa") to produce "All translations of DOCUMENTS that [Chunghwa has] provided to Plaintiffs." Chunghwa produced certain translations to Plaintiffs pursuant to its settlement agreements with them and its cooperation obligations under the Antitrust Criminal Penalty Enhancement and Reform Act of 2004 ("ACPERA"). This response is supported by the accompanying declarations of R. Alexander Saveri ("Saveri Decl.") and Mario Alioto ("Alioto Decl.").[1]

      Defendants' arguments fail for several reasons. *First,* they ignore the common interest shared by Chunghwa and Plaintiffs. Contrary to Defendants' assertion, Chunghwa and Plaintiffs are not now (and were not at the time the translations were disclosed) adversaries. Rather, they share a common interest in (1) effectuating the terms of their settlement agreements – which require Chunghwa to cooperate confidentially with Plaintiffs in the prosecution of this case against Defendants; and (2) fulfilling Chunghwa's cooperation obligations under ACPERA. Under the common interest doctrine, Defendants' first argument – that Plaintiffs lack standing to assert a work product objection because Chunghwa has no objection to producing the translations – is simply incorrect as a matter of law. Defendants' assertion that "Chunghwa has stated that it has no objection to

---

[1] Although still a nominal defendant, Chunghwa is not a moving party. Plaintiffs' will use the term "Defendants" herein to refer to all defendants except Chunghwa. Defendants agreed to extend the time to oppose their motion until October 15, 2010. Plaintiffs agreed that Defendants' reply brief would not be due until October 27, 2010.

Hon. Charles Legge
October 15, 2010
Page 2

producing the requested translations" is also incorrect. Consistent with Plaintiffs' position, Chunghwa has objected to producing the translations. Similarly, Defendants' argument that the work product privilege was waived when Chunghwa provided the translations to Plaintiffs also ignores that disclosure of the translations by Chunghwa to Plaintiffs was made in the context of their common interests – *i.e.,* it was a critical and valuable part of the cooperation bargained for by Plaintiffs in the settlements. Denying Plaintiffs work product protection for the translations would also contravene the strong policy favoring settlement as well as the policies underlying ACPERA, and provide Defendants with an undeserved windfall worth millions of dollars.

*Second,* as Judge Illston held in the *TFT-LCD* litigation, the stay orders in this litigation preclude discovery of the translations.

*Third,* Defendants do not and cannot argue that, if the translations are protected work product, there is good cause for their production under Federal Rule of Civil Procedure 26(b)(3)(A)(ii).

*Finally*, if the Court is inclined to grant Defendants' motion, Plaintiffs submit that it should also order the production of all translations in Defendants' possession, and order the parties to agree on a translation protocol. Plaintiffs therefore cross-move that Defendants be compelled to produce all translations of documents responsive to Plaintiffs' document requests (or already produced) in their possession.

## II.    Statement of Facts

As the Court is aware, DPPs and IPPs have reached settlements with Chunghwa. This motion stems directly from the principal consideration received by Plaintiffs in connection with the settlements – Chunghwa's agreement to cooperate with Plaintiffs in the prosecution of this case against Defendants, including specifically, Chunghwa's agreement to provide professional translations of certain documents in its possession that would have otherwise cost Plaintiffs millions of dollars to obtain.

There are English translations of 768 multipage Chinese language documents at issue. Each translated document was selected by Chunghwa's attorneys from among thousands of other documents. The translations were performed by professional translators but are not "certified." Plaintiffs are informed that Chunghwa spent "millions" of dollars to produce these translations. All of the original documents on which the translations are based were produced to all parties by Chunghwa on March 8, 2010. All of the Chunghwa translations were produced to the Department of Justice ("DOJ") by Chunghwa pursuant to confidentiality agreements as part of the cooperation required by its leniency application. Saveri Decl., ¶¶ 3, 4, 5; Alioto Decl., ¶¶ 3, 4, 5.

Along with Chunghwa's monetary payment and its other cooperation, the translations were a critical part of the consideration received by Plaintiffs in the settlements

and were specifically bargained for. For example, the settlement agreement between DPPs and Chunghwa provides for production of English translations of documents evidencing collusive meetings or other conspiratorial conduct known to Chunghwa. Saveri Decl. ¶¶ 2, 6. The settlement also provides that material and information provided by Chunghwa to Plaintiffs shall be maintained in confidence, to the extent allowed by law. Saveri Decl., ¶ 7. The IPP settlement with Chungwha contains similar provisions. Alioto Decl., ¶ 2, 6, 7.

The translations were provided to Plaintiffs only after the settlement agreements were executed. Saveri Decl., ¶ 8; Alioto Decl., ¶ 8.

The parties have met and conferred on translation issues on a number of occasions, culminating in a final meet and confer on September 14, 2010. These issues have included, in addition to the Chunghwa translations, a host of other issues which have or will likely arise relating to foreign language documents which will play a central role in this case. For example, Plaintiffs believe that Defendants have translated large quantities of relevant documents, some of which have been transmitted to the Department of Justice ("DOJ"). In addition, some defendants responded to interrogatories by referring to the contents of foreign language documents. Samsung SDI referred to thousands of pages of Korean documents in response to one of Plaintiffs interrogatories. Saveri Decl., ¶ 10, 11.

Plaintiffs believe that these issues would be most efficiently and fairly addressed collectively at an early point in the case as has occurred in other cases. In particular, Plaintiffs believe, to the extent they are required to produce the Chunghwa translations, Defendants should be required to produce their translations. Defendants have refused to produce any translations of foreign language documents in their possession based on work product and joint defense privilege grounds, or to include the Chunghwa translation issue in a discussion of a translation protocol. Instead, they have insisted on immediate production of the Chunghwa translations. Saveri Decl., ¶¶ 10, 11; Alioto Decl. ¶¶ 10.

III.   **Argument**

   a.  **The "Common Interest" Doctrine Renders Defendants' Arguments Meritless.**

The work product privilege embodied in Fed. R. Civ. Proc. 26(b)(3) protects from disclosure materials produced by a party or its attorneys or representatives "in anticipation of litigation." Defendants do not contend that the translations were not prepared "in anticipation of litigation." Rather, they argue only that (1) the privilege belongs to Chunghwa which has chosen not to assert it; and (2) in any event, Chunghwa waived the privilege when it provided the translations to Plaintiffs. Both arguments are incorrect.

The common interest doctrine (sometimes also referred to as the "common interest privilege" or "community of interest privilege"), is an extension of the attorney client and work product privileges and operates to preserve the privilege despite the disclosure of

Hon. Charles Legge
October 15, 2010
Page 4

confidential information to third parties "whenever multiple clients share a common interest about a legal matter." *In re Grand Jury Subpoenas*, 902 F.2d 244, 249 (D.C. Cir. 1990) ("*Grand Jury Subpoenas*"), quoting *United States v. Schwimmer*, 829 F. 2d 237, 243-44 (2d Cir. 1989). Courts have applied the common interest rule in a wide variety of circumstances:

> Recognizing that it is often preferable for co-defendants represented by different attorneys in criminal proceedings to coordinate their defense, courts developed the joint-defense privilege. In its original form, it allowed the attorneys of criminal co-defendants to share confidential information about defense strategies without waiving the privilege as against third parties. Moreover, one co-defendant could not waive the privilege that attached to the shared information without the consent of all others. Later, courts replaced the joint-defense privilege, which only applied to criminal co-defendants, with a broader one that protects all communications shared within a proper "community of interest," whether the context be criminal or civil..... Thus, the community-of-interest privilege allows attorneys representing different clients with similar legal interests to share information without having to disclose it to others. It applies in civil and criminal litigation, and even in purely transactional contexts.

