Mario N. Alioto (56433)
Lauren C. Russell (241151)
TRUMP, ALIOTO, TRUMP & PRESCOTT LLP
2280 Union Street
San Francisco, CA 94123
Telephone: 415-563-7200
Facsimile: 415- 346-0679
Email: malioto@tatp.com;
laurenrussell@tatp.com

***Interim Lead Counsel for the
Indirect Purchaser Plaintiffs***

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. CV-07-5944-SC<br><br>MDL No. 1917 |
| This Document Relates to:<br><br>All Indirect Purchaser Actions | **INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS  ACTION SETTLEMENT WITH DEFENDANT CHUNGHWA PICTURE TUBES, LTD.; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing Date:  March 15, 2012<br>Time: 2:00 p.m.<br>JAMS: Two Embarcadero Center, Suite 1500<br>Judge:  Hon. Samuel Conti<br>Special Master: Hon. Charles A. Legge (Ret.) |

1

**TABLE OF CONTENTS**

2

3   NOTICE OF MOTION AND MOTION ........................................................................1

4   MEMORANDUM OF POINTS AND AUTHORITIES ...............................................1

5   I.      INTRODUCTION ..............................................................................................1

6   II.     PROCEDURAL HISTORY ...............................................................................2

7   III.    SUMMARY OF SETTLEMENT TERMS ........................................................5

8           A.      Proposed Settlement.............................................................................5

9           B.      Consideration .......................................................................................5

10          C.      Release .................................................................................................6

11  IV.     ARGUMENT ....................................................................................................6

12          A.      Class Action Settlement Procedure......................................................6

13          B.      The Notice Plan Comports with Due Process.......................................7

14          C.      The Court Should Finally Certify the Settlement Class........................7

15          D.      The Settlements Should be Finally Approved ....................................10

16          E.      Objections ..........................................................................................12

17          F.      Exclusions ..........................................................................................15

18  V.      CONCLUSION ...............................................................................................15

19

20

21

22

23

24

25

26

27

28

i

1

**TABLE OF AUTHORITIES**

2

**CASES**

3

*Amchem Prods., Inc. v. Windsor*
    521 U.S. 591 (U.S. 1997) ................................................................. 8, 9

4

5

*Amone v. Aveiro*
    Civ. No. 04-00508 ACK-BMK, 2007 U.S. Dist. LEXIS 63631
    at **6-7 (D. Haw. Aug. 27, 2007) ........................................... 12, 13

6

7

*Brown v. Wal-Mart Stores, Inc.*
    Ill. Cir. Ct. Fourteenth Judicial Cir., No. 01 L 85, 2,5. *Id.*¶ 4, Ex. 3 ........................................... 14

8

*Carnegie v. Household Int'l Inc.*
    376 F.3d 656, 660 (7th Cir. 2004) ................................................... 8

9

10

*Churchill Village, L.L.C. v. General Electric*
    361 F.3d 566, 575 (9th Cir. 2004) ................................................. 12

11

*Cotton v. Hinton*
    559 F.2d 1326, 1330 (5th Cir. 1977) ............................................. 12

12

13

*Ellis v. Naval Air Rework Facility*
    87 F.R.D. 15, 18 (N.D. Cal. 1980), *affd,* 661 F.2d 939 (9th Cir. 1981) ....................................... 10

14

*Feder v. Elec. Data Sys. Corp.*
    248 Fed. Appx. 579, 580 (5th Cir. 2007) .................................. 12, 13

15

16

*Fisher Bros. v. Mueller Brass Co.*
    630 F. Supp. 493, 499 (E.D. Pa. 1985) ......................................... 11

17

*Hanlon v. Chrysler Corp.*
    150 F.3d 1011 (9th Cir. 1998) .................................................. 7, 12

18

19

*In re Heritage Bond Litig.*
    MDL No. 02-ML-1475 DT, 2005 U.S. Dist. LEXIS 13555,
    at *10 (C.D. Cal. June 10, 2005) .................................................. 11

20

21

*In re Indus. Diamonds Antitrust Litig.*
    167 F.R.D. 374, 383 (S.D.N.Y. 1996) ............................................. 9

22

*In re IPO Sec. Litig.*
    226 F.R.D. 186, 190, 195 (S.D.N.Y. 2005) ...................................... 8

23

24

*In re Linerboard Antitrust Litig.*
    203 F.R.D. 197, 206 (E.D. Pa. 2001) .............................................. 8

25

*In re Linerboard Antitrust Litig.*
    292 F. Supp. 2d 631, 643 (E.D. Pa. 2003) ...................................... 1

26

27

*In re Linerboard Antitrust Litig.*
    321 F. Supp. 2d 619, 629 (E.D. Pa. 2004) .................................... 12

28

*In re Master Key Antitrust Litig.*
528 F.2d 5, 12 n.11 (2d Cir. 1975) ............................................................................................. 9

*In re NASDAQ Market-Makers Antitrust Litig.*
169 F.R.D. 493, 517-18 (S.D.N.Y. 1996) .................................................................................... 9

*In re NASDAQ Market-Makers Antitrust Litig.*
187 F.R.D. 465, 475 (S.D.N.Y. 1998) ...................................................................................... 11

*In re Paine Webber Partnerships Litig.*
171 F.R.D. 104, 125 (S.D.N.Y. 1997), *aff'd* 117 F.3d 721 (2d Cir. 1997) ............................... 11

*In re Smokeless Tobacco Cases I, II*
San Francisco Superior Court, JCCP Nos. 4250, 4258, 4259, 4260 ........................................ 13

*In re Static Random Access Memory (SRAM) Antitrust Litig.*
264 F.R.D. 603 (N.D. Cal. Nov. 25, 2009) ......................................................................... 8, 9, 10

