# **EXHIBIT 9**

Page 1

```
DISTRICT COURT
DOUGLAS COUNTY
COLORADO
4000 Justice Way, Suite 2009
Castle Rock, CO  80109
_____

SMOKELESS TOBACCO CASES I-IV

Consolidated with:                      |*FOR COURT USE ONLY*
                                        |----------------------
Kelly v. U.S. Smokeless                 | 08CV229
Tobacco, Co., et al.                    | Division 5

SFSC Case No: CGC-02-412861
_____

        For Plaintiff:
Justin C. Berg, Esq.
Berg Hill Greenleaf &
Ruscitti, LLP
1712 Pearl Street
Boulder, CO  80302
(303) 402-1600
Reg. No. 34296

        For the Deponent:
Dennis J. Bartlett, Esq.
Kerr Brosseau Bartlett
O'Brien, LLC
1600 Broadway
Suite 1600
Denver, CO  80202
(303) 812-1200
_____

            DEPOSITION OF SEAN HULL
                 February 20, 2008
_____



ALSO PRESENT: None
```



**AVERY WOODS REPORTING**

455 Sherman Street, Suite 250 · Denver, Colorado 80203
303-825-6119 · 1-800-962-3345 · FAX 303-893-8305
www.averywoods.net

Page 2

1　　　　The deposition of SEAN HULL, called for
2　examination by the Plaintiff, was taken at the Best
3　Western Inn and Suites, 595 Genoa Way, Castle Rock,
4　Colorado, commencing at 12:41 p.m. on February 20,
5　2008, before William C. Woods of Avery/Woods
6　Reporting Service, Inc., 455 Sherman Street, Suite
7　250, Denver, Colorado 80203, a Registered
8　Professional Reporter and a Notary Public in and for
9　the State of Colorado, pursuant to the Colorado Rules
10　of Civil Procedure.
11　　　　***************
12　　　　INDEX OF EXAMINATION
13　　　　　　　　　　　　　　　　　PAGE NO.
14　EXAMINATION BY MR. BERG　　　　　4
15　EXAMINATION BY MR. BARTLETT　　50

Page 3

1　　　　INDEX OF EXHIBITS
2　EXHIBIT NO.　　　　　　　PAGE NO.
3　HULL DEPOSITION EXHIBIT NO. 1　　3
　　(Subpoena to Appear for
4　　Deposition and to Produce
　　Documents)
5
　HULL DEPOSITION EXHIBIT NO. 2　　15
6　(February 20, 2008, Facsimile
　　Transmission Cover Page with
7　　attached February 20, 2008,
　　objection letter)
8
　HULL DEPOSITION EXHIBIT NO. 3　　26
9　(January 25, 2008, Objection
　　to Class Settlement and
10　Application for Attorneys'
　　Fees and Expenses)
11
12
　　　　(Whereupon, Hull Deposition Exhibit
13
　No. 1 was marked for identification by the reporter.)

Page 4

1　　　　SEAN HULL,
2　being first duly sworn to state the truth, the whole
3　truth and nothing but the truth, testified on oath as
4　follows:
5　　　　EXAMINATION
6　　Q.　(BY MR. BERG) Hi, Mr. Hull. My name
7　is Justin Berg. I'm with the law firm of Berg Hill
8　Greenleaf & Ruscitti in Boulder, Colorado. For
9　purposes of this deposition today, I'm representing
10　the plaintiffs in the case in which you filed an
11　objection.
12　　A.　Okay.
13　　Q.　Could you state your full name and
14　address, current address, for the record?
15　　A.　Sean Kenneth Hull, H U L L. I live at
16　7890 Whitney Place in Lone Tree, Colorado 80124.
17　　Q.　How long have you lived at that
18　address?
19　　A.　Since December 16th of 2006.
20　　Q.　Okay. If you can, can you recall your
21　addresses since January 1, 1990?
22　　A.　I can't recall all of them.
23　　Q.　Can you recall if you've ever lived in
24　California since January 1, 1990?
25　　A.　From January 1, 1990, I lived in

