# Exhibit A

**SAVERI & SAVERI, INC.**
706 SANSOME STREET
SAN FRANCISCO, CALIFORNIA 94111
TELEPHONE: (415) 217-6810
TELECOPIER: (415) 217-6813

*Trump Alioto Trump & Prescott*
ATTORNEYS LLP
2280 Union Street
San Francisco, California 94123
(415) 563-7200
FAX (415) 346-0679

January 16, 2012

Honorable Charles A. Legge
JAMS
Two Embarcadero Center, Suite 1500
San Francisco, CA 94111

Re:     *In Re: Cathode Ray Tube (CRT) Antitrust Litigation,* **MDL 1917 (N.D. Cal.)**
        **Plaintiffs' Motion To Compel Defendants To Produce English Translations**

Your Honor:

        The Direct Purchaser Plaintiffs and Indirect Purchaser Plaintiffs ("Plaintiffs")
submit this letter brief pursuant to the March 28, 2011 Order Adopting Your Honor's
Report Regarding Case Management Conference No. 3, as amended by Orders dated April
25, 2011 and October 27, 2011. Plaintiffs respectfully request that Defendants be
compelled to produce all existing English translations of foreign language documents
produced in this litigation. Plaintiffs seek translations that were prepared by the
Defendants in the ordinary course of business *and* translations that were prepared at the
direction of defense counsel for this litigation.

**I.   Background**

        Defendants' conspiracy to fix the prices of Cathode Ray Tubes ("CRTs") involved
multinational companies located across the globe. This complex, multidistrict litigation
involves Defendants located in ten different countries. Many of the documents responsive
to Plaintiffs' discovery requests are in foreign languages, including Korean, Japanese,
Chinese, Dutch, French, German, Portuguese and Spanish. To date, Defendants have
produced 863,382 documents, totaling 4,017,405 pages. Of those documents,
approximately two hundred thousand are in a foreign language.

        The issue of translations has already been before Your Honor in this case. In
September 2010, Defendants moved the Court for an order compelling defendant
Chunghwa Picture Tubes, Ltd. to produce all English translations of documents provided to
Plaintiffs. In the order granting Defendants' motion to compel and ordering Chunghwa to
produce the translated documents to Defendants, Your Honor observed that there is a
strong interest in this case in having one translation of a particular document:

        The production may also serve to decrease future discovery and litigation
        burdens on all of the parties. We now have one translation, prepared by an

January 16, 2012
Page 2

> independent translator. There is presently no requirement for other parties to obtain their own translations. And having more translations would undoubtedly result in discovery and motion disputes to reconcile any material differences. The Special Master recognizes that even one translation may be the subject of disputes over accuracy which have to be resolved, but that is certainly easier and less expensive than having to reconcile or choose among several conflicting sets of translations.

Docket, No. 810, *Procedural and Scheduling Order*, dated November 18, 2010, p. 4:11-17.

With Your Honor's stated goal of one translation in mind, Plaintiffs met and conferred with Defendants telephonically on December 9, 2010 and requested that Defendants produce their existing English translations of responsive documents. Defendants refused to do so, claiming that their translations are protected from production by the attorney work product doctrine. Plaintiffs raised the issue once again at the March 17, 2011 Case Management Conference, but Defendants simply repeated their work production objection. Pursuant to Your Honor's Report, the parties met and conferred again on March 25, 2011, but were unable to resolve their dispute. The parties have extended the time for the filing of this motion to allow Defendants to complete their production of documents. The matter is now ripe for decision.

## II. Argument

### A. Legal Standard

Federal Rule of Civil Procedure 26(b)(3) and courts applying the work product doctrine recognize a distinction between opinion work product, which reveals "mental impressions, conclusions, opinions or legal theories," Fed. R. Civ. P. 26(b)(3), and ordinary work product, which does not. *See In re San Juan Dupont Plaza Hotel Fire Litig.*, 859 F.2d 1007, 1014-1015 (1st Cir. 1988). Under Rule 26(b)(3)(A), a court may order documents prepared in "anticipation of litigation" that are otherwise discoverable if the party seeking discovery has: (1) a substantial need of the materials to prepare its case; and (2) is unable to obtain the substantial equivalent of the materials by other means without undue hardship.

Opinion work product, on the other hand, is entitled to greater protection. *See San Juan*, 859 F.2d at 1015 ("Courts typically afford ordinary work product only a qualified immunity, subject to a showing of substantial need and undue hardship, while requiring a hardier showing to justify the production of opinion work product.") But "not every item which may reveal some inkling of a lawyer's mental impressions, conclusions, or legal theories is protected as opinion work product. . . . Whatever heightened protection may be conferred by opinion work product, that level of protection is not triggered unless disclosure creates a real, non-speculative danger of revealing the lawyer's thoughts." *Id., citing Gould, Inc. v. Mitsui Mining & Smelting Co.,* 825 F.2d 676, 680 (2d Cir. 1987). Moreover, "[s]ome materials do no not merit heightened protection because, despite the revelations they contain as to an attorney's thought processes, the lawyer has no justifiable

January 16, 2012
Page 3

expectation that the mental impressions revealed by the materials will remain private." *San Juan*, 859 at 1015-1016. Finally, the Defendants have a "heavy" burden to present evidence showing "a real, rather than speculative, concern" that the production of translations "will reveal counsel's thought processes and strategies." *In re Grand Jury Subpoenas Dated March 19, 2002 & August 2, 2002*, 318 F.3d 379, 381 (2d Cir. 2003).

