1   Guido Saveri (22349) guido@saveri.com
    R. Alexander Saveri (173102) rick@saveri.com
2   Geoffrey C. Rushing (126910) grushing@saveri.com
    Cadio Zirpoli (179108) cadio@saveri.com
3   SAVERI & SAVERI, INC.
    706 Sansome Street
4   San Francisco, CA 94111
    Telephone:  (415) 217-6810
5   Facsimile:  (415) 217-6813

6   Interim Lead Counsel for the Direct Purchaser Plaintiffs

7

8                  UNITED STATES DISTRICT COURT

9                 NORTHERN DISTRICT OF CALIFORNIA

10                    SAN FRANCISCO DIVISION

11  | IN RE: CATHODE RAY TUBE (CRT) | Master File No. CV- 07-5944-SC |
    | ANTITRUST LITIGATION | |
12  | | MDL No. 1917 |
13  | This Document Relates to: | |
14  | | DIRECT PURCHASER PLAINTIFF'S |
    | ALL DIRECT PURCHASER ACTIONS | NOTICE OF MOTION AND MOTION FOR: |
15  | | 1) CERTIFICATION OF A SETTLEMENT CLASS; |
16  | | |
    | | 2) PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT WITH CHUNGHWA PICTURE TUBES, LTD; |
17  | | |
18  | | 3) PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT WITH KONINKLIJKE PHILIPS ELECTRONICS N.V., PHILIPS ELECTRONICS NORTH AMERICA CORPORATION, PHILIPS ELECTRONICS INDUSTRIES (TAIWAN), LTD., AND PHILIPS DA AMAZONIA INDUSTRIA ELECTRONICA LTDA.; |
19
20
21
22
23  | | 4) DIRECTING NOTICE TO CLASS; AND |
24  | | |
    | | 5) MEMORANDUM IN SUPPORT THEREOF |
25  | | |
26  | | Date:   April 5, 2012 |
    | | Time:   2:00 p.m. |
27  | | Judge:  Honorable Charles A. Legge (Ret.) |
    | | JAMS: Two Embarcadero Center, Suite 1500 |
28

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS
WITH CHUNGHWA PICTURE TUBES, LTD. AND PHILIPS; Master File No. CV-07-5944-SC

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION..................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES.........................................................2

I.     INTRODUCTION....................................................................................................2

II.    FACTUAL AND PROCEDURAL HISTORY ........................................................4

III.   THE TERMS OF THE SETTLEMENTS ...............................................................5

     A.    The CPT Settlement ....................................................................................5

     B.    The Philips Settlement.................................................................................6

IV.   THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENTS ....8

     A.    Class Action Settlement Procedure ...........................................................8

     B.    Standard for Settlement Approval...............................................................8

     C.    The Proposed Settlements Are Within the Range Of Reasonableness .........10

V.    THE COURT SHOULD PROVISIONALLY CERTIFY THE CPT AND PHILIPS SETTLEMENT CLASSES .....................................................................................13

     A.    The Requirements of Rule 23 in the Context of the Settlement Class..........14

     B.    The Requirements of Rule 23(a) Are Satisfied In This Case ......................15

          1.    The Class Is So Numerous That Joinder of All Members Is Impracticable .................................................................................15

          2.    This Case Involves Questions of Law and Fact Common to the Class ..........................................................................................16

          3.    The Claims of the Representative Party are Typical of the Claims of the Class....................................................................18

          4.    The Representative Plaintiff Will Fairly and Adequately Protect the Interests of the Class.........................................................................19

     C.    The Proposed Class Satisfies The Requirements Of Rule 23(B)(3) ............20

          1.    Common Questions of Law and Fact Predominate Over Individual Questions ....................................................................................20

          2.    A Class Action Is Superior to Other Available Methods for the Fair and Efficient Adjudication of this Case ..........................................22

i

D.     The Court Should Appoint the Plaintiffs' Interim Lead Counsel as Counsel for the Settlement Class..............................................................................23

VI.     PROPOSED PLAN OF NOTICE ...................................................................23

VII.    PROPOSED PLAN OF ALLOCATION ........................................................25

VIII.   THE COURT SHOULD SET A FINAL APPROVAL HEARING SCHEDULE ...26

IX.     CONCLUSION .................................................................................................27

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS
WITH CHUNGHWA PICTURE TUBES, LTD. AND PHILIPS; Master File No. CV-07-5944-SC

## TABLE OF AUTHORITIES

### CASES

*Amchem Products, Inc. v. Windsor,*
  521 U.S. 591, 620 (1997) ................................................................................ passim

*Agretti v. ANR Freight Sys., Inc.,*
  982 F.2d 242 (7th Cir. 1992) ........................................................................... 13

*Bellows v. NCO Fin. Sys.,*
  2008 U.S. Dist. LEXIS 103525 (S.D. Cal. Dec. 2, 2008) ............................. 11

*Blackie v. Barrack,*
  524 F.2d *891* (9th Cir. 1975) .......................................................................... 15,16

*Carnegie v. Household International, Inc.,*
  376 F. 3d 656 (7th Cir. 2004) .......................................................................... 15, 22

*Churchill Village, L.L.C. v. General Elec.,*
  361 F.3d 566 (9th Cir. 2004) ........................................................................... 8, 9

*Class Plaintiffs v. City of Seattle,*
  955 F.2d 1268 (9th Cir. 1992) ......................................................................... 9

*Eisen v. Carlisle and Jacquelin,*
  417 U.S. 156 (1974) ......................................................................................... 15

*Estate of Jim Garrison v. Warner Bros., Inc.,*
  1996 WL 407849 (C.D. Cal. June 25, 2006) .................................................. 17, 21

*Farley v. Baird, Patrick & Co., Inc.*
  1992 WL 321632 (S.D.N.Y. 1992) ................................................................. 23

*Fisher Bros. v. Mueller Brass Co.,*
  630 F.Supp. 493,  (E.D. Pa. 1985) .................................................................. 12

*Gabriella v. Wells Fargo Fin., Inc.,*
  2008 U.S. Dist. LEXIS 63118 (N.D. Cal. Aug. 4, 2008). ............................. 15

*Hanlon v. Chrysler Corp.,*
  150 F.3d 1011 (9th Cir. 1988) ......................................................................... passim

*Harrington v. City of Albuquerque,*
  222 F.R.D. 505 (D.N.M. 2004). ...................................................................... 23

*In re AOL Time Warner ERISA Litig.,*
  2006 U.S. Dist. LEXIS 70474 (S.D. N.Y. Sept. 27, 2006). .......................... 25

*In re Cardizem CD Antitrust Litigation,*
  200 F.R.D. 326 (E.D. Mich. 2001) ................................................................. 21

*In re Cement and Concrete Antitrust Litigation,*
  1979 WL 1595 (D. Ariz. March 9, 1979) ....................................................... 21

iii

*In re Chlorine & Caustic Soda Antitrust Litig.,*
116 F.R.D. 622 (E.D. Pa. 1987) .................................................................................. 18

*In re Citric Acid Antitrust litig.,*
145 F. Supp. 2d 1152 (N.D. Cal. 2001).................................................................. passim

*In re Citric Acid Antitrust Litig.,*
1996 WL 655791 (N.D. Cal. 1996).......................................................................... passim

*In re Corrugated Container Antitrust Litig.,*
MDL No. 310, 1981 U.S. Dist. LEXIS 11004 (S.D. Tex. Jan. 27, 1981). ........................... passim

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.,*
2006 WL 1530166 (N.D. Cal. June 5, 2006)........................................................ 14, 17, 25

*In re Flat Glass Antitrust Litig.,*
191 F.R.D. 472 (W.D. Pa. 1999)................................................................................ 17

*In re Initial Public Offering Securities Litigation,*
226 F.R.D. 186, (S.D.N.Y. 2005)............................................................................... 15

*In re Linerboard Antitrust Litig.,*
292 F. Supp. 2d 631 (E.D. Pa.2003)......................................................................... passim

*In re Lloyds' Am. Trust Fund Litig.,*
WL 31663577 (S.D.N.Y. Nov. 26, 2002) ..................................................................... 26

*In re Lorazepam & Clorazeopate Antitrust Litigation,*
202 F.R.D. 12 (D.D.C. 2001) ..................................................................................... 20

*In re Methionine Antitrust Litig.,*
Master File No. C-99-3491-CRB (N.D. Cal. Dec. 21, 2000)........................................... 14

*In re Mid-Atlantic Toyota Antitrust Litig.,*
564 F. Supp. 1379 (D. Md. 1983)........................................................................... 12, 13

*In re NASDAQ Market Makers Antitrust Litigation,*
176 F.R.D. 99 (S.D.N.Y. 1997)................................................................................. passim

*Nat'l Rural Telcoms. Coop. v. DIRECTV, Inc.,*
221 F.R.D. 523, 528 (C.D. Cal. 2004)......................................................................... 11

*In re Pacific Enter. Sec. Litig.,*
47 F.3d 373 (9th Cir. 1995)......................................................................................... 8

*In re Potash Antitrust Litigation,*
159 F.R.D. 682 (D. Minn. 1995)................................................................................. 21

*In re Rubber Chemicals Antitrust Litigation,*
232 F.R.D. 346 (N.D. Cal. 2005) ............................................................................. passim

*In re Relafen Antitrust Litig.,*
231 F.R.D. 52 (D. Mass. 2005) ................................................................................. 15

iv

*In re Shopping Carts Antitrust Litig.*,
   No. MDL 451-CLB, M-21-29, 1983 U.S. Dist Lexis 11555 (S.D.N.Y. No. 18, 1983) ............... 9

