1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Guido Saveri (22349) guido@saveri.com
R. Alexander Saveri (173102) rick@saveri.com
Geoff Rushing (126910) grushing@saveri.com
Cadio Zirpoli (179108) cadio@saveri.com
SAVERI & SAVERI, INC.
706 Sansome Street
San Francisco, CA 94111
Telephone: (415) 217-6810
Facsimile: (415) 217-6813

Interim Lead Counsel for the Direct Purchaser Plaintiffs

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. CV- 07-5944-SC |
| | MDL No. 1917 |
| This Document Relates to: | |
| **ALL DIRECT PURCHASER ACTIONS** | **DECLARATION OF R. ALEXANDER SAVERI IN SUPPORT OF MOTION FOR CLASS CERTIFICATION AND PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS WITH CPT AND PHILIPS** |
| | Date: April 5, 2012<br>Time: 2:00 p.m.<br>Judge: Honorable Charles A. Legge (Ret.)<br>JAMS: Two Embarcadero Center, Suite 1500 |

I, R. Alexander Saveri, declare:

1.      I am a partner with Saveri & Saveri, Inc., Interim Lead Counsel for Direct Purchaser Plaintiffs in this litigation.  I am a member of the Bar of the State of California and an attorney admitted to practice in the Northern District of California. I make this Declaration in Support of Plaintiff's Motion for Preliminary Approval of Class Action Settlements with defendants Chunghwa Picture Tubes and Philips.  Except as otherwise stated, I have personal knowledge of the facts stated below.

2.      Attached hereto as Exhibit 1 is the Settlement Agreement with Chunghwa Picture Tubes, Ltd. ("CPT").

3.      Attached hereto as Exhibit 2 is the Settlement Agreement with Koninklijke Philips Electronics N.V., Philips Electronics North America Corporation, Philips Electronics Industries (Taiwan), Ltd., and Philips Da Amazonia Industria Electronica Ltda. (collectively, "Philips").

4.      This multidistrict litigation arises from a conspiracy to fix prices of Cathode Ray Tubes ("CRTs").  In November of 2007, the first direct purchaser plaintiff filed a class action complaint on behalf of itself and all others similarly situated alleging a violation of section one of the Sherman Act, 15 U.S.C. § 1, and section four of the Clayton Act, 15 U.S.C. § 15.  Thereafter, additional actions were filed in other jurisdictions, and the Judicial Panel on Multidistrict Litigation transferred all related actions to this Court on February 15, 2008. (Judicial Panel on Multidistrict Litigation Transfer Order-Docket No. 122).  On May 9, 2008, Saveri & Saveri, Inc. was appointed Interim Lead Class Counsel for the nationwide class of direct purchasers. (Order Appointing Interim Lead Counsel-Docket No. 282).

5.      On March 16, 2009, the Direct Purchaser Plaintiffs filed their Consolidated Amended Complaint ("CAC") alleging an over-arching horizontal conspiracy among the Defendants and their co-conspirators to fix prices for CRTs and to allocate markets and customers for the sale of CRTs in the United States from March 1, 1995 through November 25, 2007 (the "Class Period").  The Complaint alleges that Plaintiffs and members of the Class are direct purchasers of CRTs and/or CRT Finished Products from defendants and/or their subsidiaries and were injured because they paid more for CRTs and/or CRT Finished Products than they would

DEC. OF R. ALEXANDER SAVERI ISO MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENTS - CV-07-5944-SC

1   have absent defendants' illegal conspiracy.  (Compl. ¶¶ 213 - 221)  Plaintiffs seek, among other

2   things, treble damages pursuant to Sections 4 of the Clayton Act, 15 U.S.C. §§ 15 and 22.

3   (Compl., Prayer for Relief )

4          6.      Defendants filed several motions to dismiss the CAC on May 18, 2009. (See

5   Dockets No. 463-493).  On February 5, 2010 this court issued its rulings denying in part and

6   granting in part Defendant's motions to dismiss (Report, Recommendations and Tentative Rulings

7   regarding Defendants' Motions to Dismiss-Docket No. 597).   After a subsequent appeal by

8   defendants, Judge Conti on March 30, 2010 entered his order approving and adopting Judge

9   Legge's previous ruling and recommendations regarding Defendants' Motions to Dismiss. (Order

10  Approving and Adopting Special Master's Report, Recommendations and Tentative Rulings Re:

11  Defendants' Motions to Dismiss- Docket No. 665).  On April 29, 2010 the defendants answered the

12  CAC.

13         7.      In September of 2008, the first of several stays prohibiting plaintiffs from obtaining

14  merits discovery was entered by this Court. (Stipulation and Order for Limited Discovery-

15  September 12, 2008- Docket No.379; Stipulation and Order to Extend Limited Discovery Stay-

16  February 5, 2009-Docket No. 425; June 8, 2009 Legge Order Further Extending the February 5,

17  2009 Order; January 5, 2010 Stipulation and Order to Extend Limited Discovery Stay-Docket No.

18  590 ). On June 4, 2008, Plaintiffs' propounded their First Set of Limited Document Request.

19  Thereafter, on March 12, 2010 after the partial stay of discovery was lifted, plaintiffs propounded

20  their Second Set of Document Request and First Set of Interrogatories. After extensive meet and

21  confers and several motions to compel, the court issued its Report Regarding Case Management

22  Conference No. 4 on October 27, 2011 in which it set the middle of December 2011 as the deadline

23  for the completion of substantial discovery by all parties. (Docket Nos. 1007 & 1008). Plaintiffs

24  have now received over 5 million pages of documents produced by Defendants.

25         8.      Just recently, on March 19, 2012, this court issued its Scheduling Order setting

26  August 30, 2013 as the date for completion of all fact and expert discovery. (Scheduling Order-

27  Docket No. 1093)

28

9.      CRTs are defined to mean Cathode Ray Tubes of any type (e.g. color display tubes, color picture tubes and monochrome display tubes).  CRT Finished Products are those products that when finished contain Cathode Ray Tubes – televisions and computer monitors.

10.     The settlements resolve all federal claims related to CRTs and CRT Finished Products brought by Plaintiffs against CPT and Philips.

11.     Mr. Guido Saveri participated in all of the settlement negotiations with CPT.  Settlement negotiations began as early as July of 2008.  I also participated in these negotiations.  The negotiations were thorough and hard fought.  They were conducted at arms-length in the utmost good faith.  The negotiations covered a long period of time.  The parties ultimately executed a settlement agreement in April of 2009.

12.     CPT agreed to pay Ten Million Dollars ($10,000,000) in cash to settle all direct purchaser claims against CPT, which has been deposited into an interest-bearing, US Treasury guaranteed escrow account.

13.     CPT's sales remain in the case for the purpose of computing Plaintiffs' claim against the remaining non-settling Defendants.

14.     CPT has agreed to cooperate with plaintiffs in the prosecution of this action by providing information relating to the existence, scope, and implementation of the conspiracy alleged in the Complaint.  CPT's obligations include producing, in the United States, relevant documents and witnesses for discovery and trial.

15.     It is my opinion that the CPT settlement is, in every aspect, fair, adequate and reasonable and in the best interest of the class members.  My opinion is based on my extensive experience in class action antitrust cases.

16.     I participated in all of the settlement negotiations with Philips.  Settlement negotiations began as early as January of 2011.  The negotiations were thorough and hard fought.  They were conducted at arms-length in the utmost good faith.  The negotiations covered a long period of time.  The parties ultimately reached a settlement in January of 2012 and a settlement agreement was executed on February 1, 2012.

17.     In exchange for dismissal with prejudice and a release of all claims asserted in the Complaint, Philips has agreed to pay Twenty-Seven Million Dollars ($27 million) in cash. Saveri Decl. Ex. 2, Philips Settlement ¶ 6.  The $27 million settlement amount is subject to reduction based on the number of exclusions from the class after notice.  Saveri Decl. Ex. 2, Philips Settlement ¶ 18.  The Philips settlement funds are to be deposited in installments with the first $12,000,000 to be deposited within approximately 60 days from execution of the settlement. Saveri Decl. Ex. 2, Philips Settlement ¶ 16.

18.     Philips has agreed to provide Plaintiffs with significant and valuable cooperation in the prosecution of the case against the remaining non-settling defendants.  Philips is the first integrated defendant – tubes and finished products manufacturer/defendant – to have settled.  In addition, Philips, being a European manufacturer, has European centric information on the CRT price fixing conspiracy which is in addition to and complimentary to CPT's Asian centric information.  Philip's obligations include, among other things, attorney proffers of Philips involvement in the CRT conspiracy and producing relevant documents and witnesses for discovery and trial. Saveri Decl. Ex. 2, Philips Settlement ¶ 24.

19.     Philips sales remain in the case for purposes of computing damages against the non-settling defendants.

20.     It is my opinion that the Philips settlement is, in every aspect, fair, adequate and reasonable and in the best interest of the class members. My opinion is based on my extensive experience in class action antitrust cases.

21.     The transactional data produced so far indicates that the Class contains hundreds of members dispersed across the country who directly purchased CRT Products from the Settling Defendants and their co-conspirators from March 1, 1995 through November 25, 2007.

22.     Plaintiffs' counsel will not seek an award of attorneys' fees at this time. Plaintiffs' counsel will seek an award of fees in the future after the completion of other settlement(s) or at some other later date.

23.     The notice program is similar to the ones implemented in other direct purchaser antitrust class actions - namely direct notice to class members whose addresses can be reasonably

obtained along with publication once in the national edition of the Wall Street Journal, together with appropriate listings on the Internet.  This notice program is similar to that employed in the direct purchaser *DRAM*, *SRAM* and *LCD* class actions.

24.     Attached hereto as Exhibit 3 is a copy of the proposed Long Form of Notice.

25.     Attached hereto as Exhibit 4 is a copy of the proposed Summary Notice.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed the 25th day of March, 2012, in San Francisco, California.

_/s/ R. Alexander Saveri_
R. Alexander Saveri

EXHIBIT 1

## CRT DIRECT-PURCHASER CLASS SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is made and entered into this _8th_ day of April, 2009, by and between defendant Chunghwa Picture Tubes, Ltd. ("Chunghwa") and the plaintiff class representatives ("Plaintiffs"), both individually and on behalf of a settlement class of direct purchasers of Cathode Ray Tube ("CRT") products (the "Class"), as more particularly defined in paragraph A.1 below.

