Hon. Charles A. Legge (Ret.)
JAMS
Two Embarcadero Center, Suite 1500
San Francisco, CA 94111
Telephone: (415) 774-2644
Fax: (415) 982-5287
Special Master

JAMS

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | No. 07-5944 SC<br>MDL No. 1917<br>JAMS Reference No. 1100054618 |
| CRAGO, INC., et al., | |
| Plaintiffs, | **REPORT AND RECOMMENDATION REGARDING DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT** |
| vs. | |
| CHUNGHWA PICTURE TUBES, LTD., et al., | |
| Defendants. | |
| This Document Relates to the DIRECT PURCHASER CLASS ACTION CASES | |

///
///
///
///
///
///
///
///
///
///

# Table of Contents

Summary, Conclusions, and Possible Results     3

Procedure     4

The Key Points     4

    1.    The accused products are CRTs, not the finished products.    4

    2.    Plaintiffs did not purchase CRTs.    5

    3.    The Clayton Act permits suits only by plaintiffs who have been injured by reason of a violation of the antitrust laws.    6

    4.    *Illinois Brick* bars suits by plaintiffs who did not directly purchase a price-fixed product.    6

    5.    Subsequent decisions of the Supreme Court and the Ninth Circuit adhere to the *Illinois Brick* rule.    7

Plaintiffs' Arguments and Citations     9

Recommended Order     12

Summary, Conclusions, and Possible Results

Defendants have made a joint motion for summary judgment against nine of the direct class plaintiffs. The motion is made on the ground that those plaintiffs did not purchase an alleged price-fixed product; *i.e.* a cathode ray tube ("CRT"). Instead, they purchased a finished product ("FP"), *i.e.*, a television set or a computer monitor into which the manufacturer had installed and integrated a CRT. Hence, defendants assert that those plaintiffs do not have standing to sue these defendants under the antitrust laws. The motion is straightforward and compelling, and the Special Master recommends granting the motion, based on the following:

1. A stipulation has eliminated FPs as accused products in the conspiracy alleged in this case. The only accused products are the CRTs.

2. The fact record demonstrates, with no issue of fact, that these plaintiffs did not purchase CRTs, but only FPs.

3. Section 4 of the Clayton Act (15 U.S.C. § 15) defines who has standing to sue for a violation of the antitrust laws. It permits suits only by a person "who shall be injured in his business or property by reason of anything forbidden in the antitrust laws..."

4. In interpreting that section, the United States Supreme Court in *Illinois Brick Company v. State of Illinois*, 431 U.S. 720 (1977), barred suits by persons who did not directly purchase a price-fixed product.

5. Subsequent decisions of the United States Supreme Court and the Ninth Circuit have adhered to that rule and have barred suits by persons who did not directly purchase a price-fixed product.

Those points will be discussed further below. And the Special Master believes that those points, even as simply stated above, compel the granting of defendants' motion.

However, the Special Master notes some possible results of that recommended decision:

1. Although this motion is only against nine of the named plaintiffs, the decision will possibly be a basis for broader application in this direct class action case, perhaps by more encompassing motions for summary judgment, or by objections to the certification of a class.

2. The decision may also be the basis for motions for summary judgment in the

direct action cases.

3.     The decision may conflict with opinions of District Judge Susan Illston in the LCD cases, discussed below on page 10.

In spite of those possible results, the Special Master believes that the granting of defendants' motion is compelled by (1) the absence of any issue of fact that plaintiffs did not purchase a price-fixed product, (2) Clayton Act § 4, (3) decisions of the U.S. Supreme Court, and (4) decisions of and within the Ninth Circuit.

## Procedure

Defendants filed their joint motion on January 19, 2012.  It was accompanied by a factual record, primarily the responses of the nine plaintiffs to discovery, and the declaration of Molly M. Donovan for defendants.  The direct purchaser plaintiffs filed a brief in opposition to the motion on February 24, 2012, and attached the declaration of Mr. R. Alexander Saveri and numerous exhibits.  An opposition was also filed by the <u>direct action</u> plaintiffs, although no motion has been filed against them.  Defendants filed a closing brief in support of their motion on March 9, 2012.  The motion and oppositions were argued on March 20.  The reporter's transcript was completed on April 9, 2012.  The motion has been submitted for decision.

