Mario N. Alioto (56433)
Lauren C. Russell (241151)
TRUMP, ALIOTO, TRUMP & PRESCOTT LLP
2280 Union Street
San Francisco, CA 94123
Telephone: (415) 563-7200
Facsimile: (415) 346-0679
malioto@tatp.com
laurenrussell@tatp.com

*Interim Lead Counsel for Indirect-Purchaser Plaintiffs*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION

This Document Relates to:

ALL INDIRECT-PURCHASER ACTIONS

Master File No. CV-07-5944-SC

MDL No. 1917

**INDIRECT PURCHASER PLAINTIFFS' RESPONSE REGARDING ORDER TO SHOW CAUSE REGARDING FINDING OF CIVIL CONTEMPT AND AWARD OF SANCTIONS AGAINST OBJECTOR SEAN HULL**

Date: July 9, 2012
Time: 9:00 A.M.
Location: JAMS: Two Embarcadero Center, Suite 1500
Judge: Hon. Samuel Conti
Special Master: Hon. Charles A. Legge (Ret.)

**INTRODUCTION**

In an attempt to excuse his willful defiance of the Court's Order, Objector Sean Hull offers nothing but the same tired arguments that have already been rejected as meritless in the Court's Order granting Indirect Purchaser ("IP") Plaintiffs' motion to compel, and in Special Master Legge's report and recommendation denying Hull's motion for reconsideration of that order. In essence, Hull's response to the Court's Order to Show Cause is that he continues to disagree with the Court's ruling compelling discovery from him, and he believes he was therefore entitled to ignore it.[1] That is simply not adequate justification for thumbing his nose at a specific and definite order of the Court, causing IP Plaintiffs to suffer prejudice and incur costs as a result.

Under the applicable standard, Hull has the burden to demonstrate that he took every reasonable step to comply with the Court's Order, and articulate why compliance was not possible. Hull does not even attempt to do so. Rather, his response—devoid of any legitimate justification for his intentional non-compliance—only reinforces Special Master Legge's May 29 conclusion that, "Mr. Hull has been evasive, has attempted to avoid process from this Court, is deliberately stalling the Court procedures—all in an attempt to maintain his status as an objector for his own personal gain and not for the benefit of the class."[2]

Because it is now more clear than ever that Hull never intended to comply with the Court's Order, and has willfully undermined the integrity of these proceedings, the Court should find him in civil contempt and award sanctions to IP Plaintiffs in the amount of $6,166.95 to compensate them for the losses sustained as a result of his inexcusable conduct.

---

[1] While Hull's response, filed June 1, is titled "Opposition to Motion for an Order to Show Cause and Award of Sanctions" (ECF No. 1223), the Court had already entered the Order to Show Cause Regarding Finding of Civil Contempt and Award of Sanctions Against Objector Sean Hull on May 25 (ECF No. 1210), which Hull was served with the same day (ECF No. 1212). IP Plaintiffs will thus treat Hull's "opposition" as a response to the Court's Order to Show Cause.

[2] Report and Recommendation Regarding Motion for Reconsideration of the Court's Order Compelling Discovery from Objector Sean Hull (ECF No. 1214), May 29, 2012, at 2:14-17.

## ARGUMENT

### I. THE VALIDITY OF THE UNDERLYING SUBPOENA AND ORDER CANNOT BE RAISED AS A DEFENSE TO CIVIL CONTEMPT.

Seeking to re-litigate the Court's Order compelling discovery, each of the arguments raised in Hull's response attack either the validity of the underlying subpoena and enforcement Order of the Court, or the propriety of permitting discovery from him. (*See* Hull's Opp. at 2-6) ("The Deposition Subpoena is Invalid … The Subpoena Was Not Properly Served … Discovery from Absent Class Members is Rarely, if Ever, Granted…. Discovery is Closed in this Litigation…"). Not only are these arguments entirely without merit (as the Court has already determined and as set forth below), but as a matter of law, they cannot excuse Hull's deliberate disregard for the Court's Order.

"It is a 'long-standing rule that a contempt proceeding does not open to reconsideration the legal or factual basis of the order alleged to have been disobeyed and thus become a retrial of the original controversy.'" *United States v. Ayres*, 166 F.3d 991, 995 (9th Cir. 1999) (quoting *United States v. Rylander*, 460 U.S. 752, 756-57 (1983)); *see also United States v. Rose*, 437 F. Supp. 2d 1166, 1171 (S.D. Cal. 2006) ("respondent may not raise issues regarding the validity of the underlying order in defense to the motion for civil contempt"). Thus, as stated by the Ninth Circuit in *Ayres*, "challenges to the validity of [a] summons and the enforcement order could not excuse [contemnor's] failure to comply…. The *only issue* open to [contemnor] in defending [a] contempt proceeding was to show inability to then produce." 166 F.3d at 995 (emphasis added).

