Mario N. Alioto, Esq. (56433)
Lauren C. Russell, Esq. (241151)
TRUMP, ALIOTO, TRUMP & PRESCOTT, LLP
2280 Union Street
San Francisco, CA 94123
Telephone:  (415) 563-7200
Facsimile:   (415) 346-0679
*malioto@tatp.com*
*laurenrussell@tatp.com*

*Interim Lead Counsel for the Indirect Purchaser Plaintiffs*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. CV-07-5944 SC<br><br>MDL No. 1917 |
| This Document Relates to:<br><br>ALL INDIRECT PURCHASER ACTIONS | **INDIRECT PURCHASER PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION FOR LEAVE TO AMEND THE COMPLAINT**<br><br>Hearing Date:  July 24, 2012<br>Time: 9:00 a.m.<br>JAMS: 2 Embarcadero Center, Ste. 1500<br>Judge: Honorable Samuel Conti<br>Special Master: Hon. Charles A. Legge (Ret.) |

# TABLE OF CONTENTS

I. INTRODUCTION .................................................................................................................. 1

II. ARGUMENT ......................................................................................................................... 2

    A. Plaintiffs Withdraw Their Request To Add Puerto Rico Claims And A Puerto Rico Class Representative ................................................................................................................ 2

    B. Plaintiffs' Request To Substitute And/Or Add A Limited Number Of Class Representatives Is Timely And Would Not Unduly Prejudice Defendants ..................... 2

        1. Undue Delay ............................................................................................................ 2

        2. Undue Prejudice ...................................................................................................... 4

    C. Withdrawing Plaintiffs Should Not Be Deposed ............................................................. 6

    D. The Court's Involvement In Any Deposition Schedule Is Unnecessary ......................... 9

III. CONCLUSION ................................................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**

*Eminence Capital, LLC v. Aspeon, Inc.*,
  316 F.3d 1048 (9th Cir. 2003) .................................................................................................. 3

*Fraley v. Facebook Inc.*, No. C 11-1726,
  2012 WL 555071 (N.D. Cal. Feb. 21, 2012) ............................................................................ 8

*Funke v. Life Fin. Corp.*, No. 99 Civ. 11877,
  2003 WL 21182763 (S.D.N.Y. May 20, 2003) ........................................................................ 8

*In re Activision Sec. Litig.*,
  621 F. Supp. 415 (N.D. Cal. 1985) ........................................................................................... 3

*In re Carbon Dioxide Indus. Antitrust Litig.*,
  155 F.R.D. 209 (M.D. Fla. 1993) .............................................................................................. 7

*In Re Flash Memory Antitrust Litig.*, No. C 07-0086,
  2010 WL 2332081 (N.D. Cal. June 9, 2010) ............................................................................ 5

*In re Lucent Techs., Inc. Sec. Litig.*, No. 2:00-cv-621,
  2002 WL 32815233 (D.N.J. 2002) ........................................................................................... 7

*In Re USA Classic Sec. Litig.*, No. 93 Civ. 6667,
  1995 WL 686724 (S.D.N.Y. 1995)............................................................................................ 7

*Velazquez v. GMAC Mortg. Corp.*, No. CV 08-05444,
  2009 WL 2959838 (N.D. Cal. Sept. 10, 2009) ......................................................................... 4

## I. INTRODUCTION

Indirect Purchaser Plaintiffs' ("Plaintiffs") motion to amend their complaint to replace eight named plaintiffs with six new named plaintiffs and to add one additional new named plaintiff to this case is straightforward and, under the liberal standard for amendments in the Ninth Circuit, should be granted.[1] Defendants' two arguments against Plaintiffs' motion – timeliness and prejudice – do not withstand scrutiny.

First, under the current schedule for class certification, Defendants will have over two months to depose the new plaintiffs *before* they have to file their opposition to Plaintiffs' motion for class certification. The case law holds that class representatives may be substituted or added even *after* class proceedings. By bringing their motion now, Plaintiffs are giving Defendants ample opportunity to conclude their class discovery in an efficient manner instead of wasting time and effort taking the depositions of people who will not be put forward as representatives.

