PATRICIA A. CONNERS (Trish.Conners@myfloridalegal.com)
R. SCOTT PALMER (Scott.Palmer@myfloridalegal.com)
LIZABETH A. BRADY (Liz.Brady@myfloridalegal.com)
NICHOLAS J. WEILHAMMER (Nicholas.Weilhammer@myfloridalegal.com)
SATU A. CORREA (Satu.Correa@myfloridalegal.com)
Office of the Attorney General
State of Florida
PL-01, The Capitol
Tallahassee, FL 32399-1050
Tel:      (850) 414-3300
Fax:      (850) 488-9134

Attorneys for Plaintiff State of Florida

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | MASTER FILE NO. 07-cv-5944 SC<br>MDL NO. 1917 |
| This Document Relates To:<br><br>Case No.  2011-CV-6205 SC<br><br>STATE OF FLORIDA,<br>OFFICE OF THE ATTORNEY GENERAL,<br>DEPARTMENT OF LEGAL AFFAIRS,<br><br>              Plaintiff,<br>    v.<br><br>LG ELECTRONICS, INC., et al.,<br><br>              Defendants. | **PLAINTIFF STATE OF FLORIDA'S RESPONSE TO MOTION TO DISMISS THE STATE OF FLORIDA'S COMPLAINT**<br><br>Date:  September 5, 2012<br>Time:  10 a.m.<br>Location:  JAMS, Two Embarcadero Center, Suite 1500<br>Judge: Hon. Samuel Conti<br>Special Master:  Hon. Charles A. Legge (Ret.) |

1

**TABLE OF CONTENTS**

2

Page

3

I.    INTRODUCTION ................................................................................- 1 -

4

5

II.   ISSUE TO BE DECIDED ....................................................................- 1 -

6

III.  FACTUAL BACKGROUND ...............................................................- 1 -

7

8

IV.   ARGUMENT ......................................................................................- 2 -

9

10    A.   Legal Standard .........................................................................- 2 -

11

      B.   The Expiration of the Statutes of Limitations for Florida's State Law Claims is Not

12         Apparent From the Face of the Complaint .................................- 3 -

13

14    C.   The Statutes of Limitations Do Not Bar Florida's State Law Claims............................- 5 -

15

16         a.  Florida Recognizes Equitable Estoppel, Which Includes Fraudulent
           Concealment................................................................- 7 -

17

18         b.  Florida Recognizes Equitable Tolling Under *American Pipe* .................................- 16 -

19

20    V.   CONCLUSION ...................................................................................- 24 -

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**CASES**

Am. Honda Motor Co., Inc. v. Motorcycle Information Network, Inc., 390 F. Supp. 2d 1170 (M.D. Fla. 2005) ............................................................- 23 -

Am. Pipe & Constr. Co. v. Utah, 414 U.S. 538 (1974).....................................- 6 -

Amis v. Gulf Abstract & Title, Inc., 564 F. Supp. 1121 (M.D. Fla. 1983)..................................- 4 -

Armstrong v. Martin Marietta Corp., 138 F.3d 1374 (11th Cir. 1998).....................................- 22 -

Baptist Hospital of Miami, Inc. v. Carter, 658 So. 2d 560 (Fla. 3d DCA 1995) ....................- 12 -

Barnebey v. E.F. Hutton & Co., 715 F. Supp. 1512 (M.D. Fla. 1989).......................................- 22 -

Barnett v. County of Contra Costa, 2005 WL 5095264 (N.D. Cal. Oct. 31, 2005) ..................- 24 -

Berisford v. Jack Eckerd Corp., 667 So. 2d 809 (Fla. 4th DCA 1995)..................................- 11 -

Bryant v. Adventist Health Systems Sunbelt, Inc., 869 So. 2d 681 (Fla. 5th DCA 2004) .....- 12 -

Butler University v. Bahssin, 892 So. 2d 1087 n. 3 (Fla. 2d DCA 2004).................................- 9 -

Cahill v. Liberty Mutual Ins. Co., 80 F.3d 336 (9th Cir. 1996)...................................- 3 -

Chardon v. Fumero Soto, 462 U.S. 650 (1983) ..........................................................- 21 -

City of St. Petersburg v. Dayco Products, Inc., 2008 WL 5428172 (S.D. Fla. Dec. 30, 2008) - 17 -

City of St. Petersburg v. Total Containment, Inc., 2008 WL 5428179 (S.D. Fla. Oct. 10, 2008)..........................................................- 16 -

Crown, Cork & Seal Co. v. Parker, 462 U.S. 345 (1983) ................................................- 21 -

Cullen v. Margiotta, 811 F.2d 698 (2d. Cir. 1987) ........................................................- 22 -

Culver v. City of Milwaukee, 277 F.3d 908 (7th Cir.  2002) ...........................................- 21 -

Davis v. Monahan, 832 So. 2d 708 (Fla. 2002) .............................................................- 5 -

Del Sontro v. Cendant Corp., 223 F. Supp. 2d 563 (D.N.J. 2002)..............................- 18 -, - 21 -

RESPONSE TO DEFENDANTS' MOTION TO DISMISS COMPLAINT – STATE OF FLORIDA
Master File No. 07-cv-5944 SC;
Case No. 2011-cv-6205 SC

- ii -

E.W. French & Sons, Inc. v. General Portland, Inc., 885 F.2d 1392 (9th Cir. 1989) ................- 15 -

Elmore v. Henderson, 227 F.3d 1009 (7th Cir. 2000) ...........................................- 21 -

Employers-Teamsters Local Nos. 175 & 505 Pension Trust Fund v.
Anchor Capital Advisors, 498 F.3d 920 (9th Cir. 2007) ...........................................- 6 -

Engle v. Liggett Group, Inc., 945 So. 2d 1246 (Fla. 2006)........................................- 17 -

Enron Corporation Securities, Derivative, & "ERISA" Litigation,,
465 F. Supp. 2d 687 (S.D. Tex. 2006)...........................................................- 24 -

First Fed. Sav. & Loan Ass'n of Wis. v. Dade Fed. Sav. & Loan Ass'n,
403 So. 2d 1097 (Fla. 5th DCA 1981) ..........................................................- 7 -

Florida Department of Health & Rehabilitative Services v. S.A.P.,
835 So. 2d 1091 (Fla. 2002).................................................- 9 -, - 10 -, - 12 -, - 13 -

Glidden v. Chromalloy American Corp., 808 F.2d 621 (7th Cir. 1986)....................- 21 -

Grossman v. Greenberg, 619 So. 2d 406 (Fla. 3d DCA 1993)................................- 12 -

Hankey v. Yarian, 755 So. 2d 93 (2000) .....................................................- 5 -

Hearndon v. Graham, 767 So. 2d 1179 (Fla. 2000)....................................- 5 -, - 6 -

Hromyak v. Tyco Int'l Ltd., 942 So. 2d 1022 (Fla. 4th DCA 2006)........................- 16 -

In re Beef Industry Antitrust Litigation, 600 F.2d 1148 (5th Cir. 1979) ..................- 15 -

In re Cathode Ray Tube (CRT) Antitrust Litigation, 738 F. Supp. 2d 1011 (N.D. Cal. 2010) ...- 3 -

In re Juniper Networks, Inc. Secs. Litig., 542 F. Supp. 2d 1037 (N.D. Cal. 2008) ....................- 2 -

In re Linerboard Antitrust Litigation, 223 F.R.D. 335 (E.D. Pa. 2004) ....................- 22 -

In re Rezulin Products Liability Litigation, 2006 WL 695253 (S.D.N.Y. Mar. 5, 2006)..........- 18 -

In re Rhone-Poulenc Rorer Inc., 51 F.3d 1293 (7th Cir. 1995)................................- 21 -

In re Rubber Chemicals Antitrust Litigation, 504 F. Supp. 2d 777 (N.D. Cal. 2007)........ - 3 -, - 4 -

