IAN SIMMONS (*pro hac vice*)
Email: isimmons@omm.com
BENJAMIN G. BRADSHAW (SBN 189925)
Email: bbradshaw@omm.com
KEVIN D. FEDER (SBN 252347)
Email: kfeder@omm.com
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, D.C. 20006-4001
Telephone: (202) 383-5300
Facsimile: (202) 383-5414

*Attorneys for Defendants Samsung Electronics Co.,
Ltd., and Samsung Electronics America, Inc.*

[Additional moving defendants and counsel listed in signature block]

## IN THE UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Case No. 3:07-cv-5944 SC <br><br> MDL No. 1917 |
| This Document Relates To: <br><br> DIRECT PURCHASER ACTIONS | **DEFENDANTS' NOTICE OF MOTION AND MOTION TO ADOPT SPECIAL MASTER'S REPORT AND RECOMMENDATION REGARDING DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT THEREOF** <br><br> [Proposed] Order Approving and Adopting Special Master's Report and Recommendation and Granting Motion for Summary Judgment Filed Concurrently Herewith <br><br> Judge: Honorable Samuel P. Conti <br> Court: Courtroom 1, 17th Floor <br> Date: TBD <br> Time: TBD |

DEFENDANTS' NOTICE OF MOTION AND MOTION TO ADOPT SPECIAL MASTER'S REPORT AND
RECOMMENDATION REGARDING DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM OF LAW IN SUPPORT THEREOF

3:07-CV-05944 SC
MDL NO. 1917

1

## NOTICE OF MOTION AND MOTION

2

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3

4

5

6

7

8

9

10

11

PLEASE TAKE NOTICE that pursuant to Rule 53 of the Federal Rules of Civil Procedure, the Court's June 16, 2008 Order Appointing Special Master [Dkt. No. 302], and the Court's June 26, 2012 Scheduling Order Re: Objections to Special Master's Report and Recommendation Regarding Defendants' Joint Motion for Summary Judgment [Dkt. No. 1240], Defendants[1] hereby move this Court for an Order adopting the Special Master's May 31, 2012 Report and Recommendation Regarding Defendants' Joint Motion for Summary Judgment [Dkt. No. 1221], which recommends that the Court grant Defendants' Joint Motion for Summary Judgment Against Purported Direct Purchaser Plaintiffs Who Did Not Purchase CRTs [Dkt. No. 1013].

12

13

14

15

The motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities in support thereof, the pleadings and correspondence on file with the Court and attached to this motion, and such arguments and authorities as may be presented at or before the hearing.

16

## STATEMENT OF THE ISSUES

17

18

19

Whether nine of the Direct Purchaser Plaintiffs who did not purchase the alleged price-fixed product (stand-alone cathode ray tubes ("CRTs")) have federal antitrust standing to sue under *Illinois Brick*.

20

21

22

23

24

25

26

27

28

---

[1]     As used herein, "Defendants" refers to the undersigned defendants who have joined in this motion: Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc.; Hitachi, Ltd., Hitachi Displays, Ltd. (n/k/a Japan Display East, Inc.), Hitachi Asia, Ltd., Hitachi America, Ltd., and Hitachi Electronic Devices (USA), Inc.; LG Electronics, Inc., LG Electronics USA, Inc., and LG Electronics Taiwan Taipei Co., Ltd.; Samsung SDI America, Inc., Samsung SDI Co., Ltd., Samsung SDI (Malaysia) SDN. BHD., Samsung SDI Mexico S.A. DE C.V., Samsung SDI Brasil Ltda., Shenzen Samsung SDI Co., Ltd. and Tianjin Samsung SDI Co., Ltd.; and Toshiba Corporation, Toshiba America, Inc., Toshiba America Information Systems, Inc., Toshiba America Consumer Products, L.L.C., and Toshiba America Electronic Components, Inc.

DEFENDANTS' NOTICE OF MOTION AND MOTION TO ADOPT SPECIAL MASTER'S REPORT AND
RECOMMENDATION REGARDING DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM OF LAW IN SUPPORT THEREOF

3:07-CV-05944 SC
MDL NO. 1917

1

## <u>TABLE OF CONTENTS</u>

2

<u>Page</u>

3

PRELIMINARY STATEMENT.................................................................................... 1

4

PROCEDURAL HISTORY ........................................................................................ 3

5

UNDISPUTED FACTS ............................................................................................. 5

6

SPECIAL MASTER'S REPORT AND RECOMMENDATION .................................. 7

LEGAL STANDARD ................................................................................................. 9

7

ARGUMENT ........................................................................................................... 10

8

    I.    The Special Master Correctly Concluded That the Finished Product
Plaintiffs Are Not Direct Purchasers.................................................... 10

9

        A.    The Plaintiffs That Are the Subject of this Motion Did Not
Purchase the Allegedly Price-fixed CRTs................................ 10

10

        B.    The Supreme Court in *Illinois Brick* Set Forth a Straightforward,
Bright-line Rule That Only Direct Purchasers of the Allegedly
Price-fixed Product Have Standing to Sue for Damages Under
Federal Antitrust Law. ............................................................. 11

11

12

        C.    The Bright-line Rule Set Forth in *Illinois Brick* And *UltiliCorp* Has
Been Consistently Applied by the Ninth Circuit. ..................... 12

13

        D.    Finished Product Plaintiffs are Indirect Purchasers Under the Law
of this Circuit. .......................................................................... 13

14

    II.    There Are No Exceptions to *Illinois Brick* in this Circuit For Plaintiffs Who
Did Not Purchase the Allegedly Price-fixed Product and the Court Should
Reject Plaintiffs' Attempt to Create a New *Illinois Brick* Exception. ................. 17

15

16

        A.    Plaintiffs Do Not Meet Any of the Recognized, Exclusive
Exceptions to *Illinois Brick*.................................................... 18

17

        B.    Adopting a New Exception, or Expanding an Existing Exception,
Would Directly Contravene the Supreme Court's Admonition in
*UtiliCorp*. ................................................................................ 21

18

19

        C.    The Special Master Correctly Concluded that Declining to Create a
New Exception to *Illinois Brick* Will Not Fatally Undermine the
Deterrence Function of Antitrust Laws.................................... 23

20

21

CONCLUSION........................................................................................................ 24

22
23
24
25
26
27
28

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page</u>

3

**Cases**

4

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)........................................................................................................... 9

5

6

*Arizona v. Shamrock Foods, Co.*,
   729 F.2d 1208 (9th Cir. 1984)....................................................................................... 17, 18

7

*ATM Fee Antitrust Litigation*,
   2010 WL 3701912 (N.D. Cal. 2010)................................................................................ 7, 14

8

9

*California v. ARC America Corporation*,
   490 U.S. 93 (1989)......................................................................................................... 21, 24

*Coordinated Pretrial Proceedings in Petroleum Antitrust Litigation*,
   691 F.2d 1335 (9th Cir. 1982)............................................................................................. 7

10

11

*Delaware Valley Surgical Supply, Inc. v. Johnson & Johnson*,
   523 F.3d 1116 (9th Cir. 2008)..................................................................................... passim

12

13

*Freeman v. San Diego Association of Realtors*,
   322 F.3d 1133 (9th Cir. 2003)................................................................................ 8, 9, 22, 23

14

*Hanover Shoe, Inc. v. United Shoe Machinery Corp.*,
   392 U.S. 481 (1968).......................................................................................................... 11

15

*Illinois Brick Co. v. Illinois*,
   431 U.S. 720 (1977)...................................................................................................... passim

16

17

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
   738 F. Supp. 2d 1011 (N.D. Cal. 2010) ............................................................................... 8

18

*In re Cement and Concrete Antitrust Litig.*,
   817 F.2d 1435 (9th Cir. 1987)........................................................................................ 20, 21

19

20

*In re Graphics Processing Units Antitrust Litig.*,
   253 F.R.D. 478 (N.D. Cal. 2008)....................................................................................... 21

21

*In re Linerboard Antitrust Litigation*,
   305 F.3d 145 (3rd Cir. 2002) .......................................................................................... 8, 22

22

*In re Optical Disk Drive Antitrust Litigation*,
   No. 3:10-md-02143 RS, 2011 WL 3894376 (N.D. Cal. Aug. 3, 2011)................................. 19

23

*In re Sugar Industry Antitrust Litigation*,
   579 F.2d 13 (3rd Cir. 1978) ............................................................................................ 8, 22

24

*In re TFT-LCD (Flat Panel) Antitrust Litigation*,
   No. M 07-1827 SI, 586 F. Supp. 2d 1109 (N.D. Cal. 2008)............................................. 8, 22

25

26

*In re: ATM Fee Antitrust Litigation*,
   — F.3d —, No. 10-17354, 2012 WL 2855813 (9th Cir. July 12, 2012) ......................... passim

27

28

-ii-

DEFENDANTS' NOTICE OF MOTION AND MOTION TO ADOPT SPECIAL MASTER'S REPORT AND
RECOMMENDATION REGARDING DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM OF LAW IN SUPPORT THEREOF

3:07-CV-05944 SC
MDL NO. 1917

*Kansas v. UtiliCorp United, Inc.*,
    497 U.S. 199 (1990) ........................................................................................... passim

*Kendall v. Visa U.S.A., Inc.*,
    518 F.3d 1042 (9th Cir. 2008) ........................................................................... passim

*Nat'l Ass'n of Optometrists & Opticians v. Harris*,
    682 F.3d 1144 (9th Cir. 2012) .................................................................................... 9

*Royal Printing v. Kimberly Clark Corp.*,
    621 F.2d 323 (9th Cir. 1980) ............................................................................. passim

*Stanislaus Food Products Co. v. USS-POSCO Inds.*,
    2010 WL 3521979 (E.D. Cal. 2010) ............................................................... 7, 15, 16

*Sun Microsystems, Inc. v. Hynix*,
    608 F. Supp. 2d 1166 (N.D. Cal. 2009) ................................................................... 16

*United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv.*
    *Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*,
    602 F.3d 1087 (9th Cir. 2010) .................................................................................. 21

**Statutes**

15 U.S.C. § 15(a) ............................................................................................................ 11

28 U.S.C. § 1332(d) ........................................................................................................ 21

**Rules**

Fed. R. Civ. P. 53(f)(3) ..................................................................................................... 9

Fed. R. Civ. P. 53(f)(4) ..................................................................................................... 9

Fed. R. Civ. P. 56(a) ......................................................................................................... 9

DEFENDANTS' NOTICE OF MOTION AND MOTION TO ADOPT SPECIAL MASTER'S REPORT AND
RECOMMENDATION REGARDING DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM OF LAW IN SUPPORT THEREOF

3:07-CV-05944 SC
MDL NO. 1917

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**PRELIMINARY STATEMENT**

3      In deciding whether to adopt Special Master Legge's May 31, 2012 Report and

4   Recommendation Regarding Defendants' Joint Motion for Summary Judgment ("Report and

5   Recommendation" or "R&R"), the Court need decide only one clear-cut legal question that does

6   not depend on any disputed material fact:  Whether a plaintiff who did not purchase the allegedly

7   price-fixed product has standing to sue as a direct purchaser under *Illinois Brick Co. v. Illinois*,

8   431 U.S. 720 (1977), and its progeny.  *See* R&R at 3.  In a well-reasoned, comprehensive analysis

9   of the relevant case law, Special Master Legge correctly ruled that, as a matter of law, the answer

10   is "no."  This Court should do the same and adopt in its entirety Special Master Legge's Report

11   and Recommendation.

