# EXHIBIT

# 5

Guido Saveri (22349); guido@saveri.com
R. Alexander Saveri (173102); rick@saveri.com
Geoffrey C. Rushing (126910); grushing@saveri.com
Cadio Zirpoli (179108); cadio@saveri.com
SAVERI & SAVERI, INC.
706 Sansome Street
San Francisco, CA 94111
Telephone:   (415) 217-6810
Facsimile:   (415) 217-6813

*Interim Lead Counsel for the Direct Purchaser Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | MASTER FILE NO. 07-cv-5944 SC<br><br>MDL NO. 1917 |
| This Document Relates to:<br><br>ALL DIRECT PURCHASER CLASS ACTIONS | **DIRECT PURCHASER PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>The Honorable Charles A. Legge<br>Court:   JAMS<br>Date:    March 20, 2012<br>Time:    10:00 a.m. |

# REDACTED VERSION

837411.1

# TABLE OF CONTENTS

I. INTRODUCTION. ................................................................................................................... 1

II. FACTUAL BACKGROUND. .................................................................................................. 3

    A. Engaged In A Decade-Long Conspiracy To Fix Prices Of CRTs. ................................... 3

    B. Defendants' CRT And Finished Products Arms Are Vertically Integrated. ................... 4

    C. Defendants' Finished Products Affiliates Consumed The Vast Majority Of The Price-Fixed CRTs. ............................................................................................................ 4

III. PROCEDURAL HISTORY ..................................................................................................... 5

IV. ARGUMENT. .......................................................................................................................... 7

    A. The Rigorous Standards For Summary Judgment In This Circuit. .................................. 7

    B. *Illinois Brick* Does Not Bar Claims Of Plaintiffs Who Purchased Finished Products Directly From Defendants .................................................................................. 8

        1. *Illinois Brick* Precludes Only Indirect Purchasers From Bringing A Claim For Damages Under The Federal Antitrust Laws .............................................................. 8

        2. Defendants' Motion Should Be Rejected Under *Sugar*, *Linerboard* And Their Progeny, Including Cases From This District ............................................... 10

        3. Defendants' Cases Are Distinguishable. .................................................................. 14

    C. Defendants' Motion Should Be Denied Because The Conspirators Owned Or Controlled Their Finished Products Affiliates. ............................................................... 16

        1. This Motion Is Governed By *Royal Printing* And *Freeman* .................................. 16

        2. Defendants' Criticism Of The *LCD* Decisions Is Unfounded .............................. 19

        3. *Printing* Applies For Sales By The Finished Products Defendants. ..................... 20

    D. Plaintiffs Have Standing Under The Co-Conspirator Exception. .................................. 21

    E. Defendants' Motion Is Procedurally Deficient. ............................................................. 21

    F. Defendants' Motion Is Premature. .................................................................................. 23

V. CONCLUSION. ..................................................................................................................... 24

# TABLE OF AUTHORITIES

### Federal Cases

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) .................................................................................................................8

*Arizona v. Shamrock Foods Co.*,
   729 F.2d 1208 (9th Cir. 1984) ............................................................................................2, 21

*Beltz Travel Serv., Inc. v. Int'l Air Transport Ass'n*,
   620 F.2d 1360 (9th Cir. 1980) ............................................................................................8, 15

*British Airways Bd. v. Boeing Co.*,
   585 F.2d 946 (9th Cir. 1978) ....................................................................................................8

*Chevron Corp. v. Pennzoil Co.*,
   974 F.2d 1156 (9th Cir. 1992) ..................................................................................................8

*Continental Ore Co. v. Union Carbide & Carbon Corp.*,
   370 U.S. 690 (1962) .................................................................................................................8

*Delaware Valley Surgical Supply, Inc. v. Johnson & Johnson*,
   523 F.3d 1116 (9th Cir. 2008) ....................................................................................14, 21, 23

*Fontana Aviation, Inc. v. Cessna Aircraft Co.*,
   617 F.2d 478 (7th Cir.1980) ...................................................................................................21

*Freeman v. San Diego Ass'n of Realtors*,
   322 F.3d 1133 (9th Cir. 2003), ........................................................................................ passim

*Hanover Shoe, Inc. v. United Shoe Mach. Corp.*,
   392 U.S. 481 (1968) .................................................................................................................9

