# EXHIBIT

# 7

ALDO A. BADINI (257086)
DEWEY & LEBOEUF LLP
Post Montgomery Center
One Montgomery Street, Suite 3500
San Francisco, CA 94104
Telephone: (415) 951-1120
Facsimile: (415) 951-1100
Email: abadini@dl.com

JEFFREY L. KESSLER (*Admitted Pro Hac Vice*)
A. PAUL VICTOR (*Admitted Pro Hac Vice*)
MOLLY M. DONOVAN (*Admitted Pro Hac Vice*)
DEWEY & LEBOEUF LLP
1301 Avenue of the Americas
New York, NY 10019
Telephone: (212) 259-8000
Facsimile: (212) 259-7013
Email: jkessler@dl.com

STEVEN A. REISS (*Admitted Pro Hac Vice*)
DAVID L. YOHAI (*Admitted Pro Hac Vice*)
ADAM C. HEMLOCK (*pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153-0119
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Email: steven.reiss@weil.com

*Attorneys for Defendants Panasonic Corporation of North America, MT Picture Display Co., Ltd.,
and Panasonic Corporation (f/k/a Matsushita Electric Industrial Co., Ltd.)*

Additional Moving Defendants and Counsel Listed on Signature Pages

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Case No. 07-5944 SC<br>MDL No. 1917 |
| This Document Relates to:<br><br>DIRECT PURCHASER ACTIONS | **DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AGAINST PURPORTED DIRECT PURCHASER PLAINTIFFS WHO DID NOT PURCHASE CRTS**<br><br>Date:   March 20, 2012, 9:00 a.m.<br>Place: JAMS Resolution Center<br>Special Master: Hon. Charles A. Legge |

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................1

ARGUMENT.........................................................................................................................4

    A.    Plaintiffs Do Not Deny That *Illinois Brick* Bars All Pass-On Claims .......................4

    B.    There Is No Exception To *Illinois Brick* In This Circuit For Plaintiffs Who
        Did Not Purchase The Price-Fixed Product ..............................................................9

    C.    Plaintiffs Do Not Meet Any Of The Limited Exceptions To *Illinois Brick*
        That Are Recognized In This Circuit .....................................................................12

    D.    Plaintiffs Have Failed To Carry Their Burden Under Rule 56(d)...........................14

CONCLUSION.....................................................................................................................15

DEFENDANTS' REPLY I/S/O SUMMARY JUDGMENT                   Case No. 07-5944 SC
AGAINST PURPORTED DPPs WHO DID NOT PURCHASE CRTs         MDL NO. 1917

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Arnold v. Evans,*
   No. C 08-1889 CW PR, 2011 WL 738360 (N.D. Cal. Feb. 22, 2011) ...................................14

*Associated Gen. Contractors of Cal. v. California State Council of Carpenters,*
   459 U.S. 519 (1983).....................................................................................................9

*Aydin Corp. v. Varian Assocs., Inc.,*
   No. C-95-20100 RPA, 1995 WL 230674 (N.D. Cal. Apr. 11, 1995) .........................................1

*Beltz Travel Serv., Inc. v. Int'l Air Transp. Ass'n,*
   620 F.2d 1360 (9th Cir. 1992) ....................................................................................4

*California v. Campbell,*
   138 F.3d 772 (9th Cir. 1998) .....................................................................................14

*California v. Infineon Techs. AG,*
   No. C 06-4333 (PJH), 2008 WL 4155665 (N.D. Cal. Sept. 5, 2008).........................................9

*Copperweld v. Independence Tube Corp.,*
   467 U.S. 752 (1984)....................................................................................................7

*Delaware Valley Surgical Supply Inc. v. Johnson & Johnson,*
   523 F.3d 1116 (9th Cir. 2008) ........................................................................... *passim*

*F.T.C. v. Mylan Labs., Inc.,*
   62 F. Supp. 2d 25 (D.D.C. 1999)..................................................................................5

*Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.,*
   525 F.3d 822 (9th Cir. 2008) ....................................................................................14

*Freeman v. San Diego Ass'n of Realtors,*
   322 F.3d 1133 (9th Cir. 2003)… ...................................................................3, 12, 13

*Gas-A-Tron of Ariz. v. Am. Oil Co.,*
   No. CIV 73-191-TUC-WCF, 1977 WL 1519 (D. Ariz. Dec. 7, 1977).................................6, 8

*Hanover Shoe, Inc. v. United Shoe Mach. Corp.,*
   392 U.S. 481 (1968)..........................................................................................*passim*

*Illinois Brick Co. v. Illinois,*
   431 U.S. 720 (1977)..........................................................................................*passim*

*In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.,*
   691 F.2d 1335 (9th Cir. 1982) ....................................................................................4

*In re Linerboard Antitrust Litig.,*
   203 F.R.D. 197 (E.D. Pa. 2001).................................................................................10

*In re Linerboard Antitrust Litig.,*
   305 F.3d 145 (3d Cir. 2002)..................................................................................*passim*

- ii -

*In re Live Concert Antitrust Litig.,*
   247 F.R.D. 98 (C.D. Cal. 2007)...............................................................................................9

*In re Napster, Inc. Copyright Litig.,*
   Nos. C MDL-00-1369 MHP, C 04-1671 MHP, 2005 WL 1287611
   (N.D. Cal. June 1, 2005) ........................................................................................................9

*In re Optical Disk Drive Antitrust Litig.,*
   No. 3:10-md-02143, 2011 WL 3894376 (N.D. Cal. Aug. 3, 2011).......................................11

*In re Refrigerant Compressors Antitrust Litig.,*
   795 F. Supp. 2d 647 (E.D. Mich. 2011)............................................................................10, 12

*In re Sugar Indus. Litig.,*
   579 F.2d 13 (3d Cir. 1978)............................................................................................ *passim*

*In re Vitamins Antitrust Litig.,*
   No. 99-197, 2001 WL 855463 (D.D.C. July 2, 2001) .............................................................5

*In re Wal-Mart Wage & Hour Emp't Practices Litig.,*
   No. 06-CV-00225 (PMP), 2008 WL 3179315 (June 20, 2008) .............................................9

*Int'l Ass'n of Machinists & Aerospace Workers v. OPEC,*
   477 F. Supp. 553 (C.D. Cal. 1979) .........................................................................................5

*Kansas v. UtiliCorp United, Inc.,*
   497 U.S. 199 (1990).................................................................................................... *passim*

*Kendall v. Visa U.S.A., Inc.,*
   518 F.3d 1042 (9th Cir. 2008) ................................................................................................5

*New York v. Hendrickson Bros., Inc.,*
   840 F.2d 1065 (2d Cir. 1988)..................................................................................................6

*Paper Sys. Inc. v. Nippon Paper Indus. Co.,*
   281 F.3d 629 (7th Cir. 2002) ................................................................................................13

*Poller v. Columbia Broad. Sys.,*
   368 U.S. 464 (1962)................................................................................................................1

*Rabkin v. Oregon Health Sciences Univ.,*
   350 F.3d 967 (9th Cir. 2003) ..................................................................................................9

