IAN SIMMONS (*pro hac vice*)
Email:  isimmons@omm.com
BENJAMIN G. BRADSHAW (SBN 189925)
Email:  bbradshaw@omm.com
KEVIN D. FEDER (SBN 252347)
Email:  kfeder@omm.com
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, D.C.  20006-4001
Telephone:  (202) 383-5300
Facsimile:  (202) 383-5414

Attorneys for Defendants
**SAMSUNG ELECTRONICS CO., LTD.**
**SAMSUNG ELECTRONICS AMERICA, INC.**

**IN THE UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Case No. 3:07-cv-05944 SC<br><br>MDL No. 1917 |
| This Document Relates To:<br><br>CERTAIN DIRECT ACTION COMPLAINTS | **SAMSUNG ELECTRONICS CO., LTD. AND SAMSUNG ELECTRONICS AMERICA, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS AND FOR JUDGMENT ON THE PLEADINGS AS TO CERTAIN DIRECT ACTION PLAINTIFFS' COMPLAINTS AND MEMORANDUM OF LAW IN SUPPORT**<br><br>[Proposed] Order Granting Motion to Dismiss Without Leave to Amend and as Applicable for Judgment on the Pleadings, Filed Concurrently Herewith<br><br>Date:  November 30, 2012, 10:00 a.m. (tentative)<br>Place:  JAMS Resolution Center<br>Special Master:  Hon. Charles A. Legge (Ret.) |

**NOTICE OF MOTION AND MOTION**

To all parties and their attorneys of record:

Please take notice that on November 30, 2012, at 10:00 a.m. or as soon thereafter as this matter may be heard before the Honorable Charles A. Legge, U.S. District Court Judge (Ret.), Special Master, in the San Francisco Resolution Center of JAMS, Two Embarcadero Center, Suite 1500, San Francisco, California 94111, Defendants Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. will move this Court for an order dismissing certain Direct Action Plaintiffs' complaints without leave to amend for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), and as applicable for judgment on the pleadings in favor of Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. pursuant to Federal Rule of Civil Procedure 12(c).

The motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities in support thereof, the attached Appendix, the pleadings and correspondence on file with the Court, and arguments and authorities as may be presented at or before the hearing.

**STATEMENT OF THE ISSUES**

Pursuant to Fed. R. Civ. P. 12(b)(6) and 12(c), defendants Samsung Electronics Co., Ltd. ("SEC") and Samsung Electronics America, Inc. ("SEAI") move to dismiss, and as applicable for judgment on the pleadings as to, certain Direct Action Plaintiffs' (collectively "DAPs") complaints (collectively "Complaints")[1] on the following grounds:[2]

---

[1] This Motion seeks dismissal of SEC and SEAI in the following Complaints: *Stoebner v. LG Electronics, Inc.*, No. 11-cv-05381 (N.D. Cal.) [Dkt. No. 1] (Nov. 7, 2011) ("Polaroid Compl."); *Target Corp. v. Chunghwa Picture Tubes, Ltd.*, No. 11-cv-05514 (N.D. Cal.) [Dkt. No. 9] (Jan. 6, 2012) ("Target Am. Compl."); *P.C. Richard & Son Long Island Corp. v. Hitachi, Ltd.*, No. 12-cv-02648 (N.D. Cal.) [Dkt. No. 1] (Nov. 14, 2011) ("P.C. Richard Compl."); *Schultze Agency Servs., LLC v. Hitachi, Ltd.*, No. 12-cv-02649 (N.D. Cal. ) [Dkt. No. 1] (Nov. 14, 2011) ("Tweeter Compl."); *CompuCom Systems, Inc. v. Hitachi, Ltd.*, No. 11-cv-06396 (N.D. Cal.) [Dkt. No. 1] (Nov. 14, 2011) ("CompuCom Compl."); *Interbond Corp. of Am. v. Hitachi, Ltd.*, No. 11-cv-06275 (N.D. Cal.) [Dkt. No. 1] (Nov. 14, 2011) ("Interbond Compl."); *Costco Wholesale Corp. v. Hitachi, Ltd.*, No. 11-cv-06397 (N.D. Cal.) [Dkt. No. 1] (Nov. 14, 2011) ("Costco Compl."); *Siegel v. Hitachi, Ltd.*, No. 11-cv-05502 (N.D. Cal.) [Dkt. No. 1] (Nov. 14, 2011) ("Circuit City Compl."); and *Office Depot, Inc. v. Hitachi, Ltd.*, No. 11-cv-06276 (N.D. Cal.) [Dkt. No. 1] (Nov. 14, 2011) ("Office Depot Compl."). This Motion seeks judgment on the pleadings in favor of SEC and SEAI as to the complaint in *Electrograph Systems, Inc. v. Hitachi,*

-i-

1.     The Complaints fail to state a claim upon which relief may be granted against SEC and SEAI because they fail to allege plausibly that SEC or SEAI conspired to fix the prices of cathode ray tubes ("CRTs"), a product which neither SEC nor SEAI has ever manufactured or sold.

2.     The Complaints further fail to state a claim against SEC or SEAI because generic references to the non-existent entity "Samsung" are improper and, even on their own terms, do not allege plausibly that SEC or SEAI conspired to fix the prices of CRTs.

3.     The Complaints further fail to state a claim against SEC or SEAI because they allege a conspiracy that is economically nonsensical as to SEC and SEAI, and as such fail to allege plausible grounds for relief.

4.     Plaintiffs cannot hold SEC or SEAI vicariously liable for the alleged actions of Samsung SDI Co., Ltd. or its subsidiaries (collectively "Samsung SDI"), a separate corporate entity in which SEC owns less than a 20 percent passive stake.

---

*Ltd.*, No. 11-cv-01656 (N.D. Cal.) [Dkt. No. 5] (Mar. 10, 2011) ("Electrograph Am. Compl."), as SEC and SEAI each have filed answers to that complaint. *See* Samsung Electronics Co., Ltd.'s Answer to Electrograph Systems, Inc.'s and Electrograph Technologies Corp.'s First Amended Complaint [Dkt. No. 984] (July 25, 2011); Samsung Electronics America, Inc.'s Answer to Electrograph Systems, Inc.'s and Electrograph Technologies Corp.'s First Amended Complaint [Dkt. No. 985] (July 25, 2011).  SEC and SEAI are not named as defendants in the complaint in *Best Buy Co. v. Hitachi Ltd.*, No. 11-cv-05513 (N.D. Cal.) [Dkt. No. 1] (Nov. 14, 2011).

[2]     SEC and SEAI join in Defendants' Joint Notice of Motion and Motion to Dismiss Direct Action Plaintiffs' Complaints, filed concurrently, and submit this separate Motion to address issues specific to them.

