# EXHIBIT 2

# To Declaration of Benjamin G. Bradshaw

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
ANDREW KINDT, on behalf of himself          :
and all others similarly situated,          :          CLASS ACTION COMPLAINT
                                            :
              Plaintiff,                    :
                                            :
   -against-                                :
                                            :
                                            :          Case No.07-cv-10322 (GBD)
                                            :          ECF Case
MATSUSHITA ELECTRIC INDUSTRIAL              :
CO, LTD.; SAMSUNG SDI CO., LTD.; LP         :
DISPLAYS INTERNATIONAL, LTD.                :
(formerly LG PHILIPS DISPLAYS); MT          :
PICTURE DISPLAY CO, LTD.; TOSHIBA           :
CORP.; TOSHIBA AMERICA, INC.,               :
                                            :          JURY TRIAL DEMANDED
              Defendants.                   :
----------------------------------------------------------X
```

Plaintiff, ANDREW KINDT, a resident of Macomb County, Michigan, by and through his attorneys, brings this civil action for damages and injunctive relief, on behalf of himself and all others similarly situated against the above named Defendants, demanding a trial by jury, complains and alleges as follows:

## DEFINITIONS

1. Cathode Ray Tube ("CRT") is a glass tube used to manufacture televisions and computer monitors.

2. As used herein, the term "Class Period" means the time period January 1, 2003 to the present.

3. The "Indirect Purchaser States" are Arizona, California, District of Columbia, Florida, Iowa, Kansas, Maine, Michigan, Minnesota, Mississippi, Nevada, New Jersey, New Mexico, North Carolina, North Dakota, South Dakota, Tennessee, Vermont, West Virginia, and Wisconsin.

4. The "Consumer Fraud States" Alaska, Arkansas, California, District of Columbia, Florida, Idaho, Maine, Montana, Nebraska, Nevada, New York, New Hampshire, New Mexico, North Carolina, Utah, Vermont, West Virginia.

## JURISDICTION AND VENUE

5. The Court has jurisdiction over this action pursuant to 15 U.S.C. §§ 15 and 26, and pursuant to 28 U.S.C. §§ 1331, 1337(a) and 1367. This Court has personal jurisdiction over each of the Defendants because each was engaged in an illegal price-fixing scheme and conspiracy that was directed at and/or caused injury to persons and entities residing in, located in, or doing business in this District and throughout the United States. For the state law claims, the court also has jurisdiction pursuant to 28 USC §1332(d), in that this is a class action in which the matter of controversy exceeds the sum of $5,000,000, exclusive of interest and costs, and which some members of the proposed class are citizens of a different state than of the Defendants.

6. Venue is proper in this judicial district pursuant to 15 U.S.C. § 22 and 28 U.S.C. § 1391(b) and (c) because some of the defendants reside, or are licensed to do business or are doing business, or are found or transact business in this district and/or the claims arose in this district.

## THE PARTIES

### A. Plaintiff

7. Plaintiff ANDREW KINDT ("Plaintiff"), a Michigan resident of Macomb County, is an individual who purchased a computer monitor with a CRT during the Class Period for end use and not for resale. Plaintiff was injured as a result of Defendants' illegal conduct.

## B. Defendants

8. Defendant MATSUSHITA ELECTRIC INDUSTRIAL, LTD. ("Matsushita") is located at 1006, Kadoma, Kadoma City, Osaka 571-8501 Japan. During the Class Period, Matsushita manufactured and sold CRTs to television and monitor manufacturers, who then sold to consumers throughout the United States.

9. Defendant SAMSUNG SDI CO., LTD ("Samsung SDI") is located at on the 15 – 18th Floor, Samsung Life Insurance Building.150 Taepyungro 2-ga, Jung-gu, Seoul, South Korea. During the Class Period, Samsung SDI manufactured and sold CRTs to television and monitor manufacturers, who then sold to consumers throughout the United States.

10. Defendant LP DISPLAYS INTERNATIONAL, LTD. (formerly LG.Philips Displays) ("LP Displays") is located on the 6th Floor, ING Tower, 308 Des Voeux Road Central, Sheung Wan, Hong Kong. During the Class Period, LP Displays manufactured and sold CRTs to television and monitor manufacturers, who then sold to consumers throughout the United States.

