Jon V. Swenson (SBN 233054)
BAKER BOTTS LLP
1001 Page Mill Road
Building One, Suite 200
Palo Alto, CA 94304-1007
Telephone: (650) 739-7500
Facsimile: (650) 739-7699
Email: jon.swenson@bakerbotts.com

John M. Taladay (*pro hac vice*)
Joseph Ostoyich (*pro hac vice*)
BAKER BOTTS LLP
1299 Pennsylvania Ave., N.W.
Washington, DC 20004-2400
Telephone: (202) 639-7700
Facsimile: (202) 639-7890
Email: john.taladay@bakerbotts.com
Email: joseph.ostoyich@bakerbotts.com

*Attorneys for Defendants Koninklijke Philips Electronics N.V. and Philips Electronics North America Corporation*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:  CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | ) Case No. 07-5944-SC<br>)<br>) MDL No. 1917<br>)<br>) **KONINKLIJKE PHILIPS ELECTRONICS**<br>) **N.V. AND PHILIPS ELECTRONICS**<br>) **NORTH AMERICA CORPORATION'S**<br>) **NOTICE OF MOTION AND MOTION TO**<br>) **DISMISS AND FOR JUDGMENT ON THE**<br>) **PLEADINGS AS TO THE DIRECT ACTION**<br>) **PLAINTIFFS' CLAIMS AND**<br>) **MEMORANDUM OF POINTS AND**<br>) **AUTHORITIES IN SUPPORT OF MOTION**<br>) |
| This Document Relates to:<br><br>ALL ACTIONS BY DIRECT ACTION PLANTIFFS | )<br>) Date:      November 30, 2012<br>) Time:      10:00 am (tentative)<br>) Place:     JAMS Resolution Center<br>) Before:  The Honorable Charles A. Legge<br>)<br>)<br>) |

## NOTICE OF MOTION AND MOTION

To all parties and their attorneys of record:

PLEASE TAKE NOTICE that on November 30, 2012 at 10:00 a.m. (tentative), or as soon thereafter as this matter may be heard before the Honorable Charles A. Legge, United States District Court Judge (Ret.), Special Master, in the San Francisco Resolution Center of JAMS, Two Embarcadero Center, Suite 1500, San Francisco, California, 94111, Defendants Koninklijke Philips Electronics N.V. ("KPE") and Philips Electronics North America Corporation ("PENAC") (collectively, "Philips Defendants") will and hereby do move this Court, pursuant to Federal Rule of Civil Procedure 12(b)(6), for an Order dismissing Direct Action Plaintiffs' ("DAPs") claims without leave to amend for failure to state a claim upon which relief may be granted, and as applicable for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).[1]

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities in support thereof, the pleadings and correspondence on file with the Court, and such arguments and authorities as may be presented at or before the hearings.

---

[1]  Specifically, this Motion seeks dismissal of the following complaints, in full or in part as specified herein:  *Stoebner v. LG Electronics, Inc.*, No. 11-cv-05381 (N.D. Cal.) [Dkt. No. 1] (Nov. 7, 2011) ("Polaroid Compl."); *Target Corp. v. Chunghwa Picture Tubes, Ltd.*, No. 11-cv-05514 (N.D. Cal.) [Dkt. No. 9] (Jan. 6, 2012) ("Target Am. Compl."); *P.C. Richard & Son Long Island Corp. v. Hitachi, Ltd.*, No. 12-cv-02648 (N.D. Cal.) [Dkt. No. 1] (Nov. 14, 2011) ("P.C. Richard Compl."); *Schultze Agency Servs., LLC v. Hitachi, Ltd.*, No. 12-cv-02649 (N.D. Cal.) [Dkt. No. 1] (Nov. 14, 2011) ("Tweeter Compl."); *CompuCom Systems, Inc. v. Hitachi, Ltd.*, No. 11-cv-06396 (N.D. Cal.) [Dkt. No. 1] (Nov. 14, 2011) ("CompuCom Compl."); *Interbond Corp. of Am. v. Hitachi, Ltd.*, No. 11-cv-06275 (N.D. Cal.) [Dkt. No. 1] (Nov. 14, 2011) ("Interbond Compl."); *Costco Wholesale Corp. v. Hitachi, Ltd.*, No. 11-cv-06397 (N.D. Cal.) [Dkt. No. 1] (Nov. 14, 2011) ("Costco Compl."); *Siegel v. Hitachi, Ltd.*, No. 11-cv-05502 (N.D. Cal.) [Dkt. No. 1] (Nov. 14, 2011) ("Circuit City Compl."); *Office Depot, Inc. v. Hitachi, Ltd.*, No. 11-cv-06276 (N.D. Cal.) [Dkt. No. 1] (Nov. 14, 2011) ("Office Depot Compl."); and *Best Buy Co., Inc. v. Hitachi, Ltd.*, No. 11-cv-05513 (N.D. Cal.) [Dkt. No. 1] (Nov. 14, 2011) ("Best Buy Compl.").  This Motion seeks judgment on the pleadings as specified herein as to the complaint in *Electrograph Systems, Inc. v. Hitachi, Ltd.*, No. 11-cv-01656 (N.D. Cal.) [Dkt. No. 5] (Mar. 10, 2011) ("Electrograph Am. Compl."), as the Philips Defendants have already filed answers to that complaint.

1

## STATEMENT OF THE ISSUES

2    1.    Have DAPs, the vast majority of whom filed complaints in November 2011, stated any

3 claims for relief as to the Philips Defendants, when DAPs concede that the Philips Defendants exited

4 the CRT business 10 years earlier by divesting all CRT interests to a joint venture, LPD?

5    2.    Did the Philips Defendants withdraw from the alleged CRT conspiracy before the

6 DAPs' statute of limitations period began, either in June 2001 when they divested their CRT interests

7 to LPD, or, at the latest, in March 2007, when DAPs alleged that they relinquished their 50%

8 shareholder interest in LPD?

9    3.    Can the DAPs salvage their untimely claims with fraudulent concealment allegations

10 that lack the requisite particularity?

