Guido Saveri (22349) guido@saveri.com
R. Alexander Saveri (173102) rick@saveri.com
Geoffrey C. Rushing (126910) grushing@saveri.com
Cadio Zirpoli (179108) cadio@saveri.com
SAVERI & SAVERI, INC.
706 Sansome Street
San Francisco, CA 94111
Telephone:  (415) 217-6810
Facsimile:  (415) 217-6813

Interim Lead Counsel for the Direct Purchaser Plaintiffs

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. CV- 07-5944-SC |
| | MDL No. 1917 |
| This Document Relates to: | |
| **ALL DIRECT PURCHASER ACTIONS** | **DIRECT PURCHASER PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENTS WITH DEFENDANTS:** |
| | 1) **CHUNGHWA PICTURE TUBES, LTD, AND;** |
| | 2) **KONINKLIJKE PHILIPS ELECTRONICS N.V., PHILIPS ELECTRONICS NORTH AMERICA CORPORATION, PHILIPS ELECTRONICS INDUSTRIES (TAIWAN), LTD., AND PHILIPS DA AMAZONIA INDUSTRIA ELECTRONICA LTDA.** |
| | Date:    September 20, 2012<br>Time:   10:00 a.m.<br>Judge:  Honorable Charles A. Legge (Ret.)<br>JAMS: Two Embarcadero Center, Suite 1500 |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................ i

TABLE OF AUTHORITIES ........................................................................................................ ii

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................ 1

I.      INTRODUCTION .......................................................................................................... 1

II.     FACTUAL AND PROCEDURAL HISTORY ............................................................ 1

III.    THE TERMS OF THE SETTLEMENTS ................................................................... 6

    A.  The CPT Settlement. ........................................................................................... 6

    B.  The Philips Settlement. ........................................................................................ 7

IV.     ARGUMENT .................................................................................................................. 8

    A.  The Class Action Settlement Class. .................................................................... 9

    B.  The Court-Approved Notice Program Satisfies Due Process and Has Been Fully Implemented. ...................................................................................................... 9

    C.  The Settlements Are "Fair, Adequate And Reasonable" and Should Be Granted Final Approval. .................................................................................................. 10

        1.  The Settlements Provide Considerable Relief For The Class. ........................ 12

        2.  The Class Members' Positive Reaction Favors Final Approval. ................... 13

        3.  The Settlement Eliminates Significant Risk To The Class. ........................... 14

        4.  The Settlements Are the Products of Arm-Length Negotiations Between the Parties and The Recommendation of Experienced Counsel Favors Approval. ............................... 15

    D.  The Plan of Allocation Is "Fair, Adequate and Reasonable" and Therefore Should Be Approved ........................................................................................................ 16

V.      OBJECTIONS BY CLASS MEMBERS ................................................................... 17

VI.     EXCLUSIONS .............................................................................................................. 17

VII.    CONCLUSION ............................................................................................................. 17

i

DIRECT PURCHASER PLAINTIFFS' MEMO FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENTS WITH CHUNGHWA PICTURE TUBES, LTD. AND PHILIPS; Master File No. CV-07-5944-SC

1

## **<u>TABLE OF AUTHORITIES</u>**

2

3

### <u>CASES</u>

*Agretti v. ANR Freight System, Inc.*,
  982 F.2d 242 (7th Cir. 1992) .................................................................................. 13

*Arnold v. Arizona Department of Public Safety*,
  No. CV-01-1463-PHX-LOA, 2006 WL 2168637 (D. Ariz. July 31, 2006) .......... 14

*Bellows v. NCO Financial System*,
  2008 U.S. Dist. LEXIS 103525 (S.D. Cal. Dec. 2, 2008) ..................................... 15

*Bynum v. District of Columbia*,
  412 F. Supp. 2d 73 (D.D.C. 2006) ......................................................................... 14

*Byrd v. Civil Service Commission*,
  459 U.S. 1217 (1983) ............................................................................................. 10

*Churchill Village L.L.C. v. General Electric*,
  361 F.3d 566 (9th Cir. 2004) ........................................................................... 10, 13

*Class Plaintiffs v. City of Seattle*,
  955 F.2d 1268 (9th Cir. 1992) ................................................................................ 10

*Ellis v. Naval Air Rework Facility*,
  87 F.R.D. 15 (N.D. Cal. 1980) ............................................................................... 11

*Fisher Brothers v. Mueller Brass Co.*,
  630 F. Supp. 493 (E.D. Pa. 1985) .......................................................................... 12

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1988) .......................................................................... 11, 13

*In re "Agent Orange" Product Liability Litigation*,
  818 F.2d 145 (2d Cir. 1987) ..................................................................................... 9

*In re Austrian and German Bank Holocaust Litigation*,
  80 F. Supp. 2d 164 (S.D.N.Y. 2000) ..................................................................... 15

*In re Citric Acid Antitrust Litigation*,
  145 F. Supp. 2d 1152 (N.D. Cal. 2001) ................................................................. 16

*In re Computron Software, Inc.*,
  6 F. Supp.2d 313 (D.N.J. 1998) ............................................................................. 16

*In re Corrugated Container Antitrust Litig.*, Case No.
  M.D.L. 310, 1981 WL 2093 (S.D. Tex. June 4, 1981) .......................................... 13

*In re Corrugated Container Antitrust Litigation*,
  MDL No. 310, 1981 U.S. Dist. LEXIS 11004 (S.D. Tex. Jan. 27, 1981) ....... 12, 13

*In re Fleet/Norstar Securities Litigation*,
  935 F. Supp. 99 (D.R.I. 1996) ............................................................................... 14

*In re Linerboard Antitrust Litigation*,
  292 F. Supp. 2d 631 (9th Cir. 2003) ........................................................... 12, 13, 14

*In re Lloyds' American Trust Fund Litigation*,
  No. 96 Civ.1262 RWS, 2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002) .............. 17

*In re Mid-Atlantic Toyota Antitrust Litigation*,
  564 F. Supp. 1379 (D. Md. 1983) ..................................................................... 12, 13

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*In re NASDAQ Market-Makers Antitrust Litigation*,
    187 F.R.D. 465 (S.D.N.Y. 1998) ................................................................ 14

*In re PaineWebber Ltd. Partnerships Litigation*,
    171 F.R.D. 104 (S.D.N.Y. 1997) ................................................................ 17

*In re Patriot American Hospitality Inc. Securities Litigation*,
    No. MDL C-00-1300 VRW, 2005 WL 3801594 (N.D. Cal. Nov. 30, 2005) ........................... 14

