MARIO N. ALIOTO, ESQ. (56433)
LAUREN C. RUSSELL, ESQ. (241151)
TRUMP, ALIOTO, TRUMP & PRESCOTT, LLP
2280 Union Street
San Francisco, CA  94123
Telephone:  (415) 563-7200
Facsimile: (415) 346-0679
E-mail: malioto@tatp.com
laurenrussell@tatp.com

*Interim Lead Counsel for the*
*Indirect Purchaser Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

This Document Relates to:

All Indirect-Purchaser Actions

**Master File No. 3:07-cv-5944 SC**

**MDL No. 1917**

**INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR LEAVE TO AMEND COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Date: September 27, 2012
Time: 1:00 p.m.
JAMS: Two Embarcadero Center, Suite 1500
Judge:  Honorable Samuel Conti
Special Master: Hon. Charles A. Legge (Ret.)

# NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

**PLEASE TAKE NOTICE** that on September 27, 2012 at 1:00 p.m., or as soon thereafter as the matter can be heard, before the Honorable Charles A. Legge (Ret.) at the office of JAMS, Two Embarcadero Center, Suite 1500, San Francisco, California, the Indirect Purchaser Plaintiffs ("Plaintiffs") will move the Court pursuant to Federal Rules of Civil Procedure 15(a)(2) and 20(a)(2) for an Order granting Plaintiffs leave to amend their Third Consolidated Amended Complaint ("Complaint") to add new defendants Thomson SA (n/k/a Technicolor SA) and Thomson Consumer Electronics, Inc. (n/k/a Technicolor USA, Inc.) (together "Thomson"); Mitsubishi Electric Corp., Mitsubishi Digital Electronics America, Inc., and Mitsubishi Electric & Electronics, USA, Inc. (together "Mitsubishi"); and Videocon Industries, Ltd. ("Videocon"), on the grounds that no undue prejudice will result from the proposed amendments and IP Plaintiffs have exercised reasonable diligence in seeking the amendments.[1]

The motion is based on this Notice, the accompanying Memorandum of Points and Authorities in Support of Indirect Purchaser Plaintiffs' Motion for Leave to Amend Complaint, the Declaration of Mario N. Alioto in Support of Indirect Purchaser Plaintiffs' Motion for Leave to Amend the Complaint ("Alioto Decl."), any papers filed in reply, the argument of counsel, and all papers and records on file in this matter.

//

//

//

---

[1] Pursuant to Local Rule 10-1, the proposed Indirect Purchaser Plaintiffs' Fourth Consolidated Amended Complaint, with all of the changes IP Plaintiffs propose to make by way of this motion in redline, is attached as Exhibit A to the Declaration of Mario N. Alioto in Support of Indirect Purchaser Plaintiffs' Motion for Leave to Amend their Complaint.

INDIRECT-PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR LEAVE TO AMEND COMPLAINT; MPA ISO — CASE NO.: 3:07-cv-5944 SC

1

Dated: August 22, 2012
By: */s/ Mario N. Alioto*
Mario N. Alioto (56433)
Lauren C. Russell (241151)
TRUMP, ALIOTO, TRUMP &
PRESCOTT, LLP
2280 Union Street
San Francisco, CA 94123
Telephone:   (415) 563-7200
Facsimile:    (415) 346-0679
malioto@tatp.com
laurenrussell@tatp.com

*Interim Lead Counsel for the
Indirect Purchaser Plaintiffs*

2

1

**MEMORANDUM OF POINTS & AUTHORITIES**

2       Pursuant to Federal Rules of Civil Procedure 15(a)(2) and 20(a), the Indirect

3  Purchaser Plaintiffs ("IP Plaintiffs") hereby respectfully submit this Memorandum in

4  support of their Motion for Leave to File the proposed Fourth Amended Complaint

5  ("Motion").  The purpose of the amended pleading is to add new defendants Thomson,

6  Mitsubishi and Videocon.  A copy of the proposed Fourth Amended Complaint ("Fourth

7  Amended Complaint") is attached to the Proposed Order that accompanies this Motion.

8  As set forth below, this Motion should be granted because it is being made in a timely

9  manner, is supported by good cause, and will not prejudice any party.

10  **I.      BACKGROUND OF THE LITIGATION**

11       This is a horizontal price-fixing action in which IP Plaintiffs allege that Defendants

12  conspired to fix the prices of Cathode Ray Tubes ("CRTs") that are used in products such

13  as televisions and computer monitors.  IP Plaintiffs are individuals and entities that

14  indirectly purchased CRTs for their own use and not for resale during the period January 1,

15  1995 through November 25, 2007 (the "Class Period").

