

17th Floor  |  Four Embarcadero Center  |  San Francisco, CA  94111-4109
415-434-9100 *office*  |  415-434-3947 *fax*  |  *www.sheppardmullin.com*

Writer's Direct Line: 415-774-2963
mscarborough@sheppardmullin.com

August 23, 2012

Hon. Charles A. Legge
JAMS
Two Embarcadero Center, Suite 1500
San Francisco, CA  94111

Re:     *In re: Cathode Ray Tube (CRT) Antitrust Litigation*
          Master File No. 07-5944 SC; MDL No. 1917
          Motion to Quash Sharp Subpoena
          Case No. CV-12-80151 MISC

Your Honor:

I write on behalf of Defendants[1] to respectfully request that the Court quash Sharp Corporation ("Sharp")'s subpoena to Saveri & Saveri, Inc., which was approved for service based on Sharp's *ex parte* application under 28 U.S.C. § 1782.[2]   Sharp seeks all discovery materials generated in this U.S. litigation, to further its prosecution of a lawsuit it filed in Korea. Sharp's naked attempt to circumvent the discovery limitations prescribed by the Korean Civil Procedure Act is inconsistent with the policy reflected in § 1782, and should be rejected.

The Korean Civil Procedure Act details procedures through which Sharp could have – and should have – applied to obtain documents relevant to its claims.  The Korean Court has jurisdiction over the defendants in that litigation, and Sharp could have applied for an order forcing those defendants to produce discovery.  Sharp also could have requested an order

_____

[1] "Defendants" refers to the following defendants in the above-captioned case (hereafter, "CRT MDL"): Beijing Matsushita Color CRT Co., Ltd.; Hitachi, Ltd.; Hitachi Displays, Ltd.; Hitachi Asia, Ltd.; Hitachi America, Ltd.; Hitachi Electronic Devices (USA), Inc.; LG Electronics, Inc.; LG Electronics USA, Inc.; LG Electronics Taiwan Taipei Co., Ltd.; Panasonic Corporation of North America; MT Picture Display Co., Ltd.; Panasonic Corporation; Koninklijke Philips Electronics N.V.; Philips Electronics North America Corporation; Samsung Electronics Co., Ltd.; Samsung Electronics America, Inc.; Samsung SDI America, Inc.; Samsung SDI Co., Ltd.; Samsung SDI (Malaysia) SDN. BHD; Samsung SDI Mexico S.A. DE C.V.; Samsung SDI BRasil Ltda.; Shenzen Samsung SDI Co., Ltd.; Tianjin Samsung SDI Co., Ltd.; Toshiba Corporation; Toshiba America Information Systems, Inc.; Toshiba America Consumer Products, L.L.C.; Toshiba America Electronic Components, Inc.

[2] Sharp's subpoena is attached as Exhibit A to the Declaration of Tyler M. Cunningham in Support of Defendants' Motion to Quash ("Cunningham Decl.").

SHEPPARD MULLIN RICHTER & HAMPTON LLP

Hon. Charles A. Legge
August 23, 2012
Page 2

compelling discovery from Korea's antitrust enforcement agency, which Sharp contends possesses relevant documents. Sharp did none of these things. In fact, ***Sharp has made no attempt to obtain discovery under Korea's procedural rules.*** Instead, Sharp applied to this Court as its first option, essentially performing an end-run around the Korean court. Sharp's attempt to replace Korean law with more permissive U.S. discovery rules is inconsistent with the goals of § 1782, which seeks to assist foreign courts, not supplant their authority altogether.

Sharp has also provided no admissible evidence that the Korean court would welcome its attempt to import millions of pages of documents into that litigation. Indeed, the only evidence shows that the opposite is true. Korean rules of civil procedure generally allow for targeted discovery of specific documents identified by the requesting party, not the broad "fishing expedition"-style discovery Sharp requests. Korea's discovery rules are aligned with its stated goals of quick, efficient and fair resolution of litigation. Sharp's application would be neither quick nor efficient, as it would effectively import the entire U.S. discovery record into the Korean litigation. Moreover, Sharp's requested discovery would be unfair, allowing Sharp to reap the benefits of permissive U.S. discovery rules while forcing the Korean defendants to abide by stricter Korean rules. In addition, Korea has unambiguously signaled its reluctance to engage in broad foreign pretrial discovery by declaring, in connection with its accession to an international treaty governing pretrial evidence collection, that it "will not execute Letters of Request issued for the purpose of obtaining pre-trial discovery of documents."

