1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Case No. 07-5944 SC<br><br>MDL No. 1917<br><br>**DECLARATION OF DEOK-GU LEE IN SUPPORT OF DEFENDANTS' MOTION TO QUASH SHARP SUBPOENA** |
| This Document Relates to:<br><br>IN RE: APPLICATION FOR JUDICIAL ASSISTANCE FOR THE ISSUANCE OF SUBPOENAS PURSUANT TO 28 U.S.C. §1782 TO OBTAIN DISCOVERY FOR USE IN A FOREIGN PROCEEDING<br><br>Case No. CV-12-80-151 MISC | |

I, Deok-Gu Lee, declare as follows:

1.      I am a partner at the Korean law firm of Shin & Kim.  I submit this declaration in support of defendants' motion to quash the subpoena served by Sharp Corporation ("Sharp").  I have personal knowledge of the matters contained in this Declaration.

2.      I am licensed to practice law in Korea.  I have been in charge of the firm's litigation practice since 2001.  My practice includes antitrust, administrative, civil and corporate law matters.

### Korean Litigation

3.      I represent Samsung SDI Co., Ltd. and related defendants (collectively, "Samsung SDI") in Case No. 2010gahap21125, filed by Sharp and its subsidiaries in Suwon District Court (the "Korean Litigation").  Sharp previously submitted to the Court an English translation of its Korean complaint, which I re-attach here as Exhibit A.

4.      Sharp's complaint alleges that defendants and other CRT manufacturers violated Korean antitrust laws by fixing the price of CRTs.  Sharp claims that it was injured through its purchases of CRTs made for use in televisions, which are also known as CPTs.

5.      In connection with its complaint, Sharp filed a press release from the Japan Free Trade Commission, and an indictment from the U.S. Department of Justice.  Other than those two documents (and their translations), Sharp has produced no documents to the court or to Samsung SDI in connection with the Korean Litigation.

6.      The court presiding over the Korean Litigation has not entered a general confidentiality or protective order to govern the handling of confidential information.

7.      On November 10, 2007, the Korea Fair Trade Commission ("KFTC") announced that it was investigating alleged cartel activity by CRT manufacturers.  In connection with this investigation, Samsung SDI produced documents to the KFTC.  In November 2011, the KFTC issued a letter stating that it closed its investigation, and found no violation of Korean antitrust laws in connection with the pricing of CPTs.  Attached hereto as Exhibit B is a true and correct copy of that letter.

SMRH:406294442.4                                        DECLARATION OF DEOK-GU LEE I/S/O MOTION TO QUASH

1    8.    In its complaint, Sharp indicates that it "intend[s] to later demonstrate the

2    Defendants' illegal collusive conduct in more detail by obtaining documents evidencing such

3    conduct from the KFTC through document request procedures."  However, Sharp has not

4    requested that the Korean court order the KFTC, or any other third parties, to produce documents.

5    Nor has Sharp requested the Korean court to order any other parties to produce documents.  I am

6    not aware of any effort by Sharp to acquire documents pursuant to Korean discovery procedures.

7    <u>**Korean Law**</u>

8    9.    As a result of my practice, I am thoroughly familiar with the Korean Civil

9    Procedure Act (the "CPA").  Attached hereto as Exhibit C is a true and correct copy of excerpts of

10    the CPA, translated into English.

11    10.    The discovery available under the CPA is generally more limited than

12    discovery available to parties in U.S. litigation.  This is consistent with Korean policy, as reflected

13    in CPA Article 1, which states that "A court shall endeavor to have the litigation procedures

14    progress fairly, swiftly and economically."  This policy of more limited discovery is also

15    consistent with the right of each citizen to a speedy trial, as guaranteed by Article 27 of the

16    Constitution of Korea.

17    11.    That said, the CPA does provide for document production by both litigants

18    and third parties in some circumstances.  A party may request that the court order a person holding

19    a document to submit it.  CPA Art. 343.

20    12.    A party seeking a court order for a document must specify: (i) the indication

21    of the document; (ii) the purport of the document; (iii) the holder of the document; (iv) the facts

22    sought to be proven by; and (v) the causes of the obligation to produce the requested document.

23    CPA Art. 345.  However, if the court deems it necessary, it may order a party holding documents

24    to submit a written statement providing some of these details.  *Id.* Art. 346.

25    13.    If the court deems a document request justifiable, it may order parties to the

26    litigation or third parties to produce documents.  If the court deems the request justifiable only in

27    part, it may order parties or third parties to produce only a portion of the documents requested.  *Id.*

28    Art. 347.

-2-

1         14.    A court may decline to investigate evidence it deems it unnecessary;

2 however, this rule does not apply where the evidence is the sole evidence for a party's alleged

3 facts. *Id.* Art. 290. In addition, a court is required to review all documents filed by a party as

4 documentary evidence.

5         15.    I have reviewed the Declaration of Bruce Searby, submitted by Sharp in

6 support of its *ex parte* application for a subpoena, which purports to relate statements by a Korean

7 lawyer named Jinhoon Gim ("Searby Declaration"). The Searby Declaration states, in paragraph

8 12, that "Korean courts are receptive to discovery obtained in a foreign country and have adopted

9 the 'principle of free evaluation of evidence.'" This statement is based on a misreading of the

10 cited statutes, CPA Art. 202 and 296.

11         16.    CPA Article 202 is titled "Principle of Free Evaluation of Evidence," but it

12 does not support the claim that "Korean courts are receptive to discovery obtained in a foreign

13 country." Article 202 relates to a court's discretionary power to decide whether an alleged fact is

14 true or not; it has nothing to do with accepting evidence from a foreign jurisdiction.

15         17.    CPA Article 296 provides a process by which evidence may be examined in

16 a foreign country, and provides that evidence will be considered valid if examined in accordance

17 with that process. It provides no guidance regarding which evidence should be examined.

18         18.    Thus, contrary to Sharp's assertion, these provisions do not support the

19 statement that Korean courts would be receptive to receiving evidence from a foreign court.

20         19.    Judicial assistance between the United States and Korea is governed by the

21 Hague Convention on the Taking of Evidence Abroad in Civil and Commercial Matters, to which

22 both the United States and Korea are parties. Article 23 of the Hague Convention allows

23 signatories to pass laws to refuse to comply with discovery requests. In accordance with Article

24 23, Korea has declared that it "will not execute Letters of Request issued for the purpose of

25 obtaining pre-trial discovery of documents." A copy of Korea's statement is available at the

26 website for the Hague Conference on Private International Law (www.hcch.net), and is attached

27 hereto as Exhibit D.

28

SMRH:406294442.4                         DECLARATION OF DEOK-GU LEE I/S/O MOTION TO QUASH

1    20.   Given the above Korean law and policy, the court presiding over the Korean

2 Litigation likely would not welcome the extensive proposed discovery that Sharp seeks.

3    21.   Korean courts presiding over price-fixing cases sometimes limit the

4 damages available to plaintiffs who are intermediary purchasers and might have passed on

5 increased costs to their customers.  For example, in a recent antitrust case, a bakery company

6 sought damages from suppliers that allegedly fixed the price of flour.  The Seoul Central District

7 Court excluded from the total damage compensation the amount of damages that the direct

8 purchaser bakery company passed on to its customers.  *See Samlip General Food Co. Ltd. v. CJ*

9 *Cheil Jedang Corporation*, 2006GaHap99567.

