PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

2001 K STREET, NW                      WASHINGTON, DC 20006-1047
TELEPHONE (202) 223-7300

WRITER'S DIRECT DIAL NUMBER
202-223-7356

WRITER'S DIRECT FACSIMILE
202-204-7356

WRITER'S DIRECT E-MAIL ADDRESS
kgallo@paulweiss.com

1285 AVENUE OF THE AMERICAS
NEW YORK, NY 10019-6064
TELEPHONE (212) 373-3000

UNIT 3601, FORTUNE PLAZA OFFICE TOWER A
NO. 7 DONG SANHUAN ZHONGLU
CHAO YANG DISTRICT
BEIJING 100020
PEOPLE'S REPUBLIC OF CHINA
TELEPHONE (86-10) 5828-6300

12TH FLOOR, HONG KONG CLUB BUILDING
3A CHATER ROAD, CENTRAL
HONG KONG
TELEPHONE (852) 2846-0300

ALDER CASTLE
10 NOBLE STREET
LONDON EC2V 7JU, U.K.
TELEPHONE (44 20) 7367 1600

FUKOKU SEIMEI BUILDING
2-2 UCHISAIWAICHO 2-CHOME
CHIYODA-KU, TOKYO 100-0011, JAPAN
TELEPHONE (81-3) 3597-8101

TORONTO-DOMINION CENTRE
77 KING STREET WEST, SUITE 3100
P.O. BOX 226
TORONTO, ONTARIO M5K 1J3
TELEPHONE (416) 504-0520

500 DELAWARE AVENUE, SUITE 200
POST OFFICE BOX 32
WILMINGTON, DE 19899-0032
TELEPHONE (302) 655-4410

September 5, 2012

Hon. Charles A. Legge
JAMS
Two Embarcadero Center
Suite 1500
San Francisco, CA 94111

RE: *In re: Cathode Ray Tube (CRT) Antitrust Litigation*
Master File No. 07-5944 DC; MDL No. 1917
Case No. CV-12-80151 MISC
Sharp Corporation's Opposition to Defendants' Motion to Quash

Your Honor:

           Sharp Corporation ("Sharp") hereby submits its Opposition to Defendants'[1] Motion to Quash Sharp Subpoena ("Motion to Quash"), filed on August 23, 2012, and respectfully requests that the Court deny Defendants' motion.

           Defendants' Motion to Quash concerns Sharp's August 8, 2012 subpoena served on the law firm of Saveri & Saveri, Inc. ("Saveri") (attached hereto as Exhibit A), which this Court authorized in response to Sharp's *Ex Parte* Application of Sharp Corporation For Order Pursuant To 28 U.S.C. § 1782 To Obtain Discovery For Use In A Foreign Proceeding ("1782 Application") (attached hereto as Exhibit B). The subpoena seeks documents for Sharp's use in a Korean lawsuit (the "Korean Litigation"),[2] namely a collection of evidence located in the U.S. that has been gathered from certain of the defendants in the Korean Litigation and from companies that are their co-conspirators and

---

[1]  Sharp uses the same definition of "Defendants" that Defendants use in their Motion to Quash. (Motion to Quash at 1, n.1.)

[2]  Case No. 2010gahap21125 Claim for Damages (gi) filed in Suwon District Court.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Hon. Charles A. Legge                                                                                          2

co-defendants in the *In re Cathode Ray Tube (CRT) Antitrust Litigation* Multidistrict
Litigation proceeding ("U.S. Litigation").  All of the documents and deposition testimony
sought are relevant to the Korean Litigation, since the U.S. litigation and the Korean
Litigation involve the same overarching CRT conspiracy.  This evidence will assist Sharp
in proving the existence of the conspiracy in the Korean Litigation.  As Sharp
demonstrated in its 1782 Application, it is proper for Sharp to use Section 1782 to obtain
documents and deposition testimony from litigation counsel, Saveri, for use in the Korean
Litigation.  Notably, Defendants do not dispute that Sharp's Section 1782 Application
meets the statutory elements for relief.  Defendants' objections based on other
discretionary considerations are meritless.

