# EXHIBIT B

1  Kenneth A. Gallo (D.C. Bar No. 371253, *pro hac vice* admission pending)
   (kgallo@paulweiss.com)
2  Bruce H. Searby (CA State Bar No. 183267, *pro hac vice* admission
   pending)
3  **PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
   2001 K Street, NW
4  Washington, DC  20006-1047
   Telephone:  (202) 223-7300
5  Facsimile:  (202) 204-7359
   Email:  bsearby@paulweiss.com
6
   Colin C. West (CA State Bar No. 184095)
7  **BINGHAM MCCUTCHEN LLP**
   Three Embarcadero Center
8  San Francisco, CA 94111-4067
   Telephone:  (415) 393-2000
9  Facsimile:  (415) 393-2286
   Email:  colin.west@bingham.com
10
   Attorneys for Petitioner
11 SHARP CORPORATION

12                **UNITED STATES DISTRICT COURT**

13             **NORTHERN DISTRICT OF CALIFORNIA**

14                **SAN FRANCISCO DIVISION**

15                                                CV 12 80 151MISC
                                                   Miscellaneous Case No. _____

16 **IN RE: APPLICATION FOR
   JUDICIAL ASSISTANCE FOR THE**                   ***EX PARTE* APPLICATION OF SHARP**
17 **ISSUANCE OF SUBPOENAS**                        **CORPORATION FOR ORDER**
   **PURSUANT TO 28 U.S.C. § 1782 TO**             **PURSUANT TO 28 U.S.C. § 1782 TO**
18 **OBTAIN DISCOVERY FOR USE IN A**               **OBTAIN DISCOVERY FOR USE IN A**
   **FOREIGN PROCEEDING**                          **FOREIGN PROCEEDING;**
19 _____            **MEMORANDUM OF POINTS AND**
                                                    **AUTHORITIES**
20 Sharp Corporation, Petitioner

21 _____

22

23

24

25

26

27

28
                                        - 1 -

1    Petitioner Sharp Corporation ("Sharp") hereby applies *ex parte* pursuant to 28

2  U.S.C. § 1782(a) for permission to issue discovery subpoenas to a custodian (or custodians) of

3  records who reside or can be found within this district, the Northern District of California, to

4  obtain documents for use in connection with an ongoing plaintiffs' action that Sharp and various

5  of its subsidiaries has filed in the Republic of Korea ("Korean Litigation").  The proposed

6  subpoenas seek documents that have been obtained by the custodians during the course of

7  discovery in antitrust litigation pending in the Northern District of California, in the custodians'

8  capacity as attorneys of record for class plaintiffs.  The litigation in this district concerns

9  essentially the same illegal cartel activity in the manufacture and sale of Cathode Ray Tubes

10  ("CRTs") that is the subject of the Korean Litigation.

11    Sharp seeks the appointment of its local counsel, Colin West of the law firm of

12  Bingham McCutchen LLP, as Commissioner to issue and cause to be served the proposed

13  subpoenas upon the custodians of records, to receive the requested documents, and to take any

14  testimony that Sharp may find necessary in connection with the production of the documents, in

15  accordance with the Federal Rules of Civil Procedure.

16    The documents that Sharp would obtain from the discovery hereby requested are

17  subject to a protective order in the antitrust litigation pending in this district.  Accordingly, any

18  use in the Korean Litigation of these documents should be conditioned upon acceptance of the

19  terms of that protective order, as appropriately modified, or of a protective order in the Korean

20  Litigation based upon substantially similar terms safeguarding the confidentiality interests of the

21  relevant parties.[1]

22    This application is based upon the attached Memorandum of Points and

23  Authorities, the declaration of Bruce H. Searby and exhibits attached thereto, all matters of

24  ///

25  ///

26  _____

27  [1] As lead Plaintiff in the Korean Litigation, Sharp is the petitioner in this application.  However, the documents sought to be discovered are intended for use not only by Sharp but also by its subsidiaries that are also plaintiffs in the Korean Litigation.  Each plaintiff in the Korean

28  Litigation will separately accept the confidentiality terms required for their use of the documents.

- 2 -

1  which the Court may take judicial notice, and such further written and oral argument as may be

2  presented to the Court.

