1   Robert A. Sacks (CSB No. 150146)
    (sacksr@sullcrom.com)
2   SULLIVAN & CROMWELL LLP
    1888 Century Park East, Suite 2100
3   Los Angeles, California 90067
    (310) 712-6600 (telephone)
4   (310) 712-8800 (facsimile)

5   Laura Kabler Oswell (SBN 241281)
    (oswelll@sullcrom.com)
6   SULLIVAN & CROMWELL LLP
    1870 Embarcadero Road
7   Palo Alto, California 94303
    Telephone:     (650) 461-5600
8   Facsimile:     (650) 461-5700

9   Attorneys for Intervenor Thomson
    Consumer Electronics, Inc. and
10  Thomson S.A. (Specially Appearing)

11

12                          **UNITED STATES DISTRICT COURT**

13                        **NORTHERN DISTRICT OF CALIFORNIA**

14                            **SAN FRANCISCO DIVISION**

15
    IN RE:  CATHODE RAY TUBE (CRT)         )   Case No.  07-5944-SC
16  ANTITRUST LITIGATION                   )
                                           )   MDL No. 1917
17  _____    )
                                           )   **DECLARATION OF LAURA KABLER**
18  This Document Relates to:              )   **OSWELL IN SUPPORT OF OPPOSITION**
                                           )   **OF INTERVENOR THOMSON**
19  ALL INDIRECT PURCHASER ACTIONS.        )   **CONSUMER ELECTRONICS, INC. AND**
                                           )   **THOMSON S.A. (SPECIALLY**
20                                         )   **APPEARING) TO PLAINTIFFS' MOTION**
                                           )   **FOR LEAVE TO AMEND**
21                                         )
                                           )   Date:  September 27, 2012
22                                         )   Time:  1:00 p.m.
                                           )   JAMS:  Two Embarcadero Center, Suite 1500
23                                         )   Judge:  Hon. Samuel Conti
                                           )   Special Master: Hon. Charles A. Legge (Ret.)
24                                         )
                                           )   [OPPOSITION; MOTION TO INTERVENE
25                                         )   AND [PROPOSED] ORDER FILED
                                           )   CONCURRENTLY HEREWITH]
26  _____    )

27

28

SULLIVAN
&
CROMWELL LLP

I, Laura Kabler Oswell declare under penalty of perjury as follows:

1.     I am a member of the Bar of the State of California, and associated with the firm of Sullivan & Cromwell LLP, counsel to Intervenor Thomson Consumer Electronics, Inc. and Thompson S.A., which is specially appearing in this action (collectively, "Thomson"). I submit this Declaration in support of Thomson's Opposition to Plaintiffs' Motion for Leave to Amend Complaint.

2.     Attached as Exhibit A hereto is a copy of an email I sent to counsel to the Indirect Purchaser Plaintiffs on January 16, 2009. This email is the last written communication with counsel to the Indirect Purchaser Plaintiffs that I have in my files prior to the filing of the Indirect Purchaser Plaintiffs' Consolidated Amended Complaint on March 16, 2009.

3.     According to the entries on my calendar, a teleconference on January 21, 2009 was my final communication with counsel to the Indirect Purchaser Plaintiffs prior to the filing of their Consolidated Amended Complaint.

4.     Attached as Exhibit B hereto is a copy of the April 12, 2011 Order re: Indirect Purchaser Plaintiffs' Motion to File a Third Amended Consolidated Complaint in *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-1827 (N.D. Cal.) (Dkt. No. 2641).

5.     Attached as Exhibit C hereto is a copy of an excerpt from the transcript of the September 22, 2010 hearing in the case entitled *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-1827 (N.D. Cal.).

Executed this 14th day of September 2012, at Palo Alto, California

       /s/ Laura Kabler Oswell

Laura Kabler Oswell

SULLIVAN
&
CROMWELL LLP

# EXHIBIT A

## Oswell, Laura Kabler

| | |
|---|---|
| **From:** | Oswell, Laura Kabler |
| **Sent:** | Friday, January 16, 2009 8:49 AM |
| **To:** | 'Lauren Russell'; de Bretteville, Jason |
| **Cc:** | 'Cadio Zirpoli'; 'Mario Alioto' |
| **Subject:** | RE: CRT, MDL 1917/Requests for information from Thomson S.A. |

Lauren, thank you for your email.  As we discussed when we spoke last with you and Cadio, we have continued our investigation into the information requested in your email below.  We suggest that we set up a time to speak more about what we have learned through that process. Please let us know when you are available for such a call next week.
Regards,
Laura

-----Original Message-----
**From:** Lauren Russell [mailto:laurenrussell@tatp.com]
**Sent:** Wednesday, January 14, 2009 3:46 PM
**To:** Oswell, Laura Kabler; de Bretteville, Jason
**Cc:** 'Cadio Zirpoli'; 'Mario Alioto'
**Subject:** FW: CRT, MDL 1917/Requests for information from Thomson S.A.

