

17th Floor  |  Four Embarcadero Center  |  San Francisco, CA  94111-4109
415-434-9100 *office*  |  415-434-3947 *fax*  |  **www.sheppardmullin.com**

Writer's Direct Line: 415-774-2963
mscarborough@sheppardmullin.com

September 17, 2012

Hon. Charles A. Legge
JAMS
Two Embarcadero Center, Suite 1500
San Francisco, CA  94111

      Re:    <u>In re: Cathode Ray Tube (CRT) Antitrust Litigation</u>
             MDL No. 1917; Case No. CV-12-80151 MISC
             Reply In Support of Motion to Quash Sharp Subpoena
             Hearing:  September 20, 2012 at 2:00 p.m.

Your Honor:

      Defendants submit this reply in support of their motion to quash Sharp's subpoena to Saveri & Saveri, Inc.  The parties agree that this motion is governed by the multi-factor test articulated in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004).  As described in Defendants' motion, and below, those factors overwhelmingly favor quashing Sharp's subpoena.

**I.**     **<u>Sharp Has Several Avenues by Which It May Conduct Discovery in Korea, All of Which It Has Ignored.</u>**

      The first *Intel* factor asks whether the foreign tribunal can itself order production of the evidence sought by the § 1782 application.  Sharp's argument on this point, and throughout its opposition, rests on the false premise that it can obtain no documents through Korean discovery procedures.  Sharp tacitly admits that it made no effort to conduct discovery according to Korean rules, arguing instead that any such effort would be fruitless because those rules require litigants to specify the documents they seek, and Sharp "would not be able to provide the details required."  Opp. at 3.

      In fact Sharp has several avenues by which it could seek discovery via the Korean court.  Sharp could read the KFTC's 169-page public report describing its CRT investigation, which contains more than 280 citations to documents produced by CRT manufacturers, all of which are apparently in KFTC's possession.[1]  *See* Declaration of Hae Eun Choi In Support of Motion to Quash, ¶¶ 2-3.  Armed with these details, Sharp presumably could ask the Korean court to order the defendant CRT makers or the KFTC to produce certain of those documents. Sharp could also simply ask Saveri – who represents a proposed class of which Sharp would be a

---

[1] Sharp's assertion that no such report exists is not accurate.  *See* Declaration of Keum-Seok Oh in Support of Sharp Corporation's Opposition (Dkt. No. 1339) ("Oh Decl.") ¶ 11 ("[T]he KFTC did not prepare or issue any formal document, such as an examiner's report … and may no longer have or may never have had substantial evidentiary documents.").

SHEPPARD MULLIN RICHTER & HAMPTON LLP
Hon. Charles A. Legge
September 17, 2012
Page 2

member in the U.S. CRT litigation[2] – to provide sufficient details to enable Sharp to ask the Korean court for particular documents in discovery, or at least to narrow the scope of the subpoena.  Sharp could also presumably invoke the Korean Civil Procedure Act ("CPA") provision that allows the court to order a party holding documents to furnish certain required details.  *See* Declaration of Deok-Gu Lee In Support of Defendants' Motion to Quash Sharp Subpoena (Dkt. No. 1327) ("Lee Decl.") ¶ 12; *Id.* Ex. C (CPA) Art. 346.

Defendants do not concede that these procedures would necessarily be fruitful, or proper in whole or in part, as might actually be pursued.  But they are examples of potential discovery channels available to Sharp.  Proceeding under Korean rules would avoid the confidentiality concerns posed by Sharp's attempt to import the entire U.S. discovery record.  These options would also ensure that Sharp and the Korean Litigation Defendants would have equal access to discovery, and not gift one party access to millions of pages of documents and multiple corporate depositions, as Sharp's proposal would do.

**II.     Sharp's Bald Assertion that the Korean Court "Acknowledged Our Efforts" to Take U.S. Discovery Is Insufficient to Meet Its Burden to Show that the Korean Court Would Be Receptive to that Discovery.**

To support its argument under the second *Intel* factor, Sharp's declarant, Mr. Keum-Seok Oh, provides a vague, unsubstantiated hearsay statement that the Korean court "acknowledged [Sharp's] efforts" to acquire documents in the U.S., and "asked how long this procedure would take."  Oh Decl. ¶ 13.  Based on this inadmissible hearsay, Mr. Oh speculates that the Korean court "would wait until Sharp submitted evidence it acquired through the U.S. court procedure before moving forward with the case."  *Id.*  Sharp in its opposition brief stretches this speculation further, claiming that the Korean court "indicated that it would be receptive" and "made clear that it is not hostile" to Sharp's application.  Opp. at 5, 2.

The statements that Mr. Oh attributes to the court are inadmissible hearsay, and the inferences that Sharp draws from them are speculation.  Both should be disregarded.  *Cadillac Fairview/California, Inc. v. Dow Chemical Co*., 299 F.3d 1019, 1026 (9th Cir. 2002); *Travelers Cas. & Sur. Co. of America v. Telstar Const. Co., Inc.*, 252 F.Supp.2d 917, 926 (D. Ariz. 2003); N.D. Cal. Civ. L.R. 7-5(b).  Notably, Mr. Oh nowhere states that the Korean court approved of the proposed U.S. discovery.  Nor did Sharp provide a transcript or an order from the Korean court expressing interest in any U.S. discovery.  There is simply no evidence in the record that the Korean court would be receptive to the vast discovery Sharp seeks.

