Hon. Charles A. Legge (Ret.)
JAMS
Two Embarcadero Center, Suite 1500
San Francisco, CA 94111
Telephone: (415) 774-2644
Fax: (415) 982-5287
Special Master

JAMS

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | No. 07-5944 SC<br>MDL No. 1917 |
| CRAGO, INC., et al., | JAMS Reference No. 1100054618 |
| Plaintiffs, | REPORT AND RECOMMENDATIONS REGARDING PLAINTIFFS' MOTION FOR FURTHER DISCOVERY FROM DEFENDANT SAMSUNG ELECTRONICS COMPANY |
| vs. | |
| CHUNGHWA PICTURE TUBES, LTD., et al., | |
| Defendants. | |
| This Document Relates to the INDIRECT PURCHASER CLASS ACTION CASES | |

To the Honorable Samuel Conti, United States District Judge:

    This is the report and recommendations of the special master regarding a motion filed by the direct and indirect plaintiffs for further discovery from Samsung Electronics Company (hereinafter called "SEC").

    The motion was filed on August 7, 2012, was opposed and briefed, and was argued on September 4, 2012. It was then submitted to the special master for decision.

///

## BACKGROUND

There are three Samsung companies involved in this litigation:

(1) SDI, a company headquartered in Korea, engaged in the <u>manufacture</u> of CRTs. SEC is alleged to own a 19% interest in SDI. SDI sold the tubes which it manufactured to the Samsung defendant involved in this motion, SEC.

(2) The record indicates that SEC acquired from SDI the majority of the CRTs which SEC purchased. SEC then manufactured finished products; that is, television sets and computer monitors, incorporating the CRTs into them.

(3) SEC then sold the finished products to another Samsung company, SEA, a New Jersey corporation, which then sold the finished products in the United States. Plaintiffs believe that SEA is a wholly owned subsidiary of SEC.

## PRIOR DISCOVERY

Negotiations between plaintiffs and SEC regarding the scope of the discovery and the designations of custodians were at a time when both CRTs and finished products were subjects of the conspiracy alleged in plaintiffs' complaint. Finished products were subsequently removed from the allegations of the complaint. And they are no longer a subject of discovery, except insofar as the alleged conspiracy to fix the prices of CRTs may have had an <u>impact</u> on the pricing of the finished products.

## THE PRESENT DISCOVERY DISPUTE

SEC contends that the only proper discovery directed to it is discovery on the issue of "impact." And SEC has provided to plaintiffs documentation which establishes: the prices which SEC paid for the CRTs; the prices at which SEC sold the finished products to SEA; and the sales data for SEA's sales of televisions and monitors in the United States from 1998 through 2008. That documentation is much more extensive than this summary would indicate. Suffice it to say that having reviewed scope of the material, the special master is of the opinion that plaintiffs now have the statistical information necessary for plaintiff's experts to do the necessary analysis

of "impact." Plaintiffs concede this point.

However, plaintiffs contend that SEC, simply by virtue being a defendant alleged to have participated in the CRT conspiracy, is subject to discovery not just on "impact," but also on plaintiffs' underlying allegations of a conspiracy to fix the CRT prices. Plaintiffs' argument is made despite the fact that SEC was not a manufacturer of CRTs, but was indeed a purchaser of CRTs, albeit from its 19% owned manufacturer, SDI. SDI, the manufacturer of the CRTs, is also a defendant in this action and is represented by separate counsel. That company has also been and still is subject to relevant discovery requests from plaintiffs. And it is SDI's custodians, rather than SEC's custodians, who are much more likely to have the information which plaintiffs hope to obtain about the alleged conspiracy.

That is not to say that SEC is <u>immune</u> from discovery because it was not a manufacturer of CRTs. Indeed it is not. But in examining how much more time and expense should be expended in further discovery, SEC's connection to the transaction (a buyer of CRTs, and a manufacturer and seller of finished products) should be taken into consideration. At this stage in the discovery, it is not just SEC being named as a defendant which should control, but also the likelihood of relevant information being available from SEC. Even though SEC <u>might</u> have information if more documents or witnesses were examined, the lack of <u>probability</u> of that occurring (particularly after all of the discovery from all of the parties at this stage in the case) is a serious consideration. That combines with the fact that SEC has already produced to plaintiffs all of the information from all levels of manufacture and sale which plaintiffs' experts will need to prepare their reports on the open issue with respect to finished products, impact.

