1   David J. Burman (admitted *pro hac vice*)
    Cori G. Moore (admitted *pro hac vice*)
2   Noah G. Purcell (admitted *pro hac vice*)
    Nicholas H. Hesterberg (admitted *pro hac vice*)
3   **PERKINS COIE LLP**
    1201 Third Avenue, Suite 4900
4   Seattle, WA 98101-3099
5   Telephone:      206.359.8000
    Facsimile:      206.359.9000
6
    Joren Bass, Bar No. 208143
7   JBass@perkinscoie.com
8   **PERKINS COIE LLP**
    Four Embarcadero Center, Suite 2400
9   San Francisco, CA  94111-4131
    Telephone:      415.344.7120
10  Facsimile:      415.344.7320

11  Attorneys for Plaintiff
    Costco Wholesale Corporation
12

13                  UNITED STATES DISTRICT COURT

14              NORTHERN DISTRICT OF CALIFORNIA

15                  SAN FRANCISCO DIVISION

16

17  IN RE: CATHODE RAY TUBE (CRT)        Master File No. 3:07-cv-05944-SC
    ANTITRUST LITIGATION                 MDL No. 1917
18

19  This document relates to:            Judge: Honorable Samuel Conti

20  Case No. C 11-6397 SC                Special Master: Hon. Charles A. Legge (Ret.)

21  COSTCO WHOLESALE CORPORATION,        **Costco's Opposition to Toshiba Defendants'**
                                         **Motion to Compel Arbitration**
22                           Plaintiff,
                                         Date: October 30, 2012
23  v.                                   Time: 11:00 a.m.
                                         Before: Hon. Charles A. Legge,
24  HITACHI, LTD., et al.,               U.S. District Judge (Ret.), Special Master

25                           Defendants.

26

27

28

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION AND SUMMARY OF ARGUMENT ................................................ 1

II.     FACTS .......................................................................................................................... 3

III.    ARGUMENT ................................................................................................................ 3

        A.      Legal Standard ................................................................................................ 3

        B.      Costco's Claims Are Excluded from the Arbitration Clause ................................ 4

        C.      The Toshiba Defendants Who Never Signed Arbitration Agreements with
             Costco Cannot Compel Arbitration ..................................................................... 6

             1.      Costco Cannot Be Equitably Estopped from Litigating Against the
                    Non-Signatory Toshiba Defendants ............................................................ 6

             2.      Costco Cannot Be Required to Arbitrate Against the Non-Signatory
                    Toshiba Defendants Under an Agency Theory ......................................... 9

        D.      Costco Cannot Be Forced To Arbitrate with the Toshiba Defendants as to
             Purchases from Others ........................................................................................ 11

        E.      Before Costco May Be Forced to Arbitrate with Any Defendant, the Court
             Must Declare Any Waiver of Treble Damages Unenforceable in the
             Antitrust Context ................................................................................................ 13

        F.      Dismissal Is Unwarranted .................................................................................. 14

IV.     CONCLUSION ............................................................................................................ 15

1

## TABLE OF AUTHORITIES

2
**Page**

3

**FEDERAL CASES**

4

*Al-Safin v. Circuit City Stores, Inc.*,
    394 F.3d 1254 (9th Cir. 2005) ................................................................. 14

5

6

*Am. Pipe & Constr. Co. v. Utah*,
    414 U.S. 538 (1974) ................................................................................. 5

7

8

*Am. Soc. of Mechanical Engs., Inc. v. Hydrolevel Corp.*,
    456 U.S. 556 (1982) ................................................................................. 13

9

*Amisil Holdings Ltd. v. Clarium Capital Mgmt.*,
    622 F. Supp. 2d 825 (N.D. Cal. 2007) .................................... 1, 9, 11, 15

10

11

*AT & T Techs., Inc. v. Commc'ns Workers of Am.*,
    475 U.S. 643 (1986) ................................................................................. 5

12

13

*Bencharsky v. Cottman Transmission Sys., LLC*,
    625 F. Supp. 2d 872 (N.D. Cal. 2008) ................................................... 14

14

*Booker v. Robert Half Int'l, Inc.*,
    413 F.3d 77 (D.C. Cir. 2005) (Roberts, J.) ........................................... 14

15

16

*Boyd v. Homes of Legend, Inc.*,
    981 F. Supp. 1423 (M.D. Ala. 1997) ..................................................... 10

17

18

*Bridas Sapic v. Gov't of Turkm.*,
    345 F.3d 347 (5th Cir. 2003) .................................................................. 6

19

*Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*,
    622 F.3d 996 (9th Cir. 2010) .................................................................. 13

20

21

*Britton v. Co-op Banking Group*,
    4 F.3d 742 (9th Cir. 1993) .............................................................. 10, 11

22

23

*Britton v. Co-op Banking Group*,
    916 F.2d 1405 (9th Cir. 1990) ................................................................ 10

24

*Brown v. Gen. Steel Domestic Sales, LLC*,
    2008 WL 2128057 (C.D. Cal. May 19, 2008) ....................................... 10

25

26

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
    429 U.S. 477 (1977) ................................................................................. 13

27

28

1

2

**TABLE OF AUTHORITIES**
**(continued)**

Page

3

*Chastain v. Union Sec. Life Ins. Co.*,
    502 F. Supp. 2d 1072 (C.D. Cal. 2007) .......................................................................... 4, 7, 10

*Comer v. Micor, Inc.*,
    436 F.3d 1098 (9th Cir. 2006)........................................................................................... 4, 6, 7

*Coors Brewing Co. v. Molson Breweries*,
    51 F.3d 1511 (10th Cir. 1995)............................................................................................. 4, 12

*Crown, Cork & Seal Co. v. Parker*,
    462 U.S. 345 (1983)................................................................................................................... 5

*EEOC v. Waffle House, Inc.*,
    534 U.S. 279 (2002)................................................................................................................ 5, 6

*Fazio v. Lehman Bros.*,
    340 F.3d 386 (6th Cir. 2003)....................................................................................................... 4

