ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
Roman M. Silberfeld, Bar No. 62783
RMSilberfeld@rkmc.com
David Martinez, Bar No. 193183
DMartinez@rkmc.com
Elizabeth D. Le, Bar No. 216182
EDLe@rkmc.com
2049 Century Park East, Suite 3400
Los Angeles, CA 90067-3208
Telephone:     310-552-0130
Facsimile:     310-229-5800

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
Elliot S. Kaplan, Bar No. 53624
ESKaplan@rkmc.com
K. Craig Wildfang (*Pro Hac Vice*)
KCWildfang@rkmc.com
Laura E. Nelson, Bar No. 231856
LENelson@rkmc.com
800 LaSalle Avenue
2800 LaSalle Plaza
Minneapolis, MN 55402
Telephone:     612-349-8500
Facsimile:     612-339-4181

Attorneys for Plaintiffs
BEST BUY CO., INC.; BEST BUY PURCHASING
LLC; BEST BUY ENTERPRISE SERVICES, INC.;
BEST BUY STORES, L.P.; BESTBUY.COM,
L.L.C.; and MAGNOLIA HI-FI, INC.

[Additional Counsel Listed on Signature Page]

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. 3:07-cv-05944-SC MDL No. 1917 |
| _____ | The Honorable Samuel Conti |
| This Document Relates to: | **DIRECT ACTION PLAINTIFFS' OPPOSITION TO KONINKLIKJE PHILIPS ELECTRONICS N.V. AND PHILIPS ELECTRONICS NORTH AMERICA CORPORATION'S MOTION TO DISMISS AND FOR JUDGMENT ON THE PLEADINGS AS TO THE DIRECT ACTION PLAINTIFFS' CLAIMS** |
| ALL DIRECT ACTION COMPLAINTS AND DOCUMENTS | |
| *Electrograph systems, Inc., et al., v. Hitachi, Ltd., et al., Case No. 11-CV-01656-SC* | |

| | | |
|---|---|---|
| 1 | *Interbond Corporation of America, v. Hitachi, Ltd., et al, Case No. 11-CV-06275-SC* | Hearing Date: November 30, 2012<br>Time: 10:00 a.m. (tentative)<br>JAMS: Two Embarcadero Center, Suite 1500<br>Special Master: Hon. Charles A. Legge |
| 2 | | |
| 3 | *Office Depot, Inc., v. Hitachi, Ltd., et al., Case No. 11-CV-06276-SC* | |
| 4 | | |
| 5 | *Costco Wholesale Corporation, v. Hitachi, Ltd., et al., Case No. 11-CV-06397-SC* | |
| 6 | *Compucom Systems, Inc., v. Hitachi, Ltd., et al., Case No. 11-CV-06396-SC* | |
| 7 | | |
| 8 | *Alfred H. Siegel, as Trustee of the Circuit City Stores, Inc. Liquidating Trust, v. Hitachi, Ltd. et al., Case No. 11-CV-05502-SC* | |
| 9 | | |
| 10 | *Target Corp. et al., v. Chunghwa Pictures Tubes, Ltd., et al., Case No. 11-CV-05514 (EDL)* | |
| 11 | | |
| 12 | *John R. Stoebner, as Chapter 7 Trustee for PBE Consumer Electronics, LLC, et al., v. LG Electronics, Inc., et al., Case No. CV-11-05381-SC* | |
| 13 | | |
| 14 | | |
| 15 | *P.C. Richard & Son Long Island Corporation, et al., v. Hitachi, Ltd., et al., Case No. 11-CV-05530 (JBW, VVP)* | |
| 16 | | |
| 17 | *Schultze Agency Services, LLC, et al., v. Hitachi, Ltd., et al., Case No. 11-CV-05529* | |
| 18 | *Best Buy Co., Inc., et al., v. Hitachi, Ltd., et al., Case No. 11-CV-05513-SC* | |
| 19 | | |
| 20 | | |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |

- 2 - OPPOSITION TO KPE'S AND PENAC'S MOTION TO DISMISS (MASTER FILE NO:07-CV-05944-SC)

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ...................................................................................................1

II.   FACTUAL BACKGROUND...............................................................................3

III.   STANDARD OF REVIEW ..................................................................................7

IV.   PLAINTIFFS' CLAIMS AGAINST PHILIPS ARE TIMELY ...............................8

    A.   Plaintiffs Brought Their Complaints Within The Limitations And
Relevant Tolling Periods. ............................................................................8

    B.   The European Commission's November 8, 2007 Disclosure Of Its
Investigation Of CRT Manufacturers Is An Irrelevant Red Herring. .............9

    C.   Plaintiffs' Allegations Do Not Establish That Philips Withdrew From
The Conspiracy As A Matter of Law. ...........................................................10

        1.   Standard for Withdrawal from Conspiracy ..........................................10

        2.   This Court has Already Ruled that Philips' "Withdrawal"
Arguments are Improper at the Pleading Stage and Insufficient to
Meet its Burden of Proof........................................................................11

        3.   Far from Showing Withdrawal, the Complaints Show that Philips
Continued to Participate in the CRT Conspiracy After it Formed
LPD in 2001. ........................................................................................11

        4.   Plaintiffs' Allegations Demonstrate that Philips did not Withdraw
from the CRT Conspiracy in March 2007. ............................................13

    D.   This Court Has Already Rejected Philips' Recycled Fraudulent
Concealment Arguments. ............................................................................13

V.   CONCLUSION ...................................................................................................16

OPPOSITION TO KPE'S AND PENAC'S MOTION TO DISMISS
(MASTER FILE NO:07-CV-05944-SC)

1

**TABLE OF AUTHORITIES**

2

**Page**

3

**Cases**

4

*American Pipe & Constr. Co. v. Utah,*
   *414 U.S. 538 (1974)* ............................................................................................ 1, 9

5

*Arpin v. Santa Clara Valley Transp. Agency,*
6
   261 F.3d 912 (9th Cir. 2001)................................................................................ 8, 13

7

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ................................................................................................. 8

8

*Barker v. Riverside County Office of Ed.,*
   584 F.3d 821 (9th Cir. 2009).............................................................................. 8, 14

9

*Bell Atlantic v. Twombly,*
10
   550 U.S. 544 (2007) ............................................................................................ 7, 8

11

*Beltz Travel Serv., Inc. v. Intl. Air Transp. Ass'n.,*
   620 F.2d 1360 (9th Cir. 1980).................................................................................16

12

*Braden v. Wal-Mart Stores, Inc.,*
   588 F.3d 585 (8th Cir. 2009).................................................................................... 8

13

*Broam v. Bogan,*
14
   320 F.3d 1023 (9th Cir. 2003)................................................................................. 7

15

*Butler v. Los Angeles County,*
   617 F. Supp. 2d 994 (C.D. Cal. 2009) ............................................................... 8, 13

16

*Continental Ore Co. v. Union Carbide & Carbon Corp.,*
   370 U.S. 690 (1962) ...............................................................................................15

17

*Erickson v. Pardus,*
18
   551 U.S. 89 (2007)................................................................................................... 7

19

*Hyde v. United States,*
   225 U.S. 347 (1912) ...............................................................................................10

20

*In re Cathode Ray Tube (CRT) Antitrust Litig.,*
   738 F. Supp. 2d 1011 (N.D. Cal. 2010) ......................................................... passim

21

*In Re Flash Memory Antitrust Litig.,*
22
   643 F. Supp. 2d 1133 (N.D. Cal. 2009) .................................................................16

23

*In re Flat Glass Antitrust Litig.,*
   385 F.3d 350 (3d Cir. Pa. 2004)..............................................................................16

24

*In re Graphics Processing Units Antitrust Litig.,*
   540 F. Supp. 2d 1085 (N.D. Cal. 2007) ..................................................................15

25

*In re Linerboard Antitrust Litig.,*
26
   223 F.R.D. 335 (E.D. Pa. 2004) ............................................................................... 9

27

*In Re OSB Antitrust Litig. ("OSB"),*
   2007 U.S. Dist. LEXIS 56573 (E.D. Pa., Aug. 3, 2007)........................................16

28

*In re Rubber Chems. Antitrust Litig.* ,
    504 F. Supp. 2d 777 (N.D. Cal. 2007) ................................................................ 14

