# EXHIBIT 9

supported by the trial testimony of plaintiffs' expert, as well as economic theory and factors regarding the efficient administration of the settlement fund. Any attempt to further refine the method of allocation would unduly diminish and delay the payments to individual class members with no material improvement in the fairness of the plan. Accordingly, the Court approves the revised plan of allocation.

IT IS THEREFORE ORDERED that settlement counsel's *Motion For Approval Of Revised Plan Of Allocation* (Doc. #1040) filed May 26, 2000 be and hereby is SUSTAINED.

IT IS FURTHER ORDERED that the *Motion For Attorney's Fees* (Doc. #1027) filed by Gerald H. Abrams on April 25, 2000 be and hereby is OVERRULED.

---

[¶ 73,013]  Microsoft I-V Cases, Coordination Proceedings Special Title (Rule 1550(b)).

California Superior Court, City and County of San Francisco. No. J.C.C.P. No. 4106. Filed August 29, 2000.

### California Cartwright Act

**Class Actions—State Laws—Class Certification—Standard—Computers, Computer Software.**—Two purported classes of California indirect purchasers of software products produced by a computer software company (purchasers of the company's operating system software and purchasers of the company's word processing or spreadsheet software) were certified to proceed with California state law claims against the company. The plaintiffs alleged that the company harmed consumers by establishing and maintaining a monopoly of the Intel-compatible personal computer markets for operating systems software and for word processing and spreadsheet applications software. The matter was suitable for resolution on a classwide basis. The proposed classes were ascertainable, the classes were sufficiently numerous, the named representatives' claims were typical of those of the classes and the interests of the classes would be fairly and adequately represented. In addition, common questions of fact or law predominated, and a class action was the superior method for adjudicating the matter.

See ¶ 9410.05.

**Class Actions—State Laws—Class Certification—Monopolization—Computers, Computer Software.**—For purposes of class certification in a state antitrust law class action by California indirect purchasers against a computer software company for engaging in monopolization, plaintiffs made a sufficient threshold showing that issues of law and fact regarding the company's antitrust violations were subject to common proof by pointing to findings of fact and conclusions of law against the company in a federal/state enforcement action. Issues as to whether the company violated the Cartwright Act were not differentiated among individual consumers.

See ¶ 9410.05.

**Class Actions—State Laws—Class Certification—Fact of Injury—Computers, Computer Software.**—For purposes of class certification in a state antitrust law class action by California indirect purchasers against a computer software company for engaging in monopolization, the plaintiffs established that the harm suffered by consumers as a result of the company's anticompetitive practices—or fact of injury—was capable of proof on a classwide basis. While the task was formidable, it was not impossible. The plaintiffs proposed several methodologies shown to be widely accepted within the profession and submitted published empirical analyses to demonstrate general harm to consumers as a result of the company's conduct. The plaintiffs did not have to prove that each and every plaintiff paid a supracompetitive price for the relevant software products.

See ¶ 9410.05.

**Class Actions—State Laws—Class Certification—Damages Calculation—Computers, Computer Software.**—For purposes of class certification in a state antitrust law class action by California indirect purchasers against a computer software company for engaging in monopolization, the plaintiffs demonstrated that the amount of damages resulting from the company's alleged overcharges was susceptible to classwide proof. Damages could be calculated in the aggregate for the class. Summing of all individual claims was not required.

See ¶ 9410.05.

**Class Actions—State Laws—Class Certification—Superiority of Class Action Methodology—Computers, Computer Software.**—A class action was the superior method for adjudicating a state law monopolization action by California indirect purchasers of software products produced by a computer software company against that company. The case involved a very large number of claimants with relatively small amounts at stake. Most consumers had little incentive to

litigate independently, since the costs of litigation would have overwhelmed their potential recovery. Moreover, the potential recovery was not so insignificant to warrant the assumption that individual consumers would not be motivated to claim any recovery to which they were entitled or that a favorable outcome would only benefit attorneys. The denial of class treatment could result in repetitious litigation and inconsistent judgments to the extent that purchasers of large quantities of the company's software elected to pursue individual claims.

See ¶ 9410.05.

For plaintiffs: Eugene Crew, Daniele J. Gurniss, Richard L. Grossman, and Theodore T. Herhold of Townsend & Townsend & Crew, San Francisco, Cal., R. Stephen Berry, J. Daniel Leftwich, Michael J. Quinn, and Gregory Baruch of Berry & Leftwich, Washington, D.C., Michael K. Kellogg, Mark C. Hansen, and Steven F. Benz of Kellogg, Huber, Hansen, Todd & Evans, Washington, D.C., Craig C. Corbitt of Zelle, Hofmann, Voelbel & Gette, San Francisco, Cal., William Bernstein, Joseph R. Saveri, and Steven M. Tindall of Lieff, Cabraser, Heimann & Bernstein, San Francisco, Cal., Leonard B. Simon of Milberg, Weiss, Bershad, Hynes & Lerach, New York, Daniel J. Mogin, San Diego, Cal., Guido Saveri and R. Alexander Saveri of Saveri & Saveri, Inc., San Francisco, Cal., Josef D. Cooper and Tracy R. Kirkham of Cooper & Kirkham, San Francisco, Cal., Lingel H. Winters, San Francisco, Cal., Jeffreyi J. Parish, Oakland, Cal., and Francis .O. Scarpulla, San Francisco, Cal. For defendant: Robert A. Rosenfeld and Stephen V. Bomse of Heller, Ehrman, White & McAuliffe, San Francisco, Cal., David Tulchin and Michael Lacovara of Sullivan & Cromwell, New York, N.Y., Steve W. Berman of Hagens & Berman, Seattle, Wash., Thomas W. Burt, Richard J. Wallis, and Steven J. Aeschbacher, Redmond, Wash.

## ORDER RE CLASS CERTIFICATION

POLLAK, J.: This is a coordinated proceeding brought by plaintiffs as representatives of two purported classes of California indirect purchasers of software products produced by defendant Microsoft Corporation.

The operative complaint for all of the coordinated actions[1] alleges causes of action under the Cartwright Act (Bus. & Prof. Code, § 16720 et seq.) and the Unfair Competition Act (Bus. & Prof. Code, § 17200 et seq.). Plaintiffs allege that defendant engaged in numerous violations of these Acts in establishing and maintaining an illegal monopoly of the Intel-compatible personal computer markets for operating systems software and for word processing and spreadsheet applications software. Plaintiffs allege that Microsoft harmed California consumers by overcharging for its software as a result of the abuse of its monopoly power and by depriving consumers of other benefits that would have been derived from competition in those markets.

Plaintiffs seek to bring this action on behalf of California individuals and entities that purchased software programs indirectly from Microsoft. Specifically, plaintiffs request that two classes be certified:

(1) The "*Windows and MS-DOS Operating System Software Class*:" All persons or entities within the State of California who, on or after May 18, 1994, indirectly purchased

"Microsoft Windows operating system software or MS-DOS operating system software" and who did not purchase it for the purpose of resale.

(2) The "*Word and Excel Software Class*." All persons or entities within the State of California who, on or after May 18, 1994, indirectly purchased Microsoft "Word" word processing software and/or "Excel" spreadsheet software compatible with "Microsoft Windows operating system software or MS-DOS operating system software" and who did not purchase it for the purpose of resale.

Excluded from the class[es] are government entities, Microsoft officers and directors, subsidiaries in which Microsoft has greater than a 50 percent ownership interest and any judges or justices assigned to hear any aspect of this litigation. Also excluded are persons or entities who make their purchases after the date of notice to the class.[2]

Microsoft contends that the complexities of this case preclude common proof of the key issue of whether any illegal practices adversely impacted California consumers, and that certification is therefore inappropriate. "[S]hort of making an individual inquiry as to each proposed class member, [there is] no way of proving the key 'fact of injury' or 'impact' element in an antitrust class action; that the alleged monopolistic 'overcharge' actually worked a discernible,

---

[1] The Amended Complaint for Violations of California Business and Professions Code § § 16720 and 17200 Seeking Damages, Restitution and Injunctive Relief; Class Action, filed March 19, 1999 in *Lingo v. Microsoft Corporation*, San Francisco Superior Court No. 301357 (hereafter "Complaint").

[2] Microsoft notes that because it does not actually "sell" its software to anyone (rather, it "licenses" its products), it

is technically incorrect to refer to putative class members as indirect "purchasers." However, for the sake of simplicity, the court will also adopt plaintiffs' use of the widely recognized terminology. However, the term "licensed" should be inserted in the definition of the classes to be certified.

tangible impact on the vast majority of end-users in the proposed class. Nor could the amount of the alleged overcharge, if any, passed on to an end-user be estimated without individual investigation." (Microsoft Corporation's Memorandum of Points and Authorities in Support of Its Opposition to Plaintiffs' Renewed Motion for Class Certification ("Opp.") at p. 3.)

While plaintiffs urge that "[t]here is nothing extraordinary about [this] motion" (Memorandum of Points and Authorities in Support of Plaintiffs' Renewed Motion for Class Certification ("Motion") at p. 1), the application for certification of a class in this case is hardly run of the mill. Unlike virtually all reported decisions in antitrust cases in which classes of indirect purchasers have been certified, plaintiffs do not base their claim for recovery on allegations that defendant committed a per se violation—a critical factor that would permit a classwide presumption of injury. Moreover, there undoubtedly is a basis for Microsoft's emphasis on the number of software programs it has marketed over the purported class period, the pricing differences that have existed over this period of more than six years, the rapid pace of change in the computer industry over this period, the varied channels through which its software has been distributed, and the critical fact that its software was frequently incorporated into personal computers and represented only a small fraction of the consumers' purchase price. These factors require the court to consider with utmost care the particular issues raised by the allegations and the way in which plaintiffs intend to meet their burden of proof. The question at this point, however, is not whether plaintiffs will be able to prove their case, but only whether their contentions can be evaluated in a manner that does not require consideration of so many individualized circumstances as to be completely impracticable.

**A. Standard for Class Certification.**

Class units are authorized in California when "the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court." (Code Civ. Proc., §382.) A class should be certified when the party seeking certification has demonstrated the existence of an ascertainable class and a well-defined community of interest among the class members. (*Richmond* v. *Dart Indus., Inc.* (1981) 29 Cal.3d 462, 470; *see also Daar* v. *Yellow Cab Co.* (1967) 67 Cal.2d 695, 704.) The community

of interest requirement embodies three factors: "(1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class." (*Linder* v. *Thrifty Oil Co.* (2000) 23 Cal.4th 429, 435 (citing *Richmond* v. *Dart Indus., Inc., supra,* 29 Cal.3d at p. 470.) In addition, the party seeking certification must establish that the class action is a superior method of adjudicating the matter. (*Reyes* v. *Board of Supervisors* (1987) 196 Cal.App.3d 1263, 1279-1280.) In the absence of controlling state authority, California courts look to Rule 23 of the Federal Rules of Civil Procedure and to the federal case law interpreting this rule. (*Richmond* v. *Dart Indus., Inc., supra,* 29 Cal.3d at pp. 469-470.)[3]

The party seeking certification of the class carries the burden of establishing that the requirements for certification are met. (*Richmond* v. *Dart Indus., Inc., supra,* 29 Cal.3d at p. 470.) Courts encourage the use of the class action to "prevent a failure of justice in our judicial system." (*Linder* v. *Thrifty Oil Co., supra,* 23 Cal.4th at p. 434.) Consumers' individual damages frequently are insufficient to justify the costs of litigation, so that in the absence of class treatment, violations of law, inflicting substantial damages in the aggregate would go unremedied. But to ensure that no party suffers a failure of justice, it is necessary to "carefully weigh respective benefits and burdens, and to allow maintenance of the class action only where substantial benefits accrue both to litigants and the courts." (*Linder* v. *Thrifty Oil Co., supra,* 23 Cal.4th at p. 435.)

In considering a class certification motion, the court accepts the facts alleged in the complaint as true. (*See Linder* v. *Thrifty Oil Co., supra,* 23 Cal.4th at p. 443; *Blackie* v. *Barrack* (9th Cir. 1975) 524 F.2d 891, 901, fn. 17.) The Supreme Court has recently emphasized that certification of a class is a procedural question that should not be conditioned upon a showing that the class claims are likely to succeed on the merits. (*Linder* v. *Thrifty Oil Co., supra,* 23 Cal.4th at pp. 439-440, 443.) The Supreme Court also has repeated that courts should resolve any doubt as to whether to certify a class in favor of certification. (See, e.g., *Richmond* v. *Dart Indus., Inc., supra,* 29 Cal.3d at pp. 473-475; *La Sala* v. *American Savings & Loan Ass'n* (1971) 5 Cal.3d 864, 883; *Vasquez* v. *Superior Court* (1971) 4 Cal.3d 800, 807.)

---

[3] Rule 23 of the Federal Rules of Civil Procedure requires that plaintiff show common questions of fact or law, numerosity of the class, typicality of the named plaintiff's claims and adequacy of representation. In addition, plaintiff must show that the common questions of law or fact predominate over questions affecting only individual class members and

that the class action is superior to other methods for fairly and efficiently resolving the dispute. (Fed. Rules Civ. Proc., Rule 23(a), (b)(3), 28 U.S.C.; *B.W.I. Custom Kitchen* v. *Owens-Illinois, Inc.* (1988-1 Trade Cases ¶ 68,053), (1987) 191 Cal.App.3d 1341, 1347, fn. 5.)

While issues affecting the merits may be enmeshed with class action requirements, the issue at this stage of the proceedings is only whether the matter is suitable for resolution on a class-wide basis. (*Linder v. Thrifty Oil Co., supra,* 23 Cal.4th at p. 443.) Plaintiffs are not now required to prove their case. (See *id.,* at p. 438-39, 443; *Elsen v. Carlisle & Jacquelin* [1974-1 TRADE CASES ¶75,082] (1974) 417 U.S. 156, 177; *In re Catfish Antitrust Litigation* [1993-2 TRADE CASES ¶70,395] (N.D. Miss. 1993) 826 F.Supp. 1019, 1038-1039.) Rather, they are required to make a "threshold showing" that the antitrust violations, if proven, have had a common impact on the class. (*In re Catfish Antitrust Litigation, supra,* at pp. 1041-1042.) Plaintiffs are also required to advance a method for proving generalized damages on a classwide basis "not so insubstantial that it amount[s] to no method at all." (*Id.,* at p. 1042.) In response to plaintiffs' showing that all of the requirements for class certification have been met, Microsoft disputes only whether common questions of law or fact predominate.[4]

**B. Indirect Purchaser Suits for Damages in California.**

California is one of a minority of states that permits indirect purchasers to maintain antitrust suits for damages. Rejecting *Illinois Brick Co. v. Illinois* [1977-1 TRADE CASES ¶61,460] (1977) 431 U.S. 720, in which the United States Supreme Court held that such suits could not be maintained under the federal Sherman Act, the California Legislature amended the Cartwright Act specifically to permit indirect purchaser actions under California law. (Bus. & Prof. Code, §16750(a).) The California Supreme Court noted that this legislative action constituted an

---

[4] Microsoft does not seem to contest that the proposed classes are ascertainable. Whether a class is ascertainable depends on the clarity of the class definition, the numerosity of the putative class and the means available to identify potential class members. (*Reyes v. Board of Supervisors, supra,* 196 Cal.App.3d at p. 1074.) The class definitions make clear that any California consumer of the software at issue who purchased the product(s) for his, her or its own use and not for resale within the class period is a member of the class. The definitions also make clear who is excluded from the classes. Moreover, according to declarations submitted with the moving papers, the named plaintiffs who seek to represent one or both classes are themselves members of one or both of the classes.

The numerosity requirement also is not disputed and is satisfied because the class members are so numerous that it is "impracticable to bring them all before the court." (Code Civ. Proc., §382.) There is no predetermined number of class members necessary as a matter of law for the maintenance of a class action. (*Hebbard v. Colgrove* (1972) 28 Cal.App.3d 1017 (not inappropriate to certify class involving a minimum of 28 members); *Collwhraiger, Inc. v. GTE Corp.* (1987) 191 Cal.App.3d 605 (mere size of proposed class numbering over one million members did not make proposed class action unmanageable).) Here plaintiffs allege

---

endorsement of Justice Brennan's dissenting opinion in *Illinois Brick* and "a mandate to avoid unnecessary procedural barriers to indirect purchasers' prosecution of California antitrust suits." (*Union Carbide v. Superior Court* (1984) 36 Cal.3d 15, 21-22.)

**C. Common Questions of Law or Fact Predominate over Individual Questions.**

Plaintiffs' burden is to establish that common questions of law or fact predominate over individual issues. This inquiry "turns on an interpretation of substantive issues of antitrust law." (*Rosack v. Volvo of America Corp.* [1982-83 TRADE CASES ¶65,145] (1982) 131 Cal.App.3d 741, 751 (*Rosack*).) Federal case law interpreting the Sherman and Clayton Acts is applicable to interpretation of California's antitrust law. (*Ibid.*) To establish liability, plaintiffs must prove an antitrust violation and demonstrate that the class suffered injury or impact as a result of the violation. (*B.W.I. Custom Kitchen v. Owens-Illinois, Inc.* [1988-1 TRADE CASES ¶68,053] (1987) 191 Cal.App.3d 1341, 1350 (*B.W.I. Custom Kitchen*).) For class certification purposes, plaintiffs may satisfy this requirement by making a "threshold showing that the antitrust violation, if proven, had a common impact on the class members." (*In re Catfish Antitrust Litigation, supra,* 826 F.Supp. at pp. 1038-1039.) "If plaintiffs have stated claims of illegality and impact which can be proved predominantly with facts applicable to the class as a whole, rather than by a series of facts relevant to only individual or small groups of plaintiffs, then prosecution of this case as a class action is appropriate and desirable." (*Rosack, supra,* 131 Cal.App.3d at p. 752.) Plaintiffs' proposed method for generalized proof of dam-

---

there are "clearly millions of class members." (Motion at p. 19.)

The typicality requirement is satisfied if the representative plaintiff's claim "has the essential characteristics common to the claims of the class." (*In re Flat Glass Antitrust Litigation* [1999-2 TRADE CASES ¶72,713] (1999) 191 F.R.D. 472, 479.) The named plaintiffs' claims here, that they paid illegal overcharges due to defendant's antitrust violation, are identical to those of the class, and are, therefore, typical of those of the class.

Again, the parties do not take issue with the adequacy of representation requirement, which is met by (1) retaining class counsel competent to handle the litigation, and (2) ensuring that the class representatives' interests are not antagonistic to those of the class. In approving plaintiffs' proposed organization of counsel, this court found plaintiffs' counsel to be well qualified to conduct this litigation. (See Pretrial Order No.1, filed Mar. 9, 2000, and supporting documentation filed by plaintiffs in support thereof.) The named plaintiffs' claims arise through the same set of facts as those of the class and their claimed injuries are the same. Through declarations, the named plaintiffs attest to their ability and willingness to prosecute the litigation and protect the interests of the class.

---

¶73,013                           ©2000, CCH INCORPORATED

ages must not be "so insubstantial that it amount[s] to no method at all." (*In re Catfish Antitrust Litigation, supra,* 826 F.Supp. at p. 1042.)

Plaintiffs frame the common questions presented by this action as follows:

(1) whether Microsoft possesses monopoly power in the relevant computer software markets; (2) whether Microsoft has acquired, maintained and increased its market power through violations of the Cartwright Act and the Unfair Competition Act (Bus. & Prof. Code §§ 16720, 16722 and 17200); (3) whether Microsoft exploited its illegal monopoly to cause substantial harm to competition in the relevant markets; (4) whether Microsoft exploited its illegal monopoly to cause substantial harm to consumers by overcharging them for inferior products, suppressing innovation and denying consumers their freedom of choice in a competitive market; (5) whether Microsoft should be required to make full restitution for the harm it unlawfully inflicted upon consumers and the profit it unlawfully reaped from consumers; and (6) whether Microsoft should be enjoined from continuing its violations of law.

(Plaintiffs' Reply in Support of Renewed Motion for Class Certification ("Reply") at pp. 10-11.) The issues presented fall into three categories: (1) whether Microsoft violated California's antitrust law; (2) whether any such violation caused harm to the classes; and (3) what relief is appropriate.

**1. Violation.**

Plaintiffs allege numerous antitrust violations by Microsoft that had the purpose and effect of establishing and maintaining an illegal monopoly of the personal computer operating systems, word processing and spreadsheet software markets. (Compl. at ¶¶ 37, 38, 104-107.) Plaintiffs allege that Microsoft exploited its monopoly power[5] to cause substantial harm to competition and to the ultimate consumers of Microsoft's products in California, including overcharges for the software programs at issue. (Compl. at ¶¶ 104, 105, 107.) Such conduct, if proven, violates the Cartwright Act, which prohibits combinations or conspiracies in restraint of trade. (Bus. & Prof. Code, § 16720 et seq.)

As evidence of the substantiality of their claims and the susceptibility of these claims to classwide analysis, plaintiffs point to the Find-

[5] Plaintiffs allege that Microsoft controls approximately 90% of the operating systems, word processing and spreadsheet software markets. (Compl. ¶¶ 31, 34, 36.)

[6] In further support of their motion, plaintiffs submitted the opinion of Professor David J. Farber describing the nature of the competition that would have existed absent

ings of Fact in the antitrust action brought by the United States against Microsoft. (*United States v. Microsoft Corp.* [2000-1 TRADE CASES ¶72,839] (D.D.C. 1999) 65 F.Supp.2d 1 [hereafter "Findings of Fact"]; see also *United States v. Microsoft Corp.* [2000-1 TRADE CASES ¶72,839] (D.D.C. 2000) 87 F.Supp.2d 30 [hereafter "Conclusions of Law"].) There, the District Court made detailed findings of various forms of anticompetitive conduct by Microsoft. Judge Jackson found that Microsoft engaged in anticompetitive conduct to protect Windows, its core asset, from competition (e.g. Findings of Fact ¶¶ 132, 194, 409-412; see also Conclusions of Law §12), including restrictions on personal computer manufacturers, internet access providers and internet content providers. (E.g. Findings of Fact ¶¶ 155, 203, 215, 221, 234, 235, 237, 242-336.) Judge Jackson found that Microsoft charged higher prices than it would have in a competitive environment, consistent with monopoly power (Findings of Fact ¶¶ 62, 63),[6] and concluded that Microsoft's conduct had "harmed consumers in ways that are immediate and discernible." (Findings of Fact ¶ 409.)

Such Sherman Act violations also constitute violations of the Cartwright Act and violations of the Unfair Competition Act (*Onellmaue Co. v. Stewart Title Guaranty Co.* [1998-2 TRADE CASES ¶72,285] (1998) 19 Cal.4th 26, 42-43), and will entail proof of the same conduct by Microsoft as to each class member. (*Rosack, supra,* 131 Cal.App.3d at p. 752; *In re Catfish Antitrust Litigation, supra,* 826 F.Supp. at p. 1039.) Microsoft's actions in this regard are not differentiated with respect to individual consumers; the focus is squarely on Microsoft's conduct, not the conduct of individual class members. Thus, the proof required to demonstrate the "existence, implementation and effect" of the alleged unlawful conduct will require "a common thread of evidence" which will "correspond to evidence which otherwise would be introduced by absentee class members." (*B.W.I. Custom Kitchen, supra,* 191 Cal.App.3d at p. 1349 [quoting *In re Sugar Indus. Antitrust Litigation* [1976-2 TRADE CASES ¶61,215] (E.D. Pa. 1976) 73 F.R.D. 322, 345]; *In re Flat Glass Antitrust Litigation* [1999-2 TRADE CASES ¶72,713] (W.D. Pa. 1999) 191 F.R.D. 472, 484.) Plaintiffs have made a sufficient "threshold showing" that the issues of fact and law regarding Microsoft's alleged violations of the Cartwright Act and the Unfair Competition Act are subject to common proof.

Microsoft's alleged anticompetitive conduct (the "but for" world) and opining that pricing for operating systems and applications software would have been lower had Microsoft not engaged in such conduct. (Declaration of David J. Farber in Support of Plaintiffs' Renewed Motion for Class Certification ("Farber Decl.") ¶¶ 34, 57.)

## 2. Fact of Injury.

Plaintiffs must also demonstrate that whether consumers suffered harm "as a result of Microsoft's anticompetitive conduct is also capable of proof on a classwide basis. (*B.W.I. Custom Kitchen, supra,* 191 Cal.App.3d at p. 1350.)" "[A]n antitrust plaintiff's 'burden of proving the fact of damage . . . is satisfied by its proof of some damage flowing from the unlawful conspiracy; inquiry beyond this minimum point goes only to the amount and not the fact of damage.'" (*Ibid.* [citing *Zenith Corp. v. Hazeltine* (1969) 395 U.S. 100, 114, fn. 9].) Plaintiffs contend that Microsoft harmed the class by charging supracompetitive prices for its software. Plaintiffs must, therefore, make a "threshold showing" that proof of the overcharge is common to the class.

There is considerable authority for the proposition that in a case alleging price fixing the fact of injury may be determined on a classwide basis. (See, e.g., *B.W.I. Custom Kitchen, supra,* 191 Cal.App.3d 1341; *Rosack, supra,* 131 Cal.App.3d 741, *In re Catfish Antitrust Litigation, supra,* 826 F.Supp. 1019; *In re Sugar Antitrust Litigation, supra,* 73 F.R.D. 322.) Because price fixing is a *per se* violation of antitrust law, a presumption of harm arises from proof of such a violation. (*B.W.I. Custom Kitchen, supra,* at pp. 1350-1353; *Rosack, supra,* at pp. 753-754.) "It has been held that impact will be increased once a plaintiff demonstrates the existence of an unlawful conspiracy that had the effect of stabilizing, maintaining or establishing prices beyond competitive levels." (*In re Sugar Indus. Antitrust Litigation, supra,* at p. 347.) A *per se* violation raises a presumption of harm because conduct such as price fixing "per se violation has the sole purpose of artificially raising the price of the item. It follows that consumers of the product pay more than they would in a competitive market even if the prices charged to direct purchasers vary. (*B.W.I. Custom Kitchen, supra,* at pp. 1350-1351.) Thus, a plaintiff need not provide evidence of harm to direct purchasers above and beyond establishing "the existence of an unlawful conspiracy that had the effect of stabilizing, maintaining, or establishing product prices beyond competitive levels." (*In re Sugar Indus. Antitrust Litigation, supra,* at p. 347.)

Holding monopoly power, however, is not itself a violation of any antitrust provision. Whether particular practices engaged in to acquire, maintain or extend such power constitute violations must be evaluated under the rule of reason. (*Bert G. Gianelli Distrib. Co. v. Beck &*

Co. [1985-2 TRADE CASES ¶ 66,851] (1985) 172 Cal.App.3d 1020, 1047-1048; *Standard Oil Co. v. United States* (1910) 221 U.S. 1, 61-62.) Some practices that flow from the existence of monopoly power may benefit rather than harm consumers, so that injury may not be presumed simply from proof that the defendant engaged in the conduct in question. (*Standard Oil Co. v. United States, supra,* 221 U.S. at pp. 61-62.) Here, Microsoft makes exactly that contention: that the various practices that are challenged—such as preventing other products from being used with its operating systems and bundling its Internet browser with its operating system—have been of great benefit, to the public by enhancing product standardization and increasing the ease of computer use and Internet access.

But while the presence of these additional issues in a monopolization case such as this may preclude any presumption of harm, as in a price-fixing case, the existence of these issues does not necessarily mean that common issues do not predominate. Without regard to the possibility that some of the relevant issues in this case may be conclusively determined by the final outcome in the Government's action against Microsoft, remaining issues concerning the legality of defendant's practices are issues common to all members of the classes plaintiffs seek to certify. As discussed in section C.I above, the fundamental and predicate issues as to whether defendant violated the Cartwright Act are not differentiated among individual consumers. In this respect, the situation is no different from a case involving an alleged conspiracy that would constitute a *per se* violation of the statute.

If it should be determined that defendant's practices unlawfully elevated prices to direct purchasers of Microsoft's software, the complexities of the marketplace to which defendant refers will affect the ability to analyze whether, and the extent to which, these higher prices were passed on to consumers. However, once the existence of unlawfully inflated prices at the direct purchaser level has been established, the difficulties of determining whether the price increase was absorbed by those direct purchasers or passed on to successive purchasers in the chain of distribution are no greater in a monopolization case than in a *per se* price-fixing case. There is no ascertainable difference between the analysis of the impact of the abuse of a monopoly and of price fixing once the overcharge to direct purchasers has been established, and in response to the court's inquiry at oral argument Microsoft offered none. The starting point in both situations is artificially high prices set in an anticompetitive market. The same economic

---

[7] The parties acknowledge the distinction between the fact of harm or impact, on the one hand, and actual damages, on the other. "Fact of damage pertains to the existence of injury, as a predicate to liability; actual damages involve

the quantum of injury, and relate to the appropriate measure of individual relief." (*B.W.I. Custom Kitchen, supra,* 191 Cal.App.3d at p. 1350, fn. 7 [citation omitted].)

models and analyses that have been accepted for purposes of tracing a supracompetitive price that results from a price fixing conspiracy are relevant and applicable to trace the pass-through resulting from monopoly abuse.

