Christopher M. Curran (*pro hac vice*)
ccurran@whitecase.com
George L. Paul (*pro hac vice*)
gpaul@whitecase.com
Lucius B. Lau (*pro hac vice*)
alau@whitecase.com
White & Case LLP
701 Thirteenth Street, N.W.
Washington, DC  20005
Telephone:  (202) 626-3600
Facsimile:  (202) 639-9355

*Counsel to Defendants Toshiba Corporation,*
*Toshiba America, Inc., Toshiba America*
*Information Systems, Inc., Toshiba America*
*Consumer Products, L.L.C., and Toshiba*
*America Electronic Components, Inc.*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
(SAN FRANCISCO DIVISION)

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Case No. 07-5944 SC MDL No. 1917 |
| This Document Relates to: Case No. C 11-6397 SC COSTCO WHOLESALE CORPORATION, Plaintiff, v. HITACHI, LTD., et al., Defendants. | **THE TOSHIBA DEFENDANTS' REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION** **ORAL ARGUMENT REQUESTED** Date:     October 30, 2012 Time:     11:00 a.m. Before:   Hon. Charles A. Legge, U.S. District Judge (Ret.), Special Master |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page(s)**

I.  INTRODUCTION ...........................................................................................................1

II. ARGUMENT ................................................................................................................2

    A.  The *LCD* Court Has Already Held That Costco Is Obligated To Arbitrate Its Claims Under The Arbitration Clause At Issue .................................................. 2

    B.  Costco Must Arbitrate With All Of The Toshiba Defendants ................................. 5

        1.  This Is Not a Situation Where A Signatory Seeks To Compel Arbitration With A Non-Signatory That Did Not Consent To Arbitration ..................................................................................................... 5

        2.  Costco Does Not Deny Its Allegations of Agency and Interdependent Conduct .................................................................................... 7

    C.  Costco Commenced Its Own Litigation ................................................................ 10

    D.  The Arbitrator — Not The Court — Should Decide Whether Treble Damages Are An Appropriate Remedy ................................................................. 11

    E.  The Court Should Dismiss All Of Costco's Claims That Are Subject To Arbitration ........................................................................................................... 14

III. CONCLUSION ...........................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

*Al-Safin v. Circuit City Stores, Inc.*,
    394 F.3d 1254 (9th Cir. 2005)......................................................................... 14

*Anderson v. Pitney Bowes, Inc.*,
    No. C 04-4808 SBA, 2005 WL 1048700 (N.D. Cal. May 4, 2005) ........................... 11-12

*AT&T Techs., Inc. v. Commc'ns Works of Am.*,
    475 U.S. 643 (1986).......................................................................................... 9

*Bencharsky v. Cottman Transmission Sys., LLC*,
    625 F. Supp. 2d 872 (N.D. Cal. 2008) ............................................................. 13

*Booker v. Robert Half Int'l, Inc.*,
    413 F.3d 77 (D.C. Cir. 2005) .......................................................................... 14

*Bridge Fund Capital Corporation v. Fastbucks Franchise Corporation*,
    622 F.3d 996 (9th Cir. 2010)........................................................................... 12

*Britton v. Co-op Banking Group*,
    No. 89-15143, 1989 WL 1128387 (9th Cir. Nov. 8, 1989) ............................... 10

*Britton v. Co-op Banking Group*,
    4 F.3d 742 (9th Cir. 1993)................................................................................ 9

*Britton v. Co-op Banking Group*,
    916 F.3d 1405 (9th Cir. 1990)........................................................................... 9

*Brown v. Gen. Steel Domestic Sales, LLC*,
    No. CV 08-00779 MMM (SHx), 2008 WL 2128057 (C.D. Cal.
    May 19, 2008).............................................................................................. 7-8

*Chastain v. Union Sec. Life Ins. Co.*,
    502 F. Supp. 2d 1072 (C.D. Cal. 2007) ........................................................ 8, 9

*Claimant v. Non-Depository Credit Institutions*,
    2011 WL 1760249 (AAA Apr. 27, 2011)....................................................... 13

*Comer v. Micor, Inc.*,
    436 F.3d 1098 (9th Cir. 2006).......................................................................... 6-7

*Committee for Recognition of Nursing Achievement v. Lucile Salter
Packard Children's Hospital*,
    No. 05:10-cv-01633JF, 2010 WL 4916434 (N.D. Cal. Nov. 23,
    2010) ............................................................................................................ 11

*Concat v. Unilever*,
    350 F. Supp. 2d 796 (N.D. Cal. 2004) ...................................................................... 3, 11

*Coors Brewing Co. v. Molson Breweries*,
    51 F.3d 1511 (10th Cir. 1995).......................................................................................... 4

*Dean Witter Reynolds, Inc. v. Byrd*,
    470 U.S. 213 (1985)....................................................................................................... 11

*Fujian Pacific Elec. Co. v. Bechtel Power Corp., Ltd.*,
    No. C 04-3126 MHP, 2004 WL 2645974  (N.D. Cal. Nov. 19,
    2004) ...........................................................................................................5-6, 7, 8

*Gaines v. Carrollton Tobacco Bd. of Trade, Inc.*,
    386 F.2d 757 (6th Cir. 1967) ........................................................................................ 14

*Graham Oil Co. v. ARCO Prods. Co.*,
    43 F.3d 1244 (9th Cir. 1994).......................................................................................... 13

*Hansen v. KPMG LLP*,
    No. CV 04-10525-GLT (MANx), 2005 WL 6051705 (C.D. Cal.
    Mar. 29, 2005)................................................................................................................. 8

*Hawkins v. KPMG LLP*,
    423 F. Supp. 2d 1038 (N.D. Cal. 2006) .......................................................................... 8

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
    No. 3:07-cv-5944 SC (N.D. Cal. Dec. 6, 2011)............................................................ 10

