# EXHIBIT A

David J. Burman (admitted *pro hac vice*)
DBurman@perkinscoie.com
Cori G. Moore (admitted *pro hac vice*)
CGMoore@perkinscoie.com
Troy P. Sauro, Bar No. 224097
TSauro@perkinscoie.com
Noah G. Purcell (admitted *pro hac vice*)
NPurcell@perkinscoie.com
PERKINS COIE LLP
Four Embarcadero Center, Suite 2400
San Francisco, CA 94111
Telephone: 415.344.7000
Facsimile: 415.344.7302

Attorneys for Plaintiff
Costco Wholesale Corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: TFT-LCD (FLAT PANEL) ANTITRUST LITIGATION | Master File No. M:07-1827 SI<br>MDL No. 1827 |
| This Document Relates to Individual Case No. 3:11-00058-SI | Individual Case No.: 3:11-cv-00058-SI |
| COSTCO WHOLESALE CORPORATION, | **COSTCO'S OPPOSITION TO DEFENDANTS' JOINT MOTION TO COMPEL ARBITRATION** |
| Plaintiff, | |
| v. | Date: August 26, 2011<br>Time: 9:00 a.m.<br>Dept: 10 (19th Floor)<br>Judge: Hon. Susan Y. Illston |
| AU OPTRONICS CORPORATION, et al., | |
| Defendants. | |

**REDACTED PUBLIC VERSION**

1

**TABLE OF CONTENTS**

2

PAGE

3  I.   INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 1

4  II.  FACTS ........................................................................................................................ 3

5       A.   Two of 31 Defendants Have Arbitration Agreements ........................................... 3

6       B.   The Arbitration Agreements ................................................................................. 4

7  III. ARGUMENT .............................................................................................................. 4

8       A.   Legal Standard ..................................................................................................... 4

9       B.   Costco's Claims Are Excluded From the Arbitration Clause ................................ 4

10      C.   Defendants Have Waived "Imposition" of the Arbitration
            Provision ............................................................................................................. 6
11
        D.   Even if Some Defendants Are Allowed to Compel
12           Arbitration, Parties with Whom Costco Never Signed
             Arbitration Agreements Cannot Force Costco to Arbitrate ................................. 10
13
             1.   Costco Cannot Be Equitably Estopped from
14                Asserting Its Right to Litigate Against the Non-
                  Signatory Defendants .............................................................................. 12
15
             2.   Costco Cannot Be Required to Arbitrate Against the
16                Non-Signatory Defendants Under an Agency Theory ............................... 17

17      E.   Before Costco May Be Forced to Arbitrate with Any
             Defendant, the Court Must Declare the 2004 Arbitration
18           Agreement's ▓▓▓▓▓▓ Unenforceable in
             the Antitrust Context............................................................................................. 21
19
        F.   A Stay is Unwarranted ........................................................................................ 22
20
   IV.  CONCLUSION.......................................................................................................... 23

21

22

23

24

25

26

27

28

i

## TABLE OF AUTHORITIES

PAGE

**FEDERAL CASES**

*Al-Safin v. Circuit City Stores, Inc.,*
394 F.3d 1254 (9th Cir. 2005) .......................................................................................... 21

*Am. Pipe & Constr. Co. v. Utah,*
414 U.S. 538 (1974) ............................................................................................................ 5

*Am. Soc. of Mechanical Engs., Inc. v. Hydrolevel Corp.,*
456 U.S. 556 (1982) .......................................................................................................... 21

*Amisil Holdings Ltd. v. Clarium Capital Mgmt.,*
622 F. Supp. 2d 825 (N.D. Cal. 2007) ........................................................... 16, 19, 20, 22

*Arnold v. Arnold Corp.,*
920 F.2d 1269 (6th Cir. 1990) .......................................................................................... 20

*AT & T Techs., Inc. v. Commc'ns Workers of Am.,*
475 U.S. 643 (1986) ................................................................................................. 1, 5, 14

*AT&T Corp. v. Innocom Telecom LLC,*
2007 WL 163193 (N.D. Cal. Jan. 17, 2007) ...................................................................... 9

*Bencharsky v. Cottman Transmission Sys., LLC,*
625 F. Supp. 2d 872 (N.D. Cal. 2008) ............................................................................. 22

*Booker v. Robert Half Int'l, Inc.,*
413 F.3d 77 (D.C. Cir. 2005) ........................................................................................... 21

*Boyd v. Homes of Legend, Inc.,*
981 F. Supp. 1423 (M.D. Ala. 1997), *rev'd on other grounds,*
188 F.3d 1294 (11th Cir. 1999) ........................................................................................ 18

*Brantley v. Republic Mortg. Ins. Co.,*
424 F.3d 392 (4th Cir. 2005) ........................................................................................... 11

*Bridas Sapic v. Gov't of Turkm.,*
345 F.3d 347 (5th Cir. 2003) ........................................................................................... 13

*Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.,*
622 F.3d 996 (9th Cir. 2010) ........................................................................................... 21

*Britton v. Co-op Banking Group,*
4 F.3d 742 (9th Cir. 1993) ..................................................................................... 18, 19, 20

*Britton v. Co-op Banking Group,*
916 F.2d 1405 (9th Cir. 1990) .......................................................................................... 17

*Brown v. Gen. Steel Domestic Sales, LLC,*
2008 WL 2128057 (C.D. Cal. May 19, 2008) ............................................................. 18, 19

ii

1

## TABLE OF AUTHORITIES
### (continued)

2

Page

3    *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
     429 U.S. 477 (1977)............................................................................................................ 21

4
     *Chastain v. Union Sec. Life Ins. Co.*,
5    502 F. Supp. 2d 1072 (C.D. Cal. 2007) ...................................................................... passim

6    *Choctaw Generation L.P. v. Am. Home Assurance Co.*,
     271 F.3d 403 (2d Cir. 2001)................................................................................................ 11
7
     *Comer v. Micor, Inc.*,
8    436 F.3d 1098 (9th Cir. 2006).................................................................................... 11, 12

9    *Crown, Cork & Seal Co. v. Parker*,
     462 U.S. 345 (1983).............................................................................................................. 5
10
     *EEOC v. Waffle House, Inc.*,
11   534 U.S. 279 (2002)........................................................................................................ 5, 10

12   *Fazio v. Lehman Bros.*,
     340 F.3d 386 (6th Cir. 2003)................................................................................................ 6
13
     *First Options of Chicago, Inc. v. Kaplan*,
14   514 U.S. 938 (1995)........................................................................................................ 1, 11

15   *Fisher v. A.G. Becker Paribas Inc.*,
     791 F.2d 691 (9th Cir. 1986)................................................................................................ 6
16
     *Freeman v. San Diego Ass'n of Realtors*,
17   322 F.3d 1133 (9th Cir. 2003)............................................................................................. 3

18   *Fujian Pacific Elec. Co., Ltd v. Bechtel Power Corp.*,
     2004 WL 2645974 (N.D. Cal. Nov. 19, 2004)...................................................... 14, 15, 17
19
     *Gaines v. Carrollton Tobacco Bd. of Trade, Inc.*,
20   386 F.2d 757 (6th Cir. 1967).............................................................................................. 21

21   *George Fischer Foundry Systems, Inc. v. Adolph H. Hottinger Maschinenbau GmbH*,
     55 F.3d 1206 (6th Cir. 1995)............................................................................................. 21
22
     *Graham Oil Co. v. ARCO Prods. Co.*,
23   43 F.3d 1244 (9th Cir. 1994).............................................................................................. 21

24   *Hill v. GE Power Sys., Inc.*,
     282 F.3d 343 (5th Cir. 2002)............................................................................................. 17
25
     *Hoffman Constr. Co. of Oregon v. Active Erectors & Installers, Inc.*,
26   969 F.2d 796 (9th Cir. 1992)................................................................................................ 6

27   *Hooper v. Advance Am., Cash Advance Ctrs. of Missouri, Inc.*,
     589 F.3d 917 (8th Cir. 2009)................................................................................................ 8
28

iii

**TABLE OF AUTHORITIES**
(continued)

Page

*Howsam v. Dean Witter Reynolds, Inc.,*
537 U.S. 79 (2002) ........................................................................................................... 11

*IDS Life Insurance Co. v. SunAmerica, Inc.,*
103 F.3d 524 (7th Cir. 1996) ...................................................................................... 22, 23

*In re Humana Inc. Managed Care Litig.,*
285 F.3d 971 (11th Cir. 2002), *rev'd on other grounds sub nom.*
*PacifiCare Health Sys., Inc. v. Book,* 538 U.S. 401 (2003) .................................. 12, 13, 16

*In re TFT-LCD (Flat Panel) Antitrust Litigation,*
MDL 1827, 2011 WL 1753784 (N.D. Cal. May 9, 2011) (Doc. 2731) ..................... passim

*In re TFT-LCD (Flat Panel) Antitrust Litigation,*
MDL 1827, 2011 WL 2650689 (N.D. Cal. July 6, 2011) (Doc. 3034) .......................... 6, 23

*In re TFT-LCD (Flat Panel) Antitrust Litigation,*
MDL 1827 (N.D. Cal. July 14, 2011) (Doc. 3110) ............................................................. 8

*In re TFT-LCD (Flat Panel) Antitrust Litigation,*
MDL 1827 (N.D. Cal. Aug. 3, 2011) (Doc. 3213) ........................................................ 2, 23

*JLM Industries, Inc. v. Stolt-Nielsen, S.A.,*
387 F.3d 163 (2d Cir. 2004) ............................................................................................ 15

*Kiskadee Commc'ns (Bermuda), Ltd. v. Father,*
No. C 10–05277, 2011 WL 1044241 (N.D. Cal. Mar. 22, 2011) ...................................... 20

