PATRICIA A. CONNERS (Trish.Conners@myfloridalegal.com)
R. SCOTT PALMER (Scott.Palmer@myfloridalegal.com)
LIZABETH A. BRADY (Liz.Brady@myfloridalegal.com)
NICHOLAS J. WEILHAMMER (Nicholas.Weilhammer@myfloridalegal.com)
SATU A. CORREA (Satu.Correa@myfloridalegal.com)
Office of the Attorney General
State of Florida
PL-01, The Capitol
Tallahassee, FL 32399-1050
Tel:     (850) 414-3300
Fax:    (850) 488-9134

Attorneys for Plaintiff State of Florida

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | MASTER FILE NO. 07-cv-5944 SC MDL NO. 1917 |
| This Document Relates To:<br><br>Case No. 2011-CV-6205 SC<br><br>STATE OF FLORIDA,<br>OFFICE OF THE ATTORNEY GENERAL,<br>DEPARTMENT OF LEGAL AFFAIRS,<br><br>Plaintiff,<br>v.<br><br>LG ELECTRONICS, INC., et al.,<br><br>Defendants. | **PLAINTIFF STATE OF FLORIDA'S OBJECTION AND RESPONSE TO JOINT MOTION TO DISMISS THE STATE OF FLORIDA'S CLAIMS FOR INJUNCTIVE RELIEF**<br><br>Date: September 20, 2012 [sic]<br>Time: 12 p.m.<br>Location: JAMS, Two Embarcadero Center, Suite 1500<br>Judge: Hon. Samuel Conti<br>Special Master: Hon. Charles A. Legge (Ret.) |

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ..........................................................................................- 1 -

II.  ISSUES TO BE DECIDED ............................................................................- 1 -

III. BACKGROUND ............................................................................................- 1 -

IV.  ARGUMENT .................................................................................................- 5 -

   A.   Defendants' Second Motion to Dismiss Should Be Denied. ..........................- 5 -

      1.   Laches Does Not Bar Florida's Claim for Injunctive Relief. ...................- 5 -

      2.   Florida Has Adequately Alleged Threatened Loss or Damage by a Violation of
           Antitrust Laws, Justifying a Request for an Injunction. ......................................- 7 -

      3.   Florida's Request for Injunctive Relief is Not Barred Because Other Private Parties
           Have Also Filed Suits for Injunctive Relief Under Federal Law. .....................- 12 -

      4.   Injunctive Relief Is Important Relief to Florida. ....................................- 15 -

   B.   Defendants' Second Motion to Dismiss Should Be Stricken.........................- 16 -

      1.   Defendants' Motion is Untimely....................................................................- 16 -

      2.   Defendants Cannot File a Second Motion to Dismiss for Failure to State a Claim,
           Raising Defenses or Objections That Were Available to Them But Omitted from the First
           Motion to Dismiss.............................................................................................- 18 -

V.   CONCLUSION ............................................................................................- 19 -

PLAINTIFF STATE OF FLORIDA'S RESPONSE AND OBJECTION TO DEFENDANTS' MOTION TO DISMISS THE STATE OF
FLORIDA'S CLAIMS FOR INJUNCTIVE RELIEF
Master File No. 07-cv-5944 SC; Case No. 2011-cv-6205 SC

-i-

1

2

3

## TABLE OF AUTHORITIES

**CASES**

Barapind v. Reno, 225 F.3d 1100 (9th Cir. 2000) ............................................- 13 -

California v. American Stores Co.,
495 U.S. 271, 110 S. Ct. 1853, 109 L.Ed.2d 240 (1990) ..............................- 16 -

Cargill, Inc. v. Monfort of Colorado, Inc., 479 U.S. 104 n.6 (1986) ...................- 12 -, - 13 -

Chen v. Cayman Arts, Inc., 2011 WL 1085646 (S.D. Fla. Mar. 21, 2011) ...............- 18 -

City of Winter Haven v. State ex rel. Landis, 170 So. 100 (Fla. 1936) ...................- 6 -

Colorado River Water Conservation Dist. v. United States, 424 U.S. 800 (1976) ...........- 13 -

Couveau v. Am. Airlines, Inc., 218 F.3d 1078 (9th Cir. 2000) ...............................- 7 -

Dandong Shuguang Axel Corp., Ltd. v. Brilliance Machinery Co.,
2001 WL 637446 (N.D. Cal. June 1, 2001) .................................................- 17 -

Danjaq LLC v. Sony Corp., 263 F.3d 942 (9th Cir. 2001) ....................................- 7 -

Demoura v. Ford, 2011 WL 2038688 (E.D. Cal. May 23, 2011) ...........................- 10 -

Epic Advertising v. Asis Internet Services, 2011 WL 4507096 (N.D. Cal. Sept. 29, 2011) .....- 17 -

F. & M. Schaefer Corp. v. C. Schmidt & Sons, Inc., 476 F. Supp. 203 (S.D.N.Y., 1979) ........- 15 -

F. Hoffmann-La Roche Ltd. v. Empagran S.A., 542 U.S. 155 (2004) .....................- 16 -

Friends of Frederick Seig Grove v. Sonoma County Water Agency,
124 F. Supp. 2d 1161 (N.D. Cal. 2000) ...................................................- 11 -

Georgia v. Pennsylvania Railroad Co., 324 U.S. 439 (1945) ...............................- 14 -

Groupion, LLC v. Groupon, Inc., 2012 WL 3025711 (N.D. Cal. July 24, 2012) ....................- 17 -

Hawaii v. Standard Oil Co. of Cal., 431 F.2d 1282 (9th Cir. 1970) ..............................- 13 -, - 14 -

In re Compact Disc Minimum Advertised Price Litig.,
2003 WL 21685581 (D. Me. July 18, 2003) ..............................................- 15 -

In re Flash Memory Antitrust Litigation, 2010 WL 2332081 (N.D. Cal. 2010) ......................- 17 -

PLAINTIFF STATE OF FLORIDA'S RESPONSE AND OBJECTION TO DEFENDANTS' MOTION TO DISMISS THE STATE OF FLORIDA'S CLAIMS FOR INJUNCTIVE RELIEF
Master File No. 07-cv-5944 SC; Case No. 2011-cv-6205 SC

-ii-

1    <u>In re K-Dur Antitrust Litigation</u>, 338 F. Supp. 2d 517 (D.N.J. 2004)........................................- 11 -

2    <u>In re Multidistrict Vehicle Air Pollution</u>, 538 F.2d 231 (9th Cir. 1976)......................................- 9 -

3    <u>In re Toys R Us Antitrust Litigation</u>, 191 F.R.D. 347 (E.D.N.Y. 2000)....................................- 15 -

