# **EXHIBIT 1**

```
            IN THE UNITED STATES DISTRICT COURT

         FOR THE NORTHERN DISTRICT OF CALIFORNIA

                   SAN FRANCISCO DIVISION

              MASTER FILE NO. 07-CV-5944 SC

                      MDL NO. 1917


IN RE:  CATHODE RAY TUBE (CRT)      CASE NO. 07-CV-5944 SC
ANTITRUST LITIGATION
_____

THIS DOCUMENT RELATES TO:

CASE NO. 2011-CV-6205 SC

STATE OF FLORIDA, OFFICE OF THE
ATTORNEY GENERAL, DEPARTMENT OF
LEGAL AFFAIRS,
              PLAINTIFF,
      VS.

LG ELECTRONICS, INC., ET AL.,
              DEFENDANTS.
_____/



                  TRANSCRIPT OF PROCEEDINGS

                    SEPTEMBER 20, 2012

                       12:00 P.M.

                 2 EMBARCADERO, SUITE 1500

                 SAN FRANCISCO, CALIFORNIA



REPORTED BY:

RUBY SANCHEZ

CSR NO. 12971, RPR
```

                                                              1

```
 1    APPEARANCES:

 2
          For the Plaintiff:
 3
          OFFICE OF THE ATTORNEY GENERAL
 4        STATE OF FLORIDA
          NICHOLAS J. WEILHAMMER
 5        PL-01, The Capitol
          Tallahassee, FL 32399
 6        850-414-3300
          850-488-9134 Fax
 7        Nicholas.Weilhammer@myfloridalegal.com

 8        For the Hitachi Defendants:

 9        MORGAN LEWIS COUNSELORS AT LAW
          J. CLAYTON EVERETT, JR.
10        MICHELLE PARK CHIU
          KENT M. ROGER
11        One Market, Spear Street Tower
          San Francisco, CA 94105
12        202-739-5860
          415-442-1184
13        415-442-1001 Fax
          jeverett@morganlewis.com
14        mchiu@morganlewis.com

15        For the Philips Defendants:

16        BAKER BOTTS LLP
          JOHN M. TALADAY
17        The Warner
          1299 Pennsylvania Avenue, NW
18        Washington, D.C. 20004
          202-639-7909
19        202-639-1165 Fax
          john.taladay@bakerbotts.com
20
          For the LG Electronics Defendants:
21
          ARNOLD & PORTER LLP
22        SHARON D. MAYO
          7th Floor
23        Three Embarcadero Center
          San Francisco, CA 94111
24        415-471-3296
          415-471-3400 Fax
25        sharon.mayo@aporter.com
```

2

```
 1    APPEARANCES (CONTINUED):

 2
          For the Samsung SDI Defendants:
 3
          SHEPPARD MULLIN
 4        MICHAEL W. SCARBOROUGH
          TYLER CUNNINGHAM
 5        Four Embarcadero Center, 17th Floor
          San Francisco, CA 94111
 6        415-434-9100
          415-434-3947 Fax
 7        mscarborough@sheppardmullin.com
          tcunningham@sheppardmullin.com
 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

3

```
 1   claims, and this would be true under the federal antitrust
 2   statutes notwithstanding the fact that there are no damages
 3   claims asserted by Florida under those, but the same rules apply
 4   both to the Florida Deceptive and Unfair Trade Practices Act and
 5   the Florida Antitrust Act.  And that is that a claim accrues
 6   each time there is an injury to a potential plaintiff, and
 7   that's the accrual rule that we described in our brief.
 8            There is a tremendous amount of case law that indicates
 9   that that's the appropriate accrual rule, and I had thought that
10   we had agreement and that there was no dispute on that fact with
11   Florida.  So if you look at Florida's brief that they filed,
12   their opposition brief on the 24th of August at page 6.
13            HON. LEGGE:  Yeah.
14            MR. EVERETT:  Okay.  Under point two you'll see that
15   they indicate in the second paragraph, starting at line 19 that:
16   Accrual of a FDUTPA claim typically occurs when damage is
17   suffered.
18            HON. LEGGE:  I'm sorry.  What are you reading?
19            MR. EVERETT:  I'm sorry.  Line 19.
20            HON. LEGGE:  Okay.
21            MR. EVERETT:  And then:  Accrual of an FAA claim, which
22   would be the Florida Antitrust Act, is the same as under the
23   federal antitrust laws pursuant to FAA's harmonization statute.
24   Again, an antitrust action accrues when the alleged conspiracy
25   or other antitrust violation has an impact on the plaintiff.
```

