Hon. Charles A. Legge (Ret.)
JAMS
Two Embarcadero Center, Suite 1500
San Francisco, CA 94111
Telephone: (415) 774-2644
Fax: (415) 982-5287
Special Master

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Case No. 07-5944 SC<br>MDL No. 1917<br>JAMS Ref. No. 1100054618 |
| This Document Relates to:<br><br>IN RE: APPLICATION FOR JUDICIAL ASSISTANCE FOR THE ISSUANCE OF SUBPOENA PURSUANT TO 28 U.S.C. §1782 TO OBTAIN DISCOVERY FOR USE IN A FOREIGN PROCEEDING<br><br>Case No. CV-12 80 151 MISC | **REPORT AND RECOMMENDATION REGARDING SUBPOENA** |

To the Honorable Samuel Conti, United States District Judge:

The special master respectfully submits the following report and recommendation regarding a subpoena issued pursuant to 28 U.S.C. §1782 to obtain the discovery in this case for use in litigation in Korea.

Briefly paraphrased, section 1782(a) allows a district court to order a person within this district to produce a document or other thing for use in a proceeding in a foreign tribunal. The foreign proceeding in this case is an anti-trust action filed in Korea by Sharp Corporation, which case is similar to the Cathode Ray Tube Anti-Trust Litigation now pending before Your Honor.

1

The subpoena was issued *ex parte*, with no opportunity for the subpoenaed party (the law firm of Saveri & Saveri Inc.) or any of the interested parties to the CRT antitrust litigation to object. The subpoena would compel Saveri & Saveri to produce the following:

> "Any and all Discovery Material obtained during or as a result of discovery in the Direct Purchaser Action relating to cathode ray tubes, including but not limited to color picture tubes."

That encompasses virtually all of the discovery that Saveri & Saveri has obtained as counsel for the plaintiffs from multiple defendants and third parties in this CRT litigation. The subpoena compels the documents to be produced to Sharp Corporation for Sharp's use in prosecuting the similar litigation in Korea. The volume of material is enormous, presently estimated at around five million documents.

After the subpoena was served, and knowledge of it became known to the parties in the CRT litigation, Saveri & Saveri filed an objection to the subpoena; several defendants also moved to quash the subpoena; and Sharp has moved to compel production under the subpoena. And of course, the parties have opposed one another's motions. The motions were briefed and were argued and submitted for decision before the special master on September 20, 2012. For the reasons stated below, the special master recommends that the objections and the motions to quash should be granted, and that the motion to compel production under the subpoena should be denied.

## LEGAL STANDARDS

In addition to the language of §1782 itself, we have the guidance of judicial interpretations, including the United States Supreme Court. The Supreme Court applied §1782 in *Intel Corporation v. Advanced Microdevices, Inc.*, 542 U.S. 241 (2004). The Court there rejected several attacks on the statute, and on its application in that particular case. However, the Court stressed that the statute does not <u>require</u> a federal district court to order discovery to be produced to a foreign tribunal, p. 247. Indeed, a district court has the <u>discretion</u> to grant or deny the request. In *Intel*, the Supreme Court remanded the case to the district court to determine whether assistance to the foreign tribunal "is appropriate in this case;" p. 247. For the guidance

2

of the district court on remand, the Supreme Court suggested four considerations that would be relevant to the exercise of the district court's discretion. Those considerations are not requirements and are not exclusive, but they were set forth by the Supreme Court to provide guidance. Those four standards have frequently been referred to by courts in the application of §1782 in other cases. The factors defined by the United States Supreme Court were (p. 264 and following):

    1.    First, the Court indicated that when the person from whom the discovery is sought is a participant in the foreign proceeding, the need for §1782(a) aid is generally not apparent.

    2.    Second, the receptivity of the foreign court to the judicial assistance of a U.S. Federal Court.

    3.    A court can consider whether the subpoena usage conceals an attempt to circumvent the proof-gathering restrictions or other policies of the foreign court. And

    4.    Unduly intrusive or burdensome requests may be rejected or trimmed.

On remand of the *Intel* case from the United States Supreme Court, this Northern District of California applied the guidelines and denied enforcement of the subpoena; *Advanced Microdevices, Inc. v. Intel Corporation,* 2004 WL 2282320 (ND Cal).

## FACTORS REGARDING THE CRT LITIGATION AND THE KOREA LITIGATION

The CRT litigation here is similar, but not identical, to the action filed by Sharp in Korea. Both cases deal with alleged antitrust violations in the manufacture of television sets, computers, and components. The defendants in this district and in Korea are overlapping, but are not identical. Plaintiff Sharp was a putative class plaintiff, but opted out to pursue its own action in Korea; Sharp in essence thereby chose its venue.

The discovery that Sharp seeks in the subpoena are not really documents of Saveri & Saveri, although in their possession, but are really information from the defendants. And some of the defendants are also defendants in Korea, where they are thereby subject to Korea's discovery processes.

