IAN SIMMONS (*pro hac vice*)
Email: isimmons@omm.com
BENJAMIN G. BRADSHAW (SBN 189925)
Email: bbradshaw@omm.com
KEVIN D. FEDER (SBN 252347)
Email: kfeder@omm.com
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, D.C. 20006-4001
Telephone: (202) 383-5300
Facsimile: (202) 383-5414

Attorneys for Defendants
**SAMSUNG ELECTRONICS CO., LTD.**
**SAMSUNG ELECTRONICS AMERICA, INC.**

# IN THE UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. 3:07-cv-05944 SC<br><br>MDL No. 1917 |
| This Document Relates To:<br><br>CERTAIN DIRECT ACTION COMPLAINTS | Case No. 11-cv-01656 SC<br>Case No. 11-cv-05381 SC<br>Case No. 11-cv-05502 SC<br>Case No. 11-cv-05514 SC<br>Case No. 11-cv-06275 SC<br>Case No. 11-cv-06276 SC<br>Case No. 11-cv-06396 SC<br>Case No. 11-cv-06397 SC<br>Case No. 12-cv-02648 SC<br>Case No. 12-cv-02649 SC |
| | **REPLY MEMORANDUM IN SUPPORT OF SAMSUNG ELECTRONICS CO., LTD. AND SAMSUNG ELECTRONICS AMERICA, INC.'S MOTION TO DISMISS AND FOR JUDGMENT ON THE PLEADINGS AS TO CERTAIN DIRECT ACTION PLAINTIFFS' COMPLAINTS**<br><br>Date: TBD<br>Place: JAMS Resolution Center<br>Special Master: Hon. Charles A. Legge (Ret.) |

**TABLE OF CONTENTS**

| | Page |
|---|---|
| TABLE OF AUTHORITIES | ii |
| INTRODUCTION | 1 |
| ARGUMENT | 2 |
| I. DAPs Fail to State a Claim that SEC or SEAI Participated in Any Conspiracy | 2 |
|     A. SEC's and SEAI's Alleged Acts Do Not Plausibly Suggest Participation in Any Conspiracy | 2 |
|     B. SEC's and SEAI's Supposed "Representation" by "Other Samsung Entities" Does Not Plausibly Suggest Participation in Any Conspiracy | 4 |
|     C. The Conclusory Allegation that SEC "Controlled" SDI Does Not Plausibly Suggest Participation in Any Conspiracy | 5 |
| II. DAPs' Allegations Against the Contrived Entity "Samsung" Are Improper and Fail to Plausibly Connect SEC or SEAI to Any Conspiracy | 7 |
| III. The Alleged Conspiracy Is Economically Nonsensical as to SEC and SEAI | 8 |
| IV. The Court's Prior Orders Do Not Justify Denying SEC and SEAI's Motion | 10 |
| CONCLUSION | 10 |

-i-

REPLY MEMORANDUM IN SUPPORT OF SAMSUNG ELECTRONICS CO., LTD., AND SAMSUNG ELECTRONICS AMERICA, INC.'S MOTION TO DISMISS AND FOR JUDGMENT ON THE PLEADINGS AS TO CERTAIN DIRECT ACTION PLAINTIFFS' COMPLAINTS
(3:07-CV-05944 SC, MDL NO. 1917)

# TABLE OF AUTHORITIES

**Pages**

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2008) ............................................................................................................... *passim*

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ......................................................................................................................... 3

*Brennan v. Concord EFS, Inc.*,
  369 F. Supp. 2d 1127 (N.D. Cal. 2005) .................................................................................... 5, 6

*Car Carriers v. Ford Motor Co.*,
  745 F.2d 1101 (7th Cir. 1984) ....................................................................................................... 9

*In re ATM Fee Antitrust Litig.*,
  768 F. Supp. 2d 984 (N.D. Cal. 2009) ..................................................................................... 7, 10

*In re Cal. Title Ins. Antitrust Litig.*,
  No. C 08-01341, 2009 U.S. Dist. LEXIS 43323 (N.D. Cal. May 21, 2009) ............................. 3

