Jon V. Swenson (SBN 233054)
BAKER BOTTS L.L.P.
1001 Page Mill Road
Building One, Suite 200
Palo Alto, CA 94304-1007
Telephone: (650) 739-7500
Facsimile: (650) 739-7699
Email: jon.swenson@bakerbotts.com

John M. Taladay (*pro hac vice*)
David T. Emanuelson (*pro hac vice*)
BAKER BOTTS L.L.P.
1299 Pennsylvania Ave., N.W.
Washington, DC 20004-2400
Telephone: (202) 639-7700
Facsimile: (202) 639-7890
Email: john.taladay@bakerbotts.com
Email: david.emanuelson@bakerbotts.com

*Attorneys for Defendants Koninklijke Philips Electronics N.V. and Philips Electronics North America Corporation*

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION

This Document Relates To:

ALL DIRECT ACTION COMPLAINTS

Case No. 3:07-cv-05944 SC

MDL No. 1917

**KONINKLIJKE PHILIPS ELECTRONICS N.V. AND PHILIPS ELECTRONICS NORTH AMERICA CORPORATION'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AND FOR JUDGMENT ON THE PLEADINGS AS TO CERTAIN DIRECT ACTION PLAINTIFFS' CLAIMS**

Date: TBD
Time: TBD
Place: JAMS Resolution Center
Before: The Honorable Charles A. Legge

**TABLE OF CONTENTS**

INTRODUCTION ........ 1

ARGUMENT ........ 3

I. THE UNDISPUTED FACTS REFLECTED IN THE PLEADINGS EVIDENCCE THAT THE PHILIPS DEFENDANTS WITHDREW FROM THE ALLEGED CONSPIRACY BEFORE THE RUNNING OF THE RELEVANT LIMITATIONS PERIOD........ 3

A. DAPs' Pleading Deficiencies Show That The Philips Defendants Withdrew From The Alleged Conspiracy In June 2001, January 2006, Or March 2007 At Very Latest ........ 5

II. DAPS HAVE NOT ESTABLISHED A BASIS TO TOLL THEIR UNTIMELY CLAIMS........ 8

A. DAPs Do Not Meet The Heightened Pleading Requirements Of Alleging Fraudulent Concealment Against The Philips Defendants With Particularity........ 8

B. DAPs Should Not Receive The Benefit Of Cross-Jurisdictional Tolling For Their Untimely State Claims Based On Separate Federal Claims Asserted By The Direct Purchaser Plaintiffs ........ 10

CONCLUSION ........ 10

# TABLE OF AUTHORITIES

**CASES** **PAGE(S)**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 2, 7

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 2, 3, 4, 7, 8

*Clemens v. DaimlerChrysler Corp.*,
534 F.3d 1017 (9th Cir. 2008) ........ 3, 10

*Coto Settlement v. Eisenberg*,
593 F.3d 1031 (9th Cir. 2010) ........ 6

*Goddard v. Google, Inc.*,
640 F. Supp. 2d 1193 (N.D.Cal. 2009). ........ 5

*Guerrero v. Gates*,
442 F.3d 697 (9th Cir. 2006) ........ 8

*Haley v. City of Boston*,
657 F.3d 39 (1st Cir. 2011) ........ 6

*Holomaxx Technologies v. Microsoft Corp.*,
783 F. Supp. 2d 1097 (N.D. Cal. 2011) ........ 5, 7

*In the Matter of O.P.M. Leasing Services*,
13 B.R. 54 (N.Y. Bkrtcy. 1981) ........ 6

*In re Graphics Processing Units Antitrust Litig.*,
540 F. Supp. 2d 1085 (N.D. Cal. 2007) ........ 8

*In re Linerboard Antitrust Litig.*,
223 F.R.D. 335 (E.D. Pa. 2004) ........ 10

*In re Urethane Antitrust Litig.*,
663 F. Supp. 2d. 1067 (D. Kan. 2009) ........ 10

*In re Vitamins Antitrust Litig.*,
2000 U.S. Dist. LEXIS 7397 (D.D.C. May 9, 2000) ........ 8

*Levine v. United States*,
383 U.S. 265 (1966) ........ 8

*MedioStream, Inc. v. Microsoft Corp.*,
No. 11-03095, 2012 WL 1413408 (N.D. Cal. April 13, 2012) ........ 3

