guarantees though to the Bank Syndicate at the commencement of the Facility Agreement. As said, in 2003 a restructuring of the financing was agreed, which was completed in 2004. As a result of the restructuring of 2004 almost all assets of LPD Holding and its subsidiaries, including LPD Netherlands and LPD Investment, were provided as security to the Bank Syndicate. The security assets are 'administered' and may be executed by a Security Agent. The function of Security Agent is fulfilled by JPMorgan Chase Bank, Hong Kong Branch.

Finally it is still noted that at the commencement of the Facility Agreement the Bank Syndicate consisted of about 50 banks. After the bankruptcy a considerable trade in claims, which were part of the Syndicated Loan, took place (so-called distressed claims trade). The today still outstanding Syndicated Loan of about USD 578 million is now in the hands of about 38 funds, the largest of which are Marathon (about 33%), Credit Suisse (10.4%), Bank of America (9.3%) and Deutsche Bank (8.1%).

### 5.1.1 Guarantors under the Facility Agreement / Restructuring Agreement

When entering into the Facility Agreement, the following companies became parties to the Facility Agreement as Guarantors:

| | |
|---|---|
| LPD Poland; | LPD USA; |
| LPD Netherlands; | LPD Mexico; |
| LPD International; | LPD Brasil; |
| LPD Indonesia; | LPD Czech; |
| LPD Germany; | LPD France; |
| LPD Glass Germany; | |
| LPD Taiwan (liquidated in 2005). | |

The restructuring which took place in 2003/2004 eventually resulted in a Restructuring Agreement dated 25 June 2004.

This Restructuring Agreement included among other things the obligation to let a number of new subsidiaries become parties to the Facility Agreement as Guarantors. It concerned the subsidiaries:

- LPD Investment;
- LPD Holding Germany;
- LPD International;
- LPD Korea (if legally possible).

### 5.1.2 Security assets

By the Restructuring Agreement of 25 June 2004 LPD Holding and the various subsidiaries committed themselves to provide the security assets mentioned in <u>Annex 2</u> attached to this report to the Security Agent as security for the repayment of the Syndicated Loan. Almost all of these security assets were provided to the Security Agent on or about 11 October 2004.

Investigation has shown that the security rights as such have been created in a legally valid way. As is customary, it is now investigated whether the providing of the security assets has for instance not been fraudulent in respect of creditors within the meaning of Article 42 ff. Bankruptcy Act. This investigation will be part of the investigation into the causes of the bankruptcy.

### 5.2 Cash Pool

LPD Holding and most of its subsidiaries took part in the Cash Pool Agreement with Citibank. A so-called Daylight Overdraft Facility of in total USD 90 million is connected to this Cash pool. Furthermore, a so-called Zero-Balancing Arrangement was connected to the Cash Pool. The Zero-Balancing Arrangement implied – briefly stated - that LPD Holding centralised all bank balances of the LPD companies on a bank account of LPD Holding.

This was put into effect by automatically transferring at the end of each work day all credit balances of the LPD subsidiaries to the bank account of LPD Holding while debit balances on the bank accounts of the LPD subsidiaries were automatically settled at the expense of the bank account of LPD Holding. In this way it was achieved that all liquidities of the LPD Group were centralised at LPD Holding.

**5.3. Mivar Notes**

As stated above, in 2005 LPD Finance issued bonds for € 200 million. The amount of € 200 million is due by the middle of 2007. LPD Holding acts as guarantor for the repayment of the amount of € 200 million. Because of the bankruptcy of LPD Holding the amount of € 200 million has already become due. The bonds are listed in Luxembourg. By now it has become clear that the bonds are not subordinated.

The bonds are now held by Mr. C. Vichi; owner of the Italian company Mivar.

The trustee is investigating in which way the amount of € 200 million has been used by LPD Finance, at any rate by LPD Group.

## 6. Personnel

### 6.1 Subrogation agreement

As has extensively been described in the first report, in December 2005 LPD Netherlands agreed a Social Plan with the trade unions in respect of about 147 employees who had become redundant because of the declining market. Philips has agreed with the unions that it will carry out this Social Plan for its account and risk. In line with what Philips has agreed with the unions, the trustee has agreed with Philips to be subrogated to the rights of the employees covered by the Social Plan of December 2005.

