Jon V. Swenson (SBN 233054)
BAKER BOTTS L.L.P.
1001 Page Mill Road
Building One, Suite 200
Palo Alto, CA 94304-1007
Telephone: (650) 739-7500
Facsimile: (650) 739-7699
Email: jon.swenson@bakerbotts.com

John M. Taladay (*pro hac vice*)
David T. Emanuelson (*pro hac vice*)
BAKER BOTTS L.L.P.
1299 Pennsylvania Ave., N.W.
Washington, DC 20004-2400
Telephone: (202) 639-7700
Facsimile: (202) 639-7890
Email: john.taladay@bakerbotts.com
Email: david.emanuelson@bakerbotts.com

*Attorneys for Defendants Koninklijke Philips
Electronics N.V. and Philips Electronics North
America Corporation*

[Additional moving defendants and counsel listed in signature block]

## IN THE UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Case No. 3:07-cv-05944 SC<br><br>MDL No. 1917 |
| This Document Relates To:<br><br>ALL DIRECT ACTION COMPLAINTS | **DEFENDANTS' JOINT REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AND FOR JUDGMENT ON THE PLEADINGS AS TO CERTAIN DIRECT ACTION PLAINTIFFS' CLAIMS**<br><br>Date:  TBD<br>Time:  TBD<br>Place:  JAMS Resolution Center<br>Special Master:  Hon. Charles A. Legge (Ret.) |

1

## **TABLE OF CONTENTS**

2   INTRODUCTION ............................................................................................................. 1

3   ARGUMENT .................................................................................................................... 2

4   I.      THE DECISION IN *ATM FEE* CONFIRMS THE LAW OF THIS MDL THAT DAPS'
        CLAIMS ARE BARRED BY ILLINOIS BRICK ................................................ 2

5

6   II.     DAPS' STATE LAW CLAIMS ARE TIME BARRED .......................................... 5

7           A.      DAPs Fail To Plead Fraudulent Concealment With Particularity .......................... 6

8           B.      DAPs Were On At Least Constructive Notice As Of November 8, 2007 .............. 7

9           C.      Cross-Jurisdictional Tolling Does Not Save DAPs' Untimely State Law Claims... 8

10  III.    DAPS' CLAIMS SHOULD BE DISMISSED TO THE EXTENT THAT THEY DO NOT
        ALLEGE PURCHASES IN THE FORUM STATES ......................................... 10

11          A.      Judge Illston Correctly Decided That The Location Of A Purchase Is The
                Dispositive Factor In Determining Whether Standing Exists ............................... 10

12

13          B.      The Same Claims That Fail To Establish Contacts With Relevant States Should
                Also Be Dismissed For Lack Of Prudential Standing ........................................... 13

14  IV.     DAPS HAVE NOT ESTABLISHED ANTITRUST STANDING FOR THEIR STATE
        LAW CLAIMS UNDER ARIZONA, CALIFORNIA, ILLINOIS, MICHIGAN, AND
15      WASHINGTON STATE LAW ......................................................................... 13

16          A.      The *Associated General* Contractors Test Applies Under The State Laws Of
                Arizona, California, Illinois, Michigan And Washington ...................................... 13

17          B.      DAPs' Allegations Fail To Satisfy The *AGC* Test ............................................. 15

18  V.      DAPS' CLAIMS FAIL UNDER THE CONSUMER PROTECTION STATUTES OF
        MASSACHUSETTS AND WASHINGTON ................................................... 17

19

20  VI.     CERTAIN DAPS' UNJUST ENRICHMENT, RESTITUTION, AND CALIFORNIA
        UNFAIR COMPETITION LAW CLAIMS ARE DEFICIENT ........................ 18

21          A.      The Polaroid Plaintiffs Fail To Identify Which State They Rely Upon For Their
                Unjust Enrichment Claims ................................................................................... 18

22

23          B.      Circuit City's Fourth Claim For Relief Should Be Dismissed Because California
                Law Does Not Recognize A Cause Of Action For Restitution Or Unjust
24              Enrichment ......................................................................................................... 19

25          C.      Circuit City, CompuCom, And The Polaroid Plaintiffs Have Not Stated A Claim
                Under California's Unfair Competition Law ......................................................... 19

26

27  VII.    DAPS CANNOT SUE UNDER THE STATUTES OF NEBRASKA, NEVADA, OR
        NEW YORK BASED ON PURCHASES PREDATING THOSE STATES' *ILLINOIS*
        *BRICK* REPEALER AMENDMENTS ............................................................ 20

28

-i-

1

CONCLUSION ........................................................................................................................... 20

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>TABLE OF AUTHORITIES</u>

2

CASES                                                                                          PAGE(S)

3

*Allstate Ins. Co. v. Hague,*

4
    449 U.S. 302 ................................................................................................................ 11

5

*Am. Ad Mgmt., Inc. v. Gen. Tel. Co.,*

6
    190 F.3d 1051 (9th Cir. 1999) ....................................................................................... 15

7

*Arch Electronics, Inc. v. LG Electronics, Inc,*
    No. 07-10664 (S.D.N.Y. Nov. 29, 2007) ........................................................................ 7

8

*Ashcroft v. Iqbal,*

9
    556 U.S. 662 (2009) ....................................................................................................... 6

10

*Associated General Contractors v. California State Council of Carpenters,*
    459 U.S. 519 (1983) ("*AGC*") ........................................................... 1, 13, 14, 15, 16, 17

11

12

*Baker v. Jewel Food Stores, Inc.,*
    823 N.E.2d 93 (Ill. App. 2005) ..................................................................................... 14

13

*Bhan v. NME Hosp., Inc.,*

14
    772 F. 2d 1467 (9th Cir. 1999) ..................................................................................... 15

15

*Blewett v. Abbott Labs.,*

16
    938 P.2d 842 (Wash. App. 1997) .................................................................................. 16

17

*Burns v. Hale & Dorr LLP,*
    445 F. Supp. 2d 94 (D. Mass. 2006) ............................................................................. 18

18

*Butler v. Deutsche Bank Trust Co. Americas,*

19
    No. 12-10337, 2012 WL 3518560 (D. Mass. Aug. 14, 2012) ....................................... 18

20

*by Seaboard Corp. v. March Inc.,*
    284 P.3d 314 (Kan. 2012) ............................................................................................ 10

21

22

*Champion v. Homa,*
    No. 03-275, 2008 WL 900967 (M.D. Ala. March 31, 2008) ......................................... 10

23

*Charles Schwab & Co. v. Bank of Am.,*

24
    No. 10-4913, 2011 WL 1753805 (N.D. Cal. May 9, 2011) ........................................... 19

25

*CompuCom Sys., Inc., v. Hitachi, Ltd.,*
    No. 11-03130 (N.D. Tex. Nov. 14, 2011) ..................................................................... 12

26

27

*Conmar Corp. v. Mitsui & Co.,*
    858 F.2d 499 (9th Cir. 1988) ................................................................................. 6, 7, 8

28

-iii-

DEFENDANTS' JOINT REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AND FOR JUDGMENT ON THE PLEADINGS
AS TO CERTAIN DIRECT ACTION PLAINTIFFS' CLAIMS (3:07-CV-05944 SC, MDL NO. 1917)

*County of Cook v. Philip Morris, Inc.*,
817 N.E.2d 1039 (Ill. 2004) ................................................................. 16, 17

*Crago, Inc. v. Chungwa Picture Tubes, Ltd.*,
No. 07-05944 (N.D. Cal. Nov. 26, 2007) ...................................................... 7

*Dean Foods Co. v. Brancel*,
187 F.3d 609 (7th Cir. 1999) ...................................................................... 11

*E.W. French & Sons, Inc. v. General Portland Inc.*,
885 F. 2d 1392 (9th Cir. 1989) ..................................................................... 7

*Eichman v. Fotomat Corp.*,
880 F.2d 149 (9th Cir. 1989) ...................................................................... 10

*Freeman v. San Diego Ass'n of Realtors*,
322 F.3d 1133 (9th Cir. 2003) .............................................................. 2, 3, 5

*In re ATM Fee Antitrust Litigation*,
686 F.3d 741 (9th Cir. 2012) ("*ATM Fee*") ........................................... 1, 2, 3, 4, 5

*In re Cal. Title Ins. Antitrust Litig.*,
No. 08-01341, 2009 WL 1458025 (N.D. Cal. May 21, 2009) ................................ 20

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
738 F. Supp. 2d 1011 (N.D. Cal. 2010) ........................................... 6, 13, 14, 16, 20

*In re Copper Antitrust Litig.*,
436 F.3d 782 (7th Cir. 2006) ........................................................................ 9

*In re DRAM Antitrust Litig.,*516
F. Supp. 2d 1072 (N.D. Cal. 2007) ...................................................... 9, 14, 15

*In re DRAM Antitrust Litig.*,
536 F. Supp. 2d 1129 (N.D. Cal. 2008) ("*DRAM II*") .................................. 14, 15

*In re Estate of Thomas*,
998 P.2d 560 (Nev. 2000) ......................................................................... 20

*In re Flash Memory Antitrust Litig.*,
643 F. Supp. 2d 1133 (N.D. Cal. 2009) ("*Flash*") ...................................... 14, 15

*In re GPU*
527 F. Supp. 2d ............................................................................ 13, 14, 15

*In re GPU Antitrust Litig.*,
540 F. Supp. 2d 1085 (N.D. Cal. 2007) ("*GPU II*") ..................................... 14, 15

*In re Graphics Processing Units Antitrust Litig.*,
527 F. Supp. 2d 1101 (N.D. Cal. 2007) ("*GPU I*") ........................... 11, 13, 14, 15

-iv-

*In re Linerboard Antitrust Litigation*,
    223 F.R.D. 335 (E.D. Pa. 2004) ............................................................................... 9

*In re Mattel, Inc*,
    588 F. Supp. 2d 1111 (C.D. Cal. 2008)..................................................................... 11

*In re Rezulin Products Liability Litig.*,
    No. 00-2843, 2006 WL 695253 (S.D.N.Y. Mar. 15, 2006) (stating Florida does not
    recognize cross-jurisdictional tolling).................................................................... 10

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
    No. 07- 01819, 2007 WL 4806325 (N.D. Cal. Aug. 30, 2007) ............................... 12

