1    SHEPPARD MULLIN RICHTER & HAMPTON LLP
       A Limited Liability Partnership
2      Including Professional Corporations
     GARY L. HALLING, Cal. Bar No. 66087
3    JAMES L. McGINNIS, Cal. Bar No. 95788
     MICHAEL W. SCARBOROUGH, Cal. Bar No. 203524
4    Four Embarcadero Center, 17th Floor
     San Francisco, California  94111-4106
5    Telephone:    415-434-9100
     Facsimile:    415-434-3947
6    E-mail:    ghalling@sheppardmullin.com
                jmcginnis@sheppardmullin.com
7                mscarborough@sheppardmullin.com

8    Attorneys for Defendants
     SAMSUNG SDI AMERICA, INC.,
9    SAMSUNG SDI CO., LTD.,
     SAMSUNG SDI (MALAYSIA) SDN. BHD.,
10   SAMSUNG SDI MEXICO S.A. DE C.V.,
     SAMSUNG SDI BRASIL LTDA.,
11   SHENZHEN SAMSUNG SDI CO., LTD. and
     TIANJIN SAMSUNG SDI CO., LTD.

12

13

14                  UNITED STATES DISTRICT COURT

15                NORTHERN DISTRICT OF CALIFORNIA

16                    SAN FRANCISCO DIVISION

17

18   In re: CATHODE RAY TUBE (CRT)          | Case No. 07-5944 SC
19   ANTITRUST LITIGATION                    | MDL No. 1917
20                                           | **DECLARATION OF MICHAEL W.**
     _____| **SCARBOROUGH IN SUPPORT OF**
21   This Document Relates to:               | **DEFENDANTS' AND SAVERI'S JOINT**
                                             | **MOTION TO ADOPT SPECIAL**
22   IN   RE:   APPLICATION   FOR   JUDICIAL | **MASTER'S REPORT AND**
     ASSISTANCE   FOR   THE   ISSUANCE   OF  | **RECOMMENDATION REGARDING**
23   SUBPOENAS  PURSUANT  TO  28  U.S.C.  §  | **SUBPOENA**
     1782 TO OBTAIN DISCOVERY FOR USE IN     |
24   A FOREIGN PROCEEDING                     |

25   Case No. CV-12-80-151 MISC

26

27

28

I, MICHAEL W. SCARBOROUGH, hereby declare:

1.      I am an attorney licensed to practice law in the State of California and in the United States District Court for the Northern District of California.  I am a partner with the firm of Sheppard, Mullin, Richter and Hampton LLP ("Sheppard Mullin"), counsel of record for defendants Samsung SDI America, Inc., Samsung SDI Co., Ltd., Samsung SDI (Malaysia) Sdn. Bhd., Samsung SDI Mexico S.A. de C.V., Samsung SDI Brasil Ltda., Shenzen Samsung SDI Co., Ltd., and Tianjin Samsung SDI Co., Ltd. in this matter.  I make this declaration in support of Defendants' and Saveri & Saveri, Inc. ("Saveri")'s Joint Motion to Adopt the Special Master's October 22, 2012 Report and Recommendation to grant Defendants' Motion to Quash Sharp Corporation's Subpoena Pursuant to 28 U.S.C. § 1782 and to deny Sharp Corporation's Motion to Compel Saveri & Saveri, Inc. to Produce Certain Documents and Deposition Transcripts.  If called as a witness, I could, and would, testify to the matters set forth in this declaration of my own personal knowledge.

2.      The Special Master heard oral argument on September 20, 2012 regarding Defendants' Motion to Quash Sharp Corporation's Subpoena Pursuant to 28 U.S.C. § 1782 and to deny Sharp Corporation's Motion to Compel Saveri & Saveri, Inc. to Produce Certain Documents and Deposition Transcripts.  Attached hereto as Exhibit "A" is a true and correct copy of the certified reporter's transcript of the September 20, 2012 proceedings before the Special Master.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

DATED:  October 31, 2012

By      _____/s/ Michael W. Scarborough_____
                MICHAEL W. SCARBOROUGH

# Exhibit A

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

MASTER FILE NO. 07-CV-5944 SC

MDL NO. 1917

IN RE:  CATHODE RAY TUBE (CRT)          CASE NO. 07-CV-5944 SC
ANTITRUST LITIGATION
_____

THIS DOCUMENT RELATES TO:

CASE NO. CV-12-80151 MISC

IN RE:  APPLICATION FOR JUDICIAL
ASSISTANCE FOR THE ISSUANCE OF
SUBPOENAS PURSUANT TO 28 U.S.C.
§ 1782 TO OBTAIN DISCOVERY FOR
USE IN A FOREIGN PROCEEDING
_____/


TRANSCRIPT OF PROCEEDINGS

SEPTEMBER 20, 2012

2:00 P.M.

2 EMBARCADERO, SUITE 1500

SAN FRANCISCO, CALIFORNIA




REPORTED BY:

RUBY SANCHEZ

CSR NO. 12971, RPR

**Page 1**

## Page 2

APPEARANCES:

For Sharp (via telephonic appearance):

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
BRUCE H. SEARBY
2001 K Street NW
Washington, D.C. 20006
202-223-7355
202-204-5604 Fax
bsearby@paulweiss.com

For Saveri & Saveri:

SAVERI & SAVERI
GEOFFREY RUSHING
RICK A. SAVERI
706 Sansome Street
San Francisco, CA 94111
415-217-6810
415-217-6813 Fax
grushing@saveri.com
rick@saveri.com

For the Samsung SDI Defendants:

SHEPPARD MULLIN
MICHAEL W. SCARBOROUGH
TYLER CUNNINGHAM
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111
415-434-9100
415-434-3947 Fax
mscarborough@sheppardmullin.com
tcunningham@sheppardmullin.com

For the Hitachi Defendants:

MORGAN LEWIS COUNSELORS AT LAW
J. CLAYTON EVERETT, JR.
MICHELLE PARK CHIU
One Market, Spear Street Tower
San Francisco, CA 94105
202-739-5860
415-442-1184
415-442-1001 Fax
jeverett@morganlewis.com
mchiu@morganlewis.com

## Page 3

APPEARANCES (CONTINUED):

For the Philips Defendants:

BAKER BOTTS LLP
JOHN M. TALADAY
The Warner
1299 Pennsylvania Avenue, NW
Washington, D.C. 20004
202-639-7909
202-639-1165 Fax
john.taladay@bakerbotts.com

For the LG Electronics Defendants:

ARNOLD & PORTER LLP
SHARON D. MAYO
7th Floor
Three Embarcadero Center
San Francisco, CA 94111
415-471-3296
415-471-3400 Fax
sharon.mayo@aporter.com

## Page 4

SAN FRANCISCO, CALIFORNIA

THURSDAY, SEPTEMBER 20, 2012, 2:00 P.M.

P R O C E E D I N G S

HON. LEGGE:  Tell me your name please, sir.

MR. SEARBY:  Yes.  Searby, S-E-A-R-B-Y.

HON. LEGGE:  Mr. Searby, you're in Washington.

MR. SEARBY:  I'm in Washington with Paul Weiss.

HON. LEGGE:  Yes.  Okay.  And you're the one that's going to be speaking today for Sharp.

MR. SEARBY:  That's correct.

HON. LEGGE:  We do have a lot of attorneys here in the conference room, so I'll ask them to state their appearances and then proceed with the hearing of our matters.

For identification purposes, we're here in the matter of the Cathode Ray Tube Antitrust Litigation in connection with a subpoena served on the law firm of Saveri and Saveri on August the 8th of this year, that has been followed by a motion by the defendants to quash that subpoena and then a motion by Sharp to compel production of the documents called for by the subpoena. So it is those two documents which is -- or two motions, I should say, which are before me today.

So I will, first of all, ask the moving opposing parties who are present to state their appearances, please.

MR. CUNNINGHAM:  Good afternoon, your Honor.  Tyler

## Page 5

Cunningham, Sheppard Mullin for the Samsung SDI defendants.

MR. SCARBOROUGH:  Mike Scarborough also for the Samsung SDI defendants.

MR. RUSHING:  Geoffrey Rushing on behalf of Saveri.

MR. SAVERI:  Good afternoon, your Honor.  Rick Saveri on behalf of the Saveri law firm.

HON. LEGGE:  Mr. Searby, I don't know if you can hear that or not, but there's been appearance here on behalf of the defendants, the same firm and attorneys who wrote the briefs in connection with the motion and Saveri & Saveri is also represented here.

And others wish to make an appearance at this time?

MR. TALADAY:  John Taladay on behalf of the Philips defendants.

MS. MAYO:  Sharon Mayo of Arnold & Porter on behalf of the LGE defendants.

MR. EVERETT:  Clay Everett on behalf of the Hitachi defendants.

MS. CHIU:  Michelle Park Chiu on behalf of Hitachi defendants.

HON. LEGGE:  I'm not sure you can hear all those names, Mr. Searby, but there are four other defendants who are present at the hearing although they have not been a direct party to the motions.

MR. SEARBY:  Yes, your Honor.

2  (Pages 2 to 5)

**Page 6**

1    HON. LEGGE: Are you with me to this point?

2    MR. SEARBY: Yes.

3    HON. LEGGE: We'll proceed ahead here then. And when

4    other parties come to speak, we'll do our best to keep their

5    voices up so you can hear us. In the event you cannot hear us,

6    please let me know.

7    MR. SEARBY: Thank you.

8    HON. LEGGE: I think I should start out with how I

9    personally got to this point and where my head is at the moment,

10   so to speak.

11   First of all, I'm the Judge, Judicial Officer, who

12   signed the subpoena at issue. It first came to me, of course,

13   on ex parte basis and I had not had any prior experience with

14   Section 1782. I did check the procedural requirements of that

15   section. I didn't get into any of the jurisprudence that has

16   developed around it, but just checked the procedural

17   requirements to see whether the application for the subpoena was

18   proper. I think if memory serves me, I found a couple of things

19   I wasn't quite certain about and contacted somebody, I believe,

20   at the Bingham McCutchen Firm and a clarification on the

21   procedure and some additions, I forgot what they were, and did

22   issue the subpoena.

23   Now, I did so wholly on the basis of the satisfaction of

24   what I believe was satisfaction of the procedural requirements

25   for the issuance of the subpoena and didn't deal with its merits

**Page 7**

1    or its balancing of interests or its discretionary aspects of

2    law. That, however, is what is now before me. I knew this day

3    would be coming. It was absolutely inevitable from the scope of

4    the subpoena.

5    So I have read the motions and have read the oppositions

6    to the motion and in fairness want to tell all sides my initial

7    reactions, as I said, where my head is.

8    It seems to me -- it struck me at the time and still

9    strikes me, that there's an element of an unfairness about this

10   subpoena and its intended uses. My position on that is after

11   having read the briefs and without getting into the

12   jurisprudence of Section 1782, it seems to me there's just

13   something basically unfair to be in a case like we have here in

14   this district where a lot of lawyers on both the defense side

15   and plaintiff's side have spent several years participating in

16   discovery and other procedures other than discovery, of course,

17   also, and have put a lot of equity into this case, and the

18   result from a discovery point of view is, I gather, has been

19   over five million pages of paper. And that having done that,

20   that a third party can come in and simply scoop it all up and

21   take it off to a foreign jurisdiction, a foreign jurisdiction in

22   which the subpoenaing party could not get that discovery because

23   of the rules of that jurisdiction, so dump all this discovery on

24   to that court and with no paying of dues is maybe what I should

25   say. That somebody could sit back, take the advantage of all

**Page 8**

1    the work that's been done and attempt to use it and that's that.

2    I think it's also unfair to a certain extent that the

3    subpoena was served on the attorneys, because obviously what

4    Sharp wants is not the plaintiff's documents. What Sharp wants

5    is the documents of the defendants that they're suing in the

6    Korean jurisdiction. And, also, I think a subpoena more

7    properly had been addressed to particular defendants for the

8    documents they want; not that that's even a valid consideration,

9    but part of my view from 50,000 feet on the fairness level. But

10   instead, the burden, at least initial burden, has been placed

11   here on the plaintiffs for them to scoop up all of this

12   discovery, package it up and neatly deliver it to some other

13   plaintiff in some other jurisdiction for use in some other

14   place. Now, that's my feeling on the general concept of

15   fairness.

16   With that having been said, I realize that I have to

17   delve into the jurisprudence under Section 1782 to analyze what

18   it says, to analyze what the courts have said about it, analyze

19   the restrictions, analyze the four factors under the Intel case,

20   and I have not gotten to that point yet. I've read what you

21   have to say, but I haven't sat down to really try to decipher

22   and understand it and make an application here.

23   So that is where I am. I've certainly not made up my

24   mind about it, but I find it was just simply fair to tell both

25   sides what my initial view of the basic gut and fairness of the

**Page 9**

1    matter looked to me at this time before doing the work that has

2    to be done.

3    Now, that having been said, I guess the first motion

4    that was filed here was the defendants' motion to quash. So I

5    believe that I should turn to the defendants for their opening

6    presentation before I turn to Sharp.

7    MR. CUNNINGHAM: Thank you, your Honor.

8    I'm going to speak mainly about the factors under the

9    Intel case, but I think sort of -- there's a single question

10   that cuts through most of the analysis here and that is whether

11   Sharp's application is an attempt to circumvent the discovery

12   limitations that Korea has put on litigants. And I think that

13   the answer to that question is clearly it is. That answer

14   follows directly from the facts here as told by Sharp itself.

15   And those facts are that Korea does allow document

16   discovery, both from the parties and from third parties. That

17   the discovery allowed is limited. Korea places limitations on

18   documents available to litigants. I know that Sharp says that

19   those limitations are so draconian that they can't get a single

20   document in Korea. We think that's an overstatement and dispute

21   that. But in any event, because of those limitations, Sharp has

22   made no effort here to obtain discovery under Korean rules. I

23   should say I think technically that's not an admission that

24   Sharp has made, but we presented evidence to that effect and

25   Sharp hasn't rebutted it. Fourthly and finally, because of

**Page 10**

1  those limitations or perceived limitations, Sharp has proceeded
2  with this application under 1782 in the first instance to this
3  court, so its court of first resort is to U.S. District Court.
4       Well, your Honor, I think that that's circumvention.
5  That's Sharp going around the obstacle in its path or the
6  perceived obstacle in its path which is the limitations that the
7  Korean Civil Procedure Act places on document discovery.  I
8  don't know what else you would call it.  Sharp, of course,
9  disputes that and says that they're not trying to circumvent the
10  rules, but they really offer no explanation for why that is.
11  They just offer their own Ipse dixit.  So that I think is the
12  major factor.
13       The other major factor here that places this application
14  sort of outside of the norm is Sharp's attempt to
15  import/wholesale the entire U.S. discovery record from this
16  litigation.  I guess maybe I should say export, trying to export
17  that entire discovery record to Korea.
18       Sharp's made no articulation of why they need this
19  entire five-million-page-plus record.
20       HON. LEGGE:  Mr. Searby, are you able to hear counsel's
21  comments?
22       MR. SEARBY:  I am, very clearly.  Thank you.
23       HON. LEGGE:  Okay.  Thank you.
24       Go ahead, please.
25       MR. CUNNINGHAM:  No articulation for why they need this

**Page 11**

1  five-million-page-plus record.  In fact, I think it's probably
2  more than five million-plus pages because quite a few of the
3  documents are native files.  So if you were to actually convert
4  them into pages it would be greater than that, but in any event
5  there's been no showing of relevance, just Sharp against Sharp's
6  Ipse dixit statement that all of the documents it seeks are
7  relevant, which is actually contradicted by the statement of
8  their declarant who says that only a limited amount of the
9  documents are relevant and will actually be used in the Korean
10  court.
11       Sharp cites no precedent at all allowing an applicant
12  under 1782 to gain access to an entire discovery record like
13  this.  In fact, the closest facts of the situation in that
14  regard is the Intel case itself that went out to the Supreme
15  Court and gave us the sort of four discretionary factors that
16  set the framework for this motion.
17       And in Intel, the applicant was AMD.  AMD sought all
18  documents, sought a subpoena from Intel to get all documents
19  that Intel produced in another litigation with another company
20  called Intergraph.  And that case wound its way all the way up
21  to the U.S. Supreme Court and gave us the four factors.  And on
22  remand, the case was remanded to the Northern District and Judge
23  Ware took a look at the subpoena and evaluated it under the four
24  factors that the U.S. Supreme Court gave and said that under the
25  fourth and final factor having to do with undue burden, said

**Page 12**

1  that the subpoena was overly burdensome because it just sought
2  the entire discovery record from that case with no effort to
3  tailor it to AMD's needs.
4       So I think that those two factors really dictate the
5  results here; the blatant and runaround of Korean discovery
6  procedure and the major overreach by Sharp.  Those two factors
7  dictate that the subpoena should be quashed and I think that the
8  rest of the analysis under the Intel factors really flows from
9  there, and I'd sort of like to go ahead and touch upon some of
10  the other points under the Intel factors.
11       The first factor --
12       HON. LEGGE:  You're telling me that Judge Ware got the
13  Intel case back on remand from the Supreme Court?
14       MR. CUNNINGHAM:  It's true.  Yes.
15       HON. LEGGE:  And he walked through that case, Intel case
16  was in front of him and evaluated the four factors?
17       MR. CUNNINGHAM:  That's true.
18       HON. LEGGE:  Go ahead.
19       MR. CUNNINGHAM:  So under the, what I would call the
20  receptivity factor, which asks whether the Korean court would be
21  receptive to judicial assistance to getting these documents, I
22  think this goes to the point that your Honor made somewhat in
23  that it's a kind of a fundamental fairness analysis.  And I
24  would submit that no court would be receptive to a procedure
25  whereby one side gets to opt out entirely from the discovery

**Page 13**

1  rules and the discovery limitations that the foreign court or
2  foreign regime places on litigants, in this case Korea, while
3  the other side, the defendants in the Korean litigation, are
4  left to litigate and to try to take discovery as best they can
5  subject to those limitations.  That's really contrary to just
6  fundamental principles of fairness and equity between the
7  parties.  And we've shown, in fact, that the Korean court is no
8  exception in that regard in their civil procedure act; in the
9  very first article in their civil procedure act they cite that
10  fairness is a fundamental concern of the court.
11       And I won't go through all the details about the volume
12  of discovery here as I know your Honor is familiar with it, but
13  I'd like to say just a word about depositions in particular
14  because that's part of Sharp's application in seeking the entire
15  discovery record here, they're also seeking all depositions
16  which include multiple -- my last count was 18, but I think it's
17  more than that now, there to be depositions.
18       Depositions aren't available to litigants under Korean
19  discovery rules and so it would be particularly unfair to the
20  defendants in the Korean litigation to have their opponent have
21  access to this very powerful discovery tool while we have no
22  access at all.
23       We've also offered other evidence on this receptivity
24  point that I won't belabor, but it's in the briefs.  It would
25  also -- allowing these massive discovery records to enter the

4  (Pages 10 to 13)

**Page 14**

1  Korean litigation would also thwart the Court's stated goal of

2  efficiency, definitely does not favor the efficiency to

3  introduce five million-plus pages of documents into the

4  litigation and it runs contrary to Korea's statement it made

5  when acceding to the Hague Treaty that they will not execute

6  letters of request issued for the purpose of obtaining pretrial

7  discovery of documents if the letter of request doesn't identify

8  particular documents.

9       Sharp responds with two points, I think, basically on

10 this issue of receptivity.  One, they offer a hearsay statement

11 from the Korean court, which we think shouldn't be regarded, it

12 should be disregarded as hearsay.  But even if the court were to

13 consider it, I think it's of very little value because what they

14 say is they -- they say they told the court of their plan to

15 take discovery through the 1782 procedure and the court, quote,

16 acknowledged that effort.  So, again, I think the court

17 shouldn't consider that statement, but I think it's a long

18 distance between acknowledging and actually stating that the

19 court would be receptive to those documents.

20      And then the second point that Sharp makes on this

21 factor is that Korea has lax rules regarding admissibility, and

22 I think that Sharp here sort of equates admissibility with being

23 receptive to the documents and I don't think it's the same

24 thing.  In fact, I think at times those two things can be at

25 cross-purposes.  I think that if the court has lax rules and

**Page 15**

1  really no control over documents that are admissible, that may

2  well mean that the court would not want to see five million-plus

3  pages of documents introduced in its litigation, and some of the

4  cases do talk about this in terms of the danger of swamping the

5  court or clogging the court with foreign discovery, and I think

6  that's a real danger here.

7       So moving on to the next factor under Intel, which I

8  would call the availability factor, or the question is:  Does

9  the foreign tribunal have jurisdiction over and can it order

10 others to produce the evidence that the applicant is seeking?

11 Here we challenge the assertion that Sharp can't get any

12 documents at all through the Korean discovery procedures.  I

13 think what they can't get is the really broad U.S. style

14 discovery that they're seeking here, but Korea does have

15 procedures, as I said, allowing the document discovery.  I don't

16 think there's any question that the Korean court has

17 jurisdiction over the defendants that are before it and can

18 order them to produce documents, and I think both sides have

19 actually cited to the article under the civil procedure act that

20 allows for that.

21      It's also the case, and I don't think this is disputed,

22 that the Korean court can order the KFTC, the Fair Trade

23 Commission, which is the antitrust enforcement agency in Korea

24 which conducted an investigation into the CRT matter and

25 produced a report about their investigation.  There's no

**Page 16**

1  question that the court can order the KFTC to produce documents.

