1 | Kenneth A. Gallo (*pro hac vice*)
2 | Bruce H. Searby (*pro hac vice*)
  | PAUL, WEISS, RIFKIND, WHARTON & GARRISON  LLP
  | 2001 K Street, NW
3 | Washington, DC 20006-1047
  | Telephone: 202.223.7356
4 | Facsimile: 202.204.7356
  | kgallo@paulweiss.com
5 | bsearby@paulweiss.com

6 | Colin C. West (SBN 184095)
7 | BINGHAM MCCUTCHEN LLP
  | Three Embarcadero Center
  | San Francisco, CA 94111-4067
8 | Telephone: 415.393.2000
  | Facsimile: 415.393.2286
9 | colin.west@bingham.com

10 | *Attorneys for Applicant*
   | Sharp Corporation
11 |

12 |
13 |                   UNITED STATES DISTRICT COURT
14 |                 NORTHERN DISTRICT OF CALIFORNIA
15 |                      SAN FRANCISCO DIVISION
16 |

| | |
|---|---|
| IN RE CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No.:  3:07-cv-5944-SC MDL No. 1917 |
| This Document Relates to: | **OBJECTIONS OF SHARP CORPORATION TO THE SPECIAL MASTER'S REPORT AND RECOMMENDATION REGARDING SUBPOENA** |
| IN RE: APPLICATION FOR JUDICIAL ASSISTANCE FOR THE ISSUANCE OF SUBPOENA PURSUANT TO 28 U.S.C. § 1782 TO OBTAIN DISCOVERY FOR USE IN A FOREIGN PROCEEDING | **ORAL ARGUMENT REQUESTED** |
| Case No. CV-12-80151 MISC (SC) | |
| | Date:        December 21, 2012 Time:        10:00 am Judge:       Honorable Samuel Conti Courtroom:  One, 17th Floor |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**RELEVANT RECORD**

In accordance with Paragraph 17 of the Order Appointing Special Master (Case 3:07-cv-5944 Dkt. No. 302), the record relevant to Defendants' motion to quash and Sharp Corporation's motion to compel is as follows:

| Docket No. (3:12-mc-80151 "MISC") / (3:07-cv-5944 "MDL") | Title |
|---|---|
| MISC No. 1 | *Ex Parte* Application of Sharp Corporation for Order Pursuant to 28 U.S.C. § 1782 to Obtain Discovery for Use in a Foreign Proceeding |
| MISC No. 2 | Declaration of Bruce H. Searby in support of *Ex Parte* Application of Sharp Corporation for Order Pursuant to 28 U.S.C. §1782(a) to Obtain Discovery for Use in a Foreign Proceeding |
| MDL No. 1115-1 | Declaration of R. Alexander Saveri in Support of Motion for Class Certification and Settlement Approval |
| MISC No. 8 | Real Parties in Interest CRT Defendants' Joint Opposition to *Ex Parte* Application of Sharp Corporation for Order Pursuant to 28 U.S.C. § 1782 to Obtain Discovery for Use in a Foreign Proceeding and Exhibit A |
| MDL No. 1251 | Opposition of Direct Purchaser Plaintiffs' and Saveri & Saveri, Inc.'s to *Ex Parte* Application by Sharp Corporation |
| MISC. No. 9 | Reply Memorandum in Support of *Ex Parte* Application of Sharp Corporation for Order Pursuant to 28 U.S.C. § 1782 to Obtain Discovery for Use in a Foreign Proceeding |
| MISC No. 11 | Memorandum in Response to the Opposition of the Direct Purchaser Plaintiffs' Class and Saveri & Saveri, Inc. to the *Ex Parte* Application of Sharp Corporation for Order Pursuant to 28 U.S.C. § 1782 to Obtain Discovery for Use in a Foreign Proceeding |
| MISC. No. 13 MDL No. 1269 | Order Granting *Ex Parte* Application of Sharp Corporation for Order Pursuant to 28 U.S.C. § 1782 to Obtain Discovery for Use in a Foreign Proceeding |
| MDL No. 1299 | Order Granting *Ex Parte* Application of Sharp Corporation for Order Pursuant to 28 U.S.C. § 1782 to Obtain Discovery for Use in a Foreign Proceeding |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| Docket No. (3:12-mc-80151 "MISC") / (3:07-cv-5944 "MDL") | Title |
|---|---|
| MISC No. 14<br>MDL No. 1327 | Defendants' August 23, 2012 Opening Letter Brief in Support of the Motion to Quash |
| MISC No. 14-1<br>MDL No. 1327-1 | Declaration of Tyler M. Cunningham in Support of Defendants' Motion to Quash |
| MISC No. 14-2<br>MDL No. 1327-2 | Declaration of Deok-Gu Lee in Support of Defendants' Motion to Quash |
| MDL No. 1338 | Sharp's September 5, 2012 Letter Brief in Opposition to the Motion to Quash |
| MDL No. 1339 | Declaration of Keum-Seok Oh in Support of Sharp's Opposition |
| MDL No. 1340 | Sharp's September 5, 2012 Letter Brief in Support of Sharp's Motion to Compel |
| MDL No. 1353 | Saveri & Saveri Inc.'s September 15, 2012 Reply Letter Brief in Support of the Motion to Quash |
| MDL No. 1354 | Defendants' September 17, 2012 Reply Letter Brief in Support of the Motion to Quash |
| MDL No. 1354-1 | Declaration of Hae Eun Choi in support of the Motion to Quash |
| MDL No. 1415 | Special Master's Report and Recommendation to grant Defendants' Motion to Quash |
| MDL No. 1426-1 | Transcript of the Hearing Before the Special Master on September 20, 2012 |

## TABLE OF CONTENTS

**Page**

Table of Authorities ................................................................................................ ii

I.      INTRODUCTION ........................................................................................ 1

II.     FACTUAL AND PROCEDURAL BACKGROUND ................................... 4

        A.     The Korean Litigation ..................................................................... 4

        B.     Sharp's 1782 Application ................................................................ 5

III.    ARGUMENT ............................................................................................... 7

        A.     Sharp's Subpoena Is Proper Under the Requirements of 28 U.S.C. §
               1782 .................................................................................................. 7

