SHEPPARD MULLIN RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
GARY L. HALLING, Cal. Bar No. 66087
JAMES L. McGINNIS, Cal. Bar No. 95788
MICHAEL W. SCARBOROUGH, Cal. Bar No. 203524
TYLER M. CUNNINGHAM, Cal. Bar No. 243694
Four Embarcadero Center, 17th Floor
San Francisco, California  94111-4109
Telephone:    415-434-9100
Facsimile:    415-434-3947
E-mail:       ghalling@sheppardmullin.com
              jmcginnis@sheppardmullin.com
              mscarborough@sheppardmullin.com
              tcunningham@sheppardmullin.com

Attorneys for Defendants
SAMSUNG SDI AMERICA, INC.,
SAMSUNG SDI CO., LTD.,
SAMSUNG SDI (MALAYSIA) SDN. BHD.,
SAMSUNG SDI MEXICO S.A. DE C.V.,
SAMSUNG SDI BRASIL LTDA.,
SHENZHEN SAMSUNG SDI CO., LTD. and
TIANJIN SAMSUNG SDI CO., LTD.

**[Additional Defendants and Counsel Listed on Signature Pages]**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Case No. 07-5944 SC |
| | MDL No. 1917 |
| This Document Relates to: | **DEFENDANTS' RESPONSE TO OBJECTIONS OF SHARP CORPORATION TO THE SPECIAL MASTER'S REPORT AND RECOMMENDATION REGARDING SUBPOENA** |
| IN RE: APPLICATION FOR JUDICIAL ASSISTANCE FOR THE ISSUANCE OF SUBPOENAS PURSUANT TO 28 U.S.C. § 1782 TO OBTAIN DISCOVERY FOR USE IN A FOREIGN PROCEEDING | |
| Case No. CV-12-80-151 MISC | |

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

STATEMENT OF ISSUES TO BE DECIDED ................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES ................................................... 1

I.      INTRODUCTION ............................................................................................... 1

II.     STATEMENT OF FACTS .................................................................................. 2

III.    ARGUMENT ....................................................................................................... 5

      A.      The Special Master's Recommendation Is Reviewed for Abuse of Discretion. ............................................................................................. 5

      B.      The Special Master Did Not Abuse His Discretion In Finding That All Four *Intel* Factors Weigh Against Enforcement of the Subpoena. ................. 5

            1.      The Special Master Correctly Determined That Sharp's Subpoena Really Seeks Information from the Korean Litigation Defendants. ....................................................................... 5

            2.      The Special Master Correctly Determined That the Korean Court Would Not Welcome Millions of Pages of Additional Documents. ....................................................................... 7

            3.      The Special Master Correctly Determined That Sharp's Subpoena  Is An Attempt to Circumvent Korean Discovery Limitations. ..................................................................... 9

            4.      The Special Master Correctly Determined that Sharp's Subpoena Poses an Undue Burden on Saveri, Defendants and All Participants in the Korean Litigation. ......................................... 11

      C.      The Special Master Did Not Abuse His Discretion In Finding That Additional Factors Weighed Against Enforcement of the Subpoena. .......... 13

IV.     CONCLUSION .................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

<u>CASES</u>

*Advanced Micro Devices, Inc. v. Intel Corp.*
   292 F.3d 664 (9th Cir. 2002).................................................................... 5

*In re Application of Babcock Borsig AG*
   583 F.Supp.2d 233 (D. Mass. 2008) .......................................................... 10

*In re Application of Caratube International Oil Co., LLP*
   730 F.Supp.2d 101 (D.D.C. 2010) ............................................................ 10

*In re Application of Digitechnic*
   2007 U.S. Dist. LEXIS 33708 (W.D. Wash., May 8, 2007)....................................9, 10

*In re Application of Iwasaki Elec. Co., Ltd.*, No. M19-82,
   2005 WL 1251787 (S.D.N.Y., May 26, 2005), *aff'd sub nom*
   *U.S. Philips Corp. v. Iwasaki Elec. Co., Ltd.*, 2005 WL 1874992 (2d Cir. 2005)....... 13

*In re Application of Microsoft Corp.*, No. C 06-80038 JF (PVT),
   2006 WL 825250 (N.D. Cal., March 29, 2006) ............................................... 9

*In re Application of Motorola Mobility, LLC*, No. C 12-80243 EJD,
   2012 U.S. Dist. LEXIS 149679 (N.D. Cal. Oct. 17, 2012)..................................... 9

*In re: Application of Peter Marano*
   2009 U.S. Dist. LEXIS 20060 (N.D. Cal., Feb. 25, 2009) ..................................... 9

*In re Application of Schmitz*
   259 F. Supp.2d 294 (S.D.N.Y. 2003)........................................................ 13

*In re Baycol Prods. Litig.*, MDL No. 1431,
   2003 WL 22331293 (D. Minn., May 6, 2003) ............................................... 13

*CBS Interactive, Inc. v. Etilize, Inc.*
   257 F.R.D. 195 (N.D. Cal. 2009)........................................................... 15

*In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*
   255 F.R.D. 308 (D. Conn. 2009)........................................................... 13

*Four Pillars Enterprises Co., Ltd. v. Avery Dennison Corp.*
   308 F.3d 1075 (9th Cir. 2002)............................................................. 15

*Heraeus Kulzer, GmbH v. Biomet, Inc.*
   633 F.3d 591 (7th Cir. 2011) ........................................................8, 10, 11

*Intel Corporation v. Advanced Microdevices, Inc.*
    542 U.S. 241 (2004) ..................................................................................passim

*In re Linerboard Antitrust Litig.*
    333 F.Supp.2d 333 (E.D. Pa. 2004) .............................................................. 13

*Oracle Corp. v. SAP AG*, C-07-01658 PJH
    2010 WL 545842 (N.D. Cal. Feb. 12, 2010) ............................................... 13

<u>U.S. STATUTES</u>

28 U.S.C. § 1782.....................................................................................................passim

