1   Kenneth A. Gallo (*pro hac vice*)
    Bruce H. Searby (*pro hac vice*)
2   PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
    2001 K Street, NW
3   Washington, DC 20006-1047
    Telephone: 202.223.7356
4   Facsimile: 202.204.7356
    kgallo@paulweiss.com
5   bsearby@paulweiss.com

6   Colin C. West (SBN 184095)
    BINGHAM MCCUTCHEN LLP
7   Three Embarcadero Center
    San Francisco, CA 94111-4067
8   Telephone: 415.393.2000
    Facsimile: 415.393.2286
9   colin.west@bingham.com

10  *Attorneys for Applicant*
    Sharp Corporation
11

12              UNITED STATES DISTRICT COURT

13            NORTHERN DISTRICT OF CALIFORNIA

14                SAN FRANCISCO DIVISION

15

16  IN RE CATHODE RAY TUBE (CRT)          Master File No.:  3:07-cv-5944-SC
    ANTITRUST LITIGATION                  MDL No. 1917
17

18  This Document Relates to:             **SHARP CORPORATION'S REPLY
                                          TO THE RESPONSE OF
19                                        DEFENDANTS AND THE
                                          OPPOSITION OF SAVERI &
20  IN RE: APPLICATION FOR JUDICIAL       SAVERI, INC. TO SHARP'S
    ASSISTANCE FOR THE ISSUANCE OF        OBJECTIONS TO THE SPECIAL
21  SUBPOENA PURSUANT TO 28 U.S.C. § 1782 MASTER'S REPORT AND
    TO OBTAIN DISCOVERY FOR USE IN A      RECOMMENDATION REGARDING
22  FOREIGN PROCEEDING                    SUBPOENA**

23  Case No. CV-12-80151 MISC (SC)        **ORAL ARGUMENT REQUESTED**

24
                                          Date:       December 21, 2012
25                                        Time:       10:00 am
                                          Judge:      Honorable Samuel Conti
26                                        Courtroom:  One, 17th Floor

27

28

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................1

II.    ARGUMENT .....................................................................................................2

    A.    The Court Should Review the Report's Conclusions *De Novo* ...........2

    B.    Sharp's Subpoena Seeks Documents Unavailable from Parties Before the Korean Court ..............................................................................2

    C.    Defendants' Response Does Not Show That Receptivity and Comity Concerns Weigh Against Section 1782 Relief........................3

    D.    Defendants' Responses Regarding Burden Are Unsupported ............5

    E.    Defendants' and Saveri's Arguments Concerning Confidentiality Ignore Sharp's Representations to the Court ......................................6

III.    CONCLUSION ..................................................................................................8

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re Application of Microsoft Corp.*,
    No. C 06-80038 JF (PVT), 2006 WL 825250 (N.D. Cal. Mar. 29, 2006) ............................... 4

*In re Baycol Products Litigation*,
    MDL No. 1431, 2003 WL 22331293 (D. Minn. May 6, 2003) ................................................ 5

*Four Pillars Enterprises Co., Ltd. v. Avery Dennison Corp.*,
    308 F.3d 1075 (9th Cir. 2002).................................................................................................. 7

*Intel Corp. v. Advanced Micro Devices, Inc.*,
    542 U.S. 241 (2004).................................................................................................. 1, 2, 3, 4

*In re Linerboard Antitrust Litigation*,
    333 F. Supp. 2d 333 (E.D. Pa. 2004) ..................................................................................... 6

STATUTES

28 U.S.C. §1782(a) ............................................................................................................. passim

Sharp Corporation respectfully submits the following memorandum in reply to Defendants' Response to Sharp Corporation's Objections to the Special Master's Report and Recommendation Regarding Subpoena, filed on November 13, 2012 (MDL Dkt. No. 1442) ("Defs. Response"), and the Opposition of Saveri & Saveri, Inc. to Objections of Sharp Corporation to the Special Master's Report and Recommendation Regarding Subpoena, also filed on November 13, 2012 (MDL Dkt. No. 1447) ("Saveri Opp.").

