# **<u>EXHIBIT A</u>**

1   Hon. Charles A. Legge (Ret.)
2   JAMS
    Two Embarcadero Center, Suite 1500
3   San Francisco, CA 94111
    Telephone: (415) 774-2644
4   Fax: (415) 982-5287
5   Special Master

6

7                    UNITED STATES DISTRICT COURT
                   NORTHERN DISTRICT OF CALIFORNIA
8                      (SAN FRANCISCO DIVISION)

9

10  IN RE: CATHODE RAY TUBE (CRT)              Case No. 07-5944 SC
    ANTITRUST LITIGATION                       MDL No. 1917
11

12

13  This Document Relates to:

14  Case No. C 11-6397 SC

15
    COSTCO WHOLESALE CORPORATION,
16
                                               **REPORT AND**
17                      Plaintiff,             **RECOMMENDATION**
                                               **REGARDING THE TOSHIBA**
18          v.                                 **DEFENDANTS' MOTION TO**
                                               **COMPEL ARBITRATION**
19  HITACHI, LTD., et al.,

20
                        Defendants.
21

22

23

24

25

26

27

28

To The Honorable Samuel Conti, United States District Judge:

On August 24, 2012, Defendants Toshiba Corporation, Toshiba America, Inc., Toshiba America Information Systems, Inc., Toshiba America Consumer Products, L.L.C., and Toshiba America Electronic Components, Inc. (collectively, the "Toshiba Defendants") filed a Motion to Compel Arbitration (Docket No. 1332) against Costco Wholesale Corporation ("Costco"). On October 30, 2012, the Special Master heard oral argument on this motion by counsel for the Toshiba Defendants and counsel for Costco. Having carefully considered the briefs and other submissions of the Toshiba Defendants and Costco, the Special Master recommends that the motion should be GRANTED in part as follows.

1.      The Toshiba Defendants' Motion to Compel Arbitration is granted with the exception of claims for co-conspirator or joint and several liability based upon Costco's purchase of products from defendants other than the Toshiba Defendants (the "non-arbitrable claims");

2.      All other claims against the Toshiba Defendants, including all claims based on Costco's direct and indirect purchases of Toshiba products, are referred to arbitration ~~and dismissed~~ (the "arbitrable claims") *and this action on these claims is dismissed.* *C.A.C.*

3.      Costco must arbitrate all arbitrable claims against the Toshiba Defendants in accordance with the August 2, 1995 Vendor Agreement with Toshiba America Consumer Products, Inc. ("Vendor Agreement");

4.      The Special Master finds that the language in the Vendor Agreement's arbitration clause, which applies to "[a]ll claims and disputes that . . . arise out of or relate to" the Vendor Agreement, provides adequate jurisdiction for the Toshiba Defendants' demand to arbitrate;

5.      The arbitration clause is binding on the corporate affiliates and successor of signatory Toshiba America Consumer Products, Inc. because Costco has alleged that all of the present Toshiba Defendants are agents for one another and the claims against them are deemed arbitrable (*see In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-

1827 SI, 2011 WL 4017961, at *7 (N.D. Cal. Sept. 9, 2011) ("To the extent it purchased LCD panels pursuant to vendor agreements, Costco must arbitrate its claims against the corporate affiliates of the signatories to those vendor agreements."));

6. The language in the arbitration clause that provides that "PriceCostco or Vendor may bring court proceedings or claims against each other (i) solely as part of separate litigation commenced by an unrelated third party . . ." does not invalidate Costco's obligation to arbitrate in this case. Had Costco remained part of the class action, it might have had a valid argument. Costco, however, filed its own action, which is merely parallel to (not part of) the class action. Thus, the "solely as part of" language does not apply;

7. The Special Master agrees with Costco that, to the extent that its complaint raises a claim against the Toshiba Defendants based strictly on co-conspirator or joint and several liability, such a claim is not subject to arbitration;

8. Dismissal of the arbitrable claims is more appropriate than a stay in this case and the arbitrable claims are therefore severed from the non-arbitrable claims and are dismissed from this action; and

9. The issue of which damage standards apply is one for the arbitrator, not the Court, to decide. If a party disagrees with the arbitrator's decision, that party's remedy lies in challenging the arbitral decision.

Respectfully submitted,

Dated: November 7, , 2012

The Honorable Charles A. Legge (Ret.)
Special Master

REPORT AND RECOMMENDATION REGARDING THE
TOSHIBA DEFENDANTS' MOTION TO COMPEL ARBITRATION
Case No. C 11-6397 SC
MDL No. 1917
3

1   Recommendation: Approved / Modified / Rejected.

2

3   Dated: _____, 2012

4

5                                         _____
                                          The Honorable Samuel Conti
6                                         Northern District of California

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPORT AND RECOMMENDATION REGARDING THE
TOSHIBA DEFENDANTS' MOTION TO COMPEL ARBITRATION
Case No. C 11-6397 SC
MDL No. 1917
4

# EXHIBIT B

Christopher M. Curran (*pro hac vice*)
ccurran@whitecase.com
George L. Paul (*pro hac vice*)
gpaul@whitecase.com
Lucius B. Lau (*pro hac vice*)
alau@whitecase.com
White & Case LLP
701 Thirteenth Street, N.W.
Washington, DC  20005
Telephone:  (202) 626-3600
Facsimile:  (202) 639-9355

*Counsel to Defendants Toshiba Corporation,*
*Toshiba America, Inc., Toshiba America*
*Information Systems, Inc., Toshiba America*
*Consumer Products, L.L.C., and Toshiba America*
*Electronic Components, Inc.*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
(SAN FRANCISCO DIVISION)

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Case No. 07-5944 SC<br>MDL No. 1917 |
| This Document Relates to:<br><br>Case No. C 11-6397 SC<br><br>COSTCO WHOLESALE CORPORATION,<br><br>                         Plaintiff,<br><br>                v.<br><br>HITACHI, LTD., et al.,<br><br>                    Defendants. | **THE TOSHIBA DEFENDANTS'<br>NOTICE OF MOTION AND<br>MOTION TO COMPEL<br>ARBITRATION**<br><br>**ORAL ARGUMENT<br>REQUESTED**<br><br>Date:     October 24, 2012<br>Time:    11:00 a.m.<br>Before:  Hon. Charles A.<br>             Legge, U.S. District<br>             Judge (Ret.), Special Master |

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

# TABLE OF CONTENTS

Page

NOTICE OF MOTION AND MOTION .................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................2

I.    STATEMENT OF THE ISSUE...................................................................2

II.   INTRODUCTION .......................................................................................2

III.  FACTUAL BACKGROUND.......................................................................3

    A.   Procedural History ............................................................................3

    B.   Costco Alleges A Single Conspiracy That Damaged Costco As To
        Its Purchases "From Any Source" ....................................................4

    C.   Costco's Vendor Agreement Requires Arbitration Of All Claims
        "Arising Under or Related To" Costco's Purchases..........................4

IV.   ARGUMENT...............................................................................................6

    A.   Costco's Vendor Agreement Involves Interstate Commerce ............7

    B.   Costco's Agreement To Arbitrate Is Valid.......................................7

    C.   All Of Costco's Claims As To The Toshiba Defendants Relate To
        The Vendor Agreement .....................................................................8

    D.   Costco's Arbitration Clause Covers Federal And State-Law Claims.............8

    E.   Costco's Claims Against The Toshiba Defendants Must Be
        Arbitrated ........................................................................................10

    F.   Because Costco's Alleged Claims Are Subject To Costco's Broad
        Arbitration Clause, The Court Should Dismiss The Proceedings
        Against The Toshiba Defendants.....................................................13

    G.   Counsel For The Toshiba Defendants Has Attempted To Resolve
        This Issue Without Filing A Motion To Compel..............................14

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

THE TOSHIBA DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION
Case No. 07-5944 SC
MDL No. 1917

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

## <u>**TABLE OF AUTHORITIES**</u>

<u>Cases</u>                                                                                                     <u>Page</u>

*Amisil Holdings Ltd. v. Clarium Capital Mgmt.*,
   622 F. Supp. 2d 825 (N.D. Cal. 2007)......................................................................10, 12

*AT&T Mobility LLC v. Concepcion*,
   131 S. Ct. 1740 (2011) ........................................................................................... 7-8

*Aztec Med. Servs., Inc. v. Burger*,
   792 So.2d 617 (Fla. Dist. Ct. App. 2001)...................................................................9

*Balen v. Holland Am. Line Inc.*,
   583 F.3d 647 (9th Cir. 2009) ................................................................................. 6-7

*Carroll v. LeBouef, Lamb, Greene & Macrae, LLP*,
   374 F. Supp. 2d 375 (S.D.N.Y. 2005) .......................................................................12

*Chappel v. Lab Corp. of Am.*,
   232 F.3d 719 (9th Cir. 2000) ..................................................................................13

*Crown Homes, Inc. v. Landes*,
   22 Cal. App. 4th 1273 (Cal. Ct. App. 1994)...............................................................9

*D.E. Wright Elec., Inc. v. Henry Ross Const. Co., Inc.*,
   538 N.E.2d 1182 (Ill. App. Ct. 1989)........................................................................9

*Estrella v. Freedom Fin.*,
   No. C 09-03156 SI, 2011 WL 2633643 (N.D. Cal. July 5, 2011)....................................7

*Fujian Pacific Elec. Co., Ltd v. Bechtel Power Corp.*,
   C 04-3126 MHP, 2004 WL 2645974 (N.D. Cal. Nov. 19, 2004) ...........................10, 11

*Hansen v. KPMG, LLP*,
   No. CV 04-10525-GLT (MANx), 2005 WL 6051705 (C.D. Cal. Mar. 29, 2005)....11, 12

*Hawkins v. KPMG, LLP*,
   423 F. Supp. 2d 1038 (N.D. Cal. 2006)....................................................................11

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   Nos. M 07-1827 SI, C 09-5609 SI, 2011 WL 2650689 (N.D. Cal. July 6, 2011).....6, 7, 9

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    Nos. M 07-1827 SI, C 09-5609 SI, 2011 WL 4017961 (N.D. Cal. Sept. 9, 2011) ...........9

*J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.*,
    863 F.2d 315 (4th Cir. 1988) .............................................................. 10, 12-13

*JLM Indus. v. Stolt-Nielsen SA*,
    387 F.3d 163 (2d Cir. 2004) ....................................................................8, 9, 10

*KKE Architects, Inc. v. Diamond Ridge Dev. LLC*,
    No. CV 07-06866 MMM, 2008 WL 637603 (C.D. Cal. Mar. 3, 2008) ................... 13-14

*Lewis v. UBS Financial Servs., Inc.*,
    818 F. Supp. 2d 1161 (N.D. Cal. 2011) .........................................................13

*Mediterranean Enters., Inc., v. Ssangyong Corp.*,
    708 F.2d 1458 (9th Cir. 1983) .......................................................................8

*Mendez v. Palm Harbor Homes, Inc.*,
    45 P.3d 594 (Wash. Ct. App. 2002) ...............................................................9

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
    473 U.S. 614 (1985) ............................................................................... 8-9

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983) .....................................................................................6

*MS Dealer Serv. Corp. v. Franklin*,
    177 F.3d 942 (11th Cir. 1999) .................................................................11, 12

*Mundi v. Union Security Life Ins. Co.*,
    555 F.3d 1042 (9th Cir. 2009) ................................................................ 10-11

*Rep. of Nicaragua v. Standard Fruit Co.*,
    937 F.2d 469 (9th Cir. 1991) ........................................................................6

*Simula, Inc. v. Autoliv, Inc.*,
    175 F.3d 716 (9th Cir. 1999) ......................................................................6, 9

*Sparling v. Hoffman Const. Co., Inc.*,
    864 F.2d 635 (9th Cir. 1988) .......................................................................13

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

*St. Paul Marine & Fire Ins. Co. v. Courtney Enters. Inc.*,
  270 F.3d 621 (8th Cir. 2001) ............................................................................5

*Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*,
  368 F.3d 1053 (9th Cir. 2004) ..........................................................................13

*U.S. Insulation, Inc. v. Hilro Const. Co., Inc.*,
  705 P.2d 490 (Ariz. Ct. App. 1985) ...................................................................9

*Valley Power Sys., Inc. v. Gen. Elec. Co.*,
  No. CV 11-10726 CAS, 2012 WL 665977 (C.D. Cal. Feb. 27, 2012) .............13

## Statutes

9 U.S.C. § 1, *et seq.* ...........................................................................................6, 7

9 U.S.C. § 2 .............................................................................................................7

9 U.S.C. § 206 ........................................................................................................6

9 U.S.C. § 3 .............................................................................................................1

9 U.S.C. § 4 ..........................................................................................................6, 7

15 U.S.C. § 1 ..........................................................................................................4

740 Illinois Code 10/1 *et seq* ...............................................................................4

Ariz. Rev. Stat. § 44-1401 *et seq* ..........................................................................4

Cal. Bus. & Prof. Code § 16700 *et seq.* ...............................................................4

Florida Stat. § 501.201 *et seq.* .............................................................................4

Wash. Rev. Code § 19.86.030 ...............................................................................4

## Other Authorities

AAA Commercial Arbitration R. & Mediation P. R-7(a) ......................................5

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on October 24, 2012, at 11:00 a.m., or as soon thereafter as the matter may be heard before the Honorable Charles A. Legge, U.S. District Court Judge (Ret.), Special Master, in the San Francisco Resolution Center of JAMS, Two Embarcadero Center, Suite 1500, San Francisco, California, 94111, Defendants Toshiba Corporation, Toshiba America, Inc., Toshiba America Information Systems, Inc., Toshiba America Consumer Products, L.L.C., and Toshiba America Electronic Components, Inc. (the "Toshiba Defendants") will and hereby do move the Court pursuant to Chapter 1 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 3, and Rule 12(b)(6) of the Federal Rules of Civil Procedure, for an order compelling arbitration of all of Costco Wholesale Corporation's ("Costco") claims, and dismissing this action in its entirety as to the Toshiba Defendants. Costco must be compelled to arbitrate its claims against the Toshiba Defendants because Costco has entered into a valid, written arbitration agreement that broadly covers all claims "arising out of or relating to" the claims asserted. That agreement was entered into directly between Costco and the Toshiba Defendants, their affiliates, alleged co-conspirators, and customers. Costco asserts that the non-signatory Toshiba Defendants were agents of the signatory or damaged Costco because of the contract and, thus, that all Toshiba Defendants are jointly and severally liable as to the contract "from any source." Because all of Costco's claims against the Toshiba Defendants are subject to arbitration, the Court should grant this motion, dismiss this action as it pertains to the Toshiba Defendants, and direct Costco to proceed with arbitration.

This motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities, and accompanying exhibits, argument of counsel, and such other matters as the Court may consider.

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.     STATEMENT OF THE ISSUE

Whether the broad arbitration agreement drafted by Costco, which imposes arbitration of all claims "arising out of or relating to" Costco's relationships with its CRT product vendors, covers Costco's federal and state-law conspiracy claims against the Toshiba Defendants, thus requiring dismissal of this action as to the Toshiba Defendants and an order directing Costco to arbitrate its claims.

### II.     INTRODUCTION

Costco's complaint asserts federal and state-law claims based upon allegations of a CRT price-fixing conspiracy among Defendants Toshiba Corporation, Toshiba America, Inc., Toshiba America Information Systems, Inc., Toshiba America Consumer Products, L.L.C., and Toshiba America Electronic Components, Inc. (collectively the "Toshiba Defendants") and their alleged co-conspirators.  Costco alleges that "[e]ach Defendant acted as the principal, agent or joint venturer of, or for other Defendants," that each member of each Defendant's corporate family "engaged in conspiratorial meetings on behalf of every company in that family," and that "all entities within the corporate families were active, knowing participants" in the alleged conspiracy.  Compl. ¶¶ 55-57.  Costco's claims, however, are subject to the broad arbitration agreement that Costco imposes on all of its suppliers, including the Toshiba Defendants.  On August 2, 1995, Costco executed a Vendor Agreement with TACP, Inc. (the "Vendor Agreement").  Declaration of Lucius B. Lau in Support of the Toshiba Defendants' Motion to Compel Arbitration, dated August 24, 2012 ("Lau Decl.") Ex. A.  By its own language, this agreement requires arbitration of any and all claims arising out of or relating to any agreement between Costco and the Toshiba Defendants.  Pursuant to the Federal Arbitration Act, the Court should enforce this arbitration agreement by dismissing this action as it pertains to the Toshiba Defendants.

## III.    FACTUAL BACKGROUND

### A.    Procedural History

On November 14, 2011, Costco filed its Complaint and Jury Demand in the United States District Court for the Western District of Washington against the Toshiba Defendants and others.  Complaint and Jury Demand, *Costco Wholesale Corp. v. Hitachi, Ltd., et al*, No. 2:11-cv-01909-RSM (W.D. Wash. Nov. 14, 2011), ECF No. 1.  The action was transferred to the MDL on December 20, 2011.  Clerk's Notice, *In re: Cathode Ray Tube (CRT) Antitrust Litig.*, No. 07-5944 SC (N.D. Cal. Dec. 20, 2011), ECF No. 1016.  As previously described in the Defendants' Joint Notice of Motion and Motion to Dismiss and for Judgment on the Pleadings as to Certain Direct Action Plaintiffs' Claims (*In re: Cathode Ray Tube (CRT) Antitrust Litig.*, No. 07-5944 SC, at 17-18, 26, 28, 30 (N.D. Cal. Aug. 17, 2012), ECF No. 1317), the Complaint does not specify from whom, when, or where Costco bought "CRT Products," a term within which Costco lumps together CDTs, products containing CDTs, CPTs, and products containing CPTs.[1]  Compl. ¶ 2.  Costco is clear, however, that it seeks recovery from the Toshiba Defendants for any and all purchases of "CRT Products" by Costco "from any source."  Compl. ¶ 9.

The Vendor Agreement governs the purchases upon which Costco asserts its claims against the Toshiba Defendants and adopts the dispute resolution procedures found in Costco's "Standard Terms" by reference.  Lau Decl. Ex. A at A, E.  The Standard Terms contain a broad arbitration clause governing all aspects of Costco's purchases of CRTs and CRT finished products from the Toshiba Defendants.  Accordingly, Costco's claims against the Toshiba Defendants are subject to arbitration and this Court must dismiss Costco's claims against the Toshiba Defendants.[2]

---

[1] Costco defines "CDT Products" as "CDTs of all sizes and the products containing them," and "CPT Products" as "CPTs of all sizes and the products containing them."  Compl. ¶ 2.

[2] Defendants reserve all rights to amend this motion if Costco comes forward with additional agreements with different dispute resolution terms and conditions.

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

**B.    Costco Alleges A Single Conspiracy That Damaged Costco As
To Its Purchases "From Any Source"**

Costco alleges that that the Toshiba Defendants and other CRT and CRT finished product manufacturers "conducted a conspiracy extending at a minimum from March 1, 1995, through November 25, 2007" to "rais[e] or maintain[] prices and [to] reduc[e] capacity and output" for cathode ray tubes ("CRTs")." Compl. ¶ 1. Costco alleges that it purchased CRT Products at a price over what it would have paid absent the alleged conspiracy. *See* Compl. ¶¶ 3, 180, 183, 187, 191, 198, 202. Costco does not further specify what it purchased or from whom. According to Costco, these details are immaterial because the Toshiba Defendants are liable to Costco based upon Costco's purchases "for CRT Products from any source." Compl. ¶ 9.

Costco alleges that "[e]ach Defendant acted as the principal, agent or joint-venturer of, or for, other Defendants"; that each member of each Defendant's corporate family "engaged in conspiratorial meetings on behalf of every company in that family"; and that "all entities within the corporate families were active knowing participants in the alleged conspiracy. Compl. ¶¶ 55-57. Based upon these allegations, Costco brings claims under Section 1 of the Sherman Act, 15 U.S.C. § 1, the California Cartwright Act, Cal. Bus. & Prof. Code § 16700 *et seq.*, the Washington Consumer Protection Act, Wash. Rev. Code § 19.86.030, the Arizona Antitrust Act, Ariz. Rev. Stat. § 44-1401 *et seq.*, the Florida Deceptive and Unfair Trade Practices Act, Florida Stat. § 501.201 *et seq.*, and the Illinois Antitrust Act, 740 Illinois Code 10/1 *et seq.*

**C.    Costco's Vendor Agreement Requires Arbitration Of All
Claims "Arising Under or Related To" Costco's Purchases**

On the face of the Vendor Agreement, it is clear that the document was drafted by Costco to be used with its vendors. *See* Lau Decl. Ex. A at 1-2 ((1) document is entitled "Vendor Agreement (Basic)"; (2) includes Costco's name and fill-in-the-blanks for each "Vendor;" (3) handwritten "Toshib" at the top to indicate that that this particular standard contract refers to vendor Toshiba; (4) bottom right corner has a Costco form number

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

"Form A.4," including a revision date; and (5) signature block has a place for Costco and "Vendor."). The Vendor Agreement governs the entire relationship between Costco and each supplier. *See id.* at A. In the Vendor Agreement, Costco imposed arbitration provisions upon TACP, Inc., requiring disputes to be resolved under the arbitration provisions found in Costco's Standard Terms. *Id.* The Vendor Agreement also incorporates the Standard Terms by reference. *Id.* at A. Costco also insisted that the Vendor Agreement take priority over any inconsistent terms in other agreements between the parties. *Id.* at B.

The incorporated Standard Terms in turn require arbitration of any and all disputes arising out of or relating to Costco's purchase of CRTs and other products:

> **20. DISPUTES AND ARBITRATION.** All claims and disputes that (1) are between Vendor and PriceCostco and (2) arise out of or relate to these Standard Terms or any agreement between Vendor and PriceCostco[3] or to their performance or breach (including any tort or statutory claim) ("Arbitrable Claims"), shall be arbitrated under the Commercial Arbitration Rules of the American Arbitration Association ("AAA"), in English at Seattle, Washington, before any one neutral arbitrator who may be a national of any party and who shall be a member of the AAA's Large Complex Case Panel.

Lau Decl. Ex. A at Standard Terms ¶ 20.

In this action, Costco brings claims based upon purchases from TACP, Inc., the predecessor of Defendant TACP, with whom Costco entered into the Vendor Agreement. Lau Decl. Ex. A. The Toshiba Defendants make no concession that they are liable for the sales of their unnamed and alleged affiliates and reserve all rights to contest that liability before the arbitrator or before this Court. Such liability is a question of fact for the arbitrator to decide. *See St. Paul Marine & Fire Ins. Co. v. Courtney Enters., Inc.*, 270 F.3d 621, 624 (8th Cir. 2001) ("[T]he court may not rule on the merits of any claim the parties have agreed to arbitrate.").

---

[3] The Vendor Agreement defines "PriceCostco" to include both The Price Company and Costco Wholesale Corporation. Lau Decl. Ex. A. According to Costco's website, The Price Company is a predecessor of Costco Wholesale. *See http://phx.corporate-ir.net/External.File?item=UGFyZW50SUQ9ODc2OT82Q2hpbG RJRD0tMXxUeXBlPTM=&t=1* accessible through Costco.com.

THE TOSHIBA DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION
Case No. 07-5944 SC
MDL No. 1917

5

## IV.     ARGUMENT

The Federal Arbitration Act (the "FAA") establishes the "liberal federal policy favoring arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *see also In re TFT-LCD (Flat Panel) Antitrust Litig.*, Nos. M 07-1827 SI, C 09-5609 SI, 2011 WL 2650689, at *2 (N.D. Cal. July 6, 2011) ("[T]he FAA espouses a general policy favoring arbitration agreements."). As such, agreements to arbitrate are to be rigorously enforced. *See Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25 ("[A]s a matter of federal law, any doubts regarding the scope of arbitrable issues should be resolved in favor of arbitration . . . ."). The American Arbitration Association's Rules, as incorporated by Costco in the Vendor Agreement (at Standard Terms ¶ 20), underscore that the arbitrator can decide any questions of arbitrability: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." AAA Commercial Arbitration R. & Mediation P. R-7(a).

When considering a motion to compel arbitration, the Court's role is limited to determining whether:  (1) the contract containing the arbitration clause evinces a transaction involving interstate commerce; (2) a valid agreement to arbitrate exists; and (3) whether the dispute is encompassed within the scope of that agreement. *See Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719-20 (9th Cir. 1999) (when considering a motion to compel arbitration, "the district court can determine *only* whether a written arbitration agreement exists, and if it does, enforce it in accordance with its terms") (emphasis added); *Rep. of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 475-78 (9th Cir. 1991); *see also* 9 U.S.C. § 4; Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention"), 9 U.S.C. § 206. In addition to the FAA, the New York Convention applies to this motion to compel because Toshiba Corporation is a foreign company. *See Balen v. Holland Am. Line Inc.*, 583 F.3d 647, 654-55 (9th Cir. 2009)

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

(holding that one factor that courts consider in determining whether to enforce an arbitration agreement under the New York Convention is whether a party to the agreement is a foreign citizen or the commercial relationship at issue "has some reasonable relation with one or more foreign states."). Where there is a valid, enforceable arbitration agreement, the Court must compel arbitration. *See* 9 U.S.C. § 4 ("[T]he court shall make an order directing the parties to proceed in arbitration in accordance with the terms of the agreement"); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI, 2011 WL 2650689, at *2 (N.D. Cal. July 6, 2011) ("Federal courts are required to rigorously enforce an agreement to arbitrate."); *Estrella v. Freedom Fin.*, No. C 09-03156 SI, 2011 WL 2633643, at *2 (N.D. Cal. July 5, 2011) ("Upon a showing that a party has failed to comply with a valid arbitration agreement, the district court must issue an order compelling arbitration.").

### A.     Costco's Vendor Agreement Involves Interstate Commerce

The FAA applies wherever an arbitration agreement is a "written provision in . . . a contract evidencing a transaction involving commerce." 9 U.S.C. § 2. That commerce must involve interstate or foreign commerce. *Id.* § 1. The commerce at issue here is interstate because Costco, a Washington-based company, entered into contracts with the Toshiba Defendants, all non-Washington companies, for the provision of CRTs and finished products containing CRTs to Costco in Washington and allegedly in other states, including California. Indeed, Costco admits that its claims against the Toshiba Defendants involve interstate commerce. *See* Compl. ¶ 61 (alleging that the events giving rise to the Plaintiffs' claims "affected interstate commerce").

### B.     Costco's Agreement To Arbitrate Is Valid

Costco itself drafted the Vendor Agreement and the Standard Terms containing the arbitration clause. Because no "grounds exist at law or in equity for the revocation" of any of the Vendor Agreement, the FAA applies and Costco should be required to arbitrate. *See, e.g.*, 9 U.S.C. § 2; *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1746 (2011)

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

(explaining that only generally applicable defenses to contract formation, such as fraud, duress, or unconscionability, would warrant revocation of an arbitration agreement).

### C. All Of Costco's Claims As To The Toshiba Defendants Relate To The Vendor Agreement

Costco drafted its Standard Terms with broad language providing that any and all claims and disputes that "arise out of or relate to" agreements between Costco and its vendors must be arbitrated. Lau Declaration Ex. A at 4. The Ninth Circuit has recognized that an agreement to arbitrate claims "arising out of or relating to" is a broad arbitration clause. *See Mediterranean Enters., Inc., v. Ssangyong Corp.*, 708 F.2d 1458, 1464 (9th Cir. 1983) (noting that the language "'arising out of or relating to this agreement' had been labeled a 'broad arbitration clause'" by other courts) (internal quotations omitted). It is well-established that antitrust claims are claims "arising under" purchase contracts. *See Mitsubishi Motors Corp. v. Soler Chrysler Plymouth, Inc.*, 473 U.S. 614, 632, 640 (1985) (holding that the plaintiffs' antitrust claims arising under a sales agreement between the parties were arbitrable); *JLM Indus. v. Stolt-Nielsen SA*, 387 F.3d 163, 181 (2d Cir. 2004) (holding that the plaintiffs' antitrust claims arising under a form charter agreement were subject to arbitration). Here, Costco additionally subjects to arbitration all claims that not only "arise out of" but also "relate to" its Vendor Agreement. Lau Decl. Ex. A at Standard Terms ¶ 20. In addition, Costco alleges that it suffered damages as a result of its purchases of CRTs and finished products containing CRTs, which are governed by the Vendor Agreement. Compl. ¶¶ 3, 180, 183, 187, 191, 198, 202. By definition, those purchases arise out of and relate to the Vendor Agreement. Because Costco's federal and state-law claims not only arise out of but "relate to" the Vendor Agreement, those claims are arbitrable. *Accord Mediterranean Enters.*, 708 F.2d at 1464

### D. Costco's Arbitration Clause Covers Federal And State-Law Claims

The Vendor Agreement's broad arbitration provision applies to Costco's alleged federal and state-law claims. The Supreme Court has determined that Sherman Act claims are arbitrable. *See Mitsubishi Motors Corp.*, 473 U.S. at 618-19, 624 (holding that

plaintiffs' Sherman Act claims were subject to arbitration under the FAA); *see also JLM*, 387 F.3d at 175 (rejecting plaintiffs' argument that an arbitral panel would be incapable of resolving its Sherman Act claims). Relying upon this precedent, this Court has already recognized that Sherman Act claims are arbitrable under the same arbitration provision, as well as arbitration provisions more narrow than in the Vendor Agreement. *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI, 2011 WL 4017961, at *7 (N.D. Cal. Sept. 9, 2011) (holding that Costco's claims based upon the Vendor Agreement for the purchases of LCD products were subject to arbitration); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 2650689, at *3, *5) (holding that claims were subject to arbitration when the arbitration clause at issue was drafted to apply to "[a]ll disputes arising in connection with this Agreement"). Thus, Costco's Sherman Act claims in this case are similarly arbitrable.

It is also well-established that state-law antitrust claims are arbitrable whether brought pendant to Sherman Act claims or on their own. *See, e.g.*, *Simula, Inc.*, 175 F.3d at 719, 726 (holding arbitration was appropriate to adjudicate alleged violations of a mix of federal and state antitrust, trade secret, trademark, and defamation laws). In fact, several of the state-law claims brought by Costco have been found to be arbitrable. *See, e.g.*, *Mendez v. Palm Harbor Homes, Inc.*, 45 P.3d 594, 599 (Wash. Ct. App. 2002) ("In Washington it is well settled that [Consumer Protection Act] and other statutory claims are subject to arbitration under the FAA."); *Crown Homes, Inc. v. Landes*, 22 Cal. App. 4th 1273, 1280 (Cal. Ct. App. 1994) ("[T]here is nothing in the arbitration statutes or the Cartwright Act which indicates that an antitrust claim is not arbitrable."); *Aztec Med. Servs., Inc. v. Burger*, 792 So.2d 617, 622 (Fla. Dist. Ct. App. 2001). There is no reason to believe that Costco's Illinois or Arizona law claims are not arbitrable, as both states favor the enforcement of arbitration agreements. *See D.E. Wright Elec., Inc. v. Henry Ross Const. Co., Inc.*, 538 N.E.2d 1182, 1187 (Ill. App. Ct. 1989) ("Arbitration is a favored method of resolving disputes in Illinois . . . ."); *U.S. Insulation, Inc. v. Hilro Const. Co., Inc.*, 705 P.2d 490, 498 (Ariz. Ct. App. 1985).

