# BOIES, SCHILLER & FLEXNER LLP

10 NORTH PEARL STREET* 4th FLOOR* ALBANY, NY 12207* 518-434-0600* FAX 518-434-0665

November 20, 2012

**<u>VIA ECF AND HAND DELIVERY</u>**

The Honorable Samuel P. Conti
United States District Court
450 Golden Gate Avenue
San Francisco, CA 94102

Re:   *In re Cathode Ray Tube ("CRT") Antitrust Litigation,*
*Case No. 07-5944 SC; MDL No. 1917*

Dear Judge Conti:

Pursuant to Local Rule 7.3-(d), the Direct Purchaser Plaintiffs and the Direct Action Plaintiffs in the above-referenced matter wish to bring a recent decision to the Court's attention. Accordingly, Plaintiffs respectfully submit the attached Order Denying Defendants' Joint Motion and Toshiba's Separate Motion for Partial Summary Judgment for Lack of Standing Under *Illinois Brick* and *In re ATM Fee* in *In re TFT-LCD (Flat Panel) Antitrust Litigation*, MDL No. 1827, in support of their Objections to the Special Master's Recommendation Regarding Defendants' Motion for Partial Summary Judgment (*see* MDL Docket No. 1271 and 1273).

Respectfully submitted,

/s/ Guido Saveri
Guido Saveri
*Interim Lead Counsel for the*
*Direct Purchaser Plaintiffs*

/s/ Philip J. Iovieno
Philip J. Iovieno
*Liaison Counsel for the*
*Direct Action Plaintiffs*

# Exhibit A

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: TFT-LCD (FLAT PANEL) ANTITRUST LITIGATION | No. M 07-1827 SI<br>MDL. No. 1827 |
| _____/ | Case Nos. C 09-4997 SI; C 10-4572 SI; C 10-1064 SI; C 10-0117 SI; C 10-4945 SI; C 11-0058 SI |
| This Order Relates to: | |
| *AT&T Mobility LLC, et al. v. AU Optronics Corp., et al.*, C 09-4997 SI | **ORDER DENYING DEFENDANTS' JOINT MOTION AND TOSHIBA'S SEPARATE MOTION FOR PARTIAL SUMMARY JUDGMENT FOR LACK OF STANDING UNDER *ILLINOIS BRICK* AND *IN RE ATM FEE*** |
| *Best Buy Co., Inc., et al. v. AU Optronics Corp., et al.*, C 10-4572 SI | |
| *Dell Inc., et al. v. Sharp Corp., et al.*, C 10-1064 SI | |
| *Electrograph Systems, Inc., et al. v. Epson Imaging Devices Corp., et al.*, C 10-0117 SI | |
| *Target Corp., et al. v. AU Optronics Corp., et al.*, C 10-4945 SI | |
| *Costco Wholesale Corp. v. AU Optronics Corp., et al.*, C 11-0058 SI | |
| _____/ | |

Currently before the Court are defendants' joint motion and Toshiba's separate motion for partial summary judgment for lack of standing under *Illinois Brick* and *In Re ATM Fee*. Having considered the moving papers and the arguments of the parties, and for good cause appearing, the Court hereby DENIES the motions. Docket 6342 and 6367.

## BACKGROUND

In *Illinois Brick*, the Supreme Court held that only direct purchasers of price-fixed goods may bring suit under the federal antitrust laws. *Illinois Brick Co. v. Illinois*, 431 US 720 (1977). Subsequent

Case 3:07-md-01827-SI Document 7180 Filed 11/29/12 Page 4 of 11

cases have outlined limited exceptions to the *Illinois Brick* rule and held that indirect purchasers may have standing to bring suit in one of the following three situations: (1) a pre-existing cost-plus contract with the direct purchaser exists; (2) the indirect purchaser establishes a price-fixing conspiracy between the manufacturer and the middle-man, making the latter entities co-conspirators as to the price paid by the plaintiffs; and (3) customers of the direct purchaser own or control the direct purchaser, or a conspirator owns or controls the direct purchaser. *Royal Printing v. Kimberly-Clark Corp.,* 621 F. 2d 323 (9th Cir. 1980)*; Freeman v. San Diego Ass'n of Realtors*, 322 F. 3d 1133 (9th Cir. 2003).

