# EXHIBIT 5

Christopher M. Curran (*pro hac vice*)
ccurran@whitecase.com
George L. Paul (*pro hac vice*)
gpaul@whitecase.com
Lucius B. Lau (*pro hac vice*)
alau@whitecase.com
White & Case LLP
701 Thirteenth Street, N.W.
Washington, DC 20005
Telephone: (202) 626-3600
Facsimile: (202) 639-9355

*Counsel to Defendants Toshiba Corporation, Toshiba America, Inc., Toshiba America Information Systems, Inc., Toshiba America Consumer Products, L.L.C., and Toshiba America Electronic Components, Inc.*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
(SAN FRANCISCO DIVISION)

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Case No. 07-5944 SC<br>MDL No. 1917 |
| This Document Relates to:<br><br>Case No. C 11-6397 SC<br><br>COSTCO WHOLESALE CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>HITACHI, LTD., et al.,<br><br>Defendants. | **DECLARATION OF LUCIUS B. LAU IN SUPPORT OF TOSHIBA DEFENDANTS' REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION** |

Case3:07-cv-05944-SC Document1398-1 Filed10/08/12 Page2 of 3

I, Lucius B. Lau, hereby declare as follows:

1. I am Counsel with the law firm of White & Case LLP, counsel for Defendants Toshiba Corporation, Toshiba America, Inc., Toshiba America Information Systems, Inc., Toshiba America Consumer Products, L.L.C., and Toshiba America Electronic Components, Inc. (collectively, the "Toshiba Defendants"). I make this declaration in support of the Toshiba Defendants' Reply in Support of Motion to Compel Arbitration.

2. On August 8, 2011, Costco Wholesale Corporation ("Costco") filed its Opposition to Defendants' Joint Motion to Compel Arbitration in *In re: TFT-LCD (Flat Panel) Antitrust Litigation*, No. M 07-1827 SI (N.D. Cal.), ECF No. 3240. Attached hereto as Exhibit A is a true and correct copy of Costco's Opposition to Defendants' Joint Motion to Compel Arbitration.

3. On September 9, 2011, Judge Illston filed an Order Granting In Part Defendants' Joint Motion to Compel Arbitration in *In re: TFT-LCD (Flat Panel) Antitrust Litigation*, No. M 07-1827 SI, 2011 WL 4017961 (N.D. Cal. Sept. 9, 2011). Attached hereto as Exhibit B is a true and correct copy of Judge Illston's Order Granting In Part Defendants' Joint Motion to Compel Arbitration.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 8th day of October, 2012, in Washington, D.C.

Lucius B. Lau

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

DECLARATION OF LUCIUS B. LAU IN SUPPORT OF
TOSHIBA DEFENDANTS' REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION
Case No. C 11-6397 SC
MDL No. 1917

2

Case3:07-cv-05944-SC Document1398-1 Filed10/08/12 Page3 of 3

## CERTIFICATE OF SERVICE

On October 8, 2012, I caused a copy of "DECLARATION OF LUCIUS B. LAU IN SUPPORT OF TOSHIBA DEFENDANTS' REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION" to be electronically filed via the Court's Electronic Case Filing System, which constitutes service in this action pursuant to the Court's order of September 2, 2008.

Lucius B. Lau

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

DECLARATION OF LUCIUS B. LAU IN SUPPORT OF
TOSHIBA DEFENDANTS' REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION
Case No. C 11-6397 SC
MDL No. 1917

# EXHIBIT A

David J. Burman (admitted *pro hac vice*)
DBurman@perkinscoie.com
Cori G. Moore (admitted *pro hac vice*)
CGMoore@perkinscoie.com
Troy P. Sauro, Bar No. 224097
TSauro@perkinscoie.com
Noah G. Purcell (admitted *pro hac vice*)
NPurcell@perkinscoie.com
PERKINS COIE LLP
Four Embarcadero Center, Suite 2400
San Francisco, CA 94111
Telephone: 415.344.7000
Facsimile: 415.344.7302

Attorneys for Plaintiff
Costco Wholesale Corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: TFT-LCD (FLAT PANEL) ANTITRUST LITIGATION | Master File No. M:07-1827 SI<br>MDL No. 1827 |
| This Document Relates to Individual Case No. 3:11-00058-SI<br><br>COSTCO WHOLESALE CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>AU OPTRONICS CORPORATION, et al.,<br><br>Defendants. | Individual Case No.: 3:11-cv-00058-SI<br><br>**COSTCO'S OPPOSITION TO DEFENDANTS' JOINT MOTION TO COMPEL ARBITRATION**<br><br>Date: August 26, 2011<br>Time: 9:00 a.m.<br>Dept: 10 (19th Floor)<br>Judge: Hon. Susan Y. Illston |

**REDACTED PUBLIC VERSION**

## TABLE OF CONTENTS

PAGE

I. INTRODUCTION AND SUMMARY OF ARGUMENT .......... 1

II. FACTS .......... 3

A. Two of 31 Defendants Have Arbitration Agreements .......... 3

B. The Arbitration Agreements .......... 4

III. ARGUMENT .......... 4

A. Legal Standard .......... 4

B. Costco's Claims Are Excluded From the Arbitration Clause .......... 4

C. Defendants Have Waived "Imposition" of the Arbitration Provision .......... 6

D. Even if Some Defendants Are Allowed to Compel Arbitration, Parties with Whom Costco Never Signed Arbitration Agreements Cannot Force Costco to Arbitrate .......... 10

1. Costco Cannot Be Equitably Estopped from Asserting Its Right to Litigate Against the Non-Signatory Defendants .......... 12

2. Costco Cannot Be Required to Arbitrate Against the Non-Signatory Defendants Under an Agency Theory .......... 17

E. Before Costco May Be Forced to Arbitrate with Any Defendant, the Court Must Declare the 2004 Arbitration Agreement's [redacted] Unenforceable in the Antitrust Context .......... 21

F. A Stay is Unwarranted .......... 22

IV. CONCLUSION .......... 23

## TABLE OF AUTHORITIES

PAGE

### FEDERAL CASES

*Al-Safin v. Circuit City Stores, Inc.*, 394 F.3d 1254 (9th Cir. 2005) .......... 21

*Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974) .......... 5

*Am. Soc. of Mechanical Engs., Inc. v. Hydrolevel Corp.*, 456 U.S. 556 (1982) .......... 21

*Amisil Holdings Ltd. v. Clarium Capital Mgmt.*, 622 F. Supp. 2d 825 (N.D. Cal. 2007) .......... 16, 19, 20, 22

*Arnold v. Arnold Corp.*, 920 F.2d 1269 (6th Cir. 1990) .......... 20

*AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643 (1986) .......... 1, 5, 14

*AT&T Corp. v. Innocom Telecom LLC*, 2007 WL 163193 (N.D. Cal. Jan. 17, 2007) .......... 9

*Bencharsky v. Cottman Transmission Sys., LLC*, 625 F. Supp. 2d 872 (N.D. Cal. 2008) .......... 22

*Booker v. Robert Half Int'l, Inc.*, 413 F.3d 77 (D.C. Cir. 2005) .......... 21

*Boyd v. Homes of Legend, Inc.*, 981 F. Supp. 1423 (M.D. Ala. 1997), *rev'd on other grounds*, 188 F.3d 1294 (11th Cir. 1999) .......... 18

*Brantley v. Republic Mortg. Ins. Co.*, 424 F.3d 392 (4th Cir. 2005) .......... 11

*Bridas Sapic v. Gov't of Turkm.*, 345 F.3d 347 (5th Cir. 2003) .......... 13

*Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996 (9th Cir. 2010) .......... 21

*Britton v. Co-op Banking Group*, 4 F.3d 742 (9th Cir. 1993) .......... 18, 19, 20

*Britton v. Co-op Banking Group*, 916 F.2d 1405 (9th Cir. 1990) .......... 17

*Brown v. Gen. Steel Domestic Sales, LLC*, 2008 WL 2128057 (C.D. Cal. May 19, 2008) .......... 18, 19

## TABLE OF AUTHORITIES
## (continued)

Page

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
429 U.S. 477 (1977) .......... 21

*Chastain v. Union Sec. Life Ins. Co.*,
502 F. Supp. 2d 1072 (C.D. Cal. 2007) .......... passim

*Choctaw Generation L.P. v. Am. Home Assurance Co.*,
271 F.3d 403 (2d Cir. 2001) .......... 11

*Comer v. Micor, Inc.*,
436 F.3d 1098 (9th Cir. 2006) .......... 11, 12

*Crown, Cork & Seal Co. v. Parker*,
462 U.S. 345 (1983) .......... 5

*EEOC v. Waffle House, Inc.*,
534 U.S. 279 (2002) .......... 5, 10

*Fazio v. Lehman Bros.*,
340 F.3d 386 (6th Cir. 2003) .......... 6

*First Options of Chicago, Inc. v. Kaplan*,
514 U.S. 938 (1995) .......... 1, 11

*Fisher v. A.G. Becker Paribas Inc.*,
791 F.2d 691 (9th Cir. 1986) .......... 6

*Freeman v. San Diego Ass'n of Realtors*,
322 F.3d 1133 (9th Cir. 2003) .......... 3

*Fujian Pacific Elec. Co., Ltd v. Bechtel Power Corp.*,
2004 WL 2645974 (N.D. Cal. Nov. 19, 2004) .......... 14, 15, 17

*Gaines v. Carrollton Tobacco Bd. of Trade, Inc.*,
386 F.2d 757 (6th Cir. 1967) .......... 21

*George Fischer Foundry Systems, Inc. v. Adolph H. Hottinger Maschinenbau GmbH*,
55 F.3d 1206 (6th Cir. 1995) .......... 21

*Graham Oil Co. v. ARCO Prods. Co.*,
43 F.3d 1244 (9th Cir. 1994) .......... 21

*Hill v. GE Power Sys., Inc.*,
282 F.3d 343 (5th Cir. 2002) .......... 17

*Hoffman Constr. Co. of Oregon v. Active Erectors & Installers, Inc.*,
969 F.2d 796 (9th Cir. 1992) .......... 6

*Hooper v. Advance Am., Cash Advance Ctrs. of Missouri, Inc.*,
589 F.3d 917 (8th Cir. 2009) .......... 8

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002) .......... 11

*IDS Life Insurance Co. v. SunAmerica, Inc.*, 103 F.3d 524 (7th Cir. 1996) .......... 22, 23

*In re Humana Inc. Managed Care Litig.*, 285 F.3d 971 (11th Cir. 2002), *rev'd on other grounds sub nom. PacifiCare Health Sys., Inc. v. Book*, 538 U.S. 401 (2003) .......... 12, 13, 16

*In re TFT-LCD (Flat Panel) Antitrust Litigation*, MDL 1827, 2011 WL 1753784 (N.D. Cal. May 9, 2011) (Doc. 2731) .......... passim

*In re TFT-LCD (Flat Panel) Antitrust Litigation*, MDL 1827, 2011 WL 2650689 (N.D. Cal. July 6, 2011) (Doc. 3034) .......... 6, 23

*In re TFT-LCD (Flat Panel) Antitrust Litigation*, MDL 1827 (N.D. Cal. July 14, 2011) (Doc. 3110) .......... 8

*In re TFT-LCD (Flat Panel) Antitrust Litigation*, MDL 1827 (N.D. Cal. Aug. 3, 2011) (Doc. 3213) .......... 2, 23

