IAN SIMMONS (*pro hac vice*)
Email:  isimmons@omm.com
BENJAMIN G. BRADSHAW (SBN 189925)
Email:  bbradshaw@omm.com
KEVIN D. FEDER (SBN 252347)
Email:  kfeder@omm.com
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, D.C.  20006-4001
Telephone:     (202) 383-5300
Facsimile:       (202) 383-5414

*Attorneys for Defendants Samsung Electronics Co., Ltd., and Samsung Electronics America, Inc.*

[Additional moving defendants and counsel listed in signature block]

# IN THE UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Case No. 3:07-cv-05944 SC<br><br>MDL No. 1917 |
| This Document Relates To:<br><br>DIRECT PURCHASER ACTIONS | **DEFENDANTS' NOTICE OF MOTION AND MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b)**<br><br>[Proposed] Order Granting Motion for Certification Pursuant to 28 U.S.C. § 1292(b) Filed Concurrently Herewith<br><br>Judge:     Honorable Samuel P. Conti<br>Court:     Courtroom 1, 17th Floor<br>Date:      February 8, 2013<br>Time:      10:00 am |

DEFENDANTS' NOTICE OF MOTION AND MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b) AND MEMORANDUM OF LAW IN SUPPORT THEREOF

3:07-CV-05944 SC
MDL NO. 1917

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that the undersigned Defendants[1] hereby move this Court for an Order certifying the Court's November 29, 2012 Order [Dkt. No. 1470] ("November 29 Order") for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).  The November 29 Order granted in part and denied in part Defendants' Joint Motion for Summary Judgment Against Purported Direct Purchaser Plaintiffs Who Did Not Purchase CRTs [Dkt. No. 1013] (Dec. 12, 2011).

The motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities in support thereof, the pleadings and correspondence on file with the Court and attached to this motion, and arguments and authorities as may be presented at or before any hearing.

**STATEMENT OF THE ISSUES**

Interlocutory review of a non-final order is appropriate where, as here, the "order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).  The issue is whether this Court should certify for interlocutory review its November 29, 2012 Order, which determined that *Royal Printing*'s "ownership or control" exception[2] may apply to the nine plaintiffs at issue here even though, among other things, (1) this Court recognized that other "avenues of private enforcement" of the antitrust laws remain open, such that "the policy rationale behind *Royal Printing* does not apply," and (2) these plaintiffs did not directly purchase the allegedly price-fixed product (CRTs) at all, but rather purchased a different, downstream product (finished products such as TVs and monitors).

---

[1]  "Defendants" refers to the undersigned defendants, who are the remaining defendants against the putative class asserting federal claims:  Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc.; Hitachi, Ltd., Hitachi Displays, Ltd. (n/k/a Japan Display East, Inc.), Hitachi Asia, Ltd., Hitachi America, Ltd., and Hitachi Electronic Devices (USA), Inc.; Samsung SDI America, Inc., Samsung SDI Co., Ltd., Samsung SDI (Malaysia) SDN. BHD., Samsung SDI Mexico S.A. DE C.V., Samsung SDI Brasil Ltda., Shenzen Samsung SDI Co., Ltd. and Tianjin Samsung SDI Co., Ltd.; and Toshiba Corporation, Toshiba America Information Systems, Inc., Toshiba America Consumer Products, L.L.C., and Toshiba America Electronic Components, Inc.
[2]  *Royal Printing v. Kimberly-Clark Corp.*, 621 F.2d 323, 326-28 (9th Cir. 1980).

