Munger, Tolles & Olson LLP
HOJOON HWANG (SBN 184950)
Hojoon.Hwang@mto.com
WILLIAM D. TEMKO (SBN 098858)
William.Temko@mto.com
JONATHAN E. ALTMAN (SBN 170607)
Jonathan.Altman@mto.com
BETHANY W. KRISTOVICH (SBN 241891)
Bethany.Kristovich@mto.com
LAURA K. SULLIVAN (SBN 281542)
Laura.Sullivan@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, Twenty-Seventh Floor
San Francisco, CA  94105-2907
Telephone:  (415) 512-4000
Facsimile:   (415) 512-4077

Attorneys for Defendants LG Electronics, Inc., LG Electronics U.S.A., Inc., and LG Electronics Taiwan Taipei Co., Ltd.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION<br><br>This Document Relates to:<br><br>Direct Purchaser Actions | Master File No.: CV-07-5944-SC<br><br>MDL No. 1917<br><br>**RESPONSE OF LG DEFENDANTS AND PHILLIPS DEFENDANTS IN SUPPORT OF DEFENDANTS' MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b)**<br><br>**Judge:  The Honorable Samuel Conti** |

Master File No.: CV-07-5944-SC
MDL No. 1917

19595394.1

LG & PHILLIPS RESPONSE IN SUPPORT
OF MOTION TO CERTIFY PURSUANT TO
28 U.S.C. § 1292(B)

## I. INTRODUCTION

LG Electronics, Inc., LG Electronics U.S.A., Inc., and LG Electronics Taiwan Taipei Co., Ltd. (collectively, "LGE") and Koninklijke Philips Electronics N.V. and Philips Electronics North America Corporation (collectively, "Phillips") respectfully submit this statement in support of certain Defendants' Motion to Certify Order for Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(b) (December 19, 2012, Dkt. No. 1499) ("Motion to Certify").

LGE and Phillips have each settled the Direct Purchaser Plaintiff ("DPP") class action, to which the Motion to Certify and the Court's November 29, 2012 Order Granting in Part and Denying in Part Defendants' Joint Motion for Summary Judgment (Dkt. No. 1470, the "Order") pertain as a technical matter. However, the central issue considered in the Order -- whether a plaintiff who purchased an allegedly price-fixed product indirectly, as a component of a larger product that is not alleged to have been subject to any collusion, from an affiliate of an alleged conspirator, has standing to sue for damages under the Sherman Act -- is at issue in numerous Direct Action Plaintiffs ("DAP") cases and is one of the subjects of a pending Motion to Dismiss the DAP complaints (*see* August 17, 2012, Dkt. No. 1317).[1] In fact, many DAPs filed papers opposing Defendants' Motion for Summary Judgment, evidencing the significance of the Order for numerous cases in this MDL. *See* Direct Action Plaintiffs' Statement of Issues Related to Special Master's Report and Recommendation Regarding Summary Judgment, June 21, 2012 Dkt. No. 1237 at 1-2 (noting that the R&R would "have dispositive effect on [DAPs'] direct purchaser claims, which are the vast majority of their claims"). LGE and Phillips respectfully submit this memorandum to urge the Court to certify the Order for immediate appellate review in order to obtain definitive resolution of this important question of law that could dispose of the vast majority of the federal antitrust claims in this MDL.

---

[1] LGE and Philips express no view on the dismissal of the motion as it applies to the Direct Purchaser Plaintiffs but rather address the standing issue as it applies more broadly.

| Master File No.: CV-07-5944-SC | | LG & PHILLIPS RESPONSE IN SUPPORT |
| MDL No. 1917 | - 2 - | OF MOTION TO CERTIFY PURSUANT TO |
| 19595394.1 | | 28 U.S.C. § 1292(B) |

## II. ARGUMENT

### A. There Are Substantial Grounds for Difference of Opinion as to Whether the *Royal Printing* Exception Applies in the Circumstances of this Case

