William A. Isaacson
Jennifer Milici
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Ave. NW, Suite 800
Washington, D.C.  20015
Telephone:  (202) 237-2727
Facsimile:  (202) 237-6131
Email:  wisaacson@bsfllp.com
Email:  jmilici@bsfllp.com

Stuart Singer
BOIES, SCHILLER & FLEXNER LLP
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33301
Telephone:  (954) 356-0011
Facsimile:  (954) 356-0022
Email:  ssinger@bsfllp.com

Philip J. Iovieno
Anne M. Nardacci
BOIES, SCHILLER & FLEXNER LLP
10 North Pearl Street, 4th Floor
Albany, NY  12207
Telephone:  (518) 434-0600
Facsimile:  (518) 434-0665
Email:  piovieno@bsfllp.com
Email:  anardacci@bsfllp.com

*Liaison Counsel for Direct Action Plaintiffs*
[Additional Counsel Listed on Signature Page]

**IN THE UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. 3:07-cv-5944 SC |
| | MDL No. 1917 |
| This Document Relates To: | **DIRECT ACTION PLAINTIFFS' MEMORANDUM IN SUPPORT OF THE DIRECT PURCHASER PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b)** |
| DIRECT PURCHASER ACTIONS | |

# TABLE OF CONTENTS

Page

Preliminary Statement...........................................................................................................1

Legal Standard ......................................................................................................................3

Argument ...............................................................................................................................3

    I.    The Order for Which Defendants Seek Certification Does Not
        Involve a Controlling Question of Law ...............................................................3

    II.   No Substantial Ground for Difference of Opinion Exists.......................................5

    III.  Interlocutory Appeal Would Not Materially Advance the Ultimate
        Termination of This Litigation...............................................................................10

Conclusion ...........................................................................................................................12

STATEMENT IN OPPOSITION TO
DEFENDANTS' MOTION TO CERTIFY        i        Case No. 3:07-05944 SC
        MDL No. 1917

# TABLE OF AUTHORITIES

**Cases**

*Ahrenholz v. Bd. of Trustees of the Univ. of Illinois,*
   219 F.3d 674 (7th Cir. 2000) ......................................................................3, 12

*APCC Servs., Inc. v. AT & T Corp.,*
   297 F. Supp. 2d 101 (D.D.C.2003) ...........................................................9

*AsIs Internet Servs. v. Active Response Grp.,*
   2008 WL 4279695 (N.D. Cal. Sept. 16, 2008) ........................................4

*Bd. of Trustees of Leland Stanford Junior Univ. v. Roche,*
   2007 WL 1119193 (N.D. Cal. Apr. 16, 2007) ..........................................9

*Coopers & Lybrand v. Livesay,*
   437 U.S. 463 (1978).................................................................................3

*Couch v. Telescope, Inc.,*
   611 F.3d 629 (9th Cir. 2010) ...............................................................2, 6

*Illinois Brick Co. v. Illinois,*
   431 U.S. 720 (1977),.............................................................................1, 8

*In re ATM Fee Antitrust Litig.,*
   686 F.3d 741 (9th Cir. 2012) ...........................................................2, 7, 8

*In re Cal. Title Ins. Antitrust Litig.,*
   2010 WL 785798 (N.D. Cal. Mar. 3, 2010)...........................................3

*In re Cement Antitrust Litig.,*
   673 F.2d 1020 (9th Cir. 1982) ...................................................3, 4, 10, 12

*Juarez v. Jani-King of Cal., Inc.,*
   2012 WL 525511 (N.D. Cal. Feb. 16, 2012) ..........................................3

*Lucas v. Hertz Corp., No. C,*
   2012 WL 5199384 (N.D. Cal. Oct. 22, 2012).........................................4

*McFarlin v. Conseco Servs., LLC,*
   381 F.3d 1251 (11th Cir. 2004) ..........................................................2, 9

*Reese v. BP Exploration (Alaska) Inc.,*
   643 F.3d 681 (9th Cir. 2011) .................................................................6

*Ritz Camera & Image, LLC v. Sandisk Corp.,*
   2011 WL 3957257 (N.D. Cal. Sept. 7, 2011) ........................................4

*Royal Printing v. Kimberly-Clark Corp.,*
   621 F.2d 323 (9th Cir. 1980) ...............................................................2, 8

*Safeway, Inc. v. Abbott Labs.,*
   2010 WL 2228546 (N.D. Cal. June 1, 2010) .........................................11

*Shurance v. Planning Control Int'l, Inc.*,
    839 F.2d 1347 (9th Cir.1988) ...............................................................................11

*United States Rubber Co. v. Wright*,
    359 F.2d 784 (9th Cir. 1966) ...............................................................................4, 9

*United States v. Woodbury*,
    263 F.2d 784 (9th Cir. 1959) ...............................................................................4

