1  Mario N. Alioto (56433)
   Lauren C. Russell (241151)
2  TRUMP, ALIOTO, TRUMP & PRESCOTT LLP
   2280 Union Street
3  San Francisco, CA 94123
   Telephone:  (415) 563-7200
4  Facsimile:   (415) 346-0679
   malioto@tatp.com
5  laurenrussell@tatp.com

6  *Interim Lead Counsel for Indirect-Purchaser Plaintiffs*

7  [Additional Counsel Listed on Signature Page]

8

9                    **UNITED STATES DISTRICT COURT**

10                   **NORTHERN DISTRICT OF CALIFORNIA**

11                      **SAN FRANCISCO DIVISION**

12 | IN RE: CATHODE RAY TUBE (CRT) | Master File No. CV-07-5944-SC |
   | ANTITRUST LITIGATION | |
13 | | MDL No. 1917 |
14 | | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF INDIRECT-PURCHASER PLAINTIFFS FOR CLASS CERTIFICATION** |
15 | This Document Relates to: | |
16 | ALL INDIRECT-PURCHASER ACTIONS | |
17 | | Date:    TBD |
   | | Time:    TBD |
18 | | Before: Hon. Charles A. Legge (Ret.) |
   | | Special Master |
19 | | The Honorable Samuel Conti |
20

21

22                **REDACTED PER COURT ORDER (D.E. 1512)**

23

24

25

26

27

28

# TABLE OF CONTENTS

I.  INTRODUCTION ........................................................................................................1

II.  ISSUES TO BE DECIDED ..........................................................................................2

III.  FACTUAL BACKGROUND .......................................................................................3

A.  An Overview Of The CRT Industry ...........................................................................3

   1.  The Structure of the CRT Industry Was Conducive to a Conspiracy .....................3

   2.  CRTs Have No Independent Utility, Are Discrete Parts of Finished Products,
      and Are Their Most Expensive Components ...........................................................4

B.  Overwhelming Evidence Demonstrates That Defendants Participated In A
    Conspiracy ..................................................................................................................5

   1.  The Evidence Unequivocally Shows That Defendants Fixed CRT Prices and
      Limited Production ................................................................................................5

   2.  The Results of Numerous Government Investigations Also Support the
      Existence of a Conspiracy .....................................................................................7

   3.  Many of the Defendants in This Case Participated in the Related
      LCD Conspiracy ...................................................................................................9

C.  Defendants' Conspiracy Harmed All Class Members ...............................................11

   1.  Defendants' Price-Fixing Agreements Increased All CRT Prices.........................11

   2.  The Cartel's Price Increases Passed Through to the Class Members .....................12

IV.  CLASS CERTIFICATION IS APPROPRIATE IN THIS CASE................................13

A.  The Standards For Class Certification ......................................................................13

B.  The Classes Satisfy The Rule 23(a) Requirements ...................................................15

   1.  Class Members Are Sufficiently Numerous.........................................................15

   2.  Common Questions of Law and Fact Exist ..........................................................15

   3.  The Named Plaintiffs Have Claims Typical of the Classes ..................................16

   4.  Plaintiffs and Counsel Will Adequately Represent the Classes ...........................17

C.  Certification Of Statewide Classes Under State Substantive Laws For
    Damages Is Appropriate ...........................................................................................18

   1.  A Class Action is Superior to Other Available Methods of Adjudication .............18

i

a. There is No Realistic Alternative to a Class Action for Class Members to Recover the Damages Caused by Defendants .................................................... 19

b. This Court is the Only Available Forum ........................................................... 20

c. Class Certification is More Manageable Than Any Other Procedure Available ......................................................................................... 21

2. Common Questions of Law and Fact Predominate ............................................. 23

a. Predominance is Readily Met in Antitrust Cases .............................................. 23

b. Common Questions of Liability in This Conspiracy Predominate ................... 24

c. Common Questions Also Predominate With Respect to Economic Impact and Plaintiffs Have a Reliable Quantitative Method to Show Impact ............... 24

d. Common Questions Also Predominate Regarding the Measure of the Amount of Damages .............................................................................. 26

3. The Indirect-Purchaser Statewide Classes Should be Certified ........................... 28

a. California ........................................................................................................... 29

b. Arizona .............................................................................................................. 33

c. District of Columbia ......................................................................................... 33

d. Florida ............................................................................................................... 34

e. Hawaii ............................................................................................................... 35

f. Iowa ................................................................................................................... 36

g. Kansas ............................................................................................................... 37

h. Maine ................................................................................................................. 38

i. Michigan ............................................................................................................ 38

j. Minnesota .......................................................................................................... 39

k. Mississippi ........................................................................................................ 40

l. Nebraska ............................................................................................................ 41

m. Nevada .............................................................................................................. 41

n. New Mexico ...................................................................................................... 42

o. New York .......................................................................................................... 43

p. North Carolina .................................................................................................. 44

q. North Dakota.................................................................................................45

r. South Dakota.................................................................................................46

s. Tennessee.....................................................................................................47

t. Vermont........................................................................................................48

u. West Virginia................................................................................................48

v. Wisconsin.....................................................................................................49

V. THE COURT SHOULD APPOINT CLASS COUNSEL..........................................50

VI. CONCLUSION......................................................................................................50

APPENDIX A ......................................................................................................................

APPENDIX B ......................................................................................................................

APPENDIX C ......................................................................................................................

1

## TABLE OF AUTHORITIES

2

## FEDERAL CASES

3

*In re Abbott Labs Norvir Anti-Trust Litig.*,
2007 WL 1689899 (N.D. Cal. June 11, 2007) ...................................................21, 22, 24

4

*Amchem Prods. Inc. v. Windsor*,
5    521 U.S. 591 (1997)................................................................................................. 18

6    *Arnold v. United Artists Theatre Circuit Inc.*,
158 F.R.D. 439 (N.D. Cal. 1994) ................................................................................ 26

7

*Ballard v. Equifax Check Serv., Inc.*,
8    186 F.R.D. 589 (E.D. Cal. 1999).................................................................................. 14

9    *Blackie v. Barrack*,
524 F.2d 891 (9th Cir. 1975)....................................................................................... 26

10

*Bogosian v. Gulf Oil Corp.*,
11    561 F.2d 434 (3d Cir. 1977)........................................................................................ 31

12    *In re Cardizem CD Antitrust Litig.*,
200 F.R.D. 326 (E.D. Mich. 2001) ........................................................................ 23, 39

13

*In re Catfish Antitrust Litig.*,
14    826 F. Supp. 1019 (N.D. Miss. 1993).......................................................................... 42

15    *Chamberlan v. Ford Motor Co.*,
402 F.3d 952 (9th Cir. 2005)....................................................................................... 14

16

*Chavez v. Lumber Liquidators Inc.*,
17    No. CV-09-4812, 2012 WL 1004850 (N.D. Cal. Mar. 26, 2012) (Conti, J.)................. 14

18    *Computer Economics, Inc. v. Gartner Group, Inc.*,
50 F. Supp. 2d 980 (S.D. Cal. 1999)........................................................................... 29

19

*In re Cree Inc. Sec. Litig.*,
20    219 F.R.D. 369 (M.D.N.C. 2003)............................................................................... 50

21    *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
No. M 02-1486-PJH, 2006 WL 1530166 (N.D. Cal. June 5, 2006).............................. 25

22    *Ellis v. Costco Wholesale Corp.*,
23    240 F.R.D. 627 (N.D. Cal. 2007) ............................................................................... 25

24    *Ellis v. Costco Wholesale Corp.*,
657 F.3d 970 (9th Cir. 2011)....................................................................................... 14

25

*Erie R.R. Company v. Tompkins*,
26    304 U.S. 64 (1938)......................................................................................... 2, 22, 28

27    *In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*,
256 F.R.D. 82 (D. Conn. 2009) .................................................................................. 24

28

*Four B Corp. v. Daicel Chemical Industries, Ltd.*,
  253 F. Supp. 2d 1147 (D. Kan. 2003)............................................................. 37

*Gasperini v. Center for Humanities, Inc.*,
  518 U.S. 415 (1996)........................................................................................ 29

*Gen. Tel. of Sw. v. Falcon*,
  457 U.S. 157 (1982)........................................................................................ 14

*Gonzalez v. Arrow Fin. Servs., LLC*,
  489 F. Supp. 2d 1140 (S.D. Cal. 2007)........................................................... 13

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998)................................................................. *passim*

*Hawaii v. Standard Oil Co. of Cal.*,
  405 U.S. 251 (1972)........................................................................................ 13

*Holman v. Experian Information Solutions*,
  No. C-11-0180, 2012 WL 1496203 (N.D. Cal. Apr. 27, 2012) ..................... 14

*In re Indus. Diamonds Antitrust Litig.*,
  167 F.R.D. 374 (S.D.N.Y.1996)...................................................................... 25

*In re Initial Public Offerings Securities Antitrust Litig.*,
  471 F.3d 24 (2d Cir. 2006).............................................................................. 25

*In re Live Concert Antitrust Litig.*,
  247 F.R.D. 98 (C.D. Cal. 2007)....................................................................... 25

*Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas*,
  244 F.3d 1152 (9th Cir. 2001).......................................................................... 19

*McDevitt v. Guenther*,
  522 F. Supp. 2d 1272 (D. Haw. 2007).............................................................. 36

*In re Napster, Inc. Copyright Litig.*,
  2005 WL 1287611 (N.D. Cal. June 1, 2005) .................................................. 23

*In re New Motor Vehicles Canadian Export Antitrust Litig.*,
  235 F.R.D. 127 (D. Maine), *rev'd on other grounds*, 522 F.3d 6 (1st Cir. 2008).......... 28

*Northern Pac. R. Co. v. United States*,
  356 U.S. 1 (1958) ........................................................................................... 29

*In re Pharm. Indus. Average Wholesale Price Litig.*,
  233 F.R.D. 229 (D. Mass. 2006) ............................................................... 21, 43

*Rees v. Souza's Milk Transp. Co.*,
  2006 WL 738987 (E.D. Cal. Mar. 22, 2006) .................................................. 30

*Reiter v. Sonotone Corp.*,
  442 U.S. 330 (1979)........................................................................................ 13

*In re Relafen Antitrust Litig.*,
  221 F.R.D. 260 (D. Mass. 2004) .................................................................24, 28, 30, 48

*In re Rubber Chemicals Antitrust Litig.*,
  232 F.R.D. 346 (N.D. Cal 2005) ...........................................................13, 15, 25, 26

*Scholes v. Stone, McGuire & Benjamin*,
  143 F.R.D. 181 (N.D. Ill. 1992) ............................................................................ 21

*Sea Land Service, Inc. v. Atlantic Pacific Intern., Inc.*,
  61 F. Supp. 2d 1092 (D. Haw. 1999).................................................................... 36

*Shady Grove Orthopedic Assoc. v. Allstate Ins. Co.*,
  __U.S.__, 130 S.Ct. 1431 (2010) .......................................................................... 43

*Singer v. AT&T Corp.*,
  185 F.R.D. 681 (S.D. Fla. 1998) .......................................................................... 22

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
  No. C 07-01819 CW, 2008 WL 4447592 (N.D. Cal. Sept. 29, 2008)........................... 13

*In re Sugar Industry Antitrust Litig.*,
  1976 WL 1374 (N.D. Cal. May 21, 1976) .................................................................. 15

*In re Sugar Industry Antitrust Litig.*,
  73 F.R.D. 322 (E.D. Pa. 1976) .............................................................................. 23

*In re Tableware Antitrust Litig.*,
  241 F.R.D. 644 (N.D. Cal. 2007) ....................................................................... 13, 17

*In re Terazosin Hydrochloride Antitrust Litig.*,
  220 F.R.D. 672 (S.D. Fla. 2004) .......................................................................... *passim*

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  2011 WL 4345446 (N.D. Cal. Sept. 15, 2011)............................................................ 27

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  2011 WL 4479522 (N.D. Cal. Sept. 26, 2011)............................................................ 27

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  2011 WL 6148677 (N.D. Cal. Dec. 7, 2011) .............................................................. 27

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  2012 WL 555090 (N.D. Cal. Feb. 21, 2012)............................................................... 27

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  267 F.R.D. 291 (N.D. Cal. 2010) .......................................................................... 25

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  267 F.R.D. 583 (N.D. Cal. 2010), *amended in part*, 2011 WL 3268649
  (N.D. Cal. July 28, 2011).............................................................................1, 14, 21, 27

*Thomas & Thomas Rodmakers Inc. v. Newport Adhesives & Composites Inc.*,
  209 F.R.D. 159 (C.D. Cal. 2002)......................................................................... 16, 23

vi

*U.S. ex. rel. Newsham v. Lockheed Missiles & Space Co., Inc.*,
190 F.3d 963 (9th Cir. 1999)........................................................................................ 29

*Valentino v. Carter-Wallace Inc.*,
97 F.3d 1227 (9th Cir. 1996)........................................................................................ 18

*In re Vitamins Antitrust Litig.*,
209 F.R.D. 251 (D.D.C. 2002) ..................................................................................... 34

*Walker v. Amco Steel Corp.*,
446 U.S. 740 (1980).................................................................................................28-29

*Wal-Mart Stores, Inc. v. Dukes*,
__U.S.__, 131 S.Ct. 2541 (2011) .......................................................................... 14, 16

*Walters v. Reno*,
145 F.3d 1032 (9th Cir. 1998)...................................................................................... 17

*In re Western States Wholesale Natural Gas*,
2007 WL 2178063 (D. Nev. July 27, 2007)................................................................. 37

*Wiener v. Dannon Co., Inc.*,
255 F.R.D. 658 (C.D. Cal. 2009).................................................................................. 19

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
395 U.S. 100 (1969)...................................................................................................... 40

## STATE CASES

*4934, Inc. v. District of Columbia Dep't of Employment Servs.*,
605 A.2d 50 (D.C. 1992)............................................................................................... 22

*B.W.I. Custom Kitchen v. Owens-Illinois, Inc.*,
191 Cal. App. 3d 1341 (1987)................................................................................. 30, 31

*Bellinder v. Microsoft*,
2001 WL 1397995 (Kan. Dist. Ct. Sept. 7, 2001) ....................................................... 37

*Blake v. Abbott Labs., Inc.*,
1996 WL 134947 (Tenn. Ct. App. Mar. 27, 1996)....................................................... 48

*Bollinger v. Eldredge*,
524 N.W.2d 118 (S.D. 1994)........................................................................................ 22

*Bunker's Glass Co. v. Pilkington PLC*,
75 P.3d 99 (Ariz. 2003)................................................................................................ 33

*In re Cipro Cases I and II*,
121 Cal. App. 4th 402 (2004)....................................................................................... 31

*Comes v. Microsoft*,
646 N.W. 2d 440 (Iowa 2002)...................................................................................... 36

*Comes v. Microsoft,*
  696 N.W.2d 318 (Iowa 2005).................................................................................... 37

*Comty. Guardian Bank v. Hamlin,*
  898 P.2d 1005 (Ariz. App. Ct. 1995)........................................................................ 22

*Corbett v. Super. Ct.,*
  101 Cal. App. 4th 649 (2002)............................................................................ 30, 32

*Corwin v. Los Angeles Newspaper Service Bureau, Inc.,*
  4 Cal. 3d 842 (1971) ................................................................................................ 29

*Cox v. Microsoft Corp.,*
  2005 WL 3288130 (N.Y. Supr. Ct. N.Y. Cty. July 29, 2005)........................................ 44

*Credit Bureau Enters., Inc. v. Pelo,*
  608 N.W.2d 20 (Iowa 2000)..................................................................................... 22

*Cruz v. All Saints Healthcare System, Inc.,*
  625 N.W. 2d 344 (Wis. App. 2001)................................................................... 49-50

*Discover Bank v. Super. Ct.,*
  36 Cal. 4th 148 (2005), *abrogated on other grounds by AT&T Mobility LLC v.*
  *Concepcion,* 131 S. Ct. 1740 (2011)................................................................... 31, 32

*Elkins v. Microsoft Corp.,*
  174 Vt. 328 (2002).................................................................................................... 48

*First Atlantic Management Corp. v. Dunlea Realty Co.,*
  507 S.E.2d 56, 131 N.C. App. 242 (1998)........................................................... 44, 45

*In re Florida Microsoft Antitrust Litig.,*
  2002 WL 31423620 (Fla. Cir. Ct. Aug. 26, 2002) ...................................................... 35

*Friedman v. Microsoft Corp.,*
  141 P.3d 824 (Ariz. App. 2006) ................................................................................ 33

*Gordon v. Microsoft Corp.,*
  2001 WL 366432 (Minn. Dist. Ct. Mar. 30, 2001)............................................... 39, 40

*Goshen v. Mut. Life Ins. Co.,*
  98 N.Y.2d 314 (2002)............................................................................................... 43

*Holder v. Archer Daniels Midland Co.,*
  1998 WL 1469620 (D.C. Super. Ct. Nov. 4, 1998).................................................... 34

*Hopkins v. De Beers Centenary,*
  No. CGC-04-432954, 2005 WL 1020868 (Cal. Super. Ct. April 15, 2005)............ 30, 31

*Howe v. Microsoft Corp.,*
  656 N.W. 285 (N.D. 2003)................................................................................... 45, 46

*Hyde v. Abbott Labs.,*
  123 N.C. App. 572 (1996)......................................................................................... 45

viii

*Klussman v. Cross Country Bank*,
   134 Cal. App. 4th 1283 (2005)...................................................................................32

*Kraus v. Trinity Mgt. Svcs., Inc.*,
   23 Cal. 4th 116 (2000) ...............................................................................................32

*Landry v. Landry*,
   697 A.2d 843 (Me. 1997)............................................................................................22

*Lohman v. Daimler-Chrysler Corp.*,
   142 N.M. 437, 166 P.3d 1091, *cert. denied*, 142 N.M. 434, 166 P.3d 1088 (2007) ...... 43

*Lorix v. Crompton Corp.*,
   736 N.W.2d 619 (Minn. 2007)..............................................................................39-40

*Mack v. Bristol Myers Squibb*,
   673 So. 2d 100 (Fla. 1st DCA 1996) .........................................................................35

*Massachusetts Mutual Life Ins. Co. v. Super. Ct.*,
   97 Cal. App. 4th 1282 (2002)...............................................................................30, 32

*Mendoza v. County of Tulare*,
   128 Cal. App. 3d 403 (1982)......................................................................................31

*Meyers v. Bayer AG*,
   2006 WL 1228957 (Wis. App. May 9, 2006) .............................................................49

*Microsoft I-V Cases*,
   2000-2 (CCH) Trade Cas. ¶73,013 (Cal. Super. Ct. Aug. 29, 2000)......................30, 31

*Olstad v. Microsoft Corp.*,
   700 N.W. 2d 139 (Wis. 2005) ...................................................................................49

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
   85 N.Y.2d 20 (1995)..................................................................................................43

*Richmond v. Dart Indus., Inc.*,
   29 Cal. 3d 462 (1981) ................................................................................................31

*Romero v. Philip Morris Inc.*,
   137 N.M. 229, 109 P. 3d 768 (N.M. App. 2005) ........................................................42

*Rosack v. Volvo of Am. Corp.*,
   131 Cal. App. 3d 741 (1982), *cert. denied* 460 U.S. 1012 (1983) ...........................30, 31

*Sherwood v. Microsoft Corp.*,
   2003 WL 21780975 (Tenn. Ct. App. July 31, 2003)...................................................47

*Small v. Lorillard Tobacco Co.*,
   94 N.Y.2d 43 (1999)..................................................................................................44

*Sobolewski v. Kaltsas*,
   830 N.E.2d 247 (Mass. App. Ct. 2005) .....................................................................22

ix

*In re South Dakota Microsoft Antitrust Litig.*,
   657 N.W. 2d 668 (S.D. 2003) ........................................................................... 47

*State of California v. Levi Strauss & Co.*,
   41 Cal. 3d 460 (1986) ...................................................................................... 32

*Stetser v. TAP Pharmaceutical Products, Inc.*,
   165 N.C. App. 1 (2004) .................................................................................... 44

*Stutman v. Chemical Bank*,
   95 N.Y.2d 24 (2000) ......................................................................................... 43

*Teague v. Bayer AG*,
   671 S.E.2d 550 (N.C. App. 2009) .................................................................... 45

*Union Carbide Corp. v. Super. Ct.*,
   36 Cal. 3d 15 (1984) ........................................................................................ 29

*Waters v. Microsoft Corp.*,
   676 N.W. 2d 29 (Neb. 2004) ........................................................................... 41

**FEDERAL STATUTES**

15 U.S.C. §1 .................................................................................................... 7, 8

**STATE STATUTES**

Ariz. Rev. Stat. §§ 44-1401, *et seq.* .................................................................. 33

Cal. Bus. & Prof. Code §§ 16700, *et seq.* ......................................................... 29

Cal. Bus. & Prof. Code §§ 17200, *et seq.* ......................................................... 30

Cal. Civ. Proc. Code § 382................................................................................. 31

D.C. Code §§ 28-3901, *et seq.* .......................................................................... 33

D.C. Code §§ 28-4501, *et seq.* ..................................................................... 33, 34

Fla. Stat. Ann. §§ 501.201, *et seq.* ............................................................... 34, 35

Haw. Rev. Stat. §§ 480-1, *et seq.* ................................................................. 35, 36

Iowa Code Ann. §553.4, *et seq.* ....................................................................... 36

Kan. Stat. Ann. §§ 50-112, *et seq.* .................................................................... 37

Me. Rev. Stat. Ann. §§ 1101, *et seq.* ................................................................ 38

Mich. Comp. Laws §§ 445.771, *et seq.* ........................................................ 38, 39

Minn. Stat. §§ 325D.49, *et seq.* ........................................................................ 39

Miss. Code Ann. §§ 75-21-1, *et seq.* ................................................................ 40

Neb. Rev. Stat. §§ 59-801, *et seq.* ................................................................................... 41

Neb. Rev. Stat. §§ 59-1601, *et seq.* ................................................................................. 41

Nev. Rev. Stat. §§ 598A, *et seq.* ................................................................................. 41, 42

N.M. Stat. Ann. §§ 57-1-1, *et seq.* ................................................................................... 42

N.Y. Gen. Bus. Law §§ 340, *et seq.* ................................................................................. 43

N.Y. Gen. Bus. Law § 349 ............................................................................................ 43, 44

N.C. Gen. Stat. §§ 75, *et seq.* .................................................................................... 44, 45

N.D. Cent. Code §§ 51-08.1-01, *et seq.* ........................................................................... 45

S.D. Codified Laws, §§ 37-1-3.1, *et. seq.* ........................................................................ 46

Tenn. Code Ann. §§ 47-25-101, *et seq.* ............................................................................ 47

Vt. Laws P.A. 65 (H. 301) (2000) ...................................................................................... 48

Vt. Stat. Ann. tit. 9, §§ 2451, *et. seq.* ............................................................................... 48

W. Va. Code §§47-18-1, *et seq.* .................................................................................. 48, 49

Wis. Stat. Ann. §§ 133.03, *et seq.* .................................................................................... 49

**FEDERAL RULES**

Fed. R. Civ. P. 23 ................................................................................................... *passim*

**OTHER AUTHORITIES**

Class Action Fairness Act, 119 Stat. 4, Pub. L. 109-2 ......................................................... 2

1 Alba Conte & Herbert B. Newberg, Newberg On Class Actions,
§4:25 (4th ed. 2005) ......................................................................................................... 23

xi

# I.     INTRODUCTION

This is a straightforward price-fixing case, ideally suited for class certification.  For more than a decade, the Defendant cathode ray tube ("CRT") manufacturers and their named co-conspirators artificially inflated CRT prices by agreeing to fix prices, limit production and allocate market shares and customers of CRTs.

