# Exhibit 58

SHEPPARD MULLIN RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
GARY L. HALLING, Cal. Bar No. 66087
JAMES L. MCGINNIS, Cal. Bar No. 95788
MICHAEL W. SCARBOROUGH, Cal. Bar No. 203524
Four Embarcadero Center, 17th Floor
San Francisco, California  94111-4106
Telephone:    415-434-9100
Facsimile:    415-434-3947
E-mail:       ghalling@sheppardmullin.com
                jmcginnis@sheppardmullin.com
                mscarborough@sheppardmullin.com

Attorneys for Defendant
SAMSUNG SDI CO., LTD.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>SAMSUNG SDI CO., LTD.,<br>                Defendant. | Case No. CR 11-0162 (WHA)<br><br>**SAMSUNG SDI CO., LTD.'S SENTENCING MEMORANDUM**<br><br>[Crim. L.R. 32-5(b)]<br><br>DATE:   August 16, 2011<br>TIME:    2:00 PM<br>COURT:  Hon. William Alsup |

1  Pursuant to Local Rule 32-5(b), defendant Samsung SDI Co., Ltd. ("Samsung SDI")
2  respectfully submits this Sentencing Memorandum to provide additional information
3  relevant to sentencing as requested by the Court's May 18, 2011 Order Requesting
4  Sentencing Information (the "Presentence Order") and in support of the findings and
5  recommendations of the U.S. Probation Office's Presentence Investigation Report (the
6  "PSR").  For the reasons below, and in accordance with the Confidential Sentencing
7  Recommendation of the Probation Office, Samsung SDI respectfully requests that the
8  Court approve the recommended sentence contained in the parties' Plea Agreement.

## I. Restitution Would Be Inappropriate In This Criminal Price-Fixing Case.

10  The parties have agreed to a recommended sentence providing that no order of
11  restitution be imposed in this case.  (Amended Plea Agreement, ¶ ¶ 8, 11).  The Court has
12  requested that the Probation Office address potential restitution.  (Presentence Order at
13  1:18-19).  The Probation Office has concluded that restitution would be inappropriate here
14  because quantifying the actual losses incurred by victims of the instant offense would
15  require a complex and time-consuming expert economic analysis that would unduly
16  complicate and prolong the sentencing process.  To date, the Probation Office reports that
17  it has received no objections—from potential victims, their counsel, or from any other
18  person—to the parties' agreement that no restitution order be imposed in this case.

19  The agreed disposition, fully supported by the Presentence Report, leaves Samsung
20  with closely court-supervised civil litigation and potentially damaging inferences in these
21  cases—in addition to the $32 million criminal fine.  While agreeing to this disposition and
22  extensive ongoing cooperation, Samsung respectfully submits that an additional and
23  essentially unprecedented restitution obligation for this type of case should not be added.
24  Such an order would delay and complicate the ultimate resolution of appropriate
25  compensation to victims.  The much broader pending claims for civil relief can be
26  expected to be resolved through settlements, which in turn will be evaluated by The
27  Honorable Samuel Conti and Special Master Judge Charles Legge to ensure that they are

fair and reasonable.

### A. Fashioning A Restitution Order Would Unduly Complicate And Prolong The Sentencing Process

Samsung SDI agrees with the Probation Office's assessment that criminal restitution would be unworkable here. Before it may order restitution, a sentencing Court must identify with specificity each potential victim of the offense, a difficult and complex task requiring analysis of the economic effects of the charged conspiracy. Next, the Court must be able to determine for each, (1) that the defendant's conduct in fact caused harm to that victim; and (2) the "precise dollar amount" of that victim's actual loss. Restitution "by its nature requires the calculation of [the] precise dollar amount" lost by each victim. *U.S. v. Moore,* 315 Fed.Appx. 16, 20 (9th Cir. 2008). *Accord*, *U.S. v. Barany*, 884 F.2d 1255, 1260 (9th Cir. 1989) ("the court's discretion in ordering restitution is not unlimited. The amount of restitution...must be definite and limited by the amount actually lost by the victims.") (internal quotations omitted).

