# Exhibit 59

1 LIDIA MAHER (CSBN 222253)
MAY LEE HEYE (CSBN 209366)
2 TAI S. MILDER (CSBN 267070)
United States Department of Justice
3 Antitrust Division
450 Golden Gate Avenue
4 Box 36046, Room 10-0101
San Francisco, CA 94102-3478
5 Telephone: (415) 436-6660
Facsimile: (415) 436-6687
6 Attorneys for the United States

7
8        UNITED STATES DISTRICT COURT

9        NORTHERN DISTRICT OF CALIFORNIA

10          SAN FRANCISCO DIVISION

11

| | |
|---|---|
| 12 UNITED STATES OF AMERICA | ) No. CR 11-0162 (WHA) |
| 13    v. | ) UNITED STATES' SENTENCING |
| | ) MEMORANDUM |
| 14 SAMSUNG SDI COMPANY, LTD., | ) |
| | ) Date: August 16, 2011 |
| 15      Defendant. | ) Time: 2:00 p.m. |
| 16 | ) Court: Hon. William Alsup |
| 17 | ) |

18    Defendant Samsung SDI Company, Ltd. ("Samsung SDI") is scheduled for sentencing

19 before this Court on August 16, 2011. The United States files this Sentencing Memorandum,

20 including an accompanying Addendum and *Ex Parte* Motion to File Under Seal, in support of its

21 recommendation that the Court accept the proposed Plea Agreement pursuant to Fed. R. Crim. P.

22 11(c)(1)(C) and sentence the defendant to pay an agreed fine of $32 million.

23

24 **I.   INTRODUCTION**

25    On March 18, 2011, the United States filed an Information charging Samsung SDI with

26 participating in a conspiracy to suppress and eliminate competition by fixing prices, reducing

27 output, and allocating market shares of color display tubes ("CDTs"), a type of cathode ray tube

28 ("CRT") commonly used in computer monitors, sold in the United States and elsewhere, from at

U.S.' SENTENCING MEMORANDUM - PAGE 1
[CR-11-0162 WHA]

least as early as January 1997, until at least as late as March 2006, in violation of the Sherman Antitrust Act, 15 U.S.C. § 1. Samsung SDI waived indictment and, on May 17, 2011, entered a guilty plea under Fed. R. Crim. P. 11(c)(1)(C). A copy of the Samsung SDI 11(c)(1)(C) Amended Plea Agreement is attached as Exhibit A. At the May 17, 2011 hearing following acceptance of Samsung SDI's guilty plea, the Court ordered that a presentence investigation be conducted and report generated. On August 2, 2011, the parties received the final presentence report ("PSR"), which recommends that the Court accept the proposed Plea Agreement and sentence Samsung SDI to pay a criminal fine of $32 million, with no term of restitution.

## II.  BACKGROUND

This is the first plea agreement in the United States' ongoing antitrust grand jury investigation into price fixing in the CDT industry. Prior to the Samsung SDI Plea Agreement, six individuals were indicted in connection with their participation in the CDT conspiracy. The Indictments of those individuals have been related to this Court, as has the Information charging Samsung SDI with participation in the CDT conspiracy. *See United States v. Cheng Yuan "C.Y." Lin*, CR-09-0131 (WHA), *United States v. Wen Jun "Tony" Cheng*, CR-09-0836 (WHA), *United States v. Chung Cheng ("Alex") Yeh*, CR-10-0231 (WHA), and *United States v. Seung-Kyu "Simon" Lee; Yeong-Ug "Albert" Yang, a.k.a. Yeong-Wook Yang, a.k.a. Yong-Shu Yang, a.k.a. Yong-Shu Liang, a.k.a. Young-Uk Yang, a.k.a. Yeong-Eug Yang; and Jae-Sik Kim*, CR-10-0817 (WHA).

Samsung SDI indicated a willingness to cooperate with the grand jury investigation immediately following service of a grand jury subpoena. Since that time, Samsung SDI has provided valuable cooperation to the Antitrust Division in the course of the grand jury investigation, including providing access to witnesses and documents, which is further detailed in the Addendum to this Sentencing Memorandum. Samsung SDI is obligated to continue to provide such cooperation pursuant to the terms of its Plea Agreement. These continuing obligations will include the cooperation of Samsung SDI's current and former employees, with

the exception of four individuals specified in the Plea Agreement who remain subject to prosecution.

