Exhibit 74

*Case Name:*

# Canada (Commissioner of Competition) v. Toshiba of Canada Ltd.

**RE: The Commissioner of Competition, Applicant
(Respondent to the Motion), and
Toshiba of Canada Limited, Respondent (Moving Party)**

[2011] O.J. No. 2032

2011 ONSC 949

Court File No. 93/10

Ontario Superior Court of Justice
Divisional Court

**H.J. Wilton-Siegel J.**

Heard: June 17 and August 5, 2010; February 10, 2011.
Judgment: April 12, 2011.

(123 paras.)

*Criminal law -- Appeals -- Leave to -- Procedure -- Motion by Toshiba Canada (TC) for leave to
appeal the denial of its interlocutory motion for production of documents by the Commissioner of
Competition dismissed -- The Commissioner commenced an inquiry to determine whether certain
foreign companies, including Toshiba Japan, had lessened competition regarding the sale of
cathode ray tubes -- TC submitted that the Rules of Civil Procedure should apply given its third
party relationship to the investigation of Toshiba Japan -- However, the investigation was a
criminal one and the Criminal Proceedings Rules applied -- The Divisional Court therefore had no
jurisdiction to entertain the appeal.*

Motion by the respondent Toshiba Canada for leave to appeal to the Divisional Court an order
denying its interlocutory motion. In August 2007, the Commissioner of Competition commenced an
inquiry to determine whether certain foreign companies had engaged in a cartel to lessen
competition with regards to the manufacture and sale of cathode ray tubes in Canada. Toshiba
Japan, of which Toshiba Canada was a subsidiary, was one of the foreign companies identified by

the Commissioner. Pursuant to the unsuccessful interlocutory motion, Toshiba Canada sought an order for production of documents, particularly the internal inquiry commencement memorandum, in the possession or control of the Commissioner. The Commissioner took the position that Toshiba Canada was not entitled to appeal the decision as the investigation was a criminal proceeding to which the Criminal Proceedings Rules applied. Those rules did not provide for an appeal of an interlocutory order. In contrast, Toshiba Canada took the position that the Rules of Civil Procedure should apply given its third party relationship to the criminal investigation of Toshiba Japan.

HELD: Motion dismissed. The investigation was a criminal one that was being conducted by the criminal matters branch of the Competition Bureau. Criminal proceedings could not be characterized as civil proceedings in relation to involved parties other than the accused. As a result, the interlocutory motion was governed by the Criminal Proceedings Rules and there was thus no jurisdiction in the Divisional Court to entertain Toshiba Canada's appeal.

**Statutes, Regulations and Rules Cited:**

Canadian Charter of Rights and Freedoms, 1982, R.S.C. 1985, App. II, No. 44, Schedule B, s. 7, s. 8, s. 24(1), s. 52

Competition Act, R.S.C. 1985, c. C-34, s. 10, s. 10(1)(b)(iii), s. 11(1), s. 11(2), s. 15, s. 45, s. 46, s. 65

Courts of Justice Act, R.S.O. 1990, c. C.43, s. 19(1)(b)

Criminal Proceedings Rules of the Superior Court of Ontario,

Rules of Civil Procedure, R.R.O. 1990, Reg. 194, Rule 62.02, Rule 62.02(4)

**Counsel:**

Neal J. Smitheman, Antonio Di Domenico and Huy Do, for the Plaintiff.

Jim Marshall, Stéphane Hould and Douguld Brown, for the Defendant.

---

ENDORSEMENT

**1   H.J. WILTON-SIEGEL J.**:-- The moving party, Toshiba of Canada Limited (the "applicant" or "Toshiba Canada"), seeks leave to appeal to the Divisional Court the order of Croll J. dated January 27, 2010 (the "Order") denying an interlocutory motion of the applicant (the "Interlocutory Motion"). Pursuant to the Interlocutory Motion, the applicant sought an order for production of

documents in the possession or control of the Commissioner of Competition (the "Commissioner"), including in particular its internal inquiry commencement memorandum (the "ICM"). The applicant also sought an order to cross-examine the affiant of an affidavit filed in support of an earlier ex parte order obtained by the Commissioner requiring the applicant to produce certain records pursuant to section 11 of the Competition Act, R.S.C. 1985, c. C-34, as amended (the "Act").

**2**    The applicant's motion presents two principal issues. As described below, the applicant has brought a motion to set aside or vary the ex parte order obtained by the Commissioner (the "Main Motion"). The Interlocutory Motion was brought in respect of the Main Motion. The first issue is whether the Interlocutory Motion is appealable. This depends upon whether or not the Main Motion is governed by the criminal or civil rules of procedure. The second issue is whether leave ought to be granted for the applicant to appeal the decision of the motions judge to deny the requested production and to deny leave to cross-examine the affiant.

Background

The Ex Parte Order

**3**    On August 20, 2007, the Commissioner commenced an inquiry under paragraph 10(1)(b)(iii) of the Act to determine whether fifteen foreign companies had engaged in a cartel to unduly lessen competition in respect of the manufacture, supply and sale of cathode ray tubes ("CRTs") in, to or from Canada between 1994 and 2007 contrary to section 45 of the Act. Section 45 of the Act, which is set out below, is a criminal prohibition punishable by fines up to $10 million and/or imprisonment for up to five years.

**4**    Toshiba Canada is a Canadian subsidiary of Toshiba Corporation ("Toshiba Japan"), one of the foreign companies identified by the Commissioner in respect of the alleged cartel agreement. In addition to Toshiba Japan, there are five other foreign corporations that are alleged to have participated that also have Canadian subsidiaries.

**5**    It is agreed that Toshiba Canada's business consists principally of the sale in Canada of Toshiba branded products made outside of Canada, including products containing CRTs, and does not involve the manufacture of CRTs or any products containing CRTs.

**6**    The Commissioner obtained the earlier ex parte order of Croll J. dated August 29, 2007 (the "Ex Parte Order") directed against Toshiba Canada.

**7**    The materials filed in support of the application were an affidavit of Guillaume Couillard ("Couillard") sworn August 28, 2007 (the "Couillard Affidavit"), a draft order and a copy of the Act. Couillard is a senior competition law officer in the criminal matters branch of the Competition Bureau, which branch is conducting the inquiry described above.

**8**    The relevant portions of the Ex Parte Order are as follows:

AND UPON being satisfied that an inquiry is being made under section 10 of the Act relating to possible offences under Part VI of the said Act in the sale and supply of cathode ray tubes in, to or from Canada;

AND UPON being satisfied that Toshiba of Canada Limited has or is likely to have information that is relevant to the inquiry;

AND UPON being satisfied that Toshiba of Canada Limited's affiliate, Toshiba Corporation, has records that are relevant to the inquiry;

THIS COURT ORDERS THAT, pursuant to paragraphs 11(1)(b) and 11(2) of the Act, Toshiba of Canada Limited ...

Shall produce to the Commissioner of Competition or her authorized representative, all records and other things identified in Schedule "A" attached hereto which are in the possession, power or control of Toshiba of Canada Limited or its affiliate, Toshiba Corporation, to be produced no later than 90 days from the date of service of this Order.

**9**    Schedule "A" to the Ex Parte Order lists thirteen categories of information including records respecting (1) the use of CRTs produced and sold by Toshiba Japan and Toshiba Canada (collectively, "Toshiba"); (2) production costs of CRTs, televisions using CRTs and monitors using CRTs (collectively, "CRT Products"); (3) distribution channels of CRT Products produced by Toshiba; (4) the sale of colour picture tubes and colour display tubes, and products incorporating these items, in Canada and worldwide together with market share data; (5) pricing information for CRT Products; (6) Canadian customers for CRT Products; and (7) the impact of alternative technologies to CRT Products. Schedule "A" also lists all records relating to communications and agreements between producers/suppliers of CRT Products relating to pricing, market allocation, customer allocation, supply or sale of CRTs in, to or from Canada as well as records of any meetings of members of the alleged CRT cartel that is the subject of the Commissioner's investigation.

