IAN SIMMONS (*pro hac vice*)
Email:  isimmons@omm.com
BENJAMIN G. BRADSHAW (SBN 189925)
Email:  bbradshaw@omm.com
KEVIN D. FEDER (SBN 252347)
Email:  kfeder@omm.com
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, D.C.  20006-4001
Telephone:    (202) 383-5300
Facsimile:    (202) 383-5414

*Attorneys for Defendants Samsung Electronics Co.,*
*Ltd., and Samsung Electronics America, Inc.*

[Additional moving defendants and counsel listed in signature block]

# IN THE UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Case No. 3:07-cv-05944 SC<br><br>MDL No. 1917 |
| This Document Relates To:<br><br>DIRECT PURCHASER ACTIONS | **DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b)**<br><br>Judge:    Honorable Samuel P. Conti<br>Court:    Courtroom 1, 17th Floor<br>Date:     February 8, 2013<br>Time:     10:00 a.m. |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................................ 1

ARGUMENT ............................................................................................................................. 3

I.    The November 29 Order Satisfies the Criteria of § 1292(b)............................................. 3

    A.    Whether the Nine Representatives of the Putative Class Are Eligible for the *Royal Printing* Exception Raises a Controlling Question of Law. ........................ 3

    B.    Substantial Grounds for Difference of Opinion Exist Regarding Whether These Nine Plaintiffs Are Eligible for the *Royal Printing* Exception.................... 8

    C.    Interlocutory Appeal Will Materially Advance the Ultimate Termination of This Litigation. ................................................................................................. 10

II.   This Court Should Certify the November 29 Order for Interlocutory Appeal.................. 14

CONCLUSION ........................................................................................................................ 15

-i-

DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO CERTIFY
ORDER FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b)

3:07-CV-05944 SC
MDL NO. 1917

# TABLE OF AUTHORITIES

**Page(s)**

<u>**Cases**</u>

*Aggio v. Estate of Aggio,*
   No. C 04-4357 PJH, 2006 WL 149006 (N.D. Cal. Jan. 18, 2006)............................................ 7

*Ahrenholz v. Bd. of Trustees of Univ. of Ill.,*
   219 F.3d 674 (7th Cir. 2000)................................................................................................... 14

*Ass'n of Irritated Residents v. Fred Schakel Dairy,*
   634 F. Supp. 2d 1081 (E.D. Cal. 2008)................................................................................... 7

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007)................................................................................................................. 15

*Consumer Product Safety Comm'n v. Anaconda Co.,*
   445 F. Supp. 498 (D.D.C. 1977) ............................................................................................. 13

*Dalie v. Pultie Home Corp.,*
   636 F. Supp. 2d 1025 (E.D. Cal. 2009)................................................................................... 6

*Del. Valley Surgical Supply, Inc. v. Johnson & Johnson,*
   523 F.3d 1116 (9th Cir. 2008)............................................................................................ 3, 5

*Flint ex rel. Flint v. Ky. Dep't of Corr.,*
   270 F.3d 340 (6th Cir. 2001).................................................................................................... 6

*Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.,*
   424 F.3d 363 (3d Cir. 2005) ..................................................................................................... 3

*Illinois ex rel. Hartigan v. Panhandle Eastern Pipe Line Co.,*
   852 F.2d 891 (7th Cir. 1988) .................................................................................................... 3

*In re ATM Fee Antitrust Litig.,*
   686 F.3d 741 (9th Cir. 2012)........................................................................................ 8, 9, 15

*In re Brand Name Prescription Drugs Antitrust Litig.,*
   123 F.3d 599 (7th Cir. 1997) .................................................................................................... 3

*In re Brand Name Prescription Drugs Antitrust Litig.,*
   No. 94 C 897, 1996 WL 267752 (N.D. Ill. May 17, 1996)..................................................... 3

*In re Cement Antitrust Litig.,*
   673 F.2d 1020 (9th Cir. 1982)............................................................................... 2, 4, 11, 12

*In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.,*
   691 F.2d 1335 (9th Cir. 1982) .................................................................................................. 3

*In re Fertilizer Antitrust Litig.,*
   No. MF-75-1, 1979 WL 1690 (E.D. Wash. Sept. 14, 1979) ................................................... 4

*In re Hypodermic Products Antitrust Litig.,*
   484 F. App'x 669 (3d Cir. 2012) .............................................................................................. 3

*In re Refrigerant Compressor Antitrust Litig.,*
   795 F. Supp. 2d 647 (E.D. Mich. 2011)............................................................................. 9, 10

DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO CERTIFY
ORDER FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b)

3:07-CV-05944 SC
MDL NO. 1917

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
No. 07-md-01819 CW, 2011 WL 250317 (N.D. Cal. Jan. 25, 2011) ...................................... 14

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
No. M 07-1827 SI, 2012 WL 4513866 (N.D. Cal. Oct. 1, 2012) ........................................... 14

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
267 F.R.D. 291 (N.D. Cal. 2010)............................................................................................. 15

*In re Trace Int'l Holdings, Inc.*,
No. 04 Civ. 1295 (KMW), 2009 WL 3398515 (S.D.N.Y. Oct. 21, 2009)............................. 13

*James v. Price Stern Sloan, Inc.*,
283 F.3d 1064 (9th Cir. 2002).............................................................................................. 4, 14

*Kansas v. UtiliCorp United, Inc.*,
497 U.S. 199 (1990)................................................................................................................ 3, 9

*King v. Cal. Dep't of Corr.*,
No. CIV S-06-0065 LKK GGH P, 2009 WL 3489875 (E.D. Cal. Oct. 26,
2009) .............................................................................................................................................. 7

*Koby v. ARS Nat'l Servs., Inc.*,
No. 09-cv-0780 JAH (JMA), 2010 WL 5249834 (S.D. Cal. Dec. 23, 2010) ......................... 11

*Link v. Mercedes-Benz of N. Am., Inc.*,
788 F.2d 918 (3d Cir. 1986)...................................................................................................... 3

*Loritz II v. CMT Blues*,
271 F. Supp. 2d 1252 (S.D. Cal. 2003) ..................................................................................... 4

*Lucas v. Hertz Corp.*,
No. C 11-01581 LB, 2012 WL 5199384 (N.D. Cal. Oct. 22, 2012)........................................ 14

*Max Daetwyler Corp. v. Meyer*,
575 F. Supp. 280 (E.D. Pa. 1983) ........................................................................................... 13

*Meeker v. Belridge Water Storage Dist.*,
No. 1:05-CV-00603 OWW SMS, 2007 WL 781889 (E.D. Cal. Mar. 13, 2007)...................... 7

