United States District Court
For the Northern District of California

1
2
3
4
5
6                  IN THE UNITED STATES DISTRICT COURT
7              FOR THE NORTHERN DISTRICT OF CALIFORNIA
8
9                                    )  Case No. 07-5944 SC
                                     )
10  IN RE: CATHODE RAY TUBE (CRT)    )  ORDER DENYING DEFENDANTS'
    ANTITRUST LITIGATION             )  MOTION TO CERTIFY ORDER FOR
11                                   )  INTERLOCUTORY APPEAL
                                     )
12  _____)
13
14  I.   **INTRODUCTION**
15        On November 29, 2012, this Court entered an Order granting in
16  part and denying in part Defendants' joint motion for summary
17  judgment against nine members of a putative class of alleged direct
18  purchaser plaintiffs ("Named DPP(s)").[1]  ECF No. 1470.[2]  Now before
19  the Court is Defendants' joint motion to certify the November 29
20  Order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).
21  _____
22  [1] The nine Named DPPs are: Arch Electronics, Inc.; Crago d/b/a Dash
    Computers, Inc.; Electronic Design Company; Meijer, Inc. and Meijer
23  Distribution, Inc.; Nathan Muchnick, Inc.; Orion Home Systems, LLC;
    Radio & TV Equipment, Inc.; Royal Data Services, Inc.; and Studio
24  Spectrum, Inc.  The Named DPPs are only nine of the thirteen
    members of the entire putative DPP class.  As explained in Section
25  II infra, the term "direct purchaser" is a misnomer as applied to
    the Named DPPs, who are actually indirect purchasers.  However, the
26  Court uses the term "DPP" to stay consistent with past orders and
    to differentiate the Named DPPs from a putative class called the
27  indirect purchaser plaintiffs, as well as from the direct action
    plaintiffs.
28  [2] In re Cathode Ray Tube Antitrust Litig., No. C-07-5944-SC, 2012
    WL 5987861, 2012 U.S. Dist. LEXIS 162762 (N.D. Cal. Nov. 29, 2012)
    (hereinafter "Nov. 29 Order").

United States District Court
For the Northern District of California

The motion is appropriate for decision without oral argument.  Civ. L.R. 7-1(b).  For the reasons explained below, the motion is DENIED.

## II.   BACKGROUND

Defendants' motion for summary judgment against the Named DPPs, the motion at issue in the Nov. 29 Order, argued that the Named DPPs lacked antitrust standing under Illinois Brick Co. v. Illinois, 431 U.S. 720 (1977).  See November 29 Order at *1. Illinois Brick sets forth a straightforward rule about standing in antitrust cases: only the first party in a chain of distribution to purchase a price-fixed product has standing to sue for antitrust violations under § 4 of the Clayton Act, 15 U.S.C. § 15.  Id. Under this rule, Defendants claimed the Named DPPs could not bring an antitrust suit, because they are not true direct purchasers -- that is, they purchased finished products containing the allegedly price-fixed cathode-ray tubes ("CRTs") but not the CRTs themselves. Id.

However, there are exceptions to Illinois Brick's general rule, as the Ninth Circuit recently confirmed in In re ATM Fee Antitrust Litig., 686 F.3d 741, 749 (9th Cir. 2012).  One exception is the "co-conspirator exception," under which "an indirect purchaser may bring suit where he establishes a price-fixing conspiracy between the manufacturer and the middlemen," if the conspiracy fixed the price paid by the plaintiffs.  Id. (citing Delaware Valley Surgical Supply, Inc. v. Johnson & Johnson, 523 F.3d 1116, 1123 n.1 (9th Cir. 2008); Arizona v. Shamrock Foods Co., 729 F.2d 1208, 1211 (9th Cir. 1984)).  Another exception is the

"ownership or control" exception, under which "indirect purchasers may sue when customers of the direct purchaser own or control the direct purchaser . . . or when a conspiring seller owns or controls the direct purchaser . . . ." Id. (citing Illinois Brick, 431 U.S. at 736 n.16; Royal Printing Co. v. Kimberly Clark Corp., 621 F.2d 323, 326 (9th Cir. 1980)).

