Guido Saveri (22349) guido@saveri.com
R. Alexander Saveri (173102) rick@saveri.com
Geoffrey C. Rushing (126910) grushing@saveri.com
Cadio Zirpoli (179108) cadio@saveri.com
SAVERI & SAVERI, INC.
706 Sansome Street
San Francisco, CA 94111
Telephone: (415) 217-6810
Facsimile: (415) 217-6813

Interim Lead Counsel for the Direct Purchaser Plaintiffs

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION

This Document Relates to:

**ALL DIRECT PURCHASER ACTIONS**

Master File No. CV- 07-5944-SC

MDL No. 1917

**DIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR:**

**1) CERTIFICATION OF A SETTLEMENT CLASS;**

**2) PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT WITH THE TOSHIBA DEFENDANTS;**

**3) DIRECTING NOTICE TO THE SETTLEMENT CLASS; AND**

**4) MEMORANDUM IN SUPPORT THEREOF**

Date: March 12, 2013
Time: 10:00 a.m.
Judge: Honorable Charles A. Legge (Ret.)
JAMS: Two Embarcadero Center, Suite 1500

**TABLE OF CONTENTS**


TABLE OF CONTENTS ..... i

TABLE OF AUTHORITIES ..... ii

NOTICE OF MOTION AND MOTION ..... 1

MEMORANDUM OF POINTS AND AUTHORITIES ..... 2

I. INTRODUCTION ..... 2

II. FACTUAL AND PROCEDURAL HISTORY ..... 3

III. THE TERMS OF THE SETTLEMENT ..... 8

IV. THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT ..... 10

A. Class Action Settlement Procedure. ..... 10

B. Standard for Settlement Approval. ..... 10

C. The Proposed Settlement Is Within The Range Of Reasonableness. ..... 12

V. THE COURT SHOULD PROVISIONALLY CERTIFY THE TOSHIBA SETTLEMENT CLASS ..... 14

A. The Requirements of Rule 23 in the Context of the Settlement Class ..... 15

B. The Requirements of Rule 23(a) Are Satisfied In This Case. ..... 16

1. The Class Is So Numerous That Joinder of All Members Is Impracticable. 16

2. This Case Involves Questions of Law and Fact Common to the Class ..... 17

3. The Claims of the Representative Parties are Typical of the Claims of the Class ..... 19

4. The Representative Plaintiffs Will Fairly and Adequately Protect the Interests of the Class ..... 20

C. The Proposed Class Satisfies The Requirements Of Rule 23(b)(3) ..... 21

1. Common Questions of Law and Fact Predominate Over Individual Questions ..... 21

2. A Class Action Is Superior to Other Available Methods for the Fair and Efficient Adjudication of this Case. ..... 23

D. The Court Should Appoint the Plaintiffs' Interim Lead Counsel as Counsel for the Settlement Class. ..... 24

VI. PROPOSED PLAN OF NOTICE ..... 24

VII. PROPOSED PLAN OF ALLOCATION ..... 26

VIII. THE COURT SHOULD SET A FINAL APPROVAL HEARING SCHEDULE ..... 27

IX. CONCLUSION ..... 28

## TABLE OF AUTHORITIES

**CASES**


*Agretti v. ANR Freight System, Inc.*,
982 F.2d 242 (7th Cir. 1992) ........ 14

*Amchem Products, Inc. v. Windsor*,
521 U.S. 591 (1997) ........ 16, 21, 23, 25

*Bellows v. NCO Financial System*,
2008 U.S. Dist. LEXIS 103525 (S.D. Cal. Dec. 2, 2008) ........ 13

*Blackie v. Barrack*,
524 F.2d 891 (9th Cir. 1975) ........ 17

*Byrd v. Civil Service Commission*,
459 U.S. 1217 (1983) ........ 11

*Carnegie v. Household International, Inc.*,
376 F.3d 656 (7th Cir. 2004) ........ 16, 23

*Churchill Village, L.L.C. v. General Electric*,
361 F.3d 566 (9th Cir. 2004) ........ 10, 11

*Class Plaintiffs v. City of Seattle*,
955 F.2d 1268 (9th Cir. 1992) ........ 10, 12

*Estate of Jim Garrison v. Warner Bros., Inc.*,
1996 WL 407849 (C.D. Cal. June 25, 2006) ........ 18

*Fisher Bros. v. Mueller Brass Co.*,
630 F. Supp. 493 (E.D. Pa. 1985) ........ 13

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1988) ........ passim

*Harrington v. City of Albuquerque*,
222 F.R.D. 505 (D.N.M. 2004) ........ 24

*In re AOL Time Warner ERISA Litigation*,
2006 U.S. Dist. LEXIS 70474 (S.D.N.Y. Sept. 27, 2006) ........ 26

*In re Cardizem CD Antitrust Litigation*,
200 F.R.D. 326 (E.D. Mich. 2001) ........ 21

*In re Cement and Concrete Antitrust Litigation*,
1979 WL 1595 (D. Ariz. March 9, 1979) ........ 22

*In re Chlorine & Caustic Soda Antitrust Litigation*,
116 F.R.D. 622 (E.D. Pa. 1987) ........ 19

*In re Citric Acid Antitrust Litig*ation,
145 F. Supp. 2d 1152 (N.D. Cal. 2001) ........ 26

*In re Citric Acid Antitrust Litigation*,
1996 WL 655791 (N.D. Cal. 1996) ........ passim

*In re Corrugated Container Antitrust Litigation*,
Case No. M.D.L. 310, 1981 WL 2093 (S.D. Tex. June 4, 1981) ........ 14

*In re Dynamic Random Access Memory (DRAM) Antitrust Litigation*,
2006 WL 1530166 (N.D. Cal. June 5, 2006) ........ 14

*In re Dynamic Random Access Memory (DRAM) Antitrust Litigation*, Case No. M 02-1486 PJH, 2006 U.S. Dist. LEXIS 39841 (N.D. Cal. June 5, 2006) .... 18, 27

*In re Flat Glass Antitrust Litigation*, 191 F.R.D. 472 (W.D. Pa. 1999) .... 17, 18, 19

*In re Initial Public Offering Securities Litigation*, 226 F.R.D. 186 (S.D.N.Y. 2005) .... 16

*In re Linerboard Antitrust Litigation*, 292 F. Supp. 2d 631 (E.D. Pa. 2003) .... 14

*In re Lloyds' American Trust Fund Litigation*, 2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002) .... 27

*In re Lorazepam & Clorazeopate Antitrust Litigation*, 202 F.R.D. 12 (D.D.C. 2001) .... 21

*In re Methionine Antitrust Litigation*, Master File No. C-99-3491-CRB (N.D. Cal. Dec. 21, 2000 (Order Granting Motion for Class Certification (Breyer, J.)) .... 15

*In re Mid-Atl. Toyota Antitrust Litigation*, 564 F. Supp. 1379 (D. Md. 1983) .... 14

*In re Mid-Atlantic Toyota Antitrust Litigation*, 564 F. Supp. 1379 (D. Md. 1983) .... 13

*In re NASDAQ Market Makers Antitrust Litigation*, 176 F.R.D. 99 (S.D.N.Y. 1997) .... 11

*In re NASDAQ Market-Makers Antitrust Litigation*, 169 F.R.D. 493 (S.D.N.Y. 1996) .... 22

*In re Pacific Enterprise Security Litigation*, 47 F.3d 373 (9th Cir. 1995) .... 10

*In re Potash Antitrust Litigation*, 159 F.R.D. 682 (D. Minn. 1995) .... 22

*In re Relafen Antitrust Litigation*, 231 F.R.D. 52 (D. Mass. 2005) .... 16

*In re Rubber Chemicals Antitrust Litigation*, 232 F.R.D. 346 (N.D. Cal. 2005) .... passim

*In re Shopping Carts Antitrust Litigation*, No. MDL 451-CLB, M-21-29, 1983 U.S. Dist Lexis 11555 (S.D.N.Y. No. 18, 1983) .... 11

*In re Sorbates Direct Purchaser Antitrust Litigation*, Case No. C 98-4886 MMC (N.D. Cal. Mar. 11, 2002) (Order Granting Plaintiffs' Motion for Class Certification; Vacating Hearing (Chesney, J.)) .... 15

*In re Static Random Access Memory (SRAM) Antitrust Litigation*, 2008 WL 4447592 (N.D. Cal. Sept. 29, 2008) .... 14

*In re Sugar Industry Antitrust Litig.*, 1976 WL 1374 (N.D. Cal. 1976) .... 17, 21, 22

*In re Tableware Antitrust Litigation*, 484 F. Supp. 2d 1078 (N.D. Cal. 2007) .... 3, 12, 25

*In re TFT-LCD (Flat Panel) Antitrust Litigation*, 267 F.R.D. 291 (N.D. Cal. 2010) .... 14, 17, 19, 21

