Guido Saveri (22349) guido@saveri.com
R. Alexander Saveri (173102) rick@saveri.com
Geoff Rushing (126910) grushing@saveri.com
Cadio Zirpoli (179108) cadio@saveri.com
SAVERI & SAVERI, INC.
706 Sansome Street
San Francisco, CA 94111
Telephone:  (415) 217-6810
Facsimile:  (415) 217-6813

Interim Lead Counsel for the Direct Purchaser Plaintiffs

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. CV- 07-5944-SC |
| | MDL No. 1917 |
| This Document Relates to: | **DECLARATION OF R. ALEXANDER SAVERI IN SUPPORT OF MOTION FOR CLASS CERTIFICATION AND PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT WITH THE TOSHIBA DEFENDANTS** |
| **ALL DIRECT PURCHASER ACTIONS** | |
| | Date: March 12, 2013 |
| | Time: 10:00 a.m. |
| | Judge: Honorable Charles A. Legge (Ret.) |
| | JAMS: Two Embarcadero Center, Suite 1500 |

I, R. Alexander Saveri, declare:

1.      I am a partner with Saveri & Saveri, Inc., Interim Lead Counsel for Direct Purchaser Plaintiffs in this litigation.  I am a member of the Bar of the State of California and an attorney admitted to practice in the Northern District of California. I make this Declaration in Support of Plaintiff's Motion for Preliminary Approval of Class Action Settlement with defendants Toshiba Corporation, Toshiba America Information Systems, Inc., Toshiba America Consumer Products, L.L.C., and Toshiba America Electronic Components, Inc. (collectively "Toshiba").  Except as otherwise stated, I have personal knowledge of the facts stated below.

2.      Attached hereto as Exhibit 1 is the Settlement Agreement with Toshiba. This is the fifth settlement plaintiffs have reached in this action.

3.      This multidistrict litigation arises from an alleged conspiracy to fix prices of Cathode Ray Tubes ("CRTs").  In November of 2007, the first direct purchaser plaintiff filed a class action complaint on behalf of itself and all others similarly situated alleging a violation of section one of the Sherman Act, 15 U.S.C. § 1, and section four of the Clayton Act, 15 U.S.C. § 15. Thereafter, additional actions were filed in other jurisdictions, and the Judicial Panel on Multidistrict Litigation transferred all related actions to this Court on February 15, 2008. (Judicial Panel on Multidistrict Litigation Transfer Order - Docket No. 122).  On May 9, 2008, Saveri & Saveri, Inc. was appointed Interim Lead Class Counsel for the nationwide class of direct purchasers. (Order Appointing Interim Lead Counsel - Docket No. 282).

4.      On March 16, 2009, the Direct Purchaser Plaintiffs filed their Consolidated Amended Complaint ("CAC") alleging an over-arching horizontal conspiracy among the Defendants and their co-conspirators to fix prices for CRTs and to allocate markets and customers for the sale of CRTs in the United States from March 1, 1995 through November 25, 2007 (the "Class Period").  The CAC alleges that Plaintiffs and members of the Class are direct purchasers of CRT Products (which include not only CRTs, but also finished products that contain CRTs, such as televisions and computer monitors ("CRT Finished Products")) from defendants and/or their subsidiaries and were injured because they paid more for CRT Products than they would have absent defendants' illegal conspiracy.  (CAC ¶¶ 213–221).  Plaintiffs seek, among other things,

1    treble damages pursuant to Sections 4 of the Clayton Act, 15 U.S.C. §§ 15 and 22.  (CAC, Prayer

2    for Relief ).

3        5.    Defendants filed several motions to dismiss the CAC on May 18, 2009. (See

4    Dockets No. 463-493).  On February 5, 2010 this court issued its rulings denying in part and

5    granting in part Defendant's motions to dismiss (Report, Recommendations and Tentative Rulings

6    regarding Defendants' Motions to Dismiss-Docket No. 597).   After a subsequent appeal by

7    defendants, Judge Conti on March 30, 2010 entered his order approving and adopting Judge

8    Legge's previous ruling and recommendations regarding Defendants' Motions to Dismiss. (Order

9    Approving and Adopting Special Master's Report, Recommendations and Tentative Rulings Re:

10   Defendants' Motions to Dismiss - Docket No. 665).  On April 29, 2010, the defendants answered

11   the CAC.

12       6.    Thereafter, in May 2010, certain Defendants propounded interrogatories requesting

13   Plaintiffs to identify what evidence they had about the existence of a conspiracy to fix the prices of

14   CRT Products at the time they filed their complaints.  Plaintiffs objected to these interrogatories as,

15   among other things, premature "contention" interrogatories.  Defendants moved to compel

16   answers.  On November 18, 2010, after a hearing, the Special Master ordered Plaintiffs' to answer

17   the interrogatories. (Report and Recommendations Regarding Discovery Motions - Docket No.

18   810).  On December 8, 2010, the court adopted the Special Master's Report and Recommendation.

19   (Order Adopting Special Master's Report, Recommendation, and Tentative Rulings Regarding

20   Discovery Motions - Docket No. 826). On January 31, 2011 Plaintiffs answered Defendants'

21   interrogatories.

22       7.    On March 21, 2011, Defendants moved for sanctions pursuant to Federal Rules of

23   Civil Procedure, Rule 11 on the grounds that the allegations of a finished product conspiracy were

24   without foundation and should be stricken from the complaint. (Defendants' Motion for Sanctions

25   Pursuant to Rule 11 - Docket No. 880).  On June 15, 2011, after hearing, the Special Master

26   recommended that Defendants' motion be granted and that Plaintiffs' allegations of a finished

27   products conspiracy be stricken from the complaint. (Special Master Report and Recommendations

28   on Motions Regarding Finished Products - Docket No. 947).  The Special Master also

recommended that "the issue of the possible impact or effect of the alleged fixing of prices of CRTs on the prices of Finished Products shall remain in the case, and is a proper subject of discovery." *Id.* at p. 14.

8.    On June 29, 2011 Defendants moved the Court to adopt the Special Master's Report and Recommendation. (Motion to Adopt Special Master's Report and Recommendation Regarding Finished Products - Docket No. 953). Plaintiffs' filed an objection to Special Master's Report and Recommendation. (Direct Purchaser Plaintiffs' Objection to Report and Recommendation on Motions Regarding Finished Products - Docket No. 957).   The Court set the matter for hearing on September 2, 2011. (Docket No. 968).

9.    On August 26, 2011, the parties entered into a stipulation which provided, among other things: 1) that the Special Master's recommended finding that Plaintiffs violated Rule 11 be vacated; 2) that certain other aspects of the Special Master's recommendations be adopted; and 3) that Plaintiffs' "allegations of the Direct CAC purporting to allege a conspiracy encompassing Finished Products are Stricken from the Direct CAC, provided, however, that the issue of the possible impact or effect of the alleged fixing of prices of CRTs on the prices of Finished Products shall remain in the case."  In addition, Plaintiffs agreed to withdraw "all discovery requests regarding or relating to information in support of the CRT Finished Product Conspiracy claims," and that "the issue of the purported impact or effect of the alleged fixing of prices of the CRTs on the prices of the Finished Products shall remain in the case and is a proper subject of discovery." (Stipulation and Order Concerning Pending Motions Re: Finished Products - Docket No. 996).

10.    On December 12, 2011, Defendants filed a joint motion for Summary Judgment against Direct Purchasers Plaintiffs who purchased CRT Finished Products. (Docket No. 1013). On February 24, 2012, Plaintiffs filed their Memorandum of Points and Authorities In Opposition to Defendants' Motion For Partial Summary Judgment and supporting Declaration of R. Alexander Saveri under seal. (Docket No. 1057). That same day, the Direct Action Plaintiffs also filed an opposition to Defendants' motion. On March 9, 2012, Defendants filed their Reply In Support of Motion For Summary Judgment (Docket No. 1083) and on March 20, 2012, the Court heard argument from all parties.  Thereafter, on May 31, 2012, the Special Master issued his Report and

Recommendation regarding Defendants' Joint Motion For Summary Judgment recommending that the Court grant Defendants' motion for summary judgment and that judgment be entered against certain plaintiffs that directly purchased CRT Finished Products ("R&R"). (Docket No. 1221).

11.    On June 12, 2012, the Direct Purchaser Plaintiffs, the Direct Action Plaintiffs, and the Defendants submitted a Stipulation notifying the Court, *inter alia*, that Plaintiffs intended to object to the R&R. (Docket No. 1228).  On June 26, 2012, the Court issued an order establishing a briefing schedule requiring all parties to file their briefs by July 26, 2012 and setting a hearing for August 10, 2012.  (Docket No. 1240).  On June 28, 2012, the Court vacated the hearing. (Docket No. 1243).  The parties filed their briefs as ordered.

