1
2
3
4
5
6
7

Guido Saveri (22349) guido@saveri.com
R. Alexander Saveri (173102) rick@saveri.com
Geoffrey C. Rushing (126910) grushing@saveri.com
Cadio Zirpoli (179108) cadio@saveri.com
SAVERI & SAVERI, INC.
706 Sansome Street
San Francisco, CA 94111
Telephone: (415) 217-6810
Facsimile: (415) 217-6813

Interim Lead Counsel for the Direct Purchaser Plaintiffs

8
9
10

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

11
12
13
14
15
16
17
18
19

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. CV- 07-5944-SC |
| | MDL No. 1917 |
| This Document Relates to: | **DIRECT PURCHASER PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT WITH LG DEFENDANTS** |
| **ALL DIRECT PURCHASER ACTIONS** | |
| | Date: March 15, 2013 Time: 10:00 a.m. Judge: Honorable Charles A. Legge (Ret.) JAMS: Two Embarcadero Center, Suite 1500 |

20
21
22
23
24
25
26
27
28

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................................... ii

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................ 1

I.     INTRODUCTION ................................................................................................................ 1

II.    FACTUAL AND PROCEDURAL HISTORY ................................................................... 1

III.   THE TERMS OF THE SETTLEMENT ............................................................................. 6

IV.   ARGUMENT ....................................................................................................................... 7

    A.  The Class Action Settlement Class .......................................................................... 8

    B.  The Court-Approved Notice Program Satisfies Due Process and Has Been Fully
       Implemented. ............................................................................................................ 8

    C.  The Settlement Is "Fair, Adequate And Reasonable" and Should Be Granted Final
       Approval. ................................................................................................................. 10

       1.  The Settlement Provides Considerable Relief For The Class. .................... 11

       2.  The Class Members' Positive Reaction Favors Final Approval. .................. 12

       3.  The Settlement Eliminates Significant Risk To The Class. ......................... 13

       4.  The Settlement Is the Product of Arm's-Length Negotiations Between the Parties and
          The Recommendation of Experienced Counsel Favors Approval. ............... 14

    D.  The Plan of Allocation Is "Fair, Adequate and Reasonable" and Therefore Should Be
       Approved. ................................................................................................................. 15

V.    OBJECTIONS BY CLASS MEMBERS ........................................................................... 16

VI.   EXCLUSIONS .................................................................................................................. 16

VII.  CONCLUSION ................................................................................................................. 17

# TABLE OF AUTHORITIES

## CASES

*Agretti v. ANR Freight System, Inc.*,
    982 F.2d 242 (7th Cir. 1992) ................................................................ 12

*Arnold v. Arizona Department of Public Safety*,
    No. CV-01-1463-PHX-LOA, 2006 WL 2168637 (D. Ariz. July 31, 2006) .............. 13

*Bellows v. NCO Financial System*,
    2008 U.S. Dist. LEXIS 103525 (S.D. Cal. Dec. 2, 2008) ............................ 14

*Bynum v. District of Columbia*,
    412 F. Supp. 2d 73 (D.D.C. 2006) .................................................... 13

*Byrd v. Civil Service Commission*,
    459 U.S. 1217 (1983) ................................................................ 10

*Churchill Village L.L.C. v. General Electric*,
    361 F.3d 566 (9th Cir. 2004) ................................................... 9, 10, 12

*Class Plaintiffs v. City of Seattle*,
    955 F.2d 1268 (9th Cir. 1992) ....................................................... 10

*Ellis v. Naval Air Rework Facility*,
    87 F.R.D. 15 (N.D. Cal. 1980) ....................................................... 11

*Fisher Brothers v. Mueller Brass Co.*,
    630 F. Supp. 493 (E.D. Pa. 1985) .................................................... 11

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1988) .................................................... 10, 12

*In re "Agent Orange" Product Liability Litigation*,
    818 F.2d 145 (2d Cir. 1987) .......................................................... 9

*In re Austrian and German Bank Holocaust Litigation*,
    80 F. Supp. 2d 164 (S.D.N.Y. 2000) .................................................. 14

*In re Citric Acid Antitrust Litigation*,
    145 F. Supp. 2d 1152 (N.D. Cal. 2001) ............................................... 15

*In re Computron Software, Inc.*,
    6 F. Supp.2d 313 (D.N.J. 1998) ...................................................... 15

*In re Corrugated Container Antitrust Litigation*,
    Case No. M.D.L. 310, 1981 WL 2093 (S.D. Tex. June 4, 1981) ......................... 12

*In re Fleet/Norstar Securities Litigation*,
    935 F. Supp. 99 (D.R.I. 1996) ....................................................... 12

*In re Linerboard Antitrust Litigation*,
    292 F. Supp. 2d 631 (E.D. Pa. 2003) ................................................. 12

*In re Lloyds' American Trust Fund Litigation*,
    No. 96 Civ.1262 RWS, 2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002) ..................... 15

*In re Mid-Atlantic Toyota Antitrust Litigation*,
    564 F. Supp. 1379 (D. Md. 1983) ..................................................... 11

*In re NASDAQ Market-Makers Antitrust Litigation*,
    187 F.R.D. 465 (S.D.N.Y. 1998) ...................................................... 13

1

*In re PaineWebber Ltd. Partnerships Litigation,*
   171 F.R.D. 104 (S.D.N.Y. 1997) .................................................................................. 16

*In re Patriot American Hospitality Inc. Securities Litigation,*
   No. MDL C-00-1300 VRW, 2005 WL 3801594 (N.D. Cal. Nov. 30, 2005) ........................... 13

*In re Sumitomo Copper Litigation,*
   189 F.R.D. 274 (S.D.N.Y. 1999) .................................................................................. 13

*In re Visa Check/Mastermoney Antitrust Litigation,*
   297 F. Supp. 2d 503 (E.D.N.Y. 2003) ........................................................................... 13

