**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| AT&T MOBILITY LLC; AT&T CORP.; AT&T SERVICES, INC.; BELLSOUTH TELECOMMUNICATIONS, INC.; PACIFIC BELL TELEPHONE COMPANY; AT&T OPERATIONS, INC.; AT&T DATACOMM, INC.; SOUTHWESTERN BELL TELEPHONE COMPANY, <br> *Plaintiffs-Appellants*, <br> v. <br> AU OPTRONICS CORPORATION; AU OPTRONICS CORPORATION AMERICA, INC; CHI MEI CORPORATION; CHI MEI OPTOELECTRONICS CORPORATION; CHI MEI OPTOELECTRONICS USA, INC.; CMO JAPAN CO., LTD.; NEXGEN MEDIATECH, INC.; NEXGEN MEDIATECH USA, INC.; CHUNGHWA PICTURE TUBES LTD.; TATUNG COMPANY OF AMERICA, INC.; EPSON IMAGING DEVICES CORPORATION; EPSON ELECTRONICS AMERICA, INC.; HANNSTAR DISPLAY CORPORATION; LG DISPLAY CO., LTD.; LG DISPLAY AMERICA, INC.; SAMSUNG ELECTRONICS CO., LTD.; SAMSUNG | No. 11-16188 <br><br> D.C. No. <br> 3:09-cv-04997-SI <br><br><br> OPINION |

SEMICONDUCTOR, INC.; SAMSUNG
ELECTRONICS AMERICA, INC.; SHARP
CORPORATION; SHARP ELECTRONICS
CORPORATION; TOSHIBA
CORPORATION; TOSHIBA AMERICA
ELECTRONICS COMPONENTS, INC.;
TOSHIBA MOBILE DISPLAY
TECHNOLOGY CO., LTD.; TOSHIBA
AMERICA INFORMATION SYSTEMS,
INC.,
    *Defendants-Appellees*.

Appeal from the United States District Court
for the Northern District of California
Susan Illston, District Judge, Presiding

Argued and Submitted
November 9, 2012—San Francisco, California

Filed February 14, 2013

Before: Ronald M. Gould and Milan D. Smith, Jr.,
Circuit Judges, and Kevin T. Duffy, District Judge.[*]

Opinion by Judge Milan D. Smith, Jr.

---

[*] The Honorable Kevin Thomas Duffy, District Judge for the U.S. District Court for the Southern District of New York, sitting by designation.

## SUMMARY[**]

### Due Process / Application of State Law

The panel reversed the district court's partial dismissal of an antitrust action alleging a global conspiracy to fix the prices of LCD panels.

The panel held that with respect to state-law claims based on purchases that occurred outside California, the defendants' alleged underlying conduct involved not just the indirect purchase of price-fixed goods, but also the conspiratorial conduct that led to the sale of those goods. Accordingly, to the extent a defendant's conspiratorial conduct was sufficiently connected to California, and was not "slight and casual," the application of California antitrust law to that conduct would be neither arbitrary nor fundamentally unfair, and would not violate the Due Process Clause.

### COUNSEL

Ethan P. Schulman (argued), Crowell & Moring LLP, San Francisco, California, for Plaintiffs-Appellants.

Richard S. Taffet (argued), Bingham McCutchen LLP, New York, New York, for Defendants-Appellees.

Emilio E. Varanini (argued), for Amicus Curiae the State of California.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**OPINION**

M. SMITH, Circuit Judge:

The district court has certified to us pursuant to 28 U.S.C. § 1292(b) "the question whether the application of California antitrust law to claims against defendants based on purchases that occurred outside California would violate the Due Process Clause of the United States Constitution." Because the underlying conduct in this case involves not just the indirect purchase of price-fixed goods, but also the conspiratorial conduct that led to the sale of those goods, we answer in the negative. To the extent a defendant's conspiratorial conduct is sufficiently connected to California, and is not "slight and casual," the application of California law to that conduct is "neither arbitrary nor fundamentally unfair," and the application of California law does not violate that defendant's rights under the Due Process Clause. *See Allstate Ins. Co. v. Hague*, 449 U.S. 302, 312–13 (1981).

