1
David J. Burman (admitted *pro hac vice*)
Cori G. Moore (admitted *pro hac vice*)

2
Eric J. Weiss (admitted *pro hac vice*)
Nicholas H. Hesterberg (admitted *pro hac vice*)

3
**PERKINS COIE LLP**

4
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099

5
Telephone:      206.359.8000
Facsimile:      206.359.9000

6

7
Joren Bass, Bar No. 208143
JBass@perkinscoie.com

8
**PERKINS COIE LLP**
Four Embarcadero Center, Suite 2400
San Francisco, CA  94111-4131

9
Telephone:      415.344.7120
Facsimile:      415.344.7320

10

11
Attorneys for Plaintiff Costco Wholesale Corporation
[Additional Counsel Listed on Signature Page]

12
UNITED STATES DISTRICT COURT

13
NORTHERN DISTRICT OF CALIFORNIA

14
SAN FRANCISCO DIVISION

15
IN RE: CATHODE RAY TUBE (CRT)
ANTITRUST LITIGATION

16

17
This Document Relates to:

18
*Electrograph Systems, Inc., et al. v. Hitachi, Ltd., et al.*, No. 11-cv-01656;

19

20
*Alfred H. Siegel, as Trustee of the Circuit City Stores, Inc. Liquidating Trust v. Hitachi, Ltd., et al.*, No. 11-cv-05502;

21

22
*Best Buy Co., Inc., et al. v. Hitachi, Ltd., et al.*, No. 11-cv-05513;

23
*Target Corp, et al. v. Chunghwa Picture Tubes, Ltd., et al.*, No. 11-cv-05514;

24

25
*Interbond Corporation of America v. Hitachi, et al.*, No. 11-cv-06275;

26

27

28

Master File No. 3:07-cv-05944-SC
MDL No. 1917

**DIRECT ACTION PLAINTIFFS'
NOTICE OF MOTION AND MOTION
FOR LEAVE TO FILE AMENDED
COMPLAINTS; MEMORANDUM OF
POINTS AND AUTHORITIES IN
SUPPORT THEREOF**

Date:      May 1, 2013 (tentative)
Time:      9:30 a.m. (tentative)
Place:     JAMS Resolution Center, Two
           Embarcadero Center, Suite 1500
Judge:     Honorable Samuel Conti
Special Master: Hon. Charles A. Legge (Ret.)

PLAINTIFFS' MOTION FOR LEAVE TO FILE AMENDED COMPLAINTS
Case No. 3:07-05944-SC
MDL No. 1917

1  *Office Depot, Inc. v. Hitachi Ltd., et al.*, No. 11-cv-06276;

2

3  *CompuCom Systems, Inc. v. Hitachi, Ltd., et al.*, No. 11-cv-06396;

4  *Costco Wholesale Corporation v. Hitachi, Ltd., et al.*, No. 11-cv-06397;

5

6  *P.C. Richard & Son Long Island Corporation, et al., v. Hitachi, Ltd., et al.*, No. 12-cv-02648;

7

8  *Schultze Agency Services, LLC, et al. v. Hitachi, Ltd., et al.*, No. 12-cv-02649.

9

10

11  ## NOTICE OF MOTION AND MOTION

12  TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

13  PLEASE TAKE NOTICE that on May 1, 2013 at 9:30 a.m. or as soon thereafter as the

14  matter can be heard before the Honorable Charles A. Legge (Ret.) at the office of JAMS, Two

15  Embarcadero Center, Suite 1500, San Francisco, California, the moving plaintiffs listed on the

16  signature pages below (collectively, "Plaintiffs") will and hereby do move this Court, pursuant to

17  Federal Rules of Civil Procedure 15(a)(2) and 20(a)(2), for an Order granting Plaintiffs leave to

18  amend their complaints to add Technicolor SA (f/k/a Thomson SA) and Technicolor USA, Inc.

19  (f/k/a Thomson Consumer Electronics, Inc.) (together, "Thomson") and Mitsubishi Electric

20  Corp.; Mitsubishi Digital Electronics America, Inc.; and Mitsubishi Electric & Electronics, USA,

21  Inc. (together, "Mitsubishi") as defendants; to add Videocon Industries, Ltd. ("Videocon") as a

22  non-party co-conspirator; and to assert additional allegations in support of *American Pipe*, Cross-

23  Jurisdictional, and Government Action tolling on the grounds that no undue prejudice will result

24  from the proposed amendments and Plaintiffs have exercised reasonable diligence in seeking the

25  amendments.[1]

26  _____
[1] As explained below, plaintiff Costco Wholesale Corporation also seeks leave to amend its complaint to add as defendants certain Samsung SDI entities already named as defendants by other Plaintiffs

27

28  PLAINTIFFS' MOTION FOR LEAVE TO FILE AMENDED COMPLAINTS
Case No. 3:07-05944-SC
MDL No. 1917

1    This motion is based upon this Notice of Motion and Motion, the accompanying

2    Memorandum of Points and Authorities in support thereof, the Declaration of Eric J. Weiss in

3    Support of Plaintiffs' Motion for Leave to File Amended Complaints, any papers filed in reply,

4    the argument of counsel, and all papers and records on file in this matter.[2]

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21
_____
22   (specifically, Samsung SDI Co., Ltd.; Samsung SDI America, Inc.; Samsung SDI Mexico S.A. de C.V.;
     Samsung SDI Brasil Ltda.; Shenzhen Samsung SDI Co., Ltd.; Tianjin Samsung SDI Co., Ltd.; and
23   Samsung SDI (Malaysia) Sdn. Bhd.) (together, "Samsung SDI") and to add as non-party co-conspirators
     certain Panasonic entities already named as defendants by other Plaintiffs (specifically, Panasonic Corp.;
24   Panasonic Corp. of North America; MT Picture Display Co., Ltd.; Matsushita Electronic Corp. (Malaysia)
     Sdn Bhd.; and Panasonic Consumer Electronics Co.) (together, "Panasonic").

25   [2] Pursuant to Local Rule 10-1, the Plaintiffs' proposed amended complaints are attached as Exhibits C–M
     to the Declaration of Eric J. Weiss in Support of Direct Action Plaintiffs' Notice of Motion for Leave to
26   File Amended Complaints.  All of the changes Plaintiffs propose to make by way of this motion are
     reflected in redline in the attached proposed amended complaints.

