Robert A. Sacks (SBN 150146)
sacksr@sullcrom.com
Rory P. Culver (SBN 271868)
culverr@sullcrom.com
SULLIVAN & CROMWELL LLP
1888 Century Park East, Suite 2100
Los Angeles, California 90067
Tel.: (310) 712-6600
Fax: (310) 712-8800

Laura Kabler Oswell (SBN 241281)
oswelll@sullcrom.com
SULLIVAN & CROMWELL LLP
1870 Embarcadero Road
Palo Alto, California 94303
Tel.: (650) 461-5600
Fax (650) 461-5700

Attorneys for Intervenor Thomson Consumer Electronics, Inc. and Specially Appearing Thomson S.A.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION<br><br>This Document Relates to:<br><br>*Electrograph Systems, Inc., et al.* v. *Hitachi, Ltd., et al.,* No. 11-cv-01656;<br><br>*Alfred H. Siegel, as Trustee of the Circuit City Stores, Inc. Liquidating Trust* v. *Hitachi, Ltd., et al.,* No. 11-cv-05502;<br><br>*Best Buy Co., Inc., et al.* v. *Hitachi Ltd., et al.,* No. 11-cv-05513;<br><br>*Target Corp., et al.* v. *Chunghwa Picture Tubes, Ltd., et al.,* No. 11-cv-05514;<br><br>*Interbond Corporation of America* v. *Hitachi, Ltd., et al.,* No. 11-cv-06275; | Master File No. 3:07-5944-SC<br><br>MDL No. 1917<br><br>**OPPOSITION OF INTERVENOR THOMSON CONSUMER ELECTRONICS, INC. AND THOMSON S.A. (SPECIALLY APPEARING) TO DIRECT ACTION PLAINTIFFS' MOTION FOR LEAVE TO FILE AMENDED COMPLAINTS**<br><br>Date: May 1, 2013<br>Time: 9:30 a.m.<br>JAMS: Two Embarcadero Center, Suite 1500<br>Judge: Hon. Samuel Conti<br>Special Master: Hon. Charles A. Legge (Ret.)<br><br>[MOTION FOR LEAVE TO INTERVENE; DECLARATION OF LAURA KABLER OSWELL; AND [PROPOSED] ORDER FILED CONCURRENTLY HEREWITH] |

)
*Office Depot, Inc.* v. *Hitachi, Ltd., et al.*, No. )
11-cv-06276; )
)
*CompuCom Systems, Inc.* v. *Hitachi, Ltd., et al.*, No. 11-cv-06396; )
)
*Costco Wholesale Corporation* v. *Hitachi, Ltd., et al.*, No. 11-cv-06397; )
)
*P.C. Richard & Son Long Island Corporation, et al.* v. *Hitachi, Ltd., et al.*, No. 12-cv-02648; and )
)
*Schultze Agency Services, LLC, et al.* v. *Hitachi, Ltd., et al.*, No. 12-cv-02649. )

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................................................................1

BACKGROUND ...................................................................................................................................2

ARGUMENT.........................................................................................................................................4

    I.     The DAPs' Motion Cannot Satisfy Even The Liberal Standard For Amendment Set Forth In Rule 15..................................................................................................4

          A.     The Proposed Amendments Would Severely Prejudice Thomson and The Other Parties To This Litigation ...........................................................5

          B.     The DAPs Have Provided Insufficient Justification For Naming Thomson as a Defendant at This Late Stage.....................................................10

    II.    If Leave To Amend Is Granted, It Should Be Conditioned Upon a Four Month Stay of This Litigation and an Additional Eight Month Extension of All Deadlines......12

CONCLUSION....................................................................................................................................13

# TABLE OF AUTHORITIES

**CASES**  Page(s)

*AmerisourceBergen Corp.* v. *Dialysist W., Inc.*
 465 F.3d 946 (9th Cir. 2006) ...................................................................................................8, 12

*Ascon Props., Inc.* v. *Mobil Oil Co.*
 866 F.2d 1149 (9th Cir. 1989) ...........................................................................................................5

*Bechtel* v. *Robinson*
 886 F.2d 644 (9th Cir. 1989) ..........................................................................................................10

*Chodos* v. *W. Publ'g Co.*
 292 F.3d 992 (9th Cir. 2002) ............................................................................................................4

*DCD Programs, Ltd.* v. *Leighton*
 833 F.2d 183, 187 (9th Cir. 1987) ..................................................................................................10

*Eminence Capital, LLC* v. *Aspeon, Inc.*
 316 F.3d 1048 (9th Cir. 2003) ........................................................................................................10

*Expoconsul Int'l, Inc.* v. *A/E Sys., Inc.*
 145 F.R.D. 336 (S.D.N.Y. 1993) ....................................................................................................10

*Foman* v. *Davis*
 371 U.S. 178 (1962) ........................................................................................................................10

