# Exhibit 17

```
 1                UNITED STATES DISTRICT COURT
 2              NORTHERN DISTRICT OF CALIFORNIA
 3                   (SAN FRANCISCO DIVISION)
 4
 5
 6  IN RE:  CATHODE RAY TUBE (CRT)
 7  ANTITRUST LITIGATION                          Case No.
 8                                                07-5944 SC
 9                                                MDL No. 1917
10  - - - - - - - - - - - - - - - - - - - - - -
11  This Document Relates to:
12  INDIRECT PURCHASER ACTIONS
13  - - - - - - - - - - - - - - - - - - - - - -
14              SUPERIOR COURT OF CALIFORNIA
15             CITY AND COUNTY OF SAN FRANCISCO
16  - - - - - - - - - - - - - - - - - - - - - -
17  STATE OF CALIFORNIA,
18             Plaintiffs
19     vs.                                        Case No.
20                                                CGC-11-51584
21  SAMSUNG SDI, INC., CO., LTD., et al.,
22
23             Defendants.
24  - - - - - - - - - - - - - - - - - - - - - -
25
```

2

```
 1                  Guttman - October 11, 2012
 2        A.    I'm the ultimate purchaser --
 3        Q.    Okay.
 4        A.    -- as president of the corporation.
 5        Q.    So no one else except you purchases CRT
 6  finished products?
 7        A.    That is correct.
 8        Q.    Where is your corporate headquarters?
 9        A.    Washington, D.C.
10        Q.    And how many locations does Lawyer's
11  Choice have?
12        A.    One.
13        Q.    So are you incorporated in Washington
14  D.C.?
15        A.    We are.
16        Q.    How is Lawyer's Choice organized as a
17  company?
18        A.    As a C Corp.
19        Q.    Okay.  Does it have any departments or
20  divisions?
21        A.    It does not.
22        Q.    And so what is your current position
23  besides owner of Lawyer's Choice?
24        A.    I'm a broker of record.  I'm president
25  of the corporation.  And I serve as a day-to-day
```

```
 1                  Guttman - October 11, 2012
 2       A.     Yes.
 3       Q.     What document is that?
 4       A.     Copy of my receipt.
 5       Q.     Has that been produced in this
 6  litigation?
 7       A.     I'm not sure.
 8              MR. GRALEWSKI:  Can we go off the record
 9       for one second.
10              THE VIDEOGRAPHER:  Going off the record
11       at 11:38.
12              (Discussion held off the record.)
13              THE VIDEOGRAPHER:  Back on the record at
14       11:39.
15  BY MS. NAIFEH:
16       Q.     Mr. Guttman, where were you when you
17  purchased the Dell 1100?
18       A.     Washington, D.C.
19       Q.     Were you at Lawyer's Choice?
20       A.     I was.
21       Q.     Where did you purchase the 1100 from?
22       A.     Dell.com.
23       Q.     You mentioned earlier that you live in
24  Florida.
25       A.     I do.
```

65

```
 1                  Guttman - October 11, 2012
 2        Q.    And you commute to D.C. for work?
 3        A.    That is correct.
 4        Q.    How often do you commute?
 5        A.    From the fall through the spring,
 6   usually on a weekly basis.
 7        Q.    By weekly basis, what do you mean?
 8              MR. GRALEWSKI:  I'm going to object to
 9        these questions as outside the scope of the
10        deposition notice.
11        A.    I generally come to Washington Monday --
12   on Monday, and leave Thursday or Friday.
13        Q.    Okay.  And I'm sorry, I'm sorry, what
14   month do you say you commute?
15              MR. GRALEWSKI:  Same objection.
16        A.    In the spring to the fall.  In the
17   summertime, I tend to be in Washington D.C.
18   full-time, except for a two-week vacation.
19        Q.    So is it possible that you could have
20   been in Florida when you purchased the Dell 1100?
21        A.    No.
22        Q.    You recall being in D.C. when you made
23   that purchase?
24        A.    I do.
25        Q.    Okay.  So what was included in the
```

