1  Mario N. Alioto (56433)
   Lauren C. Capurro (241151)
2  TRUMP, ALIOTO, TRUMP & PRESCOTT LLP
   2280 Union Street
3  San Francisco, CA 94123
   Telephone:     (415) 563-7200
4  Facsimile:     (415) 346-0679
   Email: malioto@tatp.com
5  Email: laurenrussell@tatp.com

6  *Interim Lead Counsel for Indirect-Purchaser Plaintiffs*

7  [Additional Counsel Listed on Signature Page]

8

9

10                **UNITED STATES DISTRICT COURT**

11              **NORTHERN DISTRICT OF CALIFORNIA**

12                 **SAN FRANCISCO DIVISION**

13  IN RE: CATHODE RAY TUBE (CRT)      Master File No. CV-07-5944-SC
    ANTITRUST LITIGATION
14                                     MDL No. 1917

15  ─────────────────────────────     **INDIRECT-PURCHASER PLAINTIFFS'**
                                       **OPPOSITION TO DEFENDANTS' MOTION**
16  This Document Relates to:          **TO STRIKE THE PROPOSED EXPERT**
                                       **TESTIMONY OF DR. JANET S. NETZ**
17  ALL INDIRECT PURCHASER ACTIONS
                                       Date:          TBD
18                                     Time:          TBD
                                       Courtroom:     Hon. Charles A. Legge (Ret.)
19                                                    Special Master

20                                     The Honorable Samuel Conti

21

22

23               **REDACTED PER COURT ORDER (D.E. 1577)**

24

25

26

27

28
    ──────────────────────────────────────────────────────────────

1

**TABLE OF CONTENTS**

2   INTRODUCTION ..........................................................................................................1

3   LEGAL STANDARD....................................................................................................3

4   ARGUMENT.................................................................................................................5

5   I.   DR. NETZ'S TESTIMONY WITHSTOOD A RULE 702 CHALLENGE IN
6        THE CLOSELY-RELATED *LCDs* ACTION.........................................................5

7        A.   The *LCDs* Court Deemed Dr. Netz's Expert Testimony Admissible
8             and Its Decision Should Be Followed Here..................................................5

9        B.   The *LCDs* Court Already Rejected Defendants' *Daubert* Arguments
              and Held that Dr. Netz's Overcharge and Pass-Through Analyses
10            Were Sound..................................................................................................6

11       C.   As in *LCDs*, Defendants' Motion to Strike Insists on Application
              of an Improper, Heightened Standard...........................................................8

12  II.  *GPUS* AND *FLASH MEMORY* ARE INAPPOSITE BECAUSE THEY
13       CONCERN CLASS CERTIFICATION, NOT ADMISSIBILITY OF
         EXPERT TESTIMONY ....................................................................................10
14
15  III. DR. NETZ'S TESTIMONY IS ADMISSIBLE UNDER APPLICABLE
         CASE LAW .......................................................................................................11

16       A.   Courts Consistently Deny *Daubert* Motions Based on Disputes Over
17            Conclusions or Techniques, As Is the Case Here ......................................11

18            1.   *In re Chocolate Confectionary Antitrust Litig.* (M.D. Pa.
19                 Dec. 7, 2012).................................................................................12

20            2.   *In re Urethane Antitrust Litig.* (D. Kan. Dec. 21, 2012)...............13

21            3.   *In re Vitamin C Antitrust Litig.* (E.D.N.Y. Dec. 21, 2012)............14

22       B.   Defendants' Cited Authorities Are Unpersuasive.....................................15

23  IV.  DR. NETZ'S PROFFERED TESTIMONY IS RELIABLE................................17

24       A.   Dr. Netz Is a Well-Qualified Expert and the Methodologies She
25            Employs Here Are Widely Accepted and Sound.......................................17

26       B.   Defendants' Mischaracterizations of Conclusions or Disagreements
              Over Technical Decisions Are Improper Grounds For Excluding
27            Dr. Netz's Testimony Under *Daubert* ......................................................17

28

i

INDIRECT-PURCHASER PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STRIKE THE
PROPOSED EXPERT TESTIMONY OF DR. JANET S. NETZ

MDL No. 1917

1.     Universal Pass-on by Retailers. ....................................................18

2.     Representative Retailer Pricing Data. ...........................................20

3.     Universal Pass-on by Manufacturers of Finished CRT Products......................................................................................22

4.     Use of Average Prices..................................................................24

      a.     The use of averages is appropriate.....................................24

      b.     Dr. Netz properly aggregated data.....................................26

      c.     Defendants mischaracterize Dr. Netz's averaging.............27

5.     Target Prices and Tubes Sold in the United States........................28

6.     Use of "Abstract" Economic Theories...........................................30

7.     Existence and Scope of Cartel ......................................................31

CONCLUSION................................................................................................................33

INDIRECT-PURCHASER PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STRIKE THE
PROPOSED EXPERT TESTIMONY OF DR. JANET S. NETZ

MDL No. 1917

1

## TABLE OF AUTHORITIES

2

**Federal Cases**

3

*Aventis Envtl. Sci. USA LP v. Scotts Co.,*
4     383 F. Supp. 2d 488 (S.D.N.Y. 2005) ........................................................................ 22

5     *Behrend v. Comcast Corp.,*
      655 F.3d 182 (3d. Cir. 2011), *cert. granted*, 133 S.Ct. 24 (June 25, 2012).................................. 3
6

*Bigelow v. RKO Radio Pictures,*
7     327 U.S. 251 (1946)..................................................................................................... 26

8     *Blackie v. Barrack,*
      524 F.2d 891 (9th Cir. 1975), *cert. denied*, 429 U.S. 816 (1976)................................. 24
9

10    *Boucher v. U.S. Suzuki Motor Corp.,*
      73 F.3d 18 (2d Cir. 1996) ............................................................................................ 15
11

*Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.,*
12    509 U.S. 209 (1993)..................................................................................................... 16

13    *Claar v. Burlington N. R.R. Co.,*
      29 F.3d 499 (9th Cir. 1994) ......................................................................................... 15
14

15    *Conwood Co.  v. United States Tobacco Co.,*
      290 F.3d 768 (6th Cir. 2002) ....................................................................................... 25
16

*Daubert v. Merrell Dow Pharms., Inc.,*
17    509 U.S. 579 (1993)........................................................................................... 1, 3, 4, 5

18    *Domingo v. T.K.,*
      289 F.3d 600 (9th Cir. 2002) ....................................................................................... 15
19

20    *Educ. Logistics, Inc. v. Laidlaw Transit, Inc.,*
      No. CV 07-06, 2012 WL 761950 (D. Mont. Mar. 8, 2012)......................................... 16
21

*Elsayed Mukhtar v. Cal. State Univ.,*
22    299 F.3d 1053 (9th Cir. 2002), *amended by* 319 F.3d 1073 (9th Cir. 2003) ................................ 4

23    *Estate of Hill v. ConAgra Poultry Co.,*
      No. CIV.A.4:94CV0198-HLM, 1997 WL 538887 (N.D. Ga. Aug. 25, 1997).......................... 22
24

25    *Finestone v. Florida Power & Light Co.,*
      No. 03-14040, 2006 WL 267330 (S.D. Fla. Jan. 6, 2006).......................................... 15
26

27    *General Elec. Co. v. Joiner,*
      522 U.S. 136 (1997)..................................................................................................... 15

28

iii

INDIRECT-PURCHASER PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STRIKE THE
PROPOSED EXPERT TESTIMONY OF DR. JANET S. NETZ

MDL No. 1917

*In re Aftermarket Auto. Lighting Prods. Antitrust Litig.,*
  276 F.R.D. 364 (C.D. Cal. 2011).............................................................................. 17, 25

*In re Bulk [Extruded] Graphite Prods. Antitrust Litig.,*
  No. Civ. 02-6030 (WHW), 2006 WL 891362 (D.N.J. Apr. 4, 2006)........................................ 17

*In re Cathode Ray Tube (CRT) Antitrust Litig.,*
  No. C-07-5944-SC, --- F. Supp. 2d ----, 2012 WL 5987861 (N.D. Cal. Nov. 29, 2012).............. 5

*In re Chocolate Confectionary Antitrust Litig.,*
  No. CIV.A. 1:08-MDL-1935, --- F.R.D. ----, 2012 WL 6652501
  (M.D. Pa. Dec. 7, 2012)...................................................................................*passim*

*In re Commercial Tissue Products,*
  183 F.R.D. 589 (N.D. Fla. 1998).......................................................................... 24

*In re Flash Memory Antitrust Litig.,*
  No. C 07-0086 SBA, 2010 WL 2332081 (N.D. Cal. June 9, 2010) ............................................ 1

*In re Fresh Del Monte Pineapples Antitrust Litig.,*
  No. 1:04-MD-1628 RMB, 2008 WL 5661873 (S.D.N.Y. Feb. 20, 2008)................................... 20

*In re Graphics Processing Units Antitrust Litig.,*
  253 F.R.D. 478 (N.D. Cal. 2008)............................................................................ 1

*In re High Pressure Laminates Antitrust Litig.,*
  No. 00 MDL 1368 (CLB), 2006 WL 931692 (S.D.N.Y. Apr. 7, 2006) ...................................... 25

*In re Indus. Silicon Antitrust Litig.,*
  No. 95-2104, 1998 WL 1031507 (W.D. Pa. Oct. 13, 1998)........................................................ 25

*In re Live Concert Antitrust Litig.,*
  247 F.R.D. 98 (C.D. Cal. 2007)............................................................................ 24

*In re NASDAQ Market-Makers Antitrust Litig.,*
  169 F.R.D. 493 (S.D.N.Y. 1996)........................................................................... 24

*In re OSB Antitrust Litig.,*
  No. 06-826, 2007 WL 2253425 (E.D. Pa. Aug. 3, 2007) .......................................................... 10

*In re Polypropylene Carpet Antitrust Litig.,*
  996 F. Supp. 18 (N.D. Ga. 1997)........................................................................... 17

*In re Polypropylene Carpet Antitrust Litig.,*
  93 F. Supp. 2d 1348 (N.D. Ga. 2000)...................................................................... 22

*In re Rubber Chemicals Antitrust Litig.,*
  232 F.R.D. 346 (N.D. Cal. 2005)........................................................................... 31

iv

INDIRECT-PURCHASER PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STRIKE THE
PROPOSED EXPERT TESTIMONY OF DR. JANET S. NETZ

MDL No. 1917

*In re Scrap Metal Antitrust Litig.,*
No. 1:02 CV 0844, 2006 WL 2850453 (N.D. Ohio Sept. 30, 2006) .......................................... 25

*In re Scrap Metal Antitrust Litig.,*
527 F.3d 517 (6th Cir. 2008) ............................................................................................. 4, 5

*In re Static Random Access Memory (SRAM) Antitrust Litig.,*
264 F.R.D. 603 (N.D. Cal. 2009) ............................................................................................ 31

*In re Static Random Access Memory (SRAM) Antitrust Litig.,*
No. 07-MD-01819 CW, 2010 WL 5071694 (N.D. Cal. Dec. 7, 2010) ....................................... 4

*In re TFT-LCD (Flat Panel) Antitrust Litig.,*
267 F.R.D. 583 (N.D. Cal. 2010) .............................................................................................. 5

*In re TFT-LCD (Flat Panel) Antitrust Litig. ,*
820 F. Supp. 2d 1055 (N.D. Cal. 2011) ..................................................................................... 6

*In re TFT-LCD (Flat Panel) Antitrust Litig.,*
No. M 07-1827 SI, 2011 WL 4345446 (N.D. Cal. Sept. 15, 2011) .............................................. 6

*In re TFT-LCD (Flat Panel) Antitrust Litig.,*
No. M 07-1827 SI, 2011 WL 6148677 (N.D. Cal. Dec. 7, 2011) ................................................ 6

*In re TFT-LCD (Flat Panel) Antitrust Litig.,*
No. M 07-1827 SI, 2012 WL 555090 (N.D. Cal. Feb. 21, 2012) ........................................ *passim*

*In re Urethane Antitrust Litig.,*
No. 04-1616-JWL, MDL 1616, 2012 WL 6681783 (D. Kan. Dec. 21, 2012) .................... *passim*

*In re Vitamin C Antitrust Litig.,*
No. 05-CV-0453, 06-MD-1738 BMC JO, 2012 WL 6675117
(E.D.N.Y. Dec. 21, 2012) ........................................................................................... 11, 14, 22

*In re W. Liquid Asphalt Cases,*
487 F.2d 191 (9th Cir. 1973) .................................................................................................. 24

*J. Truett Payne Co. Inc. v. Chrysler Motors Corp.,*
451 U.S. 557 (1981) ............................................................................................................... 26

*Jinro Am. Inc. v. Secure Invs. Inc.,*
266 F.3d 993 (9th Cir. 2001) .................................................................................................... 4

*Kumho Tire Co., Ltd. v. Carmichael,*
526 U.S. 137 (1999) ................................................................................................................. 4

*LeClercq v. The Lockformer Co.,*
No. 00 C 7164, 2005 WL 1162979 (N.D. Ill. Apr. 28, 2005) .................................................. 15

v

INDIRECT-PURCHASER PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STRIKE THE
PROPOSED EXPERT TESTIMONY OF DR. JANET S. NETZ

MDL No. 1917

*McGlinchy v. Shell Chem. Co.,*
   845 F.2d 802 (9th Cir. 1988) ................................................................................... 16

*Ollier v. Sweetwater Union High Sch. Dist.,*
   267 F.R.D. 339 (S.D. Cal. 2010) ............................................................................ 15

