Mario N. Alioto (56433)
Lauren C. Capurro (241151)
TRUMP, ALIOTO, TRUMP & PRESCOTT LLP
2280 Union Street
San Francisco, CA  94123
Telephone:    (415) 563-7200
Facsimile:     (415) 346-0679
Email: malioto@tatp.com
Email:  laurenrussell@tatp.com

*Interim Lead Counsel for Indirect-Purchaser Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE:  CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. CV-07-5944-SC |
| | MDL No. 1917 |
| This Document Relates to: | **ERRATA TO REPLY BRIEF IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |
| ALL INDIRECT PURCHASER ACTIONS | Date:    TBD<br>Time:    TBD<br>Before: Hon. Charles A. Legge (Ret.)<br>             Special Master<br><br>The Honorable Samuel Conti |

**REDACTED PER COURT ORDER (D.E. 1587)**

1

ERRATA TO REPLY BRIEF IN SUPPORT OF INDIRECT-PURCHASER PLAINTIFFS' MOTION FOR CLASS CERTIFICATION — MASTER FILE NO. CV-07-5944-SC, MDL NO. 1917

Indirect Purchaser Plaintiffs hereby submit this Errata in order to make the following corrections to the Reply Brief In Support Of Indirect Purchaser Plaintiffs' Motion For Class Certification ("Reply") submitted on February 15, 2013:

- Page 21, lines 17-18 reads: Netz Rebuttal Decl. at 9. Should read: Netz Rebuttal Decl. at 10.
- Page 21, line 19 reads: *See id.* at 9-10. Should read: *See id.*
- Page 21, line 22 reads: *Id.* at 10-11. Should read: *Id.* at 12-13.
- Page 21, line 26 reads: *Id.* at 13. Should read: *Id.* at 14.
- Page 27, n.17, lines 25-28 reads: ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Should read: ████████████████████████████████████████████████████████████████████████████████████████████████████████
- Page 34, line 3 reads: *See* §II.6, *supra.* Should read: *See* §II.B, *supra.*

Corrected pages 21, 27 and 34 are attached hereto, which may be inserted in place of their current respective pages in the Reply.

DATED: February 28, 2013          Respectfully submitted,

                                   */s/ Mario N. Alioto*
                                   Mario N. Alioto
                                   Mario N. Alioto (56433)
                                   Lauren C. Capurro (241151)
                                   TRUMP, ALIOTO, TRUMP & PRESCOTT LLP
                                   2280 Union Street
                                   San Francisco, CA 94123
                                   Telephone: (415) 563-7200
                                   Facsimile: (415) 346-0679
                                   Email: malioto@tatp.com
                                   Email: laurenrussell@tatp.com
                                   *Interim Lead Counsel for*
                                   *Indirect-Purchaser Plaintiffs*

2

ERRATA TO REPLY BRIEF IN SUPPORT OF INDIRECT-PURCHASER PLAINTIFFS' MOTION FOR CLASS CERTIFICATION —MASTER FILE NO. CV-07-5944-SC, MDL NO. 1917

| | |
|---|---|
| 1 | Francis O. Scarpulla (41059) |
| 2 | Craig C. Corbitt (83251) |
|   | Judith A. Zahid (215418) |
| 3 | Michael S. Christian (212716) |
|   | Qianwei Fu (242669) |
| 4 | Demetrius X. Lambrinos (246027) |
|   | ZELLE HOFMANN VOELBEL & MASON LLP |
| 5 | 44 Montgomery Street, Suite 3400 |
|   | San Francisco, CA 94104 |
| 6 | Telephone: (415) 693-0700 |
|   | Facsimile: (415) 693-0770 |
| 7 | Email: fscarpulla@zelle.com |
|   | Email: ccorbitt@zelle.com |

#3243090

ERRATA TO REPLY BRIEF IN SUPPORT OF INDIRECT-PURCHASER PLAINTIFFS' MOTION FOR CLASS CERTIFICATION —MASTER FILE NO. CV-07-5944-SC, MDL NO. 1917

here, there are indictments, significant fines and a guilty plea (*see* Memo. at 5-8). In sum, there are even more compelling reasons to certify here than there were in *SRAM*.

