# Exhibit 29

```
 1              UNITED STATES DISTRICT COURT

 2             NORTHERN DISTRICT OF CALIFORNIA

 3               (SAN FRANCISCO DIVISION)

 4

 5    - - - - - - - - - - - - - - - - - -

 6    IN RE:  CATHODE RAY TUBE (CRT)

 7    ANTITRUST LITIGATION                Case No.

 8                                        07-5944 SC

 9                                        MDL No. 1917

10    - - - - - - - - - - - - - - - - - -

11    This Document Relates to:

12    INDIRECT PURCHASER ACTIONS

13    - - - - - - - - - - - - - - - - - -

14              SUPERIOR COURT OF CALIFORNIA

15             CITY AND COUNTY OF SAN FRANCISCO

16    - - - - - - - - - - - - - - - - - -

17    STATE OF CALIFORNIA,

18              Plaintiffs

19       vs.                              Case No.

20                                        CGC-11-51584

21    SAMSUNG SDI, INC., CO., LTD., et al.,

22

23              Defendants.

24    - - - - - - - - - - - - - - - - - -

25
```

LOUISE WOOD

BARKLEY
Court Reporters

```
1                    Wood - October 15, 2012
2   computer monitor as a bundle instead of separately?
3        A.    Yes.
4        Q.    When you purchased the computer bundle
5   around 2005, did you consider buying a separate
6   computer CPU and separate monitor?
7        A.    No.
8        Q.    And why was that?
9        A.    It was easier to buy them together.
10       Q.    Were the features of the computer
11  monitor and bundle important to you in that purchase
12  decision?
13       A.    I don't remember.
14       Q.    Going back to the Toshiba television we
15  mentioned before, is that the only product for which
16  you're claiming damages in this case?
17       A.    Yes.
18            MR. GRALEWSKI:  Objection to the form.
19       Asked and answered.
20            MR. FRUTIG:  I have to also state an
21       objection, vague and ambiguous as to Toshiba.
22       Q.    Do you still own the television that's
23  the basis for your claim?
24       A.    No, I do not.
25       Q.    When did you buy the television?
```

32

LOUISE WOOD

BARKLEY
Court Reporters

```
1                    Wood - October 15, 2012
2    repair?
3         A.    I already owned a VCR, so I didn't need
4    to complicate it.
5         Q.    Do you think having a VCR increased the
6    price of the television?
7               MR. GRALEWSKI:  Objection to the form.
8         Calls for speculation, vague and ambiguous.
9         A.    Yes.
10        Q.    You did not want to pay for a feature
11   you didn't need?
12        A.    Correct.
13        Q.    Okay.  So among brand named, 32-inch
14   non-VCR combo TVS, was price the only factor that led
15   you to select the Toshiba?
16        A.    As far as I know, yes.
17        Q.    Going back to your preference for brand
18   names, why do you prefer brand name TVs to ones that
19   you have not heard of?
20        A.    I always had preferred a brand name.
21        Q.    Do you perceive quality differences
22   between brand names and non-brand names?
23        A.    I do.
24        Q.    And what are some brands you associate
25   with quality?
```

49

LOUISE WOOD

BARKLEY
Court Reporters

```
 1                      Wood - October 15, 2012

 2          A.       Regarding television sets?

 3          Q.       Regarding television sets.

 4          A.       Sony, Panasonic, Samsung.

 5          Q.       Not Toshiba?

 6          A.       No.

 7          Q.       At the time you purchased your

 8     television in 2004, did you associate the Toshiba

 9     brand name with the quality television?

10          A.       I associated it with the second tier.

11          Q.       So the names you said before, Panasonic,

12     Sony, Samsung, is that the first tier in the

13     recognized names?

14          A.       Yes.

15          Q.       What other television manufacturers

16     would be on the second tier -- actually, I'm sorry,

17     is there anyone else in the first tier beside

18     Panasonic, Sony, Samsung?

19          A.       In my mind, no.

20          Q.       What TV brands are in the second tier?

21          A.       Hitachi, Daewoo, LCD.  That's it.

22          Q.       So did you say LCD?

23          A.       I think that's a brand.  Is it not?

24          Q.       I'm not sure.  Is there a third tier?

25          A.       No.
```

LOUISE WOOD

BARKLEY
Court Reporters

```
1                      Wood - October 15, 2012

2    Daewoo models?

3         A.    I don't remember.

4         Q.    Did you consider any Sony models?

5         A.    I believe so.

6         Q.    And why did you decide to purchase the

7    Toshiba TV instead of the Sony TV?

8         A.    I believe it was a better price.

9         Q.    I think you also said you considered

10   Panasonic models.

11        A.    Yes.

12        Q.    Did you select the Toshiba because it

13   was cheaper than the Panasonic?

14        A.    I don't remember.

15        Q.    So why did you choose to purchase the

16   television that was in the second tier, in your

17   judgment, as opposed to in the first tier?

18        A.    Because I couldn't afford one in the

19   first tier.

20        Q.    Was the brand of the CRT inside the

21   television important to you?

22        A.    I wouldn't know what the brand was.

23        Q.    So at the time you purchased the Toshiba

24   TV, you didn't know what kind of CRT was in it?

25        A.    Correct.
```

LOUISE WOOD

BARKLEY
Court Reporters

```
1                  Wood - October 15, 2012
2        Q.      Do you know what kind of CRT was in it
3   today?
4        A.      I do not.
5        Q.      Do you know who made the CRT in your
6   Toshiba television?
7        A.      I do not.
8        Q.      Do you have any reason to believe it was
9   one of the defendants in this case who manufactured
10  the CRT?
11       A.      I do not know.
12       Q.      Do you know of any way for you to find
13  out?
14       A.      I am sure there are records that
15  demonstrate what CRTs were part of each of these
16  television sets that were produced.
17       Q.      But based on your own knowledge?
18       A.      My own knowledge, no.
19       Q.      So if one of the defendants in this case
20  did not make the CRT in your TV, would you still be
21  bringing this claim?
22            MR. GRALEWSKI:   Object to the form.
23       Vague and ambiguous, calls for speculation,
24       calls for legal conclusion, lacks foundation.
25       A.      If that were the case, I wouldn't be
```

53

BARKLEY
Court Reporters

Wood - October 15, 2012

1

2    qualified to be speaking to you now.

