# Exhibit 53

```
 1                UNITED STATES DISTRICT COURT
 2                NORTHERN DISTRICT OF CALIFORNIA
 3                   (SAN FRANCISCO DIVISION)
 4
 5
 6  IN RE:  CATHODE RAY TUBE (CRT)
 7  ANTITRUST LITIGATION                    Case No.
 8                                          07-5944 SC
 9                                          MDL No. 1917
10  - - - - - - - - - - - - - - - - - - - - - - -
11  This Document Relates to:
12  INDIRECT PURCHASER ACTIONS
13  - - - - - - - - - - - - - - - - - - - - - - -
14                SUPERIOR COURT OF CALIFORNIA
15              CITY AND COUNTY OF SAN FRANCISCO
16  - - - - - - - - - - - - - - - - - - - - - - -
17  STATE OF CALIFORNIA,
18             Plaintiffs
19      vs.                                 Case No.
20                                          CGC-11-51584
21  SAMSUNG SDI, INC., CO., LTD., et al.,
22
23             Defendants.
24  - - - - - - - - - - - - - - - - - - - - - - -
25
```

2

```
 1                   Guttman - October 11, 2012
 2   essentially free?
 3        A.    No.
 4              MR. GRALEWSKI:  Objection to the form.
 5        Lacks foundation.
 6        Q.    How do you know that it wasn't free?
 7              MR. GRALEWSKI:  Same objection.
 8        Argumentative, asked and answered.
 9        A.    I believe that I could have eliminated
10   the monitor and saved more money.
11        Q.    You believe.  Are you sure about that?
12        A.    No.
13        Q.    Okay.  How much could you have saved?
14        A.    I can't recall that number.
15        Q.    Was the price you paid for the computer
16   a sales price?
17              MR. GRALEWSKI:  I object to the form.
18        Vague and ambiguous.
19        Q.    Was it on sale?
20        A.    You mean below the listed price?
21        Q.    Correct.
22        A.    I really don't recall.
23        Q.    Did you get any discounts?
24        A.    As a package, I believe I did, yes.
25        Q.    Okay.  And why did you get discounts?
```

```
 1                    Guttman - October 11, 2012
 2        A.     Because it was on their website.
 3        Q.     So their website was offering a
 4   discount?
 5        A.     It was a package.  If you take all the
 6   elements separately, it would cost more.
 7        Q.     So you got a discounted price because
 8   you purchased the items together as a package?
 9        A.     Yes.
10        Q.     And would that include a discounted
11   price on the monitor?
12        A.     I can't state to that fact.  I don't
13   know.
14        Q.     So you don't know what kind of discount
15   you might have gotten because you purchased the
16   monitor together with the computer system?
17               MR. GRALEWSKI:  Object to the form.
18        Misstates testimony.
19        A.     Could you repeat that, please.
20               MS. NAIFEH:  Do you mind repeating that.
21               (The record was read.)
22        A.     I don't know how to answer that.
23        Q.     So --
24        A.     Could you rephrase it, please.
25        Q.     So you stated earlier that you got a
```

76

ALVIN GUTTMAN

BARKLEY
Court Reporters

```
 1                    Guttman - October 11, 2012
 2        A.     Probably the one I purchased.
 3        Q.     And do you recall what size that was?
 4               MR. GRALEWSKI:  Object to the form.
 5        Asked and answered.
 6        A.     It might have been 17 inches.
 7        Q.     Okay.  Was the manufacturer of the
 8   cathode ray tube inside the monitor important?
 9        A.     Yes.
10        Q.     And why was that important?
11        A.     Because that would affect the overall
12   operability of the monitor.
13        Q.     Do you know who the manufacturer of the
14   cathode ray tube in the monitor was?
15        A.     No.
16        Q.     Was the fact that the product contained
17   a CRT important to you when you purchased the
18   product?
19        A.     Could you rephrase that.
20        Q.     Was it important to you that there was a
21   CRT inside the product?
22        A.     If that was its function, yes.
23        Q.     And how so?
24        A.     I suppose I could have bought an LCD
25   screen also.
```

```
 1                 Guttman - October 11, 2012
 2       Q.    Okay.  Do you know where Dell bought the
 3  computer system that you purchased?
 4       A.    Could you repeat that, please.
 5       Q.    Do you know where Dell.com purchased the
 6  computer system that you purchased?
 7       A.    I'm not aware if they purchased it or
 8  they manufactured it.
 9       Q.    Okay.  Do you know how much Dell paid
10  for or spent in purchasing or manufacturing your
11  computer system?
12       A.    No.
13       Q.    Do you still have this monitor, the
14  monitor that came with the Dell 1100?
15       A.    I'm not sure.
16       Q.    You're not sure if you still have it.
17             Do you know what you might have done
18  with it?
19       A.    I may have upgraded to an LCD screen.
20       Q.    You may have.
21       A.    Well, the 1100 Dell computer in the
22  office has another LCD screen connected to that
23  computer.
24       Q.    Okay.  For how long has it had that LCD
25  screen connected?
```

