Hon. Charles A. Legge (Ret.)
JAMS
Two EmbarcaderoCenter, Suite 1500
San Francisco, CA94111
Telephone: (415) 774-2644
Fax: (415) 982-5287
Special Master

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | **MDL No. 1917**<br>**JAMS Ref. No. 1100054618** |
| This Document Relates to:<br><br>ALL DIRECT ACTION CASES | **REPORT AND RECOMMENDATIONS REGARDING DEFENDANTS' MOTIONS TO DISMISS DIRECT ACTION COMPLAINTS** |

# TABLE OF CONTENTS

Procedure and Agreed Facts                                                          3

Alleged Federal Law Cause of Action                                                 4

Alleged State Law Causes of Action                                                  6

    1.  Joint Motion to Dismiss Based on Statutes of Limitation              6

    2.  Joint Motion to Dismiss Based on Prudential Standing                7

    3.  Joint Motion to Dismiss Based on Due Process                        8

    4.  Joint Motion to Dismiss Based on Associated General Contractors    9

    5.  Other Motions Asserted by Some Defendants in the Joint Motion      12

Motions to Dismiss by Individual Defendants                                         14

    1.  The Phillips Defendants, Joined by the LG Defendants               14

    2.  The Samsung Defendants                                             16

Recommendations/Conclusion                                                         17

Table of Direct Action Plaintiff Claims                                      Attached

To the Honorable Samuel Conti, United States District Judge: The undersigned special master respectfully submits the following report and recommendations regarding the motions of defendants to dismiss the complaints in the <u>direct action</u> cases:

## PROCEDURE AND AGREED FACTS

Defendants move to dismiss the complaints in the direct action cases. The motions were filed, opposed and briefed. They were argued and submitted for decision on February 14, 2013. The transcript of the oral argument is cited in this report as "Tr. p. ___." Some of the motions request judgments on the pleadings rather than dismissals, but because the issues are mostly legal, this report for simplicity sometimes refers to all of the motions as "dismissal" motions.

For the assistance of the Court and the clerks, this report attaches a Table identifying the direct action plaintiffs, their case numbers, those that are making federal claims (indeed, all), the cited jurisdictions for the state claims (sometimes multiple), and certain allegations relating to specific issues. The chart was prepared jointly by plaintiffs and defendants shortly after the February 14 hearing. There are approximately twelve direct action complaints, encompassing approximately twenty plaintiffs. But those numbers do not account for more recent filings and dismissals.

Some additional general information about plaintiffs and their claims is helpful at this point. The special master believes that this information is not in dispute. But it is general and is subject to exceptions in individual cases. It is nevertheless helpful for the purposes of identifying the issues in these cases:

Most of the plaintiffs are retailers. Each retailer sells multiple brands, and each buys from more than one supplier. Two plaintiffs are "systems integrators," two are wholesalers, and one is a wholesale buying cooperative.

Each plaintiff alleges that it bought at least one <u>CRT product</u> from a defendant, an affiliate of a defendant, or a co-conspirator of a defendant. Indeed, the question of from whom they did buy is a principal issue in the motions to dismiss the federal claims. But the record does not presently identify the names or status of each retailer's suppliers.

The alleged conspiracy is to fix the prices of the <u>CRTs themselves</u>, and <u>not</u> a conspiracy to fix the prices of the <u>finished products</u>.

The retail plaintiffs, and perhaps other plaintiffs, <u>purchased finished products</u>, and <u>did not purchase CRTs</u>.  The special master is presently uncertain whether the wholesale plaintiffs purchased individual CRTs as well as finished products.  The retail plaintiffs are "indirect" purchasers of the CRTs, and are not "direct" purchasers for purposes of standing under the federal antitrust laws.  They nevertheless assert standing to bring a federal cause of action, for the reasons discussed below.

For purposes of case management, these direct action cases have since their filing been on the same schedule as the two principal class actions.  The discovery which has been exchanged in the CRT cases has included the direct action cases.

## THE ALLEGED FEDERAL LAW CAUSE OF ACTION

As stated, each direct action plaintiff asserts a federal cause of action.  And all of them, with the possible exception of the wholesalers and integrators, are admittedly <u>indirect</u> purchasers for the purposes of standing under the federal antitrust laws.

For that reason, defendants jointly bring a motion to dismiss the complaints because of plaintiffs' alleged lack of standing to assert a federal claim, under the authority of *Illinois Brick*.  A virtually identical legal issue was previously raised in defendants' motions for summary judgment against the direct purchaser class, and those motions were pending before Your Honor at the time that the direct action complaints were filed.  Your Honor subsequently held that purchasers who are indirect may nevertheless have a cause of action under the Sherman Act if they meet the requirements of *Royal Printing Company vs. Kimberley-Clark Corporation*, 621 F.2d 323 (9th Cir. 1980).  The special master believes that the essence of the *Royal* decision is that an admittedly indirect purchaser still has standing to sue under the Sherman Act if it can allege and prove that it purchased a finished product incorporating an allegedly price-fixed CRT from an entity owned or controlled by one of the named defendants.

