ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
Roman M. Silberfeld, Bar No. 62783
RMSilberfeld@rkmc.com
David Martinez, Bar No. 193183
DMartinez@rkmc.com
2049 Century Park East, Suite 3400
Los Angeles, CA  90067-3208
Telephone:     310-552-0130
Facsimile:     310-229-5800

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
Elliot S. Kaplan (*Pro Hac Vice*)
ESKaplan@rkmc.com
K. Craig Wildfang (*Pro Hac Vice*)
KCWildfang@rkmc.com
Laura E. Nelson, Bar No. 231856
LENelson@rkmc.com
800 LaSalle Avenue
2800 LaSalle Plaza
Minneapolis, MN 55402
Telephone:     612-349-8500
Facsimile:     612-339-4181

*Attorneys for Plaintiffs*
*BEST BUY CO., INC.; BEST BUY*
*PURCHASING LLC; BEST BUY ENTERPRISE*
*SERVICES, INC.; BEST BUY STORES, L.P.;*
*BESTBUY.COM, L.L.C.; and MAGNOLIA HI-*
*FI, LLC.*

[Additional Counsel Listed on Signature Page]

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| In re: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. 3:07-cv-05944-SC (N.D. Cal.) MDL No. 1917 |
| This Document Relates to: | **DIRECT ACTION PLAINTIFFS' OBJECTIONS TO THE SPECIAL MASTER'S REPORT AND RECOMMENDATIONS REGARDING PHILIPS' AND LG'S MOTION TO DISMISS CERTAIN DIRECT ACTION PLAINTIFFS' COMPLAINTS** |
| *Electrograph Systems, Inc., et al. v. Hitachi, Ltd., et al.*, No. 11-cv-01656 | |
| *Stoebner, et al. v. LG Electronics, et al.*, No. 11-cv-05381 | |
| *Siegel v. Hitachi, Ltd., et al.*, No. 11-cv-05502 | |
| *Best Buy Co., et al. v. Hitachi, Ltd., et al.*, No. 11-cv-05513 | **Date:**<br>**Time:**<br>**Place:** |

| | |
|---|---|
| *Target Corp., et al. v. Chunghwa Picture Tubes, Ltd.*, No. 11-cv-05514 | Case No. 11-cv-01656 SC |
| | Case No. 11-cv-05381 SC |
| *Interbond Corporation of America v. Hitachi, et al.*, No. 11-cv-06275 | Case No. 11-cv-05502 SC |
| | Case No. 11-cv-05513 SC |
| | Case No. 11-cv-05514 SC |
| *Office Depot, Inc. v. Hitachi Ltd., et al.*, No. 11-cv-06276 | Case No. 11-cv-06275 SC |
| | Case No. 11-cv-06276 SC |
| *CompuCom Systems, Inc. v. Hitachi, Ltd., et al.*, No. 11-cv-06396 | Case No. 11-cv-06396 SC |
| | Case No. 11-cv-06397 SC |
| | Case No. 12-cv-02648 SC |
| *Costco Wholesale Corp. v. Hitachi, Ltd., et al.*, No. 11-cv-06397 | Case No. 12-cv-02649 SC |
| *P.C. Richard and Son Long Island Corp., et al. v. Hitachi, Ltd., et al.*, No. 12-cv-02648 | |
| *Schultze Agency Services, LLC, et al. v. Hitachi, Ltd., et al.*, No. 12-cv-02649 | |

2

## <u>TABLE OF CONTENTS</u>

<u>PAGE</u>

I.     INTRODUCTION ........................................................................................................ 1

II.    FACTUAL BACKGROUND ...................................................................................... 2

III.   STANDARD OF REVIEW ......................................................................................... 5

IV.    ARGUMENT ............................................................................................................... 6

     1.    Special Master Legge Erred In Finding Philips and LG Withdrew from
         the Conspiracy ...................................................................................................... 7

     2.    The Special Master Erred By Finding Plaintiffs Did Not Sufficiently
         Allege Fraudulent Concealment ....................................................................... 11

     3.    Plaintiffs' Federal Claims Against Philips and LG Were Tolled as of
         November 26, 2007 ............................................................................................ 14

     4.    Plaintiffs' State Law Claims Against Philips and LG Were Tolled as of
         November 26, 2007 ............................................................................................ 15

CONCLUSION ..................................................................................................................... 17

i

DIRECT ACTION PLAINTIFFS' OBJECTIONS TO THE SPECIAL MASTER'S REPORT AND RECOMMENDATIONS
REGARDING PHILIPS' AND LG'S MOTION TO DISMISS CERTAIN DIRECT ACTION PLAINTIFFS' COMPLAINTS
(3:07-CV-05944SC, MDL 1917)

# TABLE OF AUTHORITIES

**PAGE**

**Cases**

*American Pipe & Construction Co. v. Utah*,
    414 U.S. 538 (1974) ...................................................................... 7, 11, 13, 14, 16

*Arivella v. Lucent Techs., Inc.*,
    623 F. Supp. 2d 164 (D. Mass. 2009) ............................................... 16

*Arpin v. Santa Clara Valley Transp. Agency*,
    261 F.3d 912 (9th Cir. 2001)............................................................ 6

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)......................................................................... 5

*Barker v. Riverside Cnty. Office of Educ.*,
    584 F.3d 821 (9th Cir. 2009)............................................................ 6

*Barneby v. E.F. Hutton & Co.*,
    715 F. Supp. 1512 (M.D. Fla. 1989) ............................................... 16

*Bartlett v. Miller & Schroder Municipals, Inc.*,
    355 N.W.2d 435 (Minn. Ct. App. 1984) ........................................ 16

*Bell Atl. v. Twombly*,
    550 U.S. 544 (2007)...................................................................... 5, 6

*Best Buy Co., Inc. v. Hitachi, Ltd.*,
    No. 11-cv-05513 (N.D. Cal.) [Dkt. 1] (Mar. 10, 2011) ..................... 1

*Braden v. Wal-Mart Stores, Inc.*,
    588 F.3d 585 (8th Cir. 2009)............................................................ 6

*Broam v. Bogan*,
    320 F.3d 1023 (9th Cir. 2003)......................................................... 5

*Butler v. LA Cnty.*,
    617 F. Supp. 2d 994 (C.D. Cal. 2008) ............................................. 6

*Carlson v. Independent School Dist*. No. 623,
    392 N.W.2d 216 (Minn. 1986)....................................................... 16

*CompuCom Systems, Inc. v. Hitachi, Ltd.*,
    No. 11-cv-06396 (N.D. Cal.) [Dkt. No. 1] (Nov. 14, 2011) ............... 1

DIRECT ACTION PLAINTIFFS' OBJECTIONS TO THE SPECIAL MASTER'S REPORT AND RECOMMENDATIONS
REGARDING PHILIPS' AND LG'S MOTION TO DISMISS CERTAIN DIRECT ACTION PLAINTIFFS' COMPLAINTS
(3:07-CV-05944SC, MDL 1917)

*Costco Wholesale Corp.* v. *Hitachi, Ltd.*,
No. 11-cv-06397 (N.D. Cal.) [Dkt. No. 1] (Nov. 14, 2011) ................................... 1

*Douchette v. Bethel Sch. Dist. No. 403*,
818 P.2d 1362 (1991) ................................................................................... 16, 17

*E.W. French & Sons, Inc. v. Gen. Portland Inc.*,
885 F.2d 1392 (9th Cir. 1989) ............................................................................ 13

*Electrograph Systems, Inc.* v. *Hitachi, Ltd.*,
No. 11-cv-01656 (N.D. Cal.) [Dkt. No. 5] (Mar. 10, 2011) .................................... 1

*Erickson v. Pardus*,
551 U.S. 89 (2007) ................................................................................................ 5

*Fortner v. Thomas*,
983 F.2d 1024 (11th Cir.1993) .............................................................................. 8

*Hatfield v. Halifax PLC*,
564 F.3d 1177 (9th Cir. 2009) ............................................................................. 16

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*,
719 P.2d 531 (1986) ............................................................................................ 17

