1   Christopher M. Curran (*pro hac vice*)
    ccurran@whitecase.com
2   Lucius B. Lau (*pro hac vice*)
    alau@whitecase.com
3   Dana E. Foster (*pro hac vice*)
    defoster@whitecase.com
4
5   White & Case LLP
    701 Thirteenth Street, N.W.
6   Washington, DC  20005
7   Telephone:  (202) 626-3600
    Facsimile:  (202) 639-9355
8

9   *Attorneys for Defendants Toshiba Corporation,*
    *Toshiba America, Inc., Toshiba America*
10  *Information Systems, Inc., Toshiba America*
    *Consumer Products, L.L.C., and Toshiba America*
11  *Electronic Components, Inc.*
12
    (Additional objecting defendants and counsel
13  listed on signature block)
14

15              UNITED STATES DISTRICT COURT
            NORTHERN DISTRICT OF CALIFORNIA
16             (SAN FRANCISCO DIVISION)

17

18  IN RE: CATHODE RAY TUBE (CRT)          Case No. 07-5944 SC
    ANTITRUST LITIGATION                   MDL No. 1917
19

20
21  This Document Relates to:              **DEFENDANTS' JOINT OBJECTIONS**
                                           **TO THE REPORT AND**
22  *Electrograph Systems, Inc., et al. v.* **RECOMMENDATIONS REGARDING**
    *Hitachi, Ltd., et al.*, No. 11-cv-01656; **DEFENDANTS' MOTIONS TO**
23                                          **DISMISS DIRECT ACTION**
    *Stoebner, et al. v. LG Electronics, et al.*, **COMPLAINTS**
24  No. 11-cv-05381;
25                                          Date:        August 23, 2013
    *Siegel v. Hitachi, Ltd., et al.*, No. 11-cv- Time:    10:00 a.m.
26  05502;                                  Judge:       Hon. Samuel Conti
27                                          Special Master: Hon. Charles A. Legge,
    *Best Buy Co., Inc., et al. v. Hitachi, Ltd., et*              U.S. District Judge (Ret.)
28  *al.*, No. 11-cv-05513;

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Target Corp, et al. v. Chunghwa Picture Tubes, Ltd., et al.*, No. 11-cv-05514;

*Interbond Corporation of America v. Hitachi, et al.*, No. 11-cv-06275;

*Office Depot, Inc. v. Hitachi Ltd., et al.*, No. 11-cv-06276;

*CompuCom Systems, Inc. v. Hitachi, Ltd., et al.*, No. 11-cv-06396;

*Costco Wholesale Corporation v. Hitachi, Ltd., et al.*, No. 11-cv-06397;

*P.C. Richard & Son Long Island Corporation, et al., v. Hitachi, Ltd., et al.*, No. 12-cv-02648;

*Schultze Agency Services, LLC, et al. v. Hitachi, Ltd., et al.*, No. 12-cv-02649.

1

**TABLE OF CONTENTS**

2
**Page**

3   STATEMENT OF ISSUES ...................................................................................1

4   PROCEDURAL HISTORY ................................................................................1

5   INTRODUCTION .............................................................................................2

6   ARGUMENT .....................................................................................................4

7
8   I.   THE REPORT'S APPLICATION OF THE DUE PROCESS STANDARD
         SET FORTH IN *AT&T* WAS ERRONEOUS ..........................................4

9        A.   The Report Erroneously Applied The *AT&T* Standard To DAPs
10            Raising Claims Under The Cartwright Act ..........................................5

11       B.   The Report Erroneously Applied The *AT&T* Standard Beyond The
12            California Cartwright Act ....................................................................8

13            1.   *AT&T* Does Not Apply To The DAPs' Claims Made Under The
14                 Laws Of States Other Than California .......................................8

15            2.   *AT&T* Does Not Apply To The DAPs' Claims Under Florida
16                 And Massachusetts Law .............................................................9

17            3.   Even If *AT&T* Applied Outside California, The Allegations Of
18                 The Non-California Claims Would Not Satisfy The
                   Requirements Of Due Process ..................................................10

19
20  II.  THE REPORT IMPROPERLY FAILED TO CONSIDER DEFENDANTS'
         ARGUMENTS RELATING TO PRUDENTIAL STANDING ...................10

21       A.   The Report Failed To Consider Whether Certain Plaintiffs' Claims
22            Identified By The Defendants Meet The "Zone of Interest" Prudential
              Standing Requirement .........................................................................11
23
24            1.   DAPs Who Did Not Allege The Purchase Of A CRT Product In
                   The State In Which They Filed A Claim Do Not Satisfy The
25                 Requirements Of Prudential Standing .....................................12

26            2.   DAPs Who Asserted Only Conclusory Or Insufficient
27                 Allegations That They Purchased Or Received A CRT Product In
                   The State In Which They Filed A Claim Do Not Satisfy The
28                 Requirements Of Prudential Standing .....................................13

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

DEFENDANTS' JOINT OBJECTIONS TO THE REPORT AND RECOMMENDATIONS REGARDING
DEFENDANTS' MOTIONS TO DISMISS DIRECT ACTION COMPLAINTS
Case No. 07-5944 SC
MDL No. 1917

i

B.   The Report Erroneously Concluded That The DAPs Satisfy The Prudential Standing Requirement Of Asserting Their Own Legal Interests For All Of Their State-Law Claims ......................................................16

III.   ALMOST ALL OF DAPS' STATE-LAW CLAIMS ARE TIME BARRED AS A MATTER OF LAW .............................................................................17

A.   The Fraudulent Concealment Doctrine Does Not Apply ......................................19

B.   DAPs' Class Tolling Arguments Should Be Rejected As A Matter of Law ............................................................................................21

IV.   THE REPORT ERRED IN HOLDING THAT THE DAPS' FEDERAL ANTITRUST LAW CLAIMS FALL UNDER THE "OWNED OR CONTROLLED" EXCEPTION TO *ILLINOIS BRICK*.................................24

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                  **Page**

*Am. Pipe & Constr. Co. v. Utah*,
    414 U.S. 538 (1974)...............................................................................21, 23

*Aquair Ventures, LLC v. Gulf Stream Coach, Inc.*,
    No. C-08-2903 SC, 2008 WL 4104218 (N.D. Cal. Sep. 4, 2008) ..................................11

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...............................................................................14

*Ass'n of Data Processing Serv. Orgs., Inc. v. Camp*,
    397 U.S. 150 (1970)...............................................................................11

*AT&T Mobility LLC v. AU Optronics Corp.*,
    707 F.3d 1106 (9th Cir. 2013) .......................................................1, 4, 5, 7, 9

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)................................................................................5

*Casey v. Merck & Co.*,
    722 S.E.2d 842 (Va. 2012) ....................................................................... 22

*Clemens v. DaimlerChrysler Corp.*,
    534 F.3d 1017 (9th Cir. 2008) ....................................................................22

*CompuCom Systems, Inc., v. Hitachi, Ltd., et al.*,
    Case No. 11-cv-06396 (N.D. Cal. Nov. 14, 2011) .......................................................20

*Conmar Corp. v. Mitsui & Co. (U.S.A.), Inc.*,
    858 F.2d 499 (9th Cir. 1988) ................................................................. 19, 20

*Crown Cork & Seal Co., Inc. v. Parker*,
    462 U.S. 345 (1983)...............................................................................21

*Costco Wholesale Corp. v. Hitachi, Ltd., et al.*,
    Case No. 11-cv-06397 (N.D. Cal. Nov. 14, 2011) .......................................................20

*Davis v. Fed. Election Comm'n*,
    554 U.S. 724 (2008)...............................................................................16

*Delgado v. J.W. Courtesy Pontiac GMC-Truck, Inc.*,
    693 So.2d 602 (Fla. App. 2 Dist. 1997) .......................................................13

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Elk Grove Unified Sch. Dist. v. Newdow*,
  542 U.S. 1 (2004)....................................................................................16

*GO Computer, Inc. v. Microsoft Corp.*,
  508 F.3d 170 (4th Cir. 2007) .........................................................19, 20, 21

*Hexcel Corp. v. Ineos Polymers, Inc.*,
  681 F.3d 1055 (9th Cir. 2012) .............................................................19, 21

*Illinois Brick Co. v. Illinois*,
  431 U.S. 720 (1977)..........................................................................1, 4, 24

*In re Graphics Processing Units Antitrust Litig.*,
  527 F. Supp. 2d 1011 (N.D. Cal. 2007) ................................................ 12, 16

*In re Terazosin Hydrochloride Antitrust Litig.*,
  160 F. Supp. 2d 1365 (S.D. Fla. 2001) ................................................. 12, 16

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  No. M 07-1827 SI, 2013 WL 1891367 (N.D. Cal. May 6, 2013) ............................5, 6, 8

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  No. M 07-1827 SI, 2011 WL 3809767 (N.D. Cal. Aug. 29, 2011) ..............................14

*In re Urethane Antitrust Litig.*,
  663 F. Supp. 2d 1067 (D. Kan. 2009).......................................................22

*Kam Lee Yuen Trading Co., Inc. v. Hocean, Inc.*,
  No. 10-0455 SC, 2010 WL 3155812 (N.D. Cal. Aug. 9, 2010) ...................................13

*Kaui Scuba Ctr., Inc. v. PADI Americas, Inc.*,
  No. SACV 10-1579 DOC (MANx), 2011 WL 2711177 (C.D. Cal. July 13,
  2011) ........................................................................................15

