# DOCUMENT 1

1    IAN SIMMONS (*pro hac vice*)
     Email: isimmons@omm.com
2    BENJAMIN G. BRADSHAW (SBN 189925)
     Email: bbradshaw@omm.com
3    KEVIN D. FEDER (SBN 252347)
     Email: kfeder@omm.com
4    O'MELVENY & MYERS LLP
     1625 Eye Street, NW
5    Washington, D.C. 20006-4001
     Telephone: (202) 383-5300
6    Facsimile: (202) 383-5414

7    Attorneys for Defendants
     **SAMSUNG ELECTRONICS CO., LTD.**
8    **SAMSUNG ELECTRONICS AMERICA, INC.**

9    [Additional moving defendants and counsel listed in signature block]

10
                        **UNITED STATES DISTRICT COURT**
11
                      **NORTHERN DISTRICT OF CALIFORNIA**
12
                          **SAN FRANCISCO DIVISION**
13

14   | IN RE: CATHODE RAY TUBE (CRT) | Case No. 3:07-cv-05944 SC |
     | ANTITRUST LITIGATION | |
15   | | MDL No. 1917 |

16   This Document Relates To:

17   ALL DIRECT ACTION COMPLAINTS

     **DEFENDANTS' JOINT NOTICE OF
     MOTION AND MOTION TO DISMISS
     AND FOR JUDGMENT ON THE
     PLEADINGS AS TO CERTAIN
     DIRECT ACTION PLAINTIFFS'
     CLAIMS AND MEMORANDUM OF
     LAW IN SUPPORT**

     [Proposed] Order Granting Defendants'
     Joint Motion to Dismiss and for Judgment
     on the Pleadings as to Certain Direct Action
     Plaintiffs' Claims Filed Concurrently
     Herewith

     Date: November 30, 2012, 10:00 a.m.
     (tentative)
     Place: JAMS Resolution Center
     Special Master: Hon. Charles A. Legge
     (Ret.)

**NOTICE OF MOTION AND MOTION**

To all parties and their attorneys of record:

Please take notice that on November 30, 2012, at 10:00 a.m. or as soon thereafter as this matter may be heard before the Honorable Charles A. Legge, U.S. District Court Judge (Ret.), Special Master, in the San Francisco Resolution Center of JAMS, Two Embarcadero Center, Suite 1500, San Francisco, California 94111, the moving defendants listed on the signature pages below ("Defendants") will and hereby do move this Court, pursuant to Federal Rule of Civil Procedure 12(b)(6), for an Order dismissing certain Direct Action Plaintiffs' ("DAPs") claims without leave to amend for failure to state a claim upon which relief may be granted, and as applicable for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).

The motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities in support thereof, the pleadings and correspondence on file with the Court, and such arguments and authorities as may be presented at or before the hearing.

**STATEMENT OF THE ISSUES**

Pursuant to Fed. R. Civ. P. 12(b)(6) and 12(c), Defendants move to dismiss and, as applicable, for judgment on the pleadings as to select DAPs' claims[1] on the following grounds:

1.  With respect to their federal claims, whether DAPs possess federal antitrust

---

[1]Specifically, this Motion seeks dismissal of the following complaints, in full or in part as specified herein: *Stoebner v. LG Electronics, Inc.*, No. 11-cv-05381 (N.D. Cal.) [Dkt. No. 1] (Nov. 7, 2011) ("Polaroid Compl."); *Target Corp. v. Chunghwa Picture Tubes, Ltd.*, No. 11-cv-05514 (N.D. Cal.) [Dkt. No. 9] (Jan. 6, 2012) ("Target Am. Compl."); *P.C. Richard & Son Long Island Corp. v. Hitachi, Ltd.*, No. 12-cv-02648 (N.D. Cal.) [Dkt. No. 1] (Nov. 14, 2011) ("P.C. Richard Compl."); *Schultze Agency Servs., LLC v. Hitachi, Ltd.*, No. 12-cv-02649 (N.D. Cal.) [Dkt. No. 1] (Nov. 14, 2011) ("Tweeter Compl."); *CompuCom Systems, Inc. v. Hitachi, Ltd.*, No. 11-cv-06396 (N.D. Cal.) [Dkt. No. 1] (Nov. 14, 2011) ("CompuCom Compl."); *Interbond Corp. of Am. v. Hitachi, Ltd.*, No. 11-cv-06275 (N.D. Cal.) [Dkt. No. 1] (Nov. 14, 2011) ("Interbond Compl."); *Costco Wholesale Corp. v. Hitachi, Ltd.*, No. 11-cv-06397 (N.D. Cal.) [Dkt. No. 1] (Nov. 14, 2011) ("Costco Compl."); *Siegel v. Hitachi, Ltd.*, No. 11-cv-05502 (N.D. Cal.) [Dkt. No. 1] (Nov. 14, 2011) ("Circuit City Compl."); *Office Depot, Inc. v. Hitachi, Ltd.*, No. 11-cv-06276 (N.D. Cal.) [Dkt. No. 1] (Nov. 14, 2011) ("Office Depot Compl."); and *Best Buy Co., Inc. v. Hitachi, Ltd.*, No. 11-cv-05513 (N.D. Cal.) [Dkt. No. 1] (Nov. 14, 2011) ("Best Buy Compl."). This Motion seeks judgment on the pleadings as specified herein as to the complaint in *Electrograph Systems, Inc. v. Hitachi, Ltd.*, No. 11-cv-01656 (N.D. Cal.) [Dkt. No. 5] (Mar. 10, 2011) ("Electrograph Am. Compl."), as Defendants have already filed answers to that complaint.

i

1    standing as direct purchasers, insofar as they did not purchase CRTs—the allegedly price-fixed

2    product—but merely purchased finished products containing CRTs.

3          2.      With respect to their state-law claims, whether DAPs state a claim upon which

4    relief can be granted, specifically:

5                  a.      Whether nearly all of DAPs' state-law claims are untimely under the

6                        applicable 3- and 4-year statutes of limitations;

7                  b.      Whether certain DAPs' state-law claims brought under the laws of

8                        Arizona, California, Florida, Illinois, Iowa, Kansas, Massachusetts,

9                        Michigan, Minnesota, Mississippi, Nebraska, Nevada, New Mexico, New

10                       York, North Carolina, and Wisconsin should be dismissed because those

11                       DAPs do not allege facts sufficient to establish those states' interests in this

12                       action consistent with the Due Process Clause of the U.S. Constitution;

13                 c.      Whether certain DAPs' state-law claims brought under the laws of

14                       Arizona, California, Florida, Illinois, Iowa, Kansas, Massachusetts,

15                       Michigan, Minnesota, Mississippi, Nebraska, Nevada, New Mexico, New

16                       York, North Carolina, and Wisconsin should be dismissed because those

17                       DAPs do not allege facts sufficient to meet the prudential standing

18                       requirements of the federal judiciary;

19                  d.      Whether certain DAPs' state-law claims brought under the laws of

20                       California, Illinois, Michigan, Arizona, and Washington should be

21                       dismissed because those DAPs lack antitrust standing under *Associated*

22                       *General Contractors v. California State Council of Carpenters*, 459 U.S.

23                       519 (1983) ("*AGC*");

24                 e.      Whether certain DAPs' state-law claims under the consumer-protection

25                       statutes of Massachusetts and Washington fail as a matter of law;

26                 f.      Whether the Polaroid Plaintiffs' common law unjust enrichment claim

27                       should be dismissed for failing to identify the particular state or states

28                       under whose common law the unjust enrichment claim belongs;

g. Whether Circuit City's Fourth Claim for Relief should be dismissed on the ground that California law does not recognize a stand-alone cause of action for either restitution or unjust enrichment;

h. Whether Circuit City's, CompuCom's, and the Polaroid Plaintiffs' claims for restitution and disgorgement under California's Unfair Competition Law ("UCL") should be dismissed on the ground that UCL causes of action are dependent upon sufficiently-pleaded antitrust claims;

i. Whether certain DAPs' state-law claims brought under Nebraska, Nevada, and New York law, should be dismissed to the extent DAPs' claims pre-date the *Illinois Brick* "repealer" statutes in those states.

DEFS.' JOINT NOTICE OF MOT. AND MOT. TO DISMISS AND FOR JUDGMENT ON THE PLEADINGS AS TO CERTAIN DIRECT ACTION PLS.' CLAIMS AND MEM. OF LAW IN SUPPORT (3:07-CV-05944 SC, MDL NO. 1917)

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT .................................................................................................. 1

FACTUAL BACKGROUND ...................................................................................................... 2

LEGAL STANDARD ................................................................................................................. 5

ARGUMENT .............................................................................................................................. 5

I.     PLAINTIFFS' PURPORTED DIRECT PURCHASER CLAIMS ARE BARRED BY *ILLINOIS BRICK* ..................................................................... 5

    A.    There Is No Dispute That Plaintiffs' Claims Are Based On Their Alleged Purchases Of Finished Products Containing CRTs ..................... 6

    B.    As The Court Previously Held, Plaintiffs Who Did Not Purchase CRTs Lack Standing To Sue As Direct Purchasers ..................................... 6

    C.    The Court's Prior Rulings On This Exact Issue Compel The Identical Result Here ....................................................................................... 9

II.    Certain Plaintiffs' State-Law Claims Must Be Dismissed For Failure To State A Claim On Which Relief May Be Granted ................................................. 10

    A.    Nearly All Of Plaintiffs' State-Law Claims Should Be Dismissed As Untimely Under the Applicable Three- and Four-Year Statutes of Limitations ............................................................................................... 10

        1.    Plaintiffs' Fraudulent Concealment Allegations Are Unavailing ..................................................................................... 12

        2.    Principles Of Equitable Estoppel Do Not Toll Plaintiffs' State-Law Claims ............................................................................ 14

        3.    Class Action Tolling Does Not Apply To Plaintiffs' State-Law Claims ............................................................................ 15

            (a)    The IPP Complaint Does Not Toll Plaintiffs' State-Law Claims ......................................................................... 15

            (b)    The DPP Complaint Does Not Toll Plaintiffs' State-Law Claims ......................................................................... 15

    B.    Plaintiffs' Claims Should Be Dismissed To The Extent That They Do Not Allege Purchases In The Forum States ....................................... 16

        1.    Certain Plaintiffs' State-Law Claims Should Be Dismissed For Failure To Allege Sufficient Contacts With Relevant States ............................................................................................... 16

            (a)    Certain DAPs Have Not Alleged That They Purchased CRTs Or CRT Finished Products In Relevant States ......................................................................... 17

            (b)    Certain DAPs Have Insufficiently Alleged Purchases Of CRT Products In Relevant States ................................. 18

        2.    The Same Plaintiffs Whose State-Law Claims Fail To Establish Contacts With Relevant States Should Also Be Dismissed For Lack Of Standing ................................................. 21

iv

DEFS.' JOINT NOTICE OF MOT. AND MOT. TO DISMISS AND FOR JUDGMENT ON THE PLEADINGS AS TO
CERTAIN DIRECT ACTION PLS.' CLAIMS AND MEM. OF LAW IN SUPPORT (3:07-CV-05944 SC, MDL NO. 1917)

## TABLE OF CONTENTS
### (continued)

**Page**

C.      Plaintiffs Who Merely Purchased Finished Products Containing CRTs Lack Antitrust Standing Under The *Associated General Contractors* Test In Five Of The States At Issue .................................... 23

     1.      Plaintiffs Lack Antitrust Standing Under The State Antitrust Laws Of California, Illinois, Michigan, Arizona, And Washington ................................................................................. 24

     2.      Plaintiffs Who Purchased Finished Products Containing CRTs Lack Antitrust Standing Under The *AGC* Test .................. 25

         (a)      These Plaintiffs Fail To Allege "Antitrust Injury" Because They Were Not Participants In The Allegedly Restrained Market ........................... 27

         (b)      These Plaintiffs' Alleged Injuries Were Indirect, Attenuated, And Too Remote To Satisfy The "Remoteness" Factor Of *AGC* ........................... 29

         (c)      These Plaintiffs' Injury Claims Are Inherently Speculative ...................................................... 30

         (d)      These Plaintiffs' Claims Are Likely To Be Duplicative ...................................................... 31

         (e)      These Plaintiffs' Injury Claims Would Be Unreasonably Complex ..................................... 31

D.      Plaintiffs' Claims Fail Under The Consumer Protection Statutes Of Massachusetts And Washington ................................................ 32

E.      Certain Plaintiffs' Unjust Enrichment, Restitution, And California Unfair Competition Law Claims Are Deficient ................................ 33

     1.      The Polaroid Plaintiffs' Common Law Unjust Enrichment Claim Should Be Dismissed Because The Polaroid Plaintiffs Fail To Identify A Particular State Under Whose Common Law Their Unjust Enrichment Claim Belongs ............................ 33

     2.      Circuit City's Fourth Claim For Relief Should Be Dismissed Because California Law Does Not Recognize A Cause Of Action For Restitution Or Unjust Enrichment ............................. 34

     3.      Circuit City, CompuCom, And The Polaroid Plaintiffs Have Not Stated A Claim Under California's Unfair Competition Law ............................................................................ 35

F.      Plaintiffs Cannot Sue Under The Statutes Of Nebraska, Nevada, Or New York Based On Purchases Predating Those *States' Illinois Brick* Repealer Amendments ................................................... 38

     1.      Nebraska ................................................................. 38

     2.      Nevada .................................................................. 39

     3.      New York ................................................................ 40

CONCLUSION ................................................................................. 40

# **TABLE OF AUTHORITIES**

**Page**

**Cases**

*Allen v. United Fin. Mortg. Corp.*,
No. 09-2507 SC, 2010 U.S. Dist. LEXIS 26503 (N.D. Cal. Mar. 22, 2010) ........................... 11

*Allstate Ins. Co. v. Hague*,
449 U.S. 302 (1981) ................................................................................................. 16, 21

*Am. Ad. Mgmt., Inc. v. Gen. Tel. Co.*,
190 F.3d 1051 (9th Cir. 1999) ......................................................................................... 27

*Am. Pipe & Constr. Co. v. Utah*,
414 U.S. 538 (1974) ...................................................................................................... 15

*Arizona v. Shamrock Foods Co.*,
729 F.2d 1208 (9th Cir. 1984) ........................................................................................... 7

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................................................ 5

*Ass'n of Data Processing Serv. Orgs. v. Camp*,
397 U.S. 150 (1970) ...................................................................................................... 21

*Associated Gen. Contractors v. Cal. State Council of Carpenters*,
459 U.S. 519 (1983) ................................................................................................. *passim*

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........................................................................................................ 5

*Belton v. Comcast Cable Holdings, L.L.C.*,
151 Cal. App. 4th 1224 (2007) ........................................................................................ 38

*Berryman v. Merit Prop. Mgmt., Inc.*,
152 Cal. App. 4th 1544 (2007) ........................................................................................ 38

*Bhan v. NME Hosp., Inc.*,
772 F.2d 1467 (9th Cir. 1985) ..................................................................................... 27, 28

*Blewett v. Abbott Labs.*,
938 P.2d 842 (Wash. App. 1997) ..................................................................................... 33

*Blue Shield v. McCready*,
457 U.S. 465 (1982) ...................................................................................................... 29

*Cargill, Inc. v. Monfort of Colo., Inc.*,
479 U.S. 104 (1986) ...................................................................................................... 30

## TABLE OF AUTHORITIES
**(continued)**

**Page**

*Cervantes v. Countrywide Home Loans, Inc.*,
  656 F.3d 1034 (9th Cir. 2011) .................................................................................. 11

*Charles Schwab & Co v. Bank of Am.*,
  No. C 10-4913 JL, 2011 U.S. Dist. LEXIS 53496 (N.D. Cal. May 9, 2011) ........................ 35

*Clayworth v. Pfizer, Inc.*,
  49 Cal. 4th 758 (2010) ........................................................................................... 24

*Cnty. of Cook v. Philip Morris, Inc.*,
  817 N.E.2d 1039 (Ill. App. Ct. 1st Dist. 2004) ........................................................ 24

*Conerly v. Westinghouse Elec. Corp.*,
  623 F.2d 117 (9th Cir. 1980) .................................................................................. 12

*Coto Settlement v. Eisenberg*,
  593 F.3d 1031 (9th Cir. 2010) ................................................................................... 2

*Crown Cork & Seal Co. v. Parker*,
  462 U.S. 345 (1983) .............................................................................................. 15

*Datel Holdings Ltd. V. Microsoft Corp.*,
  712 F. Supp. 2d 974 (N.D. Cal. 2010) ...................................................................... 29

*Deirmenjian v. Deutsche Bank, A.G.*,
  526 F. Supp. 2d 1068 (C.D. Cal. 2007) .................................................................... 14

*Del. Valley Surgical Supply, Inc. v. Johnson & Johnson*,
  523 F.3d 1116 (9th Cir. 2008) ................................................................................... 7

*Delgado v. J.W. Courtesy Pontiac GMC-Truck, Inc.*,
  693 So. 2d 602 (Fla. Dist. Ct. App. 1997) ............................................................... 22

*Dworkin v. Hustler Magazine, Inc.*,
  867 F.2d 1188 (9th Cir. 1989) ................................................................................... 5

*Entrialgo v. Twin City Dodge, Inc.*,
  333 N.E.2d 202 (Mass. 1975) ................................................................................. 33

*Four Seasons Apts. v. AAA Glass Serv.*,
  37 Kan. App. 2d 248 (2007) ................................................................................... 14

*Fox v. Ethicon Endo-Surgery, Inc.*,
  110 P.3d 914 (Cal. 2005) ........................................................................................ 14

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Global Servs. v. IKON Office Solutions,*
  No. C 10-05974 JSW, 2011 U.S. Dist. LEXIS 143123 (N.D. Cal. Dec. 13, 2011) ................................................................................................................. 12

*Guerrero v. Gates,*
  442 F.3d 697 (9th Cir. 2006)........................................................... 12, 14, 15

*Haley v. City of Boston,*
  657 F.3d 39 (1st Cir. 2011) ...................................................................... 2

*Hartford v. Atlas Turner Inc.,*
  No. C 05-202, 2005 WL 1115877 (N.D. Cal. May 11, 2005) .................... 6, 9

*Illinois Brick Co. v. Illinois,*
  431 U.S. 720 (1977)............................................................................ *passim*

*In re Apple iPod iTunes Antitrust Litig.,*
  796 F. Supp. 2d 1137 (N.D. Cal. 2011) .................................................... 37

*In re ATM Fee Antitrust Litigation,*
  — F.3d —, No. 10-17354, 2012 WL 2855813 (9th Cir. July 12, 2012) ........................ *passim*

*In re Cal. Title Ins. Antitrust Litig.,*
  No. C 08-01341 JSW, 2009 WL 1458025 (N.D. Cal. May 21, 2009)..................... 38