*In re Teleglobe Communications Corp.,* 493 F.3d 345, 363-64 (3d Cir. 2007) (footnotes omitted). The doctrine does not require that each participant be a party to pending litigation and applies even where communicating parties have adverse interests:

> The common interest privilege does not require a complete unity of interests among the participants. The privilege applies where the interests of the parties are not identical, and it applies even where the parties' interests are adverse in substantial respects. . . . The privilege applies even where a lawsuit is foreseeable in the future between the codefendants.

*In re Mortgage & Realty Trust,* 212 B.R. 649, 653 (C.D. Cal. 1997) (citations omitted).

The rule applies fundamentally to prevent waiver, and has often been applied with regard to the work product privilege. *United States v. American Telephone and Telegraph Company,* 642 F.2d 1285, 1298-99 (D.C. Cir. 1980) ("*AT&T*"). Indeed, the rule has a broader and more lenient application with regard to the work product privilege than the attorney client privilege, because its purpose is to encourage effective trial preparation by preventing an adversary from taking advantage of that preparation, rather than protecting confidentiality. *Id.* at 331. Waiver of the work product privilege is found only if disclosure to a third party substantially increases the likelihood of its dissemination to litigation adversaries. *Id.* at 331 ("[a] disclosure made in the pursuit of such trial preparation, and not inconsistent with maintaining secrecy against opponents, should be allowed without waiver of the privilege."); *Aronson v. McKesson HBOC,* 2005 WL 934331 *6 (N.D. Cal. 2005) ("*Aronson*") (same, citing cases). Courts have found a "common interest" preventing

Hon. Charles Legge
October 15, 2010
Page 5

waiver in a wide variety of circumstances. *See e.g., AT&T,* 642 F. 2d at 1298 (listing cases); *Stix Prods., Inc. v. United Merchants & Mfgrs., Inc.,* 47 F.R.D. 334, 338 (disclosure between parties one of whose interests in prospective patent litigation may turn on the success of the other party in a separate patent litigation); *Nidec Corporation v. Victor Co. of Japan,* 2007 WL 2156256 *2 No. C-05-0686 SBA (EMC) (N.D. Cal. July 26, 2007) (disclosure of litigation abstract prepared by counsel to prospective buyers).

In *Aronson,* the court held that production of work product to a government agency pursuant to a confidentiality agreement did not waive the privilege, even where the government agency was "adverse." *See Aronson ,* 2005 WL 934331 *10 ("[t]he [work product materials] have resulted in significant benefits to the government: permitting the government to focus its investigation on the primary wrongdoers, filtering documents produced to the SEC, and permitting the government to deploy fewer employees to investigate McKesson. Therefore, taking into consideration the benefit to the public of permitting disclosure of work product to the government and in light of the cases cited above rejecting selective waiver but endorsing the preservation of work product protection under negotiated confidentiality with the government, the court finds that the facts presented by this case warrant the conclusion that McKesson did not waive work product protection . . . ")

Finally, waiver of the common interest privilege requires consent of all parties who share the privilege. *In re Imperial Corporation of America,* 179 F.R.D. 286, 289 (S.D. Cal. 1998) ("*Imperial*"); *Grand Jury Subpoenas,* 902 F. 2d at 248; *Killebrew v. City of Greenwood, Mississippi,* 1997 WL 208140 *2, No. 4:95CV355-B-B, (N.D. Miss. April 11, 1997).

### i. Plaintiffs and Chunghwa Share Common Interests.

There is no question that Plaintiffs and Chunghwa share common interests sufficient to mandate the application of the common interest doctrine. First, they share a "common interest" in effectuating their settlement agreements. Both agreements expressly require Chunghwa to provide confidential information regarding the alleged conspiracy, including translations. Both require that the information be maintained confidentially. Chunghwa's cooperation, including the monetary value of the translations, was a material part of the consideration received by Plaintiffs pursuant to both agreements. The disclosure of the translations to Plaintiffs was made only after the agreements were executed, and pursuant to the express provisions therein. Saveri Decl., ¶ 8; Alioto Decl. ¶ 8.

Additionally, Chunghwa seeks the benefits accruing to a leniency applicant under ACPERA. To receive the benefits of ACPERA, including substantially reduced civil liability, Chunghwa is required to cooperate with Plaintiffs by, *inter alia,* "providing a full account to [Plaintiffs] of all facts" relating to the conspiracy, including "all documents or other items potentially relevant to the civil action." 15 U.S.C. §213. The plain intent of ACPERA is to create incentives for members of price-fixing conspiracies to turn on their

Hon. Charles Legge
October 15, 2010
Page 6

co-conspirators and "rat them out." Once Chunghwa elected to do so and settled with Plaintiffs, it, like Plaintiffs, became an adversary of the Defendants, with an interest in the successful prosecution of Plaintiffs' case against them. Indeed, although Chunghwa has resolved its differences with Plaintiffs, it will likely face actions filed on behalf of opt-out plaintiffs; the liability reducing provisions of ACPERA therefore remain important.

Moreover, ACPERA mandated cooperation is manifestly meant to facilitate civil recoveries against non-cooperating defendants, not to benefit them. To hold that a leniency applicant who attempts to satisfy its cooperation obligations by providing work product to Plaintiffs waives the privilege would contravene the purposes of ACPERA (and reduce a Plaintiff's incentive to settle) by chilling effective means of cooperation and providing the benefits of that cooperation to non-cooperating defendants.

Plainly, therefore, at the time the translations were disclosed, Chunghwa and Plaintiffs had a "sufficient commonality of interests" that the common interest privilege may be asserted. *Imperial*, 179 F.R.D. at 289.

### ii. Plaintiffs Have Standing to Assert the Work Product Privilege.

In light of the existence of the common interest privilege, Defendants' argument that Plaintiffs lack standing to assert the work product privilege is incorrect. As noted above, the common interest privilege belongs to both parties to the communication. *See id.* ("waiver of the privilege requires the consent of all parties who share the privilege.") The cases upon which defendants rely are inapposite. Neither involved the common interest doctrine. *Novak v. Capital Mgmt. & Develop. Corp.*, 241 F.R.D. 389, 394 (D.D.C. 2007); *Green v. Sauder Moldings, Inc.*, 223 F.R.D. 304, 306-07 (E.D. Va. 2004).

### iii. Defendants Mischaracterize Chunghwa's Position.

Defendants' assertion that "Chunghwa has stated that it has no objection to producing the requested translations" is also not correct. Chunghwa objected to Defendants' discovery and refused to produce the translations. Chunghwa Discovery Response to Request No. 1 (pp. 3-4). Chunghwa takes the position that it will not disclose the translations absent a court order or agreement of the parties. Chunghwa's position is consistent with Plaintiffs' position and its obligation not to disclose the contents of its communications with Plaintiffs. Chunghwa Letter Brief dated October 15, 2010 [Dkt. 785]. For this reason as well, Defendants' assertion that there is no party before the court with standing to assert the work product privilege is incorrect.

Hon. Charles Legge
October 15, 2010
Page 7

### iv. Disclosure of the Translations to Plaintiffs Did Not Waive the Work Product Privilege.

Defendants' assertion that Chunghwa's disclosure of the translations to Plaintiffs waived the work product privilege also fails to account for the common interest rule. As noted above, the essence of the rule is that it prevents a waiver of privilege where disclosure is made to a third party. *See e.g., AT&T,* 642 F.2d at 1298-99.