*In re Sumitomo Copper Litig.*
189 F.R.D. 274, 283 (S.D.N.Y. 1999) ...................................................................................... 11

*Knight v. Red Door Salons, Inc.*
No. 08-01520 SC, 2009 U.S. Dist. LEXIS 11149,
at *8 (N.D. Cal. Feb. 2, 2009) ................................................................................................... 10

*M Berenson Co., Inc. v. Faneuil Hall Marketplace, Inc.*
671 F. Supp. 819, 822 (D. Mass. 1987) .................................................................................... 11

*Nat'l Rural Telecomms. Coop. v. DIRECTV Inc.*
221 F.R.D. 523, 528 (C.D. Cal. 2004) ................................................................................. 11, 12

*Officers for Justice v. Civil Serv. Comm'n*
688 F.2d 615 (9th Cir. 1982) ............................................................................................... 10, 11

*Pallas v. Pacific Bell*
No. C-89-2373 DLJ, 1999 WL 1209495, at *8 (N.D.Cal. 1999) ............................................. 12

*Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives and Composites, Inc.*
209 F.R.D. 159, 167 (C.D. Cal. 2002) ........................................................................................ 9

*Torrisi v. Tucson Elec. Power Co.*
8 F.3d 1370, 1375 (9th Cir. 1993) ............................................................................................ 10

*Trew v. Volvo Cars of N. Am., LLC*
No. Civ. S-05-1379 RRB EFB, 2007 U.S. Dist. LEXIS 55305,
at *7 (E.D. Cal. July 31, 2007) ................................................................................................. 13

*Van Bronkhorst v. Safeco Corp.*
529 F.2d 943, 950 (9th Cir. 1976) ............................................................................................ 10

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*
396 F.3d 96, 113-14 (2d Cir. 2005) ............................................................................................ 7

iii

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT – Master File No. CV-07-5944-SC

**FEDERAL STATUTES**

15 U.S.C. § 1 .................................................................................................................3, 8

28 U.S.C. § 1292(b) ............................................................................................................3

**FEDERAL RULES**

Fed. R. Civ. P. 23 .......................................................................................................... 7, 8

   Rule 23(a) ................................................................................................................ 7, 8, 9

   Rule 23(a)(3) ....................................................................................................................9

   Rule 23(a)(4) ....................................................................................................................9

   Rule 23(b) ...............................................................................................................7, 8, 9

   Rule 23(b)(3) ............................................................................................................. 7, 9

   Rule 23(e) .................................................................................................................. 6, 7

   Rule 23(e)(5) ................................................................................................................ 12

**OTHER AUTHORITIES**

4 Newberg on Class Actions

   §§ 11.22, *et seq.* ............................................................................................................ 6

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT – Master File No. CV-07-5944-SC

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on March 15, 2012 at 2:00 p.m., before the Honorable Charles A. Legge (Ret.) at the office of JAMS, Two Embarcadero Center, Suite 1500, San Francisco, California, the Indirect-Purchaser Plaintiffs ("Plaintiffs") will move the Court for entry of an Order finally approving the settlement with Chunghwa Picture Tubes, Ltd.

The motion is brought pursuant to Federal Rules of Civil Procedure 23(e) and is based upon supporting Memorandum of Points and Authorities filed concurrently with this Notice; the supporting Declaration of Mario N. Alioto filed concurrently with this Notice; supporting Declaration of Joseph M. Fisher filed concurrently with this Notice; the records pleadings and papers filed in this action, including the Court's Order preliminarily approving the settlement with Chunghwa Picture Tubes, Ltd. (DE 993) and upon such argument as may be presented to Special Master Legge at the hearing on this motion.

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT – Master File No. CV-07-5944-SC

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.    INTRODUCTION

3

4

5

6

7

Indirect Purchaser Plaintiffs ("Plaintiffs") submit this Memorandum in support of final approval of their class action settlement with defendant Chunghwa Picture Tubes, Ltd. ("CPT"). This Memorandum is submitted pursuant to the Court's Order granting preliminary approval of the proposed settlement entered August 9, 2011 ("Preliminary Approval Order") (Docket Entry ("DE") 993).[1]

8

9

10

11

12

The Settlement Agreement obligates CPT to pay $10 million in exchange for a release of the class members' antitrust and consumer-protection claims. CPT has made this payment and Plaintiffs have placed it in an escrow account where it is earning interest. CPT's sales remain in the case for purposes of computing Plaintiffs' damages against the remaining non-settling Defendants. Alioto Prelim. App. Decl. ¶ 12.

13

14

15

16

17

18

19

20

CPT also agreed to cooperate with Plaintiffs in the prosecution of this action by providing information relating to the existence, scope, and implementation of the conspiracy alleged in the Complaint. *Id.*¶ 13. CPT's early cooperation proved invaluable, as it gave Plaintiffs detailed information about the conspiratorial "Glass Meetings," including the identities of the participants, the time, place and agenda of such meetings, as well as the type of price-fixing agreements reached at such meetings. *Id.* ¶ 13. Courts generally approve so-called "ice-breaker" settlements such as this one, because of the many benefits to the Class. *See In re Linerboard Antitrust Litig.,* 292 F. Supp. 2d 631, 643 (E.D. Pa. 2003).

21

22

23

24

25

This Court provisionally certified the Settlement Class, preliminarily approved the Settlement and ordered that Class Members be provided notice of preliminary approval of the Settlement as well as notice of the March 15, 2012 final approval hearing and their right to exclude themselves and/or object. (DE 993) Plaintiffs' Counsel, through the Settlement Administrator, caused such notice to be provided to Settlement Class Members. Only one objection was received,

26

27

28

---

[1] Along with this memorandum of Point and Authorities, Plaintiffs have submitted the Declaration of Mario N. Alioto and the Declaration of Joseph M. Fisher of The Notice Company, Inc. (the "Settlement Administrator") and the previously filed preliminary approval papers cited herein.