Page 5

1　California-- in fact, I lived in California until I
2　moved to Colorado. I was born in California.
3　　Q.　Okay.
4　　A.　I've been a resident-- I was a resident
5　in California from 1966 until 2006.
6　　Q.　What was your address in California?
7　　A.　My most recent address or--
8　　Q.　Sure.
9　　A.　3537 Gulf Stream Street, in Pleasanton,
10　and that's-- do you need the zip?
11　　Q.　Go ahead.
12　　A.　94588, I believe.
13　　Q.　Okay. Did you have several other
14　addresses in California before you--
15　　A.　Yes, I did.
16　　Q.　Let me skip ahead a little bit because
17　we're starting to talk over each other, so I just
18　want to get this out of the way really quick. Have
19　you ever been deposed before?
20　　A.　Yes.
21　　Q.　How many times?
22　　A.　Once.
23　　Q.　Okay. Under what circumstances?
24　　A.　It was a car accident case.
25　　Q.　Were you the plaintiff?

Page 18

1  A. At the time I accepted it.
2  Q. Well, I was just responding to your
3  testimony that at the time you thought it was
4  reasonable. That implies that today you may not
5  think it's reasonable. Is that true?
6  MR. BARTLETT: Object to the form. Go
7  ahead and answer.
8  A. I haven't done research on that
9  specific suit.
10 Q. (BY MR. BERG) Okay. Fair enough.
11 A. There was one more, too.
12 Q. Oh. Go ahead.
13 A. A class action suit against 24-Hour
14 Fitness.
15 Q. Where was that class action lawsuit
16 filed?
17 A. I don't recall.
18 Q. Was it either Colorado or California?
19 A. I'm not sure.
20 Q. What was the basis of that lawsuit?
21 A. Overcharge of fees.
22 Q. Was a settlement reached?
23 A. Yes.
24 Q. Did you receive compensation or other
25 consideration as a result of that settlement?

Page 19

1  A. Yes.
2  Q. Did you object at all to that
3  settlement?
4  A. No.
5  Q. Do you think it was a reasonable
6  settlement?
7  A. Yes.
8  Q. Approximately how much money did you
9  receive from the settlement?
10 A. $17.
11 Q. Why do you think that $17 settlement
12 for you was reasonable?
13 A. I was only a member of the club for
14 two months.
15 Q. So what did the $17 settlement
16 represent, do you know?
17 A. No.
18 Q. The approximate amount you had been
19 overcharged during the couple of months you had been
20 a member?
21 MR. BARTLETT: Objection, form.
22 A. I don't know.
23 Q. (BY MR. BERG) Okay. How did you hear
24 about the settlement in this case?
25 MR. BARTLETT: Object to the form of

Page 20

1  the question to the extent it requires him to reveal
2  attorney-client privilege communication.
3  Q. (BY MR. BERG) How did you hear about
4  the settlement in this case?
5  MR. BARTLETT: Again, I object to the
6  extent it requires him to reveal attorney-client
7  privileged communications and instruct him, unless he
8  wants to waive the privilege, he's not to answer it
9  unless he can answer it without revealing
10 attorney-client privileged communications.
11 A. I can't do that.
12 Q. (BY MR. BERG) So I assume, then, that
13 your-- you initially learned about this settlement
14 via communication with counsel?
15 MR. BARTLETT: Well, you can assume
16 anything you want. I'm instructing the witness not
17 to disclose the substance of any attorney-client
18 communications he had, unless he wants to waive the
19 privilege.
20 Q. (BY MR. BERG) Did you learn about this
21 settlement prior to any communication with your
22 attorney or attorneys?
23 MR. BARTLETT: You can answer that.
24 A. No.
25 Q. (BY MR. BERG) Did you-- after learning