### B. The Court Should Order Defendants To Produce Existing English Translations Of Responsive, Non-Privileged Documents

#### 1. Responsive Documents Translated In The Ordinary Course Of Business Were Not Prepared "In Anticipation Of Litigation" And Therefore Are Not Privileged

Any foreign language documents produced in this case that have been translated into English by Defendants in the ordinary course of business are, by definition, not prepared in anticipation of litigation and therefore are not entitled to any protection under Rule 26(b)(3).[1]

Plaintiffs are informed and believe that many of the Defendants use software that automatically translates documents into English in order to facilitate communications between employees of affiliated entities in Asia and the United States. Defendants have also translated other documents into English in the normal course of business. Thus, to the extent Defendants have an English version or summary of a foreign language document produced in this case, which was prepared in the ordinary course of business, Plaintiffs request that the Court compel Defendants to produce these documents.

#### 2. Documents Translated At The Direction Of Counsel For This Litigation Are Not Opinion Work Product

The documents Plaintiffs seek are verbatim English translations of responsive, non-privileged foreign language documents that were found in Defendants' files, and which have already been produced in this litigation. It follows necessarily that no requested document includes or embodies attorney "mental impressions, conclusions, opinions or legal theories." Fed. R. Civ. P. 26(b)(3)(B).[2] Courts routinely order the production of

---

[1] *See, e.g., Howes v. Med. Components, Inc.*, 698 F. Supp. 574, 581 (E.D. Pa. 1988) (ordering disclosure of English summaries of documents kept in the ordinary course of business because it "would further the interests of justice and convenience, and expedite this litigation."); *Contretas v. Isuzu Motors, Ltd. of Japan*, No. 98-442, 1999 WL 33290667 (W.D. Tx. Apr. 2, 1999) ("[T]he defendants must provide the English translations, to the extent they have custody or control over such translations, of such responsive documents if English documents have ever been made of such responsive documents.")

[2] *See In re Certain Microlithographic Machines*, U.S.I.T.C. Inv. No. 337-TA-468, Order No. 8, 2002 WL 1809398 (U.S. Int'l Trade Comm'n June 11, 2002) ("In essence, a translation is merely a copy of the original document in another language. Its purpose is to

January 16, 2012
Page 4

existing translations, holding that translations themselves do not reveal attorney thoughts or impressions and therefore are not protected work product.[3]

*Warsaw Air Crash* is particularly instructive. There, the defendants argued that the selection of documents for translation constituted "opinion work product because it is based on an attorney's reasoning, thought processes and assumptions regarding the litigation." 1996 WL 684434, at *2. The court rejected defendants' argument, holding that English translations did not contain opinion work product because the foreign language documents, like the documents here, had already been produced. Thus, ordering the document production "does not result in the evulgation of matters which would otherwise remain perpetually hidden." *San Juan Fire,* 859 F.2d at 1017 ("The key factor distinguishing such materials from protected opinion work product is that, even absent compelled disclosure, the information will probably come to light during the course of trial, if not before.").

Moreover, as in *Warsaw Air Crash*, any argument that the translations would expose defense counsel's litigation strategy is "speculative" at best. 1996 WL 684434, at *2. In reality, "[a] wide variety of litigation needs inform the decision whether to translate a particular document." *Id.* This is especially true in a case like this where there are likely hundreds, if not thousands, of translated documents, and they will include those translated in the ordinary course of business and those prepared at counsel's direction. As such, Plaintiffs will be "hard pressed to glean [defense counsel's] specific trial strategy or mental impressions of the case from such a broad selection of documents." *Id.*

Since Defendants' translations cannot be considered opinion work product, they are only entitled to qualified immunity as ordinary work product and are discoverable upon a showing of substantial need and undue hardship. *See* Fed. R. Civ. P. 26(b)(3).

---

disseminate the contents of the document to others who are not fluent in the document's original language.")

[3] *See, e.g., In re Pabst Licensing GmbH Patent Litig.,* No. 99-md-1298, 2001 WL 797315, at *24 (E.D. La. July 12, 2001) ("translated documents are discoverable, even where the translations are merely summaries or selected portions of the original foreign language documents."); *Contretas v. Isuzu Motors,* 1999 WL 33290667, at *2 (ordering production of all translations, holding "the work product of defense counsel would not be revealed by the disclosure of all English translations"); *In re Air Crash Disaster Near Warsaw, Poland on May 9, 1987,* MDL No. 787, 1996 WL 684434 (E.D.N.Y. Nov. 19, 1996) (ordering production of translations and holding that the selection of which documents to translate does not constitute opinion work product); *Microlithographic Machines,* 2002 WL 1809398 (ordering production because "the translations in question, like the original Japanese-language documents underlying them, are not covered by the attorney work product privilege").

January 16, 2012
Page 5

### 3. Plaintiffs Have A Substantial Need For The Translations And All Parties And The Court Will Be Significantly And Unnecessarily Burdened Without Them

Plaintiffs have a substantial need for the translated documents. Requiring Plaintiffs to undertake a costly, time-consuming effort to translate an enormous number of foreign documents that Defendants have already translated would impose a significant and wholly unnecessary burden on the Plaintiffs. Such duplication of effort would be contrary to the general goals of efficiency and economy articulated in Federal Rules of Civil Procedure 1 and 16.[4]

In *Pabst Licensing GmbH Patent Litig.,* where the plaintiff requested access to a much smaller number of translated documents than here, the court granted the request, largely on efficiency grounds. The defendant had produced 300,000 pages of documents, including 17 pages it had translated from Japanese into English. 2001 WL 797315, at *23. The defendant moved to have these translations returned, claiming they were protected attorney work product. The court denied the motion because, "[w]hile it is possible for Pabst 'to translate the documents, this could not be done without considerable expense, inconvenience and delay.'" *Id.* at *24 (citations omitted).[5]

Here, the expense, inconvenience and delay that Plaintiffs face in reviewing and translating millions of pages is far more considerable than that engendered by the 17 pages at issue in *Pabst*. Specifically, Plaintiffs need to determine which of the hundreds of thousands of documents produced by Defendants should be translated. This has required Plaintiffs to retain a number of attorneys who are fluent in the several different languages at issue in this case to review and identify foreign language documents for translation. Plaintiffs will then have to commission the translations. The cost and delay involved will be astronomical.