*In Re Sodium Gluconate Antitrust Litig.*,
   Master File No. C 97-4142 CW (N.D. Cal. Sept. 24, 1998) ....................................... 14

*In re Sorbates Direct Purchaser Antitrust Litig.*,
   Case No. C 98-4886 MMC (N.D. Cal. Mar. 11, 2002) ........................................... 14

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
   2008 WL 4447592 (N.D. Cal. Sept. 29, 2008) .................................................. 13

*In re Sugar Industry*,
   1976 WL 1374 (N.D. Cal. 1976) ........................................................... passim

*In re Tableware Antitrust Litig.*,
   484 F. Supp. 2d 1078 (N.D. Cal. 2007) .................................................... passim

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   267 F.R.D. 291 (N.D. Cal. 2010) ......................................................... 13, 18

*In re Vitamins Antitrust Litig.*,
   2001 WL 856292 (D.D.C. July 25, 2001) .................................................. 11, 25

*In Re Warfarin Sodium Antitrust Litig.*,
   391 F.3d 516 (3d Cir. 2004) ................................................................. 20

*Lerwill v. Inflight Motion Pictures, Inc.*,
   582 F.2d 507 (9th Cir. 1978) ............................................................ 19, 23

*Local Joint Executive Board of Culinary/Bartender Trust Fund*,
   244 F.3d 1152 (9th Cir. 2001) ........................................................... 21, 22

*Mularkey v. Holsum Bakery, Inc.*,
   120 F.R.D. 118 (D. Ariz. 1988) ............................................................. 21

*Nat'l Rural Telcoms. Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ............................................................ 11

*Officers for Justice v. Civil Serv. Comm'n*,
   688 F.2d 615 (9th Cir. 1982) ............................................................. 9, 11

*Oregon Laborers-Employers Health & Welfare Trust Fund v. Philip Morris, Inc.*,
   188 F.R.D. 365 (D. Ore. 1998) ........................................................... 16, 20

*Rutter & Wilbanks Corp. v. Shell Oil Co.*,
   314 F.3d 1180 (10th Cir. 2002) ............................................................. 11

*Tchoboian v. Parking Concepts*,
   2009 U.S. Dist. LEXIS 62122 (N.D. Cal. July 16, 2009) ..................................... 15

*Torrisi v. Tucson Elec. Power Co.*,
   8 F.3d 1370 (9th Cir. 1993) ................................................................ 25

v

*Van Bronkhorst v. Safeco Corp.*,
529 F.2d 943 (9th Cir. 1976) ..................................................................................... 8

*Vasquez v. Coast Valley Roofing, Inc.*,
670 F.Supp.2d 1114 (E.D. Cal. 2009) ..................................................................... 10

*Wellman v. Dickinson*,
497 F.Supp. 824 (S.D.N.Y. 1980) ............................................................................. 9

*West Virginia v. Chas. Pfizer & Co.*,
314 F.Supp. 710 (S.D.N.Y. 1970) ............................................................................. 9

*Wilkerson v. Martin Marietta Corp.*,
171 F.R.D. 273 (D.Colo. 1997) .............................................................................. 11

## **OTHER AUTHORITIES**

Alba Conte & Herbert B. Newberg, 4 *Newberg on Class Actions* at§ 11.25(4th ed. 2002). ........... 10

Alba Conte & Herbert B. Newberg, 4 *Newberg on Class Actions* at *§* 11.4 ............................. 10, 11

Alba Conte & Herbert B. Newberg, 4 *Newberg on Class Actions* at *§* 11.53 ................................ 24

Alba Conte & Herbert B. Newberg, 6 *Newberg On Class Actions* §18:4 ...................................... 16

*Manual for Complex Litigation* (Fourth) § 13.14 at 173 ......................................................... 10, 25

*Moore's Federal Practice* (3d ed. 2003) at §23.63[8] ................................................................. 24

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

          PLEASE TAKE NOTICE that on April 5, 2012, at 2:00 p.m. or as soon thereafter as counsel can be heard, before the Honorable Charles A. Legge (Ret.) at the office of JAMS, Two Embarcadero Center, Suite 1500, San Francisco, California, the Direct Purchaser Plaintiffs ("Plaintiffs") will move this Court, pursuant to Rule 23 of the Federal Rules of Civil Procedure ("FRCP"), for entry of an Order:

        (i)      granting preliminary approval of settlement agreements plaintiffs have executed with defendants (1) Chunghwa Picture Tubes, Ltd. ("CPT"), and (2) Koninklijke Philips Electronics N.V., Philips Electronics North America Corporation, Philips Electronics Industries (Taiwan), Ltd., and Philips Da Amazonia Industria Electronica Ltda. (collectively, "Philips");

        (ii)     certifying a Settlement Class for the CPT and Philips settlements;

        (iii)    appointing Plaintiffs' Interim Lead Counsel as Settlement Class Counsel;

        (iv)    approving the manner and form of giving notice of the settlement agreements to class members as well as the plan of allocation; and

        (v)     establishing a timetable for publishing class notice, lodging objections to the terms of the settlement agreements, if any, and holding a hearing regarding final approval of the settlement agreements.

          The grounds for this motion are that: (a) the Settlements are in the range of possible final approval to justify issuing notice of the Settlements to class members and to schedule final approval proceedings; and (b) that the form and manner of providing notice regarding the matters set forth above satisfy the requirements of FRCP 23 and due process.

          This motion is based upon this Notice of Motion and Motion, the following Memorandum of Law, the Declaration of R. Alexander Saveri ("Saveri Declaration") and the Proposed Order Preliminarily Approving Class Action Settlements with CPT and Philips, the complete files and records in this action; and such other written or oral arguments that may be presented to the Court.

          The settlement agreements with CPT and Philips are attached as Exhibits 1 and 2

1    respectively, to the Saveri Declaration.  The Long Form Notice is attached to the Saveri

2    Declaration as Exhibit 3.  The Summary Notice (*Wall Street Journal)* is attached to the Saveri

3    Declaration as Exhibit 4.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

6         Pursuant to Federal Rule of Civil Procedure 23, Direct Purchaser Class Plaintiffs

7    ("Plaintiffs") move this court for an order preliminary approving Class settlements reached with

8    Defendants  Chunghwa Picture Tubes, Ltd. ("CPT"),  and Koninklijke Philips Electronics N.V.,

9    Philips Electronics North America Corporation, Philips Electronics Industries (Taiwan), Ltd.,

10   Philips Electronics Industries Ltd., Philips Consumer Electronics Co., and Philips da Amazonia

11   Industria Electronica Ltda. ("Philips") (collectively, "Settling Defendants").

12        The settlements with CPT and Philips provide for payment to the class in the amounts of

13   $10 million and $27 million respectively for a complete release of all class members' antitrust

14   claims. Saveri Decl. Exhs 1, 2.  The settlements also provide for extensive cooperation with

15   Plaintiffs regarding the antitrust conspiracy alleged in the complaint. *Id.*  In addition, the sales of

16   both companies remain in the case for the purpose of computing damages against the remaining

17   non-settling Defendants. Saveri Decl. ¶¶ 13, 19.

18        CPT and Philips have both agreed to cooperate with Plaintiffs by providing substantial

19   information regarding existence, scope, and implementation of the alleged conspiracy. Since the

20   execution of its settlement agreement in April 2009, CPT has provided extensive information

21   regarding the formation, implementation and enforcement of the CRT conspiracy.  This

22   information included, among other things, the identification of numerous "Glass Meetings" and bi-

23   lateral meetings between CRT manufacturers, the identification of the participants at these

24   meetings and agreements reached in furtherance of the conspiracy. Saveri Decl. ¶¶ 14, 18.

25        Philips is the first integrated corporate family to settle.  It settled both CRTs and CRT

26   Finished Products.   Its cooperation will include a complete proffer from counsel of its

27   understanding of the antitrust price fixing claims alleged by plaintiffs in their complaint, as well as

28   witnesses for interview and testimony regarding the CRT conspiracy.  Philips, being a European

2

1    company, provides a more global picture of the CRT cartel to complement CPT's Asian based

2    involvement. *Id.*

3          Courts have approved so-called "ice breaker" settlements, such as the ones entered with

4    CPT and Philips, because of their many benefits to the class and their supportive nature to

5    uncovering the individuals involved in the conspiracy. *See In re Linerboard Antitrust Litig.*, 292 F.

6    Supp. 2d 631,643 (E.D. Pa.2003).

7          The Settlements were achieved only after extensive arms-length negotiations and represent

8    outstanding recoveries for the class. Saveri Decl. ¶¶ 11, 16.

9          At this time, this Court is not being asked to determine whether the Settlements and the

10   related plan of allocation are fair, reasonable and adequate.  Rather, the question is simply whether

11   the Settlements and the related plan of allocation are sufficiently within the range of possible

12   approval to justify sending and publishing notice to class members and to schedule a final approval

13   hearing.

14          Plaintiffs hereby seek provisional certification of a settlement class which the settlements

15   with CPT and Philips are both contingent upon. The settlement class is a nationwide class of direct

16   purchasers of CRTs and CRT Finished Products from March 1, 1995 through November 25, 2007

17   ("Settlement Class"). CRTs are defined to mean Cathode Ray Tubes of any type (e.g. color display

18   tubes, color picture tubes and monochrome display tubes).  CRT Finished Products are those

19   products that when finished contain Cathode Ray Tubes – televisions and computer monitors. *Id.* ¶

20   9.  Both settlements are based on the sales of CRTs and CRT Finished Products. *Id.* ¶ 10.