WHEREAS, Plaintiffs are prosecuting the _In re Cathode Ray Tube (CRT) Antitrust Litigation_, MDL No. 1917 (N.D. Cal.) (the "Action") on their own behalf and on behalf of the Class against, among others, Chunghwa;

WHEREAS, Plaintiffs allege that Chunghwa participated in an unlawful conspiracy to raise, fix, maintain, or stabilize the price of CRT products at artificially high levels in violation of Section 1 of the Sherman Act;

WHEREAS, Chunghwa denies Plaintiffs' allegations and believes it has asserted defenses to Plaintiffs' claims;

WHEREAS, Plaintiffs have conducted an investigation into the facts and the law regarding the Action and have concluded that resolving claims against Chunghwa according to the terms set forth below is in the best interest of Plaintiffs and the Class;

WHEREAS, Chunghwa, despite its belief that it is not liable for the claims asserted and has good defenses thereto, has nevertheless agreed to enter into this Agreement to avoid further expense, inconvenience, and the distraction of burdensome and protracted litigation, and to obtain the releases, orders, and judgment contemplated by this Agreement, and to put to rest with finality all claims that have been or could have been asserted against Chunghwa based on the allegations of the Action, as more particularly set out below;

NOW, THEREFORE, in consideration of the covenants, agreements, and releases set forth herein and for other good and valuable consideration, it is agreed by and among the undersigned that the Action be settled, compromised, and dismissed on the merits with prejudice as to Chunghwa, as defined below, and except as hereinafter provided, without costs to Plaintiffs, the Class, or Chunghwa, subject to the approval of the Court, on the following terms and conditions:

A.   Definitions.

    1.   For purposes of this Agreement, "the Class" and "Class Period" are as defined in Plaintiffs' operative complaint at the time this Agreement is presented for preliminary approval.

    2.   For purposes of this Agreement, "CRT products" are defined to mean cathode ray tubes of any type (e.g., color display tubes, color picture tubes, and monochrome display tubes) and products containing cathode ray tubes.

    3.   "Chunghwa Releasees" shall refer to Chunghwa and to all of its respective past and present, direct and indirect, parent companies, subsidiaries, affiliates; the predecessors, successors and assigns of any of the above; and each and all of the present and former principals, partners, officers, directors, supervisors, employees, representatives, insurers, attorneys, heirs, executors, administrators, and assigns of each of the foregoing. "Chunghwa Releasees" does not include any defendant in the Action other than Chunghwa, including but not limited to Tatung Company of America.

    4.   "Class Member" means each member of the Class who has not timely elected to be excluded from the Class.

5.    "Releasors" shall refer to the plaintiff class representatives and Class Members, and to their past and present officers, directors, employees, agents, stockholders, attorneys, servants, representatives, parent companies, subsidiaries, affiliates, partners, insurers and all other persons, partnerships or corporations with whom any of the former have been, or are now, affiliated, and the predecessors, successors, heirs, executives, administrators and assigns of any of the foregoing.

6.    "The Settlement Fund" shall be $10,000,000 in United States Dollars, plus accrued interest on said deposits as set forth in paragraph 17.

7.    "Lead Counsel" shall refer to:

Saveri & Saveri, Inc.
706 Sansome Street
San Francisco, CA 94111
c/o Guido Saveri

B.    Approval Of This Agreement And Dismissal Of Claims Against Chunghwa.

8.    Plaintiffs and Chunghwa shall use their best efforts to effectuate this Agreement, including cooperating in seeking the Court's approval for the establishment of procedures (including the giving of class notice under Federal Rules of Civil Procedure 23(c) and (e)) to secure the prompt, complete, and final dismissal with prejudice of the Action as to the Chunghwa Releasees only.

9.    Plaintiffs shall submit to the Court a motion for authorization to disseminate notice of the settlement, class certification, and final judgment contemplated by this Agreement to all Class Members (the "Motion"). If notice to the Class is given jointly with any other settling defendant, for purposes of paragraph 19 below, the costs of notice and claims administration shall be prorated with any other such defendant based on their respective settlement amounts. The Motion shall include: (i) a proposed form of, method for, and date of

3

dissemination of notice; and (ii) a proposed form of order and final judgment. The text of the foregoing items (i) and (ii) shall be agreed upon by Plaintiffs and Chunghwa before submission of the Motion with the understanding that, among other things, notice to the Class will include individual notice based on a class list provided by Chunghwa and notice by publication and by regular mail or e-mail, with all expenses paid from the Settlement Fund, subject to paragraph 19(a). Chunghwa will supply to Lead Counsel, at Chunghwa's expense and in such form as may be reasonably requested by Lead Counsel, the names and addresses of putative Class Members, to the extent reasonably available in Chunghwa's sales database. The Motion shall recite and ask the Court to find that the proposed form of and method for dissemination of the notice of settlement constitutes valid, due, and sufficient notice to the Class, constitutes the best notice practicable under the circumstances, and complied fully with the requirements of Federal Rules of Civil Procedure 23.

10.     Plaintiffs and Chunghwa shall jointly seek entry of an order and final judgment, the text of which Plaintiffs and Chunghwa shall agree upon. The terms of that order and final judgment will include, at a minimum, the substance of the following provisions:

(a)     certifying the Class described in paragraph 1, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for purposes of this settlement;

(b)     as to the Action, approving finally this settlement and its terms as being a fair, reasonable, and adequate settlement as to the Class Members within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation according to its terms;

(c)     as to the Chunghwa Releasees, directing that the Action be dismissed with prejudice and, except as provided for in this Agreement, without costs;

4

(d)     reserving exclusive jurisdiction over the settlement and this Agreement, including the administration and consummation of this settlement to the United States District Court for the Northern District of California;

(e)     determining under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directing that the judgment of dismissal as to the Chunghwa Releasees shall be final.

11.     This Agreement shall become final when (i) the Court has entered a final order certifying the Class described in paragraph 1 and approving this Agreement under Federal Rule of Civil Procedure 23(e), and a final judgment dismissing the Action with prejudice as to the Chunghwa Releasees against all Class Members and without costs other than those provided for in this Agreement, and (ii) the time for appeal or to seek permission to appeal from the Court's approval of this Agreement and entry of a final judgment as to the Chunghwa Releasees described in (i) hereof has expired or, if appealed, approval of this Agreement and the final judgment as to the Chunghwa Releasees have been affirmed in their entirety by the court of last resort to which such appeal has been taken and such affirmance has become no longer subject to further appeal or review.  It is agreed that the provisions of Rule 60 shall not be taken into account in determining the above-stated times.  On the date that Plaintiffs and Chunghwa have executed this Agreement, Plaintiffs and Chunghwa shall be bound by its terms and this Agreement shall not be rescinded except in accordance with paragraphs 17, 18, 24 or 28 of this Agreement.

12.     Neither this Agreement (whether or not it should become final) nor the final judgment, nor any and all negotiations, documents and discussions associated with them, shall be deemed or construed to be an admission by Chunghwa (or the Chunghwa Releasees) or

5

evidence of any violation of any statute or law or of any liability or wrongdoing whatsoever by Chunghwa (or the Chunghwa Releasees), or of the truth of any of the claims or allegations contained in any complaint or any other pleading filed by Plaintiffs in the Action, and evidence thereof shall not be discoverable or used directly or indirectly, in any way, whether in the Action or in any other action or proceeding. Neither this Agreement, nor any of its terms and provisions, nor any of the negotiations or proceedings connected with it, nor any other action taken to carry out this Agreement by any of the settling parties shall be referred to, offered as evidence or received in evidence in any pending or future civil, criminal, or administrative action or proceedings, except in a proceeding to enforce this Agreement, or defend against the assertion of Released Claims, or as otherwise required by law.

C.   Release, Discharge, And Covenant Not To Sue.

13.    In addition to the effect of any final judgment entered in accordance with this Agreement, upon this Agreement becoming final as set out in paragraph 11 of this Agreement, and in consideration of payment of the Settlement Fund, as specified in paragraph 16 of this Agreement, and for other valuable consideration, the Chunghwa Releasees shall be completely released, acquitted, and forever discharged from any and all claims, demands, actions, suits, causes of action, whether class, individual, or otherwise (whether or not any Class Member has objected to the settlement or makes a claim upon or participates in the Settlement Fund, whether directly, representatively, derivatively, or in any other capacity) that Releasors, or each of them, ever had, now has, or hereafter can, shall, or may have on account of, or in any way arising out of, any and all known and unknown, foreseen and unforeseen, suspected or unsuspected injuries, damages, and consequences thereof in any way arising out of or relating in any way to any act or omission of the Chunghwa Releasees (or any of them) concerning the

6

manufacture, supply, distribution, sale or pricing of CRT products up to the date of execution of this Agreement, including but not limited to any conduct alleged, and causes of action asserted or that could have been alleged or asserted, in class action complaints filed in this Action, including those arising under any federal or state antitrust, unfair competition, unfair practices, price discrimination, unitary pricing, or trade practice law (the "Released Claims"). However, the Released Claims shall only include sales of CRT products that are subject to the antitrust laws of the United States, and further, the Released Claims shall not preclude Plaintiffs from pursuing any and all of their claims against other defendants for the sale of finished products by those defendants, or their co-conspirators, which contain Chunghwa's CRT. Releasors shall not, after the date of this Agreement, seek to establish liability against any Chunghwa Releasee based, in whole or in part, upon any of the Released Claims or conduct at issue in the Released Claims. Nothing in this Agreement shall be construed to release any other claims, including but not limited to claims for product defect or personal injury.

       14.     In addition to the provisions of paragraph 13 of this Agreement, Releasors hereby expressly waive and release, upon this Agreement becoming final, any and all provisions, rights, and benefits conferred by § 1542 of the California Civil Code, which states:

> CERTAIN CLAIMS NOT AFFECTED BY GENERAL RELEASE. A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR[ ];

or by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to § 1542 of the California Civil Code. Each Releasor may hereafter discover facts other than or different from those which he, she, or it knows or believes

to be true with respect to the claims which are the subject matter of the provisions of paragraph 13 of this Agreement, but each Releasor hereby expressly waives and fully, finally, and forever settles and releases, upon this Agreement becoming final, any known or unknown, suspected or unsuspected, contingent or non-contingent claim with respect to the subject matter of the provisions of paragraph 13 of this Agreement, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.

15.     The release, discharge, and covenant not to sue set forth in paragraph 13 of this Agreement does not include claims by any of the Class Members other than the Released Claims and does not include other claims, such as those solely arising out of product liability or breach of contract claims in the ordinary course of business not covered by the Released Claims. Further, the release, discharge, and covenant not to sue set forth in paragraph 13 of this Agreement includes only direct-purchaser claims.

D.     Settlement Amount.

16.     Subject to the provisions hereof, and in full, complete, and final settlement of the Action as provided herein, defendant Chunghwa shall pay $10,000,000 in United States Dollars into an escrow account to be administered in accordance with the provisions of paragraph 17 of this Agreement (the "Escrow Account") as follows:  $1,000,000 to be paid by August 1, 2009; $4,500,000 to be paid by January 10, 2010; and $4,500,000 to be paid by January 10, 2011.  Interest on unpaid amounts shall accrue from 30 days after the execution of this Agreement at the rate specified in 18 U.S.C. § 3612(f)(2).  Any paid amount is nonrefundable in the event Chunghwa defaults on any portion of the remaining amount.  The Settlement Fund will not be reduced by any settlement between Chunghwa and a Class Member nor by any request for exclusion from the Class.

8

17.    Escrow Account.

(a)    The Escrow Account will be established at Union Bank of California, 350 California Street, San Francisco, California, with such Bank serving as escrow agent ("Escrow Agent") subject to escrow instructions mutually acceptable to Plaintiffs' Lead Counsel and Chunghwa's attorneys, such escrow to be administered under the Court's continuing supervision and control.