## The Key Points of the Motion

**1.     The accused products are the CRTs, and not the television sets or computer monitors into which they were integrated.**

The complaint in this action originally alleged a conspiracy to fix the prices of <u>both</u> CRTs and FPs.  However, all allegations regarding the price fixing of FPs were eliminated by a stipulation and an order signed by your Honor on August 26, 2011; document No. 996.  More specifically, paragraph 3 of that stipulation and order stated that the direct purchaser plaintiffs:

> "hereby withdraw their CRT Finished Products Conspiracy Claims stated in the Direct CAC and the allegations of the Direct CAC purporting to allege a conspiracy encompassing Finished Products are stricken from the Direct CAC…"

The direct purchaser plaintiffs also withdrew "any and all requests for discovery regarding or relating to information in support of the CRT Finished Product Conspiracy Claims..." (paragraph 4). As a result of that stipulation and order, the only products alleged to be price-fixed in this case are the CRTs themselves.

**2.     The plaintiffs against whom this motion is directed did not purchase CRTs, but only FPs.**

This motion is brought against nine of the alleged direct plaintiffs.  They are listed in defendants' joint motion on pages 3-4, and their names are stated below in the recommendation of a form of order.  Each of those nine is named as a plaintiff in the direct purchaser consolidated amended complaint, pages 3 and 4.  Some of the plaintiffs listed in the complaint are not objects of this motion, but may be addressed in some future procedures by defendants.  The fact record establishes, without a genuine issue, that each of the nine did <u>not</u> purchase a CRT.  The supporting records are contained in the declaration of Ms. Donovan, and more precise citations to that record are contained in defendants' motion on pages 3 and 4.  The Special Master does not believe that the supporting record needs to be cited or discussed further in this report, because plaintiffs do <u>not</u> contest that record, and do <u>not</u> argue that there is any issue of fact regarding that record, in their opposition to this motion.  Indeed, at the oral argument of the motion, plaintiffs admitted the absence of any issue of fact.  The following quotation is from p. 41 of the hearing transcript, (ll. 15-21):

> "**Special Master:** Alright.  Now, to start out do you contest that these eight or nine plaintiffs did not purchase a CRT?
>
> **Mr. Lehmann [plaintiffs' counsel]:** Your Honor, I am unaware of any facts that would indicate that they purchased CRTs.
>
> **Special Master:** Okay.
>
> **Mr. Lehmann:** As opposed to finished products."

So there is no issue of fact that the plaintiffs against whom this motion is directed did <u>not</u> purchase a CRT, but only purchased a FP.  This is the <u>only</u> **fact** upon which this motion is based, and it is without opposition.

///

**3.     Clayton Act Section 4 permits suits only by plaintiffs who have been injured by reason of a violation of the antitrust laws.**

Clayton Act § 4, 15 U.S.C. § 15, is the section of the antitrust laws that authorizes suits in federal court for antitrust violations.  The basic standing to sue is defined as "any person who shall be <u>injured</u> in his business or property <u>by reason of anything forbidden in the antitrust laws</u>..." (emphasis added).  A person must be "injured" in order to sue.  And he must be injured by something "forbidden in the antitrust laws."  Does a person who never purchased a price-fixed product, but only purchased something which contained a price-fixed product, have standing to sue?  That question was answered in the negative by the United States Supreme Court, primarily in *Illinois Brick*.

**4.     *Illinois Brick* bars suits by plaintiffs who did not directly purchase a price-fixed product.**

The United States Supreme Court in *Illinois Brick Company v. State of Illinois*, 431 U.S. 720 (1977), discussed its earlier decision in *Hanover Shoe Inc. v. United Shoe Machinery Corp.*, 392 U.S. 481 (1968), and reaffirmed and expanded on its holding.  The Court in *Illinois Brick* stated its conclusions on pp. 728 and 729 of its opinion:

> "[W]e decline to abandon the construction given § 4 in *Hanover Shoe* that the overcharged direct purchaser, and not others in the chain of manufacture or distribution, is the party 'injured in his business or property' within the meaning of the section..."

The clear rule of *Illinois Brick* is that only "the overcharged direct purchaser" and "not others in the chain of manufacture or distribution" is the party who has standing to sue.  That rule was established in part to avoid the litigation complexities that would otherwise be necessary in making an economic analysis at each level of the manufacture and distribution of a product.  See pages 731-2.

The Court said at pp. 745-6:

> "We think the longstanding policy of encouraging vigorous private enforcement of the antitrust laws [citation omitted] supports our adherence to the *Hanover Shoe* rule, under which direct purchasers are not only spared the burden of litigating the intricacies of pass-on but also are permitted to recover the full amount of the overcharge."