Since it has been established, and it is indeed undisputed, that Hull violated the Court's Order by not producing himself or the requested documents, the burden shifted to Hull to demonstrate that he "*took every reasonable step to comply*, and to articulate reasons why compliance was *not possible*." *Aguilar v. County of Fresno*, 1:08CV1202 AWI GSA, 2010 WL 1173014, at *3 (E.D. Cal. Mar. 23, 2010) (citing *Donovan v. Mazzola*, 716 F.2d 1226, 1240 (9th Cir.1983)) (emphasis added). Hull has not only failed to make any showing to this effect, but, to

the contrary, he actually filed papers with the Court stating in plain terms he did "not intend" to comply with the Court's Order.[3]

There is thus no possible defense for Hull's intentional violation of the Court's Order, and the Court can, and should, find him in contempt without consideration of his arguments.

## II. HULL'S ARGUMENTS CONCERNING THE VALIDITY OF THE UNDERLYING SUBPOENA AND ENFORCEMENT ORDER LACK MERIT.

### A. The Subpoena and Court Order Seek Relevant, Discoverable Information.

The primary argument Hull advances is that the ordered discovery he failed to provide is "irrelevant" under Rule 26 because he appealed from the final judgment stemming from the Court's approval of the settlement, and thus, "[t]he case is now over with respect to Hull." (Hull's Opp. at 1-2). Remarkably, Hull makes this argument while in the same breath conceding that "evidence of Objector's standing is relevant." (*Id.* at 5:7).

Nonetheless, the Court already considered and specifically rejected the misplaced notion that the judgment and notice of appeal somehow rendered the discovery moot. In his response to IP Plaintiffs' motion to compel, Hull argued that his "filing of a Notice of Appeal of the Final Approval Order and Final Judgment precludes the court from entering the ruling on the motion to compel."[4] The Court found that "Hull is incorrect," and laid out the numerous and specific reasons why in its Order granting IP Plaintiffs' motion (which need not be repeated here).[5]

Perhaps more to the point, the Court found in explicit terms that, even after Hull filed his notice of appeal, "the requested information and documents are relevant, needed and reasonably

---

[3] *See* Motion to Stay and For Reconsideration (ECF No. 1196); Report and Recommendation Regarding Motion for Reconsideration (ECF No. 1214) at 1:20 ("As part of this motion, Hull states that he does 'not intend' to comply with the Court's Order.").

[4] *Id.* at 4:16-18

[5] *See id.* at 4:18-5:19. Hull also now asserts the same misplaced reasoning to contend that "discovery is closed in this litigation." (Opp. at 6). But, as this Court well knows, this assertion is a complete fabrication, and discovery in this litigation is by no means "closed."

narrowly tailored," and the discovery was permitted under the Federal Rules of Civil Procedure.[6] This was particularly true given Hull's attempt to conceal from the Court his relationship with professional objector and attorney-in-hiding Christopher Bandas, despite representing himself to the Court as a *pro se* objector.[7] Nothing has changed these conclusions.

In the face of the Court's findings, Hull now also "summarily" objects that some of the information sought is "privileged" and/or "burdensome." (Opp. at 5). Yet he makes no effort to explain which of the specific requests allegedly seek privileged information or are burdensome, or exactly how any requested information is protected from production or unduly burdensome, and under what authority and facts. It is black letter law that as the proponent of these objections, Hull was required to assert and support the basis for them with specificity—and do so *long* before these contempt proceedings. *See, e.g.*, Fed. R. Civ. P. 45(c)(2)(B), (d)(2). He has done neither. His objections are waived, unsupported, and plainly have no merit.

### B. Hull Was Properly Served With the Subpoena and the Court's Order, as this Court Previously Concluded.

Despite the fact that the Court has now twice found that Hull was successfully served, he yet again contends that IP Plaintiffs "never personally served him with his deposition subpoena," and they "attempted to serve Hull by email only." (Hull's Opp. at 3:5-7). These arguments are patently false and amount to another deliberate misrepresentation to the Court.

Foremost, the Court previously determined in granting IP Plaintiffs' motion to compel that, his blatant efforts at evasion notwithstanding, Hull was "successfully served" with a subpoena—a copy having been delivered "in compliance with Fed. R. Civ. Proc. 45(b)(1)."[8] And as Special Master Legge further noted recently, Hull never presented the argument that he

---

[6] Amended Order Granting IP Plaintiffs' Motion to Compel Discovery from Objector Sean Hull (ECF No. 1155) April 16, 2012, at 3:1-23.