Second, Defendants will suffer no undue prejudice if Plaintiffs are allowed to substitute and/or add the limited number of plaintiffs at issue in this motion. The documentary evidence involved is extremely minimal and the depositions to be taken are formulaic. And to the extent there is any prejudice, Defendants could have avoided it by agreeing to take many of these depositions *in May* as Plaintiffs offered.

If the Court grants Plaintiffs' request to substitute and/or add the seven plaintiffs, the only other issue is whether the withdrawing plaintiffs should be deposed. Because Defendants have not offered even one reason why their testimony is needed to oppose class certification, the Defendants should not be permitted to go on a nationwide fishing expedition in an otherwise already hugely expensive MDL. Defendants have deposed fourteen plaintiffs – asking similar questions of all of the deponents – and will get to depose each of the new plaintiffs and a few existing plaintiffs they have not deposed yet. Given this, Defendants should not be allowed to depose soon-to-be absent class members.

---

[1] Plaintiffs withdraw their request to add claims on behalf of a Puerto Rico class and their request to add the class representative from Puerto Rico.

## II. ARGUMENT

### A. Plaintiffs Withdraw Their Request To Add Puerto Rico Claims And A Puerto Rico Class Representative

Before Defendants filed their opposition, the parties met and conferred further in an effort to come to an agreement without the Court's involvement. During those discussions, Plaintiffs agreed to withdraw their request to add claims on behalf of a Puerto Rico class and to withdraw their request to add the class representative from Puerto Rico. *See* Supplemental Declaration of Robert J. Gralewski In Support of the Indirect Purchaser Plaintiffs' Reply Brief in Support of Motion for Leave to Amend the Complaint, dated July 12, 2012 ("Suppl. Gralewski Decl.") at ¶ 2, filed herewith. However, Defendants also demanded that Plaintiffs agree to produce the withdrawing plaintiffs for deposition. *Id.* Plaintiffs refused, with good reason (*see* § II.C., *infra*). Defendants thereafter elected to oppose the entire motion. Nonetheless, consistent with Plaintiffs' position before Defendants' opposition was filed, Plaintiffs are not proceeding with their motion with respect to Puerto Rico.

### B. Plaintiffs' Request To Substitute And/Or Add A Limited Number Of Class Representatives Is Timely And Would Not Unduly Prejudice Defendants

Defendants' two-page opposition to Plaintiffs' motion to substitute and/or add representatives in seven states hinges on two arguments: delay and undue prejudice. Defendants' arguments have no basis in law or fact. Plaintiffs' motion to amend the complaint to substitute and/or add representatives should therefore be granted.

#### 1. Undue Delay

Defendants suggest that Plaintiffs have not inquired into the "adequacy" of the class representatives to be substituted until the "eve of class certification." This argument fails for two independent reasons.

First, the class representatives who are withdrawing are not "inadequate," and Plaintiffs have never stated that they are. The primary reason that Plaintiffs wish to substitute certain class representatives is to put forward as many representatives as possible who possess evidence of the

1  price paid for their CRT purchases. Although Plaintiffs do not believe such evidence is necessary,[2] Defendants have demonstrated that they will press this issue. *See* Suppl. Gralewski Decl., at ¶ 3. By bringing this motion now, Plaintiffs are attempting to moot this issue and simplify class certification.

Second, while it sounds dramatic, Defendants' "eve of class certification" argument is not accurate. Under the current class certification schedule, Defendants' opposition brief is not due until October 13, 2012. During a roughly two-month period in the spring of this year, the parties successfully scheduled and took the depositions of fourteen named plaintiffs. Thus, there is more than enough time to conduct seven half-day depositions between now and October. And when the Court considers that the class certification schedule may be extended and Defendants' opposition brief may not be due until the end of January 2013, the "eve of class certification" argument all but evaporates.[3]

Finally, Defendants ignore the fact that the Ninth Circuit grants leave to amend with "extreme liberality," and courts in this district have allowed amendments in class cases even after class certification briefing has closed. *See, e.g., In re Activision Sec. Litig.*, 621 F. Supp. 415, 422-23 (N.D. Cal. 1985).[4] Moreover, in this Circuit, undue delay is not the court's primary consideration. The Ninth Circuit's focus is undue prejudice to the party opposing the motion to amend. *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). Here, there will be no undue prejudice to Defendants if the Court grants this motion.