In re TFT-LCD (Flat Panel) Antitrust Litigation,
2011 WL 4387812 (N.D. Cal. Sept. 20, 2011)................................................- 12 -, - 13 -

In re TFT-LCD (Flat Panel) Antitrust Litigation,
    2012 WL 149632 (N.D. Cal. Jan. 18, 2012) ....................................................... - 17 -

In re Vitamins Antitrust Litig., 2000 WL 1475705 (D.D.C. May 9, 2000)................................ - 3 -

In re: Independent Service Org. Antitrust Litig.,
1997 WL 161940 (D. Kan. Mar. 12, 1997) ........................................................................ - 22 -

Jablon v. Dean Witter & Co., 614 F.2d 677 (9th Cir. 1980)........................................................ - 2 -

Jovine v. Abbott Labs., Inc., 795 F. Supp. 2d 1331 (S.D. Fla. 2011).................................. - 23 -

Kornberg v. Carnival Cruise Lines, Inc., 741 F.2d 1332 (11th Cir. 1984) .............................. 16 -

Lance v. Wade, 457 So. 2d 1008 (Fla. 1984) ....................................................................... - 17 -

Latman v. Costa Cruise Lines, N.V., 758 So. 2d 699 (Fla. 3d DCA 2000)............................. 16 -

Maine State Retirement System v. Countrywide Financial Corp.,
    2011 WL 4389689 (C.D. Cal. May 5, 2011).............................- 7 -, - 22 -, - 23 -, - 24 -

Major League Baseball v. Morsani, 790 So. 2d 1071 (Fla. 2001) .................- 6 -, - 8 -, - 9 -, - 14 -

Matthews v. American Honda Motor Co., Inc.,
2012 WL 2520675 (S.D. Fla. June 6, 2012) .................................................................. - 23 -

Nardone v. Reynolds, 333 So. 2d 25 (Fla. 1976) ................................................................. - 12 -

Nichols v. Wm. Wrigley Jr. Co., 2011 WL 181458 (S.D. Fla. Jan.19, 2011) .......................... - 23 -

Prohias v. Pfizer, Inc., 490 F. Supp. 2d 1228 (S.D. Fla. 2007) ................................................ - 23 -

Raie v. Cheminova, Inc., 336 F.3d 1278 (11th Cir. 2003) ....................................................... - 16 -

Rodriguez v. Banco Centr, al, 790 F.2d 172 (1st Cir. 1986) ...................................................... - 22 -

Rogers v. Ruiz, 594 So. 2d 756 (Fla. 2d DCA 1991) .............................................................. - 15 -

Rollins v. Heller, 454 So. 2d 580 (Fla. 3d DCA 1984) .............................................................. - 3 -

Sacred Heart Health System, Inc. v. Humana Military Healthcare Services, Inc.,
    2008 WL 2385506  (N.D. Fla. June 9, 2008)...........................................- 16 -, - 17 -

Senger Brothers Nursery, Inc. v. E.I. Dupont De Nemours & Co.,
    184 F.R.D. 674 (M.D. Fla. 1999).......................................................- 16 -, - 17 -

1

Stone Container Corp. v. United States, 229 F.3d 1345 (Fed. Cir. 2000) .................................- 21 -

2

Thornber v. City of Fort Walton Beach, 568 So. 2d 914 (Fla. 1990).....................................- 10 -

3

4

Tosti v. City of Los Angeles, 754 F.2d 1485 (9th Cir. 1985) ................................ - 6 -, - 22 -, - 24 -

5

Vargas v. Glades General Hospital, 566 So. 2d 282 (Fla. 4th DCA 1990) ............................- 12 -

6

Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321 (1971) ......................................- 4 -

7

8

**STATUTES**

9

Fla. Stat. § 112.182 ...........................................................................................................- 10 -

10

Fla. Stat. § 689.17 .............................................................................................................- 10 -

11

Fla. Stat. § 689.175 ...........................................................................................................- 10 -

12

Fla. Stat. § 95.11(3)(f) ...........................................................................................- 3 -, - 10 -

13

14

Fla. Stat. § 501.207(5), and 542.26(1)...............................................................................- 10 -

15

Fla. Stat. § 542.26(1) ........................................................................................................- 10 -

16

Fla. Stat. § 95.051............................................................................................................ passim

17

18

**SECONDARY AUTHORITY**

19

Antitrust Laws and Trade Regulation, Ch. 162, § 162.04[2] (Matthew Bender)..................-15-

20

21

22

23

24

25

26

27

28

The State of Florida, Department of Legal Affairs, Office of the Attorney General ("Florida"), opposes Defendants' Motion to Dismiss the State of Florida's Complaint ("Motion") as follows:

## I.   INTRODUCTION

Florida filed its Amended Complaint on July 16, 2012.  It has withdrawn its damages claims under the Sherman Act and Florida Antitrust Act, which render moot two of Defendants' three arguments.  Defendants mischaracterize the remaining issue (whether Florida's Complaint should be dismissed as untimely) and seek to hide from this Court clear, recent, and contrary authority that easily disposes of their arguments.

## II.   ISSUE TO BE DECIDED

Whether Florida's state law claims were timely filed on December 9, 2011, when it alleged it learned of the invasion of its legal rights by the Defendants after November 25, 2007; when Defendants fraudulently concealed their conspiracy; and when putative class actions were brought on behalf of Florida consumers and governmental entities, tolling Florida's claims.

## III. FACTUAL BACKGROUND

Florida filed its Complaint on December 9, 2011.  Florida brought one federal claim under the Sherman Act for injunctive relief and damages, and state law claims under the Florida Antitrust Act (FAA) and the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), seeking a wide range of relief.

RESPONSE TO DEFENDANTS' MOTION TO DISMISS COMPLAINT – STATE OF FLORIDA
Master File No. 07-cv-5944 SC;
Case No. 2011-cv-6205 SC

- 1 -

Florida filed its Amended Complaint on July 16, 2012, and dismissed its Sherman Act claim for damages, and its FAA claim for damages.[1]  Thus, the only issue is whether Florida's remaining state law claims under the FAA and FDUTPA are barred by the applicable statutes of limitations.[2]

Florida alleges that Defendants damaged Florida governmental entities and consumers through "at least November 25, 2007."  (Am. Compl. ¶¶ 8(f), 82.)  Florida also alleges that the Defendants engaged in a secretive, widespread conspiracy, and took affirmative steps to hide their conduct, and that Florida was not aware of the invasion of its legal rights until after November 25, 2007.[3]  (Am. Compl. ¶¶ 136-140.)  Florida also alleged that it benefits from class action tolling.  (Am. Compl. ¶ 138.)  In addition to seeking statutory damages for Florida consumers and governmental entities, Florida seeks restitution and disgorgement.  (Am. Compl. ¶ 156(f).)

## IV. ARGUMENT

### A.  Legal Standard

If the expiration of the applicable statutes of limitations is apparent from the face of the complaint, the defendant may raise a statutes of limitations defense in a Rule 12(b)(6) motion to dismiss.  *See In re Juniper Networks, Inc. Secs. Litig.,* 542 F. Supp. 2d 1037, 1050 (N.D. Cal. 2008) (citing *Jablon v. Dean Witter & Co.,* 614 F.2d 677, 682 (9th Cir. 1980)).  In a motion to dismiss under Rule 12(b)(6), allegations of material fact are taken as true and construed in the

---

[1] Florida's indirect purchaser claims under FDUTPA, and other requests for relief under the FAA, remain.

[2] Defendants did not argue that Florida's federal claims were barred by the statute of limitations.

[3] Defendants did not argue that Florida did not adequately plead fraudulent concealment.

RESPONSE TO DEFENDANTS' MOTION TO DISMISS COMPLAINT – STATE OF FLORIDA
Master File No. 07-cv-5944 SC;
Case No. 2011-cv-6205 SC

- 2 -

light most favorable to the nonmoving party.  *See Cahill v. Liberty Mutual Ins. Co.,* 80 F.3d 336, 337-38 (9th Cir. 1996).