12      Defendants' summary judgment motion is directed against nine of the thirteen so-called

13   Direct Purchaser Plaintiffs ("Finished Product Plaintiffs") who "did ***not*** purchase any price-fixed

14   product, *i.e.* a CRT, from anyone."[2]  *Id*. at 12 (emphasis added).  Rather, the Finished Product

15   Plaintiffs purchased "at best, a manufactured product which contained a CRT," such as a TV or

16   computer monitor.  *Id*.  Consequently, "because plaintiffs did not purchase a price-fixed product,"

17   Special Master Legge concluded that the Finished Product Plaintiffs "are at best indirect

18   purchasers of a price-fixed product" whose claims are barred under *Illinois Brick*.  *Id*.

19      Were there any lingering doubts that the Finished Product Plaintiffs are not direct

20   purchasers under *Illinois Brick*, less than two weeks ago, the United States Court of Appeals for

21   the Ninth Circuit resolved those doubts.  Specifically, the Ninth Circuit unambiguously held that

22   in order to be direct purchasers, "the price ***paid by plaintiffs*** must be fixed," such that "the price

23   paid by a plaintiff must be set by the conspiracy and not merely affected by the setting of another

24   price."  *In re: ATM Fee Antitrust Litigation*, — F.3d —, No. 10-17354, 2012 WL 2855813, at *8,

25   11 (9th Cir. July 12, 2012) (internal citations omitted; emphasis added).  In other words, plaintiffs

26

---

[2]      The nine "Finished Product Plaintiffs" are: Arch Electronics, Inc., Crago d/b/a Dash

27   Computers, Inc., Electronic Design Company, Meijer, Inc. and Meijer Distribution, Inc., Nathan
Muchnick, Inc., Orion Home Systems, LLC, Radio & TV Equipment, Inc., Royal Data Services,

28   Inc., and Studio Spectrum, Inc.  *See* Undisputed Facts, *infra*, and supporting declarations.

-1-

DEFENDANTS' NOTICE OF MOTION AND MOTION TO ADOPT SPECIAL MASTER'S REPORT AND
RECOMMENDATION REGARDING DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM OF LAW IN SUPPORT THEREOF

3:07-CV-05944 SC
MDL NO. 1917

1    must allege that the conspiracy fixed the price for the good they actually purchased—and not

2    some other upstream price, the effect of which may or may not have been passed on to those

3    plaintiffs. *See id.* ("[T]he price paid by plaintiffs must be fixed[.]"). Finished Product Plaintiffs

4    have withdrawn any allegations of a conspiracy to fix the price of finished products they

5    purchased (such as TVs and monitors). *See* R&R at 4-5 (citing August 26, 2011 Stipulation and

6    Order Concerning Pending Motion Re: Finished Products [Dkt. No. 996] ("Finished Products

7    Order")). Because the price the Finished Product Plaintiffs paid for their finished products was

8    not the price that they allege was fixed, they are unquestionably no more than indirect purchasers

9    under the law of this Circuit.

10          Nor, as Special Master Legge concluded, can the Finished Product Plaintiffs avail

11   themselves of any of the narrow exceptions to *Illinois Brick*'s direct purchaser rule. *See* R&R at

12   9-12. Indeed, the Ninth Circuit's decision in *ATM Fee* expressly declined to extend any

13   exceptions to the *Illinois Brick* rule far enough to save the Finished Product Plaintiffs here. *Id.* at

14   *12 n.7. The *ATM Fee* Court went even further though, singling out for disapproval the Third

15   Circuit case law on which the Plaintiffs here heavily rely as "contradict[ing] the Supreme Court's

16   admonition 'not to carve out exceptions to the [direct purchaser] rule for particular types of

17   markets.'" *Id.* (quoting *Kansas v. UtiliCorp United, Inc.*, 497 U.S. 199, 216 (1990)). Special

18   Master Legge, mere weeks before the *ATM Fee* opinion was published, cited the same

19   admonition from the Supreme Court's *UtiliCorp* decision, and declined to extend another

20   exception for the Finished Product Plaintiffs here. *See* R&R at 5, 12.

21          For all these reasons, and for the additional reasons set forth in the relevant record, the

22   single "straightforward" issue presented by the Defendants' motion—whether plaintiffs who did

23   not purchase the allegedly price-fixed product are entitled to sue as direct purchasers under

24   *Illinois Brick*—should be answered in the negative. Accordingly, Defendants respectfully request

25   that this Court adopt Special Master Legge's Report and Recommendation in full and enter

26   summary judgment against the Finished Product Plaintiffs.

27

28

DEFENDANTS' NOTICE OF MOTION AND MOTION TO ADOPT SPECIAL MASTER'S REPORT AND
RECOMMENDATION REGARDING DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM OF LAW IN SUPPORT THEREOF

3:07-CV-05944 SC
MDL NO. 1917

1

**PROCEDURAL HISTORY**

2       At the outset of this case, the Direct Purchaser Plaintiffs ("DPPs") alleged a conspiracy to

3   fix the prices of what they called "CRT Products," defined in the Consolidated Amended

4   Complaint to include **both** the component CRTs and CRT Finished Products.  *See* Direct

5   Purchaser Plaintiffs Consolidated Amended Complaint at ¶¶ 1, 3-6 [Dkt. No. 436] (Mar. 16,

6   2009).  The fact that the DPPs alleged an agreement to fix prices as to Finished Products (as

7   opposed to just CRTs) was dispositive in the Court's decision to deny Defendants' Rule 12(b)(6)

8   motions to dismiss the claims of the Finished Products Plaintiffs for lack of standing:

9
10
11
12

> Defendants also move to dismiss based upon an argument of
> plaintiffs' supposed lack of standing under [*AGC* and *Illinois*
> *Brick*].  However, that argument is based in turn upon defendants'
> perception that the complaints allege a price fixing conspiracy only
> as to CRTs.  And, the Special Master interprets the complaints as
> alleging a conspiracy as to CRT Products as well.

13   Special Master's Report, Recommendations and Tentative Rulings Regarding Defendants'

14   Motions to Dismiss [Dkt. No. 597] (Feb. 5, 2010), at 20-21, adopted in Order Approving and

15   Adopting Special Master's Report Recommendations and Tentative Rulings Re: Defendants'

16   Motions to Dismiss [Dkt. No. 665] (Mar. 30, 2010), at 18-19.

17       Following motions to dismiss and after a period of discovery, certain defendants

18   submitted a Rule 11 motion against the DPPs and Indirect Purchaser Plaintiffs ("IPPs") on the

19   grounds that they lacked a reasonable basis on which to allege any price-fixing agreement as to

20   CRT Finished Products.  *See* Motion for Sanctions Pursuant to Rule 11 [Dkt. No. 892] (Mar. 21,

21   2011) ("Rule 11 Motion").  The IPPs voluntarily stipulated to "withdraw their CRT Finished

22   Products Conspiracy Claims" before Special Master Legge issued his Report and

23   Recommendation on the Rule 11 Motion.  *See* Stipulation and Order Re: Voluntary Withdrawal

24   of Indirect Purchaser Plaintiffs' Claims as to Alleged Conspiracy Directed Towards Finished

25   Products [Dkt. No. 904] (Apr. 22, 2011).  Special Master Legge agreed with defendants as to the

26   remaining DPP CRT Finished Products Conspiracy Claims, and recommended that the Rule 11

27   Motion be granted and the Finished Products conspiracy claims be stricken from DPPs'

28   complaint.  *See* Report and Recommendations on Motions Regarding Finished Products [Dkt. No.

-3-

DEFENDANTS' NOTICE OF MOTION AND MOTION TO ADOPT SPECIAL MASTER'S REPORT AND
RECOMMENDATION REGARDING DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM OF LAW IN SUPPORT THEREOF

3:07-CV-05944 SC
MDL NO. 1917

947] (June 15, 2011) ("Rule 11 Report"), at 11-13.  In the Rule 11 Report, Special Master Legge concluded that "plaintiffs have not demonstrated objectively reasonable evidentiary support for their allegation that there was a conspiracy among the defendants to fix the prices of Finished Products."  *Id.* at 11.  Special Master Legge explicitly recognized that dismissing these claims from the case would have a "material impact on the scope" of this case, such as the definition of who is a direct purchaser, the basis of the damages claimed, and the scope of any classes that might be certified.  *Id.* at 3.  Before this Court could issue a ruling adopting Special Master Legge's Rule 11 Report, DPPs voluntarily stipulated to an Order "withdraw[ing] their CRT Finished Products Conspiracy Claims."  Finished Products Order at 2.[3]

Consequently, this case was narrowed substantially to allege a conspiracy regarding CRTs only, and the "material" standing issue that Special Master Legge identified in his Rule 11 Report—*i.e.*, who is a direct purchaser and who is not—became ripe for resolution.  Defendants submitted a motion for partial summary judgment on December 12, 2011, arguing that certain of the DPP Plaintiffs, those "who merely bought a Finished Product," as opposed to directly purchasing the only product alleged to be price-fixed—a CRT tube—do not have federal antitrust standing as direct purchasers.[4]  DPPs and DAPs opposed Defendants' Partial Motion for Summary Judgment.[5]  Defendants submitted their Reply Brief on March 9, 2012.[6]  And on March 20, 2012, Special Master Legge heard argument.  *See* Mar. 20, 2012 Hearing Transcript (attached as Exh. 1 to Simmons Decl.).

---

[3]     The Direct Action Purchaser Plaintiffs ("DAPs") have also disclaimed any allegation of a finished products conspiracy.  *See* July 17, 2012 Letter from P. Iovieno on behalf of DAPs (attached hereto as Exh. 2 to the July 24, 2012 Declaration of Ian Simmons ("Simmons Decl.")) ("This letter will confirm that the DAPs are not asserting any CRT Finished Products Conspiracy Claims in their current Complaints.").

[4]     *See* Defendants' Joint Motion for Summary Judgment Against Purported Direct Purchaser Plaintiffs Who Did Not Purchase CRTs [Dkt. No. 1013] (Dec. 12, 2011) ("Partial Motion for Summary Judgment") (attached as Exh. 3 to Simmons Decl.), at 1.