*HJB, Inc. v. AmeriSource Corp..*,
   528 U.S. 1181 (2000) .............................................................................................................21

*Illinois Brick Co. v. Illinois*,
   431 U.S. 720 (1977) ........................................................................................................ passim

*In re ATM Fee Antitrust Litig.*,
   No. C 04-02676 CRB, 2010 WL 3701912 (N.D. Cal. Sept. 16, 2010) ..................................21

*In re Brand Name Prescription Drugs Antitrust Litig.*,
   123 F.3d 599 (7th Cir. 1997)......................................................................................20, 21

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
   738 F. Supp.2d 1011 (N.D. Cal. 2010) ............................................................... passim

*In re Chicken Antitrust Litig.*,
   560 F. Supp. 943 (N.D. Ga. 1979).................................................................................9

*In re Coordinated Pretrial Proceedings in Petroleum Prod. Antitrust Litig.*,
   691 F.2d 1335 (9th Cir. 1982)......................................................................................16

*In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*,
   497 F. Supp. 218 (C.D. Cal., 1980) .............................................................................20

*In re Flat Glass Antitrust Litig.*,
   191 F.R.D. 472 (W.D. Pa. 1999).............................................................................11, 15

*In re Linerboard Antitrust Litig.*,
   305 F.3d 145 (3d Cir. 2002)..............................................................................1, 12, 13

*In re Mid-Atlantic Toyota Antitrust Litig.*,
   516 F. Supp. 1287 (D. Md. 1981) ................................................................................21

*In re Midwest Milk Monopolization Litig.*,
   730 F.2d 528 (8th Cir. 1984),.......................................................................................11

*In re New Mexico Natural Gas Antitrust Litig.*,
   MDL Dkt. No. 403, 1982 WL 1827 (D.N.M. Jan. 26, 1982) ......................................21

*In re Nifedipine Antitrust Litig.*,
   335 F. Supp. 2d 6 (D.D.C. 2004) .................................................................................21

*In re Optical Disk Drive Antitrust Litigation*,
   No. 3:10-md-2143, 2011 WL 3894376 (N.D. Cal. Aug. 3, 2011).........................15, 16

*In re Refrigerant Compressors Antitrust Litig.*,
   795 F. Supp. 2d 647 (E.D. Mich. 2011).................................................................15, 19

*In re Sugar Industry Antitrust Litig.*,,
   579 F.2d 13 (3d Cir. 1978)................................................................................. passim

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    586 F. Supp. 2d 1109 (N.D. Cal. 2008) ................................................................7, 13

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    267 F.R.D. 291 (N.D. Cal. 2010) ..................................................................5, 7, 14, 18

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    No. M 07-1827 SI, 2009 WL 533130 (N.D. Cal. Mar. 3, 2009) ...............................7

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    No. M 07-1827 SI, 2010 WL 1264230 (N.D. Cal. Mar. 28, 2010) ......................7, 19

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    No. M 07-1827 SI, 2011 WL 5357906 (N.D. Cal. Nov. 7, 2011) .................7, 10, 19

*Jewish Hosp. Ass'n of Louisville, Ky., Inc. v. Stewart Mech. Enters., Inc.*,
    628 F.2d 971 (6th Cir. 1980) .....................................................................................11

*Kansas v. UtiliCorp United, Inc.*,
    497 U.S. 199 (1990) .......................................................................................11, 12, 17

*Loeb Indus., Inc. v. Sumitomo Corp.*,
    306 F.3d 469, 482 (7th Cir. 2001) ...............................................................................9

*Nissan Fire & Marine Ins. Co. v. Fritz Cos.*,
    210 F.3d 1099 (9th Cir. 2000) ..............................................................................22, 23

*Paper Sys., Inc. v. Nippon Paper Indus. Co., Ltd.*,
    281 F.3d 629 (7th Cir. 2002) ..................................................................................9, 18

*Reiter v. Sonotone Corp.*,
    486 F. Supp. 115 (D. Minn. 1980) .............................................................................21

*Rezner v. Bayerische Hypo-Und Vereinsbank AG*,
    630 F.3d 866 (9th Cir. 2010) .......................................................................................8

*Royal Printing Co. v. Kimberly-Clark Corp.*,
    621 F.2d 323 (9th Cir. 1980) ............................................................................. passim