*Royal Printing Co. v. Kimberly-Clark Corp.,*
   621 F.2d 323 (9th Cir. 1980) ...................................................................................... *passim*

*Rundgren v. Bank of N.Y. Mellon,*
   777 F. Supp. 2d 1224 (D. Haw. 2011). ...................................................................................9

*Stanislaus Food Prods. Co. v. USS-POSCO Indus.,*
   No. CV F 09-0560 LJO SMS, 2010 WL 3521979 (E.D. Cal. Sept. 3, 2010)....................11, 12

- iii -

*Sun Microsystems, Inc. v. Hynix Semiconductors, Inc.*,
    608 F. Supp. 2d 1166 (N.D. Cal. 2009) ...................................................................................4

*Windham v. Am. Brands, Inc.*,
    565 F.2d 59 (4th Cir. 1977) ...........................................................................................8

**Rules/Statutes**

15 U.S.C. § 15(a) .................................................................................................................8

Fed. R. Civ. P. 56(d) .....................................................................................................3, 14, 15

Fed. R. Evid. 201(b)...........................................................................................................15

- iv -

1

**PRELIMINARY STATEMENT**

2      Plaintiffs do not dispute the only material fact necessary to grant Defendants' Motion

3   for Summary Judgment ("Motion"): they did not make a direct purchase of the allegedly price-fixed

4   product (a CRT).[1]  Nor do they have any effective answer to the dispositive legal principle at the

5   core of the Motion that proving what portion, if any, of an alleged overcharge *on CRTs* was "passed-

6   on" in various downstream, *finished product markets* is precisely the type of complex inquiry that is

7   barred by *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977).  Plaintiffs' only response to the obvious

8   complexity here is the outrageous contention that they can recover treble damages without the need

9   even to prove that the alleged CRT overcharges had any impact on finished product prices.  This

10  contention is inconsistent not only with the law, but also with their prior statements in this case and

11  the Court's Order dismissing their claims that the prices of finished products were fixed.  Stipulation

12  and Order Concerning Pending Motions Re: Finished Products, [Dkt. No. 996] (August 26, 2011), at

13  2 ("Finished Products Order").  Moreover, Plaintiffs ask the Court to create a new exception to

14  *Illinois Brick* for plaintiffs who did not buy the allegedly price-fixed product for the ostensible

15  purpose of increasing deterrence.  In doing so, Plaintiffs mischaracterize controlling Ninth Circuit

16  law and advocate the very type of argument for creating an exception to the *Illinois Brick* doctrine

17  that the Supreme Court has rejected: "ample justification exists for our stated decision not to carve

18  out exceptions to the [direct purchaser] rule for particular types of markets."  *Kansas v. UtiliCorp*

19  *United, Inc.*, 497 U.S. 199, 216 (1990) (internal quotation marks omitted).  For these, and for all of

20  the reasons stated below, the Motion must be granted.[2]

21  _____

[1] For purposes of this memorandum, "Plaintiffs" means both the Direct Purchaser Plaintiffs who did
22  not purchase CRTs ("DPPs") and the Direct Action Plaintiffs ("DAPs").  *See* DPP's Opposition,
    [Filed Under Seal] (February 24, 2012) ("DPP Opp'n"); DAP's Brief in Support of DPP's
23  Opposition, [Dkt. No. 1056] (February 24, 2012) ("DAP Opp'n").

    [2] Plaintiffs misstate the summary judgment standard applicable to this Motion by citing to *Beltz*
24  *Travel Service, Inc. v. International Air Transp. Ass'n*, 620 F.2d 1360 (9th Cir. 1980).  DPP Opp'n
    at 8.  That case involved summary judgment *on the antitrust merits* and relied upon *Poller v.*
25  *Columbia Broad. Sys.*, 368 U.S. 464, 473 (1962), which held that "summary procedures should be
    used sparingly in complex antitrust litigation *where motive and intent play leading roles, the proof is*
26  *largely in the hands of the alleged conspirators, and hostile witnesses thicken the plot*."  620 F.2d at
    1365 (emphases added).

27

28

- 1 -

1        *First*, Plaintiffs have no answer to the most critical issue presented by the Motion that

2  proving what portion, if any, of the alleged overcharge on CRTs was passed-on to their purchases of

3  finished products involves precisely the same pass-on analysis that *Illinois Brick* prohibits. Instead,

4  Plaintiffs urge the Court to ignore this fatal pass-on problem and to grant them standing so that a so-

5  called "deterrence function" can be served with respect to each "segment of the CRT market" based

6  upon the allegation that Defendants sold a large number of CRTs to "related" companies. DAP

7  Opp'n at 4-5. This argument cannot survive scrutiny under *Illinois Brick* and its progeny. Courts

8  repeatedly have held that the logistical and analytical burdens and confusion arising from permitting

9  the assertions of pass-on claims outweigh any deterrence policy in favor of allowing every plaintiff

10  to sue for the amount of an overcharge theoretically absorbed by it. *Illinois Brick*, 431 U.S. at 745-

11  46. Further, this Circuit rightly treats *Illinois Brick* as a "bright-line" rule, and exceptions are not

12  made as Plaintiffs suggest, on a case-by-case basis depending on the facts of the particular market

13  structure at issue; for example, the claim that a large percentage of direct purchasers were "related"

14  entities. *Delaware Valley Surgical Supply, Inc. v. Johnson & Johnson*, 523 F.3d 1116, 1120-21 (9th

15  Cir. 2008). Nor does the Ninth Circuit permit such fact-dependent exceptions to establish standing

16  in direct purchaser suits. *Id*.; *see also UtiliCorp*, 497 U.S. at 216 (refusing to carve out new

17  exceptions to the indirect purchaser bar).

18        Plaintiffs' concession that the true, direct purchasers in this case (*e.g.*, HP, Dell,

19  Sharp, Vizio, etc.) participated in an "entirely different segment" of the market than Plaintiffs did

20  (DAP Opp'n at 12) proves the point of the Motion: Plaintiffs purchased within the *wrong* market to

21  be considered direct purchasers in this case. Plaintiffs did not pay the allegedly fixed price of a

22  CRT; they did not even pay a downstream price for a CRT; and, to recover damages, they would

23  have to prove pass-on in "entirely different" markets and for "entirely different," altered finished

24  products. While some state laws might permit Plaintiffs to pursue such a theory in an indirect

25  purchaser case, the federal antitrust laws do not. Finally, Plaintiffs' argument regarding the

26  purported lack of "deterrence" is a red herring as there are direct purchasers (HP, Dell, Sharp) fully

27  capable of serving whatever deterrence function is necessary here.