# TABLE OF CONTENTS

Pages

INTRODUCTION ...................................................................................................... 1

FACTUAL BACKGROUND ...................................................................................... 1

I.  DAPs Allege A Conspiracy To Fix The Price Of Cathode Ray Tubes And Have
    Expressly Disclaimed Any Conspiracy As To Finished Products ...................... 1

II. DAPs Do Not, Nor Could They, Allege That SEC Or SEAI Manufacture, Market,
    Or Sell CRTs ..................................................................................................... 2

LEGAL STANDARD .................................................................................................. 4

ARGUMENT ............................................................................................................... 5

I.  DAPs' Complaints Fail To Allege Facts That SEC Or SEAI Agreed To Fix The Price
    Of CRTs .............................................................................................................. 5

    A.  The Complaints Against SEC And SEAI Must Be Dismissed Because They Fail
        To Allege Plausibly That SEC Or SEAI Conspired To Fix The Price Of A Product
        They Do Not And Have Never Manufactured Or Sold............................................. 5

    B.  DAPs' Generalized Allegations Against A Non-Existent And Contrived Entity
        "Samsung" Are Improper And Are Not Sufficient To State A Claim Against SEC
        Or SEAI............................................................................................................. 8

        1.  Allegations Against "Samsung" Are Improper........................................... 8

        2.  Even On Their Own Terms, The Allegations Against "Samsung" Do Not
            State A Plausible Claim Against SEC Or SEAI ...................................... 10

    C.  The Complaints Against SEC And SEAI Must Be Dismissed Because The Alleged
        CRT Price-Fixing Conspiracy Makes No Economic Sense As To SEC And
        SEAI ................................................................................................................. 11

II. The Complaints Do Not Sufficiently Allege That SEC Or SEAI Is Vicariously Liable
    For Samsung SDI's Alleged Conduct .................................................................. 13

CONCLUSION ............................................................................................................ 15

-iii-

SAMSUNG ELECTRONICS CO., LTD., AND SAMSUNG ELECTRONICS AMERICA, INC.'S NOTICE OF MOTION AND MOTION TO
DISMISS AND FOR JUDGMENT ON THE PLEADINGS AS TO CERTAIN DIRECT ACTION PLAINTIFFS' COMPLAINTS AND
MEMORANDUM OF LAW IN SUPPORT (3:07-CV-05944 SC, MDL NO. 1917)

## Table of Authorities

Pages

**Cases**

*Alaska Airlines, Inc. v. Carey,*
    No. C 07-5711 RBI, 2008 WL 2725796 (W.D. Wash. July 11, 2008) ................................... 10

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ............................................................................................... 4, 5, 14

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) .......................................................................................... *passim*

*Bowoto v. Chevron Texaco Corp.,*
    312 F. Supp. 2d 1229 (N.D. Cal. 2004) ..................................................................... 14

*Brennan v. Concord EFS, Inc.,*
    369 F. Supp. 2d 1127 (N.D. Cal. 2005) ....................................................................... 9

*Brunson Commc'ns, Inc. v. Arbitron,*
    239 F. Supp. 2d 550 (E.D. Pa. 2002) ........................................................................ 12

*Cancall PCS v. Omnipoint Corp.,*
    No. 99 Civ 3395 AGS, 2000 WL 272309 (S.D.N.Y. Mar. 10, 2000) ................................... 12

*Car Carriers v. Ford Motor Co.,*
    745 F.2d 1101 (7th Cir. 1984) ................................................................................... 12

*Clegg v. Cult Awareness Network,*
    18 F.3d 752 (9th Cir. 1994) ......................................................................................... 4

*DM Research, Inc. v. Coll. of Am. Pathologists,*
    170 F.3d 53 (1st Cir. 1999) ....................................................................................... 12

*Dole Food Co. v. Patrickson,*
    538 U.S. 468 (2003) ................................................................................................ 14

*Dworkin v. Hustler Magazine, Inc.,*
    867 F.2d 1188 (9th Cir. 1989) ..................................................................................... 5

*E. & J. Gallo Winery v. EnCana Energy Servs., Inc.,*
    No. 03-5412, 2008 U.S. Dist. LEXIS 46927 (E.D. Cal. May 23, 2008) ......................... 14, 15

*Herrera v. LCS Fin. Servs. Corp.,*
    No C09-02843, 2009 WL 5062192 (N.D. Cal. Dec. 22, 2009) ................................... 8

*Hinds County, Miss. v. Wachovia Bank N.A.,*
    790 F. Supp. 2d 106 (S.D.N.Y. 2011) ........................................................................ 8

*In re Cal. Title Ins. Antitrust Litig.,*
  No. C 08-01341, 2009 U.S. Dist. LEXIS 43323 (N.D. Cal. May 21, 2009) ............................ 9

*In re Late Fee & Over-Limit Fee Litig.,*
  528 F. Supp. 2d 953 (N.D. Cal. 2007) ............................................................... 11

*In re Sagent Tech., Inc. Derivative Litig.,*
  278 F. Supp. 2d 1079 (N.D. Cal. 2003) ......................................................... 8, 10

*In re TFT-LCD (Flat Panel) Antitrust Litig. ("TFT-LCD"),*
  586 F. Supp. 2d 1109 (N.D. Cal. 2008) ........................................................ 8, 9

*In re TFT-LCD Antitrust Litig.,*
  599 F. Supp. 2d 1179 (N.D. Cal. 2009) ............................................................. 9

*In re Travel Agent Comm'n Antitrust Litig.,*
  No. 1:03 CV 30000, 2007 WL 3171675 (N.D. Ohio Oct. 29, 2007)............................ 10

*Jung v. Ass'n of American Medical Colleges,*
  300 F. Supp. 2d 119 (D.D.C. 2004) ................................................................. 9

*Katzir's Floor & Home Design, Inc. v. M-MLS.com,*
  394 F.3d 1143 (9th Cir. 2004) ...................................................................... 14

*Kendall v. Visa U.S.A., Inc.,*
  518 F.3d 1042 (9th Cir. 2008)............................................................... *passim*

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
  475 U.S. 574 (1986) ................................................................................ 12

*MGIC Indem. Corp. v. Weisman,*
  803 F.2d 500 (9th Cir. 1986).......................................................................... 2

*Mountain View Pharm. v. Abbott Labs.,*
  630 F.2d 1383 (10th Cir. 1980).......................................................................... 9

*Neilson v. Union Bank of Cal., N.A.,*
  290 F. Supp. 2d 1101 (C.D. Cal. 2003) .............................................................. 14

*Papasan v. Allain,*
  478 U.S. 265 (1986)...................................................................................... 3

*Sanchez v. Pereira-Castillo,*
  590 F.3d 31 (1st Cir. 2009)............................................................................. 8

*United Magazine Co. v. Murdoch Magazines Distrib.,*
  146 F. Supp. 2d 385 (S.D.N.Y. 2001)................................................................ 12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*United States v. Bestfoods*,
    524 U.S. 51 (1998) .......................................................................................................... 14

*United States v. Borelli*,
    336 F.2d 376 (2d Cir. 1964) ............................................................................................. 8