11. Defendant TOSHIBA CORP. ("Toshiba") is located at 1-1, Shibaura 1-chome, Minato-ku, Tokyo 105-8001, Japan. During the Class Period, Toshiba manufactured and sold CRT to television and monitor manufacturers, who then sold to consumers throughout the United States.

12. Defendant TOSHIBA AMERICA, INC. ("Toshiba America") is located at 1251 Avenue of the Americas, New York, NY. During the Class Period, Toshiba America manufactured and sold CRT to television and monitor manufacturers, who then sold to consumers throughout the United States.

13. Defendant MT PICTURE DISPLAY CO., LTD. ("MT Picture Display"), located in Osaka, Japan, is a joint venture between defendants Toshiba and Matsushita. During the Class

3

Period, MT Picture Display manufactured and sold CRTs to television and monitor manufacturers, who then sold to consumers throughout the United States.

## CO-CONSPIRATORS

14. Defendant John Does 1-100 are presently not ascertainable by Plaintiff and are in the exclusive knowledge of the Defendants. The Complaint in this action will be amended when their true identities are known.

15. The acts alleged in this Complaint have been completed by Defendants and their co-conspirators, or were authorized, ordered or completed by their respective officers, employees or representatives while actively engaged in the management of Defendants' companies.

16. Each of the Defendants named herein acted as an agent or trustee with respect to the acts, violations and common course of conduct alleged herein.

17. Defendants conduct business throughout the United States including the State of New York and they have purposely availed themselves of the laws of the Indirect Purchaser States and Consumer Fraud States as defined herein.

## PLAINTIFF'S INJURY

18. Plaintiff purchased a computer monitor containing a CRT during the Class Period. Plaintiff paid a supra competitive price for the computer monitor based upon the conspiracy between the Defendants to raise and fix prices of CRTs in the United States.

## RELEVANT PRODUCT AND GEOGRAPHIC MARKET

19. To the extent necessary, the relevant product market is the market for CRT televisions and CRT computer monitors that were sold to consumers in the United States. The relevant geographic market is the entire United States, and/or the Indirect Purchaser States and/or Consumer Fraud States (as defined above). At all relevant times, including the present, all

4

Defendants' collectively hold a vast majority of the market share in the relevant product and geographic markets.

## CLASS ACTION ALLEGATIONS

20.     Plaintiff brings this action on behalf of himself, and all others similarly situated. Plaintiff seeks to represent the following class, defined as:

> **All persons and entities residing in the United States who, from January 1, 2003 to the present, purchased Cathode Ray Tube consumer items in the United States for their own use and not for resale. Excluded from the Class are: governmental entities, any judge, justice or judicial officer presiding over this matter and the members of his or her immediate family, Defendants and their co-conspirators, along with their respective parents, subsidiaries and/or affiliates. Also excluded from this Class are the legal representatives, heirs, successors and attorneys for any excluded person or entity, and any person acting on behalf of any excluded person or entity.**

21.     All Class members are hereinafter referred to as the "Class", subject to additional information obtained through further investigation and discovery.

22.     This action has been brought and may properly be maintained as a class action, pursuant to the provisions of the Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure on behalf of all members of the Class including from a retailer in the United States and/or Indirect Purchaser States, or the Consumer Fraud States during the Class Period:

    a.     The Class is so numerous that joinder of all members is impracticable. Due to the nature of the trade and commerce involved, the members of the Class are geographically dispersed throughout the United States and/or the Indirect Purchaser States and/or the Consumer Fraud States. The precise number of Class members is unknown to Plaintiff. The true number of Class members is likely to be known by Defendants, however, and thus, Class members may be notified of the pendency of this action by published notice or other alternative means. Throughout the period of time

covered by this Complaint, Defendants and their co-conspirators engaged in the business of marketing and selling CRTs throughout the United States and throughout the Indirect Purchaser States and Consumer Fraud States.

    b.    Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to the Class are:

    i.    whether Defendants combined or conspired to fix, raise, maintain, manipulate or stabilize the prices of, or allocate the market for, sales of CRTs;

    ii.    whether the combination or conspiracy caused CRT prices to be higher than they would have been absent the Defendants' conduct;

    iii.    the time period of Defendants' combination or conspiracy

    iv.    whether the Defendants' alleged conduct caused injury to the business or property of Plaintiff and the members of the Class;

    v.    the appropriate measure of damages suffered by the Class;

    vi.    whether Defendants' conduct violates Section 1 of the Sherman Act (15 U.S.C. § 1), as alleged in Count I;

    vii.    Whether the alleged conduct violated the Indirect Purchaser States' laws concerning antitrust violations as alleged in Count II of this Complaint;

    viii.    whether Defendants' conduct violates the unfair competition and consumer protection laws of the Consumer Protection States as alleged below in Count III;

    ix.    Whether Plaintiff and the Class have a claim for unjust enrichment;

6

        x.     Whether injunctive relief is necessary to prevent future violations;

        xi.    the appropriate nature of class-wide equitable relief.