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **<u>TABLE OF CONTENTS</u>**

2

**PAGE**

3
PRELIMINARY STATEMENT ................................................................................................. 1

4
STATEMENT OF FACTS ...................................................................................................... 2

5
ARGUMENT ...................................................................................................................... 5

6
I.      DAPS' CLAIMS AGAINST THE PHILIPS DEFENDANTS ARE TIME BARRED ............ 5

7
8
        A.      The Limitations Period for the Vast Majority of DAPs' Claims Does Not Extend
                Beyond November 2007 .................................................................................. 5

9
        B.      The Clear Allegations of the DAP Complaints Reflect the Philips Defendants'
                Withdrawal from the Alleged CRT Conspiracy Prior to the Applicable Limitations
10
                Period .............................................................................................................. 7

11
                1.      The Philips Defendants withdrew from the alleged CRT conspiracy in June
12
                        2001 ...................................................................................................... 7

13
                2.      Assuming arguendo that June 2001 is not the applicable withdrawal date, it is
                        clear that the Philips Defendants withdrew from the alleged CRT conspiracy
14
                        no later than March 2007 ....................................................................... 8

15
                3.      The DAP complaints present a significantly different record on which Your
16
                        Honor should consider the withdrawal of the Philips Defendants ................. 10

17
        C.      DAPs' Untimely Claims Against the Philips Defendants Cannot be Saved by the
                Doctrine of Fraudulent Concealment .......................................................... 11

18
CONCLUSION ................................................................................................................... 14

19

20

21

22

23

24

25

26

27

28

-iv-

KPE'S AND PENAC'S NOTICE OF MOTION AND MOTION TO DISMISS AND FOR JUDGMENT ON THE PLEADINGS AS TO DIRECT
ACTION PLAINTIFFS' CLAIMS AND MEMORANDUM OF LAW IN SUPPORT (3:07-CV-05944 SC, MDL NO. 1917)

1

## TABLE OF AUTHORITIES

2

**CASES**                                                                                                         **PAGE(S)**

3

*389 Orange St. Partners v. Arnold*,

4
    179 F.3d 656 (9th Cir. 1999) ................................................................................................. 12

5    *Allen v. United Fin. Morg. Corp.*,
       No. 09-2507 SC, 2010 U.S. Dist. LEXIS 26503 (N.D. Cal. Mar. 22, 2010) .............................. 11

6

7    *Allstate Ins Co. v. Revere*,
       246 F.3d 672 (9th Cir. 2000) ................................................................................................. 7

8
     *Barker v. Am. Mobil Power Corp.*,
9      64 F.3d 1397, 1402 (9th Cir. 1995) ......................................................................................... 12

10   *Bell Atlantic v. Twombly*,
       550 U.S. 544 (2007) ............................................................................................................... 12

11

12   *Cervantes v. Countrywide Home Loans, Inc.*,
       656 F.3d 1034 (9th Cir. 2011) ............................................................................................... 11

13

14   *Global Servs. v. IKON Office Solutions*,
       No. C 10-05974 JSW, 2011 U.S. Dist. LEXIS 143123 (N.D. Cal. Dec. 13, 2011) ..................... 12

15   *Guerrero v. Gates*,
       442 F.3d 697 (9th Cir. 2006) ................................................................................................. 12

16

17   *Metz v. Unizan Bank*,
       416 F. Supp. 2d 568 (N.D. Ohio 2006) ................................................................................... 12

18

19   *Moreco Energy, Inc. v. Penberthy-Houdaille, Inc.*,
       1988 U.S. Dist. LEXIS 11850 (N.D. Ill. Oct. 21, 1988) ............................................................. 13

20   *Morton's Market, Inc. v. Gustafson's Dairy, Inc.*,
       198 F.3d 823 (11th Cir. 1999) ........................................................................................ 7, 8, 9, 11

21

22   *Neilson v. Union Bank of Cal., N.A.*,
       290 F. Supp. 2d 1101 (C.D. Cal. 2003) ................................................................................... 10

23

24   *O'Brien v. National Property Analysts Partners*,
       719 F. Supp. 222 (S.D.N.Y. 1989) ......................................................................................... 13

25   *Pace v. DiGuglielmo*,
       544 U.S. 408 (2006) ............................................................................................................... 11

26

27   *United States v. Nippon Paper Indus. Co.*,
       62 F. Supp. 2d 173 (D. Mass. 1999) ................................................................................... 7, 8

28

-v-

KPE'S AND PENAC'S NOTICE OF MOTION AND MOTION TO DISMISS AND FOR JUDGMENT ON THE PLEADINGS AS TO DIRECT
ACTION PLAINTIFFS' CLAIMS AND MEMORANDUM OF LAW IN SUPPORT (3:07-CV-05944 SC, MDL NO. 1917)

*United States v. U.S. Gypsum Co.*,
    438 U.S. 422 (1978) ....................................................................................................7

*Vess v. Ciba-Geiby Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ...................................................................................12

*Wasco Prods., Inc. v. Southwall Techs., Inc.*,
    435 F.3d 989 (9th Cir. 2006) .....................................................................................11

**STATUTES**

740 Ill. Comp. Stat. § 10/7(2) .........................................................................................6

15 U.S.C. § 15b ...............................................................................................................5

Ariz. Rev. Stat. §§ 44-1410(b) ........................................................................................6

Cal. Bus. & Prof. Code § 16750.1 ...................................................................................6

Cal. Bus. & Prof. Code § 17208 ......................................................................................6

Fla. Stat. Ann. § 95.11(3)(f) ............................................................................................6

Iowa Code Ann. § 553.16 .................................................................................................6

Kan. Stat. Ann. § 60-512(2) .............................................................................................6

Mass. Gen. Laws Ann. ch. 93 § 340(5) ...........................................................................6

Mich. Comp. Laws Ann. § 445.781 .................................................................................6

Minn. Stat. Ann. § 325D.64 .............................................................................................6

Miss. Code Ann. § 15-1-49 ..............................................................................................6

N.C. Gen. Stat. § 75-16.2 .................................................................................................6

N.M. Stat. Ann. § 57-1-12 ...............................................................................................6

N.Y. Gen. Bus. Law § 340(5) ..........................................................................................6

Neb. Rev. Stat. § 59-1612 ................................................................................................6

Nev. Rev. Stat. § 598A.220 .............................................................................................6

R.C.W. § 19.86.120 ..........................................................................................................6

Wis. Stat. Ann. § 133.18(2) .............................................................................................6