*In re Sumitomo Copper Litigation*,
    189 F.R.D. 274 (S.D.N.Y. 1999) ................................................................ 14

*In re Visa Check/Mastermoney Antitrust Litigation*,
    297 F. Supp. 2d 503 (E.D.N.Y. 2003) ........................................................... 15

*In re Vitamins Antitrust Litigation*,
    No. 99-197 TFH, 2000 WL 1737867 (D.D.C. Mar. 31, 2000) ........................................ 16

*M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*,
    671 F. Supp. 819 (D. Mass. 1987) .............................................................. 11

*Mangone v. First USA Bank*,
    206 F.R.D. 222 (S.D. Ill. 2001) ................................................................. 9

*Marisol A. ex rel. Forbes v. Giuliani*,
    185 F.R.D. 152 (S.D.N.Y. 1999) ................................................................ 15

*Mendoza v. Tucson School District No. 1*,
    623 F.2d 1338 (9th Cir. 1980) ................................................................. 10

*National Rural Telecommunications Cooperative v. DIRECTV, Inc*.,
    221 F.R.D. 523 (C.D. Cal. 2004) ............................................................ 14, 15

*Officers for Justice v. Civil Service Commission*,
    688 F.2d 615 (9th Cir. 1982) ............................................................... 11, 15

*Pallas v. Pacific Bell*,
    No. C-89-2373 DLJ, 1999 WL 1209495 (N.D. Cal. 1999) ........................................... 14

*Petrovic v. Amoco Oil Co.*,
    200 F.3d 1140 (8th Cir. 1999) .................................................................. 9

*Rutter & Wilbanks Corp. v. Shell Oil Co.*,
    314 F.3d 1180 (10th Cir. 2002) ................................................................ 15

*Torrisi v. Tucson Electric Power Co.*,
    8 F.3d 1370 (9th Cir. 1993) ............................................................... 10, 11

*Utility Reform Project v. Bonneville Power Administration*,
    869 F.2d 437 (9th Cir. 1989) .................................................................. 11

*Van Bronkhorst v. Safeco Corp*.,
    529 F.2d 943 (9th Cir. 1976) .................................................................. 11

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005) .................................................................... 14

*Wilkerson v. Martin Marietta Corp.*,
    171 F.R.D. 273 (D. Colo. 1997) ................................................................ 15

## **STATUTES**

Clayton Act, 15 U.S.C. § 15 ......................................................................... 2

Sherman Act, 15 U.S.C. § 1 .......................................................................... 2

## OTHER AUTHORITIES

4 Albert Conte & Herbert Newberg, *Newberg on Class Actions* §§ 11.22, *et seq.* (4th ed. 2002) .... 8

Manual for Complex Litigation Second § 30.46 (1986) ................................................................ 13

## RULES

Federal Rule of Civil Procedure 11 ....................................................................................................... 3

Federal Rule of Civil Procedure 23 ........................................................................................... passim

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 23(e) and the Court's Order granting preliminary approval of the proposed settlements (Docket No. 1179), Direct Purchaser Class Plaintiffs ("Plaintiffs") submit this memorandum in support of final approval of Class settlements reached with Defendants Chunghwa Picture Tubes, Ltd. and Chunghwa Picture Tubes (Malaysia) Sdn. Bhd.  ("CPT"), and Koninklijke Philips Electronics N.V., Philips Electronics North America Corporation, Philips Electronics Industries (Taiwan), Ltd., Philips Electronics Industries Ltd., Philips Consumer Electronics Co., and Philips da Amazonia Industria Electronica Ltda. ("Philips") (collectively, "Settling Defendants").

The settlements with CPT and Philips provide for payments to the class in the amounts of $10 million and $15 million respectively for a complete release of all class members' antitrust claims. Saveri Decl. Exhs 1, 2.  The settlements also provide for extensive cooperation with Plaintiffs regarding the antitrust conspiracy alleged in the complaint. Saveri Decl. ¶¶ 19, 23.  In addition, the sales of both companies remain in the case for the purpose of computing damages against the remaining non-settling defendants. *Id.* ¶¶ 13, 19.

On May 3, 2012, the Court certified the Settlement Class and preliminarily approved both the CPT and Philips Settlements. (Docket No. 1179)  In addition, the Court 1) ordered that class members be provided notice of the Settlements; 2) set July 23, 2012 as the date for class members to opt-out of the Settlement Class or object to the Settlements; and 3) set September 20, 2012 as the date for the hearing on final approval of the Settlements. *Id.*

There are no objections to either the CPT or the Philips settlements. Sherwood Decl. ¶ 10.

Direct Purchaser Plaintiffs respectfully request the Court grant final approval of the Settlements on the grounds that each settlement is fair, adequate and reasonable to the class.

### II. FACTUAL AND PROCEDURAL HISTORY

This multidistrict litigation arises from an alleged conspiracy to fix prices of Cathode Ray Tubes ("CRTs").  In November of 2007, the first direct purchaser plaintiff filed a class action complaint on behalf of itself and all others similarly situated alleging a violation of section one of

DIRECT PURCHASER PLAINTIFFS' MEMO FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENTS WITH CHUNGHWA PICTURE TUBES, LTD. AND PHILIPS; Master File No. CV-07-5944-SC

the Sherman Act, 15 U.S.C. § 1, and section four of the Clayton Act, 15 U.S.C. § 15.  Thereafter, additional actions were filed in other jurisdictions, and the Judicial Panel on Multidistrict Litigation transferred all related actions to this Court on February 15, 2008. (Docket No. 122).  On May 9, 2008, Saveri & Saveri, Inc. was appointed Interim Lead Class Counsel for the nationwide class of direct purchasers. (Docket No. 282).

On March 16, 2009, the Direct Purchaser Plaintiffs filed their Consolidated Amended Complaint ("CAC") alleging an over-arching horizontal conspiracy among the Defendants and their co-conspirators to fix prices for CRTs and to allocate markets and customers for the sale of CRTs in the United States from March 1, 1995 through November 25, 2007 (the "Class Period"). The Complaint alleges that Plaintiffs and members of the Class are direct purchasers of CRTs and/or CRT Finished Products from defendants and/or their subsidiaries and were injured because they paid more for CRTs and/or CRT Finished Products than they would have absent defendants' illegal conspiracy.  (Compl. ¶¶ 213–221).  Plaintiffs seek, among other things, treble damages pursuant to Section 4 of the Clayton Act, 15 U.S.C. §§ 15 and 22.  (Compl., Prayer for Relief).