16       IP Plaintiffs' operative Third Consolidated Amended Complaint alleges that

17  Defendants, manufacturers of CRTs, engaged in an international price-fixing cartel to drive

18  up the price of CRTs to supracompetitive levels.  Specifically, IP Plaintiffs allege that,

19  throughout the Class Period, Defendants participated in regular group and bilateral

20  meetings during which they exchanged pricing, production and other confidential business

21  information, and entered into anticompetitive agreements.  IP Plaintiffs' claims include: (1)

22  violation of Section 1 of the Sherman Act, 15 U.S.C. § 1; (2) violation of the California

23  Cartwright Act; (3) violation of California Unfair Competition Law; (4) violation of other

24  state antitrust and unfair competition laws; (5) violation of other state consumer protection

25  and unfair competition laws; and (6) common law unjust enrichment claims.

26       Full discovery commenced on March 8, 2010, when the stay of discovery obtained

27  by the Department of Justice expired.  The Defendants produced the majority of their

28

1   documents in November and December of 2011. The Court has tentatively set August 30,

2   2013 as the fact discovery cutoff date. *See* Scheduling Order (April 3, 2012) (Dkt. No.

3   1127).

4       On August 2, 2012, Special Master Legge issued a Report and Recommendation

5   granting IP Plaintiffs' motion to amend the Complaint to withdraw the named plaintiffs for

6   certain states and add new named plaintiffs. *See* Docket No. 1286. IP Plaintiffs request

7   that the Special Master ask Judge Conti to delay the adoption of this Report and

8   Recommendation pending the Special Master's consideration of this motion, so that there

9   will be only one new complaint incorporating all of IP Plaintiffs' amendments. The

10  proposed Fourth Amended Complaint will therefore include the new named plaintiffs and,

11  if this motion is granted, the new Defendants, as further described below.

12  **II.     PROPOSED FOURTH AMENDED COMPLAINT**

13      The proposed Fourth Amended Complaint names the following entities that are not

14  currently in this litigation:

15          ▪   Thomson SA (n/k/a Technicolor SA) and Thomson Consumer Electronics,

16              Inc. (n/k/a Technicolor USA, Inc.) (together "Thomson"). *See* Fourth

17              Amended Complaint, ¶¶ 102, 103.

18          ▪   Mitsubishi Electric Corp., Mitsubishi Digital Electronics America, Inc., and

19              Mitsubishi Electric & Electronics, USA, Inc. (together "Mitsubishi"). *See*

20              Fourth Amended Complaint, ¶¶ 106-108.

21          ▪   Videocon Industries, Ltd. ("Videocon"). *See* Fourth Amended Complaint, ¶

22              105.

23      The proposed amendments are supported by conspiratorial evidence against these

24  entities which has been revealed by recent discovery. Specifically, IP Plaintiffs discovered

25  information during the recent Rule 30(b)(6) depositions that convinced IP Plaintiffs that

26  Thomson, Mitsubishi and Videocon should be added as Defendants. Alioto Decl. ¶ 2.

27

28

INDIRECT-PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR LEAVE TO
AMEND COMPLAINT; MPA ISO — CASE NO.: 3:07-cv-5944 SC

### A.       Thomson's Involvement In The CRT Conspiracy

During the Class Period, Thomson manufactured, marketed, sold and distributed CRTs in the United States and elsewhere.  Thomson manufactured CRTs for sale in the United States in factories located in Scranton, PA, Marion, IN, and Mexicali, Mexico. Thomson also had CRT manufacturing plants in Europe and China. Thomson sold its CRTs internally to its television-manufacturing division (which manufactured and sold CRT televisions to consumers under the RCA brand), and to other television manufacturers in the United States and elsewhere. Thomson's television division also purchased CRTs from other CRT manufacturers.  *See* Fourth Amended Complaint, ¶¶ 102, 103.

In November 2003, Thomson sold its television division to a joint venture it formed with Chinese company, TCL Corporation.  The joint venture was called TCL-Thomson Electronics Corporation.  TCL took a 67 percent stake in the joint venture, with Thomson SA holding the rest of the shares. As part of the joint venture agreement, the parties agreed that the televisions made by TCL-Thomson would be marketed under the TCL brand in Asia and the Thomson and RCA brands in Europe and North America, respectively.  In July 2005, Thomson sold its CRT business to Videocon.  *Id.*

During IP Plaintiffs' preparation for the Rule 30(b)(6) depositions, we discovered certain CRT "[production] line status reports."  These reports detail CRT production, capacity, and output information for various Defendants, and Thomson.  IP Plaintiffs confirmed through deposition testimony that the Defendants met to exchange this highly sensitive information in furtherance of their conspiracy.  *See* Fourth Amended Complaint, ¶ 186; Alioto Decl., ¶ 3.  But more specifically for purposes of this Motion, these reports demonstrate Thomson's participation in an exchange of production information with other Defendants, and show that it accounted for a significant share of the U.S. market for CRTs during the class period.  Alioto Decl., ¶ 4.  Thus, IP Plaintiffs seek to add Thomson to this litigation.