Finally, compliance with Sharp's subpoena would result in the disclosure of Defendants' confidential and proprietary commercial information in a foreign jurisdiction that does not adequately maintain the confidentiality of such materials. While Sharp suggests that the Korean court could enter an order "substantially similar" to this Court's Protective Order, the Korean court in fact has no statutory authority to do so. And even if this Court modified the Protective Order to allow Sharp access to the requested documents, as a practical matter Defendants would have no adequate recourse if Sharp, or its Korean counsel, were to violate that order.

I.      **Background**

The Court is familiar with the extensive discovery record in this case. Plaintiffs have served scores of broad discovery requests on Defendants, seeking documents and data from around the globe, over a period of nearly two decades. Defendants, comprised of more than a dozen different corporate families, responded by producing more than five million pages of documents. Plaintiffs have also received documents from more than 20 third parties, and have deposed at least 18 witnesses, with many more depositions and third party documents expected. Cunningham Decl. ¶ 2.

Related proceedings have taken place in Korea. The Korea Fair Trade Commission ("KFTC") investigated alleged CRT cartel activity, and collected documents from CRT makers. Declaration of Deok-Gu Lee ("Lee Decl.") ¶ 7. The KFTC fined five CRT

SHEPPARD MULLIN RICHTER & HAMPTON LLP
Hon. Charles A. Legge
August 23, 2012
Page 3

makers for anticompetitive conduct in pricing CRTs for computer monitors ("CDTs"), but found no evidence that Korean antitrust laws were violated in connection with the pricing of CRTs made for color televisions ("CPTs").  *Id.*  (Notably, Sharp's Korean lawsuit seeks to recover based on its purchases of CPTs, not CDTs.)  In November 2011, the KFTC issued a letter stating that it had closed its investigation.  *Id.* Ex. B.

Also in Korea, Sharp Corporation and several related entities[3] filed a complaint on Nov. 5, 2010 in Suwon District Court ("Korean Complaint").  *Id.* Ex. A.  The complaint names as defendants several Samsung SDI entities that are also before this Court.[4]  Sharp's Korean Complaint alleges a conspiracy to fix prices of CRTs, which allegedly injured Sharp through its purchases of CPTs.  *Id.* at 12.  In the Korean Complaint, Sharp said it would substantiate its claims through discovery to the KFTC.  *Id.* at 15 (Sharp "intend[s] to later demonstrate the Defendants' illegal collusive conduct in more detail by obtaining documents evidencing such conduct from the KFTC through document request procedures.").

Korea's Civil Procedure Act provides for such discovery.  Parties may apply to the court for an order compelling document productions from parties or third parties.  *Id.* ¶ 11.  Parties typically must provide some detail about the documents they seek.  *Id.* ¶ 12.  The court may, in its discretion, order a party holding documents to submit a written statement providing some of these details.  *Id.*  And if the court deems a document request justifiable, it may order parties (or third parties) to produce documents.  *Id.* ¶ 13.

Sharp has not applied to obtain documents through the Korean court or Korean discovery procedures.  *Id.* ¶ 8.  Sharp has not asked the Korean court to order a document production from any party or third party.  *Id.*  Instead, Sharp applied to *this Court*.  On June 27, 2012 – a year and a half after it filed the Korean Complaint – Sharp filed its *Ex Parte* Application For Order Pursuant to 28 U.S.C. § 1782 to Obtain Discovery For Use in a Foreign Proceeding ("Application").  Sharp's Application sought leave to serve a subpoena for all "discovery materials" obtained in the CRT MDL by the Direct Purchaser Plaintiffs, including all deposition transcripts.  Sharp seeks to import those materials directly into the Korean Litigation.  Declaration of Bruce H. Searby in support of Sharp Application ("Searby Decl.") ¶ 11 ("Sharp seeks the discovery from the N.D. Cal. Litigation for possible introduction into evidence in the Korean court to help prove Sharp's case.").