10    22.   If Sharp obtained documents as a result of its subpoena, any confidential or

11 sensitive information in them would not necessarily be protected from disclosure in the Korean

12 Litigation.  A protective order entered by a U.S. court would not control how the Korean court

13 handled the Korean Litigation.

14    23.   Under Korean law, a Korean court would be unable to enter an order

15 providing substantially the same protection as provided in the stipulated protective order entered

16 in the U.S. CRT litigation.  Rather, a defendant's limited ability to obtain protection for its

17 confidential information would be governed by Article 163 of the Korean Civil Procedure Act,

18 entitled "Restriction on Perusal, etc. for Protection of Secrets."

19    24.   An Article 163 order is similar to a U.S. order granting a motion to file

20 under seal.  An Article 163 order is specifically limited to the filed brief and exhibits, and does not

21 cover documents that are not filed.  Further, an Article 163 order only prevents third parties from

22 directly accessing the protected information filed with the Court.  There is no Korean law that

23 prevents a party that has received confidential information in the course of a lawsuit from

24 divulging it to third parties, whether or not filed as part of a brief or exhibit.  Thus, if Sharp's

25 outside Korean counsel were to obtain access to confidential documents in response to its

26 subpoena, Sharp's outside Korean counsel would be free to disclose such information to third

27 parties.

28

-4-

1         25.      Even if Sharp's outside Korean counsel were to enter into an agreement not

2 to divulge any confidential documents to third parties, there would be no adequate remedy for

3 defendants if Sharp's outside Korean counsel were to violate this agreement.  Unlike the U.S.

4 courts, Korean judges do not adopt confidentiality agreements between parties as their own orders

5 and retain jurisdiction and control of the agreements.  As a result, to enforce its rights under any

6 such agreement, a defendant would be forced to bring a separate action in the Korean courts,

7 which have limited experience dealing with these types of disputes.

8

9          I declare under penalty of perjury of the laws of the United States that the foregoing

10 is true and correct.

11

12          Executed on August *20*, 2012, in *Seoul*, Korea.

13

14

15                         DEOK-GU LEE

16

17

18

19

20

21

22

23

24

25

26

27

28

              DECLARATION OF DEOK-GU LEE I/S/O MOTION TO QUASH

# EXHIBIT A

# Complaint

Plaintiffs:

1. Sharp Corporation

   22-22 Nagaike-cho, Abeno-ku, Osaka 545-8522, Japan

   Representative Director: Mikio Katayama

2. Sharp Manufacturing Corporation (M) Sdn. Bhd.

   PLO-225 Kawasan Perindustrian, Sri Gading, Ind. Estate, 83009

   Batu Pahat, Johor, Malaysia

   Representative Director: Joji Uo

3. Sharp Electronics (Malaysia) Sdn. Bhd.

   1A, Persiaran, Kuala Langat, Section 27, 40400 Shah Alam,

   Selangor Darul Ehsan, Malaysia

   Representative Director: Takashi Mikami

4. Sharp Roxy Appliances Corporation (M) Sdn. Bhd.

   No. 1A, Persiaran Kuala Langat, Section 27, 40400 Shah Alam,

   Selangor Darul Eshan, Malaysia

   Representative Director: Hiroyuki Nuizato

5. P.T. Sharp Electronics Indonesia

   Jl. Swadaya IV, Komp. Pedurenan Kel. Rawaterate, Kec. Cakung,

   Pulogadung - Jakarta 13920, Indonesia

   Representative Director: Fumihiro Irie

6. Sharp Manufacturing (Thailand) Co., Ltd.

58 Moo 3 Tambol Sampatuan, Amphur Nakornchaisri,

Nakornpathom Province, 73120 Thailand

Representative Director: Shigeharu Maehara


7. Sharp Thai Co., Ltd.

952 Rama Land Building, 12th Floor, Rama 4 Road, Suriyawong

Subdistrict, Bangrak District, Bangkok Metropolis, Thailand

Representative Director: Tatsuya Miyagi


8. Nanjing Sharp Electronics Co., Ltd.

No .318 ,Yaoxin Road, Nanjing Economic & Technical

Development Zone, Nanjing City, Jiangsu Province, 210038,

People's Republic of China

Representative Director: Nobuyuki Sugano


9. Sharp India Ltd.

GAT NO. 686/4, Koregaon Bhima, Tal, Shirur, DIST.: Pune:

PIN 412 216, India

Representative Director: Kazunori Ajikawa


10. Sharp (Phils.) Corporation

KM. 23 West Service Road, South Superhighway, Alabang,

Muntinlupa City, 1770 Metro Manila, Philippines

Representative Director: Juntaro Shimamoto


Counsel for Plaintiff:   Bae, Kim & Lee LLC

10Fl. Hankook Tire Bldg., 647-15 Yeoksam-dong, Gangnam-gu,

Seoul 135-080, Korea

(zip code: 135-723)

Attorney-at-law: Keum Seok Oh, Tony Dong Wook Kang, Seong Un Yun, Jung Hun Kim, Seon Ho Kim and Jin Hoon Gim

(Tel: 3404-6551, Fax: 3404-7688)

(E-mail: kmseok.oh@bkl.co.kr)

Defendants:    1. Samsung SDI Co., Ltd.