            Defendants' assertion that Sharp is attempting an "end-run around the
Korean court" is simply wrong.  Defendants have offered no true support for their
assertions that the 1782 Application offends Korean discovery rules or that the Korean
court would be hostile to the evidence obtained by Sharp here.  In reality, the Korean court
has made clear that it is not hostile to Sharp's efforts to obtain evidence through its 1782
Application, and it has allowed Sharp additional time to obtain and submit such evidence.
Declaration of Keum-Seok Oh ("Oh Decl.") ¶ 13.

            Although Defendants are not themselves the recipients of the subpoena,
they nonetheless argue that the subpoena is "unduly burdensome" and "overbroad."  For
the most part, Defendants lack standing to assert these arguments, which Sharp addresses
in its concurrent motion to compel Saveri to respond to the subpoena.  Defendants'
anticipation of prejudice on their own account from needing "to review" these documents
is groundless.

            Finally, Defendants raise the technical concern that production of the
requested documents would not safeguard their confidentiality under this Court's
protective order in the U.S. Litigation.  This fear is unfounded as appropriate safeguards
under both the protective order and Korean procedures will be in place before there is any
use of confidential documents in Korean court.

            For these reasons and those set forth below, Defendants' Motion to Quash
should be denied.

## I.        Factual And Procedural Background

            On November 5, 2010, Sharp filed its lawsuit in Korea, which alleged that
defendants sold cathode ray tubes ("CRTs") to Sharp and its subsidiaries at prices fixed
"during CRT competitor meetings, the 'Glass Meetings', and as a result, the Korean
Litigation Defendants generated revenue from the overcharge on its sales of CRTs to Sharp
and its subsidiaries and causing damages to Sharp and its subsidiaries."  Oh Decl. ¶ 4.
Some but not all of the defendants in the Korean Litigation overlap with the defendants in

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Hon. Charles A. Legge                                                                              3

the U.S. Litigation,[3] and the Korean Litigation concerns the same illegal cartel activity in the manufacture and sale of CRTs that is the subject of the U.S. Litigation.

        Korean courts will issue an order at a litigant's request compelling discovery from an adversary or a third party only if the litigant seeking discovery can establish with exact specificity the documents it seeks; however, the procedure is of little use to Sharp because it would not be able to provide the details required.  Oh Decl. ¶ 10.

        On June 27, 2012, to assist with the Korean Litigation, Sharp Corporation submitted its 1782 Application in the Northern District of California.  (Case 3:12-mc-80151-SC, Dkt. No. 1.)  Sharp's 1782 Application sought leave to subpoena Saveri for documents produced in the U.S. Litigation because Saveri is interim lead counsel for the Direct Purchaser Plaintiff ("DPP") class and because the firm had averred custody of over five million pages of documents produced by defendants and others over the past several years.  Decl. of R. Alexander Saveri in Support of Motion for Class Certification and Settlement Approval ("Saveri Decl.") ¶ 7 (Dkt. No. 1115-1).  At the time Sharp filed the application, it was in the class that Saveri represents.

        On June 28, 2012, at a status conference in the Korean Litigation, Sharp's Korean counsel informed the court that Sharp was seeking discovery from the U.S. Litigation for use in the Korean Litigation.  Oh Decl. ¶ 13.  The Korean court acknowledged Sharp's efforts and stated that it would wait to set a new date in the case until after Sharp had submitted such evidence to it.  *Id.*

        Defendants filed an opposition to the 1782 Application on July 3, 2012 (Case 3:12-mc-80151-SC, Dkt. No. 8).  Saveri followed suit, filing an opposition to the Application on July 5, 2012 (Dkt. No. 1251).  Sharp filed responses to these oppositions on July 5, 2012 and July 9, 2012, respectively (Case 3:12-mc-80151-SC, Dkt. No. 9; Case 3:07-cv-5944-SC, Dkt. No. 1253).  Rejecting Saveri and Defendants' opposition arguments, Special Master Legge granted the application on July 23, 2012 (Case 3:07-cv-5944-SC, Dkt. No. 1269).  Receiving no objections, on August 7, 2012, Judge Conti approved the order (Case 3:07-cv-5944-SC, Dkt. No. 1299).  Provisions in both the 1782 Application and the resulting Order ensure that the confidentiality protections of the Protective Order are extended to the use in Korean court of the documents obtained by subpoena.  1782 Application at 2; Dkt. No. 1299 at 2.