3

4  Dated:  June 27, 2012                                Respectfully submitted,

5                                                       PAUL, WEISS, RIFKIND, WHARTON &
                                                        GARRISON LLP
6
                                                            Kenneth A. Gallo (D.C. Bar No.
7                                                           371253, *pro hac vice* admission
                                                            pending)
8                                                           Bruce H. Searby (CA State Bar No.
                                                            183267, *pro hac vice* admission
9                                                           pending)

10                                                      BINGHAM MCCUTCHEN LLP

11

12                                                      By:  _____
                                                             Colin C. West (CA State Bar No.
13                                                           184095)

14
                                                        Attorneys for Petitioner
15                                                      SHARP CORPORATION

16

17

18

19

20

21

22

23

24

25

26

27

28

- 3 -

1            **MEMORANDUM OF POINTS AND AUTHORITIES**

2   **I.**     **INTRODUCTION**

3             In this *ex parte* application, Petitioner Sharp Corporation ("Sharp") respectfully

4 requests that the Court enter an order pursuant to 28 U.S.C. § 1782(a) appointing a commissioner

5 with the power to issue subpoenas to custodians in possession of documents acquired in antitrust

6 litigation currently pending before the Honorable Judge Samuel Conti in the Northern District of

7 California, *In re: Cathode Ray Tube (CRT) Antitrust Litigation*, Case No. 3:07-5944-SC (the

8 "N.D. Cal. Litigation"). The intended subpoena recipient (or recipients), counsel for a putative

9 class of direct purchaser from the law firm of Saveri & Saveri, Inc., possesses a large volume of

10 discovery detailing collusive meetings in which the defendants conspired to fix, raise, maintain, and

11 stabilize prices to defendants in the manufacture and sale of cathode ray tubes ("CRTs") and

12 products containing CRTs. Sharp seeks the production of these documents under § 1782(a) to

13 help it pursue claims in an ongoing lawsuit it has filed in the Republic of Korea ("Korean

14 Litigation"). The Korean Litigation was filed in Suwon District Court, 2010gahap21125 Claim

15 for Damages (gi). Like the N.D. Cal. Litigation, the Korean Litigation alleges the same illegal

16 cartel activity by the same group of competitors, but concerns damages to Sharp for CRTs and

17 products containing CRTs from purchases being in or for the Asian market.

18             Sharp satisfies all statutory requirements for this Court to have authority to allow

19 Sharp, as an "interested party," to seek documents in the possession of persons within this

20 district for use in Korean court. An application under § 1782 can be an appropriate means for a

21 foreign litigant to obtain documents from counsel who are in custody and control of documents

22 for litigation purposes, if the attorney-custodian resides or is found in the district.

23             Moreover, the Court should exercise its discretion to order this discovery.

24 Sharp's application is firmly within the proper purposes of providing judicial assistance in

25 foreign proceedings. The evidence sought would be welcome and most useful in the Korean

26 court. Lastly, the discovery process would impose no undue intrusion or burden upon the

27 subpoenaed attorney-custodians.

28

1    As the N.D. Cal. Litigation is subject to a protective order for dissemination of

2    protected documents, access to and use of the documents in the Korean Litigation will be

3    conditioned upon acceptance and extension of the terms of the protective order, or substantially

4    similar terms, to the Korean Litigation.

5    This application is properly made *ex parte* because the custodian of records will

6    have a procedural opportunity to challenge the subpoena upon their receipt and prior to a

7    reasonable date for return.

8    For these and the other reasons discussed herein, this Court should grant Sharp the

9    relief requested under § 1782.

10    **II.    FACTUAL AND PROCEDURAL BACKGROUND**

11    CRTs consist of evacuated glass envelopes that contain an electron gun and a

12    phosphorescent screen and evoke color images.  Throughout the 1990s and early 2000s, CRTs

13    were frequently a component piece in color display tubes ("CDTs") for computers and in color

14    picture tubes ("CPTs") for televisions.  Sharp was a direct purchaser of CPTs as components in

15    the televisions it manufactured and sold around the world.