Jason and Laura:

When Cadio and I spoke with you on December 1, you told us you were in the process of gathering information and would get back to us on December 8 with an update and a clear timeline for your client's responses. To date we have heard nothing from you. It has now been more than 2 months since our original requests (see email below from November 4, 2008). As we explained to you on the phone, if we cannot get this information from your client informally, we will have to propound formal discovery requests. Please let us know immediately whether you intend to respond to our informal requests, and if so, when. Thank you.

Lauren

Lauren C. Russell
Attorney at Law
Trump, Alioto, Trump & Prescott, LLP
2280 Union Street
San Francisco, CA 94123
Telephone: (415) 563-7200
Facsimile: (415) 346-0679
E-mail: laurenrussell@tatp.com

This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by e-mail and delete the message and any attachments.

**From:** Lauren Russell [mailto:laurenrussell@tatp.com]
**Sent:** Tuesday, November 04, 2008 3:34 PM
**To:** 'kablerl@sullcrom.com'; 'debrettevillej@sullcrom.com'
**Cc:** 'malioto@tatp.com'
**Subject:** CRT, MDL 1917/Requests for information from Thomson S.A.

Dear Jason and Laura:

As we discussed on our call last Friday, here is a list of information we would like from Thomson S.A. ("Thomson") so that we may make an informed decision as to whether Thomson is a proper defendant in this case. Under paragraph 14 of the Stipulation And Order For Limited Discovery Stay, the relevant time period for these requests is from 2000 to the present.

1. List of CRTs and CRT Products (televisions and computer monitors) manufactured by Thomson
2. List of customer names for CRTs and CRT Products
3. Worldwide CRT and CRT Product sales by country
4. Names of senior sales persons with responsibility for the sale of CRTs and/or CRT Products
5. Details of any government investigations into Thomson's conduct in the market for CRTs or CRT Products
6. Does or did Thomson specifically design any CRTs or CRT Products for the U.S. market?
7. Identify CRTs or CRT Products manufactured by Thomson which are/were shipped into the U.S.?
8. Details of Thomson's corporate structure, in particular the relationship with Thomson, Inc.
   a. Is Thomson Inc. a wholly-owned subsidiary of Thomson?
   b. Does Thomson Inc. have an independent BoD?
   c. Did Thomson Inc. purchase CRTs or CRT Products from Thomson for sale in the U.S. at any time?
   d. What products did Thomson Inc. manufacture and sell?
   e. Does Thomson Inc. still manufacture and sell any CRTs and/or CRT Products in the U.S.? If not, when did it stop?
   f. Did any other Thomson entities manufacture CRTs or CRT Products for sale in the U.S.?
9. Details of the sale by Thomson and Thomson Inc. of their CRT and CRT Products business to the joint venture TCL-Thomson Electronics Corp.
10. Does TCL-Thomson Electronics Corp. currently manufacture CRTs and CRT Products for sale in the U.S.?

These requests are based on similar requests we have made to several other defendants that are asserting a personal jurisdiction defense.

We look forward to hearing from you so that we may avoid the need for formal jurisdictional discovery. Please do not hesitate to contact me if you have any questions or wish to discuss any of the requests.

Regards,

Lauren

Lauren C. Russell
Attorney at Law
Trump, Alioto, Trump & Prescott, LLP
2280 Union Street
San Francisco, CA 94123
Telephone: (415) 563-7200
Facsimile: (415) 346-0679
E-mail: laurenrussell@tatp.com

This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by e-mail and delete the message and any attachments.

**EXHIBIT B**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: TFT-LCD (FLAT PANEL) ANTITRUST LITIGATION | No. M 07-1827 SI |
| _____/ | MDL. No. 1827 |
| This Order Relates to: | **ORDER RE: INDIRECT PURCHASER PLAINTIFFS' MOTION TO FILE A THIRD AMENDED CONSOLIDATED COMPLAINT** |
| ALL CASES | |
| _____/ | |

Now before the Court is the indirect purchaser plaintiffs' motion for leave to file a third amended complaint. The indirect purchaser plaintiffs seek to amend the complaint to add new defendants and co-conspirators, and to add additional state law claims.