Indeed, the only evidence is to the contrary, as explained in the Lee Declaration.  Sharp argues that Korea's declaration limiting its participation in international discovery under

---

[2] Although Sharp has requested to be excluded from certain proposed settlement classes, as an alleged purchaser of CRT products it presumably remains a prospective member of any future class that might be certified.

SHEPPARD MULLIN RICHTER & HAMPTON LLP
Hon. Charles A. Legge
September 17, 2012
Page 3

the Hague Convention is irrelevant, because it refers to Korea's treatment of requests from abroad. But Korea's accession language is evidence of its belief that pretrial discovery – both international and domestic – should be targeted, not broad and open-ended.[3] In addition, Defendants offered evidence showing that the Korean court would be hostile to any procedure that provides one party with such an enormous tactical advantage.[4] Lee Decl. Ex. C, Art. 1; *Id.* ¶¶ 10, 20. Sharp's opposition ignores this evidence.

Having failed to produce any admissible evidence or rebut Defendants' showing on the "receptivity" factor, Sharp instead misstates the applicable burden on that factor. Sharp argues that Defendants bear the burden to provide specific instructions from the foreign court stating that it would not welcome the proposed U.S. discovery. Opp. at 6. In support, Sharp cites two cases invoking a standard created by the Second Circuit before the U.S. Supreme Court's decision in *Intel*. *Id.* (citing *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095 (2d Cir. 1995) and *In re Gushlak*, 2011 WL 3651268 (E.D.N.Y. Aug. 17, 2011)). Courts disagree about the burden applicable to the "receptivity" factor after *Intel*. *See In re Application of Chevron Corp.*, 762 F.Supp.2d 242, 251-52 (D. Mass. 2010) (discussing burden post-*Intel* and declining to follow *Euromepa*). Within the Ninth Circuit, however, courts have generally placed the burden on the requesting party to provide facts showing that the foreign court would welcome the proposed discovery. *See, e.g., In re Application of Peter Damien Marano for Order to Take Discovery Pursuant to 28 U.S.C. § 1782*, No. CV-09-80020-MISC-DLJ, 2009 U.S. Dist. LEXIS 20060, at *9-10 (N.D. Cal. Feb. 25, 2009) (denying application for § 1782 discovery where applicant failed to provide evidence that British court would be receptive); *In re Application of Digitechnic*, No. C07-414-JCC, 2007 U.S. Dist. LEXIS 33708, at *11-12 (W.D. Wash. May 8, 2008) (second *Intel* factor favors motion to quash, despite applicant's unsubstantiated assertion that foreign judge "expressed great interest" in potential U.S. discovery and extended its deadline). Sharp fails to meet that burden.

### III.  Sharp Essentially Admits That It Seeks to Circumvent Korean Discovery Limitations.

Sharp argues that Korea strictly limits discovery; that any effort to pursue discovery in Korea would be futile; and therefore it must pursue discovery through its Section

---

[3] Korea's accession language is also relevant because Section 1782 is designed to encourage foreign countries to provide similar access to documents within their borders. *Schmitz v. Bernstein Liebhard & Lifschitz, LLP*, 376 F.3d 79, 83 (2d Cir. 2004). Because Korea has foreclosed this possibility, any discovery provided to Korean litigants cannot serve this purpose.

[4] Sharp's request would also provide it with an unfair advantage because Sharp would have access to at least 18 depositions of Defendants' corporate representatives. Korean civil procedure laws do not allow for pretrial depositions, let alone corporate depositions. Korean Litigation Defendants would be placed at an extreme disadvantage if Sharp is the only party with access to this powerful discovery tool.

SHEPPARD MULLIN RICHTER & HAMPTON LLP
Hon. Charles A. Legge
September 17, 2012
Page 4

1782 application. Yet Sharp insists that its application is not an attempt to "circumvent" Korean discovery limitations. Opp. at 6. Sharp may resist that label, but it admits all the factual predicates.[5]

Sharp also obfuscates the applicable legal standard, confusing the statute's requirements with the *Intel* Court's discretionary factors. For example, Sharp argues that foreign discoverability rules should not "govern the sufficiency of a Section 1782 application…." Opp. at 5-6. As the *Intel* Court observed, the statute does not *categorically* bar a district court from ordering production of documents that would not be discoverable in the foreign jurisdiction. 542 U.S. 259-61. But the Court goes on to address the distinct question of how a district court should exercise its discretion to reject Section 1782 discovery, acknowledging that "the grounds Intel urged for categorical limitations on § 1782(a)'s scope may be relevant in determining whether a discovery order should be granted in a particular case." *Id.* at 264. Thus, the Court unquestionably can and should consider Korea's "proof gathering restrictions" when determining whether Sharp's application is "an attempt to circumvent" those restrictions. *Id.* at 265.