As noted above, when discovery began finished products were alleged to be a subject of the alleged conspiracy. In that setting, SEC and plaintiffs negotiated the identification of seventeen SEC custodians. However, after finished products were eliminated from the alleged conspiracy, those custodians arguably are no longer relevant because their knowledge was about finished products and not about CRTs. In addition, SEC has produced to plaintiffs over 600,000 pages of discovery, albeit that that discovery may not contain what plaintiffs want, other than the data relevant to impact.

3

Finally, SEC argues that the discovery to date, including the testimony of the witnesses who have been deposed, the documents produced, and the information from the cooperating defendant, have not implicated SEC in a conspiracy to fix the prices of CRTs. Of course, the special master could not reach such a conclusion without reviewing all of the evidence that has been produced. But plaintiffs have pointed to little or no evidence in the record which directly implicates SEC in a conspiracy to fix the prices of CRTs. Indeed, such participation is counter-indicated, since SEC was a purchaser of tubes and could be adversely impacted by higher tube prices.

## PLAINTIFFS' FURTHER REQUESTS

What more do plaintiffs seek by this motion?

First, they seek a total of 34 additional custodians of SEC, whose records have not been examined or produced. From plaintiffs' written request to SEC, it appears that the overwhelming majority, if not all, of those persons "played a significant role in the pricing of SEC CRT Finished Products sold by SEA" (emphasis added); letter of July 3, 2012 from plaintiffs' counsel to SEC's counsel. And that letter states that [plaintiffs] "have found significant evidence that they discussed with SEA employees pricing and other issues concerning CRT Finished Products manufactured by SEC for sale in the United States" (emphasis added). But that does not indicate any evidence of a conspiracy to fix the prices of the CRTs. And as stated, plaintiffs already have the detailed evidence necessary to analyze the impact of the CRT conspiracy, if any, on the sales of the finished products.

The above-quoted letter defined plaintiffs' requests more narrowly than counsel did at the argument of this motion on September 4, 2012, and that letter need not be the sole definition of the requests. However, the letter is relevant to identifying and balancing the information which is likely to be produced. And it is consistent with a list of potential custodians identified in plaintiffs' document introduced at the hearing on September 4, which states that at least 22 of the 34 requested custodians came from records of SEA, the retail seller of the finished products.

Plaintiffs also argue that they want communications between SDI and SEC, and between

SEC and SEA. There might reasonably be some relevant communications between SDI and SEC, but none have as yet have been called to the special master's attention, and SDI itself is producing documents from its agreed upon custodians. The communications between SEC and SEA are unlikely to contain any information about a conspiracy to fix the prices of the manufactured tubes.

The Special Master therefore concludes, and recommends to the District Court, that plaintiffs' request for an additional thirty-four custodians be denied. However, SEC has identified four SEC employees "who had CRT purchasing responsibilities." The special master recommends that those four should be designated as custodians whose records are to be examined: Hojung Lim, Hyeonju Jang, YounMo Kang and Jae Kwon Kim.

## RULE 30(b)(6) DEPOSITIONS

Plaintiffs noticed two 30(b)(6) depositions from Samsung. Ms. Kim London and Mr. Steve Panosian were the witnesses designated by Samsung. Plaintiffs complain that those witnesses were unprepared, and that they were unable to answer questions which plaintiffs proposed to them. Part of those issues are problems inherent in rule 30(b)(6) deposition procedure; that is, defining subjects or topics very broadly, thereby shifting the burdens to the recipients of the deposition notice, and then asking questions which are arguably not within the stated topics.

The depositions of these two witnesses total approximately 600 pages. The special master has not reviewed the entire transcripts, but is taking his guide from charts prepared by both plaintiffs and SEC regarding the topics covered, questions posed, and replies which plaintiffs believe to be inadequate.

From those documents, including plaintiffs' charts, the special master concludes and recommends to the District Court that it find that the witnesses were reasonably prepared on the topics which were posed by plaintiffs' notice. Information on certain of the questions was not available or was incomplete. But SEC cannot be blamed when the witness did not know the answer to a question on a smaller or more precise point which was not specifically identified in

the notice of the topics. The special master therefore recommends that plaintiffs' request for additional 30(b)(6) depositions be denied, but that plaintiffs may direct other more specific forms of discovery to SEC on the specific questions as to which the witnesses said they did not have answers.

Respectfully Submitted,

Dated: September 18, 2012

_____
Hon. Charles A. Legge (Ret.),
Special Master

Recommendations: Approved/Rejected/Modified.

Dated: _____

_____
Hon. Samuel Conti,
District Judge