*First Options of Chicago, Inc. v. Kaplan*,
    514 U.S. 938 (1995).............................................................................................................. 2, 12

*Fujian Pacific Elec. Co. v. Bechtel Power Corp.*,
    2004 WL 2645974 (N.D. Cal. Nov. 19, 2004)........................................................................ 8, 9

*Gaines v. Carrollton Tobacco Bd. of Trade, Inc.*,
    386 F.2d 757 (6th Cir. 1967)...................................................................................................... 14

*George Fischer Foundry Systems, Inc. v. Adolph H. Hottinger Maschinenbau GmbH*,
    55 F.3d 1206 (6th Cir. 1995)...................................................................................................... 14

*Graham Oil Co. v. ARCO Prods. Co.*,
    43 F.3d 1244 (9th Cir. 1994)...................................................................................................... 14

*Howsam v. Dean Witter Reynolds, Inc.*,
    537 U.S. 79 (2002)......................................................................................................................... 3

*In re Humana Inc. Managed Care Litig.*,
    285 F.3d 971 (11th Cir. 2002)................................................................................................ 1, 7, 9

*In re TFT-LCD Antitrust Litig.*,
    M 07-1827 SI, 2011 WL 1753784 (N.D. Cal. May 9, 2011)............................................ 4, 6, 8

*In re TFT-LCD Antitrust Litig.*,
    M 07-1827 SI, 2011 WL 2650689 (N.D. Cal. July 6, 2011) .................................................. 15

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF AUTHORITIES**
**(continued)**

Page

*In re TFT-LCD Antitrust Litig.*,
   M 07-1827 SI, 2011 WL 3353867 (N.D. Cal. Aug. 3, 2011) ....................................... 2, 11, 12

*In re TFT-LCD Antitrust Litig.*,
   M 07-1827 SI, 2011 WL 4017961 (N.D. Cal. Sept. 9, 2011) ........................................ passim

*Klay v. All Defendants*,
   389 F.3d 1191 ..................................................................................................... 7

*Kristian v. Comcast Corp.*,
   446 F.3d 25 (1st Cir. 2006) .......................................................................... 2, 13, 14

*Letizia v. Prudential Bache Sec., Inc.*,
   802 F.2d 1185 (9th Cir. 1986) ............................................................................... 11

*Maganallez v. Hilltop Lending Corp.*,
   505 F. Supp. 2d 594 (N.D. Cal. 2007) ...................................................................... 3

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
   473 U.S. 614 (1985) ......................................................................................... 2, 14

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983) ............................................................................................. 8, 14

*Mundi v. Union Sec. Life Ins. Co.*,
   555 F.3d 1042 (9th Cir. 2009) ............................................................................. 1, 7

*PacifiCare Health Sys., Inc. v. Book*,
   538 U.S. 401 (2003) ............................................................................................... 7

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
   388 U.S. 395 (1967) ............................................................................................... 1

*Redel's Inc. v. General Elec. Co.*,
   498 F.2d 95 (5th Cir. 1974) ................................................................................... 14

*Ross v. Am. Express Co.*,
   547 F.3d 137 (2d Cir. 2008) ............................................................................. 4, 6, 8

*Santa Cruz Med. Clinic v. Dominican Santa Cruz Hosp.*,
   No. C93-20613, 1995 WL 232410 (N.D. Cal. Apr. 17, 1995) ................................... 4

*Sokol Holdings, Inc. v. BMB Munai, Inc.*,
   542 F.3d 354 (2d Cir. 2008) .......................................................................... 4, 6, 8, 9

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
   130 S. Ct. 1758 (2010) .......................................................................................... 4, 6

*United States v. Neumann Caribbean Int'l, Ltd.*,
   750 F.2d 1422 (9th Cir. 1985).................................................................................. 15

*United Steelworkers v. Warrior & Gulf Navigation Co.*,
   363 U.S. 574 (1960) .............................................................................................. 1, 4

*Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.*,
   489 U.S. 468 (1989) .............................................................................................. 4, 6

*Wash. Mut. Fin. Grp., LLC v. Bailey*,
   364 F.3d 260 (5th Cir. 2004).................................................................................... 7

**FEDERAL STATUTES**

9 U.S.C. § 4 ......................................................................................................... 10, 13

1

## I.   INTRODUCTION AND SUMMARY OF ARGUMENT

2

"[A]rbitration is a matter of contract and a party cannot be required to submit to

3

arbitration any dispute which he has not agreed so to submit."  *United Steelworkers v. Warrior &*

4

*Gulf Navigation Co.*, 363 U.S. 574, 582 (1960).  Indeed, the purpose of the Federal Arbitration

5

Act is "to make arbitration agreements as enforceable as other contracts, *but not more so*."  *Prima*

6

*Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n.12 (1967) (emphasis added).  Yet

7

a close reading of Costco's contract with Toshiba America Consumer Products (TACP) shows

8

that this dispute is not one the parties agreed to arbitrate.  Recognizing that the benefits of

9

arbitration largely disappear when a third party has commenced related litigation that will

10

continue in any event, the contract says that Costco and its vendors "may bring court proceedings

11

or claims against each other . . . as part of separate litigation commenced by an unrelated third

12

party."  Toshiba MTC Exh. A ¶20.  That is what has happened here.  This case was commenced

13

by third parties unrelated to Costco—the class representatives—and Costco now brings claims

14

against TACP as part of that multi-district proceeding, as allowed by the contract.