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
    580 F. Supp. 2d 896 (N.D. Cal. 2008) ..................................................... 15, 16

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    820 F. Supp. 2d 1055 (ND Cal. 2011) ............................................................. 10

*In re TFT-LCD Antitrust Litig.*,
    599 F. Supp. 2d 1179 (N.D. Cal. 2009) ........................................................... 15

*In re Urethane Antitrust Litig.*,
    663 F. Supp. 2d 1067 (D. Kan. 2009) ............................................................... 9

*In re Vitamins Antitrust Litig.*,
    2000 U.S. Dist. LEXIS 7397 (D.D.C. May 9, 2000) ................................... 15

*Jenson v. Allison-Williams Co.*,
    1999 U.S. Dist. LEXIS 22170 (S.D. Cal. Aug. 23, 1999) ......................... 9

*Klehr v. A.O. Smith Corp.*,
    521 U.S. 179 (1997) ............................................................................................. 9

*Lormand v. US Unwired, Inc.*,
    565 F.3d 228 (5th Cir. 2009) ............................................................................. 7

*Morton's Market, Inc. v. Gustafson's Dairy, Inc.*,
    198 F.3d 823 (11th Cir. 1999) ......................................................................... 12

*Mt. Hood Stages, Inc. d/b/a Pac. Trailways v. Greyhound Corp. and Greyhound Lines, Inc.*,
    555 F. 2d 687 (1977) .......................................................................................... 1

*Paper Sys., Inc. v. Nippon Paper Indus. Co., Ltd.*,
    281 F.3d 629 (7th Cir. 2002) ........................................................................... 10

*Poller v. Columbia Broad. Sys., Inc.*,
    368 U.S. 464 (1962) ........................................................................................... 15

*Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp.*, S.A.,
    711 F.2d 989 (11th Cir. 1983) ........................................................................... 7

*Rescuecome Corp. v. Google, Inc.*,
    562 F.3d 123 (2d Cir. 2009) .............................................................................. 8

*Shakur v. Schriro*,
    514 F.3d 878 (9th Cir. 2008) ........................................................................... 10

*Texas Industries, Inc. v. Radcliff Materials, Inc.*,
    451 U.S. 630 (1981) ........................................................................................... 10

*United States* v. *Borelli*,
    336 F.2d 376 (2d Cir. 1964) ............................................................................. 10

*United States v. Consolidated Packaging Corp.*,
    575 F.2d 117 (7th Cir. 1978) ........................................................................... 15

*United States v. Eisen*,
    974 F.2d 246 (2nd Cir. 1992) ........................................................................... 12

- iii -

*United States v. Greenfield,*
    44 F.3d 1141 (2d Cir. 1995) ........................................................................... 10

*United States v. Socony-Vacuum Oil Co.,*
    310 US. 150 (1940) ......................................................................................... 10

*United States v. United States Gypsum Co.,*
    438 U.S. 422 (1978) ......................................................................................... 10

*William O. Gilley Enter., Inc. v. Atl. Richfield Co.,*
    561 F.3d 1004 (9th Cir. 2009) .......................................................................... 8

*Zenith Radio Corp. v. Hazeltine Research,*
    401 U.S. 321 (1971) .......................................................................................... 1

**Statutes**

15 U.S.C. § 16 ........................................................................................................ 9

**Rules**

Fed. R. Civ. P. 12(b)(6) .......................................................................................... 7

Fed. R. Civ. P. 8 ..................................................................................................... 8

**Treatises**

MOORE'S FEDERAL PRACTICE – *Civil* § 56.13 .................................................... 10

The Direct Action Plaintiffs ("Plaintiffs")[1] hereby respectfully submit their Opposition to Koninklijke Philips Electronics N.V. and Philips Electronics North America Corporation's ("Philips") Motion to Dismiss and for Judgment on the Pleadings as to the Direct Action Plaintiffs' Claims ("Motion"), as follows:

## I.

## **INTRODUCTION**

Philips' Motion rests on manufactured allegations that contradict Plaintiffs' Complaints and raises arguments that are contrary to law and to this Court's prior decision denying similar motions to dismiss in the class cases.

First, Philips' argument that the limitations period does not extend beyond November 2007 (four years prior to several Plaintiffs' filing date) ignores well-recognized tolling doctrines, including *American Pipe*, Cross-Jurisdictional tolling and Government Action, which extend the limitations well beyond November 2007.[2] *See Zenith Radio Corp. v. Hazeltine Research,* 401 U.S. 321, 338 (1971); *Mt. Hood Stages, Inc. d/b/a Pac. Trailways v. Greyhound Corp. and Greyhound Lines, Inc.*, 555 F. 2d 687, 698, fn. 26 (1977) (tolling periods may be tacked together), *vacated & remanded on other grounds*, 437 U.S. 322 (1978).

Second, Philips recycles fraudulent concealment arguments previously rejected by the Court in ruling that identical allegation asserted by the Indirect Purchaser ("IP") and Direct Purchaser ("DP") classes were sufficient to state a claim for fraudulent concealment. *See In Re Cathode Ray Tube (CRT) Antitrust Litig.*, 738 F. Supp. 2d 1011, 1024 (N.D. Cal. 2010) ("*In re CRT*") ("It is generally inappropriate to resolve the fact-intensive allegations of fraudulent concealment at the motion to dismiss stage, particularly when the proof relating to the extent of

---

[1] Plaintiffs are Best Buy Co., Inc. *et al.* ("Best Buy"), Target Corp. *et al.* ("Target"), Electrograph Systems, Inc. *et al.* ("Electrograph"), Costco Wholesale Corp. ("Costco"), Alfred H. Siegel, as the duly appointed Trustee of the Circuit City Stores, Inc. Liquidating Trust ("Circuit City"), Polaroid Consumer Electronics, LLC *et al.* ("Polaroid"), P.C. Richard & Song Long Island Corp. *et al.* ("P.C. Richard"), Schultze Agency Services, LLC on behalf of Tweeter Opco, LLC *et al.* ("Tweeter"), CompuCom Systems, Inc. ("CompuCom"), Interbond Corporation of America ("Interbond"), and Office Depot, Inc. ("Office Depot").

[2] This argument is briefed in detail in Plaintiffs' Opposition to Defendants' Joint Motions to Dismiss and is incorporated herein by reference. *See* Pls.' Opp'n to Defs.' Joint Mot. to Dismiss at § III.C.

the fraudulent concealment is alleged to be largely in the hands of the alleged conspirators." [Citations omitted]).

Third, Philips' argument that Plaintiffs have not alleged Philips' participation in Defendants' fraudulent conspiracy is also legally and factually meritless. Plaintiffs specifically allege Philips' ongoing participation in the conspiracy. And in any event, Plaintiffs are not required to "plead detailed, defendant-by-defendant allegations." *Id.* at 1025 ("When viewed in conjunction with the Court's earlier determination that the factual allegations in the complaints plausibly suggest that each Defendant participated in the conspiracy, these allegations of fraudulent concealment are sufficient to deny Defendants' efforts to dismiss claims that accrued before Nov. 26, 2003.").

Fourth, Philips mistakenly argues that the Complaints supposedly show that it withdrew from the conspiracy in June 2001 by creating LPD, as a joint venture with the LG defendants. The Complaints do nothing of the sort. Instead, Plaintiffs allege that Philips continued to participate in the conspiracy through its joint venture in LPD, and that the same "high level executives" that participated in the conspiracy on behalf of Philips continued to conspire after the creation of LPD. *See Best Buy Compl.* ¶¶ 143, 145, 150.[3] Indeed, Plaintiffs allege that the consolidation in the industry was itself a means to further the conspiracy. *See id.* at ¶¶ 98-100.[4] And as a joint venturer in LPD, Philips continued to derive substantial economic benefit from the conspiracy, which similarly defeats its withdrawal claim.