Unlike the conclusion reached by the Supreme Court in *Illinois Brick* and by the courts of some other states, the California courts have made clear that the difficulties in tracing the pass-through of artificially inflated prices do not necessarily create insuperable obstacles to classwide analysis and to class certification. "In certifying a plaintiff class, the courts have found it appropriate to look past surface distinctions among the products purchased by class members or the marketing mechanisms involved when allegations of anticompetitive behavior embracing all of the various products and distribution patterns have been credibly pleaded. [Citation omitted.] Identical products, uniform prices, and unitary distribution patterns are not indispensable for class certification in this context." *(B.W.I. Custom Kitchen, supra*, 191 Cal.App.3d at p. 1350 [quoting *Shelter Realty Corp. v. Allied Maintenance Corp.* (1977-2 TRADE CASES ¶ 61,691] (S.D.N.Y. 1977) 75 F.R.D. 34, 37]; *Rosack, supra*, 131 Cal.App.3d at p. 757 [same]") "[Contentions of infinite diversity of product, marketing practices, and pricing have been made in numerous cases and rejected." *(Rosack, supra*, 131 Cal.App.3d at p. 755 [quoting *In re Folding Carton Antitrust Litigation* (1977-2 TRADE CASES ¶ 61,596] (N.D. Ill. 1977) 75 F.R.D. 727, 734].) "It should also be emphasized that courts have applied these principles to markets, such as this one, characterized by individually negotiated prices, varying profit margins, and intense competition." *(B.W.I. Custom Kitchen, supra*, at p. 1351.)

Nonetheless, defendant argues that the complexity and changing nature of the software markets over the past six years have been so great as to render classwide analysis "impossible" in this case. (Opp. at p. 1.) Focusing almost exclusively on the market for operating systems software, defendant emphasizes that over the class period it marketed a progression of product "families"—from MS DOS to the most current Windows NT Workstation system. The variety of illegal practices in which defendant allegedly engaged necessarily affected the price defendant was able to and did charge at different times and for different products. If defendant engaged in predatory pricing, the price to some purchasers presumably would have been less than a competitively determined price, so that some class members may have benefited from the practice, rather than having been damaged by it. Because of the high level of competition among computer manufacturers ("original equipment manufacturers" or "OEMs"), each OEM that purchased software directly from

Microsoft made its own pricing decisions and therefore each may have absorbed rather than passed on a different portion of any excess in the price paid to Microsoft. Because the software represents only a small percentage of the cost of the computer, and because there are many other factors which may inhibit passing on price changes (such as "focal point" pricing and "menu costs"), whether, and the extent to which, any given OEM passed on the excess will differ from case to case. The amount passed through by distributors or retailers purchasing from the OEMs, or purchasing directly from Microsoft, may also vary, so that the fact, much less the amount, of any overcharge reaching a consumer will be a function of so many variables, defendant argues, that the impact of any violation cannot possibly be considered collectively. In the words of Microsoft's economist, Professor Jerry A. Hausman, "any analysis of whether an overcharge may have been passed on to an eventual final purchaser would require an evaluation of a large number of individual-specific facts that essentially will amount to an individualized inquiry for each final purchaser." (Declaration of Jerry A. Hausman ("Hausman Decl.") ¶ 32.)

Such a broad statement proves too much. If true, it would invalidate the entire study of microeconomics. In his Findings of Fact, Judge Jackson concluded that Microsoft's conduct had "harmed consumers in ways that are immediate and discernible." (Findings of Fact ¶ 409.) To demonstrate that impact on consumers can be proven on a non-individualized and classwide basis, plaintiffs rely heavily on the expert opinion of Professor Jeffrey K. MacKie-Mason, an economist. Accepting the allegations in the Complaint and the Findings of Fact, and based upon his knowledge of the industry, Professor MacKie-Mason opined that plaintiffs could demonstrate common impact on the classes "by showing that, as a result of Microsoft's monopoly power (derived from or maintained by the anticompetitive conduct alleged) consumers (1) were charged supra-competitive prices for [the relevant software] and (2) experienced less choice and innovation in [the relevant software markets] than they would have enjoyed in a competitive market." (Declaration of Jeffrey K. MacKie-Mason in Support of Plaintiffs' Renewed Motion for Class Certification ("MacKie-Mason Decl.") ¶ 6(a), (c).) "When a monopolist sets prices above competitive levels to its distributors, it generally results that all customers suffer harm." (Declaration of Jeffrey K. MacKie-Mason in Support of Plaintiffs' Reply re Renewed Motion for Class Certification ("MacKie-Mason Reply Decl.") ¶ 5.) Summarizing his conclusions, Professor MacKie-Mason stated:

**Trade Regulation Reports**                                                    ¶ 73,013

As is well known in economic theory and practice, at least some of the overcharge will be passed on by distributors to end consumers. When the distribution markets are highly competitive, as they are here, all or nearly all of the overcharge will be passed through to ultimate consumers. . . . Both of Microsoft's experts also agree upon the economic phenomenon of cost pass-through, and how it works in competitive markets. This general phenomenon of cost pass-through is well established in antitrust law and economics as well."

(MacKie-Mason Reply Decl. ¶ 6.)

Professor MacKie-Mason described several recognized methods to estimate what Microsoft's prices to its direct purchasers would have been in a hypothetical "but for" world in which Microsoft had not engaged in the allegedly anticompetitive conduct. These include the use of "yardstick" prices based on the prices of products when the markets were more competitive or the prices of similar goods sold in more competitive markets; the comparative margin method (calculating the price at which Microsoft's margin on a product would equal the average margin at other software manufacturers); and constructing models of equilibrium in the relevant markets. (MacKie-Mason Decl. ¶¶ 28-36.) He further described two methods to measure the extent to which particular increased costs were passed on to final purchasers, both based on equilibrium models of distribution channels. (MacKie-Mason Decl. ¶¶ 38-40.)

Professor MacKie-Mason did not commit himself to the use of any one or more of these approaches, nor did he make the necessary calculations or attempt to prove that any of these methods ultimately will be able to support plaintiffs' burden of proof at trial. Nonetheless, his declarations contain a good bit more than a plea to "trust me," as the defendant would characterize his testimony. (Opp. at p. 3.)

In addition to proposing several methodologies shown to be widely accepted within the profession, plaintiffs submitted several published works by prominent economists and consumer groups that have conducted empirical analyses to demonstrate general harm to consumers as a result of Microsoft's conduct. (Hall, *Toward A Quantification of the Effects of Microsoft's Conduct* (2000) American Economic Review 90; Fisher & Rubinfeld, *United States v. Microsoft: An Economic Analysis* in Did Microsoft Harm Consumers? Two Opposing Views (AEI-Brookings Joint Center for Regulatory Studies 2000); Fisher & Rubinfeld, *Misconceptions, Misdirection, and Mistakes* in Did

Microsoft Harm Consumers? Two Opposing Views (AEI-Brookings Joint Center for Regulatory Studies 2000); Consumer Federation of America, Media Access Project, U.S. Public Interest Research Group, The Consumer Cost of the Microsoft Monopoly: $10 Billion, of Overcharges and Counting (Jan. 1999).) Moreover, the opposing experts agree that equilibrium economic models can be used to calculate damages in antitrust cases. According to the defense expert, Professor Hausman:

Economists have developed various theoretical models of competition in markets with limited numbers of sellers. These models are based on a series of strong simplifying assumptions. They can provide useful bases for suggestive theoretical analyses, but they do not provide reliable bases for calculating damages *unless carefully designed and calibrated to fit the actual conditions of the market in question.*

(Hausman Decl. ¶ 125 (emphasis added).)

Professor Hausman asserts that none of the methods proposed by Professor MacKie-Mason will work because none of them "accounts for the real world complexities of the products and the distribution chains at issue." (Hausman Decl. ¶ 113.) However, the experts agree on the importance of product differentiation in reaching dependable conclusions (Hausman Decl. ¶ 126; MacKie-Mason Decl. ¶ 108.), but, not surprisingly, disagree over the extent to which Professor MacKie-Mason's anticipated models will reflect reality. (See, e.g., Hausman Decl. at pp. 43-52; MacKie-Mason Decl. at pp. 38-52.) The question at this stage is not whether plaintiffs will be able to carry their burden of proving that their experts' analyses are reliable, but whether it appears that the differences between the experts can be intelligently presented and evaluated within the framework of a class action. On a motion for class certification, it is inappropriate to resolve a "battle of the experts." (*In re Catfish Antitrust Litigation, supra,* 826 F.Supp. at p. 1042.) "Whether or not [plaintiff's expert] is correct in his assessment of common impact/injury is for the trier of fact to decide at the proper time. [Citations omitted.] For now, the court is persuaded that for the purposes of a class certification motion, plaintiffs have made the [required] threshold showing . . . ." (*Ibid.*) The court is similarly persuaded here.

It may be, as defendant has argued, that closer examination of the facts will disclose that not all class members were harmed by Microsoft's practices.[8] However, plaintiffs need not prove that each and every class member

[footnote] Some skepticism is warranted as to the extent to which defendant will be able to prove its assertion in this regard. Microsoft contends, for example, that its conduct benefited rather than harmed consumers because consumers received Microsoft's Web browser, Internet Explorer, at "no charge." Judge Jackson found that Microsoft's practice of bundling its Web browser with Windows was designed to harm the ability of Netscape's Navigator Web browser to compete

Cited 2000-2 Trade Cases
*Microsoft J-V Cases*

**88,563**

paid a supracompetitive price for the relevant software products. As explained in *Rosack*, "[t]he courts have rejected the notion that each member of the purported class must prove that he or she absorbed at least some portion of the overcharges in order to establish liability. [Citations omitted] '[C]lass certification does not require that common questions be completely dispositive . . . as to all potential members of the class. [Citations omitted.] The fact that certain members of the class may not have been injured at all does not defeat class certification. [Citations omitted.]" (*Rosack, supra*, 131 Cal.App.3d at pp. 753-754.) Similarly, the *B.W.I. Custom Kitchen* court pointed out that "[e]ven if it were shown that certain class members escaped having to pay any of the overcharge . . . , the fact remains that in the vast majority of cases at least a portion of the illegal overcharge was passed on by the independent distributors to class members in the form of higher prices." (*B.W.I. Custom Kitchen, supra*, 191 Cal.App.3d at p. 1354.) Whether that is true in this case will depend upon an evaluation of the evidence at trial.

Defendant is correct that the multiple products embraced within each of the two proposed classes, the multiple distribution channels, and the extraordinary rate at which changes have occurred in the relevant markets over the six-year class period will complicate the analysis of the impact of any illegal practices in which Microsoft is found to have engaged. The trier of fact undoubtedly will be required to do more than make a single determination of whether any damages were incurred by the respective classes over the six-year period. However, plaintiffs advise that their evidence and expert studies will be presented in a manner that will permit, at a minimum, annual comparisons of prices paid by consumers for particular software products with the prices that would have prevailed in the hypothetical "but for" world in the absence of the unlawful practices. Moreover, since the relevant comparison is not between actual prices and prices in a perfectly competitive market, or even between actual prices and prices lawfully obtained in a monopoly market, plaintiffs' evidence will need to establish "the price increment caused by the anticompetitive conduct that originated or augmented the monopolist's control over the market." (*Berkey Photo, Inc. v. Eastman Kodak Co.* [1979-1 TRADE CASES ¶ 62,718] (2d Cir. 1979) 603 F.2d 263, 297.) The task is formidable, but not impossible. As the case proceeds towards trial, careful consideration will have to be given to the possibility of creating subclasses, bifurcating issues,

making special findings, or using other techniques that may facilitate the presentation and consideration of the relevant evidence. At this point, the court is not persuaded that a comprehensible analysis of these issues cannot be made within the context of properly managed trial proceedings.

**3. Calculation of Damages.**

Plaintiffs must also meet their burden of demonstrating that the amount of damages is susceptible to classwide proof. With respect to calculating damages once liability has been established, individual issues will not bar certification of a class. (*B.W.I. Custom Kitchen, supra*, 191 Cal.App.3d at p. 1354; *Rosack; supra*, 131 Cal.App.3d at p. 761.) "[I]t has been recognized consistently that differences among potential class members concerning damages do not preclude class treatment so long as common questions regarding conspiracy and impact allegations predominate." (*Rosack, supra*, at p. 761.) Courts recognize a somewhat relaxed standard of proof once the antitrust violation and resulting injury have been proven. (*In re Catfish Antitrust Litigation, supra,* 826 F.Supp. at p. 1042.) This is the logical result of an inability to ascertain exactly what "plaintiff's position would have been in the absence of defendant's antitrust violation." (*Ibid.*) "Hence, the willingness to accept some uncertainty stems from a simple, equitable notion that the wrongdoer should not be allowed to profit by an insistence upon an unattainable standard of proof." (*Id.*, at pp. 1042-1043; *see also Bigelow v. RKO Radio Pictures, Inc.* [1946-1947 TRADE CASES ¶ 57,445] (1946) 327 U.S. 251, 264.)

The basic measure of damages for overcharges resulting from Microsoft's alleged anticompetitive conduct is the difference between the price paid by a class member for a particular product and the price that would have been paid absent the alleged anticompetitive conduct. (*See In re Catfish Antitrust Litigation, supra,* 826 F.Supp. at p. 1043; MacKie-Mason Decl. ¶ ¶ 25, 40.) To determine this amount, as discussed in section C.2 above, it is of course necessary to determine both the amount of the overcharge by Microsoft and the amount of such overcharge passed through to the consumer. Total classwide damages are the sum of the overcharges on all software programs sold to class members during the class period. (MacKie-Mason Decl. ¶ 40.)

Plaintiffs need not present a method to calculate each class member's damage individually. California courts permit calculation of damages in the aggregate for a class and do not require

(Footnote Continued)

and caused harm to consumers. (Findings of Fact ¶¶ 143, 155-160, 166-168, 171-177; Conclusions of Law at pp. 28-40, 42-43.) Moreover, as Professor Mackie-Mason explained, the

effect of an overcharge is not cured by the marketing strategy: "buy three tires, get the fourth tire free." (MacKie-Mason Reply Decl. ¶ 23.)

**¶ 73,013**

summing all individual claims. (*Daar v. Yellow Cab Co.,* supra, 67 Cal.2d at pp. 706, 714, 716; *Bruno v. Superior Court* (1981) 127 Cal.App.3d 120, 128-129 & fn. 4.) A reasonable basis for computing damages is permissible, even if it involves approximation or estimation. (*Suburban Mobile Homes, Inc. v. AMFAC Communities, Inc.* [1980-1 TRADE CASES ¶ 63,040] (1980) 101 Cal.App.3d 532, 545; *Bigelow,* supra, 327 U.S. at pp. 264-265.) Other courts in antitrust proceedings have found similar approaches to be sufficiently viable for purposes of class certification. (See, e.g., *In re Catfish Antitrust Litigation,* supra, 826 F.Supp. at p. 1043; *In re Domestic Air Transportation Antitrust Litigation* [1991-2 TRADE CASES ¶ 69,518] (N.D. Ga. 1991) 137 F.R.D. 677, 692; *In re Corrugated Container Antitrust Litigation* [1978-2 TRADE CASES ¶ 62,220] (S.D. Tex. 1978) 80 F.R.D. 244, 251.) Moreover, it is not necessary that plaintiffs demonstrate to a certainty that their proposed methods will succeed, and it would be improper for the court to make a determination as to the likely success of plaintiffs' proposed methods. (*In re Domestic Air Transportation Antitrust Litigation,* supra, at p. 693; *In re Flat Glass Antitrust Litigation,* supra, 191 F.R.D. at p. 487.)

The method of calculating the amount of any recovery that will be received by each class member and the method of distributing damages to class members are different questions altogether that need not be addressed at this point, and which the parties have not argued. Suffice it to say that there is no reason to presume that conventional techniques for notifying class members of their right to submit claims and for submitting and processing claims will not be feasible in this litigation. Nor is there any reason to assume that the amounts to which individual class members may be entitled will be insufficient to justify the effort and expense of a claim procedure. Moreover, as noted by plaintiffs, fluid class recovery is also a possibility. (*Bruns,* supra, 122 Cal.App.3d at p. 135; *Kraus v. Trinity Management Services, Inc.* (2000) 23 Cal.4th 116, 119-120.) Should problems in calculating damages appear to outweigh the benefits of class treatment, the court may reconsider its certification order and vacate or amend the certification. (*R.W.I. Custom Kitchen,* supra, 191 Cal.App.3d at p. 1348 [citations omitted].)

**D. A Class Action Is a Superior Method of Adjudicating the Matter.**

Finally, plaintiffs must demonstrate that a class action would be of substantial benefit to the litigants and the court. (*See Blue Chip Stamps v. Superior Court* (1976) 18 Cal.3d 381, 385.) This requirement incorporates the superiority standard of Rule 23 of the Federal Rules of Civil Procedure. (*Schneider v. Vennard* (1986)

¶ 73,013

163 Cal.App.3d 1340, 1347.) The matters pertinent to this determination include:

(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

(Fed. Rules Civ. Proc., Rule 23(b)(3), 28 U.S.C.) The various indirect purchaser claims filed in California against Microsoft already have been consolidated in this court, which is specifically called upon to utilize innovative methods to manage complex cases as part of the Judicial Council's Complex Civil Litigation pilot program. (See also *R.W.I. Custom Kitchen,* supra, 191 Cal.App.3d at p. 1355 [calling upon courts to adopt innovative methods for handling indirect purchaser class actions].)

This case involves a very large number of claimants with relatively small amounts at stake. Most consumers have little incentive to litigate independently since the costs of litigation undoubtedly would overwhelm their potential recovery. "The problems which arise in the management of a class action involving numerous small claims do not justify a judicial policy that would permit the defendant to retain the benefits of its wrongful conduct and to continue that conduct with impunity." (*Linder v. Thrifty Oil Co.,* supra, 23 Cal.4th at p. 446.) Moreover, the potential recovery here is not so insignificant to warrant the assumption that individual consumers will not be motivated to claim any recovery to which they may be entitled, or that a favorable outcome would benefit only the attorneys involved. And, to the extent that purchasers of large quantities of Microsoft software should elect to pursue their individual claims, denying class treatment could result in repetitious litigation and inconsistent adjudication of similar issues and claims. (*Richmond v. Dart Indus., Inc.,* supra, 29 Cal.3d at p. 469.) Under the circumstances, the superiority of a class action is apparent.

**CONCLUSION**

In keeping with the Supreme Court's mandate, this court must "avoid interpreting procedural requirements in such a way as 'would thwart the legislative intent ... to retain the availability of indirect-purchaser suits as a viable and effective means of enforcing California's antitrust laws.'" (*B.W.I. Custom Kitchen,* supra, 191 Cal.App.3d at p. 1355 [quoting *Union Carbide Corp. v. Superior Court,* supra, 36 Cal.3d at p. 21].) The court finds that the proposed classes are ascertainable, that the classes are suffi-

©2000, CCH INCORPORATED

ciently numerous, that the named representatives' claims are typical of those of the classes and that the interests of the classes will be fairly and adequately represented. In addition, common questions of fact or law predominate, and a class action is the superior method for adjudicating the matter. Accordingly, the two proposed classes will be certified, and the litigation will proceed as a class action. Counsel should confer concerning the method of giving notice to the classes and the content of the notice, and be prepared to discuss these issues at the status conference scheduled for October 4, 2000.

[¶ 73,014]   Donald W. Nutting, an individual d/b/a Foothills Distributing Co. v. RAM Southwest, Inc., d/b/a Violets, and Ron Sheppeard.

U.S. District Court, District of Colorado. Civil Action No. 98-B-2360. Filed July 10, 2000. 2000 U.S. Dist. LEXIS 10081.

### Colorado Law

**Agreements Not to Compete—State Laws—Manufacturers and Distributors—Costumes.—**An agreement not to compete between a costume manufacturer and distributor was void as a matter of law since it was a naked restraint on competition that failed to protect a legally cognizable interest and, as such, was void against public policy under Colorado law. A costume manufacturer created certain vampire fangs and entered into an agreement not to compete with the distributor. The distributor subsequently created its own, similar product. The agreement did not fall under an exception to the Colorado law against agreements not to compete, since it was not a sale of a business or a trade secret.

See ¶ 1835.

**Agreements Not to Compete—State Laws—Reasonableness—Manufacturers and Distributors—Costumes.—**An agreement not to compete between a costume manufacturer and distributor was void as a matter of law since the scope of the restraint went beyond any protectable interest. A costume manufacturer created certain vampire fangs and entered into an agreement not to compete with the distributor. The distributor subsequently created its own, similar product. The restriction on the agreement not to compete was perpetual and no evidence was presented that such a restriction was necessary to protect the manufacturer or the product. The agreement was also vague in that it did not make clear what elements the distributor was prevented from using in the creation of his own product. Similarly, the geographic restriction was unduly broad, since it was a world-wide restriction.

See ¶ 1835.

For plaintiff: Brian D. Smith, Denver, Colo. For defendants: C. Michael Montgomery and Sharra L. Ilari of Montgomery, Kolodny, Amatuzio, Duebabek & Parker, Denver, Colo., Kurt S. Lewis of Webb & Lewis, Denver, Colo., Paul Adams, Jeffrey D. Myers, and Rod D. Baker of Peacock, Myers & Adams, Albuquerque, N.M.

### MEMORANDUM OPINION AND ORDER

BABCOCK, Ch. J.: Plaintiff, Donald Nutting ("Nutting"), asserts claims for direct infringement of United States Patent No. 5,547,381 ("'381 patent"), including infringement of the '381 patent, deceptive trade practices, and breach of a non-competition contract, against Defendants, RAM Southwest, Inc. ("RAM") and Ron Sheppeard ("Sheppeard") (collectively "Defendants"). Defendants assert counterclaims for "interference with business and contractual relations" and "deceptive trade practices. Defendants move for summary judgment on Mr. Nutting's claim of breach of the noncompetition agreement. Mr. Nutting crossmoves for summary judgment on the Defendants' counterclaims. Oral argument would not aid my resolution of these matters. Having the benefit of the briefs to construe properly the claims in question, and for the following reasons,

I grant Defendants' motion for summary judgment as to the non-competition agreement, and grant Mr. Nutting's motion for summary judgment as to Defendants' counterclaims. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1338.

### I. Background

The following facts are undisputed. Mr. Nutting and Mr. Sheppeard sell and manufacture artificial vampire fangs. In 1994, the two met at a Halloween trade show where Mr. Nutting was demonstrating a new, longer fang product called "Custom Dracula Fangs." The Sheppeards (Mr. Sheppeard and his wife, co-owners and officers of RAM, doing business as Violet's Costumes) have manufactured and sold fangs since 1988. They developed an earlier product called "Original Fangtastics." Mr. Sheppeard and Mr. Nutting entered into a relationship whereby the Sheppeards would distribute Mr. Nutting's Cus-

¶ 73,014

# EXHIBIT 10

1  FREDERICK P. FURTH (No. 038438)
   CRAIG C. CORBITT (No. 083251)
2  EMILY PLATT RICH (No. 168735)
   FURTH, FAHRNER & MASON
3  201 Sansome Street, Suite 1000
   San Francisco, CA  94104
4  Telephone:  (415) 433-2070
   Facsimile:  (415) 982-2076
5
6  Plaintiffs' Co-Lead and Co-Liaison Counsel
   [Additional Counsel Listed on Signature Page]
7

**ENDORSED FILED**
San Francisco County Superior Court

JUN 2 6 1995

ALAN CARLSON, Clerk
BY: _____ VERA MU _____
Deputy Clerk

8            SUPERIOR COURT OF THE STATE OF CALIFORNIA
9            IN AND FOR THE COUNTY OF SAN FRANCISCO

10
11  Coordination Proceeding          )  JUDICIAL COUNCIL
    Special Title (Rule 1550(b))     )  COORDINATION PROCEEDING NOS.
12                                    )  2969, 2971 & 2972
    PHARMACEUTICAL CASES I, II, AND  )
13  III                              )  Hon. Alfred G. Chiantelli
                                     )  Coordination Trial Judge
14                                    )
    This Document Relates To          )  ORDER CERTIFYING RETAIL
15                                    )  PHARMACY AND PHARMACIST CLASS
    Jerome Y. Feitelberg, et al.     )
16                                    )  Date:  June 2, 1995
                v.                    )  Time:  1:30 p.m.
17                                    )  Dept:  9, Room 438
    Abbott Laboratories, et al.      )
18  _____ )
19
20          The motion of plaintiffs for certification of the
21  Retail Pharmacy and Pharmacist Class came on regularly for
22  hearing before this Court on June 2, 1995.  Craig C. Corbitt and
23  Joseph L. Alioto argued on behalf of the plaintiffs, and Maurice
24  A. Leiter argued on behalf of the defendants.  The Court has
25  considered the memoranda of counsel, reviewed the evidence
26  submitted, and heard oral argument.  Good cause appearing, the
27  motion for class certification is GRANTED.  The Court finds that:
28

                              -1-

3467.066

1.   The class sought by plaintiffs in this coordinated action satisfies the numerosity requirement in that there are thousands of class members who purchased brand name prescription drugs manufactured and/or sold by the defendants.

2.   The class is ascertainable and possesses a commonality of interest in determining defendants' liability, if any, for the course of conduct alleged in the First and Seventh Causes of Action in the Third Consolidated and Amended Class Action Complaint ("CACAC").

3.   There are common questions of law and fact including the claimed existence, nature, scope and extent of the alleged conspiracy, as well as the fact of injury, which exist and predominate over any individual questions that may arise.

4.   The plaintiffs' claims are typical of the claims of the absent class members, as all such claims arise out of their purchase of drugs from the defendants.

5.   Plaintiffs will fairly and adequately represent the class, and plaintiffs' counsel are skilled in prosecuting class actions.

6.   The following shall serve as class representatives:  Jerome Y. Feitelberg d/b/a Alameda Drug Company, Inc.; Michael Goldstein d/b/a San Bruno Professional Plaza Pharmacy, Inc.; Timothy Tong Chang/Oriental Twin Dragons, Ltd., d/b/a Estudillo Pharmacies Nos. 1 and 2; Roland Kong/WM Pharmacy Inc. d/b/a Washington Pharmacy; Donald J. Bartolo d/b/a Wapples Prunedale Pharmacy; and Pharmaceutical Investments d/b/a Grantline Drug.

-2-

1    7.    The following law firms shall serve as Class

2  Counsel:  Furth, Fahrner & Mason; Law Offices of Joseph L.

3  Alioto; The Alexander Law Firm; and Freeman, Brown, Hartmann,

4  Sperry & DeAiuto.

5    8.    This action is manageable as a class action.

6        Therefore, IT IS HEREBY ORDERED that, pursuant to Rules

7  23(a)(1)-(4) and 23(b)(3) of the Federal Rules of Civil

8  Procedure, adopted for use by California courts, California Code

9  of Civil Procedure Section 382, California Civil Code Section

10  1781, and the San Francisco Superior Court Manual for the Conduct

11  of Pretrial Proceedings in Class Actions, the following class is

12  certified:

13        All California community retail pharmacists/pharmacies
         (including pharmacy chains with ten locations or less)
14        who have purchased any Brand Name Prescription Drugs
         from the defendants from August 4, 1989 to date.

15        Excluded from the Class are the defendants, other drug
16        manufacturers, other wholesalers, their co-
         conspirators, and their respective subsidiaries and
17        affiliates; all governmental entities; chain pharmacies
         with more than ten locations; mail order pharmacies;
18        health maintenance organizations; hospitals; clinics
         and nursing homes, and any entity in which any of them
19        have a controlling interest.

20        Counsel for the parties shall meet and confer on the

21  form of notice to the class.  If no agreement is reached, a

22  hearing for approval of the form of notice shall be held on July

23  18th, 1995 at 1:30 p.m. in Department 9.  On or before July 19th,

24  ABC

25

26

27

28

-3-

1467.064

1  1995, counsel shall submit either an agreed-upon form of notice

2  or their respective proposals.