*In re Currency Conversion Fee Antitrust Litig.*,
    265 F. Supp. 2d 385 (S.D.N.Y. 2003)............................................................................. 7

*In re TFT-LCD Antitrust Litig.*,
    No. M 07-1827 SI, 2011 WL 4017961 (N.D. Cal. Sept. 9, 2011)...................................... 1

*In re TFT-LCD Antitrust Litig.*,
    No. M 07-1827 SI, 2011 WL 2650689 (N.D. Cal. July 6, 2011) .................................. 2, 4

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    No. M-07-1827 SI, 2011 WL 1753784 (N.D. Cal. May 9, 2011)   .................................... 6

*JLM Indus. v. Stolt-Nielsen SA*,
    387 F.3d 163 (2d Cir. 2004)..........................................................................3-4, 7, 8, 12

*Kristian v. Comcast Corp.*,
    446 F.3d 25 (1st Cir. 2006) ...................................................................................... 12, 14

*Lewis v. UBS Financial Servs., Inc.*,
    818 F. Supp. 2d 1161 (N.D. Cal. 2011) ........................................................................... 15

*Mediterranean Enters., Inc. v. Ssangyong Corp.*,
    708 F.2d 1458 (9th Cir. 1995)........................................................................................... 5

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
    473 U.S. 614 (1985).................................................................................................... 3, 13

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983)........................................................................................................... 3

*Mundi v. Union Sec. Life Ins. Co.*,
    555 F.3d 1042 (9th Cir. 2009)....................................................................................... 6, 7

*Poponin v. Virtual Pro, Inc.*,
    No. C 06-4019 PJH, 2006 WL 2691418 (N.D. Cal. Sept. 20, 2006)........................... 12, 13

*Redel's Inc. v. General Elec. Co.*,
    498 F.2d 95 (5th Cir. 1974)........................................................................................ 13-14

*Reddam v. KPMG LLP*,
    No. SACVO4-1227GLT (MANx), 2004 WL 3761875 (C.D. Cal.
    Dec. 14, 2004)............................................................................................................... 8

*Republic of Nicaragua v. Standard Fruit Co.*,
    937 F.2d 469 (9th Cir. 1991), *cert. denied*, 503 U.S. 919 (1992) ......................... 3, 12, 14

*Ross v. American Express*, *Inc.*,
    547 F.3d 137 (2d Cir. 2008)............................................................................................ 6

*Santa Cruz Medical Clinic v. Dominican Santa Cruz Hospital*,
    No. C93-20613, 1995 WL 232410 (N.D. Cal. Apr. 17, 1995) ........................................... 5

*Simula, Inc. v. Autoliv, Inc.*,
    175 F.3d 716 (9th Cir. 1999).......................................................................................... 3, 4

*Thinket Ink Info. Resources v. Sun Microsystems*,
    368 F.3d 1053 (9th Cir. 2004)..................................................................................... 14-15

*Thomson-CSF, SA v. Am. Arbitration Ass'n*,
    64 F.3d 773 (2d Cir. 1995)............................................................................................. 7

*United Food and Commercial Workers Union v. Geldin Meat Co.*,
    13 F.3d 1365 (9th Cir. 1994)..................................................................................... 11, 14

*United Steelworkers v. American Mfg. Co.*,
    363 U.S. 574 (1960) ................................................................................................. 3, 11

## I.      INTRODUCTION

The issue raised in the Toshiba Defendants' motion has already been decided by Judge Illston in the LCD case, a fact that Costco Wholesale Corporation ("Costco") largely ignores in its Opposition to Toshiba Defendants' Motion to Compel Arbitration ("Costco Opp."). *See In re TFT-LCD Antitrust Litig.*, No. M 07-1827 SI, 2011 WL 4017961 (N.D. Cal. Sept. 9, 2011) ("LCD Order") (granting the defendants' motion to compel arbitration of Costco's claims based on the same Vendor Agreement at issue in this case). In fact, Costco simply recycles many of the same arguments that it used in the LCD case. *See* Declaration of Lucius B. Lau, dated October 8, 2012 (October 8 Lau Declaration), Ex. A (Costco's Opposition to Defendants' Joint Motion to Compel Arbitration, No. M 07-1827 SI (N.D. Cal. August 8, 2011), ECF No. 3240). The Vendor Agreement that Judge Illston examined in the LCD case is the exact same Vendor Agreement that governs Costco's claims in this case. Just as the *LCD* Court held that Costco's claims against the Toshiba Defendants (among others), were subject to arbitration, the Court should do so here as well.

In its opposition, Costco again fails to establish why its valid arbitration agreement should not be enforced.

***First***, Costco bases its opposition on the faulty premise that its purchase contract is irrelevant to its antitrust claims. According to Costco, only disputes that require this Court to interpret or enforce contract terms are arbitrable. Costco Opp. at 5-6. This argument, however, is at odds with Supreme Court precedent and other case law, including previous decisions in the LCD case. Arbitration provisions, like Costco's, that call for the arbitration of ***all*** disputes "arising out of and relating to" the agreements, apply to antitrust claims.

***Second***, there is no dispute that Costco alleges that the Toshiba Defendants — regardless of corporate affiliation — acted as each other's agents. Compl. ¶ 55. Nor does Costco deny that it alleges interdependent and concerted conduct by all Toshiba Defendants and seeks to hold them jointly and severally liable for every alleged sale of a CRT product made to Costco "from any source." Compl. ¶ 9. Costco imposed broad arbitration provisions on one of the Toshiba Defendants and specifically alleged that all of the Toshiba Defendants acted as each other's

agents through interdependent conduct.  Pursuant to the relevant case law, such allegations allow non-signatory Toshiba Defendants to compel arbitration against Costco.