*Klay v. All Defendants,*
389 F.3d 1191 (11th Cir. 2004) ....................................................................................... 12

*Kramer v. Hammond,*
943 F.2d 176 (2d Cir. 1991) ............................................................................................ 10

*Kristian v. Comcast Corp.,*
446 F.3d 25 (1st Cir. 2006) ............................................................................................. 21

*Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.,*
67 F.3d 20 (2d Cir. 1995) .................................................................................................. 9

*Letizia v. Prudential Bache Sec., Inc.,*
802 F.2d 1185 (9th Cir. 1986) .............................................................................. 11, 19, 20

*Lyzwa v. Chu,*
1998 WL 326768 (N.D. Cal. Feb. 2, 1998) ..................................................................... 10

*Maganallez v. Hilltop Lending Corp.,*
505 F. Supp. 2d 594 (N.D. Cal. 2007) ............................................................................... 4

*Menorah Ins. Co. v. INX Reinsurance Corp.,*
72 F.3d 218 (1st Cir. 1995) ............................................................................................. 10

iv

# TABLE OF AUTHORITIES
## (continued)

Page

*Miller Brewing Co. v. Fort Worth Distrib. Co.*,
781 F.2d 494 (5th Cir. 1986)............................................................................................... 9

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
473 U.S. 614 (1985)............................................................................................................ 21

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983)............................................................................................. 11, 14, 22

*MS Dealer Serv. Corp. v. Franklin*,
177 F.3d 942 (11th Cir. 1999).................................................................................... 11, 16

*Mundi v. Union Sec. Life Ins. Co.*,
555 F.3d 1042 (9th Cir. 2009).................................................................................... 11, 13

*Parler v. KFC Corp.*,
529 F. Supp. 2d 1009 (D. Minn. 2008) .............................................................................. 7

*Petroleum Pipe Ams. Corp. v. Jindal Saw, Ltd.*,
575 F.3d 476 (5th Cir. 2009)............................................................................................... 8

*Pritzker v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*,
7 F.3d 1110 (3d Cir. 1993)................................................................................................. 20

*Rankin v. Allstate Ins. Co.*,
336 F.3d 8 (1st Cir. 2003) ................................................................................................... 9

*Redel's Inc. v. General Elec. Co.*,
498 F.2d 95 (5th Cir. 1974)............................................................................................... 21

*Ross v. Am. Express Co.*,
547 F.3d 137 (2d Cir. 2008).................................................................................... 11, 13, 14

*S&H Contractors, Inc. v. A.J. Taft Coal Co.*,
906 F.2d 1507 (11th Cir. 1990)........................................................................................... 9

*Santa Cruz Med. Clinic v. Dominican Santa Cruz Hosp.*,
No. C93-20613, 1995 WL232410, at *3 (N.D. Cal. Apr. 17, 1995) .................................. 6

*Sokol Holdings, Inc. v. BMB Munai, Inc.*,
542 F.3d 354 (2d Cir. 2008).................................................................................... 1, 11, 13, 15

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
130 S. Ct. 1758 (2010) ........................................................................................................ 4

*United States v. Bestfoods*,
524 U.S. 51 (1998)............................................................................................................. 17

*United States v. Neumann Caribbean Int'l, Ltd.*,
750 F.2d 1422 (9th Cir. 1985)........................................................................................... 22

v

1

## TABLE OF AUTHORITIES
### (continued)

2

Page

3   *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*,
        363 U.S. 574 (1960) .......................................................................................................... 4

4

5   *Van Ness Townhouses v. Mar Indus. Corp.*,
        862 F.2d 754 (9th Cir. 1988) ................................................................................... 2, 9, 10

6   *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.*,
        489 U.S. 468 (1989) ..................................................................................................... 1, 4

7

8   *Wash. Mut. Fin. Group, LLC v. Bailey*,
        364 F.3d 260 (5th Cir. 2004) ............................................................................................ 12

9   **OTHER CASES**

10  *In re Merrill Lynch Trust Co. FSB*,
        235 S.W.3d 185 (Tex. 2007) ............................................................................................. 14

11
    **FEDERAL STATUTES**
12
    9 U.S.C. § 4 ..................................................................................................... 8, 18, 21

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

vi

| | |
|---|---|
| 1 | **I.    INTRODUCTION AND SUMMARY OF ARGUMENT** |
| 2 | In this multi-district litigation, started years ago by parties unrelated to Costco, Costco |
| 3 | alleged antitrust violations against 31 defendants. Because two of those defendants assert |
| 4 | contracts with Costco containing arbitration clauses, all defendants now seek to force Costco to |
| 5 | arbitrate its claims. But arbitration "is a matter of consent, not coercion," *Volt Info. Scis., Inc. v.* |
| 6 | *Bd. of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 479 (1989), and "a party cannot be |
| 7 | required to submit to arbitration any dispute which he has not agreed so to submit," *AT & T* |
| 8 | *Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (internal quotation marks |
| 9 | and citation omitted). *See also In re TFT-LCD (Flat Panel) Antitrust Litigation* ("*In re Flat* |
| 10 | *Panel*"), MDL 1827, 2011 WL 1753784, at *5 (N.D. Cal. May 9, 2011) (Doc. 2731) ("[T]here is |
| 11 | a 'black letter rule that the obligation to arbitrate depends on consent . . . .'") (quoting *Sokol* |
| 12 | *Holdings, Inc. v. BMB Munai, Inc.*, 542 F.3d 354, 361-62 (2d Cir. 2008)). |
| 13 | The Court should not force Costco into arbitration, and certainly not as to defendants with |
| 14 | whom Costco never agreed to arbitrate anything. Even as to the two defendants that allege |
| 15 | vendor agreements with Costco, the arbitration provision is inapplicable here. The provision |
| 16 | recognizes that the benefits of arbitration largely disappear when a third party has commenced |
| 17 | related litigation. That litigation will continue to affect Costco and its vendor even if they |
| 18 | arbitrate, and coordination in court with such related litigation could, as is certainly the case here, |
| 19 | present greater efficiencies than arbitration. Thus, the provision says that Costco and the vendor |
| 20 | |
| 21 | Declaration of Geoff Shavey ("Shavey Decl.") Exhibits |
| 22 | A, ¶ 20; C, ¶ 20; E, ¶ 20; G, ¶ 20. That is what has happened here. This case was commenced by |
| 23 | third parties unrelated to Costco—the class representatives—and Costco now seeks to bring |
| 24 | claims against Defendants as part of that multi-district proceeding, as allowed by the contract. |
| 25 | *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) ("[A]rbitration . . . is a |
| 26 | way to resolve those disputes—but only those disputes—that the parties have agreed to submit to |
| 27 | arbitration."). |
| 28 | |

1      Moreover, the two defendants that say Costco "imposed" the bilateral arbitration

2    provision on them (Defendants' Joint Motion to Compel Arbitration ("Motion"), Doc. 3183, at 5)

3    have accepted relief from that imposition and waived any right they may have had to enforce the

4    provision. Those Defendants were aware of the contracts they signed; they have repeatedly acted

5    inconsistently with their claimed right to arbitrate; and their conduct has prejudiced Costco both

6    in terms of its ability to prosecute its case successfully and its investment of enormous time and

7    effort in the MDL proceeding, much of which will be lost if Costco is forced to arbitrate. *See Van*

8    *Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754, 758-59 (9th Cir. 1988) (stating Ninth

9    Circuit test for waiver and finding prejudice where non-movant "relied to [its] detriment on [the

10   movant's] failure to move for arbitration of the arbitrable claims"). It is Defendants' awareness

11   of these added burdens to Costco that is driving their sudden quest for arbitration.

12      Further, there is no justification for allowing the vast majority of Defendants, who never

13   signed arbitration agreements with Costco, to force Costco into arbitration. "[A] nonsignatory

14   defendant faces a heavy burden to show that the signatory plaintiff intended to submit to

15   arbitration, notwithstanding the absence of a formal agreement." *In re Flat Panel*, 2011 WL

16   1753784, at *5 (Doc. 2731). Defendants have utterly failed to satisfy that burden here.

17      Finally, if the Court decides to order Costco to arbitrate with some defendants,[1] the Court

18   should not stay proceedings as to the remaining defendants. As the Court has repeatedly held, as

19   recently as last week, "in light of the many other defendants in this case it would make little sense

20   to stay [a plaintiff's] claims" against certain defendants while the plaintiff arbitrates as to other

21   claims or defendants, as the defendants will have to continue litigating as to other claims and

22   plaintiffs regardless. *In re Flat Panel*, Doc. 3213, at 5 (N.D. Cal. Aug. 3, 2011). Thus, only

23   delay and inefficiency would result from staying Costco's claims if some subset of them must

24   proceed in arbitration.

25

26

27   _____

[1] As explained in Section III.E., even if the Court concludes that Costco's claims against some defendants are otherwise subject to arbitration, it may compel arbitration only if it first declares

28

2

## II. FACTS

### A. Two of 31 Defendants Have Arbitration Agreements

In its complaint, Costco named 31 defendants and identified five alleged co-conspirators. *In re Flat Panel*, No. 3:11-cv-00058, Doc. 1.[2] Defendants contend that only two of those defendants ever had arbitration agreements with Costco: Samsung Electronics America, Inc., and Sharp Electronics Corp. Motion at 6; *see also* Shavey Decl. ¶ 16. Defendants seek to boost this number by discussing non-defendant co-conspirators (one of which—NEC LCD Technologies— had a vendor agreement) and citing agreements between Costco and various companies Defendants claim as current or even former affiliates. Motion at 6-7. Defendants are studiously cryptic in much of this discussion, but the details matter.