4    <u>In re Urethane Antitrust Litigation</u>, 663 F. Supp. 2d 1067 (D. Kan. 2009) ..............................- 17 -

5

6    <u>Jarrow Formulas, Inc. v. Nutrition Now, Inc.</u>, 304 F.3d 829 (9th Cir. 2002)..............................- 7 -

7    <u>Lotes Co., Ltd. v. Hon Hai Precision Industry Co., Ltd.</u>,
        2012 WL 2917450 (N.D. Cal. July 17, 2012)..........................................................................- 18 -

8

9    <u>Millennium Communications & Fulfillment, Inc. v. Office of Attorney General, Dept. of Legal</u>
        <u>Affairs, State of Fla.</u>, 761 So. 2d 1256 (Fla. 3d DCA 2000)........................................- 8 -, - 16 -

10

11   <u>Mississippi ex rel. Hood v. AU Optronics Corp.</u>,
    2012 WL 1575629  (S.D. Miss. May 3, 2012)........................................................................- 17 -

12   <u>NAACP v. N.A.A.C.P. Legal Defense & Education Fund, Inc.</u>,
        753 F.2d 131 (D.C. Cir. 1985)............................................................................................- 6 -

13

14   <u>Petrella v. Metro-Goldwyn-Mayer, Inc.</u>, 2012 WL 3711706 (9th Cir. Aug. 29, 2012)...............- 7 -

15   <u>Saul Zaentz Co. v. Wozniak Travel, Inc.</u>, 627 F. Supp. 2d 1096 (N.D. Cal. 2008)....................- 6 -

16   <u>State of Florida v. Elsberry</u>, 1985 WL 6278 (N.D. Fla. Nov. 26, 1985) ....................................- 9 -

17   <u>State v. Smith</u>, 16 Fla. 175 (Fla. 1877) .....................................................................................- 6 -

18

19   <u>Tran Enters., LLC v. DHL Express (USA), Inc.</u>, 627 F.3d 1004 (5th Cir. 2010)....................- 17 -

20   <u>U.S. v. Sene X Eleemosynary Corp., Inc.</u>, 479 F. Supp. 970 (S.D. Fla. 1979) ...............- 8 -, - 16 -

21   <u>U.S. v. W. T. Grant Co.</u>, 345 U.S. 629 (1953)...........................................................................- 9 -

22

23   <u>United States v. E.I. du Pont de Nemours & Co.</u>, 366 U.S. 316 (1961) ...................................- 16 -

24   <u>United States v. Kirkpatrick</u>, 22 U.S. 720 (1824) ....................................................................- 6 -

25   <u>United States v. Oregon State Medical Soc.</u>, 343 U. S. 326 (1952).................................- 9 -, - 11 -

26   <u>VFD Consulting, Inc. v. 21st Servs.</u>, 2005 WL 1115870 (N.D. Cal. May 11, 2005)...............- 14 -

27   <u>Warfarin Sodium Antitrust Litig.,</u>, 214 F.3d 395 (3d Cir. 2000).............................................- 12 -

28

PLAINTIFF STATE OF FLORIDA'S RESPONSE AND OBJECTION TO DEFENDANTS' MOTION TO DISMISS THE STATE OF
FLORIDA'S CLAIMS FOR INJUNCTIVE RELIEF
Master File No. 07-cv-5944 SC; Case No. 2011-cv-6205 SC

-iii-

Wilk v. American Medical Ass'n, 895 F.2d 352 (7th Cir. 1990) ............................. - 3 -, - 9 -, - 10 -

Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100 (1969) ...................................... - 11 -

**STATUTES**

15 U.S.C. § 15 ....................................................................................................... - 13 -, - 14 -

15 U.S.C. § 15b ................................................................................................ - 2 -, - 3 -, - 5 -

15 U.S.C § 25 ...................................................................................................................... 16 -

15 U.S.C. § 26 ..................................................................................... - 3 -, - 5 -, - 8 -, - 13 -

Fla. Stat. § 501.207 ......................................................................................................... - 15 -

Fla. Stat. § 542.23 ........................................................................................................... - 15 -

Fla. Stat. § 542.27 ........................................................................................................... - 15 -

**RULES**

Fed. R. Civ. P. 12(b)(6) ................................................................................................. 18 -

Fed. R. Civ. P. 12(g)(2) ................................................................................................. 18 -

Fed. R. Civ. P. 12(h) ....................................................................................................... 18 -

PLAINTIFF STATE OF FLORIDA'S RESPONSE AND OBJECTION TO DEFENDANTS' MOTION TO DISMISS THE STATE OF
FLORIDA'S CLAIMS FOR INJUNCTIVE RELIEF
Master File No. 07-cv-5944 SC; Case No. 2011-cv-6205 SC

-iv-

The State of Florida, Department of Legal Affairs, Office of the Attorney General ("Florida"), opposes Defendants' Joint Motion to Dismiss the State of Florida's Claims for Injunctive Relief (Dkt. 1392) ("Motion" or "second Motion to Dismiss") as follows:

## I.   INTRODUCTION

With the filing of the second Motion to Dismiss, Defendants have now two pending 12(b)(6) motions, a procedure that is prohibited by the Federal Rules of Civil Procedure.  The Motion violates the Special Master's request for additional briefing, consists of improper re-argument, new arguments that have been waived by their omission from the initial briefing, and unsupported arguments that have already been refuted by Florida or conceded by the Defendants. The Motion should be stricken and/or denied.

## II.  ISSUES TO BE DECIDED

1.   Whether Florida's claims for injunctive relief are barred by the doctrine of laches;

2.   Whether Florida has alleged threatened loss or damage by a violation of the antitrust laws;

3.   Whether the State of Florida may file a claim for injunctive relief when putative class actions are pending that also seek injunctive relief;

4.   Whether Defendants' second Motion to Dismiss is timely when it raises new arguments not raised in the briefing of the first Motion to Dismiss or the hearing; and

5.   Whether Defendants may file a second Motion to Dismiss Florida's Amended Complaint.

## III. BACKGROUND

Florida filed its Amended Complaint for Damages, Civil Penalties, Injunctive Relief on

PLAINTIFF STATE OF FLORIDA'S RESPONSE AND OBJECTION TO DEFENDANTS' MOTION TO DISMISS THE STATE OF FLORIDA'S CLAIMS FOR INJUNCTIVE RELIEF
Master File No. 07-cv-5944 SC; Case No. 2011-cv-6205 SC

- 1 -

July 16, 2012.  (Dkt. 1260.)  On August 2, 2012, Defendants filed their Motion to Dismiss the State of Florida's Amended Complaint ("first Motion to Dismiss").  (Dkt. 1287.)  The first Motion to Dismiss is still pending.