```
 1            So accrual under these statutes is independent of when
 2   plaintiff was on notice or discovered the facts underlying their
 3   claim.  The notice issue is relevant only to their claim that
 4   the statute of limitations were tolled by the fraudulent
 5   concealment doctrine.  And so that's why we were arguing about
 6   notice.  And I will acknowledge that there's a dispute between
 7   the parties about when Florida was on, at least, inquiry notice.
 8            Separately, I think there's a dispute between the
 9   parties as to the length of the conspiracy that plaintiffs are
10   alleging, and in particular plaintiffs alleged or argue that
11   they should be permitted to pursue claims that accrue even after
12   December of 2007, i.e., less than four years before they filed
13   their complaint because there was a continuing conspiracy.  And
14   our argument in relation to the continuing conspiracy is, quite
15   frankly, that there are no facts alleged in the complaint that
16   would suggest that there was any conspiracy continuing beyond
17   2007 and, in fact, all the allegations in the complaint are to
18   the contrary.  And so that's really a separate argument.  That's
19   an argument about, not a statute of limitations argument, it's
20   an argument about the sufficiency of the pleadings in general.
21   That the statute of limitations argument relates to claims for
22   damages that accrued before December 9th, 2007.
23            So there's, again, an agreement between the parties that
24   the relevant statute of limitations for damages claims under the
25   two Florida statutes, and the same statute of limitation would
```

13

```
 1    presented to them at all.  It was simply this order at the end
 2    of a decision.
 3            So we respectfully would submit that that decision by
 4    the Florida Supreme Court is ultimately irrelevant to the
 5    question of whether class action tolling can apply in the face
 6    of 95.051 and that the case that's included in the D.C.
 7    Circuit's decision in the in re Vitamins case that holds that
 8    there is no class action or American Pipe tolling of claims
 9    under Florida law should apply, meaning that plaintiff can't
10    extend its claims back in time by relying on class action
11    tolling.
12            Again, the statute is very clear.  We don't think that
13    it's susceptible to any interpretation that would allow class
14    action tolling to proceed.
15            We separately make an argument, which I'm happy to
16    address, I don't want to go on in too much length, about
17    application of class tolling.  Even if Florida allowed it, how
18    class action tolling would apply.
19            HON. LEGGE:  No.
20            MR. EVERETT:  You don't want to hear about that?
21            HON. LEGGE:  No.
22            MR. EVERETT:  So the last point that I would ask you to
23    consider is -- so that's for claims before December 9th, 2007.
24    Claims that accrued before December 9th, 2007, we think are
25    facially barred on the face of the complaint.
```

28