Some discovery methods are provided by Korean courts. They are not as extensive as those in United States District Courts. But Sharp has not made any attempt to use the discovery procedures available to it in Korea.

The Korean court has not expressly indicated whether it would or would not be receptive to this discovery from the United States. Sharp's Korean counsel speculates that it would be receptive, but that court's actions do not support that conclusion. All that the Korean court has done is to postpone a scheduled date in order to give Sharp the time to pursue the issue in this court. The Korean court has not made any statement or other indication on the merits as to whether it would or would not welcome such discovery. And there is no indication that the Korean court has been advised of the volume of the discovery being asked for here.

In the Ninth Circuit, courts have generally placed the burden on the requesting party, here Sharp, to provide facts showing that the foreign court would welcome the proposed discovery. See *In re: Application of Peter Marano*, 2009 U.S. Dist. Lexis 20060 at 9-10 (N.D. Cal., February 25, 2009) and *In re: Application of Digitechnic*, 2007 U.S. Dist. Lexis 33708 at 11-12 (W.D. Wash. May 8, 2008). Because of the absence of direct evidence of any expression by the Korean court, the special master believes that that court has not shown its receptiveness to such a volume of discovery from the United States.

In that same regard, the special master again notes that Korea permits only limited discovery in its courts. That in itself should indicate that the policy of Korea is not to engage in or permit the broad discovery that exists in United States federal courts. Other courts may disagree, but in the opinion of the special master that should be one of the reliable indicators of the lack of receptivity of the foreign court. And in regard to reciprocity, it is apparent that parties in United States federal court venues would not get the same degree of discovery cooperation from the courts of Korea.

It also seems self-evident that Sharp's use of the §1782 subpoena in this case is an attempt to circumvent the proof-gathering policies of Korea. As stated, Sharp made no attempt to use the discovery processes that are available in the Korean courts, even though Korea was the venue chosen by Sharp in preference to the venue of this court. That and the different scopes of

permitted discovery demonstrate that use of United States generated discovery would circumvent the limitations of proof-gathering in existence in the Korean court.

The special master concludes that the first three factors mentioned by the U.S. Supreme Court weigh against use of such a subpoena in this case.

## INTRUSIVENESS AND BURDEN

The discussion of these factors should begin with the language of the statute, 28 U.S.C. § 1782(a). It provides for the production of "a document", and elsewhere in that same section it says "the document." That *singular* language suggests that the statute was meant to encompass a very limited and specific item of discovery. It is interesting to speculate whether the statute would have been passed if the Congress had known that it would be applied to a request for some 5,000,000 documents in one case. And the special master is unaware of any case that supports the use of §1782 for the wholesale taking of all of the discovery in a large antitrust case.

The burdens of this subpoena fall initially upon Saveri & Saveri. Their motion demonstrates the burdens placed upon them to make the requested production. Although the existing information may already be partially in electronic form, and would undoubtedly be produced by Saveri & Saveri to Sharp in electronic form, the burden of gathering together and compiling the information in electronic form is still very substantial. And enforcing the subpoenas here could well be precedent in the future for parties who want information from one or more defendants to instead use such a subpoena on plaintiffs' class counsel for whatever records they have assembled. Another consideration is that the enforcement of §1782 in this or a similar case would have the effect of rewarding a later plaintiff at the expense of plaintiffs who have been participating actively in the litigation for several years.

In addition, the defendants in the Korean case would have no right to reciprocal discovery to obtain evidence to oppose these documents and no right to participate in any depositions that have already been taken. Also, the defendants in Korea would have much less access to discovery for their defense, compared with what Sharp would get through this §1782 proceeding, a very unfair balance in that court. And finally, although we have no way of

measuring the magnitude, there would be a burden an <u>all</u> of the litigants in the Korean case to have 5,000,000 documents interjected into their case.

The defendants in the present case, whose information would be disclosed to Sharp by the production under this subpoena to Sharp, will have no opportunity to object to the production of particular documents that are included within the large volumes requested from Saveri & Saveri. And there is no way to anticipate all of the ways in which their confidential documents, which are now protected by an order of this court, could become exposed and not protected in Korea, and might become available for public use in business matters.

All of these burdens are much heavier, and much more intrusive, than if Sharp had used other discovery processes available to it. One is of course the discovery processes in Korea, although limited. Or Sharp could have stayed as a class plaintiff in this case, and could have thereby obtained the evidence from the individual defendants as it was produced here. Or Sharp could frame a more limited §1782 request to the particular defendants from whom it seeks discovery here.

## CONCLUSION

For the above-stated reasons, the special master recommends that the objections of Saveri and Saveri to the subpoena, and the defendants' motions to quash the subpoena, be granted, and that Sharp's motion to compel production be denied.

Respectfully Submitted,

Dated: October 22, 2012

_____
Hon. Charles A. Legge (Ret.),
Special Master

Recommendations: Approved/Rejected/Modified.

Dated: _____

_____
Hon. Samuel Conti,
District Judge