*In re Cathode Ray Tubes (CRT) Antitrust Litig.*,
  738 F. Supp. 2d 1011 (N.D. Cal. 2010) ................................................................................... 9, 10

*In re Digital Music Antitrust Litig.*,
  812 F. Supp. 2d 390 (S.D.N.Y. 2011) .......................................................................................... 6

*In re Fresh and Process Potatoes Antitrust Litig.*,
  834 F. Supp. 2d 1141 (D. Idaho 2011) .................................................................................. *passim*

*In re Late and Over-Limit Fee Litig.*,
  528 F. Supp. 2d 953 (N.D. Cal. 2007) .......................................................................................... 5

*In re Midwest Milk Monopolization Litig.*,
  730 F.2d 528 (8th Cir. 1984) ........................................................................................................ 9

*In re Mun. Derivatives Antitrust Litig.*,
  790 F. Supp. 2d 106 (S.D.N.Y. 2011) .......................................................................................... 6

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  599 F. Supp. 2d 1179 (N.D. Cal. 2009) ........................................................................................ 7

*Invamed, Inc. v. Barr Labs.*,
  22 F. Supp. 2d 210 (S.D.N.Y. 1998) ............................................................................................ 6

*Kendall v. Visa U.S.A., Inc.*,
  518 F.3d 1042 (9th Cir. 2008) ............................................................................................. 2, 3, 5

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986) ....................................................................................................................... 8

*Monsanto Co. v. Spray-Rite Corp.*,
 465 U.S. 752 (1984) .................................................................................................................. 7

*Spanish Broad. Sys. of Fla., Inc. v. Clear Channel Commc'ns, Inc.*,
 376 F.3d 1065 (11th Cir. 2004) ................................................................................................ 6

*Universal Grading Serv. v. eBay, Inc.*,
 No. C-09-2755, 2012 U.S. Dist. LEXIS 2325 (N.D. Cal. Jan. 9, 2012) .......................... 8, 9, 10

**MEMORANDUM OF POINTS AND AUTHORITIES**

Defendants Samsung Electronics Co., Ltd. ("SEC") and Samsung Electronics America, Inc. ("SEAI") submit this Reply in support of their Motion to Dismiss and for Judgment on the Pleadings as to Certain Direct Action Plaintiffs' Complaints [Dkt. No. 1316] (Aug. 17, 2012).

**INTRODUCTION**

Direct Action Plaintiffs' Opposition ("Opposition" or "Opp. Br.") is notable not only for what it says—which confirms that dismissal of SEC and SEAI is appropriate—but for what it leaves unsaid. DAPs fail to directly address the fact that nowhere in their ten lengthy complaints is there a *single* allegation identifying an SEC or SEAI employee who participated in the purported tube conspiracy or even a single meeting at which an SEC or SEAI employee was present. There is nothing. This is not surprising; neither company ever made tubes, and in fact SEC **bought** tubes. Conceding these points, DAPs invoke conclusory allegations of "participation," "control," and actions that "Samsung" entities took "through" or "on behalf of" other "Samsung" entities. These intentionally vague allegations fall far short of discharging DAPs' burden—especially where, as Your Honor and Judge Conti have recognized, SEC's participation is "counter-indicated, since SEC was a purchaser of tubes and could be adversely impacted by higher tube prices." Order Adopting Special Master's Report & Recommendation re: Plaintiffs' Motion for Further Discovery from Defendant Samsung Electronics Company [Dkt. No. 1410] (Oct. 18, 2012) ("MTC Report"), at 4. DAPs attempt to obfuscate this crucial fact by contriving the imaginary entity "Samsung" to lump SEC and SEAI together with SDI, a tube maker. This fails as a matter of law: DAPs must allege facts plausibly showing *each* defendant's connection to the scheme, and they have failed to do so. *See Ashcroft v. Iqbal*, 556 U.S. 662, 680-82 (2008).