*Moreco Energy Inc. v. Penberthy-Houdaille, Inc.*,
86-20153, 1988 WL 124928 (N.D. Ill. Oct 21, 1988) .......... 9

*Morton's Market v. Gustafson's Dairy, Inc.*,
198 F.3d 823 (11th Cir. 1999).......... 5, 7

*Russell v. National Collegiate Athletic Ass'n*,
No. C 11–4938, 2012 WL 1747496 (N.D. Cal. May 16, 2012).......... 6

*Scott v. Kuhlmann*,
746 F.2d 1377 (9th Cir. 1984).......... 5, 7

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003).......... 9

**OTHER AUTHORITIES**

Fed. R. Evid. 201(f) .......... 6

Koninklijke Philips Electronics N.V. ("KPE") and Philips Electronics North America Corporation ("PENAC") (collectively, "the Philips Defendants") hereby respectfully submit their Reply to the Direct Action Plaintiffs' ("DAPs") Opposition to the Philips Defendants' Motion to Dismiss and for Judgment on the Pleadings as to Certain DAPs Claims ("Opposition" or "Opp").

**INTRODUCTION**

The DAPs have attempted to distract the Court from the incontrovertible admissions in their complaints, which establish that their claims against the Philips Defendants are not timely and should be dismissed. DAPs' lengthy recitations in their Opposition to the paragraphs of their complaints that reference the Philips Defendants only serve to highlight the untimeliness of their claims. DAPs fail to allege any conduct by the Philips Defendants within the statutory limitations period, i.e., after November 2007, but they do make two specific concessions in their pleadings: (a) that the Philips Defendants' divested their entire CRT business to LPD in 2001; and (b) that following LPD's declaration of bankruptcy in January 2006, the Philips Defendants in March 2007 "cede[d] control" of LPD and relinquished all shareholder interests to LPD's creditors.[1] These two concessions, placed in opposition to the lack of any allegation of conduct within the statutory period, lead to the only plausible conclusion: that the DAPs cannot state a claim within the statutory period because the Philips Defendants withdrew from any alleged conspiracy as a matter of law more than four years prior to the DAP complaints.

The deficiencies in the DAPs' pleadings become particularly evident when considering their arguments as to the March 2007 withdrawal date. Despite *specifically pleading* that the Philips Defendants, in March 2007, "cede[d] control" over LPD and relinquished their shareholder interests to "financial institutions and private equity firms," DAPs endeavor to dismiss the March 2007 withdrawal date as "mere conjecture." DAPs try to evade the obvious conclusion of their own allegations by arguing that they "do not allege that Philips withdrew from the conspiracy," as though their failure to use the word "withdrawal" in their complaints somehow shields them from that inevitable conclusion. They can point only to their summary

[1] As discussed below, since LPD's January 2006 bankruptcy can be confirmed by publicly available information, we request the Court take judicial notice of this fact.

allegation that "Philips continued to participate in the conspiracy through November 25, 2007." However, such allegations are the exact type of conclusory language that, under *Twombly* and *Iqbal*, should be disregarded. When looking at the *facts* alleged in the complaint, the only plausible conclusion that can be reached is that the Philips Defendants withdrew from the alleged CRT conspiracy by March of 2007, at the very latest.

Because the DAPs allege no act by the Philips Defendants' within the statutory period and instead establish the Philips Defendants' withdrawal prior to the running of the relevant statutes of limitations, DAPs' claims for the period prior to such withdrawal remain timely only if there is a basis for tolling.[2] But there is no such basis here. First, DAPs fail to meet the heightened pleading requirements of Rule 9(b) for alleging fraudulent concealment against the Philips Defendants. DAPs do not deny the existence of these heightened pleading requirements, but lean entirely on this Court's prior decision denying Defendants' motion to dismiss the class plaintiffs' complaints, arguing that they need not plead fraudulent concealment individually against the Philips Defendants. The Court's prior decision, however, did not consider the unique issue presented here: whether fraudulent concealment can be asserted against a defendant that the DAPs acknowledge did not commit any act within the statutory period and has already withdrawn from an alleged conspiracy. The conclusion the DAPs ask the Court to draw is inherently implausible, since there is no basis to allege fraudulent concealment against such a defendant and the withdrawal, by definition, results in the severance of the defendant from the conduct of the alleged conspirators. Since DAPs do not allege any facts, let alone particularized pleading, to meet the heightened pleading requirement, it should not get the benefit of tolling based on fraudulent concealment.