## 7. Restart / Continuation of activities

### 7.1 LPD Netherlands: To be continued / Sale of Special Products

#### 7.1.1 General

In the period February - March 2006 the Special Products enterprise, part of LPD Netherlands, was continued by the trustee. With effect from 3 April 2006 the Special Products enterprise was sold and transferred to Philips Lighting.

#### 7.1.2 Result of continuation of Special Products

In the period February - March 2006 a total amount of € 535,000 (gross turnover) of products was ordered, which products have by now been delivered. The amounts payable by the buyers have all been paid.

In the months February - March 2006 raw materials and suchlike for a total amount of about € 152,000 were purchased, while the net wages amounting to in total about € 52,500 for that period were also paid. It also applies that the estate has not paid the gross wage bill of about € 59,000 for the months February - March 2006.

The gross wage bill has been taken over by the Employee Insurance Administration within the framework of its wage take-over obligation and will be submitted as a preferential claim on the estate. Furthermore, as a consequence of the continuation of Special Products, the estate of LPD Netherlands must still pay an amount of € 37,730 in VAT to the tax authorities. This outstanding amount will be included in the total VAT return of LPD Netherlands.

If the income of the continuation is compared with its costs, the continuation of the Special Products business line has led to an increase of the estate assets of LPD Netherlands with about € 234,000.

### 7.1.3 Sale of Special Products

With the permission of the bankruptcy judge the assets of Special Products were sold on 1 April 2006 to Philips Lighting for a total amount of € 503,000. In conformity with the agreement, Philips Lighting paid in total € 178,174 of this amount to the pledgee, the Security Agent, after which the pledgee surrendered its rights of pledge on the fixtures and fittings and stocks. The net purchase price of € 324,826 was paid by Philips Lighting to the bankruptcy account of LPD Netherlands.

The continuation and sale of the Special Products business line eventually resulted in an increase of the estate assets of LPD Netherlands with an amount of about € 558,000.

## 8. Legitimacy

### 8.1 Accounting obligation

As is customary, the trustee will also further investigate whether the bankrupt companies LPD Holding, LPD Netherlands and LPD Investment have fulfilled their accounting obligation, in the sense that it will be examined whether the accounts have been kept in such a way that the rights and obligations of LPD Holding and LPD Netherlands may at all times be known from them. If LPD Holding, LPD Netherlands and LPD Investment have failed to fulfil their accounting obligation, this means that by virtue of Article 2:248, paragraph 2, Civil Code it will be an established fact that the management has performed its duties improperly and it will be presumed that this improper performance of duties constitutes an important cause of the bankruptcy. The investigation into the accounting obligation will be carried out simultaneously with the investigation into the causes of the bankruptcy which still has to be started. According to current insight, there are however no indications that the accounting obligation has not been properly fulfilled.

### 8.2 Deposit of annual accounts

By virtue of Article 2:394, paragraph 3, Civil Code the legal entity is obliged to publish its annual accounts within thirteen months from the end of the financial year. The publication should be made by depositing a copy at the Chamber of Commerce. If a private limited company fails to publish its annual accounts in time, this means that by virtue of Article 2:248, paragraph 2, Civil Code it will be an established fact that the management of the private limited company has performed its duties improperly and it will be presumed that this improper performance of duties constitutes an important cause of the bankruptcy (Article 2:248, paragraph 2, Civil Code).

From the information from the Chamber of Commerce in Eindhoven, the trustee has established that LPD Holding timely published the consolidated annual accounts for the years 2002 up to and including 2004. By virtue of Article 2:403, paragraphs 1 and 3, Civil Code, LPD Netherlands and LPD Investment are not required to publish their annual accounts within thirteen months from the end of the financial year.

After all, the annual accounts of LPD Netherlands and LPD Investment have been included in the consolidated accounts of LPD Holding. LPD Holding has issued a so-called 403 declaration for e.g. LPD Netherlands and LPD Investment.

**8.3 Payment obligation**

After investigation it has become clear to the trustee that the shares of LPD Holding and LPD Netherlands have been (really) paid up in full. The investigation into the payment on the shares of LPD Investment is still ongoing.

**8.4 Directors' and officers' liability**

The investigation into the question whether the directors (including the Supervisory Board and any co-decision-makers) of LPD Holding, LPD Netherlands and/or LPD Investment have properly performed their task, will be included in the investigation to be carried out into the causes of the bankruptcy.