*In re Static Random Access Memory (SRAM) Antitrust Litigation*,
    580 F. Supp. 2d 896 (N.D. Cal. 2008) ................................................... 11, 12, 18

*In re Sugar Indus. Antitrust Litig.*,
    579 F.2d 13 (3d Cir. 1978).............................................................................. 3, 4, 5

*In re TFT-LCD (Flat Panel) Antitrust Litig. ("Interbond")*,
    No. 07-1827, at 3 (N.D. Cal. Jan. 18, 2012) (finding allegations of fraudulent
    concealment to provide tolling "until the DOJ announced its investigation on
    December 11, 2006.") ............................................................................. 5, 8, 11, 12

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    No. 07-1827, 2010 WL 2609434 (N.D. Cal. June 28, 2010)..................................... 11

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    No. 07-1827, 2012 WL 149632 (N.D. Cal. Jan. 18, 2012) ....................... 10, 11, 12

*In re Urethane Antitrust Litig.*,
    663 F. Supp. 2d 1067 (D. Kan. 2009) ........................................................................ 9

*In re Vioxx Products Liability Litig.*,
    522 F. Supp. 2d 799 (E.D. La. 2007) ........................................................................ 9

*In re Vitamins Antitrust Litig.*,
    183 Fed. App'x. 1 (D.C. Cir. 2006) (predicting Florida would not permit cross-
    jurisdictional tolling)............................................................................................... 10

*Jenson v. Allison-Williams Co.*,
    No. 98- 2229, 1999 WL 35133748 (S.D. Cal. Aug. 23, 1999) ............................... 10

*Kanamaru v. Holyoke Mut. Ins. Co.*,
    8 N.E. 2d 759 (Mass. 2008) .................................................................................... 17

*Keilholtz v. Lennox Hearth Products, Inc.*,
    268 F.R.D. 330 (N.D. Cal. 2010) ............................................................................. 11

*Kindt v. Matsushita Electric Industrial Co.,*
    No. 07-10322 (S.D.N.Y. Nov. 13, 2007) ................................................................................ 7

*Lorenzo v. Qualcomm, Inc.,*
    603 F. Supp. 2d 1291 (S.D. Cal. 2009) ............................................................................... 16

*McKensi v. Bank of Am., N.A.,*
    No. 09-11940, 2010 WL 3781841 (D. Mass. Sept. 22, 2010) ................................................ 18

*Meijer, Inc. v. LG Electronics, Inc.,*
    No. 07- 10674 (S.D.N.Y. Nov. 29, 2007) .............................................................................. 7

*Muchnick, Inc. v. Chungwa Picture Tubes, Ltd.,*
    No. 07- 05981 (N.D. Cal. Nov. 27, 2007) ............................................................................. 7

*Munoz v. MacMillan,*
    195 Cal. App. 4th 648 (2011) ............................................................................................... 19

*NicSand, Inc. v. 3M Co.,*
    507 F.3d 442 (6th Cir. 2007) ............................................................................................... 15

*Patterson v. Novartis, Inc.,*
    No. 11-402, at 10-11 (D.R.I. Aug. 28, 2012) ...................................................................... 10

*Pecover v. Electronic Arts, Inc.,*
    No. 08-2820, 2010 WL 8742757 (N.D. Cal. Dec. 21, 2010) ................................................ 11

*Powell v. Ocwen Loan Servicing, LLC,*
    No. 2010-2069, 2012 WL 345665 (Mass. Super. Ct. Jan. 4, 2012) .................................... 18

*Princeton Display Technologies, Inc. v. Chungwa Picture Tubes, Ltd.,*
    No. 07- 05713 (S.D.N.J. Nov. 29, 2007) ............................................................................. 7

*R.C. Dick Geothermal Corp. v. Thermogenesis, Inc.,*
    890 F.2d 139 (9th Cir. 1989) ............................................................................................... 17

*Rhynes v. Stryker Corp.,*
    No. 10-5619, 2011 WL 2149095 (N.D. Cal. May 31, 2011) (Conti, J.) ................................ 19

*Royal Printing Co. v. Kimberly-Clark Corp.,*
    621 F.2d 323 (9th Cir. 1980) ...................................................................................... 2, 3, 4, 5

*Sawyer v. Atlas Heating and Sheet Metal Works, Inc.,*
    642 F.3d 560 (7th Cir. 2011) ................................................................................................. 9

*Senger Bros. Nursery, Inc. v. E.I. DuPont de Nemours & Co.,*
    184 F.R.D. 674 (M.D. Fla. 1999) ......................................................................................... 10

*Silva v. U.S. Bancorp,*
    5:10-cv-01854-JHN, 2011 WL 7096576 (C.D. Cal. Oct. 6, 2011) .......................................... 9

*Sound Appraisal v. Wells Fargo Bank, N.A.*,
717 F. Supp. 2d 940 (N.D. Cal. 2010), *aff'd* 451 Fed. App'x. 648 (9th Cir. 2011)................ 11

*Soward v. Deutsch Bank AG*,
814 F. Supp. 2d 272 (S.D.N.Y. 2011)......................................................................... 9

*State of Washington v. LG Electronics*,
No. 12-2-15842-8 (King County Superior Ct.)......................................................... 18

*Sullivan v. Oracle Corp.*,
662 F.3d 1265 (9th Cir. 2011).............................................................................. 13

*Sutcliffe v. Wells Fargo Bank, N.A.*,
No. 11-06595, 2012 WL 1622665 (N.D. Cal. May 9, 2012)................................................ 11

*Tatum v. Schwartz*,
No. 06-01440, 2007 WL 419463 (E.D. Cal. Feb. 5, 2007)....................................................... 9

*Todd v. F. Hoffman-La Roche, Ltd.*,
No. 98-4574, 2004 WL 5238952 (D. Kan. Aug. 20, 2004) .................................................. 10

*Wang v. OCZ Technology Group, Inc.*,
276 F.R.D. 618 (N.D. Cal. 2011)...................................................................... 11

**STATUTES**

740 Ill. Comp. Stat. Ann. § 10/11 (West 2012) ........................................................... 14

C.P.L.R. § 214.......................................................................................... 6

Kan. Stat. Ann. § 60-512(2) .............................................................................. 6

Miss. Code Ann. § 15-1-49................................................................................. 6

State Laws ............................................................................................ 13

WASHINGTON STATE LAW ................................................................................. 13

**OTHER AUTHORITIES**

Civil Rule 5-1(i) ....................................................................................... 24

Fed. R. Civ. P. 9(b) ..................................................................................... 6

Rule 11 ............................................................................................... 16

Thus, *Clemens* ......................................................................................... 10

**INTRODUCTION**

The Direct Action Plaintiffs' ("DAPs") Opposition (the "Opposition" or "Opp.") is nothing but an attempt to obfuscate DAPs' fundamental pleading deficiencies and lack of standing to bring claims against the Defendants.  To that end, DAPs repeatedly mischaracterize the relevant law and ignore the most basic deficiencies in their complaints.  For example:

- Regarding federal antitrust standing, DAPs blatantly mischaracterize the effect of *In re ATM Fee* on the Report and Recommendation that is the law of this MDL, which establishes that purchasers of finished products incorporating CRTs do not have standing to assert federal claims.  Contrary to DAPs' claims, *In re ATM Fee* supports the reasoning of the Report and Recommendation;

- Regarding the timeliness of their claims, DAPs (a) rely on conclusory allegations of fraudulent concealment that are irrelevant to the question of whether DAPs properly pled fraudulent concealment with particularity with respect to the more than four years between the European Commission's public announcement of its investigation into the alleged CRT conspiracy (November 8, 2007) and the date on which most DAPs filed their complaints (November 14, 2011); and (b) mischaracterize the Ninth Circuit's and various state courts' treatment of so-called "cross-jurisdictional" tolling in an effort to save their untimely claims;

- Regarding their pleading deficiencies in not alleging purchases in the states in which they assert state law claims, DAPs rely on inapposite cases while ignoring the clear and persuasive reasoning of Judge Illston in *In re TFT-LCD Antitrust Litigation*, which is directly on point;

- DAPs also mischaracterize the application of *Associated General Contractors* to Illinois, Michigan, and Arizona law, fail to support their Massachusetts and Washington consumer protection claims, fail to support their claims of unjust enrichment under California law; and fail to support their antitrust claims in Nebraska, Nevada, and New York for purchases predating those states' *Illinois Brick* repealer amendments.

Because of these deficiencies, all of the above claims must be dismissed as a matter of law.

1

**ARGUMENT**

2

**I.      THE DECISION IN *ATM FEE* CONFIRMS THE LAW OF THIS MDL THAT
DAPs' CLAIMS ARE BARRED BY *ILLINOIS BRICK***

3

4

There is very little that remains in dispute with respect to whether the DAP claims must be

5

dismissed for lack of standing under *Illinois Brick*.  It is undisputed that:

6

- As the law of the MDL, the Report and Recommendation Regarding Defendants'
Joint Motion for Summary Judgment [Dkt. No. 1221] (May 31, 2012) ("May 31
Report") requires that DAPs' claims be dismissed.  DAPs do not dispute that their
claims are based on purchases of finished products (not tubes) and are no different
from the claims that the Special Master recommended be dismissed in the May 31
Report.

7

8

9

10

- The only thing that has changed relative to DAPs' lack of standing since the May 31
Report is the Ninth Circuit's decision in *In re ATM Fee Antitrust Litigation*, 686 F.3d
741 (9th Cir. 2012) ("*ATM Fee*").

11

12

- DAPs concede that *ATM Fee* confirms that they are not direct purchasers.  Opp. at 7.
As indirect purchasers, DAPs are barred from bringing federal damages claims unless
they qualify for one of two narrow exceptions to *Illinois Brick* recognized by the
Ninth Circuit.

13

14

15

- Under *ATM Fee*, it is undisputed that DAPs do not meet the co-conspirator exception,
which would only apply if they purchased products from a co-conspirator at a price
that was fixed by defendants.  Opp. at 8 n.5.

16

17

- The only possible basis that remains for DAPs to assert federal antitrust standing,
therefore, is to argue that they somehow qualify for the limited "owned or controlled"
exception recognized by the Ninth Circuit in *Royal Printing Co. v. Kimberly-Clark
Corp.*, 621 F.2d 323 (9th Cir. 1980), and further explained in *Freeman v. San Diego
Ass'n of Realtors*, 322 F.3d 1133 (9th Cir. 2003).