2       Now, Sharp says that the KFTC wouldn't comply with any

3  court order or would not produce documents, and I submit that

4  that's really not credible because Sharp in its own complaint in

5  the Korean court said that that was, in fact, their plan to

6  conduct document discovery, that they were going to request that

7  the court order the KFTC to produce documents from its

8  investigation.  So I don't know what's changed.  I haven't heard

9  anything from the other side about what's changed from that time

10 until now, from the time they filed their complaint and said

11 that that was their plan for discovery to now when they say they

12 actually can't get any documents through the KFTC.

13      I understand Sharp makes the argument that they don't

14 have enough information in order to make an application to the

15 Court because they need to know certain details about the

16 documents in order to do that.  We've explained in our reply

17 brief, offered some suggestions as to how they might go about

18 that.  I won't go into that, maybe I will when I get a chance to

19 talk again or if your Honor has any questions about it.

20      So the court can get -- has jurisdiction over the Korean

21 defendants and can order the KFTC to produce documents.  So the

22 question is really:  What's left after that?  Is there anything

23 left that Sharp needs beyond what's available to it in Korea?

24      I haven't heard Sharp articulate any need for anything

25 beyond what might be available from those sources.  So the

**Page 17**

1  bottom line here is that the Korean rules provide for discovery

2  and those are the rules that should govern Sharp's Korean

3  lawsuit.

4       The fourth and final factor under the Intel analysis has

5  to do with whether the application is unduly intrusive or wholly

6  burdensome.  In this regard, I think the application speaks for

7  itself.  Your Honor made the point that it's really hard to

8  conceive of a broader request than what Sharp has made here,

9  which is basically give me all the documents that you have

10 without attempting to tailor it at all to their particular needs

11 or even articulate what their needs are.

12      And I'd like to say a final word finally about

13 confidentiality concerns.  The defendants have a real concern

14 about maintaining the confidentiality of their documents here

15 and we believe that the protective order can't be adequately

16 modified to evaluate those concerns.  And I think the real

17 difference here between sort of the garden-variety requests that

18 normally happens from a litigant in another matter when they

19 make an application or try to gain discovery documents from

20 another matter and to try to modify a protective order in order

21 to suit that need is that when that happens and it's purely

22 within U.S. borders, the Court can have some assurance that

23 they'll be an adequate protective order in that other matter

24 that will maintain the confidentiality of those documents.

25      Here, that's not the case.  We've presented evidence

**5  (Pages 14 to 17)**

**Page 18**

1   and, again, it hasn't been rebutted that the Korean court
2   doesn't have that statutory authority, can't issue a protective
3   order of that nature.
4        So I understand that Sharp has said that they would --
5   suggested that they could -- the court could somehow modify the
6   protective order in this matter to alleviate our concerns, but
7   they haven't really articulated what that modification would
8   look like or how it would work and, in fact, I can't conceive of
9   a way that it would work that would allow Sharp to actually use
10  the documents in Korean litigation, because to use them in the
11  Korean litigation, they would have to be showing them to all
12  sorts of people who are not parties to that protective order.
13  They would show them to the court or witnesses, you know,
14  possibly experts and consultants and to the other defendants in
15  the Korean litigation.  So we just don't think it's workable and
16  we have a real concern about confidentiality.  I think I'll
17  leave it there, your Honor.
18       HON. LEGGE:  Okay.  All right.  Mr. Saveri, do you wish
19  to speak on behalf --
20       MR. RUSHING:  Yes.  Thank you.  I'll do that.
21       HON. LEGGE:  Would you mind coming down here a little
22  bit closer so Mr. Searby can hear you.
23       MR. RUSHING:  Your Honor.
24       HON. LEGGE:  Would you identify yourself and who you are
25  speaking for.

**Page 19**

1        MR. RUSHING:  This is Jeff Rushing on behalf of Saveri
2   and the direct purchasers, I think I should say.
3        Your Honor, I'll be brief.  We said it in our paper, but
4   our view here is that we should not be a party to this
5   proceeding, and basically I think it breaks down to two, kind
6   of, categories of reasons.
7        First is a matter of common sense and I think, as your
8   Honor noted, fairness.  These are not our documents.  They
9   belong to defendants.  We have them by virtue of our
10  participation in this case, but our interest in them is not as
11  great as defendants.  They're for use in a case that we have no
12  interest in, but the defendants, at least some of them, have a
13  great interest in.  And we think the burden of production,
14  actually, it would be significantly less for the defendants
15  themselves to produce these documents to the extent they
16  ultimately are produced is less than our burden because
17  primarily by virtue of their much greater resources.
18       And it would appear, I think as Mr. Cunningham
19  explained, that we are a party to this proceeding only because
20  of some tactical decisions made by Sharp based on their review
21  of it's better for them to subpoena us than it is to subpoena
22  the defendants under the jurisprudence of Section 1782.  So as a
23  practical matter, we don't feel we should be here.  And as a
24  matter of law, also, I think we shouldn't be here.  Again, as
25  Mr. Cunningham explained under 1782, it seems clear this is an

**Page 20**

1   attempt to circumvent the requirements of Section 1782, but I'm
2   not going to repeat those arguments.  But under American
3   jurisprudence as well, it's not proper as the Haworth case holds
4   and as we explained in our brief.  It's not generally proper to
5   seek documents from a third party that you can obtain from a
6   party opponent.
7        And in the Haworth Case, Haworth the Federal Circuit
8   upheld a denial of a motion to compel by the lower court which
9   held just that.  And that case involved a single document and
10  the court said, No, you have to try to get them from your party
11  opponent before you seek them from a third party.  So we would
12  add that as an additional reason to deny the motion to compel.
13       Finally, we are very concerned about becoming some sort
14  of fulfillment center for other foreign litigation to become the
15  go-to place to get all the documents in the CRT case for use in
16  your foreign litigation.  We don't want that business.  We want
17  to spend our time litigating our cases, particularly this one,
18  and we don't -- we have a lot to do and we have a lot of that
19  kind of work to do and we don't -- it's not a convenient thing
20  for us at all even to the extent that our time is compensated or
21  some of our time for us to be doing.  We don't want that
22  business and we are very concerned about that.
23       And, finally, just briefly on the burden itself, we have
24  a declaration that we've estimated as best we can at this point
25  that it will take approximately 30 to 40 hours of time to do

**Page 21**

1   this.  There's nothing contrary in the record, so I think we can
2   leave it at that.  But I will say that it's a much more
3   complicated process than Sharp would have the court believe.
4   There are many, many files that have been produced in the case
5   in many different formats.  It doesn't -- the downloading
6   process does not work every single time.  There's many times it
7   doesn't work properly and you have to sort of sort it out and
8   back it up and figure out what went wrong and do it again.  That
9   takes time.  And then there's also a substantial amount of time
10  to be spent verifying that you've done what you've supposed to
11  have done, that your production is complete, that you have
12  included things you shouldn't include and that you have included
13  everything you should.  With that your Honor, I will --
14       HON. LEGGE:  All right.  Mr. Searby, you wish to speak
15  in support of your motion -- in opposition of the motion to
16  quash and in support of your motion to compel?
17       MS. NEVINS:  I just got a call saying they all got
18  disconnected to you.
19       HON. LEGGE:  What happened?
20       MS. NEVINS:  They said it was about four minutes ago.
21       (Pause)
22       HON. LEGGE:  Mr. Searby, I understand you have been
23  disconnected here.  Apparently a line here connecting the
24  Starphone to the phone system got accidentally disconnected.
25  How long have you been offline?

**6  (Pages 18 to 21)**

1    MR. SEARBY:  I'll tell you, Mr. Rush [sic] from the
2  Saveri firm had only just begun speaking, so I don't think he
3  had gone far at all.  I don't think he had gotten at all into
4  his argument apart from, I think, concurring with --
5    HON. LEGGE:  Well, yes, he did, he finished it, because
6  we did not know here that you had been disconnected.  So
7  Mr. Rushing went ahead and concluded his remarks without
8  realizing you weren't on the line.
9    MR. SEARBY:  Well, can we -- we stayed on the line here
10  with the other remote parties, so we're not sure what happened.
11    HON. LEGGE:  The accident was here.  So in no way were
12  you or your colleagues at fault there.  So what I'm going to ask
13  Mr. Rushing to do is please go through his remarks again so that
14  you have the benefit of what he's been arguing here while you
15  were offline.
16    Mr. Rushing.
17    MR. RUSHING:  Hopefully it will be better this time
18  having had a practice run-through.
19    Your Honor, as I said, we don't believe that we should
20  be a party to this proceeding as a matter of common sense and
21  fairness, as your Honor pointed out, and also as a matter of
22  law.
23    First as to common sense and fairness.  The documents
24  that are at issue here are the defendants' documents.  We have
25  them by virtue of our participation of the case, but they belong

1  to the defendants and the defendants' interest in their disposal
2  is significantly greater than ours.  The documents are for use
3  in a separate case that we're not parties to and the
4  documents -- I think the burden to produce the documents is
5  significantly less for the defendants themselves rather than for
6  us.
7    And it appears to us and I think clearly that the reason
8  we're here is as a result of a tactical kind of decision made by
9  Sharp to avoid and/or improve its arguments under Section 1782
10  and that's the only reason we're here.
11    As a matter of law, I think that's not proper under
12  Section 1782.  As Mr. Cunningham has argued, and I'm not going
13  to -- I'll adopt his arguments, essentially.  I won't repeat any
14  of them.  It's also under the Haworth Case, which we cited and
15  explained in our brief.  It's not proper generally in -- under
16  the federal rules to seek discovery of documents in the
17  possession of your party opponent from third parties before
18  you've sought to do that from your party opponent, and that's
19  what's happening here.  Again, there's no difference in the
20  documents we have and the documents defendants have and there's
21  -- we shouldn't -- there's no reason for them to proceed against
22  us first in that respect.
23    Third, we are very concerned about becoming the go-to
24  source for all foreign proceedings related to this conspiracy,
25  your Honor.  As your Honor knows, we contend it's a global

1  conspiracy and there are proceedings around the world regarding
2  it and I think it's not unreasonable at all to expect that
3  we're, your Honor, to say that we were the worldwide fulfillment
4  center for these documents that we would, in fact, get many more
5  requests.  And we don't, as I said, your Honor, we don't want
6  that business.  Our business is litigating the cases we have,
7  including this one.  Our time is -- we don't have unlimited
8  resources, far from it and we do not want to spend our time
9  doing that.
10    And, finally, I said briefly about the burden, we put in
11  our -- we have a declaration about our preliminary estimates;
12  that it would take 30 to 40 hours of time to do what Sharp is
13  asking us to do and there's no contrary evidence in the record
14  that Sharp had an opportunity to put in a reply brief, they did
15  not.  So I will add only that it is a great -- there are a great
16  many files.  It is not a situation where we can simply push a
17  button and everything downloads perfectly, automatically.  A
18  great many files.  They don't -- that have to be downloaded.
19  They don't always download properly.  So there's a significant
20  amount of time involved in figuring out why something went wrong
21  when it inevitably will go wrong, not every time, but in this
22  kind of project there will be a number of times it will happen.
23  There's also a significant amount of time that's got to be spent
24  verifying that everything's been done properly, making sure
25  nothing that shouldn't be included is included and making sure

1  that everything that should be included is also included.  So
2  that's the situation we're in.
3    Finally, I would add something I didn't say early, which
4  is simply, Sharp, they're not a party here.  They've elected to
5  exclude themselves from the class.  And so, again, for that
6  reason we would say that they just -- they shouldn't be allowed
7  to, as your Honor points out, reap the fruits of others' sweat
8  equity in this case.
9    HON. LEGGE:  Okay.  Thank you.
10    All right.  Mr. Searby, do you wish to speak on behalf
11  of your motion to quash and in opposition to the -- I'm sorry,
12  the opposition to the motion to quash and in support of your
13  motion to compel?
14    MR. SEARBY:  Yes, your Honor.
15    First of all, I want to say I appreciate your candor at
16  the outset of the call and I believe that we can address your
17  concern in that our request does fall within the jurisprudence
18  that you'll be looking at as you decide this, and I think we
19  have pretty solid answers to all the questions that have been
20  raised by the Saveri firm and the defendants.
21    I want to cover the three most important arguments in
22  these motions and I think that I'll also try to address the
23  confidentiality provisions, although I think that's sort of a
24  secondary argument for reasons I'll explain.  It's downstream of
25  whether providing these documents to Sharp is a good idea in the

**Page 26**

1　first place.

2　　The first big point is that Sharp has a strong need for

3　using the 1782 procedure to seek relevant evidence.  The second

4　point I'm going to get into is there's no genuine indication

5　that the 1782 procedure is likely to offend the Korean court and

6　to the contrary the court will be receptive to considering

7　evidence gathered in this manner.  And, third, the intended

8　discovery would not impose any undue burden.

9　　But before getting into these points and any others that

10　interest your Honor and some of your Honor's concerns at the

11　outset, I want to say that when you consider the positions that

12　defendants and Saveri take, taken altogether they simply defy

13　common sense.

14　　Now, on the one hand they say that Sharp can't use 1782

15　because it hasn't tried using Korean discovery procedures, but

16　on the other hand they say Korean discovery procedures are so

17　limited that the Korean court would be hostile to 1782 relief.

18　This Catch-22 that defendants have set out can't be and isn't

19　how 1782 works.  We would not be here, your Honor, wasting

20　everyone's time if Korean counsel thought that Sharp could get

21　documents to prove its case through the Korean court.  And there

22　wouldn't be a 1782 procedure in the books unless litigants were

23　sometimes unable to get discovery from the foreign court.

24　　Another example of trying to have it both ways,

25　defendants say at one point that Sharp should only be asking for

**Page 27**

1　CPT documents, color picture tube documents, but at another

2　point they tell Sharp to go after documents in a Korean Fair

3　Trade Commission Report that so far as we can tell only has to

4　do with CDT, color display tubes.

5　　Defendants fault us for not getting a court transcript

6　from the Korean court.  There is no transcript to get.

7　　Defendants tell us to ask the Saveri firm to identify

8　the documents we need for our case to go to the Korean court,

9　but we did ask Saveri, and in Saveri's view as class counsel

10　they were not free to do this.

11　　Naturally everyone is going to say that we ought to be

12　going to someone else for these documents, but here we are three

13　months into this process and Sharp satisfies all the statutory

14　requirements and all the discretionary factors weigh in favor of

15　enforcing the subpoena.

16　　Now, I want to now get into more detail on the first

17　point; Sharp's need for 1782 relief.  Your Honor, defendants'

18　reply is flat wrong in its lead point, arguing that Sharp could

19　have applied for discovery in Korea.  They referred to a

20　169-page report by the Korean Fair Trade Commission, KFTC,

21　citing 280 documents.  And they say, You should have asked for

22　those 280 documents in that report.  But as their own defendant

23　-- I'm sorry, as their own declarant, Mr. Troy, makes clear at

24　paragraph 3 of his declaration that they submitted with the

25　reply, this KFTC report related to price fixing of CPTs for

**Page 28**

1　computers, not the CPTs for TV sets.  You can read the

2　declaration and that's what that report is about.

3　　Sharp can proffer now based on our review in the last

4　couple days of this report by Sharp's Korean counsel that this

5　report refers to no price fixing of CPTs.  Sharp's Korean action

6　only involves CPTs, price fixing of CPTs that Sharp purchased

7　and the KFTC is undisputed, shut down its investigation of CPT

8　price fixing with a one-sentence letter.  There is no report

9　from the KFTC identifying documents as being related to CPT

10　price fixing.  Therefore, we could not go after those documents

11　using Korean court procedures.  As both parties agree, are

12　limited and require you to specify exactly what documents you

13　need.

14　　Defendants' reply brief does not even meet Sharp's

15　argument that it is seeking with the 1782 subpoena documents

16　produced by various parties that are not even before the Korean

17　court and it cannot be said could be brought within the

18　jurisdiction of the Korean court.  There's been no showing of

19　that.  The Korean complaint alleges that Sharp was a victim of

20　CRT price fixing at these glass meetings; same as plaintiffs

21　here in the U.S. have alleged.  The Korean complaint that Sharp

22　filed identified as coconspirators not only the name of

23　defendants in Korea, but also other companies; Chunghwa,

24　Hitachi, Panasonic, Toshiba, who have been subject as defendants

25　in the United States to years of discovery in the U.S.

**Page 29**

1　　Now, again, even as to the subset of conspirators in the

2　Korean complaint that are named defendants before the Korean

3　court, Sharp is not presently in a position to use the limited

4　Korean discovery procedures to make document requests.  And this

5　is not news.  Sharp first explained this three months ago in its

6　ex parte application for 1782 relief.  So this is not news and

7　it's nothing Sharp has ever needed to run from.

8　　Instead, what you have here is a common-sense situation

9　where 1782 relief is appropriate because the United States has

10　more expansive discovery procedures than are available in a

11　foreign proceeding and it is the policy behind 1782, in fact, as

12　explained by court decisions including Intel that we're going to

13　permit this broader discovery even if broader discovery is not

14　available in the foreign court because we want to encourage

15　foreign courts to cooperate and to expand their discovery

16　procedures.

17　　Now, what this all boils down to is that instead of the

18　burden in hand, by which I mean the U.S. discovery, the

19　defendants and Saveri want Sharp to chase after a whole bunch of

20　birds in the bush and the efficiency and fairness and

21　practicality of this is not there.  We have a need to issue the

22　subpoena for the collection of discovery that is all gathered

23　together rather than pursuing probably futile efforts with many,

24　many different companies that many of which are not before the

25　Korean court.

8  (Pages 26 to 29)

**Page 30**

1    This is -- and by the way, it is, in fact, precedented
2    in 1782 cases for parties to come in with the 1782 application
3    and ask for collections of discovery that had already been
4    produced in the course of U.S. litigation.  The application that
5    we put forward to the court laid out a number of these cases, in
6    particular on page 8 of the ex parte application Schmitz case,
7    the In Re Linerboard Antitrust Litigation case, there's also on
8    page 11 of the ex parte application we cite to -- I'm sorry,
9    page 10 of the ex parte application we cite U.S. Philips Corp.
10   as well as In Re Linerboard Antitrust Litigation.  So it is, in
11   fact, not uncommon for collections of discovery that had been
12   worked up, as the Court says, with someone's sweat equity over
13   the course of a litigation to be granted access to other parties
14   who need those, who demonstrated the need and the relevance of
15   those collections of evidence to go through for purposes of
16   foreign litigation.
17       So I understand the Court on the sweat equity point;
18   however, it is just not -- had this not been a concern that the
19   jurisprudence has recognized.  And, in fact, parties come in all
20   the time and join litigation and they opt out of cases, class
21   cases, and they come in and they obtain access to the discovery
22   record that's been worked up thus far in the case.  This is
23   nothing unusual.
24       Now, the next major point here, the second major point
25   is that the Korean court is not offended by the use of 1782, but

**Page 31**

1    is rather receptive to any evidence that would be gathered in a
2    foreign proceeding.  This is a key point under the Intel case
3    and the Intel factors.  It's very important that the use of 1782
4    not offend a foreign court, but this is not a case where the
5    foreign body has expressed offense at Sharp's 1782 application
6    in a way that would weigh against the exercise at the Court's
7    discretion, and there are such cases.
8        A party that does not have means in the foreign court to
9    pursue discovery there does not by using 1782 circumvent, quote,
10   unquote, the foreign court's restrictions of evidence gathering.
11   And the case that you need to read, your Honor, to bring that
12   point home, although there are several, is the Heraeus Kulzer
13   case where Judge Posner is writing for the Seventh Circuit.
14   This case is cited at page 7 of Sharp's opposition.  So it is
15   not nearly by --
16       HON. LEGGE:  Hang on a minute, please.  Let me pull that
17   citation up.  Page 7 of your opposition letter?
18       MR. SEARBY:  Yes, your Honor.
19       HON. LEGGE:  The one cited in your second paragraph?
20       MR. SEARBY:  Yes, your Honor.
21       The Seventh Circuit tells that Germany's limited
22   discovery procedure did not mean than the German court would not
23   be receptive to that same discovery if obtained in the United
24   States and, therefore, the 1782 process was appropriate.
25       This situation, that happens all the time precisely

**Page 32**

1    because 1782 contemplated situations where foreign discovery
2    processes were more limited than they are in the United States.
3    So it simply does not -- it's not taking out the circumvention
4    of foreign discovery procedures that we seek evidence here that
5    we could not get there, and this is a key point.  The proper
6    question, your Honor, is not whether the foreign court itself
7    would order the discovery, but whether the foreign court will
8    consider the evidence that the party gathers in the United
9    States.  That is the test.  That is whether a court is receptive
10   to the evidence or to the contrary would be offended by being
11   presented with this evidence, and there is no evidence of that,
12   no suggestion of that here.
13       On the real issue of whether the foreign court will
14   consider any evidence that is produced under a 1782 application
15   here, Sharp's position has support from two sources.  First,
16   Korean law is receptive with the consideration of evidence that
17   was gathered abroad.  And, second, a Korean court in this case
18   had a reaction that was not hostile and was even positive when
19   apprised of the 1782 application by Sharp.  Defendants' reply
20   fails to offer any evidence contradictory to Sharp showing on
21   either of these two points.  And I want to take those points one
22   by one.
23       First, Sharp's declarant, a Korean counsel named Mr. Oh,
24   reports as a percipient witness on the court colloquy on June
25   28th, 2012, and he draws reasonable factual inferences from the