        B.     The *Intel* Factors Weigh in Favor of Enforcing the Subpoena ........... 8

               1.     Saveri Is Not a Participant in the Korean Litigation ............... 9

               2.     The Korean Court Is Not Hostile to U.S. Aid In Gathering
                      Discovery ............................................................................... 10

               3.     Sharp Is Not Circumventing the Korean Court's Restrictions ......... 13

               4.     Sharp's § 1782 Application is Not Unduly Burdensome ........... 15

        C.     Special Master Legge's Other Concerns are Unfounded ................... 18

IV.     CONCLUSION .......................................................................................... 21

1

2

## TABLE OF AUTHORITIES

3

Page(s)

4

CASES

5

*In re Application of Apple Inc.,*
   No. MISC 12-80013, 2012 WL 1570043 (N.D. Cal. May 2, 2012) ...................................... 11

6

7

*In re Application of Caratube Int'l Oil Co., LLP,*
   730 F. Supp. 2d 101 (D.D.C. 2010) ...................................................................................... 14

8

9

*In re Application of Digitechnic,*
   No. C07-414-JCC, 2007 WL 1367697 (W.D. Wash. May 8, 2007)......................... 11, 12, 14

10

*In re Application of Malev Hungarian Airlines*, 964 F.2d 97 (2d Cir. 1992) ................................ 8

11

*In re Application of Marano,*
   No. CV-09-80020-MISC-DLJ, 2009 WL 482649 (N.D. Cal. Feb. 25, 2009) ................. 11, 12

12

13

*In re Application of Microsoft Corp.,*
   428 F. Supp. 2d 188 (S.D.N.Y. 2006)............................................................................. 14, 15

14

15

*In re Application for an Order for Judicial Assistance in a Foreign Proceeding in the*
   *Labor Court of Brazil,*
   466 F. Supp. 2d 1020 (N.D. Ill. 2006) ................................................................................. 14

16

17

*Avtel Services, Inc. v. U.S.,*
   70 Fed. Cl. 173 (Fed. Cl. 2006) ........................................................................................... 21

18

19

*In re Baycol Products Litig.,*
   MDL No. 1431, 2003 WL 22331293 (D. Minn. May 6, 2003) ....................................... 16, 19

20

*CBS Interactive, Inc. v. Etilize, Inc.,*
   257 F.R.D. 195 (N.D. Cal. 2009)......................................................................................... 20

21

22

*Cryolife v. Tenaxis Medical, Inc.,*
   No. C08-5124, 2009 WL 88348 (N.D. Cal. Jan. 13, 2009) ................................................. 11

23

*In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.,*
   255 F.R.D. 308 (D. Conn. 2009).................................................................................... 15, 19

24

25

*Euromepa S.A. v. R. Esmerian, Inc.,*
   51 F.3d 1095 (2d Cir. 1995)................................................................................................. 11

26

*In re Gushlak,*
   No. 11-MC-218, 2011 WL 3651268 (E.D.N.Y. Aug. 17, 2011) ......................................... 11

27

28

*Heraeus Kulzer, GmbH v. Biomet, Inc.,*
    633 F.3d 591 (7th Cir. 2011)....................................................................................... 13, 14, 17

*Intel Corp. v. Advanced Micro Devices, Inc.,*
    542 U.S. 241 (2004).......................................................................................................... passim

*In re Linerboard Antitrust Litigation,*
    333 F. Supp. 2d 333 (E.D. Pa. 2004) ....................................................................... 16, 17, 19

*Oracle Corp. v. SAP AG,*
    No. C-07-1658, 2010 WL 545842 (N.D. Cal. Feb. 12, 2010) ......................................... 18, 19

*In re Premises Located at 840 140th Ave. NE, Bellevue, Wash.,*
    634 F.3d 557 (9th Cir. 2011)................................................................................................ 8

*In re Republic of Ecuador,*
    No. C10-80225 MISC, 2011 WL 736868 (N.D. Cal. Feb. 22, 2011).................................. 11

*In re Roebers,*
    No. C12-80145 MISC, 2012 WL 2862122 (N.D. Cal. July 11, 2012) ................................. 8

STATUTES

28 U.S.C. § 1782 ................................................................................................................. passim

Sharp Corporation respectfully submits the following objections to the Special Master's Report and Recommendation Regarding Subpoena dated October 22, 2012. (3:07-cv-5944-SC ("MDL") Dkt. No. 1415 ("R&R").) Pursuant to Federal Rule of Civil Procedure 53(f)(1), Sharp requests oral argument regarding the following objections at the Court's convenience. Sharp Corporation believes that the issues presented in the objections are sufficiently important that the Court would benefit from oral argument and, thus, respectfully requests that a hearing on the objections be scheduled for this purpose.

## I.      INTRODUCTION

Sharp Corporation and its subsidiaries (collectively "Sharp") are victims of a global conspiracy by suppliers of cathode ray tubes ("CRTs") to fix the price of CRTs. Sharp has reason to believe that it was forced to pay illegal overcharges on a global scale as a result of the suppliers' anticompetitive conduct. In this proceeding, Sharp seeks access to a collection of documents produced in U.S. litigation regarding that global conspiracy for use in a Korean antitrust lawsuit. In that Korean lawsuit, Sharp's non-U.S. subsidiaries seek recovery for damages they sustained at the hands of Korean CRT manufacturers and their subsidiaries from purchases in or for the Asian market (the "Korean Litigation").[1] Sharp made its request to this Court for authority to subpoena documents pursuant to 28 U.S.C. § 1782, which Congress crafted "to provide federal court assistance in gathering evidence for use in foreign tribunals." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004).

This Court granted the *Ex Parte* Application of Sharp Corporation for Order Pursuant to 28 U.S.C. § 1782 to Obtain Discovery for Use in a Foreign Proceeding ("1782 Application"), and

---

[1] *See* Korean Complaint, Case No. 2010gahap21125 Claim for Damages (gi) filed in Suwon District Court, pp. 12-19 (Case 3:12-mc-80151-SC ("MISC"), Dkt. No 2, Ex. A). Plaintiffs in Korea include Sharp Corporation, a Japanese corporation, and Sharp subsidiaries located in Malaysia, Indonesia, Thailand, China, India and the Philippines.