<u>KOREAN STATUTES</u>

Civil Procedure Act, Article 346 .......................................................................... 4

## STATEMENT OF ISSUES TO BE DECIDED

Whether the Special Master abused his discretion in determining that Sharp Corporation's ("Sharp's") subpoena to Saveri & Saveri, Inc. ("Saveri") should be quashed and Sharp's motion to compel compliance with the subpoena should be denied.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

Nothing in Sharp's Objections to the Special Master's Report and Recommendation Regarding Subpoena ("Obj.") provides any basis to conclude that Special Master Legge abused his discretion in quashing Sharp's subpoena. To the contrary, the Special Master conducted a well-reasoned and thoroughly articulated analysis under the governing legal standards, ultimately concluding that Sharp's subpoena should be rejected as, among other things, an attempt to evade Korean discovery procedures. Sharp, Saveri and Defendants[1] all agree that this decision was wholly within the Special Master's discretion, and largely agree on the factors that govern the analysis. The Special Master evaluated the subpoena under the factors set forth by the U.S. Supreme Court in *Intel Corporation v. Advanced Microdevices, Inc.*, 542 U.S. 241 (2004), the leading case guiding district courts' exercise of discretion under 28 U.S.C. § 1782, and correctly concluded that all four *Intel* factors weighed against enforcement of the subpoena.

The Special Master based his conclusion on a series of factual findings, all of which are solidly grounded in the record, and all of which cannot be reversed unless clearly erroneous. <u>First</u>, the Special Master found that although Sharp's subpoena seeks documents and information from defendants in Sharp's Korean action already within the jurisdiction of that Korean court, Sharp has failed to even attempt to use Korean discovery procedures to obtain the requested information. <u>Second</u>, the Special Master found that Korean policy indicates that the Korean court would not be receptive to the introduction of such a large

---

[1] "Defendants" refers to the undersigned defendants who joined in the Motion to Quash.

DEFENDANTS' RESPONSE TO SHARP CORP'S OBJECTIONS
TO SPECIAL MASTER'S REPORT REGARDING SUBPOENA

1   volume of discovery in the Korean litigation, and that Sharp failed to demonstrate otherwise.

2   Third, the Special Master found that Sharp's subpoena was an attempt to circumvent

3   restrictions Korean courts place on the discovery process.  Fourth, the Special Master found

4   that Sharp's subpoena would impose unfair and substantial burdens on Saveri, Defendants,

5   and all participants in the Korean litigation.  Finally, the Special Master also found that

6   Sharp's subpoena would risk public disclosure of the parties' confidential documents and

7   information, and that this was an additional factor supporting his decision.

8           Sharp seeks to revisit each of these findings, but its Objections merely repeat the

9   same arguments the Special Master already considered and rejected.  Even if Sharp were

10  able to demonstrate a clear error in one of the factual findings underpinning the Special

11  Master's analysis (which it cannot), that would not suffice as a basis to reverse the Special

12  Master's recommendation; Sharp would need to show that, considered as a whole, the

13  Special Master's analysis was an abuse of discretion.  Sharp's only attempt to show such a

14  pervasive error is a conclusory and cryptic introductory statement, that the Special Master

15  erred by believing that Sharp pursued a cause of action in Korea "instead of and in

16  preference to being a plaintiff in the MDL Litigation here."  Obj. at 2.  Sharp claims that this

17  supposed error "pervades the analysis of the various discretionary factors," but never

18  demonstrates or even attempts to explain how.  Id.  Indeed, outside of the introduction, this

19  supposed "central" error receives all of two sentences in the remainder of Sharp's brief,

20  neither of which cites to any record facts.  In reality, the Special Master's observations about

21  Sharp's choice of venue stand for the simple and correct proposition that a plaintiff who

22  chooses to sue in a foreign forum should litigate by the rules of that forum.  Sharp's naked

23  attempt to circumvent Korean discovery procedures is inconsistent with the law and policy

24  of Section 1782, and was properly denied.

## II.

## STATEMENT OF FACTS

27          Sharp served the subpoena at issue on Saveri via overnight mail on August 8, 2012.

28  Declaration of Tyler M. Cunningham in support of Defendants' Motion to Quash (Dkt.

1    No. 1327-1), Ex. A.  The subpoena seeks production of "Any and all Discovery Material

2    obtained during or as a result of discovery in the Direct Purchaser Action relating to cathode

3    ray tubes, including but not limited to color picture tubes."  *Id.*  It thus encompasses the

4    entire discovery record in this action.[2]  In March 2012, Saveri estimated that the volume of

5    requested discovery exceeded five million pages, a number that has undoubtedly since

6    increased.  In addition, Sharp's subpoena seeks transcripts of all defendant depositions,

7    which numbered 18 at last count, and all written discovery, including responses to

8    interrogatories and requests for admission.

9         Sharp seeks to export this voluminous record to Korea to prosecute a lawsuit it filed

10   there.  Sharp filed its Korean lawsuit in November 2010.  Declaration of Deok-Gu Lee in

11   Support of Defendants' Motion to Quash ("Lee Decl.") (Dkt. No. 1372-2), Ex. A ("Korean

12   Complaint").  The complaint names as defendants several Samsung SDI entities that are also

13   before this Court, and several other defendants that are not parties to this U.S. action,

14   including several LG Philips entities that are not parties here.[3]  Sharp's Korean complaint

15   alleges a conspiracy to fix the price of CRTs, which allegedly injured Sharp through its

16   purchase of CRTs made for color televisions (also known as "CPTs").