## I.    INTRODUCTION

Defendants and Saveri leave undisturbed the following points Sharp made in its Objections:  (1) Sharp sought the most efficient way possible to obtain the production of relevant documents from the files of numerous parties that it needs to pursue its claims in Korea; (2) Sharp eliminated virtually any burden to Saveri from producing the requested documents by offering to pay the costs; and (3) the Special Master recommended rejecting Sharp's application outright instead of seeking to trim or narrow it.  Defendants seek to evade the *de novo* review that the Special Master's key conclusions should undergo by portraying the report and recommendation as merely the logical result of a series of factual findings.  Their arguments do not withstand scrutiny and, in any event, the report and recommendation fails under any standard, because its determinations on the *Intel* factors are a mix of erroneous conclusions of law, clearly erroneous factual findings, and immaterial considerations.  And Saveri's half-page opposition consists of nothing more than the conclusory assertion that the Special Master's Report and Recommendation ("R&R") correctly resolved the issues.

This reply focuses on points raised in Defendants' response that misconstrue the law, the Special Master's recommendation, and the factual record that was before him.  As indicated in our Objections, this Court should exercise its discretion to permit discovery of documents to

sustain Sharp's claim in Korea for antitrust damages from non-U.S. commerce, consistent with the purposes of Section 1782.

## II.  ARGUMENT

### A.  The Court Should Review the Report's Conclusions *De Novo*

Sharp demonstrated in its Objections that key determinations by the Special Master, such as that Sharp's subpoena was an impermissible attempt to circumvent restrictions on discovery in Korea, depend on legal conclusions that must be reviewed *de novo*.  R&R at 4.  Under any standard of review set forth in the order that the parties to the CRT litigation stipulated to appointing the Special Master, however, the report and recommendation should fail.[1]  What defendants characterize as "findings" are, in many instances, legally immaterial under the analysis articulated by the Supreme Court in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004); this includes speculation about the Korean defendants' future ability to enjoy fair access to discovery, and the "burden" on the participants in the Korean litigation of the requested documents being made available to Sharp and the Korean defendants for use in that case.  Defs. Response at 1-2.  The remaining findings are insufficient as a matter of law to support the conclusion that the *Intel* factors weigh against Sharp.

### B.  Sharp's Subpoena Seeks Documents Unavailable from Parties Before the Korean Court

The Special Master concluded that the first *Intel* factor – whether the target of the discovery was present in the foreign litigation – weighed against Sharp.  R&R at 3.  But it remains uncontested that Saveri is not present in the foreign litigation, that Saveri has averred custody of all the documents Sharp seeks, and that Saveri has them all on a single computer

---

[1] *De novo* review of a special master's factual findings is the default standard under the federal rules absent a party's stipulation, with the district court's approval, to clear error review.  *See* Federal Rule of Civil Procedure 53(f)(3).

server.  It also remains uncontested that many of the parties that have produced documents in the MDL Litigation are *not* before the Korean court and thus are not subject to its jurisdiction.  *See* Opposition to Motion to Quash at 4 (MDL Dkt. No. 1338); Transcript ("Tr.") at 28 (MDL Dkt. No. 1426-1).

Defendants defend the Special Master's conclusion on the first *Intel* factor by focusing on the fact – never disputed – that Sharp seeks information produced from the files of *certain Defendants who are before the Korean court*.  Defs. Response at 6.  Defendants do not dispute, however, that many of them are *not* before the Korean court nor subject to its discovery orders.  Therefore the documents from this latter group concerning the planning and execution of the conspiracy cannot be obtained through discovery requests in the Korean court.  Thus, the first *Intel* factor must weigh in favor of Sharp – even under the theory that Saveri is not the real party to look to in this analysis.

### C.    Defendants' Response Does Not Show That Receptivity and Comity Concerns Weigh Against Section 1782 Relief

Defendants make, in their response, a number of unpersuasive arguments to shore up the unsupported determinations of the Special Master on the two *Intel* factors relating to the receptivity of the Korean court to evidence produced in this process, and whether Sharp's subpoena is an effort to "circumvent" a foreign court's procedures.[2]  Defs. Response at 7-11.

The Special Master did *not* conclude, as Defendants claim in their Response, that the Korean court would *not* be receptive to evidence produced in the MDL Litigation.[3]  The Special

---

[2]  Saveri also asserts, without support, that Sharp's subpoena was an attempt to circumvent limitations on discovery in Korea.  Saveri Opp. at 1.  Sharp's arguments against Defendants apply equally to Saveri.

[3] The Special Master also stated his "opinion" that limited discovery procedures such as those in Korea "should be one of the reliable indicators" of the lack of receptivity of the foreign court, but this plainly did not constitute a finding by the Special Master of a lack of receptivity by the Korean court in this case.  R&R at 4.