THE TOSHIBA DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION
Case No. 07-5944 SC
MDL No. 1917

9

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

**E.      Costco's Claims Against The Toshiba Defendants Must Be Arbitrated**

Costco must arbitrate its claims against the Toshiba Defendants.  A plaintiff is estopped from refusing to arbitrate with a corporate family member alleged to be liable for overcharges incurred on an affiliate's contract.  *See Fujian Pac. Elec. Co., Ltd v. Bechtel Power Corp.*, No. C 04-3126 MHP, 2004 WL 2645974, at *6 (N.D. Cal. Nov. 19, 2004) (stating that "[w]hen the charges against a parent company and its subsidiary are based upon the same facts and are inherently inseparable, a court may refer claims against the parent to arbitration even though the parent is not formally a party to the arbitration agreement") (quoting *J.J. Ryan & Sons, Inc. v. Rhose Poulenc Textile, S.A.*, 863 F.2d 315, 321-22 (4th Cir. 1988)); *JLM*, 387 F.3d at 177-78 (holding that plaintiffs could not avoid arbitration with affiliate of signatory after having treated the signatory and its affiliate as a single unit in its complaint).  Although this principle alone would be enough for the Toshiba Defendants to require Costco to abide by its own arbitration terms, Costco also alleges that all members of corporate families were "active, knowing participants" in the alleged conspiracy and treats all corporate family members as a single entity.  Compl. ¶¶ 57, 135.  Because Costco alleges that all members of the Toshiba Defendants' corporate family are liable for their affiliates' alleged actions, Costco must arbitrate with all of the named Toshiba Defendants even though the Vendor Agreement was executed by a predecessor of only one Defendant, TACP.

 "[A]n obligation to arbitrate does not attach *only* to those who actually signed the agreement to arbitrate."  *Amisil*, 662 F. Supp. 2d at 830; *JLM*, 387 F.3d at 177 ("under principles of estoppel, a non-signatory to an arbitration agreement may compel a signatory to that agreement to arbitrate").  A signatory to an agreement to arbitrate, like Costco, can be compelled to arbitrate claims where it has been alleged that the non-signatory parties are agents or that their liability is otherwise intertwined with the agreement to arbitrate.  *See Mundi v. Union Security Life Ins. Co.*, 555 F.3d 1042, 1046 (9th Cir. 2009) ("a signatory may be required to arbitrate a claim brought by a non-signatory because of the close relationship between the entities involved, as well as the relationship of the alleged wrongs

to the non-signatory's obligations and duties in the contract and the fact that the claims were intertwined with the underlying contractual obligations.") (internal quotations omitted); *Fujian Pac. Elec. Co. Ltd.*, 2004 WL 2645974, at *6 ("A signatory to an agreement cannot . . . have it both ways: it cannot on the one hand, seek to hold the non-signatory liable pursuant to the duties imposed by the agreement, which contains an arbitration provision, but on the other hand, deny the arbitration provision's applicability because the defendant is a non-signatory."); *Hawkins v. KPMG, LLP*, 423 F. Supp. 2d 1038, 1050-52 (N.D. Cal. 2006) ("[T]o allow the claims against the [non-signatory defendants] to proceed in federal court would cause the arbitration proceedings between the two signatories to be rendered meaningless.") (internal quotations omitted) (quoting *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999) (internal quotations omitted)); *Hansen v. KPMG, LLP*, No. CV 04-10525-GLT (MANx), 2005 WL 6051705, at *3 (C.D. Cal. Mar. 29, 2005) (compelling a plaintiff signatory to arbitration where "[p]laintiff's allegations plead interdependent and concerted misconduct" by a signatory and non-signatory defendants). Because Costco has already agreed to arbitrate all claims related to its purchasing contract with TACP, Inc., the only issue for the Court to decide is whether Costco's claims relate to its alleged purchases of CRTs and finished products containing CRTs from the Toshiba Defendants.

Here, Costco alleges that interdependent and concerted conduct by all Defendants, acting as one, caused injury to Costco for its purchases under the Vendor Agreement. It alleges that all Defendants participated in a single conspiracy. Compl. ¶ 1. It alleges that each Defendant was an agent of the other for purposes of carrying out this conspiracy. Compl. ¶ 48. It alleges that each Defendant has joint and several liability for all CRT product sales, including sales made by the Toshiba Defendants or from any other source under the Vendor Agreement. *See* Compl. ¶ 185. Costco further alleges joint and several liability for sales by co-conspirators under any CRT Vendor Agreement. *See* Compl. ¶¶ 185, 189, 193, 197, 201, 208. Finally, Costco alleges that each Defendant is liable for every sale made to Costco under the CRT Vendor Agreement entered by customers of

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

Defendants. *See* Compl. ¶ 3. Allegations such as these establish that Costco's claims against the Toshiba Defendants are based upon purchases from: (1) the Toshiba Defendants; (2) Defendant TACP's predecessor, TACP, Inc.; (3) co-conspirators; and (4) customers of the Toshiba Defendants pursuant to the Vendor Agreement. As such, all of Costco's claims relate to and are intertwined with those contracts. *See Amisil*, 622 F. Supp. 2d at 831-32 (stating that where an arbitration clause includes claims "relating to" the contract, non-signatory defendants may enforce it); *MS Dealer Serv. Corp.*, 177 F.3d at 948 ("[A]llegations of such pre-arranged, collusive behavior establish that [signatory's] claims against [non-signatory] are intimately founded and intertwined with the obligations imposed by the [contract containing the arbitration clause].").

Finally, requiring Costco to arbitrate all of its claims is consistent with the notions of fair play and equity, as "[h]aving elected to tar [Defendants who did not directly sign agreements to arbitrate] with the very broad brush they apply to other defendants" a plaintiff must arbitrate with all Defendants to which they applied this very broad brush. *Carroll v. LeBouef, Lamb, Greene & Macrae, LLP*, 374 F. Supp. 2d 375, 378 (S.D.N.Y. 2005). This is particularly true where a "[p]laintiff describes the non-signatory Defendants as one team involved in a single course of misconduct and seeks to hold them jointly liable for each other's conduct," as Costco does here. *Hansen*, 2005 WL 6051705, at *3. In *Hansen*, the court held that pleadings alleging "interdependent and concerted misconduct" were sufficient for the non-signatory defendants to compel the signatory plaintiff to arbitration. *Id.* at *3. Moreover, the court indicated that it was unlikely that the pleadings could be amended to alter this result, since "Plaintiffs' underlying theory is an inter-related, cooperative course of misconduct." *Id.*

Just as in *Hansen,* Costco's interdependent claims must be arbitrated. To hold otherwise would render the arbitration proceedings with the signatories meaningless. *See J.J. Ryan & Sons, Inc.*, 863 F.2d at 321 (holding that forcing a non-signatory parent of a signatory subsidiary to try a case, rather than arbitrate, based upon the same facts, would

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

render arbitration proceedings "meaningless and the federal policy in favor of arbitration would effectively [be] thwarted").

### F. Because Costco's Alleged Claims Are Subject To Costco's Broad Arbitration Clause, The Court Should Dismiss The Proceedings Against The Toshiba Defendants

Costco's claims against the Toshiba Defendants should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure because they are covered by the Vendor Agreement's arbitration clause. "The Ninth Circuit has held that where, as here, all the claims at issue are subject to arbitration, dismissal is the appropriate remedy." *Valley Power Sys., Inc. v. Gen. Elec. Co.*, No. CV 11-10726 CAS, 2012 WL 665977, at *6 (C.D. Cal. Feb. 27, 2012) (citing *Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1060 (9th Cir. 2004) (affirming district court's dismissal of the plaintiffs' claims that were subject to arbitration), and *Chappel v. Lab Corp. of Am.*, 232 F.3d 719, 725 (9th Cir. 2000) (holding that plaintiffs' claims were properly dismissed under Rule 12(b)(6) because they were subject to a valid and enforceable arbitration clause)); *see also Sparling v. Hoffman Const. Co., Inc.*, 864 F.2d 635, 638 (9th Cir. 1988) (holding that 9 U.S.C. § 3 does not preclude courts from dismissing all claims when they are barred by an arbitration clause).

District courts in the Ninth Circuit routinely dismiss all claims — rather than issue a stay — when a plaintiff's claims are subject to arbitration. *See, e.g.*, *Valley Power Sys., Inc.*, 2012 WL 665977, at *6 (holding that a dismissal of plaintiff's claims, rather than a stay, was the appropriate remedy because all of the claims in the dispute were subject to arbitration); *Lewis v. UBS Financial Servs., Inc.*, 818 F. Supp. 2d 1161, 1169 (N.D. Cal. 2011) (dismissing the plaintiff's claims that the court deemed subject to arbitration); *KKE Architects, Inc. v. Diamond Ridge Dev. LLC*, No. CV 07-06866 MMM, 2008 WL 637603, at *5 (C.D. Cal. Mar. 3, 2008) ("The Ninth Circuit has held that [9 U.S.C.] § 3 does not impose a mandatory duty to stay on district courts. Thus, even where a party seeks a stay under § 3, the court has discretion to dismiss under Rule 12(b)(6) if it finds that all of the claims before it are arbitrable."). Because Costco's claims against the Toshiba Defendants

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

THE TOSHIBA DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION
Case No. 07-5944 SC
MDL No. 1917

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

are subject to a valid arbitration agreement, dismissal of this case is the appropriate remedy.

### G. Counsel For The Toshiba Defendants Has Attempted To Resolve This Issue Without Filing A Motion To Compel

On May 31, 2012, counsel for the Toshiba Defendants wrote a letter to counsel for Costco, requesting that Costco dismiss this action with respect to the Toshiba Defendants and abide by its agreement to arbitrate all of the claims it believed it has against the Toshiba Defendants. On June 27, 2012, counsel for Costco responded with his own letter. Since that time, counsel for the Toshiba Defendants has spoken with counsel for Costco twice via telephone regarding this issue. These efforts have proven unsuccessful. For their part, the Toshiba Defendants believe this action should be dismissed, not stayed. The Toshiba Defendants further believe that the Vendor Agreement (which was drafted by Costco) should be enforced according to its existing terms and should not be modified by this Court.

*   *   *

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

## CONCLUSION

For these reasons, the Court should dismiss all claims against the Toshiba Defendants and direct Costco to arbitrate its claims against the Toshiba Defendants.

Respectfully submitted,

Dated:  August 24, 2012                    WHITE & CASE LLP

By:  _/s/ Lucius B. Lau_
Christopher M. Curran (*pro hac vice*)
ccurran@whitecase.com
George L. Paul (*pro hac vice*)
gpaul@whitecase.com
Lucius B. Lau (*pro hac vice*)
alau@whitecase.com
701 Thirteenth Street, N.W.
Washington, DC  20005
tel.: (202) 626-3600
fax: (202) 639-9355

*Counsel to Defendants Toshiba Corporation, Toshiba America, Inc., Toshiba America Information Systems, Inc., Toshiba America Consumer Products, L.L.C., and Toshiba America Electronic Components, Inc.*

1

**CERTIFICATE OF SERVICE**

2      On August 24, 2012, I caused a copy of "THE TOSHIBA DEFENDANTS' NOTICE

3   OF MOTION AND MOTION TO COMPEL ARBITRATION" to be electronically filed

4   via the Court's Electronic Case Filing System, which constitutes service in this action

5   pursuant to the Court's order of September 29, 2008.

6

7

8                                    _/s/ Lucius B. Lau_

9                                    Lucius B. Lau

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

# **EXHIBIT C**



Christopher M. Curran (*pro hac vice*)
ccurran@whitecase.com
George L. Paul (*pro hac vice*)
gpaul@whitecase.com
Lucius B. Lau (*pro hac vice*)
alau@whitecase.com
White & Case LLP
701 Thirteenth Street, N.W.
Washington, DC 20005
Telephone: (202) 626-3600
Facsimile: (202) 639-9355

*Counsel to Defendants Toshiba Corporation,*
*Toshiba America, Inc., Toshiba America*
*Information Systems, Inc., Toshiba America*
*Consumer Products, L.L.C., and Toshiba*
*America Electronic Components, Inc.*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
(SAN FRANCISCO DIVISION)

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Case No. 07-5944 SC<br>MDL No. 1917 |
| This Document Relates to:<br><br>Case No. C 11-6397 SC<br><br>COSTCO WHOLESALE CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>HITACHI, LTD., et al.,<br><br>Defendants. | **DECLARATION OF LUCIUS B. LAU IN SUPPORT OF TOSHIBA DEFENDANTS' MOTION TO COMPEL ARBITRATION** |

DECLARATION OF LUCIUS B. LAU IN SUPPORT OF
TOSHIBA DEFENDANTS' MOTION TO COMPEL ARBITRATION
Case No. C 11-6397 SC
MDL No. 1917

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1  I, Lucius B. Lau, hereby declare as follows:

2      1.      I am Counsel with the law firm of White & Case LLP, counsel for Defendants

3  Toshiba Corporation, Toshiba America, Inc., Toshiba America Information Systems, Inc.,

4  Toshiba America Consumer Products, L.L.C., and Toshiba America Electronic Components,

5  Inc. (collectively, the "Toshiba Defendants").  I make this declaration in support of the

6  Toshiba Defendants' Motion to Compel Arbitration.

7      2.      On June 13, 2011, Costco produced a copy of an executed Vendor Agreement

8  between Costco and Toshiba America Consumer Products, Inc. (the "Vendor Agreement) as

9  CostcoLCD_000000013-17 in *In re: TFT-LCD (Flat Panel) Antitrust Litigation*, No. M 07-

10  1827 SI (N.D. Cal.).  Attached hereto as Exhibit A is a true and correct copy of the Vendor

11  Agreement.

12

13      I declare under penalty of perjury under the laws of the United States of America that

14  the foregoing is true and correct.

15

16      Executed this 24th day of August, 2012, in Washington, D.C.

17

18

19                                        _____

                                                 Lucius B. Lau

20

21

22

23

24

25

26

27

28

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

DECLARATION OF LUCIUS B. LAU IN SUPPORT OF
TOSHIBA DEFENDANTS' MOTION TO COMPEL ARBITRATION
Case No. C 11-6397 SC
MDL No. 1917

# EXHIBIT A

# (FILED UNDER SEAL)

**CERTIFICATE OF SERVICE**

On August 24, 2012, I caused a copy of "DECLARATION OF LUCIUS B. LAU IN SUPOPRT OF TOSHIBA DEFENDANTS' MOTION TO COMPEL ARBITRATION" to be electronically filed via the Court's Electronic Case Filing System, which constitutes service in this action pursuant to the Court's order of September 2, 2008.

_____
Lucius B. Lau

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

# **<u>EXHIBIT D</u>**

*TOSHIB*                                    *32921-00*

Date: _AUGUST  2_, 19_95_          Vendor A/P No. _____
                                   Dept. No. _____

### VENDOR AGREEMENT (BASIC)

_TOSHBA AMERICA CONSUMER PRODUCTS, INC_____ ("Vendor")
and both The Price Company and Costco Wholesale Corporation (both
referred to as "PriceCostco") agree that:

A.   **Agreement Documents.**  All sales and deliveries of all products
     by Vendor to PriceCostco (or other purchaser under paragraph
     C below), and all purchase orders by PriceCostco to Vendor,
     will be covered by and subject to the terms of each of the
     following documents (collectively the "Agreement Documents"):

     •    This Vendor Agreement;

     •    The attached PriceCostco Standard Terms, as they may be
          amended from time to time ("Standard Terms"); and

     •    Each Vendor Purchase Program Agreement, Item Agreement
          and special program agreement (such as on warehouse
          displays, promotions or rebates) that has been or will be
          signed between us.

B.   **Inconsistency.**  The above Agreement Documents collectively are
     an agreement between us, are part of this Vendor Agreement and
     are incorporated herein by reference.   In case of any
     inconsistency between any Agreement Documents, the first such
     document in the above list will take priority over any
     document lower on the list.

C.   **Purchaser.**  Each purchase will be made in the trade name of
     "PriceCostco," but will be for the account of either The Price
     Company ("Price") or Costco Wholesale Corporation ("Costco")
     or both, or of affiliates or licensees that operate warehouse
     clubs and for whom Price and Costco act as purchasing agents.
     Price and Costco each hereby guaranty payment of each
     purchase, subject to the rights and liabilities under the
     Agreement Documents, irrespective of the entity for which the
     purchase is actually made hereunder.

D.   **Insurance.**  The insurance mentioned in the Standard Terms
     shall have minimum primary limits of $2,000,000 combined
     single limit, from an insurer approved by PriceCostco (Best's
     Rated B+, V or better).  Vendor will provide PriceCostco a
     Vendor's Endorsement to such insurance ~~specifically naming~~

-1-                                    Form A.4 (5/94)

## Document Submitted Under Seal

~~each of PriceCostco, Inc., Price and Costco as additional~~
~~insureds (1) within 30 days after executing this Agreement,~~
~~and (2) within 30 days following any change in the insurance.~~ *AC*

E.  **Disputes.** Disputes shall be resolved under paragraphs 20 and
21 of the Standard Terms.

F.  **Other Forms.** The Agreement Documents supersede all terms in
Vendor's invoices and other forms, and all prior oral or
written communications between us, for the matters covered in
the Agreement Documents. No party is entering into these
Agreement Documents in reliance on any oral or written
promises, representations or understandings other than those
in the Agreement Documents. The Agreement Documents can be
amended only in a writing signed by an authorized official of
each of us.


**THE PRICE COMPANY**
**COSTCO WHOLESALE CORPORATION**                    VENDOR:

By _____            By _____
         (Buyer)                                   (Authorized Signature)

By _____            _VICE PRESIDENT — SECRETARY_
         (GMM)                                   (Print Name and Title)


–2–                              Form A.4 (5/94)

## PriceCostco STANDARD TERMS

*(May 1994)*

These terms and conditions ("Standard Terms") apply to every shipment and sale of merchandise from Vendor either to The Price Company ("Price") or Costco Wholesale Corporation ("Costco") or affiliates or licensees for whom Price and Costco act as purchasing agents ("Affiliate Purchasers"), unless otherwise agreed in writing signed by Price and Costco and by Vendor. Each purchase will be made in the trade name of "PriceCostco," but will be for the account of either Price or Costco or both, or of one of the Affiliate Purchasers. The term "PriceCostco" as used below means Price, Costco and/or Affiliate Purchasers for which the purchase is being made.

1.  **MERCHANDISE.** "Merchandise" includes all goods described in any PriceCostco Purchase Order to Vendor and all packaging, instructions, warnings, warranties and other materials and services normally included with such merchandise. Packing (including pallets) shall comply with all requirements of the carrier and PriceCostco, and its cost is included in the Merchandise's price. Pallets must be standard #1 quality, 4 way entry (40" x 48") made of GMA hardwood. Double runners or stringers are not acceptable.

2.  **PURCHASE ORDERS.** Vendor may ship only against a ~~written~~ PriceCostco purchase order ("Purchase Order"). A Purchase Order shall be considered an acceptance of any offer to sell by Vendor. Also, shipment in response to a Purchase Order is acceptance of the Purchase Order and of these Standard Terms. Except as ordered in a written Purchase Order, projections, past purchasing history, and representations about quantities to be purchased are not binding and PriceCostco shall not be liable for any act or expenditure (including expenditures for materials or packaging) by Vendor in reliance on them.

3.  **P.O. & ITEM NUMBER.** Vendor shall mark all invoices, bills of lading, and packing lists to show legibly the complete PriceCostco Purchase Order and Item number(s) to which they relate.

4.  **DOCUMENTS.** Vendor shall comply with all billing, payment and document instructions in the PriceCostco Vendor Credit Information, as it may be revised from time to time. On the date any Merchandise is shipped, Vendor shall send to the "Bill To" address an original ~~bill of lading, a packing list showing the number and contents of each package and an invoice.~~ The actual scale weights or approved shipping weights, shall be shown on all bills of lading and other shipping documents.

5.  **PRICE CHANGES.** The prices on PriceCostco's Purchase Order are not subject to any increase or additional charges because of increased cost, any change in law or any other reason. Also,

Vendor will give PriceCostco 30 days advance written notice of any price change.

6.  **PAYMENT.** ~~Unless otherwise agreed in writing, PriceCostco shall not be obligated to pay any invoice until thirty days after delivery is completed under paragraph 7 below.~~

7.  **DELIVERY.** ~~Except as otherwise stated in the Purchase Order, sales are on a delivered basis and Vendor's delivery of the Merchandise will occur and risk of loss will pass only when and to the extent conforming Merchandise has been received at the PriceCostco warehouse or depot designated in the Purchase Order and a PriceCostco employee has signed the bill of lading or other shipping document acknowledging that receipt. This applies even if PriceCostco arranges carriage, designates the carrier and/or pays the freight. However, if the Purchase Order designates an FOB sale with delivery to an ocean port or carrier for ocean shipment, the terms of sale and delivery will be FOB Vessel Incoterms 1990. Vendor will be responsible for making all claims with the carrier for all losses or damages.~~

8.  **LATE SHIPMENT.** ~~PriceCostco may at any time cancel any shipment not actually received by PriceCostco by the "Ship To Arrive Date" shown on the applicable Purchase Order, without cost or further obligation to PriceCostco.~~ Vendor shall notify PriceCostco immediately if any shipment will not occur in time to arrive by ~~this~~ "Ship To Arrive Date". Vendor shall ship back orders and late shipments only to the extent authorized in writing by PriceCostco, ~~and only on a freight prepaid basis at Vendor's expense.~~

9.  **COMPLIANCE WITH LAWS.** Vendor warrants all Merchandise to be manufactured, processed, packaged, labeled, marked, tagged, tested, certified, weighed, inspected, shipped and sold in compliance with all applicable ~~federal~~, state, ~~provincial~~ and local laws and regulations, including *United States* by way of example all laws and regulations relating to health, safety, serial numbers, labelling and country of origin designation; all FDA, toxic substances, OSHA and EPA regulations; and the requirements of California Proposition 65. Vendor agrees to execute and furnish to PriceCostco, on request, all reasonable certifications, guaranties and other documents regarding compliance with such laws and regulations.

10.  **U.L.; CSA.** All electrical Merchandise must be approved by Underwriter's Laboratories, Inc. ~~(and CSA if to be resold in Canada)~~ and bear a certificate to that effect.

11.  **ABILITY TO SELL.** Vendor warrants and represents to PriceCostco that the Merchandise and its resale will not infringe any patent, trademark, copyright or other right; that the Merchandise is without defects and has adequate warnings and instructions; and that Vendor is not a party to any

CONFIDENTIAL

agreement or understanding, and that there is no other impediment or restriction, that prohibits or prevents Vendor from selling and delivering the Merchandise to PriceCostco or prohibits PriceCostco from reselling the Merchandise to its members.

12.   REJECTION.   PriceCostco at its option may, at any time, reject (or revoke acceptance of) and either return to the Vendor or hold at Vendor's risk and expense, any Merchandise, shipment or portion thereof that is non-conforming, or that is shipped contrary to PriceCostco's instructions, or that is in excess of the quantities covered by the Purchase Order, or that allegedly contains any defect or inadequate warnings or instructions, or allegedly violates any law, regulation, or court or administrative order, or allegedly infringes any patent, tradename, trademark, copyright or other right.   Payment of any invoice does not limit PriceCostco's right to reject or revoke acceptance. Vendor hereby assumes, and shall bear and pay, all risks and expenses of unpacking, examining, repacking, storing, holding and/or reshipping or returning any such Merchandise, and shall reimburse PriceCostco its net landed cost for such merchandise as shown on the books of PriceCostco.

13.   CUSTOMER RETURNS.   PriceCostco may reject or revoke acceptance of any Merchandise returned by PriceCostco's customers for any reason stated in 12 above.

14.   REFUND; OFFSETS.   PriceCostco may offset defective pallet charges and any rebates/incentive allowances owed it against amounts PriceCostco owes to Vendor, and may at the end of a season hold back against amounts owed a reasonable reserve for future claims.   At PriceCostco's option, Vendor shall grant a full refund to PriceCostco or, if PriceCostco so elects, a credit or replacement with respect to any shipment, Merchandise or portion thereof that PriceCostco rejects or revokes acceptance; and PriceCostco may offset any such amounts against amounts PriceCostco owes to Vendor.

15.   INDEMNITY.   Vendor shall defend, hold harmless and indemnify PriceCostco from and against any and all claims, actions, liabilities, losses, fines, penalties, costs and expenses (including attorneys' fees) arising out of:

(a)   Any actual or alleged infringement of any patent, trademark, copyright or other right relating to any Merchandise, or other breach of these Standard Terms,

(b)   Any actual or alleged death of or injury to any person, damage to any property, or any other damage or loss, by whomsoever suffered, claimed to result in whole or in part from any actual or alleged defect in such Merchandise, whether latent or patent, including any alleged failure to provide adequate warnings, labelling or instructions, or

(c)   Any actual or alleged violation of any law, statute or ordinance or any administrative order, rule or regulation relating to the Merchandise, or to its manufacture, shipment, labelling, use or sale, or any failure to provide an MSDS or certification, or

(d)   Any act, activity or omission of Vendor, including activities on PriceCostco premises and the use of any vehicle, equipment, fixture or material of Vendor in connection with any sale or service for PriceCostco.

These indemnities and obligations of Vendor shall not be affected or limited in any way by PriceCostco's extension of warranties to its customers, or by any approval, act or omission of PriceCostco. Vendor shall have no obligation to defend, hold harmless and indemnify PriceCostco for PriceCostco's sole negligence or intentional acts.

16.   INSURANCE.   Vendor shall obtain and maintain, at its expense, a policy or policies of general liability insurance and product liability insurance with respect to the Merchandise, with a vendor's endorsement naming each of PriceCostco, Inc., Price and Costco as additional insureds, in such amounts, with such companies and containing such other provisions as PriceCostco may reasonably require.   The coverage shall not be terminated without at least 30 days prior written notice to PriceCostco.

17.   RECALLS.   In the event Merchandise is the subject of a recall, Vendor shall be responsible for the recall and for all expenses and losses incurred by PriceCostco in recalling the merchandise and in shipping it to Vendor, including refunds to customers and PriceCostco's net landed cost of unsold Merchandise.

18.   TAXES.   PriceCostco's purchase is for resale unless PriceCostco states otherwise in writing Vendor's invoicing PriceCostco for any tax shall constitute a warranty that Vendor is duly registered with the taxing agency which levies the tax.   If Vendor does not remit the tax to the appropriate agency, or if a subsequent tax is assessed by the agency against PriceCostco, Vendor shall reimburse PriceCostco for all amounts of tax PriceCostco has remitted to Vendor on this and previous transactions and Vendor shall defend, indemnify and hold harmless PriceCostco against all losses, penalties, interest and expenses (including attorney fees).

19.   OTHER REMEDIES.   The exercise of any remedy herein shall be without prejudice to any other right or remedy available to either party.

20.   DISPUTES AND ARBITRATION.   All claims and disputes that (1) are between Vendor and PriceCostco and (2) arise out of or relate to these Standard Terms or any agreement between Vendor and PriceCostco or to their performance or breach (including any tort or statutory claim) ("Arbitrable

Claims"), shall be arbitrated under the Commercial Arbitration Rules of the American Arbitration Association ("AAA"), in English at Seattle, Washington, before one neutral arbitrator who may be a national of any party and who shall be a member of the AAA's Large Complex Case Panel. All documents and information relevant to the claim or dispute in the possession of any party shall be made available to the other party not later than sixty (60) days after the demand for arbitration is served, and the arbitrator may permit such depositions or other discovery deemed necessary for a fair hearing. The hearing may not exceed two days. The award shall be rendered within 120 days of the demand. The arbitrator may award interim and final injunctive relief and other remedies, but may not award punitive damages. No time limit herein is jurisdictional. Any award of the arbitrator (including awards of interim or final remedies) may be confirmed or enforced in any court having jurisdiction. Notwithstanding the above, PriceCostco or Vendor may bring court proceedings or claims against each other (i) solely as part of separate litigation commenced by an unrelated third party, or (ii) if not first sought from the arbitrator, solely to obtain in the state or federal courts in King County, Washington, temporary or preliminary injunctive relief or other interim remedies pending conclusion of the arbitration.

21. **VENUE; ATTORNEYS' FEES.** Vendor consents to the personal jurisdiction and venue of the federal and state courts in King County, Washington, for any court action or proceeding. The prevailing party in any arbitration or court action or proceeding shall be awarded its reasonable attorneys' fees.

22. **GOVERNING LAW.** These Standard Terms and all agreements between Vendor and PriceCostco shall be governed by and construed according to the laws of the state of Washington.

23. **SEVERABILITY.** If any provision of these Standard Terms or of any agreement between Vendor and PriceCostco is held invalid or unenforceable, it shall be so held to the minimum extent required by law and all other provisions shall remain valid and enforceable.

24. **BAR CODES.** Vendor shall place on all Merchandise sold to PriceCostco an accurate Universal Product Code ("UPC") that complies with the written PriceCostco Uniform Product Code Requirements, as amended from time to time. Vendor will promptly supply PriceCostco with its 12 digit manufacturer assigned UPC number. If Vendor does not place an accurate UPC on any Merchandise, PriceCostco will incur internal costs and may assess Vendor a reasonable handling charge.

25.. **CALIF. PROP. 65.** Vendor represents it is fully aware of, and agrees to comply with, California Proposition 65 (Calif. Health & Safety Code 25249.5-25249.12) and its implementing

regulations (22 Calif. Admin. Code § 601), including the following:

(1) The Merchandise must not contain chemicals known to the State of California to cause cancer or reproductive toxicity, or, if they do,

(2) The quantity of the chemical in question is in compliance with the Federal and California standards, or the Merchandise must carry a warning label that complies with California law.

Vendor shall provide PriceCostco a current MSDS meeting the requirements of OSHA regulations and California Admin. Code, Title 8, § 5194, or a statement from the manufacturer that no MSDS is legally required for the Merchandise.

26. **OZONE LAWS; LABELS.** Vendor represents and certifies that:

(1) No Merchandise contains any foam or other substances ("Banned Substances") banned under regulations adopted by the U.S. Environmental Protection Agency ("EPA"); and

(2) The Merchandise either (a) does not contain and/or are not manufactured with the use of any Class I or Class II Ozone-Depleting Chemicals ("ODCs"), or (b) is properly labelled in full compliance with EPA regulations and other applicable laws and regulations; and

(3) The Merchandise is otherwise labelled in full compliance with other federal, state, provincial, and local laws and regulations pertaining to product labelling.