In a recent decision, the Ninth Circuit clarified the scope of the latter two of these exceptions. *See In Re ATM Fee Antitrust Litigation*, 686 F.3d 741 (9th Cir. 2012). Plaintiffs, automated teller machine ("ATM") cardholders, alleged that the defendants, bank members of an ATM network, engaged in horizontal price fixing by conspiring to fix the fees the banks paid to ATM owners ("interchange fees") when cardholders retrieve cash from an ATM not owned by their bank. *ATM Fee* held that the manufacturer-middleman/co-conspirator exception did not apply because this exception is only applicable if the co-conspirators fix the price paid by the plaintiff, but in that case plaintiff cardholders did not pay the price-fixed fee, the ATM network owners did. *Id.* at 744. With respect to the ownership/control exception, *ATM Fee* held that the "no realistic possibility" inquiry that the Ninth Circuit had recognized in *Freeman* is not a separate exception to the *Illinois Brick* rule, and does not apply outside the ownership or control context. *Id*. at 756-58.

In two separate motions for summary judgment, a joint group of defendants[1] and Toshiba[2] (generally "defendants") argue that pursuant to the holding in *In Re ATM Fee,* plaintiffs lack standing to pursue Sherman and Clayton Act claims because they purchased finished products only and not the

[1]LG Display Co., Ltd. and LG Display America, Inc.; Epson Imaging Devices Corporation and Epson Electronics America, Inc.; AU Optronics Corporation and AU Optronics Corporation America; Philips Electronics North America Corporation; Chunghwa Picture Tubes, Ltd.; HannStar Display Corporation; Mitsui & Co. (Taiwan), Ltd.; Sharp Corporation and Sharp Electronics Corporation; Samsung SDI, Inc., Samsung SDI Co., Ltd., and Samsung SDI America, Inc.; Sanyo Consumer Electronics Co., Ltd.; Hitachi, Ltd., Hitachi Displays, Ltd. (n/k/a Japan Display East, Inc.) and Hitachi Electronic Devices (USA), Inc.; Chimei Innolux Corporation (f/k/a Chi Mei Optoelectronics Corporation), Chi Mei Corporation, Chi Mei Optoelectronics USA, Inc., CMO Japan Co., Ltd., Nexgen Mediatech, Inc. and Nexgen Mediatech USA, Inc.

[2]Toshiba Corporation, Toshiba Mobile Display Co., Ltd., Toshiba America Electronic Components, Inc., and Toshiba America Information Systems, Inc.

United States District Court
For the Northern District of California

price-fixed good, and because no *Illinois Brick* exception applies.

## LEGAL STANDARD

Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only demonstrate to the Court that there is an absence of evidence to support the non-moving party's case. *Id.* at 325.

Once the moving party has met its burden, the burden shifts to the non-moving party to "set out 'specific facts showing a genuine issue for trial.'" *Id.* at 324 (quoting then Fed. R. Civ. P. 56(e)). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence ... will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In deciding a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id.* at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment." *Id.* However, conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir.1979). The evidence the parties present must be admissible. Fed. R. Civ. P. 56(c).

## DISCUSSION

3

United States District Court
For the Northern District of California

Plaintiffs[3] are retailers, distributors, original equipment manufacturers (OEMs), and other businesses which purchased finished products containing price-fixed LCD panels from defendants, co-conspirators, and other related entities.  These Direct Action Purchasers ("DAPs") claim that as a result of these purchases, they sustained damages in the form of overcharges.  Defendants argue that plaintiffs lack standing to sue because they did not directly purchase the price-fixed good, namely, the LCD panel, and no *Illinois Brick* exception applies.  The parties do not dispute that the first two *Illinois Brick* exceptions are inapplicable.  They do, however, interpret the holdings of *ATM Fee* differently, and they dispute how the ownership/control exception, as explained in *ATM Fee,* applies to the case at hand.  Additionally, defendants argue that the exceptions must be evaluated on a purchase-by-purchase basis, and that plaintiffs cannot demonstrate whether each individual finished product contains a panel made by an alleged conspirator.