*JLM Industries, Inc. v. Stolt-Nielsen, S.A.*, 387 F.3d 163 (2d Cir. 2004) .......... 15

*Kiskadee Commc'ns (Bermuda), Ltd. v. Father*, No. C 10–05277, 2011 WL 1044241 (N.D. Cal. Mar. 22, 2011) .......... 20

*Klay v. All Defendants*, 389 F.3d 1191 (11th Cir. 2004) .......... 12

*Kramer v. Hammond*, 943 F.2d 176 (2d Cir. 1991) .......... 10

*Kristian v. Comcast Corp.*, 446 F.3d 25 (1st Cir. 2006) .......... 21

*Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20 (2d Cir. 1995) .......... 9

*Letizia v. Prudential Bache Sec., Inc.*, 802 F.2d 1185 (9th Cir. 1986) .......... 11, 19, 20

*Lyzwa v. Chu*, 1998 WL 326768 (N.D. Cal. Feb. 2, 1998) .......... 10

*Maganallez v. Hilltop Lending Corp.*, 505 F. Supp. 2d 594 (N.D. Cal. 2007) .......... 4

*Menorah Ins. Co. v. INX Reinsurance Corp.*, 72 F.3d 218 (1st Cir. 1995) .......... 10

## TABLE OF AUTHORITIES
**(continued)**

**Page**

*Miller Brewing Co. v. Fort Worth Distrib. Co.*, 781 F.2d 494 (5th Cir. 1986) ... 9

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985) ... 21

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983) ... 11, 14, 22

*MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942 (11th Cir. 1999) ... 11, 16

*Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042 (9th Cir. 2009) ... 11, 13

*Parler v. KFC Corp.*, 529 F. Supp. 2d 1009 (D. Minn. 2008) ... 7

*Petroleum Pipe Ams. Corp. v. Jindal Saw, Ltd.*, 575 F.3d 476 (5th Cir. 2009) ... 8

*Pritzker v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110 (3d Cir. 1993) ... 20

*Rankin v. Allstate Ins. Co.*, 336 F.3d 8 (1st Cir. 2003) ... 9

*Redel's Inc. v. General Elec. Co.*, 498 F.2d 95 (5th Cir. 1974) ... 21

*Ross v. Am. Express Co.*, 547 F.3d 137 (2d Cir. 2008) ... 11, 13, 14

*S&H Contractors, Inc. v. A.J. Taft Coal Co.*, 906 F.2d 1507 (11th Cir. 1990) ... 9

*Santa Cruz Med. Clinic v. Dominican Santa Cruz Hosp.*, No. C93-20613, 1995 WL232410, at *3 (N.D. Cal. Apr. 17, 1995) ... 6

*Sokol Holdings, Inc. v. BMB Munai, Inc.*, 542 F.3d 354 (2d Cir. 2008) ... 1, 11, 13, 15

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 130 S. Ct. 1758 (2010) ... 4

*United States v. Bestfoods*, 524 U.S. 51 (1998) ... 17

*United States v. Neumann Caribbean Int'l, Ltd.*, 750 F.2d 1422 (9th Cir. 1985) ... 22

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574 (1960) .......... 4

*Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754 (9th Cir. 1988) .......... 2, 9, 10

*Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468 (1989) .......... 1, 4

*Wash. Mut. Fin. Group, LLC v. Bailey*, 364 F.3d 260 (5th Cir. 2004) .......... 12

**OTHER CASES**

*In re Merrill Lynch Trust Co. FSB*, 235 S.W.3d 185 (Tex. 2007) .......... 14

**FEDERAL STATUTES**

9 U.S.C. § 4 .......... 8, 18, 21

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

In this multi-district litigation, started years ago by parties unrelated to Costco, Costco alleged antitrust violations against 31 defendants. Because two of those defendants assert contracts with Costco containing arbitration clauses, all defendants now seek to force Costco to arbitrate its claims. But arbitration "is a matter of consent, not coercion," *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 479 (1989), and "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit," *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (internal quotation marks and citation omitted). *See also In re TFT-LCD (Flat Panel) Antitrust Litigation* ("*In re Flat Panel*"), MDL 1827, 2011 WL 1753784, at *5 (N.D. Cal. May 9, 2011) (Doc. 2731) ("[T]here is a 'black letter rule that the obligation to arbitrate depends on consent . . . .'") (quoting *Sokol Holdings, Inc. v. BMB Munai, Inc.*, 542 F.3d 354, 361-62 (2d Cir. 2008)).

The Court should not force Costco into arbitration, and certainly not as to defendants with whom Costco never agreed to arbitrate anything. Even as to the two defendants that allege vendor agreements with Costco, the arbitration provision is inapplicable here. The provision recognizes that the benefits of arbitration largely disappear when a third party has commenced related litigation. That litigation will continue to affect Costco and its vendor even if they arbitrate, and coordination in court with such related litigation could, as is certainly the case here, present greater efficiencies than arbitration. Thus, the provision says that Costco and the vendor

Declaration of Geoff Shavey ("Shavey Decl.") Exhibits A, ¶ 20; C, ¶ 20; E, ¶ 20; G, ¶ 20. That is what has happened here. This case was commenced by third parties unrelated to Costco—the class representatives—and Costco now seeks to bring claims against Defendants as part of that multi-district proceeding, as allowed by the contract. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) ("[A]rbitration . . . is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration.").

Moreover, the two defendants that say Costco "imposed" the bilateral arbitration provision on them (Defendants' Joint Motion to Compel Arbitration ("Motion"), Doc. 3183, at 5) have accepted relief from that imposition and waived any right they may have had to enforce the provision. Those Defendants were aware of the contracts they signed; they have repeatedly acted inconsistently with their claimed right to arbitrate; and their conduct has prejudiced Costco both in terms of its ability to prosecute its case successfully and its investment of enormous time and effort in the MDL proceeding, much of which will be lost if Costco is forced to arbitrate. *See Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754, 758-59 (9th Cir. 1988) (stating Ninth Circuit test for waiver and finding prejudice where non-movant "relied to [its] detriment on [the movant's] failure to move for arbitration of the arbitrable claims"). It is Defendants' awareness of these added burdens to Costco that is driving their sudden quest for arbitration.

Further, there is no justification for allowing the vast majority of Defendants, who never signed arbitration agreements with Costco, to force Costco into arbitration. "[A] nonsignatory defendant faces a heavy burden to show that the signatory plaintiff intended to submit to arbitration, notwithstanding the absence of a formal agreement." *In re Flat Panel*, 2011 WL 1753784, at *5 (Doc. 2731). Defendants have utterly failed to satisfy that burden here.

Finally, if the Court decides to order Costco to arbitrate with some defendants,[1] the Court should not stay proceedings as to the remaining defendants. As the Court has repeatedly held, as recently as last week, "in light of the many other defendants in this case it would make little sense to stay [a plaintiff's] claims" against certain defendants while the plaintiff arbitrates as to other claims or defendants, as the defendants will have to continue litigating as to other claims and plaintiffs regardless. *In re Flat Panel*, Doc. 3213, at 5 (N.D. Cal. Aug. 3, 2011). Thus, only delay and inefficiency would result from staying Costco's claims if some subset of them must proceed in arbitration.

[1] As explained in Section III.E., even if the Court concludes that Costco's claims against some defendants are otherwise subject to arbitration, it may compel arbitration only if it first declares [redacted]

## II. FACTS

### A. Two of 31 Defendants Have Arbitration Agreements

In its complaint, Costco named 31 defendants and identified five alleged co-conspirators. *In re Flat Panel*, No. 3:11-cv-00058, Doc. 1.[2] Defendants contend that only two of those defendants ever had arbitration agreements with Costco: Samsung Electronics America, Inc., and Sharp Electronics Corp. Motion at 6; *see also* Shavey Decl. ¶ 16. Defendants seek to boost this number by discussing non-defendant co-conspirators (one of which—NEC LCD Technologies—had a vendor agreement) and citing agreements between Costco and various companies Defendants claim as current or even former affiliates. Motion at 6-7. Defendants are studiously cryptic in much of this discussion, but the details matter.

To begin with, almost all Defendants admit that they had no contract with Costco, and half do not even allege that Costco had a contract with any of their affiliates: AU Optronics Corp.; AU Optronics Corp. America; Chi Mei Optoelectronics Corp.; Chi Mei Optoelectronics, USA, Inc.; Chunghwa Picture Tubes, Ltd.; CMO Japan Co., Ltd.; Hannstar Display Corp.; Hitachi, Ltd.; Hitachi Displays, Ltd.; Hitachi Electronic Devices (USA), Inc.; LG Display Co.; LG Display America; and Tatung Company of America, Inc. *See also* Shavey Decl. ¶ 17.[3]

Some Defendants claim that Costco had arbitration agreements with one or more non-defendant affiliates, but they provide no explanation of their relationship with these affiliates or the products they supposedly sold to Costco. Indeed, they expressly disclaim liability for any sales these entities made to Costco. Motion at 6 n.6. This lack of explanation appears to be for good reason: further explanation would have shown how weak Defendants' assertions are. For example, Defendants note that Costco has an arbitration agreement with Philips Consumer Lifestyle. Philips Consumer Lifestyle is not a defendant—not because Costco strategically omitted it to avoid arbitration, but rather because, to Costco's knowledge, Philips Consumer

---

[2] Costco has voluntarily dismissed five defendants: Chi Mei Corp.; LG Electronics, Inc.; LG Electronics U.S.A., Inc.; Nexgen Mediatech, Inc.; and Nexgen Mediatech USA, Inc. Docs. 2490, 2828. It intends to dismiss two more. Costco may also add additional defendants as it continues to gather evidence and the MDL evolves.

[3] Even if Costco had no vendor agreement with a defendant, it may have purchased directly from that defendant, *see* Shavey Decl. ¶¶ 5, 18, and even if it did not, it still may bring claims against that defendant under federal law, *see, e.g., Freeman v. San Diego Ass'n of Realtors*, 322 F.3d 1133, 1146 (9th Cir. 2003) ("[I]ndirect purchasers can sue for damages if there is no realistic possibility that the direct purchaser will sue its supplier over the antitrust violation.").

Lifestyle has never sold LCD Products. Shavey Decl. ¶ 19 (it sells personal care products, such as Norelco shavers and Sonicare toothbrushes). *See also id.* ¶ 19 (Epson America, another affiliate Defendants cite, "appears to sell printers, scanners, projectors, and related products").

**B. The Arbitration Agreements**

Costco expects vendors to enter a "Basic Vendor Agreement." Shavey Decl. ¶ 5. Vendors typically agree, but not always, and vendors sometimes remove or alter terms. *Id.* The Basic Vendor Agreement incorporates Costco's Standard Terms by reference. *Id.* ¶ 6. Costco updated its Standard Terms in 1997, 2000, and 2004. *Id.* ¶ 7.

Each iteration of the Standard Terms provides for a quick arbitration process and excludes from arbitration situations where [REDACTED] *Id.* Exhibits A, ¶ 20; C, ¶ 20; E, ¶ 20; G, ¶ 20. The 2004 terms added a provision specifying that [REDACTED] *Id.* Exhibit G, ¶ 20.