**MEMORANDUM OF POINTS AND AUTHORITIES**

**PRELIMINARY STATEMENT AND FACTUAL BACKGROUND**[3]

On November 29, 2012, the Court entered an Order granting in part and denying in part Defendants' joint motion for summary judgment against nine of the thirteen named Direct Purchaser Plaintiffs ("DPPs") on the ground that they did not purchase the allegedly price-fixed product, cathode ray tubes ("CRTs").[4] *See* November 29 Order at 3-4, 6. In doing so, the Court expressly concluded that these nine DPPs were ***indirect purchasers*** of CRTs. *See id.* at 1 n.1, 6. Although the Court recognized that indirect purchasers ordinarily cannot sue under federal antitrust laws, the Court determined that these nine DPPs may qualify for *Royal Printing*'s "ownership or control" exception to the direct-purchaser rule. *See id*. at 9, 23. Defendants respectfully request that the Court certify its November 29 Order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b), so that the Ninth Circuit can clarify the scope of the ownership or control exception—such as whether the exception can apply where other "avenues of private enforcement" exist, and where plaintiffs did not purchase the item alleged to be price-fixed at all, but rather a downstream finished product.

The November 29 Order meets all of § 1292(b)'s requirements. ***First***, whether the ownership or control exception applies to the nine indirect purchasers here is a controlling question of law: if the exception does not apply, these nine indirect purchasers cannot proceed under federal law and their claims must be dismissed. In addition, a successful immediate appeal from the November 29 Order would dramatically curtail the scope of the putative DPP class, briefing on which has yet to take place.

***Second***, there are substantial grounds for difference of opinion as to whether the ownership or control exception can apply under the circumstances here. To begin with, four

---

[3] The factual circumstances of the case are described in the Court's November 29 Order. *See* November 29 Order at 1-5.
[4] The nine DPPs that were the subject of the Defendants' summary judgment motion are: Arch Electronics, Inc., Crago d/b/a Dash Computers, Inc., Electronic Design Company, Meijer, Inc. and Meijer Distribution, Inc., Nathan Muchnick, Inc., Orion Home Systems, LLC, Radio & TV Equipment, Inc., Royal Data Services, Inc., and Studio Spectrum, Inc. *See* November 29 Order at 1 n.1. These plaintiffs purchased downstream "finished products," such as TVs and monitors, rather than the allegedly price-fixed product, CRTs. *See* November 29 Order at 1-2.

genuine direct purchasers have already sued, and thus "every avenue for private [antitrust] enforcement"[5] has not been closed off.  In addition, a putative class of consumers in this MDL has brought suit under 22 states' laws.  Indeed, as the Court has already recognized, "in the particular circumstances of this case, the enforcement goals of *Illinois Brick* ***appear already to have been met***, which suggests that the policy rationale behind *Royal Printing* does not apply."  November 29 Order at 17 (emphasis added).  Moreover, the nine plaintiffs here never bought the allegedly price-fixed product at all, but instead purchased a downstream finished product.  The Special Master's conclusion—that these circumstances preclude the availability of the ownership or control exception—confirms the existence of substantial grounds for difference of opinion.

***Third***, immediate appeal of the November 29 Order would materially advance the termination of the litigation.  Finally settling whether these indirect purchasers may sue under federal law will have a profound effect on the scope of the putative DPP class, and may determine whether the opt-out retailer plaintiffs can assert federal claims or instead must fall back on any applicable state-law causes of action.  Immediate review will do much to resolve multiple facets of this litigation, including the settlement positions of all parties, future dispositive motions, and the feasibility of class certification.

## LEGAL STANDARD

Certification for interlocutory appeal is warranted where the "order [1] involves a controlling question of law as to which [2] there is substantial ground for difference of opinion and that [3] an immediate appeal from the order may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b); *see also In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1982), *aff'd*, 459 U.S. 1190 (1983).  Before appeal may be sought at the Court of Appeals, this Court must "state in writing" its opinion that the § 1292(b) requirements are met.  Where, as here, an order does not contain the requisite determinations, the Court may amend the order to do so.  Fed. R. App. P. 5(a)(3).

---

[5] *In re: ATM Fee Antitrust Litigation*, 686 F.3d 741, 756 (9th Cir. 2012) (quoting *Royal Printing*, at 326 n.7, 327).