There is certainly a reasonable basis for disagreement as to whether any exception to the bar on indirect purchaser standing under *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977) applies in this case. *Compare* Report and Recommendation Regarding Defendants' Joint Motion for Summary Judgment (May 31, 2012, Dkt. No. 1221), at 10, 12 ("*Royal Printing* is not applicable here because it dealt with the issue of from whom plaintiffs had to make a purchase in order to establish the necessary 'directness.' But that analysis does not answer the issue we have in this case, which is that the plaintiffs here *never purchase the price-fixed product* from anybody.") (emphasis in original) *with* Order at 15-16 (*Royal Printing* might apply to the DPP plaintiffs despite not directly purchasing the allegedly price-fixed product). As the Motion to Certify notes, the Ninth Circuit has consistently held that the exception created by *Royal Printing v. Kimberly-Clark Corp.*, 621 F.2d 323 (9th Cir. 1980) applies only where the direct purchaser is owned or controlled by an alleged conspirator and where applying *Illinois Brick* would otherwise "cut off every avenue for private enforcement" of the antitrust laws. *See Royal Printing*, 621 F.2d at 327; *see also In re ATM Fee Antitrust Litig.*, 686 F.3d 741 (9th Cir. 2012) (holding that the *Royal Printing* exception rested on the premise that applying *Illinois Brick* "would eliminate the threat of private enforcement."). In addition, the Order acknowledges that exceptions to *Illinois Brick* must be interpreted narrowly, "attend[ing] carefully to the contours of the exceptions" (Order at 11) and avoiding "case-by-case recalibration of *Illinois Brick*" or "ad hoc creation or expansion of the exceptions" thereto. *Id.* at 17.

There is a substantial basis to conclude that the prerequisites for the *Royal Printing* exception are not met in this case. Not only are there multiple avenues for private enforcement -- including private suits under state laws providing more expansive standing for indirect purchasers including those already pending in this MDL -- but this case also differs substantially from *Royal Printing* in that many direct purchasers are *not* owned or controlled by the alleged conspirators. For example, LGE and Phillips both divested the entirety of their CRT manufacturing operations

| Master File No.: CV-07-5944-SC<br>MDL No. 1917<br>19595394.1 | - 3 - | LG & PHILLIPS RESPONSE IN SUPPORT<br>OF MOTION TO CERTIFY PURSUANT TO<br>28 U.S.C. § 1292(B) |
|---|---|---|

1  to an independently-operating joint venture, LG Phillips Displays (later known as LP Displays)
2  (hereafter, "LPD"), was formed in June 2001.  See Direct Purchaser's Consolidated Amended
3  Complaint ("Complaint") ¶¶ 42, 44, 51.  Following those divestitures, certain individual entities
4  associated with LGE and Philips purchased CRTs through arms-length negotiations from both
5  LPD and other CRT manufacturers, and then manufactured and sold finished products
6  incorporating CRT tubes.  Because LPD was an independent corporate entity, it had no ownership
7  or control over the LGE and Philips entities or vice versa.  Thus, to the extent that the Court
8  sought to apply *Royal Printing* according to its terms, the current case fails to fit within its
9  contours.

10  **B.    The DPPs Do Not Meet The Test for Standing under *Associated General Contractors***

12  Substantial grounds for disagreement would exist even if the Court were to look beyond
13  the confines of *Royal Printing* and the bright-line rule of *Illinois Brick*.  Any such inquiry into
14  standing must be grounded in the factors set forth by the Supreme Court in *Associated General*
15  *Contractors, Inc. v. California State Council of Carpenters*, 459 U.S. 519 (1983) ("*AGC*").  Here,
16  the *AGC* factors weigh strongly against conferring standing on parties who purchased the
17  allegedly price-fixed goods indirectly as a component of a finished product that was admittedly
18  priced competitively.