**Statutes**

28 U.S.C. § 1292(b) ...................................................................................... passim

1   The Direct Action Plaintiffs ("DAPs"), through their undersigned Counsel, submit this

2   Memorandum in Support of the Direct Purchaser Plaintiffs' ("DPPs") Opposition to Defendants'

3   Motion to Certify Order for Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(b) ("Motion to

4   Certify").   Although the Motion to Certify pertains only to the DPPs' action, it raises an issue of

5   standing that also affects the DAPs' actions.   For that reason, the DAPs submit the following

6   Memorandum for the Court's consideration.

7   **PRELIMINARY STATEMENT**

8   In its November 29, 2012 Order, this Court correctly applied well-settled Ninth Circuit law

9   to deny in part Defendants' motion for summary judgment, which had challenged the standing of

10   nine of thirteen named plaintiffs in the DPP class action.   In a thorough and well-reasoned opinion,

11   the Court held that these plaintiffs had standing to pursue federal antitrust claims under the

12   "ownership or control" exception to the standing doctrine of *Illinois Brick Co. v. Illinois*, 431 U.S.

13   720 (1977).   The law of the Ninth Circuit is clear with respect to the ownership or control

14   exception, and this Court followed that law in rendering its decision.   Nevertheless, Defendants

15   now ask the Court to take the extraordinary step of certifying its order for interlocutory appeal,

16   despite the fact that they cannot satisfy any of the three statutory prerequisites for such exceptional

17   action.

18   *First*, the ruling challenged by Defendants does not involve a controlling question of law.

19   Resolution of this standing issue on appeal would not end the litigation.   In the cases Defendants

20   cite to support the proposition that standing is a controlling question of law, the issue of standing

21   was dispositive of all issues in the litigation.   That is not the case here.   Defendants challenge the

22   standing of only certain plaintiffs and only with respect to their federal claims.   Even in the

23   unlikely event that Defendants were successful on appeal and certain plaintiffs' federal claims

24   were dismissed, other plaintiffs' federal claims and all plaintiffs' state claims would remain

25   completely intact, and therefore a large chunk of this litigation would be untouched.

26   *Second*, there are no grounds, let alone substantial ones, for difference of opinion from the

27   one expressed by this Court in its ruling.   A substantial ground for difference of opinion can only

28   exist where the controlling law is unclear.   Here, the Court's decision did not involve an unclear

STATEMENT IN OPPOSITION TO
DEFENDANTS' MOTION TO CERTIFY          1          Case No. 3:07-05944 SC
                                                   MDL No. 1917

area of law, rather the Court applied the settled law of the Ninth Circuit.  In their summary judgment motion, Defendants sought to persuade the Court to essentially overturn well-settled Ninth Circuit precedent and adopt a new construction of the long-existing ownership or control exception.  This Court properly refused to do so, relying on the Ninth Circuit's decisions in *In re ATM Fee Antitrust Litig.*, 686 F.3d 741 (9th Cir. 2012) and *Royal Printing v. Kimberly-Clark Corp.*, 621 F.2d 323 (9th Cir. 1980).  *ATM Fee* and *Royal Printing* are the law in the Ninth Circuit, they are controlling in this case, and the Court applied them in its Order.  Thus, there can be no substantial ground for difference of opinion.

In seeking permission to pursue an immediate appeal, Defendants make the very same arguments that the Court rejected based on the Ninth Circuit's clear guidance in *ATM Fee* and *Royal Printing*.  It is apparent that Defendants simply disagree with the Court's ruling, and in particular the Court's application of Ninth Circuit law to the facts of this case.  However, the mere fact that a party disagrees with the Court's ruling does not create a substantial ground for difference of opinion.  *Couch v. Telescope, Inc.*, 611 F.3d 629, 633 (9th Cir. 2010).  Moreover, the question of whether the district court properly applied settled law to the facts or evidence of a particular case is entirely improper for a Section 1292(b) appeal.  *See, e.g., McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1259 (11th Cir. 2004).

*Third*, interlocutory appeal would not materially advance the ultimate termination of this litigation.  Because both putative classes and the DAPs would have substantial remaining claims regardless of the outcome of an appeal, interlocutory review would not likely shorten the time, effort or expense of conducting the litigation.  For this same reason, interlocutory review would not materially increase the likelihood of settlement.  If anything, the resolution of this issue on interlocutory appeal would be likely to have the opposite effect of that intended by Section 1292(b) — it would increase the likelihood that the litigation could become even more protracted and expensive.

*Lastly*, even if Defendants were able to satisfy the three statutory prerequisites, they have made no effort to explain why the Court should exercise its discretion even if it is statutorily

1    permitted to do what the Defendants ask.  Simply put, no exceptional circumstances exist that

2    warrant an exercise of the Court's discretion to certify an interlocutory appeal.