The evidence demonstrating the existence and effectiveness of this conspiracy is staggering.  More importantly, this overwhelming corpus of evidence is common to all putative class members.  Specifically, the Defendants' own documents, data and testimony unequivocally demonstrate that they conspired to fix the prices of CRTs and that this illegal conduct harmed members of the putative classes.  Thus far, Defendants' illegal conduct has resulted in a myriad of governmental investigations, indictments, a guilty plea, and substantial fines.

This type of price-fixing case is routinely certified.  In fact, many of the Defendants in this case were the same defendants against whom a class was certified in a case involving the very product that ultimately replaced CRTs—LCDs.  *See In re TFT-LCD (Flat Panel) Antitrust Litig.,* No. M 07-1827 SI, 267 F.R.D. 583 (N.D. Cal. Mar. 28, 2010).  Many of the same *individuals* at these companies were involved in both conspiracies.

Like in the *LCDs* case, the Defendants here specifically targeted and injured consumers of televisions and computer monitors, and affected billions of dollars in commerce throughout the United States.  As Acting Assistant Attorney General in charge of the Antitrust Division Scott Hammond stated: "[t]his conspiracy harmed countless Americans who purchased computers and televisions using cathode ray tubes sold at fixed prices."  *See* Declaration of Mario N. Alioto at ¶ 2, Ex. 1.  This indirect purchaser case is the best vehicle to compensate American consumers who paid substantial overcharges as a result of Defendants' unlawful conduct.

1

## II.    ISSUES TO BE DECIDED

2

This multi-state, indirect-purchaser state-law antitrust class action is pending before

3

this Court based on diversity jurisdiction mandated by the Class Action Fairness Act

4

("CAFA").[1]  The Indirect-Purchaser Plaintiffs ("Plaintiffs") allege that Defendants fixed

5

prices of CRTs used in televisions and computer monitors and seek certification of 22

6

separate statewide damage classes under each state's antitrust/consumer protection laws

7

pursuant to Rule 23(b)(3).  Because the state classes are venued before this federal Court

8

on diversity jurisdiction, the rule long ago enunciated by the Supreme Court in *Erie R.R.*

9

*Company v. Tompkins*, 304 U.S. 64 (1938), and its progeny, must be followed.

10

Accordingly, Plaintiffs respectfully request that this Court certify 22 separate

11

Indirect-Purchaser Statewide Classes for damages under Rule 23(b)(3) procedural

12

standards and in accordance with the laws of each of the states listed in Appendix B,[2] with

13

the following definition:

14

> All persons and entities in [Indirect-Purchaser State[3]] who, from
> March 1, 1995 to November 25, 2007, as residents of [Indirect-

15

> Purchaser State], purchased Cathode Ray Tubes incorporated in
> televisions and monitors in [Indirect-Purchaser State] indirectly

16

> from any defendant or subsidiary thereof, or any named affiliate or
> any named co-conspirator, for their own use and not for resale.

17

> Specifically excluded from this Class are defendants; the officers,
> directors, or employees of any defendant; the parent companies and

18

> subsidiaries of any defendant; the legal representatives and heirs or
> assigns of any defendant; and the named affiliates and co-

19

> conspirators.  Also excluded are any federal, state, or local
> governmental entities, any judicial officers presiding over this

20

> action, members of their immediate families and judicial staffs, and
> any juror assigned to this action.

21

22

23

---

[1] 119 Stat. 4, Pub. L. 109-2.

24

[2] *See also* Indirect-Purchaser Plaintiffs' Third Consolidated Amended Complaint ("IP CAC"), ¶¶ 246-283.

25

[3] "Indirect-Purchaser State" refers to the following jurisdictions, separately:  Arizona, California, District of Columbia, Florida, Hawaii, Iowa, Kansas, Maine, Michigan,

26

Minnesota, Mississippi, Nebraska, Nevada, New Mexico, New York, North Carolina, North Dakota, South Dakota, Tennessee, Vermont, West Virginia, and Wisconsin.  The

27

applicable class period for Hawaii, Nebraska, and Nevada begins from June 25, 2002, July 20, 2002, and February 4, 1999, respectively. The proposed statewide classes are set forth

28

in the accompanying Notice of Motion and Proposed Order; *see also* Appendix B to this Motion.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF INDIRECT-
PURCHASER PLAINTIFFS FOR CLASS CERTIFICATION — MASTER FILE NO. CV-07-5944-SC,
MDL NO. 1917

1   In support of this Motion, Plaintiffs submit, *inter alia*, the Declaration of Dr. Janet

2   S. Netz ("Netz Decl."), an expert economist, and the Declaration of Mario N. Alioto

3   ("Alioto Decl.").

4   **III.   FACTUAL BACKGROUND**

5       **A.   An Overview Of The CRT Industry**

6           **1.   The Structure of the CRT Industry Was Conducive to a Conspiracy**



27

28   [4] CRTs are comprised of:  (1) color picture tubes ("CPTs") used in televisions; and (2) color display tubes ("CDTs") used in monitors.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF INDIRECT-PURCHASER PLAINTIFFS FOR CLASS CERTIFICATION — MASTER FILE NO. CV-07-5944-SC, MDL NO. 1917

1

2

3

        **2.**        **CRTs Have No Independent Utility, Are Discrete Parts of Finished Products, and Are Their Most Expensive Components**

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[5] Samsung SDI, Hitachi, Panasonic, Toshiba, Philips and LGE all sold CRTs to their corporate affiliates that manufactured CRT finished products.

**B.**     **Overwhelming Evidence Demonstrates That Defendants Participated In A Conspiracy**

**1.**     **The Evidence Unequivocally Shows That Defendants Fixed CRT Prices and Limited Production**

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF INDIRECT-PURCHASER PLAINTIFFS FOR CLASS CERTIFICATION — MASTER FILE NO. CV-07-5944-SC, MDL NO. 1917



[6] *See* Alioto Decl., ¶¶ 16-18, Exs. 15-17.
[7] *See id.* at ¶¶ 19-21, Exs. 18-20.
[8] *See id.* at ¶¶ 22-26, Exs. 21-25.
[9] *See id.* at ¶¶ 27-29, Exs. 26-28.
[10] *See id.* at ¶¶ 30-32, Exs. 29-31.

6

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF INDIRECT-
PURCHASER PLAINTIFFS FOR CLASS CERTIFICATION — MASTER FILE NO. CV-07-5944-SC,
MDL NO. 1917



### 2. The Results of Numerous Government Investigations Also Support the Existence of a Conspiracy

Investigations of Defendants' global price-fixing conspiracy by antitrust and competition authorities in the U.S. and elsewhere have resulted in indictments, significant fines and a guilty plea. Defendants are currently being investigated by: the U.S. Department of Justice ("DOJ"), the European Commission ("EC"), the Japanese Fair Trade Commission ("JFTC"), the Korean Fair Trade Commission ("KFTC"), the Canadian Competition Bureau ("CCB") and the Czech Office for the Protection of Competition ("COPC"). *See* Alioto Decl., ¶¶ 56-75, Exs. 55-74 (providing current status and findings of each investigation).

In the U.S., to date, the DOJ investigation has resulted in a guilty plea by Samsung SDI Co., Ltd. for violations of the Sherman Act, 15 U.S.C. §1, and a $32 million fine,[11] as well as the indictments of three former Chunghwa executives, one former Samsung SDI

---

[11] *See* Alioto Decl., ¶¶ 56-58, Exs. 55-57.

1    executive, and two former LG Philips Displays executives, all for violations of Section 1

2    of the Sherman Act, 15 U.S.C. § 1.  *See* Alioto Decl., ¶¶ 61-65, Exs. 60-64.

3         In addition, Chunghwa, and most of its employees and executives, have received

4    amnesty from prosecution for their participation in the CRT conspiracy and are

5    cooperating with the DOJ in its prosecution of the participants in the conspiracy.  Three

6    other former executives of Samsung SDI, were "specifically carved out" of Samsung SDI's

7    Amended Plea Agreement because "they are the most culpable individuals identified by

8    the government after extensive investigation."  *See* Alioto Decl., ¶ 65, Ex. 64.  The DOJ's

9    investigation into the CRT conspiracy is ongoing.

10        Although many of the international investigations are likewise ongoing, there have

11   already been a number of significant findings.  For example:

12   • The JFTC found that 11 CRT manufacturers had violated Article 3 of Japan's
      Antimonopoly law, by conspiring to fix the prices of CPTs, tubes used in the
13    manufacture of televisions.[12]  Fines imposed on 7 of the 11 companies totaled
      approximately JPY 4.255 billion (USD 48 million).
14

15   • The KFTC imposed fines totaling approximately KRW 26.271 million (USD 23.5
      million) against Samsung SDI Co., Ltd., LG Philips Display Korea Co., Ltd.,
16    Chunghwa Picture Tubes, Ltd. and two Chunghwa subsidiaries for conspiring to fix
      CRT prices and reduce supply from 1996 through 2006.[13]  A written KTFC
17    decision details hundreds of meetings from 1996 through 2006 at which the
      participants entered into agreements on pricing, customer allocation, market share,
18    production levels, how to keep the meetings secret and methods to monitor each
      other's implementation of the agreements reached.[14]

19   • The COPC fined Chunghwa Picture Tubes Ltd., Technicolor SA, Panasonic
      Corporation, MT Picture Display Co., Ltd., and Toshiba Corporation a combined
20    51.8 million koruna (USD 2.7 million) for their alleged involvement in the price-
      fixing cartel that ran from 1998 to 2004.[15]
21

22        Not only have the Defendants in this case been repeatedly found to have

23   participated in the CRT conspiracy alleged in the case at bar, but many of these same

24   Defendants have also been found to have participated in a related *subsequent* conspiracy

25

26

      _____

27   [12] *See id.* at ¶ 66, Ex. 65.
     [13] *See id.* at ¶ 68, Ex. 67.
28   [14] *See id.* at ¶ 69, Ex. 68.
     [15] *See id.* at ¶¶ 72-74, Exs. 71-73.

                                        8

involving LCDs.  *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-md-1827-SI (N.D. Cal.).

### 3. Many of the Defendants in This Case Participated in the Related LCD Conspiracy

The DOJ's investigation and prosecution of the LCD cartel and the ongoing parallel civil litigation have so far resulted in: (1) guilty pleas by seven companies and their executives to violations of Section 1 of the Sherman Act and criminal fines totaling $894 million; (2) a federal civil jury verdict against Toshiba Corporation for fixing the prices of LCD panels and an award of $87 million in damages incurred by the direct purchasers; (3) the criminal conviction of AU Optronics Corp., its American subsidiary and two of its executives for violation of Section 1 of the Sherman Act, which resulted in a $500 million fine against AUO and sentences of three years in prison for two of AUO's executives; (4) settlements totaling $1.082 billion between defendants and the indirect purchaser classes; and (5) settlements totaling $473 million between defendants and the direct purchaser class.

The CRT cartel began several years before the LCD cartel and was its precursor. Before being displaced by LCD panels, CRTs were the dominant display technology. Many of the same companies manufactured CRTs and LCD panels, including Samsung, Chunghwa, Hitachi, Toshiba, Philips, LG Electronics and Mitsubishi.  Several of these companies participated in both cartels.[16]  Further, some of the executives and employees who have been indicted for their participation in the CRT cartel were also indicted or pled

---

[16] The following defendants or their affiliated companies have paid criminal fines in the *LCD* case:  Chunghwa Picture Tubes, Ltd. ($65 million); Hitachi Displays, Ltd. ($31 million); LG Display Co., Ltd. (a joint venture between defendants LG Electronics, Inc. and Koninklijke Philips Electronics N.V., the two of which also formed a CRT joint venture that was involved in the CRT conspiracy) ($400 million).  A federal civil jury found that Toshiba Corporation had conspired to fix the prices of LCD panels and awarded $87 million in damages to the direct purchaser class. Samsung Electronics Co., Ltd. was given amnesty from prosecution because it was the first company to inform the DOJ of the existence of the LCD cartel and cooperated in the prosecution of its co-conspirators.

guilty to participating in the LCD cartel.[17]



Through Defendants' highly organized and well-documented meetings and communications, the CRT cartel, like the LCD cartel that followed it, proved to be effective and sustainable. The guilty plea by Samsung SDI, the indictments issued by the DOJ, the findings of other government investigations, as well as the documents that

---

[17] Chunghwa's former Chairman and CEO, Cheng Yuan Lin, a.k.a. C.Y. Lin, and Wen Jun Cheng, a.k.a. Tony Cheng, were both indicted for their participation in the CRT and TFT-LCD cartels. *See* DOJ indictments of C.Y. Lin, dated February 10, 2009, for price fixing CDT and CPT (Alioto Decl., ¶ 61, Ex. 60) and Tony Cheng, dated August 18, 2009, for price fixing CDT (Alioto Decl., ¶ 62, Ex. 61); DOJ indictments of C.Y. Lin and Tony Cheng, dated February 4, 2009 for price fixing TFT-LCD panels (Alioto Decl., ¶ 76, Ex. 75). Chunghwa's former Vice President of Sales, C.C. Liu, also participated in both the CRT and LCD cartels. Mr. Liu participated in the CRT conspiracy as a regular attendee of the Glass Meetings, but has escaped criminal prosecution by the DOJ under Chunghwa's amnesty application. For his participation in the TFT-LCD conspiracy, Mr. Liu pled guilty and served nine months in prison. *See* DOJ Plea Agreement of C.C. Liu, dated February 27, 2009 (Alioto Decl., ¶ 77, Ex. 76).
[18] *See In re TFT-LCD (Flat Panel) Antitrust Litig.,* 07-md-1827-SI (N.D. Cal.) (Dkt. 2694), Indirect-Purchaser Plaintiffs' Third Consolidated Amended Complaint, ¶¶ 138-46.

Defendants produced, provide an extensive, detailed account of the conspiracy, which was facilitated by the CRT industry structure and characteristics.  This overwhelming body of evidence is common to all putative class members.  As set forth in this Motion and Dr. Netz's Declaration, Defendants' conduct resulted in across-the-board price increases to indirect purchasers of CRTs incorporated into televisions and computer monitors.

**C.      Defendants' Conspiracy Harmed All Class Members**

**1.        Defendants' Price-Fixing Agreements Increased All CRT Prices**



MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF INDIRECT-PURCHASER PLAINTIFFS FOR CLASS CERTIFICATION — MASTER FILE NO. CV-07-5944-SC, MDL NO. 1917

**2.**     **The Cartel's Price Increases Passed Through to the Class Members**



## IV. CLASS CERTIFICATION IS APPROPRIATE IN THIS CASE

### A. The Standards For Class Certification

As the Supreme Court has recognized, antitrust class actions play an important role in the enforcement of the antitrust laws. *See Reiter v. Sonotone Corp.*, 442 U.S. 330, 344 (1979); *Hawaii v. Standard Oil Co. of Cal.*, 405 U.S. 251, 266 (1972). Accordingly, "courts resolve doubts in these actions in favor of certifying the class." *In re Rubber Chemicals Antitrust Litig.*, 232 F.R.D. 346, 350 (N.D. Cal. 2005).[19] "Courts have stressed that price-fixing cases are appropriate for class certification because a class-action lawsuit is the most fair and efficient means of enforcing the law where antitrust violations have been continuous, widespread, and detrimental to as yet unidentified consumers." *In re*

---

[19] *Accord In re Static Random Access Memory (SRAM) Antitrust Litig.*, No. C 07-01819 CW, 2008 WL 4447592, at *2 (N.D. Cal. Sept. 29, 2008); *In re Tableware Antitrust Litig.*, 241 F.R.D. 644, 648 (N.D. Cal. 2007); *Gonzalez v. Arrow Fin. Servs., LLC*, 489 F. Supp. 2d 1140, 1154 (S.D. Cal. 2007).

1  *TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 583, 592 (N.D. Cal. 2010), *amended in*
2  *part*, 2011 WL 3268649 (N.D. Cal. July 28, 2011) (internal citation omitted).[20]

3        To meet their burden for class certification, Plaintiffs must satisfy the four
4  requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy of
5  representation—and, show that the class action fits within at least one of the three types of
6  class actions described in Rule 23(b).  Here, Plaintiffs meet the threshold requirements of
7  Rule 23(a)(1) – (4), and the Indirect-Purchaser Statewide Classes for damages are
8  appropriate, and should be certified, under Rule 23(b)(3).  As this Court has recognized,
9  "[a]nalysis of these factors 'generally involves considerations that are enmeshed in the
10  factual and legal issues comprising the plaintiff's cause of action.'"  *Chavez v. Lumber*
11  *Liquidators Inc.*, No. CV-09-4812, 2012 WL 1004850, at *3 (N.D. Cal. Mar. 26, 2012)
12  (Conti, J.) (*citing Wal-Mart Stores, Inc. v. Dukes*, __U.S.__, 131 S.Ct. 2541, 2552 (2011)).
13  This analysis can require consideration of supplementary submissions beyond the
14  complaint.  *Holman v. Experian Information Solutions*, No. C-11-0180, 2012 WL
15  1496203, at *6 (N.D. Cal. Apr. 27, 2012).  Plaintiffs have provided these supplemental
16  submissions for the Court's consideration.

17        Even so, as the Ninth Circuit has stated, "[t]he Supreme Court thus recognized
18  over twenty years ago that rigorous analysis does not always result in a lengthy
19  explanation or in-depth review of the record."  *Chamberlan v. Ford Motor Co.*, 402 F.3d
20  952, 961 (9th Cir. 2005) (quoting *Gen. Tel. of Sw. v. Falcon*, 457 U.S. 157, 160 (1982)).
21  As the Supreme Court noted in *Dukes*, Rule 23 authorizes a limited inquiry into the merits
22  only for the purpose of determining if certification is proper.  131 S.Ct. at 2552 n.6.  The
23  Ninth Circuit explained this point in *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982,
24  983 n.8 (9th Cir. 2011):  "The district court is required to examine the merits of the
25  underlying claim in this context, only inasmuch as it may determine whether common

---

[20] *See also Ballard v. Equifax Check Serv., Inc.*, 186 F.R.D. 589, 600 (E.D. Cal. 1999)
("Class action certifications to encourage compliance with consumer protection laws are
desirable and should be encouraged." (citations omitted)).

questions exist; not to determine whether class members can prevail on the merits of their claims."

## B.   The Classes Satisfy The Rule 23(a) Requirements

### 1.   Class Members Are Sufficiently Numerous

Plaintiffs satisfy the numerosity requirement of Rule 23(a)(1) because joinder of all members of the Classes—consumers who purchased CRT finished products—would be impracticable.  Membership in the Classes is alleged to include "thousands" of members in the Indirect-Purchaser Statewide Classes, with all members geographically dispersed throughout the United States.  *See* IP CAC, ¶¶ 233-234; *see also In re Rubber Chemicals*, 232 F.R.D. at 350-51 ("geographically dispersed" class membership supports class certification).  Therefore, the class is sufficiently numerous.

### 2.   Common Questions of Law and Fact Exist

Plaintiffs meet the "permissively" construed elements of Rule 23(a)(2) because there are questions of both law and fact common to the Classes in this antitrust conspiracy action.  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) ("The commonality preconditions of Rule 23(a)(2) are less rigorous than the companion requirements of Rule 23(b)(3).  Indeed, Rule 23(a)(2) has been construed permissively"); *see also In re Sugar Industry Antitrust Litig.*, 1976 WL 1374, at *13 (N.D. Cal. May 21, 1976) ("Courts consistently have held that the very nature of a conspiracy antitrust action compels a finding that common questions of law and fact exist.").  Here, the common questions include, but are not limited to:

- whether Defendants formed and operated a conspiracy to fix, raise, maintain, or stabilize the prices of CRTs;

- whether Defendants' conspiracy resulted in an unlawful overcharge on the price of CRTs;

- whether the unlawful overcharge on the price of CRTs was passed-through to the indirect purchasers of CRT finished products; and

- whether the overcharge to indirect purchasers can be calculated using a common, formulaic method.

1   Only one significant issue of law or fact need be demonstrated to meet the commonality

2   requirement. *Dukes*, 131 S.Ct. at 2566.