Both the provisions of the U.S. Code and the Sentencing Guidelines that govern restitution caution that restitution should not be imposed where "determining complex issues of fact related to the cause or amount of the victim's losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process."[1] That is the case here especially considering the alternative compensation means available.

The legislative history of the restitution provisions makes it clear that complex economic crimes, such as this antitrust offense, are unsuitable for criminal restitution. According to the Senate Report, Congress' goal in precluding restitution where it would complicate and prolong the sentencing process was to "guarantee[] that the sentencing phase of criminal trials do not become fora for the determination of facts and issues better suited to civil proceedings." S. Rep. No. 104-179, at 18 (1995), as reprinted in 1996

---

[1] U.S.S.G. § 8B1.1(b)(2); *accord* 18 U.S.C. § 3663(a)(1)(B)(ii).

U.S.C.C.A.N. 924, 931 (emphasis added). Such issues include the fact and amount of victims' actual losses. *Id.* at 19 ("In all cases, it is the committee's intent that highly complex issues related to the cause or amount of a victim's loss not be resolved under the provisions of...restitution.").

Courts have similarly recognized that restitution should not be ordered where it would require complex factual findings. Congress "hoped to avoid creating a system that would, essentially, turn sentencing hearings into complicated, prolonged trials of the normal civil variety." *U.S. v. Gordon*, 393 F.3d 1044, 1060 (9th Cir. 2004). *Accord*, *U.S. v. Reifler*, 446 F.3d 65, 136 (2d Cir. 2006) ("Congress plainly intended that sentencing courts not become embroiled in intricate issues of proof" related to restitution).

Calculating the actual losses to victims caused by a defendant's participation in an antitrust conspiracy is exactly the type of issue that Congress wished to reserve for civil proceedings. Proof of the loss resulting from a price-fixing offense typically is based on an analysis of pricing in a competitive environment compared to prices for the defendant's product to the extent influenced by the conspiracy. The issues of whether an antitrust conspiracy in fact caused overcharges, i.e., the existence of "impact" or "injury", and, if such occurred, quantifying the actual amounts of such overcharges, involve particularly difficult and fact-intensive issues. Expert economists are normally retained to evaluate the available market data and create statistical models, which attempt to isolate and measure the effects of the conspiracy as distinguished from the many other economic factors that can affect market prices.

Such analyses are far more detailed and expert-dependent than the factual determinations typically made in the course of criminal sentencing, and are inimical to the "streamlined" sentencing process envisioned by Congress. *See Reifler*, 446 F.3d at 136 (Congress' decision to preclude restitution orders where they would unduly complicate or prolong sentencing "reflects Congress's intention that the process of determining an appropriate order of restitution be 'streamlined,' and that the restitution 'determination be made quickly'") (*quoting* S. Rep. No. 104-179, at 20-21 (1995), reprinted in 1996

-3-

1  U.S.C.C.A.N. at 933, 934).

2       Samsung SDI's research has not found a single case in which a sentencing court has
3  imposed a criminal restitution order in an antitrust case such as this one, thus suggesting
4  that such an order would be potentially unprecedented.

5       B.    <u>The Pending Civil Cases Are The Proper Forum For Compensating Victims</u>

6       Issues bearing on restitution are properly addressed and resolved in the class
7  actions, currently pending on behalf of direct and indirect purchasers of CRTs across the
8  United States, as well as direct action cases on behalf of individual purchasers, that have
9  been coordinated and transferred to the Northern District of California, where they are now
10 proceeding before The Honorable Samuel Conti and Special Master Charles Legge. *See*
11 *U.S. v. Ferguson*, 584 F.Supp.2d 447, 458 (D. Conn. 2008) (in securities case, fashioning
12 an order of restitution "would require a level of detail and precision that was not necessary
13 to calculate an appropriate fine [under the Sentencing Guidelines]….These complicated
14 issues are better resolved in the several pending civil proceedings").

15      The civil cases are a superior forum for compensating injured CRT purchasers:

16      (1)  The civil cases involve a broader relevant time period and include claims for
17 damages based on purchases of a wider class of CRT products.