Multiple civil direct and indirect purchaser antitrust class actions, which provide plaintiffs the opportunity to pursue treble damages and to seek that the defendants be held jointly and severally liable, are currently pending against Samsung SDI and other CRT manufacturers. Over 40 such class actions were originally filed around the country alleging price fixing of CRT products. These cases were ordered transferred to this district for coordinated pretrial proceedings by order of the United States Judicial Panel on Multidistrict Litigation dated February 15, 2008. These consolidated actions were then assigned to Judge Samuel Conti, who has appointed the Honorable Charles Legge to serve as special master. *In Re Cathode Ray Tube (CRT) Antitrust Litigation*, Case No. 07-5944 SC, MDL No. 1917. Discovery is ongoing in these consolidated CRT MDL proceedings. It is the government's understanding that at least one corporate defendant, Chunghwa, has settled with plaintiffs in the civil case, and that settlement negotiations are underway with respect to other defendants.

### III. MATERIAL TERMS OF THE SDI PLEA AGREEMENT

The material terms of the Samsung SDI Plea Agreement include:

1. Samsung SDI will waive indictment, waive all rights as enumerated in the Plea Agreement, and plead guilty to a one-count Information charging it with participating in a conspiracy to suppress and eliminate competition by fixing prices, reducing output, and allocating market shares of CDTs sold in the United States and elsewhere, from at least as early as January 1997, until at least as late as March 2006 (the "relevant period"), in violation of the Sherman Antitrust Act, 15 U.S.C. § 1. During the relevant period, Samsung SDI was engaged in the sale of CDTs in the United States and elsewhere and employed 5,000 or more employees.

2. The United States and Samsung SDI agree that the appropriate sentence in this case is a fine of $32 million and a special assessment of $400. The fine is to be paid in full immediately upon imposition of sentence. Samsung SDI agrees to have its sentence determined

under the United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines"), although Samsung SDI understands the Sentencing Guidelines are advisory, not mandatory.

3. The United States and Samsung SDI further agree that the appropriate sentence in this case does not include a restitution order in light of the civil cases filed against Samsung SDI, including *In re Cathode Ray Tube (CRT) Antitrust Litigation*, Case No. 07-5944 SC, MDL No. 1917, in the United States District Court, Northern District of California, which potentially provide for a recovery of a multiple of actual damages and the opportunity for potential victims to pursue damages through non-class claims in the multidistrict litigation and other proceedings.

4. The United States agrees that it will not bring further criminal charges against Samsung SDI and its current and former officers, directors, and employees (except for the individuals specifically excluded from the Samsung SDI Plea Agreement) for their participation in any CDT conspiracy or color picture tube ("CPT") conspiracy. In return, Samsung SDI agrees to cooperate fully in the ongoing CRT investigation, including CDTs and CPTs. Samsung SDI has agreed to use its best efforts to secure the ongoing, full, and truthful cooperation of its current and former directors, officers, and employees, including making them available in the United States for interviews and producing documents located outside the country, which are likely beyond the jurisdictional reach of the government's grand jury subpoenas. The documents to be produced and interviews to be conducted, as well as additional proffered cooperation, will assist the government in its investigation.

**IV. UNITED STATES SENTENCING GUIDELINES CALCULATION**

Samsung SDI's fine is determined pursuant to Chapter 2, Part R of the Sentencing Guidelines, which governs antitrust offenses, and Chapter 8, which governs the sentencing of organizations. Specifically, U.S.S.G. § 2R1.1(d) lays out special instructions for fines applicable to an organization. Subsection (1) instructs that, "[i]n lieu of the pecuniary loss under subsection (a)(3) of § 8C2.4 (Base Fine), use 20 percent of the volume of affected commerce." As the Commentary to U.S.S.G. § 2R1.1 explains in Application Note 3, which specifically addresses U.S.S.G. § 2R1.1(d):

> Because the loss from price-fixing exceeds the gain, subsection (d)(1) provides that 20 percent of the volume of affected commerce is to be used in lieu of the pecuniary loss under U.S.S.G. § 8C2.4(a)(3). *The purpose for specifying a percent of the volume of commerce is to avoid the time and expense that would be required for the court to determine the actual gain or loss.* (Emphasis added)

In addition, U.S.S.G. § 8C2.4(c) states that "to the extent the calculation of either pecuniary gain or pecuniary loss would unduly complicate or prolong the sentencing process, that amount, *i.e.*, gain or loss as appropriate, shall not be used for the determination of the base fine." U.S.S.G. § 8C2.4(c).