**10**    Upon being served with the Ex Parte Order, Toshiba Canada delivered a copy of it to Toshiba Japan. Toshiba Canada requested that Toshiba Japan provide it with all records and other things identified in Schedule "A" to the Ex Parte Order that were in its possession, power or control. Toshiba Japan declined. Accordingly, Toshiba Canada did not produce to the Commissioner the records and other things identified in Schedule "A" to the Ex Parte Order that may be in the possession, power or control of Toshiba Japan (the "Toshiba Japan Records").

**11**    On February 6, 2008, and pursuant to a joint application by Toshiba Canada and the Commissioner, Croll J. varied the Ex Parte Order. As varied, the Ex Parte Order stayed the portion of the Ex Parte Order that required Toshiba Canada to produce the Toshiba Japan Records until the final disposition of the Main Motion.

**12**    However, the Ex Parte Order, as varied, does not stay the requirement of the Ex Parte Order that Toshiba Canada produce all records and other documents identified in Schedule "A" to the Ex Parte Order that were in Toshiba Canada's possession, power or control. Accordingly, during the period between February 28, 2008 and August 14, 2008, Toshiba Canada delivered 113,823 documents to the Commissioner that were in its possession, power or control pursuant to the requirement of the Ex Parte Order (the "Toshiba Canada Records").

**13**    As varied, the Ex parte Order also dealt with the return of the Toshiba Canada Records in the event that Toshiba Canada was successful on the Main Motion:

> THIS COURT FURTHER ORDERS THAT, in the event that Toshiba of Canada Limited is successful in its motion to vary or quash the August 29, 2007 ex parte Order in respect of the records produced pursuant to paragraphs 1.1 and 2 above, the Commissioner of Competition or her authorized representative shall return such records to Toshiba of Canada Limited and not make any use of such records to the prejudice of Toshiba of Canada Limited.

**14**    The parties are agreed that this provision deals only with the disposition of the Toshiba Canada Records in the event Toshiba Canada is successful in its motion to declare section 11 of the Act unconstitutional without regard to any issue of Charter rights pertaining to the circumstances in which the Commissioner obtained the Ex Parte Order. It is agreed that the variation to the Ex Parte Order did not address the disposition of the Toshiba Canada Records in the event Toshiba Canada is successful in its motion for relief based on the alleged breach of its Charter rights notwithstanding a determination that section 11 of the Act is constitutionally valid. The issue of a proceeding seeking declaratory relief in respect of such alleged breach had not been considered by the parties at the time of the variation of the Ex Parte Order.

Relevant Provisions of the Competition Act

**15**    Section 10 of the Act addresses the commencement of inquiries under the Act:

> 10.    (1) The Commissioner shall ...

> (b)      whenever the Commissioner has reason to believe that ...

> (iii)    an offence under Part VI or VII has been or is about to be

> committed, ...

cause an inquiry to be made into all such matters as the Commissioner considers necessary to inquire into with the view of determining the facts.

**16**   The relevant portions of section 11 of the Act provide as follows:

> 11.(1) If, on the ex parte application of the Commissioner or his or her authorized representative, a judge of a superior or county court is satisfied by information on oath or solemn affirmation that an inquiry is being made under section 10 and that a person has or is likely to have information that is relevant to the inquiry, the judge may order the person to ...

> (b)   produce to the Commissioner or the authorized representative of the Commissioner within a time and at a place specified in the order, a record, a copy of a record certified by affidavit to be a true copy, or any other thing, specified in the order; ...

> (2)   Where the person against whom an order is sought under paragraph (1)(b) in relation to an inquiry is a corporation and the judge to whom the application is made under subsection (1) is satisfied by information on oath or solemn affirmation that an affiliate of the corporation, whether the affiliate is located in Canada or outside Canada, has records that are relevant to the inquiry, the judge may order the corporation to produce the records.

**17**   Accordingly, in this proceeding, the Commissioner relied on section 11(1)(b) to obtain the Ex Parte Order in respect of Toshiba Canada's obligation to deliver the Toshiba Canada Records in its own possession, and on section 11(2) to obtain the Ex Parte Order in respect of Toshiba Canada's obligation to deliver the Toshiba Japan Records.

**18**   Section 45 of the Act sets out the conspiracy offence in the Act and reads as follows:

> 45.(1) Every person commits an offence who, with a competitor of that person with respect to a product, conspires, agrees or arranges

> (a)   to fix, maintain, increase or control the price for the supply of the product;

> (b)   to allocate sales, territories, customers or markets for the production or supply of the product; or

> (c)   to fix, maintain, control, prevent, lessen or eliminate the production

or supply of the product.

**19**     Section 46 of the Act provides for an offence in the implementation of a conspiracy and reads as follows:

> 46.(1) Any corporation, wherever incorporated, that carries on business in Canada and that implements, in whole or in part in Canada, a directive, instruction, intimation of policy or other communication to the corporation or any person from a person in a country other than Canada who is in a position to direct or influence the policies of the corporation, which communication is for the purpose of giving effect to a conspiracy, combination, agreement or arrangement entered into outside Canada that, if entered into in Canada, would have been in contravention of section 45, is, whether or not any director or officer of the corporation in Canada has knowledge of the conspiracy, combination, agreement or arrangement, guilty of an indictable offence and liable on conviction to a fine in the discretion of the court.

### The Motion to Vary the Ex Parte Order

**20**     Toshiba Canada has brought the Main Motion seeking to vary or quash the Ex Parte Order on four grounds.

**21**     The first ground is an assertion that section 11 of the Act in its entirety or, alternatively, subsection 11(2) of the Act on its own, is unconstitutional.

**22**     Second, the applicant seeks to vary or quash the Ex Parte Order on the ground that its rights under section 8 of the Canadian Charter of Rights and Freedoms (the "Charter") have been breached, and the rights of its directors and officers under section 7 of the Charter have also been breached, in the circumstances of the issuance of the Ex Parte Order. These assertions arise from, and are based on, the applicant's belief that it is also the subject of an undisclosed criminal investigation under section 46 of the Act. This argument assumes that section 11, including section 11(2), is constitutionally valid.

**23**     The applicant says that, given the alleged undisclosed criminal investigation against it, its rights under section 8 of the Charter have been breached because the Ex Parte Order was issued under section 11 of the Act without a requirement of demonstration of reasonable and probable cause, as would be required to obtain a search warrant under section 15 of the Act. In addition, Toshiba Canada notes that a search warrant issued under section 15 of the Act would not extend to records in the power or control of Toshiba Japan rather than Toshiba Canada.

**24**     The third ground on which the applicant seeks to vary or quash the Ex Parte Order is an allegation that the disclosure provided to the Court by the Commissioner in obtaining the Ex Parte

Order was inadequate and misleading on issues material to the Court's exercise of its discretion under section 11 of the Act. The specific non-disclosure alleged falls into the following three broad categories.

**25**   The applicant alleges that the Commission has failed to disclose that Toshiba Canada is the target of an investigation under section 46 of the Act, that the Commissioner has "crossed the Rubicon" in respect of such an investigation and is of the view that there are grounds to assert that Toshiba Canada has committed an offence under section 46 of the Act, and that the Commissioner had an ulterior purpose in obtaining the Ex Parte Order, which was the investigation of the commission of an offence by Toshiba Canada under section 46 of the Act.

**26**   The applicant also alleges that the Commissioner has an undisclosed agenda of using the Ex Parte Order for the improper purpose of collecting documentation for foreign authorities of states with whom Canada does not have mutual legal assistance treaties (being the European Union and Japan).