*Merican, Inc. v. Caterpillar Tractor Co.*,
713 F.2d 958 (3d Cir. 1983) ...................................................................................................... 3

*Reese v. BP Exploration (Alaska) Inc.*,
643 F.3d 681 (9th Cir. 2011)........................................................................................... *passim*

*Royal Printing Co. v. Kimberly-Clark Corp.*,
621 F.2d 323 (9th Cir. 1980)................................................................................................. 1, 3

*Sims v. First Horizon Nat'l Corp.*,
No. 08-2293, 2010 WL 1050976 (W.D. Tenn. Mar. 22, 2010) ........................................ 12, 13

*Steering Committee v. United States*,
6 F.3d 572 (9th Cir. 1993)......................................................................................................... 6

*Thrasher-Lyon v. CCS Commercial LLC*,
No. 11 C 04473, 2012 WL 5389722 (N.D. Ill. Nov. 2, 2012) ............................................ 4, 11

-iii-

*United States v. Woodbury*,
     263 F.2d 784 (9th Cir. 1959) .................................................................................. 5, 7

**Statutes**

28 U.S.C. § 1292(b) ....................................................................................... 1, 15

**Other Authorities**

16 Charles Alan Wright *et al.*, *Federal Practice & Procedure* § 3931 (2d ed.) ........................... 12

S. Rep. No. 2434 (1958), *reprinted in* 1958 U.S.C.C.A.N. 5260 ................................... 4

**MEMORANDUM OF POINTS AND AUTHORITIES**

Defendants submit this Reply in support of their Motion to Certify Order for Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(b) [Dkt. No. 1499] (Dec. 19, 2012) ("Mot. to Certify").[1]

**INTRODUCTION**

Defendants' opening papers demonstrated not only that interlocutory appeal of the November 29 Order is permissible under 28 U.S.C. § 1292(b), but also that this Court should exercise its discretion to permit appeal.  Defendants emphasized the hazards of addressing certification of the putative DPP class before resolving the threshold legal question whether plaintiffs such as these nine (of thirteen) class representatives are even eligible for the exception noted in *Royal Printing Co. v. Kimberly-Clark Corp.*, 621 F.2d 323 (9th Cir. 1980).  That approach would cause the parties to expend substantial resources on depositions, expert-intensive analysis, and complex and lengthy proceedings before both Special Master Legge and this Court—all of which, upon successful interlocutory appeal, DAPs concede "would likely" need to be re-litigated,[2] or may be rendered totally unnecessary.  *See* Mot. to Certify 3, 9.  Just as the Ninth Circuit and other courts have accepted interlocutory appeals in multiple cases involving similar *Illinois Brick* standing issues, so too here is interlocutory appeal warranted.

In the face of this, DPPs' and DAPs' opposition papers offer several dubious statements of law and misleading arguments.  ***First***, DPPs and DAPs argue that the November 29 Order does not raise a controlling question of law, rather it merely involves the "application" of law to fact.[3] That is incorrect, as even DAPs elsewhere acknowledge, and the Ninth Circuit has expressly rejected the rule DPPs and DAPs urge.  Similarly, DAPs suggest that there is no controlling legal question because immediate appeal "would not end" the entire MDL.  But the Ninth Circuit has squarely rejected that red herring, instead recognizing that "all that must be shown in order for a question to be 'controlling' is that resolution of the issue on appeal could materially affect the

---

[1]     Unless noted, all defined terms have the same meaning as in the Motion to Certify.
[2]     Direct Action Plaintiffs' Memorandum in Support of the Direct Purchaser Plaintiffs' Opposition to Defendants' Motion to Certify Order for Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(b), at 11 [Dkt. No. 1524] (Jan. 10, 2013) ("DAP Opp.").
[3]     Direct Purchaser Plaintiffs' Opposition to Defendants' Joint Motion to Certify Order on Summary Judgment for Interlocutory Appeal, at 4-6 [Dkt. No. 1525] (Jan. 10, 2013) ("DPP Opp."); DAP Opp. 9.

-1-

1   outcome of litigation in the district court." *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026

2   (9th Cir. 1982).  Interlocutory appeal, if successful, will terminate all these nine plaintiffs' claims

3   as well as DAPs' federal claims and, regardless of outcome, will define the parameters of the

4   putative DPP class.  That is far beyond what § 1292(b) requires.

5          *Second*, DPPs and DAPs say that reasonable jurists could not reach differing conclusions

6   regarding these plaintiffs' eligibility for the *Royal Printing* exception.  But reasonable jurists

7   *already have* disagreed when applying identical law to these circumstances.  DPPs and DAPs

8   argue that the November 29 Order merely applied "well-settled" law that Defendants seek to

9   "essentially overturn."  Not so.  DPPs and DAPs ignore the explicit reasoning of the Ninth Circuit

10  decisions they invoke, which have never found standing based on *Royal Printing* unless applying

11  the *Illinois Brick* rule "would eliminate the threat" and "close off every avenue" of private

12  antitrust enforcement.  *See* Mot. to Certify 5-6.  Defendants have asked the Court to follow those

13  precedents, not disregard them.  Furthermore, DPPs' and DAPs' argument is belied not only by

14  Special Master Legge's contrary conclusion (they certainly do not cast the Special Master's ruling

15  as unreasonable), but also by this Court's acknowledgement that "the policy rationale behind

16  *Royal Printing* does not apply" here given the presence of both true direct purchasers of CRTs

17  and state-law causes of action for indirect purchasers.  November 29 Order 17.

18         *Third*, DPPs and DAPs dispute whether the sweeping effect that successful interlocutory

19  appeal would have—dismissal of these nine plaintiffs' and DAPs' federal claims, as well as

20  resolution of the parameters of the putative DPP class before addressing class certification—"*may*

21  materially advance" the litigation.  But they would have the parties and the Court expend

22  substantial resources on class certification even while infecting that process with an erroneous

23  first premise.  Were the Ninth Circuit later to agree with Defendants, DAPs concede that the

24  process would likely need to be done all over again.  That makes no sense.  DAPs also claim that

25  their "substantial" state-law claims render interlocutory appeal inappropriate.  When opposing

26  Defendants' summary judgment motion, however, they said that a ruling in Defendants' favor

27  would "drive a hole through" their cases.  Their well-timed flip-flop thus lacks credibility.

28

This Court should certify the November 29 Order for interlocutory review so that the Ninth Circuit has the opportunity to weigh in on this novel legal question at this critical juncture.