In the November 29 Order, the Court granted Defendants' joint motion to dismiss to the extent that Defendants' motion challenges the Named DPPs' right to proceed under the co-conspirator exception, because the Named DPPs did not pay for the price-fixed CRTs, a required element of the co-conspirator exception.  Nov. 29 Order, supra, at *6.  However, the Court found that under the Ninth Circuit's decisions in Royal Printing and In re ATM Fee, the ownership or control exception applied to the Named DPPs because they purchased finished products incorporating the allegedly price-fixed CRTs from an entity owned or controlled by an allegedly conspiring defendant.  Nov. 29 Order at **8-11.  Accordingly, the Court held that, to the extent Defendants' summary judgment motion challenged the Named DPPs' standing on ownership and control grounds, the motion was denied.

Now Defendants ask the Court to certify the November 29 Order for interlocutory appeal, arguing that (1) whether the ownership or control exception applies is a controlling question of law, such that a successful immediate appeal from the November 29 Order could "dramatically curtail the scope of the putative DPP class"; (2) there are substantial grounds for a difference of opinion as to whether the ownership or control exception can apply under the circumstances; and (3) immediate appeal of the Nov. 29 Order would

3

materially advance this litigation's termination by settling whether the Named DPPs may sue under federal law.  Mot. at 1-2.

**III.  <u>LEGAL STANDARD</u>**

District courts may certify motions for interlocutory appeal where (1) the order involves a controlling question of law (2) as to which there is substantial ground for difference of opinion, and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation.  28 U.S.C. § 1292(b).  The court of appeals may, but need not, accept and rule on an appeal certified under § 1292(b).  <u>Id.</u>

"Section 1292(b) is a departure from the normal rule that only final judgments are appealable, and therefore must be construed narrowly."  <u>Robin James v. Price Stern Sloan, Inc.</u>, 283 F.3d 1064, 1067 n.6 (9th Cir. 2002).  As such, § 1292(b) certification should be used "only in extraordinary cases where decision of an interlocutory appeal might avoid protracted and expensive litigation."  <u>U.S. Rubber Co. v. Wright</u>, 359 F.2d 784, 785 (9th Cir. 1966).  Moreover, § 1292(b) "was not intended merely to provide review of difficult rulings in hard cases."  <u>Id.</u>; <u>see also</u> <u>In re Cement Antitrust Litig.</u>, 673 F. 2d 1020, 1026 (9th Cir. 1982).

**IV.  <u>DISCUSSION</u>**

**A.    <u>Controlling Question of Law</u>**

"[A]ll that must be shown in order for a question to be controlling is that resolution of the issue on appeal could

4

United States District Court
For the Northern District of California

1  materially affect the outcome of the litigation in the district

2  court."  In re Cement, 673 F.2d at 1026.

3       Defendants argue that because the Named DPPs "would lack

4  standing and their claims would be dismissed absent the ownership

5  or control exception . . . whether the exception may apply more

6  than suffices as a controlling question of law."  Mot. at 3.

7  Further, Defendants state that the issue is controlling "because

8  resolving who possesses standing is critical to determining the

9  parameters of the putative DPP class."  Id.

10      The Court does not agree with Defendants.  Defendants

11 themselves acknowledge that the direct and indirect purchasers'

12 class actions would continue regardless of the Named DPPs'

13 standing, Mot. at 9, and also that the plaintiffs who opted out of

14 the class actions may still be able to rely on state law causes of

15 action in pursuing their claims against Defendants, id. at 10.

16 Defendants might be correct that an appeal could affect part of the

17 outcome of this litigation, but the scale of this case relative to

18 the issue decided in the November 29 Order suggests that resolution

19 of the issue on appeal would not, overall, be controlling or

20 material to the outcome of this case.

21      **B.   Substantial Ground for Difference of Opinion**

22      A substantial ground for difference of opinion may exist

23 "where the circuits are in dispute on the question and the court of

24 appeals of the circuit has not spoken on the point, if complicated

25 questions arise under foreign law, or if novel and difficult

26 questions of first impression are presented."  Couch v. Telescope,

27 Inc., 611 F.3d 629, 633 (9th Cir. 2010) (quotations omitted).

28 However, "a party's strong disagreement with the Court's ruling is

5

**United States District Court**
For the Northern District of California

1   not sufficient for there to be a substantial ground for difference,

2   nor is the possibility that settled law might be applied

3   differently."  Id.  (quotations omitted).