*In re Vitamins Antitrust Litigation*, 2000 WL 1737867 (D.D.C. Mar. 31, 2000) ... 27

*In re Vitamins Antitrust Litigation*, 2001 WL 856292 (D.D.C. July 25, 2001) ... 12

*In re Warfarin Sodium Antitrust Litigation*, 391 F.3d 516 (3d Cir. 2004) ... 21

*In Re: Sodium Gluconate Antitrust Litigation*, Master File No. C 97-4142 CW (N.D. Cal. Sept. 24, 1998) (Order Granting Class Certification) (Wilken, J.)) ... 15

*Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507 (9th Cir. 1978) ... 20, 23

*Local Joint Executive Board of Culinary/Bartender Trust Fund v. Las Vegas*, 244 F.3d 1152 (9th Cir. 2001) ... 21, 23

*Mularkey v. Holsum Bakery, Inc.*, 120 F.R.D. 118 (D. Ariz. 1988) ... 22

*National Rural Telcoms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) ... 13

*Officers for Justice v. Civil Service Commission*, 688 F.2d 615 (9th Cir. 1982) ... 11, 13

*Oregon Laborers-Employers Health & Welfare Trust Fund v. Philip Morris, Inc.*, 188 F.R.D. 365 (D. Ore. 1998) ... 17, 21

*Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180 (10th Cir. 2002) ... 13

*Torrisi v. Tucson Electric Power Co.*, 8 F.3d 1370 (9th Cir. 1993) ... 26

*Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943 (9th Cir. 1976) ... 10

*Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114 (E.D. Cal. 2009) ... 3, 12

*Wellman v. Dickinson*, 497 F. Supp. 824 (S.D.N.Y. 1980) ... 11

*West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710 (S.D.N.Y. 1970) ... 11

*Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273 (D. Colo. 1997) ... 13

**STATUTES**

Clayton Act, 15 U.S.C. § 15 ... 3, 4

Sherman Act, 15 U.S.C. § 1 ... 3

**OTHER AUTHORITIES**

4 Newberg on Class Actions (4th ed. 2002) ... passim

*Manual for Complex Litigation* (Fourth) (2004) ... 3, 12, 26

*Moore's Federal Practice* (3d ed. 2003) ... 25

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on March 12, 2013, 10:00 a.m. or as soon thereafter as counsel can be heard, before the Honorable Charles A. Legge (Ret.) at the office of JAMS, Two Embarcadero Center, Suite 1500, San Francisco, California, the Direct Purchaser Plaintiffs ("Plaintiffs") will move this Court, pursuant to Rule 23 of the Federal Rules of Civil Procedure ("FRCP"), for entry of an Order:

(i) granting preliminary approval of the settlement agreement ("Settlement") Plaintiffs have executed with defendants (1) Toshiba Corporation; (2) Toshiba America Consumer Products, L.L.C.; (3) Toshiba America Information Systems, Inc.; and (4) Toshiba America Electronic Components, Inc.;

(ii) certifying a Settlement Class;

(iii) appointing Plaintiffs' Interim Lead Counsel as Settlement Class Counsel;

(iv) approving the manner and form of giving notice of the Settlement to Settlement Class members and approving the plan of allocation; and

(v) establishing a timetable for publishing class notice, lodging objections to the terms of the Settlement, if any, and holding a hearing regarding final approval of the Settlement.

The grounds for this motion are that: (a) the Settlement is in the range of possible final approval to justify issuing notice of the Settlement to Settlement Class members and to schedule final approval proceedings; and (b) that the form and manner of providing notice regarding the matters set forth above satisfy the requirements of FRCP 23 and due process.

This motion is based upon this Notice of Motion and Motion, the following Memorandum of Law, the Declaration of R. Alexander Saveri ("Saveri Declaration") and the Proposed Order Preliminarily Approving Class Action Settlement with Toshiba, the complete files and records in this action, and such other written or oral arguments that may be presented to the Court.

The settlement agreement is attached as Exhibit 1, to the Saveri Declaration. The proposed form of Long Form Notice is attached to the Saveri Declaration as Exhibit 2. The proposed form of Summary Notice (*Wall Street Journal*) is attached to the Saveri Declaration as Exhibit 3.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs move this court for an order preliminarily approving the class settlement reached with Toshiba Corporation, Toshiba America Information Systems, Inc., Toshiba America Consumer Products, L.L.C., and Toshiba America Electronic Components, Inc. (collectively "Toshiba" or "Settling Defendants").

The Settlement provides for payment by Toshiba of $13,500,000 for a complete release of all class members' antitrust claims against Toshiba and related entities defined in the Settlement Agreement as "Toshiba Releasees." Saveri Decl., Ex. 1, ¶ 6. Toshiba has also agreed to cooperate with the Plaintiffs in providing certain information regarding the allegations of the complaint. *Id.* (Settlement Agreement ¶ 24). In addition, the sales of Toshiba remain in the case for the purpose of computing damages against the remaining non-settling Defendants. Saveri Decl., Ex. 1, ¶ 13.

The Settlement was achieved only after extensive arms-length negotiations and represents an outstanding recovery for the class. Saveri Decl. ¶ 21.

At this time, this Court is not being asked to determine whether the Settlement and the related plan of allocation are fair, reasonable and adequate. Rather, the question is simply whether the Settlement and the related plan of allocation are sufficiently within the range of possible approval to justify sending and publishing notice to class members and to schedule a final approval hearing.

Plaintiffs hereby seek provisional certification of a settlement class which the Settlement is contingent upon. The Settlement Class is identical to the settlement classes previously certified by the Court in connections with its preliminary and/or final approval of the settlements with the Chunghwa, Philips, Panasonic, and LG defendants, namely, a nationwide class of direct purchasers of CRTs and CRT Finished Products (collectively, "CRT Products") from March 1, 1995 through November 25, 2007 ("Settlement Class"). CRTs are defined to mean Cathode Ray Tubes of any type (e.g. color display tubes, color picture tubes and monochrome display tubes). CRT Finished Products are those products that contain Cathode Ray Tubes – televisions and computer monitors. *Id.* ¶ 19. The Settlement is based on the sales of CRT Products (i.e., both CRTs and CRT Finished

Products). *Id.* ¶ 20.

Through this motion, Plaintiffs seek preliminary approval of the Settlement. The Court should grant preliminary approval of the Settlement because it easily satisfies the standard for preliminary approval – that is, it is within the range of possible approval to justify sending and publishing notice of the Settlement to Settlement Class members and scheduling final approval proceedings. *See In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007); *Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1125 (E.D. Cal. 2009); *Manual for Complex Litigation* (Fourth) § 13.14 at 173 ("First, the judge reviews the proposal preliminarily to determine whether it is sufficient to warrant public notice and a hearing. If so, the final decision on approval is made after the hearing."). Accordingly, Plaintiffs seek an order: (i) granting preliminary approval of the Settlement, (ii) certifying the Settlement Class, (iii) approving the manner and forms of giving notice to the Settlement Class, and (iv) establishing a timetable for final approval of the Settlement.

## II. FACTUAL AND PROCEDURAL HISTORY

This multidistrict litigation arises from an alleged conspiracy to fix prices of Cathode Ray Tubes ("CRTs"). In November of 2007, the first direct purchaser plaintiff filed a class action complaint on behalf of itself and all others similarly situated alleging a violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, and Section 4 of the Clayton Act, 15 U.S.C. § 15. Thereafter, additional actions were filed in other jurisdictions, and the Judicial Panel on Multidistrict Litigation transferred all related actions to this Court on February 15, 2008. (Docket No. 122). On May 9, 2008, Saveri & Saveri, Inc. was appointed Interim Lead Class Counsel for the nationwide class of direct purchasers. (Docket No. 282).

On March 16, 2009, the Direct Purchaser Plaintiffs filed their Consolidated Amended Complaint ("CAC") alleging an over-arching horizontal conspiracy among the Defendants and their co-conspirators to fix prices for CRTs and to allocate markets and customers for the sale of CRTs in the United States from March 1, 1995 through November 25, 2007 (the "Class Period"). The CAC alleges that Plaintiffs and members of the Class are direct purchasers of CRTs and/or CRT Finished Products from Defendants and/or their subsidiaries and were injured because they

paid more for CRTs and/or CRT Finished Products than they would have absent defendants' illegal conspiracy. (CAC ¶¶ 213–221). Plaintiffs seek, among other things, treble damages pursuant to Section 4 of the Clayton Act, 15 U.S.C. §§ 15 and 22. (CAC, Prayer for Relief).