12.    On November 29, 2012, the Court entered the Order Granting in Part and Denying in Part Defendants' Joint Motion for Summary Judgment ("Order") (Docket No. 1470).  The Court found that the Direct Purchaser Plaintiffs that purchased a Finished Product, were "in fact indirect purchasers for purposes of antitrust standing."  Order at p. 6.  The Court further found that one of the three exceptions that permit indirect purchasers to pursue private treble-damages claims, outlined by the Ninth Circuit Court of Appeals in *In re ATM Fee Antitrust Litig.*, 686 F.3d 741 (9th Cir. 2012), did apply to the Direct Purchaser Plaintiffs.  The Court ruled that the "Ownership and Control Exception" created in *Royal Printing Co. v. Kimberly-Clark Corp.*, 621 F.2d 323 (9th Cir. 1980), conferred standing on Direct Purchaser Plaintiffs to sue "insofar as they purchased [Finished Products] incorporating the allegedly price-fixed CRTs from an entity owned or controlled by any allegedly conspiring defendant."  Order at p. 16.  On December 19, 2012, certain defendants filed a motion under 28 U.S.C. section 1292(b) requesting that the Court certify the Court's November 29, 2012 Order for interlocutory appeal.  (Docket No. 1499).

13.    In September of 2008, the first of several stays prohibiting Plaintiffs from obtaining merits discovery was entered by this Court. (Stipulation and Order for Limited Discovery-September 12, 2008 - Docket No.379; Stipulation and Order to Extend Limited Discovery Stay-February 5, 2009 - Docket No. 425; June 8, 2009 Legge Order Further Extending the February 5, 2009 – Docket No. 509; January 5, 2010 Stipulation and Order to Extend Limited Discovery Stay - Docket No. 590). On June 4, 2008, Plaintiffs' propounded their First Set of Limited Document

Requests. Thereafter, on March 12, 2010, after the partial stay of discovery was lifted, Plaintiffs propounded their Second Set of Document Requests and First Set of Interrogatories. After extensive meet and confers and several motions to compel, the court issued its Report Regarding Case Management Conference No. 4 on October 27, 2011 in which it set the middle of December, 2011 as the deadline for the completion of substantial discovery by all parties. (Docket Nos. 1007 & 1008). Plaintiffs have now received over 5 million pages of documents produced by Defendants.

14.    On March 19, 2012, the Special Master issued the Scheduling Order and Order Re Discovery and Case Management Protocol. (Docket Nos. 1093, 1094). The Court entered both Orders on April 3, 2012. (Docket Nos. 1127, 1128). The Scheduling Order set August 30, 2013 as the date for completion of all fact and expert discovery. Beginning in June of 2012, after meeting and conferring with defendants regarding the scope and topics of 30(b)(6) witnesses, Plaintiffs began taking 30(b)(6) depositions of the various defendants. To date, in coordination with the indirect purchasers, the Attorneys General, and the opt-out plaintiffs, Plaintiffs have deposed approximately twenty-five corporate representatives. Beginning in December of 2012, Plaintiffs began taking fact depositions.

15.    On October 19, 2012, the Court granted final approval of the first two settlements reached in this case with: (1) Chunghwa Picture Tubes, Ltd. and Chunghwa Picture Tubes (Malaysia) Sdn. Bhd. ("CPT"), and (2) Koninklijke Philips Electronics N.V., Philips Electronics North America Corporation, Philips Electronics Industries (Taiwan), Ltd., and Philips Da Amazonia Industria Electronica Ltda. ("Philips"). The Court certified a Settlement Class for the CPT and Philips settlements, appointed Plaintiffs' Interim Lead Counsel as Settlement Class Counsel, and found that the manner and form of providing notice of the settlements to class members was the best notice practicable under the circumstances (Docket No. 1412). The Court entered final judgment of dismissal with respect to CPT and Philips (Docket Nos. 1413, 1414).

16.    On August 27, 2012, the Court preliminarily approved the third settlement reached in this case with Panasonic Corporation (f/k/a Matsushita Electric Industrial Co., Ltd.), Panasonic Corporation of North America, and MT Picture Display Co., Ltd., ("Panasonic"). The Court

1    certified a Settlement Class for the Settlement, appointed Plaintiffs' Interim Lead Counsel as

2    Settlement Class Counsel, approved the manner and form of providing notice of the settlement to

3    class members, established a timetable for publishing class notice and set a hearing for final

4    approval.  (Docket No. 1333).  On December 27, 2012 the Court granted final approval and entered

5    final judgments of dismissal with respect to Panasonic and BMCC (Docket Nos. 1486, 1487,

6    1488).

7            17.     On November 13, 2012, the Court preliminarily approved the fourth settlement

8    reach in this case with defendants LG Electronics, Inc., LG Electronics USA, Inc., and LG

9    Electronics Taiwan Taipei Co., Ltd. ("LG").  As with the CPT, Philips and Panasonic settlements,

10   the Court certified a Settlement Class, appointed Plaintiffs' Interim Lead Counsel as Settlement

11   Class Counsel, approved the manner and form of providing notice to class members, established a

12   timetable for publishing class notice and set a hearing for final approval on March 15, 2012.

13   (Docket No. 1441).

14           18.     The Toshiba Settlement is the fifth settlement reached in this action.

15           19.     CRTs are defined to mean Cathode Ray Tubes of any type (e.g. color display tubes,

16   color picture tubes and monochrome display tubes).  CRT Finished Products are those products

17   that when finished contain Cathode Ray Tubes – such as televisions and computer monitors.  CRT

18   Products means CRTs and/or CRT Finished Products.

19           20.     The Settlement resolves all federal claims related to CRT Products (i.e., CRTs and

20   CRT Finished Products) brought by Plaintiffs against LG and related entities that are defined in the

21   Settlement Agreement to be "Toshiba Releasees."

22           21.     Mr. R. Alexander Saveri participated in the settlement negotiations with Toshiba.

23   The settlement was a reached as a result of a mediation before Eric Green. The parties exchanged

24   mediation briefs and attended a one-day mediation on October 3, 2012.  While no settlement was

25   reached at the mediation, the parties continued their discussions with the assistance of Mr. Green

26   and reached an agreement in principle on several material terms on or about November 15, 2012.

27   The negotiations were thorough and hard fought.  They were contested and conducted at arms-

28   length in the utmost good faith.

22.     In exchange for dismissal with prejudice and a release of all claims asserted in the CAC, Toshiba has agreed to pay $13,500,000 in cash to settle all direct purchaser claims against it. The funds are to be deposited into a guaranteed escrow account within 30 days of execution of the Settlement Agreement.

23.     Toshiba's sales remain in the case for the purpose of computing Plaintiffs' claims against the remaining non-settling Defendants.

24.     Toshiba has agreed to cooperate with Plaintiffs in the prosecution of this action by: 1) providing copies of all discovery (including among other things, all documents, interrogatories, requests for admission, etc.) Toshiba produces to any other party in the Action; 2) providing a declaration and/or custodian establishing the authenticity of Toshiba's transactional data, and foundation of any Toshiba document or data needed at summary judgment or trial; 3) allowing Counsel to question percipient witnesses noticed for deposition by any other party in the Action with whom Toshiba has not settled; and 4) using its best efforts to make available two persons for trial testimony, each of whom is, at the time of trial, a director, officer, and/or employee of Toshiba whom Lead Counsel reasonably believes to have knowledge regarding Plaintiffs' claims. (Settlement Agreement ¶ 24).

25.     It is my opinion that the Settlement is, in every aspect, fair, adequate and reasonable and in the best interest of the class members.  My opinion is based, among other things, on my participation in virtually every aspect of this case, my review of all of the important evidence obtained to date and my experience in many other class action antitrust cases.

26.     The transactional data produced so far indicates that the Settlement Class contains hundreds of members dispersed across the country who directly purchased CRT Products from the Settling Defendants and their co-conspirators from March 1, 1995 through November 25, 2007.

27.     As with the previous settlements, Plaintiffs' counsel will not seek an award of attorneys' fees at this time.  Plaintiffs' counsel will seek an award of fees in the future after the completion of other settlement(s) or at some other later date.

28.     The notice program is the same as the one approved by the Court on May 3, 2012 in connection with the Chunghwa and Philips settlements, on August 27, 2012 in connection with the

Panasonic settlement, and on November 13, 2012 in connection with the LG Settlement — namely direct notice to class members whose addresses can be reasonably obtained along with publication once in the national edition of the *Wall Street Journal*, together with appropriate listings on the Internet. This notice program is similar to that employed in the direct purchaser *DRAM*, *SRAM* and *LCD* class actions.