*In re Vitamins Antitrust Litigation,*
   No. 99-197 TFH, 2000 WL 1737867 (D.D.C. Mar. 31, 2000) ............................................ 15

*M. Berenson Co. v. Faneuil Hall Marketplace, Inc.,*
   671 F. Supp. 819 (D. Mass. 1987) ............................................................................... 11

*Mangone v. First USA Bank,*
   206 F.R.D. 222 (S.D. Ill. 2001) ..................................................................................... 9

*Marisol A. ex rel. Forbes v. Giuliani,*
   185 F.R.D. 152 (S.D.N.Y. 1999) .................................................................................. 14

*Mendoza v. Tucson School District No. 1,*
   623 F.2d 1338 (9th Cir. 1980) ...................................................................................... 9

*National Rural Telecommunications Cooperative v. DIRECTV, Inc.,*
   221 F.R.D. 523 (C.D. Cal. 2004) ............................................................................ 12, 14

*Officers for Justice v. Civil Service Commission,*
   688 F.2d 615 (9th Cir. 1982) ........................................................................... 10, 11, 14

*Pallas v. Pacific Bell,*
   No. C-89-2373 DLJ, 1999 WL 1209495 (N.D. Cal. 1999) .................................................. 13

*Petrovic v. Amoco Oil Co.,*
   200 F.3d 1140 (8th Cir. 1999) ...................................................................................... 9

*Rutter & Wilbanks Corp. v. Shell Oil Co.,*
   314 F.3d 1180 (10th Cir. 2002) .................................................................................... 14

*Torrisi v. Tucson Electric Power Co.,*
   8 F.3d 1370 (9th Cir. 1993) ..................................................................................... 9, 11

*Utility Reform Project v. Bonneville Power Administration,*
   869 F.2d 437 (9th Cir. 1989) ....................................................................................... 11

*Van Bronkhorst v. Safeco Corp.,*
   529 F.2d 943 (9th Cir. 1976) ....................................................................................... 10

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,*
   396 F.3d 96 (2d Cir. 2005) .......................................................................................... 13

*Wilkerson v. Martin Marietta Corp.,*
   171 F.R.D. 273 (D. Colo. 1997) ................................................................................... 14

## STATUTES

Clayton Act, 15 U.S.C. § 15 ........................................................................................ 1, 2

Sherman Act, 15 U.S.C. § 1 ............................................................................................ 1

**OTHER AUTHORITIES**

4 Albert Conte & Herbert Newberg, *Newberg on Class Actions* §§ 11.22, *et seq.* (4th ed. 2002) .... 8

**RULES**

Federal Rule of Civil Procedure 11 ................................................................................................ 3

Federal Rule of Civil Procedure 23 ............................................................................................ 1, 9

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 23(e) and the Court's Order granting preliminary approval of the proposed settlement (Docket No. 1333), Direct Purchaser Class Plaintiffs ("Plaintiffs") submit this memorandum in support of final approval of the Class settlement ("Settlement") reached with Defendants LG Electronics, Inc.; LG Electronics USA, Inc.; and LG Electronics Taiwan Taipei Co., Ltd. (collectively, "LG" or "Settling Defendants").

The settlement provides for payment to the class in the amount of $25,000,000 for a complete release of all class members' antitrust claims. Saveri Decl., Ex. 1. LG has also agreed to cooperate with the Plaintiffs in providing certain information regarding the allegations of the complaint. *Id*. (Settlement Agreement ¶ 24).  In addition, the sales of LG remain in the case for the purpose of computing damages against the remaining non-settling Defendants. Saveri Decl., ¶ 20.

On November 13, 2012, the Court certified the Settlement Class and preliminarily approved the LG Settlement. (Docket No. 1441).  In addition, the Court: 1) ordered that class members be provided notice of the Settlement; 2) set January 11, 2013 as the date for class members to opt-out of the Settlement Class or object to the Settlement; and 3) set March 15, 2013 as the date for the hearing on final approval of the Settlement. *See id*.

There are no objections to the Settlement. Sherwood Decl. ¶ 10.

Direct Purchaser Plaintiffs respectfully request the Court grant final approval of the Settlement on the grounds that it is fair, adequate and reasonable to the class.

### II.   FACTUAL AND PROCEDURAL HISTORY

This multidistrict litigation arises from an alleged conspiracy to fix prices of Cathode Ray Tubes ("CRTs").  In November of 2007, the first direct purchaser plaintiff filed a class action complaint on behalf of itself and all others similarly situated alleging a violation of section one of the Sherman Act, 15 U.S.C. § 1, and section four of the Clayton Act, 15 U.S.C. § 15.  Thereafter, additional actions were filed in other jurisdictions, and the Judicial Panel on Multidistrict Litigation transferred all related actions to this Court on February 15, 2008. (Docket No. 122).  On May 9,

1   2008, Saveri & Saveri, Inc. was appointed Interim Lead Class Counsel for the nationwide class of

2   direct purchasers. (Docket No. 282).

3          On March 16, 2009, the Direct Purchaser Plaintiffs filed their Consolidated Amended

4   Complaint ("CAC") alleging an over-arching horizontal conspiracy among the Defendants and

5   their co-conspirators to fix prices for CRTs and to allocate markets and customers for the sale of

6   CRTs in the United States from March 1, 1995 through November 25, 2007 (the "Class Period").

7   The Complaint alleges that Plaintiffs and members of the Class are direct purchasers of CRTs

8   and/or CRT Finished Products from defendants and/or their subsidiaries and were injured because

9   they paid more for CRTs and/or CRT Finished Products than they would have absent Defendants'

10  illegal conspiracy. (Compl. ¶¶ 213–221). Plaintiffs seek, among other things, treble damages

11  pursuant to Section 4 of the Clayton Act, 15 U.S.C. §§ 15 and 22. (Compl., Prayer for Relief).