We therefore reverse the district court's order dismissing Plaintiffs' California law claims,[1] and remand for further proceedings consistent with this opinion.

---

[1] We focus on Plaintiffs' claims under the California Cartwright Act, Cal. Bus. & Prof. Code §§ 16700–16770 (Cartwright Act or Act), but the principles articulated herein apply equally to Plaintiffs' claims under California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq*. (UCL). The UCL provides a cause of action for harms caused by "any unlawful, unfair or fraudulent business act or practice." *Id*. It thereby "'borrows' violations from other laws by making them independently actionable as unfair competitive practices." *Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937, 943 (Cal. 2003). Because a violation of the Cartwright Act is, by definition, actionable under the UCL, we do not belabor our analysis in this case with respect to Plaintiffs' UCL claims.

## BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs-Appellants AT&T Mobility LLC, AT&T Corporation, AT&T Services, Inc., BellSouth Telecommunications, Inc., Pacific Bell Telephone Company, AT&T Operations, Inc., AT&T Datacomm, Inc., and Southwestern Bell Telephone Company (collectively, Plaintiffs) are entities that provide voice and data communication services, and also sell mobile wireless handsets. Collectively, they do business in many parts of the world, including in California, though only one of them alleges that its principal place of business is located in California. Defendants-Appellees AU Optronics Corporation of America, Inc., Chi Mei Corporation, Chi Mei Optoelectronics Corporation, Chi Mei Optoelectronics USA, Inc., CMO Japan Co., Ltd., Nexgen Mediatech, Inc., Nexgen Mediatech USA, Inc., Chunghwa Picture Tubes Ltd., Tatung Company of America, Inc., Epson Imaging Devices Corporation, Epson Electronics America, Inc., and Hannstar Display Corporation (collectively, Defendants)[2] are manufacturers and distributors of liquid crystal display (LCD) panels, whose respective headquarters and principal places of business are located in Asia and the United States, including California. Plaintiffs allege that between 1996 and 2006, they purchased billions of dollars worth of mobile handsets containing Defendants' LCD panels. They further allege that the prices they paid for those handsets were artificially inflated because Defendants had orchestrated a global conspiracy to fix the prices of LCD panels.

---

[2] Since oral argument in this case, the parties have stipulated to the dismissal of this appeal with respect to a number of the Defendants. Defendants Chunghwa Picture Tubes Ltd., Tatung Company of America, Inc., and Hannstar Display Corp. remain as Appellees.

6 AT&T MOBILITY LLC v. AU OPTRONICS CORP.

Plaintiffs sued Defendants in the United States District Court for the Northern District of California under the Clayton Act,[3] the Sherman Act,[4] California's Cartwright Act,[5] California's UCL, and, in the alternative, the laws of a number of other states, seeking to recover damages caused by their direct and indirect purchases of LCD panels from Defendants. The Cartwright Act provides a private cause of action for indirect purchasers of price-fixed goods, whereas the antitrust laws of some other states do not. *See Clayworth v. Pfizer, Inc.*, 233 P.3d 1066, 1082–83 (Cal. 2010) (discussing the effect of *Ill. Brick Co. v. Illinois*, 431 U.S. 720 (1977), and California's legislative response). None of Plaintiffs' purchases at issue in this case was made in California.

After filing their initial complaint, Plaintiffs filed a first amended complaint (FAC). Defendants moved to dismiss Plaintiffs' California law claims in the FAC on the ground that the Due Process Clause of the Fourteenth Amendment forbids the application of California law to those claims. The district court granted Defendants' motion to dismiss, holding that the Due Process Clause requires that "in order to invoke the various state laws at issue, plaintiffs must be able to allege that 'the occurrence or transaction giving rise to the litigation'—plaintiffs' purchases of allegedly price-fixed goods—occurred in the various states."

---

[3] 15 U.S.C. §§ 12–27; 29 U.S.C. §§ 52–53.

[4] 15 U.S.C. §§ 1–7.