27
     PLAINTIFFS' MOTION FOR LEAVE TO FILE AMENDED COMPLAINTS
28   Case No. 3:07-05944-SC
     MDL No. 1917

**TABLE OF CONTENTS**

**PAGE**

I. BACKGROUND .................................................................................................. 1

II. THE PROPOSED AMENDMENTS ..................................................................... 4

    A. Thomson and Videocon's Involvement in the CRT Conspiracy ............................. 4

    B. Mitsubishi's Involvement in the CRT Conspiracy.................................................. 6

    C. Samsung SDI and Panasonic's Involvement in the CRT Conspiracy .................... 6

    D. *American Pipe*, Cross-Jurisdictional, and Government Action Tolling ................. 7

III. LEAVE TO AMEND IS WARRANTED ............................................................. 9

    A. Rules 15 and 20 Establish a Liberal Standard for Granting Leave  to Amend ........ 9

    B. The Proposed Amendments Meet the Requirements of Rules 15 and 20.............. 11

        1. The Proposed Amendments Would Not Cause Undue Prejudice............... 11

        2. The Proposed Amendments Do Not Implicate the Other *Foman* Factors ......................................................................................................... 13

        3. The Proposed Amendments Satisfy the Joinder Requirements of Rule 20 ........................................................................................................ 15

IV. CONCLUSION.................................................................................................. 15

**TABLE OF AUTHORITIES**

PAGE

CASES

*American Pipe & Construction. Co. v. Utah,*
414 U.S. 538 (1974) ..................................................................................... passim

*Bechtel v. Robinson,*
886 F.2d 644 (3d Cir. 1989) ..................................................................................... 11

*Burdick v. Union Sec. Ins. Co.,*
2009 WL 4798873 (C.D. Cal. Dec. 9, 2009) ......................................................... 14

*Crown, Cork & Seal Co. v. Parker,*
462 U.S. 345 (1983) ..................................................................................... 14

*DCD Programs, Ltd. v. Leighton,*
833 F.2d 183 (9th Cir. 1987) ........................................................... 9, 10, 11, 13

*Desert Empire Bank v. Ins. Co.,*
623 F.2d 1371 (9th Cir. 1980) ..................................................................................... 10

*Eminence Capital, LLC v. Aspeon, Inc.,*
316 F.3d 1048 (9th Cir. 2003) ..................................................................................... 9, 10

*Expoconsul Int'l, Inc. v. A/E Sys., Inc.,*
145 F.R.D. 336 (S.D.N.Y. 1993) ..................................................................................... 13

*Foman v. Davis,*
371 U.S. 178 (1962) ..................................................................................... passim

*Hinson v. Norwest Fin. S.C., Inc.,*
239 F.3d 611 (4th Cir. 2001) ..................................................................................... 10

*Howey v. United States,*
481 F.2d 1187 (9th Cir. 1973) ........................................................................... 10, 13

*In re Linerboard Antitrust Litig.,*
223 F.R.D. 335 (E.D. Pa. 2004) ..................................................................................... 8

*Issen v. GSC Enters., Inc.,*
552 F. Supp. 390 (N.D. Ill. 1981) ..................................................................................... 14

*League to Save Lake Tahoe v. Tahoe Reg'l Planning Agency,*
558 F.2d 914 (9th Cir. 1977) ..................................................................................... 11

*Matthews Metals Prods., Inc. v. RBM Precision Metal Prods., Inc.,*
186 F.R.D. 581 (N.D. Cal. 1999) ..................................................................................... 10

ii

*Paper Systems Inc. v. Nippon Paper Indus. Co., Ltd.*,
   281 F.3d 629 (7th Cir. 2002)...................................................................................... 15

*Simons v. United States*,
   497 F.2d 1046 (9th Cir. 1974) .................................................................................... 10

*Smith v. Guaranty Servs. Corp.*,
   51 F.R.D. 289 (N.D. Cal. 1970) ............................................................................ 11, 12

*Tosti v. Los Angeles*,
   754 F.2d 1485 (9th Cir. 1985)...................................................................................... 7

*United States v. Webb*,
   655 F.2d 977 (9th Cir. 1981) ....................................................................................... 9

*Zenith Radio Corp. v. Hazeltine Research*,
   401 U.S. 321 (1971) ..................................................................................................... 8

**STATUTES**

15 U.S.C. § 1 ................................................................................................................. 2

15 U.S.C. § 16 ........................................................................................................... 8, 9

**OTHER AUTHORITIES**

Fed. R. Civ. P. 15 .............................................................................................. passim

Fed. R. Civ. P. 20 .............................................................................................. passim

Fed. R. Civ. P. 30(b)(6) ............................................................................................... 2

PLAINTIFFS' MOTION FOR LEAVE TO FILE AMENDED COMPLAINTS
Case No. 3:07-05944-SC
MDL No. 1917

## MEMORANDUM OF POINTS AND AUTHORITIES

The undersigned Direct Action Plaintiffs[3] ("DAPs" or "Plaintiffs") hereby respectfully submit this Memorandum in support of their Motion for Leave to File Amended Complaints ("Motion"). As reflected in Plaintiffs' proposed amended complaints—attached as exhibits to the Declaration of Eric J. Weiss in Support of the Motion—all Plaintiffs seek to add Thomson and Mitsubishi as new defendants and to add Videocon as a non-party co-conspirator. Additionally, plaintiff Costco Wholesale Corporation seeks to add Samsung SDI entities as defendants and Panasonic entities as non-party co-conspirators. Plaintiffs also seek to assert additional, perfunctory allegations relevant to *American Pipe,* Cross-Jurisdictional, and Government Action Tolling; specifically, the limitations period for Plaintiffs' claims was tolled, as a matter of law, during the pendency of certain class action lawsuits and the U.S. Department of Justice's criminal proceedings against defendants. As set forth below, the Motion should be granted because it is being made in a timely manner, is supported by good cause, and will not prejudice any party.

## I.     BACKGROUND

Plaintiffs allege that they were injured by a price-fixing conspiracy among the major manufacturers of Cathode Ray Tubes ("CRTs") used in televisions, computer monitors, and other electronics products. The DAPs are companies—predominately large retailers—that purchased CRT products during the period January 1, 1995, through November 25, 2007 (the "Relevant Period") and that have decided to pursue their own antitrust claims in lieu of prosecution through the putative Direct-Purchaser Plaintiff ("DPP") and Indirect-Purchaser Plaintiff ("IPP") class actions. All of Plaintiffs' actions have been consolidated for MDL proceedings before this Court.