*Issen* v. *GSC Enters., Inc.*
 522 F.Supp. 390 (N.D. Ill. 1981) ....................................................................................................10

*Jackson* v. *Bank of Haw.*
 902 F.2d 1385 (9th Cir. 1990) .........................................................................................4, 5, 6, 10

*Lockheed Martin Corp.* v. *Network Solutions, Inc.*
 194 F.3d 980 (9th Cir. 1999) .....................................................................................................7, 12

*Loehr* v. *Ventura Cnty. Cmty. Coll. Dist.*
 743 F.2d 1310 (9th Cir. 1984) ..........................................................................................................8

*Morongo Band of Mission Indians* v. *Rose*
 893 F.2d 1074 (9th Cir. 1990) ..........................................................................................................8

*Osakan* v. *Apple Am. Grp.*
 No. 08-4722, 2010 WL 1838701 (N.D. Cal. May 5, 2010) .............................................................7

*Roling* v. *E*Trade Sec., LLC*
 279 F.R.D. 522 (N.D. Cal. 2012) .....................................................................................................7

*Scognamillo* v. *Credit Suisse First Boston, LLC*
  587 F. Supp. 2d 1149 .................................................................................................. 12

*Smith* v. *Guar. Serv. Corp.*
  51 F.R.D. 289 (N.D. Cal. 1970) .................................................................................. 10

*In re TFT-LCD (Flat Panel) Antitrust Litig.*
  No. 07-1827 (N.D. Cal. Apr. 12, 2011) ....................................................................... 5

*Union Pac. R. Co.* v. *Nev. Power Co.*
  950 F.2d 1429 (9th Cir. 1991) .................................................................................... 10

*Wells Fargo Bank, N.A.* v. *Renz*
  No. 08-02561, 2010 WL 2867615 (N.D. Cal. July 20, 2010) .................................... 6

*Wilkins-Jones* v. *Cnty. of Alameda*
  No. 08-1485, 2012 WL 3116025 (N.D. Cal. July 31, 2012) ...................................... 8

**STATUTES AND RULES**

Fed. R. Civ. P. 15 .................................................................................................................. 5

Fed. R. Civ. P. 16 .................................................................................................................. 5

# INTRODUCTION

On March 26, 2013, the Direct Action Plaintiffs ("DAPs") filed their Motion for Leave to File Amended Complaints ("Motion"), seeking to name Thomson S.A.,[1] a French holding company that does not regularly transact business in the United States, and Thomson Consumer Electronics, Inc. (collectively, "Thomson") as defendants in a litigation that has a five year history, in which discovery is well underway and in which dispositive motions have already been filed. The Motion should be denied because the proposed amendments are untimely and would be unduly prejudicial. Alternatively, in the event that the Court grants the DAPs' Motion, the Court should simultaneously amend the existing scheduling order to provide a limited stay of proceedings in order to allow time for Thomson's motions to dismiss (which will include jurisdictional, statute of limitations, and substantive grounds) to be briefed and heard and, if necessary, for Thomson to catch up on the many years of complex litigation that have taken place in its absence and without its involvement.

The DAPs have been on notice of Thomson's alleged involvement in the conduct underlying their claims since at least 2008 and have been on notice of the specific facts allegedly supporting their proposed amendments since August 2012, if not earlier. Thomson S.A. was named as a defendant in four of the original class action complaints filed in 2008, and both Thomson S.A. and Thomson Consumer Electronics, Inc. were named as defendants in a proposed amendment to the indirect purchaser plaintiffs' ("IPPs") complaint[2] in August 2012. Nonetheless, no Thomson entity was named by any of the DAPs when they filed their opt-out actions ("Direct Actions") in 2011 and 2012.

Now, five years after Thomson was first named as a defendant in the original class action complaints, four years after it was dropped as a defendant by the Consolidated Amended Complaints,

---

[1] As discussed in earlier briefing before this Court, Thomson S.A. objects to this Court exercising personal jurisdiction over it. (*See* Dkt. No. 397.) By specially appearing for purposes of opposing the DAPs' Motion, Thomson S.A. does not waive, and expressly preserves, all rights, objections and defenses, including, without limitation, objections to jurisdiction, venue and service. In the event the Motion is granted, Thomson S.A. will move to dismiss the DAPs' amended complaints on these grounds.

[2] Any terms undefined herein have the same meanings as used in the Direct Purchaser Plaintiffs' Consolidated Amended Complaint (Dkt. No. 436) and the Indirect Purchaser Plaintiffs' Consolidated Amended Complaint (Dkt. No. 437) (collectively, the "Consolidated Amended Complaints").