66

```
 1              Guttman - October 11, 2012
 2            A F T E R N O O N   S E S S I O N
 3              THE VIDEOGRAPHER:  We're back on the
 4      record at 1:56.
 5  A L V I N   G U T T M A N,
 6       Having been previously duly sworn was
 7       examined and testified further as follows:
 8  EXAMINATION BY
 9  MS. NAIFEH: (CONTINUED)
10       Q.    Mr. Guttman, you understand you're still
11  under oath; is that correct?
12       A.    Yes.
13       Q.    Do you have a specific recollection of
14  purchasing the Dell 1100?
15       A.    No.
16       Q.    So you don't remember where you were
17  when you purchased it?
18              MR. GRALEWSKI:  I object to the form.
19       Asked and answered.
20       A.    Yes.  I was in Washington, D.C.
21       Q.    Okay.  Do you remember what time of day
22  it was?
23       A.    No.
24       Q.    If you look at 908 of Exhibit 367.
25       A.    367.
```

113

```
 1                  Guttman - October 11, 2012
 2       Q.     The order that we were looking at.
 3              MR. GRALEWSKI:  She's referring to the
 4       Bates No. 908.
 5       Q.     So under order details, it says the
 6  order was placed on March 20, 2006 at 2235.  So
 7  that's 10:35 p.m.
 8       A.     I'm simply reading the order detail.
 9  2006, 3/20, 2235.59.  Okay.
10       Q.     Does that match your recollection?
11              MR. GRALEWSKI:  Object to the form.
12       Misstates testimony.
13       A.     I really do not recollect when I ordered
14  the computer.
15       Q.     But you recollect that you were at
16  Lawyer's Choice when you ordered the computer?
17       A.     I believe so.
18       Q.     Would you have been working at Lawyer's
19  Choice at 10:30 at night, is that a normal practice
20  for you?
21       A.     It's not extraordinary, but it's not
22  normal.
23       Q.     Okay.  So is it possible you could have
24  been at home?
25       A.     I don't think so.

                              114
```

```
 1                  Guttman - October 11, 2012
 2       Q.    Why don't you think so?
 3       A.    Well, I don't have a computer in
 4  Washington D.C. that I typically use.  I don't think
 5  we had smart phones back then.  So this is -- I guess
 6  I would like to look at my original e-mail they
 7  confirmed back immediately.  And I don't know if this
 8  is an order that was placed by their computer or by
 9  me.  I honestly don't know.
10       Q.    You don't know.  Okay.
11             So you couldn't have been at home in
12  Florida when you purchased this computer?
13             MR. GRALEWSKI:  Object to the form.
14        Badgering, asked and answered.  Argumentative.
15       A.    It's not likely.
16       Q.    Why do you say that?
17       A.    Because typically when I need something,
18  it's during my time in Washington.  It just
19  doesn't -- I can't see myself ordering a computer for
20  Washington D.C. out of Florida at 10:30 at night.  I
21  don't -- I really don't recall.
22       Q.    Okay.  Is it possible?
23       A.    It's conceivable, yeah.
24       Q.    Did you -- if I'm not mistaken, earlier
25  today when you were testifying about the -- one of

                              115
```

```
 1                   Guttman - October 11, 2012
 2   the other computers that you purchased from Dell and
 3   you said you might have purchased that from
 4   Washington or from Florida.
 5        A.    That's correct.
 6        Q.    So what is it about this computer in
 7   particular that you think you would not have
 8   purchased --
 9        A.    Because this was used --
10        Q.    -- in Florida?
11        A.    This was used in Washington D.C.
12   specifically.
13        Q.    So the other computers that you
14   purchased that you might have purchased in Florida
15   wouldn't have been used for Washington D.C.?
16        A.    One of them was not.  The one that I
17   mentioned to you earlier was for my daughter.  It may
18   have been sent directly to Florida.
19        Q.    I see.  So when you mentioned the three
20   or four computer packages that you purchased earlier,
21   those weren't all for Lawyer's Choice?
22        A.    That's correct.
23        Q.    I see.  Okay.
24              And how many of those packages that you
25   mentioned were for Lawyer's Choice?
```