*Perez v. State Farm Mut. Auto. Ins. Co.,*
   C 06-01962 JW, 2012 WL 3116355 (N.D. Cal. July 31, 2012) ................................. 15

*Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co., Inc.,*
   998 F.2d 1224 (3d Cir.) *cert. denied*, 510 U.S. 994 (1993) ....................................... 22

*Presidio Golf Club v. Nat'l Linen Supply Corp.,*
   No. C-71-945, 1976 WL 1359 (N.D. Cal. Dec. 30, 1976) ......................................... 24

*Rojas v. Marko Zaninovich, Inc.,*
   No. CIV-F-09-0705, 2011 WL 6671737 (E.D. Cal. Dec. 21, 2011) ........................... 15

*Rowe Entm't, Inc. v. William Morris Agency, Inc.,*
   No. 98 CIV, 8272 (RPP), 2003 WL 22124991 (S.D.N.Y. Sept. 15, 2003) ................. 16

*Sementilli v. Trinidad Corp.,*
   155 F.3d 1130 (9th Cir. 1998) .................................................................................. 4

*Shatkin v. McDonnell Douglas Corp.,*
   727 F.2d 202 (2d Cir. 1984) ................................................................................... 16

*Standard Oil Co. v. Alaska,*
   415 U.S. 919 (1974) ............................................................................................... 24

*State of Ohio ex rel. Montgomery v. Louis Trauth Dairy, Inc.,*
   925 F. Supp. 1247 (S.D. Ohio 1996) ...................................................................... 22

*United States v. 14.38 Acres of Land,*
   80 F.3d 1074 (5th Cir. 1996) .................................................................................... 4

*United States v. Hankey,*
   203 F.3d 1160 (9th Cir.) *cert. denied*, 530 U.S. 1268 (2000) ...................................... 4

*Von Saher v. Norton Simon Museum of Art at Pasadena,*
   592 F.3d 954 (9th Cir. 2010) .................................................................................... 3

*Wright v. United States,*
   No. CV 06-01788-PHX-NVW, 2008 WL 820557 (D. Ariz. Mar. 25, 2008) ............... 15

*Zenith Radio Corp. v. Hazeltine Research, Inc.,*
   395 U.S. 100 (1969) ............................................................................................... 26

INDIRECT-PURCHASER PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STRIKE THE
PROPOSED EXPERT TESTIMONY OF DR. JANET S. NETZ

MDL No. 1917

**State Cases**

*Gordon v. Microsoft Corp.,*
    No. MC 00-5994, 2003 WL 23105550 (Minn. Dist. Ct. Dec. 15, 2003)................................... 24

**Federal Rules**

Fed. R. Evid. 201 ............................................................................................................................. 3

Fed. R. Evid. 702 ............................................................................................................. 1, 4, 13, 14

INDIRECT-PURCHASER PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STRIKE THE
PROPOSED EXPERT TESTIMONY OF DR. JANET S. NETZ

MDL No. 1917

**INTRODUCTION**

In antitrust cases, experts are regularly retained by the parties to offer opinions on issues of liability, impact, and damages—designed, ultimately, to assist the jury. This testimony, often provided by highly credentialed economic professionals and academics, is not lightly excluded. Indeed, motions to exclude expert testimony, brought under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and its progeny, bear a heavy burden. Unless an expert's testimony is shown to be so utterly without foundation as to be completely unreliable, that testimony is not to be barred from the courtroom. Its assessment is to be left in the hands of the jury. "[T]he rejection of expert testimony is the exception rather than the rule." *See* Fed. R. Evid. 702 Advisory Committee notes.

Defendants' motion to strike[1] the opinions of Indirect-Purchaser Plaintiffs' ("Plaintiffs'") class certification expert, Janet S. Netz, Ph.D.,[2] does not meet this stringent test. Defendants *already* know that. Just one year ago, many of these same Defendants challenged the admissibility of Dr. Netz's testimony in the closely-related *LCDs* litigation. There, the court examined her nearly identical methodologies and implementations to a similar record of evidence and found them to be reliable under Rule 702. *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI, 2012 WL 555090 (N.D. Cal. Feb. 21, 2012). Yet Defendants make the instant motion without a *single mention* of the *LCDs* court's denial of their motion to strike Dr. Netz's testimony.

Further, Defendants mislead the Court on *GPUs*[3] and *Flash Memory*.[4] They suggest that in these cases the courts excluded Dr. Netz's testimony under Rule 702. In fact, there was no *Daubert* challenge to Dr. Netz in these cases and neither court assessed the admissibility of Dr. Netz's testimony. These cases are inapposite.

---

[1] Defendants' Motion and Memorandum of Law in Support of Motion to Strike the Proposed Expert Testimony of Dr. Janet S. Netz, dated Dec. 17, 2012 ("Ds' Mot.").

[2] Defendants criticize the opinions that Dr. Netz provides in her Declaration in Support of Indirect-Purchaser Plaintiffs' Motion for Class Certification, dated Oct. 1, 2012.

[3] *In re Graphics Processing Units Antitrust Litig.*, 253 F.R.D. 478 (N.D. Cal. 2008).

INDIRECT-PURCHASER PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STRIKE THE PROPOSED EXPERT TESTIMONY OF DR. JANET S. NETZ

MDL No 1917

1   Without bases to challenge Dr. Netz's credentials, her use of regression methodologies, or

2   her sound manner in implementing such methodologies, Defendants nonetheless *manufacture*

3   seven specific criticisms of her analyses.

4   The majority of Defendants' challenges stem from Defendants' mischaracterizations of Dr.

5   Netz's opinions.  Defendants re-label her analyses and conclusions as mere (and faulty)

6   "assumptions."  To the contrary, and as demonstrated in detail below, Dr. Netz's opinions are

7   based on a careful review of the available evidence and the application of accepted economic

8   principles and well-supported methodologies.  That is what *Daubert* requires, and she readily

9   meets the test.

10   Defendants' remaining challenges are directed at Dr. Netz's economic judgment in

11   selecting data for her studies.  In preparing for her analysis, Dr. Netz made professional decisions

12   that led to the exclusion of certain unusable data and the selection of certain averaged or

13   aggregated data.  This method of data selection is universally accepted and routinely utilized

14   within the economic field.  It does not render her methodologies or conclusions unreliable.  If

15   Defendants' experts would have chosen to use different data sets, they are free to debate their

16   disagreements to a jury.

17   In short, Defendants have no basis to attack Dr. Netz's reliability.  Defendants, however,

18   contest class certification, and, therefore, dispute Dr. Netz's conclusions because they support a

19   showing that common issues predominate.  Defendants use their *Daubert* motion as another

20   opportunity to convince the Court that individual issues predominate instead.  Rather than

21   confining their class certification arguments to their proper place (their opposition to class

22   certification), Defendants inject them into this *Daubert* motion as well.  Those arguments have no

23   place here.

24   Lastly, to the extent that Defendants merely dispute Dr. Netz's conclusions, that does not

25   render her testimony inadmissible.  For the purposes of determining reliability under *Daubert*, the

26   _____

27   [4] *In re Flash Memory Antitrust Litig.*, No. C 07-0086 SBA, 2010 WL 2332081 (N.D. Cal. June 9, 2010).

28   2

INDIRECT-PURCHASER PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STRIKE THE
PROPOSED EXPERT TESTIMONY OF DR. JANET S. NETZ

MDL No. 1917

1    Supreme Court instructed the courts: "The inquiry envisioned by Rule 702 is, we emphasize, a

2    flexible one. . . . The focus, of course, must be solely on principles and methodology, not on the

3    conclusions that they generate." *Daubert*, 509 U.S. at 595.

4        Dr. Netz's well-supported analyses do not constitute the sort of "junk science" Rule 702

5    was intended to exclude. The accompanying declaration of Dr. Netz[5] demonstrates that the

6    methodology and analyses supporting her class certification report are rigorous, carefully thought-

7    out, and grounded in the factual record. Defendants' motion falls well short of the high bar set for

8    excluding expert opinion. Indeed, it verges on the frivolous. The Court should deny the motion.

9                                    **LEGAL STANDARD**

10       As a threshold matter, the Court must determine if a full-blown examination of Plaintiffs'

11   expert under Rule 702 is even proper at class certification in the Ninth Circuit. While this question

12   is currently before the Supreme Court in *Behrend v. Comcast Corp.*, 655 F.3d 182 (3d. Cir. 2011),

13   *cert. granted*, 133 S.Ct. 24 (June 25, 2012), neither the Ninth Circuit nor the Supreme Court has

14   explicitly required that experts supporting class certification be tested under Rule 702 and *Daubert*

15   before their testimony may be considered. Thus, as the law now stands, Defendants' motion is

16   premature and improper.

17       In any event, this motion fails because Dr. Netz's analysis easily satisfies the legal

18   requirements of admissibility.

19       Under Federal Rule of Evidence 702, expert testimony is admissible if: "(a) the expert's

20   scientific, technical, or other specialized knowledge will help the trier of fact to understand the

21   evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c)

22   the testimony is the product of reliable principles and methods; and (d) the expert has reliably

23

24   [5] Declaration of Janet S. Netz, Ph.D., in Support of Indirect-Purchaser Plaintiffs' Opposition to
     Defendants' Motion to Strike the Proposed Expert Testimony of Dr. Janet S. Netz, dated February
25   15, 2013 ("Netz MTS Decl."). Also, attached hereto is Appendix A, attaching excerpts of several
     scholarly publications referenced in the Netz MTS Decl. Plaintiffs respectfully request that the
26   Court take judicial notice of these publications. *See* Fed. R. Evid. 201(c); *Von Saher v. Norton
     Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010) ("Courts may take judicial
27   notice of publications introduced to indicate what was in the public realm at the time, not whether
     the contents of those articles were in fact true.") (internal citations omitted).

28                                          3
     INDIRECT-PURCHASER PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STRIKE THE
                  PROPOSED EXPERT TESTIMONY OF DR. JANET S. NETZ

                                                                              MDL No. 1917

1  applied the principles and methods to the facts of the case." Fed. R. Evid. 702.  Expert testimony

2  under Rule 702 must be both relevant and reliable.  *See Daubert*, 509 U.S. at 589.[6]

3       "When considering evidence proffered under Rule 702, the trial court must act as a

4  'gatekeeper' by making a preliminary determination that the expert's proposed testimony is

5  reliable."  *In re TFT-LCD*, 2012 WL 555090, at *2 (citing *Elsayed Mukhtar v. Cal. State Univ.*,

6  299 F.3d 1053, 1063 (9th Cir. 2002), *amended by* 319 F.3d 1073 (9th Cir. 2003)); *Kumho Tire Co.*,

7  *Ltd. v. Carmichael*, 526 U.S. 137, 147-48 (1999) (holding that *Daubert*'s "gatekeeping" obligation

8  applies not only to "scientific" testimony, but to all expert testimony).

9       A showing that a party's expert testimony is reliable does not require a showing that the

10 expert's testimony is correct, or even persuasive.  *See In re Static Random Access Memory*

11 *(SRAM) Antitrust Litig.*, No. 07-MD-01819 CW, 2010 WL 5071694, at *4 (N.D. Cal. Dec. 7,

12 2010) (citing *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 531 (6th Cir. 2008) ("The task for

13 the district court in deciding whether an expert's opinion is reliable [under *Daubert*] is not to

14 determine whether it is correct, but rather to determine whether it rests upon a reliable foundation,

15 as opposed to, say, unsupported speculation.")).[7]

16      Under *Daubert*, "the trial court's role as gatekeeper is not intended to serve as a

17 replacement for the adversary system."  *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1078

18 (5th Cir. 1996).  The Supreme Court has specifically cautioned against the "wholesale exclusion"

19 of expert testimony.  *Daubert*, 509 U.S. at 596.  *Daubert* emphasized that the jury is the ultimate

20 assessor of the weight to be accorded to a party's expert opinion at trial after "[v]igorous cross-

21 examination" and the "presentation of contrary evidence."  *Id.*  Thus, "[t]he rejection of expert

22 testimony is the exception rather than the rule."  *In re Urethane Antitrust Litig.*, No. 04-1616-JWL,

23

24 [6] *See also United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir.) (listing five factors as guidelines), *cert. denied*, 530 U.S. 1268 (2000).

25 [7] The Ninth Circuit instructs the courts to measure such aspects of reliability and whether
26 testimony will assist the jury under the "broad parameters" of Rule 702. *Sementilli v. Trinidad Corp.*, 155 F.3d 1130, 1134 (9th Cir. 1998); *Jinro Am. Inc. v. Secure Invs. Inc.*, 266 F.3d 993,
27 1004 (9th Cir. 2001) ("Rule 702 is applied consistent with the 'liberal thrust' of the Federal Rules and their 'general approach of relaxing the traditional barriers to opinion testimony.'") (quoting *Daubert*, 509 U.S. at 588).

28

4

INDIRECT-PURCHASER PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STRIKE THE
PROPOSED EXPERT TESTIMONY OF DR. JANET S. NETZ

MDL No. 1917

MDL 1616, 2012 WL 6681783, at *1 (D. Kan. Dec. 21, 2012) (citing Fed. R. Evid. 702 advisory committee notes); *In re Scrap Metal*, 527 F.3d at 530 (same).

Parties may vigorously dispute opposing experts' conclusions regarding issues of class certification, but that fact does not render the testimony inadmissible. A disagreement goes to the weight of the testimony and not admissibility. *See In re Chocolate Confectionary Antitrust Litig.*, No. CIV.A. 1:08-MDL-1935, --- F.R.D. ----, 2012 WL 6652501, at *6 (M.D. Pa. Dec. 7, 2012) (concluding after conducting a *Daubert* analysis at class certification that disputes over experts' conclusions "go to the weight, and not the admissibility").