### D. *GPUs* and *Flash* Are Distinguishable.

Defendants rely heavily on *GPUs* and *Flash* to argue that Dr. Netz's methods here have been rejected by "this Court," that econometricians evaluating antitrust impact should not be permitted to use aggregated or average data, and that proof of pass-through requires a meticulous tracing of the each overcharge on each product through all levels of the distribution channel. None of these arguments have merit.

*GPUs* is distinguishable because, as noted by Judge Illston, the DOJ had ended its criminal investigation without returning indictments. 253 F.R.D. at 500. Here, Samsung SDI has pled guilty, there is an amnesty applicant and the DOJ investigation continues.

*GPUs* is also distinguishable because the court found that "the vast majority of sales were primarily executed after customized negotiations between wholesalers and either defendant [and] . . . without regard to a price list;" and, "many of the graphics products sold were particularly customized to the needs of a specific purchaser [and] could not be interchanged with any other GPU product sold by defendants." *Id.* at 490-91. Here, in contrast, "CRTs were generally not designed for a specific customer nor heavily customized for each purchaser." Netz Rebuttal Decl. at 10. Rather, each Defendant had a small number of major designs with minor variations that were frequently sold to multiple customers. *See id.* Moreover, the minor variations were of minimal economic importance, involving very small price differences relative to the substantially larger price differences seen across the major CRT product attributes that drove pricing (*i.e.*, application, size, shape). *Id.* at 12-13. Finally, at the design-in stage, where the Defendants purportedly compete to win supply contracts, CRTs were effectively commodities and interchangeable because finished-goods makers could readily substitute between CRTs that required only financially and economically inconsequential modifications prior to production and sale. *Id.* at 14. In light of the above, Defendants' assertion that Dr. Netz admits that CRTs are "heavily customized" (Opp. at 6) is untrue.

***"Target" Pricing Analysis.*** ■■■

■■■ [redacted lines 2–20] ■■■

Further, as the courts in *LCDs*, *SRAM*, the *Microsoft* cases and innumerable others cited above have found, the use of aggregated or average data in antitrust economics is commonplace and accepted. See §III.B.3, *supra*. Indeed, numerous of Dr. Willig's pricing analyses use similar

---

[17] ■■■ [redacted]

CORRECTED PAGE 34

data. *See* Netz Decl. at 97-98; Netz Rebuttal Decl. §X.A.2. Dr. Netz utilized data from multiple entities at each level of the CRT distribution channel, including tube distributors, CRT product makers, CRT product distributors and CRT product resellers. *See* §II.B, *supra*. ███████████ ███████████████████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████) *See* Netz Decl. at 104, Exs. 34, 36, 40-43, Netz Rebuttal Decl. §X.A.2, Ex. RR-34. There is no basis for claiming these data are "tiny" or "unrepresentative." *See id.*

Defendants attempt to mislead the Court by claiming that Dr. Netz's "study at the retail level . . . analyzed the pricing data of only two retailer-plaintiffs (Costco and Best Buy), while ignoring the price data for most of the major retailer-plaintiffs in this MDL." Opp. at 24. This is false. ███████████████████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████████████████ ██████████

Defendants also assert that direct action plaintiffs' ("DAPs") data in this case should have been examined because those plaintiffs allege in their complaints that "they did not pass on any increases in CRT costs to their customers." Opp. at 25. In so arguing, however, Defendants rely only on complaint allegations, not facts or evidence. Moreover, ████████████████████ ████████████████ *See* Netz Decl. Exs. 34, 35. Also, in response to these criticisms, ████████ ███████████████████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████) Clearly, Dr. Netz's empirical analyses trump DAPs' unsupported complaint allegations.

34

REPLY BRIEF IN SUPPORT OF INDIRECT-PURCHASER PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION

MDL No. 1917