3        Q.    How do you mean that, qualified?

4            MR. GRALEWSKI:  Object to the form.

5        Vague and ambiguous, calls for speculation,

6        lacks foundation, calls for a legal conclusion.

7     A.    Could you repeat the question, please.

8        Q.    How do you mean you wouldn't be

9    qualified to speak with me if one of the defendants

10   had not manufactured the CRT in your Toshiba

11   television?

12            MR. GRALEWSKI:  Same objections.

13    A.    I would not be an injured party.

14        Q.    So if one of the defendants did not make

15   the CRT in your television, you wouldn't have

16   suffered any injury?

17            MR. GRALEWSKI:  Object to the form.

18        Asked and answered, vague and ambiguous, calls

19        for speculation, lacks foundation, calls for a

20        legal conclusion.

21    A.    I believe so.

22        Q.    And you believe you're qualified to

23   speak with me today; is that correct?

24    A.    Correct.

25        Q.    Why do you think that?

54

LOUISE WOOD

```
1                    Wood - October 15, 2012

2        A.      That's AMEX's warrantee for one year.

3        Q.      Okay.  Other than the AMEX warrantee,

4   was there any warrantee that you are aware of?

5        A.      I don't remember the time period.

6        Q.      Going back to the receipt, Exhibit 382,

7   is it your practice to keep receipts?

8        A.      Yes.

9        Q.      Do you keep all of your receipts?

10       A.      I do.

11       Q.      How long do you keep them for?

12       A.      I have them going back 10 years.

13       Q.      Where do you keep them?

14       A.      In my apartment.

15       Q.      Is Costco a membership store?

16       A.      It is.

17       Q.      So you have to be a member to shop

18   there?

19       A.      Correct.

20       Q.      Were you a Costco member at the time you

21   purchased your television?

22       A.      I was.

23       Q.      How much did you pay for your Costco

24   membership?

25       A.      It was actually a gift.
```

74

LOUISE WOOD

BARKLEY
Court Reporters

```
1                 Wood - October 15, 2012
2        Q.     Are you still a Costco member?
3        A.     I am.
4        Q.     Do you pay for your membership now?
5        A.     I do.
6        Q.     How much do you pay for your membership
7   now?
8        A.     I believe it's $50 a year.
9        Q.     $50 per year.
10              And is that your approximate value of
11  the membership back in 2004?
12       A.     Yes.
13              MR. GRALEWSKI:  Object to the form.
14       Vague and ambiguous.
15       Q.     Prior to receiving the membership in
16  2004 as a gift, were you a Costco member?
17       A.     Yes.
18              MR. GRALEWSKI:  Can we just take a quick
19       break and go off the record.  The videographer
20       needs a technical adjustment.  We don't have to
21       take a break, just off the record.
22              THE VIDEOGRAPHER:  Off the record, 12:20
23       p.m.
24              (Discussion off the record.)
25              THE VIDEOGRAPHER:  Back on the record,
```

75

LOUISE WOOD

BARKLEY
Court Reporters

```
 1                    Wood - October 15, 2012

 2        12:20 p.m.

 3   BY MR. GOLDSTEN:

 4        Q.    Did the gift membership you received in

 5   2004, did that cover the calendar year 2004?

 6        A.    It did.

 7        Q.    Were you a member in 2003?

 8        A.    I was.

 9        Q.    Did you pay for that or receive that as

10   a gift?

11        A.    That was a gift.

12        Q.    What was the value of that gift?

13              MR. GRALEWSKI:  Hold on just a second.

14        I'm not going to object, but are you going to

15        ask a lot of questions about her membership and

16        whether she got them as gifts?  Because I hope

17        not.

18              MR. GOLDSTEIN:  Yeah, I have got a

19        couple more.

20              MR. GRALEWSKI:  So that's my speaking

21        objection.

22              MR. GOLDSTEIN:  Okay.

23        Q.    Does being a Costco member entitle you

24   to certain discounts that are not available to

25   non-members?
```

76

LOUISE WOOD

BARKLEY
Court Reporters

```
1                    Wood - October 15, 2012
2         A.     I don't believe so.
3         Q.     Can non-members shop at Costco?
4         A.     I don't believe so.
5                MR. GRALEWSKI:  I object to the form.
6         Calls for speculation.
7         Q.     Why do you continue to maintain a Costco
8    membership?
9         A.     I appreciate good value.
10        Q.     So is it fair to say you think the value
11   is worth the membership fee?
12        A.     Correct.
13        Q.     So is it fair to say you think you can
14   obtain some things more cheaply at Costco than at
15   other stores?
16        A.     I believe so.
17        Q.     And non-members don't have access to
18   those same values?
19               MR. GRALEWSKI:  Object to the form.
20        Lacks foundation, calls for speculation.
21        A.     Non-members can't purchase products at
22   Costco.
23        Q.     Do you think that if you were not a
24   Costco member, you would have paid more for your
25   television?
```

77

LOUISE WOOD

BARKLEY
Court Reporters