86

ALVIN GUTTMAN

BARKLEY
Court Reporters

```
 1                   Guttman - October 11, 2012
 2        A.    This LCD screen, probably about four or
 3   five months.  There was another LCD screen that's
 4   been there for two -- maybe two or three years.
 5        Q.    Okay.  So you don't recall what happened
 6   to the CRT monitor before the LCD screens were
 7   purchased?
 8        A.    Please repeat that.
 9        Q.    I'm sorry.  I'll rephrase.
10              You don't know what happened to the
11   monitor of the Dell 1100 before the LC -- before you
12   replaced it with the LCD screens?
13        A.    It was used with the 1100.
14        Q.    But you don't know what happened to it
15   after you replaced it?
16        A.    I think it was recycled.
17        Q.    Recycled?
18        A.    Could have been, yes.
19        Q.    Okay.  Could it have been sold?
20        A.    No.
21        Q.    No.  Okay.
22              And -- but you don't think that Lawyer's
23   Choice still holds -- still has the monitor, that's
24   right?
25        A.    I don't believe so.
```

```
 1                    Guttman - October 11, 2012
 2        Q.     The order that we were looking at.
 3               MR. GRALEWSKI:   She's referring to the
 4        Bates No. 908.
 5        Q.     So under order details, it says the
 6   order was placed on March 20, 2006 at 2235.  So
 7   that's 10:35 p.m.
 8        A.     I'm simply reading the order detail.
 9   2006, 3/20, 2235.59.  Okay.
10        Q.     Does that match your recollection?
11               MR. GRALEWSKI:   Object to the form.
12        Misstates testimony.
13        A.     I really do not recollect when I ordered
14   the computer.
15        Q.     But you recollect that you were at
16   Lawyer's Choice when you ordered the computer?
17        A.     I believe so.
18        Q.     Would you have been working at Lawyer's
19   Choice at 10:30 at night, is that a normal practice
20   for you?
21        A.     It's not extraordinary, but it's not
22   normal.
23        Q.     Okay.  So is it possible you could have
24   been at home?
25        A.     I don't think so.
```

114

ALVIN GUTTMAN

BARKLEY
Court Reporters

```
                    Guttman - October 11, 2012
 1
 2      Q.    Why don't you think so?
 3      A.    Well, I don't have a computer in
 4  Washington D.C. that I typically use.  I don't think
 5  we had smart phones back then.  So this is -- I guess
 6  I would like to look at my original e-mail they
 7  confirmed back immediately.  And I don't know if this
 8  is an order that was placed by their computer or by
 9  me.  I honestly don't know.
10      Q.    You don't know.  Okay.
11            So you couldn't have been at home in
12  Florida when you purchased this computer?
13            MR. GRALEWSKI:  Object to the form.
14      Badgering, asked and answered.  Argumentative.
15      A.    It's not likely.
16      Q.    Why do you say that?
17      A.    Because typically when I need something,
18  it's during my time in Washington.  It just
19  doesn't -- I can't see myself ordering a computer for
20  Washington D.C. out of Florida at 10:30 at night.  I
21  don't -- I really don't recall.
22      Q.    Okay.  Is it possible?
23      A.    It's conceivable, yeah.
24      Q.    Did you -- if I'm not mistaken, earlier
25  today when you were testifying about the -- one of
```

115

ALVIN GUTTMAN

```
 1                    Guttman - October 11, 2012
 2         A.    Yes.
 3         Q.    How do you know the monitor contained a
 4  CRT?
 5         A.    Well, it says so on the order, CRT.
 6         Q.    Did you ever open the monitor to confirm
 7  that it contained a CRT?
 8         A.    No.
 9         Q.    Did you review any technical
10  specifications of the product?
11         A.    No.
12         Q.    Do you know who manufactured the CRT
13  that you believe is contained in your product?
14         A.    No.
15         Q.    Do you know how much the manufacturer of
16  your product paid for the CRT?
17         A.    No.
18         Q.    Do you know if Dell manufacturers
19  monitors?
20         A.    No.
21         Q.    Is Dell one of the parties in this
22  lawsuit?
23               MR. GRALEWSKI:  Object to the form.
24         Asked and answered.
25         A.    I don't believe so.
```

125