///

The plaintiffs in these direct action cases of course contend that Your Honor's decision compels denial of the present motion to dismiss. The defendants recognize that Your Honor's decision is presently the law of the case, and will remain so unless it is reversed by the Ninth Circuit, which probably could not occur until after the trial of these actions.

Defendants therefore presently seek only to <u>preserve that issue</u> in these direct action cases for later appeal, and seek to maintain the portions of Your Honor's decision which denied the application of the "co-conspirator" and "cost-plus" exceptions to *Illinois Brick*. The form of order recommended by the special master below attempts to maintain that balance, and render any further substantive discussion of *Illinois Brick* and *Royal Printing* unnecessary in the present motion. The special master therefore recommends that the Court enter the following order:

1. GRANT defendants' motion against the direct action complaints to the extent the motion challenges the direct action plaintiffs' alleged right to proceed under the so-called "cost-plus" exception to *Illinois Brick*, because the direct action plaintiffs do not allege that they had a preexisting cost-plus contract with any of the defendants.

2. For the reasons set forth in the Court's order of November 29, 2012, GRANT defendants' motion against the direct action complaints to the extent the motion challenges the direct action plaintiffs' alleged right to proceed under the so-called "co-conspirator" exception to *Illinois Brick*.

3. For the reasons set forth in the November 29, 2012 order, DENY defendants' motion against the direct action complaints to the extent the motion challenges the direct action plaintiffs' right to proceed under the so-called "owned or controlled" exception to *Illinois Brick*. This Order, however, expresses no view as to whether the direct action plaintiffs will be able to prove what is needed to establish that "owned or controlled" exception with respect to their purchases of finished products containing CRTs.

4. Defendants' joint motion to dismiss does not presently challenge the <u>adequacy</u> of plaintiffs' allegations of ownership and control, and the Court makes no ruling on that issue.

5. The Defendants' joint motion does not presently raise the issue of the application of the statute of limitations to the federal claims; Tr. pp. 39-40.

## THE ALLEGED STATE LAW CAUSES OF ACTION

### 1.   Joint Motion to Dismiss Based on Statutes of Limitation

Of the twelve direct action complaints, nine were filed on approximately November 14, 2011.   The causes of action in those complaints allege violations of the laws of 17 states. Fourteen of those states have statutes of limitations of four years, and two have statutes of three years.   Therefore, any claims based on defendants' actions prior to November 14, 2007 would be *prima facie* barred by those statutes of limitation.   The issue in the joint motion to dismiss is whether those statutes of limitation should not be applied because of tolling doctrines.   Plaintiffs primarily assert two tolling doctrines: fraudulent concealment, and "class action" or so called "*American Pipe*" tolling.

Defendants assert that fraudulent concealment cannot apply because by November 14, 2007 plaintiffs had actual notice, or were at least on inquiry notice, of the factual bases for their claims.   Defendants contend that there was substantial publicity regarding worldwide governmental actions against defendants' facilities in the investigation of these cases, on or by November 8, 2007.   In addition, one complaint, *Kent v. Hitachi*, was filed on November 13, 2007.   Defendants conclude from those two events that: "Accordingly, the DAP's claims are not tolled for any portion of the period from November 8, 2007 to November 14, 2011, the date when all but two DAPs finally filed their respective claims." Defendants' joint motion, p. 13.

As stated, the legal issue is whether plaintiffs had actual notice or constructive notice of their claims prior to November 14, 2007.   In the context of these pleadings and this motion, the issue is really <u>constructive</u> notice.   The Ninth Circuit in *Conmar Corp. v. Mitsui*, 858 F.2d 499 (9th Cir. 1988) denied a defense summary judgment motion on the issue of constructive notice, stating that the evidence had to be "uncontroverted" and "irrefutably demonstrate" that a plaintiff should have discovered its cause of action.   Here, defendants contend that the evidence is the publicity about the November 8, 2007 governmental actions, and the filing of a complaint by Hitachi a few days later.   For purposes of this motion, the special master must accept the <u>adequacy</u> of plaintiffs' <u>pleading</u> of fraudulent concealment, so the issue is whether the Court can say <u>as a matter of law</u> that plaintiffs had notice by November 8, 2007 and could have filed their

complaints within the six-day period up to November 14, 2007. Even with the most diligent of plaintiffs and law firms, it is highly unlikely that they could reasonably have found and examined the relevant evidence as to whether each plaintiff had a cause of action, and then have filed their complaints – all within six days. Certainly the question of actual notice or construction notice would, in this setting, be one of fact. The granting of a motion to dismiss on the grounds of constructive notice would therefore not be appropriate under the notice pleading standard for federal Rule 12(b)(6) motions. The special master therefore recommends that defendants' motion to dismiss the state causes of action on the ground of the statute of limitations be denied.

If the Court agrees with that recommendation, the Court need not consider the additional basis for tolling asserted by plaintiffs; that is class action, or so called *"American Pipe,"* tolling. In short, however, defendants argue that *American Pipe* deals only with <u>federal</u> claims, and that few if any states have adopted such a tolling doctrine. They also argue various policies against incorporating *American Pipe* tolling into the state statutes of limitations. The special master believes that, even if the Court were to address this issue as being necessary to resolution of the motion, such policy considerations, and how they might apply to the facts and to the law of each state, are not a basis on which the Court should now rule as a matter of law.