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
738 F. Supp. 2d 1011 (N.D. Cal. 2011) ..................................... 1, 3, 4, 5, 6, 7, 8, 9, 11, 12

*In re Linerboard Antitrust Litig.*,
223 F.R.D. 335 (E.D. Pa. 2004) ..................................................................... 15, 16

*In re Rubber Chems. Antitrust Litig.*,
504 F. Supp. 2d 777 (N.D. Cal. 2007) ............................................................ 11, 13

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
586 F. Supp. 2d 1109 (N.D. Cal. 2008) ..................................................... 8, 11, 12

*Interbond Corp. of Am. v. Hitachi, Ltd.*,
No. 11-cv-06275 (N.D. Cal.) [Dkt. No. 1] (Nov. 14, 2011) .................................... 1

*Jenson v. Allison-Williams Co.*,
1999 U.S. Dist. LEXIS 22170 (S.D. Cal. Aug. 23, 1999) .................................... 16

*Lee v. Grand Rapids Board of Education*,
148 Mich. App. 364, 384 N.W.2d 165 (MI 1986) ............................................... 16

*Lormand v. US Unwired, Inc.*,
565 F. 3d 228 (5th Cir. 2009) ............................................................................... 5

iii

*Morton's Market, Inc. v. Gustafson's Dairy, Inc.*,
   198 F.3d 823 (11th Cir. 1999)................................................................. 10, 13

*Office Depot, Inc. v. Hitachi, Ltd.*,
   No. 11-cv-06276 (N.D. Cal.) [Dkt. 1] (Nov. 14, 2011) ............................... 1

*P.C. Richard & Son Long Island Corp.* v. *Hitachi, Ltd.*,
   No. 12-cv-02648 (N.D. Cal.) [Dkt. No. 1] (Nov. 14, 2011) .......................... 1

*Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp.*, S.A.,
   711 F.2d 989 (11th Cir. 1983)...................................................................... 5

*Rescuecom Corp. v. Google, Inc.*,
   562 F.3d 123 (2d Cir. 2009)......................................................................... 6

*Scheuer v. Rhodes*,
   416 U.S. 232 (1974)..................................................................................... 6

*Schultze Agency Servs., LLC v. Hitachi, Ltd.*,
   No. 12-cv-02649 (N.D. Cal. ) [Dkt. No. 1] (Nov. 14, 2011) ........................ 1

*Seaboard Corp. v. Marsh Inc.*,
   No. 104,294, 2012 WL 3807681 (Kan. Aug. 31, 2012) ............................... 16

*Siegel v. Hitachi, Ltd.*,
   No. 11-cv-05502 (N.D. Cal.) [Dkt. No. 1] (Nov. 14, 2011) .......................... 1

*Stoebner* v. *LG Electronics, Inc.*,
   No. 11-cv-05381 (N.D. Cal.) [Dkt. No. 1] (Nov. 7, 2011) ............................ 1

*Swierkiewicz v. Sorema N.A.*,
   534 U.S. 506  (2002).................................................................................... 6

*Target Corp.* v. *Chunghwa Picture Tubes, Ltd.*,
   No. 11-cv-05514 (N.D. Cal.) [Dkt. No. 9] (Jan. 6, 2012)............................. 1

*Tex. Indus., Inc. v. Radcliff Materials, Inc.*,
   451 U.S. 630 (1981)..................................................................................... 7

*United States v. Lothian*,
   976 F.2d 1257 (9th Cir. 1992)............................................................. 8, 9, 10

*United States v. Philip Morris Inc.*,
   116 F. Supp. 2d 131 (D.D.C. 2000) ............................................................ 8

*William O. Gilley Enters., Inc. v. Atl. Richfield Co.*,
   561 F.3d 1004 (9th Cir. 2009)..................................................................... 5

iv

*Williams v. Dow Chem. Co.*,
    No. 01-cv-4307, 2004 WL 1348932 (S.D.N.Y. June 16, 2004) ........................................ 16

**Other Authorities**

N.Y. Gen. Bus. L. § 342-c ........................................................................................................ 16

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ............................................................................. 5, 6

Federal Rule of Civil Procedure 8 ......................................................................................... 5, 12

Federal Rule of Civil Procedure 8(a)(2) ................................................................................ 5

Federal Rule of Civil Procedure 9 ......................................................................................... 12

# I.  INTRODUCTION

The Special Master's Report and Recommendation ("the R&R") recommending dismissal of Direct Action Plaintiffs' ("Plaintiffs")[1] claims against Koninklijke Philips Electronics N.V. ("KPE") and Philips Electronics North America Corporation ("PENAC") (collectively, "Philips"), and LG Electronics, Inc. ("LGEI") and LG Electronics USA, Inc. ("LGE USA") (collectively, "LG"), ignores clear tolling doctrines that extend Plaintiffs' claims beyond November 2007 and refuses to apply this Court's prior rulings rejecting the same arguments raised by these defendants regarding withdrawal and fraudulent concealment in the class cases. *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, 738 F. Supp. 2d 1011, 1024 (N.D. Cal. 2011), Dkt. No. 665 (The issue of withdrawal "raises factual questions inappropriate for resolution at the motion-to-dismiss stage. . . . It would have been inappropriate for the Special Master to grant the motions to dismiss filed by the Philips Defendants, the Toshiba Defendants, the Hitachi Defendants, the LG Electronics Defendants, and BMCC, on these grounds."); *id.* at 1024 (holding class plaintiffs' fraudulent concealment allegations were sufficient to withstand motion to dismiss.  The Special Master's recommendation that Philips' and LG's Motion be granted is an unwarranted departure from this Court's reasoned analysis in considering previous motions to dismiss.  This Court should deny Philips' and LG's Motion because: 1) whether or when Philips

---

[1] Philips' and LG's Motion seeks dismissal of Philips and LG in the following Complaints: *Stoebner* v. *LG Electronics, Inc.,* No. 11-cv-05381 (N.D. Cal.) [Dkt. No. 1] (Nov. 7, 2011) ("Polaroid Compl."); *Target Corp.* v. *Chunghwa Picture Tubes, Ltd.,* No. 11-cv-05514 (N.D. Cal.) [Dkt. No. 9] (Jan. 6, 2012) ("Target Am. Compl."); *P.C. Richard & Son Long Island Corp.* v. *Hitachi, Ltd.,* No. 12-cv-02648 (N.D. Cal.) [Dkt. No. 1] (Nov. 14, 2011) ("P.C. Richard Compl."); *Schultze Agency Servs., LLC v. Hitachi, Ltd.,* No. 12-cv-02649 (N.D. Cal. ) [Dkt. No. 1] (Nov. 14, 2011) ("Tweeter Compl."); *CompuCom Systems, Inc. v. Hitachi, Ltd.,* No. 11-cv-06396 (N.D. Cal.) [Dkt. No. 1] (Nov. 14, 2011) ("CompuCom Compl."); *Interbond Corp. of Am. v. Hitachi, Ltd.,* No. 11-cv-06275 (N.D. Cal.) [Dkt. No. 1] (Nov. 14, 2011) ("Interbond Compl."); *Costco Wholesale Corp.* v. *Hitachi, Ltd.,* No. 11-cv-06397 (N.D. Cal.) [Dkt. No. 1] (Nov. 14, 2011) ("Costco Compl."); *Siegel v. Hitachi, Ltd.,* No. 11-cv-05502 (N.D. Cal.) [Dkt. No. 1] (Nov. 14, 2011) ("Circuit City Compl."); *Office Depot, Inc. v. Hitachi, Ltd.,* No. 11-cv-06276 (N.D. Cal.) [Dkt. No. 1] (Nov. 14, 2011) ("Office Depot Compl."); *Best Buy Co., Inc. v. Hitachi, Ltd.*, No. 11-cv-05513 (N.D. Cal.) [Dkt. 1]; and *Electrograph Systems, Inc. v. Hitachi, Ltd.,* No. 11-cv-01656 (N.D. Cal.) [Dkt. No. 5] (Mar. 10, 2011) ("Electrograph Am. Compl.").