*Kendall v. Visa U.S.A., Inc.*,
  518 F.3d 1042 (9th Cir. 2008) ...............................................................5

*Kindt v. Matsushita Electric Industrial Co., Ltd., et al.*,
  No. 1:07-10322 (S.D.N.Y. Nov. 13, 2007)..................................................17

*Lujan v. Nat'l Wildlife Fed'n*,
  497 U.S. 871 (1990)..........................................................................16

*MAI Systems Corp. v. UIPS*,
  856 F. Supp. 538 (N.D. Cal. 1994) ...................................................... 16-17

DEFENDANTS' JOINT OBJECTIONS TO THE REPORT AND RECOMMENDATIONS REGARDING
DEFENDANTS' MOTIONS TO DISMISS DIRECT ACTION COMPLAINTS
Case No. 07-5944 SC
MDL No. 1917
iv

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

*Orion Home Systems, LLC v. Chunghwa Picture Tubes, Ltd., et al.*,
  Case No. 3:08-cv-00178-SC (N.D. Cal. Jan. 1, 2008)....................................................20

*Pecover v. Elecs. Arts, Inc.*,
  633 F. Supp. 2d 976 (N.D. Cal. 2009) ........................................................................12

*Rahr v. Grant Thornton LLP*,
  412 F. Supp. 2d 793 (N.D. Tex. 2000) .......................................................................23

*Rutledge v. Boston Woven Hose & Rubber Co.*,
  576 F.2d 248 (9th Cir. 1978) .....................................................................................19

*Sawyer v. Atlas Heating & Sheet Metal Works, Inc.*,
  642 F.3d 560 (7th Cir. 2011) .....................................................................................22

*Soward v. Deutsche Bank AG*,
  814 F. Supp. 2d 272 (S.D.N.Y. 2011) .........................................................................22

*Valley Forge Christian Coll. v. Americans United for Separation of Church and
State, Inc.*,
  454 U.S. 464 (1982)..............................................................................................11, 13, 17

*Wachovia Bank & Trust Co. v. Nat'l Student Mktg. Corp.*,
  461 F. Supp. 999 (D.D.C. 1978), *rev'd on other grounds*, 650 F.2d 342
  (D.C. Cir. 1980) .........................................................................................................23

*Western Mining Council v. Watt*,
  643 F.2d 618 (9th Cir. 1981) ....................................................................................11

## Statutes

Ariz. Rev. Stat. § 44-1402 ...............................................................................................12

Ariz. Rev. Stat. §§ 44-1410(b) ........................................................................................21

Cal. Bus. & Prof. Code § 16750.1 ..................................................................................21

Cal. Bus. & Prof. Code § 16720(d) ............................................................................ 12-13

Cal. Bus. & Prof. Code § 17208 .....................................................................................21

Fla. Stat. § 501.201 ........................................................................................................ 13

Fla. Stat. §§ 501.203, 501.204 .........................................................................................9

Fla. Stat. Ann. § 95.11(3)(f) ...........................................................................................21

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

740 Ill. Comp. Stat. 10/2 ....................................................................................13

740 Ill. Comp. Stat. § 10/7(2) ..........................................................................21

Iowa Code Ann. § 553.16 ..................................................................................21

Kan. Stat. Ann. § 60-512(2) ........................................................................18, 21

Mass Gen. Laws ch. 93A §§ 1, 2 ........................................................................9

Mass. Gen. Laws Ann. ch. 260 § 5A ................................................................21

Mich. Comp. Laws Ann. § 445.781 ...................................................................21

Minn. Stat. § 325D.53 .......................................................................................13

Minn. Stat. Ann. § 325D.64 ..............................................................................21

Miss. Code Ann. § 15-1-49 .........................................................................18, 21

Neb. Rev. Stat. § 25-206 ...................................................................................21

Nev. Rev. Stat. § 598A.220 ...............................................................................21

N.C. Gen. Stat. § 75-16.2; R.C.W. § 19.86.120 ...............................................21

N.M. Stat. Ann. § 57-1-12 ................................................................................21

N.Y. Gen. Bus. Law § 340(5) ...........................................................................21

DEFENDANTS' JOINT OBJECTIONS TO THE REPORT AND RECOMMENDATIONS REGARDING
DEFENDANTS' MOTIONS TO DISMISS DIRECT ACTION COMPLAINTS
Case No. 07-5944 SC
MDL No. 1917

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

**STATEMENT OF ISSUES**

1.   Whether the May 2, 2013 Report and Recommendations on Defendants' Motions to Dismiss Direct Action Complaints (the "Report") erred in recommending that the Court deny the Defendants' motion to dismiss certain of the direct action plaintiffs' ("DAPs'") state-law claims for lack of due process.

2.   Whether the Report erred in recommending that the Court deny the Defendants' motion to dismiss certain of the DAPs' state-law claims because the Defendants purportedly did not demonstrate in their moving papers which of the DAPs' alleged claims, and under the laws of which states, fail to meet the requirements of prudential standing.

3.   Whether the Report erred in recommending that the Court deny the Defendants' motion to dismiss almost all of the DAPs' state-law claims on statute-of-limitations grounds.

4.   Whether the Report erred in recommending that the Court deny the Defendants' motion to dismiss the DAPs' federal-law antitrust claims under the so-called "ownership-or-control" exception to *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977).

**PROCEDURAL HISTORY**

On August 17, 2012, the undersigned Defendants filed their Joint Motion to Dismiss and for Judgment on the Pleadings as to Certain Direct Action Plaintiffs' Claims (the "Defendants' Motion") (Docket No. 1317), along with Appendices A, B, and C.

On September 28, 2012, the DAPs filed their Opposition to Defendants' Motion to Dismiss (the "Opposition") (Docket No. 1384).

On October 26, 2012, the Defendants filed their Joint Reply Memorandum in Support of Motion to Dismiss and for Judgment on the Pleadings as to Certain Direct Action Plaintiffs' Claims (the "Defendants' Reply") (Docket No. 1422).

On February 14, 2013, Special Master Legge held a hearing on the Defendants' Motion.  During the hearing, it was announced that the Ninth Circuit had ruled in *AT&T Mobility LLC v. AU Optronics Corp.*, 707 F.3d 1106 (9th Cir. 2013) ("*AT&T*"), and that the

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

holding could potentially apply to the Defendants' Motion.  Special Master Legge requested that the parties submit a two-page letter explaining whether the *AT&T* decision applied to the Defendants' Motion.

On February 22, 2013, the Defendants filed a letter brief in response to Special Master Legge's request (the "Defendants' February 22 Letter") (Docket No. 1581).

On February 22, 2013, the DAPs also filed a letter brief (the "DAPs' February 22 Letter") (Docket No. 1580).

On May 2, 2013, Special Master Legge issued the Report (Docket No. 1664).

## INTRODUCTION

Pursuant to Rule 53(f)(2) of the Federal Rules of Civil Procedure, the Order Appointing Special Master (Docket No. 302), and the Court's May 9, 2013 Order Granting Stipulation Regarding Special Master's May 2, 2013 Report and Recommendation on Motions to Dismiss Direct Action Complaints (Docket No. 1666), the undersigned Defendants hereby submit their Objections to the Special Master's Report.[1]  The few specific recommendations of the Report being challenged by Defendants are based on several erroneous legal conclusions that require the Court's modification.

***First***, the Report is incorrect in recommending that the Court should deny the Defendants' motion to dismiss the DAP claims under the laws of certain states for lack of due process.  The Report erred in concluding that the requirements of due process have been met as to those DAPs that made claims under the Cartwright Act because those DAPs make insufficient factual allegations of anticompetitive conduct in California.  To satisfy due process under the reasoning of *AT&T*, the DAPs must provide specific factual allegations regarding each Defendant's anticompetitive conduct in California, which the DAPs have failed to do.  Furthermore, the Report improperly applies the standard articulated in *AT&T*

---

[1] Pursuant to the Court's May 9, 2013 Order Granting Stipulation Regarding Special Master's May 2, 2013 Report and Recommendation on Motions to Dismiss Direct Action Complaints (Docket No. 1666), the Defendants will include their arguments in support of their motions to adopt many of the recommendations of the Report, which the Defendants believe were correctly decided, in their responsive brief, which will be filed by June 28, 2013.

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

to claims arising under state statutes other than the Cartwright Act.  The DAPs have not met the requirements of Due Process with respect to those state-law claims because they have failed to allege adequate connections between the Defendants' alleged anticompetitive conduct and the specific states.  Indeed, the DAPs have failed to allege any specific connections between Defendants' alleged anticompetitive conduct and any of these states.

*Second*, the Report erred in recommending that the Court deny the Defendants' motion to dismiss the DAP claims under the laws of certain states due to lack of prudential standing.  The claims of certain DAPs, which were set forth in Appendix C to the Defendants' Motion, should be dismissed because they fall outside of the relevant state statutes' "zone of interest."  Specifically:  (i) certain DAPs do not allege that they purchased CRT Products in the states where they filed their claims; and (ii) certain DAPs do not plead sufficient facts to establish that they purchased CRT Products in those states.  In light of the fact that the DAPs do not sufficiently allege that they purchased CRT products in the relevant states, they fail to establish prudential standing to assert legal rights in such states and their claims should be dismissed.