*In re Cathode Ray Tube (CRT) Antitrust Litig.,*
  738 F. Supp. 2d 1011 (N.D. Cal. 2010) ............................................. 25, 27, 39, 40

*In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.,*
  691 F.2d 1335 (9th Cir. 1982)..................................................................... 7

*In re Ditropan XL Antitrust Litig.,*
  529 F. Supp. 2d 1098 (N.D. Cal. 2007) .................................................... 34

*In re DRAM Antitrust Litig.,*
  516 F. Supp. 2d 1072 (N.D. Cal. 2007) ............................................... *passim*

*In re DRAM Antitrust Litig.,*
  536 F. Supp. 2d 1129 (N.D. Cal. 2008) ............................................. 24, 27, 28, 29

*In re Estate of Thomas,*
  998 P.2d 560 (Nev. 2000) ...................................................................... 40

*In re Flash Memory Antitrust Litig.,*
  643 F. Supp. 2d 1133 (N.D. Cal. 2009) .................................................... 25

DEFS.' JOINT NOTICE OF MOT. AND MOT. TO DISMISS AND FOR JUDGMENT ON THE PLEADINGS AS TO
CERTAIN DIRECT ACTION PLS.' CLAIMS AND MEM. OF LAW IN SUPPORT (3:07-CV-05944 SC, MDL NO. 1917)

**TABLE OF AUTHORITIES**
(continued)

Page

*In re Graphics Processing Units Antitrust Litig.*,
527 F. Supp. 2d 1011 (N.D. Cal. 2007) ............................................ 16, 22, 25, 32

*In re IBM Peripheral EDP Devices Antitrust Litig.*,
411 F. Supp. 791 (JPML 1976)............................................................................ 9

*In re Linerboard Antitrust Litig.*,
305 F.3d 145 (3d Cir. 2002).................................................................................. 8

*In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television*
*Litig.*,
758 F. Supp. 2d 1077 (S.D. Cal. 2010) ............................................................. 38

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
580 F. Supp. 2d 896 (N.D. Cal. 2008) ............................................................... 34

*In re Sugar Indus. Litig.*,
579 F.2d 13 (3d Cir. 1978)..................................................................................... 8

*In re Terazosin Hydrochloride Antitrust Litig.*,
160 F. Supp. 2d 1365 (S.D. Fla. 2001) .............................................................. 22

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
No. M. 07-1827 SI, No. C. 10-5625 SI, 2011 U.S. Dist. LEXIS 105151, at *20
(N.D. Cal. Sept. 15, 2011)............................................................................ 17, 35

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
267 F.R.D. 291 (N.D. Cal. 2010)......................................................................... 8

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
586 F. Supp. 2d 1109 (N.D. Cal. 2008) ............................................................. 25

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
599 F. Supp. 2d 1179 (N.D. Cal. 2009) ............................................................. 34

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
781 F. Supp. 2d 955 (N.D. Cal. 2011) ............................................................... 34

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
No. C 10-4945-SI, 2011 WL 3738985 (N.D. Cal. Aug. 24, 2011)..................... 40

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
No. M 07-1827 SI, 2010 WL 2609434 (N.D. Cal. June 28, 2010)..................... 17

*In re Vertrue Mktg. & Sales Practices Litig.*,
712 F. Supp. 2d 703 (N.D. Ohio 2010).............................................................. 16

<u>**TABLE OF AUTHORITIES**</u>
**(continued)**

**Page**

*In re Vitamins Antitrust Litig.*,
  Misc. No. 99-197 (TFH), 2000 U.S. Dist. LEXIS 15109 (D.D.C. Oct. 6, 2000) .................... 40

*Ingels v. Westwood One Broad. Servs., Inc.*,
  129 Cal. App. 4th 1050 (2005) ........................................................................... 37

*Intergraph Corp. v. Intel Corp.*,
  195 F.3d 1346 (Fed. Cir. 1999) .......................................................................... 28

*Jablon v. Dean Witter & Co.*,
  614 F.2d 677 (9th Cir. 1980) ............................................................................. 12

*Jogani v. Superior Court*,
  165 Cal. App. 4th 901 (2008) ...................................................................... 34, 35

*Johnson v. Frankell*,
  520 U.S. 911 (1997) .......................................................................................... 40

*Kamamara v. Holyoke Mut. Ins. Co.*,
  892 N.E.2d 759 (Mass. App. Ct. 2008) .............................................................. 33

*Kanne v. Visa U.S.A., Inc.*,
  723 N.W.2d 293 (Neb. 2006) ............................................................................. 39

*Kansas v. UtiliCorp United, Inc.*,
  497 U.S. 199 (1990) ....................................................................................... 1, 9

*Knevelboard Dairies v. Kraft Foods, Inc.*,
  232 F.3d 979 (9th Cir. 2000) ............................................................................. 24

*Knowles v. Visa U.S.A., Inc.*,
  No. Civ.A. CV-03-707, 2004 WL 2475284 (Me. Sup. Ct. Oct. 20, 2004) ............................. 32

*Krantz v. BT Visual Images, L.L.C.*,
  89 Cal. App. 4th 164 (2001) .............................................................................. 37

*Krotz v. Microsoft Corp.*,
  No. A416361 (Nev. Dist. Ct. June 22, 2000) ...................................................... 40

*Lennon v. Philip Morris Cos.*,
  734 N.Y.S.2d 374 (N.Y. Sup. Ct. 2001) .............................................................. 40

*Levine v. Blue Shield of Cal.*,
  189 Cal. App. 4th 1117 (2010) ........................................................................... 35

x

# TABLE OF AUTHORITIES
**(continued)**

**Page**

*Lucas Auto. Eng'g, Inc. v. Bridgestone/Firestone, Inc.*,
    140 F.3d 1228 (9th Cir. 1998) ............................................................................. 24

*Martin v. Cnty. of L.A.*,
    51 Cal. App. 4th 688 (1996) ............................................................................... 36

*McBride v. Boughton*,
    123 Cal. App. 4th 379 (2004) ............................................................................. 35

*Melchior v. New Line Prods., Inc.*,
    106 Cal. App. 4th 779 (2003) ............................................................................. 35

*Meyer v. Qualcomm Inc.*,
    No. 08cv655 WQH, 2009 WL 539902 (S.D. Cal. Mar. 3, 2009) ..................... 28, 32

*Mort v. United States*,
    86 F.3d 890 (9th Cir. 1996) ............................................................................... 36

*Munoz v. MacMillan*,
    195 Cal. App. 4th 648 (2011) ............................................................................. 35

*Nelson v. Xacta 3000 Inc.*,
    No. 08-5426, 2009 WL 4119176 (D.N.J. Nov. 24, 2009) ................................. 34

*O'Regan v. Arbitration Forums, Inc.*,
    121 F.3d 1060 (7th Cir. 1997) ........................................................................... 24

*Ore. Laborers-Emp'rs Health & Welfare Trust Fund v. Philip Morris*,
    185 F.3d 957 (9th Cir. 1999) ............................................................................. 26

*Ostrofe v. H.S. Crocker Co.*,
    740 F.2d 739 (9th Cir. 1984) ............................................................................. 29

*Pace v. DiGuglielmo*,
    544 U.S. 408 (2005) ........................................................................................... 11

*Pecover v. Elec. Arts, Inc.*,
    633 F. Supp. 2d 976 (N.D. Cal. 2009) ............................................................... 22

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985) ..................................................................................... 16, 21

*Pooler v. R.J. Reynolds Tobacco Co.*,
    No. CV00-02674, 2001 WL 403167 (Nev. Dist. Ct. Apr. 4, 2001) ................... 40

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Quintero Family Trust v. OneWest Bank, F.S.B.*,
No. 09-CV-1561-IEG (WVG), 2010 WL 392312 (S.D. Cal. 2010) ...................................... 38

*R.C. Dick Geothermal Corp. v. Thermogenics, Inc.*,
890 F.2d 139 (9th Cir. 1989) .......................................................................................... 24, 30

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
442 F.3d 741 (9th Cir. 2006) ................................................................................................ 13

*Rhynes v. Stryker Corp.*,
No. 10-5619 SC, 2011 WL 2149095 (N.D. Cal. May 31, 2011) ........................................ 36

*Rivera v. BAC Home Loans Servicing*,
756 F. Supp. 2d 1193 (N.D. Cal. 2010) ........................................................................ 37, 38

*Robyn Lee Yacht Charters, Inc. v. Gen. Motors Corp.*,
584 F. Supp. 8 (D. Mass. 1984) .......................................................................................... 22

*Royal Printing Co. v. Kimberly-Clark Corp.*,
621 F.2d 323 (9th Cir. 1980) .................................................................................................. 7

*Russo & Dubin v. Allied Maint. Corp.*,
407 N.Y.S.2d 617 (N.Y. Sup. Ct. 1978) .............................................................................. 40

*Ryman v. Sears, Roebuck & Co.*,
505 F.3d 993 (9th Cir. 2007) ................................................................................................ 25

*Santa Maria v. Pac. Bell*,
202 F.3d 1170 (9th Cir. 2000) .............................................................................................. 14

*Snapp & Assocs. Ins. Servs., Inc. v. Robertson*,
96 Cal. App. 4th 884 (2002) ................................................................................................ 14

*Soukop v. Conagra, Inc.*,
653 N.W.2d 655 (Neb. 2002) ............................................................................................... 39

*Stanislaus Food Prods. Co. v. USS-POSCO Indus.*,
No. CV F 09-0560 LJO SMS, 2010 WL 3521979 (E.D. Cal. Sept. 3, 2010) ........................ 7

*Stark v. Visa U.S.A., Inc.*,
No. 03-055030, 2004 WL 1879003 (Mich. Cir. Ct. July 23, 2007) ...................................... 24

*Stevens v. Superior Court*,
75 Cal. App. 4th 594 (1999) ................................................................................................ 36

DEFS.' JOINT NOTICE OF MOT. AND MOT. TO DISMISS AND FOR JUDGMENT ON THE PLEADINGS AS TO
CERTAIN DIRECT ACTION PLS.' CLAIMS AND MEM. OF LAW IN SUPPORT (3:07-CV-05944 SC, MDL NO. 1917)

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Sun Microsystems v. Hynix Semiconductors, Inc.*,
608 F. Supp. 2d 1166 (N.D. Cal. 2009) ............................................................ 7

*Tessera, Inc. v. Micron Tech., Inc.*,
No. 2:05CV94, 2005 WL 1661106 (E.D. Tex. July 14, 2005) ............................... 28

*Toscano v. PGA Tour, Inc.*,
201 F. Supp. 2d 1106 (E.D. Cal. 2002) .............................................................. 24

*United Bhd. of Carpenters & Joiners of Am. Local 586 v. NLRB*,
540 F.3d 957 (9th Cir. 2008) ............................................................................ 25

*United States v. Diabetes Treatment Ctrs. of Am., Inc.*,
238 F. Supp. 2d 270 (D.D.C. 2002) .................................................................... 9

*Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*,
454 U.S. 464 (1982) ................................................................................ 21, 23

*Van de Kamp v. Cappuccio, Inc.*,
204 Cal. App. 3d 750 (1988) ............................................................................ 37

*Vinci v. Waste Mgmt., Inc.*,
36 Cal. App. 4th 1811 (1995) .......................................................................... 24

*Wahl v. Am. Sec. Ins. Co.*,
No. C 08-00555 RS, 2010 WL 1881126 (N.D. Cal. May 10, 2010) ....................... 5

*Wang v. Chinese Daily News, Inc.*,
623 F.3d 743 (9th Cir. 2010), *vacated on other grounds*, — U.S. —, 2011 U.S. LEXIS 6743 (U.S. Oct. 3, 2011) ..................................................................... 36

*Wasco Prods., Inc. v. Southwall Techs., Inc.*,
435 F.3d 989 (9th Cir. 2006) .......................................................................... 11

*Whitesell Int'l Corp. v. Whitaker*,
No. 05-518716-CZ, 2007 WL 6741070 (Mich. Cir. Ct. July 31, 2007) ................. 24

*Williams v. Boeing Co.*,
517 F.3d 1120 (9th Cir. 2008) ........................................................................ 16

*Zinser v. Accufix Research Inst., Inc.*,
253 F.3d 1180 (9th Cir. 2001) ........................................................................ 16

**Statutes**
740 Ill. Comp. Stat. § 10/1 *et seq.* ................................................................... 26

**TABLE OF AUTHORITIES**
(continued)

Page

740 Ill. Comp. Stat. § 10/2 *et seq.* ................................................................ 22

740 Ill. Comp. Stat. § 10/7(2) ....................................................................... 10

740 Ill. Comp. Stat. 10/11 ............................................................................ 25

Ariz. Rev. Stat. § 44-1401 *et seq.* ............................................................... 26

Ariz. Rev. Stat. § 44-1402 ............................................................................ 22

Ariz. Rev. Stat. § 44-1410(B) ....................................................................... 10

Ariz. Rev. Stat. § 44-1412 ............................................................................ 25

Cal. Bus. & Prof. Code § 16720 *et seq.* ..................................................... 26

Cal. Bus. & Prof. Code § 16720(d) .............................................................. 22

Cal. Bus. & Prof. Code § 16750.1 ................................................................ 10

Cal. Bus. & Prof. Code § 17208 ................................................................... 10

Fla. Stat. § 501.201, *et seq.* ....................................................................... 22

Fla. Stat. Ann. § 95.11(3)(f) ......................................................................... 10

Iowa Code § 553.3 *et seq.* ......................................................................... 22

Iowa Code Ann. § 553.16 ............................................................................. 10

Kan. Stat. Ann. § 50-101 *et seq.* ............................................................... 22

Kan. Stat. Ann. § 60-512(2) .................................................................... 10, 14

Mass. Gen. Laws Ann. ch. 260, § 5A .......................................................... 10

Mass. Gen. Laws ch. 93A, § 2 ..................................................................... 33

Mass. Gen. Laws ch. 93A, § 2 *et seq.* ....................................................... 22

Mass. Gen. Laws ch. 93A, § 9(3) ................................................................. 33

Mich. Comp. Laws Ann. § 445.771 *et seq.* ........................................... 22, 26

Mich. Comp. Laws Ann. § 445.781 .............................................................. 10

Mich. Comp. Laws Ann. § 445.784 .............................................................. 25

**TABLE OF AUTHORITIES**
(continued)

**Page**

Minn. Stat. § 325D.53 *et seq.* ........................................................................................ 22

Minn. Stat. Ann. § 325D.64 ............................................................................................ 10

Miss. Code Ann. § 15-1-49 ............................................................................................. 10

Miss. Code Ann. § 15-1-49(2) ........................................................................................ 13

Miss. Code Ann. § 75-21-3(d) *et seq.* ........................................................................... 22

N.C. Gen. Stat. § 75-1 *et seq.* ........................................................................................ 23

N.C. Gen. Stat. § 75-16.2 ............................................................................................... 10

N.M. Stat. Ann. § 57-1-1 *et seq.* ................................................................................... 22

N.M. Stat. Ann. § 57-1-12 .............................................................................................. 10

N.Y. Gen Bus. Law § 340 *et seq.* ............................................................................. 22, 40

N.Y. Gen. Bus. § 340(6) ................................................................................................. 40

N.Y. Gen. Bus. Law § 340(5) ......................................................................................... 10

Neb. Rev. Stat. § 25-206 ................................................................................................. 10

Neb. Rev. Stat. § 59-801 ................................................................................................. 39

Neb. Rev. Stat. § 59-801 *et seq.* .................................................................................... 22

Nev. Rev. Stat. § 598A *et seq.* ....................................................................................... 40

Nev. Rev. Stat. § 598A.210 ............................................................................................ 40

Nev. Rev. Stat. § 598A.220 ............................................................................................ 10

Nev. Rev. Stat. Ann. § 218 ............................................................................................. 40

Nev. Rev. Stat. Ann. § 598A.030 *et seq.* ...................................................................... 22

Wash. Rev. Code § 19.86.030 .................................................................................... 26, 33

Wash. Rev. Code § 19.86.120 ......................................................................................... 10

Wash. Rev. Code § 19.86.920 .................................................................................... 25, 33

Wis. Stat. § 133.01 *et seq.* ............................................................................................. 23

## TABLE OF AUTHORITIES
**(continued)**

**Page**

Wis. Stat. Ann. § 133.18(2) ......................................................................... 10

**Other Authorities**

Am. Bar Ass'n, *Indirect Purchaser Litigation Handbook* (2007) .................................. 40

**Rules**

Fed. R. Civ. P. 12(c) ......................................................................... i, 5, 41

Fed. R. Civ. P. 12(b)(6) ......................................................................... *passim*

**Constitutional Provisions**

Neb. Const. art. III, § 24 ......................................................................... 39

## MEMORANDUM OF POINTS AND AUTHORITIES
### PRELIMINARY STATEMENT

The DAP complaints (collectively "Complaints") assert violations of both federal and state laws based on their allegations of a conspiracy to fix the price of cathode ray tubes ("CRTs"), or, in some cases, what DAPs ambiguously call "CRT Products." But the ambiguity in this term notwithstanding, DAPs have now disclaimed any allegations of a conspiracy to fix the price of finished products containing CRTs (such as televisions and computer monitors). This stipulation, coupled with the fact that all but one DAP (Target) do not claim to have purchased CRTs directly from Defendants, dooms DAPs' federal antitrust claims. As this Court previously has held, because DAPs do not plead that they have purchased the allegedly price-fixed product, *i.e.*, a stand-alone CRT (as opposed to a finished product containing a CRT), they lack federal antitrust standing under the bright-line rule set forth in *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), as further solidified in *Kansas v. UtiliCorp United, Inc.*, 497 U.S. 199, 208 (1990), and *In re: ATM Fee Antitrust Litigation*, — F.3d —, No. 10-17354, 2012 WL 2855813 (9th Cir. July 12, 2012).

The deficiencies in DAPs' allegations also require dismissal of their claims based on various states' antitrust and consumer-protection statutes. The deficiencies are numerous:

- First, having waited to file suit more than four years after they were put on notice of their claims, virtually all of DAPs' state-law claims are untimely under the applicable statutes of limitations periods. And there is no applicable tolling doctrine that can save these claims.

- Second, to the extent that DAPs allege violations of state laws without alleging that they purchased price-fixed CRTs in those specific jurisdictions, their claims run afoul of the Due Process Clause of the U.S. Constitution and fail to satisfy the prudential standing requirements of the federal judiciary.

- Third, because DAPs' state claims are premised on the alleged purchase of finished products containing price-fixed CRTs, DAPs' claims brought under the laws of

1

California, Illinois, Michigan, Arizona, and Washington are deficient because those DAPs lack antitrust standing under the multi-factor test set forth in *AGC*.