The cases relied upon by Defendants are inapposite. *In re Steinhardt Part.,* 9 F.3d 230, 235, 236 (2d Cir. 1993) did not involve an assertion of "common interest" and the Court explicitly reserved that issue. *U.S. v. Bergonzi,* 216 F.R.D. 487, 497 (N.D. Cal. 2003), *appeal dismissed,* 403 F.3d 1048 (9th Cir. 2005) ("*Bergonzi*") is also inapposite. *Bergonzi* involved the same materials at issue in *Aronson* but was a criminal case. *See Aronson,* 2005 WL 934331 *10 n. 13 (distinguishing *Bergonzi*). The *Bergonzi* court essentially held that only an "unconditional" confidentiality agreement could prevent waiver. *Bergonzi,* 216 F.R.D. at 496-97. *Aronson* rejected this standard, holding that a confidentiality provision was adequate where the re-disclosure allowed was "no broader than required to make voluntary disclosure by McKesson useful to the government. The re-disclosure provisions are logical preconditions for the government's agreeing to treat the materials as privileged and confidential." *Aronson,* 2005 WL 934331 *10.

Additionally, certain kinds of work product are created not only by the work of attorneys, but also, as here, by the expenditure of money. The hundreds of pages of translations at issue here were created by professional translators at significant cost. The value of the translations was a significant part of the consideration Plaintiffs received in the settlements, in return for the releases of liability provided to Chunghwa. Saveri Decl., ¶¶ 2, 3; Alioto Decl. ¶¶ 2, 3. Because Plaintiffs essentially paid Chunghwa for these translations, just as they would have paid a professional translator, it is appropriate that the work product privilege be maintained. To provide them to Defendants is simply to reward them with a windfall.

### b. The Stay Orders In Place In This Litigation Preclude Discovery of the Chunghwa Translations.

The court has entered three stay orders in this case; each precludes discovery of materials which reflect, refer or relate to communications between defendants and the DOJ. Saveri Decl., exs. 1, ¶ 12 [Dkt. 379]; 2, ¶ 13 [Dkt. 425]; 3, ¶ 14 [Dkt. 590]. The DOJ has repeatedly emphasized its concern in this case that translations provided to it by defendants should not be subject to discovery, and has taken the position, joined by Defendants, that the stay orders preclude discovery of translations in Defendants' possession which have been provided to the DOJ. In the *TFT-LCD* case, Judge Illston held that identical language in a stay order there precluded production of translations pursuant to discovery requests regardless of whether or not the work product privilege had been waived by transmission to the DOJ: "As to those translations that were provided to the Department of Justice, even if

Hon. Charles Legge
October 15, 2010
Page 8

there was a waiver, plaintiffs are nevertheless not entitled to those translations because the May 27, 2008 Joint Recommendation and Order re Stay of Discovery prohibits all discovery that "refer, reflect or relate to any party's or witness' communications with the United States . . ." "Order Granting In Part And Denying In Part Direct Purchaser Plaintiffs To Special Master's Report And Recommendations Regarding Translations; Adopting Report And Recommendations" (Jan. 21, 2010) (Dkt. No. 1493) in *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M: 07-1827 SI (N.D. Cal.) (Saveri Decl., ¶ 16, ex. 5). Because the translations at issue here were provided to the DOJ by Chunghwa, the stay orders in place in this litigation, as in *TFT-LCD,* therefore also preclude production of the Chunghwa translations.

### c.  Defendants' Concede That They Have No "Substantial Need" of the Chunghwa Translations

Defendants do not contend that they are entitled to the translations even if they are subject to the work product privilege on the grounds that they have a "substantial need of the materials" under Fed. R. Civ. Proc. 23(b)(3). Nor can they, for several reasons. First, Defendants have had the original Chinese language version of every translated document in their possession since March, 2010. Saveri Decl., ¶ 4; Alioto Decl. ¶ 4. Second, virtually all defendants have substantial operations in Chinese speaking countries and hundreds if not thousands of Chinese speaking officers and employees. There can be little doubt that Defendants have already analyzed and, to the extent they need them, made their own translations of many, if not all of the translated documents.[2] Third, while made by professional translators, the translations are not admissible evidence in their present form because they have not been certified. While it is possible that some of the translations could become evidence, Plaintiffs submit that it is not appropriate to order their production unless and until there is a translation protocol in place in this case providing for both (1) the efficient resolution of disputes about the accuracy of translations; and (2) the equitable sharing of translation expenses in this case.

### d.  In the Alternative, This Court Should Order Production of Translations By All Parties

In the alternative, if the Court concludes that the translations of the Chunghwa documents are discoverable, Plaintiffs will, of course, produce them. However, if such an order is issued, Plaintiffs should be equally entitled to discover translations of foreign language documents relevant to this case in the possession, custody or control of any defendant.  In stark contrast to the collective Chinese language resources of Defendants, Plaintiffs' primary means to analyze these documents is through the use of expensive

---

[2] To the extent one or more Defendants does not have such Chinese language resources, it is likely that they have obtained translations from other Defendants pursuant to a joint defense agreement, or simply hired their own translators.  Defendants should be required to disclose the extent to which they have translated the Chunghwa documents.

Hon. Charles Legge
October 15, 2010
Page 9

translations. Plaintiffs therefore cross-move to compel such translations, except to the extent such production violates the stay orders.

Moreover, there are other actual (and many more potential) disputes among the parties regarding translations. As noted above, for example, Samsung SDI has responded to certain of Plaintiffs' interrogatories by referring, pursuant to Fed. R. Civ. Proc. 33(d), to thousands of pages of foreign language documents. This is improper and Samsung SDI should be compelled to produce translations of these documents. Plaintiffs respectfully submit that instead of having to deal with piecemeal motions to compel on the discoverability of translations of foreign language documents throughout this case, it would be more useful to develop an early translation protocol governing the use and production of all such translations, and to delay the production of translations until such a protocol is in place. Chief Judge Vaughn Walker recently ordered the parties to develop such a protocol at an early stage in the Optical Disk Drives Antitrust Litigation. Saveri Decl., ¶ 15. The parties in the litigation between Intel and AMD stipulated to such a protocol at an early point. "Stipulation And Order Regarding English Translations" (May 4, 2006) in *In re Intel Microprocessor Antitrust Litig.*, MDL Dkt. No. 05-1717 (JJF) (D. Del.), Saveri Decl., ¶ 17, ex. 6. Plaintiffs believe that it would be efficient for the Special Master to do something similar here.

## IV.    Conclusion

For all the reasons stated above, Plaintiffs respectfully submit that Defendants' motion to compel discovery of the Chunghwa translations should be denied.