1  which lacks merit and should be rejected by the Court. Alioto Final App. Decl.¶ 2, Ex. 1.

2  Tenrequests for exclusion were received. Fisher Decl.¶ 13, Ex Q.

3       For the reasons detailed below, this Court should finally certify the Settlement Class and

4  grant final approval to the Settlement on the grounds that it is fair, adequate and reasonable to the

5  Settlement Class.

6  **II.**   **PROCEDURAL HISTORY**

7       This multidistrict litigation arises from an international cartel's conspiracy to fix the prices of

8  Cathode Ray Tubes ("CRTs") worldwide, specifically including the United States, during the period

9  March 1, 1995 through November 25, 2007.  *See* Third Consolidated Amended Complaint

10  ("TCAC") ¶ 1, (DE 827).  The first cases were filed in November 2007.  The Judicial Panel on

11  Multidistrict Litigation transferred these proceedings to this Court in February 2008.  Alioto Prelim.

12  App. Decl. ¶ 2.  On May 9, 2008 the Court appointed Mario N. Alioto of Trump, Alioto, Trump &

13  Prescott, LLP as Interim Lead Counsel.  *See* Order Appointing Interim Lead Counsel (DE 282).

14       As Interim Lead Counsel, Mr. Alioto immediately began organizing Plaintiffs' Counsel and

15  interviewing class representatives from the various states.  Mr. Alioto also met on numerous

16  occasions with Interim Lead Counsel for the Direct Purchaser Plaintiffs and Liaison Counsel for the

17  Defendants to prepare a scheduling order.  Plaintiffs served their first set of document requests on

18  Defendants in June 2008 seeking production of the documents Defendants had produced to the

19  Grand Jury.  However, the Department of Justice's Antitrust Division ("DOJ") moved to intervene

20  and sought a stay of all merits discovery.  Thereafter, Plaintiffs engaged in extensive negotiations

21  with the DOJ, the Direct Purchaser Plaintiffs and Defendants and worked out a Stipulated Order that

22  provided for a stay of all merits discovery until September 12, 2009.  This stay was extended by the

23  parties on several occasions.  The Stipulated Order also contained various document requests to

24  Defendants, which sought mainly sales and cost data.  Certain Defendants produced a small amount

25  of documents responsive to these requests in November 2008.  Plaintiffs have reviewed and

26  analyzed these documents with the help of their expert economists.  *Id.* ¶ 4.

27       In July 2008, Mr. Alioto began settlement negotiations with CPT's counsel.  At numerous in-

28  person and telephonic meetings, the terms of the settlement were vigorously negotiated among

counsel who are experienced in antitrust law and class actions.  On February 5, 2009, Plaintiffs and CPT reached agreement on the principle terms of a settlement, which were memorialized in a memorandum of understanding.  Pursuant to the memorandum of understanding, CPT's counsel provided Plaintiffs' counsel with detailed information regarding the conspiracy during a series of discussions.  The information provided by CPT was invaluable in assisting Plaintiffs in the preparation of their Consolidated Amended Complaint ("CAC").  Plaintiffs and CPT signed a formal Settlement Agreement on April 18, 2009.  *Id.* ¶ 5; Ex. 1.

Plaintiffs filed their CAC on March 16, 2009.  The CAC pled a nationwide injunctive relief claim under Section 1 of the Sherman Act (15 U.S.C. § 1), as well as damage and/or restitutionary claims under the laws of 22 separate states.  Defendants filed one joint motion and nine separate motions to dismiss the CAC.  The briefs filed in support of and in opposition to Defendants' motions totaled more than 700 pages.  Judge Legge conducted a hearing on the motions on October 3, 2009, and heard almost 9 hours of oral argument.  Judge Legge issued his rulings on the motions to dismiss on February 5, 2010, and denied in part and granted in part Defendants' motions to dismiss. Defendants objected to those rulings that were unfavorable to them.  Defendants' objections were heard by Judge Conti and rejected in an Order dated March 31, 2010.  Defendants then moved the Court for permission to bring an interlocutory appeal pursuant to 28 U.S.C. § 1292(b).  Judge Conti heard and denied Defendants' motion by Order dated April 30, 2010.  *Id.* ¶ 6.

The DOJ's stay of merits discovery was partially lifted on March 8, 2010 and Defendants began their rolling production of documents, including Grand Jury documents.  Plaintiffs have loaded these documents onto a web-based electronic document management system for review and analysis.  Plaintiffs have also propounded additional discovery on Defendants and served subpoenas on approximately fifty (50) third parties.  Defendants have propounded several sets of document requests and interrogatories on Plaintiffs as well.  Plaintiffs are currently engaged in extensive meet-and-confer discussions with each defendant.  Most third parties have already produced their data to Plaintiffs.  Plaintiffs are continuing to meet and confer with the defendants and other third parties in order to facilitate their productions.  *Id.* ¶ 7..