Page 21

1  about the settlement, did you subsequently research
2  it yourself?
3  A. No.
4  Q. Have you read the notice of the
5  settlement?
6  A. Yes.
7  Q. Have you read the settlement agreement
8  itself?
9  A. No.
10 Q. Did you read any of the motions, the
11 practice associated with the preliminary approval of
12 the settlement?
13 A. No.
14 Q. Have you read anything else that I
15 haven't already discussed about the settlement?
16 A. No.
17 Q. So you haven't conducted any other
18 research whatsoever about the settlement?
19 A. No.
20 Q. So when did you first take a dip?
21 MR. BARTLETT: Excuse-- object to the
22 form of the question. Do you know what "a dip" is?
23 Q. (BY MR. BERG) When did you start
24 dipping?
25 MR. BARTLETT: Oh, I'm sorry. Chewing

Page 26

1  to your purchase of smokeless tobacco in California
2  during the class period?
3      A.  I don't know for sure.
4      MR. BERG:  This is Deposition
5  Exhibit 3.
6      (Whereupon, Hull Deposition Exhibit
7  No. 3 was marked for identification by the reporter.)
8      Q.  (BY MR. BERG) I've just handed you
9  what's been marked as Deposition Exhibit 3. Do you
10 recognize this document?
11     A.  Yes.
12     Q.  What is it?
13     A.  It's my objection to the settlement.
14     Q.  First off, let me back up. Do you
15 think the settlement in this case is a good
16 settlement, that being the $96 million figure?
17     A.  Not for me.
18     Q.  From an overall standpoint, do you
19 think the $96 million is a good settlement? I'm
20 recognizing that you don't feel that your specific
21 compensation is reasonable. Do you think the $96
22 million is a good settlement? You're just objecting
23 to how it's being distributed?
24     A.  Yes.
25     Q.  Why do you think it's a good

Page 27

1  settlement?
2      MR. BARTLETT:  I'm sorry. Good or not
3  good?
4      MR. BERG:  Good.
5      MR. BARTLETT:  Object to the form of
6  the question.
7      A.  My problem with the settlement is the
8  distribution, the fact that the attorneys are getting
9  the majority of the money, and people like myself
10 that used under 30 cans are excluded.
11     Q.  (BY MR. BERG) In this regard, you
12 believe the settlement unfairly discriminates against
13 purchasers of UST Smokeless Tobacco in California
14 that purchased less than 30 cans, correct?
15     A.  Yes.
16     Q.  And, again, you claim specifically to
17 have purchased approximately 15 cans during the class
18 period, right?
19     A.  Yes.
20     Q.  Why do you think the settlement
21 unfairly discriminates against those who purchased
22 less than 30 cans in California during the class
23 period?
24     A.  It's in the objection.
25     Q.  I recognize that. I'm asking you

Page 28

1  today.
2      A.  Can you repeat the question?
3      Q.  Yeah. Why do you believe the
4  settlement unfairly discriminates against those who
5  purchased less than 30 cans in California during the
6  class period?
7      A.  They're excluded from the compensation
8  of the class.
9      Q.  Okay. So you think that they should be
10 compensated something?
11     A.  Yes.
12     Q.  And what do you think would be a
13 settlement for those who purchased less than 30 cans
14 that would not unfairly discriminate?
15     A.  I'm hoping the judge will decide that.
16 That's not up to me.
17     Q.  So you haven't done any analysis as to
18 what you think would be a reasonable settlement for
19 those who purchased less than 30 cans?
20     A.  No.
21     Q.  Well, what do you think?
22     MR. BARTLETT:  Objection, asked and
23 answered.
24     A.  I don't know.
25     Q.  (BY MR. BERG) What do you think would

Page 29

1  be a reasonable settlement recognizing that you
2  purchased 15 cans, for example, for anywhere from $5
3  to $7? What do you think would be a reasonable
4  settlement for you for purchasing those 15 cans?
5      MR. BARTLETT:  Objection, asked and
6  answered.
7      A.  I answered that.
8      Q.  (BY MR. BERG) Okay. Do you think a
9  dollar would fairly compensate you?
10     MR. BARTLETT:  Same objection.
11     A.  I want the judge to hear my objection
12 and decide that.
13     Q.  (BY MR. BERG) Okay. What would you
14 recommend to the judge? A dollar for you, or $10 for
15 you or $20 for you?
16     A.  I believe I answered that I want the
17 judge to hear my objection. I haven't determined
18 what settle-- the fair settlement would be for me.
19     Q.  Okay. You also indicated in your
20 objection that you believe procedural safeguards were
21 not followed. What procedural safeguards are you
22 talking about?
23     A.  It's spelled out in the objection.
24     Q.  So in your objection, which is marked
25 as Deposition Exhibit No. 3, you say, "procedural