In the related *In re TFT-LCD Antitrust Litig.,* No. 07-md-1826, the plaintiffs obtained an estimate from an experienced translation service to perform this work. That firm estimated a rate of approximately $62.50 per page for English translations of Japanese, Korean and/or Chinese documents of approximately 250 words per page. Translating just

---

[4] Fed. R. Civ. P. 1 states that cases should be determined in a "just, speedy, and inexpensive" manner. Fed. R. Civ. P. 16 provides methods for the Court to manage pretrial proceedings to achieve the goals of "expediting disposition of the action," and "discouraging wasteful pretrial activities."

[5] *See also Warsaw Air Crash*, 1996 WL 684434, at *2 ("Although it is true that plaintiffs' attorneys could hire their own translation agency to review and translate selected documents, such a requirement would needlessly prolong discovery and does not protect any privileged material."); *Howes v. Med. Components, Inc.,* 698 F. Supp. at 581 ("disclosure . . . would further the interests of justice and convenience, and expedite this litigation . . . . While it is perhaps possible for the defendants to translate the documents, this could not be done without considerable expense, inconvenience and delay.").

January 16, 2012
Page 6

1000, 20 page documents would therefore cost approximately $1,250,000. The firm also estimated it would take several months to complete the translations.

Some of this cost and delay is inevitable in a case like this. Even if the Court grants this motion, Plaintiffs recognize that they will still have to hire foreign language attorneys and pay for certified translations, and that there will still be disputes over the accuracy of translations. But these costly, time consuming tasks will at least be greatly reduced by compelling Defendants to produce their existing English translations. Because as Your Honor previously recognized: "even one translation may be the subject of disputes over accuracy which have to be resolved, but that is certainly easier and less expensive than having to reconcile or choose among several conflicting sets of translations." Nov. 18, 2010 Order, 4:15-17. Plaintiffs' goal in seeking Defendants' translations is aligned with Your Honor's stated goal of avoiding the additional discovery and motion practice involved in trying to reconcile conflicting translations. This will benefit all parties and the Court and weighs heavily in favor of compelling Defendants to produce their translations.

## III. Conclusion

Accordingly, Plaintiffs respectfully request that Your Honor order each Defendant to produce all existing English translations of the foreign language documents they have produced in this case.

Yours sincerely,

/s/ *Mario Alioto*
Mario Alioto
Interim Lead Counsel for the
Indirect Purchaser Plaintiffs

/s/ *Guido Saveri*
Guido Saveri
Interim Lead Counsel for the
Direct Purchaser Plaintiffs

cc: All Counsel via Electronic mail

# Exhibit B

**SAVERI & SAVERI, INC.**
706 SANSOME STREET
SAN FRANCISCO, CALIFORNIA 94111
TELEPHONE: (415) 217-6810
TELECOPIER: (415) 217-6813

*Trump Alioto Trump & Prescott*
ATTORNEYS LLP
2280 Union Street
San Francisco, California 94123
(415) 563-7200; FAX (415) 346-0679

February 10, 2012

Honorable Charles A. Legge
JAMS
Two Embarcadero Center, Suite 1500
San Francisco, CA 94111

Re:     ***In Re: Cathode Ray Tube (CRT) Antitrust Litigation,* MDL 1917 (N.D. Cal.)**
        **Reply Re: Plaintiffs' Motion To Compel Defendants To Produce English Translations**

Your Honor:

  We write in further support of Plaintiffs' motion to compel Defendants' to produce English translations. Defendants offer scant, discredited case law, most of which does not address the question of translations, and self-serving, conclusory attorney declarations for an implausible proposition: that Plaintiffs will somehow be able to deduce from thousands of translations the mental processes and legal strategies of counsel. Based on nothing more than this speculative concern, Defendants contend they are absolved from producing discoverable translations. This argument fails.

**I.   The Selection Of Documents For Translations Is Not Opinion Work Product**

  **A.   Defendants Have Failed To Carry Their Burden To Show That The Translations Are Opinion Work Product**

  It is well-established that "the party invoking a privilege bears the burden of establishing its applicability to the case at hand. The burden is a heavy one, because privileges are neither 'lightly created nor expansively construed.'"[1] "To fit within what we have repeatedly characterized as a 'narrow exception' to the general rule that third-party documents in the possession of an attorney do not merit work product protection, the party asserting the privilege must show 'a real, rather than speculative concern' that counsel's thought processes 'in relation to pending or anticipated litigation' will be exposed through disclosure of compiled documents."[2]

  Moreover, Defendants must make an objective showing. The self-serving statements and conclusory declarations submitted by defense counsel in support of their opposition will not suffice. *See*

---

[1] *In re Grand Jury Subpoenas Dated March 19, 2002 and August 2, 2002,* 318 F.3d 379, 384 (2d Cir. 2003) (internal citations omitted) (quoting *United States v. Nixon,* 418 U.S. 683, 710 (1974). *See also U.S. v. 22.80 Acres of Land,* 107 F.R.D. 20, 21 (N.D. Cal. 1985) ("The party seeking to invoke the work product protection bears the burden of establishing all the elements that trigger the protection; doubts must be resolved against the party asserting the privilege.")