21          Through this motion, plaintiffs seek preliminary approval of each Settlement.  The Court

22   should grant preliminary approval of each Settlement because the Settlements easily satisfy the

23   standard for preliminary approval – that is, they are within the range of possible approval to justify

24   sending and publishing notice of the Settlements to class members and scheduling final approval

25   proceedings. *See In re Tableware Antitrust Litigation*, 484 F.Supp.2d 1078, 1079 (N.D. Cal.

26   2007); *Vasquez v. Coast Valley Roofing, Inc.*, 670 F.Supp.2d 1114, 1125 (E.D. Cal. 2009); *Manual*

27   *for Complex Litigation* (Fourth) § 13.14 at 173 ("First, the judge reviews the proposal preliminarily

28   to determine whether it is sufficient to warrant public notice and a hearing.  If so, the final decision

3

1    on approval is made after the hearing."). Accordingly, plaintiff seeks an order: (i) granting

2    preliminary approval of each Settlement, (ii) certifying settlement classes, (iii) approving the

3    manner and forms of giving notice to the Class, and (iv) establishing a timetable for final approval

4    of the Settlements.

5    ## II.    FACTUAL AND PROCEDURAL HISTORY

6         This multidistrict litigation arises from an alleged conspiracy to fix prices of Cathode Ray

7    Tubes ("CRTs").  In November of 2007, the first direct purchaser plaintiff filed a class action

8    complaint on behalf of itself and all others similarly situated alleging a violation of section one of

9    the Sherman Act, 15 U.S.C. § 1, and section four of the Clayton Act, 15 U.S.C. § 15.  Thereafter,

10   additional actions were filed in other jurisdictions, and the Judicial Panel on Multidistrict Litigation

11   transferred all related actions to this Court on February 15, 2008. (Docket No. 122).  On May 9,

12   2008, Saveri & Saveri, Inc. was appointed Interim Lead Class Counsel for the nationwide class of

13   direct purchasers. (Docket No. 282).

14        On March 16, 2009, the Direct Purchaser Plaintiffs filed their Consolidated Amended

15   Complaint ("CAC") alleging an over-arching horizontal conspiracy among the Defendants and

16   their co-conspirators to fix prices for CRTs and to allocate markets and customers for the sale of

17   CRTs in the United States from March 1, 1995 through November 25, 2007 (the "Class Period").

18   The Complaint alleges that Plaintiffs and members of the Class are direct purchasers of CRTs

19   and/or CRT Finished Products from defendants and/or their subsidiaries and were injured because

20   they paid more for CRTs and/or CRT Finished Products than they would have absent defendants'

21   illegal conspiracy.  (Compl. ¶¶ 213 - 221)  Plaintiffs seek, among other things, treble damages

22   pursuant to Sections 4 of the Clayton Act, 15 U.S.C. §§ 15 and 22.  (Compl., Prayer for Relief )

23        Defendants filed several motions to dismiss the CAC on May 18, 2009. (See Dockets No.

24   463-493).  On February 5, 2010 this court issued its rulings denying in part and granting in part

25   Defendant's motions to dismiss (Report, Recommendations and Tentative Rulings regarding

26   Defendants' Motions to Dismiss-Docket No. 597).   After a subsequent appeal by defendants,

27   Judge Conti on March 30, 2010 entered his order approving and adopting Judge Legge's previous

28   ruling and recommendations regarding Defendants' Motions to Dismiss. (Docket No. 665).  On

1    April 29, 2010 the defendants answered the CAC.

2         In September of 2008, the first of several stays prohibiting plaintiffs from obtaining merits

3    discovery was entered by this Court. (Docket Nos. 379, 425, and 590).  On June 4, 2008, Plaintiffs'

4    propounded their First Set of Limited Document Request. Thereafter, on March 12, 2010, after the

5    partial stay of discovery was lifted, plaintiffs propounded their Second Set of Document Request

6    and First Set of Interrogatories. After extensive meet and confers and several motions to compel,

7    the court issued its Report Regarding Case Management Conference No. 4 on October 27, 2011 in

8    which it set the middle of December 2011 as the deadline for the completion of substantial

9    discovery by all parties. (Docket Nos. 1007, 1008). Plaintiffs have now received over 5 million

10   pages of documents produced by Defendants.

11        Just recently, on March 19, 2012, this court issued its Scheduling Order setting August 30,

12   2013 as the date for completion of all fact and expert discovery. (Docket No. 1093)

13   **III.      THE TERMS OF THE SETTLEMENTS**

14        The Direct Purchaser Plaintiffs have executed Settlement Agreements with both CPT and

15   Philips.   As explained in detail below, each Settlement provides for a release of class members'

16   claims in exchange for a substantial cash payment and cooperation with Plaintiffs regarding the

17   price-fixing claims asserted in their Complaint.  The CPT and Philips settlements request

18   certification of a settlement class of direct purchasers of CRTs and/or CRT Finished Products from

19   defendants and their co-conspirators from March 1, 1995 through November 25, 2007.  CPT,

20   Philips and Plaintiffs have stipulated to a class as it is defined in Plaintiffs' operative complaint.

21   Saveri Decl. Ex. 1 - CPT Settlement ¶ 1, Ex. 2 - Philips Settlement ¶ 1.

22        **A.      The CPT Settlement.**

23        In exchange for dismissal with prejudice and a release of all claims asserted in the

24   Complaint, CPT has agreed to pay Ten Million Dollars ($10 million) in cash.  The settlement funds

25   have been paid and deposited into a separate interest bearing escrow account for the Direct

26   Purchaser Class. *Id.* ¶ 12.

27        In addition to monetary value, the Settlement provides significant additional benefits to the

28   Class. First, CPT has agreed to provide (and has provided) Plaintiffs with significant and valuable

5

cooperation in the prosecution of the case against the remaining defendants.  CPT's obligations include, among other things, producing in the United States relevant documents and witnesses for discovery and trial. *Id.* ¶ 14.  Second, CPT's sales remain in the case for purposes of computing damages against the non-settling defendants.  *Id.* ¶ 13.

Upon the Settlement becoming final, Plaintiff and Class members will relinquish any claims they have against CPT based, in whole or in part, on matters alleged or that might have been alleged in this litigation. Saveri Decl. Ex. 1, CPT Settlement ¶ 13.  The release, however, excludes claims for product defects or personal injury.  *Id.*

The Settlement becomes final upon: (i) the Court's approval of the Settlement pursuant to Rule 23(e) and the entry of a final judgment of dismissal with prejudice as to CPT; and (ii) the expiration of the time for appeal or, if an appeal is taken, the affirmance of the judgment with no further possibility of appeal. Saveri Decl. Ex. 1, CPT Settlement ¶ 11.

Subject to the approval and direction of the Court, the Settlement payment, plus accrued interest thereon, will be used to: (i) make a distribution to Class members in accordance with a proposed plan of allocation to be approved by the Court (Saveri Decl. Ex. 1, CPT Settlement ¶ 20-21); (ii) pay Class Counsel's attorneys' fees, costs, and expenses as may be awarded by the Court (*Id.*, CPT Settlement ¶ 22-23.); (iii) that $400,000 may be used to pay for Notice costs and future costs incurred in the administration and distribution of the Settlement payments (*Id.*, CPT Settlement ¶ 19(a)); and (iv) pay all taxes associated with any interest earned on the escrow account.  (*Id.*, CPT Settlement ¶ 17(f))  Furthermore, CPT has agreed that, subject to Court approval, up to $500,000 of the Settlement Fund may be used for the prosecution of the case against the non-settling defendants. (*Id.*, CPT Settlement ¶ 19(c))

## B.  The Philips Settlement.

In exchange for dismissal with prejudice and a release of all claims asserted in the Complaint, Philips has agreed to pay Twenty-Seven Million Dollars ($27 million) in cash. Saveri Decl. Ex. 2, Philips Settlement ¶ 6.  The $27 million settlement amount is subject to reduction based on the number of exclusions from the class after notice.  Saveri Decl. Ex. 2, Philips Settlement ¶ 18.  The Philips settlement funds are to be deposited in installments with the first

$12,000,000 to be deposited within approximately 60 days from execution of the settlement. Saveri Decl. Ex. 2, Philips Settlement ¶ 16.

In addition to its monetary value, the Settlement provides significant additional benefits to the Class. First, Philips has agreed to provide Plaintiffs with significant and valuable cooperation in the prosecution of the case against the remaining non-settling defendants. Philips is the first integrated defendant – tubes and finished products manufacturer/defendant – to have settled. In addition, Philips, being a European manufacturer, has European centric information on the CRT price fixing conspiracy which is in addition to and complementary to CPT's Asian centric information. Philip's obligations include, among other things, attorney proffers of Philips involvement in the CRT conspiracy and producing relevant documents and witnesses for discovery and trial. Saveri Decl. Ex. 2, Philips Settlement ¶ 24. Second, Philips sales remain in the case for purposes of computing damages against the non-settling defendants. Saveri Decl. ¶ 19.

Upon the Settlement becoming final, Plaintiff and Class members will relinquish any claims they have against Philips based, in whole or in part, on matters alleged or that might have been alleged in this litigation. Saveri Decl. Ex. 2, Philips Settlement ¶ 13. The release, however, excludes claims for product defects or personal injury. *Id.*

The Settlement becomes final upon: (i) the Court's approval of the Settlement pursuant to Rule 23(e) and the entry of a final judgment of dismissal with prejudice as to Philips and related companies; and (ii) the expiration of the time for appeal or, if an appeal is taken, the affirmance of the judgment with no further possibility of appeal. Saveri Decl. Ex. 2, Philips Settlement ¶ 11.