(b)    The Escrow Agent shall cause the funds deposited in the Escrow Account to be invested in instruments backed by the full faith and credit of the United States Government or fully insured by the United States Government or any agency thereof, or money market funds invested substantially in such instruments, and shall reinvest any income from these instruments and the proceeds from these instruments as they mature in similar instruments at their then current market rates.

(c)    All funds held in the Escrow Account shall be deemed and considered to be in custodia legis of the Court, and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed pursuant to this Agreement and/or further order(s) of the Court.

(d)    Plaintiffs and Chunghwa agree to treat the Settlement Fund as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1. In addition, the Escrow Agent shall timely make such elections as necessary or advisable to carry out the provisions of this paragraph 17, including the "relation-back election" (as defined in Treas. Reg. § 1.468B-1) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of

9

the Escrow Agent to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

(e)      For the purpose of § 468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" shall be the Escrow Agent. The Escrow Agent shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including without limitation the returns described in Treas. Reg. § 1.468B-2(k)(1)). Such returns (as well as the election described in paragraph 17(d)) shall be consistent with paragraph 17(d) and in all events shall reflect that all Taxes, as defined below (including any estimated Taxes, interest, or penalties), on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided in 17(f) hereof.

(f)      All (i) taxes (including any estimated taxes, interest, or penalties) arising with respect to the income earned by the Settlement Fund, including any taxes or tax detriments that may be imposed upon Chunghwa or any other Chunghwa Releasee with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes ("Taxes"); and (ii) expenses and costs incurred in connection with the operation and implementation of paragraphs 17(d) through 17(f) (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in this paragraph 17(g) ("Tax Expenses")), shall be paid out of the Settlement Fund.

(g)      Neither Chunghwa nor any other Chunghwa Releasee nor their respective counsel shall have any liability or responsibility for the Taxes or Tax Expenses. Further, Taxes

10

and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement Fund and shall be timely paid by the Escrow Agent out of the Settlement Fund without prior order from the Court and the Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to any claimants authorized by the Court any funds necessary to pay such amounts including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treas. Reg. § 1.468B-2(1)(2)). Neither Chunghwa nor any other Chunghwa Releasee is responsible nor shall they have any liability therefore. Plaintiffs and Chunghwa agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of paragraphs 17(d) though (f).

(h)     If this Agreement does not receive final Court approval, or if the Action is not certified as a class action for settlement purposes, then all amounts paid by Chunghwa into the Settlement Fund (other than notice costs expended in accordance with paragraph 19(a)) shall be promptly returned to Chunghwa from the Escrow Account by the Escrow Agent along with any interest accrued thereon.

18.     Exclusions. Lead Counsel will cause copies of requests for exclusion from the Class to be provided to counsel for Chunghwa. To the extent that Class Members (or any of them) reasonably believed by Chunghwa to represent purchases of more than $100,000,000 of CRT products from Chunghwa during the Class Period opt out of the Class, Chunghwa may, if acting reasonably and in good faith, terminate the Agreement within sixty (60) days of receipt of the final list of exclusions.

19.     Payment Of Expenses.

11

(a)     Chunghwa agrees to permit use of a maximum of $400,000 of the Settlement Fund towards notice to the Class and administration costs.  The $400,000 in notice and claims administration expenses are not recoverable if this settlement does not become final. Other than as set forth in this paragraph 19(a) and except as Plaintiffs' counsel ("Class Counsel") shall apply for reimbursement of costs and attorneys' fees pursuant to paragraph 23 below, neither Chunghwa nor any of the other Chunghwa Releasees under this Agreement shall be liable for any of the costs or expenses of the litigation of the Action, including attorneys' fees; fees and expenses of expert witnesses and consultants; and costs and expenses associated with discovery, motion practice, hearings before the Court or any Special Master, appeals, trials or negotiation of other settlements, or for Class administration and costs.

(b)     If Lead Counsel enters into any other settlements on behalf of the Class before notice of this Agreement is given to the Class, Lead Counsel shall use their reasonable best efforts to provide a single notice to prospective Class Members of all of the settlements.

(c)     Following final approval of this Agreement by the Court, Class Counsel may use, subject to prior approval of the Court, up to $500,000 of the Settlement Fund for expenses incurred or to be incurred for the prosecution of the action on behalf of the Class against non-settling defendants.

E.     The Settlement Fund.

20.     Releasors shall look solely to the Settlement Fund for settlement and satisfaction against the Chunghwa Releasees of all Released Claims, and shall have no other recovery against Chunghwa or any other Chunghwa Releasee.

21.     After this Agreement becomes final within the meaning of paragraph 11, the Settlement Fund shall be distributed in accordance with the plan to be submitted at the

12

appropriate time by Plaintiffs, subject to approval by the Court. In no event shall any Chunghwa Releasee have any responsibility, financial obligation, or liability whatsoever with respect to the investment, distribution, or administration of the Settlement Fund, including, but not limited to, the costs and expenses of such distribution and administration, with the sole exception of the provisions set forth in paragraph 19(a) of this Agreement.

22.     Plaintiffs and Class Counsel shall be reimbursed and indemnified solely out of the Settlement Fund for all expenses. The Chunghwa Releasees shall not be liable for any costs, fees, or expenses of any of Plaintiffs' or the Class' respective attorneys, experts, advisors, agents, or representatives, but all such costs, fees, and expenses as approved by the Court shall be paid out of the Settlement Fund.

23.     Class Counsel's Attorneys' Fees And Reimbursement Of Expenses.

(a)     Class Counsel may submit an application or applications to the Court (the "Fee and Expense Application") for distribution after this Settlement becomes final to them from the Settlement Fund and Chunghwa shall not oppose such application for: (i) an award of attorneys' fees not in excess of one-third of the Settlement Fund; plus (ii) reimbursement of expenses and costs incurred, or to be incurred, in connection with prosecuting the Action, plus interest on such attorneys' fees, costs, and expenses at the same rate and for the same period as earned by the Settlement Fund (until paid) as may be awarded by the Court (the "Fee and Expense Award"). Class Counsel reserve the right to make additional applications for fees and expenses incurred, but in no event shall Chunghwa Releasees be responsible to pay any such additional fees and expenses except to the extent they are paid out of the Settlement Fund.

(b)     The Fee and Expense Award, as approved by the Court, shall be paid solely from the Settlement Fund. Lead Counsel shall allocate the attorneys' fees among Class

13

Counsel in a manner which they in good faith believe reflects the contributions of such counsel to the prosecution and settlement of the Action.

(c)     The procedure for and the allowance or disallowance by the Court of the application by Class Counsel for attorneys' fees, costs and expenses to be paid out of the Settlement Fund are not part of this Agreement, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the settlement, and any order or proceeding relating to the Fee and Expense Application, or any appeal from any such order shall not operate to terminate or cancel this Agreement, or affect or delay the finality of the judgment approving settlement.

(d)     Neither Chunghwa nor any other Chunghwa Releasee under this Agreement shall have any responsibility for, or interest in, or liability whatsoever with respect to any payment to Class Counsel of any Fee and Expense Award in the Action.

(e)     Neither Chunghwa nor any other Chunghwa Releasee under this Agreement shall have any responsibility for, or interest in, or liability whatsoever with respect to the allocation among Class Counsel, and/or any other person who may assert some claim thereto, of any Fee and Expense Award that the Court may make in the Action.

F.     Cooperation.

24.     Chunghwa agrees to cooperate with Plaintiffs, to the extent consistent with Chunghwa's obligations to the U.S. Department of Justice ("DOJ"), by (i) promptly providing a full account to Lead Counsel of all facts known to Chunghwa that are relevant to the Action, (ii) producing in the United States relevant documents relating to sales, pricing, capacity, production, and damages, including English translations to the extent reasonably required, as well as documents (including English translations) sufficient to evidence any collusive meetings among

14

CRT makers and the manner in which any alleged conspiracy was formed, implemented, and enforced, to the extent known by Chunghwa, (iii) making available appropriate employees for such interviews and depositions as are reasonably required by Lead Counsel, and (iv) producing at trial in person, by deposition, or affidavit, whichever is legally necessary and reasonably possible, representatives to testify as reasonably required by Lead Counsel. Nothing in this paragraph 24, or any other part of this Agreement, shall be construed or interpreted to be inconsistent with the discovery stay in place in this Action. Any cooperation by Chunghwa pursuant to this paragraph 24 will be consistent with the terms of the discovery stay and Chunghwa's continuing obligations to the DOJ. If Chunghwa fails to cooperate as set forth in this paragraph 24, Plaintiffs may, if acting reasonably and in good faith, terminate the Agreement.

      25.     Plaintiffs and Lead Counsel agree they will not use the information provided by Chunghwa as part of its cooperation for any purpose other than pursuit of the Action and, even after the lifting of the discovery stay, will not publicize the information beyond what is reasonably necessary for the prosecution of the Action or as otherwise required by law. Any documents and other information provided will be deemed "Highly Confidential" and subject to the protective order entered in the Action as if they had been produced in response to discovery requests.

      26.     Except as provided in paragraph 24 of this Agreement, Chunghwa need not respond to formal discovery from Plaintiffs, respond to the complaint, or otherwise participate in the Action during the pendency of the Agreement. Neither Chunghwa nor Plaintiffs shall file motions against the other during the pendency of the Agreement. In the event that the Agreement is not approved by the Court or otherwise terminates, Chunghwa and

15

Plaintiffs will each be bound by and have the benefit of any rulings made in the Action to the extent they would have been applicable to Chunghwa or Plaintiffs had Chunghwa been participating in the Action.

      27.    Chunghwa agrees that it will not disclose publicly or to any other defendant the terms of this Agreement until the Agreement is submitted to the Court for approval. Chunghwa also agrees that it will not disclose publicly or to any other defendant the information provided to Plaintiffs pursuant to this Agreement, except as otherwise required by law.

      G.    <u>Rescission If This Agreement Is Not Approved Or Final Judgment Is Not Entered.</u>

      28.    If the Court refuses to approve this Agreement or any part hereof, or if such approval is modified or set aside on appeal, or if the Court does not certify for purposes of this settlement the Class described in paragraph 1, or if the Court does not enter the final judgment, or if final judgment is entered and appellate review is sought, and on such review, such final judgment is not affirmed in its entirety, then Chunghwa and the Plaintiffs shall each, in their sole discretion, have the option to rescind this Agreement in its entirety. Written notice of the exercise of any such right to rescind shall be made according to the terms of paragraph 39. A modification or reversal on appeal of any amount of Class Counsel's fees and expenses awarded by the Court from the Settlement Fund shall not be deemed a modification of all or a part of the terms of this Agreement or such final judgment.

      29.    In the event that this Agreement does not become final, then this Agreement shall be of no force or effect and any and all parts of the Settlement Fund caused to be deposited in the Escrow Account (including interest earned thereon) shall be returned forthwith to Chunghwa less only disbursements made in accordance with this Agreement.