The Court recognized that its rule would have the effect of eliminating any recovery by persons further down the chain of distribution who might in fact have been injured (p. 746).

The Court intended its decision to be a bright light rule: "We reject these attempts to carve out exceptions to the *Hanover Shoe* rule for particular types of markets;" p. 744.

**5.    Subsequent Supreme Court and Ninth Circuit decisions adhere to the *Illinois Brick* rule.**

The Supreme Court has subsequently reaffirmed *Illinois Brick*'s limitation of the right to sue to persons who directly purchased a price-fixed product.  And it has expressly opposed the creation of exceptions.  In *Kansas v. Utilicorp United, Inc.*, 497 U.S. 199 (1990), the Court held (p. 204):

> "We must decide who may sue under § 4 when, in violation of the antitrust laws, suppliers overcharge a public utility for natural gas and the utility passes on the overcharge to its customers.  Consistent with [*Hanover Shoe* and *Illinois Brick*], we hold that only the utility has the cause of action because it alone has suffered injury within the meaning of § 4."

The Court went on to discuss whether there might be variations from the *Illinois Brick* rule because of different economic factors or different factual settings.  The Court said "no" and explained the reasons (pp. 216-7):

> "The rationales underlying *Hanover Shoe* and *Illinois Brick* will not apply with equal force in all cases.  We nonetheless believe that ample justification exists for our stated decision not to 'carve out exceptions to the [direct purchaser] rule for particular types of markets.'  The possibility of allowing an exception, even in rather meritorious circumstances, would undermine the rule.  As we have stated:
>
> '[T]he process of classifying various market situations according to the amount of pass-on likely to be involved and its susceptibility of proof in a judicial forum would entail the very problems that the *Hanover Shoe* rule was meant to avoid.  The litigation over where the line should be drawn in a particular class of cases would impact the same 'massive evidence and complicated theories' into treble-damages proceedings, albeit at a somewhat higher level of generality. [Citation omitted.]
>
> In sum, even assuming that any economic assumptions underlying the *Illinois Brick* rule might be disproved in a particular case, we think it is an unwarranted and counterproductive exercise to litigate a series of exceptions.  Having stated the rule in *Hanover Shoe* and adhered to it in *Illinois Brick*, we stand by our interpretation of § 4."

One must conclude that *Illinois Brick* is still the law and the policy of the United States Supreme Court, and that it is a bright light rule.  It applies even if otherwise meritorious claims are barred by the "direct purchasers only" rule.

The Ninth Circuit Court of Appeals also adheres to *Illinois Brick*.

In *Delaware Valley Surgical Supply, Inc. v. Johnson & Johnson*, 523 F.3d 1116 (2008), the District Court had ruled that a plaintiff had no standing to assert a claim under the antitrust laws. The Ninth Circuit affirmed, because the party lacked "standing to pursue an antitrust claim under a direct purchaser theory;" p. 1118.  The Court added (p. 1123):

> "Quite simply, we are bound by the sensible and straightforward rule set forth by *Illinois Brick*.  Appellants argue this situation is distinguishable because [the parties had an independent contractual relationship].  However, the Supreme Court jurisprudence has been neither vague nor ambiguous in establishing the direct purchaser rule.  The Supreme Court intended to make a bright light rule for identifying the proper plaintiff when an antitrust violation occurs in a multi-tiered distribution system.  The Court has explicitly rejected attempts to create exceptions to that rule, even when the considerations in a particular market may undermine some of the reasoning used by the *Illinois Brick* Court."

In *Kendall v. Visa*, 518 F.3d. 1042 (9th Cir. 2008), the appellate court affirmed the dismissal of an antitrust complaint because of, among other things, "the indirect purchaser rule in *Illinois Brick*;" p. 1051.

In *Coordinated Pretrial Proceedings in Petroleum Antitrust Litigation*, 691 F.2d 1335 (9th Cir. 1982), the defendant oil companies allegedly conspired to fix the prices of refined petroleum products.  Plaintiffs sued to recover for the resulting inflated retail gasoline prices paid by consumers.  The Court of Appeals immediately stated that, "The principal difficulty plaintiffs have faced is the Supreme Court's intervening announcement in *Illinois Brick* that indirect purchasers of price-fixed goods may not maintain an antitrust damage action for overcharges passed on to them by direct purchasers from the defendant," (p. 1338).  The Ninth Circuit affirmed the District Court's dismissal of plaintiffs' claims and denial of plaintiffs' motion to certify classes of retail consumers; (p. 1338).

District Court decisions within the Ninth Circuit have also adhered to *Illinois Brick*.