[7] *Id.* at 3:24-4:10

[8] *Id.* at 2:8-16 & n.1.

was not properly served "as a ground for opposing the order," and he cannot do so now.[9] While he again presents his affidavit in an attempt to refute that of the process server, Hull's affidavit does not even deny that he had "any contact at all with the process server," but seems to be "simply denying the things said and done as stated in the process server's affidavit."[10]

Moreover, as Special Master Legge also recognized in response to Hull's motion for reconsideration, Hull ignores the fact that he has been served several times over since voluntarily injecting himself into these proceedings:

> Mr. Hull was also *separately served* with the same documents by email, *and then by overnight courier, to the addresses which he had provided to the Court and counsel with his objections*. He was *again served* with a deposition subpoena in connection with indirect purchaser plaintiffs' motion to compel. And he does not dispute that *he received a copy of the Court's Order, which itself compelled discovery from Hull.*[11]

Thus, Hull's contention here that IP Plaintiffs "attempted to serve [him] by email only" is a specious misrepresentation to the Court. There can be no genuine dispute that Hull was sufficiently served.

**C. This MDL Court is Empowered Enforce the Subpoena and its Own Orders.**

Next, Hull claims that this Court does not have the authority to enforce the subpoena or its own Order. He is again incorrect. While the subpoena was issued by the District of Colorado, Hull ignores that this is an MDL proceeding, and because these cases have been

---

[9] Report and Recommendation Regarding Motion for Reconsideration (ECF No. 1214) at 2:1-4.

[10] *Id.* at 2:5-8. Notably, Hull does not dispute that he was at his home on February 26, 2012, and that the process server knocked loudly on his door and announced service, and left copies of the subpoena at his doorstep and on his vehicle. Thus, even assuming arguendo that Hull was able to evade, and as a result did not have "face to face communications" with the process server, his evasive conduct did not prevent him from being properly and sufficiently served. *See* Amended Order Granting IP Plaintiffs' Motion to Compel Discovery from Objector Sean Hull (ECF No. 1155) April 16, 2012, at n.1 (citing authorities).

[11] Report and Recommendation Regarding Motion for Reconsideration (ECF No. 1214) at 2:9-13 (emphasis added); *see also* Micheletti Decl. in support of motion to compel (ECF No. 1089-2) ¶¶ 5-6, Exs. 1-3; Certificate of Service on Hull (ECF No. 1098).

coordinated in the Northern District of California by the Judicial Panel on Multidistrict Litigation, the deposition subpoena is properly enforced in this Court.

Indeed, it is well settled that the enforcement of a subpoena by a transferee MDL court is proper. "Courts considering the question have *uniformly held that the MDL judge may enforce a deposition subpoena issued in another district, including a subpoena duces tecum*." *In re Napster, Inc. Copyright Litig.*, No. C MDL-00-1369 MHP, 2006 U.S. Dist. LEXIS 5748, at *10 (N.D. Cal. Feb. 15, 2006) (citing cases, emphasis added); *see also, e.g., In re Clients and Former Clients of Baron & Budd, P.C.*, 478 F.3d 670, 672 (5th Cir. 2007) (holding that an MDL presents "an exception to the rule that only the issuing court may quash, modify, or enforce a subpoena…. This conclusion is supported by the convincing analyses of myriad district courts.") (collecting authorities); *In re Welding Rod Prods. Liability Litig.*, 406 F. Supp. 2d 1064, 1067 (N.D. Cal. 2005) (finding resolution of discovery dispute by MDL-transferee court was proper, as the court was "readily familiar with the underlying issues" and spent "considerable time and effort coordinating the pretrial proceedings"); *In re Asbestos Prods. Liability Litig.*, 256 F.R.D. 151, 154 (E.D. Pa. 2009) (holding MDL-transferee court had jurisdiction to address motions to compel, compliance with subpoenas, and to quash subpoenas); 28 U.S.C. 1407(b) (granting transferee MDL court ability to "exercise the powers of a district judge in *any district for the purpose of conducting pretrial depositions* in such coordinated or consolidated pretrial proceedings.") (emphasis added).

Thus, it was perfectly within this Court's power to issue the Order granting IP Plaintiffs' motion to compel. And, of course, Hull never asserted this ground in his opposition the motion to compel, but now attempts to improperly assert it months later as a last-ditch defense against his purposeful contempt of that Order.

Finally, Hull further ignores that this Court also has the express authority to address his "disobedience or resistance" to its process and orders under 18 U.S.C. section 401, in addition to its "inherent" power to ensure obedience to, and respect for, its orders. *See, e.g., F.J. Hanshaw Enterprises, Inc. v. Emerald River Dev., Inc.*, 244 F.3d 1128, 1136 (9th Cir. 2001) ("All federal

courts are vested with inherent powers enabling them to … ensure obedience to their orders."); *Gifford v. Heckler*, 741 F.2d 263, 265 (9th Cir. 1984) ("A district court has the power to adjudge in civil contempt any person who [] disobeys a specific and definite order of the court.").