---

[2] As Plaintiffs' motion for class certification will articulate in detail, if necessary, issues surrounding Defendants' conduct will predominate in this case. And in terms of damages, Plaintiffs' experts will arrive at an average overcharge for the products at issue in the case. These amounts will be derived from evidence common to the class, and, ultimately, individual plaintiffs will not need to establish the prices paid for their products to be entitled to make a claim.

[3] Although Defendants are contesting Plaintiffs' requested 120-day extension of the current class certification briefing schedule, Defendants have agreed to a 45-day extension.

[4] In *In re TFT-LCD (Flat Panel) Antitrust Litig.,* Judge Illston permitted several amendments to the pleadings to substitute or add class plaintiffs. Here, contrary to Defendants' claims, Plaintiffs have not made serial attempts to substitute or add parties. Plaintiffs' two previous amendments were in response to rulings on Defendants' motions to dismiss and related to the specific state law claims being asserted.

3

### 2. Undue Prejudice

Defendants' claim that they will be unduly prejudiced by this amendment lacks any basis in fact. It must therefore be rejected.

Defendants claim that they "have already deposed or begun preparing to depose the existing named plaintiffs and would now have to rush to review documentary discovery and, thereafter, schedule depositions for the newly named plaintiffs." *See* Defendants' Opposition to Indirect Purchaser Plaintiffs' Motion for Leave to Amend the Complaint ("Opp.") at 12 [Dkt No. 1246]. In reality, only one of the named plaintiffs that is the subject of this motion (Plaintiff Nasto) has already been deposed. And the other named plaintiffs that Plaintiffs seek to replace have produced only 107 pages of documents made up largely of receipts, instruction manuals, and photographs of the products they purchased. Thus, the time spent to review these documents would have been minimal.[5]

These facts demonstrate why the *Valazquez* case, cited by Defendants, is inapposite. Unlike in this case, the *Valazquez* court found that substituting plaintiffs would be prejudicial to the defendants there because discovery with respect to the plaintiff to be replaced had been "extensive" and "substantial," there had been a motion to dismiss dealing with issues particular to the plaintiff, and plaintiffs' counsel sought to add new defendants. *Velazquez v. GMAC Mortg. Corp.*, No. CV 08-05444, 2009 WL 2959838, *3-4 (N.D. Cal. Sept. 10, 2009). Not allowing the amendment, the *Velazquez* court reasoned that while the proposed new plaintiffs could bring their own suit, it would not permit substitution because the proposed amended complaint appeared to be a "vehicle to bring an entirely new action against new defendants on behalf of new plaintiffs for business practices that were never mentioned, let alone at issue, in the Original Complaint or the First Amended Complaint." *Id.* at 4. This is certainly not the case here.

---

[5] The proposed new plaintiffs' document production will not exceed the withdrawing plaintiffs' production in any significant way.

4

INDIRECT PURCHASER PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION FOR LEAVE TO AMEND THE COMPLAINT, CASE NO. CV-07-5944 SC

Moreover, named plaintiffs from fourteen of the twenty-two jurisdictions involved in the case have already been deposed. Most of these depositions have taken two to four hours and involved only a few pages of exhibits unique to each deponent (a couple of interrogatory responses, a receipt, and photographs of the products purchased). Working from the same outline, Defendants have asked virtually identical questions at each deposition. Plaintiffs point this out not to criticize Defendants' strategy but only to demonstrate the fallacy of their claim that preparation time would be wasted if un-noticed depositions are not taken, or that they would have to "rush to review documentary discovery" and not have time to adequately prepare to take the proposed new plaintiffs' depositions. Thus, *In Re Flash Memory Antitrust Litig.*, No. C 07-0086, 2010 WL 2332081, at *16 (N.D. Cal. June 9, 2010), is distinguishable.[6]

Of course, should the proposed new plaintiffs become part of this case, even one law firm would have the resources to handle the tasks of reviewing their discovery responses and documents and taking their depositions. Here, multiple international law firms represent Defendants. In any other context, these firms would never suggest that they could not review a hundred pages of documents and take seven half-day depositions in two or three months.