It is generally inappropriate to resolve the fact-intensive allegations of fraudulent concealment at the motion to dismiss stage, particularly where the proof relating to the extent of the fraudulent concealment is alleged to be largely in the hands of the alleged conspirators.  *See In re Rubber Chemicals Antitrust Litigation*, 504 F. Supp. 2d 777, 789 (N.D. Cal. 2007) (citations omitted); *see also In re Vitamins Antitrust Litig.,* 2000 WL 1475705 at *8 (D.D.C. May 9, 2000) (holding that "issues of fraudulent concealment and due diligence are questions of fact that should not be decided on a motion to dismiss"); *In re Cathode Ray Tube (CRT) Antitrust Litigation*, 738 F. Supp. 2d 1011, 1025 (N.D. Cal. 2010) (holding that allegations of fraudulent concealment are fact-intensive).

## B.   **The Expiration of the Statutes of Limitations for Florida's State Law Claims is Not Apparent From the Face of the Complaint**

A cause of action under FDUTPA and FAA expires four years after accrual.  *See Fla. Stat.* §§ 95.11(3)(f) (action shall be commenced within four years for an action founded on a statutory liability); 501.207(5) (no action may be brought by the enforcing authority under Section 501.207 more than four years after the occurrence of a violation or more than 2 years after the last payment in a transaction involved in a violation of this part, whichever is later); 542.26(1) (any action brought under Sections 542.21 or 542.22 must be commenced within four years after the cause of action accrues).  None of these statutes prohibit application of common law principles, such as equitable estoppel and fraudulent concealment.

Accrual of a FDUTPA claim typically occurs when the damage is suffered, such as when the plaintiff purchases something that was not what the plaintiff was led to believe it was purchasing.  *See Rollins v. Heller*, 454 So. 2d 580, 585 (Fla. 3d DCA 1984).  Accrual of an FAA claim is the same as under the federal antitrust laws pursuant to the FAA's federal

RESPONSE TO DEFENDANTS' MOTION TO DISMISS COMPLAINT – STATE OF FLORIDA
Master File No. 07-cv-5944 SC;
Case No. 2011-cv-6205 SC

- 3 -

harmonization statute:  an antitrust action accrues when the alleged conspiracy or other antitrust violation has an impact on the plaintiff.  *See Amis v. Gulf Abstract & Title, Inc*., 564 F. Supp. 1121, 1125 (M.D. Fla. 1983).  "[I]f a plaintiff feels the adverse impact of an antitrust conspiracy on a particular date, a cause of action immediately accrues to him to recover all damages incurred by that date and all provable damages that will flow in the future from the acts of the conspirators on that date."  *Id.* (quoting *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 339 (1971)).

Contrary to the Motion's representations, Florida <u>did not</u> allege that the last day its citizens were the victims of Defendants' conspiracy was November 25, 2007.  Florida specifically alleges that the "[t]he effect of [Defendants'] unlawful behavior has been to raise, fix, maintain, and/or stabilize the prices at which Defendants and co-conspirators sold CRTs to artificially inflated levels from at least March 1, 1995, through *at least* November 25, 2007."  *Cf*. Am. Compl. ¶ 82 (emphasis added) with Mot. at 3 ("Florida seeks damages for purchases of CRTs and CRT products from March 1, 1995 through November 25, 2007").  This date (November 25, 2007) is used in the Amended Complaint to adhere to the current, indirect damages theory of the case (as evidenced by the latest consolidated complaint), but is by no means pled as the *final* date as to damages.  Resolution of the date when Florida consumers of CRT Products, as defined in Florida's Complaint, were no longer victims of Defendants' CRT price-fixing conspiracy will be resolved through fact and expert discovery, and is inappropriate at this stage of the proceeding.  *See In re Rubber Chemicals Antitrust Litigation*, 504 F. Supp. 2d 777, 789 (N.D. Cal. 2007) (citations omitted) (holding it inappropriate to resolve the fact-intensive allegations of fraudulent concealment at the motion to dismiss stage).  Defendants also fail to point out that Florida specifically alleges a conspiratorial agreement that continues through the filing of the Complaint. (Am. Compl. ¶¶ 144, 149.)  Should Defendants choose to deny these allegations, then they will be the subject of discovery.  Construing the allegations of the complaint in a light most favorable to Florida, Defendants' 12(b)(6) Motion fails.

RESPONSE TO DEFENDANTS' MOTION TO DISMISS COMPLAINT – STATE OF FLORIDA
Master File No. 07-cv-5944 SC;
Case No. 2011-cv-6205 SC

- 4 -

1

### C.  The Statutes of Limitations Do Not Bar Florida's State Law Claims

Even if the statutes of limitations are apparent from the face of Florida's Amended Complaint, the statutes of limitations do not bar Florida's state law claims.

Under Florida law, there are various methods that can extend the time to file a lawsuit and prevent application of the statutes of limitations: (1) the delayed discovery doctrine; (2) statutory tolling; (3) equitable estoppel, such as fraudulent concealment; and (4) *American Pipe* tolling.  While the Florida Supreme Court has taken pains to distinguish these concepts from one another, Defendants' Motion conflates them, and misconstrues Florida law in applying them to Florida's claims under FDUTPA and the FAA.  Therefore, it is important to distinguish between the various concepts of accrual, estoppel, and tolling in analyzing these issues.

First, under certain circumstances, the "accrual" of a cause of action may be delayed.  According to the Florida Supreme Court, the "delayed discovery doctrine" provides that a cause of action does not "accrue" until the plaintiff either knows or reasonably should know of the act giving rise to the cause of action.  *Hearndon v. Graham*, 767 So. 2d 1179, 1194 (Fla. 2000); *Davis v. Monahan*, 832 So. 2d 708, 709-10 (Fla. 2002).  Importantly, the delayed discovery doctrine does not "toll" or "suspend" a limitations period after it has already begun; rather, it delays the limitations period from starting in the first place.  *Hearndon*, 767 So. 2d at 1194.

Second, statutory tolling has been interpreted by Florida courts to "interrupt" the running of the statutes of limitations clock after it has already started.  *See Hankey v. Yarian*, 755 So. 2d 93, 96 (2000); *Hearndon*, 767 So. 2d at 1185 (the "tolling" of a limitations period would "interrupt the running thereof subsequent to accrual").  Florida's tolling statute, Section

RESPONSE TO DEFENDANTS' MOTION TO DISMISS COMPLAINT – STATE OF FLORIDA
Master File No. 07-cv-5944 SC;
Case No. 2011-cv-6205 SC

- 5 -

95.051, Florida Statutes, identifies the statutory methods for tolling a limitations period.  In *Hearndon*, the Florida Supreme Court recognized that there has been significant confusion between the "accrual" and "tolling" concepts, and clarified that accrual involves when the limitations period begins to run, whereas tolling interrupts the period once it has already started.  *Id.* ("That both accrual and tolling may be employed to postpone the running of the statute of limitations so that an action would not become time-barred should not cause confusion between these distinct concepts").

A third concept, "equitable estoppel" -- which includes various equitable principles, including fraudulent concealment -- is similar to the tolling concept in that it suspends the running of the limitations period after it has already started, but it does so for reasons beyond those specifically enumerated in Fla. Stat. § 95.051.  Equitable estoppel is not technically a "tolling" concept, but rather is an equitable concept that operates to prevent a party from profiting from his or her wrongdoing.  *Major League Baseball v. Morsani*, 790 So. 2d 1071, 1077 (Fla. 2001).