[5]     *See* Direct Purchaser Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendants' Motion for Partial Summary Judgment [Dkt. 1245] (filed under seal on February 24, 2012; redacted version filed July 2, 2012) ("DPP Opp'n") (attached as Exh. 5 to Simmons Decl.); and Direct Action Plaintiffs' Memorandum in Support of the Direct Purchaser Plaintiffs' Opposition to Defendants' Motion for Partial Summary Judgment [Dkt. No. 1056] (Feb. 24, 2012) ("DAP Opp'n") (attached as Exh. 6 to Simmons Decl.).

[6]     *See* Defendants' Reply in Support of Motion for Summary Judgment Against Purported Direct Purchaser Plaintiffs Who Did Not Purchase CRTs [Dkt. No. 1083]

DEFENDANTS' NOTICE OF MOTION AND MOTION TO ADOPT SPECIAL MASTER'S REPORT AND
RECOMMENDATION REGARDING DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM OF LAW IN SUPPORT THEREOF

3:07-CV-05944 SC
MDL NO. 1917

1    On May 31, 2012, Special Master Legge recommended that Defendants' summary

2    judgment motion be granted, explaining that "the only accused products are the CRTs"

3    themselves and that the "fact record demonstrates, with no issue of fact, that these plaintiffs did

4    not purchase CRTs."  R&R at 3.  Subsequently, the DPPs and DAPs notified the Court that they

5    intended to object to Special Master Legge's Report.  On June 14, 2012, the Court deferred ruling

6    on the DPPs' and DAPs' stipulation, and ordered all parties that wished to file briefs relating to

7    the Report and Recommendation to submit statements of issues.  *See* Order Requiring Submission

8    of Statement of Issues Related to Special Master's Report and Recommendation Regarding

9    Defendants' Joint Motion for Summary Judgment [Dkt. No. 1230] (June 14, 2012).

10                                       **UNDISPUTED FACTS**

11    It is undisputed that the DPPs no longer allege any agreement to fix the prices of Finished

12    CRT Products, and that the only products alleged to be price-fixed are CRTs themselves.  *See*

13    Finished Products Order.

14    It is undisputed that the following Finished Product Plaintiffs named in the DPP complaint

15    did ***not*** purchase CRTs; rather, they purchased finished products alleged to contain CRTs:

16    - **Arch Electronics, Inc.**   *See* Exh. A to the Declaration of Molly M. Donovan
      ("Donovan Decl."), dated December 12, 2011 (attached as part of Exh. 4 to Simmons
17    Decl.), at 5 (9/24/2010 Letter from G. Rushing to E. Shapland representing that Arch
      Electronics, Inc. did not purchase CRTs).[7]
18

19    - **Crago d/b/a Dash Computers, Inc.**  *See* Exh. B to Donovan Decl. (attached as part of
      Exh. 4 to Simmons Decl.), at 7-8 (Crago D/B/A Dash Computer, Inc.'s Responses to
20    Hitachi America, Ltd.'s First Set of Interrogatories, Resp. to Int. 6 ("Plaintiff responds
      that it did not purchase CRTs (as opposed to CRT Products) during the Relevant
21    Period.")); Exh. A, at 5 (9/24/2010 Letter from G. Rushing to E. Shapland
      representing that Crago D/B/A Dash Computer, Inc. did not purchase CRTs).
22

23    - **Electronic Design Company.**  *See* Exh. C to Donovan Decl. (attached as part of Exh.
      4 to Simmons Decl.), at 11 (Electronic Design Company's Responses to Defendant
24    Samsung SDI Co. Ltd.'s First Set of Interrogatories, Resp. to Int. 12 ("During the
      Relevant Period, Plaintiff did not purchase CRTs")); Exh. A to Donovan Decl. at 5
25    (9/24/2010 Letter from G. Rushing to E. Shapland representing that Electronic Design
      Company did not purchase CRTs).

26

27    [7]    All relevant discovery responses by the DPPs are attached to the Declaration of Molly M.
      Donovan ("Donovan Decl."), dated December 12, 2011 (attached as part of Exh. 4 to Simmons
28    Decl.

-5-

DEFENDANTS' NOTICE OF MOTION AND MOTION TO ADOPT SPECIAL MASTER'S REPORT AND
RECOMMENDATION REGARDING DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM OF LAW IN SUPPORT THEREOF

3:07-CV-05944 SC
MDL NO. 1917

1

2

3

4

- **Meijer, Inc. and Meijer Distribution, Inc.** *See* Exh. D to Donovan Decl. (attached as part of Exh. 4 to Simmons Decl.), at 7-8 (Meijer, Inc.'s and Meijer Distribution, Inc.'s Responses to Hitachi America, Ltd.'s First Set of Interrogatories, Resp. to Int. 6 ("Meijer responds that it has not purchased CRTs")); Exh. A to Donovan Decl. at 5 (9/24/2010 Letter from G. Rushing to E. Shapland representing that Meijer, Inc. and Meijer Distribution, Inc. did not purchase CRTs).

5

6

7

8

- **Nathan Muchnick, Inc.** *See* Exh. E to Donovan Decl. (attached as part of Exh. 4 to Simmons Decl.), at 7-9 (Nathan Muchnick, Inc.'s Responses to Hitachi America, Ltd.'s First Set of Interrogatories, Resp. to Int. 6, 7 ("Plaintiff responds that it purchased CRT Products")); Exh. A to Donovan Decl. at 5 (9/24/2010 Letter from G. Rushing to E. Shapland representing that Nathan Muchnick, Inc. did not purchase CRTs).

9

10

11

- **Orion Home Systems, LLC.** *See* Exh. F to Donovan Decl. (attached as part of Exh. 4 to Simmons Decl.), at 7-8 (Orion Home Systems, LLC's Responses to Hitachi America, Ltd.'s First Set of Interrogatories, Resp. to Int. 6 ("Plaintiff responds that it did not purchase CRTs (as opposed to CRT Products) during the Relevant Period")); Exh. A to Donovan Decl. at 5 (9/24/2010 Letter from G. Rushing to E. Shapland representing that Orion Home Systems, LLC did not purchase CRTs).

12

13

14

15

16

- **Radio & TV Equipment, Inc.** *See* Exh. G to Donovan Decl. (attached as part of Exh. 4 to Simmons Decl.), at 11 (Radio & TV Equipment, Inc.'s Responses to Hitachi America, Ltd.'s First Set of Interrogatories, Resp. to Int. 10 ("Radio & TV Equipment, Inc. did not purchase any CRTs during the RELEVANT PERIOD. It only purchased CRT PRODUCTS.")); Exh. A to Donovan Decl. at 5 (9/24/2010 Letter from G. Rushing to E. Shapland representing that Radio & TV Equipment, Inc. did not purchase CRTs).

17

18

19

- **Royal Data Services, Inc.** *See* Exh. H to Donovan Decl. (attached as part of Exh. 4 to Simmons Decl.), at 7-8 (Royal Data Services, Inc.'s Responses to Hitachi America, Ltd.'s First Set of Interrogatories, Resp. to Int. 6 ("Plaintiff responds that it did not purchase CRTs (as opposed to CRT Products) during the Relevant Period")); Exh. A to Donovan Decl. at 5 (9/24/2010 Letter from G. Rushing to E. Shapland representing that Royal Data Services, Inc. did not purchase CRTs).

20

21

22

23

- **Studio Spectrum, Inc.** *See* Exh. I to Donovan Decl. (attached as part of Exh. 4 to Simmons Decl.), at 7-8 (Studio Spectrum Inc.'s Responses and Objections to Hitachi America, Ltd.'s First Set of Interrogatories, Resp. to Int. 6 ("Plaintiff purchased only CRT Products.")); Exh. A to Donovan Decl. at 5 (9/24/2010 Letter from G. Rushing to E. Shapland representing that Studio Spectrum, Inc. did not purchase CRTs).

24

25

26

27

28

During the hearing before the Special Master on defendants' motion, plaintiffs' counsel conceded that he was "unaware of any facts that would indicate that [the plaintiffs] purchased CRTs," "[a]s opposed to finished products." Exh. 1 to Simmons Decl., at 41:18-19, 21 (Mar. 20, 2012 Hr'g Tr.).

-6-

DEFENDANTS' NOTICE OF MOTION AND MOTION TO ADOPT SPECIAL MASTER'S REPORT AND RECOMMENDATION REGARDING DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT THEREOF

3:07-CV-05944 SC
MDL NO. 1917

## SPECIAL MASTER'S REPORT AND RECOMMENDATION

On May 31, 2012, the Special Master issued his Report and Recommendation that Defendant's Joint Motion for Summary Judgment be granted.  *See* R&R at 3.

The Special Master first observed that, although the original complaint alleged a conspiracy to fix the prices of both CRTs and Finished Products, the allegation of a conspiracy to fix the prices of Finished Products was dropped in the Finished Products Order.  R&R at 4-5. With no claim remaining that the prices of Finished Products were fixed, the Special Master then turned to whether the plaintiffs had purchased the allegedly price-fixed CRTs.  The Special Master determined there it was undisputed that none of the named plaintiffs had purchased CRTs themselves.  *Id.* at 5.

With this pivotal fact established, the Special Master focused on the key question:  "Does a person who never purchased a price-fixed product, but only purchased something which contained a price-fixed product, have standing to sue?"  *Id.* at 6.  The answer was no, based on the Supreme Court's *Illinois Brick* decision and its progeny in the Ninth Circuit.  "The clear rule of *Illinois Brick* is that only 'the overcharged direct purchaser' and 'not others in the chain of manufacture or distribution' is the party who has standing to sue."  *Id.*  This rule "was established in part to avoid the litigation complexities that would otherwise be necessary in making an economic analysis at each level of the manufacture and distribution of a product."  *Id.*  This is a bright-line rule and the Supreme Court has rejected the possibility of any "variations from the *Illinois Brick* rule because of different economic factors or different factual settings."  *Id.* at 6-7 (citing *UtiliCorp*, 497 U.S. at 216-17).