*Stanislaus Food Prods. Co. v. USS-POSCO Indus.*, No. CV F,
    09-0560 LJO SMS, 2010 WL 3521979 (E.D. Cal. Sept. 3, 2010) ....................14, 15

*Sun Microsystems Inc. v. Hynix Semiconductor Inc.*,
　　608 F. Supp. 2d 1166 (N.D. Cal. 2009) ..................................................................................20

*Technical Learning Collective, Inc. v. Daimler-Benz Aktiengesellschaft, No.*,
　　N-77-1443, 1980 WL 1943 (D. Md. Aug. 28, 1980) ..............................................................21

<u>Federal Rules</u>

Fed. R. Civ. P. 11 ........................................................................................................................5, 6

Fed. R. Civ. P. 56(a) .........................................................................................................................8

Fed. R.Civ. P. 56(d) ....................................................................................................2, 8, 23, 24

## I. INTRODUCTION.

Defendants move for partial summary judgment against certain Direct Purchaser Plaintiffs ("Plaintiffs") on the ground that they bought televisions or computer monitors ("Finished Products") containing price-fixed cathode ray tubes ("CRTs") from Defendants, rather than bare CRTs. Defendants assert that such purchasers are indirect and that Plaintiffs lack standing to raise damages claims pursuant to *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977) ("*Illinois Brick*").[1] Defendants' motion is without merit, because Plaintiffs' purchases of Finished Products are direct under *In re Sugar Industry Antitrust Litig.*, 579 F.2d 13 (3d Cir. 1978) ("*Sugar*"), *In re Linerboard Antitrust Litig.*, 305 F.3d 145 (3d Cir. 2002) ("*Linerboard*"), *Royal Printing Co. v. Kimberly-Clark Corp.*, 621 F.2d 323 (9th Cir. 1980) ("*Royal Printing*"), and *Freeman v. San Diego Ass'n of Realtors*, 322 F.3d 1133 (9th Cir. 2003), *cert. denied*, 540 U.S. 940 (2003) ("*Freeman*").

*Sugar* and *Linerboard* hold that plaintiffs who purchased goods from manufacturers (or their affiliates) who fixed the price of a component of those goods have standing as direct purchasers under the federal antitrust laws. Judge Conti followed these principles in denying Defendants' motions to dismiss: "Furthermore, courts have found antitrust standing where plaintiffs purchased downstream goods from manufacturers who made, and allegedly fixed the price of, a component of those goods." *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 738 F. Supp.2d 1011, 1023 (N.D. Cal. 2010) ("*CRT*") (citing *Linerboard*, 305 F.3d at 159–60).

Defendants' argument is in conflict with the purpose of *Illinois Brick*, which was meant to increase the effectiveness of private antitrust enforcement, not shield wrongdoers from antitrust

---

[1] "Defendants' Joint Motion for Summary Judgment Against Purported Direct Purchaser Plaintiffs Who Did Not Purchase CRTs And Memorandum Of Points And Authorities In Support," p. 1 (Dec. 12, 2011) (Dkt. No. 1013) ("Def. Mem."), seeks dismissal of the claims of ten named Plaintiffs who purchased Finished Products: Arch Electronics, Inc.; Crago, Inc. (d/b/a Dash Computers, Inc.); Electronic Design Co.; Meijer, Inc. and Meijer Distribution, Inc.; Nathan Muchnick, Inc.; Orion Home Systems, LLC; Radio & TV Equipment, Inc.; Royal Data Services, Inc.; and Studio Spectrum, Inc. *Id.* at 12. No motion is directed at the following Plaintiffs: Hawel A. Hawel (d/b/a City Electronics.; Paula Call (d/b/a Rancho Bernardo TV): Princeton Display Technologies, Inc.; and Wettstein & Sons, Inc. (d/b/a Wettstein's). Because the motion does not affect the claims of four named Plaintiffs who purchased CRTs, it will not dispose of this case.

1  liability. Because ▮▮▮▮▮ of the CRTs subject to Defendants' conspiracy were "sold" for
2  incorporation into Finished Products either internally (*i.e.*, within a defendant corporate family) or
3  to other conspirators, the rule Defendants propose would insulate them from liability for fixing
4  prices of billions of dollars of CRTs. In other words, Defendants' interpretation of *Illinois Brick*
5  "would leave a gaping hole in the administration of the antitrust laws. It would allow the price-
6  fixer of a basic commodity to escape the reach of a treble-damage penalty simply by incorporating
7  the tainted element into another product." *Sugar*, 579 F.2d at 17–18.