28                                                    - 2 -

1                  *Second*, there is no merit to Plaintiffs' assertion that it has "long been black-letter law

2  that" there is an exception to *Illinois Brick* for "a party that purchases a finished product containing a

3  price-fixed component." DAP Opp'n at 1-2 (citing *In re Linerboard Antitrust Litig.*, 305 F.3d 145

4  (3d Cir. 2002) ("*Linerboard*") and *In re Sugar Indus. Antitrust Litig.*, 579 F.2d 13 (3d Cir. 1978)

5  ("*Sugar*")). *Sugar* and *Linerboard* are *not* the law in this Circuit, and never have been: the Ninth

6  Circuit Court of Appeals has never cited *Sugar* or *Linerboard* for their standing analysis, and only

7  one district court judge within this Circuit (Judge Illston) has wrongly followed *Sugar* or *Linerboard*

8  where (as here) there are no allegations of a finished products conspiracy. As discussed below, the

9  reasoning of *Sugar* and *Linerboard* violates the "bright-line" rule of *Illinois Brick* and its strong

10  policy against litigating pass-on theories under the Sherman Act. Contrary to Plaintiffs' assertion,

11  Judge Conti has never considered this issue in the absence of allegations of a finished products

12  conspiracy, which have since been abandoned in this case.

13                  *Third*, there is no basis for Plaintiffs' request that they be permitted to sue *as indirect*

14  *purchasers* under one of the limited exceptions recognized by this Circuit to *Illinois Brick.* The

15  cases Plaintiffs rely upon (*Royal Printing Co. v. Kimberly-Clark Corp.*, 621 F.2d 323 (9th Cir. 1980)

16  and *Freeman v. San Diego Ass'n of Realtors*, 322 F.3d 1133 (9th Cir. 2003)) do not consider the

17  critical issue presented by this Motion, whether a plaintiff who did not purchase the price-fixed

18  product at any level in the chain of distribution can assert a federal treble damages claim. Nor can

19  Plaintiffs overcome the heavy presumption against expanding any of the very limited exceptions to

20  *Illinois Brick* (*see, e.g., UtiliCorp*, 497 U.S. at 216-17; *Delaware Valley*, 523 F.3d at 1120-21),

21  particularly given the undisputed fact that there *are* sophisticated, unrelated companies that directly

22  purchased CRTs who are more than capable of pursuing their rights and serving any deterrence

23  function required in this case.

24                  *Finally*, Plaintiffs have not met the requisite standard under Federal Rule of Civil

25  Procedure 56(d) to demonstrate the need for additional discovery; nor have they identified any

26  disputed fact that is necessary to resolve the purely legal issue presented by this Motion: whether a

27  plaintiff who did not purchase the price-fixed product can seek to recover as a direct purchaser under

28

- 3 -

1  the Sherman Act.

2  **ARGUMENT**

3  **A.    Plaintiffs Do Not Deny That *Illinois Brick* Bars All Pass-On Claims**

4  Plaintiffs do not challenge that the critical policy underlying *Illinois Brick* is to avoid

5  the need to address pass-on issues in Sherman Act damages cases.  Instead, they claim that the

6  complexity of proof problem is not fatal here because "no entity above or below the Plaintiffs in the

7  supply chain has standing to sue Defendants under the federal antitrust laws for fixing the prices of

8  the CRTs contained in the CRT Products purchased by Plaintiffs."  DAP Opp'n at 11-12.  This

9  argument simply ignores the "pass-on" problem that is inherent in Plaintiffs' claims and is the crux

10  of this Motion: Plaintiffs must prove how much, if any, of the alleged overcharge for sales of CRTs

11  in the CRT markets was "passed-on" to the price of the finished product in very different markets,

12  either for monitors or televisions, markets that include numerous major competitors who are not

13  alleged to have been part of any conspiracy – companies like HP, Dell and Apple in monitors and

14  companies like Vizio, Sharp, and Sony in televisions.  Plaintiffs cannot (and do not) deny that this

15  pass-on analysis would involve the exact "evidentiary complexities and uncertainties" that *Illinois*

16  *Brick* forbade.  431 U.S. at 725, 732 (explaining the Court's desire to avoid "complicat[ing] treble-

17  damages actions with attempts to trace the effects of the overcharge on the purchaser's prices, sales,

18  costs, and profits, and of showing that these variables would have behaved differently without the

19  overcharge").

20  Plaintiffs' failure to address this pass-on issue is fatal, as courts have deemed

21  complexity of proof to be the key factor in barring claims by purported direct purchaser plaintiffs.

22  *See Royal Printing*, 621 F.2d at 325 n.3 (explaining that the Supreme Court has deemed complexity

23  of proof a more important rationale underlying *Hanover Shoe/Illinois Brick* than deterrence).[3]  For

24  _____

25  [3] *See, e.g.*, *Sun Microsystems, Inc. v. Hynix Semiconductor, Inc.*, 608 F. Supp. 2d 1166, 1177 (N.D. Cal. 2009) (citing complexity of proof in dismissing purported direct purchaser claims); *In re*

26  *Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 691 F.2d 1335, 1339 (9th Cir. 1982) ("The [*Illinois Brick*] Court further noted the tremendous burden that would be placed on

27  antitrust proceedings by the 'massive evidence and complicated theories' necessary to measure and

- 4 -

28

1    example, as previously noted, courts have repeatedly dismissed claims for "umbrella" damages

2    because it would be too complex to establish in a direct purchaser suit how the alleged conspiracy

3    impacted the "umbrella" sales and by how much.  Motion at 6 (citing *F.T.C. v. Mylan Labs., Inc.*, 62

4    F. Supp. 2d 25, 38 (D.D.C. 1999)).  Plaintiffs try to dismiss the holdings of these cases as irrelevant

5    because Plaintiffs are not seeking umbrella damages (DPP Opp'n at 16 n.9; DAP Opp'n at 17), but

6    they miss the point:  the umbrella damages cases confirm fidelity to the *Illinois Brick/UtiliCorp*

7    bright-line refusal of the courts to transform federal antitrust litigations into "complex economic

8    proceeding[s] that the *Illinois Brick* Court was desirous of avoiding if at all possible." *In re Vitamins*

9    *Antitrust Litig.*, No. 99-197, 2001 WL 855463, at *3 (D.D.C. July 2, 2001).  Moreover, there is no

10   question that, in this case, the Finished Products Order requires Plaintiffs, if they do have standing,

11   to demonstrate pass-on:  "the issue of the possible impact or effect of the alleged fixing of prices of

12   CRTs on the prices of Finished Products shall remain in the case."  Finished Products Order at 2.

13   Plaintiffs' counsel has conceded this indisputable proposition and that such proof would vary

14   customer by customer and, thus be unduly complex:

15          COURT:  What if a manufacturer buys a higher priced tube but decides to
            absorb the increased cost itself without increasing its product?
16

17          MR. SIMON:  Then we'll find out how much of that is in discovery and
            we'll see what impact that is.  But we don't know that now.

18          COURT:  That's impact, isn't it?

19          MR. SIMON:  It is, but it's not all the impact.  It may be one percent of
            the impact or it may be ten percent of the impact or it maybe [sic] 50
20          percent of the impact.