*United States v. Falcone*,
    109 F.2d 579 (2d Cir.), *aff'd*, 311 U.S. 205 (1940) ....................................................... 8

*Universal Grading Serv. v. eBay, Inc.*,
    No. C-09-2755, 2012 U.S. Dist. LEXIS 2325 (N.D. Cal. Jan. 9, 2012) ......................... 12, 13

*Van Buskirk v. CNN*,
    284 F.3d 977 (9th Cir. 2002) ............................................................................................ 2

*Wahl v. American Sec. Ins. Co.*,
    No. C 08-00555 RS, 2010 WL 1881126 (N.D. Cal. May 10, 2010) ............................... 5

**Other Authorities**
Fed. R. Civ. P. 11 .................................................................................................................... 2

Fed. R. Civ. P. 12(b)(6) .................................................................................................. 5, 12, 15

Fed. R. Civ. P. 12(c) ........................................................................................................ 5, 15

Fed. R. Civ. P. 8(a)(2) ............................................................................................................ 3

RESTATEMENT (THIRD) OF AGENCY § 1.01 (2012) .............................................................. 15

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**INTRODUCTION**

3

DAPs' Complaints, which track one another almost verbatim, allege a conspiracy to fix

4

the price of a single product—CRTs.[3] SEC and SEAI do not and have never manufactured CRTs.

5

Instead, SEC **purchased** CRTs, which it incorporated into televisions and computer display

6

monitors, *i.e.*, finished products, that it manufactured and that SEAI sold in the United States.

7

Even though DAPs have expressly disclaimed any conspiracy as to finished products, DAPs

8

nonetheless allege that SEC and SEAI conspired to fix the prices of a product they did not sell but

9

in fact purchased (or, in the case of SEAI, neither).

10

This Court should dismiss DAPs' Complaints insofar as they allege that SEC and SEAI

11

directly participated in, or are somehow vicariously liable for, the alleged CRT conspiracy. **First**,

12

DAPs' Complaints fail to allege plausibly that SEC or SEAI directly participated in a conspiracy

13

involving a product they never manufactured or sold. **Second**, DAPs cannot save their

14

Complaints by resorting to generic allegations against "defendants" or "Samsung" because those

15

shoddy pleading tactics are impermissible and, even putting that deficiency aside, those

16

allegations do not state a claim against SEC or SEAI. **Third**, DAPs' Complaints allege a

17

conspiracy that makes no economic sense as to SEC and SEAI, as reflected in a simple question:

18

why would SEC conspire to fix the price of a product it purchases from, among others,

19

Chunghwa? The Complaints have no answer to this. **Fourth**, DAPs fail to allege facts sufficient

20

to state a claim that SEC or SEAI are somehow vicariously liable for the conduct of Samsung

21

SDI—a separate and distinct public company that is represented by separate counsel in this

22

litigation, and in which SEC holds less than a 20 percent equity stake.

23

**FACTUAL BACKGROUND**

24

**I.     DAPs Allege A Conspiracy To Fix The Price Of Cathode Ray Tubes And Have
        Expressly Disclaimed Any Conspiracy As To Finished Products.**

25

26

CRTs include both (1) color display tubes ("CDTs"), which are the internal tubes used in

27

28

---

[3]      Some complaints refer ambiguously to a conspiracy to fix the price of "CRT Products,"
but all DAPs have now expressly limited their allegations to CRTs themselves.

1    color computer monitors, and (2) color picture tubes ("CPTs"), which are the internal tubes used

2    in color televisions.  *See* Polaroid Compl. ¶ 13.[4]  While some DAPs alleged a conspiracy to fix

3    only the price of CRTs, others appeared to allege a conspiracy to fix the price of what they call

4    "CRT Products," which those DAPs define to include both "(a) CRTs[] and (b) products

5    containing CRTs, such as television sets and computer monitors."  *Id.* ¶ 14.  Despite this hazy and

6    imprecise definition that sweeps in both CRT components ***and*** end products containing CRTs,

7    since filing their Complaints, DAPs have expressly disclaimed any allegations of a conspiracy as

8    to finished products.  *See* July 17, 2012 Letter from Philip J. Iovieno to Eva W. Cole and Molly

9    M. Donovan (attached as Exhibit A to the August 17, 2012 Declaration of Ian Simmons, filed

10   concurrently).  Specifically, "DAPs are not asserting any" claims "alleging that Defendants have

11   combined and conspired to fix, raise, maintain or stabilize the prices of certain products

12   containing CRTs (CRT Finished Products) . . . in their current [c]omplaints."  *Id.* at 1.  Instead,

13   DAPs allege that Defendants conspired to fix the price of CRTs, which had an "effect on the price

14   of CRT Finished Products" that DAPs allegedly purchased.  *Id.*  This course follows the path of

15   Direct Purchaser Plaintiffs, who, facing Rule 11 sanctions after Your Honor concluded that they

16   had no reasonable basis to allege any agreement to fix the prices of finished products containing

17   CRTs, *see* Report and Recommendations on Motions Regarding Finished Products [Dkt. No.

18   947] (June 15, 2011) at 10-13, voluntarily stipulated to "withdraw their CRT Finished Products

19   Conspiracy Claims," *see* Stipulation [Dkt. No. 996] at 2 (so ordered by the Court on August 26,

20   2011).

21   **II.     DAPs Do Not, Nor Could They, Allege That SEC Or SEAI Manufacture, Market, Or
22            Sell CRTs.**

23           SEC is a consumer goods and services company.[5]  SEC owns 100 percent of SEAI, which

24

_____

25   [4]     Because the Complaints are so similar, SEC and SEAI herein cite the Polaroid Complaint
     and attach as Appendix A a table identifying the paragraphs of the other Complaints in which
26   identical or substantially similar allegations may be found.  The few differences between the
     Complaints are addressed as appropriate.

27   [5]     *See, e.g.*, Samsung Investor Relations FAQs, *available at*
28   http://www.samsung.com/us/aboutsamsung/ir/irfaqs/general/IR_General.html.  In ruling on a
     motion to dismiss, the Court may consider such matters of public record without converting the

markets consumer electronics, information systems, and home appliance products in the United States.[6]  Publicly available information makes clear that SEC and SEAI made or marketed finished products during the alleged conspiracy period.[7]  Nowhere do DAPs allege that SEC or SEAI manufacture, market, or sell CRTs—nor could they, as neither SEC nor SEAI have ever done so.  Although the Complaints seek to obfuscate this important fact by alleging that SEC and SEAI manufacture, sell, and market "CRT Products," the Complaints nevertheless make clear that SEC and SEAI were ***purchasers*** of CRTs and sellers of finished products containing CRTs.  *See* Polaroid Compl. ¶ 93(k) ("Defendant Samtel claims to have supplied CRTs to Defendant[] . . . Samsung . . . ."); *id.* ¶ 160 ("[V]arious computer monitor manufacturers, including . . . Samsung, were raising the price of their monitors in response to increases in CRT prices . . . .").[8]  By contrast, when one of the named defendants did manufacture CRTs, the Complaints so allege. *See, e.g.*, Polaroid Compl. ¶ 66 (alleging that "Chunghwa Malaysia is a leading worldwide supplier of CRTs").  In fact, DAPs specifically allege that an entirely different defendant entity— Samsung ***SDI***—manufacturers CRTs.  *See* Polaroid Compl. ¶ 35 (alleging that, in 2002, Samsung SDI held a larger worldwide market share in CRTs "than another [sic] other producer"); *see also* Costco Compl. ¶ 146.[9]  Samsung SDI is a public company represented by separate counsel in this action, in which SEC owns less than a 20 percent equity stake.  *See* Polaroid Compl. ¶ 35 (acknowledging that "Samsung SDI is a public company" in which SEC holds less than "20 percent of the stock").  Public documents confirm SEC's minority ownership of Samsung SDI.[10]