    c.    Plaintiff's claims are typical of the claims of the other members of the Class it seeks to represent. Defendants' illegal and inequitable methods, acts, and trade practices have targeted and affected all members of the Class in a similar manner. Furthermore, Plaintiff and all members of the Class sustained monetary injury arising out of Defendants' wrongful conduct.

    d.    Plaintiff will fully and adequately protect the interests of all members of the Class. Plaintiff has retained counsel who is experienced in class action and antitrust litigation. Plaintiff has no interests which are adverse to or conflict with those of other members of the Class.

    e.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all class members is impracticable. The prosecution of separate actions by individual members of the Class would impose heavy burdens upon the courts, and would create a risk of inconsistent or varying adjudications of the questions of law and fact common to the Class. A class action, on the other hand, would achieve substantial economies of time, effort, and expense, and would assure uniformity of decision with respect to persons similarly situated without sacrificing procedural fairness or bringing about other undesirable results.

    f.    The interest of members of the Class in individually controlling the prosecution of separate actions is theoretical rather than practical. The Class has a high degree of cohesion, and prosecution of the action through representatives would be

7

unobjectionable. The damages suffered by the individual Class members may be relatively small; and therefore, the expense and burden of individual litigation make it virtually impossible for them to redress the wrongs done to them. Plaintiff anticipates no difficulty in the management of this action as a class action.

## FACTUAL ALLEGATIONS

23. Plaintiff's claims arise from the Defendants' manipulation of the market for CRTs in the United States.

24. CRTs are components of certain televisions and computer monitors that allow the device to display images upon the screen.

25. The cathode is a heated filament that is present in a vacuum that is created in a glass tube. The ray is a stream of electrons that is naturally emitted from a heated cathode in a vacuum. The beam of electrons is focused on the television or monitor screen that contains phosphors. The phosphors emit light when exposed to radiation, which causes the images on the screen to appear.

26. The CRT market in the United States is very large. According to iSuppli's 2005Q4 Television Systems Market Tracker, over 29,000,000 televisions were projected to be shipped to North America. According to the same report, pf those television sets, 50% were projected to be CRT televisions.

27. LP Displays states on their website that it shipped almost 50 million CRTs in 2006 giving them a 27% market share worldwide.

28. Even though the market for CRT television and computer screens is very large, the market has been and continues to steadily decline in favor of other technologies such as Liquid Crystal Display ("LCD"), projection, and plasma screens. iSuppli Corporation predicts that, by 2008, CRT screen shipments will be only 23% of the total television shipments in North America

8

while LCD screen shipments will comprise 50% of the total shipments and overtake CRT screen shipments as the dominant screen technology for new televisions in North America.

29. In a November 9, 2007 article entitled, "Matsushita, Samsung's SDI Operations Searched By Antitrust Regulators" posted on the CBS Market Watch website, it was stated that "[t]he probe into Matsushita and Samsung comes after the European Commission Thursday staged its own inspections of offices of unidentified CRT manufacturers. The Commission has reason to believe the companies may have colluded in fixing prices, the regulator said in a press release. It didn't name the companies in question."

30. The November 8, 2007 Associated Press article entitled "Authorities Investigate Matsushita Amid Reports Of Price-fixing With Other Asian Makers" stated "Japan's antitrust officials searched a subsidiary of Matsushita Electric Industrial Co. on suspicion of forming an international cartel to fix prices for cathode-ray tubes for television, an official and media reports said Friday." The article further states that "Japan's Fair Trade Commission conducted an on-sight inspection of MT Picture Display Thursday, said Akira Kadota, a spokesman for Matsushita, the Osaka-based maker of Panasonic-brand products."