**OTHER AUTHORITIES**

Fed. R. Civ. Proc. 9(b) ................................................................................................................... 12

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

### PRELIMINARY STATEMENT

3       The Philips Defendants bring this Motion to Dismiss the DAPs' Sherman Act and various state

4 law claims on the basis that the claims are time-barred by the applicable statutes of limitations.  All but

5 one DAP complaint was filed in November 2011, and the claims that the DAPs assert in those

6 complaints have a limitations period that extends back no more than four years.[2]  As argued in

7 Defendants' Joint Notice of Motion and Motion to Dismiss and for Judgment on the Pleadings as to

8 Certain Direct Action Plaintiffs' Claims and Memorandum of Law in Support ("Joint Mot."), which

9 the Philips Defendants join, the vast majority of DAPs' claims are time-barred because DAPs waited

10 more than four years to file their complaints after being put on notice of their claims by the European

11 Commission's well-publicized November 8, 2007 public announcement that it had commenced an

12 investigation into the conduct of CRT manufacturers.

13       Even if the EC announcement, which spurred class plaintiffs into immediate action, did not

14 trigger a time bar, DAPs' claims against the Philips Defendants are still untimely.  By not filing until

15 November 2011, the DAPs are asserting claims that arise more than ***ten years*** after the Philips

16 Defendants' exited the CRT business by divesting their CRT interests to a newly formed joint venture,

17 named L.G. Philips Displays ("LPD"), in which KPE had a passive 50% shareholding.  Plaintiffs

18 concede this transfer in their complaints.  Following that June 2001 divestiture, DAPs make: (a) no

19 allegation that any Philips Defendant attended a CRT cartel meeting; (b) no allegation regarding the

20 Philips Defendants' involvement in the CRT industry generally; and (c) no allegation regarding the

21 Philips Defendants' involvement in LPD beyond its role as a passive shareholder.  Because of these

22 pleading deficiencies, the DAPs' claims are untimely on their face as to the Philips Defendants.  Even

23 when viewed in a light that is the most favorable to the DAPs, the allegations clearly indicate that the

24 Philips Defendants withdrew from the alleged CRT conspiracy in June 2001 or, at the very latest, in

25

26

27 [2] Except in one case relating to claims brought under the Wisconsin Antitrust Act.

28

1   March 2007, when, as DAPs alleged, the Philips Defendants relinquished their 50% shareholder

2   interest in LPD to financial institutions and private equity firms.

3        Given the DAPs' lack of timeliness, the only hope they have to salvage their claims is to assert

4   that the applicable statute of limitations was tolled by the doctrine of fraudulent concealment, an

5   assertion that requires DAPs to meet the stringent pleading rules of Rule 9(b) of the Federal Rules of

6   Civil Procedure.  This pleading burden mandates that DAPs not just plead fraudulent concealment

7   generally, but with particularity against each individual defendant.  Since the DAPs clearly alleged the

8   Philips Defendants exited the CRT business in June 2001 and relinquished their 50% shareholder

9   interest in LPD in March 2007, Plaintiffs' conclusory allegations that the Philips Defendants engaged

10  in fraudulent concealment fail as a matter of law.

11        Because the DAP complaints on their face show that the Philips Defendants could not have

12  participated in the alleged CRT conspiracy within the applicable limitations periods and because DAPs

13  do not adequately plead fraudulent concealment against the Philips Defendants, this Court should

14  dismiss the DAPs' untimely claims in their entirety.

15                              **STATEMENT OF FACTS**

16        Although this motion relates to eleven separate complaints filed by DAPs, the facts alleged in

17  those complaints are nearly identical.  DAPs allege that the Philips Defendants participated in a

18  conspiracy to fix the prices of Cathode Ray Tubes ("CRTs") that are incorporated into computer

19  monitors and televisions ("Finished Products") purchased by the Plaintiffs.  Many of DAPs'

20  allegations mirror those made by the Direct Purchaser Plaintiffs ("DPPs") and Indirect Purchaser

21  Plaintiffs ("IPPs") in class action complaints that were first filed on November 2007—fully four years

22  prior to the DAPs' complaints.  The DPP and IPP complaints were subject to the Philips Defendants'

23  May 18, 2009 Motion to Dismiss [*see* Docket No. 476]; however, there is one important difference: the

24  current complaints allege only a conspiracy in CRTs, not Finished Products.  *See* Defendants' Joint

25  Notice of Motion and Motion to Dismiss and for Judgment on the Pleadings as to Certain Direct

26  Action Plaintiffs' Claims and Memorandum of Law in Support ("Joint Mot.") at 4 (citing July 17, 2012

27  Letter from Philip Iovieno to Eva W. Cole & Molly M. Donovan ("Iovieno Ltr.")).  As explained more

28

1  fully below, this distinction precludes DAPs from conflating conduct by the Philips Defendants in the

2  Finished Products market (which the Philips Defendants remained in for some time) with their conduct

3  in the CRT market (which DAPs acknowledged the Philips Defendants exited).  The DAPs by and

4  large did not purchase a CRT from anyone, but are instead asserting claims to recover for the

5  "overcharges paid for the CRT Products containing price-fixed CRTs."  Best Buy Compl. ¶ 9.[3]

6      DAPs have brought suit against four separate Philips entities:  (a) KPE, a holding company

7  incorporated in the Netherlands; (b) PENAC, an indirect U.S. subsidiary of KPE; (c) Philips

8  Electronics Industries, LTD ("PEIT"), a Taiwanese subsidiary of KPE; and (d) Philips da Amazonia

9  Industria Electronic Ltda ("PAIE"), an indirect Brazilian subsidiary of KPE.  Best Buy Compl. ¶¶ 46-

10  49.[4]  The DAPs improperly attempt to characterize these four entities as a single defendant, "Philips,"

11  ignoring the companies' corporate structure and substantive differences between them.  *Id.* ¶ 50.[5]

12      Notwithstanding DAPs' disregard for the Philips Defendants' corporate structure, the DAPs

13  allege that in June 2001, ***all*** Philips entities exited by the CRT business when they divested their CRT

14  interests to L.P. Displays International Ltd. ("LPD"), a joint venture in which KPE owned a passive

15  50% shareholding.  Best Buy Compl. ¶ 46.[6]  LPD was a separate and independently incorporated legal

16

17

---

18  [3] CompuCom Compl. ¶ 9; Circuit City Compl. ¶ 11 Polaroid Compl. ¶ 10; Costco Compl. ¶ 10; Office
19  Depot Compl. ¶ 9; Interbond Compl. ¶ 9; Tweeter Compl. ¶ 9; P.C. Richard Compl. ¶ 9; Electrograph
    Am. Compl. ¶ 9.  As argued in the Joint Motion, these indirect purchases are insufficient for the DAPs
20  to establish standing under federal or state law.  Joint Mot. at  5-9 (federal law), 23-31 (state law).