Defendants filed several motions to dismiss the CAC on May 18, 2009. (See Docket Nos. 463–493).  On February 5, 2010 this court issued its rulings denying in part and granting in part Defendants' motions to dismiss (Report, Recommendations and Tentative Rulings regarding Defendants' Motions to Dismiss, Docket No. 597).  After an appeal by defendants, Judge Conti on March 30, 2010 entered his order approving and adopting Judge Legge's previous ruling and recommendations regarding Defendants' Motions to Dismiss. (Docket No. 665).  On April 29, 2010, Defendants answered the CAC.

Thereafter, in May 2010, certain Defendants propounded interrogatories requesting Plaintiffs to identify what evidence they had about the existence of a conspiracy to fix the prices of CRT Products at the time they filed their complaints.  Plaintiffs objected to these interrogatories as, among other things, premature "contention" interrogatories.  Defendants moved to compel answers.  On November 18, 2010, after a hearing, the Special Master ordered Plaintiffs' to answer the interrogatories. (Report and Recommendations Regarding Discovery Motions, Docket No. 810).  On December 8, 2010, the court adopted the Special Master's Report and Recommendation.

1    (Order Adopting Special Master's Report, Recommendation, and Tentative Rulings Regarding

2    Discovery Motions, Docket No. 826).  On January 31, 2011, Plaintiffs answered Defendants'

3    interrogatories.

4          On March 21, 2011, certain Defendants moved for sanctions pursuant to Federal Rule of

5    Civil Procedure 11 on the grounds that the allegations of a finished product conspiracy were

6    without foundation and should be stricken from the complaint. (Certain Defendants' Motion for

7    Sanctions Pursuant to Rule 11, Docket No. 880).  On June 15, 2011, after a hearing, the Special

8    Master recommended that the motion be granted and that Plaintiffs' allegations of a finished

9    products conspiracy be stricken from the complaint. (Special Master Report and Recommendations

10   on Motions Regarding Finished Products, Docket No. 947).  The Special Master also

11   recommended that "the issue of the possible impact or effect of the alleged fixing of prices of the

12   CRTs on the prices of Finished Products shall remain in the case, and is a proper subject of

13   discovery." *Id.* at p. 14.

14         On June 29, 2011, Defendants moved the Court to adopt the Special Master's Report and

15   Recommendation. (Motion to Adopt Special Master's Report and Recommendation Regarding

16   Finished Products, Docket No. 953). Plaintiffs' filed an objection to the Special Master's Report

17   and Recommendation. (Direct Purchaser Plaintiffs' Objection to Report and Recommendation on

18   Motions Regarding Finished Products, Docket No. 957).   The Court set the matter for hearing on

19   September 2, 2011. (Docket No. 968).

20         On August 26, 2011, before the hearing on the Special Master's Report and

21   Recommendations Regarding Finished Products, the parties entered into a stipulation providing,

22   among other things: 1) that the Special Master's recommended finding that Plaintiffs violated Rule

23   11 be vacated; 2) that certain other aspects of the Special Master's recommendations be adopted;

24   and 3) that Plaintiffs' "allegations of the Direct CAC purporting to allege a conspiracy

25   encompassing Finished Products are Stricken from the Direct CAC, provided, however, that the

26   issue of the possible impact or effect of the alleged fixing of prices of CRTs on the prices of

27   Finished Products shall remain in the case."  In addition, Plaintiffs agreed to withdraw "all

28   discovery requests regarding or relating to information in support of the CRT Finished Product

3

1    Conspiracy claims," and that "the issue of the purported impact or effect of the alleged fixing of

2    prices of the CRTs on the prices of the Finished Products shall remain in the case and is a proper

3    subject of discovery." (Stipulation and Order Concerning Pending Motions Re: Finished Products,

4    Docket No. 996).

5          On December 12, 2011 Defendants filed a joint motion for Summary Judgment against

6    Direct Purchaser Plaintiffs who purchased CRT Finished Products. (Docket No. 1013). On

7    February 24, 2012, Plaintiffs filed their Memorandum of Points and Authorities In Opposition to

8    Defendants' Motion For Partial Summary Judgment and supporting Declaration of R. Alexander

9    Saveri under seal. (Docket No. 1057). The same day, the Direct Action Plaintiffs also filed an

10    opposition to Defendants' motion. On March 9, 2012, Defendants filed their Reply In Support of

11    Motion For Summary Judgment (Docket No. 1083), and on March 20, 2012, the Court heard

12    argument.  On May 31, 2012, the Special Master issued his Report and Recommendation regarding

13    Defendants' Joint Motion For Summary Judgment recommending that the Court grant Defendants'

14    motion for summary judgment and that judgment be entered against certain plaintiffs that

15    purchased CRT Finished Products from defendants ("R&R"). (Docket No. 1221).

16          On June 12, 2012, the Direct Purchaser Plaintiffs, the Direct Action Plaintiffs, and the

17    Defendants submitted a Stipulation notifying the Court, *inter alia*, that Plaintiffs' intended to object

18    to the R&R. (Docket No. 1228).  On June 26, 2012, the Court issued an order establishing a

19    briefing schedule requiring all parties to file their briefs by July 26, 2012 and setting a hearing for

20    August 10, 2012. (Docket No. 1240).  On June 28, 2012, the Court vacated the hearing. (Docket

21    No. 1243).  The parties filed their briefs as ordered; the Court has not ruled.

22          In September of 2008, the first of several stays prohibiting plaintiffs from obtaining merits

23    discovery was entered by this Court. (Docket Nos. 379, 425, and 590).  On June 4, 2008, Plaintiffs'

24    propounded their First Set of Limited Document Requests.  Thereafter, on March 12, 2010, after

25    the partial stay of discovery was lifted, Plaintiffs propounded their Second Set of Document

26    Requests and First Set of Interrogatories. After extensive meet and confers and several motions to

27    compel, the Court issued its Report Regarding Case Management Conference No. 4 on October 27,

28    2011 in which it set the middle of December, 2011 as the deadline for the completion of substantial

4

DIRECT PURCHASER PLAINTIFFS' MEMO FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENTS
WITH CHUNGHWA PICTURE TUBES, LTD. AND PHILIPS; Master File No. CV-07-5944-SC

1 | discovery by all parties. (Docket Nos. 1007, 1008). Plaintiffs have now received over 5 million
2 | pages of documents produced by Defendants.