### B.     Mitsubishi's Involvement In The CRT Conspiracy

Mitsubishi manufactured, marketed, sold, and distributed CRTs and CRT televisions in the United States during the Class Period.  Mitsubishi manufactured CRTs in factories located in Japan, Taiwan, Mexico and Canada for sale in the United States.  These CRTs were sold internally to Mitsubishi's television and monitor manufacturing division and to other television and monitor manufacturers in the U.S. and elsewhere. Mitsubishi's television and monitor division also purchased CRTs from other CRT manufacturers.  *See* Fourth Amended Complaint, ¶¶ 106-108.

Like Thomson, Mitsubishi appears in the CRT production line status reports that IP Plaintiffs discovered during their preparation for the Rule 30(b)(6) depositions described above.  Alioto Decl., ¶ 3.   IP Plaintiffs confirmed through deposition testimony that the Defendants met to exchange this highly sensitive information in furtherance of their conspiracy.  *See* Fourth Amended Complaint, ¶ 188; Alioto Decl., ¶ 3.  These reports demonstrate Mitsubishi's participation in an exchange of production information with other Defendants, and show that Mitsubishi accounted for a significant share of the U.S. market for CRTs during the class period. Alioto Decl., ¶ 4.   Thus, IP Plaintiffs seek to add Mitsubishi to this litigation.

### C.     Videocon's Involvement In The CRT Conspiracy

Videocon is an Indian corporation that purchased Thomson's CRT business in July of 2005, including Thomson's CRT manufacturing plants in Mexicali, Mexico and China. From July 2005, Videocon manufactured, marketed, sold and distributed CRTs in the United States.  Videocon's Mexican and Chinese plants manufactured CRTs for sale in the United States.  For example, Videocon's Mexicali CRT plant sold CRTs to TCL-Thomson's television plant in Juarez for sales into the United States under the RCA brand. *See* Fourth Amended Complaint, ¶ 105.

Like Thomson and Mitsubishi, Videocon also appears in the CRT production line status reports that IP Plaintiffs discovered during their preparation for the Rule 30(b)(6) depositions described above.  Alioto Decl., ¶ 3.   IP Plaintiffs confirmed through

1   deposition testimony that the Defendants met to exchange this highly sensitive information

2   in furtherance of their conspiracy.  *See* Fourth Amended Complaint, ¶ 187; Alioto Decl., ¶

3   3.   These reports demonstrate Videocon's participation in an exchange of production

4   information with other Defendants, and show that Videocon accounted for a significant

5   share of the U.S. market for CRTs during the class period.  Alioto Decl., ¶ 4.  Thus, IP

6   Plaintiffs seek to add Videocon to this litigation.

7          The proposed Fourth Amended Complaint does not change the nature of the claims

8   asserted and does not alter the factual or legal theories as alleged in the operative

9   complaint.  Alioto Decl., ¶ 5. Accordingly, as further described herein, joining the new

10   Defendants meets the requirements of Rules 15 and 20.

11   **III.    LEGAL ARGUMENT**

12          **A.    Rule 15(a)'s Liberal Standard Governing Leave To File An Amended
                   Complaint**

13          Federal Rule of Civil Procedure 15(a)(2) provides that after the time for amending

14   "as a matter of course" has passed and absent the consent of the opposing party, a party

15   must seek the court's leave in order to amend a pleading.  The decision to grant or deny

16   leave to amend rests in the court's discretion.  *In re Daisy Systems Corp.,* 97 F.3d 1171,

17   1175 (9th Cir. 1996).  However, in such instances, "[t]he court should freely give leave

18   when justice so requires."  Fed. R. Civ. P. 15(a)(2).  In this Circuit, the policy favoring

19   leave to amend "is 'to be applied with extreme liberality.'"  *Eminence Capital, LLC v.*

20   *Aspeon, Inc.,* 316 F.3d 1048, 1051 (9th Cir. 2003) (citations omitted).  "This liberality in

21   granting leave to amend is not dependent on whether the amendment will add causes of

22   action or parties."  *DCD Programs, Ltd. v. Leighton,* 833 F.2d 183, 186 (9th Cir. 1987).