---

[3] Plaintiffs are Sharp Corporation; Sharp Manufacturing Corporation (M) Sdn. Bhd.; Sharp Electronics (Malaysia) Sdn. Bhd.; Sharp Roxy Appliances Corporation (M) Sdn. Bhd.; P.T. Sharp Electronics Indonesia; Sharp Manufacturing (Thailand) Co., Ltd.; Sharp Thai Co., Ltd.; Nanjing Sharp Electronics Co., Ltd.; Sharp India Ltd.; and Sharp (Phils.) Corporation.

[4] The "Korean Litigation Defendants" are Samsung SDI Co., Ltd.; Samsung SDI (Malaysia) Sdn. Bhd.; Samsung SDI (HK) Ltd.; Shenzhen Samsung SDI Co., Ltd.; Tianjin Samsung SDI Co., Ltd.; LG Philips Display Co., Ltd.; PT. LP Displays Indonesia; LG Philips Displays (Singapore) Pte. Ltd.; LG Philips (Shuguang) Displays; and Meridian Solar & Display Co.

SHEPPARD MULLIN RICHTER & HAMPTON LLP
Hon. Charles A. Legge
August 23, 2012
Page 4

       Defendants opposed the Application, objecting to the *ex parte* procedure.  In reply, Sharp argued that the *ex parte* procedure was proper, because "*any* interested party in the litigation may have its day in court, after the issuance of the subpoena." (Dkt. No. 9), at 4 (emphasis in original).  On August 7, 2012, the Court granted Sharp leave to issue subpoenas to Saveri & Saveri, attorneys representing Direct Purchasers Plaintiffs in the CRT MDL.  (MDL Dkt. No. 1299).  Sharp served its subpoena by mailing it for overnight delivery to the Saveri firm on August 8, 2012.[5]  Cunningham Decl. Ex. A.

## II.  The Court Should Exercise Its Broad Discretion to Deny Sharp's Requested Discovery.

       Analysis of a 28 U.S.C. § 1782 application is two-fold: (a) whether the statutory threshold requirements are satisfied and, if so, (b) whether a district court should exercise its discretion to allow any of the discovery sought by the application.  In granting Sharp's *ex parte* application, the Court found that Sharp has met the "necessary criteria" required by the statute. (MDL Dkt. No. 1299).  Defendants do not dispute that Sharp meets the statutory criteria.  Those requirements, however, are only the threshold inquiry.  *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 255 ("The statute authorizes, *but does not require*, a federal district court to provide assistance ….") (emphasis added).

       As detailed below, the *Intel* court identified four factors for courts to consider in exercising their discretion to grant or deny an application under § 1782.  This Court has held that the party requesting the subpoena bears the burden of establishing that it should issue.  *In re Microsoft Corp.*, No. C 06-80038, 2006 WL 825250, at *2 n.3 (N.D. Cal. March 29, 2006). Here, all four *Intel* factors strongly favor quashing the subpoena.

    A.   The real targets of the subpoena are before the Korean court.

       The first *Intel* factor asks whether the person from whom discovery is sought is a participant in the foreign proceeding.  If so, "the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad."  *Intel*, 542 U.S. at 264.  This is because the foreign court has jurisdiction over the parties before it, and can order the parties to produce evidence.  *Id.*

---

[5] Although Sharp directed its subpoena to the Saveri firm, Defendants have standing to move to quash because Sharp seeks to use the requested documents to prove Defendants' participation in its alleged price-fixing conspiracy.  *See In re Request for Judicial Assistance from the Seoul District Criminal Court*, 555 F.2d 720, 723 (9th Cir. 1977) ("The party against whom [the] requested … records are to be used has standing to challenge the validity of the order … to produce the records."); *In re Letter of Request from Crown Prosecution Service of the United Kingdom*, 870 F.2d 686, 689 (D.C. Cir. 1989) (person "against whom information obtained under section 1782 may be used, has standing to assert that, to his detriment, the authority for which the section provides is being abused.").