   428-5 Gongse-dong, Giheung-gu, Yongin-si

   Representative Director: Chi Hoon Choi

2. Samsung SDI (Malaysia) Sdn. Bhd.

   Lot 635 & 660,, Kawasan Perindustrian, Tuanku Jaafar,

   71450 Sungai Gadut, Negeri Sembilan Darul Khusus, Malaysia

   Representative Director: Dae Hyung Cho

3. Samsung SDI (HK) Ltd.

   SUITE 4511, 45/F, Two Int'l Finance Centre, 8 Finance Street,

   Central, Hong Kong

4. Shenzhen Samsung SDI Co., Ltd.

   Huanggang Bei Lu, Futian Gu, Shenzhen, People's Republic of

   China

   Representative Director: Li Jing He

5. Tianjin Samsung SDI Co., Ltd.

   Developing Zone of Yi-Xian Park, Wuqing County, Tianjin,

People's Republic of China

6. LG Philips Display Co., Ltd.

184 Gongdan-dong, Gumi-si

Representative Director: Su Geun Kwon

7. PT. LP Displays Indonesia

Kawasan Industri MM2100 Block G Cibitung,

Bekasi 17520 West Jawa, Indonesia

Representative Director: Ju Tae Park

8. LG. Philips Displays (Singapore) Pte. Ltd.

8, Temasek Boulevard, #26-02A, Suntec City Tower 3,

Singapore 038988

9. LG.Philips (Shuguang) Displays

No.99, Lixiang East Road, Xingsha, Changsha, Hunan,

People's Republic of China

10. Meridian Solar & Display Co.

184 Gongdan-dong, Gumi-si

Representative Director: Chris Park

## Claim for Damages

## Relief Requested

1. Each Defendant, on a joint and several liability basis, shall:

    A.   Pay to Plaintiff Sharp Corporation the amount of KRW 100,001,000 plus
         annual interest with respect to KRW 6,250,000 applied from January 1, 1995,
         with respect to KRW 6,250,000 applied from January 1, 1996, with respect to
         KRW 6,250,000 applied from January 1, 1997, with respect to KRW 6,250,000
         applied from January 1, 1998, with respect to KRW 6,250,000 applied from
         January 1, 1999, with respect to KRW 6,250,000 applied from January 1, 2000,
         with respect to KRW 6,250,000 applied from January 1, 2001, with respect to
         KRW 6,250,000 applied from January 1, 2002, with respect to KRW 6,250,000
         applied from January 1, 2003, with respect to KRW 6,250,000 applied from
         January 1, 2004, with respect to KRW 6,250,000 applied from January 1, 2005,
         with respect to KRW 6,250,000 applied from January 1, 2006, with respect to
         KRW 6,250,000 applied from January 1, 2007, with respect to KRW 6,250,000
         applied from January 1, 2008, with respect to KRW 6,250,000 applied from
         January 1, 2009, with respect to KRW 6,251,000 applied from January 1, 2010,
         at the rate of 6% per annum until the date on which a duplicate of this
         Complaint is served, and at the rate of 20% per annum from the date
         immediately following the date on which a duplicate of this Complaint is
         served until the date on which full payment is made by the Defendants;

    B.   Pay to Plaintiff Sharp Manufacturing Corporation (M) Sdn. Bhd. the amount
         of KRW 100,001,000 plus annual interest with respect to KRW 6,250,000
         applied from January 1, 1995, with respect to KRW 6,250,000 applied from
         January 1, 1996, with respect to KRW 6,250,000 applied from January 1, 1997,
         with respect to KRW 6,250,000 applied from January 1, 1998, with respect to
         KRW 6,250,000 applied from January 1, 1999, with respect to KRW 6,250,000

applied from January 1, 2000, with respect to KRW 6,250,000 applied from January 1, 2001, with respect to KRW 6,250,000 applied from January 1, 2002, with respect to KRW 6,250,000 applied from January 1, 2003, with respect to KRW 6,250,000 applied from January 1, 2004, with respect to KRW 6,250,000 applied from January 1, 2005, with respect to KRW 6,250,000 applied from January 1, 2006, with respect to KRW 6,250,000 applied from January 1, 2007, with respect to KRW 6,250,000 applied from January 1, 2008, with respect to KRW 6,250,000 applied from January 1, 2009, with respect to KRW 6,251,000 applied from January 1, 2010, at the rate of 6% per annum until the date on which a duplicate of this Complaint is served, and at the rate of 20% per annum from the date immediately following the date on which a duplicate of this Complaint is served until the date on which full payment is made by the Defendants;

C.   Pay to Plaintiff Sharp Electronics (Malaysia) Sdn. Bhd. the amount of KRW 100,001,000 plus annual interest with respect to KRW 6,250,000 applied from January 1, 1995, with respect to KRW 6,250,000 applied from January 1, 1996, with respect to KRW 6,250,000 applied from January 1, 1997, with respect to KRW 6,250,000 applied from January 1, 1998, with respect to KRW 6,250,000 applied from January 1, 1999, with respect to KRW 6,250,000 applied from January 1, 2000, with respect to KRW 6,250,000 applied from January 1, 2001, with respect to KRW 6,250,000 applied from January 1, 2002, with respect to KRW 6,250,000 applied from January 1, 2003, with respect to KRW 6,250,000 applied from January 1, 2004, with respect to KRW 6,250,000 applied from January 1, 2005, with respect to KRW 6,250,000 applied from January 1, 2006, with respect to KRW 6,250,000 applied from January 1, 2007, with respect to KRW 6,250,000 applied from January 1, 2008, with respect to KRW 6,250,000

applied from January 1, 2009, with respect to KRW 6,251,000 applied from January 1, 2010, at the rate of 6% per annum until the date on which a duplicate of this Complaint is served, and at the rate of 20% per annum from the date immediately following the date on which a duplicate of this Complaint is served until the date on which full payment is made by the Defendants;

**D.** Pay to Plaintiff Sharp Roxy Appliances Corporation (M) Sdn. Bhd. the amount of KRW 100,001,000 plus annual interest with respect to KRW 6,250,000 applied from January 1, 1995, with respect to KRW 6,250,000 applied from January 1, 1996, with respect to KRW 6,250,000 applied from January 1, 1997, with respect to KRW 6,250,000 applied from January 1, 1998, with respect to KRW 6,250,000 applied from January 1, 1999, with respect to KRW 6,250,000 applied from January 1, 2000, with respect to KRW 6,250,000 applied from January 1, 2001, with respect to KRW 6,250,000 applied from January 1, 2002, with respect to KRW 6,250,000 applied from January 1, 2003, with respect to KRW 6,250,000 applied from January 1, 2004, with respect to KRW 6,250,000 applied from January 1, 2005, with respect to KRW 6,250,000 applied from January 1, 2006, with respect to KRW 6,250,000 applied from January 1, 2007, with respect to KRW 6,250,000 applied from January 1, 2008, with respect to KRW 6,250,000 applied from January 1, 2009, with respect to KRW 6,251,000 applied from January 1, 2010, at the rate of 6% per annum until the date on which a duplicate of this Complaint is served, and at the rate of 20% per annum from the date immediately following the date on which a duplicate of this Complaint is served until the date on which full payment is made by the Defendants;

**E.** Pay to Plaintiff P.T. Sharp Electronics Indonesia the amount of KRW

100,001,000 plus annual interest with respect to KRW 6,250,000 applied from January 1, 1995, with respect to KRW 6,250,000 applied from January 1, 1996, with respect to KRW 6,250,000 applied from January 1, 1997, with respect to KRW 6,250,000 applied from January 1, 1998, with respect to KRW 6,250,000 applied from January 1, 1999, with respect to KRW 6,250,000 applied from January 1, 2000, with respect to KRW 6,250,000 applied from January 1, 2001, with respect to KRW 6,250,000 applied from January 1, 2002, with respect to KRW 6,250,000 applied from January 1, 2003, with respect to KRW 6,250,000 applied from January 1, 2004, with respect to KRW 6,250,000 applied from January 1, 2005, with respect to KRW 6,250,000 applied from January 1, 2006, with respect to KRW 6,250,000 applied from January 1, 2007, with respect to KRW 6,250,000 applied from January 1, 2008, with respect to KRW 6,250,000 applied from January 1, 2009, with respect to KRW 6,251,000 applied from January 1, 2010, at the rate of 6% per annum until the date on which a duplicate of this Complaint is served, and at the rate of 20% per annum from the date immediately following the date on which a duplicate of this Complaint is served until the date on which full payment is made by the Defendants;