---

[3] The Korean Defendants include Samsung SDI Co., Ltd., Samsung SDI (Malaysia) Sdn Bhd., Samsung SDI (HK) Ltd., Shenzhen Samsung SDI Co., Ltd., and Tianjin Samsung SDI Co., Ltd.,  LG Philips Display Co., Ltd., PT LP Displays Indonesia, LG Philips Displays (Singapore) Pte. Ltd., LG Philips (Shuguang) Displays, and Meridian Solar & Display Co (collectively the "Korean Defendants").  The defendants in the U.S. Litigation include those names in the Direct Purchaser Plaintiffs' Consolidated Amended Complaint filed on March 16, 2009 (Case 3:07-cv-5944-SC, Dkt. 436).

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Hon. Charles A. Legge                                                             4

      Sharp served the subpoena on August 8, 2012.  On August 22, 2012, Saveri served its objections to the subpoena ("Objections") (attached hereto as Exhibit C).  The next day, on August 23, 2012, Defendants filed their Motion to Quash.

## II.    Argument

      This Court has the power to order a person within this district "to produce a document or other thing for use in a proceeding in a foreign or international tribunal."  28 U.S.C. § 1782(a).  Although this power is discretionary, the Supreme Court has identified four factors to consider in determining whether to grant a 1782 application (the "*Intel* factors").  *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004).  Defendants now contend that the *Intel* factors weigh against production of the relevant material.  They are wrong.  Defendants' concern that the subpoena is inconsistent with the goals of 1782 could be no further from the truth.  As demonstrated below, all four *Intel* factors weigh in favor of Sharp.

### A.    Sharp's Subpoena Is Appropriately Directed To Saveri

      The first of the *Intel* factors focuses on "whether the person from whom discovery is sought is a participant in the foreign proceeding."  *Intel*, 542 U.S. at 264.  *Intel* suggests that the need for Section 1782 relief may not be as great where the subpoena recipient is present in the foreign proceeding because it may be possible to obtain the discovery in that proceeding.  *See id.*  This factor cuts in favor of Sharp's application.

      First, the recipient of the subpoena, class counsel Saveri, is not before the Korean court and cannot be subjected to discovery there.  Second, Sharp has a legitimate need for discovery that is otherwise unobtainable in Korea.  Many of the parties that have produced documents here are not part of the Korean litigation and are therefore beyond the reach of the Korean Court.  Third, as set forth more fully below, Sharp cannot obtain discovery in Korea even from the parties that are present both in the U.S. and Korea due to the procedures employed in Korea.  Even if the defendants were the same in both proceedings, the evidence would still be unobtainable absent Section 1782 aid because, as we discuss below, Korean discovery procedures impose requirements that Sharp cannot satisfy at this time.  In short, the only practical way for Sharp to reach this collection of evidence is with an application pursuant to 28 U.S.C. § 1782.

      Defendants claim it is immaterial that Saveri is not a party to the Korean Litigation, because the "real targets" of the subpoena are parties in the Korean Litigation.  Therefore, Defendants argue, Sharp should pursue the Korean Defendants in the Korean court for the documents it seeks.  This argument misses the point.  As noted, Sharp does not have a realistic opportunity to seek discovery from such parties in Korea until and unless it gets discovery here.  Evidence of the existence of the conspiracy also may reside in the files of co-conspirators present here who are not named as defendants in Korea.  Moreover, it would be inefficient to require Sharp serve a different Section 1782 subpoena

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Hon. Charles A. Legge                                                                                    5

on each of the U.S. Litigation's defendants who are also defendants in Korea.  Saveri has in one place the universe of documents that will assist Sharp in its Korean case.