16    **A.    N.D. Cal. Litigation**

17    The N.D. Cal. Litigation is a Multi-District Litigation ("MDL") proceeding

18    consolidated for pretrial purposes and pending before Judge Conti.  Included in it is a class

19    action brought on behalf of companies who were direct purchasers of CDTs, CPTs and products

20    containing CDTs and/or CPTs.  The Direct Purchaser Plaintiffs' Consolidated Amended

21    Complaint ("DPP Am. Compl."), filed on March 16, 2009,[2] alleges a horizontal antitrust

22    conspiracy that began at least as early as March 1995 and continued until at least November 25,

23    2007 between manufacturers of CRTs and CRT Products.  (*See* DPP Am. Compl. (Doc. No. 436)

24    ¶¶ 1, 6, 213-221).[3]  The complaint also alleges that 12 manufacturers and related corporate

25

26    [2] Sharp hereby requests that the Court take judicial notice of this and other pleadings referenced
     herein that have been filed with it in the MDL proceeding docketed as *In re: Cathode Ray Tube*
27    *(CRT) Antitrust Litigation*, Case No. 3:07-5944-SC.

     [3] Sharp is a putative class member of the DPP class.  Sharp has until approximately July 23, 2012
28    to decide to opt out of the class action.

- 2 -

*EX PARTE* APPLICATION FOR ORDER TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDING;
MEMORANDUM OF POINTS AND AUTHORITIES – Case No. _____

1  entities participated in the conspiracy, including but not limited to Chunghwa entities.[4]  (*See* DPP

2  Am. Compl. ¶¶ 24-80).

3           As alleged by the DPP class, the CRT industry faced economic pressures as

4  consumer preferences changed and accordingly threatened the sustainability of the industry.

5  (DPP Am. Compl. ¶ 2).  To maintain price stability, increase profitability, and decrease the

6  erosion of pricing in the CRT market, manufacturers of CRTs conspired to fix, raise, maintain,

7  and stabilize their prices.  (*Id.* ¶¶ 3-6, 136-143).  The conspiracy was carried out through bilateral

8  meetings that began in at least March of 1995 and through informal group meetings also

9  beginning in 1995.  (*Id.* ¶¶ 134-136).  By 1997, these group meetings had become more

10  formalized.  The formalized group meetings, known as "Glass Meetings," included meetings for

11  employees at every level of the company: Top Meetings, Management Meetings and Working

12  Level Meetings.  There were also Glass Meetings on golf courses known as Green Meetings.

13  (*Id.* ¶ 141).  Between 1995 and 2007, there were at least 500 meetings among the Defendants.

14  (*Id.* ¶¶ 6, 134).  These meetings occurred in various locales, including Taiwan, South Korea,

15  Indonesia, Thailand, Singapore, Malaysia, China, the U.K. and Europe.  (*Id.*)  These meetings

16

17

18  [4] The Direct Purchaser Plaintiffs' Consolidated Amended Complaint names the following
defendants:  Chunghwa Picture Tubes, Ltd., Chunghwa Picture Tubes (Malaysia) Sdn. Bhd.,

19  Daewoo International Corporation, Daewoo Electronics Corporation f/k/a/ Daewoo Electronics
Company, Ltd., Orion Electric Company, Daewoo-Orion Societe Anonyme, Hitachi, Ltd.,

20  Hitachi Displays, Ltd., Hitachi America, Ltd., Hitachi Asia, Ltd., Hitachi Electronic Devices
(USA), Shenzhen SEG Hitachi Color Display Devices, Ltd., Irico Group Corporation, Irico

21  Group Electronics Co., Ltd., Irico Display Devices Co., Ltd., LG Electronics, Inc., LG
Electronics USA, Inc., LG Electronics Taiwan Taipei Co., Ltd., LP Displays International, Ltd.,

22  Panasonic Corporation f/k/a Matsushita Electric Industrial Co, Ltd., Matsushita Electronic
Corporation (Malaysia)  Sdn Bhd., Panasonic Corporation of North America, Panasonic

23  Consumer Electronics Co., Koninklijke Philips Electronics N.V., LG Phillips Displays, Philips
Electronics Industries Ltd., Philips Electronics North America, Philips Consumer Electronics