With regard to the proposed new defendants and co-conspirators, the Court finds that as to certain proposed new defendants, plaintiffs have demonstrated that leave to amend should be granted and that there is no prejudice or delay caused by amendment. Specifically, plaintiffs may amend the complaint to add (1) Unipac, Acer Display and Quanta Display as defendants in order to clarify the liability of AU Optronics Corporation; (2) Chimei Innolux, which was formed by a three-way merger by current defendants; and (3) Epson Imaging Devices Corporation.

However, the Court finds that the indirect purchaser plaintiffs have not shown that it is appropriate to amend the complaint to name three additional proposed defendants, Hydis Technologies Co., Mitsubishi Electric Corporation, and Mitsubishi Electric & Electronics USA, Inc. The Court finds that adding these entities as defendants will cause delay due to service, new discovery, and motion practice. In addition, adding these entities as defendants might require revisiting class certification to

address issues specific to these entities. The indirect purchaser plaintiffs may, however, amend the complaint to name these entities as co-conspirators.

The Court GRANTS plaintiffs' motion to amend to add the following entities as named co-conspirators: Fujitsu Display Technologies Corporation, NEC Corporation, NEC LCD Technologies Ltd., NEC Electronics America, Inc., Panasonic Corporation, Panasonic Corporation of America, Sony Corporation, and S-LCD Corporation.

The indirect purchaser plaintiffs also seek to add four new state law claims. The Court GRANTS plaintiffs leave to amend to add claims under the New York antitrust statute and the Missouri Merchandising Practices Act.[1] The Court DENIES plaintiffs' motion to the extent that plaintiffs seek to add claims under Illinois and Oregon law. The States of Illinois and Oregon have opposed the proposed amendments on numerous grounds.[2] The Court finds that the States' objections are well taken in light of the issues raised in the pending proceedings related to the indirect purchaser plaintiffs' motion for approval of the class settlements with certain defendants.[3]

The indirect purchaser plaintiffs' amended complaint must be filed by **April 29, 2011**. This order resolves Docket Nos. 1948 and 2016.

**IT IS SO ORDERED.**

Dated: April 12, 2011

_____
SUSAN ILLSTON
United States District Judge

---

[1]  In an order filed April 11, 2011, the Court granted in part and denied in part defendants' motion to dismiss Missouri's claim under the MMPA in Missouri's *parens patriae* complaint. Docket No. 2632. When preparing the amended complaint, plaintiffs should review the Court's April 11, 2011 order for guidance regarding the MMPA claim.

[2]  In contrast, the State of Missouri filed a statement in support of the indirect purchaser plaintiffs' motion to amend the complaint to add the MMPA claim.

[3]  Those proposed settlements include, *inter alia*, damages settlements for Oregon and Illinois classes, although the operative complaint does not allege claims under Oregon and Illinois law, and the Court did not certify statewide classes under Oregon and Illinois law. Oregon and Illinois have intervened and filed objections to the proposed settlements. In December 2010, the Court appointed retired Judge Weinstein to review the indirect purchaser plaintiffs' proposed settlements, and to make a recommendation to the Court regarding approval of those settlements.

**EXHIBIT C**

Pages 1 - 62

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE SUSAN ILLSTON

IN RE:  TFT-LCD (FLAT PANEL)          )
ANTITRUST LITIGATION,                 )
                                      )MDL 07-1827 SI
                                      )San Francisco, California
                                      ) September 22, 2010
_____) 3:30 p.m.

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

**For Direct Purchaser**      LIEFF, CABRASER, HEIMANN
**Plaintiffs:**                    & BERNSTEIN
                              275 Battery Street, 30th Fl.
                              San Francisco, California  94111
                    BY:  **RICHARD M. HEIMANN, ESQ.**
                         **JORDAN ELIAS, ESQ.**
                         **ERIC FASTIFF, ESQ.**
                         **BRENDAN GLACKIN, ESQ.**


                              PEARSON, SIMON, WARSHAW & PENNY
                              44 Montgomery
                              Suite 2450
                              San Francisco, California 94104
                    BY:  **BRUCE SIMON, ESQ.**
                         **JESSICA GRANT, ESQ.**


           **(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

*Reported By:*   **Debra L. Pas, CSR 11916, CRR, RMR, RPR**
                 Official Reporter - US District Court
                 Computerized Transcription By Eclipse

1   to you.

2          And then the other issues are wording and --

3          **THE COURT:**  And that I will deal with.  I've got an

4   order.  I just haven't done it yet.