Similarly, Sharp argues that a section 1782 applicant "is not required to show exhaustion" of discovery methods in the foreign court to obtain relief in the U.S. court. Opp. at 6. True enough. But Sharp has not remotely approached "exhaustion." It has made no effort whatsoever to proceed under Korean discovery rules. Sharp's complete failure to pursue discovery in Korea is relevant to the Section 1782 analysis because it strongly suggests an attempt to circumvent those rules. *See* Mot. at 7-8 (citing cases). Sharp attempts to distinguish these cases by highlighting facts that were not central to, or played no role in, the courts' "circumvention" analysis. Opp. at 7. In fact, courts often cite an applicant's failure to pursue discovery in the foreign forum as a reason to deny § 1782 discovery. *See also In re Babcock Borsig AG*, 583 F.Supp.2d 233, 241 (D. Mass. 2008) ("the district court may, in its discretion, properly consider a party's failure first to attempt discovery measures in the foreign jurisdiction.").

IV.     **Sharp's Subpoena is Overbroad and Unduly Burdensome.**

Sharp argues that its request is not overbroad, because the U.S. MDL documents it seeks are relevant to the Korean Litigation. Opp. at 8. It is unclear how Sharp can know this without reviewing the documents. The two cases certainly are not congruent in scope. They concern commerce in different geographic markets, on opposite sides of the globe. *See* Lee Decl. Ex. A (Korean Compl.) at 19 ("the issues at hand are substantively related to the Republic of Korea …."). They involve different, though overlapping, defendant entities. And Sharp complains only of overpriced CPTs, although much of the evidence it seeks concerns only CDTs.

---

[5] *See Dole v. Williams Enterprises, Inc.*, 876 F.2d 186, 188 n.2 (D.C. Cir. 1989) ("WHEREAS it looks like a duck, and WHEREAS it walks like a duck, and WHEREAS it quacks like a duck, WE THEREFORE HOLD that it is a duck.").

SHEPPARD MULLIN RICHTER & HAMPTON LLP
Hon. Charles A. Legge
September 17, 2012
Page 5

*Id.* at 12.  Sharp's declarant acknowledges these differences, and contradicts Sharp's position, when he states that "only … limited documents" will be relevant to the Korean Litigation.  Oh Decl. ¶ 23.  If this is true, then Sharp's request is by definition overbroad.

Sharp's subpoena is also unduly burdensome.  Although Sharp argues that sheer volume of documents is no reason to deny its request, it fails to cite to a single case authorizing a section 1782 applicant to import the entire discovery record from a related U.S. litigation, let alone a massive record of comprised of millions of pages of documents.

### V.        Sharp's Opposition Fails to Adequately Address Defendants' Confidentiality Concerns.

The Court premised any potential discovery on two alternative conditions, designed to maintain confidentiality of Defendants' competitive information.  Order Granting *Ex Parte* Application (MDL Dkt. No. 1299), at 2.  The first is Sharp's "acceptance of the terms of the Stipulated Protective Order ...."  But even if Sharp were to join the Protective Order, the Court would need to modify its terms before Sharp could use the requested documents.   Such use would presumably include sharing the documents with others – including witnesses and Korean Litigation Defendants – who would not be bound by the Protective Order.  Troublingly, Sharp's opposition appears to argue that the Court has already modified the Protective Order, such that Sharp is free to use the requested discovery in Korea.  Opp. at 10.  The Court has done no such thing.  Sharp has not even suggested a modification that would address Defendants' concerns, much less formally moved for a modification.

The Court's other alternative is to condition any discovery on compliance with "the terms of an order to be entered in the Korean litigation that is consistent with the goal of protecting the confidentiality of the affected parties."  *Id.*  Defendants have already demonstrated, and Sharp does not contest, that Korean courts lack the statutory authority to enter the sort of protective order common in U.S. litigation. Mot. at 10.  Sharp's declarant asserts that Korean law requires attorneys to keep in strict confidence all confidential information acquired during their practice.  Oh Decl. ¶ 25.  But this provision is inadequate to ensure Defendants' confidentiality.  First, it does not expressly apply to materials produced by third parties.  Choi Decl. Ex. B, Art. 26.  Second, it expressly does not apply "where such disclosure of confidential matters is especially prescribed otherwise by Acts."  *Id.*  Third, it is unclear whether the confidentiality rule would prohibit Sharp's Korean lawyers from sharing confidential information with their client, which apparently continues to make and sell CRT products[6] and could benefit competitively from Defendants' confidential information.

---

[6] *See* http://www.sharpmea.com/cps/rde/xchg/ae/hs.xsl/-/html/crt-tv.htm (last visited Sept. 13, 2012) (Sharp website advertising CRT TVs).

SHEPPARD MULLIN RICHTER & HAMPTON LLP
Hon. Charles A. Legge
September 17, 2012
Page 6

## VI. Conclusion.

For the foregoing reasons, Defendants respectfully request that the Court grant their motion to quash Sharp's subpoena.

Respectfully submitted,

*/s/ Michael W. Scarborough*

Michael W. Scarborough

for SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

cc: All Counsel via ECF

Attestation: The filer of this document attests that he has obtained the concurrence of the signatories thereto.

SMRH:406718534.2