15

Even if Costco's contract with TACP governed its claim against TACP here, it would not

16

cover Costco's claims against the other Toshiba Defendants.  The Toshiba Defendants argue that

17

Costco must arbitrate against all of them based on equitable estoppel and agency.  But both

18

theories allow a non-signatory to compel arbitration only where the plaintiff's claim turns on the

19

underlying contract containing the arbitration clause.  *See, e.g.*, *In re Humana Inc. Managed Care*

20

*Litig.*, 285 F.3d 971, 976 (11th Cir. 2002) ("The plaintiff's actual dependance on the underlying

21

contract in making out the claim against the nonsignatory defendant is . . . always the *sine qua*

22

*non* of an appropriate situation for applying equitable estoppel."), *rev'd on other grounds sub*

23

*nom. PacifiCare Health Sys., Inc. v. Book*, 538 U.S. 401 (2003); *Mundi v. Union Sec. Life Ins.*

24

*Co.*, 555 F.3d 1042, 1047 (9th Cir. 2009) (refusing to apply equitable estoppel to force a plaintiff

25

to arbitrate with a non-signatory defendant where "[t]he resolution of [the plaintiff's] claim does

26

not require the examination of any provisions of the [agreement]"); *Amisil Holdings Ltd. v.*

27

*Clarium Capital Mgmt.*, 622 F. Supp. 2d 825, 832 (N.D. Cal. 2007) (applying the same rule as to

28

1  agency).  Because Costco's claim against the Toshiba Defendants does not turn in any way on its

2  contract with TACP, these theories are inapplicable.

3      Moreover, even if Costco had agreed to arbitrate as to its purchases of CRT products from

4  all of the Toshiba Defendants, it most certainly did not agree to arbitrate as to its purchases from

5  others.  "[A]rbitration . . . is a way to resolve those disputes—but only those disputes—that the

6  parties have agreed to submit to arbitration."  *First Options of Chicago, Inc. v. Kaplan*, 514 U.S.

7  938, 943 (1995).  Therefore, even if the Court concludes that Costco must arbitrate with the

8  Toshiba Defendants as to its purchases from them, the Court should—like the LCD MDL

9  Court—hold that to the extent Costco's claim against them is based on purchases from other

10  vendors (i.e., Costco's claim for joint and several liability and its indirect purchaser claims), its

11  claims remain in the MDL.  *See In re TFT-LCD Antitrust Litig.* ("*In re TFT-LCD*"), M 07-1827

12  SI, Dkt. 6622 at 1-2 (N.D. Cal. Sept. 5, 2012) ("[T]he Court agrees with Nokia that it may

13  proceed with its claims against AUO for joint and several liability."); *In re TFT-LCD*,  M 07-

14  1827 SI, Dkt. 4526 at 2 (N.D. Cal. Jan. 10, 2012) ("Jaco's claims are arbitrable [only] to the

15  extent they are based upon purchases it made directly from NEC."); *In re TFT-LCD*, M 07-1827

16  SI, 2011 WL 3353867, at *3 (N.D. Cal. Aug. 3, 2011) (Dkt. 3213) (sending Dell's claims against

17  AU Optronics to arbitration "[t]o the extent Dell's claims are based upon purchases made under

18  the" contract containing the arbitration clause).  And because at least part of Costco's claim

19  against the Toshiba Defendants should remain in the MDL, it would be improper to dismiss

20  entirely Costco's claim against them.

21      Finally, if the Court decides to order Costco to arbitrate, precedent requires that the

22  statutory remedy of treble damages remain available.  *See, e.g.*, *Mitsubishi Motors Corp. v. Soler

23  Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 n.19 (1985) (stating that if a contractual agreement

24  had operated "as a prospective waiver of a party's right to pursue statutory remedies for antitrust

25  violations, we would have little hesitation in condemning the agreement as against public

26  policy"); *Kristian v. Comcast Corp.*, 446 F.3d 25, 47-48 (1st Cir. 2006) ("[T]he award of treble

27  damages under the federal antitrust statutes cannot be waived.").  Therefore, the Court should—

28  again like the MDL Court—hold that Costco must be allowed to pursue treble damages in this

antitrust proceeding.  *See In re TFT-LCD*, M 07-1827 SI, 2011 WL 4017961, at *6 (N.D. Cal. Sept. 9, 2011) (agreeing that "a party may not waive its right to treble damages in the antitrust context through a contractual limitation on recoverable damages").

## II.   FACTS

Costco expects its vendors to enter a "Basic Vendor Agreement."  Toshiba Motion Exh. A.  The Basic Vendor Agreement incorporates Costco's Standard Terms by reference.  *Id.* ¶ 6. After making extensive changes to both the vendor agreement and standard terms, Toshiba America Consumer Products signed such an agreement with Costco in 1995.  *Id.*  TACP apparently believes that because it and Costco entered a customized Vendor Agreement and Standard Terms at that time, the post-1995 changes to the Standard Terms (in 1997, 2000, and 2004) do not apply to it.  Costco does not necessarily agree but does not contest that position for purposes of this motion.

All iterations of the Standard Terms provide for a quick arbitration process and exclude from arbitration situations where "Costco Wholesale or Vendor . . . bring[s] court proceedings or claims against each other (i) solely as part of separate litigation commenced by an unrelated third party."  *Id.* ¶ 20.  Early versions of the standard terms barred "punitive damages" in most arbitrations, *id.*, while more recent versions forbid "punitive, exemplary, treble, or other enhanced damages," but specify that "[t]he limitations on remedies . . . may be deemed inoperative to the extent necessary to preserve the enforceability of the agreement to arbitrate."  *In re TFT-LCD*, 2011 WL 4017961, at *6.