Fifth, Philips argues that the Complaints show that Philips withdrew from the conspiracy in March 2007 when Philips sold its remaining stake in LPD. Philips bears a high burden of proof to establish withdrawal. It has not and cannot do so based on its self-serving and unsupported interpretation of the Complaints. While Plaintiffs allege that "LP Displays announced in March 2007 that Royal Philips and LGEI would cede control over LGPD" (*id.* at ¶

---

[3] *See* Target Compl. ¶¶ 157, 159, 164; Electrograph Compl. ¶¶ 149, 151, 156; Costco Compl. ¶¶ 121, 123, 125; Circuit City Compl. ¶¶ 141, 148; Polaroid Compl. ¶¶ 132, 134, 136; P.C. Richard Compl. ¶¶ 143, 145, 150; Tweeter Compl. ¶¶ 141, 143, 148; CompuCom Compl. ¶¶ 139, 141, 146; Interbond Compl. ¶¶ 137, 139, 144; Office Depot Compl. ¶¶ 138, 140, 145.

[4] *See* Target Compl. ¶¶ 112-114; Electrograph Compl. ¶¶ 104-106; Costco Compl. ¶¶ 76-78; Circuit City Compl. ¶¶ 96-98; Polaroid Compl. ¶¶ 90-93; P.C. Richard Compl. ¶¶ 98-100; Tweeter Compl. ¶¶ 96-98; CompuCom Compl. ¶¶ 94-96; Interbond Compl. ¶¶ 92-94; Office Depot Compl. ¶¶ 93-95.

40)[5], they do not allege that Philips withdrew from the conspiracy.  On the contrary, Plaintiffs allege that Philips continued to participate in the conspiracy through November 25, 2007.  *See id.* at ¶¶ 94, 96, 100, 113.[6]  In any event, any purported withdrawal in March 2007 is irrelevant because the limitations period was tolled under various tolling doctrines.

Finally, Philips attempts to distinguish this Court's prior dispositive ruling in *In re CRT* by arguing that Plaintiffs are no longer asserting a finished product conspiracy.  The Court's prior ruling rejecting Defendants' "withdrawal" argument at the pleading stage was in no way premised on this supposed distinction.  Moreover, that Philips did not previously raise the March 2007 withdrawal argument is of no moment.  As the Court explained, "the Court agrees with the Special Master that this issue [of withdrawal] raises factual questions inappropriate for resolution at the motion-to-dismiss stage."  *In re CRT*, 738 F. Supp. 2d at 1025.

In short, the Special Master should deny Philips' Motion in all respects.

## II.

## FACTUAL BACKGROUND

Plaintiffs' Complaints contain approximately seventy pages of detailed factual allegations that "plausibly suggest" the existence of a price-fixing conspiracy in the CRT market by Defendants in violation of federal and state antitrust laws, and various state competition and consumer protection laws.  By way of illustration, Plaintiffs allege as follows:

> 40.     Defendant LP Displays International Ltd. f/k/a LGPD ("LP Displays") is a Hong Kong company located at Corporate Communications, 6th Floor, ING Tower, 308 Des Voeux Road Central, Sheung Wan, Hong Kong.  LP Displays is the successor entity to LGPD, which was created in 2001 as a 50/50 joint venture between Defendants LGEI and Royal Philips.  In March 2007, LP Displays became an independent company.  LP Displays is a leading supplier of CRTs for use in television sets and computer monitors with annual sales for 2006 of over $2 billion and a market share of 27%.  LP Displays announced in March 2007 that Royal Philips and LGEI would cede control over the company and the shares would be owned by financial institutions and private equity

---

[5] Target Compl. ¶ 46; Electrograph Compl. ¶ 49; Costco Compl. ¶ 32; Circuit City Compl. ¶ 38; Polaroid Compl. ¶ 32; P.C. Richard Compl. ¶ 40; Tweeter Compl. ¶ 38; CompuCom Compl. ¶ 35; Interbond Compl. ¶ 34; Office Depot Compl. ¶ 35.

[6] *See* Target Compl. ¶¶ 108, 110, 114, 127; Electrograph Compl. ¶¶ 100, 102, 106, 119; Costco Compl. ¶¶ 72, 74, 78, 91; Circuit City Compl. ¶¶ 92, 94, 98, 111; Polaroid Compl. ¶¶ 86, 88, 93, 105; P.C. Richard Compl. ¶¶ 94, 96, 100, 113; Tweeter Compl. ¶¶ 92, 94, 98, 111; CompuCom Compl. ¶¶ 90, 92, 96, 109; Interbond Compl. ¶¶ 88, 90, 94, 107; Office Depot Compl. ¶¶ 89, 91, 95, 108.

firms.  During the Relevant Period, LP Displays manufactured, marketed, sold and/or distributed CRT Products, either directly or through its subsidiaries or affiliates, throughout the United States.[7]

46.    Defendant Koninklijke Philips Electronics N.V. a/k/a Royal Philips Electronics ("Royal Philips") is a Dutch company with its principal place of business located at Amstelplein 2, 1070 MX Amsterdam, The Netherlands. Royal Philips, founded in 1891, is one of the world's largest electronics companies, with 160,900 employees located in over 60 countries.  Royal Philips had sole ownership of its CRT business until 2001.  In 2001, Royal Philips transferred its CRT business to a 50/50 joint venture with Defendant LGEI, forming Defendant LGPD (n/k/a LP Displays).[8]

94.    The CRT industry has several characteristics that facilitated a conspiracy, including market concentration, ease of information sharing, the consolidation of manufacturers, multiple interrelated business relationships, significant barriers to entry, heightened price sensitivity to supply and demand forces and homogeneity of products.[9]

98.    The CRT industry also had significant consolidation during the Relevant Period, including but not limited to:  (a) the creation of LGPD in 2001, which was a joint venture involving PHILIPS' and LG Electronics' CRT businesses; and (b) the 2002 merger of Toshiba's and Panasonic's CRT businesses into MTPD.[10]

99.    The industry is marked by a web of cross-licensing agreements, joint ventures and other cooperative arrangements that can facilitate collusion.[11]

100.    Examples of the high degree of cooperation among Defendants in both the CRT Product market and other closely related markets include the following:

---

[7] Best Buy Compl. ¶ 40; Target Compl. ¶ 46; Electrograph Compl. ¶ 49; Costco Compl. ¶ 32; Circuit City Compl. ¶ 38; Polaroid Compl. ¶ 32; P.C. Richard Compl. ¶ 40; Tweeter Compl. ¶ 38; CompuCom Compl. ¶ 35; Interbond Compl. ¶ 34; Office Depot Compl. ¶ 35.

[8] Best Buy Compl. ¶ 46; Target Compl. ¶ 59; Electrograph Compl. ¶ 55; Costco Compl. ¶ 34; Circuit City Compl. ¶ 44; Polaroid Compl. ¶ 27; P.C. Richard Compl. ¶ 46; Tweeter Compl. ¶ 44; CompuCom Compl. ¶ 41; Interbond Compl. ¶ 40; Office Depot Compl. ¶ 41.

[9] Best Buy Compl. ¶ 94; Target Compl. ¶ 108; Electrograph Compl. ¶ 100; Costco Compl. ¶ 72; Circuit City Compl. ¶ 92; Polaroid Compl. ¶ 86; P.C. Richard Compl. ¶ 94; Tweeter Compl. ¶ 92; CompuCom Compl. ¶ 90; Interbond Compl. ¶ 88; Office Depot Compl. ¶ 89.

[10] Best Buy Compl. ¶ 98; Target Compl. ¶ 112; Electrograph Compl. ¶ 104; Costco Compl. ¶ 76; Circuit City Compl. ¶ 96; Polaroid Compl. ¶ 90; P.C. Richard Compl. ¶ 98; Tweeter Compl. ¶ 96; CompuCom Compl. ¶ 94; Interbond Compl. ¶ 92; Office Depot Compl. ¶ 93.