3          IT IS SO ORDERED.

4  DATED:     June 23rd, 1995

5                                    _Alfred G. Chiantelli_

6                                    Hon. Alfred G. Chiantelli
                                     Judge of the Superior Court

7

8  Approved as to form:

9  _Leonard R. Stein_

10 Leonard R. Stein
   Steefel, Levitt & Weiss
   One Embarcadero Center, 29th Floor

11 San Francisco, CA 94111
   Telephone:   (415) 788-0900

12 Facsimile:   (415) 788-2019

13

14 _Terrence D. Callan_

15 Terrence A. Callan
   Pillsbury, Madison & Sutro
   225 Bush Street

16 San Francisco, CA 94104
   Telephone:   (415) 983-1000

17 Facsimile:   (415) 983-1200

18 Defendants' Co-Liaison Counsel

19 Additional Counsel for Plaintiffs:

20 Joseph B. Alioto
   Law Offices of Joseph L. Alioto

21 650 California Street, 25th Floor
   San Francisco, CA 94104

22 Telephone:   (415) 434-2100
   Facsimile:   (415) 434-3277

23

24 Richard Alexander
   Jeffrey Rickard
   The Alexander Law Firm

25 555 South Market Street, Suite 1080
   San Jose, CA 95109

26 Telephone:   (408) 289-1776
   Facsimile:   (408) 287-1776

27

28

                              -4-

1  James Belford Brown
   Curtis Sawyer
2  Freeman, Brown, Hartmann, Sperry & D'Aiuto
   1818 Grand Canal Boulevard
3  Stockton, CA 95207
   Telephone:   (209) 474-1818
4  Facsimile:   (209) 474-1245

5  Plaintiffs Class Executive Committee Members

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3467.064                              -5-



1  William Bernstein (State Bar No. 065200)
   Joseph R. Saveri (State Bar No. 130064)
2  LIEFF, CABRASER & HEIMANN
   275 Battery Street, 30th Floor
3  San Francisco, California 94111-2339
   Telephone:  (415) 956-1000
4
   Plaintiffs' Co-Lead and Co-Liaison Counsel
5

6

7

8            SUPERIOR COURT OF THE STATE OF CALIFORNIA

9         IN AND FOR THE CITY AND COUNTY OF SAN FRANCISCO

10

11 Coordination Proceeding        )  J.C.C.P. Nos. 2969, 2971 & 2972
   Special Title (Rule 1550(b))   )
12                                 )  Hon. Alfred G. Chiantelli
                                   )  Coordination Trial Judge
13 PHARMACEUTICAL CASES I, II,     )
   and III                        )
14                                 )
                                   )
15 _____ )  San Francisco Sup. Ct. No.
                                   )  962294
16 THIS DOCUMENT RELATES TO:       )
                                   )  ORDER CERTIFYING
17 Preciado v. Abbott             )  CONSUMER CLASS
   Laboratories                    )
18                                 )
                                   )
19 _____ )

20

21       The motion of plaintiffs Reyna Preciado (Barrero), Alan

22 Cutler, and Cynthia Alexis for class certification of the consumer

23 class came on regularly for hearing before this Court on June 23,

24 1995.  The Court has considered the memoranda of the parties,

25 reviewed the evidence submitted, and has considered the oral

26 argument of counsel.  For good cause appearing therefor, the

27 motion for class certification of the consumer class is GRANTED on

28 the terms and conditions set forth in this Order.

                          -1-              EXHIBIT A

1    1.   The class sought by the plaintiffs in these

2  coordinated actions satisfies the numerosity requirement in that

3  there are at least many thousands of individuals who purchased

4  brand name prescription drugs ("Brand Name Prescription Drugs")

5  manufactured and/or sold by the defendants.

6    2.   The class is ascertainable and its members possess

7  a commonality of interest in determining defendants' liability, if

8  any, for the course of conduct alleged in the Complaint.

9    3.   Common questions of law or fact, including the

10 claimed existence, nature, scope and extent of the alleged

11 conspiracy, as well as the claimed fact of injury, exist and

12 predominate over any individual questions that may arise.

13   4.   The plaintiffs' claims are typical of the claims of

14 absent class members, as all such claims arise out of their

15 indirect purchase of Brand Name Prescription Drugs from the

16 defendants.

17   5.   Plaintiffs will fairly and adequately represent the

18 class, and plaintiffs' counsel are skilled in prosecuting such

19 class actions.

20   6.   The following plaintiffs shall serve as class

21 representatives: Rayna Barrero, Alan Cutler, and Cynthia Alexis.

22   7.   The following law firms are qualified to and shall

23 serve as class counsel:  Lieff, Cabraser, Heimann & Bernstein; Law

24 Offices of Francis O. Scarpulla; and the Law Offices of Sherman

25 Kassof.

26   8.   This action is manageable as a class action.

27 Therefore, pursuant to Rules 23(a)(1)-(4) and 23(b)(3)

28 of the Federal Rules of Civil Procedure, adopted for use by

-2-

1  California courts and California Code of Civil Procedure section

2  382 the following plaintiff class is certified:

3        All natural persons who, at the time notice is
       published, reside in the State of California
4      and who, beginning four years prior to
       July 12, 1994 through the present, indirectly
5      purchased Brand-Name Prescription Drugs
       through Independent Retail Pharmacies in the
6      State of California from any of the defendants
       for consumption by their families and/or
7      themselves and not for resale.  For purposes
       of this order, "Independent Retail Pharmacies"
8      shall mean retail pharmacies or retail
       pharmacy chains with ten locations or less.
9      Independent Retail Pharmacies shall not
       include pharmacies which are owned, operated,
10     controlled or managed by health maintenance
       organizations or hospitals.

11     Excluded from the class are all natural
       persons who purchased Brand-Name Prescription
12     Drugs other than through Independent Retail
       Pharmacies; all natural persons who obtained
13     Brand-Name Prescription Drugs through the
       Medical Prescription Drug Program; and all
14     natural persons who made no payment directly
       to an Independent Retail Pharmacy for the
15     purchase of a Brand Name Prescription Drug.

16

17        Counsel for the parties shall meet and confer on the

18  form of notice to be submitted to the class.

19        Further, the parties have stipulated and the Court

20  orders as follows:

21        (a)  The action captioned Lazio v. Abbott

22  Laboratories S.F. Superior Court No. 969870 is hereby dismissed.

23        (b)  The Complaint in the Preciado action shall be

24  amended to add Lawrence Lazio as an additional party plaintiff and

25  proposed class representative.  Defendants shall have until

26  September 15, 1995 to inform plaintiffs' counsel of their intent

27  to depose Mr. Lazio and/or to propound written discovery upon Mr.

28  Lazio pertaining to his proposed designation as a class

-3-

1  representative.  This order shall not otherwise limit defendants'

2  ability to take future discovery of Mr. Lazio in accordance with

3  the Code of Civil Procedure.  Unless Defendants file a motion by

4  October 15, 1995 objecting to Mr. Lazio's designation as a class

5  representative, Mr. Lazio shall become on that date an additional

6  class representative without further order of this Court.

7          (c)  The law offices of Saveri & Saveri and Eric B.

8  Freed are skilled in prosecuting class actions and shall also

9  serve as class counsel in this action.

10         IT IS SO ORDERED.          ALFRED G. CHIANTELLI

11                                    _____
                                      Honorable Alfred G. Chiantelli
12     AUG 1 6 1995                   Judge of the Superior Court

13

14  Approved as to form:

15  _____ (R.H.)

16  Leonard R. Stein
    STEEFEL, LEVITT & WEISS
17  One Embarcadero Center, 30th Floor
    San Francisco, California 94111

18  _____

19  Terrence A. Callan
    PILLSBURY, MADISON & SUTRO
20  225 Bush Street
    San Francisco, California 94104

21

22

23

24

25

26

27

28

                          -4-

# EXHIBIT 11

1389

| | |
|---|---|
| 1 | GUIDO SAVERI (22349) |
| | R. ALEXANDER SAVERI (173102) |
| 2 | GEOFFREY C. RUSHING (126910) |
| | CADIO ZIRPOLI (179108). |
| 3 | SAVERI & SAVERI, INC. |
| | 111 Pine Street, Suite 1700 |
| 4 | San Francisco, California 94111 |
| | Telephone (415) 217-6810 |
| 5 | Facsimile (415) 217-6813 |

**RECEIVED**

FEB 0 2 2004

**THE FURTH FIRM LLP**

6   Co-Liaison Counsel for Plaintiff

7

8                     SUPERIOR COURT OF CALIFORNIA

9                        COUNTY OF SAN FRANCISCO

10

| | | |
|---|---|---|
| 11 | Coordination Proceeding | J.C.C.P. No. 4250, 4258, 4259 and 4262 |
| | Special Title (Rule 1550(b)) | |
| 12 | SMOKELESS TOBACCO CASES I-IV | Hon. Richard A. Kramer |
| | | Coordination Trial Judge |
| 13 | Consolidated with: | |
| 14 | *Kelly v. U.S. Smokeless Tobacco, Co, et al.,* | NOTICE OF ENTRY OF ORDER |
| | SFSC Case No. CGC-02-412861 | GRANTING MOTION FOR CLASS |
| 15 | | CERTIFICATION |
| 16 | This Document Relates To: | |
| 17 | All Actions | |

18

19   TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

20        PLEASE TAKE NOTICE that on January 29, 2004, The Honorable Richard A. Kramer

21   entered the attached Order Granting Motion for Class Certification.

22   Dated: January 29, 2004                    Respectfully submitted,

23

24                                   By:    *R Alexander Saveri*

25                                          GUIDO SAVERI (22349)
                                            R. ALEXANDER SAVERI (173102)
26                                          GEOFFREY C. RUSHING (126910)
                                            CADIO ZIRPOLI (179108)
27                                          SAVERI & SAVERI, INC.
                                            111 Pine Street, Suite 1700
28                                          San Francisco, CA 94111
                                            Telephone: (415) 217-6810

snuff.096

1

NOTICE OF ENTRY OF ORDER

1  Guido Saveri (22349)
   R. Alexander Saveri (173102)
2  Geoffrey C. Rushing (126102)
   Cadio Zirpoli (179108)
3  SAVERI & SAVERI, INC.
   111 Pine Street, Suite 1700
4  San Francisco, CA 94111
   Telephone: (415) 217-6810
5  Facsimile: (415) 217-6813

6  Daniel J. Mogin (95624)
   Lisa J. Frisella (216504)
7  THE MOGIN LAW FIRM, P.C.
   110 Juniper Street
8  San Diego, CA 92101-1502
   Telephone: (619) 687-6611
9  Facsimile: (619) 687-6610

10 Plaintiff Co-Liaison Counsel

**F I L E D**

San Francisco County Superior Court

JAN 2 9 2004

GORDON PARK-LI, Clerk
BY: _____
              Deputy Clerk

11          SUPERIOR COURT OF THE STATE OF CALIFORNIA

12                     COUNTY OF SAN FRANCISCO

13                     (UNLIMITED JURISDICTION)

14

15 **COORDINATION PROCEEDING**          ) J.C.C.P. Nos. 4250, 4258, 4259 & 4262
   **SPECIAL TITLE [RULE 1550(b)]**      )
16                                        ) Hon. Richard A. Kramer
   *SMOKELESS TOBACCO CASES I-IV*        ) Coordination Trial Judge
17 <u>Consolidated With:</u>             )
                                         )
18 *Kelly v. U.S. Smokeless Tobacco, Co., et al.,*  ) **ORDER GRANTING MOTION FOR**
   SFSC Case No. CGC-02-412861           ) **CLASS CERTIFICATION**
19 _____ )
                                         )
20 **THIS DOCUMENT RELATES TO:**         )
                                         )
21 **ALL ACTIONS**                       )
                                         )
22 _____ )

23

24         Plaintiffs' motion for an Order certifying this action as a class action and certifying the

25 class of plaintiffs to be represented came on for hearing by regularly noticed motion on

26 December 9, 2003 before the Honorable Richard A. Kramer.

27         The Court has heard and considered all papers filed and all argument in support and in

28 opposition to said motion.

                                         1
                  ORDER GRANTING MOTION FOR CLASS CERTIFICATION

1    IT IS HEREBY ORDERED that plaintiffs' motion for class certification shall be and

2   hereby is GRANTED and the above-entitled consolidated actions are certified as a plaintiff class

3   action upon the findings and pursuant to the terms set forth below:

4    1.    An ascertainable and well-defined class exists which is comprised of:

5   All persons who purchased moist snuff products, indirectly from defendants, in the
    State of California from January 1, 1990, through the present ("Class Period") for
6   their own use and not for resale. Specifically excluded from the Plaintiff Class are the
    defendants herein; officers, directors, or employees of any defendants; any entity in
7   which any defendant has a controlling interest; the affiliates, legal representatives,
    attorneys, heirs or assigns of any defendant.  Also excluded are any federal, state or
8   local governmental entity, and any judge, justice, or judicial officer presiding over
    this matter and the members of their immediate families and judicial staffs.

9

10    2.    The class sought by the plaintiffs satisfies the numerosity requirement in that there

11   are at least many thousands of individuals who purchased moist snuff tobacco products during

12   the defined Class Period.

13    3.    There is a well-defined community of interest among the members of the class.

14   Common questions of law and fact exist and such questions predominate over questions affecting

15   individual members of the class.  Some of the common class wide questions include the issue of

16   liability and consumer injury.

17    4.    The standard for the presentation of a method of proving generalized damages at

18   the class certification stage is that plaintiffs' proposed method must not be so insubstantial that it

19   amounts to no method at all.  The question is not whether the plaintiffs will be able to carry their

20   burden at a later stage in these proceedings, for example trial, but whether the differences

21   between the method presented and proposed by the plaintiffs' expert and the matters presented by

22   the defense expert can be intelligently presented and evaluated in the context of a class action, as

23   opposed to the context of individual claims for damages.  Plaintiffs have met this burden.

24    4.    Maintenance of the case as a class action is superior to any other method to

25   litigate the issues between the parties.

26    5.    Plaintiffs' claims are typical of the claims of the absent plaintiff class members.

27    6.    The named plaintiffs — Samuel Abels, Kevin Beede, Tim Budd, Mario G.

28   Fernandez, Joe Garcia, Frank Gereneser, Shane Green, Kevin Hart, Craig Kelly, Thomas

2

ORDER GRANTING MOTION FOR CLASS CERTIFICATION

1  Marquis, William D. Piculell, Bruce Saucier, Patrick Scannell and Scott Trulik -- shall serve as

2  Plaintiff Class Representatives.  They are members of the class and their claims are typical of the

3  claims of the other members of the class.

4          7.      The above named Plaintiffs' and their counsel will fairly and adequately represent

5  the class.

6

7  Dated: _JAN 26, 2004_                    _____

8                                           Honorable Richard A. Kramer
                                            Coordination Trial Judge

9  Approved as to form:

10

11  _____

12  Charles H. Samel (SBN 182019)
    HOWREY SIMON ARNOLD & WHITE, LLP

13  550 South Hope Street, Suite 1100
    Los Angeles, CA 90071

14
    Margaret M. Zwisler (admitted *pro hac vice*)
15  Marc G. Schildkraut (admitted *pro hac vice*)
    HOWREY SIMON ARNOLD & WHITE, LLP
16  1299 Pennsylvania Avenue, N.W.

17  Washington, DC  20004

18  Attorneys for Defendants

19
                        Other Plaintiff Counsel:
20
                        Michael P. Lehmann (77152)
21                      THE FURTH FIRM LLP
                        225 Bush Street, 15th Floor
22                      San Francisco, CA 94104

23
                        Craig C. Corbitt (83251)
24                      Christopher T. Micheletti (136446)
                        Jeffrey A Topor (195545)
25                      ZELLE, HOFFMAN, VOELBEL, MASON &
                        GETTE LLP
26                      44 Montgomery Street, Suite 3400
                        San Francisco, CA 94104
27

28

                                  3
                ORDER GRANTING MOTION FOR CLASS CERTIFICATION

1   Marquis, William D. Picabell, Bruce Saucier, Patrick Scannell and Scott Trulik — shall serve as

2   Plaintiff Class Representatives. They are members of the class and their claims are typical of the

3   claims of the other members of the class.

4        7.      The above named Plaintiffs' and their counsel will fairly and adequately represent

5   the class.

6

7   Dated: _____            Honorable Richard A. Kramer
                                               Coordination Trial Judge
8

9   Approved as to form:

10

11  _____
    Charles H. Samel (SBN 182019)
12  HOWREY SIMON ARNOLD & WHITE, LLP
    550 South Hope Street, Suite 1100
13  Los Angeles, CA 90071

14  Margaret M. Zwisler (admitted *pro hac vice*)
15  Marc G. Schildkraut (admitted *pro hac vice*)
    HOWREY SIMON ARNOLD & WHITE, LLP
16  1299 Pennsylvania Avenue, N.W.
17  Washington, DC 20004

18  Attorneys for Defendants

19                                  Other Plaintiff Counsel:

20                                  Michael P. Lehmann (77152)
21                                  THE FURTH FIRM LLP
                                    225 Bush Street, 15th Floor
22                                  San Francisco, CA 94104

23                                  Craig C. Corbin (83251)
24                                  Christopher T. Micheletti (136446)
                                    Jeffrey A. Topor (195545)
25                                  ZELLE, HOFFMAN, VOELBEL, MASON &
                                    GETTE LLP
26                                  44 Montgomery Street, Suite 3400
27                                  San Francisco, CA 94104

28

                                        3
    ORDER GRANTING MOTION FOR CLASS CERTIFICATION

1
2
3
4
5
6
7
8
9
10
11
12
13
14  smull.054
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Bruce L. Simon (96241)
Steven N. Williams (175489)
Peter E. Borkon (212596)
COTCHETT, PITRE, SIMON & McCARTHY
840 Malcolm Road, Suite 200
Burlingame, CA 94010

Kevin P. Roddy (128283)
HAGENS BERMAN, LLP
700 South Flower St., Suite 2940
Los Angeles, CA 90017

David R. Markham (71814)
BLUMENTHAL AND MARKHAM
2255 Calle Clara
La Jolla, CA 92037

**Members of Plaintiffs' Executive Committee**

4
ORDER GRANTING MOTION FOR CLASS CERTIFICATION

1 | **PROOF OF SERVICE**

2 |    I, John Webb, am over the age of 18 years and not a party to the above-entitled case.   I am

3 | employed in the County of San Francisco; my business address is 111 Pine Street, Suite 1700, San

4 | Francisco, California  94111-5630.

5 |    On January 30, 2004, I served a true and correct copy of the following document(s):

6 |    **NOTICE OF ENTRY OF ORDER GRANTING MOTION FOR CLASS**
    **CERTIFICATION**

7 | by depositing a copy of the described document in the United States mail in San Francisco, California,

8 | in a sealed envelope, with postage fully prepaid, addressed as follows:

9 | **Plaintiffs**

10 | Norman B. Blumenthal
David Markham
11 | **BLUMENTHAL AND MARKHAM**
2255 Calle Clara
12 | La Jolla, CA 92037

13 | Barry A. Fisher
**FLEISHMAN & FISHER**
14 | 1875 Century Park East, Ste. 2130
Los Angeles, CA 90067

15 |

16 | Stephen B. Morris
**MORRIS & ASSOCIATES**
401 West A. Street, Ste 2200
17 | San Diego, CA 92101

18 | Gordon Ball
Suite 750, Bank of America Center
19 | 550 Main Street
Knoxville, TN 37902

20 |

21 | Michael P. Lehmann
**THE FURTH FIRM**
225 Bush Street, 15th Floor
22 | San Francisco, CA 94104

23 | Craig C. Corbitt
Jeffrey Topor
24 | **ZELLE HOFMANN VOELBEL MASON & GETTE**
44 Montgomery Street, Suite 3400
25 | San Francisco, CA 94104

26 | Bruce Simon
Peter Borkon
27 | **Cotchett Pitre Simon & McCarthy**
840 Malcolm Road, Suite 200
28 | Burlingame, CA 94010

Randy Renick
**LAW OFFICES OF RANDY RENICK**
128 North Fair Oaks Avenue, Suite 204
Pasadena, CA 91103

Venus Soltan
**SOLTAN & ASSOCIATES**
555 Anton, Suite 1200
Costa Mesa, CA 92625

Daniel J. Mogin
Lisa Frisella
**THE MOGIN LAW FIRM, P.C.**
110 Juniper Street
San Diego, CA 92101-1502

Alexander M. Schack
**LAW OFFICES ALEXANDER M. SCHACK**
11440 W. Bernardo Court, Suite 300
San Diego, CA 92127

Kevin P. Roddy
**HAGENS BERMAN LLP**
700 Flower Street, Suite 2940
Los Angeles, CA 90017

Henry Rossbacher
**ROSSBACHER & ASSOCIATES**
811 Wilshire Boulevard, Suite 1650
Los Angeles, CA 90017-2666

Frederic L. Gordon
**GORDON & HOLMES**
1230 Columbia Street, Suite 700
San Diego, California 92101-3571

1

PROOF OF SERVICE

| | | |
|---|---|---|
| 1 | Terry Gross | Steve W. Berman |
| | **GROSS & BELSKY LLP** | **Hagens Berman LLP** |
| 2 | 180 Montgomery Street, Suite 2200 | 1301 Fifth Avenue, Suite 2900 |
| | San Francisco, California 94104 | Seattle, WA 98101 |
| 3 | | |
| 4 | | |
| 5 | **Defendants** | |
| 6 | Charles H. Samel | Margaret M. Zwisler |
| | **HOWRY SIMON ARNOLD & WHITE, LLP** | Marc G. Schildkraur |
| 7 | 550 South Hope Street, Suite 1100 | **HOWRY SIMON ARNOLD & WHITE, LLP** |
| | Los Angeles, CA 90071 | 1299 Pennsylvania Avenue, N.W. |
| 8 | | Washington, District of Columbia 20004-2402 |
| 9 | | |
| 10 | | |

        I declare under penalty of perjury that the foregoing is true and correct.  Executed this 30th day of
January, 2004.

pos.wpd

                        John Webb

# EXHIBIT 12

## IN THE IOWA DISTRICT COURT FOR POLK COUNTY

| | |
|---|---|
| ANDERSON CONTRACTING, INC., | |
| **Plaintiff,** | Case No. CL 95959 |
| vs. | |
| BAYER AG; BAYER POLYMERS, LLC n/k/a BAYER MATERIALSCIENCE, LLC; BAYER CORPORATION; CROMPTON CORPORATION; UNIROYAL CHEMICAL CORPORATION, INC. n/k/a CROMPTON MANUFACTURING COMPANY, INC.; THE DOW CHEMICAL COMPANY; EI DUPONT DE NEMOURS & COMPANY; DUPONT DOW ELASTOMERS LLC; DSM COPOLYMERS, INC.; DSM ELASTOMERS EUROPE B.V.; and EXXON MOBIL CHEMICAL CORPORATION d/b/a EXXON MOBIL, INC., | RULING ON PLAINTIFF'S MOTION FOR CLASS CERTIFICATION |
| **Defendants.** | |

The Court held a contested hearing on Plaintiff's Motion for Class Certification on December 1, 2006. Defendants Chemtura Corporation (f/k/a Crompton), Uniroyal Chemical Company, Inc., and DSM Copolymer, Inc., and ExxonMobil Chemical Company submitted a combined resistance to Plaintiff's motion. All parties appeared through their respective counsel. After carefully considering the documents and evidence filed by the parties, this Court enters the following ruling:

CLERK DISTRICT COURT
2007 MAR 19 PM 4: 13
POLK COUNTY, IA.
FILED

1

## RULING

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Anderson Contracting, Inc. is an Iowa corporation, engaged in contract roofing work in the State of Iowa. Defendants are numerous business entities incorporated in various states and countries. During the relevant time period, Defendants manufactured, marketed and/or distributed a synthetic rubber, known as ethylene propylene diene monomer ("EPDM"), throughout the United States. EPDM is one of several dozen synthetic rubbers that are similar in appearance. Direct purchasers of EPDM typically process the EPDM into a variety of value-added products which they then resell. EPDM is used extensively in the automobile and roofing industries, but is found in a multiplicity of other products.

Plaintiff was an indirect purchaser of various products containing EPDM, during the period of January 1, 1994 to December 2002. In its Second Amended and Substituted Class Action Petition,[1] Plaintiff alleges Defendants engaged in a conspiracy to fix the price of EPDM sold in the United States and elsewhere. Specifically, Plaintiff asserts that Defendants regularly increased prices for EPDM in a coordinated manner close in time and amounts.

Plaintiff argues that Defendants' actions violated chapter 553 of the Iowa Code, the Iowa Competition Law. Plaintiff alleges that Defendants and co-conspirators effectuated their conspiracy by participating in meetings and conversations to discuss the prices of EPDM and EPDM customers and/or markets, agreeing during those meetings and conversations to charge prices at certain levels and otherwise increase or maintain prices of EPDM sold in the United States and elsewhere, and allocating markets and

[1] On May 2, 2005, this Court granted Plaintiff's Motion to File Second Amended and Substituted Petition.

2

customers for the sale of EPDM pursuant to the agreements.  As a result of this alleged conspiracy, Plaintiff contends it paid substantially higher prices for products containing EPDM than it would have paid absent the alleged conspiracy and restraint.  Plaintiff filed a request for class action certification, which would allow it to represent other individuals presently unknown to Plaintiff who have been similarly harmed by Defendants' alleged price fixing.

Additional relevant facts will be addressed below as necessary.

## STANDARD OF REVIEW

District Courts are vested with broad discretion in determining whether to grant class certification.  *Stone v. Pirelli Armstrong Tire Corp.*, 497 N.W.2d 843, 845 (Iowa 1993).  Iowa Rules of Civil Procedure governing class actions should be liberally construed and "the policy should favor the maintenance of class actions." *Lucas v. Pioneer, Inc.*, 256 N.W.2d 167, 176 (Iowa 1977) (citations omitted); *see also* Iowa R. Civ. P. 1.261-1.279; *Comes v. Microsoft Corp.*, 696 N.W.2d 318, 320 (Iowa 2005) (hereinafter "*Comes II*").  Nevertheless, the representative party or the named plaintiff has the burden of proving all the prerequisites to certify a class action.  *Stone*, 497 N.W.2d at 846.  "A failure of proof on any one of the prerequisites is fatal to a class action certification." *Id.*  "Except where the facts underlying the class are merely speculative, however, the proponent's burden is light." *City of Dubuque v. Iowa Trust*, 519 N.W.2d 786, 791 (Iowa 1994).  After a class has been certified, the district court may decertify it if circumstances so require. *Comes II*, 696 N.W.2d at 320 (citing *Vos v. Farm Bureau Life Ins. Co.*, 667 N.W.2d 36, 46 (Iowa 2003)).

3

## CONCLUSIONS OF LAW AND ANALYSIS

Plaintiff is requesting that this Court certify a class consisting of persons who were indirect purchasers of EPDM in Iowa. Indirect purchasers are those parties to whom Defendants did not directly sell their products, but who ultimately obtained the products through the stream of commerce. *Comes II*, 696 N.W.2d at 320. Plaintiffs seek to define the class as "[a]ll persons who indirectly purchased Defendants' EPDM in the State of Iowa, other than for resale, from January 1994 through December 2002." *Plaintiff's Brief*, p. 7. Specifically excluded from the proposed class are "Defendants; any entity in which Defendants have a controlling interest; any employees, officers or directors of Defendants; legal representatives, successors or assigns of Defendants; any judicial officer who may hear the case and such judicial officer's related persons; any juror or such juror's related persons." *Id.* Plaintiffs do not seek to establish any subclasses and only seek class certification on their claim under Iowa Code section 553.

According to the Iowa Rules of Civil Procedure:

The court may certify an action as a class action, if it finds all of the following:
(a) The requirements of rule 1.261 have been satisfied.
(b) A class action should be permitted for the fair and efficient adjudication of the controversy.
(c) The representative parties fairly and adequately will protect the interests of the class.

Iowa R. Civ. P. 1.262(2). Therefore, the mandatory prerequisites for class certification are as follows: (1) the requirements of rule 1.261 (numerosity and commonality); (2) the certification would allow for *fair and efficient adjudication of the controversy*, which is determined by examining the several factors encompassed in Iowa R. Civ. P. 1.263; and (3) the representative parties *fairly and adequately will protect the interests of the class.*

4

*See id.* 1.261-1.263.  It is important to recognize, however, that the Court's determination on class certification will not be influenced by strength of the merits underlying the Plaintiff's claims.  *See Martin v. Amana Refrigeration, Inc.*, 435 N.W.2d 364, 367 (Iowa 1989) (citing *Vignaroli v. Blue Cross of Iowa*, 360 N.W.2d 741, 745 (Iowa 1985)).

1.    *Iowa Rule 1.261 Requirements*

First, the requirements set out in rule 1.261 must be met.  Specifically, rule 1.261 requires:  (1) the class be "so numerous or so constituted that joinder of all the members, whether or not otherwise required or permitted, is impracticable;" and (2) "[t]here is a question of law or fact common to the class."  Iowa R. Civ. P. 1.261(1)-(2).