**Third**, Costco does not dispute that its arbitration clause is enforceable.  Instead, Costco argues that this action falls under an exemption to the arbitration clause because it was commenced by a third-party.  However, Costco alone commenced this separate action in the United States District Court for the Western District of Washington.  Its case was consolidated in this MDL Court for purposes of pretrial discovery.  Costco has not joined a separate action filed by a third-party.  Again, the *LCD* Court has already considered and rejected Costco's argument.

**Fourth**, Costco prematurely seeks a ruling from this Court declaring the damages limitation in its own contract unenforceable.  Under the law of the Ninth Circuit and, separately, the AAA Rules, which will apply to the arbitration pursuant to the Costco-drafted arbitration agreement, this issue is within the jurisdiction of the arbitrator.

**Finally**, the Court should dismiss all of Costco's claims that are subject to arbitration.  Costco provides no sound reason why arbitrable claims should remain in this case.

## II.     ARGUMENT

### A.     The *LCD* Court Has Already Held That Costco Is Obligated To Arbitrate Its Claims Under The Arbitration Clause At Issue

The *LCD* Court has already held that the very same Vendor Agreement between Costco and TACP, Inc. subjects Costco's claims against the Toshiba Defendants to arbitration.  LCD Order at *5-6, 8-9.  The *LCD* Court found that the scope of this arbitration clause was "at least as broad" as another arbitration clause that the Court also enforced in that case.  *See* LCD Order at *3 (citing Order Granting AU Optronics Corporation's Motion to Compel Arbitration, *In re TFT-LCD Antitrust Litig.*, No. M 07-1827 SI, 2011 WL 2650689, at *5 (N.D. Cal. July 6, 2011) ("Under the Ninth Circuit's reasoning, the language 'related to' must be read broadly, to encompass any matter that touches the contractual relationship between the parties.")).  The *LCD* Court, therefore, concluded that the same arbitration clause that applies in this case "subjects to arbitration any claim that 'relates to' the Vendor Agreement Costco had in place with its suppliers" and that "Costco's state and federal antitrust claims are likewise subject to

1    arbitration."  LCD Order at 3.  The arbitration clause should be enforced in the same way here as

2    well.

3            "The standard for demonstrating arbitrability is not a high one; in fact, a district court has

4    little discretion to deny an arbitration motion, since the [Federal Arbitration] Act is phrased in

5    mandatory terms."  *Concat v. Unilever, PLC*, 350 F. Supp. 2d 796, 804 (N.D. Cal. 2004)

6    (quoting *Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 475 (9th Cir. 1991), *cert.*

7    *denied*, 503 U.S. 919 (1992)).  Additionally, "the clear weight of authority holds that the most

8    minimal indication of the parties' intent to arbitrate must be given full effect."  *Id.*  Furthermore,

9    "as a matter of federal law, any doubts concerning the scope of the arbitrable disputes should be

10   resolved in favor of arbitration."  *Id.* (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr.*

11   *Corp.*, 460 U.S. 1, 24 (1983)).  As the *LCD* Court found, Costco has provided more than a

12   "minimal indication" of its intent to arbitrate and the Court should enforce that agreement as

13   required by "the clear weight of authority."  *Concat*, 350 F. Supp. 2d at 804 (quoting *Republic of*

14   *Nicaragua*, 937 F.2d at 475).

15           In its Opposition, Costco does not deny that its arbitration clause is a broad one.  As such,

16   the presumption of arbitrability is particularly strong.  Costco must present "forceful evidence of

17   a purpose to exclude the claim from arbitration . . . ."  *United Steelworkers v. Warrior & Gulf*

18   *Navigation Co.*, 363 U.S. 574, 585 (1960).  Costco nevertheless asserts that its claims do "not

19   depend on its contracts in the slightest" because the contracts are "incidental" and "no question is

20   raised as to their performance."  Costco Opp. at 7; *see also id.* 4 ("Costco's claims do not turn in

21   any way on interpreting or enforcing its vendor agreement with TACP.").  This assertion is

22   foreclosed by the prior decisions of this Court and other authorities, all of which have held that

23   antitrust claims are claims "arising under" or "related to" purchase contracts.  *See, e.g.*,

24   *Mitsubishi Motors Corp. v. Soler Chrysler Plymouth, Inc.*, 473 U.S. 614, 631 (1985) (enforcing

25   the parties' agreement to arbitrate antitrust claims arising from an international transaction);

26   *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721-23 (9th Cir. 1999) (holding that antitrust claims

27   arising from a supply contract and licensing agreement were "fully arbitrable"); *JLM Indus. v.*

28   *Stolt-Nielsen SA*, 387 F.3d 163, 172-75 (2d Cir. 2004) (holding that antitrust claims that

1    sufficiently "touch matters covered by the parties' contracts" are arbitrable); *TFT-LCD*, 2011

2    WL 2650689, at *5 (compelling arbitration of plaintiffs' antitrust claims because those claims

3    related to the purchases made under the parties' product purchase agreement, which contained a

4    valid arbitration clause).  Costco offers no evidence, let alone "forceful evidence," as to why its

5    antitrust claims should be excluded from arbitration.

6           In its July 6, 2011 decision involving Nokia, Judge Illston rejected the same argument

7    Costco makes here, finding that the language "any disputes related to this Agreement"

8    encompasses unfair competition and antitrust claims.  *See TFT-LCD*, 2011 WL 2650689, at *5

9    (finding that claims for overcharges on purchases touch upon matters in purchase contracts and

10   are therefore "sufficiently related" to the arbitration clause to be covered).  In so doing, Judge

11   Illston found that the "relating to" language in Nokia's arbitration agreement was even broader

12   than the language "arising in connection with," which the Ninth Circuit in *Simula* found covers

13   "all disputes having their origin or genesis in the contract."  *Id.* (discussing *Simula*, 175 F.3d at

14   721).