To begin with, almost all Defendants admit that they had no contract with Costco, and half do not even allege that Costco had a contract with any of their affiliates: AU Optronics Corp.; AU Optronics Corp. America; Chi Mei Optoelectronics Corp.; Chi Mei Optoelectronics, USA, Inc.; Chunghwa Picture Tubes, Ltd.; CMO Japan Co., Ltd.; Hannstar Display Corp.; Hitachi, Ltd.; Hitachi Displays, Ltd.; Hitachi Electronic Devices (USA), Inc.; LG Display Co.; LG Display America; and Tatung Company of America, Inc. *See also* Shavey Decl. ¶ 17.[3]

Some Defendants claim that Costco had arbitration agreements with one or more non-defendant affiliates, but they provide no explanation of their relationship with these affiliates or the products they supposedly sold to Costco. Indeed, they expressly disclaim liability for any sales these entities made to Costco. Motion at 6 n.6. This lack of explanation appears to be for good reason: further explanation would have shown how weak Defendants' assertions are. For example, Defendants note that Costco has an arbitration agreement with Philips Consumer Lifestyle. Philips Consumer Lifestyle is not a defendant—not because Costco strategically omitted it to avoid arbitration, but rather because, to Costco's knowledge, Philips Consumer

---

[2] Costco has voluntarily dismissed five defendants: Chi Mei Corp.; LG Electronics, Inc.; LG Electronics U.S.A., Inc.; Nexgen Mediatech, Inc.; and Nexgen Mediatech USA, Inc. Docs. 2490, 2828. It intends to dismiss two more. Costco may also add additional defendants as it continues to gather evidence and the MDL evolves.

[3] Even if Costco had no vendor agreement with a defendant, it may have purchased directly from that defendant, *see* Shavey Decl. ¶¶ 5, 18, and even if it did not, it still may bring claims against that defendant under federal law, *see, e.g., Freeman v. San Diego Ass'n of Realtors*, 322 F.3d 1133, 1146 (9th Cir. 2003) ("[I]ndirect purchasers can sue for damages if there is no realistic possibility that the direct purchaser will sue its supplier over the antitrust violation.").

3

1  Lifestyle has never sold LCD Products. Shavey Decl. ¶ 19 (it sells personal care products, such

2  as Norelco shavers and Sonicare toothbrushes). *See also id.* ¶ 19 (Epson America, another

3  affiliate Defendants cite, "appears to sell printers, scanners, projectors, and related products").

4  **B.    The Arbitration Agreements**

5          Costco expects vendors to enter a "Basic Vendor Agreement." Shavey Decl. ¶ 5.

6  Vendors typically agree, but not always, and vendors sometimes remove or alter terms. *Id.* The

7  Basic Vendor Agreement incorporates Costco's Standard Terms by reference. *Id.* ¶ 6. Costco

8  updated its Standard Terms in 1997, 2000, and 2004. *Id.* ¶ 7.

9          Each iteration of the Standard Terms provides for a quick arbitration process and excludes

10  from arbitration situations where

11

12          *Id.* Exhibits A, ¶ 20; C, ¶ 20; E, ¶ 20; G, ¶ 20. The 2004 terms added a provision

13  specifying that

14

15                                      *Id.* Exhibit G, ¶ 20.

16                          **III.    ARGUMENT**

17  **A.    Legal Standard**

18          "A party seeking to compel arbitration bears the burden of proving the existence of a valid

19  and enforceable arbitration agreement . . . ." *Maganallez v. Hilltop Lending Corp.*, 505 F. Supp.

20  2d 594, 599-600 (N.D. Cal. 2007). Moreover, "a nonsignatory defendant faces a heavy burden to

21  show that [a] signatory plaintiff intended to submit to arbitration, notwithstanding the absence of

22  a formal agreement." *In re Flat Panel*, 2011 WL 1753784, at *5 (Doc. 2731).

23  **B.    Costco's Claims Are Excluded From the Arbitration Clause**

24          Defendants fill their brief with references to the federal policy favoring arbitration, but

25  they ignore that "the central or 'primary' purpose of the [Federal Arbitration Act (FAA)] is to

26  ensure that 'private agreements to arbitrate are enforced *according to their terms.*'" *Stolt-Nielsen*

27  *S.A. v. AnimalFeeds Int'l Corp.*, 130 S. Ct. 1758, 1773 (2010) (quoting *Volt*, 489 U.S. at 479)

28  (emphasis added). *See also United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363

                                                    4

U.S. 574, 582 (1960) ("[A]rbitration is a matter of contract and a party cannot be required to
submit to arbitration any dispute which he has not agreed so to submit."); *AT & T*, 475 U.S. at
648 (same). Thus, "it is the language of the contract," not some federal policy, "that defines the
scope of disputes subject to arbitration." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002).

Here, the contracts between Costco and two defendants do provide for quick and
inexpensive arbitration for typical vendor disputes, but they exclude claims relating to

This provision recognizes that where such
related litigation is not subject to arbitration and will proceed no matter what, the benefits of
arbitration are largely lost. For that reason, the arbitration provision allows related claims to
proceed in court. Here, in fact, the Court's active coordination of closely related cases likely
makes arbitration less efficient than proceeding in court.

Costco's claim falls under the contractual exclusion. Costco had no role in the class
representatives commencing this claim, and those proceedings will continue, and will involve
Costco at least in discovery, regardless of whether Costco arbitrates with any defendants.

Defendants will argue that Costco's claim ceased being

when Costco opted out of the direct purchaser class and
filed its complaint. But that argument ignores the purpose of the provision in question and the
nature of class actions. Costco's claims against Defendants           at the time the direct
purchaser class representatives filed their claims and sought to represent Costco's interests. That
is why, for example, the statute of limitations for Costco's claims was tolled while the Court
considered whether to certify the class. *See, e.g., Crown, Cork & Seal Co. v. Parker*, 462 U.S.
345, 353 (1983) ("[C]ommencement of a class action suspends the applicable statute of
limitations as to all asserted members of the class.") (quoting *Am. Pipe & Constr. Co. v. Utah*,
414 U.S. 538, 554 (1974)).

Furthermore, Defendants' blithe assertion that "All of Costco's Claims As to All
Defendants Relate to Costco's Vendor Agreements" cannot withstand even passing scrutiny.
Motion at 9. Defendants contend that Costco had vendor agreements with only two of them, and
even as to those Defendants Costco's claims do not turn in any way on interpreting or enforcing

5

COSTCO'S OPPOSITION TO DEFENDANTS' JOINT MOTION TO COMPEL ARBITRATION
3:07-MD-1827-SI // 3:11-cv-00058-SI

1   the vendor agreements. *See, e.g., Fazio v. Lehman Bros.*, 340 F.3d 386, 395 (6th Cir. 2003) ("A

2   proper method of analysis here is to ask if an action could be maintained without reference to the

3   contract or relationship at issue. If it could, it is likely outside the scope of the arbitration

4   agreement."); *Santa Cruz Med. Clinic v. Dominican Santa Cruz Hosp.*, No. C93-20613, 1995

5   WL232410, at *3 (N.D. Cal. Apr. 17, 1995) (denying motion to compel and saying the "claims

6   are not arbitrable because no language in the contracts . . . needs to be interpreted in order to

7   evaluate the merits of plaintiffs' antitrust claims"). And, of course, Costco's claims against the

8   many Defendants without vendor agreements could not depend on such agreements. Defendants'

9   motion is thus plainly distinguishable from the motion to compel arbitration filed earlier by AU

10   Optronics against Nokia. There, the Court concluded that "[a]ll of the purchases at issue . . . were

11   made under the" parties' contract. *In re Flat Panel*, 2011 WL 2650689, at *5 (N.D. Cal. July 6,

12   2011) (Doc. 3034). That is not the case here, where many of the purchases at issue were not

13   made under a contract between the parties, and, indeed, Costco had no vendor agreement with the

14   vast majority of Defendants.

15   **C.   Defendants Have Waived "Imposition" of the Arbitration Provision**

16         "A party seeking to prove waiver of a right to arbitration must demonstrate: (1)
17         knowledge of an existing right to compel arbitration; (2) acts inconsistent with
            that existing right; and (3) prejudice to the party opposing arbitration resulting
18         from such inconsistent acts."

19   *In re Flat Panel*, 2011 WL 2650689, at *7 (Doc. 3034) (quoting *Fisher v. A.G. Becker Paribas*

20   *Inc.*, 791 F.2d 691, 694 (9th Cir. 1986)). All three requirements are satisfied here.

21        First, there can be no question that Defendants, at least those who have vendor agreements

22   with Costco, knew of their right to seek arbitration. *See, e.g., Hoffman Constr. Co. of Oregon v.*

23   *Active Erectors & Installers, Inc.*, 969 F.2d 796, 798 (9th Cir. 1992) ("[I]t cannot be said that

24   Active lacked knowledge of the right to compel arbitration. The contract itself called for

25   arbitration of disputes between Active and Hoffman."). Defendants suggest that they learned of

26   the agreements only through discovery from Costco, Motion at 3, but that pretense plainly fails.

27   As the Court has recognized, all of these contracts "are presumably in defendants' possession,"

28   and Defendants should not be allowed to rely on ignorance of their own contracts to avoid waiver.

6

1   *In re Flat Panel*, 2011 WL 1753784, at *5-6 (Doc. 2731); *see also Parler v. KFC Corp.*, 529 F.

2   Supp. 2d 1009, 1014 (D. Minn. 2008) ("[W]hether plaintiffs actually knew of the arbitration

3   clause in their contracts is irrelevant; that knowledge is imputed as a matter of law."). Indeed,

4   when Defendants moved in March 2011 to stay litigation by the direct purchaser class (a group

5   that had included Costco and that included numerous purchasers much smaller than Costco), they

6   conceded "their knowledge of the arbitration clauses at issue." *In re Flat Panel*, 2011 WL

7   1753784, at *2 (Doc. 2731). And Costco sent vendors periodic reminder notices of their

8   contracts. Shavey Decl. ¶ 8.