In their first Motion to Dismiss, Defendants made four arguments that the statute of limitations barred Florida's Sherman Act claim for injunctive relief: [1]

(1) **First Argument:**  Florida's claim for injunctive relief should be dismissed as untimely because the claim is facially untimely.  (Dkt. 1287 at Table of Contents, Argument IV.A.1.)  Defendants argued that the injunctive relief claim was subject to a four-year statute of limitations pursuant to 15 U.S.C. § 15b; thus, any Sherman Act claim expired four years after each purchase on which those claims were based.  (Dkt. 1287 at 4.)  If Florida's last claimed injury occurred on November 25, 2007, then its suit (filed on December 9, 2011) is barred by the four-year statute of limitations of 15 U.S.C. § 15b on its face.

**(2) Second Argument:**  Florida's claim for injunctive relief should be dismissed as untimely because it cannot rely on its insufficiently pleaded "continuing conspiracy" claim *to avoid the statute of limitations*."  (Dkt. 1287 at Table of Contents, Argument IV.B.2) (emphasis added).

(3) **Third Argument**:  Fraudulent concealment does not save Florida's claim for injunctive relief because it was on notice of the alleged conspiracy in November 2007 (Dkt. 1287 at Table of Contents, Argument IV.B.2).  The four-year statute of limitations applicable to the Sherman Act claim expired after the four-year period during which Florida was aware of its claims, rendering fraudulent concealment inappropriate.  (Dkt. 1287 at 8.)

(4) **Fourth Argument**:  Class action tolling does not apply to toll Florida's claim for injunctive relief because Florida's Sherman Act claim are not tolled by any of the DPP or IPP class actions.  (Dkt. 1287 at Table of Contents, Argument IV.B.3.)  Florida did not allege any purchases of CRTs; thus, Florida cannot rely on the DPP complaint to toll its Sherman Act claim.  (Dkt. 1287 at 15.)  Florida's Sherman Act claims cannot be tolled by the IPP complaint because the putative class is defined to exclude governmental entities such as Florida. (Dkt. 1287 at 15.)

---

[1] They did not address Florida's request for injunctive relief under state law.  (Am. Compl., Dkt. 1260, ¶ 156(e).)

Florida filed its Response to the first Motion to Dismiss on August 24, 2012 (Dkt. 1330), and opposed Defendants' arguments.

(1) **Response to First Argument:** Florida's Sherman Act claim was facially timely. (Dkt. 1330 at Table of Contents, Argument IV.A.1.). Its injunctive relief claim is not subject to a four-year statute of limitations under 15 U.S.C. § 15b, which by its terms does not apply to Florida's claim under 15 U.S.C. § 26. (Dkt. 1330 at 3.)

(2) **Response to Second Argument:** Florida has adequately pled an entitlement to an injunction since there is no statute-of-limitation issue. Once a plausible conspiracy is shown, Florida has a presumption that an antitrust conspiracy has not ended absent proof by Defendants that it has ended. (Dkt. 1330 at 4.) The Court can consider the lingering effects of the conspiracy, that the conspirators never acknowledged the lawlessness of their past conduct, that they never publicly retracted their agreement to restrain trade, and their systematic, long-term wrongdoing. (Dkt. 1330 at 4, citing *Wilk v. American Medical Ass'n*, 895 F.2d 352, 367 (7th Cir. 1990)). Like the IPPs and DPPs, Florida also pled a continuing conspiracy, and this Court already held that the IPPs and DPPs adequately pled standing to seek injunctive relief. (Dkt. 1330 at 6.)

(3) **Response to Third Argument**: See Response to First and Second Argument.

(4) **Response to Fourth Argument**: See Response to First and Second Argument.

The Defendants filed their Reply to the first Motion to Dismiss on September 7, 2012. (Dkt. 1342.) Defendants' Reply contained the following rebuttal arguments:

(1) **Reply to Response to First Argument:** *None.*

(2) **Reply to Response to Second Argument:** *None.*

(3) **Response to Third Argument**: *None.*

(4) **Response to Fourth Argument**: *None.*

A hearing on the first Motion to Dismiss was held by the Special Master on September 20, 2012. At the hearing, Counsel for the Defendants abandoned all of their arguments that injunctive relief claims were barred by the statute of limitations, stating: "I would acknowledge,

PLAINTIFF STATE OF FLORIDA'S RESPONSE AND OBJECTION TO DEFENDANTS' MOTION TO DISMISS THE STATE OF FLORIDA'S CLAIMS FOR INJUNCTIVE RELIEF
Master File No. 07-cv-5944 SC; Case No. 2011-cv-6205 SC

- 3 -

1    your Honor, that if there is a continuing harm or continuing activity that could be enjoined, then

2    an injunction could be applied. So really our arguments relating to the statute of limitations are

3    focused on the claims for damages or civil penalties."  Weilhammer Decl., Ex. 1 ("Tr.") at 29;

4    *see also* Tr. at 13 ("the statute of limitations argument relates to claims for *damages* that accrued

5    before December 9th, 2007.") (emphasis added).

6        The first Motion to Dismiss argued dismissal of injunctive relief only in the context of the

7    statute of limitations.   (Dkt. 1287 at Table of Contents, Argument IV.B.2.)   When Defendants

8    conceded the statute of limitations did not apply to injunctive relief, but continued to argue for

9    the dismissal of Florida's claims for injunctive relief, the Special Master appropriately

10   questioned the Defendants on this point:

> **SPECIAL MASTER LEGGE**:  "Am I right about that? That you are admitting that
> your argument you've been making about the statute of limitations is really applicable
> only to the damages claims? . . . .  And for me to do anything with respect to the
> injunction claims, I have to analyze the grounds of the adequacy of the allegations for
> injunctive relief and the plausibility grounds for believing that there's still any
> damage for the Florida citizens.
> **MR. EVERETT [Counsel for the Defendants]**: I think that's right, your Honor."
> (Tr. at 34.).

11       The Special Master ordered additional briefing "telling me why your 12(b)(6) motion should

12   apply to the claims for equitable relief . . . ."  (Tr. at 46.)  The Special Master did not authorize

13   re-argument, new arguments that had not been raised, or the filing of a second motion to dismiss;

14   he simply asked the Defendants to explain how their motion to dismiss applied to Florida's

15   claims for equitable relief.