```
 1              HON. LEGGE:  The claims for damages?
 2              MR. EVERETT:  That's right.
 3              HON. LEGGE:  Are also claims for equitable relief?
 4              MR. EVERETT:  I would acknowledge, your Honor, that if
 5     there is a continuing harm or continuing activity that could be
 6     enjoined, then an injunction could be applied.  So really our
 7     arguments relating to the statute of limitations are focused on
 8     the claims for damages or civil penalties.
 9              Now, I query why Florida needs to file a complaint
10     seeking an injunction given the many other complaints that are
11     on file in the courts seeking injunctive relief against the
12     defendants for the same underlying conduct, but let me make one
13     point that I do think there is a disagreement between the
14     parties about and that would be --
15              HON. LEGGE:  Hang on one second.
16              MR. EVERETT:  Sure.
17              HON. LEGGE:  Go ahead, please.
18              MR. EVERETT:  So the last point relates to claims for
19     damages after December 9th, 2007.  And as to those claims,
20     Florida argues that there was a continuing conspiracy.  It
21     argues that conspiracy continues to this day.  And what we have
22     asked your Honor to consider is whether there is any factual
23     basis that's alleged in the complaint that would allow the Court
24     to conclude that it is plausible to believe that there was, in
25     fact, a conspiracy continuing beyond 2007.
```

29

1           I'm sure your Honor is very familiar with the pleading
2   requirements or the pleading decisions that have come out from
3   United States Supreme Court --
4           HON. LEGGE:  Painfully.
5           MR. EVERETT:  -- you've gone through a lot of litigation
6   -- the Twombly and Iqbal line of cases, and what those cases
7   very clearly require is that there must be facts alleged in the
8   complaint that provide a plausible basis to believe that the
9   claims are well founded.  And here there are no facts alleged
10  about the conduct of defendants after 2007.  There are only the
11  facts about defendants.  There are actually allegations in
12  paragraph 106 of the amended complaint that purport to allege
13  the periods of time during which defendants, each set of
14  defendants separately, was engaged in conduct that Florida
15  claims violated the antitrust laws.  And if you look at those
16  allegations in paragraph 106, they make very clear that there
17  are no allegations about any of the defendants, about any
18  conduct occurring after 2007.  And we would respectfully submit,
19  given all of the cases that are proceeding against the
20  defendants, the various investigations that were announced in
21  November of 2007, that it's simply implausible to believe that
22  defendants continued, or putting aside continued, the defendants
23  had a conspiracy after 2007 to fix prices, allocate markets or
24  any of the other conduct that's alleged in the complaint.  And,
25  in fact, many of the defendants, including my clients, had long

30

```
 1    been out of the CRT business before the end of 2007, again
 2    making it fairly implausible.  So that's our point in relation
 3    to the continuing conspiracy.
 4            HON. LEGGE:  Have you filed a proposed form of order?
 5            MR. EVERETT:  I don't believe that we have.
 6            HON. LEGGE:  The order -- suppose I agree with you, the
 7    order would still have to preserve, would it not, their claims
 8    for injunctive relief?
 9            MR. TALADAY:  I think potentially, yes, your Honor.  May
10    I address that, your Honor.
11            HON. LEGGE:  Sure.  Go ahead.
12            MR. TALADAY:  Your Honor, if you were to agree with us
13    on the statute of limitations issue with respect to the damages
14    and if the only claims remaining for Florida were claims for
15    injunctive relief, I think it would be appropriate for you at
16    that time to consider whether the continuation of the conspiracy
17    had been pled with sufficient clarity and specificity as to just
18    those claims.
19            So, your Honor, I think if you look at the factual
20    allegations that are pled with specificity, they would all
21    predate the filing of the plaintiff's complaint and it would be
22    necessary for them to plead with specificity acts that had
23    posted.  I don't think that's occurred, your Honor.
24            And I would ask one other thing, your Honor.  You could
25    take notice, I think, of the claims in the other complaints with
```

31

1    respect to some of the defendants as to when they stopped doing

2    business because I think this is clear from some of the other

3    complaints as well when you're considering the plausibility of

4    that, your Honor.

5            HON. LEGGE:  Where have you argued that in your brief,

6    because the distinction between damages claims and injunctive

7    relief just did not come across to me in the reading of briefs?

8    So I'm plowing new ground here and looking for, not a decision,

9    but a decision path to get to.  Where do you argue about that

10   question?

11           MR. EVERETT:  So I think fairly we have not argued that

12   distinction specifically.  Now, we have made arguments as I

13   explained before and as Mr. Taladay expanded upon that it's

14   implausible to believe that there is any continuing conspiracy

15   after 2007.  And so if you take the plaintiff's argument that

16   they need an injunction because of continuing acts of the

17   defendants, then our argument that there's no plausible basis to

18   believe that would by virtue of the plaintiff's argument bar

19   their claims for injunctive relief as well.

20           HON. LEGGE:  I'm sort of thinking what these cases are

21   about.  I understand for lawyers it's the present state of the

22   market.  I would imagine that the State of Florida is really

23   interested in financial recovery rather than injunctive relief.

24   That's up to the State, but I would think that the -- well, I've

25   already said the reality of the market would say that injunction

1  isn't going to do very many people very much good, if any, and
2  it's really money that should be at stake, but that's not my
3  call.
4          MR. TALADAY:  Your Honor, I would say, if I might,
5  especially against this group of defendants which I think by
6  large it's clear from the record are no longer involved in the
7  manufacturing of CRT tubes.
8          HON. LEGGE:  Well, I think that cuts through a lot of
9  defendants.  It's a little hard for me to -- what do I do with
10 that?
11         All right.  You want to take a break before you begin or
12 are you ready to begin?
13         MR. WEILHAMMER:  I'm ready to begin.
14         HON. LEGGE:  For the State of Florida, please.
15         MR. WEILHAMMER:  Turning first to the issue of whether
16 or not the statute of limitations is apparent from the face of
17 the complaint looking first at equitable relief.  We briefed the
18 case of Wilk vs. The American Medical Association.  We think
19 that accurately --
20         HON. LEGGE:  Wait a minute.  Haven't they pretty much
21 just admitted that this motion they're making is limited to
22 damages claims except for this last argument?
23         MR. WEILHAMMER:  That's exactly what I was about to
24 address, but I think that we have to show, you know, the threat
25 of injury.

33