Next, in spite of their own allegations that "SDI is a public company" in which SEC holds less than "20 percent of the stock," Polaroid Compl. ¶ 35, DAPs now argue that the non-existent entity "Samsung" is a "vertically integrated enterprise" that makes and sells CRTs and products incorporating them. DAPs' argument is fanciful. There are no allegations in DAPs' complaints regarding this so-called vertical integration. Indeed, they allege exactly the opposite—the

complaints confirm that SEC holds less than a 20 percent interest in SDI and that SEC and SEAI are separate corporate entities that never manufactured or sold tubes. DAPs do not allege either that SEC exclusively purchased tubes from SDI or that SDI exclusively supplied tubes to SEC.

DAPs attempt to whistle past these fatal shortcomings by pointing to the Court's previous denial, from over two years ago, of SEC and SEAI's motion to dismiss the class complaints. But that order—as with Your Honor's report preceding it—was built on the premise that the complaints alleged price-fixing of tubes *and* finished products alike. And DAPs have expressly disavowed a finished-products conspiracy. In addition, the Court has since recognized that SEC, as a maker of finished products, would in fact *suffer* from a tube conspiracy. Furthermore, subsequent decisions have made clear that, in assessing whether a plaintiff has alleged facts plausibly connecting each defendant to the conspiracy, courts are not to blindly accept "convoluted" schemes or conclusory claims of "participation," "control," or actions one defendant took "through" or for another. The Court should grant SEC and SEAI's motion.

## ARGUMENT

### I. DAPs Fail to State a Claim that SEC or SEAI Participated in Any Conspiracy.

DAPs concede that they "are not bringing claims for vicarious liability." Opp. Br. 14. They argue instead "that SEC and SEAI participated in the conspiracy through (1) their own acts, (2) the representation of SEC and SEAI by other Samsung entities at meetings designed to further the conspiracy, and (3) through SEC's control and domination of SDI, the other SDI-related entities, and SEAI." *Id.* But DAPs do not plead any facts plausibly connecting SEC or SEAI to the alleged conspiracy—and none of DAPs' conclusory allegations justify subjecting SEC and SEAI to the "substantial expenditures" of defending against unmeritorious claims that the plausibility standard seeks to prevent. *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008).

### A. SEC's and SEAI's Alleged Acts Do Not Plausibly Suggest Participation in Any Conspiracy.

DAPs' complaints lack *any* factual allegations linking SEC or SEAI to any conspiracy.

Indeed, DAPs do not point to a single SEC or SEAI employee who shared pricing information or a single meeting at which one of their employees was present. *See* Mot. to Dismiss 5-6. DAPs respond simply that their vague, conclusory allegations of "participation" and "representation" suffice. *See* Opp. Br. 5-6. But *Kendall* instructs that "to allege an agreement between antitrust co-conspirators, the complaint must allege facts such as a specific time, place, or person involved in the alleged conspiracies." 518 F.3d at 1047 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 565 n.10 (2007)).[1] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that ***the defendant*** is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (emphasis added).

DAPs identify only one paragraph as alleging SEC's participation in a conspiracy, *see* Opp. Br. 5, but that paragraph contains only bald legal conclusions and generic allegations against the imaginary "Samsung," *see* Mot. to Dismiss 6-7. That paragraph alleges that "Samsung, through SEC [and several SDI entities] participated in" conspiratorial meetings, that high-level officials of "Samsung" attended those meetings, and that "Samsung" engaged in bilateral discussions with other defendants. Polaroid Compl. ¶ 130.[2] Contrary to *Iqbal*, this paragraph lacks "any specific allegations as to what [SEC and SEAI] did." *In re Cal. Title Ins. Antitrust Litig.*, No. C 08-01341, 2009 U.S. Dist. LEXIS 43323, at *28-29 (N.D. Cal. May 21, 2009) (rejecting allegations against "Parent Corporations"). Instead it alleges merely that unidentified "Samsung" officials attended meetings and discussions. But lumping SEC together with SDI as "Samsung" is improper. *See infra* at 7-8. And while DAPs seek to rehabilitate this allegation by claiming that SDI employees attended "on behalf of" unnamed "Samsung" entities, this allegation cannot serve as a bootstrap. *See infra* at 5. Moreover, DAPs do not dispute that "Samsung" as used here refers to SDI, for a conspiracy to set "supply levels for CRTs" is something only a tube maker like SDI, and not a finished-products maker like SEC, could effect. *See* Mot. to Dismiss 7.