In addition, as discussed in Defendants' Joint Reply Memorandum, DAPs cannot toll their state claims under the so-called cross-jurisdictional tolling doctrine based on a separate, federal claim asserted by the direct purchaser class. DAPs mischaracterize the rarely applied doctrine of

[2] As discussed in our Memorandum, a few DAPs claims may survive under a January 2006 or March 2007 withdrawal date without tolling; however, none of the DAPs claims survive in light of the controlling June 2001 withdrawal. Mem. at 9. The Defendants' Joint Reply Memorandum also now accepts that DAPs' New York Donnelly Act claim is not time-barred.

cross-jurisdictional tolling, by (a) relying on a purported "leading" case from a district court in another circuit that has been rejected by other courts; and (b) ignoring controlling Ninth Circuit precedent. The Ninth Circuit resolved this question in *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1025 (9th Cir. 2008), where it held that the *American Pipe* rule would not "import [cross-jurisdictional] doctrine into state law where it did not previously exist." But that is exactly what DAPs seek to do here. The Defendants' Joint Reply Memorandum makes clear that of the seven states into which DAPs have attempted to import cross-jurisdiction tolling, none have expressly adopted such tolling and many have explicitly rejected it. *See* Reply Mem. at 8-10. As such, there is no basis for this court to toll any of DAPs' state claims based on the pendency of the direct purchaser class's federal claim.

Because DAPs' do not receive the benefit of the fraudulent concealment or cross-jurisdictional tolling doctrines to save their untimely claims, they should be dismissed with prejudice.

## ARGUMENT

### I. THE UNDISPUTED FACTS REFLECTED IN THE PLEADINGS EVIDENCE THAT THE PHILIPS DEFENDANTS WITHDREW FROM THE ALLEGED CONSPIRACY BEFORE THE RUNNING OF THE RELEVANT LIMITATIONS PERIOD

As DAPs recognize in their Opposition, a complaint must be dismissed under Rule 12(b)(6) if it does not plead sufficient facts to plausibly state a claim for relief within the applicable limitations period. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007); *MedioStream, Inc. v. Microsoft Corp.*, No. 11-03095, 2012 WL 1413408, at *6 (N.D. Cal. April 13, 2012) (dismissing complaint based on plaintiff's failure to allege act by defendant within the limitations period). DAPs recite fifteen paragraphs from their complaints, which span nearly five pages, in the hopes of meeting this plausibility standard. Opp. at 3-7. Yet this volume merely illustrates the DAPs' inability to state any conspiratorial conduct by the Philips Defendants within the applicable limitations period. Specifically:

- DAPs allege that KPE divested its CRT business to LPD in 2001. Opp. at 4 (citing Best Buy Compl. ¶ 46).

- DAPs make only a conclusory assertion that this divestiture was in furtherance of a conspiracy (Opp. at 4 (citing Best Buy Compl.; ¶¶ 98, 100)), but allege no facts regarding the Philips Defendants' involvement in LPD beyond its passive shareholder interest, let alone any allegations that would support the Philips Defendants' use of LPD as an instrument of the alleged conspiracy.

- The only specific allegation against the Philips Defendants' following their 2001 divestiture is a pricing announcement on finished products, which has nothing to do with CRTs. Opp. at 6 (citing Best Buy Compl. ¶ 170).

- All other DAP allegations regarding the Philips Defendants' purported involvement in alleged CRT conspiracy are either specifically in the pre-LPD time period (Opp. at 6 (citing Best Buy Compl. ¶¶ 114, 150) or vague as to time (e.g., "after 2001") and, at any rate, cannot be read to plausibly suggest an act within the limitations period—especially in light of the DAPs' *specific* allegations of the termination of the Philips Defendants' role in the CRT business. (Opp. at 6 (citing Best Buy Compl. ¶¶ 150-51)).[3]

- DAPs allege that "LPD announced in ***March 2007*** that [KPE] and [LG] would ***cede control over the company*** and the shares would be owned by financial institutions and private equity firms." Opp. at 4-5 ((citing Best Buy Compl. ¶ 40) (emphasis added).

- DAPs make no allegation against the Philips Defendants that would purport to maintain their ties to LPD, the CRT industry, or the alleged conspiracy following the March 2007 date.