**8.5 Fraudulent acts in respect of creditors**

Subject of investigation is at present whether (within view of the bankruptcy) non-obligatory legal acts have been performed of which LPD Holding, LPD Netherlands and/or LPD Investment knew, at any rate should have known that they would result in prejudice to creditors. The trustee focuses his attention in this respect in particular on the security assets which LPD Holding provided in 2005 to the Security Agent.

In addition the trustee is investigating whether (within view of the bankruptcy) debts have been paid to third parties by LPD Holding, LPD Netherlands and/or LPD Investment while either these third parties knew that petitions for the bankruptcy of LPD Holding, LPD Netherlands and/or LPD Investment had already been filed, or this payment was the result of consultations between LPD Holding, LPD Netherlands and/or LPD Investment on the one hand and the third parties on the other

hand, which consultations were intended to favour the third parties by that payment over other creditors.

## 9. Creditors

### 9.1 LPD Holding

#### 9.1.1 Creditors' committee

By means of a petition Mr. C. Vichi (Italy), unsecured creditor of LPD Holding via the so-called Mivar Notes for an amount of € 200 million excluding interest, requested the 's-Hertogenbosch District Court by virtue of Article 74 Bankruptcy Act to appoint a provisional creditors' committee. The petition was dealt with by the 's-Hertogenbosch District Court at a public hearing on 26 April 2006. By a ruling dated 3 May 2006 the 's-Hertogenbosch District Court appointed a provisional creditors' committee whereby Mr. Vichi and JPMorgan Chase Bank, N.A., Hong Kong Branch, the latter in its capacities of Agent and Security Agent, were appointed as members. The first meeting of the creditors' committee took place on 22 May 2006.

#### 9.1.2 Estate debts

Two creditors have submitted claims on the estate to the trustee, for a total amount of € 7,202.82. The number of claims on the estate is expected to increase, e.g. because of the fact that the Employee Insurance Administration has taken over the salary payment of the dismissed employees for the notice period.

#### 9.1.3 Preferential claim of the tax authorities

So far the tax authorities have not yet submitted any claim for validation.

#### 9.1.4 Preferential claim of the Employee Insurance Administration

So far the Employee Insurance Administration has not yet submitted any claim for validation.

### 9.1.5 Other preferential creditors

So far not a single creditor has submitted a preferential claim for validation.

### 9.1.6 Unsecured creditors

Thirteen creditors have submitted unsecured claims for a total amount of € 210,962,663.34 which claims the trustee has placed on the list of provisionally admitted unsecured claims. The trustee has placed a claim of € 9,793,262.31 on the list of provisionally disputed unsecured claims.

In this respect it is noted that the principal part of the provisionally admitted unsecured claims is formed by Mr. C. Vichi's claim while the trustee takes into account that JPMorgan, in its capacity of Agent of the Bank Syndicate, will submit a substantial unsecured claim on behalf of the Bank Syndicate.

## 9.2 LPD Netherlands

### 9.2.1 Estate debts

Six creditors have submitted claims on the estate to the trustee, for a total amount of € 354,010.56. The number of claims on the estate is expected to increase, e.g. because of the fact that the Employee Insurance Administration has taken over the salary payment of the dismissed employees for the notice period.

### 9.2.2 Preferential claim of the tax authorities

The tax authorities have submitted two preferential claims for validation for a total amount of € 883,679. The claims concern due wage tax.

49

### 9.2.3 Preferential claim of the Employee Insurance Administration

The Employee Insurance Administration has submitted a preferential claim for validation for an amount of € 6,770.37. The claim concerns old-age pension benefits.

### 9.2.4 Other preferential creditors

Seven other creditors have submitted preferential claims for validation for a total amount of € 113,799.57.

### 9.2.5 Unsecured creditors

321 Creditors have submitted unsecured claims for validation for a total amount of € 6,537,641.93. The trustee has placed these claims on the list of provisionally admitted unsecured claims.
The trustee takes into account that JPMorgan Chase Bank, in its capacity of Agent of the Bank Syndicate, will submit a substantial unsecured claim on behalf of the Bank Syndicate.

## 9.3 LPD Investment

### 9.3.1 Estate debts

So fare no creditors have made known any claims on the estate.

### 9.3.2 Preferential claim of the tax authorities

So far the tax authorities have not submitted a claim for validation.