18

19

20

21

- However, DAPs cannot dispute that Your Honor already held in the May 31 Report
that *Royal Printing* does not apply in this MDL because unlike in *Royal Printing*, "the
plaintiffs here never purchased the price-fixed product from anybody."  *See* May 31
Report at 10.

22

23

24

In light of these undisputed points, the sole remaining issue is whether the May 31 Report

25

should be altered based on DAPs' claim that *ATM Fee* expands *Royal Printing* to allow plaintiffs

26

who did not purchase the price-fixed product from anyone to assert antitrust standing under the

27

exception for purchases from owned or controlled affiliates.  This argument has no merit as *ATM*

28

*Fee* did nothing to change the Court's conclusion that plaintiffs who did not purchase the

-2-

1   allegedly price-fixed product from anyone (let alone directly from defendants) lack federal

2   antitrust standing under the strict rules of *Illinois Brick*.  Indeed, *ATM Fee* made it even more

3   difficult, not easier, for DAPs to claim antitrust standing.  *See* Defendants' Notice of Motion &

4   Motion to Adopt Special Master's Report & Recommendation Regarding Defendants' Joint

5   Motion for Summary Judgment & Memorandum of Law in Support Thereof [Dkt. No. 1274]

6   (July 24, 2012) at 2.

7        DAPs effectively conceded this point in their Amici Curiae Brief in *ATM Fee,* where Best

8   Buy, Circuit City, Target, Sears and others argued that *ATM Fee* should be reheard *en banc*

9   because the decision limits (not expands) the reach of the exception to *Illinois Brick* for

10  ownership/control.  *See* Brief for Interested Retailers & the American Antitrust Institute as Amici

11  Curiae Supporting Appellant at 2, *Brennan v. Concord EFS, Inc.*, 686 F.3d 741 (9th Cir. 2012)

12  (No. 10-17354) (attached hereto as Exhibit A) ("Amici Brief").

13       Remarkably, DAPs have now reversed course, claiming that *ATM Fee* expands the Ninth

14  Circuit's application of *Illinois Brick* because it purportedly endorsed *In re Sugar Indus. Antitrust*

15  *Litig.*, 579 F.2d 13 (3d Cir. 1978), and extended *Royal Printing* by establishing a new rule that

16  "the ownership or control exception applies regardless of whether a plaintiff has paid the price-

17  fixed fee directly or the overcharge was passed on to them."  Opp. at 8.  Nothing could be further

18  from the truth.  Instead, as DAPs acknowledged in their Amici Brief, the court in *ATM Fee*

19  refused to extend *Royal Printing* and *Freeman* to situations where plaintiffs try, as DAPs do here,

20  to establish standing by alleging a theory of pass-on.  Indeed, the court in *ATM Fee* made quite

21  clear that it disapproved of pass-on cases such as *Sugar* because they "restrict *Illinois Brick's*

22  influence by allowing an exception when the direct purchaser conspires with the seller, ***even***

23  ***though the price illegally set is an upstream cost that is passed-on to the plaintiffs***.  ***This***

24  ***contradicts*** the Supreme Court's admonition not to carve out exceptions to the [direct purchaser]

25  rule for particular types of markets."  686 F.3d at 757 (emphasis added) (internal quotation marks

26  omitted).

27       Thus, *ATM Fee* does not hold, as DAPs contend, that *Royal Printing* applies if

28  ownership/control exists, but the plaintiff did not purchase the product alleged to be price-fixed.

1    Opp. at 7-8.  Instead, the decision indicates that the Ninth Circuit is opposed to extending the

2    ownership/control exception under those or any other circumstances, even if "meritorious."  *ATM*

3    *Fee*, 686 F.3d at 757.  Indeed, as this Court has previously found, *Royal Printing* did not involve

4    a fact situation in which the plaintiffs purchased a finished product containing the allegedly price-

5    fixed product, and there is no indication in that decision, or in *ATM Fee*, that the Ninth Circuit

6    would endorse such a new exception or find it to be consistent with the rigid rules of *Illinois*

7    *Brick*.  May 31 Report at 10-12.

8         Moreover, the exception articulated in *Royal Printing* has been construed narrowly by the

9    Ninth Circuit, and applied only in the most extreme of circumstances where applying *Illinois*

10   *Brick* would "***eliminate*** the threat of private enforcement," closing off "***every avenue*** for private

11   enforcement of the antitrust laws."  *ATM Fee*, 686 F.3d at 755 (quoting *Royal Printing*, 621 F.2d

12   at 326 n.7, 327) (emphasis added).  In *Royal Printing*, there was no other entity in a position to

13   sue if *Royal Printing's* claims were dismissed on summary judgment.  *Royal Printing*, 621 F.2d

14   327.  *Royal Printing's* circumstances are simply not present here, because there is no danger that

15   a faithful application of *Illinois Brick's* indirect purchaser bar will close off "every avenue for

16   private enforcement of the antitrust laws."[1]

17        Citing to footnote 7 in *ATM Fee*, DAPs argue that they have standing because,

18   purportedly, "*ATM Fee* agreed with the result in" *Sugar* that "[the owned or controlled exception]

19   applies to the purchase of a finished product containing a price-fixed component."  Opp. at 8

20   (citing *ATM Fee*, 686 F.3d at 755 n.7).  This is again the opposite of what DAPs asserted before

21   the Ninth Circuit in their Amici Brief, where they argued:  "[i]n a footnote, the Panel stated its

22   rejection of the Third and Seventh Circuits cases [including *Sugar*] whose holdings reject the

23   Panel's understanding of the applicability of the direct purchaser rule."  Amici Brief at 18.

24   Indeed, footnote 7 in *ATM Fee* is a denunciation, not an endorsement, of Judge Illston's decision

25   to apply *Sugar* to the facts in the *In re TFT-LCD Antitrust Litigation*.  686 F.3d at 755 n.7.  And,

26   it is therefore consistent with, not a negation of, the analysis of this Court in the May 31 Report,

27

28   ───────────────
     [1] As Your Honor is aware, Defendants' separate motion for summary judgment is directed at only
     nine of the thirteen named Direct Purchaser Plaintiffs.

1    similarly rejecting the application of *Sugar* and *In re TFT-LCD*.[2]

2            The fact that *ATM Fee* recognized the continued existence of the ownership-control

3    exception is of no help to DAPs because that exception only applies, as this Court has found,

4    when the allegedly priced-fixed product—and not some other downstream product—is being

5    purchased from an affiliate that is owned or controlled by the defendants.  And rather than

6    expanding that exception any further, as explained above, the *ATM Fee* court made it clear that

7    the exception is to be narrowly construed.  686 F.3d at 757.

8            Finally, there is no merit to DAPs' claim that "*ATM Fee's* discussion of *Freeman*

9    confirms that whether a purchaser paid the price-fixed [sic] is irrelevant to application of the

10   ownership or control exception."  Opp. at 9.  *ATM Fee's* discussion of *Freeman* merely confirms

11   that "*Freeman* did not create a new variation of the *Royal Printing* exception" based solely on

12   deterrence.  *ATM Fee*, 686 F.3d at 756; *see also* Amici Brief at 17 (asserting that *ATM Fee*

13   truncates and restricts *Freeman,* not expands it).  This is consistent with the Special Master's

14   previous ruling that there is no additional exception to the *Illinois Brick* doctrine for deterrence.

15   May 31 Report at 11.

16   **II.      DAPS' STATE LAW CLAIMS ARE TIME BARRED**

17           Starting on November 8, 2007, there was widespread publicity surrounding coordinated

18   antitrust investigations in Europe, Japan, and around the world of an alleged conspiracy involving

19   CRT pricing.  Those investigations prompted various plaintiffs to file a slew of lawsuits within

20   weeks—including one brought just a few days later—making allegations, similar to those asserted

21   by DAPs here, that Defendants were engaged in a conspiracy to fix prices of CRTs.  Yet DAPs,

22   some of the largest and most sophisticated retailers in the United States, who were and are at the

23   same time pursuing claims that some of the same Defendants were engaged in a conspiracy to fix

24   prices of LCDs, inexplicably waited until November 14, 2011—***more than four years later***—to

25

26

27   [2] DAPs also claim that *ATM Fee* grants them standing because the decision "approvingly
     cited Areeda's endorsement of *Sugar's* application of the ownership or control exception."  Opp.
28   at 8.  The citation to Areeda in *ATM Fee*, however, was only to confirm that *Sugar* was decided
     under the owned/controlled, as opposed to the co-conspirator, exception.

1   file their respective lawsuits.[3]

2       DAPs seek to excuse their lack of timeliness by arguing that Defendants fraudulently

3   concealed the basis for their claims.  *See* Opp. at 10-18.  But to save their untimely claims, DAPs

4   would have to allege with particularity facts establishing that Defendants "fraudulently

5   concealed" the basis for DAPs' claims ***during the four year period[4] immediately prior to filing***

6   ***their lawsuits***.  Since DAPs allege no actions by Defendants during that period, their allegations

7   must fail as a matter of law.

8       Similarly misplaced is DAPs' argument that the so-called doctrine of cross-jurisdictional

9   tolling, based on the federal DPP action, applies to certain DAPs state-law claims.  *See* Opp. at

10  18-21.  As a result, nearly all of DAPs' state law claims are time barred and should be dismissed.[5]

11      **A.    DAPs Fail To Plead Fraudulent Concealment With Particularity**

12      A plaintiff "must plead ***with particularity*** the circumstances of the concealment and the

13  facts supporting its due diligence."  *Conmar Corp. v. Mitsui & Co.*, 858 F.2d 499, 502 (9th Cir.

14  1988) (emphasis added); *see also* Fed. R. Civ. P. 9(b).  Conclusory statements are insufficient to

15  satisfy that burden.  *Conmar*, 858 F.2d at 502; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678

16  (2009) ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements

17  of a cause of action will not do.'") (internal quotations omitted).

18      DAPs contend that they have sufficiently pleaded fraudulent concealment because their

19  allegations are analogous to those contained in the DPPs' and IPPs' class complaints.  Opp. at 11-

20  12 (citing *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 738 F. Supp. 2d 1011, 1024 (N.D. Cal.