**Page 33**

1    statements that he reports, and that's in paragraph 13 of
2    Mr. Oh's declaration.  I can read it to you your Honor if you'd
3    like.
4        HON. LEGGE:  Wait a minute.  I think I have it in front
5    of me here.  It begins at the bottom of page five and continues
6    over to the top of page six.
7        MR. SEARBY:  So, your Honor, defendants' only response
8    to Mr. Oh's declaration is that it's inadmissible hearsay, but
9    it's not.  Sharp told the court, the Korean court, about the
10   1782 application; that's not hearsay, that's notice.  The court
11   then asked how long it will take to do the procedure; that's not
12   hearsay, that's a question.  The court postponed further
13   proceeding in the Korean case until Sharp submits evidence;
14   that's not hearsay, it's a procedural act by the court.
15       In any event, your Honor, the hearsay rule is just not
16   applicable to a discovery motion like this, like what we're
17   doing right now.  There's a case for that, Cooper Hospital 183
18   F.R.D. 119 at 129.  This is not the type of motion where you
19   need to even consider the hearsay rule.  The defendants note a
20   bunch of cases.
21       HON. LEGGE:  Wait a minute.  My concern was what Mr. Oh
22   has said here.  What you argued for Mr. Oh is not that it's
23   hearsay, it's the fact that all I get from paragraph 13 is that
24   the Korean Judge was told that you go through some discovery
25   procedure in the U.S. and that you're doing it.  And he told the

**Page 34**

1   Court it would take some time and the Court agreed to not fix a
2   date.
3        Now, to me, that doesn't shed any, any inference that
4   once the Court sees the volume of the evidence and what it is,
5   that it's going to accept it.  And there's nothing here to
6   indicate that the Court was told that this is five million pages
7   of document discovery and 18 or 20 depositions, whatever it is.
8   You're just silent on the subject.  Now, maybe Mr. Oh drew
9   conclusions, but that's not a clear statement of what the Court
10  said that it would or would not consider it.  It's just give me
11  more time to do what you want to do and then we'll see what it
12  is.
13       MR. SEARBY:  Well, your Honor, I think it's time for me
14  to jump at this point about allegedly dumping five million
15  documents of discovery on the Korean court.  That is a myth that
16  the defendants and Mr. Saveri have cumulated here.  There's no
17  intention of introducing into the Korean court five million
18  pages.  That would simply be the documents that Sharp could
19  access and review.  If the Korean court only needs to see the
20  documents that Sharp in the end determines it needs to put on
21  its case in Korea, not five million documents.  We have, in
22  fact, no idea of the volume of documents that are in the end
23  going to be worth submitting, are going to be of sufficient
24  evidentiary value to submit to the Korean court.  So it is
25  really a myth and a scare tactic for the defendants and Saveri

**Page 35**

1   to raise this prospect of a document dump of five million pages
2   on the Korean court.  There's no reason to think that the Korean
3   court is going to ever have to deal with a volume of paperwork
4   like that.  So it is not a burden on the Korean court.  It is
5   documents that Sharp wants access to for selection of useful
6   evidence and we don't know exactly what that's going to be.
7        HON. LEGGE:  Let me ask you another question.  What are
8   the defendants in your Korean case going to get and have access
9   to from this material?
10       MR. SEARBY:  Your Honor, we have every intention of
11  sharing whatever records we receive from this application with
12  the defendants in the Korean case.  We imagine that they would
13  ask for them and imagine that we'd have no reason not to give
14  them any of the materials.  In fact, in the order that your
15  Honor signed, it expressly contemplated that the parties to the
16  Korean litigation would have access to the materials because the
17  parties would need to adhere to the U.S. protective order and
18  otherwise take measures to protect the confidentiality of those
19  documents.  We entirely expect that the defendants could have
20  these documents as well and there's no unfair advantage or
21  unfair tactic involved here.
22       The other thing I want to say --
23       HON. LEGGE:  Wait a minute.  Let me follow through with
24  a couple of things.  You do have defendants in your Korean case
25  who are not defendants in the United States case; is that

**Page 36**

1   correct?
2        MR. SEARBY:  Your Honor, perhaps some subsidiaries of --
3   some subsidiary companies of the parent companies that are
4   defendants in the U.S. case.
5        HON. LEGGE:  So you don't think you've got in Korea any
6   defendants that are either themselves or through parents or
7   parties in the United States litigation?
8        MR. SEARBY:  Your Honor, I have a list of the Korean
9   defendants and they're Samsung entities, they're LG Philips, LP
10  Displays, there are a couple of names that are not entirely
11  familiar, Meridian Solar Display Company, but by enlarge these
12  are entities whose families, corporate families are involved in
13  the U.S. litigation.
14       HON. LEGGE:  Okay.  Thank you.  Go ahead, please.
15       MR. SEARBY:  The other thing I wanted to note is that
16  Sharp raises the point about the Korean court's reaction to the
17  1782 application.  Not only to make the point that there was
18  apparently a positive reaction to news of the 1782 application,
19  but also that there was no hostility, that there was no offense
20  taken, and it seemed to be received, at a minimum, neutrally, we
21  would argue positively.
22       Now, what defendants and Mr. Saveri really need to show
23  in order to persuade this court that this is a bad idea, is that
24  this is going to rub the Korean court the wrong way and that
25  they're going to take offense.

**Page 37**

1        Now, they have fallen flat in terms of that showing and
2   they do not dispute that the Korean Code of Civil Procedure
3   permits the Korean court to consider any evidence; that's
4   Article 202.  They also do not dispute that Article 296(2) of
5   the Korean Civil Procedure Act, which is cited by Mr. Oh in his
6   declaration at paragraph 17, that this article permits
7   consideration of evidence gathered abroad.
8        So what we have here is a situation where Korean law
9   says very clearly the Korean court can look at this.  The Korean
10  court can take this evidence that you bring in from overseas and
11  consider it and take it for whatever it thinks it's worth.  So
12  you have legal principles that indicate a receptivity to the
13  evidence that has been gathered abroad.
14       Again, your Honor, the question is not whether the
15  foreign court itself would order the discovery, but whether the
16  foreign court will consider the evidence that the party, Sharp
17  in this case, gathers in the U.S.
18       HON. LEGGE:  Is it not some evidence of resistance when
19  you look at Korean law which does limit discovery so severely
20  and will not engage in -- what do I want to say -- international
21  intercourse over such things as services, subpoenas and service
22  of process and the Hague Act procedures for doing various
23  things?  Is that not an indication that they are running their
24  courts the way they want to run their court and they don't want
25  as many interferences from foreign courts?

US Legal Support
888-575-3376

## Page 38

1     MR. SEARBY:  No.  Again, your Honor, that's not an
2  indication.  And this goes back to the Heraeus case, the Heraeus
3  Kulzer case that I spoke about earlier.  Judge Posner basically
4  said, You cannot draw that conclusion.  You cannot draw that
5  conclusion based upon the more limited discovery procedure of a
6  foreign court.  That they would be hostile to being handed
7  evidence gathered abroad in a more liberal fashion, a more broad
8  type of discovery.  That is precisely -- your concern is
9  precisely the one that Judge Posner and other courts address and
10  put to bed.  This is not an indication of hostility.
11     Your Honor, when a federal court of a foreign tribunal
12  is considered hostile in the 1782 jurisprudence that we've read,
13  it lets the U.S. court know it.  In fact, in the Intel case on
14  the remand that counsel cited earlier in this hearing, which I
15  frankly -- they did not brief this and so I'm reading this for
16  the very first time on this call, but on the remand in that
17  case, the European Commission actually wrote amicus briefs to
18  support the finding that the European Commission does not need
19  or want this Court's assistance in obtaining the documents.  And
20  based upon that amicus brief, the court in remand on the Intel
21  case said that the EC is not receptive to judicial assistance in
22  this case and that's really what this Intel case on remand
23  turned on.  And so --
24     HON. LEGGE:  Do I have a record of that, that is, what
25  happened to the Intel case on remand in the papers before me?

## Page 39

1     MR. SEARBY:  I do not think so, your Honor.  I'm not
2  familiar.
3     HON. LEGGE:  I didn't remember seeing it, so I thought
4  maybe I missed something.
5     MR. SEARBY:  I'm going to make another point or two
6  about the case then that defendants did not brief, despite the
7  moving papers and the reply papers.
8     It says this is 2004 Westlaw, 2282320, and this case
9  turns on the -- basically the fact that the EC did not want this
10  judicial assistance and it made that very clear.  That's
11  hostility.  That's a lack of receptivity, not some language in
12  the Hague Accession Treaty that only addresses what a Korean
13  court will do with an inbound request for discovery through a
14  Korean court in Korea.  That's just a very attenuated line of
15  logic that defendants are citing as proof that the Korean court
16  would be hostile to documents that came from the U.S. through a
17  1782 procedure.
18     I also, while I'm on the subject of Intel, your Honor, I
19  want to point out that, yes, as counsel stated and I'm learning
20  for the first time here, the court on remand did say that the
21  document requests were unduly burdensome.  What counsel didn't
22  tell you is that the court found it, quote, largely unnecessary
23  and purely academic to address this doctrine and only did so,
24  quote, for the sake of completeness, and then it addressed the
25  fact that there was no attempt to tailor its request and there

## Page 40

1  was 67 or 70 requests and so this is a different case, your
2  Honor.
3     HON. LEGGE:  Could I have the cite please to Judge
4  Ware's decision on a remand.  Could you give me the cite?
5     MR. SEARBY:  It's 2004 WL 2282320.
6     HON. LEGGE:  Okay.  Thank you.
7     MR. SEARBY:  So it is exactly -- this case does not
8  truly turn on the point that Counsel Cho decided for.  It turned
9  on the fact that the European Commission flatly and plainly
10  rejected the need for this evidence, and then just as a
11  throwaway point for the sake of completeness, the court knocked
12  the burdensomeness of the request.
13     Your Honor, I'd like to turn to the undue burden and
14  overbreadth arguments now.  This is a key point.  This is
15  largely Mr. Saveri's issue.  I would say, truly Mr. Saveri's
16  issue.
17     According to Mr. Saveri's declarations, the discovery
18  files at issue that we're all arguing about has been transferred
19  to a single server, which means that in practice, and this is my
20  interpretation, your Honor, the transfer will involve a little
21  more than someone monitoring an automated transfer process for
22  these computer files to be put on a hard drive and given to us.
23  This is not a burden, a serious burden upon Mr. Saveri to begin
24  with.  Mr. Saveri claims his IT team would spend 30 to 40 hours
25  doing this, but in saying that, your Honor, Mr. Saveri has not

## Page 41

1  taken account of the fact that Sharp is committed to pay the
2  costs of a vendor to come in and transfer the hard drive data
3  instead of having his personnel sit there while the files copy.
4  Sharp will pay for that vendor to come in and do that.
5  Mr. Saveri's 30- to 40-hour estimate does not account for what
6  burden he would still have after we make that accommodation.
7  So, really, the burden here is extraordinarily light.  And I
8  would further add that by asking for the discovery file, and
9  we've now limited our request to defendants' documents, not
10  everybody's documents but defendants in the U.S., their
11  documents and defendants' depositions.  By limiting it to the
12  discovery coming in from defendants, it's all preloaded on a
13  hard drive, we thought we were reducing the burden on the part
14  of Mr. Saveri, and we are.  We're not asking for complicated
15  categories of documents in which people actually have to apply
16  lots of judgment and analysis to whether they're responsive and
17  therefore we're making this incredibly easy and the burden very,
18  very light.  It is ironic that they're pointing to the way that
19  we're going about this as the cause of burden merely by the
20  number of documents involved, five million, when, in fact, this
21  all can be done within a few hours by an outside vendor for
22  virtually no cost to Mr. Saveri.
23     HON. LEGGE:  A couple of comments.  One is that you
24  could have taken the burden from them entirely by directing your
25  subpoena to the defendants individually instead of to

US Legal Support
888-575-3376

**Page 42**

1  Mr. Saveri's office.  And, secondly, I'm not sure if I order the
2  subpoena enforced that I'm going to go along with the idea of an
3  outside vendor.  It seems to me there's some risks over control
4  of their documents and their database that is presented by their
5  turning that access over to an outside vendor, but that's a very
6  minor point.
7       Go ahead, please.
8       MR. SEARBY:  Yes, your Honor.
9       By the way, we would have every -- we would allow
10  Mr. Saveri to use his judgment and pick the vendor and be in
11  control of the whole process; we would just pay for it.  But to
12  your Honor's point about directing this instead to a defendant
13  in the case instead of Mr. Saveri, the fact is that before we
14  got to all these discretionary factors under Intel, we had to
15  make out the statutory requirements first.  And one of those
16  statutory requirements was that the subpoena recipient is in
17  possession of the documents that we seek and that they control
18  evidence within the Northern District of California.  Well,
19  Mr. Saveri is the one who made that showing possible as to
20  himself.  We have his declaration, which we cited in our
21  application.  And, you know, we don't frankly know who we can go
22  to and prove to the court has the entire discovery record in the
23  case that we seek from all defendants.  We don't have something
24  we can submit to your Honor to fill out that statutory
25  requirement.  Mr. Saveri fulfills that requirement and, again,

**Page 43**

1  your Honor, the burden here is a matter of hours versus IT staff
2  paid for by Sharp.  It really shouldn't matter whether we
3  collect the documents from Mr. Saveri or anyone we are able to identify
4  some other parties, some other -- some defendant in the case to
5  collect the documents from.  In either of those cases, the
6  burden is not significant and is something that Sharp is willing
7  to assume the cost of.
8       Now, Saveri's alternative for us is to go start all over
9  after three months and everything being drawn out in this
10  process and to start over and then I suppose to pursue new
11  application on each coconspirator in the Korean case for their
12  documents instead of simply and efficiently getting them all
13  from one source in a matter of hours at Sharp's expense.
14  Sharp's subpoena targets materials that have been already passed
15  through a certain filter of relevance to the conspiracy that
16  took place through these so-called glass meetings all over Asia
17  as alleged in both the Korean complaint and the U.S. case.  So
18  contrary to what counsel said, that we have very good reason to
19  believe that this collection of discovery contains evidence that
20  may be useful in our case, and, you know, who's to say how many
21  documents we'll wind up needing to use and submit to the Korean
22  court.  But the fact that this is a collection of documents that
23  we would obtain from the same defendants involved in the same
24  glass meetings that victimized Sharp is an excellent way of
25  understanding the relevance and the discoverability, the

**Page 44**

1  relevance for discoverability purposes of these collection of
2  documents.
3       Defendants and Mr. Saveri also argue that Sharp should
4  narrowly tailor its document request, but if we did that, I
5  guarantee you we'd be being accused right now of a huge burden
6  of having to analyze all kinds of very specific tailored
7  document requests.  And it should be enough to Sharp to
8  determine which of the documents from the U.S. case about these
9  so-called glass meetings are helpful to its claims about price
10  fixing and CPTs.  The burden argument in the end is just an
11  illusion, your Honor, with a big number of filing many of these
12  documents but no actual genuine burden either to Mr. Saveri or
13  to the defendants.
14       I want to talk about the fact that we have tailored our
15  requests somewhat as a result of the meet-and-confer process
16  with Mr. Saveri.  The subpoena calls for all documents in the
17  U.S. litigation as we stated in our motion to compel Mr. Saveri.
18  We trimmed that down after speaking with him and we agreed to
19  one of his suggestions that we only seek documents from the
20  defendant and not from the plaintiffs or the victims in the
21  U.S., and so we have, in fact, tailored our requests as much as
22  we could.  Mr. Saveri didn't sit down with us and explain to us
23  how to craft just the right document request that would allow
24  him to produce only the documents that are relevant to our
25  claims about CPTs and he didn't give us any other suggestions

**Page 45**

1  for tailoring that would allow us to know that we were not
2  missing out on relevant evidence that has been produced again
3  through this filter of a case about the same conspiracy in the
4  glass meetings.  So we have attempted to narrow our requests.
5  We have narrowed our requests.  There's no serious suggestion
6  out there for us to grab hold of for narrowing it even further
7  and what I suggest --
8       HON. LEGGE:  Wait a minute.  Where is all this
9  narrowing?  All I have in front of me is a definition of the
10  documents requested in the subpoena and it says:  Any and all
11  discovery material obtained during or as a result of discovery
12  in the direct purchaser action relating to cathode ray tubes
13  including, but not limited to, color picture tubes.  I don't see
14  how that's limited.  You must have some either verbal agreement
15  or written agreement with Mr. Saveri that I haven't seen.
16       MR. SEARBY:  Well, your Honor, what you're looking at is
17  the exact subpoena that we served after getting the order from
18  the court.
19       HON. LEGGE:  Yeah.  That's right.
20       MR. SEARBY:  After Mr. Saveri took two weeks to object
21  to that subpoena on the grounds of overbreadth and burden, we
22  arranged a meet-and-confer and we met and conferred to try to
23  narrow our requests just as your Honor would like us to and the
24  results of that meet-and-confer was the agreement by Sharp
25  communicated to Mr. Saveri to reduce its requests as I've

**12 (Pages 42 to 45)**

**Page 46**

1   described now.

2       Actually, in our motion to compel on page 3 of our

3   motion to compel addressed how we have, since serving the

4   subpoena, tried to make clear to Mr. Saveri that we accommodate

5   his suggestion about limiting our requests to the defendants'

6   documents and for the defendants' deposition.  That is at the

7   bottom of page three of our motion to compel, which is document

8   1340 on the record.

9       HON. LEGGE:  Wait a minute.  Where is that now?

10      MR. SEARBY:  Page 3, your Honor, in our motion to compel

11  letter.

12      HON. LEGGE:  Bottom of page 3 at the August 28th

13  meet-and-confer.  Is that it?

14      MR. SEARBY:  Yes.  And so we -- and we subsequently made

15  the same accommodation as to deposition transcripts.  We also

16  said that we would pay any fees that are owing to the court

17  reporters or reimburse Mr. Saveri for any cost.  So this

18  meet-and-confer is something that we took seriously and we

19  latched onto the reasonable suggestions that Mr. Saveri made

20  during that meet-and-confer to reduce the scope of our request.

21  That contradicts, frankly, the arguments that you've heard today

22  and that are in the papers that we have made no effort

23  whatsoever to tailor our requests.  We just don't have any basis

24  beyond what we've done to limit our request because Mr. Saveri

25  -- we don't know what's in this discovery record, your Honor, so

**Page 47**

1   we're dependent on Mr. Saveri to explain to us reasonable

2   measures to reduce the scope of our request.  In fact, we have

3   taken him up on some of those.  And frankly, you know, we think

4   that asking for the defendants' document production and leaving

5   aside everything else, you know, is an excellent way of

6   reducing, you know, some of the issues which have been raised.

7   But the fact of the matter is that if we were to tailor requests

8   with specific document categories in the way that discovery gets

9   done as an initial matter, that would require serious attorney

10  time.  That would require serious paralegal time and boxes and

11  boxes being poured through by people.  What we are doing is

12  actually minimizing the burden by asking for the document

13  collection in the way that we have.

14      Again, this happens all the time when parties, new

15  parties or opt-out plaintiffs enter a case and nobody is out

16  there complaining that those attorneys and that plaintiff who

17  just entered the case on behalf of the class is unfairly

18  benefitting from the discovery that had been worked up by other

19  attorneys in the case up until that point.

20      There are also many instances, as we've pointed out, of

21  1782 applications being granted where a party involved in

22  foreign litigation is granted access to the fruits of a U.S.

23  discovery process.  And so, you know, there might be some

24  visceral reaction there about sweat equity, but the

25  jurisprudence simply permits this kind of thing and I think it's

**Page 48**

1   more concerned with the just result of the foreign litigation

2   and the parties.  In our case, Sharp has been victimized by an

3   antitrust conspiracy against it to the tune of untold millions

4   of dollars.  That's what this is ultimately all about.  And if

5   Mr. Saveri has to spend a few hours coordinating with some

6   document service to transfer hard drives or if we gain access to

7   evidence, that is all in the normal course under this 1782

8   jurisprudence.

9       HON. LEGGE:  Why didn't you sue in the United States?

10      MR. SEARBY:  Your Honor, I am not -- I'm not Bar'd in

11  Korea.  I'm only Bar'd in the State of California.

12      HON. LEGGE:  Yeah.

13      MR. SEARBY:  But what I think I know is that the

14  commerce, the sales that are at issue in the Korean litigation

15  are not touching the United States.  That there are these glass

16  meetings --

17      HON. LEGGE:  I understand.

18      MR. SEARBY:  Okay.

19      HON. LEGGE:  I understand what you're saying.  So U.S.

20  nexus to most of your sales.

21      MR. SEARBY:  That's right.  And, of course, we'd have

22  big problems if we sue the United States without that.

23      HON. LEGGE:  Sure.  You wouldn't have problems, you just

24  wouldn't get anything.

25      MR. SEARBY:  Your Honor, these are the same glass

**Page 49**

1   meetings.  So there's, at least as far as we know, that these

2   are meetings that are fixing the prices globally so that the

3   sales attached to the U.S. results in a U.S. cause of action, et

4   cetera, but it's the same meetings and that's why we need these

5   documents.

6       HON. LEGGE:  Okay.  Anything further?

7       MR. SEARBY:  Well, your Honor, again, there's this

8   discussion of fairness and how the Korean court would react to

9   the defendants in the Korean case not having access to the same

10  tools that Sharp is using as a result of the 1782 application.

11  Again, that's not a genuine argument because there is no

12  proposal by Sharp to keep this material to itself.  And if

13  defendants, frankly, want to pursue their own 1782 application

14  here to go after documents that aren't covered by our request,

15  we have nothing to say about that.  So it is again a mythical

16  argument designed to make it seem like this is unfair and that

17  the Korean court would somehow react to the unfairness of our

18  getting our hands on this discovery collection.

19      Again, I think a big thing that your Honor has to

20  realize is that the lead argument here that we could have gone

21  after all this discovery in Korea by asking for the documents in

22  that KFTC report is completely wrong because it had to do with

23  price fixing of products that we didn't buy.