Sharp thereafter served a subpoena on interim counsel for the Direct Purchaser Plaintiff class in *In re Cathode Ray Tube (CRT) Antitrust Litig.*, Case No. 07-cv-5944-SC (the "MDL Litigation"), Saveri & Saveri, Inc.  Here, Sharp seeks to have overruled the Special Master's Report and Recommendation to quash Sharp's subpoena and deny its motion to compel compliance with that subpoena.  (MDL Dkt. No. 1415.)  There has never been a dispute that Sharp meets Section 1782's statutory requirements for a subpoena to issue.  The Special Master agreed with Saveri and the Defendants in the MDL Litigation, however, that this Court should not, in the exercise of its discretion under § 1782, permit the requested discovery.

The Special Master made critical factual and legal errors in ruling on the underlying motions.  At the outset, the Special Master's Report made a critical factual error regarding the nature of the Korean Litigation in which Sharp seeks to use the documents, expressing a belief that Sharp pursued a cause of action there *instead of and in preference to* being a plaintiff in the MDL Litigation here.  As Sharp has explained, however, the Korean Litigation involves a separate volume of commerce than what is at issue in the MDL Litigation.  The Special Master's clear factual error in this regard pervades the analysis of the various discretionary factors under § 1782 and contributed to his conclusion to deny Sharp relief.

Key errors of law in the Special Master's Report relate to the undisputed point that Sharp could not obtain such discovery in Korean court that it now seeks before this Court.  From this, the Special Master concluded that the Korean court is unlikely to be receptive to U.S. judicial assistance, and that Sharp's subpoena is an attempt to circumvent Korean procedure.  These conclusions, however, are in direct conflict with the jurisprudence under § 1782, including the Supreme Court's leading decision on the statute.  Those cases have refused to conflate a foreign court's more limited approach to *ordering* discovery with hostility to *receiving* the fruits of U.S. judicial assistance.  Sharp has demonstrated that both Korean civil procedure generally and this

Korean court in particular are open to receiving the evidence obtained from a § 1782 subpoena. The Special Master erred by ignoring or giving short shrift to this showing.

The Special Master also erred by assessing the burden of complying with the subpoena upon Saveri as being "very substantial." Sharp seeks only documents *already produced* in the MDL Litigation, which it has sound reason to believe pertain to the very same conspiracy that is the subject of the Korean Litigation. Sharp efficiently sought production of documents that have already passed through filters of relevance in the MDL discovery process, and by seeking it from a single custodian rather than by propounding numerous new subpoenas to different parties. Sharp sought to work with Saveri to further minimize any burdens, and has even offered to pay the reasonable costs of the automated transfer of the documents from the single computer server to which Saveri has transferred the discovery document files, including compensating Saveri for any time spent in transferring the documents. Whatever burden remains on Saveri is unquantified and trivial, and should not serve as a basis for denying Sharp § 1782 relief, nor for forcing Sharp to start over with new subpoenas to other parties to the MDL Litigation.

The Special Master's Report also cites other miscellaneous concerns, such as maintaining confidentiality over documents used in Korea and equal access to evidence by the defendants in the Korean Litigation. These are ancillary concerns that Sharp has already addressed with feasible solutions, or that the parties easily can address to the Korean court. None of these concerns can—in justice, and consistent with Congress's purposes in enacting § 1782—override Sharp's critical need for access to evidence to sustain its claim for antitrust damages in Korea.

For these and other reasons discussed below, this Court should reject the Special Master's Report and Recommendation, deny Defendants' motion to quash, and compel Saveri to produce the subpoenaed documents.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## II.      FACTUAL AND PROCEDURAL BACKGROUND

### A.      The Korean Litigation

Sharp filed suit in Korea in November 2010, alleging that certain Korean CRT suppliers sold CRTs to Sharp at prices fixed "during CRT competitor meetings, the 'Glass Meetings', and as a result, the Korean Litigation Defendants generated revenue from the overcharge on its sales of CRTs to Sharp and its subsidiaries and causing damages to Sharp and its subsidiaries." Declaration of Keum-Seok Oh dated September 5, 2012, ¶ 4 ("Oh Decl.") (MDL Dkt. No. 1339). There is some overlap between the Korean Litigation and the MDL Litigation. Some (but not all) of the Defendants in the Korean Litigation are also defendants in the MDL Litigation.[2]  The Korean Litigation also concerns essentially the same illegal cartel activity that is the subject of this MDL, relating to the manufacture and pricing of CRTs.

There are also substantial differences between the Korean Litigation and the MDL Litigation. Most notably, the putative MDL class action embraces only "persons and entities who . . . directly purchased a CRT Product *in the United States*."  Direct Purchaser Plaintiffs' Consolidated Amended Class Action Complaint ¶85 (March 16, 2009) (MDL Dkt. No. 436) (emphasis added). By contrast, in the Korean Litigation, Sharp is only pursuing the claims of Sharp's foreign subsidiaries, only against Korean CRT suppliers and their affiliates, and only for purchases outside the U.S.  None of Sharp's U.S. subsidiaries that purchased CRTs for the U.S. market are parties to the Korean Litigation and none of the claims in the Korean Litigation involve U.S. commerce.

[2]  The defendants in the Korean Litigation are Samsung SDI Co., Ltd., Samsung SDI (Malaysia) Sdn Bhd., Samsung SDI (HK) Ltd., Shenzhen Samsung SDI Co., Ltd., and Tianjin Samsung SDI Co., Ltd., LG Philips Display Co., Ltd., PT LP Displays Indonesia, LG Philips Displays (Singapore) Pte. Ltd., LG Philips (Shuguang) Displays, and Meridian Solar & Display Co (collectively the "Korean Defendants").  The defendants in the MDL Litigation include those names in the Direct Purchaser Plaintiffs' Consolidated Amended Complaint filed on March 16, 2009 (MDL Dkt. No. 436).