17        Related proceedings have also taken place in Korea.  The Korea Fair Trade

18   Commission ("KFTC") investigated alleged CRT cartel activity and collected documents

19   from CRT makers.  Lee Decl. ¶ 7.  In March 2011, the KFTC issued a 171-page report,

20   containing more than 280 document citations, detailing the results of its investigation.  *See*

21   Declaration of Hae Eun Choi (Dkt. No. 1354-1), at ¶¶ 2-3 and Ex. A.  The KFTC fined five

22   CRT makers for anticompetitive conduct in pricing CRTs for computer monitors but found

23

24   ─────────────────────

25   [2] Sharp has purportedly offered to exclude from the scope of the subpoena documents
     produced by plaintiffs or third parties, though no agreement to this effect has been reached.

26   [3] The "Korean Litigation Defendants" are Samsung SDI Co., Ltd.; Samsung SDI
     (Malaysia) Sdn. Bhd.; Samsung SDI (HK) Ltd.; Shenzhen Samsung SDI Co., Ltd.; Tianjin
27   Samsung SDI Co., Ltd.; LG Philips Display Co., Ltd.; PT. LP Displays Indonesia; LG.
     Philips Displays (Singapore) Pte. Ltd.; LG. Philips (Shuguang) Displays; and Meridian
28   Solar & Display Co.

                              -3-

1   no evidence that Korean antitrust laws were violated in connection with pricing of CPTs.

2   Lee Decl. ¶ 7.

3          In its Korean Complaint, Sharp said that it would substantiate its claims through

4   discovery to the KFTC.  Korean Complaint at 15 (Sharp "intend[s] to later demonstrate the

5   Defendants' illegal collusive conduct in more detail by obtaining documents evidencing

6   such conduct from the KFTC through document request procedures.").  And Korean

7   discovery rules under the Civil Procedure Act ("CPA") clearly allow for document

8   discovery.  Parties may apply to the court for an order compelling either parties or non-

9   parties to produce documents.  Lee Decl. ¶ 11.  Parties typically provide some detail about

10  the documents they seek in their application.  *Id.* ¶ 12.  But the Korean court may, in its

11  discretion, also order a party holding documents to submit a written statement providing

12  some of these details.  *Id.* ¶ 12 and Ex. C CPA Art. 346.  Parties thus often have access to

13  document discovery even if they lack precise information about the documents they seek.

14         There is no question that Sharp has not pursued discovery from the KFTC.  Lee Decl.

15  ¶ 8.  Indeed, there is no question that Sharp has not applied to obtain documents through the

16  Korean court or through Korean discovery procedures ***at all***.  *Id.*  Instead, Sharp applied to

17  *this Court* in the first instance.

18         On June 27, 2012, Sharp filed its *Ex Parte* Application For Order Pursuant to 28

19  U.S.C. § 1782 to Obtain Discovery For Use in a Foreign Proceeding  (Case No. 3:12-mc-

20  80151-RS, Dkt. No. 1).  The Special Master and the Court approved the *ex parte* application

21  on July 23, 2012 and August 7, 2012, respectively.  (Dkt. Nos. 1269, 1299).  After Sharp

22  served the subpoena, Saveri objected and Sharp moved to compel compliance.  (Dkt. Nos.

23  1340-2, 1340).  Defendants moved to quash the subpoena.  (Dkt. No. 1327).  Both motions

24  were fully briefed, and the Special Master heard oral argument on September 20, 2012.  *See*

25  Hearing Transcript ("Hr'g Tr."), attached as Exhibit A to the Declaration of Michael W.

26  Scarborough in Support of Defendants' and Saveri's Joint Motion to Adopt Special Master's

27  Report and Recommendation Regarding Subpoena (Dkt. No. 1426-1).  On October 22, 2012,

28  the Special Master issued his Report and Recommendation, concluding that Defendants'

1  motion to quash should be granted, and Sharp's motion to compel denied.  ("Report") (Dkt.

2  No. 1415).  The Special Master concluded that all four *Intel* factors weighed against

3  enforcement of Sharp's subpoena, and that Defendants' confidentiality concerns were an

4  additional factor weighing against Sharp's requested discovery.

5                                          **III.**

6                                      **ARGUMENT**

7  **A.      The Special Master's Recommendation Is Reviewed for Abuse of Discretion.**

8        Even if an applicant meets all of the statutory threshold requirements under Section

9  1782, the district court retains discretion to approve or deny the discovery.  *Intel*, 542 U.S. at

10  255.  Sharp has repeatedly acknowledged that Defendants' Motion to Quash is subject to the

11  Court's complete discretion.  *See* Sharp Opposition to Motion to Quash (Dkt. No. 1338), at

12  4; Hr'g Tr., p. 31:3-7, 42:11-15, 65:1-7.  An exercise of discretion pursuant to Section 1782

13  is reviewed for abuse of discretion.  *See Advanced Micro Devices, Inc. v. Intel Corp.*, 292

14  F.3d 664, 666 (9th Cir. 2002) ("the district court's application of Section 1782 to the facts is

15  reviewed for an abuse of discretion").  This standard of review comports with the relevant

16  order in this litigation, which dictates that procedural matters are reviewed only for abuse of

17  discretion.  *See* Order Appointing Special Master, ¶ 18 (Dkt. 302).  The Special Master's

18  findings of fact in support his analysis are reviewed for clear error, and any conclusions of

19  law are reviewed de novo.