Master concluded that there was no statement by the Korean court showing that it would be receptive to the fruits of U.S. judicial assistance.  *See* R&R at 4 ("The Korean court has not made any statement or other indication on the merits as to whether it would or would not welcome such discovery.").  The Special Master improperly assigned the burden of proof to Sharp, instead of to those opposing the discovery.  As demonstrated in Sharp's Objection, the courts that have actually addressed the question of which party bears the burden of proof on the foreign receptivity factor have made clear that the burden is on the party *opposing* the Section 1782 discovery to demonstrate a lack of receptivity in the foreign court.  *See* Objections at 10-12.  None of Defendants' arguments to the contrary refute this point.[4]

Defendants also incorrectly suggest that *Intel*'s general references to comity and parity concerns permit a court to apply a *de facto* foreign-discoverability rule under the guise of applying the discretionary factors regarding "receptivity" or "circumvention."  Defs. Response at 8.  As demonstrated in our opening brief, the "circumvention" factor under *Intel* is meant to redress circumstances different than those present here.  *See* Objections at 13-15.  And the "receptivity" factor requires an opponent of the discovery to show more than what Defendants have shown here.  Defendants have identified no post-*Intel* case where a court denied discovery solely on the grounds that the discovery procedures in the foreign jurisdiction did not permit the discovery because of a need to identify the requested documents with more specificity.

Finally, Defendants wrongly argue that Sharp could have obtained discovery in Korea if it had used a KFTC report as a guide to identifying specific documents to request.  But Defendants do not explain that the report they recommend had to do with color display tubes ("CDTs"), and

---

[4] Defendants' citation to *In re Application of Microsoft Corp.*, No. C 06-80038 JF (PVT), 2006 WL 825250, at *2 n.3 (N.D. Cal. March 29, 2006), is irrelevant.  Defs. Response at 9.  The quotation they rely on is out of context; the court there was merely stating that the party seeking the application bore the burden of demonstrating it was warranted generally.

not the color picture tubes ("CPTs") that are the subject of Sharp's Korean litigation. *Compare* Declaration of Hae Eun Choi ¶ 3, (MISC Dkt. No. 18-1), and Declaration of Keum-Seok Oh dated September 5, 2012, ¶ 4 ("Oh Decl.") (MDL Dkt. No. 1339) *with* Korean Complaint at 12-13, (MISC Dkt. No. 2); *see also* Direct Purchaser Plaintiffs' Amended Complaint at 31 (MDL Dkt. No. 436) (noting that after June of 2000, meetings concerning CDT and CPT products were held separately and at different venues). Defendants have thus failed to contradict Sharp's assertion that it has not been in a position to conduct discovery in Korea and needs U.S. judicial assistance.

### D. Defendants' Responses Regarding Burden Are Unsupported

The Defendants' responses and Saveri's conclusory assertion regarding the supposed burden of complying with Sharp's requested discovery are also unpersuasive. Neither Defendants nor Saveri respond to Sharp's showing that: (1) Sharp nearly eliminated any burden to Saveri from producing the documents by offering to pay the costs of transferring the documents from the single computer server where they all reside; (2) the Special Master rejected Sharp's application outright instead of seeking to trim or narrow it; and (3) Sharp sought to obtain the production of relevant documents needed to pursue its claims in Korea in the most efficient way possible. Sharp subpoenaed a custodian of a collection of documents already produced from various parties in the U.S. litigation about the *same* global conspiracy at issue in Korea – rather than issuing requests to various parties and/or requiring their document production efforts to start from scratch. *See* Objections at 17.

Special Master Legge explained his determination that Sharp's subpoena would impose an undue burden by stating he was "unaware of any case that supports the use of § 1782 for the wholesale taking of all of the discovery in a large antitrust case." R&R at 5. As Sharp demonstrated in its Objections, this is a legal error because there are, in fact, examples of courts

granting "wholesale" access to discovery records for use in a foreign proceeding, *including* in large antitrust cases.  Objections at 15-17.  Defendants' attempt to distinguish the cases is unpersuasive.  For example, Defendants contend that the Section 1782 Application was denied in *In re Baycol Products Litig.*, MDL No. 1431, 2003 WL 22331293 (D. Minn. May 6, 2003).  But they omit that *the court allowed the Canadian plaintiffs to get access to all documents already produced*.  The Canadian plaintiffs there sought to "intervene for the limited purpose of participating in and obtaining discovery that has been produced in this case pursuant to 28 U.S.C. § 1782(a)."  *Id.* at *1.  The court concluded,

> to the extent that the application of the Canadian Plaintiffs seek to *conduct discovery in the U.S.* pursuant to § 1782, the application must be denied.  The Court will thus grant the Canadian Plaintiffs' motion to intervene only to the extent that they seek access to documents already produced.