*(United States)*

(*)

# EXHIBIT E

David J. Burman (admitted *pro hac vice*)
Cori G. Moore (admitted *pro hac vice*)
Noah G. Purcell (admitted *pro hac vice*)
Nicholas H. Hesterberg (admitted *pro hac vice*)
**PERKINS COIE LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone:     206.359.8000
Facsimile:     206.359.9000

Joren Bass, Bar No. 208143
JBass@perkinscoie.com
**PERKINS COIE LLP**
Four Embarcadero Center, Suite 2400
San Francisco, CA  94111-4131
Telephone:     415.344.7120
Facsimile:     415.344.7320

Attorneys for Plaintiff
Costco Wholesale Corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. 3:07-cv-05944-SC MDL No. 1917 |
| This document relates to: | Judge: Honorable Samuel Conti |
| Case No. C 11-6397 SC | Special Master: Hon. Charles A. Legge (Ret.) |
| COSTCO WHOLESALE CORPORATION, | **Costco's Opposition to Toshiba Defendants' Motion to Compel Arbitration** |
| Plaintiff, | Date: October 30, 2012 Time: 11:00 a.m. Before: Hon. Charles A. Legge, U.S. District Judge (Ret.), Special Master |
| v. | |
| HITACHI, LTD., et al., | |
| Defendants. | |

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 1

II.    FACTS ................................................................................................................................ 3

III.   ARGUMENT ...................................................................................................................... 3

     A.     Legal Standard .................................................................................................... 3

     B.     Costco's Claims Are Excluded from the Arbitration Clause ................................. 4

     C.     The Toshiba Defendants Who Never Signed Arbitration Agreements with
          Costco Cannot Compel Arbitration ...................................................................... 6

          1.     Costco Cannot Be Equitably Estopped from Litigating Against the
                 Non-Signatory Toshiba Defendants ........................................................... 6

          2.     Costco Cannot Be Required to Arbitrate Against the Non-Signatory
                 Toshiba Defendants Under an Agency Theory .......................................... 9

     D.     Costco Cannot Be Forced To Arbitrate with the Toshiba Defendants as to
          Purchases from Others ....................................................................................... 11

     E.     Before Costco May Be Forced to Arbitrate with Any Defendant, the Court
          Must Declare Any Waiver of Treble Damages Unenforceable in the
          Antitrust Context ............................................................................................... 13

     F.     Dismissal Is Unwarranted ................................................................................. 14

IV.   CONCLUSION ................................................................................................................ 15

# TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*Al-Safin v. Circuit City Stores, Inc.,*
394 F.3d 1254 (9th Cir. 2005) .......................................................................................... 14

*Am. Pipe & Constr. Co. v. Utah,*
414 U.S. 538 (1974) ........................................................................................................... 5

*Am. Soc. of Mechanical Engs., Inc. v. Hydrolevel Corp.,*
456 U.S. 556 (1982) ......................................................................................................... 13

*Amisil Holdings Ltd. v. Clarium Capital Mgmt.,*
622 F. Supp. 2d 825 (N.D. Cal. 2007) .................................................... 1, 9, 11, 15

*AT & T Techs., Inc. v. Commc'ns Workers of Am.,*
475 U.S. 643 (1986) ........................................................................................................... 5

*Bencharsky v. Cottman Transmission Sys., LLC,*
625 F. Supp. 2d 872 (N.D. Cal. 2008) .......................................................................... 14

*Booker v. Robert Half Int'l, Inc.,*
413 F.3d 77 (D.C. Cir. 2005) (Roberts, J.) .................................................................. 14

*Boyd v. Homes of Legend, Inc.,*
981 F. Supp. 1423 (M.D. Ala. 1997) ............................................................................ 10

*Bridas Sapic v. Gov't of Turkm.,*
345 F.3d 347 (5th Cir. 2003) .......................................................................................... 6

*Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.,*
622 F.3d 996 (9th Cir. 2010) .......................................................................................... 13

*Britton v. Co-op Banking Group,*
4 F.3d 742 (9th Cir. 1993) ....................................................................................... 10, 11

*Britton v. Co-op Banking Group,*
916 F.2d 1405 (9th Cir. 1990) ....................................................................................... 10

*Brown v. Gen. Steel Domestic Sales, LLC,*
2008 WL 2128057 (C.D. Cal. May 19, 2008) ............................................................. 10

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,*
429 U.S. 477 (1977) ......................................................................................................... 13

1

2

**TABLE OF AUTHORITIES**
**(continued)**

Page

3

4

*Chastain v. Union Sec. Life Ins. Co.*,
   502 F. Supp. 2d 1072 (C.D. Cal. 2007) ........................................................... 4, 7, 10

5

6

*Comer v. Micor, Inc.*,
   436 F.3d 1098 (9th Cir. 2006)........................................................................... 4, 6, 7

7

*Coors Brewing Co. v. Molson Breweries*,
   51 F.3d 1511 (10th Cir. 1995)............................................................................ 4, 12

8

9

*Crown, Cork & Seal Co. v. Parker*,
   462 U.S. 345 (1983) .................................................................................................. 5

10

11

*EEOC v. Waffle House, Inc.*,
   534 U.S. 279 (2002) ............................................................................................... 5, 6

12

*Fazio v. Lehman Bros.*,
   340 F.3d 386 (6th Cir. 2003)...................................................................................... 4

13

14

*First Options of Chicago, Inc. v. Kaplan*,
   514 U.S. 938 (1995) ............................................................................................. 2, 12

15

16

*Fujian Pacific Elec. Co. v. Bechtel Power Corp.*,
   2004 WL 2645974 (N.D. Cal. Nov. 19, 2004)........................................................ 8, 9

17

*Gaines v. Carrollton Tobacco Bd. of Trade, Inc.*,
   386 F.2d 757 (6th Cir. 1967).................................................................................... 14

18

19

*George Fischer Foundry Systems, Inc. v. Adolph H. Hottinger Maschinenbau GmbH*,
   55 F.3d 1206 (6th Cir. 1995).................................................................................... 14

20

21

*Graham Oil Co. v. ARCO Prods. Co.*,
   43 F.3d 1244 (9th Cir. 1994).................................................................................... 14

22

*Howsam v. Dean Witter Reynolds, Inc.*,
   537 U.S. 79 (2002) ..................................................................................................... 3

23

24

*In re Humana Inc. Managed Care Litig.*,
   285 F.3d 971 (11th Cir. 2002).............................................................................. 1, 7, 9

25

26

*In re TFT-LCD Antitrust Litig.*,
   M 07-1827 SI, 2011 WL 1753784 (N.D. Cal. May 9, 2011)............................... 4, 6, 8

27

*In re TFT-LCD Antitrust Litig.*,
   M 07-1827 SI, 2011 WL 2650689 (N.D. Cal. July 6, 2011) ................................... 15

28

**TABLE OF AUTHORITIES**
(continued)

Page

*In re TFT-LCD Antitrust Litig.*,
    M 07-1827 SI, 2011 WL 3353867 (N.D. Cal. Aug. 3, 2011) ........................................ 2, 11, 12

*In re TFT-LCD Antitrust Litig.*,
    M 07-1827 SI, 2011 WL 4017961 (N.D. Cal. Sept. 9, 2011) ......................................... passim

*Klay v. All Defendants*,
    389 F.3d 1191 ................................................................................................................. 7

*Kristian v. Comcast Corp.*,
    446 F.3d 25 (1st Cir. 2006) ......................................................................................... 2, 13, 14

*Letizia v. Prudential Bache Sec., Inc.*,
    802 F.2d 1185 (9th Cir. 1986) ......................................................................................... 11

*Maganallez v. Hilltop Lending Corp.*,
    505 F. Supp. 2d 594 (N.D. Cal. 2007) ............................................................................. 3

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
    473 U.S. 614 (1985) ..................................................................................................... 2, 14

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983) ......................................................................................................... 8, 14

*Mundi v. Union Sec. Life Ins. Co.*,
    555 F.3d 1042 (9th Cir. 2009) ......................................................................................... 1, 7

*PacifiCare Health Sys., Inc. v. Book*,
    538 U.S. 401 (2003) ......................................................................................................... 7

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
    388 U.S. 395 (1967) ......................................................................................................... 1

*Redel's Inc. v. General Elec. Co.*,
    498 F.2d 95 (5th Cir. 1974) ............................................................................................ 14

*Ross v. Am. Express Co.*,
    547 F.3d 137 (2d Cir. 2008) ......................................................................................... 4, 6, 8

*Santa Cruz Med. Clinic v. Dominican Santa Cruz Hosp.*,
    No. C93-20613, 1995 WL 232410 (N.D. Cal. Apr. 17, 1995) ................................................. 4

*Sokol Holdings, Inc. v. BMB Munai, Inc.*,
    542 F.3d 354 (2d Cir. 2008) ......................................................................................... 4, 6, 8, 9

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.,*
 130 S. Ct. 1758 (2010) ........................................................................................... 4, 6

*United States v. Neumann Caribbean Int'l, Ltd.,*
 750 F.2d 1422 (9th Cir. 1985).................................................................................. 15

*United Steelworkers v. Warrior & Gulf Navigation Co.,*
 363 U.S. 574 (1960)................................................................................................. 1, 4

*Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.,*
 489 U.S. 468 (1989)................................................................................................. 4, 6

*Wash. Mut. Fin. Grp., LLC v. Bailey,*
 364 F.3d 260 (5th Cir. 2004).................................................................................... 7

**FEDERAL STATUTES**

9 U.S.C. § 4 ................................................................................................................ 10, 13

# I.    INTRODUCTION AND SUMMARY OF ARGUMENT

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."  *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960).  Indeed, the purpose of the Federal Arbitration Act is "to make arbitration agreements as enforceable as other contracts, *but not more so*."  *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n.12 (1967) (emphasis added).  Yet a close reading of Costco's contract with Toshiba America Consumer Products (TACP) shows that this dispute is not one the parties agreed to arbitrate.  Recognizing that the benefits of arbitration largely disappear when a third party has commenced related litigation that will continue in any event, the contract says that Costco and its vendors "may bring court proceedings or claims against each other . . . as part of separate litigation commenced by an unrelated third party."  Toshiba MTC Exh. A ¶20.  That is what has happened here.  This case was commenced by third parties unrelated to Costco—the class representatives—and Costco now brings claims against TACP as part of that multi-district proceeding, as allowed by the contract.

Even if Costco's contract with TACP governed its claim against TACP here, it would not cover Costco's claims against the other Toshiba Defendants.  The Toshiba Defendants argue that Costco must arbitrate against all of them based on equitable estoppel and agency.  But both theories allow a non-signatory to compel arbitration only where the plaintiff's claim turns on the underlying contract containing the arbitration clause.  *See, e.g.*, *In re Humana Inc. Managed Care Litig.*, 285 F.3d 971, 976 (11th Cir. 2002) ("The plaintiff's actual dependance on the underlying contract in making out the claim against the nonsignatory defendant is . . . always the *sine qua non* of an appropriate situation for applying equitable estoppel."), *rev'd on other grounds sub nom. PacifiCare Health Sys., Inc. v. Book*, 538 U.S. 401 (2003); *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1047 (9th Cir. 2009) (refusing to apply equitable estoppel to force a plaintiff to arbitrate with a non-signatory defendant where "[t]he resolution of [the plaintiff's] claim does not require the examination of any provisions of the [agreement]"); *Amisil Holdings Ltd. v. Clarium Capital Mgmt.*, 622 F. Supp. 2d 825, 832 (N.D. Cal. 2007) (applying the same rule as to

agency).  Because Costco's claim against the Toshiba Defendants does not turn in any way on its contract with TACP, these theories are inapplicable.

Moreover, even if Costco had agreed to arbitrate as to its purchases of CRT products from all of the Toshiba Defendants, it most certainly did not agree to arbitrate as to its purchases from others.  "[A]rbitration . . . is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration."  *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995).  Therefore, even if the Court concludes that Costco must arbitrate with the Toshiba Defendants as to its purchases from them, the Court should—like the LCD MDL Court—hold that to the extent Costco's claim against them is based on purchases from other vendors (i.e., Costco's claim for joint and several liability and its indirect purchaser claims), its claims remain in the MDL.  *See In re TFT-LCD Antitrust Litig.* ("*In re TFT-LCD*"), M 07-1827 SI, Dkt. 6622 at 1-2 (N.D. Cal. Sept. 5, 2012) ("[T]he Court agrees with Nokia that it may proceed with its claims against AUO for joint and several liability."); *In re TFT-LCD*,  M 07-1827 SI, Dkt. 4526 at 2 (N.D. Cal. Jan. 10, 2012) ("Jaco's claims are arbitrable [only] to the extent they are based upon purchases it made directly from NEC."); *In re TFT-LCD*, M 07-1827 SI, 2011 WL 3353867, at *3 (N.D. Cal. Aug. 3, 2011) (Dkt. 3213) (sending Dell's claims against AU Optronics to arbitration "[t]o the extent Dell's claims are based upon purchases made under the" contract containing the arbitration clause).  And because at least part of Costco's claim against the Toshiba Defendants should remain in the MDL, it would be improper to dismiss entirely Costco's claim against them.

Finally, if the Court decides to order Costco to arbitrate, precedent requires that the statutory remedy of treble damages remain available.  *See, e.g.*, *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 n.19 (1985) (stating that if a contractual agreement had operated "as a prospective waiver of a party's right to pursue statutory remedies for antitrust violations, we would have little hesitation in condemning the agreement as against public policy"); *Kristian v. Comcast Corp.*, 446 F.3d 25, 47-48 (1st Cir. 2006) ("[T]he award of treble damages under the federal antitrust statutes cannot be waived.").  Therefore, the Court should—again like the MDL Court—hold that Costco must be allowed to pursue treble damages in this

antitrust proceeding. *See In re TFT-LCD*, M 07-1827 SI, 2011 WL 4017961, at *6 (N.D. Cal. Sept. 9, 2011) (agreeing that "a party may not waive its right to treble damages in the antitrust context through a contractual limitation on recoverable damages").

## II.     FACTS

Costco expects its vendors to enter a "Basic Vendor Agreement." Toshiba Motion Exh. A. The Basic Vendor Agreement incorporates Costco's Standard Terms by reference. *Id.* ¶ 6. After making extensive changes to both the vendor agreement and standard terms, Toshiba America Consumer Products signed such an agreement with Costco in 1995. *Id.* TACP apparently believes that because it and Costco entered a customized Vendor Agreement and Standard Terms at that time, the post-1995 changes to the Standard Terms (in 1997, 2000, and 2004) do not apply to it. Costco does not necessarily agree but does not contest that position for purposes of this motion.

All iterations of the Standard Terms provide for a quick arbitration process and exclude from arbitration situations where "Costco Wholesale or Vendor . . . bring[s] court proceedings or claims against each other (i) solely as part of separate litigation commenced by an unrelated third party." *Id.* ¶ 20. Early versions of the standard terms barred "punitive damages" in most arbitrations, *id.*, while more recent versions forbid "punitive, exemplary, treble, or other enhanced damages," but specify that "[t]he limitations on remedies . . . may be deemed inoperative to the extent necessary to preserve the enforceability of the agreement to arbitrate." *In re TFT-LCD*, 2011 WL 4017961, at *6.

## III.     ARGUMENT

### A.     Legal Standard

"A party seeking to compel arbitration bears the burden of proving the existence of a valid and enforceable arbitration agreement." *Maganallez v. Hilltop Lending Corp.*, 505 F. Supp. 2d 594, 599-600 (N.D. Cal. 2007). It is up to the Court to decide whether Costco must arbitrate with Toshiba Defendants who have no arbitration agreement with Costco. *See, e.g.*, *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) ("[A] gateway dispute about whether the parties are bound by a given arbitration clause raises a 'question of arbitrability' for a court to decide.");

*Comer v. Micor, Inc.*, 436 F.3d 1098 (9th Cir. 2006) (deciding question of non-signatory enforcement); *Chastain v. Union Sec. Life Ins. Co.*, 502 F. Supp. 2d 1072, 1076 (C.D. Cal. 2007) ("Defendant has cited no case in which the question of non-signatory enforcement was submitted to the arbitrator."). In deciding "whether a particular party is bound by [an] arbitration agreement . . . , the liberal federal policy regarding the scope of arbitrable issues is inapposite." *Comer*, 436 F.3d at 1104 n.11. Instead, "a nonsignatory defendant faces a heavy burden to show that the signatory plaintiff intended to submit to arbitration, notwithstanding the absence of a formal agreement." *In re TFT-LCD*, 2011 WL 1753784, at *5 (N.D. Cal. May 9, 2011) (citing *Sokol Holdings, Inc. v. BMB Munai, Inc.*, 542 F.3d 354 (2d Cir. 2008), and *Ross v. Am. Express Co.*, 547 F.3d 137 (2d Cir. 2008)).

**B.    Costco's Claims Are Excluded from the Arbitration Clause**

Costco's claims in this case do not turn in any way on interpreting or enforcing its vendor agreement with TACP. That is a strong indication that Costco's claim is not subject to arbitration. *See, e.g.*, *Fazio v. Lehman Bros.*, 340 F.3d 386, 395 (6th Cir. 2003) ("A proper method of analysis here is to ask if an action could be maintained without reference to the contract or relationship at issue. If it could, it is likely outside the scope of the arbitration agreement."); *Coors Brewing Co. v. Molson Breweries*, 51 F.3d 1511, 1516 (10th Cir. 1995) ("A dispute within the scope of the contract is still a condition precedent to the involuntary arbitration of antitrust claims."); *Santa Cruz Med. Clinic v. Dominican Santa Cruz Hosp.*, No. C93-20613, 1995 WL 232410, at *3 (N.D. Cal. Apr. 17, 1995) (denying motion to compel and saying the "claims are not arbitrable because no language in the contracts . . . needs to be interpreted in order to evaluate the merits of plaintiffs' antitrust claims").

Recognizing this, the Toshiba Defendants pack their brief with references to the federal policy favoring arbitration, but they ignore that "the central or 'primary' purpose of the [Federal Arbitration Act (FAA)] is to ensure that 'private agreements to arbitrate are enforced *according to their terms*.'" *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 130 S. Ct. 1758, 1773 (2010) (quoting *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 479 (1989)) (emphasis added). *See also United Steelworkers*, 363 U.S. at 582 ("[A]rbitration is a

matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."); *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (same). Thus, "it is the language of the contract," not some federal policy, "that defines the scope of disputes subject to arbitration." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002).

Here, the contract between Costco and TACP provides for quick and inexpensive arbitration for typical vendor disputes, but it excludes claims relating to "separate litigation commenced by an unrelated third party." Motion Exh. A ¶ 20. This provision recognizes that where such related litigation is not subject to arbitration and will proceed no matter what, the benefits of arbitration are largely lost. For that reason, the arbitration provision allows related claims to proceed in court. Here, in fact, the Court's active coordination of closely related cases likely makes arbitration less efficient than proceeding in court.

Costco's claim falls under the contractual exclusion. Costco had no role in the class representatives commencing this claim, and those proceedings will continue—and will involve both Costco and TACP—regardless of whether Costco arbitrates with TACP.

The Toshiba Defendants will argue that Costco's claim ceased being "part of separate litigation commenced by an unrelated third party" when Costco opted out of the direct purchaser class and filed its complaint, as the LCD MDL Court held. *In re TFT-LCD*, 2011 WL 4017961, at *4. But that argument overlooks the purpose of the provision in question and the nature of class actions. Costco's claim against the Toshiba Defendants "commenced" at the time the direct purchaser class representatives filed their claims and sought to represent Costco's interests. That is why, for example, the statute of limitations for Costco's claims was tolled as soon as the class action suit was filed. *See, e.g.*, *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 353 (1983) ("[C]ommencement of a class action suspends the applicable statute of limitations as to all asserted members of the class.") (quoting *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554 (1974)). Once the class action commenced, there was no way for the arbitration clause to protect either Costco or TACP from the burdens of litigation, which is why the clause excludes claims

like this one.  Indeed, both Costco and TACP will remain in the MDL proceeding with other parties regardless of the Court's ruling on this motion.

In short, the arbitration agreement should be "'enforced according to [its] terms,'" *Stolt-Nielsen*, 130 S. Ct. at 1773 (quoting *Volt*, 489 U.S. at 479), and those terms do not compel arbitration here.

## C.   The Toshiba Defendants Who Never Signed Arbitration Agreements with Costco Cannot Compel Arbitration

Four of the five Toshiba Defendants admit that they have no arbitration agreement with Costco, and even if the Court were to grant the motion as to TACP, it should deny the motion as to these other Toshiba Defendants.  Costco never agreed to arbitrate with these non-signatory Defendants, and "nothing in the [FAA] authorizes a court to compel arbitration . . . by any parties[] that are not . . . covered in the agreement." *Waffle House*, 534 U.S. at 289.  The non-signatory Defendants nonetheless assert that Costco must arbitrate with them.  Though their theory is unclear, they appear to invoke equitable estoppel and agency.[1]  Neither applies here.

In deciding "whether a particular party is bound by [an] arbitration agreement . . . , the liberal federal policy regarding the scope of arbitrable issues is inapposite." *Comer*, 436 F.3d at 1104 n.11.  Instead, "a nonsignatory defendant faces a heavy burden to show that the signatory plaintiff intended to submit to arbitration, notwithstanding the absence of a formal agreement." *In re TFT-LCD*, 2011 WL 1753784, at *5 (citing *Sokol Holdings*, 542 F.3d 354, and *Ross*, 547 F.3d 137); *see also Bridas Sapic v. Gov't of Turkm.*, 345 F.3d 347, 362 (5th Cir. 2003) ("Parties are presumed to be contracting for themselves only.").

### 1.   Costco Cannot Be Equitably Estopped from Litigating Against the Non-Signatory Toshiba Defendants

The non-signatory Toshiba Defendants have not established and cannot establish that Costco must arbitrate with them based on equitable estoppel.  As its name suggests, equitable estoppel is an equitable doctrine whose purpose is to "'preclude[] a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract

---

[1] The Toshiba Defendants never mention any other theory as to why Costco must arbitrate with them and should not be allowed to raise new theories in their reply.

imposes.'" *Comer*, 436 F.3d at 1101 (quoting *Wash. Mut. Fin. Grp., LLC v. Bailey*, 364 F.3d 260, 267 (5th Cir. 2004)). *See also Chastain*, 502 F. Supp. 2d at 1078 ("The purpose of estoppel is to prevent a plaintiff from availing himself of the favorable parts of a contract while disavowing the unfavorable parts—here, the arbitration clause.").

> In all cases, the lynchpin for equitable estoppel is equity, and the point of applying it to compel arbitration is to prevent a situation that would fly in the face of fairness. The purpose of the doctrine is to prevent a plaintiff from . . . relying on the contract when it works to his advantage by establishing the claim, and repudiating it when it works to his disadvantage by requiring arbitration.

*Humana*, 285 F.3d at 976 (internal citations and quotation marks omitted).[2] This basic purpose does not apply here, and neither does the doctrine.

Costco's complaint does not in any way "'claim[] the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes.'" *Comer*, 436 F.3d at 1101 (quoting *Wash. Mut.*, 364 F.3d at 267). Costco has not asserted breach of contract, and its complaint never even mentions any contract, much less relies on one. The reason is not that Costco sought to avoid arbitration; it is that Costco's claim does not depend on its contracts in the slightest. The contracts are at most incidental, and no question is raised as to their performance.

This alone should suffice to reject the non-signatory Toshiba Defendants' invocation of equitable estoppel, for "[t]he plaintiff's actual dependance on the underlying contract in making out the claim against the nonsignatory defendant is . . . always the *sine qua non* of an appropriate situation for applying equitable estoppel." *Humana*, 285 F.3d at 976. *See also Mundi*, 555 F.3d at 1047 (refusing to apply equitable estoppel to force a plaintiff to arbitrate with a non-signatory defendant where "[t]he resolution of [the plaintiff's] claim does not require the examination of any provisions of the [agreement]"); *Chastain*, 502 F. Supp. 2d at 1080 (finding that "equitable considerations do[] not compel arbitration" because "Plaintiff has done nothing to rely on or invoke the terms of the cardmember agreement, while attempting to avoid arbitration of those

---

[2] In *PacifiCare Health Sys., Inc. v. Book*, 538 U.S. 401 (2003), the Supreme Court reversed the result in *Humana* but addressed only the unrelated question of whether a court could invalidate an arbitration agreement when it was unclear whether the agreement barred damages required by statute. For that reason, all other aspects of the Eleventh Circuit's ruling in *Humana*, including its equitable estoppel analysis, are still good law. *See, e.g.*, *Klay v. All Defendants*, 389 F.3d 1191, 1195-96 & n.3, 1998-99 & nn.5, 6 (11th Cir. 2004).

claims," and "there simply is no reason in equity to estop Plaintiff from disclaiming the arbitration clause in an agreement that he has otherwise not invoked").

The non-signatory Toshiba Defendants' argument ignores another basic principle about equitable estoppel. "Estoppel does not apply unless 'the totality of the evidence supports an objective intention to agree to arbitrate.'" *In re TFT-LCD*, 2011 WL 1753784, at *5 (quoting *Ross*, 547 F.3d at 148). Thus, "there is a 'black letter rule that the obligation to arbitrate depends on consent,' and cases that rely on estoppel to compel arbitration with nonsignatories 'simply extend its contours somewhat by establishing that the consent need not always be expressed in a formal contract made with the party demanding arbitration.'" *Id.* (quoting *Sokol Holdings*, 542 F.3d at 361-62). For that reason, "a nonsignatory defendant faces a heavy burden to show that the signatory plaintiff intended to submit to arbitration, notwithstanding the absence of a formal agreement," and "must present . . . evidence sufficient to demonstrate such intent." *Id.* Here, however, the non-signatory Toshiba Defendants provide no evidence that Costco consented to arbitrate with them.

Ignoring both the purpose and basic requirements of the equitable estoppel doctrine, the non-signatory Toshiba Defendants seek to invoke the doctrine merely because Costco alleges that they conspired with TACP and other defendants in fixing the prices of CRT products. But it cannot be that any time a plaintiff alleges an antitrust conspiracy that includes a signatory it must arbitrate with all the conspirators. *See, e.g.*, *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 (1983) (holding that, despite allegations of joint misconduct on the part of a signatory and non-signatory defendant, the non-signatory defendant could not be forced into arbitration because "federal law *requires* piecemeal resolution when necessary to give effect to an arbitration agreement"). A plaintiff need not even sue all of the conspirators, or the one with the contract, to obtain a complete remedy. And while contractual provisions can be part of some antitrust violations (e.g., exclusive dealing), that is not the case here.

Indeed, the cases the Toshiba Defendants cite do not support their argument. The Toshiba Defendants lead with out-of-context dicta from the unpublished opinion in *Fujian Pacific Elec. Co. v. Bechtel Power Corp.*, 2004 WL 2645974 (N.D. Cal. Nov. 19, 2004). They claim *Fujian*

means that "a Plaintiff is estopped from refusing to arbitrate with a corporate family member alleged to be liable for overcharges incurred on an affiliate's contract." Motion at 10. But the part of *Fujian* that Toshiba cites is not the holding, it is a summary of another court's decision. *Fujian*'s actual holding was simply that equitable estoppel applied because the plaintiff's claim against the non-signatory relied on the contract containing the arbitration clause. 2004 WL 2645974, at *6 (explaining that the plaintiff "ask[ed] the court to determine whether [the signatories'] duties have been breached in order to establish [the non-signatory's] liability"). As already explained, that is not the case here.

The Toshiba Defendants also cite *Amisil*, 622 F. Supp. 2d 825, but there the court applied equitable estoppel only because, "[a]bsent the Operating Agreement, none of [Amisil's] claims would lie. Amisil cannot use the Agreement as a sword and at the same time choose to ignore it as a shield." *Id.* at 841. Here, of course, Costco's claim would lie even if it had no contract with TACP.

Finally, in citing cases from other circuits, the Toshiba Defendants fail to mention that those circuits have also applied the rule that a non-signatory can only compel arbitration where the plaintiff's claims rely on the contract. *See, e.g.*, *Sokol Holdings*, 542 F.3d at 361 ("It was, of course, essential in all of these cases that the subject matter of the dispute was intertwined with the contract providing for arbitration."); *Humana*, 285 F.3d at 976 ("The plaintiff's actual dependance on the underlying contract in making out the claim against the nonsignatory defendant is therefore always the *sine qua non* of an appropriate situation for applying equitable estoppel."). As noted, however, the "sine qua non" of equitable estoppel is not present here, and the Toshiba Defendants cannot—try as they might—bootstrap their way into that doctrine simply by pointing to their conspiracy.

### 2. Costco Cannot Be Required to Arbitrate Against the Non-Signatory Toshiba Defendants Under an Agency Theory

The non-signatory Toshiba Defendants seem to think they can demand arbitration because Costco alleges that they worked with TACP in carrying out the conspiracy. That is not the law.

To begin with, a plaintiff's allegations are not enough to establish an agency relationship sufficient to invoke the agency doctrine; instead, defendants must actually prove that the non-signatory Toshiba Defendants were agents of TACP. *See, e.g.*, *Britton v. Co-op Banking Group*, 916 F.2d 1405, 1414 (9th Cir. 1990) ("remand[ing] the case to the district court for further determination and fact-finding as to whether the" non-signatory seeking to invoke the arbitration clause was actually an agent of the signatory); *Chastain*, 502 F. Supp. 2d at 1075 ("The trial court sits as a trier of fact, weighing all the declarations and other evidence to reach a final determination" on "the question of whether a nonsignatory to an arbitration agreement can compel a signatory to submit to arbitration."); *Brown v. Gen. Steel Domestic Sales, LLC*, 2008 WL 2128057, at *7 & n.45 (C.D. Cal. May 19, 2008) (denying the non-signatory defendants' motion to compel arbitration where "[t]he non-signatory defendants make no argument that they are in fact agents of [the signatory defendant]" but instead "rely exclusively on the allegations in the [plaintiffs'] complaint"); 9 U.S.C. § 4 (requiring court or jury trial of facts upon which applicability of arbitration provision depends). But the non-signatory Toshiba Defendants never even claim to have been agents of TACP.

Even if a plaintiff's allegations were enough to invoke the agency doctrine, Costco alleges only that Defendants acted as "the principal, agent, or joint venturer of, or for, other Defendants *with respect to the acts, violations, and course of conduct alleged by Costco*." Complaint ¶ 55 (emphasis added). This alleges an agency relationship only with respect to the defendants' illegal conduct, *not* a general principal-agent relationship or even a principal-agent relationship in carrying out the vendor agreements, which is what the non-signatory Toshiba Defendants must prove. *See, e.g.*, *Britton v. Co-op Banking Group*, 4 F.3d 742, 747 (9th Cir. 1993) (applying the agency test only after finding that the non-signatory "was an agent, officer and employee of [the signatory defendant]"); *Boyd v. Homes of Legend, Inc.*, 981 F. Supp. 1423, 1432 (M.D. Ala. 1997) (finding the agency theory inapplicable because "there is no basis here to conclude that an agency relationship exists between the [non-signatory defendant] and the [signatory defendant]"), *rev'd on other grounds*, 188 F.3d 1294 (11th Cir. 1999).

Moreover, the Toshiba Defendants' argument relies on the notion that Toshiba Corp. and Toshiba America (non-signatories) are agents of their subsidiary, TACP (a signatory). It would be a rare company if the parent corporation were really the agent of its subsidiaries, rather than the other way around, and the Toshiba Defendants do not allege, much less prove, that they were exceptions to the rule.

Finally, even if the Court were to find that some of the non-signatory Toshiba Defendants were agents of TACP, that would only begin the inquiry. Agents of a signatory can compel the plaintiff to arbitrate only if "the claims against the agents arise out of or relate to the contract containing the arbitration clause." *Amisil*, 622 F. Supp. 2d at 832 (citing *Britton*, 4 F.3d at 743, and *Letizia v. Prudential Bache Sec., Inc.*, 802 F.2d 1185, 1186 (9th Cir. 1986)). Here, however, Costco's allegations against the Toshiba Defendants do not turn in any way on its contract with TACP. *See, e.g.*, *Britton*, 4 F.3d at 748 (concluding that the non-signatory defendant's alleged wrongdoing did not relate to or arise out of the contract containing the arbitration clause because "[t]he sum and substance of [the plaintiffs'] allegations are that [the non-signatory defendant] . . . [committed] independent acts of fraud, unrelated to any provision or interpretation of the contract"). Thus, the agency doctrine is inapplicable here for several reasons.