**1.      Ownership/Control Exception**

Defendants contend that because plaintiffs purchased finished products containing price-fixed LCD panels, not the raw panels themselves, they have no standing, even though the plaintiffs' purchases were made from defendants, co-conspirators and affiliates.  They urge this Court to hold that *ATM Fee* changed and narrowed the scope of *Royal Printing Company v. Kimberly-Clark Corp.*, 621 F.3d 323, 326 (9th Cir. 1980), by limiting the ownership/control exception to cases in which the seller of the price-fixed good (here, the LCD panels) owns/controls the direct purchaser.[4]  Defendants argue that this excludes cases in which a co-conspirator owns/controls the direct purchaser and cases in which the direct purchaser owns/controls the seller or co-conspirator.

The Court disagrees with defendants' interpretation of *ATM Fee*.  In *Royal Printing*, the Ninth

---

[3]Toshiba has withdrawn its motion as to Eastman Kodak Company and Nokia Corporation and Nokia Inc.  Docket Nos. 6473 and 6601.

[4]Toshiba argues that *Royal Printing* is no longer supportable because its reasoning was based on the theory that applying *Illinois Brick* to cases where parental control existed would close off every avenue for private enforcement, but a subsequent case held that *Illinois Brick* does not preempt lawsuits under state indirect purchaser antitrust statutes.  The Court disagrees with Toshiba: state antitrust enforcement would not replace *federal* antitrust liability, which was *Illinois Brick*'s concern.  *See Illinois Brick*, 431 U.S. at 745-46.

4

1    Circuit outlined the ownership/control exception and held that *"Illinois Brick* does not bar an indirect

2    purchaser's suit where the direct purchaser is a division or subsidiary of a co-conspirator." As this Court

3    stated in a previous Order in the Direct Purchaser action, *Royal Printing* was not concerned with the

4    relationship between the manufacturer of a price-fixed product and the direct purchaser; rather, it was

5    concerned with the relationship between the *conspirator* and the direct purchaser.  Docket No. 4108.

6    Indeed, the facts in *Royal Printing* confirm this: Royal Printing sought damages for its purchases from

7    a co-conspirator's wholesaling division, but had never bought any of the parent company's products

8    from that division -- it had only bought products of other defendant manufacturers. *Royal Printing*. 621

9    F.2d at 324.

10       *ATM Fee* did not purport to change the *Royal Printing* standard, but rather applied it to the

11   complicated facts of that case.  Nowhere in the *ATM Fee* decision did the court mandate that the

12   ownership/control relationship be limited *only* to a manufacturer/seller and direct purchaser.  That the

13   facts of that particular case involved only a seller and direct purchasers does not restrict the standard in

14   *Royal Printing,* which involved multiple sellers and direct purchasers.  To the contrary, *ATM Fee*

15   expressly cited the *Royal Printing* standard and then held that the ATM cardholder plaintiffs, who

16   alleged only that the direct purchaser banks owned/controlled the ATM Network (the seller), could not

17   establish ownership/control based on the "ordinary, contemporary, and common meaning" of the word

18   "control."  *ATM Fee*, 686 F.3d at 756-58.  The Court's determination hinged on the facts surrounding

19   stock ownership and board control of the ATM Network and STAR, rather than any purported change

20   in ownership/control standard itself.  Indeed, the *ATM Fee* case effectively refutes defendants' claim

21   that the ownership/control exception can only apply downstream, *id*. at 757-58, by analyzing whether

22   direct purchaser bank defendants owned/controlled seller ATM Network/STAR.

23       The *ATM Fee* opinion never suggested any intention to alter the standard in *Royal Printing*.  The

24   *ATM Fee* discussion recognized that the touchstone question is ownership or control, and clarified that

25   the "realistic possibility of suit" inquiry outlined in *Royal Printing* is not a *separate* exception -- it is

26   an analysis to be done in connection with the ownership/control exception.  As the Court noted,

27   "*Freeman* outlines that, whether a realistic possibility of suit exists, depends on the ownership or control

28   between the direct purchaser and the seller."  *ATM Fee,* at 756.  In this case, plaintiffs argue that the

United States District Court
For the Northern District of California

1    there is evidence of ownership/control between the direct purchaser and a co-conspirator, and they

2    contend that they have standing based on the ownership/control exception outlined in *Royal Printing*

3    and affirmed by *ATM Fee*.[5]

4         The joint defendants argue that plaintiffs are unable to demonstrate that the sellers of LCD panels

5    own/control the direct purchasers in this action. They point to the example of the LG entities and assert