## III. ARGUMENT

**A. Legal Standard**

"A party seeking to compel arbitration bears the burden of proving the existence of a valid and enforceable arbitration agreement . . . ." *Maganallez v. Hilltop Lending Corp.*, 505 F. Supp. 2d 594, 599-600 (N.D. Cal. 2007). Moreover, "a nonsignatory defendant faces a heavy burden to show that [a] signatory plaintiff intended to submit to arbitration, notwithstanding the absence of a formal agreement." *In re Flat Panel*, 2011 WL 1753784, at *5 (Doc. 2731).

**B. Costco's Claims Are Excluded From the Arbitration Clause**

Defendants fill their brief with references to the federal policy favoring arbitration, but they ignore that "the central or 'primary' purpose of the [Federal Arbitration Act (FAA)] is to ensure that 'private agreements to arbitrate are enforced *according to their terms*.'" *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 130 S. Ct. 1758, 1773 (2010) (quoting *Volt*, 489 U.S. at 479) (emphasis added). *See also United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363

U.S. 574, 582 (1960) ("[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."); *AT & T*, 475 U.S. at 648 (same). Thus, "it is the language of the contract," not some federal policy, "that defines the scope of disputes subject to arbitration." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002).

Here, the contracts between Costco and two defendants do provide for quick and inexpensive arbitration for typical vendor disputes, but they exclude claims relating to This provision recognizes that where such related litigation is not subject to arbitration and will proceed no matter what, the benefits of arbitration are largely lost. For that reason, the arbitration provision allows related claims to proceed in court. Here, in fact, the Court's active coordination of closely related cases likely makes arbitration less efficient than proceeding in court.

Costco's claim falls under the contractual exclusion. Costco had no role in the class representatives commencing this claim, and those proceedings will continue, and will involve Costco at least in discovery, regardless of whether Costco arbitrates with any defendants.

Defendants will argue that Costco's claim ceased being when Costco opted out of the direct purchaser class and filed its complaint. But that argument ignores the purpose of the provision in question and the nature of class actions. Costco's claims against Defendants at the time the direct purchaser class representatives filed their claims and sought to represent Costco's interests. That is why, for example, the statute of limitations for Costco's claims was tolled while the Court considered whether to certify the class. *See, e.g., Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 353 (1983) ("[C]ommencement of a class action suspends the applicable statute of limitations as to all asserted members of the class.") (quoting *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554 (1974)).

Furthermore, Defendants' blithe assertion that "All of Costco's Claims As to All Defendants Relate to Costco's Vendor Agreements" cannot withstand even passing scrutiny. Motion at 9. Defendants contend that Costco had vendor agreements with only two of them, and even as to those Defendants Costco's claims do not turn in any way on interpreting or enforcing

the vendor agreements. *See, e.g., Fazio v. Lehman Bros.*, 340 F.3d 386, 395 (6th Cir. 2003) ("A proper method of analysis here is to ask if an action could be maintained without reference to the contract or relationship at issue. If it could, it is likely outside the scope of the arbitration agreement."); *Santa Cruz Med. Clinic v. Dominican Santa Cruz Hosp.*, No. C93-20613, 1995 WL232410, at *3 (N.D. Cal. Apr. 17, 1995) (denying motion to compel and saying the "claims are not arbitrable because no language in the contracts . . . needs to be interpreted in order to evaluate the merits of plaintiffs' antitrust claims"). And, of course, Costco's claims against the many Defendants without vendor agreements could not depend on such agreements. Defendants' motion is thus plainly distinguishable from the motion to compel arbitration filed earlier by AU Optronics against Nokia. There, the Court concluded that "[a]ll of the purchases at issue . . . were made under the" parties' contract. *In re Flat Panel*, 2011 WL 2650689, at *5 (N.D. Cal. July 6, 2011) (Doc. 3034). That is not the case here, where many of the purchases at issue were not made under a contract between the parties, and, indeed, Costco had no vendor agreement with the vast majority of Defendants.

**C. Defendants Have Waived "Imposition" of the Arbitration Provision**

> "A party seeking to prove waiver of a right to arbitration must demonstrate: (1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts."

*In re Flat Panel*, 2011 WL 2650689, at *7 (Doc. 3034) (quoting *Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 694 (9th Cir. 1986)). All three requirements are satisfied here.

First, there can be no question that Defendants, at least those who have vendor agreements with Costco, knew of their right to seek arbitration. *See, e.g., Hoffman Constr. Co. of Oregon v. Active Erectors & Installers, Inc.*, 969 F.2d 796, 798 (9th Cir. 1992) ("[I]t cannot be said that Active lacked knowledge of the right to compel arbitration. The contract itself called for arbitration of disputes between Active and Hoffman."). Defendants suggest that they learned of the agreements only through discovery from Costco, Motion at 3, but that pretense plainly fails. As the Court has recognized, all of these contracts "are presumably in defendants' possession," and Defendants should not be allowed to rely on ignorance of their own contracts to avoid waiver.

*In re Flat Panel*, 2011 WL 1753784, at *5-6 (Doc. 2731); *see also Parler v. KFC Corp.*, 529 F. Supp. 2d 1009, 1014 (D. Minn. 2008) ("[W]hether plaintiffs actually knew of the arbitration clause in their contracts is irrelevant; that knowledge is imputed as a matter of law."). Indeed, when Defendants moved in March 2011 to stay litigation by the direct purchaser class (a group that had included Costco and that included numerous purchasers much smaller than Costco), they conceded "their knowledge of the arbitration clauses at issue." *In re Flat Panel*, 2011 WL 1753784, at *2 (Doc. 2731). And Costco sent vendors periodic reminder notices of their contracts. Shavey Decl. ¶ 8.

Second, Defendants took numerous acts inconsistent with their current demand for arbitration, acts that induced reliance by Costco and allowed Defendants to obtain information potentially unavailable to them in arbitration. The Court has noted that throughout litigation by the direct purchaser class, to which Costco belonged, "defendants . . . engaged in conduct that is inconsistent with their professed intention to assert arbitration rights in this case." *In re Flat Panel*, 2011 WL 1753784, at *3 (Doc. 2731). The Court nonetheless allowed Defendants an opportunity to seek arbitration, at least against members of the direct purchaser class, by filing a motion by June 3, 2011. In an order "Relat[ing] to All Direct Purchaser Actions," *id.* at *1, the Court noted that Defendants' failure to file such a motion "shall constitute waiver of the right to arbitrate the claims." *Id.* at 8. Defendants nonetheless chose not to file, again acting "inconsistent with their professed intention to assert arbitration rights." *Id.* at *6.

Defendants' behavior as to Costco was more clearly and repeatedly inconsistent, more likely strategic, and more harmful. As the Court said as to the class, and as is even clearer as to Costco, "defendants' previous conduct in this litigation evinces either previous indifference to the arbitration clauses they now seek to assert or, possibly, a strategic decision to delay their enforcement." *Id.* at *3. Not only did they seek to dismiss Costco's claims when Costco was merely a member of the direct purchaser class, but days before the June 3 deadline, when the question of arbitration was squarely before them (even if they thought the Court's order applicable only to the class), they moved to dismiss Costco's claim as an opt-out plaintiff. These motions to dismiss sought decisions on the merits, not merely to clarify jurisdictional issues, and

were inconsistent in substance and timing with a request for arbitration: "A party waives arbitration by seeking a decision on the merits before attempting to arbitrate." *Petroleum Pipe Ams. Corp. v. Jindal Saw, Ltd.*, 575 F.3d 476, 480 (5th Cir. 2009); *Hooper v. Advance Am., Cash Advance Ctrs. of Missouri, Inc.*, 589 F.3d 917, 921 (8th Cir. 2009) ("[A] request to dispose of a case on the merits before reaching arbitration is inconsistent with resolving the case through arbitration.").

Moreover, after the June 3 deadline and two weeks before filing their motion to compel arbitration with Costco, Defendants entered a stipulation with Costco and other plaintiffs extending the deadlines for Defendants' expert reports, altering other dates, and confirming the trial and other schedules applicable to various opt-out plaintiffs, including Costco. *In re Flat Panel*, Doc. 3110 (July 14, 2011). As part of that stipulation, Defendants agreed that Costco belonged in the first direct action plaintiff track and that trial on Costco's claims would occur in November 2012. *Id.* In negotiating and accepting that agreement, Defendants never raised or reserved the option to seek arbitration. Declaration of David Burman ("Burman Decl.") ¶ 9.

Defendants also requested extensive discovery from Costco both before and after Costco opted out of the direct purchaser class, imposing significant burdens on Costco. Declaration of Cori Gordon Moore ("Moore Decl.") ¶¶ 3-9. In April 2011, Defendants (through Toshiba) served Costco with document requests and a 30(b)(6) deposition notice seeking testimony on 22 topics. *Id.* ¶ 5. Costco has invested significant time and resources in collecting and producing documents in response to these requests and preparing and making available a corporate representative to be deposed. *Id.* ¶¶ 5-8. These responsive discovery efforts are ongoing. *Id.* ¶¶ 6-9.

Critically, Defendants took acts that vitiated the heart of the arbitration provision at issue. The essence of the provision is limiting time and expense. It specifies that [redacted] Shavey Decl. Exhibits A, ¶ 20; C, ¶ 20; E, ¶ 20; G, ¶ 20. While these procedures would be extremely difficult if not impossible for an antitrust case of this size, Defendants' motion necessarily invokes them. 9 U.S.C. § 4 (aggrieved party may petition "for an order directing that such

arbitration proceed in the manner provided for in such agreement"). But Defendants' delay has eliminated their intended benefit, at least to Costco. Throughout this litigation, Defendants have argued that they need additional time to prepare their cases, that delay is warranted until after their criminal proceedings conclude, and that presenting their defenses will take great time and care. The Court and Special Master have often accepted their arguments. *See, e.g., In re Flat Panel*, Docs. 2615, 3025, 3026. Defendants cannot spend years pleading for additional leeway to present their cases and then, once they are ready, turn around and demand an immediate chance to try their case in a very limited time frame and forum. Burman Decl. ¶¶ 10-14.

Furthermore, Defendants waited nearly eight months after Costco filed its complaint to move to compel arbitration, a delay many courts have deemed inconsistent with an arbitration demand, and which is particularly so here where the delay since Costco's complaint is twice the length of the entire period the arbitration provision contemplates for resolution and Costco's claim had been part of this litigation since it was first asserted by the direct purchaser class. *See, e.g., AT&T Corp. v. Innocom Telecom LLC*, 2007 WL 163193 (N.D. Cal. Jan. 17, 2007) (six months); *S&H Contractors, Inc. v. A.J. Taft Coal Co.*, 906 F.2d 1507, 1514 (11th Cir. 1990) (eight months); *Miller Brewing Co. v. Fort Worth Distrib. Co.*, 781 F.2d 494, 497 (5th Cir. 1986) (less than eight months); *Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20, 26 (2d Cir. 1995) (seven months).

In short, Defendants repeatedly engaged in acts inconsistent with their alleged right to arbitrate; now that they have obtained the benefits of those acts, they seek to avoid the burdens. This the Court should not allow.

Third, Defendants' acts prejudiced Costco in terms of money, time, and Costco's legal position. Costco need show only "a modicum of prejudice" to justify a waiver finding, *Rankin v. Allstate Ins. Co.*, 336 F.3d 8, 12 (1st Cir. 2003), and Costco has suffered far more than that here.