# ARGUMENT

## I. Whether These Indirect Purchasers Possess Federal Antitrust Standing Is a Controlling Question of Law.

*Illinois Brick* sets forth a straightforward rule: "only direct purchasers have standing under § 4 of the Clayton Act to seek damages for antitrust violations." November 29 Order at 6 (quoting *Del. Valley Surgical Supply, Inc. v. Johnson & Johnson*, 523 F.3d 1116, 1120-21 (9th Cir. 2008)). The Court expressly found that the nine plaintiffs in issue here are indirect purchasers, and lack standing under federal antitrust law absent an exception to the *Illinois Brick* rule. *Id.* at 6, 9. This Circuit recognizes only three exceptions, and the Court found that these nine indirect purchasers were ineligible for all but one: the ownership or control exception, recognized in *Royal Printing*, 621 F.2d at 326-28. *See* November 29 Order at 9, 13-21.

Because the nine indirect DPPs here would lack standing and their claims would be dismissed absent the ownership or control exception, *see* November 29 Order at 9-12, whether the exception may apply more than suffices as a controlling question of law. *Cement*, 673 F.2d at 1026 ("[A]ll that must be shown in order for a question to be 'controlling' is that resolution of the issue on appeal could materially affect the outcome of the litigation in the district court."). It is well settled that standing presents a controlling question of law. *See, e.g.*, *Ritz Camera & Image, LLC v. Sandisk Corp.*, No. 5:10-cv-02787-JF/HRL, 2011 WL 3957257, at *1-3 (N.D. Cal. Sept. 7, 2011) (whether party has standing to bring a claim is a controlling question of law); *AsIs Internet Servs. v. Active Response Group*, No. C07 6211 TEH, 2008 U.S. Dist. LEXIS 117075, at *8 (N.D. Cal. Sep. 16, 2008) (same). The issue is also controlling because resolving who possesses standing is critical to determining the parameters of the putative DPP class—the importance of which the parties, the Special Master, and Your Honor alike have recognized in staying class-certification briefing in the DPP case until resolution of this issue. *See* Stipulation and Order re: Class Certification Schedule at 2 [Dkt. No. 1270] (July 24, 2012) ("Class Certif. Schedule") ("[T]he interests of judicial efficiency will be served if the issue of what products and

-3-
DEFENDANTS' NOTICE OF MOTION AND MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL
PURSUANT TO 28 U.S.C. § 1292(b) AND MEMORANDUM OF LAW IN SUPPORT THEREOF
3:07-CV-05944 SC
MDL NO. 1917

plaintiffs are in the [DPP] case is resolved before DPPs' motion for class certification is filed.").[6]

Courts have regularly recognized that the scope of the *Illinois Brick* rule raises controlling questions of law. In fact, the Supreme Court's most recent pronouncement on the issue arose from a § 1292(b) appeal. *See Kansas v. UtiliCorp United, Inc.*, 497 U.S. 199, 203, 205 (1990). So did the Ninth Circuit's decisions in *Delaware Valley*, 523 F.3d 1116, and *In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litigation*, 691 F.2d 1335 (9th Cir. 1982). Given the central importance of the scope of the *Illinois Brick* rule to this litigation, there is no question that this pure legal question is "controlling." Moreover, the impact this issue may have in other pending litigation—although not a prerequisite—also counsels in favor of immediate review. *See Irritated Residents*, 634 F. Supp. 2d at 1093 ("The opportunity to achieve appellate resolution of an issue important to other similarly situated dairies can provide an additional reason for certification; although it is not a requirement."); *Leite v. Crane Co.*, No. 11-00636 JMS/RLP, 2012 U.S. Dist. LEXIS 75500, at *21 (D. Haw. May 31, 2012) (same); *Ritz*, 2011 WL 3957257, at *3 (certifying interlocutory appeal where "[t]he standing issue is important not only to the parties but also to future litigants who may be similarly situated").