19  *AGC* counsels against conferring standing on parties whose alleged injuries are
20  necessarily speculative.  *See* 459 U.S. at 542-543.  Here, the transformation of the allegedly price-
21  fixed products into a larger product, the admittedly-competitive pricing of the finished products,
22  and the multiple levels of distribution through which the CRTs were ultimately sold introduce
23  substantial uncertainty and speculation into the proof of the DPPs' injuries.  See Motion to
24  Certify at 6.  As discussed above, any purchase from a Philips or LGE entity during the existence
25  of LPD would have highly speculative injury due to the question of whether Philips or LGE
26  passed-on CRT cost increases into finished products.  However, the speculative nature of any
27  potential injury is even more acute with respect to the DAPs, major retailers who resold the
28  finished product to downstream purchasers.  To the extent that any overcharge flowed down to

Master File No.: CV-07-5944-SC
MDL No. 1917
19595394.1                                          - 4 -                    LG & PHILLIPS RESPONSE IN SUPPORT
                                                                             OF MOTION TO CERTIFY PURSUANT TO
                                                                             28 U.S.C. § 1292(B)

them through the upstream distribution (itself an uncertain and speculative proposition), these retailers would still not have been injured to the extent that they were able to pass on such overcharges to downstream purchasers. The question of downstream pass-on adds another layer of speculation to their alleged injuries.

The Order appears to acknowledge but then discount this concern, noting that the DPPs would be entitled to seek the "entire overcharge," without considering pass-on. *See* Order at 21. However, that conclusion would follow only if the DPPs are deemed to have standing and entitled to invoke the rule of *Hanover Shoe, Inc. v. United States Machinery Corp.*, 392 U.S. 481 (1968). When determining whether they have standing in the first place, *AGC* teaches that the Court must consider the speculative nature of the party's injury. To dismiss the possibility of pass-on at this stage by relying on the presumption that pass-on might no longer be considered once standing has been established ignores the analysis required under *AGC*.

The policy against duplicative recovery, another *AGC* factor (*see* 459 U.S. at 544-545), also weighs heavily against standing in this case. As the Motion to Certify notes, allowing suits by indirect purchasers at multiple levels of distribution exacerbates the probability of duplicative, treble-damages recovery for the same alleged overcharge. *See* Motion to Certify at 7. Granting the retailer DPPs and DAPs standing under the Sherman Act significantly expands the likelihood of duplicative recovery because, once granted standing, the DPPs and DAPs will undoubtedly seek to invoke *Hanover Shoe* to recover 100 percent of the alleged overcharge and to preclude inquiry into whether they suffered any injury by passing-on any such overcharge. Not only could one level of purchasers, such as CRT product manufacturers, seek the same overcharge claimed by a downstream purchaser, such as the retailer DAPs, the claims of both would duplicate those of end-user purchasers, who are claiming in their pending class certification motion that each intermediary purchaser passed on 100 percent of the overcharge to the ultimate consumer. *See* allegation contained in the Declaration of Janet S. Netz, PH.D., In Support of Motion of Indirect Purchaser Plaintiffs for Class Certification, Oct. 1, 2012 Dkt. No. 1386 at 104 ("[A]ny overcharges were passed through to consumers at a common rate of at least 100%."). LGE and Phillips submit that such multiple, treble-damages recovery for the same overcharge would

Master File No.: CV-07-5944-SC
MDL No. 1917
19595394.1
- 5 -
LG & PHILLIPS RESPONSE IN SUPPORT
OF MOTION TO CERTIFY PURSUANT TO
28 U.S.C. § 1292(B)

violate defendants' due process rights, and that the rule of *Hanover Shoe* must ultimately yield to the dictates of due process. *See e.g.*, *W. Union Tel. Co. v. Commonwealth of Penn.*, 368 U.S. 71, 75 (1961) ("the holder of . . . property is deprived of due process of law if he is compelled to relinquish it without assurance that he will not be held liable again in another jurisdiction or in another suit brought by a claimant who is not bound by the first judgment."). Nonetheless, the likelihood of duplicative recovery increases substantially by labeling the DPPs and DAPs claims as "direct" and conferring standing under the Sherman Act.