3                                         **LEGAL STANDARD**

4            Ordinarily, a party may seek review of a district court's rulings only after the entry of final

5    judgment.  *In re Cement Antitrust Litig.,* 673 F.2d 1020, 1027 (9th Cir. 1982).   In certain

6    "exceptional situations," the district court may certify an order for interlocutory review pursuant to

7    28 U.S.C. § 1292(b).  *Id.* at 1026 ("[T]he legislative history of 1292(b) indicates that this section

8    was to be used only in exceptional situations in which allowing an interlocutory appeal would

9    avoid protracted and expensive litigation.").  Section 1292(b) "is to be applied sparingly."  *Id.* at

10   1027.

11           Under Section 1292(b), the moving party must demonstrate three statutory prerequisites:

12   the order "[1] involves a controlling question of law [2] as to which there is substantial ground for

13   difference of opinion and [3] [where] immediate appeal from the order may materially advance the

14   ultimate termination of the litigation."  28 U.S.C. § 1292(b); *see also Coopers & Lyband v.*

15   *Livesay*, 437 U.S. 463, 474-75 (1978).   Further, even if the district court determines that the

16   moving party has shown all of statutory prerequisites, "[d]istrict courts have substantial discretion

17   to decide whether to grant a motion for certification."  *Juarez v. Jani-King of Cal., Inc.*, No. 09-

18   03495 SC, 2012 WL 525511, at *1 (N.D. Cal. Feb. 16, 2012) (Conti, J.) (citing *In re Cal. Title Ins.*

19   *Antitrust Litig.*, No. 08-01341 JSW, 2010 WL 785798, at *7 (N.D. Cal. Mar. 3, 2010)).

20           In contrast with a district court's discretion to certify when all three statutory prerequisites

21   are satisfied, in the absence of any one of the statutory prerequisites, the court is required to deny a

22   motion for certification.  *See Ahrenholz v. Bd. of Trustees of the Univ. of Illinois*, 219 F.3d 674,

23   676 (7th Cir. 2000) ("The [§ 1292(b)] criteria are conjunctive, not disjunctive.").

24                                          **ARGUMENT**

25   **I.    THE ORDER FOR WHICH DEFENDANTS SEEK CERTIFICATION DOES NOT
26          INVOLVE A CONTROLLING QUESTION OF LAW**

27           In order to satisfy the first prong of Section 1292(b), Defendants must show that the order

28   they seek to certify involves a controlling question of law.  For a moving party to show that a

1   question of law is "controlling," they must show that resolution on appeal would end the case, or at

2   a minimum "could materially affect the outcome of litigation in the district court." *In re Cement*

3   *Antitrust Litigation*, 673 F.2d at 1026 (citing *United States Rubber Co. v. Wright*, 359 F.2d 784,

4   785 (9th Cir. 1966) (per curiam)); *see also United States v. Woodbury*, 263 F.2d 784, 787 (9th Cir.

5   1959) ("Section 1292(b) was intended primarily as a means of expediting litigation by permitting

6   appellate consideration during the early stages of litigation of legal questions which, if decided in

7   favor of the appellant, would end the lawsuit.") (footnote omitted).   A question of law "is not

8   controlling simply because its immediate resolution may promote judicial economy." *Lucas v.*

9   *Hertz Corp.*, No. C 11-01581 LB, 2012 WL 5199384, at *4 (N.D. Cal. Oct. 22, 2012).

10          Citing two unpublished decisions, Defendants assert that an order resolving a question of

11  standing is automatically a controlling question of law.   Defendants' Motion to Certify Order for

12  Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(b) at 3 (Dec. 19, 2012) (Dkt. No. 1499)

13  ("Motion to Certify") (citing *AsIs Internet Servs. v. Active Response Grp.*, No. C07 6211 THE,

14  2008 WL 4279695, at *3 (N.D. Cal. Sept. 16, 2008); *Ritz Camera & Image, LLC v. Sandisk Corp.*,

15  No. 5:10-cv-02787-JF/HRL, 2011 WL 3957257, at *1-3 (N.D. Cal. Sept. 7, 2011)).   The cited

16  cases stand for no such proposition.   In *AsIs Internet Servs.*, the district court found the question of

17  standing controlling because "the litigation would end" if Plaintiffs lacked standing.   *AsIs Internet*

18  *Servs.*, 2008 WL 4279695, at *3 ("The standing issue *in this case* is a controlling question of

19  law.") (emphasis added).   Likewise, in *Ritz Camera & Imaging*, the question of standing related to

20  *all* of the plaintiff's claims; if standing was lacking, the *entire case* would have been dismissed.

21  *Ritz Camera & Image*, 2011 WL 3957257 at *1-*2 (agreeing with moving party's contention that

22  an order involved a controlling question of law because it was "potentially dispositive of *all* issues

23  in the instant action") (emphasis added).