3               **3.     The Named Plaintiffs Have Claims Typical of the Classes**

4           Plaintiffs, each of whom are members of one of the Indirect-Purchaser Statewide

5   Classes (*see* Appendix A), fulfill the typicality requirement of Rule 23(a)(3). This element

6   of Rule 23 is "liberally construed" and the "representative claims are 'typical' if they are

7   reasonably co-extensive with those of absent class members; they need not be substantially

8   identical." *Hanlon*, 150 F.3d at 1019-20; *see also Arnold v. United Artists Theatre Circuit*

9   *Inc.*, 158 F.R.D. 439, 449 (N.D. Cal. 1994) (typicality met where named plaintiffs' claims

10  "arise from the same remedial and legal theories" as the class claims). Differences as to

11  "the various products purchased and the . . . amount of damage sustained by individual

12  plaintiffs do not negate a finding of typicality, provided the cause of action arises from a

13  common wrong." *Thomas & Thomas Rodmakers Inc. v. Newport Adhesives & Composites*

14  *Inc.*, 209 F.R.D. 159, 164 (C.D. Cal. 2002) (internal quotation marks and citations

15  omitted).

16          Here, all members of the Classes, including Plaintiffs, purchased CRT finished

17  products containing Defendants' CRTs and allege that they were overcharged as a result of

18  Defendants' collusive conduct. All members of the Indirect-Purchaser Statewide Classes

19  will prove their damages in the same way: first, by establishing the amount of the illegal

20  overcharge on CRTs, and, second, by demonstrating the amount of the illegal overcharge

21  that was passed through to the price of CRT finished products. The Netz Declaration

22  establishes that this can be done on a common basis. Thus, the proof does not depend on

23  any class member's individual circumstances, and in fact, the proof offered would be the

24  same regardless of the number or location of class members. All members of each of the

25  statewide classes will base their claims on the same facts and same laws for each of those

26  states.

27

28

### 4.   Plaintiffs and Counsel Will Adequately Represent the Classes

Plaintiffs and Interim Lead Counsel Trump, Alioto, Trump & Prescott LLP satisfy the Rule 23(a)(4) "adequacy" requirements because:  (1) the proposed representatives do not have conflicts of interest with the proposed Classes; and (2) the representatives are represented by qualified counsel.  *See Hanlon*, 150 F.3d at 1020; *Walters v. Reno*, 145 F.3d 1032, 1046 (9th Cir. 1998).[21]

All members of the Classes share an interest in establishing Defendants' antitrust liability.  *See Tableware*, 241 F.R.D. at 649 ("[m]embers of the class were allegedly overcharged for tableware and have a mutual and coterminous interest in establishing defendants' liability and recovering damages.")

Plaintiffs here are individuals and small businesses from around the country who seek to serve as representatives for the Classes.  All of them are willing to fulfill their responsibilities as representatives of the Classes.  These plaintiffs have already produced documents, answered interrogatories, and many have appeared for depositions with the remainder scheduled to be completed by mid-November.  Information about each of the proposed representatives is set forth in Appendix A.  There are no conflicts among members of the Classes, and certification of the Classes is appropriate.

Plaintiffs have been well represented by Interim Lead Counsel Trump, Alioto, Trump & Prescott LLP.  The law firm of Trump, Alioto, Trump & Prescott LLP, ably assisted by numerous other firms representing Plaintiffs, has devoted considerable time and resources to prosecuting this action vigorously since its inception, and is committed to continuing to do so through the course of this litigation.  The firm has overseen the litigation strategy, the briefing and argument of motions, the coordination and review of millions of pages of document discovery from Defendants and third parties, the taking and

---

[21] Rule 23 was amended in 2003 so that proposed class counsel is assessed under subdivision (g), rather than under subdivision (a)(4).  Subdivision (g) does not introduce a new element to the class certification procedure, but instead "builds on" prior case law.  *See* Fed. R. Civ. P. 23(g) Advisory Committee Note to 2003 Amendments.

defending of dozens of depositions, and the retention of experts.  The firm is prepared to serve, and should be appointed, as Lead Counsel for the Classes.

### C.    Certification Of Statewide Classes Under State Substantive Laws For Damages Is Appropriate

The Court should certify the 22 Indirect-Purchaser Statewide Classes using the appropriate procedure of Rule 23(b)(3).  Upon meeting the Rule 23(b)(3) requirements that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy," all of the state-law damage claims should be certified for individual statewide classes under each state's substantive class action precedent.  As demonstrated in Appendix C, such statewide classes are regularly certified in both state and federal courts.  Although the "predominance" and "superiority" considerations are interrelated, it is appropriate to address them separately.  *See, e.g., Valentino v. Carter-Wallace Inc.*, 97 F.3d 1227 (9th Cir. 1996).

### 1.    A Class Action is Superior to Other Available Methods of Adjudication

"A class action is the superior method for managing litigation if no realistic alternative exists." *Valentino*, 97 F.3d at 1234.  The Supreme Court has explained that the main purpose of Rule 23(b)(3)-type class actions is to vindicate "the rights of groups of people who individually would be without effective strength to bring their opponents into court at all," such as those whose individual recoveries would be too small to warrant an individual suit. *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 617 (1997).  In determining whether a class action is the superior method, the court must consider the four non-exclusive factors identified in Rule 23(b)(3):

> (A)  the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B)  the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C)  the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D)  the likely difficulties in managing a class action.

Rule 23(b)(3); *see Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas*, 244 F.3d 1152, 1163 (9th Cir. 2001).  Analysis of these factors demonstrates that this class action is a superior method to adjudicate the matter.

### a.  There is No Realistic Alternative to a Class Action for Class Members to Recover the Damages Caused by Defendants

Where the damages suffered by each putative class member are not large, the first factor weighs in favor of certifying a class action.  *See Wiener v. Dannon Co., Inc.*, 255 F.R.D. 658, 671 (C.D. Cal. 2009).  Here, the damages suffered by members of the Indirect-Purchaser Statewide Classes will be measured in relation to the purchase price paid for CRT finished products, such as televisions and computer monitors.  In the aggregate, these purchases are significant.  But, each member's individual purchase of a CRT finished product, costing at most a few thousand dollars, cannot sustain the costs associated with an antitrust conspiracy action against large multinational corporations.

As the court recognized in *Hanlon*, 150 F.3d at 1023, this disparity between claims and the costs of complex litigation creates several disadvantages for individual plaintiffs, including "less litigation or settlement leverage, significantly reduced resources and no greater prospect for recovery."  *See also Local Joint Executive Bd. of Culinary/Bartender Trust Fund*, 244 F.3d at 1163 ("If plaintiffs cannot proceed as a class, some—perhaps most—will be unable to proceed as individuals because of the disparity between their litigation costs and what they hope to recover.").  Permitting the members of the Indirect Purchaser Statewide Classes, who individually would be unable to vindicate their rights, to collectively assert their causes of action is consistent with the primary purpose of a Rule 23(b)(3)-type class action.  *See Amchem*, 521 U.S. at 617.  Accordingly, the first factor here weighs heavily in favor of the superiority of certifying the Indirect-Purchaser Statewide Classes.

19

### b.    This Court is the Only Available Forum

Because of diversity jurisdiction created by CAFA, indirect-purchaser cases formerly litigated in state courts now must be litigated in federal courts.  Thus, the answer to the second and third factor of the superiority inquiry—existence of collateral litigation, and desirability of concentrating litigation in the particular forum, respectively—has already been provided by CAFA's mandates and the Judicial Panel on Multidistrict Litigation.  This Court is the only available forum.

Plaintiffs here also have standing to bring claims on behalf of end-users of CRT finished products.  This case, therefore, represents U.S. consumers' best opportunity to recover the overcharges they paid as a result of Defendants' unlawful price-fixing conspiracy.[22]

Significantly, in the related criminal case, Defendant Samsung SDI has represented to the court that the pending civil cases are the appropriate forum for compensating the victims of Defendants' unlawful behavior.  *See* Alioto Decl., ¶¶ 57, 59, Exs. 56, 58.  Samsung SDI even went so far as to suggest that Plaintiffs were likely to win class certification in this case because they have done so in other recent cases.  *See id.* at ¶ 59, Ex. 58.  Based on these representations, the DOJ recommended the imposition of a smaller fine against Samsung SDI.  *See id.* at ¶ 60, Ex. 59.  In other words, Samsung SDI escaped the imposition of a larger criminal fine by persuading Judge Alsup and the DOJ that this Court was the appropriate forum for compensation of the victims of the CRT cartel.

At this point, only this Court is in a position to provide a remedy to the indirect purchasers.  Therefore, the second and third factors support certification of the Indirect-Purchaser Statewide Classes.

---

[22] *Compare* Judge Legge's Report and Recommendation Regarding Defendants' Joint Motion for Summary Judgment (May 31, 2012) (Dkt. 1221) (granting Defendants' motion for summary judgment and holding that Direct Purchaser Plaintiffs and the Direct Action Plaintiffs who purchased CRT Finished Products do not have standing as direct purchasers to bring a claim under Section 1 of the Sherman Act).

20

1

2

              **c.**      **Class Certification is More Manageable Than Any Other Procedure Available**

3

      The fourth element, manageability, weighs in Plaintiffs' favor because certification

4

of the Indirect-Purchaser Statewide Classes would be far superior to, and more manageable

5

than, any other procedure available for the treatment of the factual and legal issues raised

6

by Plaintiffs' claims. *See Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181, 189

7

(N.D. Ill. 1992) ("What would be unmanageable is the institution of numerous individual

8

lawsuits."); *In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 700 (S.D. Fla.

9

2004) ("Multiple lawsuits brought by thousands of consumers and third-party payors in

10

seventeen different states would be costly, inefficient, and would burden the court

11

system.").

12

      Courts in this Circuit and elsewhere have frequently certified classes under the laws

13

of multiple jurisdictions, recognizing the substantial similarity among the unjust

14

enrichment, antitrust, and consumer protection laws of various states. *See, e.g., In re TFT-*

15

*LCD (Flat Panel) Antitrust Litig.,* 267 F.R.D. at 608-13 and 2011 WL 3268649, at *6

16

(certifying 24 indirect-purchaser statewide classes under the various state antitrust,

17

consumer protection, and unjust enrichment laws); *In re Abbott Labs Norvir Anti-Trust*

18

*Litig.*, 2007 WL 1689899, at *8 (N.D. Cal. June 11, 2007) (certifying class under the

19

common law of 48 states); *In re Pharm. Indus. Average Wholesale Price Litig.*, 233 F.R.D.

20

229, 230-31 (D. Mass. 2006) (certifying multi-state defendant subclasses under the

21

consumer protection laws of 39 states).

22

      Here, the Indirect-Purchaser Statewide Classes are easily managed due to the

23

substantial similarity of the laws at issue.  For example, Plaintiffs assert claims for unjust

24

enrichment in eight of the Indirect-Purchaser Statewide Classes.[23]  Courts in California,

25

Michigan, and New Mexico have expressly followed or cited with approval the

26

Restatement's definition of unjust enrichment.  *In re Terazonsin*, 220 F.R.D. at 697;

27

 

28

---

[23] Arizona, California, District of Columbia, Iowa, Maine, Michigan, New Mexico, and South Dakota.

1   *Sobolewski v. Kaltsas*, 830 N.E.2d 247 (Mass. App. Ct. 2005). While Arizona, the District

2   of Columbia, Iowa, Maine and South Dakota do not cite the Restatement, the elements of

3   an unjust enrichment claim in those states mirror those of the Restatement. *Id.*; *Comty.*

4   *Guardian Bank v. Hamlin*, 898 P.2d 1005, 1008 (Ariz. App. Ct. 1995); *4934, Inc. v.*

5   *District of Columbia Dep't of Employment Servs.*, 605 A.2d 50, 55 (D.C. 1992); *Credit*

6   *Bureau Enters., Inc. v. Pelo*, 608 N.W.2d 20, 25 (Iowa 2000); *Landry v. Landry*, 697 A.2d

7   843, 845 (Me. 1997); *Bollinger v. Eldredge*, 524 N.W.2d 118, 123 (S.D. 1994); *see also*

8   *Singer v. AT&T Corp.*, 185 F.R.D. 681, 692 (S.D. Fla. 1998) (unjust enrichment is a

9   "universally recognized cause[] of action that [is] materially the same throughout the

10  United States").

11          Furthermore, as demonstrated in section IV.C.3., *infra*, the 21 classes with state

12  antitrust claims, and the nine classes with state consumer protection claims, all share

13  substantially the same cause of action elements.[24]  Any variations in state law can be

14  readily managed by grouping the Indirect-Purchaser States in accordance with common

15  requirements for antitrust and consumer protection claims.  Therefore, class resolution of

16  Plaintiffs' state law claims is superior to other available methods in order to offer those

17  with small claims the opportunity for meaningful redress. *Norvir*, 2007 WL 1689899, at

18  *10.  Accordingly, all elements of the "superiority" inquiry weigh in favor of certification.

19          Even if the laws of the various states were not so similar, this Court is bound to

20  apply each of them under *Erie*, and as noted above, state courts are no longer an option for

21  resolution of these claims.  All of the various state claims are before this Court as a result

22  of CAFA and the Judicial Panel on Multidistrict Litigation's order transferring all CRT

23  cases to this Court.  As discussed below, California and numerous other states have a well-

24  developed body of law permitting, encouraging, and certifying indirect-purchaser

25  consumer class actions, particularly in antitrust litigation; none of that law has been altered

26

27  [24] *Accord Hanlon*, 150 F.3d at 1022 ("In this case, although some class members may
    possess slightly differing remedies based on state statute or common law, the actions
28  asserted by the class representatives are not sufficiently anomalous to deny class
    certification.").

1   by CAFA or any other federal statute.  Each of the 22 proposed statewide classes is

2   separately manageable, as are the classes as a whole.

### 2.   Common Questions of Law and Fact Predominate

#### a.   Predominance is Readily Met in Antitrust Cases

5   "Predominance," under Rule 23(b)(3), "is a test readily met in certain cases

6   alleging consumer or securities fraud or violations of the antitrust laws." *Amchem*, 521

7   U.S. at 625.  "In price-fixing cases, courts repeatedly have held that <u>the existence of the</u>

8   <u>conspiracy is the predominant issue</u> and warrants certification even where significant

9   individual issues are present." *Thomas & Thomas*, 209 F.R.D at 167 (internal quotation

10  marks and citation omitted) (emphasis added).

11  "The very definition of the requirement of the predominance of common questions

12  contemplates that individual issues will remain after the common issues are adjudicated."

13  1 ALBA CONTE & HERBERT B. NEWBERG, NEWBERG ON CLASS ACTIONS, § 4:25 at 4-82

14  (4th ed. 2005).  Class certification does not require that common questions be "completely

15  dispositive of a litigation as to all potential members of the class" nor "dispositive of the

16  entire litigation." *In re Sugar Industry Antitrust Litig.*, 73 F.R.D. 322, 344 (E.D. Pa. 1976).

17  The requirement "is satisfied unless it is clear that individual issues will overwhelm the

18  common questions and render the action valueless." *In re Cardizem CD Antitrust Litig.*,

19  200 F.R.D. 326, 339 (E.D. Mich. 2001).  Where the claims are "uniformly premised" on a

20  "shared factual predicate" which gives rise to common legal issues, the predominance

21  requirement is satisfied. *In re Napster, Inc. Copyright Litig.*, 2005 WL 1287611, at *7

22  (N.D. Cal. June 1, 2005).

23  Here, Plaintiffs' claims are based on a "shared factual predicate"—Defendants'

24  undeniable conspiracy.  All will be resolved by presentation of an overwhelming corpus of

25  evidence including documents, testimony, and economic analysis.  Such common proof

26  will demonstrate liability and impact on a class-wide basis, and a reasonable method for

27  ascertaining damages.

28

### b.   Common Questions of Liability in This Conspiracy Predominate

Predominant questions of law and fact exist because of class members' common interest in proving the existence and scope of the alleged conspiracy.  Common issues predominate in proving an antitrust violation when <u>the focus is on the defendants' conduct and not on the conduct of the individual class members</u>.  *See, e.g., In re Relafen Antitrust Litig.*, 221 F.R.D. 260, 275 (D. Mass. 2004) ("The alleged antitrust violation relates solely to SmithKline's conduct, and as such, constitutes a common issue subject to common proof."); *Norvir*, 2007 WL 1689899, at *9 ("Common to all class members and provable on a class-wide basis is whether Defendant unjustly acquired additional revenue or profits by virtue of an anti-competitive premium on the price of Norvir.").

Class certification does not require that the common questions be completely dispositive of the litigation.  *In re Sugar Indust.*, 73 F.R.D. at 344.  The differences among class members regarding the manner of purchase and payment, the design specifications of the CRT products they purchased, and the amounts they paid relate solely to the amount of damages and are not relevant to determining Plaintiffs' underlying liability claims.  Thus, the overriding need to prove antitrust conspiracy in the CRT market is alone sufficient to satisfy the Rule 23(b)(3) "predominance" requirement.

### c.   Common Questions Also Predominate With Respect to Economic Impact and Plaintiffs Have a Reliable Quantitative Method to Show Impact

Although not required for class certification, Plaintiffs have chosen to propose the question of whether Defendants' conspiracy harmed indirect purchasers, as yet another issue that is uniform to the Classes and adds to the overall predominance of common questions.  Plaintiffs have offered qualitative expert opinion supporting commonality of impact.  Common evidence of impact includes characteristics of the CRT industry and the product, Defendants' systematic collusive communications with one another, Defendants' resulting pricing behavior, and other facts.  Netz Decl. at 15-58; *see In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*, 256 F.R.D. 82, 103 (D. Conn. 2009)

1    (applying *In re Initial Public Offerings Securities Antitrust Litig.*, 471 F.3d 24 (2d Cir.

2    2006), and holding that, "regardless of the efficacy of the plaintiffs' economic modeling,

3    the plaintiffs have presented factual evidence" that would predominate concerning the

4    proof of harm to class members).

5        In addition to the foregoing qualitative expert opinion, Plaintiffs have also offered

6    quantitative expert statistical analysis to present yet another method that will show by

7    common classwide proof the fact (and amount) of harm to each class member.  Netz Decl.

8    at 65-107.

9        Importantly, the inquiry with respect to the expert analysis method of showing

10   common impact is a very limited one at this stage:  "At this early stage, robust gatekeeping

11   of expert evidence is not required; rather, the court should ask only if expert evidence is

12   'useful in evaluating whether class certification requirements have been met.'"  *Ellis v.*

13   *Costco Wholesale Corp.,* 240 F.R.D. 627, 635 (N.D. Cal. 2007) (citation omitted).

14       In the Ninth Circuit, the inquiry is rather whether the plaintiffs' method of proof is

15   a form of common evidence.  *In re TFT-LCD (Flat Panel) Antitrust Litig.,* 267 F.R.D. 291,

16   313 (N.D. Cal. 2010) ("[O]n a motion for class certification, the Court only evaluates

17   whether the method by which plaintiffs propose to prove class-wide impact could prove

18   such impact, not whether plaintiffs in fact can prove class-wide impact."); *see also In re*

19   *Live Concert Antitrust Litig.,* 247 F.R.D. 98, 110-14 (C.D. Cal. 2007); *In re Dynamic*

20   *Random Access Memory (DRAM) Antitrust Litig.,* No. M 02-1486-PJH, 2006 WL

21   1530166, at *9 (N.D. Cal. June 5, 2006); *In re Rubber Chemicals*, 232 F.R.D. at 354

22   ("[A]ssessing whether to certify a class, the court's inquiry is limited to whether or not the

23   proposed methods are so insubstantial as to amount to no method at all.") (citations

24   omitted); *In re Indus. Diamonds Antitrust Litig.*, 167 F.R.D. 374, 384 (S.D.N.Y.1996)

25   ("[W]e need not consider [defendants' expert declaration] in detail, as it is for the jury to

26   evaluate conflicting evidence and determine the weight to give the experts' conclusions.").

27

28

The Declaration of Dr. Netz accompanying this Motion demonstrates, through the application of economic theory, the analysis of data, and ample documentary evidence, that Defendants' price-fixing conspiracy had a common impact on indirect-purchaser class members.  In particular, Dr. Netz' descriptive and statistical analyses show the following:

- The characteristics of the industry and pricing data indicate that the Defendants' conspiracy was effective in raising prices of CRTs above competitive levels (Netz Decl. at 15-65);

- Any price increases that Defendants agreed upon affected the prices paid by all direct purchasers at the top of the chain of distribution (Netz Decl. at 65-72); and

- The commonly imposed higher prices to direct purchasers were passed through into commonly higher prices to indirect purchasers (class members) at the bottom of the chain of distribution (Netz Decl. at 72-83).

Additionally, both the overcharge from the Defendants to direct purchasers of CRTs (such as finished product manufacturers or distributors), and the pass-through rate of that overcharge to indirect purchasers (members of the Classes) can be measured on a common, formulaic basis.  Netz Decl. at 83-107.  This economic and factual showing more than suffices to establish that impact can be demonstrated on a classwide basis under any standard.

### d.  Common Questions Also Predominate Regarding the Measure of the Amount of Damages

Plaintiffs have also chosen to propose the question of whether Plaintiffs can prove the amount of damages to members of the Classes on a common, formulaic basis, as yet another question that supports a finding of predominance.  *Compare Blackie v. Barrack*, 524 F.2d, 891, 905 (9th Cir. 1975) ("The amount of damages is invariably an individual question and does not defeat class action treatment.").  The burden to qualify the damages proof as yet another common question is a modest one.  *See In re Rubber Chemicals*, 232 F.R.D. at 354 ("Plaintiffs do not need to supply a precise damage formula at the certification stage of an antitrust action. . . .  [Rather, Plaintiffs need only] . . . have proffered a method that is not so insubstantial or unreasonable as to amount to no method

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF INDIRECT-PURCHASER PLAINTIFFS FOR CLASS CERTIFICATION — MASTER FILE NO. CV-07-5944-SC, MDL NO. 1917

1    at all.").