18      (2)  Unlike here, the civil plaintiffs have the right to recover treble damages, and
19 joint and several liability—that is, liability against each defendant in the amount of three
20 times the damages caused by the entire alleged conspiracy.

21      (3)  The civil cases include claims for damages on behalf of both direct and indirect
22 CRT purchasers. By contrast, criminal restitution is statutorily limited to direct victims of
23 the charged offense. *See* 18 U.S.C. § 3663(a)(2) (defining "victim" as a person "directly
24 harmed" by the conspiracy). *Accord*, 18 U.S.C. § 3663A(a)(2) (for purposes of restitution
25 "the term 'victim' means a person directly and proximately harmed"); 18 U.S.C. § 3771(e)
26 (for purposes of statute enumerating "crime victims' rights," "'crime victim' means a person
27 directly and proximately harmed as a result of the commission of a Federal offense").
28

(4) In light of the broader scope and remedies in the civil cases, imposing criminal restitution in this case would be wasteful and inefficient, because it would encompass only a portion related to a single defendant of the much broader impact and damages analyses that the plaintiffs are conducting in the pending civil cases.

Both the direct and indirect purchaser CRT class plaintiffs are represented by experienced antitrust counsel who have obtained class certification and substantial recoveries in antitrust cartel price-fixing class actions, including in a number of recent multi-district litigations, or "MDLs," pending in the Northern District of California, including *In re Static Random Access Memory (SRAM) Antitrust Litigation* before The Honorable Claudia Wilken, *In re TFT-LCD (Flat Panel) Antitrust Litigation* before The Honorable Susan Illston, and *In re Dynamic Random Access Memory (DRAM) Antitrust Litigation* before The Honorable Phyllis Hamilton. In each of these cases, the plaintiffs' counsel retained numerous nationally known Ph.D. economists who prepared expert reports, including detailed analyses of impact and damages, totaling thousands of pages, including charts, graphs, and other exhibits, and such experts testified at deposition in support of their work.

The CRT civil cases are now progressing steadily following the lifting of a partial discovery stay requested by the Department of Justice. The parties are currently working toward completion of all document discovery, as well as deposition and expert discovery. The interim lead counsel for both the CRT direct and indirect purchaser plaintiffs informed the Probation Office that they anticipate the civil cases will be resolved in the next twelve months. the existence of a a corporate guilty plea can be expected to facilitate settlement of the civil cases.

## II. The Recommended Fine Properly Accounts For The Gain and Loss Resulting From The Charged Offense.

The Court has instructed the parties and the Probation Office to assess the "two alternative measures of fines, namely the gain to defendant and the injury to victims."

(Presentence Order at 1:16-19). As the Court's request indicates, the Sentencing Guidelines advise that the Base Fine for an organizational defendant should be calculated as the greater of "the pecuniary gain to the organization from the offense; or the pecuniary loss from the offense caused by the organization". U.S.S.G. § 8C2.4.

The Guidelines further advise, as noted by the Probation Office, that in a criminal price-fixing case the "pecuniary gain" and "pecuniary loss" resulting from the defendant's offense should be measured as "20 percent of the volume of affected commerce"—that is, 20 percent of the defendant's total sales of the price-fixed product during the relevant time period. U.S.S.G. § 2R1.1. In other words, the Guidelines effectively presume that the defendant's conduct resulted in an overcharge—a gain or loss—equal to 20 percent of the sales price.

The Guidelines' "volume of commerce" approach to measuring gain and loss in antitrust cases is designed to yield a fine that is significantly **greater** than the actual gain or loss caused by the offense. *See* ABA Section of Antitrust Law, ANTITRUST LAW DEVELOPMENTS, p. 790, n. 457 (5th ed. 2002) (as compared to actual pecuniary gain or loss, the 20 percent of the volume of commerce measure "almost always will lead to the largest fine level"). First, the actual overcharge caused by an antitrust conspiracy is likely to be significantly lower than 20 percent. Indeed, based on data from past antitrust cases, the U.S. Sentencing Commission has estimated that the average actual overcharge in price-fixing cases "is 10 percent of the selling price." U.S.S.G. § 2R1.1, Commentary.