Thus, in accordance with the instructions set out in the Sentencing Guidelines themselves, and because undertaking a calculation of pecuniary gain or loss would unduly complicate and prolong the sentencing process in this case, the parties' agreed Sentencing Guidelines calculations are based on the 20 percent of volume of affected commerce figure set out in U.S.S.G. § 2R1.1(d)(1) and § 8C2.4(b).

Use of the 20 percent figure is consistent with the Antitrust Division's practice in calculating criminal fines for plea agreements with corporations. Due to the *per se* nature of price fixing, the prosecution need not introduce evidence of harm resulting from the offense in order to establish a violation of the Sherman Act and secure a conviction. As a result, in a plea context, the Division does not typically undertake an economic analysis to determine gain or loss for purposes of calculating a criminal fine. Such an analysis would require the retention of economic experts to conduct complex econometric analyses that are time-consuming and expensive, and would lead to significant delay in the criminal case. Instead, the Division follows the instructions set out in the Sentencing Guidelines and uses the 20 percent of volume of affected commerce figure in order to calculate an appropriate fine for a typical corporate plea agreement. The government has no reason to believe that the gain or loss in the present case was substantially different from the overcharge estimations reflected in the Sentencing Guidelines. *See* U.S.S.G. § 2R1.1, Application Note 3.

U.S.' SENTENCING MEMORANDUM - PAGE 5
[CR-11-0162 WHA]

Accordingly, the parties agree to the following Sentencing Guidelines calculations, which are based on a volume of affected commerce under U.S.S.G. § 2R1.1(d)(1) of $89 million. The United States and Samsung SDI agree that the volume of affected commerce was calculated for purposes of this plea and sentencing only, and Samsung SDI does not object to the calculation for these specific and limited purposes.

1. Base Fine (20% of $89,000,000)            $17.8 million
   (Volume of Affected Commerce)
   (§ 2R1.1(d)(1) & § 8C2.4(b))

2. Culpability Score

   i. Base (§ 8C2.5(a))                                                   5
   ii. Involvement in or Tolerance of                                     5
       Criminal Activity (§ 8C2.5(b)(1))
   iii. Prior History (§ 8C2.5(c))                                        0
   iv. Violation of Order (§ 8C2.5(d))                                    0
   v. Obstruction of Justice (§ 8C2.5(e))                                 0
   vi. Effective Program to Prevent and                                   0
       Detect Violations of Law (§ 8C2.5(f))
   vii. Self-Reporting, Cooperation, and                                 -2
        Acceptance of Responsibility (§ 8C2.5(g)(2))

Total Culpability Score:                                                  8

Minimum and Maximum Multipliers (§ 8C2.6)                            1.6 - 3.2

Minimum and Maximum Fine Range (§ 8C2.7)                          $28.5M - $57M

The United States and Samsung SDI agree to a fine of $32 million, which represents a fine amount within the Guidelines range. This fine takes into account the extensive cooperation that has been provided and will continue to be provided by Samsung SDI pursuant to the terms of its Plea Agreement, should the Court accept it. Samsung SDI's cooperation is detailed in the accompanying Addendum to this Sentencing Memorandum, which is filed under seal.

## V. RESTITUTION

Under U.S.S.G. § 8B1.1(b)(2), restitution is not applicable if "the number of identifiable victims is so large as to make restitution impracticable," or "determining complex issues of fact

related to the cause or amount of the victim's losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process." U.S.S.G. § 8B1.1(b)(2).