**27**   The applicant further alleges that the Commissioner failed to disclose that Couillard had no reasonable basis for his belief that Toshiba Japan had control or possession of relevant records after 2003 when it transferred its CRT business to Matsushita Toshiba Picture Display Co., Ltd. ("Display Corporation"), a joint venture between Toshiba Japan and Matsushita Electric Industrial Co., Ltd. in which Toshiba Japan held only a minority interest.

**28**   The last ground on which the applicant seeks to vary or quash the Ex Parte Order is that the Commissioner's actions constitute an abuse of process because the Commissioner is using section 11 of the Act inappropriately to gather foreign documents that cannot be obtained under treaties sanctioned by Parliament to assist a foreign regulatory body to prosecute a corporation with no presence in Canada and over which the Competition Bureau has no jurisdiction. This is related to, but separate from, the allegation of the failure of the Commissioner to make disclosure of this alleged purpose in its application for the Ex Parte Order.

The Interlocutory Motion

**29**   As mentioned, in support of the Main Motion, the applicant brought the Interlocutory Motion seeking an order for production of documents in the possession or control of the Commissioner, in particular the ICM, and an order permitting it to cross-examine Couillard.

**30**   The applicant sought disclosure of the ICM in order to make its case that an investigation of Toshiba Canada under section 46 of the Act is already underway and, therefore, that its Charter rights have been breached. The purposes of the request to cross-examine Couillard are set out below.

**31**   The motions judge denied the relief sought on the Interlocutory Motion in the Order for the reasons set out in an endorsement dated January 27, 2010 (the "Reasons"). The particular grounds

for denying the requested relief are discussed below.

**32**    It is relevant for the jurisdictional issue below that, in the Notice of Motion/Application and Constitutional Issue in respect of the Main Motion, the applicant does not seek a declaration that its Charter rights have been infringed but rather seeks an order quashing the Ex Parte Order on the grounds of Charter violations that resulted from the circumstances of the alleged undisclosed criminal investigation against it. While the Notice of Motion does include a request for declaratory relief, the declaratory relief sought is directed toward the unconstitutionality of section 11 or section 11(2), which claims are not based on the assertion that Toshiba Canada is an undisclosed target of a criminal investigation under section 46 of the Act.

**33**    It appears that Toshiba Canada first suggested that it also sought declaratory relief in respect of the alleged Charter violations pertaining to the circumstances of the Ex Parte Order in response to the Commissioner's position on this leave motion that the applicant is not entitled to appeal the Interlocutory Motion because the proceedings commenced under section 10 of the Act are criminal proceedings. In order to assert that it is entitled to rely on the principle in the Kourtessis decision, infra, in the manner described below, the applicant asserted that the pleadings in the Notice of Motion/Application and Constitutional Issue should be read as a request for declaratory relief not only in respect of the unconstitutionality of the provisions of section 11 or 11(2) of the Act but also in respect of the alleged breach of Toshiba Canada's Charter rights as a result of the manner and circumstances in which the Commissioner obtained the Ex Parte Order.

**34**    I would note that this distinction between declaratory relief in respect of the unconstitutionality of the relevant provisions of the Act and in respect of the alleged breach of the applicant's Charter rights is also relevant to the relief sought in the Interlocutory Motion. The applicant does not require disclosure of the ICM or cross-examination of Couillard in order to make its case on the hearing of the Main Motion in respect of the constitutional validity of sections 11 and 11(2). It seeks such disclosure, particularly disclosure of the ICM, to make the case it believes would be revealed by the ICM that its Charter rights have been infringed by the manner and circumstances in which the Commissioner obtained the Ex Parte Order.

Issues on the Present Motion for Leave to Appeal

**35**    As mentioned, this leave motion presents two issues: (1) whether the Divisional Court has jurisdiction to hear an appeal of the Order; and (2) if so, whether the applicant has satisfied the requirements of Rule 62.02 of the Rules of Civil Procedure, R.R.O. 1990, Reg. 194, as amended, for an order granting leave. I will address these issues in turn.

Jurisdictional Issue

**36**    The Criminal Proceedings Rules of the Superior Court of Ontario do not have any provisions governing the procedure or applicable test for granting leave from an interlocutory order of the Court. The applicant brings this motion instead pursuant to section 19(1)(b) of the Courts of Justice

Act, R.S.O. 1990, c. C-43, and Rule 62.02 of the Rules of Civil Procedure. The Court must therefore determine whether the Interlocutory Motion is governed by the Criminal Proceedings Rules or the Rules of Civil Procedure.

Position of the Parties

**37**    The Commissioner submits that the investigation commenced under section 10 of the Act referred to in the Ex Parte Order is a criminal proceeding and, accordingly, the Criminal Proceedings Rules apply to the Main Motion and any interlocutory motion brought in respect of the Main Motion. The Commissioner argues that, since the Criminal Proceedings Rules do not provide for an appeal of an interlocutory order, the applicant is not entitled to appeal the Order.

**38**    The applicant says that the Divisional Court has jurisdiction to hear an appeal of the Order on two grounds. First, it says that the object of the investigation, even if criminal, should not determine the rights of Toshiba Canada, which is a third party to the criminal investigation of Toshiba Japan. It says that, given its third party relationship to the criminal investigation of Toshiba Japan, the Main Motion and any interlocutory proceeding brought in connection with the Main Motion should be governed by the Rules of Civil Procedure. Second, in the alternative, the applicant submits that, insofar as it seeks declaratory relief on the Main Motion to the effect that the actions of the Commissioner in obtaining the Ex Parte Order contravened the applicant's rights under section 8 of the Charter, it seeks a civil remedy and, accordingly, the Rules of Civil Procedure should apply.

Analysis and Conclusions

**39**    I will address each of the issues raised by the applicant in turn after a short overview.

　Overview

**40**    The applicant's argument presents two separate issues.

**41**    First, the applicant argues that the Interlocutory Motion can be appealed on the basis that it is a civil rather than a criminal proceeding. In my opinion, the answer to this question necessarily depends upon whether the Main Motion - to set aside, vary or quash the Ex Parte Order - is a civil proceeding given Toshiba Canada's relationship to the situation.

**42**    I conclude that the Main Motion, and therefore the Interlocutory Motion, are criminal proceedings and are therefore governed by the Criminal Proceedings Rules.

**43**    Second, the applicant argues that, in such circumstances, and given its relationship to the situation, it is entitled to bring an application for declaratory relief of the nature contemplated in Kourtessis, infra, in respect of its allegations of Charter violations. The applicant submits that, in the present proceeding, the Main Motion should be treated for procedural purposes as a civil proceeding governed by the Rules of Civil Procedure to the extent that the applicant seeks declaratory relief in

respect of such alleged Charter violations within the Main Motion.

**44**   I conclude that there are two substantive procedural difficulties which preclude assertion of the remedy for declaratory relief contemplated by Kourtessis in the manner proposed by the applicant. I also conclude that, even if it were possible for the applicant to assert such a remedy in this proceeding, the Court should exercise its discretion to refuse to entertain an application for declaratory relief in the present circumstances.

Is the Interlocutory Motion a Criminal Proceeding to which the Criminal Proceedings Rules Apply?

**45**   I am of the opinion that the Main Motion, and therefore any interlocutory proceedings brought in connection with the Main Motion, must be characterized as criminal proceedings to which the Criminal Proceedings Rules apply on the principle set out in Knox Contracting Ltd v. Canada, [1990] 2 S.C.R. 338, per Sopinka J. at para. 54. If an underlying proceeding is a matter of criminal law, it follows that an application to review an order given in furtherance of the underlying proceeding is also a matter of criminal law.