## ARGUMENT

**I.      The November 29 Order Satisfies the Criteria of § 1292(b).**

      **A.      Whether the Nine Representatives of the Putative Class Are Eligible for the *Royal Printing* Exception Raises a Controlling Question of Law.**

The nine plaintiffs at issue here did not purchase an allegedly price-fixed product (*i.e.*, a CRT) directly from any Defendant, so they are indirect purchasers; they also are not eligible for either the cost-plus or co-conspirator exceptions to the *Illinois Brick* rule.  November 29 Order 6, 11-12.  Thus, the *Royal Printing* exception—which permits an indirect purchaser to assert federal claims "where the direct purchaser is a division or subsidiary of a co-conspirator," and applying the *Illinois Brick* rule "would close off every avenue for private enforcement of the antitrust laws," 621 F.2d at 326-27—is their only basis for standing; were the Ninth Circuit to reverse the November 29 Order, their claims would evaporate.  Since these plaintiffs' eligibility for the exception is a pure legal question that is dispositive of whether their claims are cognizable, it is a prototypical example of a "controlling question of law" under § 1292(b).  Mot. to Certify 3-4.

On multiple occasions, the Ninth Circuit has heard interlocutory appeals raising standing issues under *Illinois Brick*.  *See Del. Valley Surgical Supply, Inc. v. Johnson & Johnson*, 523 F.3d 1116 (9th Cir. 2008); *In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 691 F.2d 1335 (9th Cir. 1982).  Indeed, *Kansas v. UtiliCorp United, Inc.*, 497 U.S. 199 (1990) reached the Supreme Court following interlocutory appeal.[4]  Thus, DPPs' assertion that

---

[4]      In addition, orders raising *Illinois Brick* issues have been the subject of numerous other interlocutory appeals.  *E.g.*, *In re Hypodermic Prods. Antitrust Litig.*, 484 F. App'x 669 (3d Cir. 2012); *Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*, 424 F.3d 363 (3d Cir. 2005); *In re Brand Name Prescription Drugs Antitrust Litig.*, 123 F.3d 599, 605 (7th Cir. 1997) (noting that "the fact that [the *Illinois Brick* issue] may in the end not prove decisive does not show that the district judge and we were wrong to certify [the] ruling on the issue under 28 U.S.C. § 1292(b)"); *Illinois ex rel. Hartigan v. Panhandle Eastern Pipe Line Co.*, 852 F.2d 891 (7th Cir. 1988); *Link v. Mercedes-Benz of N. Am., Inc.*, 788 F.2d 918 (3d Cir. 1986); *Merican, Inc. v. Caterpillar Tractor Co.*, 713 F.2d 958 (3d Cir. 1983); *In re Brand Name Prescription Drugs Antitrust Litig.*, No. 94 C 897, 1996 WL 267752, at *4 (N.D. Ill. May 17, 1996) ("Although the circumstances surrounding the certification vary, it is significant that other courts, including the Seventh Circuit, have recognized that questions concerning the application of *Illinois Brick* are particularly suitable for review on interlocutory appeal.").

-3-

DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO CERTIFY
ORDER FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b)

3:07-CV-05944 SC
MDL NO. 1917

1   standing is not a controlling issue of law is meritless.  The November 29 Order raises no less a

2   controlling question of law than the orders at issue in these and other interlocutory appeals

3   involving the *Illinois Brick* rule.  Even the Ninth Circuit cases DPPs cite illustrate that the

4   November 29 Order raises precisely the type of issue for which § 1292(b) is designed.  *See James*

5   *v. Price Stern Sloan, Inc.*, 283 F.3d 1064, 1067 n.6 (9th Cir. 2002); *Loritz II v. CMT Blues*, 271 F.

6   Supp. 2d 1252, 1254 (S.D. Cal. 2003) ("[T]his legislation was aimed at the big and expensive

7   case where an unusual amount of time and money may be expended in the pre-trial phases of the

8   case or where the trial itself is likely to be long and costly." (internal quotations omitted)).  The

9   statute's legislative history confirms that certification is particularly warranted in antitrust cases.

10   *See* S. Rep. No. 2434 (1958), *reprinted in* 1958 U.S.C.C.A.N. 5260 (interlocutory appeal

11   appropriate "where a decision . . . may avoid protracted and expensive litigation, as in antitrust

12   and similar protracted cases").

13        Interlocutory appeal is especially appropriate here given the procedural context of this

14   MDL.  To begin, resolving which types of entities are capable of asserting federal antitrust claims

15   is a critical prerequisite to assessing certification of the putative class asserting those claims.

16   Even standing alone, this means that reversal of the November 29 Order "could materially affect

17   the outcome of the litigation in the district court."  *Cement*, 673 F.2d at 1026.  Indeed, in a

18   decision pre-dating *Royal Printing*, another court permitted interlocutory appeal of an order

19   raising a related question—"[w]hether plaintiffs who purchase fertilizer from subsidiaries wholly

20   owned by defendants may sue defendants for damages under *Illinois Brick*"—reasoning that the

21   issue was "clearly a controlling legal question" because its "[r]esolution . . . will determine

22   whether certain purchasers should be included in the plaintiffs' class and whether the named

23   plaintiffs can in fact sue for damages."  *In re Fertilizer Antitrust Litig.*, No. MF-75-1, 1979 WL

24   1690, at *6 (E.D. Wash. Sept. 14, 1979).  And just months ago, a court permitted—and the court

25   of appeals accepted—interlocutory appeal to obtain guidance on an issue of statutory

26   interpretation before treading into class certification.  *See Thrasher-Lyon v. CCS Commercial*

27   *LLC*, No. 11 C 04473, 2012 WL 5389722, at *2 (N.D. Ill. Nov. 2, 2012) (order "certainly will

28   color how the remainder of the case will proceed as it now enters the class-certification stage" by

-4-

DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO CERTIFY
ORDER FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b)

3:07-CV-05944 SC
MDL NO. 1917

1   affecting "[t]he scope of the class" and whether any class should be certified at all), *pet. granted*,

2   No. 12-8041 (7th Cir. Dec. 17, 2012).  Just so with the November 29 Order.

3          The potential to resolve DAPs' federal claims weighs further in favor of interlocutory

4   appeal.  Before the November 29 Order, DAPs said that dismissing those claims would "drive a

5   hole through" their cases, since those "are the vast majority of their claims."[5]  Thus, interlocutory

6   appeal may well resolve a broad swath of the entire MDL—more than enough to satisfy the

7   controlling-question requirement.  *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 688 (9th

8   Cir. 2011) ("Neither § 1292(b)'s literal text not controlling precedent requires that the

9   interlocutory appeal have a final, dispositive effect on the litigation[.]"); *see also United States v.*

10  *Woodbury*, 263 F.2d 784, 787 (9th Cir. 1959) ("[W]e do not hold that a question brought here on

11  interlocutory appeal must be dispositive of the lawsuit in order to be regarded as controlling.").