4          Defendants argue that there is substantial ground for

5   difference of opinion here for two reasons.  First, they state that

6   there is a substantial ground for difference of opinion as to

7   whether the rationale behind the operation and control exception --

8   the concern that applying Illinois Brick too strictly would "close

9   off every avenue for private enforcement," Royal Printing, 621 F.2d

10  at 326 n.7 -- applies in this case, since other avenues of private

11  antitrust enforcement may remain open.  Mot. at 5-6.  Second,

12  Defendants claim that "reasonable minds can differ -- and have --

13  over whether the ownership or control exception is available where,

14  as here, the plaintiff did not purchase the allegedly price-fixed

15  product (CRTs) at all, but rather purchased a different, downstream

16  product (such as TVs and monitors)."  Mot. at 7-8.

17         The Court disagrees that either of these arguments shows a

18  substantial ground for difference of opinion per § 1292(b).  The

19  reason is simple.  Though Defendants strongly disagree with the

20  Court's decision on this matter, and indeed there is always a

21  possibility that settled Ninth Circuit law might be applied

22  differently, there appears to be no dispute among the circuit

23  courts on the law the Court applied in its November 29 Order.

24  Indeed, the Ninth Circuit has affirmed multiple times that Royal

25  Printing controls in cases like this one.  In re ATM Fee, 686 F.3d

26  at 756-57; Delaware Valley, 523 F.3d at 1121; Freeman v. San Diego

27  Ass'n of Realtors, 322 F.3d 1133, 1146 & n.12 (9th Cir. 2003), cert

28  denied, 540 U.S. 940 (2003).  Defendants cite no cases suggesting

**United States District Court**
For the Northern District of California

1  that other circuits disagree.  Moreover, this Court has applied

2  Royal Printing in a manner consistent with the November 29 Order in

3  a number of other cases.  See, e.g., In re TFT-LCD (Flat Panel)

4  Antitrust Litig., No. M 07-1827 SI, 2012 WL 5869588, at *3 (N.D.

5  Cal. Nov. 28, 2012); In re Optical Disk Drive Antitrust Litig., No.

6  3:10-md-2143 RS, 2012 WL 1366718, at *6 (N.D. Cal. Apr. 19, 2012).

7  The fact that the Ninth Circuit has given a straightforward rule

8  indicates that there is no substantial ground for difference of

9  opinion on this point.

10      **C.   Immediate Appeal Beneficial**

11      If "present appeal promises to advance the time for trial or

12  to shorten the time required for trial, appeal is appropriate."

13  Dukes v. Wal-Mart Stores, Inc., No. C 01-02252 CRB, 2012 WL

14  6115536, at *5 (citations omitted); see also In re Cement, 673 F.3d

15  at 1027.  The ultimate question is whether permitting an

16  interlocutory appeal would "minimiz[e] the total burdens of

17  litigation on parties and the judicial system by accelerating or at

18  least simplifying trial court proceedings."  Id.

19      Defendants argue that interlocutory review will materially

20  advance the resolution of this litigation by resolving whether the

21  Named DPPs have antitrust standing, establishing the scope of the

22  putative DPP class before class-certification briefing, altering

23  the parties' settlement posture, potentially reducing Defendants'

24  costs of defending claims in this case, and determining whether the

25  opt-out plaintiffs can proceed on their federal claims.  Mot. at 9.

26  Defendants also argue, more generally, that clarifying Royal

27  Printing's scope will materially advance the termination of this

28  litigation by allowing the Ninth Circuit to "put to rest" the

United States District Court
For the Northern District of California

uncertainty surrounding the contours of the ownership and control exception.  Id.  As to the last argument, the Court already addressed the fact that the Ninth Circuit has made itself clear on this issue.  Supra § IV.B.  Further, Defendants' argument that an altered settlement posture counsels granting the appeal is unconvincing, since appeal would almost always modify parties' settlement postures in any given case.

The Court also finds Defendants' other arguments unavailing. It is not certain that the Ninth Circuit would resolve this issue prior to the certification of a class in this case unless the Court were to stay the case, which it is unwilling to do, since this case has been pending since November 2007.  Moreover, appeal of the November 29 Order would not hasten the termination of this litigation because both putative classes and the DAPs would still have numerous claims left to litigate, even though some federal claims might be extinguished as to some plaintiffs.  The Court does not find that certifying the November 29 Order for interlocutory appeal would be beneficial to the termination of this case.

///
///
///
///
///
///
///
///
///
///

**V.** **CONCLUSION**

For the reasons given above, Defendants' motion to certify the November 29 Order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) is DENIED.

IT IS SO ORDERED.

Dated: February <u>13</u>, 2013

_____
UNITED STATES DISTRICT JUDGE