Defendants filed several motions to dismiss the CAC on May 18, 2009. (See Dockets No. 463–493). On February 5, 2010 this Court issued its rulings denying in part, and granting in part, Defendants' motions to dismiss (Report, Recommendations and Tentative Rulings regarding Defendants' Motions to Dismiss-Docket No. 597). After an appeal by defendants, Judge Conti on March 30, 2010 entered his Order approving and adopting Judge Legge's previous ruling and recommendations regarding Defendants' Motions to Dismiss. (Docket No. 665). On April 29, 2010, Defendants answered the CAC.

Thereafter, in May 2010, certain Defendants propounded interrogatories requesting Plaintiffs to identify what evidence they had about the existence of a conspiracy to fix the prices of CRT Products at the time they filed their complaints. Plaintiffs objected to these interrogatories as, among other things, premature "contention" interrogatories. Defendants moved to compel answers. On November 18, 2010, after a hearing, the Special Master ordered Plaintiffs to answer the interrogatories. (Report and Recommendations Regarding Discovery Motions - Docket No. 810). On December 8, 2010, the Court adopted the Special Master's Report and Recommendation. (Order Adopting Special Master's Report, Recommendation, and Tentative Rulings Regarding Discovery Motions - Docket No. 826). On January 31, 2011, Plaintiffs answered Defendants' interrogatories.

On March 21, 2011, certain Defendants moved for sanctions pursuant to Federal Rule of Civil Procedure 11 on the grounds that the allegations of a finished product conspiracy were without foundation and should be stricken from the complaint. (Certain Defendants' Motion for Sanctions Pursuant to Rule 11 - Docket No. 880). On June 15, 2011, after a hearing, the Special Master recommended that the motion be granted and that Plaintiffs' allegations of a finished products conspiracy be stricken from the complaint. (Special Master Report and Recommendations on Motions Regarding Finished Products - Docket No. 947). The Special Master also recommended that "the issue of the possible impact or effect of the alleged fixing of prices of the

CRTs on the prices of Finished Products shall remain in the case, and is a proper subject of discovery." *Id.* at p. 14.

On June 29, 2011, Defendants moved the Court to adopt the Special Master's Report and Recommendation. (Motion to Adopt Special Master's Report and Recommendation Regarding Finished Products - Docket No. 953). Plaintiffs filed an objection to the Special Master's Report and Recommendation. (Direct Purchaser Plaintiffs' Objection to Report and Recommendation on Motions Regarding Finished Products - Docket No. 957). The Court set the matter for hearing on September 2, 2011. (Docket No. 968).

On August 26, 2011, the parties entered into a stipulation providing, among other things: 1) that the Special Master's recommended finding that Plaintiffs violated Rule 11 be vacated; 2) that certain other aspects of the Special Master's recommendations be adopted; and 3) that Plaintiffs' "allegations of the Direct CAC purporting to allege a conspiracy encompassing Finished Products are Stricken from the Direct CAC, provided, however, that the issue of the possible impact or effect of the alleged fixing of prices of CRTs on the prices of Finished Products shall remain in the case." In addition, Plaintiffs agreed to withdraw "all discovery requests regarding or relating to information in support of the CRT Finished Product Conspiracy claims," and that "the issue of the purported impact or effect of the alleged fixing of prices of the CRTs on the prices of the Finished Products shall remain in the case and is a proper subject of discovery." (Stipulation and Order Concerning Pending Motions Re: Finished Products - Docket No. 996).

On December 12, 2011 Defendants filed a joint motion for Summary Judgment against Direct Purchaser Plaintiffs who purchased CRT Finished Products. (Docket No. 1013). On February 24, 2012, Plaintiffs filed their Memorandum of Points and Authorities In Opposition to Defendants' Motion For Partial Summary Judgment and supporting Declaration of R. Alexander Saveri under seal. (Docket No. 1057). That same day, the Direct Action Plaintiffs also filed an opposition to Defendants' motion. On March 9, 2012, Defendants filed their Reply In Support of Motion For Summary Judgment (Docket No. 1083), and on March 20, 2012, the Court heard argument from all the parties. Thereafter, on May 31, 2012, the Special Master issued his Report and Recommendation regarding Defendants' Joint Motion For Summary Judgment recommending

that the Court grant Defendants' motion for summary judgment and that judgment be entered against certain plaintiffs that purchased CRT Finished Products from defendants ("R&R"). (Docket No. 1221).

On June 12, 2012, the Direct Purchaser Plaintiffs, the Direct Action Plaintiffs, and the Defendants submitted a Stipulation notifying the Court, *inter alia*, that Plaintiffs intended to object to the R&R. (Docket No. 1228). On June 26, 2012, the Court issued an order establishing a briefing schedule requiring all parties to file their briefs by July 26, 2012 and setting a hearing for August 10, 2012. (Docket No. 1240). On June 28, 2012, the Court vacated the hearing. (Docket No. 1243). The parties filed their briefs as ordered.

On November 29, 2012, the Court entered the Order Granting in Part and Denying in Part Defendants' Joint Motion for Summary Judgment ("Order") (Docket No. 1470). The Court found that the Direct Purchaser Plaintiffs that purchased a Finished Product, were "in fact indirect purchasers for purposes of antitrust standing." Order at p. 6. The Court further found that one of the three exceptions that permit indirect purchasers to pursue private treble-damages claims, outlined by the Ninth Circuit Court of Appeals in *In re ATM Fee Antitrust Litig.*, 686 F.3d 741 (9th Cir. 2012), did apply to the Direct Purchaser Plaintiffs. The Court ruled that the "Ownership and Control Exception" created in *Royal Printing Co. v. Kimberly-Clark Corp.*, 621 F.2d 323 (9th Cir. 1980), conferred standing on Direct Purchaser Plaintiffs to sue "insofar as they purchased [Finished Products] incorporating the allegedly price-fixed CRTs from an entity owned or controlled by any allegedly conspiring defendant." Order at p. 16. On December 19, 2012, certain defendants filed a motion under 28 U.S.C. section 1292(b) requesting that the Court certify the Court's November 29, 2012 Order for interlocutory appeal. (Docket No. 1499).

In September of 2008, the first of several stays prohibiting Plaintiffs from obtaining merits discovery was entered by this Court. (Docket Nos. 379, 425, and 590). On June 4, 2008, Plaintiffs' propounded their First Set of Limited Document Requests. Thereafter, on March 12, 2010, after the partial stay of discovery was lifted, Plaintiffs propounded their Second Set of Document Requests and First Set of Interrogatories. After extensive meet and confers and several motions to compel, the Court issued its Report Regarding Case Management Conference No. 4 on October 27,

2011 in which it set the middle of December, 2011 as the deadline for the completion of substantial discovery by all parties. (Docket Nos. 1007, 1008). Plaintiffs have now received over 5 million pages of documents produced by Defendants.

On March 19, 2012, the Special Master issued the Scheduling Order and Order Re Discovery and Case Management Protocol. (Docket Nos. 1093, 1094). The Court entered both Orders on April 3, 2012. (Docket Nos. 1127, 1128). The Scheduling Order set August 30, 2013 as the date for completion of all fact and expert discovery. Beginning in June of 2012, after meeting and conferring with defendants regarding the scope and topics of 30(b)(6) witnesses, Plaintiffs began taking 30(b)(6) depositions of the various defendants. To date, in coordination with the indirect purchasers, the Attorneys General, and the opt-out plaintiffs, Plaintiffs have deposed approximately twenty-five corporate representatives. Beginning in December of 2012, Plaintiffs began taking fact depositions.

On October 19, 2012, the Court granted final approval of the first two settlements reached in this case with: (1) Chunghwa Picture Tubes, Ltd. and Chunghwa Picture Tubes (Malaysia) Sdn. Bhd. ("CPT"), and (2) Koninklijke Philips Electronics N.V., Philips Electronics North America Corporation, Philips Electronics Industries (Taiwan), Ltd., and Philips Da Amazonia Industria Electronica Ltda. ("Philips"). The Court certified a Settlement Class for the CPT and Philips settlements, appointed Plaintiffs' Interim Lead Counsel as Settlement Class Counsel, and found that the manner and form of providing notice of the settlements to class members was the best notice practicable under the circumstances (Docket No. 1412). The Court entered a final judgment of dismissal with respect to CPT and Philips (Docket Nos. 1413, 1414).

On December 27, 2012, the Court granted final approval of the third settlement reached in this case with Panasonic Corporation (f/k/a Matsushita Electric Industrial Co., Ltd.), Panasonic Corporation of North America, and MT Picture Display Co., Ltd., ("Panasonic"). The Court certified a Settlement Class for the Settlement, appointed Plaintiffs' Interim Lead Counsel as Settlement Class Counsel, and found that the manner and form of providing notice of the settlements to class members was the best notice practicable under the circumstances. (Docket No.

1508). The Court entered final judgments of dismissal with respect to Panasonic and BMCC (Docket Nos. 1509, 1510).