        29.    The plan of allocation is the same procedure as approved by the Court on May 3, 2012 in connection with the CPT and Philips settlements, on August 27, 2012 in connection with the Panasonic settlement, and on November 13, 2012 in connection with LG Settlement – namely 1) deferring the distribution of settlement proceeds until a later date and 2) informing the class of the methodology of the *pro rata* distribution.

        30.    Attached hereto as Exhibit 2 is a copy of the proposed Long Form of Notice.

        31.    Attached hereto as Exhibit 3 is a copy of the proposed Summary Notice.

    I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

    Executed the 15th day of February, 2013, in San Francisco, California.

                            */s/ R. Alexander Saveri*
                            R. Alexander Saveri

# EXHIBIT 1

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE:  CATHODE RAY TUBE (CRT) ) <br> ANTITRUST LITIGATION                    ) <br>                                                      ) <br>                                                      ) <br> THIS DOCUMENT RELATES TO:      ) <br> ALL DIRECT-PURCHASER ACTIONS ) | **Master File No. CV-07-5944 SC** <br><br> **MDL No. 1917** |

<u>SETTLEMENT AGREEMENT</u>

This Settlement Agreement ("Agreement") is made and entered into this 6ᵗʰ day of February, 2013 by and between Toshiba Corporation, Toshiba America Information Systems, Inc., Toshiba America Consumer Products, L.L.C., and Toshiba America Electronic Components, Inc. (collectively "Toshiba") and the direct-purchaser plaintiff class representatives ("Plaintiffs"), both individually and on behalf of a settlement class of direct purchasers of Cathode Ray Tube (CRT) Products ("the Class") as more particularly defined in Paragraph 1 below.

WHEREAS, Plaintiffs are prosecuting the above *In Re Cathode Ray Tube (CRT) Antitrust Litigation*, MDL No. 1917 (N.D. Cal.) (the "Action") on their own behalf and on behalf of the Class against, among others, Toshiba;

WHEREAS, Plaintiffs allege that Toshiba participated in an unlawful conspiracy to raise, fix, maintain, or stabilize the price of CRT Products at artificially high levels in violation of Section 1 of the Sherman Act;

WHEREAS, Toshiba denies Plaintiffs' allegations and has asserted defenses to Plaintiffs' claims;

WHEREAS, Plaintiffs have conducted an investigation into the facts and the law regarding the Action and have concluded that resolving claims against Toshiba according to the terms set forth below is in the best interest of Plaintiffs and the Class;

WHEREAS, Toshiba, despite its belief that it is not liable for the claims asserted and has good defenses thereto, has nevertheless agreed to enter into this Agreement to avoid further expense, inconvenience, and the distraction of burdensome and protracted litigation, and to obtain the releases, orders, and judgment contemplated by this Agreement, and to put to rest with finality all claims that have been or could have been asserted against Toshiba, based on the allegations of the Action, as more particularly set out below;

NOW, THEREFORE, in consideration of the covenants, agreements, and releases set forth herein and for other good and valuable consideration, it is agreed by and among the undersigned that the Action be settled, compromised, and dismissed on the merits with prejudice as to the Toshiba Releasees, as defined below, and except as hereinafter provided, without costs as to Plaintiffs, the Class, or Toshiba, subject to the approval of the Court, on the following terms and conditions:

A.    Definitions.

1.    For purposes of this Agreement, "the Class" and "Class Period" are defined in Plaintiffs' Consolidated Amended Complaint or, if that complaint is amended, the operative complaint at the time this Agreement is presented for preliminary approval.  The parties to this Agreement hereby stipulate for purposes of this settlement only that the requirements of Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure are satisfied.

2.    For purposes of this Agreement, "CRT Products" shall have the meaning as defined in the Consolidated Amended Complaint or, if that complaint is amended, the operative complaint at the time this Agreement is presented for preliminary approval.

3.    "Toshiba Releasees" shall refer to the entities that are referred to collectively as "Toshiba" in paragraph 78 of the Consolidated Amended Complaint, and to all of their respective past and present, direct and indirect, parents, subsidiaries, and affiliates, and all of their respective past and present, direct and indirect, parents,

2

subsidiaries, affiliates, unincorporated entities, divisions, and groups; the predecessors, successors and assigns of any of the above; and each and all of the present and former principals, partners, officers, directors, supervisors, employees, agents, representatives, insurers, attorneys, heirs, executors, administrators, and assigns of each of the foregoing. "Toshiba Releasees" does not include any defendant in the Action other than those entities defined in the Consolidated Amended Complaint as "Toshiba."

        4.    "Class Member" means each member of the Class who has not timely elected to be excluded from the Class.

        5.    "Releasors" shall refer to the direct-purchaser plaintiff Class representatives and the direct-purchaser plaintiff Class Members, and to their past and present officers, directors, employees, agents, stockholders, attorneys, servants, representatives, parents, subsidiaries, affiliates, partners, insurers and all other persons, partnerships or corporations with whom any of the former have been, or are now, affiliated, and the predecessors, successors, heirs, executives, administrators and assigns of any of the foregoing, as well as to anyone claiming by, for, or through the Releasors.

        6.    "The Settlement Fund" shall be $13,500,000 specified in Paragraph16 plus accrued interest on said deposits set forth in Paragraph 17.

        7.    "Lead Counsel" shall refer to the law firm of:

        Guido Saveri
        R. Alexander Saveri
        Saveri & Saveri, Inc.
        706 Sansome Street
        San Francisco, CA 94111

**B.**    <u>Approval of this Agreement and Dismissal of Claims Against Toshiba.</u>

        8.    Plaintiffs and Toshiba shall use their best efforts to effectuate this Agreement, including cooperating in seeking the Court's approval for the establishment of procedures (including the giving of class notice under Federal Rules of Civil Procedure 23(c) and (e)) to secure the prompt, complete, and final dismissal with prejudice of the Action as to the Toshiba Releasees only.

9.     Plaintiffs shall submit to the Court a motion for authorization to disseminate notice of the settlement and final judgment contemplated by this Agreement to all Class members identified by the parties (the "Motion"). If notice to the Class is given jointly with any other settling defendant, for purposes of Paragraph 19 below, the costs of notice and claims administration shall be prorated with any other such defendant based on their respective settlement amounts. The Motion shall include (i) a proposed form of, method for, and date of dissemination of notice; and (ii) a proposed form of order. The text of the foregoing items (i) and (ii) shall be agreed upon by Plaintiffs and Toshiba before submission of the Motion, with the understanding that, among other things, individual notice of the settlement shall be mailed by regular mail or email, with appropriate notice by publication, with all expenses paid from the Settlement Fund subject to Paragraph 19(a). The Motion shall recite and ask the Court to find that the mailing of the notice of settlement to all members of the Class who can be identified upon reasonable effort constitutes valid, due and sufficient notice to the Class, constitutes the best notice practicable under the circumstances, and complies fully with the requirements of Federal Rule of Civil Procedure 23.

10.    Plaintiffs shall seek, and Toshiba will not object unreasonably to the entry of, an order and final judgment, the text of which Plaintiffs and Toshiba shall agree upon. The terms of that order and final judgment will include, at a minimum, the substance of the following provisions:

    a.     certifying the Class described in Paragraph 1, pursuant to Rule 23 of the Federal Rules of Civil Procedure, solely for purposes of this settlement as a settlement class;

    b.     as to the Action, approving finally this settlement and its terms as being a fair, reasonable and adequate settlement as to the Class Members within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation according to its terms;

c.     as to the Toshiba Releasees, directing that the Action be dismissed with prejudice and, except as provided for in this Agreement, without costs;

d.     reserving exclusive jurisdiction over the settlement and this Agreement, including the administration and consummation of this settlement, to the United States District Court for the Northern District of California; and

e.     determining under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directing that the judgment of dismissal as to the Toshiba Releasees shall be final.

11.     This Agreement shall become final when (i) the Court has entered a final order certifying the Class described in Paragraph 1 and approving this Agreement under Federal Rule of Civil Procedure 23(e) and a final judgment dismissing the Action with prejudice as to Toshiba Releasees against all Class Members and without costs other than those provided for in this Agreement, and (ii) the time for appeal or to seek permission to appeal from the Court's approval of this Agreement and entry of a final judgment as to Toshiba Releasees described in (i) hereof has expired or, if appealed, approval of this Agreement and the final judgment as to Toshiba Releasees have been affirmed in their entirety by the Court of last resort to which such appeal has been taken and such affirmance has become no longer subject to further appeal or review. It is agreed that the provisions of Rule 60 of the Federal Rules of Civil Procedure shall not be taken into account in determining the above-stated times. On the date that Plaintiffs and Toshiba have executed this Agreement, Plaintiffs and Toshiba shall be bound by its terms and this Agreement shall not be rescinded except in accordance with Paragraphs 17(h), 18(a), 28, or 29 of this Agreement.