12         Defendants filed several motions to dismiss the CAC on May 18, 2009. (See Docket Nos.

13  463–493). On February 5, 2010 this court issued its rulings denying in part and granting in part

14  Defendants' motions to dismiss (Report, Recommendations and Tentative Rulings regarding

15  Defendants' Motions to Dismiss, Docket No. 597). After an objection by Defendants, Judge Conti

16  on March 30, 2010 entered an order approving and adopting Judge Legge's previous ruling and

17  recommendations. (Docket No. 665). On April 29, 2010, Defendants answered the CAC.

18         Thereafter, in May 2010, certain Defendants propounded interrogatories requesting

19  Plaintiffs to identify what evidence they had about the existence of a conspiracy to fix the prices of

20  CRT Products at the time they filed their complaints. Plaintiffs objected to these interrogatories as,

21  among other things, premature "contention" interrogatories. Defendants moved to compel

22  answers. On November 18, 2010, after a hearing, the Special Master ordered Plaintiffs' to answer

23  the interrogatories. (Report and Recommendations Regarding Discovery Motions, Docket No.

24  810). On December 8, 2010, the court adopted the Special Master's Report and Recommendation.

25  (Order Adopting Special Master's Report, Recommendation, and Tentative Rulings Regarding

26  Discovery Motions, Docket No. 826). On January 31, 2011, Plaintiffs answered Defendants'

27  interrogatories.

28         On March 21, 2011, certain defendants moved for sanctions pursuant to Federal Rule of

DIRECT PURCHASER PLAINTIFFS' MEMO ISO FINAL APPROVAL OF CLASS ACTION SETTLEMENT
WITH LG; Master File No. CV-07-5944-SC

1  Civil Procedure 11 on the grounds that the allegations of a finished product conspiracy were

2  without foundation and should be stricken from the complaint. (Certain Defendants' Motion for

3  Sanctions Pursuant to Rule 11, Docket No. 880).  On June 15, 2011, after a hearing, the Special

4  Master recommended that the motion be granted and that Plaintiffs' allegations of a finished

5  products conspiracy be stricken from the complaint. (Special Master Report and Recommendations

6  on Motions Regarding Finished Products, Docket No. 947).  The Special Master also

7  recommended that "the issue of the possible impact or effect of the alleged fixing of prices of

8  CRTs on the prices of Finished Products shall remain in the case, and is a proper subject of

9  discovery." *Id.* at p. 14.

10      On June 29, 2011, Defendants moved the Court to adopt the Special Master's Report and

11  Recommendation. (Motion to Adopt Special Master's Report and Recommendation Regarding

12  Finished Products, Docket No. 953). Plaintiffs' filed an objection to the Special Master's Report

13  and Recommendation. (Direct Purchaser Plaintiffs' Objection to Report and Recommendation on

14  Motions Regarding Finished Products, Docket No. 957).   The Court set the matter for hearing on

15  September 2, 2011. (Docket No. 968).

16      On August 26, 2011, before the hearing on the Special Master's Report and

17  Recommendations Regarding Finished Products, the parties entered into a stipulation providing,

18  among other things: 1) that the Special Master's recommended finding that Plaintiffs violated Rule

19  11 be vacated; 2) that certain other aspects of the Special Master's recommendations be adopted;

20  and 3) that Plaintiffs' "allegations of the Direct CAC purporting to allege a conspiracy

21  encompassing Finished Products are Stricken from the Direct CAC, provided, however, that the

22  issue of the possible impact or effect of the alleged fixing of prices of CRTs on the prices of

23  Finished Products shall remain in the case."  In addition, Plaintiffs agreed to withdraw "all

24  discovery requests regarding or relating to information in support of the CRT Finished Product

25  Conspiracy claims," and that "the issue of the purported impact or effect of the alleged fixing of

26  prices of the CRTs on the prices of the Finished Products shall remain in the case and is a proper

27  subject of discovery." (Stipulation and Order Concerning Pending Motions Re: Finished Products,

28  Docket No. 996).

1    On December 12, 2011, Defendants filed a joint motion for Summary Judgment against

2  Direct Purchaser Plaintiffs who purchased CRT Finished Products. (Docket No. 1013). On

3  February 24, 2012, Plaintiffs filed their Memorandum of Points and Authorities In Opposition to

4  Defendants' Motion For Partial Summary Judgment and supporting Declaration of R. Alexander

5  Saveri under seal. (Docket No. 1057). The same day, the Direct Action Plaintiffs also filed an

6  opposition to Defendants' motion. On March 9, 2012, Defendants filed their Reply In Support of

7  Motion For Summary Judgment (Docket No. 1083), and on March 20, 2012, the Court heard

8  argument.  On May 31, 2012, the Special Master issued his Report and Recommendation regarding

9  Defendants' Joint Motion For Summary Judgment recommending that the Court grant Defendants'

10  motion and that judgment be entered against certain plaintiffs that purchased CRT Finished

11  Products from defendants ("R&R"). (Docket No. 1221).

12    On June 12, 2012, the Direct Purchaser Plaintiffs, the Direct Action Plaintiffs, and the

13  Defendants submitted a Stipulation notifying the Court, *inter alia*, that Plaintiffs intended to object

14  to the R&R. (Docket No. 1228)  On June 26, 2012, the Court issued an order establishing a

15  briefing schedule requiring all parties to file their briefs by July 26, 2012 and setting a hearing for

16  August 10, 2012. (Docket No. 1240)  On June 28, 2012, the Court vacated the hearing. (Docket

17  No. 1243)  The parties filed their briefs as ordered.

18    On November 29, 2012, the Court entered the Order Granting in Part and Denying in Part

19  Defendants' Joint Motion for Summary Judgment ("Order") (Docket No. 1470)  The Court found

20  that the Direct Purchaser Plaintiffs that purchased a Finished Product, were "in fact indirect

21  purchasers for purposes of antitrust standing." Order at p. 6.  The Court further found that one of

22  the three exceptions that permit indirect purchasers to pursue private treble-damages claims,

23  outlined by the Ninth Circuit Court of Appeals in *In re ATM Fee Antitrust Litig.*, 686 F.3d 741 (9th

24  Cir. 2012), did apply to the Direct Purchaser Plaintiffs.  The Court ruled that the "Ownership and

25  Control Exception" created in *Royal Printing Co. v. Kimberly-Clark Corp.*, 621 F.2d 323 (9th Cir.

26  1980), conferred standing on Direct Purchaser Plaintiffs to sue "insofar as they purchased [Finished

27  Products] incorporating the allegedly price-fixed CRTs from an entity owned or controlled by any

28  allegedly conspiring defendant."  Order at p. 16.