[5] Cal. Bus. & Prof. Code §§ 16700–16770.

The district court granted Plaintiffs leave to amend their complaint to specify each state in which the "purchases of price-fixed goods" were made. In this second amended complaint (SAC), Plaintiffs also included more detailed allegations regarding Defendants' California conduct that they claimed violated California law. They alleged that "defendants engaged in and implemented their conspiracy in the U.S. through the offices they maintained in California," and that Defendants entered into agreements to fix the prices of LCD panels in California. Plaintiffs offered significant detail as to what conspiratorial conduct took place in California. They alleged, for example, that specific employees of particular Defendants, operating from offices in California, participated in illegally obtaining and sharing their co-conspirators' pricing information.

Defendants moved to dismiss the SAC, in response to which Plaintiffs maintained that "they may pursue all of their claims under California law because defendants' price-fixing conduct in California creates the significant contacts between California and plaintiffs' claims required by Due Process." The district court disagreed, and dismissed Plaintiffs' California law claims that were not based on purchases that took place in California.

The district court granted Plaintiffs' motion to certify the dismissal order for immediate appeal under 28 U.S.C. § 1292(b), and we granted permission to appeal.

## STANDARD OF REVIEW

We review de novo a dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). *Frey v. California.*, 982 F.2d 399, 401 (9th Cir. 1993). We also

8      AT&T MOBILITY LLC v. AU OPTRONICS CORP.

"review de novo questions of law, including due process claims." *Buckingham v. Sec'y of U.S. Dept. of Agr.*, 603 F.3d 1073, 1080 (9th Cir. 2010).

## DISCUSSION

Plaintiffs challenge the district court's conclusion that it violates Defendants' due process rights to apply California antitrust law to claims involving the purchase of price-fixed goods outside of California. They allege that the application of California law to all Defendants is constitutionally permissible because Defendants conspired, in California and in violation of California law, to fix the prices of goods that Plaintiffs eventually purchased elsewhere.

In its order dismissing Plaintiffs' FAC, the district court grounded its due process analysis on the view that "[i]n a price-fixing case, the relevant 'occurrence or transaction' is the plaintiff's purchase of an allegedly price-fixed good." Accordingly, the court concluded that the application of the antitrust laws of any state other than the state where the Plaintiffs purchased the allegedly price-fixed goods would violate Defendants' rights to due process. The court applied the same reasoning in its order dismissing Plaintiffs' SAC, which we review on interlocutory appeal.

The district court's conclusion ignores conduct that may give rise to a cause of action under the Cartwright Act. A modern "price-fixing case" is not a creature of common law, but instead arises under federal antitrust laws[6] or the antitrust

---

[6] *See, e.g.*, Sherman Antitrust Act, 15 U.S.C. §§ 1–7; Clayton Antitrust Act, 15 U.S.C. §§ 12–27, 29 U.S.C. §§ 52–53.

laws of various states.[7] The "relevant transaction or occurrence" for purposes of a due process analysis is therefore informed, at least in part, by the scope of conduct that gives rise to liability under the relevant statutes. A reading of the plain text of the Cartwright Act reveals that the district court's place-of-purchase focus severely truncates the scope of anticompetitive conduct that the Act proscribes.

The Cartwright Act enumerates a relatively broad array of anticompetitive and conspiratorial conduct that constitutes a "trust." Cal. Bus. & Prof. Code § 16720. The Act declares that "every trust is unlawful, against public policy and void," *id*. § 16726, and provides a private right of action to "[a]ny person who is injured in his or her business or property by reason of anything forbidden or declared unlawful by this chapter," *id*. § 16750.[8] The unlawful activities described in section 16720 include the sale of price-fixed goods in California. *Id*. § 16720(d). But that section includes other conduct, such as the initial agreement to fix those prices—without reference to where those goods will eventually be sold. As the California Supreme Court has explained:

> The Act also reaches deep in proscribing anticompetitive conduct: it prohibits two or more persons "[t]o make or enter into or

---

[7] "Today, every state (and the District of Columbia) has some kind of antitrust law . . . ." Stephen Calkins, *Perspectives on State and Federal Antitrust Enforcement*, 53 Duke L.J. 673, 678 (2003).