---

[3] The DAPs joining this motion are the following: *Electrograph Systems, Inc., et al. v. Hitachi, Ltd., et al.,* No. 11-cv-01656; *Alfred H. Siegel, as Trustee of the Circuit City Stores, Inc. Liquidating Trust v. Hitachi, Ltd., et al.,* No. 11-cv-05502; *Best Buy Co., Inc., et al. v. Hitachi, Ltd., et al.,* No. 11-cv-05513; *Target Corp, et al. v. Chunghwa Picture Tubes, Ltd.,* No. 11-cv-05514; *Interbond Corporation of America v. Hitachi, et al.,* No. 11-cv-06275; *Office Depot, Inc. v. Hitachi Ltd., et al.,* No. 11-cv-06276; *CompuCom Systems, Inc. v. Hitachi, Ltd., et al.,* No. 11-cv-06396; *Costco Wholesale Corporation v. Hitachi, Ltd., et al.,* No. 11-cv-06397; *P.C. Richard & Son Long Island Corporation, et al, v. Hitachi, Ltd., et al.,* No. 12-cv-02648; and *Schultze Agency Services, LLC, et al. v. Hitachi, Ltd., et al.,* No. 12-cv-02649.

1      Plaintiffs' operative complaints are identical in several key respects.  All allege that

2   Defendants—manufacturers of CRTs—engaged in an international price-fixing cartel to drive up

3   CRT prices to supracompetitive levels.  Specifically, they allege that throughout the Relevant

4   Period, Defendants participated in regular group and bilateral meetings during which they

5   exchanged pricing, production, and other confidential business information and entered into

6   anticompetitive agreements.  Plaintiffs claim that Defendants violated Section 1 of the Sherman

7   Act, 15 U.S.C. § 1, and a variety of state laws.

8      Full discovery commenced on March 8, 2010, when the stay of discovery obtained by the

9   Department of Justice expired.  The Defendants produced the majority of their documents in late

10   2011.  In November 2011, most of the DAPs opted to file their own complaints.

11      Discovery between Defendants and the DAPs began in 2012 but was delayed in light of

12   Defendants' motion for partial summary judgment against the DPPs, which the Court resolved in

13   late 2012.  *See* Order Granting In Part and Denying in Part Defendants' Joint Motion for

14   Summary Judgment, Dkt. 1470 (Nov. 29, 2012).  Most Plaintiffs are currently responding to

15   written discovery and document requests served by the Defendants.  Some Rule 30(b)(6)

16   depositions have been conducted, and merits depositions have recently begun.  The fact discovery

17   cutoff date is tentatively set for March 3, 2014 and trials are not scheduled to begin until October

18   20, 2014.  *See* Revised Scheduling Order, Dkt. No. 1595 (Mar. 13, 2013).

19      On August 22, 2012, the IPPs filed a motion for leave to amend their complaint.  *See*

20   IPPs' Motion for Leave to Amend Complaint, Dkt. 1325 (Aug. 22, 2012).  The IPPs claimed that

21   "conspiratorial evidence . . . revealed by recent discovery . . . convinced IP Plaintiffs that

22   Thomson, Mitsubishi, and Videocon should be added as Defendants."  *Id.* at 2.  Specifically,

23   based on information discovered during their preparation for Rule 30(b)(6) depositions, the IPPs

24   sought to add:

25          ▪   Thomson SA (n/k/a Technicolor SA) and Thomson Consumer Electronics, Inc.

26              (n/k/a Technicolor USA, Inc.) (together "Thomson").

27
                                        2
   PLAINTIFFS' MOTION FOR LEAVE TO FILE AMENDED COMPLAINTS
28  Case No. 3:07-05944-SC
   MDL No. 1917

1         ▪   Mitsubishi Electric Corp., Mitsubishi Digital Electronics America, Inc., and

2              Mitsubishi Electric & Electronics, USA, Inc. (together "Mitsubishi").

3         ▪   Videocon Industries, Ltd. ("Videocon").

4       The IPPs' motion was referred to Judge Legge, as Special Master, and was opposed by

5 Mitsubishi Digital Electronics America, Inc.; Mitsubishi Electric & Electronics, USA, Inc.,

6 ("Mitsubishi Electric"); and Thomson. *See* Mitsubishi Electric Opposition, Dkt. 1348 (Sept. 14,

7 2012); Thomson Opposition, Dkt. 1352 (Sept. 14, 2012). Special Master Legge heard oral

8 argument on the motion on September 27, 2012. Thereafter, the Special Master recommended

9 that the Court grant a stipulated order permitting the IPPs to amend their complaint to add

10 Thomson and Videocon as named co-conspirators. *See* Report and Recommendation on

11 Stipulation and Proposed Order, Dkt. 1428 (Nov. 1, 2012).

12       On November 19, 2012, Special Master Legge recommended that the Court grant the

13 IPPs' motion to add the Mitsubishi entities as named defendants. *See* Amended Report on IPP

14 Motion to Amend Complaint, Dkt. 1453 (Nov. 19, 2012). The Special Master found that the

15 addition of Mitsubishi "meets the requirements of Federal Rule of Civil Procedure 15(a) and the

16 factors enumerated in *Foman v. Davis*, 371 U.S. 178 (1962)." *Id.* at 2. In particular, Special

17 Master Legge found that the amendment would not add new issues to the case, was supported by

18 evidence of Mitsubishi's involvement in the conspiracy, that the IPPs had been diligent in seeking

19 the amendment, and that Mitsubishi would not be prejudiced by the amendment given the case

20 schedule. *Id.* at 2-3. Thereafter, the IPPs reached a stipulation with Mitsubishi to add all of the

21 Mitsubishi entities as co-conspirators. *See* Stipulation and Proposed Order Regarding Indirect

22 Purchaser Plaintiffs' Fourth Consolidated Amended Complaint, Dkt. 1496 (Dec. 18, 2012). In

23 late December 2012, the Court approved stipulations that permitted the IPPs to amend their

24 complaint to add Mitsubishi, Thomson, and Videocon as co-conspirators. *See* Order Approving

25 Stipulations Re: Leave to Amend Complaint to Add Certain Defendants, Dkt. 1505 (Dec. 27,

26 2012).

27

28

1    **II.      THE PROPOSED AMENDMENTS**

2          Like the IPPs, the DAPs seek leave to amend their complaints to name the Thomson and

3    Mitsubishi entities as Defendants.  *See, e.g.*, Declaration of Eric J. Weiss in Support of Plaintiffs'

4    Motion for Leave to File Amended Complaints ("Weiss Decl."), Ex. C, Amended Complaint of

5    Costco Wholesale Corporation ("Costco Amended Complaint"), ¶¶ 60, 61 (adding Thomson SA

6    and Thomson Consumer Electronics, Inc. as Defendants); *id.* at ¶¶ 63-65 (adding Mitsubishi

7    Electric Corp.; Mitsubishi Digital Electronics America, Inc.; and Mitsubishi Electric &

8    Electronics, USA, Inc., as Defendants).   Costco also seeks to add certain entities already named

9    as Defendants by other Plaintiffs.  Specifically, Costco would name certain Samsung SDI entities

10   as Defendants,[4] and name certain Panasonic entities as co-conspirators.[5]  These proposed

11   amendments are supported by the conspiratorial evidence described below.