1  and a year and a half after most of the DAPs filed the Direct Actions, the DAPs wish to once again re-
2  introduce Thomson into this complex litigation at this exceedingly late stage in the game.  The DAPs
3  have failed to demonstrate that their proposed amendments are timely when the allegations could have
4  been included years ago, particularly given the extreme prejudice and delay that will necessarily result in
5  the event the Motion is granted.  Adding Thomson as a defendant three years into discovery in these
6  cases will force Thomson to play "catch up" in filing dispositive motions, conducting discovery and
7  preparing its defense, causing delay and disruption at the expense of the other parties who have actively
8  litigated this case for the past several years and will unduly result in extreme prejudice to Thomson.  The
9  Court should therefore deny the Motion.

## BACKGROUND

11          Thomson S.A. (but not Thomson Consumer Electronics, Inc.) was named as a defendant
12  in two of the original direct purchaser plaintiffs' ("DPPs") complaints (*Radio & TV Equip., Inc.* v.
13  *Chunghwa Picture Tubes, Ltd., et al.*, No. 08-00542 (D.N.J., filed Jan. 28, 2008) and *Sound Investments*
14  *Corp*. v. *Chunghwa Picture Tubes, Ltd., et al.*, No. 08-00543 (D.N.J., filed Jan. 28, 2008)), as well as in
15  two of the original IPPs' complaints (*Stack, et al.* v. *Chunghwa Picture Tubes, Ltd., et al.*, No. 08-01319
16  (N.D. Cal., filed March 7, 2008) and *Ganz* v. *Chunghwa Picture Tubes, Ltd., et al.*, No. 08-01721 (N.D.
17  Cal., filed March 31, 2008)), all of which were later consolidated into the DPPs' and IPPs' Consolidated
18  Amended Complaints (collectively, the "Class Actions").  Each of those original complaints alleged that
19  Thomson S.A. manufactured, sold, and distributed CRTs and/or CRT Products throughout the United
20  States and was involved in a global conspiracy with other named defendants.  (*See Radio & TV Equip.,*
21  *Inc.* ¶¶ 27, 69-79; *Sound Investments Corp*., ¶¶ 27, 69-79; *Ganz,*¶¶ 22, 48-72; *Stack* ¶¶ 33, 62-86.)
22          Thomson has not, however, actively participated in the Class Actions because the DPPs
23  and IPPs voluntarily decided not to pursue Thomson in March 2009.  On September 12, 2008, the Court
24  entered the Stipulation and Order for Limited Discovery Stay.  (Dkt. No. 379.)  Under the terms of the
25  Stipulation and Order, the DPPs and IPPs were ordered to file consolidated complaints by March 16,
26  2009, rendering it unnecessary to respond to any of the originally filed complaints.  (*Id.* ¶ 13.)  In
27  addition, discovery was generally suspended for six months, provided that the "plaintiffs shall be
28  allowed to seek discovery relating to the issue of personal jurisdiction" as to "any defendant [that] takes

the position that . . . the Court lacks personal jurisdiction over that defendant." (*Id.* ¶ 4(g).) On October 15, 2008, Thomson S.A. filed a Notice Pursuant to Paragraph 4(g) of Stipulation and Order, notifying the DPPs and IPPs of Thomson S.A.'s intent to object to any discovery or other proceedings on the ground that the Court lacks personal jurisdiction over Thomson S.A. (Dkt. No. 397). Although the DPPs and IPPs were then entitled to seek certain jurisdiction-related discovery from Thomson S.A., they never did so.

Thomson's active participation in this case ended at that point, over four years ago. Likely recognizing the minor role that Thomson played in any alleged conspiracy and the challenges associated with this Court exercising personal jurisdiction over Thomson S.A., the DPPs and IPPs did not include any allegations concerning Thomson nor name any Thomson entity as a defendant when they filed their Consolidated Amended Complaints on March 16, 2009. (*See* Dkt. Nos. 436, 437.) As the DAPs point out in their Motion, the IPPs filed a motion on August 22, 2012 for leave to amend their complaint to add Thomson and others as defendants. (Mot. at 2-3.) However, Thomson was not ultimately named as a defendant and instead was named as a non-party co-conspirator pursuant to a Stipulation between Thomson and the IPPs after Thomson opposed that motion. (*See* Dkt. No 1505.)

In the four years since the Consolidated Amended Complaints were filed, both the Class Actions and the Direct Actions have made substantial progress – all without Thomson's involvement. Numerous dispositive motions have been filed addressing matters of significance to Thomson. (*See, e.g.*, Dkt. No. 479 (joint motion to dismiss in DPPs' Class Action); Dkt. No. 485 (joint motion to dismiss in IPPs' Class Action); Dkt. No. 1013 (joint motion for summary judgment in DPPs' Class Action); Dkt. No. 1317 (joint motion to dismiss and for judgment on the pleadings in Direct Actions).) Furthermore, discovery has been ongoing since March 8, 2010 in the Class Actions and since at least 2012 in the Direct Actions, which was likely only additive to the voluminous discovery previously produced in the Class Action. (Mot. at 2.) The DAPs have benefited from the existing discovery in the Class Actions and they acknowledge in their Motion that "the Defendants produced the majority of their documents in late 2011," "[s]ome Rule 30(b)(6) depositions have been conducted," and "merits

-3-

depositions have recently begun."[3] (*Id.*)  Indeed, Thomson understands from other defendants that millions of pages of documents have been produced by parties and third parties in the Class Actions and Direct Actions and multiple depositions have already been taken, all of which Thomson will need to review before it will be able to meaningfully participate in this litigation.