116

```
 1                  Guttman - October 11, 2012
 2       A.    At least two.
 3       Q.    At least two?
 4       A.    At least two, including the 1100.
 5       Q.    Okay.  This product was shipped to D.C.;
 6  is that correct?
 7       A.    Yes.
 8       Q.    But it is possible that you could have
 9  ordered it in Florida and had it shipped to D.C.?
10             MR. GRALEWSKI:  I object to the form of
11       the question.  Asked and answered.
12       A.    I do not recall ordering this from
13  Florida.
14       Q.    Okay.  But is it possible?
15             MR. GRALEWSKI:  I object to the form.
16       Asked and answered.  You just asked him that
17       question like five minutes ago and he answered
18       it, but you can ask him again.
19       A.    When I travel, there are a multitude of
20  different places that one can order anything.  But I
21  recall, to the best of my ability, that this
22  Dimension 1100 was ordered on a Dell website outside
23  or inside my office in Washington, D.C.
24       Q.    Inside your office in Washington D.C.?
25       A.    I believe so.  I really do.

                              117
```

ALVIN GUTTMAN

BARKLEY Court Reporters

```
 1                  Guttman - October 11, 2012
 2       Q.    Okay.  But you don't have a specific
 3   recollection of that purchase?
 4       A.    No.
 5       Q.    So why do you believe that it was
 6   purchased at your office in D.C.?
 7             MR. GRALEWSKI:  Object to the form.
 8        Asked and answered.
 9       A.    Because it was specifically needed for
10   Washington, D.C.
11       Q.    Okay.
12             MS. NAIFEH:  Can you mark this, please.
13             (Exhibit 368, Shipping Contents Label,
14        marked for identification, as of this date.)
15       Q.    Okay.  Do you recognize this document?
16       A.    Yes.
17       Q.    And what is it?
18       A.    It's the receipt that was included in
19   the box that came to Washington including the
20   computer.
21       Q.    Okay.  So it was inside the box?
22       A.    I think it's like a shipping label that
23   they -- that you take off the box.
24       Q.    One of those in the plastic?
25       A.    Exactly.

                          118
```

```
 1                    Guttman - October 11, 2012
 2         Q.      Were these records maintained prior to
 3   the production -- I'm sorry, where were those records
 4   maintained prior to the production?
 5         A.      In my file drawer.
 6         Q.      Okay.
 7         A.      Under computers.
 8         Q.      At Lawyer's Choice?
 9         A.      At Lawyer's Choice.
10         Q.      Is it the practice of Lawyer's Choice to
11   save the package slips of the products you receive?
12         A.      Yes.
13         Q.      Did a user manual or guide come with the
14   Dell 1100?
15         A.      I think so.
16         Q.      Do you have that?
17         A.      No.
18         Q.      Do you think you threw it away?
19         A.      Probably.
20         Q.      So you don't normally keep user manuals?
21         A.      No.
22         Q.      Okay.  How did you receive the product?
23         A.      By UPS.
24         Q.      Was it shipped to you directly?
25         A.      It was shipped to Lawyer's Choice
```

```
 1                  Guttman - October 11, 2012
 2   Suites' corporate offices.
 3          Q.      And where was it shipped from?
 4          A.      According to this document, Exhibit 369,
 5   Austin, Texas.
 6          Q.      Okay.  Who paid for the shipping?
 7          A.      I did.
 8          Q.      Okay.  Was the cost of the shipping
 9   included in the cost you paid for the product?
10          A.      No.
11          Q.      It was additional?
12          A.      Yes.
13          Q.      And how much was that?
14          A.      Lawyer's Choice paid $24 for the
15   shipping.
16          Q.      Okay.  Is the CRT monitor you purchased
17   a good product, in your opinion?
18          A.      In the present or in the past?
19          Q.      Both.
20          A.      In the present, I have no idea.  It
21   could be scrap.  In the past, it did function
22   properly.
23          Q.      It functioned properly.
24                  Were you happy with the way -- with its
25   overall performance?

                              123
```