## ARGUMENT

**I.    DR. NETZ'S TESTIMONY WITHSTOOD A RULE 702 CHALLENGE IN THE CLOSELY-RELATED *LCDs* ACTION**

### A.    The *LCDs* Court Deemed Dr. Netz's Expert Testimony Admissible and Its Decision Should Be Followed Here

This Court has already concluded that the *LCDs* and the *CRTs* cases are "***closely related***." *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-5944-SC, --- F. Supp. 2d ----, 2012 WL 5987861, at *2 (N.D. Cal. Nov. 29, 2012) (emphasis added). Indeed, the *CRTs* cartel can be called the "precursor" to the *LCDs* cartel. The manufacturers, products, distribution chains, and markets are comparable. CRTs were simply the earlier technology.

The *LCDs* plaintiffs relied on the opinions of Dr. Netz to withstand repeated and rigorous attacks by many of the defendants named here as to class certification, decertification, numerous motions for summary judgment—and a motion to strike expert testimony. The *LCDs* court *consistently* held that Dr. Netz's models and opinions, nearly identical to those used here, were legitimate economic evidence that the trier of fact may properly consider.[8]

---

[8] *See, e.g.,* Class Certification Order, *In re TFT-LCD*, 267 F.R.D. 583, 606 (N.D. Cal. 2010) (holding that, because of what Dr. Netz provided, Plaintiffs "have presented plausible methodologies for demonstrating class-wide impact . . . [and] have met their burden to show that damages can be established using common proof."); Order Denying Defs' Jt. Mot. for Summ. J. on Pltf. Benjamin Larry Luber's Claims, *In re TFT-LCD*, 2011 WL 4345446, at *4 (N.D. Cal. Sept. 15, 2011) (finding that Dr. Netz's methodology for calculating Mr. Luber's individual damages supported a denial of summary judgment because the amount of Mr. Luber's loss was a question

5

INDIRECT-PURCHASER PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STRIKE THE PROPOSED EXPERT TESTIMONY OF DR. JANET S. NETZ

MDL No. 1917

1    Of particular relevance, the court denied the *LCD* defendants' *Daubert* motion against Dr.

2   Netz.  *See In re TFT-LCD*, 2012 WL 555090.  The decision is directly on point and should be

3   followed here.  Defendants' failure to make *any mention whatsoever* of this opinion is no

4   oversight.  Utterly unable to distinguish it from the case at hand, Defendants opt for silence.

     **B.**     **The *LCDs* Court Already Rejected Defendants' *Daubert* Arguments and Held that Dr. Netz's Overcharge and Pass-Through Analyses Were Sound**

The *LCDs* court has already considered, and rejected, the very *Daubert* challenges raised by Defendants here, as the following chart illustrates:

| *LCDs/CRTs* Defendants' Arguments | *LCDs* Outcome |
|---|---|
| Challenged Dr. Netz's ability to provide a reliable method for establishing an overcharge to direct purchasers.  (Ds' Mot., pp. 19-20) | Rejected.  *See In re TFT-LCD*, 2012 WL 555090, at *6-7. |
| Challenged Dr. Netz's ability to provide a reliable method for establishing pass-through to all class members.  (Ds' Mot., pp. 20-21) | Rejected.  *See In re TFT-LCD*, 2012 WL 555090, at *8. |
| Dr. Netz "assumed" perfect pass-through <u>and</u> failed to take anecdotal testimony into account.  (Ds' Mot., pp. 21-23) | Rejected.  *See In re TFT-LCD*, 2012 WL 555090, at *8. |
| Dr. Netz's reliance on averaging was unreliable.  (Ds' Mot., pp. 24-26) | Rejected.  *See In re TFT-LCD*, 2012 WL 555090, at *8. |
| Challenged Dr. Netz's decision to use certain and not all of the "available" data.  (Ds' Mot., p. 22) | Rejected.  *See In re TFT-LCD*, 2012 WL 555090, at *10. |

Like the *CRTs* Defendants do here, the *LCDs* defendants challenged Dr. Netz's ability to provide a reliable method for establishing an overcharge to direct purchasers and pass-through to

for the jury); Order Denying LG Display Co., Ltd.'s and LG Display America, Inc.'s Motion for Partial Summary Judgment on Withdrawal, *In re TFT-LCD*, 820 F. Supp. 2d 1055, 1061 (N.D. Cal. 2011) (holding that Dr. Netz's pricing study provided adequate evidence to create a triable issue of fact regarding LG's purported withdrawal); Order Denying Defendants' Joint Motion for Summary Judgment Against Indirect Purchaser Plaintiffs in 14 States, *In re TFT-LCD*, 2011 WL 6148677, at *1 (N.D. Cal. Dec. 7, 2011) (relying on testimony from Dr. Netz as evidence to support a finding that plaintiffs had antitrust standing).

INDIRECT-PURCHASER PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STRIKE THE PROPOSED EXPERT TESTIMONY OF DR. JANET S. NETZ

MDL No. 1917

1  all class members.  *See In re TFT-LCD*, 2012 WL 555090, at *6.  The court disagreed with

2  defendants on both counts.

3        In holding that Dr. Netz's overcharge analysis was sound under Rule 702, the court cited

4  directly to its order granting class certification, and listed aspects of Dr. Netz's analysis that

5  demonstrated the *reliability* of her testimony.  These elements include many of the exact same

6  methodologies and implementations employed here.  In *LCDs*, for example, Dr. Netz:

7       •    identified "a number of characteristics that make the TFT-LCD industry highly

8           susceptible to cartelization;"

9       •    "examine[d] the price targets set by the cartel and actual market prices, and [found]

10          that these prices match well;"

11      •    "examined the pricing strategies used by defendants;"

12      •    "analyzed the prices for TFT-LCD panels to determine whether the prices are

13          related by market forces, and conclude[d] that there is a common pricing structure

14          for TFT-LCD panel prices;"

15      •    "used regression analysis to examine the determinants of panel prices, and found

16          that 77% of price variation is determined by five variables that describe the panel

17          characteristics (panel size, resolution, volume, application, and time-period);" and

18      •    concluded "that most of the variation in transaction prices is driven by common

19          factors rather than individual ones, and that these common influences on price are

20          susceptible to being estimated using a formula."

21 *Id.* (citing Class Certification Order, *In re TFT-LCD*, 267 F.R.D. at 601).  Dr. Netz has done the

22 same work in this case.

23       Similarly, in finding that Dr. Netz's pass-through opinions were reliable under Rule 702,

24 the court readily dismissed defendants' attacks that: (a) her analysis "relie[d] too heavily on

25 averages"; (b) that her opinion was "based on a mere assumption" of "perfect pass-on"; and (c)

26 that her "pass-through conclusions [were] contradicted by anecdotal evidence obtained during

27 discovery" by Dell, Best Buy, Target and others.  *Id.* at *8.

28

INDIRECT-PURCHASER PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STRIKE THE
PROPOSED EXPERT TESTIMONY OF DR. JANET S. NETZ

MDL No. 1917

1       The court specifically responded to defendants' "averages" argument.  Even if Dr. Netz's

2 averages "provide no data about whether *each* individual class member was inured," the court

3 "[did] not agree that such a specific purchaser-by-purchaser showing is required."  *Id.* (referring to

4 Class Certification Order, *In re TFT-LCD*, 267 F.R.D. at 605, and cases cited therein).

5       Also rejecting defendants' assertion that Dr. Netz "assumed" perfect pass-through and

6 failed to take anecdotal testimony into account, the court concluded: "None of these arguments is

7 reason to exclude Dr. Netz's testimony.  ***Defendants' disagreements with the bases for her***

8 ***opinion do not render that opinion so inherently suspect that it may not be admitted at trial***.

9 These arguments are precisely the type of matter that is appropriate for cross-examination."  *Id.*

10 (emphasis added).

11       The *LCDs* court closely examined every aspect of Dr. Netz's analyses and responded to

12 each of the defendants' attacks.  It found that Dr. Netz *reliably* used economic theory and analysis

13 of evidence to conclude that a formulaic method existed for proving that: (1) the cartel effectively

14 raised prices for direct purchasers; and (2) those over-charges passed through to the indirect-

15 purchaser plaintiffs.  *Id.* at *6-9.

16       Given the closely-related nature of the *LCDs* and *CRTs* cases, and the fact that Dr. Netz has

17 proffered opinions based on the same types of methodologies in each case, the *LCDs* opinion

18 should be followed here.

19       **C.**    **As in *LCDs*, Defendants' Motion to Strike Insists on Application of an**
20               **Improper, Heightened Standard**

21       According to the *LCDs* court, the defendants' motion to strike plaintiffs' expert testimony

22 was, ***"based, in large part, on their continued insistence that this case is not amenable to class***

23 ***treatment."***  *In re TFT-LCD*, 2012 WL 555090, at *3 (emphasis added).  The *LCDs* defendants

24 had repeatedly argued "that plaintiffs cannot prove their case unless they produce highly specific,

25 individualized evidence of classwide injury."  *Id.*

26       The *LCDs* court specifically rejected these arguments.  "Underlying defendants' [motion to

27 exclude] argument is their assertion that plaintiffs must establish impact 'with certainty.'"  *Id.*  The

28

INDIRECT-PURCHASER PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STRIKE THE
PROPOSED EXPERT TESTIMONY OF DR. JANET S. NETZ

MDL No. 1917

1  court *"rejects the standard articulated by defendants.  Plaintiffs need not identify the overcharge*

2  *on each and every panel sold to direct purchasers, and they need not trace that specific*

3  *overcharge through the manufacturing and retail chains to the ultimate purchaser*.  The fact

4  that plaintiffs lack perfect proof does not mean that plaintiffs lack any proof at all." *Id.* at *4

5  (emphasis added).

6       Undeterred, Defendants try to inject that same *incorrect* standard for class certification in

7  this motion to strike as well.  They dissect and criticize what Dr. Netz purportedly "fails" to

8  demonstrate—down at the microscopic level for every individual sales transaction.  The reason is

9  simple.  Defendants would have the Court focus its lens on the individual transactional level so

10  that the Court *might not see the forest for the trees*.

11       As the evidence gathered to date demonstrates, █████████████████████

12  ████████████████████████████████████████████  The staggering criminal

13  fines imposed to date (more than \$1 billion by the European Commission), the Department of

14  Justice criminal charges, and guilty pleas in the closely-related *LCDs* case, all substantiate

15  Defendants' global wrongdoing.[9]  Plaintiffs contend that Defendants' illegal conduct resulted in

16  widespread price manipulations across the board, resulting in injury to U.S. consumers.  Dr. Netz

17  employed several methodologies that demonstrate the truth of this contention.  To preclude her

18  effective results, Defendants would have this Court first view class certification under an

19  improper, heightened standard and then apply that standard here to reject her analysis.

20       The Court should not be fooled.  As in *LCDs*, here, too, Plaintiffs are capable of proving

21  injury and calculating damages on a class-wide basis; and just as the *LCD* court did, this Court,

22  too, should reject Defendants' attempts to disqualify Dr. Netz.

23

24

25

26

_____

27  [9] In addition, the *LCDs* defendants paid over \$1 billion in settlements with the indirect-purchaser
plaintiffs.

28

INDIRECT-PURCHASER PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STRIKE THE
PROPOSED EXPERT TESTIMONY OF DR. JANET S. NETZ

MDL No. 1917

## II.   *GPUS* AND *FLASH MEMORY* ARE INAPPOSITE BECAUSE THEY CONCERN CLASS CERTIFICATION, NOT ADMISSIBILITY OF EXPERT TESTIMONY

Defendants add false weight to the class certification decisions in *GPUs* and *Flash Memory*. They repeatedly misstate that Dr. Netz's testimony was "rejected" by those courts, as if to imply that *Daubert* analyses were conducted.[10]  In fact, neither of the defendant groups in *GPUs* or *Flash Memory* moved to exclude Dr. Netz's testimony.  These decisions provide no analysis of the *admissibility* of her testimony.  They are inapposite.

Courts agree that decisions on class certification motions are inapplicable to a *Daubert* determination.  In *In re Chocolate*, the court recently ruled on a class certification motion and a *Daubert* challenge.  In support of their *Daubert* motion, the *Chocolate* defendants relied on several case decisions in which the district courts had "rejected" the opinions of one of the plaintiffs' experts.  However, these courts had done so in the context of ruling on class certification and dismissive motions.  *In re Chocolate*, 2012 WL 6652501, at *6.  The court refused to rely on these cases.  It concluded that the defendants had "overstated their relevance to the motion to exclude [plaintiffs' expert's] testimony."  *Id.*  The decisions were not based on a Rule 702 analysis.  They were "therefore ***inapposite to the instant motion in which the court must assess admissibility***."  *Id.* at *6-7 (emphasis added).

The *Chocolate* court specifically concluded that a decision denying class certification in *In re OSB Antitrust Litig.*, No. 06-826, 2007 WL 2253425 (E.D. Pa. Aug. 3, 2007), was inapposite. ***"Essentially, the court did not agree with [plaintiffs' expert]*** that a price increase in a single housing component was 'passed through' to the house-purchaser, creating a class-wide increase in housing prices. . . . [but *OSB*] ***did not address a Rule 702 challenge to the admissibility of [plaintiffs' expert's] testimony."***  *Id.* at *7 (emphasis added).

---

[10] *See, e.g.,* Ds' Mot., pp. 1-2.