As stated, the special master therefore recommends that defendants' joint motion to dismiss based upon the state statutes of limitation be denied.

## 2.  Joint Motion to Dismiss Based on Prudential Standing

In this portion of their motion, defendants jointly contend that those plaintiffs who fail to allege sufficient contacts with the state whose laws they invoke should be dismissed for lack of standing. Defendants call this a failure to establish "prudential standing," and they cite to requirements that plaintiffs must meet. One is that a plaintiff must assert its own legal rights and interests, and must present something more specific than a generalized grievance. The pleadings here allege that the direct action plaintiffs are asserting <u>their own</u> legal rights, and that their grievances are for their own alleged losses and are not generalized.

Another requirement which defendants assert is that a plaintiff's claim must fall within "the zone of interest to be protected or regulated by the statute." The essence of defendants'

position is stated on pg. 22 of their motion: a plaintiff who purchased a price-fixed product in one state cannot avail itself of a second state's antitrust laws, because the purchase was not within the zone of interest under the second state's laws. Defendants say that, "All DAPs state law claims that fail to allege a purchase in the state under whose laws are invoked," fail to meet the prudential standing requirement. (Emphasis added.)

Plaintiffs have not directly responded to this "prudential standing" argument. However, defendants, other than their quoted generalized argument, do not demonstrate which of plaintiffs' alleged claims, and under the laws of which states, are allegedly deficient. Perhaps they cannot do so because of the present allegations in the pleadings, so the Court is simply asked to dismiss, "All DAPs' state law claims that fail to allege a purchase in the state under whose laws are invoked..."; joint motion p. 22. This request is too broad and generalized, and is without a record sufficient to support dismissal of plaintiffs' claims. And a ruling solely as a matter of law would not be supported by a record and could well sweep too broadly. The special master therefore recommends that the motion to dismiss on the grounds of prudential standing be denied without prejudice.

### 3. Joint Motion to Dismiss Based on Due Process

Under this ground for their motion to dismiss, defendants argue, quite correctly, that there must be significant contacts between the state law to be applied and the parties or the occurrence. Both sides say that they are taking their appropriate legal standard from the U.S. Supreme Court decision in *All-State Insurance Co. v. Hague*, 449 U.S. 302 (1981).

However, the parties' applications of that decision to the present case differ considerably. Defendants' interpretation would limit jurisdiction to the laws of the state where the merchandise was purchased; or stated somewhat differently, to the laws of the state where the parties negotiated the purchase. See Tr. pp. 114, 120. Plaintiffs of course view jurisdiction more broadly. They contend that *All-State v. Hague* requires an examination of all of the contacts with the state whose law is to be applied and the parties and the occurrences giving rise to the claim. This contention is a "sufficiency of the contacts" argument, seeking to apply all of the allegedly relevant facts of the relationships; see Tr. pp. 122-124, 126.

However, the discussions in the parties' briefs have been superseded by a decision of the Ninth Circuit on the day of the oral arguments of these motions. *AT&T Mobility LLC, et al. v. AU Optronics Corporation, et al.*, No. 11-16188, filed February 14, 2013; 2013 WL 540859 at 6. The question there addressed by the Ninth Circuit was essentially the position taken by defendants here: "the question whether the application of California antitrust law to claims against defendants based on purchases that occurred outside California would violate the Due Process clause of the United States Constitution." Op. p. 4. The court answered that question "in the negative." And its opinion indicates that it is not simply the place of purchase that decides the applicable law, but also the place of the conduct of the defendants and the place where the agreements were entered into. The Ninth Circuit said on p. 11 of its opinion: "The Due Process Clause thus requires a court to invalidate the application of a state's law only where the state has 'no significant contact or significant aggregation of contacts, creating state interests, with the parties and the occurrence or transaction.'" Citing *All-State v. Hague.*

The special master concludes that the Ninth Circuit has adopted a broader interpretation of *All-State v. Hague* than that advocated by defendants here. The special master therefore recommends that this motion to dismiss on due process grounds as framed by defendants must be denied. If defendants still contend that some or all of the present complaints fail to meet the requirements of due process quoted above, those complaints will have to be the subject of later motions by defendants. It is therefore recommended that this motion to dismiss on grounds of lack of due process be denied, without prejudice.

**4.     Joint Motion to Dismiss Based on Associated General Contractors**

Defendants move to dismiss the claims alleged under the laws of five states, upon the authority of *Associated General Contractors vs. California State Counsel of Carpenters*, 459 US 519 (1983) ("AGC"). Defendants assert AGC as grounds for dismissal of the causes of action alleged under the laws of the states of California, Washington, Arizona, Illinois, and Michigan, for lack of standing. Plaintiffs concede that the principles of AGC apply to their claims under the laws of California and Washington. But they dispute that AGC applies to Arizona, Michigan, and Illinois.