1  and LG withdrew from the conspiracy involves factual disputes inappropriate for resolution at

2  this stage of the litigation; 2) Plaintiffs have sufficiently alleged that Philips and LG fraudulently

3  concealed their participation in the illegal price-fixing conspiracy; and 3) tolling doctrines extend

4  Plaintiffs' federal and state claims well before November 2007.

## II.  FACTUAL BACKGROUND

6  Philips and LG do not dispute that Plaintiffs' factual allegations plausibly suggest they

7  participated in a conspiracy to fix prices and production of CRTs in violation of federal and state

8  antitrust laws, and various state consumer protection laws.  Instead, Philips and LG argue that

9  Plaintiffs' factual allegations affirmatively demonstrate that Philips and LG withdrew from that

10  conspiracy more than four years before Plaintiffs filed their complaints, and are therefore barred

11  by the various statutes of limitations from pursuing claims against Philips and LG.

12  At the center of the parties' dispute is whether any of the following three events

13  effectuated withdrawal from the conspiracy by Philips and LG: (1) Philips' and LG's creation of a

14  joint venture, LG.Philips Displays ("LPD"), in which each continued to own a 50% interest

15  through at least March 2007; (2) LPD's bankruptcy in 2006; and (3) LPD's entry into

16  receivership in March 2007.

17  Plaintiffs' allegations regarding these key events are as follows:

- "In 2001, LGEI transferred its CRT business to a 50/50 joint venture with [KPE] called LG.Philips Displays ("LGPD").  On April 1, 2007, LGPD became an independent company and changed its name to LP Displays International Ltd."  Best Buy Compl. ¶ 36.

- "In 2001, Royal Philips transferred its CRT business to a 50/50 joint venture with Defendant LGEI, forming Defendant LGPD (n/k/a LP Displays)."  *Id.* ¶ 46.

- "LP Displays is the successor entity to LGPD, which was created in 2001 as a 50/50 joint venture between Defendants LGEI and Royal Philips. In March 2007, LP Displays became an independent company. LP Displays is a leading supplier of CRTs for use in television sets and computer monitors with annual sales for 2006 of over $2 billion and a market share of 27%. LP Displays announced in March 2007 that Royal Philips and LGEI would cede control over the company and the shares would be owned by financial institutions and private equity firms."  *Id.* ¶ 40.

27

28

2

- "Between at least 1995 and 2001, Defendant LG Electronics, through LGEI and LGETT, participated in at least 100 glass meetings at all levels. After 2001, LG Electronics participated in the CRT conspiracy through its joint venture with Philips, LGPD (n/k/a LP Displays). A substantial number of these meetings were attended by the highest ranking executives from LG Electronics. LG Electronics also engaged in bilateral discussions with each of the other Defendants on a regular basis. Through these discussions, LG agreed on prices and supply levels for CRTs. LG Electronics never effectively withdrew from this conspiracy." *Id.* ¶ 143.

- "Between at least 2001 and 2006, Defendant LP Displays (f/k/a LGPD) participated in at least 100 glass meetings at all levels. A substantial number of these meetings were attended by the highest ranking executives from LP Displays. Certain of these high level executives from LP Displays had previously attended meetings on behalf of Defendants LG Electronics and Philips. LP Displays also engaged in bilateral discussions with other Defendants. Through these discussions, LP Displays agreed on prices and supply levels for CRTs." *Id.* ¶ 145.

- "Between at least 1996 and 2001, Defendant Philips, through Royal Philips and Philips Taiwan, participated in at least 100 glass meetings at all levels. After 2001, Philips participated in the CRT conspiracy through its joint venture with LG Electronics, LGPD (n/k/a LP Displays). A substantial number of these meetings were attended by high level executives from Philips. Philips also engaged in numerous bilateral discussions with other Defendants. Through these discussions, Philips agreed on prices and supply levels for CRTs. Philips never effectively withdrew from this conspiracy." *Id.* ¶ 150.

These facts do not establish withdrawal by Philips or LG as a matter of law.  In fact, Plaintiffs affirmatively alleged that Philips and LG never effectively withdrew from the conspiracy. *Id.* ¶¶ 143, 150.  In light of Plaintiffs' detailed allegations regarding Philips' and LG's continued ownership in LPD, and as this Court already held, there are clear factual questions regarding any purported withdrawal by Philips or LG that would be inappropriate to resolve on a motion to dismiss. *See In re CRT*, 738 F. Supp. 2d at 1025 ("[H]ow can the Court know at this [motion-to-dismiss] stage of the proceedings whether the withdrawing Defendants maintained financial interests in the entities being sold or transferred?").

Regardless of whether or when Philips and LG withdrew from the conspiracy, however, Plaintiffs sufficiently alleged the Defendants, specifically including Philips and LG, fraudulently concealed the conspiracy, thus tolling Plaintiffs' claims.  Plaintiffs set forth approximately thirteen separate paragraphs detailing Defendants' fraudulent concealment.  These allegations,

which are similar to class allegations this Court previously held were sufficient to withstand dismissal under Rule 12(b)(6), *see In re CRT*, 738 F. Supp. 2d at 1024, include:

- "Defendants engaged in a secret conspiracy that did not give rise to facts that would put Plaintiffs on inquiry notice that there was a conspiracy to fix the prices of CRTs." *Id.* ¶ 223.

- "Defendants organized glass meetings to avoid detection, conducted bilateral meetings in secret and agreed at glass meetings to orchestrate the giving of pretextual reasons for their pricing actions and output restrictions. Defendants would coordinate and exchange in advance the texts of the proposed communications with customers containing these pretextual statements and would coordinate which co-conspirator would first communicate these pretextual statements to customers." *Id.* ¶ 225.

- "The contract, conspiracy or combination as herein alleged was fraudulently concealed by Defendants by various means and methods, including, but not limited to, secret meetings, surreptitious communications between Defendants by the use of the telephone or in-person meetings in order to prevent the existence of written records, discussion on how to evade antitrust laws and concealing the existence and nature of their competitor pricing discussions from non-conspirators (including customers)." *Id.* ¶ 227.

- "As alleged above, Defendants in mid-2000 began to hold CDT and CPT meetings at separate venues in order to avoid detection. Participants at glass meetings were also told not to take minutes. Attending companies also reduced the number of their respective attendees to maintain secrecy. Defendants agreed not to publicly discuss the existence of the nature of their agreement. During these meetings, top executives and other officials attending these meetings were instructed on more than once occasion not to disclose the fact of these meetings to outsiders, or even to other employees of Defendants not involved in CRT pricing or production. In fact, the top executives who attended conspiracy meetings agreed to stagger their arrivals and departures at such meetings to avoid being seen in public with each other and with the express purpose and effect of keeping them secret." *Id.* ¶ 228.

- "Defendants also agreed at glass meetings and bilateral meetings to give pretextual reasons for price increases and output reductions to their customers." *Id.* ¶ 229.

- "In addition, when several CRT manufacturers, including Defendant Philips and LG Electronics and Co-Conspirator Samsung, increased the price of CRTs in 2004, the price hike was blamed on a shortage of glass shells use for manufacturing CRT monitors. In justifying this price increase, a Deputy General Manager for an LG Electronics distributor in India stated, '[t]his shortage [of glass shells] is a global phenomena and every company has to increase the prices of CRT monitors in due course of time.'" *Id.* ¶ 232.

- "Manufacturers such as LG Electronics periodically issued press statements falsely asserting that CRT prices were being driven lower by intense

1    competition." *Id.* ¶ 233.

2                        **III.  STANDARD OF REVIEW**

3        Orders by the Special Master on motions to dismiss necessarily involve only issues of law

4    and are subject to *de novo* review by thus Court.  *See In re CRT*, 738 F. Supp. 2d at 1016.  To

5    survive a motion to dismiss, Plaintiffs are only required to plead facts that plausibly suggest the

6    existence of a conspiracy.  *Bell Atl. v. Twombly*, 550 U.S. 544, 556 (2007).  "'Specific facts are

7    not necessary; the statement need only give the defendant[s] fair notice of what . . . the claim is

8    and the grounds upon which it rests.'"  *In re CRT*, 738 F. Supp. 2d at 1017 (quoting *Erickson v.*

9    *Pardus*, 551 U.S. 89, 93 (2007) (internal quotation marks omitted)).  Indeed, motions to dismiss

10   for failure to state a claim "rarely" will be granted "in an antitrust suit where the proof and details

11   of the alleged conspiracy are largely in the hands of the co-conspirators."  *Quality Foods de*

12   *Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp.*, S.A., 711 F.2d 989, 995-96 (11th Cir.