*Third*, the Report erred in recommending that the Court deny the Defendants' motion to dismiss based on various state statutes of limitation.  Almost all of the applicable state statutes of limitation expired before the DAPs filed suit.  Any claims based on the Defendants' alleged actions prior to November 14, 2007, are barred by the applicable three-year and four-year statutes of limitations, yet the DAPs did not file suit until November 14, 2011.  Furthermore, there is no applicable tolling doctrine that can save the DAPs' claims.  Any tolling based on the DAPs' fraudulent concealment allegations ended no later than November 8, 2007, *i.e.*, the date that the European Commission publicly announced its investigation into CRT manufacturers and put the DAPs on at least inquiry notice of their potential claims.  Nor can the class-action tolling doctrine save the DAPs' untimely *state-law* claims:  the earlier-filed DPP complaint asserts claims only under *federal law* and, as a

matter of law, the various states at issue do not apply the class tolling doctrine in a "cross-jurisdictional" context.

*Fourth*, the Report erred in recommending that the Court deny the Defendants' motion to dismiss the DAPs' federal antitrust claims, which are based upon the DAPs' purported right to proceed under the "ownership-or-control" exception to *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977). Because the DAPs did not directly purchase a price-fixed product, the DAPs cannot establish federal antitrust standing. The Court should not extend the narrow owned-or-controlled exception by allowing the DAPs to proceed.

For the above reasons, and as more fully discussed below, these erroneous conclusions should not be adopted and the Defendants' motion to dismiss on these grounds should be granted.

## <u>ARGUMENT</u>

## I.   THE REPORT'S APPLICATION OF THE DUE PROCESS STANDARD SET FORTH IN *AT&T* WAS ERRONEOUS

In considering the Defendants' due process arguments, the Report concluded that the Ninth Circuit's decision in *AT&T Mobility LLC v. AU Optronics Corp.*, 707 F.3d 1106 (9th Cir. 2013) ("*AT&T*"), "adopted a broader interpretation of *All-State v. Hague* than that advocated by defendants here" and the Report "therefore recommends that [the Defendants'] motion to dismiss on due process grounds as framed by defendants must be denied." Report at 9. As explained in the Defendants' February 22 Letter, none of the DAPs' claims that are subject to the due process arguments in the Defendants' motion meets the standards articulated by the *AT&T* Court. The Report's conclusions on due process are incorrect for two reasons. First, the DAPs that raised claims under the Cartwright Act failed to sufficiently allege that conspiratorial conduct occurred in California, which precludes them from meeting the due process standards set forth in *AT&T*. Second, the ruling in *AT&T* only applies to claims under the California Cartwright Act and does not change the standard for evaluating due process under other states' statutes, where the DAPs have clearly not met the prevailing due process test.

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**A.    The Report Erroneously Applied The *AT&T* Standard To DAPs Raising Claims Under The Cartwright Act**

The Report erred in applying the Ninth Circuit's holding in *AT&T* to the DAPs' claims under the California Cartwright Act because it failed to consider whether those DAPs alleged facts sufficient to establish that the Defendants participated in anticompetitive conduct in California under the due process standard set forth in *AT&T*.   According to the *AT&T* standard, plaintiffs must allege conduct that is not "slight and casual" as to each defendant, such that application of California law is "neither arbitrary nor fundamentally unfair."  *AT&T Mobility LLC v. AU Optronics Corp.*, 707 F3d at 1107, 1113 n. 15 ("[T]he requirements of the Due Process Clause must be satisfied individually with respect to each defendant in a case.").   To meet this standard, the DAPs must offer specific factual allegations regarding each Defendant's conspiratorial conduct.  *Accord Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007) ("[A] bare assertion of conspiracy will not suffice" and "a conclusory allegation of agreement . . . does not supply facts adequate to show illegality."); *see also Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1048 (9th Cir. 2008) ("the complaint does not answer the basic questions: who, did what, to whom (or with whom), where, and when?").   Mere allegations that acts in furtherance of the conspiracy occurred in California, without more, fail to meet the standard.

In *AT&T*, the plaintiffs satisfied this standard because they explicitly alleged that the defendants in that case entered into price-fixing agreements in California, in violation of California antitrust law.   707 F.3d at 1109.   In addition to alleging that the defendants engaged in and implemented their conspiracy in the United States through the offices they maintained in California, the plaintiffs included detailed allegations that specific employees of particular defendants, operating in California, participated in illegally obtaining and sharing their co-conspirators' pricing information.  *Id.*

Similarly, in *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI, 2013 WL 1891367, at *4 (N.D. Cal. May 6, 2013) ("*LCD*"), a case that applied the *AT&T* holding to Cartwright Act claims, the Court reversed its prior decision dismissing plaintiffs' Cartwright

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Act claims on due process grounds only for those claims that provided specific factual allegations as to each defendant's conspiratorial conduct that occurred in California.  *Id.* at *2-4.  The plaintiffs alleged that the conspiracy "was effectuated through a combination of group and bilateral discussions that took place in . . . California . . . ."  *Id.*  Furthermore, the plaintiffs in *LCD* offered detailed allegations regarding specific employees of specific defendants who  exchanged information and entered into agreements on prices in California: "[P]laintiffs allege that Brian Graham of Sharp 'met and agreed to fix prices for LCD Panels with [his] U.S. counterparts at defendants LG Display, [], and AU Optronics, and at other LCD Panel suppliers' . . . meeting at restaurants and bars in the United States and frequently communicating by telephone at their offices in the United States.   Some of these communications took place, in part, within California."  *Id.* at *3.   The *LCD* Court concluded that those specific allegations of price-fixing activities within California were sufficient to satisfy due process.  *Id.* at *3.

Conversely, the *LCD* Court held that other claims that merely referenced plea agreements acknowledging that acts in furtherance of the conspiracy were carried out in California failed to allege sufficient conspiratorial conduct in California.  *Id.* at *4.  Specifically, the Court determined that the statements in the plea agreements failed to satisfy the *AT&T* standard because they did not indicate which defendant carried out which act.  *See id.* (explaining that the statements in the plea agreements "cannot satisfy the Ninth Circuit's express instructions to conduct a defendant-by-defendant analysis with respect to conspiratorial conduct").

The Report erred in concluding that the DAPs met the requirements of due process under *AT&T* because the DAPs' allegations fail to establish that any of the Defendants entered into agreements in California or improperly exchanged information in California.  Rather, the DAPs allege that the conspiracy was effectuated through group and bilateral

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

discussions that took place in locations outside the United States.[2]  Indeed, the DAPs' bare and conclusory allegations fail to provide any specific details as to what conspiratorial conduct purportedly took place in California.   At most, some of the DAPs allege that unnamed employees of unnamed Defendants participated in meetings at unnamed locations in California:  "[e]mployees at Defendants' locations in California participated in meetings and engaged in bilateral communications in California . . . ."   Electrograph FAC ¶ 252.[3]  Unlike the plaintiffs in *AT&T* and *LCD,* the DAPs fail to identify the name of the alleged employee, the name of the Defendant, the location of the alleged meeting, whether information was exchanged, or whether any agreement was made.  These vague allegations do not provide enough detail to allow the court to make the defendant-by-defendant due process analysis required by *AT&T*, 707 F.3d at 1107, 1113 n. 15.  Consequently, their conclusory allegations fall far short of the *AT&T* standard for alleging sufficient facts regarding anticompetitive activities within California to meet the defendant-by-defendant due process test.

Similar to the *LCD* plaintiffs, some of the DAPs attempt to satisfy due process by alleging that plea agreements and statements in indictments establish conspiratorial conduct in California.  For example, CompuCom alleges that "Defendant Samsung SDI admitted in its plea agreement that acts in furtherance of the conspiracy were carried out in California", and "[t]he indictment [of a former employee of a CRT manufacturer] states that the combination and conspiracy to fix the prices of CRTs was carried out, in part, in California."  CompuCom Compl. ¶¶ 175, 238.[4]  As the Court explained in *LCD*, these bare

---

[2] *See, e.g.*, Office Depot Compl. ¶ 6 ("There were at least 500 conspiracy meetings during the Relevant Period, including hundreds of group meetings and hundreds of bilateral meetings.  These meetings occurred in various locales, including Taiwan, South Korea, Indonesia, Thailand, Singapore, Malaysia, China, the U.K. and Europe.").

[3] *See* Circuit City Compl. ¶ 244; CompuCom Compl. ¶ 238; Office Depot Compl. ¶ 245; Target Am. Compl. ¶ 255 (Kmart, Old Comp, RadioShack, Sears, and Target).

[4] Other Direct Action Plaintiffs also attempt to satisfy due process by making similar or identical references to plea agreements.  *See, e.g.*, Electrograph FAC ¶¶ 189-92; Costco Compl. ¶¶ 142-45; Interbond Compl. ¶¶ 171-

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

and conclusory allegations fail to satisfy due process because they do not indicate which Defendant carried out which act.  *LCD*, 2013 WL 1891367 at *4.

### B.   The Report Erroneously Applied The *AT&T* Standard Beyond The California Cartwright Act

The Report also erred in applying the Ninth Circuit's holding in *AT&T* beyond the California Cartwright Act.  As explained in the Defendants' February 22 letter, the Ninth Circuit's holding in *AT&T* was limited to claims arising under the Cartwright Act and does not apply to claims arising under the laws of other states.  *See* Defendants' February 22 Letter at 2.