- Fourth, DAPs' Massachusetts and Washington consumer-protection claims are untenable. With respect to the Massachusetts claim, DAPs have not alleged that they made the required written demand for relief, which they must do before seeking relief through the courts. As for the Washington claim, because Washington's consumer-protection statute incorporates the *Illinois Brick* limitation on standing, providing standing only to purchasers of the price-fixed product, DAPs lack standing because they are at best indirect purchasers of the alleged price-fixed product—CRTs.

- Fifth, the unjust enrichment, restitution, and unfair competition claims of several DAPs are deficient. One group of DAPs (those in the Polaroid complaint) fails to even identify the state under whose common law the unjust enrichment claim belongs, while in other cases the states under whose laws DAPs sue do not recognize freestanding unjust enrichment or restitution claims. And still other DAPs fail to state a claim for unfair competition because that claim requires DAPs to sufficiently plead an antitrust violation, which they have failed to do.

- Sixth and finally, DAPs asserting violations of Nebraska, Nevada, and New York law cannot state a claim for purchases made prior to the time at which those states enacted "repealer" statutes to negate the *Illinois Brick* rule.

## FACTUAL BACKGROUND

On November 8, 2007, the European Commission publicly announced that it had "carried out unannounced inspections at the premises of manufacturers of cathode ray tubes (CRTs)" and "ha[d] reason to believe that the companies concerned may have violated EC Treaty rules on cartels and restrictive business practices (Article 81)."[2] *See* Request for Judicial Notice ("RJN"),

---

[2]The Court may consider materials that are public records or otherwise appropriate for taking judicial notice without converting a Rule 12(b)(6) or 12(c) motion into a Rule 56 motion. Specifically, the Court can augment the facts and inferences from the body of the complaint with "data points gleaned from documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice." *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011); *see also Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010) (a

filed concurrently herewith, Exh. 1 ("November 8, 2007 Announcement"). The first Indirect

Purchaser Plaintiffs ("IPPs") filed suit on November 13, 2007, expressly referring to the

November 8, 2007 Announcement in their allegations.[3] The IPPs purport to represent a putative

class comprised of "[a]ll persons and or entities who or which indirectly purchased in the United

States for their own use and not for resale, CRT Products manufactured and/or sold by the

Defendants, or any subsidiary, affiliate, or co-conspirator thereof, at any time during the period

from at least March 1, 1995 through at least November 25, 2007."[4] The first Direct Purchaser

Plaintiffs ("DPPs") filed a putative class action shortly thereafter on November 26, 2007, and also

expressly referred to the November 8, 2007 Announcement.[5] The DPPs' Consolidated Amended

Complaint asserts claims only under federal law.[6]

However, the majority of DAPs, which are the subject of this Motion, did not file suit

until November 14, 2011.[7] DAPs assert claims as purported direct purchasers under federal

antitrust law, as well as claims under various states' antitrust, consumer protection, unfair

competition, and unjust enrichment and restitution laws. *See* Appendix A (listing state-law

antitrust and consumer protection claims by complaint).

CRTs include both (1) color display tubes ("CDTs"), which are the internal tubes used in

color computer monitors, and (2) color picture tubes ("CPTs"), which are the internal tubes used

---

court "may consider materials incorporated into the complaint or matters of public record" on a
motion to dismiss).

[3] Complaint ¶ 30, *Kindt v. Matsushita Electric Industrial Co., Ltd., et al.*, No. 1:07-10322
(S.D.N.Y.) [Dkt. No. 1] (Nov. 13, 2007).

[4] Indirect Purchaser Plaintiffs' Third Consolidated Amended Complaint ¶ 232 [Dkt. No. 827]
(Dec. 11, 2010).

[5] Complaint ¶ 95, *Crago, Inc. v. Chunghwa Picture Tubes, Ltd., et al.*, Case No. CV-07-5944-SC
(N.D. Cal.) [Dkt. No. 1] (Nov. 26, 2007).

[6] Direct Purchaser Plaintiffs' Consolidated Amended Complaint ¶¶ 213-221 [Dkt No. 436]
(Mar. 16, 2009) ("DPP Cons. Am. Compl.") (alleging violations of Section 1 of the Sherman Act
(15 U.S.C. §1)).

[7] *See* P.C. Richard Compl.; Tweeter Compl.; CompuCom Compl.; Interbond Compl.; Costco
Compl.; Circuit City Compl.; Office Depot Compl.; Best Buy Compl.; Target Am. Compl. (Nov.
14, 2011). There were two exceptions: The first of the DAPs filed suit on February 18, 2011, *see*
*Electrograph Sys., Inc. v. Hitachi, Ltd.*, No. 11-cv-01656 (N.D. Cal.) [Dkt. No. 1] (Feb. 18,
2011), and one other DAP, Polaroid, filed suit on November 4, 2011. *See* Polaroid Compl.

1   in color televisions.  *See* Polaroid Compl. ¶ 13.[8]  While some DAPs allege a conspiracy to fix

2   only the price of CRTs, others initially appeared to allege a conspiracy to fix the price of what

3   they call "CRT Products," which those DAPs define to include both "(a) CRTs[] and (b) products

4   containing CRTs, such as television sets and computer monitors."  *Id.* ¶ 14.[9]  Since filing their

5   Complaints, DAPs have expressly disclaimed any allegations of a conspiracy to fix the price of

6   finished products.  *See* July 17, 2012 Letter from Philip Iovieno to Eva W. Cole and Molly M.

7   Donovan ("Iovieno Ltr.") (attached as Exhibit 1 to the August 17, 2012 Declaration of Ian

8   Simmons).  Specifically, "DAPs are not asserting any" claims "alleging that Defendants have

9   combined and conspired to fix, raise, maintain or stabilize the prices of certain products

10  containing CRTs (CRT Finished Products) . . . in their current [c]omplaints."  *Id.* at 1.  Instead,

11  DAPs allege that Defendants conspired to fix only the price of CRT tubes, which DAPs claim had

12  an "effect on the price of CRT Finished Products" that DAPs allegedly purchased.  *Id.*  This

13  course follows the path of DPPs, who, facing Rule 11 sanctions after Your Honor concluded that

14  they had no reasonable basis to allege any agreement to fix the prices of finished products

15  containing CRTs, *see* Report and Recommendations on Motions Regarding Finished Products

16  [Dkt. No. 947] (June 15, 2011) at 10-13, voluntarily stipulated to "withdraw their CRT Finished

17  Products Conspiracy Claims," *see* Stipulation [Dkt. No. 996] (so ordered by the Court on August

18  26, 2011).

19      On May 31, 2012, Your Honor issued a Report and Recommendation concluding that

20  summary judgment should be entered against nine of the DPPs who admittedly did not purchase

21  the allegedly price-fixed product, CRTs, but rather only purchased finished products containing

22  CRTs.  Report and Recommendation Regarding Defendants' Joint Motion for Summary

23  Judgment [Dkt. No. 1221] (May 31, 2012) ("May 31 Report").  Because a stipulation eliminated

24  any allegations that finished products were price-fixed, and because it was undisputed that the

25  [8]*See also* P.C. Richard Compl. ¶ 2; Tweeter Compl. ¶ 2; CompuCom Compl. ¶ 2; Interbond
26  Compl. ¶ 2; Costco Compl. ¶ 2; Circuit City Compl. ¶ 2; Office Depot Compl. ¶ 2; Best Buy
    Compl. ¶ 2; Target Am. Compl. ¶ 1; Electrograph Am. Compl. ¶ 2.

27  [9]Specifically, the Polaroid and Electrograph complaints allege a conspiracy to fix the price of
28  "CRT Products."  The Target, P.C. Richard, Tweeter, CompuCom, Interbond, Costco, Circuit
    City, Best Buy, and Office Depot complaints allege a conspiracy to fix the price of CRTs.

1  DPPs against whom that motion was directed did not purchase CRTs, Your Honor concluded

2  that, as a matter of law, those DPPs were at best *indirect purchasers* of CRTs. *Id*. at 3.

3  Consequently, pursuant to the bright-line rule announced in *Illinois Brick*, those DPPs lack

4  standing to sue under federal antitrust law. *Id*. Pursuant to the District Court's order, on July 24,

5  2012, Defendants, DPPs, and DAPs have submitted briefing on whether the Court should adopt

6  Your Honor's May 31 Report.

7  **LEGAL STANDARD**

8  For a complaint to survive dismissal under Rule 12(b)(6), the plaintiff must plead "enough

9  facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S.

10  544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that

11  allows the court to draw the reasonable inference that the defendant is liable for the misconduct

12  alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the court should construe the

13  factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as

14  true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "The

15  standard governing a Rule 12(c) motion is essentially the same as that governing a Rule 12(b)(6)

16  motion." *Wahl v. Am. Sec. Ins. Co.*, No. C 08-00555 RS, 2010 WL 1881126, at *2 (N.D. Cal.

17  May 10, 2010) (citing *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989)).

18  **ARGUMENT**

19  **I.  PLAINTIFFS' PURPORTED DIRECT PURCHASER CLAIMS ARE BARRED BY**

20  ***ILLINOIS BRICK.***

21  Your Honor already held in the May 31 Report that only purchasers of CRTs have direct

22  purchaser standing in this MDL. That conclusion fully applies here because, to the extent DAPs'

23  claims are based on purchases of finished products that merely contained CRTs, there is simply

24  no distinction between the claims brought by DAPs and the claims brought by DPPs, against

25  whom summary judgment already has been granted.

26  Indeed, since the May 31 Report, DAPs have conceded that they are not direct purchasers

27  in light of *In re ATM Fee Antitrust Litigation*, — F.3d —, No. 10-17354, 2012 WL 2855813 (9th

28  Cir. July 12, 2012) ("*ATM Fee*"). *See* Direct Action Plaintiffs' Objections to the Special Master's

5

1   Report & Recommendation Regarding Defendants' Motion for Partial Summary Judgment [Dkt.

2   No. 1273] (July 24, 2012) ("DAP Objections"), at 2 ("The Ninth Circuit has agreed with [the May

3   31 Report] with respect to whether [DAPs] are direct purchasers and **has held that they are**

4   **indirect purchasers**." (emphasis added)).  Instead, DAPs are actually indirect purchasers who, to

5   establish standing, must meet one of two narrow exceptions to the *Illinois Brick* bar.  For the

6   reasons explained below, DAPs cannot meet either one.

7          Thus, unless Judge Conti overrules Your Honor's well-reasoned and persuasive decision,

8   it is the binding law of this MDL—the very purpose of which is to ensure consistency and

9   uniformity across a multidistrict litigation.  *See, e.g.*, *Hartford v. Atlas Turner Inc.*, No. C 05-202,

10  2005 WL 1115877, at *1 (N.D. Cal. May 11, 2005).[10]

11         **A.      There Is No Dispute That Plaintiffs' Claims Are Based On Their Alleged**
           **Purchases Of Finished Products Containing CRTs.**
12

13         DAPs have agreed that there are no allegations in the current complaints that Defendants

14  conspired to set the prices of televisions or monitors.  *See* Iovieno Ltr. at 1-2.  As a result, the

15  only accused product is a CRT.  *See* May 31 Report at 4-5 (basing ruling on, among other things,

16  fact that DPPs have abandoned any allegations of a finished products conspiracy).  Further, it

17  appears from the face of the DAP Complaints that most, if not all, of the purported DAPs did not

18  purchase a CRT from anyone, but they are instead asserting claims to recover for alleged

19  "overcharges **paid for the CRT Products containing price-fixed CRTs**."  *See, e.g.*, Circuit City

20  Compl. ¶ 11 (emphasis added).[11]

21         **B.      As The Court Previously Held, Plaintiffs Who Did Not Purchase CRTs Lack**
           **Standing To Sue As Direct Purchasers.**
22

23         The Supreme Court established in *Illinois Brick* a clear-cut rule limiting "the right to sue

24

---

25  [10]To be clear, even if Judge Conti does not adopt Your Honor's May 31 Report, Defendants'
    position is that DAPs still lack antitrust standing.

26  [11]*See also* CompuCom Compl. ¶ 9; Costco Compl. ¶ 10; Interbond Compl. ¶ 9; P.C. Richard
    Compl. ¶ 9; Tweeter Compl. ¶ 9; Office Depot Compl. ¶ 9; Best Buy Compl. ¶ 9; Electrograph
27  Am. Compl. ¶ 9; Polaroid Compl. ¶ 10.  Target, a consumer retailer, appears to be the lone
    exception, having alleged that it purchased CRTs, even though CRTs are not normally sold to
28  end-user retail consumers.  *See* Target Am. Compl. ¶ 9.

to persons who directly purchased *a price-fixed product*."  May 31 Report at 7 (emphasis added).

The rule bars the claims of anyone else "in the chain of manufacture or distribution" who, to

prove damages, would have to demonstrate that the alleged "overcharges" were "passed on" to

them in some downstream market.  *Id.* at 6.  There is no question that *Illinois Brick* is "still the

law and the policy of the United States Supreme Court" and is a bright-line rule that "applies even

if otherwise meritorious claims are barred by the 'direct purchasers only' rule."  *Id.* at 7-8.[12]

DAPs acknowledge that *ATM Fee* forecloses any possibility that they are direct

purchasers under *Illinois Brick*.  DAP Objections at 2 ("The Ninth Circuit . . . has held that

[DAPs] are indirect purchasers.").  Thus, to establish antitrust standing, DAPs must fit within one

of the already-recognized and limited exceptions for (i) indirect purchasers of the allegedly price-

fixed product who can establish a price-fixing conspiracy between the manufacturer and the

middleman, *see Arizona v. Shamrock Foods Co.*, 729 F.2d 1208, 1211 (9th Cir. 1984) (the "co-

conspirator exception"), or (ii) indirect plaintiffs who purchased the price-fixed product from an

intermediary that is owned or controlled by the defendant manufacturer of the product, *see Royal

Printing Co. v. Kimberly-Clark Corp.*, 621 F.2d 323, 326 (9th Cir. 1980) (the "owned or

controlled exception").

First, it is clear from the DAP Objections that they are no longer trying to satisfy the so-

called "co-conspirator exception."  This is for good reason—*ATM Fee* confirms that, for this

exception to apply, "the conspiracy must fix the price paid by the plaintiffs."  *ATM Fee*, 2012 WL

2855813, at *6.  In other words, "***the price paid by a plaintiff must be set by the conspiracy and

not merely affected by the setting of another price***."  *Id.* at *11 (holding that plaintiffs lack

---

[12]*See UtiliCorp*, 497 U.S. at 216 ("[A]mple justification exists . . . not to 'carve out exceptions to the [direct purchaser] rule . . . .'"); *Del. Valley Surgical Supply, Inc. v. Johnson & Johnson*, 523 F.3d 1116, 1122-23 (9th Cir. 2008) (the "sensible and straightforward" direct purchaser rule articulated in *Illinois Brick* is a "bright-line rule" in this Circuit, and exceptions are not made on a case-by-case basis); *In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 691 F.2d 1335, 1338 (9th Cir. 1982) (dismissing plaintiffs' claims where they did not purchase the price-fixed product); *Stanislaus Food Prods. Co. v. USS-POSCO Indus.*, No. CV F 09-0560 LJO SMS, 2010 WL 3521979 (E.D. Cal. Sept. 3, 2010) (dismissing the federal antitrust claims of plaintiffs who did not purchase the allegedly price-fixed components of tin cans, but merely purchased the finished tin products); *Sun Microsystems v. Hynix Semiconductors, Inc.*, 608 F. Supp. 2d 1166 (N.D. Cal. 2009) (dismissing purported direct purchaser claims where plaintiff was not a direct purchaser of the price-fixed component product).

standing because they failed to show a conspiracy to set the foreign ATM fees that the plaintiffs

actually paid) (emphasis added). This is fatal to DAPs' claims: they do not allege a conspiracy to

set the prices that they paid for finished products, and their claims are based instead on a theory

that "Defendants have combined and conspired to fix, raise, maintain or stabilize the prices of

CRTs, which conspiracy **had a[n]** . . . **effect on the price of CRT Finished Products**." *See*

Iovieno Ltr. at 1 (emphasis added). Under *ATM Fee*, that is not enough.[13] *See* 2012 WL

2855813, at *10 ("*Illinois Brick* rejected exceptions . . . **when the price-fixed good is a vital input**

**to a larger product**.") (emphasis added).

Given the above, the only possibility for DAPs to establish standing is the "owned or

controlled" exception to *Illinois Brick*. However, Your Honor has already ruled that this

exception cannot apply where "plaintiffs did not purchase a price-fixed product." *See* May 31

Report at 12; *id.* at 10 ("*Royal Printing* is not applicable here because it dealt with the issue of

from whom plaintiffs had to make a purchase in order to establish the necessary 'directness.' But

that analysis does not answer the issue we have in this case, which is that the plaintiffs here **never**

**purchased the price-fixed product from anybody**. In *Royal Printing*, the plaintiffs **did** in fact

make some purchases of the price-fixed products.") (emphases in original).

Nothing in *ATM Fee* changes this result. To the contrary, in *ATM Fee,* the Ninth Circuit

expressly **declined** to expand the "owned or control" exception based on the facts in that case, and

made it clear that, in all cases, the injury requirement under the Clayton Act is construed

"narrowly;" that the "owned or controlled" exception is likewise narrow; and that the "owned or

controlled" exception is not to be extended "even in rather meritorious circumstances." *ATM*

---

[13]Notably, *ATM Fee* expressly rejected Judge Illston's interpretation of the co-conspirator exception in *In re TFT-LCD (Flat Panel) Antitrust Litigation*, 267 F.R.D. 291 (N.D. Cal. 2010). *See* 2012 WL 2855813, at *12 n.7. Thus, *ATM Fee* confirms that *LCD* is erroneous insofar as it allows purchasers of finished products to sue under the co-conspirator exception and also was wrong to rely upon *In re Sugar Industry Litigation*, 579 F.2d 13 (3d Cir. 1978), or *In re Linerboard Antitrust Litigation*, 305 F.3d 145 (3d Cir. 2002), in doing so. What is more, *ATM Fee* explains that *Sugar* was not decided under the co-conspirator test at all, and that *In re Linerboard* should be rejected outright: that decision "restrict[s] *Illinois Brick*'s influence by allowing an exception when the direct purchaser conspires with the seller, even though the price illegally set is an upstream cost that is passed-on to the plaintiffs. This contradicts the Supreme Court's admonition 'not to carve out exceptions to the [direct purchaser] rule for particular types of markets.'" *Id.*

*Fee*, 2012 WL 2855813, at *1, *5-6, *11-13 (quoting *UtiliCorp*, 497 U.S. at 216). Indeed, as Your Honor has held, there is no freestanding exception to *Illinois Brick* based on deterrence, no risk in this case that the "extensive conspiracy" alleged will somehow escape prosecution, and no other extraordinary reason to allow an exception to *Illinois Brick*.[14] May 31 Report at 11.