Yours sincerely,

/s/ *Guido Saveri*
Guido Saveri
Interim Lead Counsel for the
Direct Purchaser Plaintiffs

/s/ *Mario Alioto*
Mario Alioto
Interim Lead Counsel for the
Indirect Purchaser Plaintiffs

cc: All Counsel via ECF

# Exhibit D

1  **Counsel Listed On Signature Block**

2

3

4

5

6

7

8

9

10

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

11

12

13

| | |
|---|---|
| In re: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Case No. 07-5944 SC |
| | MDL No. 1917 |
| This Document Relates to: | **STIPULATION AND [PROPOSED] ORDER RE DISCOVERY AND CASE MANAGEMENT PROTOCOL** |
| ALL ACTIONS | |

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

STIPULATION AND [PROPOSED] ORDER RE DISCOVERY AND CASE MANAGEMENT PROTOCOL

1    WHEREAS, this litigation has been consolidated and transferred by the Judicial

2    Panel on Multidistrict Litigation to the above-referenced Court for pretrial proceedings;

3    WHEREAS, the Court has appointed Hon. Charles A. Legge (Ret.) to serve as

4    Special Master;

5    WHEREAS, it is in the interests of justice, and consistent with the Federal Rules of

6    Civil Procedure, to adopt procedures to organize discovery and the use of translations and

7    minimize the burdens on the parties in these consolidated cases, all actions treated as

8    "Related Cases" pursuant to Civil L.R. 3-12 that have been or may be filed in this District,

9    and any additional present and future actions transferred to this Court as "tag-along

10   actions" by the MDL Panel pursuant to Rule 7.4 of the Rules of Procedure for the Judicial

11   Panel on Multidistrict Litigation (collectively, the "CRT Cases");

12   IT IS HEREBY STIPULATED AND AGREED, by and between counsel for the

13   undersigned Plaintiffs and Defendants, as follows:

14   **I.**     **NUMBER OF DEPOSITIONS**

15   A.     At least twenty-one (21) days prior to noticing depositions of specific

16   percipient witnesses employed by a particular defendant, direct purchaser plaintiffs,

17   indirect purchaser plaintiffs, individual action plaintiffs, and State Attorneys General shall

18   provide to that defendant group a reasonable list of the persons they propose to depose in

19   the initial round of depositions based on their current knowledge of the discovery record.

20   A defendant group is defined as defendants who are part of the same corporate family.

21   Within fourteen (14) calendar days after service of a list, that defendant group shall

22   respond in writing to the list and advise plaintiffs of any witnesses thereon who defendants

23   believe have no knowledge, or only marginal knowledge, of relevant facts, as well as

24   identify any witnesses who defendants have been informed will assert their Fifth

25   Amendment privilege against compelled self-incrimination.

26   B.     Based on the implementation of the foregoing procedures, the direct

27   purchaser plaintiffs, indirect purchaser plaintiffs, individual action plaintiffs, and State

28

-1-

Attorneys General collectively may depose up to __ percipient witnesses as part of the joint, coordinated discovery in this case, with a maximum of __ depositions for any single defendant group. Defendants may collectively depose each natural person named plaintiff or class representative and up to __ percipient witness of each plaintiff group. A plaintiff group is defined as plaintiffs who are part of the same corporate family. This does not include Rule 30(b)(6) depositions, depositions of third parties, depositions of experts, or depositions of records custodians regarding authentication of documents.

      C.      Direct purchaser plaintiffs and indirect purchaser plaintiffs collectively may take up to 12 hours of 30(b)(6) depositions of each defendant group as part of the joint, coordinated discovery provided that the depositions are in English. Individual Action Plaintiffs collectively may take up to 3 hours of 30(b)(6) depositions as part of the joint, coordinated discovery provided that the depositions are in English. Defendants collectively may take up to 12 hours of 30(b)(6) depositions of each plaintiff group provided that the depositions are in English. If a translator is used during a 30(b)(6) deposition, the rules for increasing deposition time set forth in paragraph II.D below apply. The parties shall meet and confer about 30(b)(6) topics and witnesses. These 30(b)(6) depositions shall not count towards the number of percipient witness depositions in paragraph 1.B.

      D.      The allowance of __ depositions for plaintiffs, and __ depositions per defendant group, are presumptive only. The number of depositions permitted in this litigation may be expanded by stipulation, or upon motion to the Court for good cause. For example, depending on the number, scope and length of Fifth Amendment depositions, plaintiffs could seek additional depositions, or request that Fifth Amendment depositions not count against the allowance. Defendants may oppose any such request on any appropriate ground including the burden of depositions already taken pursuant to this Order and the time spent with any of the Fifth Amendment depositions previously taken.

-2-

1       E.     This order does not limit any party's right to object to or seek a protective

2  order with respect to any deposition noticed in this case. In addition, the presumptive

3  allowance of __ is without prejudice to any party seeking to expand or limit further the

4  number of depositions.

5  **II.**    **DEPOSITION PROCEDURES**

6       A.     All deposition limitations may be modified for good cause or by agreement.

7       B.     Except for depositions of a corporate representative under Fed. R. Civ. P.

8  30(b)(6), no more than one substantive deposition shall be taken on any one day.

9       C.     Depositions jointly noticed by the Direct and Indirect Purchaser Plaintiffs

10  will be limited to 7 hours of direct examination, unless the Parties otherwise agree, or the

11  Court issues an order based on a showing of good cause. In the event the same witness is

12  noticed by both the Direct/Indirect Purchaser Plaintiffs and counsel for any individual

13  Plaintiff and/or any State Attorney General, the deposition will be limited to one and one-

14  half (1 1/2) days of deposition, consecutive when reasonably practicable, with one day (7

15  hours) allocated to the Direct/Indirect Purchaser Plaintiffs for direct examination of any

16  witness who does not require a translator and four (4) hours allocated jointly to the

17  individual Plaintiffs and/or State Attorneys General for direct examination of any such

18  witness. To the extent any defendant cross-notices a deposition first noticed by the

19  Plaintiffs, two additional hours of time shall be provided for further examination by all

20  Plaintiffs collectively. In the event a party or parties cross notices a deposition first

21  noticed by an opposing party, the deposition shall be scheduled for an additional

22  consecutive day of 7 hours allocated to all cross-movants of the cross-noticing side

23  collectively, unless a different arrangement is agreed to by the parties in advance or

24  ordered by the Special Master or the Court for good cause.

25       D.     To the extent a witness requests a translator, the Parties anticipate that the

26  translator will be used either for all of the deposition or for only a small number of

27  questions. To the extent a translator is used for all or nearly all of the deposition, the time

28

-3-

Jan-12 DRAFT FOR DISCUSSION PURPOSES

1   limits set forth in Paragraphs I.C. and II.C above shall be doubled. In all other situations,

2   the Parties will cooperate in good faith to extend the deposition time to account for the use

3   of the translator, guided by the principle that deposition time during which a translator is

4   used should be counted at 50% or one half the actual amounts against the above set limits.

5        E.     A witness may be deposed only once in these proceedings, except if

6   necessary for a witness to revoke an earlier assertion of the Fifth Amendment, by

7   agreement of the Parties, or by order of the Court or the Special Master based on a

8   showing of good cause. This procedure will not affect the rights of a Party to seek to

9   depose as a fact witness an individual who has been previously deposed solely as a

10  corporate representative of a Party designated under Fed. R. Civ. P. 30(b) (6), or of other

11  Parties to object to such depositions. Nor will this procedure affect the rights of a Party to

12  seek a corporate representative deposition under Fed. R. Civ. P 30(b) (6) when the

13  corporate representative has been previously deposed as a fact witness, or of other Parties

14  to object to such depositions.