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT – Master File No. CV-07-5944-SC

1    On May 14, 2010, the Special Master held a Case Management Conference at which the
2    parties discussed pretrial scheduling, Defendants' Answers and discovery.  Plaintiffs filed their
3    Second Consolidated Amended Complaint ("SCAC") on May 10, 2010.  The SCAC amended
4    certain state law claims that were dismissed with leave to amend by the Court.  In addition, the
5    SCAC brought claims on behalf of 4 additional states, bringing the total number of states to 26.
6    Pursuant to a Stipulated Order, Defendants agreed not to oppose the filing of the SCAC but moved
7    to dismiss some of Plaintiffs' additional state law claims.  Judge Legge held a hearing on the motion
8    to dismiss the SCAC on August 24, 2010, and issued his Report and Recommendation that the
9    motion be granted as to certain state law claims and denied as to others.  Pursuant to stipulation of
10   the parties, an Order Modifying And Adopting Judge Legge's Report and Recommendation was
11   entered on October 26, 2010. *Id.* ¶ 9.  Plaintiffs filed their Third Consolidated Amended Complaint on
12   December 11, 2010, bringing claims on behalf of 23 states. (DE 827).

13   Plaintiffs moved for preliminary approval of the CPT Settlement on May 5, 2011. (DE 931)
14   The Court preliminarily approved the Settlement by Order dated August 9, 2012.  (DE 993).
15   Thereafter, Summary Notice was published in Parade Magazine, USA Weekend, USA Today, the
16   New York Times and El Nueva Dia.  Class Counsel also established a website,
17   www.CRTsettlement.com, which contains copies of the Settlement Agreement, Summary Notice,
18   Detailed Notice and Preliminary Approval Order in both English and Spanish.  Concurrent with this
19   Motion, Class Counsel have filed the Declaration of Joseph M. Fisher of The Notice Company
20   attesting to the fact that notice of the CPT Settlement was disseminated in accordance with the
21   Preliminary Approval Order.

22   The deadline for requests for exclusion from and objections to the Settlement Class was
23   February 1, 2012.  Ten requests to be excluded from the proposed settlement were received. Fisher
24   Decl. ¶ 13, Ex. Q. One objection to the proposed settlement was received. Alioto Final App.
25   Decl. ¶ 2, Ex. 1.

26   //
27   //
28   //

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT – Master File No. CV-07-5944-SC

III.     **SUMMARY OF SETTLEMENT TERMS**

    A.     **Proposed Settlement**

This Settlement resolves all claims against defendant CPT for its part in the alleged conspiracy to fix prices of CRTs purchased indirectly from Defendants.  Alioto Prelim. App. Decl. ¶ 9.

The proposed Settlement Class is defined as:

> "All persons and or entities who or which indirectly purchased in the United States CRT Products manufactured and/or sold by the Defendants, or any subsidiary, affiliate, or co-conspirator thereof, at any time during the period from at least March 1, 1995 through at least November 25, 2007, except, for purposes of claims on behalf of Illinois persons (as defined by 740 ILCS 10/4) under 740 Ill. Comp. Stat. § 10/7(2) and Oregon natural persons under ORS §§ 646.780(5)(a).  Such Illinois and Oregon persons (as identified in the preceding sentence) shall instead be represented by the Attorney General of their state pursuant to the *parens patriae* authority granted to each Attorney General by those statutes.  Specifically excluded from this Class are claims on behalf of Washington persons (as defined by RCW 19.86.010) for purposes of claims under RCW 19.86.080(1); the Defendants; the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and, any affiliate, legal representative, heir or assign of any Defendant.  Also excluded are any federal, state or local government entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action."

The Settlement Agreement defines "CRT Products" to mean cathode ray tubes of any type (e.g. color display tubes, color picture tubes and monochrome display tubes) and products containing cathode ray tubes.  *Id.* ¶ 10, Ex. 1 at ¶ 2.

    B.     **Consideration**

CPT has paid Ten Million Dollars ($10,000,000) to settle all indirect purchaser claims against CPT.  This money has been deposited into an interest-bearing, U.S. Treasury guaranteed escrow account.  *Id.* ¶ 11.

In addition to the monetary value, the Settlement confers significant additional benefits.  First, CPT has agreed to provide (and has provided) Plaintiffs with significant and valuable cooperation in the prosecution of the case against the remaining defendants.  CPT's obligations include producing, in the United States, relevant documents and witnesses for discovery and trial.

1    *Id.* ¶ 13.  Second, CPT's sales remain in the case for purposes of computing damages against the

2    non-settling Defendants.  *Id.* ¶ 12.

3          **C.     Release**

4          Upon this Settlement becoming final, Plaintiffs and class members will release all federal and

5    state-law claims against CPT and Chunghwa Picture Tubes (Malaysia) Sdn. Bhd. "concerning the

6    manufacture, supply, distribution, sales or pricing of CRT Products. . . ." *Id.* ¶ 14, Ex. 1 at ¶ 13.

7    The release does not, however, include claims arising from the sale of CRT Products by other

8    Defendants or their co-conspirators.  Furthermore, the release does not include claims for product

9    defect, personal injury or breach of contract.  *Id.* ¶ 14,  Ex. 1 at ¶¶ 3, 13, 15, 32.

10   **IV.   ARGUMENT**

11         **A.     Class Action Settlement Procedure**

12         A class action may not be dismissed, compromised or settled without the express approval of

13   the Court.  Judicial decisions under Rule 23(e) have led to a well-defined procedure and specific

14   criteria for approval of class action settlements, which are:

15
16               1.  Certification of a settlement class and preliminary approval
                     of the proposed settlement;

17               2.  Dissemination of notice of the settlement to all affected
                     class members; and

18
19               3.  A formal fairness hearing, (called the "Final Approval
                     Hearing"), at which class members may be heard regarding
20                   the settlement, and at which counsel may introduce
                     evidence and present argument concerning the fairness,
                     adequacy, and reasonableness of the settlement.

21
22   *See* 4 Newberg on Class Actions §§ 11.22, *et seq.* (4th ed. 2002) ("*Newberg*") (describing class

23   action settlement procedure).  This process safeguards class members' procedural due process rights

24   and enables the Court to fulfill its role as the guardian of class interests.