Page 30

1 safeguards to protect these class members"— those
2 being the class members that bought less than 30 cans
3 in California— "were not followed, such as
4 sub-classing and separate representation." What is
5 sub-classing?
6    A. It's different classes. Those less
7 than 30 cans.
8    Q. Okay. So, again, your position is that
9 there should have been compensation paid to a
10 sub-class of people who purchased less than 30 cans?
11    A. Yes.
12    Q. But you don't have a suggestion as to
13 what or how the judge would should compensate that
14 sub-class?
15    A. No.
16    Q. You indicated in your objection also
17 that you believe the attorneys' fees sought are
18 excessive, right?
19    A. Yes.
20    Q. Why do you think they were excessive?
21    A. I don't understand why that matters.
22    Q. Well, you've suggested in your
23 objection that you think they're excessive, but you
24 haven't really given any further detail. So I'm just
25 trying to get some of that detail. I want to know

Page 31

1 why specifically you think the attorneys' fees are
2 excessive.
3    A. I wrote it in there, the percentage
4 should be dialed back on the settlement. More money
5 should go to the members of the class versus the
6 attorneys.
7    Q. What is the percentage that's going to
8 the attorneys?
9    A. It's not for me— in this case?
10    Q. Yes.
11    A. I don't know exactly.
12    Q. How can you say it's excessive if you
13 don't know what it is? I apologize. I'm not trying
14 to corner you or anything. I'm just trying to figure
15 out how you can determine if it's excessive if you
16 don't know what that percentage is.
17    A. I don't have that detail.
18    Q. So you haven't conducted an analysis of
19 how this percentage for attorneys' fees in this
20 settlement compares to that of other comparable
21 settlements?
22    A. I haven't looked at other comparable
23 settlements, just this one.
24    Q. Have you conducted an analysis of how
25 many attorney hours are— were put into this case to

Page 32

1 achieve the settlement?
2    A. No.
3    Q. Do you know how many years of
4 litigation the attorneys involved went through prior
5 to reaching the subject settlement agreement?
6    A. No.
7    Q. Do you know how much compensation the
8 attorneys involved have received to date as
9 compensation for the work they've conducted?
10    A. No.
11    Q. So you do not have a recommended
12 reasonable attorneys' fees for the judge?
13    A. No.
14    Q. You also indicate in your objection
15 that you believe the risks of litigation have greatly
16 diminished over the years, correct?
17    A. Yes.
18    Q. What are you talking about there? How
19 have the risks of litigation greatly diminished, in
20 your opinion?
21    A. I don't know.
22    Q. Did you write your objection?
23    A. Yes.
24    Q. Okay. If you don't know what you mean
25 by, "The risks of litigation have greatly diminished

Page 33

1 over the years," why did you put it in there?
2    A. I was assisted when I wrote this.
3    Q. Who were you assisted by?
4    MR. BARTLETT: Object to the question
5 to the extent it calls for the disclosure of
6 attorney-client privilege communications. If you can
7 answer it without disclosing attorney-client
8 privileged communications, go ahead and do so.
9    MR. BERG: Let me just back up a little
10 bit. There's a Colorado Supreme Court-approved
11 pattern interrogatory that allows somebody to divulge
12 when an attorney assisted in the preparation of
13 discovery responses. I don't think me asking who
14 assisted him in preparing a document submitted to the
15 Court is improper or somehow going to reveal
16 attorney-client communications.
17    MR. BARTLETT: The fact of
18 representation is a separate issue from who it is or
19 what they helped you do. And as far as whether he
20 had assistance, that's one question. Who it was and
21 what they helped him do invade, in my belief, the
22 attorney-client privileged communication for a
23 non-party witness.
24    MR. BERG: Okay. So are you
25 instructing him not to tell me whether he was