[2] *In re Grand Jury Subpoenas,* 318 F.3d at 386, quoting *Gould, Inc. v. Mitsui Mining & Smelting Co.,* 825 F.2d 676, 680 (2d Cir. 1987). *See also In re San Juan Dupont Plaza Hotel Fire Litig.,* 859 F.2d 1007, 1015 (1st Cir. 1988) ("Whatever heightened protection may be conferred upon opinion work product, that level of protection is not triggered unless disclosure creates a real, nonspeculative danger of revealing the lawyer's thoughts.")

February 10, 2012
Page 2

*Grand Jury Subpoenas,* 318 F.3d at 387 ("This burden of objective proof cannot be met through conclusory *ex parte* affidavits . . . which simply assert that . . . this subset [of documents] was created pursuant to a carefully orchestrated defense strategy.") (internal citations omitted).[3]  Defendants have not specified how or what – if anything –the selection of translations reveals about their lawyers' mental processes or strategies.

Under Ninth Circuit law, the Defendants have also waived any privilege by failing to provide any privilege logs to Plaintiffs listing each translated document and why it is privileged, or to otherwise demonstrate each document's protected status.[4]  In short, by failing to make a particularized showing as to each translation that would allow Plaintiffs and the Court to evaluate their claims of privilege, Defendants have failed to carry their burden of showing "a real, rather than speculative concern" that counsel's thought processes will be revealed.  The motion to compel should therefore be granted.

## B. Defense Counsel Have No Justifiable Expectation That Any Mental Impressions Revealed By Translations Of Key Documents Will Remain Private

Defendants argue that compelling them to produce translations of 2,500 "key documents" would reveal "the documents defense counsel have deemed most important," thereby revealing their opinion work product.  But as the First Circuit pointed out in *In re San Juan,* "some materials do not merit heightened protection because, despite the revelations they contain as to an attorneys' thought processes, the lawyer has no justifiable expectation that the mental impressions revealed by the materials will remain private."  859 F.2d at 1015-16.  Answering a complaint, initial disclosures, responding to interrogatories or requests for admissions, and disclosing the identity of expert witnesses and the materials they relied upon, all implicate and reveal to some degree counsel's opinions, ideas, thoughts and strategy.  *Id.* at 1016.  "The key factor distinguishing such materials from protected opinion work product is that, even absent compelled disclosure, the information will probably come to light during the course of trial, if not before."[5]

Here, Defendants have already revealed to Plaintiffs thousands of "key documents" in their responses to Direct Purchaser Plaintiffs' Interrogatories 4 and 5, which asked Defendants to identify all agreements and meetings with their competitors.  Producing the English translations of these key documents will reveal nothing more to Plaintiffs about defense counsel's opinion of these documents.

---

[3] *Sedlacek v.Morgan Whitney Trading Group, Inc.,* 795 F.Supp. 329, 331 (C.D. Cal. 1992) (cited by Defendants at 5) (party invoking work product privilege has "burden to demonstrate specific and detailed facts" in a privilege log in order to determine whether privilege applies); *In re Seroquel Prods. Liab. Litig.,* MDL No. 1769, 2008 WL 215707, *4 (M.D. Fla. Jan. 24, 2008) (compelling production of 42 documents – selected by counsel out of 15,835 documents –that were used to prepare a deponent where the defendant, "whose burden it is to demonstrate the applicability of the work product doctrine, has not provided the documents *in camera* or otherwise.")

[4] *See Burlington Northern & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. of Mont.,* 408 F.3d 1142, 1148 (9th Cir. 2005) ("party must . . . provide sufficient information to enable other parties to evaluate the applicability of the claimed privilege or protection.") (quoting Advisory Cmt. Note to Rule 26(b)(5)); *Clarke v. Am. Commerce Nat. Bank,* 974 F.2d 127, 129 (9th Cir. 1992) ("The privilege must ordinarily be raised as to *each* record sought to allow the court to rule with specificity.") (emphasis added).

[5] *Id.  See also In re Shell Oil Refinery,* 125 F.R.D. 132, 133 (E.D. La. 1989) ("The Court views the production and selection of documents in this case as similar to other types of discovery which inevitably reveal certain aspects of an attorney's thought processes, *i.e.,* interrogatories, requests for admissions, and preparation of witness lists and a pretrial order.  As such, there is no justifiable expectation that the mental impressions revealed will remain private.")

February 10, 2012
Page 3

Accordingly, Defendants have no justifiable expectation that the documents defense counsel deem most important will remain private.

Plaintiffs have had to furnish the very same information to Defendants. By Order dated November 18, 2010, this Court ordered Plaintiffs to respond to certain contention interrogatories regarding Plaintiffs' allegations that Defendants' conspiracy extended to CRT Products. On January 31, 2011, Plaintiffs served extremely detailed responses laying out the facts and legal analysis in support of their allegations, and identifying many key documents, all of which revealed Plaintiffs' counsels' legal strategies, opinions and mental impressions about this case. Plaintiffs will also soon respond to contention interrogatories seeking their evidence in support of fraudulent concealment. These responses, and the documents Plaintiffs identify, will again reveal counsel's thought processes and the documents they deem important to this case. This is not protected under the work product privilege. Defendants should not be entitled to this information from Plaintiffs and then refuse to provide the same information in return.