Subject to the approval and direction of the Court, the Settlement payment, plus accrued interest thereon, will be used to: (i) make a distribution to Class members in accordance with a proposed plan of allocation to be approved by the Court (Saveri Decl. Ex. 2, Philips Settlement ¶ 20-21); (ii) pay Class Counsel's attorneys' fees, costs, and expenses as may be awarded by the Court (*Id.*, Philips Settlement ¶ 22-23.); (iii) pay up to $500,000 for Notice costs and future costs incurred in the administration and distribution of the Settlement payments (*Id.*, Philips Settlement ¶ 19(a)); and (iv) pay all taxes associated with any interest earned on the escrow account. Saveri Decl. Ex. 2, Philips Settlement ¶ 17(f). Furthermore, CPT has agreed that, subject to Court

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS
WITH CHUNGHWA PICTURE TUBES, LTD. AND PHILIPS; Master File No. CV-07-5944-SC

1  approval, up to $500,000 of the Settlement Fund may be used for the prosecution of the case

2  against the non-settling defendants. Saveri Decl. Ex. 2, Philips Settlement ¶ 19(c).

3  **IV.      THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENTS**

4        **A.      Class Action Settlement Procedure.**

5        A class action may not be dismissed, compromised, or settled without the approval of the

6  Court.  Judicial proceedings under Federal Rule of Civil Procedure 23 have led to a defined

7  procedure and specific criteria for class action settlement approval. The Rule 23(e) settlement

8  approval procedure includes three distinct steps:

9        1.      Preliminary approval of the proposed settlements;

10        2.      Dissemination of notice of the settlements to all affected class members; and

11        3.      A formal fairness hearing, also called the final approval hearing, at which class

12              members may be heard regarding the settlements, and at which counsel may

13              introduce evidence and present argument concerning the fairness, adequacy, and

14              reasonableness of the settlements.

15  This procedure safeguards class members' due process rights and enables the Court to fulfill its

16  role as the guardian of class interests. *See* 4 Newberg on Class Actions §§ 11.22, et seq. (4th ed.

17  2002) ("Newberg").

18        By way of this motion, Plaintiffs respectfully request that the Court take the first steps in

19  the settlement approval process and certify the proposed Settlement Class, preliminarily approve

20  the proposed CPT and Philips settlements and appoint Plaintiffs' Interim Lead Counsel as Class

21  Counsel for these settlements.

22        **B.      Standard for Settlement Approval**

23        Rule 23(e) requires court approval of any settlement of claims brought on a class basis.

24  "[T]here is an overriding public interest in settling and quieting litigation . . . particularly . . . in

25  class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *see also*

26  *Churchill Village, L.L.C. v. General Elec.*, 361 F.3d 566, 576 (9th Cir. 2004); *In re Pacific Enter.*

27  *Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276

28  (9th Cir. 1992).  It is well-recognized that "[v]oluntary out of court settlement of disputes is 'highly

8

1    favored in the law' and approval of class action settlements will be generally left to the sound

2    discretion of the trial judge." *Wellman v. Dickinson,* 497 F.Supp. 824, 830 (S.D.N.Y. 1980)

3    (citation omitted). Courts have particularly recognized that compromise is favored for antitrust

4    litigation – which is notoriously difficult and unpredictable. *See In re Shopping Carts Antitrust*

5    *Litig.,* No. MDL 451-CLB, M-21-29, 1983 U.S. Dist Lexis 11555, at *17-18 (S.D.N.Y. No. 18,

6    1983); *West Virginia v. Chas. Pfizer & Co.*, 314 F.Supp. 710, 743-44 (S.D.N.Y. 1970), *aff'd*, 440

7    F.2d 1079 (2d Cir. 1971).

8       The purpose of the Court's preliminary evaluation of the proposed settlement is to

9    determine whether it is within "the range of reasonableness," and thus whether notice to the Class

10    of the terms and conditions of the settlement, and the scheduling of a formal fairness hearing, are

11    worthwhile. Preliminary approval should be granted where "the proposed settlement appears to be

12    the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not

13    improperly grant preferential treatment to class representatives or segments of the class and falls

14    within the range of possible approval." *In re NASDAQ Market Makers Antitrust Litigation*, 176

15    F.R.D. 99, 102 (S.D.N.Y. 1997). Application of these factors here support an order granting the

16    motion for preliminary approval.

17       The approval of a proposed settlement of a class action is a matter of discretion for the trial

18    court. *Churchill Village,* 361 F.3d at 575. In exercising that discretion, however, courts recognize

19    that as a matter of sound policy, settlements of disputed claims are encouraged and a settlement

20    approval hearing should "not be turned into a trial or rehearsal for trial on the merits." *Officers for*

21    *Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982), *cert. denied sub nom. Byrd v.*

22    *Civil Serv. Comm'n*, 459 U.S. 1217 (1983). Furthermore, courts must give "proper deference" to

23    the settlement agreement, because "the court's intrusion upon what is otherwise a private

24    consensual agreement negotiated between the parties to a lawsuit must be limited to the extent

25    necessary to reach a reasoned judgment that the agreement is not the product of fraud or

26    overreaching by, or collusion between, the negotiating parties, and the settlement, taken as a whole,

27    is fair, reasonable and adequate to all concerned." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027

28    (9th Cir. 1988) (quotations omitted).

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS
WITH CHUNGHWA PICTURE TUBES, LTD. AND PHILIPS; Master File No. CV-07-5944-SC

To grant preliminary approval of this class action settlement, the Court need only find that the settlement falls within "the range of reasonableness." *Newberg* § 11.25. The *Manual for Complex Litigation* (Fourth) (2004) ("*Manual*") characterizes the preliminary approval stage as an "initial evaluation" of the fairness of the proposed settlement made by the court on the basis of written submissions and informal presentation from the settling parties. *Manual* § 21.632. The *Manual* summarizes the preliminary approval criteria as follows:

> Fairness calls for a comparative analysis of the treatment of the class members vis-à-vis each other and vis-à-vis similar individuals with similar claims who are not in the class. Reasonableness depends on an analysis of the class allegations and claims and the responsiveness of the settlement to those claims. Adequacy of the settlement involves a comparison of the relief granted to what class members might have obtained without using the class action process.

*Manual* § 21.62. A proposed settlement may be finally approved by the trial court if it is determined to be "fundamentally fair, adequate, and reasonable." *City of Seattle*, 955 F.2d at 1276. Preliminary approval requires only that the terms of the proposed settlement fall within the "range of possible approval." *See In re Tableware Antitrust Litigation*, 484 F.Supp.2d at 1079; *Vasquez*, 670 F.Supp.2d at 1125. It amounts to a determination that the terms of the proposed settlement warrant consideration by members of the class and a full examination at a final approval hearing. *Manual for Complex Litigation* (Fourth) § 13.14 at 173. While consideration of the requirements for *final* approval is unnecessary at this stage, all of the relevant factors weigh in favor of the settlements proposed here. As shown below, the proposed Settlements are fair, adequate, and reasonable. Therefore, the Court should allow notice of the settlements to be disseminated to the Class.

## C.    The Proposed Settlements Are Within The Range Of Reasonableness

The proposed settlements with CPT and Philips meet the standards for preliminary approval. These settlements are entitled to "an initial presumption of fairness" because they are the result of arm's length negotiations among experienced counsel. *Newberg* § 11.4. Because it is provisional, courts grant preliminary approval where the proposed settlement lacks "obvious deficiencies" raising doubts about the fairness of the settlement. *See, e.g., In re Vitamins Antitrust*

10

1    *Litig.,* 2001 WL 856292, at *4 (D.D.C. July 25, 2001) (quoting *Manual for Complex Litigation*

2    (Third) §30.41).

3            First, each of the negotiations occurred over a span of many months and involved

4    telephonic and face to face meetings and the review of industry materials and documents.  They

5    were contested and conducted in the utmost good faith. Saveri Decl. ¶¶ 11, 16.  Counsel's

6    judgment that the Settlements are fair and reasonable is entitled to great weight. *See Nat'l Rural*

7    *Telcoms. Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("'Great weight' is

8    accorded to the recommendation of counsel, who are most closely acquainted with the facts of the

9    underlying litigation."); *accord Bellows v. NCO Fin. Sys.,* 2008 U.S. Dist. LEXIS 103525 at *22

10   (S.D. Cal. Dec. 2, 2008); *Rutter & Wilbanks Corp. v. Shell Oil Co.,* 314 F.3d 1180, 1188 (10th Cir.

11   2002); *Wilkerson v. Martin Marietta Corp.,* 171 F.R.D. 273, 288-89 (D. Colo. 1997); *Officers for*

12   *Justice v. Civil Service Com'n,* 688 F.2d 615, 625 (9th Cir. 1982); *Rutter & Wilbanks Corp. v. Shell*

13   *Oil Co.,* 314 F.3d 1180, 1188 (10th Cir. 2002.

14           In fact, "the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute

15   its own judgment for that of counsel." *Nat'l Rural Telcoms.*, 221 F.R.D. at 528 *quoting Cotton v.*

16   *Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977).   Indeed, there is generally "an initial presumption of

17   fairness when a proposed class settlement, which was negotiated at arms' length by counsel for the

18   class, is presented for court approval." Alba Conte & Herbert B. Newberg, 4 *Newberg on Class*

19   *Actions* at 11.41 (4th ed. 2002).

20           Second, the consideration for each Settlement is substantial.  The CPT Settlement provides

21   for a payment of Ten Million Dollars ($10,000,000). Saveri Decl. ¶ 12.  The Philips Settlement

22   provides for a settlement amount of Twenty-Seven Million Dollars ($27,000,000). Saveri Decl. ¶

23   17.  The Philips settlement amount is subject to a reduction based on the percentage of sales to

24   class members that opt-out of the Direct Purchaser Settlement Class. Saveri Decl. Ex. 2, (Philips

25   reduction formula).  The Settlements compare favorably to settlements finally approved in other

26   price-fixing cases. *See, e.g., Fisher Bros. v. Mueller Brass Co.,* 630 F.Supp. 493, 499 (E.D. Pa.