16

Chunghwa expressly reserves all of its rights if this Agreement does not become final.  Further, and in any event, Plaintiffs and Chunghwa agree that this Agreement, whether or not it shall become final, and any and all negotiations, documents, and discussions associated with it, shall not be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing whatsoever by Chunghwa (or the Chunghwa Releasees), or of the truth of any of the claims or allegations contained in the complaint or any other pleading filed by Plaintiffs in the Action, and evidence thereof shall not be discoverable or used directly or indirectly, in any way, whether in the Action or in any other action or proceeding.

30.     This Agreement shall be construed and interpreted to effectuate the intent of the parties, which is to provide, through this Agreement, for a complete resolution of the relevant claims with respect to each Chunghwa Releasee as provided in this Agreement.

31.     The parties to this Agreement contemplate and agree that, prior to final approval of the settlement as provided for in paragraph 10 of this Agreement, appropriate notice of (a) the settlement; and (b) a hearing at which the Court will consider the approval of this Settlement Agreement will be given to Class Members.

H.     Miscellaneous.

32.     This Agreement does not settle or compromise any claim by Plaintiffs or any Class Member asserted in the complaint against any defendant or alleged co-conspirator other than the Chunghwa Releasees.  All rights against such other defendants or alleged co-conspirators are specifically reserved by Plaintiffs and the Class.  Chunghwa's sales to the Class shall not by removed from the Action.

33.     This Agreement shall not affect whatever rights Releasors or any of them may have (i) to seek damages or other relief from any other person with respect to any purchases

17

of CRT products that are not subject to the antitrust laws of the United States; (ii) to participate in or benefit from, where appropriate, any relief or other recovery as part of a settlement or judgment in any action on behalf of any indirect purchasers of CRT products; (iii) to participate in or benefit from any relief or recovery as part of a judgment or settlement in this action against any other party named as a defendant (other than a Chunghwa Releasee); or (iv) to assert any product liability or breach of contract claims in the ordinary course of business which are not covered by the Released Claims.

34.    The United States District Court for the Northern District of California shall retain jurisdiction over the implementation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to this Agreement or the applicability of this Agreement that cannot be resolved by negotiation and agreement by Plaintiffs and Chunghwa.  This Agreement shall be governed by and interpreted according to the substantive laws of the state of California without regard to its choice of law or conflict of laws principles.

35.    This Agreement constitutes the entire, complete, and integrated agreement between Plaintiffs and Chunghwa pertaining to the settlement of the Action against Chunghwa, and supersedes all prior and contemporaneous undertakings of Plaintiffs and Chunghwa in connection herewith.  This Agreement may not be modified or amended except in writing executed by Plaintiffs and Chunghwa, and approved by the Court.

36.    This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of Plaintiffs and Chunghwa.  Without limiting the generality of the foregoing, each and every covenant and agreement made herein by Plaintiffs or Lead Counsel shall be binding upon all Class Members and Releasors. The Chunghwa Releasees (other than

18

Chunghwa, which is a party hereto) are third-party beneficiaries of this Agreement and are authorized to enforce its terms applicable to them.

37.    This Agreement may be executed in counterparts by Plaintiffs and Chunghwa, and a facsimile signature shall be deemed an original signature for purposes of executing this Agreement.

38.    Neither Plaintiffs nor Chunghwa shall be considered the drafter of this Agreement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Agreement.

39.    Where this Agreement requires either party to provide notice or any other communication or document to the other, such notice shall be in writing, and such notice, communication, or document shall be provided by facsimile or letter by overnight delivery to the undersigned counsel of record for the party to whom notice is being provided.

41.    Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Agreement, subject to Court approval.

Dated: March 6, 2009

Guido Saveri
Saveri & Saveri, Inc.
706 Sansome Street
San Francisco, CA 94111
*Lead Counsel and Attorneys for the Class*

Dated: April 08, 2009

CHU CHUANG-YI
*Officer of Chunghwa Picture Tubes, Ltd.*

19

Dated: ~~March~~ April **8** , 2009

Joel S. Sanders
Gibson, Dunn & Crutcher LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105
*Attorney for Chunghwa Picture Tubes, Ltd.*

100397603_2.DOC

20

EXHIBIT 2

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| IN RE:  CATHODE RAY TUBE (CRT) | ) | Master File No. CV-07-5944 SC |
| ANTITRUST LITIGATION | ) | |
| | ) | MDL No. 1917 |
| THIS DOCUMENT RELATES TO: | ) | |
| ALL DIRECT-PURCHASER ACTIONS | ) | |

### SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is made and entered into this 1st day of February, 2012, by and between Koninklijke Philips Electronics N.V.,  Philips Electronics North America Corporation, Philips Electronics Industries (Taiwan), Ltd., and Philips da Amazonia Industria Electronica Ltda. (collectively "Philips") and the direct-purchaser plaintiff class representatives ("Plaintiffs"), both individually and on behalf of a settlement class of direct purchasers of Cathode Ray Tube (CRT) Products ("The Class") as more particularly defined in paragraph A.1 below.

WHEREAS, Plaintiffs are prosecuting the above *In Re Cathode Ray Tube (CRT) Antitrust Litigation*, MDL No. 1917 (N.D. Cal.) (the "Action") on their own behalf and on behalf of the Class against, among others, Philips;

WHEREAS, Plaintiffs allege that Philips participated in an unlawful conspiracy to raise, fix, maintain, or stabilize the price of CRT products at artificially high levels in violation of Section 1 of the Sherman Act;

WHEREAS, Philips denies Plaintiffs' allegations and has asserted defenses to Plaintiffs' claims;

WHEREAS, Plaintiffs have conducted an investigation into the facts and the law regarding the Action and have concluded that resolving claims against Philips according to the terms set forth below is in the best interest of Plaintiffs and the Class;

WHEREAS, Philips, despite its belief that it is not liable for the claims asserted and has good defenses thereto, has nevertheless agreed to enter into this Agreement to avoid further expense, inconvenience, and the distraction of burdensome and protracted

litigation, and to obtain the releases, orders, and judgment contemplated by this Agreement, and to put to rest with finality all claims that have been or could have been asserted against Philips based on the allegations of the Action, as more particularly set out below;

NOW, THEREFORE, in consideration of the covenants, agreements, and releases set forth herein and for other good and valuable consideration, it is agreed by and among the undersigned that the Action be settled, compromised, and dismissed on the merits w     judice as to the Philips Releasees, as defined below, and except as hereinafter pr    ed, without costs as to Plaintiffs, the Class, or Philips, subject to the approval of the Court, on the following terms and conditions:

Definitions.

1.  For purposes of this Agreement, "the Class" and "Class Period" are Plaintiffs' Consolidated Amended Complaint or, if that Complaint is amended, the       laint at the time this agreement is presented for preliminary approval. The parties to this Agreement hereby stipulate for purposes of this settlement only that the requirements of Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure are satisfied.

2.  For purposes of this Agreement, "CRT Products" shall have the meaning as defined in the Consolidated Amended Complaint or, if that Complaint is amended, the operative complaint at the time this agreement is presented for preliminary approval.

3.  "Philips Releasees" shall refer to Philips and to all of its respective past and present, direct and indirect, parents, subsidiaries, affiliates; the predecessors, successors and assigns of any of the above; and each and all of the present and former principals, partners, officers, directors, supervisors, employees, agents, representatives, insurers, attorneys, heirs, executors, administrators, and assigns of each of the foregoing. "Philips Releasees" does not include any defendant in the Action other than Philips.

4.  "Class Member" means each member of the Class who has not timely elected to be excluded from the Class.

2

5.      "Releasors" shall refer to the direct-purchaser plaintiff class representatives and the direct-purchaser plaintiff Class Members, and to their past and present officers, directors, employees, agents, stockholders, attorneys, servants, representatives, parents, subsidiaries, affiliates, partners, insurers and all other persons, partnerships or corporations with whom any of the former have been, or are now, affiliated, and the predecessors, successors, heirs, executives, administrators and assigns of any of the foregoing.

6.      "The Settlement Fund" shall be $27,000,000 less the opt-out reduction specified in paragraph 18 plus accrued interest on said deposits set forth in paragraph 16.

7.      "Lead Counsel" shall refer to the law firm of:

Guido Saveri
R. Alexander Saveri
Saveri & Saveri, Inc.
706 Sansome Street
San Francisco, CA 94111

B.      Approval of this Agreement and Dismissal
        of Claims Against Philips.

8.      Plaintiffs and Philips shall use their best efforts to effectuate this Agreement, including cooperating in seeking the Court's approval for the establishment of procedures (including the giving of class notice under Federal Rules of Civil Procedure 23(c) and (e)) to secure the prompt, complete, and final dismissal with prejudice of the Action as to Philips Releasees only.

9.      Plaintiffs shall submit to the Court a motion for authorization to disseminate notice of the settlement and final judgment contemplated by this Agreement to all class members identified by Philips (the "Motion"). If notice to the class is given jointly with any other settling defendant, for purposes of paragraph 19 below, the costs of notice and claims administration shall be prorated with any other such defendant based on their respective settlement amounts. The Motion shall include (i) a proposed form of, method for, and date of dissemination of notice; and (ii) a proposed form of order and

3

final judgment.  The text of the foregoing items (i) and (ii) shall be agreed upon by Plaintiffs and Philips before submission of the Motion, with the understanding that, among other things, individual notice of the settlement shall be mailed by regular mail or email, with appropriate notice by publication, with all expenses paid from the Settlement Fund subject to paragraph 19(a). Philips will supply to Lead Counsel, at Philips' expense and in such form as may be reasonably requested by Lead Counsel, such names and addresses of putative class members to the extent reasonably available in Philips' records. The Motion shall recite and ask the Court to find that the mailing of the notice of settlement to all members of the Class who can be identified upon reasonable effort constitutes valid, due and sufficient notice to the Class, constitutes the best notice practicable under the circumstances, and complies fully with the requirements of Federal Rule of Civil Procedure 23.

        10.     Plaintiffs shall seek, and Philips will not object unreasonably to the entry of an order and final judgment, the text of which Plaintiffs and Philips shall agree upon.  The terms of that order and final judgment will include, at a minimum, the substance of the following provisions that:

        a.     certifying the Class described in paragraph 1, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for purposes of this settlement as a settlement class.

        b.     as to the Action, approving finally this settlement and its terms as being a fair, reasonable and adequate settlement as to the Class Members within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation according to its terms;

        c.     as to Philips, directing that the action be dismissed with prejudice and, except as provided for in this Agreement, without costs;

        d.     reserving exclusive jurisdiction over the settlement and this Agreement, including the administration and consummation of this

settlement to the United States District Court for the Northern
District of California;

e.  reserving exclusive jurisdiction over the settlement and this
Agreement, including the administration and consummation of this
settlement to the United States District Court for the Northern
District of California;

f.  determining under Federal Rule of Civil Procedure 54(b) that there
is no just reason for delay and directing that the judgment of
dismissal as to Philips shall be final; and

11.     This Agreement shall become final when (i) the Court has entered
a final order certifying the Class described in Paragraph 1 and approving this Agreement
under Federal Rule of Civil Procedure 23(e) and a final judgment dismissing the Action
with prejudice as to Philips Releasees against all Class Members and without costs other
than those provided for in this Agreement, and (ii) the time for appeal or to seek
permission to appeal from the Court's approval of this Agreement and entry of a final
judgment as to Philips Releasees described in (i) hereof has expired or, if appealed,
approval of this Agreement and the final judgment as to Philips Releasees have been
affirmed in their entirety by the Court of last resort to which such appeal has been taken
and such affirmance has become no longer subject to further appeal or review.  It is
agreed that the provisions of Rule 60 of the Federal Rules of Civil Procedure shall not be
taken into account in determining the above-stated times.  On the date that Plaintiffs and
Philips have executed this Agreement, Plaintiffs and Philips shall be bound by its terms
and this Agreement shall not be rescinded except in accordance with paragraphs 17(h),
24 or 28-29 of this Agreement.