In *In re: ATM Fee Antitrust Litigation*, 2010 WL 3701912 (N.D. Cal. 2010) plaintiffs were ATM cardholders who sought damages for alleged unlawful interchange fees that their respective banks had passed on to them. Plaintiffs acknowledged that they were the indirect payers of those fees, and that the banks were the direct payers. The District Court said, "In light of this concession, Defendants have moved for summary judgment, arguing that the *Illinois Brick* rule barring indirect purchasers from recovering monetary damages in an antitrust suit applies here and precludes Plaintiffs from seeking such damages. As explained below, the Court agrees." (Page 4).

In *Stanislaus Food Products Company v. USS-POSCO Industries*, 2010 WL 3521979 (E.D. Cal.) 2010, plaintiff purchased tin cans from a manufacturer who had purchased the tin plate used to make the cans. Plaintiff sued a defendant who had allegedly fixed the price of the tin plate. The Court concluded that plaintiff was not a direct purchaser of the tin plate (p. 6), and dismissed the complaint (p. 30).

In *Sun Microsystems, Inc. v. Hynix*, 608 F. Supp. 2d. 1166 (2009 N.D. Cal.), a computer manufacturer brought an antitrust action against manufacturers of dynamic random access memory. The Court held that the plaintiff computer manufacturer was not a direct purchaser of DRAM first purchased by an external manufacturer. The Court granted defendant's motion for summary judgment based on *Illinois Brick*; (p. 17).

The Special Master concludes that the above authorities of the Supreme Court, and of the appellate and district courts in this circuit, demonstrated faithful adherence to *Illinois Brick*, and resistance to, or outright rejection of, any new exception to that decision.

### Plaintiffs' Arguments and Citations

Plaintiffs first argue that Your Honor has already rejected this motion in a prior order in this case, *Cathode Ray Tube Antitrust Litigation*, 738 F.Supp.2d. 1011 (2010). The language of the order that is the basis for that contention is on page 1023:

///

///

> "Furthermore, courts have found antitrust standing where plaintiffs purchased downstream goods from manufacturers who made, and allegedly fixed the price of, a component of those goods."

The cited support for that statement was the *Linerboard* decision of the Third Circuit, which will be discussed below. However, the distinguishing points here are that the motion was for <u>dismissal</u> based upon the face of the complaint, and not for summary judgment based on a fact record. And at the time of that order, the allegations of the complaint included both CRTs and FPs; see p. 1023.

Plaintiffs rely heavily upon Judge Illston's decisions in the LCD cases. They are reported at 586 F.Supp.2d. 1109 (2008); 2009 WL 533130 (2009); 2010 WL 1264230 (2010); 267 FRD 291 (2010); and 2011 WL 5357906 (2011). Indeed, Judge Illston's opinions contain statements which appear contrary to the Special Master's recommendation here. However, the Special Master nevertheless respectfully suggests that those statements are an incorrect interpretation of prior authority as applied to this present case, for several reasons. First, Judge Illston did not have occasion to discuss the factual setting which is controlling in this motion; that is, that the plaintiffs here admittedly did <u>not</u> purchase <u>any</u> price-fixed product from anyone. Second, LCD relied heavily on the *Sugar* and *Linerboard* cases in the Third Circuit, which the Special Master does not believe are good law in the Ninth Circuit, as discussed below.

Plaintiffs contend that the Ninth Circuit has already recognized their claimed exception to *Illinois Brick.* They cite *Royal Printing v. Kimberly Clark Corp.,* 621 F.2d. 323 (9th Cir. 1980), and *Freeman v. San Diego Association of Realtors,* 322 F.3rd 1133 (9th Cir. 2003), for that proposition. *Royal Printing* is not applicable here because it dealt with the issue of from whom plaintiffs had to make a purchase in order to establish the necessary "directness." But that analysis does not answer the issue we have in this case, which is that the plaintiffs here <u>never</u> <u>purchased the price-fixed product</u> from anybody. In *Royal Printing,* the plaintiffs <u>did</u> in fact make some purchases of the price-fixed products; see p. 324. *Freeman* is not applicable to this motion for the same reason; that is, plaintiffs did pay the price-fixed services of the Multiple Listing Service; see p. 1147.