In sum, there is no question that this Court can properly enforce the subpoena and its own Order specifically commanding Hull to produce himself for a deposition with documents.

**D. Hull is Not a Mere "Absent Class Member" But Has Voluntarily Injected Himself into These Proceedings and Engaged in Deceitful and Evasive Conduct in Collusion with "Professional" and "Serial" Objectors for Personal Gain.**

While he goes to great lengths to argue that discovery is not ordinarily taken from "absent class members" (an argument that again has been long waived), Hull omits the fact that he voluntarily injected himself into this litigation, attempted to mislead the Court into believing that he was a *pro se* objector, failed to appear at the final approval hearing, intentionally evaded the process of the Court, and has deliberately stalled the Court's procedures—"all in attempt to maintain his status as an objector for his own personal gain and not for the benefit of the class."[12] It should go without saying that the Court and Class Counsel have the right, and indeed the obligation, to protect against devious conduct designed to undermine the interests of the Class.[13]

Indeed, confirming his collusion with professional and serial objectors in this matter, Darrell Palmer has now appeared in attempt to defend Hull from the Court's Order to Show Cause regarding his contempt. Like Bandas, Courts have labeled Palmer a "serial objector," who is in the "business of objecting to, and appealing, class action settlements in order to obtain some financial reward." *See Gemelas v. Dannon Co.*, No. 1:08 CV 236, 2010 WL 3703811, at *1, 3 (N.D. Ohio Aug. 31, 2010) (describing Palmer and his cohorts as "serial objectors" and ordering a $275,000 bond for a "frivolous" appeal by one such objector). And, in fact, Palmer appears to concede that Bandas—not Hull—actually submitted the objection to the Court and Class

---

[12] Report and Recommendation Regarding Motion for Reconsideration of the Court's Order Compelling Discovery from Objector Sean Hull (ECF No. 1214), May 29, 2012, at 2:14-17.

[13] *See* Amended Order Granting IP Plaintiffs' Motion to Compel (ECF No. 1155) at 4 n.3, n.4.

counsel, as has been suspected all along, but which Hull and Bandas refused to disclose.[14] Because Hull refused to obey the orders of this Court, it remains a mystery whether Hull himself even actually had any objection to the settlement terms. This underhanded and contemptuous conduct towards these proceedings should not be tolerated.

**E. Sanctions Against Hull are Necessary and Appropriate to Compensate IP Plaintiffs' for Hull's Inexcusable Conduct.**

Finally, without citing any authority, Hull erroneously contends that civil contempt sanctions "are only for the purposes of inducing future compliance of a court order" and are therefore inappropriate here. (Opp. at 6:15-18). But it has been long established that civil contempt sanctions may be issued to "compensate[] the complainant for losses sustained." *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 829 (1994); *see also United States v. Bright*, 596 F.3d 683, 695–96 (9th Cir. 2010) ("Civil contempt is characterized by the court's desire to compel obedience to a court order *or to compensate the contemnor's adversary for the injuries which result from the noncompliance*.") (emphasis added).

Hull does not contest that his intentional violation of the Court's Order and evasiveness has caused IP Plaintiffs to incur well over $10,000 in attorneys' fees and $1,166.95 in costs. Yet IP Plaintiffs only seek redress in the amount of $5,000 in attorney's fees and $1,166.95 in costs. Thus, an award of sanctions in the amount of $6,166.95 is entirely appropriate and reasonable to compensate IP Plaintiffs for losses Hull's conduct has caused.

**CONCLUSION**

For the foregoing reasons, IP Plaintiffs respectfully request that the Court find Objector Sean Hull in civil contempt, and award sanctions to IP Plaintiffs in the amount of $6,166.95.

---

[14] *See* Opp. at 5:19-23 (acknowledging that not Hull but someone acting as his "attorney of record" submitted his objection (attached as Exhibit 3 to the Opp.), despite the fact that no "attorney" has previously appeared on Hull's behalf); Amended Order Granting IP Plaintiffs' Motion to Compel at 3:24-4:7 ("Hull's papers do not list counsel" and his objection "was postmarked in Corpus Christi, Texas," where Bandas is located, "even though Hull lives and works in Denver Colorado.")

Dated: June 15, 2012

Respectfully submitted,

By: /s/ Mario N. Alioto

MARIO N. ALIOTO (56433)
LAUREN C. RUSSELL (241151)
**TRUMP, ALIOTO, TRUMP & PRESCOTT LLP**
2280 Union Street
San Francisco, CA 94123
Telephone: (415) 563-7200
Facsimile: (415) 346-0679
malioto@tatp.com
laurenrussell@tatp.com

*Interim Lead Counsel for Indirect-Purchaser Plaintiffs*