And to the extent there is any "prejudice" here, it is the result of Defendants' own decisions or inaction. On April 10, 2012, Plaintiffs offered to make the proposed new named plaintiffs for North Carolina, the District of Columbia, and Florida available for deposition on May 1, May 2, and May 18, respectively. *See* Suppl. Gralewski Decl., at ¶ 6. Plaintiffs wrote: "So as to not prejudice Defendants' discovery efforts, we are making these new plaintiffs available as part of the current discovery process. Indeed, we will voluntarily be responding to

---

[6] The *Flash* court did not allow substitution because plaintiffs filed their motion to amend contemporaneously with their motion for class certification. *In re Flash Memory Antitrust Litig.*, No. C 07-0086 SBA, 2010 WL 2332081, *17 (N.D. Cal. June 9, 2010). Not only did the court believe the motion was untimely as a result of this but it also found that there would be undue prejudice because defendants would have to conduct new and/or additional discovery. However, perhaps futility more than timeliness or prejudice was the real reason the *Flash* court did not allow substitution. Having already denied class certification, the court reasoned that new plaintiffs would not cure the substantive deficiencies in plaintiffs' motion for class certification. That is not the case here.

5
INDIRECT PURCHASER PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION FOR LEAVE TO AMEND THE COMPLAINT, CASE NO. CV-07-5944 SC

all outstanding discovery on behalf of these new plaintiffs by this coming Monday." *See* Declaration of Robert J. Gralewski In Support Of Indirect Purchaser Plaintiffs' Motion For Leave To Amend The Complaint, dated June 7, 2012 ("Gralewski Decl.") at ¶ 2 [Dkt. No. 1226-1]. Defendants declined these offers, instead deciding that "these four depositions should be deferred until your motion to amend is decided." *Id.* at ¶ 3.

In addition, since Plaintiffs provided their proposed schedule for the second round of named plaintiff depositions on April 10, 2012, Defendants have not asked to schedule any other plaintiff depositions, even of existing plaintiffs not subject to Plaintiffs' request to substitute. *See* Suppl. Gralewski Decl., at ¶ 5. This inaction by the Defendants belies their claims that they are concerned about completing the depositions of the named plaintiffs before their opposition brief is due.

Finally, Defendants' argument that they will not have time to adequately prepare to take the new named plaintiffs' depositions is further undermined by their demand that they be permitted to depose the withdrawing named plaintiffs. If Defendants were truly concerned about time, they would not want to waste it by deposing plaintiffs who, if Plaintiffs' motion is granted, will have nothing to do with this case.

### C. Withdrawing Plaintiffs Should Not Be Deposed

As an initial matter, Defendants' request that the withdrawing plaintiffs be ordered to appear for their depositions hinges on an incorrect factual premise. Defendants assert that they "asked that these plaintiffs be included in the current deposition schedule." Opp. at 13. This is not true. Prior to opposing this motion, Defendants have never asked to take the withdrawing plaintiffs' depositions. On January 30, 2012, Plaintiffs contacted Defendants and voluntarily made ten plaintiffs available for deposition "pursuant to Judge Legge's direction during the most recent Case Management Conference." *See* Suppl. Gralewski Decl., at ¶ 4. On March 23, 2012, Defendants wrote to Plaintiffs stating, "[a]s we are half way through the depositions of the initial set of Indirect Purchaser Plaintiffs, we would like to proceed with the next phase of these depositions. Please let us know the next ten plaintiffs that are available, including location and

date." *Id.*, at ¶5.  Plaintiffs responded by offering ten plaintiffs for deposition on April 10, 2012. Other than the March 23rd letter, Defendants have made no other requests to take any deposition, and have never asked to depose any specific named plaintiff.