The fourth concept, *American Pipe* class action tolling, is so named for *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974) ("*American Pipe*"), and has been described as an "equitable tolling" principle.  Under *American Pipe* class action tolling, the commencement of an original class suit tolls the running of the statutes of limitations for all purported members of the class until class certification is denied.  *See Employers-Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Anchor Capital Advisors*, 498 F.3d 920, 925 (9th Cir. 2007).  Class members may choose to file their own action or to intervene as plaintiffs in the pending action.  *See id.*  The subsequent suit does not need to be identical in every respect to the class suit for the statute to be tolled.  *See Tosti v. City of Los Angeles*, 754 F.2d 1485, 1489 (9th Cir. 1985).  So long as the

RESPONSE TO DEFENDANTS' MOTION TO DISMISS COMPLAINT – STATE OF FLORIDA
Master File No. 07-cv-5944 SC;
Case No. 2011-cv-6205 SC

- 6 -

1    claims concern the same evidence, memories, and witnesses as the subject matter of the original

2    class suit, so that the defendant will not be prejudiced, *American Pipe* tolling will apply.  *See*

3    *Maine State Retirement System v. Countrywide Financial Corp.*, 2011 WL 4389689, at * 16

4    (C.D. Cal. May 5, 2011) (citations omitted).

5

6         It is the third and fourth concepts (fraudulent concealment and *American Pipe* class action

7    tolling) that prevent the application of four-year statutes of limitations to Florida's claims.

8              a.   **Florida Recognizes Equitable Estoppel, Which Includes Fraudulent**
                     **Concealment.**
9

10        Earlier in this litigation, in arguing that the indirect purchaser plaintiffs had not adequately

11   pled affirmative conduct constituting fraudulent concealment, Defendants conceded to this Court

12   that Florida recognizes the fraudulent concealment doctrine.  *See* Defendants' Motion to Dismiss

13   Indirect Purchaser Plaintiffs' Consolidated Amended Complaint (Dkt. No. 485 at 44-46.).

14   Defendants stated:

15

16              Plaintiffs' assertion of fraudulent concealment fails because the IP-CAC lacks
                allegations of affirmative fraudulent conduct, which are necessary to toll the
17              statute of limitations [sic] in all 22 of the states [including Florida] in which
                Plaintiffs plead state law claims (the "Affirmative Conduct Jurisdictions"). To toll
18              the statute of limitations [sic] on the grounds of fraudulent concealment in the
                Affirmative Conduct Jurisdictions, Plaintiffs must allege that Defendants took
19              affirmative action directed at plaintiffs to cover up their conspiratorial conduct in
                order to prevent Plaintiffs from discovering their cause of action.
20

21   *Id*. at 44.  Defendants then cited *First Fed. Sav. & Loan Ass'n of Wis. v. Dade Fed. Sav. &*

22   *Loan Ass'n*, 403 So. 2d 1097, 1100 (Fla. 5th DCA 1981), which held that fraudulent

23   concealment would toll the Florida cause of action under Florida state law.

24

25

26

27

28

RESPONSE TO DEFENDANTS' MOTION TO DISMISS COMPLAINT – STATE OF FLORIDA
Master File No. 07-cv-5944 SC;
Case No. 2011-cv-6205 SC

- 7 -

1

2

3

Since it lost this argument against the IPPs regarding fraudulent concealment, Defendants now apparently feel they will fare better if they withhold relevant caselaw from this Court and argue that fraudulent concealment is simply altogether unavailable under Florida law.

4

5

6

7

8

9

10

11

12

13

The Florida Supreme Court addressed -- and specifically approved -- the equitable estoppel concept in *Major League Baseball v. Morsani*, 790 So. 2d 1071, 1078 (Fla. 2001), which includes fraudulent concealment.  In *Morsani*, the Court noted the difference between <u>statutory tolling</u> (under the tolling statute of Section 95.051, Florida Statutes), and <u>equitable estoppel</u> principles, and concluded that equitable estoppel is not technically a "tolling" concept, but rather is an equitable concept that operates to prevent a party from profiting from his or her wrongdoing.  *Id*. at 1077 ("Tolling operates on the statute of limitations; equitable estoppel operates on the party").

14

15

16

17

18

19

Notwithstanding Defendants' arguments to the contrary (*see e.g.*, Mot. at 4, lines 4-12), the statutory tolling methods identified in Fla. Stat. 95.051 are <u>not</u> the only principles that affect a limitations period.  Rather, other equitable principles, including equitable estoppel, work <u>in conjunction</u> with the statutorily enumerated tolling methods.  *Morsani*, 790 So. 2d at 1078.  Indeed, equitable estoppel is:

20

21

22

23

> wholly independent of the limitations period itself and takes its life, not from the language of the statute, but from the equitable principle that no man will be permitted to profit from his own wrongdoing in a court of justice.  Thus, because equitable estoppel operates directly on the defendant without abrogating the running of the limitations period as provided by statute, it might apply no matter how unequivocally the applicable limitations period is expressed.

24

25

26

*Id.*  After string-citing a lengthy list of state and federal cases applying equitable principles to suspend the statutes of limitations (*see id*. n. 21), the *Morsani* Court concluded that equitable

27

28

RESPONSE TO DEFENDANTS' MOTION TO DISMISS COMPLAINT – STATE OF FLORIDA
Master File No. 07-cv-5944 SC;
Case No. 2011-cv-6205 SC

- 8 -

estoppel principles, such as fraudulent concealment, are not trumped by, but rather supplement, the enumerated statutory tolling provisions in Section 95.051, Florida Statutes.

Equitable estoppel is also entirely different than the delayed discovery doctrine, which affects whether the statute of limitations has "accrued."  *Id*. at 1078 ("Equitable estoppel differs from other legal theories that may operate to deflect the statute of limitations, such as accrual"); *Butler University v. Bahssin*, 892 So. 2d 1087, 1091 n. 3 (Fla. 2d DCA 2004) (noting the distinction between fraudulent concealment and accrual under the delayed discovery doctrine, and stating "[t]he fraudulent concealment doctrine operates to prevent defendants from benefiting from a statute of limitations when their own wrongdoing delays filing of a cause of action, whereas the delayed discovery doctrine does not require a deceptive defendant so much as a blameless plaintiff").

In *Florida Department of Health & Rehabilitative Services v. S.A.P.*, 835 So. 2d 1091 (Fla. 2002), the Florida Supreme Court specifically concluded that fraudulent concealment can suspend the statute of limitation in a tort action.  In the first part of its analysis, the *S.A.P.* Court examined whether fraudulent concealment can suspend statutes of limitations generally, and concluded that "[i]t is well settled in Florida and other jurisdictions that the statutes of limitation can be deflected by the doctrine of equitable estoppel [including fraudulent concealment]." *Id*. at 1097.  The Court held that:

> equitable estoppel is a deeply rooted, centuries old tenet of the common law. On the other hand, fixed time limitations for filing suit, i.e., statutes of limitations, were unknown at common law and are a creature of modern statute. This Court has held that a statute enacted in derogation of the common law must be strictly construed and that, even where the Legislature acts in a particular area, the common law remains in effect in that area unless the statute specifically says otherwise:

RESPONSE TO DEFENDANTS' MOTION TO DISMISS COMPLAINT – STATE OF FLORIDA
Master File No. 07-cv-5944 SC;
Case No. 2011-cv-6205 SC

- 9 -

1
2
3

> The presumption is that no change in the common law is intended unless the statute is explicit and clear in that regard. Unless a statute unequivocally states that it changes the common law, or is so repugnant to the common law that the two cannot coexist, the statute will not be held to have changed the common law.

4

*Id*. at 1098 (*citing Thornber v. City of Fort Walton Beach*, 568 So. 2d 914, 918 (Fla. 1990)).

5
6

Since there was nothing in the statute of limitation that indicated any intent by the Florida

7

Legislature to abrogate common law principles such as fraudulent concealment, the Court

8

concluded that fraudulent concealment applies to Florida statutes of limitations.