The Special Master then examined Ninth Circuit precedent, concluding that it consistently adheres to the *Illinois Brick* rule.  *Id.* at 8 (discussing *Del. Valley Surgical Supply, Inc. v. Johnson & Johnson*, 523 F.3d 1116, 1118, 1123 (9th Cir. 2008); *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051 (9th Cir. 2008); *Coordinated Pretrial Proceedings in Petroleum Antitrust Litigation*, 691 F.2d 1335, 1338 (9th Cir. 1982)).  Further review of decisions by district courts within the Ninth Circuit reinforced the Special Master's conclusion.  *Id.* at 8-9 (discussing *ATM Fee Antitrust Litigation*, 2010 WL 3701912, at *4 (N.D. Cal. 2010); *Stanislaus Food Products Co. v.*

-7-

DEFENDANTS' NOTICE OF MOTION AND MOTION TO ADOPT SPECIAL MASTER'S REPORT AND
RECOMMENDATION REGARDING DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM OF LAW IN SUPPORT THEREOF

3:07-CV-05944 SC
MDL NO. 1917

1   *USS-POSCO Inds.*, 2010 WL 3521979, at *6, *30 (E.D. Cal. 2010); *Sun Microsystems, Inc. v.*

2   *Hynix*, 608 F. Supp. 2d 1166, 1182 (N.D. Cal. 2009)).

3       The Special Master carefully considered and rejected each of the plaintiffs' arguments.

4   The Special Master first held that the Court's prior ruling in the context of a motion to dismiss,

5   *see In re Cathode Ray Tube (CRT) Antitrust Litig.*, 738 F. Supp. 2d 1011 (N.D. Cal. 2010), was

6   not controlling because it was based on the complaint, not a factual record, and the then-

7   governing complaint included the subsequently withdrawn allegations of a Finished Product

8   conspiracy. *Id.* at 10 (citing 738 F. Supp. 2d at 1023). Next, the Special Master rejected

9   plaintiffs' reliance on Judge Illston's decisions in *In re TFT-LCD (Flat Panel) Antitrust*

10  *Litigation*, No. M 07-1827 SI, 586 F. Supp. 2d 1109 (N.D. Cal. 2008); 2009 WL 533130 (N.D.

11  Cal. Mar. 3, 2009); 2010 WL 1264230 (N.D. Cal. Mar. 28, 2010); 267 F.R.D. 291 (N.D. Cal.

12  2010); and 2011 WL 5357906 (N.D. Cal. Nov. 7, 2011), finding these opinions distinguishable

13  because: (a) Judge Illston did not face the factual scenario found here (where "plaintiffs . . .

14  admittedly did ***not*** purchase ***any*** price-fixed product from anyone"), and (b) Judge Illston relied

15  heavily on two Third Circuit cases that are not the law in the Ninth Circuit, *In re Sugar Industry*

16  *Antitrust Litigation*, 579 F.2d 13 (3rd Cir. 1978), and *In re Linerboard Antitrust Litigation*, 305

17  F.3d 145 (3rd Cir. 2002). *Id.* at 10 (emphasis in original).

18      The Special Master noted that *Sugar* and *Linerboard* "have not been adopted by the Ninth

19  Circuit . . . or by any other circuit," were "contrary to the above-cited Ninth Circuit decisions in

20  *Delaware*, *Kendall*, and *Petroleum*, which decisions have applied the *Illinois Brick* bright-[line]

21  rule," and clashed with the Ninth Circuit's "opposition" in *Delaware Valley* "to creating any new

22  exceptions." *Id.* at 10-11 (citing *Del. Valley*, 523 F.3d at 1122). The Special Master also rejected

23  plaintiffs' argument that *Royal Printing v. Kimberly Clark Corp.*, 621 F.2d 323 (9th Cir. 1980),

24  and *Freeman v. San Diego Association of Realtors*, 322 F.3d 1133 (9th Cir. 2003), compelled

25  denial of Defendants' motion. The Special Master recognized that in *Royal Printing*, "plaintiffs

26  ***did*** in fact make some purchases of the price-fixed products," and the only issue was from whom

27  such purchases were made, while "the plaintiffs here ***never purchased the price-fixed product***

28  from anybody." *Id.* at 10 (citing 621 F.2d at 324) (emphasis in original). Similarly, "*Freeman* is

-8-

DEFENDANTS' NOTICE OF MOTION AND MOTION TO ADOPT SPECIAL MASTER'S REPORT AND
RECOMMENDATION REGARDING DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM OF LAW IN SUPPORT THEREOF

3:07-CV-05944 SC
MDL NO. 1917

1   not applicable . . . for the same reason; that is, plaintiffs [in *Freeman*] did pay [for] the price-fixed

2   services of the Multiple Listing Service." *Id.* (citing 322 F.3d at 1147).

3   Finally, the Special Master rejected plaintiffs' policy argument that if defendants' motion

4   were granted, antitrust enforcement against the alleged conspiracy in this case would be

5   eliminated.  The Special Master recognized that manufacturers who purchased allegedly price-

6   fixed CRTs could still sue, that purchasers of Finished Products likely had state law antitrust

7   claims, and that criminal antitrust investigations have been pursued by the U.S. Department of

8   Justice. *Id.* at 11-12.  Accordingly, the Special Master recommended granting defendants'

9   motion. *Id.* at 12.

10   **LEGAL STANDARD**

11   Rule 56 provides that a "court shall grant summary judgment if the movant shows that

12   there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

13   matter of law." Fed. R. Civ. P. 56(a).  "The substantive law determines which facts are material;

14   only disputes over facts that might affect the outcome of the suit under the governing law

15   properly preclude the entry of summary judgment." *Nat'l Ass'n of Optometrists & Opticians v.*

16   *Harris*, 682 F.3d 1144, 1147 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

17   242, 248 (1986)).  Direct purchaser standing to seek antitrust damages is an issue that is

18   appropriate for summary judgment. *See, e.g.*, *Del. Valley*, 523 F.3d at 1122; *see also ATM Fee*,

19   2012 WL 2855813, at *4 (standing is a question of law for the district court to decide) (internal

20   citations omitted).

21   The Court's June 16, 2008 Order Appointing Special Master [Dkt. No. 302]

22   ("Appointment Order") specifies that "the Court shall review findings of fact made or

23   recommended by Special Master Legge for clear error."  Appointment Order ¶ 18; *accord* Fed. R.

24   Civ. P. 53(f)(3).  Any conclusions of law made or recommended by Special Master Legge are

25   reviewed de novo.  Appointment Order ¶ 18; *accord* Fed. R. Civ. P. 53(f)(4).

26

27

28

DEFENDANTS' NOTICE OF MOTION AND MOTION TO ADOPT SPECIAL MASTER'S REPORT AND
RECOMMENDATION REGARDING DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM OF LAW IN SUPPORT THEREOF

3:07-CV-05944 SC
MDL NO. 1917

1

**ARGUMENT**

2   I.   **THE SPECIAL MASTER CORRECTLY CONCLUDED THAT THE FINISHED PRODUCT PLAINTIFFS ARE NOT DIRECT PURCHASERS**

3

4        A.   **The Plaintiffs That Are the Subject of this Motion Did Not Purchase the Allegedly Price-fixed CRTs.**

5            As noted above, Direct Purchaser Plaintiffs have withdrawn any allegations of a

6   conspiracy to fix the price of finished products, such as TVs and monitors.  *See* R&R at 4-5

7   (citing Finished Products Order).  As a result, "the only products alleged to be price-fixed in this

8   case are the CRTs themselves."  *Id.* at 5.  As noted, the nine Finished Product Plaintiffs who are

9   the subject of this motion each admit in their respective written interrogatory responses and letter

10  from counsel ***that they did not purchase the allegedly price-fixed product***:  Stand-alone CRTs.

11  *See* Undisputed Facts, *supra,* and supporting materials attached to Exh. 4 to Simmons Decl.).

12  Moreover, the Finished Product Plaintiffs "do not contest that record, and do not argue that there

13  is any issue of fact regarding that record, in their opposition to this motion."  R&R at 5.  And, at

14  the oral argument on defendants' motion for summary judgment before Special Master Legge,

15  Finished Product Plaintiffs "admitted the absence of any issue of fact":

16                   **Special Master:** Alright. Now, to start out do you contest that these
                     eight or nine plaintiffs did not purchase a CRT?
17                   **Mr. Lehmann [plaintiffs' counsel]:** Your Honor, I am unaware of
                     any facts that would indicate that they purchased CRTs.
18                   **Special Master:** Okay.
                     **Mr. Lehmann:** As opposed to finished products.
19

20  *Id.* (quoting Mar. 20, 2012 Hr'g Tr. at 41:15-21) (attached hereto as Exhibit 1 to Simmons Decl.).

21  Consequently, Special Master Legge found that "[t]he fact record establishes, without a genuine

22  issue, that each of the nine [Finished Product Plaintiffs] did ***not*** purchase a CRT."  *Id.* at 5

23  (emphasis in original).  Special Master Legge concluded that this was "the ***only*** fact upon which

24  this motion is based, and it is without opposition."  *Id.* (emphasis in original).  Because the factual

25  record underlying Special Masters Legge's recommendations is uncontested by the Finished

26  Product Plaintiffs, the Court should adopt Special Master Legge's finding that the Finished

27  Product Plaintiffs did not purchase the allegedly price-fixed product, CRTs.

28

DEFENDANTS' NOTICE OF MOTION AND MOTION TO ADOPT SPECIAL MASTER'S REPORT AND
RECOMMENDATION REGARDING DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM OF LAW IN SUPPORT THEREOF

3:07-CV-05944 SC
MDL NO. 1917

**B.     The Supreme Court in *Illinois Brick* Set Forth a Straightforward, Bright-line Rule That Only Direct Purchasers of the Allegedly Price-fixed Product Have Standing to Sue for Damages Under Federal Antitrust Law.**

Finished Product Plaintiffs bring their action under § 4 of the Clayton Act, which permits a person who has been "injured in his business or property by reason of anything forbidden in the antitrust laws" to bring a claim for damages in federal court. 15 U.S.C. § 15(a). In order to have a cause of action under § 4 of the Clayton Act, a plaintiffs must be "injured" within the meaning of that section. *See, e.g.*, *ATM Fee*, 2012 WL 2855813, at *5. But who exactly in the chain of distribution is "injured" within the meaning of § 4 of the Clayton Act? The Supreme Court answered that question in *Illinois Brick*, setting forth a straightforward, bright-line rule: Only direct purchasers have standing to sue for damages under that provision. *See Illinois Brick*, 431 U.S. at 729 ("[W]e decline to abandon the construction given § 4 in *Hanover Shoe* that the overcharged direct purchaser, and not others in the chain of manufacture or distribution, is the party 'injured in his business or property' within the meaning of the section . . . .").

As Special Master Legge recognized, the Supreme Court's bright-line rule established in *Illinois Brick* limits "the right to sue to persons **who directly purchased a price-fixed product**," and "not others in the chain of manufacture or distribution" who, to prove damages, would have to demonstrate that the alleged "overcharges" were "passed on" to them in some downstream market. R&R at 6-7 (emphasis added); *see Illinois Brick*, 431 U.S. at 728-29, 745-46 (concluding that the "vigorous private enforcement of the antitrust laws" is best achieved by allowing only direct purchasers of an unlawfully price-fixed product to sue for antitrust damages).