8      Moreover, the Ninth Circuit recognizes that *Illinois Brick* does not bar suit where, as here,
9  "the direct purchaser is a division or subsidiary of a co-conspirator," *Royal Printing*, 621 F.2d at
10 326, or "there is no realistic possibility that the direct purchaser will sue its supplier over the
11 antitrust violation," *Freeman*, 322 F.3d at 1145–46. *Royal Printing* eliminates any complexities of
12 proof associated with a pass-on analysis by allowing the purchaser to recover the entire overcharge
13 resulting from the price-fixing conspiracy. 621 F.2d at 327. A direct purchaser can recover all
14 overcharges on a price-fixed product, whether sold alone, incorporated into another product, or
15 sold through an affiliate of the conspirator.

16     Defendants' motion also fails for several other reasons. First, *Illinois Brick* does not apply
17 where the intermediary seller from whom the plaintiff bought is itself part of the claimed price-
18 fixing conspiracy. *See Arizona v. Shamrock Foods Co.*, 729 F.2d 1208, 1211–12 (9th Cir. 1984)
19 ("*Shamrock*"). The evidence will show that the Defendants that sold Finished Products were also
20 part of the CRT conspiracy.[2] Second, Defendants fail to carry their burden of production on
21 material disputed issues of fact for which they have not presented any evidentiary support.
22 Finally, the motion should be denied as premature. Discovery is far from complete on matters
23 necessary to Plaintiffs' opposition, as described in detail in the accompanying "Declaration of R.
24 Alexander Saveri" ("Saveri Decl.") submitted pursuant to Fed. R.Civ. P. 56(d).

---

[2] In addition, Defendants are not entitled to a complete dismissal of all of the claims of the ten Plaintiffs at issue because they can pursue claims for injunctive relief, as Judge Conti has found. *CRT*, 738 F. Supp. 2d at 1024.

837411.1     2
Direct Purchaser Plaintiffs' MPA in Opposition to Defendants' Motion for Partial Summary Judgment
MDL No. 1917; Master File No. 07-cv-5944 SC

## II.  FACTUAL BACKGROUND

### A.  Defendants Engaged In A Decade-Long Conspiracy To Fix Prices Of CRTs

This class action arises out of a conspiracy among the major manufacturers of CRTs to fix prices and restrict output of CRTs. The conspiracy occurred between 1995 and 2007, and involved at a minimum the CRT manufacturing arms of Samsung, LG Electronics, Philips, Chunghwa, Toshiba, Matsushita/Panasonic, Hitachi, Orion, Irico, Thai-CRT, and their subsidiaries, affiliates, and joint ventures with other manufacturers.

Discovery is in its early stages. Defendants recently produced millions of pages of documents, most of which require translation from foreign languages. No depositions have been taken. Nonetheless, the evidence analyzed to date reveals that members of the cartel held approximately ███████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████████. Chunghwa and other participants memorialized cartel meetings in written reports. Saveri Decl., ¶ 6, 55, 61, 72, 83–84, 93, 109.

The conspirators furthered their cartel with hundreds of bilateral meetings. In recent interrogatory responses, Defendants acknowledge that they routinely ████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

█████████████████████████████████████. Saveri Decl., ¶ 19 & Exh. 23.[3]  Similarly,

---
[3] ████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
(footnote continued)

1 ████████████████████████████████████████████████
2 ████████████████████████████████████████████████
3 ███████████████████████. *Id.*, ¶ 24 & Exh. 26, at pp. 25, 49.
4        The conspirators knew their conduct was unlawful. For example, the agenda topics for a
5 ████████████████████████████████████████ Saveri
6 Decl., ¶ 7 (emphasis added), Exh. 16 at CHU00660727. On February 10, 2009, C.Y. Lin,
7 Chunghwa's former Chairman and CEO, was indicted. *Id.*, ¶ 8. In announcing the indictment, the
8 Department of Justice ("DOJ") stated, "This conspiracy harmed countless Americans who
9 purchased computers and televisions using cathode ray tubes sold at fixed prices." *Id.*, ¶ 8. Five
10 other individuals employed by various Defendants (Alex Yeh, Simon Lee, Alex Yang, Jae-Sik
11 Kim, and Tony Cheng) were indicted as well. *Id.*, ¶ 9 & Exhs. 19–21. On March 18, 2011,
12 Samsung SDI pled guilty to participating in a conspiracy "to suppress and eliminate competition
13 by fixing prices, reducing output and allocating market shares" of color display tubes and was
14 fined $32 million. *Id.*, ¶ 10. Its guilty plea noted that the DOJ was not seeking restitution and that
15 victims of the conspiracy could seek compensation through this litigation, "which [would]
16 potentially provide for a recovery of a multiple of actual damages . . . ." *Id.*, ¶ 10 & Exh. 22, at p.
17 4.