21

22   trace the effect of an overcharge through each step of the distribution chain, and the attendant
     complexities inherent in apportioning damages 'among all potential plaintiffs that could have
23   absorbed part of the overcharge.'") (internal citations omitted); *Int'l Ass'n of Machinists &*
     *Aerospace Workers v. OPEC*, 477 F. Supp. 553, 561 (C.D. Cal. 1979) ("The Supreme Court based
24   its holding on the difficulties and uncertainties of proof . . . .") (citing *Hanover Shoe, Inc. v. United*
     *Shoe Mach. Corp.*, 392 U.S. 481, 492-93 (1968)); *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1049
25   (9th Cir. 2008) ("Courts are not permitted to determine 'what portion of [an] illegal overcharge was
     passed on . . . and what part was absorbed by the middlemen' because such an analysis would
26   'involve all the evidentiary and economic complexities that *Illinois Brick* clearly forbade.'")
     (quoting *Royal Printing*, 621 F.2d at 327).

27

28
     DEFENDANTS' REPLY I/S/O SUMMARY JUDGMENT                              Case No. 07-5944 SC
     AGAINST PURPORTED DPPs WHO DID NOT PURCHASE CRTs                      MDL NO. 1917

1   December 12, 2011 Donovan Decl., Exh. J, Tr. of Mot. Hr'g at 85-86; 90 (May 26, 2011).

2           At bottom, Plaintiffs' contention is that, despite their admitted need to prove pass-on,

3   they should nevertheless be permitted to sue under the Sherman Act because "[i]f Defendants'

4   argument is accepted, no party would be entitled to seek damages for the CRTs incorporated into the

5   CRT Products purchased by Plaintiffs." DAP Opp'n at 12. But, it has long-been the law that not

6   "every plaintiff potentially affected by the overcharge" in every segment of the market will have

7   standing to sue as direct purchasers. *Illinois Brick*, 431 U.S. at 735, 737 ("[h]owever appealing this

8   attempt to allocate the overcharge might seem in theory, it would add whole new dimensions of

9   complexity to treble-damages suits and seriously undermine their effectiveness"); *Delaware Valley*,

10  523 F.3d at 1121 (explaining that the Court in *Illinois Brick* "rejected the States' argument that the

11  rule should not apply because it would be relatively easy to apportion the overcharge among the

12  purchasers. In order to avoid extensive fact-based litigation in antitrust suits to establish standing,

13  the Court specifically noted its desire for a bright-line rule.").[4]

14          It is for this reason that *Illinois Brick* is treated in this Circuit as a "bright-line" rule

15  (*Delaware Valley*, 523 F.3d at 1120-22 ), and exceptions are not made on a case-by-case basis

16  depending on the particular facts of the market at issue as Plaintiffs advocate here:

17          The [Supreme] Court rejected [plaintiffs'] argument that the rule should not apply
18          because it would be relatively easy to apportion the overcharge . . . . In order to
            avoid extensive fact- based litigation in antitrust suits to establish standing, the
19          Court specifically noted its desire for a bright-line rule. The Court noted that the

20  _____

    [4] *See also New York v. Hendrickson Bros., Inc.*, 840 F.2d 1065, 1079 (2d Cir. 1988) ("The Supreme
21  Court has construed '*Hanover Shoe* as resting on the judgment that the antitrust laws will be more
    effectively enforced by concentrating the full recovery for the overcharge in the direct purchasers
22  rather than by allowing every plaintiff potentially affected by the overcharge to sue only for the
    amount it could show was absorbed by it.' The principal rationale for this judgment was that
23  antitrust treble-damage actions should not be complicated by a need to trace the effects of the
    overcharge with respect to such matters as prices, costs, and the  potentially different behavior of all
24  the pertinent variables in the absence of the overcharges."); *Gas-A-Tron of Ariz. v. Am. Oil Co.*, No.
    CIV 73-191-TUC-WCF, 1977 WL 1519, at *1 (D. Ariz. Dec. 7, 1977) ("[T]he costs to the judicial
25  system and the efficient enforcement of the antitrust laws which would result from the attempt to
    trace the complex economic adjustments to a change in the cost of a particular factor of production
26  were felt to outweigh any policy in favor of allowing every plaintiff to sue for the amount of an
    overcharge absorbed by it.").

27

28                                          - 6 -

*Illinois Brick* rule 'often den[ies] relief to consumers who have paid inflated prices because of their status as indirect purchasers,' yet refused to broaden the scope of relief in order to maintain stability in the law . . . 'In sum, even assuming that any economic assumptions underlying the *Illinois Brick* rule might be disproved in a specific case, we think it an unwarranted and counterproductive exercise to litigate a series of exceptions.'

*Delaware Valley*, 523 F.3d at 1121 (citing *UtiliCorp*, 497 U.S. at 211-12, 217); *Illinois Brick*, 431 U.S. at 744 ("We reject these attempts to carve out exceptions to the *Hanover Shoe* rule for particular types of markets.").

Further, Plaintiffs' deterrence argument rings hollow because applying the *Illinois Brick* rule in this case to finished product purchases would not, in fact, shield Defendants' alleged conduct from treble damages. As Plaintiffs concede, to the extent they directly purchased from Defendants, there are "unrelated manufacturers, such as HP or Dell" who may qualify for direct purchaser standing and may serve the necessary deterrence function in this case with respect to CRTs. DAP Opp'n at 12. The fact that these direct purchasers participated in an "entirely different segment" of the market than Plaintiffs (*id.*) speaks volumes about the merits of this Motion (indeed, these purchases were not just in a different "segment" but in a different "market") and underscores the fact that this Motion should be granted: Plaintiffs' purchases took place in a market "entirely different" from the one in which the alleged price fixing occurred, namely the downstream market for finished products. Hence they are not direct purchasers of the allegedly price-fixed product. Indeed, to the extent Plaintiffs are claiming that there will be no "direct purchaser" to bring an action to the extent that the direct purchasers could be wholly-owned or affiliated parties (DPP Opp'n at 20-21; DAP Opp'n at 3-4), this is hardly a concern under the federal antitrust laws because intracompany transfers have no external competitive consequences.[5] Moreover, the Supreme Court has made it clear that the important public policy of avoiding the complexities of pass-on outweighs any "deterrence" policy in favor of allowing every plaintiff to sue for the amount of an overcharge

---

[5] *C.f. Aydin Corp. v. Varian Assocs., Inc.*, No. C-95-20100 RPA, 1995 WL 230674, at *2 (N.D. Cal. Apr. 11, 1995) (explaining that in the context of price discrimination claims, an "intra-corporate transfer" is "not a 'sale,'" in large part because such transfers have "no external competitive consequences") (citing *Copperweld v. Independence Tube Corp.*, 467 U.S. 752, 771 (1984)).

- 7 -

1   that it absorbed. *Illinois Brick*, 431 U.S. at 737; *Gas-A-Tron of Ariz.*, 1977 WL 1519, at *1.

2         Finally, the rule urged by Plaintiffs would create a risk of significant recoveries by

3   those who have not shown injury.  Plaintiffs admittedly did not purchase the price-fixed product.