---

motion into one for summary judgment.  *See, e.g.*, *Van Buskirk v. CNN*, 284 F.3d 977, 980 (9th Cir. 2002); *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986).

[6]    *See* About Samsung, *available at* http://www.samsung.com/us/aboutsamsung/ourbusinesses/businessarea/usdivisions.html.

[7]    *See, e.g.*, Samsung Electronics 1998 Annual Report at 15, 28, *available at* http://www.samsung.com/us/aboutsamsung/ir/financialinformation/annualreport/downloads/1998 /sec98AR-e-full.pdf.

[8]    The Target amended complaint does not contain the ambiguous term "CRT Products," but it similarly makes clear that SEC and SEAI were purchasers of CRTs or sellers of finished products containing CRTs.  *See* Appendix A.

[9]    Plaintiff Costco does not name Samsung SDI as a defendant.

[10]    *See* SEC Annual Reports, 1998-2007, *available at* http://www.samsung.com/us/aboutsamsung/ir/financialinformation/annualreport/IR_Annual2007.

**LEGAL STANDARD**

Under Fed. R. Civ. P. 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." With respect to a price-fixing conspiracy, the Ninth Circuit has explained:

> [A] plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level. . . . In applying these general standards to a § 1 claim, . . . stating such a claim requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made. Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of illegal agreement. . . . [A]n allegation of parallel conduct and a bare assertion of conspiracy will not suffice.

*Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1046-47 (9th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)) (omissions and first and third alterations in original; internal citation omitted). The sound reason for this rule is that "discovery in antitrust cases frequently causes substantial expenditures and gives the plaintiff the opportunity to extort large settlements even where he does not have much of a case." *Id.* at 1047 (citing *Twombly*, 550 U.S. at 557-59). Moreover, "[a] bare allegation of a conspiracy is almost impossible to defend against, particularly where the defendants are large institutions with hundreds of employees entering into contracts and agreements daily." *Id.* It follows that "to allege an agreement between antitrust co-conspirators, the complaint must allege facts such as a 'specific time, place, or person involved in the alleged conspiracies' to give a defendant seeking to respond to allegations of a conspiracy an idea of where to begin." *Id.* at 1047 (citing *Twombly*, 550 U.S. at 565 n.10).

A complaint cannot circumvent these obligations by asserting legal conclusions that masquerade as facts. Both the Supreme Court and the Ninth Circuit have long recognized that courts are "not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation omitted); *see also Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994)

html; Samsung SDI America, Inc.'s Certification of Interested Parties or Persons Pursuant to Civil Local Rule 3-16 [Dkt. No. 14] (Dec. 18, 2007), at 2.

1   ("[T]he court is not required to accept legal conclusions cast in the form of factual allegations if

2   those conclusions cannot reasonably be drawn from the facts alleged.").  Rather, "a plaintiff's

3   obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and

4   conclusions, and a formulaic recitation of the elements of a cause of action will not do."

5   *Twombly*, 550 U.S. at 555 (citation omitted) (alteration in original); *see also Iqbal*, 556 U.S. at

6   678.  In sum, "the Federal Rules [do] not require courts to credit a complaint's conclusory

7   statements without reference to its factual context." *Iqbal*, 556 U.S. at 685.

8         "The standard governing a Rule 12(c) motion is essentially the same as that governing a

9   Rule 12(b)(6) motion." *Wahl v. American Sec. Ins. Co.*, No. C 08-00555 RS, 2010 WL 1881126,

10  at *2 (N.D. Cal. May 10, 2010) (citing *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192

11  (9th Cir. 1989)).

12                                  **ARGUMENT**

13  **I.    DAPs' Complaints Fail To Allege Facts That SEC Or SEAI Agreed To Fix The Price
        Of CRTs.**

14

15       **A.    The Complaints Against SEC And SEAI Must Be Dismissed Because They
              Fail To Allege Plausibly That SEC Or SEAI Conspired To Fix The Price Of A
              Product They Do Not And Have Never Manufactured Or Sold.**

16

17       Not a single paragraph in the Complaints alleges any facts suggesting that SEC or SEAI

18  actually participated in the alleged conspiracy to fix the price of CRTs.[11]  Indeed, the Complaints

19  are entirely devoid of factual allegations against SEC and SEAI—"such as a 'specific time, place,

20  or person involved in the alleged conspiracies'"—that a "complaint must allege" in order to state

21  a plausible claim. *Kendall*, 518 F.3d at 1047 (quoting *Twombly*, 550 U.S. at 565 n.10).  For

22  example, nowhere in the Complaints do DAPs:

23       1.    Identify a single SEC or SEAI employee who allegedly participated in the
              conspiracy;

24

25       2.    Point to a single conspiratorial meeting at which an SEC or SEAI employee was
              present or participated;

26  _____

27  [11]     In what appears to be an attempt to make up for this deficiency, DAPs cast a variety of
     vague allegations against "Samsung."  However, this entity exists only in the defined terms of
     DAPs' Complaints, and in any event, this sloppy pleading tactic is improper and the allegations

28  do not state a plausible entitlement to relief even on their own terms. *See infra* Part I.B.

3.     Offer any correspondence indicating that SEC or SEAI or any of their employees participated in the alleged conspiracy; or

4.     Explain why SEC or SEAI would agree to a conspiracy contrary to their own economic interests.

This silence is not surprising given that SEC and SEAI do not manufacture or sell the product DAPs allege to be price-fixed.  Moreover, DAPs' failure to make any specific allegations directed toward SEC's or SEAI's participation in the CRT conspiracy—notwithstanding the ample opportunities DAPs have had to develop sufficient factual allegations before and since this litigation commenced—speaks volumes given that, when DAPs were able to, they did make specific allegations against particular corporate entities (rather than generic allegations against entire corporate families).  *See, e.g.*, Polaroid Compl. ¶¶ 4, 166-169.