31. A November 9, 2007 article entitled "Samsung SDI Probed For Alleged Price Fixing" stated "South Korea's anti-trust watchdog has launched a probe into Samsung SDI as part of an international investigation into alleged price-fixing, officials said Friday." The article further reported that "[t]he Fair Trade Commission is investigating allegations that Samsung SDI colluded with foreign rivals to fix the price of CRTs for television." The article also stated that "[t]he European Commission also confirmed Thursday that its officials had carried out unannounced inspections at CRT manufacturers over suspected cartel activity. Authorities in the United States

9

were also involved in the investigation, according to Japan's Nikkei business daily. CRT manufacturers are suspected of operating an international cartel since 2005 or earlier, it said."

32. A November 9, 2007 Financial Times article entitled "Antitrust Authorities Raid CRT Manufacturers" reported "[c]ompetition authorities on three continents are investigating a group of Asian electronics makers including Japan's Matsushita and South Korea's Samsung on suspicion of price-fixing in the shrinking market for cathode-ray tubes (CRTs)." The article further stated that "Matsushita, which sells under the Panasonic and National brands, confirmed on Friday that Japan's Fair Trade Commission had raided the Osaka offices of its CRT subsidiary, MT Picture Display. Samsung confirmed that South Korean authorities were probing its CRT business. Domestic rival LP Displays, formerly LG.Philips Displays, was also visited by investigators, Bloomberg reported." The article goes on to report that "[t]he European Commission said in a statement that it was inspecting unnamed CRT makers. 'The Commission has reason to believe that the companies concerned may have violated EC Treaty rules on cartels and restrictive business practices,' it said."

33. In a November 9, 2007 Bloomberg article entitled "EU, Japan Raid Cathode-Ray Tube Makers in Cartel Case (Update3)," it was reported that "[t]he commission has reason to believe that the companies concerned may have violated" EU rules against price-fixing, sharing markets or exchanging market information, the European Commission said in the statement. The companies have two months to respond."

## DEFENDANTS' ILLEGAL CONDUCT

34. The market for CRTs is complex and global. Manufacturers produce the CRTs and then multiple other manufacturers place the CRT in a television or computer monitor for resale to consumers.

10

35. Defendants own a majority of the market share for CRTs that is used in televisions and computer monitors.

36. The concentration of market participants in the CRT market, the declining CRT share of the total market for television and computer screens, and the higher price of other technologies such as LCD screens have given Defendants the incentive to conspire and collude to fix higher prices for CRTs used in these products.

37. The Defendants have conspired and colluded to artificially raise the price of CRT to the consumer public, by means of illegal contracts, agreements, or secret negotiations.

38. All of this was done to the detriment of the consumer.

39. The Defendant did not disclose any information regarding these collusion or conspiracy agreements and had corporate policies to prohibit the dissemination of this information.

## FRAUDULENT CONCEALMENT

40. The running of any statutes of limitations has been suspended with respect to any claims which the Plaintiff and other members of the Class have sustained as a result of the unlawful combination and conspiracy alleged herein and with respect to their rights to injunctive relief by virtue of the federal doctrine of fraudulent concealment. Defendants through various devices and techniques of secrecy affirmatively and fraudulently concealed the existence of the unlawful combination and conspiracy alleged herein.

41. As a result of the active concealment of the conspiracy by Defendants and their co-conspirators, any and all applicable statues of limitations otherwise applicable to the allegations herein have been tolled.

Case 4:07-cv-05944-JST Document 1318-3 Filed 08/17/12 Page 13 of 19
Case 1:07-cv-10322-GBD Document 48-3 Filed 11/13/07 Page 12 of 18

## COUNT I

## VIOLATION OF SECTION 1 OF THE SHERMAN ANTITRUST ACT AND SECTION 4 OF THE CLAYTON ACT

42. Plaintiff re-alleges and incorporates by reference all of the allegations of this Complaint with the same force and effect as if fully restated herein.

43. Defendants and the un-named conspirators entered into and engaged in a contract, combination, or conspiracy in an unreasonable restraint of trade in violation of the Section 1 of the Sherman Act and Section 4 of the Clayton Act.

44. The contract, combination, or conspiracy alleged herein has resulted in an agreement or concerted action among the Defendants and their un-named conspirators whereby as a result of these actions prices charged for consumer products containing CRTs were fixed, maintained, and standardized. The alleged contract, combination, or conspiracy is a per se violation of federal antitrust laws and is at a minimum an unreasonable and unlawful restraint of trade.