21  [4] CompuCom Compl. ¶¶ 41-44; Circuit City Compl. ¶¶ 44-47; Target Am. Compl. ¶¶ 59-62; Polaroid
    Compl. ¶¶ 27-30; Costco Compl. ¶¶ 34-37; Office Depot Compl. ¶¶ 41-44; Interbond Compl. ¶¶ 40-43;
22  Tweeter Compl. ¶¶ 44-47; P.C. Richard Compl. ¶¶ 46-49;  Electrograph Am. Compl. ¶ 55-58.

23  [5] CompuCom Compl. ¶ 35; Circuit City Compl. ¶ 38; Target Am. Compl. ¶ 46; Polaroid Compl. ¶ 32;
    Costco Compl. ¶ 32; Office Depot Compl. ¶ 35; Interbond Compl. ¶ 34; Tweeter Compl. ¶ 38; P.C.
24  Richard Compl. ¶ 40;  Electrograph Am. Compl. ¶ 59.  For example, KPE is a holding company with
    very few employees and has never been involved in the day-to-day operations of CRTs, Finished
25  Products or any other of its subsidiary businesses.  While the other three Philips entities have engaged
    in the CRT business at some point during the Relevant Period (March 1, 1995 through November 25,
    2007), neither PEIT nor PAIE have a presence in the United States.

26  [6] CompuCom Compl. ¶ 41; Circuit City Compl. ¶ 44; Target Am. Compl. ¶ 59; Polaroid Compl. ¶ 27;
    Costco Compl. ¶ 34; Office Depot Compl. ¶ 41; Interbond Compl. ¶ 40; Tweeter Compl. ¶ 44; P.C.
27  Richard Compl. ¶ 46;  Electrograph Am. Compl. ¶ 55.

28

entity distinct from the Philips Defendants. *Id.* ¶ 40.[7]  Once the CRT business was divested, the Philips Defendants had no connection to the CRT industry other than as a shareholder of LPD and as a *purchaser* of CRTs to incorporate into Finished Products.  LPD declared bankruptcy in January 2006, which resulted in the Philips Defendants' shareholder rights being subordinated to those of the LPD creditors.  As the DAPs allege directly in their Complaints, those shareholder rights were extinguished by March 2007, when LPD announced that KPE had transferred ownership of LPD to the various "financial institutions and private equity firms" who were creditors of LPD.  *Id.* ¶ 40.[8]  LPD is now defunct.

Plaintiffs' sole allegations that the Philips Defendants participated in the CRT conspiracy relate to the 1996 through 2001 period, prior to the Philips Defendants' divestiture of their CRT business to LPD.  Best Buy Compl. ¶ 150.[9]  However, following the divestiture, Plaintiffs make no allegation that any Philips Defendant or employee was involved in any conspiratorial conduct, or in the operations of LPD, or in the CRT industry generally.  Rather, Plaintiffs merely alleged that **LPD employees**, who "had previously attended meetings on behalf of [the Philips Defendants]," engaged in conspiratorial activities post-2001, *id.* ¶ 145,[10] and, therefore, the Philips Defendants continued to participate in the conspiracy "though its joint venture." *Id.* ¶ 150.[11]  Plaintiffs allege no fact that would purport to explain how the Philips Defendants may have continued to participate in a conspiracy "through" LPD,

---

[7] CompuCom Compl. ¶ 35; Circuit City Compl. ¶ 38; Target Am. Compl. ¶ 46; Polaroid Compl. ¶ 32; Costco Compl. ¶ 32; Office Depot Compl. ¶ 35; Interbond Compl. ¶ 34; Tweeter Compl. ¶ 38; P.C. Richard Compl. ¶ 40;  Electrograph Am. Compl. ¶ 49.

[8] CompuCom Compl. ¶ 35; Circuit City Compl. ¶ 38; Target Am. Compl. ¶ 46; Polaroid Compl. ¶ 32; Costco Compl. ¶ 32; Office Depot Compl. ¶ 35; Interbond Compl. ¶ 34; Tweeter Compl. ¶ 38; P.C. Richard Compl. ¶ 40;  Electrograph Am. Compl. ¶ 156.

[9] CompuCom Compl. ¶ 146; Circuit City Compl. ¶ 148; Target Am. Compl. ¶ 164; Polaroid Compl. ¶ 134; Costco Compl. ¶ 125; Office Depot Compl. ¶ 145; Interbond Compl. ¶ 144; Tweeter Compl. ¶ 148; P.C. Richard Compl. ¶ 150;  Electrograph Am. Compl. ¶ 49.

[10] CompuCom Compl. ¶ 141; Circuit City Compl. ¶ 143; Target Am. Compl. ¶ 159; Polaroid Compl. ¶ 136; Costco Compl. ¶ 123; Office Depot Compl. ¶ 140; Interbond Compl. ¶ 139; Tweeter Compl. ¶ 143; P.C. Richard Compl. ¶ 145;  Electrograph Am. Compl. ¶ 151.

[11] CompuCom Compl. ¶ 146; Circuit City Compl. ¶ 148; Target Am. Compl. ¶ 164; Polaroid Compl. ¶ 134; Costco Compl. ¶ 125; Office Depot Compl. ¶ 145; Interbond Compl. ¶ 144; Tweeter Compl. ¶ 148; P.C. Richard Compl. ¶ 150;  Electrograph Am. Compl. ¶ 156.

1  a separate legal entity operating a business that the Philips Defendants had divested and in which they

2  were not alleged to have participated other than as a passive shareholder.