3 |     On March 19, 2012, the Special Master issued the Scheduling Order and Order Re
4 | Discovery and Case Management Protocol. (Docket Nos. 1093, 1094).  The Court entered both
5 | Orders on April 3, 2012.  (Docket Nos. 1127, 1128).  The Scheduling Order set August 30, 2013 as
6 | the date for completion of all fact and expert discovery.  Beginning in June of 2012, after meeting
7 | and conferring with defendants regarding the scope and topics of 30(b)(6) witnesses, plaintiffs
8 | began taking 30(b)(6) depositions of the various defendants.  To date, in coordination with the
9 | indirect purchasers, the Attorneys' Generals, and the opt-out plaintiffs, plaintiffs have deposed
10 | approximately twenty-five corporate representatives.

11 |     On May 3, 2012, the Court preliminarily approved the first two settlements reached in this
12 | case with: (1) Chunghwa Picture Tubes, Ltd. and Chunghwa Picture Tubes (Malaysia) Sdn. Bhd.
13 | ("CPT"), and (2) Koninklijke Philips Electronics N.V., Philips Electronics North America
14 | Corporation, Philips Electronics Industries (Taiwan), Ltd., and Philips Da Amazonia Industria
15 | Electronica Ltda. (collectively, "Philips").  The Court certified a Settlement Class for the CPT and
16 | Philips settlements, appointed Plaintiffs' Interim Lead Counsel as Settlement Class Counsel,
17 | approved the manner and form of providing notice of the settlements to class members, established
18 | a timetable for publishing class notice and set a hearing for final approval.  (Docket No. 1179).

19 |     Plaintiffs have hired Gilardi & Co, LLC ("Gilardi") to serve as the Settlement
20 | Administrator for the direct purchaser class plaintiffs. On June 7, 2012, Gilardi mailed and e-
21 | mailed notice to each class member identified by the defendants. Sherwood Decl. ¶¶ 3–4.  On June
22 | 11, 2012, Summary Notice was published in The Wall Street Journal. *Id.* ¶ 8.  A website was also
23 | established at www.CRTDirectPurchaserAntitrustSettlement.com, which contains copies of the
24 | Settlement Agreements, Class Notice and Preliminary Approval Order. *Id.* ¶ 6. The deadline for
25 | objections to the settlements or requests for exclusion from the Settlement Class was July 23, 2012.
26 | Gilardi received twenty-three (23) requests for exclusion from the Settlement Class and no
27 | objections. *Id.* ¶¶ 9, 10.

28 |

III.     **THE TERMS OF THE SETTLEMENTS**

A.     **The CPT Settlement.**

In exchange for dismissal with prejudice and a release of all claims asserted in the Complaint, CPT has agreed to pay Ten Million Dollars ($10 million) in cash.  The settlement funds have been paid and deposited into a separate interest bearing escrow account for the Direct Purchaser Class. Saveri Decl. ¶ 17.

In addition to monetary value, the Settlement provides significant additional benefits to the Class.  First, CPT has agreed to provide (and has provided) Plaintiffs with significant and valuable cooperation in the prosecution of the case against the remaining defendants.  CPT's obligations include, among other things, producing in the United States relevant documents, making available appropriate witnesses as are reasonably required for discovery, and producing witnesses at trial. *Id.* ¶ 19.  Second, CPT's sales remain in the case for purposes of computing damages against the non-settling defendants.  *Id.* ¶ 18.

Upon the Settlement becoming final, Plaintiff and Class members will relinquish any claims they have against CPT based, in whole or in part, on matters alleged or that might have been alleged in this litigation. Saveri Decl. Ex. 1, CPT Settlement ¶ 13.  The release, however, excludes claims for product defects or personal injury.  *Id.*

The Settlement becomes final upon: (i) the Court's approval of the Settlement pursuant to Rule 23(e) and the entry of a final judgment of dismissal with prejudice as to CPT; and (ii) the expiration of the time for appeal or, if an appeal is taken, the affirmance of the judgment with no further possibility of appeal. Saveri Decl. Ex. 1, CPT Settlement ¶ 11.

Subject to the approval and direction of the Court, the Settlement payment, plus accrued interest thereon, will be used to: (i) make a distribution to Class members in accordance with a proposed plan of allocation to be approved by the Court (Saveri Decl. Ex. 1, CPT Settlement ¶ 20-21); (ii) pay Class Counsel's attorneys' fees, costs, and expenses as may be awarded by the Court (Saveri Decl. Ex. 1, CPT Settlement ¶ 22-23.); (iii) pay up to $400,000 for Notice costs and future costs incurred in the administration and distribution of the Settlement payments (Saveri Decl. Ex. 1, CPT Settlement ¶ 19(a)); and (iv) pay all taxes associated with any interest earned on the escrow

account.  (Saveri Decl. Ex. 1, CPT Settlement ¶ 17(f)).  Furthermore, CPT has agreed that, subject to Court approval, up to $500,000 of the Settlement Fund may be used for the prosecution of the case against the non-settling defendants. (Saveri Decl. Ex. 1, CPT Settlement ¶ 19(c))

### B.      The Philips Settlement.

In exchange for dismissal with prejudice and a release of all claims asserted in the Complaint, Philips has agreed to pay Twenty-Seven Million Dollars ($27 million) in cash, subject to reduction based on the number of exclusions from the class after notice.  Saveri Decl. Ex. 2, Philips Settlement ¶ 18.  The parties have determined that class members accounting for 62.7% of sales have chosen to opt-out, and therefore, the Direct Purchaser Settlement amount was reduced to Fifteen Million ($15,000,000). Saveri Decl. ¶ 22. The Philips settlement funds are to be deposited in installments, the first $12,000,000 of which was deposited within 60 days of execution of the settlement. Saveri Decl. Ex. 2, Philips Settlement ¶ 16.  The remaining $3,000,000 will be deposited thirty (30) days after the settlement becomes final.  *Id.*

In addition to its monetary value, the Settlement provides significant additional benefits to the Class.  First, Philips has agreed to provide Plaintiffs with significant and valuable cooperation in the prosecution of the case against the remaining non-settling defendants.  Philips is the first integrated defendant – tubes and finished products manufacturer/defendant – to have settled.  In addition, Philips, being a European manufacturer, has European centric information which is in addition to and complementary to CPT's Asian centric information.  Philip's obligations include, among other things, attorney proffers of Philips' knowledge relevant to the CRT conspiracy and a provision for producing relevant documents and witnesses for discovery and trial. Saveri Decl. Ex. 2, Philips Settlement ¶ 24.  Second, Philips' sales remain in the case for purposes of computing damages against the non-settling defendants.  Saveri Decl. ¶ 24.