23          Indeed, reflecting the permissive nature of this Rule, the Supreme Court has only

24   identified those factors that may militate against permitting an amendment, rather than

25   attempt to list all instances in which amendment should be allowed.  *See Foman v. Davis,*

26   371 U.S. 178, 182 (1962) ("In the absence of any apparent or declared reason—such as

27   undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure

28

5

deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rule requires, be 'freely given.'")  Of these justifications for not allowing an amendment, prejudice to the opposing party "carries the greatest weight."  *Eminence Capital,* 316 F.3d at 1052.[2]  Without prejudice, or at least "a strong showing of any of the remaining . . . factors, there exists a *presumption* under Rule 15(a) in favor of granting leave to amend."  *Id.* (emphasis in original).

IP Plaintiffs have proceeded diligently and there will be no prejudice to Thomson, Mitsubishi, Videocon or the existing Defendants if the amendment is allowed.

**B.     Joining New Defendants Meets The Requirements Of Rules 15 And 20 As Well As the *Foman* Factors**

On a motion to amend to join additional parties, a court "must consider both the general principles of amendment provided by Rule 15(a) and also the more specific joinder provisions of Rule 20(a)."  *Hinson v. Norwest Financial South Carolina, Inc.,* 239 F.3d 611, 618 (4th Cir. 2001) (citing *Desert Empire Bank v. Insurance Co.,* 623 F.2d 1371, 1374 (9th Cir. 1980), *superseded on other grounds*).  Rule 20 imposes two specific requirements for the permissive joinder of parties.  It provides that "[p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."  Fed. R. Civ. P. 20.  The addition of a party pursuant to Rule 20(a) calls for an equally liberal analysis as that mandated by Rule 15(a).  *Matthews Metals Products, Inc. v. RBM Precision Metal Products, Inc.,* 186 F.R.D.

---

[2] The party opposing amendment has the burden of showing "undue prejudice."  *DCD Programs,* 833 F.2d at 187.  To meet this standard, the party "must show that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the amendments been timely."  *Bechtel v. Robinson,* 886 F.2d 644, 652 (3d Cir. 1989) (internal quotations omitted); *see Smith v. Guaranty Services Corp.,* 51 F.R.D. 289, 293 (N.D. Cal. 1970) (undue prejudice means undue difficulty in defending a lawsuit as a result of a change in tactics or theories on the part of the other party).

1   581, 583 (N.D. Cal. 1999) ("[R]equirements of Rule 20(a) are construed liberally in order

2   to promote the broadest scope of action consistent with fairness to the parties.") (citing

3   *League to Save Lake Tahoe v. Tahoe Regional Planning Agency,* 558 F.2d 914, 917 (9th

4   Cir. 1977)).[3]

5       IP Plaintiffs' proposed amendments to add Thomson, Mitsubishi and Videocon as

6   Defendants meet all the requirements of Rules 15 and 20.  None of the factors that weigh

7   against granting leave to amend the complaint is present here.  First, the proposed

8   amendment will not prejudice either Thomson or Mitsubishi because Thomson was named

9   as a defendant in some of the original indirect purchaser complaints filed in 2007, and IP

10  Plaintiffs entered into tolling agreements with both Thomson and Mitsubishi in November

11  2011.  *See* Alioto Decl. ¶¶ 6-8.  Thomson and Mitsubishi were therefore well aware of the

12  facts described in the operative complaint and had notice of this litigation and the claims

13  that IP Plaintiffs are asserting.

14      As for the existing Defendants, the proposed amendment will not alter the scope of

15  discovery against them and therefore will not prejudice them.  In ¶ 105 of the operative

16  complaint, Defendants were put on notice that IP Plaintiffs might pursue other co-

17  conspirators based on what might be learned through discovery.[4]  This proposed

18  amendment will not make it any more difficult for the existing Defendants to defend this

19  action.  In fact, joining Thomson, Mitsubishi and Videocon in the present action, as

20

21

22  [3] Like Rule 15, the burden rests with the party challenging an amended pleading to
    demonstrate that a newly joined defendant is not a proper party under Rule 20.  *See*
23  *Metzger v. Guardian Life Ins. Co., Inc.,* No. C-96-2006 SI, 1996 U.S. Dist. LEXIS 13068,
    at *11 (N.D. Cal. Sept. 3, 1996) (Illston, J.) (granting leave to amend when defendant
24  failed to meet its burden of persuasion).