SHEPPARD MULLIN RICHTER & HAMPTON LLP
Hon. Charles A. Legge
August 23, 2012
Page 5

    Sharp argues that this factor supports its request because it seeks documents from the law firm of Saveri & Saveri, which is not a party to the Korean Litigation. Application, p. 9. Sharp's argument elevates form over substance. Although technically directed to the Saveri firm, Sharp's subpoena seeks documents originally produced by Defendants. Courts applying the *Intel* factors consistently look beyond the nominal target of the subpoena, to ask whether the requested **evidence** is within the reach of the foreign tribunal. *See, e.g., Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 85 (2d Cir. 2004) (affirming order denying § 1782 request for subpoena to law firm, where subpoena sought documents produced by a party to the foreign litigation) ("Although technically the respondent in the district court was Cravath, for all intents and purposes petitioners are seeking discovery from … their opponent in the German litigation"); *In re Application of OOO Promnefstroy for an Order to Conduct Discovery for Use in a Foreign Proceeding*, M 19-999 (RJS), 2009 WL 3335608, at *5 (S.D.N.Y. Oct. 15, 2009) ("it is the foreign tribunal's ability to control the evidence and order production, not the nominal target of the § 1782 application, on which the district court should focus."); *In re Microsoft Corp.*, 428 F.Supp.2d 188, 192 (S.D.N.Y. 2006) (relevant inquiry is "whether the documents or testimony sought are within the foreign tribunal's jurisdictional reach, and thus accessible absent § 1782 aid"). Each of these courts held that the first *Intel* factor weighed against the requested discovery, even though the subpoena was technically directed to a non-party to the foreign proceedings.

    Here, the Korean court has jurisdiction over the Korean Litigation Defendants, and it may order those entities to produce whatever documents it deems appropriate. Lee Decl. ¶ 13. While not all CRT MDL Defendants are before the Korean Court, presumably the evidence most relevant to Sharp's claims in the Korean Litigation concerns the Korean Litigation Defendants, and thus would be available to the Korean court. Moreover, the KFTC gathered documents during its CRT investigation; this is another potential source of relevant evidence, also within the Korean court's reach. *Id.* ¶¶ 7, 11, 13. Sharp itself has acknowledged that the KFTC is an available source of documents it believes to be relevant. *Id.* Ex. A, at 15. In short, the Korean court is empowered to order production of the most relevant documents sought by Sharp through its § 1782 request, and the Korean court is the more appropriate channel through which to seek those documents.

  B. <u>The Korean court would not be receptive to wholesale importation of the U.S.
discovery record.</u>

    The second *Intel* factor examines "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *Intel*, 542 U.S. at 264. Here, Sharp has failed to show that the Korean court would welcome the five-million-plus pages of documents that U.S. plaintiffs have unearthed.

    Sharp's only proffered evidence on this point comes via the Searby Declaration, which purports to repeat statements from a Korean lawyer named Jinhoon Gim. *See* Searby

Decl. ¶¶ 3, 8, 10-13.  These statements are inadmissible hearsay; they should be stricken and disregarded.  *Travelers Cas. & Sur. of America v. Telstar Const. Co., Inc.*, 252 F.Supp.2d 917 (D. Ariz. 2003) (striking portions of declarations containing hearsay); N.D. Cal. Civ. L.R. 7-5(b) (court may strike declaration that does not comply with requirements of Fed. R. Civ. P. 56(e)).  But even if the Court were to consider these hearsay statements, they are based on a misreading of Korean law.  Sharp (through Mr. Gim, through Mr. Searby) claims that Articles 202 and 296 of the Korean Civil Procedure Act show that Korean courts "are receptive to discovery in a foreign country."  As explained in Mr. Lee's sworn statement, these Korean statutes do no such thing.  Lee Decl. ¶¶ 15-18.