F.   Pay to Plaintiff Sharp Manufacturing (Thailand) Co., Ltd. the amount of KRW 100,001,000 plus annual interest with respect to KRW 6,250,000 applied from January 1, 1995, with respect to KRW 6,250,000 applied from January 1, 1996, with respect to KRW 6,250,000 applied from January 1, 1997, with respect to KRW 6,250,000 applied from January 1, 1998, with respect to KRW 6,250,000 applied from January 1, 1999, with respect to KRW 6,250,000 applied from January 1, 2000, with respect to KRW 6,250,000 applied from January 1, 2001, with respect to KRW 6,250,000 applied from January 1, 2002, with respect to KRW 6,250,000 applied from January 1, 2003, with respect to KRW 6,250,000

applied from January 1, 2004, with respect to KRW 6,250,000 applied from January 1, 2005, with respect to KRW 6,250,000 applied from January 1, 2006, with respect to KRW 6,250,000 applied from January 1, 2007, with respect to KRW 6,250,000 applied from January 1, 2008, with respect to KRW 6,250,000 applied from January 1, 2009, with respect to KRW 6,251,000 applied from January 1, 2010, at the rate of 6% per annum until the date on which a duplicate of this Complaint is served, and at the rate of 20% per annum from the date immediately following the date on which a duplicate of this Complaint is served until the date on which full payment is made by the Defendants;

G.    Pay to Plaintiff Sharp Thai Co., Ltd. the amount of KRW 100,001,000 plus annual interest with respect to KRW 6,250,000 applied from January 1, 1995, with respect to KRW 6,250,000 applied from January 1, 1996, with respect to KRW 6,250,000 applied from January 1, 1997, with respect to KRW 6,250,000 applied from January 1, 1998, with respect to KRW 6,250,000 applied from January 1, 1999, with respect to KRW 6,250,000 applied from January 1, 2000, with respect to KRW 6,250,000 applied from January 1, 2001, with respect to KRW 6,250,000 applied from January 1, 2002, with respect to KRW 6,250,000 applied from January 1, 2003, with respect to KRW 6,250,000 applied from January 1, 2004, with respect to KRW 6,250,000 applied from January 1, 2005, with respect to KRW 6,250,000 applied from January 1, 2006, with respect to KRW 6,250,000 applied from January 1, 2007, with respect to KRW 6,250,000 applied from January 1, 2008, with respect to KRW 6,250,000 applied from January 1, 2009, with respect to KRW 6,251,000 applied from January 1, 2010, at the rate of 6% per annum until the date on which a duplicate of this Complaint is served, and at the rate of 20% per annum from the date immediately following the date on which a duplicate of this Complaint is

served until the date on which full payment is made by the Defendants;

**H.**   Pay to Plaintiff Nanjing Sharp Electronics Co., Ltd. the amount of KRW 100,001,000 plus annual interest with respect to KRW 6,250,000 applied from January 1, 1995, with respect to KRW 6,250,000 applied from January 1, 1996, with respect to KRW 6,250,000 applied from January 1, 1997, with respect to KRW 6,250,000 applied from January 1, 1998, with respect to KRW 6,250,000 applied from January 1, 1999, with respect to KRW 6,250,000 applied from January 1, 2000, with respect to KRW 6,250,000 applied from January 1, 2001, with respect to KRW 6,250,000 applied from January 1, 2002, with respect to KRW 6,250,000 applied from January 1, 2003, with respect to KRW 6,250,000 applied from January 1, 2004, with respect to KRW 6,250,000 applied from January 1, 2005, with respect to KRW 6,250,000 applied from January 1, 2006, with respect to KRW 6,250,000 applied from January 1, 2007, with respect to KRW 6,250,000 applied from January 1, 2008, with respect to KRW 6,250,000 applied from January 1, 2009, with respect to KRW 6,251,000 applied from January 1, 2010, at the rate of 6% per annum until the date on which a duplicate of this Complaint is served, and at the rate of 20% per annum from the date immediately following the date on which a duplicate of this Complaint is served until the date on which full payment is made by the Defendants;

**I.**   Pay to Plaintiff Sharp India Ltd. the amount of KRW 100,001,000 plus annual interest with respect to KRW 6,250,000 applied from January 1, 1995, with respect to KRW 6,250,000 applied from January 1, 1996, with respect to KRW 6,250,000 applied from January 1, 1997, with respect to KRW 6,250,000 applied from January 1, 1998, with respect to KRW 6,250,000 applied from January 1, 1999, with respect to KRW 6,250,000 applied from January 1, 2000,

with respect to KRW 6,250,000 applied from January 1, 2001, with respect to KRW 6,250,000 applied from January 1, 2002, with respect to KRW 6,250,000 applied from January 1, 2003, with respect to KRW 6,250,000 applied from January 1, 2004, with respect to KRW 6,250,000 applied from January 1, 2005, with respect to KRW 6,250,000 applied from January 1, 2006, with respect to KRW 6,250,000 applied from January 1, 2007, with respect to KRW 6,250,000 applied from January 1, 2008, with respect to KRW 6,250,000 applied from January 1, 2009, with respect to KRW 6,251,000 applied from January 1, 2010, at the rate of 6% per annum until the date on which a duplicate of this Complaint is served, and at the rate of 20% per annum from the date immediately following the date on which a duplicate of this Complaint is served until the date on which full payment is made by the Defendants; and

J.   Pay to Plaintiff Sharp (Phils.) Corporation the amount of KRW 100,001,000 plus annual interest with respect to KRW 6,250,000 applied from January 1, 1995, with respect to KRW 6,250,000 applied from January 1, 1996, with respect to KRW 6,250,000 applied from January 1, 1997, with respect to KRW 6,250,000 applied from January 1, 1998, with respect to KRW 6,250,000 applied from January 1, 1999, with respect to KRW 6,250,000 applied from January 1, 2000, with respect to KRW 6,250,000 applied from January 1, 2001, with respect to KRW 6,250,000 applied from January 1, 2002, with respect to KRW 6,250,000 applied from January 1, 2003, with respect to KRW 6,250,000 applied from January 1, 2004, with respect to KRW 6,250,000 applied from January 1, 2005, with respect to KRW 6,250,000 applied from January 1, 2006, with respect to KRW 6,250,000 applied from January 1, 2007, with respect to KRW 6,250,000 applied from January 1, 2008, with respect to KRW 6,250,000 applied from January 1, 2009, with respect to KRW 6,251,000 applied from

January 1, 2010, at the rate of 6% per annum until the date on which a
duplicate of this Complaint is served, and at the rate of 20% per annum from
the date immediately following the date on which a duplicate of this Complaint
is served until the date on which full payment is made by the Defendants.

2. Any and all costs of this court action shall be borne by the Defendants.

3. The remedy mentioned in Paragraph 1 above may be provisionally executed.

## Cause of Claim

1. <u>**Status of the Parties**</u>

The Plaintiff Sharp Corporation ("SC"), a company located in Japan, was engaged in
the business of manufacturing and selling color televisions that include cathode ray tube
("CRT") as essential components ("CRT TVs"), while all of the other Plaintiffs are
overseas manufacturing affiliates or procurement affiliates of SC.  SC's overseas
manufacturing affiliates manufactures CRT TVs and sells CRT TVs in various other
countries, and SC also procures CRT TV parts for its affiliates on a worldwide basis, and
negotiates prices for parts on behalf of its affiliates.[1]

The Plaintiffs have never manufactured CRTs, but rather purchased CRTs from
Defendants for use in CRT TVs it manufactured and sold..   We understand that
Defendant Samsung SDI Co., Ltd. ("Samsung SDI"), Defendant Samsung SDI
(Malaysia) Sdn. Bhd., Defendant Samsung SDI (HK) Ltd., Defendant Shenzhen

---

[1] Sharp Electronics (Malaysia) Sdn. Bhd. ("SEM") is a procurement center and procures C
RTs for Sharp's manufacturing affiliates in Asia.