    Whether Sharp could have sought the documents from parties here other than Saveri is irrelevant under Section 1782.  Defendants' reliance on *Schmitz v. Bernstein Liebhard & Lifshitz, LLP* is inapposite because there the defendants in both the foreign and American litigation were identical, and the German government opposed the Section 1782 application.  *See* 376 F.3d 79, 81, 84-85 (2d Cir. 2004).  In contrast, the Korean Defendants do not represent the entirety or even a wholly contained subset of the defendants in the U.S. Litigation.  *See supra* note 3.  And unlike *In re Application of Microsoft Corp.*, where the documents sought in the 1782 application were "within the [European] Commission's reach," the Korean court here cannot compel the discovery Sharp seeks.  *See* 428 F. Supp. 2d 188, 193-94 (S.D.N.Y. 2006); Oh Decl. ¶¶ 9-12

  **B.**  **Defendants Fail To Establish That The Korean Court Would Be Hostile To Evidence Obtained Under 28 U.S.C. §1782 Or That Sharp's Application Circumvents Korean Discovery Rules**

    The second *Intel* factor considers "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance," and the third factor considers whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 264-65; *see In re Premises Located at 840 140th Ave. NE, Bellevue, Wash.*, 634 F.3d 557, 571 (9th Cir. 2011).  Defendants fail to establish that the Korean court would not be receptive to evidence from the U.S. Litigation, or that the production of documents from the U.S. Litigation would circumvent Korean discovery rules.

    **1.**  **The Suwon District Court Is Not Hostile To Evidence From The U.S. Litigation**

    The Korean court has already indicated that it would be receptive to the evidence Sharp's seeks with its Application.  At the June 28, 2012 status conference with the Suwon District Court, Sharp's Korean attorneys "stated to the court that Sharp intends to submit evidentiary documents to the court which were produced through discovery procedures in the U.S. Litigation" and that Sharp is "in the process of acquiring them through U.S. court procedure."  Oh Decl. ¶ 13.  After being informed of Sharp's efforts, the court inquired as to how long the process would take and "when told that it would require a substantial amount of time . . . stated that it would not fix a date for the next hearing until Sharp submits evidence, implying that it would wait until Sharp submitted the evidence it acquired through the U.S. court procedure before moving forward."  *Id.*

    Second, courts have rejected the notion that the discoverability of evidence in the *foreign proceeding* should govern the sufficiency of a Section 1782 application and the subpoena issued thereto.  *See Intel*, 542 U.S. at 260 ("[N]othing in the text of § 1782

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Hon. Charles A. Legge                                                                 6

limits a district court's production-order authority to materials that could be discovered in the foreign jurisdiction if the materials were located there."); *In re Request for Judicial Assistance from the Seoul Dist. Criminal Court*, 555 F.2d 720, 723 (9th Cir. 1977).  A Section 1782 applicant is not required to show exhaustion of discovery methods in the foreign court in order to obtain relief in the U.S. court.  *See In re Application for an Order for Judicial Assistance in a Foreign Proceeding in the Labor Court of Brazil*, 466 F. Supp. 2d 1020, 1031 (N.D. Ill. 2006).  As there are no discoverability or admissibility requirements, "[a]bsent specific directions to the contrary from a foreign forum, the statute's underlying policy should generally prompt district courts to provide some form of discovery assistance."  *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1102 (2d Cir. 1995).  "[C]ourts should only find that the requested material would not be discoverable in the foreign proceeding if the *opponent* of the § 1782 application presents authoritative proof, in the form of judicial, executive or legislative declarations from the forum country that specifically address the use of evidence gathered under foreign procedures."  *In re Gushlak*, Case No. 11-MC-218, 2011 WL 3651268, at *4 (E.D.N.Y. Aug. 17, 2011).  Defendants have failed to meet their burden.