24  Co., Philips Electronics Industries (Taiwan), Ltd., Philips da Amazonia Industria Electronica
Ltda., Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., Samsung SDI

25  (Malaysia) Sdn Bhd., Samsung SDI Co., Ltd., Samsung SDI America, Inc., Samsung SDI
Mexico S.A. de C.V., Samsung SDI Brasil Ltda., Shenzhen Samsung SDI Co., Ltd., and Tianjin

26  Samsung SDI Co., Ltd., Samtel Color, Ltd., Tatung Company of America, Inc., Thai CRT
Company, Ltd., Toshiba Corporation, Toshiba America, Inc., Toshiba America Consumer

27  Products LLC, Toshiba America Consumer Products, Inc., Toshiba America Consumer Products,
Inc., Toshiba America Electronic Components, Inc., Toshiba America Information Systems, Inc.,

28  and Toshiba Display Devices (Thailand) Company, Ltd.

- 3 -

1    included representatives from the highest levels of the respective companies, as well as regional

2    managers and others. (*See id.* ¶¶ 136-153).

3    On March 27, 2012, interim lead counsel for the DPP class, R. Alexander Saveri

4    ("Saveri") submitted a notice of motion and motion for certification of a settlement class and

5    preliminary approval of a class action settlement as to the Chunghwa and Philips defendants.

6    ("Mot. for Class Certification and Settlement Approval" (Doc. No. 1115)). In a declaration in

7    support of this motion, Saveri noted that plaintiffs have received over 5 million pages of

8    documents produced by defendants. (Declaration of R. Alexander Saveri in Support of Mot. for

9    Class Certification and Settlement Approval ("Saveri Decl.") (Doc. No. 1115-1) ¶ 7).

10    The documents obtained in discovery are subject to a protective order, which

11    prohibits disclosure of confidential or highly confidential information except to counsel and

12    those to whom disclosure is reasonably necessary for this litigation or "unless otherwise ordered

13    by the Court or permitted in writing by the Designating Party." (Stipulated Protective Order

14    (Doc. No. 306) §§ 7.2, 7.3).

15    Judge Conti entered the Preliminary Order of Class Certification and Settlement

16    with Chunghwa and Philips on May 3, 2012. ("Preliminary Order of Class Certification and

17    Settlement") (Doc. No. 1179)).

18    **B.    The Korean Litigation**

19    On November 5, 2010, Sharp and several of its Asian subsidiaries[5] filed a

20    complaint in South Korea's Suwon District Court, which was assigned the case file identifier of

21    "2010gahap21125 Claim for Damages (gi)" (the "Korean Complaint"), an English translation of

22    which is attached to the declaration of Bruce H. Searby ("Searby Decl."), counsel for Sharp in

23    the instant application. (Searby Decl., Ex. A). The Korean Complaint named as defendants

24    Samsung SDI Co., Ltd., Samsung SDI (Malaysia) Sdn Bhd., Samsung SDI (HK) Ltd., Shenzhen

25

26    [5] Sharp's affiliated companies that are also plaintiffs in the lawsuit are Sharp Manufacturing
      Corporation (M) Sdn. Bhd., Sharp Electronics (Malaysia) Sdn. Bhd., Sharp Roxy Appliances
27    Corporation (M) Sdn. Bhd., P.T. Sharp Electronics Indonesia, Sharp Manufacturing (Thailand)
      Co., Ltd., Sharp Thai Co., Ltd., Nanjing Sharp Electronics Co., Ltd., Sharp India Ltd., and Sharp
28    (Phils.) Corporation.

- 4 -

*EX PARTE* APPLICATION FOR ORDER TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDING;
MEMORANDUM OF POINTS AND AUTHORITIES -- Case No. _____

1   Samsung SDI Co., Ltd., and Tianjin Samsung SDI Co., Ltd.,  LG Philips Display Co., Ltd., PT

2   LP Displays Indonesia, LG Philips (Singapore) Pte. Ltd., LG Philips (Shuguang) Displays, and

3   Meridian Solar & Display Co. (together, the "Korean Litigation Defendants") (*See* Searby Decl.

4   ¶ 5; Searby Decl., Ex. A at 12-13).