5          All right.  Now, let's talk about the indirect

6   purchasers.  The motion to file the third amended complaint,

7   who wants to talk about that?

8          **MR. CORBITT:**  Good afternoon, your Honor.  Craig

9   Corbitt.

10         **THE COURT:**  Okay.  The indirect purchasers want to

11   file a third amended complaint to add new defendants,

12   Unipack -- I'll give you my view start to finish and then you

13   can tell me briefly what you want to argue about, okay?

14          I'm inclined to grant leave to amend to add Unipack,

15   Acer Display and Quanta Display.

16          I have a question for you about Chimei Innolux.  I'm

17   inclined to grant this.  Who is the defendant who is going to

18   be responding on these issues?

19         **MR. CHERRY:**  Well --

20         **THE CLERK:**  Is this Epson's?  No, this isn't Epson's

21   motion.

22         **MR. CHERRY:**  Yeah, this is the motion for leave to

23   amend.

24         **THE CLERK:**  Oh, wait, but that's what Mr. Johnson,

25   Brady Johnson was really, really wanting to --

1          **MR. CHERRY:**  The state AG's are objecting.

2          **THE CLERK:**  Right.  I have a phone number.  I can

3   call him on the old-fashioned phone.  But he's really, like, in

4   a panic that he's not able to -- and I don't know how important

5   it is.

6          **THE COURT:**  Why don't you phone him and see if you

7   can get him?

8          **THE CLERK:**  Okay.  Well, I just wanted to make sure

9   it's okay that I do all that stuff.

10          (Brief pause.)

11          **MR. CHERRY:**  Your Honor, if you wanted to know who is

12   going to address it, I wasn't planning to address the motion in

13   particular, but you asked about the Chi Mei and the Innolux,

14   and I would like to speak to that when you are ready.

15          **THE COURT:**  And then you are going to do the --

16          **MR. LAZERWITZ:**  Mike Lazerwitz for LG Display.

17          We wrote the papers, but the -- our position is

18   straightforward and I don't think you need to hear more from

19   us.

20          Mitsubishi also filed its own papers and I thought

21   that the Mitsubishi lawyer was going to be here and raise that

22   with you.

23          **MR. TRUAX:**  Good morning, your Honor.  It's Terry

24   Truax, T-r-u-a-x, on behalf of Mitsubishi Electric Corporation.

25          **THE CLERK:**  Can you guys make sure you speak loud so

1  that the person on the phone can -- Mr. Brady, if you could

2  quickly state your appearance?

3          **MR. JOHNSON:**  My name is Brady Johnson for the State

4  of Washington.

5          **MR. HARROP:**  This is Blake Harrop for the State of

6  Illinois.

7          **THE COURT:**  Are the two of you all that are on the

8  phone now?

9          **THE CLERK:**  I have other numbers.  I can --

10          **THE COURT:**  Welcome.  That's fine.

11          **MR. JOHNSON:**  We're not hearing you.

12          **THE CLERK:**  Okay.  Well, you're on our old phone

13  system, so this is all you get.  Hopefully, you can hear it.

14          **MR. JOHNSON:**  Okay.  There you go.

15          **THE COURT:**  All right.  The indirect purchasers want

16  to add Chimei Innolux as a defendant.  As I understand it, it

17  was formed in March of this year by a three-way merger of

18  current defendant Chi Mei Optoelectronics Corp. and two other

19  defendants.

20          I wanted to know what the real problem with this was.

21  It didn't sound like a big deal to me.

22          **MR. CHERRY:**  Well, two things.  I mean, we don't

23  believe there has been any showing of any involvement of

24  Innolux or Topoly.  I mean, they've never been mentioned.  They

25  just happened to enter into a three-way merger in March of this

1   year.

2          And the complaint just throws them in there with a

3   single sentence that says they should -- you know, they should

4   be defendants and they participated in the conspiracy.  One

5   sentence.  That's it.  And that can't be enough to bring them

6   into the case.  You know, they have to allege some facts to

7   show they should be in the case.

8          If it's just a name change, you know, for the -- to

9   say we're now the legal entity responsible for what CMO might

10  have done, that's one thing; but they're saying Innolux and

11  Topoly should be in the case and that they -- and in a single

12  sentence just saying they participated in the conspiracy.

13          **THE COURT:**  Mr. Corbitt?

14          **MR. CORBITT:**  I think that's kind of an over-reading

15  of the complaint, at least what we had in mind.