## III.   ARGUMENT

### A.   Legal Standard

"A party seeking to compel arbitration bears the burden of proving the existence of a valid and enforceable arbitration agreement."  *Maganallez v. Hilltop Lending Corp.*, 505 F. Supp. 2d 594, 599-600 (N.D. Cal. 2007).  It is up to the Court to decide whether Costco must arbitrate with Toshiba Defendants who have no arbitration agreement with Costco.  *See, e.g.*, *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) ("[A] gateway dispute about whether the parties are bound by a given arbitration clause raises a 'question of arbitrability' for a court to decide.");

*Comer v. Micor, Inc.*, 436 F.3d 1098 (9th Cir. 2006) (deciding question of non-signatory

enforcement);  *Chastain v. Union Sec. Life Ins. Co.*, 502 F. Supp. 2d 1072, 1076 (C.D. Cal. 2007)

("Defendant has cited no case in which the question of non-signatory enforcement was submitted

to the arbitrator.").  In deciding "whether a particular party is bound by [an] arbitration agreement

. . . , the liberal federal policy regarding the scope of arbitrable issues is inapposite." *Comer*, 436

F.3d at 1104 n.11.  Instead, "a nonsignatory defendant faces a heavy burden to show that the

signatory plaintiff intended to submit to arbitration, notwithstanding the absence of a formal

agreement." *In re TFT-LCD*, 2011 WL 1753784, at *5 (N.D. Cal. May 9, 2011) (citing  *Sokol*

*Holdings, Inc. v. BMB Munai, Inc.*, 542 F.3d 354 (2d Cir. 2008), and *Ross v. Am. Express Co.*,

547 F.3d 137 (2d Cir. 2008)).

**B.      Costco's Claims Are Excluded from the Arbitration Clause**

Costco's claims in this case do not turn in any way on interpreting or enforcing its vendor

agreement with TACP.  That is a strong indication that Costco's claim is not subject to

arbitration.  *See, e.g.*, *Fazio v. Lehman Bros.*, 340 F.3d 386, 395 (6th Cir. 2003) ("A proper

method of analysis here is to ask if an action could be maintained without reference to the

contract or relationship at issue.  If it could, it is likely outside the scope of the arbitration

agreement."); *Coors Brewing Co. v. Molson Breweries*, 51 F.3d 1511, 1516 (10th Cir. 1995) ("A

dispute within the scope of the contract is still a condition precedent to the involuntary arbitration

of antitrust claims."); *Santa Cruz Med. Clinic v. Dominican Santa Cruz Hosp.*, No. C93-20613,

1995 WL 232410, at *3 (N.D. Cal. Apr. 17, 1995) (denying motion to compel and saying the

"claims are not arbitrable because no language in the contracts . . . needs to be interpreted in order

to evaluate the merits of plaintiffs' antitrust claims").

Recognizing this, the Toshiba Defendants pack their brief with references to the federal

policy favoring arbitration, but they ignore that "the central or 'primary' purpose of the [Federal

Arbitration Act (FAA)] is to ensure that 'private agreements to arbitrate are enforced *according to*

*their terms*.'" *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 130 S. Ct. 1758, 1773 (2010)

(quoting  *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 479

(1989)) (emphasis added).  *See also United Steelworkers*, 363 U.S. at 582 ("[A]rbitration is a

matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."); *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (same). Thus, "it is the language of the contract," not some federal policy, "that defines the scope of disputes subject to arbitration." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002).

Here, the contract between Costco and TACP provides for quick and inexpensive arbitration for typical vendor disputes, but it excludes claims relating to "separate litigation commenced by an unrelated third party." Motion Exh. A ¶ 20. This provision recognizes that where such related litigation is not subject to arbitration and will proceed no matter what, the benefits of arbitration are largely lost. For that reason, the arbitration provision allows related claims to proceed in court. Here, in fact, the Court's active coordination of closely related cases likely makes arbitration less efficient than proceeding in court.

Costco's claim falls under the contractual exclusion. Costco had no role in the class representatives commencing this claim, and those proceedings will continue—and will involve both Costco and TACP—regardless of whether Costco arbitrates with TACP.

The Toshiba Defendants will argue that Costco's claim ceased being "part of separate litigation commenced by an unrelated third party" when Costco opted out of the direct purchaser class and filed its complaint, as the LCD MDL Court held. *In re TFT-LCD*, 2011 WL 4017961, at *4. But that argument overlooks the purpose of the provision in question and the nature of class actions. Costco's claim against the Toshiba Defendants "commenced" at the time the direct purchaser class representatives filed their claims and sought to represent Costco's interests. That is why, for example, the statute of limitations for Costco's claims was tolled as soon as the class action suit was filed. *See, e.g.*, *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 353 (1983) ("[C]ommencement of a class action suspends the applicable statute of limitations as to all asserted members of the class.") (quoting *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554 (1974)). Once the class action commenced, there was no way for the arbitration clause to protect either Costco or TACP from the burdens of litigation, which is why the clause excludes claims

1   like this one.  Indeed, both Costco and TACP will remain in the MDL proceeding with other

2   parties regardless of the Court's ruling on this motion.

3       In short, the arbitration agreement should be "'enforced according to [its] terms,'" *Stolt-*

4   *Nielsen*, 130 S. Ct. at 1773 (quoting *Volt*, 489 U.S. at 479), and those terms do not compel

5   arbitration here.

6   **C.     The Toshiba Defendants Who Never Signed Arbitration Agreements with Costco Cannot Compel Arbitration**

7       Four of the five Toshiba Defendants admit that they have no arbitration agreement with

8   Costco, and even if the Court were to grant the motion as to TACP, it should deny the motion as

9   to these other Toshiba Defendants.  Costco never agreed to arbitrate with these non-signatory

10  Defendants, and "nothing in the [FAA] authorizes a court to compel arbitration . . . by any

11  parties[] that are not . . . covered in the agreement." *Waffle House*, 534 U.S. at 289.  The non-

12  signatory Defendants nonetheless assert that Costco must arbitrate with them.  Though their

13  theory is unclear, they appear to invoke equitable estoppel and agency.[1]  Neither applies here.

14      In deciding "whether a particular party is bound by [an] arbitration agreement . . . , the

15  liberal federal policy regarding the scope of arbitrable issues is inapposite." *Comer*, 436 F.3d at

16  1104 n.11.  Instead, "a nonsignatory defendant faces a heavy burden to show that the signatory

17  plaintiff intended to submit to arbitration, notwithstanding the absence of a formal agreement."

18  *In re TFT-LCD*, 2011 WL 1753784, at *5 (citing *Sokol Holdings*, 542 F.3d 354, and *Ross*, 547

19  F.3d 137); *see also Bridas Sapic v. Gov't of Turkm.*, 345 F.3d 347, 362 (5th Cir. 2003) ("Parties

20  are presumed to be contracting for themselves only.").