[11] Best Buy Compl. ¶ 99; Target Compl. ¶ 113; Electrograph Compl. ¶ 105; Costco Compl. ¶ 77; Circuit City Compl. ¶ 97; Polaroid Compl. ¶ 92; P.C. Richard Compl. ¶ 99; Tweeter Compl. ¶ 97; CompuCom Compl. ¶ 95; Interbond Compl. ¶ 93; Office Depot Compl. ¶ 94.

a.    The formation of the CRT joint venture LGPD in 2001 by
Defendants LG Electronics and PHILIPS.

b.    Defendants LG Electronics and PHILIPS also formed LG.Philips
LCD Co., Ltd. n/k/a LG Display Co., Ltd. in 1999 as a joint
venture for the purpose of manufacturing TFT-LCD panels.[12]

114.    The CRT conspiracy was effectuated through a combination of group
and bilateral meetings.  In the formative years of the conspiracy (1995-1996),
bilateral discussions were the primary method of communication and took place
on an informal, ad hoc basis.  During this period, representatives from Daewoo
and Defendants LG Electronics and Co-conspirator Samsung visited the other
Defendant manufacturers, including Philips, Chunghwa, Thai CRT, Hitachi,
Toshiba and Panasonic, to discuss increasing prices for CRTs in general and to
specific customers.  These meetings took place in Taiwan, South Korea,
Thailand, Japan, Malaysia, Indonesia and Singapore.[13]

123.    Glass meetings also occurred occasionally in various European
countries.  Attendees at these meetings included those Defendants and Co-
conspirators which had subsidiaries and/or manufacturing facilities located in
Europe, including PHILIPS, LG Electronics, LP Displays, Chunghwa,
Samsung, Daewoo (usually DOSA attended these meetings on behalf of
Daewoo) and IRICO.  Chunghwa also attended these meetings.[14]

137.    In order to ensure the efficacy of their global conspiracy, Defendants
also used bilateral meetings to coordinate pricing with CRT manufacturers in
Brazil and Mexico, such as Philips Brazil, Samsung SDI Brazil and Samsung
SDI Mexico.[15]

143.    Between at least 1995 and 2001, Defendant LG Electronics, through
LGEI and LGETT, participated in at least 100 glass meetings at all levels.  After
2001, LG Electronics participated in the CRT conspiracy through its joint
venture with PHILIPS, LGPD (n/k/a LP Displays).  A substantial number of
these meetings were attended by the highest ranking executives from LG
Electronics.  LG Electronics also engaged in bilateral discussions with each of
the other Defendants on a regular basis.  Through these discussions, LG agreed

12 Best Buy Compl. ¶ 100; Target Compl. ¶ 114; Electrograph Compl. ¶ 106; Costco Compl. ¶ 78; Circuit City Compl. ¶ 98; Polaroid Compl. ¶ 93; P.C. Richard Compl. ¶ 100; Tweeter Compl. ¶ 98; CompuCom Compl. ¶ 96; Interbond Compl. ¶ 94; Office Depot Compl. ¶ 95.

13 Best Buy Compl. ¶ 114; Target Compl. ¶ 128; Electrograph Compl. ¶ 120; Costco Compl. ¶ 92; Circuit City Compl. ¶ 112; Polaroid Compl. ¶ 106; P.C. Richard Compl. ¶ 114; Tweeter Compl. ¶ 112; CompuCom Compl. ¶ 110; Interbond Compl. ¶ 108; Office Depot Compl. ¶ 109.

14 Best Buy Compl. ¶ 123; Target Compl. ¶ 137; Electrograph Compl. ¶ 129; Costco Compl. ¶ 101; Circuit City Compl. ¶ 121; Polaroid Compl. ¶ 113(b); P.C. Richard Compl. ¶ 123; Tweeter Compl. ¶ 121; CompuCom Compl. ¶ 119; Interbond Compl. ¶ 117; Office Depot Compl. ¶ 118.

15 *Best Buy Compl.* ¶ 137; Target Compl. ¶ 151; Electrograph Compl. ¶ 143; Costco Compl. ¶ 115; Circuit City Compl. ¶ 135; Polaroid Compl. ¶ 127; P.C. Richard Compl. ¶ 137; Tweeter Compl. ¶ 135; CompuCom Compl. ¶ 133; Interbond Compl. ¶ 131; Office Depot Compl. ¶ 132.

OPPOSITION TO KPE'S AND PENAC'S MOTION TO
DISMISS (MASTER FILE NO:07-CV-05944-SC)

on prices and supply levels for CRTs.  LG Electronics never effectively
withdrew from this conspiracy.[16]

145.    Between at least 2001 and 2006, Defendant LP Displays (f/k/a LGPD)
participated in at least 100 glass meetings at all levels.  A substantial number of
these meetings were attended by the highest ranking executives from LP
Displays.  Certain of these high level executives from LP Displays had
previously attended meetings on behalf of Defendants LG Electronics and
Philips.  LP Displays also engaged in bilateral discussions with other
Defendants.  Through these discussions, LP Displays agreed on prices and
supply levels for CRTs.[17]

150.    Between at least 1996 and 2001, Defendant PHILIPS, through Royal
Philips and Philips Taiwan, participated in at least 100 glass meetings at all
levels.  After 2001, PHILIPS participated in the CRT conspiracy through its
joint venture with LG Electronics, LGPD (n/k/a LP Displays).  A substantial
number of these meetings were attended by high level executives from
PHILIPS.  PHILIPS also engaged in numerous bilateral discussions with other
Defendants.  Through these discussions, PHILIPS agreed on prices and supply
levels for CRTs.  PHILIPS never effectively withdrew from this conspiracy.[18]

151.    Defendants Philips America and Philips Brazil were represented at those
meetings and were a party to the agreements entered at them.  To the extent
Philips America and Philips Brazil sold and/or distributed CRT Products to
direct purchasers, they played a significant role in the conspiracy because
Defendants wished to ensure that the prices for CRT Products paid by direct
purchasers would not undercut the CRT pricing agreements reached at the glass
meetings.  Thus, Philips America and Philips Brazil were active, knowing
participants in the alleged conspiracy.[19]

170.    A 2004 article from Techtree.com reports that various computer monitor
manufacturers, including LG Electronics, PHILIPS and Samsung, were raising
the price of their monitors in response to increases in CRT prices caused by an
alleged shortage of glass shells used to manufacture the tubes.  PHILIPS is

---

16 Best Buy Compl. ¶ 143; Target Compl. ¶ 156; Electrograph Compl. ¶ 148; Costco Compl. ¶ 120; Circuit City
Compl. ¶ 140; Polaroid Compl. ¶ 132; P.C. Richard Compl. ¶ 142; Tweeter Compl. ¶ 140; CompuCom Compl. ¶
138; Interbond Compl. ¶ 136; Office Depot Compl. ¶ 137.

17 Best Buy Compl. ¶ 145; Target Compl. ¶ 159; Electrograph Compl. ¶ 151; Costco Compl. ¶ 123; Circuit City
Compl. ¶ 143; Polaroid Compl. ¶ 134; P.C. Richard Compl. ¶ 145; Tweeter Compl. ¶ 143; CompuCom Compl. ¶
141; Interbond Compl. ¶ 139; Office Depot Compl. ¶ 140.

18 Best Buy Compl. ¶ 150; Target Compl. ¶ 164; Electrograph Compl. ¶ 156; Costco Compl. ¶ 125; Circuit City
Compl. ¶ 148; Polaroid Compl. ¶ 134; P.C. Richard Compl. ¶ 150; Tweeter Compl. ¶ 148; CompuCom Compl. ¶
146; Interbond Compl. ¶ 144; Office Depot Compl. ¶ 145.

19 Best Buy Compl. ¶ 151; Target Compl. ¶ 165; Electrograph Compl. ¶ 157; Costco Compl. ¶ 126; Circuit City
Compl. ¶ 149; Polaroid Compl. ¶ 135; P.C. Richard Compl. ¶ 151; Tweeter Compl. ¶ 149; CompuCom Compl. ¶
147; Interbond Compl. ¶ 145; Office Depot Compl. ¶ 146.

1
2

quoted as saying that, "It is expected that by the end of September this year [2004] there will be [a] 20% hike in the price of our CRT monitors."[20]

3

4

5

6

232.    In addition, when several CRT manufacturers, including Defendant PHILIPS and LG Electronics and Co-Conspirator Samsung, increased the price of CRTs in 2004, the price hike was blamed on a shortage of glass shells use for manufacturing CRT monitors.  In justifying this price increase, a Deputy General Manager for an LG Electronics distributor in India stated, "[t]his shortage [of glass shells] is a global phenomenon and every company has to increase the prices of CRT monitors in due course of time."[21]

7

8

**III.**

9

**STANDARD OF REVIEW**

10

To survive a motion to dismiss, Plaintiffs are only required to plead facts that plausibly

11

suggest the existence of a conspiracy.  *Bell Atlantic v. Twombly*, 550 U.S. 544, 556 (2007)

12

("*Twombly*").  "'Specific facts are not necessary; the statement need only give the defendant[s]

13

fair notice of what. . .the claim is and the grounds upon which it rests.'"  *In re CRT,* 738 F. Supp.