A.   *Impracticability Based on Numerosity*

Generally, Iowa has adopted the rule that numbers alone may be dispositive to show impracticability.  *See City of Dubuque*, 519 N.W.2d at 792 (citations omitted). "Forty or more class members has been recognized as the range within which impracticability of joinder has been presumed."  *Id.* (citations omitted).  "Any doubts regarding joinder impracticability should be resolved in favor of upholding the class."  *Id.* (citation omitted).  It is important to note, however, that the sole inquiry on this fact is whether the class is so numerous that joinder is impracticable; not whether the class definition is too broad.

In the case at bar, Plaintiff believes that the class consists of thousands of members.  Defendants have conceded that the numerosity requirement has been met in this case.  Therefore, the Court will not belabor its analysis and finds Plaintiffs have met their burden in establishing impracticability of joinder.

B.   *Commonality*

5

This prerequisite requires that there be a common question of law or fact to the class. Iowa R. Civ. P. 1.261(2). "It is not necessary that the individual claims be carbon copies of each other." *Vignaroli*, 360 N.W.2d at 745. Despite variations of individual claims, a class action may nevertheless proceed where the theories include common issue of fact and law. *Id.* Again, Defendants in the present action do not contest that this requirement has been shown and it is clear that all class members would have a common question of law as to whether Defendants' alleged conduct amounted to a violation of the Iowa Competition Law. These circumstances fulfill the commonality requirement of rule 1.261(2). Therefore, Plaintiffs have satisfied all the requirements of rule 1.261.

2. *Fair and Efficient Adjudication*

Rule 1.262(2)(b) requires the Court to find that a class action will promote a fair and efficient adjudication of the controversy. Such a nebulous requirement finds direction under rule 1.263. According to rule 1.263, "[i]n determining whether the class action should be permitted for the fair and efficient adjudication of the controversy . . . the court shall consider, and give appropriate weight to, the following and other relevant factors . . . ." Iowa R. Civ. P. 1.263(1) (listing thirteen factors to be considered).

> [T]he criteria to be considered have two broad considerations: achieving judicial economy by encouraging class litigation while preserving, as much as possible, the rights of litigants—both those presently in court and those who are only potential litigants. No weight is required by the rule to be assigned by the trial court to any criteria listed, further evidencing an intent to grant considerable discretion to the trial court.

*Vignaroli*, 360 N.W.2d at 744. "'In most cases some of the thirteen factors [regarding the fair-and-efficient-administration-of-justice test] will weigh against certification and some will weigh in favor.'" *Comes II*, 696 N.W.2d at 322 (quoting *Howe v. Microsoft Corp.*, 656 N.W.2d 285, 289 (N.D. 2003)).

6

There is no set number of factors which must weigh in one direction or another. It is this Court's duty to weigh those competing factors and determine whether a class action will provide a fair and efficient adjudication of the controversy. *Id.* (citation omitted). This analysis may, for instance, allow two factors to outweigh the remaining eleven depending on their relevancy to the case. The Court is not required to make written findings under rule 1.263. The rule only requires that the Court weigh and consider the factors and come to a reasoned conclusion as to whether a class action should be permitted for a fair adjudication of the controversy. *City of Dubuque*, 519 N.W.2d at 791. Nonetheless, the Court believes it necessary to address the relevant factors of rule 1.263 below.

A.      *Joint or Common Interest.*

The Court has already established through its analysis in Part 1B that there are some areas in which common questions of law or fact exist. *See supra* Part 1.B. The Court believes this determination also supports the factor of whether a joint or common interest exists among the members of the class. *See* Iowa R. Civ. P. 1.263(1)(a). Furthermore, all parties concede that this factor weighs in favor of a fair and efficient adjudication.

B.      *Risk of Inconsistent or Varying Adjudications.*

The Court does not foresee the prosecution of separate actions creating a risk of inconsistent or varying adjudications with respect to individual Plaintiffs. *See id.* 1.263(1)(b). "Inconsistent or varying adjudications" do not include the simple case where two individuals sue the same defendant for the same relief and one wins and the other loses. Rather, it is where two individuals are suing the same defendants for

7

different and incompatible relief. *Trecker v. Manning Implement, Inc.*, 73 F.R.D. 554, 560 (N.D. Iowa 1976) (interpreting identical language under the Federal Rules of Civil Procedure). Thus, in order for there to be a risk of varying adjudications, there must be different parties attempting to impose different standards of conduct upon the party opposing the class. Under the circumstances as they currently exist, the Court sees no danger of this occurring, and the parties have not pointed to any other similar cases pending in the State of Iowa.

      C.    *Whether Individual Adjudications Would Affect Other Members Interests.*

The Court also does not perceive potential adjudications of individual claims as impairing or impeding other plaintiffs' abilities to protect their interests. *See id.* 1.263(1)(c). Common situations where impairment may occur are where individual suits against a defendant or fund will deplete the assets as to other plaintiffs, where injunctions secured by one members of a class may disable an opposing party from performing claimed duties toward other members, or where adjudications would estop other plaintiffs from protecting their interests. The potential plaintiffs in this case appear not associated, nor are their grounds for relief contingent upon the other class members. Furthermore, it does not appear that individual plaintiffs would be precluded from being awarded damages from Defendants based on prior individual litigation. While the Court confers little weight to this factor, it does weigh in favor of denying certification.

      D.    *Party Opposing the Class Acted on Grounds Generally Applicable to the Class, Making Relief Appropriate with Respect to the Class as a Whole.*

Both parties agree that this factor is not applicable or relevant to the Court's analysis in this case. Accordingly, the Court gives no weight to this factor either in support or opposition of class certification.

8

E.   *Whether Common Questions of Law or Fact Predominate Over Any Questions Affecting Only Individual Members.*

The Court has previously determined that some common questions of law and fact exist in this case. However, the Court must also look to whether those common questions predominate over any questions affecting only individual members. Iowa R. Civ. P. 1.263(1)(e). *Comes II* made clear that this predominance factor is not a condition precedent and is merely one of the thirteen factors for the court to consider. *Comes II,* 696 N.W.2d at 322. Moreover, "predominant" is not necessarily equated with "determinative" or "significant." *Vignaroli,* 360 N.W.2d at 745. In fact, a claim will satisfy the predominance requirement when generalized evidence exists, which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual position. *Vos,* 667 N.W.2d at 45 (citation omitted). Ultimately, the objective is to avoid trials that, as class actions, "would spend more time delving into individual questions of fact . . . than examining questions common to the entire class." *Id.* at 54-55.

In the present case, it is clear that while there are obvious factual differences in the way potential plaintiffs acquired products containing EPDM, the claims asserted are not individualized based on the underlying premise of the claim, which is price-fixing. Similar to *Comes II,* Plaintiffs must prove that Defendants violated the Iowa antitrust law, and this violation caused class members to suffer identifiable harm and damages. *See* IOWA CODE § 553.12 (requiring: (1) the existence of an antitrust conspiracy; (2) injury to the plaintiff that flows from the unlawful conduct; and (3) an amount of damages). In addition, to bypass the statute of limitations, Plaintiffs must prove that the defendants fraudulently concealed the alleged conspiracy. It is not required, however, that as a class

9

plaintiffs "show there will be common proof on each element of the claim. Rather, [the Iowa Supreme Court has] repeatedly noted that the existence of individual issues is not necessarily fatal to class certification." *Comes II*, 696 N.W.2d at 322 (citing *Howe*, 656 N.W.2d at 289).

The most contentious elements of Plaintiff's antitrust claim are injury-in-fact and damages. The proposed methods of proving injury-in-fact on a class-wide basis are based on economic theories and models of the Plaintiff's expert. Foremost, the Court wants to make clear that it will not engage in deciding a "battle of the experts" at this stage in the litigation. *See Howe*, 656 N.W.2d at 293. To do so would be making a class certification ruling based on the merits of the case. *See Comes II*, 696 N.W.2d at 325 (rejecting approach that would lead to a class certification decision based on merits of the litigation). The appropriate inquiry is not the strength of each class member's claim, but instead an inquiry into whether they are common complaints and which issues predominate. So long as the Court has sufficient information to form a reasonable judgment on the certification issue, it need not inquire further into the facts supporting the Plaintiffs' petition. *Comes II*, 696 N.W.2d at 324 (citing *City of Dubuque v. Iowa Trust*, 510 N.W.2d 786, 791 (Iowa 1994)). Only in cases where the facts underlying the class are merely speculative will the proponent's burden be more than light. *City of Dubuque*, 519 N.W.2d at 791. An approach of limiting examination of the merits of a case is supported by rule 1.262(1), which provides that courts should determine class certification issues "as soon as practicable after the commencement of a class action." In addition, "a safety net is provided for cases in which certification is improvidently

granted: the court may decertify the class at a later time." *Comes II*, 696 N.W.2d at 324 (citing *Yos*, 667 N.W.2d at 46).

Defendants' primary arguments in resistance to Plaintiff's showing on this factor are that the "class definition is so broad that neither Anderson nor its expert economist can begin to estimate the number of different end products that might be at issue" and that "there is no practical way for Anderson or anyone else to identify the members of the proposed class, let alone propose some common method by which it could be shown on a classwide basis how these members were injured . . . ." *Defendants' Brief*, p. 2. Specific to the factor of predominance, Defendants claim that because there are "'no mathematical calculations or formulate that can be used to determine each putative class member's damages,'" the individual damage determinations will overwhelm the common issues of damages in this case. *Defendants' Brief*, p. 38 (quoting *Keating v. Philip Morris, Inc.*, 417 N.W.2d 132, 137 (Minn. 1987)). How Plaintiffs seek to prove injury and damages is undoubtedly an issue which the court looks to when deciding whether individual questions predominate over common questions. However, Defendants ignore that fact that there remains a dispute among the parties' experts about whether a formula can be constructed in this case to produce a valid representation of passed-on costs and damages to end-users.

Defendants point to Plaintiff's expert, Dr. Conner, who concedes that no formula could determine the pass-on rate for individual customers because there would be too many variables involved. *See* Conner Tr. 195:25-196:5. The Court also acknowledges that determining what prices were paid by end-users is arguably a difficult task due to the variety of sales contracts for EPDM in different forms, grades, amounts, and with rebates

11

or discounts. The present case involves five EPDM manufacturers, hundreds of EPDM direct purchasers, thousands of distributors, retailers and other intermediaries, each of which had its own independent pricing polices and practices. Additionally, negotiated prices for EPDM vary even more when the product for which it is used has other non-EPDM substitutes. However, these again are some of the same circumstances and arguments faced in *Comes II* when looking to Microsoft products. Those products were bundled with computers, possibly included rebates, or volume discounts to the direct purchaser.

One of the characteristics of this case not present to the same extent in *Comes II* is that EPDM is typically sold throughout the stream of commerce after being incorporated into another product, not to mention the large number of products in which EPDM is used. *See, e.g., In re Methionine Antitrust Litig.*, 204 F.R.D. 161, 165 (N.D. Cal. 2001) (observing that when a product is incorporated into other products, the factfinder must determine how much the price of the resold product was a result of an anti-competitive overcharge and how much was the result of other costs). These characteristics make the analysis of injury and damages more individualized than *Comes II*. Even so, the Court does not agree that the issues of this case "will require the presentation of individualized evidence regarding each plaintiff's circumstances." *Defendants' Brief*, p. 4.

Plaintiffs have asserted that their expert, Dr. Connor, is prepared to offer "common, expert testimony" regarding the impact on and injuries of the class as a whole. Defendants contest, however, how Dr. Connor will be able to illustrate the many variables which go into a product. This is a challenge to Dr. Connor's methods and not proper for determination at the class certification stage. *See Howe*, 656 N.W.2d at 293;

12

*Comes II*, 696 N.W.2d at 325. In fact, arguments by Microsoft in *Comes II* are strikingly similar to those in this case. The *Comes II* court stated:

> Microsoft also attacks Professor MacKie-Mason's analysis, theories, and methodology, claiming that his economic methodology will not produce an accurate measure of harm and, consequently, that the plaintiffs have failed to present "real world" evidence to establish damages. Microsoft argues that the plaintiffs' proof is insufficient, claim that Professor MacKie-Mason's theories are inaccurate as a matter of fact and that the district court should have engaged in a rigorous analysis of this evidence to uncover its flaws. Specifically, it complains that the court abused its discretion because it

> > did not require plaintiffs to show that their proposed methods for proving with classwide evidence that *each class member actually paid some portion of a passed-on overcharge-and the amount passed on-*were workable in light of the real world facts Microsoft presented.

> . . .

> Microsoft's argument fails because, in effect, it asks the court to make a class-certification ruling based on the merits of the case, something we have uniformly rejected. *See, e.g., Kramersmeier v. R.G. Dickinson & Co.,* 440 N.W.2d 873, 879 (Iowa 1989) ("[A] reversal of the trial court's certification order for failure of proof of reliance would be tantamount to requiring proof of plaintiffs' ability to 'win on the merits,' a showing clearly not contemplated by [the rules] or prior decisions of this court."). This court has instead consistently held that class certification does not involve an inquiry into the merits of a case.

*Comes II*, 696 N.W.2d at 324-25. The *Comes II* court held that the district court's findings on the first three of five common questions would have justified a finding of predominate issues. Those common questions were: (1) whether Microsoft was a monopolist; (2) whether Microsoft engaged in anticompetitive conduct; and (3) whether Microsoft's conduct violated the Iowa Competition Law. *Comes II*, 696 N.W.2d at 323. Similar questions involving the Defendants alleged price-fixing conduct are present here.

13

Class certification is a procedural question and does not ask whether an action is legally or factually meritorious. *Luttenegger v. Conseco Fin. Serv. Corp.*, 671 N.W.2d 425, 438 (Iowa 2003); *Martin*, 435 N.W.2d at 367-68.   Defendants' contradicting evidence is noted by the court, "but it is inappropriate at the certification stage to resolve battles between experts." *Comes II*, 696 N.W.2d at 325 (citing *Howe*, 656 N.W.2d at 293).  At this point the Court is only concerned with ensuring that the basis of the expert opinion is not so flawed that it would be inadmissible as a matter of law. *Id.*  Based on the exhibits submitted to the court, and this jurisdiction's liberal rules on the admission of expert testimony, the Court is convinced that the expert opinions in this case do not fall within that sphere.  The district court in *Comes II* concluded that the plaintiff's proposed methods of proving injury-in-fact on a class-wide basis were based on sound and accepted economic theory and presented viable methods for establishing the differences in prices. *Comes II*, 696 N.W.2d at 323.  Similar methods, while possibly less detailed at this stage in the litigation, are similar economic theories.

Understandably, there are inherent difficulties in proving injury and damages in an indirect purchaser case.  However, the Court does not find, as the Defendants do, that this burden is an impossible one.  Clearly there are a multitude of factors that go into the ultimate pricing of a product containing EPDM.  However, the ability or likelihood of proving an inflated price throughout the various streams of commerce is an argument attacking the merits of the case and not the issue before the Court.  An increased difficulty in proving damages is not a basis on which this Court can deny Plaintiffs' motion for class certification.  Whether a formula can be developed, which encompasses the alleged price inflation through the various distribution levels, is a factual issue for the

14

jury to determine based on expert testimony.  If the Plaintiffs' expert is incapable, as Defendants claim, of fabricating a method to demonstrate the alleged price fixing's effect, it is possible to be addressed in a summary judgment motion or on a motion for directed verdict at trial.  At this stage the Court is more concerned with identifying class members and characterizing the types of issues involved.  Moreover, Defendants do not dispute that their alleged price-fixing conduct would be a common issue among the potential plaintiffs in this case.

The Court is satisfied that common questions in this case are predominant and this determination weighs in favor of finding that certification would permit a full and fair adjudication of this case.  *See Vos*, 667 N.W.2d at 54-55 (ensuring that at trial would not "spend more time delving into individual question of fact . . . than examining questions common to the entire class").  Despite the Court's determination on this factor, it remains merely a factor in the overall analysis conducted in this case.

F.    *Whether Other Means of Adjudicating the Claims Are Impracticable or Inefficient.*

Whether the means of adjudication provides the most efficiency and practicability are also important to class certification decisions.  Iowa R. Civ. P. 1.263(I)(f).  Based on the nature of the product at issue in this case and the multitude of products and streams of commerce to which it has traveled, individual claims for the potential class members would be an unbelievably arduous task.  The Court does not turn a blind eye to the potential logistics of a class action involving so many different end-products and problematic identification of products containing EPDM.  Nevertheless, the Court agrees that this factor weighs in favor of a fair and efficient adjudication.

G.    *Is a Class Action the Most Appropriate Means to Adjudicate the Case?*

15

With similar concerns to factor (f), the Court believes class certification would offer the most appropriate means of adjudicating potential plaintiffs' claims. *See id.* 1.263(1)(g). If ascertaining members of the class requires individualized hearings into the chemical makeup and circumstances of each purchase, class action proceedings may no longer provide an adequate way to adjudicate this matter. However, individual cases would also require such determinations and conducting hearings on particular products would certainly consolidate many of those determinations, if necessary to determine the existence of EPDM. Again, the Court believes this factor weighs in favor of a fair and efficient adjudication.

H.   *Have Other Class Members Demonstrated They Want to Control the Litigation?*

Neither party has shown that any other members of the proposed class have sought or will seek to control this litigation. Iowa R. Civ. P. 1.263(1)(h). The Court views this factor as weighing in favor of finding a fair and efficient adjudication. However, the Court gives little weight to this factor.

I.   *Whether the Class Action Involves a Claim That Is or Has Been the Subject of a Class Action, a Government Action, or Other Proceeding.*

Plaintiff asserts that "[t]he government has successfully brought criminal actions against most of the Defendants. Other class actions have been filed in other states as well." *Plaintiff's Brief,* p. 16. In addition, both parties acknowledged during oral argument that the actions of the Defendants had been investigated by the federal authorities, but yielded no further action. Despite these actions in other jurisdictions, the rule asks whether the claim has been addressed in another proceeding. The Court finds no basis to conclude that Plaintiff's claim for antitrust violations under Iowa Code

16

chapter 553 have previously been the subject of another such proceeding. Accordingly, this factor weighs in favor of finding certification to further a fair and efficient adjudication.

     J.     *Whether it is Desirable to Bring the Class Action in Another Forum?*

     Neither party makes an argument that Plaintiffs, who are from the State of Iowa, should bring their antitrust actions in a state other than Iowa. Similarly, as much as it might like to do so, the Court can find no basis for such a finding. The Court views this less significant factor as indicating the likelihood of fair and efficient adjudication.

     K.     *Will Management of this Class Action Pose Unusual Difficulties?*

     One of the most glaring factors in this case asks whether management of the class poses unusual difficulties. *See id.* 1.263(1)(k). Plaintiffs' definition of the proposed class is quite broad. *See Plaintiff's Brief,* p. 7 ("All persons who indirectly purchased Defendants' EPDM in the State of Iowa, other than for resale, from January 1994 through December 2002."). This definition coupled with the uncertainty in identifying the products containing EPDM, indicates many potential problems in managing this class. These problems could ultimately be insurmountable. *See* Moore's Federal Practice § 23.46[2][e][i] (2006); *see also In re Phenylpropanolamine (PPA) Prods. Liability Litig.,* 214 F.R.D. 614, 619-20 (W.D. Wash. 2003).

     Similar to the circumstances of *In re Phenylpropanolamine,* there will be many instances where class members' right to recover is not readily ascertainable and would require an individualized hearing. *In re Phenylpropanolamine,* 214 F.R.D. at 618. Therefore, the task of determining whether each alleged class member had in fact purchased a product containing EPDM could result in numerous mini-trials within the

17

larger class action to determine eligibility. There are also issues as to whether the potential plaintiffs are an end-user, or whether they were even the purchaser if they do not have proof of purchase. These determinations pose enormous manageability hurdles and could potentially overwhelm even experienced class action attorneys, or overwhelm the court's resources and defeat the judicial economy obtained from class certification.

While the Plaintiffs are correct that under Iowa law there is no requirement that the members of the class all be identified at this point, the ability to identify the class does weigh on the manageability factor. Additionally, manageability issues should not necessarily be equated with issues of complexity. Plaintiff's claims involve both complex legal concepts as well as a huge number of potential plaintiffs and effected products. However, it is the large number of potential plaintiffs and a yet unknown number of end-products that pervades the Court's analysis. This factor is also one that the Court gives significant weight. These potential difficulties leads the Court find that this factor weighs against a fair and efficient adjudication in this case.

L.   *Whether Any Conflict of Laws Issues Pose Unusual Difficulties.*

Plaintiffs have only asserted claims under Iowa law and the proposed class members are limited to individuals in the State of Iowa. Therefore, at the present time, there is nothing in the record that demonstrates to the Court that any conflict of laws issues would dissuade this Court from finding certification appropriate.

M.   *Whether Individual Class Member Claims Would Be Insufficient In the Amounts or Interests Involved to Afford Significant Relief to the Members of the Class.*

Plaintiffs assert that the present case is "tailor-made" for a class action, based on the alleged small damage to each class member and the potential for an enormous amount

18

of class members.  While the Court will not speculate as to specific amounts of damage that may be recoverable in this case, it is indicative through the allegations that EPDM is typically a small portion of a larger item such as a car or is a larger portion of less expensive items like weather stripping.  Consequently, there is a strong likelihood that the amount of damage to individual plaintiffs would be relatively small.   This determination weighs in favor of finding that certification should be permitted for the fair and efficient adjudication of this case.

N.    *Conclusion Regarding Rule 1.263 Factors.*

*Comes II* has made clear that

> [i]n most cases some of the thirteen factors will weigh against certification and some will weigh in favor.  It is for the trail court, employing its broad discretion, to weigh the competing factors and determine whether a class action will provide fair and efficient adjudication of the controversy.  Thus, even if [Defendants are] correct in [their] assertion four of the factors weigh against certification, that does not preclude the court from certifying the class action if, in its opinion, those factors are outweighed by other factors supporting certification.

*Comes II*, 696 N.W.2d at 289.  A determination of the thirteen factors in this case is certainly a close call.  However, based on the record before the Court and in light of this jurisdictions deference to certification, the Court concludes that certification would permit the "fair and efficient adjudication of the controversy."  Iowa R. Civ. P. 1.262(2)(b), 1.263(1).

3.    ***Fairly and Adequately Protect the Interests of the Class***

The last issue is whether the representative parties will fairly and adequately protect the interests of the class.  Iowa R. Civ. P. 1.262(2)(c).  Rule 1.263(2) states that the court must find all of the following:

a.        The attorney for the representative parties will adequately

19

              represent the interests of the class.

    b.       The representative parties do not have a conflict of interest in the maintenance of the class action.

    c.       The representative parties have or can acquire adequate financial resources, considering rule 1.276, to ensure that the interests of the class will not be harmed.

According to the pleadings, as well as the written and oral arguments of the parties, Anderson Contracting did purchase items containing EPDM as an end-user and would, therefore, be a member of the proposed class despite also being an intermediary for other products containing EPDM.

A.    *Adequate Attorney for the Class*

Plaintiffs' counsel has prior experience in antitrust class action litigation and neither party disputes the adequacy of Plaintiffs' counsel in this case. Therefore, this requirement is met.

B.    *Representative Parties Do Not Have Conflicts of Interest In Maintenance of Class Action.*

Defendants maintain that Anderson Contracting does not have a sufficient interest in the litigation to create an incentive to be diligent in providing discovery materials or prosecuting the case. Additionally, Defendants claim that Anderson Contracting's status as a reseller of products containing EPDM directly conflicts with the interests of the putative class, which consists of purchasers who are end-users of products containing EPDM. If both intermediate purchasers and end-users were part of the proposed class the Court would agree with Defendants' characterization. However, Anderson Contracting is asserting their antitrust claims as an end-user. Therefore, the Court finds no conflict which would prevent Anderson Contracting from maintaining the class action.

20

The Court is aware of the potential for a less than rigorous representation of the class when a proposed representative of the class has a small personal stake in the litigation, as appears to the be the case with Anderson Contracting. Moreover, Defendants have already called Anderson Contracting's commitment into question following minimal discovery responses. Nevertheless, a small end-user appears to be typical of the proposed class and was not considered to be an issue in *Comes II*. In addition, a significant portion of the discovery in this case has yet to be conducted. The Court is, therefore, unwilling to find Anderson Contracting to be lacking as a representative based on one alleged substandard discovery response.

C.    *Representatives Have or Can Acquire Adequate Financial Resources.*

In light of the provision for advancement of costs in this case, the Court finds Plaintiffs have adequately shown their ability to provide financial resources. *See Comes II*, 696 N.W.2d at 327 ("In this case, the plaintiffs' attorneys requested that the court issue an order under 1.276 approving their fee arrangement and their willingness to advance all costs."). Moreover, Defendants have not offered any rebuttal to this requirement. The Court finds that Plaintiff has sufficiently established their ability to provide financial resources.

4.    *Conclusion*

As previously stated, the "representative party or the named plaintiff has the burden of proving all the prerequisites" to certify a class action. *Stone*, 497 N.W.2d at 846. "A failure of proof on any one of the prerequisites is fatal to a class action certification." *Id.* Finding none of the requirements to be lacking at this time, the Court is under the obligation to conclude that class certification is appropriate in this case.

21

However, the Court reserves this issue for further examination as is permitted under the Iowa Rules of Civil Procedure. *See* Iowa R. Civ. P. 1.265.   Rule 1.265(1) states:

The court may amend the certification order at any time before entry of judgment on the merits. The amendment may do the following:
a. Establish subclasses.
b. Eliminate from the class any member who was included in the class as certified.
c. Provide for an adjudication limited to certain claims or issues.
d. Change the relief sought.
e. Make any other appropriate change in the order.

The trial court's duty to ensure compliance with the class action rules continues after certification of the class, and the court may decertify the class after the initial certification if appropriate. *Vos*, 667 N.W.2d at 46.   The court remains free to modify the order in light of subsequent developments in the litigation. *Id*.   Based on the characteristics of this litigation, including the potential for individual questions to supplant common questions and problems ascertaining class members, the Court will modify this order if appropriate.

## ORDER

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Class Certification is **GRANTED**.

SO ORDERED this 16th day of March, 2007.

RICHARD G. BLANE II,
District Judge, Fifth Judicial District of Iowa

Clerk: __J __√ /C __) U ___ X

22

COPIES TO:

All Counsel of Record

[If you require the assistance of auxiliary aids or services to participate in court
because of a disability, immediately call your ADA Coordinator at 515-286-3394.  (If
you are hearing impaired, call Relay Iowa TTY at 1-800-735-2942.)]

23

# EXHIBIT 13

TRIPLETT, WOOLF & GARRETSON
151 North Main, Suite 800
Wichita, KS  67202-1409
(316) 265-5700

FILED
HAY 3  3 13 PH '95

IN THE EIGHTEENTH JUDICIAL DISTRICT
DISTRICT COURT, SEDGWICK COUNTY, KANSAS
CIVIL DEPARTMENT

CHERYL DONELAN, on her own      )
behalf and on behalf of all     )
others similarly situated       )
within the State of Kansas,     )
                                )
              Plaintiff,         )
                                )
        vs.                     )        Case No. 94 C 709
                                )
ABBOTT LABORATORIES, INC.       )
BRISTOL-MYERS SQUIBB CO.,       )
and MEAD JOHNSON & CO.,         )
                                )
              Defendants.        )
_____)
Pursuant to Chapter 60,
Kansas Statutes Annotated

## ORDER OF CLASS CERTIFICATION

NOW on this 1st day of March, 1995, this matter comes
regularly on for hearing on plaintiff's Motion for an Order pur-
suant to K.S.A. $ 60-223(c)(1) determining that this case may be
maintained as a class action on behalf of the class defined in
paragraph seventeen (17) of her Petition.  Plaintiff appears
personally, and by and through her respective counsel of record.
Defendants appear by and through their respective counsel of
record.

THEREUPON, plaintiff makes her opening statement by and
through her counsel of record and, thereafter, defendants make
their opening statements by and through counsel of record.

66455.

THEREUPON, plaintiff introduces her evidence and rests.

THEREUPON, defendants introduce their evidence and rest.

THEREUPON, after hearing the evidence, reading the briefs filed herein, reviewing the Court file, hearing arguments of counsel and being otherwise fully and duly advised in the premises, the Court makes the following findings and orders:

1.   THE COURT FINDS that the proposed class is defined and described as follows:

> All persons who indirectly purchased one or more brands of infant formula manufactured by ABBOTT, ROSS, BRISTOL-MYERS, and/or MEAD JOHNSON, except for infant formula sold under the Gerber brand name in the State of Kansas during the period January 1, 1980, to December 31, 1992.[1]

2.   THE COURT FURTHER FINDS that the proposed class satisfies the four (4) prerequisites of K.S.A. § 60-223(a) and the requirements of K.S.A. § 60-223(b)(3).