15          Of the many cases Costco cites in its Opposition, only two even address antitrust claims,

16   and those cases are distinguishable from the arbitration clause and type of contract at issue here.

17          In *Coors Brewing Co. v. Molson Breweries*, 51 F.3d 1511, 1516 (10th Cir. 1995), the

18   Tenth Circuit held that Coors was required to arbitrate its claims that were related to its 1985

19   licensing agreement with Molson Brewers ("Molson"), but that it could litigate its claims that

20   were not related to that agreement.  Although the 1985 agreement contained an arbitration

21   clause, that agreement simply provided that Molson would brew and distribute Coors products in

22   Canada.  *Id.* at 1512-13.   That agreement had nothing to do with Coors' claims against the

23   defendants Molson and Miller, alleging that those entities had formed a combination in restraint

24   of trade and lessened competition in the United States.  *Id.*  For that reason, the Tenth Circuit

25   held that "Coors' claims regarding market concentration are not related to the licensing

26   agreement," although the Court held that other claims that were related to the licensing

27   agreement were subject to arbitration.  *Id.* at 1517.

28

1    Similarly, *Santa Cruz Medical Clinic v. Dominican Santa Cruz Hospital*, No. C93-20613,

2    1995 WL 232410, at *2 (N.D. Cal. Apr. 17, 1995), is distinguishable because the arbitration

3    clauses at issue there contained the phrases "arising under" and "arising over" instead of the

4    "arising out of and relating to" language that is indicative of a broad agreement to arbitrate any

5    and all claims.  Referring to *Mediterranean Enters., Inc. v. Ssangyong Corp.*, 708 F.2d 1458 (9th

6    Cir. 1995), the *Santa Cruz* Court observed that "the Ninth Circuit recognized that clauses ***not***

7    using AAA's recommended "arising out of or relating to" language are limited in scope and only

8    cover disputes related to the interpretation of the contract."  *Santa Cruz¸* 1995 WL 232410 at *3

9    (emphasis added).

10   Costco is correct that the "the language of the contract" defines the scope of disputes

11   subject to arbitration.  Costco Opp. at 5.  The language of the Vendor Agreement was drafted

12   broadly — by Costco — to apply to all claims and disputes that "arise out of or relate to these

13   Standard Terms or ***any agreement*** between [TACP, Inc.] and PriceCostco."  Declaration of

14   Lucius B. Lau in Support of the Toshiba Defendants' Motion to Compel Arbitration, dated

15   August 24, 2012 ("Lau Decl.) Ex. A (emphasis added).  Thus, under the plain language of the

16   Vendor Agreement, Costco's claims are arbitrable.

17   **B.      Costco Must Arbitrate With All Of The Toshiba Defendants**

18   **1.      This Is Not a Situation Where A Signatory Seeks To Compel
             Arbitration With A Non-Signatory That Did Not Consent To**
19   **         Arbitration**

20   Costco's argument that its claims against parties other than TACP, Inc. are in no way

21   arbitrable rests on the same faulty logic that "Costco's claim does not depend on its contracts in

22   the slightest."  Costco Opp. at 7.  The *LCD* Court has already rejected Costco's argument and has

23   held that "Costco must arbitrate its claims against those defendants whose affiliates have

24   arbitration agreements with Costco."  LCD Order at *6.  The *LCD* Court noted that its holding

25   was "consistent with the general rule that 'when the charges against a parent company and its

26   subsidiary are based on the same facts and are inherently inseparable, a court may refer claims

27   against the parent to arbitration even though the parent is not formally a party to the arbitration

28   agreement.'"  LCD Order at *6 (citing *Fujian Pacific Elec. Co. v. Bechtel Power Corp., Ltd.*,

1   No. C 04-3126 MHP, 2004 WL 2645974, at *6 (N.D. Cal. Nov. 19, 2004)); *see also Mundi v.*

2   *Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1046 (9th Cir. 2009) (stating that a non-signatory may

3   enforce an arbitration clause where there is a "close relationship between the entities involved, as

4   well as the relationship of the alleged wrongs to the non-signatory's obligations and duties in the

5   contract . . . the claims [are] intertwined with the underlying contractual obligations").

6          Costco's reliance on another order from the LCD case is misplaced.  Costco Opp. at 6

7   (citing *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M-07-1827 SI, 2011 WL 1753784, at *5

8   (N.D. Cal. May 9, 2011)).  The current motion to compel is not analogous to the issues in that

9   order, which merely found that if the defendants in that case desired arbitration against absent

10  direct purchaser class members, the defendants would need to present specific contracts with

11  those plaintiffs.  *See id.*  ("Therefore, as an initial step, defendants must locate and identify every

12  arbitration agreement that they intend to assert against unnamed members of the DPP class.").

13  Here, the Toshiba Defendants have already located and identified the particular contract that

14  requires arbitration.

15         Similarly, *Ross v. American Express, Inc.*, 547 F.3d 137 (2d Cir. 2008), which is cited in

16  Costco's Opposition, is also distinguishable.  In finding that a non-signatory could not enforce an

17  arbitration clause against a plaintiff who had not drafted that clause, the Second Circuit found it

18  "crucial" that the plaintiff did not seek relief as a purchaser of the products at issue in the

19  contracts.  *Id.* at 139.  Costco, however, does seek relief as a purchaser of the products at issue in

20  its contract.  Moreover, Costco itself drafted the arbitration provision.