9       Second, Defendants took numerous acts inconsistent with their current demand for

10  arbitration, acts that induced reliance by Costco and allowed Defendants to obtain information

11  potentially unavailable to them in arbitration. The Court has noted that throughout litigation by

12  the direct purchaser class, to which Costco belonged, "defendants . . . engaged in conduct that is

13  inconsistent with their professed intention to assert arbitration rights in this case." *In re Flat

14  Panel*, 2011 WL 1753784, at *3 (Doc. 2731). The Court nonetheless allowed Defendants an

15  opportunity to seek arbitration, at least against members of the direct purchaser class, by filing a

16  motion by June 3, 2011. In an order "Relat[ing] to All Direct Purchaser Actions," *id.* at *1, the

17  Court noted that Defendants' failure to file such a motion "shall constitute waiver of the right to

18  arbitrate the claims." *Id.* at 8. Defendants nonetheless chose not to file, again acting

19  "inconsistent with their professed intention to assert arbitration rights." *Id.* at *6.

20      Defendants' behavior as to Costco was more clearly and repeatedly inconsistent, more

21  likely strategic, and more harmful. As the Court said as to the class, and as is even clearer as to

22  Costco, "defendants' previous conduct in this litigation evinces either previous indifference to the

23  arbitration clauses they now seek to assert or, possibly, a strategic decision to delay their

24  enforcement." *Id.* at *3. Not only did they seek to dismiss Costco's claims when Costco was

25  merely a member of the direct purchaser class, but days before the June 3 deadline, when the

26  question of arbitration was squarely before them (even if they thought the Court's order

27  applicable only to the class), they moved to dismiss Costco's claim as an opt-out plaintiff. These

28  motions to dismiss sought decisions on the merits, not merely to clarify jurisdictional issues, and

7

1      were inconsistent in substance and timing with a request for arbitration: "A party waives

2      arbitration by seeking a decision on the merits before attempting to arbitrate." *Petroleum Pipe*

3      *Ams. Corp. v. Jindal Saw, Ltd.*, 575 F.3d 476, 480 (5th Cir. 2009); *Hooper v. Advance Am., Cash*

4      *Advance Ctrs. of Missouri, Inc.*, 589 F.3d 917, 921 (8th Cir. 2009) ("[A] request to dispose of a

5      case on the merits before reaching arbitration is inconsistent with resolving the case through

6      arbitration.").

7           Moreover, after the June 3 deadline and two weeks before filing their motion to compel

8      arbitration with Costco, Defendants entered a stipulation with Costco and other plaintiffs

9      extending the deadlines for Defendants' expert reports, altering other dates, and confirming the

10     trial and other schedules applicable to various opt-out plaintiffs, including Costco. *In re Flat*

11     *Panel*, Doc. 3110 (July 14, 2011). As part of that stipulation, Defendants agreed that Costco

12     belonged in the first direct action plaintiff track and that trial on Costco's claims would occur in

13     November 2012. *Id.* In negotiating and accepting that agreement, Defendants never raised or

14     reserved the option to seek arbitration. Declaration of David Burman ("Burman Decl.") ¶ 9.

15          Defendants also requested extensive discovery from Costco both before and after Costco

16     opted out of the direct purchaser class, imposing significant burdens on Costco. Declaration of

17     Cori Gordon Moore ("Moore Decl.") ¶¶ 3-9. In April 2011, Defendants (through Toshiba) served

18     Costco with document requests and a 30(b)(6) deposition notice seeking testimony on 22 topics.

19     *Id.* ¶ 5. Costco has invested significant time and resources in collecting and producing documents

20     in response to these requests and preparing and making available a corporate representative to be

21     deposed. *Id.* ¶¶ 5-8. These responsive discovery efforts are ongoing. *Id.* ¶¶ 6-9.

22          Critically, Defendants took acts that vitiated the heart of the arbitration provision at issue.

23     The essence of the provision is limiting time and expense. It specifies that

24

25                                                       Shavey

26     Decl. Exhibits A, ¶ 20; C, ¶ 20; E, ¶ 20; G, ¶ 20. While these procedures would be extremely

27     difficult if not impossible for an antitrust case of this size, Defendants' motion necessarily

28     invokes them. 9 U.S.C. § 4 (aggrieved party may petition "for an order directing that such

8

1  arbitration proceed in the manner provided for in such agreement"). But Defendants' delay has
2  eliminated their intended benefit, at least to Costco. Throughout this litigation, Defendants have
3  argued that they need additional time to prepare their cases, that delay is warranted until after
4  their criminal proceedings conclude, and that presenting their defenses will take great time and
5  care. The Court and Special Master have often accepted their arguments. *See, e.g., In re Flat*
6  *Panel*, Docs. 2615, 3025, 3026. Defendants cannot spend years pleading for additional leeway to
7  present their cases and then, once they are ready, turn around and demand an immediate chance to
8  try their case in a very limited time frame and forum. Burman Decl. ¶¶ 10-14.

9        Furthermore, Defendants waited nearly eight months after Costco filed its complaint to
10 move to compel arbitration, a delay many courts have deemed inconsistent with an arbitration
11 demand, and which is particularly so here where the delay since Costco's complaint is twice the
12 length of the entire period the arbitration provision contemplates for resolution and Costco's
13 claim had been part of this litigation since it was first asserted by the direct purchaser class. *See,*
14 *e.g., AT&T Corp. v. Innocom Telecom LLC*, 2007 WL 163193 (N.D. Cal. Jan. 17, 2007) (six
15 months); *S&H Contractors, Inc. v. A.J. Taft Coal Co.*, 906 F.2d 1507, 1514 (11th Cir. 1990)
16 (eight months); *Miller Brewing Co. v. Fort Worth Distrib. Co.*, 781 F.2d 494, 497 (5th Cir. 1986)
17 (less than eight months); *Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20, 26
18 (2d Cir. 1995) (seven months).

19       In short, Defendants repeatedly engaged in acts inconsistent with their alleged right to
20 arbitrate; now that they have obtained the benefits of those acts, they seek to avoid the burdens.
21 This the Court should not allow.

22       Third, Defendants' acts prejudiced Costco in terms of money, time, and Costco's legal
23 position. Costco need show only "a modicum of prejudice" to justify a waiver finding, *Rankin v.*
24 *Allstate Ins. Co.*, 336 F.3d 8, 12 (1st Cir. 2003), and Costco has suffered far more than that here.

25       Prejudice is present where the non-movant "relied to [its] detriment on [the movant's]
26 failure to move for arbitration of the arbitrable claims." *Van Ness*, 862 F.2d at 759. That is
27 precisely what happened here. Because Defendants repeatedly indicated that they intended to
28 defend Costco's claims in court rather than arbitration—e.g., by taking discovery, moving to

9

COSTCO'S OPPOSITION TO DEFENDANTS' JOINT MOTION TO COMPEL ARBITRATION
3:07-MD-1827-SI // 3:11-cv-00058-SI

1  dismiss, deciding not to invoke arbitration with those who remained in the class, and stipulating

2  to a trial schedule with Costco—Costco reasonably relied on those indications and began

3  preparing its case based on the MDL timeline. Costco has therefore agreed to share tasks, costs,

4  and work product with other direct action plaintiffs, has invested hundreds of hours and hundreds

5  of thousands of dollars in those efforts, and has agreed to deadlines based on the first direct action

6  plaintiff track schedule in the MDL. Burman Decl. ¶¶ 11-14. If Costco is instead forced to

7  proceed in arbitration, with its rapid discovery deadlines and limited opportunities to present

8  evidence, Costco will lose the benefit of much of that work and incur substantial additional

9  expense. *Id.* ¶¶ 13-14. Costco thus "relied to [its] detriment on [Defendants'] failure to move for

10  arbitration of the arbitrable claims," *Van Ness*, 862 F.2d at 759, and the legal and financial harms

11  Costco has suffered are plainly sufficient to demonstrate prejudice. *See, e.g.*, *Menorah Ins. Co. v.*

12  *INX Reinsurance Corp.*, 72 F.3d 218, 222 (1st Cir. 1995) (finding "that Menorah incurred

13  expenses as a direct result of INX's dilatory behavior and that that was prejudice enough" to find

14  waiver); *Kramer v. Hammond*, 943 F.2d 176, 179 (2d Cir. 1991) ("Prejudice can be substantive,

15  such as . . . when a party too long postpones his invocation of his contractual right to arbitration,

16  and thereby causes his adversary to incur unnecessary delay or expense."); *Lyzwa v. Chu*, 1998

17  WL 326768, at *4 (N.D. Cal. Feb. 2, 1998) (finding prejudice where "[p]laintiff's attorney . . .

18  has spent hundreds of hours litigating this case and plaintiff has expended tens of thousands of

19  dollars in litigation expenses"). Moreover, the growing prejudice to Costco over the months

20  would have been evident to Defendants' experienced counsel, and thus this prong of the test

21  reinforces the conclusion under the second prong that the delay was inconsistent with ever

22  invoking arbitration. *See* Burman Decl. ¶ 12.

23  **D.    Even if Some Defendants Are Allowed to Compel Arbitration, Parties with Whom**
        **Costco Never Signed Arbitration Agreements Cannot Force Costco to Arbitrate**

24

25        Even if the Court were to grant Defendants' motion to compel arbitration with the

26  Signatory Defendants (Samsung Electronics America and Sharp Electronics Corp.), it should

27  deny Defendants' motion as to the other Defendants. Costco never agreed to arbitrate with these

28  Non-Signatory Defendants, and "nothing in the [FAA] authorizes a court to compel arbitration

                                                10

1 ... by any parties, that are not ... covered in the agreement." *Waffle House*, 534 U.S. at 289.

2 The Non-Signatory Defendants nonetheless assert that Costco must arbitrate with them, relying

3 on theories of equitable estoppel and agency.[4] Neither applies here.