16       Disregarding the order of the Special Master, Defendants chose not to brief the Special

17   Master as to why their first Motion to Dismiss applies to equitable relief claims, but filed a

18   second Motion to Dismiss, a Request for Judicial Notice (set for hearing in the past, on

September 20, 2012) (Dkt. 1393), and 368 pages of exhibits.  Their violation of the Special

Master's Order has resulted in additional costs to Florida to properly cite to the transcript, and

attorneys' fees in addressing already-briefed arguments.

## IV.   ARGUMENT

### A.  Defendants' Second Motion to Dismiss Should Be Denied.

#### 1.   Laches Does Not Bar Florida's Claim for Injunctive Relief.

The first Motion to Dismiss argued that Florida's Sherman Act claim for injunctive relief is

subject to a four-year statute of limitations pursuant to 15 U.S.C. § 15b.  (Dkt. 1287 at 4.)

Florida denied that 15 U.S.C. § 15b has any effect on a claim for injunctive relief brought under

15 U.S.C. § 26.  (Dkt. 1330 at 3.)  Defendants did not address this argument by Florida in their

Reply.  Then, at the hearing on the first Motion to Dismiss, Defendants abandoned their

arguments that Florida's claims for injunctive relief were time barred:

- **Counsel for the Defendants**:  "the statute of limitations argument relates to claims for *damages* that accrued before December 9th, 2007."  (Tr. at 13.) (emphasis added).

- **Counsel for the Defendants**:  "I would acknowledge, your Honor, that if there is a continuing harm or continuing activity that could be enjoined, then an injunction could be applied. So really our arguments relating to the statute of limitations are focused on the claims for damages or civil penalties."  (Tr. at 29.)

- **Special Master Legge**:  "Am I right about that? That you are admitting that your argument you've been making about the statute of limitations is really applicable only to the damages claims? I shouldn't say only because I think that's really a major part, but limited to the damage claims. And for me to do anything with respect to the injunction claims, I have to analyze the grounds of the adequacy of the allegations for

PLAINTIFF STATE OF FLORIDA'S RESPONSE AND OBJECTION TO DEFENDANTS' MOTION TO DISMISS THE STATE OF
FLORIDA'S CLAIMS FOR INJUNCTIVE RELIEF
Master File No. 07-cv-5944 SC; Case No. 2011-cv-6205 SC

- 5 -

injunctive relief and the plausibility grounds for believing that there's still any

damage for the Florida citizens.

**MR. EVERETT [Counsel for the Defendants]**: I think that's right, your Honor."

(Tr. at 34.).

At no point in their briefing or at the hearing did Defendants argue that the doctrine of laches

bars Florida's claims for injunctive relief.  Now, Defendants drop an argument in a footnote for

the first time that Florida's injunctive claims are time barred (Dkt. 1392 at 1, n.1).  Florida is

forced to respond.

Defendants' argument is that "Here Plaintiff was indisputably on notice of potential claims

by November 2007 at the latest and yet still waited more than four years to file its Complaint

seeking damages and injunctive relief.  Laches applies." (Dkt. 1392 at 1, n.1.)

First, laches does not apply to actions by Florida:

> "'It has long been well settled by judicial decisions that laches cannot be imputed
> to government. Governments transact business through agents only, and cannot,
> like private persons, be subjected to the observance of such sharp and close rules
> of conduct as may be exacted of individuals in their commercial dealings with
> each other.'"

*City of Winter Haven v. State ex rel. Landis*, 170 So. 100, 107-08 (Fla. 1936) (quoting *State v.*

*Smith*, 16 Fla. 175 (Fla. 1877)); *see also United States v. Kirkpatrick*, 22 U.S. 720, 735 (1824)

(holding the defense of laches is not imputable to the government, based upon principles of

"great public policy").

Second, Defendants' argument is woefully inadequate.  Showing "'mere delay' by itself" is

not sufficient for invoking a laches defense.  *Saul Zaentz Co. v. Wozniak Travel, Inc.*, 627 F.

Supp. 2d 1096, 1117 (N.D. Cal. 2008) (quoting *NAACP v. N.A.A.C.P. Legal Defense &*

*Education Fund, Inc.*, 753 F.2d 131, 138-139 (D.C. Cir. 1985)). Defendants have failed to

mention, let alone sufficiently address, the elements of a laches defense. "To demonstrate laches, the 'defendant must prove both an unreasonable delay by the plaintiff and prejudice to itself.'" *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 951 (9th Cir. 2001) (quoting *Couveau v. Am. Airlines, Inc.*, 218 F.3d 1078, 1083 (9th Cir. 2000)); *see also Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 838 (9th Cir. 2002). Defendants have failed to prove that any claimed delay was unreasonable and Defendants make no attempt to explain to this Court what, if any, prejudice they are claiming. Therefore, it is clear that Defendants have failed to carry their initial burden of proof in asserting the defense of laches, which is a fact-intensive inquiry. *See Petrella v. Metro-Goldwyn-Mayer, Inc.*, 2012 WL 3711706, at *2 (9th Cir. Aug. 29, 2012) (holding the question "[w]hether a plaintiff's conduct constitutes laches in any given circumstance is an issue of fact.").

> **2. Florida Has Adequately Alleged Threatened Loss or Damage by a Violation of Antitrust Laws, Justifying a Request for an Injunction.**

> **a. Defendants Have Misstated What Florida Must Show to Obtain an Injunction Under Florida Law.**

Defendants have incorrectly stated in their second Motion to Dismiss what the State of Florida must show to obtain an injunction under Florida law. (Dkt. 1392 at 3, n.3.) Defendants' footnote is an inaccurate citation, an inaccurate quote, and an inaccurate application of the law as to what Florida must show to obtain an injunction under state law.

Unlike other plaintiffs that may seek an injunction under the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), because Florida is expressly authorized under Section 501.207(1)(b) to seek injunctive relief, courts have held it does *not* have to establish an inadequate remedy at law and that irreparable harm will arise absent injunctive relief (or public interest) before obtaining an injunction under FDUTPA. *See Millennium Communications &*

*Fulfillment, Inc. v. Office of Attorney General, Dept. of Legal Affairs, State of Fla.*, 761 So. 2d 1256, 1260 (Fla. 3d DCA 2000) (citing *U.S. v. Sene X Eleemosynary Corp., Inc.*, 479 F. Supp. 970, 980-81 (S.D. Fla. 1979) ("Where an injunction is authorized by statute, it is proper to issue such an order to restrain violations of the law if the statutory conditions are satisfied. . . . Furthermore, in such situations, the court is not bound by the principles that apply in private equity suits. . . . Proof of irreparable harm from denial of an injunction, a traditional prerequisite for injunctive relief, need not be established where the government seeks by statutory injunction to protect the public health and effectuate Congressional policy . . . for the availability of the statutory power to enjoin violations of the statute is evidence of a Congressional judgment that such violations would cause irreparable injury. . . . Likewise, the government is not bound to prove the absence of an adequate remedy at law where a statute authorizes an injunction."). The same logic and reasoning applies to Florida's pursuit of an injunction under the Florida Antitrust Act.