```
 1              HON. LEGGE:  I don't want to overstate this.  Am I right
 2    about that?  That you are admitting that your argument you've
 3    been making about the statute of limitations is really
 4    applicable only to the damages claims?  I shouldn't say only
 5    because I think that's really a major part, but limited to the
 6    damage claims.  And for me to do anything with respect to the
 7    injunction claims, I have to analyze the grounds of the adequacy
 8    of the allegations for injunctive relief and the plausibility
 9    grounds for believing that there's still any damage for the
10    Florida citizens.
11              MR. EVERETT:  I think that's right, your Honor.  There
12    are separate arguments addressed to the statute of limitations
13    and then to the adequacy of the claims.
14              HON. LEGGE:  Go ahead.
15              MR. WEILHAMMER:  As to the plausibility, I think if you
16    look at the Wilk case though --
17              HON. LEGGE:  I'm sorry?
18              MR. WEILHAMMER:  The conspiracy ended in 1980.  There
19    was a trial and the judge --
20              HON. LEGGE:  What case are you citing?
21              MR. WEILHAMMER:  Wilk vs. the AMA on page four of
22    Florida's response.
23              HON. LEGGE:  Okay.  Go ahead.
24              MR. WEILHAMMER:  So even if Florida doesn't show or is
25    unable to show that the conspiracy is still being carried out,
```

34

```
 1   not just dismissal of the damages claims but is also dismissal
 2   of the injunctive claims, that you've got to give me a little
 3   bit more, and in fairness to the State of Florida give both a
 4   little bit more about what that argument really is.  I can hear
 5   you verbalize it, I understand it, but you really haven't given
 6   them fair notice.  You may have given it to me and I missed it,
 7   but I'd like to hear what you really have to say about that.
 8           So let's assume that we're talking then only about the
 9   claims for equitable forms of relief which I guess are under the
10   Sherman Act and also under the two Florida statutes.
11           MR. WEILHAMMER:  That's correct.
12           HON. LEGGE:  Okay.  Why those should be dismissed and
13   they, of course, would have an opportunity to reply.
14           MR. TALADAY:  Your Honor, there are, I suppose, two ways
15   to do that.  One is that your Honor could rule on the claims
16   with respect to damages with leave for us to replead with
17   respect to injunctive relief or we could plead with respect to
18   the claims for injunctive relief before your Honor rules.  I
19   just wanted to --
20           HON. LEGGE:  No, I'd like a brief now, or not now, as
21   soon as you can reasonably prepare one, telling me why your
22   12(b)(6) motion should apply to the claims for equitable relief
23   as well as claims for damages and have an opportunity to reply,
24   then I think I have it put together and make whatever rulings I
25   want to make.  I don't know what they are yet, but then both
```

46