DAPs do not contest that the term "through" is virtually identical to allegations the

---

[1] DAPs' attempt to distinguish *Kendall* is unavailing. As in *Kendall*, DAPs' complaints fail to allege facts tying specific defendants to the conspiracy. *See* 518 F.3d at 1048-49.
[2] Appendix A to SEC and SEAI's moving papers contains cross-references to identical or substantially similar paragraphs in other DAPs' complaints.

-3-

Supreme Court has deemed "too chimerical to be maintained." *Iqbal*, 556 U.S. at 681 (rejecting "bald allegations" that one defendant was the "'principal architect'" of and another defendant "was 'instrumental to'" challenged policy); *see also In re Fresh and Process Potatoes Antitrust Litig.*, 834 F. Supp. 2d 1141, 1166 (D. Idaho 2011) (rejecting allegations that certain defendants participated in conspiracy "through" different defendant). *See* Mot. to Dismiss 6-7. Likewise defective is the term "participated." On its own, the term is conclusory. *See Potatoes*, 834 F. Supp. 2d at 1167. Moreover, to the extent "participation" refers to attendance at meetings, it fails to plausibly link SEC or SEAI to any conspiracy because DAPs do not actually allege that SEC or SEAI attended the meetings, *see id.* (rejecting allegation that defendant "participated" in conspiracy that was "not amplified with sufficient evidentiary allegations" such as attendance at conspiratorial meetings). And to the extent the term refers to "representation" by "other Samsung entities," Opp. Br. 14, the allegation is implausible on its face, *see infra* Part I.B.

**B.    SEC's and SEAI's Supposed "Representation" by "Other Samsung Entities" Does Not Plausibly Suggest Participation in Any Conspiracy.**

Unable to allege any actual participation by SEC or SEAI, DAPs retreat to their allegations that "SEAI [and various other SDI entities] were represented at [conspiratorial] meetings and were a party to the agreements entered at them," and that "SEC and SEAI . . . played a significant role in the conspiracy" "[t]o the extent" that either entity sold or distributed "CRT Products." Polaroid Compl. ¶ 131. According to DAPs, this makes SEAI (but apparently not SEC) an "active, knowing participant[]" because "Defendants" sought higher prices for "CRT Products" so as not to undercut the tube conspiracy. *Id.* But DAPs' suggestion that SEC and SEAI "played a significant role in the conspiracy" is "too chimerical to be maintained" because it is indistinguishable from allegations rejected in *Iqbal* that a defendant "was 'instrumental to'" a challenged policy. 556 U.S. at 681. And DAPs allege no facts suggesting how SEAI could be "represented" at any meetings by a separate, publicly traded corporate entity (SDI) or how SEAI could be a "party" to agreements entered into by that company. *See* Mot. to Dismiss 7. Moreover, DAPs' bare legal conclusion—that SEAI was a "participant"—does not follow from their premises. *See id.* On DAPs' theory, SEAI increased the price of finished products, but this

1  hardly suggests SEAI's participation in a conspiracy; rather, it indicates merely a "rational
2  business decision," namely, responding to rising input costs. *Kendall*, 518 F.3d at 1049; *see also*
3  *In re Late and Over-Limit Fee Litig.*, 528 F. Supp. 2d 953, 964 (N.D. Cal. 2007) (explaining that
4  various defendants' "similar cost structures would explain why the defendants' prices would
5  naturally be similar without the need for any agreement").