These allegations do not, and DAPs cannot, plausibly allege any conspiratorial conduct by the Philips Defendants within any applicable limitations period.[4] DAPs have relied on untimely

[3] The only allegation that could conceivably support the Philips Defendants' involvement in the alleged CRT conspiracy following the LPD divestiture (Best Buy Compl. ¶ 150) is both vague and implausible. *See Twombly*, 550 U.S. at 547 (requiring factual allegations that "nudg[e] their claims across the line from conceivable to plausible"). DAPs allege that, following divestiture, unspecified conspiracy meetings were attended by "high level executives from LP Displays" who had "previously attended meetings on behalf of Defendants LG Electronics and Philips." *See, e.g.*, Best Buy Compl. ¶ 145. DAPs later allege that "high level executives from Philips" attended these same conspiracy meetings following divestiture. *Id.* ¶ 150. Given that Philips had divested the entirety of its CRT business, the second allegation is inconsistent with the first and should be considered implausible without further factual allegations in support.

[4] As discussed in our Memorandum at 6, the applicable limitations period ends in November 2007 for all DAP claims except those asserted in the Electrograph complaint (February 2007) and the Wisconsin Antitrust Act claim asserted in the Target Complaint (November 2005).

or vague allegations against the Philips Defendants that are belied by their specific allegations that the Philips Defendants: (a) exited the CRT business in 2001: and (b) "cede[d] control" over LPD in March 2007 by relinquishing their passive shareholder interests. When those specifically alleged events are weighed against the untimely and generalized assertions identified by DAPs following them, the only plausible conclusion this Court can reach is that DAPs have failed to state a timely claim against the Philips Defendants within the applicable limitations period.

**A. DAPs' Pleading Deficiencies Show That The Philips Defendants Withdrew From The Alleged Conspiracy In June 2001, January 2006, Or March 2007 At Very Latest**

Because of the DAPs' clear pleading deficiencies, this Court has more than sufficient justification to decide on the pleadings that the Philips Defendants' have withdrawn from any alleged CRT conspiracy. While DAPs place great reliance on the fact that withdrawal is an affirmative defense, Opp. at 10, dismissal under 12(b)(6) remains appropriate where the factual record is undisputed. *See Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984) (granting motion to dismiss based on affirmative defense, where "the defense raises no disputed issues of fact"); *Holomaxx Technologies v. Microsoft Corp.*, 783 F. Supp. 2d 1097, 1103-04 (N.D. Cal. 2011) ("The assertion of an affirmative defense properly may be considered on a Rule 12(b)(6) motion to dismiss where the defense is 'apparent from the face of the [c]omplaint.'") (quoting *Goddard v. Google, Inc.*, 640 F. Supp. 2d 1193, 1200 n.5 (N.D.Cal. 2009)).

As we noted in our Memorandum, given DAPs' failure to plausibly allege any involvement by the Philips Defendants' in the alleged CRT conspiracy following KPE's divestment of the CRT business to LPD, the proper withdrawal date should be June 2001. *See Morton's Market v. Gustafson's Diary, Inc.*, 198 F.3d 823, 838 (11th Cir. 1999) (finding withdrawal from alleged conspiracy based on defendant's sale of a business engaged in the conspiracy). Under a June 2001 withdrawal date, all of DAPs' claims are untimely.

DAPs exert significant effort in opposing the June 2001 withdrawal date, but have little to offer in opposition to the other possible and obvious withdrawal dates that precede any possible statutory cutoff: (a) January 2006, when LPD openly declared bankruptcy; and (b) March 2007

when, as DAPs allege in their complaints, the Philips Defendants' "cede[d] control" over LPD and relinquished their shareholder interests "financial institutions and private equity firms." Mem. at 4 (citing Best Buy Compl. ¶ 40 and related DAP pleadings). When even these later withdrawal dates are applied, the vast majority of DAPs' claims remain untimely. Mem. at 9.