50

### 9.3.3 Preferential claim of the Employee Insurance Administration

So far the Employee Insurance Administration has not submitted a claim for validation.

### 9.3.4 Other preferential creditors

So far not a single creditor has submitted a preferential claim for validation.

### 9.3.5 Unsecured creditors

So far only one creditor has submitted an unsecured claim amounting to € 1,648.15 which claim the trustee has placed on the list of provisionally admitted unsecured claims. The trustee takes into account that JPMorgan Chase Bank, in its capacity of Agent of the Bank Syndicate, will submit a substantial unsecured claim on behalf of the Bank Syndicate.

## 10. Other

### 10.1 Expected manner of settlement

It is not yet known in which way the bankruptcies will further be settled and if there will follow a distribution to the creditors.

### 10.2 Period of winding-up

The period in which LPD Holding, LPD Netherlands, respectively LPD Investment can or will be wound up cannot yet be estimated at present.

51

**10.3 Action Plan**

In the forthcoming period under review the trustee will among other things and in particular initiate the following activities:

- consultations with the Bank Syndicate about the way in which the activities and the viable companies will be continued and, where needed, restructured or recapitalised.
- sale of shares of LPD Poland, all other unpledged assets and shares in Nanjing Feijing Magnetic Products;
- monitoring of the progress of the restructuring of LPD Czech and LPD Slovakia;
- investigation into the causes of the bankruptcies of LPD Holding, LPD Netherlands and LPD Investment. The investigation into the causes of the bankruptcies will also include an investigation into whether or not fraudulent acts in respect of creditors have been performed, the question whether the management boards of LPD Holding, LPD Netherlands and/or LPD Investment have properly fulfilled their task, etc;
- dealing with all outstanding tax issues;
- etc. etc.

**10.4 Submission of next report**

The trustee's third report in the bankruptcies of LPD Holding, LPD Netherlands and LPD Investment will be deposited with the court registry of the 's-Hertogenbosch District Court by the middle of February 2007.

Eindhoven, 28 August 2006

Mr. A.A.M. Deterink
trustee

Annexes:

1a. Organisation chart of the Ongoing Group;

1b. Organisation chart of the Residual Group;

2. Overview of security assets;

3a. Interim financial report of LPD Holding;

3b. Overview of claims on the estate of LPD Holding;

3c. Overview of provisionally admitted unsecured claims on LPD Holding.

3d. Overview of provisionally disputed claims on LPD Holding.

4a. Interim financial report of LPD Netherlands;

4b. Overview of claims on the estate of LPD Netherlands;

4c. Overview of provisionally admitted preferential claims on LPD Netherlands.

4d. Overview of provisionally disputed preferential claims on LPD Netherlands.

4e. Overview of provisionally admitted unsecured claims on LPD Netherlands B.V.;

4f. Overview of provisionally disputed unsecured claims on LPD Netherlands B.V.;

5a. Interim financial report of LPD Investment;

5b. Overview of provisionally admitted unsecured claims on LPD Investment.

# PRODUCTIE 1a



# PRODUCTIE 1b



PRODUCTIE 2

**Bijlage 2**

*Security Documents*

**The Netherlands**

1. Deed of Pledge of Registered Shares over the shares of LG.Philips Displays China B.V. dated 11 October 2004.

2. Deed of Pledge of Registered Shares over the shares of LG.Philips Displays Netherlands B.V. ("**LPD Netherlands**") dated 11 October 2004.

3. Deed of Pledge of Registered Shares over the shares of LPD Investment dated 11 October 2004.

4. Disclosed Pledge of Intercompany Receivables dated 12 October 2004 between the Borrower as pledgor and JPMorgan Chase Bank, Hong Kong Branch as pledgee.

5. Master Deed of IP Collateral Pledge dated 12 October 2004 between the borrower as pledgor and JPMorgan Chase Bank, Hong Kong Branch as pledgee.

6. Undisclosed Pledge of Receivables dated 12 October 2004 between LPD Netherlands as pledgor and JPMorgan Chase Bank, Hong Kong Branch as pledgee.

7. Pledge of Moveable Assets dated 12 October 2004 between LPD Netherlands as pledgor and JPMorgan Chase Bank, Hong Kong Branch as pledgee.

**UK**

8. Debenture dated 12 October between LPD Netherlands in favour of JPMorgan Chase Bank, Hong Kong Branch as security agent and Slavenburg letter from Companies House.