21  2010)).  But whereas the initial DPP and IPP complaints were filed in November 2007, DAPs

22  inexplicably waited more than ***four years*** before bringing their claims.  DAPs allege no acts by

23  Defendants during the more than four-year period preceding the filing of their Complaints—the

24  [3] The two exceptions are Electrograph's complaint, which was filed on February 18, 2011, and
    Polaroid's complaint, which was filed on November 4, 2011.

25  [4] The claims asserted under the Kansas Restraint of Trade Act and the Mississippi Antitrust Act
    in Target's Amended Complaint, and under the New York Unfair Business Practices Act in

26  Electrograph's complaint, are subject to a three-year limitations period.  Kan. Stat. Ann. § 60-
    512(2); Miss. Code Ann. § 15-1-49; N.Y. C.P.L.R. § 214.

27  [5] *See* Appendix B to Defendants' Motion, which sets forth each of DAPs' state-law antitrust and
    consumer protection claims that are untimely.  Defendants also now accept that DAPs' New York

28  Donnelly Act claim is not time barred due to the pendency of the federal CRT investigation.

1  relevant period for a statute of limitations analysis—to fraudulently conceal facts from DAPs.

2  Rather, all the allegations of purported affirmative conduct by Defendants to "fraudulently

3  conceal" facts are part and parcel of their underlying conspiracy allegations and offer no

4  explanation as to why DAPs—unlike numerous plaintiffs—were unable to uncover their claims

5  against Defendants for another four years.  *See, e.g.,* P.C. Richard Compl. ¶¶ 220-232.

6        DAPs likewise fail to allege any facts suggesting they exercised reasonable diligence (or,

7  in fact, did anything) in the period following the publicity surrounding the coordinated worldwide

8  CRT investigations in November 2007 to uncover the basis for their claims.  *See, e.g.,* Target Am.

9  Compl. ¶¶ 233, 237.[6]  Yet, numerous other plaintiffs were able to investigate, discover their

10  claims, and file lawsuits within weeks of the European Commission's public announcement on

11  November 8, 2007.[7]  *See Conmar*, 858 F.2d at 504 ("Where a plaintiff's suspicions have been or

12  should have been excited, there can be no fraudulent concealment where he could have then

13  confirmed his earlier suspicion by diligent pursuit") (internal quotation marks omitted).

14  Specifically, the first IPP lawsuit was filed on November 13, 2007, and the first DPPs filed a

15  putative class action on November 26, 2007.[8]  Yet DAPs claim, incredibly, that they failed to

16  uncover their claims for another ***four years*** before finally bringing suit on November 14, 2011.

17  The DAP claims simply cannot satisfy the due diligence test.

18      **B.**    **DAPs Were On At Least Constructive Notice As Of November 8, 2007**

19        A plaintiff who is aware or should have been aware of the operative facts that constitute

20  the basis of its cause of action is deemed to have knowledge, and thus cannot rely on the

21  fraudulent concealment doctrine to toll the statutes of limitations on their claims.  *See E.W.*

---

22  [6] Target's allegations of due diligence consist solely of two conclusory statements.  First, that

23  "Plaintiffs had neither actual nor constructive knowledge of the facts supporting their claims for relief despite due diligence in trying to discover the pertinent facts."  Target Am. Compl. ¶ 233;.

24  Second, that "Plaintiffs could not have discovered the alleged contract, conspiracy or combination at an earlier date by the exercise of reasonable diligence because of the deceptive practices and techniques of secrecy employed by Defendants and their co-conspirators."  *Id.* ¶ 237.

25  [7] *See e.g., Kindt v. Matsushita Electric Industrial Co.*, No. 07-10322 (S.D.N.Y. Nov. 13, 2007);

26  *Crago, Inc. v. Chungwa Picture Tubes, Ltd.*, No. 07-05944 (N.D. Cal. Nov. 26, 2007); *Muchnick, Inc. v. Chungwa Picture Tubes, Ltd.*, No. 07- 05981 (N.D. Cal. Nov. 27, 2007); *Arch Electronics, Inc. v. LG Electronics, Inc*, No. 07-10664 (S.D.N.Y. Nov. 29, 2007); *Meijer, Inc. v. LG*

27  *Electronics, Inc.*, No. 07- 10674 (S.D.N.Y. Nov. 29, 2007); *Princeton Display Technologies, Inc. v. Chungwa Picture Tubes, Ltd.*, No. 07- 05713 (S.D.N.J. Nov. 29, 2007).

28  [8] *See Kindt*, No. 07-10322; *Crago*, No. 07-05944.

1    *French & Sons, Inc. v. General Portland Inc.*, 885 F. 2d 1392, 1399 (9th Cir. 1989); *see also*

2    *Conmar*, 858 F.2d at 502 ("Any fact that should excite [plaintiff's] suspicion is the same as actual

3    knowledge of his entire claim.") (internal quotation marks omitted).

4            The European Commission's November 8, 2007 announcement should have alerted DAPs

5    to the existence of their claims.  Regardless of whether DAPs were on actual notice as of that

6    date, they were on constructive notice.  Their claims to the contrary are belied by the many

7    plaintiffs who filed lawsuits in the weeks following the EC's announcement, some within just a

8    few days after that announcement was made.[9]  DAPs either had actual notice of their claims or

9    failed to exercise reasonable diligence.  As Judge Illston has repeatedly held in *LCD*, publicity

10   surrounding antitrust investigations by public enforcement authorities is sufficient to put plaintiffs

11   on at least constructive notice of their claims to start the running of the statute of limitations.  *See,*

12   *e.g., In re TFT-LCD (Flat Panel) Antitrust Litig. ("Interbond"),* No. 07-1827, at 3 n.1 (N.D. Cal.

13   Jan. 18, 2012) (finding allegations of fraudulent concealment to provide tolling "until the DOJ

14   announced its investigation on December 11, 2006.").  The same reasoning applies here, and any

15   tolling of DAPs' untimely state-law claims ended on November 8, 2007, when the

16   announcements were made about the CRT investigations.  Because DAPs waited more than four

17   years after that date—until November 14, 2011—to file their lawsuits, those claims are time

18   barred.

19           **C.      Cross-Jurisdictional Tolling Does Not Save DAPs' Untimely State Law**

20                   **Claims**

21           Failing to properly allege fraudulent concealment, DAPs resort to the specious argument

22   that some of their state law claims should be tolled based on the federal antitrust claim asserted by

23   the putative direct purchaser class through the purported doctrine of cross-jurisdictional tolling.

24   However, DAPs concede that cross-jurisdictional class action tolling does not rescue the majority

25   of their state-law claims.  Although DAPs assert claims under the laws of 17 different states, they

26

27

28   ---

     [9] *See supra* note 7.

argue that cross-jurisdictional tolling applies only to their claims under seven of them.[10]  They make no attempt to argue that the doctrine can save their claims under Arizona, Illinois, Iowa, Michigan, Mississippi, Nebraska, Nevada, New Mexico, North Carolina, or Wisconsin law.  *See Silva v. U.S. Bancorp*, 5:10-cv-01854-JHN, 2011 WL 7096576, at *3 (C.D. Cal. Oct. 6, 2011) ("the Court finds that Plaintiff concedes his recordkeeping claim should be dismissed by failing to address Defendants' arguments in his Opposition."); *Tatum v. Schwartz*, No. 06-01440, 2007 WL 419463, at *3 (E.D. Cal. Feb. 5, 2007) (dismissing complaint on basis that plaintiff "tacitly concede[d] this claim by failing to address defendants' argument in her opposition.").

Despite DAPs' assertions, the remaining six state law claims are equally unsalvageable. DAPs rely on *In re Linerboard Antitrust Litig*ation, 223 F.R.D. 335 (E.D. Pa. 2004), which they fallaciously describe as the "leading decision" to address cross-jurisdictional tolling.[11]  Opp. at 18.  In so doing, DAPs ignore a growing list of federal courts that refuse to apply cross-jurisdictional tolling,[12] guidance from this Court,[13] and, most importantly, controlling Ninth Circuit precedent that would reject the use of cross-jurisdictional tolling for DAPs' six state law claims.  In *Clemens v. DaimlerChrysler Corp.*, the Ninth Circuit held that "[t]he rule of *American*

---

[10] These are: California, Florida, Kansas, Massachusetts, Minnesota, New York, and Washington law.  Opp. at 19.  As noted *supra* in note 5, the New York cross-jurisdictional tolling argument is now moot.

[11] Contrary to DAPs' implication, there is nothing to suggest that *Linerboard*—a Pennsylvania district court decision—is a seminal cross-jurisdictional opinion that is controlling, or even persuasive, here.  *See, e.g., In re Urethane Antitrust Litig.*, 663 F. Supp. 2d 1067, 1081-82 (D. Kan. 2009) (rejecting *Linerboard* factors and holding that "state law alone must govern the application of a tolling principle to a state's statute of limitations.").  Moreover, even if those factors were to be applied here, DAPs' argument that Defendants were put on notice of their state law claims when the first federal law-based DPP complaint was filed is inapposite.  As Judge Easterbrook has written, "state and federal antitrust laws differ.  They create different legal claims.  That the period of limitations may be tolled for one claim (state antitrust law) does not imply that it is tolled for another (federal antitrust law)."  *Sawyer v. Atlas Heating and Sheet Metal Works, Inc.*, 642 F.3d 560, 562 (7th Cir. 2011).

[12] *In re Copper Antitrust Litig.*, 436 F.3d 782, 793-97 (7th Cir. 2006) (holding that *American Pipe* tolling did not apply to save plaintiffs' federal antitrust claims based on a previously filed state class action); *Soward v. Deutsch Bank AG*, 814 F. Supp. 2d 272 (S.D.N.Y. 2011) (refusing  "to import the doctrine into New York's law" after noting that "[o]f the federal courts that have considered this issue, most have refused to extend the doctrine into a state that has yet to consider it"); *In re Vioxx Products Liability Litig.*, 522 F. Supp. 2d 799, 806-15 (E.D. La. 2007) (despite observing that Pennsylvania, Illinois and Puerto Rico all recognized class action tolling, refusing to expand this doctrine without each state "explicitly adopted cross-jurisdictional tolling").