24      HON. LEGGE:  You told me that.  I understand.  It's a

25  matter of common sense anyway.  I'm sure you wouldn't go through

**13  (Pages 46 to 49)**

**Page 50**

1  this process if you could get it from your Korean defendants.

2      All right. Is there anything else you want to add,

3  Mr. Searby?

4      MR. SEARBY:  Well, your Honor, I could go into the

5  confidentiality and the protective order. I really feel like

6  that's a secondary issue. There's case law saying that a party

7  does not suffer prejudice merely by allowing access to materials

8  already produced to other parties and litigation. There are

9  numerous cases where protective orders have not been found to be

10  serious obstacles to a 1782 application. Here we have a

11  detailed plan for protecting the confidentiality of the

12  documents contrary to what counsel said earlier. I'd be happy

13  to go into that. I do think it's downstream from the wisdom of

14  getting us the documents in the first place.

15      HON. LEGGE:  Well, I'm inclined to think that last

16  comment is correct, that I don't think there's any reason for my

17  discussing that greatly at this point.

18      So if that is all, Mr. Searby, I think you've done an

19  excellent job of conveying your client's position and so I'll

20  turn back to the defendants to add whatever they want to add to

21  the quashing motion.

22      MR. CUNNINGHAM:  Thank you, your Honor.

23      I'll try to respond to those points in kind here, but

24  let me just say sort of as an overarching matter, what's

25  important here is Sharp -- I'll respond to the first point. The

**Page 51**

1  first point basically being that Sharp has a strong need for

2  documents.

3      Sharp has tools in order to get documents that are

4  available to them. There's no dispute about that. But you can

5  get documents from the parties, from third parties via discovery

6  tools that are in Korean Rules of Civil Procedure, and those are

7  the rules that should apply to Sharp's Korean lawsuit. That's

8  the basic crux of the biscuit here, I think, is that Sharp

9  should not be allowed to opt out those restrictions and

10  substitute in U.S. relatively lax U.S. discoverability rules and

11  leave defendants to play by completely different rules, more

12  restrictive rules. It's just inherently prejudicial and unfair

13  to the defendants in the Korean litigation.

14      I think another important point along those lines is

15  that Sharp has made no effort, I heard nothing from Mr. Searby

16  here to contradict this, has made no effort to proceed under

17  those rules to even try to gain discovery, to say it's

18  impossible, but I haven't seen -- they haven't made an effort at

19  an application.

20      Mr. Searby makes the point that they have a strong need

21  for documents, but defendants also have a need for documents,

22  and I don't think it's any answer to say that, Well, Sharp will

23  make available to defendants in the Korean litigation the same

24  documents that defendants produced here. Those aren't the

25  documents we need. Frankly, what we need is to be able to take

**Page 52**

1  our own discovery from Sharp if you want to place us on equal

2  footing and we would not have an opportunity to do that or

3  anywhere near the same opportunity to do that if we were left to

4  play by the Korean rules, while Sharp plays by U.S. rules.

5      I heard Mr. Searby say that we're free to apply for our

6  own 1782 application, I don't think that's an answer either.

7  Sharp is a Japanese company, Sharp Corporation, and they've

8  produced very few documents in this litigation that would be

9  available for us to try to get through a 1782 application. And,

10  frankly, that's kind of the tail wagging the dog if you say that

11  it's up to us to mimic their 1782 application to come to the

12  U.S. to get Japanese documents and bring them to Korea. And

13  it's not needed to ensure fairness here. To ensure fairness,

14  all you have to do is quash the subpoena and both parties will

15  try this Korean lawsuit according to Korean rules.

16      Mr. Searby made the point, maybe I didn't fully

17  understand it, but I heard him say that it's somehow duplicative

18  for us to make the point on the one hand that Korean discovery

19  is limited but on the other hand the Korean court would be

20  hostile to 1782 relief. I think those things actually support

21  each other. I think they go hand in hand. The fact that Korea

22  has these limited discovery rules, that's probative of the fact

23  that they would not appreciate an influx of a document dump from

24  a U.S. discovery campaign. So I don't think those are

25  contradictory at all.

**Page 53**

1      With respect to the KFTC report that we attached to our

2  declaration, I hear Mr. Searby criticizing us because we didn't

3  provide -- provided an insufficient roadmap for him to take

4  discovery in Korea. I don't think it's our job, frankly, to

5  provide him with a sufficient roadmap to take Korean discovery.

6  I think our point in providing that and making the suggestions

7  that we did in our reply brief is that there is a lot of public

8  information that's out there about the documents. There are a

9  lot of documents that have actually been made public in this

10  lawsuit and elsewhere and Sharp can avail themselves of those

11  public materials if they feel, if they say they don't have

12  information about particular documents to make an application.

13  And I think that that's the proper first step for Sharp to make

14  here is to make some effort to proceed and take discovery under

15  Korean rules.

16      With respect to the comments from the Korean court about

17  acknowledging their U.S. efforts, I think your Honor was

18  trenchant in your insight about that it doesn't really speak to

19  whether the Court would be receptive or not. And if your Honor

20  is inclined to give any credence at all, I would ask you to take

21  a look at the decision in the Digitechnic case that we cited in

22  our briefs.

23      In that case, the applicant made a very similar

24  statement or re-laid a very similar statement that they said

25  that they had told the French court in that case that they were

US Legal Support
888-575-3376

**Page 54**

1    going to conduct U.S. discovery and the French court expressed
2    great interest in that discovery and the Court gave that no
3    credence at all for the same reasons that your Honor expressed.
4         To counsel's point about there being -- with respect to
5    the difference sets of defendants here, it is the case that they
6    are not completely overlapping.  There are defendants in the
7    Korean litigation that are not present in the U.S. litigation.
8    So just to try to clarify that point.
9         On the point about whether the Korean court would be
10   receptive to this discovery or not, I think I heard Mr. Searby
11   trying to reverse the burden there.  We cited several cases in
12   our papers from within the Ninth Circuit from District Courts
13   saying that on that point in particular, if there's silence that
14   actually either works against the applicant or the Courts find
15   it's basically a neutral factor.  So I will admit that there are
16   cases that go either way on that point with regards to the
17   burden, who bears the burden of showing that the court, the
18   foreign court would be receptive, but I think the Wade authority
19   inside the Ninth Circuit is that that lies with the applicant.
20        Let me talk for a minute about this Kulzer case that
21   counsel has talked about a couple of times in the Seventh
22   Circuit.  It's an interesting case because the way the opinion
23   was laid out, at the start of the opinion Judge Posner talks
24   about 1782 discovery generally and lays out several pitfalls
25   that could -- lied in the path of the District Court as they're

**Page 55**

1    considering a 1782 application.  And he goes on to explain why
2    those pitfalls aren't present in that particular case, but I
3    think they are present in this case.
4         So basically that case had to do with German litigation
5    between two competitors and it was trade secrets litigation and
6    it was two companies that made bone cement and one company
7    sought discovery of the other in the U.S. and with a very narrow
8    subpoena, seeking a very narrow range of documents having to do
9    with correspondence between one company and another with respect
10   to that particular bone cement formula.  So there's the first
11   difference between the two cases, that's a much more narrow
12   request.  I won't go through all the facts, but the Court laid
13   out the pitfalls, as I said, that I think are present here.
14        One, the Court recognized this danger of unfairness that we have
15   here where one party gets a trove of documents from the United
16   States and brings them back and the another party doesn't have
17   the same discovery opportunity.  I think that's present here.
18   The court in Kulzer said it wasn't present there.  The Court in
19   Kulzer also noted that the applicant had no opportunity to get
20   the same discovery in Germany, but I think that's shown here
21   that there is an opportunity to get some documents at least in
22   Korea, it's just that Sharp hasn't availed themselves of that
23   opportunity.  Another pitfall identified by the Kulzer Court
24   that I think is present here is that the foreign court might get
25   more documents than it actually wants.  Judge Posner's opinion

**Page 56**

1    is one of the ones that talks about the danger of swamping a
2    foreign court with unwanted discovery.  And Judge Posner says
3    it's not a real danger there because the courts can control and
4    just refuse to admit whatever documents it doesn't want.  I
5    don't know that the Korean court has the same control here.  In
6    fact, Sharp has said in its papers that there are very lax rules
7    of admissibility in Korea.  So I think that's a particularly
8    acute problem and a pitfall that's particularly present here in
9    this case that wasn't in Kulzer.
10        Just let me take a look at my notes.
11        The final point I'd make, your Honor, is that our
12   confidentiality issues here are real.  I don't know that we
13   could resolve the protective order issues now and I haven't read
14   a real proposal for resolving them yet, but I would caution -- I
15   would say that we shouldn't be --
16        HON. LEGGE:  Well, what do you have here?  Is it a
17   blanket confidentiality order that's been entered or do you have
18   a lot of documents filed under seal or what's the source of the
19   confidentiality protection that the parties now have in this
20   case in the United States?
21        MR. CUNNINGHAM:  There is a protective order in the
22   United States.  It says that the documents produced here were
23   produced only for use in the this U.S. CRT MDL.  It provides for
24   the producing party to label the documents either confidential
25   or highly confidential.  In reliance on that order, the parties

**Page 57**

1    produce documents and gave them the appropriate label.  And as I
2    expressed in my opening remarks, we're just concerned that
3    confidentiality can't be maintained if these documents were
4    brought into Korea.
5         MR. TALADAY:  Your Honor, may I add something from that
6    point?
7         HON. LEGGE:  Yeah.  Let me finish up with the parties
8    first and I'll ask the other counsel present if they want to add
9    anything.
10        Mr. Searby, one question just occurred to me.  In the
11   U.S. litigation, did Sharp opt out of the direct purchaser
12   class?
13        MR. SEARBY:  Yes, your Honor.
14        HON. LEGGE:  And did you also opt out of the indirect
15   purchaser class?
16        MR. SEARBY:  I'm not as clear about the indirect
17   purchaser class question you pose.  I tend to doubt it, but I do
18   know that we opted out of the direct purchaser class and --
19        MR. TALADAY:  Can I clarify that?
20        HON. LEGGE:  Counsel here thinks he has an answer.
21        MR. TALADAY:  So neither the direct purchaser or the
22   indirect purchaser class has been certified.  That's coming up
23   for your Honor's consideration.
24        HON. LEGGE:  Yes, I understand.
25        MR. TALADAY:  There have been two settlements that have

**15  (Pages 54 to 57)**

**Page 58**

1  moved forward for the direct purchaser class. I'm unaware that
2  the indirect purchaser class has moved any settlements forward.
3       MR. SAVERI: Rick Saveri, if I may, your Honor.
4       Sharp has opted out of the two settlements, and that
5  declaration was filed and that was before your Honor this
6  morning. Sharp has chosen not to be before us and in this
7  venue. So I'm going to hold on. I wanted to make two points.
8  This was one of them, your Honor. I'll hold off on that though.
9       HON. LEGGE: Mr. Rushing, you want to add anything?
10      MR. RUSHING: I just have one quick one, your Honor. I
11 would just -- briefly going back to the burden question.
12      Mr. Searby is just wrong, as I explained earlier, to
13 assert that there's no burden on Saveri at all. Obviously as
14 our declaration reflected, we would attempt to minimize the
15 burden to us but that it would not be possible for us to do that
16 completely. And I think Mr. Searby -- I mean, his argument
17 essentially treats Saveri as you would treat a vendor, and
18 that's our point. I don't think Mr. Searby's attitude is
19 surprising either. I think it's typical and it would be typical
20 of the attitude of the attorneys for every other plaintiff and
21 every other foreign jurisdiction right now. And that, you know,
22 if this motion is granted and if Saveri becomes -- has to
23 produce these documents, it will be one-stop shopping for these
24 cases, the Saveri firm, and we just submit that we should not be
25 in that position.

**Page 59**

1       Secondly, Mr. Searby's point that this happens all the
2  time with third-party direct-action plaintiffs, it does, but if
3  you -- the order in this case, we have an order which your Honor
4  entered regarding that very procedure, it's document number 1128
5  filed on April 3rd, 2012, order re discovery and case management
6  protocol. Paragraph F of that order provides that it's the
7  defendants, it's not the Saveri firm, it's the defendants who
8  are to provide the direct-action folks with the documents.
9  Again, this notion that it would be Saveri or the plaintiffs who
10 are obligated to bring these folks up to speed is not correct.
11      Mr. Searby made a point about delay, but, again, that's
12 not a reason to require Saveri to do anything there. If they
13 subpoenaed to wrong person, they subpoenaed the wrong person.
14 That's their problem.
15      HON. LEGGE: Mr. Saveri, you wanted to add something?
16      MR. SAVERI: Just briefly, your Honor. Two points. I
17 find it sort of fundamentally unfair that a company takes
18 affirmative steps not to be here. They have opted out of the
19 direct purchaser case and filed in Korea. They've done
20 affirmative steps not to be in this District Court. They've
21 taken -- they do not wish to be here. Now after they filed
22 their case in Korea, has said, Oops, we now want all the
23 benefits of the U.S. discovery, and I think that's just
24 fundamentally unfair, your Honor. If they wished to be here and
25 take the benefits of the U.S. discovery, they should file a case

**Page 60**

1  here and then be subject to the Court's order on how that
2  discovery procedure conducts itself, as Mr. Rushing outlined.
3       So just briefly, your Honor, they have taken steps not
4  to be in this jurisdiction and therefore I do not feel they
5  should have the benefit of the discovery here.
6       The second point and as was stated by Mr. Searby, we did
7  meet and confer and it was patently clear they have no interest
8  in any of the plaintiffs' documents, your Honor. They don't
9  want any of the plaintiffs' documents, any of the plaintiff's
10 depositions. They want the defendants' documents. They want
11 Samsung's documents. So that's why we say the subpoena is just on the
12 wrong party. If I want Samsung documents, I go to Samsung, your
13 Honor. And I feel if Sharp wishes to get the defendants'
14 documents, they should put the subpoena on one of the
15 defendants, all of the defendants, and get the documents. They
16 have a complete set of all the same defendant documents that I
17 have, your Honor.
18      So I really feel that the subpoena is directed at the
19 wrong party. They don't want any of our documents. They wish
20 to have Samsung's, the Philips, the Hitachi, the Toshiba
21 documents, and they should go to those parties for those
22 documents, your Honor. That's all. Thank you, your Honor.
23      HON. LEGGE: All right. Do any other counsel present
24 wish to comment?

**Page 61**

1       MR. TALADAY: Yes, your Honor, if I could.
2       MR. SEARBY: Your Honor. I'm sorry, your Honor. This
3  is Bruce Searby on the telephone. I would like to respond to a
4  couple of remarks.
5       HON. LEGGE: Well, I will give you that chance. I'll
6  give you the opportunity to close here, but I'm just asking
7  whether the other defense counsel who have been attending the
8  hearing wish to make a comment.
9       MR. TALADAY: Your Honor, John Taladay on behalf of
10 Philips. I'll make a few comments to clarify some factual
11 misperceptions which apply to Philips as well as some of the
12 other defendants. If I misstate them, they can certainly
13 clarify.
14      Your Honor, we are a moving party here. We've joined in
15 this motion to quash. If you look at footnote one of the
16 motion, you'll see that we have, all of defendants present have
17 and I believe every defendant in the case has, so we certainly
18 endorse the arguments that Mr. Cunningham has made.
19      Secondly, your Honor, Philips and Philips entities are
20 not a party to the litigation in Korea. None of our
21 subsidiaries are parties to the litigation in Korea. Mr. Searby
22 mentioned LG/Philips displays, which was a joint venture formed
23 in 2001 in which Philips and LG were shareholders. We disposed
24 of our last share, remaining shares in that entity in 2006 and
25 have had no relationship to that entity prior even as a

**16  (Pages 58 to 61)**

Page 62

1  shareholder. So we are not a party to that case.
2      That has one implication I would mention, your Honor,
3  with respect to the protective order. If your Honor concludes
4  to allow the subpoena, we would urge you not to, we would be in
5  a position as a nonparty to that case. I don't know who the
6  defendants are. I don't know who the parties are in that case.
7  I have no means of monitoring what happens to our documents set
8  in that case. I have no means of knowing whether the parties
9  who might sign that protective order are subject to the
10 jurisdiction of this court, which means I have no idea whether I
11 have a remedy if the protective order is violated. So should
12 you conclude that it's proper to proceed with the subpoena, we
13 would at least reserve, your Honor, on whether we are proper
14 parties for whom to produce documents.
15     And if I can be permitted one observation on the merits,
16 your Honor.
17     HON. LEGGE: Yes.
18     MR. TALADAY: If I have heard Mr. Searby properly, and
19 he'll correct me if I haven't, Sharp has never actually formally
20 requested documents before the Korean court. I believe
21 Mr. Searby said that Sharp's Korean counsel opined that the
22 Korean court would not produce the documents; I think in the
23 record you'll find the words it would be a probably futile
24 effort, and I would find it, your Honor, a question of some
25 concern if United States courts were to become the court of

Page 63

1  first instance for seeking discovery in foreign proceedings when
2  the foreign procedure had not even been attempted.
3      HON. LEGGE: Okay. Any other counsel wish to be heard?
4      MS. MAYO: Your Honor, on behalf of LG, we agree with
5  Mr. Taladay's arguments on behalf of Philips and point out that
6  we were also in that joint venture. LGE is not in the
7  litigation in Korea.
8      HON. LEGGE: You parties need not just adopt what others
9  have said. I assume that counsel for defense has been speaking
10 on behalf of everybody. So unless there's something to add, I
11 think we should conclude your participation. Thank you.
12     Mr. Searby, you wish to conclude, sir.
13     MR. SEARBY: Yes, your Honor.
14     I think that most of the remarks of counsel I've already
15 addressed in mind. There are a couple of things particularly
16 relating to some of the cases. Digitechnic I want to talk
17 about. The Digitechnic case is a more general proposition
18 offered by counsel that in the Ninth Circuit the applicant has a
19 burden of proof on the receptivity factor that the foreign court
20 will receive the evidence. That is really not a fair reading of
21 these cases, your Honor, and I urge you to read the cases In Re
22 Application of Peter Damien Marano. However, Digitechnic --
23 page 3 of the brief -- of the reply brief of the defendants. If
24 you read those cases, you'll find out that again --
25     HON. LEGGE: Wait a minute. Before I can read them,

Page 64

1  I've got to get a citation. So where are you reading from that
2  I can copy that citation?
3      MR. SEARBY: Page 3 of the reply brief of the
4  defendants.
5      HON. LEGGE: Reply brief of defendants?
6      MR. SEARBY: That's correct. That's document 18. In
7  any event, it's filed on September 17th, just a few days ago.
8      HON. LEGGE: I'm sorry. Give me a moment to get my
9  hands on it. Here it is.
10     Where am I looking?
11     MR. SEARBY: You're looking at page 3 in the middle of
12 the page it says: Within the Ninth Circuit, however, courts
13 have generally placed the burden on the requesting party to
14 provide facts showing that the foreign court would welcome the
15 proposed discovery. That is just a real stretch of those cases.
16 These cases are, first of all, unpublished District Court cases.
17 They do not purport to analyze and discuss and formulate any
18 rule, any burden rule. What you see in them, your Honor, is the
19 issue of receptivity coming up, assertions by the applicant
20 about the receptiveness of the Court, and that basically either
21 being too weak or too unsubstantiated in that Court's opinion to
22 outweigh all the other factors in those cases that weighed in
23 favor of denying the application. This is really not a, quote,
24 unquote, test. There's no Intel test as defendants say in their
25 reply brief, a test where you have to meet each element. This

Page 65

1  isn't what's going on with the Intel case. It's a
2  non-exhaustive list of discretionary factors for the Court to
3  consider and many of them are sort of interrelated, and
4  essentially what you see in the cases is a discussion of all
5  these factors and the Court kind of coming out one way or
6  another based upon a very loose balancing process of
7  discretionary factors.
8      And so in the Peter Damien Marano case, you have serious
9  relevant problems about what the applicant had asked for and how
10 it would be possibly relevant to the foreign proceeding. You
11 have very serious burden and overbreadth problems regarding 40
12 different sets of documents, and these are factors that are
13 driving the court towards not wanting to grant the application.
14 And then there's a conclusory statement by the applicant that
15 this is no attempt to circumvent British law and the Court
16 doesn't buy it. It doesn't help. It doesn't outweigh the other
17 things that are going on in the case. For the defendants then
18 to say, Well, this establishes some sort of Ninth Circuit
19 burden, it's a real misreading of these unpublished District
20 Court decisions. And I ask your Honor to read that and the
21 Digitechnic case cited by counsel to understand that point.
22     Digitechnic is a case that turned on delay, crazy delay
23 by the applicant there. And nothing remotely what we have here
24 in this case and the Court reacted very poorly to that and the
25 applicant could not overcome the problems with his application

17  (Pages 62 to 65)

**Page 66**

1  with an assertion that the foreign court has expressed interest
2  in receiving the evidence. It didn't do it for the Court there,
3  which saw big problems with granting that application.
4  Essentially it felt like it was not a proper use of the Court's
5  time to come to the rescue of this party that had engaged in
6  such incredible delay.
7      And, finally, the Intel case. It's stands for the
8  proposition, your Honor, which is pivotal to this case here.
9  That if one tribunal's discovery limits do not necessarily
10  signal objection to aid from the United States Federal Courts in
11  that a foreign tribunal's reluctance to order production of
12  materials has no necessary correlation with a resistance to
13  receiving and considering evidence gathered here pursuant to
14  1782, and that's the Intel case.
15      So I wanted to point out those facts about the case law
16  and then I want to quickly respond to Mr. Saveri's point about
17  how Sharp has opted out and does not wish to be in the Northern
18  District of California in that litigation.
19      Well, you know, Sharp has opted out. The entire point
20  of opting out is to maintain the possibility of filing your own
21  lawsuit as a direct purchaser. Sharp hasn't done that yet, but
22  the entire point of writing an opt-out declaration or letter is
23  precisely to preserve your ability to be there with you all in
24  the CRT case as a direct purchaser plaintiff. So it's really
25  neither here nor there. You know, if we opt out and we don't

**Page 67**

1  file any cases or we do, it doesn't really matter because what
2  we're here about on this hearing is Korea. It's about a
3  different volume of commerce that doesn't touch the United
4  States and it's about a case that we really did file in 2010,
5  that it needs evidence to go forward and the Court there is
6  waiting for evidence to go forward. That's what this is about
7  and we cannot go forward without evidence. We need the evidence
8  here because we cannot at the moment pursue it there and all of
9  the defendants' ideas about how we should go about doing that,
10  basically fall flat and they're not real, they're not real
11  genuine options for my client.
12      So the defendants and Mr. Saveri are going to have us do
13  a runaround trying to do anything but lay our hands on what is
14  already sitting there, and this can go on for a very long time
15  or your Honor can recognize that we meet all the statutory
16  requirements and that there is no basis for quashing the
17  subpoena in the Intel factors and be done with this rather than
18  sending us traipsing in after all the different coconspirators
19  who participated in the glass meetings with separate
20  applications. That is not an efficient use of this Court's time
21  or anyone else's.
22      Again, if your Honor wants to talk about the protective
23  order, I'm happy to explain in detail how we have charted a
24  course for protecting those confidentiality interests. Paul
25  Weiss is committed to working with our client and with Korean

**Page 68**

1  counsel and with witnesses, opposing counsel, whoever, to ensure
2  that these documents' confidentiality is maintained, and we can
3  work that out. There's no reason, as counsel suggested, to
4  think we can't.
5      Thank you, your Honor.
6      HON. LEGGE:  All right.  Thank you, Mr. Searby, and
7  thank you to counsel present.  I think it was an excellent
8  presentation.  I'm not going to be making any ruling at this
9  time.  I feel I must go back and do quite a bit of reading.  So
10  the matter, the motion, both motions, I should say, more
11  specifically the defendants' motion to quash the subpoena and
12  Sharp's motion to compel are taken under submission as of today.
13      So thank you all very much and we will be off the record
14  at this time.
15      (Proceedings concluded at 4:10 p.m.)