### B.     Sharp's 1782 Application

To assist with the Korean Litigation, Sharp filed a 1782 Application in the Northern District of California.  (MISC Dkt. No. 1).  That 1782 Application sought leave to subpoena the Saveri firm for documents produced in the MDL Litigation because Saveri publicly averred in motions seeking approval for class settlements that it has custody of over "five million pages of documents" that Defendants and others produced over the past several years.  Decl. of R. Alexander Saveri in Support of Motion for Class Certification and Settlement Approval ("Saveri Decl.") ¶ 7 (MDL Dkt. No. 1115-1).  Sharp has reason to believe that these documents would necessarily include, at a minimum, evidence of the hundreds of "Glass Meetings" among CRT manufacturers in various locales across the world as alleged in both the DPP class's complaint and the Korean Litigation.  When Sharp filed the application, Sharp was a member of the DPP class Saveri represented.

The next day, Sharp's Korean counsel informed the Korean court that Sharp was seeking discovery from the MDL Litigation for use in the Korean Litigation.  Oh Decl. ¶ 13.  The Korean court acknowledged Sharp's efforts and stated that it would wait to set a date for the next hearing in the case until after Sharp had submitted such evidence to it.  *Id.*

Sharp's 1782 Application sought the right to subpoena documents which Sharp would not otherwise have been able to access through Korean discovery procedures only because Korean discovery rules require a much higher level of precision than U.S. discovery rules to request documents.  Korean civil procedure rules require, for any requested document, that a party specify:  (i) the "indication" of the document, (ii) the purport of the document, (iii) the holder of the document, (iv) the facts sought to be proven by the document, and (v) the causes of the obligation to produce the requested document.  *See* Oh Decl. ¶ 10.  For example, the indication of document specification "requires that the exact document if bound together with other documents

must be identified specifically as to where it is to be found within the bound documents, in addition to specifying whether it is a copy or original." *Id.* In other words, when documents are hidden or their precise descriptions are unknown to the requesting party, as here, the Korean discovery rules are of little help. Section 1782 was designed to assist foreign litigations in situations such as this, and reciprocal discoverability is not required. *See Intel*, 542 U.S. at 261-62.

When Sharp filed its 1782 Application *ex parte*, as permitted under the statute, it simultaneously filed a Motion to Relate Case in the MDL docket (providing immediate notice to all parties of record in the MDL of its application), and served a courtesy copy on Saveri. Both Defendants and Saveri filed an opposition to the 1782 Application (MISC Dkt. No. 8; MDL Dkt. No. 1251). Sharp responded to both oppositions. (MISC Dkt. No. 9; MISC Dkt. No. 11). Special Master Legge granted Sharp's 1782 Application on July 23, 2012 (MDL Dkt. No. 1269), and this Court approved the order granting the 1782 Application on August 7, 2012. (MDL Dkt. No. 1299). Provisions in both the 1782 Application and the August 7, 2012 Order specified that the confidentiality protections of the MDL Protective Order (MDL Dkt. No. 306) would be extended to the use of the documents obtained by the subpoena in Korean court, prior to any such use of documents. (August 7 Order at 2; MDL Dkt. No. 1299).

After Sharp served the subpoena on Saveri, Saveri objected to it. Sharp met and conferred with Saveri and agreed to limit the scope of its subpoena to exclude any documents produced by third parties and plaintiffs, to pay any reasonable costs associated with Saveri's gathering the documents (which were already in its possession), and to compensate court reporters for copies of deposition transcripts. Sharp also clarified that its subpoena did not call for an ongoing production as Saveri received more documents in discovery in the MDL Litigation. Saveri made

1  no further suggestions as to how Sharp could trim its requests, and finally maintained the

2  objection.

3      Defendants filed a motion to quash, and Sharp moved to compel Saveri to comply with

4  the subpoena. No one contested that Sharp met the mandatory elements of 28 U.S.C. § 1782.

5  Defendants instead argued that the subpoena should be quashed under the discretionary factors

6  the Supreme Court articulated in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241

7  (2004). The parties briefed the issues and had oral argument before Special Master Legge on

8  September 20, 2012.

9      Special Master Legge issued a Report and Recommendation on October 22, 2012,

10 recommending that this Court grant Defendants' motion to quash and deny Sharp's motion to

11 compel production. (MDL Dkt. No. 1415).

12 **III.    ARGUMENT**

13      This Court reviews the Special Master's legal findings *de novo*, his findings of fact for

14 clear error, and his procedural decisions for an abuse of discretion. *See* Order Appointing Special

15 Master ¶ 18 (MDL Dkt. No. 302). Because the Special Master's Report and Recommendation

16 misinterprets the law and makes erroneous factual findings, Sharp respectfully submits that the

17 Report should be overruled.

18      **A.    Sharp's Subpoena Is Proper Under the Requirements of 28 U.S.C. § 1782**

19      28 U.S.C. § 1782 is the "product of congressional efforts, over the span of nearly 150

20 years, to provide federal-court assistance in gathering evidence for use in foreign tribunals." *Intel*

21 *Corp.*, 542 U.S. at 247. The statute provides in relevant part:

22          The district court of the district in which a person resides or is found may order
           him to give his testimony or statement or to produce a document or other thing for
23          use in a proceeding in a foreign or international tribunal . . . . The order may be
           made pursuant to a . . . . request made . . . upon the application of any interested
24          person.

28 U.S.C. §1782(a).

No one disputes that Sharp satisfies § 1782's statutory requirements; the only dispute concerns whether Sharp's subpoena should be enforced or quashed given the non-exhaustive list of discretionary factors that the Supreme Court articulated in its leading decision on the statute, *Intel*.  The Court identified four factors that "bear consideration" before a district court exercises its authority to allow discovery under § 1782:  (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions"; and (4) whether the request is "unduly burdensome or intrusive," in which case it may be "rejected or trimmed." *Id.* at 264-65.  Each factor favors enforcing the subpoena here.  Respectfully, the Special Master abused his discretion in finding otherwise.