20  **B.      The Special Master Did Not Abuse His Discretion In Finding That All Four**

21           **Intel Factors Weigh Against Enforcement of the Subpoena.**

22           1.      The Special Master Correctly Determined That Sharp's Subpoena Really

23                   Seeks Information from the Korean Litigation Defendants.

24        The first *Intel* factor asks whether the person from whom discovery is sought is a

25  participant in the foreign proceeding.  If so, "the need for § 1782(a) aid generally is not as

26  apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter

27  arising abroad."  *Intel*, 542 U.S. at 264.  This is because the foreign court has jurisdiction

28  over the parties before it, and can order the parties to produce evidence.  *Id.*  The Special

1    Master correctly determined that this factor weighs against Sharp's requested discovery,

2    because Sharp seeks documents and information regarding the Korean Litigation

3    Defendants, who are subject to the Korean Court's jurisdiction.  Report at 3.

4          Sharp argues that its subpoena was directed at Saveri, not defendants.  Obj. at 9.  This

5    issue was fully briefed and argued before the Special Master, who correctly rejected Sharp's

6    argument.  As described in those briefs, courts applying the *Intel* factors look beyond the

7    nominal target of the subpoenas to ask whether the requested evidence is within the reach of

8    the foreign tribunal.  *See* Motion to Quash, p. 5.  The Special Master correctly determined

9    that Sharp's subpoena really sought "information from the defendants", including defendants

10   to the Korean Litigation "subject to Korea's discovery processes."  Report at 3; *see also*

11   Hr'g Tr. at 8:3-6 ("obviously what Sharp wants is not the plaintiff's documents.  What Sharp

12   wants is the documents of the defendants that they're suing in the Korean jurisdiction.").

13   Sharp has failed to identify any error in that factual determination, nor has Sharp identified

14   additional facts not already considered by the Special Master.

15         Sharp also argues that it "cannot obtain discovery in Korea from the Korean

16   Defendants because of restrictions and requirements of Korean discovery procedures."  Obj.

17   at 9.  Defendants have shown this to be an exaggeration.[4]  Sharp has a number of potential

18   avenues by which it could conduct discovery in Korea, but it has failed to avail itself of any

19   of them.  For example, Sharp could invoke the Korean CPA provision that allows the

20   Korean court to order a party holding documents to furnish certain required details.  *See* Lee

21   Decl. ¶ 12.  Defendants have suggested several other options.  *See* Reply Brief (Dkt.

22   No. 1354), at 1-2.  The Special Master considered this evidence and resolved the issue in

23   Defendants' favor.  Report at 4 ("Some discovery methods are provided by Korean courts.").

24   Here again, Sharp does not explain why the Special Master's finding is wrong, or identify

25   any fact that has not already been extensively briefed and argued.

26   _____

27   [4] Sharp's statement that it is "undisputed … that Sharp could not obtain such discovery in
     [the] Korean court" is misleading.  Obj. at 2.  Defendants have consistently contested
     Sharp's claims that it can obtain no documents through Korean discovery procedures.

28   However, those rules do not allow for the broad, voluminous discovery Sharp seeks here.

2.   The Special Master Correctly Determined That the Korean Court Would Not Welcome Millions of Pages of Additional Documents.

The second *Intel* factor examines "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *Intel*, 542 U.S. at 264. Here, the Special Master correctly made the factual determinations that: (1) Sharp has not shown that the Korean Court would be receptive to Sharp's requested discovery, and (2) Korean policy indicates that the Korean Court would not be receptive to that discovery. Report at 4.

Sharp argues that these factual findings were erroneous, but cites only to the same record that the Special Master already considered and found wanting. Obj. at 12. Sharp reiterates a colloquy it purports to have had with the Korean Court, in which Sharp informed the court of its plan to obtain U.S. discovery (but not of the anticipated volume of documents), and states that the court at least tacitly "acknowledged" Sharp's statement, and later modified its case schedule. The Special Master already determined that this evidence fails to make the required showing – that the Korean Court would be receptive to the proposed discovery – because Sharp offered no affirmative statement by the Korean Court to that effect. Report at 4 (Hon. Legge: "Sharp's Korean counsel speculates that [the Korean court] would be receptive, but that court's actions do not support that conclusion."). The Korean Court's modification of its case schedule says nothing about its receptivity to foreign discovery. *See* Hr'g Tr. at 34:9-12 (Hon. Legge: "[T]hat's not a clear statement of what the Court said that it would or would not consider …. It's just ['] give me more time to do what you want to do and then we'll see what it is.[']").

Sharp also argues that both the Court and defendants failed to address its citations to the discovery rules in the Korean CPA. Obj. at 12. This is patently untrue. Defendants offered a sworn declaration explaining how Sharp misreads those statutes. Lee Decl. ¶¶ 15-18. Sharp is also wrong when it asserts that Defendants have put forth no evidence on this receptivity factor. Obj. at 13. In fact, Mr. Lee specifically explained how other sections of the CPA indicate that Korean courts would be hostile to the proposed discovery. *See* Motion

1    to Quash at pp. 5-7.  Among other things, Sharp's proposed discovery would violate Korean

2    courts' policy of procedural fairness and equity, as it would allow Sharp to benefit from

3    permissive U.S. discovery rules while forcing the defendants to abide by stricter Korean

4    rules.  Lee Decl. ¶ 10.  The Special Master agreed, finding *as a factual matter* that the

5    Korean court would not be receptive to Sharp's proposed, extremely broad discovery.

6    Report at 4-5.

7         Sharp also wrongly ascribes two purported legal errors to the Special Master.  Sharp

8    first argues that the Special Master erred by "essentially impos[ing] a foreign-discoverability

9    rule," which Sharp claims is contrary to the *Intel* decision.  Obj. at 10.  This argument is

10   based on a flawed understanding of *Intel*.  Before *Intel*, circuit courts were split:  some held

11   that courts may never authorize discovery pursuant to Section 1782 if the foreign tribunal

12   would not also authorize such discovery, while others were *contra*.  *Intel*, 542 U.S. at 253

13   n.7.  The *Intel* Court resolved the split, holding that Section 1782 does not *categorically* bar

14   a district court from ordering discovery of documents that would not be discoverable in the

15   foreign tribunal.  *Id.* at 259-262 (rejecting a "categorical[]," "blanket," "generally

16   applicable" or "cross-the-board" foreign discoverability rule).  The Court notes, however,

17   that foreign discoverability can and should be considered as part of the court's *discretionary*

18   analysis.  *Id.* at 261 ("comity and parity concerns may be important as touchstones for a

19   district court's exercise of discretion in particular cases"); *id.* at 264 ("the grounds Intel

20   urged for categorical limitations on § 1782(a)'s scope may be relevant in determining

21   whether a discovery order should be granted in a particular case.").  Sharp's argument

22   confuses the statute's requirements with the factors that inform the court's exercise of

23   discretion.  Special Master Legge did not run afoul of *Intel* by considering Korea's discovery

24   rules; to the contrary, he abided by the Court's express direction to consider "foreign proof-

25   gathering restrictions" as part of his discretionary analysis.  *Id.* at 265.