*Id.* at *6 (emphasis added).  In other words, the Court granted access to the documents already produced in the MDL, as Sharp seeks here.  Defendants' other attempts to distinguish the cases cited in the Objection also fail upon inspection.  *See, e.g.*, *In re Linerboard Antitrust Litig.*, 333 F. Supp. 2d 333, 335, 342 (E.D. Pa. 2004) (granting access to "all discovery in this action including, but not limited to, defendants' documents, interrogatory responses and responses to requests for admission, and deposition transcripts" pursuant to a motion to intervene, and noting that granting the access "promotes" "the goals" of Section 1782).[5]

### E.    Defendants' and Saveri's Arguments Concerning Confidentiality Ignore Sharp's Representations to the Court

In granting Sharp's initial application under Section 1782, this Court ordered that any use of documents from the MDL Litigation by Sharp and other parties in the Korean Litigation would

---

[5]  Saveri's unsupported claim that Sharp's subpoena "threatened to establish a precedent whereby Saveri would become the source for documents for plaintiffs in similar litigations worldwide" is unavailing.  Saveri Opp. at 1.  As shown in the cases discussed *supra* and in Sharp's Objections, U.S. courts have routinely granted foreign antitrust plaintiffs access to U.S. discovery; the "precedent" is thus established.

be conditioned upon acceptance of the terms of the Stipulated Protective Order or entry of a Korean order that would extend substantially similar protection.  *See* MDL Dkt. No. 1299 at 2. Sharp and its outside counsel have agreed to sign onto the Protective Order and executed, as necessary, copies of the Agreement and Acknowledgement to Be Bound, as modified to reflect use of the documents in the Korean Litigation, and Sharp has committed to protecting the small subset of documents actually selected for submission to the Korean court.  *See* Objections at 19-20.  These dual protections ensure that granting Sharp access to the documents would not "improperly frustrate" the protective order.  *See* Defs. Response at 15.

Defendants' reliance on *Four Pillars Enterprises Co., Ltd. v. Avery Dennison Corp.*, 308 F.3d 1075 (9th Cir. 2002) to support their confidentiality concerns is misplaced.  The "unusual" procedural scenario in that case apparently did not include *any* protections to preserve in the foreign litigation the confidential treatment of documents already produced in U.S. litigation.  *See id.* at 1078-79.  That stands in stark contrast to the situation here, where protections have been planned from the beginning of this case and can continued to be addressed until this Court is fully satisfied.

1  **III.    CONCLUSION**

2          For the foregoing reasons, Sharp respectfully requests that the Court vacate the Special

3  Master's Report and Recommendation, deny Defendants' motion to quash, and compel Saveri to

4  produce the documents requested by the subpoena that was appropriately issued pursuant to

5  Section 1782.

6

7  Dated:  November 20, 2012

                                        By:  /s/  Kenneth A. Gallo

8  _____

9                                           PAUL, WEISS, RIFKIND, WHARTON
                                            & GARRISON LLP
                                            Kenneth A. Gallo (*pro hac vice*)
10                                          Bruce H. Searby (*pro hac vice*)
                                            2001 K Street, NW
11                                          Washington, DC  20006
                                            Telephone: 202.223.7356
12                                          Facsimile: 202.204.7356
                                            kgallo@paulweiss.com
13                                          bsearby@paulweiss.com

14

15                                          BINGHAM MCCUTCHEN LLP
                                            Colin C. West (CA State Bar No. 184095)
16                                          Three Embarcadero Center
                                            San Francisco, CA 94111-4067
17                                          Telephone: 415.393.2000
                                            Facsimile:  415.393.2286
18                                          colin.west@bingham.com

19
                                            *Attorneys for Applicant*
20                                          *Sharp Corporation*

21

22

23

24  Attestation:  The filer of this document attests that the concurrence of the signatories thereto
    have been obtained.
25

26

27

28