**D.** **Costco Cannot Be Forced To Arbitrate with the Toshiba Defendants as to Purchases from Others**

Even if the Court concludes that Costco must arbitrate some claims with the Toshiba Defendants, Costco cannot be forced to arbitrate its claims based on purchases from others. As Judge Illston has repeatedly held in the LCD MDL, an "arbitration clause is necessarily limited to disputes arising out of the business relationship between" the parties. *In re TFT-LCD*, M 07-1827 SI, Dkt. 4526 at 2; *In re TFT-LCD*, M 07-1827 SI, 2011 WL 3353867, at *3 (sending Dell's claims against AU Optronics to arbitration "[t]o the extent Dell's claims are based upon purchases made under the" contract containing the arbitration clause). Yet a significant part of Costco's claim against the Toshiba Defendants does not arise out of Costco's business relationship with TACP.

Specifically, Costco's claims against the Toshiba Defendants based on its indirect purchases of products containing CRTs manufactured by the Toshiba Defendants would exist even if Costco had no business relationship (or contract) with TACP. And Costco's claim against the Toshiba Defendants for joint and several liability based on "direct purchase" damage caused by other Defendants also would exist even if Costco had no relationship (or contract) with TACP. Thus, as Judge Illston has repeatedly held, these claims are not subject to arbitration. *See In re TFT-LCD*, M 07-1827 SI, Dkt. 6622 at 1-2 (holding that despite presence of enforceable arbitration clause between AUO and Nokia, Nokia could "proceed with its claims against AUO for joint and several liability"); *In re TFT-LCD*, M 07-1827 SI, Dkt. 4526 at 2 ("Jaco's claims are arbitrable to the extent they are based upon purchases it made directly from NEC; to the extent Jaco's claims against NEC are based on coconspirator liability for purchases Jaco made from other defendants, such claims are not subject to arbitration."); *In re TFT-LCD*, M 07-1827 SI, 2011 WL 3353867, at *3 (sending Dell's claims against AU Optronics to arbitration only "[t]o the extent Dell's claims are based upon purchases made under the" contract containing the arbitration clause); *see also Coors Brewing*, 51 F.3d at 1516 (holding that "[a] dispute within the scope of the contract is still a condition precedent to the involuntary arbitration of antitrust claims," and arbitration is not required as to disputes where "it is simply fortuitous that the parties happened to have a contractual relationship").

In the LCD case, interpreting this same Vendor Agreement with TACP, Judge Illston ordered Costco to arbitrate its claims with TACP and certain other vendors only "to the extent Costco's claims against [those vendors] stem from purchases made pursuant to the vendor agreements." *In re TFT-LCD*, 2011 WL 4017961, at *6. Costco then chose to consolidate its claims against those vendors entirely in arbitration, rather than pursuing them partially in the MDL. But Costco must be allowed to make that choice; the Federal Arbitration Act cannot justify forcing Costco to arbitrate claims it never agreed to arbitrate with parties it never agreed to arbitrate with. *See Kaplan*, 514 U.S. at 943 ("[A]rbitration . . . is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration.").

**E.  Before Costco May Be Forced to Arbitrate with Any Defendant, the Court Must Declare Any Waiver of Treble Damages Unenforceable in the Antitrust Context**

Even if the Court concludes that Costco's claims against TACP or other Toshiba Defendants are otherwise subject to arbitration, it may compel arbitration only if it first declares any purported waiver of treble damages unenforceable in the antitrust context.[3]  As noted above, the Toshiba Defendants invoke only the 1994 version of Costco's Standard Terms.  That agreement forbade any award of "punitive damages" but did not specifically mention treble damages.  Toshiba Motion Exh. A ¶20.  This provision would not bar an arbitrator from awarding the treble damages required by the Sherman Act because treble damages in antitrust cases are not punitive.  *See, e.g.*, *Am. Soc. of Mechanical Engs., Inc. v. Hydrolevel Corp.*, 456 U.S. 556, 575 (1982) (finding that "the antitrust private action was created primarily as a remedy for the victims of antitrust violations," and "[t]reble damages 'make the remedy meaningful by counter-balancing the difficulty of maintaining a private suit' under the antitrust laws") (quoting *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 486 n.10 (1977)); *Brunswick*, 429 U.S. at 485-86 ("Section 4 . . . is in essence a remedial provision," and "the treble-damages provision, which makes awards available only to injured parties, and measures the awards by a multiple of the injury actually proved, is designed primarily as a remedy.").

The Toshiba Defendants might belatedly seek to invoke the 2004 version of Costco's Standard Terms in their reply brief.  That version forbids "punitive, exemplary, treble, or other enhanced damages," but specifies that "[t]he limitations on remedies . . . may be deemed inoperative to the extent necessary to preserve the enforceability of the agreement to arbitrate."  *In re TFT-LCD*, 2011 WL 4017961, at *6.  Though this limitation would be enforceable in many types of disputes, such as contract claims, if the Toshiba Defendants believe it governs any part of their claim here, the Court must declare it unenforceable in this context, where treble damages are remedial and required by statute.  Countless courts have held that "the award of treble damages

---

[3] This is a question for the Court, not the arbitrator.  *See Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1000 (9th Cir. 2010) ("[W]hen a plaintiff argues that an arbitration clause, standing alone, is unenforceable—for reasons independent of the remainder of the contract might be invalid—that is a question to be decided by the court."); *Kristian v. Comcast Corp.*, 446 F.3d 25, 47-48 (1st Cir. 2006) (holding that question whether provision barring treble damages was enforceable in an antitrust case was "a question of arbitrability" to be resolved by the Court and that the provision was unenforceable and had to be severed).

Costco's Opposition to Toshiba's Motion to Compel Arbitration

under the federal antitrust statutes cannot be waived." *Kristian v. Comcast Corp.*, 446 F.3d 25, 47-48 (1st Cir. 2006).[4] That is why the LCD MDL Court held "that the arbitration clause's limitation on treble damages is unenforceable" as to an antitrust claim. *In re TFT-LCD*, 2011 WL 4017961, at *6. This Court should do the same to the extent the Toshiba Defendants invoke the 2004 version of the Standard Terms.

## F. Dismissal Is Unwarranted

If the Court concludes that any part of Costco's claim against any of the Toshiba Defendants is not subject to arbitration, then dismissal of those claims would obviously be inappropriate. *See Moses H. Cone*, 460 U.S. at 20 (holding that "federal law *requires* piecemeal resolution when necessary to give effect to an arbitration agreement"). Moreover, if that occurs, the Court should not stay Costco's claims against Toshiba in the MDL, but rather should allow Costco's remaining claims against any Toshiba Defendants to proceed on the same track as do those of other plaintiffs. This is the approach Judge Illston took in the LCD MDL, and it was an eminently sensible one. As she explained, because the "defendants' extensive involvement in the class and direct-purchaser actions," would continue regardless, "the Court finds that a stay will have little benefit." *In re TFT-LCD*, 2011 WL 4017961, at *7. *See also Moses H. Cone*, 460 U.S. at 20 n.23 (noting that the decision whether "to stay litigation among the non-arbitrating

---

[4] *See, e.g.*, *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628, 637 n.19 (1985) (stating that if a contractual provision operated "as a prospective waiver of a party's right to pursue statutory remedies for antitrust violations, we would have little hesitation in condemning the agreement as against public policy"); *George Fischer Foundry Systems, Inc. v. Adolph H. Hottinger Maschinenbau GmbH*, 55 F.3d 1206, 1210 (6th Cir. 1995) ("[I]f any part of a contract . . . waives a party's right to collect damages for antitrust violations, the provision is void for public policy reasons."); *Redel's Inc. v. General Elec. Co.*, 498 F.2d 95, 99 (5th Cir. 1974) ("Releases may not be executed which absolve a party from liability for future violations of our antitrust laws."); *Gaines v. Carrollton Tobacco Bd. of Trade, Inc.*, 386 F.2d 757, 759 (6th Cir. 1967) ("[I]t seems clear as a matter of law that . . . an agreement, if executed in a fashion calculated to waive damages arising from future violations of the antitrust laws, would be invalid on public policy grounds."). *See also, e.g.*, *Booker v. Robert Half Int'l, Inc.*, 413 F.3d 77, 79 (D.C. Cir. 2005) (Roberts, J.) ("Statutory claims may be subject to agreements to arbitrate, so long as the agreement does not require the claimant to forgo substantive rights afforded under the statute."); *Al-Safin v. Circuit City Stores, Inc.*, 394 F.3d 1254, 1261 (9th Cir. 2005) (holding that an arbitration agreement violates the *Mitsubishi* rule if "it limits the remedies that would otherwise be available in a judicial forum"); *Graham Oil Co. v. ARCO Prods. Co.*, 43 F.3d 1244, 1247-48 (9th Cir. 1994) (holding arbitration clause unenforceable because it "compels Graham Oil to surrender important statutorily-mandated rights," including exemplary damages); *Bencharsky v. Cottman Transmission Sys., LLC*, 625 F. Supp. 2d 872, 882 (N.D. Cal. 2008) ("[A]n arbitration agreement cannot be made to serve as a vehicle for the waiver of statutory rights.").

parties pending the outcome of the arbitration" "is one left to the district court . . . as a matter of its discretion").[5]

## IV.    CONCLUSION

The Toshiba Defendants argue that because of a contract Costco never cited or relied upon in bringing its claim, Costco must arbitrate its claims with all of them.  But the contract, by its terms, is inapplicable in a case that developed out of an action by a third party and that remains part of the same MDL.  Moreover, there is simply no basis for forcing Costco to arbitrate with Toshiba entities with whom it never consented to arbitrate.  Costco respectfully asks that the Court deny Toshiba's Motion to Compel Arbitration in its entirety.  If the Court believes any claims are subject to arbitration, they should be limited to Costco's direct purchaser claims against TACP, and the Court must first invalidate the treble damages waiver in this context to the extent the Toshiba Defendants plan to cite it in arbitration.  Finally, the Court should decline Toshiba's invitation to dismiss Costco's claims against the Toshiba Defendants.

---

[5] *See also In re TFT-LCD*, 2011 WL 2650689, at *9 (N.D. Cal. July 6, 2011) ("It is within the Court's discretion to stay all or part of the litigation associated with the dispute between Nokia and AUO.") (citing *United States v. Neumann Caribbean Int'l, Ltd.*, 750 F.2d 1422, 1427 (9th Cir. 1985)); *Amisil*, 622 F. Supp. 2d at 842 ("[I]t may be advisable to stay litigation among the nonarbitrating parties pending the outcome of the arbitration. That decision is one left to the district court . . . as a matter of its discretion to control its docket.") (internal quotation marks and citation omitted).

DATED:  September 24, 2012

s/ David J. Burman

David J. Burman (admitted *pro hac vice*)
Cori G. Moore (admitted *pro hac vice*)
Noah G. Purcell (admitted *pro hac vice*)
Nicholas H. Hesterberg (admitted *pro hac vice*)
**PERKINS COIE LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone:      206.359.8000
Facsimile:      206.359.9000

Joren Bass, Bar No. 208143
JBass@perkinscoie.com
**PERKINS COIE LLP**
Four Embarcadero Center, Suite 2400
San Francisco, CA  94111-4131
Telephone:      415.344.7120
Facsimile:      415.344.7320

Attorneys for Plaintiff
Costco Wholesale Corporation

**<u>EXHIBIT F</u>**

1  Christopher M. Curran (*pro hac vice*)
   ccurran@whitecase.com
2  George L. Paul (*pro hac vice*)
   gpaul@whitecase.com
3  Lucius B. Lau (*pro hac vice*)
   alau@whitecase.com
4  White & Case LLP
   701 Thirteenth Street, N.W.
5  Washington, DC 20005
   Telephone: (202) 626-3600
6  Facsimile: (202) 639-9355

7  *Counsel to Defendants Toshiba Corporation,*
   *Toshiba America, Inc., Toshiba America*
8  *Information Systems, Inc., Toshiba America*
   *Consumer Products, L.L.C., and Toshiba*
9  *America Electronic Components, Inc.*

10

11                    UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF CALIFORNIA
12                      (SAN FRANCISCO DIVISION)

13

14  | IN RE: CATHODE RAY TUBE (CRT) | Case No. 07-5944 SC |
    | ANTITRUST LITIGATION | MDL No. 1917 |

15

16  This Document Relates to:

17  Case No. C 11-6397 SC                    **THE TOSHIBA DEFENDANTS'**
                                             **REPLY IN SUPPORT OF**
18  COSTCO WHOLESALE CORPORATION,            **MOTION TO COMPEL**
                                             **ARBITRATION**
19                              Plaintiff,
                                             **ORAL ARGUMENT REQUESTED**
20
               v.                            Date:    October 30, 2012
21                                           Time:    11:00 a.m.
    HITACHI, LTD., et al.,                   Before:  Hon. Charles A.
22                                                    Legge, U.S. District
                               Defendants.            Judge (Ret.), Special Master
23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page(s)**

I.     INTRODUCTION ...........................................................................................1

II.    ARGUMENT ...................................................................................................2

    A.    The *LCD* Court Has Already Held That Costco Is Obligated To Arbitrate Its Claims Under The Arbitration Clause At Issue ................... 2

    B.    Costco Must Arbitrate With All Of The Toshiba Defendants ................................ 5

        1.    This Is Not a Situation Where A Signatory Seeks To Compel Arbitration With A Non-Signatory That Did Not Consent To Arbitration ............................................................................... 5

        2.    Costco Does Not Deny Its Allegations of Agency and Interdependent Conduct ..................................................... 7

    C.    Costco Commenced Its Own Litigation................................................. 10

    D.    The Arbitrator — Not The Court — Should Decide Whether Treble Damages Are An Appropriate Remedy ................................................. 11

    E.    The Court Should Dismiss All Of Costco's Claims That Are Subject To Arbitration............................................................................ 14

III.    CONCLUSION..............................................................................................15

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

*Al-Safin v. Circuit City Stores, Inc.*,
    394 F.3d 1254 (9th Cir. 2005) ........................................................................ 14

4

5

*Anderson v. Pitney Bowes, Inc.*,
    No. C 04-4808 SBA, 2005 WL 1048700 (N.D. Cal. May 4, 2005) ........................... 11-12

6

*AT&T Techs., Inc. v. Commc'ns Works of Am.*,
    475 U.S. 643 (1986) ....................................................................................... 9

7

8

*Bencharsky v. Cottman Transmission Sys., LLC*,
    625 F. Supp. 2d 872 (N.D. Cal. 2008) ............................................................. 13

9

*Booker v. Robert Half Int'l, Inc.*,
    413 F.3d 77 (D.C. Cir. 2005) ......................................................................... 14

10

11

*Bridge Fund Capital Corporation v. Fastbucks Franchise Corporation,*
    622 F.3d 996 (9th Cir. 2010) ......................................................................... 12

12

*Britton v. Co-op Banking Group*,
    No. 89-15143, 1989 WL 1128387 (9th Cir. Nov. 8, 1989) ................................... 10

13

14

*Britton v. Co-op Banking Group*,
    4 F.3d 742 (9th Cir. 1993) .............................................................................. 9

15

16

*Britton v. Co-op Banking Group*,
    916 F.3d 1405 (9th Cir. 1990) ........................................................................ 9

17

18

*Brown v. Gen. Steel Domestic Sales, LLC*,
    No. CV 08-00779 MMM (SHx), 2008 WL 2128057 (C.D. Cal.
    May 19, 2008) ........................................................................................... 7-8

19

20

*Chastain v. Union Sec. Life Ins. Co.*,
    502 F. Supp. 2d 1072 (C.D. Cal. 2007) ......................................................... 8, 9

21

22

*Claimant v. Non-Depository Credit Institutions*,
    2011 WL 1760249 (AAA Apr. 27, 2011) ......................................................... 13

23

24

*Comer v. Micor, Inc.*,
    436 F.3d 1098 (9th Cir. 2006) ....................................................................... 6-7

25

26

*Committee for Recognition of Nursing Achievement v. Lucile Salter
Packard Children's Hospital*,
    No. 05:10-cv-01633JF, 2010 WL 4916434 (N.D. Cal. Nov. 23,
    2010) ...................................................................................................... 11

27

28

*Concat v. Unilever*,
    350 F. Supp. 2d 796 (N.D. Cal. 2004) ........................................................................ 3, 11

*Coors Brewing Co. v. Molson Breweries*,
    51 F.3d 1511 (10th Cir. 1995)............................................................................................. 4

*Dean Witter Reynolds, Inc. v. Byrd*,
    470 U.S. 213 (1985)......................................................................................................... 11

*Fujian Pacific Elec. Co. v. Bechtel Power Corp., Ltd.*,
    No. C 04-3126 MHP, 2004 WL 2645974 (N.D. Cal. Nov. 19,
    2004) ..................................................................................................................... 5-6, 7, 8

*Gaines v. Carrollton Tobacco Bd. of Trade, Inc.*,
    386 F.2d 757 (6th Cir. 1967) ......................................................................................... 14

*Graham Oil Co. v. ARCO Prods. Co.*,
    43 F.3d 1244 (9th Cir. 1994)......................................................................................... 13

*Hansen v. KPMG LLP*,
    No. CV 04-10525-GLT (MANx), 2005 WL 6051705 (C.D. Cal.
    Mar. 29, 2005).................................................................................................................. 8

*Hawkins v. KPMG LLP*,
    423 F. Supp. 2d 1038 (N.D. Cal. 2006) .......................................................................... 8

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
    No. 3:07-cv-5944 SC (N.D. Cal. Dec. 6, 2011)............................................................ 10

*In re Currency Conversion Fee Antitrust Litig.*,
    265 F. Supp. 2d 385 (S.D.N.Y. 2003)............................................................................. 7

*In re TFT-LCD Antitrust Litig.*,
    No. M 07-1827 SI, 2011 WL 4017961 (N.D. Cal. Sept. 9, 2011) .................................... 1

*In re TFT-LCD Antitrust Litig.*,
    No. M 07-1827 SI, 2011 WL 2650689 (N.D. Cal. July 6, 2011) ................................. 2, 4

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    No. M-07-1827 SI, 2011 WL 1753784 (N.D. Cal. May 9, 2011) ................................... 6

*JLM Indus. v. Stolt-Nielsen SA*,
    387 F.3d 163 (2d Cir. 2004)........................................................................... 3-4, 7, 8, 12

*Kristian v. Comcast Corp.*,
    446 F.3d 25 (1st Cir. 2006) ..................................................................................... 12, 14

*Lewis v. UBS Financial Servs., Inc.*,
    818 F. Supp. 2d 1161 (N.D. Cal. 2011) ............................................................... 15

*Mediterranean Enters., Inc. v. Ssangyong Corp.*,
    708 F.2d 1458 (9th Cir. 1995)............................................................................... 5

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
    473 U.S. 614 (1985)....................................................................................... 3, 13

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983) .............................................................................................. 3

*Mundi v. Union Sec. Life Ins. Co.*,
    555 F.3d 1042 (9th Cir. 2009)............................................................................ 6, 7

*Poponin v. Virtual Pro, Inc.*,
    No. C 06-4019 PJH, 2006 WL 2691418 (N.D. Cal. Sept. 20, 2006)......................... 12, 13

*Redel's Inc. v. General Elec. Co.*,
    498 F.2d 95 (5th Cir. 1974).............................................................................. 13-14

*Reddam v. KPMG LLP*,
    No. SACVO4-1227GLT (MANx), 2004 WL 3761875 (C.D. Cal.
    Dec. 14, 2004).................................................................................................. 8

*Republic of Nicaragua v. Standard Fruit Co.*,
    937 F.2d 469 (9th Cir. 1991), *cert. denied*, 503 U.S. 919 (1992) ...................... 3, 12, 14

*Ross v. American Express, Inc.*,
    547 F.3d 137 (2d Cir. 2008)................................................................................ 6

*Santa Cruz Medical Clinic v. Dominican Santa Cruz Hospital*,
    No. C93-20613, 1995 WL 232410 (N.D. Cal. Apr. 17, 1995) ................................... 5

*Simula, Inc. v. Autoliv, Inc.*,
    175 F.3d 716 (9th Cir. 1999).............................................................................. 3, 4

*Thinket Ink Info. Resources v. Sun Microsystems*,
    368 F.3d 1053 (9th Cir. 2004)........................................................................... 14-15

*Thomson-CSF, SA v. Am. Arbitration Ass'n*,
    64 F.3d 773 (2d Cir. 1995)................................................................................. 7

*United Food and Commercial Workers Union v. Geldin Meat Co.*,
    13 F.3d 1365 (9th Cir. 1994)........................................................................... 11, 14

*United Steelworkers v. American Mfg. Co.*,
    363 U.S. 574 (1960) ...................................................................................... 3, 11

## I.    INTRODUCTION

The issue raised in the Toshiba Defendants' motion has already been decided by Judge Illston in the LCD case, a fact that Costco Wholesale Corporation ("Costco") largely ignores in its Opposition to Toshiba Defendants' Motion to Compel Arbitration ("Costco Opp."). *See In re TFT-LCD Antitrust Litig.*, No. M 07-1827 SI, 2011 WL 4017961 (N.D. Cal. Sept. 9, 2011) ("LCD Order") (granting the defendants' motion to compel arbitration of Costco's claims based on the same Vendor Agreement at issue in this case). In fact, Costco simply recycles many of the same arguments that it used in the LCD case. *See* Declaration of Lucius B. Lau, dated October 8, 2012 (October 8 Lau Declaration), Ex. A (Costco's Opposition to Defendants' Joint Motion to Compel Arbitration, No. M 07-1827 SI (N.D. Cal. August 8, 2011), ECF No. 3240). The Vendor Agreement that Judge Illston examined in the LCD case is the exact same Vendor Agreement that governs Costco's claims in this case. Just as the *LCD* Court held that Costco's claims against the Toshiba Defendants (among others), were subject to arbitration, the Court should do so here as well.

In its opposition, Costco again fails to establish why its valid arbitration agreement should not be enforced.

***First***, Costco bases its opposition on the faulty premise that its purchase contract is irrelevant to its antitrust claims. According to Costco, only disputes that require this Court to interpret or enforce contract terms are arbitrable. Costco Opp. at 5-6. This argument, however, is at odds with Supreme Court precedent and other case law, including previous decisions in the LCD case. Arbitration provisions, like Costco's, that call for the arbitration of ***all*** disputes "arising out of and relating to" the agreements, apply to antitrust claims.

***Second***, there is no dispute that Costco alleges that the Toshiba Defendants — regardless of corporate affiliation — acted as each other's agents. Compl. ¶ 55. Nor does Costco deny that it alleges interdependent and concerted conduct by all Toshiba Defendants and seeks to hold them jointly and severally liable for every alleged sale of a CRT product made to Costco "from any source." Compl. ¶ 9. Costco imposed broad arbitration provisions on one of the Toshiba Defendants and specifically alleged that all of the Toshiba Defendants acted as each other's

agents through interdependent conduct. Pursuant to the relevant case law, such allegations allow non-signatory Toshiba Defendants to compel arbitration against Costco.

**Third**, Costco does not dispute that its arbitration clause is enforceable. Instead, Costco argues that this action falls under an exemption to the arbitration clause because it was commenced by a third-party. However, Costco alone commenced this separate action in the United States District Court for the Western District of Washington. Its case was consolidated in this MDL Court for purposes of pretrial discovery. Costco has not joined a separate action filed by a third-party. Again, the *LCD* Court has already considered and rejected Costco's argument.

**Fourth**, Costco prematurely seeks a ruling from this Court declaring the damages limitation in its own contract unenforceable. Under the law of the Ninth Circuit and, separately, the AAA Rules, which will apply to the arbitration pursuant to the Costco-drafted arbitration agreement, this issue is within the jurisdiction of the arbitrator.

**Finally**, the Court should dismiss all of Costco's claims that are subject to arbitration. Costco provides no sound reason why arbitrable claims should remain in this case.

## II.   ARGUMENT

### A.   The *LCD* Court Has Already Held That Costco Is Obligated To Arbitrate Its Claims Under The Arbitration Clause At Issue

The *LCD* Court has already held that the very same Vendor Agreement between Costco and TACP, Inc. subjects Costco's claims against the Toshiba Defendants to arbitration. LCD Order at *5-6, 8-9. The *LCD* Court found that the scope of this arbitration clause was "at least as broad" as another arbitration clause that the Court also enforced in that case. *See* LCD Order at *3 (citing Order Granting AU Optronics Corporation's Motion to Compel Arbitration, *In re TFT-LCD Antitrust Litig.*, No. M 07-1827 SI, 2011 WL 2650689, at *5 (N.D. Cal. July 6, 2011) ("Under the Ninth Circuit's reasoning, the language 'related to' must be read broadly, to encompass any matter that touches the contractual relationship between the parties.")). The *LCD* Court, therefore, concluded that the same arbitration clause that applies in this case "subjects to arbitration any claim that 'relates to' the Vendor Agreement Costco had in place with its suppliers" and that "Costco's state and federal antitrust claims are likewise subject to

arbitration." LCD Order at 3. The arbitration clause should be enforced in the same way here as well.

"The standard for demonstrating arbitrability is not a high one; in fact, a district court has little discretion to deny an arbitration motion, since the [Federal Arbitration] Act is phrased in mandatory terms." *Concat v. Unilever, PLC*, 350 F. Supp. 2d 796, 804 (N.D. Cal. 2004) (quoting *Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 475 (9th Cir. 1991), *cert. denied*, 503 U.S. 919 (1992)). Additionally, "the clear weight of authority holds that the most minimal indication of the parties' intent to arbitrate must be given full effect." *Id.* Furthermore, "as a matter of federal law, any doubts concerning the scope of the arbitrable disputes should be resolved in favor of arbitration." *Id.* (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). As the *LCD* Court found, Costco has provided more than a "minimal indication" of its intent to arbitrate and the Court should enforce that agreement as required by "the clear weight of authority." *Concat*, 350 F. Supp. 2d at 804 (quoting *Republic of Nicaragua*, 937 F.2d at 475).

In its Opposition, Costco does not deny that its arbitration clause is a broad one. As such, the presumption of arbitrability is particularly strong. Costco must present "forceful evidence of a purpose to exclude the claim from arbitration . . . ." *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 585 (1960). Costco nevertheless asserts that its claims do "not depend on its contracts in the slightest" because the contracts are "incidental" and "no question is raised as to their performance." Costco Opp. at 7; *see also id.* 4 ("Costco's claims do not turn in any way on interpreting or enforcing its vendor agreement with TACP."). This assertion is foreclosed by the prior decisions of this Court and other authorities, all of which have held that antitrust claims are claims "arising under" or "related to" purchase contracts. *See, e.g.*, *Mitsubishi Motors Corp. v. Soler Chrysler Plymouth, Inc.*, 473 U.S. 614, 631 (1985) (enforcing the parties' agreement to arbitrate antitrust claims arising from an international transaction); *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721-23 (9th Cir. 1999) (holding that antitrust claims arising from a supply contract and licensing agreement were "fully arbitrable"); *JLM Indus. v. Stolt-Nielsen SA*, 387 F.3d 163, 172-75 (2d Cir. 2004) (holding that antitrust claims that

1    sufficiently "touch matters covered by the parties' contracts" are arbitrable); *TFT-LCD*, 2011

2    WL 2650689, at *5 (compelling arbitration of plaintiffs' antitrust claims because those claims

3    related to the purchases made under the parties' product purchase agreement, which contained a

4    valid arbitration clause). Costco offers no evidence, let alone "forceful evidence," as to why its

5    antitrust claims should be excluded from arbitration.

6        In its July 6, 2011 decision involving Nokia, Judge Illston rejected the same argument

7    Costco makes here, finding that the language "any disputes related to this Agreement"

8    encompasses unfair competition and antitrust claims. *See TFT-LCD*, 2011 WL 2650689, at *5

9    (finding that claims for overcharges on purchases touch upon matters in purchase contracts and

10   are therefore "sufficiently related" to the arbitration clause to be covered). In so doing, Judge

11   Illston found that the "relating to" language in Nokia's arbitration agreement was even broader

12   than the language "arising in connection with," which the Ninth Circuit in *Simula* found covers

13   "all disputes having their origin or genesis in the contract." *Id.* (discussing *Simula*, 175 F.3d at

14   721).

15       Of the many cases Costco cites in its Opposition, only two even address antitrust claims,

16   and those cases are distinguishable from the arbitration clause and type of contract at issue here.

17       In *Coors Brewing Co. v. Molson Breweries*, 51 F.3d 1511, 1516 (10th Cir. 1995), the

18   Tenth Circuit held that Coors was required to arbitrate its claims that were related to its 1985

19   licensing agreement with Molson Brewers ("Molson"), but that it could litigate its claims that

20   were not related to that agreement. Although the 1985 agreement contained an arbitration

21   clause, that agreement simply provided that Molson would brew and distribute Coors products in

22   Canada. *Id.* at 1512-13. That agreement had nothing to do with Coors' claims against the

23   defendants Molson and Miller, alleging that those entities had formed a combination in restraint

24   of trade and lessened competition in the United States. *Id.* For that reason, the Tenth Circuit

25   held that "Coors' claims regarding market concentration are not related to the licensing

26   agreement," although the Court held that other claims that were related to the licensing

27   agreement were subject to arbitration. *Id.* at 1517.

28

Similarly, *Santa Cruz Medical Clinic v. Dominican Santa Cruz Hospital*, No. C93-20613, 1995 WL 232410, at *2 (N.D. Cal. Apr. 17, 1995), is distinguishable because the arbitration clauses at issue there contained the phrases "arising under" and "arising over" instead of the "arising out of and relating to" language that is indicative of a broad agreement to arbitrate any and all claims. Referring to *Mediterranean Enters., Inc. v. Ssangyong Corp.*, 708 F.2d 1458 (9th Cir. 1995), the *Santa Cruz* Court observed that "the Ninth Circuit recognized that clauses **not** using AAA's recommended "arising out of or relating to" language are limited in scope and only cover disputes related to the interpretation of the contract." *Santa Cruz*¸ 1995 WL 232410 at *3 (emphasis added).

Costco is correct that the "the language of the contract" defines the scope of disputes subject to arbitration. Costco Opp. at 5. The language of the Vendor Agreement was drafted broadly — by Costco — to apply to all claims and disputes that "arise out of or relate to these Standard Terms or **any agreement** between [TACP, Inc.] and PriceCostco." Declaration of Lucius B. Lau in Support of the Toshiba Defendants' Motion to Compel Arbitration, dated August 24, 2012 ("Lau Decl.) Ex. A (emphasis added). Thus, under the plain language of the Vendor Agreement, Costco's claims are arbitrable.

**B.      Costco Must Arbitrate With All Of The Toshiba Defendants**

**1.      This Is Not a Situation Where A Signatory Seeks To Compel Arbitration With A Non-Signatory That Did Not Consent To Arbitration**

Costco's argument that its claims against parties other than TACP, Inc. are in no way arbitrable rests on the same faulty logic that "Costco's claim does not depend on its contracts in the slightest." Costco Opp. at 7. The *LCD* Court has already rejected Costco's argument and has held that "Costco must arbitrate its claims against those defendants whose affiliates have arbitration agreements with Costco." LCD Order at *6. The *LCD* Court noted that its holding was "consistent with the general rule that 'when the charges against a parent company and its subsidiary are based on the same facts and are inherently inseparable, a court may refer claims against the parent to arbitration even though the parent is not formally a party to the arbitration agreement.'" LCD Order at *6 (citing *Fujian Pacific Elec. Co. v. Bechtel Power Corp., Ltd.*,

No. C 04-3126 MHP, 2004 WL 2645974, at *6 (N.D. Cal. Nov. 19, 2004)); *see also Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1046 (9th Cir. 2009) (stating that a non-signatory may enforce an arbitration clause where there is a "close relationship between the entities involved, as well as the relationship of the alleged wrongs to the non-signatory's obligations and duties in the contract . . . the claims [are] intertwined with the underlying contractual obligations").