6    that LG Display, an alleged co-conspirator, owns/controls LG Electronics, a direct purchaser, and that

7    plaintiffs admit LG Electronics has never been a division or subsidiary of LG Display, an alleged co-

8    conspirator. They also assert that mere corporate "affiliation" is not sufficient to meet the ownership/

9    control standard. Joint Motion at 18. Toshiba asserts that plaintiffs lack standing because TMD, the

10   only Toshiba entity that manufactured LCD panels during the relevant period, did not own or control

11   TAIS, Toshiba's U.S. subsidiary, and a direct purchaser.

12        However, as discussed *supra*, ownership/control may exist if the direct purchaser owns/controls

13   the seller/manufacturer or if a co-conspirator owns/controls the direct purchaser. Thus, the ownership/

14   control exception will apply if, as plaintiffs allege, LG Electronics owns/controls LG Display, and TAIS

15   is owned by a co-conspirator (TSB, in this case).[6] Using the example of the LG entities, LG Display

16   was formed as a joint venture, with two shareholders, each owning a 50% interest: LG Electronics (an

17   alleged conspirator) and Royal Phillips. *See* Iovieno Decl., Exh. 78, No. 2. However, Royal Philips had

18

---

19   [5]In asserting that plaintiffs lack standing even if the ownership/control exception applies,
20   because they only bought finished products, and not the price-fixed LCD panels, defendants misconstrue
     not only the holding in *Royal Printing*, but the very reasoning of the ownership/control exception. As
21   the court in *ATM Fee* explained, *Royal Printing* created the ownership/control exception because *Illinois
     Brick* would close off "every avenue for private enforcement" if only direct purchasers could sue as "the
22   co-conspirator parent will forbid its subsidiary or division to bring a lawsuit that would only reveal the
     parent's own participation in the conspiracy." *ATM Fee*, 686 F.3d at 756 (quoting *Royal Printing*, 631
23   F.3d at 326-27). These cases make clear that indirect purchasers may sue even if, and precisely *because*,
     they did not purchase the price-fixed good, if it falls within the ownership/control exception. *See ATM
24   Fee*, at 756.

25   [6]To the extent defendants argue that plaintiffs lack standing for finished products purchased by
     or sold to a systems integrator, ODM or other third party before reaching the Direct Action purchasers,
26   the Court finds that a genuine issue of material fact exists as to whether these parties actually buy price-
     fixed panels directly from panel manufacturers or whether they are retained by direct purchaser
27   companies to merely assemble finished products. Plaintiffs assert that these intervening companies do
     not directly purchase price-fixed panels from alleged conspirators and sell them to indirect purchasers,
28   and plaintiffs provide evidence in the form of deposition testimony and an expert report to support these
     assertions. *See* Opposition at 9, 17-18; Iovieno Decl., Exh. 61; Exh. 67.

United States District Court
For the Northern District of California

acquired a 50% interest in LG Electronic's TFT-LCD panel business to form LG Philips, the predecessor to LG Display.  *See id*. Nos. 1-2.  Moreover, LG Display's Shareholder Committee consisted exclusively of members affiliated with LG Electronics or Royal Philips, *see id*. at 14; 36-61, and under the terms of the joint venture agreement, LG Display and LG Electronics agreed to maintain joint ownership of patents relating to TFT-LCD that were not assigned to LG Display, *see id.* at 62.[7] This evidence supports plaintiffs' contention that LG Electronics owns/controls LG Display.

Like LG, Toshiba argues that the only panel-making seller in the Tohiba family is its joint venture, TMD, and TMD does not own/control the direct purchaser, TAIS.  However, it is undisputed that the direct purchaser, TAIS, is wholly owned by Toshiba America, Inc., which is wholly owned by the parent company, TSB, an alleged co-conspirator.[8]  Toshiba Motion at 7.  Further, the evidence demonstrates that TSB controls TMD, and TMD was formed as a joint venture between TSB and Matsushita in April 2002.  *See* Iovieno Decl., Exh. 4 at TSB_LCD _0058000.  At the time of formation, TSB owned a 60% interest in TMD, transferred its panel manufacturing business to TMD, and appointed six of TMD's board members.  *Id*., Exh. 4, 20 at TSB_LCD_0247635, 25 at 32:10–32:21.