Prejudice is present where the non-movant "relied to [its] detriment on [the movant's] failure to move for arbitration of the arbitrable claims." *Van Ness*, 862 F.2d at 759. That is precisely what happened here. Because Defendants repeatedly indicated that they intended to defend Costco's claims in court rather than arbitration—e.g., by taking discovery, moving to

dismiss, deciding not to invoke arbitration with those who remained in the class, and stipulating to a trial schedule with Costco—Costco reasonably relied on those indications and began preparing its case based on the MDL timeline. Costco has therefore agreed to share tasks, costs, and work product with other direct action plaintiffs, has invested hundreds of hours and hundreds of thousands of dollars in those efforts, and has agreed to deadlines based on the first direct action plaintiff track schedule in the MDL. Burman Decl. ¶¶ 11-14. If Costco is instead forced to proceed in arbitration, with its rapid discovery deadlines and limited opportunities to present evidence, Costco will lose the benefit of much of that work and incur substantial additional expense. *Id.* ¶¶ 13-14. Costco thus "relied to [its] detriment on [Defendants'] failure to move for arbitration of the arbitrable claims," *Van Ness*, 862 F.2d at 759, and the legal and financial harms Costco has suffered are plainly sufficient to demonstrate prejudice. *See, e.g., Menorah Ins. Co. v. INX Reinsurance Corp.*, 72 F.3d 218, 222 (1st Cir. 1995) (finding "that Menorah incurred expenses as a direct result of INX's dilatory behavior and that that was prejudice enough" to find waiver); *Kramer v. Hammond*, 943 F.2d 176, 179 (2d Cir. 1991) ("Prejudice can be substantive, such as . . . when a party too long postpones his invocation of his contractual right to arbitration, and thereby causes his adversary to incur unnecessary delay or expense."); *Lyzwa v. Chu*, 1998 WL 326768, at *4 (N.D. Cal. Feb. 2, 1998) (finding prejudice where "[p]laintiff's attorney . . . has spent hundreds of hours litigating this case and plaintiff has expended tens of thousands of dollars in litigation expenses"). Moreover, the growing prejudice to Costco over the months would have been evident to Defendants' experienced counsel, and thus this prong of the test reinforces the conclusion under the second prong that the delay was inconsistent with ever invoking arbitration. *See* Burman Decl. ¶ 12.

### D. Even if Some Defendants Are Allowed to Compel Arbitration, Parties with Whom Costco Never Signed Arbitration Agreements Cannot Force Costco to Arbitrate

Even if the Court were to grant Defendants' motion to compel arbitration with the Signatory Defendants (Samsung Electronics America and Sharp Electronics Corp.), it should deny Defendants' motion as to the other Defendants. Costco never agreed to arbitrate with these Non-Signatory Defendants, and "nothing in the [FAA] authorizes a court to compel arbitration

. . . by any parties, that are not . . . covered in the agreement." *Waffle House*, 534 U.S. at 289. The Non-Signatory Defendants nonetheless assert that Costco must arbitrate with them, relying on theories of equitable estoppel and agency.[4] Neither applies here.

Before explaining why Defendants' theories are inapplicable, it is important to clarify when and how this issue should be resolved. Contrary to Defendants' suggestion that an arbitrator should decide which Defendants, if any, Costco must arbitrate with, Motion at 6 n.6, the Supreme Court has held that "a gateway dispute about whether the parties are bound by a given arbitration clause raises a 'question of arbitrability' for a court to decide." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) (citing *Kaplan*, 514 U.S. at 943-46). *See also Chastain v. Union Sec. Life Ins. Co.*, 502 F. Supp. 2d 1072, 1076 (C.D. Cal. 2007) ("Defendant has cited no case in which the question of non-signatory enforcement was submitted to the arbitrator."). That is why the Ninth Circuit and other circuits routinely decide such questions rather than leaving them for arbitrators.[5]

In deciding "whether a particular party is bound by [an] arbitration agreement," "the liberal federal policy regarding the scope of arbitrable issues is inapposite." *Comer v. Micor, Inc.*, 436 F.3d 1098, 1104 n.11 (9th Cir. 2006). Instead, "a nonsignatory defendant faces a heavy burden to show that the signatory plaintiff intended to submit to arbitration, notwithstanding the absence of a formal agreement." *In re Flat Panel*, 2011 WL 1753784, at *5 (Doc. 2731) (citing *Sokol Holdings*, 542 F.3d 354, and *Ross v. Am. Express Co.*, 547 F.3d 137 (2d Cir. 2008)). Thus, Defendants' suggestion that Costco must arbitrate, despite the absence of an agreement to do so, because of "Costco's interdependent claims," Motion at 13, is irrelevant; when "there is no arbitration agreement between the" parties, the non-signatory "will be forced to resolve . . . related disputes in different forums" because "federal law *requires* piecemeal resolution when

---

[4] The Non-Signatory Defendants never mention any other theory as to why Costco must arbitrate with them, and rightly so. Other possible theories—incorporation by reference, assumption, veil-piercing, or third-party beneficiary status (*Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1045 & n.2 (9th Cir. 2009))—are plainly inapplicable.

[5] *See, e.g., Comer*, 436 F.3d 1098; *Brantley v. Republic Mortg. Ins. Co.*, 424 F.3d 392 (4th Cir. 2005); *Choctaw Generation L.P. v. Am. Home Assurance Co.*, 271 F.3d 403 (2d Cir. 2001); *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942 (11th Cir. 1999); *Letizia v. Prudential Bache Sec., Inc.*, 802 F.2d 1185 (9th Cir. 1986).

Case3:07-md-01827-SI Document3598-2 Filed09/06/11 Page23 of 32

necessary to give effect to an arbitration agreement." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 (1983).

**1. Costco Cannot Be Equitably Estopped from Asserting Its Right to Litigate Against the Non-Signatory Defendants**

The Non-Signatory Defendants provide only a cursory argument that they may compel Costco to arbitrate based on equitable estoppel, and with good reason: a more thorough explanation would expose the bankruptcy of their position.

Equitable estoppel, as its name suggests, is an equitable doctrine whose purpose is to "'preclude[] a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes.'" *Comer*, 436 F.3d at 1101 (quoting *Wash. Mut. Fin. Group, LLC v. Bailey*, 364 F.3d 260, 267 (5th Cir. 2004)). *See also Chastain*, 502 F. Supp. 2d at 1078 ("The purpose of estoppel is to prevent a plaintiff from availing himself of the favorable parts of a contract while disavowing the unfavorable parts—here, the arbitration clause.").

> In all cases, the lynchpin for equitable estoppel is equity, and the point of applying it to compel arbitration is to prevent a situation that would fly in the face of fairness. The purpose of the doctrine is to prevent a plaintiff from, in effect, trying to have his cake and eat it too; that is, from relying on the contract when it works to his advantage by establishing the claim, and repudiating it when it works to his disadvantage by requiring arbitration.

*In re Humana Inc. Managed Care Litig.*, 285 F.3d 971, 976 (11th Cir. 2002) (internal citations and quotation marks omitted), *rev'd on other grounds sub nom. PacifiCare Health Sys., Inc. v. Book*, 538 U.S. 401 (2003).[6] This basic purpose does not apply here; nor does the doctrine.

Costco's complaint does not in any way "'claim[] the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes.'" *Comer*, 436 F.3d at 1101 (quoting *Wash. Mut.*, 364 F.3d at 267). Costco has not asserted breach of contract, and its complaint never even mentions any contract, much less relies on one. The reason is not that

---

[6] In *PacifiCare*, the Supreme Court addressed only the unrelated question of whether a court could invalidate an arbitration agreement when it was unclear whether the agreement barred damages required by statute. For that reason, all other aspects of the Eleventh Circuit's ruling in *Humana*, including its equitable estoppel analysis, are still good law. *See, e.g.*, *Klay v. All Defendants*, 389 F.3d 1191, 1195-96 & n.3, 1998-99 & nn.5, 6 (11th Cir. 2004).

Costco sought to avoid arbitration; it is that Costco's claim does not depend on its contracts in the slightest. The contracts are at most incidental, and no question is raised as to their performance.

This alone should suffice to reject the Non-Signatory Defendants' invocation of equitable estoppel, for "[t]he plaintiff's actual dependance on the underlying contract in making out the claim against the nonsignatory defendant is . . . always the *sine qua non* of an appropriate situation for applying equitable estoppel." *Humana*, 285 F.3d at 976. *See also Mundi*, 555 F.3d at 1047 (refusing to apply equitable estoppel to force a plaintiff to arbitrate with a non-signatory defendant where "[t]he resolution of [the plaintiff's] claim does not require the examination of any provisions of the [agreement]"); *Chastain*, 502 F. Supp. 2d at 1080 (finding that "equitable considerations do[] not compel arbitration" because "Plaintiff has done nothing to rely on or invoke the terms of the cardmember agreement, while attempting to avoid arbitration of those claims," and "there simply is no reason in equity to estop Plaintiff from disclaiming the arbitration clause in an agreement that he has otherwise not invoked").

The Non-Signatory Defendants' argument ignores another basic principle about equitable estoppel. "Estoppel does not apply unless 'the totality of the evidence supports an objective intention to agree to arbitrate.'" *In re Flat Panel*, 2011 WL 1753784, at *5 (Doc. 2731) (quoting *Ross*, 547 F.3d at 148). Thus, "there is a 'black letter rule that the obligation to arbitrate depends on consent,' and cases that rely on estoppel to compel arbitration with nonsignatories 'simply extend its contours somewhat by establishing that the consent need not always be expressed in a formal contract made with the party demanding arbitration.'" *Id.* (quoting *Sokol Holdings*, 542 F.3d at 361-62). For that reason, "a nonsignatory defendant faces a heavy burden to show that the signatory plaintiff intended to submit to arbitration, notwithstanding the absence of a formal agreement," and "must present . . . evidence sufficient to demonstrate such intent." *Id.* Here, however, the Non-Signatory Defendants provide no evidence that Costco consented to arbitrate with them. In entering vendor agreements with Samsung Electronics America and Sharp Electronics Corp., Costco could not possibly have contemplated that it was agreeing to arbitrate with dozens of other entities, including many competitors of those two. *Cf. Bridas Sapic v. Gov't*

*of Turkm.*, 345 F.3d 347, 362 (5th Cir. 2003) ("Parties are presumed to be contracting for themselves only.").

Ignoring both the purpose and basic requirements of the equitable estoppel doctrine, the Non-Signatory Defendants seek to invoke the doctrine merely because Costco alleges that they conspired with the Signatory Defendants in fixing the prices of LCD Products. Motion at 2, 10-12. But it cannot be that any time a plaintiff alleges an antitrust conspiracy that includes a signatory it must arbitrate with all the conspirators. It need not even sue them all, or the one with the contract, to obtain a complete remedy. And while contractual provisions can be part of some antitrust violations (e.g., exclusive dealing), that is not the case here. Moreover, even Defendants seem to recognize the absurdity of their view: when they have sought to compel arbitration with other direct action plaintiffs, they have done so individually, not as a group, even though those other plaintiffs made the same allegations as Costco did as to Defendants' joint conduct. *See, e.g.*, *In re Flat Panel*, Doc. 3018 (LG's motion to compel arbitration with SB Liquidation Trust); Doc. 2991-1, at 9 (Defendants' request that Florida be required to arbitrate "claims governed by purchase agreements containing arbitration clauses"). Defendants do not and cannot explain why equitable estoppel should apply here when they never mentioned it in those motions.