II. **Substantial Grounds for Difference of Opinion Exist as to Whether *Royal Printing*'s Ownership or Control Exception Can Apply Where, as Here, "Every Avenue" of Enforcement Has Not Been Closed Off.**

Substantial grounds for difference of opinion exist as to whether the nine indirect plaintiffs may invoke the ownership or control exception under the circumstances here. "A substantial ground for difference of opinion exists where reasonable jurists might disagree on an issue's resolution, not merely where they have already disagreed." *Reese*, 643 F.3d at 688. That is, where "reasonable judges might differ[,] such uncertainty provides a credible basis for a difference of opinion on the issue." *Id.* (quotations omitted). The showing for this prerequisite is

---

[6] It is of no moment that four other DPPs are not at issue in this motion. *See Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011) (explaining that "neither § 1292(b)'s literal text nor controlling precedent requires that the interlocutory appeal have a final, dispositive effect on the litigation"); *Ass'n of Irritated Residents v. Fred Schakel Dairy*, 634 F. Supp. 2d 1081, 1093 (E.D. Cal. 2008) (similar); *Brown v. Hain Celestial Group, Inc.*, No. C 11-03082 LB, 2012 U.S. Dist. LEXIS 136702, at *8 (N.D. Cal. Sept. 20, 2012) (similar). Indeed, as noted, the very presence of these DPPs is one more reason why *Royal Printing* ought not to apply here.

lower where, as here, the issue is a threshold question such as standing. *See* 16 Charles Alan Wright *et al.*, Federal Practice & Procedure § 3930.

   ***First***, reasonable minds can differ as to whether the exception is available where other avenues of private antitrust enforcement remain open. Here, four other named DPPs claim to have purchased CRTs and are not at issue in this motion. Moreover, a putative class of indirect-purchaser end-users ("IPPs") has brought suit in this MDL under no fewer than 22 states' laws. And all this is separate from governmental investigations and prosecutions. The Ninth Circuit has never countenanced extending the exception to these circumstances. Indeed, *Royal Printing* itself stated in categorical terms that where "as a practical matter the direct purchasers . . . will never sue, barring Royal Printing's suit would close off every avenue for private enforcement of the antitrust laws in such cases. This would be intolerable." 621 F.2d at 327. Notably, the Ninth Circuit has allowed claims to go forward under the exception only once since *Royal Printing*. *See ATM Fee*, 686 F.3d at 756 (discussing *Freeman v. San Diego Ass'n of Realtors*, 322 F.3d 1133, 1145-46 (9th Cir. 2003)). Crucially, in neither case were there any true direct purchaser plaintiffs.[7] In a third case decided only a few months ago, the Ninth Circuit grappled with whether the exception applied, ultimately holding it did not. *See id.* at 756-58. In all three cases, the Ninth Circuit has emphasized that "*Royal Printing* created an exception . . . because applying *Illinois Brick* 'would eliminate the threat of private enforcement,' and 'close off every avenue for private enforcement.'" *Id.* at 756-57 (quoting *Royal Printing*, 621 F.2d at 326 n.7, 327); *Freeman*, 322 F.3d at 1145-46 (exception would apply where there is no "realistic possibility" of suit) (citing *Royal Printing*, 621 F.2d at 326).

   Quoting this exact language from *ATM Fee* and *Royal Printing*, the November 29 Order recognized that "in the particular circumstances of this case, the enforcement goals of *Illinois Brick* appear already to have been met, which suggests that the policy rationale behind *Royal Printing* does not apply." November 29 Order at 17. Defendants have argued that this reasoning

---

[7]   *See Royal Printing*, 621 F.2d at 324-325, 326 n.7, 327 (only two named plaintiffs in litigation, both of whom were indirect purchasers); *Freeman*, 322 F.3d at 1140-43, 1145-46 (only plaintiffs in litigation were indirect purchasers of MLS service; only direct purchasers that existed, local real estate associations, owned Sandicor, and because of that relationship, there was no realistic possibility of suit by those associations).

underlying the ownership or control exception is not just a policy rationale, but rather an express prerequisite to application of that exception.[8] Although the Court stated that it was "not inclined to become the first [court]" to reject the ownership or control exception on this basis, *id.*, the Court has implicitly acknowledged the existence of a substantial ground for difference of opinion on the issue, *see id.* ("[T]here is some intuitive appeal to refusing to apply the exception in cases where enforcement by other parties is ongoing or likely . . . ."). Especially in light of the Special Master's contrary conclusion, Defendants respectfully request that the Court recognize that there are substantial grounds for difference of opinion over whether invoking the ownership or control exception is appropriate in these circumstances. *See Reese*, 643 F.3d at 688.