In comparison, if these DPPs and DAPs lack standing under federal law, they would have to pursue their claims, if they so choose, under state laws providing indirect purchaser standing. Most, if not all, of the state laws that they are likely to invoke provide that the court has the authority to take steps to avoid duplicative recovery by allocating damages. For example, the New York antitrust statute, the Donnelly Act, mandates that "the court shall take all steps necessary" to avoid duplicative liability including consolidation of the cases seeking recovery for the same overcharge. N.Y. Gen. Bus. Law § 340(6); *see also* 740 Ill. Comp. Stat. 10/7(2) ("[I]n any case in which claims are asserted against a defendant by both direct and indirect purchasers, the court shall take all steps necessary to avoid duplicate liability for the same injury including transfer and consolidation of all actions."). The California Supreme Court has also held that, under the Cartwright Act, "the bar on consideration of pass-on evidence *must necessarily be lifted*" where, as here, "multiple levels of purchasers have sued, or where a risk remains they may sue" in order to avoid duplicative recovery. *Clayworth v. Pfizer, Inc.*, 49 Cal. 4th 758, 787 (2010) (emphasis added). Thus, denying standing to the indirect purchaser DPPs and DAPs under federal law and allowing allocation of damages among multiple levels of indirect purchasers under state law avoids the threat of due process violations and is consistent with the teachings of *AGC* and *Illinois Brick*.

## III. CONCLUSION

As shown above and in the Motion to Certify, the Order readily satisfies the requirements for certification under 28 U.S.C. § 1292(b). The Ninth Circuit should be given the opportunity to

1  resolve the legal questions raised by the Order that significantly affects most, if not all, of the

2  cases in this MDL.

3

4                                                          DATED:  DECEMBER 28, 2012

5                                                          By:    /s/ *Hojoon Hwang*
                                                           HOJOON HWANG (SBN 184950)
6                                                          Hojoon.Hwang@mto.com
                                                           560 Mission Street, Twenty-Seventh Floor
7                                                          San Francisco, California  94105-2907
                                                           Telephone:  (415) 512-4000
8                                                          Facsimile:  (415) 512-4077

9                                                          WILLIAM D. TEMKO (SBN 098858)
                                                           William.Temko@mto.com
10                                                         JONATHAN E. ALTMAN (SBN 170607)
                                                           Jonathan.Altman@mto.com
11                                                         BETHANY W. KRISTOVICH (SBN 241891)
                                                           Bethany.Kristovich@mto.com
12                                                         **MUNGER, TOLLES & OLSON LLP**
                                                           355 South Grand Avenue, Thirty-Fifth Floor
13                                                         Los Angeles, CA  90071-1560
                                                           Telephone:  (213) 683-9100
14                                                         Facsimile:  (213) 687-3702

15                                                         *Attorneys for Defendants LG Electronics, Inc.; LG,*
                                                           *LG Electronics USA, Inc.; and LG Electronics*
16                                                         *Taiwan Taipei Co., Ltd.*

17

18                                                         By: /s/ *John M. Taladay*
                                                           John M. Taladay (*pro hac vice*)
19                                                         Joseph Ostoyich (*pro hac vice*)
                                                           **BAKER BOTTS LLP**
20                                                         1299 Pennsylvania Ave., N.W.
                                                           Washington, DC 20004-2400
21                                                         Telephone: (202) 639-7700
                                                           Facsimile: (202) 639-7890
22                                                         Email: john.taladay@bakerbotts.com
                                                           Email: joseph.ostoyich@bakerbotts.com
23

24                                                         Attorneys for Defendants Koninklijke Philips
                                                           Electronics N.V. and Philips Electronics North
25                                                         America Corporation

26       **Attestation:**  The filer of this document attests that the concurrence of the other signatories

27  thereto has been obtained.

28

Master File No.: CV-07-5944-SC                                    LG & PHILLIPS RESPONSE IN SUPPORT
MDL No. 1917                              - 7 -                   OF MOTION TO CERTIFY PURSUANT TO
19595394.1                                                        28 U.S.C. § 1292(B)