24          Here, the question of standing raised by Defendants is not a controlling question of law that

25  would end the case.   Defendants challenge the standing of only certain plaintiffs and only with

26  respect to their federal claims.   Thus, as Defendants acknowledge, two class actions, by direct and

27  indirect purchasers, will continue regardless of the standing of some parties who are currently

28  plaintiffs in this litigation.   Motion to Certify at 9 (recognizing that putative DPP and IPP classes

1   will still exist even if Defendants are permitted by this Court and the Ninth Circuit to pursue an

2   interlocutory appeal, and go on to succeed on the merits of such an appeal).

3          Further, and as Defendants again acknowledge, a finding that the DAPs lack standing to

4   bring their federal claims would *not* end their actions.  Motion to Certify at 8-9 ("Interlocutory

5   review . . . [will] determin[e] whether the opt-out plaintiffs can proceed on their federal claims, or

6   rather must rely on any applicable state-law causes of action.").  *See also* Response of LG

7   Defendants and Philips Defendants in Support of Defendants' Motion to Certify Order for

8   Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(b) at 6 (Dec. 28, 2012) (Dkt. No. 1513)

9   ("Response of LG and Philips") ("[I]f these DPPs and DAPs lack standing under federal law, they

10  would have to pursue their claims, if they so choose, under state laws providing indirect purchaser

11  standing.").  The DAPs all have existing state law claims, and these claims would only increase in

12  size if the DAPs were denied standing to pursue federal claims and instead pursued all their claims

13  under state law.

14         Thus, Defendants cannot demonstrate that immediate resolution of this issue on appeal will

15  materially affect the outcome of this multi-district litigation.  It will certainly not avoid litigation,

16  because regardless of the outcome of the appeal, both of the classes and the DAPs will have

17  substantial claims remaining that they will continue to pursue.

18  **II.    NO SUBSTANTIAL GROUND FOR DIFFERENCE OF OPINION EXISTS**

19         To satisfy the second prong of Section 1292(b), the Defendants must show that a

20  "substantial ground for difference of opinion" exists.  As the Ninth Circuit recently explained, a

21  substantial ground for difference of opinion exists only if the law is unclear:

22         To determine if a "substantial ground for difference of opinion" exists under §
           1292(b), courts must examine to what extent the controlling law is unclear.  Courts
23         traditionally will find that a substantial ground for difference of opinion exists
           where "the circuits are in dispute on the question and the court of appeals of the circuit has
24         not spoken on the point, if complicated questions arise under foreign law, or if novel
           and difficult questions of first impression are presented."  However, "just because a
25         court is the first to rule on a particular question or just because counsel contends that
26         one precedent rather than another is controlling does not mean there is such a
           substantial difference of opinion as will support an interlocutory appeal."

27

28

1  *Couch v. Telescope, Inc.*, 611 F.3d 629, 633 (9th Cir. 2010) (quoting 3 Federal Procedure, Lawyers

2  Edition § 3:212 (2010) (internal citation omitted)).  In the absence of directly conflicting case law,

3  the "substantial ground for difference of opinion" prong is satisfied only if "novel legal issues are

4  presented, on which fair-minded jurists might reach contradictory conclusions."  *Reese v. BP*

5  *Exploration (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011).  "A party's strong disagreement with

6  the Court's ruling is not sufficient for there to be a substantial ground for difference."  *Couch*, 611

7  F.3d at 633 (quotations and brackets omitted).

8      No substantial ground for difference of opinion exists here because the scope of the long-

9  standing ownership or control exception is set forth in established Ninth Circuit law.  The Ninth

10  Circuit thoroughly addressed this issue in its *ATM Fee* opinion several months ago.  Defendants

11  initially made their underlying summary judgment motion, which sought to circumvent the

12  ownership or control exception, and the Special Master issued his Report and Recommendation on

13  that motion, prior to the Ninth Circuit's decision in *ATM Fee*.  Subsequently, in *ATM Fee*, the

14  Ninth Circuit reaffirmed and clarified the scope of the ownership or control exception first

15  recognized in *Royal Printing*.  Thus, to the extent that there was any doubt as to the status of the

16  ownership or control exception when Defendants initially filed their motion, *ATM Fee* removed it.

17      Despite *ATM Fee's* clear guidance, Defendants urged this Court to adopt the Special

18  Master's report and recommendation, continuing to argue that the ownership or control exception

19  did not apply here.  In particular, Defendants contended the ownership or control exception

20  established by *Royal Printing* did not apply because (1) Plaintiffs purchased finished products,

21  rather than stand-alone CRTs; and (2) not all avenues for private enforcement were closed off

22  because finished product purchasers could still bring indirect purchaser claims under state law.