2        Here, Plaintiffs easily meet this modest burden to show yet another common

3    question supporting a finding of predominance.  In her declaration, Dr. Netz describes four

4    widely accepted and feasible methods for calculating the "but-for" CRT prices (and thus

5    overcharges to direct purchasers at the top of the chain of distribution):  (1) a regression

6    analysis of price determinants based on a competitive time period; (2) a simulation model

7    of prices; (3) an analysis of relationship between market power and prices; and (4) a

8    benchmark comparison to a proxy for the competitive outcome.  All of these methods are

9    implemented using common, market-level data.  Netz Decl. at 83-97.

10       In the *LCD* case, Judge Illston determined that Dr. Netz's proposed methodologies

11   were sufficient to certify the indirect-purchaser classes.  In subsequent orders denying

12   multiple defendant summary judgment motions, a motion to decertify the classes, and a

13   *Daubert* attack on the indirect-purchaser experts, Judge Illston repeatedly affirmed that Dr.

14   Netz's opinions provided a reasonable basis for creating a triable issue of fact.[25]

15       Dr. Netz also describes how regression analysis can be applied to measure the rate

16   of pass-through of the overcharges on CRTs down the chain of distribution to CRT

17   finished product prices paid by indirect-purchaser class members.  Netz Decl. at 97-117.

18   Here, while not required at the class certification stage, Dr. Netz goes beyond just

19   providing a sound methodology, and, in fact, implements 40 complete pass-through studies

20   using third-party data produced in this litigation.  Again, this Court is provided with

21

22   ───────────────────
     [25] *See* the following orders, filed in *In re TFT-LCD (Flat Panel) Antitrust Litig.*: 267
23   F.R.D. 583, 606 (N.D. Cal. 2010), *amended in part*, 2011 WL 3268649 (N.D. Cal. July 28,
     2011) (holding that indirect-purchaser plaintiffs "have presented plausible methodologies
24   for demonstrating class-wide impact . . . [and] have met their burden to show that damages
     can be established using common proof"); 2011 WL 4345446 (N.D. Cal. Sept. 15, 2011)
25   (finding that Dr. Netz's methodology for calculating Mr. Luber's individual damages
     supported a denial of summary judgment because the amount of Mr. Luber's loss is a
26   question for the jury); 2011 WL 4479522 (N.D. Cal. Sept. 26, 2011) (holding that Dr.
     Netz's pricing study provided adequate evidence to create a triable issue of fact regarding
27   LG's purported withdrawal); 2011 WL 6148677 (N.D. Cal. Dec. 7, 2011) (relying on
     testimony from Dr. Netz as evidence to support a finding that IPPs have antitrust standing);
28   and 2012 WL 555090 (N.D. Cal. Feb. 21, 2012) (finding that none of defendants' attacks
     on Dr. Netz's testimony warranted exclusion of her testimony).

1  concrete evidence that Dr. Netz can implement her methodology to calculate damages to

2  class members on a common, formulaic basis.

3       Given the proven feasibility of calculating the overcharge to direct purchasers and

4  estimating how CRT price increases are passed through to CRT finished product prices,

5  the damages to class members can be quantified using common evidence on a common

6  formulaic basis.  Netz Decl. at 105-108.

7                    **3.        The Indirect-Purchaser Statewide Classes Should be Certified**

8       As described above, the Indirect-Purchaser Statewide Classes should be certified

9  because the predominance requirement is satisfied under Rule 23(b)(3).  Federal courts

10  determining certification of state classes routinely apply substantive state-law standards as

11  part of their Rule 23 analyses.  For each Class, the applicable legal standards for class

12  certification are set forth below.  The question of whether Defendants' conspiracy harmed

13  indirect purchasers is similarly a question in which common questions of law and fact

14  predominate.  Injury and damages do not present predominately individual issues because

15  California and other repealer states' laws permit an inference of classwide injury or

16  classwide proof of damages.

17       For example, in *Relafen*, the court granted in part the plaintiffs' motion for class

18  certification of state law antitrust claims.  *In re Relafen*, 221 F.R.D. at 260.  The court held:

19  "the Court must examine the end payer plaintiffs' claims under governing state law . . .

20  state law defines the elements of the end payor plaintiffs' claims and in turn, proves

21  relevant to determining the demonstration of common injury necessary for certification."

22  *Id.* at 276; *In re New Motor Vehicles Canadian Export Antitrust Litig.*, 235 F.R.D. 127,

23  132-36 (D. Maine), *rev'd on other grounds*, 522 F.3d 6 (1st Cir. 2008).  Moreover, for

24  purposes of substantive issues such as burdens of proof and inferences, a federal court

25  must rely on the substantive law in question when determining if the procedural

26  requirements of Rule 23 are satisfied.[26]

27

28  [26] Courts sitting in diversity are bound to follow state substantive law unless it conflicts
with a Federal Rule.  *Erie*, 304 U.S. at 64; *Walker v. Amco Steel Corp.*, 446 F.R. 740, 749-

28

1    Since CAFA was enacted, state antitrust claims are now litigated almost

2  exclusively in federal courts.  This procedural change must not eviscerate consumers'

3  substantive antitrust rights and the state's legislative intent to retain the availability of

4  indirect-purchaser suits as a viable and effective means of enforcing state antitrust laws.

5                               **a.      California**

6    California's antitrust law, the Cartwright Act, Cal. Bus. & Prof. Code §§ 16700, *et*

7  *seq.*, prohibits combinations between two or more persons to "[a]gree in any manner to

8  keep the price of [a product] . . . at a fixed or graduated figure," or to "[e]stablish or settle

9  the price of any [product] . . . , so as directly or indirectly to preclude a free and

10  unrestricted competition among themselves, or any purchasers or consumers in the sale or

11  transportation of [the product]." *Id.* § 16720(e)(2) and (3).  The California Supreme Court

12  has specifically identified "price-fixing" as among the business practices "which because

13  of their pernicious effect on competition and lack of any redeeming virtue are conclusively

14  presumed to be unreasonable and therefore illegal without elaborate inquiry as to the

15  precise harm they have caused or the business excuse for their use." *Corwin v. Los*

16  *Angeles Newspaper Service Bureau, Inc.*, 4 Cal. 3d 842, 853 (1971) (*quoting Northern*

17  *Pac. R. Co. v. United States*, 356 U.S. 1, 5 (1958)).

18    When the legislature enacted the Cartwright Act, it delivered "a mandate to avoid

19  unnecessary procedural barriers to indirect purchasers' prosecution of California antitrust

20  suits" and "to retain the availability of indirect-purchaser suits as a viable and effective of

21  means of enforcing California's anti-trust laws." *Union Carbide Corp. v. Super. Ct.*, 36

22  Cal. 3d 15, 21-22 (1984).  The California Supreme Court clarified that "indirect purchasers

23  are persons 'injured' by illegal overcharges passed on to them in the chain of distribution."

24  _____

25  50 (1980); *U.S. ex rel. Newsham v. Lockheed Missiles & Space Co., Inc.*, 190 F.3d 963
(9th Cir. 1999); *Computer Economics, Inc. v. Gartner Group, Inc.*, 50 F. Supp. 2d 980, 990

26  (S.D. Cal. 1999) ("[s]tate rules that define . . . presumptions, [or] burdens of proof . . . are
so obviously substantive that their application in diversity actions is required.") (citations

27  omitted).  Fed. R. Civ. P. 23, like all Rules, is to be interpreted "with sensitivity to
important state interests and regulatory policies." *Gasperini v. Center for Humanities,*

28  *Inc.*, 518 U.S. 415, 428 n.7 (1996).

1  *Id.* at 20.  Courts regularly certify classes of indirect purchasers on Cartwright Act claims.

2  *See, e.g., Rosack v. Volvo of Am. Corp.*, 131 Cal. App. 3d 741, 760-62 (1982), *cert. denied*

3  460 U.S. 1012 (1983); *In re Terazosin,* 220 F.R.D. at 695, 702.

4       California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code, §§ 17200,

5  *et seq.*, defines "unfair competition" to include "any unlawful, unfair or fraudulent

6  business act or practice."  *Id.* § 17200.  The UCL extends to antitrust violations such as

7  price-fixing, and UCL claims are commonly certified for class treatment.  *See Corbett v.*

8  *Super. Ct.*, 101 Cal. App. 4th 649, 654-55 (2002); *Massachusetts Mutual Life Ins. Co. v.*

9  *Super. Ct.*, 97 Cal. App. 4th 1282, 1292 (2002) ("plaintiffs' UCL claim presents common

10  legal and factual issues which were plainly suitable for treatment as a class action.*"); Rees*

11  *v. Souza's Milk Transp. Co.*, 2006 WL 738987, at *9 (E.D. Cal. Mar. 22, 2006) (certifying

12  class on UCL claim); *Relafen*, 221 F.R.D. at 283 (certifying California end-purchaser class

13  under UCL).

14       California's well-established law permits an inference of antitrust impact to indirect

15  purchasers by horizontal *per se* illegal price-fixing conspiracies.  *Rosack*, 131 Cal. App. 3d

16  at 760 ("contentions of infinite diversity of product, marketing practices, and pricing have

17  been made in numerous cases and rejected.  Courts have consistently found the conspiracy

18  issue the overriding, predominant question"); *B.W.I. Custom Kitchen v. Owens-Illinois,*

19  *Inc.*, 191 Cal. App. 3d 1341, 1352 (1987) (holding presumption of injury appropriate in

20  indirect-purchaser class action, noting "courts have assumed consumers were injured when

21  they purchased products in an anticompetitive market").[27]  Applying California precedent

22  on the issue of impact does not interfere with Rule 23 as there is no contrary substantive

23

---

24  [27] *See also Hopkins v. De Beers Centenary*, No. CGC-04-432954, 2005 WL 1020868, at

25  *4-5 (Cal. Super. Ct. April 15, 2005) (certifying class of indirect-purchases, holding
    "[w]here, as here, Plaintiff alleges a market-wide restraint of trade, fact-of-injury is

26  assumed for class certification purposes.") (citations omitted); *Microsoft I-V Cases*, 2000-2
    (CCH) Trade Cas. ¶73,013, at 88,560 (Cal. Super. Ct. Aug. 29, 2000) (noting "[t]here is

27  considerable authority for the proposition that in a case alleging price fixing the fact of
    injury may be determined on a classwide bases.  Because price fixing is a per se violation

28  of antitrust law, a presumption of harm arises from proof of such a violation.") (internal
    citations omitted) (RJN Ex. 9).

element in the Federal Rules.  Rather, California's presumption of impact is entirely

consistent with them and with federal precedent.  *Bogosian v. Gulf Oil Corp.*, 561 F.2d

434, 454 (3d Cir. 1977) ("proof of impact [may] be made on a common basis so long as

the common proof adequately demonstrates some damage to each individual.").  California

courts apply this presumption in the context of California's own class certification

requirements, which have a "predominance" requirement identical to Rule 23.[28]  In fact,

California courts have consistently recognized that this presumption of impact is entirely

consistent with federal law.[29]

This burden of proof with respect to impact derives from recognition that class

actions protect consumers, prevent repetitive claims, and deter irresponsible corporate

behavior.  To achieve these salutary purposes, California courts embrace class actions.

*See, e.g., Discover Bank v. Super. Ct.,* 36 Cal. 4th 148, 156 (2005), *abrogated on other*

*grounds by AT&T Mobility LLC v. Concepcion,* 131 S. Ct. 1740 (2011); *Richmond v. Dart*

*Indus.*, Inc., 29 Cal. 3d 462 (1981).  "The right to seek classwide redress is more than a

mere procedural device in California;" rather, California's express public policy is to

encourage the class action as an "essential tool for the protection of consumers against

---

[28] Class actions in California are governed by Cal. Civ. Proc. Code §382, which requires, *inter alia*, "predominant common questions of law or fact." *Richmond v. Dart Industries, Inc.*, 29 Cal. 3d 462, 470 (1981).  These requirements (at least with respect to predominance) are identical to Rule 23(a)(3)'s "predominance" requirement and interpreted in accordance with Rule 23.  *See, e.g., Mendoza v. County of Tulare,* 128 Cal. App. 3d 403, 418 n.6 (1982); *B.W.I.,* 191 Cal. App. 3d 1341, 1347 (1987).

[29] *See In re Cipro Cases I and II,* 121 Cal. App. 4th 402, 411-13 (2004) (affirming order certifying class of indirect-purchasers alleging price-fixing, holding "state and federal courts alike have recognized that common issues usually predominate" and citing numerous federal decisions in support of analysis); *B.W.I.,* 191 Cal. App. 3d at 1348-53 (reversing order denying class certification of indirect-purchasers alleging price-fixing and rejecting argument that predominance with respect to impact was insufficient based on federal court cases interpreting "predominance" requirement with respect to impact); *Rosack,* 131 Cal. App. 3d at 753 (same; every case cited in "impact" section was an opinion of a federal court); *Hopkins*, 2005 WL 1020868, at *4-5 (certifying class of indirect-purchasers, noting "[s]tate and federal courts alike have recognized that common issues usually predominate in cases where the defendants are alleged to have engaged in collusive, anti-competitive conduct resulting in artificially high market-wide prices for a product" and citing federal cases in support of finding predominance); *Microsoft I-V Cases*, 2000-2 Trade Cas. ¶73,013, at 88,560 (same, citing state and federal cases in support of holding that predominance of common issues with respect to antitrust injury existed) (RJN Ex. 9).

1    exploitative business practices." *Klussman v. Cross Country Bank,* 134 Cal. App. 4th

2    1283, 1296 (2005); *State of California v. Levi Strauss & Co.*, 41 Cal. 3d 460, 471 (1986).

3    "A company which wrongfully exacts a dollar from each of millions of customers will reap

4    a handsome profit; the class action is often the only effective way to halt and redress such

5    exploitation.  The problems which arise in the management of a class action involving

6    numerous small claims do not justify a judicial policy that would permit the defendant to

7    retain the benefits of its wrongful conduct and to continue that conduct with impunity."

8    *Discover Bank*, 36 Cal. 4th at 156 (citation omitted).

9          The standard of proof for claims applicable to the UCL is even lower than the

10   Cartwright Act, which makes claims under the UCL even more suited for class

11   certification.  A plaintiff in a class UCL action is entitled to an injunction and restitution,

12   authorized under the UCL, and to disgorgement into a fluid recovery fund, as authorized

13   under the California class action statutes.  *See, e.g., Corbett v. Super. Ct.*, 101 Cal. App.

14   4th at 655; *Massachusetts Mut. Life Ins. Co. v. Super. Ct.*, 97 Cal. App. 4th at 1288-92;

15   *Kraus v. Trinity Mgt. Svcs., Inc.*, 23 Cal. 4th 116, 136 (2000) (noting that fluid recovery is

16   available in certified UCL class actions).  Here, Plaintiffs will use common evidence to

17   show that Defendants' price-fixing in the CRT market is "unfair" and "unlawful" within

18   the meaning of the UCL.  Plaintiffs will rely on class-wide evidence to establish that

19   Defendants' unfair and unlawful business practices resulted in overcharges in the CRT

20   prices which were passed on to California consumers.  Plaintiffs will thus show injury to

21   the class resulting from Defendants' UCL violation.

22         In light of the foregoing principles, it is clear that under California law, the issues

23   of whether Defendants engaged in a price-fixing conspiracy, whether class members were

24   injured, and the amount of those damages, are subject to generalized proof, not

25   individualized proof.  As set out in Appendix C attached hereto, numerous courts have

26   certified indirect purchaser classes under California's Cartwright Act and the UCL.  The

27   Court should do the same here.  *See* Appendix C at c-1-3.

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF INDIRECT-
PURCHASER PLAINTIFFS FOR CLASS CERTIFICATION — MASTER FILE NO. CV-07-5944-SC,
MDL NO. 1917

1

### b.    Arizona

2    The Arizona Indirect-Purchaser State Class asserts causes of action under the

3 Arizona Uniform Antitrust Act, Ariz. Rev. Stat. §§ 44-1401, *et seq.*  The Arizona Uniform

4 Antitrust Act states that "[a] contract, combination or conspiracy between two or more

5 persons in restraint of, or to monopolize, trade or commerce, any part of which is within

6 this state, is unlawful." A.R.S. § 44-1402.  Damages available to individuals under the Act

7 include injunctive relief, money damages, and attorneys' fees and costs.  A.R.S. § 44

8 1408(B).  An indirect purchaser of goods has standing to bring an action under the Act to

9 recover damages resulting from the alleged price-fixing by the manufacturers of those

10 goods. *Bunker's Glass Co. v. Pilkington PLC,* 75 P.3d 99, 102 (Ariz. 2003); *Friedman v.*

11 *Microsoft Corp.*, 141 P.3d 824, 828 (Ariz. App. 2006) ("it [is] clear that Arizona indirect

12 purchasers [can] recover for antitrust violations under Arizona law.").  The Arizona

13 Supreme Court recognized that indirect-purchaser damages could be proven with class-

14 wide evidence and that expert testimony regarding proof of class-wide pass-on damages is

15 sufficient to uphold class certification of indirect-purchaser claims.  *Bunker's Glass Co.,*

16 75 P.3d at 108-09.  Dr. Netz, Plaintiffs' expert here, was also an expert for plaintiffs in the

17 Arizona Microsoft case.

18    Here, whether a CRT price-fixing conspiracy exists under Arizona antitrust law,

19 and whether the class members were injured can be shown with predominantly generalized

20 evidence.  Plaintiffs also put forward sufficient methodologies for calculating damages on

21 a class-wide basis.  Numerous courts have certified claims under the Arizona Antitrust Act

22 in cases brought by indirect purchasers.  *See* Appendix C at c-1.  The same result is

23 appropriate here.

24

### c.    District of Columbia

25    The District of Columbia Indirect-Purchaser State Class alleges violations of the

26 District of Columbia Consumer Protection Procedures Act ("CPPA"), D.C. Code §§ 28-

27 3901, *et seq.*, and the District of Columbia Antitrust Act, D.C. Code §§ 28-4501, *et seq.*

28

1   ("DCAA").  The DCAA provides that "[e]very contract, combination in the form of a trust

2   or otherwise, or conspiracy in restraint of trade or commerce all or any part of which is

3   within the District of Columbia is declared to be illegal" (D.C. Code § 28-4502), and

4   expressly provides a cause of action for indirect purchasers (D.C. Code § 28-4509(a)).

5   Indeed, the District of Columbia legislators "deliberately chose to reject the gloss put on

6   the Clayton Act by *Illinois Brick* and to provide a contrasting antitrust scheme for the

7   District of Columbia."  *Holder v. Archer Daniels Midland Co.*, 1998 WL 1469620, at *3

8   (D.C. Super. Ct. Nov. 4, 1998).  In addition to injunctive or equitable relief, a private

9   plaintiff can also recover treble damages and attorneys' fees. D.C. Code Ann. § 28-

10  4508(a).

11          The issue of whether there was a conspiracy to fix the prices of CRTs in violation

12  of the DCAA or CCPA, is subject to generalized proof, not individualized proof.  Also, the

13  other elements of the claims, injury and damages, are also subject to generalized proof, and

14  the DCAA expressly provides for such class-wide proof.[30]  Indeed, District of Columbia

15  courts addressing impact recognize that "[a]t the class certification stage, plaintiffs need

16  only demonstrate that they intend to use generalized evidence which is common to the

17  class and will predominate over individualized issues with respect to proving impact."  *In*

18  *re Vitamins Antitrust Litig.*, 209 F.R.D. 251, 266 (D.D.C. 2002).  A number of courts have

19  certified classes of indirect purchasers under District of Columbia law, and for the reasons

20  set forth above, this Court should do so here.  *See* Appendix C at c-3.

21                              **d.     Florida**

22          The Florida Indirect-Purchaser State Class asserts a cause of action under the

23  Florida Deceptive and Unfair Trade Practices Act ("DTPA"), F.S.A. §§ 501.201, *et seq.*

24  The Florida DTPA expresses a primary policy "[t]o protect the consuming public from

25  those who engage in unfair methods of competition, or unconscionable, deceptive, or

26  _____

27  [30] "In any class action brought under this section by purchasers or sellers, the fact of injury
    and the amount of damages sustained by the members of the class may be proven on a

28  class-wide basis, without requiring proof of such matters by each individual member of the
    class." D.C. Code § 28-4508 (c).

34

1  unfair acts or practices in the conduct of any trade or commerce," and provides that the act

2  "shall be construed liberally to promote [such] policies. . . ."  F.S.A. § 501.202.  Florida

3  courts have expressly held that an indirect-purchaser action alleging a price-fixing

4  conspiracy is actionable under the Florida DTPA.  *See Mack v. Bristol Myers Squibb*, 673

5  So. 2d 100, 108 (Fla. 1st DCA 1996) ("we read subsections 501.202(2), 501.211(2) and

6  501.204(1) of the Florida DPTA as a clear statement of legislative policy to protect

7  consumers through the authorization of such indirect purchaser actions.").  A consumer

8  who has suffered a loss as a result of a DTPA violation may bring an action for actual

9  damages, attorney fees and costs.  F.S.A. § 501.211(2).

10        In *In re Florida Microsoft Antitrust Litig.*, the Florida court recognized and applied

11  an inference of antitrust impact despite pricing diversity.  2002 WL 31423620, at *14 (Fla.