This estimate is in line with a comprehensive economic study of cartel overcharges, which analyzed actual overcharges in nearly 800 antitrust cartel cases and concluded that the average overcharge was approximately 13.8 percent. *See* Marcel Boyer and Rachidi Kotchoni, "The Econometrics of Cartel Overcharges," (available online at http://www.cirano.qc.ca/pdf/publication/2011s-35.pdf). Thus, the Guidelines' 20 percent overcharge is almost always significantly higher than the average gain or loss caused by a defendant's participation in a price-fixing conspiracy.

Moreover, the Guidelines expressly provide that this method of calculating gain and

loss is necessary because in criminal antitrust cases, "damages are difficult and time-consuming to establish," and "specifying a volume of commerce" serves "to avoid the time and expense that would be required for the court to determine the actual gain or loss." U.S.S.G. § 2R1.1, Commentary ("The offense levels are not based directly on the damage caused or profit made by the defendant because damages are difficult and time consuming to establish. The volume of commerce is an acceptable and more readily measurable substitute [for such calculations]."); *accord U.S. v. Hayter Oil Co.*, 51 F.3d 1265, 1274 (6th Cir. 1995) (the Guidelines' approach to calculating the gain and loss caused by antitrust offenses is intended to give the government the "benefit of a per se rule both at trial and at sentencing to avoid the protracted inquiry into the day-to-day success of the conspiracy.").

Furthermore, the Guidelines require that, after calculating 20 percent of the defendant's total sales, a further multiplier be applied in light of the defendant's culpability score. *See* U.S.S.G. § 2R1.1(d)(2). This additional step further serves to ensure that a fine within the Guidelines Fine Range will significantly exceed actual gain or loss.

Here, the recommended fine under the parties' Plea Agreement is $32 million, which amounts to roughly 36% of Samsung SDI's total volume of affected commerce of $89 million. This fine amount reflects a Base Fine, calculated in accordance with the Guidelines as 20 percent of Samsung SDI's relevant sales, of $17.8 million. The recommended fine further reflects a culpability multiplier of approximately 1.8 (Base Fine of $17.8 million x 1.8 multiplier = $32 million). This 1.8 multiplier is more than two times higher than the minimum multiplier the Guidelines recommend to ensure the fine exceeds the actual overcharge. *See* U.S.S.G. § 2R1.1, Commentary ("A minimum multiplier of at least 0.75 ensures that fines imposed in antitrust cases will exceed the average monopoly overcharge.").

Thus, because Samsung SDI's Base Fine of $17.8 million is itself likely to be roughly twice as high as the actual overcharges, and that Base Fine was in turn multiplied by 1.8 to arrive at the recommended fine, the recommended fine of $32 million is almost

certainly significantly higher than any gain or loss actually caused by the charged conduct.

## III. The Recommended Fine Properly Reflects the Value of Samsung SDI's Continuing Cooperation With The Antitrust Division's Investigation.

As the Court is aware, the parties have agreed to a fine toward the lower end of the Guidelines Fine Range to reflect the value of Samsung SDI's past and ongoing cooperation with the Antitrust Division's investigation of the CRT industry. The Court has requested that the parties submit information regarding the extent of Samsung SDI's cooperation to date. (Presentence Order at 1:22-27). In light of the confidential nature of the Antitrust Division's investigation, and in accordance with the Court's Presentence Order permitting information regarding cooperation to be provided *in camera*, Samsung SDI is providing a summary of its cooperation to date in a separate supplemental submission lodged under seal. Samsung SDI understands that the Antitrust Division will provide further details regarding the extent and value of Samsung SDI's ongoing cooperation in its own submission to the Court.

## IV. Conclusion.

The terms of the plea were negotiated over a substantial period of time at arm's length by sophisticated parties. The parties' Amended Plea Agreement reflects a fair resolution of this case. The Probation Department agrees with the parties' proposed resolution.

Samsung SDI respectfully requests that the Court impose sentence accordingly.

Respectfully submitted,

Dated: August 8, 2011                SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

                                     By    */s/ Gary L. Halling*
                                           GARY L. HALLING
                                        Attorneys for Defendant
                                        SAMSUNG SDI CO., LTD.