      The government believes that the complexity of this case and the resulting difficulty of making any accurate estimation of damages as part of a sentencing proceeding make restitution inappropriate in the context of this plea agreement. The international nature of the CDT industry – which involves production and sales around the world and largely overseas – heightens the factual complications that would be involved in trying to ascertain appropriate restitution. For example, such an analysis would require determining which organizations or entities, from both a factual and legal perspective, are appropriately deemed "victims" entitled to recovery in the United States. Measuring damages in the context of this plea agreement would require the hiring of economic experts to design economic models and conduct complex regression analyses to attempt to isolate the harm that can be attributed to the cartel behavior. Parsing out the precise cause and extent of the harm and controlling for other variables would be extremely complicated, given the international aspects of the industry and conspiracy. Similar to the challenges involved in attempting to calculate gain or loss, trying to measure and allocate restitution during the sentencing process for this plea agreement would be exceedingly complex and result in significant delay.

      Moreover, parties who believe they are victims entitled to relief have already filed numerous parallel civil cases against Samsung SDI and others to seek recovery for the type of conduct Samsung SDI has been charged with criminally, and settlements in those civil cases are underway. The civil process provides potential victims with a variety of options to expand their recovery well beyond that which would be available as part of restitution in the criminal case. For example, victims have the opportunity to seek treble damages in such civil suits for violations of the Sherman Act, as plaintiffs are doing here, and thus recover sums well beyond the actual harm suffered. *See* 15 U.S.C. §§ 15 *et seq.* Plaintiffs may also seek to impose joint and several liability upon defendants in the civil cases. In addition, the allegations in the civil cases are in some respects more broad and expansive than the charges in the criminal case; for

example, they involve a longer time frame, additional products, and may involve additional types and levels of purchasers, such as indirect purchasers, who would likely not qualify as "victims" entitled to criminal restitution.

The government understands that numerous economic experts have already been retained by the civil parties to conduct the complicated economic analyses that are required in the civil context to determine damages. Multiple expert reports are currently being generated to assess the damages suffered by different parties at various levels in the purchasing chain. If restitution were to be imposed as part of this criminal sentencing proceeding, it would be inefficient and conducted in a hasty fashion without the benefit of the many resources available on the civil side. Further, the parties seeking recovery in the civil cases may have additional legal and factual arguments for why they are due compensation that would not be presented or applicable here. A determination of "victim" status in the criminal case – or more importantly, a lack of such designation – could adversely affect arguments certain parties might advance on the civil side when seeking recovery.

Finally, while the Antitrust Division at times seeks restitution as part of its plea agreements in bid-rigging cases, for example, where victims are easily identifiable and discrete, and the cause and amount of the harm is readily calculable, price-fixing cases typically do not lend themselves to such readily calculable determinations. As a result, it is uncommon for the Antitrust Division to seek, and it appears uncommon for courts to impose, restitution as a result of plea agreements in antitrust cases that involve only price fixing. After an internal review of recent Antitrust Division cases, we have been unable to identify any pure Title 15 price-fixing cases where restitution has been either sought or imposed. The cases where restitution has been sought and imposed generally involve bid rigging, Title 18 offenses, or a public rather than a private victim, such as a government agency. In contrast, this case involves a pure price-fixing charge in an international cartel case involving private victims who are seeking recovery through treble damage civil actions, where the harm is not readily calculable and would be difficult to resolve.

In sum, because of the complexities in determining appropriate restitution in this case, and because civil suits have already been filed by victims to recover treble damages from Samsung SDI and other defendants, the government has not sought restitution as part of Samsung SDI's Plea Agreement and believes that complex issues of fact related to the cause or amount of the victims' losses would unduly complicate and prolong sentencing pursuant to this plea agreement. This position is consistent with the recommendation of the Probation Office following its presentence investigation that no restitution order be imposed as part of the disposition of this plea agreement.

## VI. CONCLUSION

In conclusion, the government respectfully requests that the Court adopt the Probation Office's sentencing recommendation and accept the proposed Samsung SDI 11(c)(1)(C) Plea Agreement.

DATED: August 8, 2011					Respectfully submitted,


							/s/ Lidia Maher
							Lidia Maher
							May Lee Heye
							Tai S. Milder
							Antitrust Division
							U.S. Department of Justice