**46**   In this case, both the Main Motion and the Interlocutory Motion relate to the review of the Ex Parte Order, which was granted under section 11 of the Act and was explicitly stated to be in furtherance of an alleged violation of section 45 of the Act. Provisions in the nature of section 45 have been held to be criminal in nature: see Goldman et al v. Hoffman-LaRoche Ltd, [1987] O.J. No. 529 (C.A.), at para. 32. If a prosecution were authorized under section 45 of the Act, it would take place in a criminal court and would be a criminal proceeding.

**47**   In reaching this conclusion, I have rejected two submissions of the applicant by which it seeks to exclude the operation of the principle in Knox in the present circumstances.

**48**   First, the applicant argues that, at this stage of the Competition Bureau's investigation, the Ex Parte Order was an administrative order or, at least, was not a criminal order and, therefore, the Main Motion and Interlocutory Motion must be civil proceedings. However, while section 11 orders have been issued for administrative purposes in other contexts, this is not the case in the present circumstances.

**49**   As set out above, the Ex Parte Order expressly refers to a criminal investigation as the purpose or object of the Order. It states that an inquiry is being made under section 10 of the Act relating to possible offences under Part VI of the Act. The investigation is being conducted by the criminal matters branch of the Competition Bureau. The ex parte application was commenced under the Criminal Proceedings Rules and the applicant acknowledges that the Main Motion was brought as an interlocutory motion in those proceedings.

**50**   Second, the applicant argues that, even if the proceeding that commenced with the ex parte application of the Commissioner is criminal in nature, it is not so characterized vis-à-vis Toshiba Canada at the present time. It submits that, because the Commissioner has not indicated an intention

to investigate possible criminal activity by Toshiba Canada, any proceeding brought by Toshiba Canada must be treated as a civil proceeding. I do not think this correct.

**51**    Criminal proceedings once commenced against a party cannot be characterized as civil proceedings vis-à-vis parties other than the accused who are involved in the proceeding. There is no support for such a distinction in any case law provided by the applicant. Nor is it practicable, for example in court proceedings requiring the attendance and participation of both the accused and a third party. As discussed below, it would appear that third party proceedings to challenge the validity of legislation that is specifically applicable to the third party must be pursued by a separate proceeding. Further, in taking this position, the applicant is asserting a position that is inconsistent with its own position on the Main Motion and on the jurisdictional issue addressed in the next section, which is that the Commissioner is also conducting an investigation into a possible violation of section 46 of the Act by Toshiba Canada, its directors and its officers in respect of a criminal offence committed by Toshiba Japan.

**52**    In addition, I would note that the applicant relies upon a statement of Sopinka J. at para. 85 of Kourtessis, infra, that suggests that an application to set aside an ex parte authorization to wiretap under the Criminal Code is a civil procedure. In para. 88, Sopinka J. goes on to suggest that a motion to set aside such an application partakes of the same character as an action for a declaration of constitutional validity based on the Charter if such proceedings are combined. In the present context, these statements could be taken as support for the position that the Main Motion is a civil proceeding.

**53**    However, in reviewing the decisions relied upon by McIntyre J. in Wilson v. The Queen, [1983] 2 S.C.R. 594, upon whose dicta Sopinka J. in turn relies, it would appear that the characterization of any such application was not addressed in those decisions. In fact, the decisions may imply that any such application would be governed by criminal rules of procedure: see, for example the jurisdictional basis on which leave to appeal was denied in Re Turangan and Chui and The Queen, (1976) 32 C.C.C. (2d) 249 (B.C.C.A.). In any event, as I read Kourtessis, this position of Sopinka J. was probably obiter dicta and, in any event, was not accepted by the majority and, as such, is not the law in Canada. Rather, it would appear that, while the Superior Court has jurisdiction to hear a motion to vary or quash an ex parte order made under section 11 of the Act, any such motion, including in the present circumstances the Main Motion, would be governed by the Criminal Proceedings Rules.

>    Can the Interlocutory Motion be Characterized as a Motion Governed by the
>    Rules of Civil Procedure Requesting Declaratory Relief?

**54**    The applicant's alternative submission on jurisdiction relies on the decision of the Supreme Court in Kourtessis v. Canada (Minister of Revenue), [1993] 2 S.C.R. 53. The applicant argues, in effect, that the principle in Knox is displaced to the extent that, in the Main Motion, the applicant seeks declaratory relief regarding the breach of its Charter rights by the Commissioner.

### Preliminary Comments Regard the Remedy Described in Kourtessis

**55**    In Kourtessis, LaForest J. and Sopinka J., in different ways, considered the manner in which the courts should give effect to the principle that general federal legislation should not be interpreted or applied to deny an effective remedy where there has been a breach of the Charter. In circumstances where no other reasonable remedy would otherwise exist, they held that a civil remedy in the form of declaratory relief was available to an aggrieved party. Each of LaForest J. and Sopinka J. appear to have considered that such a proceeding would be a civil proceeding that would, accordingly, be governed by the Rules of Civil Procedure.

**56**    In the present proceeding, the applicant argues that, insofar as the Main Motion is a motion for declaratory relief that the applicant's Charter rights have been breached by the manner and circumstances in which the Commissioner obtained the Ex Parte Order, the Main Motion should be treated conceptually as analogous to a stand-alone application initiated in the Superior Court for declaratory relief and thereby governed by the Rules of Civil Procedure. The applicant says that, unless the Superior Court assumes jurisdiction in respect of the applicant's motion for declaratory relief, it will have no reasonably effective procedure for constitutional review of the validity of the issue of the Ex Parte Order in the circumstances in which it is an undisclosed target of a criminal investigation. It should be noted, as well, that the applicant concedes that this principle would only be applicable insofar as the Main Motion is directed toward seeking a declaration that its rights under the Charter have been violated.

**57**    I agree with the applicant that, in several respects, its position appears to be similar to that of the applicant in Kourtessis.

**58**    As in Kourtessis, the applicant has delivered its own documents and other records to the Commissioner pursuant to the Ex Parte Order. Also, as in Kourtessis, there is no certainty that any criminal proceeding will be commenced against it. Absent a criminal proceeding commenced against it under section 46 of the Act or a proceeding based on a failure to comply with the Ex Parte Order, there may not be a forum in which Toshiba Canada can raise the issue of whether, by mandating delivery of these documents and in retaining them indefinitely, the government has breached the applicant's rights under section 8 of the Charter, or the directors' and officers' rights under section 7 of the Charter.

**59**    In addition, I do not accept the respondent's argument that it is clear that the civil remedy contemplated in Kourtessis is limited to actions challenging the validity of a statute and does not extend to actions challenging the validity of the actions of the government under a statute.

**60**    The Commissioner submitted that the inherent jurisdiction of the Superior Court to render declaratory judgments, which forms the basis for the civil remedy contemplated in Kourtessis, extends only to proceedings under section 52 of the Charter that address the constitutional validity of legislation enacted by either branch of Parliament. The Commissioner argued that the inherent jurisdiction of the Superior Court does not extend to declaratory relief in respect of proceedings

under section 24(1) of the Charter that address the validity of actions of the government pursuant to validly enacted legislative authority.

**61**   While it is correct that the decisions of LaForest J. and Sopinka J. in Kourtessis address only declarations of the constitutional validity of applicable legislation, I think it is at least arguable that the jurisdiction of the Superior Court is not so restricted, based on the case law cited to the Court and the passage in H.W.R. Wade, Administrative Law, 6th ed. (Oxford: Clarendon Press, 1988) at 594 cited by Sopinka J. at para. 94 of Kourtessis.