12         DPPs' and DAPs' objections do not withstand scrutiny.  They posit that these nine

13  plaintiffs' eligibility for the *Royal Printing* exception involves the "application" of law to fact.

14  DPP Opp. 4-6; DAP Opp. 2, 9-10.  This is dissembling.  The Court is presented with a classic

15  pure legal question:  are these plaintiffs eligible for the *Royal Printing* exception even though

16  there are other conceded avenues of private antitrust enforcement, and even though they did not

17  purchase the product they say was price-fixed?  No facts regarding this issue are disputed or even

18  complex; it can be quickly considered by the Ninth Circuit without resort to a lengthy record.

19  Indeed, DAPs appear to recognize as much elsewhere, stating that the November 29 Order ruled

20  that "the ownership or control exception applies ***as a matter of law***, and the only question is

21  whether sufficient facts exist to satisfy the exception."  DAP Opp. 10 n.2 (emphasis added).

22  Further giving the lie to DPPs' and DAPs' argument is *Delaware Valley*.  There, the court

23  accepted interlocutory review of a summary judgment decision, which it affirmed after a detailed

24  analysis of the corporate relationships and transactions at issue.  523 F.3d at 1122.

25         Moreover, to say that the November 29 Order "applied" law to fact is a truism that proves

26

27  ――――――――――――――――――
    [5]     Mar. 20, 2012 Hr'g Tr. at 64:21-22 (attached as Exh. 1 to Simmons Decl. in Support of
    Mot. to Adopt [Dkt. No. 1274-2]); Direct Action Plaintiffs' Statement of Issues Related to Special
28  Master's Report & Recommendation Regarding Defendants' Joint Motion for Summary
    Judgment, at 2 [Dkt. No. 1237] (June 21, 2012) ("DAP Statement of Issues").

too much:  in the loose sense that DPPs and DAPs use the term, *all* § 1292(b) appeals involve

applying law to fact for the simple reason that Article III forbids advisory opinions.  That there is

a live case or controversy hardly renders interlocutory appeal inappropriate.  At all events, the

authority DPPs and DAPs cite is not binding, and their papers conspicuously omit the Ninth

Circuit's decision in *Steering Committee v. United States*, which ruled that the interlocutory

appeal was appropriate to resolve "a mixed question of law and fact."  6 F.3d 572, 575 (9th Cir.

1993); *accord Flint ex rel. Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 346 (6th Cir. 2001) ("Mixed

questions of fact and law are treated as questions of law for purposes of an interlocutory

appeal.").  *See also Dalie v. Pultie Home Corp.*, 636 F. Supp. 2d 1025, 1028 (E.D. Cal. 2009)

("[T]he Ninth Circuit . . . has never embraced the rule that only pure legal questions are

controlling questions of law under § 1292(b). . . .  [T]he question is controlling because it will

determine what claims are litigated in this court and, practically, whether the plaintiffs will

continue to pursue a majority of their claims in any forum.").

Faring no better is the notion that interlocutory review is improper because these nine

plaintiffs' eligibility for the *Royal Printing* exception "is not a controlling question of law that

would end the case."  DAP Opp. 4.  DAPs' approach would amend § 1292(b)'s first element,

which requires merely a "controlling question of law"—not a "controlling question of law *that*

*would end the case*."  At the same time, their approach would contradict and render superfluous

§ 1292(b)'s third element, which is merely that interlocutory appeal "*may materially advance* the

ultimate termination of the litigation."  It is precisely for these reasons that the Ninth Circuit has

expressly rejected the rule DAPs urge.  In *Reese*, the plaintiff argued that "certification was

improvidently granted because a decision in BPXA's favor will not resolve all of Reese's claims

against it."  643 F.3d at 688.  The plaintiff also asserted other claims against other defendants not

implicated by the interlocutory appeal.  *Id.*  "However," the Ninth Circuit explained, "neither

§ 1292(b)'s literal text nor controlling precedent requires that the interlocutory appeal have a

final, dispositive effect on the litigation, only that it 'may materially advance' the litigation."  *Id.*

Applying these principles, the court concluded that § 1292(b)'s strictures were satisfied because

"reversal 'may' take BPXA, as a defendant, and Reese's control claims against all remaining

-6-

DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO CERTIFY
ORDER FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b)

3:07-CV-05944 SC
MDL NO. 1917

1    defendants out of the case." *Id.* *Reese* thus makes clear that the issue of whether a cause of

2    action is cognizable raises a controlling question of law—regardless whether the plaintiff has (or

3    may have) other causes of action,[6] and regardless whether other parties happen to be in the same

4    suit.[7] *See also Woodbury*, 263 F.2d at 787 (discussing instances where "reversal [would not] be

5    dispositive of the case, yet the questions may nevertheless be considered as controlling").

6            It is therefore of no consequence that successful interlocutory appeal would not, in one

7    stroke, terminate the entire MDL.  As explained above, successful immediate appeal "could

8    materially affect the outcome" of litigation by disposing of these nine plaintiffs' federal claims

9    and determining which plaintiffs are eligible for potential inclusion in the putative DPP class

10   prior to addressing whether class treatment is appropriate.  In addition, successful appeal would

11   dispose of DAPs' federal claims.  *See* DAP Statement of Issues at 2 (recognizing that adopting

12   Special Master Legge's report "would have a dispositive effect on their direct purchaser claims,

13   which are the vast majority of their claims").[8]  For this reason, no fewer than three sets of

14   defendants that have settled with DPPs, but remain active litigants in the DAP cases, have urged

15

16   ───────────────────

17   [6]     *See also, e.g.*, *Ass'n of Irritated Residents v. Fred Schakel Dairy*, 634 F. Supp. 2d 1081,
     1093 (E.D. Cal. 2008) (order denying dismissal motion raised controlling question of law even

18   though order related to only one of plaintiff's three claims, and other two claims were "distinct
     and d[id] not involve questions" raised by order); *Aggio v. Estate of Aggio*, No. C 04-4357 PJH,

19   2006 WL 149006, at *1 (N.D. Cal. Jan. 18, 2006) (order denying motion to dismiss CERCLA
     claim raised controlling question of law even though order did not implicate state-law claims);

20   *Meeker v. Belridge Water Storage Dist.*, No. 1:05-CV-00603 OWW SMS, 2007 WL 781889
     (E.D. Cal. Mar. 13, 2007) (certifying order applying to some, but not all, of plaintiff's claims).

21   [7]     *See also, e.g.*, *King v. Cal. Dep't of Corr.*, No. CIV S-06-0065 LKK GGH P, 2009 WL
     3489875, at *3 (E.D. Cal. Oct. 26, 2009) (finding a controlling question because, upon successful

22   interlocutory appeal, "several claims against many of the defendants would be dismissed and the
     case would continue against five defendants").