On November 13, 2012, the Court preliminarily approved the fourth settlement reach in this case with defendants LG Electronics, Inc., LG Electronics USA, Inc., and LG Electronics Taiwan Taipei Co., Ltd. ("LG"). As with the CPT, Philips, and Panasonic settlements, the Court certified a Settlement Class, appointed Plaintiffs' Interim Lead Counsel as Settlement Class Counsel, approved the manner and form of providing notice to class members, and established a timetable for publishing class notice. (Docket No. 1441). The hearing on final approval is set for March 15, 2013. (Docket No. 1441).

The Toshiba Settlement is the fifth settlement reached in this action.

## III. THE TERMS OF THE SETTLEMENT

The Direct Purchaser Plaintiffs have executed the Settlement Agreement with Toshiba. As explained in detail below, the Settlement provides for a release of class members' claims in exchange for a substantial cash payment and cooperation with Plaintiffs regarding the price-fixing claims asserted in the CAC. The Settlement requests certification of a settlement class of direct purchasers of CRTs and/or CRT Finished Products from Defendants and their co-conspirators from March 1, 1995 through November 25, 2007. Toshiba and Plaintiffs have stipulated to a class as it is defined in Plaintiffs' operative complaint. Saveri Decl., Ex. 1, ¶ 1.

### A. The Settlement.

In exchange for dismissal with prejudice and a release of all claims as defined in paragraph 13 of the Settlement Agreement, Toshiba has agreed to pay $13,500,000 in cash. The funds are to be deposited into a guaranteed escrow account within 30 days of execution of the Settlement Agreement. *Id.*, Ex. 1, ¶ 16.

In addition, Toshiba has agreed to cooperate with Plaintiffs in the prosecution of this action by: 1) providing copies of all discovery (including among other things, all documents, interrogatories, requests for admission, etc.) Toshiba produces to any other party in the Action; 2) providing a declaration and/or custodian establishing the authenticity of Toshiba's transactional data, and foundation of any Toshiba document or data needed at summary judgment or trial; 3)

allowing Counsel to question percipient witnesses noticed for deposition by any other party in the Action with whom Toshiba has not settled; and 4) using its best efforts to make available two persons for trial testimony, each of whom is, at the time of trial, a director, officer, and/or employee of Toshiba whom Lead Counsel reasonably believes to have knowledge regarding Plaintiffs' claims. *Id.*, Ex. 1, ¶ 24.

In addition, Toshiba's sales shall remain in the case for purposes of computing damages against the non-settling defendants. *Id.*, Ex. 1, ¶ 13.

Toshiba has the right to withdraw from the Settlement if class members who purchased, in total, 80% or more of Toshiba's sales of CRT Products in the United States opt out of the Settlement Class. *Id.*, Ex. 1, ¶ 18(a).

Upon the Settlement becoming final, Plaintiff and Settlement Class members will relinquish any claims against "Toshiba Releasees" (defined in paragraph 3 of the Settlement Agreement) as described in paragraph 13 of the Settlement Agreement. Saveri Decl., Ex. 1, ¶ 13. The release, however, excludes claims for product defects or personal injury. *Id.*, Ex. 1, ¶ 13. The Settlement becomes final upon: (i) the Court's approval of the Settlement pursuant to Rule 23(e) and the entry of a final judgment of dismissal with prejudice as to Toshiba; and (ii) the expiration of the time for appeal or, if an appeal is taken, the affirmance of the judgment with no further possibility of appeal. Saveri Decl., Ex. 1, ¶ 11.

Subject to the approval and direction of the Court, the Settlement payment, plus any accrued interest thereon, will be used to: (i) make a distribution to Settlement Class members in accordance with a proposed plan of allocation to be approved by the Court (Saveri Decl. Ex. 1, ¶ 21); (ii) pay Class Counsel's attorneys' fees, costs, and expenses as may be awarded by the Court (*Id.*, Ex. 1, ¶ 22–23.); and (iii) pay all taxes associated with any interest earned on the escrow account. (*Id.*, ¶ 17(f)). In addition, the Settlement provides that $300,000 may be used to pay for Notice costs and future costs incurred in the administration and distribution of the Settlement payments (*Id.* ¶ 19(a)).

## IV. THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT

### A. Class Action Settlement Procedure.

A class action may not be dismissed, compromised, or settled without the approval of the Court. Judicial proceedings under Federal Rule of Civil Procedure 23 have led to a defined procedure and specific criteria for class action settlement approval. The Rule 23(e) settlement approval procedure includes three distinct steps:

1. Preliminary approval of the proposed settlement;
2. Dissemination of notice of the proposed settlement to all affected class members; and
3. A formal fairness hearing, also called the final approval hearing, at which class members may be heard regarding the proposed settlement, and at which counsel may introduce evidence and present argument concerning its fairness, adequacy, and reasonableness.

This procedure safeguards class members' due process rights and enables the Court to fulfill its role as the guardian of class interests. *See* 4 Alba Conte & Herbert Newberg, *Newberg on Class Actions* §§ 11.22, *et seq*. (4th ed. 2002) ("*Newberg*").

By way of this motion, Plaintiffs respectfully request that the Court take the first steps in the settlement approval process, namely to preliminarily approve the Toshiba Settlement, provisionally certify the proposed Settlement Class, appoint Plaintiffs' Interim Lead Counsel as Class Counsel for the Settlement Class, schedule a final approval hearing, and approve notice to the class.

### B. Standard for Settlement Approval.

Rule 23(e) requires court approval of any settlement of claims brought on a class basis. "[T]here is an overriding public interest in settling and quieting litigation . . . particularly . . . in class action suits." *Van Bronkhorst v. Safeco Corp*., 529 F.2d 943, 950 (9th Cir. 1976); *see also Churchill Village, L.L.C. v. General Elec.*, 361 F.3d 566, 576 (9th Cir. 2004); *In re Pacific Enter. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). It is well-recognized that "[v]oluntary out of court settlement of disputes is 'highly

favored in the law' and approval of class action settlements will be generally left to the sound discretion of the trial judge." *Wellman v. Dickinson*, 497 F. Supp. 824, 830 (S.D.N.Y. 1980) (citation omitted). Courts have particularly recognized that compromise is favored for antitrust litigation – which is notoriously difficult and unpredictable. *See In re Shopping Carts Antitrust Litig.*, No. MDL 451-CLB, M-21-29, 1983 U.S. Dist Lexis 11555, at *17–18 (S.D.N.Y. No. 18, 1983); *West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743–44 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d Cir. 1971).

The purpose of the Court's preliminary evaluation of the proposed settlement is to determine whether it is within "the range of reasonableness," and, thus whether notice to the Class of the terms and conditions of the settlement, and the scheduling of a formal fairness hearing, is worthwhile. Preliminary approval should be granted where "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval." *In re NASDAQ Market Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997). Application of these factors supports an order granting the motion for preliminary approval.

The approval of a proposed settlement of a class action is a matter of discretion for the trial court. *Churchill Village*, 361 F.3d at 575. In exercising that discretion, however, courts recognize that a settlement approval hearing should "not . . . be turned into a trial or rehearsal for trial on the merits." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982), *cert. denied sub nom. Byrd v. Civil Serv. Comm'n*, 459 U.S. 1217 (1983). Furthermore, courts must give "proper deference" to the settlement agreement, because "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1988) (quotations omitted).

To grant preliminary approval of the settlement, the Court need only find that it falls within

"the range of reasonableness." *Newberg* § 11.25. The *Manual for Complex Litigation* (Fourth) (2004) ("*Manual*") characterizes the preliminary approval stage as an "initial evaluation" of the fairness of the proposed settlement made by the court on the basis of written submissions and informal presentation from the settling parties. *Manual* § 21.632. The *Manual* summarizes the preliminary approval criteria as follows:

> Fairness calls for a comparative analysis of the treatment of the class members vis-à-vis each other and vis-à-vis similar individuals with similar claims who are not in the class. Reasonableness depends on an analysis of the class allegations and claims and the responsiveness of the settlement to those claims. Adequacy of the settlement involves a comparison of the relief granted to what class members might have obtained without using the class action process.

*Manual* § 21.62. A proposed settlement may be finally approved by the trial court if it is determined to be "fundamentally fair, adequate, and reasonable." *City of Seattle*, 955 F.2d at 1276. Preliminary approval requires only that the terms of the proposed settlement fall within the "range of possible approval." *See In re Tableware Antitrust Litigation*, 484 F. Supp. 2d at 1079; *Vasquez*, 670 F. Supp. 2d at 1125. It amounts to a determination that the terms of the proposed settlement warrant consideration by members of the class and a full examination at a final approval hearing. *Manual* § 13.14 at 173. While consideration of the requirements for *final* approval is unnecessary at this stage, all of the relevant factors weigh in favor of the settlement proposed here. As shown below, the proposed Settlement is fair, adequate, and reasonable. Therefore, the Court should allow notice of the Settlement to be disseminated to the Settlement Class.