12.     Neither this Agreement (whether or not it should become final) nor the final judgment, nor any and all negotiations, documents and discussions associated with them, shall be deemed or construed to be an admission by Toshiba (or the Toshiba

5

Releasees) or evidence of any violation of any statute or law or of any liability or wrong doing whatsoever by Toshiba (or the Toshiba Releasees), or of the truth of any of the claims or allegations contained in any complaint or any other pleading filed in the Action, and evidence thereof shall not be discoverable or used directly or indirectly, in any way, whether in the Action or in any other action or proceeding.  Neither this Agreement, nor any of its terms and provisions, nor any of the negotiations or proceedings connected with it, nor any other action taken to carry out this Agreement by any of the settling parties shall be referred to, offered as evidence or received in evidence in any pending or future civil, criminal, or administrative action or proceedings, except in a proceeding to enforce this Agreement, or to defend against the assertion of Released Claims, or as otherwise required by law.

C.      Release, Discharge, and Covenant Not to Sue.

13.      In addition to the effect of any final judgment entered in accordance with this Agreement, upon this Agreement becoming final as set out in Paragraph 11 of this Agreement, and in consideration of payment of the Settlement Amount, as specified in Paragraph 16 of this Agreement, into the Settlement Fund, and for other valuable consideration, the Toshiba Releasees shall be completely released, acquitted, and forever discharged from any and all claims, demands, judgments, actions, suits, causes of action, whether class, individual, or otherwise in nature (whether or not any Class Member has objected to the settlement or makes a claim upon or participates in the Settlement Fund, whether directly, representatively, derivatively or in any other capacity) that Releasors, or each of them, ever had, now has, or hereafter can, shall, or may have on account of, or in any way arising out of, any and all known and unknown, foreseen and unforeseen, suspected or unsuspected, actual or contingent, liquidated or unliquidated claims, injuries, damages, and the consequences thereof in any way arising out of or relating in any way to any act or omission of the Toshiba Releasees (or any of them) concerning the CRT Products that are the subject of the Plaintiffs' Consolidated Amended Complaint up to the date of execution of this Agreement, including but not

limited to any conduct alleged, and causes of action asserted or that could have been alleged or asserted, in any class action complaints filed in the Action, other than claims for product defect or personal injury or breach of contract arising in the ordinary course of business or indirect purchaser claims for CRT Products that were not purchased directly from Defendants or their alleged co-conspirators (the "Released Claims"). However, the Released Claims shall not preclude Plaintiffs from pursuing any and all claims against other defendants for the sale of CRT Products by those defendants, or their co-conspirators, which contain Toshiba's CRT Products.  Releasors shall not, after the date of this Agreement, seek to establish liability against any Toshiba Releasee based, in whole or in part, upon any of the Released Claims or conduct at issue in the Released Claims.  For purposes of clarity, the Released Claims shall include any claims under foreign antitrust or competition laws or state antitrust or competition laws (including indirect purchaser claims) that relate to or arise out of the sale of any of the CRT Products that are the subject of the Plaintiffs' Consolidated Amended Complaint, but do not include any foreign antitrust or competition law claims or any state law indirect purchaser claims that relate to or arise out of the sale of CRT Products that:  (a) were not purchased from a Defendant or alleged co-conspirator in the Action; or (b) were not sold in the United States as either a CRT Product or as a component included within a CRT Product.

14.     In addition to the provisions of Paragraph 13 of this Agreement, Releasors hereby expressly waive and release, upon this Agreement becoming final, any and all provisions, rights, and benefits conferred by §1542 of the California Civil Code, which states:

> CERTAIN CLAIMS NOT AFFECTED BY GENERAL RELEASE. A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR;

7

or by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to § 1542 of the California Civil Code. Each Releasor may hereafter discover facts other than or different from those which he, she, or it knows or believes to be true with respect to the claims which are the subject matter of the provisions of Paragraph 13 of this Agreement, but each Releasor hereby expressly waives and fully, finally, and forever settles and releases, upon this Agreement becoming final, any known or unknown, suspected or unsuspected, contingent or non-contingent claim with respect to the subject matter of the provisions of Paragraph 13 of this Agreement, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.

15.     The release, discharge, and covenant not to sue set forth in Paragraph 13 of this Agreement does not include claims by any of the Class Members other than the Released Claims and does not preclude Class Members from pursuing claims based on indirect sales or foreign sales of CRT Products so long as such claims are not based on the purchase of the same CRT Products included as part of the Released Claims defined in Paragraph 13. The Releasors hereby covenant and agree that they shall not, hereafter, sue or otherwise seek to establish liability against any of the Toshiba Releasees based, in whole or in part, upon any of the Released Claims.

D.     Settlement Amount.

16.     Subject to the provisions hereof, and in full, complete and final settlement of the Action as provided herein, Toshiba shall pay the Settlement Amount of $13,500,000 in United States Dollars (the "Settlement Amount"). The Settlement Amount shall be paid into an escrow account in United States Dollars to be administered in accordance with the provisions of Paragraph 17 of this Agreement (the "Escrow Account") thirty (30) days after execution of this Agreement.

17.     Escrow Account.

(a)     The Escrow Account will be established at Citibank, N.A. – Citi Private Bank, San Francisco, California, with such Bank serving as escrow agent ("Escrow

Agent") subject to escrow instructions mutually acceptable to Lead Counsel and Toshiba, such escrow to be administered under the Court's continuing supervision and control.

(b)     The Escrow Agent shall cause the funds deposited in the Escrow Account to be invested in short-term instruments backed by the full faith and credit of the United States Government or fully insured in writing by the United States Government, or money market funds rated Aaa and AAA, respectively by Moody's Investor Services and Standard and Poor's, invested substantially in such instruments, and shall reinvest any income from these instruments and the proceeds of these instruments as they mature in similar instruments at their then current market rates.

(c)     All funds held in the Escrow Account shall be deemed and considered to be in custodia legis of the Court, and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed pursuant to this Agreement and/or further order(s) of the Court.

(d)     Plaintiffs and Toshiba agree to treat the Settlement Fund as being at all times a qualified settlement fund within the meaning of Treas. Reg. §1.468B-1.  In addition, the Escrow Agent and/or claims administrator shall timely make such elections as necessary or advisable to carry out the provisions of this Paragraph 17, including the relation-back election (as defined in Treas. Reg. §1.468B-1) back to the earliest permitted date.  Such elections shall be made incompliance with the procedures and requirements contained in such regulations.  It shall be the responsibility of the Escrow Agent and/or claims administrator to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

(e)     For the purpose of § 468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated there under, the administrator shall be the Escrow Agent and/or claims administrator.  The Escrow Agent and/or claims administrator shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including without limitation the returns described in Treas. Reg. § 1.468B-2(k)(l)).  Such returns (as well as the

9

election described in Paragraph 17(d)) shall be consistent with Paragraph 17(d) and in all events shall reflect that all Taxes, as defined below (including any estimated Taxes, interest or penalties), on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided in Paragraph 17(f) hereof.

(f)     All (i) taxes (including any estimated taxes, interest or penalties) arising with respect to the income earned by the Settlement Fund, including any taxes or tax detriments that may be imposed upon Toshiba or any other Toshiba Releasee with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a qualified settlement fund for federal or state income tax purposes ("Taxes"); and (ii) expenses and costs incurred in connection with the operation and implementation of Paragraphs 17(d) through 17(f) (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in this Paragraph 17(f) ("Tax Expenses")), shall be paid out of the Settlement Fund.

(g)     Neither Toshiba nor any other Toshiba Releasee nor their respective counsel shall have any liability or responsibility for the Taxes or the Tax Expenses. Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement Fund and shall be timely paid by the Escrow Agent and/or the claims administrator out of the Settlement Fund without prior order from the Court and the Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to any claimants authorized by the Court any funds necessary to pay such amounts including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treas. Reg. § 1.468B-2(1)(2)). Neither Toshiba nor any other Toshiba Releasee is responsible nor shall they have any liability therefor.  Plaintiffs and Toshiba agree to cooperate with the Escrow Agent, the claims administrator, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of Paragraphs 17(d) through 17(f).