1    In September of 2008, the first of several stays prohibiting plaintiffs from obtaining merits

2    discovery was entered by this Court. (Docket Nos. 379, 425, and 590).  On June 4, 2008, Plaintiffs'

3    propounded their First Set of Limited Document Requests.  Thereafter, on March 12, 2010, after

4    the partial stay of discovery was lifted, Plaintiffs propounded their Second Set of Document

5    Requests and First Set of Interrogatories. After extensive meet and confers and several motions to

6    compel, the Court issued its Report Regarding Case Management Conference No. 4 on October 27,

7    2011 setting the middle of December, 2011 as the deadline for the completion of substantial

8    discovery by all parties. (Docket Nos. 1007, 1008). Plaintiffs have now received over 5 million

9    pages of documents produced by Defendants.

10   On March 19, 2012, the Special Master issued the Scheduling Order and Order Re

11   Discovery and Case Management Protocol. (Docket Nos. 1093, 1094).  The Court entered both

12   Orders on April 3, 2012.  (Docket Nos. 1127, 1128).  The Scheduling Order set August 30, 2013 as

13   the date for completion of all fact and expert discovery.  Beginning in June of 2012, after meeting

14   and conferring with defendants regarding the scope and topics of 30(b)(6) witnesses, Plaintiffs in

15   coordination with the indirect purchasers, the Attorneys General, and the opt-out plaintiffs, began

16   taking 30(b)(6) depositions of the various defendants.  To date, plaintiffs collectively have deposed

17   approximately twenty-five corporate representatives.  Beginning in December of 2012, plaintiffs

18   began taking fact depositions.  To date, plaintiffs collectively have deposed more than five fact

19   witnesses.

20   On October 19, 2012, the Court granted final approval of the first two settlements reached

21   in this case with: (1) Chunghwa Picture Tubes, Ltd. and Chunghwa Picture Tubes (Malaysia) Sdn.

22   Bhd. ("CPT"), and (2) Koninklijke Philips Electronics N.V., Philips Electronics North America

23   Corporation, Philips Electronics Industries (Taiwan), Ltd., and Philips Da Amazonia Industria

24   Electronica Ltda. (collectively, "Philips").  The Court certified a Settlement Class for the CPT and

25   Philips settlements, appointed Plaintiffs' Interim Lead Counsel as Settlement Class Counsel, and

26   found that the manner and form of providing notice of the settlements to class members was the

27   best notice practicable under the circumstances.  (Docket No. 1412).

28

On December 27, 2012, the Court granted final approval of the settlement reached in this case with: Panasonic Corporation (f/k/a Matsushita Electric Industrial Co., Ltd.), Panasonic Corporation of North America, and MT Picture Display Co., Ltd., (collectively, "Panasonic"). The Settlement also released Defendant Beijing Matsushita Color CRT Co., Ltd. ("BMCC"). The Court certified a Settlement Class for the Panasonic settlement, appointed Plaintiffs' Interim Lead Counsel as Settlement Class Counsel, and found that the manner and form of providing notice of the settlements to class members was the best notice practicable under the circumstances. (Docket No. 1508).

On November 13, 2012, the Court preliminarily approved the settlement before the Court. The Court certified a Settlement Class for the Settlement, appointed Plaintiffs' Interim Lead Counsel as Settlement Class Counsel, approved the manner and form of providing notice of the settlement to class members, established a timetable for publishing class notice and set a hearing for final approval. (Docket No. 1441).

Plaintiffs have hired Gilardi & Co, LLC ("Gilardi") to serve as the Settlement Administrator. On November 27, 2012, Gilardi mailed and e-mailed notice to each class member identified by Defendants. Sherwood Decl. ¶¶ 4–5. On November 23, 2012, the Summary Notice was published in The Wall Street Journal. *Id.* ¶ 8. A website was also established at www.CRTDirectPurchaserAntitrustSettlement.com, which contains copies of the Settlement Agreement, Class Notice and Preliminary Approval Order. *Id.* ¶ 6. The deadline for objections to the Settlement or requests for exclusion from the Settlement Class was January 11, 2013. Gilardi received twenty-three (23) requests for exclusion from the Settlement Class and no objections. *Id.* ¶¶ 9, 10.

III.    **THE TERMS OF THE SETTLEMENT**

In exchange for dismissal with prejudice and a release of all claims asserted in the Complaint, LG has agreed to pay $25,000,000 in cash. The settlement funds have been paid and deposited into a separate escrow account for the Direct Purchaser Class. Saveri Decl., ¶ 19.

In addition to the monetary value, the Settlement provides significant additional benefits to the Class. First, LG has agreed to cooperate with Plaintiffs in the prosecution of this action by

providing information relating to the allegations about the multilateral or group CRT competitor meetings alleged in the Complaint, including 1) an attorney proffer by LG's counsel regarding the facts known to LG regarding multilateral or group CRT competitor meetings, 2) the interview and deposition of up to four LG persons with knowledge of multilateral or group CRT competitor meetings, 3) provision of one or more witnesses for deposition, and if necessary for trial, to provide information with respect to LG's data regarding sales, pricing, production and costs of its CRT Products, and 4) provision of one or more witnesses to testify regarding the foundation of any LG document or data necessary for summary judgment and/or trial. *Id.* ¶ 21.