[8] The question of whether the Cartwright Act provides a cause of action based exclusively on out-of-state purchases is distinct from the inquiry of whether such an application would violate the Due Process Clause, and is not at issue in this case.

> execute or carry out any contracts, obligations or agreements of any kind or description, by which they . . . [a]gree to pool, combine or directly or indirectly unite any interests that they may have connected with the sale or transportation of any . . . article or commodity, that its price *might in any manner* be affected." (Bus. & Prof.Code, § 16720, subd. (e)(4), italics added.)  In so doing, the Act reaches beyond the Sherman Act to threats to competition in their incipiency . . . .

*Cianci v. Superior Court*, 710 P.2d 375, 383 (Cal. 1985) (ellipses and alterations in original); *see also Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 986 (9th Cir. 2000) ("Under both California and federal law, agreements fixing or tampering with prices are illegal per se." (quoting *Oakland-Alameda Cnty. Builders' Exch. v. F. P. Lathrop Constr. Co.*, 482 P.2d 226, 232 (Cal. 1971) (in bank))). Rightly understood then, the "transaction or occurrence" proscribed by the Cartwright Act includes not only the sale of price-fixed goods, but the full extent of incipient conspiratorial conduct described in section 16720 of the Act.

Defendants argue that the application of California law would nonetheless violate their due process rights because Plaintiffs' purchases of price-fixed goods all took place *outside* of California.  However, the United States Supreme Court held long ago that "[o]bjections which are founded upon the Fourteenth Amendment must . . . be directed[] not to the existence of the power to impose liability for an injury outside state borders, but to the manner of its exercise as being so arbitrary or unreasonable as to amount to a denial of due process."  *Alaska Packers Ass'n v. Indus. Accident*

*Comm'n*, 294 U.S. 532, 541–42 (1935) (applying California Workmen's Compensation Act to injuries sustained while employee was working in Alaska, where employment contract was executed in California).  Articulating what would amount to a denial of due process in that context, the Court later explained that "for a State's substantive law to be selected in a constitutionally permissible manner, that State must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair." *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 312–13 (1981).[9]  The Due Process Clause thus requires a court to invalidate the application of a state's law only where the state has "no significant contact or significant aggregation of contacts, creating state interests, with the parties and the occurrence or transaction." *See id*. at 308, 320.

In *Allstate*, the Court upheld the application of Minnesota insurance law to an insurance policy delivered in Wisconsin to a Wisconsin resident who subsequently died in an automobile accident that took place in Wisconsin and involved another Wisconsin resident. *Id*. at 320.  Following the accident, the decedent's wife moved to Minnesota and brought suit against the insurer in Minnesota court seeking a declaration that Minnesota law applied to her late husband's automobile insurance policy. *Id*. at 305–06.  The Minnesota Supreme Court upheld the application of Minnesota insurance law, and the United States Supreme Court affirmed. *Id*. at

---

[9] Though *Allstate* was a plurality opinion joined by four of the eight justices who heard the case, "[t]he dissenting Justices were in substantial agreement with this principle," and the Court later ratified it as controlling precedent.  *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 818–19, 821–22 (1985).

306–07, 320. The plurality cited three contacts Minnesota had with the case and the parties: (1) the plaintiff's husband's daily commute to Minnesota and his membership in that state's workforce prior to his death; (2) Allstate's general business presence in Minnesota; and (3) the plaintiff's Minnesota residency. *Id*. at 313–20.

As the somewhat tenuous nature of the Minnesota contacts illustrates, the Court's decision in *Allstate* places only "modest restrictions on the application of forum law," *Shutts*, 472 U.S. at 818, and most commentators have viewed *Allstate* as setting a highly permissive standard.[10] Neither the purchase and delivery of the relevant insurance policy nor the automobile accident that the plaintiff sought to recover on occurred in Minnesota. By comparison, Plaintiffs claim that some portion of Defendants' alleged illegal price-fixing conduct took place within California. Wherever the outer limit of due process constraints may lie, it is clear to us that Defendants' alleged illegal activity within California created more significant contacts with California than the contacts described in *Allstate* created with Minnesota.