12         Out of an abundance of caution, Plaintiffs also seek leave to add additional, perfunctory

13   allegations that the limitations period for Plaintiffs' claims was tolled, as a matter of law, during

14   the pendency of certain class action lawsuits and the U.S. Department of Justice's criminal

15   proceedings against defendants.[6]

16         **A.      Thomson and Videocon's Involvement in the CRT Conspiracy**

17         During the Relevant Period, Thomson manufactured, marketed, sold, and distributed

18   CRTs in the United States and elsewhere.  Thomson manufactured CRTs for sale in the United

19   States in factories located in Scranton, Pennsylvania; Marion, Indiana; and Mexicali, Mexico.

---

20   [4] The Samsung SDI entities are Samsung SDI Co., Ltd.; Samsung SDI America, Inc.; Samsung SDI
     Mexico S.A. de C.V.; Samsung SDI Brasil Ltda.; Shenzhen Samsung SDI Co., Ltd.; Tianjin Samsung SDI
21   Co., Ltd.; and Samsung SDI (Malaysia) Sdn. Bhd.) (collectively, "Samsung SDI").  *See* Costco Amended
     Complaint, ¶¶ 41-41 (adding Samsung SDI entities as Defendants).
22
     [5] The Panasonic entities are Panasonic Corp.; Panasonic Corp. of North America; MT Picture Display Co.,
23   Ltd.; Matsushita Electronic Corp. (Malaysia) Sdn Bhd.; and Panasonic Consumer Electronics Co.)
     (collectively, "Panasonic").  *See* Costco Amended Complaint ¶ 72 (adding Panasonic entities as non-party
24   co-conspirators).

25   [6] The DAPs represented by Boies, Schiller & Flexner LLP also propose to delete one paragraph in each of
     their complaints.  This paragraph, which was identical in each complaint, was superfluous to these
26   plaintiffs' claims.  Furthermore, Target and RadioShack also propose to delete references to several
     entities that were inadvertently included their Amended Complaint.

27                                                          4

Thomson also had CRT manufacturing plants in Europe and China.  Thomson sold its CRTs internally to its television-manufacturing division (which manufactured and sold CRT televisions to consumers under the RCA brand) and to other television manufacturers in the United States and elsewhere.  Thomson's television division also purchased CRTs from other CRT manufacturers.  *See, e.g.*, Costco's Amended Complaint, ¶¶ 60-61.

In November 2003, Thomson sold its television division to a joint venture it formed with Chinese company TCL Corporation.  The joint venture was called TCL-Thomson Electronics Corporation.  As part of the joint-venture agreement, the parties agreed that the televisions made by TCL-Thomson would be marketed under the TCL brand in Asia and the Thomson and RCA brands in Europe and North America, respectively.  In July 2005, Thomson sold its CRT business to Videocon Industries, Ltd.  *Id.*

Prompted by the IPPs' motion for leave to amend, Plaintiffs began conducting targeted reviews of the Defendants' voluminous document productions for evidence of Thomson and Videocon's participation in the conspiracy.  *See* Weiss Decl., ¶ 2.  During that review, Plaintiffs located evidence revealing that between at least 1996 and 2005, Thomson attended dozens of meetings with its competitors, including several Glass Meetings and multiple bilateral meetings.  *See id.* at ¶ 3; *see also* Costco's Amended Complaint, ¶ 147.  These meetings were attended by high-level sales managers from Thomson.  At these meetings, Thomson discussed such things as CRT prices, production, revenues, volumes, demand, inventories, estimated sales, plant shutdowns, customer allocation, and new product development and agreed on prices and supply levels for CRT Products.  *See* Weiss Decl., ¶ 3; *see also* Costco's Amended Complaint, ¶ 147.

Further confirming Thomson's participation in the conspiracy is the December 5, 2012, decision by the European Commission to levy a €38.6 fine against Thomson for its CRT price-fixing.  *See* Costco's Amended Complaint, ¶ 165; Weiss Decl. ¶ 5, Exh. A.  Even before the European Commission announced its fine, Technicolor SA (f/k/a Thomson SA) acknowledged in its 2011 Annual Report that it had appeared before the European Commission regarding CRTs,

5

1   and it admitted that "Thomson/Technicolor . . . played a minor role in the alleged anticompetitive

2   activity."  Weiss Decl. ¶ 6, Exh. B.  For all of these reasons, Plaintiffs seek to add Thomson as a

3   defendant to this litigation and to name its successor, Videocon, as a non-party co-conspirator.

4           **B.**       **Mitsubishi's Involvement in the CRT Conspiracy**

5           Mitsubishi manufactured, marketed, sold, and distributed CRTs and CRT televisions in

6   the United States during the Relevant Period.  Mitsubishi manufactured CRTs in factories located

7   in Japan, Taiwan, Mexico, and Canada for sale in the United States.  These CRTs were sold

8   internally to Mitsubishi's television and monitor manufacturing division and to other television

9   and monitor manufacturers in the United States and elsewhere.  Mitsubishi's television and

10  monitor division also purchased CRTs from other CRT manufacturers.  *See, e.g.*, Costco's

11  Amended Complaint, ¶¶ 63-65.

12          As was the case with Thomson, the IPPs' motion led Plaintiffs to begin targeted

13  investigations for evidence of Mitsubishi's participation in the conspiracy.  *See* Weiss Decl., ¶ 2.

14  And as with Thomson, Plaintiffs' review of Defendants' voluminous document productions

15  confirmed that Mitsubishi conspired with its competitors.  Specifically, the evidence establishes

16  that between at least 1995 and 2005, Mitsubishi participated in multiple bilateral meetings with its

17  competitors.  *See, e.g.*, Costco's Amended Complaint, ¶ 148; Weiss Decl., ¶ 4.  These meetings

18  were attended by high-level sales managers from Mitsubishi.  At these meetings, Mitsubishi

19  discussed such things as CRT prices, production, revenues, volumes, demand, inventories,

20  estimated sales, plant shutdowns, customer allocation, and new product development, and agreed

21  on prices and supply levels for CRT Products.  *See* Weiss Decl., ¶ 4; *see also* Costco's Amended

22  Complaint, ¶ 148.  Thus, Plaintiffs seek to add Mitsubishi as a defendant in this litigation.

23          **C.**       **Samsung SDI and Panasonic's Involvement in the CRT Conspiracy**