On March 26, 2013, the DAPs filed their Motion seeking to name Thomson as a defendant in this action.  The DAPs assert that "[p]rompted by the IPPs' motion for leave to amend, [they] began conducting targeted reviews of the [d]efendants' voluminous document productions for evidence of Thomson and Videocon's participation in the conspiracy."  (Mot. at 5.)  Purportedly, "[d]uring that review, Plaintiffs located evidence" which warranted the proposed amendments.  (*Id.*)  However, the new allegations in the proposed amended complaints are generic and are copied nearly verbatim from the allegations the IPPs sought leave to add to their complaint seven months ago, including that "Thomson participated in dozens of meetings with its competitors, including several Glass Meetings and multiple bilateral meetings."  (*See, e.g.*, Dkt. No. 1613, Ex. C, ¶ 147.)  Nothing in the DAPs' proposed amendments nor the Motion demonstrate how any alleged further review of discovery justifies the DAPs adding Thomson only now, or why it took the DAPs seven months after the IPPs' motion to amend to glean the evidence from their "targeted reviews" that led to the copying of these generic allegations against Thomson.

## ARGUMENT

### I. THE DAPS' MOTION CANNOT SATISFY EVEN THE LIBERAL STANDARD FOR AMENDMENT SET FORTH IN RULE 15.

"When considering a motion for leave to amend, a district court must consider whether the proposed amendment results from undue delay, is made in bad faith, will cause prejudice to the opposing party, or is a dilatory tactic."  *Chodos* v. *W. Publ'g Co.*, 292 F.3d 992, 1003 (9th Cir. 2002); *see also Jackson* v. *Bank of Haw.*, 902 F.2d 1385, 1387 (9th Cir. 1990).  The decision to grant or deny

---

[3] On March 3, 2013, the Court entered a Scheduling Order applicable to both the Class Actions and the Direct Actions.  (Dkt. No. 1594.)  According to this Order, the defendants' expert reports are due on November 22, 2013, fact and expert discovery are to be completed by March 3, 2014, less than 11 months from the date of this Opposition, and dispositive motions are to be filed shortly thereafter on April 15, 2014.

1  leave to amend is a matter for the Court's discretion, *Ascon Props., Inc.* v. *Mobil Oil Co.*, 866 F.2d
2  1149, 1160 (9th Cir. 1989), and "is not to be granted automatically." *Jackson*, 902 F.2d at 1387.

3  In the LCD case, which involves many of the same parties as the present case, Judge
4  Illston rejected an attempt by a class of indirect purchaser plaintiffs to add new defendants – including
5  the Mitsubishi entities that the DAPs also now seek to add to this case – at a similarly late date.
6  (Declaration of Laura K. Oswell ("Oswell Decl."), Ex. A, Order re: Indirect Purchaser Plaintiffs' Motion
7  to File a Third Amended Complaint, *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-1827 (N.D.
8  Cal. Apr. 12, 2011) (Dkt. No. 2641) ("LCD Order").)[4]  The Court stated that it was simply "too late" for
9  the plaintiffs to add new defendants and acknowledged that "it's going to just take too much time and
10 there's no good reason not to do this – not to have done it before." (Oswell Decl., Ex. B, *In re TFT-LCD*
11 *(Flat Panel) Antitrust Litig.*, No. 07-1827 (N.D. Cal.), Sept. 22, 2010 Hr'g Tr. ("LCD Transcript") at
12 22:3-5.)  On April 12, 2011, the Court issued a written order largely denying the motion to amend,
13 except as to those new defendants necessary to clarify the liability of an existing defendant, those
14 defendants that were formed by a merger of existing defendants, or those defendants necessary for
15 purposes of facilitating a settlement, holding that, "adding [certain new] entities as defendants will cause
16 delay due to service, new discovery, and motion practice." (LCD Order at 1.)  This Court should reach
17 the same conclusion as to Thomson in this case.

18  **A.     The Proposed Amendments Would Severely Prejudice Thomson and The Other Parties To This Litigation.**
19
20  Naming Thomson in the Direct Actions after five years of complex procedural history
21 and discovery in the Class Actions—to which the Direct Actions are inextricably linked—would
22 severely prejudice Thomson.  Absent significant adjustments to the current Scheduling Order, the
23 amendments would effectively deprive Thomson of the opportunity to adequately defend itself.  As
24 Northern District courts have recognized, the "act of simply . . . [a]mending a complaint to add a party
25 poses an especially acute threat of prejudice to the entering party…[a]voiding prejudice to the party to

---

[4]  Although defendants in that case opposed the motion to amend pursuant to Fed. R. Civ. P. 16 in addition to Fed. R. Civ. P. 15, whatever distinctions may exist between the two rules did not appear to factor into the Court's analysis. (*See* LCD Order; LCD Transcript at 22:3-5.)