INDIRECT-PURCHASER PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STRIKE THE
PROPOSED EXPERT TESTIMONY OF DR. JANET S. NETZ

MDL No. 1917

1    The same reasoning applies with respect to *GPUs* and *Flash Memory*.  There, as in *OSB*,

2  the courts simply did not agree with the plaintiffs' expert opinions.[11]  Those cases should not be

3  considered on this *Daubert* motion, and are properly addressed in Plaintiffs' Class Certification

4  Reply.

5  **III.    DR. NETZ'S TESTIMONY IS ADMISSIBLE UNDER APPLICABLE CASE LAW**

6    Recent antitrust decisions on the admissibility of economic expert testimony establish that

7  this motion against Dr. Netz has no merit.

8    **A.    Courts Consistently Deny *Daubert* Motions Based on Disputes Over**
      **Conclusions or Techniques, As Is the Case Here**
9

10    Courts today increasingly face motions to exclude economic expert testimony in antitrust

11  actions.  Defendants now routinely play this "*Daubert* card" as part of their response to plaintiff

12  expert testimony, and do so more and more often at the class certification stage.  As shown

13  immediately below, case law demonstrates that courts nationwide regularly deny these motions.

14  District courts also continue to remind the parties that *Daubert* does not intend to lead to the

15  wholesale exclusion of expert testimony simply because parties dispute conclusions, disagree on

16  technical decisions, or frown upon regression techniques.

17    Three recent *Daubert* opinions in antitrust cases provide context and demonstrate why the

18  Court should deny Defendants' motion to strike:  (1) *In re Chocolate Confectionary Antitrust*

19  *Litig.*, 2012 WL 6652501 (M.D. Pa. Dec. 7, 2012) (denying motion to exclude plaintiffs' experts at

20  class certification); (2) *In re Urethane Antitrust Litig.*, 2012 WL 6681783 (D. Kan. Dec. 21, 2012)

21  (same, but at merits phase); and (3) *In re Vitamin C Antitrust Litig.*, No. 05-CV-0453, 06-MD-

22  1738 BMC JO, 2012 WL 6675117 (E.D.N.Y. Dec. 21, 2012) (denying motion to exclude

23  defendants' expert at merits phase).

24

25  ———————————————

26  [11] In addition, several distinguishing factors in those underlying cases were absent in *LCDs* and in
    the instant litigation.  *See* Indirect-Purchaser Plaintiffs' Reply in Support of Motion for Class
27  Certification, filed herewith, at Section III.D. (*e.g.*, no guilty pleas; products found not to be
    fungible; highly concentrated direct purchaser markets).

28                                                     11

INDIRECT-PURCHASER PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STRIKE THE
PROPOSED EXPERT TESTIMONY OF DR. JANET S. NETZ

MDL No. 1917

1            **1.**     *In re Chocolate Confectionary Antitrust Litig.* **(M.D. Pa. Dec. 7, 2012)**

In *Chocolate*, the defendants challenged two expert witnesses' testimony at class certification.  The first expert examined the market characteristics and various other features of the chocolate confectionary industry—*e.g.*, concentration of manufacturers, high barriers to entry and defendants' market power, inelastic market demand, the "reasonably interchangeable" nature of the chocolate products at issue, and the opportunities for executive discourse in informal settings— to conclude that it was conducive to price-fixing.  *In re Chocolate*, 2012 WL 6652501, at \*6.  The defendants "vigorously dispute[d]" these opinions, such as a finding that the chocolate products are branded yet "reasonably interchangeable." *Id.*

Nonetheless, the court concluded: "Quite frankly, there is nothing particularly controversial or unique in the conceptual or foundational aspects of [plaintiffs' expert's] opinions.  Obviously, Defendants vigorously dispute [plaintiffs' expert's] conclusions, but the court finds that ***these disputes go to the weight, and not the admissibility, of [plaintiffs' expert's] expert testimony."*** *Id.* (emphasis added).  Moreover, disagreements on conclusions of this nature—such as "the degree of substitutability between chocolate candy products"—do not render the opinions inadmissible or class certification inappropriate, because when resolved by the trier of fact, the resolution will be common to the class.  *Id.* at n.11.

The *Chocolate* plaintiffs' second expert provided testimony in the form of regression models to demonstrate how impact and damages are capable of being shown with class-wide proof.  *See id.* at \*7.  Defendants challenged a particular aspect of these regressions, criticizing the expert for "relying upon price information from a single customer." *Id.* at \*9.

The court found that limiting the data to one customer was not unreliable.  The expert had demonstrated how the one customer was "typical" because it was "one of the largest purchasers of relevant product." *Id.*  In addition, among other sufficiency checks, the expert showed how only with this set was he "able to secure it in relation to all three Defendants for the [relevant time period], a longer time frame than any other available transactional data." *Id.*

INDIRECT-PURCHASER PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STRIKE THE
PROPOSED EXPERT TESTIMONY OF DR. JANET S. NETZ

MDL No. 1917

Further, "although there are limitations to [plaintiffs' expert's] analysis, they are not fatal to admissibility under Rule 702[,] [and that] [defense expert's] criticism goes only to the weight of [the] analysis." *Id.*

## 2. *In re Urethane Antitrust Litig.* (D. Kan. Dec. 21, 2012)

In *Urethane*, during the merits phase of litigation—after a class had been certified—the defendants moved to exclude the testimony of plaintiffs' expert on causation and damages. *In re Urethane*, 2012 WL 6681783. Plaintiffs' expert had created multiple-regression models for prices and products at issue to demonstrate class-wide impact and to show the amount of damages. *Id.* at *4.

The *Urethane* defendants did not challenge plaintiffs' expert's qualifications or his use of regressions. Rather, they criticized certain technical decisions he made in implementing his regressions, including his:

- decision to make a particular year his benchmark year;
- refusal to take certain years into account as part of the benchmark period;
- supposed failure to run a particular test to check the robustness or sensitivity of his model that defendants' expert perceived to be relevant;
- decision to not employ a dummy-variable model, even though he had in prior cases;
- decision to use certain data as a demand proxy;
- decision to use more aggregated annual data when monthly data were available; and
- use of six- or twelve-month moving averages. (*Id.* at *5-9.)

Upon examining each of these alleged deficiencies of plaintiffs' expert, the court concluded—across the board—that the defendants based their challenges merely on the expert's decision to "use one accepted method over another" or to rely on his professional judgment to make a particular technical decision over another. *Id.*

The court observed generally: ***"The fact that another test might yield different results does not provide a basis for exclusion of testimony supported by a test that is admittedly well-accepted in this field."*** *Id.* at *6 (citing Fed. R. Evid. 702 Advisory Committee note: "[Rule 702]

13

INDIRECT-PURCHASER PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STRIKE THE PROPOSED EXPERT TESTIMONY OF DR. JANET S. NETZ

MDL No. 1917

1   is broad enough to permit testimony that is the product of competing principles or methods in the

2   same field of expertise") (internal citations omitted) (emphasis added).

3        More specifically, in response to the challenge of using averaged data, the court held that

4   "[plaintiffs' expert] has not cherry-picked a particular variable; rather, *he has made a decision*

5   *about which set of data to use for a particular variable*.  Thus, *it makes sense that an*

6   *econometrician would choose between those data sets based on which one proves a better factor*

7   *for predicting actual prices*, and [defendant] has not provided any authority to the contrary."  *Id.*

8   at *9 (emphasis added).

9                    **3.    *In re Vitamin C Antitrust Litig.* (E.D.N.Y. Dec. 21, 2012)**

10        In *Vitamin C*, the plaintiffs provided a "laundry list of ways in which, they contend,

11   [defendants' expert's] analysis fails to meet the 'plausibility checks' identified by [plaintiffs'

12   expert][.]"  *In re Vitamin C*, 2012 WL 6675117, at *1.  Defendants succeeded in defending their

13   expert's reliability by providing explanations for the supposed failures to satisfy plaintiffs'

14   "plausibility checks."  *See id.* at *3-6.

15        Importantly, the *Vitamin C* court focused on whether defendants' expert *could articulate*

16   *reasons for why he conducted his analysis as he did*, rather than on the conclusion he drew from

17   that analysis.  *Id.* at *4 ("Although the Court does not opine on the ultimate persuasiveness of

18   [defendants' expert's] analysis, the explanations that he offers appear reasonable and supported by

19   both economic theory and historical facts.").

20        The court dismissed the sweeping conclusory language of plaintiffs as an insufficient basis

21   for excluding defendants' expert:

22            Plaintiffs' conclusory assertion that 'the broad community of professional
              economists would not take [defendants' analysis] seriously' is simply not
23            a sufficient basis, in light of [defendants' expert's] explanations, to keep his
              testimony from the jury.  Through [his] expert report and the declaration he
24            submitted in opposition to the instant motion, defendants have demonstrated that
              [defendants' expert] employed generally accepted economic methods and
25            principles, such as regression analysis, and that, notwithstanding plaintiffs' claims
              of implausibility, [he] applied these methods to the facts of this case in a
26            reasonably reliable way.  (*Id.* at *6.)

27

28                                              14
INDIRECT-PURCHASER PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STRIKE THE
PROPOSED EXPERT TESTIMONY OF DR. JANET S. NETZ

MDL No. 1917

Plaintiffs also criticized defendants' expert for allegedly failing to use certain data from the pre-cartel period in his analysis. The court dismissed such arguments outright, because they go to the weight of the testimony and not the admissibility:

> *As these challenges demonstrate, plaintiffs' motion asks the Court to take sides in a dispute between experts about the intricacies of econometric modeling. That is not the proper function of a Daubert motion.* This is not a case in which an expert is unable to articulate a rationale for his methodology; nor is it a case where the proffered rationale is patently flawed or unreasonable. [Defendants' expert] has *consistently provided explanations for his methodological decisions that appear reasonable and grounded in econometrics literature - not "junk science"* - and, thus, defendants have met their burden of demonstrating that [their expert's] analysis is sufficiently reliable to be admitted. (*Id.* at \*8 (emphasis added).)

Like the experts in *Chocolate*, *Urethane*, and *Vitamin C*, Dr. Netz provides testimony grounded in economic literature and based on commonly-used methodologies. She too can rationally explain why she made the decisions she did in applying these methodologies to the evidence collected this far along in the record. These cases provide the Court with a useful perspective on why Dr. Netz's testimony must be upheld as well.

## B.   Defendants' Cited Authorities Are Unpersuasive

By contrast, cases cited by Defendants are unhelpful.[12] While Defendants' cites provide colorful sound bites regarding inadmissible expert testimony, their substance is too far afield to be useful here. The majority of these cases do not involve expert testimony by an economist;[13] and,

---

[12] *See* Ds' Mot., pp. 17-18.

[13] *See Wright v. United States*, No. CV 06-01788-PHX-NVW, 2008 WL 820557, at \*8 (D. Ariz. Mar. 25, 2008) (medical doctor); *Ollier v. Sweetwater Union High School Dist.*, 267 F.R.D. 339, 342 (S.D. Cal. 2010) (assistant principal and former softball coach and player); *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 22 (2d Cir. 1996) (psychologist); *Claar v. Burlington N. R.R. Co.*, 29 F.3d 499, 504 (9th Cir. 1994) (physicians); *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) (physician); *Rojas v. Marko Zaninovich, Inc.*, No. CIV-F-09-0705, 2011 WL 6671737, at \*4-5 (E.D. Cal. Dec. 21, 2011) (database analyst); *LeClercq v. The Lockformer Co.*, No. 00 C 7164, 2005 WL 1162979, at \*4 (N.D. Ill. Apr. 28, 2005) (hydrogeologist); *Finestone v. Florida Power & Light Co.*, No. 03-14040, 2006 WL 267330, at \*12 (S.D. Fla. Jan. 6, 2006) (radiochemist); *Domingo v. T.K.*, 289 F.3d 600, 604 (9th Cir. 2002) (physician); *Perez v. State Farm Mut. Auto. Ins. Co.*, C 06-01962 JW, 2012 WL 3116355, at \*1 (N.D. Cal. July 31, 2012) ("expert on the quality of automobile repair parts").

15

INDIRECT-PURCHASER PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STRIKE THE PROPOSED EXPERT TESTIMONY OF DR. JANET S. NETZ

MDL No. 1917

1    of the cases involving economic expert testimony, most have nothing to do with a test for

2    admissibility under Rule 702 or *Daubert*.[14]

3         Only *two* of the cases discuss economic experts in the context of a Rule 702 analysis, and

4    both are easily distinguishable. *In Rowe Entm't, Inc. v. William Morris Agency, Inc.*, No. 98 CIV,

5    8272 (RPP), 2003 WL 22124991, at *3 (S.D.N.Y. Sept. 15, 2003), the court found an expert

6    opinion to be unreliable because it was based on a sample of defendants' contracts that were

7    neither random nor representative.  The samples had been specifically selected by plaintiffs'

8    counsel from a larger production by defendants.  This case is unhelpful here because Plaintiffs

9    played no role in the selection of data.  Dr. Netz selects the datasets that she *herself* judges to be

10   useful.[15]

11        *Education Logistics, Inc. v. Laidlaw Transit, Inc.*, No. CV 07-06, 2012 WL 761950 (D.