1    As to those states where AGC does apply, defendants contend that its requirements have

2  not been satisfied.  In response, plaintiffs broadly argue that if a state's law allows for suits by

3  indirect purchasers, then plaintiffs must have standing.  However, AGC is a separate principle of

4  standing developed by the United States Supreme Court, independent of the grants of jurisdiction

5  to sue by certain state laws.

6    The first issue should logically be whether the principles of AGC apply to the states of

7  Illinois, Michigan, and Arizona.  The next step in the analysis would then be whether the

8  requirements of AGC are satisfied in those states where AGC does apply.  However, in the

9  briefing on this motion, and in some of the prior authorities cited, those two concepts are

10  sometimes considered as one whole.  And the special master must accept that precedent as he

11  finds it.

12    Plaintiffs argue that AGC does not apply to the states of Arizona, Illinois, and Michigan.

13  And as to the application of the AGC factors to these complaints, plaintiffs argue that Your

14  Honor has already held in *Cathode Ray Tube litigation*, 738 F. Supp. 2d 1011 (N.D. Cal. 2010),

15  that they do not apply.  Plaintiffs' statements about the holdings of that decision are correct,

16  insofar as they accurately quote the language.  But there is a simple reason why that holding is

17  not applicable to the complaints in these direct action cases.  That is, the complaints that were

18  before Your Honor in 738 F. Supp. 2d 1011 were ones in which <u>both</u> cathode ray <u>tubes</u> and

19  <u>finished products</u> were the alleged subjects of the conspiracy.  However, the present direct action

20  complaints concern <u>only the CRTs themselves</u>, Tr. pp. 18-19.  That creates a clear differentiation

21  between the allegations of these direct action complaints and those that were before Your Honor

22  in the prior motion:

23    There is a real <u>market</u> distinction, and hence a real <u>legal</u> distinction, between the finished

24  products and just the CRTs.  That distinction is important to the present pleadings.  As

25  previously noted, the direct action plaintiffs are in general purchasers and retailers of <u>finished</u>

26  <u>products</u> containing CRTs, and are <u>not</u> purchasers or sellers of the <u>CRTs</u> themselves.  To meet

27  the requirements of AGC, plaintiffs must be participants <u>in the same allegedly restrained market</u>

28  in order to prove antitrust injury.  See *Bhan vs. NME Hospital Inc.*, 772 F. 2d. 1467 (9th Cir.

1999) and *Am. Ad Mgmt. Inc., vs. Gen. Tel. Co.*, 190 F. 3d.1051 (9th Circuit 1999). That is, they must be in the market for the sale of CRTs, not the market for the sale of finished products.

The courts of this District have arrived at varying results in the application of AGC to the laws of various states. It is hard to say whether those variances were driven by the readings of the separate judges on the laws of the states, or by the specific pleadings before them in each case.

In their moving papers, defendants make a *prima facie* showing of the application of the principles of AGC to the laws of the five states raised in this motion. Plaintiffs' opposition provides little discussion of the issues, other than the argument that the matter has already been resolved by Your Honor, above. Plaintiffs do argue that there is not a clear enough directive from certain states' highest courts or legislatures; opposition brief 26-27. But existing state law, whether it is by the highest court or by an intermediate court, is the applicable authority. The same approach has been taken in other litigation to examine the application of AGC to the laws of various states. See, *e.g., In Re: DRAM Antitrust Litigation*, 516 F. Supp. 2d. 1072 (ND Cal 2007), and 536 F. Supp. 2d. 1129 (ND Cal 2008).

Because the factor of "antitrust injury" is essential to the analysis, the special master is not addressing the other deficiencies claimed by defendants regarding plaintiff's compliance with AGC's requirements. Suffice it to say that in order to meet AGC standing requirements, plaintiffs in an amended complaint, must address the established fact that the products are just the CRTs, and that is the market in which plaintiffs must address their alleged antitrust injury; or plaintiffs must more clearly allege why AGC does not apply to a particular state.

For the above reasons, the special master recommends that the allegations that defendants breached the antitrust laws of the laws of the states of California, Illinois, Michigan, Arizona, and Washington be dismissed, with leave to plaintiffs to file a further complaint adequately alleging antitrust standing under Associated General Contractors. Defendants do not presently assert AGC as a reason to dismiss the federal claims; Tr. pp. 39-40.

///

///

## 5.    Other Motions Asserted by Some Defendants in the Joint Motion

The joint motion to dismiss by defendants includes some particularized requests for dismissal, judgment on the pleadings, or other relief.  They are narrower in scope than the more general issues raised by defendants jointly, and discussed above.   The special master has reviewed the moving papers, the opposing papers, the authorities, and the oral argument on those particularized requests, and is recommending to the Court as follows:

(a.)    Defendants seek dismissal of the claims under the consumer protection statutes of the states of Massachusetts and Washington.

Defendants argue that plaintiffs have failed to comply with the written demand for relief prior to the filing of their actions required by statute in Massachusetts.  This issue has been before Your Honor at least twice before, and Your Honor dismissed the earlier claims for failure to comply with the specific requirements of the statute regarding pre-filing notice.  In this present motion, the facts, the authorities and the principles remain the same.  And the special master therefore recommends that the motion to dismiss the Massachusetts claims under its consumer protection act be granted without leave to amend.