13   1983).  Courts view Rule 12(b)(6) motions with "disfavor" because of the lesser role pleadings

14   play in federal practice and the liberal policy regarding amendment.  *See, e.g.*, *Broam v. Bogan*,

15   320 F.3d 1023, 1028 (9th Cir. 2003) (Rule 12(b)(6) dismissal with prejudice proper only in

16   "extraordinary" cases); *Lormand v. US Unwired, Inc.*, 565 F. 3d 228, 232 (5th Cir. 2009) (Rule

17   12(b)(6) motions are "viewed with disfavor [and] rarely granted").

18       Thus, "[t]o successfully state a claim under §1 of the Sherman Act, a plaintiff need only

19   meet the notice pleading standard articulated in Fed. R. Civ. P. 8(a)(2).  Rule 8(a)(2) requires "'a

20   short and plain statement of the claim showing that the pleader is entitled to relief,' in order to

21   'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"

22   *William O. Gilley Enters., Inc. v. Atl. Richfield Co.*, 561 F.3d 1004, 1009 (9th Cir. 2009) (quoting

23   *Twombly*, 550 U.S. at 555).  Rule 8 does not require detailed factual allegations.  *Ashcroft v.*

24   *Iqbal*, 556 U.S. 662, 667-78 (2009).  Under *Twombly*'s construction of Rule 8, a plaintiff merely

25   has to "nudge[] [its] claims . . . 'across the line from conceivable to plausible.'"  550 U.S. at 570.

26

27

28   DIRECT ACTION PLAINTIFFS' OBJECTIONS TO THE SPECIAL MASTER'S REPORT AND RECOMMENDATIONS
     REGARDING PHILIPS' AND LG'S MOTION TO DISMISS CERTAIN DIRECT ACTION PLAINTIFFS' COMPLAINTS
     (3:07-CV-05944SC, MDL 1917)

1    Subject to the requirement that the complaint show a "plausible" claim for relief, the court

2    must accept as true all material factual allegations in the complaint, draw inferences from those

3    allegations in the light most favorable to plaintiff, and construe the complaint liberally.  *See*

4    *Barker v. Riverside Cnty. Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009); *Braden v. Wal-Mart*

5    *Stores, Inc.*, 588 F.3d 585, 595 (8th Cir. 2009); *Rescuecom Corp. v. Google, Inc.*, 562 F.3d 123,

6    127 (2d Cir. 2009).

7    Moreover, the defects of a complaint must appear on its face; courts cannot consider

8    material outside the complaint such as facts presented in briefs, affidavits, or discovery materials.

9    *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001); *Butler v. LA*

10   *Cnty.*, 617 F. Supp. 2d 994, 999 (C.D. Cal. 2008).  "'Rule 12(b)(6) does not countenance . . .

11   dismissals based on a judge's disbelief of a complaint's factual allegations' . . . .  [A] well-

12   pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is

13   improbable, and 'that a recovery is very remote and unlikely.'"  *Twombly*, 550 U.S. at 556

14   (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 n.1 (2002) and *Scheuer v. Rhodes*, 416

15   U.S. 232, 236 (1974)).

16                                    **IV. ARGUMENT**

17   Special Master Legge's R&R recommends complete dismissal (without leave to amend)

18   of Plaintiffs' claims against Philips and LG.  This recommendation contradicts this Court's

19   previous rulings and contains key, reversible errors.

20   First, the R&R incorrectly concludes that Plaintiffs' allegations affirmatively demonstrate

21   that Philips and LG withdrew from the conspiracy in either January 2006 or March 2007.  R&R at

22   15.  Not only is this finding wrong, to quote this Court, it necessarily decides factual questions

23   "inappropriate for resolution at the motion-to-dismiss stage," and directly contradicts the Court's

24   prior rejection of a nearly identical argument raised by Philips and LG: "It would have been

25   inappropriate for the Special Master to grant the motions to dismiss filed by the. . . [Defendants]

26   on [withdrawal] grounds."  *In re CRT*, 738 F. Supp. 2d at 1025.

27

28

Second, as a matter of law, the R&R does not give appropriate weight to Plaintiffs' fraudulent concealment allegations, which this Court previously held were sufficient to toll the class complaints.  *See id.* at 1024-25.  Because Plaintiffs have adequately alleged fraudulent concealment by all Defendants, including Philips and LG, Plaintiffs are entitled to pursue price-fixing claims against them for conduct that occurred before November 2003, regardless of any purported withdrawal by Philips and LG.

Third, the R&R is internally inconsistent and fails to provide Plaintiffs with the benefit of tolling set forth by the *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974), and cross-jurisdiction tolling doctrines.  Plaintiffs filed their opt-out claims around November 14, 2011.  Although the Sherman Act imposes a four-year statute of limitations, Plaintiffs' Sherman Act claims get the benefit of tolling pursuant to *American Pipe* based on the November 26, 2007 filing of the first direct purchaser plaintiff class action complaint.  Separately, Plaintiffs' state law claims get the benefit of cross-jurisdictional tolling based on the November 26, 2007 filing of the first direct purchaser plaintiff class action complaint.  Thus, even without the benefit of additional tolling from fraudulent concealment, Plaintiffs are entitled to seek damages based on Philips' and LG's price-fixing activities that occurred on or after November 26, 2003, four years before the first direct purchaser plaintiffs filed their complaint.

The sum result of these errors is an R&R that is not supported by law or fact.  Consistent with its previous orders on withdrawal and fraudulent concealment, *In re CRT*, 738 F. Supp. 2d at 1024-25, this Court should reject the R&R and deny Philips' and LG's Motion to Dismiss.

### 1. Special Master Legge Erred In Finding Philips and LG Withdrew from the Conspiracy

It is axiomatic that once a defendant joins a conspiracy, it is jointly and severally liable for any actions taken in furtherance of the conspiracy.  *See Tex. Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 646 (1981) ("[J]oint and several liability simply ensures that the plaintiffs will be able to recover the full amount of damages from some, if not all, participants.").  "To withdraw

from a conspiracy, a defendant must either disavow the unlawful goal of the conspiracy, affirmatively act to defeat the purpose of the conspiracy, or take definite, decisive, and positive steps to show that the defendants' disassociation from the conspiracy is sufficient." *United States v. Lothian*, 976 F.2d 1257, 1261 (9th Cir. 1992) (citation and internal quotation marks omitted). "Because withdrawal is an affirmative defense, the affirmative acts [constituting withdrawal] must 'clearly appear on the face of the complaint.'" *United States v. Philip Morris Inc.*, 116 F. Supp. 2d 131, 154 (D.D.C. 2000) (quoting *Fortner v. Thomas*, 983 F.2d 1024, 1028 (11th Cir.1993) (denying motion to dismiss based on withdrawal)); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-cv-1827, 2012 WL 5426066, at *1 (holding plaintiffs had raised a triable issue concerning LG Electronics' involvement in conspiracy to fix prices of LCD panels, despite evidence that it had stopped manufacturing LCD panels in 1998, based on evidence and allegations that it continued participating in the conspiracy after 1998 through its joint venture with Philips, LG Displays, which continued manufacturing LCD).

This Court has already ruled on Philips' and LG's recycled arguments of withdrawal and has specifically rejected them:

> With regard to those Defendants who moved to dismiss based on claims ***that they withdrew from the alleged conspiracy in 2001 or 2002***, the Court agrees with the Special Master that this issue raises factual questions inappropriate for resolution at the motion-to-dismiss stage. *See* Report at 25. For example, how can the Court know at this stage of the proceedings whether the withdrawing Defendants maintained financial interests in the entities being sold or transferred? ***It would have been inappropriate for the Special Master to grant the motions to dismiss filed by the Philips Defendants, the Toshiba Defendants, the Hitachi Defendants, the LG Electronics Defendants, and BMCC, on these grounds.***

*In re CRT*, 738 F. Supp. 2d at 1025 (emphasis added). The Court's holding and reasoning applies with equal force to the facts presented here and dictates the same result: Plaintiffs' claims against Philips and LG must be allowed to proceed.