### 1.   *AT&T* Does Not Apply To The DAPs' Claims Made Under The Laws Of States Other Than California

In *AT&T*, the Ninth Circuit made clear that it was addressing an issue under California law only:  "the question [is] whether the application of *California antitrust law* to claims against defendants based on purchases that occurred outside California would violate the Due Process Clause of the United States Constitution."  707 F.3d. at 1107 (emphasis added). The Court did not address any other states' antitrust laws, nor did it give any indication that this decision would apply outside of California.

In determining whether AT&T's claims violated due process, the Ninth Circuit expressly examined due process under the unique language and prohibitions of the California Cartwright Act.  *See id.* at 1110 (explaining that unique language in the Cartwright Act "reaches beyond the Sherman Act to threats to competition in their incipiency . . . .").  The Court observed that the text of the Cartwright Act prohibits the sale of price-fixed goods in California, as well as the initial agreement to fix those prices, regardless of where those goods would eventually be sold.  *See id.* (observing from "[a] reading of the plain text of the Cartwright Act" that the Act "reaches deep in proscribing anticompetitive conduct" by prohibiting two or more persons "[t]o make or enter into or

---

74; Office Depot Compl. ¶¶ 172-75; Polaroid Compl. ¶¶ 4, 166, 168; Target Am. Compl. ¶¶ 191-95 (Kmart, Old Comp, RadioShack, Sears, and Target).

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

execute or carry out any contracts, obligations or agreements of any kind or description, by which they . . . [a]gree to pool, combine or directly or indirectly unite any interests that they may have connected with the sale or transportation of any . . . article or commodity, that its price might in any manner be affected."). In light of this particular language, the Court extended the relevant "transaction or occurrence" necessary to satisfy due process in California to include not only the sale of price-fixed goods in California, but also alleged agreements and conspiracies to fix prices in California. *See id.* at 1112 ("[W]e conclude that the perpetration of anticompetitive activities within California 'creat[es] state interests' in applying California law to that conduct."). Accordingly, the Ninth Circuit held that "the Cartwright Act can be lawfully applied without violating a defendant's due process rights when more than a *de minimis* amount of that defendant's alleged conspiratorial activity leading to the sale of price-fixed goods to plaintiffs took place in California." *Id.* at 1113. The holding of *AT&T* also does not apply to any of the DAPs' claims arising under the laws of states other than California, as there is no indication that the laws of the other states at issue indicate a similarly expansive state interest for purposes of due process analysis.

### 2.   *AT&T* Does Not Apply To The DAPs' Claims Under Florida And Massachusetts Law

For example, *AT&T* cannot apply to the DAPs' claims brought under Florida and Massachusetts law. Although those claims are accompanied by conclusory allegations that "Defendants' and their co-conspirators' conduct was carried out, effectuated, and perfected within" Florida and Massachusetts, the statutes of those states merely prohibit the sale of price-fixed goods, not agreements and conspiracies involving price-fixed goods.[5] The Report's conclusion that *AT&T* applies to all of the DAPs' claims thus ignores the plain

---

[5] *See* Fla. Stat. §§ 501.203, 501.204 ("Unfair methods of competition . . . in the conduct of any trade or commerce are hereby declared unlawful," and defining "trade or commerce" as "the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good . . . ."); Mass Gen. Laws ch. 93A §§ 1, 2 ("Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful" and defining "trade" and "commerce" as "the advertising, the offering for sale, rent or lease, the sale, rent, lease or distribution of any services and any property . . . .").

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

language of the Florida and Massachusetts statutes as well as the specific reasoning relating to the terms of the Cartwright Act that form the basis of the Ninth Circuit's holding in *AT&T*.

> **3.** **Even If *AT&T* Applied Outside California, The Allegations Of The Non-California Claims Would Not Satisfy The Requirements Of Due Process**

Even if *AT&T* did apply outside of California, the Report errs in concluding that all of the DAPs who brought claims in states other than California satisfied due process despite the undisputed fact that those DAPs' claims include no detailed defendant-by-defendant allegations of anticompetitive conduct in those particular states. Those failed DAP claims include the following: Circuit City (Illinois); CompuCom (New York); Costco (Arizona, Florida, Illinois); Electrograph (New York); Kmart (Illinois, Minnesota, Nebraska, Nevada, North Carolina); Magnolia Hi-Fi (Minnesota); Old Comp (Illinois); Polaroid (Minnesota); RadioShack (Mississippi); Sears (Arizona, Michigan, Minnesota, Mississippi, Nebraska, Nevada, New Mexico, New York, North Carolina, Wisconsin); and Target (Arizona, Illinois, Iowa, Kansas, Michigan, New York, North Carolina, Wisconsin). For these claims, the DAPs do not allege that the Defendants improperly exchanged information in those states, or that the Defendants entered into price-fixing agreements in those states. Without specific factual allegations, the Court cannot identify which Defendants allegedly engaged in anticompetitive conduct in specific states or where the alleged conduct occurred. Accordingly, none of these claims satisfy due process even under the expansive *AT&T* analysis.

## II. THE REPORT IMPROPERLY FAILED TO CONSIDER DEFENDANTS' ARGUMENTS RELATING TO PRUDENTIAL STANDING

The Report summarily rejected the Defendants' arguments concerning prudential standing without considering the specific DAP claims the Defendants identified that fail to meet the prudential standing requirements. The Court should reject the Report's recommendation to deny the Defendants' motion to dismiss for lack of prudential standing

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

with respect to certain DAP claims because, as demonstrated below, each of the DAPs have failed to establish that the requirements of prudential standing have been met with respect to these specific state-law claims

**A.** **The Report Failed To Consider Whether Certain Plaintiffs' Claims Identified By The Defendants Meet The "Zone of Interest" Prudential Standing Requirement**

The Report concluded, erroneously, that the "defendants . . . d[id] not demonstrate which of plaintiffs' alleged claims, and under the laws of which states, are allegedly deficient."  Report at 8.  This conclusion wholly overlooks the Defendants' argument in their motion that "[j]ust as certain DAPs' state-law claims fail to meet the requirements of due process, so too do those state-law claims fail to satisfy the requirements of prudential standing." Defendants' Motion at 21.  The Report also ignored the fact that the Defendants identified each and every one of those DAPs' claims in Appendix C, filed concurrently with their motion.  Defendants' Motion at 21, 16, App. C; *see also* Defendants' Reply at 13 ("Specifically, the DAP claims identified in Appendix C do not fall within the 'zone of interests' identified in each state's statutes authorizing antitrust claims . . . .").  The state-law claims identified by the Defendants in Appendix C do not allege or establish that the Plaintiffs purchased CRT products in those states and dismissal of those claims is therefore proper for lack of prudential standing.  *See Valley Forge Christian Coll. v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 474-75 (1982); *Ass'n of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 153 (1970) (the prudential limitations on federal court jurisdiction require that, among other things, a plaintiff's claims "fall within 'the zone of interests to be protected or regulated by the statute or constitutional guarantee in question.'"); *see also Aquair Ventures, LLC v. Gulf Stream Coach, Inc.*, No. C-08-2903 SC, 2008 WL 4104218, at *2 (N.D. Cal. Sep. 4, 2008) ("Failure to satisfy any of the constitutional or prudential requirements precludes standing."); *Western Mining Council v. Watt*, 643 F.2d 618, 634 (9th Cir. 1981) (failure to allege standing is proper grounds for dismissal under 12(b)(6)).

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

As set forth in Appendix C, the DAPs' claims that fail to meet the zone-of-interest prudential standing requirement fall into two categories:  (1) DAPs who did not allege the purchase of a CRT Product in the state in which they filed a claim; and (2) DAPs who asserted only conclusory or insufficient allegations that they purchased or received CRT Products in a state without alleging sufficient facts to support the claim.

### 1.    DAPs Who Did Not Allege The Purchase Of A CRT Product In The State In Which They Filed A Claim Do Not Satisfy The Requirements Of Prudential Standing

The first category consists of:  (i) Magnolia Hi-Fi's claim under Minnesota law; (ii) Costco's claims under Arizona, Florida and Illinois law; and (iii) Polaroid's claim under California law.  *See* Defendants' Motion, Appendix C.  These DAPs either allege that they purchased CRT Products only at their headquarters or regional offices, or made no allegation as to the location of their purchases altogether.[6]   These claims, consequently, do not fall within the "zone of interests" of these states' antitrust statutes because the DAPs did not allege that they reside in, or purchased goods in, these specific states.  *See In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1026-27 (N.D. Cal. 2007); *In re Terazosin Hydrochloride Antitrust Litig.*, 160 F. Supp. 2d 1365, 1371 (S.D. Fla. 2001); *see also Pecover v. Elecs. Arts, Inc.*, 633 F. Supp. 2d 976, 984-85 (N.D. Cal. 2009) (dismissing putative class plaintiffs' claims for lack of standing in 18 states because the class plaintiffs did not reside in or purchase the product at issue in those states).  Further, each of the state statutes under which these DAPs filed their claims create causes of action to remedy antitrust conspiracies that affect commerce ***within*** each of those respective states.[7]   Thus, a company that purchased a television in one state cannot avail itself of a

---

[6] *See* Best Buy Compl. ¶ 21 ("MHF's purchasing of CRT Products took place in its headquarters in Kent, Washington"); Costco Compl. ¶ 13 ("Costco purchase orders were created in and issued from, regional offices located in multiple states including California, Washington, Texas, Virginia, and Georgia."); Polaroid Compl. ¶ 9 (alleging no location for the purchase of their CRT Products).