### C. The Court's Prior Rulings On This Exact Issue Compel The Identical Result Here.

The underlying purpose behind the multidistrict litigation system is to provide "uniformity, consistency, and predictability in litigation," *Hartford*, 2005 WL 1115877, at *1, by, among other things, "prevent[ing] inconsistent pretrial rulings" and providing "uniform[] and even application of the law across" the multidistrict litigation, *United States v. Diabetes Treatment Ctrs. of Am., Inc.*, 238 F. Supp. 2d 270, 273, 276 (D.D.C. 2002). This is especially critical where the issue to be examined is "inextricably interwoven with all the elements of [the] litigation." *In re IBM Peripheral EDP Devices Antitrust Litig.*, 411 F. Supp. 791 (JPML 1976).

Determining which plaintiffs have federal antitrust standing under the Sherman Act is a critical and central legal issue in this litigation, affecting the scope of discovery, classes, and the damages at issue, and demanding uniform and consistent rulings. *See* May 31 Report at 3-4 (recognizing that ruling could potentially "be the basis for motions for summary judgment in the direct action cases"). DAPs have recognized as much, as manifested by their request to "participate in the briefing and hearing" leading up to the Your Honor's May 31 Report, and their acknowledgement that the May 31 Report sets a precedent applicable to DAPs in this litigation. *See* Stipulation and [Proposed] Order [Dkt. No. 1227] (June 11, 2012); Direct Action Plaintiffs' Statement of Issues Related to Special Master's Report and Recommendation Regarding Defendants' Joint Motion for Summary Judgment [Dkt. No. 1237] (June 21, 2012), at 2 (recognizing that the May 31 Report would "set a precedent in the litigation that could be used in the DAP actions."); DAP Opp'n at 1, 5 (acknowledging that Defendants' motion for summary

---

[14]Independently, for all the reasons set forth *infra* in Section II.C, DAPs' claims based on purchases of finished products should also be dismissed for lack of antitrust standing pursuant to *AGC*, 459 U.S. at 537-44.

1    judgment affects DAPs' standing).

2         Your Honor has already considered and rejected all of DAPs' arguments in favor of

3    standing.  There is no reason why the outcome should be different here.

4    **II.  Certain Plaintiffs' State-Law Claims Must Be Dismissed For Failure To State A**
     **Claim On Which Relief May Be Granted.**

5
         **A.  Nearly All Of Plaintiffs' State-Law Claims Should Be Dismissed As Untimely**
6            **Under the Applicable Three- and Four-Year Statutes of Limitations.**

7         DAPs assert state antitrust and consumer protection claims under the laws of seventeen

8    different states.  The applicable limitations periods for these state antitrust and consumer

9    protection claims range from three to six years.[15]  DAPs allege injuries as a result of purchasing

10   what they call "CRTs" and "CRT Products" between March 1, 1995 and November 25, 2007.

11   However, DAPs, with only two exceptions, waited to file suit until ***November 14, 2011***.[16]  As a

12   result, virtually all of DAPs' claims based on those purchases exceed the applicable three- or

13   four-year statutes of limitations.

14        Given the sheer number of state-law claims at issue, the undersigned Defendants have

15   attached a chart that shows exactly which of DAPs' state-law claims exceed the applicable three-

16   or four-year statutes of limitations.  *See* Appendix B.[17]  Appendix B breaks down each of DAPs'

17

18   ───────────────
     [15]Limitations periods applicable to DAPs' state antitrust and consumer protection claims:

19   ***Three Years***:  Kansas and Mississippi.  Kan. Stat. Ann. § 60-512(2); Miss. Code Ann. § 15-1-
     49.

20   ***Four Years***:  Arizona, California, Florida, Illinois, Iowa, Massachusetts, Michigan, Minnesota,
     Nebraska, Nevada, New Mexico, New York, North Carolina, and Washington.  Ariz. Rev. Stat.
21   § 44-1410(B); Cal. Bus. & Prof. Code § 16750.1; Cal. Bus. & Prof. Code § 17208; Fla. Stat.
     Ann. § 95.11(3)(f); 740 Ill. Comp. Stat. § 10/7(2); Iowa Code Ann. § 553.16; Mass. Gen. Laws
22   Ann. ch. 260, § 5A; Mich. Comp. Laws Ann. § 445.781; Minn. Stat. Ann. § 325D.64; Neb.
     Rev. Stat. § 25-206; Nev. Rev. Stat. § 598A.220; N.M. Stat. Ann. § 57-1-12; N.Y. Gen. Bus.
23   Law § 340(5); N.C. Gen. Stat. § 75-16.2; Wash. Rev. Code § 19.86.120.

24   ***Six Years***:  Wisconsin.  Wis. Stat. Ann. § 133.18(2).

     [16]The two exceptions are Electrograph's complaint, which was filed on February 18, 2011, and
25   Polaroid's complaint, which was filed on November 4, 2011.

26   [17]In addition to the claims listed in Appendix B, Polaroid's claims based on purchases made *prior*
     *to November 4, 2007* exceed the applicable four-year statute of limitations periods, Electrograph's
27   claim under N.Y. Gen. Bus. Law § 349 exceed the applicable three-year statute of limitations period, the
     remainder of Electrograph's claims based on purchases made *prior to February 18, 2007* exceed
     the applicable four-year statute of limitations periods, and Target's Wisconsin claims based on
28   purchases made *prior to November 14, 2005* exceed the applicable six-year statute of limitations

                                              10

1    state-law antitrust and consumer production claims, the applicable limitations period, the date on

2    which that DAP filed its complaint, and whether that claim is time-barred. *See id.*[18]

3         Because it is apparent from the face of their complaints that virtually all of the purchases

4    for which DAPs seek damages exceed the applicable three- or four-year limitations period, DAPs

5    must plead factual allegations sufficient to show that the limitations period should be tolled. *See,*

6    *e.g.*, *Allen v. United Fin. Mortg. Corp.*, No. 09-2507 SC, 2010 U.S. Dist. LEXIS 26503, at *3-4

7    (N.D. Cal. Mar. 22, 2010) (Conti, J.) ("'[P]laintiffs seeking to toll the statute of limitations on

8    various grounds must have included the allegation in their pleadings.'" (quoting *Wasco Prods.,*

9    *Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 991 (9th Cir. 2006), and citing *Pace v. DiGuglielmo*,

10   544 U.S. 408, 418 (2005))); *see also Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034,

11   1045-46 (9th Cir. 2011) (ruling that plaintiffs failed to demonstrate basis for equitable tolling or

12   fraudulent concealment). However, DAPs' tolling allegations fail as a matter of law.

13        *First*, DAPs' fraudulent concealment allegations—putting aside for the moment that they

14   were not pleaded with sufficient particularity—cannot save DAPs' untimely claims because any

15   applicable tolling on the basis of fraudulent concealment ended no later than November 8, 2007,

16   when the alleged conspiracy became publicly known due to the European Commission's

17   announcement of its investigation into CRT manufacturers. *See* RJN Exh. 1.

18        *Second*, principles of equitable estoppel cannot rescue DAPs' untimely claims because

19   DAPs do not specifically plead any active conduct, beyond the purported wrongdoing upon which

20   their claims are founded, that would have prevented them from filing suit. Nor do DAPs plead

21   any specific allegations that they were induced not to sue by any Defendant's conduct.

22        *Third*, DAPs cannot avail themselves of class-action tolling during the pendency of the

23   _____

     period. Because their fraudulent concealment allegations are deficient, *see* section II.A.1. *infra*,
24   those claims should also be dismissed as untimely.

     [18]The analysis in Appendix B assumes *arguendo* that the fraudulent concealment doctrine applies
25   to each of the Plaintiffs' claims for some period of time. As explained below, even with this
     assumption, virtually all DAPs' claims ***are still untimely*** because any tolling on the basis of
26   fraudulent concealment ended, and DAPs were on notice of their potential claims, as of
     November 8, 2007. Of course, Defendants do not concede that DAPs are actually entitled to
27   tolling based on fraudulent concealment. Indeed, DAPs allegations of fraudulent concealment are
     deficient, and not all the states implicated in DAPs' claims may actually recognize fraudulent
28   concealment as an applicable tolling doctrine. *See* section II.A.1. *infra*.

1 DPP or IPP actions in this case because: (a) the IPP consolidated complaint expressly excludes

2 non-end users, such as DAPs, from their putative class; and (b) DPPs do not assert the state-law

3 claims that DAPs do here.

4       Because virtually all of DAPs' state-law claims are time-barred, and there is no applicable

5 tolling doctrine that can save their claims, those claims should be dismissed. *See Jablon v. Dean*

6 *Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980) (dismissal of a claim on statute of limitations

7 grounds is proper under Rule 12(b)(6) where the facts and dates alleged in the complaint indicate

8 the claims are time-barred).

9         **1.     Plaintiffs' Fraudulent Concealment Allegations Are Unavailing.**

10       DAPs generically allege that Defendants "fraudulently concealed" the existence of a

11 conspiracy, tolling the statute of limitations on their respective claims. *See, e.g.*, Best Buy

12 Compl. ¶¶ 223-235 ("As a result of Defendants' fraudulent concealment of their conspiracy, the

13 running of any statute of limitations has been tolled with respect to any claims that Plaintiffs have

14 as a result of the anticompetitive conduct alleged in this complaint.").[19] These conclusory

15 allegations are plainly insufficient under Rule 9(b), which requires a plaintiff to plead fraud

16 allegations with particularity—which DAPs have not done here. *See, e.g.*, *Guerrero v. Gates*, 442

17 F.3d 697, 706-07 (9th Cir. 2006) (to invoke fraudulent concealment, "[t]he plaintiff must . . .

18 'plead with particularity the facts which give rise to the claim of fraudulent concealment'")

19 (quoting *Conerly v. Westinghouse Elec. Corp.*, 623 F.2d 117, 120 (9th Cir. 1980)); *see also*

20 *Global Servs. v. IKON Office Solutions*, No. C 10-05974 JSW, 2011 U.S. Dist. LEXIS 143123, at

21 *6-16 (N.D. Cal. Dec. 13, 2011) (finding allegations, including allegations of "self-concealing"

22 wrongful conduct, insufficient to toll statute of limitations based on fraudulent concealment).

23       Even assuming that DAPs' allegations were sufficiently pleaded (which they are not),

24 fraudulent concealment still cannot save their claims, as any applicable tolling on the basis of

25 fraudulent concealment ended at the latest on ***November 8, 2007***—the date that the European

26 _____

27 [19]*See also* Polaroid Compl. ¶¶ 174-177; Target Am. Compl. ¶¶ 233-245; P.C. Richard Compl. ¶¶ 220-232; Tweeter Compl. ¶¶ 218-230; CompuCom Compl. ¶¶ 216-228; Interbond Compl.

28 ¶¶ 214-226; Costco Compl. ¶¶ 160-173; Circuit City Compl. ¶¶ 222-234; Office Depot Compl. ¶¶ 215-227.

1    Commission publicly announced that it had "carried out unannounced inspections at the premises

2    of manufacturers of cathode ray tubes (CRTs)" because it had "reason to believe that the

3    companies concerned may have violated EC Treaty rules on cartels and restrictive business

4    practices (Article 81)."  RJN Exh. 1.  And, if there was any doubt as to whether DAPs were on

5    notice of their potential claims as of the European Commission's announcement, just five days

6    later, on November 13, 2007, the first DPP filed suit.[20]  Accordingly, DAPs' claims are not tolled

7    for any portion of the period from November 8, 2007 to November 14, 2011, the date when all

8    but two DAPs finally filed their respective claims.[21]

9         Any attempt to rely on a particular state's discovery rule fails for the same reason—DAPs

10   were put on notice of their potential claims when the European Commission publicly disclosed its

11   investigation.  If a discovery rule applies to a claim, then where a plaintiff suffers a "latent"

12   injury, "the cause of action does not accrue until the plaintiff has discovered, or by reasonable

13   diligence should have discovered, the injury."  *See e.g.*, Miss. Code Ann. § 15-1-49(2).  But here,

14   because DAPs were put on notice of their potential claims by the European Commission's

15   announcement, by reasonable diligence they "should have discovered" their alleged injury by

16   November 8, 2007.  To invoke any applicable discovery rule, DAPs were obliged to "'plead that,

17   despite diligent investigation of the circumstances of the injury, [they] could not have reasonably

18   discovered facts supporting the cause of action within the applicable statute of limitations

19   period.'"  *Deirmenjian v. Deutsche Bank, A.G.*, 526 F. Supp. 2d 1068, 1092 (C.D. Cal. 2007)

20   (quoting *Fox v. Ethicon Endo-Surgery, Inc.*, 110 P.3d 914, 921 (Cal. 2005)).  But DAPs failed to

21

22   [20]The CompuCom, P.C. Richard, and Tweeter complaints concede that these DAPs were on
     notice of the alleged conspiracy when the first class action complaints were filed in November
23   2007.  *See* CompuCom Compl. ¶ 216; P.C. Richard Compl. ¶ 220; Tweeter Compl. ¶ 218.
     Judicially noticeable facts demonstrate that the first class action complaint, *Kindt v. Matsushita*
24   *Electric Industrial Co., Ltd.*, 07-cv-10322 (S.D.N.Y. 2007), was filed on November 13, 2007.
     *See* RJN Exh. 2; *see also Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th
25   Cir. 2006) (courts may take judicial notice of court filings and other matters of public record,
     including pleadings).  As a result, any tolling of the claims alleged in the CompuCom, P.C.
26   Richard, and Tweeter complaints ended, at the very latest, on November 13, 2007—if it had not
     already ended on November 8, 2007 with the European Commission's announcement.

27   [21]Because DAPs' allegations of fraudulent concealment are insufficient to save their untimely
     claims, Defendants have not addressed whether each of the states at issue even recognizes the
28   fraudulent concealment doctrine.

do so.  Consequently, not only are DAPs' allegations deficient—even assuming the discovery rule applies to DAPs' state-law claims[22]—virtually all of those claims are still untimely.

### 2. Principles Of Equitable Estoppel Do Not Toll Plaintiffs' State-Law Claims.

Similarly, equitable estoppel cannot rescue DAPs' time-barred claims from dismissal.  By way of example, Circuit City, CompuCom, Costco, Office Depot, and Target each bring claims under California's Cartwright Act and/or UCL.  In California, equitable estoppel "halts the statute of limitations when there is 'active conduct by a defendant, above and beyond the wrongdoing upon which the plaintiff's claim is filed, to prevent the plaintiff from suing in time.'"  *Guerrero*, 442 F.3d at 706 (quoting *Santa Maria v. Pac. Bell*, 202 F.3d 1170, 1176-77 (9th Cir. 2000)).  But under California law, "[t]he fraudulent concealment doctrine does not come into play, whatever the lengths to which a defendant has gone to conceal the wrongs, if a plaintiff is on notice of a potential claim."  *Snapp & Assocs. Ins. Servs., Inc. v. Robertson*, 96 Cal. App. 4th 884, 890-91 (2002) (internal citation and quotations omitted).

DAPs fail to identify any active conduct on the part of any Defendant that prevented DAPs from filing their respective lawsuits within the limitations period.  Apart from the fact that DAPs are not able to identify any such active conduct, they were nevertheless on notice of their potential claims as of November 8, 2007.  Under California law, there is no basis to impose equitable estoppel as to any of DAPs' California claims.  *See Guerrero*, 442 F.3d at 706-07 (concluding that equitable estoppel did not preserve plaintiff's untimely claim due to plaintiff's failure to "plead with particularity any additional fraudulent behavior on the part of the defendants that would excuse [] delay in bringing this suit").  Because DAPs' respective complaints are devoid of any allegation indicating that they were induced not to sue by any

---

[22]Whether the discovery rule applies to DAPs' state-law antitrust and consumer protection claims is a state-by-state question.  A number of states' antitrust and consumer protection act statutes do not expressly recognize the discovery rule, or their state court of last resort has not resolved this issue.  *See, e.g.*, *Four Seasons Apts. v. AAA Glass Serv.*, 37 Kan. App. 2d 248, 252 (2007); *see also* Kan. Stat. Ann. § 60-512(2).  Accordingly, Defendants do not concede that the discovery rule applies to DAPs' claims, but rather, assume *arguendo* that it does—in which case virtually all of DAPs' claims *are still untimely*.

DEFS.' JOINT NOTICE OF MOT. AND MOT. TO DISMISS AND FOR JUDGMENT ON THE PLEADINGS AS TO
CERTAIN DIRECT ACTION PLS.' CLAIMS AND MEM. OF LAW IN SUPPORT (3:07-CV-05944 SC, MDL NO. 1917)

conduct of Defendants, equitable estoppel is inapplicable to and does not save DAPs' untimely

claims.

### 3. Class Action Tolling Does Not Apply To Plaintiffs' State-Law Claims.

#### (a) The IPP Complaint Does Not Toll Plaintiffs' State-Law Claims.

The class action tolling doctrine is inapplicable because DAPs are not members of the

purported class described in the IPP class-action complaints. Class-action tolling only preserves

the rights of *putative class members* to file individual claims. *See Crown Cork & Seal Co. v.

Parker*, 462 U.S. 345, 353-54 (1983); *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974).

DAPs are not entitled to benefit from class tolling stemming from the IPP complaint because the

putative IPP class is expressly limited to, in relevant part:

> All persons and or entities who or which indirectly purchased in the United States
> *for their own use and not for resale*, CRT Products manufactured and/or sold by
> the Defendants, or any subsidiary, affiliate, or co-conspirator thereof, at any time
> during the period from at least March 1, 1995 through at least November 25, 2007.

IPP Third Cons. Am. Compl. ¶ 232 (emphasis added). The class definition clearly excludes all

entities, such as DAPs, that purchased CRT Products "for resale." By the plain language of the

IPP class definition, retailers such as Target, Sears, Kmart, Old Comp, Good Guys, and Radio

Shack—all of whom expressly acknowledge that they purchased "substantial amounts of CRTs"

for resale, *e.g.*, Target Am. Compl. ¶¶ 16, 19, 25, 31, 35—are excluded from the class. Any other

interpretation would render the class definition meaningless.

#### (b) The DPP Complaint Does Not Toll Plaintiffs' State-Law Claims.

DPPs filed several class actions under federal law that were subsequently consolidated for

pretrial purposes as part of this MDL. *See* DPP Cons. Am. Compl. Importantly, the DPP

complaints assert claims only under *federal law*. *See* DPP Cons. Am. Compl. ¶ 214. Conversely,

DAPs' time-barred claims are asserted under the laws of seventeen different *states*. Because none

of these state-law claims was included in any of the federal DPP class actions, no tolling can

occur on this basis. *See In re Vertrue Mktg. & Sales Practices Litig.*, 712 F. Supp. 2d 703, 718-

19 (N.D. Ohio 2010) ("[O]nly the claims expressly alleged in a previous federal lawsuit are

1    subject to tolling."); *Williams v. Boeing Co.*, 517 F.3d 1120 (9th Cir. 2008) (because "neither the

2    Original nor the First Amended Complaints stated a claim for compensation discrimination . . .

3    the statute of limitations was not tolled for that claim").