15  **III.**    **ALLOCATION OF DEPOSITION TIME**

16       A.     Time used by an examining Party shall count against that side's (i.e., Class

17  Plaintiffs', Individual Plaintiffs'/State Attorneys General or Defendants') deposition time,

18  regardless of which Party noticed the deposition. For example, if a lawyer representing

19  Direct Purchaser Plaintiffs asks questions at a deposition noticed by a defendant, that

20  examination time shall count against all class plaintiffs' and individual plaintiffs' and State

21  Attorneys General's deposition time, and vice versa.

22       B.     As to all depositions noticed by Class Plaintiffs, Interim Lead Counsel for

23  the Direct Purchaser Plaintiffs and Interim Lead Counsel for the Indirect Purchaser

24  Plaintiffs shall confer before the deposition to allocate examination time among any such

25  Plaintiffs' counsel intending to participate and ask questions at the deposition. All

26  examination time allocated to the Direct Purchaser Plaintiffs and the Indirect Purchaser

27  Plaintiffs at a deposition shall be allocated to them in equal shares unless otherwise agreed

28                        -4-

1     to by the Interim Lead Counsel for the Direct Purchaser Plaintiffs and the Interim Lead

2     Counsel for the Indirect Purchaser Plaintiffs. Counsel for any Plaintiff objecting to the

3     allocation of examination time among Plaintiffs shall be required to seek relief from the

4     Special Master by means of a teleconference hearing no later than seven (7) days before

5     the date of the deposition.

6           C.     As to depositions noticed by Defendants, or by Individual Plaintiffs, or by

7     States Attorney General, the examination time at any deposition shall be allocated by

8     agreement among that side, based on the allocations set forth above. Counsel for any Party

9     objecting to the allocation of examining time among that side shall be required to seek

10    relief from the Special Master by means of a teleconference hearing no later than seven (7)

11    days before the date of the deposition.

12          D.     To the extent that Class Plaintiffs, Individual Plaintiffs, State Attorneys

13    General, or Defendants cross-notice a deposition, the time needed to conduct any

14    examination under such cross-noticed deposition shall not be deducted from the time of the

15    Party who originally noticed the deposition.

16  **IV.**    **SCHEDULING OF DEPOSITIONS**

17          A.     Counsel for the Direct Purchaser Plaintiffs, the Indirect Purchaser Plaintiffs,

18    Liaison Counsel for the individual Plaintiffs, and counsel for the State Attorneys General,

19    will consult with one another so that, to the extent practicable, depositions can be

20    coordinated as to scheduling, notice and taking. Neither counsel for the Direct Purchaser

21    Plaintiffs, the Indirect Purchaser Plaintiffs, the Individual Plaintiffs, nor the State

22    Attorneys General shall unilaterally take steps to schedule and notice a deposition without

23    consulting in advance with each other. Counsel for the Direct/Indirect Purchaser Plaintiffs

24    will provide reasonable advance notice to Liaison Counsel for the individual Plaintiffs and

25    counsel for the State Attorneys General of any scheduled deposition. The duty to consult

26    in advance is neither intended to give any party or group of parties a veto right over other

27

28                                      -5-

1  parties, nor intended to lessen the previously assigned role of Class Plaintiffs' counsel in

2  co-coordinating this litigation.

3       B.    The defendants will consult with one another so that, to the extent

4  practicable, depositions noticed by the defendants can be coordinated.

5       C.    <u>Required Consultation</u>. Consistent with N.D. Cal. Local Rule 30-1, the

6  noticing party shall confer about scheduling with counsel for the witness, and, to the extent

7  the witness is a current or former employee of any Party, counsel for that Party before

8  noticing any deposition. Counsel for each Party participating in such consultations shall

9  keep that Party's Liaison Counsel apprised of all proposed deposition dates. To the extent

10 the witness is a former employee of any Party and is not currently represented by counsel

11 for that Party, counsel for that Party shall provide in response to a written request from the

12 noticing Party the date of departure and last known address of the former employee.

13      D.    <u>Counsel Responsible for Scheduling</u>. Interim Lead Counsel for Direct

14 Purchaser Plaintiffs and Interim Lead Counsel for the Indirect Purchaser Plaintiffs (in

15 consultation with Class Lead Counsel for any individual Plaintiffs and counsel for any

16 State Attorneys General), and counsel for defendants shall be responsible for scheduling

17 depositions. Plaintiffs' Class Lead Counsel shall keep a master deposition calendar to be

18 updated regularly with any changes as a result of meet and confer efforts regarding

19 scheduling. The master deposition calendar shall be created and updated with all changes

20 made as soon as scheduled. The master deposition calendar shall set forth the deponent's

21 name, affiliation, location of and anticipated length (number of days) of the deposition, the

22 initial examiner, whether it will be videotaped, and whether an interpreter has been

23 requested. Plaintiffs' Class Lead Counsel will send the deposition calendar to all Parties on

24 a weekly basis. Plaintiffs' Class Lead Counsel will also circulate a master exhibit list on a

25 weekly basis to all Parties to facilitate sequential number of exhibits.

26      E.    <u>Deposition Notices</u>. Depositions shall be noticed pursuant to the Federal

27 Rules of Civil Procedure and all notices shall be served on all Parties electronically. Any

28

-6-

1  subpoenas for deposition testimony shall be served on witnesses as required by law, but

2  copies may be served electronically on all Parties. Deposition notices shall have the legal

3  effect of a deposition notice in all CRT Cases.

4  **V.     POSTPONEMENTS**

5  Once a deposition has been scheduled, it shall *not* be taken off calendar, postponed,

6  or rescheduled, except by agreement of the counsel responsible for scheduling as set forth

7  in Paragraph D.5, above, or by other relief obtained from the Special Master or the Court

8  for good cause shown.

9  **VI.    INTERPRETERS AND INTERPRETED TESTIMONY**

10  A.     Requesting an Interpreter. Any Party or witness intending to use an

11  interpreter shall give notice that an interpreter will be required within 10 days of receiving

12  notice of the deposition. The Party requesting an interpreter shall bear the expense of

13  providing an interpreter.

14  B.     Objections. If a "check" interpreter objects to any portion of the official

15  interpretation, the objection shall be stated simply for the record. The interpreter of record

16  need not respond. All questions, answers, and objections shall be interpreted for the

17  witness; however, speaking objections or unnecessary colloquies among counsel are

18  strongly discouraged and may be subject to cost and fee shifting.

19  **VII.   PRE-DESIGNATION OF EXHIBITS**

20  Not later than four business days before a deposition, all Parties intending to

21  examine a deponent may serve via electronic mail a non-binding list of documents (by

22  Bates number) that counsel anticipates using or referring to during the deposition.

23  Examining counsel is not responsible for bringing copies of pre-designated exhibits for

24  other counsel. Any counsel who does not pre-designate documents shall not forfeit the

25  right to use them, but in that case shall bring sufficient copies of such documents to the

26  deposition. Counsel are not obligated to predesignate exhibits. With respect to all exhibits

27  that have been marked and used in a prior deposition in a CRT case, "sufficient copies"

28
-7-

1   shall mean four (4) hardcopies. With respect to any "new" exhibits (i.e. , an exhibit that has

2   not been marked and used in prior deposition in a CRT case), "sufficient copies" shall

3   mean either at least ten (10) hardcopies if the deposition takes place in San Francisco, or at

4   least six (6) hardcopies if the deposition takes place outside of San Francisco. In all

5   events, examining counsel, defending counsel, and all other counsel attending the

6   deposition shall cooperate in good faith so that counsel for each Party attending the

7   deposition will have adequate access during the deposition to any exhibit used by

8   examining counsel during the deposition.

9   **VIII.  PARTICIPATION BY TELECONFERENCE**

10         To minimize travel and related costs, counsel may participate in any deposition by

11   telephone. Counsel intending to do so must notify counsel for the Party that noticed the

12   deposition and counsel for the witness at least 5 days before the date of the deposition.