25         The Court has completed the first step in the settlement approval process when it

26   granted preliminary approval to the Settlement.  As discussed below, the second step in the process

27   has been completed as well: the Court-approved Notice plan was fully implemented.  By this

28   motion, Plaintiffs request that the Court take the third and final step of holding a formal fairness

1   hearing, granting final approval of the proposed Settlement and entering Final Judgment in this

2   case.

3       **B.**      **The Notice Plan Comports With Due Process**

4          Federal Rule of Civil Procedure 23(e) and due process requires that Class Members be given

5   "reasonable" notice of a proposed settlement and their right to be heard at the fairness hearing to

6   determine whether final approval of the settlement should be granted.  *See* Fed. R. Civ. P. 23(e);

7   *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 113-14 (2d Cir. 2005).

8          Based on the arguments fully set forth in Plaintiffs' motion for approval of the notice plan,

9   this Court held that the notice program proposed by Plaintiffs' counsel – which included published

10   notice and the posting of notice on the website established for this case – "constitutes the best notice

11   practicable under the circumstances, is due and sufficient notice to the Indirect Purchaser Settlement

12   Class and complies fully with the requirements of Federal Rule of Civil Procedure 23 and the due

13   process requirements of the Constitution of the United States."  Preliminary Approval Order, ¶13.

14   As described in the Declaration of Joseph M. Fisher, Plaintiffs' counsel caused that notice program

15   to be implemented as required by this Court's order.  Therefore, this Court should find the notice

16   program related to the Settlement satisfies the requirements of Rule 23(e) and due process.

17       **C.**      **The Court Should Finally Certify the Settlement Class**

18          This Court provisionally certified the Settlement Class in the Preliminary Approval Order.

19   All of the grounds for certification articulated then apply with equal force now.  Thus, final

20   certification is warranted.

21          The Court can certify a settlement class where plaintiffs demonstrate that the proposed class

22   and proposed class representatives meet the four prerequisites in Rule 23(a) – numerosity,

23   commonality, typicality and adequacy of representation – and one of the three requirements of Rule

24   23(b).  *See* Fed. R. Civ. P. 23; *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1019 (9th Cir. 1998).

25   Certification of a class action for damages requires a showing that "questions of law and fact

26   common to the members of the class predominate over any questions affecting only individual

27   members, and that a class action is superior to other available methods for the fair and efficient

28   adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).  In certifying a settlement class, the Court

7

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT – Master File No. CV-07-5944-SC

1    is not required to determine whether the action, if tried, would present intractable management

2    problems, "for the proposal is that there be no trial." *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591,

3    620 (1997).  As Judge Posner has explained, manageability concerns that might preclude

4    certification of a litigated class may be disregarded with a settlement class "because the settlement

5    might eliminate all the thorny issues that the court would have to resolve if the parties fought out the

6    case." *Carnegie v. Household Int'l Inc.,* 376 F.3d 656, 660 (7th Cir. 2004) *(citing Amchem,* 521 U.S.

7    at 620); *see also In re IPO Sec. Litig.,* 226 F.R.D. 186, 190, 195 (S.D.N.Y. 2005) (settlement class

8    may be broader than litigated class because settlement resolves manageability and predominance

9    concerns).

10          Here, the Settlement Class meets the requirements of Rule 23(a) and (b) of the Federal Rules

11   of Civil Procedure and should be certified.  It is undisputed that millions of people in the United

12   States purchased CRT Products during the class period, and that the class readily satisfies the

13   numerosity requirements of Rule 23.  *See In re Static Random Access Memory (SRAM) Antitrust*

14   *Litig.,* 264 F.R.D. 603, 608 (N.D. Cal.).  There are questions of law and fact common to the Class

15   that predominate over any individual questions, including whether Defendants conspired to fix the

16   prices of CRTs; whether Defendants violated Section 1 of the Sherman Act as well as the state

17   antitrust and unfair competition laws identified in the Complaint; the extent to which Defendants'

18   conduct injured the class members, among other previously identified issues.  "Antitrust, price fixing

19   conspiracy cases, by their nature, deal with common legal and factual questions about the existence,

20   scope and effect of the alleged conspiracy.  Whether defendants participated in the actions alleged is

21   a common question." *In re Linerboard Antitrust Litig.,* 203 F.R.D. 197, 206 (E.D. Pa. 2001)

22   (citation and quotation marks omitted).

23          Plaintiffs' claims are also typical, as each Plaintiff indirectly purchased CRT Products during

24   the relevant time period, and allege that Defendants engaged in an anti-competitive conspiracy.  The

25   Court, in *SRAM,* recognized that "the overarching price fixing scheme is the linchpin of [Plaintiffs']

26   complaint, 'regardless of the product purchased, the market involved or the price ultimately paid,'"

27   and held that Plaintiffs' claims are typical although they may have used different purchasing

28   procedures, purchased different quantities or a different mix of products, or received different prices

8

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT – Master File No. CV-07-5944-SC

1   than other class members. *SRAM,* 264 F.R.D. at 609.  Because the same is true here, the typicality

2   requirement is met.  Furthermore, as evidenced by the history of the litigation, Plaintiffs and their

3   counsel have fairly and adequately represented and protected the interests of all Class members. *See*

4   Fed. R. Civ. P. 23(a)(3) and (a)(4).

5        In addition to the prerequisites of Rule 23(a), the Settlement Class also satisfies the

6   prerequisites of Rule 23(b)(3), namely: (1) questions of law or fact common to Class members must

7   predominate over any questions affecting only individual members; and (2) the class action must be

8   superior to other available methods for the fair and efficient adjudication of the matter.  The Rule

9   23(b) predominance inquiry is "readily met in certain cases alleging violations of the antitrust laws."