9 (Pages 30 to 33)

SEAN HULL - FEBRUARY 20, 2008

Page 34

1  assisted by counsel?
2      MR. BARTLETT: I think he already said
3  he had help in answering the question. I thought you
4  asked who it was.
5      Q. (BY MR. BERG) Were you assisted by
6  counsel in preparing your objection?
7      MR. BARTLETT: You can answer.
8      A. Yes.
9      Q. (BY MR. BERG) And who was that
10 attorney?
11     MR. BARTLETT: And that's where I'm
12 instructing the witness not to answer on the basis of
13 the attorney-client privileged communication. I also
14 will say that I also believe its irrelevant to the
15 scope of his objection, and/or not calculated to lead
16 to the discovery of relevant or admissible evidence.
17 And I'm not instructing him on that basis because
18 relevancy is separate from a privilege.
19     MR. BERG: Do you think the mere
20 identification of who the attorney was who assisted
21 him in preparing this objection is a basis to
22 instruct somebody not to answer?
23     MR. BARTLETT: To answer who his
24 attorney was? Yes.
25     Q. (BY MR. BERG) So you don't know what

Page 35

1  you meant here by, "The risks of litigation have
2  greatly diminished over the years"?
3      A. I don't have the answer to that.
4      Q. Okay. Do you believe that the risks of
5  litigation have greatly diminished over the years?
6      A. Yes.
7      Q. Why do you believe that?
8      MR. BARTLETT: I'll object and instruct
9  him not to answer to the extent it calls for him to
10 disclose privileged communication with an attorney.
11 If you can answer outside of the those
12 communications, go ahead and do so.
13     A. No.
14     Q. (BY MR. BERG) So what do you base your
15 opinion on that, "The risks of litigation have
16 greatly diminished over the years"?
17     MR. BARTLETT: Asked and answered.
18     Q. (BY MR. BERG) You can answer. Go
19 ahead.
20     A. My knowledge. I have limited knowledge
21 of the legal field.
22     Q. Okay. So have you read any sort of
23 documentation that would support your opinion that,
24 "The risks of litigation have greatly diminished over
25 the years," other than communications between your

Page 36

1  counsel--
2      A. Outside of newspaper, magazine
3  articles, no.
4      Q. Which newspaper and magazine articles?
5      A. I don't recall.
6      Q. Anything else you base this opinion on?
7      A. No.
8      Q. Do you have any understanding with
9  anyone or expectation that you will receive any
10 compensation as a result of your opinions-- I mean,
11 sorry, your objection to this settlement?
12     A. No.
13     Q. So what specifically do want the Court
14 to do as a result of your objection?
15     A. I just want the Court to hear my
16 objection.
17     Q. And do what specifically?
18     A. I don't have an expected outcome. I
19 would leave it up to the Court to decide.
20     Q. So let me help you a little bit. You
21 want them to-- you want the judge to reduce the
22 attorneys' fees?
23     A. Yes.
24     Q. From what to what?
25     A. That's not for me to decide.

Page 37

1      Q. And you want the members of the class
2  who purchased less than 30 cans to receive some sort
3  of compensation?
4      A. As I stated in the objection, yes.
5      Q. But you're not suggesting any
6  particular amount?
7      A. No.
8      Q. I apologize for asking that again. I'm
9  just sort of summarizing here.
10         Do you-- have you conducted any
11 analysis of what it might take to implement
12 compensating members of the class who purchased less
13 than 30 cans?
14     A. No.
15     Q. Have you conducted any analysis of what
16 the administrative costs associated with your
17 proposal might be?
18     A. No.
19     Q. Have you conducted any sort of cost
20 benefit analysis with respect to what you're
21 proposing the Court do?
22     A. No.
23     MR. BERG: Do you guys want to take a
24 break?
25     MR. BARTLETT: Sure.