*San Juan* underscores the difference between English translations of "key documents" and true opinion work product. An example of true opinion work product, entitled to absolute protection, would be internal memoranda or notes regarding the import of a translated key document, and defense counsel's opinion of its strengths and weaknesses. This would truly give Plaintiffs a roadmap to defense counsel's strategic thinking. But Plaintiffs are not seeking defense counsel's internal notes. Plaintiffs seek only the English version of documents that have already been produced, many of which Defendants have already identified to Plaintiffs as important to the case. Plaintiffs' motion should therefore be granted.

## C. The Third Circuit's Decision In *Sporck* Should Not Apply To Translations

Defendants' claim that their selection of documents for translation would reveal opinion work product relies heavily on the Third Circuit's decision in *Sporck v. Peil,* 759 F.2d 312 (3d Cir. 1985). This reliance is misplaced. Contrary to the representations in Defendants' brief, *Sporck* has been roundly criticized by the majority of courts to address the question of whether counsel's selection of documents is entitled to absolute protection from disclosure under the opinion work product doctrine.

Criticism began with the dissent in *Sporck,* which rebuked the majority for an "impermissible expansion of the work product doctrine at the expense of legitimate discovery . . . . [I]n order to claim the shield of opinion work product, it must be established that it is the attorneys' thought processes that are revealed." *Id.* at 319 (Seitz, J. dissenting). Other circuit courts have either adopted the dissent, refused to follow the majority or have limited *Sporck's* holding to its facts. The First Circuit described the reasoning of *Sporck* as "flawed because it assumes the revelatory nature of the sought-after information is, in itself, sufficient to cloak the information with the heightened protection of opinion work product. That is simply not the case; much depends on whether the fruits of the screening would soon be revealed in any event." *In re San Juan,* 859 F.2d at 1017-18. Similarly, the Second Circuit has repeatedly characterized *Sporck* as a "narrow exception." *Gould,* 825 F.2d at 680; *In re Grand Jury Subpoenas,* 318 F.3d at 386 (echoing *Gould's* characterization of *Sporck* as a "narrow exception," and emphasizing that "[n]ot every selection and compilation of third-party documents by counsel transforms that material into attorney work product.")

February 10, 2012
Page 4

District courts throughout the United States have also criticized and rejected the reasoning in *Sporck*. For example, courts in the Eleventh Circuit have followed the First Circuit's decision in *In Re San Juan*, rather than *Sporck*. As one court noted, "not every item which may reveal some inkling of a lawyer's mental impressions, conclusions, opinions or legal theories is protected opinion work product . . . . Were the doctrine to sweep so massively, the exception would hungrily swallow up the rule."[6] Likewise, in *Bohannon v. Honda Motor Co., Ltd.*, 127 F.R.D. 536, 539 (D. Kan. 1989), the court observed that "*San Juan* offers the sounder rule." The United States Court of Federal Claims agreed, and adopted Judge Seitz's dissent from *Sporck*.[7] Thus, Defendants' statement that the "vast majority of courts" have found that "an attorney's selection of documents in preparation for litigation – including for the purposes of translation into another language – is *opinion* work product" (Defs' Opp. at 5) is not accurate.

Even if *Sporck* is good law, its reasoning does not apply to the 2,500 translations at issue here. *Sporck* has nothing to do with translations. As the Second Circuit observed, the issue in *Sporck* and its progeny "was whether counsel was obliged to identify from voluminous discovery materials those discrete documents that the attorney had selected for review with his client in advance of deposition, or that an attorney specifically recalled as existing in her client's files. The court ruled that such *narrowly focused inquiries* constituted impermissible intrusions into attorneys' thought processes in preparing their clients' defenses." *In re Grand Jury Subpoenas*, 318 F.3d at 385 (internal citations omitted) (emphasis added). Nearly all of the cases following *Sporck*, including those cited by Defendants, did not involve thousands of translations. Rather, like *Sporck*, they involved a very small number of documents tied to a specific attorney working with a specific witness.[8]

---

[6] *Calderon v. Reederei Claus-PeterOffen GmbH & Co.*, No. 07-61022, 2009 WL 1748089, *3 (S.D. Fla. June 19, 2009) (quoting *San Juan*, 859 F.3d at 1015). *See also Hunter Ridge Golf Co., Inc. v. Georgia-Pacific Corp.*, 233 F.R.D. 678, 681 (M.D. Fla. 2006); *In re Seroquel*, 2008 WL 215707, *2-5.

[7] *See Chevron U.S.A. v. United States*, 83 Fed. Cl. 195, 199 (Ct. Cl. 2008); *Williams v. Sprint/United Management Co.*, No. 03-2200, 2007 WL 634873, *4 (D. Kan. Feb. 27, 2007) ("mere selection and grouping of information does not transform discoverable documents into work product."); *Willingham v. Ashcroft*, 228 F.R.D. 1, 6-7 (D.D.C. 2005) (ordering documents produced in light of "the liberal discovery contemplated by the federal rules" even though an attorney had selected them "to formulate and support a legal opinion"); *In re Shell Oil Refinery*, 125 F.R.D. at 133 ("The Court views the production and selection of documents in this case as similar to other types of discovery which inevitably reveal certain aspects of an attorney's thought processes.")