27   1985) (recoveries equal to .1%, .2%, 2%, .3%, .65%, .88%, and 2.4% of defendants' total sales).

28

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS
WITH CHUNGHWA PICTURE TUBES, LTD. AND PHILIPS; Master File No. CV-07-5944-SC

1        Third, the settlements call for CPT and Philips to cooperate with Plaintiffs. Saveri Decl. ¶¶

2 14, 18.  This is a valuable benefit because it will save time, reduce costs, and provide access to

3 information, witnesses, and documents regarding the CRT conspiracy that might otherwise not be

4 available to Plaintiffs. *See In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1386 (D.

5 Md. 1983) (a defendant's agreement to cooperate with plaintiffs "is an appropriate factor for a

6 court to consider in approving a settlement").

7        In terms of both the CPT and Philips settlements they are the first defendants to settle with

8 Plaintiffs. The significant value of such "ice breaker" settlements greatly increases the likelihood to

9 the class for future settlements:

10          The Court also notes that this settlement has significant value as an 'icebreaker'
         settlement—it is the first settlement in the litigation—and should

11          increase the likelihood of future settlements. An early settlement with
         one of many defendants can 'break the ice' and bring other defendants to

12          the point of serious negotiations.

13 *In Re Linerboard,* 292 F. Supp. 2d at 643, citing *In re Corrugated Container Antitrust Litig.,* MDL

14 No. 310, 1981 U.S. Dist. LEXIS 11004, at *19 (S.D. Tex. Jan. 27, 1981).

15        CPT has already provided significant cooperation to Plaintiffs.  In February of 2009, CPT's

16 counsel described the Defendants' price-fixing conspiracy in detail during a series of discussions

17 with plaintiffs' Interim Lead Counsel pursuant to the Settlement.  This information was invaluable

18 to Plaintiffs in drafting their CAC and overcoming defendants' motions to dismiss. Thereafter,

19 once the DOJ's stay of merit's discovery was lifted in March of 2010, CPT produced

20 approximately 500 translated meeting reports evidencing anti-competitive agreements between the

21 Defendants. In addition, CPT has provided proffers of CPT witnesses setting forth the witnesses'

22 first-hand knowledge of the conspiracy, agreements reached and the Defendant participants at these

23 meetings.  These witnesses will also testify against the non-settling Defendants if required.

24        Philips is the first integrated company to settle with Plaintiffs – CRT tubes as well as TVs

25 and monitors containing CRTs (finished products).  In addition, Philips, being a European

26 manufacturer, has European centered information on the CRT price fixing conspiracy which is in

27 addition to and complimentary to, CPT's Asian centered information.  Philip's obligations include,

28 among other things, attorney proffers of Philips involvement in the CRT conspiracy, producing

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS
WITH CHUNGHWA PICTURE TUBES, LTD. AND PHILIPS; Master File No. CV-07-5944-SC

1    relevant documents and witnesses for discovery and trial. Saveri Decl. ¶ 18.

2    "The provision of such assistance is a substantial benefit to the classes and strongly

3    militates toward approval of the Settlement Agreements." *In re Linerboard,* 292 F. Supp. 2d at 643.

4    *See also In re Mid-Atl. Toyota Antitrust Litig.,* 564 F. Supp. 1379, 1386 (D. Md. 1983) (concluding

5    that commitment to cooperate is appropriate factor to consider in approving partial settlement); *In*

6    *re Corrugated Container,* 1981 U.S. Dist. LEXIS 11004, at *16 ("The cooperation clauses

7    constituted a substantial benefit to the class."). In addition, "[i]n complex litigation with a plaintiff

8    class, 'partial settlements often play a vital role in resolving class actions.'" *Agretti v. ANR Freight*

9    *Sys., Inc.,* 982 F.2d 242, 247 (7th Cir. 1992) (quoting Manual for Complex Litigation Second, §

10   30.46 (1986)).

11   Finally, these settlements preserve Plaintiff's right to litigate against the non-settling

12   defendants for the entire amount of Plaintiff's damages based on joint and several liability. *See In*

13   *re Corrugated Container Antitrust Litig.,* Case No. M.D.L. 310, 1981 WL 2093, at *17 (S.D. Tex.

14   June 4, 1981); Saveri Decl. ¶¶ 13, 19 (Released claims do not preclude Plaintiffs from pursuing any

15   and all claims against other non-settling defendants for the sales attributable to CPT and Philips).

16   For all the aforementioned reasons, the proposed settlements are within the range of

17   obtaining final approval as fair, reasonable, and adequate.

18   **V.    THE COURT SHOULD PROVISIONALLY CERTIFY THE CPT AND PHILIPS
        SETTLEMENT CLASSES**

19   The Court should provisionally certify the settlement classes required by the CPT and

20   Philips Settlements. (Saveri Decl. Ex 1, CPT Settlement ¶ 1; Ex 2, Philips Settlement ¶ 1.) It is

21   well-established that price-fixing actions like this one are appropriate for class certification and

22   many courts have so held. *See, e.g., In re TFT-LCD (Flat Panel) Antitrust Litig.,* 267 F.R.D. 291

23   (N.D. Cal. 2010) (Illston J.)("*LCD*"); *In re Static Random Access Memory (SRAM) Antitrust Litig.,*

24   2008 WL 4447592 (N.D. Cal. Sept. 29, 2008) (Wilken J.) ("*SRAM*"); *In re Dynamic Random*

25   *Access Memory (DRAM) Antitrust Litig.,* 2006 WL 1530166 (N.D. Cal. June 5, 2006) (Hamilton

26   J.); *In re Rubber Chemicals Antitrust Litigation,* 232 F.R.D. 346, 350 (N.D. Cal. 2005) (Jenkins J.)

27   ("*Rubber Chemicals*"); *In re Citric Acid Antitrust Litig.,* 1996 WL 655791 (N.D. Cal. 1996) (Smith

28

13

J.) (*"Citric Acid"*); *In re Sorbates Direct Purchaser Antitrust Litig.*, Case No. C 98-4886 MMC

(N.D. Cal. Mar. 11, 2002 (Order Granting Plaintiffs' Motion for Class Certification; Vacating

Hearing (Chesney, J.)) (*"Sorbates"*); *In re Methionine Antitrust Litig.*, Master File No. C-99-3491-

CRB (N.D. Cal. Dec. 21, 2000 (Order Granting Motion for Class Certification (Breyer, J.))

(*"Methionine"*); *In Re: Sodium Gluconate Antitrust Litig.*, Master File No. C 97-4142 CW (N.D.

Cal. Sept. 24, 1998 (Order Granting Class Certification) (Wilken, J.)) (*"Sodium Gluconate"*).

The settlement class stipulated by the parties and contemplated by the settlement

agreements is the following (the "Class"):

> All persons and entities who, between March 1, 1995 and November 25, 2007,
> directly purchased a CRT Product in the United States from any defendant or
> subsidiary or affiliate thereof, or any co-conspirator.  Excluded from the Class are
> defendants, their parent companies, subsidiaries and affiliates, any co-conspirator,
> all governmental entities, and any judges or justices assigned to hear any aspect of
> this action.

CRT Products refers to all forms of Cathode Ray Tubes.  It includes CPTs, CDTs

and the finished products that contain them – televisions and monitors.

### A.      The Requirements of Rule 23 in the Context of the Settlement Class

Rule 23 provides that a court must certify an action as a class action where, as here,

plaintiffs satisfy the four prerequisites of Rule 23(a), and one of the three criteria set forth in Rule

23(b).  Rule 23(a) provides that a class may be certified if:  (1) the class is so numerous that joinder

of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the

claims or defenses of the representative parties are typical of the claims or defenses of the class;

and (4) the representative parties will fairly and adequately protect the interests of the class.

Rule 23(b)(3) provides that "an action may be maintained as a class action" if:

> the court finds that the questions of law or fact common to the
> members of the class predominate over any questions affecting only
> individual members, and that a class action is superior to other
> available methods for the fair and efficient adjudication of the
> controversy.

The Rule 23(b)(3) "manageability" requirements, however, need not be satisfied in order to

certify a class in the settlement context: "Confronted with a request for settlement-only class

certification, a district court need not inquire whether the case, if tried, would present intractable

14

1    management problems, . . . for the proposal is that there be no trial." *Amchem Products, Inc. v.*

2    *Windsor*, 521 U.S. 591, 620 (1997), *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 68 (D. Mass.

3    2005) (same).  As Judge Posner has explained, manageability concerns that might preclude

4    certification of a litigated class may be disregarded with a settlement class "because the settlement

5    might eliminate all the thorny issues that the court would have to resolve if the parties fought out

6    the case." *Carnegie v. Household International, Inc.*, 376 F. 3d 656, 660 (7th Cir. 2004) (citing

7    *Amchem*, 521 U.S. at 620; *see also In re Initial Public Offering Securities Litigation*, 226 F.R.D.

8    186, 190, 195 (S.D.N.Y. 2005) (settlement class may be broader than litigated class because

9    settlement resolves manageability/predominance concerns).

10          A Rule 23 determination is procedural and does not concern whether a plaintiffs will

11   ultimately prevail on the substantive merits of their claims.  *Eisen v. Carlisle and Jacquelin*, 417

12   U.S. 156, 177-78 (1974); *Tchoboian v. Parking Concepts*, 2009 U.S. Dist. LEXIS 62122, *5 (N.D.

13   Cal. July 16, 2009); *Gabriella v. Wells Fargo Fin., Inc.*, 2008 U.S. Dist. LEXIS 63118, *7 (N.D.

14   Cal. Aug. 4, 2008).  In ruling on a motion for class certification, the substantive allegations in

15   plaintiffs' complaint must be accepted as true.  *Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir.