12.     Neither this Agreement (whether or not it should become final) nor
the final judgment, nor any and all negotiations, documents and discussions associated
with them, shall be deemed or construed to be an admission by Philips (or the Philips
Releasees) or evidence of any violation of any statute or law or of any liability or
wrongdoing whatsoever by Philips (or the Philips Releasees), or of the truth of any of the

5

claims or allegations contained in any complaint or any other pleading filed by Plaintiffs in the Action, and evidence thereof shall not be discoverable or used directly or indirectly, in any way, whether in the Action or in any other action or proceeding. Neither this Agreement, nor any of its terms and provisions, nor any of the negotiations or proceedings connected with it, nor any other action taken to carry out this Agreement by any of the settling parties shall be referred to, offered as evidence or received in evidence in any pending or future civil, criminal, or administrative action or proceedings, except in a proceeding to enforce this Agreement, or to defend against the assertion of Released Claims, or as otherwise required by law.

C.    Release, Discharge, and Covenant Not to Sue.

13.    In addition to the effect of any final judgment entered in accordance with this Agreement, upon this Agreement becoming final as set out in Paragraph 11 of this Agreement, and in consideration of payment of the Settlement Amount, as specified in Paragraph 16 of this Agreement, into the Settlement Fund, and for other valuable consideration, the Philips Releasees shall be completely released, acquitted, and forever discharged from any and all claims, demands, actions, suits, causes of action, whether class, individual, or otherwise in nature (whether or not any Class Member has objected to the settlement or makes a claim upon or participates in the Settlement Fund, whether directly, representatively, derivatively or in any other capacity) that Releasors, or each of them, ever had, now has, or hereafter can, shall, or may have on account of, or in any way arising out of, any and all known and unknown, foreseen and unforeseen, suspected or unsuspected, actual or contingent, liquidated or unliquidated claims, injuries, damages, and the consequences thereof in any way arising out of or relating in any way to any act or omission of the Philips Releasees (or any of them) concerning the manufacture, supply, distribution, sale or pricing of CRT Products up to the date of execution of this Agreement, including but not limited to any conduct alleged, and causes of action asserted or that could have been alleged or asserted, in any class action complaints filed in the Action, including those arising under any federal or state antitrust, unfair competition, unfair practices, price discrimination, unitary pricing, or

6

trade practice law, (the "Released Claims"). However, the Released Claims shall only include sales of CRT Products that are subject to the antitrust laws asserted in the Amended Consolidated Complaint or, if that Complaint is amended, the operative complaint at the time this agreement is presented for preliminary approval and further, the Released Claims shall not preclude Plaintiffs from pursuing any and all claims against other defendants for the sale of CRT Products by those defendants, or their co-conspirators, which contain Philips' CRT Products. Releasors shall not, after the date of this Agreement, seek to establish liability against any Philips Releasee based, in whole or in part, upon any of the Released Claims or conduct at issue in the Released Claims. Nothing in this Agreement shall be construed to release any other claims, including but not limited to the claims for product defect or personal injury.

14.     In addition to the provisions of Paragraph 13 of this Agreement, Releasors hereby expressly waive and release, upon this Agreement becoming final, any and all provisions, rights, and benefits conferred by ' 1542 of the California Civil Code, which states:

> CERTAIN CLAIMS NOT AFFECTED BY GENERAL
> RELEASE.  A GENERAL RELEASE DOES NOT EXTEND TO
> CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR
> SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF
> EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM
> MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT
> WITH THE DEBTOR;

or by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to ' 1542 of the California Civil Code.  Each Releasor may hereafter discover facts other than or different from those which he, she, or it knows or believes to be true with respect to the claims which are the subject matter of the provisions of Paragraph 13 of this Agreement, but each Releasor hereby expressly waives and fully, finally, and forever settles and releases, upon this Agreement becoming final, any known or unknown, suspected or unsuspected, contingent or non-contingent claim with respect to the subject matter of the provisions of Paragraph 13 of this

Agreement, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.

15.     The release, discharge, and covenant not to sue set forth in Paragraph 13 of this Agreement does not include claims by any of the Class Members other than the Released Claims and does not include other claims, such as those solely arising out of product liability or breach of contract claims in the ordinary course of business not covered by the Released Claims.  Further, the release, discharge and covenant not to sue set forth in paragraph 13 of this Agreement includes only the claims of the Releasors as alleged in the Amended Consolidated Complaint or, if that Complaint is amended, the operative complaint at the time this agreement is presented for preliminary approval.  The Releasors hereby covenant and agree that they shall not, hereafter, sue or otherwise seek to establish liability against any of the Philips Releasees based, in whole or in part, upon any of the Released Claims.

D.     Settlement Amount.

16.     Subject to the provisions hereof, and in full, complete and final settlement of the Action as provided herein, defendant Philips shall pay the Settlement Amount of $27,000,000 less the opt-out reduction set forth in the table contained in Paragraph 18 of this Agreement in United States Dollars (the "Settlement Amount").  The Settlement Amount shall be paid into an escrow account in United States Dollars to be administered in accordance with the provisions of Paragraph 17 of this Agreement (the "Escrow Account") according to the following schedule:  $12,000,000 to be paid within 60 days from end of the month of execution of this Agreement, and the balance (if any) to paid within 30 days of this Agreement becoming final as provided in Paragraph 11.  Interest on unpaid amounts shall accrue from 30 days after such payments are due under this Agreement at the rate specified in 18 U.S.C § 3612(f)(2). Any paid amount is nonrefundable in the event Philips defaults on any portion of the remaining amount.

8

17.     Escrow Account.

(a)     The Escrow Account will be established at Citibank, N.A. – Citi Private Bank, San Francisco, California, with such Bank serving as escrow agent ("Escrow Agent") subject to escrow instructions mutually acceptable to Plaintiffs' Lead counsel and Philips, such escrow to be administered under the Court's continuing supervision and control.

(b)     The Escrow Agent shall cause the funds deposited in the Escrow Account to be invested in short-term instruments backed by the full faith and credit of the United States Government or fully insured in writing by the United States Government, or money market funds rated Aaa and AAA, respectively by Moody's Investor Services and Standard and Poor's, invested substantially in such instruments, and shall reinvest any income from these instruments and the proceeds of these instruments as they mature in similar instruments at their then current market rates.

(c)     All funds held in the Escrow Account shall be deemed and considered to be in custodia legis of the Court, and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed pursuant to this Agreement and/or further order(s) of the Court.

(d)     Plaintiffs and Philips agree to treat the Settlement Fund as being at all times a qualified settlement fund within the meaning of Treas. Reg. §1.468B-1.  In addition, the Escrow Agent shall timely make such elections as necessary or advisable to carry out the provisions of this paragraph 17, including the relation-back election (as defined in Treas. Reg. §1.468B-1) back to the earliest permitted date.  Such elections shall be made in compliance with the procedures and requirements contained in such regulations.  It shall be the responsibility of the Escrow Agent to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

(e)     For the purpose of §468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the administrator shall be the Escrow Agent.  The Escrow Agent shall timely and properly file all informational and

9

other tax returns necessary or advisable with respect to the Settlement Fund (including without limitation the returns described in Treas. Reg. §1.468B-2(k)(l)). Such returns (as well as the election described in paragraph 17(d)) shall be consistent with paragraph 17(d) and in all events shall reflect that all Taxes, as defined below (including any estimated Taxes, interest or penalties), on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided in paragraph 17(f) hereof.

(f)      All (i) taxes (including any estimated taxes, interest or penalties) arising with respect to the income earned by the Settlement Fund, including any taxes or tax detriments that may be imposed upon Philips or any other Philips Releasee with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a qualified settlement fund for federal or state income tax purposes ("Taxes"); and (ii) expenses and costs incurred in connection with the operation and implementation of paragraphs 17(d) through 17(f) (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in this paragraph 17(g) ("Tax Expenses")), shall be paid out of the Settlement Fund.

(g)      Neither Philips nor any other Philips Releasee nor their respective counsel shall have any liability or responsibility for the Taxes or the Tax Expenses. Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement Fund and shall be timely paid by the Escrow Agent out of the Settlement Fund without prior order from the Court and the Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to any claimants authorized by the Court any funds necessary to pay such amounts including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treas. Reg. §1.468B-2(1)(2)). Neither Philips nor any other Philips Releasee is responsible nor shall they have any liability therefor. Plaintiffs and Philips agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of paragraphs 17(d) through 17(f).

10

(h)     If this Agreement does not receive final Court approval, or if the Action is not certified as a class action for settlement purposes, or if this Agreement is terminated by Philips pursuant to this Agreement, including but not limited to Paragraphs 18, 28, or 29 hereof, then all amounts paid by Philips into the Settlement Fund (other than notice costs expended in accordance with paragraph 19(a)) shall be returned to Philips from the Escrow Account by the Escrow Agent along with any interest accrued thereon within 30 calendar days.

18.     <u>Exclusions and Determination of Settlement Amount</u>.  Lead Counsel will cause copies of requests for exclusion from the Class to be provided to counsel for Philips at least 30 days prior to seeking final approval of the Settlement from the Court.  The Settlement Amount shall be determined, as reflected in the table below, by the total percentage of Philips' Sales represented by Philips Customers that request exclusion from or opt out of the Class, or initiate separate action(s) against Philips based in whole or in part on the facts alleged in the Plaintiffs' Consolidated Amended Complaint (collectively, the "Percentage of Philips Sales Excluded").  The identification of Philips Customers and the percentage of Philips Sales represented by such customer(s) shall be provided separately by Philips to counsel for the Class and shall form the basis for determining the Percentage of Philips Sales Excluded.  Counsel for the Class agrees that such information shall be treated as strictly confidential.  Any Settlement Amounts paid by Philips that exceed the payments due to Plaintiffs under this paragraph shall be returned within 10 business days by wire transfer to Philips.