As noted above, plaintiffs and Judge Illston rely on two decisions from the Third Circuit

arguably holding that the purchasers of a final product have standing to sue the makers of a component of that product who fixed prices of the component. *In re: Sugar Industry Antitrust Litigation*, 579 F.2d. 13 (3rd Cir. 1978), and *In re: Linerboard Antitrust Litigation*, 305 F.3d. 145 (3rd Cir. 2002). However, the Special Master is of the opinion that those cases are not the law of the Ninth Circuit. Their conclusions have not been adopted by the Ninth Circuit Court of Appeals or by any other circuit. And indeed, they are contrary to the above-cited Ninth Circuit decisions in *Delaware*, *Kendall*, and *Petroleum*, which decisions have applied the *Illinois Brick* bright-light rule. And they are contrary to the opinion in *Delaware Valley*, in which the Ninth Circuit stated its opposition to creating any new exceptions to *Illinois Brick* (p. 1122).

Plaintiffs have argued extensively, citing primarily *Royal Printing* and *Freeman*, about from whom plaintiffs purchased their products, and the relationships of the various defendant companies. But such an argument and such authorities do not answer the central fact in this motion: that is, plaintiffs did not purchase a price-fixed product from anyone.

Plaintiffs also contend, quite correctly, for the principle of antitrust law which encourages private actions. However, plaintiffs attempt to elevate that underlying principle into a separate exception to the *Illinois Brick* rule. But that does not satisfy the requirements of § 4 of the Clayton Act. Plaintiffs raise the specter that no one would be a direct purchaser who could bring an action. However, the Special Master does not believe that such an extensive conspiracy as the one alleged in this case, with its potential financial consequences, would escape prosecution by companies or persons who were indeed direct purchasers of the price-fixed CRTs. This motion is only against nine of the alleged members of the class, and not against the entire class. It is not even against all of the named class representatives. And it seems evident, without the necessity for factual development, that if there is a manufacturer of television sets or computer monitors who purchased allegedly price-fixed CRTs from one of the defendants or its affiliates, that the manufacturer would have the incentive to bring a direct suit against the CRT manufacturers. Further, the purchasers of FPs are probably indirect purchasers who can maintain causes of action, although under state law and not federal, for any economic harm to them. Indeed, many are already doing so in the related indirect class action that is presently pending. Finally, it is a

matter of record that the Antitrust Division of the Department of Justice has been pursuing criminal actions against some of these defendants.

Plaintiffs finally contend that this motion is premature, because no depositions have been taken and the paper discovery is not quite complete.  But the evidence which plaintiffs seek to develop by more discovery cannot be a defense to this motion.  That is, the sole fact question in this motion is whether any of the named plaintiffs purchased a price-fixed product, a CRT, from one of the defendants or their affiliates.  And in the record cited above, the evidence is already undisputed that none of these named plaintiffs purchased a price-fixed product.

In the present setting, where plaintiffs never purchased a price-fixed product from anybody, the Special Master continues to recommend that the above analysis on pages 4-9 counsels the granting of this motion.


<u>Recommended Order</u>

Finding who is and who is not a "direct" purchaser has resulted in numerous decisions in the application of the *Illinois Brick* rule.  However, in this case, that search begins and ends with a simple fact: The plaintiffs against whom this motion is directed did not purchase any price-fixed product, *i.e.* a CRT, from anyone.  They purchased, at best, a manufactured product which contained a CRT.  Therefore, even the cases which have found some exception to *Illinois Brick* cannot apply in <u>this</u> case, because plaintiffs did not purchase a price-fixed product.  Plaintiffs are at best indirect purchasers of a price-fixed product.  Section 4 of the Clayton Act, as interpreted by the U.S. Supreme Court and the Ninth Circuit, bars a direct action suit here.

That result does not, as plaintiffs contend, create a major hole in the antitrust laws.  It is consistent with the United States Supreme Court and Ninth Circuit decisions.  Indeed, it is plaintiffs' argument for another exception to *Illinois Brick* that would upset established Ninth Circuit law on antitrust standing.

The Special Master therefore recommends that defendants' motion for summary judgment be granted, and that judgment be entered against plaintiffs Arch Electronics, Inc.; Crago d/b/a Dash Computers Inc.; Electronic Design Company; Meijer, Inc. and Meijer

Distribution, Inc.; Nathan Muchnick, Inc.; Orion Home Systems, LLC; Radio and TV Equipment, Inc.; Royal Data Services, Inc.; and Studio Spectrum, Inc.

Respectfully Recommended,

Date: May 31, 2012

Charles A. Legge

Hon. Charles A. Legge (Ret.), Special Master

The Report and Recommendations are: Accepted and Ordered / Denied / Modified.

Date: ______________________

______________________

Hon. Samuel Conti, United States District Judge