Defendants' assertion that Plaintiffs violated the deposition protocol by unilaterally taking Daniel Hergert's deposition off calendar is also not accurate. *See* Opp., 13, fn. 12. Plaintiffs initially offered Mr. Hergert for deposition in the second round of depositions on April 10, 2012.  The parties met and conferred about taking his deposition off calendar and, ultimately, Defendants agreed to cancel it.  In in an email dated May 31, 2012, counsel for Toshiba stated: "Thanks for talking with me earlier about Mr. Hergert's deposition.  As you explained on the call, the IPPs will be filing a motion to amend their complaint in the coming days which will seek to substitute both of the current Nebraska representatives… **And, with that, we can agree to cancel Mr. Hergert's deposition."**  *See* Suppl. Gralewski Decl., at ¶ 7 (emphasis added).

In addition, courts have consistently held that defendants are not entitled to discovery from plaintiffs who will not be put forward as class representatives.  *See, e.g., In re Carbon Dioxide Indus. Antitrust Litig.*, 155 F.R.D. 209, 211-12 (M.D. Fla. 1993).[7]  In *Carbon Dioxide*, the defendants sought discovery from named plaintiffs who were not chosen to be class representatives. In denying the defendants' request, the court reasoned that the efficiencies of a class action would be thwarted if such discovery were permitted: "There is no indication that the information sought from the non-representative class members differs in any way from the information already provided by the class representatives.  Defendants have not argued that they have a particularized need to obtain information not available from the class representatives." *Id.*

Similarly here, Defendants have not shown that the information sought from the withdrawing plaintiffs differs in any way from the information already provided by the other

---

[7] *See also In re Lucent Techs., Inc. Sec. Litig.*, No. 2:00-cv-621, 2002 WL 32815233, at *2 (D.N.J. 2002) (affirming magistrate judge's ruling that defendants were not entitled to discovery from named plaintiffs not put forward as class representatives); *In Re USA Classic Sec. Litig.*, 1995 WL 686724, at *1 (S.D.N.Y. 1995) ("Plaintiffs' application for a protective order … is granted.  These named plaintiffs have withdrawn as class representatives and the Court finds that there is no particularized need for there [sic] testimony").

7

INDIRECT PURCHASER PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION FOR LEAVE TO AMEND THE COMPLAINT, CASE NO. CV-07-5944 SC

class representatives. Nor have they shown a particularized need to depose the withdrawing plaintiffs. The withdrawing plaintiffs have already produced their documents and responded to written discovery, so Defendants have information about their purchases. The primary reason why these plaintiffs no longer seek to participate in this case as class representatives (documentation regarding purchases) is of marginal relevance to class certification.[8]

Defendants' reliance on two unreported decisions is misplaced. *Fraley v. Facebook Inc.*, No. C 11-1726, 2012 WL 555071, at *2 (N.D. Cal. Feb. 21, 2012), is distinguishable in two important ways. First, Facebook notified the plaintiffs of its intent to depose plaintiff Fraley in September 2011, but plaintiffs did not inform Facebook of their intention to withdraw Fraley until January 2012, and filed a motion for protective order a month after that. Here, Defendants have not sought to take any particular plaintiff's deposition and instead have allowed Plaintiffs to select which class representatives to put forward for deposition in two rounds of depositions (the only two sought to date).

Second, Facebook specifically demonstrated how plaintiff Fraley's testimony would bear on whether common issues predominated for class certification. *See id.* at *2 ("Fraley's earlier statements that her reason for clicking on certain Facebook features, such as a 'Like' function, was not the obvious reason of actually 'liking' that product, bears on whether common issues predominate in Fraley and other potential class members' claims."). In this case, although Defendants have had an ample opportunity to do so, they have not articulated a single reason why they need any of the withdrawing plaintiffs' testimony for class certification. This dooms Defendants' request that the Court order the withdrawing plaintiffs to appear for their depositions.