9

Critical to the ultimate holding *S.A.P.* is the Florida Supreme Court's conclusion that

10

fraudulent concealment and other common law equitable principles apply to <u>all</u> statutes of

11

limitations in Florida, unless specifically excepted by express statutory language.   Nothing in

12

the statutes of limitations applicable to this action (Fla. Stat. §§ 95.11(3)(f),  501.207(5), and

13

542.26(1)) prohibits application of common law equitable principles, nor does the statutory

14

tolling statute.  When Florida (a common law state) abolishes the common law of Florida, the

15

Florida Legislature does so clearly and unambiguously.  *See, e.g.*, Fla. Stat. § 112.182 ("The

16
17

common-law rule that such a firefighter or law enforcement officer occupies the status of a

18

licensee is hereby abolished."); Fla. Stat. § 689.175 ("The doctrine of worthier title is abolished

19

as a rule of law and as a rule of construction."); Fla. Stat. § 689.17 ("The rule in Shelley's Case is

20
21

hereby abolished.").

22

Nor does the statutory tolling provision abolish common law equitable principles with

23
24

respect to statutes of limitations.  The legislative history of Fla. Stat. § 95.051 (the statutory

25

tolling provision) makes clear that the Florida Legislature had no intention of altering existing

26

common law with respect to fraudulent concealment or equitable estoppel.  *See* Memorandum

27

from C. McFerrin Smith to Senator Tom Johnson on CS/HB 895, FN1 at ¶ 5 (Apr. 30, 1974) (on

28

RESPONSE TO DEFENDANTS' MOTION TO DISMISS COMPLAINT – STATE OF FLORIDA
Master File No. 07-cv-5944 SC;
Case No. 2011-cv-6205 SC

- 10 -

file Fla. State Archives, series 18, carton 308) ("The section on when limitations are tolled

(95.051 . . . ) codifies existing case law and streamlines the tolling provision."). The only

changes to the common law in House Bill 895 identified by the Judiciary Committee were with

respect to incompetency and disabilities. *See* Fla. H.R. Comm. on Judiciary, CS/HB 895 (1974)

Section Summary 4 (on file Fla. State Archives, series 19, carton 205) ("This section also

incorporates the Council's policy decision to limit the common-law disabilities which serve to

toll the statute."). The Legislature also had no intention of limiting common law restrictions on

when a defendant could avail itself of a statute of limitations defense (indeed, Fla. Stat. § 95.051

is silent on the issue), and expected the courts to continue their function of preventing a defense

as a result of the inequitable conduct of a defendant. *See* Thomas Bevis, Fla. Law Revision

Council, Project on Statutes of limitations: Some Policy Considerations, at 13 (Apr. 8, 1972)

(available at Fla. State Archives, series 18, carton 308) ("If action is prevented through some act

of defendant, he should then be stopped from raising the statute in his defense."). In examining

when a cause of action accrues, the Legislature was cognizant that application of the "discovery

rule is less prevalent in fraud or fraudulent concealment cases perhaps because the courts have

used some form of estoppel to prevent the defendant from raising the statute." *Id*. at 17.

   Lower appellate courts in Florida also routinely hold that if a defendant has fraudulently

concealed a cause of action from the plaintiff, the running of the statute of limitation governing

the action is suspended until the cause of action is discovered. *See, e.g.*, *Berisford v. Jack*

*Eckerd Corp.*, 667 So. 2d 809, 811 (Fla. 4th DCA 1995) (accepting fraudulent concealment

doctrine as a means of tolling the statute of limitation, rejecting argument that fraudulent

concealment applies only to medical malpractice actions, reversing summary judgment, and

remanding for further proceedings to determine whether, under the facts of the case, the

RESPONSE TO DEFENDANTS' MOTION TO DISMISS COMPLAINT – STATE OF FLORIDA
Master File No. 07-cv-5944 SC;
Case No. 2011-cv-6205 SC

- 11 -

fraudulent concealment doctrine applied); *Vargas v. Glades General Hospital*, 566 So. 2d 282, 285 (Fla. 4th DCA 1990) ("Fraudulent concealment as an exception to the statute of limitations has as its philosophy that 'courts will not protect defendants who are directly responsible for the delays of filing because of their own willful acts....' It is a doctrine to prevent the court from participating in the fraud of the defendant. Such a doctrine applies to all who come to the court for redress.") (internal citations omitted) (citing seminal case of *Nardone v. Reynolds*, 333 So. 2d 25, 36 (Fla. 1976); *Bryant v. Adventist Health Systems Sunbelt, Inc.,* 869 So. 2d 681 (Fla. 5th DCA 2004) (reversing dismissal of complaint on statute of limitations grounds because the complaint raised fraudulent concealment and intentional misrepresentation); *Baptist Hospital of Miami, Inc. v. Carter*, 658 So. 2d 560, 563 (Fla. 3d DCA 1995) (with regard to a statutory cause of action, such as here, "[i]t is well settled…as a general rule…that fraud or misrepresentation that misleads a claimant into a justified failure to assert his rights bars reliance on a statute of limitations") (abrogated on other grounds); *Grossman v. Greenberg*, 619 So. 2d 406 (Fla. 3d DCA 1993) ("The statute of limitations does not begin to run where there has been a fraud or a fraudulent concealment").

Defendants' attempt to extinguish the Florida doctrine of fraudulent concealment was also patently rejected recently by this District Court. *See In re TFT-LCD (Flat Panel) Antitrust Litigation*, 2011 WL 4387812 (N.D. Cal. Sept. 20, 2011).

Defendants propose a narrow interpretation of equitable estoppel, arguing that equitable estoppel requires Florida to allege that it knew of the facts underlying the cause of action but delayed filing suit because of Defendants' conduct. (Mot. at 6, lines 7-10.) Defendants' argument was rejected by a majority of the Florida Supreme Court in *Florida Department of Health & Rehabilitative Services v. S.A.P.*, 835 So. 2d 1091 (Fla. 2002) (Wells, J., dissenting)

RESPONSE TO DEFENDANTS' MOTION TO DISMISS COMPLAINT – STATE OF FLORIDA
Master File No. 07-cv-5944 SC;
Case No. 2011-cv-6205 SC

- 12 -

(arguing unsuccessfully that equitable estoppel had no bearing since the defendant did not make inducements to the plaintiff to forebear bringing the action that was later claimed by the defendant to be barred).

In *Florida Department of Health & Rehabilitative Services v. S.A.P.*, 835 So. 2d 1091 (Fla. 2002), S.A.P.'s complaint for negligence alleged that she was in foster care supervised by a Florida agency, and was subjected to injury due to the negligent failure of the agency to supervise and monitor her foster care placement and to remove her.  S.A.P.'s tort accrued on or about October 20, 1979 (the date her injuries were known); the agency's internal investigation report documenting the abuse was released on December 21, 1992; and the action was filed in January 1995.  *See id*. at 1093-94.  Just as in this case, S.A.P.'s cause of action for negligence was governed by a four-year statute of limitation, and her cause of action accrued on or about October 20, 1979.  S.A.P. never alleged that she knew of her cause of action for negligence against the agency before the statute of limitation expired, but did allege that the defendant's misconduct of concealment prejudiced her case.  The issue was framed as "fraudulent concealment," and the relevant issue was the successful concealment of the claim by the defendant.