The *Illinois Brick* Court recognized that a clear-cut direct purchaser rule was necessary to avoid the complex and burdensome exercise of litigating "pass-on"—that is, determining which portion of an overcharge on a component, if any, was subsequently reflected in the price of a different product incorporating the component—which the Supreme Court explained would require "additional long and complicated proceedings involving massive evidence and complicated theories." *See Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, 392 U.S. 481, 493 (1968); *Illinois Brick*, 431 U.S. at 732; *see also Royal Printing*, 621 F.2d at 325 n.3 (explaining that the Supreme Court has deemed complexity of proof a more important rationale

-11-

underlying *Hanover Shoe* and *Illinois Brick* than deterrence).  The Supreme Court reasoned that the complexities presented by pass-on analysis—which would involve "attempt[ing] to trace the complex economic adjustments to a change in the cost of a particular factor of production" through multiple tiers of purchasers—would "greatly complicate and reduce the effectiveness of already protracted treble-damages proceedings," and consequently, should be avoided by limiting federal antitrust standing only to direct purchasers of the price-fixed product.  *Illinois Brick*, 431 U.S. at 732 (explaining why the Court's reasoning in *Hanover Shoe*, which prevented defendants from utilizing a pass-on defense against direct purchasers in a federal action, would "appl[y] with no less force to the assertion of pass-on theories by plaintiffs").

In 1990, the Supreme Court in *Kansas v. UtiliCorp United, Inc.*, 497 U.S. 199, 216 (1990) reaffirmed the unambiguous bright-line rule prohibiting damages claims by persons who did not directly purchase a price-fixed product.  *See* R&R at 7 (citing *UtiliCorp*).  *UtiliCorp* also makes clear that "ample justification exists . . . not to 'carve out exceptions to the [direct purchaser] rule.'"  497 U.S. at 216 (declining to create exception to *Illinois Brick* even where direct purchaser almost certainly passed on the entire cost of an alleged overcharge to the indirect purchaser plaintiffs).  Doing otherwise, would "undermine the [direct purchaser] rule" articulated in *Illinois Brick*.  *Id.*  As Special Master Legge correctly observed, "*Illinois Brick* is still the law and the policy of the United States Supreme Court" and it is a bright-line rule that "applies even if otherwise meritorious claims are barred by the 'direct purchasers only' rule."  R&R at 8.

C.     **The Bright-line Rule Set Forth in *Illinois Brick* and *UltiliCorp* Has Been Consistently Applied by the Ninth Circuit.**

So too has the Ninth Circuit faithfully adhered to *Illinois Brick*'s direct purchaser rule.  As Special Master Legge recognized, the appellate and district court decisions of the Ninth Circuit demonstrate this Circuit's "faithful adherence to *Illinois Brick*, and resistance to, or outright rejection of, any new exception to that decision."  *Id.* at 9.  Indeed, the United States Court of Appeals for the Ninth Circuit has explicitly embraced *Illinois Brick*'s direct purchaser rule as the law of this Circuit:

-12-

DEFENDANTS' NOTICE OF MOTION AND MOTION TO ADOPT SPECIAL MASTER'S REPORT AND RECOMMENDATION REGARDING DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT THEREOF

3:07-CV-05944 SC
MDL NO. 1917

1

2

3

4

5

6

> Quite simply, ***we are bound by the sensible and straightforward rule set forth by Illinois Brick*** . . . .  Supreme Court jurisprudence has been neither vague nor ambiguous in establishing the direct purchaser rule. ***The Supreme Court intended to make a bright line rule for identifying the proper plaintiff when an antitrust violation occurs in a multi-tiered distribution system***. *See Illinois Brick*, 431 U.S. at 735-36.   The Court has explicitly rejected attempts to create exceptions to that rule, even when the considerations in a particular market may undermine some of the reasoning used by the *Illinois Brick* Court. *See UtiliCorp*, 497 U.S. at 211.

7

8

9

10

11

12

13

14

*Del. Valley*, 523 F.3d at 1123 (emphasis added).  In causes of action seeking damages under federal antitrust laws, "[c]ourts are not permitted to determine 'what portion of [an] illegal overcharge was 'passed on' . . . and what part was absorbed by the middlemen' because such an analysis would 'involve all the evidentiary and economic complexities that *Illinois Brick* clearly forbade.'"  *Kendall*, 518 F.3d at 1049.  As a result, the Ninth Circuit has repeatedly held that "'indirect purchasers' may not recover antitrust damages" under federal law.  *Id*. at 1048 (citing *Illinois Brick*, 431 U.S. at 736).

15

16

17

18

19

20

21

22

23

Were there any doubt as to the continued viability of or adherence to *Illinois Brick*, the Ninth Circuit put those doubts to rest just two weeks ago when it handed down its decision in *ATM Fee*.  There the court once again reaffirmed that "a bright line rule emerged from *Illinois Brick*:  only direct purchasers have standing under § 4 of the Clayton Act to seek damages for antitrust violations."  *ATM Fee*, 2012 WL 2855813. at *5 (quoting *Del. Valley*, 523 F.3d at 1120-21)).  And the Ninth Circuit went further, solidifying what it means to be a direct purchaser, and expressly rejecting any attempt to carve out new exceptions to the *Illinois Brick* direct purchaser rule.  *Id.* at *8, 11-12, 12 n.7.  Consequently, a long line of decisions, including the recent *ATM Fee* decision, confirm Special Master Legge's conclusion:  *Illinois Brick's* bright-line rule is—and has been—in full effect in the Ninth Circuit.

24

25

> **D.   Finished Product Plaintiffs Are Indirect Purchasers Under the Law of this Circuit.**

26

27

28

Having determined that *Illinois Brick* is still the law of this Circuit, Special Master Legge next sought to examine whether Finished Product Plaintiffs—who did not purchase the allegedly price-fixed product, CRTs—have standing to sue as direct purchasers under *Illinois Brick*.

-13-

DEFENDANTS' NOTICE OF MOTION AND MOTION TO ADOPT SPECIAL MASTER'S REPORT AND RECOMMENDATION REGARDING DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT THEREOF

3:07-CV-05944 SC
MDL NO. 1917

1    Special Master Legge concluded that "because plaintiffs did not purchase a price-fixed product,"

2    the Finished Product Plaintiffs "are at best indirect purchasers of a price-fixed product" whose

3    claims are barred under *Illinois Brick*.  R&R at 12.  The Special Master supported his conclusion,

4    invoking a long line of precedent from and within the Ninth Circuit, including *Delaware Valley*,

5    523 F.3d 1116, *Kendall*, 518 F.3d 1042, and *In re ATM Fee Antitrust Litigation*, 2010 WL

6    3701912.  *See* R&R at 8-9.

7         The Special Master's conclusion was prescient—only a few weeks after the Special

8    Master's report, the Ninth Circuit's decision in *ATM Fee*, affirming a district court's ruling that

9    plaintiffs who did not pay the price-fixed fee were not direct purchasers, emphatically reiterated

10   *Illinois Brick*'s bright-line rule forbidding those who have not purchased a price-fixed product

11   from maintaining federal antitrust standing.  *See* 2012 WL 2855813, at *8, 11-12.  The

12   application of the *Illinois Brick* rule in *ATM Fee*, and the line of Ninth Circuit precedent on which

13   it drew, foreclose any notion that Plaintiffs are direct purchasers.  Indeed, *ATM Fee* confirms

14   Special Master Legge's finding that the Finished Product Plaintiffs are not direct purchasers

15   because they did not purchase the allegedly price-fixed product:  "*Illinois Brick* rejected

16   exceptions for markups by middlemen or ***when the price-fixed good is a vital input to a larger***

17   ***product***."  2012 WL 2855813, at *10 (emphasis added).

18         In *ATM Fee*, the Ninth Circuit assessed the federal antitrust claims of plaintiffs who were

19   automatic teller machine (or "ATM") cardholders and engaged in what are called "foreign ATM

20   transactions," the term for a cardholder's use of an ATM owned by an entity other than the bank

21   that issued the card.  *See* 2012 WL 2855813, at *1.  Two of the fees generated by an ATM

22   transaction were at issue in *ATM Fee*.  First, a cardholder must pay the card-issuing bank a

23   *foreign ATM fee* when he uses a foreign ATM, which is set by the card-issuing bank.  *Id.*  Second,

24   the card-issuing bank must pay the ATM owner an *interchange fee*, which is set by the ATM

25   network (the entity that connects ATM owners with card-issuing banks).  *Id.*  Plaintiffs sued

26   defendants—an ATM network named STAR and several banks who were members of it—

27   alleging horizontal price-fixing of STAR's interchange fees.  Plaintiffs "alleged that [d]efendants

28   colluded to fix the STAR interchange fee, which is then ***passed on*** to [p]laintiffs as part of the

-14-

1   foreign ATM fee." *Id.* at \*2 (emphasis added).  Affirming the district court's grant of summary

2   judgment, the Ninth Circuit concluded with little difficulty that plaintiffs were not direct

3   purchasers under *Illinois Brick*.  Critical to the court's holding was the plaintiffs' "conce[ssion]

4   that they have never directly paid [the] interchange fees" that the they allege were fixed.  *Id.* at

5   \*6.  Rather, the interchange fees were paid by banks, who then allegedly passed-on the

6   overcharge in the form of an entirely different fee (so-called "foreign ATM fees").  *See id.*

7   Just like the plaintiffs in *ATM Fee*, the Finished Product Plaintiffs do not allege that the

8   Defendants conspired to fix the price of the product Finished Product Plaintiffs actually

9   purchased, *i.e.*, a finished product such as a TV or computer monitor.  Instead, and also like the

10  *ATM Fee* plaintiffs, the Finished Product Plaintiffs allege that the Defendants **passed on** the cost

11  of price-fixed products—CRTs—through the finished product.  The Ninth Circuit concluded that

12  the *ATM Fee* plaintiffs were indirect purchasers because "they do not directly pay the fixed

13  [price] . . . ." *Id.*  Likewise, the Finished Product Plaintiffs are indirect purchasers because they

14  did not pay the only price they allege was fixed—the price of CRTs.

15  *ATM Fee* is fully consistent with other Ninth Circuit precedent.  Facing similar

16  circumstances in *Kendall*, the Ninth Circuit concluded that certain plaintiffs were not direct

17  purchasers.  *See* R&R at 8 (discussing *Kendall*).  In *Kendall*, merchants who allowed their

18  customers to pay through credit cards sued Visa (among others), alleging that Visa conspired to

19  fix the so-called "interchange fee" that it charges a customer's bank when a customer pays a

20  merchant's bill using a credit card.  *See* 518 F.3d at 1045-46, 1049.  The merchants claimed that

21  they were somehow directly assessed the interchange fee because that fee is part of what makes

22  up a different "merchant discount fee" that the merchants' banks charge the merchants.  But just

23  as Special Master Legge concluded that the Finished Product Plaintiffs here are not direct

24  purchasers because they did not purchase the allegedly price-fixed product, CRTs, the court in

25  *Kendall* recognized that "with respect to the interchange fee, [the merchants] run squarely into the

26  *Illinois Brick* wall." *Id.* at 1049.