      **B.**    **Defendants' CRT And Finished Products Arms Are Vertically Integrated**

       The record is undisputed that CRT manufacturers also manufactured Finished Products during the class period. *See Id.*, ¶ 44–46, 56, 62. While several Defendants eventually moved their CRT businesses to joint ventures or affiliates, the evidence shows that they maintained the conspiracy and acted as a single unit. *Id.*, ¶ 44–46, 56, 62, 68, 75, 81, 88, 90–91. The record, though incomplete, also shows that many Defendants were organized into vertically-integrated corporate families with common ownership. *Id.*; *see also id.* ¶¶ 43, 59–63, 96–108, 112–14.

      **C.**    **Defendants' Finished Products Affiliates Consumed The Vast Majority Of The Price-Fixed CRTs**

27 ████████████████████████████████████████████████ *Id.*, ¶ 20 & Exh. 23.
28

837411.1      4
Direct Purchaser Plaintiffs' MPA in Opposition to Defendants' Motion for Partial Summary Judgment
MDL No. 1917; Master File No. 07-cv-5944 SC

CRTs have no independent utility and are not generally available. Instead, they are incorporated into Finished Products as discrete components.[4] *See* Saveri Decl., ¶ 49. CRTs were the largest single cost component of the televisions and monitors Defendants sold, generally comprising approximately ▬ of the cost of the Finished Products. *See* Saveri Decl., ¶ 48. CRTs underwent no substantial transformation when Defendants incorporated them into their Finished Products. To the contrary, they remained largely unchanged. *See id.*, ¶ 49. Critically, the evidence will show that ▬ of CRTs the conspirators manufactured were sold to their subsidiaries, affiliates or other co-conspirators. *Id.*, ¶ 46. If Defendants prevail on this motion, they will have succeeded in evading antitrust liability on sales of billions of dollars of CRTs they either transferred internally or sold to their co-conspirators for incorporation into televisions or monitors that Plaintiffs purchased directly.

## III. PROCEDURAL HISTORY.

On March 16, 2009, Direct Purchaser Plaintiffs filed a Consolidated Amended Complaint ("Complaint") alleging that Defendants engaged in a unitary conspiracy to fix prices of CRTs and Finished Products. (Dkt. No. 436.) On February 5, 2010, the Special Master recommended that the District Court deny Defendants' motions to dismiss. "Report, Recommendations and Tentative Rulings Regarding Defendants' Motions to Dismiss" (Dkt. No. 597) ("Report"). On March 30, 2010, the District Court denied Defendants' motions to dismiss, specifically rejecting the standing argument Defendants reiterate here. *In re CRT*, 738 F. Supp. 2d at 1023.

On March 21, 2011, certain Defendants moved pursuant to Fed. R. Civ. P. 11 to strike Plaintiffs' allegations concerning a conspiracy to fix prices of Finished Products. At oral

---

[4] As Judge Illston explained in certifying a class of purchasers of finished products containing TFT-LCD panels, which have similar properties to CRTs: "TFT-LCD panels have no independent utility, but have value only as components of other products. When a TFT-LCD panel is incorporated into a finished product, the panel is not modified, and remains a discrete, physical object within the finished product." *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 291, 296 (N.D. Cal. 2010) ("*LCDs II*"), *review denied*, Nos. 10-8088 & 10-8089 (9th Cir. June 14, 2010).

argument, Defendants conceded that the *LCD* litigation provided the appropriate template for litigating these antitrust claims. In *LCD*, the plaintiffs alleged that many of the same defendants being sued here conspired to fix prices of component parts (LCD screens), and that the conspiracy had an impact on the prices of finished products containing those parts (televisions, monitors and notebook computers). The plaintiffs, purchasers of components and finished products, sued the component manufacturers and their finished product selling affiliates, and as described in detail below, Judge Illston consistently held that their claims were not barred by *Illinois Brick*.