4   And they assert that they can avoid the need to engage in complex proof of pass-on by claiming that

5   "*Royal Printing* eliminates any complexities of proof associated with a pass-on analysis by allowing

6   the purchaser to recover the entire overcharge."  DPP Opp'n at 2, 17.  Unless Plaintiffs prove that

7   any conspiratorially imposed overcharge in the CRT market was passed on to the finished products

8   they that purchased, there is no "overcharge" for Plaintiffs to recover.  Plaintiffs' contention that

9   they can recover without proving any injury caused by the alleged price-fix is utterly inconsistent

10  with Clayton Act Section 4, which always requires a private party to show "injury to business or

11  property" to seek relief.[6]  Indeed, the Finished Products Order dismissing Plaintiffs' allegations of a

12  conspiracy to fix finished product prices requires that the Plaintiffs prove "impact or effect of the

13  alleged fixing of prices of CRTs on the prices of finished products."  Finished Products Order at 2.

14  And, DPP counsel has conceded the need to prove pass-on under these circumstances.  December

15  12, 2011 Donovan Decl., Exh. J, Tr. of Mot. Hr'g at 85-86 (May 26, 2011) ("MR. SIMON:  It is, but

16  it's not all the impact.  It may be one percent of the impact or it may be ten percent of the impact or

17  it maybe [sic] 50 percent of the impact.").

18        *Royal Printing* does not require a different result here.  That case simply allowed

19  certain indirect purchasers of the price-fixed product to seek recovery for the entire overcharge.

20  *Royal Printing* does not apply to a plaintiff who did *not* buy the price-fixed product.  *Royal Printing*,

21  621 F.2d at 326.

22

23

24

25
26  [6] 15 U.S.C. § 15(a); *Hanover Shoe*, 392 U.S. at 489; *Windham v. Am. Brands, Inc.*, 565 F.2d 59, 66 (4th Cir. 1977) ("The gravamen of the complaint is not the conspiracy; the crux of the action is injury, individual injury.").
27

28
- 8 -

DEFENDANTS' REPLY I/S/O SUMMARY JUDGMENT                          Case No. 07-5944 SC
AGAINST PURPORTED DPPs WHO DID NOT PURCHASE CRTs                  MDL NO. 1917

**B.    There Is No Exception To *Illinois Brick* In This Circuit For Plaintiffs Who Did Not Purchase The Price-Fixed Product**

Plaintiffs claim that the Third Circuit's decisions in *Sugar* and *Linerboard* are "black-letter law" in this Circuit. *See, e.g.,* DAP Opp'n at 1; DPP Opp'n at 12 (asserting that *Sugar* and *Linerboard* "are routinely cited with approval by Courts in this District"). Plaintiffs are wrong: the Ninth Circuit has not adopted (or even cited to) *Sugar/Linerboard* for its standing analysis; nor has any Court of Appeals other than the Third Circuit followed the *Sugar/Linerboard* view as it relates to the issues here. (The sole Ninth Circuit opinion citing *Linerboard* relates to its definition of the term "analogy." *Rabkin v. Oregon Health Sciences Univ.,* 350 F.3d 967, 973 (9th Cir. 2003)). In the district courts of the Ninth Circuit, only the *In re TFT-LCD* court cites *Sugar/Linerboard* with approval, and it did so without any analysis of the pass-on problem in a case in which there is no alleged price-fixing with respect to the finished product that the plaintiffs purchased.[7]

Judge Conti's citation to *Linerboard* in this case is not to the contrary. As this Court knows, when Judge Conti affirmed the denial of Defendants' motions to dismiss, the DPPs were claiming that Defendants fixed the prices of finished products, not just CRTs. Accordingly, Judge Conti had no basis to consider the present issue in the context of the current record, in which Plaintiffs have limited their claims to allegations of price-fixing only with respect to CRTs. *See* Order Approving and Adopting Special Master's Report, Recommendations and Tentative Rulings Re: Defendants' Motions to Dismiss, [Dkt. No. 665] (March 30, 2010), at 17-19 ("Order Adopting Special Master's Report"). This is clear from the Special Master's rulings regarding standing at the pleading stage, which Judge Conti adopted in full:

> Defendants also move to dismiss based upon an argument of plaintiffs' supposed lack of standing under *Associated General Contractors of California v. California*

---

[7] *See, e.g., Rundgren v. Bank of N.Y. Mellon,* 777 F. Supp. 2d 1224, 1230 (D. Haw. 2011) (citing *Linerboard*'s discussion regarding fraudulent concealment); *California v. Infineon Techs. AG,* No. C 06-4333 (PJH), 2008 WL 4155665, at *7 (N.D. Cal. Sept. 5, 2008) (citing *Linerboard* only for class certification issues); *In re Wal-Mart Wage & Hour Emp't Practices Litig.,* No. 2:06-CV-00225 (PMP), 2008 WL 3179315, at *11 (D. Nev. June 20, 2008) (same); *In re Live Concert Antitrust Litig.,* 247 F.R.D. 98, 136 (C.D. Cal. 2007) (same); *In re Napster, Inc. Copyright Litig.,* No. C MDL-00-1369 MHP, 2005 WL 1287611, at *6 (N.D. Cal. June 1, 2005) (same).

- 9 -

DEFENDANTS' REPLY I/S/O SUMMARY JUDGMENT                                    Case No. 07-5944 SC
AGAINST PURPORTED DPPs WHO DID NOT PURCHASE CRTs                    MDL NO. 1917

1
2

> *State Council of Carpenters*, 459 U.S. 519 (1983), and [*Illinois Brick*]. However,
> that argument is based in turn upon defendants' perception that the complaints
> allege a price fixing conspiracy only as to the CRTs. And, the Special Master
> interprets the complaints as alleging a conspiracy as to CRT Products as well.

3

Report, Recommendations and Tentative Rulings Regarding Defendants' Motions to Dismiss, [Dkt.

4

No. 597] (February 5, 2010), at 18 ("Report & Recommendations").[8]

5

Simply put, *Sugar* and *Linerboard* are not the law of this Circuit and their reasoning

6

cannot be reconciled with *UtiliCorp* or with the Ninth Circuit's adoption of *Illinois Brick* as a

7

"bright-line" rule not subject to new exceptions. *Delaware Valley*, 523 F.3d at 1120-21. As the

8

Ninth Circuit has made clear, *Illinois Brick* was intended to avoid the necessity for such individual

9

product and market inquiries (*see UtiliCorp*, 497 U.S. at 209-11), and cannot serve as the "bright-

10

line rule" that it was intended to be if, as *Sugar* suggests, the court is forced to undertake a case-by-

11

case analysis to determine whether the problems of pass-on proof are "serious enough" to deny

12

standing. *Sugar*, 579 F.2d at 18. Importantly, *Sugar* was handed down by the Third Circuit prior to

13

the 1990 opinion by the Supreme Court in *UtiliCorp*. If the bright-line rule was not clear enough in

14

*Illinois Brick* itself, it is crystal clear in *UtiliCorp*, and *Sugar* cannot be reconciled with *UtiliCorp*

15

and hence is bad law.