Even in the few allegations singling out SEC or SEAI, DAPs offer up—in lieu of factual averments—only conclusory allegations.  As to SEC, DAPs allege that "[b]etween at least 1995 and 2007, Defendant Samsung, through SEC [and several Samsung SDI entities] participated in" a number of conspiratorial meetings.  Polaroid Compl. ¶ 130.[12]  DAPs go on to say that "the highest ranking executives" of "Samsung" attended these meetings, that "Samsung" separately "engaged in bilateral discussions with each of the other Defendants," by which "Samsung" "agreed on prices and supply levels for CRT Products."[13]  *Id.*  These allegations are insufficient. To begin with, the alleged time period spans over a decade, and the allegation lacks any other facts such as the names of SEC (or even "Samsung") employees who allegedly participated in (or even attended) these meetings.  *See Kendall*, 518 F.3d at 1047.  In addition, DAPs aver no facts showing how the imaginary entity "Samsung," "through" SEC, "participated" in the alleged meetings.  This shortcoming is fatal to DAPs' claims—"through" is a vague characterization of conduct rather than an allegation of actual conduct, and "participated" is a bare legal conclusion. Indeed, in *Iqbal*, the Supreme Court rebuffed virtually identical allegations.  *See* 556 U.S. at 681

---

[12]     Costco's allegations are even more deficient, alleging merely that "Samsung"—as opposed to "Samsung, through SEC"—participated in these meetings.  *See* Costco Compl. ¶ 127.

[13]     In light of DAPs' subsequent letter disclaiming any conspiracy as to finished products, this allegation must be taken to refer to CRTs and not finished products containing CRTs.  For its part, the Target amended complaint alleges a conspiracy to "agree[] on prices and supply levels for CRTs."  Target Am. Compl. ¶ 166.

1   (ruling that "bald allegations" that one defendant was "'principal architect'" of and other

2   defendant "was 'instrumental' to" challenged policy were "too chimerical to be maintained").

3   The absence of any factual allegations is all the more problematic given that many references to

4   "Samsung" in this paragraph contemplate that entity as a ***seller***, rather than a ***purchaser***, of

5   tubes—it is implausible that a purchaser such as SEC could somehow set a product's "supply

6   levels."  Finally, the allegation that SEC would conspire to pay a higher price for tubes makes no

7   economic sense and is thus implausible on its face.  *See infra* Part I.C.

8           DAPs separately allege that "SEAI [and various Samsung SDI entities] were represented

9   at those meetings and were a party to the agreements entered at them."  Polaroid Compl. ¶ 131.

10   But again, DAPs—despite having every opportunity to do so—have alleged absolutely no facts as

11   to how SEAI was "represented" at any meetings or how it was a "party" to any agreements.  Nor

12   do DAPs offer any plausible reason why SEAI would or even could have done so, as it is a

13   marketer and seller of finished products—it never even bought tubes—and it would thus be

14   economically irrational for SEAI to conspire to raise the component price of the products it sells.

15   *See infra* Part I.C.  DAPs go on to allege that SEC and SEAI "played a significant role in the

16   conspiracy" "[t]o the extent" that either entity sold or distributed "CRT Products" out of some

17   desire "to ensure that the prices for CRT Products paid by direct purchasers would not undercut

18   the CRT pricing agreements reached at" the meetings, such that SEAI (but apparently not SEC)

19   was an "active, knowing participant[]."  *Id.*  But DAPs have since disclaimed any finished

20   product conspiracy.  And at all events, the allegation is fatally ambiguous on a number of points:

21   Does "CRT Product" refer to a CRT or a finished product?  And who exactly is a "direct

22   purchaser[]" as the term is used here?  Moreover, the legal conclusion that SEAI "participat[ed]"

23   in the conspiracy does not follow from DAPs' premises because passing on increased costs of

24   components to downstream purchasers does not plausibly allege membership in a conspiracy.

25   *See Kendall*, 518 F.3d at 1049 ("Allegations of facts that could just as easily suggest rational,

26   legal business behavior by the defendants as they could suggest an illegal conspiracy are

27   insufficient to plead a violation of the antitrust laws." (citing *Twombly*, 550 U.S. at 557 & n.5)).

28

1

2

**B.      DAPs' Generalized Allegations Against A Non-Existent And Contrived Entity "Samsung" Are Improper And Are Not Sufficient To State A Claim Against SEC Or SEAI.**

3

4

Allegations against "Samsung" pervade DAPs' Complaints.  *See* Polaroid Compl. ¶¶ 89,

5

106, 107, 129, 142.  But this entity exists nowhere outside DAPs' pleadings,[14] and this slipshod

6

pleading tactic—by which DAPs attempt to erase the corporate form through mere stroke of the

7

pen and lump SEC and SEAI together with Samsung SDI—cannot be used to skirt their

8

obligation to state a plausible claim as to ***each defendant's*** participation in the conspiracy

9

alleged.  And even taking those allegations on their own terms, they do not allege plausibly that

10

SEC or SEAI conspired to fix the prices of CRTs.

11

**1.      Allegations Against "Samsung" Are Improper.**

12

First and foremost, DAPs fail to discharge their duty to allege a plausible conspiracy in

13

which either SEC or SEAI participated.  The well-settled rule, as famously expressed by Judge

14

Friendly through the words of Judge Learned Hand, is that "in order for a man to be held for

15

joining others in a conspiracy, he 'must in some sense promote their venture himself, make it his

16

own.'"  *United States v. Borelli*, 336 F.2d 376, 385 (2d Cir. 1964) (quoting *United States v.*

17

*Falcone*, 109 F.2d 579, 581 (2d Cir.), *aff'd*, 311 U.S. 205 (1940)).  Thus, a complaint "must

18

allege that ***each*** individual defendant joined the conspiracy and played some role in it because, at

19

the heart of an antitrust conspiracy is an agreement and a conscious decision by each defendant to

20

join it."  *In re TFT-LCD (Flat Panel) Antitrust Litig. ("TFT-LCD")*, 586 F. Supp. 2d 1109, 1117

21

(N.D. Cal. 2008) (internal quotation omitted; emphasis added); *see also Sanchez v. Pereira-*

22

*Castillo*, 590 F.3d 31, 48 (1st Cir. 2009) ("[W]e must determine whether, ***as to each defendant***, a

23

plaintiff's pleadings are sufficient to state a claim on which relief can be granted." (emphasis in

24

original)); *Hinds County, Miss. v. Wachovia Bank N.A.*, 790 F. Supp. 2d 106, 115 (S.D.N.Y.

25

2011) ("A § 1 complaint must adequately allege the plausible involvement of each defendant.");

26

27

28

---

[14]      DAPs' Complaints state that "Defendants SEC, SEAl, Samsung SDI, Samsung SDI America, Samsung SDI Mexico, Samsung SDI Brazil, Samsung SDI Shenzhen, Samsung SDI Tianjin, and Samsung SDI Malaysia are referred to collectively herein as 'Samsung.'"  Polaroid Compl. ¶ 42; *see also* Costco Compl. ¶ 41.