45. As result of defendants' unlawful conduct, Plaintiff has suffered damage by paying supra-competitive prices that they would not have had to incur but for the unlawful conduct of defendants as alleged herein.

46. The Plaintiff requests that declaratory and injunctive relief be granted to them to eliminate the problem of this price fixing. If injunctive and declaratory relief is not granted, the Plaintiff fears that this illegal scheme will continue and damage the Plaintiff further.

47. A monetary relief shall only compensate the past wrong and will do nothing to stop the ongoing and forward progress of this illegal scheme to fix prices in CRT markets.

## COUNT II

### Violation of State Antitrust Statutes

48. Plaintiff re-alleges and incorporates by reference all of the allegations of this Complaint with the same force and effect as if fully restated herein.

49. Defendant's intentional and purposeful anti-competitive acts that are described above including but not limited to acts of collusion to set prices and the actual act of price fixing itself was intended to and did cause Plaintiff to pay supra-competitive prices for CRT prices charged for consumer products containing CRTs in the Indirect Purchaser States.

50. Defendants' monopolistic and anticompetitive acts as described above are in violation of the following state antitrust statutes:

51. Defendants have violated Arizona Revised Statutes § 44-1403.

52. Defendants have violated California Business & Professions Code § 16700, *et. seq.*

53. Defendants have violated District of Columbia Code § 28-4501, *et seq.*

54. Defendants have violated Florida Statutes § 542.19.

55. Defendants have violated Iowa Code § 553.5.

56. Defendants have violated Kansas Statutes § 50-101.

57. Defendants have violated Maine Revised Statutes, Title 10 § 1102.

58. Defendants have violated Michigan Compiled Laws § 445.771, *et seq.*

59. Defendants have violated Minnesota Statutes § 325D.51, *et seq.*

60. Defendants have violated Mississippi Code § 75-21-1, *et seq.*

61. Defendants have violated Nevada Revised Statutes § 598A.060.

62. Defendants have violated New Jersey Statutes § 56:9-4.

13

63. Defendants have violated New Mexico Statutes § 57-1-2.

64. Defendants have violated North Carolina General Statutes § 75-2.1.

65. Defendants have violated North Dakota Century Code § 51-08.1-03.

66. Defendants have violated South Dakota Codified Laws § 37-1-3.2.

67. Defendants have violated Tennessee Code § 47-25-101, *et. seq.*

68. Defendants have violated Vermont Statutes, Title 9, § 2453.

69. Defendants have violated West Virginia Code § 47-18-4.

70. Defendants have violated Wisconsin Statutes § 133.03.

71. Plaintiff and the Class seek actual damages for their injuries caused by these violations in an amount to be determined at trial. Plaintiff and the Class seek treble damages pursuant to the Indirect Purchaser States antitrust laws as stated above where they are allowed by law.

72. Defendants' willful and unlawful conduct allow Plaintiff and the Class to seek attorneys' fees in the Indirect Purchaser States where they allowed by law. Plaintiff and the Class seek attorneys' fees where they are allowed by law.

## COUNT III

### Violation of State Consumer Protection Statutes

73. Plaintiff re-alleges and incorporates by reference all of the allegations of this Complaint with the same force and effect, as if fully restated herein.

74. The deceptive practices of the Defendants as alleged above included but are not limited to collusion between Defendants in setting prices and actual price fixing with the intended purpose to maintain supra-competitive pricing for CRT prices charged for consumer products containing CRTs (all unknown to the general consumer public). Defendants' deceptive

14

and anti-competitive conduct resulted in higher consumer prices for CRT prices charged for consumer products containing CRTs because of supra-competitive pricing by Defendants.

75. Defendants' acts as described above are in violation of the following state consumer protection statutes:

76. Defendants have violated Alaska Statutes § 45.50.471, *et seq.*

77. Defendants have violated Arkansas Code § 4-88-101, *et seq.*

78. Defendants have violated California Business & Professions Code § 17200, *et. seq.*

79. Defendants have violated District of Columbia Code § 28-3901.

80. Defendants have violated Florida Statutes § 501.201.