3  **ARGUMENT**

4  **I.  DAPS' CLAIMS AGAINST THE PHILIPS DEFENDANTS ARE TIME BARRED**

5  A.  The Limitations Period for the Vast Majority of DAPs' Claims Does Not Extend
6  Beyond November 2007

7  DAPs have asserted identical Sherman Act claims against the Philips Defendants, as well as

8  various state law claims under the antitrust and consumer protection statutes of seventeen different

9  states.  The statute of limitations period for DAPs' Sherman Act claim is four years.  15 U.S.C. § 15b.

10  For the state law claims, the applicable limitations period is either three or four years for all but one

11  DAP claim.  That lone claim, asserted by the DAPs in the Target Complaint under the Wisconsin

12  Antitrust Act, carries a six year limitations period.  *See* Wis. Stat. Ann. § 133.18(2).

13  Below we provide a chart of the relevant cut-off dates for the DAPs' claims to be timely, based

14  on the applicable limitations period and the filing date of each DAP complaint.  As only one DAP

15  complaint was filed before November 2011, the vast majority of the DAP claims have a cut-off date

16  that is no earlier than November 2007.[12]

17

18

19

20

21

22

23

24

25

26  [12] For a claim-by-claim breakdown of several DAP complaints, claim, and relevant limitations period,
see Appendix B to the Defendants Joint Motion to Dismiss.  Note, however, that Appendix B does not
27  include claims asserted in the Electrograph or Polaroid complaints.

28

| Complaint | Filed | Applicable Statute of Limitations | Earliest SOL Cut-Off Date |
|---|---|---|---|
| Best Buy, Circuit City, CompuCom, Costco, Interbond, Office Depot, P.C. Richard & Son, and Tweeter | November 14, 2011 | 4 years - Arizona, California, Florida, Illinois, Massachusetts, Michigan, Minnesota, New York, and Washington[13] | November 14, 2007 |
| Polaroid | November 4, 2011 | 4 years - California, Minnesota[14] | November 4, 2007 |
| Electrograph | February 18, 2011[15] | 4 years - California, New York[16] | February 18, 2007 |
| Target (excluding Wisconsin claim) | November 14, 2011 | 4 years - Arizona, California, Florida, Illinois, Iowa, Massachusetts, Michigan, Minnesota, Nebraska, Nevada, New Mexico, New York, and North Carolina[17]<br><br>3 years - Kansas and Mississippi[18] | November 14, 2007 |
| Target (Wisconsin claim) | November 14, 2011 | 6 years - Wisconsin[19] | November 14, 2005 |

---

[13] Ariz. Rev. Stat. § 44-1410(B); Cal. Bus. & Prof. Code § 16750.1; Cal. Bus. & Prof. Code § 17208; Fla. Stat. § 542.26(1); Fla. Stat. Ann. § 95.11(3)(f); 740 Ill. Comp. Stat. §10/7(2); Mass. Gen. Laws Ann. ch. 93 § 13; Mich. Comp. Laws Ann. §445.781(1); Minn. Stat. Ann. § 325D.64; N.Y. Gen. Bus. Law § 340(5); and R.C.W. §19.86.120.

[14] Cal. Bus. & Prof. Code § 16750.1; Cal. Bus. & Prof. Code § 17208; and Minn. Stat. Ann. § 325D.64.

[15] The Electrograph complaint was initially filed on February 18, 2011 and amended on March 10, 2010.  While the February 18, 2011 filing date applies for determining the earliest cut-off date, the Philips Defendants do not concede that it is the relevant filing date for statute of limitations purposes.

[16] Cal. Bus. & Prof. Code § 16750.1; Cal. Bus. & Prof. Code § 17208; and N.Y. Gen. Bus. Law § 340(5).

[17] Ariz. Rev. Stat. § 44-1410(B); Cal. Bus. & Prof. Code § 16750.1; Cal. Bus. & Prof. Code § 17208; Fla. Stat. § 542.26(1); Fla. Stat. Ann. § 95.11(3)(f); 740 Ill. Comp. Stat. §10/7(2); Iowa Code Ann. § 553.16(1); Mass. Gen. Laws Ann. ch. 93 § 13; Mich. Comp. Laws Ann. §445.781(1); Minn. Stat. Ann. § 325D.64; Neb. Rev. Stat. § 59-1612; Nev. Rev. Stat. § 598A.220(1); N.M. Stat. Ann. § 57-1-12; N.Y. Gen. Bus. Law § 340(5); and N.C. Gen. Stat. § 75-16.2.

[18] Kan. Stat. Ann. § 60-512(2); Miss. Code Ann. § 15-1-49.

[19] Wis. Stat. Ann. § 133.18(2).

B.    The Clear Allegations of the DAP Complaints Reflect the Philips Defendants'
      Withdrawal from the Alleged CRT Conspiracy Prior to the Applicable Limitations
      Period

      1.    *The Philips Defendants withdrew from the alleged CRT conspiracy in June 2001*

Even when viewed in the light most favorable to the DAPs, the DAPs' complaints acknowledge that the Philips Defendants must have withdrawn from the alleged CRT conspiracy in June 2001, when they divested their CRT interests to LPD.   Once a defendant withdraws from an alleged conspiracy, the statute of limitations for any claim arising from that conspiracy begins to run. *See United States v. U.S. Gypsum Co.*, 438 U.S. 422, 465 n.38 (1978) (finding improper jury instruction on withdrawal to constitute "reversible error" due to defendant's argument that claims were time barred); *Allstate Ins. Co. v. Revere*, 246 F.3d 672 (9th Cir. 2000) (affirming defendant withdrawal outside of limitations period).  As the above chart indicates, the Philips Defendants *de facto* withdrawal in June 2001 results in each and every DAP claim being untimely.[20]

Withdrawal from a conspiracy can be effectuated by a variety of means.  As the Supreme Court held in *Gypsum*, a defendant may effectively withdraw from a conspiracy through affirmative acts that are inconsistent with the object of the conspiracy and communicated in a manner reasonably calculated to reach its former co-conspirators.  *Gypsum*, 438 U.S. at 463-65.  The communication need not be explicit; rather the "'resumption of competitive behavior . . . [is] sufficient to communicate withdrawal or general abandonment of a price-fixing conspiracy.'"  *See United States v. Nippon Paper Indus. Co.*, 62 F. Supp. 2d 173, 190 (D. Mass. 1999) (quoting *Gypsum*, 438 U.S. at 464).