Upon the Settlement becoming final, Plaintiffs and Class members will relinquish any claims they have against Philips based, in whole or in part, on matters alleged or that might have been alleged in this litigation. Saveri Decl. Ex. 2, Philips Settlement ¶ 13.  The release, however, excludes claims for product defects or personal injury.  *Id.*

The Settlement becomes final upon: (i) the Court's approval of the Settlement pursuant to

7

Rule 23(e) and the entry of a final judgment of dismissal with prejudice as to Philips and related companies; and (ii) the expiration of the time for appeal or, if an appeal is taken, the affirmance of the judgment with no further possibility of appeal. Saveri Decl. Ex. 2, Philips Settlement ¶ 11.

Subject to the approval and direction of the Court, the Settlement payment, plus accrued interest thereon, will be used to: (i) make a distribution to Class members in accordance with a proposed plan of allocation to be approved by the Court (Saveri Decl. Ex. 2, Philips Settlement ¶ 20-21); (ii) pay Class Counsel's attorneys' fees, costs, and expenses as may be awarded by the Court (Saveri Decl. Ex. 2, Philips Settlement ¶ 22-23.); (iii) pay up to $500,000 for Notice costs and future costs incurred in the administration and distribution of the Settlement payments (Saveri Decl. Ex. 2, Philips Settlement ¶ 19(a)); and (iv) pay all taxes associated with any interest earned on the escrow account.  Saveri Decl. Ex. 2, Philips Settlement ¶ 17(f).  Furthermore, Philips has agreed that, subject to Court approval, up to $500,000 of the Settlement Fund may be used for the prosecution of the case against the non-settling defendants. Saveri Decl. Ex. 2, Philips Settlement ¶ 19(c).

## IV.   ARGUMENT

A class action may not be dismissed, compromised, or settled without the approval of the Court.  Judicial proceedings under Federal Rule of Civil Procedure 23 have led to a defined procedure and specific criteria for class action settlement approval. The Rule 23(e) settlement approval procedure includes three distinct steps:

1. Certification of a settlement class and preliminary approval of the proposed settlements;

2. Dissemination of notice of the settlements to all affected class members; and

3. A formal fairness hearing, also called the final approval hearing, at which class members may be heard regarding the settlements, and at which counsel may introduce evidence and present argument concerning the fairness, adequacy, and reasonableness of the settlements.

This procedure safeguards class members' due process rights and enables the Court to fulfill its role as the guardian of class interests. *See* 4 Albert Conte & Herbert Newberg, *Newberg on Class*

8

1    *Actions* §§ 11.22, *et seq.* (4th ed. 2002) ("*Newberg*").

2    **A.     The Class Action Settlement Class.**

3        The Court here completed the first step in the settlement approval process when it granted

4    preliminary approval of the Settlements.

5        The Court certified a Settlement Class consisting of:

6        All persons and entities who, between March 1, 1995 and November 25, 2007,
         directly purchased a CRT Product in the United States from any defendant or
7        subsidiary or affiliate thereof, or any co-conspirator. Excluded from the Class are
         defendants, their parent companies, subsidiaries and affiliates, any co-conspirator,
8        all governmental entities, and any judges or justices assigned to hear any aspect of
         this action.
9

10   CRT Products refers to all forms of Cathode Ray Tubes.  It includes CPTs, CDTs and the

11   finished products that contain them – televisions and monitors. (Docket No. 1179).

12   **B.     The Court-Approved Notice Program Satisfies Due Process and Has Been
              Fully Implemented.**
13

14       The second step in the settlement process has also been completed.  The Court-approved

15   notice plan has been successfully implemented and class members have been notified of the

16   settlements.

17       When a proposed class action settlement is presented for court approval, the Federal Rules

18   require:

19       the best notice that is practicable under the circumstances, including
         individual notice to all members who can be identified through reasonable
20       effort. The notice must clearly and concisely state in plain, easily
         understood language: (i) the nature of the action; (ii) the definition of the
21       class certified; (iii) the class claims, issues, or defenses; (iv) that a class
         member may enter an appearance through counsel if the member so
22       desires; (v) that the court will exclude from the class any member who
         requests exclusion; (vi) the time and manner for requesting exclusion; and
23       (vii) the binding effect of a class judgment on members under Rule
         23(c)(3).

24   Fed. R. Civ. P. 23(c)(2)(B)

25       A settlement notice is a summary, not a complete source, of information.  *See, e.g.*, *Petrovic*

26   *v. Amoco Oil Co.*, 200 F.3d 1140, 1153 (8th Cir. 1999); *In re "Agent Orange" Prod. Liability*

27   *Litig.*, 818 F.2d 145, 170 (2d Cir. 1987), *cert. denied*, 484 U.S. 1004 (1988); *Mangone v. First USA*

28   *Bank*, 206 F.R.D. 222, 233 (S.D. Ill. 2001).  This circuit requires a very general description of the

1   proposed settlement in such a notice.  *Churchill Vill. L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th

2   Cir. 2004); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993); *Mendoza v.*

3   *Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1351 (9th Cir. 1980), *cert. denied*, 450 U.S. 912 (1981).

4        The notice plan approved by this Court is commonly used in class actions like this one and

5   constitutes valid, due and sufficient notice to class members, and constitutes the best notice

6   practicable under the circumstances.  The content of the court-approved notices complies with the

7   requirements of Rule 23(c)(2)(b).  Both the summary and long-form notices clearly and concisely

8   explained in plain English the nature of the action and the terms of the Settlements.  They provided

9   a clear description of who is a member of the class and the binding effects of class membership.

10   They explained how to exclude oneself from the class, how to object to the Settlements, how to

11   obtain copies of papers filed in the case and how to contact Class counsel. *See* Sherwood Decl.,

12   Exhs. A, B.  The notices also explained that they provided only a summary of the settlements, that

13   the settlement agreements were on file with the District Court, and that the settlement agreements

14   were available online at: www.CRTDirectPurchaserAntitrustSettlement.com.  *See* Sherwood Decl.,

15   Exh. B.  Consequently every provision of each settlement was available to each class member.

16        The notice plan was implemented by the settlement administrator Gilardi & Co. LLC.

17   Sherwood Decl. ¶ 1.  Specifically, Gilardi printed and mailed 16,307 notices to class members

18   through U.S. Mail and electronically mailed notices to 791 unique electronic mail addresses of

19   class members. Sherwood Decl. ¶¶ 4, 10.  Gilardi also published notice in the Monday, June 11,

20   2012 Wall Street Journal. Sherwood Decl. ¶ 8, Ex. B. Gilardi also maintains the case website, at

21   which class members can view and print the Class Notice, the Settlement Agreements, and the

22   Preliminary Approval Order. Sherwood Decl. ¶ 6.  Gilardi also established a toll-free telephone

23   number to answer Class members' questions in both English and Spanish. Sherwood Decl. ¶7.