25  [4] Paragraph 105 of the Third Consolidated Amended Complaint alleges: "Various other
    persons, firms and corporations, not named as Defendants herein, and presently unknown
26  to Plaintiffs, have participated as co-conspirators with Defendants and have performed acts
    and made statements in furtherance of the conspiracy and/or in furtherance of the
27  anticompetitive, unfair or deceptive conduct. Plaintiffs reserve the right to name some or
    all of these Persons as Defendants at a later date."

28

1  opposed to requiring IP Plaintiffs to maintain a separate action, achieves judicial economy

2  and should serve to reduce the cost of this litigation.

3         Second, the underlying factual basis for all claims arises out of the "same

4  transaction or occurrence," i.e., a unitary overarching price-fixing conspiracy under which

5  Defendants are jointly and severally liable for their conduct.  *See* Fed. R. Civ. P.

6  20(a)(2)(A); *Paper Systems Inc. v. Nippon Paper Indus. Co., Ltd.,* 281 F.3d 629, 633 (7th

7  Cir. 2002) (holding that every participant in an antitrust conspiracy is jointly and severally

8  liable for overcharges by other members of the cartel); *In re Vitamins Antitrust Litig.,* 209

9  F.R.D. 251, 262 (D.D.C. 2002) (finding co-conspirator defendants jointly and severally

10  liable to "each and every class member for damages sustained on all class members'

11  purchases" of the price-fixed product).

12         Third, the proposed Fourth Amended Complaint does not alter the factual or legal

13  questions presented in this case.  The causes of action asserted against Thomson,

14  Mitsubishi and Videocon in the Fourth Amended Complaint are identical to those asserted

15  against the existing Defendants.

16         Finally, no undue delay will result from allowing the amendment requested,

17  because the Court has not set a deadline for proposed amendments adding parties, the fact

18  discovery cutoff is a year away, and the trial is not scheduled to begin until April 14, 2014.

19  *See* Scheduling Order, Docket No. 1127.  Furthermore, the class certification briefing was

20  recently extended and this may extend the fact discovery cutoff and the trial date.  Based

21  on this timeline and in light of the recently discovered information regarding the existence

22  of claims against the proposed Defendants, IP Plaintiffs have filed this Motion in a timely

23  manner.[5]  Indeed, courts have liberally allowed amendment to add new defendants even

24  after significant passage of time, noting that delay, standing alone, is an insufficient basis

25  _____

26  [5] Due to the volume of documents (more than 4 million pages, many of which are in
   foreign languages), IP Plaintiffs' actual discovery of the incriminating information against
   Thomson, Mitsubishi and Videocon took place over the last few months.  But it was only

27  in the last few weeks, as a result of the Rule 30(b)(6) depositions and additional evidence
   discovered since those depositions, that it became apparent that Thomson, Mitsubishi and

28  Videocon should be added as Defendants.

8

1    to deny a request to amend.  *See Expoconsul Int'l, Inc. v A/E Sys., Inc.*, 145 F.R.D. 336,

2    338-39 (S.D.N.Y. 1993) (permitting plaintiffs to add new defendants approximately five

3    years after commencement of case because delay alone does not provide sufficient

4    justification for denial of motion to amend); *Issen v. GSC Enterprises, Inc.,* 522 F.Supp.

5    390, 394 (N.D. Ill. 1981) (permitting amendment where defendants will not be unduly

6    prejudiced by seven-year delay in amending complaint since amendment nevertheless

7    comes before close of discovery, before trial, and before rulings on pending summary

8    judgment motions).

9         Thus, IP Plaintiffs have satisfied the Rule 15, Rule 20 and the *Foman* factors and

10   the presumption in favor of allowing the amendment applies here.

11   **IV.    CONCLUSION**

12        For the foregoing reasons, IP Plaintiffs' Motion for Leave to File Fourth Amended

13   Complaint should be granted.

14

15   Dated: August 22, 2010            By: */s/ Mario N. Alioto*

16                                         Mario N. Alioto (56433)
                                           Lauren C. Russell (241151)
                                           TRUMP, ALIOTO, TRUMP &
                                           PRESCOTT, LLP

17                                         2280 Union Street

18                                         San Francisco, CA 94123
                                           Telephone:   (415) 563-7200

19                                         Facsimile:    (415) 346-0679
                                           malioto@tatp.com

20                                         laurenrussell@tatp.com

21                                         *Interim Lead Counsel for the*
                                           *Indirect Purchaser Plaintiffs*

22

23

24

25

26

27

28
                                          9