        To the contrary, the available evidence suggests that Korean courts would not welcome Sharp's proposed document deluge.  Judicial assistance between the United States and Korea is governed by treaty.  Hague Convention on the Taking of Evidence Abroad in Civil and Commercial Matters, Oct. 7, 1972,  23 U.S.T. 2555.[6]  Article 23 of the Hague Convention allows signatories to pass laws to refuse to comply with discovery requests.  In accordance with Article 23, Korea declared that it "will not execute Letters of Request issued for the purpose of obtaining pre-trial discovery of documents," if the letter of request does not identify particular documents likely to be in the person's custody.  Lee Decl. ¶ 19, Ex. D.  Korea's statement clearly signals its reluctance to engage in the sort of broad, foreign pretrial discovery Sharp proposes here.  *Id.* ¶ 20.

        Korean courts have their own discovery rules, which allow for discovery from parties and non-parties, upon application to the court.  Lee Decl. ¶ 11.  These rules are generally more restrictive than their U.S. analogues, in keeping with Korea's stated policy of resolving litigation quickly, efficiently and fairly.  *Id.* ¶ 10.  Sharp's subpoena would subvert these policies.  *Id.* ¶ 20.

        First, as stated explicitly in Article 1 of the Korean Civil Procedure Act, Korean law values speed and efficiency in resolving litigation.  Wholesale importation of the U.S. discovery record into the Korean Litigation would result in neither speed nor efficiency.  Both Sharp and the Korean Litigation Defendants would require substantial time to translate, review and assimilate five-plus million pages of documents.[7]  Adding these documents would exponentially increase the time and effort required of the Korean court, which is *required* to examine evidence submitted by Sharp.  Lee Decl. ¶ 14.

---

[6] *See also* Hague Conference on Private International Law, Acceptance of Accessions: Korea, Republic of, http://www.hcch.net/index_en.php?act=status.accept&mid=1057 (last visited Aug. 15, 2012).

[7] Plaintiffs' counsel in the U.S. litigation said this task would entail "astronomical" cost and delay.  Cunningham Decl. Ex. B (Jan. 16, 2012 letter from M. Alioto and G. Saveri to Hon. Charles A. Legge), at 5.

SHEPPARD MULLIN RICHTER & HAMPTON LLP
Hon. Charles A. Legge
August 23, 2012
Page 7

Second, Korean courts seek to resolve litigation fairly.  This entails a dedication to procedural fairness, a guarantee that each party will have an equal opportunity to present their case.  Sharp's proposed discovery would be the antithesis of procedural fairness: Sharp would enjoy access to millions of pages of Defendants' documents, while denying the Korean Litigation Defendants similar access to Sharp's documents. [8]  Sharp has produced none of its own documents in the Korean litigation.  Lee Decl. ¶ 5.  Sharp would allow itself access to more liberal U.S. discovery rules, while limiting the Korean Litigation defendants to the more stringent Korean rules, unfairly tipping the scales in Sharp's favor.

      C.    <u>Sharp's Application is an unabashed attempt to circumvent Korean procedure.</u>

The third *Intel* factor asks whether the § 1782 request conceals an attempt to circumvent foreign proof-gathering restrictions.  *Intel*, 542 U.S. at 265.  Here, Sharp makes no attempt to conceal its attempted end-run around Korean discovery procedures.  It simply bypassed those procedures, and proceeded directly with its U.S. Application.  Lee Decl. ¶ 8.

Courts evaluating § 1782 applications consistently hold that failure to avail oneself of the foreign discovery process is evidence of an attempt to circumvent that process.  For example, in *In re Application of Digitechnic*, the court evaluated Digitechnic's  § 1782 application for discovery from Microsoft in the U.S., which Digitechnic planned to use in a suit against Microsoft in France.  No. C07-414-JCC, 2007 U.S. Dist. LEXIS 33708 (W.D. Wash. May 8, 2007).  Digitechnic made no initial attempt to seek documents through the French court, but proceeded with a § 1782 as its first option.  *Id.* at *10.  Digitechnic argued, as Sharp does here, that the foreign discovery rules would probably not yield the desired discovery because they required the applicant to identify details of the documents it seeks.  *Id.* at *9.  The court quashed the subpoena, finding that Digitechnic was trying to circumvent French rules:

> Digitechnic claims that because French discovery rules do not allow what it seeks here (though it has not tried to obtain such discovery in France) this Court should allow discovery under the Federal Rules of Civil Procedure.  Simultaneously, Digitechnic asserts that it is not trying to circumvent French discovery restrictions.  The obvious contradiction herein suggests either that the discovery Digitechnic seeks here could have and should have been obtained much earlier in France (verifying that the first *Intel* factor swings in Microsoft's favor) or that the discovery sought here truly cannot be obtained in France and therefore that this Court should hesitate to order discovery ….