Samsung SDI Co., Ltd. and Defendant Tianjin Samsung SDI Co., Ltd. are affiliated companies.   We understand that Defendant LG Philips Display Co., Ltd. ("LPD"), Defendant PT LG Philips Displays Indonesia, Defendant LG. Philips Displays (Singapore) Pte. Ltd., Defendant LG.Philips (Shuguang) Displays and Defendant Meridian Solar & Display Co. are affiliated companies.

For reference, a CRT has three components: (a) one or more electron guns, each of which is a series of metallic structures used to generate a beam of electrons; (b) a magnetic or other deflection system used to aim the electron beam; and (c) a phosphor-coated glass faceplate that phosphoresces when struck by an electron beam, thereby producing a viewable image.   CRTs can be subdivided into color picture tubes ("CPTs") and color display tubes ("CDTs").   CPTs are used primarily in televisions and related devices and CDTs are primarily used in computer monitors and similar devices.

## 2.   **Defendants' Illegal Collusive Conduct**

### A.  Relationship between the Parties

As mentioned above, the Plaintiffs have engaged in the business of manufacturing and selling CRT TVs, and have purchased CRTs from Defendants.   We will later provide specific details relating to such transactions.

### B.  Overview of "Glass meetings"

Defendants sold CRTs to the Plaintiffs at prices equal to or greater than the minimum fixed target price and price guidelines that were determined and agreed to during CRT

competitor[2] meetings, the "Glass meeting".   These meetings were both multilateral and bilateral and formal and informal in nature.   As a result of these agreements, Defendants gained anticompetitive profits from sales of CRTs to the Plaintiffs and caused enormous damage to the Plaintiffs.

For the purpose of forming and carrying out the combination and conspiracy, the CRT manufacturers did those things that they combined and conspired to do, including, among other things: (a) attended meetings and engaged in conversations and communications in Taiwan, Korea, Malaysia, China, Thailand, Indonesia, and elsewhere to discuss the prices of CRTs; (b) agreed during those meetings, conversations, and communications to charge prices of CRTs at certain target levels or ranges; (c) exchanged CRT pricing information for the purpose of implementing, monitoring, and enforcing adherence to the agreed-upon prices; (d) authorized and approved the participation of subordinate employees in the conspiracy; (e) issued price quotations in accordance with the agreements reached; and (f) took steps to conceal the conspiracy and conspiratorial contacts through various means.

Specifically, Samsung SDI, LPD and MTPD jointly organized formal multilateral meetings sometimes referred to and known as the "CPT meetings" throughout the period from 1995 to 2010, at which meetings they agreed on the quarterly minimum target price for CRTs to be supplied to CRT TV manufacturers including the SC affiliated companies.

These "CPT meetings" were held each month and were attended by personnel responsible for marketing and sales at Samsung SDI, LPD and MTPD, such as the head

---

[2]  We understand that these CRT competitors were Chunghwa Entities, Daewoo Entities, Hitachi Entities, Irico Entities, Panasonic Entities, Samtel, Tatung Company of America, Inc, Thai CRT, Toshiba Entities,, MT Picture Display Co., Ltd. ("MTPD"), etc, including Defendants.

of the sales team or department.   The minimum target price for CRTs was determined on a quarterly basis.   Once the minimum target price was determined for the next quarter, Samsung SDI and LPD notified their affiliates of the minimum target price, and all members of the CPT meetings and their affiliates adhered to such agreement and sold all of their CRTs at prices equal to or greater than the target price to CRT TV manufacturers and their overseas manufacturing affiliates during the following quarter.

Due to such price-fixing by the Defendants, competition was severely restricted in the CRT market, and CRT TV manufacturers, including the Plaintiffs, had to purchase CRTs at higher prices established through Defendants' price-fixing.

The KFTC is currently investigating the illegal collusive conduct of the Defendants, and is expected to render a decision soon after it issues its Statement of Objection.   Thus, the Plaintiffs intend to later demonstrate the Defendants' illegal collusive conduct in more detail by obtaining documents evidencing such conduct from the KFTC through document request procedures.

## C.  JFTC Investigation

In October 2009, the Japanese Fair Trade Commission (JFTC) issued a corrective order and imposed a surcharge for illegal collusive conduct against the Defendants.   The JFTC determined that the Defendants had committed illegal collusive conduct by holding the "CPT meetings" at which the minimum target prices were established.

Specifically, the JFTC issued a corrective order and imposed a surcharge[3] on the

---

[3] Specifically, the JFTC issued a corrective order to MTPD and Samsung SDI, and imposed a

grounds that Samsung SDI, LPD, and MTPD had engaged in the collusive act of unfairly restricting competition by holding the "CPT meeting" each month from May 22, 2003 at the latest relating to CRTs sold to Japanese CRT TV manufacturers, including the Plaintiffs, for purposes of setting the minimum target price on a quarterly basis, and selling CRTs to Japanese CRT TV manufacturers and their foreign manufacturing subsidiaries based on such pricing in the following quarter. (See Exhibit A-1, 2)

### D. U.S. DOJ Investigation

In November 2007, the United States Department of Justice ("U.S. DOJ") served grand jury subpoenas on various CRT manufacturers including Samsung SDI and LPD. On February 10, 2009, the U.S. DOJ indicted Chunghwa's former Chairman and Chief Executive Officer, Cheng Yuan Lin, for his participation in global conspiracies to fix prices of two types of CRTs, CDTs and CPTs.[4]  (See Exhibit B-1, 2)

### E. EC Investigation

In early November 2007, the EC's investigation into price-fixing in the CRT industry became public after it inspected the offices of various CRT manufacturers.   After the inspections, the EC announced that it had reason to believe that certain CRT manufacturers may have colluded in fixing prices of CRTs.

---

surcharge of 650,830,000 Yen on MT Picture Display (Malaysia) Sdn. Bhd., 580,270,000 Yen on PT. MT Picture Display Indonesia, 566,140,000 Yen on MT Picture Display (Thailand) Co., Ltd., 1,373,620,000 Yen on Samsung SDI (Malaysia) Sdn. Bhd. and 151,380,000 Yen on LPD.

[4] Mr. Lin also was indicted for his participation in the conspiracy to suppress and eliminate competition by fixing the prices of TFT-LCD panels.   In the TFT-LCD conspiracy, Chunghwa pled guilty along with several of its officers.

On November 26, 2009, the EC sent a Statement of Objections (also referred to as a "charge sheet"), to several companies for their alleged participation in the CRT cartel. The EC charges stemmed from inspections carried out at the premises of some manufacturers of CRTs including MTPD and Samsung SDI. While the EC did not identify the companies involved.

**3.   Liability for Damages Arising from Defendants' Illegal Conduct**

As discussed in Paragraph 2. above, Defendants together with other CRT manufacturers agreed to the establishment of certain minimum target prices with respect to CRTs which were sold to Plaintiffs at such prices. Such conduct is a violation of Article 19(1) of the Monopoly Regulation and Fair Trade Act of Korea (the "MRFTA").