Third, Defendants' arguments concerning the accession language in the Hague Treaty miss the mark.  Article 23 of the Hague Convention only addresses what Korean courts will do when presented with letters rogatory *from abroad*.  Foreign document requests through letters rogatory, directed *to Korean courts for gathering evidence located in Korea* must meet the same rigorous standard to as litigants seeking discovery in domestic Korean litigation.  Oh Decl. ¶ 19.

Here this issue is the opposite, namely, whether the 1782 Application flies in the face of the Korean courts' receptivity to evidence gathered in the United States.  *Compare In re Ex Parte Apple Inc.*, Case No. MISC 12-80013, 2012 WL 1570043, at *2 (N.D. Cal. May 2, 2012) (denying motion to quash § 1782 subpoena where movant only alleged that foreign rules of procedure did not provide a mechanism to obtain such evidence, not that the foreign court would disallow such evidence) *with Microsoft*, 428 F.Supp.2d at 194 (quashing subpoena because "[i]n this case, the [tribunal] has explicitly stated that it opposes the discovery sought by Microsoft and is not receptive to U.S. judicial assistance").  Defendants have not – and cannot – allege that the Korean Court will reject assistance from outside courts.  Defendants' brief ignores Korean law providing that Korean courts are receptive to discovery obtained in a foreign country and have adopted the "principle of free evaluation of evidence."  Korean Code of Civil Procedure Arts. 202, 296; Oh Decl. ¶16.  The Declaration of Deok-Gu Lee does not refute the significance Sharp ascribed to the principle of free evaluation of evidence.

## 2.     Sharp's Section 1782 Application Is Not A Circumvention Of Korean Law

Sharp is not attempting to "circumvent" foreign law.  Litigants have limited ability under Korean discovery rules to petition the court to order discovery.  Only if a litigant can establish with specificity the documents that will contain probative evidence

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Hon. Charles A. Legge                                                          7

will a court order production.  Oh Decl. ¶¶ 9-12.  Defendants cite to Article 345 of the
Korean Civil Procedure Act ("KCPA"), but the Article 345 procedure is of limited use to
Sharp at this time because Sharp does not yet know the specific custodians, locations, and
contents of the documents showing evidence of Defendants' collusive behavior.  *Id.* ¶ 10.
General descriptions of documents or categories of documents that are common in
document requests served under the Federal Rules of Civil Procedure do not suffice under
Korean law.

        Moreover, in this case, the U.S legal process and Korean discovery rules are
not in conflict given that the Korean court is receptive to the evidence obtained through
U.S. discovery.  Judge Posner's opinion in *Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633
F.3d 591 (7th Cir. 2011), illustrates this point.  There, the applicant sought evidence in the
United States that it could not seek through the German legal system.  Heraeus could
request production of the specific contract between Biomet and Merck "concerning
disclosure of bone-cement specifications dated April 4, 2000," but it could not ask for
"production of all emails and notes of 'telephone conversations relating to discussions of
bone-cement ingredients between Biomet and Merck during the years 1997 through
2005.'"  *Id.* at 596.  The Seventh Circuit held that Germany's limited discovery procedures
did not mean the German court would not be receptive to that same discovery if obtained
in the United States, and therefore the 1782 process was appropriate.  *See id.*  The situation
here is analogous.  Like the German civil system described by Judge Posner, Sharp is
limited under Korean law to specific document requests.  *See* Oh Decl. ¶ 10.  And like in
*Heraeus*, "there is no indication" that the Korean Court would refuse the evidence Sharp
now seeks.  Under these circumstances, production is appropriate.