5               Based on information and belief, Sharp alleged that Korean Litigation Defendants

6   and other CRT manufacturers including Chunghwa entities, Daewoo entities, Hitachi entities,

7   Irico entities, Panasonic entities, Samtel entities, Tatung Company of America, Inc., Thai CRT,

8   Toshiba entities, and MT Picture Display Co., Ltd. ("MTPD"), engaged in illegal collusive

9   conduct, which violated the Monopoly Regulation and Fair Trade Act of Korea. (*See* Searby

10  Decl., Ex. A at 13-15 & n.2).  The scope of cartel activity alleged in the Korean Litigation

11  occurred between January 1, 2001 and the date of the filing of the Korean Complaint in

12  November 2010. (Searby Decl., Ex. A at 2).  The Korean Litigation Defendants and their

13  competitors agreed to fix a minimum target price for CRTs and selling them at prices equal to or

14  greater than such prices. (*Id.*).  This conspiracy was carried out at Glass Meetings in Taiwan,

15  Korea, Malaysia, China, Thailand, Indonesia and elsewhere where the Korean Litigation

16  Defendants agreed to charge certain prices for CRTs and exchanged pricing information to

17  achieve the agreed-upon prices.  (*Id.*).  Sharp seeks damages for the overcharges in purchases

18  from the Korean Litigation Defendants, subject to appraisal.  (*Id.*)

19              The claims in the Korean Litigation as to purchases in or for the Asian market are

20  based substantially on the same factual nucleus as the N.D. Cal. Litigation, namely, price-fixing

21  of CRTs at multilateral and bilateral meetings held by the defendants and their competitors.

22              Sharp's Korean counsel advises that South Korea, unlike the United States, does

23  not give civil litigants rights of liberal discovery from adversaries and third parties. (Searby

24  Decl. ¶ 8).  Sharp has the limited procedural ability under Korean rules of civil procedure to

25  petition the court to order discovery, provided that Sharp can establish with specificity the

26  documents that will contain probative evidence. *See* Korean Code of Civil Procedure, Art. 345

27  (requiring that the party seeking a court order for production of documents must specify (i) the

28  indication of the document, (ii) the purport of the document, (iii) the holder of the document, (iv)

- 5 -

1   the facts sought to be proven by, and (v) the causes of the obligation to produce the requested

2   documents). (*Id.*; Searby Decl., Ex. B at Art. 345). However, thus far, Sharp has not been able

3   to demonstrate the existence, holder and location of specific documents sufficient for the Korean

4   court to propound discovery requests to the defendants in the Korean case or to third parties,

5   assuming they are within the jurisdiction of the Korean court. (Searby Decl. ¶ 10). Sharp's

6   Korean counsel seeks the evidence from CRT cartel documents already produced in the N.D.

7   Cal. Litigation to establish the grounds required to obtain Korean court orders for discovery.

8   (*See* Searby Decl. ¶ 11).

9           Moreover, Sharp's Korean counsel seeks the discovery from the N.D. Cal.

10  Litigation for possible introduction into evidence to help prove Sharp's case. The evidence of

11  Glass Meetings and other bilateral agreements alluded to by DPP class counsel is sought to prove

12  the participation of the Korean Litigation Defendants in the alleged conspiracy and the details

13  thereof, including attendance at the meetings, the frequency of the meetings, the substantive

14  content of the meetings, and the direction from the parent companies to their foreign subsidiaries

15  in Asia involved in the CRT business. (*Id.*) Korean counsel states that the Korean courts are

16  receptive to discovery obtained in a foreign country, and cites Korean Civil Procedure Act, Art.