16          Chimei Innolux is, as we understand it, a new

17  entity -- and this is very similar to the AUO issue, is a new

18  entity that combined the former Chi Mei Corporation with

19  Innolux and TPO Display Corporation.  So it is appropriate for

20  us to substitute Chimei Innolux in place of the former Chi Mei.

21  I don't believe there is any dispute about that.

22          And we are -- to the extent that there is any

23  subsidiary liability from Innolux or TPO Display Corporation,

24  certainly Chimei Innolux would be liable for that we believe

25  under the law, and under Taiwanese law in particular, but we

1   have not named them as additional defendants.  We are simply

2   pointing out that Chi Mei and Innolux Display Corporation and

3   TPO Display Corporation are the predecessor entities, along

4   with Chi Mei, that now form the new defendant Chimei Innolux.

5          **MR. CHERRY:**  Your Honor, I don't believe that's what

6   the complaint says.

7          **THE COURT:**  What paragraph is it?

8          **MR. CHERRY:**  Do you have your complaint?

9          **MR. CORBITT:**  Yes.  I think it's Paragraph 66.

10         **MR. CHERRY:**  Can I see?

11         (Brief pause.)

12         **THE COURT:**  He's right.  It says more than that.

13         **MR. CHERRY:**  I'm looking for the paragraph, but there

14  is -- I know there's a paragraph in here that says that they

15  participated -- here.  It's Paragraph 160.  It just says:

16         "The three predecessor companies of

17      Chimei Innolux -- Chi Mei Optoelectronics,

18      Innolux and TPO -- participated as

19      co-conspirators in the conspiracy."

20         There is no basis for that.

21         **THE COURT:**  I will give you leave to amend the

22  complaint to say -- if it's a new name because of the merger to

23  say what it is, but not to bring in the other two entities

24  unless there are specific factual allegations about them.

25         **MR. CHERRY:**  Okay.

 1            MR. CORBITT:  Okay.

 2            MR. BLUMENSTEIN:  Your Honor, Carl Blumenstein of

 3   Nossaman for AU Optronics.

 4            If we could go back to your Honor's first comment

 5   regarding Quanta, Acer Display and Unipack, in their reply

 6   papers what the plaintiff said, to make clear, was we just want

 7   to add these allegations.  We are not naming them as party

 8   defendants.

 9            I think the complaint and the motion may have been a

10   little bit ambiguous with that, with regard to that

11   clarification, that the allegations will just come in.  We'll

12   deal with the allegations, but just to be clear, they are not

13   going to be named as party defendants, which I think we all

14   agree is --

15            THE COURT:  It's not possible.

16            MR. BLUMENSTEIN:  Right.

17            THE COURT:  I understood that.

18            MR. CORBITT:  That's correct, your Honor.  However,

19   in contrast to the issue we were just talking about with

20   Chi Mei, we think it's very clear that these predecessor

21   entities, while they were independent, were participants in the

22   conspiracy and that AUO is not liable for them.  We think

23   that's clearly alleged in here.

24            THE COURT:  But they are not named as defendants.

25            MR. CORBITT:  They can't be.  They don't exist any

1   more.

2           **THE COURT:**  Okay.  Hydis, I'm inclined to deny that.

3   I just think it's too late to do that.  I think it's going to

4   just take too much time and there's no good reason not to do

5   this -- not to have done it before.

6           I think it's -- I would give leave to name them as a

7   co-conspirator, but not to bring them in as a defendant.

8           The same thing about Mitsubishi, frankly.  I think

9   it's too late to bring them in.

10          We can talk about Epson in a minute.  You want to add

11  co-conspirators.  You want to add Fujitsu, right, as a

12  co-conspirator?

13          **MR. CORBITT:**  Yes.

14          **THE COURT:**  Is it named as a co-conspirator in any of

15  the other complaints?

16          **MR. CORBITT:**  I don't know that it is, your Honor,

17  but we have alleged and we have evidence that they participated

18  in bilateral conspiracy meetings.  I'm not sure whether any

19  other plaintiff named them or not.

20          **THE COURT:**  What about Sony?

21          **MR. CORBITT:**  Sony has a joint venture with Samsung,

22  SCL -- SLCD, excuse me -- which is, we think, through that

23  joint venture, through Samsung's joint ownership and control of

24  that with Sony is a participant in the conspiracy and is a

25  co-conspirator.

1       **THE COURT:**  Were they named as a co-conspirator in

2   any of the other cases?

3       **MR. CORBITT:**  Again, I don't know the answer.

4       **THE COURT:**  Well, I am inclined at this time to grant

5   that.