21      **1.     Costco Cannot Be Equitably Estopped from Litigating Against the Non-Signatory Toshiba Defendants**

22

23      The non-signatory Toshiba Defendants have not established and cannot establish that

24  Costco must arbitrate with them based on equitable estoppel.  As its name suggests, equitable

25  estoppel is an equitable doctrine whose purpose is to "'preclude[] a party from claiming the

26  benefits of a contract while simultaneously attempting to avoid the burdens that contract

27

28  ---

[1] The Toshiba Defendants never mention any other theory as to why Costco must arbitrate with them and should not be allowed to raise new theories in their reply.

imposes.'" *Comer*, 436 F.3d at 1101 (quoting *Wash. Mut. Fin. Grp., LLC v. Bailey*, 364 F.3d 260, 267 (5th Cir. 2004)).  *See also Chastain*, 502 F. Supp. 2d at 1078 ("The purpose of estoppel is to prevent a plaintiff from availing himself of the favorable parts of a contract while disavowing the unfavorable parts—here, the arbitration clause.").

> In all cases, the lynchpin for equitable estoppel is equity, and the point of applying it to compel arbitration is to prevent a situation that would fly in the face of fairness.  The purpose of the doctrine is to prevent a plaintiff from . . . relying on the contract when it works to his advantage by establishing the claim, and repudiating it when it works to his disadvantage by requiring arbitration.

*Humana*, 285 F.3d at 976 (internal citations and quotation marks omitted).[2]  This basic purpose does not apply here, and neither does the doctrine.

Costco's complaint does not in any way "'claim[] the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes.'"  *Comer*, 436 F.3d at 1101 (quoting *Wash. Mut.*, 364 F.3d at 267).  Costco has not asserted breach of contract, and its complaint never even mentions any contract, much less relies on one.  The reason is not that Costco sought to avoid arbitration; it is that Costco's claim does not depend on its contracts in the slightest.  The contracts are at most incidental, and no question is raised as to their performance.

This alone should suffice to reject the non-signatory Toshiba Defendants' invocation of equitable estoppel, for "[t]he plaintiff's actual dependance on the underlying contract in making out the claim against the nonsignatory defendant is . . . always the *sine qua non* of an appropriate situation for applying equitable estoppel."  *Humana*, 285 F.3d at 976.  *See also Mundi*, 555 F.3d at 1047 (refusing to apply equitable estoppel to force a plaintiff to arbitrate with a non-signatory defendant where "[t]he resolution of [the plaintiff's] claim does not require the examination of any provisions of the [agreement]"); *Chastain*, 502 F. Supp. 2d at 1080 (finding that "equitable considerations do[] not compel arbitration" because "Plaintiff has done nothing to rely on or invoke the terms of the cardmember agreement, while attempting to avoid arbitration of those

---

[2] In *PacifiCare Health Sys., Inc. v. Book*, 538 U.S. 401 (2003), the Supreme Court reversed the result in *Humana* but addressed only the unrelated question of whether a court could invalidate an arbitration agreement when it was unclear whether the agreement barred damages required by statute.  For that reason, all other aspects of the Eleventh Circuit's ruling in *Humana*, including its equitable estoppel analysis, are still good law.  *See, e.g.*, *Klay v. All Defendants*, 389 F.3d 1191, 1195-96 & n.3, 1998-99 & nn.5, 6 (11th Cir. 2004).

1   claims," and "there simply is no reason in equity to estop Plaintiff from disclaiming the

2   arbitration clause in an agreement that he has otherwise not invoked").

3         The non-signatory Toshiba Defendants' argument ignores another basic principle about

4   equitable estoppel.  "Estoppel does not apply unless 'the totality of the evidence supports an

5   objective intention to agree to arbitrate.'"  *In re TFT-LCD*, 2011 WL 1753784, at *5 (quoting

6   *Ross*, 547 F.3d at 148).  Thus, "there is a 'black letter rule that the obligation to arbitrate depends

7   on consent,' and cases that rely on estoppel to compel arbitration with nonsignatories 'simply

8   extend its contours somewhat by establishing that the consent need not always be expressed in a

9   formal contract made with the party demanding arbitration.'"  *Id.* (quoting *Sokol Holdings*, 542

10  F.3d at 361-62).  For that reason, "a nonsignatory defendant faces a heavy burden to show that the

11  signatory plaintiff intended to submit to arbitration, notwithstanding the absence of a formal

12  agreement," and "must present . . . evidence sufficient to demonstrate such intent."  *Id.*  Here,

13  however, the non-signatory Toshiba Defendants provide no evidence that Costco consented to

14  arbitrate with them.

15        Ignoring both the purpose and basic requirements of the equitable estoppel doctrine, the

16  non-signatory Toshiba Defendants seek to invoke the doctrine merely because Costco alleges that

17  they conspired with TACP and other defendants in fixing the prices of CRT products.  But it

18  cannot be that any time a plaintiff alleges an antitrust conspiracy that includes a signatory it must

19  arbitrate with all the conspirators.  *See, e.g.*, *Moses H. Cone Mem'l Hosp. v. Mercury Constr.*

20  *Corp.*, 460 U.S. 1, 20 (1983) (holding that, despite allegations of joint misconduct on the part of a

21  signatory and non-signatory defendant, the non-signatory defendant could not be forced into

22  arbitration because "federal law *requires* piecemeal resolution when necessary to give effect to an

23  arbitration agreement").  A plaintiff need not even sue all of the conspirators, or the one with the

24  contract, to obtain a complete remedy.  And while contractual provisions can be part of some

25  antitrust violations (e.g., exclusive dealing), that is not the case here.