14

2d at 1017 (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (internal quotation marks

15

omitted)).  Indeed, motions to dismiss for failure to state a claim "rarely" will be granted "in an

16

antitrust suit where proof and details of the alleged conspiracy are largely in the hands of the co-

17

conspirators."  *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp*., S.A.,

18

711 F.2d 989, 995-996 (11th Cir. 1983).  Courts view Rule 12(b)(6) motions with "disfavor"

19

because of the lesser role pleadings play in federal practice and the liberal policy regarding

20

amendment.  *See*, *e.g., Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003) (Rule 12(b)(6)

21

dismissal with prejudice proper only in "extraordinary" cases); *Lormand v. US Unwired, Inc*., 565

22

F.3d 228, 232 (5th Cir. 2009) (Rule 12(b)(6) motion "viewed with disfavor and rarely granted").

23

Thus, "[t]o successfully state a claim under §1 of the Sherman Act, a plaintiff need only

24

meet the notice pleading standard articulated in Fed. R. Civ. P. 8(a)(2).  Rule 8(a)(2) requires 'a

25

26

20 Best Buy Compl. ¶ 170; Target Compl. ¶ 184; Electrograph Compl. ¶ 174; Circuit City Compl. ¶ 168; Polaroid Compl. ¶ 160; P.C. Richard Compl. ¶ 167; Tweeter Compl. ¶ 165; CompuCom Compl. ¶ 163; Interbond Compl. ¶ 161; Office Depot Compl. ¶ 162.

27

28

21 Best Buy Compl. ¶ 232; Target Compl. ¶ 242; Electrograph Compl. ¶ 239; Costco Compl. ¶ 170; Circuit City Compl. ¶ 231; Polaroid Compl. ¶ 176(e); P.C. Richard Compl. ¶ 229; Tweeter Compl. ¶ 227; CompuCom Compl. ¶ 225; Interbond Compl. ¶ 223; Office Depot Compl. ¶ 224.

short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *William O. Gilley Enter., Inc. v. Atl. Richfield Co.*, 561 F.3d 1004, 1009 (9th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555).  Rule 8 does not require detailed factual allegations.  *Ashcroft v. Iqbal*, 556 U.S. 662, 667-78 (2009) ("*Iqbal*").  Under *Twombly's* construction of Rule 8, a plaintiff merely has to "nudge[] [its] claims…'across the line from conceivable to plausible.'"  *Id.* at 680 (quoting *Twombly*, 550 U.S. at 570).

Subject to the requirement that the complaint show a "plausible" claim for relief, the court must accept as true all material factual allegations in the complaint, draw inferences from those allegations in the light most favorable to plaintiff, and construe the complaint liberally.  *See Barker v. Riverside County Office of Ed.*, 584 F.3d 821, 824 (9th Cir. 2009); *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 595 (8th Cir. 2009); *Rescuecome Corp. v. Google, Inc.*, 562 F.3d 123, 127 (2d Cir. 2009).

Moreover, the defects of a complaint must appear on its face; courts cannot consider material outside the complaint such as facts presented in briefs, affidavits, or discovery materials. *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001) ("*Arpin*"); *Butler v. Los Angeles County*, 617 F. Supp. 2d 994, 999 (C.D. Cal. 2009).  "Rule 12(b)(6) does not countenance…dismissals based on a judge's disbelief of a complaint's factual allegations….A well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'"  *Twombly*, 550 U.S. at 554, 556.

## IV.

## PLAINTIFFS' CLAIMS AGAINST PHILIPS ARE TIMELY

**A.**     **Plaintiffs Brought Their Complaints Within The Limitations And Relevant Tolling Periods.**

Philips' argument that the relevant limitations period does not extend beyond November 2007 (four years prior to Plaintiffs' filing date) ignores well-recognized tolling doctrines,

1  including *American Pipe*, [22] Cross-Jurisdictional tolling[23] and Government Action tolling[24],

2  which are "tacked" to extend the limitations period. *Klehr v. A.O. Smith Corp.*, 521 U.S. 179,

3  189 (1997) (antitrust damages are recoverable where suit is "'commenced within four years after

4  the cause of action accrued,' 15 U. S. C. § 15b, plus any additional number of years during which

5  the statute of limitations was tolled."). Thus, in the context of "a price fixing conspiracy that

6  brings about a series of unlawfully high priced sales over a period of years, each overt act that is

7  part of the violation and that injures the plaintiff, *e.g.,* each sale to the plaintiff, starts the statutory

8  period running again, regardless of the plaintiff's knowledge of the alleged illegality at much

9  earlier times." *Id.* (internal citations omitted); (*see also* Pls.' Opp'n to Defs.' Joint Mot. to

10 Dismiss at 1:22-2:6, § II.C.)

11 **B.      The European Commission's November 8, 2007 Disclosure Of Its Investigation Of**

12 **CRT Manufacturers Is An Irrelevant Red Herring.**

13         In a single, passing comment, Philips notes that on November 8, 2007 the European

14 Commission ("EC") disclosed its investigation of CRT manufacturers. (Mot. at 9:12.) Philips

15 ignores this allegation in the balance of its brief and altogether fails to argue that the EC's

16 disclosure has any impact on Plaintiffs' claims, and with good reason.

17         As discussed at length in Plaintiffs' Opposition to Defendants' Joint Motion to Dismiss:

18 (1) the *American Pipe*, Cross-Jurisdictional, and Government Action tolling doctrines extend the

19 limitations period irrespective of any actual or constructive notice; (2) the EC's disclosure that it

20 had conducted "[s]urprise inspections" of several unnamed CRT manufacturers as a "preliminary

21 step" in an investigation into suspected violations of "EC Treaty rules on cartels and restrictive

22 business practices (Article 81)" is woefully insufficient to establish actual or constructive notice.

23 (*See* Pls.' Opp'n to Defs.' Joint Mot. to Dismiss at §§ II.B &C., 4:8-7.)

---

24  [22] *See American Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974).

25  [23] *See In Re Urethane Antitrust Litig.,* 663 F. Supp. 2d 1067, 1080 (D. Kan. 2009); *Jenson v. Allison-Williams Co.,*
    1999 U.S. Dist. LEXIS 22170, *18-19 (S.D. Cal. Aug. 23, 1999); *In re Linerboard Antitrust Litig.*, 223 F.R.D. 335,

26  346 (E.D. Pa. 2004) ("In the antitrust context, declining to adopt cross-jurisdictional class action tolling will invite
    the filing of numerous protective, duplicative and in many cases, unnecessary, suits by class members that want to

27  consider filing claims under state antitrust law not included in a federal class action complaint. [Citations]. These
    suits would undermine the efficiency of federal class actions.").

28  [24] *See* 15 U.S.C. § 16.

---

60628772.5                                    - 9 -                    OPPOSITION TO KPE'S AND PENAC'S MOTION TO
                                                                      DISMISS (MASTER FILE NO:07-CV-05944-SC)

1   **C.**  **Plaintiffs' Allegations Do Not Establish That Philips Withdrew From The**
2   **Conspiracy As A Matter of Law.**

3       **1.**  **Standard for Withdrawal from Conspiracy**

4       It is axiomatic that once a defendant joins a conspiracy, it is jointly and severally liable for

5   any actions taken in furtherance of the conspiracy.  *See Texas Industries, Inc. v. Radcliff*

6   *Materials, Inc.*, 451 U.S. 630, 646 (1981) ("[J]oint and several liability simply ensures that the

7   plaintiffs will be able to recover the full amount of damages from some, if not all, participants.");

8   *Paper Sys., Inc. v. Nippon Paper Indus. Co., Ltd.*, 281 F.3d 629, 633 (7th Cir. 2002) ("Joint and

9   several liability is [a] vital instrument for maximizing deterrence.").  A conspiracy is a

10  partnership in crime, and each member of the conspiracy is liable for the actions of their co-

11  conspirators.  *See United States v. Socony-Vacuum Oil Co.,* 310 US. 150, 253-54 (1940).