3.   THE COURT FURTHER FINDS that, as is appropriate and timely during the course of these proceedings, pursuant to K.S.A. § 60-223(d), it should enter further appropriate orders in the conduct of this action, as a class action, including, without limitation, orders relating to the notice to be provided to the plaintiff class, which by this Order the Court has now certified.

IT IS THEREFORE ORDERED, DECREED AND ADJUDGED that this action is to be maintained as a class action by the named plain-

---

[1]   The parties agree that parents who received infant formula through the Kansas Special Supplemental Food Program for Women, Infants and Children ("WIC") program did not "purchase" the formula; and, therefore, such consumers are not a part of the class plaintiff represents.

- 2 -

66455.

tiff, individually, and on behalf of all others similarly situated,

which class consists of those persons described above.

_Paul Buchanan_

THE HONORABLE PAUL BUCHANAN
DISTRICT COURT JUDGE

APPROVED:
Michael D. Hausfeld
Daniel A. Small
COHEN, MILSTEIN, HAUSFELD & TOLL
1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, D.C. 20005-3934
        and
Samuel D. Heins
Kent Williams
HEINS, MILLS & OLSON
700 Northstar East
608 Second Avenue South
Minneapolis, MN  55402
        and
FLEESON, GOOING, COULSON & KITCH, LLC

By _Richard I. Stephenson_
    Richard I. Stephenson, #06273
    Attorneys for Plaintiff


Todd A. Gale
KIRKLAND & ELLIS
300 South Grand Avenue
Los Angeles, CA  90071
        and
MORRIS, LAING, EVANS, BROCK
    & KENNEDY, CHARTERED

By _Joseph W. Kennedy_
    Joseph W. Kennedy, #05465
    Attorneys for Defendant Abbott
        Laboratories


Paul R. Vardeman
Cathy J. Dean
POLSINELLI, WHITE, VARDEMAN & SHALTON
700 West 47th Street, Suite 1000
Kansas City, MO  64112
        and

66655.

- 3 -

Max R. Shulman
Bradley J. Kurkowski
CRAVATH, SWAINE & MOORE
Worldwide Plaza
825 Eighth Avenue
New York, NY  10019
        and
TRIPLETT, WOOLF & GARRETSON, LLP

By    _____
       James A. Walker, #09037
       Attorneys for Defendants
       Bristol-Myers Squibb Co. and
       Mead Johnson & Co.

- 4 -

# EXHIBIT 14

IN THE DISTRICT COURT OF SCOTT COUNTY, KANSAS

| | | |
|---|---|---|
| PREMIER PORK, INC., on behalf of itself, and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. 00 C 3 |
| RHONE-POULENC, S.A., et al, | ) ) | |
| Defendants. | ) ) | |

FILED DISTRICT COURT
SCOTT COUNTY KANSAS
DARLENE KOHMAN, CLERK

2004 MAY 4 AM 10 03

## MEMORANDUM DECISION AND JOURNAL ENTRY
## ON PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

This case comes before the Court on Plaintiff's Amended Motion for Class Certification. The Plaintiff has filed its brief in support thereof and the Defendants have filed their responses, pleadings, and briefs. All parties have had an opportunity to present oral arguments to the Court.

Plaintiff is requesting that this Court certify a class consisting of persons and firms who were indirect purchasers of methionine in Kansas. Plaintiff claims that the Defendants have conspired among themselves to fix, maintain, raise, or stabilize the price of methionine that has been sold in Kansas. Plaintiff claims that Defendants' conspiracy increased the price of methionine and that this increase was passed on through the distribution chain from the Defendants to their direct purchasers, then to feed resellers and ultimately to the end user who

were Kansas livestock producers.  Plaintiff alleges that the Defendants have violated the Kansas antitrust law, K.S.A. 50-101, et seq.

Before certifying a class of indirect purchasers, the Plaintiff must meet the four requirements established by K.S.A. 60-223 (a).  The Plaintiff in this case seeks to establish a class pursuant to K.S.A. 60-223(b)(3).

The class action statutes of Kansas, K.S.A. 60-223, et seq., are patterned after the Federal Rules of Civil Procedure 23 and the decisions of the federal court interpreting that rule are traditionally followed in this jurisdiction (*Steele v. Security Benefit and Life Insurance Company*, 226 Kan. 631 and  *Brueck v. Krings*, 6 Kan. App. 2d, 622).

The courts in determining if a matter is suitable to be maintained as a class action generally take the allegations of the Plaintiff's Petition as true, and the courts apply their common sense to those allegations.

The determination of a class action is procedural in nature and has nothing to do with whether or not a party will prevail upon the merits (*Winters v. Kansas Hospital Services Association, Inc.*, 1 Kan. App. 2d 64).

The first requirement for a class certification is that "the class is so numerous that joinder of all members is impracticable," K.S.A. 20-223(a)(1).  Plaintiffs are not required to prove the exact size of the proposed class but only that the number is exceedingly large.  (*Rex v. Owens*, 585 F. 2d 432)(10th Cir. 1978).  Plaintiff alleges that the members of the class are so numerous that joinder is impracticable, and that although the exact number of Plaintiff's class members is presently known, the class will number in the thousands.  The class members are

2

geographically dispersed throughout the state of Kansas in a state which is dominated by agriculture and livestock production. The Defendants do not seriously contest numerosity, and the Court finds that Plaintiff has satisfied this requirement.

The next issue is to determine whether "there are questions of law or fact common to the class," K.S.A. 60-223(a)(2). There need only be a single issue common to all members of the class (*Shutts v. Phillips Petroleum Company*, 235 Kan. 195). Either a common question of law or common question of fact will be deemed sufficient. Factual differences in the claims of the class members should not result in a denial of class certification when common questions of law or fact exist. Every member of the class need not be in a situation identical to that of the named Plaintiff (*Ritch v. Martin Marietta Corp.*, 522 F. 2d 333) (10th Cir. 1975). The commonality requirement is to be liberally construed (*Gray v. Amoco*, 1 Kan. App. 2d 338). The commonality requirement permits varied factual situations among individual class members so long as the claims of the named Plaintiff and other class members are based on the same legal "remedial theory" (*Realmonte v. Reeves*, 169 F.3d 1280) (10th Cir. 1999.)

Plaintiff seeks to prosecute this action on behalf of all indirect purchasers in the State of Kansas who bought methionine for end use as an animal feed additive indirectly from any of the defendants.

It is clear that the same legal theory would apply to a right of recovery for all proposed class members if proven. The legal theory, which encompasses common factual questions, that is common to all class members is whether or not the Defendants, or any of them, entered into

3

a conspiracy, which was effectuated, to fix, maintain, stabilize or control the price of methionine that they manufactured and sold for ultimate consumption by the end user.

The Court finds that Plaintiff has satisfied the commonality requirement.

The third requirement is that "the claims or defenses of the representative parties are typical of the claims or defenses of the class," K.S.A. 60-223(a)(3).

A Plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to a claim of other class members, and his or her claims are based on the same legal theory (*Stuart v. Rubin*, 948 F. Supp. 1077). The law does not require a named Plaintiff to be the perfect class member, or even the best available (*Helmley v. Ashland Oil, Inc.*, 1 Kan. App. 2d, 532). That case also stands for the proposition that for the named class representatives position to be atypical, the Defendants must show that a conflict exists which goes to the very subject matter of the litigation. The standard for meeting the typicality requirement is not "identical" or "perfectly typical."   The typicality criterion focuses on whether there exists a relationship between the Plaintiff's claim and the claims alleged on behalf of the class.  As with the commonality requirement, the claims or defenses need not be identical (*In Re Aluminum Phosphide Antitrust Litigation*, 160 F.R.D. 609) (D. Kan. 1995). Differences in the methods of purchase, kinds of products purchased among class members, differences in price, varying competitive environments, differences in the distribution chain, all of which are asserted by Defendants, have not been held to bar a finding of typicality (*In Re Catfish Antitrust Litigation*, 826 F. Supp. 1019 ) (N.D. Mis. 1993).   Plaintiff claims it is typical if it arises from the same event or practice or course of conduct that gives rise to the

4

claims of the other class members and that his or her claim is based on the same legal theory. The purpose of the typicality requirement is to ensure that the named Plaintiff's interests are aligned with those of the proposed class, and in pursuing their own claims, the named Plaintiff will also advance the interest of the class (*Emig v. American Tobacco Company, Inc.*, 184 F.R.D. 379) (D. Kan. 1998). What is important as far as typicality is concerned is that the named Plaintiff and the rest of the class members "shared common objectives and legal or factual positions" (*Shutts*, 235 Kan., at 208). The overriding consideration typifying many antitrust claims are the need to prove that there is a conspiracy to fix prices in violation of the antitrust laws, that the prices are fixed pursuant thereto, and that the plaintiffs purchased products at prices which, as a result of the conspiracy, were higher than they should have been (*In Re Aluminum Phosphide*, 160 F.R.D. at 613).

Plaintiff does not have claims antagonist to other proposed class members. All indirect purchasers rely on the same theories of liability against the Defendants. The evidence and testimony offered by Plaintiff to attempt to prove the Defendants engaged in illegal conduct and a conspiracy will be the same for every claim.

Plaintiff has satisfied the typicality requirement.

The fourth requirement is that "the representative party will fairly and adequately protect the interests of the class," K.S.A. 60-223(a)(4).

Whether this requirement has been met depends on the answer to the following two questions: (1) Does the class representative have any kind of material conflict of interest with the class with respect to the common questions involved, and, (2) Will counsel vigorously

5

prosecute the action on behalf of the class? (*Olenhouse v. Commodity Credit Corp*, 136 F.R.D. 672) (D. Kan. 1991); (*Zapata v. IBP, Inc.*, 167 F.R.D. 147) (D. Kan. 1996).  A single Plaintiff may represent the entire class, no matter how small his claim may be, if other factors indicate that he will fairly and adequately protect the interests of the class," (*Epstein v. Weiss*, 50 F.R.D. 387).

There is no evidence that Plaintiff has any interests which are antagonistic to those of the proposed class members with respect to the claims asserted.  In proving its own claims, Plaintiff must necessarily prove the claims of the other members of the class.

The statute also requires that the class be adequately represented by counsel and that counsel pursue a vigorous prosecution of the case.  It is clear that counsel for Plaintiff are experienced attorneys in handling complex, class action litigation.  They are aggressively prosecuting this action and appear competent to adequately represent the Plaintiff and the class.

In addition to satisfying the requirements of numerosity, commonality, typicality, and adequacy of representation under K.S.A.60-223(a), Plaintiff must also demonstrate that questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other methods for fair and efficient adjudication of their claims.  K.S.A. 60-223(b)(3).

One of the fundamental objectives of the class action litigation is to allow numerous small claimants to join together and sue as one when prosecution of their individual claims would otherwise be impractical.

6

Where there is a central or overriding issue for a common nucleus of operative facts, the predominance test is satisfied (*Esplin v. Hirschi*, 402 F.2d 94) (10th Cir. 1968). The issues of conspiracy, monopolization, and conspiracy to monopolize have been viewed as central issues which satisfy the predominance requirement. (See *Gold Strike Stamp Company v. Christensen*, 436 F.2d 791) (10th Cir. 1970). Individual damage questions do not ordinarily preclude a (b)(3) class action when the issue of liability is common to the class (*Commander Properties Corp. v. Beech Aircraft Corp.*, 164 F.R.D. 529) (D. Kan. 1995). Courts have repeatedly focused on the liability issues, in contrast to damage questions, and, if they found issues were common to the class, have held that the requirements of (b)(3) are satisfied.

Plaintiff's expert, Dr. Keith Leffler, Ph.D., is of the opinion that if the Plaintiff is successful in proving a conspiracy to fix prices and allocate markets, then basic economic principles will show that the proposed class members paid higher prices during the class period for methionine and for feed products containing methionine as a result of that price-fixing conspiracy. He goes on to say that a basic economic principle shows that prices will be higher when costs are higher, and that all of the proposed class members would have been affected. Dr. Leffler has consulted a report that Dr. Deramus used in the federal direct purchaser case to calculate the overcharges to those direct purchasers. Dr. Leffler intends to use a standard statistical approach known as regression analysis to determine the relationship among variables; e.g., one variable in this case is the impact on the price to end users (the dependent variable) from the changes in the price of methionine (an independent variable).

7

Defendants' expert, Dr. Robert W. McLeod, vigorously challenges every facet of Dr. Leffler's declaration.   Dr. McLeod asserts that Dr. Leffler's methods are inappropriate because of the diverse distribution chain to end users of methionine in Kansas, the possibility that a price-fixed increase was not passed to the end user, but absorbed by some party in the distribution chain, that perhaps the feed market industry is not as competitive as assumed by Plaintiff, that there are naturally occurring amino acids that compete with methionine making it impossible to determine whether or not and in what amount price-fixed methionine may have been used; and, finally, that it will simply be impossible to determine whether a class member was injured, and if so, to what extent. This last allegation goes to the protestations of the Defendant that they will be denied their right to a jury trial by each class member to determine whether or not that class member had, in fact, been injured and if so, to what extent. At class certification, Plaintiff is not required to prove its case (*Eisen*, 399 F.2d at 566; *In Re Catfish Antitrust Litigation*, 826 F. Supp. at 1042).   Class certification is not the time to resolve a battle of experts, and Plaintiff need only make a threshold showing that antitrust violations, if proven at trial, has a common impact on the class.  The Court has decided for the purposes of establishing a class that Plaintiff has made the required threshold showing.  The Court is convinced at this stage of the proceeding that Plaintiff's claim can be evaluated without being overwhelmed by so many individual issues that certifying a class status would be completely impracticable.

The Court must consider whether or not a class action would be superior to any other form of action to resolve the controversies at hand.  Because of the number of potential class

8

members, the Court finds that none of the alternative types of actions are feasible.  An individual claimant's damage may be so small and the cost of litigating a claim of this type so large as to prevent any practical person from bringing an action except as a member of the class.  The superiority of class action litigation under these circumstances is obvious.  There are no other practical alternatives.  Failure to certify the class would likely result in no remedy for plaintiff and the persons whom it represents.

The Court has heard and construed the class action requirement liberally and resolved all doubts in favor of the class certification (*Arch v. American Tobacco Company*, 175 F.R.D. 469) (E.D. DA 1997).

The Court finds that as a matter of law that plaintiff has satisfied the requirements of K.S.A. 60-223(a) of numerosity, commonality, typicality, and adequate representation and the requirements of K.S.A. 60-223(b)(3) of predominance and superiority, and, therefore, it is the finding and order of this Court that the Motion for Class Certification shall be and is hereby granted.

It is, therefore, ordered, adjudged and decreed that Plaintiff's Motion for Class Certification pursuant to K.S.A. 60-223 is sustained and the class is defined as follows: "All persons and entities (excluding all government entities, defendants, and other manufacturers of methionine and their respective subsidiaries, affiliates, officers and directors who purchased methionine in the State of Kansas or intend to use as an animal feed additive (excluding test feed for dogs, cats, birds and fish) indirectly from any of the Defendants at any time during the period January 1, 1985, through the end of 1998."

9

IT IS FURTHER ORDERED that Plaintiff give notice of this class certification to all interested parties in the manner and as provided by law.

IT IS SO ORDERED.

_Thomas F. Richardson_

THOMAS F. RICHARDSON
District Judge

FILED DISTRICT COURT
SCOTT COUNTY KANSAS
DARLENE KOHMAN, CLERK
2004 MAY 4 AM 10 03

10

<u>Certificate of Mailing</u>

      I, Nancy S. Swanson, Official Court Reporter, hereby certify that I filed the original of the above and foregoing Order with the Clerk of the District Court of Scott County, Kansas, and that I served a true and correct copy of the above and foregoing Order by depositing same in the United States mail, first class postage prepaid, on the 1st day of May, 2004, to:

David J. Rebein
Rebein Bangerter PA
810 Frontview
P.O. Box 1147
Dodge City, KS 67801

Isaac L. Diel
Diel & Seelman, PC
4121 West 83rd Street, Suite 254
Prairie Village, KS 66208

Todd R. Seelman
Diel & Seelman, PC
Wells Fargo Center
1700 Lincoln Street, Suite 3900
Denver, CO 80203

Keen Brantley
Wallace, Brantley & Shirley
325 Main Street
P.O. Box 605
Scott City, KS 67871

Melissa Nandi
Michelle Fischer
Geoffrey Brown
Halle Butler
Jones Day
Northpoint
901 Lakeside Avenue
Cleveland, OH 44114-1190

John Majoras
Jones Day
51 Louisiana Ave., N.W.
Washington, D.C. 20001-2113

Trammell Newton
Jones Day
500 SunTrust Plaza
303 Peachtree Street, N.E.
Atlanta, GA 30308-3542

Steven A. Kanner
Douglas A. Miller
Much, Shelist, Freed, Dennenberg,
Ament, Rubenstein & Bell
200 N. LaSalle, Suite 2200
Chicago, IL 60601

Joel C. Meredith
Steven J. Greenfogel
Krishna Narne
Meredith, Cohen, Greenfogel & Skirnick
Architects Building, 22nd Floor
17th & Sansom Streets
Philadelphia, PA 19103

Rex A. Sharp
Gunderson, Sharp & Walke, P.C.
4121 West 83rd Streeet, Suite 256
Prairie Village, KS 66208

Daniel R. Karon
Law Office of Daniel Karon
1422 Euclid Avenue, Suite 150
Cleveland, OH 44115

Anthony Rupp
Amy E. Morgan
Shughart, Thompson & Kilroy, P.C.
9225 Indian Creek Parkway, Suite 1100
Overland Park, KS 66210

Sutton Keany
Bryan R. Dunlap
Andrew M. Behrman
Winthrop, Stimson, Putnam & Roberts
One Battery Plaza
New York, NY 10004-1490

Jeffrey A. LeVee
Peter G. McAllen
Emma Killick
Jones Day
555 West Fifth Street, Suite 4600
Los Angeles, CA 90013-1025

11

# EXHIBIT 15

# IN THE DISTRICT COURT OF SEWARD COUNTY, KANSAS

DARIC SMITH, on behalf of himself,
and all others similarly situated,

Plaintiffs

vs.                                            Case No. 00-CV-26

PHILIP MORRIS COMPANIES, INC.,
PHILIP MORRIS INCORPORATED,
PHILIP MORRIS INTERNATIONAL INC.,
R.J. REYNOLDS TOBACCO COMPANY,
BRITISH AMERICAN TOBACCO CO. LTD.
BROWN & WILLIAMSON TOBACCO CORP.,
LORILLARD TOBACCO CO.,
LIGGETT GROUP, INC.,
BROOKE GROUP, LTD

Defendants

## JOURNAL ENTRY OF DECISION BY THE COURT UPON PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

The Plaintiffs have filed their Motion and Brief herein requesting this Court to

certify this case as a Class Action pursuant to K.S.A. 60-223.

The Defendants have filed their briefs in opposition to the Motion for Class

Certification.

Both parties have had an opportunity to present their oral argument to the Court

upon this issue.

The Plaintiff is requesting this Court certify a class consisting of persons who

were indirect purchasers of cigarettes in Kansas. It is the claim of the Plaintiffs that the

Defendants have conspired among themselves to fix, maintain, raise, or stabilize the prices of

cigarettes that have been sold in Kansas.  The Plaintiff claims the Defendants by way of this

conspiracy increased the price of cigarettes and this increase was passed on through the

distribution of the cigarettes from the Defendants to their wholesalers, then to their jobbers or

sub-jobbers and on down to the retailers so that upon purchase by Kansas consumers, the prices

of the cigarettes were artificially increased, fixed or maintained.

      The class that the Plaintiffs seek to certify is defined as follows.

      "All natural persons who indirectly purchased cigarettes in the State

      of Kansas for consumption and not for resale from any of the Defendants,

      or any parent, subsidiary or affiliate thereof or their co-conspirators

      at any time from November 1, 1993 to the present."

      The Plaintiffs allege that the Defendants have violated provisions of K.S.A. 50-

101, 50-115, 50-132 and seek treble damages under K.S.A. 50-801.

      This Court finds that before certifying a class of indirect purchasers, the Plaintiff

must meet the four requirements established by K.S.A. 60-223(a) and the additional burden of

predominance and superiority under K.S.A. 60-223(b)(3).

      The class action statutes of Kansas, K.S.A. 60-223 et seq., are patterned after the

Federal Rules of Civil Procedure 23 and the decisions of the federal courts interpreting that rule

are traditionally followed in this jurisdiction.  Brueck v. Krings, 6 Kan. App. 2d. 622.

      In considering a matter for class action certification the Court has no authority to

conduct a preliminary inquiry into the merits of a suit in order to determine as to whether or not

it should be maintained as a class action.  Eisen v. Carlisle and Jacqueling, 417 U.S. 156.

It is fundamental law that a trial court must be afforded substantial discretion in its decision making process as to whether or not to maintain an action as a class action. Connolly v. Frobenius, 2 Kan. App. 2d. 18.

Courts in determining if a matter is suitable to be maintained as a class action, generally take the allegations of the Plaintiffs' Petition as true, and the courts apply their common sense to those allegations.

The determination of a class action is procedural in nature and has nothing to do with whether or not a party will prevail upon the merits. Winters v. Kansas Hospital Service Association, Inc., 1 Kan. App. 2d. 64.

As to the first requirement, that being numerosity under K.S.A. 60-223(a), there can be no serious claim that this case is not certifiable as a class action for numerosity.

The party seeking class certification need not show the exact size of the class and the Court can use and rely upon its own common sense to reach a determination upon the requirement of numerosity.

The Plaintiff has satisfied this Court that the proposed class, those persons purchasing cigarettes in Kansas, are too numerous to join in a single action without class certification.

Likewise, to require each aggrieved person to prosecute individual actions against one or more of the Defendants would amount to an absurdity.

The requirement of commonality under K.S.A. 60-223(a)(2) requires a determination that there are questions of law or fact common to the class.

The commonality requirement permits varying factual situations among various individual members of the class, just so long as the claims of the named plaintiff and other class

members are based upon the same legal theory.  There need be only one common issue to all members of the class and either a common question of law or a common question of fact is sufficient.  Shutts v. Phillips Petroleum Company, 235 Kan. 195.

The commonality requirement is to be liberally construed.  Gray v. Amoco, 1 Kan. App. 2d. 338.

To justify a class action, the question must be one of common or general interest to the members of the proposed class and the cause of action must affect all parties attempted to be included as a class, and the proposed class member must have complaints and rights to relief common to all.  Felten Truck Line, Inc. v. State Board of Tax Appeals, 183 Kan. 287.

It is the claim of the Plaintiffs that they are filing this action on behalf of all persons who indirectly purchase cigarettes in the state of Kansas for consumption and not for re-sale from any of the Defendants or their subsidiaries or affiliates.

It is clear that the same legal theory would apply to a right of recovery of all proposed class members if proven.  The legal theory that is common to all class members is whether or not the Defendants entered into a conspiracy or agreement and, in fact, did fix, maintain, stabilize or control the price of cigarettes they manufactured and sold for ultimate resale to consumers.  There is a common question of fact that is common to all members of the proposed class, that being whether or not the Defendants and their co-conspirators agreed to fix, maintain, raise or stabilize the prices of cigarettes that they manufactured for sale through various jobbers or wholesalers.  Additionally, common issues of fact are whether or not the agreement was ever implemented by the parties, if, indeed, it existed, and whether or not the conspiracy restrained commerce in any manner in the State of Kansas.  There are several other common questions of fact in this action that apply to all of the proposed class members.

Page 4

The Defendants appear to claim that there is no common question of law or fact among the proposed class members.

The Defendants argue against class certification because they claim that each proposed class member that purchased cigarettes did so by paying different prices and, therefore, each member of the proposed class would be entitled to a different amount of relief from the Defendants.

The Plaintiff claims that the proposed class would be entitled to damages based upon the full consideration paid to retailers for cigarettes manufactured and placed in the stream of commerce by the Defendants.

It is this full consideration claim for damages that the Defendants' claim destroys the commonality of K.S.A. 60-223(a)(2) and also the predominance requirement under K.S.A. 60-223(b)(3).

This Court considers the full consideration paid for the cigarettes at retail to be a measure of damage and not a common question of law or fact as to whether or not the Defendants entered into a conspiracy to fix, raise, or maintain the price of the cigarettes they manufactured and sold to their distributors.

The common claim that is common to the class representative and the proposed class members is that there was a conspiracy by the Defendants to fix, raise, or stabilize the price of cigarettes in violation of Kansas Anti-Trust Laws. Proof of a conspiracy and its affect are the same upon the class representative as the proposed class members.

The requirement under K.S.A. 60-223(a)(3) is that of typicality. The question here becomes whether or not the claims of the class representative are typical of the claims of the proposed class.

Page 5

It is clear to this Court, and there seems to be no serious question in this proceeding, that the claims of the class representative are typical of that of the proposed class members. The Plaintiff's claim is typical if it arises from the same event or practice of conduct that would give rise to the claims of the other class members and if those claims are based on the same legal theory. A conspiracy to raise, fix or maintain the price of goods in commerce, when that conspiracy acts to raise, fix, or maintain the price of those goods when purchased at retail creates typicality between class representative and the members of the proposed class.

The class representative is a person who claims that he has purchased cigarettes in the State of Kansas for consumption and not for resale from one or more of the Defendants or their subsidiaries or affiliates.

Clearly, the claims of the class representative are typical of those of the proposed class members.

There is no showing by the Defendants that a conflict exists between the position of the class representative and the proposed class themselves. Hemley v. Ashland Oil, 1 Kan. App. 2d. 532.

The adequacy of representation under K.S.A. 60-223(a)(4) requires a determination as to whether the representative plaintiff will fairly and adequately protect the interest of the proposed class.

Adequacy means whether or not the class representatives have interests that conflict with the other members of the proposed class or not and whether the class representative's legal counsel are qualified to prosecute the action.

Page 6

What constitutes adequate representation in a class action is a question of fact to be determined by the trial court based upon the circumstances of each case.  Shutts v. Phillips Petroleum Company, 235 Kan. 195.

The Court has reviewed the submissions by the Plaintiff and counsel for the Plaintiff and finds that the Plaintiff has no interests which are antagonistic to the proposed class with respects to the claims that are asserted in this case.   Furthermore, the Court finds that counsel for the Plaintiffs are experienced and qualified to prosecute this litigation.

The affidavit submitted by counsel for the Plaintiff have been reviewed by the Court and the Court is convinced of the adequacy of representation.

This Court finds that all of the requirements of K.S.A. 60-223(a)(1 through 4) have been met by the Plaintiff in this proceeding.

It is the further claim of the Plaintiffs in this proceeding that the requirements of K.S.A. 60-223(b)(3) have been met.

The Defendants dispute the claim of the Plaintiffs that the Plaintiffs have made in meeting the requirements of K.S.A. 60-223(b)(3).

The Defendants stress to the Court that there is a unique complexity in the business of the Defendants that makes it impossible for the Plaintiffs to satisfy the requirements of the predominance of common questions of fact or law to the members of the class that predominate over questions affecting only individual members of the class.

It is the requirement of K.S.A. 60-223(b)(3) that before class certification can be granted, the court must find that questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Page 7

The Defendants show to the court that it is the business of these Defendants to manufacture cigarettes which in turn they sell to wholesalers or jobbers who in turn sell to sub-jobbers, who in turn sell the same cigarettes to the retailers from whence they are purchased by the consumers who are the proposed members in this proceeding.

The Defendants point out that there are many things in their industry which are unique in the method of sales from the Defendant manufacturers to the next level for the distribution of cigarettes.

There are sales considerations, promotions, price reductions based on volume, which are in turn passed on by the first level of wholesaler to the next level and at each succeeding level down to the retailers who often pass on or do not pass on, whatever the case may be, these promotions or discounts to the consumers.

It is the primary argument of the Defendants that consumers pay a variety of prices for the cigarettes they have purchased and consumed in Kansas.

The Defendants point out that during the class period the prices paid by the proposed class members for cigarettes have varied widely.  The retail prices differ depending on what discounts or promotions were affecting the price of the cigarettes at any particular time.

The Defendants claim, and the Plaintiffs do not dispute, that the Defendants did not and could not control the retail pricing of cigarettes offered by the retailers because of the price competition engaged in by retailers.

In the Defendant's proposition to this Court that the questions of law or fact common to the members of the class do not predominate over questions affecting only individual members is premised upon the claim by the Defendants that since each consumer or each

member of the proposed class could have paid a different price for the cigarettes consumed, the questions affecting only individual members predominate over those of the class members.