21         Costco also erroneously relies on inapposite cases in which a signatory (like Costco) tries

22  to force arbitration on a non-signatory that has not consented to arbitration.  Costco, for example,

23  cites often to the Ninth Circuit decision of *Comer v. Micor, Inc.*, 436 F.3d 1098 (9th Cir. 2006),

24  to support its arguments that it cannot be required to arbitrate with any non-signatory defendant

25  and for the broad proposition that federal policy favoring arbitration is inapplicable here.  Costco

26  Opp. at 4-6.  Costco, however, is conflating two very different issues:  (1) whether a non-

27  signatory can compel a signatory to arbitrate, and (2) whether a signatory can compel a non-

28  signatory to arbitrate.  These issues raise very different concerns about consent.  *Comer* only

addresses enforcing an arbitration clause with a non-signatory who did not consent. *See* 436 F.3d at 1101-02 ("Because [defendant] is invoking equitable estoppel against a nonsignatory, it is the first line of cases [*i.e.*, nonsignatories held to arbitration clauses "despite having never signed the agreement"] that is relevant."). The Ninth Circuit has in fact distinguished *Comer* on this very basis. *See Mundi*, 555 F.3d at 1046 (recognizing that *Comer* does not apply to enforcement of arbitration clauses by non-signatories against signatories); *accord Thomson-CSF, SA v. Am. Arbitration Ass'n*, 64 F.3d 773, 779 (2d Cir. 1995) (recognizing that a different "line of cases" applies where a signatory seeks to compel arbitration with a non-signatory than when a non-signatory seeks to compel arbitration with a signatory). In this case, both signatories and non-signatories are seeking to compel Costco, a signatory and drafter, to arbitrate as it agreed. Such arbitration is appropriate where the signatory has alleged that the non-signatories are agents of one another or that their liability is intertwined with the arbitration agreement. *See In re Currency Conversion Fee Antitrust Litig.*, 265 F. Supp. 2d 385, 406 (S.D.N.Y. 2003) (requiring arbitration of antitrust claims that "touch matters" covered by the cardholder agreements).

### 2. Costco Does Not Deny Its Allegations of Agency and Interdependent Conduct

Arbitration as to all parties is appropriate where the arbitration clause is a broad one and the signatory has alleged that non-signatories are agents of signatories. *Fujian,* 2004 WL 2645974, at *6; *JLM*, 387 F.3d at 172, 177-78. Furthermore, arbitration agreements are routinely enforced where non-signatories' liability is intertwined with agreements containing broad arbitration provisions. *E.g.*, *In re Currency Conversion Fee Antitrust Litig.*, 265 F. Supp. 2d at 410. A case cited by Costco, *Brown v. Gen. Steel Domestic Sales, LLC*, No. CV 08-00779 MMM (SHx), 2008 WL 2128057, at *7 (C.D. Cal. May 19, 2008), explains these principles best:

> It is appropriate to compel arbitration where claims allege "substantially interdependent and concerted misconduct" by a signatory and non-signatory[,] the "lawsuit against [the] non-signatory is inherently bound up with [the] claims against [the] signatory," and compelling arbitration is necessary "to avoid denying the signatory the benefit of the arbitration clause, and in order to avoid duplicative litigation which undermines the efficiency of arbitration."

1    *Id.* at *7 (quoting *Hawkins v. KPMG LLP*, 423 F. Supp. 2d 1038, 1050 (N.D. Cal. 2006)); *see*

2    *also Reddam v. KPMG LLP*, No. SACVO4-1227GLT (MANx), 2004 WL 3761875, at *5 (C.D.

3    Cal. Dec. 14, 2004) ("If the non-signatories were not allowed to compel arbitration in these

4    instances, the arbitration proceedings between the two signatories would be rendered

5    meaningless and the federal policy in favor of arbitration effectively thwarted.") (internal

6    quotations omitted).  The argument for arbitration is particularly strong where, as here, the

7    complaint fails to distinguish between signatory and non-signatory defendants and the plaintiff

8    makes "undifferentiated allegations" based on alleged misconduct that is "substantially

9    interdependent and concerted."  *Brown*, 2008 WL 2128057, at *8 (noting that "Courts have

10   consistently compelled arbitration under similar circumstances.") (citing *Chastain v. Union Sec.*

11   *Life Ins. Co.*, 502 F. Supp. 2d 1072, 1081 (C.D. Cal. 2007); *Hansen v. KPMG LLP*, No. CV 04-

12   10525-GLT (MANx), 2005 WL 6051705 (C.D. Cal. Mar. 29, 2005)).

13       As explained above, Costco's claims against the Toshiba Defendants are intertwined with

14   the Vendor Agreement containing a broad arbitration provision.  Moreover, Costco does not

15   deny that it seeks to hold the Toshiba Defendants liable for the alleged sales of their corporate

16   affiliates.  Nor does it deny its allegation that these corporate affiliates are a single entity for

17   these purposes.  Costco Opp. at 9-10.  It offers no argument against the proposition that

18   corporate family members can properly hold Costco to its obligation to arbitrate claims,

19   especially where it has alleged that these family members are one and the same.  *Fujian*, 2004

20   WL 2645974, at *6; *JLM*, 387 F.3d at 177-78.  Costco cannot now avoid the implications of its

21   broad allegation that "[e]ach Defendant acted as the principal, agent, or joint-venturer of, or for,

22   other Defendants with respect to the acts, violations, and course of conduct alleged by Costco."

23   Compl. ¶ 55.

24       In its Opposition, Costco would have the Court determine, at this stage of the litigation,

25   whether the Toshiba Defendants are in fact corporate affiliates or whether they are each other's

26   agents.  Costco Opp. at 10 (noting that "a plaintiff's allegations are not enough to establish an

27   agency relationship" and stating that "a general principal-agent relationship or even a principal-

28   agent relationship in carrying out the vendor agreements . . . is what Defendants must prove").