4     Before explaining why Defendants' theories are inapplicable, it is important to clarify

5 when and how this issue should be resolved. Contrary to Defendants' suggestion that an

6 arbitrator should decide which Defendants, if any, Costco must arbitrate with, Motion at 6 n.6, the

7 Supreme Court has held that "a gateway dispute about whether the parties are bound by a given

8 arbitration clause raises a 'question of arbitrability' for a court to decide." *Howsam v. Dean*

9 *Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) (citing *Kaplan*, 514 U.S. at 943-46). *See also*

10 *Chastain v. Union Sec. Life Ins. Co.*, 502 F. Supp. 2d 1072, 1076 (C.D. Cal. 2007) ("Defendant

11 has cited no case in which the question of non-signatory enforcement was submitted to the

12 arbitrator."). That is why the Ninth Circuit and other circuits routinely decide such questions

13 rather than leaving them for arbitrators.[5]

14     In deciding "whether a particular party is bound by [an] arbitration agreement," "the

15 liberal federal policy regarding the scope of arbitrable issues is inapposite." *Comer v. Micor,*

16 *Inc.*, 436 F.3d 1098, 1104 n.11 (9th Cir. 2006). Instead, "a nonsignatory defendant faces a heavy

17 burden to show that the signatory plaintiff intended to submit to arbitration, notwithstanding the

18 absence of a formal agreement." *In re Flat Panel*, 2011 WL 1753784, at *5 (Doc. 2731) (citing

19 *Sokol Holdings*, 542 F.3d 354, and *Ross v. Am. Express Co.*, 547 F.3d 137 (2d Cir. 2008)). Thus,

20 Defendants' suggestion that Costco must arbitrate, despite the absence of an agreement to do so,

21 because of "Costco's interdependent claims," Motion at 13, is irrelevant; when "there is no

22 arbitration agreement between the" parties, the non-signatory "will be forced to resolve ...

23 related disputes in different forums" because "federal law *requires* piecemeal resolution when

24

25

---

26 [4] The Non-Signatory Defendants never mention any other theory as to why Costco must arbitrate with them, and rightly so. Other possible theories—incorporation by reference, assumption, veil-piercing, or third-party beneficiary status (*Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1045 & n.2 (9th Cir. 2009))—are plainly inapplicable.
27 [5] *See, e.g.*, *Comer*, 436 F.3d 1098; *Brantley v. Republic Mortg. Ins. Co.*, 424 F.3d 392 (4th Cir. 2005); *Choctaw Generation L.P. v. Am. Home Assurance Co.*, 271 F.3d 403 (2d Cir. 2001); *MS Dealer Serv. Corp. v. Franklin*, 177
28 F.3d 942 (11th Cir. 1999); *Letizia v. Prudential Bache Sec., Inc.*, 802 F.2d 1185 (9th Cir. 1986).

11

1  necessary to give effect to an arbitration agreement." *Moses H. Cone Mem'l Hosp. v. Mercury*

2  *Constr. Corp.*, 460 U.S. 1, 20 (1983).

3        **1.    Costco Cannot Be Equitably Estopped from Asserting Its Right to Litigate
   Against the Non-Signatory Defendants**

4

5        The Non-Signatory Defendants provide only a cursory argument that they may compel

6  Costco to arbitrate based on equitable estoppel, and with good reason: a more thorough

7  explanation would expose the bankruptcy of their position.

8        Equitable estoppel, as its name suggests, is an equitable doctrine whose purpose is to

9  "'preclude[] a party from claiming the benefits of a contract while simultaneously attempting to

10  avoid the burdens that contract imposes.'" *Comer*, 436 F.3d at 1101 (quoting *Wash. Mut. Fin.*

11  *Group, LLC v. Bailey*, 364 F.3d 260, 267 (5th Cir. 2004)). *See also Chastain*, 502 F. Supp. 2d at

12  1078 ("The purpose of estoppel is to prevent a plaintiff from availing himself of the favorable

13  parts of a contract while disavowing the unfavorable parts—here, the arbitration clause.").

14          In all cases, the lynchpin for equitable estoppel is equity, and the point of applying
   it to compel arbitration is to prevent a situation that would fly in the face of

15          fairness. The purpose of the doctrine is to prevent a plaintiff from, in effect, trying
   to have his cake and eat it too; that is, from relying on the contract when it works

16          to his advantage by establishing the claim, and repudiating it when it works to his
   disadvantage by requiring arbitration.

17

18  *In re Humana Inc. Managed Care Litig.*, 285 F.3d 971, 976 (11th Cir. 2002) (internal citations

19  and quotation marks omitted), *rev'd on other grounds sub nom. PacifiCare Health Sys., Inc. v.*

20  *Book*, 538 U.S. 401 (2003).[6] This basic purpose does not apply here; nor does the doctrine.

21        Costco's complaint does not in any way "'claim[] the benefits of a contract while

22  simultaneously attempting to avoid the burdens that contract imposes.'" *Comer*, 436 F.3d at 1101

23  (quoting *Wash. Mut.*, 364 F.3d at 267). Costco has not asserted breach of contract, and its

24  complaint never even mentions any contract, much less relies on one. The reason is not that

25

26

27      [6] In *PacifiCare*, the Supreme Court addressed only the unrelated question of whether a court could invalidate an
   arbitration agreement when it was unclear whether the agreement barred damages required by statute. For that

28  reason, all other aspects of the Eleventh Circuit's ruling in *Humana*, including its equitable estoppel analysis, are still
   good law. *See, e.g., Klay v. All Defendants*, 389 F.3d 1191, 1195-96 & n.3, 1998-99 & nn.5, 6 (11th Cir. 2004).

COSTCO'S OPPOSITION TO DEFENDANTS' JOINT MOTION TO COMPEL ARBITRATION
3:07-MD-1827-SI // 3:11-cv-00058-SI

1   Costco sought to avoid arbitration; it is that Costco's claim does not depend on its contracts in the
2   slightest. The contracts are at most incidental, and no question is raised as to their performance.

3       This alone should suffice to reject the Non-Signatory Defendants' invocation of equitable
4   estoppel, for "[t]he plaintiff's actual dependance on the underlying contract in making out the
5   claim against the nonsignatory defendant is . . . always the *sine qua non* of an appropriate
6   situation for applying equitable estoppel." *Humana*, 285 F.3d at 976. *See also Mundi*, 555 F.3d
7   at 1047 (refusing to apply equitable estoppel to force a plaintiff to arbitrate with a non-signatory
8   defendant where "[t]he resolution of [the plaintiff's] claim does not require the examination of
9   any provisions of the [agreement]"); *Chastain*, 502 F. Supp. 2d at 1080 (finding that "equitable
10  considerations do[] not compel arbitration" because "Plaintiff has done nothing to rely on or
11  invoke the terms of the cardmember agreement, while attempting to avoid arbitration of those
12  claims," and "there simply is no reason in equity to estop Plaintiff from disclaiming the
13  arbitration clause in an agreement that he has otherwise not invoked").

14      The Non-Signatory Defendants' argument ignores another basic principle about equitable
15  estoppel. "Estoppel does not apply unless 'the totality of the evidence supports an objective
16  intention to agree to arbitrate.'" *In re Flat Panel*, 2011 WL 1753784, at \*5 (Doc. 2731) (quoting
17  *Ross*, 547 F.3d at 148). Thus, "there is a 'black letter rule that the obligation to arbitrate depends
18  on consent,' and cases that rely on estoppel to compel arbitration with nonsignatories 'simply
19  extend its contours somewhat by establishing that the consent need not always be expressed in a
20  formal contract made with the party demanding arbitration.'" *Id.* (quoting *Sokol Holdings*, 542
21  F.3d at 361-62). For that reason, "a nonsignatory defendant faces a heavy burden to show that the
22  signatory plaintiff intended to submit to arbitration, notwithstanding the absence of a formal
23  agreement," and "must present . . . evidence sufficient to demonstrate such intent." *Id.* Here,
24  however, the Non-Signatory Defendants provide no evidence that Costco consented to arbitrate
25  with them. In entering vendor agreements with Samsung Electronics America and Sharp
26  Electronics Corp., Costco could not possibly have contemplated that it was agreeing to arbitrate
27  with dozens of other entities, including many competitors of those two. *Cf. Bridas Sapic v. Gov't*
28

13

COSTCO'S OPPOSITION TO DEFENDANTS' JOINT MOTION TO COMPEL ARBITRATION
3:07-MD-1827-SI // 3:11-cv-00058-SI

1    *of Turkm.*, 345 F.3d 347, 362 (5th Cir. 2003) ("Parties are presumed to be contracting for

2    themselves only.").

3          Ignoring both the purpose and basic requirements of the equitable estoppel doctrine, the

4    Non-Signatory Defendants seek to invoke the doctrine merely because Costco alleges that they

5    conspired with the Signatory Defendants in fixing the prices of LCD Products. Motion at 2, 10-

6    12. But it cannot be that any time a plaintiff alleges an antitrust conspiracy that includes a

7    signatory it must arbitrate with all the conspirators. It need not even sue them all, or the one with

8    the contract, to obtain a complete remedy. And while contractual provisions can be part of some

9    antitrust violations (e.g., exclusive dealing), that is not the case here. Moreover, even Defendants

10    seem to recognize the absurdity of their view: when they have sought to compel arbitration with

11    other direct action plaintiffs, they have done so individually, not as a group, even though those

12    other plaintiffs made the same allegations as Costco did as to Defendants' joint conduct. *See,*

13    *e.g., In re Flat Panel,* Doc. 3018 (LG's motion to compel arbitration with SB Liquidation Trust);

14    Doc. 2991-1, at 9 (Defendants' request that Florida be required to arbitrate "claims governed by

15    purchase agreements containing arbitration clauses"). Defendants do not and cannot explain why

16    equitable estoppel should apply here when they never mentioned it in those motions.