### b. Defendants Have Incorrectly Framed What the Scope and Purpose of an Injunction Is Under the Sherman Act.

In their motions to dismiss, Defendants incorrectly framed the issue of what the scope and purpose of an injunction is under the Sherman Act. (Dkt. 1287 at Table of Contents, Argument IV.B.2.) The issue is not whether there is a "continuing conspiracy" or how many CRTs are currently sold. As Florida stated in its response brief (Dkt. 1330), the question under 15 U.S.C. § 26 is whether there is threatened loss or damage by a violation of the antitrust laws. Florida must prove the elements of 15 U.S.C. § 26, which serves three major antitrust functions: (1) putting an end to the illegal conduct, (2) depriving violators of the benefits of their illegal conduct, and (3) restoring competition in the market place. *See In re Multidistrict Vehicle Air Pollution*, 538 F.2d

PLAINTIFF STATE OF FLORIDA'S RESPONSE AND OBJECTION TO DEFENDANTS' MOTION TO DISMISS THE STATE OF FLORIDA'S CLAIMS FOR INJUNCTIVE RELIEF
Master File No. 07-cv-5944 SC; Case No. 2011-cv-6205 SC

- 8 -

231, 234-35 (9th Cir. 1976) (recognizing a fourth function:  to make whole those who have been injured by the conduct of the violators.).

Florida has the burden to establish that an injunction is necessary because of a significant threat of injury from either an impending antitrust violation or a contemporary violation likely to continue or recur.   In doing so, Florida is aided by a <u>presumption that an antitrust conspiracy has not ended absent proof by the defendant that it has concluded</u>.  *See State of Florida v. Elsberry*, 1985 WL 6278 (N.D. Fla. Nov. 26, 1985) (citing *United States v. Oregon State Medical Soc.*, 343 U. S. 326, 333 (1952)); *U.S. v. W. T. Grant Co.*, 345 U.S. 629, 632-633 (1953)).  Even voluntary cessation of the illegal conspiracy does not moot a suit for injunction, since the conspirator might return to his former practices.   *See id.* (citing *U.S. v. W. T. Grant Co.*, 345 U. S. 629, 632 (1953)).

In Florida's Response to the first Motion to Dismiss, Florida argued that assuming *arguendo* that the Defendants stopped conspiring in 2007, in determining whether to issue an injunction, the Court can consider the lingering effects of the conspiracy, that the conspirators never acknowledged the lawlessness of their past conduct, that they never publicly retracted their agreement to restrain trade, and their systematic, long-term wrongdoing, and cited *Wilk v. American Medical Ass'n*, 895 F.2d 352, 367 (7th Cir. 1990). (Dkt. 1330 at 4.)  Defendants' Reply did not address any of these arguments, and did not even cite to *Wilk*.  Now, only after the briefing has closed, do they brief the Court on *Wilk* and why they allege there can be no recurrent violation.

First, this additional briefing and 368 pages of hearsay exhibits[2] were waived when they were not included in the initial briefing.  *See* Section IV.B.2, *infra*.

---

[2] Defendants' declarations are outside of the scope of the complaint, and the court cannot take judicial notice of hearsay.  *See, e.g., Demoura v. Ford*, 2011 WL 2038688, at *5 (E.D. Cal. May

PLAINTIFF STATE OF FLORIDA'S RESPONSE AND OBJECTION TO DEFENDANTS' MOTION TO DISMISS THE STATE OF FLORIDA'S CLAIMS FOR INJUNCTIVE RELIEF
Master File No. 07-cv-5944 SC; Case No. 2011-cv-6205 SC

- 9 -

Defendants make much of the fact that they claim "many" of the Defendants have not made CRTs in years.  (Dkt. 1392 at 4.)  In *Wilk*, while the trial court found that the conspiracy ended in 1980, it nonetheless entered an injunction after a retrial in 1987.  *See id*.  The district court's injunction was upheld when it found a cognizable danger of recurrent violations by the AMA, was unimpressed with the AMA's expressed intent to comply with antitrust laws, was unpersuaded by the effectiveness of the AMA's discontinuance of its boycott, and properly considered the systematic and long-term nature of the AMA's boycott.  *See id*.  The AMA also vigorously maintained that its activity was lawful, and never acknowledged its past conduct's lawlessness.  *See id*. at 368.

Even if Defendants were to express an intent to comply with the antitrust laws, Defendants' conspiracy lasted from 1995 to at least 2007.  This twelve-year international conspiracy certainly rises to the kind of "systematic and long-term" anticompetitive behavior that is properly the subject of an injunction.  *Wilk v. American Medical Ass'n*, 895 F.2d 352, 367 (7th Cir. 1990).

Florida will prove that the Defendants' conduct was unlawful as they entered into a conspiracy violative of the antitrust laws.  Florida will show it suffers from the lingering effects of the conspiracy in the form of a continuing injury.  (Am. Compl. ¶ 145.)  Florida will show that the conspiracy was successful:  price competition in the sale of CRTs has been restrained, suppressed, and/or eliminated throughout Florida.  *See id*.  Florida will show that purchasers of CRTs and CRT Products have been deprived of the benefits of competition.  *See id*.  Florida will also seek to terminate Defendants' systematic and long-term agreement to restrain trade, which they still do not appear to have publicly retracted despite guilty pleas.  *See* Dkt. 1287 at 6, lines

23, 2011) ("None of the hearsay declarations is subject to judicial notice and none may be considered in resolving Defendant's motion to dismiss.").

PLAINTIFF STATE OF FLORIDA'S RESPONSE AND OBJECTION TO DEFENDANTS' MOTION TO DISMISS THE STATE OF FLORIDA'S CLAIMS FOR INJUNCTIVE RELIEF
Master File No. 07-cv-5944 SC; Case No. 2011-cv-6205 SC

- 10 -

4-5 (still referring to the "alleged conspiratorial conduct").  Other related unlawful acts by the

Defendants should also be restrained, for as the Supreme Court stated:

> We see no reason that the federal courts, in exercising the traditional equitable powers extended to them by s 16 [of the Clayton Act], should not respond to the 'salutary principle that when one has been found to have committed acts in violation of a law he may be restrained from committing other related unlawful acts.' . . . Although a district court may not enjoin all future illegal conduct of the defendant, or even all future violations of the antitrust laws, however unrelated to the violation found by the court, . . . '(w)hen the purpose to restrain trade appears from a clear violation of law, it is not necessary that all of the untraveled roads to that end be left open and that only the worn one be closed.'

*Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 133 (1969) (citations omitted).  "It

is the duty of the courts to beware of efforts to defeat injunctive relief by protestations of

repentance and reform, especially when abandonment seems timed to anticipate suit, and there is

probability of resumption." *United States v. Or. State Med. Soc'y*, 343 U.S. 326, 333 (1952).

Defendants have neither admitted their conduct, nor repented, nor reformed.  For these reasons,

Florida will show its entitlement to an injunction, which is adequately pleaded.

The Court should provide the State of Florida full recovery.  With respect to past violations,

injunctive relief may still be required to address the effects of those violations that persist; thus,

the Court should be "loathe at [the pleading] stage in the proceedings to curtail its broad equity

powers to fashion the most complete relief possible."  *In re K-Dur Antitrust Litigation*, 338 F.

Supp. 2d 517, 550 (D.N.J. 2004); *see also Friends of Frederick Seig Grove v. Sonoma County

Water Agency,* 124 F. Supp. 2d 1161, 1172 (N.D. Cal. 2000) (finding no authority to deny

plaintiff's request for injunctive relief at a pre-trial stage of the proceedings).

Again, Defendants have already lost this argument and are retreading the same ground.  On

March 16, 2009, Direct Purchaser Plaintiffs filed a Consolidated Amended Complaint. (Dkt.

436) ("Direct Compl.").  The Indirect Purchaser Plaintiffs filed a Consolidated Amended

PLAINTIFF STATE OF FLORIDA'S RESPONSE AND OBJECTION TO DEFENDANTS' MOTION TO DISMISS THE STATE OF FLORIDA'S CLAIMS FOR INJUNCTIVE RELIEF
Master File No. 07-cv-5944 SC; Case No. 2011-cv-6205 SC

- 11 -

1   Complaint on the same day.  (Dkt. 437)  ("Indirect Compl.").  Like Florida, they both alleged a

2   continuing conspiracy.  Direct Compl. ¶ 214; Indirect Compl. ¶ 245.  This Court denied the

3   Defendants' motion to dismiss the injunctive claims, and held that the "Plaintiffs have

4   adequately pled standing to seek injunctive relief under Section 16 of the Clayton Act."  *See*

5   Order Approving and Adopting Special Master's Report, Recommendations and Tentative

6   Rulings Re: Defendants' Motions to Dismiss (Dkt. 665) (citing *In re Warfarin Sodium Antitrust*

7   *Litig.*, 214 F.3d 395, 399 (3d Cir. 2000) ("[I]njunctive relief under section 16 only requires a

8   threat of loss . . . .").

9

### 3.   Florida's Request for Injunctive Relief is Not Barred Because Other Private Parties Have Also Filed Suits for Injunctive Relief Under Federal Law.

Defendants argue that Florida's request for injunctive relief is duplicative of other class

actions and should be dismissed as a matter of law.

First, Defendants ignore the trial schedule of Florida's action and the other class actions that

also seek injunctive relief:  they are on the same pre-trial and trial schedule, and will all be tried

in the same district court.  (Scheduling Order, Dkt. 1127).

Second, Defendants assume that the class will be certified and proceed to judgment.  There is

no guarantee that the putative class actions at this stage in their litigation will not be resolved

before this matter is scheduled to be tried on April 14, 2014.  (Scheduling Order, Dkt. 1127)

Third, Defendants' citations do not support their argument.  Defendants cite to *Cargill, Inc. v.*

*Monfort of Colorado, Inc.*, 479 U.S. 104, 111 n.6 (1986) for the proposition that "100 injunctions

are no more effective than one," but omit a crucial holding of the case that undercuts

Defendants' argument:

> [U]nder § 16, the only remedy available is equitable in nature, and, as we recognized in
> *Hawaii v. Standard Oil Co.,* 'the fact is that one injunction is as effective as 100, and,
> concomitantly, that 100 injunctions are no more effective than one.' 405 U.S., at 261, 92

1

2

S.Ct., at 890. Thus, because *standing under § 16 raises no threat of multiple lawsuits or duplicative recoveries*, some of the factors other than antitrust injury that are appropriate to a determination of standing under § 4 are not relevant under § 16.

3

4

5

6

479 U.S. 104, 111 n.6 (1986) (emphasis added). The court thus recognized that a claim for injunctive relief under Section 16 of the Clayton Act (15 U.S.C. § 26) does *not* pose the threat of duplication.

7

8

9

10

11

12

13

14

15

16

17

18

Defendants also selectively quote from *Colorado River Water Conservation Dist. v. United States* for the proposition that "though no precise rule has evolved, the general principle is to avoid duplicative litigation." 424 U.S. 800, 817 (1976).  Defendants quoted only part of what the court said and the omitted part is highly relevant. The entire sentence reads:  "*As between federal district courts*, however, though no precise rule has evolved, the general principle is to avoid duplicative litigation." *Id.* (emphasis added).  Another case cited by Defendants, *Barapind v. Reno*, 225 F.3d 1100, 1109 (9th Cir. 2000), also quotes the same truncated, misleading language. Both of these cases dealt with situations where two fora were involved and are thus not analogous to the situation here, as Florida's injunctive claims and the injunctive claims of the private classes have been consolidated in one federal district court.

19

20

21

22

23

24

25

26

27

28

Defendants' selective quotations continue with *Hawaii v. Standard Oil Co.*, which they say supports the argument that "the fact is that one injunction is as effective as 100, and, concomitantly, that 100 injunctions are no more effective than one."  405 U.S. 251, 261 (1972). In *Standard Oil*, the Supreme Court considered whether Hawaii had standing to sue for injury to its general economy, rather than in its proprietary capacity, under Section 4 of the Clayton Act (15 U.S.C. § 15) for treble damages and injunctive relief for antitrust violations.  Hawaii's count for injunctive relief and treble damages was only under Section 4 of the Clayton Act.  *See Hawaii v. Standard Oil Co. of Cal.*, 431 F.2d 1282, 1285 (9th Cir. 1970).  In its arguments to the

Supreme Court and the Ninth Circuit, Hawaii relied on *Georgia v. Pennsylvania Railroad Co.*, 324 U.S. 439 (1945), holding parens patriae suits injuring the general economy have long been recognized.  As the Ninth Circuit illustrated, *Pennsylvania Railroad* was concerned with the relief offered by Section 16 of the Clayton Act, which was "far broader than § 4."  431 F.2d at 1284.  The Supreme Court upheld the Ninth Circuit's dismissal of Hawaii's claim, holding that Hawaii did not have standing to sue for injury to its general economy under Section 4 of the Clayton Act, 15 U.S.C. § 15.  The entire quote, omitted from the second Motion to Dismiss, actually defeats Defendants' arguments:

> While the United States Government, *the governments of each State, and any individual threatened with injury by an antitrust violation may all sue for injunctive relief against violations of the antitrust laws, and while they may theoretically do so simultaneously against the same persons for the same violations*, the fact is that one injunction is as effective as 100, and, concomitantly, that 100 injunctions are no more effective than one. This case illustrates the point well. The parties are in virtual agreement that whether or not Hawaii can sue for injunctive relief as parens patriae is of little consequence so long as it can seek the same relief in its proprietary capacity.