```
 1    things will be fairly between -- among all of us.
 2            MR. WEILHAMMER:  I think we're clear on this, but in the
 3    motion they did argue that it was subject to a four-year statute
 4    of limitations.  This argument wasn't raised in the motion at
 5    all, but we can move forward on that.
 6            If I can just clarify a couple of points real quick.
 7            HON. LEGGE:  Sure.
 8            MR. WEILHAMMER:  The CID sent by the State of Florida,
 9    I'm aware of ones that were issued in 2011.  So this wasn't a
10    situation where they were issued in 1995 and we just sat on what
11    we received.  I wanted to make that clear that this was 2011,
12    unless they received other ones that I don't know about.
13            The second point is we highlighted the severity of such
14    a ruling where fraudulent concealment is not recognized.  That
15    is to stay a conspiracy began in 1995.  What defendants can do
16    is hide the conspiracy and then come 1999, they're free and
17    clear of all Florida causes of action and that's a very severe
18    result, honestly.
19            HON. LEGGE:  All right.  So how long do you want to
20    brief?
21            MR. EVERETT:  Maybe two weeks from today.
22            HON. LEGGE:  What's the date?  Takes us to October the
23    4th.
24            MR. EVERETT:  That's fine.
25            HON. LEGGE:  What you're briefing is your brief
```

47

```
1     regarding why the injunctive relief portions of the amended

2     complaint should be dismissed on 12(b)(6) as well as the damages

3     claims based on statute of limitations.

4             MR. EVERETT:  Yes, your Honor.

5             HON. LEGGE:  How long after that do you want to reply?

6             MR. WEILHAMMER:  We can respond -- what's the normal

7     time?  Two weeks?

8             HON. LEGGE:  Two weeks, okay.  That would take us to the

9     18th, October 18th.  On that date, I will take the motions under

10    submission.

11            MR. WEILHAMMER:  Any page limitations?

12            HON. LEGGE:  Well, I'm not going to give you a page

13    limitation.  I think you were both pretty wordy in your briefing

14    today.  We've narrowed the question down pretty much, so I don't

15    think I need page limitations.  Tell me what I need to know.

16    Your burden is easier than theirs in terms of it's easier to

17    express and state why I should issue a dismissal.

18            Anything further?

19            MR. EVERETT:  No, your Honor.

20            HON. LEGGE:  All right.  Thank you very much.  Very nice

21    job in both briefing and the oral arguments.  Thank you.

22            We'll go off the record.

23            (Proceedings concluded at 1:15 p.m.)

24

25
                                                                    48
```

```
 1    STATE OF CALIFORNIA        )
                                 )
 2    COUNTY OF SAN FRANCISCO    )

 3

 4            I, Ruby Sanchez, a Certified Shorthand Reporter, do

 5    hereby certify:

 6            That said proceedings were taken before me at the

 7    time and place therein set forth and were taken down by me in

 8    shorthand and thereafter reduced to computerized transcription

 9    under my direction and supervision;

10            I further certify that I am neither counsel for, nor

11    related to, any party to said proceedings, nor in any way

12    interested in the outcome thereof.

13            In witness whereof, I have hereunto subscribed my

14    name.

15

16    Dated:  October 2, 2012

17

18
              _____
19            Ruby Sanchez
20            CSR No. 12971, RPR

21

22

23

24

25
```