6      DAPs cannot take refuge in their sweeping allegation that "when one Samsung entity was
7  attending a glass meeting, it was attending on its own behalf as well as on behalf of the other
8  Samsung defendants." Opp. Br. 10. Here again, DAPs plead only a legal conclusion
9  unaccompanied by any facts. Other courts have rejected similar allegations. *See, e.g.*, *Potatoes*,
10  834 F. Supp. 2d at 1165 (rejecting allegation that "Kim Wahlen (of Pleasant Valley Potato)"
11  attended conspiratorial meetings, because "[t]his allegation—basically, the word 'of'—is not
12  sufficient to plausibly allege that Mr. Wahlen had the authority to, or did, act on Pleasant Valley's
13  behalf, or attend that meeting on Pleasant Valley's behalf," and thus did not "connect[] Pleasant
14  Valley to the scheme"). And if this allegation is DAPs' attempt to plead an agency relationship, it
15  falls woefully short; DAPs "are not permitted to rest on conclusory allegations to properly plead
16  an agency relationship," *id.* at 1167, and the complaints set forth no factual allegations
17  establishing an agency (much less alter-ego) relationship, *see* Mot. to Dismiss 14-15 & n.20.

18/19      **C.    The Conclusory Allegation that SEC "Controlled" SDI Does Not Plausibly Suggest Participation in Any Conspiracy.**

20      Unable to plead SEC's or SEAI's participation by either their "own acts" or their
21  "representation" by "other Samsung entities," DAPs cling to their bald allegations that SEC
22  "dominated and controlled" SDI. *See* Polaroid Compl. ¶ 35. But at the threshold, it is unclear
23  just what DAPs mean by this allegation, or how it renders SEC (to say nothing of SEAI) directly
24  or indirectly liable for SDI's conduct. For one thing, DAPs "are not bringing claims for vicarious
25  liability," Opp. Br. 14, but veil-piercing—a species of vicarious liability—is often discussed in
26  terms of "dominion and control," *see Brennan v. Concord EFS, Inc.*, 369 F. Supp. 2d 1127, 1136
27  (N.D. Cal. 2005). DAPs also make passing reference to pre-*Iqbal* cases involving adequate
28  pleadings of agency, *see* Opp. Br. 10, but agency theory is another species of vicarious liability.

*See Potatoes*, 834 F. Supp. 2d at 1166-67.[3]

Putting these problems aside, DAPs do not dispute that "control" is a bald legal conclusion that runs headlong into the presumption of corporate separateness. *See* Mot. to Dismiss 14; *see also Potatoes*, 834 F. Supp. 2d at 1166; *Brennan*, 369 F. Supp. 2d at 1136. All the more so where it is unclear how SEC *could* control SDI, given (1) DAPs' own allegations to the contrary, namely, that SEC holds a mere 20 percent interest in SDI, *see* Mot. to Dismiss 14; and (2) that SEC did not make or sell tubes, *see Potatoes*, 834 F. Supp. 2d at 1168-69 (allegation that defendant controlled potato growers was not plausible because that defendant "does not grow or sell potatoes" and "[c]onsequently . . . would [not] be in a position to 'control' the potato growers"). Indeed, SEC's minority interest in SDI, standing alone, is insufficient to show control as a matter of law. *See Spanish Broad. Sys. of Fla., Inc. v. Clear Channel Commc'ns, Inc.*, 376 F.3d 1065, 1075 (11th Cir. 2004) (rejecting claim that company's ownership of 26 percent of entity "gives [the company] sufficient control . . . to permit attempted monopolization" in market in which entity participated); *In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390, 419 (S.D.N.Y. 2011) ("[A] mere ownership stake in a joint venture is not grounds for a presumption of wrongdoing or fraud on the part of its owners."); *see also* Mot. to Dismiss at 13-15.[4]

Try as they might to cast aspersions against SEC and SEAI by referencing SDI's conduct, DAPs cannot evade the rule that "[a]bsent allegations of anticompetitive conduct by [parent companies] there is no basis for holding [them] liable for the alleged antitrust violations of their subsidiary." *Invamed, Inc. v. Barr Labs.*, 22 F. Supp. 2d 210, 219 (S.D.N.Y. 1998); *see In re Mun. Derivatives Antitrust Litig.*, 790 F. Supp. 2d 106, 118 (S.D.N.Y. 2011) (dismissing claims

---

[3] It is also unclear why DAPs, in the course of discussing SEC's 20 percent ownership of SDI, cite decisions applying the *Illinois Brick* antitrust standing rule. *See* Opp. Br. 10. Whether DAPs possess federal antitrust standing is a wholly distinct inquiry from whether DAPs have plausibly alleged that SEC and SEAI joined a conspiracy in the first place.