The DAPs, however, appear not to appreciate the relevance of these two withdrawal dates. In fact, DAPs ***fail to address*** LPD's January 2006 declaration of bankruptcy despite its clear inclusion in our Memorandum as a basis for withdrawal. Mem. at 9. As LPD's bankruptcy filing is a matter of public record, the Philips Defendants request that this Court take judicial notice of this fact. *See* Request for Judicial Notice ("RJN"), filed concurrently herewith.[5] The public documents we have filed—the March 1, 2006 and August 26, 2006 reports from LPD's bankruptcy trustee—confirm that LPD declared bankruptcy in January 2006, after incurring losses in every year of its existence and resulting in a "financial shortfall at the end of the 2005 of approximately USD 1.3 billion." March 1, 2006 Report, at 5, 16, 22, 33; August 26, 2006 Report, at 6. When the bankruptcy filing occurred, control over LPD, which was formerly independent, became vested solely in the hands LPD's bankruptcy trustee and creditors. August 26, 2006 Report, at 17 (stating that LPD management "report[ed] directly to the trustee and to the Steering Committee of the Bank Syndicate"); *see also In the Matter of O.P.M. Leasing Services*, 13 B.R. 54, 58 (Bkrtcy. N.Y. 1981) ("as far as a reorganizing corporate debtor is concerned, the trustee possesses and controls its assets, conducts its affairs, and subordinate management, if any, serves at the trustee's pleasure").

While DAPs do not address this judicially noticeable bankruptcy filing, they implicitly acknowledge it in their complaints by stating that, as of March 2007, LPD "became an

[5] The Court may consider materials that are public records or otherwise appropriate for taking judicial notice "at any time in the proceeding," without converting a Rule 12(b)(6) or 12(c) motion into a Rule 56 motion. See Fed. R. Evid. 201(f); *see also Russell v. National Collegiate Athletic Ass'n*, No. C 11–4938, 2012 WL 1747496, at *4 n.1 (N.D. Cal. May 16, 2012) (Wilken, J.) (granting request for judicial notice that was asserted in reply to motion to dismiss). Specifically, the Court can augment the facts and inferences from the body of the complaint with "data points gleaned from documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice." *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011); *see also Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010) (a court "may consider materials incorporated into the complaint or matters of public record" on a motion to dismiss).

independent company" following its announcement that ownership would be taken over its creditors, the "financial institutions and private equity firms." Best Buy Compl. ¶ 40.[6] Yet incredibly, DAPs maintain that it would be "mere conjecture" to conclude that the Philips Defendants' notorious and complete divestiture of interest in a firm—already over a year into bankruptcy—amounts to a "permanent severance" of their participation in the alleged CRT conspiracy. Opp. at 13. To support this thin assertion, DAPs argue that since they "do not allege that Philips withdrew from the conspiracy" and summarily "allege that Philips continued to participate in the conspiracy through November 25, 2007," those allegations are sufficient to defeat withdrawal at the pleading stage. *Id.*

However, such allegations are exactly the type of conclusory language that the Supreme Court has instructed courts to disregard when considering motions to dismiss. *See Twombly*, 550 U.S. at 555 ("a plaintiffs' obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"); *Iqbal*, 556 U.S. at 678 ("the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). Looking beyond those conclusory allegations to the actual, undisputed facts in the pleadings and public record, the only plausible conclusion that can be drawn is that the Philips Defendants withdrew from the alleged CRT conspiracy. If the Philips Defendants' divestiture of its CRT business in 2001 to LPD did not constitute withdrawal, certainly LPD's: (a) bankruptcy; and (b) subsequent transfer of ownership interests to its creditors sufficiently "severed the Philips Defendants ties" to the CRT business. *Morton's Market*, 198 F.3d at 839. These undisputed facts provide more than sufficient basis for this Court to find, on the pleadings, that the Philips Defendants withdrew from any alleged CRT conspiracy prior to the operative statutory period. *Scott*, 746 F.2d at 1378; *Holomax Technologies*, 783 F. Supp. 2d at 1103-04.

[6] CompuCom Compl. ¶ 35; Circuit City Compl. ¶ 38; Target Am. Compl. ¶ 46; Polaroid Compl. ¶ 32; Costco Compl. ¶ 32; Office Depot Compl. ¶ 35; Interbond Compl. ¶ 34; Tweeter Compl. ¶ 38; P.C. Richard Compl. ¶ 40; Electrograph Am. Compl. ¶ 156.

## II. DAPS HAVE NOT ESTABLISHED A BASIS TO TOLL THEIR UNTIMELY CLAIMS

Given the Philips Defendants' withdrawal from the alleged CRT conspiracy prior to the running of the limitations period for all or, at the very least, the vast majority of, the DAPs' claims, DAPs can only salvage their claims by tolling the limitations period. DAPs have asserted two bases for the tolling: (a) fraudulent concealment; and (b) cross-jurisdictional tolling. Both fail as a matter of law.