[13] *In re DRAM Antitrust Litig.,*516 F. Supp. 2d 1072, 1102-03 (N.D. Cal. 2007) (court found cross-jurisdictional tolling unavailable in antitrust actions brought under various state laws).

1  *Pipe . . .* does not mandate cross-jurisdictional tolling as a matter of state procedure" and would

2  not "import [cross-jurisdictional] doctrine into state law where it did not previously exist."  534

3  F.3d 1017, 1025 (9th Cir. 2008).  DAPs do not (and cannot) provide any authority that

4  California,[14] Florida,[15] Kansas,[16] Massachusetts,[17] Minnesota,[18] or Washington[19] have expressly

5  adopted cross-jurisdictional tolling.  Thus, *Clemens* dictates that cross-jurisdictional tolling

6  should not be imported into the limitations laws of these six states.

7

8  **III.   DAPS' CLAIMS SHOULD BE DISMISSED TO THE EXTENT THAT THEY DO NOT ALLEGE PURCHASES IN THE FORUM STATES**

9   **A.   Judge Illston Correctly Decided That The Location Of A Purchase Is The Dispositive Factor In Determining Whether Standing Exists**

10  In a series of five decisions beginning in June 2010, Judge Illston examined standing

11  challenges to various complaints filed by direct-action plaintiffs in the LCD case and concluded

12

13  ―――――――――――――――――

14  [14] Despite arguing that cross-jurisdictional tolling is applicable to a California claim, DAPs rely on *Hatfield v. Halifax PLC*, which itself acknowledges that *Clemens* "foreclose[s] application of *American Pipe*." 564 F.3d 1177, 1187-88 (9th Cir. 2009).  But in an attempted slight of hand, DAPs' footnote citation to *Hatfield* purports to support equitable tolling instead of cross-jurisdictional tolling.  Not only has the equitable tolling argument been rejected in *In re TFT-LCD (Flat Panel) Antitrust Litig.,* No. 07-1827, 2012 WL 149632, at *3 (N.D. Cal. Jan. 18, 2012), but the Ninth Circuit rejected applying equitable tolling when a federal and state antitrust claim are at issue.  *Eichman v. Fotomat Corp.*, 880 F.2d 149, 155-56 (9th Cir. 1989) (when a plaintiff chooses to file either a federal or state antitrust remedy first, a plaintiff "may not invoke the doctrine of equitable tolling.").

15  [15] *In re Vitamins Antitrust Litig.*, 183 Fed. App'x. 1 (D.C. Cir. 2006) (predicting Florida would not permit cross-jurisdictional tolling); *In re Rezulin Products Liability Litig.*, No. 00-2843, 2006 WL 695253 (S.D.N.Y. Mar. 15, 2006) (stating Florida does not recognize cross-jurisdictional tolling) (citing *Senger Bros. Nursery, Inc. v. E.I. DuPont de Nemours & Co.*, 184 F.R.D. 674, 680 (M.D. Fla. 1999)).

16  [16] *Todd v. F. Hoffman-La Roche, Ltd.*, No. 98-4574, 2004 WL 5238952 (D. Kan. Aug. 20, 2004) (since no Kansas case was on point, the court found "that because most of the states that have considered the issue have rejected cross-jurisdictional tolling and for very good reason, this court should follow their lead"); *abrogated on other grounds by Seaboard Corp. v. March Inc.*, 284 P.3d 314 (Kan. 2012).

17  [17] *Patterson v. Novartis, Inc.*, No. 11-402, at 10-11 (D.R.I. Aug. 28, 2012) (court declined to apply cross-jurisdictional tolling to a Massachusetts claim as Plaintiffs failed to show that Massachusetts had adopted cross-jurisdictional because "[i]t is not this Court's role sitting in diversity to create new state law in Massachusetts.")

18  [18] DAPs rely on *Jenson v. Allison-Williams Co.*, No. 98- 2229, 1999 WL 35133748 (S.D. Cal. Aug. 23, 1999), which merely assumed Minnesota would apply cross-jurisdictional tolling.  But as noted above, *Clemens* dictates that a court should not read tolling provisions into state law that do not exist.

19  [19] *Champion v. Homa*, No. 03-275, 2008 WL 900967, at *11 (M.D. Ala. March 31, 2008) (declared that cross-jurisdictional class action tolling under *American Pipe* was not available in actions brought under various state securities laws including Washington).

1    that the location of the purchase of a price-fixed good is the dispositive factor in determining

2    whether standing exists.[20]  This line of cases culminated in Judge Illston's decision of August 27,

3    2012, in which she stated that "[t]his Court has consistently held that, for purposes of state law

4    indirect purchaser claims, plaintiffs are deemed to be injured in the states where they ***agreed to***

5    ***pay*** inflated prices for products, not the states where they merely received products."  *TFT-LCD*,

6    2012 WL 3727221, at *3 (N.D. Cal. Aug. 27, 2012) (emphasis added).  Even DAPs must concede

7    that "[i]n antitrust cases involving individuals purchasing consumer products, courts often focus

8    their analysis on where the purchase was made . . . ."  Opp. at 23; *accord In re Graphics*

9    *Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1101, 1028 (N.D. Cal. 2007) ("*GPU I*") (no

10   standing to bring indirect purchaser price-fixing action under California law where no allegations

11   of purchases in California).

12        Rather than follow the standard applicable to price-fixing cases, DAPs rely upon a series

13   of non-price-fixing cases, all of which are irrelevant.  *See* Opp. at 22-23 (citing *Pecover v.*

14   *Electronic Arts, Inc.*, No. 08-2820, 2010 WL 8742757 (N.D. Cal. Dec. 21, 2010) (case brought

15   under Section 2 of the Sherman Act and unrelated to price-fixing); and *Wang v. OCZ Technology*

16   *Group, Inc.*, 276 F.R.D. 618 (N.D. Cal. 2011) (deceptive advertising case where the court

17   expressly stated that the requisite jurisdictional nexus for price-fixing claims was not at issue)).[21]

18   Alternatively, DAPs cite *In re Static Random Access Memory (SRAM) Antitrust Litigation*, 580 F.

19   Supp. 2d 896, 905 (N.D. Cal. 2008), which actually confirms DAPs' obligation to allege

20

21   ---

     [20] *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-1827, 2010 WL 2609434 (N.D. Cal. June
     28, 2010); *TFT-LCD*, 2011 WL 5922966 (N.D. Cal. Nov. 28, 2011); *TFT-LCD*, 2012 WL 149528
22   (N.D. Cal. Jan. 18, 2012); *TFT-LCD*, 2012 WL 149632 (N.D. Cal. Jan. 18, 2012); *TFT-LCD*,
     2012 WL 3727221, at *3 (N.D. Cal. Aug. 27, 2012).
23   [21] *See also Sound Appraisal v. Wells Fargo Bank, N.A.*, 717 F. Supp. 2d 940 (N.D. Cal. 2010),
     *aff'd* 451 Fed. App'x. 648 (9th Cir. 2011) (alleging common law claims for interference with
24   economic advantage and violations of the California UCL arising from an agreement to blacklist
     certain home appraisers); *Dean Foods Co. v. Brancel*, 187 F.3d 609 (7th Cir. 1999) (alleging that
25   state agency improperly applied milk-pricing regulation to out-of-state transactions); *Keilholtz v.*
     *Lennox Hearth Products, Inc.*, 268 F.R.D. 330, 340 (N.D. Cal. 2010) (an unjust enrichment case
26   applying California law where the alleged unlawful conduct occurred in California); *Sutcliffe v.*
     *Wells Fargo Bank, N.A.*, No. 11-06595, 2012 WL 1622665, at *16 (N.D. Cal. May 9, 2012)
27   (alleging claims for, *inter alia*, violations of the California UCL for bank's fraudulent offer made
     in California); *In re Mattel, Inc*, 588 F. Supp. 2d 1111, 1119 (C.D. Cal. 2008) (a products liability
28   case); *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 308 n.11, 315 n.19 (1981) (cited by DAPs for
     dicta in two footnotes discussing application of interest analysis and situs of injury in torts cases).

1    purchases in the relevant forum states.  In that case, Judge Wilken dismissed the plaintiffs' price-

2    fixing claims because, although the plaintiffs "argue[d] that all Plaintiffs' claims are based on

3    conduct that took place in California . . . Plaintiffs have not alleged *specific conduct* that occurred

4    in California."  *Id.* (emphasis added).  The allegations in that case suffered from the same lack of

5    specificity as DAPs' allegations here.[22]

6        For example, in our initial brief, the Defendants explained (on a claim-by-claim basis) that

7    certain DAPs do not make any allegations of a purchase of CRTs or CRT finished products in the

8    relevant states.  Mot. at 17-18.  Costco, for example, brings claims under Arizona, Florida and

9    Illinois law, but merely alleges that it received products at its distribution centers located in those

10   states.  Costco Compl. ¶ 13.  It is not the receipt of products, however, that is the cause of

11   Costco's alleged injury.  As another example, Circuit City alleges that it made "purchases" in

12   Illinois, but the facts alleged by Circuit City have nothing to do with actual purchases.  The fact

13   that Circuit City may have received shipments, taken title, and maintained inventories in Illinois

14   (Circuit City Compl. ¶¶ 9, 22, 265) has nothing to do with the basic question of whether Circuit

15   City made purchases there.

16       Finally, DAPs urge the Court to adopt a "flexible" standard to determine whether standing

17   exists and claim that Judge Illston, for example, considered a multitude of factors when

18   determining whether standing can be achieved.  Opp. at 23-24.  As an initial matter, each of Judge

19   Illston's decisions was decided based on where the purchase took place and no other factor.[23]

20   *TFT-LCD*, 2012 WL 3727221, at *3 (stating that the place "where [plaintiffs] *agreed to pay*

21   inflated prices for products . . . ."  is the applicable test).  Moreover, while it is true that the Due

---

22   [22] *Compare* First Consolidated Amended Complaint ¶¶ 159, 175, 183, *In re Static Random Access
     Memory (SRAM) Antitrust Litig.*, No. 07- 01819, 2007 WL 4806325 (N.D. Cal. Aug. 30, 2007)
23   (alleging that "Defendants' contract, combination, or conspiracy" and "business acts and
     practices" were "centered in, carried out, effectuated and perfected mainly in the State of
24   California") *with, e.g.* CompuCom Compl. ¶¶ 173, 176, *CompuCom Sys., Inc., v. Hitachi, Ltd.*,
     No. 11-03130 (N.D. Tex. Nov. 14, 2011) [Dkt. No. 1] ("[t]he indictment states that the
25   combination and conspiracy to fix the prices of CRTs was carried out, in part, in California").
26   [23] *See TFT-LCD*, 2012 WL 149632, at *4 (considering not just the location of Office Depot's
     headquarters, but also the fact that Office Depot's purchase order emanated from that location in
27   concluding that Office Depot's "purchase of allegedly price-fixed goods" took place in Florida);
     *TFT-LCD*, 2011 WL 5922966, at *2 (concluding that "Costco's purchasing process was
     controlled from Washington"); *TFT-LCD*, 2012 WL 3727221, at *4 ("The undisputed evidence
28   shows that AT&T Mobility agreed to pay allegedly inflated prices in Georgia, not Tennessee.").