1
2  STATE OF CALIFORNIA        )
                              )
3  COUNTY OF SAN FRANCISCO    )
4
5      I, Ruby Sanchez, a Certified Shorthand Reporter, do
6  hereby certify:
7      That said proceedings were taken before me at the
8  time and place therein set forth and were taken down by me in
9  shorthand and thereafter reduced to computerized transcription
10  under my direction and supervision;
11      I further certify that I am neither counsel for, nor
12  related to, any party to said proceedings, nor in any way
13  interested in the outcome thereof.
14      In witness whereof, I have hereunto subscribed my
15  name.
16
17  Dated:  October 3, 2012
18
19
20  _Ruby Sanchez_
     Ruby Sanchez
21  CSR No. 12971, RPR
22
23
24
25

## A

**ability** 66:23
**able** 10:20 43:3
  51:25
**abroad** 32:17 37:7
  37:13 38:7
**absolutely** 7:3
**academic** 39:23
**acceding** 14:5
**accept** 34:5
**access** 11:12 13:21
  13:22 30:13,21
  34:19 35:5,8,16
  42:5 47:22 48:6
  49:9 50:7
**Accession** 39:12
**accident** 22:11
**accidentally** 21:24
**accommodate** 46:4
**accommodation** 41:6
  46:15
**account** 41:1,5
**accused** 44:5
**acknowledged** 14:16
**acknowledging** 14:18
  53:17
**act** 10:7 13:8,9
  15:19 33:14 37:5
  37:22
**action** 28:5 45:12
  49:3
**actual** 44:12
**acute** 56:8
**add** 20:12 24:15
  25:3 41:8 50:2,20
  50:20 57:5,8 58:9
  59:15 63:10
**additional** 59:8
**additions** 6:21
**address** 25:16,22
  38:9 39:23
**addressed** 8:7 39:24
  46:3 63:15
**addresses** 39:12
**adequate** 17:23
**adequately** 17:15
**adhere** 35:17
**admissibility** 14:21
  14:22 56:7
**admissible** 15:1
**admission** 9:23
**admit** 54:15 56:4
**adopt** 23:13 63:8
**advantage** 7:25
  35:20
**affirmative** 59:18
  59:20

**afternoon** 4:25 5:5
**agency** 15:23
**ago** 21:20 29:5 64:7
**agree** 28:11 63:4
**agreed** 34:1 44:18
**agreement** 45:14,15
  45:24
**ahead** 6:3 10:24
  12:9,18 22:7
  36:14 42:7
**aid** 66:10
**alleged** 28:21 43:17
**allegedly** 34:14
**alleges** 28:19
**alleviate** 18:6
**allow** 9:15 18:9
  42:9 44:23 45:1
  62:4
**allowed** 9:17 25:6
  51:9
**allowing** 11:11
  13:25 15:15 50:7
**allows** 15:20
**alternative** 43:8
**altogether** 26:12
**AMD** 11:17,17
**AMD's** 12:3
**American** 20:2
**amicus** 38:17,20
**amount** 11:8 21:9
  24:20,23
**analysis** 9:10 12:8
  12:23 17:4 41:16
**analyze** 8:17,18,18
  8:19 44:6 64:17
**and/or** 23:9
**answer** 9:13,13
  51:22 52:6 57:20
**answers** 25:19
**antitrust** 1:7 4:16
  15:23 30:7,10
  48:3
**anyway** 49:25
**apart** 22:4
**apparently** 21:23
  36:18
**appear** 19:18
**appearance** 2:2 5:8
  5:12
**appearances** 2:1 3:1
  4:13,24
**appears** 23:7
**applicable** 33:16
**applicant** 11:11,17
  15:10 53:23 54:14
  54:19 55:19 63:18
  64:19 65:9,14,23

**65:25
**application** 1:11
  6:17 8:22 9:11
  10:2,13 13:14
  16:14 17:5,6,19
  29:6 30:2,4,6,8,9
  31:5 32:14,19
  33:10 35:11 36:17
  36:18 42:21 43:11
  49:10,13 50:10
  51:19 52:6,9,11
  53:12 55:1 63:22
  64:23 65:13,25
  66:3
**applications** 47:21
  67:20
**applied** 27:19
**apply** 41:15 51:7
  52:5 61:11
**appreciate** 25:15
  52:23
**apprised** 32:19
**appropriate** 29:9
  31:24 57:1
**approximately** 20:25
**April** 59:5
**argue** 36:21 44:3
**argued** 23:12 33:22
**arguing** 22:14 27:18
  40:18
**argument** 16:13 22:4
  25:24 28:15 44:10
  49:11,16,20 58:16
**arguments** 20:2 23:9
  23:13 25:21 40:14
  46:21 61:18 63:5
**Arnold** 3:9 5:15
**arranged** 45:22
**article** 13:9 15:19
  37:4,4,6
**articulate** 16:24
  17:11
**articulated** 18:7
**articulation** 10:18
  10:25
**Asia** 43:16
**aside** 47:5
**asked** 27:21 33:11
  65:9
**asking** 24:13 26:25
  41:8,14 47:4,12
  49:21 61:6
**asks** 12:20
**aspects** 7:1
**assert** 58:13
**assertion** 15:11
  66:1

**assertions** 64:19
**assistance** 1:11
  12:21 38:19,21
  39:10
**assume** 43:7 63:9
**assurance** 17:22
**attached** 49:3 53:1
**attempt** 8:1 9:11
  10:14 20:1 39:25
  58:14 65:15
**attempted** 45:4 63:2
**attempting** 17:10
**attending** 61:7
**attenuated** 39:14
**attitude** 58:18,20
**attorney** 47:9
**attorneys** 4:12 5:9
  8:3 47:16,19
  58:20
**August** 4:17 46:12
**authority** 18:2
  54:18
**automated** 40:21
**automatically** 24:17
**avail** 53:10
**availability** 15:8
**available** 9:18
  13:18 16:23,25
  29:10,14 51:4,23
  52:9
**availed** 55:22
**Avenue** 3:5
**avoid** 23:9

## B

**back** 7:25 12:13
  21:8 38:2 50:20
  55:16 58:11 68:9
**bad** 36:23
**BAKER** 3:3
**balancing** 7:1 65:6
**Bar'd** 48:10,11
**based** 19:20 28:3
  52:20 65:6
**basic** 8:25 51:8
**basically** 7:13 14:9
  17:9 19:5 38:3
  39:9 51:1 54:15
  55:4 64:20 67:10
**basis** 6:13,23 46:23
  67:16
**bears** 54:17
**becoming** 20:13
  23:23
**bed** 38:10
**begins** 33:5
**begun** 22:2

**behalf** 5:4,6,8,13
  5:15,17,19 18:19
  19:1 25:10 47:17
  61:9 63:4,5,10
**belabor** 13:24
**believe** 6:19,24 9:5
  17:15 21:3 22:19
  25:16 43:19 61:17
  62:20
**belong** 19:9 22:25
**benefit** 22:14 60:5
**benefits** 59:23,25
**benefitting** 47:18
**best** 6:4 13:4 20:24
**better** 19:21 22:17
**beyond** 16:23,25
  46:24
**big** 26:2 44:11
  48:22 49:19 66:3
**Bingham** 6:20
**birds** 29:20
**biscuit** 51:8
**bit** 18:22 68:9
**blanket** 56:17
**blatant** 12:5
**body** 31:5
**boils** 29:17
**bone** 55:6,10
**books** 26:22
**borders** 17:22
**bottom** 17:1 33:5
  46:7,12
**BOTTS** 3:3
**boxes** 47:10,11
**breaks** 19:5
**brief** 16:17 19:3
  20:4 23:15 24:14
  28:14 38:15,20
  39:6 53:7 63:23
  63:23 64:3,5,25
**briefly** 20:23 24:10
  58:11 59:16 60:3
**briefs** 5:9 7:11
  13:24 38:17 53:22
**bring** 31:11 37:10
  52:12 59:10
**brings** 55:16
**British** 65:15
**broad** 15:13 38:7
**broader** 17:8 29:13
  29:13
**brought** 28:17 57:4
**Bruce** 2:4 61:3
**bsearby@paulwei...**
  2:6
**bunch** 29:19 33:20
**burden** 8:10,10

11:25 19:13,16
  20:23 23:4 24:10
  26:8 29:18 35:4
  40:13,23,23 41:6
  41:7,13,17,19,24
  43:1,6 44:5,10,12
  45:21 47:12 54:11
  54:17,17 58:11,13
  58:15 63:19 64:13
  64:18 65:11,19
**burdensome** 12:1
  17:6 39:21
**burdensomeness**
  40:12
**bush** 29:20
**business** 20:16,22
  24:6,6
**button** 24:17
**buy** 49:23 65:16

---

## C

**C** 4:3
**CA** 2:10,16,22 3:11
**California** 1:2,19
  4:1 42:18 48:11
  66:18 69:2
**call** 10:8 12:19
  15:8 21:17 25:16
  38:16
**called** 4:20 11:20
**calls** 44:16
**campaign** 52:24
**candor** 25:15
**case** 1:7,10 7:13,17
  8:19 9:9 11:14,20
  11:22 12:2,13,15
  12:15 13:2 15:21
  17:25 19:10,11
  20:3,7,9,15 21:4
  22:25 23:3,14
  25:8 26:21 27:8
  30:6,7,22 31:2,4
  31:11,13,14 32:17
  33:13,17 34:21
  35:8,12,24,25
  36:4 37:17 38:2,3
  38:13,17,21,22,22
  38:25 39:6,8 40:1
  40:7 42:13,23
  43:4,11,17,20
  44:8 45:3 47:15
  47:17,19 48:2
  49:9 50:6 53:21
  53:23,25 54:5,20
  54:22 55:2,3,4
  56:9,20 59:3,5,19
  59:22,25 61:17

62:1,5,6,8 63:17
  65:1,8,17,21,22
  65:24 66:7,8,14
  66:15,24 67:4
**cases** 15:4 20:17
  24:6 30:2,5,20,21
  31:7 33:20 43:5
  50:9 54:11,16
  55:11 58:24 63:16
  63:21,21,24 64:15
  64:16,16,22 65:4
  67:1
**Catch-22** 26:18
**categories** 19:6
  41:15 47:8
**cathode** 1:7 4:16
  45:12
**cause** 41:19 49:3
**caution** 56:14
**CDT** 27:4
**cement** 55:6,10
**center** 2:16 3:10
  20:14 24:4
**certain** 6:19 8:2
  16:15 43:15
**certainly** 8:23
  61:12,17
**certified** 57:22
  69:5
**certify** 69:6,11
**cetera** 49:4
**challenge** 15:11
**chance** 16:18 61:5
**changed** 16:8,9
**charted** 67:23
**chase** 29:19
**check** 6:14
**checked** 6:16
**Chiu** 2:21 5:19,19
**Cho** 40:8
**chosen** 58:6
**Chunghwa** 28:23
**Circuit** 20:7 31:13
  31:21 54:12,19,22
  63:18 64:12 65:18
**circumvent** 9:11
  10:9 20:1 31:9
  65:15
**circumvention** 10:4
  32:3
**citation** 31:17 64:1
  64:2
**cite** 13:9 30:8,9
  40:3,4
**cited** 15:19 23:14
  31:14,19 37:5
  38:14 42:20 53:21

54:11 65:21
**cites** 11:11
**citing** 27:21 39:15
**civil** 10:7 13:8,9
  15:19 37:2,5 51:6
**claims** 40:24 44:9
  44:25
**clarification** 6:20
**clarify** 54:8 57:19
  61:10,13
**class** 25:5 27:9
  30:20 47:17 57:12
  57:15,17,18,22
  58:1,2
**Clay** 5:17
**CLAYTON** 2:21
**clear** 19:25 27:23
  34:9 39:10 46:4
  57:16 60:7
**clearly** 9:13 10:22
  23:7 37:9
**client** 67:11,25
**client's** 50:19
**clogging** 15:5
**close** 61:6
**closer** 18:22
**closest** 11:13
**coconspirator** 43:11
**coconspirators**
  28:22 67:18
**Code** 37:2
**colleagues** 22:12
**collect** 43:3,5
**collection** 29:22
  43:19,22 44:1
  47:13 49:18
**collections** 30:3,11
  30:15
**colloquy** 32:24
**color** 27:1,4 45:13
**come** 6:4 7:20 30:2
  30:19,21 41:2,4
  52:11 66:5
**coming** 7:3 18:21
  41:12 57:22 64:19
  65:5
**comment** 50:16 60:25
  61:8
**comments** 10:21
  41:23 53:16 61:10
**commerce** 48:14 67:3
**Commission** 15:23
  27:3,20 38:17,18
  40:9
**committed** 41:1
  67:25
**common** 19:7 22:20

22:23 26:13 49:25
**common-sense** 29:8
**communicated** 45:25
**companies** 28:23
29:24 36:3,3 55:6
**company** 11:19 36:11
52:7 55:6,9 59:17
**compel** 4:20 20:8,12
21:16 25:13 44:17
46:2,3,7,10 68:12
**compensated** 20:20
**competitors** 55:5
**complaining** 47:16
**complaint** 16:4,10
28:19,21 29:2
43:17
**complete** 21:11
60:17
**completely** 49:22
51:11 54:6 58:16
**completeness** 39:24
40:11
**complicated** 21:3
41:14
**comply** 16:2
**computer** 40:22
**computerized** 69:9
**computers** 28:1
**conceive** 17:8 18:8
**concept** 8:14
**concern** 13:10 17:13
18:16 25:17 30:18
33:21 38:8 62:25
**concerned** 20:13,22
23:23 48:1 57:2
**concerns** 17:13,16
18:6 26:10
**conclude** 62:12
63:11,12
**concluded** 22:7
68:15
**concludes** 62:3
**conclusion** 38:4,5
**conclusions** 34:9
**conclusory** 65:14
**concurring** 22:4
**conduct** 16:6 54:1
**conducted** 15:24
**conducts** 60:2
**confer** 60:7
**conference** 4:13
**conferred** 45:22
**confidential** 56:24
56:25
**confidentiality**
17:13,14,24 18:16
25:23 35:18 50:5

50:11 56:12,17,19
57:3 67:24 68:2
**connecting** 21:23
**connection** 4:16
5:10
**consider** 14:13,17
26:11 32:8,14
33:19 34:10 37:3
37:11,16 65:3
**consideration** 8:8
32:16 37:7 57:23
**considered** 38:12
**considering** 26:6
55:1 66:13
**conspiracy** 23:24
24:1 43:15 45:3
48:3
**conspirators** 29:1
**consultants** 18:14
**contacted** 6:19
**contains** 43:19
**contemplated** 32:1
35:15
**contend** 23:25
**CONTINUED** 3:1
**continues** 33:5
**contradict** 51:16
**contradicted** 11:7
**contradictory** 32:20
52:25
**contradicts** 46:21
**contrary** 13:5 14:4
21:1 24:13 26:6
32:10 43:18 50:12
**control** 15:1 42:3
42:11,17 56:3,5
**convenient** 20:19
**convert** 11:3
**conveying** 50:19
**Cooper** 33:17
**cooperate** 29:15
**coordinating** 48:5
**copy** 41:3 64:2
**Corp** 30:9
**corporate** 36:12
**Corporation** 52:7
**correct** 4:11 36:1
50:16 59:10 62:19
64:6
**correlation** 66:12
**correspondence** 55:9
**cost** 41:22 43:7
46:17
**costs** 41:2
**counsel** 26:20 27:9
28:4 32:23 38:14
39:19,21 40:8

43:18 50:12 54:21
57:8,20 60:24
61:7 62:21 63:3,9
63:14,18 65:21
68:1,1,3,7 69:11
**COUNSELORS** 2:20
**counsel's** 10:20
54:4
**count** 13:16
**COUNTY** 69:3
**couple** 6:18 28:4
35:24 36:10 41:23
54:21 61:4 63:15
**course** 6:12 7:16
10:8 30:4,13 48:7
48:21 67:24
**court** 1:1 7:24 10:3
10:3,3 11:10,15
11:21,24 12:13,20
12:24 13:1,7,10
14:11,12,14,15,16
14:19,25 15:2,5,5
15:16,22 16:1,3,5
16:7,15,20 17:22
18:1,5,13 20:8,10
21:3 26:5,6,17,21
26:23 27:5,6,8
28:11,17,18 29:3
29:12,14,25 30:5
30:12,17,25 31:4
31:8,22 32:6,7,9
32:13,17,24 33:9
33:9,10,12,14
34:1,1,4,6,9,15
34:17,19,24 35:2
35:3,4 36:23,24
37:3,9,10,15,16
37:24 38:6,11,13
38:20 39:13,14,15
39:20,22 40:11
42:22 43:22 45:18
46:16 49:8,17
52:19 53:16,19,25
54:1,2,9,17,18,25
55:12,14,18,18,23
55:24 56:2,5
59:20 62:10,20,22
62:25 63:19 64:14
64:16,20 65:2,5
65:13,15,20,24
66:1,2 67:5
**courts** 8:18 29:15
37:24,25 38:9
54:12,14 56:3
62:25 64:12 66:10
**court's** 14:1 31:6
31:10 36:16 38:19

60:1 64:21 66:4
67:20
**cover** 25:21
**covered** 49:14
**CPT** 27:1 28:7,9
**CPTs** 27:25 28:1,5,6
28:6 44:10,25
**craft** 44:23
**crazy** 65:22
**credence** 53:20 54:3
**credible** 16:4
**criticizing** 53:2
**cross-purposes**
14:25
**CRT** 1:7 15:24 20:15
28:20 56:23 66:24
**crux** 51:8
**CSR** 1:25 69:21
**cumulated** 34:16
**Cunningham** 2:15
4:25 5:1 9:7
10:25 12:14,17,19
19:18,25 23:12
50:22 56:21 61:18
**cuts** 9:10
**CV-12-80151** 1:10

**D**

**D** 3:9 4:3
**Damien** 63:22 65:8
**danger** 15:4,6 55:14
56:1,3
**data** 41:2
**database** 42:4
**date** 34:2
**Dated** 69:17
**day** 7:2
**days** 28:4 64:7
**deal** 6:25 35:3
**decide** 25:18
**decided** 40:8
**decipher** 8:21
**decision** 23:8 40:4
53:21
**decisions** 19:20
29:12 65:20
**declarant** 11:8
27:23 32:23
**declaration** 20:24
24:11 27:24 28:2
33:2,8 37:6 42:20
53:2 58:5,14
66:22
**declarations** 40:17
**defendant** 27:22
42:12 43:4 44:20
60:17 61:17

**defendants** 2:13,19
  3:2,8 4:19 5:1,3
  5:9,14,16,18,20
  5:22 8:5,7 9:4,5
  13:3,20 15:17
  16:21 17:13 18:14
  19:9,11,12,14,22
  22:24 23:1,1,5,20
  25:20 26:12,18,25
  27:5,7,17 28:14
  28:23,24 29:2,19
  32:19 33:7,19
  34:16,25 35:8,12
  35:19,24,25 36:4
  36:6,9,22 39:6,15
  41:9,10,11,12,25
  42:23 43:23 44:3
  44:13 46:5,6 47:4
  49:9,13 50:1,20
  51:11,13,21,23,24
  54:5,6 59:7,7
  60:10,14,16,16
  61:12,16 62:6
  63:23 64:4,5,24
  65:17 67:9,12
  68:11
**defense** 7:14 61:7
  63:9
**definitely** 14:2
**definition** 45:9
**defy** 26:12
**delay** 59:11 65:22
  65:22 66:6
**deliver** 8:12
**delve** 8:17
**demonstrated** 30:14
**denial** 20:8
**deny** 20:12
**denying** 64:23
**dependent** 47:1
**deposition** 46:6,15
**depositions** 13:13
  13:15,17,18 34:7
  41:11 60:10
**described** 46:1
**designed** 49:16
**despite** 39:6
**detail** 27:16 67:23
**detailed** 50:11
**details** 13:11 16:15
**determine** 44:8
**determines** 34:20
**developed** 6:16
**dictate** 12:4,7
**difference** 17:17
  23:19 54:5 55:11
**different** 21:5