### B. The *Intel* Factors Weigh in Favor of Enforcing the Subpoena

Courts are to apply the *Intel* factors consistent with the "twin aims" of § 1782:  "providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar assistance to our courts."  *Intel*, 542 U.S. at 252; *see In re Application of Malev Hungarian Airlines*, 964 F.2d 97, 100 (2d Cir. 1992); *In re Roebers*, No. C12-80145 MISC, 2012 WL 2862122, *2 (N.D. Cal. July 11, 2012); *see also In re Premises Located at 840 140th Ave. NE, Bellevue, Wash.*, 634 F.3d 557, 563 (9th Cir. 2011) ("One of the important congressional purposes in broadening the scope of federal-court assistance was to encourage reciprocity by other nations.").  The Special Master's Report and Recommendation to quash Sharp's subpoena is at odds with both of these aims: it encourages duplicative discovery efforts *and* does not set a good example for Korean courts to provide similar assistance to U.S. courts.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 1.      Saveri Is Not a Participant in the Korean Litigation

The first *Intel* factor focuses on "whether the person from whom discovery is sought is a participant in the foreign proceeding." *Intel*, 542 U.S. at 264.  This is because the need for § 1782 relief may be reduced where it is possible to obtain the discovery from the target in the foreign proceeding. *See* 542 U.S. at 264.  Here, the factor cuts in favor of enforcing Sharp's discovery: there is no dispute that the recipient of the subpoena, class counsel Saveri, is not before the Korean court and cannot be subjected to discovery there.

Although Special Master Legge concluded that this factor weighed against permitting the subpoena, his analysis was sparse.  Special Master Legge acknowledged that Saveri has possession of all the produced documents, and that Saveri's interests are aligned with Sharp's in that Sharp was a putative class member until it chose to opt out of the DPP class.  R&R at 3; *see also* Saveri Decl. ¶ 7.  Nonetheless, the Special Master concluded that Sharp really sought "information from the defendants."  R&R at 3.

Sharp directed its subpoena at an entity known by Sharp to be in custody of all the needed documents and that could therefore respond most efficiently to the request, which is consistent with the goal of encouraging efficient discovery.  Further, as Sharp explained in its briefing before the Special Master, many of the parties that have produced documents here in the MDL Litigation are not part of the Korean Litigation and are therefore beyond the reach of the Korean court.  *See* Opposition to Motion to Quash at 4 (MDL Dkt. No. 1338); Transcript ("Tr.") at 28 (MDL Dkt. No. 1426-1).  Finally, even for the parties that are present in both the U.S. and Korean Litigations, Sharp cannot obtain discovery in Korea from the Korean Defendants because of restrictions and requirements of Korean discovery procedures.

**2.      The Korean Court Is Not Hostile to U.S. Aid In Gathering Discovery**

The second *Intel* factor considers "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance."  *Intel*, 542 U.S. at 264-65.  The Special Master made two critical legal errors to conclude that this factor favored quashing the subpoena.

First, the Special Master misconstrued the statute and essentially imposed a foreign-discoverability rule when he concluded that "the policy of Korea [ ] not to engage in or permit broad discovery . . . should be one of the reliable indicators of the lack of receptivity."  R&R at 4.  But the Supreme Court expressly rejected any such "foreign discoverability rule" as part of §1782.  *Intel*, 542 U.S. at 253 ("We granted certiorari . . . on the question of whether § 1782(a) contains a foreign-discoverability requirement. We now hold that [it] does not impose such a requirement.").  The Court explained:

> A foreign nation may limit discovery within its domain for reasons peculiar to its own legal practices, culture, or traditions—**reasons that do not necessarily signal objection to aid from United States federal courts**.  A foreign tribunal's reluctance to order production of materials present in the United States similarly may signal no resistance to the receipt of evidence gathered pursuant to § 1728(a).  **When the foreign tribunal would readily accept relevant information discovered in the United States, application of a foreign-discoverability rule would be senseless.  The rule in that situation would serve only to thwart § 1782's objective to assist foreign tribunals in obtaining relevant information that the tribunals may find useful but, for reasons having no bearing on international comity, they cannot obtain under their own laws.**

*Id.* at 261-62 (internal citations omitted) (emphasis added).  The Special Master's reasoning directly contravenes the Supreme Court's holding on this issue.

Second, the Special Master incorrectly assigned Sharp the burden of proof on this factor.  He held that "[i]n the Ninth Circuit, courts have generally placed the burden on the requesting party, here Sharp, to provide facts showing that the foreign court would welcome the proposed discovery."  R&R at 4.  Where courts have actually addressed the question of burden, however, in

the Ninth Circuit and elsewhere, they have made clear that the burden is on the party *opposing* the § 1782 discovery to demonstrate a lack of receptivity in the foreign court.  *See, e.g.*, *In re Application of Apple Inc.*, No. MISC 12-80013, 2012 WL 1570043, *2 (N.D. Cal. May 2, 2012) (finding that the opposing party "has not met its burden of demonstrating that the German court would be unreceptive to U.S. judicial assistance"); *see also Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1102 (2d Cir. 1995) ("Absent specific directions to the contrary from a foreign forum, the statute's underlying policy should generally prompt district courts to provide some form of discovery assistance."); *In re Gushlak*, No. 11-MC-218, 2011 WL 3651268, at *4 (E.D.N.Y. Aug. 17, 2011) ("[C]ourts should only find that the requested material would not be discoverable in the foreign proceeding if the *opponent* of the § 1782 application presents authoritative proof, in the form of judicial, executive or legislative declarations from the forum country that specifically address the use of evidence gathered under foreign procedures."); *In re Republic of Ecuador*, No. C-10-80225, 2011 WL 736868, *7 (N.D. Cal. Feb. 22, 2011) ("Absent evidence that the tribunal *will reject* the evidence sought, the Court is not inclined to consider whether the foreign tribunal ultimately is likely to accept it.") (emphasis added); *Cryolife v. Tenaxis Medical, Inc.*, No. C08-5124, 2009 WL 88348, at *3 (N.D. Cal. Jan. 13, 2009) (factor weighed in applicant's favor where there was "no basis to conclude that the German court would be unreceptive" to the evidence.").  As a practical matter, it makes sense to place the burden on the party opposing the application to prove a lack of receptivity, as the statute's purpose is to facilitate foreign discovery efforts, not inhibit it.

Special Master Legge cited only two cases for the proposition that the burden on this factor was Sharp's:  *In re Application of Marano*, Case No. CV-09-80020-MISC-DLJ, 2009 WL 482649, at *4 (N.D. Cal. Feb. 25, 2009), and *In re Application of Digitechnic*, No. C07-414-JCC, 2007 WL 1367697 (W.D. Wash. May 8, 2007).  Neither stands for that proposition.  The *Marano*

court merely found an applicant's "conclusory" statement concerning the receptivity the British court to be insufficient to demonstrate receptivity, but it did not analyze which party bore the burden of proof.  2009 WL 482649 at *4.  In *Digitechnic*, the court was not persuaded by the applicant's assertion that the French court "expressed great interest" in obtaining U.S. discovery where Digitechnic failed to "provide any actual evidence of this assertion."  2007 WL 1367697 at *4.