26        Sharp also argues that the Special Master erred by assigning to Sharp the burden of

27   showing that the Korean Court would be receptive to U.S. discovery.  Obj. at 10-12.  Sharp's

28   argument is both wrong and immaterial.  First, the Special Master's factual findings obviate

any need to argue about burden.  The Special Master found that defendants *have* produced evidence that "reliabl[y] indicat[es]" the Korean Court would not welcome Sharp's proposed discovery, and that Sharp *has not* produced evidence to show the contrary.  Report at 4.  Thus, even if the burden were reversed, Defendants have satisfied it.  Second, Sharp is wrong as a legal matter.  Courts vary in their assignment of the burden on this "receptivity" factor[5], but the Special Master was absolutely correct to observe that courts within the Ninth Circuit have required the requesting party to show receptivity.  Report at 4.  In both cases cited by the Special Master, the district court found that an applicant's failure to offer any evidence on the receptivity factor weighed against discovery.  *In re: Application of Peter Marano*, 2009 U.S. Dist. LEXIS 20060, at *9-10 (N.D. Cal., Feb. 25, 2009); *In re: Application of Digitechnic*, 2007 U.S. Dist. LEXIS 33708, at *11-12 (W.D. Wash. May 8, 2007).  Defendants also cited a third case in which the court expressly held that "the burden of showing [that] assistance is warranted remains on" the applicant.  *In re Application of Microsoft Corp.*, No. C 06-80038 JF (PVT), 2006 WL 825250, at *2 n.3 (N.D. Cal. March 29, 2006).  In short, the Special Master's statement about the "receptivity" burden was correct, but his factual determinations also made clear that burden was not a determining factor on this issue.

3. The Special Master Correctly Determined That Sharp's Subpoena Is An Attempt to Circumvent Korean Discovery Limitations.

The third *Intel* factor asks whether the Section 1782 request conceals an attempt to circumvent foreign proof-gathering restrictions.  *Intel*, 542 U.S. at 265.  On this point, the Special Master noted that Sharp chose to file its lawsuit in Korea, that discovery limitations are stricter in Korea than the U.S., and that Sharp failed to attempt *any* discovery under those Korean rules.  Report at 4-5.  Indeed, Sharp has admitted that its perceived limitations on

---

[5] Other courts within the Ninth Circuit have held that, absent evidence from either side, the "receptivity" factor remains neutral.  *See, e.g., In re Application of Motorola Mobility, LLC*, No. C 12-80243 EJD, 2012 U.S. Dist. LEXIS 149679, at *6 (N.D. Cal. Oct. 17, 2012).

discovery procedures in Korea motivated its application.  *See, e.g.*, Hr'g Tr. at 26:19-21 ("We would not be here … if Korean counsel thought that Sharp could get documents to prove its case through the Korean court.").  The Special Master concluded that, as a factual matter, this evidence shows an attempt to circumvent Korean discovery limitations.

Many other courts have examined similar evidence and reached the same conclusion. These cases routinely hold that failure to even attempt discovery in the home jurisdiction suggests an attempt to circumvent those rules.  *See, e.g., In re Application of Caratube International Oil Co., LLP*, 730 F.Supp.2d 101, 107-108 (D.D.C. 2010) (applicant "side-stepped" discovery limitations by applying via Section 1782 in the first instance); *In re Application of Babcock Borsig AG*, 583 F.Supp.2d 233, 241 (D. Mass. 2008) ("the district court may, in its discretion, properly consider a party's failure first to attempt discovery measures in the foreign jurisdiction."); *In re Application of Digitechnic*, No. C07-414-JCC, 2007 WL 1367697, at *5 (W.D. Wash. May 8, 2007) (failure to attempt foreign discovery due to perceived futility indicates applicant was circumventing foreign discovery rules).

Sharp responds by arguing that the Special Master erred by imposing a "foreign-discoverability rule."  Obj. at 13.  This is a reprise of Sharp's mistaken reading of the *Intel* case.  *See* p. 8, *supra*.  The Special Master imposed no such rule; he correctly followed the Supreme Court's direction to exercise his discretion, based on the relevant factors.  In light of those factors – potential document sources subject to the Korean court's jurisdiction, Korean rules providing for limited document discovery, Sharp's failure to attempt discovery under those rules, the unlimited scope of Sharp's U.S. request, the sheer volume of the requested discovery – the Special Master concluded that Sharp's application is an attempted end-run.

Many of these same factors were not present in *Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591 (7th Cir. 2011), making that opinion inapposite.  For example, the applicant in *Heraeus* sought a specific, discrete set of documents.  In contrast, Sharp indiscriminately seeks to import wholesale the entire defendant discovery record resulting from plaintiffs' extensive U.S. discovery campaign.  The applicant in *Heraeus* demonstrated that it could not obtain

-10-

those documents via foreign discovery rules.  *Id.* at 597.  In contrast, Sharp has made no such showing.  The *Heraeus* court also warned of potential dangers that would warrant denial of an application, which were not present in that case but are certainly present here.  One such danger is the potential for the applicant to "swamp[] a foreign court with fruits of American discovery."  *Heraeus*, 633 F.3d at 594.  This danger is particularly acute here, where the Korean court must consider the documentary evidence Sharp submits.  Lee Decl. ¶ 14.  The *Heraeus* court also warned against allowing one party access to "broad U.S. discovery procedures" while its opponent is "confined to the narrow [foreign] procedures."  *Heraeus*, 633 F.3d at 595.  That is exactly the position that the Korean litigation parties would be in if Sharp's request were granted here.