Costco's reliance on another order from the LCD case is misplaced. Costco Opp. at 6 (citing *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M-07-1827 SI, 2011 WL 1753784, at *5 (N.D. Cal. May 9, 2011)). The current motion to compel is not analogous to the issues in that order, which merely found that if the defendants in that case desired arbitration against absent direct purchaser class members, the defendants would need to present specific contracts with those plaintiffs. *See id.* ("Therefore, as an initial step, defendants must locate and identify every arbitration agreement that they intend to assert against unnamed members of the DPP class."). Here, the Toshiba Defendants have already located and identified the particular contract that requires arbitration.

Similarly, *Ross v. American Express, Inc.*, 547 F.3d 137 (2d Cir. 2008), which is cited in Costco's Opposition, is also distinguishable. In finding that a non-signatory could not enforce an arbitration clause against a plaintiff who had not drafted that clause, the Second Circuit found it "crucial" that the plaintiff did not seek relief as a purchaser of the products at issue in the contracts. *Id.* at 139. Costco, however, does seek relief as a purchaser of the products at issue in its contract. Moreover, Costco itself drafted the arbitration provision.

Costco also erroneously relies on inapposite cases in which a signatory (like Costco) tries to force arbitration on a non-signatory that has not consented to arbitration. Costco, for example, cites often to the Ninth Circuit decision of *Comer v. Micor, Inc.*, 436 F.3d 1098 (9th Cir. 2006), to support its arguments that it cannot be required to arbitrate with any non-signatory defendant and for the broad proposition that federal policy favoring arbitration is inapplicable here. Costco Opp. at 4-6. Costco, however, is conflating two very different issues: (1) whether a non-signatory can compel a signatory to arbitrate, and (2) whether a signatory can compel a non-signatory to arbitrate. These issues raise very different concerns about consent. *Comer* only

addresses enforcing an arbitration clause with a non-signatory who did not consent. *See* 436 F.3d at 1101-02 ("Because [defendant] is invoking equitable estoppel against a nonsignatory, it is the first line of cases [*i.e.*, nonsignatories held to arbitration clauses "despite having never signed the agreement"] that is relevant."). The Ninth Circuit has in fact distinguished *Comer* on this very basis. *See Mundi*, 555 F.3d at 1046 (recognizing that *Comer* does not apply to enforcement of arbitration clauses by non-signatories against signatories); *accord Thomson-CSF, SA v. Am. Arbitration Ass'n*, 64 F.3d 773, 779 (2d Cir. 1995) (recognizing that a different "line of cases" applies where a signatory seeks to compel arbitration with a non-signatory than when a non-signatory seeks to compel arbitration with a signatory). In this case, both signatories and non-signatories are seeking to compel Costco, a signatory and drafter, to arbitrate as it agreed. Such arbitration is appropriate where the signatory has alleged that the non-signatories are agents of one another or that their liability is intertwined with the arbitration agreement. *See In re Currency Conversion Fee Antitrust Litig.*, 265 F. Supp. 2d 385, 406 (S.D.N.Y. 2003) (requiring arbitration of antitrust claims that "touch matters" covered by the cardholder agreements).

### 2. Costco Does Not Deny Its Allegations of Agency and Interdependent Conduct

Arbitration as to all parties is appropriate where the arbitration clause is a broad one and the signatory has alleged that non-signatories are agents of signatories. *Fujian,* 2004 WL 2645974, at *6; *JLM*, 387 F.3d at 172, 177-78. Furthermore, arbitration agreements are routinely enforced where non-signatories' liability is intertwined with agreements containing broad arbitration provisions. *E.g.*, *In re Currency Conversion Fee Antitrust Litig.*, 265 F. Supp. 2d at 410. A case cited by Costco, *Brown v. Gen. Steel Domestic Sales, LLC*, No. CV 08-00779 MMM (SHx), 2008 WL 2128057, at *7 (C.D. Cal. May 19, 2008), explains these principles best:

> It is appropriate to compel arbitration where claims allege "substantially interdependent and concerted misconduct" by a signatory and non-signatory[,] the "lawsuit against [the] non-signatory is inherently bound up with [the] claims against [the] signatory," and compelling arbitration is necessary "to avoid denying the signatory the benefit of the arbitration clause, and in order to avoid duplicative litigation which undermines the efficiency of arbitration."

1    *Id.* at \*7 (quoting *Hawkins v. KPMG LLP*, 423 F. Supp. 2d 1038, 1050 (N.D. Cal. 2006)); *see*

2    *also Reddam v. KPMG LLP*, No. SACVO4-1227GLT (MANx), 2004 WL 3761875, at \*5 (C.D.

3    Cal. Dec. 14, 2004) ("If the non-signatories were not allowed to compel arbitration in these

4    instances, the arbitration proceedings between the two signatories would be rendered

5    meaningless and the federal policy in favor of arbitration effectively thwarted.") (internal

6    quotations omitted).  The argument for arbitration is particularly strong where, as here, the

7    complaint fails to distinguish between signatory and non-signatory defendants and the plaintiff

8    makes "undifferentiated allegations" based on alleged misconduct that is "substantially

9    interdependent and concerted."  *Brown*, 2008 WL 2128057, at \*8 (noting that "Courts have

10    consistently compelled arbitration under similar circumstances.") (citing *Chastain v. Union Sec.*

11    *Life Ins. Co.*, 502 F. Supp. 2d 1072, 1081 (C.D. Cal. 2007); *Hansen v. KPMG LLP*, No. CV 04-

12    10525-GLT (MANx), 2005 WL 6051705 (C.D. Cal. Mar. 29, 2005)).

13        As explained above, Costco's claims against the Toshiba Defendants are intertwined with

14    the Vendor Agreement containing a broad arbitration provision.  Moreover, Costco does not

15    deny that it seeks to hold the Toshiba Defendants liable for the alleged sales of their corporate

16    affiliates.  Nor does it deny its allegation that these corporate affiliates are a single entity for

17    these purposes.  Costco Opp. at 9-10.  It offers no argument against the proposition that

18    corporate family members can properly hold Costco to its obligation to arbitrate claims,

19    especially where it has alleged that these family members are one and the same.  *Fujian*, 2004

20    WL 2645974, at \*6; *JLM*, 387 F.3d at 177-78.  Costco cannot now avoid the implications of its

21    broad allegation that "[e]ach Defendant acted as the principal, agent, or joint-venturer of, or for,

22    other Defendants with respect to the acts, violations, and course of conduct alleged by Costco."

23    Compl. ¶ 55.

24        In its Opposition, Costco would have the Court determine, at this stage of the litigation,

25    whether the Toshiba Defendants are in fact corporate affiliates or whether they are each other's

26    agents.  Costco Opp. at 10 (noting that "a plaintiff's allegations are not enough to establish an

27    agency relationship" and stating that "a general principal-agent relationship or even a principal-

28    agent relationship in carrying out the vendor agreements . . . is what Defendants must prove").

1    In deciding a motion to compel, however, a court may not delve into the merits of the claims.  As

2    stated in the cases cited in Costco's Opposition, "[t]he Court must look *to the Complaint* to

3    determine whether Plaintiffs' claims are intertwined with the [] agreements."  *Chastain*,

4    502 F. Supp. 2d at 1078 (emphasis added); *see also AT&T Techs., Inc. v. Commc'ns Works of*

5    *Am.*, 475 U.S. 643, 649 (1986) ("The third principle derived from our prior cases is that, in

6    deciding whether to submit a particular grievance to arbitration, a court is not to rule on the

7    potential merits of the underlying claims.").  "The courts, therefore, have no business weighing

8    the merits of the grievance, considering whether there is equity in a particular claim, or

9    determining whether there is particular language in the written instrument which will support the

10   claim."  *AT&T*, 475 U.S. at 650 (internal quotation omitted).

11          Contrary to Costco's view (Costco Opp. at 10), *Britton v. Co-op Banking Group*,

12   916 F.3d 1405 (9th Cir. 1990) ("*Britton* I"), is inapposite.  In that case, the Ninth Circuit made

13   no determination as to whether the appellant had the right to arbitrate.  Rather, the Ninth Circuit

14   merely held that the district court was incorrect in denying the appellant's motion to compel on

15   the basis of waiver and noted that none of the dispositive factors for analyzing a motion to

16   compel were litigated at the district court:  "the nature of [the non-signatory's] relationship with

17   the [signatory], as well as the intent of the parties to the contract and the scope of arbitrability,

18   were neither analyzed by the district court nor briefed on appeal."  *Id.* at 1413-14.  Thus, *Britton*

19   I in no way applies to this case.

20          *Britton v. Co-op Banking Group*, 4 F.3d 742 (9th Cir. 1993) ("*Britton* II") (Costco Opp.

21   at 10), is also distinguishable on its facts.  In that case, the Ninth Circuit's key inquiry was

22   whether the non-signatory appellant's "alleged wrongdoing as an agent, officer or employee of

23   [the signatory] during th[e] alleged period of time relate[d] to or [arose] from" the parties'

24   contract for the sale of securities, which contained an arbitration clause.  *Id.* at 747.  The Ninth

25   Circuit held that it did not, because "the only relevant acts charged against [the appellant]" were

26   active attempts to "defraud the investors into not pursuing their law suits against persons who

27   originally sold securities under the contract."  *Id.* at 747-48.  In that case, none of relevant acts

28   charged against the non-signatory appellant — namely, actively discouraging potential class

action members from bringing a lawsuit for securities fraud well after the sale of those securities — sought to impose liability under the parties' contract for the sale of securities. *Id; see also* Appellees' Brief, *Britton v. Co-op Banking Group*, No. 89-15143, 1989 WL 1128387 (9th Cir. Nov. 8, 1989) ("Appellant . . . was sued . . . because of acts undertaken long after execution of the contracts of sale."). As established above, Costco's claims against the Toshiba Defendants do indeed relate to and arise out of the Vendor Agreement.

### C.     Costco Commenced Its Own Litigation

The *LCD* Court has already rejected Costco's argument that a contract provision providing that Costco can bring court proceedings "solely as part of a separate litigation commenced by an unrelated third party" has some application here. Costco Opp. at 3; LCD Order at *4. Costco attempted the same argument in the LCD case and the Court rejected it outright:

> "The Court agrees with defendants that once Costco opted out of the class action, its lawsuit was no longer 'part of separate litigation' within the meaning of the arbitration clause. Even accepting Costco's description of the provision's purpose, the benefits of arbitration would not be 'largely lost' in this instance. Costco's decision to opt out subjected defendants to a new proceeding, separate from the class action, with new discovery deadlines and a trial that will take place in a new district. Even if Costco's lawsuit was 'commenced by' the class action plaintiffs, it ceased being a 'part of' that case when Costco opted out of the class."

*Id.* Although Costco argues that the arbitration agreement should be "enforced by its terms," Costco does nothing to show that the exclusionary clause applies to Costco's litigation. Costco did not bring claims solely in the context of a separate litigation commenced by an unrelated third party. Rather, Costco filed a separate complaint and commenced its own claims in a federal court. It did not file in the MDL as an intervenor. It is part of an MDL proceeding involving unrelated third parties solely because it was consolidated here for purposes of pre-trial discovery. Conditional Transfer Order (CTO-5), *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 3:07-cv-5944 SC (N.D. Cal. Dec. 6, 2011) ECF No. 1009.

Costco's real argument appears to be that the federal court is a better and more efficient forum for resolution of its claims. *See* Costco Opp. at 5 (stating that sometimes the "Court's active coordination of closely related cases likely makes arbitration less efficient than proceeding

in court"). That argument has no place here because the Supreme Court has rejected "the suggestion that the overriding goal of the Arbitration Act was to promote the expeditious resolution of claims." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219 (1985).

**D.      The Arbitrator — Not The Court — Should Decide Whether Treble Damages Are An Appropriate Remedy**

Costco improperly — and prematurely — asks this Court to declare its waiver of treble damages clause unenforceable should the Court compel arbitration. Costco Opp. at 13. However, that issue is not for the Court to decide. Rather, it is an issue for the arbitrator.

When a party moves to compel arbitration pursuant to an arbitration clause, as the Toshiba Defendants have done here, the court's only task is to determine whether the parties entered into a valid agreement to arbitrate. *See United Food and Commercial Workers Union v. Geldin Meat Co*., 13 F.3d 1365, 1368 (9th Cir. 1994) ("The courts have the duty only to determine whether a party has breached its promise to arbitrate."); *United Steelworkers*, 363 U.S. at 582 ("[T]he judicial inquiry . . . must be strictly confined to the question [of] whether the reluctant party did agree to arbitrate . . . ."). Indeed, the Court should not review the merits of the dispute. *See United Food*, 13 F.3d at 1368 ("The Supreme Court has stated unequivocally that the courts have no business determining the *merits* of a grievance under the guise of deciding questions of arbitrability . . . .") (emphasis added); *Concat*, 350 F. Supp. 2d at 804 ("In determining whether to issue an order compelling arbitration, the court may not review the merits of the dispute . . . ."). Thus, the roles of the Court and the arbitrator are clear: (i) the Court should decide whether the parties agreed to arbitrate, and (ii) the arbitrator should determine the merits of the case. *See Committee for Recognition of Nursing Achievement v. Lucile Salter Packard Children's Hospital*, No. 05:10-cv-01633JF, 2010 WL 4916434, at *3 (N.D. Cal. Nov. 23, 2010) ("In deciding whether the parties have agreed to submit a particular grievance to arbitration the court is not to evaluate the merits of the grievance, rather it is merely required to determine whether the parties agreed to arbitrate."); *Anderson v. Pitney Bowes, Inc*., No. C 04-4808 SBA, 2005 WL 1048700, *4 (N.D. Cal. May 4, 2005) ("It would be error for the Court to determine the merits of Plaintiff's argument … when the parties clearly submitted that

1  question to an arbitrator."); *JLM*, 387 F.3d at 171 ("We therefore 'have no business weighing the

2  merits of [JLM's] grievance[s] . . . The agreement is to submit all grievances to arbitration, not

3  merely those which the court will deem meritorious.'") (citation omitted).  The role of the Court

4  in deciding the present motion is to simply determine whether Costco and the Toshiba

5  Defendants have agreed to arbitrate the claims at issue.  Costco's request that the Court, in

6  addition to deciding the motion to compel, also make a preemptive declaration as to the merits of

7  Costco's claims is premature.

8       Costco cites to the Ninth Circuit decision *Bridge Fund Capital Corporation v. Fastbucks*

9  *Franchise Corporation,* 622 F.3d 996, 1000 (9th Cir. 2010), in support of its argument.  At issue

10  in that case, however, was whether the arbitration clause was unconscionable, especially given

11  that it contained an express limitation of treble damages on its face.  *Id.*  In this case, Costco does

12  not argue that its own arbitration clause is unconscionable, and the arbitration agreement and

13  Standard Terms here are silent on the issue of treble damages.  Even if Costco did make an

14  argument that its own arbitration clause is somehow unconscionable, it cannot prove both

15  procedural and substantive unconscionability, as required.  *Bridge Fund*, 622 F.3d at 1004.  In its

16  Opposition, Costco makes no showing of procedural unconscionability, surely because Costco is

17  itself the drafter of the clause it now seeks to invalidate.  Furthermore, "a contract that is

18  procedurally unconscionable is one that is a contract of adhesion . . . imposed and drafted by the

19  party of superior bargaining strength."  *Poponin v. Virtual Pro, Inc.*, No. C 06-4019 PJH, 2006

20  WL 2691418 (N.D. Cal. Sept. 20, 2006) (enforcing arbitration clause where "the parties were of

21  equal bargaining strength").  Costco does not — and cannot — argue that it had an inferior

22  bargaining position or that its own Vendor Agreement was otherwise unconscionable.

23       Costco also relies on the First Circuit case *Kristian v. Comcast Corp.*, 446 F.3d 25, 47-48

24  (1st Cir. 2006), to argue that the treble damages issue should be resolved by the Court.

25  However, that holding is not the law in the Ninth Circuit, as it has not been adopted by the Ninth

26  Circuit.  Rather, the law of the Ninth Circuit requires that the Court must decide only whether the

27  parties agreed to arbitrate.  *See Republic of Nicaragua*, 937 F.2d at 478 (the court's role "is

28  strictly limited to determining arbitrability . . . .").  The arbitrator should determine the remaining

1    issues raised by the claims.  This is particularly true where the selection of a particular set of

2    arbitration rules is evidence of an intent for the arbitrator to rule on issues of arbitrability.  *See*

3    *Poponin*, 2006 WL 2691418, at *9 ("By agreeing to arbitration under the ICC rules, [the parties]

4    clearly and unmistakably agreed that questions of arbitrability would be submitted to

5    arbitration.").

6          Under the AAA Rules applicable to Costco's agreements, "[t]he arbitrator shall have the

7    power to rule on . . . any objections with respect to the existence, scope or validity of the

8    arbitration agreement."   AAA Commercial Arbitration R. & Mediation P. R-7(a).   AAA

9    arbitrators have decided whether arbitration terms are unconscionable.  *See, e.g., Claimant v.*

10   *Non-Depository Credit Institutions*, 2011 WL 1760249 at *5-6 (AAA Apr. 27, 2011) (evaluating

11   whether a 60-day limitations provision is unconscionable).  Thus, the issue of whether treble

12   damages should apply to Costco's claims is an issue for the arbitrator.

13         The additional cases Costco cites to support its argument are inapposite.  In *Graham Oil*

14   *Co. v. ARCO Prods. Co.*, 43 F.3d 1244, 1247-48 (9th Cir. 1994), the Court addressed the validity

15   of an arbitration clause specifically in the context of the Petroleum Market Practices Act

16   ("PMPA").  The Court's reasoning in that case centered on Congress' intent in enacting that

17   specific statute and its narrow holding has no application in this case.  *Id.*  *Bencharsky v.*

18   *Cottman Transmission Sys., LLC*, 625 F. Supp. 2d 872, 882 (N.D. Cal. 2008), is similarly

19   distinguishable because in that case, which does not involve antitrust claims, the Plaintiffs

20   argued, and the Court agreed, that certain provisions of the parties' franchise agreement were

21   invalid because they were unconscionable, an argument that Costco does not raise here.

22         Costco also cites dicta in *Mitsubishi Motors Corp.*, 473 U.S. at 637 n. 19, in support of its

23   argument.  However, in that case the Supreme Court did not actually decide whether a party has

24   the right to pursue statutory remedies from antitrust violations.  *Id.* ("We therefore have no

25   occasion to speculate on this matter at this stage in the proceedings, when Mitsubishi seeks to

26   enforce the agreement to arbitrate, not to enforce an award.").  The remainder of the cases upon

27

28

1   which Costco relies were decided outside the Ninth Circuit, have not been followed by the Ninth

2   Circuit, and have no bearing on the current case.[1]

3       Finally, Costco suggests that the Court adopt the approach taken by the *LCD* Court when

4   it declared the 2004 Standard Terms limitation on treble damages unenforceable. LCD Order at

5   *6 (citing *Kristian*, 446 F.3d at 47-48 and *Mistubishi Motors*, 473 U.S. at 637 n.19). However,

6   the *LCD* Court incorrectly ventured into the territory reserved for the arbitrator, and outside the

7   law of the Ninth Circuit. *See, e.g.*, *United Food*, 13 F.3d at 1368 ("The courts have the duty only

8   to determine whether a party has breached its promise to arbitrate."); *Republic of Nicaragua*,

9   937 F.2d at 478 ("[B]ecause of the presumption of arbitrability established by the Supreme

10  Court, courts must be careful not to overreach and decide the merits of an arbitrable claim. Our

11  role is strictly limited to determining arbitrability and enforcing agreements to arbitrate, leaving

12  the merits of the claims and any defenses to the arbitrator."). The Court should adhere to its duty

13  to "strictly limit" its inquiry in this motion to determining whether Costco did agree to arbitrate

14  and leave the question of damages to the arbitrator.

15  **E.    The Court Should Dismiss All Of Costco's Claims That Are Subject To
    Arbitration**

16
17      In our initial brief, we argued that Costco's claims against the Toshiba Defendants should

18  be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure because they are

19  covered by the Vendor Agreement's arbitration clause. Toshiba Br. at 13. In response, Costco

20  asserts that dismissal is not warranted because, even if the Court were to conclude that some of

21  Costco's claims are subject to arbitration, other claims should remain in this action. Costco Opp.

22  at 11. According to Costco, its complaint sets forth two categories of claims that are not subject

23  to arbitration: (1) claims against the Toshiba Defendants based upon Costco's indirect purchases

24  of products containing CRTs manufactured by the Toshiba Defendants; and (2) claims against

25  the Toshiba Defendants based upon joint and several liability. *Id.* at 12. The existence of these

26  ---

[1] Of those case, neither *Redel's Inc. v. General Elec. Co.*, 498 F.2d 95, 99 (5th Cir. 1974), nor
27  *Gaines v. Carrollton Tobacco Bd. of Trade, Inc.*, 386 F.2d 757, 759 (6th Cir. 1967), even address
    arbitration, and *Booker v. Robert Half Int'l, Inc.*, 413 F.3d 77, 79 (D.C. Cir. 2005), and *Al-Safin v.
28  Circuit City Stores, Inc.*, 394 F.3d 1254, 1261 (9th Cir. 2005), are distinguishable because those
    cases did not address arbitration agreements in the context of antitrust law.

claims, however, does not mean that the arbitrable claims (*i.e.*, the claims involving Costco's direct purchases from the Toshiba Defendants) should remain in the case. Dismissal of claims is proper when the facts demonstrate that a plaintiff's claims are subject to arbitration. *See Thinket Ink Info. Resources v. Sun Microsystems*, 368 F.3d 1053, 1060 (9th Cir. 2004) (affirming district court's dismissal of plaintiffs' claims that were subject to arbitration); *Lewis v. UBS Financial Servs., Inc.*, 818 F. Supp. 2d 1161, 1169 (N.D. Cal. 2011) ("courts have discretion . . . to dismiss claims that are subject to an arbitration agreement"). Thus, the Court should dismiss all of Costco's claims that are subject to arbitration.

## III.    CONCLUSION

For these reasons and the reasons contained in our motion to compel, the Court should dismiss Costco's claims against the Toshiba Defendants that are subject to arbitration and direct Costco to proceed to arbitration with respect to these claims.

Respectfully submitted,

Dated: October 8, 2012                          **WHITE & CASE** LLP

By:  */s/ Lucius B. Lau*
Christopher M. Curran (*pro hac vice*)
ccurran@whitecase.com
George L. Paul (*pro hac vice*)
gpaul@whitecase.com
Lucius B. Lau (*pro hac vice*)
alau@whitecase.com
701 Thirteenth Street, N.W.
Washington, DC  20005
tel.: (202) 626-3600
fax: (202) 639-9355

*Counsel to Defendants Toshiba Corporation, Toshiba America, Inc., Toshiba America Information Systems, Inc., Toshiba America Consumer Products, L.L.C., and Toshiba America Electronic Components, Inc.*

**CERTIFICATE OF SERVICE**

On October 8, 2012, I caused a copy of "TOSHIBA DEFENDANTS' REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION" to be electronically filed via the Court's Electronic Case Filing System, which constitutes service in this action pursuant to the Court's order of September 2, 2008.


_____/s/ Lucius B. Lau_____
Lucius B. Lau

# EXHIBIT G

1  Christopher M. Curran (*pro hac vice*)
2  ccurran@whitecase.com
   George L. Paul (*pro hac vice*)
3  gpaul@whitecase.com
   Lucius B. Lau (*pro hac vice*)
4  alau@whitecase.com
   White & Case LLP
5  701 Thirteenth Street, N.W.
6  Washington, DC  20005
   Telephone:  (202) 626-3600
7  Facsimile:  (202) 639-9355
8
9  *Counsel to Defendants Toshiba Corporation,*
   *Toshiba America, Inc., Toshiba America*
10 *Information Systems, Inc., Toshiba America*
11 *Consumer Products, L.L.C., and Toshiba*
   *America Electronic Components, Inc.*
12

13              UNITED STATES DISTRICT COURT
               NORTHERN DISTRICT OF CALIFORNIA
14                (SAN FRANCISCO DIVISION)
15

16  IN RE: CATHODE RAY TUBE (CRT)            Case No. 07-5944 SC
17  ANTITRUST LITIGATION                     MDL No. 1917
18

19  This Document Relates to:
20  Case No. C 11-6397 SC
21
22  COSTCO WHOLESALE CORPORATION,
                                             **DECLARATION OF LUCIUS B.**
23                           Plaintiff,      **LAU IN SUPPORT OF TOSHIBA**
                                             **DEFENDANTS' REPLY IN**
24             v.                            **SUPPORT OF MOTION TO**
                                             **COMPEL ARBITRATION**
25  HITACHI, LTD., et al.,
26
27                           Defendants.
28

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1    I, Lucius B. Lau, hereby declare as follows:

2         1.    I am Counsel with the law firm of White & Case LLP, counsel for Defendants

3    Toshiba Corporation, Toshiba America, Inc., Toshiba America Information Systems, Inc.,

4    Toshiba America Consumer Products, L.L.C., and Toshiba America Electronic Components,

5    Inc. (collectively, the "Toshiba Defendants").  I make this declaration in support of the

6    Toshiba Defendants' Reply in Support of Motion to Compel Arbitration.

7         2.    On August 8, 2011, Costco Wholesale Corporation ("Costco") filed its

8    Opposition to Defendants' Joint Motion to Compel Arbitration in *In re: TFT-LCD (Flat*

9    *Panel) Antitrust Litigation*, No. M 07-1827 SI (N.D. Cal.), ECF No. 3240.  Attached hereto as

10   Exhibit A is a true and correct copy of Costco's Opposition to Defendants' Joint Motion to

11   Compel Arbitration.

12        3.    On September 9, 2011, Judge Illston filed an Order Granting In Part

13   Defendants' Joint Motion to Compel Arbitration in *In re: TFT-LCD (Flat Panel) Antitrust*

14   *Litigation*, No. M 07-1827 SI, 2011 WL 4017961 (N.D. Cal. Sept. 9, 2011).  Attached hereto

15   as Exhibit B is a true and correct copy of Judge Illston's Order Granting In Part Defendants'

16   Joint Motion to Compel Arbitration.

17

18        I declare under penalty of perjury under the laws of the United States of America that

19   the foregoing is true and correct.

20

21        Executed this 8th day of October, 2012, in Washington, D.C.

22

23

24                                              _____
                                                            Lucius B. Lau

25

26

27

28

DECLARATION OF LUCIUS B. LAU IN SUPPORT OF
TOSHIBA DEFENDANTS' REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION
Case No. C 11-6397 SC
MDL No. 1917

2

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CERTIFICATE OF SERVICE**

On October 8, 2012, I caused a copy of "DECLARATION OF LUCIUS B. LAU IN SUPPORT OF TOSHIBA DEFENDANTS' REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION" to be electronically filed via the Court's Electronic Case Filing System, which constitutes service in this action pursuant to the Court's order of September 2, 2008.

_____
Lucius B. Lau

DECLARATION OF LUCIUS B. LAU IN SUPPORT OF
TOSHIBA DEFENDANTS' REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION
Case No. C 11-6397 SC
MDL No. 1917

# **EXHIBIT H**

# EXHIBIT A

1    David J. Burman (admitted *pro hac vice*)
     DBurman@perkinscoie.com
2    Cori G. Moore (admitted *pro hac vice*)
     CGMoore@perkinscoie.com
3    Troy P. Sauro, Bar No. 224097
     TSauro@perkinscoie.com
4    Noah G. Purcell (admitted *pro hac vice*)
     NPurcell@perkinscoie.com
5    PERKINS COIE LLP
     Four Embarcadero Center, Suite 2400
6    San Francisco, CA 94111
     Telephone: 415.344.7000
7    Facsimile: 415.344.7302

8    Attorneys for Plaintiff
     Costco Wholesale Corporation
9

10                     UNITED STATES DISTRICT COURT

11                    NORTHERN DISTRICT OF CALIFORNIA

12                       SAN FRANCISCO DIVISION

13

14   IN RE: TFT-LCD (FLAT PANEL)
     ANTITRUST LITIGATION                  Master File No. M:07-1827 SI
15                                          MDL No. 1827

16
     This Document Relates to Individual Case No.    Individual Case No.: 3:11-cv-00058-SI
17   3:11-00058-SI
                                            **COSTCO'S OPPOSITION TO**
18   COSTCO WHOLESALE CORPORATION,          **DEFENDANTS' JOINT MOTION**
                                            **TO COMPEL ARBITRATION**
19                Plaintiff,

20        v.                                Date:    August 26, 2011
                                            Time:    9:00 a.m.
21   AU OPTRONICS CORPORATION, et al.,      Dept:    10 (19th Floor)
                                            Judge:   Hon. Susan Y. Illston
22                Defendants.