This evidence is sufficient to establish standing to present these claims at trial.

## 2.      Proof of Injury and Ownership/Control

Defendants also argue that plaintiffs cannot provide evidence sufficient to show standing because they cannot identify the manufacturer of each LCD panel in the finished products they purchased and thus, they are unable to demonstrate that the products contain panels made by alleged conspirators or that the finished products were sold by a direct purchaser which is owned/controlled by a conspiring seller/manufacturer.

The Court has addressed related issues of proof for purposes of standing in its prior orders.  *See* Docket 4848, 4683.  The Court noted that "[t]he difficulties that defendants have seized on involve

---

[7]*Cf. ATM Fee*, 686 F.3d at 757-58 ("to control STAR [the ATM Network], the Bank Defendants must have had control of Concord's board of directors. . .").

[8]To the extent plaintiffs rely on the jury verdict from the direct-purchaser class action, the Court notes that this verdict is likely to be vacated as part of a settlement agreement between the class and the Toshiba entities, which has received preliminary approval from the Court.  Docket No. 6988.

matters of proof of the plaintiffs' claims. They do not equate to a lack of standing." Docket No. 4683. Here, LG's motion revives the issue of standing of the DAP plaintiffs, which involves the same type of analysis of proof of injury. Additionally, in a separate Order, the Court considered that plaintiffs in antitrust cases benefit from an "especially lenient burden" in demonstrating proof of impact and that the nature of the TFT-LCD industry renders a panel-by-panel proof requirement "inappropriately strict." The Court thus held, "[i]t is therefore unnecessary for plaintiffs to provide evidence of panel-by-panel impact. Rather, plaintiffs may resort to generalized methods of proof." Docket No. 4848. As these Orders indicate, for purposes of standing plaintiffs are not required to identify impact based on each individual panel.

Additionally, defendants argue that because plaintiffs cannot identify the manufacturer of the LCD panels in each of the products they purchased, they cannot satisfy the factual predicate to establish ownership/control of the direct purchasers of those products. Plaintiffs dispute this claim, arguing that there is sufficient evidence to demonstrate that the ownership/control exception applies. Plaintiffs point to a chart submitted by defendants that lists the 151 entities from which plaintiffs purchased the LCD products that form the basis for their federal claims. *See* Berger Decl., Exh. X. Defendants acknowledge that plaintiffs have submitted evidence sufficient on summary judgment to show "downstream, parental ownership or control" of 47 of the 149 direct purchasers identified in plaintiffs' expert reports. *See* Joint Reply at 12-13. They dispute, however, plaintiffs' evidence for the following categories of purchasers: 33 direct purchasers who own/control conspiring sellers, 90 direct purchasers with "attenuated relationships" with conspiring sellers, 29 direct purchasers only minimally owned by a conspiring seller, and 42 direct purchasers which plaintiffs do not discuss. *Id*. at 13-16. Defendants' claims about the evidence of these purchases are without merit. Because ownership/control may be demonstrated between a direct purchaser and a co-conspirator, rather than just a seller, sufficient evidence exists to create a genuine issue of material fact regarding the ability of plaintiffs to show that the product they purchased was manufactured by *any* of the co-conspirators. This is particularly compelling based on the apparent control/ownership between various defendant entities, including their joint ventures, as discussed *supra*, and when viewed in light of the fact that defendants held an overwhelming market

share during the conspiracy period, as this Court has previously identified.[9]  Dkt. 4683.  Accordingly, the Court finds that defendants have failed to meet their burden in demonstrating the absence of evidence to support plaintiffs' claim of standing under *Royal Printing* and *ATM Fee*.

For the foregoing reasons and for good cause shown, the Court hereby DENIES defendants' joint motion and Toshiba's separate motion for partial summary judgment for lack of standing under *Illinois Brick* and *In Re ATM Fee*.  Master Docket Nos. 6342 & 6367.

**IT IS SO ORDERED.**

Dated: November 19, 2012

SUSAN ILLSTON
United States District Judge

---

[9] Defendants' LCD panels were used in 97.4% of LCD TVs, 93.2% of notebook computers, and 87.88% of desktop monitors sold during the relevant period.  Dkt. 4683.

United States District Court
For the Northern District of California