Defendants can point to no case going nearly as far as the rule they seek, which is not surprising because doing so would fly in the face of the Supreme Court's consistent holdings that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit"—no matter how "efficient" such joint arbitration might be. *AT & T*, 475 U.S. at 648.[7] The cases Defendants do cite do not mean what Defendants say, as is clear from their text and from subsequent opinions by the courts that decided them.

---

[7] *See also Moses H. Cone*, 460 U.S. at 20 (holding that, despite allegations of joint misconduct on the part of a signatory and non-signatory defendant, the non-signatory defendant could not be forced into arbitration because "federal law *requires* piecemeal resolution when necessary to give effect to an arbitration agreement"); *Ross*, 547 F.3d at 148 ("[A]pplication of estoppel in the context of conspiracy allegations is problematic . . . because arbitration is of course a matter of contract [and] under general principles of contract law parties should not be compelled to arbitrate unless the totality of the evidence supports an objective intention to agree to arbitrate.") (internal quotation marks and citation omitted); *In re Merrill Lynch Trust Co. FSB*, 235 S.W.3d 185, 194 (Tex. 2007) (observing that a test based merely on concerted misconduct "would sweep independent entities and even complete strangers into arbitration agreements" and that "allowing arbitration contracts to become binding on that basis would make them easier to enforce than other contracts, contrary to the Arbitration Act's purpose").

Defendants lead with out-of-context dicta from the unpublished opinion in *Fujian Pacific Elec. Co., Ltd v. Bechtel Power Corp.*, 2004 WL 2645974 (N.D. Cal. Nov. 19, 2004). Defendants claim *Fujian* means that "a Plaintiff is estopped from refusing to arbitrate with a corporate family member alleged to be liable for overcharges incurred on an affiliate's contract." Motion at 10. But the part of *Fujian* that Defendants cite is not the holding, it is a summary of another court's decision. *Fujian*'s actual holding was simply that equitable estoppel applied because the plaintiff's claim against the non-signatory relied on the contract containing the arbitration clause. 2004 WL 2645974, at *6 (explaining that the plaintiff "ask[ed] the court to determine whether [the signatories'] duties have been breached in order to establish [the non-signatory's] liability").

Defendants next cite *JLM Industries, Inc. v. Stolt-Nielsen, S.A.*, 387 F.3d 163 (2d Cir. 2004), for the same proposition. But there the Court made clear that it did not "mean to suggest that a claim against a co-conspirator of a party alleged to have engaged in antitrust violations will always be intertwined to a degree sufficient to work an estoppel." *Id.* at 178 n.7. And the Second Circuit has since made clear that Defendants' reading of *JLM* goes farther "than that opinion intended." *Sokol*, 542 F.3d at 359. As that Court has explained, in its prior cases, "the promise to arbitrate by . . . the entity opposing arbitration . . . was reasonably seen on the basis of the relationships among the parties as extending not only to . . . its contractual counterparty, but also to [the non-signatory], an entity that was, or would predictably become, with [the plaintiff's] knowledge and consent, affiliated or associated with [the signatory defendant] in such a manner as to make it unfair to allow [the plaintiff] to avoid its commitment to arbitrate on the ground that [the non-signatory] was not the very entity with which [the plaintiff] had a contract." *Id.* at 361. Thus, even if this Court adopts the Second Circuit's view at its broadest, each Non-Signatory Defendant must show that Costco's "promise to arbitrate" with a Signatory Defendant "was reasonably seen on the basis of the relationships among the parties as extending . . . to [the non-signatory]." *Id.* The Non-Signatory Defendants have not made and cannot make such a showing. Even if they could, they would still have to show "that the subject matter of the dispute was intertwined with the contract providing for arbitration." *Id.* *See also Chastain*, 502 F. Supp. 2d at 1078-79 (explaining that "to determine whether claims are intertwined, the Court must look to the

duties breached by Defendant as alleged in the Complaint" and whether the "complaint is based on the nonsignatory's alleged breach of . . . the agreement") (internal quotation marks and citations omitted). But, as already noted, Costco's claim in no way turns on its contracts with the Signatory Defendants.

This last factor also explains why Defendants' reliance on *MS Dealer Service Corp. v. Franklin*, 177 F.3d 942 (11th Cir. 1999), is misguided. Defendants argue, Motion at 11, that *MS Dealer* holds that the "application of equitable estoppel is warranted . . . when the signatory to the contract containing the arbitration clause raises allegations of . . . substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." *MS Dealer*, 177 F.3d at 947 (citations and internal quotation marks omitted). But, as the Eleventh Circuit has since explained, "[t]his contention is only tenable if the passage is read completely out of context." *Humana*, 285 F.3d at 976. "In all cases, the lynchpin for equitable estoppel is equity," and "[t]he purpose of the doctrine is to prevent a plaintiff . . . from relying on the contract when it works to his advantage by establishing the claim, and repudiating it when it works to his disadvantage by requiring arbitration." *Id.* (citations and internal quotation marks omitted). "The plaintiff's actual dependance on the underlying contract in making out the claim against the nonsignatory defendant is therefore always the *sine qua non* of an appropriate situation for applying equitable estoppel." *Id.* As noted, however, the "sine qua non" of equitable estoppel is not present here, and Defendants cannot—try as they might—bootstrap their way into that doctrine simply by pointing to their conspiracy.

Defendants also rely on *Amisil Holdings Ltd. v. Clarium Capital Mgmt.*, 622 F. Supp. 2d 825 (N.D. Cal. 2007), but, once again, the case is plainly distinguishable. There, "[a]bsent the [agreement that included the arbitration clause], none of [the plaintiff's] claims would lie." *Id.* at 841. Thus, the plaintiff was unfairly seeking to "use the Agreement as a sword and at the same time choose to ignore it as a shield," which the court refused to allow. *Id.* Here, Costco relies not at all on its vendor agreements, and it is instead Defendants who seek to use them as a sword.

Because Defendants' legal argument is so weak, they make a last ditch appeal to "notions of fair play and equity," beseeching the Court to require Costco to arbitrate against the Non-

Signatory Defendants because Costco has done *them* the disservice of suing them for conspiring to fix prices. Motion at 12. This plea hardly deserves a response. Equitable estoppel has never been held to require a plaintiff to bear a burden in exchange for the "benefit" of being able to sue wrongdoers.

Indeed, if equity has any application here, it is to *Defendants'* strategic attempts to "have it both ways." Whether or not the Signatory Defendants have waived the arbitration provision, a different test should apply to the Non-Signatory Defendants. On this issue it is they, not Costco, that seek to invoke equity, and yet they have not done equity. Their delay was at least objectively tactical and has prejudiced Costco, and that alone should halt consideration of their request.[8]

In addition, the Non-Signatory Defendants seek to compel arbitration on the ground that they conspired with the Signatory Defendants, but then turn around and deny that they are co-conspirators. *Compare* Motion at 2 (citing conspiracy allegations) *with* Motion to Dismiss, Doc. 2808, at 13-14 ("Costco cannot plausibly allege that unrelated Defendants are agents and principals of each other for purposes of a conspiracy merely because some of them participated in joint-ventures or trade associations."), and Defendants' Joint Reply in Support of Motion to Dismiss, Doc. 3202, at 9-10 (asserting a "'deeply ingrained' presumption that distinct corporate family members act separately and independently") (citing *United States v. Bestfoods*, 524 U.S. 51, 61 (1998)). It is Defendants, not Costco, that are seeking to have their cake and eat it too.

**2. Costco Cannot Be Required to Arbitrate Against the Non-Signatory Defendants Under an Agency Theory**

Defendants seem to think they can use the agency theory to demand arbitration because Costco alleges that they worked together in carrying out their conspiracy. That is not the law.

---

[8] Even if the Court were to find that Costco is equitably estopped, the Court need not compel arbitration with the Non-Signatory Defendants. Rather, "[i]n light of the equitable nature of the relief that defendant[s] seek[], . . . the court has considerable discretion to select a remedy." *Fujian*, 2004 WL 2645974, at *7-8. For example, in *Fujian*, the court decided that the plaintiff was equitably estopped from proceeding immediately with litigation, but it did *not* compel the plaintiff to arbitrate with the non-signatory; instead, it stayed the litigation pending arbitration with the signatory defendants. *Id.* at *8. *See also, e.g.*, *Hill v. GE Power Sys., Inc.*, 282 F.3d 343, 349 (5th Cir. 2002) (affirming district court's refusal to compel arbitration against the non-signatory defendants after finding equitable estoppel). Here, as explained below, there is no reason even to stay because the MDL will proceed in any event.

To begin with, a plaintiff's allegations are not enough to establish an agency relationship sufficient to invoke the agency doctrine; instead, Defendants must actually prove that the Non-Signatory Defendants were agents of the Signatory Defendants. *See, e.g., Britton v. Co-op Banking Group*, 916 F.2d 1405, 1414 (9th Cir. 1990) ("remand[ing] the case to the district court for further determination and fact-finding as to whether the" non-signatory seeking to invoke the arbitration clause was actually an agent of the signatory); *Chastain*, 502 F. Supp. 2d at 1075 ("The trial court sits as a trier of fact, weighing all the declarations and other evidence to reach a final determination" on "the question of whether a nonsignatory to an arbitration agreement can compel a signatory to submit to arbitration."); *Brown v. Gen. Steel Domestic Sales, LLC*, 2008 WL 2128057, at *7 & n.45 (C.D. Cal. May 19, 2008) (denying the non-signatory defendants' motion to compel arbitration where "[t]he non-signatory defendants make no argument that they are in fact agents of [the signatory defendant]" but instead "rely exclusively on the allegations in the [plaintiffs'] complaint"); 9 U.S.C. § 4 (requiring court or jury trial of facts upon which applicability of arbitration provision depends). But Defendants' have already indicated that they will "contest [their] liability [for the sales of their unnamed and alleged affiliates] before the arbitrator or before this Court" on the merits. Motion at 6 n.6. And in seeking to compel arbitration with other direct action plaintiffs, Defendants have not even claimed to be one another's agents. *See, e.g., In re Flat Panel*, Doc. 3018; Doc. 2991-1.

Even if a plaintiff's allegations were enough to invoke the agency doctrine, Costco alleges only that Defendants acted as "the principal, agent, or joint venturer of, or for, other Defendants *with respect to the acts, violations, and course of conduct alleged by Costco*." Complaint ¶ 48 (emphasis added). This alleges an agency relationship only with respect to Defendants' illegal conduct, *not* a general principal-agent relationship or even a principal-agent relationship in carrying out the vendor agreements, which is what Defendants must prove. *See, e.g., Britton v. Co-op Banking Group*, 4 F.3d 742, 747 (9th Cir. 1993) (applying the agency test only after finding that the non-signatory "was an agent, officer and employee of [the signatory defendant]"); *Boyd v. Homes of Legend, Inc.*, 981 F. Supp. 1423, 1432 (M.D. Ala. 1997) (finding the agency theory inapplicable because "there is no basis here to conclude that an agency relationship exists

between the [non-signatory defendant] and the [signatory defendant]"), *rev'd on other grounds*, 188 F.3d 1294 (11th Cir. 1999).[9] But Defendants surely would not argue that the Non-Signatory Defendants are—like true *agents* of the Signatory Defendants, such as employees or officers—authorized to act for and on behalf of them, generally or under the vendor agreement, or that the Signatory and Non-Signatory Defendants share the fiduciary relationship of trust and confidence that exists between principal and agent.