Defendants also have argued that the rationale of *Royal Printing* no longer carries the same force as it once did because the Supreme Court's subsequent decision in *California v. ARC America Corp.*, 490 U.S. 93 (1989), removed doubt over the viability of state-law indirect purchaser actions, establishing yet another "avenue" of private antitrust enforcement. Indeed, since the enactment of the Class Action Fairness Act ("CAFA"), indirect-purchaser class-action plaintiffs have jurisdiction to file claims in federal court[9]—just as the putative IPP class plaintiffs have done here. This development counsels in favor of, at most, a narrow reading of the *Royal Printing* exception. *See* Mot. to Adopt at 20-21. The Court's November 29 Order noted that, "[w]hatever the merits of Defendants' argument, ***it is better addressed to the Ninth Circuit***, which . . . has yet to overrule or narrow *Royal Printing*." November 29 Order at 20 (emphasis added). This observation, of course, weighs in favor of giving the Ninth Circuit an opportunity to do just that.

***Second***, reasonable minds can differ—and have—over whether the ownership or control

---

[8] *See* Defendants' Mot. to Adopt Special Master's Report and Recommendation at 20-21 [Dkt. No. 1274] (July 24, 2012) ("Mot. to Adopt").
[9] *See* 28 U.S.C. § 1332(d); *see also United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*, 602 F.3d 1087, 1090-91 (9th Cir. 2010) ("To achieve its purposes, CAFA provides expanded original diversity jurisdiction for class actions meeting the amount in controversy and minimal diversity and numerosity requirements set forth in 28 U.S.C. § 1332(d)(2)."); *In re Graphics Processing Units Antitrust Litig.*, 253 F.R.D. 478, 500 (N.D. Cal. 2008) ("[T]he indirect-purchaser class actions that have been heard in federal courts . . . have increased in number since the passage of the Class Action Fairness Act in 2005.").

1  exception is available where, as here, the plaintiff did not purchase the allegedly price-fixed
2  product (CRTs) at all, but rather purchased a different, downstream product (such as TVs and
3  monitors).  *See* Mot. to Adopt at 20-23.  In *Royal Printing*, the product that was purchased by the
4  plaintiffs (paper products) was the same one that was allegedly price-fixed.  *See Royal Printing*,
5  621 F.2d at 326-27.  In contrast, the product here has been transformed into a different
6  downstream product that the nine indirect DPPs purchased.  *See* November 29 Order at 1-2.
7  Defendants acknowledge that the Court found no significance in this factual distinction, seeing no
8  reason why the transformation of the product would matter for standing purposes.  *See id*. at 18-
9  19.  But Defendants respectfully submit that the Ninth Circuit should have the chance to decide
10 whether the transformation of the product purchased by the nine indirect purchasers here
11 represents an impermissible expansion of *Royal Printing*—especially in light of *ATM Fee*'s
12 reasoning that "*Illinois Brick* rejected exceptions for markups by middlemen or when the price-
13 fixed good is a vital input to a larger product."  686 F.3d at 753.[10]  Indeed, in *Associated General*
14 *Contractors v. California State Council of Carpenters*, the Supreme Court held that Clayton Act
15 § 4 standing did not exist where a plaintiff was at most an indirect victim, whose injuries, if any,
16 were the result of an attenuated chain of causality, making any calculation of damages unduly
17 speculative, with unacceptable complexity in apportionment and undue risks of duplicative
18 recoveries.  459 U.S. 519, 540-44 (1983).
19     In this case, the transformation of the product necessarily exacerbates problems of
20 duplicative recovery because DPPs at two different levels of the distribution chain ("direct" DPPs
21 that purchased CRTs and "indirect" DPPs that purchased transformed finished products) are both
22 seeking to collect 100% of any alleged overcharge, and IPPs (i.e., end-users) proceeding under
23 state law are also seeking to recover damages on any overcharge passed on to them.  Allowing the
24 indirect DPPs (i.e., retailers) to sue under federal law may enable them to use *Hanover Shoe* as a
25 shield and recover the entire overcharge, regardless of whether they passed on any or all of that
26 overcharge.  In that case, the indirect DPPs recover the whole overcharge (trebled) ***and*** the
27 putative IPP class can seek the same damages (again trebled) on any overcharge passed onto

---

[10]  *See* Mot. to Adopt at 20-23.