23  Defendants' Motion to Adopt Special Master's Report and Recommendation Regarding

24  Defendants' Joint Motion for Summary Judgment at 20-21 (July 24, 2012) (Dkt. No. 1274)

25  ("Defendants' Motion to Adopt").  This Court expressly rejected both of Defendants' arguments,

26  finding that (1) *ATM Fee* reaffirmed *Royal Printing*; (2) *Royal Printing* controlled the facts of this

27  case; and (3) *Royal Printing* granted Plaintiffs standing under the ownership or control exception.

28  Order Granting in Part and Denying in Part Defendants' Joint Motion for Summary Judgment at 13

(Nov. 29, 2012) (Dkt. No. 1470) ("Order") ("[T]he Court concludes that *Royal Printing* controls here and that the Named DPPs have antitrust standing under it.").

With respect to Defendants' first argument — that *Royal Printing* does not apply because Plaintiffs purchased finished products rather than stand-alone CRTs — this Court correctly found that the present case could not be distinguished from *Royal Printing*. Order at 15-16. Rather, the Court held that like the Plaintiffs here, the *Royal Printing* plaintiffs were indirect purchasers. Although the *Royal Printing* plaintiffs bought paper — the allegedly price-fixed product — they bought it at the wholesale price, which was set by market forces, rather than the manufacturer's price, which was the price that had allegedly been subject to the defendants' price-fixing scheme. *Id.* at 15 n.7 (citing *ATM Fee*, 686 F.3d at 754). Thus, the Court held that just as the ownership or control exception applied to grant standing to the *Royal Printing* plaintiffs despite the fact that they were indirect purchasers, so too did it apply to Plaintiffs here:

> In *Royal Printing*, the court held that, notwithstanding the plaintiffs' status as indirect purchasers, *Illinois Brick* did not bar their suit insofar as they paid a passed-on overcharge to a non-conspiring direct purchaser owned or controlled by any alleged conspirator. That holding applies here as well.  The Named DPPs are indirect purchasers, but, under *Royal Printing*, they have standing to sue insofar as they purchased FPs incorporating the allegedly price-fixed CRTs from an entity owned or controlled by any allegedly conspiring defendant.

Order at 16.  The Court further concluded that, "Making antitrust standing depend on whether a plaintiff bought the price-fixed product — that is, whether plaintiff was a direct purchaser — would wipe out the *Royal Printing* exception." *Id*. at 15 n.7.[1]

Defendants' argument that there is no purchaser of the price fixed product where there is a sale of the finished product (containing the price fixed product) is also nonsensical.  The purchaser of a finished product has physically purchased all of the contents of that product and taken possession of those contents.  A price fixed product does not vanish by becoming a component part

---

[1] Similarly, Defendants' argument that the ownership or control exception should not apply because CRTs have been "transformed" into finished products containing CRTs, Motion to Certify at 6-8; LG and Philips Response at 4-6, has been fully addressed by the Court, and correctly rejected in accordance with Ninth Circuit law.  As this Court stated in its Order, "The policies underlying *Illinois Brick* and its exceptions apply with equal force regardless of whether or how a particular good is modified as it passes through the chain of distribution."  Order at 19.

1    of a finished product.  If a fiction is created that these component products have not been purchased,

2    then price fixing conspiracies may achieve immunity from federal antitrust law by focusing their

3    efforts on the billions of dollars of commerce attributable to components.

4          Likewise, with respect to Defendants' second argument, this Court disagreed with

5    Defendants that the ownership or control exception does not apply where other avenues of private

6    enforcement are available.  The Court found that the present case could not be distinguished from

7    *Royal Printing* on the ground that even if the Court granted summary judgment against the nine

8    plaintiffs at issue, other parties stand ready to prosecute this action.  Order at 17-18.  Indeed, the

9    Court rejected Defendants' reading of *Royal Printing*, finding that "Defendants' interpretation of

10   *Royal Printing* would undermine the 'vigorous private enforcement of the antitrust laws,' a policy

11   objective which both *Illinois Brick* and *Royal Printing* explicitly seek to vindicate."  *Id*. at 18

12   (citing *Illinois Brick*, 431 U.S. at 745; *Royal Printing*, 621 F.2d at 326 n.7).  The Court went on

13   state that "Defendants' position would deny antitrust standing to any private plaintiff so long as the

14   antitrust defendant could point to some other person who also could sue.  That result cannot be

15   squared with the goal of vigorous private antitrust enforcement."  *Id*.

16         Moreover, with respect to Defendants' argument that Plaintiffs have standing to bring

17   indirect purchaser claims under state law, the Court concluded that:

18              Whatever the merits of Defendants' argument, it is better addressed to the Ninth
              Circuit, which not only has yet to overrule or narrow *Royal Printing*, but reaffirmed
19              and clarified its holding just months ago in *ATM Fee*.  *See* 686 F.3d at 756-58.  *Royal
              Printing* remains the law of this circuit and binding on this Court.
20

21   Order at 20.  The Ninth Circuit, as this Court correctly found, has not abandoned federal antitrust

22   enforcement as Defendants continue to argue this Court should do.