12  Cir. Ct. Aug. 26, 2002).  The court also noted that "[w]hen the experts for the parties both

13  are well credentialed and even if both offer compelling arguments, resolution of such a

14  'duel' is beyond the scope of the class certification inquiry."  *Id.* at *15; *see also* Appendix

15  C at c-3-4.

16        Here, like in *Florida Microsoft*, Plaintiffs' expert has proffered viable economic

17  theories and methodologies to prove fact of injury and damages on a class-wide basis.  The

18  Florida Indirect-Purchaser Statewide Class should therefore be certified.

19                    **e.      Hawaii**

20        The Hawaii Indirect-Purchaser State Class asserts causes of action under the

21  Hawaii Revised Statutes, H.R.S. §§ 480-1, *et seq.*  Hawaii antitrust law prohibits "[u]nfair

22  methods of competition and unfair or deceptive acts or practices in the practice of any

23  trade or commerce" (H.R.S. § 480-2(a)); it further provides that "every contract,

24  combination in the form of trust or otherwise, or conspiracy, in restraint of trade or

25  commerce in the State, or in any section of this State is illegal" (H.R.S. § 480-4(a)).  Thus,

26  in terms of liability, § 480-4(a) mirrors section 1 of the Sherman Act.  H.R.S. § 480-3

27  further states: "This chapter shall be construed in accordance with judicial interpretations

28

1   of similar federal antitrust statutes, except that lawsuits by indirect purchasers may be

2   brought as provided in this chapter." *See McDevitt v. Guenther*, 522 F. Supp. 2d 1272,

3   1289 (D. Haw. 2007).  An indirect purchaser of goods has standing to bring an action

4   under Hawaii law to recover treble damages, attorneys' fees and costs, resulting from the

5   alleged price-fixing by the manufacturers of those goods as well as to enjoin the unlawful

6   practices. *See* H.R.S. §§ 480-13; 480-13.3; *see also Sea Land Service, Inc. v. Atlantic*

7   *Pacific Intern., Inc.*, 61 F. Supp. 2d 1092, 1097 (D. Haw. 1999).

8        The issues of whether there was a conspiracy to fix the prices of CRTs in violation

9   of Hawaii antitrust law, whether the Hawaii Indirect-Purchaser Statewide Class members

10  suffered damage, and proof of the amount of damages sustained on a class-wide basis are

11  subject to generalized proof, not individualized proof.  Consumer claims have been

12  certified for class treatment under Hawaii law, and the same result is warranted here. *See*

13  Appendix C at c-4.

14                          **f.    Iowa**

15       The proposed Iowa Indirect-Purchaser Statewide Class asserts a cause of action

16  under the Iowa Competition Law ("ICL"), I.C.A. § 553.4.  The ICL provides that "a person

17  shall not attempt to establish, maintain, or use a monopoly of trade or commerce in a

18  relevant market for the purpose of excluding competition or of controlling, fixing or

19  maintaining prices."  Iowa Code § 553.5.  Under the ICL, private parties who are "injured

20  or threatened with injury by conduct prohibited [by the ICL]" may seek equitable relief and

21  recover actual damages, including costs and attorneys' fees.  Iowa Code § 553.12.  In

22  *Comes v. Microsoft*, 646 N.W. 2d 440, 447 (Iowa 2002), the Iowa Supreme Court held that

23  indirect purchasers may recover damages under the ICL.

24       All of the elements of the statutory claim (*i.e.*, conspiracy, impact and the amount

25  of damages) can be established through common proof.  Indeed, not only has the Iowa

26  Supreme Court held that class treatment is appropriate in indirect purchaser actions based

27  on antitrust misconduct, but it has also held that common issues on liability would

28

1   predominate even without a finding of commonality as to impact and damages. *See Comes*

2   *v. Microsoft*, 696 N.W.2d 318, 323 (Iowa 2005).  The Court also found that plaintiffs'

3   expert's opinion as to common impact and damages based on economic theory was more

4   than sufficient to support certification. *Id.* at 324-25.  Dr. Netz, Plaintiffs' expert here, also

5   was an expert for plaintiffs in the Iowa *Microsoft* case.  Moreover, a number of other

6   courts have certified claims under the ICL in cases brought by indirect purchasers, lending

7   further support to certification here. *See* Appendix C at c-4.

8                                    **g.      Kansas**

9           The proposed Kansas Indirect-Purchaser State Class asserts causes of action under

10  the Kansas antitrust statute, K.S.A. § 50-112.  The statute prohibits "arrangements,

11  contracts, agreements, trusts, or combinations between persons with a view or which tend

12  to prevent full and free competition."  *Id.*  A private right of action exists under the statute

13  for any person injured or damaged directly or indirectly by any such arrangement, contract,

14  agreement, trust or combination. *See* K.S.A. § 50-115; K.S.A. § 50-161(b); *see also Four*

15  *B Corp. v. Daicel Chemical Industries, Ltd.*, 253 F. Supp. 2d 1147, 1150, 1152 (D. Kan.

16  2003) (indirect purchasers have standing under this statute to sue for antitrust misconduct).

17          Like other repealer states, Kansas courts recognize the importance of class actions

18  to enforce its citizens' substantive antitrust rights. *Bellinder v. Microsoft,* 2001 WL

19  1397995, at *5 (Kan. Dist. Ct. Sept. 7, 2001) ("The antitrust laws rely heavily for their

20  enforcement on citizen suits. Without the class action device, such laws could be violated

21  with impunity, as long as individual damages were comparatively small, even though the

22  aggregate damage was great").

23          K.S.A. § 50-115 allows recovery of full consideration by indirect purchasers. *Four*

24  *B,* 253 F. Supp. 2d at 1152.  Under this statute, damages would equal the total amount paid

25  by the Kansas class members, therefore obviating the need for common proof of damages.

26  *See In re Western States Wholesale Natural Gas*, 2007 WL 2178063, at *5 (D. Nev. July

27  27, 2007).

28

The other elements of the Kansas antitrust claim (*i.e.*, conspiracy and injury) can be established through common proof. A number of other state and federal courts have certified indirect purchaser classes asserting claims under the Kansas antitrust statute. *See* Appendix C at c-4-5. Certification of the Kansas Indirect-Purchaser State Class is similarly warranted here.

### h.      Maine

The proposed Maine Indirect-Purchaser Statewide Class asserts a cause of action under the Maine antitrust act, 10 M.S.R.A. §§ 1101, *et seq.* The statute prohibits "[e]very contract, combination in the form of trusts or otherwise, or conspiracy, in restraint of trade or commerce." 10 M.S.R.A. § 1101. A private right of action for damages, including treble damages, costs and attorneys' fees and equitable relief, is available to "[a]ny person . . . injured directly or indirectly in its business or property" by reason of conduct in violation of "section 1101, 1102 or 1102 A." *Id.* at §1104.

The elements of the Maine antitrust claim (*i.e.*, conspiracy, injury and the amount of damages) can be established through common proof. Indeed, several courts have certified Maine classes of indirect purchasers under the Maine antitrust and consumer protection statutes. The Court should do the same here. *See, e.g., In re Terazosin*, 220 F.R.D. at 700 (certifying multiple statewide classes of indirect purchasers under state laws, including claims under the Maine antitrust act); Appendix C at c-5-6.

### i.      Michigan

The proposed Michigan Indirect-Purchaser Statewide Class asserts causes of action under the Michigan Antitrust Reform Act ("MARA"), MCLS §§ 445.771, *et seq.* The statute provides that "[a] contract, combination, or conspiracy between 2 or more persons in restraint of, or to monopolize, trade or commerce in a relevant market is unlawful." MCLS § 445.772. Furthermore, MARA provides that: "It is the intent of the legislature that in construing all sections of this act, the courts shall give due deference to

1  interpretations given by the federal violations and the rule of reason."  MCLS §

2  445.784(2).  Section 445.778(2) provides that:

> [a]ny other person threatened with injury or injured directly
> or indirectly in his or her business or property by a violation
> of this act may bring an action for appropriate injunctive or
> other equitable relief against immediate, irreparable harm,
> actual damages sustained by reason of a violation of this act.

6  The issues of whether there was a conspiracy to fix CRT prices in violation of MARA,

7  whether the Michigan Indirect-Purchaser Statewide Class members were injured, and proof

8  of the damages sustained on a class-wide basis are subject to generalized proof, not

9  individualized proof.  A number of courts have certified classes of Michigan indirect

10  purchasers in similar contexts.  *See e.g.*, *In re Cardizem CD Antitrust Litigation*, 200

11  F.R.D. 326 (E.D. Mich. 2001);[31] Appendix C at c-6.

### j.      Minnesota

13      The proposed Minnesota Indirect-Purchaser Statewide Class asserts causes of

14  action under the Minnesota Antitrust Law, Minn. Stat. §§ 325D.49, *et seq.*  Under the

15  statute, "A contract, combination or conspiracy between two or more persons in

16  unreasonable restraint of trade or commerce is unlawful."  Minn. Stat. § 325D.51.

17  Furthermore, "any person . . .  injured directly or indirectly by a violation of [section

18  325D.5 1] shall recover three times the actual damages sustained, together with costs and

19  disbursements, including reasonable attorneys' fees."  Minn. Stat. § 325D.57.

20      "Minnesota antitrust law expressly provides damages for indirect purchasers

21  injured by antitrust violations."  *Gordon v. Microsoft Corp.*, 2001 WL 366432, at *2

22  (Minn. Dist. Ct. Mar. 30, 2001); *see also Lorix v. Crompton Corp.*, 736 N.W.2d 619

---

[31] In *Cardizem*, plaintiffs sought to certify claims under MARA against the manufacturer of Cardizem CD for entering into an agreement with a generic drug manufacturer to delay the introduction of the generic drug into the market, allowing the defendant to maintain Cardizem CD prices at supra competitive levels.  *Id.* at 345.  To prove overcharge to indirect purchasers, plaintiffs offered expert testimony opining on the price differentials between brand name drugs and their generic equivalents.  The Court certified the class, accepting the proof offered by the plaintiffs' expert as demonstrating that class-wide impact could be shown with common proof and declining to require the plaintiffs to offer a specific method of tracing the overcharge at every step of the distribution chain to show pass-through.  *Id.* at 344, 346.

1   (Minn. 2007).  In *Gordon*, 2001 WL 366432, at *11-12, the court certified a class

2   consisting of indirect purchasers of operating system software produced by Microsoft,

3   permitting an inference of impact:

4              In antitrust cases, damage issues "are rarely susceptible of
               the kind of detailed proof of injury which is available in
5              other contexts ... [I]n the absence of more precise proof, the
               factfinder may conclude as a matter of just and reasonable
6              inference from the proof of defendants' wrongful acts and
               their tendency to injure ... that defendants' wrongful acts had
7              caused damage to the plaintiffs.

8   *Id.* at *11 (quoting *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 123-24

9   (1969)).  In finding certification to be superior to other methods of adjudication, the court

10  stated that "based on Plaintiffs' proposed methods of determining an overcharge to direct

11  purchasers and a percentage pass through to individual consumers, the court does not find

12  manageability problems sufficient to deny certification of the class."  *Id.* at *12.

13          As in *Gordon v. Microsoft*, where she was also one of plaintiffs' experts, Dr. Netz's

14  Declaration in this case describes the common methods for determining overcharge to

15  direct purchasers and the pass-through rate to indirect class members.  In addition to

16  *Gordon*, at least two other courts have certified classes of Minnesota indirect purchasers in

17  similar cases.  *See* Appendix C at c-6-7.

18                          **k.      Mississippi**

19          The proposed Mississippi Indirect-Purchaser Statewide Class alleges violations of

20  Mississippi Code Ann. §§ 75-21-1, *et seq.*  The Mississippi antitrust statute specifically

21  allows the recovery of damages for the "direct or indirect" effect of a combination to fix

22  prices or to limit quantities of a commodity sold.  Miss. Code Ann. §§ 75-21-1, 75-21-9.

23  The party injured by an antitrust violation may recover damages plus a penalty of $500.

24  Miss. Code Ann. § 75-21-9.

25          All of the elements of the Mississippi antitrust claim (*i.e.*, existence of conspiracy,

26  fact of injury and the amount of damages) can be established through common proof.

27  Courts have certified indirect purchaser classes asserting claims under the Mississippi

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF INDIRECT-
PURCHASER PLAINTIFFS FOR CLASS CERTIFICATION — MASTER FILE NO. CV-07-5944-SC,
MDL NO. 1917

1 | antitrust statute. *See, e.g., In re Terazosin*, 220 F.R.D. at 700 (certifying multiple statewide

2 | classes of indirect purchasers under state laws, including claims under the Mississippi

3 | antitrust statute); *see* Appendix C at c-7.

4 | ### l.     Nebraska

5 | The proposed Nebraska Indirect-Purchaser Statewide Class alleges violations of

6 | Nebraska's antitrust statute (the Junkin Act), Neb. Rev. Stat. §§ 59-801-831 and Consumer

7 | Protection Act, Neb. Rev. Stat. §59-1601, *et seq.* The Junkin Act prohibits any "contract,

8 | combination in the form of trust or otherwise, or conspiracy in restraint of trade of

9 | commerce" in Nebraska. Neb. Rev. Stat. § 59-801. The Consumer Protection Act, in

10 | relevant part, duplicates the Junkin Act's analogues of the Sherman Act and states that

11 | "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of

12 | any trade or commerce shall be unlawful. … Any contract, combination, in the form of

13 | trust or otherwise, or conspiracy in restraint of trade or commerce shall be unlawful." Neb.

14 | Rev. Stat. §§ 59-1602-1603. Indirect purchasers injured by price-fixing practices can sue

15 | for damages under both statutes. *See* Neb. Rev. Stat. § 59-821; *Waters v. Microsoft Corp.*,

16 | 676 N.W. 2d 29 (Neb. 2004).

17 | The issues of whether there was a conspiracy to fix CRT prices in violation of these

18 | statutes, whether the Nebraska Indirect-Purchaser Statewide Class members were injured,

19 | and proof of the damages sustained on a class-wide basis are subject to generalized proof,

20 | not individualized proof.

21 | ### m.     Nevada

22 | The proposed Nevada Indirect-Purchaser Statewide Class alleges violations of

23 | Nevada Revised Statute §§ 598A, *et seq.* (the "UTPA"). The Nevada UTPA specifically

24 | prohibits price-fixing conspiracies, and provides that indirect purchasers may sue for such

25 | violations. *See* N.R.S. 598A.060; N.R.S. 598A.210(2); *In re Terazosin*, 220 F.R.D. 672

26 | (an indirect purchaser of goods has standing under the UTPA to recover damages for price-

27 | fixing by the manufacturers of those goods). Finally, the Nevada UTPA "shall be

28 |

1 construed in harmony with prevailing judicial interpretations of the federal antitrust

2 statutes." N.R.S. 598A.050. The statute allows private antitrust plaintiffs to sue for

3 damages and an injunction. N.R.S. 598A.210.

4       The Nevada Indirect-Purchaser Statewide Class satisfies the predominance

5 requirement because all of the elements of the Nevada UTPA claim (*i.e.*, conspiracy,

6 impact and damages) can be established through common proof. Other courts have

7 certified claims in cases brought by indirect purchasers under the Nevada UTPA, and this

8 Court should do so here. *See* Appendix C at c-7-8.

9 **n.    New Mexico**

10       The New Mexico Indirect-Purchaser Statewide Class alleges violations of the New

11 Mexico Antitrust Act, N.M.S.A. 1978 §§ 57-1-1, *et seq.* and the New Mexico Unfair

12 Practices Act, N.M.S.A. 1978 §§ 57-12-1, *et seq.* ("NMUPA"). Under the New Mexico

13 Antitrust Act, "[e]very contract, agreement, combination or conspiracy in restraint of trade

14 or commerce, any part of which trade or commerce is within this state, is unlawful." N.M.

15 Stat. Ann. § 57-1-1. Additionally, the statute expressly provides that indirect purchasers

16 who are "threatened with injury or injured" have standing to assert such a claim and "may

17 bring an action for appropriate injunctive relief, up to threefold the damages sustained and

18 costs and reasonable attorneys' fees." N.M. Stat. Ann. § 57-1-3(A); s*ee also Romero v.*

19 *Philip Morris Inc.*, 137 N.M. 229, 231-32, 109 P. 3d 768, 770-71 (N.M. App. 2005).[32]

20       The elements of the claim under New Mexico's Antitrust Act (*i.e.*, a price-fixing

21 conspiracy, injury and the amount of damages) can be established through common proof,

22 and the New Mexico Indirect Purchaser State Class satisfies the predominance requirement

23 of Rule 23 (b)(3). Indeed, claims under the New Mexico Antitrust Act have been certified

24 for class treatment in cases brought by indirect purchasers in both state and federal courts.

25

26 [32] As the court recognized in *Romero*, 137 N.M. at 254, 109 P. 3d at 793, "[a]s a rule of thumb, a price-fixing antitrust conspiracy model is generally regarded as well suited for

27 class treatment." (quoting *In re Catfish Antitrust Litig.*, 826 F. Supp. 1019, 1039 (N.D. Miss. 1993)). Also, "from a manageability perspective, a class action is a superior

28 procedure to handle thousands of class members' small claims when common issues of fact and law predominate and common methods of proving those claims exist." *Id.* at 782.

1  The Court should also certify the claim of the New Mexico Class under the NMUPA.[33]  A

2  class of indirect purchasers under the NMUPA was certified in *In re Pharm. Indus.*

3  *Average Wholesale Price Litig.*, 233 F.R.D. at 230.  *See also* Appendix C at c-8.  A similar

4  result is warranted here.

### o.    New York

6       The New York Indirect-Purchaser Statewide Class asserts a cause of action for

7  damages under New York's antitrust statute, N.Y. Gen. Bus. Law §§ 340, *et seq.*, also

8  known as the Donnelly Act.  The Act declares that "every contract, agreement,

9  arrangement or combination" that restrains, may restrain, or has for its purpose the restraint

10  of competition, the free exercise of any commercial activity, or the performance of a

11  service is unlawful.  *Id.* § 340(1).  Among other provisions, the Donnelly Act specifically

12  extends protection to indirect purchasers.  *Id.* §340(6).  The statute also provides that a

13  successful plaintiff "shall recover three-fold the actual damages sustained thereby," as well

14  as costs and attorneys' fees.  *Id.* §340(5).  Under *Shady Grove*, __U.S.__, 130 S.Ct. 1431

15  (2010), federal court plaintiffs are permitted to maintain class actions asserting violations

16  of the Donnelly Act, and to assert claims for treble damages.

17       The proposed New York Indirect-Purchaser Statewide Class also asserts a cause of

18  action for damages under N.Y. Gen. Bus. Law § 349(h).  The *prima facie* elements of a §

19  349 claim are: (1) a showing that defendant is engaging in an act or practice that is

20  deceptive or misleading in a material way, and (2) that plaintiff has been injured as a result.

21  *Goshen v. Mut. Life Ins. Co.*, 98 N.Y.2d 314, 324 (2002) (*citing Oswego Laborers' Local*

22  *214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25 (1995)).  Reliance is

23  not an element of the claim.  *See Stutman v. Chemical Bank*, 95 N.Y.2d 24, 29 (2000)

24

---

25  [33] Section 57-12-3 of the NMUPA provides that "[u]nfair or deceptive trade practices and unconscionable trade practices in the conduct of any trade or commerce are unlawful."

26  NMUPA section 57-12-10 provides that any person who suffers any loss of money or property as a result of any such unlawful act may bring an action to recover actual damages

27  or $100, whichever is greater, and may seek treble damages or $300 for willful violations. A claim under NMUPA does not require a direct representation by the defendant to the

28  plaintiff.  *Lohman v. Daimler-Chrysler Corp.*, 142 N.M. 437, 166 P.3d 1091, *cert. denied*, 142 N.M. 434, 166 P.3d 1088 (2007).

1  (*citing Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 55-56 (1999)).  Private parties may

2  sue to enjoin unlawful practices and to recover damages.  §349(h).

3      Each of the elements of a claim under § 349 can be established through common

4  proof.  The issue of whether Defendants made public statements about the price of CRTs

5  that were directed to the New York Indirect-Purchaser Statewide Class and were

6  misleading is the same for one, 20 or 10,000 class members.  Additionally, whether New

7  York Indirect-Purchaser Statewide Class members were injured is subject to common

8  proof.  This case is similar to *Cox v. Microsoft Corp.*, 2005 WL 3288130 (N.Y. Supr. Ct.

9  N.Y. Cty. July 29, 2005).  In *Cox*, the New York lower court certified a class under § 349

10  where, as here, the defendant "was able to charge inflated prices for its products as a result

11  of its deceptive actions and that these inflated prices passed to consumers." *Id.* at *5.  The

12  court in *Cox* found that certain questions of pass-through, such as whether intermediaries

13  did not raise their prices on computer packages when the price of Microsoft products

14  increased, involved the amount of dollar damages that individual class members suffered

15  and was not determinative of the question of class certification. *Id.*

16      Additionally, New York courts, like many other states, permit aggregate proof of

17  damages when establishing common impact. *Id.*  Other courts have certified indirect

18  purchaser classes alleging price-fixing claims under New York law, and this Court should

19  do the same. *See* Appendix C at c-9.

20                          **p.     North Carolina**

21      The North Carolina Indirect-Purchaser Statewide Class asserts causes of action

22  under North Carolina's Monopolies, Trusts, and Consumer Protection Act, N.C. Gen. Stat.

23  §§ 75-1, *et seq.* (the "N.C. Act").  Under the Act, any "conspiracy in restraint of trade or

24  commerce" is illegal.  N.C. Gen. Stat. § 75-1.  To prevail under the Act, Plaintiffs must

25  show: (1) defendants committed an unfair or deceptive act or practice; (2) in or affecting

26  commerce; and (3) that plaintiff was injured thereby. *Stetser v. TAP Pharmaceutical*

27  *Products, Inc.*, 165 N.C. App. 1 (2004); *First Atlantic Management Corp. v. Dunlea Realty*

28

1   *Co.,* 507 S.E.2d 56, 131 N.C. App. 242 (1998).  "A trade practice is 'unfair' if it is

2   immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers."

3   *First Atlantic*, 507 S.E.2d at 63 (citation omitted).  The Act also provides standing for

4   individual plaintiffs (§ 75-16), which right was specifically extended to indirect purchasers

5   in *Hyde v. Abbott Labs.*, 123 N.C. App. 572, 584 (1996); *see also Teague v. Bayer AG*, 671

6   S.E.2d 550, 558 (N.C. App. 2009) ("fear of complexity is not a sufficient reason to

7   disallow a suit by an indirect purchaser, given the intent of the General Assembly to

8   'establish an effective private cause of action for aggrieved consumers in this State.'")