**62**   Notwithstanding the foregoing, however, I am not persuaded that the Interlocutory Motion should be treated as a civil motion governed by the Rules of Civil Procedure under the principles of Kourtessis for two general reasons: (1) there are two substantive procedural difficulties with the assertion of the applicant's request for declaratory relief that preclude reliance on that claim as a basis for the jurisdiction of the Divisional Court; and (2) the present circumstances differ in several significant respects from the circumstances in Kourtessis that would have the result of denying the applicant the right to proceed with an application for declaratory relief respecting the alleged infringement of the applicant's Charter rights at the present time. These two considerations will be addressed in turn.

Procedural Issues

**63**   I have two substantive concerns relating to the nature of the remedy asserted by the applicant based on the discussion in Kourtessis regarding the declaratory remedy envisaged by the Supreme Court. Each concern is sufficient, on its own, to exclude the applicant's jurisdictional argument based on Kourtessis.

**64**   First, I read the decision in Kourtessis to require that the proceeding for declaratory relief be commenced in a separate proceeding from the criminal proceeding that has given rise to the need for the requested relief. In Kourtessis, the proceeding was apparently commenced by way of originating petition under the civil rules of procedure in British Columbia. This requirement proceeds from the fact that, as in Kourtessis, it is the absence of any meaningful opportunity in the criminal proceedings for a determination of the applicant's Charter rights that gives rise to the need for a declaratory remedy based on the Court's inherent jurisdiction. While the Supreme Court was prepared to address the validity of the action for declaratory relief in Kourtessis notwithstanding what it regarded as an improper procedure, the decision indicates that greater procedural clarity would be required in respect of future actions of this nature.

**65**   The need for a separate legal proceeding is demonstrated by the complexity resulting from the applicant's assertion in the present proceeding that the motion for declaratory relief is conceptually severable from the remainder of the Main Motion. The applicant submits, in effect, that the Interlocutory Motion is governed by the Criminal Proceedings Rules except to the extent that an issue pertains to the declaratory relief sought in the Main Motion, in respect of which the Interlocutory Motion is governed by the Rules of Civil Procedure. As the consequences of such a

distinction extend beyond the issue of the availability of a right to appeal, such a distinction necessarily increases, if not ensures, undesirable procedural overlap and delay that could be avoided by commencement of a separate proceeding.

**66**    Accordingly, because the applicant's claim for declaratory relief has been asserted within the Main Motion, rather than by way of a separate application in the Superior Court, the applicant's jurisdictional argument based on the assertion of a claim for declaratory relief must fail.

**67**    Second, even if it were possible for the applicant to assert a claim for declaratory relief in the present proceeding, I think it is too late to assert that claim for the first time in a motion for leave to appeal the Order. While the Supreme Court was prepared to consider the merits of the declaratory action commenced in that proceeding despite considerable procedural confusion, I think it made it clear that any future action must meet a higher standard. In particular, a party commencing an action for declaratory relief in respect of an issue of Charter rights must do so in a manner that is sufficiently clear that a court can address the appropriateness of such a remedy at an early stage in the proceeding.

**68**    This requirement flows from the fact that the right to pursue declaratory relief does not exist in every circumstance of alleged Charter violations. To the contrary, in the following passages, the Supreme Court expressly contemplates a substantive determination by a court regarding whether it is appropriate in the particular circumstances of a given proceeding to entertain an action for declaratory relief:

> 45.    The policy concern against allowing declarations, even of unconstitutionality, as a separate and overriding procedure is that they will, in many cases, result in undesirable procedural overlap and delay. As long as a reasonably effective procedure exists for the consideration of constitutional challenges, I fail to see why another procedure must be provided. This is consistent with the discretion to grant the declaratory remedy in its traditional use (see Zamir, supra, c. 6; Terrasses Zarolega Inc. v. Régie des installations olympiques, [1981] 1 S.C.R. 94). It is also consistent with the practice in respect of public interest standing declarations, where the courts are concerned that there be no other reasonable and effective way to bring the issue before the courts; see Canadian Council of Churches v. Canada (Minister of Employment and Immigration), [1992] 1 S.C.R. 236. ...

> 51.    ... Since the action for a declaration is a discretionary remedy, however, I think it would be proper for a judge, in the exercise of his or her discretion, to consider the specific circumstances presented and to refuse to entertain the action if satisfied that criminal proceedings against the accused would be initiated within a reasonable time. This would avoid the overlap and delay that have been among the major informing considerations in devising the rules for the governance of the discretion to allow or not to allow an action for a declaration to proceed. [per

LaForest J.]

96.   ... The superior courts have jurisdiction to entertain such applications even if the superior court to which the application is made is not the trial court. However, a superior court has a discretion to refuse to do so unless, in the opinion of the superior court, given the nature of the violation and the need for a timely review, it is better suited than the trial court to deal with the matter. See Mills, supra, per Lamer J. at pp. 891-96, and per La Forest J. at pp. 976-77, affirmed by the full Court in R. v. Smith, supra, at pp. 1129-30. The superior court would therefore have jurisdiction to entertain an action for a declaration seeking this kind of relief but subject to the same discretion to refuse to exercise it. The superior court's discretion to decline to exercise its jurisdiction on the basis set out in Mills and Smith, supra, is buttressed by the discretionary nature of declaratory relief by virtue of which the court can refuse to entertain such an action for a variety of reasons. The court is justified in refusing to entertain the action if there is another procedure available in which more effective relief can be obtained or the court decides that the legislature intended that the other procedure should be followed. [per Sopinka J.]

**69**   Such a determination requires the exercise of discretion by a judge of the Superior Court based on the specific circumstances of the case to be considered against the principle of whether another procedure is available in which more effective relief can be obtained. Given the availability of production and discovery under civil rules of procedure, this is not a determination that can be deferred until the hearing of the substantive proceeding.

**70**   However, to date in this proceeding, there has been no determination by any court of the appropriateness of an action for declaratory relief in respect of the circumstances under which the Commissioner obtained the Ex Parte Order. Accordingly, neither party has specifically addressed the considerations that, in its opinion, would be relevant for such a determination. Absent a prior determination of this issue, I do not think that the Court can accept the jurisdictional argument of the applicant based on the entitlement of the applicant to a civil proceeding for declaratory relief. This is not a determination that can properly be made by this Court on this leave motion on the basis of the record before it, nor is it appropriate for such a determination to be made by the Divisional Court on the hearing of an appeal of the Order if leave were granted.

### The Present Circumstances Differ From the Circumstances in Kourtessis

**71**   If, however, it were held that it is appropriate for this Court to address the applicant's position that it is entitled to pursue a civil remedy of the nature contemplated in Kourtessis, I would conclude that the present circumstances differ from those in Kourtessis in two respects that are significant. On the basis of these differences, I would conclude that the applicant is not entitled to pursue the civil remedy contemplated in that decision. The following is my analysis of the operation of the principle in Kourtessis in the present proceeding.

**72**   First, unlike in Kourtessis, there are two other circumstances in which the applicant will have a forum to raise the alleged infringement of its Charter rights.

**73**   Section 65 of the Act provides that it is an offence under the Act to fail to comply with an order under section 11 without good and sufficient cause. Toshiba Canada can raise the issue of its Charter rights by way of a defence to any proceeding initiated against it under section 65 of the Act. In the present circumstances, it could have done so prior to delivery of the Toshiba Canada Records. It is still open to the applicant to do so in any future proceeding in which the Commissioner asserts that Toshiba Canada failed to comply with the Order in respect of the Toshiba Japan Records.

**74**   In addition, while I do not think that the right of Toshiba Canada to assert its Charter rights in any criminal proceedings initiated against it under section 46 is sufficient, in general, to address the need for an adequate remedy given the uncertain timing of any such proceeding, I think it is sufficient to address a particular submission of the applicant.