23   [8]     DAPs proclaim they would pursue what they call "substantial" state-law claims even if the
     November 29 Order were reversed.  DAP Opp. 5.  DAPs' assertion is irrelevant and incorrect.

24   Irrelevant, because the question is whether interlocutory review could materially affect ***DPPs'***
     case, not DAPs' case; DAPs cannot leverage the procedural device that consolidated their actions

25   with the putative class actions to defeat interlocutory review.  Were DAPs correct, interlocutory
     review would be inappropriate from any order in an MDL action where fewer than all parties

26   were at issue.  DAPs' assertion is also incorrect: in opposing Defendants' summary judgment
     motion, they said that a ruling in Defendants' favor would "drive a hole through" their cases.

27   Counsel for IPPs also recognized as much.  *See* Mot. to Certify 9-10.  Similarly misplaced is
     DAPs' argument that interlocutory review is inappropriate because it does not directly affect the

28   IPP putative class action.  DAP Opp. 4-5.  Assuming for the moment that this is accurate, it is
     irrelevant:  the issue here is whether interlocutory appeal could materially affect DPPs' case.

DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO CERTIFY
ORDER FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b)

3:07-CV-05944 SC
MDL NO. 1917

this Court to permit interlocutory appeal of the November 29 Order.[9]

**B.      Substantial Grounds for Difference of Opinion Exist Regarding Whether These Nine Plaintiffs Are Eligible for the *Royal Printing* Exception.**

This Court has recognized that these nine plaintiffs' eligibility for the *Royal Printing* exception is not some simple matter of applying "well-settled" law to the facts. Rather, the November 29 Order acknowledged that "in the particular circumstances of this case, the enforcement goals of *Illinois Brick* appear already to have been met, which suggests that the policy rationale behind *Royal Printing* does not apply." November 29 Order 17.

The Court declined to dismiss these plaintiffs' claims on this basis only because it "[wa]s not inclined to become the first to do so." November 29 Order 17. DPPs and DAPs do not contest this point; indeed, nowhere in their papers do they even mention it. Defendants ask only that this Court make explicit what was implicit in the November 29 Order: that this issue is one "over which reasonable judges might differ." *Reese*, 643 F.3d at 688. Removing any doubt on this point is Special Master Legge's conclusion that these plaintiffs are not eligible for the *Royal Printing* exception. Special Master Legge emphasized both the presence of other avenues of private antitrust enforcement that direct and indirect purchasers are already vigorously pursuing,[10] and that these plaintiffs did not purchase the allegedly price-fixed product. May 31 Report 10-12. Section 1292(b) requires only that "reasonable jurists might disagree on an issue's resolution," not that "they have already disagreed." *Reese*, 643 F.3d at 688. This is easily satisfied here because two jurists indeed "have already disagreed" after applying identical law to identical facts.

DAPs dismiss Special Master Legge's conclusion by insinuating that the Ninth Circuit's decision in *In re ATM Fee Antitrust Litigation*, 686 F.3d 741 (9th Cir. 2012) somehow "removed . . . doubt" that Special Master Legge supposedly identified regarding the *Royal Printing*

---

[9]      *See* Panasonic Defendants' Statement in Support of Defendants' Motion to Certify Order for Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(b) [Dkt. No. 1504] (Dec. 21, 2012); Response of LG Defendants and Philips Defendants in Support of Defendants' Motion to Certify Order for Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(b) [Dkt. No. 1513] (Dec. 28, 2012).

[10]     DAPs misstate Defendants' argument on this point: Defendants contend that other avenues exist not simply "because finished product purchasers could still bring . . . claims under state law," DAP Opp. 6, but because, in addition to those claims, the four other named plaintiffs—all direct purchasers—possess federal antitrust standing, *see* Mot. to Adopt 20 & n.10.

DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO CERTIFY
ORDER FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b)

3:07-CV-05944 SC
MDL NO. 1917

1   exception.  DAP Opp. 6.  DAPs are incorrect.  Special Master Legge's conclusion was not

2   premised on any doubt as to either the validity or scope of the exception; he simply determined

3   that these plaintiffs were ineligible for it and that extending it so they were would contravene

4   *UtiliCorp*.[11]  Nor did this Court suggest that *ATM Fee* expanded the exception beyond where it

5   stood at the time of the May 31 Report.  Indeed, the *ATM Fee* court was not free to expand the

6   exception even had it wanted to, for the Supreme Court's 1990 decision in *UtiliCorp* barred new

7   or broader exceptions to the *Illinois Brick* rule.  Indeed, *ATM Fee* **refused** to enlarge the

8   exception for just that reason:  "[w]e decline to extend the exception . . . because, after *Royal*

9   *Printing*, the Supreme Court stated that 'the possibility of allowing an exception, even in rather

10  meritorious circumstances, would undermine the rule.'"  686 F.3d at 757 (quoting *UtiliCorp*, 497

11  U.S. at 216) (alterations omitted).

12          DPPs' and DAPs' other objections can also readily be dismissed.  To begin, DAPs state

13  that Defendants, in their summary judgment motion, somehow asked this Court to "essentially

14  overturn" *Royal Printing* and now ask this Court to "abandon[] federal antitrust enforcement."

15  DAP Opp. 2, 8.  DAPs either misunderstand or mischaracterize Defendants' position.

16  Irrespective of the continued validity of *Royal Printing*, its exception does not reach the

17  circumstances here, namely, where "every avenue" of private enforcement is ***not*** foreclosed and

18  other avenues are in fact being pursued.  Expanding that exception contravenes the Supreme

19  Court's warning in *UtiliCorp* against new or broader exceptions to *Illinois Brick*, to which the

20  Ninth Circuit adhered in *ATM Fee*.[12]  Next, DAPs erroneously assert that "no court has taken

21  [Defendants'] positions."  DAP Opp. 8.  Not so.  Besides the fact that Special Master Legge

22  concurred with Defendants in full, another court has in fact reached a similar result.  In *In re*

23  *Refrigerant Compressor Antitrust Litigation*, plaintiffs asserted federal claims based on an alleged

---

24  [11]      *See* May 31 Report 12 ("[Dismissing these nine plaintiffs' claims] is consistent with the
    United States Supreme Court and Ninth Circuit decisions.  Indeed, it is plaintiffs' argument for
25  another exception to *Illinois Brick* that would upset established Ninth Circuit law on standing.").
    [12]      Nor do Defendants argue that a defendant is immune from the *Royal Printing* exception
26  "whenever the Department of Justice engaged in a criminal prosecution of that same defendant"
    or that an indirect purchaser's suit is barred "so long as the antitrust defendant could point to
27  some other person who also could sue."  November 29 Order 18.  Defendants contend merely that
    the exception does not apply where private (as opposed to governmental) enforcement efforts are
28  already underway (as opposed to capable of being brought in the future).