### C. The Proposed Settlement Is Within The Range Of Reasonableness.

The proposed Settlement meets the standards for preliminary approval. The Settlement is entitled to "an initial presumption of fairness" because it is the result of arm's length negotiations among experienced counsel. *Newberg §* 11.4. Because it is provisional, courts grant preliminary approval where the proposed settlement lacks "obvious deficiencies" raising doubts about the fairness of the settlement. *See, e.g., In re Vitamins Antitrust Litig.*, 2001 WL 856292, at *4 (D.D.C. July 25, 2001) (quoting *Manual for Complex Litigation* (Third) §30.41).

First, the settlement was a reached as a result of a mediation before Eric Green. The parties exchanged mediation briefs and attended a one-day mediation on October 3, 2012. While no

settlement was reached at the mediation, the parties continued their discussions with the assistance of Mr. Green and reached an agreement in principle on several material terms on or about November 15, 2012. They were contested and conducted in the utmost good faith. Saveri Decl. ¶ 21. Counsel's judgment that the Settlement is fair and reasonable is entitled to great weight. *See Nat'l Rural Telcoms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation."); *accord Bellows v. NCO Fin. Sys.*, 2008 U.S. Dist. LEXIS 103525 at *22 (S.D. Cal. Dec. 2, 2008); *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002); *Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273, 288-89 (D. Colo. 1997); *Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

In fact, "the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Nat'l Rural Telcoms.*, 221 F.R.D. at 528 (*quoting Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)). There is generally "an initial presumption of fairness when a proposed class settlement, which was negotiated at arms' length by counsel for the class, is presented for court approval." *Newberg* § 11.41.

Second, the consideration for the Settlement is substantial. The Settlement provides for a payment of $13,500,000. Saveri Decl. ¶ 22. The Settlement compares favorably to settlements finally approved in other price-fixing cases. *See, e.g., Fisher Bros. v. Mueller Brass Co.*, 630 F. Supp. 493, 499 (E.D. Pa. 1985) (recoveries equal to .1%, .2%, 2%, .3%, .65%, .88%, and 2.4% of defendants' total sales). It also compares favorably to the settlements already previously approved by the Court (CPT $10,000,000, Philips $15,000,000 (after opt-out reduction), Panasonic $17,500,000, and LG $25,000,000).

Third, the Settlement calls for Toshiba to cooperate with Plaintiffs. Saveri Decl. ¶ 24. This is a valuable benefit because it will save time, reduce costs, and provide access to information, witnesses, and documents regarding the CRT conspiracy that might otherwise not be available to Plaintiffs. *See In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1386 (D. Md. 1983) (a defendant's agreement to cooperate with plaintiffs "is an appropriate factor for a court to consider in approving a settlement"). "The provision of such assistance is a substantial benefit to

the classes and strongly militates toward approval of the Settlement Agreement." *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 643 (E.D. Pa. 2003). *See also In re Mid-Atl. Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1386 (D. Md. 1983) (concluding that commitment to cooperate is appropriate factor to consider in approving partial settlement); *In re Corrugated Container Antitrust Litig.*, Case No. M.D.L. 310, 1981 WL 2093, at *16 (S.D. Tex. June 4, 1981) ("The cooperation clauses constituted a substantial benefit to the class."). In addition, "[i]n complex litigation with a plaintiff class, 'partial settlements often play a vital role in resolving class actions.'" *Agretti v. ANR Freight Sys., Inc.*, 982 F.2d 242, 247 (7th Cir. 1992) (quoting Manual for Complex Litigation Second, § 30.46 (1986)).

Finally, the settlement preserves Plaintiffs' right to litigate against the non-settling Defendants for the entire amount of Plaintiffs' damages based on joint and several liability. *See Corrugated Container*, 1981 WL 2093, at *17; Saveri Decl. ¶ 23 (Released claims do not preclude Plaintiffs from pursuing any and all claims against other non-settling defendants for the sales attributable to Toshiba).

For all the aforementioned reasons, the Settlement is within the range of final approval as fair, reasonable, and adequate.

## V. THE COURT SHOULD PROVISIONALLY CERTIFY THE TOSHIBA SETTLEMENT CLASS

The Court should provisionally certify the settlement class contemplated by the Settlement. (Saveri Decl., Ex 1). It is well-established that price-fixing actions like this one are appropriate for class certification and many courts have so held. *See, e.g.*, *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 291 (N.D. Cal. 2010) (Illston J.)("*LCD*"); *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 2008 WL 4447592 (N.D. Cal. Sept. 29, 2008) (Wilken J.) ("*SRAM*"); *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 2006 WL 1530166 (N.D. Cal. June 5, 2006) (Hamilton J.); *In re Rubber Chemicals Antitrust Litig.*, 232 F.R.D. 346, 350 (N.D. Cal. 2005) (Jenkins J.) ("*Rubber Chemicals*"); *In re Citric Acid Antitrust Litig.*, 1996 WL 655791 (N.D. Cal. 1996) (Smith J.) ("*Citric Acid*"); *In re Sorbates Direct Purchaser Antitrust Litig.*, Case No. C 98-4886 MMC (N.D. Cal. Mar. 11, 2002) (Order Granting Plaintiffs' Motion for Class Certification;

Vacating Hearing (Chesney, J.)) ("*Sorbates*"); *In re Methionine Antitrust Litig.*, Master File No. C-99-3491-CRB (N.D. Cal. Dec. 21, 2000 (Order Granting Motion for Class Certification (Breyer, J.)) ("*Methionine*"); *In Re: Sodium Gluconate Antitrust Litig.*, Master File No. C 97-4142 CW (N.D. Cal. Sept. 24, 1998) (Order Granting Class Certification) (Wilken, J.)) ("*Sodium Gluconate*").

The Settlement Class stipulated by the parties and contemplated by the Settlement Agreement is the following:

> All persons and entities who, between March 1, 1995 and November 25, 2007, directly purchased a CRT Product in the United States from any defendant or subsidiary or affiliate thereof, or any co-conspirator. Excluded from the Class are defendants, their parent companies, subsidiaries and affiliates, any co-conspirator, all governmental entities, and any judges or justices assigned to hear any aspect of this action.

The term CRT Products refers to all forms of Cathode Ray Tubes (CRTs), as well as to devices that contain CRTs. Thus, CRT Products include color picture tubes (CPTs), color display tubes (CDTs), monochrome display tubes, and also the finished products that contain them – televisions and monitors.

This Settlement Class is identical to the classes already provisionally certified by the Court in connection with the preliminary approval of the CPT, Philips, Panasonic, and LG settlements. (Order Granting Settlement Class Certification And Preliminary Approval of Class Action Settlements with CPT And Philips, (Docket No. 1179) (May 3, 2012); Order Granting Class Certification And Preliminary Approval of Class Action Settlements with Panasonic, (Docket No. 1280) (July 30, 2012) Order Granting Class Certification And Preliminary Approval of Class Action Settlements with LG Defendants, (Docket No. 1441) (Nov. 13, 2012)).

**A. The Requirements of Rule 23 in the Context of the Settlement Class**

Rule 23 provides that a court must certify an action as a class action where, as here, plaintiffs satisfy the four prerequisites of Rule 23(a), and one of the three criteria set forth in Rule 23(b). Rule 23(a) provides that a class may be certified if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the

claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

Rule 23(b)(3) provides that "an action may be maintained as a class action" if:

> the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

The Rule 23(b)(3) "manageability" requirements, however, need not be satisfied in order to certify a class in the settlement context: "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, . . . for the proposal is that there be no trial." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997), *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 68 (D. Mass. 2005) (same). As Judge Posner has explained, manageability concerns that might preclude certification of a litigated class may be disregarded with a settlement class "because the settlement might eliminate all the thorny issues that the court would have to resolve if the parties fought out the case." *Carnegie v. Household Internat'l, Inc.*, 376 F.3d 656, 660 (7th Cir. 2004) (citing *Amchem*, 521 U.S. at 620); *see also In re Initial Public Offering Securities Litig.*, 226 F.R.D. 186, 190, 195 (S.D.N.Y. 2005) (settlement class may be broader than litigated class because settlement resolves manageability/predominance concerns).

A Rule 23 determination is procedural and does not concern whether a plaintiffs will ultimately prevail on the substantive merits of their claims. *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 177–78 (1974); *Tchoboian v. Parking Concepts*, 2009 WL 2169883, *3-4 (C.D. Cal. July 16, 2009); *Gabriella v. Wells Fargo Fin., Inc*., 2008 WL 3200190, *2 (N.D. Cal. Aug. 4, 2008).