(h)     If this Agreement does not receive final Court approval, including final approval of "the Class" as defined in Plaintiffs' Consolidated Amended Complaint or, if that complaint is amended, the operative complaint at the time this Agreement is presented for preliminary approval, or if the Action is not certified as a class action for settlement purposes, then all amounts paid by Toshiba into the Settlement Fund (other than costs expended in accordance with Paragraph19(a)) shall be returned to Toshiba from the Escrow Account by the Escrow Agent along with any interest accrued thereon within thirty (30) calendar days.

18.     Exclusions.

(a)     Within ten (10) business days after the end of the period to request exclusion from the Class, Lead Counsel will cause copies of timely requests for exclusion from the Class to be provided to counsel for Toshiba.  To the extent that Toshiba determines in good faith that its sales of CRT Products during the Class Period to the potential members of the Class (or any of them) who have requested exclusion from the Class represent an amount of sales equal to or greater than 80% of Toshiba's sales of CRT Products in the United States during the Class Period, Toshiba may terminate the Agreement within thirty (30) days of receipt of the list of exclusions.

(b)     If Toshiba terminates this Agreement pursuant to Paragraph 18(a), then all amounts paid by Toshiba into the Settlement Fund (other than notice costs expended in accordance with Paragraph 19(a)) shall be returned to Toshiba from the Escrow Account by the Escrow Agent along with any interest accrued thereon within thirty (30) calendar days.

(c)     With respect to any potential Class member who requests exclusion from the Class, Toshiba reserves all of its legal rights and defenses, including, but not limited to, any defenses relating to whether the excluded Class member is a direct purchaser of any allegedly price-fixed product and/or has standing to bring any claim.

19.     Payment of Expenses.

(a)     Toshiba agrees to permit use of a maximum of $300,000 of the Settlement Fund towards notice to the class and the costs of administration of the Settlement Fund

11

set forth in Paragraph 17.  The $300,000 in notice and administration expenses are not recoverable if this settlement does not become final to the extent such funds are expended for notice and administration costs.  Other than as set forth in this Paragraph 19(a), neither Toshiba nor any of the other Toshiba Releasees under this Agreement shall be liable for any of the costs or expenses of the litigation of the Action, including attorneys' fees; fees and expenses of expert witnesses and consultants; and costs and expenses associated with discovery, motion practice, hearings before the Court or any Special Master, appeals, trials or the negotiation of other settlements, or for Class administration and costs.

(b)      If Lead Counsel enters into any other settlements on behalf of the Class before notice of this Agreement is given to the Class, Lead Counsel shall use its reasonable best efforts to provide a single notice to prospective Class members of all of the settlements.

E.      The Settlement Fund.

20.      Releasors shall look solely to the Settlement Fund for settlement and satisfaction against the Toshiba Releasees of all Released Claims, and shall have no other recovery against Toshiba or any other Toshiba Releasee.

21.      After this Agreement becomes final within the meaning of Paragraph 11, the Settlement Fund shall be distributed in accordance with a plan to be submitted at the appropriate time by Plaintiffs, subject to approval by the Court.  In no event shall any Toshiba Releasee have any responsibility, financial obligation, or liability whatsoever with respect to the investment, distribution, or administration of the Settlement Fund, including, but not limited to, the costs and expenses of such distribution and administration, with the sole exception of the provisions set forth in Paragraph 19(a) of this Agreement.

22.      Plaintiffs and Class Counsel shall be reimbursed and indemnified solely out of the Settlement Fund for all expenses.  The Toshiba Releasees shall not be liable for any costs, fees, or expenses of any of Plaintiffs' or the Class' respective

attorneys, experts, advisors, agents, or representatives, but all such costs, fees, and expenses as approved by the Court shall be paid out of the Settlement Fund.

        23.     Class Counsel's Attorneys' Fees And Reimbursement of Expenses.

     (a)     Class Counsel may submit an application or applications to the Court (the "Fee and Expense Application") for distribution to them from the Settlement Fund and Toshiba shall not oppose such application for: (i) an award of attorneys' fees not in excess of one-third of the settlement fund; plus (ii) reimbursement of expenses and costs incurred in connection with prosecuting the Action, plus interest on such attorneys' fees, costs and expenses at the same rate and for the same period as earned by the Settlement Fund (until paid) as may be awarded by the Court (the "Fee and Expense Award"). Class Counsel reserve the right to make additional applications for fees and expenses incurred, but in no event shall Toshiba Releasees be responsible to pay any such additional fees and expenses except to the extent they are paid out of the Settlement Fund.

     (b)     The Fee and Expense Award, as approved by the Court, shall be paid solely from the Settlement Fund. After this Agreement becomes final within the meaning of Paragraph 11, the Fee and Expense Award shall be paid to Lead Counsel within ten (10) business days. Lead Counsel shall allocate the attorneys' fees among Class Counsel in a manner which it in good faith believes reflects the contributions of such counsel to the prosecution and settlement of the Action.

     (c)     The procedure for and the allowance or disallowance by the Court of the application by Class Counsel for attorneys' fees, costs and expenses to be paid out of the Settlement Fund are not part of this Agreement, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of the Settlement, and any order or proceeding relating to the Fee and Expense Application, or any appeal from any such order shall not operate to terminate or cancel this Agreement, or affect or delay the finality of the judgment approving the settlement.

     (d)     Neither Toshiba nor any other Toshiba Releasee under this Agreement shall have any responsibility for, or interest in, or liability whatsoever with respect to any payment to Class Counsel of any Fee and Expense Award in the Action.

(e)     Neither Toshiba nor any other Toshiba Releasee under this Agreement shall have any responsibility for, or interest in, or liability whatsoever with respect to the allocation among Class Counsel, and/or any other person who may assert some claim thereto, of any Fee and Expense Award that the Court may make in the Action.

F.     Cooperation.

24.     Toshiba shall reasonably cooperate with Lead Counsel as set forth specifically below:

(a)     Toshiba shall provide Lead Counsel with copies of all discovery (including among other things, all documents, interrogatories, requests for admission, etc.) Toshiba produces to any other party in the Action;

(b)     Toshiba agrees to provide a declaration and, if necessary, a document custodian to establish, to the best of their ability, the foundation and authenticity of Toshiba's transactional data.   In addition, Toshiba agrees to provide a declaration and, if necessary, a document custodian to establish, to the best of their ability, the foundation of any Toshiba document or data Lead Counsel identify as necessary for summary judgment and/or trial.

(c)     Toshiba agrees to allow Lead Counsel to ask questions of any percipient witness from Toshiba noticed for deposition by any other party in *In Re Cathode Ray Tube (CRT) Antitrust Litigation*, MDL No. 1917 (N.D. Cal.) (the " MDL Action") with whom Toshiba has not settled, pursuant to the deposition procedures described in the Order Re Discovery and Case Management Protocol (ECF. No. 1128).

(d)     If the Plaintiffs proceed to trial against any of the remaining, non-settling defendants in the MDL Action, Toshiba agrees to use its reasonable efforts to make available for live testimony at trial at the United States Courthouse of the United States District Court for the Northern District of California, at Plaintiffs' expense, two (2) persons, each of whom is, at the time of trial, a director, officer, and/or employee of Toshiba whom Lead Counsel, in consultation with Toshiba, reasonably and in good faith believes to have knowledge regarding Plaintiffs' claims as alleged in the Plaintiffs' Consolidated Amended Complaint.  At a reasonable time prior to his/her scheduled trial

14

appearance, Plaintiffs may also meet with each of the two proposed trial witnesses to discuss his/her testimony.

(e)     Notwithstanding any other provision in this Agreement, Plaintiffs agree that they and Class Counsel shall maintain all statements made by Toshiba's counsel as strictly confidential; and that they shall not use directly or indirectly the information so received for any purpose other than the prosecution of the Action. The parties and their counsel further agree that any statements made by Toshiba's counsel in connection with and/or as part of this settlement shall be protected by Federal Rule of Evidence 408, and shall in no event be discoverable by any person or treated as evidence of any kind, unless otherwise ordered by a Court.

(f)     If any document protected by the attorney-client privilege, attorney work-product protection, joint-defense or any other protection, privilege, or immunity is accidentally or inadvertently produced under this Paragraph, the document shall promptly be returned to Toshiba, and its production shall in no way be construed to have waived any privilege or protection attached to such document.

(g)     Plaintiffs and Lead Counsel agree they will not use the information provided by Toshiba or the Toshiba Releasees or their representatives under this Paragraph for any purpose other than the pursuit of the Action, and will not publicize the information beyond what is reasonably necessary for the prosecution of the action or as otherwise required by law. Any documents and other information provided will be deemed "Highly Confidential" and subject to the protective order entered in the Action as if they had been produced in response to discovery requests and so designated.