Second, LG's sales remain in the case for purposes of computing damages against the non-settling defendants.  *Id.* ¶ 20.

Upon the Settlement becoming final, Plaintiffs and Class members will relinquish any claims they have against LG based, in whole or in part, on matters alleged or that might have been alleged in this litigation. Saveri Decl., Ex. 1, ¶ 13.  The release, however, excludes claims for product defects or personal injury.  *Id.*

The Settlement becomes final upon: (i) the Court's approval of the Settlement pursuant to Rule 23(e) and the entry of a final judgment of dismissal with prejudice as to LG; and (ii) the expiration of the time for appeal or, if an appeal is taken, the affirmance of the judgment with no further possibility of appeal.  Saveri Decl., Ex. 1, ¶ 11.

Subject to the approval and direction of the Court, the Settlement payment will be used to: (i) make a distribution to Class members in accordance with a proposed plan of allocation to be approved by the Court (Saveri Decl. Ex. 1, ¶ 21); (ii) pay Class Counsel's attorneys' fees, costs, and expenses as may be awarded by the Court (*Id.*, Ex. 1, ¶¶ 22–23.); and (iii) pay all taxes associated with any interest earned on the escrow account.  *Id.*, Ex. 1, ¶ 17(f).   In addition, the Settlement provides that $300,000 may be used to pay for Notice costs and future costs incurred in the administration and distribution of the Settlement payments. *Id.*, Ex. 1, ¶ 19(a).

## IV.     ARGUMENT

A class action may not be dismissed, compromised, or settled without the approval of the Court.  Judicial proceedings under Federal Rule of Civil Procedure 23 have led to a defined

DIRECT PURCHASER PLAINTIFFS' MEMO ISO FINAL APPROVAL OF CLASS ACTION SETTLEMENT
WITH LG; Master File No. CV-07-5944-SC

procedure and specific criteria for class action settlement approval. The Rule 23(e) settlement approval procedure includes three distinct steps:

1.   Certification of a settlement class and preliminary approval of the proposed settlement;

2.   Dissemination of notice of the settlement to all affected class members; and

3.   A formal fairness hearing, also called the final approval hearing, at which class members may be heard regarding the settlement, and at which counsel may introduce evidence and present argument concerning the fairness, adequacy, and reasonableness of the settlement.

This procedure safeguards class members' due process rights and enables the Court to fulfill its role as the guardian of class interests. *See* 4 Albert Conte & Herbert Newberg, *Newberg on Class Actions* §§ 11.22, *et seq.* (4th ed. 2002) ("*Newberg*").

### A.   The Class Action Settlement Class.

The Court here completed the first step in the settlement approval process when it granted preliminary approval of the Settlement.

The Court certified a Settlement Class consisting of:

> All persons and entities who, between March 1, 1995 and November 25, 2007, directly purchased a CRT Product in the United States from any defendant or any subsidiary or affiliate thereof, or any co-conspirator. Excluded from the Class are defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, all governmental entities, and any judges or justices assigned to hear any aspect of this action.

CRT Products refers to all forms of Cathode Ray Tubes.  It includes CPTs, CDTs and the finished products that contain them – televisions and monitors. (Docket No. 1441).

### B.   The Court-Approved Notice Program Satisfies Due Process and Has Been Fully Implemented.

The second step in the settlement process has also been completed.  The Court-approved notice plan has been successfully implemented and class members have been notified of the Settlement.

DIRECT PURCHASER PLAINTIFFS' MEMO ISO FINAL APPROVAL OF CLASS ACTION SETTLEMENT WITH LG; Master File No. CV-07-5944-SC

1    When a proposed class action settlement is presented for court approval, the Federal Rules

2  require:

> [T]he best notice that is practicable under the circumstances, including
> individual notice to all members who can be identified through reasonable
> effort. The notice must clearly and concisely state in plain, easily
> understood language: (i) the nature of the action; (ii) the definition of the
> class certified; (iii) the class claims, issues, or defenses; (iv) that a class
> member may enter an appearance through an attorney if the member so
> desires; (v) that the court will exclude from the class any member who
> requests exclusion; (vi) the time and manner for requesting exclusion; and
> (vii) the binding effect of a class judgment on members under Rule
> 23(c)(3).

8  Fed. R. Civ. P. 23(c)(2)(B)

9    A settlement notice is a summary, not a complete source, of information.  *See, e.g.*, *Petrovic*

10  *v. Amoco Oil Co.*, 200 F.3d 1140, 1153 (8th Cir. 1999); *In re "Agent Orange" Prod. Liability*

11  *Litig.*, 818 F.2d 145, 170 (2d Cir. 1987), *cert. denied*, 484 U.S. 1004 (1988); *Mangone v. First USA*

12  *Bank*, 206 F.R.D. 222, 233 (S.D. Ill. 2001).  This circuit requires a general description of the

13  proposed settlement in such a notice.  *Churchill Vill. L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th

14  Cir. 2004); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993); *Mendoza v.*

15  *Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1351 (9th Cir. 1980), *cert. denied*, 450 U.S. 912 (1981).

16    The notice plan approved by this Court is commonly used in class actions like this one and

17  constitutes valid, due and sufficient notice to class members, and constitutes the best notice

18  practicable under the circumstances.  The content of the court-approved notices complies with the

19  requirements of Rule 23(c)(2)(b).  Both the summary and long-form notices clearly and concisely

20  explained in plain English the nature of the action and the terms of the Settlement.  They provided

21  a clear description of who is a member of the class and the binding effects of class membership.