In contrast to the broad scope of the *Allstate* plurality's search for contacts, the district court's guiding principle makes a single contact—the location of Plaintiffs' injury—dispositive. Put differently, the district court's place-

---

[10] *See, e.g.*, Lea Brilmayer & Charles Norchi, *Federal Extraterritoriality and Fifth Amendment Due Process*, 105 Harv. L. Rev. 1217, 1240 (1992) ("*Hague* signalled judicial willingness to allow states extreme latitude in applying their own laws."); Russell J. Weintraub, *Who's Afraid of Constitutional Limitations on Choice of Law?*, 10 Hofstra L. Rev. 17, 17 (1981) ("*Allstate Insurance Co. v. Hague* confirms the view that the due process and full faith and credit clauses impose few limitations on choice of law . . . ." (footnotes omitted)).

AT&T MOBILITY LLC v. AU OPTRONICS CORP.     13

of-purchase rule represents a return to the "wooden" and "now largely abandoned" *lex loci delicti* doctrine—an approach the plurality explicitly rejected in *Allstate*. *See Allstate*, 449 U.S. at 316 n.22. The *raison d'etre* of choice of law analysis, particularly in the context of tort-like suits,[11] is the common understanding that "a set of facts giving rise to a lawsuit, or a particular issue within a lawsuit, may justify, in constitutional terms, application of the law of more than one jurisdiction." *Allstate*, 449 U.S. at 307; *see also Shutts*, 472 U.S. at 823 ("[I]n many situations a state court may be free to apply one of several choices of law."). We see no reason why the due process constraints on the application of state antitrust law should, unlike any other area of law, follow the obsolete *lex loci delicti* rule.

Instead, the relevant "occurrence or transaction" in this case includes not only the sale of price-fixed goods, but Defendants' alleged agreements and conspiracies to fix LCD prices. Accordingly, the district court should have considered *all* of the Defendants' conduct within California leading to the sale of price-fixed goods outside the state when determining whether California law could be applied without offending Defendants' due process rights. *See, e.g.*, *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 590 (9th Cir. 2012) ("California has a constitutionally sufficient aggregation of contacts to the claims of each putative class member in this [fraudulent misrepresentation] case because Honda's

---

[11] *See* Restatement (Second) of Conflict of Laws § 145 (1971) (when determining what state has the most significant relationship to the occurrence and the parties, contacts to consider include: the place where the injury occurred; the place where the conduct causing the injury occurred; the domicile, residence, nationality, place of incorporation and place of business of the parties; and the place where the relationship, if any, between the parties is centered).

corporate headquarters, the advertising agency that produced the allegedly fraudulent misrepresentations, and one fifth of the proposed class members are located in California."); *Sullivan v. Oracle Corp.*, 662 F.3d 1265, 1270–71 (9th Cir. 2011) (relying on both the location of defendant's headquarters and the fact that "the decision to classify Plaintiffs as teachers and to deny them overtime pay was made in California," to conclude that the contacts were "clearly sufficient" to apply California law to work performed within California by nonresident employees).  Thus, in-state conduct that causes out-of-state injuries can be relevant to a due process analysis, in the antitrust context and otherwise.

Finally, we conclude that the perpetration of anticompetitive activities within California "creat[es] state interests" in applying California law to that conduct.  *See Allstate*, 449 U.S. at 308, 320.  While Defendants argue that the purpose of antitrust laws is to compensate consumers, the Supreme Court of California has found otherwise with respect to the Cartwright Act:

> From its inception, the Cartwright Act has always been focused on the punishment of violators for the larger purpose of promoting free competition.  It is, like antitrust laws generally, about the protection of *competition*, not *competitors*.  Private damage awards are just a tool by which these procompetitive purposes are carried out . . . .