24          Samsung SDI manufactured, marketed, sold, and distributed CRTs and CRT products in

25  the United States during the Relevant Period.  Samsung SDI was one of the leading

26  manufacturers of CRTs, holding a 34.3 percent share of the worldwide market in 2002.  Samsung

27

28  PLAINTIFFS' MOTION FOR LEAVE TO FILE AMENDED COMPLAINTS
    Case No. 3:07-05944-SC
    MDL No. 1917

1   SDI's global operations included the manufacture and sale of CRT products in the United States,

2   Mexico, Brazil, China, and Malaysia.  *See* Costco's Amended Complaint, ¶¶ 41-47.

3       Samsung SDI was an active member of the CRT price-fixing cartel.  It participated in a

4   substantial number of glass meetings and bilateral meetings, including many attended by its

5   highest-ranking executives.  *See id.*, ¶¶ 143-44.  Samsung SDI has admitted its participation in the

6   conspiracy to fix prices, reduce output, and allocate market shares of color display tubes sold in

7   the United States and elsewhere, agreeing to pay a $32 million fine to the United States

8   government.  *See id.*, ¶ 164.  The European Commission also recently fined Samsung SDI over

9   €150 million for its CRT price-fixing.  *See* Weiss Decl. ¶ 5, Exh. A.  In sum, Costco's request to

10   add the Samsung SDI entities as Defendants is supported by substantial evidence.

11       Ample evidence also supports Costco's request to name the Panasonic entities as co-

12   conspirators.  During the relevant period, Panasonic manufactured, marketed, sold, and

13   distributed CRT products throughout the United States.  Panasonic participated in several glass

14   meetings between 1996 and 2003, many of which were attended by high level sales managers.

15   After 2003, it participated in the CRT conspiracy through MTPD, which attended and in fact led

16   many of the conspiratorial meetings.  Panasonic also engaged in multiple bilateral discussions

17   with the Defendants.  *See* Costco's Amended Complaint, ¶¶ 137-39.  For these reasons, the

18   European Commission recently fined Panasonic over €150 million for its conspiratorial conduct,

19   levying additional fines totaling nearly €100 million against Panasonic, Defendant Toshiba, and

20   their former joint venture MTPD.  *See* Weiss Decl. ¶ 5, Exh. A.  For these reasons, Costco seeks

21   to name the Panasonic entities as co-conspirators.

22       **D.      *American Pipe*, Cross-Jurisdictional, and Government Action Tolling**

23       It is axiomatic that the statute of limitations was tolled during the pendency of the

24   DPP class actions until the DAPs opted out.  *See, e.g.*, *American Pipe & Construction. Co. v.*

25   *Utah*, 414 U.S. 538 (1974); *Tosti v. Los Angeles*, 754 F.2d 1485, 1488 (9th Cir. 1985) (tolling

26   continued through opt-out).  Plaintiffs' state-law claims are also tolled under *American Pipe* and

27

28

7

cross-jurisdictional tolling, which toll the statute on state-law claims during the pendency of a federal class action. *See In re Linerboard Antitrust Litig.*, 223 F.R.D. 335, 346 (E.D. Pa. 2004) ("In the antitrust context, declining to adopt cross-jurisdictional class action tolling will invite the filing of numerous protective, duplicative and in many cases, unnecessary, suits by class members that want to consider filing claims under state antitrust law not included in a federal class action complaint.  These suits would undermine the efficiency of federal class actions." (citations omitted)).

Moreover, the statute of limitations was tolled under the Government Action Theory.  *See* 15 U.S.C. § 16(i) ("Whenever any civil or criminal proceeding is instituted by the United States to prevent, restrain or punish violations of any antitrust laws . . . the running of the statute of limitations . . . shall be suspended during the pendency thereof and for one year thereafter.").  This tolling provision is broadly construed.  *See Zenith Radio Corp. v. Hazeltine Research*, 401 U.S. 321, 335 (1971) (naming different defendants does not defeat the tolling so long as the private suit alleges "at least in part the same conspiracy").  Here, the U.S. Department of Justice ("DOJ") filed its first indictment of Defendants on February 10, 2009, and criminal proceedings are ongoing.

Plaintiffs' Complaints already discuss the DOJ's criminal proceedings against Defendants and allege facts demonstrating that Plaintiffs were or remain members of the Direct and Indirect Purchaser Classes.  *See* Costco's Original Complaint, ¶¶ 1, 10, 138-51.  Out of an abundance of caution, however, Plaintiffs seek leave to add additional perfunctory allegations that the limitations period for Plaintiffs' claims was tolled, as a matter of law, during the pendency of certain class action lawsuits and the DOJ's criminal proceedings against defendants.  *See* Costco's Amended Complaint ¶¶ 193-95.  Specifically, the United States Department of Justice instituted criminal proceedings and investigations against several Defendants and co-conspirators commencing on at least February 10, 2009.  Plaintiffs' claims were tolled during these criminal proceedings pursuant to 15 U.S.C. § 16.

1    Furthermore, as shown by Plaintiffs' allegations in their respective complaints, the DAPs

2    were members of Direct Purchaser Class Action asserted against Defendants, including, but not

3    limited to, the following Complaints:

4       • *Crago, Inc. v. Chunghwa Picture Tubes, Ltd., et al.*, No. 3:07-cv-05944-SC (Dkt. No.

5          1) (N.D. Cal. Nov. 26, 2007);

6       • Direct Purchaser Plaintiffs' Consolidated Amended Complaint, No. 3:07-cv-05944-SC

7          (Dkt. No. 436) (N.D. Cal. Mar. 16, 2009);

8    Thus, the DAPs' claims were tolled under *American Pipe* and related authorities

9    recognizing cross-jurisdictional tolling during the pendency of the DPP Class Actions asserted

10   against Defendants, which commenced no later than November 26, 2007.

11   **III.     LEAVE TO AMEND IS WARRANTED**

12      **A.     Rules 15 and 20 Establish a Liberal Standard for Granting Leave
                 to Amend**

13

14   Pursuant to Rule 15(a), leave to amend a pleading should be given freely "when justice so

15   requires." The liberal policy in favor of granting leave to amend is intended to "facilitate

16   decision[s] on the merits, rather than on the pleadings or technicalities." *United States v. Webb*,

17   655 F.2d 977, 979 (9th Cir. 1981). In the Ninth Circuit, the policy favoring leave to amend "is 'to

18   be applied with extreme liberality.'" *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048,

19   1051 (9th Cir. 2003) (citations omitted); *see also* Special Master's Amended Report on IPP

20   Motion to Amend Complaint, Dkt. 1453 (Nov. 19, 2012) (noting "extreme liberality" standard).

21   "This liberality in granting leave to amend is not dependent on whether the amendment will add

22   causes of actions or parties." *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir.