-5-

be added thus becomes [a] major objective." *Wells Fargo Bank, N.A.* v. *Renz*, No. 08-02561, 2010 WL 2867615, at *3 (N.D. Cal. July 20, 2010) (internal citations omitted). Indeed, avoiding prejudice to Thomson is the most important factor in assessing the Motion under Rule 15. *See Jackson*, 902 F.2d at 1387 (affirming denial of leave to amend complaint).

If added as a defendant at this late date, Thomson S.A. would need to be served and it's jurisdictional defense would then need to be litigated. During the pendency of that motion to dismiss, it would be inequitable and prejudicial if Thomson S.A. were forced to simultaneously address the many crucial events that are scheduled to occur in the meantime.[5] If the DAPs demand jurisdictional discovery in response to Thomson S.A.'s motion to dismiss on jurisdictional grounds, it is reasonable to assume that the discovery, briefing and decision on this issue alone would take an additional four or more months after Thomson S.A. is properly served. In addition, Thomson intends to assert substantial statute of limitations defenses that, along with other substantive challenges, would also need to be resolved by way of motions to dismiss. Again, that process is likely to delay the current schedule by several months.

In the event that Thomson is added as a defendant in this case and remains a defendant after these threshold issues are decided, Thomson would be left to complete the following tasks while simultaneously preparing to meet the various deadlines that are imposed by the Scheduling Order:

- Collect, review, and produce documents responsive to discovery requests from the DAPs—a process which is only further complicated by the fact that Thomson S.A. is based in France and Thomson exited the CRT business entirely in 2005;
- Obtain and search millions of pages of documents produced in the Class Actions and Direct Actions for documents that relate to Thomson, and review, analyze, and possibly translate those documents;
- Serve additional discovery on the DAPs related to Thomson;

---

[5] As noted above, the DAPs have been aware at least since October 2009, when Thomson S.A. filed its notice of intent to object to the Court's jurisdiction (Dkt. No. 397), that the Court's jurisdiction as to Thomson S.A. would need to be resolved before this case could proceed as to Thomson S.A.

- Meet and confer regarding the DAPs' discovery responses and file any necessary motions to compel;
- Engage experts and prepare expert reports;
- Identify, locate, contact and interview former Thomson personnel who may have knowledge concerning the DAPs' claims, a task which will again be complicated by the fact that Thomson S.A. is based in France and Thomson exited this business almost eight years ago; and
- Identify witnesses and notice depositions (which will likely including re-noticing depositions of witnesses already deposed but in whose depositions Thomson did not participate).

Given the magnitude of the tasks to be completed, in the absence of a stay or a substantial amendment to the current Scheduling Order, Thomson will be unfairly forced by the proposed amendments to litigate a complex international matter concerning a business it has not owned for eight years on an expedited and entirely impracticable basis.[6]

In circumstances like this, where the proposed amendments will necessitate additional discovery and thereby delay proceedings, leave to amend is frequently denied on the grounds that such additional delay and consequential expense to the parties is unduly prejudicial. *See, e.g.*, *Lockheed Martin Corp.* v. *Network Solutions, Inc.*, 194 F.3d 980, 986 (9th Cir. 1999) ("A need to reopen discovery and therefore delay the proceedings supports a district court's finding of prejudice from a delayed motion to amend the complaint."); *Osakan* v. *Apple Am. Grp.*, No. 08-4722, 2010 WL 1838701, at *5 (N.D. Cal. May 5, 2010) (denying motion for leave to amend the complaint because "[a]llowing Plaintiffs to add new plaintiffs at this juncture would require the Defendants to conduct new and/or additional discovery"); *Roling* v. *E*Trade Sec., LLC,* 279 F.R.D. 522, 525-26 (N.D. Cal. 2012) (denying motion for leave to amend the complaint where motions to dismiss and factual discovery would disrupt the case management schedule and thereby cause undue prejudice). Moreover, Thomson will suffer

---

[6] The substantial delay that will result from the need for Thomson to complete these enormous undertakings will almost certainly be exacerbated by presently unforeseeable disputes between the parties and other complications that will inevitably cause additional delay and expense to all parties.

even greater prejudice in completing these tasks because it will be very difficult for Thomson to locate key witnesses and evidence almost six years after the termination of the alleged conspiracy and almost eight years after Thomson exited the CRT business entirely.  *Wilkins-Jones* v. *Cnty. of Alameda*, No. 08-1485, 2012 WL 3116025, at *9 (N.D. Cal. July 31, 2012) ("Prejudice sufficient to warrant denying leave to amend can include, *e.g.*, the loss of evidence and witnesses due to the delay.")  Under these circumstances, in the absence of a stay or a substantial amendment to the Scheduling Order, the proposed amendments would cause undue prejudice to both Thomson and the existing defendants.[7]