12   Mont. Mar. 8, 2012), is also unpersuasive.  There, the economist testified on lost profits.  He

13   admitted that he could not attribute any of the lost profits to defendant's wrongdoing; he had

14   simply observed a decline in plaintiff's product sales.  *Id.* at *7.  Further, the economist admitted

15   that he had not considered any factors other than defendant's alleged misconduct that might have

16   caused the decline in plaintiff's sales.  *Id.*  The court determined that "the expert's proffered

17   testimony would only confuse the fact and cause of damages with the amount of damages."  *Id.*

18   (internal citations omitted).  The court also excluded this expert's testimony because he had based

19

20   [14] *See McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 807-08 (9th Cir. 1988) (excluding under Rule
     403 expert testimony where expert was prepared to testify on plaintiffs' lost profits as to specific
21   products, but could not attribute the loss to any specific acts of defendant, admitted that the decline
     could have been caused by anything, failed to account for market conditions before and after the
22   injury occurred, and had improperly analyzed lost profits for a specific product based on overall
     gross sales of all products, presenting a danger of misleading the jury on several counts); *Brooke
23   Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242 (1993) (with no Rule 702
     analysis, expert testimony went to the jury, but could not sustain jury verdict where expert opinion
24   was based on evidence that as a matter of law was insufficient to support a finding of injury under
     the Robinson-Patman Act); *Shatkin v. McDonnell Douglas Corp.*, 727 F.2d 202, 208 (2d Cir.
25   1984) (with no Rule 702 analysis, expert testimony predicting future gifts deceased son would
     have given mother found to be unsupported by evidence because mother failed to show probability
26   that her son would support her and the extent of that support).

27   [15] *See, e.g.*, Netz MTS Decl., Section II.3. (describing how she selects "usable" data from
     "available" data).

28
     INDIRECT-PURCHASER PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STRIKE THE
     PROPOSED EXPERT TESTIMONY OF DR. JANET S. NETZ

     MDL No. 1917

his forecast of lost profits for a particular product on the gross sales of all products, presenting an "apples-and-oranges" analysis, which the court found to be faulty. *Id.* at *8. None of the concerns raised in this case has any bearing on the work Dr. Netz performed to reach her conclusions.

## IV.   DR. NETZ'S PROFFERED TESTIMONY IS RELIABLE

### A.   Dr. Netz Is a Well-Qualified Expert and the Methodologies She Employs Here Are Widely Accepted and Sound

It is undisputed that Dr. Netz is a well-qualified expert with impeccable credentials.[16]  It is also undisputed that Dr. Netz employs regression analysis, a scientific methodology widely supported by economic literature and long upheld in the case law as a reliable tool for assessing impact and damages to class members. *See* Class Certification Order, *In re TFT-LCD*, 267 F.R.D. at 606 (affirming that "courts have accepted multiple regression analyses as means of proving antitrust injury and damages on a class-wide basis.").[17]

### B.   Defendants' Mischaracterizations of Conclusions or Disagreements Over Technical Decisions Are Improper Grounds For Excluding Dr. Netz's Testimony Under *Daubert*

Since Defendants cannot attack Dr. Netz's credentials or use of regressions, they focus on the implementation of her methodologies—whether her opinions are grounded in the facts, whether she uses sufficient data, and whether she properly relies on average data.[18]  None of Defendants' seven specific criticisms holds water.  These criticisms are largely based on

---

[16] *See id.* at Section I.A. (describing Dr. Netz's educational background, courses taught, and experience testifying in civil antitrust cases).

[17] *See also In re Aftermarket Auto. Lighting Prods. Antitrust Litig.*, 276 F.R.D. 364, 367–74 (C.D. Cal. 2011) (finding expert's overcharge regression to be a sound methodology); *In re Bulk [Extruded] Graphite Prods. Antitrust Litig.*, No. Civ. 02-6030 (WHW), 2006 WL 891362, at *15 (D.N.J. Apr. 4, 2006) (recognizing multiple regression analysis as "widely accepted" and "recognized by the Third Circuit as a means of proving impact and estimating damages.") (citing *In re Linerboard Antitrust Litig.*, 305 F.3d 145, 153-54 (3d Cir. 2002)); *Conwood Co., L.P. v. United States Tobacco Co.*, 290 F.3d 768, 793 (6th Cir. 2002) (rejecting a *Daubert* challenge to the plaintiff's antitrust expert, noting that regression analysis is a "generally accepted method[] for proving antitrust damages."), *cert. denied*, 537 U.S. 1148 (2003); *In re Polypropylene Carpet Antitrust Litig.*, 996 F. Supp. 18, 26 (N.D. Ga. 1997) (recognizing the value of using regression analysis in antitrust cases).

[18] *See* Ds' Mot., pp. 3-6 (summarizing Defendants' key arguments).

17

INDIRECT-PURCHASER PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STRIKE THE PROPOSED EXPERT TESTIMONY OF DR. JANET S. NETZ

MDL No. 1917

1  misrepresentations of Dr. Netz's work. Alternatively, they go to her professional judgment, which
2  is not grounds for exclusion under Rule 702.

3       Following is a point-by-point response to Defendants' seven arguments against Dr. Netz,
4  also made in Dr. Netz's accompanying declaration.

5            **1.    Universal Pass-on by Retailers**

6       In the first of many misrepresentations, Defendants assert that Dr. Netz assumes there was
7  universal pass-on by retailers, despite certain anecdotal deposition testimony and pleading
8  allegations to the contrary provided by Direct Action Plaintiffs ("DAPs") Best Buy, Costco,
9  Target, Circuit City, and K-Mart.[19]

10       Dr. Netz's pass-through opinions are not based on "mere assumptions." Dr. Netz
11  performed empirical and qualitative analyses of the CRT industry to demonstrate that pass-through
12  of the illegal overcharges occurred during the class period. She carefully reviewed the record
13  evidence and information about the CRT industry.[20] For example, Dr. Netz studied the structural
14  characteristics of the CRT distribution channel and concludes that the channel was
15  "competitive."[21] She also examined product manufacturer data and documentary evidence
16  regarding the component-to-finished product ratio. She concludes that CRTs account for a
17  significant portion of the prices of both monitor and television finished goods.[22]

18       Then, applying widely accepted economic principles—i.e., the more competitive the
19  market, the more closely prices are related to costs—Dr. Netz concludes that the overcharge was
20  passed through the retailers to the class members.[23]

21       Dr. Netz supports her opinion with results from 27 individual retailer pass-through
22  regression studies.[24] She ran these studies using a regression model widely supported by the case

---

[19] *See id.* at p. 3 (and section II.A.).

[20] *See* Netz MTS Decl., Section II.1.

[21] *See id.*

[22] *See id.*

[23] *See id.* at Section II.1.a

[24] *See id.* at Section II.1.c.

18

INDIRECT-PURCHASER PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STRIKE THE
PROPOSED EXPERT TESTIMONY OF DR. JANET S. NETZ

MDL No. 1917

1  law and economic literature.[25]  In fact, Dr. Netz's pass-through analysis is essentially identical to

2  the one she performed in the *LCDs* litigation.  The *LCDs* court found that Dr. Netz's qualitative

3  study of the competitiveness of the distribution channel, coupled with the empirical analysis of

4  regressions, supported the plaintiffs' proposed plausible methodologies for demonstrating class-

5  wide impact.  *See* Class Certification Order, *In re TFT-LCD*, 267 F.R.D. at 601-02.

6       Defendants rely on a sampling of anecdotal evidence from two DAP retailers to argue that

7  Dr. Netz's pass-through conclusions are divorced from the record.[26]  To the contrary, Dr. Netz

8  thoroughly considered the entire body of evidence in forming her conclusions, including

9  deposition testimony.

10       Anecdotal evidence, standing alone, is insufficient for determining pass-through.[27]  First,

11  deposition testimony, in general, is limited to a particular witness's understanding of the question

12  posed to him or her, and by his or her own knowledge and memory of the details.[28]

13       Second, the particular testimony that Defendants offer, from a Best Buy and a Costco

14  witness, contains answers to an uninformative deposition question.  Rather than ask whether the

15  reseller would pass through industry-wide, significant, and permanent cost changes, █████████

16  ████████████████████████████████████████████████████.[29]  These

17  types of small, temporary, and/or firm-specific cost changes are not comparable to overcharges

18  caused by a cartel.[30]  The testimony Defendants elicited simply does not address the relevant

19  question—*how prices would respond to significant, permanent, and industry-wide cost changes*—

20  and, therefore, cannot establish that pass-through does not occur.[31]

21

22  [25] *See, supra*, n.17 (citing decisions supporting the use of regressions in antitrust cases); *see also*
23  Netz MTS Decl., Section II.1.c.

    [26] *See* Ds' Mot., pp. 20:18-21:5.

24  [27] *See* Netz MTS Decl., Section II.1.b.

25  [28] *See id.*

    [29] *See id.*

26  [30] *See id.*

27  [31] The limitations of anecdotal pass-through testimony demonstrate the importance of conducting
    empirical analysis to understand how cost changes are passed through the distribution chain.  *See,*

28  ―――――――――――――――――
                                    19

INDIRECT-PURCHASER PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STRIKE THE
PROPOSED EXPERT TESTIMONY OF DR. JANET S. NETZ

MDL No. 1917

1      Equally unpersuasive are the allegations in the DAPs' complaints that they cannot pass

2  through overcharges in this case.[32]  Pleading allegations hardly suffice as record evidence in this

3  litigation.

4      These arguments provide no basis to exclude Dr. Netz's pass-through testimony:

5  "Defendants' disagreements with the bases for her opinion do not render that opinion so inherently

6  suspect that it may not be admitted at trial.  These arguments are precisely the type of matter that is

7  appropriate for cross-examination."  *In re TFT-LCD,* 2012 WL 555090, at *8 (denying defendants'

8  motion to exclude Dr. Netz's pass-through opinions, following attacks that they are based on "a

9  mere assumption" and that they are "contradicted by anecdotal evidence obtained during

10 discovery[,] . . . [which] consists of deposition testimony or declarations by various OEMs and

11 retailers that increases in costs of components or products were not always passed along to

12 customers.").

13              **2.      Representative Retailer Pricing Data**

14     Defendants also assert that, according to her initial declaration in support of class

15 certification, Dr. Netz failed to examine representative retailer pricing data in conducting her pass-

16 through studies, and failed to conduct a certain statistical test.[33]



22  *e.g., In re Fresh Del Monte Pineapples Antitrust Litig,* No. 1:04-MD-1628RMB, 2008 WL
23  5661873, at *5 (S.D.N.Y. Feb. 20, 2008) (endorsing the notion that pass-through is an empirical
    question).  Notably, Dr. Netz ran pass-through studies for some of the DAP companies that
24  proffered the testimony on which Defendants rely, and found pass-through rates of at least 100%
    for each.  *See* Netz MTS Decl., Section II.1.b.

25  [32] *See* Ds' Mot., p. 20:9-17 (reciting allegations from various civil complaints).

26  [33] *See* Ds' Mot., pp. 3-4 (and section II.A.).

27  [34] *See* Netz MTS Decl., Section II.1.c.

    [35] *See id.* at Section II.2.

INDIRECT-PURCHASER PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STRIKE THE
PROPOSED EXPERT TESTIMONY OF DR. JANET S. NETZ

MDL No. 1917

1 ████████████████████████████████████████████████████

2 ████████████████████████████████████████████

3 ████████████████████████████████.[37]

4       Defendants baldly characterize Dr. Netz's data pool as "tiny" and criticize her for not

5 conducting a "statistical test" to confirm that her sample was representative.[38]  In fact, there is no

6 statistical test that guarantees representativeness.[39]

7       Citing to economic literature, Dr. Netz discusses the number of widely accepted ways by

8 which to evaluate the representativeness of data.[40]  One common test is to see if several different

9 analyses converge to the same conclusion.  Another is to look to the standard errors and the

10 resulting confidence intervals for each dataset.  Dr. Netz ran both tests.

11 ████████████████████████████████████████████████████

12 ████████████████████████████████████████████.[41]  These

13 results, together with her qualitative study of the structure and competitiveness of the distribution

14 channel, give Dr. Netz no indication that her data sample was unrepresentative.  *Indeed, neither*

15 *Defendants' expert, nor Defendants, proffer any evidence that the data analyzed by Dr. Netz are*

16 *not representative.*

17       In short, Dr. Netz's professional judgment, with support from economic literature, is that

18 her pass-through analyses are based on a reliable data pool.  Defendants' insistence on additional

19 tests is of no import.  *See In re Urethane*, 2012 WL 6681783, at *6 (expert's alleged failure to run

20 a particular test to check the robustness or sensitivity of his model, deemed important by

21

22

_____

23 [36] *See id.*

24 [37] *See id.*

25 [38] *See* Ds' Mot., p. 3 ("Nor did she conduct any statistical test to determine whether the tiny sample of retailer customer pricing data" was representative).

26 [39] *See* Netz MTS Decl., Section II.2.

27 [40] *See id.*

[41] *See id.*

28

INDIRECT-PURCHASER PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STRIKE THE
PROPOSED EXPERT TESTIMONY OF DR. JANET S. NETZ

MDL No. 1917

1  defendants' expert, did not require exclusion of expert's testimony; court upheld the reliability of

2  testimony supported by a "test that is admittedly well-accepted in this field.").

3      Lastly, Defendants' argument that Dr. Netz's pass-through opinions should be excluded

4  because her data selection is purportedly too small finds no support in the law.  A perceived defect

5  in an expert's selection of data is not grounds for excluding the testimony—such a matter goes to

6  the weight of the testimony and not its admissibility.  *See In re Vitamin C*, 2012 WL 6675117, at

7  *8 (court would not "take sides" in an expert dispute regarding "the intricacies of econometric

8  modeling"); *In re Chocolate*, 2012 WL 6652501, at *9 (deferring to expert's decision to rely on

9  one data set, when he was able to explain why he judged it to be representative).[42]  If Defendants

10  want to proffer expert testimony to argue why Dr. Netz should have used a different data set in

11  running her regression analyses, they are free to do so before a jury.  This so-called limitation,

12  however, is no grounds for excluding her testimony outright.