As to the State of Washington, the law is clear that indirect purchasers are barred from bringing their own action by *Illinois Brick*.  Plaintiffs concede that, "Washington law does not authorize private indirect purchasers to initiate suit" under the Washington Consumer Protection Act, opposition brief, p. 35.  And the fact that the Washington Attorney General has filed a separate suit does not grant plaintiffs the right to bring their own suits.  While plaintiffs may obtain some relief as companies for whose benefit the attorney general has sued, that suit does not enable a Washington resident to file its own suit for an alleged antitrust violation.  This issue has also been previously addressed by the special master and by this Court.  The special master therefore recommends that the complaints asserted under Washington law be dismissed without leave to amend.

(b.)    Some defendants move to dismiss the claims filed by various plaintiffs, primarily the Polaroid plaintiffs, under the common laws of unjust enrichment.  Plaintiffs have not alleged the unjust enrichment laws of any particular state.  But the common law concept of unjust

enrichment is not uniform, and is subject to definition by the separate states. The special master therefore recommends that the motion to dismiss should be granted, with leave to plaintiffs to amend their complaints to identify what states' laws they are relying upon to allege a claim for unjust enrichment.

(c.)     Certain claimants have alleged violations of California's laws for restitution or unjust enrichment. Defendants seek to dismiss those allegations, under the argument that California law does not allow stand-alone claims for restitution or unjust enrichment. The authorities interpreting California law are divided on this issue. The special master is nevertheless recommending that those allegations be dismissed without leave to amend. The reason is that California law provides specific remedies for antitrust violations in its Cartwright Act, which are adequate remedies at law. There is no need to litigate equitable forms of relief when the state's statute provides specific causes of action and forms of relief for the facts alleged in these complaints.

(d.)     Certain causes of action by plaintiffs allege violations of California's statutory Unfair Competition law ("UCL"). Defendants argue that these causes of action should be dismissed because plaintiffs have not sufficiently alleged antitrust violations under state or federal law, which they interpret the UCL to require. The special master recommends that defendants' motion be denied. Under California law, antitrust violations <u>can</u> be a basis for a UCL cause of action; *Cal-Tech Comm. v. Los Angeles Cellular,* 973 P.2d. 527 (Cal. 1999) at 544. Taken as a whole, the present complaints do allege antitrust violations, although subject to certain exceptions and special applications. The special master cannot presently say that plaintiffs have <u>not</u> alleged <u>any</u> valid antitrust claims, and hence cannot sue under California's UCL.

(e.)     Defendants move to dismiss certain claims under Nebraska, Nevada, and New York law, on the grounds that plaintiffs cannot sue for purchases prior to the date that the statutes repealing *Illinois Brick* were passed in those states.

Plaintiffs concede that they lack standing to assert claims under New York law based upon purchases prior to December 3, 1998; opposition brief, p. 39, fn. 51. Accordingly, the

special master recommends that those claims be dismissed with prejudice, primarily the claims asserted by Sears, Target, Electrographic, CompuCom and P.C. Richard.

As to the states of Nebraska and Nevada, this Court has already held that indirect purchasers lack standing to bring claims under Nebraska and Nevada law for purchases that predate those states' respective *Illinois Brick* repeal statutes. See 738 F. Supp. 2d. at 1025. Plaintiffs' arguments in this motion are the same as those considered and rejected by this Court previously. Plaintiffs have cited no authority, and have provided no new reasons, why this Court should reverse its earlier holdings. The special master therefore recommends that the Court dismiss with prejudice the claims of plaintiffs based on purchases predating the repeal statutes in Nebraska and Nevada.

## MOTIONS TO DISMISS BY INDIVIDUAL DEFENDANTS

Some motions were separately filed, argued and submitted by certain individual defendants, which will now be addressed by the special master.

### 1.    The Phillips Defendants, Joined by the LG Defendants

Phillips' motion is primarily based upon the federal statute of limitations for an action under the Sherman Act.   The position of these defendants is, in essence, that <u>plaintiffs' complaints</u> establish that these defendants ceased the business of manufacturing or selling CRT tubes prior to the effective date for the running of the statute of limitations.

Nine of these direct action complaints were filed on November 14, 2011.   That means that the statute of limitations should have *prima facie* run on all actions of these defendants prior to November 14, 2007.  Even if plaintiffs are given the benefit of tolling based upon the filing of the first direct purchaser plaintiff class action on November 26, 2007, the statute has run on any conduct by these defendants prior to November 26, 2003.

With that timeline in mind, Phillips cites the following allegations of the direct action complaints (for example, the *Best Buy* complaint).  The direct action plaintiffs allege that in the year 2001 "[Phillips] transferred its CRT business to a 50/50 joint venture with Defendants LGEI, forming defendant LGPD [also called LPD];" *Best Buy* complaint, ¶46.  Following that

transfer, according to the complaint, Phillips' only connection to the alleged cartel was "through LPD"; *Best Buy* ¶150. Then, in March 2007, more than four years prior to the filing of these direct action complaints, LPD became "an independent company." *Best Buy* also alleges in ¶40 that after March 2007, LPD's shares were "owned by financial institutions and private equity firms." That pleading and timing indicate that Phillips' last participation in the CRT industry, including its stock ownership in LPD, ended in March, 2007. That was well before the statute of limitations, even if plaintiffs are given credit for the tolling resulting from the filing of the first direct purchaser plaintiff class complaint.