The Special Master acknowledged this Court's prior decision regarding withdrawal, but attempted to distinguish that decision by noting that it was made at a time when the alleged

DIRECT ACTION PLAINTIFFS' OBJECTIONS TO THE SPECIAL MASTER'S REPORT AND RECOMMENDATIONS
REGARDING PHILIPS' AND LG'S MOTION TO DISMISS CERTAIN DIRECT ACTION PLAINTIFFS' COMPLAINTS
(3:07-CV-05944SC, MDL 1917)

conspiracy included both CRTs and finished products.  The breadth of the conspiracy at issue is a distinction without a difference.  The Court's reasoning regarding withdrawal applies equally here: there are factual questions relevant to whether and when Philips and LG withdrew, including whether they maintained financial interests in LPD (a company that continued to manufacture CRTs until 2007).  Whether or not the alleged conspiracy extended to finished products does not alter the conclusion that there are plausible factual issues regarding withdrawal inappropriate for a motion to dismiss.

Philips and LG argue that they withdrew from the conspiracy as early as 2001 when they transferred their respective CRT divisions to LPD.  In the alternative, they argue they withdrew from the conspiracy in either January 2006 when LPD declared bankruptcy or in March 2007 when LPD went into receivership after its bankruptcy.  This Court has already held that whether the 2001 creation of LPD constitutes withdrawal is a question inappropriate for resolution on a motion to dismiss.  Numerous allegations call into question any withdrawal by Philips and LG based on the creation of LPD:  1) Philips and LG were 50/50 owners in LPD, meaning that Philips and LG continued to enjoy the financial earnings gained by LPD's participation in the conspiracy, *see, e.g.*, Best Buy Compl. ¶¶ 46, 98, 100, 141, 145, 150; 2) the companies seamlessly continued to participate in the conspiracy through LPD, as evidenced by the fact that the same employees that attended conspiracy meetings on behalf of Philips and LG continued to attend the meetings on behalf of LPD, *see, e.g.*, Best Buy Compl. ¶¶ 145-150; and 3) Philips and LG continued to maintain the secrecy of the conspiracy, *see, e.g.*, Best Buy Compl. ¶¶ 223-235.  Philips' and LG's continued financial interest in LPD alone requires denial of Philips' and LG's motion based on withdrawal in 2001.  *In re CRT*, 738 F. Supp. 2d at 1025.

The R&R also contravenes established Ninth Circuit law which holds that there is no withdrawal when a defendant continues to benefit financially from the conspiracy.  *See, e.g.*, *Lothian*, 976 F.2d at 1264 (holding defendant's resignation from his employment was sufficient withdrawal because defendant ***did not have*** continued contact with his former employer and ***did***

1   *not* gain a financial benefit from that employer); *see also Morton's Market, Inc. v. Gustafson's*

2   *Dairy, Inc.*, 198 F.3d 823, 839 (11th Cir. 1999) ("In the context of a business conspiracy, one in

3   which the conspiracy is carried out through the regular activities of an otherwise legitimate

4   business enterprise, the law has given effect to a conspirator's abandonment of the conspiracy

5   only where the conspirator can demonstrate that he retired from the business, **severed all ties to**

6   **the business**, and **deprived the remaining conspirator group of the services which he**

7   **provided** to the conspiracy." (emphasis added)).

8       Here, unlike in *Lothian*, Philips and LG continued to have contact with the conspirators

9   through the new conspiring entity—LPD—which they themselves created after they divested

10   their CRT operations.  Moreover, they continued to reap the financial benefits of the illegal

11   conspiracy through their ownership stake in LPD.  This relationship continued at least until

12   January 2006 when LPD declared bankruptcy, and Plaintiffs allege it continued until March 2007

13   when LPD went into receivership.  *See, e.g.*, R&R at 15, Best Buy Compl. ¶ 40.  Under *Lothian*,

14   the 2001 creation of LPD does not constitute withdrawal by Philips and LG.

15       Philips' argument that the bankruptcy of LPD in January 2006 and the sale of LPD in

16   March 2007 constitute a permanent severance of its participation in the CRT price-fixing

17   conspiracy is based on mere conjecture and is refuted by the Plaintiffs' allegations that Philips

18   and LG never effectively withdrew from the conspiracy, *see, e.g.*, Best Buy Compl. ¶¶ 94, 96,

19   100, 113.  In fact, Plaintiffs' complaints allege that LPD continued to participate in conspiracy

20   meetings after it announced its bankruptcy in January 2006.  *See, e.g.*, Best Buy Compl. ¶ 145

21   ("Between at least 2001 and 2006, Defendant LP Displays (f/k/a LGPD) participated in at least

22   100 glass meetings at all levels.").  A declaration of bankruptcy is not equivalent to a cessation of

23   business operations: Plaintiffs allege that LPD continued in the display business up until its

24   receivership, and that it continued participating in the conspiracy the entire time.  Accordingly,

25   the fact of LPD's bankruptcy is irrelevant to whether LPD continued to participate in the

26

27

28

DIRECT ACTION PLAINTIFFS' OBJECTIONS TO THE SPECIAL MASTER'S REPORT AND RECOMMENDATIONS
REGARDING PHILIPS' AND LG'S MOTION TO DISMISS CERTAIN DIRECT ACTION PLAINTIFFS' COMPLAINTS
(3:07-CV-05944SC, MDL 1917)

conspiracy.  At a minimum, the Special Master erred in refusing the grant Plaintiffs leave to amend to allege specific facts demonstrating conspiracy participation by LPD after January 2006.

Importantly, and as explained further below, Plaintiffs' allegations of fraudulent concealment and *American Pipe* tolling mean that the claims against Philips and LG should survive regardless of whether Philips and LG withdrew in either January 2006 or March 2007. Therefore, it is unnecessary—and inappropriate—to make the factually intensive determination regarding the specific date of Philips' and LG's withdrawal on this motion to dismiss.

### 2. The Special Master Erred By Finding Plaintiffs Did Not Sufficiently Allege Fraudulent Concealment

In recommending dismissal of Philips' and LG's claims, the Special Master erroneously concluded that Plaintiffs had not sufficiently alleged fraudulent concealment.  Although the basis of the Special Master's conclusion is unclear, he apparently concluded: 1) Plaintiffs' allegations should have been more detailed than allegations set forth by the class plaintiffs; and 2) Philips and LG could not, as a matter of law, continue to conceal the conspiracy after they withdrew from the conspiracy.  Both conclusions are incorrect as a matter of law.

This Court has already held that facts nearly identical to those alleged by Plaintiffs were sufficient to survive a motion to dismiss on fraudulent concealment grounds.  *In re CRT*, 738 F. Supp. 2d at 1024 (denying Defendants' motion to dismiss the classes' fraudulent concealment allegations); *accord In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1119-20 (N.D. Cal. 2008) (concluding "it would be inappropriate to dismiss any claims as time-barred at this stage of the litigation").  As this Court held, "it is generally inappropriate to resolve the fact-intensive allegations of fraudulent concealment at the motion to dismiss stage, particularly when the proof relating to the extent of the fraudulent concealment is alleged to be largely in the hands of the alleged conspirators."[2]  *In re CRT*, 738 F. Supp. 2d at 1024 (quoting *In re Rubber Chems.*

---

[2] For the same reasons that this Court's prior Order controls Philips' and LG's motion as it relates to withdrawal, this Court's prior determination that fraudulent concealment was sufficiently alleged also controls, regardless of the scope of the alleged conspiracy.  This Court's prior determination regarding fraudulent concealment did not distinguish between allegations related to

1    *Antitrust Litig.*, 504 F. Supp. 2d 777, 789 (N.D. Cal. 2007)); *In re TFT-LCD*, 586 F. Supp. 2d at

2    1120 (same).   Just as the allegations at issue were sufficient to state a claim for fraudulent

3    concealment in the class complaints, *see id.*, they are sufficient to state a claim for fraudulent

4    concealment in the Plaintiffs' complaints.