[7] *See* Ariz. Rev. Stat. § 44-1402 ("A contract, combination or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce, any part of which is ***within this state***, is unlawful."); Cal. Bus. & Prof. Code § 16720(d) ("To fix at any standard or figure, whereby its price to the public or consumer

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

second state's antitrust statute because that purchase is not within the "zone of interests" that the second state's legislature sought to protect.  *See Valley Forge*, 454 U.S. at 475. Consequently, the Report erred in denying the Defendants' motion as to these deficient state-law claims without considering the Defendants' arguments as to these claims.

2. **DAPs Who Asserted Only Conclusory Or Insufficient Allegations That They Purchased Or Received A CRT Product In The State In Which They Filed A Claim Do Not Satisfy The Requirements Of Prudential Standing**

The second group of DAP claims includes those alleged by:  (i) Circuit City under California and Illinois law; (ii) CompuCom under New York law; (iii) Electrograph under California and New York law; (iv) Office Depot under California law; and (v) Polaroid under Minnesota law.  The DAPsco bringing these claims ambiguously assert purchases in these states, but do so either by alleging a purchase in a conclusory fashion without asserting sufficient facts, or by improperly construing receipt of CRT Products as a purchase of CRT Products.[8]  *See Kam Lee Yuen Trading Co., Inc. v. Hocean, Inc.*, No. 10-0455 SC, 2010 WL 3155812, at *2 (N.D. Cal. Aug. 9, 2010) (holding that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice") (citing

shall be in any manner controlled or established, any article or commodity of merchandise, produce or commerce intended for sale, barter, use or consumption *in this State*"); Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq.*; *see also Delgado v. J.W. Courtesy Pontiac GMC-Truck, Inc.*, 693 So.2d 602, 606 (Fla. App. 2 Dist. 1997) (the purpose of FDUTPA is to create simplified statutory cause of action which bestows additional substantive remedies "*on the citizens of this state* to recover economic damages. . . ."); 740 Ill. Comp. Stat. 10/2, *et seq*. ("The purpose of this Act is to promote the unhampered growth of commerce and industry *throughout the State*"); Minn. Stat. § 325D.53, *et seq*. ("the following, when performed by a person *within the jurisdiction of this state, and directly affecting business in this state* . . ., shall be deemed to restrain trade or commerce unreasonably and are unlawful") (emphases added).

[8] *See* CompuCom Compl. ¶ 11 ("Plaintiff purchased CRT Products from non-defendant vendors which contained price-fixed CRTs manufactured by Defendants and their co-conspirators in New York . . . ."), ¶ 18 ("Plaintiff sent purchase orders *to* various CRT Product manufacturers in each of these states and sent payment *to* these manufacturers in each of these states.") (emphasis added); Electrograph Am. Compl. ¶¶ 15-16 ("In particular Defendants' and their co-conspirators' conspiracy directly and substantially affected the price of CRT Products purchased in these states."); Office Depot Compl. ¶¶ 17-19 ("Office Depot . . . purchased CRT products in . . . California."); Polaroid Compl. ¶ 18 ("Polaroid Consumer Electronics, LLC operated and did business in Minnesota, indirectly purchased CRT Products from one or more of the Defendants or their co-conspirators . . . .").

DEFENDANTS' JOINT OBJECTIONS TO THE REPORT AND RECOMMENDATIONS REGARDING
DEFENDANTS' MOTIONS TO DISMISS DIRECT ACTION COMPLAINTS
Case No. 07-5944 SC
MDL No. 1917
13

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI, 2011 WL 3809767, at *3 (N.D. Cal. Aug. 29, 2011) (holding that a plaintiff cannot demonstrate the purchase of allegedly price-fixed goods by alleging mere receipt of the goods).

The second category also includes CompuCom's New York claim, Electrograph's California and New York claims, Office Depot's California claim, and Polaroid's Minnesota claim.  These DAPs' assertions of purchase of CRT Products are merely conclusory because they seek to establish standing without alleging that they issued purchase orders from or received and paid invoices in these states.  *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 3809767, at *2-3   (finding that the plaintiff had not sufficiently established purchases in states under whose laws it filed claims because it had not issued purchase orders, or received or paid invoices in those states).  Without making allegations that these DAPs resided in or made purchases in those states, these DAPs fail to establish that their purchases are within the zone of interest of the statutes their claims invoke.

Additionally, Circuit City's claims under California and Illinois law fall into the second category because those claims rely on insufficient allegations to establish the location of their CRT Product purchases.  Whereas other DAPs attempt to assert a purchase without supporting facts, Circuit City misconstrues the receipt of CRT Products in California and Illinois as purchases of those products in those states.[9]  The Northern District of California, however, has held that there is no such correlation between receipt of goods and their purchase.  *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 3809767, at *3 (finding that the plaintiffs did not adequately make purchases when plaintiffs only received deliveries).  Without sufficient allegations to support the purchase of CRT Products in California and Illinois, Circuit City's claims fail to establish prudential standing.

---

[9] Circuit City ¶ 9 ("These purchases took place throughout the United States, including California and Illinois, where Circuit City's multiple regional distribution centers *received* CRT Products manufactured by defendants….") (emphasis added), ¶¶ 21-22 ("Circuit City received shipments of and took title to CRT Products at its distribution centers in [California and Illinois]…and therefore purchased products in [California and] Illinois….").

DEFENDANTS' JOINT OBJECTIONS TO THE REPORT AND RECOMMENDATIONS REGARDING
DEFENDANTS' MOTIONS TO DISMISS DIRECT ACTION COMPLAINTS
Case No. 07-5944 SC
MDL No. 1917
14

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

Finally, the second category also includes claims that make conclusory allegations and contradictory assertions regarding the location of the DAPs' CRT Product purchases. Those claims include: (i) Target's claims in Arizona, California, Florida, Illinois, Iowa, Kansas, Michigan, New York, North Carolina, and Wisconsin; (ii) Sears' claims in Arizona, California, Florida, Massachusetts, Michigan, Minnesota, Mississippi, Nebraska, Nevada, New Mexico, New York, North Carolina, and Wisconsin; (iii) Kmart's claims in California, Florida, Illinois, Minnesota, Nebraska, Nevada, and North Carolina; (iv) Old Comp's claims in California and Illinois; and (v) RadioShack's claims in California, Massachusetts, and Mississippi. These DAPs allege they made all of their CRT Product purchases from their respective headquarters.[10] Yet, in direct contradiction, they also allege that they purchased CRT Products at distribution centers located in the other states in which they filed antitrust claims.[11] Even at the motion to dismiss stage, the Court cannot accept these DAPs' contradictory statements as true. *See Kaui Scuba Ctr., Inc. v. PADI Americas, Inc.*, No. SACV 10-1579 DOC (MANx), 2011 WL 2711177, at *5 n. 5 (C.D. Cal. July 13, 2011) ("While the Court must take Plaintiff's factual allegations as true, contradictory allegations cannot stand."). The Report failed to consider the merits of the Defendants' argument as to each of these claims, which were all set forth in Appendix C, and the Court should therefore disregard the Report's recommendation to deny the Defendants' motion as to these claims.

Furthermore, the Report recognized that, with respect to these claims, the DAPs have not set forth sufficient factual allegations with respect to prudential standing. Specifically, the Report stated that perhaps the Defendants cannot "demonstrate which of plaintiffs' alleged claims, and under the laws of which states, are allegedly deficient . . . because of the

---

[10] *See* Target Am. Compl. ¶ 17 ("*[A]ll* Target purchase orders for CRTs were issued from Minnesota and *all* invoices were sent to Target in Minnesota."); ¶ 21 ("*[A]ll* purchase orders for [Sears and Kmart] CRTs were issued by those companies from Illinois and Michigan respectively and *all* invoices were sent to those companies in Illinois and Michigan respectively."); ¶ 26 ("CompUSA issued *all* of its purchase orders for CRTs from Texas and received invoices for those orders in Texas."); ¶ 36 ("*[A]ll* RadioShack purchase orders for CRTs were issued from Texas and *all* invoices were sent to RadioShack in Texas.") (emphasis added).

[11] Target Am. Compl. ¶¶ 18, 268-73, 275, 281-83 (Target); ¶¶ 22, 268-70, 274-83 (Sears); ¶¶ 22, 268, 270-71, 276, 278-79, 282 (Kmart); ¶¶ 27, 268, 271 (Old Comp); ¶¶ 37, 268, 274, 277 (RadioShack).

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

present allegations in the pleadings . . . ."  Report at 8.  This very ambiguity in the pleadings is by itself grounds for dismissal of the DAPs' state-law claims at issue, as it is the DAPs who bear the burden on this issue.  The Supreme Court has made clear that, "[i]n every federal case, the party bringing the suit must establish standing to prosecute the action."  *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004) (reversing Ninth Circuit decision because plaintiff lacked prudential standing).  It is the DAPs' burden to show that they are within the zone of interests of a particular statute to satisfy the prudential standing requirements, not the Defendants' burden to show that the DAPs are outside the zone of interests.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 883 (1990); *see also Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) (plaintiff must "demonstrate standing for each claim he seeks to press").  The DAPs' failure to demonstrate that their claims are within the zone of certain state-law interests requires this Court to hold that these DAP claims do not meet the requirements of prudential standing, and that the Special Master should have recommended dismissal of those claims.