**B.    Plaintiffs' Claims Should Be Dismissed To The Extent That They Do Not Allege Purchases In The Forum States.**

**1.    Certain Plaintiffs' State-Law Claims Should Be Dismissed For Failure To Allege Sufficient Contacts With Relevant States.**

7    The Court should dismiss certain of DAPs' state-law claims because those DAPs have

8    failed to allege that they purchased any CRTs or CRT finished products in the following states:

9    Arizona, California, Florida, Illinois, Iowa, Kansas, Massachusetts, Michigan, Minnesota,

10   Mississippi, Nebraska, Nevada, New Mexico, New York, North Carolina, and Wisconsin.

11   Appendix C summarizes which DAPs' state-law claims are deficient and should be dismissed.

12   DAPs must show significant contacts in these states—both with the parties and with the

13   occurrence or transaction giving rise to the litigation.  *See Phillips Petroleum Co. v. Shutts*, 472

14   U.S. 797, 821-22 (1985) (stating that due process requires "significant contact or significant

15   aggregation of contacts" between plaintiff's claims and state where plaintiff claims damages);

16   *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 310-11 (1981) (application of state's law is

17   unconstitutional unless "parties and the occurrence or transaction" giving rise to plaintiff's claim

18   have significant contacts with the state); *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180,

19   1187 (9th Cir. 2001) ("[P]laintiff does not show how the application of California law satisfies

20   constitutional due process requirements in this case.").  DAPs have failed to meet this burden.

21   The relevant occurrence or transaction at issue in price-fixing cases, such as this one, is

22   the ***purchase*** of an allegedly price-fixed good.  *See In re Graphics Processing Units Antitrust*

23   *Litig.*, 527 F. Supp. 2d 1011, 1028 (N.D. Cal. 2007) (dismissing state-law claims because

24   plaintiffs did not establish that they purchased price-fixed goods in California); *In re TFT-LCD*

25   *(Flat Panel) Antitrust Litig.*, No. M 07-1827 SI, 2010 WL 2609434, at *2 (N.D. Cal. June 28,

26   2010) (granting defendants' motion to dismiss state-law claims where plaintiffs did not allege

27   purchasing products in those states).

28   To establish the purchase of products in a particular state, a plaintiff must allege that it

16

1    issued purchase orders from that state or received and paid invoices in that state.  *See In re TFT-*

2    *LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI, 2011 WL 3809767, at *2-3 (N.D. Cal.

3    Aug. 29, 2011) (holding that "the issuance of purchase orders may be a sufficiently significant

4    contact to justify the application of a state's law" and dismissing plaintiff's claims under Florida

5    and Arizona law after finding that the plaintiff had not sufficiently established purchases in those

6    states because it had not issued purchase orders, or received or paid invoices in those states).  A

7    plaintiff cannot demonstrate the purchase of allegedly price-fixed goods by the mere receipt of

8    goods in a state.  *Id.* at *3 (finding that the plaintiffs did not adequately allege purchases made in

9    the two states where the plaintiff only received deliveries).  Likewise, a plaintiff cannot establish

10   a purchase by pleading that it:  (1) is headquartered in a state; (2) conducts a substantial amount

11   of business in a state; or (3) resold products in a state.  *See In re TFT-LCD (Flat Panel) Antitrust*

12   *Litig.*, 2010 WL 2609434, at *3 ("[T]he fact that plaintiffs have a presence in the various states

13   does not establish a link between plaintiffs' antitrust claims and the States . . . plaintiffs must be

14   able to allege that 'the occurrence or transaction giving rise to the litigation'—plaintiffs'

15   purchases of allegedly price-fixed goods—occurred in the various states.").  Similarly, a

16   ***defendant's*** business in a state, such as maintaining sales offices or sales agents, does not provide

17   a link between the state and a plaintiff's claims that it purchased price-fixed products there.  *See*

18   *id.* at *3.

19                    (a)     **Certain DAPs Have Not Alleged That They Purchased CRTs**
                              **Or CRT Finished Products In Relevant States.**
20

21          Certain DAPs have not even alleged that they purchased goods in the state or states whose

22   laws they have invoked.  These DAPs' state-law claims should be dismissed under Rule 12(b)(6):

23   •   **Magnolia Hi-Fi** alleges damages under Minnesota law, *see* Best Buy Compl. ¶¶ 243-249,

24       but does not allege that it purchased products in Minnesota.  Rather, Magnolia Hi-Fi

25       alleges only that it purchased products in Washington.  *Id.* ¶ 21.

26   •   **Costco** brings claims under the laws of Arizona, Florida, and Illinois, yet Costco does not

27       allege that it purchased products in those states.  Costco Compl. ¶ 13.  Rather, Costco

28       merely states that it received products at its distribution centers located in those states.  *Id.*

¶ 14. Costco does not allege that the distribution centers in Arizona, Florida, and Illinois issued purchase orders or received and paid invoices in those states. By contrast, Costco does allege that those activities occurred in Costco's regional offices in California and Washington. *Id.* ¶¶ 13-14.

- **The Polaroid Plaintiffs** bring claims under California law, *see* Polaroid Compl. ¶ 9, yet they do not allege that they made any purchases in California.

> **(b)** **Certain DAPs Have Insufficiently Alleged Purchases Of CRT Products In Relevant States.**

Certain other DAPs allege that they made purchases in the states whose laws they have invoked, yet their allegations are insufficient under the governing standards.

- **Circuit City** brings claims under California law, *see* Circuit City Compl. ¶¶ 242-260, and alleges that it made purchases in California when it (1) received shipments of, and took title to, products at distribution centers in California; (2) sent purchase orders and payments for products to California; (3) maintained inventories of products and operated offices and warehouses in California; (4) sold products to consumers in California; and (5) maintained agents and representatives in California, who sold CRT products to consumers in California. *Id.* ¶¶ 9, 21, 243.

- **Circuit City** brings claims under Illinois law and alleges that it made purchases in Illinois when it (1) received shipments of and took title to products at its distribution center in Illinois; (2) maintained inventories in Illinois; and (3) shipped CRT products to its retail stores in Illinois. *Id.* ¶¶ 9, 22, 265.

- **CompuCom** brings claims under New York law, *see* CompuCom Compl. ¶¶ 253-258, and California law, *id.* ¶¶ 236-252, and alleges that it made purchases in those states when it (1) sent purchase orders and payment for products to various product manufacturers in those states; (2) sold products in those states; (3) maintained offices and inventories in those states, and (4) maintained agents and representatives in those states, who sold products to consumers in those states. *Id.* ¶¶ 11, 16, 18, 237, 254.

- **The Electrograph Plaintiffs** bring claims under California law, *see* Electrograph Am. Compl. ¶¶ 11, 250-267, and allege that they made purchases in California when they (1) maintained warehouses in California; (2) maintained agents and representatives in California; (3) sold products in California; and (4) conducted substantial business in California. *Id.* ¶¶ 15-16, 260-261.

- **The Electrograph Plaintiffs** bring claims under New York law, *see id.* ¶¶ 12, 268-281, and allege that they made purchases in New York when they (1) maintained warehouses, agents, and representatives in New York; (2) sold products in New York; and (3) conducted substantial business in New York. *Id.* ¶¶ 15-16, 269.

- **Office Depot** brings claims under California law, *see* Office Depot Compl. ¶¶ 243-259, and alleges that it made purchases in California when it (1) sent purchase orders and payments for products to California; and (2) received shipments of products at its warehouses in California. *Id.* ¶ 244. Office Depot also alleges, however, that it sent purchase orders and payment for products from Florida and was invoiced for products it purchased in Florida. *Id.* ¶¶ 17-19, 238, 244.

- **The Polaroid Plaintiffs** bring claims under Minnesota law, *see* Polaroid Compl. ¶¶ 188-193, and allege that they "indirectly purchased" products in Minnesota. *Id.* ¶¶ 1, 18, 21. However, the Polaroid Plaintiffs do not allege any facts to indicate that they actually made purchases in Minnesota. *Id.* ¶¶ 18, 21.

- **Target** brings claims under the laws of Arizona, California, Florida, Illinois, Iowa, Kansas, Michigan, New York, North Carolina, and Wisconsin, *see* Target Am. Compl. ¶¶ 253-273, 275, 281-283, and alleges that it purchased CRTs at distribution centers in those states when it received CRTs shipped to those distribution centers. *Id.* ¶ 18. However, Target specifically states that its headquarters in Minnesota took the following actions to establish a purchase: (1) issued purchase orders for CRTs; and (2) received invoices for those orders. *Id.* ¶¶ 16-18.

- **Sears** brings claims under the laws of Arizona, California, Florida, Massachusetts, Michigan, Minnesota, Mississippi, Nevada, New Mexico, New York, North Carolina, and

19

Wisconsin and alleges that it purchased goods in those states when it received CRTs shipped to distribution centers located in those states. *Id.* ¶¶ 22, 268-270, 274-277, 279-283. Sears also states that its headquarters in Illinois took the following actions to establish a purchase: (1) issued purchase orders for CRTs; and (2) received invoices for those orders. *Id.* ¶¶ 19-22.

- **Sears** brings claims under the laws of Nebraska and alleges that it purchased goods in Nebraska. *Id.* ¶ 278. However, Sears does not plead any facts to support this allegation.

- **Kmart** brings claims under the laws of California, Florida, Illinois, Minnesota, Nebraska, Nevada, and North Carolina and alleges that it purchased CRTs at distribution centers in those states, but does not plead any facts to support this allegation. *Id.* ¶¶ 22, 268, 270-71, 276, 278-79, 282. Kmart also states that its headquarters in Michigan was responsible for (1) issuing purchase orders for CRTs; and (2) receiving invoices for those orders. *Id.* ¶¶ 19-22.

- **Old Comp** brings claims under the laws of California and Illinois and alleges that it purchased goods in those states when it received CRTs shipped to distribution centers located in those states. *Id.* ¶¶ 27, 268, 271. Old Comp also states that its headquarters in Texas was responsible for (1) issuing purchase orders for CRTs; and (2) receiving invoices for those orders. *Id.* ¶¶ 25-27.

- **RadioShack** brings claims under the laws of California, Massachusetts, and Mississippi and alleges that it purchased goods in those states when it received CRTs shipped to distribution centers in those states. *Id.* ¶¶ 37, 268, 274, 277. RadioShack also states that its headquarters in Texas was responsible for (1) issuing purchase orders for CRTs; and (2) receiving invoices for those orders. *Id.* ¶¶ 35-37.

These DAPs' allegations as to where they received goods, maintained distribution centers and sales offices, and sold goods are irrelevant and do nothing to establish the requisite connection between the claims at issue and the respective states. The relevant constitutional inquiry is not where DAPs may have sold products or transacted business, but whether the "occurrence or transaction" giving rise to their claims, *i.e.*, purchases by DAPs of allegedly price-

20

1   fixed goods, occurred in the relevant states.  *See Hague*, 449 U.S. at 308.  Likewise, DAPs' mere

2   delivery of goods to the relevant states does not constitute the "occurrence or transaction" to

3   establish a "significant contact or aggregation of contacts" with those states.  *See Phillips*

4   *Petroleum*, 472 U.S. at 821-22; s*ee also In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL

5   3809767, at *3 (finding that the plaintiffs did not adequately allege purchases made in the two

6   states where the plaintiff only received deliveries).  For all of these reasons, DAPs fail to allege

7   the requisite contacts between their claims and the states whose laws they seek to invoke, thereby

8   requiring a dismissal of their state-law claims as contrary to Due Process requirements.

9        **2.**       **The Same Plaintiffs Whose State-Law Claims Fail To Establish**

10                  **Contacts With Relevant States Should Also Be Dismissed For Lack Of**
                **Standing.**

11        Just as certain DAPs' state-law claims fail to meet the requirements of due process, so too

12  do those state-law claims fail to satisfy the requirements of prudential standing.  The prudential

13  limitations on federal court jurisdiction require that:  (1) a plaintiff must assert his own legal

14  rights and interests, not those of others; (2) courts will not adjudicate "generalized grievances;"

15  and (3) a plaintiff's claims must "fall within '***the zone of interests*** to be protected or regulated by

16  the statute or constitutional guarantee in question.'"  *Valley Forge Christian Coll. v. Americans*

17  *United for Separation of Church & State, Inc.*, 454 U.S. 464, 474-75 (1982) (quoting *Ass'n of*

18  *Data Processing Serv. Orgs. v. Camp*, 397 U.S. 150, 153 (1970)) (emphasis added).  Applying

19  these requirements, courts have dismissed antitrust claims where the plaintiffs either did not

20  reside in specific states, *see In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d at

21  1026-27, or did not reside in, or purchase goods in, specific states, *see In re Terazosin*

22  *Hydrochloride Antitrust Litig.*, 160 F. Supp. 2d 1365, 1371 (S.D. Fla. 2001).  *See also Pecover v.*

23  *Elec. Arts, Inc.*, 633 F. Supp. 2d 976, 984-85 (N.D. Cal. 2009) (dismissing putative class

24  plaintiffs' claims for lack of standing in 18 states because the class plaintiffs did not reside in or

25  purchase the product at issue in those states).

26        The state statutes authorizing antitrust claims create causes of action to remedy antitrust

27

28

1 conspiracies that affect commerce *within* each of those respective states.[23] Thus, a company that

2 purchased a television in one state cannot avail itself of a second state's antitrust statute because

3 that purchase is not within the "zone of interests" that the second state's legislature sought to

4 protect. *See Valley Forge*, 454 U.S. at 475. All DAPs' state-law claims that fail to allege a

5 purchase in the state under whose laws are invoked similarly fall outside the zone of interests.

6 They therefore fail to meet the prudential standing requirements and should be dismissed.

---

[23]*See* Ariz. Rev. Stat. § 44-1402 ("A contract, combination or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce, any part of which is *within this state*, is unlawful") (emphasis added); Cal. Bus. & Prof. Code § 16720(d) ("To fix at any standard or figure, whereby its price to the public or consumer shall be in any manner controlled or established, any article or commodity of merchandise, produce or commerce intended for sale, barter, use or consumption *in this State*"); Fla. Stat. § 501.201 *et seq.* (*see Delgado v. J.W. Courtesy Pontiac GMC-Truck, Inc.*, 693 So. 2d 602, 606 (Fla. Dist. Ct. App. 1997) (purpose of FDUTPA is to create simplified statutory cause of action which bestows additional substantive remedies "*on citizens of this state* to recover economic damages" (emphasis added)); 740 Ill. Comp. Stat. § 10/2 *et seq.* ("The purpose of this Act is to promote the unhampered growth of commerce and industry *throughout the State*." (emphasis added)); Iowa Code § 553.3 *et seq.* ("Relevant market means the geographical area of actual or potential competition in a line of commerce, all or any part of which is *within this state*." (emphasis added)); Kan. Stat. Ann. § 50-101 *et seq.* ("To fix any standard or figure, whereby such person's price to the public shall be, in any manner, controlled or established, any article or commodity of merchandise, produce or commerce intended for sale, use or consumption *in this state*." (emphasis added)); Mass. Gen. Laws ch. 93A, § 2 *et seq.* (*see Robyn Lee Yacht Charters, Inc. v. Gen. Motors Corp.*, 584 F. Supp. 8 (D. Mass. 1984) (New Jersey corporation was exempt from liability under Massachusetts consumer protection statute where transactions complained of did not occur primarily and *substantially within Commonwealth of Massachusetts*)); Mich. Comp. Laws Ann. § 445.771 *et seq.* ("'Relevant market' means the geographical area of actual or potential competition in a line of trade or commerce, all or any part of which is *within this state*.") (emphasis added); Miss. Code Ann. § 75-21-3(d) *et seq.* ("Or shall destroy or attempt to destroy competition in the manufacture or sale of a commodity, by selling or offering the same for sale at a lower price at one place *in the state*.") (emphasis added); Minn. Stat. § 325D.53 *et seq.* ("[T]he following, when performed by a person *within the jurisdiction of this state, and directly affecting business in this state* . . . , shall be deemed to restrain trade or commerce unreasonably and are unlawful[.]") (emphasis added); Neb. Rev. Stat. § 59-801 *et seq.* ("Every contract, combination in the form of trust or otherwise, or conspiracy in restraint of trade or commerce, *within this state*, is hereby declared to be illegal.") (emphasis added); Nev. Rev. Stat. Ann. § 598A.030 *et seq.* ("The acts of persons which result in the restraint of trade and commerce [are defined as acts] to destroy free and open competition *in our market system* and, thereby, result in increased costs and the deterioration in quality of commodities and services *to the citizens of the State of Nevada*.") (emphasis added); N.M. Stat. Ann. § 57-1-1 *et seq.* ("Every contract, agreement, combination or conspiracy in restraint of trade or commerce, any part of which is *within this state*, is unlawful.") (emphasis added); N.Y. Gen Bus. Law § 340 *et seq.* ("Competition or the free exercise of any activity in the conduct of any business, trade or commerce or in the furnishing of any service *in this state* is or may be restrained . . . .") (emphasis added); N.C. Gen. Stat. § 75-1 *et seq.* ("Every contract, combination in the form of trust or otherwise, or conspiracy in restraint of trade or commerce *in the State of North Carolina* is hereby declared to be illegal.") (emphasis added); Wis. Stat. § 133.01 *et seq.* ("It is the intent of the legislature to make competition the fundamental economic policy *of this state*.") (emphasis added).

**C.** **Plaintiffs Who Merely Purchased Finished Products Containing CRTs Lack Antitrust Standing Under The *Associated General Contractors* Test In Five Of The States At Issue.**

For all of the reasons detailed above, the Sherman Act claims of any DAPs that purchased only finished products containing CRTs, as opposed to CRTs themselves, are barred under *Illinois Brick* and its progeny. *See supra* Section I. Even in those states that have repealed the categorical bar on indirect purchaser suits set forth in *Illinois Brick*, however, the fact that a party claims to have purchased a downstream product does not answer the "analytically distinct . . . question of which persons have sustained injuries too remote to give them standing to sue . . . ." *Illinois Brick*, 431 U.S. at 728 n.7. Thus, even in *Illinois Brick* "repealer states," DAPs must still satisfy the requirements for antitrust standing under the separate and distinct standard established in *AGC*, 459 U.S. at 537-44 (1983), and cannot do so here.