13   Counsel noticing the deposition shall make arrangements so that a conference call line and

14   a real-time video and text feed are available during the deposition. Examining counsel and

15   counsel intending to participate by phone shall cooperate good faith to facilitate such

16   participation. To facilitate participation by phone, any objection to the form of a question

17   shall be deemed to have been made on behalf of all other Parties.

18   **IX.  NUMBERING OF DEPOSITION EXHIBITS**

19         Each document marked for identification at the depositions shall be numbered with

20   a new exhibit number unless it has previously been marked, in which case the examining

21   attorney will use the previous exhibit number and refer to the document by that number.

22   All exhibits shall be marked sequentially.

23   **X.  CONDUCT OF DEPOSITIONS**

24       A.   Regardless of location, all depositions shall be conducted in accordance with

25   all applicable Federal Rules of Civil Procedure and the Federal Rules of Evidence unless

26   otherwise required by law. All objections shall be stated concisely in a nonargumentative

27   and nonsuggestive manner. Any objection to the form of a question shall be deemed to

28

-8-

1  have been made on behalf of all other Parties. The objection of one counsel to a question

2  need not be repeated by another counsel to preserve that objection on behalf of such other

3  counsel, and counsel shall avoid repeating objections already preserved.

4        B.    The court-reporter service shall maintain a total running time for actual

5  deposition to measure compliance with the time limitations set out in Paragraphs A.3, B.3,

6  and B.4 and the time allocation provisions in Section III.

7  **XI.**    **STANDARD STIPULATION**

8        The following stipulation will apply to all depositions taken in these actions and

9  shall be included in each transcript by the court reporter:

10        1.    Upon completion of the transcription of today's session, the original
transcript shall be sent to counsel for the witness by the court reporter. Counsel shall

11  promptly forward it to the witness for review, correction, and signature under penalty of

12  perjury. Within 30 days of receiving the transcript from the court reporter, the witness's
counsel shall then forward the original transcript plus corrections to the court reporter, who

13  will promptly notify all counsel of its receipt and any changes to testimony made by the

14  witness.

15        2.    If the witness is not represented by counsel, the original transcript will
be sent to the witness by the court reporter. After review, correction, and signature within

16  30 days from the date of receipt, the witness shall return the original transcript to the court

17  reporter, who will notify all counsel of its receipt and any changes to testimony made by
the witness. Any witness who makes changes to his or her deposition transcript must, as

18  required by Federal Rule of Civil Procedure 30(e)(2), sign a statement listing the changes

19  and the reasons for making them.

20        3.    The court reporter will provide the original transcript to the first
examining attorney. If, for any reason, the original is lost, misplaced, not returned, not

21  signed, or unavailable, a certified copy may be used in its place for all purposes.

22  **XII.**    **FIFTH-AMENDMENT ASSERTIONS**

23        A.    Upon receipt of notice that a witness intends to assert the Fifth Amendment,

24  the examining attorneys may submit a list of written questions to the witness to speed up

25  the deposition, delivered no fewer than 5 days before the scheduled deposition. At the

26  deposition, the written questions and any associated documents will be introduced as an

27

28                                        -9-

1  exhibit to the deposition, and the witness shall be asked summarily whether the witness

2  would assert the Fifth Amendment to each of the written questions if they were posed

3  individually. If the answer to the summary question is "yes," the deposition shall last no

4  more than one hour. To the extent that the answer to the summary question is "yes," use of

5  the questions and answers at trial will not be precluded on the basis that the written

6  questions were not asked and answered individually. The use of the written questions and

7  associated documents shall not prevent questions from being asked other than those

8  contained in the written ones subject to the time limits described herein. All objections to

9  written questions submitted to a deponent will be reserved, including objections to form.

10      B.      Any person who at a deposition asserts his or her right under the Fifth

11  Amendment of the United States Constitution not to testify will be bound by that assertion

12  of the privilege and shall not be permitted to testify otherwise unless, not later than 60 days

13  prior to the date set for the close of fact discovery, notice is provided in writing of the

14  intent to revoke the assertion of privilege and the willingness of the person to testify.

15  Upon notice, the revoking deponents will make themselves available for deposition at their

16  expense in San Francisco, California not later than 45 days prior to the close of fact

17  discovery.

18  **XIII. <u>USE OF DEPOSITIONS</u>**

19      The depositions taken by any Party pursuant to this Deposition Protocol may be

20  made available and used in all CRT Cases, and in any substantially similar case not part of

21  this proceeding, such as the case filed by the California Attorney General. In any CRT

22  Case or substantially similar case where a deposition transcript of a witness is made

23  available for use, the witness may not be deposed again on the topics addressed in the

24  deposition. Before a deposition taken pursuant to this Order may be used by any person

25  not part of this proceeding, including the case filed by the California Attorney General,

26  that person must agree either (1) to abide by the terms of the Stipulated Protective Order

27  entered in this proceeding and execute Exhibit A thereto, or (2) to abide by the terms of a

28                                               -10-

1 | substantially similar protective order.

2 | **XIV.  COORDINATION OF DISCOVERY AND INDIVIDUAL ACTIONS**

3 |     A.     As used in this Order, the term. "Individual Action Plaintiff" means any

4 | plaintiff besides the direct purchaser class action plaintiffs and the indirect purchaser class

5 | action plaintiffs, and State Attorneys General.  The term "Individual Actions" means the

6 | actions brought by the Individual Action Plaintiffs transferred to the above-captioned

7 | multidistrict litigation.

8 |     B.     Individual Action Plaintiffs shall select an Individual Action Plaintiff Liaison

9 | Counsel, who will execute the duties described below on behalf of all Individual Action

10 | Plaintiffs. To the extent any Individual Action Plaintiff, including any plaintiff in any

11 | Individual Action joined after entry of this order, does not agree as to which counsel shall

12 | serve as an Individual Action Plaintiff Liaison Counsel, the disputing Individual Action

13 | Plaintiffs shall bring the matter to the Special Master for resolution.

14 |     C.     Discovery in all actions transferred to this MDL proceeding shall be

15 | coordinated.  Interim lead counsel for the putative direct and indirect purchaser classes, in

16 | consultation with liaison counsel for the Individual Action Plaintiffs and any State

17 | Attorney General, shall be responsible for coordination of discovery in all actions

18 | transferred to this MDL proceeding.  The duty to consult with the Individual Action

19 | Plaintiffs and any State Attorney General is neither intended to give any party or group of

20 | parties a veto right over the other parties, nor intended to lessen the previously assigned

21 | role of Class Plaintiffs' counsel in co-coordinating this litigation.

22 |     D.     All plaintiffs' counsel and defendants' counsel shall engage in their best

23 | efforts to conduct discovery efficiently and without duplication. Interim lead counsel for

24 | the putative direct and indirect purchaser classes shall maintain a single electronic

25 | document depository for documents relevant to common issues to the direct and indirect

26 | class plaintiffs. The reasonable costs of document production and the document depository

27 | shall be shared among class plaintiffs.

28 |

-11-

E.   Plaintiffs' interim lead counsel, Individual Action Plaintiff Liaison Counsel, and State Attorneys General shall consult in good faith in an effort to propound joint written discovery requests, but to the extent separate written discovery is served, plaintiffs shall not duplicate interrogatories, requests for admission, and requests for documents. Likewise, Defendants shall consult in good faith in an effort to propound joint written discovery requests, but to the extent separate written discovery is served, defendants shall not duplicate interrogatories, requests for admission, and requests for documents. Duplication is a proper objection to written discovery requests. This paragraph in no way prejudices or diminishes individual action plaintiffs' right to serve their own written discovery requests regarding issues that are not common to any other plaintiff or group of plaintiffs, in the event that the parties are unable to propound joint written discovery after consulting in good faith.