10  *Amchem,* 521 U.S. at 625; *Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives and*

11  *Composites, Inc.*, 209 F.R.D. 159, 167 (C.D. Cal. 2002).  "The ... inquiry tests whether proposed

12  classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem*, 521 U.S. at

13  623.  Predominance is satisfied "unless it is clear that individual issues will overwhelm the common

14  questions and render the class action valueless." *In re NASDAQ Market-Makers Antitrust Litig.*, 169

15  F.R.D. 493, 517-18 (S.D.N.Y. 1996).  Individual issues in this case will not overwhelm the common

16  questions of law or fact, because the central question is whether the Defendants conspired to

17  improperly raise the prices of CRTs, and, if so, how.  *See e.g., SRAM*, 264 F.R.D. at 611.  Moreover,

18  the fact that individual Class members' damages may vary due to quantity of purchases or types of

19  CRT Products purchased does not defeat predominance.  *See, e.g., In re Master Key Antitrust Litig*.,

20  528 F.2d 5, 12 n.11 (2d Cir. 1975); *In re Indus. Diamonds Antitrust Litig.,* 167 F.R.D. 374, 383

21  (S.D.N.Y. 1996) (citing cases).

22       With respect to the superiority requirement, a court must consider the following factors: (A)

23  the interest of members of the class in individually controlling the prosecution or defense of separate

24  actions; (B) the extent and nature of any litigation concerning the controversy already commenced

25  by or against members of the class; (C) the desirability or undesirability of concentrating the

26  litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the

27  management of a class action. Fed. R. Civ. P. 23(b)(3).  The damages of most individual Class

28  members are relatively small compared to the cost of litigation.  There is no problem in

9

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT – Master File No. CV-07-5944-SC

1   consolidating the litigation here, nor will any unusual difficulties be encountered.  Members of the

2   Class, therefore, have no real interest in controlling the prosecution of individual actions, and

3   effectively would be unable to adjudicate their claims individually.  Even if they were able to do so,

4   the court system would be overwhelmed by the burden of hundreds of thousands of separate actions.

5   As such, it is highly desirable to concentrate these claims in this court.  *See SRAM,* 264 F.R.D. at

6   615.

7               **D.      The Settlements Should Be Finally Approved**

8               It is well established in the Ninth Circuit that "voluntary conciliation and settlement are the

9   preferred means of dispute resolution."  *Officers for Justice v. Civil Serv. Comm'n,* 688 F.2d 615,

10  625 (9th Cir. 1982); *accord Knight v. Red Door Salons, Inc.,* No. 08-01520 SC, 2009 U.S. Dist.

11  LEXIS 11149, at *8 (N.D. Cal. Feb. 2, 2009).  "[T]here is an overriding public interest in settling

12  and quieting litigation" and this is "particularly true in class action suits." *Van Bronkhorst v. Safeco*

13  *Corp.,* 529 F.2d 943, 950 (9th Cir. 1976).  In evaluating a proposed class action settlement, the

14  Ninth Circuit has recognized that:

15              [T]he universally applied standard is whether the settlement is fundamentally fair,
                adequate and reasonable.  The district court's ultimate determination will
16              necessarily involve a balancing of several factors which may include, among
                others, some or all of the following: the strength of plaintiffs' case; the risk,
17              expense, complexity, and likely duration of further litigation; the risk of
                maintaining class action status throughout the trial; the amount offered in
18              settlement; the extent of discovery completed and the stage of the proceedings; the
                experience and views of counsel; the presence of a governmental participant; and
19              the reaction of the class members to the proposed settlement.

20  *Officers for Justice,* 688 F.2d at 625 (citations omitted); *accord Torrisi v. Tucson Elec. Power Co.,*

21  8 F.3d 1370, 1375 (9th Cir. 1993).

22              This Court is entitled to exercise its "sound discretion" when deciding whether to grant final

23  approval.  *Ellis v. Naval Air Rework Facility,* 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd,* 661 F.2d

24  939 (9th Cir. 1981); *Torrisi,* 8 F.3d at 1375.  In doing so, "the court's intrusion upon what is

25  otherwise a private consensual agreement negotiated between the parties to a lawsuit must be

26  limited to the extent necessary to reach a reasoned judgment that the agreement is not the product

27  of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement,

28  taken as a whole, is fair, reasonable, and adequate to all concerned."  *Officers for Justice,* 688 F.2d

---

10

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT – Master File No. CV-07-5944-SC

1   at 625; *In re Heritage Bond Litig.,* MDL No. 02-ML-1475 DT, 2005 U.S. Dist. LEXIS 13555, at

2   *10 (C.D. Cal. June 10, 2005).  "Where, as here, a proposed class settlement has been reached after

3   meaningful discovery, after arm's-length negotiation, conducted by capable counsel, it is

4   presumptively fair."  *M Berenson Co., Inc. v. Faneuil Hall Marketplace, Inc.,* 671 F. Supp. 819,

5   822 (D. Mass. 1987); *accord In re Heritage Bond Litig.,* 2005 U.S. Dist. LEXIS 13555, at **11-12.

6   The Settlement here is certainly fair, reasonable and adequate.

7        First, the $10,000,00 cash consideration for the Settlement is substantial and is generally

8   comparable to or more favorable than the settlements finally approved in other price-fixing cases.

9   *See, e.g., Fisher Bros. v. Mueller Brass Co.,* 630 F. Supp. 493, 499 (E.D. Pa. 1985).