10 (Pages 34 to 37)

Page 38

1  (Whereupon, a brief recess was taken
2  from 1:40 p.m. to 2:06 p.m.)
3  MR. BERG: We're back on the record.
4  We had some discussion off the record as to the
5  viability of Mr. Bartlett's instructions not to
6  answer on four questions in particular.
7  The first question was when
8  Mr. Bartlett was retained. Again, the witness was
9  instructed not to answer that question. The second
10  question was how the witness learned of the
11  settlement agreement, or at least who it was who
12  contacted him about the settlement agreement, and,
13  again, there was an instruction not to answer that
14  question.
15  The third question was who assisted the
16  witness in preparing the objection that was filed in
17  the California case. Again, an instruction not to
18  answer that question was given. And No. 4 is why the
19  witness believes that the risks of litigation have
20  diminished over the years, and I believe there was an
21  instruction on that question to only answer to the
22  extent you cannot reveal attorney-client
23  communications. I think an answer was ultimately not
24  given in response to that question.
25  If I'm incorrect, we can mark the pages

Page 39

1  or the location in the deposition and file our
2  respective motions to address this issue, but I just
3  wanted to give a little background for the record,
4  and opposing counsel-- Mr. Bartlett, if you have
5  anything to say on the record, it sounds like we're
6  going to have to address this in a subsequently-filed
7  motion as we just got off the phone with the judge
8  who has indicated that he's not available at the time
9  to rule upon Mr. Bartlett's four instructions not to
10  answer. If you have anything for the record.
11  MR. BARTLETT: Well, I'm not trying to
12  suggest Mr. Berg is not accurate in his recollection.
13  I believe those are the areas where there has been an
14  instruction not to answer based on the
15  attorney-client privilege, but I'm not sure those are
16  verbatim, the questions and the parts of the
17  questions that were answered versus the parts that
18  weren't answered, but we are standing by the
19  attorney-client privilege with regard to those until
20  we're instructed it does not apply by a Court.
21  MR. BERG: Okay. And, again, just so
22  I'm clear, so the record is clear, it's your position
23  that the identity of the attorney who assisted him in
24  preparing his objection is protected by the
25  attorney-client privilege?

Page 40

1  MR. BARTLETT: My position is where the
2  client and the attorney desire to keep that
3  information confidential, it is entitled to the
4  protection-- and have taken steps to keep that
5  information confidential and private, it is entitled
6  to protection of the attorney-client privilege.
7  MR. BERG: Okay. And during our
8  discussion off the record, you also indicated to me
9  that you had not found a single case that supports
10  your position?
11  MR. BARTLETT: No, I had found any
12  cases that say I am wrong. I have not found any
13  cases that say that you are entitled to, where the
14  client and the attorney have tried to maintain the
15  privacy of their communications and the identity of
16  the attorney as confidential, that is not privileged
17  and you are entitled to go behind the privilege and
18  discover the identity of the attorney involved.
19  MR. BERG: And you think that's true
20  that the identity of an attorney who assisted in the
21  preparation of an objection is protected by the
22  attorney-client privilege, even where the witness has
23  indicated his reliance upon the assistance of counsel
24  in formulating the opinions in that objection?
25  MR. BARTLETT: I'm not sure that that's

Page 41

1  what the witness did here.
2  MR. BERG: Okay.
3  MR. BARTLETT: But particularly there,
4  if you're trying to get at the substance of the
5  advice that this person has received from his
6  attorney, which is where you have to be going with
7  that question, I believe all substantive advice he
8  received from the counsel is protected.
9  MR. BERG: Okay. But we're talking
10  about the identity of the attorney.
11  MR. BARTLETT: Well, the identity of
12  the attorney is a separate issue, and the identity of
13  the attorney where the client and the attorney desire
14  to keep it private and confidential I believe can be
15  protected by the attorney-client privilege.
16  MR. BERG: Okay. That's a good enough
17  record.
18  MR. BARTLETT: Okay.
19  Q. (BY MR. BERG) Just a couple of
20  follow-up questions. You say you dipped two or three
21  times a year during the class period, correct, on
22  average?
23  A. Yes.
24  Q. You also said that you bought
25  approximately 15 cans?

11 (Pages 38 to 41)