[8] *See, e.g., Shelton v. American Motors Corp.*, 805 F.2d 1323, 1327–1329 (8th Cir.1986) (holding that in-house counsel's awareness of the existence of certain documents was work product because her "selective review" of documents in anticipation of her deposition "was based upon her professional judgment of the issues and defenses involved in this case," and therefore her mere acknowledgment that she remembered and was aware of those documents would reveal her mental impressions); *United States ex. rel. v. Bagley*, 212 F.R.D. 554, 563-564 (C.D. Cal. 2003) (holding that the disclosure statement submitted by the relator to the government in a False Claims Act case, which contained a narrative that organized and characterized the facts and the law, and contained legal analysis, would reveal counsel's mental impressions and was therefore protected as opinion work product); *Laxalt v. McClatchy*, 116 F.R.D. 438, 444 (D. Nev. 1987) (invoking *Sporck* for the proposition that a deponent was not required to disclose which documents counsel used in deposition preparation); *James Julian, Inc. v. Raytheon Co.*, 93 F.R.D. 138, 144 (D. Del. 1982) ("In selecting and ordering a few documents out of thousands [to prepare a witness], counsel could not help but reveal important aspects of his understanding of the case."); *Johnson v. Ocean Ships, Inc.*, 2006 WL 2166192 (W.D. Wash. July 31, 2006) (denying a motion to compel defendant to respond to a contention interrogatory that asked defendant to list all documents and witnesses in support of each affirmative defense, on the grounds that this would reveal defense counsel's mental impressions). Other cases cited by Defendants merely cite but do not follow *Sporck*. *See, e.g., Central Valley Chrysler-Jeep v. Witherspoon*, 2006 WL 2600149, *3 (E.D. Cal. Sept. 11, 2006) (citing *Sporck* but compelling production); *Sedlacek v. Morgan Nitney Trading Group, Inc.*, 795 F. Supp. 329, 331-332, n.1 (C.D. Cal. 1992) (merely mentions, without applying, the *Sporck* rule).

February 10, 2012
Page 5

Here, because thousands of translations are at issue, none of which are tied to a specific witnesses or a specific attorney, Plaintiffs will not be able to discern defense counsel's legal strategies or mental impressions. In such situations, courts have generally found little, if any risk, that production would reveal counsel's strategy.[9]  Indeed, since Defendants have agreed to produce translations made in the ordinary course of business, they can completely avoid the possibility of Plaintiffs being able to guess their litigation strategy or mental impressions by producing all responsive translations without indicating whether or not they were prepared for litigation purposes.[10]

## D. The Majority Of Courts Have Ordered The Production Of English Translations

Unlike *Sporck* and the other cases relied upon by Defendants, the cases relied upon by Plaintiffs actually involved a motion to compel production of English translations.[11]  All of these cases ordered the production of English translations, reflecting a common consensus that the selection of documents for translation does not reveal counsel's mental impressions.  *See, e.g., In re Air Crash Disaster Near Warsaw, Poland on May 9, 1987*, MDL No. 787, 1996 WL 684434, *2 (E.D.N.Y. Nov. 19, 1996) ("A wide variety of litigation needs inform the decision of whether to translate particular documents. Counsel's choice of which documents to translate reflects only what documents [defense counsel] considered worth reading.  Plaintiffs' attorneys would be hard pressed to glean [defense counsel's] specific trial strategy or mental impressions from such a broad selection of documents."

In contrast, only two of the cases cited by Defendants actually involve translations: (1) *In re: TFT-LCD (Flat Panel) Antitrust Litig.*, Case No. M:07-cv-01827-SI, Docket No. 1493 (Jan. 21, 2010) (N.D. Cal.); and (2) *In re Application For An Order For Judicial Assistance*, 244 F.R.D. 434, 441 (N.D. Ill. 2007).  Judge Ilston's decision in *TFT-LCD* is distinguishable because there, the DOJ objected to the production of the defendants' translations to the plaintiffs, claiming that this would interfere with their criminal investigation.  Judge Ilston's order was based, in part, on an order in the case prohibiting discovery that related to a party's or witness' communications with the DOJ.  That is not an issue here.

In *In re Application For An Order*, the court focused on the fact that the translations were prepared in anticipation of litigation and concluded, on that basis alone, that the translations were work product.  *Id.* at 441.  The opinion does not cite *Sporck* or discuss counsel's selection of certain

---

[9] *See, e.g., Disability Rights Council of Greater Wash. v. Wash. Metro. Transit Auth.*, 242 F.R.D. 139, 144 (D.D.C. 2007) (finding that "with the number of those documents said to be totaling into the thousands, it would be difficult to conceive Plaintiffs' trial strategy could be gleaned solely by virtue of Plaintiffs' disclosure of the documents selected."); *Wash. Bancorporation v. Said*, 145 F.R.D. 274, 278 (D.D.C. 1992) (finding that "[t]he selectivity that was central to the compilations in *Sporck* and other decisions is not present in the FDIC index.  The index at issue here catalogues not tens of documents but thousands."); *See also* 10 Federal Procedure, Lawyers' Ed. (2009) § 26:197 ("A document is not protected from discovery as opinion work product, even though the document contains materials selected by the attorney, where the document does not reveal much concerning the attorney's thinking or legal strategy and does not constitute a selection or ordering of information according to some legal theory.")

[10] *See Intergraph Hardware Technologies Company v. Toshiba Corporation, et al.*, No. 06-cv-04018-MHP, Dkt. No. 61 (Jan. 30, 2007) (N.D. Cal.) (Declaration of Mario N. Alioto, Ex. A) ("To avoid disclosure of these decisions, Toshiba should produce all responsive translations without indicating whether or not they were prepared for litigation purposes.")

[11] *See* Plaintiffs' Opening Brief, at 3-5.