16   1975); *Rubber Chemicals*, 232 F.R.D. at 350.  Therefore, the only issue on a motion for class

17   certification is whether plaintiff is asserting a claim which, assuming its merit, will satisfy the

18   requirement of Rule 23. *Eisen*, 417 U.S. at 178 (quoting *Miller v. Mackey Int'l, Inc.*, 452 F.2d 424,

19   427 (5th Cir. 1971)).

20          **B.      The Requirements of Rule 23(a) Are Satisfied In This Case.**

21                  **1.  The Class Is So Numerous That Joinder of All Members Is Impracticable**

22          The first requirement for maintaining a class action under Rule 23 is that the class be so

23   numerous that joinder of all members would be "impracticable."  Fed. R. Civ. P. 23(a)(1).  To

24   satisfy this prerequisite, Plaintiff need not allege the precise number or identity of class members.

25   *Rubber Chemicals*, 232 F.R.D. at 350 ("Plaintiffs do not need to state the exact number of potential

26   class members, nor is a specific number of class members required for numerosity."); *In re Sugar*

27   *Industry Antitrust Litig.*, 1976 WL 1374 at *12 (N.D. Cal. 1976) (same).  Rather, a finding of

28   numerosity may be supported by common sense assumptions.  *Rubber Chemicals*, 232 F.R.D. at

15

350; *Citric Acid,* 1996 WL 655791 at *3.

Courts have not defined the exact number of putative class members that is required for class certification but have generally found that the numerosity requirement is satisfied when class members exceed forty.  Alba Conte & Herbert B. Newberg, 6 *Newberg On Class Actions* §18:4 (4th ed. 2002); *see also Oregon Laborers-Employers Health & Welfare Trust Fund v. Philip Morris, Inc.*, 188 F.R.D. 365, 372-73 (D. Ore. 1998).  Geographic dispersal of plaintiffs may also support a finding that joinder is "impracticable." *Rubber Chemicals*, 232 F.R.D. at 350-51; *LCD*, 267 F.R.D. at 300 (given the nature of the LCD market, "common sense dictates that joinder would be impracticable.").

In this case, the transactional data produced so far indicates that the Class contains hundreds of members dispersed across the country who directly purchased CRT Products from the Settling Defendants and their co-conspirators from March 1, 1995 through November 25, 2007.  Saveri Decl. ¶ 21.  Thus, the proposed Class readily satisfies the numerosity requirement of Rule 23.

## 2.   This Case Involves Questions of Law and Fact Common to the Class

The second requirement for class certification under Rule 23 is that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  The Ninth Circuit has ruled that the commonality requirement is to be "construed permissively." *Hanlon*, 150 F.3d at 1019.  A court must assess if "the class is united by a common interest in determining whether a defendant's course of conduct is in its broad outlines actionable." *Blackie*, 524 F.2d at 902.  This requirement, however, is easily met: it is satisfied by the existence of a single common issue. *In re Flat Glass Antitrust Litig.,* 191 F.R.D. 472, 478 (W.D. Pa. 1999).

The commonality requirement is readily satisfied here.  "Courts consistently have held that the very nature of a conspiracy antitrust action compels a finding that common questions of law and fact exist." *Rubber Chemicals,* 232 F.R.D. at 351 (quoting *In re Sugar Industry*, 1976 WL 1374 at *13)(internal quotations omitted).  Here, there are numerous questions of law and fact common to the Class which are at the heart of this case.   These common questions of law and fact include the seminal issue of whether the Defendants engaged in a price-fixing agreement which

16

1    injured the class when they paid more for CRTs and/or CRT Finished Products than they would

2    have, absent the alleged price-fixing conspiracy. The overarching and unifying common questions

3    of law and fact predominate in this case and include:

4         (1)    whether Settling Defendants and their Co-Conspirators
5                conspired to raise, fix, stabilize or maintain the prices of
                 CRTs and/or CRT Finished Products sold in the United
6                States;

7         (2)    whether the alleged conspiracy violated Section 1 of the
                 Sherman Act;

8         (3)    the duration and extent of the conspiracy;

9         (4)    whether Settling Defendants' conduct caused prices of CRTs
10               and/or CRT Finished Products to be set at artificially high and
                 non-competitive levels; and

11        (5)    whether Settling Defendants' conduct injured Plaintiffs and
                 other members of the Class and, if so, the appropriate class-
12               wide measure of damages.

13            These issues constitute a common core of questions focusing on the central issue of the

14   existence and effect of the alleged conspiracy and plainly satisfy the commonality requirement of

15   Rule 23(a)(2). *Estate of Jim Garrison v. Warner Bros., Inc.*, 1996 WL 407849, at *2 (C.D. Cal.

16   June 25, 2006) (Plaintiffs' allegations "which constitute the classic hallmark of antitrust class

17   actions under Rule 23 . . . are more than sufficient to satisfy the commonality requirement"); *Flat*

18   *Glass*, 191 F.R.D. at 479 ("[g]iven plaintiffs' allegation of a § 1 conspiracy, the existence, scope

19   and efficacy of the alleged conspiracy are certainly questions that are common to all class

20   members.") Similar common questions have been found to satisfy the commonality requirement in

21   other antitrust class actions in the Northern District of California. *In re Dynamic Random Access*

22   *Memory (DRAM) Antitrust Litig.*, Case No. M 02-1486 PJH, 2006 U.S. Dist. LEXIS 39841, at *29

23   (N.D. Cal. June 5, 2006) ("the very nature of a conspiracy antitrust action compels a finding that

24   common questions of law and fact exist."); *In re Rubber Chem. Antitrust Litig.*, 232 F.R.D. 346,

25   351 (N.D. Cal. 2005)(same); *LCD*, 267 F.R.D. 291, 300 (N.D. Cal. 2010) (same).

26

27

28

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS
WITH CHUNGHWA PICTURE TUBES, LTD. AND PHILIPS; Master File No. CV-07-5944-SC

### 3. The Claims of the Representative Party are Typical of the Claims of the Class

The third requirement for maintaining a class action under Rule 23(a) is that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon,* 150 F.3d at 1020. "Generally, the class representatives 'must be part of the class and possess the same interest and suffer the same injury as the class members.'" *LCD,* 267 F.R.D. 291, 300 (citing *Falcon,* 457 U.S. at 156). "The overarching scheme is the linchpin of plaintiffs' … complaint, regardless of the product purchased, the market involved or the price ultimately paid. Furthermore, the various products purchased and the different amount of damage sustained by individual plaintiffs do not negate a finding of typicality, provided the cause of those injuries arises from a common wrong." *In re Flat Glass Antitrust Litig.,* 191 F.R.D. 472, 480 (W.D.Pa.1999).

Courts have generally found the typicality requirement to be satisfied in horizontal price-fixing cases. As explained in *In re Chlorine & Caustic Soda Antitrust Litig.*:

> Plaintiffs seek to recover treble damages from defendants measured by the alleged overcharge resulting from defendants' conspiracy to fix prices. In order to prevail on the merits in this case the plaintiffs will have to prove the same major elements that the absent members of the class would have to prove. Those elements are a conspiracy, its effectuation and resulting damages. As such, the claims of the plaintiffs are not antagonistic to and are typical of the claims of the other putative class members.

116 F.R.D. 622, 626 (E.D. Pa. 1987); *see also Rubber Chemicals,* 232 F.R.D. at 351; *Citric Acid,* 1996 WL 655791 at *3 ("The alleged underlying course of conduct in this case is defendants' conspiracy to fix the price of citric acid and to allocate customers among themselves . . . The legal theory that plaintiffs rely on is antitrust liability. Because plaintiffs and all class members share these claims and this theory, the representatives' claims are typical of all.").

Plaintiffs here allege a conspiracy to fix, raise, maintain and stabilize the price of CRTs and/or CRTs contained in CRT Finished Products sold in the United States. Class members' claims are based on the same legal theories. Plaintiffs would have to prove the same elements that absent members would have to prove: the existence, scope, and efficacy of the conspiracy. The

18

typicality requirement of Rule 23(a)(3) is plainly satisfied.

### 4. The Representative Plaintiffs Will Fairly and Adequately Protect the Interests of the Class

The fourth requirement of Rule 23 mandates that the representative plaintiffs fairly and adequately represent the class. Fed. R. Civ. P. 23(a)(4). The adequacy requirement consists of two separate inquiries. First, the representative plaintiff must not possess interests which are antagonistic to the interests of the class. Second, plaintiff must be represented by counsel of sufficient diligence and competence to fully litigate the claim. *Hanlon*, 150 F.3d at 1020; *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978).

The representative plaintiffs here meet both aspects of the adequacy test. There are no actual or potential conflicts of interest between the representative plaintiffs and the members of the class. Plaintiffs, as well as each member of the class, were overcharged for CRTs and/or CRT Finished Products and have a mutual interest in establishing liability and recovering damages. The basis of the claims against defendants is a price-fixing conspiracy that artificially raised the prices charged to every Class member, each of whom directly purchased CRTs and/or CRT Finished Products from one or more of the defendants during the Class Period. Defendants, therefore, allegedly injured plaintiffs and the Class members in the same manner. Plaintiffs seek relief substantially identical to that sought by every other Class member. Accordingly, the interests of the representative plaintiffs and the putative class members in recovering the overcharges are the same.