**Settlement Amount**

| Percentage of Philips Sales Excluded | Settlement Amount (US$ millions) |
|---|---|
| 0%-10% | $27 |
| 10.1%-20% | $25 |
| 20.1%-30% | $23 |
| 30.1%-40% | $21 |
| 40.1%-50% | $19 |

| 50.1%-60% | $17 |
| 60.1%-70% | $15 |
| 70.1%-80% | $13 |
| >80.1% | $12 |

19.    Payment of Expenses.

(a)    Philips agrees to permit use of a maximum of $500,000 of the Settlement Fund towards notice to the class and administration costs.  The $500,000 in notice and claims administration expenses are not recoverable if this settlement does not become final.  Other than as set forth in this paragraph 19(a), neither Philips nor any of the other Philips Releasees under this Agreement shall be liable for any of the costs or expenses of the litigation of the Action, including attorneys' fees; fees and expenses of expert witnesses and consultants; and costs and expenses associated with discovery, motion practice, hearings before the Court or any Special Master, appeals, trials or the negotiation of other settlements, or for Class administration and costs.

(b)    If Lead Counsel enter into any other settlements on behalf of the Class before notice of this Agreement is given to the Class, Interim-Lead Counsel shall use its reasonable best efforts to provide a single notice to prospective Class Members of all of the settlements.

(c)    Following final approval of this Agreement by the Court, Class Counsel may use, subject to prior approval of the Court, up to $500,000 of the Settlement Fund for expenses incurred for prosecution of the Action on behalf of the Class against non settling defendants.

E.    The Settlement Fund.

20.    Releasors shall look solely to the Settlement Fund for settlement and satisfaction against the Philips Releasees of all Released Claims, and shall have no other recovery against Philips or any other Philips Releasee.

12

21.     After this Agreement becomes final within the meaning of Paragraph 11, the Settlement Fund shall be distributed in accordance with a plan to be submitted at the appropriate time by Plaintiffs, subject to approval by the Court.  In no event shall any Philips Releasee have any responsibility, financial obligation, or liability whatsoever with respect to the investment, distribution, or administration of the Settlement Fund, including, but not limited to, the costs and expenses of such distribution and administration, with the sole exception of the provisions set forth in paragraph 19(a) of this Agreement.

22.     Plaintiffs and Class Counsel shall be reimbursed and indemnified solely out of the Settlement Fund for all expenses.  The Philips Releasees shall not be liable for any costs, fees, or expenses of any of Plaintiffs' or the Class' respective attorneys, experts, advisors, agents, or representatives, but all such costs, fees, and expenses as approved by the Court shall be paid out of the Settlement Fund.

23.     <u>Class Counsel's Attorneys' Fees And Reimbursement of Expenses.</u>

(a)     Class Counsel may submit an application or applications to the Court (the "Fee and Expense Application") for distribution to them from the Settlement Fund and Philips shall not oppose such application for:  (i) an award of attorneys' fees not in excess of one-third of the settlement fund; plus (ii) reimbursement of expenses and costs incurred in connection with prosecuting the Action, plus interest on such attorneys' fees, costs and expenses at the same rate and for the same period as earned by the Settlement Fund (until paid) as may be awarded by the Court (the "Fee and Expense Award").  Class Counsel reserve the right to make additional applications for fees and expenses incurred, but in no event shall Philips Releasees be responsible to pay any such additional fees and expenses except to the extent they are paid out of the Settlement Fund.

(b)     The Fee and Expense Award, as approved by the Court, shall be paid solely from the Settlement Fund.  After this Agreement becomes final within the meaning of Paragraph 11, the Fee and Expense Award shall be paid to Interim-Lead Counsel within ten (10) business days.  Interim-Lead Counsel shall allocate the attorneys' fees among Class Counsel in a manner which it in good faith believe reflects the contributions of such counsel to the prosecution and settlement of the Action.

(c)     The procedure for and the allowance or disallowance by the Court of the application by Class Counsel for attorneys' fees, costs and expenses to be paid out of the Settlement Fund are not part of this Agreement, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of the Settlement, and any order or proceeding relating to the Fee and Expense Application, or any appeal from any such order shall not operate to terminate or cancel this Agreement, or affect or delay the finality of the judgment approving the settlement.

(d)     Neither Philips nor any other Philips Releasee under this Agreement shall have any responsibility for, or interest in, or liability whatsoever with respect to any payment to Class Counsel of any Fee and Expense Award in the Action.

(e)     Neither Philips nor any other Philips Releasee under this Agreement shall have any responsibility for, or interest in, or liability whatsoever with respect to the allocation among Class Counsel, and/or any other person who may assert some claim thereto, of any Fee and Expense Award that the Court may make in the Action.

F.     Cooperation.

24.     Philips shall cooperate with Lead Counsel as set forth specifically below.

(a) Philips' counsel of record will make themselves available in the United States for up to a total of two (2) meetings (each meeting may last one or more days) with Lead Counsel to provide a complete description of facts known to Philips that are relevant to the Action including, without limitation, proffers of all witnesses

14

who testified or provided information to the United States Department of Justice Antitrust Division in connection with its antitrust investigation into the CRT industry, documents, witnesses, meetings, communications, and events not covered by privilege or other protections available under any applicable United States law, plus reasonable follow-up conversations including, but not limited to, identifying individuals such as current or former employees, who may provide information or potential testimony relevant to the Action. Philips shall identify and produce relevant documents, to the extent reasonably available, sufficient to show sales, pricing, capacity, production, and damages, and to evidence any collusive meetings among CRT makers. Philips shall provide all pre-existing translations in English of foreign language documents in the possession of Philips that are to be or have been produced pursuant to this Agreement. Philips shall provide any and all future English translations of Philips produced documents as they are translated by Philips in the regular course of this litigation.

(b)     Notwithstanding any other provision in this Agreement, Plaintiffs agree that they and Class Counsel shall maintain all statements made by Philips' counsel as strictly confidential; and that they shall not use directly or indirectly the information so received for any purpose other than the prosecution of the Action. The parties and their counsel further agree that any statements made by Philips' counsel in connection with and/or as part of this settlement shall be protected by Federal Rule of Evidence 408, and shall in no event be discoverable by any person or treated as evidence of any kind, unless otherwise ordered by a Court.

(c)     Upon reasonable notice after the date of execution of this Agreement, Philips agrees to use all reasonable efforts to make

available for interviews, depositions, and testimony at hearings or trial, via videoconference or at a mutually agreed upon location or locations (except for testimony at hearings or trial, which shall be at the United States Courthouse of the United States District Court for the Northern District of California), and at Philips' expense up to seven (7) persons, which may consist of current and/or former directors, officers, and/or employees of Philips whom Lead Counsel, in consultation with counsel for Philips, reasonably and in good faith believe to have knowledge regarding Plaintiffs' claims as alleged in the Plaintiffs' Consolidated Amended Complaint. An "interview" for purposes of this Paragraph shall last no longer than eight hours, including reasonable breaks and, subject to reasonable limitations, may occur on more than a single day and not more than two days. Depositions shall be administered according to the rules and limitations of the Federal Rules of Civil Procedure, regardless of the location at which they take place or the citizenship of the deponent. Philips agrees to bear reasonable travel expenses incurred by witnesses pursuant to this Paragraph.

(d)      Philips agrees to provide one or more witnesses to establish, to the best of their ability, Philips' sales, pricing, production, capacity and cost of its CRT Products. In addition, Philips agrees to provide one or more witnesses to establish, to the best of their ability, the foundation of any Philips document or data Lead Counsel identify as necessary for summary judgment and/or trial.

(e)      If any document protected by the attorney-client privilege, attorney work-product protection, joint defense or any other protection, privilege, or immunity is accidentally or inadvertently produced under this Paragraph, the document shall promptly be

16

returned to Philips, and its production shall in no way be construed to have waived any privilege or protection attached to such document.

(f)   Plaintiffs and Lead Counsel agree they will not use the information provided by Philips or the Philips Releasees or their representatives under this Paragraph for any purpose other than the pursuit of the Action and, will not publicize the information beyond what is reasonably necessary for the prosecution of the action or as otherwise required by law. Any documents and other information provided will be deemed "Highly Confidential" and subject to the protective order entered in the Action as if they had been produced in response to discovery requests and so designated.

25.   In the event that this Agreement fails to receive final approval by the Court as contemplated in Paragraphs 8-11 hereof, or in the event that it is terminated by either party under any provision herein, the parties agree that neither Plaintiffs nor Plaintiffs' counsel shall be permitted to introduce into evidence, at any hearing, or in support of any motion, opposition or other pleading in this action or in any other federal or state action alleging a violation of any antitrust or unfair competition law relating to the subject matter of this Action, the unsworn oral or written statements provided by the Philips Releasees, their counsel, or any individual made available by the Philips Releasees pursuant to the cooperation provisions of Paragraph 24.

26.   Except as provided in Paragraph 24 of this Agreement, Philips need not respond to formal discovery from Plaintiffs, respond to the complaint, or otherwise participate in the Action during the pendency of the Agreement. Neither Philips nor Plaintiffs shall file motions against the other during the pendency of the Agreement. In the event that the Agreement is not approved by the Court, or otherwise terminates, Philips and Plaintiffs will each be bound by and have the benefit of any rulings made in the Action to the extent they would have been applicable to Philips or Plaintiffs had Philips been participating in the Action.

17

27.     Philips agrees that it will not disclose publicly or to any other defendant the terms of this Agreement until this Agreement is submitted to the Court for approval. Philips also agrees that it will not disclose publicly or to any other defendant the information provided to Plaintiffs pursuant to this Agreement, except as otherwise required by law.

G.     Rescission if this Agreement is Not Approved or Final Judgment is Not Entered.

28.     If the Court refuses to approve this Agreement or any part hereof, or if such approval is modified or set aside on appeal, or if the Court does not enter the final judgment provided for in paragraph 10 of this Agreement, or if the Court enters the final judgment and appellate review is sought, and on such review, such final judgment is not affirmed in its entirety, then Philips and the Plaintiffs shall each, in their sole discretion, have the option to rescind this Agreement in its entirety.  Written notice of the exercise of any such right to rescind shall be made according to the terms of paragraph 39.  A modification or reversal on appeal of any amount of Class Counsel's fees and expenses awarded by the Court from the Settlement Fund shall not be deemed a modification of all or a part of the terms of this Agreement or such final judgment.

29.A.   In the event that this Agreement does not become final, then this Agreement shall be of no force or effect and any and all parts of the Settlement Fund caused to be deposited in the Escrow Account (including interest earned thereon) shall be returned forthwith to Philips less only disbursements made in accordance with Paragraph 19 of this Agreement. Philips expressly reserves all of its rights and defenses if this Agreement does not become final.

29.B.   Further, and in any event, Plaintiffs and Philips agree that this Agreement, whether or not it shall become final, and any and all negotiations, documents, and discussions associated with it, shall not be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing whatsoever by Philips (or the Philips Releasees), or of the truth of any of the claims or allegations contained in the complaint or any other pleading filed by Plaintiffs in the

18

Action, and evidence thereof shall not be discoverable or used directly or indirectly, in any way, whether in the Action or in any other action or proceeding.

      30.    This Agreement shall be construed and interpreted to effectuate the intent of the parties, which is to provide, through this Agreement, for a complete resolution of the relevant claims with respect to each Philips Releasee as provided in this Agreement.