The only other case cited by Defendants, *Funke v. Life Fin. Corp.*, No. 99 Civ. 11877, 2003 WL 21182763, at *2 (S.D.N.Y. May 20, 2003), is also inapposite. There, the court had previously ordered that the plaintiff's deposition be taken. Subsequent to that order, plaintiffs'

---

[8] Curiously, Defendants have previously agreed to allow a plaintiff – Bedrock Management – to withdraw without sitting for a deposition. It bears noting that Defendants' current position is inconsistent with their prior decision on an identical issue.

8
INDIRECT PURCHASER PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION FOR LEAVE TO AMEND THE COMPLAINT, CASE NO. CV-07-5944 SC

counsel indicated that they could not reach the plaintiff and that therefore they would withdraw the plaintiff. The court further ordered that plaintiff sit for his deposition nonetheless because the court did "not intend to allow [plaintiff] to evade its order to appear for his deposition merely by refusing to answer the phone or open his mail." *Id.* at *2. Here, the Court has not previously ordered that any of the withdrawing plaintiffs appear for their deposition.

In short, Defendants seek to embark upon an extensive search for largely irrelevant discovery. In addition to preparing for the depositions, taking the depositions of the withdrawing plaintiffs will involve multiple attorneys travelling to seven depositions all over the country. The time, money, and effort expended will far outweigh the value of the testimony from these plaintiffs. The situation is analogous to the Defendants' motion to compel the named direct purchaser plaintiffs to produce downstream discovery. There, the Court denied Defendants' motion because Defendants had not provided "a sufficient basis to embark upon such an extensive and largely irrelevant search for information." *See* July 13, 2011 Report and Recommendations on Discovery Regarding Downstream Information.[9]  The same is true here.

For all of these reasons, Defendants' request that the Court order the depositions of withdrawing plaintiffs must be denied.

**D.     The Court's Involvement In Any Deposition Schedule Is Unnecessary**

It is not necessary for the Court to get involved in scheduling the depositions of the proposed new plaintiffs. The parties have been working cooperatively on all facets of discovery related to the class plaintiffs and Defendants point to no reason to suggest this will change. In fact, as Defendants acknowledge, Plaintiffs have already committed to voluntarily "produce all documents and respond to interrogatories [on behalf of the new plaintiffs] immediately and will make all of the new plaintiffs available for deposition right away with the goal to have all depositions completed in August." *See* Gralewski Decl., at ¶ 8. In addition, should the class

---

[9]     A copy of this Court's July 13, 2011 Report and Recommendations is attached as Exhibit A to the Suppl. Gralewski Decl.

9

INDIRECT PURCHASER PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION FOR LEAVE TO AMEND THE COMPLAINT, CASE NO. CV-07-5944 SC

certification schedule be extended prior to the Court's ruling on this motion, producing all documents and responding to all interrogatories "within two days" will be unnecessary.

Nonetheless, Plaintiffs will voluntarily produce all documents and respond to interrogatories in very short order and will make all of the new plaintiffs available for deposition this summer.

### III.   CONCLUSION

For all of the foregoing reasons, Plaintiffs' motion for leave to amend their complaint should be granted.

Dated: July 12, 2012 By: */s/ Mario N. Alioto*

> Mario N. Alioto (56433)
> Lauren C. Russell (241151)
> TRUMP, ALIOTO, TRUMP & PRESCOTT, LLP
> 2280 Union Street
> San Francisco, CA 94123
> Telephone:  (415) 563-7200
> Facsimile:  (415) 346-0679
> malioto@tatp.com
> laurenrussell@tatp.com
>
> *Interim Lead Counsel for the*
> *Indirect Purchaser Plaintiffs*

I, Joseph M. Patane, am the ECF User whose ID and password are being used to file this INDIRECT PURCHASER PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION FOR LEAVE TO AMEND THE COMPLAINT.  In compliance with Local Rule 5.1(i)(3), I hereby attest that Mario N. Alioto has concurred in this filing.