This District Court carefully analyzed this same issue in *In re TFT-LCD (Flat Panel) Antitrust Litigation*, 2011 WL 4387812 (N.D. Cal. Sept. 20, 2011).  In holding that the Florida Supreme Court would recognize the doctrine of fraudulent concealment, the *TFT-LCD* court recognized that fraudulent concealment, a species of equitable estoppel, is an equitable doctrine that can preclude a defendant from asserting a statute-of-limitations defense.   *See id*. at *2.  It applies where a defendant takes steps to conceal his wrongful actions, thereby preventing a plaintiff from filing suit on time.  *See id*.  The Court reasoned that the Florida Supreme Court has

RESPONSE TO DEFENDANTS' MOTION TO DISMISS COMPLAINT – STATE OF FLORIDA
Master File No. 07-cv-5944 SC;
Case No. 2011-cv-6205 SC

- 13 -

1   expressed an expansive view of equitable estoppel consistent with fraudulent concealment.  *See*

2   *id*. (*citing Major League Baseball v. Morsani,* 790 So. 2d 1071 (Fla. 2001)).  Equitable estoppel

3   operates to prevent a defendant from benefitting from a limitations defense where it bore

4   responsibility for the late filing.  *See id*. at *3.  Thus, equitable estoppel applies wherever "one

5   party lulls another party into a disadvantageous legal position."  *Id*.  Equitable estoppel applies in

6   this matter with equal force, and prevents the conspiring Defendants from benefitting from their

7   wrongdoing when they bear responsibility for any late filing.

8

9       The lone citation by the Defendants rejecting the doctrine fraudulent concealment in Florida

10  is from the District of Columbia (Mot. at 4, line 25 to pg. 5, lines 1-4) and was decided in 2000,

11  before the Florida Supreme Court's clear adoption of equitable estoppel and fraudulent

12  concealment in *Morsani* (decided in 2001) and *S.A.R.* (decided in 2002).  It also does not appear

13  to be cited by a single court.

14

15      Defendants next argue that even if this Court follows the decisions of the Florida Supreme

16  Court and recognizes fraudulent concealment, Florida cannot avail itself of this doctrine, arguing

17  that Florida had notice of the invasion of its legal rights.  (Mot. at 6, lines 15-16.)  This is not

18  what Florida's Complaint said.  Florida did not "concede[ ] within the four corners of its

19  Complaint that it learned of its claims in November 2007 . . . ."  (Mot. at 6.)  On the contrary,

20  Florida alleged that it did not learn of its claims "until *after* the initiation of a class action suit."

21  (Compl. ¶ 144 (emphasis added).)[4]

22

23      The filing of class action lawsuits also do not, as a matter of law, alleviate the perils of

24  Defendants' fraudulent concealment.  "Defendants often argue that the second element of a

25

26  _____

27  [4] Florida's Amended Complaint realleges that it knew after November 25, 2007, but drops
    reference to the filing of class actions lawsuits to prevent further misrepresentation.  (Am.
    Compl. ¶ 137.)

28

1   fraudulent concealment claim – successful concealment from the plaintiff – cannot be satisfied

2   because of the existence of similar lawsuits gave the plaintiff actual or constructive knowledge of

3   its claim.  Courts have generally found this claim to be inadequate to defeat – prior to trial – a

4   fraudulent concealment claim."  Antitrust Laws and Trade Regulation, Ch. 162, § 162.04[2]

5   (Matthew Bender); *see also E.W. French & Sons, Inc. v. General Portland, Inc.*, 885 F.2d 1392,

6   1399-1400 (9th Cir. 1989) (*citing In re Beef Industry Antitrust Litigation,* 600 F.2d 1148, 1171

7   (5th Cir. 1979) (footnotes omitted), *cert. denied,* 449 U.S. 905 (1980) ("The filing by others of a

8   similar lawsuit against the same defendants may in some circumstances suffice to give notice,

9   but to rule that it does so *as a matter of law* is to compel a person situated like these plaintiffs to

10  file suit, on the pain of forfeiting his rights . . . .  The mere filing of a similar lawsuit, without

11  more, does not necessarily give "good ground" because that suit might well be frivolous or

12  baseless.")).

13      Defendants' Motion ignores this lengthy list of relevant authority, and conflates the

14  concepts of statutory tolling and equitable estoppel.  In short, Defendants' legal analysis is

15  altogether wrong.  Fraudulent concealment is indeed available and appropriate to bar the

16  Defendants from asserting a statute of limitations defense to Florida's state law claims.  Since

17  there is no question that the pleadings in this case raise significant issues regarding the

18  Defendants' affirmative fraudulent concealment of their price-fixing conspiracy, a motion to

19  dismiss at this stage in the proceedings is improper, and the jury should be entitled to hear

20  evidence on the fraudulent concealment and statute of limitations issues.  *See Rogers v. Ruiz*,

21  594 So. 2d 756 (Fla. 2d DCA 1991) (reversing summary judgment on statute of limitations

22  grounds because there were material facts in dispute regarding fraudulent concealment

23  defense).

RESPONSE TO DEFENDANTS' MOTION TO DISMISS COMPLAINT – STATE OF FLORIDA
Master File No. 07-cv-5944 SC;
Case No. 2011-cv-6205 SC

- 15 -

1   Even if fraudulent concealment alone prevents the filing of Florida's Complaint, it works in

2   conjunction with *American Pipe*, which clearly allowed Florida to file its Complaint.  Since

3   Florida timely filed its Complaint under *American Pipe*, Defendants do not get to limit their

4   liability by altogether striking fraudulent concealment from Florida's Complaint.

5               **b.   Florida Recognizes Equitable Tolling Under *American Pipe***

6   Once again, Florida law is clear.  As clearly stated by Florida's federal appellate circuit,

7   "[t]here is no dispute that *American Pipe* has been followed in Florida state courts."  *Raie v.*

8   *Cheminova, Inc*., 336 F.3d 1278, 1282 (11th Cir. 2003).  Stated by another court just as

9   succinctly:  "no Florida court has refused to apply *American Pipe* . . . ."  *Sacred Heart Health*

10  *System, Inc. v. Humana Military Healthcare Services, Inc*., 2008 WL 2385506, at *1 -2  (N.D.

11  Fla. June 9, 2008) ("*Sacred Heart*") (holding the doctrine of common law equitable tolling as

12  outlined in *American Pipe* has been applied in Florida in spite of § 95.051, Florida Statutes, and

13  rejecting *Senger Brothers Nursery, Inc. v. E.I. Dupont De Nemours & Co*., 184 F.R.D. 674 (M.D.

14  Fla. 1999) since it ignores clear precedent from the Florida Supreme Court); *Hromyak v. Tyco*

15  *Int'l Ltd.,* 942 So. 2d 1022, 1023 (Fla. 4th DCA 2006) (affirming trial court's determination that

16  *American Pipe* tolling did not apply, not because Florida courts did not follow *American Pipe* but

17  because the claims raised in the state action were not the same claims asserted in an earlier

18  federal class action); *Latman v. Costa Cruise Lines, N.V.,* 758 So. 2d 699, 704 (Fla. 3d DCA

19  2000) (tolling Florida state law claims by recognizing *American Pipe's* tolling rule and citing

20  *Kornberg v. Carnival Cruise Lines, Inc.,* 741 F.2d 1332, 1336-67 (11th Cir. 1984), which itself

21  cited *American Pipe*); *City of St. Petersburg v. Total Containment, Inc*., 2008 WL 5428179, at *4-

22  5  (S.D. Fla. Oct. 10, 2008) (tolling Florida state law claims under *American Pipe*), *adopted in*

RESPONSE TO DEFENDANTS' MOTION TO DISMISS COMPLAINT – STATE OF FLORIDA
Master File No. 07-cv-5944 SC;
Case No. 2011-cv-6205 SC

- 16 -

1
2

*relevant part*, *City of St. Petersburg v. Dayco Products, Inc.*, 2008 WL 5428172, at *3 (S.D. Fla. Dec. 30, 2008).

3
4
5
6
7
8
9
10
11
12

Even when not invoked as "*American Pipe* tolling," equitable tolling has also been applied by Florida's highest court. *Sacred Heart*, 2008 WL 2385506, at *1-2 (N.D. Fla. June 9, 2008).  In *Engle v. Liggett Group, Inc.,* 945 So. 2d 1246, 1277 (Fla. 2006), the court authorized the plaintiffs to proceed upon remand after decertification of the class provided their actions were filed within one year of the issuance of the court's mandate.  Similarly, in *Lance v. Wade,* 457 So. 2d 1008, 1011 (Fla. 1984), the court held that members who had relied on a class action should be entitled to proceed and would not be subject to statute of limitations or laches defenses if the new action was commenced within a "reasonable time" after remand.