27  Similarly, in *Stanislaus*, the court ruled that a plaintiff was not a direct purchaser under

28  *Illinois Brick* because "the products purchased by plaintiffs must be the subject of the price fixing

-15-

DEFENDANTS' NOTICE OF MOTION AND MOTION TO ADOPT SPECIAL MASTER'S REPORT AND
RECOMMENDATION REGARDING DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM OF LAW IN SUPPORT THEREOF

3:07-CV-05944 SC
MDL NO. 1917

1    conspiracy." 2010 WL 3521979, at *8.  Like the Finished Product Plaintiffs here, the plaintiff in

2    *Stanislaus* alleged a conspiracy to fix only the price of a **component** (tin plate) of the finished

3    product it purchased (tin cans).  *Stanislaus*, 2010 WL 3521979, at *8.  Notably, the court reached

4    that conclusion even though the plaintiff alleged that the tin-can manufacturer from whom it

5    purchased the tin cans was a co-conspirator.  *See id.* at *7-8.

6         Also buttressing the Special Master's conclusion that the Finished Product Plaintiffs are

7    indirect purchasers is the decision in *Sun Microsystems v. Hynix Semiconductor Inc.*, 608 F. Supp.

8    2d 1166 (N.D. Cal. 2009).  There, a computer manufacturer alleged antitrust violations against

9    manufacturers of dynamic random access memory (or "DRAM").  Various "external

10   manufacturers" purchased DRAM from those manufacturers, incorporated the DRAM into

11   computer systems, and sold those systems to the plaintiff computer manufacturer.  *See* 608 F.

12   Supp. 2d at 1178.  The court reasoned that such circumstances are "directly in line with *Delaware*

13   *Valley*, and compel[] the conclusion that it is the external manufacturers, and not the plaintiff,

14   who must be deemed the 'immediate purchasers' of DRAM."  *Id.* at 1179.

15        The Ninth Circuit's decision in *Delaware Valley*, which Special Master Legge cited

16   extensively in his Report, *see* R&R at 8, further confirms that Finished Product Plaintiffs lack

17   standing as direct purchasers.  Recognizing that it was "bound by the sensible and straightforward

18   rule set forth by *Illinois Brick*," the court explained because the plaintiff did not purchase a price-

19   fixed product directly from the seller that sold to it, it lacked standing under *Illinois Brick*.  *Id.* at

20   1122.  Notably, the court concluded that the plaintiff, Bamberg, was not a direct purchaser from

21   defendant Johnson & Johnson ("J&J") even though the products at issue were not changed in any

22   way from the time they left J&J to the time they left the middleman-distributor O&M, and even

23   though the plaintiff had a contract with J&J setting the price of those very products.[8]  Here, this

24   ────────────────

25   [8]      There, a hospital, Bamberg, alleged violations of federal antitrust law based on J&J's use
     of bundled discounts applied to medical products it manufactured.  *See* 523 F.3d at 1118-19.
     Although Bamberg entered into a contract with J&J to set the prices for the products it would
26   purchase, Bamberg's "contract with J&J did not result in the procurement of any goods directly
     from J&J" and Bamberg "did not pay J&J directly for any goods, and J&J did not ship any goods
27   directly to Bamberg."  *Id.* at 1119.  Rather, the hospital actually purchased the products from a
     distributor, O&M, which charged a markup on the price the hospital negotiated with J&J, the
28   pharmaceutical company.  *Id.*

DEFENDANTS' NOTICE OF MOTION AND MOTION TO ADOPT SPECIAL MASTER'S REPORT AND
RECOMMENDATION REGARDING DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM OF LAW IN SUPPORT THEREOF

3:07-CV-05944 SC
MDL NO. 1917

1  case is even more clear cut than *Delaware Valley* because the products have been changed (the

2  CRT was incorporated into a finished product).

3        In this Circuit, in order to be "direct purchasers" of a price-fixed good, "the price paid by

4  plaintiffs must be fixed"—not some other price further up the chain of distribution.  *ATM Fee*,

5  2012 WL 2855813, at *8, 11 (holding that "the price paid by a plaintiff must be set by the

6  conspiracy and not merely affected by the setting of another price").  These cases confirm what

7  Special Master Legge already has concluded: Finished Product Plaintiffs "are at best indirect

8  purchasers of a price-fixed product" whose claims are barred under *Illinois Brick*.  R&R at 12.

9  **II.   THERE ARE NO EXCEPTIONS TO *ILLINOIS BRICK* IN THIS CIRCUIT FOR**

10 **PLAINTIFFS WHO DID NOT PURCHASE THE PRICE-FIXED PRODUCTS AND THE COURT SHOULD REJECT PLAINTIFFS' ATTEMPT TO CREATE A NEW *ILLINOIS BRICK* EXCEPTION.**

11

12       Because the Finished Product Plaintiffs are indirect purchasers, they lack standing to bring

13 a claim under § 4 of the Clayton Act unless they fit into one of three expressly limited exceptions

14 to *Illinois Brick*.  As Special Master Legge properly concluded, they do not.  Finished Products

15 Plaintiffs' attempt to create a new exception conflicts directly with the law of the Ninth Circuit.

16 *See ATM Fee*, 2012 WL 2855813, at *6 ("The possibility of allowing an exception, even in rather

17 meritorious circumstances, would undermine the rule.") (quoting *UtiliCorp*, 497 U.S. at 216).

18 The few "limited exceptions" are:  (1) the "cost-plus exception," which recognizes standing for

19 indirect purchasers when a preexisting cost-plus contract with the direct purchaser exists, and is

20 not alleged here; (2) the "co-conspirator exception," which under certain circumstances allows an

21 indirect purchaser to sue after establishing a price-fixing conspiracy between the manufacturer

22 and the middleman, *see Arizona v. Shamrock Foods, Co.*, 729 F.2d 1208, 1211 (9th Cir. 1984);

23 and (3) the "control exception" applied in *Royal Printing*, 621 F.2d 323, which under certain

24 circumstances allows an indirect purchaser to sue "where the direct purchaser is a division or

25 subsidiary of a co-conspirator," *id*. at 326.  The Ninth Circuit has squarely rejected attempts to

26 broaden the co-conspirator exception and the control exception in the precise manner the Finished

27 Products Plaintiffs are attempting to do here.  Accordingly, Special Master Legge was correct in

28 rejecting the Plaintiffs' arguments.

DEFENDANTS' NOTICE OF MOTION AND MOTION TO ADOPT SPECIAL MASTER'S REPORT AND
RECOMMENDATION REGARDING DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM OF LAW IN SUPPORT THEREOF

3:07-CV-05944 SC
MDL NO. 1917

1

      A.       **Plaintiffs Do Not Meet Any of the Recognized, Exclusive Exceptions to *Illinois Brick*.**

2

3      The Supreme Court has warned against attempts to circumvent *Illinois Brick* in the

4  manner that the Finished Products Plaintiffs urge the Court to do here.  *See UtiliCorp*, 497 U.S. at

5  216.  The Ninth Circuit has taken that admonition to heart, making clear that "restrict[ing] *Illinois*

6  *Brick*'s influence by allowing an exception when the direct purchaser conspires with the seller,

7  even though the price illegally set is an upstream cost that is passed on to the plaintiffs" would

8  "contradict[] the Supreme Court's admonition 'not to carve out exceptions to the direct purchaser

9  rule for particular types of markets.'"  *ATM Fee*, 2012 WL 2855813, at *12 n.7 (citing *UtiliCorp*,

10  497 U.S. at 216) (internal quotations omitted).  In doing so, the Ninth Circuit has now expressly

11  disapproved of the Third Circuit cases which the Finished Product Plaintiffs invoke in support of

12  their argument that they are entitled to an exception to *Illinois Brick*.  *Id.*; *see also infra* at 21-22.

13      The Finished Product Plaintiffs allege that they are direct purchasers because they

14  purchased products containing CRTs from a co-conspirator.  But they are incorrect for the same

15  reason the plaintiffs in *ATM Fee* were incorrect.  To invoke the co-conspirator exception, Ninth

16  Circuit precedent is unequivocal that a plaintiff must allege that the co-conspirators fixed the

17  price "actually paid" by the plaintiffs—"and not an upstream price that was then passed on" to

18  plaintiffs.  *ATM Fee*, 2012 WL 2855813, at *12 (citing *Shamrock Foods*, 729 F.2d at 1214).[9]  No

19  shades of gray are contemplated under this exception:  The plaintiffs either paid the fixed price of

20  the price-fixed product or they did not.  *Id.* at *8 ("As we emphasized in *Kendall*, the price paid

21  by plaintiffs ***must be fixed*.**" (citing *Kendall*, 518 F.3d at 1049 (emphasis added))).  As noted

22  above, the *ATM Fee* plaintiffs admitted that they did not pay the price-fixed fee ("interchange

23  fees" paid by banks), but instead paid a downstream fee (so-called "foreign ATM fees") that they

24  alleged incorporated a portion of the overcharge.  *Id*. at *6.  The Court held that they lacked

25

26

---

[9]     The Ninth Circuit echoed the *ATM Fee* district court's observation that the co-conspirator exception is not really an exception at all:  "If the direct purchaser conspires to fix the price paid by the plaintiffs, then the plaintiffs pay the fixed price directly and are not indirect purchasers (*i.e.* there is no pass-on theory involved)."  *ATM Fee*, 2012 WL 2855813, at *7.

-18-

DEFENDANTS' NOTICE OF MOTION AND MOTION TO ADOPT SPECIAL MASTER'S REPORT AND RECOMMENDATION REGARDING DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT THEREOF

3:07-CV-05944 SC
MDL NO. 1917

1   standing under *Illinois Brick* because they were indirect payers of the price-fixed fee.  *ATM Fee*,

2   2012 WL 2855813, at *3, 12, 15.

3          The Finished Products Plaintiffs here have admitted that the price they paid was not the

4   one fixed, but rather that the allegedly price-fixed CRTs had an impact on the price of the

5   finished products they purchased.  *See* Exh. J to Donovan Decl. (attached as part of Exh. 4 to

6   Simmons Decl.) (Tr. of Mot. Hr'g at 85-86; 90 (May 26, 2011) (admitting the need to prove pass-

7   on))); *see also* Finished Products Order at 2 ("[T]he issue of the possible impact or effect of the

8   alleged fixing of prices of CRTs on the prices of Finished Products shall remain in the case.").