At the Rule 11 hearing in this matter, defense counsel's argument rested on the fact that Plaintiffs had alleged a broader conspiracy than in *LCD*:

> In *LCD* they argued impact, okay, and they argued that under the *Sugar Linerboard* cases they have standing to sue for that. Okay.
>
> ***If they were doing that here, I wouldn't have this motion. Okay. So they should be doing, asserting what they asserted in LCD.*** That's why I am stunned that they are talking about LCD so much, because that's exactly what they are not doing here.

Transcript of Hearing of May 26, 2011 at 110–11 (emphasis added). On June 15, 2011, the Special Master recommended that the District Court grant the motion. Dkt. No. 947. Prior to a hearing on Plaintiffs' objection to the Special Master's recommendation, the parties stipulated that "the allegations of the Direct CAC purporting to allege a conspiracy encompassing Finished Products are stricken from the Direct CAC, provided, however, that the issue of the possible impact or effect of the alleged fixing of prices of CRTs on the prices of Finished Products shall remain in the case." "Stipulation And Order Concerning Pending Motion Re: Finished Products," p. 2 (Aug. 26, 2011) (Dkt. No. 996) ("Stipulation"). The District Court entered the Stipulation on August 26, 2011.

Defendants' assertion that the Stipulation precludes claims by direct purchasers of Finished Products is erroneous, as the Stipulation expressly preserves claims based on the "impact or effect of the alleged fixing of prices of the CRTs on the prices of Finished Products . . . ." Stipulation, p. 3. Plaintiffs no longer contend that there was a conspiracy involving Finished Products. Plaintiffs do, however, continue to contend, as they have from the outset of this case, that there was a CRTs

837411.1

6

Direct Purchaser Plaintiffs' MPA in Opposition to Defendants' Motion for Partial Summary Judgment
MDL No. 1917; Master File No. 07-cv-5944 SC

conspiracy that impacted the prices of Finished Products sold by Defendants. The operative allegations of this case now adhere to the template established in *LCD*. It is noteworthy that Judge Illston rejected the same arguments that Defendants raise here in no less than five separate decisions, that were premised on either *Sugar/Linerboard* or *Royal Printing/Freeman*:

- *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1118–19 (N.D. Cal. 2008) ("*LCDs I*") (denying motions to dismiss claims of finished products purchasers on antitrust standing grounds);

- *LCDs II*, 267 F.R.D. at 306–07 (certifying class of finished products purchasers over objections concerning antitrust standing);

- *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI, 2011 WL 5357906 at *2 (N.D. Cal. Nov. 7, 2011) ("*LCDs III*") (denying motion for partial summary judgment, and finding that purchasers of finished products from Toshiba America had antitrust standing);

- *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI, 2009 WL 533130 at *2 (N.D. Cal. Mar. 3, 2009) ("*LCDs IV*") (denying Tatung Co. of America's ("Tatung") motion to dismiss claims of finished products purchasers on antitrust standing grounds); and

- *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI, 2010 WL 1264230 at *1–2 (N.D. Cal. Mar. 28, 2010) ("*LCDs V*") (denying Tatung's motion for reconsideration of decision finding finished products purchasers has antitrust standing).

Defendants have long contended that Plaintiffs should modify their Finished Products allegations to conform to *LCDs*. Now that Plaintiffs have done so, Defendants assert that the opinions in *LCDs* allowing finished products claims to proceed should be ignored and summary judgment should be granted. Defendants cannot have it both ways; a grant of summary judgment here would be inconsistent with the precedents in this Circuit and would be reversible error.

## IV. ARGUMENT.

### A. The Rigorous Standards For Summary Judgment In This Circuit.

A motion for summary judgment may not be granted unless the moving party shows both: (1) that there is no genuine issue as to any material fact; and (2) that it is entitled to judgment in its

837411.1

7

Direct Purchaser Plaintiffs' MPA in Opposition to Defendants' Motion for Partial Summary Judgment
MDL No. 1917; Master File No. 07-cv-5944 SC