16

Moreover, the Ninth Circuit has expressly rejected the concept, endorsed in *Sugar*,

17

that standing should depend on the structures of particular markets or on the facts of the price-fixing

18

alleged. *Delaware Valley*, 523 F.3d at 1121 (citing *UtiliCorp*, 497 U.S. at 216). As the Supreme

19

Court has explained:

20
21
22

> The rationales underlying *Hanover Shoe* and *Illinois Brick* will not apply with
> equal force in all cases. We nonetheless believe that ample justification exists for
> our stated decision not to 'carve out exceptions to the [direct purchaser] rule for

23
24
25
26
27

[8] Further, it is significant to note that *Linerboard* is distinguishable because the district court decision in that case indicates that it did involve a conspiracy to fix the prices of finished products. *In re Linerboard Antitrust Litig.*, 203 F.R.D. 197, 203 (E.D. Pa. 2001) (explaining that the case is "grounded on allegations that defendants conspired to restrict the output of linerboard . . . with the objective of increasing the price of corrugated sheets and corrugated boxes"); *see also In re Refrigerant Compressors Antitrust Litig.*, 795 F. Supp. 2d 647, 658-59 (E.D. Mich. 2011) (stating that plaintiffs in *Linerboard* "alleged a conspiracy to fix *both* linerboard (a component) and corrugated sheets (a finished product)").

28

- 10 -

DEFENDANTS' REPLY I/S/O SUMMARY JUDGMENT
AGAINST PURPORTED DPPs WHO DID NOT PURCHASE CRTs

Case No. 07-5944 SC
MDL NO. 1917

particular types of markets.' The possibility of allowing an exception, even in rather meritorious circumstances, would undermine the rule. . . . In sum, even assuming that any economic assumptions underlying the *Illinois Brick* rule might be disproved in a specific case, we think it an unwarranted and counterproductive exercise to litigate a series of exceptions.

*UtiliCorp*, 497 U.S. at 216-17 (quoting *Illinois Brick*, 431 U.S. at 744) (internal citation omitted). [9]

The *In re TFT-LCD* court never comes to grips with these fundamental policy issues or even addresses the fatal problems with pass-on in such a case. *See* Motion at 9-10.

Plaintiffs cannot dispute that, notwithstanding *Sugar* and *Linerboard*, the treatment of component part cases in other circuits, including in the Ninth Circuit, support the conclusion that Plaintiffs' claims are *in*direct and barred by *Illinois Brick*. *See* Motion at 7-8. Plaintiffs' attempt to distinguish these cases is unpersuasive. For example, regarding *In re Optical Disk Drive Antitrust Litig.*, No. 3:10-md-02143, 2011 WL 3894376 (N.D. Cal. Aug. 3, 2011) ("*ODD*"), Plaintiffs point to language that "plaintiffs in this case do not have a standing problem with respect to any ODD devices they may have purchased directly from defendants" (DPP Opp'n at 15-16 n.8; DAP Opp'n at 13-14 (citing *ODD*, 2011 WL 3894376, at *7)), but they fail to recognize the fact that the plaintiffs in ODD, unlike here, allege a conspiracy to fix the prices of the *finished ODD devices* that the plaintiffs allegedly purchased. *ODD*, 2011 WL 3894376, at *2 ("the direct purchasers allege a conspiracy to fix prices of both ODDs (as they define them) *and* 'ODD Products'"). Further, Plaintiffs ignore the analysis in *ODD that is* relevant here: absent an alleged conspiracy to price-fix finished products, to establish direct purchaser standing plaintiffs must allege that they directly "purchased actual ODDs" and not finished "ODD Products." *Id.* at *5-8.

Nor can Plaintiffs distinguish *Stanislaus Food Products Co. v. USS-POSCO Indus.*, No. CV F 09-0560 LJO SMS, 2010 WL 3521979 (E.D. Cal. Sept. 3, 2010). There, it is true that the plaintiff purchased the finished tin products from an independent wholesaler, and not from the defendants themselves. *See* DPP Opp'n at 14; DAP Opp'n at 14. But the *Stanislaus* court specifically considered – and rejected – the plaintiff's argument that it had standing as a direct

---

[9] The DAP Opposition tries to limit *UtiliCorp* to its facts (DAP Opp'n at 10-11), missing that *UtiliCorp*'s above holding is expressly intended to be "broad[]." *UtiliCorp*, 497 U.S. at 216.

DEFENDANTS' REPLY I/S/O SUMMARY JUDGMENT                    Case No. 07-5944 SC
AGAINST PURPORTED DPPs WHO DID NOT PURCHASE CRTs           MDL NO. 1917

1   purchaser *even if* the wholesaler was found to be a co-conspirator in the alleged conspiracy.

2   *Stanislaus*, 2010 WL 3521979, at *7-8. In doing so, the court held that "the products purchased by

3   plaintiffs must be the subject of the price fixing conspiracy," and that the plaintiff did not have

4   standing where the alleged conspiracy was to fix only the price of components for tin cans, and "not

5   the product plaintiff purchase[d]." *Id.* at *8.

6        Next, Plaintiffs concede that *In re Refrigerant Compressors Antitrust Litigation*, 795

7   F. Supp. 2d 647 (E.D. Mich. 2011), holds that "only plaintiffs who purchased a price-fixed

8   component directly from a defendant had federal antitrust standing; plaintiffs who purchased directly

9   from a defendant a finished product containing a price-fixed component did not have standing, even

10  if the component was manufactured by an affiliate or co-conspirator of the defendant." DPP Opp'n

11  at 15. Nor do Plaintiffs deny the critical holding in that case that "the only persons or entities who

12  have standing to assert federal antitrust claims . . . are those persons or entities who directly

13  purchased compressors" and not "compressor products." *See Compressors*, 795 F. Supp. 2d at 659.

14       When measured against these "component" cases denying direct purchaser standing,

15  the conclusion that Judge Illston's decisions in *In re TFT-LCD* are outliers is inescapable. More

16  importantly, they do not address in any substantive way the central issues presented by this Motion,

17  including the Ninth Circuit's admonition *not* to carve out new exceptions to *Illinois Brick* based

18  upon a *Sugar*-type analysis of the structure of the particular market or the facts regarding the

19  particular product at issue. *Delaware Valley*, 523 F.3d at 1121. Nor do the decisions in *In re TFT-*

20  *LCD* address (or even identify) the fatal pass-on problems that would be created by allowing a

21  purchaser of a complex, finished product in a downstream market from the price-fixed product to sue

22  for damages under the Sherman Act.

23

    **C.**    **Plaintiffs Do Not Meet Any Of The Limited Exceptions To *Illinois Brick* That**
24            **Are Recognized In This Circuit**

25       Plaintiffs assert that, even if the Court rejects *Sugar/Linerboard*, they still should be

26  permitted to sue in the direct purchaser case, but *as indirect purchasers*, under one of the limited

27  exceptions to *Illinois Brick*. Plaintiffs rely upon *Royal Printing* and *Freeman* for this proposition,

28

- 12 -

1 but neither case is on point. As Plaintiffs concede, *Royal Printing* merely holds that *Illinois Brick*

2 does not bar suits where "the direct purchaser is a division or subsidiary of a co-conspirator." DPP

3 Opp'n at 2 (quoting *Royal Printing*, 621 F.2d at 326). *Royal Printing* did not contemplate or discuss

4 the present situation where plaintiffs purportedly purchased from a division or a subsidiary of a co-

5 conspirator *a finished product sold in a market not alleged to be the subject of any conspiracy*.