1  *In re Sagent Tech., Inc. Derivative Litig.*, 278 F. Supp. 2d 1079, 1094 (N.D. Cal. 2003); *Herrera*

2  *v. LCS Fin. Servs. Corp.*, No C09-02843, 2009 WL 5062192, at *4 (N.D. Cal. Dec. 22, 2009)

3  (plaintiff must "show that she has pled a single plausible violation by each Defendant").

4        Under these accepted principles, generalized allegations against a group of defendants do

5  not suffice to allege plausibly each defendant's participation in a price-fixing conspiracy.  In *Jung*

6  *v. Ass'n of American Medical Colleges*, 300 F. Supp. 119 (D.D.C. 2004), the court correctly

7  assessed a motion to dismiss on a defendant-by-defendant basis and granted the motion as to

8  certain defendants, cogently reasoning that "[p]laintiffs cannot escape their burden of alleging

9  that each defendant participated in or agreed to join the conspiracy by using the term 'defendants'

10  to apply to numerous parties without any specific allegations as to" a particular defendant.  *Id.* at

11  163.  Thus, the court ruled that "plaintiffs' use of the term 'defendants' to refer to multiple

12  defendants situated very differently from one another in the context of general and global

13  allegations is insufficient either by itself or in combination with [other] allegations [in the

14  complaint] to demonstrate a basis for [one particular defendant's] participation in the conspiracy."

15  *Id.*  For the same reason, DAPs cannot sidestep the obligation to plausibly allege SEC's and

16  SEAI's participation by casting aspersions against "Samsung," an entity of their own fabrication.

17  *See TFT-LCD*, 586 F. Supp. 2d at 1117 ("The Court agrees that general allegations as to all

18  defendants, to 'Japanese defendants,' or to a single corporate entity such as 'Hitachi' [are]

19  insufficient to put specific defendants on notice of the claims against them.").[15]

20

---

21    [15]    True enough, the *TFT-LCD* court later allowed a complaint to go forward with allegations against corporate families. *See In re TFT-LCD Antitrust Litig.*, 599 F. Supp. 2d 1179 (N.D. Cal.

22  2009).  But some of the Complaints, such as Costco's, lack the allegations of "control" found in the amended complaint that the *TFT-LCD* court sustained.  *See infra* note 19.  And whatever the

23  merits of allowing generic pleading generally, lumping SEC and SEAI together with the Samsung SDI entities in this case is inappropriate on its face.  Samsung SDI, a public company represented

24  by separate counsel, is an entity separate from SEC, in which SEC owns less than a 20 percent equity stake.  More important, broad allegations against "Samsung" are improper here because

25  Samsung SDI manufactures CRTs, which are the object of the alleged conspiracy, while neither SEC nor SEAI do so.  Even if it could plausibly be alleged that SEC or SEAI participated in a

26  conspiracy to fix the prices of a product that they do not make, there is no way they could have participated in the alleged conspiracy in the same way as a manufacturer and seller of CRTs like

27  Samsung SDI.  In these circumstances, an allegation against "Samsung"—particularly where the allegation manifestly refers to "Samsung" as a manufacturer or seller of CRTs—is improper and

28  does not plausibly allege the participation of SEC or SEAI in the alleged conspiracy.

1        Rather, DAPs state a claim as to SEC's and SEAI's participation only if they allege facts

2  connecting those entities to the conspiracy.  *See, e.g.*, *Mountain View Pharm. v. Abbott Labs.*, 630

3  F.2d 1383, 1388 (10th Cir. 1980) ("A blanket statement that twenty-eight defendants have

4  conspired to fix prices on drug sales to thirteen plaintiffs does not provide adequate notice for

5  responsive pleading."); *Brennan v. Concord EFS, Inc.*, 369 F. Supp. 2d 1127, 1136 (N.D. Cal.

6  2005) (dismissing complaint against certain defendants because it failed to plead allegations

7  "specifically connecting [those defendants] to the alleged conspiracy"); *In re Sagent Tech., Inc.*

8  *Derivative Litig.*, 278 F. Supp. 2d 1079, 1094 (N.D. Cal. 2003) ("[T]he complaint fails to state a

9  claim because plaintiffs do not indicate which individual defendant or defendants were

10  responsible for which alleged wrongful act."); *In re Cal. Title Ins. Antitrust Litig.*, No. C 08-

11  01341, 2009 U.S. Dist. LEXIS 43323, at *28-29 (N.D. Cal. May 21, 2009) ("Plaintiffs attempt to

12  show the Parent Corporations directly participated in the conspiracy by making general

13  allegations as to the families of the title insurance companies, without any specific allegations as

14  to what the Parent Corporations did.  Those allegations are insufficient to put the Parent

15  Corporations on notice of the claims asserted against them.").[16]  Because DAPs' allegations fall

16  well short of this basic pleading requirement, the Complaints must be dismissed.[17]

17                **2.**       **Even On Their Own Terms, The Allegations Against "Samsung" Do Not State A Plausible Claim Against SEC Or SEAI.**

18

19  [16]    *See also Alaska Airlines, Inc. v. Carey*, No. C 07-5711 RBI, 2008 WL 2725796, at *7 (W.D. Wash. July 11, 2008) (at the pleading stage, sustaining § 1 claims against some defendants

20  but dismissing as to another because allegations "do not establish that [she] personally joined a conspiracy or played an individual role in it"); *In re Travel Agent Comm'n Antitrust Litig.*, No.

21  1:03 CV 30000, 2007 WL 3171675, at *3 n.4 (N.D. Ohio Oct. 29, 2007) (at the pleading stage, conducting defendant-by-defendant analysis; dismissing claims against one defendant, for

22  example, "because there is no factual matter to plausibly suggest that [it] joined or participated in an unlawful conspiracy") (citing *Twombly*).

23  [17]    DAPs, perhaps recognizing the weakness of their allegations, attempt to rescue their Complaints by resorting to charges that are more dubious still.  *See* Polaroid Compl. ¶ 151

24  ("When Plaintiffs refers [sic] to a corporate family or companies by a single name in their allegations of participation in the conspiracy, Plaintiffs are alleging that one or more employees

25  or agents of entities within the corporate family engaged in conspiratorial meetings on behalf of every company in that family.").  But this fails as a matter of law.  Not only is this charge entirely

26  unaccompanied by any supporting factual allegations, but also it flies in the face of the well-settled presumption of corporate separateness—a principle that applies even to a wholly owned

27  subsidiary and its parent, and carries yet stronger force where, as here, a corporate entity is alleged to "control" a public company in which it holds only a minority, passive stake.  *See infra*

28  Part II.

1    Putting aside the impropriety of DAPs' blanket allegations against "Samsung," it is clear

2   that those allegations against that imaginary entity are still legally deficient to state a claim as to

3   SEC and SEAI.  First, many allegations as to "Samsung" manifestly refer to Samsung SDI, the

4   manufacturer and seller of CRTs.  *See* Polaroid Compl. ¶ 106 ("During [the formative years of the

5   conspiracy], representatives from LG, Samsung and Daewoo visited the other Defendant

6   manufacturers . . . ."); *id.* ¶ 129 ("Bilateral discussions were also used to coordinate prices with

7   CRT Product manufacturers that did not ordinarily attend the group meetings . . . .  For example,

8   Samsung had a relationship with Hitachi and was responsible for communicating CRT Product

9   pricing agreements to Hitachi."); *id.* ¶ 142 (same).  Again, DAPs do not and cannot allege that

10   either SEC or SEAI has ever made or sold CRTs; these allegations cannot state a plausible claim

11   that either of those entities participated in a conspiracy to fix the prices or supply levels of a

12   product they never made or sold (and, in the case of SEAI, never even bought).