81. Defendants have violated Idaho Code § 48-601.

82. Defendants have violated Maine Revised Statutes, Title 5 § 207, *et seq.*

83. Defendants have violated Montana Code § 30-14-101, *et seq.*

84. Defendants have violated Nebraska Revised Statutes § 59-1601, *et seq.*

85. Defendants have violated Nevada Revised Statutes § 598.0903, *et seq.*

86. Defendants have violated New York General Business Law § 349, *et. seq.*

87. Defendants have violated New Hampshire Revised Statutes § 358-A:1, *et seq.*

88. Defendants have violated New Mexico Statutes § 57-12-1, *et. seq.*

89. Defendants have violated North Carolina General Statutes § 75-1.1, *et. seq*

90. Defendants have violated Utah Code § 13-11-1, *et. seq.*

91. Defendants have violated Vermont Statutes, Title 9, § 2451, *et. seq.*

92. Defendants have violated West Virginia Code § 46A-6-101, *et seq.*

15

93. Plaintiff and the Class seek actual damages for their injuries caused by these violations in an amount to be determined at trial.

94. Plaintiff and the Class seek attorneys' fees due to Defendants' willful and unlawful conduct in the Consumer Fraud States where allowable by law.

## COUNT IV

### Unjust Enrichment

95. Plaintiff re-alleges and incorporates by reference all of the allegations of this Complaint with the same force and effect as if fully restated herein.

96. Defendants benefited greatly from overpayments caused directly from their unlawful and anti-competitive acts as described above for supra-competitive prices for CRT prices charged for consumer products containing CRTs. It would be inequitable for Defendants to retain the benefit of these overpayments that were conferred by Plaintiff and the Class.

97. Plaintiff and the Class are entitled to return of these overpayments caused by the willful acts of the Defendants either as damages or restitution.

## COUNT V

### Common Law Restraint of Trade for Class Members In State of New York Only

98. Plaintiff re-alleges and incorporates by reference all of the allegations of this Complaint with the same force and effect as if fully restated herein.

99. Defendants have a vast majority of worldwide and New York market share of CRT.

100. Defendants have maintained its monopoly in the State of New York over the CRT market through a series of purposeful and intentional acts since at least January 1, 2003.

16

101. These intentional acts included but are not limited to artificially fixing, raising, maintaining, and stabilizing the prices paid by consumers for CRT contained in consumer products.

102. The intentional and unlawful acts of Defendants were designed to and actually caused Defendants to artificially fix, raise, maintain, and stabilize prices of CRTs within the State of New York.

103. As proximately and directly caused by Defendants' intentional and unlawful acts to restrain trade related to the CRT prices charged for consumer products containing CRTs, Plaintiffs had to pay supra-competitive prices for consumer products containing CRTs.

104. Plaintiff and the Class seek actual damages in an amount to be determined at trial for injuries suffered as a result of the allegations stated herein.

### DEMAND FOR JURY

Pursuant to Federal Rule of Civil Procedure 38(b) and otherwise, Plaintiff respectfully demands a trial by jury.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff and the Class request as follows:

(a) that this Court declare, adjudge, and decree this action to be a proper class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the Class defined herein;

(b) that this Court declare, adjudge, and decree that Defendants have committed violations of the Sherman Antitrust Act and the Clayton Act as alleged herein;

(c) that this Court declare, adjudge, and decree that Defendants have committed violations of state antitrust and consumer protection laws alleged herein;

(d) that this Court declare, adjudge, and decree that Defendants have committed violations of New York common law restraint of trade alleged herein;

(e) that this Court award Plaintiff and the Class their actual damages for Defendants' restraint of trade or commerce pursuant to New York common law, in an amount to be determined at trial;

(f) that this Court award Plaintiff and the Class treble damages for Defendants' violation of Indirect Purchaser States' antitrust laws in an amount to be determined at trial where they are allowed by law and actual damages where treble damages are not allowed by law;

(g) that this Court award Plaintiff and the Class their actual damages for Defendants' violation of Consumer Protection Statutes, in an amount to be determined at trial;

(h) that this Court grant Plaintiff and the Class the actual costs in prosecuting this action, together with interest and reasonable attorney's fees and costs;

(i) that this Court award Plaintiff and the Class the return of overpayments made by them with respect to CRTs; and

(j) that this Court grant such further and other relief as this Court deems just and proper.

DATED: New York, New York
November 13, 2007

LOVELL STEWART HALEBIAN LLP

By: _____
Christopher Lovell (CL-2595)
Craig M. Essenmacher
Keith Essenmacher
500 Fifth Avenue, Floor 58
New York, New York 10110
(212) 608-1900