Divestiture of a business may also constitute effective withdrawal from an alleged antitrust conspiracy.  *See, e.g., Morton's Market, Inc. v. Gustafson's Dairy, Inc.*, 198 F.3d 823, 839 (11th Cir. 1999).  In *Morton's Market*, the court found the defendant to have withdrawn from an alleged milk price-fixing conspiracy after selling his dairy to a third-party.  *Id.* at 837-39.  While the court recognized that the defendant's sale was "not a disavowal of the conspiracy so much as a business

---

[20] As discussed above, the farthest reaching DAP claim, asserted by DAPs in the Target complaint under the Wisconsin Antitrust, only relates back to November 14, 2005.

1  decision not to produce milk anymore[,]" *id.* at 838, it found the defendant to have sufficiently

2  "severed its ties" from the conspiracy as it had done "nothing more to assist or participate in the price-

3  fixing activities of the other dairies."  *Id.* at 839.

4        As in *Morton's Market*, DAPs' allegations make clear that the Philips Defendants "severed

5  their ties" from the alleged CRT conspiracy by divesting **the entirety** of their CRT business to LPD in

6  June 2001.  Best Buy Compl. ¶ 46.[21]  Plaintiffs further concede that, following this divestiture, no

7  representative of the Philips Defendants attended any of the alleged cartel meetings or otherwise

8  participated in the alleged CRT conspiracy.  Best Buy Compl. ¶ 145.[22]  Thus, like the defendant in

9  *Morton's Market*, the Philips Defendants "did nothing more to assist or participate" in the alleged CRT

10  conspiracy following the June 2001 divestiture.  *Morton's Market*, 198 F.3d at 839.  To the extent that

11  the Philips Defendants maintained any involvement in CRTs, it was solely as a purchaser of CRT to be

12  incorporated into Finished Products.  *See Nippon Paper*, 62 F. Supp. 2d at 190 ("'resumption of

13  competitive behavior' . . . [is] sufficient to communicate withdrawal or general abandonment of a

14  price-fixing conspiracy") (internal citation omitted).  As such, this Court has ample basis from the face

15  of DAPs' complaints to find that the Philips Defendants withdrew from the alleged conspiracy in June

16  2001.

17        2.     *Assuming arguendo that June 2001 is not the applicable withdrawal date, it is*
                        *clear that the Philips Defendants withdrew from the alleged CRT conspiracy no*

18                          *later than March 2007*

19        Assuming *arguendo* that the Court does not find the Philips Defendants to have withdrawn

20  from the alleged CRT conspiracy in June 2001, there should be no question, based on the DAPs'

21  allegations, that the Philips Defendants withdrew from the alleged CRT conspiracy by March 2007.

22  As DAPs themselves concede, following LPD's declaration of bankruptcy in 2006, LPD announced in

23

24  _____

25  [21] CompuCom Compl. ¶ 41; Circuit City Compl. ¶ 44; Target Am. Compl. ¶ 59; Polaroid Compl. ¶ 27;
Costco Compl. ¶ 34; Office Depot Compl. ¶ 41; Interbond Compl. ¶ 40; Tweeter Compl. ¶ 44; P.C.
Richard Compl. ¶ 46;  Electrograph Am. Compl. ¶ 55.

26  [22] CompuCom Compl. ¶ 141; Circuit City Compl. ¶ 143; Target Am. Compl. ¶ 159; Polaroid Compl. ¶
27  136; Costco Compl. ¶ 123; Office Depot Compl. ¶ 140; Interbond Compl. ¶ 139; Tweeter Compl. ¶
143; P.C. Richard Compl. ¶ 145;  Electrograph Am. Compl. ¶ 151.

28

March 2007 that the Philips Defendants had relinquished their 50% shareholder interest to "financial institutions and private equity firms."  Best Buy Compl. ¶ 40.[23]  Thus, following March 2007, the Philips Defendants had no ability to influence the decisions of LPD, as they had "cede[d] control over the company."  *Id.*  There can be no doubt that after this date, the Philips Defendants had "severed their ties" from and "did nothing more to assist or participate in" the alleged CRT conspiracy.  *Morton's Market*, 198 F.3d at 839.

As shown in the chart below, even this later March 2007 withdrawal date results in the vast majority of DAPs' claims being time barred.  As only Electrograph claims and Target Complaint's Wisconsin Antitrust Act claim involve a limitations period that predates March 2007, the remaining DAP claims are untimely.  The shaded boxes indicate withdrawal dates that result in untimely claims.

| Complaint | Earliest Cut-Off Date | Alleged Divestiture of CRT Business by Philips | LPD Declares Bankruptcy | Alleged Relinquishment of Shares by KPE |
|---|---|---|---|---|
| Best Buy, Circuit City, CompuCom, Costco, Interbond, Office Depot, P.C. Richard & Son, and Tweeter | November 14, 2007 | June 2001 | January 2006 | March 2007 |
| Polaroid | November 4, 2007 | June 2001 | January 2006 | March 2007 |
| Electrograph | February 18, 2007 | June 2001 | January 2006 | March 2007 |
| Target (excluding Wisconsin claim) | November 14, 2007 | June 2001 | January 2006 | March 2007 |
| Target (Wisconsin Claim) | November 14, 2005 | June 2001 | January 2006 | March 2007 |

[23] CompuCom Compl. ¶ 35; Circuit City Compl. ¶ 38; Target Am. Compl. ¶ 46; Polaroid Compl. ¶ 32; Costco Compl. ¶ 32; Office Depot Compl. ¶ 35; Interbond Compl. ¶ 34; Tweeter Compl. ¶ 38; P.C. Richard Compl. ¶ 40;  Electrograph Am. Compl. ¶ 156.