24       **C.**     **The Settlements Are "Fair, Adequate And Reasonable" and Should Be
Granted Final Approval.**

25

26        The law favors the compromise and settlement of class action suits. *See, e.g.*, *Byrd v. Civil*

27   *Serv. Comm'n*, 459 U.S. 1217 (1983); *Churchill Village*, 361 F.3d at 576 (9th Cir. 2004); *Class*

28   *Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  "The decision to approve or

DIRECT PURCHASER PLAINTIFFS' MEMO FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENTS
WITH CHUNGHWA PICTURE TUBES, LTD. AND PHILIPS; Master File No. CV-07-5944-SC

reject a settlement is committed to the sound discretion of the trial judge because he is 'exposed to the litigation and their strategies, positions and proof.'" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1988) (quoting *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 626 (9th Cir. 1982)).  In exercising such discretion, courts should give "proper deference to the private consensual decision of the parties . . . . [T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Id.* at 1027 (citation omitted).

It is well established in the Ninth Circuit that "voluntary conciliation and settlement are the preferred means of dispute resolution." *Officers for Justice*, 688 F.2d at 625.  "[T]here is an overriding public interest in settling and quieting litigation" and this is "particularly true in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *see also Utility Reform Project v. Bonneville Power Admin.*, 869 F.2d 437, 443 (9th Cir. 1989).  In evaluating a proposed class action settlement, the Ninth Circuit has recognized that:

> [T]he universally applied standard is whether the settlement is fundamentally fair, adequate and reasonable. The district court's ultimate determination will necessarily involve a balancing of several factors which may include, among others, some or all of the following: the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Officers for Justice*, 688 F.2d at 625 (citations omitted); *accord Torrisi*, 8 F.3d at 1375.

The court is entitled to exercise its "sound discretion" when deciding whether to grant final approval.  *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981); *Torrisi*, 8 F.3d at 1375.  "Where, as here, a proposed class settlement has been reached after meaningful discovery, after arm's length negotiation, conducted by capable counsel, it is presumptively fair." *M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819, 822 (D. Mass. 1987).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### 1.     The Settlements Provide Considerable Relief For The Class.

The consideration for each Settlement is substantial and provides considerable relief for the class. The CPT Settlement provides for a payment of Ten Million Dollars ($10,000,000). Saveri Decl. ¶ 17.  The Philips Settlement provides for a payment of Fifteen Million Dollars ($15,000,000). Saveri Decl. ¶ 22. The Settlements compare favorably to settlements finally approved in other price-fixing cases.  *See, e.g.*, *Fisher Bros. v. Mueller Brass Co.*, 630 F. Supp. 493, 499 (E.D. Pa. 1985) (recoveries equal to .1%, .2%, 2%, .3%, .65%, .88%, and 2.4% of defendants' total sales).

Further, the settlements call for CPT and Philips to cooperate with Plaintiffs. Saveri Decl. ¶¶ 19, 23.  This is a valuable benefit because it will save time, reduce costs, and provide access to information, witnesses, and documents regarding the CRT conspiracy that might otherwise not be available to Plaintiffs. *See In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1386 (D. Md. 1983) (a defendant's agreement to cooperate with plaintiffs "is an appropriate factor for a court to consider in approving a settlement").

CPT has already provided significant cooperation to Plaintiffs.  In February of 2009, CPT's counsel described the Defendants' price-fixing conspiracy in detail during a series of discussions with plaintiffs' Interim Lead Counsel pursuant to the Settlement.  This information was invaluable to Plaintiffs in drafting their CAC and overcoming defendants' motions to dismiss. Thereafter, once the DOJ's stay of merit's discovery was lifted in March of 2010, CPT produced approximately 500 translated meeting reports evidencing anti-competitive agreements between the Defendants.  In addition, CPT and Philips have provided proffers of witnesses setting forth the witnesses' first-hand knowledge relating to the conspiracy, agreements reached, and the defendant participants at these meetings.

CPT and Philips are the first defendants to settle with Plaintiffs. The significant value of such "ice breaker" settlements greatly increases the likelihood to the class for future settlements:

> The Court also notes that this settlement has significant value as an 'icebreaker' settlement—it is the first settlement in the litigation—and should increase the likelihood of future settlements. An early settlement with one of many defendants can 'break the ice' and bring other defendants to the point of serious negotiations.

DIRECT PURCHASER PLAINTIFFS' MEMO FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENTS WITH CHUNGHWA PICTURE TUBES, LTD. AND PHILIPS; Master File No. CV-07-5944-SC

1    *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 643 (9th Cir. 2003) ("*Linerboard*") (citing

2    *In re Corrugated Container Antitrust Litig.*, MDL No. 310, 1981 U.S. Dist. LEXIS 11004, at *19

3    (S.D. Tex. Jan. 27, 1981)).

4          Philips is the first integrated company to settle with Plaintiffs – CRT tubes as well as TVs

5    and monitors containing CRTs (finished products).  In addition, Philips, being a European

6    manufacturer, has European centered information which is in addition to and complimentary to,

7    CPT's Asian centered information.  Philip's obligations include, among other things, attorney

8    proffers of Philips' knowledge of the CRT conspiracy, producing relevant documents and

9    witnesses for discovery and trial. Saveri Decl. ¶ 23.

10         "The provision of such assistance is a substantial benefit to the classes and strongly

11   militates toward Final Approval of the Settlement Agreements." *Linerboard*, 292 F. Supp. 2d at

12   643. *See also Mid-Atl. Toyota*, 564 F. Supp. at 1386 (concluding that commitment to cooperate is

13   appropriate factor to consider in approving partial settlement); *Corrugated Container*, 1981 U.S.

14   Dist. LEXIS 11004, at *16 ("The cooperation clauses constituted a substantial benefit to the

15   class.").  In addition, "[i]n complex litigation with a plaintiff class, 'partial settlements often play a

16   vital role in resolving class actions.'" *Agretti v. ANR Freight Sys., Inc.*, 982 F.2d 242, 247 (7th Cir.

17   1992) (quoting Manual for Complex Litigation Second § 30.46 (1986)).

18         Lastly, these settlements preserve Plaintiffs' right to litigate against the non-settling

19   defendants for the entire amount of Plaintiffs' damages based on joint and several liability. *See In*

20   *re Corrugated Container Antitrust Litig.*, Case No. M.D.L. 310, 1981 WL 2093, at *17 (S.D. Tex.

21   June 4, 1981); Saveri Decl. ¶¶ 18, 24 (Released claims do not preclude Plaintiffs from pursuing any

22   and all claims against other non-settling defendants for the sales attributable to CPT and Philips).