---

[8] Discovery from plaintiffs is crucial in a Korean price-fixing case, given Korean courts' willingness to consider evidence that the plaintiff passed on any overcharge to its customers. Lee Decl. ¶ 21.

*Id.* at *13; *accord In re Application of Caratube Int'l Oil Co., LLP*., 730 F.Supp.2d 101, 107 (D.D.C. 2010) (failure to seek discovery through foreign process before filing § 1782 application suggests an attempt to circumvent foreign procedures); *In re Application of Microsoft Corp.*, 428 F.Supp.2d 188, 195-96 (S.D.N.Y. 2006) (quashing subpoena issued under section 1782 where application was made before foreign tribunal had determined whether to grant access to documents; allowing discovery "would contravene the purpose of § 1782 by pitting this Court against the [foreign tribunal] rather than fostering cooperation between them, and would violate established principles of comity, under which United States courts ordinarily … defer to proceedings taking place in foreign countries.") (internal quotations omitted).

   Sharp chose to litigate its dispute in Korea.  Sharp may not find the Korean procedural laws to its liking, but this is an insufficient reason to allow it to substitute U.S. rules. Allowing it to do so would set a dangerous precedent.

   D. Sharp's subpoena is overbroad and unduly burdensome.

   The fourth *Intel* factor asks courts to be mindful of overly intrusive or burdensome discovery requests.  *Intel*, 542 U.S. at 265.  Here, Sharp indiscriminately seeks every piece of paper the Direct Purchaser Plaintiffs obtained in their U.S. discovery campaign, with no limitation.  Sharp's request is unduly intrusive and burdensome, given the vast number of documents it encompasses.  Sharp seeks more than five million pages of documents produced by more than a dozen corporate families that are defendants in the CRT MDL, encompassing nearly two decades; additional productions by third parties in the CRT MDL; and transcripts from at least 18 Defendant depositions that have taken place to date.  Sharp's single request encompasses scores of document requests from plaintiffs in the CRT MDL (which Defendants contend are themselves overbroad), including:

- All documents and data related to Defendants' sales of CRT or CRT Products from January 1, 1991 through March 12, 2010.

- All documents related to supply or demand conditions for CRTs or CRT Products, including any market studies or reports from January 1, 1991 through March 12, 2010.

- All documents relating to any communication with a parent, subsidiary or affiliated company regarding the production, price, marketing, sale or distribution of CRTs or CRT Products.

- All documents relating to any communications with any CRT Product manufacturer.

- Any document related to a CRT or CRT Product trade association.

Cunningham Decl. Ex. C (Direct Purchaser Plaintiffs' Second Set of Requests for Production of Documents, Request Nos. 5, 23, 25, 26, 30, 31). In addition, Sharp's request encompasses a significant number of documents that plaintiffs are attempting to import from the LCD litigation. *See* Dkt. No. 950 (order allowing plaintiffs to add LCD documents to discovery record).

The resulting document trove would impose a substantial burden on all parties, both here and abroad. Sharp's subpoena would burden the CRT MDL plaintiffs, as described in their objections to Sharp's subpoena. Cunningham Decl. Ex. D. Sharp's subpoena would burden the Korean Litigation Defendants by forcing them to review millions of pages to assess the evidence in light of that litigation. Sharp's subpoena would burden the Korean court, which would have to sort through volumes of resulting documents. *See* Lee Decl. ¶ 14; *Kulzer v. Biomet, Inc.*, 633 F.3d 591, 594-95 (7th Cir. 2011) (warning of the potential for § 1782 discovery to "clog" a foreign court with the "random harvest of the American discovery").