Based on such violation of the MRFTA, Plaintiffs assert that they suffered damages by purchasing CRTs at unreasonably high prices formed as a result of the price-fixing among Defendants. Therefore, Defendants are jointly and severally liable to Plaintiffs for the damages arising from such unlawful act.

**4.   Damages Caused by Defendants' Illegal Conduct**

**A. Calculation of Damages**

The amount of damages sustained by the Plaintiffs as a result of Defendants' price-fixing conduct in violation of the MRFTA is equal to such portion of the total amount paid by the Plaintiffs to the Defendants for CRT purchases made during the relevant period which represents the price increase of CRTs compared to the price which would

have been formed had the Defendants not engaged in price-fixing (i.e., the price resulting from price-fixing minus the price which would have been formed had there been no price-fixing).

However, a more accurate damages amount will be presented based on the damages appraisal to be later conducted and through other means.

## B. Partial Claim and Subsequent Claim Amount Increase

For the reasons stated above, since the Plaintiffs suffered damages resulting from the Defendants' illegal collusive conduct, Defendants are obligated to compensate Plaintiffs for all damages caused by such conduct.

However, since an appraisal by the court is essential in determining the damage amount for damages claims resulting from a violation of the MRFTA as in the present case, Plaintiffs, for now, claim as damages only a part of the principal amount of the economic damage to Plaintiffs and a part of the delay damages on the assumption that the claim amount will be increased based on the results of the damages appraisal.

In other words, Plaintiffs' claim represents the exercise of Plaintiffs' right to claim damages in their entirety.   We would like to reemphasize that the Plaintiffs intend to increase the claim amount by amending this complaint based on the results of the appraisal to be conducted by the court and *etc*.   We wish to note that the Supreme Court of Korea held that "since a physical examination by the court is customarily required to conclusively determine the amount of damages in a case seeking compensation for bodily damage, if the complaint expressly indicates that the claim amount will be increased based on the results of such examination, the effect of interrupting the running of the

statute of limitations period as a result of the claim having been filed will extend not only
to the claim amount specified in the Complaint but also to the right to claim damages in
their entirety". (Supreme Court Judgment 91Da43695 dated April 10, 1992.)   The
Supreme Court has continued to uphold this decision since it was first issued. (Supreme
Court Judgments 99Da72521 dated September 28, 2001, and 2005Da60017, 60024 dated
January 26, 2006 *etc.*)

## 5.   International Jurisdiction of Korean Courts

While the relationship among the Plaintiffs and the Defendants, including their
overseas affiliates, includes a foreign aspect, the issues at hand are substantively related
to the Republic of Korea, and thus, a Korean court has international jurisdiction over this
case.

Although certain affiliated companies of the Defendants are involved in this case, the
primary Defendants are Samsung SDI and LPD, and as the principal office of each is
located in Korea, and based on domiciliary jurisdiction, Korean courts have international
jurisdiction (Private International Law of Korea Article 2(2)) over this case.   Moreover,
considering the relationship among the Defendants, the Defendants would be in a better
position to defend against any actions brought against them in Korea, where they
maintain their principal offices, and it is more likely that an action initiated in Korea will
allow the parties to resolve all issues in a single suit.

Taking into consideration all relevant factors such as domiciliary jurisdiction, proper
venue, fairness, and litigation efficiency, it may be concluded that a Korean court has
international jurisdiction over this case.

6. <u>**Conclusion**</u>

In light of the foregoing, it is clear that the Defendants are jointly and severally liable for damages to the Plaintiffs.

## Supporting Evidence

| | | |
|---|---|---|
| 1. Exhibit A-1 | JFTC Press Release | |
| 1. Exhibit A-2 | JFTC Press Release translation | |
| 1. Exhibit B-1 | U.S. DOJ Indictment | |
| 1. Exhibit B-2 | U.S. DOJ Indictment translation | |

## Attachments

| | |
|---|---|
| 1. Duplicate of Complaint | 1 copy each |
| 1. Supporting Evidence | 1 copy each |
| 1. Power of Attorney | 1 copy each |
| 1. Appointment of Counsel | 1 copy |
| 1. Certificate of Good Standing | 1 copy each |
| 1. Payment Receipt | 1 copy |

November      , 2010

Counsel for Plaintiff

Bae, Kim & Lee LLC

Attorney        Keum Seok Oh

| Attorney | Tony Dong Wook Kang |
|----------|---------------------|
| Attorney | Seong Un Yun |
| Attorney | Jung Hun Kim |
| Attorney | Seon Ho Kim |
| Attorney | Jin Hoon Gim |

**To Suwon District Court**

# EXHIBIT B



함께하는 공정사회! 더 큰 희망 대한민국

# 공정거래위원회

수신자 삼성 SDI (주)의 대리인 법무법인 에이펙스
(경유)
제목 사건 조치내용 통지

---

사건 번호 : 2010국카2368

사건명 : 6개 컬러 TV용 브라운관 제조 사업자의 부당한 공동행위에 대한 건

위 건에 대해 「공정거래위원회 회의운영 및 사건처리절차 등에 관한 규칙」(공정거래위원회 고시 제2011-8호, 2011.9.7.) 제47조에 따라 무혐의조치 하였음을 알려드립니다. 끝.

공정거래위원회

행정사무관 이정원 과장 전결 11/29 윤수현

협조자

시행 국제카르텔과-391 (2011. 11. 29.) 접수
우 137-966 서울시 서초구 반포대로 217번지 공정거래위원회 / www.ftc.go.kr
전화 02-2023-4474 전송 02-2023-4477 / smarta23@korea.kr / 비공개(7)

**G E O T E X T**
Translations, inc.

STATE OF NEW YORK       )
                        )
                        )   ss
COUNTY OF NEW YORK      )

## CERTIFICATION

This is to certify that the attached translation is, to the best of my knowledge and belief, a true

and accurate translation from Korean into English of the attached Decision of the Korea Fair

Trade Commission in Case Number 2010GookKa2368.

Ken Hetzel, Project Manager
Geotext Translations, Inc.

Sworn to and subscribed before me

this 21⁵ᵗ day of August, 20 12

KRISTEN DUFFY
NOTARY PUBLIC-STATE OF NEW YORK
No. 01DU6121852
Qualified in Queens County
My Commission Expires January 31, 2013

New York  259 West 30th Street, 17th Floor, New York, NY 10001, U.S.A. tel +1.212.631.7432 fax +1.212.631.7778
San Francisco  220 Montgomery Street Ste. 438, San Francisco CA 94104 U.S.A tel +1.415.576.9500 fax +1.415.520.0525
Washington 1025 Connecticut Avenue, Suite 1000, Washington, DC 20036, U.S.A. Tel +1.202.828.1267 Fax +1.202.828.1271
London  8-11 St. John's Lane, London EC1M 4BF, United Kingdom Tel +44.20.7553.4100 Fax+44.20.7990.9909
Paris 75 Boulevard Haussmann, F- 75008 Paris, France tel +33.1.42.68.51.47 fax +33.1.77.72.90.25
Hong Kong  20th Floor, Central Tower, 28 Queen's Road, Central, Hong Kong tel +852.2159.9143 fax +852.3010.0082
translations@geotext.com | www.geotext.com

TRANSLATION

 Pursuing Fair Society Together! Evermore hope for Republic of Korea

Korea Fair Trade Commission        **Korea Fair Trade Commission**

| | |
|---|---|
| Recipient (Via) | Apex Company, agent for Samsung SDI Ltd. Co. |
| Subject | Notice of decision regarding the case |

Case Number : 2010GookKa2368

Case Title : Improper joint actions by six color TV CRT manufacturers

    This is to notify that the above case was dismissed as it is clear of suspicion pursuant to Article 47 of the Rules on Korea Fair Trade Commission's Conduct of Meetings and Case Resolution Procedures (Fair Trade Commission Notice 2011-8, 2011.9.7).  End.