        The cases Defendants cite in support of their circumvention argument are
inapposite.  Defendants rely upon *In re Digitechnic*, No. C07-414-JCC, 2007 WL
1367697, at *5 (W.D. Wash. May 8, 2007), but much of the *Digitechnic* court's
disapproval of the 1782 application was rooted in its untimeliness.  *See id.* (discovery
request was brought at the appeals stage and did not come until "five days before the
[applicant's] appellate brief was due . . . in litigation spanning over twelve years").  There
was no such delay here.  In the Korean Litigation, the complaint was only filed in
November of 2010, the matter is still pending in Korea, and fact discovery is still ongoing
in the U.S. Litigation.  The other cases relied upon are equally inapplicable, as they involve
inexcusable delay or undisputed examples of manipulation by the petitioner.  *See In re
Application of Caratube Int'l Oil Co., LLP*, 730 F. Supp. 2d 101, 106-07 (D.D.C. 2010)
(fact that case was in arbitration and request came after discovery deadline passed led to
conclusion that granting application would usurp foreign tribunal's authority); *Microsoft*,
428 F. Supp. 2d at 193-94 (defendant's request for documents pursuant to Section 1782
one day after it requested them from foreign tribunal was attempt to circumvent foreign
protocol where foreign tribunal had jurisdiction over the documents).

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Hon. Charles A. Legge                                                                                       8

>    **C.    Sharp's Subpoena Is Not Burdensome**

The fourth factor the *Intel* Court noted was the burden of the request, instructing that "unduly intrusive or burdensome requests may be rejected or trimmed." 542 U.S. at 265.  Defendants argue that the subpoena is unduly burdensome and overbroad.  But Defendants are not the party asked to produce the documents.  Instead, Saveri is, and Sharp has addressed Saveri's separate burden objection in its concurrently filed Motion to Compel Saveri & Saveri, Inc. to Produce Documents Pursuant to Subpoena dated September 5, 2012 ("Motion to Compel"), which is incorporated by reference.  Sharp briefly addresses Defendants' unique arguments below.

>    **1.    Sharp's Subpoena Does Not Impose Any Document Review Burden On The Korean Defendants**

Defendants make a strange and unprecedented burden argument that the Korean Defendants will be "burdened" by "having to review" the production of 5 million pages of documents by Saveri.  There is, however, no reason to believe that Defendants will have to review these documents.  The discovery requested here is evidence that they have presumably reviewed themselves as defendants in the U.S. Litigation or that have been reviewed by their related entities in the U.S. Litigation.

>    **2.    The Document Request Is Reasonable And Seeks Relevant Information For The Korean Litigation**

Defendants incorrectly paint the 1782 Application as appropriate only when a small, finite number of documents are sought.  Motion to Quash at 9.  That is not so.  Rather, as in all civil litigation, the issue is the relevancy of the documents sought and the burden in producing them.  Sharp has demonstrated that both of those concerns weigh in its favor.  Defendants cannot object to the 1782 Application merely on the grounds that the *amount* of documents sought is too large.  *See Heraeus*, 633 F.3d at 598 (noting that the "demands were broad" but that the protesting party offered no alternative, and therefore complaining of the burden was "spurious"); *In re Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*, 685 F.3d 987, 999-1000 (11th Cir. 2012) (affirming grant of Section 1782 application and noting defendant's failure to identify which documents posed an undue burden).  Moreover, as noted in its Motion to Compel, Sharp has agreed to narrow scope of the requests in our meet and confer with Saveri.

>    **D.    The Subpoena And Order Granting Issuance Of The Subpoena Envision And Ensure Adequate Protections For Confidential Or Privileged Information**

Defendants' concerns about a loss of confidentiality protections are unfounded.  The 1782 Application and the Order granting issuance of the subpoena both include a mechanism for respecting the confidentiality interests of Defendants.  Exhibit B,

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Hon. Charles A. Legge                                                                                      9

1782 Application at 2; Dkt. No. 1299 at 2.  At most, confidentiality is a technical matter that must be resolved before actual use of the documents in the Korean Litigation; it should not result in the subpoena being quashed.