17  296 (2) for the following proposition: "Any examination of evidence undertaken in a foreign

18  country shall, even if it is contrary to the laws of that country, be valid unless it is contrary to this

19  Act." (Searby Decl. ¶ 12; Searby Decl., Ex. B at Art. 296(2)). Korean counsel states that courts

20  there have adopted in Article 202 the "principle of free evaluation of evidence," meaning that in

21  principle, there is no limitation on the admissibility of evidence. (Searby Decl. ¶ 12). In sum,

22  Korean counsel knows of no reason why Korean courts would not be willing to accept evidence

23  obtained through US discovery procedures in an antitrust class action case. (*See id.*)

24          The Korean Litigation is ongoing, with a status hearing currently scheduled for

25  June 28, 2012. (Searby Decl. ¶ 13).

26          **C.     Intended Subpoena Recipient – DPP Interim Class Counsel**

27          Sharp seeks an order allowing it to serve a subpoena on a custodian or custodians

28  for sets of the documents and other discovery obtained in the N.D. Cal. Litigation. A draft copy

- 6 -

1  of the subpoena is attached to counsel's declaration. (Searby Decl., Ex. C).   The custodians

2  whom Sharp intends to name are R. Alexander Saveri, Esq., Guido Saveri, Esq. and/or any and

3  all persons who are responsible in whole or in part for the maintenance and safekeeping of

4  electronic discovery on behalf of the DPP Class (together, "Custodians") at the law firm of

5  Saveri & Saveri, Inc., which is listed on the docket of the N.D. Cal. Litigation as being located at

6  706 Sansome Street, San Francisco, CA 94111.  Saveri & Saveri is the interim lead counsel for

7  the Direct Plaintiff Purchasers.  Saveri & Saveri filed the DPP Amended Complaint and have

8  attested to receipt of five million pages of documents produced by the Defendants in the N.D.

9  Cal. Litigation.  (*See* Saveri Decl. ¶ 7).

10  **III.   ARGUMENT**

11  As a victim of global price-fixing of CRTs, Sharp hereby seeks evidence about

12  the cartel that has been collected in class action litigation in this district, for use in the separate

13  Korean action in which Sharp claims antitrust damages for those CRT products sold into the

14  Korean market.  For the reasons discussed below, Sharp's application for this discovery meets

15  statutory requirements.  Furthermore, the factors that district courts may consider in exercising

16  their discretionary authority weigh in favor of permitting Sharp the requested discovery.

17  Accordingly, the Court should grant Sharp's application.

18  

    A.   **Sharp Meets the Statutory Requirements To Permit Discovery For Use In a**
19     **Foreign Court Proceeding**

20  This Court is authorized to empower foreign litigants with the use of compulsory

21  process in obtaining discovery from persons residing in this judicial district for use in the foreign

22  proceedings.  In relevant part, the statute establishing this authority provides:

23  > The district court of the district in which a person resides or is
    > found may order him to give his testimony or statement or to
24  > produce a document or other thing for use in a proceeding in a
    > foreign or international tribunal . . . . The order may be made
25  > pursuant to a  . . . request made . . . upon the application of any
    > interested person and may direct that . . . the document or other
26  > thing be produced, before a person appointed by the court.

27  28 U.S.C. § 1782(a).

28  

- 7 -

1    Sharp's application meets all of these requirements. First, Sharp has established

2    that there are at least two sets of custodians of relevant documents who reside or can be found in

3    the Northern District of California. The lawyers of Saveri & Saveri have a listed office address

4    within this district on the docket of the N.D. Cal. Litigation in which they have entered

5    appearances. The fact that these custodians are lawyers and a law firm holding materials

6    produced in discovery does not change the fact that the relevant documents are in their custody

7    and thus subject to this district's jurisdiction. *See In re Application of Schmitz*, 259 F. Supp. 2d

8    294, 296 (S.D.N.Y. 2003). In *Schmitz*, the district court rejected a law firm's argument that

9    § 1782 did not properly apply to the documents in its temporary custody solely for the purposes

10   of U.S. litigation, reasoning:

11       Application of section 1782 does not involve an analysis of the
    duration of residency of the documents or even why a respondent
12       has the documents. It is sufficient that respondents reside in this
    district, as they concededly do.
13

14   *Id.; see also In re Linerboard Antitrust Litigation*, 333 F. Supp. 2d 333, 340-42 (E.D. Pa. 2004)

15   (granting intervenor's access to materials produced in antitrust litigation based on § 1782(a)).[6]

16       In addition, Sharp is without doubt an interested party seeking information for use

17   in a foreign court proceeding. The Korean Litigation is currently pending and Sharp is the

18   plaintiff.