6       With respect to the adding of any state claims, I

7   will tell you that I'm inclined to deny your request to add

8   Illinois.  I'm inclined to deny your request to add Oregon.

9   I'm inclined to deny your request to add Missouri.

10      I wanted to ask you about New York.  You have already

11  got a claim, an indirect claim under New York state law.  And

12  you want to add the antitrust claim, the antitrust state law

13  claim, right?

14      **MR. CORBITT:**  Correct.

15      **THE COURT:**  The defendants suggest that that's going

16  to require a whole lot more briefing and decision making.  Do

17  you agree with that?

18      **MR. CORBITT:**  No, I don't, your Honor.  I think it's

19  a straightforward claim under state antitrust law, just like

20  the other states that you have that your Honor certified.  It's

21  the same class.  It's just a different relief that is now

22  available in light of the Supreme Court's *Shady Grove* decision.

23      Apparently, there are no new class reps there --

24      **THE COURT:**  Right because --

25      **MR. CORBITT:**  (Continuing) -- or anything like that.

1      THE COURT:  Does anyone, any defendant want to talk

2  about that?

3      MR. LAZERWITZ:  Michael Lazerwitz for LG Display.

4      Your Honor, all I would say is what we put on our

5  papers, what -- our position is it's a little bit late in the

6  day, but if your Honor is inclined to disagree with us, we will

7  analyze the new claim and if we think we have a motion, we will

8  file it.  If we don't, we won't.

9      THE COURT:  I'm inclined to allow you to add the New

10  York antitrust claim on account of things you set out in your

11  papers, but, as I say, I'm inclined to deny Illinois, Missouri

12  and Oregon.

13      And then we get to the new class settlements.

14      MR. CORBITT:  I think Mr. Scarpulla may address the

15  settlements, so can I, if I may, your Honor, respond to your --

16      THE COURT:  You may briefly?

17      MR. CORBITT:  (Continuing) -- your inclination to

18  deny on the other points, which I -- I gather it all comes down

19  to the timeliness issue.

20      THE COURT:  I really does, yes.

21      MR. CORBITT:  And I guess --

22      THE COURT:  Timeliness and the timing.  We are now

23  however many months downstream from having certified your

24  class.  We are at least 12 months downstream from Mr. Scarpulla

25  having said, "We're ready to try this case next month," or

1  Mr. Alioto or somebody.   Somebody said they were really ready,

2  and now we are amending the complaint.   So now all those things

3  go together to make me think it's not right.

4      **MR. CORBITT:**   I guess I would say, your Honor, a lot

5  has happened in the meantime, including a great deal of

6  discovery that has been taken.   And this goes to the point of

7  adding the new defendants, is that we, in fact, have testimony,

8  have documents that there simply wasn't time to review a year

9  ago when they were at the class cert stage that indicate the

10  involvement of these companies.

11      And we really didn't get underway with merits

12  depositions at all until, I think, right around the time the

13  class cert motions were argued, and there are now several dozen

14  of them.   There are several dozen more, I think, left to be

15  completed.

16      And many, many documents that -- out of millions that

17  were produced had not been finally reviewed at that stage,

18  which now have been.

19      So we now have evidence of participation by these

20  companies in the conspiracy.   We think that they are part of

21  it.

22      Moreover, we recognize that this case has been going

23  on for several years now, but by the same token, the discovery

24  cut-off that your Honor set is next May, which is eight months

25  from now.   And the trial date is nearly a year and a half from

 1  now, in February 2012.  And we think in light of that, that

 2  there is ample time to get whatever additional discovery may be

 3  necessary from these companies.

 4          There is no prejudice that we can see to the

 5  defendants to the trial schedule.  We are obviously still

 6  committed to that.  And, you know, we will do what it takes to

 7  get the work done.

 8          But you know, obviously, it's within your Honor's

 9  discretion, but I think this is not the kind of situation, as

10  you've seen in some of the cases, where denial of leave to

11  amend was upheld by the Ninth Circuit, where there was just

12  extreme dilatoriness to the point of discovery would have to be

13  reopened or, you know, it was two weeks before trial or

14  anything like that.  We are not anywhere close to that.  We are

15  a long way away.

16          In terms of the states that we propose to add, in

17  particular Oregon and Illinois, that is a direct result of the

18  Supreme Court's decision last spring, I think in April -- I

19  don't remember the exact month -- in the *Shady Grove* case.