26        Indeed, the cases the Toshiba Defendants cite do not support their argument.  The Toshiba

27  Defendants lead with out-of-context dicta from the unpublished opinion in *Fujian Pacific Elec.*

28  *Co. v. Bechtel Power Corp.*, 2004 WL 2645974 (N.D. Cal. Nov. 19, 2004).  They claim *Fujian*

means that "a Plaintiff is estopped from refusing to arbitrate with a corporate family member alleged to be liable for overcharges incurred on an affiliate's contract."  Motion at 10.  But the part of *Fujian* that Toshiba cites is not the holding, it is a summary of another court's decision. *Fujian*'s actual holding was simply that equitable estoppel applied because the plaintiff's claim against the non-signatory relied on the contract containing the arbitration clause.  2004 WL 2645974, at *6 (explaining that the plaintiff "ask[ed] the court to determine whether [the signatories'] duties have been breached in order to establish [the non-signatory's] liability").  As already explained, that is not the case here.

The Toshiba Defendants also cite *Amisil*, 622 F. Supp. 2d 825, but there the court applied equitable estoppel only because, "[a]bsent the Operating Agreement, none of [Amisil's] claims would lie.  Amisil cannot use the Agreement as a sword and at the same time choose to ignore it as a shield."  *Id.* at 841.  Here, of course, Costco's claim would lie even if it had no contract with TACP.

Finally, in citing cases from other circuits, the Toshiba Defendants fail to mention that those circuits have also applied the rule that a non-signatory can only compel arbitration where the plaintiff's claims rely on the contract.  *See, e.g.*, *Sokol Holdings*, 542 F.3d at 361 ("It was, of course, essential in all of these cases that the subject matter of the dispute was intertwined with the contract providing for arbitration."); *Humana*, 285 F.3d at 976 ("The plaintiff's actual dependance on the underlying contract in making out the claim against the nonsignatory defendant is therefore always the *sine qua non* of an appropriate situation for applying equitable estoppel.").  As noted, however, the "sine qua non" of equitable estoppel is not present here, and the Toshiba Defendants cannot—try as they might—bootstrap their way into that doctrine simply by pointing to their conspiracy.

### 2.     Costco Cannot Be Required to Arbitrate Against the Non-Signatory Toshiba Defendants Under an Agency Theory

The non-signatory Toshiba Defendants seem to think they can demand arbitration because Costco alleges that they worked with TACP in carrying out the conspiracy.  That is not the law.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15

To begin with, a plaintiff's allegations are not enough to establish an agency relationship sufficient to invoke the agency doctrine; instead, defendants must actually prove that the non-signatory Toshiba Defendants were agents of TACP. *See, e.g.*, *Britton v. Co-op Banking Group*, 916 F.2d 1405, 1414 (9th Cir. 1990) ("remand[ing] the case to the district court for further determination and fact-finding as to whether the" non-signatory seeking to invoke the arbitration clause was actually an agent of the signatory); *Chastain*, 502 F. Supp. 2d at 1075 ("The trial court sits as a trier of fact, weighing all the declarations and other evidence to reach a final determination" on "the question of whether a nonsignatory to an arbitration agreement can compel a signatory to submit to arbitration."); *Brown v. Gen. Steel Domestic Sales, LLC*, 2008 WL 2128057, at *7 & n.45  (C.D. Cal. May 19, 2008) (denying the non-signatory defendants' motion to compel arbitration where "[t]he non-signatory defendants make no argument that they are in fact agents of [the signatory defendant]" but instead "rely exclusively on the allegations in the [plaintiffs'] complaint"); 9 U.S.C. § 4 (requiring court or jury trial of facts upon which applicability of arbitration provision depends).  But the non-signatory Toshiba Defendants never even claim to have been agents of TACP.

16
17
18
19
20
21
22
23
24
25
26
27

Even if a plaintiff's allegations were enough to invoke the agency doctrine, Costco alleges only that Defendants acted as "the principal, agent, or joint venturer of, or for, other Defendants *with respect to the acts, violations, and course of conduct alleged by Costco*."  Complaint ¶ 55 (emphasis added).  This alleges an agency relationship only with respect to the defendants' illegal conduct, *not* a general principal-agent relationship or even a principal-agent relationship in carrying out the vendor agreements, which is what the non-signatory Toshiba Defendants must prove.  *See, e.g.*, *Britton v. Co-op Banking Group*, 4 F.3d 742, 747 (9th Cir. 1993) (applying the agency test only after finding that the non-signatory "was an agent, officer and employee of [the signatory defendant]"); *Boyd v. Homes of Legend, Inc.*, 981 F. Supp. 1423, 1432 (M.D. Ala. 1997) (finding the agency theory inapplicable because "there is no basis here to conclude that an agency relationship exists between the [non-signatory defendant] and the [signatory defendant]"), *rev'd on other grounds*, 188 F.3d 1294 (11th Cir. 1999).

28

Moreover, the Toshiba Defendants' argument relies on the notion that Toshiba Corp. and Toshiba America (non-signatories) are agents of their subsidiary, TACP (a signatory). It would be a rare company if the parent corporation were really the agent of its subsidiaries, rather than the other way around, and the Toshiba Defendants do not allege, much less prove, that they were exceptions to the rule.

Finally, even if the Court were to find that some of the non-signatory Toshiba Defendants were agents of TACP, that would only begin the inquiry. Agents of a signatory can compel the plaintiff to arbitrate only if "the claims against the agents arise out of or relate to the contract containing the arbitration clause." *Amisil*, 622 F. Supp. 2d at 832 (citing *Britton*, 4 F.3d at 743, and *Letizia v. Prudential Bache Sec., Inc.*, 802 F.2d 1185, 1186 (9th Cir. 1986)). Here, however, Costco's allegations against the Toshiba Defendants do not turn in any way on its contract with TACP. *See, e.g.*, *Britton*, 4 F.3d at 748 (concluding that the non-signatory defendant's alleged wrongdoing did not relate to or arise out of the contract containing the arbitration clause because "[t]he sum and substance of [the plaintiffs'] allegations are that [the non-signatory defendant] . . . [committed] independent acts of fraud, unrelated to any provision or interpretation of the contract"). Thus, the agency doctrine is inapplicable here for several reasons.