12      Here, Philips bears the burden of establishing withdrawal from the CRT conspiracy, and

13  must meet "rigorous requirements" in order to do so.  *See United States* v. *Borelli*, 336 F.2d 376,

14  388 (2d Cir. 1964) (citing *Hyde v. United States*, 225 U.S. 347, 369 (1912)); *see also United*

15  *States v. United States Gypsum Co.,* 438 U.S. 422, 464-65 (1978) ("Affirmative acts inconsistent

16  with the object of the conspiracy *and communicated in a manner reasonably calculated to reach*

17  *co-conspirators* have generally been regarded as sufficient to establish withdrawal or

18  abandonment." (emphasis added)); *United States v. Greenfield*, 44 F.3d 1141, 1150 (2d Cir. 1995)

19  ("Unless a conspirator produces affirmative evidence of withdrawal, his participation in a

20  conspiracy is presumed to continue until the last overt act by any of the conspirators.").  Indeed,

21  summary judgment on withdrawal is rarely granted, let alone on a motion to dismiss.  *See Shakur*

22  *v. Schriro*, 514 F.3d 878, 890 (9th Cir. 2008) ("When the moving party also bears the burden of

23  persuasion at trial, to prevail on summary judgment it must show that 'the evidence is so powerful

24  that no reasonable jury would be free to disbelieve it.'" (quoting MOORE'S FEDERAL PRACTICE –

25  *Civil* § 56.13); *see also In Re TFT-LCD (Flat Panel) Antitrust Litig.*, 820 F. Supp. 2d 1055, 1060

26  (ND Cal. 2011) (same).

27

28

---

60628772.5                                  - 10 -

1

2

**2.      This Court has Already Ruled that Philips' "Withdrawal" Arguments are Improper at the Pleading Stage and Insufficient to Meet its Burden of Proof.**

3      In *In re CRT*, this Court rejected Philips' "withdrawal" arguments, reasoning that the issue

4  of withdrawal cannot be resolved at the pleading stage.  Thus:

5

6

7

8

9

10

> With regard to those Defendants who moved to dismiss based on claims that they withdrew from the alleged conspiracy in 2001 or 2002, the Court agrees with the Special Master that this issue raises factual questions inappropriate for resolution at the motion-to-dismiss stage. See Report at 25. For example, how can the Court know at this stage of the proceedings whether the withdrawing Defendants maintained financial interests in the entities being sold or transferred? It would have been inappropriate for the Special Master to grant the motions to dismiss filed by the Philips Defendants, the Toshiba Defendants, the Hitachi Defendants, the LG Electronics Defendants, and BMCC, on these grounds.

11

12  *In re CRT*, 738 F. Supp. 2d at 1025.

13      Philips attempts to distinguish this dispositive ruling by arguing that Plaintiffs are no

14  longer asserting a finished product conspiracy.  The Court's prior ruling rejecting Defendants'

15  "withdrawal" argument at the pleading stage was in no way premised on this purported

16  distinction.  Moreover, that Philips did not previously raise the March 2007 withdrawal argument

17  is irrelevant because "this issue [of withdrawal] raises factual questions inappropriate for

18  resolution at the motion-to-dismiss stage."  *Id.*

19

20

**3.      Far from Showing Withdrawal, the Complaints Show that Philips Continued to Participate in the CRT Conspiracy After it Formed LPD in 2001.**

21      Contrary to Philips' erroneous claim that "the DAPs have not raised a single allegation of

22  any involvement by the Philips Defendants after the formation of LPD" (Mot. at 10:12-14), the

23  Complaints allege that Philips continued to participate in the conspiracy through its joint venture

24  LPD and through the same Philips high level executives who had participated in the conspiracy

25  on behalf of Philips.  *See* Best Buy Compl. ¶¶ 145-150.[25]  Moreover, Plaintiffs allege that

26  Defendants consolidated the CRT industry precisely to further their price fixing conspiracy.  *See*

27

28

---

[25] *See* Target Compl. ¶¶ 159-164; Electrograph Compl. ¶¶ 151-156; Costco Compl. ¶¶ 123-125; Circuit City Compl. ¶¶ 143-148; Polaroid Compl. ¶¶ 134,136, 144-147; P.C. Richard Compl. ¶¶ 145-150; Tweeter Compl. ¶¶ 143-148; CompuCom Compl. ¶¶ 141-146; Interbond Compl. ¶¶ 139-144; Office Depot Compl. ¶¶ 140-145.

1    *id.* at ¶¶ 94, 98 (alleging that during the class period, the CRT industry experienced significant

2    consolidation, including the creation of LPD; and alleging that this consolidation facilitated the

3    conspiracy).[26]  Plaintiffs further allege that the LPD merger effectively reduced capacity in order

4    "to prop up prices" (*id.* at ¶¶ 200, 202)[27], and that Philips continued to dominate the CRT industry

5    after 2001 through LPD, which allowed defendants to coordinate pricing or allocate markets, as

6    well as monitor the pricing and production of other cartel members.  *See id.* at ¶ 95.[28]

7    These allegations stand in stark contrast to the sole case cited by Philips, *Morton's*

8    *Market, Inc. v. Gustafson's Dairy, Inc.*, 198 F.3d 823, 839 (11th Cir. 1999) ("*Morton's Market*").

9    In *Morton's Market,* the court found, on summary judgment, that defendant withdrew from a

10   conspiracy to fix milk prices when it sold its dairy and permanently severed all ties from the dairy

11   business and the conspiracy.  *See id.*  The Eleventh Circuit held that in order for a conspirator to

12   effectively withdraw from the conspiracy, the break must be both clean and permanent:

13           [T]he law has given effect to a conspirator's abandonment of the
             conspiracy only where the conspirator can demonstrate that he
14           retired from the business, severed all ties to the business, and
             deprived the remaining conspirator group of the services which he
15           provided to the conspiracy.

16   *Id.* at 838-39.  Thus, where the severance is not permanent, withdrawal is not effective.  *See id.* at

17   839.  As an example of ineffective withdrawal, the court cited to *United States v. Eisen*, 974 F.2d

18   246, 269 (2nd Cir. 1992), where an attorney could not establish withdrawal because he continued

19   receiving conspiratorial proceeds after resigning from the conspiratorial enterprise.  *See Morton's*

20   *Market*, 198 F.3d at 839.

21   Thus, *Morton's Market* illustrates precisely why Philips' creation of LPD is consistent

22   with continued participation in, not withdrawal from, the conspiracy.  Finally, Philips' argument

23   that it supposedly resumed competitive activity by purchasing CRTs is unsupported, irrelevant

---

24   [26] *See* Target Compl. ¶¶ 108,112; Electrograph Compl. ¶¶ 100,104; Costco Compl. ¶¶ 72, 76; Circuit City Compl. ¶¶ 92, 96; Polaroid Compl. ¶¶ 86, 90; P.C. Richard Compl. ¶¶ 94, 98; Tweeter Compl. ¶¶ 92, 96; CompuCom Compl. ¶¶ 90, 94; Interbond Compl. ¶¶ 88, 92; Office Depot Compl. ¶¶ 89, 93.

26   [27] Target Compl. ¶¶ 209,211; Electrograph Compl. ¶¶ 206, 208; Circuit City Compl. ¶¶ 198, 200; P.C. Richard Compl. ¶¶ 197, 199; Tweeter Compl. ¶¶ 195, 197; CompuCom Compl. ¶¶ 193, 195; Interbond Compl. ¶ 191, 193; Office Depot Compl. ¶ 192, 194.

27   [28] *See* Target Compl. ¶ 109; Electrograph Compl. ¶ 101; Costco Compl. ¶ 73; Circuit City Compl. ¶ 93; Polaroid Compl. ¶ 87; P.C. Richard Compl. ¶ 95; Tweeter Compl. ¶ 93; CompuCom Compl. ¶ 91; Interbond Compl. ¶ 89; Office Depot Compl. ¶ 90

28

1  given that Philips continued to derive financial benefit from the conspiracy, and improper on a

2  motion to dismiss.