The Court does not accept this proposition.

What the Defendants are talking about are damages.

The very existence of a conspiracy is an issue that is common to all members of the proposed plaintiff class.  In other words, this Court finds that if a conspiracy to control pricing by the Defendants that had the affect of increasing, stabilizing or maintaining the price that the Defendant sold their cigarettes to in the initial step of placing the product into commerce for later and ultimate purchase and consumption by the proposed class is proven then that is a common issue to each class member.

There is but a single conspiracy claimed by the Plaintiffs in this case and if it is proven, it affects all of the proposed class members equally.

In addition to proving the conspiracy existed, the proof will necessitate that of implementation of the conspiracy.

The damages the Plaintiffs will be bound to prove is that damage was inflicted upon the class by the price fixing conspiracy.

As to the damages, it is not required at class certification that the Plaintiff prove their case, but only present a logical, reasonable method for determining the damages of the entire class.

This Court finds that the requirements of K.S.A. 60-223(b)(3) are clearly satisfied by the submissions of the Plaintiffs.  The Court is convinced that the questions of law or fact that are common to the member of the class predominate over any questions of law or fact affecting

Page 9

only individual members and that a class action is clearly superior as a method of adjudicating the fair and efficient controversy that exists.

This Court finds as a matter of law that the Plaintiff has satisfied the requirements of K.S.A. 60-223(a) of numerosity, commonality, typicality and adequate representation and the requirements of K.S.A. 60-223(b)(3) of predominance and superiority and, therefore, it is the finding and order of this Court that the motion for class certification shall be and is hereby granted.

IT IS, THEREFORE, ordered, adjudged, and decreed that the Plaintiff's Motion for Class Certification pursuant to K.S.A. 60-223 is sustained and the class is defined as follows:

"All natural persons who indirectly purchased cigarettes in the State of Kansas for consumption and not for resale from any of the Defendants, or any parent, subsidiary or affiliate thereof or their co-conspirators at any time from November 1, 1993 to the present."

IT IS FURTHER ORDERED that the Plaintiff shall give notice of this class certification to all interested parties in the manner as provided by law.

IT IS SO ORDERED.

Dated this 15th of November, 2001.

Tom R. Smith, District Court Judge

Page 10

## CERTIFICATE OF SERVICE

I, Renata McCulloch, hereby certify that I mailed a true and correct copy of the above Journal Entry by United States mail, postage prepaid and properly addressed on the 15th day of November, 2001 to:

| | |
|---|---|
| Kerry McQueen<br>Attorney at Law<br>P.O. Box 2619<br>Liberal, KS 67905-2619 | Isaac L. Diel<br>Attorney at Law<br>1600 Genessee Street, Ste. 356<br>Kansas City, MO 64102 |
| Rex A. Sharp<br>Attorney at Law<br>4121 W. 83rd St., Ste. 256<br>Prairie Village, KS 66208 | Debra Egli James<br>Attorney at Law<br>P.O. Box 1247<br>Salina, KS 67402-1247 |
| Larry B. Spikes<br>Attorney at Law<br>100 N. Broadway, Ste. 500<br>Wichita, KS 67202-2205 | Daniel H. Diepenbrock<br>Attorney at Law<br>P.O. Box 2677<br>Liberal, KS 67905-2677 |
| Jeff P. DeGraffenreid<br>Attorney at Law<br>100 N. Broadway, Ste. 700<br>Wichita, KS 67202 | David J. Rebein<br>Attorney at Law<br>P.O. Box 1147<br>Dodge City, KS 67801 |
| James A. Walker<br>Attorney at Law<br>2959 N. Rock Road, Ste. 300<br>Wichita, KS 67226 | James R. Eiszner<br>Attorney at Law<br>1200 Main Street, 42nd Floor<br>Kansas City, MO 64105-2118 |

and the original to:

Rhonda Truhlar
Clerk of the District Court
415 N. Washington, Ste. 103
Liberal, KS 67901

Renata McCulloch, Admin. Asst.

Page 6

# EXHIBIT 16

**IN THE DISTRICT COURT OF WYANDOTTE COUNTY, KANSAS**
**CIVIL COURT DIVISION**

2006 MAR 10  PM 4: 16

|  |  |
|---|---|
| IN RE VITAMIN ANTITRUST LITIGATION | ) )  ) |
|  | ) |
| CANDACE TODD, on behalf of herself and all others similarly situated, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) |
| F. HOFFMAN-La ROCHE, LTD., et al., | ) ) ) |
| Defendants. | ) ) |

DISTRICT COURT
___ __ ___ COUNTY KANSAS

BY _____ DEPUTY

Master Case No. 98-C-4574
Honorable Ernest L. Johnson
Division 5

Relates to the following class cases:
*Beef Belt Feeders, Inc., et al. v. F. Hoffman-LaRoche, et al., CV-00-C-01 (Scott County)*
*Premier Pork, Inc. v. F. Hoffman-LaRoche, CV-00-C-04 (Scott County)*
*Grain Sorghum Hogs, Inc. v. Lonza Inc., et al., CV-00-C-21 (Scott County)*
*Premier Pork, Inc. v. Nepra Inc., et al., CV-00-C-14 (Scott County)*

**JOURNAL ENTRY FOR CLASS CERTIFICATION OF A CHOLINE**
**CHLORIDE CLASS AGAINST DEFENDANTS DUCOA AND DCV**

On March 2, 2006, Plaintiffs' motion for class certification filed January 9, 2006,

came on for a hearing by agreement of the parties. Robb King appeared on behalf of

Defendants DCV, Inc. and DuCoa, L.P. (hereafter "Defendants"). Rex A. Sharp

appeared on behalf of Plaintiffs. Over Defendants' objection, the Court finds that,

pursuant to K.S.A. 60-223, class certification is appropriate.

Specifically, the Court finds and concludes for purposes of class certification as

follows:

1. <u>Class Definition</u>:  The certified class shall be defined as:

> All natural persons and business entities (whether as sole
> proprietorships, partnerships, corporations or other business
> organizations) in the State of Kansas who indirectly
> purchased, not for resale, choline chloride or products

containing choline chloride in the State of Kansas to use as
an animal feed additive (excluding pet food) from 1988 and
to the December 31, 1998 ("the Class Period").

Choline chloride products means (1) B4 (choline chloride); (2) choline chloride animal
feed premixes containing and/or incorporating such choline chloride; and (3) other
choline chloride products containing and/or incorporating such choline chlorides sold to
Plaintiffs and other purchasers in the State of Kansas.

2.  Numerosity: Under K.S.A. 60-223(a)(1), the Class members are so numerous and
dispersed throughout the State that joinder of all members in one lawsuit would be
impractical. Kansas law suggests that 20-30 class members, especially if dispersed
throughout the State, is sufficient for numerosity. Shupbach v. Continental Oil Co., 193
Kan. 401, 394 P.2d 1, 5(1964) (allegation of 23 class members sufficient); Shutts v.
Phillips Petro. Co., 222 Kan. 527, 567 P.2d 1292, 1315(1977) (Shutts I) (citing a case for
certification with less than 30 participating members); Sternberger v. Marathon Oil Co.,
257 Kan. 315, 894 P.2d 778, 807 (1995) (38 subclass members). "A reasonable estimate
of the number of class members who may be involved is sufficient. .... A court can use
its common sense to reach its determination." Bellinder v. Microsoft Corp., 2001 WL
1397995, *1 (Sept. 7, 2001) (citations omitted). The Class, with membership numbering
in the hundreds of feedlots, easily fulfills the numerosity requirement.

3.  Commonality: Under K.S.A. 60-223(a)(2), there are questions of law and/or questions
of fact which are common to the Class and the class members if the case were tried·
individually by class members. "There need only be a single issue common to all
members of the class." Bellinder, 2001 WL 1397995 at *2 (citing Shutts v. Phillips
Petroleum Co., 235 Kan. 195, 212, 679 P.2d 1159 (1984) (Shutts II) ("couched in the

2

disjunctive common question of fact or law.  It does not, therefore, require the presence

of both a common question of fact and a common question of law.")).  "The commonality

requirement permits varying factual situations among individual members of the class so

long as the claims of the named plaintiffs and other class members are based on the same

legal or remedial theory." Id. at *2.  Class members would assert the same Kansas

antitrust legal theory. In addition, courts have almost uniformly embraced the position

that price fixing conspiracy cases allege claims unquestionably common to all putative

class members.  In re Corrugated Container Antitrust Litigation, 80 F.R.D. 244, 247 (S.D.

Tex. 1978).

In this case, evidence regarding the following issues is common to all members of

the Class: (1) whether Defendants agreed to fix and raise prices for choline chloride

products; (2) whether proof of the first issue in prior criminal or civil suits constitutes

collateral estoppel in this case, and (3) whether those higher prices impacted the prices

paid by class members. While the liability question of (1) alone is usually sufficient to

certify the class, there are other common issues in this case. This requirement is plainly

satisfied.

3.  Typicality: Under K.S.A. 60-223(a)(3), the Plaintiffs' claims are typical of the claims
of the Class.

The typicality criterion focuses on whether there exists a relationship
between the Plaintiffs' claims and the claims alleged on behalf of the class.
As with the commonality requirement, the claims or defenses need not be
identical. In re Aluminum Phosphide Antitrust Litigation, 160 F.R.D. 609,
613 (D.Kan.1995). Differences in the methods of purchase, kinds of
products purchased among class members, and difference in price, as
Microsoft asserts here, have been held not to bar a finding of typicality.
Id.; In re Catfish Antitrust Litigation, 826 F.Supp. 1019, 1036-1037
(N.D.Miss.1993). A plaintiff's claim is typical if it arises from the same
event or practice or course of conduct that gives rise to the claims of other

3

> class members, and his or her claims are based on the same legal theory....
> What is important as far as typicality is concerned is that the named
> Plaintiffs and the rest of the class members "share common objectives and
> legal or factual positions." Shutts, 235 Kan. at 208, 679 P.2d 1159.
> The overriding considerations typifying many antitrust claims are the need
> to prove that there is a conspiracy to fix prices in violation of the antitrust
> laws, that the prices are fixed pursuant thereto, and that the Plaintiffs
> purchased products at prices which, as a result of the conspiracy, were
> higher than they should have been.

Bellinder, 2001 WL 1397995 at *3-4 (citations omitted). The typicality requirement

focuses on the class representative's claims..., not on the defendant's defenses against the

class representative. Id. at *3 (citation omitted). The factual and legal claims of Plaintiffs

are the same as for the Class. Both will have to prove that a price fixing conspiracy

existed, that Defendants were part of it, and that the conspiracy was effective in raising

Kansas prices for choline chloride.

4.   Adequacy:  Under K.S.A. 60-223(a)(4),  Plaintiffs, Premier Pork, Inc.[1], Grain

Sorghum Hogs Inc., and Beef Belt Feeders, Inc., are adequate class representatives for

the Class. "The law does not require a named plaintiff be the perfect class member, or

even the best available." Heimley v. Ashland Oil, Inc., 1 Kan. App.2d 532, 537, 571

P.2d 345 (1977). A "plaintiff cannot be an adequate representative if he or she has a

conflict of interest with class members [that goes] to the heart of the litigation....

Conflicts which have resulted in a finding of inadequacy include competition between

class members and the existence of business negotiations between class members and the

defendant." Bellinder, 2001 WL 1397995 at *4. No such conflicts have been shown

here. Plaintiffs' Lead Counsel, Gunderson, Sharp & Walke, LLP and The Law Offices of

---

[1] Premier Pork, Inc. has been found adequate before in the Kansas antitrust class action
involving methionine, which after class certification and extensive discovery, was settled
and payment made to class members.

4

issue 1.. Dick are adequate class counsel. Indeed, they are responsible for half of the

contested class certification orders under Kansas antitrust law, as well as a few of the

settled classes. Adequacy is met.

5. Predominance: Under K.S.A. 60-223(b)(3), common questions of law and/or fact for

the Class predominate over any questions affecting only individual Class members.

> Where there is a central or overriding issue or a common nucleus of
> operative facts, the predominance test is satisfied...Again, the issues of
> conspiracy, monopolization and conspiracy to monopolize have been
> viewed as central issues which satisfy the predominance requirement...
> [2]Individual damage questions do not ordinarily preclude a (b)(3) class
> action when the issue of liability is common to the class... Courts have
> repeatedly focused on the liability issues, in contrast to damage questions,
> and, if they found issues were common to the class, have held that the
> requirements of (b)(3) are satisfied.

Bellinder, 2001 WL 1397995 at *5 (citations omitted).

But here, not only will the liability issue be predominantly, if not exclusively,

common, but so will proving causation/impact. In Bellinder, the same expert as here

proposed using a common proof method to prove impact of the higher prices on the class:

> Plaintiffs' expert, Dr. Keith B. Leffler, Ph.D., opines the fact and amount
> of antitrust injury can be proved as to each individual class member
> utilizing common proof, and that any overcharge paid by class members
> can be accurately estimated using basic economic principles. Leffler
> Affidavit at ¶ 5. For instance, Dr. Leffler cites to economic literature for
> the proposition that in a market with no close substitutes (as Plaintiffs
> contend here with the operating system market), some increase in price or
> overcharge is almost always passed on to the end-user. Leffler Affidavit at
> ¶ 8. Therefore, Plaintiffs claim that at least the *fact* of injury can be shown
> with some certainty.

Id. at *6.  Dr. Leffler proposes to do the same thing in this case. His methodology and

---

[2] "[P]redominance [of common issues] is a test readily met in certain cases . . . involving
violations of antitrust laws." Amchem, 521 U.S. at 625.  See also Newberg on Class
Actions § 18.28 at 18-98, 99 ("As a rule, the allegation of a price-fixing conspiracy is
sufficient to establish predominance").

economic analysis for class certification was also relied on by the court in Premier Pork,
Inc. v. Rhone-Poulenc, S.A., et al. Case No. 00-CV-3. Scott County District Court
(Judge Tom Richardson certified a contested class of indirect purchasers of methionine,
an amino acid in livestock feed). His method is more than sufficient.

Finally, though not necessary for class certification, id. at *7, Dr. Leffler also proposes to
use common proof to show the amount of damages to the Class, much as he did in
Bellinder and Premier Pork:

> Dr. Leffler concludes that the *amount* of antitrust injury can be calculated
> using standard, yardstick methodologies. He proposes doing this by
> measuring the difference between the price a Kansas end-user paid for
> Microsoft's WINDOWS software and the price they would have paid
> absent Microsoft's alleged unlawful conduct. Leffler Affidavit at ¶ 12.
> This "but-for" price can be ascertained by using any one of three
> yardsticks: the comparable market yardstick, the competitive margin
> yardstick, and the violation-free-period yardstick. Leffler Affidavit at ¶ 12.
> Under the comparable market yardstick, one would compare the prices
> charged for WINDOWS to the price of products from a comparable
> market not affected by anticompetitive activity. ...By subtracting the price
> the Kansas consumer paid for WINDOWS from the but-for price, Leffler
> is able to calculate the amount of any overcharge; and consequently, the
> amount of antitrust injury.
> Next, Leffler proposes using the competitive margin yardstick. Using this
> method, one compares the margins earned by sellers in a comparable
> market free from antitrust violations to the margins earned by sellers in the
> alleged anticompetitive market. ...
> Finally, Leffler proposes using the violation-free-period yardstick. Under
> this theory, one compares the price of WINDOWS being charged during
> the alleged anti-competitive time period with the price of WINDOWS
> being charged during a period free of anti-competitive conduct.

Bellinder, 2001 WL 1397995 at *6. The same common methods of proof can be used
here. Indeed, it may be easier and more common in this case because Kansas allows the
"full consideration" or "price paid" damages to be awarded for an antitrust violation.

K.S.A. 50-115.

6

Often Defendants offer a counter-expert, but none was presented here. Had it been, it would have been of no consequence because class certification is not the place to resolve a "battle of the experts", rather that is for the jury to determine. Id. at *7. The common factual and/or common legal issue for the Class predominate over issues related only to individual to class members, if there are any.

6. Superiority: Under K.S.A. 60-223(b)(3), a class action is a superior means for protecting the interests of all of the Class members and superior to all other available methods for the fair and efficient adjudication of this controversy. No other alternative to a class action has been suggested to actually determine these issues for the Class, and none appear to exist. See Bellinder, 2001 WL 1397995 at *8 (finding that class member damages would be too small relative to the cost of pursuing an individual lawsuit that "as a practical matter no rational person would bring the action except as a member of a class"). A class action is the superior, if not the only, way to adjudicating the rights of the class members.

7. Kansas Class Certification Orders: Kansas courts have certified _every contested_ indirect purchaser class action brought to date. Daric Smith v. Philip Morris et al., Case No. 00-CV-26, Seward County District Court (Judge Tom Smith certified a contested class of cigarette consumers from 1993-January 2002); Bellinder v. Microsoft Inc., 2001 WL 1397995, Case No. 99 CV 17089, Johnson County District Court (Judge Lawrence Sheppard certified a contested class of indirect purchasers of a Microsoft operating system); Donelan v. Abbott Laboratories, Inc., Case No. 94-C-709, Sedgwick County District Court (Judge Paul Buchanan certified a contested class of indirect purchasers of infant formula)(tried to a jury, defense verdict); Chance v. UST, (Judge Kim Schroeder

certified a contested class of indirect purchasers of moist snuff); Hall v. Leegin Creative
Leather Products, Case No. 04-CV-1668, Sedgwick County District Court (Court
certified a contested class of indirect purchasers of Brighton products); Premier Pork, Inc.
v. Rhone-Poulenc, S.A., et al,. Case No. 00-CV-3, Scott County District Court (Judge
Tom Richardson certified a contested class of indirect purchasers of methionine, an
amino acid in livestock feed).[3]

IT IS HEREBY ORDERED that Plaintiffs satisfy the requirements of numerosity,
commonality, typicality, adequate representation, predominance and superiority under
K.S.A. 60-223 and that their motion for class certification should be and is granted.

IT IS FURTHER ORDERED that Plaintiffs shall give notice of this class
certification to interested persons in the manner and as provided by law.

IT IS FURTHER ORDERED that pursuant to K.S.A. 60-216(b), counsel of record for
Plaintiffs and Defendants convene a case management conference and prepare a case
management order for the Court's approval. The court will reserve setting a date for trial
until a discovery schedule has been established.

---

[3] Numerous other Kansas indirect purchaser cases have been certified as settlement
classes. An example of this is the recent Sorbates Indirect Purchaser case of Williams
Foods v. Eastman Chemicals, 2001 WL 1298887, Case No. 99C16680 District Court of
Johnson County, Kansas (Aug. 8, 2001) (sorbates indirect purchaser class); Premier Pork,
Inc. v. Rhone-Poulenc, S.A., et al., Case No. 00-CV-3, Scott County District Court
(Judge Robert J. Frederick, Jan. 31, 2006); and this case for various vitamin purchases on
April 3, 2002. Amchem Products, Inc. v. Windsor, 521 U.S. 591, 620, 117 S.Ct. 2231,
138 L.Ed.2d 689, 710 (1997), holds that a settlement class certification and a contested
class certification are the same except for "trial manageability" since with a settlement
there is no trial. Trial manageability is not a problem here as the choline chloride
antitrust case has already been tried to a jury in federal court. See verdict against DuCoa
and DCV in Animal Science Products Inc. v. Chinook Group, Ltd., MDL 1285 (June 13,
2003).

8

Ordered: March ___, 2006.

Ernest L. Johnson
District Court Judge

9

# EXHIBIT 17

FIRST JUDICIAL DISTRICT COURT
STATE OF NEW MEXICO
COUNTY OF SANTA FE

NO. D-0101-CV-2000-1697

ENDORSED
First Judicial District Court

OCT 0 2 2002

Santa Fe, Rio Arriba &
Los Alamos Counties
PO Box 2268
Santa Fe, NM 87504-2268

IN RE: NEW MEXICO INDIRECT PURCHASERS
MICROSOFT CORPORATION ANTITRUST LITIGATION

## DECISION AND ORDER ON MOTION FOR CLASS CERTIFICATION

THIS MATTER came on for hearing on the 1st and 2nd day of July 2002 on a

MOTION FOR CLASS CERTIFICATION before the HONORABLE DANIEL A, SANCEZ,

Judge of the First Judicial District, State of New Mexico, Division VII.

The Plaintiffs, NEW MEXICO INDIRECT PURCHASERS, appeared by Counsel of

Record, THOMAS M. HNASKO, Attorney at Law, JOSEPH ARSHAWSKY, Attorney at Law,

DANIEL A SMALL, Attorney at Law, and WILLIAM MARKOVITS, Attorney at Law.

The Defendant, MICROSOFT CORPORATION, appeared by Counsel of Record,

LESLIE MCCARTHY APODACA and THOMAS A. OUTLER, Attorneys at Law, CHARLES

B. CASPER and PETER BRESLAUER,  Attorneys at Law.

This Motion was brought before this Court for Class Certification pursuant to

NMRCP 1-023 NMSA 2002, and more specifically Sections A and B (3) which provide, inter

alia:

A.      Prerequisites to a Class Action.  One or more members of a class may

sue or be sued as representative parties on behalf of all only if:

(1)   the class is so numerous that joinder of all members is impracticable;

(2)   there are questions of law or fact common to the class;



(3)   the claims of defenses of the representative parties are typical of the claims or defenses of the class; and

(4)   the representative parties will fairly and adequately protect the interests of the class.

B.      Class Actions Maintainable.   An action may be maintained as a class action if the prerequisites of Paragraph A of this rule are satisfied, and in addition: . . .

(3)   the Court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  The matters pertinent to the findings include:

(a)   the interest of members of the class in individually controlling the prosecution or defense of separate actions;

(b)   the extent and nature of any litigation concerning the controversy already commenced by or against member of the class;

(c)   the desirability or undesirability of concentrating the litigation of the claims in the particular forum;

(d)   the difficulties likely to be encountered in the management of a class action.

The Court deems that before allowing a case to proceed as a class action, the Court needs to make the necessary factual and legal inquiries under this rule.

The Court agrees with the Plaintiffs' that the appropriate inquiry here is whether or not the Plaintiffs' can show a plausible method to prove impact and damages on a class wide basis and liability is not an issue in this class certification proceeding.

In considering class certification, once damage in fact or impact is shown, New Mexico law does not require the amount of damages be proven at the class certification stage of the proceedings.

The fact that the measure of damages is the subject of disputed and conflicting expert testimony, does not diminish the fact that common impact has occurred and this is not a basis for denying certification at this stage.

A class action suit is the only affective method of providing relief under the New Mexico antitrust laws for purchasers with relatively small damages such as here.

The Court has employed the "rigorous analysis" that it must employ.

The Court, at this stage of the proceedings, is to determine only if Plaintiffs' methodology is plausible.

It is the Court's opinion that In Re Potash Antitrust Litigation 159F.R.D. 882, states the proper standard by which this Court should determine the appropriateness of certification of the class:

Plaintiffs' do not need to supply a precise damage formula at the certification stage of antitrust action. Instead, in assessing whether to certify a class, the Court's inquiry is limited to whether to certify a class, the Court's inquiry is limited to whether or not the proposed methods are so insubstantial as to amount to no method at all . . . . The fact that the damages calculation may involve individualized analysis is not by itself sufficient to preclude certification when liability can be determined on a class-wide basis.

Plaintiffs' have put forward a plausible method for determing damages on a class-wide basis.

Dr. Leffler, the Plaintiff's expert, acknowledged that it may be time-consuming to apply, on a class-wide basis his method for proving impact and damages in this case, but as Dr. Leffler testified, the fact that the method is difficult, requiring significant time

and effort, does not mean that the methodology is not workable. Dr. Leffler demonstrated that there are plausible methods for measuring the overcharge.

Plaintiffs' have offered a standard and accepted economic methodology for estimating the amount of pass-on of any Microsoft overcharges. The record before the court shows that Plaintiffs' have proposed standard accepted economic techniques for estimating pass-on changes and while they agree on the difficulty of performing such a regression analysis, there is no disagreement as to the validity of the proposed methodology. Dr. Leffler testified that in his opinion the Plaintiffs have the data sufficient to calculate an aggregate damages amount at trial.

The Court has options available should Plaintiffs' ultimately not be able to prove impact and damages on a class-wide basis. The Court can alter or amend the class certification order at any time or even decertify the class if Plaintiffs' are ultimately unable to prove impact and damages. The Court also retains the ability to grant a motion for directed verdict following Plaintiffs' case-in-chief if Plaintiffs' fail to prove their case.

Defendant Edward's, has shown his interest in this case to the court's satisfaction. The loss of his option is a sufficient interest to warrant a claim as a class representative.

Windows NT purchasers should be excluded from the operating system class definition, and the starting date for the Word and Excel class should be adjusted forward to August, 1995.

The Court concludes that Certification of a Class of New Mexico Indirect Purchases of Microsoft Products is proper and the request to dismiss Defendant Edward's as a class representative is denied.

        IT IS SO ORDERED.

Dated this 30th day of September 2002.

                            DANIEL A. SANCHEZ

                            DANIEL A. SANCHEZ, District Judge

Notices sent on date of filing:

Leslie McCarthy Apodaca, Esq..
Thomas Outler, Esq.
RODEY, DICKASON, SLOAN, AKIN & ROBB, P.A.
201 Third Street NW, Suite 2200
Albuquerque, NM 87102

David B. Tulchin
Michael Lacovara
SULLIVAN & CROMWELL
125 Broad Street
New York, NY 10003

Charles Casper, Esq.
MONTGOMERY, McCRACKEN, WALKER & RHOADS, LLP
123 South Broad Street
Philadelphia, PA 19109

Steve W. Berman, Esq.
HAGENS BERMAN
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101

Thomas W. Burt, Esq.
Richard Wallis, Esq.
Steven J. Aeschbacher, Esq.
MICROSOFT CORPORATION
One Microsoft Way
Redmond, WA 98052

Thomas Hnasko, Esq.
Jeffrey L. Fornaciari, Esq.
HINKLE, HENSLEY, SHANOR & MARTIN, LLP
P.O. Box 2068
Santa Fe, NM 87504-2068

Marshall G. Martin, Esq.
HINKLE, HENSLEY, SHANOR & MARTIN, LLP
500 Marquette Avenue, NW, Suite 800
Albuquerque, NM 87102

David A. Freedman, Esq.
Joseph Goldsberg, Esq.
Susan G. White, Esq.
FREEDMAN, BOYD, DANIELS,
HOLLANDER, GOLDBERG & CLINE
20 First Plaza, Suite 700
Albuquerque, NM 87102

Leonard B. Simon, Esq..
Robert J. Gralewski, Jr.Esq.
MILBERG, WEISS BERSHAD HYNES & LERACH LLP
600 West Broadway, Suite 1800
San Diego, CA 92101

Joseph Arshawsky, Esq.
PROVOST, UMPHREY, L.L.P.
YOUNGDAHL, SADIN, P.C.
9621 Fourth Street, N.W.
Albuquerque, NM 87114

# EXHIBIT 18

**RECEIVED**

OCT 2 1 2003

THE FURTH FIRM LLP

STATE OF SOUTH DAKOTA                                          IN CIRCUIT COURT

COUNTY OF HUGHES                                          SIXTH JUDICIAL DISTRICT

| | | |
|---|---|---|
| VICKI HAGEMANN, | ) | CIV. NO. 94-221 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER GRANTING** |
| | ) | **CLASS CERTIFICATION** |
| ABBOTT LABORATORIES, INC., | ) | |
| BRISTOL-MYERS SQUIBB CO., and | ) | |
| MEADE JOHNSON & CO. | ) | |
| | ) | |
| Defendants. | ) | |

THIS MATTER having come before the Court on October 20, 1995 upon plaintiff's Motion

for Class Certification, the parties having submitted memoranda regarding same, and the Court having

considered the arguments of counsel, the legal memoranda and other pertinent documents and being

fully advised herein; now, finds, for reasons more fully stated in the Findings of Fact and Conclusions

of Law attached hereto, that the requirements of SDCL 15-6-23(a) and (b) have been satisfied and

that the class shall be certified.  Therefore,

IT IS HEREBY ORDERED that the class shall be certified as follows:

All persons who, at any time from January 1, 1980 through December
31, 1992 purchased infant formula in the state of South Dakota
indirectly from Abbott Laboratories, Bristol-Myers Squibb Co., and/or
Mead Johnson & Co., except for infant formula sold under the Gerber
brand name, for consumption by an infant and not for resale.

Further, IT IS ALSO ORDERED that Plaintiff Vicki Hagemann is a suitable representative

for the above-named class and shall be the Class Representative in this action.