1    In deciding a motion to compel, however, a court may not delve into the merits of the claims.  As

2    stated in the cases cited in Costco's Opposition, "[t]he Court must look *to the Complaint* to

3    determine whether Plaintiffs' claims are intertwined with the [] agreements."   *Chastain*,

4    502 F. Supp. 2d at 1078 (emphasis added); *see also AT&T Techs., Inc. v. Commc'ns Works of*

5    *Am.*, 475 U.S. 643, 649 (1986) ("The third principle derived from our prior cases is that, in

6    deciding whether to submit a particular grievance to arbitration, a court is not to rule on the

7    potential merits of the underlying claims.").  "The courts, therefore, have no business weighing

8    the merits of the grievance, considering whether there is equity in a particular claim, or

9    determining whether there is particular language in the written instrument which will support the

10   claim." *AT&T*, 475 U.S. at 650 (internal quotation omitted).

11           Contrary to Costco's view (Costco Opp. at 10), *Britton v. Co-op Banking Group*,

12   916 F.3d 1405 (9th Cir. 1990) ("*Britton* I"), is inapposite.  In that case, the Ninth Circuit made

13   no determination as to whether the appellant had the right to arbitrate.  Rather, the Ninth Circuit

14   merely held that the district court was incorrect in denying the appellant's motion to compel on

15   the basis of waiver and noted that none of the dispositive factors for analyzing a motion to

16   compel were litigated at the district court:  "the nature of [the non-signatory's] relationship with

17   the [signatory], as well as the intent of the parties to the contract and the scope of arbitrability,

18   were neither analyzed by the district court nor briefed on appeal." *Id.* at 1413-14.  Thus, *Britton*

19   I in no way applies to this case.

20           *Britton v. Co-op Banking Group*, 4 F.3d 742 (9th Cir. 1993) ("*Britton* II") (Costco Opp.

21   at 10), is also distinguishable on its facts.  In that case, the Ninth Circuit's key inquiry was

22   whether the non-signatory appellant's "alleged wrongdoing as an agent, officer or employee of

23   [the signatory] during th[e] alleged period of time relate[d] to or [arose] from" the parties'

24   contract for the sale of securities, which contained an arbitration clause. *Id.* at 747.  The Ninth

25   Circuit held that it did not, because "the only relevant acts charged against [the appellant]" were

26   active attempts to "defraud the investors into not pursuing their law suits against persons who

27   originally sold securities under the contract." *Id.* at 747-48.  In that case, none of relevant acts

28   charged against the non-signatory appellant — namely, actively discouraging potential class

1   action members from bringing a lawsuit for securities fraud well after the sale of those securities

2   — sought to impose liability under the parties' contract for the sale of securities.  *Id; see also*

3   Appellees' Brief, *Britton v. Co-op Banking Group*, No. 89-15143, 1989 WL 1128387 (9th Cir.

4   Nov. 8, 1989) ("Appellant . . . was sued . . . because of acts undertaken long after execution of

5   the contracts of sale.").  As established above, Costco's claims against the Toshiba Defendants

6   do indeed relate to and arise out of the Vendor Agreement.

7   　　　　　**C.　　　Costco Commenced Its Own Litigation**

8   　　　　The *LCD* Court has already rejected Costco's argument that a contract provision

9   providing that Costco can bring court proceedings "solely as part of a separate litigation

10   commenced by an unrelated third party" has some application here.  Costco Opp. at 3; LCD

11   Order at *4.  Costco attempted the same argument in the LCD case and the Court rejected it

12   outright:

13   　　　"The Court agrees with defendants that once Costco opted out of the class action,
　　　its lawsuit was no longer 'part of separate litigation' within the meaning of the

14   　　　arbitration clause.   Even accepting Costco's description of the provision's
　　　purpose, the benefits of arbitration would not be 'largely lost' in this instance.

15   　　　Costco's decision to opt out subjected defendants to a new proceeding, separate
　　　from the class action, with new discovery deadlines and a trial that will take place

16   　　　in a new district.  Even if Costco's lawsuit was 'commenced by' the class action
　　　plaintiffs, it ceased being a 'part of' that case when Costco opted out of the class."

17   

18   *Id.*  Although Costco argues that the arbitration agreement should be "enforced by its terms,"

19   Costco does nothing to show that the exclusionary clause applies to Costco's litigation.  Costco

20   did not bring claims solely in the context of a separate litigation commenced by an unrelated

21   third party.  Rather, Costco filed a separate complaint and commenced its own claims in a federal

22   court.  It did not file in the MDL as an intervenor.  It is part of an MDL proceeding involving

23   unrelated third parties solely because it was consolidated here for purposes of pre-trial discovery.

24   Conditional Transfer Order (CTO-5), *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 3:07-

25   cv-5944 SC (N.D. Cal. Dec. 6, 2011) ECF No. 1009.

26   　　　　Costco's real argument appears to be that the federal court is a better and more efficient

27   forum for resolution of its claims.  *See* Costco Opp. at 5 (stating that sometimes the "Court's

28   active coordination of closely related cases likely makes arbitration less efficient than proceeding

in court"). That argument has no place here because the Supreme Court has rejected "the suggestion that the overriding goal of the Arbitration Act was to promote the expeditious resolution of claims." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219 (1985).

> **D.** **The Arbitrator — Not The Court — Should Decide Whether Treble Damages Are An Appropriate Remedy**

Costco improperly — and prematurely — asks this Court to declare its waiver of treble damages clause unenforceable should the Court compel arbitration. Costco Opp. at 13. However, that issue is not for the Court to decide. Rather, it is an issue for the arbitrator.