17          Defendants can point to no case going nearly as far as the rule they seek, which is not

18    surprising because doing so would fly in the face of the Supreme Court's consistent holdings that

19    "arbitration is a matter of contract and a party cannot be required to submit to arbitration any

20    dispute which he has not agreed so to submit"—no matter how "efficient" such joint arbitration

21    might be. *AT & T,* 475 U.S. at 648.[7] The cases Defendants do cite do not mean what Defendants

22    say, as is clear from their text and from subsequent opinions by the courts that decided them.

23

24    [7] *See also Moses H. Cone,* 460 U.S. at 20 (holding that, despite allegations of joint misconduct on the part of a signatory and non-signatory defendant, the non-signatory defendant could not be forced into arbitration because

25    "federal law *requires* piecemeal resolution when necessary to give effect to an arbitration agreement"); *Ross,* 547 F.3d at 148 ("[A]pplication of estoppel in the context of conspiracy allegations is problematic . . . because arbitration

26    is of course a matter of contract [and] under general principles of contract law parties should not be compelled to arbitrate unless the totality of the evidence supports an objective intention to agree to arbitrate.") (internal quotation

27    marks and citation omitted); *In re Merrill Lynch Trust Co. FSB,* 235 S.W.3d 185, 194 (Tex. 2007) (observing that a test based merely on concerted misconduct "would sweep independent entities and even complete strangers into

28    arbitration agreements" and that "allowing arbitration contracts to become binding on that basis would make them easier to enforce than other contracts, contrary to the Arbitration Act's purpose").

COSTCO'S OPPOSITION TO DEFENDANTS' JOINT MOTION TO COMPEL ARBITRATION
3:07-MD-1827-SI // 3:11-cv-00058-SI

1     Defendants lead with out-of-context dicta from the unpublished opinion in *Fujian Pacific*

2 *Elec. Co., Ltd v. Bechtel Power Corp.*, 2004 WL 2645974 (N.D. Cal. Nov. 19, 2004). Defendants

3 claim *Fujian* means that "a Plaintiff is estopped from refusing to arbitrate with a corporate family

4 member alleged to be liable for overcharges incurred on an affiliate's contract." Motion at 10.

5 But the part of *Fujian* that Defendants cite is not the holding, it is a summary of another court's

6 decision. *Fujian*'s actual holding was simply that equitable estoppel applied because the

7 plaintiff's claim against the non-signatory relied on the contract containing the arbitration clause.

8 2004 WL 2645974, at *6 (explaining that the plaintiff "ask[ed] the court to determine whether

9 [the signatories'] duties have been breached in order to establish [the non-signatory's] liability").

10     Defendants next cite *JLM Industries, Inc. v. Stolt-Nielsen, S.A.*, 387 F.3d 163 (2d Cir.

11 2004), for the same proposition. But there the Court made clear that it did not "mean to suggest

12 that a claim against a co-conspirator of a party alleged to have engaged in antitrust violations will

13 always be intertwined to a degree sufficient to work an estoppel." *Id.* at 178 n.7. And the Second

14 Circuit has since made clear that Defendants' reading of *JLM* goes farther "than that opinion

15 intended." *Sokol*, 542 F.3d at 359. As that Court has explained, in its prior cases, "the promise to

16 arbitrate by . . . the entity opposing arbitration . . . was reasonably seen on the basis of the

17 relationships among the parties as extending not only to . . . its contractual counterparty, but also

18 to [the non-signatory], an entity that was, or would predictably become, with [the plaintiff's]

19 knowledge and consent, affiliated or associated with [the signatory defendant] in such a manner

20 as to make it unfair to allow [the plaintiff] to avoid its commitment to arbitrate on the ground that

21 [the non-signatory] was not the very entity with which [the plaintiff] had a contract." *Id.* at 361.

22 Thus, even if this Court adopts the Second Circuit's view at its broadest, each Non-Signatory

23 Defendant must show that Costco's "promise to arbitrate" with a Signatory Defendant "was

24 reasonably seen on the basis of the relationships among the parties as extending . . . to [the non-

25 signatory]." *Id.* The Non-Signatory Defendants have not made and cannot make such a showing.

26 Even if they could, they would still have to show "that the subject matter of the dispute was

27 intertwined with the contract providing for arbitration." *Id. See also Chastain*, 502 F. Supp. 2d at

28 1078-79 (explaining that "to determine whether claims are intertwined, the Court must look to the

15

COSTCO'S OPPOSITION TO DEFENDANTS' JOINT MOTION TO COMPEL ARBITRATION
3:07-MD-1827-SI // 3:11-cv-00058-SI

1  duties breached by Defendant as alleged in the Complaint" and whether the "complaint is based

2  on the nonsignatory's alleged breach of . . . the agreement") (internal quotation marks and

3  citations omitted). But, as already noted, Costco's claim in no way turns on its contracts with the

4  Signatory Defendants.

5       This last factor also explains why Defendants' reliance on *MS Dealer Service Corp. v.*

6  *Franklin*, 177 F.3d 942 (11th Cir. 1999), is misguided. Defendants argue, Motion at 11, that *MS*

7  *Dealer* holds that the "application of equitable estoppel is warranted . . . when the signatory to the

8  contract containing the arbitration clause raises allegations of . . . substantially interdependent and

9  concerted misconduct by both the nonsignatory and one or more of the signatories to the

10  contract." *MS Dealer*, 177 F.3d at 947 (citations and internal quotation marks omitted). But, as

11  the Eleventh Circuit has since explained, "[t]his contention is only tenable if the passage is read

12  completely out of context." *Humana*, 285 F.3d at 976. "In all cases, the lynchpin for equitable

13  estoppel is equity," and "[t]he purpose of the doctrine is to prevent a plaintiff . . . from relying on

14  the contract when it works to his advantage by establishing the claim, and repudiating it when it

15  works to his disadvantage by requiring arbitration." *Id.* (citations and internal quotation marks

16  omitted). "The plaintiff's actual dependance on the underlying contract in making out the claim

17  against the nonsignatory defendant is therefore always the *sine qua non* of an appropriate

18  situation for applying equitable estoppel." *Id.* As noted, however, the "sine qua non" of

19  equitable estoppel is not present here, and Defendants cannot—try as they might—bootstrap their

20  way into that doctrine simply by pointing to their conspiracy.

21       Defendants also rely on *Amisil Holdings Ltd. v. Clarium Capital Mgmt.*, 622 F. Supp. 2d

22  825 (N.D. Cal. 2007), but, once again, the case is plainly distinguishable. There, "[a]bsent the

23  [agreement that included the arbitration clause], none of [the plaintiff's] claims would lie." *Id.* at

24  841. Thus, the plaintiff was unfairly seeking to "use the Agreement as a sword and at the same

25  time choose to ignore it as a shield," which the court refused to allow. *Id.* Here, Costco relies not

26  at all on its vendor agreements, and it is instead Defendants who seek to use them as a sword.

27       Because Defendants' legal argument is so weak, they make a last ditch appeal to "notions

28  of fair play and equity," beseeching the Court to require Costco to arbitrate against the Non-

1   Signatory Defendants because Costco has done *them* the disservice of suing them for conspiring

2   to fix prices. Motion at 12. This plea hardly deserves a response. Equitable estoppel has never

3   been held to require a plaintiff to bear a burden in exchange for the "benefit" of being able to sue

4   wrongdoers.

5       Indeed, if equity has any application here, it is to *Defendants'* strategic attempts to "have

6   it both ways." Whether or not the Signatory Defendants have waived the arbitration provision, a

7   different test should apply to the Non-Signatory Defendants. On this issue it is they, not Costco,

8   that seek to invoke equity, and yet they have not done equity. Their delay was at least objectively

9   tactical and has prejudiced Costco, and that alone should halt consideration of their request.[8]

10      In addition, the Non-Signatory Defendants seek to compel arbitration on the ground that

11  they conspired with the Signatory Defendants, but then turn around and deny that they are co-

12  conspirators. *Compare* Motion at 2 (citing conspiracy allegations) *with* Motion to Dismiss, Doc.

13  2808, at 13-14 ("Costco cannot plausibly allege that unrelated Defendants are agents and

14  principals of each other for purposes of a conspiracy merely because some of them participated in

15  joint-ventures or trade associations."), and Defendants' Joint Reply in Support of Motion to

16  Dismiss, Doc. 3202, at 9-10 (asserting a "'deeply ingrained' presumption that distinct corporate

17  family members act separately and independently") (citing *United States v. Bestfoods*, 524 U.S.

18  51, 61 (1998)). It is Defendants, not Costco, that are seeking to have their cake and eat it too.

19      **2.    Costco Cannot Be Required to Arbitrate Against the Non-Signatory**
            **Defendants Under an Agency Theory**

20

21      Defendants seem to think they can use the agency theory to demand arbitration because

22  Costco alleges that they worked together in carrying out their conspiracy. That is not the law.

23

24

25  [8] Even if the Court were to find that Costco is equitably estopped, the Court need not compel arbitration with the
    Non-Signatory Defendants. Rather, "[i]n light of the equitable nature of the relief that defendant[s] seek[], . . . the
    court has considerable discretion to select a remedy." *Fujian*, 2004 WL 2645974, at *7-8. For example, in *Fujian*,
26  the court decided that the plaintiff was equitably estopped from proceeding immediately with litigation, but it did *not*
    compel the plaintiff to arbitrate with the non-signatory; instead, it stayed the litigation pending arbitration with the
27  signatory defendants. *Id* at *8. See *also, e.g., Hill v. GE Power Sys., Inc.*, 282 F.3d 343, 349 (5th Cir. 2002)
    (affirming district court's refusal to compel arbitration against the non-signatory defendants after finding equitable
28  estoppel). Here, as explained below, there is no reason even to stay because the MDL will proceed in any event.