*Hawaii v. Standard Oil Co. of Cal.*, 405 U.S. 251, 261 (U.S. 1972) (emphasis added). Thus, Defendants' citation to this one statement does not support the proposition that Florida's injunctive claims should be dismissed for being duplicative of other injunctive claims.

Defendants then cite to *VFD Consulting, Inc. v. 21st Servs.* No. C04-2161 SBA, 2005 WL 1115870, at *8 (N.D. Cal. May 11, 2005), for the assertion that "duplicative litigation is heavily disfavored."  However, in that case the defendants had filed a motion for leave to file a third-party complaint in the Northern District of California, and the court denied the request because the defendants' counterclaims would be tried across the country, in the Eastern District of Pennsylvania.  The Northern District of California

PLAINTIFF STATE OF FLORIDA'S RESPONSE AND OBJECTION TO DEFENDANTS' MOTION TO DISMISS THE STATE OF FLORIDA'S CLAIMS FOR INJUNCTIVE RELIEF
Master File No. 07-cv-5944 SC; Case No. 2011-cv-6205 SC

- 14 -

1  reasoned that allowing the defendants to file the third-party complaint in that court would

2  result in duplicative litigation. Thus, this case is also inapposite since the so-called

3  "duplicative" suits at issue here are in the same district, and will be tried at the same time.

4  **4.    Injunctive Relief Is Important Relief to Florida.**

5  At the hearing on the first Motion to Dismiss, the Special Master suggested that Florida may

6  be more interested in financial recovery rather than injunctive relief.  (Tr. at 32.)

7  

8  Injunctive relief has frequently proved to be an "effective enforcement tool" under Section

9  16 of the Clayton Act to enforce the antitrust laws.  *F. & M. Schaefer Corp. v. C. Schmidt &*

10  *Sons, Inc.*, 476 F. Supp. 203, 205 n.1 (S.D.N.Y., 1979) (citing House Report 94-499).  State

11  Attorneys General have litigated antitrust cases under Section 16 in the past with great success,

12  securing much-needed relief for consumers.  *See, e.g.*, *In re Compact Disc Minimum Advertised*

13  *Price Litig.*, 2003 WL 21685581 (D. Me. July 18, 2003) (approving settlement that included

14  payments of $13.86 each to millions of individual claimants, millions of free music CDs

15  distributed to non-profit groups chosen by the plaintiff states, and injunctive relief); *In re Toys R*

16  *Us Antitrust Litigation*, 191 F.R.D. 347, 349 (E.D.N.Y. 2000) (approving settlement that

17  includes injunctive relief).

18  

19  The ability to obtain conduct remedies is also an important tool for Florida as the

20  enforcement authority.  With respect to state law, Florida is the enforcement authority of the

21  Florida Deceptive and Unfair Trade Practices Act and the Florida Antitrust Act.  *See* Fla. Stat. §§

22  501.207, 542.27.  Florida is expressly authorized to bring injunctive claims under state law.  *See*

23  Fla. Stat. §§ 501.207(1)(b), 542.23.

24  The designation of the Office of the Attorney General of Florida as the enforcement

25  authority, specifically empowered to obtain injunctive relief, is evidence by the Florida

26  

27  

28  

PLAINTIFF STATE OF FLORIDA'S RESPONSE AND OBJECTION TO DEFENDANTS' MOTION TO DISMISS THE STATE OF FLORIDA'S CLAIMS FOR INJUNCTIVE RELIEF
Master File No. 07-cv-5944 SC; Case No. 2011-cv-6205 SC

- 15 -

1  Legislature that violations of the FDUTPA and the FAA cause irreparable harm to the citizens of

2  Florida.  *See Millennium Communications & Fulfillment, Inc. v. Office of Attorney General,*

3  *Dept. of Legal Affairs, State of Fla.*, 761 So. 2d 1256, 1260 (Fla. 3d DCA 2000) (citing *U.S. v.*

4  *Sene X Eleemosynary Corp., Inc.*, 479 F. Supp. 970, 980-81 (S.D. Fla. 1979).  As the Supreme

5

6  Court stated in *Empagran*, when the United States government acts as the enforcement authority

7  (such as in the analogous context of 15 U.S.C § 25), it protects the public from anticompetitive

8  harm:

9
> A Government plaintiff, unlike a private plaintiff, must seek to obtain the relief
10 > necessary to protect the public from further anticompetitive conduct and to
> redress anticompetitive harm. And a Government plaintiff has legal authority
11 > broad enough to allow it to carry out this mission. 15 U.S.C. § 25; see also, *e.g.,*
> *United States v. E.I. du Pont de Nemours & Co.,* 366 U.S. 316, 334, 81 S. Ct.
12 > 1243, 6 L.Ed.2d 318 (1961) ("[I]t is well settled that once the Government has
> successfully borne the considerable burden of establishing a violation of law, all
13 > doubts as to the remedy are to be resolved in its favor"). Private plaintiffs, by way
> of contrast, are far less likely to be able to secure broad relief. See *California v.*
14 > *American Stores Co.,* 495 U.S. 271, 295, 110 S. Ct. 1853, 109 L.Ed.2d 240 (1990)
> ("Our conclusion that a district court has the power to order divestiture in
15 > appropriate cases brought [by private plaintiffs] does not, of course, mean that
> such power should be exercised in every situation in which the Government
16 > would be entitled to such relief"); 2 P. Areeda, Hovenkamp & R. Blair, Antitrust
> Law ¶¶ 303d-303e, pp. 40-45 (2d ed. 2000) (distinguishing between private and
17 > government suits in terms of availability, public interest motives, and remedial
> scope) . . . . This difference means that the Government's ability, in these three
18 > cases, to obtain relief helpful to those injured abroad tells us little or nothing
> about whether this Court would have awarded similar relief at the request of
19 > private plaintiffs.