[4] Apart from these deficiencies, DAPs' complaints do not afford a basis for holding **SEAI**—a sales and marketing subsidiary—liable. For DAPs do not allege that SEAI controlled ***anyone***. Moreover, courts have recognized that a defendant's sales and marketing affiliate is not liable based on conclusory allegations of control. *E.g.*, *Potatoes*, 834 F. Supp. 2d at 1166 (allegations that "Wada Farms controls [its sales and marketing arm] Wada Farms Marketing" and that "Wada Farms Marketing acted pursuant to that control" "do not sufficiently connect Wada Farms Marketing to the scheme" because "[t]he control allegations are too conclusory, and the other allegations do not specifically implicate Wada Farms Marketing").

against company alleged to be "the parent company of a separate entity . . . at the time that [the subsidiary] engaged in certain alleged anticompetitive transactions" even though complaint included evidentiary facts of subsidiary's and its former employee's participation in conspiracy, because complaint "fail[ed] . . . to allege any illegal conduct specifically attributable to [the parent]"). Here, this principle carries yet more force, as SDI is not even a subsidiary. *Cf. Potatoes*, 834 F. Supp. 2d at 1171 ("Potandon—a separate corporate entity—cannot be implicated in the conspiracy based solely on the fact that one of its owners is an alleged conspirator.").

## II. DAPs' Allegations Against the Contrived Entity "Samsung" Are Improper and Fail to Plausibly Connect SEC or SEAI to Any Conspiracy.

DAPs' lumping of SEC and SEAI together with SDI violates *Iqbal*'s clear rule that a complaint must plausibly allege ***each defendant's*** participation in a conspiracy. *See* Mot. to Dismiss 8-9. That is, "for each individual defendant" to a § 1 claim, the plaintiff "must plead facts that plausibly suggest . . . that ***that*** defendant had 'a conscious commitment to a common scheme designed to achieve an unlawful object.'" *Potatoes*, 834 F. Supp. 2d at 1150 (quoting *Monsanto Co. v. Spray-Rite Corp.*, 465 U.S. 752, 764 (1984)) (emphasis in original). DAPs cannot skirt the each-defendant rule by resorting to the contrived entity "Samsung."

DAPs only halfheartedly defend their allegations against "Samsung." The pre-*Iqbal* decision *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 599 F. Supp. 2d 1179 (N.D. Cal. 2009) cannot be squared with DAPs' obligation to plead "factual content that allows the court to draw the reasonable inference that ***the defendant*** is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (emphasis added). Indeed, subsequent cases have rejected *LCD*'s approach.[5] *See, e.g.*, *Potatoes*, 834 F. Supp. 2d at 1166 (rejecting claims that three defendants defined as "Wada Farms" conspired "through" another defendant because "[w]ith three entities lumped together as one . . . , the complaint . . . do[es] not allow the reader to figure out why each corporate entity has been named as a defendant, or what its connection to the underlying scheme is"); *In re ATM Fee Antitrust Litig.*, 768 F. Supp. 2d 984, 1002 (N.D. Cal. 2009) (dismissing complaint that "merely

---

[5] DAPs' cursory assertion to the contrary notwithstanding, SEC and SEAI's moving papers cite several cases where complaints were deficient because they failed to connect a particular defendant to the conspiracy alleged. *See* Mot. to Dismiss 9-10 & n.16.

lump[ed] together allegations against the holding company and its subsidiary" and alleged no facts "that tie the holding companies to the alleged conspiracy"). And even if *LCD* were correct in general, it carries no force here because "Samsung" consists of two very differently situated sets of entities: makers and sellers of finished products on the one hand, and makers of tubes on the other. As Your Honor and Judge Conti have explained, "SEC was not a manufacturer of CRTs, but was indeed a purchaser of CRTs . . . . SDI, the manufacturer of the CRTs, is also a defendant in this action and is represented by separate counsel." MTC Report at 3.[6]

Putting aside that DAPs' allegations against "Samsung" are improper on their face, DAPs do not dispute that several of those allegations do not plausibly link SEC or SEAI to any conspiracy because they manifestly refer to SDI, not to SEC or SEAI. *See* Mot. to Dismiss 11.