### A. DAPs Do Not Meet The Heightened Pleading Requirements Of Alleging Fraudulent Concealment Against The Philips Defendants With Particularity

As discussed in our Memorandum, following the Philips Defendants' withdrawal from the alleged CRT conspiracy, DAPs fail to alleged fraudulent concealment with sufficient particularity to satisfy the heightened pleading requirements of Rule 9(b). *See, e.g., Guerrero v. Gates*, 442 F.3d 697, 706-07 (9th Cir. 2006) (requiring plaintiffs to "plead with particularity the facts which give rise to the claim of fraudulent concealment"). DAPs do not deny that they are subject to this heightened pleading standard but, incongruously, assert that DAPs need not plead fraudulent concealment against the Philips Defendants if they can allege fraudulent concealment against the conspiracy generally. Opp. at 15. To support this purported standard, DAPs rely on this Court's prior opinion denying Defendants' motion to dismiss class plaintiffs' complaints. *Id.* at 13-14.

The Court's prior opinion, however, did not consider the unique issue presented here, i.e., the applicable standard for asserting fraudulent concealment against a defendant who has ***already withdrawn*** from an alleged conspiracy.[7] While there is no controlling precedent on that issue, the existence of the Philips Defendants' withdrawal made individualized pleading against them a necessity, since withdrawal by its very nature severs the liability of the Philips Defendants from any subsequent acts of its alleged co-conspirators. *See Levine v. United States*, 383 U.S. 265, 266 (1966). The reasoning of the Report and Recommendation, when considering the prior motions is

[7] Neither do the other cases cited by DAPs to support their proposition. See Opp. at 15. These cases consider pleading requirement for alleging conspiracy under the plausibility standard of *Twombly*; they do not consider whether fraudulent concealment has been properly alleged. *See In re Graphics Processing Units Antitrust Litig.*, 540 F. Supp. 2d 1085, 1096 (N.D. Cal. 2007); *In re Vitamins Antitrust Litig.*, 2000 U.S. Dist. LEXIS 7397, at *53 (D.D.C. May 9, 2000).

instructive on this point. It states:

> Defendants' motions emphasize that plaintiffs have not alleged fraudulent concealment on a defendant-by-defendant basis. Defendants are correct in that respect. And they are also correct that pleading of fraudulent concealment is not governed solely by FRCP Rule 8, but also by the stricter pleading requirements of FRCP Rule 9(b). And defendants have cited some decisions in this circuit or district that have used the word 'each' with respect to the required pleading of fraudulent concealment. But those decisions have not been in the context of a large international conspiracy as is this case. The requirement of individualized pleading must be tempered by the circumstances, so as not to divert the rule away from its principle and make it into a writing exercise.

SM Report [Dkt. No. 597], at 21. As opposed to the prior motion, "the circumstances" of the Philips Defendants withdrawal make the "requirement of individualized pleading" paramount. *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) ("Rule 9(b) demands . . . the circumstances constituting the alleged fraud be 'specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong.'"); *Moreco Energy Inc. v. Penberthy-Houdaille, Inc.*, 86-20153, 1988 WL 124928, at *4 (N.D. Ill. Oct 21, 1988) ("allegations of fraudulent concealment . . . must reasonably notify each defendant of the part he plays in the fraudulent scheme").

Applying the proper standard to the DAPs' complaint, it is clear that DAPs fail to adequately plead fraudulent concealment against the Philips Defendants following their withdrawal from the alleged conspiracy. DAPs make no specific allegations of fraudulent concealment against the Philips Defendants, except for an inapposite allegation related to the sale of finished products, not CRTs, in 2004.[8] *See* Opp. at 6-7 (citing Best Buy Compl. ¶ 170). Furthermore, DAPs provide no allegation to explain how Philips could have engaged in active concealment of the alleged CRT conspiracy following LPD's bankruptcy in January 2006 or the transfer of all shareholding interests in March 2007. Because of these deficiencies, DAPs should not get the benefit of tolling the statute of limitations against the Philips Defendants under the fraudulent concealment doctrine.

---

[8] Even if that allegation was sufficient to allege fraudulent concealment generally, it would not be sufficient to plead fraudulent concealment after Philips' January 2006 or March 2007 withdrawal.