Process Clause does not impose a single test to be applied in all cases, it certainly does not allow the imposition of multiple tests to be applied in either a single case or a single type of case.  Such use of multiple tests would be inherently "arbitrary" and "fundamentally unfair," precisely the result that the Due Process Clause seeks to avoid.  *Sullivan v. Oracle Corp.*, 662 F.3d 1265, 1271 (9th Cir. 2011).  Based on this, even DAPs recognize that "courts often focus their analysis on where the purchase was made . . . ."  Opp. at 23.  When that standard is applied here, it is apparent that the claims identified in Appendix C to our motion should be dismissed.

> **B.      The Same Claims That Fail To Establish Contacts With Relevant States Should Also Be Dismissed For Lack Of Prudential Standing**

We also demonstrated in our opening Memorandum ("Mem.") that the same state-law claims that fail to establish contacts with relevant states should also be dismissed for lack of prudential standing.  Specifically, the DAP claims identified in Appendix C do not fall within the "zone of interests" identified in each state's statutes authorizing antitrust claims, each of which is designed to remedy conspiracies that affect commerce ***within*** each of the respective states.  This prudential limitation on the scope of each state's antitrust law is reflected in the statutes listed in footnote 23 of our Memorandum.  DAPs provide no meaningful response to this argument.

## IV.     DAPS HAVE NOT ESTABLISHED ANTITRUST STANDING FOR THEIR STATE LAW CLAIMS UNDER ARIZONA, CALIFORNIA, ILLINOIS, MICHIGAN, AND WASHINGTON STATE LAW

> **A.      The *Associated General Contractors* Test Applies Under The State Laws Of Arizona, California, Illinois, Michigan And Washington**

DAPs' claims must also be dismissed for lack of antitrust standing under the laws of five of the states at issue.  DAPs' Opposition concedes that the antitrust standing principles articulated in *Associated General Contractors v. California State Council of Carpenters*, 459 U.S. 519 (1983) ("*AGC*"), apply under both California and Washington law.  Opp. at 26 (citing *In re CRT Antitrust Litig.*, 738 F. Supp. 2d 1011, 1023).  DAPs maintain, however, that *AGC* should not apply under Illinois, Michigan and Arizona law, purportedly because other courts in this district have stated that "it would be wrong for a district court judge, in *ipse dixit* style . . . to pronounce a blanket and nationwide revision of all state antitrust law."  Opp. at 26 (citing *GPU I*, 527 F. Supp.

1  2d at 1026.  Defendants, however, are not advocating any such "blanket" rule, and have rather

2  moved very narrowly as to those particular states that have either (i) expressly applied *AGC* in

3  determining antitrust standing under their state laws (*e.g.*, Michigan and Illinois), or (ii) enacted

4  harmonization provisions dictating that their states' antitrust statues be construed in accordance

5  with federal law (*e.g.*, Michigan, Illinois, and Arizona).  *See* Mem. at 24-25 and n. 24-25.  This

6  targeted approach obviates the need for the Court to "to undertake the back-breaking labor

7  involved in deciphering the state of antitrust standing" in a multitude of states.  *See In re GPU*

8  *Antitrust Litig.*, 540 F. Supp. 2d 1085, 1097 (N.D. Cal. 2007) ("*GPU II*").[24]  Notably, DAPs have

9  failed to come forward with *any* contrary authority from any of the jurisdictions challenged by

10  Defendants with respect to antitrust standing.[25]

11          Instead, DAPs complain that there is "not a clear directive" from these states because not

12  all of the cited authority emanates from the states' *highest courts* or its legislatures.  Opp. at 26-

13  27.  This argument is unavailing.  The Court in this case has already looked to intermediate

14  appellate authority from California in concluding that *AGC* applies under the Cartwright Act.  *In*

15  *re CRT Antitrust Litig.*, 738 F. Supp. 2d at 1023.  And, DAPs bury in a footnote this District's

16  well-reasoned, state-by-state application of *AGC* in *In re DRAM Antitrust Litig.*, 516 F. Supp. 2d

17  1072, 84-93 (N.D. Cal. 2007) ("*DRAM I*") and *In re DRAM Antitrust Litig.*, 536 F. Supp. 2d

18  1129, 1135 (N.D. Cal. 2008) ("*DRAM II*").  DAPs do not, and cannot, explain why state law

19  directly on point, or a state statutory provision that "harmonizes" a state statute with federal case

20  law, would not be sufficient.[26]  Thus, Judge Hamilton's well-reasoned position in *DRAM*—

---

21  
22  [24] DAPs neglect to mention that the *GPU I* court found a state's harmonization provision to be a
    sufficient basis upon which to apply *AGC* under that state's antitrust law (in that case, West
    Virginia).  *In re GPU* 527 F. Supp. 2d at 1025.

23  [25] While DAPs acknowledge that Illinois has a harmonization provision, they maintain
    nonetheless that federal decisions need only be applied by Illinois courts if they are found
24  "persuasive."  Opp. at 27 (citing *Baker v. Jewel Food Stores, Inc.*, 823 N.E.2d 93, 101 (Ill. App.
    2005).  Defendants, however, have cited both Illinois law expressly applying *AGC*, *see* Mem. at
25  24 n. 24, as well as the harmonization provision itself, which states that Illinois' courts "*shall* use
    the construction of the federal law by the federal courts as a guide in construing" the Illinois
26  Antitrust Act.  *See* 740 Ill. Comp. Stat. Ann. § 10/11 (West 2012) (emphasis added).
    [26] The cases cited by DAPs are themselves inconsistent as to what would constitute such "clearer
27  directive."  *Compare GPU II*, 540 F. Supp. 2d at 1097 (requiring express guidance from a state's
    *highest* court) *with In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1151 (N.D. Cal.
28  2009) ("*Flash*") (finding a state's intermediate appellate courts to be binding, absent "*convincing
    evidence* that the state's supreme court likely would not follow it.") (emphasis added).

-14-

1  relying upon the courts and legislatures of the states themselves—is the proper approach to this

2  issue. *DRAM I*, 516 F. Supp. 2d at 1094-95. Indeed, Judge Hamilton specifically applied *AGC* to

3  claims under both Michigan and Arizona law (and DAPs mislead the Court by claiming that

4  Arizona was not among the states at issue in *DRAM*). *Compare* Opp. at 27 n. 30; *with DRAM I*,

5  516 F. Supp. 2d at 1095.[27]

6        **B.**     **DAPs' Allegations Fail To Satisfy The *AGC* Test**

7        As purchasers and resellers of finished products containing CRTs, and not CRTs

8  themselves, DAPs have failed to plead "antitrust injury" (the first and most critical of the *AGC*

9  factors). Decades of Ninth Circuit precedent, as well as *AGC* itself, clearly require that a plaintiff

10  be a participant *in the allegedly restrained market* in order to prove "antitrust injury." *See Bhan*

11  *v. NME Hosp., Inc.,* 772 F. 2d 1467, 1470 (9th Cir. 1999) ("the injured party [must] be a

12  participant in the *same* market as the alleged malefactors") (emphasis added); *Am. Ad Mgmt., Inc.*

13  *v. Gen. Tel. Co.*, 190 F.3d 1051, 1057 (9th Cir. 1999) ("[p]arties whose injuries . . . are

14  experienced in another market *do not suffer antitrust injury*") (emphasis added). The allegedly

15  restrained market in this case is the market for standalone CRT tubes, and DAPs do not and

16  cannot purport to be participants in that market. Nor have DAPs shown that their allegations

17  meet either of the categories for market participation enumerated by the Ninth Circuit (*i.e.*, that

18  the televisions and computer monitors bought and resold by the plaintiffs are "reasonably

19  interchangeable," or experience "cross-elasticity of demand," with CRTs). *See, e.g., Bhan*, 772

20  F.2d at 1470-71; *DRAM II*, 536 F. Supp. 2d at 1139-41.

21        Ignoring this well-settled Ninth Circuit law, DAPs instead focus on Judge Conti's opinion

22  in an earlier stage of these proceedings with respect to the IPPs. Opp. at 27-28. DAPs' reliance

23  on this early decision from the MDL is misplaced for several reasons. *First*, Judge Conti's entire

24

25  [27] Moreover, the few decisions in this District that have been "reticent" to apply the *AGC* test on a
state-by-state basis did *not* pronounce a general rule that *AGC* does not apply under state law.
26  *See, e.g., Flash*, 643 F. Supp. 2d at 1150-53. One of these courts simply chose to put off the
issue, and later noted that "[i]t may yet prove correct to apply the [*AGC*] test." *See GPU I*, 527 F.
27  Supp. 2d at 1026; *GPU II*, 540 F. Supp. 2d at 1097. However, the proper approach is to decide
*AGC* now, as standing is a threshold issue of antitrust pleading. *See AGC*, 459 U.S. at 521;
28  *NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 450 (6th Cir. 2007) ("antitrust standing is a threshold,
pleading-stage inquiry").

1  decision was premised on the fiction perpetuated by the class plaintiffs at that time that there was

2  a nebulous, overarching "finished products conspiracy."  *See In re CRT Antitrust Litig.*, 738 F.