29:24 40:1 51:11
  65:12 67:3,18
**Digitechnic** 53:21
  63:16,17,22 65:21
  65:22
**direct** 5:23 19:2
  45:12 57:11,18,21
  58:1 59:19 66:21
  66:24
**directed** 60:19
**directing** 41:24
  42:12
**direction** 69:10
**directly** 9:14
**direct-action** 59:2
  59:8
**disconnected** 21:18
  21:23,24 22:6
**discoverability**
  43:25 44:1 51:10
**discovery** 1:12 7:16
  7:16,18,22,23
  8:12 9:11,16,17
  9:22 10:7,15,17
  11:12 12:2,5,25
  13:1,4,12,15,19
  13:21,25 14:7,15
  15:5,12,14,15
  16:6,11 17:1,19
  23:16 26:8,15,16
  26:23 27:19 28:25
  29:4,10,13,13,15
  29:18,22 30:3,11
  30:21 31:9,22,23
  32:1,4,7 33:16,24
  34:7,15 37:15,19
  38:5,8 39:13
  40:17 41:8,12
  42:22 43:19 45:11
  45:11 46:25 47:8
  47:18,23 49:18,21
  51:5,17 52:1,18
  52:22,24 53:4,5
  53:14 54:1,2,10
  54:24 55:7,17,20
  56:2 59:5,23,25
  60:2,5 63:1 64:15
  66:9
**discretion** 31:7
**discretionary** 7:1
  11:15 27:14 42:14
  65:2,7
**discuss** 64:17
**discussing** 50:17
**discussion** 49:8
  65:4
**display** 27:4 36:11

**displays** 36:10
  61:22
**disposal** 23:1
**disposed** 61:23
**dispute** 9:20 37:2,4
  51:4
**disputed** 15:21
**disputes** 10:9
**disregarded** 14:12
**distance** 14:18
**district** 1:1,2 7:14
  10:3 11:22 42:18
  54:12,25 59:20
  64:16 65:19 66:18
**DIVISION** 1:3
**dixit** 10:11 11:6
**doctrine** 39:23
**document** 1:9 9:15
  9:20 10:7 15:15
  16:6 20:9 29:4
  34:7 35:1 39:21
  44:4,7,23 46:7
  47:4,8,12 48:6
  52:23 59:4 64:6
**documents** 4:20,21
  8:4,5,8 9:18 11:3
  11:6,9,18,18
  12:21 14:3,7,8,19
  14:23 15:1,3,12
  15:18 16:1,3,7,12
  16:16,21 17:9,14
  17:19,24 18:10
  19:8,15 20:5,15
  22:23,24 23:2,4,4
  23:16,20,20 24:4
  25:25 26:21 27:1
  27:1,2,8,12,21,22
  28:9,10,12,15
  34:15,18,20,21,22
  35:5,19,20 38:19
  39:16 41:9,10,11
  41:15,20 42:4,17
  43:3,5,12,21,22
  44:2,8,12,16,19
  44:24 45:10 46:6
  49:5,14,21 50:12
  50:14 51:2,3,5,21
  51:21,24,25 52:8
  52:12 53:8,9,12
  55:8,15,21,25
  56:4,18,22,24
  57:1,3 58:23 59:8
  60:8,9,10,11,12
  60:13,15,16,17,20
  60:22,23 62:7,14
  62:20,22 65:12
  68:2

**dog** 52:10
**doing** 9:1 20:21
  24:9 33:17,25
  37:22 40:25 47:11
  67:9
**dollars** 48:4
**doubt** 57:17
**download** 24:19
**downloaded** 24:18
**downloading** 21:5
**downloads** 24:17
**downstream** 25:24
  50:13
**draconian** 9:19
**draw** 38:4,4
**drawn** 43:9
**draws** 32:25
**drew** 34:8
**drive** 40:22 41:2,13
**drives** 48:6
**driving** 65:13
**dues** 7:24
**dump** 7:23 35:1
  52:23
**dumping** 34:14
**duplicative** 52:17
**D.C** 2:5 3:5

### E

**E** 4:3,3
**earlier** 38:3,14
  50:12 58:12
**early** 25:3
**easy** 41:17
**EC** 38:21 39:9
**effect** 9:24
**efficiency** 14:2,2
  29:20
**efficient** 67:20
**efficiently** 43:12
**effort** 9:22 12:2
  14:16 46:22 51:15
  51:16,18 53:14
  62:24
**efforts** 29:23 53:17
**either** 32:21 36:6
  43:5 44:12 45:14
  52:6 54:14,16
  56:24 58:19 64:20
**elected** 25:4
**Electronics** 3:8
**element** 7:9 64:25
**else's** 67:21
**Embarcadero** 1:18
  2:16 3:10
**encourage** 29:14
**endorse** 61:18

enforced 42:2
enforcement 15:23
enforcing 27:15
engage 37:20
engaged 66:5
enlarge 36:11
ensure 52:13,13
  68:1
enter 13:25 47:15
entered 47:17 56:17
  59:4
entire 10:15,17,19
  11:12 12:2 13:14
  42:22 66:19,22
entirely 12:25
  35:19 36:10 41:24
entities 36:9,12
  61:19
entity 61:24,25
equal 52:1
equates 14:22
equity 7:17 13:6
  25:8 30:12,17
  47:24
essentially 23:13
  58:17 65:4 66:4
establishes 65:18
estimate 41:5
estimated 20:24
estimates 24:11
et 49:3
European 38:17,18
  40:9
evaluate 17:16
evaluated 11:23
  12:16
event 6:5 9:21 11:4
  33:15 64:7
Everett 2:21 5:17
  5:17
everybody 63:10
everybody's 41:10
everyone's 26:20
everything's 24:24
evidence 9:24 13:23
  15:10 17:25 24:13
  26:3,7 30:15 31:1
  31:10 32:4,8,10
  32:11,11,14,16,20
  33:13 34:4 35:6
  37:3,7,10,13,16
  37:18 38:7 40:10
  42:18 43:19 45:2
  48:7 63:20 66:2
  66:13 67:5,6,7,7
evidentiary 34:24
ex 6:13 29:6 30:6,8

30:9
exact 45:17
exactly 28:12 35:6
  40:7
example 26:24
excellent 43:24
  47:5 50:19 68:7
exception 13:8
exclude 25:5
execute 14:5
exercise 31:6
expand 29:15
expansive 29:10
expect 24:2 35:19
expense 43:13
experience 6:13
experts 18:14
explain 25:24 44:22
  47:1 55:1 67:23
explained 16:16
  19:19,25 20:4
  23:15 29:5,12
  58:12
explanation 10:10
export 10:16,16
expressed 31:5 54:1
  54:3 57:2 66:1
expressly 35:15
extent 8:2 19:15
  20:20
extraordinarily
  41:7

F

F 59:6
fact 11:1,13 13:7
  14:24 16:5 18:8
  24:4 29:11 30:1
  30:11,19 33:23
  34:22 35:14 38:13
  39:9,25 40:9 41:1
  41:20 42:13 43:22
  44:14,21 47:2,7
  52:21,22 56:6
factor 10:12,13
  11:25 12:11,20
  14:21 15:7,8 17:4
  54:15 63:19
factors 8:19 9:8
  11:15,21,24 12:4
  12:6,8,10,16
  27:14 31:3 42:14
  64:22 65:2,5,7,12
  67:17
facts 9:14,15 11:13
  55:12 64:14 66:15
factual 32:25 61:10

fails 32:20
fair 8:24 15:22
  27:2,20 63:20
fairness 7:6 8:9,15
  8:25 12:23 13:6
  13:10 19:8 22:21
  22:23 29:20 49:8
  52:13,13
fall 25:17 67:10
fallen 37:1
familiar 13:12
  36:11 39:2
families 36:12,12
far 22:3 24:8 27:3
  30:22 49:1
fashion 38:7
fault 22:12 27:5
favor 14:2 27:14
  64:23
Fax 2:6,11,17,24
  3:6,12
federal 20:7 23:16
  38:11 66:10
feel 19:23 50:5
  53:11 60:4,14,19
  68:9
feeling 8:14
fees 46:16
feet 8:9
felt 66:4
figure 21:8
figuring 24:20
file 1:4 41:8 59:25
  67:1,4
filed 9:4 16:10
  28:22 56:18 58:5
  59:5,19,21 64:7
files 11:3 21:4
  24:16,18 40:18,22
  41:3
filing 44:11 66:20
fill 42:24
filter 43:15 45:3
final 11:25 17:4,12
  56:11
finally 9:25 17:12
  20:13,23 24:10
  25:3 66:7
find 8:24 54:14
  59:17 62:23,24
  63:24
finding 38:18
finish 57:7
finished 22:5
firm 4:17 5:6,9
  6:20 22:2 25:20
  27:7 58:24 59:7

first 4:23 6:11,12
  9:3 10:2,3 12:11
  13:9 19:7 22:23
  23:22 25:15 26:1
  26:2 27:16 29:5
  32:15,23 38:16
  39:20 42:15 50:14
  50:25 51:1 53:13
  55:10 57:8 63:1
  64:16
five 7:19 11:2 14:3
  15:2 33:5 34:6,14
  34:17,21 35:1
  41:20
five-million-pa...
  10:19 11:1
fix 34:1
fixing 27:25 28:5,6
  28:8,10,20 44:10
  49:2,23
flat 27:18 37:1
  67:10
flatly 40:9
Floor 2:16 3:10
flows 12:8
folks 59:8,10
follow 35:23
followed 4:18
follows 9:14
footing 52:2
footnote 61:15
foreign 1:13 7:21
  7:21 13:1,2 15:5
  15:9 20:14,16
  23:24 26:23 29:11
  29:14,15 30:16
  31:2,4,5,8,10
  32:1,4,6,7,13
  37:15,16,25 38:6
  38:11 47:22 48:1
  54:18 55:24 56:2
  58:21 63:1,2,19
  64:14 65:10 66:1
  66:11
forgot 6:21
formally 62:19
formats 21:5
formed 61:22
formula 55:10
formulate 64:17
forth 69:8
forward 30:5 58:1,2
  67:5,6,7
found 6:18 39:22
  50:9
four 2:16 5:22 8:19
  11:15,21,23 12:16

```
         21:20
fourth 11:25 17:4
Fourthly 9:25
framework 11:16
Francisco 1:3,19
   2:10,16,22 3:11
   4:1 69:3
frankly 38:15 42:21
   46:21 47:3 49:13
   51:25 52:10 53:4
free 27:10 52:5
French 53:25 54:1
front 12:16 33:4
   45:9
fruits 25:7 47:22
fulfillment 20:14
   24:3
fulfills 42:25
fully 52:16
fundamental 12:23
   13:6,10
fundamentally 59:17
   59:24
further 33:12 41:8
   45:6 49:6 69:11
futile 29:23 62:23
F.R.D 33:18

─────────────────────
          G
─────────────────────
G 4:3
gain 11:12 17:19
   48:6 51:17
garden-variety
   17:17
GARRISON 2:3
gather 7:18
gathered 26:7 29:22
   31:1 32:17 37:7
   37:13 38:7 66:13
gathering 31:10
gathers 32:8 37:17
general 8:14 63:17
generally 20:4
   23:15 54:24 64:13
genuine 26:4 44:12
   49:11 67:11
Geoffrey 2:9 5:4
German 31:22 55:4
Germany 55:20
Germany's 31:21
getting 7:11 12:21
   26:9 27:5 43:12
   45:17 49:18 50:14
give 17:9 34:10
   35:13 40:4 44:25
   53:20 61:5,6 64:8
given 40:22

glass 28:20 43:16
   43:24 44:9 45:4
   48:15,25 67:19
global 23:25
globally 49:2
go 10:24 12:9,18
   13:11 16:17,18
   22:13 24:21 27:2
   27:8 28:10 30:15
   33:24 36:14 42:2
   42:7,21 43:8
   49:14,25 50:4,13
   52:21 54:16 55:12
   60:13,22 67:5,6,7
   67:9,14 68:9
goal 14:1
goes 12:22 38:2
   55:1
going 4:10 9:8 10:5
   16:6 20:2 22:12
   23:12 26:4 27:11
   27:12 29:12 34:5
   34:23,23 35:3,6,8
   36:24,25 39:5
   41:19 42:2 54:1
   58:7,11 65:1,17
   67:12 68:8
good 4:25 5:5 25:25
   43:18
gotten 8:20 22:3
govern 17:2
go-to 20:15 23:23
grab 45:6
grant 65:13
granted 30:13 47:21
   47:22 58:22
granting 66:3
great 19:11,13
   24:15,15,18 54:2
greater 11:4 19:17
   23:2
greatly 50:17
grounds 45:21
grushing@saveri...
   2:12
guarantee 44:5
guess 9:3 10:16
gut 8:25

─────────────────────
          H
─────────────────────
H 2:4
Hague 14:5 37:22
   39:12
hand 26:14,16 29:18
   52:18,19,21,21
handed 38:6
hands 49:18 64:9

          67:13
Hang 31:16
happen 24:22
happened 21:19
   22:10 38:25
happening 23:19
happens 17:18,21
   31:25 47:14 59:1
   62:7
happy 50:12 67:23
hard 17:7 40:22
   41:2,13 48:6
Haworth 20:3,7,7
   23:14
head 6:9 7:7
hear 5:7,21 6:5,5
   10:20 18:22 53:2
heard 16:8,24 46:21
   51:15 52:5,17
   54:10 62:18 63:3
hearing 4:14 5:23
   38:14 61:8 67:2
hearsay 14:10,12
   33:8,10,12,14,15
   33:19,23
held 20:9
help 65:16
helpful 44:9
Heraeus 31:12 38:2
   38:2
hereunto 69:14
he'll 62:19
highly 56:25
Hitachi 2:19 5:17
   5:19 28:24 60:21
hold 45:6 58:7,8
holds 20:3
home 31:12
HON 4:5,7,9,12 5:7
   5:21 6:1,3,8
   10:20,23 12:12,15
   12:18 18:18,21,24
   21:14,19,22 22:5
   22:11 25:9 31:16
   31:19 33:4,21
   35:7,23 36:5,14
   37:18 38:24 39:3
   40:3,6 41:23 45:8
   45:19 46:9,12
   48:9,12,17,19,23
   49:6,24 50:15
   56:16 57:7,14,20
   57:24 58:9 59:15
   60:24 61:5 62:17
   63:3,8,25 64:5,8
   68:6
Honor 4:25 5:5,25

          9:7 10:4 12:22
   13:12 16:19 17:7
   18:17,23 19:3,8
   21:13 22:19,21
   23:25,25 24:3,5
   25:7,14 26:10,19
   27:17 31:11,18,20
   32:6 33:2,7,15
   34:13 35:10,15
   36:2,8 37:14 38:1
   38:11 39:1,18
   40:2,13,20,25
   42:8,24 43:1
   44:11 45:16,23
   46:10,25 48:10,25
   49:7,19 50:4,22
   53:17,19 54:3
   56:11 57:5,13
   58:3,5,8,10 59:3
   59:16,24 60:3,8
   60:14,18,23,23
   61:1,2,2,9,14,19
   62:2,3,13,16,24
   63:4,13,21 64:18
   65:20 66:8 67:15
   67:22 68:5
Honor's 26:10 42:12
   57:23
Hopefully 22:17
Hospital 33:17
hostile 26:17 32:18
   38:6,12 39:16
   52:20
hostility 36:19
   38:10 39:11
hours 20:25 24:12
   40:24 41:21 43:1
   41:13 48:5
huge 44:5

─────────────────────
          I
─────────────────────
idea 25:25 34:22
   36:23 42:2 62:10
ideas 67:9
identification 4:15
identified 28:22
   55:23
identify 14:7 18:24
   27:7 43:3
identifying 28:9
illusion 44:11
imagine 35:12,13
implication 62:2
important 25:21
   31:3 50:25 51:14
import/wholesale
   10:15
```

**impose** 26:8
**impossible** 51:18
**improve** 23:9
**inadmissible** 33:8
**inbound** 39:13
**inclined** 50:15
  53:20
**include** 13:16 21:12
**included** 21:12,12
  24:25,25 25:1,1
**including** 24:7
  29:12 45:13
**incredible** 66:6
**incredibly** 41:17
**indicate** 34:6 37:12
**indication** 26:4
  37:23 38:2,10
**indirect** 57:14,16
  57:22 58:2
**individually** 41:25
**inevitable** 7:3
**inevitably** 24:21
**inference** 34:3
**inferences** 32:25
**influx** 52:23
**information** 16:14
  53:8,12
**inherently** 51:12
**initial** 7:6 8:10,25
  47:9
**inside** 54:19
**insight** 53:18
**instance** 10:2 63:1
**instances** 47:20
**insufficient** 53:3
**Intel** 8:19 9:9
  11:14,17,18,19
  12:8,10,13,15
  15:7 17:4 29:12
  31:2,3 38:13,20
  38:22,25 39:18
  42:14 64:24 65:1
  66:7,14 67:17
**intended** 7:10 26:7
**intention** 34:17
  35:10
**intercourse** 37:21
**interest** 19:10,12
  19:13 23:1 26:10
  54:2 60:7 66:1
**interested** 69:13
**interesting** 54:22
**interests** 7:1 67:24
**interferences** 37:25
**Intergraph** 11:20
**international** 37:20
**interpretation**

40:20
**interrelated** 65:3
**introduce** 14:3
**introduced** 15:3
**introducing** 34:17
**intrusive** 17:5
**investigation** 15:24
  15:25 16:8 28:7
**involve** 40:20
**involved** 20:9 24:20
  35:21 36:12 41:20
  43:23 47:21
**involves** 28:6
**Ipse** 10:11 11:6
**ironic** 41:18
**issuance** 1:11 6:25
**issue** 6:12,22 14:10
  18:2 22:24 29:21
  32:13 40:15,16,18
  48:14 50:6 64:19
**issued** 14:6
**issues** 47:6 56:12
  56:13

**J**

**J** 2:21
**Japanese** 52:7,12
**Jeff** 19:1
**jeverett@morgan...**
  2:24
**job** 50:19 53:4
**John** 3:4 5:13 61:9
**john.taladay@ba...**
  3:7
**join** 30:20
**joined** 61:14
**joint** 61:22 63:6
**JR** 2:21
**Judge** 6:11 11:22
  12:12 31:13 33:24
  38:3,9 40:3 54:23
  55:25 56:2
**judgment** 41:16
  42:10
**judicial** 1:11 6:11
  12:21 38:21 39:10
**jump** 34:14
**June** 32:24
**jurisdiction** 7:21
  7:21,23 8:6,13
  15:9,17 16:20
  28:18 58:21 60:4
  62:10
**jurisprudence** 6:15
  7:12 8:17 19:22
  20:3 25:17 30:19
  38:12 47:25 48:8

**K**

**K** 2:4
**keep** 6:4 49:12
**key** 31:2 32:5 40:14
**KFTC** 15:22 16:1,2,7
  16:12,21 27:20,25
  28:7,9 49:22 53:1
**kind** 12:23 19:5
  20:19 23:8 24:22
  47:25 50:23 52:10
  65:5
**kinds** 44:6
**knew** 7:2
**knocked** 40:11
**know** 5:7 6:6 9:18
  10:8 13:12 16:8
  16:15 18:13 22:6
  35:6 38:13 42:21
  42:21 43:20 45:1
  46:25 47:3,5,6,23
  48:13 49:1 56:5
  56:12 57:18 58:21
  62:5,6 66:19,25
**knowing** 62:8
**knows** 23:25
**Korea** 9:12,15,17,20
  10:17 13:2 14:21
  15:14,23 16:23
  27:19 28:23 34:21
  36:5 39:14 48:11
  49:21 52:12,21
  53:4 55:22 56:7
  57:4 59:19,22
  61:20,21 63:7
  67:2
**Korean** 8:6 9:22
  10:7 11:9 12:5,20
  13:3,7,18,20 14:1
  14:11 15:12,16,22
  16:5,20 17:1,2
  18:1,10,11,15
  26:5,15,16,17,20
  26:21 27:2,6,8,20
  28:4,5,11,16,18
  28:19,21 29:2,2,4
  29:25 30:25 32:16
  32:17,23 33:9,13
  33:24 34:15,17,19
  34:24 35:2,2,4,8
  35:12,16,24 36:8
  36:16,24 37:2,3,5
  37:8,9,9,19 39:12
  39:14,15 43:11,17
  43:21 48:14 49:8
  49:9,17 50:1 51:6
  51:7,13,23 52:4
  52:15,15,18,19

53:5,15,16 54:7,9
  56:5 62:20,21,22
  67:25
**Korea's** 14:4
**Kulzer** 31:12 38:3
  54:20 55:18,19,23
  56:9