In any event, Sharp demonstrated that the Korean court is receptive to assistance.  Sharp noted that at a status conference with the Suwon District Court, Sharp's Korean attorneys "stated to the court that Sharp intends to submit evidentiary documents to the court which were produced through discovery procedures in the U.S. litigation" and that Sharp is "in the process of acquiring them through U.S. court procedure."  Oh Decl. ¶ 13.  After being informed of Sharp's efforts, the court inquired as to how long the process would take and "when told that it would require a substantial amount of time . . . stated that it would not fix a date for the next hearing until Sharp submits evidence, implying that it would wait until Sharp submitted the evidence it acquired through the U.S. court procedure before moving forward."  *Id.*  The Korean court's actions are likewise consistent with Korea's "principle of free evaluation of evidence" under Article 202 of the Korean Civil Procedure Act.  *See* MISC Dkt. No. 2, Ex. B, "Korean Civil Procedure Act Art. 202" and Oh Decl. ¶¶ 16.  The broad range of evidence that a Korean court may receive specifically includes evidence gathered in a foreign country, under Article 296(2).  *See* MISC Dkt. No. 2, Ex. B, "Korean Civil Procedure Act Art. 296(2)" and Oh Decl. ¶ 17.  The Special Master's report failed to address these Korean legal authorities.  Defendants failed to provide any evidence to the contrary on the issue of the Korean court's receptivity to the documents produced in the MDL Litigation.

Because Sharp demonstrated that the Korean court is receptive, and the opposition has put forth no contrary evidence, the Special Master erred in finding that this factor weighed against enforcing the subpoena.

### 3.  Sharp Is Not Circumventing the Korean Court's Restrictions

The third *Intel* factor considers whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States."  542 U.S. at 264-65.  Special Master Legge's conclusion on this factor is erroneous for the same reasons that his conclusion on the second factor is: it relies on a foreign-discoverability rule the Supreme Court has rejected, and failed to acknowledge that Sharp has demonstrated that the Korean court is receptive to the discovery and that no one has proven otherwise.

The Special Master concluded it was "self-evident" that Sharp's subpoena was circumventing "the limitations of proof-gathering in existence in the Korean court."  R&R at 4-5.  The Special Master's conclusion would render § 1782 a nullity.  Courts have recognized that where, as here, a foreign court has not shown that it is hostile to such aid, the fact that discovery procedures in a foreign jurisdiction are more limited does not render a request for discovery under § 1782 a "circumvention" of the foreign procedures.

Judge Posner's opinion in *Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591 (7th Cir. 2011), illustrates this point.  The 1782 applicant, Heraeus, sought evidence in the United States that it could not seek through the German legal system.  (For example, Heraeus could request in Germany production of the specific contract between Biomet and Merck "concerning disclosure of bone-cement specifications dated April 4, 2000," but it could not ask for "production of 'all emails and notes of telephone conversations

relating to discussions of bone-cement ingredients between Biomet and Merck during the years 1997 through 2005.'" *Id.* at 596.) The district court denied the § 1782 application, relying on the same argument that Special Master Legge does here, finding that "by seeking more discovery than those procedures allow, Heraeus was affronting the German legal system." *Id.* at 597. The Seventh Circuit rejected this reasoning, finding there was "nothing to suggest that the German court would be affronted by Heraeus's recourse to U.S. discovery." *Id.* The same is true with respect to the Korean court here.

Circumvention requires something more than an applicant simply seeking documents it could not obtain in the foreign forum. Defendants and Saveri have not (and cannot) demonstrate the type of circumvention that this prong of *Intel* contemplates. For example, Sharp is *not* seeking discovery in an attempt to circumvent agreed upon arbitration procedures or after discovery had closed in another proceeding. *Cf. In re Application of Caratube Int'l Oil Co., LLP*, 730 F. Supp. 2d 101, 106-07 (D.D.C. 2010) (fact that case was in arbitration and request came after discovery deadline passed led to conclusion that permitting discovery would usurp foreign tribunal's authority); *see also In re Digitechnic*, 2007 WL 1367697, at *5 (finding circumvention where request was brought only at appeals stage and only "five days before the [applicant's] appellate brief was due . . . in litigation spanning over twelve years"). Nor is Sharp's § 1782 request at odds with a competing request in Korea. *Cf. In re Application of Microsoft Corp.*, 428 F. Supp. 2d 188, 191 (S.D.N.Y. 2006) (defendant's request for documents pursuant to § 1782 occurred "one day after requesting the same documents from the [European] Commission.").[3] And unlike some cases, neither the Korean government nor its court

---

[3] In this regard, we also note that the statute does not require Sharp to exhaust its discovery efforts in Korea prior to filing its § 1782 request. *See In re Application for an Order for Judicial Assistance in a Foreign Proceeding in the Labor Court of Brazil*, 466 F. Supp. 2d 1020, 1031

system has *opposed* Sharp's request. *Id.* at 192 (letter from European Commission stated that application was "an attempt to circumvent the established rules or access to file in proceedings before the Commission"). In sum, there is simply no evidence that Sharp is attempting to circumvent Korean procedures.

Central to Special Master Legge's holding on this factor was his belief that "Korea was the venue chosen by Sharp in preference to the venue of this court." R&R at 4. Because this reflects a misunderstanding of the fact that the Korean Litigation involves only foreign commerce that falls outside the scope of the U.S. Litigation, the Special Master erred in giving this any weight.

Sharp's application for documents that it could not gather under Korean discovery procedures, and that the Korean court has indicated it is receptive of, is entirely consistent with the purpose of § 1782.

### 4.      Sharp's § 1782 Application is Not Unduly Burdensome

The fourth *Intel* factor assesses the burden of the request, noting that "unduly intrusive or burdensome requests may be rejected or trimmed." 542 U.S. at 265. The Special Master's conclusion that Sharp's request was unduly burdensome failed on both the law and the facts for at least three reasons.