Confusingly, Sharp also argues that the Special Master somehow erred in stating that Sharp chose to file its lawsuit in Korea, and that this error somehow tainted his analysis.  Obj. at 15.  The Special Master simply observed that Sharp chose to sue in Korea, and should therefore prosecute its suit according to Korean discovery rules.  The Special Master has not rendered Section 1782 "a nullity."  Obj. at 13.  He appropriately applied the discretionary *Intel* factors to block Sharp's attempt to opt out of foreign discovery rules in favor of broader, U.S. discovery rules.  This is precisely the "circumvention" that the U.S. Supreme Court sought to prevent.

> 4. <u>The Special Master Correctly Determined that Sharp's Subpoena Poses an Undue Burden on Saveri, Defendants and All Participants in the Korean Litigation</u>.

The fourth *Intel* factor asks whether the Section 1782 application is overly intrusive or burdensome.  *Intel*, 542 U.S. at 265.  There is no serious argument that Sharp's sweeping request for millions of pages of documents, plus deposition transcripts and any and all discovery materials produced by defendants, would unduly burden all involved.  The Special Master correctly concluded as much, finding first that Sharp's subpoena would unfairly burden Saveri, who would be forced to compile millions of pages of documents in electronic form.  Report at 5 ("the burden of gathering together and compiling the information in

electronic form is still very substantial.").  The Special Master found that Saveri would be further burdened because enforcement of Sharp's subpoena might encourage other foreign litigants to seek similar discovery.  *Id.*  The Special Master found that the Korean Litigation Defendants would face an unfair burden because they would be placed on unequal footing in that litigation: Sharp would enjoy access to millions of pages of Defendants' documents, while the Korean Litigation Defendants would not have similar access to Sharp's documents.  *Id.* ("defendants in Korea would have much less access to discovery for their defense, compared with what Sharp would get through this § 1782 proceeding, a very unfair balance in that court.").  If Sharp won its request to access deposition transcripts, the Korean Litigation Defendants would be further burdened because they had no opportunity to defend themselves in the depositions, and no ability to take their own depositions (because Korean rules do not provide for depositions).  *Id.*  The Special Master further found that all participants in the Korean litigation would be burdened by the influx of millions of new documents into their case.  *Id.* at 5-6.  The Special Master also found that defendants in the U.S. litigation would be unfairly burdened by risking the potential public exposure of their confidential documents.  *Id.* at 6 ("there is no way to anticipate all of the ways in which their confidential documents … could become exposed and not protected in Korea ….").

Each of these is a finding of fact, and Sharp has failed to show that any of them are clearly erroneous.  Sharp argues that "there is no factual basis in the record" supporting the Special Master's conclusion that the subpoena would burden Saveri.  Obj. at 17.  But Saveri offered a sworn declaration specifically outlining that burden.  *See* Declaration of R. Alexander Saveri (Dkt. No. 1353-1).  Sharp argues that the Korean Litigation Defendants will not be burdened because Sharp will only introduce to the court a "small subset" of relevant documents.  Obj. at 19.  However, the Korean court will be obligated to review documents that Sharp submits, Lee Decl. ¶ 14, and a "small subset" of documents can still pose a significant burden, particularly when the set itself numbers in the millions.  The Special Master did not err in finding that the participants in the Korean litigation face the possibility of a large influx of documents.

Sharp also argues that the Special Master erred by stating that he was "unaware of any case that supports the use of § 1782 for the wholesale taking of all of the discovery in a large antitrust case."  Report at 5.  But the cases Sharp cites are not to the contrary:  they are all cases in which the court either denied[6] or did not rule on[7] a Section 1782 application, or granted the applicant access to a discrete subset of documents that were also produced in a U.S. litigation,[8] but not "all of the discovery in a large antitrust case," as Sharp proposes to do here.

C.    **The Special Master Did Not Abuse His Discretion In Finding That Additional Factors Weighed Against Enforcement of the Subpoena.**

Sharp argues that the Special Master erred in considering "policy considerations that fall outside the scope of the statute or the *Intel* factors."  Obj. at 18.  This argument is contradicted by Sharp's own statements that the *Intel* factors are "non-exhaustive."  *Id.* at 8; Hr'g Tr. at 65:2 (Mr. Searby: *Intel* offers a "non-exhaustive" list of discretionary factors); *see also* Report at 3 (*Intel* factors are "not exclusive").  In addition, as discussed below, courts often consider many of these same factors in conjunction with, or as part of, the *Intel* analysis.

For instance, the Special Master found that Sharp's proposed discovery would violate basic rules of procedural fairness and equity between the parties, by granting Sharp access to

---

[6] *In re Application of Schmitz*, 259 F. Supp.2d 294, 300 (S.D.N.Y. 2003) ("the petition for discovery pursuant to 28 U.S.C. § 1782 should be denied").

[7] *In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*, 255 F.R.D. 308, 325 (D. Conn. 2009) (granting in part motions to intervene and modify protective order, no mention of Section 1782); *In re Linerboard Antitrust Litig.*, 333 F.Supp.2d 333, 342 (E.D. Pa. 2004) ("McCormick has not moved pursuant to Section 1782"); *In re Baycol Prods. Litig.*, MDL No. 1431 (MJD/JGL), 2003 WL 22331293, at *6-7 (D. Minn. May 6, 2003) (denying Section 1782 application but granting in part motion to intervene); *see also Oracle Corp. v. SAP AG*, C-07-01658 PJH, 2010 WL 545842, at *2 (N.D. Cal. Feb. 12, 2010) ("The Court does not agree with Defendants that § 1782 governs this motion.").