23

24

25                       **REDACTED PUBLIC VERSION**

26

27

28
                                                   COSTCO'S RESPONSE TO DEFENDANTS'
                            -1-                     JOINT MOTION TO COMPEL ARBITRATION
                                                   No. 11-00058 (Master File No. 07-md-1827)

**TABLE OF CONTENTS**

PAGE

I.   INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 1

II.  FACTS ............................................................................................................................. 3

     A.   Two of 31 Defendants Have Arbitration Agreements ............................................ 3

     B.   The Arbitration Agreements ................................................................................. 4

III. ARGUMENT ................................................................................................................... 4

     A.   Legal Standard ..................................................................................................... 4

     B.   Costco's Claims Are Excluded From the Arbitration Clause ................................. 4

     C.   Defendants Have Waived "Imposition" of the Arbitration
          Provision .............................................................................................................. 6

     D.   Even if Some Defendants Are Allowed to Compel
          Arbitration, Parties with Whom Costco Never Signed
          Arbitration Agreements Cannot Force Costco to Arbitrate ................................... 10

          1.   Costco Cannot Be Equitably Estopped from
               Asserting Its Right to Litigate Against the Non-
               Signatory Defendants .................................................................................. 12

          2.   Costco Cannot Be Required to Arbitrate Against the
               Non-Signatory Defendants Under an Agency Theory .............................. 17

     E.   Before Costco May Be Forced to Arbitrate with Any
          Defendant, the Court Must Declare the 2004 Arbitration
          Agreement's ▮▮▮▮▮▮▮▮▮ Unenforceable in
          the Antitrust Context ........................................................................................... 21

     F.   A Stay is Unwarranted ........................................................................................ 22

IV.  CONCLUSION ............................................................................................................... 23

# TABLE OF AUTHORITIES

PAGE

**FEDERAL CASES**

*Al-Safin v. Circuit City Stores, Inc.*,
394 F.3d 1254 (9th Cir. 2005)..........................................................................................21

*Am. Pipe & Constr. Co. v. Utah*,
414 U.S. 538 (1974)...........................................................................................................5

*Am. Soc. of Mechanical Engs., Inc. v. Hydrolevel Corp.*,
456 U.S. 556 (1982).........................................................................................................21

*Amisil Holdings Ltd. v. Clarium Capital Mgmt.*,
622 F. Supp. 2d 825 (N.D. Cal. 2007) ...........................................................16, 19, 20, 22

*Arnold v. Arnold Corp.*,
920 F.2d 1269 (6th Cir. 1990)..........................................................................................20

*AT & T Techs., Inc. v. Commc'ns Workers of Am.*,
475 U.S. 643 (1986)..............................................................................................1, 5, 14

*AT&T Corp. v. Innocom Telecom LLC*,
2007 WL 163193 (N.D. Cal. Jan. 17, 2007) .......................................................................9

*Bencharsky v. Cottman Transmission Sys., LLC*,
625 F. Supp. 2d 872 (N.D. Cal. 2008) .............................................................................22

*Booker v. Robert Half Int'l, Inc.*,
413 F.3d 77 (D.C. Cir. 2005) ...........................................................................................21

*Boyd v. Homes of Legend, Inc.*,
981 F. Supp. 1423 (M.D. Ala. 1997), *rev'd on other grounds*,
188 F.3d 1294 (11th Cir. 1999). .......................................................................................18

*Brantley v. Republic Mortg. Ins. Co.*,
424 F.3d 392 (4th Cir. 2005).............................................................................................11

*Bridas Sapic v. Gov't of Turkm.*,
345 F.3d 347 (5th Cir. 2003)............................................................................................13

*Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*,
622 F.3d 996 (9th Cir. 2010).............................................................................................21

*Britton v. Co-op Banking Group*,
4 F.3d 742 (9th Cir. 1993)....................................................................................18, 19, 20

*Britton v. Co-op Banking Group*,
916 F.2d 1405 (9th Cir. 1990)...........................................................................................17

*Brown v. Gen. Steel Domestic Sales, LLC*,
2008 WL 2128057 (C.D. Cal. May 19, 2008) ...........................................................18, 19

ii

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3 | *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
4 | 429 U.S. 477 (1977)............................................................................................................... 21

*Chastain v. Union Sec. Life Ins. Co.*,
5 | 502 F. Supp. 2d 1072 (C.D. Cal. 2007) ....................................................................... passim

6 | *Choctaw Generation L.P. v. Am. Home Assurance Co.*,
7 | 271 F.3d 403 (2d Cir. 2001).............................................................................................. 11

*Comer v. Micor, Inc.*,
8 | 436 F.3d 1098 (9th Cir. 2006)...................................................................................... 11, 12

9 | *Crown, Cork & Seal Co. v. Parker*,
10 | 462 U.S. 345 (1983)............................................................................................................. 5

*EEOC v. Waffle House, Inc.*,
11 | 534 U.S. 279 (2002)........................................................................................................ 5, 10

12 | *Fazio v. Lehman Bros.*,
13 | 340 F.3d 386 (6th Cir. 2003)............................................................................................. 6

*First Options of Chicago, Inc. v. Kaplan*,
14 | 514 U.S. 938 (1995)........................................................................................................ 1, 11

15 | *Fisher v. A.G. Becker Paribas Inc.*,
16 | 791 F.2d 691 (9th Cir. 1986)............................................................................................. 6

*Freeman v. San Diego Ass'n of Realtors*,
17 | 322 F.3d 1133 (9th Cir. 2003)............................................................................................. 3

18 | *Fujian Pacific Elec. Co., Ltd v. Bechtel Power Corp.*,
19 | 2004 WL 2645974 (N.D. Cal. Nov. 19, 2004)..................................................... 14, 15, 17

*Gaines v. Carrollton Tobacco Bd. of Trade, Inc.*,
20 | 386 F.2d 757 (6th Cir. 1967)............................................................................................ 21

21 | *George Fischer Foundry Systems, Inc. v. Adolph H. Hottinger Maschinenbau GmbH*,
22 | 55 F.3d 1206 (6th Cir. 1995).......................................................................................... 21

*Graham Oil Co. v. ARCO Prods. Co.*,
23 | 43 F.3d 1244 (9th Cir. 1994)........................................................................................... 21

24 | *Hill v. GE Power Sys., Inc.*,
25 | 282 F.3d 343 (5th Cir. 2002)........................................................................................... 17

*Hoffman Constr. Co. of Oregon v. Active Erectors & Installers, Inc.*,
26 | 969 F.2d 796 (9th Cir. 1992)............................................................................................ 6

27 | *Hooper v. Advance Am., Cash Advance Ctrs. of Missouri, Inc.*,
28 | 589 F.3d 917 (8th Cir. 2009)............................................................................................. 8

iii

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3    *Howsam v. Dean Witter Reynolds, Inc.,*
         537 U.S. 79 (2002) .......................................................................................................... 11

4
     *IDS Life Insurance Co. v. SunAmerica, Inc.,*
5        103 F.3d 524 (7th Cir. 1996) ....................................................................................... 22, 23

6    *In re Humana Inc. Managed Care Litig.,*
         285 F.3d 971 (11th Cir. 2002), *rev'd on other grounds sub nom.*
7        *PacifiCare Health Sys., Inc. v. Book,* 538 U.S. 401 (2003) .................................. 12, 13, 16

8    *In re TFT-LCD (Flat Panel) Antitrust Litigation,*
         MDL 1827, 2011 WL 1753784 (N.D. Cal. May 9, 2011) (Doc. 2731) ..................... passim
9
     *In re TFT-LCD (Flat Panel) Antitrust Litigation,*
10       MDL 1827, 2011 WL 2650689 (N.D. Cal. July 6, 2011) (Doc. 3034) ........................ 6, 23

11   *In re TFT-LCD (Flat Panel) Antitrust Litigation,*
         MDL 1827 (N.D. Cal. July 14, 2011) (Doc. 3110) .......................................................... 8
12
     *In re TFT-LCD (Flat Panel) Antitrust Litigation,*
13       MDL 1827 (N.D. Cal. Aug. 3, 2011) (Doc. 3213) ....................................................... 2, 23

14   *JLM Industries, Inc. v. Stolt-Nielsen, S.A.,*
         387 F.3d 163 (2d Cir. 2004) ........................................................................................... 15
15
     *Kiskadee Commc'ns (Bermuda), Ltd. v. Father,*
16       No. C 10–05277, 2011 WL 1044241 (N.D. Cal. Mar. 22, 2011) ...................................... 20

17   *Klay v. All Defendants,*
         389 F.3d 1191 (11th Cir. 2004) ....................................................................................... 12
18
     *Kramer v. Hammond,*
19       943 F.2d 176 (2d Cir. 1991) ........................................................................................... 10

20   *Kristian v. Comcast Corp.,*
         446 F.3d 25 (1st Cir. 2006) ............................................................................................. 21
21
     *Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.,*
22       67 F.3d 20 (2d Cir. 1995) ................................................................................................. 9

23   *Letizia v. Prudential Bache Sec., Inc.,*
         802 F.2d 1185 (9th Cir. 1986) ............................................................................. 11, 19, 20
24
     *Lyzwa v. Chu,*
25       1998 WL 326768 (N.D. Cal. Feb. 2, 1998) .................................................................... 10

26   *Maganallez v. Hilltop Lending Corp.,*
         505 F. Supp. 2d 594 (N.D. Cal. 2007) ............................................................................. 4
27
     *Menorah Ins. Co. v. INX Reinsurance Corp.,*
28       72 F.3d 218 (1st Cir. 1995) ............................................................................................. 10

iv

1

## TABLE OF AUTHORITIES
### (continued)

2

Page

3   *Miller Brewing Co. v. Fort Worth Distrib. Co.*,
      781 F.2d 494 (5th Cir. 1986)............................................................................................. 9

4
    *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
5     473 U.S. 614 (1985)....................................................................................................... 21

6   *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
      460 U.S. 1 (1983)............................................................................................ 11, 14, 22
7
    *MS Dealer Serv. Corp. v. Franklin*,
8     177 F.3d 942 (11th Cir. 1999)................................................................................ 11, 16

9   *Mundi v. Union Sec. Life Ins. Co.*,
      555 F.3d 1042 (9th Cir. 2009)................................................................................ 11, 13
10
    *Parler v. KFC Corp.*,
11    529 F. Supp. 2d 1009 (D. Minn. 2008) ............................................................................ 7

12  *Petroleum Pipe Ams. Corp. v. Jindal Saw, Ltd.*,
      575 F.3d 476 (5th Cir. 2009)............................................................................................. 8
13
    *Pritzker v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*,
14    7 F.3d 1110 (3d Cir. 1993)............................................................................................ 20

15  *Rankin v. Allstate Ins. Co.*,
      336 F.3d 8 (1st Cir. 2003) ................................................................................................. 9
16
    *Redel's Inc. v. General Elec. Co.*,
17    498 F.2d 95 (5th Cir. 1974).......................................................................................... 21

18  *Ross v. Am. Express Co.*,
      547 F.3d 137 (2d Cir. 2008)................................................................................ 11, 13, 14
19
    *S&H Contractors, Inc. v. A.J. Taft Coal Co.*,
20    906 F.2d 1507 (11th Cir. 1990)........................................................................................ 9

21  *Santa Cruz Med. Clinic v. Dominican Santa Cruz Hosp.*,
      No. C93-20613, 1995 WL232410, at *3 (N.D. Cal. Apr. 17, 1995) ................................. 6
22
    *Sokol Holdings, Inc. v. BMB Munai, Inc.*,
23    542 F.3d 354 (2d Cir. 2008)................................................................... 1, 11, 13, 15

24  *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
      130 S. Ct. 1758 (2010) ...................................................................................................... 4
25
    *United States v. Bestfoods*,
26    524 U.S. 51 (1998).......................................................................................................... 17

27  *United States v. Neumann Caribbean Int'l, Ltd.*,
      750 F.1d 1422 (9th Cir. 1985)......................................................................................... 22
28

v

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*,
    363 U.S. 574 (1960) .......................................................................................................... 4

4

*Van Ness Townhouses v. Mar Indus. Corp.*,
    862 F.2d 754 (9th Cir. 1988) ................................................................................... 2, 9, 10

5

6

*Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.*,
    489 U.S. 468 (1989) ....................................................................................................... 1, 4

7

*Wash. Mut. Fin. Group, LLC v. Bailey*,
    364 F.3d 260 (5th Cir. 2004) ............................................................................................ 12

8

9    **OTHER CASES**

10

*In re Merrill Lynch Trust Co. FSB*,
    235 S.W.3d 185 (Tex. 2007) ............................................................................................ 14

11

**FEDERAL STATUTES**

12

9 U.S.C. § 4 .................................................................................................................... 8, 18, 21

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

vi

1          **I.      INTRODUCTION AND SUMMARY OF ARGUMENT**

2          In this multi-district litigation, started years ago by parties unrelated to Costco, Costco

3    alleged antitrust violations against 31 defendants. Because two of those defendants assert

4    contracts with Costco containing arbitration clauses, all defendants now seek to force Costco to

5    arbitrate its claims. But arbitration "is a matter of consent, not coercion," *Volt Info. Scis., Inc. v.*

6    *Bd. of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 479 (1989), and "a party cannot be

7    required to submit to arbitration any dispute which he has not agreed so to submit," *AT & T*

8    *Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (internal quotation marks

9    and citation omitted). *See also In re TFT-LCD (Flat Panel) Antitrust Litigation* ("*In re Flat*

10   *Panel*"), MDL 1827, 2011 WL 1753784, at \*5 (N.D. Cal. May 9, 2011) (Doc. 2731) ("[T]here is

11   a 'black letter rule that the obligation to arbitrate depends on consent . . . .'") (quoting *Sokol*

12   *Holdings, Inc. v. BMB Munai, Inc.*, 542 F.3d 354, 361-62 (2d Cir. 2008)).

13         The Court should not force Costco into arbitration, and certainly not as to defendants with

14   whom Costco never agreed to arbitrate anything. Even as to the two defendants that allege

15   vendor agreements with Costco, the arbitration provision is inapplicable here. The provision

16   recognizes that the benefits of arbitration largely disappear when a third party has commenced

17   related litigation. That litigation will continue to affect Costco and its vendor even if they

18   arbitrate, and coordination in court with such related litigation could, as is certainly the case here,

19   present greater efficiencies than arbitration. Thus, the provision says that Costco and the vendor

20

21                                        Declaration of Geoff Shavey ("Shavey Decl.") Exhibits

22   A, ¶ 20; C, ¶ 20; E, ¶ 20; G, ¶ 20. That is what has happened here. This case was commenced by

23   third parties unrelated to Costco—the class representatives—and Costco now seeks to bring

24   claims against Defendants as part of that multi-district proceeding, as allowed by the contract.

25   *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) ("[A]rbitration . . . is a

26   way to resolve those disputes—but only those disputes—that the parties have agreed to submit to

27   arbitration.").

28

---

COSTCO'S OPPOSITION TO DEFENDANTS' JOINT MOTION TO COMPEL ARBITRATION
3:07-MD-1827-SI // 3:11-cv-00058-SI

1       Moreover, the two defendants that say Costco "imposed" the bilateral arbitration

2  provision on them (Defendants' Joint Motion to Compel Arbitration ("Motion"), Doc. 3183, at 5)

3  have accepted relief from that imposition and waived any right they may have had to enforce the

4  provision. Those Defendants were aware of the contracts they signed; they have repeatedly acted

5  inconsistently with their claimed right to arbitrate; and their conduct has prejudiced Costco both

6  in terms of its ability to prosecute its case successfully and its investment of enormous time and

7  effort in the MDL proceeding, much of which will be lost if Costco is forced to arbitrate. *See Van*

8  *Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754, 758-59 (9th Cir. 1988) (stating Ninth

9  Circuit test for waiver and finding prejudice where non-movant "relied to [its] detriment on [the

10  movant's] failure to move for arbitration of the arbitrable claims"). It is Defendants' awareness

11  of these added burdens to Costco that is driving their sudden quest for arbitration.

12       Further, there is no justification for allowing the vast majority of Defendants, who never

13  signed arbitration agreements with Costco, to force Costco into arbitration. "[A] nonsignatory

14  defendant faces a heavy burden to show that the signatory plaintiff intended to submit to

15  arbitration, notwithstanding the absence of a formal agreement." *In re Flat Panel*, 2011 WL

16  1753784, at *5 (Doc. 2731). Defendants have utterly failed to satisfy that burden here.

17       Finally, if the Court decides to order Costco to arbitrate with some defendants,[1] the Court

18  should not stay proceedings as to the remaining defendants. As the Court has repeatedly held, as

19  recently as last week, "in light of the many other defendants in this case it would make little sense

20  to stay [a plaintiff's] claims" against certain defendants while the plaintiff arbitrates as to other

21  claims or defendants, as the defendants will have to continue litigating as to other claims and

22  plaintiffs regardless. *In re Flat Panel*, Doc. 3213, at 5 (N.D. Cal. Aug. 3, 2011). Thus, only

23  delay and inefficiency would result from staying Costco's claims if some subset of them must

24  proceed in arbitration.

---

[1] As explained in Section III.E., even if the Court concludes that Costco's claims against some defendants are otherwise subject to arbitration, it may compel arbitration only if it first declares

2

## II.    FACTS

### A.    Two of 31 Defendants Have Arbitration Agreements

In its complaint, Costco named 31 defendants and identified five alleged co-conspirators. *In re Flat Panel*, No. 3:11-cv-00058, Doc. 1.[2] Defendants contend that only two of those defendants ever had arbitration agreements with Costco: Samsung Electronics America, Inc., and Sharp Electronics Corp. Motion at 6; *see also* Shavey Decl. ¶ 16. Defendants seek to boost this number by discussing non-defendant co-conspirators (one of which—NEC LCD Technologies— had a vendor agreement) and citing agreements between Costco and various companies Defendants claim as current or even former affiliates. Motion at 6-7. Defendants are studiously cryptic in much of this discussion, but the details matter.

To begin with, almost all Defendants admit that they had no contract with Costco, and half do not even allege that Costco had a contract with any of their affiliates: AU Optronics Corp.; AU Optronics Corp. America; Chi Mei Optoelectronics Corp.; Chi Mei Optoelectronics, USA, Inc.; Chunghwa Picture Tubes, Ltd.; CMO Japan Co., Ltd.; Hannstar Display Corp.; Hitachi, Ltd.; Hitachi Displays, Ltd.; Hitachi Electronic Devices (USA), Inc.; LG Display Co.; LG Display America; and Tatung Company of America, Inc. *See also* Shavey Decl. ¶ 17.[3]

Some Defendants claim that Costco had arbitration agreements with one or more non-defendant affiliates, but they provide no explanation of their relationship with these affiliates or the products they supposedly sold to Costco. Indeed, they expressly disclaim liability for any sales these entities made to Costco. Motion at 6 n.6. This lack of explanation appears to be for good reason: further explanation would have shown how weak Defendants' assertions are. For example, Defendants note that Costco has an arbitration agreement with Philips Consumer Lifestyle. Philips Consumer Lifestyle is not a defendant—not because Costco strategically omitted it to avoid arbitration, but rather because, to Costco's knowledge, Philips Consumer

---

[2] Costco has voluntarily dismissed five defendants: Chi Mei Corp.; LG Electronics, Inc.; LG Electronics U.S.A., Inc.; Nexgen Mediatech, Inc.; and Nexgen Mediatech USA, Inc. Docs. 2490, 2828. It intends to dismiss two more. Costco may also add additional defendants as it continues to gather evidence and the MDL evolves.

[3] Even if Costco had no vendor agreement with a defendant, it may have purchased directly from that defendant, *see* Shavey Decl. ¶¶ 5, 18, and even if it did not, it still may bring claims against that defendant under federal law, *see, e.g., Freeman v. San Diego Ass'n of Realtors*, 322 F.3d 1133, 1146 (9th Cir. 2003) ("[I]ndirect purchasers can sue for damages if there is no realistic possibility that the direct purchaser will sue its supplier over the antitrust violation.").

3

1  Lifestyle has never sold LCD Products. Shavey Decl. ¶ 19 (it sells personal care products, such

2  as Norelco shavers and Sonicare toothbrushes). *See also id.* ¶ 19 (Epson America, another

3  affiliate Defendants cite, "appears to sell printers, scanners, projectors, and related products").

4  **B.      The Arbitration Agreements**

5        Costco expects vendors to enter a "Basic Vendor Agreement." Shavey Decl. ¶ 5.

6  Vendors typically agree, but not always, and vendors sometimes remove or alter terms. *Id.* The

7  Basic Vendor Agreement incorporates Costco's Standard Terms by reference. *Id.* ¶ 6. Costco

8  updated its Standard Terms in 1997, 2000, and 2004. *Id.* ¶ 7.

9        Each iteration of the Standard Terms provides for a quick arbitration process and excludes

10  from arbitration situations where

11

12        *Id.* Exhibits A, ¶ 20; C, ¶ 20; E, ¶ 20; G, ¶ 20. The 2004 terms added a provision

13  specifying that

14

15                                    *Id.* Exhibit G, ¶ 20.

16                          **III.      ARGUMENT**

17  **A.      Legal Standard**

18        "A party seeking to compel arbitration bears the burden of proving the existence of a valid

19  and enforceable arbitration agreement . . . ." *Maganallez v. Hilltop Lending Corp.*, 505 F. Supp.

20  2d 594, 599-600 (N.D. Cal. 2007). Moreover, "a nonsignatory defendant faces a heavy burden to

21  show that [a] signatory plaintiff intended to submit to arbitration, notwithstanding the absence of

22  a formal agreement." *In re Flat Panel*, 2011 WL 1753784, at *5 (Doc. 2731).

23  **B.      Costco's Claims Are Excluded From the Arbitration Clause**

24        Defendants fill their brief with references to the federal policy favoring arbitration, but

25  they ignore that "the central or 'primary' purpose of the [Federal Arbitration Act (FAA)] is to

26  ensure that 'private agreements to arbitrate are enforced *according to their terms.*'" *Stolt-Nielsen*

27  *S.A. v. AnimalFeeds Int'l Corp.*, 130 S. Ct. 1758, 1773 (2010) (quoting *Volt*, 489 U.S. at 479)

28  (emphasis added). *See also United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363

                                            4

1   U.S. 574, 582 (1960) ("[A]rbitration is a matter of contract and a party cannot be required to

2   submit to arbitration any dispute which he has not agreed so to submit."); *AT & T*, 475 U.S. at

3   648 (same). Thus, "it is the language of the contract," not some federal policy, "that defines the

4   scope of disputes subject to arbitration." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002).

5       Here, the contracts between Costco and two defendants do provide for quick and

6   inexpensive arbitration for typical vendor disputes, but they exclude claims relating to

7                                               This provision recognizes that where such

8   related litigation is not subject to arbitration and will proceed no matter what, the benefits of

9   arbitration are largely lost. For that reason, the arbitration provision allows related claims to

10  proceed in court. Here, in fact, the Court's active coordination of closely related cases likely

11  makes arbitration less efficient than proceeding in court.

12      Costco's claim falls under the contractual exclusion. Costco had no role in the class

13  representatives commencing this claim, and those proceedings will continue, and will involve

14  Costco at least in discovery, regardless of whether Costco arbitrates with any defendants.

15      Defendants will argue that Costco's claim ceased being

16                                  when Costco opted out of the direct purchaser class and

17  filed its complaint. But that argument ignores the purpose of the provision in question and the

18  nature of class actions. Costco's claims against Defendants            at the time the direct

19  purchaser class representatives filed their claims and sought to represent Costco's interests. That

20  is why, for example, the statute of limitations for Costco's claims was tolled while the Court

21  considered whether to certify the class. *See, e.g., Crown, Cork & Seal Co. v. Parker*, 462 U.S.

22  345, 353 (1983) ("[C]ommencement of a class action suspends the applicable statute of

23  limitations as to all asserted members of the class.") (quoting *Am. Pipe & Constr. Co. v. Utah*,

24  414 U.S. 538, 554 (1974)).

25      Furthermore, Defendants' blithe assertion that "All of Costco's Claims As to All

26  Defendants Relate to Costco's Vendor Agreements" cannot withstand even passing scrutiny.

27  Motion at 9. Defendants contend that Costco had vendor agreements with only two of them, and

28  even as to those Defendants Costco's claims do not turn in any way on interpreting or enforcing

                                               5

COSTCO'S OPPOSITION TO DEFENDANTS' JOINT MOTION TO COMPEL ARBITRATION
3:07-MD-1827-SI // 3:11-cv-00058-SI

1  the vendor agreements. *See, e.g., Fazio v. Lehman Bros.*, 340 F.3d 386, 395 (6th Cir. 2003) ("A

2  proper method of analysis here is to ask if an action could be maintained without reference to the

3  contract or relationship at issue. If it could, it is likely outside the scope of the arbitration

4  agreement."); *Santa Cruz Med. Clinic v. Dominican Santa Cruz Hosp.*, No. C93-20613, 1995

5  WL232410, at *3 (N.D. Cal. Apr. 17, 1995) (denying motion to compel and saying the "claims

6  are not arbitrable because no language in the contracts . . . needs to be interpreted in order to

7  evaluate the merits of plaintiffs' antitrust claims"). And, of course, Costco's claims against the

8  many Defendants without vendor agreements could not depend on such agreements. Defendants'

9  motion is thus plainly distinguishable from the motion to compel arbitration filed earlier by AU

10  Optronics against Nokia. There, the Court concluded that "[a]ll of the purchases at issue . . . were

11  made under the" parties' contract. *In re Flat Panel*, 2011 WL 2650689, at *5 (N.D. Cal. July 6,

12  2011) (Doc. 3034). That is not the case here, where many of the purchases at issue were not

13  made under a contract between the parties, and, indeed, Costco had no vendor agreement with the

14  vast majority of Defendants.

15  **C.    Defendants Have Waived "Imposition" of the Arbitration Provision**

16          "A party seeking to prove waiver of a right to arbitration must demonstrate: (1)
            knowledge of an existing right to compel arbitration; (2) acts inconsistent with
17          that existing right; and (3) prejudice to the party opposing arbitration resulting
18          from such inconsistent acts."

19  *In re Flat Panel*, 2011 WL 2650689, at *7 (Doc. 3034) (quoting *Fisher v. A.G. Becker Paribas*

20  *Inc.*, 791 F.2d 691, 694 (9th Cir. 1986)). All three requirements are satisfied here.

21          First, there can be no question that Defendants, at least those who have vendor agreements

22  with Costco, knew of their right to seek arbitration. *See, e.g., Hoffman Constr. Co. of Oregon v.*

23  *Active Erectors & Installers, Inc.*, 969 F.2d 796, 798 (9th Cir. 1992) ("[I]t cannot be said that

24  Active lacked knowledge of the right to compel arbitration. The contract itself called for

25  arbitration of disputes between Active and Hoffman."). Defendants suggest that they learned of

26  the agreements only through discovery from Costco, Motion at 3, but that pretense plainly fails.

27  As the Court has recognized, all of these contracts "are presumably in defendants' possession,"

28  and Defendants should not be allowed to rely on ignorance of their own contracts to avoid waiver.

6

1  *In re Flat Panel*, 2011 WL 1753784, at \*5-6 (Doc. 2731); *see also Parler v. KFC Corp.*, 529 F.
2  Supp. 2d 1009, 1014 (D. Minn. 2008) ("[W]hether plaintiffs actually knew of the arbitration
3  clause in their contracts is irrelevant; that knowledge is imputed as a matter of law."). Indeed,
4  when Defendants moved in March 2011 to stay litigation by the direct purchaser class (a group
5  that had included Costco and that included numerous purchasers much smaller than Costco), they
6  conceded "their knowledge of the arbitration clauses at issue." *In re Flat Panel*, 2011 WL
7  1753784, at \*2 (Doc. 2731). And Costco sent vendors periodic reminder notices of their
8  contracts. Shavey Decl. ¶ 8.

9      Second, Defendants took numerous acts inconsistent with their current demand for
10  arbitration, acts that induced reliance by Costco and allowed Defendants to obtain information
11  potentially unavailable to them in arbitration. The Court has noted that throughout litigation by
12  the direct purchaser class, to which Costco belonged, "defendants . . . engaged in conduct that is
13  inconsistent with their professed intention to assert arbitration rights in this case." *In re Flat
14  Panel*, 2011 WL 1753784, at \*3 (Doc. 2731). The Court nonetheless allowed Defendants an
15  opportunity to seek arbitration, at least against members of the direct purchaser class, by filing a
16  motion by June 3, 2011. In an order "Relat[ing] to All Direct Purchaser Actions," *id.* at \*1, the
17  Court noted that Defendants' failure to file such a motion "shall constitute waiver of the right to
18  arbitrate the claims." *Id.* at 8. Defendants nonetheless chose not to file, again acting
19  "inconsistent with their professed intention to assert arbitration rights." *Id.* at \*6.

20      Defendants' behavior as to Costco was more clearly and repeatedly inconsistent, more
21  likely strategic, and more harmful. As the Court said as to the class, and as is even clearer as to
22  Costco, "defendants' previous conduct in this litigation evinces either previous indifference to the
23  arbitration clauses they now seek to assert or, possibly, a strategic decision to delay their
24  enforcement." *Id.* at \*3. Not only did they seek to dismiss Costco's claims when Costco was
25  merely a member of the direct purchaser class, but days before the June 3 deadline, when the
26  question of arbitration was squarely before them (even if they thought the Court's order
27  applicable only to the class), they moved to dismiss Costco's claim as an opt-out plaintiff. These
28  motions to dismiss sought decisions on the merits, not merely to clarify jurisdictional issues, and

7

COSTCO'S OPPOSITION TO DEFENDANTS' JOINT MOTION TO COMPEL ARBITRATION
3:07-MD-1827-SI // 3:11-cv-00058-SI

1    were inconsistent in substance and timing with a request for arbitration: "A party waives

2    arbitration by seeking a decision on the merits before attempting to arbitrate." *Petroleum Pipe*

3    *Ams. Corp. v. Jindal Saw, Ltd.*, 575 F.3d 476, 480 (5th Cir. 2009); *Hooper v. Advance Am., Cash*

4    *Advance Ctrs. of Missouri, Inc.*, 589 F.3d 917, 921 (8th Cir. 2009) ("[A] request to dispose of a

5    case on the merits before reaching arbitration is inconsistent with resolving the case through

6    arbitration.").

7         Moreover, after the June 3 deadline and two weeks before filing their motion to compel

8    arbitration with Costco, Defendants entered a stipulation with Costco and other plaintiffs

9    extending the deadlines for Defendants' expert reports, altering other dates, and confirming the

10    trial and other schedules applicable to various opt-out plaintiffs, including Costco. *In re Flat*

11    *Panel*, Doc. 3110 (July 14, 2011). As part of that stipulation, Defendants agreed that Costco

12    belonged in the first direct action plaintiff track and that trial on Costco's claims would occur in

13    November 2012. *Id.* In negotiating and accepting that agreement, Defendants never raised or

14    reserved the option to seek arbitration. Declaration of David Burman ("Burman Decl.") ¶ 9.

15         Defendants also requested extensive discovery from Costco both before and after Costco

16    opted out of the direct purchaser class, imposing significant burdens on Costco. Declaration of

17    Cori Gordon Moore ("Moore Decl.") ¶¶ 3-9. In April 2011, Defendants (through Toshiba) served

18    Costco with document requests and a 30(b)(6) deposition notice seeking testimony on 22 topics.

19    *Id.* ¶ 5. Costco has invested significant time and resources in collecting and producing documents

20    in response to these requests and preparing and making available a corporate representative to be

21    deposed. *Id.* ¶¶ 5-8. These responsive discovery efforts are ongoing. *Id.* ¶¶ 6-9.

22         Critically, Defendants took acts that vitiated the heart of the arbitration provision at issue.

23    The essence of the provision is limiting time and expense. It specifies that

24

25                                                                Shavey

26    Decl. Exhibits A, ¶ 20; C, ¶ 20; E, ¶ 20; G, ¶ 20. While these procedures would be extremely

27    difficult if not impossible for an antitrust case of this size, Defendants' motion necessarily

28    invokes them. 9 U.S.C. § 4 (aggrieved party may petition "for an order directing that such

8

COSTCO'S OPPOSITION TO DEFENDANTS' JOINT MOTION TO COMPEL ARBITRATION
3:07-MD-1827-SI // 3:11-cv-00058-SI

1  arbitration proceed in the manner provided for in such agreement"). But Defendants' delay has
2  eliminated their intended benefit, at least to Costco. Throughout this litigation, Defendants have
3  argued that they need additional time to prepare their cases, that delay is warranted until after
4  their criminal proceedings conclude, and that presenting their defenses will take great time and
5  care. The Court and Special Master have often accepted their arguments. *See, e.g., In re Flat*
6  *Panel*, Docs. 2615, 3025, 3026. Defendants cannot spend years pleading for additional leeway to
7  present their cases and then, once they are ready, turn around and demand an immediate chance to
8  try their case in a very limited time frame and forum. Burman Decl. ¶¶ 10-14.