Defendants' agency claim plainly must fail with respect to the Non-Signatory Defendants who are not even affiliates of the Signatory Defendants, as there is simply no way that these non-signatory corporations are general *agents* of their *competitors* in fulfilling their vendor agreements. But Defendants' agency argument as to the Signatory Defendants' affiliates fails as well. For example, Defendants' argument relies on the notion that Sharp Corp. (a non-signatory) is an agent for its subsidiary, Sharp Electronics Corp. (a signatory), and similarly that Samsung Electronics Co., Ltd. (a non-signatory), is an agent for its subsidiary, Samsung Electronics America, Inc. (a signatory). It would be a rare company if the parent corporation were really the agent of its subsidiaries, rather than the other way around, and Defendants do not allege, much less prove, that they were exceptions to the rule.

Moreover, even if the Court were to find that some of the Non-Signatory Defendants were agents of the Signatory Defendants, that would only begin the inquiry. Agents of a signatory can compel the signatory plaintiff to arbitrate only if "(1) the wrongful acts of the agents for which they are sued relate to their behavior as agents or in their capacities as agents . . . and (2) the claims against the agents arise out of or relate to the contract containing the arbitration clause." *Amisil*, 622 F. Supp. 2d at 832 (citing *Britton*, 4 F.3d 742, and *Letizia v. Prudential Bache Sec., Inc.*, 802 F.2d 1185 (9th Cir. 1986)). Defendants can satisfy neither prong.

Assuming that some Non-Signatory Defendants are agents of the Signatory Defendants, Defendants have not shown that Costco sued those Non-Signatory Defendants for acts that "relate

[9] Even as to Defendants' illegal conduct, the Complaint does not specifically allege an agent-principal relationship between each of the Non-Signatory Defendants and *the Signatory Defendants*. Instead, Costco alleges that each "Defendant" acted as the agent for "other Defendants"—not "the Signatory Defendants." On this basis, the court in *Brown* rejected an argument just like Defendants', finding that "the [plaintiffs] do not specifically allege that the non-signatory defendants are, or are being sued as, agents of [the signatory defendant] . . . ." 2008 WL 2128057, at *7.

to their behavior as agents" of the Signatory Defendants. For example, in *Amisil*, the "complaint demonstrate[d] that the individual [non-signatory] defendants [we]re being sued *precisely because of their duties to [the plaintiff]* as officers and managers of [the signatory defendant]." *Amisil*, 622 F. Supp. 2d at 835 (emphasis added). Not so here, where Costco sues the Non-Signatory Defendants because they each, of their own accord and regardless of any agency relationship with any Signatory Defendant, participated in the conspiracy to fix LCD prices.[10]

Defendants also have not satisfied, and cannot satisfy, the second prong of the agency test—that "the claims against the [alleged] agents [of the Signatory Defendants] arise out of or relate to the contract containing the arbitration clause." *Amisil*, 622 F. Supp. 2d at 832. *See, e.g.*, *Britton*, 4 F.3d at 748 (concluding that the non-signatory defendant's alleged wrongdoing did not relate to or arise out of the contract containing the arbitration clause because "[t]he sum and substance of [the plaintiffs'] allegations are that [the non-signatory defendant] . . . [committed] independent acts of fraud, unrelated to any provision or interpretation of the contract").

Nor are the animating reasons for the agency doctrine applicable here. There are two reasons why courts have found non-signatory agents covered by an arbitration agreement. First, "'[a]n entity . . . can only act through its employees, and an arbitration agreement would be of little value if it did not extend to [them].'" *Amisil*, 622 F. Supp. 2d at 833 (quoting *Pritzker v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110, 1122 (3d Cir. 1993)) (alteration in original). Second, if a party could "avoid the practical consequences of an agreement to arbitrate by naming nonsignatory parties as [defendants] in his complaint, . . . the effect of the rule requiring arbitration would, in effect, be nullified." *Id.* (quoting *Arnold v. Arnold Corp.*, 920 F.2d 1269, 1281 (6th Cir. 1990)) (alterations in original).

The first reason does not apply here, where none of the Defendants is an employee of an entity with which Costco has signed an arbitration agreement. Neither does the second, as

[10] Indeed, in the vast majority of cases in which courts have invoked the agency theory to compel arbitration with a non-signatory, the non-signatory was not a corporate affiliate of the signatory, but rather an *employee, officer, or director* of the signatory. *See, e.g.*, *Letizia*, 802 F.2d at 1187-88 (employee of signatory defendant); *Kiskadee Commc'ns (Bermuda), Ltd. v. Father*, No. C 10–05277, 2011 WL 1044241, at *5 (N.D. Cal. Mar. 22, 2011) (officers and directors of signatory defendant); *Amisil*, 622 F. Supp. 2d at 839 (majority and managing member, CFO, and managing director of signatory defendant).

Defendants have presented no evidence whatsoever that Costco selectively chose Defendants with which it had no arbitration agreement. Because neither the grounds nor the criteria for applying the agency theory are present, the Court should reject the theory's application here.

**E. Before Costco May Be Forced to Arbitrate with Any Defendant, the Court Must Declare the 2004 Arbitration Agreement's [REDACTED] Unenforceable in the Antitrust Context**

Even if the Court concludes that Costco's claims against some Defendants are otherwise subject to arbitration, it may compel arbitration only if it first declares the 2004 agreement's [REDACTED] unenforceable in the antitrust context.[11] The 2004 arbitration agreement, which Defendants presumably believe applicable to at least their post-2004 sales to Costco, forbids [REDACTED] but it specifies that [REDACTED] Shavey Decl. Exhibit G, ¶ 20.[12] Though this limitation is enforceable in many types of disputes, such as contract claims, it is unenforceable in this context, [REDACTED] [13] This Court has agreed

[11] This is a question for the Court, not the arbitrator. *See Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1000 (9th Cir. 2010) ("[W]hen a plaintiff argues that an arbitration clause, standing alone, is unenforceable—for reasons independent of any reasons the remainder of the contract might be invalid—that is a question to be decided by the court."); *Kristian v. Comcast Corp.*, 446 F.3d 25, 47-48 (1st Cir. 2006) (holding that question whether provision barring treble damages was enforceable in an antitrust case was "a question of arbitrability" to be resolved by the Court and that the provision was unenforceable and had to be severed).

[12] The 1997 and 2000 arbitration agreements forbade [REDACTED] *See, e.g., Am. Soc. of Mechanical Engs., Inc. v. Hydrolevel Corp.*, 456 U.S. 556, 575 (1982) (finding that "the antitrust private action was created primarily as a remedy for the victims of antitrust violations," and "[t]reble damages 'make the remedy meaningful by counter-balancing the difficulty of maintaining a private suit' under the antitrust laws") (quoting *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 486 n.10 (1977)); *Brunswick*, 429 U.S. at 485-86 ("Section 4 . . . is in essence a remedial provision," and "the treble-damages provision, which makes awards available only to injured parties, and measures the awards by a multiple of the injury actually proved, is designed primarily as a remedy."). Thus, this earlier provision [REDACTED]

[13] *E.g., Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628, 637 n.19 (1985) (stating that if a contractual provision operated "as a prospective waiver of a party's right to pursue statutory remedies for antitrust violations, we would have little hesitation in condemning the agreement as against public policy"); *George Fischer Foundry Systems, Inc. v. Adolph H. Hottinger Maschinenbau GmbH*, 55 F.3d 1206, 1210 (6th Cir. 1995) ("[I]f any part of a contract . . . waives a party's right to collect damages for antitrust violations, the provision is void for public policy reasons."); *Redel's Inc. v. General Elec. Co.*, 498 F.2d 95, 99 (5th Cir. 1974) ("Releases may not be executed which absolve a party from liability for future violations of our antitrust laws."); *Gaines v. Carrollton Tobacco Bd. of Trade, Inc.*, 386 F.2d 757, 759 (6th Cir. 1967) ("[I]t seems clear as a matter of law that . . . an agreement, if executed

Case3:07-md-01827-SI Document5402-2 Filed03/08/12 Page23 of 33

that "an arbitration agreement cannot be made to serve as a vehicle for the waiver of statutory rights." *Bencharsky v. Cottman Transmission Sys., LLC*, 625 F. Supp. 2d 872, 882 (N.D. Cal. 2008).

**F. A Stay is Unwarranted**

If the Court concludes that Costco must arbitrate with some but not all Defendants, that is no reason to stay litigation of Costco's claims that will remain in the MDL. In arguing otherwise, Defendants misstate the law and the facts.

Defendants cite *IDS Life Insurance Co. v. SunAmerica, Inc.*, 103 F.3d 524 (7th Cir. 1996), for the proposition that "a stay is required where related litigation with a non-signatory could have a preclusive effect on legitimate arbitral proceedings." Motion at 13. That is not what *SunAmerica* held, and it is not the law. *See Moses H. Cone*, 460 U.S. at 20 n.23 (noting that the decision whether "to stay litigation among the non-arbitrating parties pending the outcome of the arbitration" "is one left to the district court . . . as a matter of its discretion").[14] In *SunAmerica*, the Seventh Circuit held that where a non-signatory defendant "ask[s] the district court to stay the case against them pending the resolution of the same issue in an arbitration between the same plaintiffs and" a signatory defendant, the judge "must make a *discretionary* judgment" applying "the normal rules for parallel-proceeding abstention." 103 F.3d at 529-30 (emphasis added). True, the court went on to say that courts should stay related litigation if "a party to an arbitration agreement, trying to get around it, sue[d] not only the other party to the agreement but some related party with which it ha[d] no arbitration agreement, in the hope that the claim against the other party [would] be adjudicated first and have preclusive effect in the arbitration." *Id.* at 530.

---

in a fashion calculated to waive damages arising from future violations of the antitrust laws, would be invalid on public policy grounds."). *See also, e.g., Booker v. Robert Half Int'l, Inc.*, 413 F.3d 77, 79 (D.C. Cir. 2005) (Roberts, J.) ("Statutory claims may be subject to agreements to arbitrate, so long as the agreement does not require the claimant to forgo substantive rights afforded under the statute."); *Al-Safin v. Circuit City Stores, Inc.*, 394 F.3d 1254, 1261 (9th Cir. 2005) (holding that an arbitration agreement violates the *Mitsubishi* rule if "it limits the remedies that would otherwise be available in a judicial forum"); *Graham Oil Co. v. ARCO Prods. Co.*, 43 F.3d 1244, 1247-48 (9th Cir. 1994) (holding arbitration clause unenforceable because it "compels Graham Oil to surrender important statutorily-mandated rights," including exemplary damages).

[14] *See also In re Flat Panel*, 2011 WL 2650689, at *9 (Doc. 3034) ("It is within the Court's discretion to stay all or part of the litigation associated with the dispute between Nokia and AUO.") (citing *United States v. Neumann Caribbean Int'l, Ltd.*, 750 F.2d 1422, 1427 (9th Cir. 1985)); *Amisil*, 622 F. Supp. 2d at 842 ("[I]t may be advisable to stay litigation among the nonarbitrating parties pending the outcome of the arbitration. That decision is one left to the district court . . . as a matter of its discretion to control its docket.") (internal quotation marks and citation omitted).