1   them. By contrast, if these indirect DPPs were limited to state-law claims,[11] they would then be
2   subject to many states' laws permitting or even requiring apportionment of damages,[12] which
3   would provide a mechanism to prevent the prospect of six-fold recovery for the same overcharge.
4   The magnitude of the problem is further exacerbated where the product in issue is transformed
5   into a different value-added downstream product. Specifically, where the same (i.e., non-
6   transformed) product was sold at both levels of distribution, there is little value added between
7   them and, as *Royal Printing* reasoned, there is little risk of duplicative recovery where ownership
8   or control is present. Here, however, the allegedly price-fixed product has been transformed, then
9   passed through multiple levels of distribution, unraveling *Royal Printing*'s rationale even further.

10        The Ninth Circuit's applications of *Illinois Brick* confirm that there are substantial
11  grounds for difference of opinion over the ownership or control exception in these circumstances.
12  It has described the exceptions to *Illinois Brick* as "narrow" and "limited." *ATM Fee*, 686 F.3d at
13  744, 749. And, even when presented with the opportunity to expand the co-conspirator exception
14  earlier this year, the Ninth Circuit expressly declined to do so—and criticized courts that have.
15  *See ATM Fee*, 686 F.3d at 755 & n.7. In light of this, Defendants have argued that applying the
16  ownership or control exception here—where other "avenues of private enforcement" concededly
17  exist (and have in fact been pursued by four other DPPs), ***and*** where the allegedly price-fixed
18  product was transformed—would contravene the Ninth Circuit's rigid adherence to *Illinois Brick*
19  and its admonishment to narrowly construe the rule's exceptions. The Ninth Circuit ought to
20  have the opportunity to address these hotly disputed and frequently litigated questions.

21  **III.  Immediate Review by the Ninth Circuit Will Materially Advance the Ultimate Termination of This Litigation.**
22

23        Interlocutory review not only may, but in fact will, materially advance the resolution of

---

[11]   The "indirect" DPPs, as purchasers of finished products, are likely to be "indirect purchasers who can maintain causes of action" under state law. *See* R&R at 11; *see also ARC*, 490 U.S. at 102.

[12]   *See In re Vitamins Antitrust Litig.*, 259 F. Supp. 2d 1, 4 (D.D.C. 2003) (noting the prevalence of rules against duplicative damages in repealer jurisdictions); *Clayworth v. Pfizer, Inc.*, 49 Cal. 4th 758, 774 (2010) ("[I]f damages must be allocated among the various levels of injured purchasers, the bar on consideration of pass-on evidence must necessarily be lifted; the defendants may assert a pass-on defense as needed to avoid duplication in . . . damages.").

this litigation by (1) definitively resolving whether the nine indirect DPPs have standing to continue with their suit; (2) establishing the scope of the putative DPP class prior to class-certification briefing; and (3) determining whether the opt-out plaintiffs can proceed on their federal claims, or rather must rely on any applicable state-law causes of action.  Together or alone, these consequences—each of which would circumscribe the scope of future discovery, motion practice, and trial activities—fulfill the third prong of § 1292(b) and weigh heavily in favor of interlocutory appeal.  *See, e.g.*, *Reese*, 643 F.3d at 688 (noting that "neither § 1292(b)'s literal text nor controlling precedent requires that the interlocutory appeal have a final, dispositive effect on the litigation"); *Ritz*, 2011 WL 3957257, at *3 (interlocutory appeal may materially advance litigation by "avoid[ing] expensive and protracted discovery").  More generally, clarifying the scope of the *Royal Printing* exception undoubtedly will materially advance the ultimate termination of this litigation.  An immediate appeal would allow the Ninth Circuit to put to rest the uncertainty surrounding the contours of the exception under these circumstances.