23         Thus, this Court has correctly construed and applied the Ninth Circuit's opinions in *ATM

24   Fee* and *Royal Printing*.  Defendants do not point to *any* other court which has taken the positions

25   they urge; indeed, they cannot, because no court has taken those positions.  Rather, Judge Illston in

26   the LCD litigation also correctly held that *ATM Fee* reaffirmed *Royal Printing* and that indirect

27   purchasers of finished products containing price-fixed components may have standing under the

28   ownership or control exception if they can establish the facts necessary to satisfy the exception.  *In*

1    *re TFT-LCD (Flat Panel) Antitrust Litig.*, Order Denying Defendants' Joint Motion and Toshiba's

2    Separate Motion for Partial Summary Judgment for Lack of Standing Under *Illinois Brick* and *In*

3    *re ATM Fee*, No. M 07-1827 SI, 2012 WL 5869588 (N.D. Cal. Nov. 19, 2012).  Thus, Defendants

4    cannot carry their burden to demonstrate "a legitimate and substantial ground for difference of

5    opinion between and among judicial bodies."  *Bd. of Trustees of Leland Stanford Junior Univ. v.*

6    *Roche*, No. C 05-04158 MHP, 2007 WL 1119193, at *2 (N.D. Cal. Apr. 16, 2007) (quotation

7    marks omitted) (citing *U.S. Rubber Co.*, 359 F.2d at 785); *see also APCC Servs., Inc. v. AT & T*

8    *Corp.*, 297 F. Supp. 2d 101, 107 (D.D.C. 2003) ("A substantial ground for dispute [ ] exists where

9    a court's challenged decision conflicts with decisions of several other courts.").

10          Despite agreement among the courts that have considered the issue, Defendants continue to

11    argue that this settled Ninth Circuit precedent should not be applied in this case, making the same

12    two arguments in their Motion to Certify that they made in their Motion to Adopt the Special

13    Master's Report and Recommendation.  *See* Defendants' Motion to Adopt at 20-23; Motion to

14    Certify at 5-8.  In essence, Defendants ask this Court for permission to immediately appeal to the

15    Ninth Circuit so that they may dispute how settled law — *i.e.*, the ownership or control exception

16    established in *Royal Printing* and reaffirmed in *ATM Fee* — should be applied to the facts of this

17    case.  Motion to Certify at 6-8.  Section 1292(b) forbids such an interlocutory appeal.  "The

18    antithesis of a proper § 1292(b) appeal is one that turns on whether there is a genuine issue of fact

19    or whether the district court properly applied settled law to the facts or evidence of a particular

20    case." *McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1259 (11th Cir. 2004).

21          Defendants attempt to make much of this Court's statement that their argument concerning

22    alternate avenues for private enforcement is "better addressed to the Ninth Circuit."   Motion to

23    Certify at 6 (quoting Order at 20).  However, as its Order made clear, the Court's remark speaks

24    not to the merits of the Defendants' argument, but rather to the fact that it would require the Ninth

25    Circuit to overturn settled precedent.  Defendants' argument is better directed to the Ninth Circuit

26    because it *must* be made there, as this Court was and continues to be bound to apply the settled

27    precedent that Defendants have persistently sought to avoid on policy grounds.

28

In short, Defendants' argument that there is substantial ground for difference of opinion is not based on directly conflicting case law or novel questions of law, as required by Section 1292(b). A party's strong disagreement with the Court's ruling does not create a substantial ground for difference of opinion, and an appeal that turns on the application of settled law to the particular facts of a case is inappropriate for a § 1292(b) appeal.[2]

## III.   INTERLOCUTORY APPEAL WOULD NOT MATERIALLY ADVANCE THE ULTIMATE TERMINATION OF THIS LITIGATION

To satisfy the third prong of Section 1292(b), Defendants must show that interlocutory review is likely to "materially advance the ultimate termination of the litigation."   The Ninth Circuit has indicated that a litigation's ultimate termination would be materially advanced if resolution of the legal question would "appreciably shorten the time, effort, or expense of conducting a lawsuit."   *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1027 (9th Cir. 1982). Certification of this Court's Order would not do so because it will not appreciably narrow the number of factual or legal issues in the litigation, regardless of the outcome of the interlocutory appeal.   Immediate appeal would instead be likely to have the effect of delaying the litigation and increasing the effort and expense associated with litigating it.