9          All of the elements of a claim under the Act (*i.e.*, conspiracy, impact and the

10  amount of damages) can be established through common proof.  Indeed, the North

11  Carolina Indirect-Purchaser Statewide Class members claims are analogous to a number of

12  other cases where courts have certified indirect purchaser claims under N.C. Gen. Stat. §§

13  75, *et seq.*  The Court should, likewise, certify the class here.  *See* Appendix C at c-9.

14                    **q.      North Dakota**

15         The North Dakota Indirect-Purchaser Statewide Class alleges violations of the

16  North Dakota Antitrust Act, N.D. Cent. Code §§ 51-08.1-01, *et seq.*  The North Dakota

17  Antitrust Act provides that, "[a] contract, combination, or conspiracy between two or more

18  persons in restraint of, or to monopolize, trade or commerce in a relevant market is

19  unlawful."  N.D. Cent. Code § 51-08.1-02.  The statute expressly provides a cause of

20  action for indirect purchasers, who may obtain injunctive relief and/or recover damages.

21  N.D. Cent. Code § 51-08.1-08.

22         All of the elements of a claim under the North Dakota Antitrust Act (*i.e.*,

23  conspiracy, impact and the amount of damages) can be established through common proof.

24  Indeed, a number of state and federal courts have certified classes of indirect purchasers in

25  several cases under the North Dakota Antitrust Act.  In *Howe v. Microsoft Corp.*, 656

26  N.W. 2d 285, 295-96 (N.D. 2003), for example—which involved indirect purchasers of

27  Microsoft Windows operating system software—the court articulated the state's

28

1   presumption in favor of certification: "We have consistently construed N.D.R.Civ. P. 23 to

2   provide an open and receptive attitude toward class actions . . . we are guided by the broad

3   and liberal public policy in favor of class actions in this state." *Howe*, 656 N.W. 2d at 288.

4   The court certified a class of indirect purchasers of Microsoft Windows operating system

5   software, accepting the plaintiffs' proffered expert declarations as sufficient to show

6   common proof of impact.  Plaintiffs' expert relied upon economic theories to establish the

7   "pass-through" of the alleged overcharge through various channels of distribution, and the

8   defendant attacked plaintiffs' expert for failing to present "real world" evidence in support

9   of these theories.  *Id.* at 290.  The court disapproved of trial courts delving into the merits

10  of a case at the class certification stage, and stated that the expert's evidence may be

11  considered in determining whether to certify the class, as long as the expert's analysis is

12  not "blatantly flawed."  *Id.* at 295-96.  Various other courts have certified for class

13  treatment indirect purchaser claims under the North Dakota Antitrust Act, and a similar

14  result is appropriate here.  *See* Appendix C at c-9-10.

15                              **r.      South Dakota**

16      The South Dakota Indirect-Purchaser Statewide Class asserts causes of action

17  under the South Dakota antitrust statute.  S.D. Codified Laws, §§ 37-1-3.1, *et. seq.*  The

18  South Dakota antitrust statute declares unlawful, "[a] contract, combination, or conspiracy

19  between two or more persons in restraint of trade or commerce any part of which is within

20  this state S.D.C.L. § 37-1-3.1.  Under the statute, any person injured directly or indirectly

21  by an antitrust violation may sue for injunctive and equitable relief as well as to recover

22  treble damages.  S.D.C.L. §§ 37-1-14.3, 37-1-33.

23      The South Dakota Indirect-Purchaser Statewide Class satisfies the predominance

24  requirement of Rule 23(b)(3).  Whether the Defendants engaged in a conspiracy in restraint

25  of trade is clearly subject to common proof on behalf of the South Dakota Indirect-

26  Purchaser Class.  Proof of such conduct would establish a violation of Section 37-1-3.1 on

27  a class-wide basis for the South Dakota Indirect-Purchaser Class.

28

In certifying indirect- purchaser classes, South Dakota courts have addressed the amount and type of proof required to show common proof of impact. *See e.g., In re South Dakota Microsoft Antitrust Litig.*, 657 N.W. 2d 668, 670 (S.D. 2003). There, the court noted that plaintiffs did not need to prove the merits of the case at the class certification stage. *Id.* at 673. There, the plaintiffs' expert proposed several "standard, yardstick methodologies" for calculating the amount of injury experienced by each class member (*id.* at 676), and the court noted that the question of whether or not the conclusions of plaintiffs' expert as to impact were correct was properly determined by a jury at a later date. The South Dakota Supreme Court also upheld the trial court's ruling that "[p]laintiffs need not calculate each class member's damages individually. Instead damages can be calculated in the aggregate for the class." *Id.* at 674. Similarly, here, impact and damages for the South Dakota Indirect-Purchaser Statewide Class can be determined on a class-wide basis, so Rule 23(b)(3) is therefore satisfied. In addition to the *South Dakota Microsoft* decision discussed above, indirect purchaser claims under the South Dakota statute have been certified for class treatment in several other cases. *See* Appendix C at c-10.

### s.      Tennessee

The Tennessee Indirect-Purchaser Statewide Class asserts causes of action under the Tennessee Unfair Trade Practices Act, Tennessee Code Ann. §§ 47-25-101, *et seq.* The Act declares unlawful and void "[a]ll arrangements, contracts, agreements, trusts or combinations between persons or corporations designed, or which tend, to advance, reduce, or control the price or the cost to the producer or the consumer of any such product or article." Tenn. Code Ann. § 47-25-101. Persons injured by any such arrangement may recover "the full consideration or sum… for any goods, wares, merchandise, or articles, the sale of which is controlled by such combination or trust." Tenn. Code Ann. § 47-25-106. In *Sherwood v. Microsoft Corp.*, 2003 WL 21780975, at *29 (Tenn. Ct. App. July 31, 2003), the Tennessee Court of Appeal held that indirect purchasers have standing to bring

1    an action under the Act to recover damages resulting from the alleged price-fixing.  *See*

2    *also Blake v. Abbott Labs., Inc.*, 1996 WL 134947, at *3-4 (Tenn. Ct. App. Mar. 27, 1996).

3        Numerous courts have certified claims under the Tennessee Antitrust Act in cases

4    brought by indirect purchasers.  *See* Appendix C at c-11.  The same result is appropriate

5    here.

6                        **t.    Vermont**

7        The Vermont Indirect-Purchaser Statewide Class alleges violations of the Vermont

8    Consumer Fraud Act, Vt. Stat. Ann. tit. 9, §§ 2451, *et. seq.* ("CFA") which prohibits unfair

9    methods of competition. 9 V.S.A. § 2453(a).  The Act authorizes suits by consumers who

10   have contracted for goods or service in reliance upon false or fraudulent representation or

11   practices, or who sustain damages or injury as a result of any false or fraudulent

12   representations or practices.  A successful plaintiff may obtain equitable relief and recover

13   attorneys' fees and exemplary damages up to treble the value of the consideration given.  9

14   V.S.A. § 2461(b).  Vermont has expressly disagreed with *Illinois Brick* and allowed

15   indirect purchasers suits and recovery for a violation of the state antitrust law as set forth in

16   the CFA.  *Id.*; Vermont Laws P.A. 65 (H. 301) (2000); *Elkins v. Microsoft Corp.*, 174 Vt.

17   328, 337-38 (2002).  The elements of a claim under the Vermont Consumer Fraud Act (*i.e.*

18   conspiracy, fact of injury and amount of damages) can be established through common

19   proof.  Courts have certified classes of indirect purchasers under the CFA in the past.  *See,*

20   *e.g.*, *In re Relafen*, 221 F.R.D. at 279 (certifying Vermont end payor class and holding that

21   "[n]or do the individual damages issues appear 'especially complex or burdensome …'");

22   Appendix C at c-11.  The same result is warranted here.

23                       **u.    West Virginia**

24       The West Virginia Indirect-Purchaser Statewide Class alleges violations of the

25   West Virginia Antitrust Act, West Virginia Code §§ 47-18-1, *et seq.*, which provides that

26   "Every contract, combination in the form of trust or otherwise, or conspiracy in restraint of

27   trade or commerce in this State shall be unlawful."  W.Va. Code § 47-18-3(a).  The Act

28

1    enumerates additional specific acts that constitute a violation of the statute, such as a

2    conspiracy to fix prices, limit production, and allocate customers or markets.  W.Va. Code

3    § 47-18-3(b).  Section § 47-18-9 thereof authorizes "any person" injured by reason of such

4    a violation to bring suit for damages and other remedies.

5         The elements of the West Virginia antitrust claim (*i.e.*, a price-fixing conspiracy,

6    injury and the amount of damages) can be established through common proof.  Indeed,

7    state and federal courts have certified West Virginia indirect purchaser antitrust claims like

8    those asserted here.  *See, e.g., In re Terazosin*, 220 F.R.D. at 700 (certifying multiple

9    statewide classes of indirect purchasers under state laws, including claims under the West

10   Virginia Antitrust Act); Appendix C at c-11-12.  This Court should certify the West

11   Virginia claim for class treatment.

**v.   Wisconsin**

13        The Wisconsin Indirect-Purchaser Statewide Class alleges violations of the

14   Wisconsin Antitrust Act, Wis. Stat. Ann. § 133.03(1).  The statute provides that "[e]very

15   contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade

16   or commerce is illegal."  Wis. Stat. Ann. § 133.03(1).  Any person injured directly or

17   indirectly by an antitrust violation may seek injunctive relief and recover treble damages.

18   Wis. Stat. Ann. §§ 133.16, 133.18(1)(a).

19        In *Olstad v. Microsoft Corp.*, 700 N.W. 2d 139, 263 (Wis. 2005), the Wisconsin

20   Supreme Court held that a plaintiff may bring suit under the Wisconsin antitrust act when,

21   as here, "the conduct complained of 'substantially affects' the people of Wisconsin and has

22   impacts in this state, even if the illegal activity resulting in those impacts occurred

23   predominantly or exclusively outside of the state." (Citation omitted); *See also Meyers v.*

24   *Bayer AG*, 2006 WL 1228957 (Wis. App. May 9, 2006).

25        The elements of the Wisconsin antitrust claim (*i.e.*, a price-fixing conspiracy, injury

26   and the amount of damages) can be established through common proof.  Indeed, Wisconsin

27   courts have approved the use of aggregate proof of damages in class actions.  *Cruz v. All*

28

1 | *Saints Healthcare System, Inc.*, 625 N.W. 2d 344, 348 (Wis. App. 2001). Claims under the
2 | Wisconsin antitrust statute have been certified for class treatment in numerous cases in
3 | state and federal courts. *See* Appendix C at c-12-13.

4 | **V.     THE COURT SHOULD APPOINT CLASS COUNSEL**

5 | In appointing counsel for the Classes, the Court should apply the same standard as
6 | it did in appointing interim lead counsel. In addition, the Court may consider "any other
7 | matter pertinent to counsel's ability to fairly and adequately represent the interests of the
8 | class." Fed. R. Civ. P. 23(g)(1)(C)(ii); *see also In re Cree Inc. Sec. Litig.*, 219 F.R.D. 369,
9 | 373 (M.D.N.C. 2003) (designating a firm as lead counsel after finding that the firm had
10 | "extensive experience" with the particular area of litigation (class actions) and that "the
11 | firm ha[d] sufficient resources to prosecute this action in a thorough and expeditious
12 | manner.").

13 | As noted in section IV.B.4., *supra*, Plaintiffs have been ably represented by the
14 | Interim Lead Counsel of Trump, Alioto, Trump & Prescott LLP. The Interim Lead
15 | Counsel, along with many other indirect-purchaser counsel, has devoted considerable time
16 | and resources to prosecuting this action vigorously since its inception. The firm has
17 | overseen the briefing and argument of motions, the coordination and review of millions of
18 | pages of document discovery from Defendants and third parties, the taking and defending
19 | of dozens of depositions, and the retention of experts. It is prepared to serve, and should
20 | be appointed, as counsel to the Classes.

21 | **VI.     CONCLUSION**

22 | For the foregoing reasons, the proposed classes meet the requirements of Rule
23 | 23(a) and (b)(3). Plaintiffs' Motion to certify the 22 Indirect Purchaser Statewide Classes
24 | and to appoint Trump, Alioto, Trump & Prescott LLP as Lead Counsel for the Classes
25 | should be granted.

26

27

28

1    Dated:  October 1, 2012              By:   /s/ Mario N. Alioto

2                                          Mario N. Alioto (56433)
                                           Lauren C. Russell (241151)
3                                          TRUMP, ALIOTO, TRUMP &
                                           PRESCOTT LLP
4                                          2280 Union Street
                                           San Francisco, CA 94123
5                                          Telephone:(415) 563-7200
                                           Facsimile: (415) 346-0679
6                                          malioto@tatp.com
                                           laurenrussell@tatp.com
7
                                           *Interim Lead Counsel for Indirect-*
8                                          *Purchaser Plaintiffs*

9                                          Francis O. Scarpulla (41059)
                                           Craig C. Corbitt (83251)
10                                         Judith A. Zahid (215418)
                                           Michael S. Christian (212716)
11                                         Qianwei Fu (242669)
                                           Demetrius X. Lambrinos (246027)
12                                         ZELLE HOFMANN VOELBEL &
                                           MASON LLP
13                                         44 Montgomery Street, Suite 3400
                                           San Francisco, CA 94104
14                                         Telephone:  (415) 693-0700
                                           Facsimile:  (415-693-0770
15                                         fscarpulla@zelle.com
                                           ccorbitt@zelle.com
16
     Joseph M. Patane                      Lawrence G. Papale
17   **LAW OFFICES OF JOSEPH M.**          **LAW OFFICES OF LAWRENCE G.**
     **PATANE**                            **PAPALE**
18   2280 Union Street                     1308 Main Street #117
     San Francisco, CA 94123               St. Helena, CA 94574
19   Telephone: (415) 563-7200             Telephone: (707) 963-1704
     Facsimile: (415) 346-0679             Facsimile: (707) 963-0706
20   jpatane@tatp.com                      lgpapale@papalelaw.com

21   Christopher Lovell                    Daniel E. Birkhaeuser
     Craig Essenmacher                     Jennifer S. Rosenberg
22   Keith Essenmacher                     **BRAMSON, PLUTZIK, MAHLER &**
     Merrick S. Rayle                      **BIRKHAEUSER, LLP**
23   **LOVELL STEWART HALEBIAN**           2125 Oak Grove Road, Suite 120
     **JACOBSON LLP**                      Walnut Creek, CA 94598
24   61 Broadway Suite 501                 dbirkhaeuser@bramsonplutzik.com
     New York, NY 10006                    jrosenberg@bramsonplutzik.com
25   clovell@lshllp.com
     cessenmacher@lshllp.com
26

27

28

                                    51

Marvin A. Miller
Lori A. Fanning
Matthew E. Van Tine
**MILLER LAW LLC**
115 South LaSalle Street, Suite 2910
Chicago, IL 60603
mmiller@millerlawllc.com
lfanning@millerlawllc.com

Paul Novak
Peter Safirstein
Elizabeth McKenna
**MILBERG LLP**
One Pennsylvania Plaza
49th Floor
New York, New York 10119
Telephone: (212) 594-5300
Facsimile: (212) 868-1229
pnovak@milberg.com

Sherman Kassof
**LAW OFFICES OF SHERMAN KASSOF**
954 Risa Road, Suite B
Lafayette, CA 94549
Telephone: (510) 652 2554
Facsimile: (510) 652 9308
heevay@att.net

Jennie Lee Anderson
**ANDRUS ANDERSON LLP**
155 Montgomery Street, 9th Floor
San Francisco, California 94104
Telephone: (415) 986-1400
Facsimile: (415) 986-1474
jennie@andrusanderson.com

Daniel Hume
Robert Gralewski
**KIRBY McINERNEY LLP**
825 Third Avenue, 16th Floor
New York, NY 10022
Telephone: (212) 317-2300
dhume@kmllp.com

David Boies
Timothy Battin
Nathan Cihlar
**STRAUS & BOIES, LLP**
4041 University Drive, Fifth Floor
Fairfax, VA 22030
dboies@straus-boies.com
tbattin@straus-boies.com
ncihlar@straus-boies.com

Seymour J. Mansfield
Jean B. Roth
Charles Horowitz
**MANSFIELD, TANICK & COHEN, P.A.**
1700 U.S. Bank Plaza
220 South Sixth Street
Minneapolis, MN  55402
Telephone: (612) 339-4295
Facsimile: (612) 339-3161
smansfield@mansfieldtanick.com

Robert Gerard
**GERARD & OSUCH, LLP**
2840 South Jones Blvd.
Building D, Unit 4
Las Vegas, NV 89146
Telephone: (702) 251-0093
rgerard@gerardlaw.com

Michael G. Simon
M. Eric Frankovitch
**FRANKOVITCH, ANETAKIS,
COLANTONIO & SIMON**
337 Penco Road
Weirton, WV  26062
Telephone: (304) 723-4400
Facsimile: (304) 723-5892
msimon@facslaw.com

Rodney Ray
**FORD & RAY**
301 Fifth Street South, Suite C
P.O. Box 1018
Columbus, MS 39703
Telephone: (662) 329-0110
Facsimile: (662) 329-3522
rray@fordraylaw.com

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF INDIRECT-
PURCHASER PLAINTIFFS FOR CLASS CERTIFICATION — MASTER FILE NO. CV-07-5944-SC,
MDL NO. 1917

1  Robert G. Methvin, Jr.
   Philip W. McCallum
2  Matt Stephens
   **McCALLUM, METHVIN & TERRELL,**
3  **P.C.**
   2201 Arlington Avenue South
4  Birmingham, AL 35305
   Telephone: (205) 939-0199
5  Facsimile: (205) 939-0399
   Rgm@mmlaw.net
6  pwm@mmlaw.net
   rem@mmlaw.net
7
   Christy Crow
8  **JINKS, CROW & DICKSON, P.C.**
   P.O. Box 350
9  219 Prairie Street N.
   Union Springs, AL 36089
10 Telephone: (334) 738-4225
   Facsimile: (334) 738-4229
11 cdc@jinkslaw.com

12 Chris Cantrell
   Kit Belt
13 **BELT LAW FIRM PC**
   Lakeshore Park Plaza, Suite 208
14 2204 Lakeshore Drive
   Birmingham, AL 35209
15 keithb@beltlawfirm.com
   chris@beltlawfirm.com
16
   Richard F. Horsley
17 1 Metroplex Drive, Suite 280
   Birmingham, AL 35209-6895
18 rfhala@cs.com

19 Daniel R. Karon
   Mark S. Goldman
20 Brian D. Penny
   **GOLDMAN SCARLATO & KARON,**
21 **P.C.**
   55 Public Square, Suite 1500
22 Cleveland, OH 44113
   karon@gsk-law.com
23
24 John G. Felder, Jr.
   **McGOWAN HOOD & FELDER, LLC**
25 1405 Calhoun Street
   Columbia, SC 29201
26
27
28

Joel Smith
**WILLIAMS, POTTHOFF, WILLIAMS**
**& SMITH**
125 South Orange Avenue
Eufaula, AL 36027
Telephone: (334) 687-5834
Facsimile: (334) 687-5722
joelpsmith@bellsouth.net

Brent Irby
Eric Hoagland
**McCALLUM, HOAGLAND, COOK &**
**IRBY, LLP**
905 Montgomery Street, Suite 201
Vestavia Hills, AL 35216
birby@mhcilaw.com
ehoagland@mhcilaw.com

Jeff Crabtree
**LAW OFFICES OF JEFF CRABTREE**
820 Mililani Street, Suite 701
Honolulu, HI 96813
lawyer@consumerlaw.com

S. Randall Hood
William A. McKinnon
**McGOWAN HOOD & FELDER, LLC**
1659 Healthcare Drive
Rock Hill, SC 29732

Krishna B. Narine
**LAW   OFFICE   OF   KRISHNA   B.**
**NARINE**
7839 Montgomery Avenue
Elkins Park, PA 19027
knarine@kbnlaw.com

Donna F. Solen
**THE MASON LAW FIRM, LLP**
1225 19th Street, N.W., Suite 500
Washington, DC 20036
dsolen@masonlawdc.com