**75**   Toshiba Canada suggests that, even if no investigation of Toshiba Canada is underway at the present time, the use of the Toshiba Canada Records to prosecute Toshiba Japan under section 45 of the Act could result in a violation of Toshiba Canada's Charter rights. It argues that its Charter rights would be infringed if a proceeding were commenced against it at a later date under section 46 of the Act in respect of any offence of Toshiba Japan established on the basis of the Toshiba Canada Records. To the extent that there is a legitimate concern in these remote circumstances, the applicant's ability to assert the alleged Charter violations as a defence to the section 46 proceedings against it at such time is, in my opinion, sufficient to displace the applicant's entitlement to declaratory relief in respect of this particular concern.

**76**   Second, as described above, despite certain similarities between the present circumstances and the situation in Kourtessis, there is one other significant difference. Toshiba Canada provided the Toshiba Canada Records to the Commissioner in the course of an investigation into an alleged offence committed by a third party to the Order, being Toshiba Japan, rather than an alleged offence committed by Toshiba Canada.

**77**   The applicant does not suggest that it is clear that the Commissioner would be unable to use the Toshiba Canada Records in any proceeding commenced against Toshiba Japan even if Toshiba Canada were successful on the Main Motion in obtaining a declaration that its Charter rights, and/or those of its officers and directors, were violated by the manner in which the Commissioner obtained the Ex Parte Order. As mentioned above, the parties agree that the variation of the Ex Parte Order made on consent on February 6, 2008 did not address this issue. The applicant also does not suggest that Toshiba Japan would be able to assert any rights under the Charter in respect of the manner in which the Commissioner obtained the Ex Parte Order.

**78**   Therefore, in the present circumstances, a finding that the Commissioner breached the Charter rights of Toshiba Canada would not dispose of the issue of the Commissioner's right to retain and use the documentation delivered by Toshiba Canada. While it would determine the right of the

Commissioner to retain and use the Toshiba Canada Records in any proceeding against Toshiba Canada, it would not determine the right of the Commissioner to retain and use the Records in any proceeding that may be commenced against Toshiba Japan. In fact, the argument of Toshiba Canada addressed above implies that Toshiba Canada considers that the Commissioner would be entitled to use the Toshiba Canada Records for such purpose. Accordingly, any declaratory relief received by the applicant regarding its Charter rights would not be meaningful in the manner contemplated by Kourtessis.

**79**   This has an important consequence given the basis of the Court's inherent jurisdiction to grant declaratory relief. A declaration is a discretionary remedy. It is used in proceedings against the Crown where there is no other means of enforcement. It assumes that the parties will act upon the declaratory order. Being a discretionary remedy, the Court will, however, withhold the exercise of its discretion in circumstances in which a declaration cannot meaningfully be acted upon by parties. In the present case, unless and until there is a determination that the Commissioner cannot retain and use the Toshiba Canada Records in a proceeding against Toshiba Japan, there is no action to be taken in response to any declaratory relief in favour of Toshiba Canada. In my opinion, for this reason, the remedy of declaratory relief contemplated by Kourtessis would not be available to the applicant in the present circumstances.

**80**   Based on the two differences that distinguish the present circumstances from those in Kourtessis, I conclude that if it were necessary to reach a conclusion on the issue, the Court would exercise its discretion to refuse to entertain an application for declaratory relief respecting the alleged infringement of the applicant's Charter rights at the present time.

Conclusion

**81**   On the basis of the foregoing, I conclude that there is no jurisdiction in the Divisional Court to entertain the applicant's appeal of the Order and, accordingly, the motion for leave to appeal the Order must be dismissed.

Application of the Test for Leave to Appeal in Rule 62.02 of the Rules of Civil Procedure

**82**   Based on the foregoing, it is unnecessary to address whether the applicant has satisfied the requirements of Rule 62.02 for an order granting leave to appeal. I have, however, set out my conclusions on this issue below in case I am found to have erred in reaching the conclusions expressed above.

Test for Leave to Appeal

**83**   The applicant brings this motion pursuant to section 19(1)(b) of the Courts of Justice Act. The grounds upon which leave may be granted are set out in Rule 62.02(4) of the Rules of Civil Procedure which provides as follows:

    (4)    Leave to appeal shall not be granted unless,

        (a)    there is a conflicting decision by another judge or court in Ontario or elsewhere in the matter involved in the proposed appeal and it is, in the opinion of the judge hearing the motion, desirable that leave to appeal be granted; or

        (b)    there appears to the judge hearing the motion good reason to doubt the correctness of the order in question and the proposed appeal involves matters of such importance that, in his or her opinion, leave to appeal should be granted.

**84**    In the present proceeding, the applicant submits that it has satisfied the requirements of Rule 62.02(4)(b). The standard for demonstration that there is good reason to doubt the correctness of a decision is demonstration that the correctness of the order is open to very serious debate rather than that the decision is wrong or probably wrong: see Ash v. Lloyd's Corp., [1992] O.J. No. 894 (Ont. Ct. (Gen. Div.)), per Farley J., and Klein v. American Medical Systems, Inc., [2006] O.J. No. 2188 (S.C.), per Swinton J.

      Issues on the Appeal

**85**    The applicant argues that there is reason to doubt the correctness of the decision of the motions judge on two matters: (1) the denial of the requested production, and (2) the denial of leave to cross-examine Couillard. I will address each issue in turn.

      The Applicant's Motion for Production

**86**    The applicant argues that the motions judge erred in dismissing its motion for production on three grounds:

        1.    that she failed to consider the evidence, and in particular, the significance of the ICM;

        2.    that she misapplied the applicable test for production of documents, and 3. that she prejudged fundamental issues not at issue on the motion before her.

      Alleged Failure to Consider the Evidence

**87**    At paragraph 23 of the Reasons, the motions judge concluded that "beyond referring to the description of the ICM in the Agreed Statement of Facts, Toshiba Canada has not demonstrated that information in the ICM is likely to be relevant to the allegations made in the Main Motion". The ICM is described in the Agreed Statement of Facts as:

... an internal document that is not disclosed to the public unless such disclosure is required by law as it is the internal work product of the Bureau and may contain confidential information, such as the identity of confidential informants and immunity applicants, a summary of any confidential information provided by immunity applicants, particulars of the confidential investigations that are ongoing in Canada and elsewhere, strategic issues to be considered by the Commissioner and often, privileged advice from counsel.

**88**    The applicant says that, given this description, the motions judge misapprehended the evidence in reaching the conclusion that the ICM was not relevant to the issues on the Main Motion. It says the ICM is "by definition" relevant to its allegations that (1) Toshiba Canada is a de facto target of a section 46 investigation under the Act; (2) the Commissioner has "crossed the Rubicon" in respect of such an investigation under section 46 of the Act; and (3) the Commissioner has an ulterior purpose in obtaining the Ex Parte Order, namely an investigation of the commission of an offence under section 46 of the Act and/or the gathering of documentation to assist foreign regulatory bodies of states with whom Canada does not have mutual legal assistance treaties to prosecute a corporation over which the Competition Bureau has no jurisdiction.

**89**    Even where a party has a "case to make" rather than a "case to meet", it must do more than merely allege a case in order to obtain production. In this case, the Commissioner denies that it is proceeding in the manner alleged by the applicant. I see no basis for the Court to presume that the Commissioner is acting in bad faith in the absence of any evidence that supports the applicant's assertions. In asserting its right to production without any evidence to support its allegations, the applicant is therefore engaging in a "speculative, fanciful, disruptive, unmeritorious, obstructive and time-consuming" process: R. v. Chaplin, [1995] 1 S.C.R. 727, at para. 32. It is seeking the right to engage in a fishing expedition that the motions judge properly concluded fails to meet the test of relevance. In my opinion, the motions judge was correct in reaching her conclusion on relevance.

Alleged Misapplication of the Test for Production

**90**    The applicant argues that the motions judge applied the incorrect test for production of documents. The applicant argues that the motions judge required the applicant to demonstrate that the documentation sought, including the ICM, was "likely relevant and logically probative to an issue in the main application".