1    conspiracy to fix the prices of compressors, but not finished products integrating compressors.

2    795 F. Supp. 2d 647, 651, 659 (E.D. Mich. 2011).  But no named plaintiff "alleged that it bought

3    a finished product containing a compressor from a defendant who both manufactured the

4    compressors and used those compressors to manufacture that finished good." *Id.* at 659.  The

5    court concluded that "the only persons or entities who have standing to assert federal antitrust

6    claims in this action are those persons or entities who directly purchased compressors from a

7    Defendant." *Id.*

8         Moreover, this Court acknowledged the "intuitive appeal" of Defendants' proffered rule

9    that the *Royal Printing* exception is not available where other avenues of private enforcement are

10   present, and declined to adopt it only because it "[wa]s not inclined to become the first to do so."

11   November 29 Order 17.  DPPs and DAPs also err in suggesting that prior adverse authority is a

12   prerequisite to interlocutory appeal; the Ninth Circuit has rejected that "formalistic" rule because

13   it "could lead to unnecessary, protracted litigation and a considerable waste of judicial resources,"

14   instead endorsing a "flexible approach" to § 1292(b).  *Reese*, 643 F.3d at 688 n.5.

15        Finally, DPPs' assertion that a ruling in Defendants' favor would cause "a whole group of

16   injured customers . . . [to] go uncompensated," DPP Opp. 8, is false.  For one thing, DPPs'

17   contention that the putative IPP class is not "suing on the same claims raised by the nine Plaintiffs

18   at issue here," *id.*, is misleading.  In fact, the putative IPP class includes those who purchased

19   finished products from these nine plaintiffs.  *See* Indirect Purchaser Plaintiffs' Fourth

20   Consolidated Amended Complaint ¶¶ 243, 245 [Dkt. No. 1526] (Jan. 10, 2013) (defining classes

21   to include "[a]ll persons and or entities who or which indirectly purchased" finished products in

22   the relevant jurisdiction).  Thus, the putative IPP class members *are* suing on the very same

23   products from which DPPs seek to recover.  For another, DPPs err in asserting that their proffered

24   evidence "showed that the vast majority of CRTs were sold by the price-fixing defendants to their

25   owned or controlled subsidiaries."  DPP Opp. 8.  In fact, whether ownership or control is or was

26   in fact present has not been adjudicated.  November 29 Order 22; *see* DAP Opp. 10 n.2.

27        **C.    Interlocutory Appeal Will Materially Advance the Ultimate Termination of
                  This Litigation.**

28

-10-

Section 1292(b)'s third requirement requires only that interlocutory appeal "may materially advance the ultimate termination of the litigation."  *Cement*, 673 F.2d at 1027.[13] Interlocutory appeal is warranted because it not only may, but in fact will, materially advance the ultimate termination of the litigation—not only for the nine plaintiffs at issue in the November 29 Order, but also for the putative DPP class more generally, as well as for the DAP cases.  As to these nine plaintiffs and DAPs, successful appeal would terminate their federal causes of action. With respect to the putative DPP class, multiple courts have recognized the need for interlocutory review where the underlying order affects the scope of a putative class or the appropriateness of class treatment.  *E.g.*, *Koby v. ARS Nat'l Servs., Inc.*, No. 09-cv-0780 JAH (JMA), 2010 WL 5249834, at *4 (S.D. Cal. Dec. 23, 2010) (granting motion to certify and explaining that "interlocutory appeal may materially advance the litigation in that a decision by the Ninth Circuit will likely simplify the issues to be tried and may determine the appropriateness of a class action or limit the class"); *Thrasher-Lyon*, 2012 WL 5389722, at *2.  In *Thrasher-Lyon*, for example, the court certified for interlocutory appeal its partial summary judgment order because it would implicate subsequent issues regarding whether to certify the putative class.  The court reasoned that the "materially advance" prong was satisfied because significant discovery was necessary for class certification and because, even if the order were affirmed, interlocutory appeal would cause "efficiency gains," to wit:  "[t]he remaining class discovery will be smoother with a clearly defined universe of what evidence is required and relevant."  *Id.* at *4.

Here, it is particularly crucial to resolve the critical antecedent question of whether these plaintiffs are eligible for the *Royal Printing* exception, and thus may be able to assert the claims on which the putative class seeks to recover, before addressing whether class treatment is consistent with Rule 23.  To do otherwise would cause the parties to incur substantial expenses (i) deposing the corporate entities serving as representatives of the DPP class, (ii) preparing expert-intensive economic analyses, and (iii) undertaking multiple rounds of lengthy and complex class-certification briefing and proceedings before Special Master Legge and this Court that will

---

[13]    DAPs misstate this test:  § 1292(b) does not require a party to show that interlocutory appeal is "likely" to materially advance or that it "would" shorten the litigation, DAP Opp. 10, only that it "may" do so.  *Reese* 643 F.3d at 688; *Cement*, 673 F.2d at 1026.

DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO CERTIFY
ORDER FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b)

3:07-CV-05944 SC
MDL NO. 1917

1  consume a great deal of finite judicial resources.  That process is all the more complex given the

2  current scope of the putative DPP class, which includes both direct and indirect purchasers at two

3  distribution levels.  All of this, with the risk that the process is infected with an erroneous first

4  premise that, if reversed on appeal, "would likely" require the entire inquiry to be assessed anew.

5  DAP Opp. 11.  Interlocutory appeal avoids all of these pitfalls:  were the November 29 Order to

6  be reversed, the putative class is more likely to settle before reaching the class-certification stage,

7  and even if it does not, then the narrower scope of the putative class would focus the issues

8  regarding class certification.  Thus, interlocutory appeal "may appreciably shorten the time,

9  effort, *or* expense" of the litigation, as § 1292(b) requires.  *Cement*, 673 F.2d at 1027 (emphasis

10  added); *see also Sims v. First Horizon Nat'l Corp.*, No. 08-2293, 2010 WL 1050976, at *4 (W.D.

11  Tenn. Mar. 22, 2010) ("An interlocutory appeal materially advances the ultimate termination of

12  the litigation when it saves judicial resources and litigant expense." (quotations and alterations

13  omitted)).  Interlocutory appeal also furthers the purposes of § 1292(b), under which "the basic

14  inquiry [is] whether immediate appeal may substantially reduce the danger of unnecessary, or

15  unnecessarily burdensome, proceedings."  16 Charles Alan Wright *et al.*, *Federal Practice &*

16  *Procedure* § 3931 (2d ed.).[14]

17         For this reason, it is not surprising that DAPs devote more attention to the "may materially

18  advance" element than DPPs.  As opt-outs, they have no stake in the class-certification process

19  and will not expend the immense resources necessary to weigh certification of the putative class.