**B. The Requirements of Rule 23(a) Are Satisfied In This Case.**

**1. The Class Is So Numerous That Joinder of All Members Is Impracticable**

The first requirement for maintaining a class action under Rule 23 is that the class be so numerous that joinder of all members would be "impracticable." Fed. R. Civ. P. 23(a)(1). To satisfy this prerequisite, Plaintiff need not allege the precise number or identity of class members.

*Rubber Chemicals*, 232 F.R.D. at 350 ("Plaintiffs do not need to state the exact number of potential class members, nor is a specific number of class members required for numerosity."); *In re Sugar Industry Antitrust Litig.*, 1976 WL 1374, at *12 (N.D. Cal. 1976) (same). Rather, a finding of numerosity may be supported by common sense assumptions. *Rubber Chemicals*, 232 F.R.D. at 350; *Citric Acid*, 1996 WL 655791, at *3.

Courts have not defined the exact number of putative class members that is required for class certification but have generally found that the numerosity requirement is satisfied when class members exceed forty. 6 Alba Conte & Herbert Newberg, *Newberg On Class Actions* § 18:4 (4th ed. 2002); *see also Oregon Laborers-Employers Health & Welfare Trust Fund v. Philip Morris, Inc.*, 188 F.R.D. 365, 372–73 (D. Ore. 1998). Geographic dispersal of plaintiffs may also support a finding that joinder is "impracticable." *Rubber Chemicals*, 232 F.R.D. at 350-51; *LCD*, 267 F.R.D. at 300 (given the nature of the LCD market, "common sense dictates that joinder would be impracticable.").

In this case, the transactional data produced so far indicates that the Settlement Class contains hundreds of members dispersed across the country who directly purchased CRT Products from the Settling Defendants and their co-conspirators from March 1, 1995 through November 25, 2007. Saveri Decl. ¶ 26. Thus, the proposed Settlement Class readily satisfies the numerosity requirement of Rule 23, as the Court has already ruled in its previous preliminary and final approval orders.

**2. This Case Involves Questions of Law and Fact Common to the Class**

The second requirement for class certification under Rule 23 is that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The Ninth Circuit has ruled that the commonality requirement is to be "construed permissively." *Hanlon*, 150 F.3d at 1019. A court must assess if "the class is united by a common interest in determining whether a defendant's course of conduct is in its broad outlines actionable." *Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975). This requirement, however, is easily met: it is satisfied by the existence of a single common issue. *In re Flat Glass Antitrust Litig.*, 191 F.R.D. 472, 478 (W.D. Pa. 1999).

The commonality requirement is readily satisfied here. "Courts consistently have held that

the very nature of a conspiracy antitrust action compels a finding that common questions of law and fact exist." *Rubber Chemicals*, 232 F.R.D. at 351 (quoting *In re Sugar Industry*, 1976 WL 1374 at *13) (internal quotations omitted). Here, there are numerous questions of law and fact common to the Settlement Class which are at the heart of this case. These common questions of law and fact include the seminal issue of whether the Defendants engaged in a price-fixing agreement which injured the class when they paid more for CRTs and/or CRT Finished Products than they would have, absent the alleged price-fixing conspiracy. The overarching and unifying common questions of law and fact predominate in this case and include:

(1) whether Settling Defendants and their Co-Conspirators conspired to raise, fix, stabilize or maintain the prices of CRTs;

(2) whether the alleged conspiracy violated Section 1 of the Sherman Act;

(3) the duration and extent of the conspiracy;

(4) whether Settling Defendants' conduct caused prices of CRTs and/or CRT Finished Products to be set at artificially high and non-competitive levels; and

(5) whether Settling Defendants' conduct injured Plaintiffs and other members of the Class and, if so, the appropriate class-wide measure of damages.

These issues constitute a common core of questions focusing on the central issue of the existence and effect of the alleged conspiracy and plainly satisfy the commonality requirement of Rule 23(a)(2), as the Court has already ruled in its previous preliminary approval orders. *See also Estate of Jim Garrison v. Warner Bros., Inc.*, 1996 WL 407849, at *2 (C.D. Cal. June 25, 2006) (Plaintiffs' allegations "which constitute the classic hallmark of antitrust class actions under Rule 23 . . . are more than sufficient to satisfy the commonality requirement"); *Flat Glass*, 191 F.R.D. at 479 ("[g]iven plaintiffs' allegation of a § 1 conspiracy, the existence, scope and efficacy of the alleged conspiracy are certainly questions that are common to all class members.") Similar common questions have been found to satisfy the commonality requirement in other antitrust class actions in the Northern District of California. *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, Case No. M 02-1486 PJH, 2006 U.S. Dist. LEXIS 39841, at *29 (N.D. Cal. June 5, 2006) ("the very nature of a conspiracy antitrust action compels a finding that common questions

of law and fact exist."); *Rubber Chemicals*, 232 F.R.D. at 351 (same); *LCD*, 267 F.R.D. at 300 (same).

**3. The Claims of the Representative Parties are Typical of the Claims of the Class**

The third requirement for maintaining a class action under Rule 23(a) is that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. "Generally, the class representatives 'must be part of the class and possess the same interest and suffer the same injury as the class members.'" *LCD*, 267 F.R.D. at 300 (citing *Falcon*, 457 U.S. at 156).

> The overarching scheme is the linchpin of plaintiffs' . . . complaint, regardless of the product purchased, the market involved or the price ultimately paid. Furthermore, the various products purchased and the different amount of damage sustained by individual plaintiffs do not negate a finding of typicality, provided the cause of those injuries arises from a common wrong.

*Flat Glass*, 191 F.R.D. at 480.

Courts have generally found the typicality requirement to be satisfied in horizontal price-fixing cases. As explained in *In re Chlorine & Caustic Soda Antitrust Litig.*:

> Plaintiffs seek to recover treble damages from defendants measured by the alleged overcharge resulting from defendants' conspiracy to fix prices. In order to prevail on the merits in this case the plaintiffs will have to prove the same major elements that the absent members of the class would have to prove. Those elements are a conspiracy, its effectuation and resulting damages. As such, the claims of the plaintiffs are not antagonistic to and are typical of the claims of the other putative class members.

116 F.R.D. 622, 626 (E.D. Pa. 1987); *see also Rubber Chemicals*, 232 F.R.D. at 351; *Citric Acid*, 1996 WL 655791, at *3 ("The alleged underlying course of conduct in this case is defendants' conspiracy to fix the price of citric acid and to allocate customers among themselves . . . . The legal theory that plaintiffs rely on is antitrust liability. Because plaintiffs and all class members share these claims and this theory, the representatives' claims are typical of all.").

Plaintiffs here allege a conspiracy to fix, raise, maintain and stabilize the price of CRTs and/or CRTs contained in CRT Finished Products sold in the United States. Settlement Class members' claims are based on the same legal theories. Plaintiffs would have to prove the same elements that absent members would have to prove: the existence, scope, and efficacy of the

conspiracy. Again, as the Court has already ruled in its previous preliminary and final approval orders, the typicality requirement of Rule 23(a)(3) is plainly satisfied.

**4. The Representative Plaintiffs Will Fairly and Adequately Protect the Interests of the Class**

The fourth requirement of Rule 23 mandates that the representative plaintiffs fairly and adequately represent the class. Fed. R. Civ. P. 23(a)(4). The adequacy requirement consists of two separate inquiries. First, the representative plaintiffs must not possess interests which are antagonistic to the interests of the class. Second, plaintiffs must be represented by counsel of sufficient diligence and competence to fully litigate the claim. *Hanlon*, 150 F.3d at 1020; *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978).

The representative plaintiffs here meet both aspects of the adequacy test. There are no actual or potential conflicts of interest between the representative plaintiffs and the members of the class. Plaintiffs, as well as each member of the class, were overcharged for CRTs and/or CRT Finished Products and have a mutual interest in establishing liability and recovering damages. The basis of the claims against Defendants is a price-fixing conspiracy that artificially raised the prices charged to every Class member, each of whom directly purchased CRTs and/or CRT Finished Products from one or more of the Defendants (or their subsidiaries or affiliates) during the Class Period. Defendants, therefore, allegedly injured Plaintiffs and the Settlement Class members in the same manner. Plaintiffs seek relief substantially identical to that sought by every other Settlement Class member. Accordingly, the interests of the representative plaintiffs and the putative class members in recovering the overcharges are the same.

Moreover, Plaintiffs have retained highly capable and well-recognized counsel with extensive experience in antitrust cases. Plaintiffs' counsel, Saveri & Saveri, Inc., was appointed by the Court as Interim Lead Counsel on May 9, 2010. It has undertaken the responsibilities assigned to it by the Court and has directed the efforts of other Plaintiffs' counsel in vigorously prosecuting this action. Plaintiffs' counsel has successfully prosecuted numerous antitrust class actions on behalf of injured purchasers throughout the United States. Plaintiffs' counsel is capable of, and committed to, prosecuting this action vigorously on behalf of the Class. Plaintiffs' counsel's

prosecution of this case, and, indeed, the Settlement, amply demonstrate their diligence and competence. Therefore, as the Court has already ruled in its previous preliminary and final approval orders, the named plaintiffs satisfy the requirements of Rule 23(a)(4).