25.     In the event that this Agreement fails to receive final approval by the Court as contemplated in Paragraphs 8-11 hereof, including final approval of "the Class" as defined in Plaintiffs' Consolidated Amended Complaint or, if that complaint is amended, the operative complaint at the time this Agreement is signed, or in the event that it is terminated by either party under any provision herein, the parties agree that neither Plaintiffs nor Plaintiffs' counsel shall be permitted to introduce into evidence, at any hearing, or in support of any motion, opposition or other pleading in the Action or in

15

any other federal or state or foreign action alleging a violation of any law relating to the subject matter of this Action, any deposition testimony or any documents provided by the Toshiba Releasees, their counsel, or any individual made available by the Toshiba Releasees pursuant to the cooperation provisions of Paragraph 24.

26.     Except as provided in Paragraph 24 of this Agreement, Toshiba and their officers, directors, and employees need not respond to discovery requests or demands from Plaintiffs or otherwise participate in the Action during the pendency of the Agreement.  Neither Toshiba nor Plaintiffs shall file motions against the other during the pendency of the Agreement.  In the event that the Agreement is not approved by the Court, or otherwise terminated, Toshiba and Plaintiffs will each be bound by and have the benefit of any rulings made in the Action to the extent they would have been applicable to Toshiba or Plaintiffs had Toshiba been participating in the Action.

27.     Toshiba and Plaintiffs agree not to disclose publicly or to any other defendant the terms of this Agreement until this Agreement is submitted to the Court for approval.

G.     <u>Rescission if this Agreement is Not Approved or Final Judgment is Not Entered.</u>

28.     If the Court refuses to approve this Agreement or any part hereof, including if the Court does not certify a settlement class in accordance with the specific class definition set forth in Plaintiffs' Consolidated Amended Complaint, or if such approval is modified or set aside on appeal, or if the Court does not enter the final judgment provided for in Paragraph 10 of this Agreement, or if the Court enters the final judgment and appellate review is sought, and on such review, such final judgment is not affirmed in its entirety, then Toshiba and the Plaintiffs shall each, in their sole discretion, have the option to rescind this Agreement in its entirety.  Written notice of the exercise of any such right to rescind shall be made according to the terms of Paragraph 39.  A modification or reversal on appeal of any amount of Class Counsel's fees and expenses awarded by the Court from the Settlement Fund shall not be deemed a modification of all or a part of the terms of this Agreement or such final judgment.

16

29.   In the event that this Agreement does not become final, then this Agreement shall be of no force or effect and any and all parts of the Settlement Fund caused to be deposited in the Escrow Account (including interest earned thereon) shall be returned forthwith to Toshiba less only disbursements made in accordance with Paragraph 19 of this Agreement.  Toshiba expressly reserves all of its rights and defenses if this Agreement does not become final.

30.   Further, and in any event, Plaintiffs and Toshiba agree that this Agreement, whether or not it shall become final, and any and all negotiations, documents, and discussions associated with it, shall not be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing whatsoever by Toshiba (or the Toshiba Releasees), or of the truth of any of the claims or allegations contained in the complaint or any other pleading filed in the Action, or by any person or entity in any other action, and evidence thereof shall not be discoverable or used directly or indirectly, in any way, whether in the Action or in any other action or proceeding.

31.   This Agreement shall be construed and interpreted to effectuate the intent of the parties, which is to provide, through this Agreement, for a complete resolution of the relevant claims with respect to each Toshiba Releasee as provided in this Agreement.

32.   The parties to this Agreement contemplate and agree that, prior to final approval of the settlement as provided for in Paragraphs 8-11 hereof, appropriate notice 1) of the settlement; and 2) of a hearing at which the Court will consider the approval of this Settlement Agreement will be given to Class members.

H.   <u>Miscellaneous.</u>

33.   This Agreement does not settle or compromise any claim by Plaintiffs or any Class Member asserted in the Consolidated Amended Complaint or, if amended, any subsequent complaint, against any defendant or alleged co-conspirator other than the Toshiba Releasees.  All rights against such other defendants or alleged co-conspirators are specifically reserved by Plaintiffs and the Class.  Toshiba's sales to the Class shall not be removed from the Action.

34.    The United States District Court for the Northern District of California shall retain jurisdiction over the implementation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to this Agreement or the applicability of this Agreement that cannot be resolved by negotiation and agreement by Plaintiffs and Toshiba.  This Agreement shall be governed by and interpreted according to the substantive laws of the state of California without regard to its choice of law or conflict of laws principles.

35.    This Agreement constitutes the entire, complete and integrated agreement among Plaintiffs and Toshiba pertaining to the settlement of the Action against Toshiba, and supersedes all prior and contemporaneous undertakings of Plaintiffs and Toshiba in connection herewith.  This Agreement may not be modified or amended except in writing executed by Plaintiffs and Toshiba, and approved by the Court.

36.    This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of Plaintiffs and Toshiba.  Without limiting the generality of the foregoing, each and every covenant and agreement made herein by Plaintiffs, Lead Counsel or Class Counsel shall be binding upon all Class Members and Releasors.  The Toshiba Releasees (other than Toshiba which is a party hereto) are third-party beneficiaries of this Agreement and are authorized to enforce its terms applicable to them.

37.    This Agreement may be executed in counterparts by Plaintiffs and Toshiba, and a facsimile signature shall be deemed an original signature for purposes of executing this Agreement.

38.    Neither Plaintiffs nor Toshiba shall be considered to be the drafter of this Agreement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Agreement.

39.    Where this Agreement requires either party to provide notice or any other communication or document to the other, such notice shall be in writing, and such notice, communication, or document shall be provided by facsimile or letter by

overnight delivery to the undersigned counsel of record for the party to whom notice is
being provided.

        40.     Each of the undersigned attorneys represents that he or she is fully
authorized to enter into the terms and conditions of, and to execute, this Agreement,
subject to Court approval.

Dated: February **6**, 2013

                                   Guido Saveri
                                   guido@saveri.com
                                   R. Alexander Saveri
                                   rick@saveri.com
                                   **SAVERI & SAVERI, INC.**
                                   706 Sansome Street
                                   San Francisco, CA 94111
                                   Telephone: (415) 217-6810
                                   Facsimile: (415) 217-6813

                                   **Lead Counsel and Attorneys for the Class**

                                   Christopher M. Curran
                                   ccurran@whitecase.com
                                   **WHITE & CASE LLP**
                                   701 Thirteenth Street, NW
                                   Washington, DC 20005-3807

                                   *Attorneys for Toshiba Corporation,*
                                   *Toshiba America Electronic Components,*
                                   *Inc., Toshiba America Consumer Products,*
                                   *L.L.C., and Toshiba America Information*
                                   *Systems, Inc.*

# EXHIBIT 2

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA

# If You Bought A Cathode Ray Tube Product,

## A Class Action Settlement May Affect You.

Cathode Ray Tube (CRT) Products include Cathode Ray Tubes and finished products that contain a Cathode Ray Tube such as Televisions and Computer Monitors.

*A Federal Court authorized this Notice. This is not a solicitation from a lawyer.*

- A class action lawsuit that includes direct purchasers of CRT Products is currently pending.

- Plaintiffs claim that Defendants (listed below) and co-conspirators engaged in an unlawful conspiracy to fix, raise, maintain or stabilize the prices of Cathode Ray Tubes. Plaintiffs further claim that direct purchasers of televisions and monitors that contain a cathode ray tube from the Defendants may recover for the effect that the cathode ray tube conspiracy had on the prices of televisions and monitors.  Plaintiffs allege that, as a result of the unlawful conspiracy involving cathode ray tubes, they and other direct purchasers paid more for CRT Products than they would have paid absent the conspiracy. Defendants deny Plaintiffs' claims.

- A Settlement has been reached with Toshiba Corporation, Toshiba America Information Systems, Inc., Toshiba America Consumer Products, L.L.C., and Toshiba America Electronic Components, Inc. The companies are together referred to as the "Settling Defendants."

- Your legal rights will be affected whether you act or don't act.  This Notice includes information on the Settlement and the continuing lawsuit. Please read the entire Notice carefully.

### These Rights and Options – and deadlines to exercise them –
### are explained in this notice.

| | |
|---|---|
| You can object or comment on the Settlement | *see* Question 10 |
| You may exclude yourself from the Settlement | *see* Question 10 |
| You may go to a hearing and comment on the Settlement | *see* Question 14 |

- The Court in charge of this case still has to decide whether to approve the Settlement. The case against the Non-Settling Defendants (identified below) continues.