22  They explained how to exclude oneself from the class, how to object to the Settlement, how to

23  obtain copies of papers filed in the case and how to contact Class counsel. *See* Sherwood Decl., Ex.

24  A, B.  The notices also explained that they provided only a summary of the Settlement, that the

25  settlement agreement was on file with the District Court, and that the settlement agreement was

26  available online at: www.CRTDirectPurchaserAntitrustSettlement.com.  *See* Sherwood Decl., Ex.

27  A, B.  Consequently every provision of the Settlement was available to each class member.

28    The notice plan was implemented by the settlement administrator Gilardi & Co. LLC.

Sherwood Decl., ¶ 1.  Specifically, Gilardi printed and mailed 16,601 notices to class members through U.S. Mail and electronically mailed notices to 872 unique electronic mail addresses of class members. Sherwood Decl., ¶¶ 4, 5.  Gilardi also published notice in the November 23, 2013 Wall Street Journal. Sherwood Decl., ¶ 8, Ex. B. Gilardi also maintains the case website, at which class members can view and print the Class Notice, the Settlement Agreement, and the Preliminary Approval Order. Sherwood Decl., ¶ 6.  Gilardi also established a toll-free telephone number to answer Class members' questions in both English and Spanish.  Sherwood Decl. ¶ 7.

The notice plan is substantially identical to the notice plan used for the finally approved CPT, Philips, and Panasonic Settlements.  Saveri Decl., ¶ 23.

### C.    The Settlement Is "Fair, Adequate And Reasonable" and Should Be Granted Final Approval.

The law favors the compromise and settlement of class action suits. *See, e.g.*, *Byrd v. Civil Serv. Comm'n*, 459 U.S. 1217 (1983); *Churchill Village*, 361 F.3d at 576 (9th Cir. 2004); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  "The decision to approve or reject a settlement is committed to the sound discretion of the trial judge because he is 'exposed to the litigation and their strategies, positions and proof.'" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1988) (quoting *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 626 (9th Cir. 1982)).  In exercising such discretion, courts should give "proper deference to the private consensual decision of the parties . . . . [T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon*, 150 F.3d at 1027 (citation omitted).

It is well established in the Ninth Circuit that "voluntary conciliation and settlement are the preferred means of dispute resolution." *Officers for Justice*, 688 F.2d at 625.  "[T]here is an overriding public interest in settling and quieting litigation" and this is "particularly true in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *see also Utility*

10

*Reform Project v. Bonneville Power Admin.*, 869 F.2d 437, 443 (9th Cir. 1989).  In evaluating a

proposed class action settlement, the Ninth Circuit has recognized that:

> [T]he universally applied standard is whether the settlement is fundamentally fair, adequate and reasonable. The district court's ultimate determination will necessarily involve a balancing of several factors which may include, among others, some or all of the following: the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Officers for Justice*, 688 F.2d at 625 (citations omitted); *accord Torrisi*, 8 F.3d at 1375.

The court is entitled to exercise its "sound discretion" when deciding whether to grant final

approval.  *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d

939 (9th Cir. 1981); *Torrisi*, 8 F.3d at 1375.  "Where, as here, a proposed class settlement has been

reached after meaningful discovery, after arm's length negotiation, conducted by capable counsel,

it is presumptively fair." *M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819, 822

(D. Mass. 1987).

### 1.     The Settlement Provides Considerable Relief For The Class.

The consideration for the Settlement is substantial and provides considerable relief for the

class. The Settlement provides for a payment of $25,000,000, more than each of the finally

approved settlements with CPT, Philips, and Panasonic. *See* Saveri Decl., ¶ 19.  The Settlement

also compares favorably to settlements finally approved in other price-fixing cases.  *See, e.g.*,

*Fisher Bros. v. Mueller Brass Co.*, 630 F. Supp. 493, 499 (E.D. Pa. 1985) (recoveries equal to .1%,

.2%, 2%, .3%, .65%, .88%, and 2.4% of defendants' total sales).

Further, the settlement calls for LG to cooperate with Plaintiffs. Saveri Decl., ¶ 21.  This is

a valuable benefit because it will save time, reduce costs, and provide access to information,

witnesses, and documents regarding the CRT conspiracy that might otherwise not be available to

Plaintiffs.  *See In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1386 (D. Md. 1983)

(a defendant's agreement to cooperate with plaintiffs "is an appropriate factor for a court to

consider in approving a settlement").  "The provision of such assistance is a substantial benefit to

DIRECT PURCHASER PLAINTIFFS' MEMO ISO FINAL APPROVAL OF CLASS ACTION SETTLEMENT
WITH LG; Master File No. CV-07-5944-SC

the classes and strongly militates toward approval of the Settlement Agreement." *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 643 (E.D. Pa. 2003). *See also In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. at 1386 (concluding that commitment to cooperate is appropriate factor to consider in approving partial settlement); *In re Corrugated Container Antitrust Litig.*, Case No. M.D.L. 310, 1981 WL 2093, at *16 (S.D. Tex. June 4, 1981) ("The cooperation clauses constituted a substantial benefit to the class."). In addition, "[i]n complex litigation with a plaintiff class, 'partial settlements often play a vital role in resolving class actions.'" *Agretti v. ANR Freight Sys., Inc.*, 982 F.2d 242, 247 (7th Cir. 1992) (quoting Manual for Complex Litigation Second, § 30.46 (1986)).

Finally, the settlement preserves Plaintiffs' right to litigate against the non-settling defendants for the entire amount of Plaintiffs' damages based on joint and several liability. *See Corrugated Container*, 1981 WL 2093, at *17; Saveri Decl., ¶ 20 (Released claims do not preclude Plaintiffs from pursuing any and all claims against other non-settling defendants for the sales attributable to LG).