*Clayworth*, 233 P.3d at 1083 (internal quotations and citations omitted).  Applying California law to anticompetitive conduct undertaken within California advances the Cartwright Act's "overarching goals of maximizing effective deterrence of

AT&T MOBILITY LLC v. AU OPTRONICS CORP.     15

antitrust violations, enforcing the state's antitrust laws against those violations that do occur, and ensuring disgorgement of any ill-gotten proceeds." *Id*. at 1070; *see also Diamond Multimedia Sys., Inc. v. Superior Court*, 968 P.2d 539, 557 (Cal. 1999) ("California also has a legitimate and compelling interest in preserving a business climate free of fraud and deceptive practices.").

Nor would the application of California law impermissibly undermine the policies of other states, as Defendants contend. Because the Due Process Clause does nothing but circumscribe the universe of state laws that can be constitutionally applied to a given case, we "need not . . . balance the competing interests of California and [other states]." *United Farm Workers of Am., AFL-CIO v. Ariz. Agric. Emp't Relations Bd.*, 669 F.2d 1249, 1256 (9th Cir. 1982); *see also Allstate*, 449 U.S. at 308 n.10 ("[T]he Court has since abandoned the weighing-of-interests requirement."). Objections based on the interests of other states are more properly raised under a choice of law analysis,[12] or potentially under a challenge predicated on some other provision of the U.S. Constitution.[13] Defendants raised no such arguments before the district court.

---

[12] "In this complex and murky area, it is indeed easy to lose one's bearings and to slip from a focus on the constitutional limitations on choice of law to the choice of law rules themselves." *Soo Line R.R. v. Overton*, 992 F.2d 640, 649 (7th Cir. 1993) (Ripple, J., dissenting).

[13] "Questions of legislative jurisdiction have not often played a significant role in state antitrust adjudication . . . . Where the issue has arisen, the courts have dealt with it as a question of state power under the commerce clause." Herbert Hovenkamp, *State Antitrust in the Federal Scheme*, 58 Ind. L.J. 375, 392 (1983).

In light of the above, we conclude that anticompetitive conduct by a defendant within a state that is related to a plaintiff's alleged injuries and is not "slight and casual"[14] establishes a "significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair." *Allstate*, 449 U.S. at 112–13. Specifically, we hold in this case that the Cartwright Act can be lawfully applied without violating a defendant's due process rights when more than a *de minimis* amount of that defendant's alleged conspiratorial activity leading to the sale of price-fixed goods to plaintiffs took place in California. Such a defendant cannot reasonably complain that the application of California law is arbitrary or unfair when its alleged conspiracy took place, at least in part, in California.[15] *See Shutts*, 472 U.S. at 822 ("When considering fairness in this context, an important element is the expectation of the parties."); *Allstate*, 449 U.S. at 317–18 ("By virtue of its presence, Allstate can hardly claim unfamiliarity with the laws of the host jurisdiction and surprise that the state courts might apply forum law to litigation in which the company is involved.").

## CONCLUSION

"A state court is rarely forbidden by the Constitution to apply its own state's law," *Sullivan*, 662 F.3d at 1271, especially where, as here, the case is predicated upon

---

[14] *Allstate*, 449 U.S. at 333 (Powell, J., dissenting).

[15] As the district court has already noted, the requirements of the Due Process Clause must be satisfied individually with respect to each defendant in a case. *Cf. Shutts*, 472 U.S. at 821–22 (contacts must be related to each member of the plaintiff class).

violations of a state's law that allegedly occurred within that state. The relevant transaction or occurrence in a price-fixing case involves both the conspiracy to illegally fix prices and the sale of price-fixed goods. The district court therefore erred in holding that the Due Process Clause will permit the application of California law in a price-fixing case *only* when a plaintiff purchased the price-fixed goods in California.

We reverse the district court's order dismissing Plaintiffs' claims under the Cartwright Act and the UCL. We remand to the district court for it to make an individual determination consistent with this opinion with respect to each Defendant as to whether Plaintiffs have alleged sufficient conspiratorial conduct within California, that is not "slight and casual," such that the application of California law to that Defendant is "neither arbitrary nor fundamentally unfair."

**REVERSED and REMANDED.**