23   1987). Rather, "If the underlying facts or circumstances relied upon by a plaintiff may be a

24   proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits."

25   *Simons v. United States*, 497 F.2d 1046, 1049, n.2 (9th Cir. 1974).

26

27

PLAINTIFFS' MOTION FOR LEAVE TO FILE AMENDED COMPLAINTS
Case No. 3:07-05944-SC
28   MDL No. 1917

The Supreme Court has instructed that "the leave sought should, as the rule requires, be 'freely given'" unless the nonmovant establishes undue delay, bad faith or dilatory motive on part of the movant, prejudice to the nonmovant, or futility of amendment  *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also DCD Programs*, 833 F.2d at 186 (assessing factors and reversing denial of leave to amend to add a new party in fourth amended complaint notwithstanding defendants' arguments of undue delay and futility).  "These factors, however, are not of equal weight in that delay, by itself, is insufficient to justify denial of leave to amend." *DCD Programs*, 833 F.2d at 186.  Instead, "it is the consideration of prejudice to the opposing party that carries the greatest weight." *Eminence Capital*, 316 F.3d at 1048.  "Where there is lack of prejudice to the opposing party and the amended complaint is obviously not frivolous, or made as a dilatory maneuver in bad faith, it is an abuse of discretion to deny such a motion." *Howey v. United States*, 481 F.2d 1187, 1190-91 (9th Cir. 1973).  Without prejudice, or at least "a strong showing of any of the remaining . . . factors, there exists a *presumption* under Rule 15(a) in favor of granting leave to amend." *Eminence Capital*, 316 F.3d at 1052 (emphasis in original).

On a motion to amend to join additional parties, a court "must consider both the general principles of amendment provided by Rule 15(a) and also the more specific joinder provisions of Rule 20(a)." *Hinson v. Norwest Fin. S.C., Inc.*, 239 F.3d 611, 618 (4th Cir. 2001) (citing *Desert Empire Bank v. Ins. Co.*, 623 F.2d 1371, 1374 (9th Cir. 1980)).  Rule 20 imposes two specific requirements for the permissive joinder of parties.  It provides that "[p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20.  The addition of a party pursuant to Rule 20(a) calls for an equally liberal analysis as that mandated by Rule 15(a).  *Matthews Metals Prods., Inc. v. RBM Precision Metal Prods., Inc.*, 186 F.R.D. 581, 583 (N.D. Cal. 1999) ("[R]equirements of Rule 20(a) are construed liberally in order to promote the broadest scope of action consistent with

1    fairness to the parties.") (citing *League to Save Lake Tahoe v. Tahoe Reg'l Planning Agency*, 558

2    F.2d 914, 917 (9th Cir. 1977)).

3         In sum, Rules 15 and 20 establish a liberal standard that favors granting leave to amend.

4    That standard is easily satisfied here.

5    **B.    The Proposed Amendments Meet the Requirements of Rules 15 and 20**

6         Plaintiffs' proposed amendments to add as Defendants Thomson, Mitsubishi, and, in the

7    case of Costco, Samsung SDI, satisfy the requirements of Rules 15 and 20.  So too do Plaintiffs'

8    proposed tolling amendments and additions of non-party co-conspirators satisfy the rules to

9    amend.  Indeed, none of the factors that weigh against granting leave to amend a complaint are

10   present here.  Accordingly, Plaintiffs' motion for leave to amend should be granted.

11   **1.    The Proposed Amendments Would Not Cause Undue Prejudice**

12        The party opposing amendment has the burden of establishing undue prejudice.  *DCD*

13   *Programs*, 833 F.2d at 187.  Prejudice must be substantial to justify denial of leave to amend.

14   The nonmovant "must show that it was unfairly disadvantaged or deprived of the opportunity to

15   present facts or evidence which it would have offered had the amendments been timely." *Bechtel*

16   *v. Robinson*, 886 F.2d 644, 652 (3d Cir. 1989) (internal quotations omitted); *see also Smith v.*

17   *Guaranty Servs. Corp.*, 51 F.R.D. 289, 293 (N.D. Cal. 1970) (undue prejudice means undue

18   difficulty in defending a lawsuit due to a change in tactics or theories by the other party).

19        The proposed amendments would not cause undue prejudice to the parties that Plaintiffs

20   seek to add.  As noted by Special Master Legge in conjunction with the IPPs' motion, it is still

21   relatively early in this MDL proceeding (particularly in light of the recent revisions to the

22   Scheduling Order): merits depositions have only just begun, the discovery cutoff date is nearly a

23   year away, and trials are not scheduled to begin until October 2014.  *See* Amended Report on IPP

24   Motion to Amend Complaint, Dkt. 1453 at 2 (Nov. 19, 2012); Revised Scheduling Order, Dkt.

25   No. 1595 (Mar. 13, 2013).  Nor do the prior proceedings support a claim of prejudice:  "numerous

26   other defendants' counsel have been representing the defense interest throughout the course of

27

28   PLAINTIFFS' MOTION FOR LEAVE TO FILE AMENDED COMPLAINTS
     Case No. 3:07-05944-SC
     MDL No. 1917

this litigation," there have been "no decisions by the court which would adversely impact Mitsubishi [or Thomson]," and discovery considerations are "not so much as to be prejudicial to Mitsubishi's [or Thomson's] right to defend itself in this litigation." *Id.* at 2-3. Furthermore, Mitsubishi and Thomson have been on notice of the facts described in Plaintiffs' complaints since 2007, when the IPPs named Thomson as a defendant, or at least since 2011, when the IPPs entered a tolling agreement with both Thomson and Mitsubishi. *See* IPPs' Motion for Leave to Amend Complaint, Dkt. 1325 at 7 (Aug. 22, 2012).

Nor would Costco's proposed amendments prejudice existing Defendants Samsung SDI and Panasonic. All of the Samsung SDI and Panasonic entities in question have been named as Defendants in multiple Plaintiffs' operative complaints, both Defendant groups have appeared in the action and are actively represented by counsel, and both will continue to defend themselves in this litigation regardless of whether they are named in Costco's complaint. Through the joint defense group, Samsung SDI and Panasonic have participated in the limited discovery propounded on Costco to date and undoubtedly will participate in further discovery in the coming months. Neither Samsung SDI nor Panasonic can establish that prejudice would result from Costco's proposed amendment. And Costco's proposed amendment would not be futile because there is ample evidence of both companies' participation in the conspiracy and because Costco's claims are not barred by the statute of limitations.