In the LCD case, the Northern District recognized, as courts in the Ninth Circuit have consistently done, that this is precisely the type of prejudice that Rule 15 was intended to protect against. *See* LCD Order at 1; *see also, e.g., AmerisourceBergen Corp.* v. *Dialysist W., Inc.*, 465 F.3d 946, 952-54 (9th Cir. 2006) (affirming denial of motion seeking leave to amend made five months before discovery deadline because it would prejudice defendant by forcing it to "scramble" to respond to "different legal theories and . . . different facts"); *Morongo Band of Mission Indians* v. *Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990) (affirming order denying plaintiff's request to file amended complaint); *Loehr* v. *Ventura Cnty. Cmty. Coll. Dist.*, 743 F.2d 1310, 1319-20 (9th Cir. 1984) (denying leave to amend to add new defendants where plaintiff's "new pleadings involved many of the same occurrences as the original complaint, but also would have substantially complicated and delayed the case for new discovery, responsive pleadings, and considerations of state law"); *Wilkins-Jones*, 2012 WL 3116025, at *8 (denying leave to amend to add new defendant, noting "the possibility of prejudice from amendment is the most important factor in the Rule 15(a) analysis").

The DAPs claim that Thomson will not be prejudiced because Thomson has "been on notice of the facts described in Plaintiffs' complaints since 2007 [sic], when the IPPs named Thomson as a defendant, or at least since 2011, when the IPPs entered a tolling agreement with . . . Thomson."  (Mot.

---

[7]   Any delay resulting from the proposed addition of Thomson will also prejudice the other defendants in both the Direct Actions and the Class Action and disrupt the efficient proceeding of this case.  The DAPs argue that this is not the case because the proposed amendment "would not alter the scope of discovery against the existing Defendants or otherwise prejudice them." (Mot. at 12.)  The DAPs miss the point.  The addition of a new defendant (let alone the several defendants DAPs seek to add here) at this time will necessarily delay the proceedings significantly, at great cost to all parties.

-8-

1  at 12.)  The DAPs thereby suggest that Thomson's *awareness* of this litigation is somehow equivalent to
2  Thomson's *participation* in this litigation.  (*See id.*)  This, of course, makes no sense and confounds the
3  question of Thomson's knowledge of the existence of the litigation with the significant work that will be
4  required and prejudice that will result if Thomson is brought into this litigation at this stage.

5            The DAPs cite to the Report and Recommendation of the Special Master (the "Mitsubishi
6  R&R") (Dkt. No. 1453) as if it condones their belated attempt to add Thomson to this litigation.  (Mot.
7  at 11-12.)  It does nothing of the sort.[8]  *First*, the R&R related exclusively to Mitsubishi and says
8  nothing about Thomson.  (*See* Dkt. No. 1453.)  Because the IPPs agreed not to add Thomson as a
9  defendant, and only as an alleged co-conspirator, the Special Master never had occasion to address the
10 issues unique to Thomson, including the fact that it sold its CRT business in 2005, claims against it are
11 likely time-barred, and that Thomson S.A. is a French company.  (*See id.*; *see also* Dkt. No. 1505.)
12 *Second*, the Mitsubishi R&R was issued four months ago, in response to a motion that was filed seven
13 months before the instant Motion was filed.  While the Special Master concluded that the amendments
14 were timely and that there was no prejudice, that conclusion was firmly rooted in the particular facts
15 before the Special Master at that time and heavily dependent upon the posture of the case. While at that
16 time, the Special Master noted that "[n]o purely merits depositions have as yet been taken, and most of
17 the depositions have focused on class certification issues" (Mitsubishi R&R at 2), now "[s]ome Rule
18 30(b)(6) depositions have been conducted, and merits depositions have recently begun." (Mot. at 2.)
19 There is ample reason to believe that if the IPPs had made their motion today, the result would have
20 been different.[9]  *Finally*, although the Special Master noted that the "Plaintiffs had been diligent in
21 seeking the amendment," the DAPs have clearly not been, taking seven months to cut and paste
22 allegations that appeared in the IPPs' proposed amended complaint in August 2012.  (*See infra* at 11-
23 12.)

---

[8]     The Mitsubishi R&R was never adopted by this Court.  (*See* Dkt. No. 1505 (noting parties had agreed to stipulate to amendments to add Thomson and Mitsubishi as *non-party conspirators*, thereby mooting the motion for leave to amend).)

[9]     The fact that the IPPs ultimately agreed to resolve their motion to amend by agreement with both Thomson and Mitsubishi without naming either as a defendant suggests that the IPPs were cognizant of the substantial complications that would ensue and prejudice to all parties that would result if their proposed amendments were approved.