13              **3.    Universal Pass-on by Manufacturers of Finished CRT Products**

14      Next, Defendants falsely claim that Dr. Netz *assumes* universal pass-on by manufacturers

15  of finished CRT products.[43]  Again, Dr. Netz assumes no such thing.  Dr. Netz *concludes* that there

16  is pass-through by manufacturers of finished CRT products.

17      Dr. Netz examines the CRT distribution chain, reviews the documentary evidence, runs

18  five regression studies of sales data provided by CRT finished-product manufacturers, and applies

19  _____

20  [42] Other courts have consistently declined to exclude regression models on grounds of purported
unreliability or incompleteness of underlying data.  *See, e.g., Petruzzi's IGA Supermarkets, Inc. v.*

21  *Darling-Delaware Co., Inc.*, 998 F.2d 1224, 1238 (3d Cir.) (court did not exclude regression
analysis based on the "possible problem" that the data set was "incomplete or inaccurate"), *cert.*

22  *denied*, 510 U.S. 994 (1993); *In re Polypropylene Carpet Antitrust Litig.*, 93 F. Supp. 2d 1348,
1363, 1366-67 (N.D. Ga. 2000) (rejecting contentions that plaintiffs' regression model was invalid

23  because their expert used an improper benchmark period, used filters that excluded a variety of
transactions, and used aggregate quarterly transactions that distorted the market data); *State of*

24  *Ohio ex rel. Montgomery v. Louis Trauth Dairy, Inc.*, 925 F. Supp. 1247, 1253 (S.D. Ohio 1996)
(court declined to exclude regression analysis on the ground that the database was invalid); *Estate*

25  *of Hill v. ConAgra Poultry Co.*, No. CIV.A.4:94CV0198-HLM, 1997 WL 538887, at *9 (N.D. Ga.
Aug. 25, 1997) (rejecting challenge to multiple regression model on the ground that outliers were

26  excluded from underlying dataset).  *See also Aventis Envtl. Sci. USA LP v. Scotts Co.*, 383 F. Supp.
2d 488, 514 (S.D.N.Y. 2005) (stating that challenges to the facts or data relied upon by an expert

27  go to the weight, not the admissibility, of the expert's testimony).

[43] *See* Ds' Mot., p. 4 (and section II.B).

28
                                                22

INDIRECT-PURCHASER PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STRIKE THE
PROPOSED EXPERT TESTIMONY OF DR. JANET S. NETZ

MDL No. 1917

economic principles to her analyses to *conclude* there was pass-through at the manufacturer level.[44]   She draws this inference from both qualitative and quantitative analyses.  Dr. Netz runs regressions using data from the record that she judges to be sufficiently reliable for this study. Importantly, her conclusions from the regression studies converge with her qualitative analyses, supporting the representativeness of her data set.[45]

Defendants' primary challenge here is to Dr. Netz's decision not to use *all* data produced by Defendant manufacturers to support her showing of pass-through at the manufacturer level.[46] Defendants are again misguided in their assertion that all "available" data are "usable" data.  This is not the case.

It is widely recognized that "data cleaning" is an important early step in empirical analysis, which includes validating the contents and quality of the data.[47]  Some of the datasets Defendants describe were not received soon enough to permit adequate cleaning to ensure that they were of sufficient quality to be useful (*e.g.,* data from Samsung, LG, and Philips).[48]  Certain of the other datasets referred to by Defendants Dr. Netz judged, at the time, not to be of sufficient quality to use for these particular studies (*e.g.,* data from Panasonic and Hitachi).[49]

As discussed above (*see supra* at Section III.A.3.), an econometrician's technical decisions regarding which data to use and which to exclude for economic modeling do not undercut the reliability of the testimony supported by those regressions.  Dr. Netz's testimony on pass-through at the manufacturer level is sufficiently reliable and admissible under Rule 702.

---

[44] *See* Netz MTS Decl., Section II.3.

[45] *See id.*

[46] *See* Ds' Mot., p. 4

[47] *See* Netz MTS Decl., Section II.3.

[48] *See id.*

[49] *See id.*

INDIRECT-PURCHASER PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STRIKE THE
PROPOSED EXPERT TESTIMONY OF DR. JANET S. NETZ

MDL No. 1917

1

####    4.    Use of Average Prices

2        Defendants also criticize Dr. Netz's decision to, at times, use average or aggregate prices as

3    opposed to transactional prices.[50]

4    ####    a.    The use of averages is appropriate

5        According to Defendants, Dr. Netz should not be permitted to rely on averages to

6    demonstrate class-wide harm.  First, this contention harks back to Defendants' insistence on an

7    improper standard for class certification.[51]  Second, the *LCDs* court has rejected a similar

8    argument.  That court certified the indirect-purchaser plaintiff classes over defendants' objections

9    that, for example, an average pass-through rate could yield false-positives.  It found—at both the

10   class certification stage and in assessing the admissibility of Dr. Netz's testimony—that the use of

11   averages by plaintiffs' experts was appropriate in their economic modeling to demonstrate

12   common impact.  *See* Class Certification Order, *In re TFT-LCD*, 267 F.R.D. at 605;[52] *see also In*

13

14   [50] *See* Ds' Mot., pp. 4-5 (and section III.).

15   [51] *See* Ds' Mot., p. 24:20-28.  In support of their attacks on the use of averages, Defendants argue
     that Plaintiffs must demonstrate individualized injury to class members.  This is not the standard
16   under Rule 23.  *See, e.g., In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 523
     (S.D.N.Y. 1996) ("Even if it could be shown that some individual class members were not injured,
17   class certification, nevertheless, is appropriate where the antitrust violation has caused widespread
     injury to the class."); *see also Blackie v. Barrack*, 524 F.2d 891, 906 n.22 (9th Cir. 1975), *cert.*
18   *denied*, 429 U.S. 816 (1976); *In re W. Liquid Asphalt Cases*, 487 F.2d 191, 200 (9th Cir. 1973),
     *cert. denied sub nom. Standard Oil Co. v. Alaska*, 415 U.S. 919 (1974); *In re Live Concert*
19   *Antitrust Litig.*, 247 F.R.D. 98, 141 (C.D. Cal. 2007); *Presidio Golf Club v. Nat'l Linen Supply*
     *Corp.*, No. C-71-945, 1976 WL 1359, at *5 (N.D. Cal. Dec. 30, 1976) ("T]he fact that certain
20   members of plaintiffs' class escaped injury altogether would not preclude certification or destroy
     the class's prima facie case of impact.").
21   [52] The *LCDs* court relied on the following cases as support for the use of "averages" in economic
22   modeling in antitrust cases.  *See In re TFT-LCD*, 267 F.R.D. at 605 (citing *Gordon v. Microsoft*
     *Corp.*, No. MC 00-5994, 2003 WL 23105550, at *3 (Minn. Dist. Ct. Dec. 15, 2003) ("[A]verage
23   pass through rates appear reasonable and even necessary to prove damages here"); *In re Static*
     *Random Access Memory (SRAM) Antitrust Litig.*, 264 F.R.D. 603, 614 (N.D. Cal. 2009) (rejecting
24   the defendants' criticism that the indirect-purchaser plaintiffs' use of average and aggregated data
     in their structural model could yield "false-positive pass-through"); *In re NASDAQ Market-Makers*
25   *Antitrust Litig.*, 169 F.R.D. at 523; *In re Commercial Tissue Products*, 183 F.R.D. 589, 595 (N.D.
     Fla. 1998) ("[E]ven if there is considerable individual variety in pricing because of individual price
26   negotiations, class plaintiffs may succeed in proving classwide impact by showing that the
     minimum baseline for beginning negotiations, or the range of prices which resulted from
27   negotiation, was artificially raised (or slowed in its descent) by the collusive actions of the
     defendants.")).
28

INDIRECT-PURCHASER PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STRIKE THE
PROPOSED EXPERT TESTIMONY OF DR. JANET S. NETZ

MDL No. 1917

1  *re TFT-LCD*, 2012 WL 555090, at *8 (rejecting defendants' challenge that relying on averages

2  made Dr. Netz's pass-through opinions unreliable).

3       Lastly, other district courts consistently hold that the use of averages—in some

4  circumstances, an "average overcharge" across the class period—is equally appropriate when

5  estimating damages. *See In re Scrap Metal Antitrust Litig.*, No. 1:02 CV 0844, 2006 WL 2850453

6  (N.D. Ohio Sept. 30, 2006). *Scrap Metal* is directly on-point and shows why Defendants' attack

7  on averaging under *Daubert* is without merit. There, the court held:

8        [Defendant's] challenge to [plaintiffs' expert's] "averaging" of the price spreads
      to reveal that uniform impact can only be relevant here—or to the Court's prior
9        Daubert considerations—*if "averaging" is not a generally accepted or legally*
      *acceptable economic tool for identifying uniform impacts*.
10
      ***That is not the case, however.*** Recognizing that antitrust cases present damages
11        questions that often are not amenable to concrete mathematical calculations,
      courts have regularly recognized averaging of overcharges as a valid method for
12        ***determining a uniform undercharge (or overcharge, as the case may be) in***
      ***well-functioning markets***. *See generally Conwood Company v. United States*
13        *Tobacco Company*, 290 F.3d 768 (6th Cir. 2002) (other citations omitted). At
      best, therefore, [Defendant's] challenges to the accuracy of [plaintiffs' expert's]
14        averaged undercharge (*i.e.*, a 16.4% uniform undercharge during the conspiracy),
      under the circumstances of this case, ***was best left to cross-examination before***
15        ***the jury***, from which the jury could make its own credibility and value judgments.
      (*Id.* at *16 (emphasis added).)[53]
16
     Generally speaking, "average" estimates are perfectly acceptable in assisting the trier of
17
fact. The antitrust laws do not require impossible precision, since "[t]he vagaries of the
18
marketplace usually deny us sure knowledge of what plaintiff's situation would have been in the
19
absence of the defendant's antitrust violation." *J. Truett Payne Co. Inc. v. Chrysler Motors Corp.*,
20

21  ---

[53] *See also In re High Pressure Laminates Antitrust Litig.*, No. 00 MDL 1368 (CLB), 2006 WL
22  931692, at *1 (S.D.N.Y. Apr. 7, 2006) (defendants' contention "that class damages (5 and 1/2
cents per square foot of laminated product) could not possibly be the same for every year, and for
23  each member of the class, in light of the wide spectrum of variables unaccounted for by [the
expert] such as grade, geography, etc. . . . are specifically the kind of objections that can be raised
24  to a jury, during cross-examination."); *In re Indus. Silicon Antitrust Litig.*, No. 95-2104, 1998 WL
1031507, at *4 (W.D. Pa. Oct. 13, 1998) (agreeing that an overcharge model based on averages
25  "does not provide the jury with a 'snapshot' of what actual price, any individual plaintiff may have
paid any individual defendant at any given time during the alleged conspiracy[,]" yet concluding
26  that the "model will assist the jury in determining what any given plaintiff's actual damages
were"); *In re Aftermarket Auto. Lighting Prods.*, 276 F.R.D. at 367–74 (upholding a regression
27  model that averages an overcharge across products, against defendants' objection that "[p]laintiffs'

28  ---

INDIRECT-PURCHASER PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STRIKE THE
PROPOSED EXPERT TESTIMONY OF DR. JANET S. NETZ

MDL No. 1917

451 U.S. 557, 566 (1981). "The constant tendency of the courts is to find some way in which damages can be awarded where a wrong has been done. Difficulty of ascertainment is no longer confused with right of recovery for a proven invasion of the plaintiff's rights." *Bigelow v. RKO Radio Pictures*, 327 U.S. 251, 265-66 (1946) (internal citations omitted). An antitrust plaintiff's "burden of proving the fact of damage . . . is satisfied by its proof of some damage flowing from the unlawful conspiracy; inquiry beyond this minimum point goes only to the amount and not the fact of damage." *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 114 n.9 (1969).

### b.   Dr. Netz properly aggregated data

In certain circumstances, Dr. Netz relied on averaged or aggregated data to support her quantitative studies. The primary purpose for aggregating the data was to allow her to use the most data possible from Defendants' productions. Certain Defendants produced datasets in an aggregated monthly form; others produced the same type of data in transactional form.[54]

If Dr. Netz wants to use as many of those Defendant datasets as possible, she must make them uniform. The only way to do this is to aggregate the transactional datasets, since the reverse (disaggregating the averaged datasets) is not possible. The alternative would be to discard entire datasets and all the information contained within them. Dr. Netz explains that she relies on all data that she judges to be useable.[55] These data include sets that she must standardize to a certain level of aggregation.[56]

The technical decision to rely on data in one form over another does not "fatally infect" Dr. Netz's opinions, as Defendants contend.[57] Aggregating and averaging data are widely accepted

expert's use of averaging masks the need for individualized proof[,]" and distinguishing defendants' citations to the *In re Plastics Additives, Graphics, and Flash Memory* cases).

[54] *See* Netz MTS Decl., Section II.4.

[55] *See id.*

[56] *See id.*

[57] Ds' Mot., p. 4.

INDIRECT-PURCHASER PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STRIKE THE PROPOSED EXPERT TESTIMONY OF DR. JANET S. NETZ

MDL No. 1917

1  practices for understanding economic data.[58]  Ironically, Defendants fault Dr. Netz for using

2  averages when their own expert, Prof. Willig, relies heavily on averages in his studies.[59]

### c.   Defendants mischaracterize Dr. Netz's averaging

4  Defendants mischaracterize what Dr. Netz averaged, why she did so, and what conclusions

5  she drew from reliance on those averages.