Plaintiffs argue that the creation of LPD by Phillips and LG, with 50/50 ownership interests, means that those defendants continued to <u>participate</u> in the industry at least until March of 2007. However, it is established by judicial notice that LPD went publicly into bankruptcy in January 2006. That effectively demonstrates the absence of any participation by that company in any manufacturing enterprise or conspiracy at least after that date.

Plaintiffs argue that this issue was decided against defendants in the motions for dismissal in the class cases. However, at the time of those motions, <u>finished products</u> were still a part of the allegations, and Phillips was a manufacturer of <u>finished products</u> until 2007.

Plaintiffs next argue that Phillips and LG's alleged withdrawal from the conspiracy in March 2007 is not definitive because of plaintiffs' fraudulent concealment allegations. However, the fraudulent concealment allegations now made in these 2011 complaints are essentially the same as those made in the 2007 class complaints, with little more specificity after four years of pleadings, motions and discovery. And even more important, the <u>record</u> for this motion is based upon <u>plaintiffs' own complaints</u> stating the facts, and the public record of LPD's bankruptcy in 2006.

The same logic applies to the statutes of limitations applicable to the state law claims. The four year statutes of limitations on certain state law claims would bar causes of action for alleged activities before November 14, 2007.

The special master therefore recommends that the motion of Phillips and LG on the grounds of the statutes of limitation be granted, without leave to amend.

## 2.    The Samsung Defendants

The Samsung defendants, referred to in the motions papers as SEC and SEAI, have also filed a motion which challenges the federal and state law claims.

Their ground for dismissal rests upon the fact that those companies did not manufacture or sell CRT tubes, but only <u>purchased</u> tubes. And the present complaints are limited to an alleged conspiracy to fix the prices of the <u>tubes</u> only.

Samsung notes that at the time of the earlier denial of its motion to dismiss the class cases, the complaints made allegations of a conspiracy to fix the prices of the <u>finished products</u> as well as the tubes. Samsung is correct about the significance of such a distinction. The earlier denial of the motion to dismiss the direct purchaser class action noted that the distinction between <u>CRTs</u> and CRT <u>finished products</u> "underlies most of the defendants' grounds for dismissal in these cases." Samsung is correct that there is no logic to a contention that a company which does not make or sell the price-fixed products (the CRTs) is somehow liable for a conspiracy to fix those prices when it was only a <u>purchaser</u> of that product, and there is now no allegation of a conspiracy to fix the price of the <u>finished product</u>.

Plaintiffs also argue that SEC's participation in the conspiracy was through a controlled subsidiary, SDI. In the *Circuit City* complaint, plaintiffs allege that "defendant SEC dominated and controlled the finances, policies, and affairs of Samsung SDI," ¶51. However, the same paragraph also alleges that SDI is a separate company which is publicly traded, and in which SEC has less than a 20% minority ownership interest. The simple use of the word "dominate" or "control," in light of the fact of SEC's <u>minority</u> ownership, is insufficient to allege the necessary control to establish the liability of SEC. And it is not sufficient pleading to lump all of the Samsung entities together, just call them "Samsung," and thereby create the liability of all of them for an act of one.

The special master therefore recommends that the complaints against SEC and SEAI be dismissed with leave to amend. And the other arguments regarding these pleadings and motions need not now be considered.

The special master again notes that these direct action complaints are not "initial"

pleadings.  Before filing them, plaintiffs had the benefit of the pleadings in the earlier class actions since 2007, and have had the benefit of years of discovery, taken both before and after they became active participants in this group of cases.  So it is not asking too much for their pleadings to be more specific, and with better support, than would generally be required of an initial pleading.

## RECOMMENDATIONS/CONCLUSION

For the reasons discussed above, the Special Master respectfully recommends that orders be entered as stated in each section above.

Because of the large number of different motions and arguments, it is possible that this report may have not discussed all contentions.  To prevent ambiguity, the special master therefore recommends that the Court's order state that any motions not discussed in the order are denied without prejudice.

And where the special master has recommended that a complaint be dismissed without prejudice or with leave to amend, the special master has sometimes not ruled on all of the other grounds asserted for dismissal.  Those other grounds may have to be reargued in a motion to dismiss after amendment, but that will then be in the context of the principal issues having been ruled upon and the new allegations in the amendment.


Respectfully submitted,


DATED: _May 2, 2013_          _Charles A. Legge_
                              Hon. Charles Legge (Ret.)
                              Special Master


       Approved/Disapproved/Modified


DATED: _____        _____
                              Hon. Samuel Conti
                              United States District Judge

# Table of Direct Action Plaintiff Claims

*In re: Cathode Ray Tube (CRT) Antitrust Litigation, No. 07-cv-5944, MDL. No. 1917*

Consistent with the Special Master's request at the February 14, 2013, hearing on Defendants' Motions to Dismiss,[1] Direct Action Plaintiffs have prepared the following chart. The chart identifies each Plaintiff, each Plaintiff's individual case number (and the district in which the case was originally filed if not the Northern District of California), the state laws under which each Plaintiff asserts claims, and the paragraphs in each complaint that address the *AGC* standing and Due Process arguments if applicable to that Plaintiff.