5           By recommending that this Court dismiss Plaintiffs' claims, Special Master Legge

6    ostensibly created a moving target for pleading requirements set forth by Federal Rules of Civil

7    Procedure 8 and 9 for plaintiffs that opt out of a class after discovery has started.   Indeed, the

8    Special Master criticized Plaintiffs for making fraudulent concealment allegations similar to those

9    asserted by the class plaintiffs.   *See* R&R at 15 ("[T]he fraudulent concealment allegations now

10   made in these 2011 complaints are essentially the same as those made in the 2007 class

11   complaints, with little more specificity after four years of pleadings, motions and discovery.").

12   Federal Rule of Civil Procedure 8 and 9 do not—and cannot—have different meanings for

13   complaints filed by class plaintiffs and those filed by later opt-out plaintiffs.   The text of Rules 8

14   and 9 do not contemplate such a distinction.   *See* Fed. R. Civ. P. 8, 9.   Similarly, Judge Illston in

15   the Northern District of California reviewed the sufficiency of fraudulent concealment allegations

16   made by an opt-out plaintiff many years into discovery, and did not require heightened pleading

17   by later-arriving plaintiffs.   *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI,

18   2012 WL 506327, at * 2 (N.D. Cal. Feb. 15, 2012).   The court, when confronted with the

19   identical scenario as presented here, specifically denied the defendants' motion to dismiss the opt-

20   out plaintiffs' complaint because the fraudulent concealment allegations were substantially

21   similar to allegations the court already deemed sufficient to survive a motion to dismiss.   *Id.*

22   ("Because Sony's allegations of fraudulent concealment are substantially similar to those this

23   Court has already deemed sufficient to survive the pleading stage, dismissal is not warranted.").

24   Even if Plaintiffs were subject to heightened pleading requirements—which they are not—it

25
     finished products and CRTs.  Instead, it concluded that the fraudulent concealment allegations as
26   a whole were sufficient to deny the motion to dismiss based on statute of limitations.  *In re CRT*,
     738 F. Supp. 2d at 1025.

27
28   DIRECT ACTION PLAINTIFFS' OBJECTIONS TO THE SPECIAL MASTER'S REPORT AND RECOMMENDATIONS
     REGARDING PHILIPS' AND LG'S MOTION TO DISMISS CERTAIN DIRECT ACTION PLAINTIFFS' COMPLAINTS
     (3:07-CV-05944SC, MDL 1917)

1   would be proper to permit them to amend their pleadings rather than dismissing without leave to

2   amend.

3          Philips and LG further argue, and the Special Master seemed to accept, that fraudulent

4   concealment could not apply to them because they had purportedly withdrawn from the

5   conspiracy.  This very argument was rejected in *In re Rubber Chemicals*, 504 F. Supp. 2d at 790.

6   "Even if [defendant] could establish at the motion to dismiss stage that he withdrew from the

7   conspiracy at the end of 2001—a question that the Court does not reach—Plaintiffs' allegations

8   of fraudulent concealment would prevent the statute of limitations as to Eisenberg's conduct from

9   beginning to run until October 2002."  *Id* (citing *Morton's Market, Inc.*, 211 F.3d at 1224 (in

10  action filed more than four years after withdrawal, defendant "would be liable for any price-fixing

11  activity prior to its withdrawal" if statute of limitations was equitably tolled by fraudulent

12  concealment)).  Accordingly, even if Philips and LG could establish at this motion-to-dismiss

13  stage that they withdrew from the conspiracy at the end of 2001, Plaintiffs' allegations of

14  fraudulent concealment prevent the statute of limitations as to Philips' and LG's conduct from

15  beginning to run until November 2007 when the conspiracy became public.[3]  *Id.*

16         The Special Master also appears to have accepted the argument that Philips and LG could

17  not have engaged in any concealment after LPD's bankruptcy.  There are two significant errors in

18  this conclusion.  First, the fact LPD declared bankruptcy does not preclude acts by Philips and LG

19  to continue hiding their past wrongdoing.  Indeed, Plaintiffs' complaints specifically allege that

20  Philips and LG provided false justifications for monitor price hikes that were actually the result of

21  the defendants' illegal price-fixing activities.  *See, e.g.*, Best Buy Compl. ¶¶ 232-233.

22         Second, while establishing fraudulent concealment requires proof of acts of concealment,

23  *E.W. French & Sons, Inc. v. Gen. Portland Inc.*, 885 F.2d 1392, 1399 (9th Cir. 1989), no case

24  requires a defendant to continue engaging in affirmative acts of active concealment until the time

25

26  ─────────────────
    [3] Plaintiffs' claims were still tolled after the conspiracy became public, however, pursuant to
    *American Pipe* tolling.

27                                             13

of discovery.  Indeed, such a requirement would be wholly illogical—once misconduct has been hidden (such as by instructing attendees not to take minutes, *see, e.g.*, Best Buy Compl. at ¶ 228 or providing false explanations for the increasing prices, *see, e.g.*, Best Buy Compl. at ¶¶ 225, 227, 229, 231-236), the concealment is complete and logically continues without further acts of concealment until discovery occurs.  LG and Phillips have not cited any authority for their assertion that the tolling created by fraudulent concealment automatically ends—even if the matters remain concealed—simply because a defendant does not continue to make new efforts at concealment.  Thus, even if one assumed (which one should not do on this motion), that LPD's bankruptcy made it impossible for LG or Philips to engage in any continuing acts of concealment, that finding would not prevent tolling of the statute so long as the pre-bankruptcy acts of fraudulent concealment were sufficient to create tolling.

### 3.  Plaintiffs' Federal Claims Against Philips and LG Were Tolled as of November 26, 2007

There is no real dispute that *American Pipe* serves to toll Plaintiffs' federal claims as of November 26, 2007, the date the first direct purchaser plaintiff class complaint was filed.  Even without the benefit of fraudulent concealment, which Plaintiffs have sufficiently alleged and should receive the benefit of at the motion-to-dismiss stage, Plaintiffs' federal claims extend to November 26, 2003—four years prior to the date of the first direct purchaser plaintiff class complaint.

Despite the Special Master's recognition that Plaintiffs should be "given the benefit of tolling based upon the filing of the first direct purchaser plaintiff class action on November 26, 2007," which would extend Plaintiffs' four-year statute of limitation under the Sherman Act to November 26, 2003, R&R at 14, his later analysis and conclusion did not give Plaintiffs that benefit.  Instead, after erroneously concluding that Plaintiffs' factual allegations establish that Philips and LG withdrew from the conspiracy in either January 2006 or March 2007, the Special Master concluded that the date of withdrawal was outside the statute of limitations period, which

purportedly ended on November 14, 2007.  *See* R&R at 15 ("That pleading and timing indicate that Philips' last participation in the CRT industry, including its stock ownership in LPD, ended in March 2007.  That was well before the statute of limitations, even if Plaintiffs are given credit for the tolling resulting from the filing of the first direct purchaser plaintiff class complaint.").

The Special Master apparently made a mathematical miscalculation or a typographical error in concluding that March 2007 "was well before the statute of limitations," even with the benefit of class tolling.  As the Special Master previously recognized, applying class tolling should have extended Plaintiffs' claims back to November 2003.  Therefore, even if this Court agrees with the Special Master's erroneous conclusion that Plaintiffs' allegations establish that Philips and LG withdrew from the conspiracy in either January 2006 or March 2007—and it should not, as explained above—Plaintiffs still have viable federal claims against Philips and LG for their illegal price-fixing conduct through at least November 26, 2003.