**B.  The Report Erroneously Concluded That The DAPs Satisfy The Prudential Standing Requirement Of Asserting Their Own Legal Interests For All Of Their State-Law Claims**

The Report also erred in concluding that "the pleadings here allege that the direct action plaintiffs are asserting their own legal rights, and that their grievances are for their own alleged losses and are not generalized."  Report at 7.  Because the purchase of an allegedly price-fixed good is the relevant occurrence in antitrust cases, only an entity that purchased the alleged price-fixed CRT Products can assert a claim on his own legal right.  *See In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d at 1028 (dismissing state-law claims because plaintiffs did not establish that they purchased price-fixed goods in California); *In re Terazosin Hydrochloride Antitrust Litig.*, 160 F. Supp. 2d at 1371-72 (dismissing plaintiffs' state-law claims for lack of standing because plaintiffs that did not purchase the alleged price-fixed product in the states where they filed antitrust claims would be asserting the rights of third parties in those states); *see also MAI Systems Corp. v. UIPS*,

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

856 F. Supp. 538, 541 (N.D. Cal. 1994) (dismissing defendant's claims because the defendant was not a party to the challenged licensing agreements and thus was in effect bringing claims on behalf of plaintiff's customers, not on behalf of itself). The DAPs' state-law claims identified in Appendix C do not establish that that the DAPs purchased CRT Products in the relevant states. Accordingly, the DAPs have not established that they can assert their own legal rights in those states and have not established prudential standing on this ground as well. *Valley Forge Christian Coll.*, 454 U.S. at 474-75.

## III. ALMOST ALL OF DAPS' STATE-LAW CLAIMS ARE TIME BARRED AS A MATTER OF LAW

On November 8, 2007, the European Commission publicly announced that it had carried out unannounced inspections of CRT manufacturers concerning potential anticompetitive violations. Only a few days later, the first IPPs filed suit, expressly referencing a series of articles dated November 8 and 9, 2007, that discussed that authorities on three continents were investigating a potential CRT conspiracy to fix prices.[12] In the ensuing weeks, several other plaintiffs also filed lawsuits alleging that the Defendants were engaged in a conspiracy to fix CRT prices. Despite the widespread publicity in November 2007 of an alleged conspiracy involving CRT pricing, DAPs inexplicably waited until November 14, 2011 — ***more than four years later*** — to file their respective lawsuits. The Report correctly acknowledges that nearly all the DAPs' state-law claims are untimely unless the statute of limitations was tolled after November 8, 2007.[13] Report at 6. However, the Report mistakenly recommends that Defendants' "joint motion to dismiss based upon the state statutes of limitation be denied" because, according to the Report, the DAPs' fraudulent concealment and class tolling allegations raise factual issues that could not be decided on a Rule 12 motion. *Id.* at 7.

---

[12] Complaint ¶¶ 29-33, *Kindt v. Matsushita Electric Industrial Co., Ltd., et al.*, No. 1:07-10322 (S.D.N.Y.) [Dkt. No. 1 (Nov. 13, 2007)].

[13] The Defendants moved to dismiss nearly all the state-law claims of all DAPs on statute of limitations grounds. The only exceptions are the Electrograph and Polaroid complaints, which were filed before November 8, 2011, and claims asserted under New York and Wisconsin law.

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The Report errs in its application of both the fraudulent concealment and class tolling doctrines.

First, the Report misapplies the fraudulent concealment doctrine.  That tolling doctrine does not apply — and any tolling ceases — because the DAPs were on at least inquiry notice of potential violations more than four years before they filed their complaints. The fraudulent concealment standard applied by the Report is not the standard in the Ninth Circuit.  Application of the controlling Ninth Circuit standard makes clear that any fraudulent concealment tolling ceased on November 8, 2007, when the DAPs were on at least inquiry notice of potential antitrust claims, and that the DAPs' state-law claims are therefore time barred.  This is particularly true for those state-law claims that apply a three-year, rather than four-year, statute-of-limitations period, which the Report does not address at all.[14]

Second, the Report also incorrectly concludes that factual issues are raised regarding the states' application of the class tolling doctrine in a "cross-jurisdictional" context.  In particular, the DAPs claim that their state-law claims were tolled by the filing of the DPP complaint, which asserts claims only under federal antitrust law.  Various states, however, have concluded that class tolling does *not* apply where the earlier filed putative class action asserted claims under the laws of a different sovereign, *i.e.*, in a cross-jurisdictional context. This issue is a matter of law that is appropriately decided on a motion to dismiss.  For this reason as well,  the Report's recommendation to deny the Defendants' Motion to Dismiss on the ground that the DAPs' state-law claims are time barred should not be adopted.[15]

---

[14] Specifically, DAP's Kansas and Mississippi claims.  Kan. Stat. Ann. § 60-512(2); Miss. Code Ann. § 15-1-49.

[15] *See* Appendix B to Defendants' Motion, which sets forth each of the DAPs' state-law antitrust and consumer protection claims that are untimely.  Defendants also now accept the DAPs' New York Donnelly Act claim is not time barred due to the pendency of the federal CRT investigation.

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### A.    The Fraudulent Concealment Doctrine Does Not Apply

Fraudulent concealment may toll the statute of limitations when the plaintiff can prove that the defendants "actively misled him, [and] that [the plaintiff] had *neither actual nor constructive knowledge* of the facts constituting his claim for relief despite his diligence in trying to discover the pertinent facts." *Rutledge v. Boston Woven Hose & Rubber Co.*, 576 F.2d 248, 249-50 (9th Cir. 1978) (emphasis added).  Importantly,  the Ninth Circuit "do[es] not require a plaintiff to actually discover its antitrust claims before the statute of limitations begins to run." *Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1062 (9th Cir. 2012). "It is enough that the plaintiff 'should have been alerted to facts that, following duly diligent inquiry, could have advised it of its claim.'" *Id.* (quoting *Conmar Corp. v. Mitsui & Co. (U.S.A.), Inc.*, 858 F.2d 499, 502 (9th Cir. 1988)).  In other words, fraudulent tolling ceases, and the statute begins to run, when the DAPs "should have been alerted to facts" that would cause a reasonable person to inquire, and if that inquiry would have "advised it of its claim" within the limitations period. *Id.*

In this case, there can be no doubt that — as a matter of law — the publicity surrounding the raids of certain Defendants on November 8, 2007, in connection with a worldwide antitrust investigation of CRT pricing, imposed on the DAPs a duty to inquire. Such an inquiry would have provided them information to file their complaints.  A plaintiff is placed on inquiry notice of her claims "when enough red flags had flown *that a reasonably diligent person would have investigated and acted*."  *GO Computer, Inc. v. Microsoft Corp.*, 508 F.3d 170, 172 (4th Cir. 2007) (emphasis added).  After all, more than 30 complaints were filed within six months of the November 8, 2007 raids, including one within less than a week.   Many of these complaints specifically identify the raids as

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

triggering their notice of potential claims.[16]   In fact, some DAPs even point to the government investigations as triggering their suspicions.[17]

The Report does not correctly apply the controlling Ninth Circuit "inquiry notice" standard.  It states that, in determining whether the fraudulent concealment doctrine applies, "the issue is whether the Court can say *as a matter of law* that plaintiffs had notice by November 8, 2007 and could have filed their complaints within the six-day period up to November 14, 2007."  Report at 6-7 (emphasis in original).  In other words, the Report suggests that fraudulent concealment tolling continues until the DAPs had (i) constructive notice of their specific claims; and (ii) enough time to prepare and file their complaints. Applying that erroneous legal standard, the Report concludes that factual issues surrounding the fraudulent concealment doctrine preclude the Rule 12 relief that the Defendants seek. However, that is not the governing legal standard that applies.  As shown above, in the Ninth Circuit, "[w]here a plaintiff's suspicions have been or should have been excited, there can be no fraudulent concealment where he could have then confirmed his earlier suspicion by diligent pursuit of further information."  *Conmar*, 858 F.2d at 504 (internal quotations omitted).

In this case, the applicable limitations periods began running on November 8, 2007, when the DAPs should have reasonably been on inquiry notice of their potential claims, according to the governing legal standard in the Ninth Circuit.  *See GO Computer*, 508 F.3d at 179 ("[I]t bears emphasis that the date of inquiry notice is not a filing deadline.  It is only the date on which a cause of action accrues and the four year period allotted [ . . . ] for a plaintiff to investigate begins.").  As of that date, a reasonably diligent person would have started investigating her claims, as is conclusively established by the undisputed fact that

---

[16] *See, e.g.,* Complaint ¶ 94, *Orion Home Systems, LLC v. Chunghwa Picture Tubes, Ltd., et al.*, Case No. 3:08-cv-00178-SC (N.D. Cal.) [Dkt. No. 1] (Jan. 1, 2008).

[17] *See, e.g.,* Complaint ¶ 216, *CompuCom Systems, Inc., v. Hitachi, Ltd., et al.*, Case No. 11-cv-06396 (N.D. Cal.) [Dkt. No. 1] (Nov. 14, 2011); Complaint ¶ 160, *Costco Wholesale Corp. v. Hitachi, Ltd., et al.*, Case No. 11-cv-06397 (N.D. Cal.) [Dkt. No. 1] (Nov. 14, 2011).