Antitrust standing is a threshold requirement that every plaintiff must satisfy, which requires the court to determine "whether the plaintiff is a proper party to bring a private antitrust action." *AGC*, 459 U.S. at 535 n.31. The determination centers on the relationship between a given plaintiff's alleged harm and the alleged wrongdoing by defendant(s). In *AGC*, the Supreme Court articulated a multi-factor test to be applied in determining antitrust standing. *See id.* at 537-44. The Ninth Circuit has adhered to this test, the factors of which include: (1) the nature of the injury alleged by plaintiff; specifically, whether that injury is of the type which the antitrust law was intended to forestall ("antitrust injury"); (2) the directness of the plaintiff's alleged injury; (3) the speculative measure of the harm; (4) the risk of duplicative recovery; and (5) the complexity of apportioning damages. *See Lucas Auto. Eng'g, Inc. v. Bridgestone/Firestone, Inc.*, 140 F.3d 1228, 1232 (9th Cir. 1998). While no one factor is decisive to this inquiry, *see R.C. Dick Geothermal Corp. v. Thermogenics, Inc.*, 890 F.2d 139, 146 (9th Cir. 1989) (en banc), just **one** factor found in favor of the defendants can constitute grounds to deny standing. *In re DRAM Antitrust Litig.*, 536 F. Supp. 2d 1129, 1136 (N.D. Cal. 2008) ("*DRAM II*") ("[A] plaintiff may only pursue an antitrust action if it can show antitrust injury"); *Toscano v. PGA Tour, Inc.*, 201 F. Supp. 2d 1106, 1116 (E.D. Cal. 2002) ("[T]he absence of antitrust injury is fatal.").

1. **Plaintiffs Lack Antitrust Standing Under The State Antitrust Laws Of California, Illinois, Michigan, Arizona, And Washington.**

Although *AGC* addressed antitrust standing under the federal antitrust laws, 459 U.S. at 521, the Supreme Court's analysis has often been applied under state antitrust statutes. *See, e.g.,* *In re DRAM Antitrust Litig.*, 516 F. Supp. 2d 1072, 1088-89 (N.D. Cal. 2007) ("*DRAM I*") (applying *AGC* to similarly pleaded claims under numerous state antitrust statutes). Here, DAPs' claims are subject to *AGC* scrutiny under the antitrust laws of five of the states relied upon by DAPs in their respective complaints: California, Illinois, Michigan, Arizona and Washington.

Courts in three of these states—California, Illinois, and Michigan—have looked to and expressly applied *AGC* in determining antitrust standing under their state laws.[24] Moreover, Arizona, Washington, Illinois, and Michigan, have "harmonization" provisions that dictate that their states' antitrust statutes be construed in accordance with federal law.[25] Thus, the *AGC* test

---

[24] **California**: *See Vinci v. Waste Mgmt., Inc.*, 36 Cal. App. 4th 1811, 1814 & n.1 (1995) (applying *AGC* factors under California state law and holding that "because the Cartwright Act has objectives identical to the federal antitrust acts, the California courts look to cases construing the federal antitrust laws for guidance in interpreting the Cartwright Act"); *Kneveldard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979 (9th Cir. 2000) (applying *AGC* factors under the California Cartwright Act); *Vinci*, 36 Cal. App. 4th at 1814 (same); *see also Clayworth v. Pfizer, Inc.*, 49 Cal. 4th 758, 774 (2010) (citing *AGC* and *Vinci* approvingly in *dicta* as consistent with prior California law); **Illinois**: *See Cnty. of Cook v. Philip Morris, Inc.*, 817 N.E.2d 1039, 1045 (Ill. App. Ct. 1st Dist. 2004) (citing *AGC* in applying the "direct injury" doctrine); *see also O'Regan v. Arbitration Forums, Inc.*, 121 F.3d 1060, 1066 (7th Cir. 1997) ("Federal antitrust standing rules apply under the Illinois Antitrust Act"); **Michigan**: *See Stark v. Visa U.S.A., Inc.*, No. 03-055030, 2004 WL 1879003, at *2-4 (Mich. Cir. Ct. July 23, 2007) (applying *AGC* and holding that indirect plaintiff's "derivative and remote injuries" do not support a finding of antitrust standing); *Whitesell Int'l Corp. v. Whitaker*, No. 05-518716-CZ, 2007 WL 6741070 (Mich. Cir. Ct. July 31, 2007) ("The court must also consider the five factors set forth in [*AGC*] . . . .").

There is no rule that a court must await the interpretation of a state's highest court before applying *AGC* as a matter of state antitrust law. While federal courts are bound by decisions of the state's highest court, *see United Bhd. of Carpenters & Joiners of Am. Local 586 v. NLRB*, 540 F.3d 957, 963 (9th Cir. 2008), it is well-settled that if "there is relevant precedent from the state's intermediate appellate court, the federal court must follow the state intermediate appellate court decision unless the federal court finds convincing evidence that the state's supreme court likely would not follow it." *Ryman v. Sears, Roebuck & Co.*, 505 F.3d 993, 994 (9th Cir. 2007). No such evidence exists here.

[25] **Arizona**: Ariz. Rev. Stat. § 44-1412 (courts applying the Arizona Uniform State Antitrust Act "may use as a guide interpretations given by the federal courts to comparable federal antitrust statutes"); **Illinois**: 740 Ill. Comp. Stat. 10/11 ("When the wording of this Act is identical or similar to that of a federal antitrust law, the courts of this State shall use the construction of the federal law by the federal courts as a guide in construing this Act"); **Michigan**: Mich. Comp. Laws Ann. § 445.784 ("It is the intent of the legislature that in construing all sections of [the Michigan Antitrust Reform Act], the courts shall give due deference to interpretations given by

should be applied to Arizona and Washington as well.

In *DRAM I*, Judge Hamilton thoroughly reviewed state-specific case law and statutory authority and held that the *AGC* factors must be applied to plaintiffs' state-law claims in accordance with state case law and harmonization provisions (and specifically applied *AGC* to claims under California, Michigan, and Arizona state antitrust laws).[26] *See* 516 F. Supp. 2d at 1094-95. Judge Hamilton's well-reasoned decision in *DRAM I*, which relies upon the courts and legislatures of the states themselves, is the proper approach on this issue. *Id.* The *AGC* factors should thus be applied to any claims brought under the state antitrust statutes of California, Illinois, Michigan, Arizona, and Washington, and as set forth below, such claims should be dismissed for lack of antitrust standing.[27]

### 2. Plaintiffs Who Purchased Finished Products Containing CRTs Lack Antitrust Standing Under The *AGC* Test.

DAPs have withdrawn any allegations of a conspiracy to fix the prices of finished

---

the federal courts to comparable antitrust statutes . . ."); **Washington**: Wash. Rev. Code § 19.86.920 ("It is the intent of the legislature that, in construing this act, the courts be guided by final decisions of the federal courts and final orders of the federal trade commission interpreting the various federal statutes dealing with the same or similar matters . . . .").

[26]The District Court here has already determined that *AGC* applies under California law. *In re CRT Antitrust Litig.*, 738 F. Supp. 2d 1011, 1023 (N.D. Cal. 2010). Although a few decisions in this District have been "reticent" to apply the *AGC* test on a state-by-state basis, those decisions did **not** pronounce a general rule that *AGC* does not apply under state law. *See In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1151-52 (N.D. Cal. 2009); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109 (N.D. Cal. 2008) ("*LCD I*"). Indeed, the *Flash* decision also applied *AGC* to claims brought in California. 643 F. Supp. 2d at 1151-52. To the extent that some of these decisions have rejected a "blanket and nationwide" application of *AGC*, *see In re GPU Antitrust Litig.*, 527 F. Supp. 2d 1011, 1026 (N.D. Cal. 2007) ("*GPU I*"), Defendants do not seek relief incompatible with those decisions, as Defendants have carefully limited their *AGC* argument to only five states. And to the extent that some decisions have demanded a "clearer directive" from state courts and legislature before applying *AGC*, *see LCD I*, 586 F. Supp. 2d at 1123, a state law directly on point, or a state statutory provision "harmonizing" a state statute with federal case law clearly should be sufficient.

[27]Plaintiffs Costco, CompuCom, Electrograph, Circuit City, Office Depot and Polaroid all bring claims under California law (*i.e.*, the California Cartwright Act, Cal. Bus. & Prof. Code § 16720 *et seq.*); Costco, Circuit City, and P.C. Richard all bring claims under Illinois law (*i.e.*, the Illinois Antitrust Act, 740 Ill. Comp. Stat. § 10/1 *et seq.*); P.C. Richard brings a claim under Michigan law (*i.e.*, the Michigan Antitrust Reform Act, Mich. Comp. Laws Ann. § 445.771 *et seq.*); Costco and P.C. Richard bring claims under Arizona law (*i.e.*, Ariz. Rev. Stat. § 44-1401 *et seq.*); and Costco brings a claim under Washington law (*i.e.*, the Washington Consumer Protection Act, Wash. Rev. Code § 19.86.030).

products.  *See Iovieno* Ltr. at 1-2.  To the extent that any DAPs seek recovery for purchases of finished products that merely incorporate CRTs—such as televisions and computer monitors—as opposed to CRTs standing alone, they cannot satisfy *AGC*'s requirements for antitrust standing.  A failure to plead allegations sufficient to demonstrate antitrust standing under the *AGC* factors is grounds for dismissal.  *AGC*, 459 U.S. at 521 (affirming grant of motion to dismiss); *see also Ore. Laborers-Emp'rs Health & Welfare Trust Fund v. Philip Morris*, 185 F.3d 957, 962-66 (9th Cir. 1999) (affirming grant of judgment on the pleadings).  Here, ten of the eleven DAP complaints[28] at issue allege only that DAPs purchased "CRT Products," an ambiguous term that plainly does *not* mean just CRTs themselves.[29]

Like the DPPs in the MDL against whom summary judgment has been granted because they lack standing as direct purchasers, *see* May 31 Report at 3, any DAPs who have not specifically pleaded that they purchased CRTs themselves cannot prove antitrust standing under the laws of those states that apply *AGC*.  The claims of those DAPs should be dismissed accordingly under the state laws discussed above, as such DAPs "did not purchase any price-fixed product, *i.e.*, a CRT, from anyone."  *See id.* at 12.[30]

_____

[28]Defendants are moving on antitrust standing grounds with respect to the following Plaintiffs who allege purchases of finished products containing CRTs:  (1) CompuCom; (2) Costco; (3) Electrograph; (4) Office Depot; (5) P.C. Richard; (6) Circuit City; and (7) Polaroid.  Defendants are not moving on antitrust standing grounds as to Best Buy under Minnesota state law, Tweeter under Massachusetts consumer protection law, or Interbond under the Florida Deceptive and Unfair Trade Practices Act, as those particular state laws do not expressly implicate *AGC* antitrust standing principles.  Defendants are also not moving on antitrust standing grounds as to Target.

[29]*See* CompuCom Compl. ¶ 9; Costco Compl. ¶ 13; Electrograph Am. Compl. ¶ 9; Office Depot Compl. ¶ 9; P.C. Richard Compl. ¶ 9; Circuit City Compl. ¶ 20; Polaroid Compl. ¶ 1; *see also* Best Buy Compl. ¶ 9; Interbond Compl. ¶ 9 (same); Tweeter Compl. ¶ 9 (same).

[30]Defendants had previously made *AGC* arguments against the putative class plaintiffs, whose consolidated amended complaints utilized the exact same ambiguous term "CRT Products" as DAPs here.  *See* Defendants' Joint Notice of Motion and Motion to Dismiss Direct Purchaser Plaintiffs' Consolidated Amended Complaint [Dkt. No. 479] (May 18, 2009); Defendants' Joint Notice of Motion and Motion to Dismiss Indirect Purchaser Plaintiffs' Consolidated Amended Complaint [Dkt. No. 485] (May 18, 2009).  The Court did not accept this argument because, at that time, the Court understood that the putative class plaintiffs were "alleging a conspiracy as to CRT Products as well."  *See* Report, Recommendations and Tentative Rulings Regarding Defendants' Motions to Dismiss [Dkt. No. 597] (Feb. 5, 2010) at 18; *see also In re Cathode Ray Tube (CRT) Antitrust Litig.*, 738 F. Supp. 2d 1011, 1023 (N.D. Cal. 2010).  That conclusion is no longer applicable since both the DPPs and DAPs concede that they do not allege a conspiracy as to finished products containing CRTs.  *See supra* at 4, 6.

**(a)** **These Plaintiffs Fail To Allege "Antitrust Injury" Because They Were Not Participants In The Allegedly Restrained Market.**

The first and "most critical" factor in the *AGC* inquiry is "antitrust injury" (*i.e.*, whether the injury alleged by the plaintiff is "of the type that the antitrust statute was intended to forestall"). *See Bhan v. NME Hosp., Inc.*, 772 F.2d 1467, 1470 n.3 (9th Cir. 1985) (internal citation omitted); *DRAM II*, 536 F. Supp. 2d at 1141 (finding failure to sufficiently state "antitrust injury" dispositive of *AGC* inquiry and granting motion to dismiss for lack). In the Ninth Circuit, it is well-settled that a plaintiff claiming antitrust injury must be a participant in the allegedly restrained market. *See Bhan*, 772 F.2d at 1470 ("[T]he injured party [must] be a participant in the *same* market as the alleged malefactors.") (emphasis added); *Am. Ad. Mgmt., Inc. v. Gen. Tel. Co.*, 190 F.3d 1051, 1057 (9th Cir. 1999) ("Antitrust injury requires the plaintiff to have suffered its injury in the market where competition is being restrained. Parties whose injuries, though flowing from that which makes the defendant's conduct unlawful, are experienced in another market do not suffer antitrust injury."); *see also AGC*, 459 U.S. at 538 (antitrust laws are designed to "protect[] the economic freedom of participants *in the relevant market*") (emphasis added).

Here, DAPs have not demonstrated "antitrust injury" because they are not participants in the allegedly restrained market for CRTs. In fact, DAPs expressly plead allegations that they have "participated in the market for *products containing* CRTs" and can only pretextually aver that they have "participated in the market for CRTs *through their direct purchases from Defendants of CRT Products containing price-fixed CRTs*." *See*, *e.g.*, Circuit City Compl. ¶¶ 89-90 (emphasis added).[31] These conclusory allegations of "market participation" are insufficient as a matter of law and run counter to relevant case law. Simply put, DAPs who purchased end-products that incorporate CRTs as a component part are not "participants in the relevant market" (*i.e.*, the market for CRTs, the allegedly price-fixed product). *See*, *e.g.*, *Intergraph Corp. v. Intel Corp.*, 195 F.3d 1346, 1355 (Fed. Cir. 1999) (finding that graphics workstation manufacturer did not compete in the market for microprocessors incorporated within

---

[31]*See also* CompuCom Compl. ¶¶ 87-88; Office Depot Compl. ¶¶ 86-87; and P.C. Richard Compl. ¶¶ 91-92.

the workstations); *Meyer v. Qualcomm Inc.*, No. 08cv655 WQH, 2009 WL 539902, at *7 (S.D. Cal. Mar. 3, 2009) (dismissing indirect purchaser's Sherman Act claim where plaintiff failed to allege facts showing that he was participant in the relevant market); *see also Tessera, Inc. v. Micron Tech., Inc.*, No. 2:05CV94, 2005 WL 1661106, at *2-3 (E.D. Tex. July 14, 2005) (finding that the provider of a component incorporated within computer chips was not a participant in the market for the computer chips).

In the Ninth Circuit, participation in the relevant market under *AGC* requires that the goods bought by the DAPs (*i.e.*, finished products incorporating CRTs) are "reasonably interchangeable," or experience "cross-elasticity of demand," with the goods in the market where competition has allegedly been restrained (*i.e.*, stand-alone CRTs). *See, e.g.*, *Bhan*, 772 F.2d at 1470-71; *DRAM II*, 536 F. Supp. 2d at 1139-41. DAPs here have alleged neither.

First, DAPs cannot allege that CRTs are "reasonably interchangeable" with televisions and computer monitors. A television, for example, is obviously in a different market, with different buyers and suppliers, than the market for the component CRT used in its manufacture. As a matter of common sense, no consumer would reasonably view a CRT standing alone as a replacement for a television or computer monitor. Indeed, no consumer can use a CRT itself to watch television or a video. Thus, CRTs, on the one hand, and computer monitors or televisions, on the other, are not functional equivalents of each other.

Second, DAPs also have not alleged a "cross-elasticity of demand" between CRTs and televisions or computer monitors. This is for good reason: DAPs cannot logically posit that if prices for finished computer monitors or televisions became too expensive, they would instead have bought stand-alone CRTs. Thus, it is clear that DAPs here are merely consumers in secondary markets that are "incidental" to the "market for [the CRTs] themselves." *DRAM I*, 516 F. Supp. 2d at 1091; *DRAM II*, 536 F. Supp. 2d at 1136.

Instead, DAPs simply allege, without more, that "the market for CRTs and the market for the products into which they are placed are inextricably linked and intertwined because the CRT market exists to serve the CRT Products markets." *See, e.g.*, P.C. Richard Compl. ¶ 90; CompuCom Compl. ¶ 86; Costco Compl. ¶ 69; Office Depot Compl. ¶ 85; Electrograph Am.

28

Compl. ¶ 96.  This bare conclusion is unsupported by any facts whatsoever, and is thus of no

consequence.  *See Datel Holdings Ltd. V. Microsoft Corp.*, 712 F. Supp. 2d 974, 994 (N.D. Cal.

2010) (dismissing plaintiff's claim for lack of antitrust standing, notwithstanding allegations that

Plaintiff's injury "was inextricably intertwined . . . in the primary market," because its

"allegations center on its injury in the secondary market, even though Plaintiff attempts to convert

spillover effects in the secondary market into an injury in the primary market").  DAPs'

unsupported and conclusory statements thus fail to establish the requisite "market participation"

that is necessary for *AGC* standing.[32]

> **(b)** **These Plaintiffs' Alleged Injuries Were Indirect, Attenuated, And Too Remote To Satisfy The "Remoteness" Factor Of *AGC*.**

A showing of antitrust injury is necessary in order to establish standing under *AGC*, but it

is not sufficient.  *See Cargill, Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104, 110 n.5 (1986).  With

respect to the second *AGC* factor—directness of injury—any injury suffered by DAPs that never

purchased the allegedly price-fixed product was, at best, attenuated, remote, and not the direct

result of any actions taken by defendants.  The *AGC* Court held that an assessment of the

directness of any alleged injury requires an analysis of the "chain of causation" between the

alleged injury and the alleged restraint in the market.  *AGC*, 459 U.S. at 540; *see also R.C. Dick

Geothermal Corp.*, 890 F.2d at 147; *DRAM I*, 516 F. Supp. 2d at 1091.  "[V]aguely defined links"

in the causal chain are insufficient to establish the directness of an alleged injury, *AGC*, 459 U.S.

at 540, and here the requisite causal connection between any injury suffered by DAPs and alleged

wrongdoing on the part of Defendants is wholly lacking.