F.   All discovery previously provided by the Defendants to plaintiffs in the above-captioned action shall be usable in the Individual Actions and State Attorney General actions by the Defendants, the Individual Action Plaintiffs, or the State Attorneys General during discovery, in pretrial motions, at trial, or for any other purpose to the same degree as if the discovery was provided in response to requests propounded by the Individual Action Plaintiffs.  Plaintiffs' co-lead counsel will provide the previously-produced discovery responses and documents to Individual Action Plaintiff Liaison Counsel at Individual Action Plaintiffs' expense.  Plaintiffs' Lead Counsel will also provide the previously produced discovery responses and documents to each State Attorney General at each State Attorney General's expense.  Individual Action Plaintiff Liaison Counsel shall be responsible for distributing the discovery responses and documents to each Individual Action Plaintiff, at that Individual Action Plaintiffs expense. This provision is without prejudice to the Individual Action Plaintiffs' or State Attorneys General's ability to propound additional discovery on the Defendants.  The Individual Action Plaintiffs may propound additional discovery on the Defendants provided that the

-12-

Individual Action Plaintiffs (1) demonstrate good cause as to why the information they seek is not contained in the documents previously produced in MDL No. 1917; and (2) identify the information they seek as specifically as possible. In propounding any additional discovery requests, the Individual Action Plaintiffs (not the undersigned Defendants) bear the burden of determining what was previously produced in MDL No. 1917.

G. Defendants may refer to their previously produced discovery in response to any discovery propounded by the Individual Action Plaintiffs or State Attorneys General if, and to the extent that, the previously-produced materials are responsive to the Individual Action Plaintiffs' or State Attorney General's discovery requests. Defendants do not waive (a) any previously lodged objection to the production of documents, or (b) any objection to the admissibility or use of any document for any purpose except an objection based on the fact that the defendants produced the documents in the first instance to other plaintiffs in the above-captioned action. Any defendant's objection to the admissibility or use of any document by any party shall apply equally to the Individual Action Plaintiffs' and State Attorneys General's admission or use of that document.

H. Any discovery requests, including written discovery, deposition notices, or subpoenas served in this MDL proceeding, shall be served on plaintiffs' interim lead and liaison counsel, each State Attorney General, and liaison counsel for the Individual Action Plaintiffs, who shall be the only plaintiffs' counsel who must be served with discovery requests and responses, and on counsel for each defendant.

I. Defendants, the Individual Action Plaintiffs, and the State Attorneys General waive the production of initial disclosures in any Individual Action.

## XV. TRANSLATIONS

A. Agreed Translators. Within __ days after entry of this Order the parties shall agree on three translators or translation firms, who shall be professional translators accredited or certified by, or hold a certificate in translation from a program approved by,

-13-

1   the American Translator's Association or another member organization of the Federation

2   Internationale de Traducteurs, with at least five years of experience translating documents

3   from the relevant foreign language to English. These Agreed Translators shall execute

4   Exhibit A to the Stipulated Protective Order. If the parties cannot agree on translators,

5   they shall submit the matter to the Special Master.

6        B.    Documents that previously have been submitted for certified translation need

7   not be retranslated or reformatted to conform with this Order, but shall be subject to the

8   objection provisions of Paragraph XV.G.

9        C.    A party submitting a document for translation shall have the following

10   portions translated, unless there is good reason not to and the party gives notice to other

11   parties. For correspondence and memos, the entire basic document should be translated.

12   For e-mails, the entire e-mail string should be translated. Calendars, notebooks, annual

13   reports, financial statements and regulatory filings need not be translated in their entirety.

14   Attachments need not be translated. Any party may request the translation of additional

15   parts of a document, or all or part of an attachment, at its own expense.

16        D.    Document translations shall bear the same Confidential or Highly

17   Confidential designation as the original. Each page shall be Bates numbered and marked

18   "Translation". Because languages occupy different amounts of space to say the same

19   thing, it is impracticable for the translation to be paginated the same way as the original.

20   Unless otherwise agreed, document translations shall use the same Bates number as the

21   original, followed by .01, .02, etc. for any additional pages required for the translated text,

22   with each Bates number to end in "E" to denote that it is a translation.

23        E.    A translation may not contain words that are not direct translations of the

24   text of the original document (e.g., notes from the translator or counsel). Words in the

25   translation must appear in the same form (e.g., bold, italics, underlined) as in the original

26   document. However, translator notations such as "original text is in English," "original

27   text is handwritten," or "untranslatable symbol" may be included in brackets.

28

-14-

F.     All documents submitted for translation after _____ shall be submitted to an Agreed Translator.  The party submitting the document shall pay for the translation, and shall be billed for it directly by the Agreed Translator.  The Agreed Translators shall not disclose to any other party or counsel the identity of documents they have been asked to translate, and the parties need not give notice to any other party that they have submitted a document for translation.

G.     All translations prepared by an Agreed Translator shall be presumed to be accurate.  Objections to the accuracy of such translations shall be asserted within 30 days after the document is first offered as an exhibit on a motion, or, if the document is first used at a deposition, within 30 days after the final transcript of the deposition is provided to the deponent for correction.  Objections shall state the specific inaccuracies of the translation and offer an alternative translation of the portions of the document objected to. If the parties are unable to resolve the dispute, it shall be submitted to the Special Master, or by the Court if raised in connection with a dispositive motion.  If no objection is made to a translation within the 30-day limit, it shall be deemed accurate, and no objection to admissibility on grounds of inaccuracy of the translation will be permitted.

H.     The procedures set forth in this Section XV shall apply to all translated documents in this case.  The parties may agree on adjustments to this protocol to promote efficiency or fairness, and advise the Special Master accordingly.  Notwithstanding the provisions of this Order, the Court retains discretion to alter the treatment and admissibility of translated documents at trial if necessary.

## XVI.  PRESERVATION OF DEFENSES

Any Party's agreement to and appearance on this stipulation does not constitute a waiver of any defense or right not specifically addressed. Defendants preserve all defenses, including all defenses under Federal Rule of Civil Procedure 12.

-15-

The undersigned parties jointly and respectfully request that the Court enter this stipulation as an order.

Dated: _____, 2012

By:  */s/ Mario N. Alioto*
MARIO N. ALIOTO, Bar No. 56433
malioto@tatp.com
LAUREN C. RUSSELL, Bar No. 241151
laurenrussell@tatp.com
**TRUMP, ALIOTO, TRUMP & PRESCOTT, LLP**
2280 Union Street
San Francisco, California 94123
Telephone: (415) 563-7200
Facsimile: (415) 346-0679

*Interim Lead Counsel for the Indirect Purchaser Plaintiffs*

By:  */s/ Guido Saveri*
GUIDO SAVERI (41059)
guido@saveri.com
R. ALEXANDER SAVERI (173102)
rick@saveri.com
CADIO ZIRPOLI (179108)
cadio@saveri.com
**SAVERI & SAVERI INC.**
706 Sansome Street
San Francisco, California 94111
Telephone:  (415) 217-6810
Facsimile:  (415) 217-6813

*Interim Lead Counsel for the Direct Purchaser Plaintiffs*

-16-

By: __/s/ Gary L. Halling_____
GARY L. HALLING (SBN 66087)
Email: ghalling@sheppardmullin.com
JAMES L. MCGINNIS (SBN 95788)
Email: jmcginnis@sheppardmullin.com
MICHAEL SCARBOROUGH (SBN 203524)
Email: mscarborough@sheppardmullin.com
**SHEPPARD, MULLIN, RICHTER &**
**HAMPTON LLP**
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone: 415-434-9100
Facsimile: 415-434-3947