10        Second, the Settlement was the product of intense and thorough arm's-length negotiations that

11   were conducted by experienced and informed counsel.  The negotiations occurred over a span of

12   many months and involved numerous meetings.  The negotiations were contested, conducted in the

13   utmost good faith, and the settlement was appropriate in light of the evidence against CPT.  *See*

14   Motion for Preliminary Approval of Settlement (DE 884).

15        While Plaintiffs believe the case against CPT has merit, this Settlement eliminates significant

16   risks that Plaintiffs would otherwise face at a trial against CPT.  For instance, Plaintiffs would bear

17   the burden of establishing liability, impact and damages.  *In re NASDAQ Market-Makers Antitrust*

18   *Litig.,* 187 F.R.D. 465, 475 (S.D.N.Y. 1998); *In re Sumitomo Copper Litig.,* 189 F.R.D. 274, 283

19   (S.D.N.Y. 1999).  The foregoing considerations are important because CPT is represented by highly

20   respected counsel and would have aggressively defended this action and continued to do so through

21   trial and appeal.

22        In addition, Plaintiffs' counsel's belief that the Settlement is in the best interest of the Class

23   is entitled to "great weight."  *In re Paine Webber Partnerships Litig.,* 171 F.R.D. 104, 125

24   (S.D.N.Y. 1997) (citation omitted), *aff'd* 117 F.3d 721 (2d Cir. 1997); *accord Nat'l Rural*

25   *Telecomms. Coop. v. DIRECTV Inc.,* 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("Great weight' is

26   accorded to the recommendation of counsel, who are most closely acquainted with the facts of the

27   underlying litigation.").  In fact, "the trial judge, absent fraud, collusion, or the like, should be

28   hesitant to substitute its own judgment for that of counsel."  *Nat'l Rural Telecomms.,* 221 F.R.D.

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT – Master File No. CV-07-5944-SC

1    at 528, *quoting Cotton v. Hinton,* 559 F.2d 1326, 1330 (5th Cir. 1977).

2          For all of the foregoing reasons, the Settlement should be finally approved.

3    **E.   Objections**

4          Millions of potential Settlement Class members were notified of the Settlement through

5    the Notice Program approved by the Court.  *See* Fisher Decl. ¶ 6-12. Only one objection was

6    received—an infinitesimal portion of what is indisputably a very large Settlement Class.  The

7    objection was filed by Sean Hull, who resides in Lone Tree, Colorado.

8          In determining the fairness and adequacy of a proposed settlement, this Court should

9    consider "the reaction of the Class Members to the proposed settlement." *Churchill Village, L.L.C. v.*

10   *General Electric,* 361 F.3d 566, 575 (9th Cir. 2004); *Hanlon v. Chrysler Corp.,* 150 F.3d 1011,

11   1026.  "It is established that the absence of a large number of objections to a proposed class action

12   settlement raises a strong presumption that the terms of a proposed class settlement action are

13   favorable to the class members." *National Rural Telecoms,* 221 F.R.D. at 529; *see also Pallas v.*

14   *Pacific Bell,* No. C-89-2373 DLJ, 1999 WL 1209495, at *8 (N.D.Cal. 1999) ("The small percentage

15   – less than one percent – of persons raising objections is a factor weighing in favor of approval of

16   the settlement.").  The inference of class support due to the absence of objectors is even stronger

17   when, as here, a portion of the Settlement Class consists of sophisticated business entities.  *See In re*

18   *Linerboard Antitrust Litig.,* 321 F. Supp. 2d 619, 629 (E.D. Pa. 2004).

19         While the absence of any significant objections alone provides ample basis for final approval

20   here, final approval is also warranted because (1) the objector has not shown that he is a member of

21   the Settlement Class and has standing to object; and (2) the challenges asserted in the objections are

22   devoid of merit.

23         Only Settlement Class members have standing to object to the Settlement.  *See* Fed. R. Civ.

24   P. 23(e)(5) ("Any class member may object to the [settlement] proposal if it requires court approval

25   under this subdivision (e)").[2]  Here, objector Sean Hull has not submitted a declaration or other proof

26   _____

27   [2] *See also Feder v. Elec. Data Sys. Corp.,* 248 Fed. Appx. 579, 580 (5th Cir. 2007) ("only class
     members have an interest in the settlement funds, and therefore only class members have standing to
28   object to a settlement"); *Amone v. Aveiro,* Civ. No. 04-00508 ACK-BMK, 2007 U.S. Dist. LEXIS
     63631, at **6-7 (D. Haw. Aug. 27, 2007) (objector lacked standing to object to final approval of

that he is a member of the Settlement Class.  In support of his assertion that he is member of the

Settlement Class Mr. Hull provides two photos, which are less than an inch square and are illegible.

Alioto Final App. Decl. ¶ 2, Ex. 1. No further information is provided such as the type of CRT

Product purchased and when and where purchased.  As of the date of the filing of this Motion, Mr.

Hull has not responded to Plaintiffs' Counsel's numerous attempts to obtain information concerning

his purchases.[3]  Mere "unsupported assertions of class membership" without documentary or other

evidence substantiating a requisite purchase for class membership are insufficient to establish

objector standing.  *Feder,* 248 Fed. Appx. 580-81. Because Mr. Hull has failed to substantiate class

membership, he lacks standing to object to the Settlement and the Court should disregard his

objection.  *See id.; Amone,* 2007 U.S. Dist. LEXIS 63631, at *6-7; *Trew v. Volvo Cars of N. Am.,*

*LLC,* No. Civ. S-05-1379 RRB EFB, 2007 U.S. Dist. LEXIS 55305, at *7 (E.D. Cal. July 31, 2007).