February 10, 2012
Page 6

documents for translation. In fact, it does not even distinguish between "ordinary" work product and "opinion" work product. Thus, contrary to Defendants' claims, the court did not find that the translations were opinion work product. There is also no discussion of substantial need or undue hardship, so it is not clear whether the plaintiff even made such arguments. Moreover, unlike here, the defendants had produced a privilege log, which the court specifically relied upon in making its ruling.

In short, amongst the handful of cases to have addressed this issue, six cases have ordered production of the translations and only two have not. Thus, Plaintiffs' cases do not, as Defendants claim, represent the "minority view." The opposite is true. Plaintiffs' cases represent the weight of authority on disputes regarding the production of English translations. This Court should follow the weight of authority and order Defendants to produce their English translations.

## II.    Plaintiffs Have Demonstrated Substantial Need And Undue Hardship

In a strained attempt to refute Plaintiffs' showing of substantial need for their English translations and the undue hardship Plaintiffs will suffer if this motion is denied, Defendants spend almost 3 full pages making arguments that are unsupported by case law, rely on misrepresentations of Plaintiffs' opening brief, and show a complete disregard for Federal Rules of Civil Procedure 1 and 16.

First, Defendants argue, without citing to any case law, that the expense, inconvenience and delay that Plaintiffs face in hiring foreign language attorneys to review millions of pages of foreign language documents, selecting documents for translation (which involves the foreign language attorney providing a rough translation from which lead counsel can determine whether to have it fully translated by a translation company), and then paying for certified translations, is not a showing of substantial need. Defs' Opp. at 7. Defendants ignore the fact that many courts have rejected this very argument, because although it is true that Plaintiffs could translate the documents themselves, it would needlessly prolong discovery and could not be done without considerable expense, inconvenience and delay.[12]

Second, Defendants misrepresent Plaintiffs' opening brief in order to support their argument that Plaintiffs' assertion of undue hardship is "baseless." For example, Defendants condemn as "absurd" Plaintiffs' claim that they will have to translate every foreign language document and then review them. Defs' Opp. at 7. But Plaintiffs never made such a claim. Plaintiffs stated quite clearly that they have hired foreign language attorneys to select documents for translation. Defendants' also criticize Plaintiffs for using a cost estimate from the LCD case, which they argue is inflated. Plaintiffs did not intend to provide a precise figure for the cost of translations, nor did Plaintiffs think it was necessary for this motion. It was only intended as an *estimate*, to give the Court some idea of the likely cost. Moreover, even if it's true that 250 words per page is high for this case, this is balanced by the other numbers Plaintiffs used. For example, Plaintiffs estimated they would need to translate 1000, 20 page documents

---

[12] *See, e.g., In re Pabst Licensing GmbH Patent Litig.*, No. 99-md-1298, 2001 WL 797315, at *24 (E.D. La. July 12, 2001) ("While it is possible for Pabst 'to translate the documents, this could not be done without considerable expense, inconvenience and delay.'"); *Warsaw Air Crash*, 1996 WL 684434, at *2 ("Although it is true that plaintiffs' attorneys could hire their own translation agency to review and translate selected documents, such a requirement would needlessly prolong discovery and does not protect any privileged material."); *Howes v. Med. Components, Inc.*, 698 F. Supp. at 581 ("disclosure . . . would further the interests of justice and convenience, and expedite this litigation . . . . While it is perhaps possible for the defendants to translate the documents, this could not be done without considerable expense, inconvenience and delay."); *Intergraph*, No. 06-cv-04018-MHP, Alioto Decl., Ex. A ("[R]equiring Intergraph to re-translate documents would be needlessly duplicative and burdensome. Therefore, the court orders Toshiba to produce all responsive translations.")

February 10, 2012
Page 7

at a cost of $1,250,000.  These numbers have been shown to be very conservative since Defendants have already translated 2,500 documents.  In any event, it cannot seriously be disputed that the cost and delay involved in translating thousands of foreign language documents is substantial.  Although some of this is inevitable in a case like this, the hardship involved will be "undue" for the 2,500 documents that have already been translated because it will be wholly unnecessary.[13]

Third, Defendants dismiss Plaintiffs' (and the Court's) goal of having one translation, and avoiding unnecessary discovery disputes to reconcile conflicting translations.  They assume Plaintiffs will not stipulate to the accuracy of Defendants' translations and will still obtain their own translations.  This assumption misses the point.  The question is not whether Plaintiffs will ultimately agree to a given translation, as any translation protocol is going to provide the Parties an opportunity to review and object to the wording of a translation.  The question is whether cost and efficiency concerns are alleviated by avoiding multiple translations of the same document.  They will be.  Defendants' translations can act as a starting point for reaching resolution and facilitate the goal of having one translation.  Discovery disputes will be minimized by having the ability to review and work from one translation.  And Plaintiffs will not have to do a full translation from scratch based on obtaining Defendants' version.

Defendants further claim that their translations are "unofficial, incomplete and sometimes inaccurate," and therefore could not serve as the "one translation" because they are inadmissible.  This argument confuses the standards for admissibility with the standards for discovery.  Depending on the agreed upon protocol in this case, non-certified translations may not be admissible.  But Plaintiffs are not asking for these translations to be admitted into evidence.  Plaintiffs are merely asking that the translations be produced to facilitate review of the voluminous discovery record in this case.  Although no party would stipulate to the accuracy of the other parties' translation sight unseen, Plaintiffs' goal, as we stated in our opening brief, will be to accept Defendants' translations.  As is the case with any translation, certified or uncertified, the translation protocol can provide a procedure for the parties to meet and confer regarding Defendants' translations with the goal being to stipulate to their accuracy.