Moreover, Plaintiff has retained highly capable and well-recognized counsel with extensive experience in antitrust cases. Plaintiffs' counsel, Saveri & Saveri, Inc., was appointed by the Court as Interim Lead Counsel on May 9, 2010. It has undertaken the responsibilities assigned to it by the Court and has directed the efforts of other Plaintiffs' counsel in vigorously prosecuting this action. Plaintiffs' counsel has successfully prosecuted numerous antitrust class actions on behalf of injured purchasers throughout the United States. Plaintiffs' counsel is capable of, and committed to, prosecuting this action vigorously on behalf of the Class. Plaintiffs' counsel's prosecution of

this case, and, indeed, the Settlements, amply demonstrate their diligence and competence. Therefore, the named plaintiffs satisfy the requirements of Rule 23(a)(4).

**C.      The Proposed Class Satisfies The Requirements Of Rule 23(B)(3)**

Once it is determined that the proposed class satisfies the requirements of Rule 23(a), a class must be certified under Rule 23(b)(3) if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." "Judicial economy and fairness are the focus of the predominance and superiority requirements." *Oregon Laborers-Employers*, 188 F.R.D. at 375. Plaintiff's claims meet these requirements.

**1.      Common Questions of Law and Fact Predominate Over Individual Questions**

As the United States Supreme Court has noted, predominance is a test that is "readily met" in antitrust cases. *Amchem Prods.*, 521 U.S. at 625; *see also In Re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 528 (3d Cir. 2004). The overwhelming weight of authority holds that in horizontal price-fixing cases, the predominance requirement is readily satisfied. *LCD* 267 F.R.D. 291, 310 ("Courts have frequently found that whether a price-fixing conspiracy exists is a common question that predominates over other issues because proof of an alleged conspiracy will focus on defendants' conduct and not on the conduct of individual class members.")

In determining whether common questions predominate in a price fixing case, "the focus of this court should be principally on issues of liability." *In re Sugar Industry*, 1976 WL 1374 at *22; *Citric Acid*, 1996 WL 655791 at *6; *see also Local Joint Executive Board of Culinary/Bartender Trust Fund v. Las Vegas*, 244 F.3d 1152, 1163 (9th Cir. 2001); *Hanlon*, 150 F.3d at 1022 ("common nucleus of facts and potential legal remedies dominates this litigation").

Common questions need only predominate; they do not need to be dispositive of the litigation as a whole. *In re Lorazepam & Clorazeopate Antitrust Litigation*, 202 F.R.D. 12, 29 (D.D.C. 2001); *In re Cardizem CD Antitrust Litigation*, 200 F.R.D. 326, 339 (E.D. Mich. 2001); *In re Potash Antitrust Litigation*, 159 F.R.D. 682, 693 (D. Minn. 1995). The predominance standard

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS WITH CHUNGHWA PICTURE TUBES, LTD. AND PHILIPS; Master File No. CV-07-5944-SC

is met "unless it is clear that individual issues will overwhelm the common questions and render the class action valueless." *In re NASDAQ Market-Makers Antitrust Litigation*, 169 F.R.D. 493, 517 (S.D.N.Y. 1996).

In section 1 Sherman Act class cases, the existence of a conspiracy has been recognized as the overriding issue common to all plaintiffs. As the court acknowledged in *Rubber Chemicals*: "the great weight of authority suggests that the dominant issues in cases like this are whether the charged conspiracy existed and whether price-fixing occurred." 232 F.R.D. at 353 (quoting *Citric Acid*, 1006 U.S. Dist. Lexis 16409, at *21); *see also In re Cement and Concrete Antitrust Litigation,* 1979 WL 1595, at *2 (D. Ariz. March 9, 1979) ("the asserted nationwide price fixing conspiracy presents questions of law and fact common to the class members which predominate over any questions affecting only individual members"); *In re Sugar Industry,* 1976 WL 1374, at *23 ("It is the allegedly unlawful horizontal price-fixing arrangement among defendants that, in its broad outlines, comprises the predominating, unifying common interest as to these purported Plaintiff representatives and all potential class members"); *Mularkey v. Holsum Bakery, Inc.,* 120 F.R.D. 118, 122 (D. Ariz. 1988). Courts in this district and elsewhere have held that this issue alone is sufficient to satisfy the Rule 23(b)(3) predominance requirement. *See, e.g., Rubber Chemicals*, 232 F.R.D. at 353; *Citric Acid*, 1996 WL 655791, at *8.

Furthermore, courts have uniformly found predominant common questions of law or fact with respect to the existence, scope, and effect of the alleged conspiracy. *See In re Citric Acid,* 1996 WL 655791, at *6 (common questions include whether there was a conspiracy, whether prices were fixed pursuant to the conspiracy, and whether the prices plaintiffs' paid were higher than they should have been); *Estate of Jim Garrison*, 1996 WL 407849, at *3 ("Antitrust price fixing conspiracy cases by their nature deal with common legal and factual questions of the existence, scope and effect of the alleged conspiracy." (citation omitted)); *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. at 518.

In the current litigation, common issues relating to the existence of the CRT conspiracy and Defendants' acts in furtherance of the conspiracy predominate over any questions arguably affecting only individual Class members because they are the central issue in the case and proof is

21

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS WITH CHUNGHWA PICTURE TUBES, LTD. AND PHILIPS; Master File No. CV-07-5944-SC

1    identical for every member of the Class.  If separate actions were to be filed by each Class member

2    in the instant case, each would have to establish the existence of the same conspiracy and would

3    depend on identical evidence, and each would prove damages using identical "textbook" economic

4    models.  The evidence needed to prove how the Defendants implemented and enforced their

5    conspiracy to set the prices of CRTs at supra-competitive levels will be common for all class

6    members. These issues pose predominant common questions of law and fact.

7            Finally, as explained above, the Court need not concern itself with questions of the

8    manageability of a trial because the Settlements dispose of the need for a trial with regard to

9    Settling Defendants, along with any "thorny issues" that might arise.  *See Amchem,* 521 U.S. at

10   620; *Carnegie,* 376 F. 3d at 660.

11           **2.      A Class Action Is Superior to Other Available Methods for the Fair and
                     Efficient Adjudication of this Case.**
12

13           Rule 23(b)(3) provides that certification of a case is appropriate if class treatment "is

14   superior to other available methods for the fair and efficient adjudication of the controversy." It

15   sets forth four factors to be considered:  (1) the interest of members of the class in individually

16   controlling the prosecution of separate actions; (2) the extent and nature of any litigation

17   concerning the controversy already commenced by members of the class; (3) the desirability of

18   concentrating the litigation of the claims in a particular forum; and (4) the difficulties likely to be

19   encountered in the management of a class action.  Fed. R. Civ. P. 23(b)(3).  Prosecuting this action

20   as a class action is clearly superior to other methods of adjudicating this matter.

21           The alternative to a class action – many duplicative individual actions – would be

22   inefficient and unfair.  "Numerous individual actions would be expensive and time-consuming and

23   would create the danger of conflicting decisions as to persons similarly situated." *Lerwill*, 582 F.2d

24   at 512.  Further, it would deprive many class members of any practical means of redress.  Because

25   prosecution of an antitrust conspiracy case against economically powerful defendants is difficult

26   and expensive, class members with all but the largest claims would likely choose not to pursue

27   their claims. *See Local Joint Executive Board of Culinary/Bartender Trust Fund,* 244 F.3d at

28   1163.  Most class members would be effectively foreclosed from pursuing their claims absent class

                                                    22
NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS
WITH CHUNGHWA PICTURE TUBES, LTD. AND PHILIPS; Master File No. CV-07-5944-SC

1   certification. *Hanlon*, 150 F.3d at 1023 ("many claims [that] could not be successfully asserted

2   individually … would not only unnecessarily burden the judiciary, but would prove uneconomic

3   for potential plaintiffs").  The proposed class satisfies the requirements of Rule 23(b)(3).

4      **D.    The Court Should Appoint the Plaintiffs' Interim Lead Counsel as Counsel for
               the Settlement Class.**

5

6           Fed. R. Civ. P. 23(c)(1)(B) states that "[a]n order certifying a class action … must appoint

7   class counsel under Rule 23(g)."  Rule 23(g)(1)(C) states that "[i]n appointing class counsel, the

8   court (i) must consider: [1] the work counsel has done in identifying or investigating potential

9   claims in the action, [2] counsel's experience in handling class actions, other complex litigation,

10  and claims of the type asserted in the action, [3] counsel's knowledge of the applicable law, [4] the

11  resources counsel will commit to representing the class."

12          The law firm of Saveri & Saveri, Inc. seeks to be appointed as Counsel for the Class.  The

13  firm is willing and able to vigorously prosecute this action and to devote all necessary resources to

14  obtain the best possible result.  The work done to date supports the conclusion that they should be

15  appointed as Class Counsel for purposes of the Settlements. *See, e.g., Harrington v. City of*

16  *Albuquerque*, 222 F.R.D. 505, 520 (D.N.M. 2004).  The firm meets the criteria of Rule

17  23(g)(1)(C)(i). *Cf. Farley v. Baird, Patrick & Co., Inc.* 1992 WL 321632*5 (S.D.N.Y. 1992)

18  ("[c]lass counsel's competency is presumed absent specific proof to the contrary by defendants").

19  **VI.    PROPOSED PLAN OF NOTICE**

20          Rule 23(e)(1) states that, "[t]he court must direct notice in a reasonable manner to all class

21  members who would be bound by a proposed settlement, voluntary dismissal, or compromise."