      31.    The parties to this Agreement contemplate and agree that, prior to final approval of the settlement as provided for in Paragraphs 8-11 hereof, appropriate notice 1) of the settlement; and 2) of a hearing at which the Court will consider the approval of this Settlement Agreement will be given to Class Members.

      H.    <u>Miscellaneous</u>.

      32.    This Agreement does not settle or compromise any claim by Plaintiffs or any Class Member asserted in the Consolidated Amended Complaint or, if amended, any subsequent Complaint, against any defendant or alleged co-conspirator other than the Philips Releasees. All rights against such other defendants or alleged co-conspirators are specifically reserved by Plaintiffs and the Class. Philips' sales to the Class shall not be removed from the Action.

      33.    This Agreement shall not affect whatever rights Releasors or any of them may have (i) to seek damages or other relief in a judicial forum outside the United States of America, under the laws of countries other than the United States, from any person with respect to any CRT Products purchased directly from the manufacturer (or any subsidiary or affiliate thereof) outside the United States; (ii) to participate in or benefit from any relief or other recovery as part of a settlement or judgment in any action on behalf of any indirect purchasers of CRT Products so long as such benefit, relief or recovery is not duplicative in whole or part of any Released Claim; (iii) to participate in or benefit from any relief or recovery as part of a judgment or settlement in this action against any other party named as a defendant (other than a Philips Releasee); or (iv) to assert any product liability or breach of contract claims in the ordinary course of business which are not covered by the Released Claims.

34.     The United States District Court for the Northern District of California shall retain jurisdiction over the implementation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to this Agreement or the applicability of this Agreement that cannot be resolved by negotiation and agreement by Plaintiffs and Philips. This Agreement shall be governed by and interpreted according to the substantive laws of the state of California without regard to its choice of law or conflict of laws principles.

35.     This Agreement constitutes the entire, complete and integrated agreement among Plaintiffs and Philips pertaining to the settlement of the Action against Philips, and supersedes all prior and contemporaneous undertakings of Plaintiffs and Philips in connection herewith.  This Agreement may not be modified or amended except in writing executed by Plaintiffs and Philips, and approved by the Court.

36.     This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of Plaintiffs and Philips.  Without limiting the generality of the foregoing, each and every covenant and agreement made herein by Plaintiffs, Interim-Lead Counsel or Class Counsel shall be binding upon all Class Members and Releasors. The Philips Releasees (other than Philips, which is a party hereto) are third party beneficiaries of this Agreement and are authorized to enforce its terms applicable to them.

37.     This Agreement may be executed in counterparts by Plaintiffs and Philips, and a facsimile signature shall be deemed an original signature for purposes of executing this Agreement.

38.     Neither Plaintiffs nor Philips shall be considered to be the drafter of this Agreement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Agreement.

39.     Where this Agreement requires either party to provide notice or any other communication or document to the other, such notice shall be in writing, and such notice, communication, or document shall be provided by facsimile or letter by

20

overnight delivery to the undersigned counsel of record for the party to whom notice is being provided.

        40.      Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Agreement, subject to Court approval.

Dated: February 1, 2012

                                        Guido Saveri
                                        R. Alexander Saveri
                                        Saveri & Saveri, Inc.
                                        706 Sansome Street
                                        San Francisco, CA 94111
                                        Telephone: (415) 217-6810

                                        **Lead Counsel and Attorneys for the Class**

                                        John M. Taladay
                                          Baker Botts LLP
                                          1299 Pennsylvania Ave., N.W.
                                        Washington, D.C. 20004
                                        Telephone: (202) 639-7909

                                        **Attorneys for Philips**

21

EXHIBIT 3

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA

# If You Bought A Cathode Ray Tube Product,

## A Class Action Settlement May Affect You.

Cathode Ray Tube (CRT) Products include Cathode Ray Tubes and finished products that contain a Cathode Ray Tube such as Televisions and Computer Monitors

*A Federal Court authorized this Notice. This is not a solicitation from a lawyer.*

- A class action lawsuit that includes direct purchasers of CRT Products is currently pending.

- Plaintiffs claim that Defendants (listed below) and co-conspirators engaged in an unlawful conspiracy to fix, raise, maintain or stabilize the prices of Cathode Ray Tubes and certain products containing those tubes – televisions and monitors. Plaintiffs allege that, as a result of the unlawful conspiracy, they and other direct purchasers paid more for CRT Products than they would have paid absent the conspiracy. Defendants deny Plaintiffs' claims.

- Settlements have been reached with (1) Chunghwa Picture Tubes, Ltd. ("CPT"), and (2) Koninklijke Philips Electronics N.V., Philips Electronics North America Corporation, Philips Electronics Industries (Taiwan), Ltd., and Philips Da Amazonia Industria Electronica Ltda. (collectively, "Philips"). The companies are together referred to as the "Settling Defendants."

- Your legal rights will be affected whether you act or don't act. This Notice includes information on the Settlements and the continuing lawsuit. Please read the entire Notice carefully.

## These Rights and Options – and deadlines to exercise them –

## are explained in this notice

| | |
|---|---|
| You can object or comment on the Settlements | *see* Question 10 |
| You may also exclude yourself from the Settlements | *see* Question 10 |
| You may go to a hearing and comment on the Settlements | *see* Question 14 |

- The Court in charge of this case still has to decide whether to approve each of the Settlements. The case against the Non-Settling Defendants (identified below) continues.

# WHAT THIS NOTICE CONTAINS

**Basic Information** ........................................................................... Page 3

    1.  Why did I get this notice?

    2.  Who are the Defendant companies?

    3.  What is this lawsuit about?

    4.  Why are there Settlements but the litigation is continuing?

    5.  What is a Cathode Ray Tube Product?

    6.  What is a class action?

**The Settlement Class** ..................................................................... Page 4

    7.  How do I know if I'm part of the Settlement Class?

    8.  What does the Settlement provide?

    9.  When can I get a payment?

    10.  What are my rights in the Settlement Class?

    11.  What am I giving up to stay in the Settlement Class?

**The Settlement Approval Hearing** .................................................. Page 7

    12.  When and where will the Court decide whether to approve the Settlement?

    13.  Do I have to come to the hearing?

    14.  May I speak at the hearing?

**The Lawyers Representing You** ...................................................... Page 8

    15.  Do I have a lawyer in the case?

    16.  How will the lawyers be paid?

**Getting More Information** ............................................................... Page 8

    17.  How do I get more information?

**For More Information: Call 1-800-000-0000 or Visit
www.CRTDirectPurchaserAntitrustSettlement.com**

## BASIC INFORMATION

**1.   Why did I get this notice?**

You or your company may have directly purchased Cathode Ray Tubes (CRTs) or certain products containing those tubes between March 1, 1995 and November 25, 2007. A direct purchaser is a person or business who bought a CRT, or a television or computer monitor containing a CRT directly from one or more of the Defendants, co-conspirators, affiliates, or subsidiaries themselves, as opposed to an intermediary (such as a retail store).

You have the right to know about the litigation and about your legal rights and options before the Court decides whether to approve the Settlements.

The notice explains the litigation, the two settlements, and your legal rights.

The Court in charge of the case is the United States District Court for the Northern District of California, and the case is called *In re Cathode Ray Tube (CRT)) Antitrust Litigation*, MDL No. 1917. The people who sued are called Plaintiffs and the companies they sued are called Defendants.

**2.   Who are the Defendant companies?**

The Defendant companies include: LG Electronics, Inc., LG Electronics U.S.A., Inc., LG Electronics Taiwan Taipei Co., Ltd, Koninklijke Philips Electronics N.V., Philips Electronics North America Corporation, Philips Electronics Industries (Taiwan), Ltd., Philips da Amazonia Industria Electronica Ltda., LP Displays International, Ltd. f/k/a LG.Philips Displays, Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., Samsung SDI Co. Ltd., Samsung SDI America, Inc., Samsung SDI Mexico S.A. de C.V., Samsung SDI Brasil Ltda., Shenzhen Samsung SDI Co. Ltd., Tianjin Samsung SDI Co. Ltd., Samsung SDI Malaysia Sdn. Bhd., Toshiba Corporation, Toshiba America, Inc., Toshiba America Consumer Products, LLC., Toshiba America Information Systems, Inc., Toshiba America Electronics Components, Inc., Panasonic Corporation f/k/a Matsushita Electric Industrial, Ltd., Panasonic Corporation of North America, MT Picture Display Co., Ltd., Beijing-Matsushita Color CRT Company, Ltd. (BMCC), Hitachi, Ltd., Hitachi Displays, Ltd., Hitachi Electronic Devices (USA), Inc., Hitachi America, Ltd., Hitachi Asia, Ltd., Tatung Company of America, Inc., Chunghwa Picture Tubes Ltd., Chunghwa Picture Tubes (Malaysia) Sdn. Bhd., IRICO Group Corporation, IRICO Display Devices Co., Ltd., IRICO Group Electronics Co., Ltd., Thai CRT Company, Ltd., Daewoo Electronics Corporation f/k/a Daewoo Electronics Company, Ltd., Daewoo International Corporation, Irico Group Corporation, Irico Group Electronics Co., Ltd., and Irico Display Devices Co., Ltd.

**3.      What is this lawsuit about?**

The lawsuit alleges that Defendants and co-conspirators conspired to raise and fix the prices of CRTs and the CRTs contained in certain finished products for over ten years, resulting in overcharges to direct purchasers of those CRTs and products.   The complaint describes how the Defendants and co-conspirators allegedly violated the U.S. antitrust laws by establishing a global cartel that set artificially high prices for, and restricted the supply of CRTs and the televisions and monitors that contained them. Defendants deny Plaintiffs allegations.  The Court has not decided who is right.

**4.      Why are there Settlements but the litigation is continuing?**

Only two of the Defendants have agreed to settle the lawsuit – Chunghwa and Philips. The case is continuing against the remaining Non-Settling Defendants.  Additional money may become available in the future as a result of a trial or future settlements, but there is no guarantee that this will happen.

**5.      What is a Cathode Ray Tube Product?**

For the purposes of the Settlement, Cathode Ray Tube Products means Cathode Ray Tubes of any type (e.g. color display tubes, color picture tubes and monochrome display tubes) and finished products which contain Cathode Ray Tubes, such as Televisions and Computer Monitors.

**6.      What is a class action?**

In a class action, one or more people, called class representatives, sue on behalf of people who have similar claims.  All these people are a class or class members, except for those who exclude themselves from the class.

If the Plaintiffs obtain money or benefits as a result of a trial or future settlement, you will be notified about those settlements, if any, at that time. Important information about the case will be posted on the website, **www.CRTDirectPurchaserAntitrustSettlement.com** as it becomes available. Please check the website to be kept informed about any future developments.

**THE SETTLEMENT CLASS**

**7.      How do I know if I'm part of the Settlement Class?**

All persons and entities who, between March 1, 1995 and November 25, 2007, directly purchased a CRT Product in the United States from any defendant or subsidiary or affiliate thereof, or any co-conspirator. ("Settlement Class").