13
14
15
16
17

Other District courts, including this District, are in agreement that Florida recognizes *American Pipe* tolling.  *See In re TFT-LCD (Flat Panel) Antitrust Litigation*, 2012 WL 149632, at *3 (N.D. Cal. Jan. 18, 2012) ("The Court . . . finds that *American Pipe* tolling applies to the Florida statute of limitations" regarding the FDUTPA cause of action).

18
19
20
21
22
23
24
25
26

Again, just as with the concept of equitable estoppel, statutory tolling under Section 95.051, Florida Statutes, is separate and distinct from equitable tolling under *American Pipe*. As a Florida federal district court held, while § 95.051 may not statutorily toll the statute of limitations for Florida claims, equitable tolling principles still apply.  *See Sacred Heart*, 2008 WL 2385506, at *1 (N.D. Fla. June 9, 2008).  The *Sacred Heart* Court rejected *Senger Brothers Nursery, Inc. v. E.I. Dupont De Nemours & Co*., 184 F.R.D. 674 (M.D. Fla. 1999) ("*Senger Brothers Nursery*"), cited by the Defendants, since it ignores clear precedent from the Florida Supreme Court recognizing equitable tolling.

27
28

RESPONSE TO DEFENDANTS' MOTION TO DISMISS COMPLAINT – STATE OF FLORIDA
Master File No. 07-cv-5944 SC;
Case No. 2011-cv-6205 SC

- 17 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The second and final case cited by the Defendants contains an analysis of class action tolling under Florida law that is seven words long, does not contain any citation to relevant authority from the Florida Supreme Court, and simply cites to *Senger Brothers Nursery*. *See In re Rezulin Products Liability Litigation*, 2006 WL 695253, at *1 (S.D.N.Y. Mar. 5, 2006) ("Florida does not permit class action tolling").

Defendants argue that even if this Court follows Florida precedent and recognizes *American Pipe* tolling for its state law claims, that Florida "is not a member of the purported classes described in the indirect purchaser ("IPP") and direct purchaser ("DPP") class action complaints." (Mot. at 6, lines 19-21.)  Defendants confine their argument to Florida as a governmental entity (Mot. at 6-7.); they do not argue that Florida consumers were not (or are not) part of the IPP classes, which of course they are.  Therefore, because *American Pipe* tolling is recognized in Florida and applies to Florida's claims for its natural person consumers, these claims survive.

Defendants' argument hinges on the representation that at present there "are" no class actions with governmental entities, which is irrelevant to the question as to whether there "were" any class actions with governmental entities that would operate against the statutes of limitations to equitably toll Florida's governmental claims.  In citing *Del Sontro v. Cendant Corp.*, 223 F. Supp. 2d 563, 581 (D.N.J. 2002), they concede this point (Mot. at 7, lines 8-10), since *Del Sontro* held that because the plaintiff seeking relief under *American Pipe* "was *never* a purported class member of the CalPERS class, *American Pipe* tolling would not save his claim." (emphasis added).

Defendants omit that at least four class action complaints were filed on behalf of nationwide classes that included governmental entities in Florida, seeking monetary relief that

RESPONSE TO DEFENDANTS' MOTION TO DISMISS COMPLAINT – STATE OF FLORIDA
Master File No. 07-cv-5944 SC;
Case No. 2011-cv-6205 SC

- 18 -

included unjust enrichment, disgorgement, and restitution from Defendants based upon their

alleged participation in a price-fixing conspiracy involving cathode ray tubes.  Putative indirect

classes that included governmental entities included the following cases:

- *Juetten v. Chunghwa Picture Tubes, Ltd.*, Case No. 07-cv-06225-SC (N.D. Cal. filed December 10, 2007) (putative nationwide class of "[a]ll persons and entities residing in the United States which, from January 1, 1998 through and including November 9, 2007, indirectly purchased in the United States, for their own use and not for resale, a CRT which was manufactured and/or sold by one or more of the Defendants.  Specifically excluded from this Class are the Defendants; the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant.  Also excluded are any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.");

- *Stack v. Chunghwa Picture Tubes, Ltd.*, Case No. 08-cv-1319-SC (N.D. Cal. filed March 7, 2008) (putative nationwide class of "[a]ll persons and entities residing in the United States who, from January 1, 1998 through and including November 9, 2007, indirectly purchased in the United States, for their own use and not for resale, a CRT or CRT Product which was manufactured and/or sold by one or more of the Defendants. Specifically excluded from this Class are the Defendants; the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant. Also excluded are any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.");

- *Ganz v. Chunghwa Picture Tubes, Ltd.*, Case No. 08-cv-1721-SC (N.D. Cal. filed March 31, 2008) (putative nationwide class of "[a]ll persons and entities residing in the

RESPONSE TO DEFENDANTS' MOTION TO DISMISS COMPLAINT – STATE OF FLORIDA
Master File No. 07-cv-5944 SC;
Case No. 2011-cv-6205 SC

- 19 -

United States who, from January1, 1998 through and including November 9, 2007, indirectly purchased in the United States, for their own use and not for resale, a CRT which was manufactured and/or sold by one or more of Defendants.  Specifically excluded from this Class are Defendants; the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant. Also excluded are any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action."); and

- *Ross v. Chunghwa Picture Tubes, Ltd.*, Case No. 08-cv-1807-SC (N.D. Cal. filed April 3, 2008) (putative nationwide class of "[a]ll persons and entities residing in the United States which, from January 1, 1998 through and including November 9, 2007, indirectly purchased in the United States, for their own use and not for resale, a CRT which was manufactured and/or sold by one or more of the Defendants. Specifically excluded from this Class are the Defendants; the officers, directors, or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant. Also excluded are any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.").

It was not until the IPPs filed their Consolidated Amended Complaint on March 16, 2009, that governmental entities were excluded from these class actions.  (Master Dkt No. 437.).  At that point, the putative nationwide class became the following:

> All persons and or entities who or which indirectly purchased in the United States for their own use and not for resale, CRT Products manufactured and/or sold by the Defendants, or any subsidiary, affiliate, or co-conspirator thereof, at any time during the period from at least March 1, 1995 through at least November 25, 2007. Specifically excluded from this Class are the Defendants; the officers,

RESPONSE TO DEFENDANTS' MOTION TO DISMISS COMPLAINT – STATE OF FLORIDA
Master File No. 07-cv-5944 SC;
Case No. 2011-cv-6205 SC

- 20 -

> directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and, any affiliate, legal representative, heir or assign of any Defendant. *Also excluded are any federal, state or local government entities*, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

*Id*. (emphasis added).  Thus, for over 15 months, a putative class of indirect purchasers that included governmental entities was on file in this District.  *See Juetten v. Chunghwa Picture Tubes, Ltd.*, Case No. 07-cv-06225-SC (N.D. Cal. filed December 10, 2007).  Even under the caselaw cited by the Defendants' in support of their position, the Defendants' argument crumbles since Florida's governmental entities were included in these class actions.