9   Given that this fact is undisputed, *ATM Fee* permits only one possible outcome:  Dismissing the

10  Finished Products Plaintiffs' claims.  *See ATM Fee*, 2012 WL 2855813, at *10 (observing that the

11  Supreme Court has "expressly rejected" the argument that "a price-fixed good used in the

12  ultimate product should allow indirect purchasers to sue, because the price ultimately paid by

13  Plaintiffs includes the fixed costs").

14         *In re Optical Disk Drive Antitrust Litigation* ("*ODD*"), No. 3:10-md-02143 RS, 2011 WL

15  3894376 (N.D. Cal. Aug. 3, 2011), also cited by Plaintiffs, is similarly distinguishable.  Although

16  Plaintiffs point to language that "plaintiffs in this case do not have a standing problem with

17  respect to any ODD devices they may have purchased directly from defendants," DPP Opp'n at

18  15-16 n.8; DAP Opp'n at 13-14 (citing *ODD*, 2011 WL 3894376, at *7), they fail to recognize the

19  fact that the plaintiffs in *ODD*, unlike here, allege a conspiracy to fix the prices of the ***finished***

20  ***ODD devices*** that the plaintiffs allegedly purchased.  *See ODD*, 2011 WL 3894376, at *2 ("[T]he

21  direct purchasers allege a conspiracy to fix prices of both ODDs (as they define them) ***and*** 'ODD

22  Products.'" (emphasis in original)).  Further, Plaintiffs ignore the portion of the *ODD* analysis

23  that is relevant here:  Absent an alleged conspiracy to price-fix finished products, to establish

24  direct purchaser standing plaintiffs must allege that they directly "purchased actual ODDs" and

25  not finished "ODD Products."  *Id.* at *5-6.

26         Nor do the Finished Product Plaintiffs' claims implicate the control exception under *Royal*

27  *Printing*.  That exception may apply "where the direct purchaser is a division or subsidiary of a

28

-19-

DEFENDANTS' NOTICE OF MOTION AND MOTION TO ADOPT SPECIAL MASTER'S REPORT AND
RECOMMENDATION REGARDING DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM OF LAW IN SUPPORT THEREOF

3:07-CV-05944 SC
MDL NO. 1917

1  co-conspirator." *Royal Printing*, 621 F.2d at 326.  However, Finished Products Plaintiffs cannot

2  avail themselves of *Royal Printing*'s control exception for two reasons:

3        **First**, *Royal Printing* does not apply in this case because, as Special Master Legge

4  recognized, the Finished Products Plaintiffs here "did ***not*** purchase ***any*** price-fixed product from

5  anyone."  R&R at 10 (emphasis in original).  In *Royal Printing*, the Ninth Circuit allowed its

6  claims to go forward under the control exception, but there the plaintiff did in fact purchase the

7  price-fixed product (paper).  *See Royal Printing*, 621 F.2d at 326-27.  Because Plaintiffs have

8  withdrawn all allegations of a conspiracy involving the products that they did purchase, Finished

9  Products, their attempt to analogize this case to *Royal Printing* falls flat.

10        **Second**, the exception articulated in *Royal Printing* has been construed narrowly by the

11  Ninth Circuit, and only applies in the most extreme of circumstances:  Where applying *Illinois*

12  *Brick* would "***eliminate*** the threat of private enforcement," closing  off "***every avenue*** for private

13  enforcement of the antitrust laws."  *ATM Fee*, 2012 WL 2855813, at *12 (quoting *Royal Printing*,

14  621 F.2d at 326 n.7, 327) (emphasis added).  In *Royal Printing*, there was no other entity in a

15  position to sue if Royal Printing's claims were dismissed on summary judgment.  *Royal Printing*,

16  621 F.2d 327.  *Royal Printing*'s circumstances are simply not present here:  Defendants' motion

17  for summary judgment is directed at nine of the thirteen named Direct Purchaser Plaintiffs.[10]

18  Moreover, at the time *Royal Printing* was decided in 1980, the law of the Ninth Circuit did not

19  permit indirect purchasers any remedy at all.  *See In re Cement and Concrete Antitrust Litig.*, 817

20  F.2d 1435, 1447 (9th Cir. 1987).  In 1989, the Supreme Court reversed the Ninth Circuit's

21  *Cement* decision, holding that *Illinois Brick* does not preclude indirect purchasers from suing

---

[10]     Plaintiffs invoke *Royal Printing* by falsely asserting that they—nine of the thirteen named
class representatives for the putative direct purchaser plaintiffs class—are the "only" parties
capable of bringing claims to enforce antitrust laws.  *See* DPP Opp'n at 10-11.  But that assertion
is plainly false:  The claims of four other named class members in the putative direct purchaser
class, who did purchase CRTs directly from the Defendants, will remain in this case if the Court
adopts Special Master Legge's Report and Recommendation to grant the Defendants' motion for
summary judgment.  As Special Master Legge noted and is discussed further below, there are also
other finished products manufacturers who have an incentive to sue the Defendants for the
purchase of CRTs.  *See* R&R at 11.  Furthermore, the purchasers of finished products are likely to
be "indirect purchasers who can maintain causes of action" under state law.  *Id.*; *see also ARC*,
490 U.S. at 102.

DEFENDANTS' NOTICE OF MOTION AND MOTION TO ADOPT SPECIAL MASTER'S REPORT AND
RECOMMENDATION REGARDING DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM OF LAW IN SUPPORT THEREOF

3:07-CV-05944 SC
MDL NO. 1917

1   under state indirect purchaser statutes.  *California v. ARC Am. Corp.*, 490 U.S. 93, 102 (1989).

2   Thus, the underlying rationale of *Royal Printing* no longer carries the same force as it once did, as

3   *ARC*—by providing a remedy for direct purchasers whose claims are dismissed under *Illinois*

4   *Brick* (*i.e.*, state-law indirect purchaser actions)—obviates the need to find an exception to *Illinois*

5   *Brick* in order to allow an additional "avenue" of enforcement.[11]

6          Consequently, Plaintiffs interpretation of *Royal Printing*, even if it were correct (which it

7   is not), cannot survive the Supreme Court's 1990 *UtiliCorp* decision, because their reading would

8   impermissibly expand the scope of the control exception beyond the narrow bounds already

9   recognized by the Ninth Circuit.  *See UtiliCorp*, 497 U.S. at 217 ("we think it an unwarranted and

10  counterproductive exercise to litigate a series of exceptions [to *Illinois Brick*'s direct purchaser

11  rule].  Having stated the rule in *Hanover Shoe*, and adhered to it in *Illinois Brick*, we stand by our

12  interpretation of § 4").  Thus, the Plaintiffs' attempt to expand the limited control exception to

13  their claims runs headlong into the bright-line rule of *Illinois Brick*.

14          **B.     Adopting a New Exception, or Expanding an Existing Exception, Would
              Directly Contravene the Supreme Court's Admonition in *UtiliCorp*.**

15

16          Special Master Legge recognized that the Supreme Court in *UtiliCorp* reiterated that

17  *Illinois Brick* is a bright-line rule to which additional exceptions should not be made.  R&R at 7.

18  In *UtiliCorp*, the Supreme Court declined to carve out exceptions to the *Illinois Brick* rule

19  proposed by the States of Kansas and Missouri, seeking to recover damages on behalf of

20  consumers who had purchased gas at inflated prices as a result of a conspiracy.  497 U.S. at 204-

21  06.  According to the Supreme Court, *Illinois Brick* was intended to "eliminate the complications

22  of apportioning overcharges between direct and indirect purchasers," and "[t]he possibility of

23  ─────────────────────
[11]      Furthermore, since the enactment of the Class Action Fairness Act ("CAFA"), indirect
24  purchaser class action plaintiffs have federal jurisdiction to file claims in federal court.  *See* 28
    U.S.C. § 1332(d); *see also United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. &*
25  *Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*, 602 F.3d 1087, 1090-91 (9th Cir.
    2010) ("To achieve its purposes, CAFA provides expanded original diversity jurisdiction for class
26  actions meeting the amount in controversy and minimal diversity and numerosity requirements
    set forth in 28 U.S.C. § 1332(d)(2)."); *In re Graphics Processing Units Antitrust Litig.*, 253
27  F.R.D. 478, 500 (N.D. Cal. 2008) ("[T]he indirect-purchaser class actions that have been heard in
    federal courts . . . have increased in number since the passage of the Class Action Fairness Act in
28  2005.").

1    allowing an exception, even in rather meritorious circumstances, would undermine the rule."

2    *UtiliCorp.*, 497 U.S. at 208, 216.

3            Plaintiffs rely on two Third Circuit cases, *Sugar*, 579 F.2d 13, and *Linerboard*, 305 F.3d

4    145, in support of their position that *Illinois Brick* exceptions should be expanded or created to fit

5    this case.  Yet the Ninth Circuit has now expressly rejected the approach taken by the Third

6    Circuit because it "contradicts the Supreme Court's admonition not to carve out exceptions to the

7    direct purchaser rule for particular types of markets."  *ATM Fee*, 2012 WL 2855813, at *12 n.7

8    (citing *UtiliCorp*, 497 U.S. at 216) (internal quotations omitted) (declining to follow *Sugar*).

9    Special Master Legge was therefore correct in concluding that *Linerboard* and *Sugar* are "not the

10   law of the Ninth Circuit" and that the Court should reject the Plaintiffs' attempt to expand and

11   create new *Illinois Brick* exceptions.  R&R at 11.

12           The Ninth Circuit further noted its disapproval of the *TFT-LCD* decision granting class

13   certification for direct purchasers, which relied on *Sugar* and *Linerboard* to hold that a purchaser

14   of a finished TFT-LCD product was a direct purchaser, "even though the alleged price-fixing

15   conspiracy existed only with regard to TFT-LCD panels, and not finished products."  *ATM Fee*,

16   2012 WL 2855813, at *12, n.7 (citing *TFT-LCD*, 267 F.R.D. at 306-07) (internal quotations

17   omitted).  The Ninth Circuit flatly rejected the approach taken in that case.  *Id*.  The Court should

18   reject the Plaintiffs' attempt to apply the same flawed approach here.

19           The Ninth Circuit has consistently heeded the Supreme Court's warning not to create new

20   exceptions to the *Illinois Brick* rule.  *See Del. Valley*, 523 F.3d at 1122 ("Supreme Court

21   jurisprudence has been neither vague nor ambiguous in establishing the direct purchaser rule . . .

22   [and has] explicitly rejected attempts to create exceptions to that rule, even when the

23   considerations in a particular market may undermine some of the reasoning used by the *Illinois*

24   *Brick* Court."); *Kendall*, 518 F.3d at 1051 (affirming the dismissal of an antitrust complaint

25   because of the "indirect purchaser rule in *Illinois Brick*").  The Ninth Circuit's decision in *ATM*

26   *Fee* adheres to this long-standing rule and, in so doing, validates Special Master Legge's decision.