6 Thus, unlike here, the plaintiffs in *Royal Printing* did not have to confront a complex pass-on burden

7 involving a downstream market for finished products that is not alleged to be the subject of any

8 collusion. Plaintiffs do not deny this dispositive distinction; they simply ignore it.[10]

9       Equally unavailing is Plaintiffs' reliance on *Freeman*. DPP Opp'n at 2. As with

10 *Royal Printing*, the decision does not contemplate indirect purchases *of finished products* that are not

11 subject to price-fixing. To the contrary, the real estate service that plaintiffs purchased was the very

12 service that was the subject of the alleged fix. Moreover, there is no dispute, as discussed above,

13 that there are true direct purchasers in this action unrelated to the Defendants who can bring actions

14 and serve the deterrence function identified in *Freeman*.

15       In sum, there is no existing Ninth Circuit exception to cover Plaintiffs' claims. To the

16 contrary, as the Supreme Court explained in *UtiliCorp*, the rule in *Illinois Brick* envisaged that it

17 would "deny relief to consumers who have paid inflated prices," but stated that there is nevertheless

18 "ample justification" "not to carve out exceptions to the direct purchaser rule" or to expand the ones

19 that exist. *UtiliCorp*, 497 U.S. at 201, 211-12, 216; *see also Delaware Valley*, 523 F.3d at 1123,

20 1125 ("Appellants fail to persuade this court that there is anything extraordinary about the facts of

21 this case warranting a deviation from the firmly established *Illinois Brick* rule . . . [A]ny exception to

22 the *Illinois Brick* direct purchaser rule must be narrowly restricted to a situation in which complex

23 market forces are stripped of their effect due to preexisting conditions, such as with a cost-plus

24

25 [10] The same is true with respect to the Seventh Circuit decision in *Paper Systems Inc. v. Nippon*
26 *Paper Indus. Co.*, 281 F.3d 629 (7th Cir. 2002), cited by Plaintiffs. Like in *Royal Printing*, the
plaintiffs in *Paper Systems* did not purchase a finished product that was sold in a market not alleged
to be the subject of collusion; nor did the court contemplate such a situation. *See id.* at 631-32.

27

28                           - 13 -

1   contract, so that the pass-on is clearly discernible.") (citing *Illinois Brick*, 431 U.S. at 744).

2   **D.   Plaintiffs Have Failed To Carry Their Burden Under Rule 56(d)**

3   Finally, this Motion is not premature under Federal Rule of Civil Procedure 56(d).

4   Under that Rule (formerly 56(f)), the non-movant must demonstrate in a non-conclusory way that:

5   "(1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2)

6   the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment."

7   *Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008)

8   (citing *California v. Campbell*, 138 F.3d 772, 779 (9th Cir. 1998); *see also Arnold v. Evans*, No. C-

9   08-1889 CW PR, 2011 WL 738360, at *5 (N.D. Cal. Feb. 22, 2011) ("In making a Rule 56(d)

10  motion, a party opposing summary judgment must make clear 'what information is sought and how

11  it would preclude summary judgment.'") (citing Fed. R. Civ. P. 56(d)).

12  Here, Plaintiffs claim that the Motion is premature principally because "[n]ot a single

13  deposition has been taken in this case."[11]  DPP Opp'n at 23; DAP Opp'n at 22.  But, Plaintiffs do not

14  identify what facts, if any, could be elicited in a deposition, which would be "essential" to deciding

15  this Motion.  Nor could they, because the Motion presents the purely legal question of whether a

16  plaintiff who did not buy the price-fixed product has standing to sue as a direct purchaser.  The

17  issues of whether "Plaintiffs purchased Finished Products from a member of the conspiracy" or

18  "from controlled intermediaries of conspirators" (*see* Saveri Decl. ¶¶ 116, 50) are not implicated by

19  this Motion, let alone "essential" to its outcome.  Nor does it matter what volume of CRTs

20  Defendants sold to "owned or controlled" companies.  DPP Opp'n at 24.  Instead, the only issue

21  presented by this Motion is whether *Illinois Brick* denies standing to persons, like Plaintiffs, who

22  admittedly did not purchase the allegedly price-fixed product from anyone.  There are no possible

23  fact issues that would require additional discovery and/or be necessary to determine this pure issue

24  of law.

---

25  [11] Plaintiffs also claim that the Motion is premature because Defendants did not appear for 30(b)(6)
    depositions, which Plaintiffs unilaterally noticed in violation of Local Rule 30-1.  DPP Opp'n at 24.
26  Plaintiffs do not and cannot offer any explanation how these depositions relate to the Court's
    consideration of the issue of law presented here.
27

28                                          - 14 -

1    Nor is the Motion "procedurally deficient" because it is predicated, according to

2 Plaintiffs, on factual issues that are lacking support. The purportedly "unsupported, material factual

3 assertions" that Plaintiffs identify (DPP Opp'n at 22-23) are not necessary to grant the Motion, have

4 already been admitted by Plaintiffs, and/or are undisputed and may be judicially noticed. Fed. R.

5 Evid. 201(b) (courts may take notice of facts "not subject to reasonable dispute in that it is either (1)

6 generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and

7 ready determination by resort to sources whose accuracy cannot reasonably be questioned").

8    For example, both Plaintiffs and the Court have recognized that the "market for

9 Finished Products is different from the market in CRTs." DAP Opp'n at 12 (acknowledging that

10 purchasers of CRTs participated in an "entirely different" market than Plaintiffs did); *see also* Report

11 & Recommendations, at 4 (describing as separate the CRT and "CRT Products" markets); Order

12 Adopting Special Master's Report, at 6-7 (same). And, *Illinois Brick* does not require Defendants to

13 adduce factual evidence showing how complex Plaintiffs' proof of pass-on would be. DPP Opp'n at

14 23. Plaintiffs cite no authority for such a proposition, which would defeat the very premise of the

15 *Illinois Brick* bar against litigating pass-on issues in Sherman Act cases. There is no Rule 56(d)

16 issue to delay the Court from ruling on this Motion now.

17                              **CONCLUSION**

18    For all these reasons, and those stated in the Motion, there is no genuine issue of

19 material fact, and Defendants are entitled to a judgment as a matter of law dismissing the purported

20 direct purchaser claims of Plaintiffs who did not purchase CRTs.