13    Second, DAPs' allegations relating to "Samsung['s]" membership in legitimate business

14   organizations do not state a plausible claim that SEC or SEAI participated in any conspiracy.

15   DAPs assert that "Samsung" and other defendants "are all members of the Society for

16   Information Display," that "Samsung" and another defendant "are two of the co-founders of the

17   Korea Display Industry Association," and that "Samsung" and other defendants "are members of

18   the Electronic Display Industrial Research Association."  Polaroid Compl. ¶ 89.  But mere

19   membership in legitimate business organizations will not suffice to state an antitrust conspiracy.

20   *See, e.g.*, *In re Late Fee & Over-Limit Fee Litig.*, 528 F. Supp. 2d 953, 963 (N.D. Cal. 2007)

21   ("[C]ourts have consistently refused to infer the existence of a conspiracy from . . . averments [of

22   trade association membership].").  To the extent that DAPs allege that "Defendants" used these

23   organizations "as vehicles" for a conspiracy, Polaroid Compl. ¶ 89, their allegations still are

24   insufficient in that they are entirely devoid of any supporting facts—much less plausible ones—

25   and fail to distinguish between SEC and SEAI on the one hand, and Samsung SDI on the other.

26    **C.    The Complaints Against SEC And SEAI Must Be Dismissed Because The
        Alleged CRT Price-Fixing Conspiracy Makes No Economic Sense As To SEC
27        And SEAI.**

28

1        A complaint fails to state plausible grounds for relief, and must be dismissed, where it

2   alleges a conspiracy that makes no economic sense.  At the summary judgment stage, the

3   Supreme Court has held unequivocally that "if the factual context renders [a plaintiff's] claim

4   implausible—if the claim is one that simply makes no economic sense—[the plaintiff] must come

5   forward with more persuasive evidence to support their claim than would otherwise be

6   necessary."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Just so

7   at the pleading stage:  allegations in a complaint, taken as true, must "make economic sense" to

8   survive a motion to dismiss.  *See, e.g.*, *Brunson Commc'ns, Inc. v. Arbitron*, 239 F. Supp. 2d 550,

9   563 (E.D. Pa. 2002).  Dismissals under Rule 12(b)(6) based on this standard are routine.  For

10  example, the First Circuit has upheld dismissal of a complaint where the alleged antitrust

11  conspiracy was "highly implausible."  *DM Research, Inc. v. Coll. of Am. Pathologists*, 170 F.3d

12  53, 56 (1st Cir. 1999) (cited approvingly in *Twombly*, 550 U.S. at 557); *see Car Carriers v. Ford*

13  *Motor Co.*, 745 F.2d 1101, 1109-10 (7th Cir. 1984) (affirming dismissal because alleged

14  conspiracy was "inherently implausible").[18]  Similarly, this Court has explained that "[w]hile . . .

15  conscious of its duty to accept plaintiffs' allegations as true at the pleading stage, [the court]

16  remains convinced that the [amended complaint], like the iterations that preceded it, fails to state

17  a conspiracy claim under the Sherman Act" because, among other things, "the scheme described

18  by plaintiffs simply does not make 'economic sense.'"  *Universal Grading Serv. v. eBay, Inc.*,

19  No. C-09-2755, 2012 U.S. Dist. LEXIS 2325, at *12-13 (N.D. Cal. Jan. 9, 2012).

20       Here, DAPs do not come close to meeting their pleading obligations.  For SEC is a

21  *purchaser* of CRTs—the very products whose prices were allegedly fixed—and SEAI is a seller

22  of finished products containing CRTs and never bought CRTs at all.  The conspiracy DAPs allege

23  would increase the price of CRTs, thereby *decreasing* SEC's and SEAI's profit margins.  This

24  kind of an arrangement "simply makes no economic sense."  *Matsushita*, 475 U.S. at 587.  Put

25  differently, to the extent that the prices of CRTs were inflated because of the alleged conspiracy,

26

27  [18]   *See also, e.g.*, *Brunson Commc'ns*, 239 F. Supp. 2d at 563; *United Magazine Co. v.*
    *Murdoch Magazines Distrib.*, 146 F. Supp. 2d 385, 402 (S.D.N.Y. 2001); *Cancall PCS v.*

28  *Omnipoint Corp.*, No. 99 Civ 3395 AGS, 2000 WL 272309, at *7 n.4 (S.D.N.Y. Mar. 10, 2000).

1    SEC and SEAI were injured much in the same way that DAPs claim to have been injured.  In this

2    way, DAPs' allegations that SEC and SEAI "conspired to injure [themselves]" are "inherently

3    implausible" and must be dismissed.  *Car Carriers*, 745 F.2d at 1109.

4           It is no answer for DAPs to say that allegations that SEC and SEAI participated in the

5    conspiracy are plausible on the ground that SEC and SEAI would seek to "pass on" the inflated

6    prices of components to purchasers of finished products.  To begin with, it bears reiterating that

7    the conspiracy alleged is now limited to tubes and that neither SEC nor SEAI ever made a single

8    tube, unlike other defendants.  In addition, even assuming that a plaintiff could plausibly allege

9    that an entity conspired to fix the prices and control the supply of a product that it does not make

10   (and, in the case of SEAI, a product it does not even ***buy***), it is impossible for that entity to

11   participate in the alleged conspiracy ***in the same way*** as a manufacturer and seller of that product.

12   Finally, even if the Rube Goldberg-esque conspiracy DAPs allege—in which finished-products

13   manufacturers would conspire to fix the price of CRTs in the hope that they could eventually pass

14   on that overcharge to finished-products purchasers, *see* Polaroid Compl. ¶ 120—could result in

15   increased profits (as opposed to a mere offset in costs) to SEC or SEAI, the alleged scheme

16   remains implausible, because "it would be far easier and more efficient" for SEC or SEAI simply

17   to conspire to fix the prices of finished products with other finished-product manufacturers.

18   *Universal Grading*, 2012 U.S. Dist. LEXIS 2325, at *13 (dismissing complaint as economically

19   implausible because "even assuming the convoluted arrangement depicted in the [complaint]

20   could result in increased commissions to eBay, it would be far easier and more efficient for eBay

21   to simply raise its fees for the sale of coins than to conspire with unrelated non-profit trade groups

22   to develop a policy that ***might*** result in higher commissions" (emphasis in original)).