3.     *The DAP complaints present a significantly different record on which Your Honor should consider the withdrawal of the Philips Defendants*

While Your Honor previously considered arguments related to the Philips Defendants' withdrawal from the alleged CRT conspiracy under the DPP and IPP complaints, *see* Report, Recommendation and Tentative Rulings Regarding Defendants' Motion to Dismiss DPPs and IPPs complaints ("Report"), at 21-22 [Docket No. 597], there are two major differences between the factual context of that decision and the one present here.  First, as Your Honor is well aware, since the time of that prior ruling, the DPPs, IPPs, and DAPs have all dropped allegations that Defendants have engaged in a Finished Products conspiracy.  *See* Joint Mot. at 4 (citing Iovieno Ltr.).  As a result, DAPs have no basis to claim that the Philips Defendants' continued to participate in the alleged conspiracy as a manufacturer of Finished Products.[24]  *See* Report at 25 (rejecting the Philips Defendants' withdrawal argument on basis that "the alleged conspiracy also pertains to CRT Products and not just tubes").  The DAPs have not raised a single allegation of any involvement by the Philips Defendants after the formation of LPD in: (a) attending alleged CRT conspiracy meetings; (b) the CRT business generally; (c) or in exercising control over the operations of LPD, and there is no other basis to find the Philips Defendants' continued their involvement in the alleged CRT conspiracy.  *See, e.g., Neilson v. Union Bank of Cal.*, N.A., 290 F. Supp. 2d 1101, 1116 (C.D. Cal. 2003) ("In order to overcome the presumption of separateness afforded to related corporations, [a plaintiff] is required to plead . . . specific facts supporting its claims, not mere conclusory allegations") (internal citation omitted).  As such, this Court should revisit its prior decision and find in favor of a June 2001 withdrawal date, consistent with the points discussed above.

Second, unlike the present motion, the Philips Defendants previously did not submit the argument that a March 2007 withdrawal date may be determined on the face of the pleadings.[25]  Thus, this motion is one of first impression before the Court.  To the extent this Court may have believed

---

[24] The Philips Defendants continued to sell CRT televisions until 2007 and CRT monitors until 2008.

[25] That argument was not relevant to the Philips Defendants' motion to dismiss the IPPs and DPPs complaints, since both classes had filed their complaints in November 2007.

1    factual questions existed regarding the Philips Defendants' participation in the alleged CRT conspiracy

2    as a shareholder of LPD,[26] those concerns disappear in March 2007, when, as DAPs allege, the Philips

3    Defendants relinquished and "cede[d] control" of their 50% shareholder interest to "financial

4    institutions and private equity firms."  Best Buy Compl. ¶ 40.[27]  As such, it is conclusive from the face

5    of the DAPs' complaints that the Philips Defendants withdrew from the alleged CRT conspiracy no

6    later than March 2007.

7        C.    DAPs' Untimely Claims Against the Philips Defendants Cannot be Saved by the
              Doctrine of Fraudulent Concealment

8            Because the Philips Defendants withdrew from the alleged CRT conspiracy outside the

9    applicable limitations period, DAPs can only salvage the timeliness of their claims by showing that the

10   applicable statutes of limitations should be tolled.  *Morton's Market*, 198 F.3d at 837.  With respect to

11   the Philips Defendants, the DAPs assert tolling on the basis of fraudulent concealment.[28]  *See, e.g.*,

12   *Allen v. United Fin. Mortg. Corp.*, No. 09-2507 SC, 2010 U.S. Dist. LEXIS 26503, at *3-4 (N.D. Cal.

13   Mar. 22, 2010) (Conti, J.) ("'[P]laintiffs seeking to toll the statute of limitations on various grounds

14   must have included the allegation in their pleadings.'") (quoting *Wasco Prods., Inc. v. Southwall*

15   *Techs., Inc.*, 435 F.3d 989, 991 (9th Cir. 2006), and citing *Pace v. DiGuglielmo*, 544 U.S. 408, 418

16   (2005)); *see also Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1045-46 (9th Cir.

17   2011) (ruling that plaintiffs failed to demonstrate basis for equitable tolling or fraudulent concealment).

18   DAPs, however, fail to meet their pleading burden.

19

20   ———————————

21   [26] For example, in his Order approving Your Honor's Report, Judge Conti questioned, "how can the
     Court know at this stage of the proceedings whether the withdrawing Defendants maintained financial
22   interests in the entities being sold or transferred?"  March 30, 2010 Order at 23 [Docket No. 665].
     Here, we do know from the face of the DAPs complaints that the Philips Defendants relinquished
     financial interests in and purported control over LPD in March 2007.

23   [27] CompuCom Compl. ¶ 35; Circuit City Compl. ¶ 38; Target Am. Compl. ¶ 46; Polaroid Compl. ¶ 32;
24   Costco Compl. ¶ 32; Office Depot Compl. ¶ 35; Interbond Compl. ¶ 34; Tweeter Compl. ¶ 38; P.C.
     Richard Compl. ¶ 40;  Electrograph Am. Compl. ¶ 156.

25   [28]  As stated in Defendants Joint Motion to Dismiss, DAPs also do not have the benefit of class action
     tolling because they fall outside both the IPP and DPP class definitions and because the DPPs did not
26   assert any state law claims.  *See* Joint Mot, at 15.  To the extent DAPs seek class action tolling for their
     federal claims, those claims cannot survive the Philips Defendants June 2001 withdrawal because the
27   DPP complaint was not filed until in November 2007.

28

Fraudulent concealment is considered the same as any other fraud claim and is subject to the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure.  Fed. R. Civ. Proc. 9(b).  As such, plaintiffs alleging fraudulent concealment of an antitrust conspiracy must plead facts with particularity, going beyond the general "plausibility" standard associated with antitrust pleading in general.[29]  *Compare Bell Atlantic v. Twombly*, 550 U.S. 544 (2007) (establishing "plausibility" standard); *with Guerrero v. Gates*, 442 F.3d 697, 706-07 (9th Cir. 2006) (to invoke fraudulent concealment, "[t]he plaintiff must . . . 'plead with particularity the facts which give rise to the claim of fraudulent concealment'"); *and Global Servs. v. IKON Office Solutions*, No. C 10-05974 JSW, 2011 U.S. Dist. LEXIS 143123, at *6-16 (N.D. Cal. Dec. 13, 2011) (finding allegations, including allegations of "self-concealing" wrongful conduct, insufficient to toll statute of limitations based on fraudulent concealment).