23              **2.      The Class Members' Positive Reaction Favors Final Approval.**

24         There are no objectors to the CPT and Philips Settlements and the class's reaction to the

25   proposed settlement supports this Court granting final approval.  In determining the fairness and

26   adequacy of a proposed settlement, the Court also should consider "the reaction of the class

27   members to the proposed settlement."  *Churchill Village*, 361 F.3d at 575; *Hanlon*, 150 F.3d at

28   1026.  "It is established that the absence of a large number of objections to a proposed class action

13

settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc*., 221 F.R.D. 523, 529 (C.D. Cal. 2004); *see also*, *In re Fleet/Norstar Sec. Litig.*, 935 F. Supp. 99, 107 (D.R.I. 1996).

Pursuant to the Court's order, approximately 17,098 Class Notices were mailed or electronically mailed to class members throughout the United States.  Sherwood Decl. ¶¶ 4, 5. When presented with the material financial terms of the proposed settlement, no members of the class objected to the settlements. Sherwood Decl. ¶10. The reaction of the class to the proposed settlement therefore supports the conclusion that the proposed settlements are fair, adequate and reasonable.  *Pallas v. Pac. Bell*, No. C-89-2373 DLJ, 1999 WL 1209495 at *8 (N.D. Cal. 1999) ("The small percentage – less than one percent – of persons raising objections is a factor weighing in favor of approval of the settlement."); *Bynum v. Dist. of Columbia*, 412 F. Supp. 2d 73, 77 (D.D.C. 2006) ("The low number of opt outs and objectors (or purported objectors) supports the conclusion that the terms of the settlement were viewed favorably by the overwhelming majority of class members."); *see also*, *Arnold v. Arizona Dept. of Pub. Safety*, No. CV-01-1463-PHX-LOA, 2006 WL 2168637 at *10 (D. Ariz. July 31, 2006); *In re Patriot Am. Hospitality Inc. Sec. Litig.*, No. MDL C-00-1300 VRW, 2005 WL 3801594 at *2 (N.D. Cal. Nov. 30, 2005).  The inference of class's approval of the settlements is even stronger where, as here, much of the class consists of sophisticated business entities.  *See Linerboard*, 321 F. Supp. 2d at 629.

### 3. The Settlement Eliminates Significant Risk To The Class.

While Plaintiffs believe their case against defendants is strong, these settlements eliminate significant risks they would face if the action were to proceed against defendants. Plaintiffs would bear the burden of establishing liability, impact and damages. *See, e.g.*, *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 118 (2d Cir. 2005) ("Indeed, the history of antitrust litigation is replete with cases in which antitrust plaintiffs succeeded at trial on liability, but recovered no damages, or only negligible damages, at trial, or on appeal."); *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 475 (S.D.N.Y. 1998); *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 283 (S.D.N.Y. 1999).  This is an important consideration because defendants have vowed to

14

1   aggressively defend this action.  Thus, the settlements are in the best interest of the Class because

2   they eliminate the risks of continued litigation, while at the same time creating a substantial cash

3   recovery and obtaining certain defendants' cooperation.

4        Continued litigation against defendants also would involve significant additional expenses

5   and protracted legal battles, which are avoided through the settlements.  *In re Visa*

6   *Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 510 (E.D.N.Y. 2003), *aff'd* 396 F.3d 96

7   (2d Cir. 2005) ("The potential for this complex litigation to result in enormous expense, and to

8   continue for a long time, was great."); *Marisol A. ex rel. Forbes v. Giuliani*, 185 F.R.D. 152, 163

9   (S.D.N.Y. 1999) (noting that trial would last at least five months and require testimony from

10  numerous witnesses and experts); *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp.

11  2d 164, 174 (S.D.N.Y. 2000) ("Most class actions are inherently complex and settlement avoids the

12  costs, delays and multitude of other problems associated with them.").

13            **4.    The Settlements Are the Products of Arm-Length Negotiations Between the Parties and The Recommendation of Experienced Counsel Favors Approval.**

14

15       This class action has been vigorously litigated.  Class Counsel has analyzed millions of

16  documents produced by defendants and others.  They have also conducted an independent

17  investigation of the facts and analyzed Defendants' sales and pricing data.

18       Each of the negotiations occurred over a span of many months and involved telephonic and

19  face to face meetings and the review of industry materials and documents.  They were contested

20  and conducted in the utmost good faith. Saveri Decl. ¶¶ 16, 21.  Counsel's judgment that the

21  Settlements are fair and reasonable is entitled to great weight. *See Nat'l Rural Telcomms. Coop.*,

22  221 F.R.D. at 528 ("'Great weight' is accorded to the recommendation of counsel, who are most

23  closely acquainted with the facts of the underlying litigation."); *accord Bellows v. NCO Fin. Sys.*,

24  2008 U.S. Dist. LEXIS 103525, at *22 (S.D. Cal. Dec. 2, 2008); *Rutter & Wilbanks Corp. v. Shell*

25  *Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002); *Wilkerson v. Martin Marietta Corp.*, 171 F.R.D.

26  273, 288–89 (D. Colo. 1997); *Officers for Justice*, 688 F.2d at 625.

27       While the Plaintiffs believe they have meritorious claims against defendants, defendants

28  have asserted that they have strong and valid defenses which would serve to eliminate their liability

1    and/or damage exposure to the Class.  The parties entered into the settlements to eliminate the

2    burden, and expense and risks of further litigation.

3           For all of these reasons, the cash settlements obtained represent an excellent recovery and

4    are certainly "fair, adequate and reasonable" to the Class.  Accordingly, final approval of each

5    settlement should be granted.

6           **D.     The Plan of Allocation Is "Fair, Adequate and Reasonable" and Therefore
                      Should Be Approved**

7

8           The Class Notice, which was disseminated in accordance with the Preliminary Approval

9    Order, outlined the following proposed plan for allocating the settlement proceeds:

10                  In the future, each Settlement Class member's *pro rata* share of the
                    Settlement Fund will be determined by computing each valid claimant's
11                  total CRT Product purchases divided by the total valid CRT Product
                    purchases claimed. This percentage is multiplied to the Net Settlement
12                  Fund (total settlements minus all costs, attorneys' fees, and expenses) to
                    determine each claimant's *pro rata* share of the Settlement Fund. To
13                  determine your CRT Product purchases, CRT tubes (color display and
                    color picture) are calculated at full value (100%) while CRT televisions
14                  are valued at 50% and CRT computer monitors are valued at 75%.
                    In summary, all valid claimants will share in the settlement funds on a *pro*
15                  *rata* basis determined by the CRT value of the product you purchased -
                    tubes 100%, monitors 75% and televisions 50%.
16

17   *See* Sherwood Decl., Exh. B, at 9.