Sharp's request "bears little resemblance to those cases in which such applications were routinely approved – cases requesting a single document or report …." *In re Application of OOO Promnefstroy*, 2009 WL 3335608, at *9. Sharp fails to articulate any limit to its document request, and offers no reason for casting its net so gapingly wide. In *Intel*, the Supreme Court indicated that lower courts should consider whether a § 1782 request is, or would encourage, a "fishing expedition." Sharp's inability to more specifically describe the documents it seeks reveals that it is on just such an expedition.[9]

## III. Compliance with Sharp's Subpoena Would Result in the Disclosure of Defendants' Confidential Information.

The Court made confidentiality a key condition in its order granting Sharp leave to serve its subpoena:

> [A]ny use by Sharp and other parties in the Korean litigation … of the documents obtained pursuant to the Application shall be conditioned upon acceptance of the terms of the Stipulated Protective Order in effect … or, in the alternative, shall comply with the terms of an order to be entered in the Korean litigation that is consistent with the goal of protecting the confidentiality interests of the affected parties.

---

[9] The single case that Sharp cites to support its argument on this point is inapposite. The court in *In re Linerboard Antitrust Litigation* did not evaluate a discovery request under § 1782. 333 F.Supp.2d 333, 342 (E.D. Pa. 2004) ("McCormick has not moved pursuant to Section 1782"). The *Linerboard* court simply granted an application to intervene, so that the applicant could move to modify a protective order and receive documents *voluntarily* produced by plaintiffs' counsel. *Id.* at 340-41. In contrast, counsel for the Direct Purchaser Plaintiffs have objected to Sharp's subpoena.

SHEPPARD MULLIN RICHTER & HAMPTON LLP
Hon. Charles A. Legge
August 23, 2012
Page 10

Order Granting *Ex Parte* Application (MDL Dkt. No. 1299), at 2.

            But neither option would reliably ensure that Defendants' information remains
confidential.  Korean courts lack the statutory authority to enter the sort of protective order
common to U.S. litigation.  *See* Lee Decl. ¶ 23.   That leaves this Court's Protective Order.  But
Sharp is not a party to that order.  Even if it were, the order would not permit Sharp to share
confidential material with its Korean counsel, or to use that material in the Korean Litigation.
*See* Stipulated Protective Order (Dkt. No. 306) at ¶ 7.1 ("Protected Material" may be used "only
in connection with this action …"); *id* at ¶¶ 7.2, 7.3 (describing the parties who may access
confidential or highly confidential material).  Moreover, even if Sharp's outside Korean counsel
were to agree to not divulge any confidential documents to third parties, Defendants would have
no adequate remedy if Sharp's outside Korean counsel were to violate this agreement.  Unlike
the U.S. courts, Korean judges do not adopt confidentiality agreements between parties as their
own orders and retain jurisdiction and control of the agreements.  To enforce its rights under any
such agreement, Defendants would be forced to bring a separate action in the Korean courts,
which have limited experience dealing with these types of disputes.  Lee Decl. ¶¶ 22-25.

            Even taken alone, these confidentiality concerns counsel strongly in favor of
quashing Sharp's subpoena.  *See Four Pillars Enterprises Co., Ltd. v. Avery Dennison Corp.*,
308 F.3d 1075, 1078-79 (9th Cir. 2002) (magistrate judge was within his discretion in denying
"much of the relief" sought by § 1782 applicant on the grounds that a discovery order "would
improperly frustrate" the protective order).

## IV.   Conclusion

            Section 1782 aims to "assist foreign tribunals in obtaining relevant information
that the tribunals may find useful but … cannot obtain under their own laws."  *Intel,* 542 U.S. at
262.  Sharp has not shown that it "cannot obtain" relevant information through Korea's
discovery procedures, nor has it shown that the Korea court would "find useful" the results of its
subpoena.  Because Sharp's application seeks to evade, not supplement, Korean discovery rules,
it should be rejected.

                              Respectfully submitted,

                              */s/ Michael W. Scarborough*

                              Michael W. Scarborough

                        for SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

cc:      All Counsel via ECF
SMRH:406289651.4