**Korea Fair Trade Commission** [seal:] Korea Fair Trade Commission

Arbitrary Decision 11/29

Administrative staff  Lee Jung-won    Manager   Yoon Soo-hyun

Cooperating person
Implementation International Cartel Department-391      (2011. 11. 29.)       Filed
Postal Code  137-966  Seoul Seochogu Banpodaero 217,  Fair Trade Commission    / www.ftc.go.kr
Phone 02-2023-4474    Fax  02-2023-4477     / smarta23@korea.kr        / Not publicly disclosed (7)

# EXHIBIT C

CIVIL PROCEDURE ACT

# CIVIL PROCEDURE ACT

Wholly Amended by Act No. 6626, Jan. 26, 2002
Amended by Act No. 7427, Mar. 31, 2005
Act No. 7428, Mar. 31, 2005
Act No. 7849, Feb. 21, 2006
Act No. 8438, May 17, 2007
Act No. 8499, Jul. 13, 2007
Act No. 9171, Dec. 26, 2008

## PART I   GENERAL PROVISIONS

Article 1 (Ideal of Civil Procedure and Principle of Sincerity and Faithfulness)

(1) A court shall endeavor to have the litigation procedures progress fairly, swiftly and economically.

(2) The concerned parties and participants of litigation shall perform the litigation sincerely and faithfully.

## CHAPTER I   COURTS

### SECTION 1  Jurisdiction

Article 2 (General Forum)

A lawsuit is subject to the jurisdiction of a court at the place where a defendant's general forum is located.

Article 3 (General Forum of Person)

General forum of a person shall be determined by his domicile: *Provided,* That in cases where he has no domicile in the Republic of Korea or his domicile is unknown, it shall be determined pursuant to his residence, and if his residence is unfixed or unknown, it shall be determined pursuant to his last domicile.

Article 4 (General Forum of Ambassador or Minister, etc.)

In cases where an ambassador, a minister and other citizens of the Republic of Korea who are exempted from an exercise of foreign jurisdic-

CIVIL PROCEDURE ACT

the court shall prepare a protocol or other documents pursuant to the purport of motions or statements, and then sign and seal thereon.

Article 162 (Request for Perusal of Litigation Record, and for Delivery of Certificates)

(1) A party or a third person vindicating the interests may, as prescribed by the Supreme Court Regulations, file a request with a junior administrative officer, etc. of a court for a perusal and copying of litigation records, and delivery of the authentic copy, a certified copy or an abridged copy of the judicial documents or protocol, or delivery of a certificate of matters related to the litigation.

(2) Anyone may apply for a perusal of litigation records of the final and conclusive judgement for the purpose of relief of right, academic research or public interest to a junior administrative officer, etc. of the court as prescribed by the Supreme Court Regulations: *Provided*, That to the litigation records concerning oral proceedings that have been prohibited from opening to the public, this shall not apply. *<Newly Inserted by Act No. 8438, May 17, 2007>*

(3) In cases where the relevant interested parties to the litigation do not agree, the court shall not allow perusal in the case of an application for perusal under paragraph (2). In this case, matters necessary for the extent of interested parties to litigation, agreement, etc. shall be prescribed by the Supreme Court Regulations. *<Newly Inserted by Act No. 8438, May 17, 2007>*

(4) Those who have perused or copied litigation records shall not injure public order or good public morals, nor harm reputation or quiet life of the interested parties by utilizing the matters that they came to know by perusal or copying. *<Newly Inserted by Act No. 8438, May 17, 2007>*

(5) For the request under paragraphs (1) and (2), one shall pay the fees as prescribed by the Supreme Court Regulations. *<Amended by Act No. 8438, May 17, 2007>*

(6) The authentic copy, a certified copy or an abridged copy of the judicial documents or protocol shall contain their purports, and a junior administrative officer, etc. of the court shall sign and seal thereon.

Article 163 (Restriction on Perusal, etc. for Protection of Secrets)

(1) In cases where there exists a vindication that it falls under any of the following subparagraphs, the court may limit the parties by its ruling,

CIVIL PROCEDURE ACT

upon their motion, to the persons eligible to file a request for perusal or copying of the portions containing any secrets from among the litigation records, or for delivery of the authentic copy, a certified copy or an abridged copy of the portions containing any secrets from among the judicial documents or protocol (hereinafter referred to as the "perusal, etc. of the portions containing secrets"):

1. When any grave secrets concerning the party's private life are entered in the litigation records, and if the perusal, etc. of the portions containing secrets is allowed to a third party, there exists a concern about causing a great impediment to the party's social life; and

2. When any business secrets of the party (referring to the trade secrets as stipulated in subparagraph 2 of Article 2 of the Unfair Competition Prevention and Trade Secret Protection Act) are entered in the litigation records.

(2) In cases where there exists a request under paragraph (1), no third party may apply for a perusal, etc. of the portions containing secrets not later than the time when the judgment on such request becomes final and conclusive.

(3) The court keeping the litigation records may, upon request of a third party vindicating interests, revoke the ruling under paragraph (1) on the ground that there exists no cause falling under any subparagraph of paragraph (1), or such a cause has been extinguished.

(4) An immediate appeal may be made against the ruling rejecting a request under paragraph (1), or against the ruling as to a request under paragraph (3).

(5) The ruling of revocation under paragraph (3) shall take effect only when it becomes final and conclusive.

Article 164 (Objection against Protocol)

When the concerned persons have raised any objection against matters entered in a protocol, the purports thereof shall be entered in the protocol.

## SECTION 2   Specialized Examination Commissioner

Article 164-2 (Participation of Specialized Examination Commissioner)

(1) In order to make litigation relations clear or to proceed litigation procedures (including investigation of evidence, reconciliation, etc.; hereafter

35

CIVIL PROCEDURE ACT

judgment.

Article 199 (Period of Pronouncing Final Judgment)

Judgment shall be pronounced within five months from the date on which a lawsuit has been filed: *Provided,* That in an appellate trial and in a trial on an appeal to the Supreme Court, it shall be made within five months from the date on which the record of proceedings has been received.

Article 200 (Partial Judgment)

(1) A court may, where it has completed a trial on part of a lawsuit, render a final judgment on such part.

(2) The provisions of paragraph (1) shall apply *mutatis mutandis* to the cases where a trial is completed on one of several lawsuits whose pleadings have been combined, and where a trial on a principal lawsuit or a counter lawsuit is completed.

Article 201 (Interlocutory Judgment)

(1) A court may, if a trial on the means of an independent offence or defence or on any other intermediate contests is conducted, render an interlocutory judgment.

(2) In case where there exists a contest for the cause and amount of claim, an interlocutory judgment may be rendered even on such cause.