### 1.  Sharp Has Expressed Its Willingness to Respect the Confidentiality Interests of Producing Defendants

This Court ordered that any use by Sharp and other parties in the Korean Litigation is conditioned upon acceptance of the terms of the Stipulated Protective Order or entry of a Korean protective order that would extend substantially similar protections.  *See* Dkt. No. 1299 at 2.  Sharp and its outside counsel have agreed to sign onto the Protective Order and will execute, as necessary, copies of the Agreement and Acknowledgement to Be Bound, as modified to reflect use of the documents in the Korean Litigation.  Oh Decl. ¶ 22; Exhibit D, Bae, Kim & Lee LLC's Agreement and Acknowledgement to be Bound; Exhibit E, Sharp Corporation's Agreement and Acknowledgement to be Bound; Exhibit F, Paul, Weiss, Rifkind, Wharton & Garrison LLP's Agreement and Acknowledgement to be Bound.

In addition, Sharp has committed to protecting the small subset of documents actually selected for submission to the Korean Court through the sealing mechanism of Article 163 of the KCPA.  *See* KCPA Article 163 (permitting the court, upon the motion of a party, to file documents under seal "when any business secrets of the party . . . are entered in the litigation records."); Oh Decl. ¶¶ 23-25.

These dual protections to extend the effect of the U.S. protective order over the use of the documents in Korean court amply distinguish this case from *Four Pillars Enterprises Co., Ltd. v. Avery Dennison Corp.*, 308 F.3d 1075 (9th Cir. 2002).  Defendants cite *Four Pillars* for the proposition that the confidentiality of certain documents under a protective order may support the denial of an application under Section 1782.  However, the procedural scenario in that case, which the Ninth Circuit termed "unusual," apparently did not include any protections to preserve in the foreign litigation the confidential treatment of documents already produced in U.S. litigation, as has been planned in advance in this case.  *See id.* at 1078-79.

### 2.  The Protective Order in Place in the U.S. Litigation Itself Contemplates Use of Protected Materials in Other Litigation

Defendants' efforts to use the confidentiality accorded the discovery in the U.S. Litigation to thwart Sharp's application under Section 1782 also places more weight on the U.S. protective order than that document can bear.  The discovery under Section 1782 is entirely consistent with scenarios expressly addressed by the protective order.

The Stipulated Protective Order itself contemplates the need for a party to comply with a "discovery request, subpoena, or order issued in other litigation or proceedings that would compel disclosure of" protected materials.  (Dkt. No. 306, ¶ 8).

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Hon. Charles A. Legge                                                                                       10

        Although this Court's permission for Sharp to gather and use the CRT
materials in Korea could be viewed as being, in effect, a slight modification of the
Protective Order, this is also contemplated by the protective order itself. *See id. ¶* 15.1
("Nothing in this Order abridges the right of any person to seek its modification by the
Court in the future.")  If the Section 1782 application is viewed as such, then a party
opposing modification of a protective order must establish why protection continues to be
necessary. *See CBS Interactive, Inc. v. Etilize, Inc.*, 257 F.R.D. 195, 206 (N.D. Cal. 2009).
Defendants and Saveri have not met this burden and cannot hide behind the Stipulated
Protective Order – especially when Sharp is willing to be a signatory to its terms.[4]

**III.    Conclusion**

        For the reasons discussed herein, Defendants' Motion to Quash should be
denied.

                                        Respectfully submitted,

                                        */s/ Kenneth A. Gallo*
                                        Kenneth A. Gallo

                                        PAUL, WEISS, RIFKIND, WHARTON &
                                        GARRISON LLP

cc:     All Counsel of Record via ECF

Attestation:  The filer of this document attests that the concurrence of the signatories
thereto have been obtained.

---

[4]  Additionally, it is difficult to understand Defendants' confidentiality concerns given the
age of the documents sought by the subpoena, which largely concern products that are no
longer produced and information that is no longer commercially sensitive given its date.
*See Avtel Services, Inc. v. U.S.*, 70 Fed. Cl. 173, 191 (Fed. Cl. 2006) (collecting cases); *In
re TFT-LCD Antitrust Litig.*, Case No. M 07-1827, Dkt No. 6257 at 1 (July 24, 2012)
(holding that the court is no longer allowing materials to be filed under seal without good
cause shown given the age of the documents and information).