19   **B.**    **The Court Should Exercise Its Discretion To Permit Sharp's Requested
    Discovery, Based on Consideration of the Purposes of the Statute and the**
20       **Lack of Serious Burden Upon the Intended Recipients of the Subpoenas**

21       Discovery of the documents produced in the N.D. Cal. Litigation falls squarely

22   into the statutory purpose of aiding a foreign legal proceeding, would not impose any undue

23   burden or intrusion, and therefore should be granted in the Court's discretion.

24       Once the requirements under § 1782 are met, the Court considers where it should

25   grant the requested relief in the exercise of its discretion. *See, e.g., Intel Corp. v. Advanced*

26

27   [6] Sharp is not seeking any attorney work product or privileged attorney-client communications in
the possession of counsel; Sharp seeks only the documentary evidence produced in the normal
28   course of discovery.

- 8 -

1   *Micro Devices, Inc.*, 542 U.S. 241, 247 (2004) ("§ 1782(a) authorizes, but does not require, a

2   federal district court to provide judicial assistance to foreign or international tribunals or to

3   'interested person[s]' in proceedings abroad"); *United States v. Sealed 1, Letter of Request for*

4   *Legal Assistance from the Deputy Prosecutor General of the Russian Federation*, 235 F.3d 1200,

5   1206 (9th Cir. 2000) ("The fact that § 1782 *authorizes* assistance does not mean that the district

6   court must exercise its discretion to grant such assistance."). There are four discretionary factors

7   for district courts to consider in an application under § 1782: (1) whether "the person from whom

8   discovery is sought is a participant in the foreign proceeding"; (2) "the nature of the foreign

9   tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign

10  government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) whether

11  the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other

12  policies of a foreign country or the United States"; and (4) whether the request is "unduly

13  intrusive or burdensome." *See In re Premises Located at 840 140th Ave. NE, Bellevue, Wash.*,

14  634 F.3d 557, 571 (9th Cir. 2011) (citing *Intel*, 542 U.S. at 264-65).

15          As for the first discretionary factor, the persons from whom Sharp specifically

16  seeks discovery, *i.e.*, the lawyers and personnel of Saveri and Saveri, Inc., are not participants in

17  the Korean action. *See Intel*, 542 U.S. at 264 (noting that "nonparticipants in the foreign

18  proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence,

19  available in the United States, may be unobtainable absent § 1782(a) aid"). Indeed, there is no

20  reason to believe that the Korean court could exercise jurisdiction over any custodian of the

21  collection of documents sought here – those documents assembled by U.S. counsel from

22  numerous companies all over the Asia-Pacific region for U.S. litigation purposes. Therefore, the

23  first factor weighs in favor of granting the application.

24          As to the second factor, Korean courts would be receptive to evidence discovered

25  in the United States. According to Sharp's Korean counsel, Korean civil procedure liberally

26  permits examination of evidence gathered in a foreign country, follows the principle of free

27  evaluation of evidence, and presents no limitation on the admissibility of evidence.

28

- 9 -

EX PARTE APPLICATION FOR ORDER TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDING;
MEMORANDUM OF POINTS AND AUTHORITIES – Case No. _____

1    Third, for the same reasons, there is no concern here that Sharp's application is

2  being used to circumvent foreign proof-gathering restrictions or other policies in the Korean

3  jurisdiction.  To the contrary, this application is consistent with Korean law's approval of foreign

4  proof gathering, and indeed Sharp would use the documents to establish the specific basis needed

5  for Korean court orders of discovery under their rules of civil procedure.

6    Finally, this request is not unduly intrusive or burdensome.  Sharp seeks

7  documents which the lawyers of Saveri and Saveri, Inc. already have in their custody and

8  control, and which they presumably hold in a database.  (*See* Saveri Decl. ¶ 7 (noting that

9  Plaintiffs have already received over 5 million pages of documents)).  As one district court

10  reasoned in applying the discretionary factors of § 1782(a), a party does not suffer prejudice

11  merely by allowing access to materials that have already been produced to other parties in

12  litigation. *See In re Linerboard Antitrust Litigation*, 333 F. Supp. 2d at 342 (citing cases).