20          Prior to that, it was pretty clear under state law

21  that a class claim could only be brought by -- if it could be

22  brought, could only be brought by the Attorney Generals of

23  those states.  That was the precise issue that went up to the

24  Supreme Court in the context of New York law and the Supreme

25  Court said, no, that's wrong.  Rule 23 trumps the state laws,

1    or the state in that regard.  And as long as you can allege a

2    class under Rule 23 -- you can bring a case under Rule 23 even

3    if -- even despite the fact that if your case were in state

4    court, you could not do that.  Only the Attorney General could

5    do that.  So that is a clear change in the law, or at least an

6    explication of the law by the Supreme Court that is relatively

7    recent that simply did not exist at the time of the class cert.

8             And, again, we think that the burden to the

9    defendants would be minimal.  There are some new class reps,

10   but we would make them available right away.  We don't think

11   that the analysis of the issues in terms of the methodology for

12   class certification in terms of all the arguments the

13   defendants have made and presumably would make again about the

14   complexity of the distribution chain and all the difficulties

15   that pass through and so forth, these are the same issues that

16   your Honor has already ruled on and they are really no

17   different with respect to these new states.

18            So we think that that is a clear changed circumstance

19   and a recent changed circumstance that justifies adding those

20   states to the case, although they weren't in there previously.

21            Likewise, for Missouri.  Unfortunately, the Missouri

22   Attorney General, I think, was -- the woman from that office,

23   Ms. Schneider, was one of the people who intended to be on the

24   conference call, who is not present or tied in, but I would

25   respectfully request that since she supports the amendment and

1  would like to see the Missouri state claim added to this case,

2  that your Honor would allow her to participate or at least

3  defer a ruling on that until she has an opportunity to address

4  the Court.

5           THE COURT:  Did she file something to that effect?

6           MR. CORBITT:  I'm pretty sure she contacted --

7           THE COURT:  No, no, no.  I mean, saying she supported

8  your motion?  Did she file something?

9           MR. CORBITT:  I don't recall that she filed it.  I

10  have had a number of conversations with her.

11           You know, frankly, since there was no opposition to

12  the concept of a Missouri claim per se, other than the general

13  points the defendants made in opposing the motion that

14  Mr. Lazerwitz had in his briefs and the other defendants and so

15  forth, she was prepared to come in and say something, but there

16  were no -- no questions raised about the substantive issues

17  under Missouri law or changes in the Missouri law that we

18  thought was necessary.

19           THE COURT:  Did she just file a lawsuit?

20           MR. CORBITT:  I'm sorry?

21           THE COURT:  Did she just file a lawsuit?

22           MR. CORBITT:  She filed a lawsuit, yes, I think about

23  a month ago, around the same time at the time rest of the

24  states filed a case.

25           THE COURT:  All right.  Well, she -- I'm sorry for

1  the telephone awkwardness.  If she wants to file something,

2  I'll be happy to take a look at it.

3          **MR. CORBITT:**  I appreciate that.

4          **THE COURT:**  I had not understood her to be supporting

5  your motion.

6          Okay.  What else?

7          **MR. CORBITT:**  There are only a couple of states that

8  don't like this, your Honor.  The rest of them are in favor

9  enough of it.

10          Well, I think those are the main points that I would

11  make, your Honor.  The rest of it is in our papers.

12          But, again, I would urge you that the timeliness

13  issue is -- I understand, obviously, your Honor's desire to get

14  this case moving, to not have a delay, to keep the discovery

15  cut-off, to keep the trial date.  We fully support that.  No

16  one wants that more in any case than plaintiffs do.  In

17  particularly, we do.  And we would not have tried to do this

18  had we not thought that there was really more than sufficient

19  time in order to get this done.

20          And, also, respectfully we think that the Supreme

21  Court's *Shady Grove* decision is ample grounds to permit an

22  amendment to add these additional states when we could have

23  done it before.

24          **THE COURT:**  All right.  Thank you.

25          **MR. HAGLUND:**  Mike Haglund representing the State of

1    Oregon.

2            One of the points we did not make in our papers is

3    this, your Honor.  We filed our case in the District of Oregon

4    on August 10th.  It's now been transferred and is in your

5    court.

6            The scope of the amendment that the plaintiffs -- the

7    indirect plaintiffs seek in their amended complaint excludes

8    governmental entities.  It's a much more practical approach to

9    let the superior -- the lawyers with the superior ability to

10   represent Oregon governments and Oregon consumers, the Attorney

11   General, to proceed with Oregon's case.

12           If the amendment were granted, we have this situation

13   where the indirect purchaser plaintiffs here are representing

14   Oregon consumers, yet, we stay in the case as the Attorney

15   General representing State of Oregon interests on behalf of the

16   state government and all of the local governments, some 2,000

17   estimated total governmental entities in the state.