**D.     Costco Cannot Be Forced To Arbitrate with the Toshiba Defendants as to Purchases from Others**

Even if the Court concludes that Costco must arbitrate some claims with the Toshiba Defendants, Costco cannot be forced to arbitrate its claims based on purchases from others. As Judge Illston has repeatedly held in the LCD MDL, an "arbitration clause is necessarily limited to disputes arising out of the business relationship between" the parties. *In re TFT-LCD*, M 07-1827 SI, Dkt. 4526 at 2; *In re TFT-LCD*, M 07-1827 SI, 2011 WL 3353867, at *3 (sending Dell's claims against AU Optronics to arbitration "[t]o the extent Dell's claims are based upon purchases made under the" contract containing the arbitration clause). Yet a significant part of Costco's claim against the Toshiba Defendants does not arise out of Costco's business relationship with TACP.

Specifically, Costco's claims against the Toshiba Defendants based on its indirect purchases of products containing CRTs manufactured by the Toshiba Defendants would exist even if Costco had no business relationship (or contract) with TACP.  And Costco's claim against the Toshiba Defendants for joint and several liability based on "direct purchase" damage caused by other Defendants also would exist even if Costco had no relationship (or contract) with TACP.  Thus, as Judge Illston has repeatedly held, these claims are not subject to arbitration.  *See In re TFT-LCD*, M 07-1827 SI, Dkt. 6622 at 1-2 (holding that despite presence of enforceable arbitration clause between AUO and Nokia, Nokia could "proceed with its claims against AUO for joint and several liability"); *In re TFT-LCD*,  M 07-1827 SI, Dkt. 4526 at 2 ("Jaco's claims are arbitrable to the extent they are based upon purchases it made directly from NEC; to the extent Jaco's claims against NEC are based on coconspirator liability for purchases Jaco made from other defendants, such claims are not subject to arbitration."); *In re TFT-LCD*, M 07-1827 SI, 2011 WL 3353867, at *3 (sending Dell's claims against AU Optronics to arbitration only "[t]o the extent Dell's claims are based upon purchases made under the" contract containing the arbitration clause); *see also Coors Brewing*, 51 F.3d at 1516 (holding that "[a] dispute within the scope of the contract is still a condition precedent to the involuntary arbitration of antitrust claims," and arbitration is not required as to disputes where "it is simply fortuitous that the parties happened to have a contractual relationship").

In the LCD case, interpreting this same Vendor Agreement with TACP, Judge Illston ordered Costco to arbitrate its claims with TACP and certain other vendors only "to the extent Costco's claims against [those vendors] stem from purchases made pursuant to the vendor agreements."  *In re TFT-LCD*, 2011 WL 4017961, at *6.  Costco then chose to consolidate its claims against those vendors entirely in arbitration, rather than pursuing them partially in the MDL.  But Costco must be allowed to make that choice; the Federal Arbitration Act cannot justify forcing Costco to arbitrate claims it never agreed to arbitrate with parties it never agreed to arbitrate with.  *See Kaplan*, 514 U.S. at 943 ("[A]rbitration . . . is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration.").

**E.      Before Costco May Be Forced to Arbitrate with Any Defendant, the Court Must Declare Any Waiver of Treble Damages Unenforceable in the Antitrust Context**

Even if the Court concludes that Costco's claims against TACP or other Toshiba Defendants are otherwise subject to arbitration, it may compel arbitration only if it first declares any purported waiver of treble damages unenforceable in the antitrust context.[3]  As noted above, the Toshiba Defendants invoke only the 1994 version of Costco's Standard Terms.  That agreement forbade any award of "punitive damages" but did not specifically mention treble damages.  Toshiba Motion Exh. A ¶20.  This provision would not bar an arbitrator from awarding the treble damages required by the Sherman Act because treble damages in antitrust cases are not punitive.  *See, e.g.*, *Am. Soc. of Mechanical Engs., Inc. v. Hydrolevel Corp.*, 456 U.S. 556, 575 (1982) (finding that "the antitrust private action was created primarily as a remedy for the victims of antitrust violations," and "[t]reble damages 'make the remedy meaningful by counter-balancing the difficulty of maintaining a private suit' under the antitrust laws") (quoting *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 486 n.10 (1977)); *Brunswick*, 429 U.S. at 485-86 ("Section 4 . . . is in essence a remedial provision," and "the treble-damages provision, which makes awards available only to injured parties, and measures the awards by a multiple of the injury actually proved, is designed primarily as a remedy.").

The Toshiba Defendants might belatedly seek to invoke the 2004 version of Costco's Standard Terms in their reply brief.  That version forbids "punitive, exemplary, treble, or other enhanced damages," but specifies that "[t]he limitations on remedies . . . may be deemed inoperative to the extent necessary to preserve the enforceability of the agreement to arbitrate."  *In re TFT-LCD*, 2011 WL 4017961, at *6.  Though this limitation would be enforceable in many types of disputes, such as contract claims, if the Toshiba Defendants believe it governs any part of their claim here, the Court must declare it unenforceable in this context, where treble damages are remedial and required by statute.  Countless courts have held that "the award of treble damages

---

[3] This is a question for the Court, not the arbitrator.  *See Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1000 (9th Cir. 2010) ("[W]hen a plaintiff argues that an arbitration clause, standing alone, is unenforceable—for reasons independent of any reasons the remainder of the contract might be invalid—that is a question to be decided by the court."); *Kristian v. Comcast Corp.*, 446 F.3d 25, 47-48 (1st Cir. 2006) (holding that question whether provision barring treble damages was enforceable in an antitrust case was "a question of arbitrability" to be resolved by the Court and that the provision was unenforceable and had to be severed).

1  under the federal antitrust statutes cannot be waived." *Kristian v. Comcast Corp.*, 446 F.3d 25,

2  47-48 (1st Cir. 2006).[4]  That is why the LCD MDL Court held "that the arbitration clause's

3  limitation on treble damages is unenforceable" as to an antitrust claim.  *In re TFT-LCD*, 2011 WL

4  4017961, at *6.  This Court should do the same to the extent the Toshiba Defendants invoke the

5  2004 version of the Standard Terms.