3      **4.      Plaintiffs' Allegations Demonstrate that Philips did not Withdraw from the**

4          **CRT Conspiracy in March 2007.**

5      Philips' argument that the sale of LPD in March 2007 constitutes a permanent severance

6  of its participation in the CRT price fixing conspiracy is based on mere conjecture.  Philips offers

7  no concrete evidence showing its effective withdrawal from the conspiracy, and such evidence

8  would not be appropriate at the pleading stage in any event.  *See*, *e.g*., *Arpin*, 261 F.3d at 925;

9  *Butler*, 617 F. Supp. 2d at 999.  Philips cannot meet its "rigorous" burden of establishing

10  withdrawal based on its self-serving and unsupported interpretation of the Complaints.  And

11  while Plaintiffs allege that "LP Displays announced in March 2007 that Royal Philips and LGEI

12  would cede control over LGPD" (Best Buy Compl. ¶ 40) [29], they do not allege that Philips

13  withdrew from the conspiracy.  Instead, Plaintiffs allege that Philips continued to participate in

14  the conspiracy through November 25, 2007.  *See id.* at ¶¶ 94, 96, 100, 113.[30]  And, at any rate,

15  Philips' purported withdrawal in March 2007 is irrelevant because the limitations period was

16  tolled under various tolling theories discussed above.

17  **D.      This Court Has Already Rejected Philips' Recycled Fraudulent Concealment**

18          **Arguments.**

19      This Court has already rejected Philips' fraudulent concealment arguments in the IP and

20  DP class cases.  There, the Court held that "it is generally inappropriate to resolve the fact-

21  intensive allegations of fraudulent concealment at the motion to dismiss state, particularly when

22  the proof relating to the extent of the fraudulent concealment is alleged to be largely in the hands

23  of the alleged conspirators."  *In re CRT*, 738 F. Supp. 2d at 1024 (quoting *In re Rubber Chems.*

24

25  [29] Target Compl. ¶ 46; Electrograph Compl. ¶ 49; Costco Compl. ¶ 32; Circuit City Compl. ¶ 38; Polaroid Compl. ¶ 32; P.C. Richard Compl. ¶ 40; Tweeter Compl. ¶ 36; CompuCom Compl. ¶ 35; Interbond Compl. ¶ 34; Office Depot

26  Compl. ¶ 35.

27  [30] Target Compl. ¶¶ 108, 110, 114, 127; Electrograph Compl. ¶¶ 100, 102, 106, 119; Costco Compl. ¶¶ 72, 74, 78, 91; Circuit City Compl. ¶¶ 92, 94, 98, 111; Polaroid Compl. ¶¶ 86, 88, 93, 105; P.C. Richard Compl. ¶¶ 94, 96, 100, 113; Tweeter Compl. ¶¶ 92, 94, 98, 111; CompuCom Compl. ¶¶ 90, 92, 96, 109; Interbond Compl. ¶¶ 88, 90, 94,

28  107; Office Depot Compl. ¶¶ 89, 91, 95, 108.

1  *Antitrust Litig.*, 504 F. Supp. 2d 777, 789 (N.D. Cal. 2007).  In so doing, the Court rejected, as

2  inapposite, the same authority that Philips relies upon in the instant Motion.  Thus:

> The Court further notes that Defendants' reliance on *Barker v. American Mobil Power Corp.,* 64 F.3d 1397 (9th Cir. 1995) is misplaced. In that case, the Ninth Circuit panel was reviewing an order on motions for summary judgment. *Id.* at 1400.  After an opportunity for discovery, plaintiffs were unable to produce specific evidence of fraudulent activity or concealment on the part of two of the defendants. *Id.* at 1401.  Here, on the other hand, discovery is in its early stages, and motions for summary judgment have not been filed.

8  *Id.* at 1024; *cf.* Mot. at 12 (citing *Barker*, 64 F.3d at 1402, in support of fraudulent concealment

9  argument).

10       The Court then concluded that the IP's and DP's fraudulent concealment allegations were

11  sufficient.  *In re CRT*, 738 F. Supp. 2d at 1025 ("When viewed in conjunction with the Court's

12  earlier determination that the factual allegations in the complaints plausibly suggest that each

13  Defendant participated in the conspiracy, these allegations of fraudulent concealment are

14  sufficient to deny Defendants' efforts to dismiss claims that accrued before Nov. 26, 2003.").

15       This exact reasoning is dispositive of Philips' fraudulent concealment arguments here.  As

16  in *In re CRT*, Plaintiffs here allege that Defendants organized secret conspiracy meetings called

17  "glass meetings" to avoid detection, conducted secret bilateral meetings, and agreed at glass

18  meetings to manufacture and coordinate pretextual reasons for pricing decisions and output

19  restrictions.  *See* Best Buy Compl. ¶ 225.[31]  Further, Defendants exchanged in advance the text of

20  pretextual communications to customers and coordinated these fraudulent statements.  *See id.*[32]

21  Defendants concealed their conspiracy through various methods including secret meetings in

22  various venues, surreptitious telephone and in-person communications to avoid a written record,

23  and ongoing discussions on how to evade antitrust laws.  *See id.* at ¶¶ 227, 228.[33]  Top executives

---

[31] *See* Target Compl. ¶ 235; Electrograph Compl. ¶ 232; Costco Compl. ¶ 162; Circuit City Compl. ¶ 224; Polaroid Compl. ¶ 176; P.C. Richard Compl. ¶ 222; Tweeter Compl. ¶ 220; CompuCom Compl. ¶ 218; Interbond Compl. ¶ 216; Office Depot Compl. ¶ 217.

[32] *See id.*

[33] *See* Target Compl. ¶¶ 237, 238; Electrograph Compl. ¶¶ 234, 235; Costco Compl. ¶¶ 164, 165; Circuit City Compl. ¶¶ 226, 227; Polaroid Compl. ¶¶ 175, 176; P.C. Richard Compl. ¶¶ 224, 225; Tweeter Compl. ¶¶ 222, 223; CompuCom Compl. ¶¶ 220, 221; Interbond Compl. ¶¶ 218, 219; Office Depot Compl. ¶¶ 219, 220.

1  and officials were instructed not to disclose the existence of the meetings, and participants agreed

2  to stagger their arrivals and departures at meetings to avoid being seen in public with each other.

3  *See id.*[34]  And Philips participated in meetings where these agreements to conceal the conspiracy

4  were reached.  *See id.* at ¶¶ 114, 123, 143, 145, 150, 151, 232.[35]

5          Philips' argument that Plaintiffs have failed to allege that Philips fraudulently concealed

6  the conspiracy is thus baseless.  It is also legally irrelevant because price-fixing conspiracies are,

7  by their nature, fraudulent and secretive.  *See, e.g.*, *In re Graphics Processing Units Antitrust*

8  *Litig.*, 540 F. Supp. 2d 1085, 1096 (N.D. Cal. 2007) ("[D]irect allegations of conspiracy are not

9  always possible given the secret nature of conspiracies.  Nor are direct allegations necessary…").

10  Further, pleading particular overt acts by each defendant is unnecessary, "because a single overt

11  act by just one of the conspirators is enough to sustain a conspiracy claim even on the merits."  *In*

12  *re Vitamins Antitrust Litig.*, 2000 U.S. Dist. LEXIS 7397, *53 (D.D.C. May 9, 2000).[36]

13          And as this Court previously ruled, "Courts in this district do not require plaintiffs in

14  complex, multinational, antitrust cases to plead detailed, defendant-by-defendant allegations;

15  instead they require plaintiffs to make allegations that plausibly suggest that each Defendant

16  participated in the alleged conspiracy."  *In re CRT*, 738 F. Supp. 2d at 1019 (quoting *In re TFT-*

17  *LCD*, 599 F. Supp. 2d at 1185 (quoting *In re Static Random Access Memory (SRAM) Antitrust*

18  *Litig.*, 580 F. Supp. 2d 896, 904 (N.D. Cal. 2008)).  Instead, "[i]n complex, multinational,

19  conspiracy cases, courts in this district review specific allegations in the context of the complaint

20

21
_____

[34] *See id.*

[35] *See* Target Compl. ¶¶ 128, 137, 157, 159, 164, 165, 242; Electrograph Compl. ¶¶ 120, 129, 149, 151, 156, 157, 239; Costco Compl. ¶¶ 92, 101, 121, 123, 125, 126, 170; Circuit City Compl. ¶¶ 112, 121, 141, 143, 148, 149, 231; Polaroid Compl. ¶¶ 106, 113(b), 132, 136, 134, 135, 176(e); P.C. Richard Compl. ¶¶ 114, 123, 143, 145, 150, 151, 229; Tweeter Compl. ¶¶ 112, 121, 141, 143, 148, 149, 227; CompuCom Compl. ¶¶ 110, 119, 139, 141, 146, 147, 225; Interbond Compl. ¶¶ 108, 117, 137, 139, 144, 145, 223; Office Depot Compl. ¶¶ 109, 118, 138, 140, 145, 146, 224.