Dated: _NOV. 21,_ 1995

STATE OF SOUTH DAKOTA
CIRCUIT COURT, HUGHES CO.,
F I L E D

NOV 2 1 1995

JAMES W. ANDERSON
Circuit Court Judge

classcer.ord/long

Mary L. Erickson CLERK
By _____ Deputy

# EXHIBIT 19

IN THE FIFTH CIRCUIT COURT FOR DAVIDSON COUNTY, TENNESSEE

FILED

2002 DEC 20  PM 4: 28

RICHARD R. ROOKER, CLERK

D.C.

DANIEL SHERWOOD, ET AL,       )
                               )
        Plaintiff,             )
                               )
vs.                            )
                               )      NO. 99C-3562
MICROSOFT CORPORATION, ET AL, )       (CLASS ACTION)
                               )
        Defendants.            )      RECD DEC 2 7 2002

MEMORANDUM AND ORDER

This case is before the Court for the second time on plain-
tiffs' motion for class certification.   More specifically, the
plaintiffs have moved this Court for an order allowing this case to
proceed as a class action pursuant to T.R.C.P. 23.01 and 23.02(3)
on behalf of the following class:

> All persons or entitles in the State of Tennessee who
> purchased for purposes other than resale or distribution
> during the last four years, Intel comparable PC operating
> systems licenced by Microsoft.   The class excludes
> defendants and their coconspirators, their subsidiaries,
> affiliates, officers and employees, and governmental
> entities.

The plaintiffs contend that the class is sufficiently numerous to
make joinder impractical, there are questions of law and fact
common to the class, the claims and defenses of plaintiffs are
typical of the class and plaintiffs will fairly and adequately
represent the class.   T.R.C.P. 23.01.   The plaintiffs also assert
that the proposed class is maintainable because questions of law
and fact common to the class predominate over any issues affecting

individual class members.  T.R.C.P. 23.02(3).  Opposing class
certification, the defendant, Microsoft, asserts that because of
the number of different Microsoft operating systems distributed
through varying distribution channels, and the fact that price
increases, even if they exist, often are not passed on to the
ultimate customer, it is impossible to prove a detrimental impact
to the class, or measure of damage to the individual consumer.
According to Microsoft, the plaintiffs have failed to show this
Court that common questions predominate over individual ones and
therefore this Court cannot find that a class action is superior to
other available methods for the fair and efficient adjudication of
this controversy.  T.R.C.P. 23.02(3).

The complaint in this case alleges illegal monopolization of
the computer systems market and unfair and anti competitive conduct
in violation of the Tennessee Trade Practices Act (TTPA), T.C.A. §
47-25-101 et seq. and the Tennessee Consumer Protection Act (TCPA),
T.C.A. § 47-18-101 et seq.  While this case alleges only state
causes of action it is one of a number of cases which may be said
to ride piggy back on United States v. Microsoft Corporation and
where, the plaintiffs remind this Court, Judge Jackson found
Microsoft's conduct had "harmed consumers in ways that were
immediate and discernible."  84 F.Supp.2d 1, 111 (D.C. 2000).
Affirmed in part, reversed in part 253 F.3d 34 (D.C. Cir. 2001).

2

By prior order this Court has concluded that these state causes of action can only be asserted by indirect purchasers. (See Order of July 5, 2000 - presently on appeal). Tennessee is among the thirty seven (37) states which apply its trade practices act to indirect purchasers. See Blake v. Abbott Laboratories, Inc., 1996 WL 134947 (Tenn. App. March 27, 1996). See also Comes v. Microsoft Corporation, 646 N.W.2d 440 (Iowa, 2002)(Iowa law allows for suit by indirect purchasers) and Bunker's Glass Company v. Pilkington, 47 P.3d 1119 (Ariz. App. 2002)(complexity no bar to indirect purchaser action).

The motion for class certification was first argued before this Court in September 2000. However, subsequent to the first hearing and before the Court ruled on the motion, the Court ordered the case stayed. See Order of October 23, 2000. The stay was ultimately lifted by Order of September 11, 2002 and the motion for class certification was set for reargument on December 6, 2002. The parties have filed additional briefs which include reference to a number of cases decided since September 2000 in which courts have granted or denied class certification in state antitrust cases. The plaintiff has further filed the testimony of one of its expert witnesses given in similar cases in Florida and New Mexico.

To be properly certified the class must meet all four of the requirements of Rule 23.01: numerosity, commonality, typicality and adequacy. Microsoft asserts no challenge to these four. In

3

addition, the class must meet one of the sub parts of Rule 23.03. Because indirect purchaser actions are for damages, they are brought under Rule 23.02(3), which requires that questions common to the class predominate over individual questions, and that a class action is superior to other methods of resolving the dispute. The question of whether the common issues predominate over individual issues is critical in indirect purchaser cases.

The parties have filed numerous affidavits and other materials supporting their respective positions. Extensive briefs with a myriad of supporting cases have been filed and oral argument was held before the Court both in September 2000 and again in December 2002.

At the December 2002 hearing the parties pointed out to the Court that a number of courts have now ruled on the class certification issue which now confronts this Court. The plaintiffs cite nine (9) cases in which trial courts have certified an indirect purchaser class against Microsoft. The allegations against Microsoft in all those cases are very similar to the plaintiffs' allegations in this case. Plaintiffs highlight that six (6) of the nine (9) cases base their certification decisions on the testimony of Dr. Keith Leffler, the same expert that plaintiffs have proffered here in support of class certification.[1] See *In re*

---

[1] In California, Arizona, and Wisconsin plaintiff's relied on a different expert, Dr. Jeffery Mackie-Mason.

4

Florida Microsoft Antitrust Litigation, No. 99-27340 (Fla. Cir.,
August 26, 2002); In re New Mexico Indirect Purchasers Microsoft
Antitrust Litigation, No. D-0101-CV-2000-1697 (N.M. Dist. Ct.,
September 30, 2002)[2]; Bellinder v. Microsoft Corp., 2001 WL 1397995
(Kans. Dist. Ct., September 7, 2001); Gordon v. Microsoft Corp.,
2001 WL 366432 (Minn. Dist. Ct., March 30, 2001); In re South
Dakota Microsoft Antitrust Litigation, No. 00-235 (S.D. Cir. Ct.,
October 3, 2001); Howe v. Microsoft Corp., 2002 WL 199130 (N.D.
Dist., January 16, 2002); Capp v. Microsoft Corp., No. 00-CV-0637
(Wis. Cir., July 25, 2001); Friedman v. Microsoft Corp., No.
CV2000-000722 (Ariz. Sup. Ct., November 15, 2000); Microsoft I-V
Cases, J.C.C.P. No. 4106 (Calif. Sup. Ct., August 29, 2000).

Microsoft, on the other hand, points to several cases in which
courts have refused to certify the class, including the only
appellate decision to address the issue.

Microsoft places emphasis on A & M Supply Co. v. Microsoft
Corp., 2002 WL 1974137 (Mich. Ct. App. August 27, 2002) in which
the court reversed the trial court which had granted class
certification. The Michigan Court of Appeals found that the case
"involve[d] no less than six [operating system] products sold over
a number of years through numerous retailers," and that "this
proliferation of factors expands the possibility that the over-

---

[2]The testimony in the Florida and New Mexico class
certification hearing were filed with this court.

5

charge for each product varied over time, varied at a different rate from the other products, and was passed-on at different rates to indirect purchasers." A & M Supply Co., Id. at *23. Having concluded that plaintiffs' expert, Professor Leffler, failed to "bridge the gap between economic theory and the reality of economic damages" the court reversed the grant of class certification. Id. The court held that plaintiffs' pass-through contentions could not address the "substantial variation across Michigan retailers in the prices quoted for the same computer model on any given date" and that the "overcharge for each product ... was passed-on at different rates to indirect purchasers." Id. at *23.

A trial court in Maine also denied class certification in an analogous case against Microsoft. See Melnick v. Microsoft Corp., 2001 WL 1012261 (Me. Super., August 24, 2001). The Maine court found that Professor Leffler's theories were insufficient to satisfy plaintiffs' burden of proof, because they were no more than "general, untried economic theory" that had not been shown to be "workable with real world facts" from the PC and software markets. Id. at *16.

Plaintiffs counter by arguing that the Michigan and Maine cases are inapposite because those states, unlike Tennessee, require individualized damage determination for each class member and the establishment of damages with absolute precision. The plaintiffs also maintain that the expert affidavits provided to the

6

Michigan and Maine courts were substantially less detailed and thorough than the factual information now available in support of this motion.

The Court obviously cannot add up the cases on each side and go with the weight of numbers.   Nor can the Court decide this matter based upon an appellate court's decision in another state. The Court has read the cited cases with interest and has especially considered the opposing, but well reasoned, decisions from Michigan and Florida.   The Court, however, while not ignoring the decisions in other cases, has set out to decide this case giving exclusive consideration to the requirements of Tennessee law and this judge's view of the law.

Ultimately, this Court must determine whether this case is appropriate for class certification under Tennessee law.   This determination turns on whether the plaintiffs can show harm to all members of the class by generalized rather than individualized proof.   Courts must conduct "rigorous analysis" to determine if the requirements for certification are satisfied.   <u>See</u> <u>General Telephone Company v. Falcon</u>, 457 U.S. 147, 102 S.Ct. 2364, 2372 (1982).   The Court cannot make this decision based solely on the plaintiffs' allegations, but must determine if the plaintiffs have a rational methodology to prove impact[3] and damages in order to

---

[3]Proof of a detrimental impact on the consumer is a necessary ingredient of a private antitrust claim.   <u>See</u> <u>Elder-Beerman Stores Corp. v. Federated Dept. Stores</u>, 459 F.2d 138, 148 [6th Cir.

7

carry its burden under Rule 23.02(3).   This often includes
consideration of expert testimony.  The courts have often struggled
with walking a fine line between determining whether the plaintiffs
have a rational methodology to show class injury and the inappro-
priate delving into an assessment of the merits of the case.  See
Eisen v. Carlisle and Jacquelin, 417 U.S. 156, 94 S.Ct. 2140, 2152-
53 (1974), In re Polypropylene Carpet Anti-Trust Litigation, 998
F.Supp. 18, 26 (N.D. Ga. 1997) and Transamerican Ref. Corporation
v. Dravco Corporation, 130 F.R.D. 70, 74-76 (S.D. Tex. 1990).  If
the plaintiffs are unable to show a rational method of proving
impact to the class caused by Microsoft's alleged illegal actions
and of demonstrating that the amount of damages is susceptible to
class wide proof, then the motion must be denied.

No extended discussion is necessary to recognize that proof of
impact and damages is difficult in an antitrust case brought by an
indirect purchaser.   See Page, The Limits of State Indirect
Purchaser Suits: Class Certification, 67 Antitrust L.J. 1 (1999).
The decision in Illinois Brick v. Illinois, 431 U.S. 720, 97 S.Ct.
2061 (1977) limiting federal antitrust actions to direct purchaser

---

1972)("The private litigant must not only show the violation of the
antitrust laws, but show also the impact of the violations upon him
and damages to him resulting from violations of the antitrust
laws").  There is a difference between impact and actual damages.
"Fact of damage pertains to the existence of injury, as a predicate
to liability, actual damages involve the quantum of injury, and
relate to the appropriate measure of individual relief."  B.W.I.
Custom Kitchen v. Owens-Illinois, 191 Cal.App.3d 1341, 1350 n7
(1987).

8

was, in part, based on the practical difficulty of proving damages by an indirect purchaser. Woven throughout that decision are comments of "uncertainties and difficulties" in the "real economic world." (Id. at 2067); "whole new dimensions of complexity" (Id. at 2070) and "massive evidence and complicated theories" (Id. at 2072). The dissent, authored by Justice Brennan, acknowledged the difficulty, but instead focused on the trend in court decisions "to find some way in which damages can be awarded where a wrong has been done. Difficulty of ascertainment is no longer confused with right of recovery for a proven invasion of the plaintiff's rights." 97 S.Ct. at 2080 citing Bigelow v. RKO Radio Pictures, 327 U.S. 251, 66 S.Ct. 574, 580 (1946).

Justice Brennan further observed:

Admittedly, there will be many cases in which plaintiff will be unable to prove that the overcharge was passed on. In others, the portion of the overcharge passed on may be only approximately determinable. But again, this problem hardly distinguishes this case from other antitrust cases. Reasoned estimation is required in all antitrust cases, but "while damages [in such cases] may not be determined by mere speculation or guess, it will be enough if the evidence shows the extent of the damages as a matter of just and reasonable inference, although the result by only approximate."

Illinois Brick, 97 S.Ct. 2081-82 citing Story Parchment Co. v. Paterson, 282 U.S. 555, 51 S.Ct. 248, 250 (1931). In allowing indirect purchaser lawsuits for damages to enforce the Iowa Competition Law, the Iowa Supreme Court commented that "we should not defeat the ends of justice because the litigation may be

9

complicated" and "we note there is an absence of cases in which the court was faced with the impossible task of apportioning damages." Comes, supra 646 N.W.2d at 451.

Several principles, perhaps unique to Tennessee, command recognition. Assuming that the plaintiffs can prove a violation of the state antitrust law, the court must keep in mind that the intractability of proving damages must be measured against the principle of ubi jus, ibi remedium (wherever there is a right, there is a remedy for a violation of that right). See Inman, Gibson's Suits in Chancery, §11 (7th ed 1988). Secondly, Tennessee does recognize an action by indirect purchasers. See Blake v. Abbott Laboratories, Inc., supra. Therefore, Tennessee has rejected the rationale of the majority in Illinois Brick. Implicit in the rejection of Illinois Brick is the recognition that the problems recognized in Illinois Brick do not bar recovery. Furthermore, to the extent it is discussed, proof of damages - or problems in ascertaining damages - do not inhibit class certification. See Meighan v. U.S. Sprint Communications, 924 S.W.2d 632, 637 (Tenn. 1996). If common issues of law and fact predominate on the issue of liability then "while separate factual issues of individual damages remains" class certification is still appropriate. Id. Further, "certification serves to provide access to courts to individual claimants whose small claims would not otherwise justify their seeking relief." Id. at 638. In addition,

10

Tennessee recognizes the rule that while the fact of damages must be proved with certainty, the amount of damages is not governed by certainty, but by a rule of reasonableness. See, e.g., Overstreet v. Shoney's Inc., 4 S.W.3d 694, 703 (Tenn. App. 1999).

This Court recognizes that proof of damages remain separate from liability and proof of impact is a necessary part of liability, albeit overlapping with proof of damages to individual indirect purchasers. At least one court has found, however, that the alleged actions of Microsoft in this lawsuit have "harmed consumers in ways that were immediate and discernible." United States v. Microsoft Corporation, 84 F.Supp.2d at 111.

Microsoft argues that antitrust injury (impact) and/or damages cannot be determined on a class wide basis. Proof of damages in an indirect purchaser case is not easy. First the plaintiff must prove an overcharge to the direct purchaser. Then, and this is often difficult, it must prove that the overcharge, or some portion of it, was passed through the chain of distribution to the indirect purchaser (often called the "pass-on" requirement). The affidavits filed by Microsoft of Professor Jerry Hausman of MIT and Professor Malcolm Getz of Vanderbilt contend that the variables in pricing, method of distribution, number of systems, giving free web browser, the time span and the fact that Microsoft only supplies a small component to the assembled P.C. cause an almost infinite variation in impact on any individual indirect purchaser and this would

11

include the probably of benefit in purchase price to some consumers. Microsoft terms this as a "dizzying array of circumstances" making proof of impact and/or damages of a product that has "traveled through the hands of so many intermediaries" impossible. Microsoft cites the Page article cited above:

> The more heterogeneous the product, the more difficult it will be to establish impact by general proof .... In addition, it is more difficult to show harm by common proof if the product was resold by more than one level of intermediate sellers .... The consistency of markups also varies to the extent the product is altered in the chain of distribution. Virtually all of the cases decided so far have involved resales of virtually unaltered products .... Even resales without packaging involve some addition of value by advertising and other services in the chain of distribution. These additional services make showing generalized harm difficult. Still more problematic are cases, like prescription drugs, thermal fax paper, and chlorine, in which the product is repackaged in different sizes in the chain of distribution. In such cases, the changes in packaging may add significant value and individual characteristics to the final product, thus multiplying the factors that affect the final price.
>
> Most difficult of all are cases which the monopolized product is used as an input in another product. In such cases, the overcharge on the price-fixed product may be a trivial part of the price of the end product, and easily lost in various other factors affecting the price of the product.

Page, *supra* at 29-31. Microsoft contends that "this case exemplifies, on an unprecedented scale, every one of the impediments to class certification identified by Professor Page."

Plaintiffs counter with their own experts. They file affidavits of Associate Professor Keith Leffler of the University of Washington and Professor Reuben Kyle of Middle Tennessee State

12

University.  Plaintiffs have also filed the recent testimony of Professor Leffler given in other cases.

Leffler contends that standard economic theory provides numerous methodologies that will prove on a class wide basis that all members were injured by Microsoft's monopolistic conduct. Leffler listed three different yard stick methods that could be used to calculate overcharge on a class wide basis: (1) Compare Microsoft's operating system prices to the prices of software products in a competitive market, where the products in question have revenue opportunities comparable to operating system products; (2) compare Microsoft's operating system profits to the profits earned by software products in competitive markets; and (3) derive competitive prices from the prices that Microsoft charges for its operating system during the period in which Microsoft competed in the operating system market with digital research.  Dr. Leffler gives little weight to the assertion that the giving of a free web browser has actually benefitted consumers.  He questions Microsoft's assertions as "speculative" and says this has to be measured against a market already inflated by Microsoft's activities.  He does concede that a separate analysis may be required for different distribution channels, but that no significant difficulties arise from the multiplicity of the distribution alternatives

13

and that overcharges can be estimated for each appropriate distribution channel.[4]

What of the pass-on requirement?  One defense attorney described the pass-on requirement to be the "heart" of the matter. The Court agrees.  The Court is of the opinion after reading the Leffler affidavits, and especially considering his testimony in the Florida and New Mexico hearings, that Dr. Leffler has presented methods which a reasonable fact finder could accept for estimating the amount of overcharge that was passed on to indirect purchasers.[5]  He suggests that this can be done by a regression analysis.  As Dr. Leffler explained "I simply mean a methodology that allows one to estimate the relationship between variables, and that analysis includes a host of particular and specific techniques.  But generally what those techniques have in common is that they are attempting to and do estimate the relationship between one variable or many more than one variable and another variable."  Dr. Leffler conceded that obtaining the data was sometimes problematic, but he believed that by the time of the trial this analysis would be available.  By using regression analysis, he believed that he

---

[4] Even the Michigan Court of Appeals which denied class certification conceded that Dr. Leffler's methodology of proving overcharge was "sufficiently probative" to carry the burden on this issue.  A & M Supply Company, supra at *21.

[5] Dr. Leffler's testimony in New Mexico is the most recent.  He testified on two (2) days, July 1-2, 2002, and his testimony takes 268 transcript pages.  He was followed on the stand by Professor Hausman.  Leffler gave a short rebuttal testimony (17 pages).

14

could show how much of a price increase on the direct purchaser would be passed on to the indirect purchaser.  When asked whether regression analysis had been used for the purposes of measuring a pass-on he stated:

> Economists have done for years analysis of pass-on, not in the litigation sense of trying to figure out how an overcharge effects end users, but something that has been of interest to economists for decades, many decades, is how various government taxes effect prices, so that economists have dealt in detail with the issue of what happens to prices to consumers when producers pay higher prices and those higher prices can be in the form of excise taxes in some cases, sales taxes in other cases, so there is a long and rich history of the use of regression analysis in analyzing what is really a pass-on issue in far more complex settings than at issue in this case.

When asked about the complexity of the distribution system and whether that would effect his analysis, Dr. Leffler was of the opinion that economic rules governing competition would apply to eliminate the complexity in the distribution system from interfering with his ability to reasonably estimate the over charge to the class.  As to the availability of data, he opined that the data could be recovered from manufacturers such as Gateway, IBM, and Dell, and that there was national retailer data available.   In concluding his testimony in the New Mexico hearing, Dr. Leffler stated "I believe as I presume my testimony made clear, that a formulaic method or methods exist to estimate the Microsoft over charges; that a formulaic method exists to estimate how much that

15

over charge is then passed on to end users; and that, in fact, the data does exist to implement these methodologies."

In his New Mexico testimony, Dr. Leffler was probed on cross examination about elasticities of supply and demand, feed back, brand name power, pricing decisions, the unavailability of the needed data for the regression analysis and a number of other elements in determining the sales price of computers. He continued to acknowledge the difficulty in the process, but not the impossibility.

The affidavit of Dr. Ruben Kyle is entirely rebuttal in nature. He contends that the Court should give Professor Getz's affidavit little weight as it is based upon insufficient information and inadequate sampling techniques.

Microsoft filed a reply affidavit of Dr. Getz and a response affidavit of Dr. Hausman. Dr. Getz defends in detail his prior conclusions related to the complexity of the distribution system in his reply affidavit. Dr. Hausman also explained in considerable detail why Dr. Leffler's assumptions and conclusions are overly simplistic and incorrect. He also explains why Dr. Leffler's proposed methods of determining damages "make no economic sense" and are "highly speculative" and "unreliable." His testimony in Florida and New Mexico is consistent with his affidavits. There is no doubt that Dr. Hausman has a different view and he explains why it is doubtful that Microsoft's illegal actions caused any price

16

increase, and even if it did, it would not be possible to determine the pass-on to the indirect purchasers. As he did in his affidavits, he again questioned Dr. Leffler's methodology and opined that Dr. Leffler would "end up with biased and inconsistent results." For Dr. Hausman, the problems of proving damages are so intractable that he was of the opinion that it was practically impossible to prove damages for any individual consumer, no less a class of consumers.

This Court is of the opinion that there is support for Dr. Leffler's methodology in the economic community sufficient to give his testimony the credibility necessary to sustain the plaintiffs' burden for class certification. The discussion of this authority is set out in detail in the Florida Microsoft case and the Court adopts the economic authority cited therein. See In re Florida Microsoft Antitrust Litigation, supra at *18-20.

Microsoft argues that there is no authority in Tennessee to aggregate damages in a class action case. Microsoft correctly points out that in order for an individual to recover under the Consumer Protection Act, the plaintiff must prove "an ascertainable loss of money or property." See T.C.A. § 47-18-109(a)(1). To recover under the Trade Practices Act, the plaintiff must show that he was "injured or damaged" by the anti-competitive activity. See T.C.A. § 47-25-106. Microsoft then asserts that the aggregation of damages is inappropriate since the statutes require specificity.

17

The plaintiffs counter this argument with a citation to Meighan v. U.S. Sprint Communications Co., 924 S.W.2d 632 (Tenn. 1996). Meighan involved an inverse condemnation case where U.S. Sprint ran fiber optic cable over hundreds of miles without obtaining the property owner's consent. In holding the action to be an appropriate class action, but in recognizing that the claims of each individual class member might be small, the court stated:

> While we recognize that the issue of compensatory damages may require some individual consideration, we disagree with plaintiffs position that each owner will be entitled to present detailed damages evidence.

> In a class action, courts are not required to conduct separate damage inquiries for each class member. Instead, the court may determine an aggregate damage amount for the class as a whole. Newberg, supra § 4.26 at 321. The trial court may simply choose to divide the award among members or may allow each plaintiff to recover by proving his or her claim against the entire judgment. See Boeing Company v. VanGemert, 444 U.S. 472, 100 S.Ct. 745. This case is particularly amenable to the aggregate damage approach.

Id. at 638. The plaintiffs place great stock in this quote and contend that this shows that Tennessee allows "aggregate" damages in a class action.

The Court is of the opinion that the plaintiffs' approach is the correct one and that aggregate damages are allowed. Class actions to enforce antitrust laws have always faced the difficulty of the complexity of proof of damages. If the Court adopts the defendant's argument, class actions would be precluded in all but the simplest cases, and the ability of indirect purchasers to

18

recover damages would for all practical purposes be nonexistent.
The Court returns to where it started and agrees with Justice
Brennan's dissent in _Illinois Brick_ that almost all antitrust cases
are characterized by "long and complicated proceedings involving
massive evidence and complicated theories." _Id._, 97 S.Ct. at 2081.

> Non-uniformity of the prices at which plaintiffs pur-
> chased their goods is not fatal to certification. As
> long as the existence of a conspiracy is the overriding
> question, then the class has met its predominance
> requirement .... To prove injury, plaintiffs need only
> demonstrate they have suffered some damage from the
> unlawful conspiracy .... Such a showing may be made on
> a class basis if the evidence demonstrates that the
> conspiracy succeeded in increasing prices above the
> competitive level.

> 'Common proof of impact is possible even though prices
> are individually negotiated .... Proof of impact typi-
> cally follows proof of a price-fixing conspiracy where
> the defendants are shown to have sufficient market
> power'.... Although damage amounts may vary among
> plaintiffs, this fact alone, particularly in antitrust
> actions, will not defeat certification.... Individual
> questions of damages are often a problem encountered in
> an antitrust action and are rarely a barrier to
> certification. [emphasis added].

See _In re Workers Compensation_, 130 F.R.D. 99, 108-110 (D. Minn.
1990):

> Defendants argue that the damages or fact of damage issue
> is too complicated for class treatment .... The gestalt
> of much of defendants' argument is an attempt to make
> this case appear overwhelmingly complicated and thereby
> remove the class action tool from plaintiffs' hands ....
> If it is ultimately proven that defendants violated the
> Sherman Act, it seems unfair and ironic that the party
> who caused the complexity on liability and damages should
> benefit from such acts by disarming the plaintiffs and
> the Court of the most efficient and effective tool for
> resolving the issues.

19

<u>Little Caesar Enterprises Inc. v. Smith</u>, 172 F.R.D. 236, 246 (E.D.

Mich. 1997).

The Court repeats: it must resist the temptation to decide

this lawsuit on the expert affidavits. The opinions of Microsoft's

experts have much to commend them. They do not, however, convince

the Court that the plaintiffs' expert opinions are to be disre-

garded. See <u>McDaniel v. CSX Transportation</u>, 955 S.W.2d 257 (Tenn.

1997). Therefore, it is the opinion of the Court that the

plaintiffs have made a sufficient showing for this case to go

forward as a class action. "The invitation to pre-try the case

through the vehicle of this motion [class certification] must be

respectfully declined ...." <u>Siegle v. Chicken Delight Inc.</u>, 271

F.Supp. 722, 726 (N.D. Cal. 1967).

The defendant here may well prevail on the merits of this

case, whether at trial or on summary judgment, and the plaintiffs

may fail to carry their burden on damages. Furthermore, as this

case develops, the Court has discretion to decertify the class, if

appropriate, or to create subclasses, if necessary.

The Court acknowledges that it is troubled by the daunting

administrative task before it, as well as the question of whether

the plaintiffs' theories can be transformed to real numbers from

which a jury can make a reasonable decision. The Court finds this,

however, to be of lesser concern than holding that complexity

denies indirect purchasers an opportunity to try and prove that

20

they were damaged by the alleged conduct, which at least one court has found to violate federal antitrust law. See United States v. Microsoft, 253 F.3d 34 (D.C. Cir. 2001). The Court is convinced that it can successfully manage this case to its resolution with the aid of competent and imaginative counsel.

It is therefore ORDERED:

1. This case is certified as a class action. The class defined as:

> All persons or entities in the State of Tennessee who purchased for purposes other than resale or distribution during the last four years, Intel comparable PC operating systems licenced by Microsoft. The class excludes defendants and their coconspirators, their subsidiaries, affiliates, officers and employees, and governmental entities.

The Court reads the class definition to set the time limit as December 21, 1995, which is four (4) years prior to the filing of the complaint.

2. The Court will hold a hearing on the 9th day of January, 2003, at 9:30 a.m. to determine the appropriate notice to the class. The parties shall submit written proposals on the notice issue to be filed seventy two (72) hours before the hearing.

3. The parties shall also address at the hearing ordered above whether the class needs to be modified in any way to avoid conflict with the class in the MDL.

4. At the hearing set in paragraph 2 above, the Court will determine counsel to represent the class. The Court has every

21

intention of appointing local counsel who have already participated in this case, but the Court will limit the number of out-of-state counsel who represent the class.

5.  The previously set scheduling conference will still be held in chambers at 8:30 a.m. on January 9, 2003.  Counsel shall please meet prior to the conference and make every effort to agree upon a scheduling order.  If no agreement is reached counsel for each side shall file by noon on January 8, 2003 a proposed scheduling order for consideration by the Court.

This the 20 day of Dec, 2002.