When a party moves to compel arbitration pursuant to an arbitration clause, as the Toshiba Defendants have done here, the court's only task is to determine whether the parties entered into a valid agreement to arbitrate. *See United Food and Commercial Workers Union v. Geldin Meat Co.*, 13 F.3d 1365, 1368 (9th Cir. 1994) ("The courts have the duty only to determine whether a party has breached its promise to arbitrate."); *United Steelworkers*, 363 U.S. at 582 ("[T]he judicial inquiry . . . must be strictly confined to the question [of] whether the reluctant party did agree to arbitrate . . . ."). Indeed, the Court should not review the merits of the dispute. *See United Food*, 13 F.3d at 1368 ("The Supreme Court has stated unequivocally that the courts have no business determining the *merits* of a grievance under the guise of deciding questions of arbitrability . . . .") (emphasis added); *Concat*, 350 F. Supp. 2d at 804 ("In determining whether to issue an order compelling arbitration, the court may not review the merits of the dispute . . . ."). Thus, the roles of the Court and the arbitrator are clear: (i) the Court should decide whether the parties agreed to arbitrate, and (ii) the arbitrator should determine the merits of the case. *See Committee for Recognition of Nursing Achievement v. Lucile Salter Packard Children's Hospital*, No. 05:10-cv-01633JF, 2010 WL 4916434, at *3 (N.D. Cal. Nov. 23, 2010) ("In deciding whether the parties have agreed to submit a particular grievance to arbitration the court is not to evaluate the merits of the grievance, rather it is merely required to determine whether the parties agreed to arbitrate."); *Anderson v. Pitney Bowes, Inc.*, No. C 04-4808 SBA, 2005 WL 1048700, *4 (N.D. Cal. May 4, 2005) ("It would be error for the Court to determine the merits of Plaintiff's argument … when the parties clearly submitted that

1    question to an arbitrator."); *JLM*, 387 F.3d at 171 ("We therefore 'have no business weighing the

2    merits of [JLM's] grievance[s] . . . The agreement is to submit all grievances to arbitration, not

3    merely those which the court will deem meritorious.'") (citation omitted).  The role of the Court

4    in deciding the present motion is to simply determine whether Costco and the Toshiba

5    Defendants have agreed to arbitrate the claims at issue.  Costco's request that the Court, in

6    addition to deciding the motion to compel, also make a preemptive declaration as to the merits of

7    Costco's claims is premature.

8        Costco cites to the Ninth Circuit decision *Bridge Fund Capital Corporation v. Fastbucks*

9    *Franchise Corporation,* 622 F.3d 996, 1000 (9th Cir. 2010), in support of its argument.  At issue

10   in that case, however, was whether the arbitration clause was unconscionable, especially given

11   that it contained an express limitation of treble damages on its face.  *Id.*  In this case, Costco does

12   not argue that its own arbitration clause is unconscionable, and the arbitration agreement and

13   Standard Terms here are silent on the issue of treble damages.  Even if Costco did make an

14   argument that its own arbitration clause is somehow unconscionable, it cannot prove both

15   procedural and substantive unconscionability, as required.  *Bridge Fund*, 622 F.3d at 1004.  In its

16   Opposition, Costco makes no showing of procedural unconscionability, surely because Costco is

17   itself the drafter of the clause it now seeks to invalidate.  Furthermore, "a contract that is

18   procedurally unconscionable is one that is a contract of adhesion . . . imposed and drafted by the

19   party of superior bargaining strength."  *Poponin v. Virtual Pro, Inc.*, No. C 06-4019 PJH, 2006

20   WL 2691418 (N.D. Cal. Sept. 20, 2006) (enforcing arbitration clause where "the parties were of

21   equal bargaining strength").  Costco does not — and cannot — argue that it had an inferior

22   bargaining position or that its own Vendor Agreement was otherwise unconscionable.

23       Costco also relies on the First Circuit case *Kristian v. Comcast Corp.*, 446 F.3d 25, 47-48

24   (1st Cir. 2006), to argue that the treble damages issue should be resolved by the Court.

25   However, that holding is not the law in the Ninth Circuit, as it has not been adopted by the Ninth

26   Circuit.  Rather, the law of the Ninth Circuit requires that the Court must decide only whether the

27   parties agreed to arbitrate.  *See Republic of Nicaragua*, 937 F.2d at 478 (the court's role "is

28   strictly limited to determining arbitrability . . . .").  The arbitrator should determine the remaining

1    issues raised by the claims.  This is particularly true where the selection of a particular set of

2    arbitration rules is evidence of an intent for the arbitrator to rule on issues of arbitrability.  *See*

3    *Poponin*, 2006 WL 2691418, at \*9 ("By agreeing to arbitration under the ICC rules, [the parties]

4    clearly and unmistakably agreed that questions of arbitrability would be submitted to

5    arbitration.").

6         Under the AAA Rules applicable to Costco's agreements, "[t]he arbitrator shall have the

7    power to rule on . . . any objections with respect to the existence, scope or validity of the

8    arbitration agreement."   AAA Commercial Arbitration R. & Mediation P. R-7(a).   AAA

9    arbitrators have decided whether arbitration terms are unconscionable.  *See, e.g., Claimant v.*

10   *Non-Depository Credit Institutions*, 2011 WL 1760249 at \*5-6 (AAA Apr. 27, 2011) (evaluating

11   whether a 60-day limitations provision is unconscionable).  Thus, the issue of whether treble

12   damages should apply to Costco's claims is an issue for the arbitrator.

13        The additional cases Costco cites to support its argument are inapposite.  In *Graham Oil*

14   *Co. v. ARCO Prods. Co.*, 43 F.3d 1244, 1247-48 (9th Cir. 1994), the Court addressed the validity

15   of an arbitration clause specifically in the context of the Petroleum Market Practices Act

16   ("PMPA").  The Court's reasoning in that case centered on Congress' intent in enacting that

17   specific statute and its narrow holding has no application in this case.  *Id.*  *Bencharsky v.*

18   *Cottman Transmission Sys., LLC*, 625 F. Supp. 2d 872, 882 (N.D. Cal. 2008), is similarly

19   distinguishable because in that case, which does not involve antitrust claims, the Plaintiffs

20   argued, and the Court agreed, that certain provisions of the parties' franchise agreement were

21   invalid because they were unconscionable, an argument that Costco does not raise here.