17

1　　　　　To begin with, a plaintiff's allegations are not enough to establish an agency relationship

2 sufficient to invoke the agency doctrine; instead, Defendants must actually prove that the Non-

3 Signatory Defendants were agents of the Signatory Defendants. *See, e.g., Britton v. Co-op*

4 *Banking Group,* 916 F.2d 1405, 1414 (9th Cir. 1990) ("remand[ing] the case to the district court

5 for further determination and fact-finding as to whether the" non-signatory seeking to invoke the

6 arbitration clause was actually an agent of the signatory); *Chastain,* 502 F. Supp. 2d at 1075

7 ("The trial court sits as a trier of fact, weighing all the declarations and other evidence to reach a

8 final determination" on "the question of whether a nonsignatory to an arbitration agreement can

9 compel a signatory to submit to arbitration."); *Brown v. Gen. Steel Domestic Sales, LLC,* 2008

10 WL 2128057, at *7 & n.45 (C.D. Cal. May 19, 2008) (denying the non-signatory defendants'

11 motion to compel arbitration where "[t]he non-signatory defendants make no argument that they

12 are in fact agents of [the signatory defendant]" but instead "rely exclusively on the allegations in

13 the [plaintiffs'] complaint"); 9 U.S.C. § 4 (requiring court or jury trial of facts upon which

14 applicability of arbitration provision depends). But Defendants' have already indicated that they

15 will "contest [their] liability [for the sales of their unnamed and alleged affiliates] before the

16 arbitrator or before this Court" on the merits. Motion at 6 n.6. And in seeking to compel

17 arbitration with other direct action plaintiffs, Defendants have not even claimed to be one

18 another's agents. *See, e.g., In re Flat Panel,* Doc. 3018; Doc. 2991-1.

19　　　　　Even if a plaintiff's allegations were enough to invoke the agency doctrine, Costco alleges

20 only that Defendants acted as "the principal, agent, or joint venturer of, or for, other Defendants

21 *with respect to the acts, violations, and course of conduct alleged by Costco.*" Complaint ¶ 48

22 (emphasis added). This alleges an agency relationship only with respect to Defendants' illegal

23 conduct, *not* a general principal-agent relationship or even a principal-agent relationship in

24 carrying out the vendor agreements, which is what Defendants must prove. *See, e.g., Britton v.*

25 *Co-op Banking Group,* 4 F.3d 742, 747 (9th Cir. 1993) (applying the agency test only after

26 finding that the non-signatory "was an agent, officer and employee of [the signatory defendant]");

27 *Boyd v. Homes of Legend, Inc.,* 981 F. Supp. 1423, 1432 (M.D. Ala. 1997) (finding the agency

28 theory inapplicable because "there is no basis here to conclude that an agency relationship exists

18

COSTCO'S OPPOSITION TO DEFENDANTS' JOINT MOTION TO COMPEL ARBITRATION
3:07-MD-1827-SI // 3:11-cv-00058-SI

1 | between the [non-signatory defendant] and the [signatory defendant]"), *rev'd on other grounds*,

2 | 188 F.3d 1294 (11th Cir. 1999).[9] But Defendants surely would not argue that the Non-Signatory

3 | Defendants are—like true *agents* of the Signatory Defendants, such as employees or officers—

4 | authorized to act for and on behalf of them, generally or under the vendor agreement, or that the

5 | Signatory and Non-Signatory Defendants share the fiduciary relationship of trust and confidence

6 | that exists between principal and agent.

7 | Defendants' agency claim plainly must fail with respect to the Non-Signatory Defendants

8 | who are not even affiliates of the Signatory Defendants, as there is simply no way that these non-

9 | signatory corporations are general *agents* of their *competitors* in fulfilling their vendor

10 | agreements. But Defendants' agency argument as to the Signatory Defendants' affiliates fails as

11 | well. For example, Defendants' argument relies on the notion that Sharp Corp. (a non-signatory)

12 | is an agent for its subsidiary, Sharp Electronics Corp. (a signatory), and similarly that Samsung

13 | Electronics Co., Ltd. (a non-signatory), is an agent for its subsidiary, Samsung Electronics

14 | America, Inc. (a signatory). It would be a rare company if the parent corporation were really the

15 | agent of its subsidiaries, rather than the other way around, and Defendants do not allege, much

16 | less prove, that they were exceptions to the rule.

17 | Moreover, even if the Court were to find that some of the Non-Signatory Defendants were

18 | agents of the Signatory Defendants, that would only begin the inquiry. Agents of a signatory can

19 | compel the signatory plaintiff to arbitrate only if "(1) the wrongful acts of the agents for which

20 | they are sued relate to their behavior as agents or in their capacities as agents . . . and (2) the

21 | claims against the agents arise out of or relate to the contract containing the arbitration clause."

22 | *Amisil*, 622 F. Supp. 2d at 832 (citing *Britton*, 4 F.3d 742, and *Letizia v. Prudential Bache Sec.,*

23 | *Inc.*, 802 F.2d 1185 (9th Cir. 1986)). Defendants can satisfy neither prong.

24 | Assuming that some Non-Signatory Defendants are agents of the Signatory Defendants,

25 | Defendants have not shown that Costco sued those Non-Signatory Defendants for acts that "relate

---

26 | [9] Even as to Defendants' illegal conduct, the Complaint does not specifically allege an agent-principal relationship

27 | between each of the Non-Signatory Defendants and *the Signatory Defendants*. Instead, Costco alleges that each "Defendant" acted as the agent for "other Defendants"—not "the Signatory Defendants." On this basis, the court in

28 | *Brown* rejected an argument just like Defendants', finding that "the [plaintiffs] do not specifically allege that the non-signatory defendants are, or are being sued as, agents of [the signatory defendant] . . . ." 2008 WL 2128057, at *7.

19

1     to their behavior as agents" of the Signatory Defendants. For example, in *Amisil*, the "complaint

2     demonstrate[d] that the individual [non-signatory] defendants [we]re being sued *precisely*

3     *because of their duties to [the plaintiff]* as officers and managers of [the signatory defendant]."

4     *Amisil*, 622 F. Supp. 2d at 835 (emphasis added). Not so here, where Costco sues the Non-

5     Signatory Defendants because they each, of their own accord and regardless of any agency

6     relationship with any Signatory Defendant, participated in the conspiracy to fix LCD prices.[10]

7         Defendants also have not satisfied, and cannot satisfy, the second prong of the agency

8     test—that "the claims against the [alleged] agents [of the Signatory Defendants] arise out of or

9     relate to the contract containing the arbitration clause." *Amisil*, 622 F. Supp. 2d at 832. *See, e.g.*,

10     *Britton*, 4 F.3d at 748 (concluding that the non-signatory defendant's alleged wrongdoing did not

11     relate to or arise out of the contract containing the arbitration clause because "[t]he sum and

12     substance of [the plaintiffs'] allegations are that [the non-signatory defendant] . . . [committed]

13     independent acts of fraud, unrelated to any provision or interpretation of the contract").

14         Nor are the animating reasons for the agency doctrine applicable here. There are two

15     reasons why courts have found non-signatory agents covered by an arbitration agreement. First,

16     "'[a]n entity . . . can only act through its employees, and an arbitration agreement would be of

17     little value if it did not extend to [them].'" *Amisil*, 622 F. Supp. 2d at 833 (quoting *Pritzker v.*

18     *Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110, 1122 (3d Cir. 1993)) (alteration in

19     original). Second, if a party could "avoid the practical consequences of an agreement to arbitrate

20     by naming nonsignatory parties as [defendants] in his complaint, . . . the effect of the rule

21     requiring arbitration would, in effect, be nullified." *Id.* (quoting *Arnold v. Arnold Corp.*, 920 F.2d

22     1269, 1281 (6th Cir. 1990)) (alterations in original).

23         The first reason does not apply here, where none of the Defendants is an employee of an

24     entity with which Costco has signed an arbitration agreement. Neither does the second, as

25

26     [10] Indeed, in the vast majority of cases in which courts have invoked the agency theory to compel arbitration with a non-signatory, the non-signatory was not a corporate affiliate of the signatory, but rather an *employee, officer, or*

27     *director* of the signatory. *See, e.g.*, *Letizia*, 802 F.2d at 1187-88 (employee of signatory defendant); *Kiskadee Commc'ns (Bermuda), Ltd. v. Father*, No. C 10–05277, 2011 WL 1044241, at *5 (N.D. Cal. Mar. 22, 2011) (officers

28     and directors of signatory defendant); *Amisil*, 622 F. Supp. 2d at 839 (majority and managing member, CFO, and managing director of signatory defendant).

COSTCO'S OPPOSITION TO DEFENDANTS' JOINT MOTION TO COMPEL ARBITRATION
3:07-MD-1827-SI // 3:11-cv-00058-SI

1 | Defendants have presented no evidence whatsoever that Costco selectively chose Defendants with

2 | which it had no arbitration agreement. Because neither the grounds nor the criteria for applying

3 | the agency theory are present, the Court should reject the theory's application here.

4 | **E. Before Costco May Be Forced to Arbitrate with Any Defendant, the Court Must
5 | Declare the 2004 Arbitration Agreement's ███████ Unenforceable
   | in the Antitrust Context**

6 | Even if the Court concludes that Costco's claims against some Defendants are otherwise

7 | subject to arbitration, it may compel arbitration only if it first declares the 2004 agreement's

8 | ███████ unenforceable in the antitrust context.[11] The 2004 arbitration

9 | agreement, which Defendants presumably believe applicable to at least their post-2004 sales to

10 | Costco, forbids ███████ but it

11 | specifies that ███████

12 | ███████ Shavey Decl.