20

21

22 *F. Hoffmann-La Roche Ltd. v. Empagran S.A.*, 542 U.S. 155, 170-71 (2004).  Thus, the

23 injunctive relief sought by Florida should not be dismissed as subservient to, or less important

24 than, monetary relief.

25     **B.  <u>Defendants' Second Motion to Dismiss Should Be Stricken.</u>**

26         **1.   <u>Defendants' Motion is Untimely.</u>**

27

28

1    Florida moves this Court to strike the Defendants' second Motion to Dismiss.  The second

2    Motion to Dismiss raises new grounds for dismissal not raised in their first Motion to Dismiss,

3    and was not authorized by the Special Master.[3]  The Court should not consider any new

4    arguments or evidence raised for the first time in a second, unauthorized motion to dismiss when

5    the grounds were not raised in the original motion, which is still pending.  *See, e.g.*, *Mississippi*

6    *ex rel. Hood v. AU Optronics Corp.*, 2012 WL 1575629, at *7-8  (S.D. Miss. May 3, 2012)

7    (granting motion by Hitachi, Ltd. *et al*. to strike new arguments not raised by the Attorney

8    General in his original motion); *In re Flash Memory Antitrust Litigation*, 2010 WL 2332081, at

9    *15 (N.D. Cal. 2010) (holding the Court does not consider new arguments or evidence presented

10   for first time in a reply); *Dandong Shuguang Axel Corp., Ltd. v. Brilliance Machinery Co*., 2001

11   WL 637446, at *4 (N.D. Cal. June 1, 2001) (Conti, J.) (holding sur-reply raising argument for

12   the first time was untimely); *Epic Advertising v. Asis Internet Services*, 2011 WL 4507096, at *3

13   (N.D. Cal. Sept. 29, 2011) (Conti, J.) (holding the argument raised for the first time in the

14   defendants' reply would not be addressed); *Tran Enters., LLC v. DHL Express (USA), Inc.*, 627

15   F.3d 1004, 1010 (5th Cir. 2010) (arguments raised for the first time in reply brief or at oral

16   argument are not properly before the court); *In re Urethane Antitrust Litigation*, 663 F. Supp. 2d

17   1067, 1083 (D. Kan. 2009) (defendants may not seek dismissal of particular claims for the first

18   time in a reply brief).

19       District courts in the Ninth Circuit have been willing to strike arguments when the arguments

20   were omitted from the original motion.  *See Groupion, LLC v. Groupon, Inc*., 2012 WL

21   3025711, at *3 (N.D. Cal. July 24, 2012) (granting motion to strike Groupion's arguments and

---

[3] *See, e.g.*, new arguments raised by Defendants in Footnote One and Section IV.C of the second Motion to Dismiss ("Plaintiff's Injunctive Relief Claims Are Duplicative") (Dkt. 1392 at 8.).

1   supporting evidence raised for the first time in the reply brief since Groupion could have and

2   should have asserted its arguments in its opening motion); *Lotes Co., Ltd. v. Hon Hai Precision*

3   *Industry Co., Ltd.*, 2012 WL 2917450, at *1 (N.D. Cal. July 17, 2012) (granting motion to strike

4   new evidence offered for the first time in its reply brief).  Therefore, the Court should strike the

5   arguments and grounds for dismissal in the Defendants' second Motion to Dismiss that were not

6   raised in the first Motion to Dismiss.

8       **2.   Defendants Cannot File a Second Motion to Dismiss for Failure to State a**
            **Claim, Raising Defenses or Objections That Were Available to Them But**
9           **Omitted from the First Motion to Dismiss.**

10          The filing of Defendants' second Motion to Dismiss is procedurally barred.  Defendants'

11  already filed a Motion to Dismiss, which was brought under Fed. R. Civ. P. 12(b)(6).  (Dkt. 1287

12  at 3.)  The first Motion to Dismiss is still pending, and was "fully briefed."  (Dkt. 1392 at 2.)

13  Defendants' second Motion to Dismiss is also brought as a motion for failure to state a claim

14  under Fed. R. Civ. P. 12(b)(6).  (Dkt. 1392 at 2.)

16          Except as provided in Fed. R. Civ. P. 12(h)(2) or (3), a party that makes a Rule 12 motion

17  must not make another motion under Rule 12 raising a defense or objection that was available to

18  the party but omitted from its earlier Rule 12[4] motion.  *See* Fed. R. Civ. P. 12(g)(2).

20          The Special Master did not authorize the filing of a second motion to dismiss, nor is such a

21  second motion allowed under the Federal Rules of Civil Procedure.  The proper remedy for a

22  violation of Fed. R. Civ. P. 12(g)(2) is to strike the motion.  See *Chen v. Cayman Arts, Inc.*, 2011

23  WL 1085646, at *2-3 (S.D. Fla. Mar. 21, 2011).

---

[4] Fed. R. Civ. P. 12(h)(2) (allowing a defense of a failure to state a claim upon which relief can
be granted in a pleading, 12(c) motion, or at trial) and (h)(3) (raising a defense to lack of subject-
matter jurisdiction) do not apply.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### V.  <u>CONCLUSION</u>

For the reasons stated above, Defendants' second Motion to Dismiss should be denied; the second Motion to Dismiss should be stricken; and the Court should grant attorneys' fees and costs for requiring the State of Florida to incur additional costs and fees in responding to the unauthorized second Motion to Dismiss.

Respectfully submitted this 18th day of October, 2012.

The State of Florida
PAMELA JO BONDI

Attorney General
STATE OF FLORIDA

/s/ Nicholas J. Weilhammer
PATRICIA A. CONNERS (Trish.Conners@myfloridalegal.com)
R. SCOTT PALMER (Scott.Palmer@myfloridalegal.com)
LIZABETH A. BRADY (Liz.Brady@myfloridalegal.com)
NICHOLAS J. WEILHAMMER (Nicholas.Weilhammer@myfloridalegal.com)
SATU A. CORREA (Satu.Correa@myfloridalegal.com)
Office of the Attorney General
State of Florida
PL-01, The Capitol
Tallahassee, FL 32399-1050
Tel:      (850) 414-3300
Fax:     (850) 488-9134

Attorneys for Plaintiff State of Florida

PLAINTIFF STATE OF FLORIDA'S RESPONSE AND OBJECTION TO DEFENDANTS' MOTION TO DISMISS THE STATE OF FLORIDA'S CLAIMS FOR INJUNCTIVE RELIEF
Master File No. 07-cv-5944 SC; Case No. 2011-cv-6205 SC

- 19 -