### III. The Alleged Conspiracy Is Economically Nonsensical as to SEC and SEAI.

DAPs must allege a conspiracy that "makes economic sense" as to each defendant to survive dismissal. *See* Mot. to Dismiss 12. Thus, even with the duty "to accept plaintiffs' allegations as true at the pleading stage," dismissal is appropriate where "the scheme described by plaintiffs simply does not make 'economic sense.'" *Universal Grading Serv. v. eBay, Inc.*, No. C-09-2755, 2012 U.S. Dist. LEXIS 2325, at *12-13 (N.D. Cal. Jan. 9, 2012) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). DAPs thus conflate the parties' burdens in suggesting that SEC and SEAI are under "an extraordinarily high burden," Opp. Br. 12—it is ***DAPs*** who are obliged to allege facts demonstrating a conspiracy that makes economic sense for SEC and SEAI to join. DAPs' allegations do not approach this standard. As Your Honor and Judge Conti have recognized, SEC and SEAI would be ***victims*** in this conspiracy: SEC's "participation [in a conspiracy to fix the prices of CRTs] is counter-indicated, since SEC was a purchaser of tubes and could be adversely impacted by higher tube prices." MTC Report at 4. The allegation that SEC and SEAI "conspired to injure [themselves]" is

---

[6] DAPs proclaim that they have "good reason" to make allegations against "Samsung" generally, but their sole justification amounts to the presence of promotional materials on a company website. *See* Opp. Br. 9. And DAPs neglect that the very website on which they rely directs users to SDI's separate website. *See* http://www.samsung.com/hk_en/aboutsamsung/corporateprofile/affiliatedcompanies.html (providing link to http://www.samsungsdi.com). DAPs also ignore annual reports specifying SEC's minority stake in SDI. *See* Mot. to Dismiss 3 n.10.

-8-

"inherently implausible." *Car Carriers v. Ford Motor Co.*, 745 F.2d 1101, 1109 (7th Cir. 1984).

Conspicuously absent from DAPs' Opposition is any dispute that, even crediting their facially implausible theory, SEC and SEAI had a much simpler route if they were to conspire, namely, fixing the prices of finished products directly. *See* Mot. to Dismiss 13. Thus, the notion that SEC and SEAI would cross distributional lines and engage in a series of machinations to fix tube prices defies common sense. Indeed, this Court has rejected similarly "convoluted" claims where the defendant had "easier and more efficient" and more effective means of achieving the ends of an alleged conspiracy. *E.g.*, *Universal Grading*, 2012 U.S. Dist. LEXIS 2325, at *13.

DAPs first respond by labeling the non-existent entity "Samsung" a "vertically integrated enterprise." Opp. Br. 12. But this contention finds zero support in DAPs' allegations. Indeed, DAPs allege exactly the opposite—namely, that SEC merely owns a minority interest in SDI. Additionally, DAPs plead neither that SEC obtained tubes exclusively from SDI nor that SDI supplied tubes exclusively to SEC. Nor could they; indeed, their complaints suggest that SEC also obtained tubes from other manufacturers. *See* Polaroid Compl. ¶ 93(k).[7] This is not vertical integration.[8] DAPs also point to language in the Court's prior order that "[i]t is economically plausible that affiliated companies would wish to see any price increases in CRTs passed through to the purchasers of CRT products." *See In re Cathode Ray Tubes (CRT) Antitrust Litig.*, 738 F. Supp. 2d 1011 (N.D. Cal. 2010). But that reasoning was premised on allegations of a conspiracy as to tubes **and** finished products, *see infra* Part IV, and neglects that SEC would be harmed by a tube conspiracy, *see* MTC Report at 4.