**B. DAPs Should Not Receive The Benefit Of Cross-Jurisdictional Tolling For Their Untimely State Claims Based On Separate Federal Claims Asserted By The Direct Purchaser Plaintiffs**

As we explain more fully in Defendants' Joint Reply Memorandum, the so-called cross-jurisdictional tolling doctrine does not apply here and cannot save DAPs' time-barred state law claims. For example:

- DAPs rely almost exclusively on a Pennsylvania district court case, *In re Linerboard Antitrust Litig.*, 223 F.R.D. 335 (E.D. Pa. 2004), which DAPs would have this Court believe is the "leading opinion to address cross-jurisdictional tolling," to argue that the direct purchaser plaintiffs' federal Sherman Act complaint somehow tolls their patchwork of late-filed state law claims. Joint Opp. at 18. *Linerboard* may be the most favorable case for DAPs to cite, but it is in no way controlling or "leading." *See, e.g., In re Urethane Antitrust Litig.*, 663 F. Supp. 2d. 1067, 1081 (D. Kan. 2009) ("[t]he Court rejects the conclusions of the *Linerboard* court.").

- Meanwhile, DAPs ignore controlling precedent from the Ninth Circuit that would reject the application of cross-jurisdictional tolling to the seven state law claims for which the DAPs seek it.[9] In *Clemens v. DaimlerChrysler Corp.*, the Ninth Circuit refused to apply cross-jurisdictional tolling to a California claim based on a pendent action in Illinois, holding that "California's interest in managing its own judicial system counsels us not to import the doctrine of cross-jurisdictional tolling into California law." 534 F.3d 1017, 1025 (9th Cir. 2008). In so doing, the court recognized that "several federal courts have declined to import the doctrine into state law where it did not previously exist." *Id.*

- Despite DAPs' assertions, cross-jurisdictional tolling has not been established in California, Florida, Kansas, Massachusetts, Minnesota, or Washington and, thus, under *Clemens* should not be imported into those states. DAPs have inappropriately attempted to write the doctrine of cross-jurisdictional tolling into the law of states that have expressly rejected the doctrine or have considered and declined to apply it. *Compare* Joint Opp. at 19-20; *with* Defendants' Joint Reply at 9-10 (citing authority from California, Florida, Kansas, Massachusetts, Minnesota, and Washington declining to adopt cross-jurisdictional tolling).

Thus, neither fraudulent concealment nor cross-jurisdictional class action tolling applies to DAPs' untimely claims, and those claims must be dismissed at the pleading stage.

## CONCLUSION

For the foregoing reasons, the aforementioned DAP claims should be dismissed with prejudice, or as applicable judgment entered in favor of the Philips Defendants on the pleadings.

[9] Even with DAPs' overreaching, they make no attempt to argue that cross-jurisdictional tolling saves their claims based on the law of the remaining ten of seventeen states.

Dated: October 26, 2012

By: /s/ Jon V. Swenson

Jon V. Swenson (SBN 233054)
BAKER BOTTS L.L.P.
1001 Page Mill Road
Building One, Suite 200
Palo Alto, CA 94304
Telephone: (650) 739-7500
Facsimile: (650) 739-7699
Email: jon.swenson@bakerbotts.com

John M. Taladay (*pro hac vice*)
David T. Emanuelson (*pro hac vice*)
BAKER BOTTS L.L.P.
1299 Pennsylvania Ave., N.W.
Washington, DC 20004-2400
Telephone: (202) 639-7700
Facsimile: (202) 639-7890
Email: john.taladay@bakerbotts.com
Email: david.emanuelson@bakerbotts.com

*Attorneys for Defendants Koninklijke Philips Electronics N.V. and Philips Electronics North America Corporation*

-11-
KPE'S AND PENAC'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AND FOR JUDGMENT ON THE PLEADINGS AS TO CERTAIN DIRECT ACTION PLAINTIFFS' CLAIMS (3:07-CV-05944 SC, MDL NO. 1917)

**CERTIFICATE OF SERVICE**

I hereby certify that on October 26, 2012, I electronically filed Koninklijke Philips Electronics N.V. and Philips Electronics North America Corporation's Reply Memorandum in Support of Motion to Dismiss and for Judgment on the Pleadings as to Certain Direct Action Plaintiffs' Claims with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the counsel of record in this matter who are registered on the CM/ECF system.

/s/ Jon V. Swenson
Jon V. Swenson

KPE'S AND PENAC'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AND FOR JUDGMENT ON THE PLEADINGS AS TO CERTAIN DIRECT ACTION PLAINTIFFS' CLAIMS (3:07-CV-05944 SC, MDL NO. 1917)