3  Supp. 2d at 1017.  Special Master Legge recommended that Defendants' Rule 11 motion on this

4  issue be granted, and the DPPs and IPPs have both withdrawn their "finished product conspiracy"

5  claims.  DAPs here have similarly conceded that they do not and cannot allege any such

6  multifaceted conspiracy affecting multiple markets.  *See* Iovieno Ltr. at 1-2 [Dkt. No. 1317-5]/

7      *Second*, two of the states at issue here, Illinois and Washington, are not even implicated in

8  the MDL.  Because antitrust standing is predicated on the scope of the individual *Illinois Brick*

9  repealer states' laws, it is dispositive that both Illinois and Washington preclude a finding of

10  antitrust standing in these circumstances.  *See County of Cook v. Philip Morris, Inc.*, 817 N.E.2d

11  1039, 1045 (Ill. 2004) (dismissing amended complaint upon finding that plaintiffs had not shown

12  antitrust injury, citing *AGC*); *Blewett v. Abbott Labs.*, 938 P.2d 842 (Wash. App. 1997) (denying

13  antitrust standing to indirect purchasers).

14      *Third*, DAPs cannot survive dismissal simply by pointing to allegations made by the IPPs,

15  who represent an entirely different, end-consumer market that is separate and distinct from the

16  retailer market in which Plaintiffs operate.  Moreover, contrary to their claims (Opp. at 27), DAPs

17  here have not asserted the same allegations as those made by the IPPs in the MDL.  For example,

18  they have not alleged that standalone CRT tubes account for a specific percentage of the cost of

19  manufacturing the finished product, or that the standalone CRT tubes are components that "can

20  easily be traced."  *Compare* DAPs' Complaints; *with* IPP Compl. ¶ 228-30, 231.  While DAPs

21  have alleged, in a feeble attempt to conjure up "antitrust injury," that the markets for standalone

22  CRTs and the markets for finished products containing CRTs are "inseparable" and/or

23  "inextricably intertwined," these conclusory assertions are not nearly enough to establish a

24  plausible antitrust injury.  Indeed, the "simple invocation of the phrase 'inextricably intertwined'

25  will not allow a plaintiff to avoid the fundamental requirement" of antitrust injury.  *Lorenzo v.*

26  *Qualcomm, Inc.*, 603 F. Supp. 2d 1291, 1301 (S.D. Cal. 2009).

27      DAPs have also failed to satisfy the remaining *AGC* factors.  *See* Mem. at 29-32.  DAPs

28  have not made any allegations to support a "causal connection" between their alleged injury and

-16-

1    the anticompetitive conduct that is alleged to have occurred in the separate market for CRT tubes.

2    *AGC*, 459 U.S. at 540; *see also R.C. Dick Geothermal Corp. v. Thermogenesis, Inc.*, 890 F.2d

3    139, 147 (9th Cir. 1989); *County of Cook v. Philip Morris, Inc.*, 817 N.E.2d at 1045.  Moreover,

4    DAPs' claims are inherently speculative, their apportionment would be unreasonably complex,

5    and to allow them would run the risk of duplicative recovery.  DAPs maintain that simply because

6    the states at issue repealed the *categorical* bar on recovery set forth in *Illinois Brick*, 431 U.S. at

7    720, these states are not concerned about the complexity of proving up damages.  Opp. at 33-34.

8    A state law plaintiff, though, does not automatically obtain antitrust standing simply by being an

9    "indirect purchaser" in an "*Illinois Brick* repealer state."  Indeed, DAPs' argument ignores that

10   courts in repealer states routinely apply *AGC in its totality* in finding that indirect purchaser suits

11   may only proceed where plaintiffs' claims are not inherently speculative and unreasonably

12   complex.  *See* Mem. at 30-32.  Here, DAPs' allegations only emphasize the complexity of

13   tracking any alleged overcharge through multiple manufacturing and distribution channels, and of

14   disaggregating any alleged overcharge from the myriad other components that make up a

15   television.  In short, DAPs have not shown that their claims meet the "strong interest" in "keeping

16   the scope of complex antitrust trials within judicially manageable limits."  459 U.S. at 543-44.

17
18   **V.     DAPS' CLAIMS FAIL UNDER THE CONSUMER PROTECTION STATUTES OF
         MASSACHUSETTS AND WASHINGTON**

19          This Court has twice before dismissed claims for failure to comply with the requirements

20   of the Massachusetts consumer protection statute, and should do so again here.[28]  DAPs failed to

21   allege that they served a "written demand for relief" on Defendants as required under the statute.

22   *See* Mass. G.L. c. 93A, § 9(3).  The prerequisites to suit set forth in the statute are unambiguous,

23   and DAPs' failure to comply with them mandates dismissal of their consumer protection claim.

24   *See, e.g.*, *Kanamaru v. Holyoke Mut. Ins. Co.*, 8 N.E. 2d 759, 768 (Mass. 2008) (a "plaintiff *must*

25   . . . plead that he has complied with this [demand letter] requirement as a prerequisite to suit.")

26   _____

27   [28] *See* Report, Recommendations and Tentative Rulings Regarding Defendants' Motions to
     Dismiss [Dkt. No. 597] (Feb. 5, 2010) at 29-30; Report, Recommendations and Tentative Rulings
     Regarding Defendants' Joint Motion to Dismiss the Second Consolidated Amended Complaint of

28   the Indirect Purchaser Plaintiffs [Dkt. No. 768] (Sept. 30, 2010) at 12-14.

1   (emphasis added).  DAPs attempt to skirt this bright-line rule by citing inapposite case law[29] and

2   declaring that they sent Defendants the required demand letters.  Here too, however, DAPs violate

3   the Massachusetts statute, sending the required letters on November 14, 2011, *the same day* they

4   served their Complaint, rather than the required 30 days before.

5           DAPs also attempt to obfuscate Washington courts' adherence to the straightforward rule

6   of *Illinois Brick*.  Indeed, DAPs themselves concede that "Washington law does not authorize

7   private indirect purchasers to initiate suit" under the Washington Consumer Protection Act.  Opp.

8   at 35.  What is more, DAPs cannot avoid this clear bar by attempting to bootstrap Costco's claim

9   to the Washington Attorney General's suit, a separate case naming different defendants.  *State of*

10  *Washington v. LG Electronics*, No. 12-2-15842-8 (King County Superior Ct.).  Finally, this Court

11  has already held that Costco's lack of standing is not cured by any of the recognized exceptions to

12  *Illinois Brick*.[30]

13  **VI.   CERTAIN DAPS' UNJUST ENRICHMENT, RESTITUTION, AND CALIFORNIA**
14  **        UNFAIR COMPETITION LAW CLAIMS ARE DEFICIENT**

15      **A.    The Polaroid Plaintiffs Fail To Identify Which State They Rely Upon For**
            **Their Unjust Enrichment Claims**

16          Because the elements of unjust enrichment vary by state (and because unjust enrichment

17  does not even exist in certain states), courts regularly require plaintiffs to identify ***in their***

18  ***complaints*** the state or states they rely upon for their unjust enrichment claims.  *See, e.g.*, *In re*

19  *Static Random Access Memory (SRAM) Antitrust Litig.*, 580 F. Supp. 2d at 910 (granting

20  defendants' motion to dismiss unjust enrichment claims and stating that "until Plaintiffs indicate

21  which States' laws support their claim, the Court cannot assess whether the claim has been

22  adequately plead").  In their brief, the Polaroid Plaintiffs argue that their unjust enrichment claims

23

24  ─────────────────────
    [29] None of the cases cited by DAPs squarely address the demand letter allegation requirement.
25  *See Burns v. Hale & Dorr LLP*, 445 F. Supp. 2d 94 (D. Mass. 2006) (discussing demand letter
    timing); *Butler v. Deutsche Bank Trust Co. Americas*, No. 12-10337, 2012 WL 3518560 (D.
26  Mass. Aug. 14, 2012) (analyzing whether defendant held asset in state); *McKensi v. Bank of Am.,*
    *N.A.*, No. 09-11940, 2010 WL 3781841 (D. Mass. Sept. 22, 2010) (discussing demand letter
27  timing); *Powell v. Ocwen Loan Servicing, LLC*, No. 2010-2069, 2012 WL 345665 (Mass. Super.
    Ct. Jan. 4, 2012) (analyzing whether defendant maintained place of business in state).
28  [30] *See* Report and Recommendation Regarding Defendants' Joint Motion For Summary Judgment
    [Dkt. No. 1221] (May 31, 2012) at 12.

arise under the laws of Minnesota and California.  This argument finds no support in their actual complaint and, as a result, must be rejected.[31]

**B.     Circuit City's Fourth Claim For Relief Should Be Dismissed Because California Law Does Not Recognize A Cause Of Action For Restitution Or Unjust Enrichment**

Circuit City invites this Court to follow the minority view in holding that unjust enrichment and restitution claims are valid theories of recovery under California law.  This Court should reject this invitation; instead, it should follow the majority rule and trend in California. *See, e.g.*, *Munoz v. MacMillan*, 195 Cal. App. 4th 648, 661 (2011) ("There is no freestanding cause of action for "restitution" in California"); *Charles Schwab & Co. v. Bank of Am.*, No. 10-4913, 2011 WL 1753805, at *5 (N.D. Cal. May 9, 2011) (describing stand-alone unjust enrichment claim under California law as "a minority view").  Circuit City is mistaken when it argues that it is too early in this litigation to determine whether adequate legal remedies are available to it.  Opp. at 38 n. 50.  As recognized by Judge Conti in 2011, "[w]here the claims pleaded by a plaintiff *may* entitle her to an adequate remedy at law, equitable relief is unavailable." *Rhynes v. Stryker Corp.*, No. 10-5619, 2011 WL 2149095, at *4 (N.D. Cal. May 31, 2011) (Conti, J.) (emphasis added).  Circuit City seeks relief under the Cartwright Act, and that statute provides an entirely adequate remedy at law.

**C.     Circuit City, CompuCom, And The Polaroid Plaintiffs Have Not Stated A Claim Under California's Unfair Competition Law**

Circuit City, CompuCom, and the Polaroid Plaintiffs do not dispute the fact that, if their antitrust claims are dismissed from this action, then their claims under the California Unfair Competition Law ("UCL") should also be dismissed.  Opp. at 38.  They simply assert that they have adequately pleaded their antitrust claims.  Circuit City, CompuCom, and the Polaroid Plaintiffs also do not dispute the fact that their fraudulent concealment allegations are linked to their antitrust allegations.  Opp. at 39.  To the extent that the Court dismisses these companies' antitrust claims, their fraudulent concealment allegations are not enough to support a claim under

---

[31] In any event, California law does not recognize a cause of action for unjust enrichment as established *infra* in Section IV(B)

1   the UCL.  *See* Mem. at 37 (citing *In re Cal. Title Ins. Antitrust Litig.*, No. 08-01341, 2009 WL

2   1458025, at *8 (N.D. Cal. May 21, 2009) (dismissing both antitrust and "fraudulent" UCL claims

3   because the UCL claims were based on the antitrust claims).