**L**

**label** 56:24 57:1
**lack** 39:11
**laid** 30:5 54:23
  55:12
**language** 39:11
**largely** 39:22 40:15
**latched** 46:19
**law** 2:20 4:17 5:6
  7:2 19:24 22:22
  23:11 32:16 37:8
  37:19 50:6 65:15
  66:15
**lawsuit** 17:3 51:7
  52:15 53:10 66:21
**lawyers** 7:14
**lax** 14:21,25 51:10
  56:6
**lay** 67:13
**lays** 54:24
**lead** 27:18 49:20
**learning** 39:19
**leave** 18:17 21:2
  51:11
**leaving** 47:4
**left** 13:4 16:22,23
  52:3
**legal** 37:12
**LEGGE** 4:5,7,9,12
  5:7,21 6:1,3,8
  10:20,23 12:12,15
  12:18 18:18,21,24
  21:14,19,22 22:5
  22:11 25:9 31:16
  31:19 33:4,21
  35:7,23 36:5,14
  37:18 38:24 39:3
  40:3,6 41:23 45:8
  45:19 46:9,12
  48:9,12,17,19,23
  49:6,24 50:15
  56:16 57:7,14,20
  57:24 58:9 59:15
  60:24 61:5 62:17
  63:3,8,25 64:5,8
  68:6
**letter** 14:7 28:8
  31:17 46:11 66:22
**letters** 14:6

**level** 8:9
**LEWIS** 2:20
**LG** 3:8 36:9 61:23
  63:4
**LGE** 5:16 63:6
**LG/Philips** 61:22
**liberal** 38:7
**lied** 54:25
**lies** 54:19
**light** 41:7,18
**limit** 37:19 46:24
**limitations** 9:12,17
  9:19,21 10:1,1,6
  13:1,5
**limited** 9:17 11:8
  26:17 28:12 29:3
  31:21 32:2 38:5
  41:9 45:13,14
  52:19,22
**limiting** 41:11 46:5
**limits** 66:9
**line** 17:1 21:23
  22:8,9 39:14
**Linerboard** 30:7,10
**lines** 51:14
**list** 36:8 65:2
**litigant** 17:18
**litigants** 9:12,18
  13:2,18 26:22
**litigate** 13:4
**litigating** 20:17
  24:6
**litigation** 1:7 4:16
  10:16 11:19 13:3
  13:20 14:1,4 15:3
  18:10,11,15 20:14
  20:16 30:4,7,10
  30:13,16,20 35:16
  36:7,13 44:17
  47:22 48:1,14
  50:8 51:13,23
  52:8 54:7,7 55:4
  55:5 57:11 61:20
  61:21 63:7 66:18
**little** 14:13 18:21
  40:20
**LLP** 2:3 3:3,9
**logic** 39:15
**long** 14:17 21:25
  33:11 67:14
**look** 11:23 18:8
  37:9,19 53:21
  56:10 61:15
**looked** 9:1
**looking** 25:18 45:16
  64:10,11
**loose** 65:6

**lot** 4:12 7:14,17
  20:18,18 53:7,9
  56:18
**lots** 41:16
**lower** 20:8
**LP** 36:9

---

## M

**M** 3:4
**maintain** 17:24
  66:20
**maintained** 57:3
  68:2
**maintaining** 17:14
**major** 10:12,13 12:6
  30:24,24
**making** 24:24,25
  41:17 53:6 68:8
**management** 59:5
**manner** 26:7
**Marano** 63:22 65:8
**Market** 2:22
**massive** 13:25
**MASTER** 1:4
**material** 35:9 45:11
  49:12
**materials** 35:14,16
  43:14 50:7 53:11
  66:12
**matter** 4:15 9:1
  15:24 17:18,20,23
  18:6 19:7,23,24
  22:20,21 23:11
  43:1,2,13 47:7,9
  49:25 50:24 67:1
  68:10
**matters** 4:14
**Mayo** 3:9 5:15,15
  63:4
**McCutchen** 6:20
**mchiu@morganlew...**
  2:25
**MDL** 1:5 56:23
**mean** 15:2 29:18
  31:22 58:16
**means** 31:8 40:19
  62:7,8,10
**measures** 35:18 47:2
**meet** 28:14 60:7
  64:25 67:15
**meetings** 28:20
  43:16,24 44:9
  45:4 48:16 49:1,2
  49:4 67:19
**meet-and-confer**
  44:15 45:22,24
  46:13,18,20

**memory** 6:18
**mention** 62:2
**mentioned** 61:22
**merely** 41:19 50:7
**Meridian** 36:11
**merits** 6:25 62:15
**met** 45:22
**MICHAEL** 2:15
**Michelle** 2:21 5:19
**middle** 64:11
**Mike** 5:2
**million** 7:19 34:6
  34:14,17,21 35:1
  41:20
**millions** 48:3
**million-plus** 11:2
  14:3 15:2
**mimic** 52:11
**mind** 8:24 18:21
  63:15
**minimize** 58:14
**minimizing** 47:12
**minimum** 36:20
**minor** 42:6
**minute** 31:16 33:4
  33:21 35:23 45:8
  46:9 54:20 63:25
**minutes** 21:20
**MISC** 1:10
**misperceptions**
  61:11
**misreading** 65:19
**missed** 39:4
**missing** 45:2
**misstate** 61:12
**modification** 18:7
**modified** 17:16
**modify** 17:20 18:5
**moment** 6:9 64:8
  67:8
**monitoring** 40:21
  62:7
**months** 27:13 29:5
  43:9
**MORGAN** 2:20
**morning** 58:6
**motion** 4:18,19 5:10
  7:6 9:3,4 11:16
  20:8,12 21:15,15
  21:16 25:11,12,13
  33:16,18 44:17
  46:2,3,7,10 50:21
  58:22 61:15,16
  68:10,11,12
**motions** 4:21 5:24
  7:5 25:22 68:10
**moved** 58:1,2

**moving** 4:23 15:7
  39:7 61:14
**mscarborough@sh...**
  2:18
**Mullin** 2:14 5:1
**multiple** 13:16
**myth** 34:15,25
**mythical** 49:15

---

## N

**N** 4:3
**name** 4:5 28:22
  69:15
**named** 29:2 32:23
**names** 5:21 36:10
**narrow** 45:4,23 55:7
  55:8,11
**narrowed** 45:5
**narrowing** 45:6,9
**narrowly** 44:4
**native** 11:3
**Naturally** 27:11
**nature** 18:3
**near** 52:3
**nearly** 31:15
**neatly** 8:12
**necessarily** 66:9
**necessary** 66:12
**need** 10:18,25 16:15
  16:24 17:21 26:2
  27:8,17 28:13
  29:21 30:14,14
  31:11 33:19 35:17
  36:22 38:18 40:10
  49:4 51:1,20,21
  51:25,25 63:8
  67:7
**needed** 29:7 52:13
**needing** 43:21
**needs** 12:3 16:23
  17:10,11 34:19,20
  67:5
**neither** 57:21 66:25
  69:11
**neutral** 54:15
**neutrally** 36:20
**never** 62:19
**NEVINS** 21:17,20
**new** 43:10 47:14
**news** 29:5,6 36:18
**nexus** 48:20
**Ninth** 54:12,19
  63:18 64:12 65:18
**nonparty** 62:5
**non-exhaustive** 65:2
**norm** 10:14
**normal** 48:7

**normally** 17:18
**Northern** 1:2 11:22
  42:18 66:17
**note** 33:19 36:15
**noted** 19:8 55:19
**notes** 56:10
**notice** 33:10
**notion** 59:9
**number** 24:22 30:5
  41:20 44:11 59:4
**numerous** 50:9
**NW** 2:4 3:5

---

**O**

**O** 4:3
**object** 45:20
**objection** 66:10
**obligated** 59:10
**observation** 62:15
**obstacle** 10:5,6
**obstacles** 50:10
**obtain** 1:12 9:22
  20:5 30:21 43:23
**obtained** 31:23
  45:11
**obtaining** 14:6
  38:19
**obviously** 8:3 58:13
**occurred** 57:10
**October** 69:17
**offend** 26:5 31:4
**offended** 30:25
  32:10
**offense** 31:5 36:19
  36:25
**offer** 10:10,11
  14:10 32:20
**offered** 13:23 16:17
  63:18
**office** 42:1
**Officer** 6:11
**offline** 21:25 22:15
**Oh** 32:23 33:21,22
  34:8 37:5
**Oh's** 33:2,8
**Okay** 4:9 10:23
  18:18 25:9 36:14
  40:6 48:18 49:6
  63:3
**once** 34:4
**ones** 56:1
**one-sentence** 28:8
**one-stop** 58:23
**Oops** 59:22
**opening** 9:5 57:2
**opined** 62:21
**opinion** 54:22,23

55:25 64:21
**opponent** 13:20 20:6
  20:11 23:17,18
**opportunity** 24:14
  52:2,3 55:17,19
  55:21,23 61:6
**opposing** 4:23 68:1
**opposition** 21:15
  25:11,12 31:14,17
**oppositions** 7:5
**opt** 12:25 30:20
  51:9 57:11,14
  66:25
**opted** 57:18 58:4
  59:18 66:17,19
**opting** 66:20
**options** 67:11
**opt-out** 47:15 66:22
**order** 15:9,18,22
  16:1,3,7,14,16,21
  17:15,20,20,23
  18:3,6,12 32:7
  35:14,17 36:23
  37:15 42:1 45:17
  50:5 51:3 56:13
  56:17,21,25 59:3
  59:3,5,6 60:1
  62:3,9,11 66:11
  67:23
**orders** 50:9
**ought** 27:11
**outcome** 69:13
**outlined** 60:2
**outset** 25:16 26:11
**outside** 10:14 41:21
  42:3,5
**outweigh** 64:22
  65:16
**overarching** 50:24
**overbreadth** 40:14
  45:21 65:11
**overcome** 65:25
**overlapping** 54:6
**overly** 12:1
**overreach** 12:6
**overseas** 37:10
**overstatement** 9:20
**owing** 46:16

---

**P**

**P** 4:3
**package** 8:12
**page** 30:6,8,9 31:14
  31:17 33:5,6 46:2
  46:7,10,12 63:23
  64:3,11,12
**pages** 7:19 11:2,4

14:3 15:3 34:6,18
  35:1
**paid** 43:2
**Panasonic** 28:24
**paper** 7:19 19:3
**papers** 38:25 39:7,7
  46:22 54:12 56:6
**paperwork** 35:3
**paragraph** 27:24
  31:19 33:1,23
  37:6 59:6
**paralegal** 47:10
**parent** 36:3
**parents** 36:6
**Park** 2:21 5:19
**part** 8:9 13:14
  41:13
**parte** 6:13 29:6
  30:6,8,9
**participated** 67:19
**participating** 7:15
**participation** 19:10
  22:25 63:11
**particular** 8:7
  13:13 14:8 17:10
  30:6 53:12 54:13
  55:2,10
**particularly** 13:19
  20:17 56:7,8
  63:15
**parties** 4:23 6:4
  9:16,16 13:7
  18:12 22:10 23:3
  23:17 28:11,16
  30:2,13,19 35:15
  35:17 36:7 43:4
  47:14,15 48:2
  50:8 51:5,5 52:14
  56:19,25 57:7
  60:22 61:21 62:6
  62:8,14 63:8
**party** 5:23 7:20,22
  19:4,19 20:5,6,10
  20:11 22:20 23:17
  23:18 25:4 31:8
  32:8 37:16 47:21
  50:6 55:15,16
  56:24 60:13,20
  61:14,20 62:1
  64:13 66:5 69:12
**passed** 43:14
**patently** 60:7
**path** 10:5,6 54:25
**Paul** 2:3 4:8 67:24
**Pause** 21:21
**pay** 41:1,4 42:11
  46:16

**paying** 7:24
**Pennsylvania** 3:5
**people** 18:12 41:15
  47:11
**perceived** 10:1,6
**percipient** 32:24
**perfectly** 24:17
**permit** 29:13
**permits** 37:3,6
  47:25
**permitted** 62:15
**person** 59:13,13
**personally** 6:9
**personnel** 41:3
**persuade** 36:23
**Peter** 63:22 65:8
**Philips** 3:2 5:13
  30:9 36:9 60:21
  61:10,11,19,19,23
  63:5
**phone** 21:24
**pick** 42:10
**picture** 27:1 45:13
**pitfall** 55:23 56:8
**pitfalls** 54:24 55:2
  55:13
**pivotal** 66:8
**place** 8:14 20:15
  26:1 43:16 50:14
  52:1 69:8
**placed** 8:10 64:13
**places** 9:17 10:7,13
  13:2
**plainly** 40:9
**plaintiff** 8:13
  47:16 58:20 66:24
**plaintiffs** 8:11
  28:20 44:20 47:15
  59:2,9
**plaintiff's** 7:15
  8:4 60:8,9,9
**plan** 14:14 16:5,11
  50:11
**play** 51:11 52:4
**plays** 52:4
**please** 4:5,24 6:6
  10:24 22:13 31:16
  36:14 40:3 42:7
**point** 6:1,9 7:18
  8:20 12:22 13:24
  14:20 17:7 20:24
  26:2,4,25 27:2,17
  27:18 30:17,24,24
  31:2,12 32:5
  34:14 36:16,17
  39:5,19 40:8,11
  40:14 42:6,12

47:19 50:17,25
51:1,14,20 52:16
52:18 53:6 54:4,8
54:9,13,16 56:11
57:6 58:18 59:1
59:11 60:6 63:5
65:21 66:15,16,19
66:22
**pointed** 22:21 47:20
**pointing** 41:18
**points** 12:10 14:9
25:7 26:9 32:21
32:21 50:23 58:7
59:16
**policy** 29:11
**poorly** 65:24
**Porter** 3:9 5:15
**pose** 57:17
**position** 7:10 29:3
32:15 50:19 58:25
62:5
**positions** 26:11
**positive** 32:18
36:18
**positively** 36:21
**Posner** 31:13 38:3,9
54:23 56:2
**Posner's** 55:25
**possession** 23:17
42:17
**possibility** 66:20
**possible** 42:19
58:15
**possibly** 18:14
65:10
**postponed** 33:12
**poured** 47:11
**powerful** 13:21
**practical** 19:23
**practicality** 29:21
**practice** 22:18
40:19
**precedent** 11:11
**precedented** 30:1
**precisely** 31:25
38:8,9 66:23
**prejudice** 50:7
**prejudicial** 51:12
**preliminary** 24:11
**preloaded** 41:12
**present** 4:24 5:22
54:7 55:2,3,13,17
55:18,24 56:8
57:8 60:24 61:16
68:7
**presentation** 9:6
68:8

**presented** 9:24
17:25 32:11 42:4
**presently** 29:3
**preserve** 66:23
**pretrial** 14:6
**pretty** 25:19
**price** 27:25 28:5,6
28:8,10,20 44:9
49:23
**prices** 49:2
**primarily** 19:17
**principles** 13:6
37:12
**prior** 6:13 61:25
**probably** 11:1 29:23
62:23
**probative** 52:22
**problem** 56:8 59:14
**problems** 48:22,23
65:9,11,25 66:3
**procedural** 6:14,16
6:24 33:14
**procedure** 6:21 10:7
12:6,24 13:8,9
14:15 15:19 26:3
26:5,22 31:22
33:11,25 37:2,5
38:5 39:17 51:6
59:4 60:2 63:2
**procedures** 7:16
15:12,15 26:15,16
28:11 29:4,10,16
32:4 37:22
**proceed** 4:14 6:3
23:21 51:16 53:14
62:12
**proceeded** 10:1
**proceeding** 1:13
19:5,19 22:20
29:11 31:2 33:13
65:10
**proceedings** 1:15
23:24 24:1 63:1
68:15 69:7,12
**process** 21:3,6
27:13 31:24 37:22
40:21 42:11 43:10
44:15 47:23 50:1
65:6
**processes** 32:2
**produce** 15:10,18
16:1,3,7,21 19:15
23:4 44:24 57:1
58:23 62:14,22
**produced** 11:19
15:25 19:16 21:4
28:16 30:4 32:14

45:2 50:8 51:24
52:8 56:22,23
**producing** 56:24
**production** 4:20
19:13 21:11 47:4
66:11
**products** 49:23
**proffer** 28:3
**project** 24:22
**proof** 39:15 63:19
**proper** 6:18 20:3,4
23:11,15 32:5
53:13 62:12,13
66:4
**properly** 8:7 21:7
24:19,24 62:18
**proposal** 49:12
56:14
**proposed** 64:15
**proposition** 63:17
66:8
**prospect** 35:1
**protect** 35:18
**protecting** 50:11
67:24
**protection** 56:19
**protective** 17:15,20
17:23 18:2,6,12
35:17 50:5,9
56:13,21 62:3,9
62:11 67:22
**protocol** 59:6
**prove** 26:21 42:22
**provide** 17:1 53:3,5
59:8 64:14
**provided** 53:3
**provides** 56:23 59:6
**providing** 25:25
53:6
**provisions** 25:23
**public** 53:7,9,11
**pull** 31:16
**purchased** 28:6
**purchaser** 45:12
57:11,15,17,18,21
57:22 58:1,2
59:19 66:21,24
**purchasers** 19:2
**purely** 17:21 39:23
**purport** 64:17
**purpose** 14:6
**purposes** 4:15 30:15
44:1
**pursuant** 1:12 66:13
**pursue** 31:9 43:10
49:13 67:8
**pursuing** 29:23

**push** 24:16
**put** 7:17 9:12 24:10
24:14 30:5 34:20
38:10 40:22 60:15
**p.m** 1:17 4:2 68:15

---

**Q**

**quash** 4:19 9:4
21:16 25:11,12
52:14 61:15 68:11
**quashed** 12:7
**quashing** 50:21
67:16
**question** 9:9,13
15:8,16 16:1,22
32:6 33:12 35:7
37:14 57:10,17
58:11 62:24
**questions** 16:19
25:19
**quick** 58:10
**quickly** 66:16
**quite** 6:19 11:2
68:9
**quote** 14:15 31:9
39:22,24 64:23

---

**R**

**R** 4:3
**raise** 35:1
**raised** 25:20 47:6
**raises** 36:16
**range** 55:8
**ray** 1:7 4:16 45:12
**react** 49:8,17
**reacted** 65:24
**reaction** 32:18
36:16,18 47:24
**reactions** 7:7
**read** 7:5,5,11 8:20
28:1 31:11 33:2
38:12 56:13 63:21
63:24,25 65:20
**reading** 38:15 63:20
64:1 68:9
**real** 15:6 17:13,16
18:16 32:13 56:3
56:12,14 64:15
65:19 67:10,10
**realize** 8:16 49:20
**realizing** 22:8
**really** 8:21 10:10
12:4,8 13:5 15:1
15:13 16:4,22
17:7 18:7 34:25
36:22 38:22 41:7
43:2 50:5 53:18

60:19 63:20 64:23
66:24 67:1,4
**reap** 25:7
**reason** 20:12 23:7
23:10,21 25:6
35:2,13 43:18
50:16 59:12 68:3
**reasonable** 32:25
46:19 47:1
**reasons** 19:6 25:24
54:3
**rebutted** 9:25 18:1
**receive** 35:11 63:20
**received** 36:20
**receiving** 66:2,13
**receptive** 12:21,24
14:19,23 26:6
31:1,23 32:9,16
38:21 53:19 54:10
54:18
**receptiveness** 64:20
**receptivity** 12:20
13:23 14:10 37:12
39:11 63:19 64:19
**recipient** 42:16
**recognize** 67:15
**recognized** 30:19
55:14
**record** 10:15,17,19
11:1,12 12:2
13:15 21:1 24:13
30:22 38:24 42:22
46:8,25 62:23
68:13
**records** 13:25 35:11
**reduce** 45:25 46:20
47:2
**reduced** 69:9
**reducing** 41:13 47:6
**referred** 27:19
**refers** 28:5
**reflected** 58:14
**refuse** 56:4
**regard** 11:14 13:8
17:6
**regarded** 14:11
**regarding** 14:21
24:1 59:4 65:11
**regards** 54:16
**regime** 13:2
**reimburse** 46:17
**rejected** 40:10
**related** 23:24 27:25
28:9 69:12
**RELATES** 1:9
**relating** 45:12
63:16

**relationship** 61:25
**relatively** 51:10
**relevance** 11:5
30:14 43:15,25
44:1
**relevant** 11:7,9
26:3 44:24 45:2
65:9,10
**reliance** 56:25
**relief** 26:17 27:17
29:6,9 52:20
**reluctance** 66:11
**remaining** 61:24
**remand** 11:22 12:13
38:14,16,20,22,25
39:20 40:4
**remanded** 11:22
**remarks** 22:7,13
57:2 61:4 63:14
**remedy** 62:11
**remember** 39:3
**remote** 22:10
**remotely** 65:23
**repeat** 20:2 23:13
**reply** 16:16 24:14
27:18,25 28:14
32:19 39:7 53:7
63:23 64:3,5,25
**report** 15:25 27:3
27:20,22,25 28:2
28:4,5,8 49:22
53:1
**REPORTED** 1:23
**Reporter** 69:5
**reporters** 46:17
**reports** 32:24 33:1
**represented** 5:11
**request** 14:6,7 16:6
17:8 25:17 39:13
39:25 40:12 41:9
44:4,23 46:20,24
47:2 49:14 55:12
**requested** 45:10
62:20
**requesting** 64:13
**requests** 17:17 24:5
29:4 39:21 40:1
44:7,15,21 45:4,5
45:23,25 46:5,23
47:7
**require** 28:12 47:9
47:10 59:12
**requirement** 42:25
42:25
**requirements** 6:14
6:17,24 20:1
27:14 42:15,16