First, the Special Master questioned whether there was any support for using "§ 1782 for the wholesale taking" of a discovery record. R&R at 5. In fact, several courts have granted requests similar to Sharp's, with a party seeking access to a U.S. discovery record to use in a foreign proceeding with a § 1782 application or by way of permissive intervention. *See In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*, 255 F.R.D. 308, 325 (D. Conn.

---

(N.D. Ill. 2006) ("The statute does not require parties to first seek the discovery in the foreign tribunal.").

2009) (granting motion for permissive intervention and modifying protective order to allow

Canadian plaintiffs access to defendants' business records); *In re Baycol Products Litig.*, MDL

No. 1431, 2003 WL 22331293, *1, *6 (D. Minn. May 6, 2003) (granting Canadian movants,

pursuant to § 1782, access to discovery already produced in the multidistrict litigation); *see also*

Tr. at 30 (informing the Special Master of several examples).  The Special Master also observed

that the statute authorizes the production of "document," singular, which he opined suggested that

"the statute was meant to encompass a very limited and specific item of discovery," and he

"speculate[d]" that Congress did not intend for the statute to permit discovery of large volumes of

documents.  R&R at 5 (noting it would be "interesting to speculate whether the statute would

have been passed if the Congress had known that it would be applied to a request for some

5,000,000 documents in one case").[4]  This speculation is ungrounded in the law or legislative

history; such reasoning would indicate that *every* § 1782 request to date which sought more than

one document was improper.  This cannot be.

    *In re Linerboard Antitrust Litigation*, 333 F. Supp. 2d 333 (E.D. Pa. 2004), a multidistrict

antitrust action, is instructive.  The movant there, a Canadian company, sought "access to

discovery plaintiffs have collected" in the MDL for use in a parallel Canadian linerboard antitrust

action.  *Id.* at 338.  The court granted the request.  Although the company sought intervention

rather than filing a § 1782 application, the court addressed the statute and noted that providing

access promoted § 1782's goals of providing "efficient means of assistance to participants in

international litigation in our federal courts" and encouraging "foreign countries by example to

provide similar means of assistance to our courts."  *Id.* at 342.  The court also chastised the

---

[4] The Special Master incorrectly described the productions as consisting of "five million documents."  R&R at 5.  Saveri and Defendants have both attested to the fact that the production consists of "five million pages"; because documents can consist of multiple pages, the precise document count is unknown but is likely smaller than five million

defendants who opposed the request, noting that it was "impressed with the wastefulness" of defendants' insistence upon duplicative discovery.  *Id.*

Second, to the extent the Special Master believed Sharp's request was too broad, he erred by denying the "discovery request flat" instead of merely requiring it to be trimmed.  *Heraeus*, 633 F.3d at 597.  Sharp's request was deliberately aimed at gathering the documents necessary to prosecute the Korean case in the most efficient manner possible.  Sharp sought to avoid the time and resources involved in propounding multiple subpoenas on the individual defendants. *Compare* R&R at 6 (suggesting that Sharp seek discovery from the individual defendants).  To the extent that Sharp's request was "broad" it was only so that it *minimized* the burden on Saveri or anyone else of having to sift through the record for specific documents.  Rather than dismissing Sharp's request outright due to its volume, the Special Master could have asked the parties to negotiate "over cutting down the request to eliminate excessive burden."  *Heraeus*, 633 F.3d at 597.  Sharp already showed ample willingness to work with Saveri to minimize burdens associated with producing the documents:  Sharp narrowed the requests and agreed to cover the reasonable costs and expenses associated with the collection and production.  *See* Motion to Compel Saveri to Comply with Subpoena at 2, 3 (MDL Dkt. No. 1340); Tr. 41.

Third, there is no factual basis in the record for Special Master Legge's conclusion that, even though the requested documents have already been produced in the MDL Litigation, "the burden [on Saveri] of gathering together and compiling the information in electronic form is still very substantial."  R&R at 5.  Saveri admits that *all* of the subpoenaed records are now located on a server.  Opposition to Motion to Compel at 2 (MDL Dkt. No. 1353).   At the end of the day, Sharp has agreed to pay for Saveri's costs and expenses associated with producing the requested documents.  To the extent that any burden remains after taking into account that Sharp has made this concession, it is minimal, and Saveri has yet to identify or quantify what it is.

1
2

In the end, Special Master Legge's burden analysis reflects a basic misunderstanding of why Sharp is pursuing this discovery for use in Korea.

3
4

## C. Special Master Legge's Other Concerns are Unfounded

5
6
7

Finally, in denying the motion to compel and granting Defendants' motion to quash, Special Master Legge noted several policy considerations that fall outside the scope of the statute or the *Intel* factors. These concerns are without merit.

8
9
10
11
12
13
14
15
16
17
18
19
20
21

First, Special Master Legge commented on the impact of allowing Sharp access to U.S. discovery in the Korean litigation without reciprocal procedures available to the Korean defendants. To the extent this is of concern to the Defendants, they can seek to negotiate possible equitable solutions. In *Intel*, the Supreme Court noted that "concerns about maintaining parity among adversaries in litigation likewise do not provide a sound basis for a cross-the-board foreign discoverability rule," but that the court could condition relief upon the "reciprocal exchange of information" and that the "foreign court can place conditions on its acceptance of information to maintain whatever measure of parity it concludes appropriate." *Intel*, 542 U.S. at 262. The Korean court is more than capable of ensuring that the litigation proceeds fairly before it and will be able to "place conditions on its acceptance of the information to maintain whatever measure of parity it concludes is appropriate." *Id.* Defendants have not even attempted to show that such an endeavor would be futile.