[8] *In re Application of Iwasaki Elec. Co., Ltd.*, No. M19-82, 2005 WL 1251787, at *1 (S.D.N.Y. May 26, 2005), *aff'd sub nom U.S. Philips Corp. v. Iwasaki Elec. Co., Ltd.*, 2005 WL 1874992 (2d Cir. 2005); *In re Baycol Prods. Litig.*, 2003 WL 22331293, at *7 (allowing access only to non-confidential documents); *In re EPDM*, 255 F.R.D. at 325 (D. Conn. 2009) (denying Canadian litigant access to "material it is not entitled to or is prohibited from acquiring under Canadian rules of civil procedure.").

millions of documents and depositions, while denying Korean Litigation Defendants similar access.  Report at 5.  Sharp downplays this concern as "miscellaneous" and "ancillary" (Obj. at 3), but it is of paramount importance to the Korean Litigation Defendants.  It was also apparently an important issue for the Special Master, who addressed fairness concerns at the outset of the hearing on Defendants' motion.  Hr'g Tr. at 7:9-10 ("there's an element of an unfairness about this subpoena and its intended uses").  Sharp's proposal would allow it to opt out of Korean discovery restrictions and enjoy more liberal U.S. procedures, while forcing defendants to – literally – play by a different set of (more restrictive) rules.  Sharp would also have access to depositions, a powerful discovery tool wholly unavailable to the Korean Litigation defendants.  This concern is properly considered under the *Intel* rubric as part of the "receptiveness" factor.  As Defendants demonstrated, the Korean Court would not be receptive to Sharp's proposed discovery if it would unfairly skew the playing field in one party's favor.  *See* Mot. To Quash at 7; Reply Brief (Dkt. No. 1354) at 3.  Courts frequently analyze similar fairness concerns as part of the *Intel* analysis; the *Intel* Court itself stated that "parity between litigants" may be an "important" part of a district court's discretionary analysis.  542 U.S. at 261.  Sharp suggests that the Korean court can ensure fairness, despite a massive discrepancy in the parties' access to discovery,  (Obj. at 18), but offers no suggestion how that could possibly be achieved.  Defendants have already demonstrated that the Korean court has little choice but to examine the evidence submitted by the parties.  Lee Decl. ¶ 14.  The Special Master was correct to consider these fairness concerns before Sharp gained an unfair advantage.

Similarly, the Special Master was correct to consider Defendants' confidentiality concerns, which Defendants have expressed throughout the briefing.  Korean courts lack the statutory authority to enter the sort of protective order common to U.S. litigation.  Lee Decl. ¶ 23.  Sharp's proposal to use these documents in Korean litigation would necessarily entail exposing these documents to third parties, including the court, witnesses, parties to the Korean litigation, and Sharp itself.  Sharp has argued that it will apply to seal any documents filed or used in open court, but there is no guarantee such an application would be granted.  Further,

1   once the documents are in Sharp's possession, Defendants have no way of monitoring how

2   they are used in Korea.  *See* Report at 6 (Defendants will "have no opportunity to object" to

3   use of documents in Korea).  Sharp has consistently downplayed this concern, assuring

4   Defendants that it has a plan to ensure Defendant's confidentiality, but it has provided no

5   details.  Sharp is also wrong to suggest that Defendants must "establish why the protection

6   continues to be necessary."  Obj. at 20.  Sharp's own case makes clear that Sharp, as the party

7   seeking to modify the Protective Order, would need to show good cause for doing so.  *See*

8   *CBS Interactive, Inc. v. Etilize, Inc.*, 257 F.R.D. 195, 205 (N.D. Cal. 2009) ("CBSI bears the

9   burden to make a showing of good cause to modify the protective order.").

10       Defendants' confidentiality concerns are genuine, not "ancillary."  Obj. at 3.  The

11   Special Master was correct to consider them as part of the Section 1782 analysis.  *See Four*

12   *Pillars Enterprises Co., Ltd. v. Avery Dennison Corp.*, 308 F.3d 1075, 1078-79 (9th Cir.

13   2002) (magistrate judge was within his discretion in denying "much of the relief" sought by

14   Section 1782 applicant on the grounds that a discovery order "would improperly frustrate"

15   the protective order).

### IV.

### CONCLUSION

18       Sharp has failed to identify a single genuine error in the Special Master's analysis,

19   much less the sort of pervasive abuse of discretion that would merit reversal.  Sharp's

20   attempt to evade Korean discovery rules runs contrary to the policy of Section 1782, and the

21   Special Master was correct to reject it.  Defendants respectfully request that the Court deny

22   Sharp's objections and issue an order consistent with the Special Master's Report and

23   Recommendation.

24

25

26

27

28

1  Dated:  November 13, 2012

Respectfully Submitted,

2

By:   */s/ Michael W. Scarborough*
GARY L. HALLING (66087)
3  Email: ghalling@sheppardmullin.com
JAMES L. McGINNIS (95788)
4  Email: jmcginnis@sheppardmullin.com
MICHAEL W. SCARBOROUGH (203524)
5  Email: mscarborough@sheppardmullin.com
**SHEPPARD, MULLIN, RICHTER &**
6  **HAMPTON LLP**
Four Embarcadero Center, 17th Floor
7  San Francisco, California 94111-4109
Telephone: (415)-434-9100
8  Facsimile: (415)-434-3947

9  *Attorneys for Defendants Samsung SDI*
*America, Inc., Samsung SDI Co., Ltd., Samsung*
10  *SDI (Malaysia) Sdn. Bhd., Samsung SDI*
*Mexico S.A. de C.V., Samsung SDI Brasil Ltda.,*
11  *Shenzhen Samsung SDI Co. Ltd. and Tianjin*
*Samsung SDI Co., Ltd.*
12

13

By:   */s/ Jeffrey L. Kessler*
14  JEFFREY L. KESSLER (pro hac vice)
E-mail: JKessler@winston.com
15  A. PAUL VICTOR (pro hac vice)
E-mail: PVictor@winston.com
16  EVA COLE (pro hac vice)
E-mail: EWCole@winston.com
17  MOLLY M. DONOVAN
E-mail: MMDonovan@winston.com
18  **WINSTON & STRAWN LLP**
200 Park Avenue
19  New York, NY 10166
Telephone: (212) 294-6700
20