9  Furthermore, Defendants waited nearly eight months after Costco filed its complaint to
10  move to compel arbitration, a delay many courts have deemed inconsistent with an arbitration
11  demand, and which is particularly so here where the delay since Costco's complaint is twice the
12  length of the entire period the arbitration provision contemplates for resolution and Costco's
13  claim had been part of this litigation since it was first asserted by the direct purchaser class. *See,*
14  *e.g., AT&T Corp. v. Innocom Telecom LLC*, 2007 WL 163193 (N.D. Cal. Jan. 17, 2007) (six
15  months); *S&H Contractors, Inc. v. A.J. Taft Coal Co.*, 906 F.2d 1507, 1514 (11th Cir. 1990)
16  (eight months); *Miller Brewing Co. v. Fort Worth Distrib. Co.*, 781 F.2d 494, 497 (5th Cir. 1986)
17  (less than eight months); *Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20, 26
18  (2d Cir. 1995) (seven months).

19  In short, Defendants repeatedly engaged in acts inconsistent with their alleged right to
20  arbitrate; now that they have obtained the benefits of those acts, they seek to avoid the burdens.
21  This the Court should not allow.

22  Third, Defendants' acts prejudiced Costco in terms of money, time, and Costco's legal
23  position. Costco need show only "a modicum of prejudice" to justify a waiver finding, *Rankin v.*
24  *Allstate Ins. Co.*, 336 F.3d 8, 12 (1st Cir. 2003), and Costco has suffered far more than that here.

25  Prejudice is present where the non-movant "relied to [its] detriment on [the movant's]
26  failure to move for arbitration of the arbitrable claims." *Van Ness*, 862 F.2d at 759. That is
27  precisely what happened here. Because Defendants repeatedly indicated that they intended to
28  defend Costco's claims in court rather than arbitration—e.g., by taking discovery, moving to

9

1 dismiss, deciding not to invoke arbitration with those who remained in the class, and stipulating

2 to a trial schedule with Costco—Costco reasonably relied on those indications and began

3 preparing its case based on the MDL timeline. Costco has therefore agreed to share tasks, costs,

4 and work product with other direct action plaintiffs, has invested hundreds of hours and hundreds

5 of thousands of dollars in those efforts, and has agreed to deadlines based on the first direct action

6 plaintiff track schedule in the MDL. Burman Decl. ¶¶ 11-14. If Costco is instead forced to

7 proceed in arbitration, with its rapid discovery deadlines and limited opportunities to present

8 evidence, Costco will lose the benefit of much of that work and incur substantial additional

9 expense. *Id.* ¶¶ 13-14. Costco thus "relied to [its] detriment on [Defendants'] failure to move for

10 arbitration of the arbitrable claims," *Van Ness*, 862 F.2d at 759, and the legal and financial harms

11 Costco has suffered are plainly sufficient to demonstrate prejudice. *See, e.g.*, *Menorah Ins. Co. v.*

12 *INX Reinsurance Corp.*, 72 F.3d 218, 222 (1st Cir. 1995) (finding "that Menorah incurred

13 expenses as a direct result of INX's dilatory behavior and that that was prejudice enough" to find

14 waiver); *Kramer v. Hammond*, 943 F.2d 176, 179 (2d Cir. 1991) ("Prejudice can be substantive,

15 such as . . . when a party too long postpones his invocation of his contractual right to arbitration,

16 and thereby causes his adversary to incur unnecessary delay or expense."); *Lyzwa v. Chu*, 1998

17 WL 326768, at *4 (N.D. Cal. Feb. 2, 1998) (finding prejudice where "[p]laintiff's attorney . . .

18 has spent hundreds of hours litigating this case and plaintiff has expended tens of thousands of

19 dollars in litigation expenses"). Moreover, the growing prejudice to Costco over the months

20 would have been evident to Defendants' experienced counsel, and thus this prong of the test

21 reinforces the conclusion under the second prong that the delay was inconsistent with ever

22 invoking arbitration. *See* Burman Decl. ¶ 12.

23 **D.  Even if Some Defendants Are Allowed to Compel Arbitration, Parties with Whom Costco Never Signed Arbitration Agreements Cannot Force Costco to Arbitrate**

24

25 Even if the Court were to grant Defendants' motion to compel arbitration with the

26 Signatory Defendants (Samsung Electronics America and Sharp Electronics Corp.), it should

27 deny Defendants' motion as to the other Defendants. Costco never agreed to arbitrate with these

28 Non-Signatory Defendants, and "nothing in the [FAA] authorizes a court to compel arbitration

10

1   . . . by any parties, that are not . . . covered in the agreement." *Waffle House*, 534 U.S. at 289.

2   The Non-Signatory Defendants nonetheless assert that Costco must arbitrate with them, relying

3   on theories of equitable estoppel and agency.[4] Neither applies here.

4       Before explaining why Defendants' theories are inapplicable, it is important to clarify

5   when and how this issue should be resolved. Contrary to Defendants' suggestion that an

6   arbitrator should decide which Defendants, if any, Costco must arbitrate with, Motion at 6 n.6, the

7   Supreme Court has held that "a gateway dispute about whether the parties are bound by a given

8   arbitration clause raises a 'question of arbitrability' for a court to decide." *Howsam v. Dean*

9   *Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) (citing *Kaplan*, 514 U.S. at 943-46). *See also*

10  *Chastain v. Union Sec. Life Ins. Co.*, 502 F. Supp. 2d 1072, 1076 (C.D. Cal. 2007) ("Defendant

11  has cited no case in which the question of non-signatory enforcement was submitted to the

12  arbitrator."). That is why the Ninth Circuit and other circuits routinely decide such questions

13  rather than leaving them for arbitrators.[5]

14      In deciding "whether a particular party is bound by [an] arbitration agreement," "the

15  liberal federal policy regarding the scope of arbitrable issues is inapposite." *Comer v. Micor,*

16  *Inc.*, 436 F.3d 1098, 1104 n.11 (9th Cir. 2006). Instead, "a nonsignatory defendant faces a heavy

17  burden to show that the signatory plaintiff intended to submit to arbitration, notwithstanding the

18  absence of a formal agreement." *In re Flat Panel*, 2011 WL 1753784, at *5 (Doc. 2731) (citing

19  *Sokol Holdings*, 542 F.3d 354, and *Ross v. Am. Express Co.*, 547 F.3d 137 (2d Cir. 2008)). Thus,

20  Defendants' suggestion that Costco must arbitrate, despite the absence of an agreement to do so,

21  because of "Costco's interdependent claims," Motion at 13, is irrelevant; when "there is no

22  arbitration agreement between the" parties, the non-signatory "will be forced to resolve . . .

23  related disputes in different forums" because "federal law *requires* piecemeal resolution when

24

25

---

26  [4] The Non-Signatory Defendants never mention any other theory as to why Costco must arbitrate with them, and rightly so. Other possible theories—incorporation by reference, assumption, veil-piercing, or third-party beneficiary status (*Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1045 & n.2 (9th Cir. 2009))—are plainly inapplicable.

27  [5] *See, e.g., Comer*, 436 F.3d 1098; *Brantley v. Republic Mortg. Ins. Co.*, 424 F.3d 392 (4th Cir. 2005); *Choctaw*

28  *Generation L.P. v. Am. Home Assurance Co.*, 271 F.3d 403 (2d Cir. 2001); *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942 (11th Cir. 1999); *Letizia v. Prudential Bache Sec., Inc.*, 802 F.2d 1185 (9th Cir. 1986).

11

1   necessary to give effect to an arbitration agreement." *Moses H. Cone Mem'l Hosp. v. Mercury*

2   *Constr. Corp.*, 460 U.S. 1, 20 (1983).

3           **1.    Costco Cannot Be Equitably Estopped from Asserting Its Right to Litigate
                    Against the Non-Signatory Defendants**

4

5           The Non-Signatory Defendants provide only a cursory argument that they may compel

6   Costco to arbitrate based on equitable estoppel, and with good reason: a more thorough

7   explanation would expose the bankruptcy of their position.

8           Equitable estoppel, as its name suggests, is an equitable doctrine whose purpose is to

9   "'preclude[] a party from claiming the benefits of a contract while simultaneously attempting to

10  avoid the burdens that contract imposes.'" *Comer*, 436 F.3d at 1101 (quoting *Wash. Mut. Fin.*

11  *Group, LLC v. Bailey*, 364 F.3d 260, 267 (5th Cir. 2004)). *See also Chastain*, 502 F. Supp. 2d at

12  1078 ("The purpose of estoppel is to prevent a plaintiff from availing himself of the favorable

13  parts of a contract while disavowing the unfavorable parts—here, the arbitration clause.").

14          In all cases, the lynchpin for equitable estoppel is equity, and the point of applying
            it to compel arbitration is to prevent a situation that would fly in the face of

15          fairness. The purpose of the doctrine is to prevent a plaintiff from, in effect, trying
            to have his cake and eat it too; that is, from relying on the contract when it works

16          to his advantage by establishing the claim, and repudiating it when it works to his
            disadvantage by requiring arbitration.

17

18  *In re Humana Inc. Managed Care Litig.*, 285 F.3d 971, 976 (11th Cir. 2002) (internal citations

19  and quotation marks omitted), *rev'd on other grounds sub nom. PacifiCare Health Sys., Inc. v.*

20  *Book*, 538 U.S. 401 (2003).[6] This basic purpose does not apply here; nor does the doctrine.

21          Costco's complaint does not in any way "'claim[] the benefits of a contract while

22  simultaneously attempting to avoid the burdens that contract imposes.'" *Comer*, 436 F.3d at 1101

23  (quoting *Wash. Mut.*, 364 F.3d at 267). Costco has not asserted breach of contract, and its

24  complaint never even mentions any contract, much less relies on one. The reason is not that

25

26

27  [6] In *PacifiCare*, the Supreme Court addressed only the unrelated question of whether a court could invalidate an
    arbitration agreement when it was unclear whether the agreement barred damages required by statute. For that

28  reason, all other aspects of the Eleventh Circuit's ruling in *Humana*, including its equitable estoppel analysis, are still
    good law. *See, e.g., Klay v. All Defendants*, 389 F.3d 1191, 1195-96 & n.3, 1998-99 & nn.5, 6 (11th Cir. 2004).

                                                    12
    COSTCO'S OPPOSITION TO DEFENDANTS' JOINT MOTION TO COMPEL ARBITRATION
    3:07-MD-1827-SI // 3:11-cv-00058-SI

1 Costco sought to avoid arbitration; it is that Costco's claim does not depend on its contracts in the
2 slightest. The contracts are at most incidental, and no question is raised as to their performance.

3      This alone should suffice to reject the Non-Signatory Defendants' invocation of equitable
4 estoppel, for "[t]he plaintiff's actual dependance on the underlying contract in making out the
5 claim against the nonsignatory defendant is . . . always the *sine qua non* of an appropriate
6 situation for applying equitable estoppel." *Humana*, 285 F.3d at 976. *See also Mundi*, 555 F.3d
7 at 1047 (refusing to apply equitable estoppel to force a plaintiff to arbitrate with a non-signatory
8 defendant where "[t]he resolution of [the plaintiff's] claim does not require the examination of
9 any provisions of the [agreement]"); *Chastain*, 502 F. Supp. 2d at 1080 (finding that "equitable
10 considerations do[] not compel arbitration" because "Plaintiff has done nothing to rely on or
11 invoke the terms of the cardmember agreement, while attempting to avoid arbitration of those
12 claims," and "there simply is no reason in equity to estop Plaintiff from disclaiming the
13 arbitration clause in an agreement that he has otherwise not invoked").

14      The Non-Signatory Defendants' argument ignores another basic principle about equitable
15 estoppel. "Estoppel does not apply unless 'the totality of the evidence supports an objective
16 intention to agree to arbitrate.'" *In re Flat Panel*, 2011 WL 1753784, at \*5 (Doc. 2731) (quoting
17 *Ross*, 547 F.3d at 148). Thus, "there is a 'black letter rule that the obligation to arbitrate depends
18 on consent,' and cases that rely on estoppel to compel arbitration with nonsignatories 'simply
19 extend its contours somewhat by establishing that the consent need not always be expressed in a
20 formal contract made with the party demanding arbitration.'" *Id.* (quoting *Sokol Holdings*, 542
21 F.3d at 361-62). For that reason, "a nonsignatory defendant faces a heavy burden to show that the
22 signatory plaintiff intended to submit to arbitration, notwithstanding the absence of a formal
23 agreement," and "must present . . . evidence sufficient to demonstrate such intent." *Id.* Here,
24 however, the Non-Signatory Defendants provide no evidence that Costco consented to arbitrate
25 with them. In entering vendor agreements with Samsung Electronics America and Sharp
26 Electronics Corp., Costco could not possibly have contemplated that it was agreeing to arbitrate
27 with dozens of other entities, including many competitors of those two. *Cf. Bridas Sapic v. Gov't*
28

13

COSTCO'S OPPOSITION TO DEFENDANTS' JOINT MOTION TO COMPEL ARBITRATION
3:07-MD-1827-SI // 3:11-cv-00058-SI

1 | *of Turkm.*, 345 F.3d 347, 362 (5th Cir. 2003) ("Parties are presumed to be contracting for

2 | themselves only.").

3 | Ignoring both the purpose and basic requirements of the equitable estoppel doctrine, the

4 | Non-Signatory Defendants seek to invoke the doctrine merely because Costco alleges that they

5 | conspired with the Signatory Defendants in fixing the prices of LCD Products. Motion at 2, 10-

6 | 12. But it cannot be that any time a plaintiff alleges an antitrust conspiracy that includes a

7 | signatory it must arbitrate with all the conspirators. It need not even sue them all, or the one with

8 | the contract, to obtain a complete remedy. And while contractual provisions can be part of some

9 | antitrust violations (e.g., exclusive dealing), that is not the case here. Moreover, even Defendants

10 | seem to recognize the absurdity of their view: when they have sought to compel arbitration with

11 | other direct action plaintiffs, they have done so individually, not as a group, even though those

12 | other plaintiffs made the same allegations as Costco did as to Defendants' joint conduct. *See,*

13 | *e.g., In re Flat Panel*, Doc. 3018 (LG's motion to compel arbitration with SB Liquidation Trust);

14 | Doc. 2991-1, at 9 (Defendants' request that Florida be required to arbitrate "claims governed by

15 | purchase agreements containing arbitration clauses"). Defendants do not and cannot explain why

16 | equitable estoppel should apply here when they never mentioned it in those motions.

17 | Defendants can point to no case going nearly as far as the rule they seek, which is not

18 | surprising because doing so would fly in the face of the Supreme Court's consistent holdings that

19 | "arbitration is a matter of contract and a party cannot be required to submit to arbitration any

20 | dispute which he has not agreed so to submit"—no matter how "efficient" such joint arbitration

21 | might be. *AT & T*, 475 U.S. at 648.[7] The cases Defendants do cite do not mean what Defendants

22 | say, as is clear from their text and from subsequent opinions by the courts that decided them.

23 |

24 | [7] *See also Moses H. Cone*, 460 U.S. at 20 (holding that, despite allegations of joint misconduct on the part of a signatory and non-signatory defendant, the non-signatory defendant could not be forced into arbitration because

25 | "federal law *requires* piecemeal resolution when necessary to give effect to an arbitration agreement"); *Ross*, 547 F.3d at 148 ("[A]pplication of estoppel in the context of conspiracy allegations is problematic . . . because arbitration

26 | is of course a matter of contract [and] under general principles of contract law parties should not be compelled to arbitrate unless the totality of the evidence supports an objective intention to agree to arbitrate.") (internal quotation

27 | marks and citation omitted); *In re Merrill Lynch Trust Co. FSB*, 235 S.W.3d 185, 194 (Tex. 2007) (observing that a test based merely on concerted misconduct "would sweep independent entities and even complete strangers into

28 | arbitration agreements" and that "allowing arbitration contracts to become binding on that basis would make them easier to enforce than other contracts, contrary to the Arbitration Act's purpose").

14

1       Defendants lead with out-of-context dicta from the unpublished opinion in *Fujian Pacific*

2   *Elec. Co., Ltd v. Bechtel Power Corp.*, 2004 WL 2645974 (N.D. Cal. Nov. 19, 2004). Defendants

3   claim *Fujian* means that "a Plaintiff is estopped from refusing to arbitrate with a corporate family

4   member alleged to be liable for overcharges incurred on an affiliate's contract." Motion at 10.

5   But the part of *Fujian* that Defendants cite is not the holding, it is a summary of another court's

6   decision. *Fujian*'s actual holding was simply that equitable estoppel applied because the

7   plaintiff's claim against the non-signatory relied on the contract containing the arbitration clause.

8   2004 WL 2645974, at *6 (explaining that the plaintiff "ask[ed] the court to determine whether

9   [the signatories'] duties have been breached in order to establish [the non-signatory's] liability").

10       Defendants next cite *JLM Industries, Inc. v. Stolt-Nielsen, S.A.*, 387 F.3d 163 (2d Cir.

11   2004), for the same proposition. But there the Court made clear that it did not "mean to suggest

12   that a claim against a co-conspirator of a party alleged to have engaged in antitrust violations will

13   always be intertwined to a degree sufficient to work an estoppel." *Id.* at 178 n.7. And the Second

14   Circuit has since made clear that Defendants' reading of *JLM* goes farther "than that opinion

15   intended." *Sokol*, 542 F.3d at 359. As that Court has explained, in its prior cases, "the promise to

16   arbitrate by . . . the entity opposing arbitration . . . was reasonably seen on the basis of the

17   relationships among the parties as extending not only to . . . its contractual counterparty, but also

18   to [the non-signatory], an entity that was, or would predictably become, with [the plaintiff's]

19   knowledge and consent, affiliated or associated with [the signatory defendant] in such a manner

20   as to make it unfair to allow [the plaintiff] to avoid its commitment to arbitrate on the ground that

21   [the non-signatory] was not the very entity with which [the plaintiff] had a contract." *Id.* at 361.

22   Thus, even if this Court adopts the Second Circuit's view at its broadest, each Non-Signatory

23   Defendant must show that Costco's "promise to arbitrate" with a Signatory Defendant "was

24   reasonably seen on the basis of the relationships among the parties as extending . . . to [the non-

25   signatory]." *Id.* The Non-Signatory Defendants have not made and cannot make such a showing.

26   Even if they could, they would still have to show "that the subject matter of the dispute was

27   intertwined with the contract providing for arbitration." *Id. See also Chastain*, 502 F. Supp. 2d at

28   1078-79 (explaining that "to determine whether claims are intertwined, the Court must look to the

15

1   duties breached by Defendant as alleged in the Complaint" and whether the "complaint is based

2   on the nonsignatory's alleged breach of . . . the agreement") (internal quotation marks and

3   citations omitted). But, as already noted, Costco's claim in no way turns on its contracts with the

4   Signatory Defendants.

5        This last factor also explains why Defendants' reliance on *MS Dealer Service Corp. v.*

6   *Franklin*, 177 F.3d 942 (11th Cir. 1999), is misguided. Defendants argue, Motion at 11, that *MS*

7   *Dealer* holds that the "application of equitable estoppel is warranted . . . when the signatory to the

8   contract containing the arbitration clause raises allegations of . . . substantially interdependent and

9   concerted misconduct by both the nonsignatory and one or more of the signatories to the

10   contract." *MS Dealer*, 177 F.3d at 947 (citations and internal quotation marks omitted). But, as

11   the Eleventh Circuit has since explained, "[t]his contention is only tenable if the passage is read

12   completely out of context." *Humana*, 285 F.3d at 976. "In all cases, the lynchpin for equitable

13   estoppel is equity," and "[t]he purpose of the doctrine is to prevent a plaintiff . . . from relying on

14   the contract when it works to his advantage by establishing the claim, and repudiating it when it

15   works to his disadvantage by requiring arbitration." *Id.* (citations and internal quotation marks

16   omitted). "The plaintiff's actual dependance on the underlying contract in making out the claim

17   against the nonsignatory defendant is therefore always the *sine qua non* of an appropriate

18   situation for applying equitable estoppel." *Id.* As noted, however, the "sine qua non" of

19   equitable estoppel is not present here, and Defendants cannot—try as they might—bootstrap their

20   way into that doctrine simply by pointing to their conspiracy.

21        Defendants also rely on *Amisil Holdings Ltd. v. Clarium Capital Mgmt.*, 622 F. Supp. 2d

22   825 (N.D. Cal. 2007), but, once again, the case is plainly distinguishable. There, "[a]bsent the

23   [agreement that included the arbitration clause], none of [the plaintiff's] claims would lie." *Id.* at

24   841. Thus, the plaintiff was unfairly seeking to "use the Agreement as a sword and at the same

25   time choose to ignore it as a shield," which the court refused to allow. *Id.* Here, Costco relies not

26   at all on its vendor agreements, and it is instead Defendants who seek to use them as a sword.

27        Because Defendants' legal argument is so weak, they make a last ditch appeal to "notions

28   of fair play and equity," beseeching the Court to require Costco to arbitrate against the Non-

16

COSTCO'S OPPOSITION TO DEFENDANTS' JOINT MOTION TO COMPEL ARBITRATION
3:07-MD-1827-SI // 3:11-cv-00058-SI

1  Signatory Defendants because Costco has done *them* the disservice of suing them for conspiring
2  to fix prices. Motion at 12. This plea hardly deserves a response. Equitable estoppel has never
3  been held to require a plaintiff to bear a burden in exchange for the "benefit" of being able to sue
4  wrongdoers.

5  Indeed, if equity has any application here, it is to *Defendants'* strategic attempts to "have
6  it both ways." Whether or not the Signatory Defendants have waived the arbitration provision, a
7  different test should apply to the Non-Signatory Defendants. On this issue it is they, not Costco,
8  that seek to invoke equity, and yet they have not done equity. Their delay was at least objectively
9  tactical and has prejudiced Costco, and that alone should halt consideration of their request. [8]

10  In addition, the Non-Signatory Defendants seek to compel arbitration on the ground that
11  they conspired with the Signatory Defendants, but then turn around and deny that they are co-
12  conspirators. *Compare* Motion at 2 (citing conspiracy allegations) *with* Motion to Dismiss, Doc.
13  2808, at 13-14 ("Costco cannot plausibly allege that unrelated Defendants are agents and
14  principals of each other for purposes of a conspiracy merely because some of them participated in
15  joint-ventures or trade associations."), and Defendants' Joint Reply in Support of Motion to
16  Dismiss, Doc. 3202, at 9-10 (asserting a "'deeply ingrained' presumption that distinct corporate
17  family members act separately and independently") (citing *United States v. Bestfoods*, 524 U.S.
18  51, 61 (1998)). It is Defendants, not Costco, that are seeking to have their cake and eat it too.

19         **2.**     **Costco Cannot Be Required to Arbitrate Against the Non-Signatory**
                     **Defendants Under an Agency Theory**
20

21  Defendants seem to think they can use the agency theory to demand arbitration because
22  Costco alleges that they worked together in carrying out their conspiracy. That is not the law.

23

24

25  [8] Even if the Court were to find that Costco is equitably estopped, the Court need not compel arbitration with the
Non-Signatory Defendants. Rather, "[i]n light of the equitable nature of the relief that defendant[s] seek[], . . . the
26  court has considerable discretion to select a remedy." *Fujian*, 2004 WL 2645974, at *7-8. For example, in *Fujian*,
the court decided that the plaintiff was equitably estopped from proceeding immediately with litigation, but it did *not*
compel the plaintiff to arbitrate with the non-signatory; instead, it stayed the litigation pending arbitration with the
27  signatory defendants. *Id* at *8. *See also, e.g., Hill v. GE Power Sys., Inc.*, 282 F.3d 343, 349 (5th Cir. 2002)
(affirming district court's refusal to compel arbitration against the non-signatory defendants after finding equitable
28  estoppel). Here, as explained below, there is no reason even to stay because the MDL will proceed in any event.

17

1    To begin with, a plaintiff's allegations are not enough to establish an agency relationship
2  sufficient to invoke the agency doctrine; instead, Defendants must actually prove that the Non-
3  Signatory Defendants were agents of the Signatory Defendants. *See, e.g., Britton v. Co-op*
4  *Banking Group*, 916 F.2d 1405, 1414 (9th Cir. 1990) ("remand[ing] the case to the district court
5  for further determination and fact-finding as to whether the" non-signatory seeking to invoke the
6  arbitration clause was actually an agent of the signatory); *Chastain*, 502 F. Supp. 2d at 1075
7  ("The trial court sits as a trier of fact, weighing all the declarations and other evidence to reach a
8  final determination" on "the question of whether a nonsignatory to an arbitration agreement can
9  compel a signatory to submit to arbitration."); *Brown v. Gen. Steel Domestic Sales, LLC*, 2008
10  WL 2128057, at *7 & n.45 (C.D. Cal. May 19, 2008) (denying the non-signatory defendants'
11  motion to compel arbitration where "[t]he non-signatory defendants make no argument that they
12  are in fact agents of [the signatory defendant]" but instead "rely exclusively on the allegations in
13  the [plaintiffs'] complaint"); 9 U.S.C. § 4 (requiring court or jury trial of facts upon which
14  applicability of arbitration provision depends). But Defendants' have already indicated that they
15  will "contest [their] liability [for the sales of their unnamed and alleged affiliates] before the
16  arbitrator or before this Court" on the merits. Motion at 6 n.6. And in seeking to compel
17  arbitration with other direct action plaintiffs, Defendants have not even claimed to be one
18  another's agents. *See, e.g., In re Flat Panel*, Doc. 3018; Doc. 2991-1.

19    Even if a plaintiff's allegations were enough to invoke the agency doctrine, Costco alleges
20  only that Defendants acted as "the principal, agent, or joint venturer of, or for, other Defendants
21  *with respect to the acts, violations, and course of conduct alleged by Costco*." Complaint ¶ 48
22  (emphasis added). This alleges an agency relationship only with respect to Defendants' illegal
23  conduct, *not* a general principal-agent relationship or even a principal-agent relationship in
24  carrying out the vendor agreements, which is what Defendants must prove. *See, e.g., Britton v.*
25  *Co-op Banking Group*, 4 F.3d 742, 747 (9th Cir. 1993) (applying the agency test only after
26  finding that the non-signatory "was an agent, officer and employee of [the signatory defendant]");
27  *Boyd v. Homes of Legend, Inc.*, 981 F. Supp. 1423, 1432 (M.D. Ala. 1997) (finding the agency
28  theory inapplicable because "there is no basis here to conclude that an agency relationship exists

18

COSTCO'S OPPOSITION TO DEFENDANTS' JOINT MOTION TO COMPEL ARBITRATION
3:07-MD-1827-SI // 3:11-cv-00058-SI

1    between the [non-signatory defendant] and the [signatory defendant]"), *rev'd on other grounds*,

2    188 F.3d 1294 (11th Cir. 1999).[9] But Defendants surely would not argue that the Non-Signatory

3    Defendants are—like true *agents* of the Signatory Defendants, such as employees or officers—

4    authorized to act for and on behalf of them, generally or under the vendor agreement, or that the

5    Signatory and Non-Signatory Defendants share the fiduciary relationship of trust and confidence

6    that exists between principal and agent.

7        Defendants' agency claim plainly must fail with respect to the Non-Signatory Defendants

8    who are not even affiliates of the Signatory Defendants, as there is simply no way that these non-

9    signatory corporations are general *agents* of their *competitors* in fulfilling their vendor

10    agreements. But Defendants' agency argument as to the Signatory Defendants' affiliates fails as

11    well. For example, Defendants' argument relies on the notion that Sharp Corp. (a non-signatory)

12    is an agent for its subsidiary, Sharp Electronics Corp. (a signatory), and similarly that Samsung

13    Electronics Co., Ltd. (a non-signatory), is an agent for its subsidiary, Samsung Electronics

14    America, Inc. (a signatory). It would be a rare company if the parent corporation were really the

15    agent of its subsidiaries, rather than the other way around, and Defendants do not allege, much

16    less prove, that they were exceptions to the rule.

17        Moreover, even if the Court were to find that some of the Non-Signatory Defendants were

18    agents of the Signatory Defendants, that would only begin the inquiry. Agents of a signatory can

19    compel the signatory plaintiff to arbitrate only if "(1) the wrongful acts of the agents for which

20    they are sued relate to their behavior as agents or in their capacities as agents . . . and (2) the

21    claims against the agents arise out of or relate to the contract containing the arbitration clause."

22    *Amisil*, 622 F. Supp. 2d at 832 (citing *Britton*, 4 F.3d 742, and *Letizia v. Prudential Bache Sec.,*

23    *Inc.*, 802 F.2d 1185 (9th Cir. 1986)). Defendants can satisfy neither prong.

24        Assuming that some Non-Signatory Defendants are agents of the Signatory Defendants,

25    Defendants have not shown that Costco sued those Non-Signatory Defendants for acts that "relate

---

26    [9] Even as to Defendants' illegal conduct, the Complaint does not specifically allege an agent-principal relationship

27    between each of the Non-Signatory Defendants and *the Signatory Defendants*. Instead, Costco alleges that each "Defendant" acted as the agent for "other Defendants"—not "the Signatory Defendants." On this basis, the court in

28    *Brown* rejected an argument just like Defendants', finding that "the [plaintiffs] do not specifically allege that the non-signatory defendants are, or are being sued as, agents of [the signatory defendant] . . . ." 2008 WL 2128057, at *7.

19

COSTCO'S OPPOSITION TO DEFENDANTS' JOINT MOTION TO COMPEL ARBITRATION
3:07-MD-1827-SI // 3:11-cv-00058-SI

1    to their behavior as agents" of the Signatory Defendants. For example, in *Amisil*, the "complaint

2    demonstrate[d] that the individual [non-signatory] defendants [we]re being sued *precisely*

3    *because of their duties to [the plaintiff]* as officers and managers of [the signatory defendant]."

4    *Amisil*, 622 F. Supp. 2d at 835 (emphasis added). Not so here, where Costco sues the Non-

5    Signatory Defendants because they each, of their own accord and regardless of any agency

6    relationship with any Signatory Defendant, participated in the conspiracy to fix LCD prices.[10]

7        Defendants also have not satisfied, and cannot satisfy, the second prong of the agency

8    test—that "the claims against the [alleged] agents [of the Signatory Defendants] arise out of or

9    relate to the contract containing the arbitration clause." *Amisil*, 622 F. Supp. 2d at 832. *See, e.g.*,

10    *Britton*, 4 F.3d at 748 (concluding that the non-signatory defendant's alleged wrongdoing did not

11    relate to or arise out of the contract containing the arbitration clause because "[t]he sum and

12    substance of [the plaintiffs'] allegations are that [the non-signatory defendant] . . . [committed]

13    independent acts of fraud, unrelated to any provision or interpretation of the contract").

14        Nor are the animating reasons for the agency doctrine applicable here. There are two

15    reasons why courts have found non-signatory agents covered by an arbitration agreement. First,

16    "'[a]n entity . . . can only act through its employees, and an arbitration agreement would be of

17    little value if it did not extend to [them].'" *Amisil*, 622 F. Supp. 2d at 833 (quoting *Pritzker v.*

18    *Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110, 1122 (3d Cir. 1993)) (alteration in

19    original). Second, if a party could "avoid the practical consequences of an agreement to arbitrate

20    by naming nonsignatory parties as [defendants] in his complaint, . . . the effect of the rule

21    requiring arbitration would, in effect, be nullified." *Id.* (quoting *Arnold v. Arnold Corp.*, 920 F.2d

22    1269, 1281 (6th Cir. 1990)) (alterations in original).