But that is plainly not happening here. Costco is not trying to rush to court to get a preclusive ruling as to arbitration proceedings; if anything, arbitration would likely proceed first here. Moreover, given joint and several liability, if Costco wanted to avoid arbitration, it could have named as few defendants as possible and only those with which it had no arbitration agreement. Instead, Costco is seeking a full, fair, and efficient resolution of its claims.

Given that it is within the Court's discretion whether to stay Costco's claims that remain in the MDL, the Court must consider what will best promote judicial economy and avoid hardship to the parties. As the Court has noted, there is little benefit in staying related litigation pending arbitration in this MDL proceeding when many of the claims will proceed in the MDL anyway and all defendants are "defendant[s] in many other proceedings in this MDL and must therefore conduct [their] defense regardless of whether [any one] matter is stayed." *In re Flat Panel*, Doc. 3213, at 5. For that reason, this Court has declined to stay Dell's litigation as to AUO, even though there even the party subject to arbitration is the same. *Id.* Moreover, even though the Court compelled Nokia to arbitrate all of its disputes with AUO, it still allowed Nokia "to pursue litigation with the other alleged co-conspirators." *In re Flat Panel*, 2011 WL 2650689, at *9 (Doc. 3034). The Court should do the same here. As for hardship, Defendants would suffer no great harm if some had to proceed in litigation at the same time that others arbitrated. As the Court well knows, the plaintiffs and defendants in this action have agreed to coordinated discovery and briefing schedules, and "given that [each defendant here] is a defendant in many other proceedings in this MDL and must therefore conduct its defense regardless of whether this matter is stayed," *In re Flat Panel*, Doc. 3213, at 5, no additional hardship would come from having to litigate with Costco as planned.

## IV. CONCLUSION

Two of several dozen defendants claim an arbitration clause. The clause, by its terms, is inapplicable here. Even if it did apply, Defendants waived any right to enforce it by their intentional conduct and the resulting prejudice to Costco. Moreover, there is simply no basis for forcing Costco to arbitrate with parties with whom it never consented to arbitrate. Costco respectfully asks that the Court deny Defendants' Motion to Compel Arbitration in its entirety

based on the contract language or waiver. If the Court believes any claims are subject to arbitration, they should be limited to Costco's claims against the Signatory Defendants, and the Court must first invalidate the [redacted] in this context. There is no basis for staying Costco's claims that remain in court.

DATED: August 8, 2011

s/ David J. Burman

David J. Burman (*pro hac vice*)
DBurman@perkinscoie.com
Cori G. Moore (*pro hac vice*)
CGMoore@perkinscoie.com
Troy P. Sauro, Bar No. 224097
TSauro@perkinscoie.com
Noah G. Purcell (*pro hac vice*)
NPurcell@perkinscoie.com
**Perkins Coie LLP**
Four Embarcadero Center, Suite 2400
San Francisco, CA 94111-4131
Telephone: 415.344.7000
Facsimile: 415.344.7050

Attorneys for Plaintiff
Costco Wholesale Corp.

# EXHIBIT B

United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

IN RE: TFT-LCD (FLAT PANEL) ANTITRUST LITIGATION
______________________________________/

No. M 07-1827 SI
MDL No. 1827

This Order Relates To:

COSTCO WHOLESALE CORPORATION,

Plaintiff,

v.

AU OPTRONICS CORPORATION, *et al.*,

Defendants.
______________________________________/

No. C 11-0058 SI

**ORDER GRANTING IN PART DEFENDANTS' JOINT MOTION TO COMPEL ARBITRATION**

Now before the Court is defendants' joint motion to compel arbitration of the claims filed by Costco Wholesale Corporation ("Costco"). Having considered the arguments presented in the moving papers, the Court hereby GRANTS IN PART defendants' motion.

## BACKGROUND

This case arises as part of a multidistrict litigation that involves allegations of a global price-fixing conspiracy in the market for liquid crystal display ("LCD") panels. On March 28, 2010, this Court certified a class of "All persons and entities who, between January 1, 1999 and December 31, 2006, directly purchased a [Thin-Film Transistor]-LCD panel from any defendant or any subsidiary thereof, or any named affiliate or any named co-conspirator." Order Granting in Part and Denying in Part Direct Purchaser Plaintiffs' Motion for Class Certification, Master Docket No. 1641, at 34 (March 28, 2010). In late 2010, Costco opted out of the direct-purchaser class action and filed its own antitrust

action in the Western District of Washington. Its case was subsequently transferred to this Court by order of the Judicial Panel on Multidistrict Litigation and was deemed related to MDL No. 1827.

Costco's complaint alleges that defendants "conspired . . . for the purpose and effect of raising and maintaining prices and reducing capacity and output for Liquid Crystal Display (LCD) panels, and products containing such panels, sold to Costco and others." Compl. at ¶1. The complaint includes claims under the Sherman Act, 15 U.S.C. § 1, and the antitrust laws of Washington, California, Arizona, Illinois, and Florida. *Id.* at ¶¶179-208.

On July 25, 2011, defendants filed a joint motion to compel arbitration of all of Costco's claims. Defendants assert that Costco signed valid, enforceable arbitration agreements with all of its LCD product suppliers. Further, because "Costco alleges that interdependent and concerted conduct by all Defendants, acting as one, caused injury to Costco," defendants argue that Costco must arbitrate its claims against every defendant, including those with which it had no agreement to arbitrate. Motion at 11.

**LEGAL STANDARD**

Section 4 of the Federal Arbitration Act ("FAA") permits "a party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States District Court . . . for an order directing that . . . arbitration proceed in the manner provided for in [the arbitration] agreement." 9 U.S.C. § 4. Upon a showing that a party has failed to comply with a valid arbitration agreement, the district court must issue an order compelling arbitration. *Id.*

International commercial arbitration agreements involving a United States corporation are governed by Chapter 2 of the FAA, which codifies the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention" or "Convention"). 9 U.S.C. § 206. A district court may compel arbitration not only in its own district but also in a foreign location if the proposed arbitration is governed by the Convention. *Id.* Arbitration agreements governed by the

Case3:07-cv-05944-SC Document1392-3 Filed10/05/12 Page46 of 112

New York Convention are also governed by Chapter 1 of the FAA to the extent that the FAA and the Convention are not in conflict. 9 U.S.C. § 208.

The Supreme Court has stated that the FAA espouses a general policy favoring arbitration agreements. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *see also Hall Street Assoc., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 581 (2008). Federal courts are required to rigorously enforce agreements to arbitrate. *See Hall Street Assoc.*, 552 U.S. at 582. Courts are also directed to resolve any "ambiguities as to the scope of the arbitration clause itself . . . in favor of arbitration." *Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 476 (1989). The federal policy favoring enforcement of arbitration agreements "applies with special force in the field of international commerce." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985).

The Ninth Circuit has held that, in determining whether to issue an order compelling arbitration under the New York Convention, the Court may not review the merits of the dispute but must limit its inquiry to determining whether:

> (1) there is an agreement in writing within the meaning of the Convention; (2) the agreement provides for arbitration in the territory of a signatory of the Convention; (3) the agreement arises out of a legal relationship, whether contractual or not, which is considered commercial; and (4) a party to the agreement is not an American citizen, or that the commercial relationship has some reasonable relation with one or more foreign states.

*Balen v. Holland America Line Inc.*, 583 F.3d 647, 654-55 (9th Cir. 2009) (citation omitted). "If these questions are answered in the affirmative, a court is required to order arbitration unless the court finds the agreement to be null and void, inoperative, or incapable of being performed." *Prograph Intern. Inc. v. Barhydt*, 928 F. Supp. 983, 988 (N.D. Cal. 1996) (citation omitted); *see also* 9 U.S.C. § 4.

The FAA provides that arbitration agreements generally "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. However, the strong presumption in favor of arbitration "does not confer a right to compel arbitration of any dispute at any time." *Volt*, 489 U.S. at 474. This is because "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed

**United States District Court**
For the Northern District of California

Case3:07-md-01827-SI Document3593-3 Filed10/03/11 Page5 of 12

so to submit." *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960); *see also McDonnell Douglas Finance Corp. v. Pennsylvania Power & Light Co.*, 858 F.2d 825, 831 (2d Cir. 1988) (stating that the purpose of the FAA "was to make arbitration agreements as enforceable as other contracts, but not more so" (internal quotation marks omitted)). Additional grounds for declining to enforce an arbitration agreement include unconscionability and party waiver. *See Rent-A-Center, West, Inc. v. Jackson*, 130 S. Ct. 2772 (2010) (unconscionability); *Moses*, 460 U.S. at 24-25 (waiver).

**DISCUSSION**

Defendants' motion is based upon Costco's "Basic Vendor Agreement," which Costco typically asks all of its vendors to sign. McAhren Decl., Exh. A at 85-86. The vendor agreement incorporates by reference Costco's "Standard Terms," which contain the following arbitration provision:

> **DISPUTES AND ARBITRATION.** All claims and disputes that (1) are between Vendor and Costco Wholesale or either's subsidiaries, parents, affiliates, officers, directors and/or employees, and (2) arise out of or relate to the Agreement Documents or their subject matter, interpretation, performance or enforcement, or any other agreement, transaction or occurrence between Vendor and Costco Wholesale . . . shall be arbitrated under the Commercial Arbitration Rules of the American Arbitration Association ("AAA") in English at Seattle, Washington . . . . Notwithstanding the above, Costco Wholesale or Vendor may bring court proceedings or claims against each other (I) solely as part of separate litigation commenced by an unrelated third party . . . .

Shavey Decl., Exh. G, at ¶20.

Although Costco typically entered into vendor agreements with its suppliers, defendants have produced vendor agreements for only two defendants: Samsung Electronics America, Inc. and Sharp Electronics Corp.[1] *See* Shavey Decl., ¶16; *see also* McAhren Decl., Exhs. B, C. Defendants have also produced agreements Costco had in place with non-defendants which are members of the Toshiba, Epson, and Philips/LG corporate families. *See* McAhren Decl., Exhs. D (vendor agreement with Toshiba America Consumer Products, Inc.), E (Toshiba Hawaii), F (Epson America), G (Philips Consumer Lifestyle). In addition, defendants have produced two agreements with other companies that

[1]The Sharp Vendor Agreement is not signed by Costco. Costco has not argued that this means the contract is invalid.

United States District Court
For the Northern District of California

apparently sold LCD products to Costco, although their precise relationship with defendants is unclear. *Id.* at Exhs. H (vendor agreement with Mitsubishi Digital Electronics America, Inc.), I (Medion AG).

This Court previously addressed the scope of an arbitration clause similar to Costco's in the Nokia direct-purchaser action. *See* Order Granting AU Optronics Corporation's Motion to Compel Arbitration, Master Docket No. 3034, at 6-9 (July 6, 2011) ("Nokia Arbitration Order"). The arbitration clause in that case covered "any disputes related to" the purchasing agreement Nokia had with its suppliers. Given the clause's broad language, the Court found that Nokia's antitrust claims fell within the scope of the clause. *Id.* at 7 ("Under the Ninth Circuit's reasoning, the language 'related to' must be read broadly, to encompass any matter that touches the contractual relationship between the parties.").

Costco's arbitration clause is at least as broad as the clause at issue in the Nokia case, and subjects to arbitration any claim that "relates to" the vendor agreement Costco had in place with its suppliers. Accordingly, to the extent the arbitration clause applies to this case, Costco's state and federal antitrust claims are likewise subject to arbitration.