Definitively resolving this issue before DPP class-certification briefing is particularly compelling—a point the parties, the Special Master, and the Court all have recognized.  *See* Class Certif. Schedule at 2.  Immediate appeal will materially advance the termination of litigation where the disputed legal question shapes the scope of a putative class.  *Cf. In re Microsoft Corp. Antitrust Litig.*, 274 F. Supp. 2d 741, 743 (D. Md. 2003) (recognizing that immediate appeal may "materially advance the ultimate termination of the litigation" by determining how class litigation would proceed).  The Ninth Circuit should have the chance to resolve this issue now—before this Court is forced to grapple with whether certification of a class of "direct" purchasers (which would include the nine ***indirect*** purchasers at issue in this motion) is appropriate under Rule 23.

The importance of this issue to the litigation as a whole has been widely acknowledged: the Special Master recognized that a determination that the indirect DPPs lack federal antitrust standing would markedly decrease Defendants' exposure.  Mar. 20, 2012 Hr'g Tr. at 106:19-20, attached as Exhibit 1 to Simmons Decl. in Support of Mot. to Adopt [Dkt. No. 1274-2].  Counsel for the putative class of end-user indirect purchasers (IPPs) likewise recognized that a ruling in Defendants' favor "would drastically reduce [DPPs'] case."  *Id.* at 106:8-18 (Mr. Alioto).

1    Similarly, the opt-out retailer plaintiffs have acknowledged that a ruling that they lack federal
2    antitrust standing would "drive a hole through [retailers'] cases." *Id.* at 64:21-22 (Mr. Isaacson).
3        A successful appeal thus would dramatically alter the parties' settlement posture—a fact
4    several courts have cited as justifying interlocutory review. *See Fed. Hous. Fin. Agency v. UBS*
5    *Americas, Inc.*, 858 F. Supp. 2d 306, 338 (S.D.N.Y. 2012) (interlocutory review appropriate
6    because it had the potential to "significantly affect the parties' bargaining positions and . . . hasten
7    the termination . . . through settlement"); *S.E.C. v. Mercury Interactive, LLC*, No. 5:07-cv-02822-
8    JF, 2011 U.S. Dist. LEXIS 38127, at *8 (N.D. Cal. April 7, 2011) (interlocutory review would
9    materially advance litigation where it could effect "the parties' efforts to reach settlement").
10   Indeed, this point counsels in favor of immediate review regardless of the likely result on appeal.
11   *See Healthcare Compare Corp. v. United Payors & United Providers, Inc.*, No. 96 C 2518, 1998
12   U.S. Dist. LEXIS 7567, at *2 (N.D. Ill. 1998) ("If this court's decision is upheld . . . it will
13   provide a surer basis for considering settlement. If it is reversed . . . the economic value of the
14   case will substantially decrease and . . . the possibility of settlement would materially increase.").
15       The Supreme Court also has emphasized the need to promptly resolve whether antitrust
16   plaintiffs have stated a cause of action given the high costs of defending against potentially
17   meritless claims. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007) (recognizing the
18   unusually high cost of discovery in antitrust cases, and stating that "the threat of discovery
19   expense will push cost-conscious defendants to settle even anemic cases before reaching
20   [summary judgment] proceedings"). This concern is just as prevalent in resolving standing under
21   *Illinois Brick* as it is in the pleading context. Here, a successful interlocutory appeal would
22   streamline the litigation, reduce costs, and expedite the termination of this case.

### CONCLUSION

24   For the foregoing reasons, the undersigned Defendants respectfully request that the Court
25   certify its November 29 Order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

Dated: December 19, 2012            Respectfully submitted,

                                    By:   /s/ Ian Simmons
                                    IAN SIMMONS (*pro hac vice*)

-10-
DEFENDANTS' NOTICE OF MOTION AND MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL                3:07-CV-05944 SC
PURSUANT TO 28 U.S.C. § 1292(b) AND MEMORANDUM OF LAW IN SUPPORT THEREOF                          MDL NO. 1917