First, both putative classes and the DAPs will have substantial remaining claims regardless of the outcome of an appeal and thus the factual and legal issues in the litigation would not be narrowed by an appeal.   Both federal and state claims will remain in the litigation; the only potential change would be which particular plaintiffs have standing to pursue federal claims. Thus, the discovery required to establish liability under the federal and state antitrust laws, and any

---

[2] Moreover, the argument raised by LG and Philips that certain direct purchasers "are not owned or controlled by the alleged conspirators," LG and Philips Response at 3, is best addressed on a renewed motion for summary judgment at the close of fact discovery or at trial, as this Court has already indicated.   Order at 22 ("The Court expresses no view as to whether the Named DPPs will be able to prove what is needed to win relief as indirect purchasers under the ownership and control exception. . . . [T]he Named DPPs [have] present[ed] evidence based on the discovery they have taken so far.  This evidence raises a genuine issue of material fact as to whether the Named DPPs purchased FPs incorporating the allegedly price-fixed CRTs from some defendant-owned or -controlled division or subsidiary.").   Quite simply, the ownership or control exception applies as a matter of law, and the only question is whether sufficient facts exist to satisfy the exception.

motion practice related to it, will remain regardless of whether the Court's Order survives appellate review.

Moreover, the DPPs' and the DAPs' actions would be materially slowed if this Court's Order is certified for interlocutory appeal.  In particular, class certification briefing in the DPP action would likely be delayed if this Court's order is certified for interlocutory appeal.  Defendants correctly note that the parties, the Special Master, and this Court have previously recognized that class certification briefing in the DPPs' action should await final resolution of this standing question.  Motion to Certify at 9.  If this Court's order is certified for interlocutory appeal, the very same reasons for delaying class certification briefing will be present.  In addition, if the litigation were not stayed pending appeal, a reversal by the Ninth Circuit would likely require re-litigation of not only DPP class certification, but also a number of merits-based issues affecting both the DPP and DAP actions.  This would undoubtedly add to the time and resources expended on this litigation.

In short, permitting an interlocutory appeal would lead to further delay and hinder the ultimate termination of the litigation.  Thus, this is exactly the type of case for which interlocutory appeal should not be granted.  *See Safeway, Inc. v. Abbott Labs.*, Nos. C 07–05470 CW, C 07–05985 CW, C 07–06120 CW, C 07–05702 CW, 2010 WL 2228546, at *2 (N.D. Cal. June 1, 2010) ("If . . . an interlocutory appeal would delay resolution of the litigation, it should not be certified.") (citing *Shurance v. Planning Control Int'l, Inc.*, 839 F.2d 1347, 1348 (9th Cir.1988)).

Defendants also suggest altered settlement posture as a ground for certification for interlocutory appeal.  In this case there is no reason to believe that the parties would settle these actions more quickly upon a favorable appellate ruling for Defendants, given that substantial damages claims will remain in the litigation regardless of the outcome of an appeal.  Moreover, Defendants' suggested rationale — that altered settlement posture will always lead to faster termination of litigation — is utterly unpersuasive as a justification for exercise of this Court's discretion to permit interlocutory appeal in certain circumstances.  Defendants put forth no limiting principle and cite no facts relevant to this case that counsel tipping settlement leverage in favor of either party as part of this Court's resolution of Defendants' motion.  Every order in every case has

1    an effect on the parties' settlement posture.  Under Defendants' reasoning, every order may be

2    challenged on interlocutory appeal; Defendants' logic would obliterate the restrictions imposed by

3    § 1292, which is to be "applied sparingly," and only in "exceptional situations."  *In re Cement*

4    *Antitrust Litig.*, 673 F.2d at 1026-27.

5                                                **CONCLUSION**

6                Even if Defendants had satisfied the three statutory prerequisites for certification — which

7    they have not — no exceptional circumstances exist that warrant the exercise of the Court's

8    discretion to certify an interlocutory appeal.  That truly exceptional circumstances are required to

9    justify a § 1292 appeal is exemplified by the rarity of § 1292(b) certification orders by district

10   courts and subsequent grants of petitions for interlocutory appeal by courts of appeals.  *See, e.g.,*

11   *Ahrenholz v. Bd. of Trustees of Univ. of Ill.*, 219 F.3d 674, 675 (7th Cir. 2000) (In a one-and-a-half

12   year period, the Seventh Circuit received only thirteen petitions for interlocutory appeal certified

13   by the district court under § 1292(b), and the Seventh Circuit granted interlocutory appeal in only

14   six of those thirteen instances.).  Thus, for all the foregoing reasons, the DAPs respectfully request

15   that the Court deny Defendants' Motion to Certify.