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF INDIRECT-
PURCHASER PLAINTIFFS FOR CLASS CERTIFICATION — MASTER FILE NO. CV-07-5944-SC,
MDL NO. 1917

| | |
|---|---|
| Isaac L. Diel<br>**SHARP McQUEEN**<br>135 Oak Street<br>Bonner Springs, KS 66012<br>dslawkc@aol.com | Robert J. Pohlman<br>**RYLEY CARLOCK & APPLEWHITE**<br>One North Central Avenue, Suite 1200<br>Phoenix, AZ 85004-4417<br>rpohlman@rcalaw.com |
| Mary G. Kirkpatrick<br>**KIRKPATRICK & GOLDSBOROUGH, PLLC**<br>Lakewood Commons<br>1233 Shelburne Road, Suite E-1<br>South Burlington, VT 05401<br>mkirk@vtlawfirm.com | Bruce Mulkey<br>**THE MULKEY ATTORNEYS GROUP, P.A.**<br>1039 W. Walnut, Suite 3<br>Rogers, AR 72756<br>bruce@mulkeylaw.com |
| Charles M. Kester<br>**THE KESTER LAW FIRM**<br>P.O. Box 184<br>Fayetteville, AR 72702-0184<br>cmkester@nwark.com | Terry R. Saunders<br>Thomas A. Doyle<br>**SAUNDERS & DOYLE**<br>20 South Clark Street, Suite 1720<br>Chicago, IL 60603<br>trsaunders@saundersdoyle.com<br>tadoyle@saundersdoyle.com |
| Joel Flom<br>**JEFFRIES, OLSON & FLOM, P.A.**<br>1202 27th Street South<br>Fargo, N.D. 58103<br>Telephone: (701) 280-2300<br>Facsimile: (701) 280-1800<br>joel@jeffrieslaw.com | James H. McManis<br>Marwa Elzankaly<br>**McMANIS FAULKNER & MORGAN**<br>A Professional Corporation<br>50 W. Fernando Street, 10 th Floor<br>San Jose, CA 95113<br>jmcmanis@mfmlaw.com<br>melzankaly@mfmlaw.com |
| Susan G. Kupfer (skupfer@glancylaw.com)<br>Kathleen S. Rogers<br>**GLANCY BINKOW & GOLDBERG, LLP**<br>One Embarcadero Center, Suite 760<br>San Francisco, CA 94111<br>Telephone: (415) 972-8160<br>Facsimile: (415) 972-8166 | Christopher P. Welsh<br>**WELSH & WELSH, PC, LLO**<br>9290 West Dodge Road<br>100 The Mark<br>Omaha, Nebraska 68114<br>Telephone: (402) 384-8160<br>Facsimile: (402) 384-8211<br>cwelsh@welsh-law.com |
| Kenneth L. Valinoti<br>**VALINOTI & DITO LLP**<br>180 Montgomery Street, Suite 940<br>San Francisco, CA 94104<br>Telephone: (415) 986-1338<br>Facsimile: (415) 986-1231<br>kvalinoti@valinoti-dito.com | David Freedman<br>Joseph Goldberg<br>**FREEDMAN, BOYD, HOLLANDER, GOLDBERG & IVES, PA**<br>20 First Plaza, Suite 700<br>Albuquerque, NM 87102<br>Telephone: (505) 842-9960<br>Facsimile: (505) 842-0761<br>daf@fbdlaw.com |

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF INDIRECT-PURCHASER PLAINTIFFS FOR CLASS CERTIFICATION — MASTER FILE NO. CV-07-5944-SC, MDL NO. 1917

1  Eric J. Pickar
   **BANGS, McCULLEN, BUTLER, FOYE**
2  **& SIMMONS, LLP**
   333 West Boulevard, Suite 400
3  P.O. Box 2670
   Rapid City, SD 57709-2670
4  Telephone: (605) 343-1040
   epickar@bangsmccullen.com
5
   Jeffrey Bartos
6  **GUERRIERI, EDMOND, CLAYMAN &**
   **BARTOS PC**
7  1625 Massachusetts Ave., N.W.
   Suite 700
8  Washington, DC 20036
   Telephone: (202) 624-7400
9  jbartos@geclaw.com

10 Josef D. Cooper
   Tracy D. Kirkham
11 **COOPER & KIRKHAM, P.C.**
   357 Tehama Street, Second Floor
12 San Francisco, CA 94103
   Telephone: (415) 788-3030
13 Facsimile: (415) 882-7040
   jdc@coopkirk.com
14
   Robert Bonsignore
15 **BONSIGNORE AND BREWER**
   193 Plummer Hill Road
16 Belmont, NH 03220
   Telephone: (781) 350-0000
17 rbonsignore@class-actions.us
18
19 Sylvie Kern
   **KAG LAW GROUP**
20 P.O. Box 210135
   San Francisco, CA 94121
21 Telephone: (415) 221-5763
   skern@antitrustglobal.com
22
23 W. Timothy Neddham
24 **JANSSEN, MALLOY & NEEDHAM**
   **LLP**
25 730 5th Street
   Eureka, CA 95501
26 Telephone: (707) 445-2071
   Facsimile; (707) 445-8305
27 tneedham@janssenlaw.com

Frank Balint
**BONNETT, FAIRBOURN, FRIEDMAN**
**& BALINT, P.C.**
2901 North Central Avenue, Suite 1000
Phoenix, AZ 85012-3311
Telephone: (602) 274-1100
Facsimile: (602) 274-1199
fbalint@bffb.com

Guri Ademi
Shpetim Ademi
**ADEMI & O'REILLY, LLP**
3620 East Layton Ave.
Cudahy, WI 53110
Telephone: (414) 482-8000
Facsimile: (414) 482-8001
gademi@ademilaw.com

James Wyatt
**WYATT & BLAKE, LLP**
435 East Morehead Street
Charlotte, NC 28202-2609
Telephone: (704) 331-0767
Facsimile: (704) 331-0773
JWyatt@wyattlaw.net

Christopher P. Welsh
**WELSH & WELSH, PC, LLO**
9290 West Dodge Road
100 The Mark
Omaha, Nebraska 68114
Telephone: (402) 384-8160
Facsimile: (402) 384-8211
cwelsh@welsh-law.com

Robert Green
**GREEN & NOBLIN P.C.**
700 larkspur Landing Circle
Suite 275
Larkspur ,CA 94939
Telephone: (415) 477-6700
Facsimile: (415) 477-6710
rsg@classcounsel.com

Brian Barry
**LAW OFFICE OF BRIAN BARRY**
1801 Avenue of the Stars, Suite 307
Los Angeles, CA 90067
Telephone: (323) 522-5584
Bribarry@yahoo.com

*Counsel for Indirect-Purchaser Plaintiffs*

28 #3237761v13

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF INDIRECT-
PURCHASER PLAINTIFFS FOR CLASS CERTIFICATION — MASTER FILE NO. CV-07-5944-SC,
MDL NO. 1917

**APPENDIX A**

*In Re: Cathode Ray Tube (CRT) Antitrust Litigation*

**Proposed Indirect-Purchaser Plaintiff Class Representatives**

| States | Plaintiffs | CRT Products On Which Plaintiffs Base Their Claims |
|---|---|---|
| Arizona | Brian Luscher | Philips television |
| California | Steven Ganz | Philips television; Toshiba television |
| California | Jeffrey Figone | Sharp television; Panasonic television |
| District of Columbia | Lawyer's Choice Suites, Inc.* | Dell monitor |
| Florida | David Rooks* | Panasonic television |
| Hawaii | Daniel Riebow | Panasonic television |
| Iowa | Travis Burau | TruTech television |
| Kansas | Southern Office Supply, Inc. | Ten monitors |
| Maine | Kerry Lee Hall | Sears television |
| Michigan | Lisa Reynolds | Three JVC televisions |
| Minnesota | Barry Kushner | Philips Magnavox television; Toshiba television |
| Minnesota | David Norby | Magnavox television |
| Mississippi | Charles Jenkins | Durabrand television; Packard Bell monitor |
| Nebraska | Steven Fink** | Toshiba television |
| Nevada | Gloria Comeaux* | Sanyo television |
| New Mexico | Craig Stephenson | MAG Technology monitor |
| New York | Janet Ackerman | Toshiba television |
| New York | Louise Wood* | Toshiba television |
| North Carolina | Patricia Andrews* | Toshiba television |
| North Dakota | Gary Hanson | Two RCA televisions; Toshiba television; two Dell monitors |
| South Dakota | Jeffrey Speaect* | Toshiba television |
| Tennessee | Frank Warner | Six monitors |
| Tennessee | Albert Sidney Crigler | Sharp television; Gateway monitor |
| Vermont | Margaret Slagle | Sylvania television; Magnavox television |
| West Virginia | John Larch | Curtis Mathes television |
| Wisconsin | Brigid Terry | Toshiba television |

*Indicates person or entity not named in Indirect Purchaser Plaintiffs' Third Consolidated Amended Complaint but whom the Special Master Judge Legge, in his August 2, 2012 Report and Recommendation Re: Indirect Purchaser Plaintiffs' Motion for Leave to Amend the Complaint (Dkt. 1286), has recommended may be added to an amended complaint.

** Indirect Purchaser Plaintiffs have requested that the Special Master Judge Legge modify his August 2, 2012 Report and Recommendation to permit Steven Fink to be added to an amended complaint and serve as the Nebraska class representative.

**APPENDIX B**

*In re: Cathode Ray Tube (CRT) Antitrust Litigation*

**State Law Claims**

| State | Antitrust | Consumer Protection | Unjust Enrichment |
|---|---|---|---|
| Arizona | X | | X |
| California | X | X | X |
| D.C. | X | X | X |
| Florida | | X | |
| Hawaii | X | X | |
| Iowa | X | | X |
| Kansas | X | | |
| Maine | X | | X |
| Michigan | X | | X |
| Minnesota | X | | |
| Mississippi | X | | |
| Nebraska | X | X | |
| Nevada | X | | |
| New Mexico | X | X | X |
| New York | X | X | |
| North Carolina | X | X | |
| North Dakota | X | | |
| South Dakota | X | | X |
| Tennessee | X | | |
| Vermont | X | X | |
| West Virginia | X | | |
| Wisconsin | X | | |

# APPENDIX C

### *In re: Cathode Ray Tube (CRT) Antitrust Litigation*

### Indirect-Purchaser Litigated (Non-Settlement) Class Certification Decisions

| State | Type of Claim | Case Authority | Product Involved | Ruling |
|---|---|---|---|---|
| **AZ** | AT | *Ferrell v. Wyeth-Ayerst Labs.,* No. C-1-01-447, Order at 27 (S.D. Ohio June 30, 2004) Attached as Exhibit 1 to accompanying "Request for Judicial Notice" ("RJN"). | Estrogen replacement products | Arizona class certified |
| | AT | *Ferrell v. Wyeth-Ayerst Labs.*, No. C-1-01-447, Order at 8 (S.D. Ohio Feb. 2, 2005)  RJN Exhibit 2. | Estrogen replacement products | Arizona class certified |
| | CP | "Order" (Nov. 14, 2000) in *Friedman v. Microsoft Corp.*, No. CV 2000-000722, minute order at 2 (Ariz. Super. Ct., Maricopa Cty.)  RJN Exhibit 3. | Computer Software | Arizona class certified |
| | AT | *In re Relafen Antitrust Litig.*, 221 F.R.D. 260, 278-84 (D. Mass. 2004) | Drugs | Arizona among exemplar classes certified |
| | AT | *In re Static Random Access memory (SRAM) Antitrust Litig.,* 264 F.R.D. 603, 617-22 (N.D. Cal. 2009) | Memory chips | Multi-state classes certified, including Arizona |
| | AT, CP | *In re TFT-LCD (Flat Panel) Antitrust Litig.,* 267 F.R.D. 583, 608-13 (N.D. Cal. 2010), *amended in part,* 2011 WL 3268649 (N.D. Cal. July 28, 2011) | LCD panels | Multi-state classes certified, including Arizona |
| **CA** | AT | "Order Granting Motion For Motion For Class Certification" in *Aguilar v. Atlantic Richfield Corp.,* 1998-1 Trade Cas. (CCH) ¶72,080 at 81,495, 81,497 (Cal. Super. Ct., San Diego Cty., May 1, 1997)  RJN Exhibit 4. | Gasoline | California class certified |
| | AT | *B.W.I. Custom Kitchen, Inc. v. Owens-Illinois*, 191 Cal. App. 3d 1341, 1355 (1987) | Glass containers | Reversed decision denying certification |

| State | Type of Claim | Case Authority | Product Involved | Ruling |
|---|---|---|---|---|
| | AT, CP | "Order Granting Motion of Plaintiffs For Class Certification" (June 17, 2004) in *In re Automotive Refinishing Paint Cases*, No. J.C.C.P. 4199 at 1 (Cal. Super. Ct., Alameda Cty.)  RJN Exhibit 5. | Automotive refinishing paint | California end-user, reseller classes certified |
| | AT, CP | *In re Cipro Cases I and II,* 121 Cal. App. 4th 402, 418 (2004) | Drugs | Certification of California class affirmed |
| | CP | *In re Pharm. Indus. Average Wholesale Price Litig.,* 233 F.R D. 229, 230-31 (D. Mass. 2006) | Various drugs | California co-payor class certified |
| | AT, CP | "Order Granting Plaintiffs' Motion for Class Certification" (March 27, 2007) in *In re Reformulated Gasoline (RFG) Antitrust & Patent Litig.,* No. CV-05-01671 (VBKx) at 25 (C.D. Cal.)  RJN Exhibit 6. | Gasoline | California class certified |
| | AT, CP | *In re Relafen Antitrust Litig.,* 221 F.R.D. 260, 288 (D. Mass. 2004) | Drugs | California among exemplar classes certified |
| | AT | *In re Terazosin Hydrochloride Antitrust Litig*., 220 F.R.D. 672, 702 (S.D. Fla. 2004) | Drugs | California class certified |
| | CP | "Order Re Class Certification" (June 29, 2000) in *Kristensen v. Great Spring Waters of America,* No. 302774 at 1 (Cal. Super. Ct., San Francisco Cty.)  RJN Exhibit 7. | Spring water | California consumer class certified |
| | AT | *Lethbridge v. Johnson & Johnson,* No. B105754 at 24 (Cal. Ct. App. Nov. 10, 1997) (unpublished), RJN Exhibit 8. | Disposable contact lenses | Reversed decision denying certification |
| | AT, CP | "Order Re Class Certification" in *Microsoft I-V Cases*, 2000-2 Trade Cas. (CCH) ¶73,013 at 88,555, 88,565 (Cal. Super. Ct., San Francisco Cty., Aug. 29, 2000) RJN Exhibit 9. | Computer Software | California class certified |
| | CP, AT | "Orders" of June 26 & Aug. 16, 1995 in *Pharmaceutical Cases I, II, and III,* J.C.C.P. Nos. 2969, 2971 & 2972 at 1-3, 1-3 (Cal. Super. Ct., San Francisco Cty.)  RJN Exhibit 10. | Drugs | California class certified |
| | AT, CP | *Robinson v. EMI Music Dist., Inc.,* Civ. No. L10462, 1996 WL 495551, at *5 (Tenn. Cir. Ct. July 8, 1996) | CDs | Multi-state classes certified, including California |

| State | Type of Claim | Case Authority | Product Involved | Ruling |
|---|---|---|---|---|
| | AT | *Rosack v. Volvo of America Corp.*, 131 Cal. App. 3d 741, 763 (1982), *cert. denied*, 460 U.S. 1012 (1983) | Autos | Reversed decision denying certification |
| | AT, CP | "Order Granting Motion For Class Certification" in *Smokeless Tobacco Cases I-V*, J.C.C.P. Nos. 4250, 4258, 4259 & 4262 at 2 (Cal. Super. Ct. Jan. 29, 2004)  RJN Exhibit 11. | Smokeless Tobacco | California class certified |
| | AT, CP | *In re Static Random Access memory (SRAM) Antitrust Litig.*, 264 F.R.D. 603, 617-22 (N.D. Cal. 2009) | Memory chips | Multi-state classes certified, including California |
| | AT, CP | *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 583, 608-13 (N.D. Cal. 2010), *amended in part,* 2011 WL 3268649 (N.D. Cal. July 28, 2011) | LCD panels | Multi-state classes certified, including California |
| DC | AT | *Goda v. Abbott Labs.*, 1997 WL 156541, at *10 (D.C. Super. Ct. 1997) | Prescription Drugs | District of Columbia class certified |
| | AT, CP | *Robinson v. EMI Music Dist., Inc.*, Civ. No. L10462, 1996 WL 495551, at *5 (Tenn. Cir. Ct. July 8, 1996) | CDs | Multi-state classes certified, including the District of Columbia |
| | AT, CP | *In re Static Random Access memory (SRAM) Antitrust Litig.*, 264 F.R.D. 603, 617-22 (N.D. Cal. 2009) | Memory chips | Multi-state classes certified, including District of Columbia |
| | AT, CP | *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 583, 608-13 (N.D. Cal. 2010), *amended in part,* 2011 WL 3268649 (N.D. Cal. July 28, 2011) | LCD panels | Multi-state classes certified, including District of Columbia |
| FL | CP | *Execu-Tech Bus. Sys., Inc. v. Appleton Papers, Inc.*, 743 So. 2d 19, 22 (Fla. Dist. Ct. App. 1999) | Thermal fax paper | Certification of Florida class affirmed |
| | CP | *Ferrell v. Wyeth-Ayerst Labs.*, No. C-1-01-447, Order at 27 (S.D. Ohio June 30, 2004)  RJN Exhibit 1. | Estrogen replacement products | Florida consumer class certified |
| | AT | *In re Fla. Microsoft Antitrust Litig.*, No. 99-27340, 2002 WL 31423620, at *19 (Fla. Cir. Ct. Aug. 26, 2002) | Computer software | Florida class certified |
| | CP | *In re Pharm. Indus. Average Wholesale Price Litig.*, 233 F.R.D. 229, 230-31 (D. Mass. 2006) | Various drugs | Florida co-payor class certified |
| | AT | *In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 702 (S.D. Fla. 2004) | Drugs | Florida class certified |

| State | Type of Claim | Case Authority | Product Involved | Ruling |
|---|---|---|---|---|
| | AT, CP | *Robinson v. EMI Music Dist., Inc.,* Civ. No. L10462, 1996 WL 495551, at *5 (Tenn. Cir. Ct. July 8, 1996) | CDs | Multi-state classes certified, including Florida |
| | CP | *In re Static Random Access memory (SRAM) Antitrust Litig.,* 264 F.R.D. 603, 617-22 (N.D. Cal. 2009) | Memory chips | Multi-state classes certified, including Florida |
| | CP | *In re TFT-LCD (Flat Panel) Antitrust Litig.,* 267 F.R.D. 583, 608-13 (N.D. Cal. 2010), *amended in part,* 2011 WL 3268649 (N.D. Cal. July 28, 2011) | LCD panels | Multi-state classes certified, including Florida |
| **HI** | CP | *Daly v. Harris*, 209 F.R.D. 180, 201 (D. Haw. 2002) | Beach entrance fee | Hawaii subclass (consisting of "non-residents of Hawaii who paid $3.00 to access the public beach) certified |
| | AT | *In re Static Random Access memory (SRAM) Antitrust Litig.,* 264 F.R.D. 603, 617-22 (N.D. Cal. 2009) | Memory chips | Multi-state classes certified, including Hawaii |
| | CP | *In re TFT-LCD (Flat Panel) Antitrust Litig.,* 267 F.R.D. 583, 608-13 (N.D. Cal. 2010), *amended in part,* 2011 WL 3268649 (N.D. Cal. July 28, 2011) | LCD panels | Multi-state classes certified, including Hawaii |
| **IA** | AT | "Ruling on Plaintiff's Motion for Class Certification" (March 19, 2007) in *Anderson Contr., Inc. v. Bayer AG,* No. CL 95959 at 22 (Iowa Dist. Ct., Polk Cty.)  RJN Exhibit 12. | Synthetic rubber ("EPDM") | Iowa class certified |
| | AT | *Comes v. Microsoft Corp.,* 696 N.W.2d 318, 323, 327 (Iowa 2005) | Computer software | Iowa class certified |
| | AT | *Ferrell v. Wyeth-Ayerst Labs.,* No. C-1-01-447, Order at 27 (S.D. Ohio June 30, 2004)  RJN Exhibit 1. | Estrogen replacement products | Iowa class certified |
| | AT | *In re Static Random Access memory (SRAM) Antitrust Litig.,* 264 F.R.D. 603, 617-22 (N.D. Cal. 2009) | Memory chips | Multi-state classes certified, including Iowa |
| | AT | *In re TFT-LCD (Flat Panel) Antitrust Litig.,* 267 F.R.D. 583, 608-13 (N.D. Cal. 2010), *amended in part,* 2011 WL 3268649 (N.D. Cal. July 28, 2011) | LCD panels | Multi-state classes certified, including Iowa |
| **KS** | AT, CP | *Bellinder v. Microsoft Corp.*, No. 00-C-0855, 2001 WL 1397995, at *8 (Kan. Dist. Ct. Sept. 7, 2001) | Computer software | Kansas class certified |

| State | Type of Claim | Case Authority | Product Involved | Ruling |
|---|---|---|---|---|
| | AT | "Order Of Class Certification" (Nov. 3, 1995) in *Donelan v. Abbott Labs., Inc.*, No. 94-C-709 at 2-3 (Kan. Dist. Ct.) RJN Exhibit 13. | Infant formula | Kansas class certified |
| | AT | *Ferrell v. Wyeth-Ayerst Labs.*, No. C-1-01-447, Order at 27 (S.D. Ohio June 30, 2004)  RJN Exhibit 1. | Estrogen replacement products | Kansas class certified |
| | AT | *Ferrell v. Wyeth-Ayerst Labs.*, No. C-1-01-447, Order at 8 (S.D. Ohio Feb. 2, 2005)  RJN Exhibit 2. | Estrogen replacement products | Kansas class certified |
| | AT | *In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 702 (S.D. Fla. 2004) | Drugs | Kansas class certified |
| | AT | "Memorandum Decision And Journal Entry On Plaintiffs' Motion For Class Certification" (May 4, 2004) in *Premier Pork, Inc. v. Rhone Poulenc, S.A.,* No. 00 C 3 at 9 (Kansas Dist. Ct.)  RJN Exhibit 14. | Methionine | Kansas class certified |
| | AT, CP | *Robinson v. EMI Music Dist., Inc.*, Civ. No. L10462, 1996 WL 495551, at *5 (Tenn. Cir. Ct. July 8, 1996) | CDs | Multi-state classes certified, including Kansas |
| | AT | "Journal Entry Of Decision By The Court Upon Plaintiffs' Motion For Class Certification" (Nov. 16, 2001) in *Smith v. Philip Morris Cos., Inc.,* No. 00-CV-26 at 10 (Kan. Dist. Ct.)  RJN Exhibit 15. | Cigarettes | Kansas class certified |
| | AT | "Journal Entry" (Mar. 10, 2006) in *Todd v. F. Hoffman-La Roche, Ltd.,* No. 98-C-4574 at 8 (Kan. Dist. Ct.)  RJN Exhibit 16. | Choline chloride | Kansas class certified |
| | AT, CP | *In re Static Random Access memory (SRAM) Antitrust Litig.,* 264 F.R.D. 603, 617-22 (N.D. Cal. 2009) | Memory chips | Multi-state classes certified, including Kansas |
| | AT | *In re TFT-LCD (Flat Panel) Antitrust Litig.,* 267 F.R.D. 583, 608-13 (N.D. Cal. 2010), *amended in part,* 2011 WL 3268649 (N.D. Cal. July 28, 2011) | LCD panels | Multi-state classes certified, including Kansas |
| ME | AT | *Ferrell v. Wyeth-Ayerst Labs.,* No. C-1-01-447, Order at 27 (S.D. Ohio June 30, 2004)  RJN Exhibit 1. | Estrogen replacement products | Maine class certified |