**91**    It says that this is the proper test where documentation sought is in the hands of third parties. It submits, however, that where the documentation sought is in the hands of a party to the proceedings, as in the present case, the proper test is "potential relevance" to the relief requested.

**92**    In R v. Chaplin, supra, the Supreme Court addressed the standard of relevance in respect of documentation in the hands of the Crown where the existence of allegedly relevant material was disputed. It held the applicable standard in such circumstances to be "potential relevance", defining "relevance" to mean that there is a reasonable possibility of the material being useful to the accused

in making a full answer and defence.

**93**    In R. v. O'Connor, [1995] 4 S.C.R. 411, the Supreme Court addressed the standard of relevance in respect of documentation in the hands of third parties. It held the applicable standard in such circumstances to be "likely relevance", defining "relevance" in this context to mean there is a reasonable possibility that the information is logically probative to an issue at trial or the competence of a witness to testify. There is a suggestion at para. 22 of this decision that this standard is higher than the standard in Chaplin.

**94**    The applicant says that the motions judge applied the standard in O'Connor when she should have applied the standard in Chaplin. Whether or not this is correct, I do not think it is meaningful in the present proceeding for the reason that it is clear that the motions judge considered that the applicant could not succeed on either standard. Given the absence of any evidence whatsoever supporting the applicant's three allegations, the applicant cannot establish that there is in existence further material that is either likely or potentially relevant, nor can it establish that there is a reasonable possibility that there is information in existence that is logically probative to an issue on the Main Motion.

**95**    The motions judge makes the basis of her decision very clear in para. 24 of the Reasons in distinguishing the present action from the circumstances in Canada (Attorney-General) v. O'Neill (2005), 198 C.C.C. (3d) 143 (Ont. S.C.). The motions judge expressly notes that there was some evidence in O'Neill that went to the real purpose of the search whereas there is no similar evidence on the record in the present proceeding.

**96**    I am not persuaded that the motions judge erred in reaching this conclusion. The mere existence of the ICM, as described in the Agreed Statement of Facts, is insufficient on either standard, if indeed there continues to be a difference between these standards, to establish relevance in the present circumstances. As the respondent argues, it is insufficient to simply allege a theory to establish relevance, even in circumstances of alleged breaches of constitutional rights.

Alleged Prejudgment of Issues

**97**    Lastly, the applicant argues that the motions judge prejudged several issues on the Main Motion in reaching her decision to deny the applicant's requested relief.

**98**    First, the applicant says that at para. 26 of the Reasons, the motions judge found that Toshiba Canada was not a target of an investigation under section 46 of the Act and as such there was no entitlement or presumptive right to disclosure of documents relating to the investigation. I do not think the applicant's characterization of this statement of the motions judge is accurate. I do not read the statement of the motions judge as going beyond a finding that there is no evidence before the Court that Toshiba Canada was the subject of such an investigation and, accordingly, it was not entitled to production on the ground of relevance, as discussed above.

**99**     Second, the applicant submits that the motions judge made a finding at para. 28 of the Reasons that the Commissioner had not crossed the Rubicon into a criminal investigation. I also do not think this is an accurate characterization of this statement of the motions judge. It is clear from several sentences in para. 28 that the motions judge is simply stating that there is no evidence before the Court to support the applicant's allegations and there are a constellation of factors that appear to cast doubt on the applicant's position. It is also clear from para. 29 that the motions judge makes these statements in the context of assessing the relevance of the requested documentation.

**100**     Lastly, at para. 38 of the Reasons, the motions judge stated that she accepted that the information sought in the Ex Parte Order was information and records that Toshiba Canada would possess. The applicant alleges this constitutes a finding of fact and that nothing in the Couillard affidavit supports such a finding. I do not agree. I think it is clear from para. 38 that the motions judge is addressing whether or not there is a reasonable basis in the Couillard affidavit for the conclusion that Toshiba Japan would possess the records and information sought by the Commissioner. The motions judge concluded correctly that there is no basis for an order of production of the ICM to address this issue. In any event, the applicant's real issue is the reasonableness of the conclusion in the Couillard affidavit in respect of the documentation sought pertaining to the Display Corporation. For this, the applicant seeks leave to cross-examine Couillard. This is addressed in the next section.

The Applicant's Motion for Leave to Cross-Examine Couillard

**101**     The motions judge correctly identified the issue with respect to the applicant's motion for leave to cross-examine Couillard as being whether the applicant has demonstrated that the cross-examination will elicit testimony tending to undermine the Ex Parte Order on the basis that there has not been full and plain disclosure or that the operation of section 11 in this case infringes the applicant's rights under sections 7 or 8 of the Charter: see R. v. Garofoli, [1990] 2 S.C.R. 1421, per Sopinka J. at p. 1465.

**102**     The applicant makes the same submission regarding application of the wrong standard of relevance in respect of the motions judge's determination of the request for leave to cross- examine as it makes in respect of the request for production. However, while the applicant argues that the standard of "will elicit testimony" suggests that the motions judge applied a higher standard than a "reasonably probable" standard, I think it is clear from the totality of her analysis that the motions judge did, in fact, apply a standard of reasonable probability.

**103**     In any event, for the reasons stated above in respect of the issue of production, I am satisfied that the motions judge was correct in concluding that there was no basis for a cross-examination to determine whether there had been non-disclosure by the Commissioner in respect of the alleged non-disclosure (1) that Toshiba Canada is the target of an investigation under section 46 of the Act; and (2) that the Commissioner has an ulterior purpose of using the Ex Parte Order to collect documentation for certain foreign authorities. There is no evidentiary basis whatsoever in respect of

the applicant's allegations regarding such alleged non-disclosure to justify either production of the ICM or cross-examination of Couillard on such matters.

> Requested Relief Respecting Right to Cross-Examine Regarding Records of Display Corporation

**104**     The issue of leave to cross-examine Couillard is therefore limited to the issue of whether the applicant should be permitted to cross-examine regarding the applicant's allegation that the Commissioner failed to disclose that Couillard had no reasonable basis for his belief that Toshiba Japan had control or possession of relevant records after 2003 when it transferred its CRT business to the Display Corporation, in which Toshiba Japan held only a minority interest.

> Issue Raised by the Applicant on the Interlocutory Motion

**105**     It would appear that, in the hearing before the motions judge, the request for leave to cross-examine Couillard proceed exclusively or principally as a motion to cross-examine Couillard on the basis for the general belief expressed in his affidavit that Toshiba Japan had possession or control of all the Toshiba Japan Records sought by the Commissioner. The relevant portion of the decision of the motions judge is paragraph 38 of the Reasons. In reaching my conclusion on this issue, I have proceeded on the basis that the reference to "Toshiba Canada" in the second last sentence of paragraph 38 of the Reasons is in error and was intended to be a reference to "Toshiba Japan".

**106**     In paragraph 38, the motions judge addresses the question of whether the applicant should be granted leave to cross-examine Couillard to establish his reasons for his belief that the relevant records are in the possession of Toshiba Japan. The motions judge denied leave on the basis that the Couillard affidavit clearly states the evidence that Couillard relied upon and reflects a reasonable and informed understanding of commercial practice. I take this to be a finding that there is no evidence that Couillard failed to set out the basis for his belief that the documents sought are in the hands of Toshiba Japan and, in particular, that there is no evidence that the Couillard affidavit failed to disclose any matter that is material to Couillard's reasons for his belief. It should be noted that the applicant did not offer any evidence to support its allegation that Toshiba Japan does not have in its possession or control the records and documentation sought by the Commissioner.

**107**     In these circumstances I see no reason to doubt the correctness of the motions judge's general conclusion that there is no basis to grant leave to cross-examine Couillard on the reasons for his belief that the relevant records and documentation are in the hands of Toshiba Japan.