20  By contrast, those that will bear those significant burdens—Defendants, DPPs, the Special

21  Master, and this Court—all have appreciated the importance of promptly and definitively

22  resolving whether these plaintiffs are eligible for the *Royal Printing* exception.  Mot. to Certify 8-

---

23  [14]     DPPs suggest that interlocutory appeal now would be premature because the *Royal*

24  *Printing* exception entails a fact-specific inquiry.  DPP Opp. 10.  True enough, the existence of ownership or control "in fact" is a somewhat fact-dependent question, but the Court has not

25  addressed, and indeed has reserved, that issue.  November 29 Order 22; DAP Opp. 10 n.2. Rather, the November 29 Order concerned the threshold issue of these nine plaintiffs' *eligibility*

26  *for* that exception—that is, whether the exception is open to indirect purchasers such as the nine here even though not every avenue of private enforcement has been foreclosed, and even though

27  they did not purchase the allegedly price-fixed product.  This is a pure legal question.  Moreover, DPPs neglect that putting off resolution of this threshold question would require the parties, the

28  Special Master, and the Court to wade into class certification without resolution of the types of entities that possess standing to assert the claims invoked by the putative class.

-12-

DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO CERTIFY
ORDER FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b)

3:07-CV-05944 SC
MDL NO. 1917

1    9.  Because DAPs will not labor under the burden of litigating the propriety of class certification

2    under a potentially mistaken premise, their arguments deserve little to no weight.

3        DPPs and DAPs contend that interlocutory appeal would unduly delay the case.  *See* DAP

4    Opp. 10-11; DPP Opp. 10.  This stock objection is not persuasive.  Defendants do not seek an

5    "indefinite[]" stay, DPP Opp. 10, and any incidental delay in either the putative class or the DAP

6    cases is justified to avoid litigating class certification without resolving the types of entities

7    properly included in the putative class.  *E.g.*, *Max Daetwyler Corp. v. Meyer*, 575 F. Supp. 280,

8    282-83 (E.D. Pa. 1983) (interlocutory appeal may materially advance litigation because case "will

9    require extensive discovery, employment of expert witnesses, and investigation of numerous

10   complex legal issues," such that "the delay inherent in appeal and the potential for multiple

11   appeals . . . are not so great as to outweigh the potential cost to all parties" of proceeding to trial);

12   *Consumer Prod. Safety Comm'n v. Anaconda Co.*, 445 F. Supp. 498, 501 (D.D.C. 1977)

13   (permitting interlocutory appeal in part because "protracted and expensive litigation may

14   needlessly result if this court's decision is ultimately overturned"); *In re Trace Int'l Holdings,*

15   *Inc.*, No. 04 Civ. 1295 (KMW), 2009 WL 3398515, at *3 (S.D.N.Y. Oct. 21, 2009) (permitting

16   interlocutory appeal where "[t]he risk of short-term delay is . . . outweighed by the potential

17   advantage of materially advancing the ***ultimate termination*** of the litigation").  At bottom, that it

18   may not make sense to proceed with some parts of this MDL until the Ninth Circuit considers this

19   putative appeal is simply an argument for a partial stay, not an argument against certification.  *See*

20   *Sims*, 2010 WL 1050976, at *2, *4 (certifying order and staying case over objection that other

21   claims were unaffected by appeal and that partial stay "would result in inefficiency and delay").[15]

22       Similarly unpersuasive is DPPs' assertion that interlocutory appeal is inappropriate

23   because this case is beyond the pleadings stage.  *See* DPP Opp. 10.  At most, this argument

24   speaks to the Court's discretion to permit interlocutory appeal.  But as Defendants have

25   explained, interlocutory appeal serves a crucial function here by resolving the parameters of the

26

---

[15]      DAPs thus err insofar as they suggest that possible delay has some talismanic effect on the "may materially advance" inquiry, *see* DAP Opp. 11, because the delay that sometimes accompany interlocutory appeals often is, as it is here, outweighed by competing concerns, such as waste of judicial resources and needless expenditure of parties' resources.

1    putative class *before* the parties, Special Master Legge, and this Court expend so many resources

2    addressing the propriety of class certification—all of which, DAPs admit, "would likely" need to

3    be repeated were the November 29 Order later reversed.  DAP Opp. 11.  Furthermore, the cases

4    on which DPPs rely found that the § 1292(b) requirements were not met on other grounds, in

5    addition to being on or near the eve of trial.  *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, No.

6    M 07-1827 SI, 2012 WL 4513866, at *1 (N.D. Cal. Oct. 1, 2012) (discovery had closed and case

7    would soon be transferred to another jurisdiction for trial); *Lucas v. Hertz Corp.*, No. C 11-01581

8    LB, 2012 WL 5199384, at *5 (N.D. Cal. Oct. 22, 2012); *In re Static Random Access Memory*

9    *(SRAM) Antitrust Litig.*, No. 07-md-01819 CW, 2011 WL 250317, at *2 (N.D. Cal. Jan. 25, 2011)

10   (trial scheduled for following month).  Those cases are simply not analogous to this one.

11         Finally, DPPs' and DAPs' claim that successful interlocutory appeal would not make

12   settlement more likely does not withstand scrutiny.  At most, as DAPs appear to admit, their

13   argument goes only to this Court's discretion, not to § 1292(b)'s criteria.  *See* DAP Opp. 11.

14   More fundamentally, they sang a very different tune when Defendants' summary judgment

15   motion was pending—playing up the serious effect that a ruling in Defendants' favor would have

16   on their incentives to prosecute their lawsuits.  *See supra* at 5, 7 n.8.  And contrary to the notion

17   that permitting interlocutory appeal when it could impact settlement "obliterate[s]" restrictions on

18   § 1292(b), *see* DAP Opp. 12, the effect of interlocutory appeal on settlement of the putative class

19   and DAP cases simply provides yet another reason to permit interlocutory appeal.  *See* Mot. to

20   Certify 10.  After all, settlement is the very definition of  "ultimate termination" of the case.

21   **II.     This Court Should Certify the November 29 Order for Interlocutory Appeal.**

22

23         Defendants' opening papers catalogued numerous reasons that the Court should exercise

24   its discretion to permit interlocutory appeal.  Notwithstanding this—and perhaps recognizing that

25   § 1292(b)'s three prerequisites are satisfied—DAPs conclusorily state that interlocutory appeal is

26   still unwarranted.  DAP Opp. 12.[16]  The Court can quickly cast aside DAPs' argument.  Foremost

27   _____

[16]     DPPs and DAPs err in citing *Ahrenholz v. Bd. of Trustees of Univ. of Ill.*, 219 F.3d 674,

28   675 (7th Cir. 2000).  Although *Ahrenholz* holds that § 1292(b) does not contemplate a denial of
     summary judgment, the Ninth Circuit has rejected that notion.  *James*, 283 F.3d at 1067 n.6.