**C. The Proposed Class Satisfies The Requirements Of Rule 23(b)(3)**

Once it is determined that the proposed class satisfies the requirements of Rule 23(a), a class must be certified under Rule 23(b)(3) if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." "Judicial economy and fairness are the focus of the predominance and superiority requirements." *Oregon Laborers-Employers*, 188 F.R.D. at 375. As the Court has already ruled in its previous preliminary approval orders, Plaintiffs' claims meet these requirements.

**1. Common Questions of Law and Fact Predominate Over Individual Questions**

As the United States Supreme Court has noted, predominance is a test that is "readily met" in antitrust cases. *Amchem Prods.*, 521 U.S. at 625; *see also In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 528 (3d Cir. 2004). The overwhelming weight of authority holds that in horizontal price-fixing cases, the predominance requirement is readily satisfied. *LCD*, 267 F.R.D. at 310 ("Courts have frequently found that whether a price-fixing conspiracy exists is a common question that predominates over other issues because proof of an alleged conspiracy will focus on defendants' conduct and not on the conduct of individual class members.")

In determining whether common questions predominate in a price fixing case, "the focus of this court should be principally on issues of liability." *In re Sugar Industry*, 1976 WL 1374, at *22; *Citric Acid*, 1996 WL 655791, at *6; *see also Local Joint Executive Board of Culinary/Bartender Trust Fund v. Las Vegas*, 244 F.3d 1152, 1163 (9th Cir. 2001); *Hanlon*, 150 F.3d at 1022 ("common nucleus of facts and potential legal remedies dominates this litigation").

Common questions need only predominate; they do not need to be dispositive of the litigation as a whole. *In re Lorazepam & Clorazeopate Antitrust Litig.*, 202 F.R.D. 12, 29 (D.D.C. 2001); *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 326, 339 (E.D. Mich. 2001); *In re Potash*

*Antitrust Litig.*, 159 F.R.D. 682, 693 (D. Minn. 1995). The predominance standard is met "unless it is clear that individual issues will overwhelm the common questions and render the class action valueless." *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 517 (S.D.N.Y. 1996).

In Section 1 Sherman Act class cases, the existence of a conspiracy has been recognized as the overriding issue common to all plaintiffs. As the court acknowledged in *Rubber Chemicals*: "the great weight of authority suggests that the dominant issues in cases like this are whether the charged conspiracy existed and whether price-fixing occurred." 232 F.R.D. at 353 (quoting *Citric Acid*, 2006 U.S. Dist. Lexis 16409, at *21); *see also In re Cement and Concrete Antitrust Litig.*, 1979 WL 1595, at *2 (D. Ariz. March 9, 1979) ("the asserted nationwide price fixing conspiracy presents questions of law and fact common to the class members which predominate over any questions affecting only individual members"); *In re Sugar Industry*, 1976 WL 1374, at *23 ("It is the allegedly unlawful horizontal price-fixing arrangement among defendants that, in its broad outlines, comprises the predominating, unifying common interest as to these purported plaintiff representatives and all potential class members"); *Mularkey v. Holsum Bakery, Inc.*, 120 F.R.D. 118, 122 (D. Ariz. 1988). Courts in this district and elsewhere have held that this issue alone is sufficient to satisfy the Rule 23(b)(3) predominance requirement. *See, e.g.*, *Rubber Chemicals*, 232 F.R.D. at 353; *Citric Acid*, 1996 WL 655791, at *8.

Furthermore, courts have uniformly found predominant common questions of law or fact with respect to the existence, scope, and effect of the alleged conspiracy. *See Citric Acid*, 1996 WL 655791, at *6 (common questions include whether there was a conspiracy, whether prices were fixed pursuant to the conspiracy, and whether the prices plaintiffs' paid were higher than they should have been); *Estate of Jim Garrison*, 1996 WL 407849, at *3 ("Antitrust price fixing conspiracy cases by their nature deal with common legal and factual questions of the existence, scope and effect of the alleged conspiracy." (citation omitted)); *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. at 518.

In the current litigation, common issues relating to the existence of the CRT conspiracy and Defendants' acts in furtherance of the conspiracy predominate over any questions arguably affecting only individual Settlement Class members because they are the central issue in the case

and proof is identical for every member of the Settlement Class. If separate actions were to be filed by each Settlement Class member in the instant case, each would have to establish the existence of the same conspiracy and would depend on identical evidence, and each would prove damages using identical "textbook" economic models. The evidence needed to prove how the Defendants implemented and enforced their conspiracy to set the prices of CRTs at supra-competitive levels will be common for all class members. These issues pose predominant common questions of law and fact.

Finally, as explained above, the Court need not concern itself with questions of the manageability of a trial because the Settlement disposes of the need for a trial with regard to Settling Defendants, along with any "thorny issues" that might arise. *See Amchem*, 521 U.S. at 620; *Carnegie*, 376 F. 3d at 660.

**2. A Class Action Is Superior to Other Available Methods for the Fair and Efficient Adjudication of this Case.**

Rule 23(b)(3) provides that certification of a case is appropriate if class treatment "is superior to other available methods for the fair and efficient adjudication of the controversy." It sets forth four factors to be considered: (1) the interest of members of the class in individually controlling the prosecution of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by members of the class; (3) the desirability of concentrating the litigation of the claims in a particular forum; and (4) the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3). Prosecuting this action as a class action is clearly superior to other methods of adjudicating this matter.

The alternative to a class action – many duplicative individual actions – would be inefficient and unfair. "Numerous individual actions would be expensive and time-consuming and would create the danger of conflicting decisions as to persons similarly situated." *Lerwill*, 582 F.2d at 512. Further, it would deprive many class members of any practical means of redress. Because prosecution of an antitrust conspiracy case against economically powerful defendants is difficult and expensive, class members with all but the largest claims would likely choose not to pursue their claims. *See Local Joint Executive Board of Culinary/Bartender Trust Fund*, 244 F.3d at

1163. Most class members would be effectively foreclosed from pursuing their claims absent class certification. *Hanlon*, 150 F.3d at 1023 ("many claims [that] could not be successfully asserted individually . . . would not only unnecessarily burden the judiciary, but would prove uneconomic for potential plaintiffs"). The proposed Settlement Class satisfies the requirements of Rule 23(b)(3).

### D. The Court Should Appoint the Plaintiffs' Interim Lead Counsel as Counsel for the Settlement Class.

Fed. R. Civ. P. 23(c)(1)(B) states that "[a]n order that certifies a class action . . . must appoint class counsel under Rule 23(g)." Rule 23(g)(1)(A) states that "[i]n appointing class counsel, the court (i) must consider: [1] the work counsel has done in identifying or investigating potential claims in the action; [2] counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; [3] counsel's knowledge of the applicable law; and [4] the resources counsel will commit to representing the class."

The law firm of Saveri & Saveri, Inc. seeks to be appointed as Counsel for the Settlement Class. The firm is willing and able to vigorously prosecute this action and to devote all necessary resources to obtain the best possible result. The work done to date supports the conclusion that they should be appointed as Settlement Class Counsel for purposes of the Settlement. *See, e.g.*, *Harrington v. City of Albuquerque*, 222 F.R.D. 505, 520 (D.N.M. 2004). The firm meets the criteria of Rule 23(g)(1)(C)(i). *Cf. Farley v. Baird, Patrick & Co., Inc.* 1992 WL 321632, at *5 (S.D.N.Y. 1992) ("[c]lass counsel's competency is presumed absent specific proof to the contrary by defendants").

## VI. PROPOSED PLAN OF NOTICE

Rule 23(e)(1) states that, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by" a proposed settlement, voluntary dismissal, or compromise.

Class members are entitled to the "best notice that is practicable under the circumstances" of any proposed settlement before it is finally approved by the Court. Fed. R. Civ. P. 23(c)(2)(B). The notice must state in plain, easily understood language:

- the nature of the action,

- the definition of the class certified,
- the class claims, issues, or defenses,
- that a class member may enter an appearance through an attorney if the member so desires,
- that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded, and
- the binding effect of a class judgment on class members under Rule 23(c)(3).

*Id.*

Notice to the class must be "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Amchem Prods*., 521 U.S. at 617. Plaintiff proposes that the Long Form Notice in the form attached as Exhibit 2 to the Saveri Decl. ("Notice") be given by mail or email to each Settlement Class Member who may, by reasonable efforts, be identified. Plaintiffs propose to use the electronic lists of class members with their mail and e-mail addresses that Defendants produced after the Preliminary Approval of the Chunghwa Picture Tubes and Philips' settlements.