# WHAT THIS NOTICE CONTAINS

**Basic Information**..................................................................................................... Page 3

    1.  Why did I get this notice?

    2.  Who are the Defendant companies?

    3.  What is this lawsuit about?

    4.  Why is there a Settlement but the litigation is continuing?

    5.  What is a Cathode Ray Tube Product?

    6.  What is a class action?

**The Settlement Class** ............................................................................................... Page 4

    7.  How do I know if I'm part of the Settlement Class?

    8.  What does the Settlement provide?

    9.  When can I get a payment?

    10. What are my rights in the Settlement Class?

    11. What am I giving up to stay in the Settlement Class?

**The Settlement Approval Hearing** ........................................................................... Page 7

    12. When and where will the Court decide whether to approve the Settlement?

    13. Do I have to come to the hearing?

    14. May I speak at the hearing?

**The Lawyers Representing You** ................................................................................ Page 8

    15. Do I have a lawyer in the case?

    16. How will the lawyers be paid?

**Getting More Information** ........................................................................................ Page 8

    17. How do I get more information?

## BASIC INFORMATION

**1.    Why did I get this notice?**

You or your company may have directly purchased Cathode Ray Tubes (CRTs) or certain products containing those tubes between March 1, 1995 and November 25, 2007.  A direct purchaser is a person or business who bought a CRT, or a television or computer monitor containing a CRT directly from one or more of the Defendants, co-conspirators, affiliates, or subsidiaries themselves, as opposed to an intermediary (such as a retail store).

You have the right to know about the litigation and about your legal rights and options before the Court decides whether to approve the Settlement.

The notice explains the litigation, the settlement, and your legal rights.

The Court in charge of the case is the United States District Court for the Northern District of California, and the case is called *In re Cathode Ray Tube (CRT) Antitrust Litigation*, MDL No. 1917. The people who sued are called Plaintiffs and the companies they sued are called Defendants.

**2.    Who are the Defendant companies?**

The Defendant companies include: LG Electronics, Inc., LG Electronics U.S.A., Inc., LG Electronics Taiwan Taipei Co., Ltd., Koninklijke Philips Electronics N.V., Philips Electronics North America Corporation, Philips Electronics Industries (Taiwan), Ltd., Philips da Amazonia Industria Electronica Ltda., LP Displays International, Ltd. f/k/a LG.Philips Displays, Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., Samsung SDI Co. Ltd., Samsung SDI America, Inc.,  Samsung SDI Mexico S.A. de C.V., Samsung SDI Brasil Ltda., Shenzhen Samsung SDI Co. Ltd., Tianjin Samsung SDI Co. Ltd., Samsung SDI Malaysia Sdn. Bhd., Toshiba Corporation, Toshiba America Consumer Products, L.L.C., Toshiba America Information Systems, Inc., Toshiba America Electronic Components, Inc., Panasonic Corporation f/k/a Matsushita Electric Industrial, Ltd., Panasonic Corporation of North America, MT Picture Display Co., Ltd., Beijing-Matsushita Color CRT Company, Ltd. (BMCC), Hitachi, Ltd., Hitachi Displays, Ltd., Hitachi Electronic Devices (USA), Inc., Hitachi America, Ltd., Hitachi Asia, Ltd., Tatung Company of America, Inc., Chunghwa Picture Tubes Ltd., Chunghwa Picture Tubes (Malaysia) Sdn. Bhd., IRICO Group Corporation, IRICO Display Devices Co., Ltd., IRICO Group Electronics Co., Ltd., Thai CRT Company, Ltd., Daewoo Electronics Corporation f/k/a Daewoo Electronics Company, Ltd., Daewoo International Corporation, Irico Group Corporation, Irico Group Electronics Co., Ltd., and Irico Display Devices Co., Ltd.

**3.      What is this lawsuit about?**

The lawsuit alleges that Defendants and co-conspirators conspired to raise and fix the prices of CRTs and the CRTs contained in certain finished products for over ten years, resulting in overcharges to direct purchasers of those CRTs and certain finished products containing CRTs. The complaint describes how the Defendants and co-conspirators allegedly violated the U.S. antitrust laws by establishing a global cartel that set artificially high prices for, and restricted the supply of CRTs and the televisions and monitors that contained them.   Defendants deny Plaintiffs' allegations.  The Court has not decided who is right.

**4.      Why is there a Settlement but the litigation is continuing?**

Only some of the Defendants have agreed to settle the lawsuit.  This notice concerns a settlement with Toshiba Corporation, Toshiba America Information Systems, Inc., Toshiba America Consumer Products, L.L.C., and Toshiba America Electronic Components, Inc. Plaintiffs have also reached four previous settlements with 1) Chunghwa Picture Tubes Ltd., and Chunghwa Picture Tubes (Malaysia) Sdn. Bhd., 2) Koninklijke Philips Electronics N.V., Philips Electronics North America Corporation, Philips Electronics Industries (Taiwan), Ltd., and Philips da Amazonia Industria Electronica Ltda., 3) Panasonic Corporation (f/k/a Matsushita Electric Industrial, Ltd.), Panasonic Corporation of North America, and MT Picture Display Co., Ltd. (this settlement also releases Beijing-Matsushita Color CRT Company, Ltd.), and 4) LG Electronics, Inc., LG Electronics U.S.A., Inc., and LG Electronics Taiwan Taipei Co., Ltd. (this settlement also releases LP Displays International, Ltd. f/k/a LG.Philips Displays.)  The first three settlements have been finally approved by the Court.  The fourth with LG is currently awaiting final approval from the Court.  The case is continuing against the remaining Non-Settling Defendants.  Additional money may become available in the future as a result of a trial or future settlements, but there is no guarantee that this will happen.

**5.      What is a Cathode Ray Tube Product?**

For the purposes of the Settlement, Cathode Ray Tube Products means Cathode Ray Tubes of any type (e.g. color display tubes, color picture tubes and monochrome display tubes) and finished products which contain Cathode Ray Tubes, such as Televisions and Computer Monitors.

**6.      What is a class action?**

In a class action, one or more people, called class representatives, sue on behalf of people who have similar claims.  All these people are members of the class, except for those who exclude themselves from the class.

If the Plaintiffs obtain money or benefits as a result of a trial or future settlement, you will be notified about those settlements, if any, at that time. Important information about the case will be posted on the website, **www.CRTDirectPurchaserAntitrustSettlement.com** as it becomes available. Please check the website to be kept informed about any future developments.

## THE SETTLEMENT CLASS

**7.      How do I know if I'm part of the Settlement Class?**

The Settlement Class includes:

All persons and entities who, between March 1, 1995 and November 25, 2007, directly purchased a CRT Product in the United States from any defendant or subsidiary or affiliate thereof, or any co-conspirator. ("Settlement Class").

**8.      What does the Settlement provide?**

This Settlement provides for a payment in the amount of $13,500,000 in cash to the Settlement Class.  The Settling Defendants also agreed to cooperate with the Plaintiffs in providing certain information about the allegations in the complaint.  In addition, the Settling Defendants' sales remain in the case for the purpose of computing damages against the remaining non-settling Defendants.

More details are in the Settlement Agreement, available at
**www.CRTDirectPurchaserAntitrustSettlement.com.**

**9.      When can I get a payment?**

No money will be distributed to any Class Member yet. The lawyers will pursue the lawsuit against the Non-Settling Defendants to see if any future settlements or judgments can be obtained in the case and then be distributed together, to reduce expenses.

Any future distribution of the Settlement Funds will be done on a *pro rata* basis.  You will be notified in the future when and where to send a claim form.  DO NOT SEND ANY CLAIMS NOW.

In the future, each class member's *pro rata* share of the Settlement Fund will be determined by computing each valid claimant's total CRT Product purchases divided by the total valid CRT Product purchases claimed.  This percentage is multiplied to the Net Settlement Fund (total settlements minus all costs, attorneys' fees, and expenses) to determine each claimant's *pro rata* share of the Settlement Fund.  To determine your CRT Product purchases, CRT tubes (CPTs and CDTs) are calculated at full value while CRT televisions are valued at 50% and CRT computer monitors are valued at 75%.

In summary, all valid claimants will share in the settlement funds on a *pro rata* basis determined by the CRT value of the product you purchased - tubes 100%, monitors 75% and televisions 50%.

**10.    What are my rights with regard to the Settlement Class?**

<u>**Remain in the Settlement Class**</u>: If you wish to remain a member of the Settlement Class you do not need to take any action at this time.