### 2. The Class Members' Positive Reaction Favors Final Approval.

There are no objectors to the Settlement and the class's reaction to the proposed settlement supports this Court granting final approval. Sherwood Decl., ¶ 10. In determining the fairness and adequacy of a proposed settlement, the Court also should consider "the reaction of the class members to the proposed settlement." *Churchill Village*, 361 F.3d at 575; *Hanlon*, 150 F.3d at 1026. "It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004); *see also*, *In re Fleet/Norstar Sec. Litig.*, 935 F. Supp. 99, 107 (D.R.I. 1996).

Pursuant to the Court's order, approximately 17,473 Class Notices were mailed or electronically mailed to class members throughout the United States. *See* Sherwood Decl., ¶¶ 4, 5. When presented with the material financial terms of the proposed settlement, no members of the class objected to the settlement. Sherwood Decl., ¶ 10. In addition, only 23 class members opted

DIRECT PURCHASER PLAINTIFFS' MEMO ISO FINAL APPROVAL OF CLASS ACTION SETTLEMENT
WITH LG; Master File No. CV-07-5944-SC

out of the class.  *See* Sherwood Decl., ¶¶ 4, 5, 10.  The reaction of the class to the proposed

settlement therefore supports the conclusion that the proposed settlement is fair, adequate and

reasonable.  *Pallas v. Pac. Bell*, No. C-89-2373 DLJ, 1999 WL 1209495, at *8 (N.D. Cal. 1999)

("The small percentage — less than one percent — of persons raising objections is a factor

weighing in favor of approval of the settlement."); *Bynum v. Dist. of Columbia*, 412 F. Supp. 2d 73,

77 (D.D.C. 2006) ("The low number of opt outs and objectors (or purported objectors) supports the

conclusion that the terms of the settlement were viewed favorably by the overwhelming majority of

class members."); *see also*, *Arnold v. Arizona Dept. of Pub. Safety*, No. CV-01-1463-PHX-LOA,

2006 WL 2168637, at *10 (D. Ariz. July 31, 2006); *In re Patriot Am. Hospitality Inc. Sec. Litig.*,

No. MDL C-00-1300 VRW, 2005 WL 3801594, at *2 (N.D. Cal. Nov. 30, 2005).  The inference of

class's approval of the settlement is even stronger where, as here, much of the class consists of

sophisticated business entities.  *See Linerboard*, 321 F. Supp. 2d at 629.

### 3. The Settlement Eliminates Significant Risk To The Class.

While Plaintiffs believe their case is strong, the settlement eliminates significant risks they

would face if the action were to proceed. Plaintiffs would bear the burden of establishing liability,

impact and damages. *See, e.g.*, *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 118 (2d Cir.

2005) ("Indeed, the history of antitrust litigation is replete with cases in which antitrust plaintiffs

succeeded at trial on liability, but recovered no damages, or only negligible damages, at trial, or on

appeal."); *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 475 (S.D.N.Y. 1998); *In

re Sumitomo Copper Litig.*, 189 F.R.D. 274, 283 (S.D.N.Y. 1999).  This is an important

consideration because Defendants have vowed to aggressively defend this action.  Thus, the

Settlement is in the best interest of the Class because it eliminates the risks of continued litigation,

while at the same time creating a substantial cash recovery and obtaining certain defendants'

cooperation.

Continued litigation against Defendants also would involve significant additional expenses

and protracted legal battles, which are avoided through the Settlement.  *In re Visa

Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 510 (E.D.N.Y. 2003), *aff'd* 396 F.3d 96

(2d Cir. 2005) ("The potential for this complex litigation to result in enormous expense, and to

13

continue for a long time, was great."); *Marisol A. ex rel. Forbes v. Giuliani*, 185 F.R.D. 152, 163 (S.D.N.Y. 1999) (noting that trial would last at least five months and require testimony from numerous witnesses and experts); *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000) ("Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them.").

### 4. The Settlement Is the Product of Arm's-Length Negotiations Between the Parties and The Recommendation of Experienced Counsel Favors Approval.

This class action has been vigorously litigated.  Class Counsel has analyzed millions of documents produced by defendants and others.  They have also conducted an independent investigation of the facts and analyzed Defendants' sales and pricing data.

The negotiations occurred over a span of several weeks and involved telephonic and a face to face meeting and the review of industry materials and documents.  They were contested and conducted in the utmost good faith. Saveri Decl., ¶ 18.  Counsel's judgment that the Settlement is fair and reasonable is entitled to great weight.  *See Nat'l Rural Telcomms. Coop.*, 221 F.R.D. at 528 ("'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation."); *accord Bellows v. NCO Fin. Sys.*, 2008 U.S. Dist. LEXIS 103525, at *22 (S.D. Cal. Dec. 2, 2008); *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002); *Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273, 288–89 (D. Colo. 1997); *Officers for Justice*, 688 F.2d at 625.

While the Plaintiffs believe they have meritorious claims, Defendants have asserted that they have strong and valid defenses which would serve to eliminate their liability and/or damage exposure to the Class.  The parties entered into the Settlement to eliminate the burden, and expense and risks of further litigation.

For all of these reasons, the cash settlement obtained represents an excellent recovery and is certainly "fair, adequate and reasonable" to the Class.  Accordingly, final approval should be granted.

**D.      The Plan of Allocation Is "Fair, Adequate and Reasonable" and Therefore Should Be Approved.**

The Class Notice, which was disseminated in accordance with the Preliminary Approval Order, outlined the following proposed plan for allocating the settlement proceeds:

> In the future, each Settlement Class member's *pro rata* share of the Settlement Fund will be determined by computing each valid claimant's total CRT Product purchases divided by the total valid CRT Product purchases claimed. This percentage is multiplied to the Net Settlement Fund (total settlements minus all costs, attorneys' fees, and expenses) to determine each claimant's *pro rata* share of the Settlement Fund. To determine your CRT Product purchases, CRT tubes (color display and color picture) are calculated at full value (100%) while CRT televisions are valued at 50% and CRT computer monitors are valued at 75%. In summary, all valid claimants will share in the settlement funds on a *pro rata* basis determined by the CRT value of the product you purchased — tubes 100%, monitors 75% and televisions 50%.