Plaintiffs' proposed amendments would not alter the scope of discovery against the existing Defendants or otherwise prejudice them. Plaintiffs' operative complaints put Defendants on notice that Plaintiffs might pursue other co-conspirators based on what Plaintiffs learned through discovery. *See, e.g.*, Costco's Original Complaint at ¶ 58. And the proposed amendment will not make it any more difficult for the existing Defendants to defend this action. To the contrary, joining Mitsubishi and Thomson to the existing actions would promote judicial economy and should serve to reduce the costs of this litigation. As such, there is no risk of prejudice from the proposed amendments.

Finally, Defendants cannot establish that they will suffer undue prejudice by Plaintiffs' proposed tolling amendments. As discussed, Plaintiffs' complaints already plead abundant facts in support of Government Action tolling and show that the DAPs were members of the putative DPP class sufficient to establish *American Pipe* and Cross-Jurisdictional tolling. These theories should therefore present no surprise to Defendants. And unlike fact-intensive fraudulent-concealment tolling, these legal-tolling theories do not require discovery.

### 2. The Proposed Amendments Do Not Implicate the Other *Foman* Factors

Just as the non-moving parties cannot meet their burden of establishing undue prejudice, so too are they unable to establish any of the other factors that counsel against amendment.

First, there is simply no basis to claim "bad faith or dilatory motive on part of the [Plaintiffs]," and the proposed amendments do not entail "undue delay." *See Foman*, 371 U.S. at 182. To the contrary, Plaintiffs have acted diligently by seeking amendment soon after unearthing evidence of Thomson's and Mitsubishi's participation in the conspiracy. Of course, there is no requirement that a plaintiff move to amend the moment it discovers such evidence. Indeed, "delay, by itself, is insufficient to justify denial of leave to amend." *DCD Programs*, 833 F.2d at 186; *see also Howey v. United States*, 481 F.2d 1187, 1191 (9th Cir. 1973) ("While it is true that the motion was made five years after the third party complaint had been filed, we know of no case where delay alone was deemed sufficient grounds to deny a Rule 15(a) motion to amend . . . . There is no allegation that the government's motion was made in bad faith even though the government gave no reason for its lengthy delay."). Accordingly, courts liberally allow amendment to add new defendants after significant passage of time. *See, e.g., Expoconsul Int'l, Inc. v. A/E Sys., Inc.*, 145 F.R.D. 336, 338-39 (S.D.N.Y. 1993) (rejecting claims of undue delay and permitting plaintiffs to add new defendants approximately five years after commencement of case); *Issen v. GSC Enters., Inc.*, 552 F. Supp. 390, 394 (N.D. Ill. 1981)

PLAINTIFFS' MOTION FOR LEAVE TO FILE AMENDED COMPLAINTS
Case No. 3:07-05944-SC
MDL No. 1917

1   (permitting amendment despite seven-year delay since amendment came before close of

2   discovery, before trial, and before rulings on summary judgment motions).

3         As to Plaintiffs' tolling amendments, and putting aside that Defendants are keenly aware

4   of the DOJ's criminal indictments, Plaintiffs have already asserted a wealth of allegations in their

5   complaints setting forth in great detail the factual basis for Government Action tolling.  And the

6   DAPs already allege facts showing that they were members of the DPP class.  *See Burdick v.*

7   *Union Sec. Ins. Co.,* No. 07-cv-4028 ABC (JCx), 2009 WL 4798873, at *10 n.17 (C.D. Cal. Dec.

8   9, 2009) (plaintiffs need not literally raise "equitable tolling" in the complaint for the doctrine to

9   apply; rather, "the sole issue is whether the complaint, liberally construed in light of our 'notice

10  pleading' system, adequately alleges facts showing the potential applicability of the equitable

11  tolling doctrine.").   And it is well settled that "[a] class complaint notifies the defendants not only

12  of the substantive claims being brought against them, but also of the number and generic

13  identities of the potential plaintiffs who may participate in the judgment."  *Crown, Cork & Seal*

14  *Co. v. Parker*, 462 U.S. 345, 350-52 (1983) (citations omitted).  For these reasons, leave to amend

15  is proper.

16        Additionally, the proposed amendments do not alter the factual or legal questions

17  presented in the case.  The causes of action asserted against Thomson and Mitsubishi (and, in the

18  case of Costco, against Samsung SDI) are identical to those asserted against the existing

19  Defendants.  As the Special Master noted in connection with the IPPs' previous motion to amend,

20  "[i]t does not appear that any new issues would be added to the case."  *See* Amended Report on

21  IPP Motion to Amend Complaint, Dkt. 1453 at 2 (Nov. 19, 2012).

22        Finally, the proposed amendments are not futile.  *See Foman*, 371 U.S. at 182.  To the

23  contrary, Plaintiffs have established that they have a reasonable basis to seek the addition of the

24  new Defendants.  Indeed, "[t]he reports demonstrate Mitsubishi's participation in the exchange of

25  production information with the other defendants, and show that Mitsubishi accounted for a

26  meaningful share of the United States market for CRTs during the alleged class period."

27                                                      14

1   Amended Report on IPP Motion to Amend Complaint, Dkt. 1453 at 2 (Nov. 19, 2012).  The

2   evidence is at least as strong with respect to Thomson, Samsung SDI, and Panasonic.

3   Accordingly, "[t]he addition of Mitsubishi [and the other putative Defendants] meets the

4   requirements of Federal Rule of Civil Procedure 15(a) and the factors enumerated in *Foman v.*

5   *Davis*, 371 U.S. 178 (1962)." *Id.*  Similarly, Plaintiffs' proposed tolling amendments merely

6   reinforce what has already been pleaded:  that the limitations period was tolled as a matter of law

7   during the pendency of the DPP class action pursuant to *American Pipe* and Cross-Jurisdictional

8   tolling and during the pendency of the DOJ's criminal proceedings against Defendants pursuant

9   to Government Action tolling.

10              **3.      The Proposed Amendments Satisfy the Joinder Requirements
                          of Rule 20**

11

12          The addition of the new parties likewise comports with the liberal joinder requirements of

13   Rule 20.  Without question, the underlying factual basis for all claims arises out of the "same

14   transaction or occurrence," *i.e.*, a single overarching price-fixing conspiracy under which

15   Defendants are jointly and severally liable for their conduct.  *See* Fed. R. Civ. P. 20(a)(2)(A);

16   *Paper Systems Inc. v. Nippon Paper Indus. Co., Ltd.*, 281 F.3d 629, 633 (7th Cir. 2002) (holding

17   that every participant in an antitrust conspiracy is jointly and severally liable for overcharges by

18   other members of the cartel).  So too do the claims against the would-be Defendants involve

19   "question[s] of law or fact common to all defendants."  *See* Fed. R. Civ. P. 20(a)(2)(B).  As such,

20   addition of the new parties is proper.