-9-

The remainder of the authority cited by the DAPs in support of the proposed amendments is similarly inapposite. Several of the cases cited address proposed amendments adding new claims or clarifying existing ones, not adding new defendants,[10] and "[a]mendments seeking to add claims are to be granted more freely than amendments adding parties." *Union Pac. R. Co.* v. *Nev. Power Co.*, 950 F.2d 1429, 1432 (9th Cir. 1991). Other cases cited by the DAPs seek to add as defendants entities that are alter egos or agents of or are otherwise related to existing defendants (*see Expoconsul Int'l, Inc.* v. *A/E Sys., Inc.*, 145 F.R.D. 336, 336 (S.D.N.Y. 1993), *Smith* v. *Guar. Serv. Corp.*, 51 F.R.D. 289, 296 (N.D. Cal. 1970)) or that were already defendants in parallel actions. Still other cases cited by the DAPs concern amendments in the "initial stages of discovery," *Bechtel* v. *Robinson*, 886 F.2d 644, 652 (9th Cir. 1989), or in the case's "early stages" with no trial date pending, *DCD Programs, Ltd.* v. *Leighton*, 833 F.2d 183, 187 (9th Cir. 1987). None of these cases support amendment in the circumstances presented by the DAPs' Motion. Finally, certain of the cases cited by the DAPs actually support the denial of the Motion. *See, e.g.*, *DCD Programs*, 833 F.2d at 187 ("Amending a complaint to add a party poses an especially acute threat of prejudice to the entering party.").

### B. The DAPs Have Provided Insufficient Justification For Naming Thomson as a Defendant at This Late Stage.

Courts in the Ninth Circuit do not permit a plaintiff to amend its complaint where it has unjustifiably and inexcusably delayed the proposed amendment. *See Jackson*, 902 F.2d at 1388. In assessing delay, the court asks whether the moving party "knew or should have known the facts and theories raised by the amendment in the original pleading." *Id*.

The DAPs cannot credibly claim that they did not know or could not have known of their alleged claims against Thomson prior to August 22, 2012. As discussed *supra*, Thomson was named as a defendant in four complaints filed in 2008. Moreover, as the DAPs point out, Technicolor S.A. (f/k/a Thomson S.A.) acknowledged in its 2011 Annual Report that it had appeared before the European Commission regarding its involvement in this matter. (Mot. at 5-6.) That report was publicly released

---

[10] *See, e.g., Foman* v. *Davis*, 371 U.S. 178, 179 (1962); *Eminence Capital, LLC* v. *Aspeon, Inc.*, 316 F.3d 1048, 1053 (9th Cir. 2003); *Issen* v. *GSC Enters., Inc.*, 522 F.Supp. 390, 392 (N.D. Ill. 1981).

-10-

OPPOSITION TO MOTION FOR LEAVE TO AMEND
Case No. CV-07-5944-SC

Sullivan & Cromwell LLP

1  on March 27, 2012, nearly one year ago.[11] (Oswell Decl., Ex. D, at 1). In fact, Thomson S.A.'s public

2  filings from as early as February 2008 disclosed the fact that the U.S. Department of Justice and

3  European Union were investigating alleged antitrust violations in the CRT market by Thomson. (*See*

4  *e.g.*, Oswell Decl., Ex. E, at 84).

5         The DAPs also rely on allegedly incriminating documents and testimony indicating that

6  Thomson participated in the so-called "glass meetings." (*See* Mot. at 5.) However, the DAPs admit that

7  the "majority" of the defendants' documents—in which these supposedly incriminating documents

8  would have been found—had been produced by late 2011. (Mot. at 2.) Surely, if the DAPs had made

9  *any effort* to investigate their claims, they would have identified this "new evidence" long ago.

10        Regardless, *by their own admission*, the DAPs knew of the specific allegations they now

11 make against Thomson no later than August 22, 2012 when the IPPs filed their motion for leave to

12 amend. (Dkt. No. 1325.) The DAPs admit that their proposed amendments were "prompted by" that

13 motion. (Mot. at 5.) While the DAPs argue that their "targeted reviews" of documents after the IPPs'

14 filed their motion revealed evidence to support naming Thomson as a defendant in this matter, neither

15 the Motion, the declaration in support thereof, nor the proposed amendments themselves (1) reveal the

16 specific nature of that evidence beyond generalized allegations that Thomson participated in meetings

17 with other defendants, (2) demonstrate that this evidence was somehow unavailable to the DAPs prior to

18 the IPPs' motion for leave to amend or (3) suggest how this evidence differs from that purportedly

19 identified by the IPPs. Tellingly, the allegations in the proposed amended complaint appear to have

20 been copied nearly verbatim from the draft of the IPPs' Fourth Amended Complaint included with their

21 August 22, 2012 motion. (*Compare* Dkt. No. 1610-1, Ex. C., ¶ 161 ("Between at least 1996 and 2005,

22 Defendant Thomson participated in *dozens of meetings* with its competitors . . . .") *with* Dkt. No. 1325-1,

23 Ex. A, ¶ 186 ("Between at least 1996 and 2005, Defendant Thomson participated in *at least 61 meetings*

24 with its competitors . . . ."); *compare also* Dkt. No. 1610-1, Ex. C, ¶¶ 61-63 *with* Dkt. No. 1325-1, Ex.