6  For example, Defendants claim: "Dr. Netz was forced to concede at her deposition that if

7  one-half of all tubes were priced 25% below the alleged cartel 'target price,' and the other half of

8  tubes were priced 25% above the alleged cartel 'target price,' Dr. Netz would conclude that all

9  class members were injured when, under the hypothetical, at least half were not injured at all."[60]

10  Dr. Netz conceded no such thing.[61]  Further, the relevant question for determining injury is

11  *whether prices were above but-for prices, not whether prices achieved target prices.*[62]  Defendants

12  contort Dr. Netz's statements about the way averages work into a conclusion that she never drew

13  and would not draw from their proposed hypothetical about target prices.[63]

14  In yet another mischaracterization, Defendants assert that, in one of her analyses, Dr. Netz

15  aggregates sales data *across Defendants and groups.*[64]  In fact, that is not at all what Dr. Netz

16  did.[65]  She merely aggregated certain transactional datasets to standardize them with the sets that

17  some Defendants produced in an already-aggregated form.[66]  For the datasets that were in a more

18  disaggregated form, she averages them to avoid discarding the datasets altogether.[67]

---

[58] *See* Netz MTS Decl., Section II.4.

[59] *See id.*, n.40.

[60] Ds' Mot., pp. 5:4-7, 25:7-11.

[61] *See* Netz MTS Decl., Section II.4 ("I was not forced to concede any such thing.  I freely acknowledged what is a mechanical and well-known property of any average.").

[62] *See id.*

[63] *See id.*

[64] *See* Ds' Mot., p. 11:17-22.

[65] *See* Netz MTS Decl., Section II.4.

[66] *See id.*

[67] *See id.*

INDIRECT-PURCHASER PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STRIKE THE
PROPOSED EXPERT TESTIMONY OF DR. JANET S. NETZ

MDL No. 1917

Dr. Netz's use of averages in economic modeling is commonplace, supported by the law, and a method that Defendants' own expert avails himself of.  The Court should summarily reject this challenge.

### 5.    Target Prices and Tubes Sold in the United States

Defendants again mischaracterize Dr. Netz's testimony by claiming she assumes, with no record support, that the Glass Meeting "target prices" "applied to CRT tubes sold within the U.S."[68]

 ████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

█████████████████████████████████

████████████████████████████████████

█████████████████████████████████████

████████████████████████████████████

████████████████████████████████

███████████████████████.[72]

Dr. Netz makes no *assumptions* about whether "target prices" "applied to tubes sold within the U.S."  Instead, recognizing that Plaintiffs are *indirect purchasers* of tubes, Dr. Netz asks the relevant question: *Did the cartel target prices apply to the tubes "incorporated" into the finished CRT products purchased by members of the proposed class?*[73]

---

[68] *See* Ds' Mot., p. 5 (and section IV.).

[69] *See* Netz MTS Decl., Section II.5.

[70] *See id.*

[71] *See id.*

[72] *See id.*

[73] *See id.*

INDIRECT-PURCHASER PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STRIKE THE
PROPOSED EXPERT TESTIMONY OF DR. JANET S. NETZ

MDL No. 1917

1  ████████████████████████████████████████████

2  ████████████████████████████████████.[74]  This

3  record evidence is spot-on and consistent with the notion that cartel target prices applied to tubes

4  manufactured in North America, and then incorporated into finished products sold to U.S.

5  consumers.

6       Likewise for color display tubes used in monitors ("CDTs"), she was able to conclude that

7  cartel target prices applied to the CDTs ultimately incorporated into monitors sold in the U.S.[75]

8  ████████████████████████████████████████████

9  ████████████████████████████████████.[76]

10      Defendants incorrectly focus on the geographic designation of the target prices without

11  considering that tubes with overseas target prices were regularly incorporated into finished

12  products destined for the U.S. market.   Defendants argue that if a Glass Meeting target price was

13  not explicitly linked to a CRT intended for sale in the U.S., the target price did not apply to tubes

14  incorporated into televisions and monitors sold in the U.S.  Given the global nature of the CRT and

15  CRT products markets indicated in the record evidence, this assertion is hard to take seriously.

16  Not surprisingly, target prices did not always accompany geographic designations.

17      Further, that fact is not evidence that these target prices had no impact on tubes

18  incorporated into finished products ultimately sold in the U.S.  The record evidence does not

19  support Defendants' claim that the prices of CRTs later incorporated into monitors and televisions

20  purchased by U.S. consumers were set independently of global market prices.[77]

21      Defendant's argument has no bearing on whether Dr. Netz's opinions are admissible.

---

[74] *See id.*

[75] *See id.*

[76] *See id.* ████████████████████████████████████████████
    ███████████████████████████

[77] *See id.*

INDIRECT-PURCHASER PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STRIKE THE
PROPOSED EXPERT TESTIMONY OF DR. JANET S. NETZ

MDL No. 1917

### 6. Use of "Abstract" Economic Theories

Equally false is Defendants' assertion that Dr. Netz relies upon "abstract economic theories" as the "*only*" basis for her opinion that the cartel was effective for all CRTs over time.[78] Again, Defendants mischaracterize Dr. Netz's analysis.

After applying economic theory to the facts of this case, Dr. Netz concludes that the CRT cartel was effective at raising prices above what they would have been absent collusion.[79] Her analysis consists of:

- evaluating the characteristics of the CRT industry, which revealed industry features indicating that manufacturers of CRTs operated in an environment that made collusion effective;

- deducing from the record evidence that Defendants repeatedly met and exchanged competitively sensitive information over numerous years in spite of their explicit acknowledgment of potential legal ramifications (fines in the millions of dollars and years in Federal prison);

- reviewing the details of hundreds of Glass Meeting and other notes kept by Defendants;

- evaluating deposition testimony of various Defendant officers and employees; and

- examining Defendants' data, including sales data of the tubes shipped by the cartel members when such data were available.[80]

To ignore Dr. Netz's fact-intensive analysis, by asserting she bases her opinions solely on "abstract theories," is a frivolous argument.

Defendants also challenge Dr. Netz for not yet calculating the "but-for" prices of tubes, even though she describes four acceptable, reliable, and feasible methodologies for calculating the

---

[78] *See* Ds' Mot., pp. 5-6 (and section V.).

[79] *See* Netz MTS Decl., Section II.6

[80] *See id.* █████████████████████████████████████████████████████████████████

INDIRECT-PURCHASER PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STRIKE THE
PROPOSED EXPERT TESTIMONY OF DR. JANET S. NETZ

MDL No. 1917

unlawful overcharge.[81]  Dr. Netz did not need to calculate the "but-for" price of the CRTs at this stage to be able to evaluate whether the but-for price was likely lower than the actual price.[82] Indeed, to conclude a differential between actual and but-for tube prices exists does not *require* a specific measurement—just as it is possible to infer that one car is going faster than another, even if the precise speeds are unknown.

At the class certification stage, proposing sound methodologies for calculating the but-for price is sufficient.  *See Class Certification Order, In re TFT-LCD*, 267 F.R.D. at 606; *see also In re Static Random Access Memory (SRAM) Antitrust Litig.*, 264 F.R.D. 603, 615 (N.D. Cal. 2009) (holding that plaintiffs' expert's proposed damage calculation methods, including his description of his "before and after" method to calculate the overcharge, satisfied Rule 23); *In re Rubber Chemicals Antitrust Litig.*, 232 F.R.D. 346, 354 (N.D. Cal. 2005) ("Plaintiffs do not need to supply a precise damage formula at the certification stage of an antitrust action. . . . [Rather, Plaintiffs need only] . . . have proffered a method that is not so insubstantial or unreasonable as to amount to no method at all.").  There is nothing inherently unreliable about proposing the methodologies to quantify the overcharge, when Dr. Netz already concludes that the cartel was effective in raising prices.

### 7.    Existence and Scope of Cartel

In a last example of a glaring misrepresentation, Defendants claim that Dr. Netz bases her conclusions about the existence and scope of the cartel "solely on representations by plaintiffs' counsel and the complaint . . . without considering any of the undisputed record evidence showing different levels of competition and competitors for these diverse products."[83]  This is not true; and, more importantly, this does not matter.

While Dr. Netz assumes that allegations in the complaint are true—and that a cartel did exist, those assumptions do not form the basis of her understanding of the cartel's *conduct.*  And it

---

[81] *See* Ds' Mot., p. 31:9-15.

[82] *See* Netz MTS Decl., Section II.6.

[83] *See* Ds' Mot., p. 6 (and section V.).

31

INDIRECT-PURCHASER PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STRIKE THE
PROPOSED EXPERT TESTIMONY OF DR. JANET S. NETZ

MDL No. 1917

1    is *conduct* that matters to Dr. Netz's conclusions; the mere existence of the cartel is irrelevant.  To

2    understand the conduct that impacted the proposed class members, Dr. Netz relies directly on the

3    record evidence, consisting of hundreds of Glass Meeting minutes and other detailed notes, as well

4    as deposition testimony of Defendants' officers and employees.[84]

5         Dr. Netz's conclusions are further informed by the record evidence on the structure of the

6    CRT industry and the sales data from Defendants and other firms throughout the CRT products

7    distribution chain.[85]  As part of this analysis, Dr. Netz relies on the results of a hedonic regression

8    to further evaluate the price data.

9         Defendants attack Dr. Netz's conclusions by faulting her for *not* also running a price

10   correlation analysis.[86]  Defendants are, again, trying to substitute their professional judgment with

11   Dr. Netz's.  Dr. Netz indeed chose *not* to supplement her hedonic regression pricing study with a

12   correlation analysis.[87]

13        Price correlations can provide input to support conclusions regarding relationships between

14   variables.[88]  But, in this instance, Dr. Netz ran hedonic regressions to evaluate important features

15   like size, application, and finish in regards to CRT prices.[89]  In her expert judgment, she

16   determined that the hedonic regression analysis was the most appropriate method for supporting

17   her conclusion and for making best use of the available data.[90]

18        Dr. Netz's decision to use one acceptable methodology over another does not make the one

19   she used unreliable.  *See In re Urethane*, 2012 WL 6681783, at *7 (considering defendants'

20   argument that plaintiffs' expert's analysis was unreliable because he did *not* use a dummy variable

21

22   _____

23   [84] *See* Netz MTS Decl., Section II.7.

24   [85] *See id.*

     [86] *See* Ds' Mot., p.31:3-7.

25   [87] *See* Netz MTS Decl., Section II.7.

26   [88] *See id.*

     [89] *See id.*

27   [90] *See id.*

28
INDIRECT-PURCHASER PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STRIKE THE
PROPOSED EXPERT TESTIMONY OF DR. JANET S. NETZ

MDL No. 1917

1  in his regression, when he had used one in prior cases, and "reject[ing] this challenge based on

2  [plaintiffs' expert's] decision to use one accepted method over another.").

3  **CONCLUSION**

4  Defendants have put forward a motion that patently has no hope of meeting *Daubert*

5  criteria.  They fail to cite to the *LCDs* opinion holding Dr. Netz's similar testimony admissible

6  under Rule 702; they cite to inapposite decisions; and their arguments are grounded in countless

7  mischaracterizations and disputes with Plaintiffs' expert's technical decisions.  Defendants are

8  unable to uncover any outrageous unreliability or flaw in methods or the use of unrealistic or

9  contradictory assumptions.  Defendants' motion to exclude Plaintiffs' expert testimony should be

10 denied.

11 DATED: February 15, 2013                     Respectfully submitted,

12                                               _____/s/ Mario N. Alioto_____
                                                       Mario N. Alioto
13

14                                             Mario N. Alioto (56433)
                                               Lauren C. Capurro (241151)
15                                             TRUMP, ALIOTO, TRUMP & PRESCOTT LLP
                                               2280 Union Street
16                                             San Francisco, CA  94123
                                               Telephone:     (415) 563-7200
17                                             Facsimile:     (415) 346-0679
                                               Email: malioto@tatp.com
18                                             Email: laurenrussell@tatp.com

19                                             *Interim Lead Counsel for Indirect-Purchaser*
                                               *Plaintiffs*
20
                                               Francis O. Scarpulla (41059)
21                                             Craig C. Corbitt (83251)
                                               Judith A. Zahid (215418)
22                                             Michael S. Christian (212716)
                                               Qianwei Fu (242669)
23                                             Demetrius X. Lambrinos (246027)
                                               ZELLE HOFMANN VOELBEL & MASON LLP
24                                             44 Montgomery Street, Suite 3400
                                               San Francisco, CA 94104
25                                             Telephone: (415) 693-0700
                                               Facsimile:  (415) 693-0770
26                                             Email: fscarpulla@zelle.com
                                               Email: ccorbitt@zelle.com

27

28

1   Joseph M. Patane                          Lawrence G. Papale
    **LAW OFFICES OF JOSEPH M.**             **LAW OFFICES OF LAWRENCE G.**
2   **PATANE**                                **PAPALE**
    2280 Union Street                         1308 Main Street #117
3   San Francisco, CA 94123                   St. Helena, CA 94574
    Telephone: (415) 563-7200                 Telephone: (707) 963-1704
4   Facsimile: (415) 346-0679                 Facsimile: (707) 963-0706
    jpatane@tatp.com                          lgpapale@papalelaw.com
5
    Christopher Lovell                        Daniel E. Birkhaeuser
6   Craig Essenmacher                         Jennifer S. Rosenberg
    Keith Essenmacher                         **BRAMSON, PLUTZIK, MAHLER &**
7   Merrick S. Rayle                          **BIRKHAEUSER, LLP**
    **LOVELL STEWART HALEBIAN**              2125 Oak Grove Road, Suite 120
8   **JACOBSON LLP**                          Walnut Creek, CA 94598
    61 Broadway Suite 501                     dbirkhaeuser@bramsonplutzik.com
9   New York, NY 10006                        jrosenberg@bramsonplutzik.com
    clovell@lshllp.com
10  cessenmacher@lshllp.com