## Retailer Plaintiffs

| Direct Action Plaintiff | Case Number | Federal Claim | State Law Claims | Allegations in Complaint related to *AGC* Standing[2] | Allegations in Complaint related to Due Process |
|---|---|---|---|---|---|
| ABC Appliance (Filed in E.D.N.Y.) | No. 12-cv-2648 | Yes | • Michigan | N/A | P.C. Richard Compl. ¶¶ 11, 14-15, 22-24, 27, 47, 52, 54, 64, 66, 67, 71, 81, 173, 177-80, 182, 191, 238, 248 |
| Best Buy | No. 11/cv-5513 | Yes | • Minnesota | N/A | N/A |
| Circuit City | No. 11-gv-5502 | Yes | • California<br>• Illinois | Circuit City Compl. ¶¶ 84, 87-91, 128, 214-221 | Circuit City Compl. ¶¶ 9, 13, 17, 20-22, 52, 64-65, 69, 81, 178-81, 183, 192, 243-248, 262-66 |
| Costco (Filed in W.D. Wash.) | No. 11-cv-6397 | Yes | • Arizona<br>• California<br>• Florida<br>• Illinois<br>• Washington | Costco Compl. ¶¶ 66, 69-70, 108, 157-159, 183-84 | Costco Compl. ¶¶ 12-14, 47-48, 53, 142-46 |
| Good Guys[3] | No. 11-cv-5514 | Yes | • California | N/A | Target Compl. ¶¶ 14, 29, 32-33, 42, 49, 60, 65, 67, 77, 79-80, 85, 191-195, 203, 248 |

---

[1] Defendants collectively filed three Motions to Dismiss. Defendants' Joint Motion to Dismiss was filed against all Direct Action Plaintiffs. Dkt. 1317 (Aug. 17, 2012). A second Motion to Dismiss, brought by Philips and joined by LG Electronics, was similarly filed against all Direct Action Plaintiffs. Dkt. 1319 (Aug. 17, 2012). Samsung Electronics and Samsung Electronics America filed a third Motion to Dismiss against all Direct Action Plaintiffs except for the Best Buy entities. Dkt. 1316 (Aug. 17, 2012).

[2] Defendants move to dismiss under: *AGC* Plaintiffs Costco, CompuCom, Electrograph, Circuit City, Office Depot, and Polaroid's California law claims; Costco, Circuit City, and MARTA's Illinois claims; Costco and MARTA's Arizona law claims; and Costco's Washington law claims.

[3] Good Guys has subsequently filed a voluntary dismissal without prejudice. Dkt. 1575 (Feb. 19, 2013).

1 of 4

29040-0316LEGAL25580360.3

show_temp.pl

Case3:07-cv-05944-SC Document1664... Filed05/02/13 Page19 of 21 ...temp.pl?file=9383763-0--...

Case3:07-cv-05944-SC Document1580 Filed02/22/13 Page5 of 7

## Table of Direct Action Plaintiff Claims

*In re: Cathode Ray Tube (CRT) Antitrust Litigation, No. 07-cv-5944, MDL. No. 1917*

| Direct Action Plaintiff | Case Number | Federal Claim | State Law Claims | Allegations in Complaint related to *AGC* Standing[2] | Allegations in Complaint related to Due Process |
|---|---|---|---|---|---|
| Interbond d/b/a/ BrandsMart (Filed in S.D. Fla.) | No. 11-cv-6275 | Yes | • Florida | N/A | Interbond Compl. ¶¶ 13, 15-18, 84, 244, 246-247, 279 |
| Kmart | No. 11-cv-5514 | Yes | • California • Florida • Illinois • Michigan • Minnesota • Nebraska • Nevada • North Carolina | N/A | Target Compl. ¶¶ 14, 16-19, 21, 22, 27, 29, 32-33, 37, 42, 49, 60, 65, 67, 77, 79-80, 85, 191-195, 203, 244-45, 258 |
| Magnolia Hi-Fi | No. 11-cv-5513 | Yes | • Minnesota | N/A | Best Buy Compl. ¶¶ 16-24 |
| Office Depot (Filed in S.D. Fla.) | No. 11-cv-6276 | Yes | • California • Florida | Office Depot Compl. ¶¶ 81, 84-88, 207-214 | Office Depot Compl. ¶¶ 11, 15-17, 18, 19, 49, 61-62, 66, 78, 172-75, 177, 186, 236, 238, 239, 241, 244-46, 249 |
| Old Comp a/k/a CompUSA[4] | No. 11-cv-5514 | Yes | • California • Illinois | N/A | Target Compl. ¶¶ 14, 27, 42, 49, 60, 65, 67, 77, 79-80, 85, 191-195, 203, 248 |
| P.C. Richard and Son Long Island (Filed in E.D.N.Y.) | No. 12-cv-2648 | Yes | • New York | N/A | P.C. Richard Compl. ¶¶ 11, 14-18, 27, 47, 52, 54, 64, 66, 67, 71, 81, 173, 177-80, 182, 191, 238, 249 |
| RadioShack | No. 11-cv-5514 | Yes | • California • Massachusetts • Mississippi | N/A | Target Compl. ¶¶ 14, 37, 42, 49, 60, 65, 67, 77, 79-80, 85, 191-195, 203, 248 |

[4] Old Comp has subsequently filed a voluntary dismissal without prejudice. Dkt. 1574 (Feb. 19, 2013).