### 4.  Plaintiffs' State Law Claims Against Philips and LG Were Tolled as of November 26, 2007

Plaintiffs' state law claims were also tolled by the filing of the direct purchaser plaintiffs' class complaint, pursuant to cross-jurisdictional tolling.  Where, as here, equity and state law support applying cross-jurisdictional tolling, filing a complaint for a federal claim tolls the subsequent individual state causes of action.  *See In re Linerboard Antitrust Litig.*, 223 F.R.D. 335 (E.D. Pa. 2004).  In *Linerboard,* the district court applied cross-jurisdictional tolling because: (1) there is a federal interest in applying cross-jurisdictional tolling "[i]n the antitrust context, [because] declining to adopt cross-jurisdictional class action tolling will invite the filing of numerous protective, duplicative and in many cases, unnecessary, suits by class members that want to consider filing claims under state antitrust law not included in a federal class action complaint," *id.* at 345; (2) the states in question were likely to adopt cross-jurisdictional class action tolling in antitrust class actions filed in federal court, *id.*; (3) the plaintiffs' state law claims were substantially similar to those asserted in the class action; and (4) tolling would not prejudice

DIRECT ACTION PLAINTIFFS' OBJECTIONS TO THE SPECIAL MASTER'S REPORT AND RECOMMENDATIONS
REGARDING PHILIPS' AND LG'S MOTION TO DISMISS CERTAIN DIRECT ACTION PLAINTIFFS' COMPLAINTS
(3:07-CV-05944SC, MDL 1917)

1    Defendants because they "were put on notice of the factual predicate for all of the potential

2    antitrust claims," *id.* at 352.

3          Cross-jurisdictional tolling applies to Plaintiffs' claims under California, Florida, Kansas,

4    Massachusetts, Michigan, Minnesota, New York, and Washington law.   First, as explained in

5    *Linerboard*, there is a strong federal interest in recognizing cross-jurisdictional tolling in antitrust

6    lawsuits.   Second, cases from California,[4] Florida,[5] Kansas,[6] Massachusetts,[7] Michigan,[8]

7    Minnesota,[9] New York,[10] and Washington[11] all reflect that each would adopt cross-jurisdictional

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

[4]   *See Hatfield v. Halifax PLC*, 564 F.3d 1177 (9th Cir. 2009) (applying California doctrine of equitable tolling based on class action filed in other jurisdiction).

[5]   *See Barneby v. E.F. Hutton & Co.*, 715 F. Supp. 1512, 1528-29 (M.D. Fla. 1989) ("*American Pipe* tolling is properly extended" where Florida state law claims "involve the same 'evidence, memories, and witnesses' as are involved in the putative class action [in Indiana federal court].").

[6]   *See Seaboard Corp. v. Marsh Inc.*, No. 104,294, 2012 WL 3807681, at *16, *25-*27 (Kan. Aug. 31, 2012) (applying Kansas savings statute on a cross-jurisdictional basis and holding that plaintiff's claim was timely filed because it was a putative plaintiff in a federal class action based on claims arising out of the same conduct, transaction, or occurrence).

[7]   *See Arivella v. Lucent Techs., Inc.*, 623 F. Supp. 2d 164, 180 (D. Mass. 2009) (class action tolling should be interpreted liberally with the goal of reducing multiplicity of actions, even if the individual plaintiff's claims are not identical to those asserted in the class complaint).

[8]   *See Lee v. Grand Rapids Board of Education,* 148 Mich. App. 364, 384 N.W.2d 165 (MI 1986) ("We conclude … that the federal district court action tolled the operation of the statute of limitations as to plaintiffs' claims pursuant to the Elliott-Larsen Civil Rights Act and the Michigan State Fair Employment Practices Act.").

[9]   Cross-jurisdictional tolling applies to Minnesota claims because "Minnesota law on the applicability of American Pipe is similar to federal law." *Jenson v. Allison-Williams Co.*, 1999 U.S. Dist. LEXIS 22170, at *18 (S.D. Cal. Aug. 23, 1999) (holding that federal class action tolled state law claim under Minnesota Securities Act, and citing to *Carlson v. Independent School Dist.* No. 623, 392 N.W.2d 216, 223 (Minn. 1986) and *Bartlett v. Miller & Schroder Municipals, Inc.*, 355 N.W.2d 435, 439-440 (Minn. Ct. App. 1984)).

[10]   *Williams v. Dow Chem. Co.*, No. 01-cv-4307, 2004 WL 1348932, at *12 (S.D.N.Y. June 16, 2004) ("New York would likely apply *American Pipe*" in a cross-jurisdictional context). Additionally, New York law provides that claims under New York's Donnelly Act are tolled "during the pendency . . . and one year thereafter" any civil or criminal antitrust proceeding brought by the federal government, if the Donnelly Act claims are "based in whole or in part on any matter complained of in the federal proceeding." N.Y. Gen. Bus. L. § 342-c.   Defendants have already conceded that these claims were therefore tolled by the "pendency of the federal CRT investigation."   Defendants' Joint Reply in Support of Motion to Dismiss, No. 07-cv-5944 (Dkt. 1422) (Oct. 26, 2012), at 6 n.5.

[11]   Although Washington courts have not explicitly decided whether to allow cross-jurisdictional tolling, there is every reason to think that they would.   In Washington, "[e]quitable tolling is appropriate when it would effectuate: 1) the policies underlying the statute, and 2) the purposes underlying the statute of limitations." *Douchette v. Bethel Sch. Dist. No. 403*, 818 P.2d 1362, 1365 (1991) (citation omitted).   Here, applying cross-jurisdictional tolling would do both.   "The purpose of the Washington [Consumer Protection Act]" is "'to protect the public and foster fair

27
28

tolling in the circumstances here.  Third, the state law claims asserted are substantially similar to those asserted in the direct purchaser class action.  Fourth, the Defendants were plainly on notice that they could be sued under state law on the facts alleged in the direct purchase class actions. *See,* Dkt. 1 ¶¶ 1, 37 (asserting claims on behalf of "[a]ll persons and entities who purchased CRT Products [defined to include both CRTs and products containing CRTs] in the United States directly from one or more defendants").[12]  Accordingly, Plaintiffs should be given the benefit of tolling for both their federal and state law claims.

## CONCLUSION

Plaintiffs respectfully submit that the Court should follow its own prior ruling on the class complaints and deny Philips' and LG's Motion to Dismiss.

Dated: May 31, 2013

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

By: /s/ Roman M. Silberfeld
ROMAN M. SILBERFELD (SBN 62783)
Email: RMSilberfeld@rkmc.com
DAVID MARTINEZ (SBN 193183)
Email: DMartinez@rkmc.com
**ROBINS, KAPLAN, MILLER & CIRESI L.L.P.**
2049 Century Park East, Suite 3400
Los Angeles, CA 90067-3208
Telephone: (310) 552-0130
Facsimile: (310) 229-5800

---

and honest competition.'"  *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 534 (Wash. 1986) (quoting RCW 19.86.920).  Meanwhile, "[t]he policy behind statutes of limitation is protection of the defendant, and the courts, from litigation of stale claims where plaintiffs have slept on their rights and evidence may have been lost or witnesses' memories faded."  *Douchette v. Bethel Sch. Dist. No. 403*, 818 P.2d at 1365-66 (internal quotation marks and citation omitted).  Here, plaintiffs have clearly not slept on their rights and there is no risk of lost evidence or faded memories, as the class actions have been proceeding for several years.  And the statutory goal of "fostering fair and honest competition" would in no way be furthered by allowing Defendants to escape claims under Washington law.

[12] Plaintiffs were still members of this putative class when the direct purchaser plaintiffs filed their first consolidated amended complaint on March 16, 2009, asserting direct purchaser claims on behalf of "[a]ll persons and entities who, between March 1, 1995 and November 25, 2007, directly purchased a CRT Product in the United States from any defendant or any subsidiary or affiliate thereof, or any co-conspirator."  Dkt. 436 ¶ 85.