DEFENDANTS' JOINT OBJECTIONS TO THE REPORT AND RECOMMENDATIONS REGARDING
DEFENDANTS' MOTIONS TO DISMISS DIRECT ACTION COMPLAINTS
Case No. 07-5944 SC
MDL No. 1917
20

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

several plaintiffs filed lawsuits in the weeks immediately following the European Commission's announcement — and some within just a few days.  *See Hexcel*, 681 F.3d at 1060 ("Full knowledge often awaits discovery, and the very notion of 'inquiry notice' implies something less than that.") (quoting *GO Computer*, 508 F.3d at 178).  Because the undisputed facts that other plaintiffs were able to file suit establishes that "a reasonably diligent person would have investigated and acted" on November 8, 2007, or immediately thereafter, thereby uncovering facts advising the DAPs of their claims, the fraudulent concealment doctrine does not toll the DAPs' claims after that date.  *See GO Computer*, 508 F.3d at 172.  ***Almost all*** of the DAPs did not file their claims until November 14, 2011, four years and six days later.  Their state-law claims subject to four-year[18] or three-year[19] statutes of limitation are therefore time barred.

## B.   DAPs' Class Tolling Arguments Should Be Rejected As A Matter of Law

Filing a federal class action tolls the federal statute of limitations on the individual claims of putative class members pending a decision on class certification.  *Crown Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345, 353-54 (1983); *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554 (1974).  This is known as the class action tolling doctrine.  Relying on that doctrine, the DAPs argue that their ***state-law*** antitrust claims were tolled during the period that the DPP complaint — which asserts claims only under ***federal antitrust law*** — was pending before the Court.  Opp. at 18-20.  That argument should be rejected as a matter of law, however, because "cross-jurisdictional" class tolling (*i.e.*, tolling based on a class

---

[18] Arizona, California, Florida, Illinois, Iowa, Massachusetts, Michigan, Minnesota, Nebraska, Nevada, New Mexico, New York, North Carolina, and Washington.  Ariz. Rev. Stat. §§ 44-1410(b); Cal. Bus. & Prof. Code § 16750.1; Cal. Bus. & Prof. Code § 17208; Fla. Stat. Ann. § 95.11(3)(f); 740 Ill. Comp. Stat. § 10/7(2); Iowa Code Ann. § 553.16; Mass. Gen. Laws Ann. ch. 260 § 5A; Mich. Comp. Laws Ann. § 445.781; Minn. Stat. Ann. § 325D.64; Neb. Rev. Stat. § 25-206; Nev. Rev. Stat. § 598A.220; N.M. Stat. Ann. § 57-1-12; N.Y. Gen. Bus. Law § 340(5); N.C. Gen. Stat. § 75-16.2; R.C.W. § 19.86.120.

[19] Kansas and Mississippi.  Kan. Stat. Ann. § 60-512(2); Miss. Code Ann. § 15-1-49.  The Report addresses only claims subject to a four-year limitations period.  *See* Report at 6-7 (noting that the question involved was whether the publicity surrounding the worldwide investigations would have allowed the DAPs to file by November 14, 2007, four years before they actually filed).  The arguments here apply *a fortiori* to the shorter three-year statutes of limitation applicable in Kansas and Mississippi, which were not addressed in the Report.

---

DEFENDANTS' JOINT OBJECTIONS TO THE REPORT AND RECOMMENDATIONS REGARDING
DEFENDANTS' MOTIONS TO DISMISS DIRECT ACTION COMPLAINTS
Case No. 07-5944 SC
MDL No. 1917

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

complaint asserting claims under the laws of a different sovereign) is not permitted.[20] Without issuing a recommendation regarding the DAPs' class tolling arguments, the Report concluded that the public policy concerns of incorporating class-jurisdictional tolling and "how they might apply to the facts and to the law of each state, are not a basis on which the Court should now rule as a matter of law."  Report at 7.  This is in error because the inapplicability of cross-jurisdictional class tolling to the DAPs' untimely state-law claims is an issue of law appropriate for a motion to dismiss.

Contrary to the Report's conclusion, courts routinely hold that cross-jurisdictional tolling is disallowed as a matter of law.  For example, the Virginia Supreme Court held that "the applicability of the statute of limitations *is a purely legal question* of statutory construction" in ruling that Virginia law does not recognize cross-jurisdictional tolling. *Casey v. Merck & Co.*, 722 S.E.2d 842, 844 (Va. 2012) (emphasis added).  Similarly, federal courts have granted motions to dismiss state-law claims as time barred because the states at issue do not expressly recognize cross-jurisdictional class tolling.  *See, e.g., Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1025 (9th Cir. 2008) (declining to import doctrine of cross-jurisdictional tolling into California law because the California Supreme Court has not adopted the doctrine and dismissing state warranty claims); *Soward v. Deutsche Bank AG*, 814 F. Supp. 2d 272, 280-82 (S.D.N.Y. 2011) (declining to import the doctrine of cross-jurisdictional tolling into New York law and dismissing state fraud-based and fiduciary duty claims as timed barred under the accrual prong); *In re Urethane Antitrust Litig.*, 663 F. Supp. 2d 1067, 1081-83 (D. Kan. 2009) (declining to import cross-jurisdictional tolling into Tennessee's and Indiana's statutes of limitations absent express authority recognizing the doctrine and dismissing these state-law claims as time barred).  Here, there is no legal authority suggesting that any of the seventeen states under whose law the DAPs assert their state-law claims have adopted the doctrine of cross-jurisdictional

---

[20] *See Sawyer v. Atlas Heating & Sheet Metal Works, Inc.*, 642 F.3d 560, 562 (7th Cir. 2011) ("[S]tate and federal antitrust law differ.  They create different legal claims.  That the period of limitations may be tolled for one claim (state antitrust law) does not imply that it is tolled for another (federal antitrust law).").

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

tolling.    Reply at 8-10.    As a result, the doctrine of cross-jurisdictional tolling is inapplicable, as a matter of law, to the DAPs' state-law claims.

The policy reasons underlying the class action tolling doctrine also counsel against applying cross-jurisdictional tolling here.  Specifically, the class action tolling set forth in *American Pipe* promotes principles of "economy and efficiency of litigation" because it avoids requiring all putative class members to file individual claims to protect themselves against the possibility that the class will not be certified.  414 U.S. at 553.  But the class tolling doctrine should not apply to plaintiffs who would not be parties to an earlier filed class action if it continued as a class action or "filed separate suits prior to a decision being reached on the class certification issue" because it fails to promote the efficiency and economy of litigation purposes of the doctrine.  *See Rahr v. Grant Thornton LLP*, 412 F. Supp. 2d 793, 799-800 (N.D. Tex. 2000); *see also Wachovia Bank & Trust Co. v. Nat'l Student Mktg. Corp.*, 461 F. Supp. 999, 1011-12 (D.D.C. 1978), *rev'd on other grounds*, 650 F.2d 342, 346 n.7 (D.C. Cir. 1980) (holding that allowing tolling when plaintiff filed a separate suit before class certification had been decided "would sanction duplicative suits and violate the policies behind *American Pipe*.").  Here, allowing the DAPs to benefit from class action tolling despite bringing separate suits prior to a decision on DPP class certification would contravene principles of judicial economy and efficiency.  As a result, the policy considerations are straightforward, appropriate for a motion to dismiss, and provide another ground for not applying cross-jurisdictional tolling to the DAPs' state-law claims.

Whether a state has expressly adopted the cross-jurisdictional tolling doctrine is a matter of law — rather than an issue of fact.  Accordingly, the Report erred in failing to address the inapplicability of the doctrine to the DAPs' time barred state claims.  This Court should reach this legal issue now and hold that the DAPs' state-law claims at issue are time barred.

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

## IV. THE REPORT ERRED IN HOLDING THAT THE DAPS' FEDERAL ANTITRUST LAW CLAIMS FALL UNDER THE "OWNED OR CONTROLLED" EXCEPTION TO *ILLINOIS BRICK*

Finally, the Report erred in recommending that the Court deny the Defendants' motion to dismiss "to the extent the motion challenges the [DAPs'] right to proceed under the so-called 'owned or controlled' exception to *Illinois Brick*." Report at 5.  Because the DAPs did not directly purchase an allegedly price-fixed product (*i.e.*, a CRT), the DAPs cannot establish antitrust standing unless they can show that they fall within an exception to *Illinois Brick* and that they purchased an allegedly price-fixed product from an intermediary that is owned or controlled by a Defendant.  The DAPs, however, never claim to have purchased a CRT from anybody and therefore cannot establish federal antitrust standing.  They only claim to have purchased finished products — televisions and monitors — that in turn contained the allegedly price-fixed CRTs.  The Defendants recognize that this Court has already ruled in this MDL that the "owned or controlled" exception to *Illinois Brick* can apply to the purchase of a finished product from an entity allegedly owned or controlled by an allegedly conspiring Defendant.[21]  The Defendants, however, respectfully believe that this ruling was wrong, as a matter of law, and therefore make this objection to continue to preserve this issue for appeal.