DAPs' allegations that "Defendants ensured that price increases for CRTs were passed on

---

[32]DAPs cannot rely on the reasoning in *Blue Shield v. McReady*, 457 U.S. 465, 483 (1982), or *Ostrofe v. H.S. Crocker Co.*, 740 F.2d 739, 744-47 (9th Cir. 1984), to support their conclusory assertion that the CRT market and television/computer monitor markets are "inextricably intertwined."  *McCready* concerned a patient whose insurance claims were denied specifically because of allegedly anti-competitive conduct in the relevant market.  Thus, her injury was, in fact, "inextricably intertwined" with the alleged wrongdoing.  *McCready*, 457 U.S. at 484.  Here, by contrast, DAPs' allegations concern a wholly different market altogether.  And in *Ostrofe*, the plaintiff was an "essential participant in the scheme to eliminate competition," which is not the case here.  740 F.2d at 745-46.

1  to indirect purchasers of CRT Products"[33] merely confirm that DAPs were participants in a

2  completely different market than the market for the allegedly price-fixed product.  For example,

3  P.C. Richard alleges that "Plaintiffs have participated in the market for CRTs through their direct

4  purchases from Defendants of CRT Products containing price-fixed CRTs and their purchases of

5  CRT Products containing price-fixed CRTs indirectly from non-defendant OEMs and others."

6  P.C. Richard Compl. ¶ 91.[34]  This is exactly the point, and this concession negates the conclusory

7  claim—now belied by DAPs' own admission that there is no conspiracy as to finished products

8  containing CRTs—that "Plaintiffs purchased price-fixed goods . . . from Defendants."  *Id.* ¶ 83.

9  In fact, as Your Honor has held, any DPPs that merely purchased finished products, "did not

10  purchase any price-fixed product from anyone."  *See* May 31 Report at 11.  Accordingly, any

11  purported "injuries" are too indirect and remote for purposes of antitrust standing.

12          **(c)**        **These Plaintiffs' Injury Claims Are Inherently Speculative.**

13          As in *AGC*, the claims of any DAPs who merely allege a downstream purchase of goods

14  other than CRTs "rest[] at bottom on some abstract conception or speculative measure of harm."

15  459 U.S. at 543 (internal citations and quotations omitted).  DAPs' naked allegations that

16  "Defendants ensured that price increases for CRTs were passed on to indirect purchasers of CRT

17  Products," *see*, *e.g.*, P.C. Richard Compl. ¶ 130,[35] if anything, only emphasize the complexity of

18  any pass-on analysis that might be required.  In *DRAM I*, Judge Hamilton explained that where

19  plaintiffs are "in secondary markets in which they purchase the price-fixed product as a

20  component," they "would need to allege that the secondary market sellers themselves were in an

21  oligopoly and fixing prices, in order to demonstrate non-speculative damages."  *DRAM I*, 516 F.

22  Supp. 2d at 1092.  In light of the repeated rulings in the MDL proceeding (and DAPs' admissions

23

24

---

25  [33] *See* CompuCom Compl. ¶ 126; Electrograph Am. Compl. ¶ 136; Office Depot Compl. ¶ 125; Circuit City Compl. ¶ 128; Polaroid Compl. ¶ 120; Costco Compl. ¶¶ 108, 184.

26  [34] *See also* CompuCom Compl. ¶ 87; Electrograph Am. Compl. ¶ 97; Office Depot Compl. ¶ 86; Circuit City Complaint ¶ 89.

27

28  [35] *See also* CompuCom Compl. ¶ 126; Electrograph Am. Compl. ¶ 136; Office Depot Compl. ¶ 125; Circuit City Compl. ¶ 128; Polaroid Compl. ¶ 120; Costco Compl. ¶¶ 108, 184.

1  in their own actions) that there was no such "secondary market" conspiracy,[36] mere conclusory

2  allegations of "pass on" are not sufficient to "demonstrate non-speculative damages." *Id.*

3           **(d)**      **These Plaintiffs' Claims Are Likely To Be Duplicative.**

4        The fourth *AGC* factor is risk of duplicative recovery, which also weighs heavily in favor

5  of denying standing here since purchasers of CRTs themselves—*i.e.*, those directly in the CRT

6  market—are the properly situated parties to bring any claim for damages due to alleged antitrust

7  violations in that market. Extending standing here to purchasers of products that merely

8  incorporate CRTs would run the risk of inappropriately doubling the potential plaintiff pool to

9  include parties further down the distribution and supply product chain. Many other companies

10  purchased CRTs directly, and it is these companies that are more properly situated plaintiffs than

11  those who have bought only finished products containing CRTs. Accordingly, Plaintiffs'

12  allegations, as in *AGC*, run "the risk of duplicative recoveries on the one hand, or . . . of complex

13  apportionment of damages on the other." *AGC*, 459 U.S. at 543-44.

14           **(e)**      **These Plaintiffs' Injury Claims Would Be Unreasonably**
15                    **Complex.**

16        In *AGC*, the Supreme Court recognized a "strong interest" in "keeping the scope of

17  complex antitrust trials within judicially manageable limits," and specifically, the "danger of

18  complex apportionment of damages" to this interest. 459 U.S. at 543-44. This final *AGC* factor

19  weighs in favor of denying DAPs antitrust standing, since proving "pass-on" from a component

20  sale to a finished product sale involves economic issues that are "exceedingly complex." *See*

21  *Meyer*, 2009 WL 539902, at *7; *DRAM I*, 516 F. Supp. 2d at 1092 (noting that damages in a

22  component case "would be difficult to apportion"); *see also In re GPU Antitrust Litig.*, 527 F.

23  Supp. 2d at 1026 n.7 ("Further clouding the standing issue is that not all plaintiffs . . . purchased

24  their computers in the same way . . . . This has serious implications for the question of whether or

25  not any overcharges were passed on to the consumer.").

26        A CRT is only one of a number of inputs that contribute to the cost of CRT finished

---

[36] *See* CompuCom Compl. ¶ 87; Electrograph Am. Compl. ¶ 97; Office Depot Compl. ¶ 86;
Circuit City Compl. ¶ 89.

DEFS.' JOINT NOTICE OF MOT. AND MOT. TO DISMISS AND FOR JUDGMENT ON THE PLEADINGS AS TO
CERTAIN DIRECT ACTION PLS.' CLAIMS AND MEM. OF LAW IN SUPPORT (3:07-CV-05944 SC, MDL NO. 1917)

products, including the costs of dozens of other component parts, variable manufacturing and

labor and facility costs, as well as fixed costs. A multitude of other factors further complicate any

apportionment analysis, including but not limited to the difference in percentage of any

overcharge that may have been passed on from one party to the next; the relative bargaining

powers of various parties; geographic price discrepancies; and discounts and/or rebates provided

by manufacturers and retailers. *See AGC*, 459 U.S. at 545 n.51 (stating that "the task of

disentangling overlapping damages claims is not lightly to be imposed upon potential antitrust

litigants, or upon the judicial system"); *Knowles v. Visa U.S.A., Inc.*, No. Civ.A. CV-03-707,

2004 WL 2475284, at *6 (Me. Sup. Ct. Oct. 20, 2004). Each of these factors would require an

exacting analysis of multiple layers of manufacturing, distribution, and retail chains as to each of

the finished products containing CRTs (*i.e.*, the very purchases for which DAPs here claim

damages). Courts have an interest in avoiding delving into such economic complexities and that

interest weighs in favor of precluding antitrust standing here.

In sum, all of the *AGC* factors preclude DAPs from establishing antitrust standing, and

therefore the Court should dismiss DAPs' claims under the antitrust laws of Arizona, California,

Illinois, Michigan, and Washington.

### D.   Plaintiffs' Claims Fail Under The Consumer Protection Statutes Of Massachusetts And Washington.

DAPs' claims under the Massachusetts Consumer Protection Act (Mass. Gen. Laws

ch. 93A, § 2)[37] fail because they have not alleged that they made a "written demand for relief" 30

days before filing their complaints as required under the statute. *See* Mass. Gen. Laws ch. 93A,

§ 9(3); *Entrialgo v. Twin City Dodge, Inc.*, 333 N.E.2d 202, 204 (Mass. 1975) (affirming

dismissal of complaint where plaintiff failed to allege details regarding demand letter); *see also*

*Kamamara v. Holyoke Mut. Ins. Co.*, 892 N.E.2d 759, 768 (Mass. App. Ct. 2008) (plaintiff must

allege details regarding demand letter in complaint).

To the extent that Costco's claims under the Washington Consumer Protection Act (Wash.

---

[37]This argument applies to DAPs Sears, RadioShack, and Tweeter. *See* Target Am. Compl.
¶ 274; Tweeter Compl. ¶¶ 238-245.

1  Rev. Code § 19.86.030; "CPA")[38] are related to indirect purchases of CRT Products from

2  Defendants, they must also be dismissed.  The CPA requires that Washington courts be "guided

3  by final decisions of the federal courts and final orders of the Federal Trade Commission

4  interpreting the various federal statutes dealing with the same or similar matters."  *Id.*

5  § 19.86.920.  Heeding this directive, Washington courts have adopted the straightforward rule of

6  *Illinois Brick* and determined that "indirect purchaser[s do] not suffer[] cognizable injury under

7  the CPA."  *Blewett v. Abbott Labs.*, 938 P.2d 842 (Wash. App. 1997).  Costco alleges in pertinent

8  part that it "purchase[d] . . . CRT Products . . . indirectly from Defendants."  Costco Compl. ¶ 10.

9  Therefore, it lacks standing to sue under the CPA.  Moreover, as demonstrated above, Costco's

10 lack of standing is not cured by any of the recognized exceptions to *Illinois Brick*.

   ### E. Certain Plaintiffs' Unjust Enrichment, Restitution, And California Unfair Competition Law Claims Are Deficient.

   #### 1. The Polaroid Plaintiffs' Common Law Unjust Enrichment Claim Should Be Dismissed Because The Polaroid Plaintiffs Fail To Identify A Particular State Under Whose Common Law Their Unjust Enrichment Claim Belongs.

15        It is well-established that a plaintiff must "identify which State's or States' laws they rely

16 upon" when bringing a claim for unjust enrichment.  *See In re Static Random Access Memory*

17 *(SRAM) Antitrust Litig.*, 580 F. Supp. 2d 896, 910 (N.D. Cal. 2008) (granting defendants' motion

18 to dismiss unjust enrichment claims and stating that "until Plaintiffs indicate which States' laws

19 support their claim, the Court cannot assess whether the claim has been adequately plead[ed]");

20 *accord In re Ditropan XL Antitrust Litig.*, 529 F. Supp. 2d 1098, 1101 (N.D. Cal. 2007)

21 (dismissing unjust enrichment claims on same basis); *In re TFT-LCD (Flat Panel) Antitrust*

22 *Litig.*, 781 F. Supp. 2d 955, 966 (N.D. Cal. 2011) (employing similar reasoning in dismissing

23 Dell's unjust enrichment claim).

24        The Polaroid Plaintiffs attempt to bring an unjust enrichment claim by alleging that

25 Defendants have been unjustly enriched, and that "[u]nder common law principles of unjust

26 enrichment, Defendants should not be permitted to retain the benefits conferred via overpayments

---

[38]Costco alleges claims under the Washington Consumer Protection Act, Wash. Rev. Code
§ 19.86.030.  *See* Costco Compl. ¶¶ 185-188.

by Plaintiffs." Polaroid Compl. ¶¶ 213-214. But at no point do the Polaroid Plaintiffs identify the state or states whose laws they purport to invoke in bringing their unjust enrichment claim. Thus, their claim should be dismissed.

Like the defendants in *SRAM*, *Ditropan*, and *LCD*, the Defendants are unable to assess the Polaroid Plaintiffs' claim because the elements of unjust enrichment vary by state; in fact, some jurisdictions do not even recognize unjust enrichment as a stand-alone claim. *See, e.g.*, *Nelson v. Xacta 3000 Inc.*, No. 08-5426, 2009 WL 4119176, at *7 (D.N.J. Nov. 24, 2009) ("New Jersey law does not recognize unjust enrichment as an independent tort cause of action."); *Jogani v. Superior Court*, 165 Cal. App. 4th 901, 911 (2008) ("[U]njust enrichment is not a cause of action."). Furthermore, certain states' antitrust laws preclude plaintiffs from bringing unjust enrichment claims in conjunction with antitrust claims. *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, 599 F. Supp. 2d 1179, 1192 (N.D. Cal. 2009) (dismissing plaintiffs' unjust enrichment claims under Arkansas, Virginia, Montana, and Puerto Rico law because "permitting such claims would allow plaintiffs to circumvent limitations of state antitrust laws"). Without knowing which state's or states' laws are being invoked by the Polaroid Plaintiffs' unjust enrichment claim, neither the Defendants nor the Court are able to assess that claim and it should be dismissed.

> **2.** **Circuit City's Fourth Claim For Relief Should Be Dismissed Because California Law Does Not Recognize A Cause Of Action For Restitution Or Unjust Enrichment.**

California does not recognize "restitution" as a freestanding cause of action. *See, e.g.*, *Munoz v. MacMillan*, 195 Cal. App. 4th 648, 660 (2011) ("There is no freestanding cause of action for 'restitution' in California."). Nor does California recognize stand-alone unjust enrichment claims. *See, e.g.*, *Levine v. Blue Shield of Cal.*, 189 Cal. App. 4th 1117, 1138 (2010) (dismissing claim without leave to amend because "there is no cause of action in California for unjust enrichment."); *Jogani*, 165 Cal. App. 4th at 911 ("[U]njust enrichment is not a cause of action."); *McBride v. Boughton*, 123 Cal. App. 4th 379, 387 (2004) (affirming the dismissal of a claim for unjust enrichment and finding that "[u]njust enrichment is not a cause of action . . . or even a remedy"); *see also Melchior v. New Line Prods., Inc.*, 106 Cal. App. 4th 779, 793 (2003) ("[T]here is no cause of action in California for unjust enrichment.").

"California courts are split on the question whether unjust enrichment is a viable cause of action under California law." *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M. 07-1827 SI, No. C. 10-5625 SI, 2011 U.S. Dist. LEXIS 105151, at *20 (N.D. Cal. Sept. 15, 2011). The *TFT-LCD* court followed the minority view and held that the plaintiffs' unjust enrichment claim was a "valid theory of recovery" because "courts have generally allowed claims for 'unjust enrichment' to proceed, regardless of the precise label assigned to the cause of action." *Id.* at *23. However, the *TFT-LCD* court's decision runs against the weight of recent California decisions that uniformly hold that unjust enrichment is not a cause of action in California. *See Charles Schwab & Co v. Bank of Am.*, No. C 10-4913 JL, 2011 U.S. Dist. LEXIS 53496, at *12-13 (N.D. Cal. May 9, 2011) (describing stand-alone unjust enrichment claim under California law as "a minority view"). Accordingly, this Court should follow the majority view that there is no stand-alone cause of action for unjust enrichment in California.

Furthermore, equitable remedies—including restitution and unjust enrichment—are not available under California law when there is an adequate legal remedy. *See Martin v. Cnty. of L.A.*, 51 Cal. App. 4th 688, 696 (1996) (holding that "there is no right to equitable relief or an equitable remedy when there is an adequate remedy at law."); *Mort v. United States*, 86 F.3d 890, 892 (9th Cir. 1996) ("It is a basic doctrine of equity jurisprudence that courts of equity should not act . . . when the moving party has an adequate remedy at law."). Legal remedies are available to Circuit City, which it invokes in its complaint (such as the Sherman Act and the Cartwright Act), thus obviating the need for any equitable remedy. DAPs' failure to sufficiently plead those legal remedies, as established above, does not entitle them to equitable relief. *See, e.g.*, *Rhynes v. Stryker Corp.*, No. 10-5619 SC, 2011 WL 2149095 (N.D. Cal. May 31, 2011) (Conti, J.) (rejecting the argument that the dismissal of the plaintiff's claims left the plaintiff without an adequate remedy at law and stating that "where the claims pleaded by a plaintiff *may* entitle her to an adequate remedy at law, equitable relief is unavailable"). Consequently, DAPs do not and cannot state a cognizable claim for restitution or unjust enrichment under California law.

**3. Circuit City, CompuCom, And The Polaroid Plaintiffs Have Not Stated A Claim Under California's Unfair Competition Law.**

1    Circuit City, CompuCom, and the Polaroid Plaintiffs each seek relief against the

2    Defendants for violation of California's UCL.[39]  Because these Plaintiffs fail to sufficiently allege

3    an antitrust violation under federal or state law, the Court should dismiss their UCL claims.

4    The UCL prohibits unlawful, unfair, or fraudulent business acts or practices, and "works

5    by borrow[ing] violations of other laws and treating those transgressions, when committed as a

6    business activity, as unlawful business practices."  *Stevens v. Superior Court*, 75 Cal. App. 4th

7    594, 602 (1999) (internal quotation marks omitted).  These "unlawful business practices" are

8    "independently actionable" under the UCL and subject to its distinct remedies.  *Wang v. Chinese*

9    *Daily News, Inc.*, 623 F.3d 743, 758-59 (9th Cir. 2010), *vacated on other grounds*, — U.S. —,

10   2011 U.S. LEXIS 6743 (U.S. Oct. 3, 2011)).

11   Liability under the UCL is derivative of liability under another statute, so "[w]here a

12   plaintiff cannot state a claim under the 'borrowed' law . . . he or she cannot state a UCL claim

13   either."  *Rivera v. BAC Home Loans Servicing*, 756 F. Supp. 2d 1193, 1200 (N.D. Cal. 2010);

14   *Ingels v. Westwood One Broad. Servs., Inc.*, 129 Cal. App. 4th 1050, 1060 (2005) ("If the

15   [underlying] claim is dismissed, then there is no 'unlawful' act upon which to base . . . the

16   derivative [UCL] claim.").  Similarly, a defense to the underlying offense is a defense to the UCL

17   claim.  *See Van de Kamp v. Cappuccio, Inc.*, 204 Cal. App. 3d 750, 763 (1988).

18   DAPs' UCL claims—alleging that Defendants engaged in unlawful, unfair, and fraudulent

19   conduct—each rest on the same factual allegations used to support their antitrust claims.  *See*

20   Circuit City Compl. ¶ 254 ("The unlawful, unfair, and fraudulent business practices of

21   Defendants, as alleged above, injured Plaintiff and members of the public in that Defendants'

22   conduct restrained competition, causing [plaintiffs] and others to pay supra-competitive and

23   artificially inflated prices for CRT Products."); CompuCom Compl. ¶ 248 (same); Polaroid

24   Compl. ¶ 204 (alleging Defendants violated Section 17200 through "means of unfair, unlawful

25   and/or fraudulent business acts or practices . . . including, but not limited to, the following:

26   (1) the violations of Section 1 of the Sherman Act . . . and (2) the violations of Section 16720, *et*

27   ───────────────────────

28   [39]*See* Circuit City Compl. ¶¶ 251-58; CompuCom Compl. ¶¶ 245-52; Polaroid Compl. ¶¶ 200-211.