*Attorneys for Defendants*
*Samsung SDI America, Inc,.*
*Samsung SDI Co., Ltd.,*
*Samsung SDI (Malaysia) Sdn. Bhd.,*
*Samsung SDI Mexico S.A. de C.V.,*
*Samsung SDI Brasil Ltda.,*
*Shenzen Samsung SDI Co., Ltd., and*
*Tianjin Samsung SDI Co., Ltd.,*

By: __/s/ David L. Yohai_____
STEVEN A. REISS (*pro hac vice*)
Email: steven.reiss@weil.com
DAVID L. YOHAI (*pro hac vice*)
Email: david.yohai@weil.com
DAVID E. YOLKUT (*pro hac vice*)
Email: david.yolkut@weil.com
**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, New York 10153-0119
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007

GREGORY D. HULL (SBN 57367)
Email: greg.hull@weil.com
**WEIL, GOTSHAL & MANGES LLP**
201 Redwood Shores Parkway
Redwood Shores, California 94065-1175
Telephone: (650) 802-3000

-17-

Facsimile: (650) 802-3100
JEFFREY L. KESSLER (*pro hac vice*)
Email: jkessler@dl.com
A. PAUL VICTOR (*pro hac vice*)
Email: pvictor@dl.com
EVA W. COLE (*pro hac vice*)
Email: ecole@dl.com
**DEWEY & LEBOEUF LLP**
1301 Avenue of the Americas
New York, NY 10019
Telephone: (212) 259-8000
Facsimile: (212) 259-7013

*Attorneys for Defendants Panasonic*
*Corporation of North America, MT Picture*
*Display Co., Ltd., and Panasonic Corporation*
*(f/k/a Matsushita Electric Industrial Co., Ltd.)*


By: ___/s/ Ian Simmons___
IAN SIMMONS (*pro hac vice*)
Email: isimmons@omm.com
BEN BRADSHAW (SBN 189925)
Email: bbradshaw@omm.com
**O'MELVENY & MYERS LLP**
1625 Eye Street, NW
Washington, DC 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414

*Attorneys for Defendants Samsung Electronics*
*Co., Ltd. and Samsung Electronics America,*
*Inc.*


By: ___/s/ Kent M. Roger___
KENT M. ROGER (SBN 95987)
Email: kroger@morganlewis.com
MICHELLE PARK CHIU (SBN 248421)
Email: mchiu@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
One Market, Spear Street Tower
San Francisco, CA 94105-1126

-18-

STIPULATION AND [PROPOSED] ORDER RE DISCOVERY AND CASE
MANAGEMENT PROTOCOL

Telephone: (415) 442-1000
Facsimile: (415) 442-1001

***Attorneys for Defendants Hitachi, Ltd., Hitachi Asia, Ltd., Hitachi America, Ltd., Hitachi Electronic Devices (USA), Inc. and Hitachi Displays, Ltd.***


By: _____/s/ Ronald C. Redcay_____
RONALD C. REDCAY (SBN 67236)
Email: ronald.redcay@aporter.com
**ARNOLD & PORTER LLP**
777 South Figueroa Street, Forty-Fourth Floor
Los Angeles, California 90017-5844
Telephone: 213.243.4000
Facsimile: 213.243.4199

SAMUEL R. MILLER (SBN 66871)
Email: srmiller@sidley.com
MARIE L. FIALA (SBN 79676)
Email: mfiala@sidley.com
RYAN M. SANDROCK (SBN 251781)
Email: rsandrock@sidley.com
ROBERT B. MARTIN, III (SBN 235489)
Email: rbmartin@sidley.com
**SIDLEY AUSTIN LLP**
555 California Street, 20th Floor
San Francisco, California 94104
Telephone: (415) 772-1200
Facsimile: (415) 772-7400

***Attorneys for Defendants LG Electronics, Inc., LG Electronics USA, Inc. and LG Electronics Taiwan Taipei Co., Ltd.***


By: _____/s/ Christopher M. Curran_____
CHRISTOPHER M. CURRAN (*pro hac vice*)
Email: ccurran@whitecase.com
GEORGE L. PAUL (*pro hac vice*)
Email: gpaul@whitecase.com
LUCIUS B. LAU (*pro hac vice*)
Email: alau@whitecase.com
**WHITE & CASE LLP**
701 Thirteenth Street, N.W.
Washington, DC 20005
Telephone: (202) 626-3600
Facsimile: (202) 639-9355

-19-

DRAFT FOR DISCUSSION PURPOSES

1

*Attorneys for Defendants Toshiba Corporation,*
2 *Toshiba America Electronic Components, Inc.,*
*Toshiba America Information Systems, Inc.,*
3 *Toshiba America, Inc., Toshiba America*
*Consumer Products, L.L.C., Toshiba America*
4 *Consumer Products, Inc., and Toshiba Display*
*Devices (Thailand) Company, Ltd.*

5

6

By:   /s/ Andreas Stargard
7 JOHN M. TALADAY *(pro hac vice)*
Email: john.taladay@bakerbotts.com
8 ANDREAS STARGARD *(pro hac vice)*
Email: andreas.stargard@bakerbotts.com
9 **BAKER BOTTS LLP**
1299 Pennsylvania Avenue, NW
10 Washington D.C. 2004-2400
Telephone: (202) 639-7700
11 Facsimile: (202) 639-7890

12 *Attorneys for Defendants Koninklijke Philips*
*Electronics N.V. and Philips Electronics North*
13 *America Corporation*

14

15

By:   /s/ Terry Calvani
16 TERRY CALVANI *(pro hac vice)*
Email: terry.calvani@freshfields.com
17 **FRESHFIELDS BRUCKHAUS DERINGER**
**US LLP**
18 701 Pennsylvania Ave NW Suite 1600
Washington D.C. 20004-2692
19 Telephone: (202) 777-4500
Facsimile: (202) 777-4555
20

*Attorneys for Beijing-Matsushita Color CRT*
21 *Company, Ltd.*

22

23

By:  /s/ Philip J. Iovieno
24 PHILIP J. IOVIENO
E-mail: piovieno@bsfllp.com
25 ANNE M. NARDACCI
E-mail: anardacci@bsfllp.com
26 BENJAMIN D. BATTLES
bbattles@bsfllp.com
27

28

-20-

DRAFT FOR DISCUSSION PURPOSES

**BOIES, SCHILLER & FLEXNER LLP**
10 North Pearl Street, 4th Floor
Albany, NY 12207
Telephone: (518) 434-0600
Facsimile: (518) 434-0665

WILLIAM ISAACSON
E-mail: wisaacson@bsfllp.com
**BOIES, SCHILLER & FLEXNER LLP**
5301 Wisconsin Aven. NW, Suite 800
Washington, D.C. 20015
Telephone: (202) 237-2727
Facsimile: (202) 237-6131

*Attorneys for Plainitffs Electrograph Systems, Inc. and Electrograph Techonologies, Corp.*

**PURSUANT TO STIPULATION, IT IS SO ORDERED.**

DATED:_____          _____

Hon. Charles A. Legge
United States District Judge (Ret.)
Special Master

DATED:_____          _____

Hon. Samuel Conti
United States District Judge

-21-

STIPULATION AND [PROPOSED] ORDER RE DISCOVERY AND CASE
MANAGEMENT PROTOCOL