Sean Hull was also an objector in the *In re Smokeless Tobacco Cases I, II,* San Francisco

Superior Court, JCCP Nos. 4250, 4258, 4259, 4260.  In *Smokeless Tobacco,* as he did here, Mr. Hull

filed the objection as a *Pro Se* Objector.  He then retained attorney Dennis Bartlett to represent him.

Mr. Bartlett later disclosed that attorney Christopher Bandas of Corpus Christi, Texas, was also

representing Hull in connection with that objection.  The Court rejected Hull's objection and finally

approved the settlement and awarded attorneys fees on March 12, 2008.  Hull filed a Notice of

---

settlement where he was "not a member of the Plaintiff Class, nor does he allege a cognizable injury from the settlement.").

3  Hull's objection was postmarked on the last day for submission of objections—February 1, 2012. Plaintiffs counsel received Hull's objection on February 7, 2012, and telephoned Hull on February 8, 2012 to ascertain, among other things, the basis for Hull's objections and his claimed membership in the Settlement Class.  Hull did not answer at the telephone number listed in his objection and did not return Plaintiffs' counsel's call.  Because these informal methods of communication with Hull were unavailing, Plaintiffs attempted to serve a deposition subpoena on Hull during the weekend of February 10-11, 2012, and again on Monday February 13, 2012.  Plaintiffs sought a deposition on February 27, 2012.  Plaintiffs counsel also emailed the subpoena to Hull on February 13, 2012 as well, advising him of the deposition date and requesting that Hull simply accept service of the subpoena and related document request via email or Federal Express.  Hull did not respond to this request, and evaded service during the weekend of February 10-11.  Hull then apparently left town (he lives in the Denver area) until February 24, 2012.  On the latter date, and over the ensuing weekend, Plaintiffs' counsel again attempted to serve the deposition and document subpoena on Hull.  Despite Hull's continued efforts to evade service, Plaintiffs successfully served him on February 26, 2012, for a deposition on March 6, 2012.  Plaintiffs hope to complete Hull's deposition on March 6, 2012, and if permitted, to supplement the record with relevant information prior to the final approval hearing.

1   Appeal on April 11, 2008, which he voluntarily dismissed on February 26, 2009.  No changes were

2   made to the terms of the settlement or to the amount of the attorneys' fee award.

3        Here, Mr. Hull originally filed his objection as a *Pro Se* Objector from Colorado.  Hull's

4   objection letter was postmarked Corpus Christi, TX (*see Id.* ¶3 Ex 2).  It appears that the letter was

5   posted by Christopher Bandas, a well-known "professional" or "serial" objector, i.e. counsel who

6   routinely appear in and make objections, or secretly orchestrate "*pro se*" objections, to class action

7   settlements in order to extract payments from parties or counsel for their own personal gain.  Bandas

8   has been excoriated by Courts for this conduct.  In *Brown v. Wal-Mart Stores, Inc.*, Judge Mark

9   Vande Wiele stated " Bandas is a professional objector who is improperly attempting to 'hijack' the

10   settlement of this case from deserving class members and dedicated, hard working counsel, solely to

11   coerce ill-gotten, inappropriate and unspecified 'legal fees.' . . . [Bandas's and his clients'] attempt

12   to inject themselves at the last minute into this eight year litigation constitutes an effort to extort

13   money from the Class and/or Class Counsel." *Brown v. Wal-Mart Stores, Inc.*  Ill. Cir. Ct.

14   Fourteenth Judicial Cir., No. 01 L 85, 2,5. *Id.*¶ 4, Ex. 3.  Attached as Exhibit 4 to the Alioto Final

15   App. Decl. are numerous cases in which Bandas has appeared on behalf of objectors, or has been

16   involved in orchestrating the objections from behind the scenes, wherein the objections were

17   overruled by the court and later withdrawn, abandoned or dismissed prior to or on appeal without

18   any apparent modifications to the settlement at issue.

19        Assuming *arguendo* that the Court considers Hull's objection, his objection is meritless and

20   should be rejected.  Hull does not object to the amount and terms of the Settlement.  Hull's

21   objection is that "indirect purchaser class members receive nothing, while class counsel receives

22   $5,000,000 in fees and expenses and the 24 listed states are likely to split the remaining funds."

23        Hull's objection is both premature and unfounded.  Plaintiffs' Counsel are not requesting

24   attorneys' fees or reimbursement for expenses incurred to date.  Nor are Plaintiffs' Counsel

25   proposing a plan of distribution of the fund to any Settlement Class members at this time.

26        Hull hasn't taken the time to read the Notice.  He has refused to discuss the Settlement with

27   Class Counsel.  He simply filed a canned objection, which appears to be for an improper purpose.

28   His objection should be overruled.

**F.     Exclusions**

Class members were advised of the right to be excluded from the Settlement Class, which could be accomplished through mailing a request for exclusion to the Settlement Administrator not later than February 1, 2012.  Ten requests for exclusion were received from Class members.  *See* Fisher Decl. ¶13, Ex Q (exclusion letters).  Class Counsel has provided CPT with these requests for exclusion.

**V.     <u>CONCLUSION</u>**

For all of the foregoing reasons, the Court should overrule Hull's objection and finally approve the Settlement.

Dated: February 29, 2012               Respectfully submitted,

                              _____*/s/ Mario N. Alioto*_____
                                     Mario N. Alioto

                              Mario N. Alioto (56433) malioto@tatp.com
                              Lauren C. Russell (241151)laurenrussell@tatp.com
                              TRUMP, ALIOTO, TRUMP & PRESCOTT LLP
                              2280 Union Street
                              San Francisco, CA 94123
                              Telephone: 415-563-7200
                              Facsimile: 415-346-0679

                              *Interim Lead Counsel for Indirect-Purchaser Plaintiffs*

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT – Master File No. CV-07-5944-SC