Finally, Plaintiffs note that they responded to Defendants' proposed translation protocol on the same day as Defendants submitted their opposition brief.  Plaintiffs have always indicated that we were willing to negotiate a translation protocol and are currently doing so.  But Defendants were not interested in discussing the production of their existing translations as part of the protocol, and so Plaintiffs were forced to file this motion.

## III.    Conclusion

For the foregoing reasons, Plaintiffs respectfully request that each Defendant be ordered to produce all existing translations of documents that are responsive to Plaintiffs' discovery requests.

Yours sincerely,

/s/ Mario Alioto
Mario Alioto
Interim Lead Counsel for the

---

[13] See supra fn. 13.

February 10, 2012
Page 8

Indirect Purchaser Plaintiffs

/s/ *Guido Saveri*
Guido Saveri
Interim Lead Counsel for the
Direct Purchaser Plaintiffs

cc: All Counsel via Electronic mail

# Exhibit C

1   Mario N. Alioto (56433)
    Lauren C. Russell (241151)
2   TRUMP, ALIOTO, TRUMP & PRESCOTT, LLP
    2280 Union Street
3   San Francisco, CA 94123
    Telephone:   (415) 563-7200
4   Facsimile:   (415) 346-0679

5   *Interim Lead Counsel for the Indirect Purchaser
    Plaintiffs*

6

7

8

9                    **UNITED STATES DISTRICT COURT**

10                   **NORTHERN DISTRICT OF CALIFORNIA**

11                      **SAN FRANCISCO DIVISION**

12

13  IN RE: CATHODE RAY TUBE (CRT)          MASTER FILE NO. 07-cv-5944 SC
    ANTITRUST LITIGATION
                                           MDL NO. 1917
14

15  This Document Relates to:              **DECLARATION OF MARIO N. ALIOTO
                                           IN SUPPORT OF REPLY LETTER BRIEF
    ALL ACTIONS                            ON MOTION TO COMPEL
16                                         PRODUCTION OF ENGLISH
                                           TRANSLATIONS**
17
                                           Date: February 27, 2012
18                                         Time: 10:00 a.m.
                                           Court: JAMS
19
                                           The Honorable Charles A. Legge
20

21

22

23

24

25

26

27

28

1    I, Mario N. Alioto, declare as follows:

2         1.    I am a partner at the law firm of Trump, Alioto, Trump & Prescott LLP.  I

3    am admitted to practice law in this District and before the courts of the State of California.  I make

4    this declaration in support of Plaintiffs' Reply Letter Brief On Motion To Compel Production Of

5    English Translations.  Except as otherwise noted, I testify to the following facts based on my

6    person knowledge.

7         2.    Attached hereto as Exhibit A is a true and correct copy of U.S. District

8    Judge Marilyn Hall Patel's Order in *Intergraph Hardware Technologies Company v. Toshiba*

9    *Corporation, et al.,* Case No. 3:06-cv-04018-MHP, Dkt No. 61, Jan. 30, 2007 (N.D. Cal.).

10   I declare under the penalty of perjury under the laws of the United States of America and

11   the State of California that the foregoing is true and correct.

12   Executed this 10th day of February, 2012 in San Francisco, California.

13                    *Mario N. Alioto*
                      Mario N. Alioto
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECL. OF MARIO N. ALIOTO ISO REPLY LETTER BRIEF ON MOTION TO COMPEL PRODUCTION OF
ENGLISH TRANSLATIONS
MDL No. 1917; Master File No. 07-cv-5944 SC

# EXHIBIT A

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**
For the Northern District of California

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

INTERGRAPH HARDWARE
TECHNOLOGIES COMPANY

Plaintiff,

v.

TOSHIBA CORPORATION, ET AL.

Defendants.

No. C 06-04018 MHP

**ORDER**
**Re: Discovery of English Translations of
Foreign Documents**

On December 4, 2006 the court ordered the parties to submit position statements on an issue arising from their Joint Case Management Statement. The dispute concerns the discovery of certain translations of the Toshiba defendants' ("Toshiba") documents from Japanese to English. Toshiba has agreed to produce any relevant, pre-existing English translations of Japanese documents but argues that translations prepared in connection with litigation are protected work product. See Fed. R. Civ. P. 26(b)(3).

The translations themselves are not work product ipso facto. See, e.g., Contreras v. Isuzu Motors, Ltd. of Japan, No. SA-98-CA-442 JWP, 1999 WL 33290667, *2 (W.D. Tex. Apr. 2, 1999) (concluding, in a similar context, that production of translations prepared for both business purposes and for litigation purposes would not violate work product doctrine). Rather, Toshiba argues that counsel's selection of certain documents for translation in preparation for litigation would necessarily reveal opinion work product. Hickman v. Taylor, 329 U.S. 495, 511 (1947) (discussing the need for protecting the processes of "assembl[ing] information [and] sift[ing] what [the attorney] considers to be the relevant from the irrelevant facts"). While the selection of certain documents for

1   translation might reveal opinion work product, there is simply no need for counsel's decisions to be

2   revealed here.  To avoid the disclosure of these decisions, Toshiba should produce all responsive

3   translations without indicating whether or not they were prepared for litigation purposes.  Moreover,

4   requiring Intergraph to re-translate documents would be needlessly duplicative and burdensome.

5   Therefore, the court orders that Toshiba produce all responsive translations.

6

7   IT IS SO ORDERED.

8

9   Dated:       Jan. 29, 2007

10                                                    MARILYN HALL PATEL
                                                     United States District Court Judge
11                                                    Northern District of California

12

**UNITED STATES DISTRICT COURT**
For the Northern District of California

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2