22          Class members are entitled to the "best notice practicable under the circumstances" of any

23  proposed settlement before it is finally approved by the Court.  Fed. R. Civ. P. 23(c)(2)(b).  The

24  notice must state in plain, easily understood language:

25          •       the nature of the action,
            •       the definition of the class certified,
26          •       the class claims, issues, or defenses,
            •       that a class member may enter an appearance through counsel if the member so
27                  desires,
            •       that the court will exclude from the class any member who requests exclusion,
28                  stating when and how members may elect to be excluded, and

                                            23

1       •     the binding effect of a class judgment on class members under Rule 23(c)(3). *Id.*

2       Notice to the class must be "the best notice practicable under the circumstances, including

3 individual notice to all members who can be identified through reasonable effort." *Amchem Prods.*,

4 521 U.S. at 617. Plaintiff proposes that a direct Long Form Notice in the form attached as Exhibit

5 3 to the Saveri Decl. ("Notice") be given by mail or email to each Class Member who may, by

6 reasonable efforts, be identified. Plaintiffs request that the Court order the defendants to produce

7 in 14 days from the entry of the Proposed Order Preliminary Approving Settlements an electronic

8 list of all class members with their mail and e-mail addresses.

9       In addition, Plaintiff proposes that a Summary Notice in the form attached as Exhibit 4 to

10 the Saveri Decl. be published in the national edition of the Wall Street Journal, and that both

11 notices, along with the settlement agreements, be posted on a website accessible to class members.

12 Publication notice is an acceptable method of providing notice where the identity of specific class

13 members is not reasonably available. *See In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078,

14 1080 (N.D. Cal. 2007) (citing *Manual* § 21.311).

15       Such notice plans are commonly used in class actions like this one and constitute valid, due

16 and sufficient notice to class members, and constitute the best notice practicable under the

17 circumstances. *See Moore's Federal Practice* (3d ed. 2003) at §23.63[8][a], §23.63[8][b]; Saveri

18 Decl. ¶ 23.

19       The content of the proposed notices complies with the requirements of Rule 23(c)(2)(B).

20 The form of notice is "adequate if it may be understood by the average class member." *Newberg* §

21 11.53. The Notice clearly and concisely explains the nature of the action and the terms of the

22 Settlements. It provides a clear description of who is a member of the class and the binding effects

23 of class membership. It explains how to exclude oneself from the class, how to object to the

24 Settlements, how to obtain copies of papers filed in the case and how to contact Class counsel. It

25 explains how plaintiffs are deferring their request for attorneys' fees but that any future request will

26 not exceed one-third as stipulated in the settlement agreements. Saveri Decl. Ex 1 ¶ 23, Ex 2 ¶ 23.

27       The Summary Notice also identifies class members and explains the basic terms of the

28 Settlements and the consequences of class membership. It also explains how to obtain more

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS
WITH CHUNGHWA PICTURE TUBES, LTD. AND PHILIPS; Master File No. CV-07-5944-SC

information about the Settlements.  The Summary Notice will be published after the Notice is

mailed and e-mailed to class members.

The content of the notices and the proposed plan of allocation fulfill the requirements of

Rule 23 and due process.  Accordingly, the Court should preliminarily approve both.

The notice program will consist of both mailed and published notice, as well as posting of

the Notice on the Internet. This notice program will be similar to that employed by other direct

purchaser antitrust cases, and fulfills all the requirements of Federal Rule of Civil Procedure 23 and

due process. *See, e.g. Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1374-75 (9th Cir. 1993); *In

re AOL Time Warner ERISA Litig.*, 2006 U.S. Dist. LEXIS 70474, at *30-31 (S.D. N.Y. Sept. 27,

2006).

**VII.    PROPOSED PLAN OF ALLOCATION**

Plaintiffs propose that distribution of settlement funds be deferred until the termination of

the case, when there might be additional settlement funds from other settling defendants to

distribute, and because piecemeal distribution of each settlement is expensive, time-consuming,

and likely to cause confusion to class members. Deferring allocation of settlement funds is a

common practice in cases where claims against other defendants remain. See *Manual* § 21.651.

Although plaintiffs propose deferring the distribution of funds until a later date, plaintiffs

propose informing the class that any distribution will be made on a *pro rata* basis.  A plan of

allocation of class settlement funds is subject to the "fair, reasonable and adequate" standard that

applies to approval of class settlements.  *In re Citric Acid Antitrust litig.*, 145 F. Supp. 2d 1152,

1154 (N.D. Cal. 2001).  A plan of allocation that compensates class members based on the type and

extent of their injuries is generally considered reasonable.  Here the proposed distribution will be

on a *pro rata* basis, with no class member being favored over others.  This type of distribution has

frequently been determined to be fair, adequate, and reasonable.  *See DRAM*, No. M-02-1486 PJH,

Doc No. 2093, p.2)(Oct. 27, 2010)(Order Approving Pro Rata Distribution);  *In re Vitamins

Antitrust Litig.*, 2000 WL 1737867 at *6 (D.D.C. Mar. 31, 2000)("Settlement distributions, such as

this one, that apportions funds according to the relative amount of damages suffered by class

members, have repeatedly been deemed fair and reasonable.");  *In re Lloyds' Am. Trust Fund

25

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS
WITH CHUNGHWA PICTURE TUBES, LTD. AND PHILIPS; Master File No. CV-07-5944-SC

1    *Litig.,* WL 31663577 at *19 (S.D.N.Y. Nov. 26, 2002) ("*pro rata* allocations provided in the

2    Stipulation are not only reasonable and rational, but appear to be the fairest method of allocating

3    the settlement benefits.").

4          Each class member's *pro rata* share of the Settlement Fund is determined by computing

5    each valid claimant's total CRT purchases divided by the total valid CRT purchases claimed.  This

6    percentage is multiplied to the Net Settlement Fund (total settlements minus all costs, attorneys'

7    fees, and expenses) to determine each claimants *pro rata* share of the Settlement Fund.  To

8    determine each class member's CRT purchases, CRT tubes (CPTs and CDTs) are calculated at full

9    value while CRT televisions are valued at 50% and computer monitors are valued at 75%.

10         In summary, class members will submit their purchase information for both CRT tubes and

11   finished products - televisions and monitors containing CRTs.  All class members will share in the

12   settlement funds on a *pro rata* basis determined by the CRT value of the product they purchased -

13   tubes 100%, monitors 75% and televisions 50%.

14   **VIII.   THE COURT SHOULD SET A FINAL APPROVAL HEARING SCHEDULE**

15         The last step in the settlement approval process is the final approval hearing, at which the

16   Court may hear all evidence and argument necessary to evaluate the proposed settlements. At that

17   hearing, proponents of the settlements may explain and describe their terms and conditions and

18   offer argument in support of settlement approval. Members of the settlement class, or their counsel,

19   may be heard in support of or in opposition to the settlement. Plaintiffs propose the following

20   schedule for final approval of the settlement. If preliminary approval is granted, the proposed

21   settlement class members will be notified of the terms of the Settlements and informed of their

22   rights in connection therewith, including their right to appear and be heard at the final approval

23   hearing.  The following is a proposed schedule:

24

25

26

27

28

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS
WITH CHUNGHWA PICTURE TUBES, LTD. AND PHILIPS; Master File No. CV-07-5944-SC

| Date | Event |
|------|-------|
| 14 Days[1] | Defendants produce list of all class members |
| 35 Days | Mailed notice sent to class members and publication of website; |
| 39 Days | Summary notice published in (*Wall Street Journal*); |
| 80 Days | Deadlines re opting out of the CPT and Philips class, objecting to the Settlements; |
| 94 Days | Deadline for filing list of any opt-outs with Court; |
| 110 Days | Deadline for filing briefing in support of Settlements, and; |
| 131 Days | Hearing on final approval of Settlements. |

## IX.    CONCLUSION

For the foregoing reasons set forth herein Plaintiff respectfully submits that the Court should enter an order granting the relief requested by this motion: (i) granting preliminary approval of the CPT Settlement and the Philips Settlement and the related plan of allocation; (ii) approving the manner and form of giving notice to Class members of the matters in this motion, (iii) establishing a timetable for issuing such notice, filing objections and briefs, and conducting a hearing on final approval of the Settlements.

Dated: March 25, 2012.

Respectfully submitted,

/s/ *Guido Saveri*
Guido Saveri (22349)
R. Alexander Saveri (173102)
Geoffrey C. Rushing (126910)
Cadio Zirpoli (179108)
SAVERI & SAVERI, INC.
706 Sansome Street
San Francisco, CA  94111
Telephone:  (415) 217-6810
Facsimile:  (415) 217-6813

*Interim Lead Counsel For Plaintiffs*

---

[1] "____ Days" refers to the number of days after the Court enters the [Proposed] Order Granting Class Certification And Preliminary Approval Of Class Action Settlements With CPT and Philips.

27

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Bruce L. Simon
Aaron M. Sheanin
PEARSON, SIMON, WARSHAW & PENNY
LLP
44 Montgomery Street, Suite 2450
San Francisco, CA 94104
Telephone:  (415) 433-9000
Facsimile:  (415) 433-9008

H. Laddie Montague, Jr.
Ruthanne Gordon
Charles P. Goodwin
Candice Enders
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Telephone: (800) 424-6690
Facsimile: (215) 875-4604

Michael P. Lehmann
HAUSFELD LLP
44 Montgomery Street, Suite 3400
San Francisco, CA 94104
Telephone:  (415) 633-1908
Facsimile:  (415) 358-4980

Gary Specks
KAPLAN FOX
423 Sumac Road
Highland Park, IL 60035
Telephone: (847) 831-1585
Facsimile: (847) 831-1580

*Attorneys for Plaintiffs*

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS
WITH CHUNGHWA PICTURE TUBES, LTD. AND PHILIPS; Master File No. CV-07-5944-SC