**8.      What do the Settlements provide?**

The settlement with CPT provides for payment to the class in the amounts of $10,000,000 in cash, plus interest, to the Settlement Class. The settlement also provides for extensive cooperation with Plaintiffs regarding the antitrust conspiracy alleged in the complaint. In addition, CPTs sales remain in the case for the purpose of computing damages against the remaining non-settling Defendants. Finally, the settlement provides that part of the $10 million settlement fund may be used to pay expenses incurred in the litigation.

The Settlement with Philips provides for payment of $27,000,000 in cash; however, the $27 million settlement amount is subject to reduction based on the number of exclusions from the class after notice. The detailed reduction formula is set forth in the Philips settlement available on the class website **www.CRTDirectPurchaserAntitrustSettlement.com.** The settlement also provides for extensive cooperation with Plaintiffs regarding the antitrust conspiracy alleged in the complaint. In addition, Philips' sales remain in the case for the purpose of computing damages against the remaining non-settling Defendants. Finally, settlement provides that part of the settlement fund may be used to pay expenses incurred in the litigation.

More details are in both Settlement Agreements, available at
**www.CRTDirectPurchaserAntitrustSettlement.com.**

**9.      When can I get a payment?**

No money will be distributed to any Class Member yet. The lawyers will pursue the lawsuit against the Non-Settling Defendants to see if any future settlements or judgments can be obtained in the case and then be distributed together, to reduce expenses.

Any future distribution of the Settlement Funds will be done on a *pro rata* basis. You will be notified in the future when and where to send a claim form. DO NOT SEND ANY CLAIMS NOW.

In the future, each class member's *pro rata* share of the Settlement Fund will be determined by computing each valid claimant's total CRT purchases divided by the total valid CRT purchases claimed. This percentage is multiplied to the Net Settlement Fund (total settlements minus all costs, attorneys' fees, and expenses) to determine each claimants *pro rata* share of the Settlement Fund. To determine your CRT purchases, CRT tubes (CPTs and CDTs) are calculated at full value while CRT televisions are valued at 50% and CRT computer monitors are valued at 75%.

In summary, all valid claimants will share in the settlement funds on a *pro rata* basis determined by the CRT value of the product you purchased -tubes 100%, monitors 75% and televisions 50%.

**For More Information: Call 1-800-000-0000 or Visit
www.CRTDirectPurchaserAntitrustSettlement.com**

10.     **What are my rights in the Settlement Class?**

**Remain in the Settlement Class**: If you wish to remain a member of the Settlement Class you do not need to take any action at this time.

**Get out of the Settlement Class**: If you wish to keep any of your rights to sue the Settling Defendants about the claims in this, case you must exclude yourself from the Settlement Class. You will not get any money from either of the settlements if you exclude yourself from the Settlement Class.

To exclude yourself from the Settlement Class, you must send a letter that includes the following:

- Your name, address and telephone number,
- A statement saying that you want to be excluded from *In re Cathode Ray Tube (CRT) Antitrust Litigation*, MDL No. 1917, Chunghwa Settlement, and/or Philips Settlement; and
- Your signature.

You must mail your exclusion request, postmarked no later than _____, **2012**, to:

CRT Claims Administrator

P.O. 0000

City, ST 00000

**Remain in the Settlement Class and Object**: If you have comments about, or disagree with, any aspect of the Settlements, you may express your views to the Court by writing to the address below. The written response needs to include your name, address, telephone number, the case name and number (*In re Cathode Ray Tube (CRT) Antitrust Litigation*, MDL No. 1917), a brief explanation of your reasons for objection, and your signature. The response must be postmarked no later than _____, **2012** and mailed to:

| COURT | INTERIM LEAD COUNSEL | COUNSEL FOR CHUNGHWA | COUNSEL FOR PHILIPS |
|---|---|---|---|
| Honorable Charles A. Legge (Ret.) JAMS Two Embarcadero, Suite 1500 San Francisco, CA 94111 | Guido Saveri R. Alexander Saveri SAVERI & SAVERI, INC. 706 Sansome Street San Francisco, CA 94111 | Joel S. Sanders Gibson Dunn & Crutcher LLP 555 Mission Street, Suite 3000 San Francisco, CA 94105 | John M. Taladay Baker Botts LLP 1299 Pennsylvania Ave., N.W. Washington, D.C. 20004 |

**11.     What am I giving up to stay in the Settlement Class?**

Unless you exclude yourself from the Settlement Class, you can't sue the Settling Defendants, or be part of any other lawsuit against Settling Defendants about the legal issues in this case. It also means that all of the decisions by the Court will bind you. The "Release of Claims" includes any causes of actions asserted or that could have been asserted in the lawsuit, as described more fully in the Settlement Agreements. The Settlement Agreements are available at **www.CRTDirectPurchaserAntitrustSettlement.com**.

## THE SETTLEMENT APPROVAL HEARING

**12.     When and where will the Court decide whether to approve the Settlement?**

The Court will hold a Fairness Hearing at _____ on _____ **2012**, at JAMS, Two Embarcadero, Suite 1500, San Francisco, CA 94111. The hearing may be moved to a different date or time without additional notice, so it is a good idea to check class website for information.  At this hearing, the Court will consider whether the Settlements are fair, reasonable and adequate. If there are objections or comments, the Court will consider them at that time. After the hearing, the Court will decide whether to approve the Settlements. We do not know how long these decisions will take.

**13.     Do I have to come to the hearing?**

No. Interim Lead Counsel will answer any questions the Court may have. But, you are welcome to come at your own expense. If you send an objection or comment, you don't have to come to Court to talk about it.  As long as you mailed your written objection on time, the Court will consider it. You may also pay another lawyer to attend, but it's not required.

**14.     May I speak at the hearing?**

If you want your own lawyer instead of Interim Lead Counsel to speak at the Final Approval Hearing, you must give the Court a paper that is called a "Notice of Appearance."  The Notice of Appearance should include the name and number of the lawsuit (*In re Cathode Ray Tube (CRT) Antitrust Litigation*, MDL No. 1917), and state that you wish to enter an appearance at the Fairness Hearing. It also must include your name, address, telephone number, and signature. Your "Notice of Appearance" must be postmarked no later than _____, **2012**. You cannot speak at Hearing if you previously asked to be excluded from the Settlement.

The Notice of Appearance must be sent to the addresses listed in Question 10.

## THE LAWYERS REPRESENTING YOU

**15.     Do I have a lawyer in the case?**

Yes. The Court has appointed the law firm of Saveri & Saveri, Inc. to represent you as "Interim Lead Counsel." You do not have to pay Interim Lead Counsel. If you want to be represented by your own lawyers, and have that lawyer appear in court for you in this case, you may hire one at your own expense.

**16.     How will the lawyers be paid?**

Class Counsel are not asking for attorneys' fees at this time.  At a future time, Interim Lead Counsel will ask the Court for attorneys' fees not to exceed one-third (33.3%) of this or any future Settlement Fund plus reimbursement of their costs and expenses, in accordance with the provisions of the Settlement Agreements.   Interim Lead Counsel may also request that an amount be paid to each of the Class Representative who helped the lawyers on behalf of the whole Class.

## GETTING MORE INFORMATION

**17.     How do I get more information?**

This Notice summarizes the lawsuit and the Settlement. You can get more information about the lawsuit and Settlements at **www.CRTDirectPurchaserAntitrustSettlement.com**,by calling 1-800-000-0000, or writing to CRT Claims Administrator, P.O. 0000, City, ST 00000. Please do not contact JAMS or the Court about this case.

Dated: _____, 2012                                BY ORDER OF THE COURT

EXHIBIT 4

LEGAL NOTICE

## If You Bought A Cathode Ray Tube ("CRT") or CRT Product, A Class Action Settlement May Affect You.

### CRT Products include Televisions or Computer Monitors that contain Cathode Ray Tubes

Settlements have been reached with two defendants in a class action lawsuit involving CRTs and CRT Products. CRT stands for "Cathode Ray Tube." "Cathode Ray Tube (CRT) Products" include Cathode Ray Tubes and finished products that contain a Cathode Ray Tube such as Televisions and Computer Monitors.

#### What is this lawsuit about?

The lawsuit alleges that Defendants and Co-Conspirators engaged in an unlawful conspiracy to fix, raise, maintain or stabilize the prices of CRTs and certain products containing those tubes – televisions and monitors. Plaintiffs allege that, as result of the unlawful conspiracy, they and other direct purchasers paid more for CRT Products than they would have absent the conspiracy. Defendants deny Plaintiffs' claims.

#### Who's included in the settlements?

The Settlements include all persons and entities who, between March 1, 1995 and November 25, 2007, directly purchased a CRT Product in the United States from any defendant or subsidiary or affiliate thereof. ("Settlement Class").

#### Who are the Settling Defendants?

Settlements have been reached with Defendants Chunghwa Picture Tubes, Ltd. ("CPT") and Koninklijke Philips Electronics N.V., Philips Electronics North America Corporation, Philips Electronics Industries (Taiwan), Ltd., and Philips Da Amazonia Industria Electronica Ltda. (collectively, "Philips") The companies are together referred to as the "Settling Defendants." A complete list of Defendants is set out in the Long Form of Notice available at www.CRTDirectPurchaserAntitrustSettlement.com.

#### What do the Settlements provide?

The CPT Settlement provides for the payment of $10,000,000 in cash, plus interest, to the Settlement Class. The Philips Settlement provides for the payment of $27,000,000 in cash, subject to a reduction based on the number of exclusions from the class after notice. Both Settling Defendants have agreed to provide Plaintiffs with significant and valuable cooperation in the prosecution of the case against the remaining Non-Settling Defendants. Money will not be distributed to Class members at this time. The lawyers will pursue the lawsuit against the other Defendants to see if any future settlements or judgments can be obtained in the case and then be distributed together, to reduce expenses.

#### What are my rights?

If you wish to remain a member of the Settlement Class you do not need to take any action at this time. If you do not want to be legally bound by the Settlements, you must exclude yourself in writing by _____, 2012, or you will not be able to sue, or continue to sue, the Settling Defendants about the legal claims in this case.

If you wish to comment on or disagree with any aspect of the proposed settlements, you must do so in writing no later than _____, 2012. The Settlement Agreements, along with details on how to object to them, are available at www.CRTDirectPurchaserAntitrustsSettlement.com. The U.S. District Court for the Northern District of California will hold a Fairness Hearing at _____ on _____, 2012, at JAMS, Two Embarcadero, Suite 1500, San Francisco, CA 94111. The hearing may be moved to a different date or time without additional notice, so it is a good idea to check the class website for information.

The Court has appointed the law firm of Saveri & Saveri, Inc. to represent Direct Purchaser Class members as Interim Lead Class Counsel. The Court will hold a hearing on _____, 2012 to consider whether the Settlements are fair, reasonable and adequate. If there are objections or comments, the Court will consider them at that time. You may appear at the hearing, but don't have to. We do not know how long these decisions will take. Please do not contact JAMS or the Court about this case.

This is a Summary Notice. For more details, call toll free 1-800-000-0000, visit www.CRTDirectPurchaserAntitrustSettlement.com., or write to CRT Direct Settlement, P.O. Box XXX, XXXXX.