   While Defendants do not take a definitive stand as to when Florida's claims were allegedly barred, they declare that Florida filed its claims "four years and thirteen days after that [first] class action was filed [on November 26, 2007]."  (Mot. at 5, line 25.)  Even assuming *arguendo* that Florida had to file its claims on or before the end of four years from the date of filing of the first class action complaint (*e.g*., November 26, 2011) to take advantage of fraudulent concealment (it did not), *American Pipe* tolled Florida's governmental claims.  The earliest point at which Florida's statute of limitations began running again with respect to its governmental claims was in March, 2009, when there were no longer any nationwide governmental classes pending.  *See, e.g., Culver v. City of Milwaukee*, 277 F.3d 908, 914 (7th Cir.  2002) (holding "when the suit is dismissed without prejudice or when class certification is denied the statute resumes running for the class members") (citing *Crown, Cork & Seal Co. v. Parker,* 462 U.S. 345, 354 (1983); *Chardon v. Fumero Soto,* 462 U.S. 650 (1983); *Elmore v. Henderson,* 227 F.3d 1009, 1012 (7th Cir. 2000); *In re Rhone-Poulenc Rorer Inc.,* 51 F.3d 1293, 1298 (7th Cir. 1995); *Glidden v. Chromalloy American Corp.,* 808 F.2d 621, 627 (7th Cir. 1986); *Stone Container Corp. v. United States,* 229 F.3d 1345, 1355-56 (Fed. Cir. 2000); *Armstrong v. Martin Marietta*

RESPONSE TO DEFENDANTS' MOTION TO DISMISS COMPLAINT – STATE OF FLORIDA
Master File No. 07-cv-5944 SC;
Case No. 2011-cv-6205 SC

- 21 -

1   *Corp.,* 138 F.3d 1374, 1384-85 (11th Cir. 1998) (en banc); *Rodriguez v. Banco Central,* 790 F.2d

2   172, 179 (1st Cir. 1986)).  Since *American Pipe* tolling adds at least 15-plus months from

3   Defendants' alleged statute-of-limitation date (November 26, 2011), when Florida filed its

4   Complaint on December 9, 2011, it was entitled to over a year of equitable tolling under

5   *American Pipe* for its government claims.  With the concession by the Defendants that the claims

6   of natural persons in Florida were tolled by the filing of class actions, all of Florida's state law

7   claims survive under *American Pipe.*

8
9       Had Defendants chosen to recognize the putative class actions involving governmental

10   entities that were filed against the Defendants, any attempt to distinguish them from Florida's

11   Complaint would be unsuccessful.  While the class actions did not bring identical suits to

12   Florida's, Florida's suit does not need to be identical in every respect to the class suit for the

13   statute to be tolled.  *See Maine State Retirement System v. Countrywide Financial Corp*., 2011

14   WL 4389689, at * 16 (C.D. Cal. May 5, 2011) (citing *Tosti v. City of Los Angeles*, 754 F.2d

15   1485, 1489 (9th Cir. 1985)); *Barnebey v. E.F. Hutton & Co*., 715 F. Supp. 1512, 1528-29 (M.D.

16   Fla. 1989) (agreeing with the reasoning of the Second Circuit in *Cullen v. Margiotta,* 811 F.2d

17   698 (2d. Cir. 1987), and holding that *American Pipe* tolling is properly extended where the

18   individual claims involve the same "evidence, memories, and witnesses" as are involved in the

19   putative class action"); *In re: Independent Service Org. Antitrust Litig.,* 1997 WL 161940, at *4

20   (D. Kan. Mar. 12, 1997) (requiring the allegations of both suits to be identical "would be

21   illogical because one of the primary reasons a member will opt out of a class suit is that she has

22   strong individual claims against the defendant that she believes will not be redressed by the

23   overall class settlement") (citations omitted); *In re Linerboard Antitrust Litigation*, 223 F.R.D.

24
25   335, 351 (E.D. Pa. 2004).

26
27
28

RESPONSE TO DEFENDANTS' MOTION TO DISMISS COMPLAINT – STATE OF FLORIDA
Master File No. 07-cv-5944 SC;
Case No. 2011-cv-6205 SC

- 22 -

Florida's FDUTPA claim is also entirely harmonious with the IPPs' former unjust enrichment count for governmental entities.  Florida courts favor dismissal of an equitable unjust enrichment claim when it is predicated on the same wrongful conduct as a FDUTPA claim, holding that the FDUTPA provides the appropriate legal remedy.  *See, e.g.*, *Matthews v. American Honda Motor Co., Inc.*, 2012 WL 2520675, at *2 (S.D. Fla. June 6, 2012); *Prohias v. Pfizer, Inc.,* 490 F. Supp. 2d 1228, 1236–37 (S.D. Fla. 2007) ("[I]n their unjust enrichment claim, the plaintiffs seek recovery for the exact same wrongful conduct as in their consumer fraud act claim. If [the defendant's] marketing scheme is misleading, and if the plaintiffs have been damaged by such scheme, then the plaintiffs have a remedy at law as a properly pled claim under the consumer fraud acts . . . . "); *accord Jovine v. Abbott Labs., Inc.,* 795 F. Supp. 2d 1331, 1341–42 (S.D. Fla. 2011); *Nichols v. Wm. Wrigley Jr. Co.,* 2011 WL 181458, at *5 (S.D. Fla. Jan.19, 2011); *Am. Honda Motor Co., Inc. v. Motorcycle Information Network, Inc.,* 390 F. Supp. 2d 1170, 1178 (M.D. Fla. 2005).  In other words, an unjust enrichment claim, predicated on the same wrongful conduct as a FDUTPA claim, is the same claim but for the categorization of the remedy.  Florida also invoked the same remedies of restitution and disgorgement as the IPPs. (Am. Compl. ¶ 156(f)).  Thus, all of these cases are predicated on the same conduct and involve the same theory of restitution and disgorgement for Florida consumers, even though this is not required.  *See Maine State Retirement System v. Countrywide Financial Corp*., 2011 WL 4389689, at * 16 (C.D. Cal. May 5, 2011) (citations omitted) (holding the subsequent suit does not need to allege the same legal theory to benefit from *American Pipe* tolling).

Florida's action also involves the same evidence, memories, and witnesses as the IPPs' actions.  *See Maine State Retirement System v. Countrywide Financial Corp*., 2011 WL 4389689, at * 16 (C.D. Cal. May 5, 2011) (citations omitted).  All of the cases have the same

RESPONSE TO DEFENDANTS' MOTION TO DISMISS COMPLAINT – STATE OF FLORIDA
Master File No. 07-cv-5944 SC;
Case No. 2011-cv-6205 SC

- 23 -

common factual bases and legal nexus, and arise from the same transactions and wrongful acts as those identified in the earlier complaints in which the Defendants were named.  *See id.* (*citing In re Enron Corporation Securities, Derivative, & "ERISA" Litigation,* 465 F. Supp. 2d 687, 718 (S.D. Tex. 2006); *Tosti v. City of Los Angeles,* 754 F.2d 1485, 1489 (9th Cir. 1985)).  As a result, the class actions sufficiently put the Defendants on notice of the substance and nature of the claims at issue, and *American Pipe* tolling applies.  *See Barnett v. County of Contra Costa*, 2005 WL 5095264, at *2 (N.D. Cal. Oct. 31, 2005); *Maine State Retirement System v. Countrywide Financial Corp*., 2011 WL 4389689, at * 16 (C.D. Cal. May 5, 2011).

## V.  CONCLUSION

For the reasons stated above, Defendants' Motion should be denied.

Respectfully submitted this 17th day of July, 2012.

The State of Florida

PAMELA JO BONDI
Attorney General
STATE OF FLORIDA

/s/ Nicholas J. Weilhammer
PATRICIA A. CONNERS (Trish.Conners@myfloridalegal.com)
R. SCOTT PALMER (Scott.Palmer@myfloridalegal.com)
LIZABETH A. BRADY (Liz.Brady@myfloridalegal.com)
NICHOLAS J. WEILHAMMER (Nicholas.Weilhammer@myfloridalegal.com)
SATU A. CORREA (Satu.Correa@myfloridalegal.com)
Office of the Attorney General
State of Florida
PL-01, The Capitol
Tallahassee, FL 32399-1050
Tel:     (850) 414-3300
Fax:     (850) 488-9134

Attorneys for Plaintiff State of Florida

RESPONSE TO DEFENDANTS' MOTION TO DISMISS COMPLAINT – STATE OF FLORIDA
Master File No. 07-cv-5944 SC;
Case No. 2011-cv-6205 SC