27           Plaintiffs invoke *Freeman*, 322 F.3d 1133, to create a new exception to *Illinois Brick*, but

28   the Ninth Circuit has now made clear that *Freeman* "did not create a new variation of the *Royal*

-22-

DEFENDANTS' NOTICE OF MOTION AND MOTION TO ADOPT SPECIAL MASTER'S REPORT AND
RECOMMENDATION REGARDING DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM OF LAW IN SUPPORT THEREOF

3:07-CV-05944 SC
MDL NO. 1917

1  *Printing* exception because [it] relied on ownership and control to find standing." *ATM Fee*, 2012

2  WL 2855813, at *13.  In *Freeman*, real estate agents purchased a subscription from a corporation

3  wholly owned by local real estate associations, which paid an allegedly price-fixed fee to the

4  associations for the services they provided to the agent subscribers.  As Special Master Legge

5  recognized, *Freeman* "is not applicable" here because it did not contemplate indirect purchases of

6  finished products that are not subject to price-fixing.  R&R at 10 (plaintiffs in that case "did pay

7  the price-fixed services of the Multiple Listing Service").

8      *ATM Fee* confirms that *Illinois Brick* forecloses any claim by a purchaser of a downstream

9  good based on alleged price-fixing of an input of that downstream good.  *ATM Fee* could not

10  have been more clear or categorical:  "*Illinois Brick* rejected exceptions for markups by

11  middlemen or when the price-fixed good ***is a vital input to a larger product***."  2012 WL

12  2855813, at *10 (emphasis added).  Here, we are dealing with the precise situation of alleged

13  price-fixed goods (CRTs) that are vital inputs to larger products (TVs and computer monitors).

14  Whatever viability the control exception may have in other contexts, *ATM Fee* expressly confirms

15  that *Illinois Brick* "rejected exceptions . . . when the price-fixed good is a vital input to a larger

16  product," as it is here.  *Id.*

17  **C.    The Special Master Correctly Concluded That Declining to Create a New
            Exception to *Illinois Brick* Will Not Fatally Undermine the Deterrence
18          Function of Antitrust Laws.**

19      Despite the Finished Products Plaintiffs' contention that dismissing their claims would

20  fatally undermine the deterrence function of antitrust laws, Special Master Legge properly

21  observed that this "specter" was overblown.  R&R at 11.  There are currently thirteen named

22  representatives in the putative direct purchaser plaintiff class action, four of whom are not the

23  objects of this Motion and can continue to litigate their claims.  Additionally, Special Master

24  Legge noted that there are a large number of finished products manufacturers (i.e., makers of TVs

25  and computer monitors) who have an incentive to bring a direct suit against the Defendants,

26  without the need to deviate from the *Illinois Brick* rule.  *See* R&R at 11 (rejecting the conjecture

27  that "such an extensive conspiracy as the one alleged in this case, with its potential financial

28

DEFENDANTS' NOTICE OF MOTION AND MOTION TO ADOPT SPECIAL MASTER'S REPORT AND
RECOMMENDATION REGARDING DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM OF LAW IN SUPPORT THEREOF

3:07-CV-05944 SC
MDL NO. 1917

1    consequences, would escape prosecution by companies or persons who were indeed direct

2    purchasers of the price-fixed CRTs").

3          Moreover, since the Supreme Court decided *ARC*, the purchasers of finished products can

4    seek remedies as indirect purchasers under various state-law causes of action.  *See* 490 U.S. at

5    102.  Indeed, as Special Master Legge observed, a related indirect purchaser class action already

6    is pending.  *See* R&R at 11.  Additionally, various state attorneys general are pursuing

7    investigations into the alleged conspiracy at issue, or have filed their own actions on behalf of

8    their states and residents.  Finally, a criminal investigation of certain Defendants in this case by

9    the Antitrust Division of the Department of Justice has been active since 2007.  Importantly, the

10   criminal investigation relates only to certain CRTs, not finished products containing CRTs.

11   These undisputed facts demonstrate that the Finished Products Plaintiffs' claims are not necessary

12   to give effect to the antitrust laws.

13                                    **CONCLUSION**

14         For the foregoing reasons, Special Master Legge's May 31 Report and Recommendation

15   should be adopted in full, and summary judgment entered against the Finished Product Plaintiffs.

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' NOTICE OF MOTION AND MOTION TO ADOPT SPECIAL MASTER'S REPORT AND
RECOMMENDATION REGARDING DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM OF LAW IN SUPPORT THEREOF

3:07-CV-05944 SC
MDL NO. 1917

1    Dated:  July 24, 2012                    Respectfully Submitted,

2
                                              By:____/s/ Ian Simmons_____
3                                             IAN SIMMONS (*pro hac vice*)
                                              Email: isimmons@omm.com
4                                             BENJAMIN G. BRADSHAW (SBN 189925)
                                              Email: bbradshaw@omm.com
5                                             KEVIN D. FEDER (SBN 252347)
                                              Email: kfeder@omm.com
6                                             **O'MELVENY & MYERS LLP**
                                              1625 Eye Street, NW
7                                             Washington, DC 20006
                                              Telephone: (202) 383-5300
8                                             Facsimile: (202) 383-5414

9                                             *Attorneys for Defendants Samsung Electronics*
                                              *Co., Ltd. and Samsung Electronics America,*
10                                            *Inc.*

11                                            MORGAN, LEWIS & BOCKIUS LLP

12
                                              By:____/s/ Kent M. Roger_____
13                                            KENT M. ROGER (SBN 95987)
                                              E-mail: kroger@morganlewis.com
14                                            MICHELLE PARK CHIU (SBN 248421)
                                              E-mail: mchiu@morganlewis.com
15                                            **MORGAN, LEWIS & BOCKIUS LLP**
                                              One Market, Spear Street Tower
16                                            San Francisco, California 94105-1126
                                              Telephone: (415) 442-1000
17                                            Facsimile: (415) 442-1001

18                                            J. CLAYTON EVERETT, JR. (pro hac vice)
                                              E-mail: jeverett@morganlewis.com
19                                            SCOTT A. STEMPEL (pro hac vice)
                                              E-mail: sstempel@morganlewis.com
20                                            **MORGAN, LEWIS & BOCKIUS LLP**
                                              111 Pennsylvania Avenue, NW
21                                            Washington, DC 20004
                                              Telephone: (202) 739-3000
22                                            Facsimile: (202) 739-3001

23                                            *Attorneys for Defendants Hitachi, Ltd., Hitachi*
                                              *Displays, Ltd. (n/k/a Japan Display East, Inc.),*
24                                            *Hitachi Asia, Ltd., Hitachi America, Ltd., and*
                                              *Hitachi Electronic Devices (USA), Inc.*

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ARNOLD & PORTER LLP

By:    /s/ Sharon D. Mayo
SHARON D. MAYO (SBN 150469)
sharon.mayo@aporter.com
Three Embarcadero Center, 7th Floor
San Francisco, California  94111-4024
Telephone:  (415) 471-3100
Facsimile:  (415) 471-3400

DOUGLAS L. WALD (*Pro Hac Vice*)
douglas.wald@aporter.com
WILSON D. MUDGE (*Pro Hac Vice*)
wilson.mudge@aporter.com
YONGSANG KIM (*Pro Hac Vice*)
yongsang.kim@aporter.com
**ARNOLD & PORTER LLP**
555 Twelfth Street, NW
Washington, DC  20004
Telephone:  (202) 942-5000
Facsimile:  (202) 942-5999

*Attorneys for Defendants LG Electronics, Inc.;*
*LG Electronics USA, Inc.; and LG Electronics*
*Taiwan Taipei Co., Ltd.*

SHEPPARD MULLIN RICHTER &
HAMPTON

By:    /s/ Gary L. Halling
GARY L. HALLING (SBN 66087)
E-mail: ghalling@sheppardmullin.com
JAMES L. MCGINNIS (SBN 95788)
E-mail: jmcginnis@sheppardmullin.com
MICHAEL W. SCARBOROUGH, (SBN 203524)
E-mail: mscarborough@sheppardmullin.com
**SHEPPARD MULLIN RICHTER &**
**HAMPTON**
Four Embarcadero Center, 17th Floor
San Francisco, California  94111
Telephone:  (415) 434-9100
Facsimile:  (415) 434-3947

*Attorneys for Defendants Samsung SDI*
*America, Inc.; Samsung SDI Co., Ltd.;*
*Samsung SDI (Malaysia) SDN. BHD.; Samsung*
*SDI Mexico S.A. DE C.V.; Samsung SDI Brasil*
*Ltda.; Shenzen Samsung SDI Co., Ltd. and*
*Tianjin Samsung SDI Co., Ltd.*

-26-

DEFENDANTS' NOTICE OF MOTION AND MOTION TO ADOPT SPECIAL MASTER'S REPORT AND
RECOMMENDATION REGARDING DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM OF LAW IN SUPPORT THEREOF

3:07-CV-05944 SC
MDL NO. 1917

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

WHITE & CASE LLP

By:     /s/ Christopher M. Curran
CHRISTOPHER M. CURRAN (pro hac vice)
E-mail: ccurran@whitecase.com
GEORGE L. PAUL (pro hac vice)
E-mail: gpaul@whitecase.com
LUCIUS B. LAU (pro hac vice)
E-mail: alau@whitecase.com
**WHITE & CASE LLP**
701 Thirteenth Street, N.W.
Washington, DC  20005
Telephone: (202) 626-3600
Facsimile: (202) 639-9355

*Attorneys for Defendants Toshiba Corporation,*
*Toshiba America, Inc., Toshiba America*
*Information Systems, Inc., Toshiba America*
*Consumer Products, L.L.C., and Toshiba*
*America Electronic Components, Inc.*

-27-

DEFENDANTS' NOTICE OF MOTION AND MOTION TO ADOPT SPECIAL MASTER'S REPORT AND
RECOMMENDATION REGARDING DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM OF LAW IN SUPPORT THEREOF

3:07-CV-05944 SC
MDL NO. 1917

1

## <u>CERTIFICATE OF SERVICE</u>

2        I hereby certify that on July 24, 2012, I electronically filed Defendants' Joint

3  Notice of Motion and Motion to Adopt Special Master's Report and Recommendation Regarding

4  Defendants' Joint Motion for Summary Judgment and Memorandum of Law in Support Thereof

5  with the Clerk of the Court using the CM/ECF system, which will send notification of such filing

6  to the counsel of record in this matter who are registered on the CM/ECF system.

7

8                                                         /s/ Ian Simmons
                                                          Ian Simmons
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28