21

22

23

24

25

26

27

28
- 15 -

Dated:  March 9, 2012

DEWEY & LEBOEUF  LLP

By:  /s/ Jeffrey L. Kessler
JEFFREY L. KESSLER (*pro hac vice*)
E-mail: jkessler@dl.com
A. PAUL VICTOR (*pro hac vice*)
E-mail: pvictor@dl.com
MOLLY M. DONOVAN (*pro hac vice*)
Email : mmdonovan@dl.com
**DEWEY & LEBOEUF LLP**
1301 Avenue of the Americas
New York, NY 10019
Telephone: (212) 259-8000
Facsimile: (212) 259-7013

ALDO A. BADINI (257086)
Email: abadini@dl.com
**DEWEY & LEBOEUF LLP**
Post Montgomery Center
One Montgomery Street, Suite 3500
San Francisco, CA 94104
Telephone: (415) 951-1120
Facsimile:  (415) 951-1100
Email: abadini@dl.com

STEVEN A. REISS (*pro hac vice*)
E-mail: steven.reiss@weil.com
DAVID L. YOHAI (*pro hac vice*)
E-mail: david.yohai@weil.com
ADAM C. HEMLOCK (*pro hac vice*)
E-mail: adam.hemlock@weil.com
**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, New York 10153-0119
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

GREGORY D. HULL (57367)
E-mail: greg.hull@weil.com
**WEIL, GOTSHAL & MANGES LLP**
201 Redwood Shores Parkway
Redwood Shores, California 94065-1175
Telephone: (650) 802-3000
Facsimile: (650) 802-3100

*Attorneys for Defendants Panasonic
Corporation of North America, MT Picture
Display Co., Ltd. and Panasonic Corporation
(f/k/a Matsushita Electric Industrial Co.)*

- 16 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FRESHFIELDS BRUCKHAUS
DERINGER US LLP

By:   /s/ Richard Snyder
TERRY CALVANI (SBN 53260)
E-mail: terry.calvani@freshfields.com
CHRISTINE LACIAK(*Admitted Pro Hac Vice*)
E-mail: christine.laciak@freshfields.com
RICHARD SNYDER (*Admitted Pro Hac Vice*)
E-mail: richard.snyder@freshfields.com
**FRESHFIELDS BRUCKHAUS
DERINGER US LLP**
701 Pennsylvania Avenue NW, Suite 600
Washington, DC  20004
Telephone: (202) 777-4565
Facsimile: (202) 777-4555

*Attorneys for Beijing-Matsushita Color CRT
Company, Ltd.*

MORGAN, LEWIS & BOCKIUS LLP

By:   /s/ Kent M. Roger
KENT M. ROGER (95987)
E-mail: kroger@morganlewis.com
MICHELLE PARK CHIU (248421)
E-mail: mchiu@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
One Market, Spear Street Tower
San Francisco, California 94105-1126
Telephone: (415) 442-1000
Facsimile: (415) 442-1001

J. CLAYTON EVERETT, JR. (*pro hac vice*)
E-mail: jeverett@morganlewis.com
SCOTT A. STEMPEL (*pro hac vice*)
E-mail: sstempel@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
111 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone: (202) 739-3000
Facsimile: (202) 739-3001

*Attorneys for Defendants Hitachi, Ltd., Hitachi
Displays, Ltd., Hitachi Asia, Ltd., Hitachi
America, Ltd., and Hitachi Electronic Devices
(USA), Inc.*

- 17 -

1

ARNOLD & PORTER LLP

2

By:  /s/ Ronald C. Redcay
RONALD C. REDCAY (67236)
Email: Ronald.Redcay@aporter.com

3

D. ERIC SHAPLAND (193853)
Email: Eric.shapland@aporter.com

4

**ARNOLD & PORTER LLP**
777 South Figueroa Street, Forty-Fourth Floor

5

Los Angeles, California 90017-5844
Telephone: (213) 243-4000

6

Facsimile: (213) 243-4199

7

*Attorneys for Defendants LG Electronics, Inc.,*

8

*LG Electronics USA, Inc., and LG Electronics*
*Taiwan Taipei Co., Ltd.*

9

SHEPPARD MULLIN RICHTER &
HAMPTON

10

11

By:  /s/ James L. McGinnis
GARY L. HALLING, Cal. Bar No. 66087

12

E-mail: ghalling@sheppardmullin.com
JAMES L. MCGINNIS, Cal. Bar No. 95788

13

E-mail: jmcginnis@sheppardmullin.com
MICHAEL W. SCARBOROUGH, Cal. Bar

14

No. 203524
E-mail: mscarborough@sheppardmullin.com

15

**SHEPPARD MULLIN RICHTER &**
**HAMPTON**

16

Four Embarcadero Center, 17th Floor
San Francisco, California 94111

17

Telephone: (415) 434-9100
Facsimile: (415) 434-3947

18

*Attorneys for Defendants Samsung SDI*

19

*America, Inc.; Samsung SDI Co., Ltd.;*
*Samsung SDI (Malaysia) SDN. BHD.;*

20

*Samsung SDI Mexico S.A. DE C.V.; Samsung*
*SDI Brasil Ltda.; Shenzen Samsung SDI Co.,*

21

*Ltd. and Tianjin Samsung SDI Co., Ltd.*

22

O'MELVENY & MYERS LLP

23

By:  /s/ Ian Simmons
IAN SIMMONS (pro hac vice)

24

E-mail: isimmons@omm.com
BEN BRADSHAW (189925)

25

E-mail: bbradshaw@omm.com
**O'MELVENY & MYERS LLP**

26

1625 Eye Street, NW
Washington, DC 20006

27

Telephone: (202) 383-5300
Facsimile: (202) 383-5414

- 18 -

28

DEFENDANTS' REPLY I/S/O SUMMARY JUDGMENT
AGAINST PURPORTED DPPs WHO DID NOT PURCHASE CRTs

Case No. 07-5944 SC
MDL NO. 1917

1

*Attorneys for Defendants Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc.*

2

3

WHITE & CASE LLP

4

By: /s/ Lucius B. Lau

5

CHRISTOPHER M. CURRAN (*pro hac vice*)

6

E-mail: ccurran@whitecase.com
GEORGE L. PAUL (*pro hac vice*)

7

E-mail: gpaul@whitecase.com
LUCIUS B. LAU (*pro hac vice*)

8

E-mail: alau@whitecase.com
**WHITE & CASE LLP**

9

701 Thirteenth Street, N.W.

10

Washington, DC  20005
Telephone: (202) 626-3600

11

Facsimile: (202) 639-9355

12

*Attorneys for Defendants Toshiba Corporation, Toshiba America, Inc., Toshiba*

13

*America Information Systems, Inc., Toshiba America Consumer Products, L.L.C., and*

14

*Toshiba America Electronic Components, Inc.*

15

GIBSON, DUNN & CRUTCHER LLP

16

By: /s/ Rachel S. Brass

17

JOEL S. SANDERS, SBN 107234,
E-mail: JSanders@gibsondunn.com

18

RACHEL S. BRASS, SBN 219301,
E-mail: RBrass@gibsondunn.com

19

**GIBSON, DUNN & CRUTCHER LLP**
555 Mission Street, Suite 3000

20

San Francisco, California 94105-2933
Telephone: 415.393.8200

21

Facsimile: 415.393.8306

22

*Attorneys for Defendant Tatung Company of America, Inc.*

23

24

25

26

27

- 19 -

28