23   **II.     The Complaints Do Not Sufficiently Allege That SEC Or SEAI Is Vicariously Liable
             For Samsung SDI's Alleged Conduct.**
24

25          DAPs' allegations not only fail to suggest that SEC or SEAI was directly involved in the

26   alleged conspiracy; they also do not suggest that SEC or SEAI was vicariously liable for the

27   alleged conduct of Samsung SDI.  All but one of the Complaints allege generically that SEC

28   "dominated and controlled" Samsung SDI's "finances, policies, and affairs . . . relating to the

1  antitrust violations alleged in this Complaint."  Polaroid Compl. ¶ 35.[19]  Plaintiffs may mean to

2  suggest that SEC can be held vicariously liable for Samsung SDI's alleged participation in the

3  conspiracy by virtue of its supposed "control" of Samsung SDI.  That theory—if it is DAPs'

4  theory—is meritless.  In the first place, this allegation of "control" is a bald legal conclusion, the

5  truth of which the Court should not presume, *see Iqbal*, 556 U.S. at 678, and which is not

6  sufficient to survive a motion to dismiss, *see Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d

7  1101, 1116 (C.D. Cal. 2003) ("In order to overcome the presumption of separateness afforded to

8  related corporations, [a plaintiff] is required to plead . . . specific facts supporting its claims, not

9  mere conclusory allegations.") (internal citation omitted).  DAPs offer no explanation—much less

10  plead any facts—as to how SEC did or even could "control" Samsung SDI.  This is

11  understandable, for it is puzzling indeed how SEC could control Samsung SDI—a public

12  company in which SEC holds an equity stake of less than 20 percent.  *See supra* at 3.

13        Separately, DAPs fail to sustain the heavy burden required to overcome the presumption

14  that SEC and Samsung SDI are separate corporate entities, particularly given Samsung SDI's

15  status as a public company in which SEC holds less than a 20 percent stake.  In *United States v.*

16  *Bestfoods*, 524 U.S. 51 (1998), the Supreme Court explained that even where a parent corporation

17  owns ***100 percent*** of a subsidiary, "[i]t is a general principle of corporate law deeply ingrained in

18  our economic and legal systems that a parent corporation (so-called because of control through

19  ownership of another corporation's stock) is not liable for the acts of its subsidiaries." *Id.* at 61

20  (internal quotation marks omitted); *see also E. & J. Gallo Winery v. EnCana Energy Servs., Inc.*,

21  No. 03-5412, 2008 U.S. Dist. LEXIS 46927, at *16 (E.D. Cal. May 23, 2008) ("The

22  independence of a subsidiary from the parent corporation is to be presumed."); *Bowoto v.*

23  *Chevron Texaco Corp.*, 312 F. Supp. 2d 1229, 1234 (N.D. Cal. 2004).

24        Under the presumption of corporate separateness, a parent corporation is liable for the acts

25  of its subsidiary only "where stock ownership has been resorted to, not for the purpose of

26  participating in the affairs of a corporation in the normal and usual manner, but for the purpose of

27

[19]      The Costco complaint does not allege that SEC dominated or controlled any entity except

28  SEAI.  *See* Costco Compl. ¶ 40.

1   controlling a subsidiary company so that it may be used as a mere agency or instrumentality of

2   the owning company." *Bestfoods*, 524 U.S. at 62-63.  DAPs' allegations fail to overcome this

3   presumption because they allege no facts suggesting that Samsung SDI was an agent of SEC.[20]

4   To establish vicarious liability through an agency theory, DAPs would have to plead plausible

5   allegations fulfilling the elements of traditional federal common law agency, namely, (1) a

6   manifestation by the principal that the agent shall act for him; (2) that the agent has accepted the

7   undertaking; and (3) that there is an understanding between the parties that the principal is to be

8   in control of the undertaking.  *See E. & J. Gallo Winery*, 2008 U.S. Dist. LEXIS 46927, at *16;

9   RESTATEMENT (THIRD) OF AGENCY § 1.01 (2012).  The allegations here do not approach what is

10  needed to satisfy DAPs' pleading obligations; to accept their allegations as sufficient would

11  vitiate the well-settled presumption of corporate separateness.

12        Finally, not one of the Complaints alleges that SEAI exercised any control over Samsung

13  SDI, and thus DAPs fail to set forth even the bare legal elements to allege SEAI's vicarious

14  liability.

15                                    **CONCLUSION**

16        For the foregoing reasons, the aforementioned DAP Complaints should be dismissed with

17  prejudice as to, and as applicable judgment on the pleadings entered in favor of, SEC and SEAI

18  pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(c).

19        Dated:  August 17, 2012                    Respectfully Submitted,

20

21                                        By: /s/ Ian Simmons
                                          IAN SIMMONS
22                                        Email:  isimmons@omm.com
                                          BENJAMIN G. BRADSHAW
23

24   [20]     DAPs do not and could not allege an alter-ego theory of liability as to SEC.  Piercing the
     corporate veil "is the rare exception" and places on the plaintiff the heavy burden of alleging facts
25   that one company essentially is a mere shell of, and controlled by, another.  *E.g.*, *Dole Food Co.
     v. Patrickson*, 538 U.S. 468, 475 (2003); *see also Katzir's Floor & Home Design, Inc. v. M-
26   MLS.com*, 394 F.3d 1143, 1149 (9th Cir. 2004) (explaining that alter-ego theory may be invoked
     only when "corporate separateness is illusory").  Here, SEC holds less than a 20 percent stake in
27   Samsung SDI and, in any event, DAPs have not alleged any of the other "critical facts" identified
     by courts, including "inadequate capitalization [or] commingling of assets," that could warrant
28   the extraordinary step of piercing a corporate veil.  *Id.*

Email:  bbradshaw@omm.com
KEVIN D. FEDER
Email:  kfeder@omm.com
**O'MELVENY & MYERS LLP**
1625 Eye Street, NW
Washington, DC 20006
Telephone:  (202) 383-5300
Facsimile:  (202) 383-5414
Email:  isimmons@omm.com

*Attorneys for Defendants Samsung Electronics Co., Ltd., and Samsung Electronics America, Inc.*

SAMSUNG ELECTRONICS CO., LTD., AND SAMSUNG ELECTRONICS AMERICA, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS AND FOR JUDGMENT ON THE PLEADINGS AS TO CERTAIN DIRECT ACTION PLAINTIFFS' COMPLAINTS AND MEMORANDUM OF LAW IN SUPPORT (3:07-CV-05944 SC, MDL NO. 1917)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 17, 2012, I electronically filed Samsung Electronics Co., Ltd., and Samsung Electronics America, Inc.'s Notice of Motion and Motion to Dismiss and for Judgment on the Pleadings as to Certain Direct Action Plaintiffs' Complaints and Memorandum of Law in Support with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the counsel of record in this matter who are registered on the CM/ECF system.

/s/ Ian Simmons
Ian Simmons