As argued in the Joint Motion, the DAPs' generic pleading of fraudulent concealment lacks sufficient particularity to satisfy the requirements under Rule 9(b) against *any* of the defendants.  Joint Mot. at 12.  Beyond these general deficiencies, DAPs' allegations with respect to the Philips Defendants are particularly deficient.  As several courts have held, the particularized pleading requirement of Rule of 9(b) mandates that fraudulent concealment be pled not generally but against each individual defendant.  *See Barker v. Am. Mobil Power Corp.*, 64 F.3d 1397, 1402 (9th Cir. 1995) (under the doctrine of fraudulent concealment, "the statute of limitations may be tolled only if the plaintiff establishes affirmative conduct upon the part of the *defendant*") (emphasis in original) (internal quotation omitted); *Metz v. Unizan Bank*, 416 F. Supp. 2d 568, 579 (N.D. Ohio 2006) ("The

---

[29] In the Ninth Circuit, the particularized pleading requirements for fraudulent concealment apply equally to federal and state law claims.  *See 389 Orange St. Partners v. Arnold*, 179 F.3d 656, 662-63 (9th Cir. 1999) (applying Connecticut elements for fraudulent concealment where plaintiff sought to toll the statute of limitations but requiring plaintiff to meet 9(b) pleading standards); *Vess v. Ciba-Geiby Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003) (holding that all allegations that sound in fraud must be pled with particularity and clarifying that "while a federal court will examine state law to determine whether the elements of fraud have been pled sufficiently to state a cause of action, the Rule 9(b) requirement that the circumstances of fraud must be state with particularity is a federal imposed rule") (internal citations omitted) (emphasis in original).

1    Plaintiff must affirmatively plead facts supporting a claim for fraudulent concealment against *each*

2    *specific Defendant* who allegedly participated in the concealment in order to state a claim against that

3    Defendant which would survive an otherwise expired statute of limitations") (emphasis added);

4    *O'Brien v. Nat'l Prop. Analysts Partners*, 719 F. Supp. 222, 232 (S.D.N.Y. 1989) ("[a]llegations

5    that *other* defendants acted to deceive plaintiffs from filing suit do not plead fraudulent concealment

6    against *all* defendants.  The doctrine of fraudulent concealment tolls the statute of limitations *only* as to

7    those defendants who committed the concealment.) (internal quotations omitted) (emphasis in

8    original); *Moreco Energy, Inc. v. Penberthy-Houdaille, Inc.*, 1988 U.S. Dist. LEXIS 11850, at *12

9    (N.D. Ill. Oct. 21, 1988) ("when a complaint contains allegations of fraudulent concealment, it must

10   reasonably notify each defendant of the part he plays in the fraudulent scheme").  Here, the DAPs fail

11   to allege fraudulent concealment even as to LPD, let alone any of the Philips Defendants.  Moreover,

12   the DAPs' complaints necessarily ***preclude*** any allegation that the Philips Defendants fraudulently

13   concealed an alleged CRT conspiracy after June 2001, since DAPs alleged that the Philips Defendants

14   divorced themselves from the CRT business on that date.  *See* Best Buy Compl. ¶ 46.[30]  Indeed, DAPs

15   make no allegations that any Philips entity or employee engaged in any conduct whatsoever with

16   respect to the alleged CRT conspiracy following that date, let alone engage in actual concealment.[31]

17          Based on these pleading deficiencies, DAPs have not sufficiently alleged fraudulent

18   concealment, such that their untimely claims against the Philips Defendants may be tolled.[32]

19   ─────────────────────

20   [30] CompuCom Compl. ¶ 41; Circuit City Compl. ¶ 44; Target Am. Compl. ¶ 59; Polaroid Compl. ¶ 27; Costco Compl. ¶ 34; Office Depot Compl. ¶ 41; Interbond Compl. ¶ 40; Tweeter Compl. ¶ 44; P.C.
21   Richard Compl. ¶ 46;  Electrograph Am. Compl. ¶ 55.

22   [31] The deficiencies in DAPs' pleading is illustrated by their by their imprecise allegation that the Philips Defendants made a public announcement related to CRT price increase in 2004.  *See*, *e.g.*, Best
23   Buy Compl. ¶ 232.  As discussed above, Neither Philips nor LG Electronics were manufacturing CRTs in 2004, and the statement that is attributed to an unnamed LG Electronics distributor relates to
24   Finished Products (CRT monitors), not CRTs themselves.  Given that the DAPs have dropped any allegation of a conspiracy in Finished Products, this allegation cannot support an allegation of
     fraudulent concealment in *CRTs*.

25   [32] Assuming arguendo that this Court finds the Philips Defendants to have withdrawn from the alleged
26   CRT conspiracy in March 2007, it need only find that DAPs had not properly pled fraudulent concealment from March 2007 through the limitations period.  Given that the Philips Defendants had
27   relinquished their 50% shareholder interest in LPD in March 2007, Plaintiffs have even less of a basis to allege fraudulent concealment against the Philips Defendants during this more limited timeframe.

28

1

## CONCLUSION

2          For the foregoing reasons, the Court should enter an Order dismissing the applicable DAP

3   claims against KPE, PENAC, PEIT and PAIE with prejudice.

4

5   Dated: August 17, 2012                    By:  ___/s/ Jon V. Swenson___
                                              Jon V. Swenson (SBN 233054)
6                                             BAKER BOTTS LLP
                                              1001 Page Mill Road
7                                             Building One, Suite 200
                                              Palo Alto, CA 94304-1007
8                                             Telephone: (650) 739-7500
                                              Facsimile: (650) 739-7699
9                                             Email: jon.swenson@bakerbotts.com

10
                                              John M. Taladay (*pro hac vice*)
11                                            Joseph Ostoyich (*pro hac vice*)
                                              BAKER BOTTS LLP
12                                            1299 Pennsylvania Ave., N.W.
                                              Washington, DC 20004-2400
13                                            Telephone: (202) 639-7700
                                              Facsimile: (202) 639-7890
14                                            Email: john.taladay@bakerbotts.com
                                              Email: joseph.ostoyich@bakerbotts.com
15

16                                            *Attorneys for Defendant Philips Electronics North
                                              America Corporation*
17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 17, 2012, I electronically filed Koninklijke Philips Electronics N.V. and Philips Electronics North America Corporation's Notice of Motion and Motion to Dismiss the Direct Action Plaintiffs' Complaints and Memorandum of Law in Support with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the counsel of record in this matter who are registered on the CM/ECF system.

By:  /s/ Jon V. Swenson_____
Jon V. Swenson