18          Although Plaintiffs have proposed deferring the distribution of funds until a later date,

19   plaintiffs have informed the class that any distribution will be made on a *pro rata* basis.  A plan of

20   allocation of class settlement funds is subject to the "fair, reasonable and adequate" standard that

21   applies to approval of class settlements.  *In re Citric Acid Antitrust Litig.*, 145 F. Supp. 2d 1152,

22   1154 (N.D. Cal. 2001).  A plan of allocation that compensates class members based on the type and

23   extent of their injuries is generally considered reasonable. *In re Computron Software, Inc.*, 6 F.

24   Supp.2d 313, 321 (D.N.J. 1998). Here the proposed distribution will be on a *pro rata* basis, with no

25   class member being favored over others.  This type of distribution has frequently been determined

26   to be fair, adequate, and reasonable.  *See DRAM*, No. M-02-1486 PJH, Doc No. 2093, p.2 (Oct. 27,

27   2010) (Order Approving Pro Rata Distribution);  *In re Vitamins Antitrust Litig.*, No. 99-197 TFH,

28   2000 WL 1737867, at *6 (D.D.C. Mar. 31, 2000) ("Settlement distributions, such as this one, that

16

DIRECT PURCHASER PLAINTIFFS' MEMO FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENTS
WITH CHUNGHWA PICTURE TUBES, LTD. AND PHILIPS; Master File No. CV-07-5944-SC

apportions funds according to the relative amount of damages suffered by class members, have repeatedly been deemed fair and reasonable."); *In re Lloyds' Am. Trust Fund Litig.*, No. 96 Civ.1262 RWS, 2002 WL 31663577, at *19 (S.D.N.Y. Nov. 26, 2002) ("*pro rata* allocations provided in the Stipulation are not only reasonable and rational, but appear to be the fairest method of allocating the settlement benefits."); *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 135 (S.D.N.Y. 1997) ("*pro rata* distribution of the Settlement on the basis of Recognized Loss will provide a straightforward and equitable nexus for allocation and will avoid a costly, speculative and bootless comparison of the merits of the Class Members' claims").

In summary, class members will submit their purchase information for both CRT tubes and finished products — televisions and monitors containing CRTs.  All class members will share in the settlement funds on a *pro rata* basis determined by the CRT value of the product they purchased — tubes 100%, monitors 75% and televisions 50%.

Accordingly, the plan of allocation done on a *pro rata* basis in the instant case is "fair, adequate and reasonable" to the Class and final approval of the plan of allocation should be granted.

## V.    OBJECTIONS BY CLASS MEMBERS

As indicated above, there were no objections to the Settlements.

## VI.    EXCLUSIONS

Class members were advised of the right to be excluded from the Settlement Class, which could be accomplished through mailing a request for exclusion to the Settlement Administrator not later than July 23, 2012.  Twenty-three requests for exclusion were received from Class members. Sherwood Decl. ¶ 9, Exh. C.  CPT and Philips have been provided copies of these requests for exclusion.

## VII.    CONCLUSION

For the foregoing reasons set forth herein, Plaintiffs respectfully submit that the Court should enter an order granting the relief requested by this motion: (i) granting final approval of the CPT Settlement and the Philips Settlement; and (ii) granting final judgment and dismissal with prejudice as to CPT and Philips.

DIRECT PURCHASER PLAINTIFFS' MEMO FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENTS WITH CHUNGHWA PICTURE TUBES, LTD. AND PHILIPS; Master File No. CV-07-5944-SC

1

2    Dated: August 21, 2012.                          Respectfully submitted,

3                                          */s/ Guido Saveri*

4                                          Guido Saveri (22349)
R. Alexander Saveri (173102)

5                                          Geoffrey C. Rushing (126910)
Cadio Zirpoli (179108)

6                                          SAVERI & SAVERI, INC.
706 Sansome Street

7                                          San Francisco, CA  94111
Telephone:  (415) 217-6810

8                                          Facsimile:  (415) 217-6813

9                                          *Interim Lead Counsel For Plaintiffs*

10                                        Joseph W. Cotchett
Steven N. Williams

11                                        Adam J. Zapala
COTCHETT, PITRE & McCARTHY, LLP

12                                        840 Malcolm Road
Burlingame, CA 94010

13                                        Telephone: (650) 697-6000
Facsimile: (650) 697-0577

14                                        Bruce L. Simon

15                                        Aaron M. Sheanin
PEARSON, SIMON, WARSHAW & PENNY

16                                        LLP
44 Montgomery Street, Suite 2450

17                                        San Francisco, CA 94104
Telephone:  (415) 433-9000

18                                          Facsimile:  (415) 433-9008

19                                        H. Laddie Montague, Jr.
Ruthanne Gordon

20                                        Charles P. Goodwin
Candice Enders

21                                        BERGER & MONTAGUE, P.C.
1622 Locust Street

22                                        Philadelphia, PA 19103
Telephone: (800) 424-6690

23                                        Facsimile: (215) 875-4604

24                                        Michael P. Lehmann
HAUSFELD LLP

25                                        44 Montgomery Street, Suite 3400
San Francisco, CA 94104

26                                        Telephone:  (415) 633-1908
Facsimile:  (415) 358-4980

27                                        Gary Specks

28                                        KAPLAN FOX

DIRECT PURCHASER PLAINTIFFS' MEMO FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENTS
WITH CHUNGHWA PICTURE TUBES, LTD. AND PHILIPS; Master File No. CV-07-5944-SC

423 Sumac Road
Highland Park, IL 60035
Telephone: (847) 831-1585
Facsimile: (847) 831-1580

Douglas A. Millen
William H. London
Freed Kanner London & Millen
2201 Waukegan Road
Suite 130
Bannockburn, IL 60015
Telephone: (224) 632-4500
Facsimile: (224) 632-4519

Eric B. Fastiff
Lieff Cabraser Heimann & Bernstein, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

W. Joseph Bruckner
Elizabeth R. Odette
Lockridge Grindal Nauen P.L.L.P
100 Washington Avenue S
Suite 2200
Minneapolis, MN 55401
Telephone:  (612) 339-6900
Facsimile: (612) 339-0981

*Attorneys for Plaintiffs*

DIRECT PURCHASER PLAINTIFFS' MEMO FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENTS
WITH CHUNGHWA PICTURE TUBES, LTD. AND PHILIPS; Master File No. CV-07-5944-SC