Article 202 (Principle of Free Evaluation of Evidence)

A court shall determine, by its free conviction, whether or not an allegation of facts is true, taking account of the whole purport of pleadings and the results of examination of evidence, on the basis of the ideology of social justice and equity in accordance with the principles of logic and experiences.

Article 203 (Principle of Disposition)

A court shall not render any judgment on matters which have not been claimed by the parties.

Article 204 (Principle of Directness)

(1) Judgment shall be made by the judges who have taken part in the pleadings forming a foundation thereof.

(2) In case where a judge has been replaced, the parties shall make a statement on the result of previous pleadings.

(3) In case where a judge in the single-judge case has been replaced, the court shall, if a party has again made a motion for examination of the witnesses who have been formerly questioned, execute such examination.

44

CIVIL PROCEDURE ACT

thereof may be made even before the date for pleadings.

Article 290 (Adoption or Rejection of Application for Examination of Evidence)

A court may not, if it has deemed that the evidences applied by a party for examination are unnecessary, investigate them: *Provided*, That the same shall not apply when it is the sole evidence for the party's alleged facts.

Article 291 (Impediment in Examination of Evidence)

A court may, in case where it is unknown whether an examination of evidence is conductible or when it is conductible, dispense with an examination thereof.

Article 292 (*Ex Officio* Examination of Evidence)

A court may, if it fails to obtain a conviction by the evidence offered by parties, or otherwise deems it necessary, conduct *ex officio* an examination of evidence.

Article 293 (Concentration of Examination of Evidence)

An examination of witnesses and parties shall be convergently performed after the allegations and evidences of the parties have been adjusted.

Article 294 (Entrustment of Examination)

A court may entrust a public agency, school or other organization and individual, or a foreign public agency with the examination required for matters belonging to its functions, or with the forwarding of a certified copy or a copy of documents kept by it.

Article 295 (Examination of Evidence under Non-Appearance of Party)

Any examination of evidence may be undertaken even if a party fails to appear on the designated date.

Article 296 (Examination of Evidence in Foreign Country)

(1) Any examination of evidence to be undertaken in a foreign country shall be entrusted to the Korean ambassador, minister or consul stationed in that country or to a competent public agency of that country.

(2) Any examination of evidence undertaken in a foreign country shall, even if it is contrary to the laws of that country, be valid unless it is contrary to this Act.

Article 297 (Examination of Evidence Outside Court)

(1) A court may, if deemed necessary, undertake an examination of evidence outside the court. In this case, it may order a member of the col-

65

CIVIL PROCEDURE ACT

(2) When facing with any resistance in the case of paragraph (1), the expert witness may request national police officials to provide an assistance. <Amended by Act No. 7849, Feb. 21, 2006>

## SECTION 4   Documentary Evidence

Article 343 (Method of Offering Documentary Evidence)

When a party intends to offer any documentary evidence, he shall do so by a method of submitting the document, or by filing a request for an order to make the person holding the document submit it.

Article 344 (Obligation to Submit Document)

(1) In the cases falling under any of the following subparagraphs, the holder of a document shall not refuse to submit it:

1. When the party holds the document quoted in a lawsuit;

2. When the applicant holds a judicial right to ask the holder of the document to transfer or show it to him; and

3. When the document has been prepared for the benefit of the applicant, or prepared as to a legal relationship between the applicant and the holder of document: *Provided,* That the same shall not apply to the case falling under any one of the following causes:

   (a) A document in which matters listed in Articles 304 through 306 are entered, and for which a consent stipulated in the same Articles has not been obtained;

   (b) A document in which matters listed in Article 314 are entered as to the person holding the document or a person in any such relation with him as falling under any subparagraph of the same Article; and

   (c) A document in which matters stipulated in anyone among those listed in each subparagraph of Article 315 (1) are entered, and for which an obligation to keep secrets has not been exempted.

(2) Even except for the case of paragraph (1), in case where the document (excluding the document kept or held by a public official or ex-public official in connection with his duties) does not fall under any one of the following subparagraphs, the person holding the document shall not refuse to submit it:

1. A document listed in paragraph (1) 3 (b) and (c); and

74

CIVIL PROCEDURE ACT

　2. A document for the exclusive use by its holder.

Article 345 (Method of Requesting Submission of Document)

　A request for submission of a document shall clarify matters falling under each of the following subparagraphs:

　　1. Indication of the document;

　　2. Purport of the document;

　　3. Holder of the document;

　　4. Facts to be proved; and

　　5. Causes of an obligation to submit the document.

Article 346 (Submission of Document's Catalogue)

　A court may, if deemed necessary for a request under Article 345, and pursuant to a request by the party that has generally indicated the purport of documents subject to such a request or the facts to be proved by such documents, order the other party to submit a written statement of the indication and purport concerning the documents held by him in relation to the contents of request or those to be submitted as a documentary evidence in relation to the contents of request.

Article 347 (Judgment on Whether or not to Admit Request for Submission of Document)

　(1) A court may, if deemed that a request for submission of documents is justifiable, order the holder of documents to submit them, by its ruling.

　(2) If deemed that a request for submission of documents is well-grounded only as to a part of such documents, the court shall order to submit such part only.

　(3) In case where a third person is ordered to submit a document, the court shall examine the said person or a person designated by him.

　(4) The court may, if deemed necessary for judging on whether a document corresponds to Article 344, order its holder to produce such document. In this case, the court shall not make such document open to other persons.

Article 348 (Appeal)

　An immediate appeal may be made against the ruling of a request for an order to submit a document.

Article 349 (Effect When Party Fails to Submit Document)

　When a party fails to comply with the order under Article 347 (1), (2) and (4), the court may admit that the allegations of the other party as

75

# EXHIBIT D

Declarations Reservations

Articles: 4,8,16,17,23,33

**Reservations**

1. In accordance with paragraph 2 of Article 4 and Article 33, the Republic of Korea will accept only Letters of Request in Korean or English.
The Government of the Republic of Korea wishes to point out that the execution of Letters of Request which are not accompanied by a translation into Korean will take longer than that of Letters of Request with a Korean translation. The Republic of Korea will accept only Letters of Request in Korean from Contracting States which do not accept Letters of Request in either language referred to in the previous paragraph.

2. In accordance with Article 33, the Republic of Korea excludes the application within its territory of the provisions of Articles 16 and 17 of Chapter II of the Convention.

**Declarations**

1. In accordance with Article 8, the Government of the Republic of Korea declares that members of the judicial personnel of the requesting authority of another Contracting State may be present at the execution of a Letter of Request with prior authorization by the competent authority of the Republic of Korea.

2. In accordance with Article 23, the Government of the Republic of Korea declares that it will not execute Letters of Request issued for the purpose of obtaining pre-trial discovery of documents. The Government of the Republic of Korea further declares that it understands "Letters of Request issued for the purpose of obtaining pre-trial discovery of documents" for the purposes of the foregoing Declaration as including any Letter of Request which requires a person:

    a. to state what documents relevant to the proceedings to which the Letter of Request relates are, or have been, in his or her possession, custody or power; or
    b. to produce any documents other than particular documents specified in the Letter of Request as being documents appearing to the requested court to be, or to be likely to be, in his or her possession, custody or power.