13    The fact that there is a protective order in the N.D. Cal. Litigation for the

14  materials sought should not discourage judicial approval of this request.  Section 1782 relief has

15  specifically been available in cases where there are protective orders. *See U.S. Philips Corp. v.*

16  *Iwasaki Elec. Co., Ltd.*, 142 Fed. Appx. 516, 518, 2005 WL 1874992, at *2 (2d Cir. 2005)

17  (rejecting argument that the protective order limited litigant's possession of the documents at

18  issue so as to exempt them from § 1782 production where the order granted the district court

19  broad discretion to allow disclosure); *In re Linerboard Antitrust Litigation*, 333 F. Supp. 2d at

20  335 (granting counsel for intervenor Canadian company access to documents subject to

21  confidentiality order on the basis of § 1782).

22    Moreover, the protective order in force in the N.D. Cal. Litigation permits

23  disclosure of the protected material if "ordered by the Court. . ." or to ". . . any other person to

24  whom the Court compels access to the Confidential Information." (Stipulated Protective Order

25  (Doc. No. 306) Sections 7.2, 7.3).  Thus, granting this application and ordering production of

26  Disclosure or Discovery Material would fall squarely within the disclosures permitted under the

27  Protective Order.  Furthermore, Sharp's application requests that the Court's order state clearly

28  that the subsequent use of the discovery in the Korean Litigation will be conditioned upon

- 10 -

1  acceptance of the terms of that Protective Order, as appropriately modified, or of a protective

2  order in the Korean Litigation based upon substantially similar terms safeguarding the

3  confidentiality interests of the relevant parties.

4  **C.     Notice to the Custodians of Records is Not Required at this Time**

5        Lastly, this Court may grant this *ex parte* application for judicial assistance

6  without notice to the Custodians intended to be served with subpoenas.  Indeed, it is common for

7  "the process of presenting the request to a court and to obtain the order authorizing discovery" to

8  be conducted *ex parte*, because the Custodians will have ample notice of any discovery sought

9  and taken pursuant to the request. *See In re Letter of Request from Supreme Court*, 138 F.R.D.

10  27, 32 n. 6 (S.D.N.Y. 1991) ("[S]uch ex parte applications are typically justified by the fact that

11  the parties will be given adequate notice of any discovery taken pursuant to the request and will

12  then have the opportunity to move to quash the discovery or to participate in it."); *see also In re*

13  *Letters Rogatory from Tokyo Dist.*, 539 F.2d 1216, 1219 (9th Cir. 1976) ("Letters Rogatory are

14  customarily received and appropriate action taken with respect thereto ex parte" and stating that

15  "[t]he witnesses can and have raised objections and exercised their due process rights by motions

16  to quash the subpoenas").

17        Although Sharp believes that an appropriate time for the Custodians to lodge any

18  objection to the subpoena would be prior to its return date, Sharp has decided as a matter of

19  professional courtesy to serve them with a copy of this application at the time of filing.

20  / / /

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26

27

28

- 11 -

1 | IV.    CONCLUSION

2 |             For the reasons set forth above and in the accompanying declaration of counsel,

3 | Sharp respectfully requests that the Court enter an order appointing Colin West of Bingham

4 | McCutchen LLP as commissioner empowered to issue subpoenas to the intended subpoena

5 | recipients for the documents collected in the N.D. Cal. Litigation.

6

7 | Dated:  June 27, 2012                                    Respectfully submitted,

8 |                                                                      PAUL, WEISS, RIFKIND, WHARTON &
   |                                                                          GARRISON LLP
9

10 |                                                                          Kenneth A. Gallo (D.C. Bar No.
    |                                                                          371253, *pro hac vice* admission
    |                                                                          pending)
11 |                                                                          Bruce H. Searby (CA State Bar No.
    |                                                                          183267, *pro hac vice* admission
12 |                                                                          pending)

13 |                                                                      BINGHAM MCCUTCHEN LLP

14

15 |                                                                      By: _____
    |                                                                          Colin C. West (CA State Bar No.
16 |                                                                          184095)

17 |                                                                      Attorneys for Petitioner
    |                                                                      SHARP CORPORATION

18

19

20

21

22

23

24

25

26

27

28