18           The other point I would like to make --

19           **THE COURT:**  You oppose his motion?

20           **MR. HAGLUND:**  Absolutely.

21           **THE COURT:**  That would be a bad thing, you think.

22           **MR. HAGLUND:**  It's a very, I think, awkward and

23   impractical approach to the State of Oregon's claims, which

24   have not heretofore been in the case because of the way the

25   class was defined.  To have, in effect, Oregon claimants

1  bifurcated, governments represented by the AG and consumers

2  represented by the independent -- or by the indirect purchaser

3  plaintiffs.

4        The other point I think that's worth making is that

5  their reading of *Shady Grove* is incorrect.  Justice Stevens was

6  quite clear in the opinion that his -- the applicable opinion

7  in that case; that even where a state procedural statute may

8  be, as he put it, procedural in the ordinary sense, it may be

9  so bound up with the substantive rights given -- applicable to

10  a particular claim that it still must give way or the federal

11  rule must still give way to that combination of procedure and

12  substance.  That's exactly what we have here.

13        Oregon adopted it's own repealer, *Illinois Brick*.

14  It's abundantly clear that the AG, both under that state

15  statute as well as under Section 16 of the *Clayton Act*, is the

16  right law firm to represent Oregon consumer as well as

17  governmental interests.  Their reading of *Shady Grove*, as if

18  Rule 23 simply trumps everything associated with these state

19  repealers is just an incorrect analysis of *Shady Grove*.

20        Thank you.

21        **THE COURT:**  All right.  Thank you.

22        **MR. HARROP:**  Your Honor, this is Blake Harrop on

23  behalf of the State of Illinois.

24        We are finding that as long as we stay on mute here,

25  we can hear you; but as soon as I take you off mute, I cannot

1  hear anybody in the courtroom.  So I'm going to sort of do this

2  like a walkie-talkie and try to be short with what I say.

3          I support everything that Mr. Haglund just said and

4  want to emphasize as well that the Illinois statute is clearly

5  a substantive statute that would under the readings of both the

6  assent and the current -- that is, five justices of the Supreme

7  Court -- be one that should be honored ahead of a private

8  action under class certification.

9          **THE COURT:**  Thank you.

10          **MR. CORBITT:**  May I respond briefly, your Honor?

11          **THE COURT:**  Briefly.

12          **MR. CORBITT:**  *Shady Grove*, we think, they are just

13  wrong, but your Honor can read the case and obviously decide

14  for yourself.

15          But the whole point of *Shady Grove* is that when you

16  are in Federal Court, Rule 23 applies.  If you meet the

17  requirements of Rule 23, you can have a class.

18          With respect to the comments by the gentleman from

19  Oregon, Oregon does not purport to represent businesses, only

20  natural persons as we understand it.  And so, therefore, the

21  same gap that he alleges would be present if we don't represent

22  governmental entities is present, I think, in his complaint.

23          Moreover, your Honor, we already represent consumers

24  and businesses in Oregon and Illinois and all the other states

25  to this extent.  Your Honor certified a nationwide injunctive

1  class, which is, obviously, everybody in the country.

2         You know, we've been doing this case for three years.

3  We've put a tremendous amount of effort into it, as your Honor

4  knows.  We've these classes certified.  We've taken dozens and

5  dozens of depositions and reviewed millions of documents.  And

6  so the notion that Attorney Generals, with all due respect,

7  three years later can come in and file a case and therefore it

8  should be presumed that what they do is superior to what we can

9  do, we think is just wrong and is also contrary to the

10  principle enunciated in the State of Hawaii case from many

11  years ago by the Supreme Court, which is that an antitrust case

12  as class actions are superior to parents claims.

13         **THE COURT:**  Now, I wanted to talk about the Epson and

14  Chung Hwa settlements.

15         **MR. SCARPULLA:**  Good afternoon, your Honor.  Francis

16  Scarpulla appearing on behalf of the indirect purchasers on

17  that issue, your Honor.

18         **THE COURT:**  Good afternoon.

19         I'm very concerned that because the -- well, we have

20  objections by Oregon, Washington and Illinois.  We have an

21  attorney for Oregon in the courtroom, right?

22         Do we have Illinois or Washington on the phone?

23         **UNIDENTIFIED VOICE:**  Yes, your Honor.  We are here.

24         **THE COURT:**  Okay.  My concern is that I now realize

25  because of the issues raised in Epson, and thinking back on