6  **F.    Dismissal Is Unwarranted**

7         If the Court concludes that any part of Costco's claim against any of the Toshiba

8  Defendants is not subject to arbitration, then dismissal of those claims would obviously be

9  inappropriate.  *See Moses H. Cone*, 460 U.S. at 20 (holding that "federal law *requires* piecemeal

10  resolution when necessary to give effect to an arbitration agreement").  Moreover, if that occurs,

11  the Court should not stay Costco's claims against Toshiba in the MDL, but rather should allow

12  Costco's remaining claims against any Toshiba Defendants to proceed on the same track as do

13  those of other plaintiffs.  This is the approach Judge Illston took in the LCD MDL, and it was an

14  eminently sensible one.  As she explained, because the "defendants' extensive involvement in the

15  class and direct-purchaser actions," would continue regardless, "the Court finds that a stay will

16  have little benefit."  *In re TFT-LCD*, 2011 WL 4017961, at *7.  *See also Moses H. Cone*, 460

17  U.S. at 20 n.23 (noting that the decision whether "to stay litigation among the non-arbitrating

18

19  _____

[4] *See, e.g.*, *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628, 637 n.19 (1985) (stating
20  that if a contractual provision operated "as a prospective waiver of a party's right to pursue statutory remedies for
antitrust violations, we would have little hesitation in condemning the agreement as against public policy"); *George*
21  *Fischer Foundry Systems, Inc. v. Adolph H. Hottinger Maschinenbau GmbH*, 55 F.3d 1206, 1210 (6th Cir. 1995)
("[I]f any part of a contract . . . waives a party's right to collect damages for antitrust violations, the provision is void
22  for public policy reasons."); *Redel's Inc. v. General Elec. Co.*, 498 F.2d 95, 99 (5th Cir. 1974) ("Releases may not be
executed which absolve a party from liability for future violations of our antitrust laws."); *Gaines v. Carrollton*
23  *Tobacco Bd. of Trade, Inc.*, 386 F.2d 757, 759 (6th Cir. 1967) ("[I]t seems clear as a matter of law that . . . an
agreement, if executed in a fashion calculated to waive damages arising from future violations of the antitrust laws,
24  would be invalid on public policy grounds.").  *See also, e.g.*, *Booker v. Robert Half Int'l, Inc.*, 413 F.3d 77, 79 (D.C.
Cir. 2005) (Roberts, J.) ("Statutory claims may be subject to agreements to arbitrate, so long as the agreement does
25  not require the claimant to forgo substantive rights afforded under the statute."); *Al-Safin v. Circuit City Stores, Inc.*,
394 F.3d 1254, 1261 (9th Cir. 2005) (holding that an arbitration agreement violates the *Mitsubishi* rule if "it limits the
26  remedies that would otherwise be available in a judicial forum"); *Graham Oil Co. v. ARCO Prods. Co.*, 43 F.3d
1244, 1247-48 (9th Cir. 1994) (holding arbitration clause unenforceable because it "compels Graham Oil to surrender
27  important statutorily-mandated rights," including exemplary damages); *Bencharsky v. Cottman Transmission Sys.*,
*LLC*, 625 F. Supp. 2d 872, 882 (N.D. Cal. 2008) ("[A]n arbitration agreement cannot be made to serve as a vehicle
28  for the waiver of statutory rights.").

1    parties pending the outcome of the arbitration" "is one left to the district court . . . as a matter of

2    its discretion").[5]

3                                    **IV.    CONCLUSION**

4          The Toshiba Defendants argue that because of a contract Costco never cited or relied upon

5    in bringing its claim, Costco must arbitrate its claims with all of them.  But the contract, by its

6    terms, is inapplicable in a case that developed out of an action by a third party and that remains

7    part of the same MDL.  Moreover, there is simply no basis for forcing Costco to arbitrate with

8    Toshiba entities with whom it never consented to arbitrate.  Costco respectfully asks that the

9    Court deny Toshiba's Motion to Compel Arbitration in its entirety.  If the Court believes any

10   claims are subject to arbitration, they should be limited to Costco's direct purchaser claims

11   against TACP, and the Court must first invalidate the treble damages waiver in this context to the

12   extent the Toshiba Defendants plan to cite it in arbitration.  Finally, the Court should decline

13   Toshiba's invitation to dismiss Costco's claims against the Toshiba Defendants.

14

15

16

17

18

19

20

21

22

23

24

25   _____

26   [5] *See also In re TFT-LCD*, 2011 WL 2650689, at *9 (N.D. Cal. July 6, 2011) ("It is within the Court's discretion to stay all or part of the litigation associated with the dispute between Nokia and AUO.") (citing *United States v.*
     *Neumann Caribbean Int'l, Ltd.*, 750 F.2d 1422, 1427 (9th Cir. 1985)); *Amisil*, 622 F. Supp. 2d at 842 ("[I]t may be

27   advisable to stay litigation among the nonarbitrating parties pending the outcome of the arbitration. That decision is
     one left to the district court . . . as a matter of its discretion to control its docket.") (internal quotation marks and

28   citation omitted).

1  DATED:  September 24, 2012

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

s/ David J. Burman
David J. Burman (admitted *pro hac vice*)
Cori G. Moore (admitted *pro hac vice*)
Noah G. Purcell (admitted *pro hac vice*)
Nicholas H. Hesterberg (admitted *pro hac vice*)
**PERKINS COIE LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone:      206.359.8000
Facsimile:      206.359.9000

Joren Bass, Bar No. 208143
JBass@perkinscoie.com
**PERKINS COIE LLP**
Four Embarcadero Center, Suite 2400
San Francisco, CA  94111-4131
Telephone:      415.344.7120
Facsimile:      415.344.7320

Attorneys for Plaintiff
Costco Wholesale Corporation

LEGAL24644650

Costco's Opposition to Toshiba's Motion to Compel Arbitration

Case No. 07-5944-SC
MDL No. 1917
16