[36] Indeed, antitrust conspiracies are felonies conceived in secret and direct proof is often difficult to come by.  *See, e.g., In re TFT-LCD Antitrust Litig.*, 599 F. Supp. 2d 1179, 1184 (N.D. Cal. 2009) ("*In re TFT-LCD*") ("the Supreme Court has long recognized that, 'in complex antitrust litigation,' 'motive and intent play leading roles' and 'the proof is largely in the hands of the alleged conspirators.'") (quoting *Poller v. Columbia Broad. Sys., Inc.*, 368 U.S. 464, 413 (1962)); *United States v. Consolidated Packaging Corp.*, 575 F.2d 117, 126 (7th Cir. 1978) (law of conspiracy must "keep up with the ingenuity and subtlety of sophisticated businessmen…"); *Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 699 (1962) (allegations in a price-fixing case are to be considered as a whole, not on a piecemeal basis).

1   taken as a whole." *Id.* [37] And "this approach is consistent with the Supreme Court's admonition

2   … that the 'character and effect of a conspiracy are not to be judged by dismembering it and

3   viewing its separate parts, but only by looking at it as a whole.'" *Id.* (quotations and citations

4   omitted).

5       In short, the Court should again reject Philips' misguided arguments regarding Plaintiffs'

6   fraudulent concealment allegations.

7                                           **V.**

8                                      **CONCLUSION**

9       For the foregoing reasons, Plaintiffs respectfully requests that the Court deny Philips'

10  Motion in its entirety.

11

12  DATED:  September 28, 2012          **ROBINS, KAPLAN, MILLER & CIRESI L.L.P.**

13

14                                      By:   /s/ Elizabeth D. Le
                                            Roman M. Silberfeld
15                                          David Martinez
                                            Elizabeth D. Le
16                                      Attorneys for Plaintiffs
                                        BEST BUY CO., INC.; BEST BUY PURCHASING
17                                      LLC; BEST BUY ENTERPRISE SERVICES, INC.;
                                        BEST BUY STORES, L.P.; BESTBUY.COM, L.L.C.;
18                                      and MAGNOLIA HI-FI, INC.

19

20

21

22

23  [37] *See also In Re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1142 (N.D. Cal. 2009); *In Re OSB Antitrust Litig.* ("*OSB*"), 2007 U.S. Dist. LEXIS 56573, *13 (E.D. Pa., Aug. 3, 2007) ("An antitrust complaint should be
24  viewed as a whole, and the plaintiff must allege that each individual defendant joined the conspiracy and played some role in it."); *Beltz Travel Serv., Inc. v. Intl. Air Transp. Ass'n.*, 620 F.2d 1360, 1367 (9th Cir. 1980) (Plaintiffs
25  need only plead "the existence of a conspiracy in violation of the antitrust laws and that [defendants] were a part of such a conspiracy, [defendants] will be liable for the acts of all members of the conspiracy in furtherance of the
    conspiracy, regardless of the nature of [defendants'] own actions. " It is not necessary to plead each defendant had a
26  role in "every detail in the execution of the conspiracy…to establish liability, for each conspirator may be performing different tasks to bring about the desired result."); *In re Flat Glass Antitrust Litig.*, 385 F.3d 350, 363 (3d Cir. Pa.
27  2004) ("If six firms act in parallel fashion and there is evidence that five of the firms entered into an agreement, for example, it is reasonable to infer that the sixth firm acted consistent with the other five firms' actions because it was
28  also a party to the agreement. That is especially so if the sister firm's behavior mirrored that of the five conceded coconspirators.").

60628772.5

1   DATED:  September 28, 2012          **BOIES, SCHILLER & FLEXNER LLP**

2

3                                      By:    /s/ Philip J. Iovieno
                                              William A. Isaacson
                                              Jennifer Milici
4                                             Stuart Singer
                                              Philip J. Iovieno
5                                             Anne M. Nardacci

6                                      LIAISON COUNSEL FOR DIRECT ACTION
                                       PLAINTIFFS; AND ATTORNEYS FOR PLAINTIFFS
7                                      ELECTROGRAPH SYSTEMS, INC.,
                                       ELECTROGRAPH TECHNOLOGIES, CORP.,
8                                      OFFICE DEPOT, INC., COMPUCOM SYSTEMS,
                                       INC., INTERBOND CORPORATION OF AMERICA,
9                                      P.C. RICHARD & SON LONG ISLAND
                                       CORPORATION, MARTA COOPERATIVE OF
10                                     AMERICA, INC., ABC APPLIANCE, INC.,
                                       SCHULTZE AGENCY SERVICES LLC ON BEHALF
11                                     OF TWEETER OPCO, LLC, AND TWEETER
                                       NEWCO, LLC

12
    DATED:  September 28, 2012          **CROWELL MORING LLP**
13

14                                     By:    /s/ Jason c. Murray
                                              Jason C. Murray
15                                            Jerome (Jerry) A. Murphy

16                                     ATTORNEYS FOR PLAINTIFFS
                                       TARGET CORP.; SEARS, ROEBUCK AND CO.;
17                                     KMART CORP.; OLD COMP INC.; AND GOOD
                                       GUYS, INC.; RADIOSHACK CORP.

18

19

20

21

22

23

24

25

26

27

28

1    DATED:  September 28, 2012          **LINDQUIST & VENNUM P.L.L.P.**

2

3                                        By:    /s/ Kelly G. Laudon
                                                Jessica L. Meyer (SBN: 249064)
                                                James M. Lockhart (*pro hac vice*)
4                                               James P. McCarthy (*pro hac vice*)
                                                Kelly G. Laudon (*pro hac vice*)
5                                               Lindquist & Vennum P.L.L.P.
                                                4200 IDS Center
6                                               80 South Eighth Street
                                                Minneapolis, MN 55402
7                                               Telephone: (612) 371-3211
                                                Facsimile: (612) 371-3207
8                                               Email: jmeyer@lindquist.com
                                                Email: jlockhart@lindquist.com
9                                               Email: jmccarthy@lindquist.com
                                                Email: klaudon@lindquist.com
10
                                         ATTORNEYS FOR PLAINTIFFS JOHN R.
11                                       STOEBNER, AS CHAPTER 7 TRUSTEE FOR PBE
                                         CONSUMER ELECTRONICS, LLC AND RELATED
12                                       ENTITIES; AND DOUGLAS A. KELLEY, AS
                                         CHAPTER 11 TRUSTEE FOR PETTERS COMPANY,
13                                       INC. AND RELATED ENTITIES, AND AS
                                         RECEIVER FOR PETTERS COMPANY, LLC AND
14                                       RELATED ENTITIES

15   DATED:  September 28, 2012          **PERKINS COIE LLP**

16
                                         By:    /s/ David J. Burman
17                                              David J. Burman
                                                Nick Hesterberg
18                                              Euphemia N. Thomopulos

19                                       **ATTORNEYS FOR PLAINTIFF**
                                         **COSTCO WHOLESALE CORPORATION**
20

21   DATED:  September 28, 2012          **SUSMAN GODFREY L.L.P.**

22
                                         By:    /s/ H. Lee Godfrey
23                                              H. Lee Godfrey
                                                Kenneth S. Marks
24                                              David Peterson
                                                Jonathan J. Ross
25                                              Parker C. Folse, III
                                                Rachel S. Black
26
                                         ATTORNEYS FOR PLAINTIFFS
27                                       ALFRED H. SIEGEL, AS TRUSTEE OF THE
                                         CIRCUIT CITY STORES, INC. LIQUIDATING
28                                       TRUST

---

60628772.5                    - 18 -        OPPOSITION TO KPE'S AND PENAC'S MOTION TO
                                            DISMISS (MASTER FILE NO:07-CV-05944-SC)

1        Pursuant to General Order 45, Part X-B, the filer attests that concurrence in the filing of

2  this document has been obtained from the Direct Action Plaintiffs.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28