WALTER C. KURTZ, JUDGE

xc:  George E. Barrett
     Douglas S. Johnston, Jr.
     Edmund L. Carey, Jr,
     Timothy L. Miles
     Attorneys at Law
     BARRETT, JOHNSTON & PARSLEY
     217 Second Avenue North
     Nashville, TN 37201

     James G. Stranch, III
     C. Dewey Branstetter
     Attorneys at Law
     BRANSTETTER, KILGORE, STRANCH
     & JENNINGS
     227 Second Avenue, North
     Nashville, TN 37201

22

Alice McInerney
Daniel Hume
Attorneys at Law
KIRBY, McINERNEY & SQUIRE, LLP
830 Third Avenue
New York, NY 10022

Leonard B. Simon
Dennis Stewart
Robert J. Gralewski
Attorneys at Law
MILBERG WEISS BERSHAD
HAYNES & LERACH, LLP
600 West Broadway, Suite 1800
San Diego, CA 92101

David S. Stellings
LEIFF, CABRASER, HEIMANN BERNSTEIN, LLP
780 Third Avenue, 48th Floor
New York, NY 10017

Robert L. Leiff
Joseph R. Saveri
Michele C. Jackson
David Stellings
LEIFF, CABRASER, HEIMANN BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111

David J. Bershad
Robert A. Wallner
Joseph Opper
Douglas Richards
MILBERG WEISS BERSHAD
HAYNES & LERACH, LLP
One Pennsylvania Place
New York, NY 10119-0165

John W. "Don" Barrett
BARRETT LAW OFFICE
P.O. Box 987
Lexington, MS 39095

23

Jerry D. Kizer, Jr.
D. Scott Portch, IV
Attorneys at Law
RAINEY, KIZER, BUTLER, REVIERE &
BELL, PLC
105 S. Highland Avenue
Jackson, TN 38301

Mark D. Bogen
Attorney at Law
LAW OFFICES OF MARK D. BOGEN
1761 West Hillsboro Blvd., Suite 328
Deerfield Beach, FL 33442

Sam Rosen
Attorney at Law
WECSHLER, HARWOOD, HALEBRIAN &
FEFFER, LLP
488 Madison Avenue
New York, NY 10022

James A. DeLanis
Attorney at Law
BAKER, DONELSON, BEARMAN &
CALDWELL, P.C.
Commerce Center, Suite 1000
211 Commerce Street
Nashville, TN 37201

Leo Bearman, Jr.
Attorney at Law
BAKER, DONELSON, BEARMAN &
CALDWELL, P.C.
165 Madison Avenue, 20th Floor
Memphis, TN 38103

Richard C. Pepperman, II
David B. Tulchin
Attorneys at Law
SULLIVAN & CROMWELL
125 Broad Street
New York, New York 10004

24

Thomas W. Burt
Richard Wallis
Steven J. Aeschbacher
Attorneys at Law
MICROSOFT CORPORATION
One Microsoft Way
Redmond, Washington 98052

Charles B. Casper
Attorney at Law
MONTGOMERY, McCRACKEN,
WALKER & RHOADS, LLP
123 South Broad Street
Philadelphia, PA 19109

25

# EXHIBIT 20

STATE OF WISCONSIN     CIRCUIT COURT     DANE COUNTY
BRANCH 9

TOM CAPP,

       Plaintiff,

    v.                           Case No. 00 CV 0637

MICROSOFT CORPORATION,
a Washington corporation,

       Defendant.

**ORDER CERTIFYING CLASS ACTION**

         The Plaintiff's Motion to Certify Action as Class Action (the "Class Certification

Motion") filed on March 7, 2000, came on for hearing before this Court on June 29, 2001, at

9:00 a.m.; Plaintiff Tom Capp having appeared by his counsel, Turner & Massch, by Mark A.

Maasch, of San Diego, California; Defendant Microsoft Corporation ("Microsoft") having

appeared by its counsel, Quarles & Brady, by Stuart Parsons, of Milwaukee, Wisconsin, Sullivan

& Cromwell, by Justin Daniels, of New York, New York, and Montgomery, McCracken, Walker

& Rhoads, by Peter Breslauer, of Philadelphia, Pennsylvania; and the Court having thoroughly

reviewed and considered the memoranda and materials submitted by the parties together with the

statements and arguments of counsel and all of the records on file, and after doing so, finding

and concluding, for the reasons more fully stated in my bench decision which has been

transcribed, that the requirements of Wis. Stats. § 803.08 have been satisfied and that the class

proposed in Plaintiffs' First Amended Complaint dated March 15, 2000, should be certified.

QBMKE\5089005.1

108—1

NOW, THEREFORE, IT IS HEREBY ORDERED, as follows:

1.      That Microsoft's Motion to Compel and Motion for Evidentiary Hearing are denied;

2.      That Plaintiffs' Motion to Certify Action as Class Action shall be and is GRANTED;

3.      That the class certified shall be and is as follows:  All end user licensees of Windows 98 residing in the State of Wisconsin as to whom Microsoft has an electronic mail address that is computer-accessible by Microsoft;

4.      That Tom Capp be certified as the class representative;

5.      That John L. Cates and Mark A. Maasch be appointed as lead counsel for the class; and

6.      That an appropriate notice be sent to the members of the class as soon as practicable after the class certification issue is decided in Milwaukee, and this Court has had an opportunity to consider consolidating actions within this state.

Dated this 25 day of July, 2001.

Hon. Gerald Nichol
Dane County Circuit Court Judge

QBMKE\5089005.1

2

# EXHIBIT 21

STATE OF WISCONSIN              CIRCUIT COURT           MILWAUKEE COUNTY

RICHARD R. CARLSON AND
DIANE FRENCH, on behalf of                           RECEIVED
themselves and all others
similarly situated,                                  NOV 1 0 2003

    Plaintiffs,                    THE FURTH FIRM LLP

    v.                     CLASS ACTION
                                   CASE NO. 94-CV-002608
ABBOTT LABORATORIES, INC.,;        CODE: 30301 Money Judgment

BRISTOL-MYERS SQUIBB CO.,; and               FILED

MEAD JOHNSON & CO.,                22  MAR 2 3 1995  22

    Defendants.                 GARY J. BARCZAK
                                   CLERK OF CIRCUIT COURT

---

ORDER

---

    A hearing having been held in this consolidated action on
February 27, 1995 before the Honorable William J. Haese in his
courtroom at the Milwaukee County Courthouse on the plaintiffs'
motion for class certification, the Attorney General's motion to
intervene, the defendants' motion for permission to file surreply
brief in opposition to the Attorney General's motion to
intervene, and the defendants' motion for summary judgment;
plaintiff Richard Carlson having appeared by Beth J. Kushner of
Gibbs, Roper, Loots & Williams, S.C., and by Kent Williams of
Heins, Mills & Olson; plaintiff Diane French having appeared by
Michael J. Cohen of Meissner & Tierney, S.C., and by Atty. Todd
R. Seelman, Atty. Thomas H. Brill, and Atty. Isaac L. Diel;
defendants Bristol-Myers Squibb and Mead Johnson having appeared
by James Clark of Foley & Lardner; defendant Abbott Laboratories

Q83\134201.1

having appeared by Dan Conley of Quarles & Brady; and the State

of Wisconsin having appeared by Kevin O'Connor, Roy Korte and

David J. Gilles, and the Court being well advised in the

premises;

IT IS ORDERED:

1.   The Court finds that the requirements of Wis. Stat. §

803.08 have been satisfied and grants the plaintiffs' motion to

certify this consolidated action as a class action on behalf of

the following class of persons:

> All persons who currently reside in the State
> of Wisconsin and who, at any time between
> January 1, 1980 and December 31, 1992
> indirectly purchased (other than for resale)
> one or more brands of infant formula for
> consumption by newborn infants in the State
> of Wisconsin from Abbott Laboratories, Inc.,
> Ross Laboratories, Bristol-Myers Squibb
> Company, and/or Mead Johnson & Company,
> except for infant formula sold under the
> Gerber brand name.

2.   The Court appoints Richard Carlson and Diane French as

class representatives, and Beth Kushner of Gibbs, Roper, Loots &

Williams, S.C. as lead counsel for the class.

3.   The Court denies the Attorney General's motion to

intervene in this action.

4.   The Court denies the defendants' motion to file a

surreply brief in opposition to the Attorney General's motion to

intervene on the grounds that such motion is moot.

5.   The Court denies the defendants' motion for summary

judgment dismissing this action.

QB3\134201.1                         2

Dated this 23rd day of March, 1995.

BY THE COURT:

William H. Haese
Circuit Court Judge

# EXHIBIT 22

1391

RECEIVED

MAY 1 1 2004
9972
THE FURTH FIRM LLP
MILWAUKEE COUNTY

STATE OF WISCONSIN    :    CIRCUIT COURT    :

- - - - - - - - - - - - - - - - - - - - - - - - - - -

JASON FEUERABEND, a Wisconsin resident,
on behalf of himself and all others similarly situated,

Plaintiff,

vs.                         Case No. 2002CV007124

UST, INC., U. S. SMOKELESS TOBACCO
BRANDS INC., U.S. SMOKELESS TOBACCO
CO., U.S. SMOKELESS TOBACCO
MANUFACTURING LIMITED PARTNERSHIP,
and DOES 1-20, inclusive,

Defendants.



FILED
MAY 1 0 2004
JOHN BARRETT
Clerk of Circuit Court

- - - - - - - - - - - - - - - - - - - - - - - - - - -

### DECISION AND ORDER GRANTING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

- - - - - - - - - - - - - - - - - - - - - - - - - - -

Plaintiff is a consumer of smokeless chewing tobacco. Defendant is the largest manufacturer of smokeless chewing tobacco in the United States. Plaintiff claims Defendant is engaged in monopolistic, anticompetitive practices violating Wis. Stat. § 133.03(2) causing plaintiff to incur higher prices for smokeless chewing tobacco purchased in Wisconsin. In this motion Plaintiff seeks to certify a class of consumers. The proposed class that plaintiff wishes certified is defined as:

"All persons who purchased defendant's moist snuff smokeless tobacco products in Wisconsin for personal use and not for resale from January 1990 to the date of certification."

This court finds that the three principal requirements for class certification have been met, namely; 1) Common interest shared by all members of the class; 2) Named parties fairly representing the class, and 3) the impracticality of joinder of all class

1

members. Additionally, the court has determined that the proposed class would be manageable because the plaintiff has offered through his expert, Dr. Kamien, a reasonable methodology of common proof of causation and damages for the class. Accordingly, this court grants certification to this class.

## FACTUAL BACKGROUND

This court has previously granted part of plaintiff's partial summary judgment motion precluding relitigation of some of the liability issues based on the decision of the federal district court in Kentucky in *Conwood Co. L.P., et.al. v. United States Tobacco Co, et. al.*, 290 F.3rd 768 (6th Cir. 2002) *Cert. Denied* 537 US 1148. In the *Conwood* case, a jury found that UST engaged in monopolistic practices violating the Sherman Act causing damages to plaintiff, a competitor manufacturer. In this case, the consumer plaintiff sought summary judgment on the liability verdicts of the *Conwood* jury. This Court partially granted plaintiff's summary judgment motion and ruled on September 9, 2003, that:

1. The relevant market is all moist snuff brands sold in the United States.

2. UST possessed monopolistic power in the relevant market for the time period 1990 through 1997.

3. UST willfully maintained its monopolistic power through exclusionary or restrictive conduct.

In the Court's September 9 ruling, the Court found that plaintiff still needed to prove:

1. That UST's monopolistic practices between 1990 and 1997 had a significant impact on trade in Wisconsin; and

2

2. For the time period 1998 through the present, plaintiff was put to their proof on all issues; and

3. That the anticompetitive practices actually caused plaintiff injury; and

4. The amount of damages.

Subsequent to the Court's September 9, 2003, ruling, plaintiffs filed a motion for class certification. The parties have briefed it including numerous exhibits and compendia of cases. They have presented oral argument to the Court on 5/4/04 and have each filed short letter briefs on 5/5/04 and 5/6/04 which the court has considered. Courts in Kansas and California have granted class certification in indirect purchaser cases against UST involving the same conduct at issue in this case. *Smokeless Tobacco Cases I – IV,* J.C.C.P. No. 4250, 4258, 4259 & 4262 (Cal. Sup. Ct. Dec. 9 2003); *Chance v. USTCo.* Case No. 02-C-12 (Kan. District Ct July 29, 2003).

## CLASS ACTION LAW IN WISCONSIN

Wis. Stat § 03.08 permits certification of a class of plaintiffs in Wisconsin. It states that when a question is of a common or general interest, or when the parties are very numerous, and it may be impractical to bring them all together, one or more may sue for the whole. There are three principal requirements for class certification:

1. Common or general interest shared by all members of the class.

2. Named parties must fairly represent the interests involved.

3. It is impractical to bring all the parties before the court. *(See Schlosser v. Allis-Chalmers,* 65 Wis.2d 153 (1974); *Cruz v. All Saints,* 242 Wis.2d 432 (CA. 2001).

3

The first principal requirement for class certification is the common interest. The test is whether all members desire the same outcome of the lawsuit. *(Mercury Records v. Economic Consultants*, 91 Wis.2d 482 (1979). It is not necessary that the position of each member of the class be identical, just that there is a community of interest *(K-S Pharmacies v. Abbott Labs*, 1996 WL 33323859 (Wis. Cir. Ct. May 17, 1996) (Dane County). In this case, the named consumer plaintiff seeks a determination that UST's monopolistic practices violated Wisconsin's antitrust law causing him to be overcharged by the defendant. The proposed members of the class, all being consumer purchasers, desire the same outcome. Accordingly, the Court finds there is a commonality of interest among the members of the proposed class in this case.

The second principal requirement for class certification is representation. The test here is whether plaintiff's or counsel's interests are antagonistic to those of the absent class members and whether plaintiff's counsel is qualified, experienced, and able to conduct litigation *(Cruz)*. In this case there is no antagonistic interest between the named plaintiff and the proposed class, and counsel for plaintiff is ably qualified and experienced to conduct the litigation. Accordingly, the Court finds this second requirement has been satisfied in this case.

The third principal requirement for class certification is that joinder of all of the members of the proposed class would be impractical. Plaintiff's brief states in one place that there may be tens of thousands of class members and in another place, possibly hundreds of thousands. Joinder of that number of plaintiffs would be impractical. To permit plaintiff to present the proposed class members' case in one action would be efficient and desirable provided that it's manageable. As to the third requirement, this

4

Court finds that joinder would be impractical, and, accordingly, class certification is warranted on this third requirement.

## MANAGEABILITY

The most difficult question in this case is whether certification of a class of this size will be manageable for this trial court in Milwaukee County, Wisconsin. Wisconsin law requires a trial court to determine whether the benefits of class certification outweigh the burdens *(Cruz)*. The question is whether common issues predominate over separate issues and can be presented in a manageable way *(Schlosser)*. Assuming the Court finds the three principal requirements have been met, the Court is to balance the public interest in certification against the problems of efficient case management. The Court is to begin with the presumption that it is in the public's interest to certify if the three requirements above have been satisfied. In this case the Court has found the three are satisfied and so begins with a presumption in favor of certification.

The court next turns to the issue of manageability. In order to calculate manageability, this Court needs to look at what plaintiff needs to prove in the case and his proposed methods of proof. If plaintiff can prove his case with common proof, then the class can be deemed manageable and be certified. At the trial in this case plaintiffs will have to establish for the time period 1990 through 2004: 1) Defendants violated Wis. Stat. §133.03(2); 2) causation and 3) the amount of damages. In proving a violation of Wis. Stat. § 133.03(2), plaintiffs have some assistance already in the Court's issue preclusion order of 9/9/03. But that only eliminates some liability matters from proof for the time period 1990 – 1997. Plaintiffs will still have substantial liability issues to prove.

5

The Court finds that because plaintiff's proof of defendants' violations of Wis. Stat. §133.03(2) focuses on the defendant's actions, it can be addressed with evidence common to the whole class of plaintiffs.

The harder question is whether common proof is authorized by Wisconsin law and available on the questions of causation and amount of damages. Given the size of this proposed class, only if: 1) common proof of causation and damages is available; and, 2) Wisconsin law does not require individualized amount of damages hearings, is this class action manageable. There is no question that a class of this size would be unmanageable if individualized causation and amount of damage hearings were required for each class member.

### PLAINTIFF'S MANAGEABILITY BURDEN GENERALLY

Plaintiff has the burden of showing that he has reasonable common proof for the trial in this matter that: 1) UST's anti-competitive practices caused injury to the whole class and 2) of the amount of damages to the class. He proposes to do this both through the testimony of his expert economist, Dr. Kamien. For this class certification motion Plaintiff has offered Dr. Kamien's Declaration, his trial testimony in the *Conwood* trial and his depositions. The Court must analyze Dr. Kamien's proposed testimony as it would an offer of proof. Plaintiff is not required to prove the case at this point. However, plaintiff must show that he has the *means to prove it* (*Derzon v Appleton Papers Inc., et. al.* 1998 WL 1031504 (Cir Ct 1998).

Relying on *Derzon* the defendants argue here that the class is unmanageable. In *Derzon*, Judge John Franke in Milwaukee County Circuit Court found that the proposed class of three different subgroups of plaintiffs would be unmanageable

6

and denied certification. However, the named plaintiff, a lawyer, presented no expert at all, but only promised to name one who would later offer some unspecified testimony on causation and damages. Judge Franke, quite properly found that that offer of proof failed to present a reasonable methodology of common proof and thus declined to certify that class.

      In some states the courts have held the test of whether plaintiff has shown the a reasonable methodology of common proof is that the evidence must be not so insubstantial that it amounts to no method at all. *In Re Potash Antitrust Litigation*, 159 F.R.D. 682 (D. Minn 1995); *In Re South Dakota Microsoft Antitrust Litigation*, 657 N.W. 2d 668 (SD 2003). Another test has been expressed as one which a reasonable fact finder would accept. *Bellinder v. Microsoft Corp*, 2001 WL 1397995 (Kan Dist Ct 2001). Other cases hold that the court must weigh the offer of proof by a "rigorous analysis" test. Despite these slight differences, the cases are in agreement that it is inappropriate to decide the winner of the battle of the experts at the certification motion stage.

      "The question at this stage is not whether the plaintiff will be able to carry their burden of proving that their experts analysis are reliable, but whether it appears that the differences between the experts can be intelligently presented and evaluated within the framework of a class action." *In Re NASDAQ Market-Maker Antitrust Litigation*, 169 F.R.D. 493 (S.D.N.Y. 1996)

      This court believes the appropriate test is whether there's a sound basis in fact, after a rigorous analysis of the expert's testimony, to determine whether plaintiff has presented a reasonable methodology for determining impact and amount of damages.

7

## PLAINTIFF'S OFFER OF PROOF ON CAUSATION

Dr. Kamien's credentials show him to be a recognized expert economist. He was the recognized expert in the *Conwood* trial in federal district court in Kentucky and has testified in other UST smokeless tobacco litigation in California and Kansas. He relied on UST's own inner memos and testimony and included them in his depositions, testimony and declaration.

Dr. Kamien found, based on his study and review of UST's records for the Conwood trial, that UST's rack and tray practices preserved their monopolistic market share in an anti-competitive way. This is the conclusion the *Conwood* jury reached as well. These practices in turn caused an overcharge in the price of a can of snuff. He found that UST's list prices were uniform nationally, based on their own records. Therefore, he concluded that the entire class of consumers sustained injury in the form of the overcharge that was due solely to the anti-competitive practices. This is the common evidence that the plaintiff proposes for his burden of proving that UST's anti-competitive practices caused injury or impact to the class.

Having determined that UST's anti-competitive practices caused an overcharge in the list price, Dr. Kamien next offered testimony that the overcharge was embedded in the ultimate price for consumers and was therefore passed-on to class of consumers. Despite the intervention of distributors and retailers between the manufacturer's list price and the ultimate purchase by consumers, Dr. Kamien's opinion is that the overcharge is embedded in the price and unaffected by subsequent discounts or add-ons to the ultimate retail price. He based this on: 1) general theory (no retailer sells below cost); 2) Wisconsin law, (no retailer is permitted to sell below cost); 3) UST's data

8

reporting that all manufacturer list prices were passed onto retail;[1] 4) Dr. Burris'

Declaration, chart at Ex. 11 showing no wholesaler or retailer ever sold any of USTC'

moist snuff products below cost; and 5) his own study of UST practices in preparation for

the *Conwood* trial.

        While the defense does not attack Dr. Kamien's credentials and experience

and acknowledges his role as an expert in the *Conwood* trial as well as the snuff

consumer class actions brought in California and Kansas similar to this action, they do

attack his methodology. Generally the defense attacks his overcharge theory on the fact

that they claim it is based on assumption and conjecture only. He assumes that he can

calculate the amount of overcharge embedded in the list price and assumes it is

embedded, even though he did not empirical studies to test his theory. The defense

expert, Dr. Burris did empirical studies for a brief window of the time involved in this

case and reached a contrary conclusion on embedding and pass-on. As to Dr. Kamien's

pass-on theory, the defense strongly attacks this and asserts the need for individualized

testimony from the 5,000 retailers and 25 distributors in Wisconsin as to what prices they

imposed.

## PLAINTIFF'S OFFER OF PROOF ON

## AMOUNT OF INJURY

        Dr. Kamien's testimony was that he then calculated the amount of the

overcharge by the method of benchmarks. Because UST never had a time period of non-

monopolistic market share, he was unable to use the benchmark of UST's own

---

[1] E.g. UST's letter of May 25, 1995 from Bob Novack to Mike Miceli stating that for the time period
6/29/92 to 5/25/95 all UST price increases had been passed along to "full impact at retail" within 12 weeks
Exhibit AA to Affidavit of Jonathan Watkins attached to Plaintiff's Reply Brief)

competitive pricing. But he did use other industries for benchmarks, namely the cigarette industry and copier industry. While he did not fully explain the reasons that he chose these industries for comparison purposes, he did fully explain the methodology he used.

Dr. Kamien, using a "but for" test, compared the defendant's actual gross profit margins and their relationship to list price to the benchmark industry's gross profit margins and their relationship to list price. By using that ratio, he calculated the amount of overcharge. Additionally, in the *Conwood* trial he did a regression analysis on the amount of overcharge.

The defense challenges the use of benchmarks altogether, as opposed to actual empirical studies. Additionally the defense challenges the suitability of the benchmarks chosen. And the defense most strenuously objects to Dr. Kamien's opinion of the embedded overcharge being passed-on to consumers through the chain of distributors and retailers. The defense points out the Dr. Kamien's proposed testimony makes no distinctions for geographic differences and time of sale differences.

### DR. KAMIEN'S PROPOSED TESIMONY PRESENTS A REASONABLE METHODOLOGY FOR PROVING CAUSATION AND AMOUNT OF DAMAGE

The Court finds that the plaintiff's offer of proof through the testimony of Dr. Kamien presents a reasonable methodology of common proof of causation and amount of damages. This is not the same as determining that plaintiff has won the battle of the experts. The defense has certainly presented arguments in this record rebutting and undercutting some of Dr. Kamien's testimony. But that's for the trier of fact to weigh and

10

decide. Dr. Kamien is an admitted expert in his field, other courts have recognized him as such on these very issues, and he's articulated opinions and given the bases for his opinions. The defense will have a full opportunity to attack and impeach his testimony in discovery and at trial. The jury may or may not buy his opinions. But this court cannot state on this record, that his opinions lack a proper basis. They are not insubstantial. His methodology is at least, reasonable.

As to the defense's specific attacks on his proposed methodology, the court finds that his proposed testimony is not just based on assumptions and theory. This court has read his *Conwood* trial testimony, his depositions and his Certification. Despite a defense argument to the contrary, he has relied on actual studies of the UST industry. He's specifically noted his reliance on UST's own internal data and memoranda. He's supported his theoretical statements with facts.

And as to his use of benchmarks, this court finds that theoretical comparisons are a proper method of calculating unknowns. The benchmarks chosen can be attacked by the defense as to their suitability. But they are no so facially disparate from the snuff tobacco industry as to be unreasonable.

And as to pass-ons of improper overcharge through distributors and retailers, Dr. Kamien's proposed testimony is at least reasonable. If his factual premises of uniform national list prices and method of calculating the improper overcharge hold up in the jury's eyes, then a reasonable jury may find that the actions of the distributors and retailers did not affect the overcharge and it was passed-on to the consumer.

It is true that Dr. Kamien's methodology does not analyze precise sales data at different geographical location within the state of Wisconsin. Nor does it examine retailer

11

and distributor price differences. But that's because his methodological premise is that the overcharge is embedded and the list prices uniform nationally. Hence the differences are not significant. This is a reasonable methodology and can be attacked by the defense expert at trial.

Additionally, Dr. Kamien does not specifically break down the amount of overcharge by year. However, the methodology expressed by Dr. Kamien could certainly be adapted to provide an annual breakdown of the amount of overcharge to create a more wieldy method of determining damages the individual plaintiffs may be entitled to later.

## WISCONSIN LAW DOES NOT REQUIRE THAT THE JURY DETERMINE EACH CLASS MEMBER'S INDIVIDUALIZED DAMAGE AMOUNT

Besides attacking the methodology used by Dr. Kamien, the defense asserts that under Wisconsin law the jury must determine each class member's individual damage amount. Defense counsel articulates this question this way in their 5/5/04 letter brief:

"The question is not whether Wisconsin law requires a jury trial on the damage claim of each individual consumer. The question is whether Wisconsin law permits a jury to award a lump-sum damage to a class, when the evidence shows that each class member was not injured in a uniform amount."

First of all, this court has found herein that Dr. Kamien's proposed testimony presents a reasonable methodology of proving that each class member was injured in a uniform amount. We don't have the jury instructions worked out at this stage of the proceedings. At this juncture, reasonable proposed evidence is the only test. Now, if at trial, the defense impeaches Dr. Kamien and the record no longer supports certification or the jury isn't persuaded that the class was injured in a uniform amount,

12

the Court will deal with that either through motions at trial, motions after verdicts or motion for decertification.

Secondly, Wisconsin law does not require a jury trial on the damage claim of each individual consumer. Perhaps the defense is conceding this point above. But in earlier argument, this court thought the defense was asserting that Wis. Stat. 805.09 (Wisconsin's 5/6ths verdict rule) was an impediment to class resolution of the amount of damages. Plaintiff had argued that the jury would be asked to find the aggregate amount of damages for the class and then an administrative claims process would be established to divide the aggregate damages up among the class members.

Wis. Stat. 805.09 was part of the Civil Procedure Revision started in 1973 and passed by the Legislature in 1975, becoming effective 1/1/76. The statute requires the same 5/6 of the jurors must agree on any questions put to them on a claim. It does not require that each class member's amount of damages be put to the jury.

In *Schlosser* [2] the Court found acceptable the very type of post-jury claims process envisioned here by the plaintiff. And in subsequent Wisconsin class actions (*Cruz*) the courts have apparently used the same type of damage process. The court notes in *Schlosser*, that the division of the aggregate class damages can be relatively easily accomplished through the class member's insurance records. In this case, that may be somewhat harder to do because it's unlikely that the consumers have kept their "Quick-Mart" receipts from ten years back. However, if the jury is persuaded that the class has been uniformly impacted, then each class member can presumably claim their share by affidavit or other method of establishing the number of cans bought in this state and

---

[2] Decided by the trial court in 1973 and the appeals court in 1974, before the passage of 805.09 but while the petition for it's passage was pending)

13

multiplying the number of cans times the amount of overcharge per can. This would not be unmanageable. The court could appoint a special master to oversee this claims process.

Wis. Stat. §133.01 expressly states that the intent of our Wisconsin Legislature was to safeguard the public against monopolistic practices and encourage competition. Courts are expressly advised to give the most liberal construction to Chap. 133 to encourage competition. Wis. Stat. 133.18 expressly authorizes indirect purchasers to pursue private enforcement actions and as an additional incentive, awards treble damages to a successful action. The only way this Court can see effectuating Chapter 133 and Wis. Stat. 803.08 is to permit post-verdict individualized class member damage claims hearings. To require the jury to determine individualized damages would defeat both Wisconsin's monopoly law and class action law.

ORDER

For all of the foregoing reasons, IT IS ORDERED:

1.  The court certifies the below described class:

    All persons who purchased UST's moist snuff smokeless tobacco products in Wisconsin for personal use and not for resale from January 1990 to the 5/7/04.

2.  Plaintiff's Motion for Class Certification is granted.

3.  A Scheduling Conference will be held 6/24/04 at 9:30 A.M. The parties may appear by phone. Plaintiff will initiate the call.

Dated this 10th day of May 2004 at Milwaukee, Wisconsin.

BY THE COURT:

/s/   KITTY K. BRENNAN

Hon. Kitty K. Brennan



FILED
MAY 1 0 2004
JOHN BARRETT
Clerk of Circuit Court

15