22        Costco also cites dicta in *Mitsubishi Motors Corp.*, 473 U.S. at 637 n. 19, in support of its

23   argument.  However, in that case the Supreme Court did not actually decide whether a party has

24   the right to pursue statutory remedies from antitrust violations.  *Id.* ("We therefore have no

25   occasion to speculate on this matter at this stage in the proceedings, when Mitsubishi seeks to

26   enforce the agreement to arbitrate, not to enforce an award.").  The remainder of the cases upon

27

28

1  which Costco relies were decided outside the Ninth Circuit, have not been followed by the Ninth

2  Circuit, and have no bearing on the current case.[1]

3         Finally, Costco suggests that the Court adopt the approach taken by the *LCD* Court when

4  it declared the 2004 Standard Terms limitation on treble damages unenforceable.  LCD Order at

5  *6 (citing *Kristian*, 446 F.3d at 47-48 and *Mistubishi Motors*, 473 U.S. at 637 n.19).  However,

6  the *LCD* Court incorrectly ventured into the territory reserved for the arbitrator, and outside the

7  law of the Ninth Circuit.  *See, e.g.*, *United Food*, 13 F.3d at 1368 ("The courts have the duty only

8  to determine whether a party has breached its promise to arbitrate."); *Republic of Nicaragua*,

9  937 F.2d at 478 ("[B]ecause of the presumption of arbitrability established by the Supreme

10 Court, courts must be careful not to overreach and decide the merits of an arbitrable claim.  Our

11 role is strictly limited to determining arbitrability and enforcing agreements to arbitrate, leaving

12 the merits of the claims and any defenses to the arbitrator.").  The Court should adhere to its duty

13 to "strictly limit" its inquiry in this motion to determining whether Costco did agree to arbitrate

14 and leave the question of damages to the arbitrator.

15 **E.     The Court Should Dismiss All Of Costco's Claims That Are Subject To Arbitration**

16         In our initial brief, we argued that Costco's claims against the Toshiba Defendants should

17 be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure because they are

18 covered by the Vendor Agreement's arbitration clause.  Toshiba Br. at 13.  In response, Costco

19 asserts that dismissal is not warranted because, even if the Court were to conclude that some of

20 Costco's claims are subject to arbitration, other claims should remain in this action.  Costco Opp.

21 at 11.  According to Costco, its complaint sets forth two categories of claims that are not subject

22 to arbitration:  (1) claims against the Toshiba Defendants based upon Costco's indirect purchases

23 of products containing CRTs manufactured by the Toshiba Defendants; and (2) claims against

24 the Toshiba Defendants based upon joint and several liability.  *Id.* at 12.  The existence of these

25

26 _____

27 [1] Of those case, neither *Redel's Inc. v. General Elec. Co.*, 498 F.2d 95, 99 (5th Cir. 1974), nor *Gaines v. Carrollton Tobacco Bd. of Trade, Inc.*, 386 F.2d 757, 759 (6th Cir. 1967), even address arbitration, and *Booker v. Robert Half Int'l, Inc.*, 413 F.3d 77, 79 (D.C. Cir. 2005), and *Al-Safin v.*

28 *Circuit City Stores, Inc.*, 394 F.3d 1254, 1261 (9th Cir. 2005), are distinguishable because those cases did not address arbitration agreements in the context of antitrust law.

1    claims, however, does not mean that the arbitrable claims (*i.e.*, the claims involving Costco's

2    direct purchases from the Toshiba Defendants) should remain in the case.  Dismissal of claims is

3    proper when the facts demonstrate that a plaintiff's claims are subject to arbitration.  *See Thinket*

4    *Ink Info. Resources v. Sun Microsystems*, 368 F.3d 1053, 1060 (9th Cir. 2004) (affirming district

5    court's dismissal of plaintiffs' claims that were subject to arbitration); *Lewis v. UBS Financial*

6    *Servs., Inc.*, 818 F. Supp. 2d 1161, 1169 (N.D. Cal. 2011) ("courts have discretion . . . to dismiss

7    claims that are subject to an arbitration agreement").  Thus, the Court should dismiss all of

8    Costco's claims that are subject to arbitration.

9    **III.    CONCLUSION**

10           For these reasons and the reasons contained in our motion to compel, the Court should

11   dismiss Costco's claims against the Toshiba Defendants that are subject to arbitration and direct

12   Costco to proceed to arbitration with respect to these claims.

13

14                                                  Respectfully submitted,

15        Dated:  October 8, 2012                **WHITE & CASE**LLP

16

17                                           By:   /s/ Lucius B. Lau
                                                  Christopher M. Curran (*pro hac vice*)
18                                                ccurran@whitecase.com
                                                  George L. Paul (*pro hac vice*)
19                                                gpaul@whitecase.com
                                                  Lucius B. Lau (*pro hac vice*)
20                                                alau@whitecase.com
                                                  701 Thirteenth Street, N.W.
21                                                Washington, DC  20005
                                                  tel.: (202) 626-3600
22                                                fax: (202) 639-9355

23                                                *Counsel to Defendants Toshiba Corporation,*
                                                  *Toshiba America, Inc., Toshiba America*
24                                                *Information Systems, Inc., Toshiba America*
                                                  *Consumer Products, L.L.C., and Toshiba*
25                                                *America Electronic Components, Inc.*

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

On October 8, 2012, I caused a copy of "TOSHIBA DEFENDANTS' REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION" to be electronically filed via the Court's Electronic Case Filing System, which constitutes service in this action pursuant to the Court's order of September 2, 2008.


_____*/s/ Lucius B. Lau*_____
Lucius B. Lau