13 | Exhibit G, ¶ 20.[12] Though this limitation is enforceable in many types of disputes, such as

14 | contract claims, it is unenforceable in this context, ███████

15 | ███████

16 | ███████ [3] This Court has agreed

---

17 | [11] This is a question for the Court, not the arbitrator. *See Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*,
18 | 622 F.3d 996, 1000 (9th Cir. 2010) ("[W]hen a plaintiff argues that an arbitration clause, standing alone, is
   | unenforceable—for reasons independent of any reasons the remainder of the contract might be invalid—that is a
   | question to be decided by the court."); *Kristian v. Comcast Corp.*, 446 F.3d 25, 47-48 (1st Cir. 2006) (holding that
19 | question whether provision barring treble damages was enforceable in an antitrust case was "a question of
   | arbitrability" to be resolved by the Court and that the provision was unenforceable and had to be severed).
20 | [12] The 1997 and 2000 arbitration agreements forbade ███████
   | ███████ *See, e.g., Am. Soc. of Mechanical Engs., Inc. v. Hydrolevel Corp.*, 456 U.S. 556, 575
21 | (1982) (finding that "the antitrust private action was created primarily as a remedy for the victims of antitrust
   | violations," and "[t]reble damages 'make the remedy meaningful by counter-balancing the difficulty of maintaining a
22 | private suit' under the antitrust laws") (quoting *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 486 n.10
   | (1977)); *Brunswick*, 429 U.S. at 485-86 ("Section 4 . . . is in essence a remedial provision," and "the treble-damages
23 | provision, which makes awards available only to injured parties, and measures the awards by a multiple of the injury
   | actually proved, is designed primarily as a remedy."). Thus, this earlier provision ███████
24 |
25 | [13] *E.g., Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628, 637 n.19 (1985) (stating that if
   | a contractual provision operated "as a prospective waiver of a party's right to pursue statutory remedies for antitrust
26 | violations, we would have little hesitation in condemning the agreement as against public policy"); *George Fischer
   | Foundry Systems, Inc. v. Adolph H. Hottinger Maschinenbau GmbH*, 55 F.3d 1206, 1210 (6th Cir. 1995) ("[I]f any
27 | part of a contract . . . waives a party's right to collect damages for antitrust violations, the provision is void for public
   | policy reasons."); *Redel's Inc. v. General Elec. Co.*, 498 F.2d 95, 99 (5th Cir. 1974) ("Releases may not be executed
28 | which absolve a party from liability for future violations of our antitrust laws."); *Gaines v. Carrollton Tobacco Bd. of
   | Trade, Inc.*, 386 F.2d 757, 759 (6th Cir. 1967) ("[I]t seems clear as a matter of law that . . . an agreement, if executed

21

1   that "an arbitration agreement cannot be made to serve as a vehicle for the waiver of statutory

2   rights." *Bencharsky v. Cottman Transmission Sys., LLC*, 625 F. Supp. 2d 872, 882 (N.D. Cal.

3   2008).

4   **F.   A Stay is Unwarranted**

5       If the Court concludes that Costco must arbitrate with some but not all Defendants, that is

6   no reason to stay litigation of Costco's claims that will remain in the MDL. In arguing otherwise,

7   Defendants misstate the law and the facts.

8       Defendants cite *IDS Life Insurance Co. v. SunAmerica, Inc.*, 103 F.3d 524 (7th Cir. 1996),

9   for the proposition that "a stay is required where related litigation with a non-signatory could

10   have a preclusive effect on legitimate arbitral proceedings." Motion at 13. That is not what

11   *SunAmerica* held, and it is not the law. *See Moses H. Cone*, 460 U.S. at 20 n.23 (noting that the

12   decision whether "to stay litigation among the non-arbitrating parties pending the outcome of the

13   arbitration" "is one left to the district court . . . as a matter of its discretion").[14] In *SunAmerica*,

14   the Seventh Circuit held that where a non-signatory defendant "ask[s] the district court to stay

15   the case against them pending the resolution of the same issue in an arbitration between the same

16   plaintiffs and" a signatory defendant, the judge "must make a *discretionary* judgment" applying

17   "the normal rules for parallel-proceeding abstention." 103 F.3d at 529-30 (emphasis added).

18   True, the court went on to say that courts should stay related litigation if "a party to an arbitration

19   agreement, trying to get around it, sue[d] not only the other party to the agreement but some

20   related party with which it ha[d] no arbitration agreement, in the hope that the claim against the

21   other party [would] be adjudicated first and have preclusive effect in the arbitration." *Id.* at 530.

22   in a fashion calculated to waive damages arising from future violations of the antitrust laws, would be invalid on
public policy grounds."). *See also, e.g., Booker v. Robert Half Int'l, Inc.*, 413 F.3d 77, 79 (D.C. Cir. 2005) (Roberts,

23   J.) ("Statutory claims may be subject to agreements to arbitrate, so long as the agreement does not require the
claimant to forgo substantive rights afforded under the statute."); *Al-Safin v. Circuit City Stores, Inc.*, 394 F.3d 1254,

24   1261 (9th Cir. 2005) (holding that an arbitration agreement violates the *Mitsubishi* rule if "it limits the remedies that
would otherwise be available in a judicial forum"); *Graham Oil Co. v. ARCO Prods. Co.*, 43 F.3d 1244, 1247-48 (9th

25   Cir. 1994) (holding arbitration clause unenforceable because it "compels Graham Oil to surrender important
statutorily-mandated rights," including exemplary damages).

26   [14] *See also In re Flat Panel*, 2011 WL 2650689, at *9 (Doc. 3034) ("It is within the Court's discretion to stay all or
part of the litigation associated with the dispute between Nokia and AUO.") (citing *United States v. Neumann*

27   *Caribbean Int'l, Ltd.*, 750 F.2d 1422, 1427 (9th Cir. 1985)); *Amisil*, 622 F. Supp. 2d at 842 ("[I]t may be advisable to
stay litigation among the nonarbitrating parties pending the outcome of the arbitration. That decision is one left to the

28   district court . . . as a matter of its discretion to control its docket.") (internal quotation marks and citation omitted).

COSTCO'S OPPOSITION TO DEFENDANTS' JOINT MOTION TO COMPEL ARBITRATION
3:07-MD-1827-SI // 3:11-cv-00058-SI

1    But that is plainly not happening here. Costco is not trying to rush to court to get a preclusive

2    ruling as to arbitration proceedings; if anything, arbitration would likely proceed first here.

3    Moreover, given joint and several liability, if Costco wanted to avoid arbitration, it could have

4    named as few defendants as possible and only those with which it had no arbitration agreement.

5    Instead, Costco is seeking a full, fair, and efficient resolution of its claims.

6          Given that it is within the Court's discretion whether to stay Costco's claims that remain

7    in the MDL, the Court must consider what will best promote judicial economy and avoid hardship

8    to the parties. As the Court has noted, there is little benefit in staying related litigation pending

9    arbitration in this MDL proceeding when many of the claims will proceed in the MDL anyway

10   and all defendants are "defendant[s] in many other proceedings in this MDL and must therefore

11   conduct [their] defense regardless of whether [any one] matter is stayed." *In re Flat Panel*, Doc.

12   3213, at 5. For that reason, this Court has declined to stay Dell's litigation as to AUO, even

13   though there even the party subject to arbitration is the same. *Id.* Moreover, even though the

14   Court compelled Nokia to arbitrate all of its disputes with AUO, it still allowed Nokia "to pursue

15   litigation with the other alleged co-conspirators." *In re Flat Panel*, 2011 WL 2650689, at \*9

16   (Doc. 3034). The Court should do the same here. As for hardship, Defendants would suffer no

17   great harm if some had to proceed in litigation at the same time that others arbitrated. As the

18   Court well knows, the plaintiffs and defendants in this action have agreed to coordinated

19   discovery and briefing schedules, and "given that [each defendant here] is a defendant in many

20   other proceedings in this MDL and must therefore conduct its defense regardless of whether this

21   matter is stayed," *In re Flat Panel*, Doc. 3213, at 5, no additional hardship would come from

22   having to litigate with Costco as planned.

23                                    **IV.    CONCLUSION**

24         Two of several dozen defendants claim an arbitration clause. The clause, by its terms, is

25   inapplicable here. Even if it did apply, Defendants waived any right to enforce it by their

26   intentional conduct and the resulting prejudice to Costco. Moreover, there is simply no basis for

27   forcing Costco to arbitrate with parties with whom it never consented to arbitrate. Costco

28   respectfully asks that the Court deny Defendants' Motion to Compel Arbitration in its entirety

                                              23

COSTCO'S OPPOSITION TO DEFENDANTS' JOINT MOTION TO COMPEL ARBITRATION
3:07-MD-1827-SI // 3:11-cv-00058-SI

1   based on the contract language or waiver. If the Court believes any claims are subject to

2   arbitration, they should be limited to Costco's claims against the Signatory Defendants, and the

3   Court must first invalidate the                    in this context. There is no basis for staying

4   Costco's claims that remain in court.

5   DATED: August 8, 2011                    s/ David J. Burman

                                            David J. Burman (*pro hac vice*)
6                                           DBurman@perkinscoie.com
                                            Cori G. Moore (*pro hac vice*)
7                                           CGMoore@perkinscoie.com
                                            Troy P. Sauro, Bar No. 224097
8                                           TSauro@perkinscoie.com
                                            Noah G. Purcell (*pro hac vice*)
9                                           NPurcell@perkinscoie.com
                                            **Perkins Coie** LLP
10                                          Four Embarcadero Center, Suite 2400
                                            San Francisco, CA 94111-4131
11                                          Telephone: 415.344.7000
                                            Facsimile: 415.344.7050
12
                                            Attorneys for Plaintiff
13                                          Costco Wholesale Corp.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                        24