**IV.     The Court's Prior Orders Do Not Justify Denying SEC and SEAI's Motion.**

DAPs put great weight on a 2009 order denying SEC and SEAI's motion to dismiss the

---

[7]     DAPs belatedly attempt to assert a "linkage" between SEC and SDI, *see* Opp. Br. 9, but DAPs never alleged this sort of linkage in their complaints and, in any case, cannot now hold up pure hearsay to mend their deficient allegations.
[8]     DAPs cite a handful of cases applying the *Illinois Brick* rule in asserting that the alleged conspiracy is economically plausible as to SEC and SEAI, *see* Opp. Br. 13, but not one involves the successful assertion of claims against a downstream manufacturer with a non-controlling minority ownership interest in an upstream supplier of allegedly price-fixed goods. In fact, in the only case clearly involving an alleged conspiracy between upstream and downstream firms not under common control, *In re Midwest Milk Monopolization Litig.*, 730 F.2d 528 (8th Cir. 1984), plaintiffs' claims were rejected on the ground that they lacked federal antitrust standing.

1  class cases. *See CRT*, 738 F. Supp. 2d 1011. This argument fails for two reasons.

2      First, that order was intertwined with Your Honor's and Judge Conti's conclusion that the complaints alleged a conspiracy as to both tubes and finished products—allegations that DAPs unequivocally disavow. Crucially, Your Honor's report noted that "the success of [many defendants'] argued grounds depend on defendants' establishing their contention that the complaints allege only 'CRTs' and not 'CRT Products.'" Report, Recommendations and Tentative Rulings Regarding Defendants' Motions to Dismiss [Dkt. No. 597] (Feb. 5, 2010), at 5. Likewise, Judge Conti's order was premised on the explicit conclusion that the class complaints "allege conspiracies regarding both CRTs and CRT Products." 738 F. Supp. 2d at 1016.

    Second, SEC and SEAI should be dismissed from DAPs' complaints given: (a) Your Honor's and Judge Conti's recent recognition that SEC's "participation is counter-indicated, since SEC . . . could be adversely impacted by higher tube prices," MTC Report at 4; and (b) subsequent authority making clear that, in assessing whether a plaintiff has alleged facts plausibly connecting each defendant to an alleged conspiracy, courts must not countenance "convoluted" schemes or conclusory allegations of "participation," "control," or actions one defendant takes "through" or "on behalf of" another, *see, e.g.*, *Potatoes*, 834 F. Supp. 2d at 1150, 1164-66, 1168-69; *ATM Fee*, 768 F. Supp. 2d at 1002; *Universal Grading*, 2012 U.S. Dist. LEXIS 2325, at *13.

## CONCLUSION

For the foregoing reasons, the aforementioned DAP Complaints should be dismissed with prejudice as to, and as applicable judgment on the pleadings entered in favor of, SEC and SEAI pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(c).

Dated:  October 26, 2012          Respectfully Submitted,

By: /s/ Ian Simmons
IAN SIMMONS
Email:  isimmons@omm.com
BENJAMIN G. BRADSHAW
Email:  bbradshaw@omm.com
KEVIN D. FEDER
Email:  kfeder@omm.com
**O'MELVENY & MYERS LLP**
1625 Eye Street, NW
Washington, DC 20006
Telephone:  (202) 383-5300

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Facsimile: (202) 383-5414

*Attorneys for Defendants Samsung Electronics Co., Ltd., and Samsung Electronics America, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on October 26, 2012, I electronically filed this Reply Memorandum in Support of Samsung Electronics Co., Ltd., and Samsung Electronics America, Inc.'s Motion to Dismiss and for Judgment on the Pleadings as to Certain Direct Action Plaintiffs' Complaints with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the counsel of record in this matter who are registered on the CM/ECF system.

/s/ Ian Simmons
Ian Simmons