### VII.   DAPS CANNOT SUE UNDER THE STATUTES OF NEBRASKA, NEVADA OR NEW YORK[32] BASED ON PURCHASES PREDATING THOSE STATES' *ILLINOIS BRICK* REPEALER AMENDMENTS

The Court has already held, in the context of the CRT class case, that indirect purchasers

lack standing to bring claims under either Nebraska or Nevada law if the purchase predated those

state's respective *Illinois Brick* repealer statute.  *In re Cathode Ray Tube (CRT) Antitrust Litig.*,

738 F. Supp. 2d at 1025.  DAPs urge the Court to reverse its position, but they cite the same

Nebraska and Nevada authorities that the Special Master and the Court considered in making that

order.  Opp. at 40.  With respect to Nebraska, DAPs rely principally on *Arthur v. Microsoft Corp.*,

an opinion that does not even mention the Junkin Act, the statute DAPs invoke here.  676 N.W.2d

29 (Neb. 2004).   Moreover, the majority opinion in *Arthur* does not discuss Nebraska's 2002

repealer amendment, let alone analyze whether the amendment applies retroactively.  DAPs also

cite *Kanne v. Visa U.S.A., Inc.*, but ignore its numerous statements that indirect purchasers were

barred from recovering under the Junkin Act until the Nebraska Legislature amended the statute

in 2002.  723 N.W.2d 293, 300 (Neb. 2006).  Regarding Nevada, DAPs ignore controlling

authority from the Nevada Supreme Court, holding that statutes apply prospectively only, absent

"clear[], strong[], and imperative[]" language to the contrary.  *In re Estate of Thomas*, 998 P.2d

560, 562 (Nev. 2000).  DAPs cite to no such language, and provide no reason for the Court to

diverge from its earlier holding that indirect purchasers lack standing to bring claims based on

purchases predating the repealer.

### CONCLUSION

For the foregoing reasons, the aforementioned DAP claims should be dismissed with

prejudice, or as applicable judgment entered in favor of Defendants on the pleadings.

---

[32] DAPs concede that they lack standing to assert claims under New York's Donnelly Act based on purchases made before December 23, 1998.  *See* Opp. at p. 39, n.51.  Accordingly, the Court should dismiss all such claims by Sears, Target, Electrograph, CompuCom and P.C. Richard.

Dated:  October 26, 2012

Respectfully Submitted,

By:_____/s/ Jon V. Swenson_____
Jon V. Swenson (SBN 233054)
**BAKER BOTTS L.L.P.**
1001 Page Mill Road
Building One, Suite 200
Palo Alto, CA 94304-1007
Telephone: (650) 739-7500
Facsimile: (650) 739-7699
Email: jon.swenson@bakerbotts.com

John M. Taladay (*pro hac vice*)
David T. Emanuelson (*pro hac vice*)
**BAKER BOTTS L.L.P.**
1299 Pennsylvania Ave., N.W.
Washington, DC 20004-2400
Telephone: (202) 639-7700
Facsimile: (202) 639-7890
Email: john.taladay@bakerbotts.com
Email: david.emanuelson@bakerbotts.com

*Attorneys for Defendants Koninklijke Philips*
*Electronics N.V. and Philips Electronics North*
*America Corporation*

O'MELVENY & MYERS LLP

By:_____/s/ Ian Simmons_____
IAN SIMMONS (*pro hac vice*)
Email: isimmons@omm.com
BENJAMIN G. BRADSHAW (SBN 189925)
Email: bbradshaw@omm.com
KEVIN D. FEDER (SBN 252347)
Email: kfeder@omm.com
**O'MELVENY & MYERS LLP**
1625 Eye Street, NW
Washington, DC 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414

*Attorneys for Defendants Samsung Electronics*
*Co., Ltd. and Samsung Electronics America,*
*Inc.*

-21-

1

2

SHEPPARD MULLIN RICHTER &
HAMPTON

3

By:_____/s/ Gary L. Halling_____
GARY L. HALLING (SBN 66087)
E-mail: ghalling@sheppardmullin.com
JAMES L. MCGINNIS (SBN 95788)
E-mail: jmcginnis@sheppardmullin.com
MICHAEL W. SCARBOROUGH, (SBN
203524)
E-mail: mscarborough@sheppardmullin.com
**SHEPPARD MULLIN RICHTER &
HAMPTON**
Four Embarcadero Center, 17th Floor
San Francisco, California  94111
Telephone:  (415) 434-9100
Facsimile:  (415) 434-3947
*Attorneys for Defendants Samsung SDI
America, Inc.; Samsung SDI Co., Ltd.;
Samsung SDI (Malaysia) SDN. BHD.; Samsung
SDI Mexico S.A. DE C.V.; Samsung SDI Brasil
Ltda.; Shenzen Samsung SDI Co., Ltd. and
Tianjin Samsung SDI Co., Ltd.*

4

5

6

7

8

9

10

11

12

13

14

15

MORGAN, LEWIS & BOCKIUS LLP

16

By:_____/s/ Kent M. Roger_____
KENT M. ROGER (SBN 95987)
E-mail: kroger@morganlewis.com
MICHELLE PARK CHIU (SBN 248421)
E-mail: mchiu@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
One Market, Spear Street Tower
San Francisco, California 94105-1126
Telephone: (415) 442-1000
Facsimile: (415) 442-1001

17

18

19

20

21

J. CLAYTON EVERETT, JR. (*pro hac vice*)
E-mail: jeverett@morganlewis.com
SCOTT A. STEMPEL (*pro hac vice*)
E-mail: sstempel@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
111 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone: (202) 739-3000
Facsimile: (202) 739-3001

22

23

24

25

26

*Attorneys for Defendants Hitachi, Ltd., Hitachi
Displays, Ltd. (n/k/a Japan Display East, Inc.),
Hitachi Asia, Ltd., Hitachi America, Ltd., and
Hitachi Electronic Devices (USA), Inc.*

27

28

1                             WHITE & CASE LLP

2                             By:    /s/ Christopher M. Curran

CHRISTOPHER M. CURRAN (*pro hac vice*)
E-mail: ccurran@whitecase.com
GEORGE L. PAUL (*pro hac vice*)
E-mail: gpaul@whitecase.com
LUCIUS B. LAU (*pro hac vice*)
E-mail: alau@whitecase.com
**WHITE & CASE LLP**
701 Thirteenth Street, N.W.
Washington, DC 20005
Telephone: (202) 626-3600
Facsimile: (202) 639-9355

*Attorneys for Defendants Toshiba Corporation,
Toshiba America, Inc., Toshiba America
Information Systems, Inc., Toshiba America
Consumer Products, L.L.C., and Toshiba
America Electronic Components, Inc.*

WINSTON & STRAWN LLP

By:    /s/ Jeffrey L. Kessler

JEFFREY L. KESSLER (pro hac vice)
E-mail: JKessler@winston.com
A. PAUL VICTOR (pro hac vice)
E-mail: PVictor@winston.com
EVA COLE (pro hac vice)
E-mail: EWCole@winston.com
MOLLY M. DONOVAN
E-mail: MMDonovan@winston.com
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, NY 10166
Telephone: (212) 294-6700

STEVEN A. REISS (pro hac vice)
E-mail: steven.reiss@weil.com
DAVID L. YOHAI (pro hac vice)
E-mail: david.yohai@weil.com
ADAM C. HEMLOCK (pro hac vice)
E-mail: adam.hemlock@weil.com
**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, New York 10153-0119
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*Attorneys for Defendants Panasonic
Corporation (f/k/a Matsushita Electric
Industrial Co., Ltd.), Panasonic Corporation of
North America, MT Picture Display Co., Ltd.*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ARNOLD & PORTER LLP

By: _____/s/ Sharon D. Mayo_____
SHARON D. MAYO (SBN 150469)
sharon.mayo@aporter.com
Three Embarcadero Center, 7th Floor
San Francisco, California  94111-4024
Telephone:  (415) 471-3100
Facsimile:  (415) 471-3400

DOUGLAS L. WALD (*pro hac vice*)
douglas.wald@aporter.com
WILSON D. MUDGE (*pro hac vice*)
wilson.mudge@aporter.com
YONGSANG KIM (*pro hac vice*)
yongsang.kim@aporter.com
**ARNOLD & PORTER LLP**
555 Twelfth Street, NW
Washington, DC  20004
Telephone:  (202) 942-5000
Facsimile:  (202) 942-5999

*Attorneys for Defendants LG Electronics, Inc.;
and LG Electronics USA, Inc.*

GIBSON, DUNN & CRUTCHER LLP

By: ___/s/ Rachel S. Brass_____
Joel S. Sanders (SBN 107234)
Rachel S. Brass (SBN 219301)
Austin V. Schwing (SBN 211696)
Joel Willard (SBN 247899)
**GIBSON, DUNN & CRUTCHER LLP**
555 Mission Street, Suite 3000
San Francisco, California 94105
Tel: (415) 393-8200
Fax: (415) 393-8306
jsanders@gibsondunn.com
rbrass@gibsondunn.com

*Attorneys for Defendant Chunghwa Picture
Tubes, Ltd. as to the Target Am. Compl., P.C.
Richard Compl., Tweeter Compl., CompuCom
Compl., Interbond Compl., Costco Compl.,
Office Depo Compl. and Best Buy Compl. only*

Pursuant to Local Civil Rule 5-1(i), the filer attests that concurrence in the filing of this

document has been obtained from each of the above signatories.

-24-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 26, 2012, I electronically filed Defendants' Joint Reply Memorandum in Support of Motion to Dismiss and For Judgment on the Pleadings as to Certain Direct Action Plaintiffs' Claims with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the counsel of record in this matter who are registered on the CM/ECF system.

<u>/s/ Jon V. Swenson</u>
Jon V. Swenson