67:16
**rescue** 66:5
**reserve** 62:13
**resistance** 37:18
66:12
**resolve** 56:13
**resolving** 56:14
**resort** 10:3
**resources** 19:17
24:8
**respect** 23:22 53:1
53:16 54:4 55:9
62:3
**respond** 50:23,25
61:3 66:16
**responds** 14:9
**response** 33:7
**responsive** 41:16
**rest** 12:8
**restrictions** 8:19
31:10 51:9
**restrictive** 51:12
**result** 7:18 23:8
44:15 45:11 48:1
49:10
**results** 12:5 45:24
49:3
**reverse** 54:11
**review** 19:20 28:3
34:19
**re-laid** 53:24
**Rick** 2:9 5:5 58:3
**rick@saveri.com**
2:12
**RIFKIND** 2:3
**right** 18:18 21:14
25:10 33:17 44:5
44:23 45:19 48:21
50:2 58:21 60:24
68:6
**risks** 42:3
**roadmap** 53:3,5
**room** 4:13
**RPR** 1:25 69:21
**rub** 36:24
**Ruby** 1:24 69:5,20
**rule** 33:15,19 64:18
64:18
**rules** 7:23 9:22
10:10 13:1,19
14:21,25 17:1,2
23:16 51:6,7,10
51:11,12,17 52:4
52:4,15,22 53:15
56:6
**ruling** 68:8
**run** 29:7 37:24

**runaround** 12:5
67:13
**running** 37:23
**runs** 14:4
**run-through** 22:18
**Rush** 22:1
**Rushing** 2:9 5:4,4
18:20,23 19:1,1
22:7,13,16,17
58:9,10 60:2

---

**S**

**S** 4:3
**sake** 39:24 40:11
**sales** 48:14,20 49:3
**Samsung** 2:13 5:1,2
36:9 60:13,13
**Samsung's** 60:11,11
60:21
**San** 1:3,19 2:10,16
2:22 3:11 4:1
69:3
**Sanchez** 1:24 69:5
69:20
**Sansome** 2:10
**sat** 8:21
**satisfaction** 6:23
6:24
**satisfies** 27:13
**Saveri** 2:7,7,8,8,9
4:17,17 5:4,5,5,6
5:10,10 18:18
19:1 22:2 25:20
26:12 27:7,9
29:19 34:16,25
36:22 40:23,24,25
41:14,22 42:10,13
42:19,25 43:3
44:3,12,16,17,22
45:15,20,25 46:4
46:17,19,24 47:1
48:5 58:3,3,13,17
58:22,24 59:7,9
59:12,15,16 67:12
**Saveri's** 27:9 40:15
40:15,17 41:5
42:1 43:8 66:16
**saw** 66:3
**saying** 21:17 40:25
48:19 50:6 54:13
**says** 8:18 9:18 10:9
11:8 16:2 30:12
37:9 39:8 45:10
56:2,22 64:12
**SC** 1:4,7
**Scarborough** 2:15
5:2,2

**scare** 34:25
**Schmitz** 30:6
**scoop** 7:20 8:11
**scope** 7:3 46:20
 47:2
**SDI** 2:13 5:1,3
**seal** 56:18
**Searby** 2:4 4:6,6,7
 4:8,11 5:7,22,25
 6:2,7 10:20,22
 18:22 21:14,22
 22:1,9 25:10,14
 31:18,20 33:7
 34:13 35:10 36:2
 36:8,15 38:1 39:1
 39:5 40:5,7 42:8
 45:16,20 46:10,14
 48:10,13,18,21,25
 49:7 50:3,4,18
 51:15,20 52:5,16
 53:2 54:10 57:10
 57:13,16 58:12,16
 59:11 60:6 61:2,3
 61:21 62:18,21
 63:12,13 64:3,6
 64:11 68:6
**Searby's** 58:18 59:1
**second** 14:20 26:3
 30:24 31:19 32:17
 60:6
**secondary** 25:24
 50:6
**secondly** 42:1 59:1
 61:19
**secrets** 55:5
**section** 6:14,15
 7:12 8:17 19:22
 20:1 23:9,12
**see** 6:17 15:2 34:11
 34:19 45:13 61:16
 64:18 65:4
**seeing** 39:3
**seek** 20:5,11 23:16
 26:3 32:4 42:17
 42:23 44:19
**seeking** 13:14,15
 15:10,14 28:15
 55:8 63:1
**seeks** 11:6
**seen** 45:15 51:18
**sees** 34:4
**selection** 35:5
**sending** 67:18
**sense** 19:7 22:20,23
 26:13 49:25
**separate** 23:3 67:19
**September** 1:16 4:2

 64:7
**serious** 40:23 45:5
 47:9,10 50:10
 65:8,11
**seriously** 46:18
**served** 4:17 8:3
 45:17
**server** 40:19
**serves** 6:18
**service** 37:21 48:6
**services** 37:21
**serving** 46:3
**set** 11:16 26:18
 60:17 62:7 69:8
**sets** 28:1 54:5
 65:12
**settlements** 57:25
 58:2,4
**Seventh** 31:13,21
 54:21
**severely** 37:19
**share** 61:24
**shareholder** 62:1
**shareholders** 61:23
**shares** 61:24
**sharing** 35:11
**Sharon** 3:9 5:15
**sharon.mayo@apo...**
 3:12
**Sharp** 2:2 4:10,19
 8:4,4 9:6,14,18
 9:21,24,25 10:1,5
 10:8 11:5,11 12:6
 14:9,20,22 15:11
 16:2,4,13,23,24
 17:8 18:4,9 19:20
 21:3 23:9 24:12
 24:14 25:4,25
 26:2,14,20,25
 27:2,13,18 28:3,6
 28:19,21 29:3,5,7
 29:19 32:19,20
 33:9,13 34:18,20
 35:5 36:16 37:16
 41:1,4 43:2,6,24
 44:3,7 45:24 48:2
 49:10,12 50:25
 51:1,3,8,15,22
 52:1,4,7,7 53:10
 53:13 55:22 56:6
 57:11 58:4,6
 60:14 62:19 66:17
 66:19,21
**Sharp's** 9:11 10:14
 10:18 11:5 13:14
 17:2 27:17 28:4,5
 28:14 31:5,14

 32:15,23 43:13,14
 51:7 62:21 68:12
**shed** 33:4
**Sheppard** 2:14 5:1
**shopping** 58:23
**shorthand** 69:5,9
**show** 18:13 36:22
**showing** 11:5 18:11
 28:18 32:20 37:1
 42:19 54:17 64:14
**shown** 13:7 55:20
**shut** 28:7
**sic** 22:1
**side** 7:14,15 12:25
 13:3 16:9
**sides** 7:6 8:25
 15:18
**sign** 62:9
**signal** 66:10
**signed** 6:12 35:15
**significant** 24:19
 24:23 43:6
**significantly** 19:14
 23:2,5
**silence** 54:13
**silent** 34:8
**similar** 53:23,24
**simply** 7:20 8:24
 24:16 25:4 26:12
 32:3 34:18 43:12
 47:25
**single** 9:9,19 20:9
 21:6 40:19
**sir** 4:5 63:12
**sit** 7:25 41:3 44:22
**sitting** 67:14
**situation** 11:13
 24:16 25:2 29:8
 31:25 37:8
**situations** 32:1
**six** 33:6
**Solar** 36:11
**solid** 25:19
**somebody** 6:19 7:25
**someone's** 30:12
**somewhat** 12:22
 44:15
**sorry** 25:11 27:23
 30:8 61:2 64:8
**sort** 9:9 10:14
 11:15 12:9 14:22
 17:17 20:13 21:7
 21:7 25:23 50:24
 59:17 65:3,18
**sorts** 18:12
**sought** 11:17,18
 12:1 23:18 55:7

**source** 23:24 43:13
 56:18
**sources** 16:25 32:15
**so-called** 43:16
 44:9
**speak** 6:4,10 9:8
 18:19 21:14 25:10
 53:18
**speaking** 4:10 18:25
 22:2 44:18 63:9
**speaks** 17:6
**Spear** 2:22
**specific** 44:6 47:8
**specifically** 68:11
**specify** 28:12
**speed** 59:10
**spend** 20:17 24:8
 40:24 48:5
**spent** 7:15 21:10
 24:23
**spoke** 38:3
**staff** 43:1
**stands** 66:7
**Starphone** 21:24
**start** 6:8 43:8,10
 54:23
**state** 4:13,24 48:11
 69:2
**stated** 14:1 39:19
 44:17 60:6
**statement** 11:6,7
 14:4,10,17 34:9
 53:24,24 65:14
**statements** 33:1
**States** 1:1 28:25
 29:9 31:24 32:2,9
 35:25 36:7 48:9
 48:15,22 55:16
 56:20,22 62:25
 66:10 67:4
**stating** 14:18
**statutory** 18:2
 27:13 42:15,16,24
 67:15
**stayed** 22:9
**step** 53:13
**steps** 59:18,20 60:3
**Street** 2:4,10,22
**stretch** 64:15
**strikes** 7:9
**strong** 26:2 51:1,20
**struck** 7:8
**style** 15:13
**subject** 13:5 28:24
 34:8 39:18 60:1
 62:9
**submission** 68:12

submit 12:24 16:3
  34:24 42:24 43:21
  58:24
submits 33:13
submitted 27:24
submitting 34:23
subpoena 4:17,19,20
  6:12,17,22,25 7:4
  7:10 8:3,6 11:18
  11:23 12:1,7
  19:21,21 27:15
  28:15 29:22 41:25
  42:2,16 43:14
  44:16 45:10,17,21
  46:4 52:14 55:8
  60:12,15,19 62:4
  62:12 67:17 68:11
subpoenaed 59:13,13
subpoenaing 7:22
subpoenas 1:12
  37:21
subscribed 69:14
subsequently 46:14
subset 29:1
subsidiaries 36:2
  61:21
subsidiary 36:3
substantial 21:9
substitute 51:10
sue 48:9,22
suffer 50:7
sufficient 34:23
  53:5
suggest 45:7
suggested 18:5 68:3
suggestion 32:12
  45:5 46:5
suggestions 16:17
  44:19,25 46:19
  53:6
suing 8:5
suit 17:21
SUITE 1:18
supervision 69:10
support 21:15,16
  25:12 32:15 38:18
  52:20
suppose 43:10
supposed 21:10
Supreme 11:14,21,24
  12:13
sure 5:21 22:10
  24:24,25 42:1
  48:23 49:25
surprising 58:19
swamping 15:4 56:1
sweat 25:7 30:12,17

47:24
system 21:24
S-E-A-R-B-Y 4:6

T

tactic 34:25 35:21
tactical 19:20 23:8
tail 52:10
tailor 12:3 17:10
  39:25 44:4 46:23
  47:7
tailored 44:6,14,21
tailoring 45:1
take 7:21,25 13:4
  14:15 20:25 24:12
  26:12 32:21 33:11
  34:1 35:18 36:25
  37:10,11 51:25
  53:3,5,14,20
  56:10 59:25
taken 26:12 36:20
  41:1,24 47:3
  59:21 60:3 68:12
  69:7,8
takes 21:9 59:17
Taladay 3:4 5:13,13
  57:5,19,21,25
  61:1,9,9 62:18
Taladay's 63:5
talk 15:4 16:19
  44:14 54:20 63:16
  67:22
talked 54:21
talks 54:23 56:1
targets 43:14
tcunningham@she...
  2:18
team 40:24
technically 9:23
telephone 61:3
telephonic 2:2
tell 4:5 7:6 8:24
  22:1 27:2,3,7
  39:22
telling 12:12
tells 31:21
tend 57:17
terms 15:4 37:1
test 32:9 64:24,24
  64:25
thank 6:7 9:7 10:22
  10:23 18:20 25:9
  36:14 40:6 50:22
  60:23 63:11 68:5
  68:6,7,13
thereof 69:13
thing 14:24 20:19

35:22 36:15 47:25
  49:19
things 6:18 14:24
  21:12 35:24 37:21
  37:23 52:20 63:15
  65:17
think 6:8,18 8:2,6
  9:9,12,20,23 10:4
  10:11 11:1 12:4,7
  12:22 13:16 14:9
  14:11,13,16,17,22
  14:23,24,25 15:5
  15:13,16,18,21
  17:6,16 18:15,16
  19:2,5,7,13,18,24
  21:1 22:2,3,4
  23:4,7,11 24:2
  25:18,22,23 33:4
  34:13 35:2 36:5
  39:1 47:3,25
  48:13 49:19 50:13
  50:15,16,18 51:8
  51:14,22 52:6,20
  52:21,24 53:4,6
  53:13,17 54:10,18
  55:3,13,17,20,24
  56:7 58:16,18,19
  59:23 62:22 63:11
  63:14 68:4,7
thinks 37:11 57:20
third 7:20 9:16
  20:5,11 23:17,23
  26:7 51:5
third-party 59:2
thought 26:20 39:3
  41:13
three 3:10 25:21
  27:12 29:5 43:9
  46:7
throwaway 40:11
THURSDAY 4:2
thwart 14:1
time 5:12 7:8 9:1
  16:9,10 20:17,20
  20:21,25 21:6,9,9
  22:17 24:7,8,12
  24:20,21,23 26:20
  30:20 31:25 34:1
  34:11,13 38:16
  39:20 47:10,10,14
  59:2 66:5 67:14
  67:20 68:9,14
  69:8
times 14:24 21:6
  24:22 54:21
today 4:10,22 46:21
  68:12

told 9:14 14:14
  33:9,24,25 34:6
  49:24 53:25
tool 13:21
tools 49:10 51:3,6
top 33:6
Toshiba 28:24 60:21
touch 12:9 67:3
touching 48:15
Tower 2:22
trade 15:22 27:3,20
  55:5
traipsing 67:18
transcript 1:15
  27:5,6
transcription 69:9
transcripts 46:15
transfer 40:20,21
  41:2 48:6
transferred 40:18
treat 58:17
treats 58:17
Treaty 14:5 39:12
trenchant 53:18
tribunal 15:9 38:11
tribunal's 66:9,11
tried 26:15 46:4
trimmed 44:18
trove 55:15
Troy 27:23
true 12:14,17
truly 40:8,15
try 8:21 13:4 17:19
  17:20 20:10 25:22
  45:22 50:23 51:17
  52:9,15 54:8
trying 10:9,16
  26:24 54:11 67:13
tube 1:7 4:16 27:1
tubes 27:4 45:12,13
tune 48:3
turn 9:5,6 40:8,13
  50:20 60:11
turned 38:23 40:8
  65:22
turning 42:5
turns 39:9
TV 28:1
two 4:21,21 12:4,6
  14:9,24 19:5
  32:15,21 39:5
  45:20 55:5,6,11
  57:25 58:4,7
  59:16
Tyler 2:15 4:25
type 33:18 38:8
typical 58:19,19

## U

**ultimately** 19:16
  48:4
**unable** 26:23
**unaware** 58:1
**uncommon** 30:11
**understand** 8:22
  16:13 18:4 21:22
  30:17 48:17,19
  49:24 52:17 57:24
  65:21
**understanding** 43:25
**undisputed** 28:7
**undue** 11:25 26:8
  40:13
**unduly** 17:5 39:21
**unfair** 7:13 8:2
  13:19 35:20,21
  49:16 51:12 59:17
  59:24
**unfairly** 47:17
**unfairness** 7:9
  49:17 55:14
**United** 1:1 28:25
  29:4 31:23 32:2,8
  35:25 36:7 48:9
  48:15,22 55:15
  56:20,22 62:25
  66:10 67:3
**unlimited** 24:7
**unnecessary** 39:22
**unpublished** 64:16
  65:19
**unquote** 31:10 64:24
**unreasonable** 24:2
**unsubstantiated**
  64:21
**untold** 48:3
**unusual** 30:23
**unwanted** 56:2
**upheld** 20:8
**urge** 62:4 63:21
**use** 1:13 8:1,13
  18:9,10 19:11
  20:15 23:2 26:14
  29:3 30:25 31:3
  42:10 43:21 56:23
  66:4 67:20
**useful** 35:5 43:20
**uses** 7:10
**U.S** 10:3,15 11:21
  11:24 15:13 17:22
  28:21,25 29:18
  30:4,9 33:25
  35:17 36:4,13
  37:17 38:13 39:16
  41:10 43:17 44:8

44:17,21 47:22
48:19 49:3,3
51:10,10 52:4,12
52:24 53:17 54:1
54:7 55:7 56:23
57:11 59:23,25
**U.S.C** 1:12

## V

**valid** 8:8
**value** 14:13 34:24
**various** 28:16 37:22
**vendor** 41:2,4,21
  42:3,5,10 58:17
**venture** 61:22 63:6
**venue** 58:7
**verbal** 45:14
**verifying** 21:10
  24:24
**versus** 43:1
**victim** 28:19
**victimized** 43:24
  48:2
**victims** 44:20
**view** 7:18 8:9,25
  19:4 27:9
**violated** 62:11
**virtually** 41:22
**virtue** 19:9,17
  22:25
**visceral** 47:24
**voices** 6:5
**volume** 13:11 34:4
  34:22 35:3 67:3

## W

**W** 2:15
**Wade** 54:18
**wagging** 52:10
**Wait** 33:4,21 35:23
  45:8 46:9 63:25
**waiting** 67:6
**walked** 12:15
**want** 7:6 8:8 15:2
  20:16,16,21 24:5
  24:8 25:15,21
  26:11 27:16 29:14
  29:19 32:21 34:11
  35:22 37:20,24,24
  38:19 39:9,19
  44:14 49:13 50:2
  50:20 52:1 56:4
  57:8 58:9 59:22
  60:9,10,10,11,13
  60:20 63:16 66:16
**wanted** 36:15 58:7
  59:15 66:15

**wanting** 65:13
**wants** 8:4,4 35:5
  55:25 67:22
**Ware** 11:23 12:12
**Ware's** 40:4
**Warner** 3:4
**Washington** 2:5 3:5
  4:7,8
**wasn't** 6:19 55:18
  56:9
**wasting** 26:19
**way** 11:20,20 18:9
  22:11 30:1 31:6
  36:24 37:24 41:18
  42:9 43:24 47:5,8
  47:13 54:16,22
  65:5 69:12
**ways** 26:24
**weak** 64:21
**weeks** 45:20
**weigh** 27:14 31:6
**weighed** 64:22
**Weiss** 2:3 4:8 67:25
**welcome** 64:14
**went** 11:14 21:8
  22:7 24:20
**weren't** 22:8
**Westlaw** 39:8
**we'll** 6:3,4 34:11
  43:21
**we're** 4:15 22:10
  23:3,8,10 24:3
  25:2 29:12 33:16
  40:18 41:14,17,19
  47:1 52:5 57:2
  67:2
**we've** 13:7,23 16:16
  17:25 20:24 38:12
  41:9 46:24 47:20
  61:14
**WHARTON** 2:3
**whatsoever** 46:23
**whereof** 69:14
**wholly** 6:23 17:5
**willing** 43:6
**wind** 43:21
**wisdom** 50:13
**wish** 5:12 18:18
  21:14 25:10 59:21
  60:20,25 61:8
  63:3,12 66:17
**wished** 59:24
**wishes** 60:14
**witness** 32:24 69:14
**witnesses** 18:13
  68:1
**WL** 40:5

**word** 13:13 17:12
**words** 62:23
**work** 8:1 9:1 18:8,9
  20:19 21:6,7 68:3
**workable** 18:15
**worked** 30:12,22
  47:18
**working** 67:25
**works** 26:19 54:14
**world** 24:1
**worldwide** 24:3
**worth** 34:23 37:11
**wouldn't** 16:2 26:22
  48:23,24 49:25
**wound** 11:20
**writing** 31:13 66:22
**written** 45:15
**wrong** 21:8 24:20,21
  27:18 36:24 49:22
  58:12 59:13,13
  60:13,20
**wrote** 5:9 38:17

## Y

**Yeah** 45:19 48:12
  57:7
**year** 4:18
**years** 7:15 28:25

## 0

**07-CV-5944** 1:4,7

## 1

**10** 30:9
**11** 30:8
**1128** 59:4
**119** 33:18
**129** 33:18
**12971** 1:25 69:21
**1299** 3:5
**13** 33:1,23
**1340** 46:8
**1500** 1:18
**169-page** 27:20
**17** 37:6
**17th** 2:16 64:7
**1782** 1:12 6:14 7:12
  8:17 10:2 11:12
  14:15 19:22,25
  20:1 23:9,12 26:3
  26:5,14,17,19,22
  27:17 28:15 29:6
  29:9,11 30:2,2,25
  31:3,5,9,24 32:1
  32:14,19 33:10
  36:17,18 38:12
  39:17 47:21 48:7

```
  49:10,13  50:10
  52:6,9,11,20
  54:24  55:1  66:14
18 13:16  34:7  64:6
183 33:17
1917 1:5

              2
2 1:18
2:00 1:17  4:2
20 1:16  4:2  34:7
20004 3:5
200006 2:5
2001 2:4  61:23
2004 39:8  40:5
2006 61:24
2010 67:4
2012 1:16  4:2  32:25
  59:5  69:17
202 37:4
202-204-5604 2:6
202-223-7355 2:5
202-639-1165 3:6
202-639-7909 3:6
202-739-5860 2:23
2282320 39:8  40:5
28 1:12
28th 32:25  46:12
280 27:21,22
296(2) 37:4

              3
3 27:24  46:2,10,12
  63:23  64:3,11
  69:17
3rd 59:5
30 20:25  24:12
  40:24  41:5

              4
4:10 68:15
40 20:25  24:12
  40:24  65:11
40-hour 41:5
415-217-6810 2:11
415-217-6813 2:11
415-434-3947 2:17
415-434-9100 2:17
415-442-1001 2:24
415-442-1184 2:23
415-471-3296 3:11
415-471-3400 3:12

              5
50,000 8:9

              6
```

```
67 40:1

              7
7 31:14,17
7th 3:10
70 40:1
706 2:10

              8
8 30:6
8th 4:18

              9
94105 2:22
94111 2:10,16  3:11
```