22
23
24
25
26
27
28

Second, Special Master Legge notes that he does not wish to "reward[]" Sharp for what he perceives as forum-shopping with the fruits of the U.S. discovery process. R&R at 5; Tr. at 7. This reflects a misunderstanding of the nature of the Korean Litigation, as discussed above. Sharp's request was consistent with the Ninth Circuit's policy favoring access to discovery for collateral litigation. *See Oracle Corp. v. SAP AG*, No. C-07-1658, 2010 WL 545842, *1 (N.D. Cal. Feb. 12, 2010) ("The Ninth Circuit 'strongly favors access to discovery material to meet the

needs of parties engaged in collateral litigation.") (quoting *Foltz v. State Farm Mut. Automobile Ins. Co.*, 331 F.3d 1122, 1131 (9th Cir. 2003)). This "policy of avoiding duplicative recovery," extends to foreign litigations as well. *Id.* (granting foreign subsidiary of U.S. party access to discovery record for potential parallel European litigation). There are also numerous antitrust class actions where U.S. discovery has been made available to Canadian class action plaintiffs to avoid this same burden. *See, e.g.*, *In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*, 255 F.R.D. at 325; *In re Linerboard Antitrust Litig.*, 333 F. Supp. 2d 338, 342; *In re Baycol Products Litig.*, 2003 WL 22331293, at *6.

Special Master Legge also expressed concern about the volume of documents to be provided to the Korean court. Sharp, however, explained in its briefing and at the hearing that it has no intention of "dumping" five million pages of documents on the Korean court. Tr. at 34. ("That is a myth . . . . There's no intention of introducing into the Korean court five million pages."); Opposition to Defendants' Motion to Quash at 9 (MDL Dkt. No. 1338) (noting that Sharp will submit a "small subset" of documents to the Korean court). Sharp represented to the Court that it asked for the complete document productions of Defendants and third-parties to minimize the burdens on Saveri of having to sift through the evidence itself; Sharp intends to review the productions to identify those documents that will best assist it in pursuing its claims in Korea. The Korean court will have no need on Sharp's account to receive, file, or review any more documents than those selected ones that Sharp ultimately finds necessary to prove its case. Special Master Legge erred in not considering this representation.

Finally, the Special Master also quashed the subpoena because he concluded that there was "no way to anticipate all of the ways in which [Defendants'] confidential documents . . . could become exposed and not protected in Korea." R&R at 6. This concern is unfounded. Sharp and its outside counsel in both the U.S. and Korea have already agreed to adhere to the

1   Protective Order and executed, as necessary, copies of the Agreement and Acknowledgement to

2   Be Bound, as modified to reflect use of the documents in the Korean Litigation.  Oh Decl. ¶ 22;

3   MDL Dkt. 1338-4 – 1338-6 (Exhibit D, Bae, Kim & Lee LLC's Agreement and

4   Acknowledgement to be Bound; Exhibit E, Sharp Corporation's Agreement and

5   Acknowledgement to be Bound; Exhibit F, Paul, Weiss, Rifkind, Wharton & Garrison LLP's

6   Agreement and Acknowledgement to be Bound).  This Acknowledgement expressly subjects the

7   signatories to the jurisdiction of *this* Court for the purpose of enforcing the terms of the Protective

8   Order.  In conjunction with this, Sharp has committed to protecting the *small subset of documents*

9   *actually selected for submission* to the Korean court through the sealing mechanism of Article

10  163 of the Korean Civil Procedure Act.  *See* KCPA Article 163 (permitting the court, upon the

11  motion of a party, to file documents under seal "when any business secrets of the party . . . are

12  entered in the litigation records.") (MDL Dkt. No. 1339 at 28); Oh Decl. ¶¶ 23-25.  The

13  Protective Order itself contemplates requests of confidential documents produced pursuant to it

14  for use in other proceedings, and contains a mechanism for affected parties to protect their

15  confidentiality interests.  Protective Order at 10 (MDL Dkt. No. 306).  As Sharp has stated from

16  the beginning, Sharp is willing to work through and meet any and all concerns about

17  confidentiality as a pre-condition of making use of documents in Korea.[5]  And if the Protective

18  Order must be modified to permit the use of documents in Korea, then the opposition must

19  establish why the protection continues to be necessary.  *See CBS Interactive, Inc. v. Etilize, Inc.*,

20  257 F.R.D. 195, 206 (N.D. Cal. 2009).  Defendants and Saveri have not met this burden.  For all

---

[5] Sharp specifically offered to detail its efforts at the hearing, but the Special Master stated that it was not necessary at this point.  Tr. at 50 ("I'd be happy to go into [the confidentiality issue].  I do think it's downstream from the wisdom of getting us the documents in the first place."  HON. LEGGE:  "Well, I'm inclined to think that last comment is correct, that I don't think there's any reason for my discussing that greatly at this point.").

OBJECTION TO THE SPECIAL MASTER'S REPORT AND RECOMMENDATION
CASE NO. 07-cv-5944-SC; 3:07-MD-1917-SC                                                      20

of these reasons, Saveri and the Defendants cannot hide behind the Stipulated Protective Order –
especially when Sharp is willing to be a signatory to its terms.[6]

## IV.   CONCLUSION

For the foregoing reasons, Sharp respectfully requests that the Court vacate the Special
Master's Report and Recommendation, denying Defendants' motion to quash, and compel Saveri
to produce the documents requested by the subpoena that was appropriately issued pursuant to §
1782.

Dated:  November 5, 2012

By:  /s/  Kenneth A. Gallo

PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
Kenneth A. Gallo (*pro hac vice*)
Bruce H. Searby (*pro hac vice*)
2001 K Street, NW
Washington, DC  20006
Telephone: 202.223.7356
Facsimile: 202.204.7356
kgallo@paulweiss.com
bsearby@paulweiss.com

BINGHAM MCCUTCHEN LLP
Colin C. West (CA State Bar No. 184095)
Three Embarcadero Center
San Francisco, CA 94111-4067
Telephone: 415.393.2000
Facsimile:  415.393.2286
colin.west@bingham.com

*Attorneys for Applicant*
*Sharp Corporation*

---

[6]  Notably, these documents concern a dated technology which is arguably no longer
commercially sensitive.  *See Avtel Services, Inc. v. U.S.*, 70 Fed. Cl. 173, 191 (Fed. Cl. 2006)
(collecting cases); *In re TFT-LCD Antitrust Litig.*, Case No. M 07-1827, Dkt No. 6257 at 1 (July
24, 2012) (holding that the court is no longer allowing materials to be filed under seal without
good cause shown given the age of the documents and information).

1

2    <u>Attestation</u>:  The filer of this document attests that the concurrence of the signatories thereto

3    have been obtained.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28