STEVEN A. REISS (pro hac vice)
21  E-mail: steven.reiss@weil.com
DAVID L. YOHAI (pro hac vice)
22  E-mail: david.yohai@weil.com
ADAM C. HEMLOCK (pro hac vice)
23  E-mail: adam.hemlock@weil.com
**WEIL, GOTSHAL & MANGES LLP**
24  767 Fifth Avenue
New York, New York 10153-0119
25  Telephone: (212) 310-8000
Facsimile: (212) 310-8007
26

27  *Attorneys for Defendants Panasonic Corporation*
*(f/k/a Matsushita Electric Industrial Co., Ltd.),*
*Panasonic Corporation of North America, MT*
28  *Picture Display Co., Ltd.*

-16-

1

2 By: _/s/ Jon V. Swenson_____
   Jon V. Swenson (SBN 233054)

3   BAKER BOTTS LLP
   1001 Page Mill Road

4   Building One, Suite 200
   Palo Alto, CA 94304-1007

5   Telephone: (650) 739-7500
   Facsimile: (650) 739-7699

6   Email: jon.swenson@bakerbotts.com

7   John M. Taladay (*pro hac vice*)
   **BAKER BOTTS LLP**

8   1299 Pennsylvania Ave., N.W.
   Washington, DC 20004-2400

9   Telephone: (202) 639-7700
   Facsimile: (202) 639-7890

10   Email: john.taladay@bakerbotts.com
   Email: david.emanuelson@bakerbotts.com

11   *Attorneys for Defendants Koninklijke Philips*
   *Electronics N.V. and Philips Electronics North*

12   *America Corporation*

13

14 By: _/s/ Kent M. Roger_____
   KENT M. ROGER (95987)

15   E-mail: kroger@morganlewis.com
   MICHELLE PARK CHIU (248421)

16   E-mail: mchiu@morganlewis.com
   **MORGAN, LEWIS & BOCKIUS LLP**

17   One Market, Spear Street Tower
   San Francisco, California 94105-1126

18   Telephone: (415) 442-1000
   Facsimile: (415) 442-1001

19

20   J. CLAYTON EVERETT, JR. (*pro hac vice*)
   E-mail: jeverett@morganlewis.com

21   SCOTT A. STEMPEL (*pro hac vice*)
   E-mail: sstempel@morganlewis.com

22   **MORGAN, LEWIS & BOCKIUS LLP**
   111 Pennsylvania Avenue, NW

23   Washington, DC 20004
   Telephone: (202) 739-3000

24   Facsimile: (202) 739-3001

25   *Attorneys for Defendants Hitachi, Ltd., Hitachi*
   *Displays, Ltd., Hitachi Asia, Ltd., Hitachi*

26   *America, Ltd., and Hitachi Electronic Devices*
   *(USA), Inc.*

27

28

-17-

DEFENDANTS' RESPONSE TO SHARP CORP'S OBJECTIONS
TO SPECIAL MASTER'S REPORT REGARDING SUBPOENA

1

2      By:     /s/ Hojoon Hwang
       HOJOON HWANG (SBN 184950)
3      hojoon.hwang@mto.com
       **MUNGER, TOLLES & OLSON LLP**
4      560 Mission Street
       San Francisco, California  94105
5      Telephone:  (415) 512-4009
       Facsimile:  (415) 644-6909

6      *Attorneys for Defendants LG Electronics, Inc.;*
       *LG Electronics USA, Inc.; and LG Electronics*
7      *Taiwan Taipei Co., Ltd.*

8

9      By:      /s/ Ian Simmons
       IAN SIMMONS (pro hac vice)
10     E-mail: isimmons@omm.com
       BEN BRADSHAW (189925)
11     E-mail: bbradshaw@omm.com
       **O'MELVENY & MYERS LLP**
12     1625 Eye Street, NW
       Washington, DC 20006
13     Telephone: (202) 383-5300
       Facsimile: (202) 383-5414
14
       *Attorneys for Defendants Samsung Electronics*
15     *Co., Ltd. and Samsung Electronics America, Inc.*

16

17     By:      /s/ Lucius B. Lau
       CHRISTOPHER M. CURRAN (*pro hac vice*)
18     E-mail: ccurran@whitecase.com
       GEORGE L. PAUL (*pro hac vice*)
19     E-mail: gpaul@whitecase.com
       LUCIUS B. LAU (*pro hac vice*)
20     E-mail: alau@whitecase.com
       **WHITE & CASE LLP**
21     701 Thirteenth Street, N.W.
       Washington, DC  20005
22     Telephone: (202) 626-3600
       Facsimile: (202) 639-9355
23
       *Attorneys for Defendants Toshiba Corporation,*
24     *Toshiba America, Inc., Toshiba America*
       *Information Systems, Inc., Toshiba America*
25     *Consumer Products, L.L.C., and Toshiba*
       *America Electronic Components, Inc.*

26

27

28

-18-

DEFENDANTS' RESPONSE TO SHARP CORP'S OBJECTIONS
                         TO SPECIAL MASTER'S REPORT REGARDING SUBPOENA

1

2

By:     /s/ Terry Calvani
TERRY CALVANI (53260)
E-mail:  terry.calvani@freshfields.com
3            BRUCE C. MCCULLOCH (*pro hac vice*)
E-mail:  bruce.mcculloch@freshfields.com
4            **FRESHFIELDS BRUCKHAUS DERINGER
US LLP**
5            701 Pennsylvania Avenue, N.W., Suite 600
Washington, D.C. 20004
6            Telephone: (202) 777-4500
Facsimile:  (202) 777-4555

7

*Attorneys for Defendant Beijing Matsushita
8            Color CRT Company, Ltd.*

9

10               The filer attests that concurrence in the filing of this document has been

11   obtained from each of the above signatories.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-19-