23        The first reason does not apply here, where none of the Defendants is an employee of an

24    entity with which Costco has signed an arbitration agreement. Neither does the second, as

25

---

26 [10] Indeed, in the vast majority of cases in which courts have invoked the agency theory to compel arbitration with a non-signatory, the non-signatory was not a corporate affiliate of the signatory, but rather an *employee, officer, or*

27 *director* of the signatory. *See, e.g.*, *Letizia*, 802 F.2d at 1187-88 (employee of signatory defendant); *Kiskadee Commc'ns (Bermuda), Ltd. v. Father*, No. C 10–05277, 2011 WL 1044241, at *5 (N.D. Cal. Mar. 22, 2011) (officers

28 and directors of signatory defendant); *Amisil*, 622 F. Supp. 2d at 839 (majority and managing member, CFO, and managing director of signatory defendant).

20

1    Defendants have presented no evidence whatsoever that Costco selectively chose Defendants with

2    which it had no arbitration agreement. Because neither the grounds nor the criteria for applying

3    the agency theory are present, the Court should reject the theory's application here.

4    **E.    Before Costco May Be Forced to Arbitrate with Any Defendant, the Court Must
          Declare the 2004 Arbitration Agreement's ▮▮▮▮▮▮▮▮ Unenforceable**
5    **     in the Antitrust Context**

6         Even if the Court concludes that Costco's claims against some Defendants are otherwise

7    subject to arbitration, it may compel arbitration only if it first declares the 2004 agreement's

8    ▮▮▮▮▮▮▮▮▮ unenforceable in the antitrust context.[11] The 2004 arbitration

9    agreement, which Defendants presumably believe applicable to at least their post-2004 sales to

10   Costco, forbids ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ but it

11   specifies that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

12   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Shavey Decl.

13   Exhibit G, ¶ 20.[12] Though this limitation is enforceable in many types of disputes, such as

14   contract claims, it is unenforceable in this context, ▮▮▮▮▮▮▮▮▮▮▮

15   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

16   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ [3] This Court has agreed

17   [11] This is a question for the Court, not the arbitrator. *See Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*,
     622 F.3d 996, 1000 (9th Cir. 2010) ("[W]hen a plaintiff argues that an arbitration clause, standing alone, is
18   unenforceable—for reasons independent of any reasons the remainder of the contract might be invalid—that is a
     question to be decided by the court."); *Kristian v. Comcast Corp.*, 446 F.3d 25, 47-48 (1st Cir. 2006) (holding that
19   question whether provision barring treble damages was enforceable in an antitrust case was "a question of
     arbitrability" to be resolved by the Court and that the provision was unenforceable and had to be severed).
20   [12] The 1997 and 2000 arbitration agreements forbade ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
     ▮▮▮▮▮▮▮▮▮▮▮▮▮ *See, e.g., Am. Soc. of Mechanical Engs., Inc. v. Hydrolevel Corp.*, 456 U.S. 556, 575
21   (1982) (finding that "the antitrust private action was created primarily as a remedy for the victims of antitrust
     violations," and "[t]reble damages 'make the remedy meaningful by counter-balancing the difficulty of maintaining a
22   private suit' under the antitrust laws") (quoting *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 486 n.10
     (1977)); *Brunswick*, 429 U.S. at 485-86 ("Section 4 . . . is in essence a remedial provision," and "the treble-damages
23   provision, which makes awards available only to injured parties, and measures the awards by a multiple of the injury
     actually proved, is designed primarily as a remedy."). Thus, this earlier provision ▮▮▮▮▮▮▮▮▮▮▮
24   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

     [13] *E.g., Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628, 637 n.19 (1985) (stating that if
25   a contractual provision operated "as a prospective waiver of a party's right to pursue statutory remedies for antitrust
     violations, we would have little hesitation in condemning the agreement as against public policy"); *George Fischer
26   Foundry Systems, Inc. v. Adolph H. Hottinger Maschinenbau GmbH*, 55 F.3d 1206, 1210 (6th Cir. 1995) ("[I]f any
     part of a contract . . . waives a party's right to collect damages for antitrust violations, the provision is void for public
27   policy reasons."); *Redel's Inc. v. General Elec. Co.*, 498 F.2d 95, 99 (5th Cir. 1974) ("Releases may not be executed
     which absolve a party from liability for future violations of our antitrust laws."); *Gaines v. Carrollton Tobacco Bd. of
28   Trade, Inc.*, 386 F.2d 757, 759 (6th Cir. 1967) ("[I]t seems clear as a matter of law that . . . an agreement, if executed

                                                          21

1     that "an arbitration agreement cannot be made to serve as a vehicle for the waiver of statutory

2     rights." *Bencharsky v. Cottman Transmission Sys., LLC*, 625 F. Supp. 2d 872, 882 (N.D. Cal.

3     2008).

4     **F.    A Stay is Unwarranted**

5         If the Court concludes that Costco must arbitrate with some but not all Defendants, that is

6     no reason to stay litigation of Costco's claims that will remain in the MDL. In arguing otherwise,

7     Defendants misstate the law and the facts.

8         Defendants cite *IDS Life Insurance Co. v. SunAmerica, Inc.*, 103 F.3d 524 (7th Cir. 1996),

9     for the proposition that "a stay is required where related litigation with a non-signatory could

10    have a preclusive effect on legitimate arbitral proceedings." Motion at 13. That is not what

11    *SunAmerica* held, and it is not the law. *See Moses H. Cone*, 460 U.S. at 20 n.23 (noting that the

12    decision whether "to stay litigation among the non-arbitrating parties pending the outcome of the

13    arbitration" "is one left to the district court . . . as a matter of its discretion").[14] In *SunAmerica*,

14    the Seventh Circuit held that where a non-signatory defendant "ask[s] the district court to stay

15    the case against them pending the resolution of the same issue in an arbitration between the same

16    plaintiffs and" a signatory defendant, the judge "must make a *discretionary* judgment" applying

17    "the normal rules for parallel-proceeding abstention." 103 F.3d at 529-30 (emphasis added).

18    True, the court went on to say that courts should stay related litigation if "a party to an arbitration

19    agreement, trying to get around it, sue[d] not only the other party to the agreement but some

20    related party with which it ha[d] no arbitration agreement, in the hope that the claim against the

21    other party [would] be adjudicated first and have preclusive effect in the arbitration." *Id.* at 530.

22    in a fashion calculated to waive damages arising from future violations of the antitrust laws, would be invalid on
public policy grounds."). *See also, e.g., Booker v. Robert Half Int'l, Inc.*, 413 F.3d 77, 79 (D.C. Cir. 2005) (Roberts,

23    J.) ("Statutory claims may be subject to agreements to arbitrate, so long as the agreement does not require the
claimant to forgo substantive rights afforded under the statute."); *Al-Safin v. Circuit City Stores, Inc.*, 394 F.3d 1254,

24    1261 (9th Cir. 2005) (holding that an arbitration agreement violates the *Mitsubishi* rule if "it limits the remedies that
would otherwise be available in a judicial forum"); *Graham Oil Co. v. ARCO Prods. Co.*, 43 F.3d 1244, 1247-48 (9th

25    Cir. 1994) (holding arbitration clause unenforceable because it "compels Graham Oil to surrender important
statutorily-mandated rights," including exemplary damages).

26    [14] *See also In re Flat Panel*, 2011 WL 2650689, at *9 (Doc. 3034) ("It is within the Court's discretion to stay all or
part of the litigation associated with the dispute between Nokia and AUO.") (citing *United States v. Neumann*

27    *Caribbean Int'l, Ltd.*, 750 F.2d 1422, 1427 (9th Cir. 1985)); *Amisil*, 622 F. Supp. 2d at 842 ("[I]t may be advisable to
stay litigation among the nonarbitrating parties pending the outcome of the arbitration. That decision is one left to the

28    district court . . . as a matter of its discretion to control its docket.") (internal quotation marks and citation omitted).

22

1    But that is plainly not happening here. Costco is not trying to rush to court to get a preclusive

2    ruling as to arbitration proceedings; if anything, arbitration would likely proceed first here.

3    Moreover, given joint and several liability, if Costco wanted to avoid arbitration, it could have

4    named as few defendants as possible and only those with which it had no arbitration agreement.

5    Instead, Costco is seeking a full, fair, and efficient resolution of its claims.

6         Given that it is within the Court's discretion whether to stay Costco's claims that remain

7    in the MDL, the Court must consider what will best promote judicial economy and avoid hardship

8    to the parties. As the Court has noted, there is little benefit in staying related litigation pending

9    arbitration in this MDL proceeding when many of the claims will proceed in the MDL anyway

10   and all defendants are "defendant[s] in many other proceedings in this MDL and must therefore

11   conduct [their] defense regardless of whether [any one] matter is stayed." *In re Flat Panel*, Doc.

12   3213, at 5. For that reason, this Court has declined to stay Dell's litigation as to AUO, even

13   though there even the party subject to arbitration is the same. *Id.* Moreover, even though the

14   Court compelled Nokia to arbitrate all of its disputes with AUO, it still allowed Nokia "to pursue

15   litigation with the other alleged co-conspirators." *In re Flat Panel*, 2011 WL 2650689, at *9

16   (Doc. 3034). The Court should do the same here. As for hardship, Defendants would suffer no

17   great harm if some had to proceed in litigation at the same time that others arbitrated. As the

18   Court well knows, the plaintiffs and defendants in this action have agreed to coordinated

19   discovery and briefing schedules, and "given that [each defendant here] is a defendant in many

20   other proceedings in this MDL and must therefore conduct its defense regardless of whether this

21   matter is stayed," *In re Flat Panel*, Doc. 3213, at 5, no additional hardship would come from

22   having to litigate with Costco as planned.

23                          **IV.    CONCLUSION**

24        Two of several dozen defendants claim an arbitration clause. The clause, by its terms, is

25   inapplicable here. Even if it did apply, Defendants waived any right to enforce it by their

26   intentional conduct and the resulting prejudice to Costco. Moreover, there is simply no basis for

27   forcing Costco to arbitrate with parties with whom it never consented to arbitrate. Costco

28   respectfully asks that the Court deny Defendants' Motion to Compel Arbitration in its entirety

                                              23

COSTCO'S OPPOSITION TO DEFENDANTS' JOINT MOTION TO COMPEL ARBITRATION
3:07-MD-1827-SI // 3:11-cv-00058-SI

1    based on the contract language or waiver. If the Court believes any claims are subject to

2    arbitration, they should be limited to Costco's claims against the Signatory Defendants, and the

3    Court must first invalidate the                              in this context. There is no basis for staying

4    Costco's claims that remain in court.

5    DATED: August 8, 2011                    s/ David J. Burman

                                             David J. Burman (*pro hac vice*)
6                                            DBurman@perkinscoie.com
                                             Cori G. Moore (*pro hac vice*)
7                                            CGMoore@perkinscoie.com
                                             Troy P. Sauro, Bar No. 224097
8                                            TSauro@perkinscoie.com
                                             Noah G. Purcell (*pro hac vice*)
9                                            NPurcell@perkinscoie.com
                                             **Perkins Coie** LLP
10                                           Four Embarcadero Center, Suite 2400
                                             San Francisco, CA 94111-4131
11                                           Telephone: 415.344.7000
                                             Facsimile: 415.344.7050
12
                                             Attorneys for Plaintiff
13                                           Costco Wholesale Corp.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                    24
COSTCO'S OPPOSITION TO DEFENDANTS' JOINT MOTION TO COMPEL ARBITRATION
3:07-MD-1827-SI // 3:11-cv-00058-SI

# **<u>EXHIBIT I</u>**

# EXHIBIT B

United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

IN RE: TFT-LCD (FLAT PANEL) ANTITRUST
LITIGATION

No. M 07-1827 SI
MDL No. 1827

_____/

This Order Relates To:

No. C 11-0058 SI

COSTCO WHOLESALE CORPORATION,

Plaintiff,

v.

AU OPTRONICS CORPORATION, *et al.*,

Defendants.

_____/

**ORDER GRANTING IN PART
DEFENDANTS' JOINT MOTION TO
COMPEL ARBITRATION**

Now before the Court is defendants' joint motion to compel arbitration of the claims filed by Costco Wholesale Corporation ("Costco"). Having considered the arguments presented in the moving papers, the Court hereby GRANTS IN PART defendants' motion.

**BACKGROUND**

This case arises as part of a multidistrict litigation that involves allegations of a global price-fixing conspiracy in the market for liquid crystal display ("LCD") panels. On March 28, 2010, this Court certified a class of "All persons and entities who, between January 1, 1999 and December 31, 2006, directly purchased a [Thin-Film Transistor]-LCD panel from any defendant or any subsidiary thereof, or any named affiliate or any named co-conspirator." Order Granting in Part and Denying in Part Direct Purchaser Plaintiffs' Motion for Class Certification, Master Docket No. 1641, at 34 (March 28, 2010). In late 2010, Costco opted out of the direct-purchaser class action and filed its own antitrust

Case 3:07-cv-05944-SC Document 1303 Filed 06/08/12 Page 2 of 12

United States District Court
For the Northern District of California

1    action in the Western District of Washington. Its case was subsequently transferred to this Court by

2    order of the Judicial Panel on Multidistrict Litigation and was deemed related to MDL No. 1827.

3          Costco's complaint alleges that defendants "conspired . . . for the purpose and effect of raising

4    and maintaining prices and reducing capacity and output for Liquid Crystal Display (LCD) panels, and

5    products containing such panels, sold to Costco and others." Compl. at ¶1. The complaint includes

6    claims under the Sherman Act, 15 U.S.C. § 1, and the antitrust laws of Washington, California, Arizona,

7    Illinois, and Florida. *Id.* at ¶¶179-208.

8          On July 25, 2011, defendants filed a joint motion to compel arbitration of all of Costco's claims.

9    Defendants assert that Costco signed valid, enforceable arbitration agreements with all of its LCD

10   product suppliers. Further, because "Costco alleges that interdependent and concerted conduct by all

11   Defendants, acting as one, caused injury to Costco," defendants argue that Costco must arbitrate its

12   claims against every defendant, including those with which it had no agreement to arbitrate. Motion

13   at 11.

14

15                                        **LEGAL STANDARD**

16         Section 4 of the Federal Arbitration Act ("FAA") permits "a party aggrieved by the alleged

17   failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition

18   any United States District Court . . . for an order directing that . . . arbitration proceed in the manner

19   provided for in [the arbitration] agreement." 9 U.S.C. § 4. Upon a showing that a party has failed to

20   comply with a valid arbitration agreement, the district court must issue an order compelling arbitration.

21   *Id.*

22         International commercial arbitration agreements involving a United States corporation are

23   governed by Chapter 2 of the FAA, which codifies the United Nations Convention on the Recognition

24   and Enforcement of Foreign Arbitral Awards (the "New York Convention" or "Convention"). 9 U.S.C.

25   § 206. A district court may compel arbitration not only in its own district but also in a foreign location

26   if the proposed arbitration is governed by the Convention. *Id.* Arbitration agreements governed by the

27

28                                                    2

New York Convention are also governed by Chapter 1 of the FAA to the extent that the FAA and the Convention are not in conflict. 9 U.S.C. § 208.

The Supreme Court has stated that the FAA espouses a general policy favoring arbitration agreements. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *see also Hall Street Assoc., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 581 (2008). Federal courts are required to rigorously enforce agreements to arbitrate. *See Hall Street Assoc.*, 552 U.S. at 582. Courts are also directed to resolve any "ambiguities as to the scope of the arbitration clause itself . . . in favor of arbitration." *Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 476 (1989). The federal policy favoring enforcement of arbitration agreements "applies with special force in the field of international commerce." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985).

The Ninth Circuit has held that, in determining whether to issue an order compelling arbitration under the New York Convention, the Court may not review the merits of the dispute but must limit its inquiry to determining whether:

> (1) there is an agreement in writing within the meaning of the Convention; (2) the agreement provides for arbitration in the territory of a signatory of the Convention; (3) the agreement arises out of a legal relationship, whether contractual or not, which is considered commercial; and (4) a party to the agreement is not an American citizen, or that the commercial relationship has some reasonable relation with one or more foreign states.

*Balen v. Holland America Line Inc.*, 583 F.3d 647, 654-55 (9th Cir. 2009) (citation omitted). "If these questions are answered in the affirmative, a court is required to order arbitration unless the court finds the agreement to be null and void, inoperative, or incapable of being performed." *Prograph Intern. Inc. v. Barhydt*, 928 F. Supp. 983, 988 (N.D. Cal. 1996) (citation omitted); *see also* 9 U.S.C. § 4.

The FAA provides that arbitration agreements generally "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. However, the strong presumption in favor of arbitration "does not confer a right to compel arbitration of any dispute at any time." *Volt*, 489 U.S. at 474. This is because "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed

3

so to submit." *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960); *see also McDonnell Douglas Finance Corp. v. Pennsylvania Power & Light Co.*, 858 F.2d 825, 831 (2d Cir. 1988) (stating that the purpose of the FAA "was to make arbitration agreements as enforceable as other contracts, but not more so" (internal quotation marks omitted)). Additional grounds for declining to enforce an arbitration agreement include unconscionability and party waiver. *See Rent-A-Center, West, Inc. v. Jackson*, 130 S. Ct. 2772 (2010) (unconscionability); *Moses*, 460 U.S. at 24-25 (waiver).

## DISCUSSION

Defendants' motion is based upon Costco's "Basic Vendor Agreement," which Costco typically asks all of its vendors to sign. McAhren Decl., Exh. A at 85-86. The vendor agreement incorporates by reference Costco's "Standard Terms," which contain the following arbitration provision:

> **DISPUTES AND ARBITRATION.** All claims and disputes that (1) are between Vendor and Costco Wholesale or either's subsidiaries, parents, affiliates, officers, directors and/or employees, and (2) arise out of or relate to the Agreement Documents or their subject matter, interpretation, performance or enforcement, or any other agreement, transaction or occurrence between Vendor and Costco Wholesale . . . shall be arbitrated under the Commercial Arbitration Rules of the American Arbitration Association ("AAA") in English at Seattle, Washington . . . . Notwithstanding the above, Costco Wholesale or Vendor may bring court proceedings or claims against each other (I) solely as part of separate litigation commenced by an unrelated third party . . . .

Shavey Decl., Exh. G, at ¶20.

Although Costco typically entered into vendor agreements with its suppliers, defendants have produced vendor agreements for only two defendants: Samsung Electronics America, Inc. and Sharp Electronics Corp.[1] *See* Shavey Decl., ¶16; *see also* McAhren Decl., Exhs. B, C. Defendants have also produced agreements Costco had in place with non-defendants which are members of the Toshiba, Epson, and Philips/LG corporate families. *See* McAhren Decl., Exhs. D (vendor agreement with Toshiba America Consumer Products, Inc.), E (Toshiba Hawaii), F (Epson America), G (Philips Consumer Lifestyle). In addition, defendants have produced two agreements with other companies that

---

[1]The Sharp Vendor Agreement is not signed by Costco. Costco has not argued that this means the contract is invalid.

United States District Court
For the Northern District of California

apparently sold LCD products to Costco, although their precise relationship with defendants is unclear. *Id.* at Exhs. H (vendor agreement with Mitsubishi Digital Electronics America, Inc.), I (Medion AG).

This Court previously addressed the scope of an arbitration clause similar to Costco's in the Nokia direct-purchaser action. *See* Order Granting AU Optronics Corporation's Motion to Compel Arbitration, Master Docket No. 3034, at 6-9 (July 6, 2011) ("Nokia Arbitration Order"). The arbitration clause in that case covered "any disputes related to" the purchasing agreement Nokia had with its suppliers. Given the clause's broad language, the Court found that Nokia's antitrust claims fell within the scope of the clause. *Id.* at 7 ("Under the Ninth Circuit's reasoning, the language 'related to' must be read broadly, to encompass any matter that touches the contractual relationship between the parties.").

Costco's arbitration clause is at least as broad as the clause at issue in the Nokia case, and subjects to arbitration any claim that "relates to" the vendor agreement Costco had in place with its suppliers. Accordingly, to the extent the arbitration clause applies to this case, Costco's state and federal antitrust claims are likewise subject to arbitration.

Costco does not dispute that its vendor agreements contain the above arbitration clause, nor does it dispute that the arbitration clause is broad enough to cover antitrust claims arising out of purchases made pursuant to its vendor agreements. Instead, Costco argues that the terms of the arbitration clause exclude this lawsuit from the clause's reach. Alternatively, Costco argues that defendants have waived their right to enforce the arbitration clause. In the event the Court finds the arbitration clause applicable here, Costco argues that the clause may only be enforced against those defendants which actually signed vendor agreements. Costco also requests that this Court declare the clause's bar to treble damages unenforceable. Finally, Costco objects to the defendants' request for a stay of these proceedings pending the outcome of arbitration. The Court considers each of these issues in turn.

United States District Court
For the Northern District of California

## I.    Applicability of Arbitration Clause

Costco first argues that the text of its arbitration clause explicitly exempts this case from its coverage.  Costco points out that the arbitration clause allows Costco to "bring court proceedings . . . as part of separate litigation commenced by an unrelated third party."  Shavey Decl., Exh. G, at ¶20. According to Costco, this provision recognizes that "the benefits of arbitration are largely lost" when "related litigation is not subject to arbitration."  Opp'n at 5.  Costco argues that the provision authorized its decision to opt out of the direct-purchaser class action and bring its own lawsuit.

The Court agrees with defendants that once Costco opted out of the class action,[2] its lawsuit was no longer "part of separate litigation" within the meaning of the arbitration clause.  Even accepting Costco's description of the provision's purpose, the benefits of arbitration would not be "largely lost" in this instance.  Costco's decision to opt out subjected defendants a new proceeding, separate from the class action, with new discovery deadlines and a trial that will take place in a new district.  Even if Costco's lawsuit was "commenced by" the class action plaintiffs, it ceased being a "part of" that case when Costco opted out of the class.  Accordingly, the Court finds that the arbitration clause covers Costco's claims.

## II.    Waiver

Costco next argues that defendants have waived their right to arbitrate by waiting to raise the issue until eight months after Costco filed its complaint.  "A party seeking to prove waiver of a right to arbitration must demonstrate: (1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts."  *Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 694 (9th Cir. 1986).

Costco argues that defendants have waived their right to arbitrate by filing a motion to dismiss the direct-purchaser class, filing a motion to dismiss Costco's individual complaint, stipulating to an

---

[2]The Court expresses no opinion on the question whether Costco's claims would have been subject to arbitration had it stayed in the class action.

United States District Court

For the Northern District of California

1    extension of the deadlines applicable to proceedings in this MDL, and seeking "extensive discovery"

2    from Costco. It asserts that it has been prejudiced by agreeing "to share tasks, costs, and work product

3    with other direct action plaintiffs," which resulted in its investing "hundreds of hours and hundreds of

4    thousands of dollars in these efforts." Opp'n at 10.

5         The Court finds that defendants have not waived their right to arbitrate. None of the actions

6    Costco has identified is wholly inconsistent with defendants' right to arbitrate. Although defendants

7    sought preliminary discovery from Costco, they limited that discovery to matters involving the

8    arbitrability of Costco's claims once the issue of arbitration arose. *Cf.* Moore Decl., ¶¶6-7. Nor is the

9    fact that defendants filed motions to dismiss inconsistent with their right to arbitrate. This Court has

10   already indicated that seeking to compel arbitration would have difficult before the direct purchaser

11   class was finalized. *See* Order, Master Docket No. 2731, at 6 (May 9, 2011). Further, although

12   defendants filed a motion to dismiss in this case, that motion expressly noted their desire to seek

13   arbitration. *See* Defendants Joint Motion to Dismiss Complaint, Master Docket No. 2808, at 7 n.1 (May

14   24, 2011); *cf.* Nokia Arbitration Order at 11 ("One of the few actions that can clearly be treated as

15   representing AUO's intent is AUO's answer to Nokia's amended complaint," which reserved AUO's

16   right to compel arbitration). And defendants filed their motion to compel arbitration within the time

17   negotiated by the parties for defendants to respond to Costco's complaint. *See* Stipulation and Order

18   Regarding Service and Scheduling, Master Docket No. 2763, at ¶2 (May 13, 2011).

19        The Court also finds that Costco will not be prejudiced by proceeding to arbitration after having

20   engaged in limited substantive engagement with this case. Although Costco may have incurred

21   expenses in connection with the prosecution of its case, Costco would have incurred those expenses

22   regardless of the arbitration demand. *See* Nokia Arbitration Order at 12 ("[E]ven had AUO moved to

23   compel arbitration immediately after Nokia filed its complaint, Nokia would likely still have been

24   required to answer the motion to dismiss, comply with discovery requests, and otherwise engage in this

25   litigation."). Accordingly, the Court finds that defendants did not waive their right to seek arbitration.

26

27

28
                                           7

### III.    Reach of the Arbitration Clause

The parties also dispute the reach of Costco's arbitration clause. Arbitration is clearly required between Costco and defendants Samsung Electronics America, Inc. and Sharp Electronics Corp., both of which signed vendor agreements with Costco. Defendants, however, claim that Costco must arbitrate all of its claims against all defendants, even its claims against those defendants with which Costco signed no arbitration agreement. Defendants argue that arbitration is required because "Costco alleges that interdependent and concerted conduct by all Defendants, acting as one, caused injury to Costco for its purchases under all of it LCD Vendor Agreements." Motion at 11.

To begin with, the Court rejects defendants' argument that all of Costco's claims must be arbitrated. Forcing Costco to arbitrate because defendants entered into a complex, interdependent conspiracy would not only exceed the scope of Costco's arbitration clause, it would also impede the enforceability of the antitrust laws. To rule otherwise would allow defendants to bootstrap their way into arbitration based on nothing more than the very conduct which constituted a violation of the antitrust laws in the first place. *See Ross v. American Exp. Co.*, 547 F.3d 137, 148 (2d Cir. 2008) ("[I]t would be wrong to suggest that a claim against a co-conspirator of a party alleged to have engaged in antitrust violations will always be intertwined to a degree sufficient to work an estoppel." (internal quotation marks omitted)). Further, the Court agrees with Costco that, given that the defendants belong to distinct corporate families, there has been no showing that Costco intended to arbitrate disputes with all defendants at the time it signed its vendor agreements. *See id.* at 146 ("[T]he further necessary circumstance of some relation between Amex and the plaintiffs sufficient to demonstrate that the plaintiffs intended to arbitrate this dispute with Amex is utterly lacking here.").

Although it rejects defendants' argument that all of Costco's claims must be arbitrated, the Court agrees with defendants that Costco must arbitrate its claims against those defendants whose affiliates have arbitration agreements with Costco. The arbitration clause, by its own terms, requires arbitration of any claim against a signatory or its "subsidiaries, parents, affiliates, officers, directors and/or employees." Shavey Decl., Exh. G, ¶20. This is consistent with the general rule that "[w]hen the

8

United States District Court
For the Northern District of California

1 charges against a parent company and its subsidiary are based on the same facts and are inherently

2 inseparable, a court may refer claims against the parent to arbitration even though the parent is not

3 formally a party to the arbitration agreement." *Fujian Pacific Elec. Co. Ltd. v. Bechtel Power Corp.*,

4 2004 WL 2645974, at *6 (N.D. Cal., Nov. 19, 2004) (quoting *J.J. Ryan & Sons, Inc. v. Rhone Poulenc*

5 *Textile, S.A*, 863 F.2d 315, 321-22 (4th Cir.1988)); *see also id.* ("Otherwise the arbitration proceedings

6 between the two signatories would be rendered meaningless and the federal policy in favor of arbitration

7 effectively thwarted."); *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1046 (9th Cir. 2009) (stating

8 that a nonsignatory may enforce an arbitration clause where there is a "close relationship between the

9 entities involved, as well as the relationship of the alleged wrongs to the non-signatory's obligations and

10 duties in the contract and . . . the claims [are] intertwined with the underlying contractual obligations").

11       Accordingly, the Court GRANTS defendants' motion to compel arbitration as to defendants

12 Samsung Electronics America, Inc. and Sharp Electronics Corp. It also GRANTS defendants' motion

13 to the extent Costco's claims against the Toshiba, Epson, and Philips/LG corporate families stem from

14 purchases made pursuant to the vendor agreements Costco had with Toshiba America Consumer

15 Products, Inc., Toshiba Hawaii, Epson America, and Philips Consumer Lifestyle.[3] The Court DENIES

16 the remainder of defendants' motion to compel.

17

18 **IV.**     **Enforceability of Bar to Treble Damages**

19       The 2004 arbitration clause forbids awards of "punitive, exemplary, treble, or other enhanced

20 damages." Shavey Decl., Exh. G, at ¶20. Because this Court has determined that Costco must arbitrate

21

22

23     [3]Costco's obligation to arbitrate these claims, however, only extends as far as its obligation to arbitrate the claims against the signatory to the vendor agreement. Thus, to the extent the vendor

24 agreements did not relate to sales of LCD products, Costco cannot be forced to arbitrate the claims at issue in this lawsuit. For example, defendants have produced vendor agreements that Costco had in

25 place with Philips Consumer Lifestyle and Epson America. Costco claims that neither of these entities sells LCD products. Shavey Decl., ¶19 (stating that Philips Consumer Lifestyle "sells personal care

26 products, such as shavers under the Norelco brand and toothbrushes under the Sonicare brand"); *id.* (stating that Epson America "appears to sell printers, scanners, projectors, and related products"). If

27 Costco is correct that no LCD products were purchased pursuant to those vendor agreements, then their arbitration clauses would obviously not have any application in this proceeding.

28

**United States District Court**
For the Northern District of California

its claims against some defendants, Costco requests that the Court declare the arbitration agreement's bar to treble damages unenforceable. Some courts have indicated that a party may not waive its right to treble damages in the antitrust context through a contractual limitation on recoverable damages. *See*, *e.g.*, *Kristian v. Comcast Corp.*, 446 F.3d 25, 47-48 (1st Cir. 2006) ("On the basis of these precedents, we conclude that the award of treble damages under the federal antitrust statutes cannot be waived."); *Mitsubishi Motors*, 473 U.S. at 637 n.19 (stating that if a contractual agreement had operated "as a prospective waiver of a party's right to pursue statutory remedies for antitrust violations, we would have little hesitation in condemning the agreement as against public policy"). The Court agrees that the arbitration clause's limitation on treble damages is unenforceable. Accordingly, it GRANTS Costco's request and severs the treble damages limitation from the agreement. *See* Shavey Decl., Exh. G, at ¶20 (providing that "[t]he limitations on remedies . . . may be deemed inoperative to the extent necessary to preserve the enforceability of the agreement to arbitrate.").

## IV. Stay of Proceedings

Finally, defendants request that the Court stay these proceedings pending the outcome of arbitration. Given the scope of these MDL proceedings, however, and defendants' extensive involvement in the class and direct-purchaser actions, the Court finds that a stay will have little benefit. Accordingly, the Court DENIES this request. *See United States v. Neumann Caribbean Int'l, Ltd.*, 750 F.2d 1422, 1427 (9th Cir. 1985) (holding that decision to stay proceedings is within district court's discretion).

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS IN PART defendants' joint motion to compel arbitration. To the extent it purchased LCD panels pursuant to vendor agreements, Costco must arbitrate its claims against the corporate affiliates of the signatories to those vendor agreements. The Court also GRANTS Costco's request to sever the limitation on treble

United States District Court
For the Northern District of California

1  damages from the arbitration clause.  Finally, the Court DENIES defendants' request for a stay of

2  proceedings.  Docket No. 31 in 11-0058; Docket No. 3183 in 07-1827.

3

4  **IT IS SO ORDERED.**

5  Dated: September 9, 2011

6                                              SUSAN ILLSTON
                                               United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                         11