Costco does not dispute that its vendor agreements contain the above arbitration clause, nor does it dispute that the arbitration clause is broad enough to cover antitrust claims arising out of purchases made pursuant to its vendor agreements. Instead, Costco argues that the terms of the arbitration clause exclude this lawsuit from the clause's reach. Alternatively, Costco argues that defendants have waived their right to enforce the arbitration clause. In the event the Court finds the arbitration clause applicable here, Costco argues that the clause may only be enforced against those defendants which actually signed vendor agreements. Costco also requests that this Court declare the clause's bar to treble damages unenforceable. Finally, Costco objects to the defendants' request for a stay of these proceedings pending the outcome of arbitration. The Court considers each of these issues in turn.

United States District Court
For the Northern District of California

Case3:07-md-01827-SI Document3592-3 Filed10/03/11 Page7 of 12

## I. Applicability of Arbitration Clause

Costco first argues that the text of its arbitration clause explicitly exempts this case from its coverage. Costco points out that the arbitration clause allows Costco to "bring court proceedings . . . as part of separate litigation commenced by an unrelated third party." Shavey Decl., Exh. G, at ¶20. According to Costco, this provision recognizes that "the benefits of arbitration are largely lost" when "related litigation is not subject to arbitration." Opp'n at 5. Costco argues that the provision authorized its decision to opt out of the direct-purchaser class action and bring its own lawsuit.

The Court agrees with defendants that once Costco opted out of the class action,[2] its lawsuit was no longer "part of separate litigation" within the meaning of the arbitration clause. Even accepting Costco's description of the provision's purpose, the benefits of arbitration would not be "largely lost" in this instance. Costco's decision to opt out subjected defendants a new proceeding, separate from the class action, with new discovery deadlines and a trial that will take place in a new district. Even if Costco's lawsuit was "commenced by" the class action plaintiffs, it ceased being a "part of" that case when Costco opted out of the class. Accordingly, the Court finds that the arbitration clause covers Costco's claims.

## II. Waiver

Costco next argues that defendants have waived their right to arbitrate by waiting to raise the issue until eight months after Costco filed its complaint. "A party seeking to prove waiver of a right to arbitration must demonstrate: (1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." *Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 694 (9th Cir. 1986).

Costco argues that defendants have waived their right to arbitrate by filing a motion to dismiss the direct-purchaser class, filing a motion to dismiss Costco's individual complaint, stipulating to an

[2]The Court expresses no opinion on the question whether Costco's claims would have been subject to arbitration had it stayed in the class action.

Case3:07-md-01827-SI Document3926-3 Filed10/09/12 Page8 of 12

extension of the deadlines applicable to proceedings in this MDL, and seeking "extensive discovery" from Costco. It asserts that it has been prejudiced by agreeing "to share tasks, costs, and work product with other direct action plaintiffs," which resulted in its investing "hundreds of hours and hundreds of thousands of dollars in these efforts." Opp'n at 10.

The Court finds that defendants have not waived their right to arbitrate. None of the actions Costco has identified is wholly inconsistent with defendants' right to arbitrate. Although defendants sought preliminary discovery from Costco, they limited that discovery to matters involving the arbitrability of Costco's claims once the issue of arbitration arose. *Cf.* Moore Decl., ¶¶6-7. Nor is the fact that defendants filed motions to dismiss inconsistent with their right to arbitrate. This Court has already indicated that seeking to compel arbitration would have difficult before the direct purchaser class was finalized. *See* Order, Master Docket No. 2731, at 6 (May 9, 2011). Further, although defendants filed a motion to dismiss in this case, that motion expressly noted their desire to seek arbitration. *See* Defendants Joint Motion to Dismiss Complaint, Master Docket No. 2808, at 7 n.1 (May 24, 2011); *cf.* Nokia Arbitration Order at 11 ("One of the few actions that can clearly be treated as representing AUO's intent is AUO's answer to Nokia's amended complaint," which reserved AUO's right to compel arbitration). And defendants filed their motion to compel arbitration within the time negotiated by the parties for defendants to respond to Costco's complaint. *See* Stipulation and Order Regarding Service and Scheduling, Master Docket No. 2763, at ¶2 (May 13, 2011).

The Court also finds that Costco will not be prejudiced by proceeding to arbitration after having engaged in limited substantive engagement with this case. Although Costco may have incurred expenses in connection with the prosecution of its case, Costco would have incurred those expenses regardless of the arbitration demand. *See* Nokia Arbitration Order at 12 ("[E]ven had AUO moved to compel arbitration immediately after Nokia filed its complaint, Nokia would likely still have been required to answer the motion to dismiss, comply with discovery requests, and otherwise engage in this litigation."). Accordingly, the Court finds that defendants did not waive their right to seek arbitration.

### III. Reach of the Arbitration Clause

The parties also dispute the reach of Costco's arbitration clause. Arbitration is clearly required between Costco and defendants Samsung Electronics America, Inc. and Sharp Electronics Corp., both of which signed vendor agreements with Costco. Defendants, however, claim that Costco must arbitrate all of its claims against all defendants, even its claims against those defendants with which Costco signed no arbitration agreement. Defendants argue that arbitration is required because "Costco alleges that interdependent and concerted conduct by all Defendants, acting as one, caused injury to Costco for its purchases under all of it LCD Vendor Agreements." Motion at 11.

To begin with, the Court rejects defendants' argument that all of Costco's claims must be arbitrated. Forcing Costco to arbitrate because defendants entered into a complex, interdependent conspiracy would not only exceed the scope of Costco's arbitration clause, it would also impede the enforceability of the antitrust laws. To rule otherwise would allow defendants to bootstrap their way into arbitration based on nothing more than the very conduct which constituted a violation of the antitrust laws in the first place. *See Ross v. American Exp. Co.*, 547 F.3d 137, 148 (2d Cir. 2008) ("[I]t would be wrong to suggest that a claim against a co-conspirator of a party alleged to have engaged in antitrust violations will always be intertwined to a degree sufficient to work an estoppel." (internal quotation marks omitted)). Further, the Court agrees with Costco that, given that the defendants belong to distinct corporate families, there has been no showing that Costco intended to arbitrate disputes with all defendants at the time it signed its vendor agreements. *See id.* at 146 ("[T]he further necessary circumstance of some relation between Amex and the plaintiffs sufficient to demonstrate that the plaintiffs intended to arbitrate this dispute with Amex is utterly lacking here.").

Although it rejects defendants' argument that all of Costco's claims must be arbitrated, the Court agrees with defendants that Costco must arbitrate its claims against those defendants whose affiliates have arbitration agreements with Costco. The arbitration clause, by its own terms, requires arbitration of any claim against a signatory or its "subsidiaries, parents, affiliates, officers, directors and/or employees." Shavey Decl., Exh. G, ¶20. This is consistent with the general rule that "[w]hen the

United States District Court
For the Northern District of California

charges against a parent company and its subsidiary are based on the same facts and are inherently inseparable, a court may refer claims against the parent to arbitration even though the parent is not formally a party to the arbitration agreement." *Fujian Pacific Elec. Co. Ltd. v. Bechtel Power Corp.*, 2004 WL 2645974, at *6 (N.D. Cal., Nov. 19, 2004) (quoting *J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A*, 863 F.2d 315, 321-22 (4th Cir.1988)); *see also id.* ("Otherwise the arbitration proceedings between the two signatories would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted."); *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1046 (9th Cir. 2009) (stating that a nonsignatory may enforce an arbitration clause where there is a "close relationship between the entities involved, as well as the relationship of the alleged wrongs to the non-signatory's obligations and duties in the contract and . . . the claims [are] intertwined with the underlying contractual obligations").

Accordingly, the Court GRANTS defendants' motion to compel arbitration as to defendants Samsung Electronics America, Inc. and Sharp Electronics Corp. It also GRANTS defendants' motion to the extent Costco's claims against the Toshiba, Epson, and Philips/LG corporate families stem from purchases made pursuant to the vendor agreements Costco had with Toshiba America Consumer Products, Inc., Toshiba Hawaii, Epson America, and Philips Consumer Lifestyle.[3] The Court DENIES the remainder of defendants' motion to compel.

**IV. Enforceability of Bar to Treble Damages**

The 2004 arbitration clause forbids awards of "punitive, exemplary, treble, or other enhanced damages." Shavey Decl., Exh. G, at ¶20. Because this Court has determined that Costco must arbitrate

---

[3]Costco's obligation to arbitrate these claims, however, only extends as far as its obligation to arbitrate the claims against the signatory to the vendor agreement. Thus, to the extent the vendor agreements did not relate to sales of LCD products, Costco cannot be forced to arbitrate the claims at issue in this lawsuit. For example, defendants have produced vendor agreements that Costco had in place with Philips Consumer Lifestyle and Epson America. Costco claims that neither of these entities sells LCD products. Shavey Decl., ¶19 (stating that Philips Consumer Lifestyle "sells personal care products, such as shavers under the Norelco brand and toothbrushes under the Sonicare brand"); *id.* (stating that Epson America "appears to sell printers, scanners, projectors, and related products"). If Costco is correct that no LCD products were purchased pursuant to those vendor agreements, then their arbitration clauses would obviously not have any application in this proceeding.

its claims against some defendants, Costco requests that the Court declare the arbitration agreement's bar to treble damages unenforceable. Some courts have indicated that a party may not waive its right to treble damages in the antitrust context through a contractual limitation on recoverable damages. *See, e.g.*, *Kristian v. Comcast Corp.*, 446 F.3d 25, 47-48 (1st Cir. 2006) ("On the basis of these precedents, we conclude that the award of treble damages under the federal antitrust statutes cannot be waived."); *Mitsubishi Motors*, 473 U.S. at 637 n.19 (stating that if a contractual agreement had operated "as a prospective waiver of a party's right to pursue statutory remedies for antitrust violations, we would have little hesitation in condemning the agreement as against public policy"). The Court agrees that the arbitration clause's limitation on treble damages is unenforceable. Accordingly, it GRANTS Costco's request and severs the treble damages limitation from the agreement. *See* Shavey Decl., Exh. G, at ¶20 (providing that "[t]he limitations on remedies . . . may be deemed inoperative to the extent necessary to preserve the enforceability of the agreement to arbitrate.").

**IV. Stay of Proceedings**

Finally, defendants request that the Court stay these proceedings pending the outcome of arbitration. Given the scope of these MDL proceedings, however, and defendants' extensive involvement in the class and direct-purchaser actions, the Court finds that a stay will have little benefit. Accordingly, the Court DENIES this request. *See United States v. Neumann Caribbean Int'l, Ltd.*, 750 F.2d 1422, 1427 (9th Cir. 1985) (holding that decision to stay proceedings is within district court's discretion).

**CONCLUSION**

For the foregoing reasons and for good cause shown, the Court hereby GRANTS IN PART defendants' joint motion to compel arbitration. To the extent it purchased LCD panels pursuant to vendor agreements, Costco must arbitrate its claims against the corporate affiliates of the signatories to those vendor agreements. The Court also GRANTS Costco's request to sever the limitation on treble

damages from the arbitration clause. Finally, the Court DENIES defendants' request for a stay of proceedings. Docket No. 31 in 11-0058; Docket No. 3183 in 07-1827.

**IT IS SO ORDERED.**

Dated: September 9, 2011

SUSAN ILLSTON
United States District Judge

United States District Court
For the Northern District of California