Email: isimmons@omm.com
BENJAMIN G. BRADSHAW (SBN 189925)
Email: bbradshaw@omm.com
KEVIN D. FEDER (SBN 252347)
Email: kfeder@omm.com
**O'MELVENY & MYERS LLP**
1625 Eye Street, NW
Washington, DC 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414

*Attorneys for Defendants Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc.*

MORGAN, LEWIS & BOCKIUS LLP

By:    /s/ Kent M. Roger
KENT M. ROGER (SBN 95987)
E-mail: kroger@morganlewis.com
MICHELLE PARK CHIU (SBN 248421)
E-mail: mchiu@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
One Market, Spear Street Tower
San Francisco, California 94105-1126
Telephone: (415) 442-1000
Facsimile: (415) 442-1001

J. CLAYTON EVERETT, JR. (*pro hac vice*)
E-mail: jeverett@morganlewis.com
SCOTT A. STEMPEL (*pro hac vice*)
E-mail: sstempel@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
111 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone: (202) 739-3000
Facsimile: (202) 739-3001

*Attorneys for Defendants Hitachi, Ltd., Hitachi Displays, Ltd. (n/k/a Japan Display East, Inc.), Hitachi Asia, Ltd., Hitachi America, Ltd., and Hitachi Electronic Devices (USA), Inc.*

|   |   |
|---|---|
| 1 | SHEPPARD MULLIN RICHTER & HAMPTON |
| 2 |   |
| 3 | By:     /s/ Gary L. Halling<br>GARY L. HALLING (SBN 66087)<br>E-mail: ghalling@sheppardmullin.com |
| 4 | JAMES L. MCGINNIS (SBN 95788)<br>E-mail: jmcginnis@sheppardmullin.com |
| 5 | MICHAEL W. SCARBOROUGH, (SBN 203524) |
| 6 | E-mail: mscarborough@sheppardmullin.com |
| 7 | **SHEPPARD MULLIN RICHTER & HAMPTON** |
| 8 | Four Embarcadero Center, 17th Floor<br>San Francisco, California  94111<br>Telephone:  (415) 434-9100 |
| 9 | Facsimile:  (415) 434-3947 |
| 10 | *Attorneys for Defendants Samsung SDI* |
| 11 | *America, Inc.; Samsung SDI Co., Ltd.;*<br>*Samsung SDI (Malaysia) SDN. BHD.; Samsung* |
| 12 | *SDI Mexico S.A. DE C.V.; Samsung SDI Brasil*<br>*Ltda.; Shenzen Samsung SDI Co., Ltd. and* |
| 13 | *Tianjin Samsung SDI Co., Ltd.* |
| 14 | WHITE & CASE LLP |
| 15 | By:     /s/ Christopher M. Curran<br>CHRISTOPHER M. CURRAN (*pro hac vice*) |
| 16 | E-mail: ccurran@whitecase.com<br>GEORGE L. PAUL (*pro hac vice*) |
| 17 | E-mail: gpaul@whitecase.com<br>LUCIUS B. LAU (*pro hac vice*) |
| 18 | E-mail: alau@whitecase.com<br>**WHITE & CASE LLP** |
| 19 | 701 Thirteenth Street, N.W.<br>Washington, DC  20005<br>Telephone: (202) 626-3600 |
| 20 | Facsimile: (202) 639-9355 |
| 21 | *Attorneys for Defendants Toshiba Corporation,* |
| 22 | *Toshiba America Information Systems, Inc.,*<br>*Toshiba America Consumer Products, L.L.C.,* |
| 23 | *and Toshiba America Electronic Components,*<br>*Inc.* |
| 24 |   |
| 25 |   |
| 26 |   |
| 27 |   |
| 28 |   |

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 19, 2012, I electronically filed Defendants' Notice of Motion and Motion to Certify Order for Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(b) with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the counsel of record in this matter who are registered on the CM/ECF system.

/s/ Ian Simmons
Ian Simmons

DEFENDANTS' NOTICE OF MOTION AND MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b) AND MEMORANDUM OF LAW IN SUPPORT THEREOF

3:07-CV-05944 SC
MDL NO. 1917