16

17

18

19

20

21

22

23

24

25

26

27

28

DATED:  January 10, 2013

/s/        William A. Isaacson
William A. Isaacson
Jennifer Milici
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Ave. NW, Suite 800
Washington, D.C.  20015
Telephone:  (202) 237-2727
Facsimile:  (202) 237-6131
Email:  wisaacson@bsfllp.com
Email:  jmilici@bsfllp.com

Stuart Singer
BOIES, SCHILLER & FLEXNER LLP
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33301
Telephone:  (954) 356-0011
Facsimile:  (954) 356-0022
Email:  ssinger@bsfllp.com

Philip J. Iovieno
Anne M. Nardacci
BOIES, SCHILLER & FLEXNER LLP
10 North Pearl Street, 4th Floor
Albany, NY  12207
Telephone:  (518) 434-0600
Facsimile:  (518) 434-0665
Email:  piovieno@bsfllp.com
Email:  anardacci@bsfllp.com

*Liaison Counsel for Direct Action Plaintiffs and
Attorneys for Plaintiffs Electrograph Systems, Inc.,
Electrograph Technologies, Corp., Office Depot, Inc.,
Compucom Systems, Inc., Interbond Corporation of
America, P.C. Richard & Son Long Island Corporation,
Marta Cooperative of America, Inc., ABC Appliance, Inc.,
Schultze Agency Services LLC on behalf of Tweeter Opco,
LLC and Tweeter Newco, LLC*

/s/        Roman M. Silberfeld
Roman M. Silberfeld, (SBN 62783)
David Martinez, (SBN 193183)
ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
2049 Century Park East, Suite 3400
Los Angeles, CA  90067-3208
Telephone:  (310) 552-0130
Facsimile:  (310) 229-5800
Email:  RMSilberfeld@rkmc.com
Email:  DMartinez@rkmc.com

*Attorneys For Plaintiffs Best Buy Co., Inc, Best Buy
Purchasing LLC, Best Buy Enterprise Services, Inc., Best Buy
Stores, L.P., Bestbuy.com, L.L.C., and Magnolia Hi-Fi, Inc.*

1

/s/      Kenneth S. Marks
H. Lee Godfrey
Kenneth S. Marks
Jonathan J. Ross
Johnny W. Carter
David M. Peterson
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone:  (713) 651-9366
Facsimile:  (713) 654-6666
Email:  lgodfrey@sumangodfrey.com
Email:  kmarks@susmangodfrey.com
Email:  jross@susmangodfrey.com
Email:  jcarter@susmangodfrey.com
Email:  dpeterson@susmangodfrey.com

Parker C. Folse III
Rachel S. Black
Jordan Connors
SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, Washington 98101-3000
Telephone:  (206) 516-3880
Facsimile:  (206) 516-3883
Email:  pfolse@susmangodfrey.com
Email:  rblack@susmangodfrey.com
Email:  jconnors@susmangodfrey.com

*Attorneys for Plaintiff Alfred H. Siegel, as Trustee of the Circuit City Stores, Inc. Liquidating Trust*

/s/      David. J. Burman
David J. Burman
Cori G. Moore
Nicholas H. Hesterberg
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone:  (206) 359-8000
Facsimile:  (206) 359-9000
Email:  DBurman@perkinscoie.com
Email:  CGMoore@perkinscoie.com
Email:  NHesterberg@perkinscoie.com

Jordan S. Bass, Cal. Bar No. 208143
PERKINS COIE LLP
Four Embarcadero Center, Suite 2400
San Francisco, CA  94111-4131
Telephone:  (415) 344.7000

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Facsimile:  (415) 344.7050
Email: JBass@perkinscoie.com

*Attorneys for Plaintiff Costco Wholesale Corporation*

/s/      Jason C. Murray
Jason C. Murray (CA Bar No. 169806)
CROWELL & MORING LLP
515 South Flower St., 40th Floor
Los Angeles, CA 90071
Telephone:  (213) 622-4750
Facsimile:  (213) 622-2690
Email:  jmurray@crowell.com

*Counsel for Plaintiffs Target Corp.; Sears, Roebuck and Co.;
Kmart Corp.; Old Comp Inc.; Good Guys, Inc.; RadioShack
Corp.*

/s/      James P. McCarthy
Jessica L. Meyer, (SBN: 249064)
James M. Lockhart (*pro hac vice*)
James P. McCarthy (*pro hac vice*)
Kelly G. Laudon (*pro hac vice*)
Lindquist & Vennum P.L.L.P.
4200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone:  (612) 371-3211
Facsimile:  (612) 371-3207
Email:  jmeyer@lindquist.com
Email:  jlockhart@lindquist.com
Email:  jmccarthy@lindquist.com
Email:  klaudon@lindquist.com

*Attorneys for Plaintiffs John R. Stoebner, As Chapter 7 Trustee
for PBE Consumer Electronics, LLC and related entities; And
Douglas A. Kelley, as Chapter 11 Trustee for Petters
Company, Inc. and Related Entities, and as Receive
for Petters Company, LLC and related entities*