| State | Type of Claim | Case Authority | Product Involved | Ruling |
|---|---|---|---|---|
| | AT | *Ferrell v. Wyeth-Ayerst Labs.*, No. C-1-01-447, Order at 8 (S.D. Ohio Feb. 2, 2005)  RJN Exhibit 2. | Estrogen replacement products | Maine class certified |
| | AT, CP | *Robinson v. EMI Music Dist., Inc.,* Civ. No. L10462, 1996 WL 495551, at *5 (Tenn. Cir. Ct. July 8, 1996) | CDs | Multi-state classes certified, including Maine |
| | AT | *In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 702 (S.D. Fla. 2004) | Drugs | Maine class certified |
| | AT, CP | *In re Static Random Access memory (SRAM) Antitrust Litig.,* 264 F.R.D. 603, 617-22 (N.D. Cal. 2009) | Memory chips | Multi-state classes certified, including Maine |
| | AT | *In re TFT-LCD (Flat Panel) Antitrust Litig.,* 267 F.R.D. 583, 608-13 (N.D. Cal. 2010), *amended in part,* 2011 WL 3268649 (N.D. Cal. July 28, 2011) | LCD panels | Multi-state classes certified, including Maine |
| **MI** | AT | *In re Pharm. Indus. Average Wholesale Price Litig.,* 233 F.R.D. 229, 230-31 (D. Mass. 2006) | Various drugs | Michigan co-payor class certified |
| | AT | *In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 702 (S.D. Fla. 2004) | Drugs | Michigan class certified |
| | AT, CP | *Robinson v. EMI Music Dist., Inc.,* Civ. No. L10462, 1996 WL 495551, at *5 (Tenn. Cir. Ct. July 8, 1996) | CDs | Multi-state classes certified, including Michigan |
| | AT | *In re Static Random Access memory (SRAM) Antitrust Litig.,* 264 F.R.D. 603, 617-22 (N.D. Cal. 2009) | Memory chips | Multi-state classes certified, including Michigan |
| | AT | *In re TFT-LCD (Flat Panel) Antitrust Litig.,* 267 F.R.D. 583, 608-13 (N.D. Cal. 2010), *amended in part,* 2011 WL 3268649 (N.D. Cal. July 28, 2011) | LCD panels | Multi-state classes certified, including Michigan |
| **MN** | AT | *Ferrell v. Wyeth-Ayerst Labs.,* No. C-1-01-447, Order at 27 (S.D. Ohio June 30, 2004)  RJN Exhibit 1. | Estrogen replacement products | Minnesota class certified |
| | AT | *Gordon v. Microsoft Corp.,* No. 00-594, 2001 WL 366432, at *13 (Minn. Dist. Ct. March 30, 2001), *interlocutory review denied*, 645 N.W.2d 393 (Minn. 2002) and 2003 WL 23105552, at *10 (Minn. Dist. Ct. March 14, 2003) | Computer software | Minnesota class certified |
| | CP | *In re Pharm. Indus. Average Wholesale Price Litig.,* 233 F.R.D. 229, 230-31 (D. Mass. 2006) | Various drugs | Minnesota co-payor class certified |

| State | Type of Claim | Case Authority | Product Involved | Ruling |
|---|---|---|---|---|
| | AT | *In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 702 (S.D. Fla. 2004) | Drugs | Minnesota class certified |
| | AT | *Robinson v. EMI Music Dist., Inc.,* Civ. No. L10462, 1996 WL 495551, at *5 (Tenn. Cir. Ct. July 8, 1996) | CDs | Multi-state classes certified, including Minnesota |
| | AT | *In re Static Random Access memory (SRAM) Antitrust Litig.,* 264 F.R.D. 603, 617-22 (N.D. Cal. 2009) | Memory chips | Multi-state classes certified, including Minnesota |
| | AT | *In re TFT-LCD (Flat Panel) Antitrust Litig.,* 267 F.R.D. 583, 608-13 (N.D. Cal. 2010), *amended in part,* 2011 WL 3268649 (N.D. Cal. July 28, 2011) | LCD panels | Multi-state classes certified, including Minnesota |
| **MS** | AT | *Ferrell v. Wyeth-Ayerst Labs.*, No. C-1-01-447, Order at 27 (S.D. Ohio June 30, 2004)  RJN Exhibit 1. | Estrogen replacement products | Mississippi class certified |
| | AT | *Ferrell v. Wyeth-Ayerst Labs.*, No. C-1-01-447, Order at 8 (S.D. Ohio Feb. 2, 2005)  RJN Exhibit 2. | Estrogen replacement products | Mississippi class certified |
| | AT | *In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 702 (S.D. Fla. 2004) | Drugs | Mississippi class certified |
| | AT | *Robinson v. EMI Music Dist., Inc.*, Civ. No. L10462, 1996 WL 495551, at *5 (Tenn. Cir. Ct. July 8, 1996) | CDs | Multi-state classes certified, including Mississippi |
| | AT | *In re TFT-LCD (Flat Panel) Antitrust Litig.,* 267 F.R.D. 583, 608-13 (N.D. Cal. 2010), *amended in part,* 2011 WL 3268649 (N.D. Cal. July 28, 2011) | LCD panels | Multi-state classes certified, including Mississippi |
| **NV** | CP | *Ferrell v. Wyeth Ayerst Labs*, No. C 1 0l 447, Order at 27 (S.D. Ohio June 30, 2004)  RJN Exhibit 1. | Estrogen replacement products | Nevada consumer class certified |
| | CP | *Ferrell v. Wyeth Ayerst Labs*, No. C l 01 447, Order at 8 (S.D. Ohio Feb. 2, 2005)  RJN Exhibit 2. | Estrogen replacement products | Nevada consumer class certified |
| | CP | *In re Pharm. Indus. Average Wholesale Price Litig.*, 233 F.R.D. 229, 230-31 (D. Mass. 2006) | Various Drugs | Nevada co-payor class certified |
| | AT | *In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 702 (S.D. Fla. 2004) | Drugs | Nevada class certified |

| State | Type of Claim | Case Authority | Product Involved | Ruling |
|---|---|---|---|---|
| | AT | *In re Static Random Access memory (SRAM) Antitrust Litig.,* 264 F.R.D. 603, 617-22 (N.D. Cal. 2009) | Memory chips | Multi-state classes certified, including Nevada |
| | AT | *In re TFT-LCD (Flat Panel) Antitrust Litig.,* 267 F.R.D. 583, 608-13 (N.D. Cal. 2010), *amended in part,*2011 WL 3268649 (N.D. Cal. July 28, 2011) | LCD panels | Multi-state classes certified, including Nevada |
| **NM** | AT | *Ferrell v. Wyeth-Ayerst Labs.,* No. C-1-01-447, Order at 27 (S.D. Ohio June 30, 2004)  RJN Exhibit 1. | Estrogen replacement products | New Mexico class certified |
| | AT | *Ferrell v. Wyeth-Ayerst Labs.*, No. C-1-01-447, Order at 8 (S.D. Ohio Feb. 2, 2005)  RJN Exhibit 2. | Estrogen replacement products | New Mexico class certified |
| | AT | "Decision And Order On Motion For Class Certification" (Oct. 2, 2002) in *In re New Mexico Indirect Purchasers Microsoft Antitrust Litig.,* No. D-0101-CV-2000 (1st Judicial Dist.), RJN Exhibit 17; *see In re New Mexico Indirect Purchasers Microsoft Corp. Antitrust Litig.,* 149 P.3d 976, 983-84 (N.M. Ct. App. 2006) | Computer software | New Mexico class certified |
| | AT | *In re Terazosin Hydrochloride Antitrust Litig*., 220 F.R.D. 672, 702 (S.D. Fla. 2004) | Drugs | New Mexico class certified |
| | AT | *Robinson v. EMI Music Dist., Inc.*, Civ. No. L10462, 1996 WL 495551, at **1, 5 (Tenn. Cir. Ct. July 8, 1996) | CDs | Multi-state classes certified, including New Mexico |
| | AT | *Romero v. Philip Morris Inc.*, 109 P.3d 768, 770-71, 795 (N.M. Ct. App. 2005) | Cigarettes | New Mexico class certified |
| | CP | *In re Pharm. Indus. Average Wholesale Price Litig.,* 233 F.R.D. 229, 230-31 (D. Mass. 2006) | Various drugs | New Mexico class certified |
| | AT | *In re Static Random Access memory (SRAM) Antitrust Litig.,* 264 F.R.D. 603, 617-22 (N.D. Cal. 2009) | Memory chips | Multi-state classes certified, including New Mexico |
| | AT, CP | *In re TFT-LCD (Flat Panel) Antitrust Litig.,* 267 F.R.D. 583, 608-13 (N.D. Cal. 2010), *amended in part,*2011 WL 3268649 (N.D. Cal. July 28, 2011) | LCD panels | Multi-state classes certified, including New Mexico |

| State | Type of Claim | Case Authority | Product Involved | Ruling |
|---|---|---|---|---|
| **NY** | CP | *Cox v. Microsoft Corp.*, 10 Misc. 3d 1055(A), 809 N.Y.S.2d 480, 2005 WL 3288130, at *6 (N.Y. Sup. Ct. 2005) | Computer software | New York class certified |
| | CP | *Drizin v. Sprint Corp.*, 785 N.Y.S.2d 428, 429 (N.Y. App. Div. Nov. 16, 2004) | Phone charges | New York class alleging Gen. Bus. Law § 349 and common law fraud claims certified |
| | CP | *In re Pharm. Indus. Average Wholesale Price Litig.*, 233 F.R.D. 229, 230-31 (D. Mass. 2006) | Various drugs | New York co-payor class certified |
| | AT | *In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 702 (S.D. Fla. 2004) | Drugs | New York class certified |
| | AT, CP | *In re Static Random Access memory (SRAM) Antitrust Litig.*, 264 F.R.D. 603, 617-22 (N.D. Cal. 2009) | Memory chips | Multi-state classes certified, including New York |
| | AT, CP | *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 583, 608-13 (N.D. Cal. 2010), *amended in part,* 2011 WL 3268649 (N.D. Cal. July 28, 2011) | LCD panels | Multi-state classes certified, including New York |
| **NC** | AT | *In re Pharm. Indus. Average Wholesale Price Litig.*, 233 F.R.D. 229, 230-31 (D. Mass. 2006) | Drugs | North Carolina co-payor class certified |
| | AT | *In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 702 (S.D. Fla. 2004) | Drugs | North Carolina class certified |
| | AT, CP | *In re Static Random Access memory (SRAM) Antitrust Litig.*, 264 F.R.D. 603, 617-22 (N.D. Cal. 2009) | Memory chips | Multi-state classes certified, including North Carolina |
| | AT, CP | *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 583, 608-13 (N.D. Cal. 2010), *amended in part,* 2011 WL 3268649 (N.D. Cal. July 28, 2011) | LCD panels | Multi-state classes certified, including North Carolina |
| **ND** | AT | *Ferrell v. Wyeth-Ayerst Labs.*, No. C-1-01-447, Order at 27 (S.D. Ohio June 30, 2004)  RJN Exhibit 1. | Estrogen replacement products | North Dakota class certified |
| | AT | *Ferrell v. Wyeth-Ayerst Labs.*, No. C-1-01-447, Order at 8 (S.D. Ohio Feb. 2, 2005)  RJN Exhibit 2. | Estrogen replacement products | North Dakota class certified |
| | AT | *In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 702 (S.D. Fla. 2004) | Drugs | North Dakota class certified |

| State | Type of Claim | Case Authority | Product Involved | Ruling |
|---|---|---|---|---|
| | CP | *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 540 (3d Cir. 2004) | Drugs | Certification of North Dakota class affirmed |
| | AT, CP | *Robinson v. EMI Music Dist., Inc.,* Civ. No. L10462, 1996 WL 495551, at *5 (Tenn. Cir. Ct. July 8, 1996) | CDs | Multi-state classes certified, including North Dakota |
| | AT | *In re Static Random Access memory (SRAM) Antitrust Litig.,* 264 F.R.D. 603, 617-22 (N.D. Cal. 2009) | Memory chips | Multi-state classes certified, including North Dakota |
| | AT | *In re TFT-LCD (Flat Panel) Antitrust Litig.,* 267 F.R.D. 583, 608-13 (N.D. Cal. 2010), *amended in part,* 2011 WL 3268649 (N.D. Cal. July 28, 2011) | LCD panels | Multi-state classes certified, including North Dakota |
| **SD** | AT | *Ferrell v. Wyeth-Ayerst Labs.,* No. C-1-01-447, Order at 27 (S.D. Ohio June 30, 2004)  RJN Exhibit 1. | Estrogen replacement products | South Dakota class certified |
| | AT | *Ferrell v. Wyeth-Ayerst Labs.*, No. C-1-01-447, Order at 8 (S.D. Ohio Feb. 2, 2005)  RJN Exhibit 2. | Estrogen replacement products | South Dakota class certified |
| | AT | "Order Granting Class Certification" (Nov. 21, 1995) in *Hagemann v. Abbott Labs., Inc.*, No. 94-221 (S.D. Cir. Ct., Hughes Cty.)  RJN Exhibit 18. | Infant formula | South Dakota class certified |
| | CP | *In re Pharm. Indus. Average Wholesale Price Litig.,* 233 F.R.D. 229, 230-31 (D. Mass. 2006) | Various drugs | South Dakota co-payor class certified |
| | AT | *In re S.D. Microsoft Antitrust Litig.,* 657 N.W.2d 668, 672 (S.D. 2003) | Computer software | Certification of South Dakota class affirmed |
| | AT | *In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 702 (S.D. Fla. 2004) | Drugs | South Dakota class certified |
| | AT, CP | *Robinson v. EMI Music Dist., Inc.,* Civ. No. L10462, 1996 WL 495551, at *5 (Tenn. Cir. Ct. July 8, 1996) | CDs | Multi-state classes certified, including South Dakota |
| | AT | *In re Static Random Access memory (SRAM) Antitrust Litig.,* 264 F.R.D. 603, 617-22 (N.D. Cal. 2009) | Memory chips | Multi-state classes certified, including South Dakota |
| | AT | *In re TFT-LCD (Flat Panel) Antitrust Litig.,* 267 F.R.D. 583, 608-13 (N.D. Cal. 2010), *amended in part,* 2011 WL 3268649 (N.D. Cal. July 28, 2011) | LCD panels | Multi-state classes certified, including South Dakota |

| State | Type of Claim | Case Authority | Product Involved | Ruling |
|---|---|---|---|---|
| **TN** | CP | *In re Pharm. Indus. Average Wholesale Price Litig.,* 233 F.R D. 229, 230-31 (D. Mass. 2006) | Various drugs | Tennessee co-payor class certified |
| | AT, CP | *Robinson v. EMI Music Dist., Inc.,* Civ. No. L10462, 1996 WL 495551, at *5 (Tenn. Cir. Ct. July 8, 1996) | CDs | Multi-state classes certified, including Tennessee |
| | AT | "Memorandum and Order" (Dec. 20, 2002) in *Sherwood v. Microsoft Corp.,* No. 99C-5362 at 21 (Tenn. Cir. Ct., Davidson Cty.)  RJN Exhibit 19. | Computer software | Tennessee class certified |
| | AT | *In re Static Random Access memory (SRAM) Antitrust Litig.,* 264 F.R.D. 603, 617-22 (N.D. Cal. 2009) | Memory chips | Multi-state classes certified, including Tennessee |
| | AT | *In re TFT-LCD (Flat Panel) Antitrust Litig.,* 267 F.R.D. 583, 608-13 (N.D. Cal. 2010), *amended in part,* 2011 WL 3268649 (N.D. Cal. July 28, 2011) | LCD panels | Multi-state classes certified, including Tennessee |
| **VT** | CP | *Ferrell v. Wyeth-Ayerst Labs.,* No. C-1-01-447, Order at 27 (S.D. Ohio June 30, 2004)  RJN Exhibit 1. | Estrogen replacement products | Vermont consumer class certified |
| | CP | *Ferrell v. Wyeth-Ayerst Labs.,* No. C-1-01-447, Order at 8 (S.D. Ohio Feb. 2, 2005)  RJN Exhibit 2. | Estrogen replacement products | Vermont consumer class certified |
| | CP | *In re Pharm. Indus. Average Wholesale Price Litig.,* 233 F.R D. 229, 230-31 (D. Mass. 2006) | Various drugs | Vermont co-payor class certified |
| | CP | *In re Pharmaceutical Industry Average Wholesale Price Litig.,* 252 F.R.D. 83, 109 (D. Mass. 2008) | Drugs | Vermont consumer and third party payor class certified |
| | AT, CP | *In re Relafen Antitrust Litig.,* 221 F.R.D. 260, 288 (D. Mass. 2004) | Drugs | Vermont among exemplar classes certified |
| | AT, CP | *In re TFT-LCD (Flat Panel) Antitrust Litig.,* 267 F.R.D. 583, 608-13 (N.D. Cal. 2010), *amended in part,* 2011 WL 3268649 (N.D. Cal. July 28, 2011) | LCD panels | Multi-state classes certified, including Vermont |
| **WV** | AT | *Ferrell v. Wyeth-Ayerst Labs.,* No. C-1-01-447, Order at 27 (S.D. Ohio June 30, 2004)  RJN Exhibit 1. | Estrogen replacement products | West Virginia class certified |
| | AT | *Ferrell v. Wyeth-Ayerst Labs.,* No. C-1-01-447, Order at 8 (S.D. Ohio Feb. 2, 2005)  RJN Exhibit 2. | Estrogen replacement products | West Virginia class certified |

| State | Type of Claim | Case Authority | Product Involved | Ruling |
|---|---|---|---|---|
| | AT, CP | *In re Relafen Antitrust Litig.*, 221 F.R.D. 260, 288 (D. Mass. 2004) | Drugs | West Virginia among exemplar classes certified |
| | AT | *In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 702 (S.D. Fla. 2004) | Drugs | West Virginia class certified |
| | AT, CP | *Robinson v. EMI Music Dist., Inc.*, Civ. No. L10462, 1996 WL 495551, at *5 (Tenn. Cir. Ct. July 8, 1996) | CDs | Multi-state classes certified, including West Virginia |
| | AT | *In re Static Random Access memory (SRAM) Antitrust Litig.*, 264 F.R.D. 603, 617-22 (N.D. Cal. 2009) | Memory chips | Multi-state classes certified, including West Virginia |
| | AT | *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 583, 608-13 (N.D. Cal. 2010), *amended in part,*2011 WL 3268649 (N.D. Cal. July 28, 2011) | LCD panels | Multi-state classes certified, including West Virginia |
| **WI** | AT | "Order Certifying Class Action" (July 25, 2001) in *Capp v. Microsoft Corp.,* No. 00 CV 0637 at 1 (Wis. Cir. Ct., Dane Cty.)  RJN Exhibit 20. | Computer software | Wisconsin class certified |
| | AT | "Order" (March 23, 1995) in *Carlson v. Abbott Labs., Inc.* No. 94-CV-002608 at 2 (Wis. Cir. Ct., Milwaukee Cty.) RJN Exhibit 21. | Infant formula | Wisconsin class certified |
| | AT | *Ferrell v. Wyeth-Ayerst Labs.,* No. C-1-01-447, Order at 27 (S.D. Ohio June 30, 2004)  RJN Exhibit 1. | Estrogen replacement products | Wisconsin class certified |
| | AT | *Ferrell v. Wyeth-Ayerst Labs.*, No. C-1-01-447, Order at 8 (S.D. Ohio Feb. 2, 2005)  RJN Exhibit 2. | Estrogen replacement products | Wisconsin class certified |
| | AT | "Decision And Order Granting Plaintiffs' Motion For Class Certification" (May 10, 2004) in *Feuerabend v. UST Corp*., No. 2002 CV 007124 at 15 (Wis. Cir. Ct., Milwaukee Cty.)  RJN Exhibit 22. | Smokeless tobacco | Wisconsin class certified |
| | CP | *In re Pharm. Indus. Average Wholesale Price Litig.,* 233 F.R.D. 229, 230-31 (D. Mass. 2006) | Various drugs | Wisconsin co-payor class certified |
| | AT | *In re Terazosin Hydrochloride Antitrust Litig*., 220 F.R.D. 672, 702 (S.D. Fla. 2004) | Drugs | Wisconsin class certified |
| | AT | *K-S Pharmacies, Inc. v. Abbott Laboratories*, 1996 WL 33323859, at *13 (Wis. Cir. Ct. May 17, 1996) | Drugs | Wisconsin class certified |

| State | Type of Claim | Case Authority | Product Involved | Ruling |
|-------|---------------|----------------|------------------|--------|
|  | CP | *Robinson v. EMI Music Dist., Inc.,* Civ. No. L10462, 1996 WL 495551, at *5 (Tenn. Cir. Ct. July 8, 1996) | CDs | Multi-state classes certified, including Wisconsin |
|  | AT | *In re Static Random Access memory (SRAM) Antitrust Litig.,* 264 F.R.D. 603, 617-22 (N.D. Cal. 2009) | Memory chips | Multi-state classes certified, including Wisconsin |
|  | AT | *In re TFT-LCD (Flat Panel) Antitrust Litig.,* 267 F.R.D. 583, 608-13 (N.D. Cal. 2010), *amended in part,* 2011 WL 3268649 (N.D. Cal. July 28, 2011) | LCD panels | Multi-state classes certified, including Wisconsin |