> Issue Raised by the Applicant on this Motion

**108**     As mentioned, however, on this motion, the applicant has raised the specific issue of the correctness of this conclusion insofar as it relates to the records and documentation sought by the Commissioner in respect of the business and affairs of the Display Corporation after its formation in

2003. I note that the Commissioner did not object to the Court's consideration of this issue on this motion.

**109**    The applicant says it seeks to cross-examine Couillard to establish that either (1) the Commissioner knew and failed to disclose that Toshiba Japan did not have the documentation of the Display Corporation sought under the Ex Parte Order in its possession and control; or (2) alternatively, that Couillard should have known that Toshiba Japan did not have such documentation in its possession or control after 2003 but failed to conduct an adequate inquiry to establish this fact.

   Analysis and Conclusion

**110**    The joint venture is described in paragraph 33 of the Agreed Statement of Facts as follows:

> The Competition Bureau does not dispute for purposes of the present motion that: (a) effective April 1, 2003, Matsushita Toshiba Picture Display Co., Ltd, a joint venture corporation was formed by Toshiba Corporation (35.5%) and Matsushita Electric Industrial Co., Ltd. (64.5%); and (b) in March of 2007, Toshiba Corporation sold its interest in Matsushita Toshiba Picture Display Co., Ltd. to Matsushita Electric Industrial Co., Ltd.

**111**    The Couillard Affidavit refers to the joint venture and to Display Corporation in paragraphs 50 and 51, respectively. The Couillard Affidavit does not, however, refer to the fact that Toshiba Japan had only a minority interest in the joint venture either in these paragraphs or elsewhere in the affidavit. It also does not appear that this minority relationship in the Display Corporation would have been disclosed in the other materials described in paragraph 38 of the Reasons as the sources consulted by Couillard.

**112**    The applicant's position is that, as a minority shareholder of the Display Corporation, Toshiba Japan does not have in its possession or control the records and documentation sought by the Commissioner with respect to the business and affairs of the joint venture from the date of its formation until 2007, when Toshiba Japan sold its interest to its joint venture partner. It suggests that, while Couillard was aware of the existence of the joint venture, he was not aware that Toshiba Japan had only a minority position in the joint venture. Accordingly, the applicant submits that, insofar as Couillard's affidavit states that, based on his investigation and his experience, the records and information in Schedule "A" relating to the business and affairs of the Display Corporation are records and information that would ordinarily be kept by firms doing business on the scale described in his affidavit and are in the possession of Toshiba Japan, the statement is not supported by any facts in the affidavit and, therefore, (1) is incorrect and (2) reveals that Couillard failed to make a reasonable investigation prior to making this statement.

**113**    However, the principal argument of the applicant is that the Commissioner's conclusion is unreasonable because (1) Couillard failed to conduct a reasonable investigation; and (2) he does not

have adequate experience and/or understanding of corporate entities such as Toshiba Japan and the Display Corporation. On this basis, the applicant intends to argue that the Court cannot rely upon the evidence before it, and in particular, the Commissioner's conclusion, to find that it is likely that Toshiba Japan has possession or control over the records of the Display Corporation sought under the Ex Parte Order.

**114**     In summary, it appears that the applicant's allegations of non-disclosure pertain to the absence of any disclosure of Toshiba Japan's minority position in the joint venture. The applicant does not, however, suggest that the Commissioner intentionally withheld any material facts from the Court on this issue. Moreover, as the motions judge notes, the application for the Ex Parte Order set out the grounds for Couillard's conclusion - the factual investigation conducted by Couillard and his personal experience and understanding of corporate entities such as Toshiba Japan. Therefore, the applicant is not really asserting that the Commissioner failed to make full and frank disclosure in the usual sense. The allegation is really that the Commissioner unintentionally failed to make full and frank disclosure by failing to disclose either (1) the minority position of Toshiba Japan; or (2) Couillard's failure to conduct a reasonable investigation that would have revealed this minority position; or (3) the unreasonableness of his conclusion in respect of records of the Display Corporation.

**115**     In this context, there is a legitimate issue as to whether the applicant should be entitled to cross-examine Couillard on (1) whether he was aware of the minority relationship at the time of execution of his affidavit; (2) if not, whether his conclusion would have been different had he known such information; and (3) if not, the personal experience upon which he relies to reach the conclusion that Toshiba Japan would have in its possession or control the documentation sought in respect of the Display Corporation.

**116**     I conclude that, if it were held that the Divisional Court has jurisdiction to hear an appeal of the Order, leave should be granted to the applicant to cross-examine Couillard on these three issues for the following reasons.

**117**     Section 11 of the Act requires demonstration that Toshiba Canada "has or is likely to have" the records and documentation sought in respect of the Display Corporation. The fact that Toshiba Japan is a minority joint venture partner/shareholder in the joint venture with Matsushita is a relevant consideration in the Court's determination as to whether or not this test is satisfied on the Main Motion. The relationship of parties to a joint venture is a matter of the contract between them. The rights of a minority participant/shareholder in a joint venture are often, although not always, limited in important respects, including financial reporting and access to records.

**118**     It is not clear from Couillard's affidavit whether he was aware of Toshiba Japan's minority relationship in the joint venture. It is therefore unclear whether Couillard's statement can properly be said to address all of the records and documentation sought by the Commissioner or is limited to the records and documentation sought in respect of the period prior to the formation of the joint

venture in 2003.

**119**    To the extent that Couillard's statement only addresses the circumstances that existed prior to the formation of the joint venture, I think a proper characterization of the situation is that the Commissioner failed to make full disclosure in obtaining the Ex Parte Order because of the failure to disclose Toshiba Japan's minority relationship in Display Corporation. While any such non-disclosure was likely inadvertent rather than intentional, the fact remains that, in such circumstances, full disclosure would not have been made.

**120**    I would note that, even if the applicant is able to establish that Couillard was unaware of Toshiba Japan's minority relationship in the joint venture, it is far from certain that the Ex Parte Order should be varied to exclude the obligation on Toshiba Canada to produce the Toshiba Japan Records pertaining to the Display Corporation. Toshiba Canada has offered no support for its position that the records are unavailable to Toshiba Japan notwithstanding its minority position. Couillard's investigation and/or business experience in this regard may yet be persuasive.

**121**    Nevertheless, in the present circumstances, I conclude that there appears to be good reason to doubt the correctness of the motion judge's decision to deny the applicant a right to cross-examine Couillard as not being relevant to the issues on the Main Motion insofar as such right to cross-examine extends to the three matters described above.

**122**    I also conclude that this issue satisfies the requirement of involving a matter of such importance that leave to appeal should be granted. Section 11(2) is an unusual provision insofar as it imposes an obligation on a subsidiary of a foreign corporation to deliver documentation in the hands of its parent corporation, or other affiliated corporation, to which it is subject to control but over which it has no control. It does not appear that this provision has been the subject of prior judicial scrutiny. Assuming section 11(2) to be constitutionally valid, it permits the Commissioner to obtain an order of disclosure on an ex parte basis on demonstration of evidence to a standard that is less than probable cause. In such circumstances, the integrity of the judicial process relies upon the Commissioner conducting a credible and reliable investigation to justify an ex parte order of disclosure. The nature and extent of such an investigation, and the consequences of a failure to conduct such an investigation, if established, are, in my opinion, matters of sufficient importance to warrant the granting of leave to appeal.

Conclusion

**123**    For the foregoing reasons, leave to appeal the Order is denied. If the parties are unable to agree on costs of this motion, they shall have thirty days from the date of this Endorsement to deliver written submissions not exceeding five pages in length.

H.J. WILTON-SIEGEL J.

cp/s/qlcct/qljxr