1    among the discretionary factors weighing in favor of interlocutory appeal is the need to resolve

2    the parameters of the putative class prior to undertaking the complicated and expensive endeavor

3    of determining the propriety of class certification.  But the Court need not take Defendants' word

4    for it; the Supreme Court has singled out the high costs of defending against antitrust claims in

5    emphasizing the need for prompt resolution of threshold issues such as pleading requirements and

6    standing.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007).  Also weighing in favor of

7    interlocutory appeal is that it will advance not only the DPP case, but will also determine whether

8    DAPs possess any federal claims at all.  Furthermore, interlocutory appeal might well terminate a

9    large chunk of this MDL, perhaps obviating altogether the need to assess whether to certify the

10   putative class and the need to try some or all of DAPs' cases if those actions settle.

11       Finally, DPPs and DAPs invoke recent decisions in the *ODD* and *LCD* actions to support

12   their view of the merits, even as they conspicuously fail to acknowledge that the very presence of

13   *Illinois Brick* issues in these and future antitrust suits within the Ninth Circuit counsels strongly in

14   favor of interlocutory appeal.[17]  *See* Mot. to Certify 4.  The Ninth Circuit's decision in *ATM Fee*

15   renders this guidance more, not less, necessary.  Because *ATM Fee* made clear that the co-

16   conspirator exception is irrelevant where the plaintiff did not purchase the allegedly price-fixed

17   product, plaintiffs so situated will—as they have here—seek to stretch the *Royal Printing*

18   exception.  Guidance on the *Royal Printing* exception is thus vital to this and other actions.

**CONCLUSION**

20       For the foregoing reasons, the undersigned Defendants respectfully request that the Court

21   certify its November 29 Order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

23       Dated:  January 22, 2013                    Respectfully submitted,

24                                                   By:___/s/ Ian Simmons_____
                                                     IAN SIMMONS (*pro hac vice*)
25                                                   Email: isimmons@omm.com
                                                     BENJAMIN G. BRADSHAW (SBN 189925)
26                                                   Email: bbradshaw@omm.com
                                                     KEVIN D. FEDER (SBN 252347)

---

[17]       DPPs and DAPs also neglect that the *ATM Fee* court singled out for disapproval another
opinion in the *LCD* case involving the application of *Illinois Brick*.  686 F.3d at 755 n.7 (citing *In re TFT-LCD (Flat Panel) Antitrust Litigation*, 267 F.R.D. 291, 306-07 (N.D. Cal. 2010)).

Email: kfeder@omm.com
**O'MELVENY & MYERS LLP**
1625 Eye Street, NW
Washington, DC 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414

*Attorneys for Defendants Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc.*

MORGAN, LEWIS & BOCKIUS LLP

By:＿＿＿/s/ Kent M. Roger＿＿＿＿
KENT M. ROGER (SBN 95987)
E-mail: kroger@morganlewis.com
MICHELLE PARK CHIU (SBN 248421)
E-mail: mchiu@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
One Market, Spear Street Tower
San Francisco, California 94105-1126
Telephone: (415) 442-1000
Facsimile: (415) 442-1001

J. CLAYTON EVERETT, JR. (*pro hac vice*)
E-mail: jeverett@morganlewis.com
SCOTT A. STEMPEL (*pro hac vice*)
E-mail: sstempel@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
111 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone: (202) 739-3000
Facsimile: (202) 739-3001

*Attorneys for Defendants Hitachi, Ltd., Hitachi Displays, Ltd. (n/k/a Japan Display East, Inc.), Hitachi Asia, Ltd., Hitachi America, Ltd., and Hitachi Electronic Devices (USA), Inc.*

-16-

DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO CERTIFY
ORDER FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b)

3:07-CV-05944 SC
MDL NO. 1917

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SHEPPARD MULLIN RICHTER &
HAMPTON

By:    /s/ Gary L. Halling
GARY L. HALLING (SBN 66087)
E-mail: ghalling@sheppardmullin.com
JAMES L. MCGINNIS (SBN 95788)
E-mail: jmcginnis@sheppardmullin.com
MICHAEL W. SCARBOROUGH, (SBN 203524)
E-mail: mscarborough@sheppardmullin.com
**SHEPPARD MULLIN RICHTER & HAMPTON**
Four Embarcadero Center, 17th Floor
San Francisco, California  94111
Telephone:  (415) 434-9100
Facsimile:  (415) 434-3947

*Attorneys for Defendants Samsung SDI America, Inc.; Samsung SDI Co., Ltd.; Samsung SDI (Malaysia) SDN. BHD.; Samsung SDI Mexico S.A. DE C.V.; Samsung SDI Brasil Ltda.; Shenzen Samsung SDI Co., Ltd. and Tianjin Samsung SDI Co., Ltd.*

WHITE & CASE LLP

By:    /s/ Christopher M. Curran
CHRISTOPHER M. CURRAN (*pro hac vice*)
E-mail: ccurran@whitecase.com
GEORGE L. PAUL (*pro hac vice*)
E-mail: gpaul@whitecase.com
LUCIUS B. LAU (*pro hac vice*)
E-mail: alau@whitecase.com
**WHITE & CASE LLP**
701 Thirteenth Street, N.W.
Washington, DC  20005
Telephone: (202) 626-3600
Facsimile: (202) 639-9355

*Attorneys for Defendants Toshiba Corporation, Toshiba America Information Systems, Inc., Toshiba America Consumer Products, L.L.C., and Toshiba America Electronic Components, Inc.*

-17-

DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO CERTIFY
ORDER FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b)

3:07-CV-05944 SC
MDL NO. 1917

1

**<u>CERTIFICATE OF SERVICE</u>**

2      I hereby certify that on January 22, 2013, I electronically filed Defendants' Reply

3    Memorandum in Support of Motion to Certify Order for Interlocutory Appeal Pursuant to 28

4    U.S.C. § 1292(b) with the Clerk of the Court using the CM/ECF system, which will send

5    notification of such filing to the counsel of record in this matter who are registered on the

6    CM/ECF system.

7

8
/s/ Ian Simmons

9
Ian Simmons

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO CERTIFY
ORDER FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b)

3:07-CV-05944 SC
MDL NO. 1917