In addition, Plaintiffs propose that a Summary Notice in the form attached as Exhibit 3 to the Saveri Decl. be published in the national edition of the *Wall Street Journal*, and that both notices, along with the settlement agreement, be posted on a website accessible to Settlement Class members. Publication notice is an acceptable method of providing notice where the identity of specific class members is not reasonably available. *See Tableware*, 484 F. Supp. 2d at 1080 (citing *Manual* § 21.311).

Such notice plans are commonly used in class actions like this one and constitute valid, due and sufficient notice to class members, and constitute the best notice practicable under the circumstances. *See Moore's Federal Practice* § 23.63[8][a], § 23.63[8][b] (3d ed. 2003).

The notice program is the same as the notice programs approved by the Court on May 3, 2012 with regard to the settlements with Chunghwa and Philips, on August 27, 2012 with regard to the Panasonic settlement, and on November 13, 2012 with regard to the LG settlement. Saveri Decl. ¶ 28.

The content of the proposed notices complies with the requirements of Rule 23(c)(2)(B). The form of notice is "adequate if it may be understood by the average class member." *Newberg* § 11.53. The Notice clearly and concisely explains the nature of the action and the terms of the Settlement. It provides a clear description of who is a member of the Settlement Class and the

binding effects of class membership. It explains how to exclude oneself from the Settlement Class, how to object to the Settlement, how to obtain copies of papers filed in the case and how to contact Class counsel. It explains that Plaintiffs are deferring their request for attorneys' fees but that any future request will not exceed one-third as stipulated in the Settlement. Saveri Decl., Ex. 1, ¶ 23.

The Summary Notice also identifies class members and explains the basic terms of the Settlement and the consequences of class membership. It also explains how to obtain more information about the Settlement. The Summary Notice will be published after the Notice is mailed and e-mailed to class members.

The notice program will consist of both mailed and published notice, as well as posting of the Notice on the Internet. This notice program will be similar to that employed by other direct purchaser antitrust cases, and fulfills all the requirements of Federal Rule of Civil Procedure 23 and due process. *See, e.g., Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1374–75 (9th Cir. 1993); *In re AOL Time Warner ERISA Litig.*, 2006 U.S. Dist. LEXIS 70474, at *30-31 (S.D.N.Y. Sept. 27, 2006). Accordingly, the Court should preliminarily approve both.

## VII. PROPOSED PLAN OF ALLOCATION

Plaintiffs propose that distribution of settlement funds be deferred until the termination of the case, when there might be additional settlement funds from other settling defendants to distribute, and because piecemeal distribution of each settlement would be expensive, time-consuming, and likely to cause confusion to class members. Deferring allocation of settlement funds is a common practice in cases where claims against other defendants remain. See *Manual* § 21.651. This is also the same procedure the Court approved in connection with the CPT, Philips, Panasonic, and LG settlements. Saveri Decl. ¶ 29.

Although Plaintiffs propose deferring the distribution of funds until a later date, Plaintiffs propose informing the class that any distribution will be made on a *pro rata* basis. A plan of allocation of class settlement funds is subject to the "fair, reasonable and adequate" standard that applies to approval of class settlements. *In re Citric Acid Antitrust Litig.*, 145 F. Supp. 2d 1152, 1154 (N.D. Cal. 2001). A plan of allocation that compensates class members based on the type and extent of their injuries is generally considered reasonable. Here the proposed distribution will be

on a *pro rata* basis, with no class member being favored over others. This type of distribution has frequently been determined to be fair, adequate, and reasonable. *See DRAM*, No. M-02-1486 PJH, Doc No. 2093, at 2 (Oct. 27, 2010) (Order Approving Pro Rata Distribution); *In re Vitamins Antitrust Litig.*, 2000 WL 1737867, at *6 (D.D.C. Mar. 31, 2000) ("Settlement distributions, such as this one, that apportions funds according to the relative amount of damages suffered by class members, have repeatedly been deemed fair and reasonable."); *In re Lloyds' Am. Trust Fund Litig.*, 2002 WL 31663577, at *19 (S.D.N.Y. Nov. 26, 2002) ("*pro rata* allocations provided in the Stipulation are not only reasonable and rational, but appear to be the fairest method of allocating the settlement benefits.").

Each Settlement Class member's *pro rata* share of the Settlement Fund is determined by computing each valid claimant's total CRT purchases divided by the total valid CRT purchases claimed. This percentage is multiplied against the Net Settlement Fund (total settlements minus all costs, attorneys' fees, and expenses) to determine each claimant's *pro rata* share of the Settlement Fund. To determine each class member's CRT purchases, CRT tubes (CPTs and CDTs) are calculated at full value while CRT televisions are valued at 50% and computer monitors are valued at 75%.

In summary, Settlement Class members will submit their purchase information for both CRT tubes and finished products – such as televisions and monitors containing CRTs. All class members will share in the settlement funds on a *pro rata* basis determined by the CRT value of the product they purchased -tubes 100%, monitors 75% and televisions 50%.

## VIII. THE COURT SHOULD SET A FINAL APPROVAL HEARING SCHEDULE

The last step in the settlement approval process is the final approval hearing, at which the Court may hear all evidence and argument necessary to evaluate the proposed settlements. At that hearing, proponents of the settlements may explain and describe their terms and conditions and offer argument in support of settlement approval. Members of the Settlement Class, or their counsel, may be heard in support of or in opposition to the Settlement. Plaintiffs propose the following schedule for final approval of the Settlement. If preliminary approval is granted, the proposed Settlement Class members will be notified of the terms of the Settlement and informed of

their rights in connection therewith, including their right to appear and be heard at the final approval hearing. The following is a proposed schedule:

| Date | Event |
|---|---|
| 14 Days[1] | Mailed notice sent to Settlement Class members and publication of website; |
| 18 Days | Summary notice published in (*Wall Street Journal*); |
| 59 Days | Deadlines re opting out of the Toshiba class, objecting to the Settlements; |
| 73 Days | Deadline for filing list of any opt-outs with Court; |
| 99 Days | Deadline for filing briefing in support of Settlement, and; |
| 120 Days | Hearing on final approval of Settlement. |

## IX. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully submit that the Court should enter an order granting the relief requested by this motion: (i) granting preliminary approval of the Settlement and the related plan of allocation; (ii) approving the manner and form of giving notice to Settlement Class members of the settlement and final approval proceedings, and (iii) establishing a timetable for issuing such notice, filing objections and briefs, and conducting a hearing on final approval of the Settlement.

Dated: February 15, 2013

Respectfully submitted,

/s/ *Guido Saveri*

Guido Saveri (22349)
R. Alexander Saveri (173102)
Geoffrey C. Rushing (126910)
Cadio Zirpoli (179108)
SAVERI & SAVERI, INC.
706 Sansome Street
San Francisco, CA 94111
Telephone: (415) 217-6810
Facsimile: (415) 217-6813

*Interim Lead Counsel for Direct Purchaser Plaintiffs*

[1] "___ Days" refers to the number of days after the Court enters the [Proposed] Order Granting Class Certification And Preliminary Approval Of Class Action Settlements With Toshiba.

Joseph W. Cotchett
Steven N. Williams
Adam J. Zapala
COTCHETT, PITRE & McCARTHY, LLP
840 Malcolm Road
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650_ 697-0577

Bruce L. Simon
Aaron M. Sheanin
PEARSON, SIMON, WARSHAW & PENNY LLP
44 Montgomery Street, Suite 2450
San Francisco, CA 94104
Telephone: (415) 433-9000
Facsimile: (415) 433-9008

H. Laddie Montague, Jr.
Ruthanne Gordon
Charles P. Goodwin
Candice Enders
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Telephone: (800) 424-6690
Facsimile: (215) 875-4604

Michael P. Lehmann
HAUSFELD LLP
44 Montgomery Street, Suite 3400
San Francisco, CA 94104
Telephone: (415) 633-1908
Facsimile: (415) 358-4980

Gary Specks
KAPLAN FOX
423 Sumac Road
Highland Park, IL 60035
Telephone: (847) 831-1585
Facsimile: (847) 831-1580

Douglas A. Millen
William H. London
FREED KANNER LONDON & MILLEN
2201 Waukegan Road
Suite 130
Bannockburn, IL 60015
Telephone: (224) 632-4500
Facsimile: (224) 632-4519

Eric B. Fastiff
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

W. Joseph Bruckner
Elizabeth R. Odette
LOCKRIDGE GRINDAL NAUEN P.L.L.P
100 Washington Avenue S
Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981

*Attorneys for Direct Purchaser Plaintiffs*

crt.