<u>**Get out of the Settlement Class**</u>: If you wish to keep any of your rights to sue the Settling Defendants about the claims in this case, you must exclude yourself from the Settlement Class. You will not get any money from the settlement if you exclude yourself from the Settlement Class.

To exclude yourself from the Settlement Class, you must send a letter that includes the following:
- Your name, address and telephone number,
- A statement saying that you want to be excluded from *In re Cathode Ray Tube (CRT) Antitrust Litigation*, MDL No. 1917, Toshiba Settlement; and
- Your signature.

You must mail your exclusion request, postmarked no later than _____, **2013**, to:

CRT Direct Settlement

P.O. Box 808003

Petaluma, CA 94975

<u>**Remain in the Settlement Class and Object**</u>: If you have comments about, or disagree with, any aspect of the Settlement, you may express your views to the Court by writing to the address below. The written response needs to include your name, address, telephone number, the case name and number (*In re Cathode Ray Tube (CRT) Antitrust Litigation*, MDL No. 1917), a brief explanation of your reasons for objection, and your signature. The response must be postmarked no later than _____, **2013** and mailed to:

| COURT | INTERIM LEAD COUNSEL | COUNSEL FOR SETTLING DEFENDANTS |
|---|---|---|
| Honorable Charles A. Legge (Ret.) JAMS Two Embarcadero, Suite 1500 San Francisco, CA 94111 | Guido Saveri R. Alexander Saveri SAVERI & SAVERI, INC. 706 Sansome Street San Francisco, CA 94111 | Christopher M. Curran WHITE & CASE LLP 701 13th Street, N.W. Washington, DC 20005 |

**For More Information: Call 1-877-224-3063 or Visit**
**www.CRTDirectPurchaserAntitrustSettlement.com**

6

**11.     What am I giving up to stay in the Settlement Class?**

Unless you exclude yourself from the Settlement Class, you can't sue the Settling Defendants (or any of the related entities that are released in the Settlement Agreement), or be part of any other lawsuit against these Settling Defendants about the legal issues in this case. It also means that all of the decisions by the Court will bind you. The "Release of Claims" includes any causes of actions asserted or that could have been asserted in the lawsuit, as described more fully in the Settlement Agreement. The Settlement Agreement is available at **www.CRTDirectPurchaserAntitrustSettlement.com.**

<b>THE SETTLEMENT APPROVAL HEARING</b>

**12.     When and where will the Court decide whether to approve the Settlement?**

The Court will hold a Fairness Hearing at _____ on _____**2013**, at JAMS, Two Embarcadero, Suite 1500, San Francisco, CA 94111. The hearing may be moved to a different date or time without additional notice, so it is a good idea to check the class website for information.  At this hearing, the Court will consider whether the Settlement is fair, reasonable and adequate. If there are objections or comments, the Court will consider them at that time. After the hearing, the Court will decide whether to approve the Settlement. We do not know how long these decisions will take.

**13.     Do I have to come to the hearing?**

No. Interim Lead Counsel will answer any questions the Court may have, but you are welcome to come at your own expense. If you send an objection or comment, you don't have to come to Court to talk about it.  As long as you mailed your written objection on time, the Court will consider it. You may also pay another lawyer to attend, but it's not required.

**14.     May I speak at the hearing?**

If you want your own lawyer instead of Interim Lead Counsel to speak at the Final Approval Hearing, you must give the Court a paper that is called a "Notice of Appearance."  The Notice of Appearance should include the name and number of the lawsuit (*In re Cathode Ray Tube (CRT) Antitrust Litigation*, MDL No. 1917), and state that you wish to enter an appearance at the Fairness Hearing. It also must include your name, address, telephone number, and signature. Your "Notice of Appearance" must be postmarked no later than _____, **2013**. You cannot speak at Hearing if you previously asked to be excluded from the Settlement.

The Notice of Appearance must be sent to the addresses listed in Question 10.

## THE LAWYERS REPRESENTING YOU

**15.     Do I have a lawyer in the case?**

Yes. The Court has appointed the law firm of Saveri & Saveri, Inc. to represent you as "Interim Lead Counsel." You do not have to pay Interim Lead Counsel. If you want to be represented by your own lawyers, and have that lawyer appear in court for you in this case, you may hire one at your own expense.

**16.     How will the lawyers be paid?**

Class Counsel are not asking for attorneys' fees at this time.  At a future time, Interim Lead Counsel will ask the Court for attorneys' fees not to exceed one-third (33.3%) of this or any future Settlement Fund plus reimbursement of their costs and expenses, in accordance with the provisions of the Settlement Agreement.  Interim Lead Counsel may also request that an amount be paid to each of the Class Representatives who helped the lawyers on behalf of the whole Class.

## GETTING MORE INFORMATION

**17.     How do I get more information?**

This Notice summarizes the lawsuit and the Settlement. You can get more information about the lawsuit and Settlement at **www.CRTDirectPurchaserAntitrustSettlement.com.,** by calling 1-877-224-3063, or writing to CRT Direct Settlement, P.O. Box 808003, Petaluma, CA 94975.  Please do not contact JAMS or the Court about this case.

Dated: _____, 2013                                     BY ORDER OF THE COURT

# EXHIBIT 3

<u>LEGAL NOTICE</u>
## If You Bought A Cathode Ray Tube ("CRT") or CRT Product, A Class Action Settlement May Affect You.

### CRT Products include Televisions or Computer Monitors that contain Cathode Ray Tubes

A settlement has been reached with a group of defendants in a class action lawsuit involving CRTs and CRT Products. This is the fifth settlement to date. CRT stands for "Cathode Ray Tube." "Cathode Ray Tube (CRT) Products" include Cathode Ray Tubes and finished products that contain a Cathode Ray Tube such as Televisions and Computer Monitors.

*What is this lawsuit about?*

The lawsuit alleges that Defendants and Co-Conspirators engaged in an unlawful conspiracy to fix, raise, maintain or stabilize the prices of CRTs. Plaintiffs further claim that direct purchasers of televisions and monitors that contain a cathode ray tube from the Defendants may recover for the effect that the cathode ray tube conspiracy had on the prices of televisions and monitors. Plaintiffs allege that, as result of the unlawful conspiracy, they and other direct purchasers paid more for CRT Products than they would have absent the conspiracy. Defendants deny Plaintiffs' claims.

*Who's included in the settlement?*

The Settlement includes all persons and entities who, between March 1, 1995 and November 25, 2007, directly purchased a CRT Product in the United States from any defendant or subsidiary or affiliate thereof ("Settlement Class").

*Who are the Settling Defendants?*

A Settlement has been reached with Defendants Toshiba Corporation, Toshiba America Information Systems, Inc., Toshiba America Consumer Products, L.L.C., and Toshiba America Electronic Components, Inc. (collectively "Toshiba" or "Settling Defendants"). A complete list of Defendants is set out in the Long Form of Notice available at www.CRTDirectPurchaserAntitrustSettlement.com.

*What does the Settlement provide?*

The Settlement provides for the payment of $13,500,000 in cash to the Settlement Class. The Settling Defendants agreed to cooperate with the Plaintiffs in providing certain information about the allegations in the Complaint. Money will not be distributed to Class members at this time. The lawyers will pursue the lawsuit against the other Defendants to see if any future settlements or judgments can be obtained in the case and then be distributed together, to reduce expenses.

*What are my rights?*

If you wish to remain a member of the Settlement Class you do not need to take any action at this time. If you do not want to be legally bound by the Settlement, you must exclude yourself in writing by _____, 2013, or you will not be able to sue, or continue to sue, the Settling Defendants about the legal claims in this case.

If you wish to comment on or disagree with any aspect of the proposed settlement, you must do so in writing no later than _____, 2013. The Settlement Agreement, along with details on how to object to them, is available at www.CRTDirectPurchaserAntitrustSettlement.com. The U.S. District Court for the Northern District of California will hold a Fairness Hearing at _____ on _____, 2013, at JAMS, Two Embarcadero, Suite 1500, San Francisco, CA 94111. The hearing may be moved to a different date or time without additional notice, so it is a good idea to check the class website for information.

The Court has appointed the law firm of Saveri & Saveri, Inc. to represent Direct Purchaser Class members as Interim Lead Class Counsel. At the Fairness Hearing, the Court will consider whether the Settlement is fair, reasonable and adequate. If there are objections or comments, the Court will consider them at that time. You may appear at the hearing, but don't have to. We do not know how long these decisions will take. Please do not contact JAMS or the Court about this case.

This is a Summary Notice. For more details, call toll free 1-877-224-3063, visit www.CRTDirectPurchaserAntitrustSettlement.com., or write to CRT Direct Settlement, P.O. Box 808003, Petaluma, CA 94975.