*See* Sherwood Decl., Ex. A, at 9.

Although Plaintiffs have proposed deferring the distribution of funds until a later date, Plaintiffs have informed the class that any distribution will be made on a *pro rata* basis.  A plan of allocation of class settlement funds is subject to the "fair, reasonable and adequate" standard that applies to approval of class settlements.  *In re Citric Acid Antitrust Litig.*, 145 F. Supp. 2d 1152, 1154 (N.D. Cal. 2001).  A plan of allocation that compensates class members based on the type and extent of their injuries is generally considered reasonable. *In re Computron Software, Inc.*, 6 F. Supp. 2d 313, 321 (D.N.J. 1998). Here the proposed distribution will be on a *pro rata* basis, with no class member being favored over others.  This type of distribution has frequently been determined to be fair, adequate, and reasonable.  *See In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M-02-1486 PJH, Dkt. No. 2093, p.2 (Oct. 27, 2010) (Order Approving Pro Rata Distribution);  *In re Vitamins Antitrust Litig.*, No. 99-197 TFH, 2000 WL 1737867, at *6 (D.D.C. Mar. 31, 2000) ("Settlement distributions, such as this one, that apportions funds according to the relative amount of damages suffered by class members, have repeatedly been deemed fair and reasonable."); *In re Lloyds' Am. Trust Fund Litig.*, No. 96 Civ.1262 RWS, 2002 WL 31663577, at *19 (S.D.N.Y. Nov. 26, 2002) ("*pro rata* allocations provided in the Stipulation are not only reasonable and rational, but appear to be the fairest method of allocating the settlement benefits."); *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 135 (S.D.N.Y.

15

1997) ("*pro rata* distribution of the Settlement on the basis of Recognized Loss will provide a straightforward and equitable nexus for allocation and will avoid a costly, speculative and bootless comparison of the merits of the Class Members' claims").

In summary, class members will submit their purchase information for both CRT tubes and finished products — televisions and monitors containing CRTs.  All class members will share in the settlement funds on a *pro rata* basis determined by the CRT value of the product they purchased — tubes 100%, monitors 75% and televisions 50%.

The proposed plan of allocation is identical to the plan of allocation for the finally approved CPT, Philips, and Panasonic settlements.  Saveri Decl., ¶ 23.  Accordingly, the plan of allocation done on a *pro rata* basis in the instant case is "fair, adequate and reasonable" to the Class and final approval of the plan of allocation should be granted.

## V.   OBJECTIONS BY CLASS MEMBERS

As indicated above, there were no objections to the Settlement.

## VI.   EXCLUSIONS

Class members were advised of the right to be excluded from the Settlement Class, which could be accomplished through mailing a request for exclusion to the Settlement Administrator not later than January 11, 2013.  twenty-three (23) requests for exclusion were received from Class members. Sherwood Decl., ¶ 9, Ex. C.  LG has been provided copies of these requests for exclusion.

///

///

///

DIRECT PURCHASER PLAINTIFFS' MEMO ISO FINAL APPROVAL OF CLASS ACTION SETTLEMENT
WITH LG; Master File No. CV-07-5944-SC

## VII.  CONCLUSION

For the foregoing reasons set forth herein, Plaintiffs respectfully submit that the Court should enter an order granting the relief requested by this motion: (i) granting final approval of the Settlement; and (ii) granting final judgment and dismissal with prejudice as to LG.

Dated: February 15, 2013.

Respectfully submitted,

/s/ *Guido Saveri*

Guido Saveri (22349)
R. Alexander Saveri (173102)
Geoffrey C. Rushing (126910)
Cadio Zirpoli (179108)
SAVERI & SAVERI, INC.
706 Sansome Street
San Francisco, CA  94111
Telephone:  (415) 217-6810
Facsimile:  (415) 217-6813

*Interim Lead Counsel For Plaintiffs*

Joseph W. Cotchett
Steven N. Williams
Adam J. Zapala
COTCHETT, PITRE & McCARTHY, LLP
840 Malcolm Road
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577

Bruce L. Simon
Aaron M. Sheanin
PEARSON, SIMON, WARSHAW & PENNY LLP
44 Montgomery Street, Suite 2450
San Francisco, CA 94104
Telephone:  (415) 433-9000
Facsimile:  (415) 433-9008

H. Laddie Montague, Jr.
Ruthanne Gordon
Charles P. Goodwin
Candice Enders
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Telephone: (800) 424-6690
Facsimile: (215) 875-4604

DIRECT PURCHASER PLAINTIFFS' MEMO ISO FINAL APPROVAL OF CLASS ACTION SETTLEMENT WITH LG; Master File No. CV-07-5944-SC

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Michael P. Lehmann
HAUSFELD LLP
44 Montgomery Street, Suite 3400
San Francisco, CA 94104
Telephone:  (415) 633-1908
Facsimile:  (415) 358-4980

Gary Specks
KAPLAN FOX
423 Sumac Road
Highland Park, IL 60035
Telephone: (847) 831-1585
Facsimile: (847) 831-1580

Douglas A. Millen
William H. London
FREED KANNER LONDON & MILLEN
2201 Waukegan Road
Suite 130
Bannockburn, IL 60015
Telephone: (224) 632-4500
Facsimile: (224) 632-4519

Eric B. Fastiff
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

W. Joseph Bruckner
Elizabeth R. Odette
LOCKRIDGE GRINDAL NAUEN P.L.L.P
100 Washington Avenue S
Suite 2200
Minneapolis, MN 55401
Telephone:  (612) 339-6900
Facsimile: (612) 339-0981

*Attorneys for Plaintiffs*