21   **IV.    CONCLUSION**

22          For the foregoing reasons, Plaintiffs' Motion for Leave to File Amended Complaints

23   should be granted.

24

25

26

27                                                    15

28

| | |
|---|---|
| 1 | DATED:  March 26, 2013 |

/s/  David. J. Burman
David J. Burman (admitted *pro hac vice*)
Cori G. Moore (admitted *pro hac vice*)
Eric J. Weiss (admitted *pro hac vice*)
Nicholas H. Hesterberg (admitted *pro hac vice*)
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone:      206.359.8000
Facsimile:      206.359.9000
Email:  DBurman@perkinscoie.com
Email:  CGMoore@perkinscoie.com
Email:  EWeiss@perkinscoie.com
Email:  NHesterberg@perkinscoie.com

Joren Bass, Bar No. 208143
JBass@perkinscoie.com
PERKINS COIE LLP
Four Embarcadero Center, Suite 2400
San Francisco, CA  94111-4131
Telephone:      415.344.7120
Facsimile:      415.344.7320

*Attorneys for Plaintiff Costco Wholesale*
*Corporation*

/s/  Philip J. Iovieno
Philip J. Iovieno
Anne M. Nardacci
BOIES, SCHILLER & FLEXNER LLP
10 North Pearl Street, 4th Floor
Albany, NY  12207
Telephone:  (518) 434-0600
Facsimile:   (518) 434-0665
Email:  piovieno@bsfllp.com
Email:  anardacci@bsfllp.com

William A. Isaacson
Jennifer Milici
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Ave. NW, Suite 800
Washington, D.C.  20015
Telephone:  (202) 237-2727
Facsimile:   (202) 237-6131
Email:  wisaacson@bsfllp.com
Email:  jmilici@bsfllp.com

16

PLAINTIFFS' MOTION FOR LEAVE TO FILE AMENDED COMPLAINTS
Case No. 3:07-05944-SC
MDL No. 1917

1

Stuart Singer
BOIES, SCHILLER & FLEXNER LLP

2

401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33301

3

Telephone:  (954) 356-0011
Facsimile:   (954) 356-0022

4

Email:  ssinger@bsfllp.com

5

*Liaison Counsel for Direct Action Plaintiffs and*
*Attorneys for Plaintiffs Electrograph Systems, Inc.,*

6

*Electrograph Technologies, Corp., Office Depot,*
*Inc., Compucom Systems, Inc., Interbond*

7

*Corporation of America, P.C. Richard & Son Long*
*Island Corporation, Marta Cooperative of America,*

8

*Inc., ABC Appliance, Inc., Schultze Agency Services*
*LLC on behalf of Tweeter Opco, LLC and Tweeter*

9

*Newco, LLC*

10

11

/s/  Roman M. Silberfeld
Roman M. Silberfeld, (SBN 62783)

12

David Martinez, (SBN 193183)
ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

13

2049 Century Park East, Suite 3400
Los Angeles, CA  90067-3208

14

Telephone:  (310) 552-0130
Facsimile:   (310) 229-5800

15

Email:  RMSilberfeld@rkmc.com
Email:  DMartinez@rkmc.com

16

*Attorneys For Plaintiffs Best Buy Co., Inc, Best Buy*

17

*Purchasing LLC, Best Buy Enterprise Services, Inc.,*
*Best Buy Stores, L.P., Bestbuy.com, L.L.C., and*

18

*Magnolia Hi-Fi, LLC*

19

20

/s/  Kenneth S. Marks

21

H. Lee Godfrey

22

Kenneth S. Marks

Jonathan J. Ross

23

Johnny W. Carter

David M. Peterson

24

SUSMAN GODFREY L.L.P.

1000 Louisiana Street, Suite 5100

25

Houston, Texas 77002

26

Telephone:  (713) 651-9366
Facsimile:  (713) 654-6666

27

PLAINTIFFS' MOTION FOR LEAVE TO FILE AMENDED COMPLAINTS
Case No. 3:07-05944-SC

28

MDL No. 1917

1    Email:  lgodfrey@sumangodfrey.com
     Email:  kmarks@susmangodfrey.com
2    Email:  jross@susmangodfrey.com
     Email:  jcarter@susmangodfrey.com
3    Email:  dpeterson@susmangodfrey.com

4
     Parker C. Folse III
5    Rachel S. Black
     Jordan Connors
6    SUSMAN GODFREY L.L.P.
     1201 Third Avenue, Suite 3800
7    Seattle, Washington 98101-3000
     Telephone:  (206) 516-3880
8    Facsimile:  (206) 516-3883
     Email:  pfolse@susmangodfrey.com
9    Email:  rblack@susmangodfrey.com
     Email:  jconnors@susmangodfrey.com
10

11   *Attorneys for Plaintiff Alfred H. Siegel, as Trustee*
     *of the Circuit City Stores, Inc. Liquidating Trust*
12

13

14   /s/  Jason C. Murray
     Jason C. Murray (CA Bar No. 169806)
15   CROWELL & MORING LLP
     515 South Flower St., 40th Floor
16   Los Angeles, CA  90071
     Telephone:  213-443-5582
17   Facsimile:  213-622-2690
     Email:       jmurray@crowell.com
18

19   Jerome A. Murphy (*pro hac vice*)
     Astor H.L. Heaven (*pro hac vice*)
20   CROWELL & MORING LLP
     1001 Pennsylvania Avenue, N.W.
21   Washington, D.C. 20004
     Telephone:  202-624-2500
22   Facsimile:  202-628-5116
     E-mail:  jmurphy@crowell.com
23             aheaven@crowell.com

24   *Counsel for Target Corp. and RadioShack Corp.*

25
     /s/  Richard Alan Arnold
26   Richard Alan Arnold

27                          18
     PLAINTIFFS' MOTION FOR LEAVE TO FILE AMENDED COMPLAINTS
     Case No. 3:07-05944-SC
28   MDL No. 1917

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

William J. Blechman
Kevin J. Murray
KENNY NACHWALTER, P.A.
201 S. Biscayne Blvd., Suite 1100
Miami, FL 33131
Tel:  305-373-1000
Fax: 305-372-1861
Email:   rarnold@knpa.com
Email:   wblechman@knpa.com
Email:   kmurray@knpa.com

*Counsel for Plaintiff Sears, Roebuck and Co. and Kmart Corp.;*

PLAINTIFFS' MOTION FOR LEAVE TO FILE AMENDED COMPLAINTS
Case No. 3:07-05944-SC
MDL No. 1917