---

[11] The DAPs also fail to disclose that the same information appears in Technicolor's *2010 Annual Report,* which was made publicly available on March 30, 2011. (*See* Oswell Decl., Ex. C, at 1, 246.)

-11-

1  A, ¶¶ 102-04.)  Given the nature of their amendments, there is simply no reason the DAPs should have
2  waited an additional seven months to file the instant Motion.
3          The DAPs have simply ignored their potential claims against Thomson since they
4  brought their actions two years ago.  Thomson should not be punished, and this large, expensive case
5  should not be derailed because of the DAPs' unexplained decision to delay taking action against
6  Thomson.  Under these circumstances, the DAPs' substantial and unjustified delay in bringing the
7  Motion is sufficient reason to deny it.  *See, e.g., Lockheed Martin Corp.,* 194 F.3d at 986 (affirming
8  denial of leave to amend where plaintiff knew about facts underlying new proposed claim months before
9  proposed amendment); *Scognamillo* v. *Credit Suisse First Boston, LLC*, 587 F. Supp. 2d 1149 at 1159
10 (denying plaintiffs' motion to amend complaint where plaintiffs "have long had access to the
11 information on which they based their new theory of the case, and delayed in seeking leave to amend
12 their complaint"); *see also AmerisourceBergen*, 465 F.3d at 953 ("We have held that an eight month
13 delay between the time of obtaining a relevant fact and seeking a leave to amend is unreasonable.")

14 **II.    IF LEAVE TO AMEND IS GRANTED, IT SHOULD BE CONDITIONED UPON A FOUR MONTH STAY OF THIS LITIGATION AND AN ADDITIONAL EIGHT**
15 **MONTH EXTENSION OF ALL DEADLINES.**

16         Although the DAPs' motion to amend should be denied for the foregoing reasons, in the
17 event that it is not, the Court should stay this case for a minimum of four months to allow litigation of
18 Thomson S.A.'s personal jurisdictional challenge.  While the DAPs state that "the discovery cutoff date
19 is nearly a year away" (Mot. at 11) and thereby insinuate that the case has just begun, in reality there
20 will likely be no more than eight to nine months in between the Court's ruling on the Motion and the
21 close of discovery on March 3, 2014, during which Thomson would have to first brief and argue its
22 motions to dismiss and then complete the mammoth task of catching up on fact and expert discovery in
23 this matter.  Thomson S.A. should not be further prejudiced by being forced to incur costs to litigate
24 other substantive issues in this case while simultaneously litigating jurisdictional issues and engaging in
25 jurisdictional discovery before it has even been determined that this Court has jurisdiction over
26 Thomson S.A.  In addition, Thomson will assert substantial statute of limitations and other challenges to
27
28

1  the proposed claims that should be adjudicated before it is required to participate in ongoing, complex
2  litigation.  Four months is realistically the minimum period in which those matters can be determined.
3          Thereafter, the Court should extend the deadlines on the current Scheduling Order by an
4  additional eight months (for a total of 12 months including the stay period) so that Thomson has
5  sufficient time to get up to speed and can effectively prepare to participate in ongoing events, which will
6  require extensive review of the facts, service of discovery, and the retention and preparation of experts
7  in what will still be a very abbreviated time period, particularly in light of the fact that the DAPs and
8  other parties to this litigation have been at it for several years already.

## CONCLUSION

The DAPs' proposed amendments would severely prejudice Thomson and should be denied.  In the event that the Motion is not denied, it should be conditioned upon a four month stay of this case and an additional eight month (a total of 12 months) extension of all deadlines in the March 3, 2013 Scheduling Order.

Dated:  April 9, 2013

Respectfully submitted,

/s/ Robert A. Sacks
Robert A. Sacks (SBN 150146)
Rory P. Culver (SBN 271868)
SULLIVAN & CROMWELL LLP
1888 Century Park East, Suite 2100
Los Angeles, California 90067
Tel.: (310) 712-6600
Fax: (310) 712-8800

Laura Kabler Oswell (SBN 241281)
SULLIVAN & CROMWELL LLP
1870 Embarcadero Road
Palo Alto, California 94303
Tel.: (650) 461-5600
Fax: (650) 461-5700

Attorneys for Intervenor Thomson
Consumer Electronics, Inc. and
Thomson S.A. (Specially Appearing)