11  Marvin A. Miller                          Paul Novak
    Lori A. Fanning                           Peter Safirstein
12  Matthew E. Van Tine                       Elizabeth McKenna
    **MILLER LAW LLC**                        **MILBERG LLP**
13  115 South LaSalle Street, Suite 2910      One Pennsylvania Plaza
    Chicago, IL 60603                         49th Floor
14  mmiller@millerlawllc.com                  New York, NY 10119
    lfanning@millerlawllc.com                 Telephone: (212) 594-5300
15                                            Facsimile: (212) 868-1229
                                              pnovak@milberg.com
16
    Sherman Kassof                            Jennie Lee Anderson
17  **LAW OFFICES OF SHERMAN**               **ANDRUS ANDERSON LLP**
    **KASSOF**                                155 Montgomery Street, 9th Floor
18  954 Risa Road, Suite B                    San Francisco, CA 94104
    Lafayette, CA 94549                       Telephone: (415) 986-1400
19  Telephone: (510) 652 2554                 Facsimile: (415) 986-1474
    Facsimile: (510) 652 9308                 jennie@andrusanderson.com
20  heevay@att.net

21  Daniel Hume                               David Boies
    Robert Gralewski                          Timothy Battin
22  **KIRBY McINERNEY LLP**                   Nathan Cihlar
    825 Third Avenue, 16th Floor              **STRAUS & BOIES, LLP**
23  New York, NY 10022                        4041 University Drive, Fifth Floor
    Telephone: (212) 317-2300                 Fairfax, VA 22030
24  dhume@kmllp.com                           dboies@straus-boies.com
                                              tbattin@straus-boies.com
25                                            ncihlar@straus-boies.com

26

27

28
                                         34
    INDIRECT-PURCHASER PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STRIKE THE
    PROPOSED EXPERT TESTIMONY OF DR. JANET S. NETZ
                                                                    MDL No. 1917

1  Seymour J. Mansfield
   Jean B. Roth
2  Charles Horowitz
   **MANSFIELD, TANICK & COHEN,**
3  **P.A.**
   1700 U.S. Bank Plaza
4  220 South Sixth Street
   Minneapolis, MN  55402
5  Telephone: (612) 339-4295
   Facsimile: (612) 339-3161
6  smansfield@mansfieldtanick.com

7  Michael G. Simon
   M. Eric Frankovitch
8  **FRANKOVITCH, ANETAKIS,**
   **COLANTONIO & SIMON**
9  337 Penco Road
   Weirton, WV  26062
10 Telephone: (304) 723-4400
   Facsimile: (304) 723-5892
11 msimon@facslaw.com

12 Robert G. Methvin, Jr.
   Philip W. McCallum
13 Matt Stephens
   **McCALLUM, METHVIN &**
14 **TERRELL, P.C.**
   2201 Arlington Avenue South
15 Birmingham, AL 35305
   Telephone: (205) 939-0199
16 Facsimile: (205) 939-0399
   Rgm@mmlaw.net
17 pwm@mmlaw.net
   rem@mmlaw.net
18
   Christy Crow
19 **JINKS, CROW & DICKSON, P.C.**
   P.O. Box 350
20 219 Prairie Street N.
   Union Springs, AL 36089
21 Telephone: (334) 738-4225
   Facsimile: (334) 738-4229
22 cdc@jinkslaw.com

23 Chris Cantrell
   Kit Belt
24 **BELT LAW FIRM PC**
   Lakeshore Park Plaza, Suite 208
25 2204 Lakeshore Drive
   Birmingham, AL 35209
26 keithb@beltlawfirm.com
   chris@beltlawfirm.com
27

Robert Gerard
**GERARD & OSUCH, LLP**
2840 South Jones Blvd.
Building D, Unit 4
Las Vegas, NV 89146
Telephone: (702) 251-0093
rgerard@gerardlaw.com

Rodney Ray
**FORD & RAY**
301 Fifth Street South, Suite C
P.O. Box 1018
Columbus, MS 39703
Telephone: (662) 329-0110
Facsimile: (662) 329-3522
rray@fordraylaw.com

Joel Smith
**WILLIAMS, POTTHOFF, WILLIAMS**
**& SMITH**
125 South Orange Avenue
Eufaula, AL 36027
Telephone: (334) 687-5834
Facsimile: (334) 687-5722
joelpsmith@bellsouth.net

Brent Irby
Eric Hoagland
**McCALLUM, HOAGLAND, COOK &**
**IRBY, LLP**
905 Montgomery Street, Suite 201
Vestavia Hills, AL 35216
birby@mhcilaw.com
ehoagland@mhcilaw.com

Jeff Crabtree
**LAW OFFICES OF JEFF CRABTREE**
820 Mililani Street, Suite 701
Honolulu, HI 96813
lawyer@consumerlaw.com

28

35

INDIRECT-PURCHASER PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STRIKE THE
PROPOSED EXPERT TESTIMONY OF DR. JANET S. NETZ

MDL No. 1917

| | | |
|---|---|---|
| 1 | Richard F. Horsley<br>1 Metroplex Drive, Suite 280 | S. Randall Hood<br>William A. McKinnon |
| 2 | Birmingham, AL 35209-6895<br>rfhala@cs.com | **McGOWAN HOOD & FELDER, LLC**<br>1659 Healthcare Drive |
| 3 | | Rock Hill, SC 29732 |
| 4 | Daniel R. Karon<br>Mark S. Goldman | Krishna B. Narine<br>**LAW OFFICE OF KRISHNA B.** |
| 5 | Brian D. Penny<br>**GOLDMAN SCARLATO & KARON,** | **NARINE**<br>7839 Montgomery Avenue |
| 6 | **P.C.**<br>55 Public Square, Suite 1500 | Elkins Park, PA 19027<br>knarine@kbnlaw.com |
| 7 | Cleveland, OH 44113<br>karon@gsk-law.com | |
| 8 | | |
| 9 | John G. Felder, Jr.<br>**McGOWAN HOOD & FELDER, LLC** | Donna F. Solen<br>**THE MASON LAW FIRM, LLP** |
| 10 | 1405 Calhoun Street<br>Columbia, SC 29201 | 1225 19th Street, N.W., Suite 500<br>Washington, DC 20036 |
| 11 | | dsolen@masonlawdc.com |
| 12 | Isaac L. Diel<br>**SHARP McQUEEN** | Robert J. Pohlman<br>**RYLEY CARLOCK & APPLEWHITE** |
| 13 | 135 Oak Street<br>Bonner Springs, KS 66012 | One North Central Avenue, Suite 1200<br>Phoenix, AZ 85004-4417 |
| 14 | dslawkc@aol.com | rpohlman@rcalaw.com |
| 15 | Mary G. Kirkpatrick<br>**KIRKPATRICK &** | Bruce Mulkey<br>**THE MULKEY ATTORNEYS GROUP,** |
| 16 | **GOLDSBOROUGH, PLLC**<br>Lakewood Commons | **P.A.**<br>1039 W. Walnut, Suite 3 |
| 17 | 1233 Shelburne Road, Suite E-1<br>South Burlington, VT 05401 | Rogers, AR 72756<br>bruce@mulkeylaw.com |
| 18 | mkirk@vtlawfirm.com | |
| 19 | Charles M. Kester<br>**THE KESTER LAW FIRM** | Terry R. Saunders<br>Thomas A. Doyle |
| 20 | P.O. Box 184<br>Fayetteville, AR 72702-0184 | **SAUNDERS & DOYLE**<br>20 South Clark Street, Suite 1720 |
| 21 | cmkester@nwark.com | Chicago, IL 60603<br>trsaunders@saundersdoyle.com |
| 22 | | tadoyle@saundersdoyle.com |
| 23 | Joel Flom<br>**JEFFRIES, OLSON & FLOM, P.A.** | James H. McManis<br>Marwa Elzankaly |
| 24 | 1202 27th Street South<br>Fargo, ND 58103 | **McMANIS FAULKNER & MORGAN**<br>A Professional Corporation |
| 25 | Telephone: (701) 280-2300<br>Facsimile: (701) 280-1800 | 50 W. Fernando Street, 10th Floor<br>San Jose, CA 95113 |
| 26 | joel@jeffrieslaw.com | jmcmanis@mfmlaw.com<br>melzankaly@mfmlaw.com |
| 27 | | |
| 28 | | |

INDIRECT-PURCHASER PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STRIKE THE
PROPOSED EXPERT TESTIMONY OF DR. JANET S. NETZ

MDL No. 1917

| | |
|---|---|
| 1 | Susan G. Kupfer |
| | (skupfer@glancylaw.com) |
| 2 | Kathleen S. Rogers |
| | **GLANCY BINKOW & GOLDBERG,** |
| 3 | **LLP** |
| | One Embarcadero Center, Suite 760 |
| 4 | San Francisco, CA 94111 |
| | Telephone: (415) 972-8160 |
| 5 | Facsimile: (415) 972-8166 |

1  Susan G. Kupfer
   (skupfer@glancylaw.com)
2  Kathleen S. Rogers
   **GLANCY BINKOW & GOLDBERG,**
3  **LLP**
   One Embarcadero Center, Suite 760
4  San Francisco, CA 94111
   Telephone: (415) 972-8160
5  Facsimile: (415) 972-8166

   Christopher P. Welsh
   **WELSH & WELSH, PC, LLO**
   9290 West Dodge Road
   100 The Mark
   Omaha, NE 68114
   Telephone: (402) 384-8160
   Facsimile: (402) 384-8211
   cwelsh@welsh-law.com

6  Kenneth L. Valinoti
   **VALINOTI & DITO LLP**
7  180 Montgomery Street, Suite 940
   San Francisco, CA 94104
8  Telephone: (415) 986-1338
   Facsimile: (415) 986-1231
9  kvalinoti@valinoti-dito.com

10

   David Freedman
   Joseph Goldberg
   **FREEDMAN, BOYD, HOLLANDER,**
   **GOLDBERG & IVES, PA**
   20 First Plaza, Suite 700
   Albuquerque, NM 87102
   Telephone: (505) 842-9960
   Facsimile: (505) 842-0761
   daf@fbdlaw.com

11 Eric J. Pickar
   **BANGS, McCULLEN, BUTLER,**
12 **FOYE & SIMMONS, LLP**
   333 West Boulevard, Suite 400
13 P.O. Box 2670
   Rapid City, SD 57709-2670
14 Telephone: (605) 343-1040
   epickar@bangsmccullen.com
15

   Frank Balint
   **BONNETT, FAIRBOURN, FRIEDMAN**
   **& BALINT, P.C.**
   2901 North Central Avenue, Suite 1000
   Phoenix, AZ 85012-3311
   Telephone: (602) 274-1100
   Facsimile: (602) 274-1199
   fbalint@bffb.com

16 Jeffrey Bartos
   **GUERRIERI, EDMOND, CLAYMAN**
   **& BARTOS PC**
17 1625 Massachusetts Ave., N.W.
   Suite 700
18 Washington, DC 20036
   Telephone: (202) 624-7400
19 jbartos@geclaw.com

   Guri Ademi
   Shpetim Ademi
   **ADEMI & O'REILLY, LLP**
   3620 East Layton Ave.
   Cudahy, WI 53110
   Telephone: (414) 482-8000
   Facsimile: (414) 482-8001
   gademi@ademilaw.com

20 Josef D. Cooper
   Tracy D. Kirkham
21 **COOPER & KIRKHAM, P.C.**
   357 Tehama Street, Second Floor
22 San Francisco, CA 94103
   Telephone: (415) 788-3030
23 Facsimile: (415) 882-7040
   jdc@coopkirk.com

   James Wyatt
   **WYATT & BLAKE, LLP**
   435 East Morehead Street
   Charlotte, NC 28202-2609
   Telephone: (704) 331-0767
   Facsimile: (704) 331-0773
   JWyatt@wyattlaw.net

24

25

26

27

28

---

INDIRECT-PURCHASER PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STRIKE THE
PROPOSED EXPERT TESTIMONY OF DR. JANET S. NETZ

MDL No. 1917

| | |
|---|---|
| 1 | |

Robert Bonsignore
**BONSIGNORE AND BREWER**
193 Plummer Hill Road
Belmont, NH 03220
Telephone: (781) 350-0000
rbonsignore@class-actions.us

Christopher P. Welsh
**WELSH & WELSH, PC, LLO**
9290 West Dodge Road
100 The Mark
Omaha, NE 68114
Telephone: (402) 384-8160
Facsimile: (402) 384-8211
cwelsh@welsh-law.com

Sylvie Kern
**KAG LAW GROUP**
P.O. Box 210135
San Francisco, CA 94121
Telephone: (415) 221-5763
skern@antitrustglobal.com

Robert Green
**GREEN & NOBLIN P.C.**
700 Larkspur Landing Circle
Suite 275
Larkspur, CA 94939
Telephone: (415) 477-6700
Facsimile: (415) 477-6710
rsg@classcounsel.com

W. Timothy Neddham
**JANSSEN, MALLOY & NEEDHAM LLP**
730 5th Street
Eureka, CA 95501
Telephone: (707) 445-2071
Facsimile: (707) 445-8305
tneedham@janssenlaw.com

Brian Barry
**LAW OFFICE OF BRIAN BARRY**
1801 Avenue of the Stars, Suite 307
Los Angeles, CA 90067
Telephone: (323) 522-5584
Bribarry@yahoo.com

#3242937v2

38

INDIRECT-PURCHASER PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STRIKE THE
PROPOSED EXPERT TESTIMONY OF DR. JANET S. NETZ

MDL No. 1917