2 of 4

29040-0318\LEGAL25880360.3

Table of Direct Action Plaintiff Claims

*In re: Cathode Ray Tube (CRT) Antitrust Litigation*, No. 07-cv-5944, MDL. No. 1917

| Direct Action Plaintiff | Case Number | Federal Claim | State Law Claims | Allegations in Complaint related to *AGC* Standing[2] | Allegations in Complaint related to Due Process |
|---|---|---|---|---|---|
| Sears | No. 11-cv-5514 | Yes | • Arizona<br>• California<br>• Florida<br>• Illinois<br>• Massachusetts<br>• Michigan<br>• Minnesota<br>• Mississippi<br>• Nebraska<br>• Nevada<br>• New Mexico<br>• New York<br>• North Carolina<br>• Wisconsin | N/A | Target Compl. ¶¶ 14, 16-19, 21, 22, 27, 29, 32-33, 37, 42, 49, 60, 65, 67, 77, 79-80, 85, 191-195, 203, 244-45, 258 |
| Target | No. 11-cv-5514 | Yes | • Arizona<br>• California<br>• Florida<br>• Illinois<br>• Iowa<br>• Kansas<br>• Michigan<br>• Minnesota<br>• New York<br>• North Carolina<br>• Wisconsin | N/A | Target Compl. ¶¶ 14, 16-18, 42, 49, 60, 65, 67, 77, 79-80, 85, 191-195, 203, 248 |
| Tweeter (Filed in E.D.N.Y.) | No. 12-cv-2649 | Yes | • Massachusetts | N/A | Tweeter Compl. ¶¶ 11, 13, 16, 22, 25, 27, 35, 40, 45, 50, 52, 62-65, 69, 79, 171, 175-80, 189, 233, 234, 236, 239, 245 |

3 of 4

29040-0318/LEGAL25880360.3

show_temp.pl

Case3:07-cv-05944-SC   Document1664   Filed05/02/13   Page21 of 21 ...tts.gov.../show_temp.pl?file=9383763-0--...

Case3:07-cv-05944-SC   Document1580   Filed02/22/13   Page7 of 7

**Table of Direct Action Plaintiff Claims**

*In re: Cathode Ray Tube (CRT) Antitrust Litigation*, No. 07-cv-5944, MDL. No. 1917

## Wholesaler Plaintiffs

| Direct Action Plaintiff | Case Number | Federal Claim | State Law Claims | Allegations in Complaint related to *AGC* Standing | Allegations in Complaint related to Due Process |
|---|---|---|---|---|---|
| CompuCom Systems (Filed in N.D. Tex.) | No. 11-cv-6396 | Yes | • California • New York | CompuCom Compl. ¶¶ 82, 85-89, 208-215 | CompuCom Compl. ¶¶ 11, 16, 18, 21, 31, 42, 47, 49, 59, 61-62, 67, 79, 173-76, 178, 187, 237-39, 242, 254, 256-67 |
| Electrograph (Filed in E.D.N.Y) | No. 11-cv-1656 | Yes | • California • New York | Electrograph Compl. ¶¶ 92, 95-99, 222-229 | Electrograph FAC ¶¶ 16-20, 27, 29, 36, 56, 61, 63, 73, 75, 76, 89, 189-92, 200, 251-53, 256, 260, 266, 269, 271-72, 276-280 |
| MARTA (Filed in E.D.N.Y) | No. 12-cv-2648 | Yes | • Arizona • Illinois | P.C. Richard Compl. ¶¶ 86, 89-93, 212-219 | P.C. Richard Compl. ¶¶ 11, 14-15, 19-21, 27, 47, 52, 54, 64, 66, 67, 71, 81, 173, 177-80, 182, 191, 238, 246, 247 |
| Polaroid | No. 11-cv-5381 | Yes | • California • Minnesota | Polaroid Compl. ¶¶ 84, 101, 120, 183-85, 199 | Polaroid Compl. ¶¶ 4, 8, 9, 11, 18, 21, 36, 46, 47, 60, 64, 79, 81, 166, 168, 189-211 |
| Petters | No. 11-cv-5381 | Yes | • California • Minnesota | Polaroid Compl. ¶¶ 84, 101, 120, 183-85, 199 | Polaroid Compl. ¶¶ 4, 8, 9, 11, 18, 21, 36, 46, 47, 60, 64, 79, 81, 166, 168, 189-211 |

4 of 4

29040-0318\LEGAL25680360.3