1    Elliot S. Kaplan, (Pro Hac Vice)
     ESKaplan@rkmc.com

2    K. Craig Wildfang (Pro Hac Vice)
     KCWildfang@rkmc.com

3    Laura E. Nelson, Bar No. 231856
     LENelson@rkmc.com

4    **ROBINS, KAPLAN, MILLER & CIRESI L.L.P.**
     800 LaSalle Avenue

5    2800 LaSalle Plaza
     Minneapolis, MN 55402

6    Telephone:    612-349-8500
     Facsimile:    612-339-4181

7

8    *Attorneys For Plaintiffs Best Buy Co., Inc, Best Buy*
     *Purchasing LLC, Best Buy Enterprise Services, Inc., Best*

9    *Buy Stores, L.P., Bestbuy.com, L.L.C., and Magnolia Hi-Fi,*
     *LLC*

10

11   PERKINS COIE LLP

12

13   By: /s/ David J. Burman
     DAVID J. BURMAN (pro hac vice)

14   Email: DBurman@perkinscoie.com
     CORI G. MOORE (pro hac vice)

15   Email: CGMoore@perkisncoie.com
     ERIC J. WEISS (pro hac vice)

16   Email: EWeiss@perkinscoie.com
     NICHOLAS H. HESTERBERG (pro hac vice)

17   Email: NHesterberg@perkinscoie.com
     **PERKINS COIE LLP**

18   1201 Third Avenue, Suite 4900

19   Seattle, WA 98101-3099
     Telephone: 206.359.8000

20   Facsimile: 206.359.9000

21   JOREN BASS (Bar No. 208143)

22   Email: JBass@perkinscoie.com
     **PERKINS COIE LLP**

23   Four Embarcadero Center, Suite 2400
     San Francisco, CA 94111-4131

24   Telephone: 415.344.7120
     Facsimile: 415.344.7320

25

26   *Attorneys for Plaintiff Costco Wholesale Corporation*

27

28

18

DIRECT ACTION PLAINTIFFS' OBJECTIONS TO THE SPECIAL MASTER'S REPORT AND RECOMMENDATIONS
REGARDING PHILIPS' AND LG'S MOTION TO DISMISS CERTAIN DIRECT ACTION PLAINTIFFS' COMPLAINTS
(3:07-CV-05944SC, MDL 1917)

BOIES, SCHILLER & FLEXNER LLP

By: /s/ Philip J. Iovieno
PHILIP J. IOVIENO
Email: piovieno@bsfllp.com
ANNE M. NARDACCI
Email: anardacci@bsfllp.com
**BOIES, SCHILLER & FLEXNER LLP**
10 North Pearl Street, 4th Floor
Albany, NY 12207
Telephone: (518) 434-0600
Facsimile: (518) 434-0665

WILLIAM A. ISAACSON
Email: wisaacson@bsfllp.com
JENNIFER MILICI
Email: jmilici@bsfllp.com
**BOIES, SCHILLER & FLEXNER LLP**
5301 Wisconsin Ave. NW, Suite 800
Washington, D.C. 20015
Telephone: (202) 237-2727
Facsimile: (202) 237-6131

STUART SINGER
Email: ssinger@bsfllp.com
**BOIES, SCHILLER & FLEXNER LLP**
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33301
Telephone: (954) 356-0011
Facsimile: (954) 356-0022

*Liaison Counsel for Direct Action Plaintiffs and Attorneys for Plaintiffs Electrograph Systems, Inc., Electrograph Technologies, Corp., Office Depot, Inc., Compucom Systems, Inc., Interbond Corporation of America, P.C. Richard & Son Long Island Corporation, Marta Cooperative of America, Inc., ABC Appliance, Inc., Schultze Agency Services LLC on behalf of Tweeter Opco, LLC and Tweeter Newco, LLC*

DIRECT ACTION PLAINTIFFS' OBJECTIONS TO THE SPECIAL MASTER'S REPORT AND RECOMMENDATIONS
REGARDING PHILIPS' AND LG'S MOTION TO DISMISS CERTAIN DIRECT ACTION PLAINTIFFS' COMPLAINTS
(3:07-CV-05944SC, MDL 1917)

1

SUSMAN GODFREY L.L.P.

2

By: /s/ Kenneth S. Marks

3

H. LEE GODFREY
Email: lgodfrey@sumangodfrey.com

4

KENNETH S. MARKS
Email: kmarks@susmangodfrey.com

5

JONATHAN J. ROSS
Email: jross@susmangodfrey.com

6

JOHNNY W. CARTER
Email: jcarter@susmangodfrey.com

7

DAVID M. PETERSON
Email: dpeterson@susmangodfrey.com

8

**SUSMAN GODFREY L.L.P.**

9

1000 Louisiana Street, Suite 5100
Houston, Texas 77002

10

Telephone: (713) 651-9366
Facsimile: (713) 654-6666

11

12

PARKER C. FOLSE III
Email: pfolse@susmangodfrey.com

13

RACHEL S. BLACK
Email: rblack@susmangodfrey.com

14

JORDAN CONNORS
Email: jconnors@susmangodfrey.com

15

**SUSMAN GODFREY L.L.P.**

16

1201 Third Avenue, Suite 3800
Seattle, Washington 98101-3000

17

Telephone: (206) 516-3880
Facsimile: (206) 516-3883

18

19

*Attorneys for Plaintiff Alfred H. Siegel, as Trustee of the Circuit City Stores, Inc. Liquidating Trust*

20

21

22

23

24

25

26

27

28

---

20

DIRECT ACTION PLAINTIFFS' OBJECTIONS TO THE SPECIAL MASTER'S REPORT AND RECOMMENDATIONS
REGARDING PHILIPS' AND LG'S MOTION TO DISMISS CERTAIN DIRECT ACTION PLAINTIFFS' COMPLAINTS
(3:07-CV-05944SC, MDL 1917)

CROWELL & MORING LLP

By: /s/ Jason C. Murray
JASON C. MURRAY (CA Bar No. 169806)
Email: jmurray@crowell.com
**CROWELL & MORING LLP**
515 South Flower St., 40th Floor
Los Angeles, CA 90071
Telephone: (213) 443-5582
Facsimile: (213) 622-2690

JEROME A. MURPHY (pro hac vice)
E-mail: jmurphy@crowell.com
ASTOR H.L. HEAVEN (pro hac vice)
Email: aheaven@crowell.com
**CROWELL & MORING LLP**
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: (202) 624-2500
Facsimile: (202) 628-5116

*Attorneys for Target Corp. and RadioShack Corp.*

KENNY NACHWALTER, P.A.

By: /s/ Richard Alan Arnold
RICHARD ALAN ARNOLD
Email: rarnold@knpa.com
WILLIAM J. BLECHMAN
Email: wblechman@knpa.com
KEVIN J. MURRAY
Email: kmurray@knpa.com
**KENNY NACHWALTER, P.A.**
201 S. Biscayne Blvd., Suite 1100
Miami, FL 33131
Tel: (305) 373-1000
Fax: (305) 372-1861

*Attorneys for Plaintiff Sears, Roebuck and Co. and Kmart Corp.*

---

21

DIRECT ACTION PLAINTIFFS' OBJECTIONS TO THE SPECIAL MASTER'S REPORT AND RECOMMENDATIONS
REGARDING PHILIPS' AND LG'S MOTION TO DISMISS CERTAIN DIRECT ACTION PLAINTIFFS' COMPLAINTS
(3:07-CV-05944SC, MDL 1917)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LINDQUIST & VENNUM P.L.L.P.

By: /s/ Jessica L. Meyer
Jessica L. Meyer (SBN: 249064)
Email: jmeyer@lindquist.com
James M. Lockhart (pro hac vice)
Email: jlockhart@lindquist.com
James P. McCarthy (pro hac vice)
Email: jmccarthy@lindquist.com
Kelly G. Laudon (pro hac vice)
Email: klaudon@lindquist.com
**LINDQUIST & VENNUM P.L.L.P.**
4200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: (612) 371-3211
Facsimile: (612) 371-3207

*Attorneys for Plaintiffs John R. Stoebner, as Chapter 7*
*Trustee for PBE Consumer Electronics, LLC and Related*
*Entities; and Douglas A. Kelley, as Chapter 11 Trustee for*
*Petters Company, Inc. and Related Entities, and as Receiver*
*for Petters Company, LLC and Related Entities*

DIRECT ACTION PLAINTIFFS' OBJECTIONS TO THE SPECIAL MASTER'S REPORT AND RECOMMENDATIONS
REGARDING PHILIPS' AND LG'S MOTION TO DISMISS CERTAIN DIRECT ACTION PLAINTIFFS' COMPLAINTS
(3:07-CV-05944SC, MDL 1917)