---

[21] Whether the purchaser can prove what is needed to satisfy the factual contours of that exception is another question.  *See* November 29 Order [Dkt. No. 1470] at 22.  The Report found that the issues of "the adequacy of" the DAPs' allegations regarding the owner-or-controlled exception and "whether [the DAPs] will be able to prove what is needed to prevail under the owner-or-controlled exception were not currently before the Court.  *See* Report at 5.

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1

2   Dated:  May 31, 2013

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

**WHITE & CASE** LLP

By: */s/ Lucius B. Lau*
Christopher M. Curran (*pro hac vice*)
ccurran@whitecase.com
Lucius B. Lau (*pro hac vice*)
alau@whitecase.com
Dana E. Foster (*pro hac vice*)
defoster@whitecase.com
**WHITE & CASE LLP**
701 Thirteenth Street, N.W.
Washington, DC  20005
tel.: (202) 626-3600
fax: (202) 639-9355

*Attorneys for Defendants Toshiba Corporation,
Toshiba America, Inc., Toshiba America
Information Systems, Inc., Toshiba America
Consumer Products, L.L.C., and Toshiba America
Electronic Components, Inc.*

WINSTON & STRAWN LLP

By: */s/ Jeffrey L. Kessler*
JEFFREY L. KESSLER (*pro hac vice*)
jkessler@winston.com
ALDO A. BADINI (257086)
abadini@winston.com
A. PAUL VICTOR (*pro hac vice*)
pvictor@winston.com
EVA COLE (*pro hac vice*)
EWCole@winston.com
MOLLY M. DONOVAN (*pro hac vice*)
MMdonovan@winston.com
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, NY 10166-4193
Telephone: (212) 294-4692
Facsimile: (212) 294-4700

STEVEN A. REISS (*pro hac vice*)
steven.reiss@weil.com
DAVID L. YOHAI (*pro hac vice*)
david.yohai@weil.com
ADAM C. HEMLOCK (*pro hac vice*)
adam.hemlock@weil.com
DAVID E. YOLKUT (*pro hac vice*)
david.yolkut@weil.com
**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, New York 10153-0119
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

GREGORY D. HULL (57367)
greg.hull@weil.com
**WEIL, GOTSHAL & MANGES LLP**
201 Redwood Shores Parkway
Redwood Shores, California 94065-1175
Telephone: (650) 802-3000
Facsimile: (650) 802-3100

*Attorneys for Defendants Panasonic
Corporation of North America, MT Picture
Display Co., Ltd. and Panasonic Corporation
(f/k/a Matsushita Electric Industrial Co.)*

MORGAN, LEWIS & BOCKIUS LLP

By: */s/ Kent M. Roger*
KENT M. ROGER (SBN 95987)
kroger@morganlewis.com
MICHELLE PARK CHIU (SBN 248421)
mchiu@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
One Market, Spear Street Tower
San Francisco, California 94105-1126
Telephone: (415) 442-1000
Facsimile: (415) 442-1001

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

DEFENDANTS' JOINT OBJECTIONS TO THE REPORT AND RECOMMENDATIONS REGARDING
DEFENDANTS' MOTIONS TO DISMISS DIRECT ACTION COMPLAINTS
Case No. 07-5944 SC
MDL No. 1917

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1   J. CLAYTON EVERETT, JR. (*pro hac vice*)
2   jeverett@morganlewis.com
    SCOTT A. STEMPEL (*pro hac vice*)
3   sstempel@morganlewis.com
4   **MORGAN, LEWIS & BOCKIUS LLP**
5   111 Pennsylvania Avenue, NW
    Washington, DC 20004
6   Telephone: (202) 739-3000
    Facsimile: (202) 739-3001
7

8   *Attorneys for Defendants Hitachi, Ltd., Hitachi*
    *Displays, Ltd., Hitachi Asia, Ltd., Hitachi*
9   *America, Ltd., and Hitachi Electronic Devices*
10  *(USA), Inc.*

11

12  MUNGER, TOLLES & OLSON LLP

13  By: */s/ Hojoon Hwang*
14  HOJOON HWANG
    Hojoon.Hwang@mto.com
15  **MUNGER, TOLLES & OLSON LLP**
16  560 Mission Street, Twenty-Seventh Floor
    San Francisco, CA 94105
17  Telephone: (415) 512-4000

18
19  WILLIAM D. TEMKO
    William.Temko@mto.com
20  JONATHAN E. ALTMAN
    Jonathan.Altman@mto.com
21  **MUNGER, TOLLES & OLSON LLP**
22  355 South Grand Avenue, Thirty-Fifth Floor
    Los Angeles, California 90071
23  Telephone: (213) 683-9100

24
25  *Attorneys for Defendants LG Electronics, Inc.;*
    *LG, LG Electronics USA, Inc.,; and LG*
26  *Electronics Taipei Co., Ltd.*

27

28

DEFENDANTS' JOINT OBJECTIONS TO THE REPORT AND RECOMMENDATIONS REGARDING
DEFENDANTS' MOTIONS TO DISMISS DIRECT ACTION COMPLAINTS
Case No. 07-5944 SC
MDL No. 1917

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

SHEPPARD MULLIN RICHTER &
HAMPTON

By: */s/ Gary L. Halling*
GARY L. HALLING (SBN 66087)
ghalling@sheppardmullin.com
JAMES L. MCGINNIS (SBN 95788)
jmcginnis@sheppardmullin.com
MICHAEL W. SCARBOROUGH (SBN 203524)
mscarborough@sheppardmullin.com
**SHEPPARD MULLIN RICHTER &
HAMPTON**
Four Embarcadero Center, 17th Floor
San Francisco, California  94111
Telephone:  (415) 434-9100
Facsimile:  (415) 434-3947

*Attorneys for Defendants Samsung SDI America,
Inc. Samsung SDI Co., Ltd.; Samsung SDI
(Malaysia) SDN. BHD.; Samsung SDI Mexico
S.A. DE C.V.; Samsung SDI Brasil Ltda.;
Shenzen Samsung SDI Co., Ltd. And Tianjin
Samsung SDI Co., Ltd.*

O'MELVENY & MYERS LLP

By: */s/ Ian Simmons*
IAN SIMMONS (*pro hac vice*)
isimmons@omm.com
BENJAMIN G. BRADSHAW (SBN 189925)
bbradshaw@omm.com
KEVIN D. FEDER (SBN 252347)
kfedera@omm.com
**O'MELVENY & MYERS LLP**
1625 Eye Street, NW
Washington, DC 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414

*Attorneys for Defendants Samsung Electronics
Co., Ltd. and Samsung Electronics America, Inc.*

BAKER BOTTS LLP

By: */s/ Jon V. Swenson*
JON V. SWENSON (SBN 233054)
jon.swenson@bakerbotts.com
**BAKER BOTTS LLP**
1001 Page Mill Road
Building One, Suite 200
Palo Alto, CA 94304
Telephone: (650) 739-7500
Facsimile: (650) 739-7699

John M. Taladay (*pro hac vice*)
john.taladay@bakerbotts.com
Joseph Ostoyich (*pro hac vice*)
joseph.ostoyich@bakerbotts.com
**BAKER BOTTS LLP**
1299 Pennsylvania Avenue N.W.
Washington, DC 20004-2400
Telephone: (202) 639-7700
Facsimile: (202) 639-7890

*Attorneys for Defendants Koninklijke Philips*
*Electronics N.V. and Philips Electronics North*
*America Corporation*

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

GIBSON, DUNN & CRUTCHER LLP

By: */s/ Rachel S. Brass*
Rachel S. Brass (SBN 219301)
rbrass@gibsondunn.com
Joel S. Sanders (SBN 107234)
jsanders@gibsondunn.com
Austin V. Schwing (SBN 211696)
**GIBSON, DUNN & CRUTCHER LLP**
555 Mission Street, Suite 3000
San Francisco, California 94105
Tel: (415) 393-8200
Fax: (415) 393-8306

*Attorneys for Defendant Chunghwa Picture Tubes, Ltd. and Chunghwa Picture Tubes (Malaysia) as to the Target Am. Compl., P.C. Richard Compl., Tweeter Compl., CompuCom Compl., Interbond Compl., Costco Compl., Office Depot Compl. and Best Buy Compl. only*

Pursuant to Local Rule 5-1(i)(3), the filer attests that concurrence in the filing of this document has been obtained from each of the above signatories.

DEFENDANTS' JOINT OBJECTIONS TO THE REPORT AND RECOMMENDATIONS REGARDING
DEFENDANTS' MOTIONS TO DISMISS DIRECT ACTION COMPLAINTS
Case No. 07-5944 SC
MDL No. 1917
30

1

## <u>CERTIFICATE OF SERVICE</u>

2        On May 31, 2013, I caused a copy of the "DEFENDANTS' JOINT OBJECTIONS

3  TO THE REPORT AND RECOMMENDATIONS REGARDING DEFENDANTS'

4  MOTIONS TO DISMISS DIRECT ACTION COMPLAINTS" to be electronically filed via

5  the Court's Electronic Case Filing System, which constitutes service in this action pursuant

6  to the Court's order of September 29, 2008.

7

8

9                     By:  <u> /s/ Lucius B. Lau        </u>

10                        Lucius B. Lau (*pro hac vice*)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

---

DEFENDANTS' JOINT OBJECTIONS TO THE REPORT AND RECOMMENDATIONS REGARDING
DEFENDANTS' MOTIONS TO DISMISS DIRECT ACTION COMPLAINTS
Case No. 07-5944 SC
MDL No. 1917