1     *seq.*").  Because DAPs' antitrust claims fail—on the basis of standing, timeliness, and other

2  arguments asserted above—their UCL claims must also be dismissed.

3        DAPs first invoke the "unlawful" prong of the UCL, which requires an underlying

4  violation of law.  *See Krantz v. BT Visual Images, L.L.C.*, 89 Cal. App. 4th 164, 178 (2001)

5  (holding that an act is unlawful under Section 17200 if it violates an underlying state or federal

6  statute or common law).  Because DAPs have not adequately pleaded violations of the Sherman

7  and Cartwright Acts, they cannot state a UCL claim based on an alleged price-fixing conspiracy.

8  *See In re Apple iPod iTunes Antitrust Litig.*, 796 F. Supp. 2d 1137, 1147 (N.D. Cal. 2011)

9  (holding that "without a valid Sherman Act claim there is no 'unlawful' conduct to support

10  Plaintiffs' UCL claim").

11        DAPs' "unfairness" and "fraudulent" allegations rise or fall with their antitrust claims.

12  Once an antitrust claim is dismissed, a plaintiff cannot proceed under any prong of the UCL based

13  on those same allegations.  *See In re Cal. Title Ins. Antitrust Litig.*, No. C 08-01341 JSW, 2009

14  WL 1458025, at *8 (N.D. Cal. May 21, 2009) (dismissing both antitrust claims and "unlawful,

15  unfair, and fraudulent" UCL claims, stating that the "[p]laintiffs' Section 17200 claim is based, in

16  part, on the alleged price fixing conspiracy").

17        Even if the UCL allows claims of fraudulent business activity based on conduct condoned

18  under the antitrust laws, DAPs fail to state a fraudulent business practices claim.  "[C]laims under

19  Section 17200 that are grounded in fraud still must be pleaded with particularity under Rule

20  9(b)."  *In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litig.*,

21  758 F. Supp. 2d 1077, 1092 (S.D. Cal. 2010).  In order to plead fraudulent conduct, a plaintiff

22  must allege that the defendant made representations that were "false or were likely to have misled

23  'reasonable consumers,'" *Belton v. Comcast Cable Holdings, L.L.C.*, 151 Cal. App. 4th 1224,

24  1241 (2007), and that they justifiably relied on the purported misrepresentations, *Sony Grand*,

25  758 F. Supp. 2d at 1092.  Furthermore, when a plaintiff alleges that the defendant failed to

26  disclose material facts under the fraud prong of the UCL, the plaintiff "must first establish that the

27  defendant had a duty to disclose those facts."  *Rivera*, 756 F. Supp. 2d at 1201 (citing *Berryman

28  v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1557 (2007).

Here, DAPs allege in wholly conclusory terms that "[a]s alleged above, Defendants took affirmative actions to conceal their collusive activity by keeping meetings with co-conspirators secret and making false public statements about the reasons for artificially inflated prices of CRTs." Circuit City Compl. ¶¶ 251-258; CompuCom Compl. ¶¶ 248-252; *see also* Polaroid Compl. ¶¶ 200-211. DAPs do not specify any particular "false public statements," nor do they allege that they justifiably relied on any misrepresentations, or that the Defendants owed a duty to them. A wholesale reference to every other allegation in the complaint, *i.e.*, "as alleged above," does not relieve DAPs of their burden to plead a "fraudulent business practice" with reasonable particularity. *See Quintero Family Trust v. OneWest Bank, F.S.B.*, No. 09-CV-1561-IEG (WVG), 2010 WL 392312, at *12 (S.D. Cal. 2010) (holding that plaintiffs' allegation that "Defendants violated Section 17200 by 'engaging in unlawful, unfair and fraudulent business practices' as alleged elsewhere in the [Complaint] . . . is insufficient to provide Defendants with notice of the claims against them"). As such, DAPs' fraudulent business practices claims fall far short of even minimum pleading standards, let alone the particularity required by this prong of the UCL.

**F.      Plaintiffs Cannot Sue Under The Statutes Of Nebraska, Nevada, Or New York Based On Purchases Predating Those States' *Illinois Brick* Repealer Amendments.**

Three of the states at issue—Nebraska, Nevada and New York—recently repealed *Illinois Brick*'s bar on indirect purchaser claims. However, DAPs cannot recover under the laws of these states for any indirect purchases made before the "repealer" statutes became effective.

**1.      Nebraska[40]**

Nebraska passed its *Illinois Brick* repealer statute in 2002. Neb. Rev. Stat. § 59-801. Before that amendment became effective, Nebraska law did not allow indirect purchasers to sue for damages based on antitrust violations. *Kanne v. Visa U.S.A., Inc.*, 723 N.W.2d 293, 300 (Neb. 2006). In Nebraska, a "legislative act operates only prospectively and not retrospectively unless the legislative intent and purpose that it should operate retrospectively is clearly disclosed." *Soukop v. Conagra, Inc.*, 653 N.W.2d 655, 658 (Neb. 2002). Nebraska's repealer reveals no such

---

[40]This argument applies to Plaintiffs Sears and Kmart. *See* Target Am. Compl. ¶ 278.

1    intent.  Accordingly, this Court previously dismissed all claims by the CRT IPPs under Nebraska

2    law, based on pre-repealer purchases.  *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 738 F.

3    Supp. 2d 1011, 1025 (N.D. Cal. 2010).  The Court should replicate that order here, and dismiss

4    any claims by Sears and Kmart under Nebraska law based on purchases made before July 20,

5    2002 (the date the repealer became effective).[41]

6              **2.    Nevada[42]**

7              Nevada passed its *Illinois Brick* repealer in 1999.  Nev. Rev. Stat. § 598A.210.  Nevada

8    trial courts have split on whether to apply the 1999 amendment retroactively.  *Compare Krotz v.*

9    *Microsoft Corp.*, No. A416361 (Nev. Dist. Ct. June 22, 2000) (holding amendment does not

10   apply retroactively), *cited in* Am. Bar Ass'n, *Indirect Purchaser Litigation Handbook* 43 n.153

11   (2007), *with Pooler v. R.J. Reynolds Tobacco Co.*, No. CV00-02674, 2001 WL 403167, at *1

12   (Nev. Dist. Ct. Apr. 4, 2001) (reaching opposite conclusion).  However, this Court is bound to

13   follow decisions of the Nevada Supreme Court on issues of Nevada law.  *Johnson v. Frankell*,

14   520 U.S. 911, 916 (1997).  Nevada's Supreme Court has held that "statutes are prospective only"

15   absent "clear[], strong[], and imperative[]" language to the contrary.  *In re Estate of Thomas*, 998

16   P.2d 560, 562 (Nev. 2000).  Because the repealer amendment does not indicate any intent that it

17   should be applied retroactively to claims that accrued before its effective date, it may be applied

18   only prospectively.  Both this Court and Judge Illston have dismissed claims under the Nevada

19   Unfair Trade Practices Act based on purchases predating the repealer statute.  *CRT*, 738 F. Supp.

20   2d at 1025; *In re TFT-LCD (Flat Panel) Antitrust Litig.*, C 10-4945-SI, 2011 WL 3738985, at *4

21   (N.D. Cal. Aug. 24, 2011).  Accordingly, the Court should dismiss any claims by Sears and

22   Kmart under Nevada's Unfair Trade Practices Act based on purchases made before October 1,

23   1999.[43]

---

[41]In Nebraska, absent an express provision to the contrary, non-emergency bills signed by the Governor become effective three calendar months after the end of the legislative session.  Neb. Const. art. III, § 24.

[42]This argument applies to Plaintiffs Sears and Kmart, who allege claims under the Nevada Unfair Trade Practices Act, Nev. Rev. Stat. § 598A *et seq.  See* Target Am. Compl. ¶ 279.

[43]*See* Nev. Rev. Stat. Ann. § 218 (absent express provision to the contrary, effective date of every statute is October 1 following its passage).

### 3. New York[44]

New York passed its *Illinois Brick* repealer in 1998.  *See* N.Y. Gen. Bus. § 340(6).  Before the amendment, indirect purchasers could not bring damages claims under the Donnelly Act.  *Russo & Dubin v. Allied Maint. Corp.*, 407 N.Y.S.2d 617, 621 (N.Y. Sup. Ct. 1978).  Both federal and New York state courts have held that the 1998 amendment.  *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 3738985, at *4; *In re Vitamins Antitrust Litig.*, Misc. No. 99-197 (TFH), 2000 U.S. Dist. LEXIS 15109, at *36 (D.D.C. Oct. 6, 2000); *Lennon v. Philip Morris Cos.*, 734 N.Y.S.2d 374, 382 (N.Y. Sup. Ct. 2001) ("[C]ourts interpreting provisions of the General Business Law have rejected retroactive application of amendments creating new private rights of action. . . .  Without allegations of events that postdate the 1998 amendment, the plaintiffs' complaint fails to sufficiently state a claim.").  For the same reasons, the Court should dismiss any claims by Sears, Target, Electrograph, CompuCom and P.C. Richard under New York's Donnelly Act based on purchases made before December 23, 1998, the amendment's effective date.

### CONCLUSION

For the foregoing reasons, the aforementioned DAP claims should be dismissed with prejudice, or as applicable judgment entered in favor of Defendants on the pleadings, pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(c).

Dated:  August 17, 2012

Respectfully submitted,

O'MELVENY & MYERS LLP

By:____/s/ Ian Simmons_____
IAN SIMMONS (*pro hac vice*)
Email: isimmons@omm.com
BENJAMIN G. BRADSHAW (SBN 189925)
Email: bbradshaw@omm.com
KEVIN D. FEDER (SBN 252347)
Email: kfeder@omm.com

---

[44]This argument applies to Plaintiffs Sears, Target, Electrograph, CompuCom, and P.C. Richard, who bring claims pursuant to New York's Donnelly Act, N.Y. Gen. Bus. Law § 340 *et seq*.  *See* Target Am. Compl. ¶ 281; Electrograph Am. Compl. ¶¶ 268-74; CompuCom Compl. ¶¶ 253-58; P.C. Richard Compl. ¶ 249.

1    **O'MELVENY & MYERS LLP**
    1625 Eye Street, NW
2    Washington, DC 20006
    Telephone: (202) 383-5300
3    Facsimile: (202) 383-5414

4    *Attorneys for Defendants Samsung Electronics*
    *Co., Ltd. and Samsung Electronics America,*
5    *Inc.*

6    MORGAN, LEWIS & BOCKIUS LLP

7    By:   /s/ Kent M. Roger
    KENT M. ROGER (SBN 95987)
8    E-mail: kroger@morganlewis.com
    MICHELLE PARK CHIU (SBN 248421)
9    E-mail: mchiu@morganlewis.com
    **MORGAN, LEWIS & BOCKIUS LLP**
10    One Market, Spear Street Tower
    San Francisco, California 94105-1126
11    Telephone: (415) 442-1000
    Facsimile: (415) 442-1001

12

    J. CLAYTON EVERETT, JR. (*pro hac vice*)
13    E-mail: jeverett@morganlewis.com
    SCOTT A. STEMPEL (*pro hac vice*)
14    E-mail: sstempel@morganlewis.com
    **MORGAN, LEWIS & BOCKIUS LLP**
15    111 Pennsylvania Avenue, NW
    Washington, DC 20004
16    Telephone: (202) 739-3000
    Facsimile: (202) 739-3001

17

    *Attorneys for Defendants Hitachi, Ltd., Hitachi*
18    *Displays, Ltd. (n/k/a Japan Display East, Inc.),*
    *Hitachi Asia, Ltd., Hitachi America, Ltd., and*
19    *Hitachi Electronic Devices (USA), Inc.*

20

21

22

23

24

25

26

27

28

DEFS.' JOINT NOTICE OF MOT. AND MOT. TO DISMISS AND FOR JUDGMENT ON THE PLEADINGS AS TO
CERTAIN DIRECT ACTION PLS.' CLAIMS AND MEM. OF LAW IN SUPPORT (3:07-CV-05944 SC, MDL NO. 1917)

1                               ARNOLD & PORTER LLP

2                               By:   /s/ Sharon D. Mayo
                               SHARON D. MAYO (SBN 150469)

3                               sharon.mayo@aporter.com
                               Three Embarcadero Center, 7th Floor

4                               San Francisco, California 94111-4024
                               Telephone:  (415) 471-3100

5                               Facsimile:  (415) 471-3400

6                               DOUGLAS L. WALD (*pro hac vice*)
                               douglas.wald@aporter.com

7                               WILSON D. MUDGE (*pro hac vice*)
                               wilson.mudge@aporter.com

8                               YONGSANG KIM (*pro hac vice*)
                               yongsang.kim@aporter.com

9                               **ARNOLD & PORTER LLP**
                               555 Twelfth Street, NW

10                              Washington, DC  20004
                               Telephone:  (202) 942-5000

11                              Facsimile:  (202) 942-5999

12                              *Attorneys for Defendants LG Electronics, Inc.;*
                              *LG Electronics USA, Inc.; and LG Electronics*

13                              *Taiwan Taipei Co., Ltd.*

14                              SHEPPARD MULLIN RICHTER &
                              HAMPTON

15                              By:   /s/ Gary L. Halling

16                              GARY L. HALLING (SBN 66087)
                              E-mail: ghalling@sheppardmullin.com

17                              JAMES L. MCGINNIS (SBN 95788)
                              E-mail: jmcginnis@sheppardmullin.com

18                              MICHAEL W. SCARBOROUGH, (SBN
                              203524)

19                              E-mail: mscarborough@sheppardmullin.com
                              **SHEPPARD MULLIN RICHTER &**

20                              **HAMPTON**
                              Four Embarcadero Center, 17th Floor

21                              San Francisco, California 94111
                              Telephone:  (415) 434-9100

22                              Facsimile:  (415) 434-3947

23                              *Attorneys for Defendants Samsung SDI*
                              *America, Inc.; Samsung SDI Co., Ltd.;*

24                              *Samsung SDI (Malaysia) SDN. BHD.; Samsung*
                              *SDI Mexico S.A. DE C.V.; Samsung SDI Brasil*

25                              *Ltda.; Shenzen Samsung SDI Co., Ltd. and*
                              *Tianjin Samsung SDI Co., Ltd.*

26

27

28

DEFS.' JOINT NOTICE OF MOT. AND MOT. TO DISMISS AND FOR JUDGMENT ON THE PLEADINGS AS TO
CERTAIN DIRECT ACTION PLS.' CLAIMS AND MEM. OF LAW IN SUPPORT (3:07-CV-05944 SC, MDL NO. 1917)

WHITE & CASE LLP

By: _/s/ Christopher M. Curran_
CHRISTOPHER M. CURRAN (*pro hac vice*)
E-mail: ccurran@whitecase.com
GEORGE L. PAUL (*pro hac vice*)
E-mail: gpaul@whitecase.com
LUCIUS B. LAU (*pro hac vice*)
E-mail: alau@whitecase.com
**WHITE & CASE LLP**
701 Thirteenth Street, N.W.
Washington, DC 20005
Telephone: (202) 626-3600
Facsimile: (202) 639-9355

*Attorneys for Defendants Toshiba Corporation,*
*Toshiba America, Inc., Toshiba America*
*Information Systems, Inc., Toshiba America*
*Consumer Products, L.L.C., and Toshiba*
*America Electronic Components, Inc.*

WINSTON & STRAWN LLP

By: _/s/ Jeffrey L. Kessler_
JEFFREY L. KESSLER (*pro hac vice*)
E-mail: JKessler@winston.com
A. PAUL VICTOR (*pro hac vice*)
E-mail: PVictor@winston.com
EVA COLE (*pro hac vice*)
E-mail: EWCole@winston.com
MOLLY M. DONOVAN
E-mail: MMDonovan@winston.com
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, NY 10166
Telephone: (212) 294-6700

STEVEN A. REISS (*pro hac vice*)
E-mail: steven.reiss@weil.com
DAVID L. YOHAI (*pro hac vice*)
E-mail: david.yohai@weil.com
ADAM C. HEMLOCK (*pro hac vice*)
E-mail: adam.hemlock@weil.com
**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, New York 10153-0119
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*Attorneys for Defendants Panasonic*
*Corporation (f/k/a Matsushita Electric*
*Industrial Co., Ltd.), Panasonic Corporation of*
*North America, MT Picture Display Co., Ltd.*

DEFS.' JOINT NOTICE OF MOT. AND MOT. TO DISMISS AND FOR JUDGMENT ON THE PLEADINGS AS TO
CERTAIN DIRECT ACTION PLS.' CLAIMS AND MEM. OF LAW IN SUPPORT (3:07-CV-05944 SC, MDL NO. 1917)

BAKER BOTTS LLP

By: ____/s/ Jon V. Swenson____
Jon V. Swenson (SBN 233054)
**BAKER BOTTS LLP**
620 Hansen Way
Palo Alto, CA 94304
Telephone: (650) 739-7500
Facsimile: (650) 739-7699
Email: jon.swenson@bakerbotts.com

John M. Taladay (*pro hac vice*)
Joseph Ostoyich (*pro hac vice*)
**BAKER BOTTS LLP**
1299 Pennsylvania Ave., N.W.
Washington, DC 20004-2400
Telephone: (202) 639-7700
Facsimile: (202) 639-7890
Email: john.taladay@bakerbotts.com
Email: joseph.ostoyich@bakerbotts.com

*Attorneys for Defendants Koninklijke Philips Electronics N.V. and Philips Electronics North America Corporation*

GIBSON, DUNN & CRUTCHER LLP

By: ___/s/ Rachel S. Brass____
Joel S. Sanders (SBN 107234)
Rachel S. Brass (SBN 219301)
Austin V. Schwing (SBN 211696
Joel Willard (SBN 247899)
**GIBSON, DUNN & CRUTCHER LLP**
555 Mission Street, Suite 3000
San Francisco, California 94105
Tel: (415) 393-8200
Fax: (415) 393-8306
jsanders@gibsondunn.com
rbrass@gibsondunn.com

*Attorneys for Defendant Chunghwa Picture Tubes, Ltd. as to the Target Am. Compl., P.C. Richard Compl., Tweeter Compl., CompuCom Compl., Interbond Compl., Costco Compl., Office Depo Compl. and Best Buy Compl. only*

Pursuant to Local Civil Rule 5-1(i), the filer attests that concurrence in the filing of this document has been obtained from each of the above signatories.

1

## CERTIFICATE OF SERVICE

2        I hereby certify that on August 17, 2012, I electronically filed Defendants' Joint Notice of

3  Motion and Motion to Dismiss and for Judgment on the Pleadings as to Certain Direct Action

4  Plaintiffs' Claims and Memorandum of Law in Support with the Clerk of the Court using the

5  CM/ECF system, which will send notification of such filing to the counsel of record in this matter

6  who are registered on the CM/ECF system.

7

8                                      /s/ Ian Simmons

9                                       Ian Simmons

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28