# EXHIBIT 1

# DOCUMENT SUBMITTED UNDER SEAL

# EXHIBIT 2

1

```
 1                                            Pages 1-28

 2                   UNITED STATES DISTRICT COURT

 3                 NORTHERN DISTRICT OF CALIFORNIA

 4            BEFORE THE HONORABLE WILLIAM H. ALSUP

 5
    UNITED STATES OF AMERICA,        )
 6                                    )
                   Plaintiff,         )
 7                                    )
                 vs.                  )No. CV-11-00162 WHA
 8                                    )
    SAMSUNG SDI CO. LTD.,             )
 9                                    )SAN FRANCISCO, CA
                   Defendants.        )TUESDAY, MAY 17, 2011
10                                    )3:20 p.m.
    _____  )
11
                      TRANSCRIPT OF PROCEEDINGS
12  APPEARANCES:

13  For the Plaintiff:
                         UNITED STATES DEPARTMENT OF JUSTICE
14                       ANTITRUST DIVISION
                         SAN FRANCISCO FIELD OFFICE
15                       450 Golden Gate Avenue – Rm. 10-0101
                         San Francisco, CA 94102
16                       BY:  MAY LEE HEYE, ESQ.

17  For Defendants:
                         SHEPPARD, MULLIN, RICHTER & HAMPTON, LLP
18                       Four Embarcadero Center– 4th Floor
                         San Francisco, CA 94111
19                       (415)434-9100
                         BY: GARY L. HALLING, ESQ.
20                       and JAMES L. McGINNIS, ESQ.

21

22
    REPORTED BY:  MARGARET "MARGO" GURULE, CCR
23                Pro Tem Court Reporter – USDC

24

25
```

```
 1        May 17, 2011                        3:20 p.m.

 2                         o0o

 3                 P R O C E E D I N G S

 4        THE COURT:  Welcome.  Please be seated.

 5        Just to report the good news that Ed Chen has just been

 6   sworn in as the new U.S. District Judge.  I was down -- I had

 7   the honor to attend that little ceremony.

 8        So we're now ready to go.  Let's call the next case.

 9        THE CLERK:  Calling Criminal 11-00162, United States vs.

10   Samsung SDI Corporation.

11        MR. HALLING:  Good afternoon, Your Honor.  Gary Halling

12   and Jim McGinnis for Samsung SDI.

13        Also here is our official corporate representative,

14   Mr. Sang Soo Noh.  And with him is Mr. Stephen Bong-Han Kim of

15   the Samsung SDI Legal Department.

16        THE COURT:  Okay.  Welcome to all of you.

17        MS. HEYE:  May Lee Heye for the United States.

18        THE COURT:  All right.  Welcome to you.

19        MS. HEYE:  Thank you.

20        THE COURT:  So what is our plan for the case?

21        MR. HALLING:  Well, Your Honor, we have submitted an

22   amended plea agreement, and we are prepared to enter a plea

23   today.

24        THE COURT:  All right.  So we will take the plea, send it

25   out for the presentence report, come back for a sentencing
```

1    hearing in about 90 days.

2         That's what you want to do?

3         **MR. HALLING:**  That's correct, Your Honor.

4         **THE COURT:**  All right.  Good.  So are there any -- let's

5    just go over what the proposed deal is.  So Ms. May Lee Heye,

6    right?

7         **MS. HEYE:**  Yes, Your Honor.

8         **THE COURT:**  All right.  Tell me what the deal is here so I

9    can have that in mind as we go through this.

10        **MS. HEYE:**  Sure, Your Honor.

11        Samsung SDI's plea agreement is being entered pursuant to

12   Rule 11(c)(1)(C).

13        Samsung SDI agrees to plead guilty to a one count

14   information charging a violation of 15 U.S.C. Section 1 for

15   fixing prices, reducing output, and allocating market shares.

16   It will pay a criminal fine of $32 million.

17        Would you like me to go through the cooperation

18   provisions?

19        **THE COURT:**  Well, there were some things about who you

20   would not prosecute and so forth.  So tell me what that is.

21        **MS. HEYE:**  Certainly, Your Honor.  On page 8 in paragraph

22   12b. there are certain individuals that have been identified in

23   the plea agreement.  There are four individuals.  Those

24   individuals are carved out of the plea agreement.

25        However, the United States has agreed that it will not

1  file further criminal charges against Samsung SDI or its

2  related entities or current or former employees, excluding the

3  individuals I just referred to for their participation in any

4  conspiracy involving CDTs or CPTs prior to the date of the plea

5  agreement.

6      We have also agreed not to seek restitution pending the

7  civil cases related to this matter, and we have also agreed to

8  recommend that Samsung SDI be given no term of probation.

9      **THE COURT:**  That they be given what?  That they be given a

10  term of probation?

11      **MS. HEYE:**  That they be given no term of probation, Your

12  Honor.

13      **THE COURT:**  Well, I mean, we can't put a corporation in

14  jail, so what else is there other than paying a fine?

15      **MS. HEYE:**  They pay the fine and the special assessment,

16  Your Honor.

17      **THE COURT:**  All right.  And these individuals that you

18  have carved out --

19      **MS. HEYE:**  Yes, Your Honor.

20      **THE COURT:**  -- what will become of them?  What is their

21  status going to be?

22      **MS. HEYE:**  Their status has not yet been determined, but

23  the government is continuing its investigation.  We will handle

24  them individually.  They will not be covered by the protections

25  of the plea agreement.

5

1    **THE COURT:**  The maximum fine is how much under the

2    statutes?

3    **MS. HEYE:**  I'm sorry?

4    **THE COURT:**  The maximum fine is $100 million, right?

5    **MS. HEYE:**  Yes, Your Honor.

6    **THE COURT:**  So $32 million versus $100 million.  Okay.  So

7    if the Court were to decide that $32.5 million is the right

8    fine, then would the defendant have the right to withdraw from

9    the plea agreement?

10   **MS. HEYE:**  Yes, they would, Your Honor.  This is a (C)

11   deal.

12   **THE COURT:**  So I don't know the answer to that.  I haven't

13   got a clue what the right answer here is.

14   Tell me the part about restitution.

15   **MS. HEYE:**  Your Honor, we -- the United States has agreed

16   not to seek restitution.  As you know, there are pending civil

17   cases before Judge Conti, and we have agreed that that is part

18   of the recommended sentence.

19   So as Your Honor has indicated, you would like to accept

20   the guilty plea, get a presentence report, educate yourself on

21   the issues.  And at that point, you, I think, indicated that

22   you would give the parties an opportunity to address any other

23   concerns that you had.

24   If you felt that no restitution was appropriate, then

25   obviously we would proceed.  If you did not accept that, then

1    we would not have a deal.

2        **THE COURT:**  All right.  Well, does this agreement call for

3    anybody to give speeches?

4        **MS. HEYE:**  It does not, Your Honor.

5        **THE COURT:**  Why wouldn't that be a good idea?

6        **MS. HEYE:**  Since it's a deal with a corporation, it's just

7    not something we had discussed.

8        **THE COURT:**  The corporation could call some of its

9    top-ranking people to go speak to groups and say, "Here's how I

10   almost went to prison."

11       **MS. HEYE:**  I guess that is certainly something that we

12   could do.  It is not something we negotiated in this instance.

13       **THE COURT:**  All right.  Well, maybe that's -- I don't know

14   whether that's a good idea or not.  But okay.  The order of

15   business today is -- and we will save all those other issues of

16   what is the right answer for a future day --

17       **MS. HEYE:**  Yes, Your Honor.

18       **THE COURT:**  -- and we'll just do the plea here today.  So

19   who is going to actually speak for the corporation?

20       **MR. HALLING:**  Mr. Sang Soo Noh is the person who has been

21   authorized to speak.  He's present.  He was authorized by the

22   Board.

23       And attached to the plea agreement is the formal

24   authorization from the Samsung SDI Board of Directors

25   authorizing Mr. Noh to sign the plea agreement and to enter a

1   plea.

2       **THE COURT:**  Okay.  All right.  So I'll ask him about that.

3   So he's knowledgeable about all of that?

4       **MR. HALLING:**  He is knowledgeable to some extent, that's

5   correct, Your Honor.

6       **THE COURT:**  All right.  Well, we will see.  So let's ask

7   him -- has the interpreter been sworn in this matter?

8       **THE INTERPRETER:**  Yes, Your Honor.

9       **THE COURT:**  You have already last time?

10      **THE INTERPRETER:**  Yes, Your Honor.

11      **THE COURT:**  Okay.  So let's ask Mr. Noh to please stand in

12   the middle and raise your right hand and take an oath to tell

13   the truth.

14                  *(Defendant Representative placed under oath.)*

15      **MR. NOH:**  Yes.

16      **THE CLERK:**  Please state your full name for the record.

17      **MR. NOH:**  Sang Soo Noh.

18      **THE COURT:**  All right.  Welcome to the Court.

19   How are you today?

20      **MR. NOH:**  I'm fine, Your Honor.

21      **THE COURT:**  Good.

22   All right.  How old are you?

23      **MR. NOH:**  I'm 48 years old.

24      **THE COURT:**  How far did you go in school?

25      **MR. NOH:**  I graduated from the university.

8

1    **THE COURT:**  Okay.  And in what country was that?

2    **MR. NOH:**  In Korea.

3    **THE COURT:**  Okay.  And what kind of degree do you have?

4    **MR. NOH:**  B.A.

5    **THE COURT:**  Okay.  And how do you make your living?

6    **MR. NOH:**  I'm a vice-president of the financial

7    department.

8    **THE COURT:**  Of what?

9    **MR. NOH:**  Financial division.

10   **THE COURT:**  Of Samsung SDI Company?

11   **MR. NOH:**  Yes, Your Honor.

12   **THE COURT:**  Okay.  And are you thinking clearly today?

13   **MR. NOH:**  Yes, Your Honor.

14   **THE COURT:**  Are under the influence of any medicine,

15   alcohol or narcotic?

16   **MR. NOH:**  No, Your Honor.

17   **THE COURT:**  Are you mentally ill or being treated for any

18   mental illness?

19   **MR. NOH:**  No, I am not.

20   **THE COURT:**  Okay.  And are you an officer of Samsung SDI

21   Company, Limited?

22   **MR. NOH:**  Yes, I am.

23   **THE COURT:**  And again, tell us what officer you are.

24   **MR. NOH:**  Vice-president of finance.

25   **THE COURT:**  Okay.  And is the Board of Directors of

1    Samsung SDI Company, Limited, authorized to authorize you to

2    enter into a plea of guilty to the charge brought against

3    Samsung SDI Company in this case?

4        **MR. NOH:**  Yes.

5        **THE COURT:**  And has the board of directors, in fact,

6    authorized you to enter such a plea?

7        **MR. NOH:**  Yes.

8        **THE COURT:**  And have you -- do you, yourself, understand

9    what the charges are in this case against Samsung SDI Company,

10   Limited?

11       **MR. NOH:**  Yes, I'm aware of that.

12       **THE COURT:**  All right.  And has -- have you and others in

13   the company discussed with counsel, meaning the attorneys, all

14   of the ways to defend against this case?

15       **MR. NOH:**  Yes.

16       **THE COURT:**  And are the officers and directors of Samsung

17   SDI Company, Limited, fully satisfied with the advice of

18   counsel that they have received in this case?

19       **MR. NOH:**  Yes.

20       **THE COURT:**  Is Samsung SDI Company, Limited, financially

21   able to pay the fine that is agreed upon in your amended plea

22   agreement?

23       **MR. NOH:**  Yes.

24       **THE COURT:**  All right.  I understand that your willingness

25   to plead guilty, meaning Samsung, SDI Company, Limited's,

```
 1   willingness to plead guilty is a result of discussions between
 2   your lawyers and the government lawyers that led up to this
 3   amended plea agreement.  Is that true?
 4       MR. NOH:  Yes.
 5       THE COURT:  All right.  And did you -- did they read this
 6   agreement to you in Korean?
 7       MR. NOH:  Yes.
 8       THE COURT:  Did you understand it?
 9       MR. NOH:  Yes, I did.
10       THE COURT:  Did you discuss it with your attorneys?
11       MR. NOH:  Yes, we did.
12       THE COURT:  And does this agreement contain all of your
13   complete agreement with the U.S. Government?
14       MR. NOH:  Yes.
15       THE COURT:  All right.  So let's see, this is a Section 1
16   case.  So I guess the elements of the count are not summarized
17   here anywhere, are they?  I think I know them.
18       MS. HEYE:  I'm happy to read them, Your Honor, if you
19   would like.
20       THE COURT:  Let's just see.  Do you have the information
21   with you?
22       MS. HEYE:  Um-hum.
23       THE COURT:  Could I see that?
24       MS. HEYE:  Yes.
25       THE COURT:  All right.  Under this agreement, your --
```

1   Samsung SDI Company, Limited, would be pleading guilty to a

2   count of violating Section 1 of the Sherman Act.  And basically

3   that is it makes illegal conspiring to -- conspiring with some

4   other company to restrain trade in foreign or domestic

5   commerce.  And the particular things that are charged in this

6   case basically go to what?  Tell me -- tell us what they are in

7   summary form, you, the government, please --

8        **MS. HEYE:**  Well, the elements of the Sherman --

9        **THE COURT:**  -- Ms. Heye.

10       **MS. HEYE:**  Sure.  The elements of the Sherman Act Section

11  1 are first that the defendant entered into a conspiracy.  The

12  conspiracy was an unreasonable restraint of trade.  And the

13  conspiracy affected interstate commerce in the United States.

14       **THE COURT:**  All right.  And what, was it price fixing?

15       **MS. HEYE:**  It was price -- I am prepared to read a factual

16  basis, Your Honor, if that would be helpful.

17       **THE COURT:**  Well, how long is that?

18       **MS. HEYE:**  One page.

19       **THE COURT:**  Okay.  Why don't you go ahead and do that, and

20  then I'll -- is that the same one that's in the agreement?

21       **MS. HEYE:**  Yes, Your Honor.

22       **THE COURT:**  Okay.  I'm going to come to that.

23       **MS. HEYE:**  Okay.

24       **THE COURT:**  So you don't have to do that.

25       **MS. HEYE:**  Okay.  But it is price-fixing, reduction of

 1  output, and market share allegations.

 2      **THE COURT:**  Okay.  So those are the things that the

 3  government is accusing Samsung of agreeing with some other

 4  company to restrain trade, and that affects the commerce in the

 5  United States.  That's the basic claim, and that breaks down

 6  into price-fixing and restricting output.  What was the third

 7  thing?

 8      **MS. HEYE:**  Market share allegations.

 9      **THE COURT:**  Market share allegations, all of which are per

10  se violations under Section 1.

11      Do you understand that?

12      **MR. NOH:**  Yes.

13      **THE COURT:**  Okay.  Now -- so if you were to plead guilty

14  to that -- and we will come to that in a minute -- under the

15  statute, the individual people go to prison when they do this.

16  But in this case, we don't have individual people.  It's a

17  company, and you can't put a company in prison.  So they just

18  get to pay a fine.

19      And the statute authorizes a fine up to $100 million, plus

20  there is a special assessment of $100, right?

21      **MS. HEYE:**  It's actually $400, Your Honor.

22      **THE COURT:**  $400.  So $400 is mandatory.  And then there

23  is a fine of anywhere from zero to $100 million.

24      Do you understand that part?

25      **MR. NOH:**  Yes.

1    **THE COURT:**  All right.  In addition, even though the

2   government has said they won't seek it, the Court could require

3   restitution.  I'll come to the affect of your agreement on that

4   in a minute.

5    But under the statute, restitution is a possibility.  Do

6   you understand that part?

7    **MR. NOH:**  Yes.

8    **THE COURT:**  All right.  And then is there supervised

9   release under the statute?

10    **MS. HEYE:**  A term of probation is also part of the

11   maximum -- potential maximum penalty.

12    **THE COURT:**  And that would be -- what does the statute

13   authorize?

14    **MS. HEYE:**  It is at least one year but no more than five

15   years.

16    **THE COURT:**  Okay.  So also the judge could impose -- must

17   impose, it sounds like, one year, right?

18    **MS. HEYE:**  Under a maximum penalty.

19    **THE COURT:**  And then up to five years of probation in

20   addition to the fine.

21    Do you understand?

22    **MR. NOH:**  Yes.

23    **THE COURT:**  Good.  All right.  So this is also a felony

24   that Samsung will be pleading guilty to.

25    Do you understand that part?

14

1    **MR. NOH:**  Yes.

2    **THE COURT:**  So I guess it's fair to say -- and tell me if

3    I'm wrong -- but this plea could be entered in the -- with

4    collateral consequences in the civil litigation, right?

5    Couldn't they just put this in evidence as the evidence

6    directly against Samsung?

7    **MR. HALLING:**  There is a provision, Your Honor, of the

8    Clayton Act that addresses the affect of a conviction.  And so

9    the answer -- the short answer is yes, it's pursuant to the

10   terms of a particular statute.  It's part of the Clayton Act.

11   **THE COURT:**  Okay.  So do you understand that at least

12   there is a risk that, by pleading guilty, Samsung will be

13   prejudicing itself in the civil litigation by making it easier

14   to prove that Samsung engaged in a conspiracy.

15   Do you understand?

16   **MR. NOH:**  Yes.

17   **THE COURT:**  Okay.  All right.  And then let me go through

18   what the procedure we would follow would be.  After you plead

19   guilty, assuming you do, then I would refer Samsung to the

20   probation department, and a presentence report would be

21   prepared.  That's going to take us about 90 days.  Then we come

22   back here in about 90 days and have a sentencing hearing.

23   And at the sentencing hearing, the purpose is to decide on

24   the lowest, in this case, fine, that would carry out the

25   sentencing objectives of Congress such as the need for

1    deterrence, the need to reflect the seriousness of the offense

2    and so forth.

3        You would have the right to be heard.  The lawyers would

4    have the right to be heard.  And then the judge would have to

5    make a decision on what is the right answer.  And the

6    presentence report is a very important document in that

7    process, so you would participate in its preparation.  You

8    would have the right to comment on its accuracy and to make

9    objections to it if you thought it was inaccurate.  We would

10   then have that hearing.

11       I don't know the answer.  It could be that I think

12   $32 million is too much.  It could be that I think $32 million

13   is too little.  It could be that I think $32 million is close

14   enough and let's just go with that.  I don't know.  That's why

15   we have the hearing.

16       But here is the good part for you:  If I or the judge

17   decides that it should be more than $32 million, then fine,

18   then Samsung has the option to either take the higher amount.

19   I don't know what it could be, but whatever it is, take the

20   higher fine and just pay it, or say, "No, that's not right, we

21   don't like that deal," and withdraw your guilty plea, which you

22   would have the right to do under this agreement, and take your

23   chances at trial.

24       That would be your right, to do either one of those two.

25   So you could either take the higher amount and pay that or ask

1   to withdraw your guilty plea.  That would, of course, be

2   granted.  Then you would go to trial and you would take your

3   chances at trial.

4        Do you understand?

5        **MR. NOH:**  Yes.

6        **THE COURT:**  Okay.  Good.

7        All right.  Now, again, I want to emphasize, I don't have

8   any idea what the right answer here is.  And we just have to

9   wait and see, go through the process and find out.

10       But you do have an important measure of protection, given

11  that this is a plea agreement that your lawyers have gotten you

12  this additional advantage of being able to withdraw the plea of

13  guilty if it turns out that you don't like -- if the sentence

14  is higher than $32 million.

15       On the other hand, if I were to sentence Samsung to pay

16  the $32 million, you would be stuck with that, meaning Samsung

17  would be stuck with its guilty plea and could not get out of

18  that.

19       Do you understand that?

20       **MR. NOH:**  Yes.  Yes, I do.

21       **THE COURT:**  All right.  I want to change the subject for a

22  minute and explain the rights to go to trial.

23       Has Samsung fully discussed with counsel its right to go

24  to trial and its right to make the government prove the case

25  against it?

17

1    **MR. NOH:**  Yes, they did.

2    **THE COURT:**  Let's go over what those rights are.  Under

3    our system, no matter how guilty Samsung is, you have the

4    perfect right to say to the government, "Okay, prove it," and

5    make the government prove the case against you.

6        And sometimes even though somebody is guilty, the

7    government just doesn't have the proof to prove it.

8        So that is a very important right, and you would be giving

9    that right up.

10       Under our system, the burden of proof is always on -- the

11   burden of proof is always on the government.  It's never, never

12   on the defendant, and the government has to call witnesses.

13       Samsung has a right to be here with its representatives,

14   to see and hear all of the testimony offered against it, and

15   work with the lawyers for the best possible cross-examination

16   of all of those witnesses.

17       The government, after it rests its case, Samsung would

18   have a right to put on a defense.  There is no corporation

19   fifth Amendment, is there?  I don't think so.

20   **MS. HEYE:**  I don't believe so.

21   **THE COURT:**  All right.  So Samsung would have a right to

22   put on a defense, call witnesses on its behalf, and we would

23   subpoena those witnesses as necessary to make them show up and

24   testify.

25       We would obligate them to tell the truth by putting them

1    under oath.

2        Now, when all of the evidence was before the jury, the

3    jury would have to decide whether the government has carried

4    its burden of proof.  That means all 12 people on the jury

5    would have to agree that the government had proven beyond a

6    reasonable doubt each and every element of the offense.  That's

7    Section 1 of the Sherman Act.

8        And if the jury said yes, the government had done that,

9    then the jury would be obligated to return a guilty verdict.

10   On the other hand, if even one member of the 12-person jury

11   thought that the government had fallen short on even one

12   element of its proof, that jury would not be allowed to convict

13   Samsung.

14       Do you understand that?

15       **MR. NOH:**  Yes.  Yes, I understand.

16       **THE COURT:**  Very well.  Then after -- if Samsung was

17   convicted, in addition, Samsung would have the right to appeal

18   both the verdict, as well as the amount of any fine or terms of

19   probation that were placed upon it.

20       Do you understand?  Or restitution for that matter.

21       Do you understand?

22       **MR. NOH:**  Yes, I'm aware of that.

23       **THE COURT:**  All right.  Now, here's the deal:  If you

24   plead guilty today, if Samsung pleads guilty today, then

25   Samsung will be giving up all of those rights.

1        Do you understand that?

2        **MR. NOH:**  Yes, I understand.

3        **THE COURT:**  All right.  And does Samsung want to do that

4    freely and voluntarily?

5        **MR. NOH:**  Yes.

6        **THE COURT:**  Is anyone putting pressure on Samsung to plead

7    guilty?

8        **MR. NOH:**  No.

9        **THE COURT:**  All right.  So let's see what it is that

10    Samsung did wrong.  I'm going to read from your agreement here,

11    and then I'll paraphrase.  I won't get it exactly right.  But

12    I'm taking it out of this agreement, so you tell me if it's

13    right.

14        From as early as January of '97 until as late as March of

15    '06, Samsung SDI Company, Limited, was a corporation organized

16    and existing under the laws of Korea with its principal place

17    of business in Kiheung, Republic of Korea.  True?

18        **MR. NOH:**  That is correct, Your Honor.

19        **THE COURT:**  During that relative -- during that period,

20    Samsung SDI Company, Limited, was a producer of CDTs.

21    Cathode -- what does that stand for?

22        **MS. HEYE:**  Color display tubes, Your Honor.

23        **THE COURT:**  Color display tubes.  All right.  It was a

24    producer of color display tubes; was engaged in the sale of

25    color display tubes in the USA and elsewhere; and employed over

1   5,000 individuals.  All true?

2       **MR. NOH:**  Yes, Your Honor.

3       **THE COURT:**  CDTs, meaning color display tubes, are a type

4   of cathode ray tube.  True?

5       **MR. NOH:**  Yes.  Yes, true.

6       **THE COURT:**  Cathode ray tubes consist of evacuated glass

7   envelopes that contain an electron gun and a phosphorescent

8   screen.  True?

9       **MR. NOH:**  Yes.

10      **THE COURT:**  When electrons strike the screen, light is

11  emitted, creating an image on the screen.  True?

12      **MR. NOH:**  Yes.

13      **THE COURT:**  CDTs are the specialized cathode ray tubes

14  manufactured for use in computer monitors and other products

15  with similar technological requirements.

16      CDTs are distinguished from another type of specialized

17  cathode ray tubes, while color picture tubes, CPTs, which are

18  manufactured for use in televisions.  True?

19      **MR. NOH:**  Yes.

20      **THE COURT:**  During this period, which, again, is '97 to

21  '06, Samsung SDI Company, Limited, through its officers and

22  employees, including high-level personnel, participated in a

23  conspiracy among major CDT producers, the primary purpose of

24  which was to fix prices, reduce output and allocate market

25  shares of CDTs sold in the USA and elsewhere.  True?

1      **MR. NOH:**  Yes.

2      **THE COURT:**  In furtherance of the conspiracy, the

3    defendant, through its officers and employees, engaged in

4    discussions and attended meetings with representatives of other

5    major CDT producers.

6        During these discussions and meetings, agreements were

7    reached to fix prices, reduce output, and allocate market

8    shares of CDTs to be sold in the USA and elsewhere.  True?

9      **MR. NOH:**  Yeah.

10     **THE COURT:**  During the relevant period, meaning '97 to

11   '06, CDTs sold by one or more of the conspirator firms and

12   equipment and supplies necessary to the production and

13   distribution of CDTs, as well as payment for CDTs, traveled in

14   interstate and foreign commerce.  True?

15     **MR. NOH:**  Yes.

16     **THE COURT:**  The business activities of the defendant,

17   meaning Samsung SDI Company, Limited, and its co-conspirators,

18   in connection with the production and sale of CDTs that were

19   subjects of this conspiracy, were within the flow-up and

20   substantially affected interstate and foreign trade-in

21   commerce.  True?

22     **MR. NOH:**  Yes.

23     **THE COURT:**  During the relevant period, the defendant CDT

24   sales directly affected by the conspiracy to customers in the

25   USA totaled approximately $89 million.  True?

1    **MR. NOH:**  Yes, true.

2    **THE COURT:**  Finally, acts in furtherance of this

3 conspiracy were carried out within the Northern District of

4 California.  CDTs that were the subject of this conspiracy were

5 transported by one or more of the co-conspirators through this

6 district.  True?

7    **MR. NOH:**  Yes.

8    **THE COURT:**  All right.  I just want to go back to one

9 other thing.  It looks like in your agreement that the maximum

10 fine is the greatest of $100 million or twice the gross

11 pecuniary gain the conspirators derived from the crime or twice

12 the gross pecuniary loss caused to the victims of the crime by

13 the conspirators.

14    Have I said that right?

15    **MS. HEYE:**  Yes, Your Honor.

16    **THE COURT:**  Do you understand that part?

17    **MR. NOH:**  Yes.

18    **THE COURT:**  Okay.  So I ask Ms. Heye -- I'm sorry if I --

19 am I saying it right?

20    **MS. HEYE:**  You're getting it, um-hum.

21    **THE COURT:**  -- Ms. Heye if I need to ask anything more or

22 anything more that should be put on the record?

23    **MS. HEYE:**  That's sufficient, Your Honor.

24    I would like to go through what the defendant's

25 cooperation obligations were in response to your earlier

23

1    question about the material terms.

2         **THE COURT:**  Oh, yes, the cooperation.

3         Yes, please do that, Ms. Heye.

4         **MS. HEYE:**  Sure.  The defendant agrees to provide full

5    cooperation with the government's ongoing criminal

6    investigation into anticompetitive activity in the CDT and CPT

7    industry, including providing documents we request from both

8    overseas and the United States.

9         This cooperation also includes using Samsung SDI's best

10   efforts to secure the ongoing, full and truthful corporation of

11   all current and former officers, employees and directors of the

12   company, except the individuals who have been carved out of

13   both the obligations and protections of the plea agreement.

14        **THE COURT:**  All right.  So do you understand that part?

15        **MR. NOH:**  Yes.  Yes, I do.

16        **THE COURT:**  All right.  And if there is a violation of

17   that, what does the government get to do?

18        **MS. HEYE:**  Your Honor, then the government may seek to

19   void the plea agreement.

20        **THE COURT:**  Void the plea or void the -- in other words,

21   what happens to the guilty plea if you seek to do that?

22        **MS. HEYE:**  If they violate the plea agreement, then they

23   shall be subject to prosecution for any federal crime,

24   including the substantive offenses relating to the

25   investigation resulting in this plea agreement.

1       **THE COURT:**  Is that right?

2       **MR. HALLING:**  Your Honor, if the terms are violated, the

3   agreement can be voided and the government can prosecute,

4   correct?

5       **THE COURT:**  But does the guilty plea go away at that

6   point?

7       **MR. HALLING:**  I believe so.

8       **THE COURT:**  Where does it say that?

9       **MS. HEYE:**  Well, because of the -- because the plea

10   agreement -- because we're voiding our obligation under this

11   plea agreement, I think that then the company would not be held

12   to the plea agreement anymore.

13      **MR. HALLING:**  It would be as though the plea agreement

14   never occurred.

15      **THE COURT:**  All right.  Paragraph 20 covers this?

16      **MS. HEYE:**  Um-hum.

17      **THE COURT:**  Let me just look at it.

18      Okay.  Anything more that needs to be said on that

19   subject?

20      **MS. HEYE:**  No, Your Honor.

21      **THE COURT:**  All right.  Is there anything the defense

22   counsel wish for me to go over?

23      **MR. HALLING:**  No, Your Honor.

24      **THE COURT:**  So, Mr. Sang Soo Noh, any questions you have?

25      **MR. NOH:**  No, I do not, Your Honor.

1      **THE COURT:**  Okay.  All right.  And do you wish to go

2   forward now, or do you want more time to think about it?

3      **MR. NOH:**   I would like to go ahead now, Your Honor.

4      **THE COURT:**  All right.  So I will now ask you the official

5   question, and that is:  How does Samsung SDI Company, Limited,

6   a defendant in this case, plead to the information filed

7   against it in this case charging it with criminal violation of

8   Section 1 of the Sherman Act, conspiracy and restraint of

9   trade?

10      Does Samsung SDI Company, Limited, plead guilty or not

11   guilty?

12      **MR. NOH:**   Guilty.

13      **THE COURT:**  All right.  So, Mr. Sang Soo Noh, I'm going to

14   do what you have asked me to do.  I will find that you and

15   Samsung are fully competent and capable of entering an informed

16   plea; that you are aware, and Samsung is aware of the nature of

17   the charges and the possible consequences of pleading guilty;

18   that Samsung's plea of guilty is supported by a factual basis;

19   that it is voluntary and informed.

20      So the Court will accept your plea of guilty on behalf of

21   Samsung SDI Company, Limited, and adjudge Samsung SDI Company,

22   Limited, convicted of violating Section 1 as charged in the

23   Sherman Act.  So that important step is behind Samsung SDI

24   Company, Limited.

25      Now the Court will refer you to the probation department

26

1    for preparation of the presentence report, and then we will

2    come back here later on to determine what the sentence ought to

3    be or whether to accept your proposed agreement.

4         Now, ordinarily we'd come back in 90 days, but you may

5    want time for your cooperation to run.

6         I'll do whatever you want to do that on that.

7         **MS. HEYE:**  I think we'd like to come back in 90 days, Your

8    Honor.

9         **MR. HALLING:**  We would like to come back in 90 days, Your

10   Honor.

11        **THE COURT:**  In 90 days.  Fine.  Set it for 90 days out.

12        **THE CLERK:**  August 16th at 2:00.

13        **THE COURT:**  All right.

14        **MS. HEYE:**  Would you like the original plea?

15        **THE COURT:**  Yes.  Please give Tony the original plea, and

16   you keep that, Tony.  I don't need to see that.  Just make

17   sure -- let me just see if it's been properly signed.

18        Has it been signed by everyone?

19        **MS. HEYE:**  Yes, Your Honor, it has.

20        **THE COURT:**  All right.  Here you are.

21        All right.  Anything more I can do for you today?

22        **MS. HEYE:**  Just in an abundance of caution, can we confirm

23   and put on the record that time between now and the sentencing

24   hearing shall be excluded from the Speedy Trial Act on the

25   basis that -- for a delay resulting from consideration by the

1    Court of our proposed plea agreement.

2        **THE COURT:**  Okay.  Well, I'll do that if everyone wants me

3    to, but I think since the guilty plea has been accepted, the --

4    whether or not -- you see, the plea has been accepted.

5        **MS. HEYE:**  Um-hum.

6        **THE COURT:**  If I were to exceed the $32 million here, for

7    some reason, then you would have a right to make a motion to

8    withdraw the guilty plea.

9        I don't think what you're asking for is necessary, but out

10   of caution, we will do that.

11       Is there any objection?

12       **MR. HALLING:**  No, Your Honor.

13       **THE COURT:**  All right.  For the reasons stated by counsel,

14   the time between today and August 16th will be excluded from

15   the speedy trial calculation.

16       The Court finds the need for the continuance outweighs the

17   need for the public and the defendant in a speedy trial.

18       Please do a written stipulation.

19       Would you do that?

20       **MS. HEYE:**  Yes, Your Honor.

21       **THE COURT:**  Okay.  Anything more today?

22       **MS. HEYE:**  No, Your Honor, that's it.

23       **MR. HALLING:**  No, Your Honor.

24       **THE COURT:**  Great.  Thank you all.

25       **MR. HALLING:**  Thank you, Your Honor.

1          THE COURT:  Have a good day.

2          THE CLERK:  Court is in recess.

3                  *(Proceedings concluded at 4:00 p.m.)*

```
1                    CERTIFICATE OF REPORTER
2          I, the undersigned, hereby certify that the foregoing
3    proceedings were reported by me, a certified shorthand
4    reporter, and were thereafter transcribed under my direction
5    into typewriting; that the foregoing is a full, complete and
6    true record of said proceedings.
7          I further certify that I am not of counsel or attorney for
8    either or any of the parties in the foregoing proceedings and
9    caption named, or in any way interested in the outcome of the
10   cause named in said caption.
11         The fee charged and the page format for the transcript
12   conform to the regulations of the judicial conference.
13         Furthermore, I certify the invoice does not contain
14   charges for the court reporter's certification page.
15         IN WITNESS WHEREOF, I have hereunto set my hand this 18th
16   day of August 2011.
17
18                              /s/ Margaret Gurule
19                              _____
20                              MARGARET "MARGO" GURULE, CSR
21
22
23
24
25
```

# EXHIBIT 3

1  LIDIA MAHER (CSBN 222253)
   MAY LEE HEYE (CSBN 209366)
2  TAI S. MILDER (CSBN 267070)
   Antitrust Division
3  U.S. Department of Justice
   450 Golden Gate Avenue
4  Box 36046, Room 10-0101
   San Francisco, CA  94102
5  Telephone:  (415) 436-6660

6  Attorneys for the United States

7

8                 UNITED STATES DISTRICT COURT

9         FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                 SAN FRANCISCO DIVISION

11                                    )    Case No. CR 11-0162 (WHA)
   UNITED STATES OF AMERICA           )
12                                     )
                v.                     )
13                                     )
   SAMSUNG SDI COMPANY, LTD.,          )
14                                     )
                                       )
15          Defendant.                 )
   ———————————————————————            )

16              **AMENDED PLEA AGREEMENT**

17        The United States of America and Samsung SDI Company, Ltd. ("defendant"), a

18  corporation organized and existing under the laws of the Republic of Korea, hereby enter into the

19  following Amended Plea Agreement ("Plea Agreement") pursuant to Rule 11(c)(1)(C) of the

20  Federal Rules of Criminal Procedure ("Fed. R. Crim. P."):

21              **RIGHTS OF DEFENDANT**

22  1.    The defendant understands its rights:

23        (a)    to be represented by an attorney;

24        (b)    to be charged by Indictment;

25        (c)    as a corporation organized and existing under the laws of the Republic of

26  Korea, to decline to accept service of the Summons in this case, and to contest the

27  jurisdiction of the United States to prosecute this case against it in the United States

28  District Court for the Northern District of California;

PLEA AGREEMENT - SAMSUNG SDI - PAGE 1

(d)     to plead not guilty to any criminal charge brought against it;

(e)     to have a trial by jury, at which it would be presumed not guilty of the charge and the United States would have to prove every essential element of the charged offense beyond a reasonable doubt for it to be found guilty;

(f)     to confront and cross-examine witnesses against it and to subpoena witnesses in its defense at trial;

(g)     to appeal its conviction if it is found guilty; and

(h)     to appeal the imposition of sentence against it.

## AGREEMENT TO PLEAD GUILTY AND WAIVE CERTAIN RIGHTS

2.     The defendant knowingly and voluntarily waives the rights set out in Paragraph 1(b)-(g) above, including all jurisdictional defenses to the prosecution of this case, and agrees voluntarily to consent to the jurisdiction of the United States to prosecute this case against it in the United States District Court for the Northern District of California. The defendant also knowingly and voluntarily waives the right to file any appeal, any collateral attack, or any other writ or motion, including but not limited to an appeal under 18 U.S.C. § 3742, that challenges the sentence imposed by the Court if that sentence is consistent with or below the recommended sentence in Paragraph 8 of this Plea Agreement, regardless of how the sentence is determined by the Court. This agreement does not affect the rights or obligations of the United States as set forth in 18 U.S.C. § 3742(b) and (c). Nothing in this paragraph, however, shall act as a bar to the defendant perfecting any legal remedies it may otherwise have on appeal or collateral attack respecting claims of ineffective assistance of counsel or prosecutorial misconduct. Pursuant to Fed. R. Crim. P. 7(b), the defendant will waive indictment and plead guilty at arraignment to a one-count Information to be filed in the United States District Court for the Northern District of California. The Information will charge the defendant with participating in a conspiracy to suppress and eliminate competition by fixing prices, reducing output, and allocating market shares of color display tubes ("CDTs") sold in the United States and elsewhere, from at least as early as January 1997, until at least as late as March 2006, in violation of the Sherman Antitrust

PLEA AGREEMENT - SAMSUNG SDI - PAGE 2

1 Act, 15 U.S.C. § 1.

2     3.    The defendant, pursuant to the terms of this Plea Agreement, will plead guilty to

3 the criminal charge described in Paragraph 2 above and will make a factual admission of guilt to

4 the Court in accordance with Fed. R. Crim. P. 11, as set forth in Paragraph 4 below.

5                **FACTUAL BASIS FOR OFFENSE CHARGED**

6     4.    Had this case gone to trial, the United States would have presented evidence

7 sufficient to prove the following facts:

8     (a)    For purposes of this Plea Agreement, the "relevant period" is that period from at

9 least as early as January 1997, until at least as late as March 2006.  During the relevant period,

10 the defendant was a corporation organized and existing under the laws of the Republic of Korea.

11 The defendant has its principal place of business in Giheung, Republic of Korea.  During the

12 relevant period, the defendant was a producer of CDTs, was engaged in the sale of CDTs in the

13 United States and elsewhere, and employed over 5,000 individuals.

14     (b)    CDTs are a type of cathode ray tube.  Cathode ray tubes consist of evacuated glass

15 envelopes that contain an electron gun and a phosphorescent screen.  When electrons strike the

16 screen, light is emitted, creating an image on the screen.  CDTs are the specialized cathode ray

17 tubes manufactured for use in computer monitors and other products with similar technological

18 requirements.  CDTs are distinguished from another type of specialized cathode ray tube product,

19 color picture tubes ("CPTs"), which are manufactured for use in televisions.

20     (c)    During the relevant period, the defendant, through its officers and employees,

21 including high-level personnel of the defendant, participated in a conspiracy among major CDT

22 producers, the primary purpose of which was to fix prices, reduce output, and allocate market

23 shares of CDTs sold in the United States and elsewhere.  In furtherance of the conspiracy, the

24 defendant, through its officers and employees, engaged in discussions and attended meetings

25 with representatives of other major CDT producers.  During these discussions and meetings,

26 agreements were reached to fix prices, reduce output, and allocate market shares of CDTs to be

27 sold in the United States and elsewhere.

28     (d)    During the relevant period, CDTs sold by one or more of the conspirator firms,

PLEA AGREEMENT - SAMSUNG SDI - PAGE 3

1  and equipment and supplies necessary to the production and distribution of CDTs, as well as

2  payments for CDTs, traveled in interstate and foreign commerce.  The business activities of the

3  defendant and its co-conspirators in connection with the production and sale of CDTs that were

4  the subjects of this conspiracy were within the flow of, and substantially affected, interstate and

5  foreign trade and commerce.  During the relevant period, the defendant's CDT sales, directly

6  affected by the conspiracy, to customers in the United States totaled approximately $89 million.

7        (e)     Acts in furtherance of this conspiracy were carried out within the Northern

8  District of California.  CDTs that were the subject of this conspiracy were transported by one or

9  more of the conspirators through this District.

10  ## POSSIBLE MAXIMUM SENTENCE

11        5.     The defendant understands that the statutory maximum penalty which may be

12  imposed against it upon conviction for a violation of Section One of the Sherman Antitrust Act is

13  a fine in an amount equal to the greatest of:

14        (a)     $100 million (15 U.S.C. § 1);

15        (b)     twice the gross pecuniary gain the conspirators derived from the crime (18

16  U.S.C. § 3571(c) and (d)); or

17        (c)     twice the gross pecuniary loss caused to the victims of the crime by the

18  conspirators (18 U.S.C. § 3571(c) and (d)).

19        6.     In addition, the defendant understands that:

20        (a)     pursuant to 18 U.S.C. § 3561(c)(1), the Court may impose a term of

21  probation of at least one year, but not more than five years;

22        (b)     pursuant to §8B1.1 of the United States Sentencing Guidelines

23  ("U.S.S.G.," "Sentencing Guidelines," or "Guidelines") or 18 U.S.C. § 3563(b)(2) or

24  3663(a)(3), the Court may order it to pay restitution to the victims of the offense; and

25        (c)     pursuant to 18 U.S.C. § 3013(a)(2)(B), the Court is required to order the

26  defendant to pay a $400 special assessment upon conviction for the charged crime.

27  ///

28  ///

PLEA AGREEMENT - SAMSUNG SDI - PAGE 4

## SENTENCING GUIDELINES

7. The defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in effect on the day of sentencing, along with the other factors set forth in 18 U.S.C. § 3553(a), in determining and imposing sentence. The defendant understands that the Guidelines determinations will be made by the Court by a preponderance of the evidence standard. The defendant understands that although the Court is not ultimately bound to impose a sentence within the applicable Guidelines range, its sentence must be reasonable based upon consideration of all relevant sentencing factors set forth in 18 U.S.C. § 3553(a). Pursuant to U.S.S.G. §1B1.8, the United States agrees that self-incriminating information that the defendant provides to the United States pursuant to this Plea Agreement will not be used to increase the volume of affected commerce attributable to the defendant or in determining the defendant's applicable Guidelines range, except to the extent provided in U.S.S.G. §1B1.8(b).

## SENTENCING AGREEMENT

8. Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the United States and the defendant agree that the appropriate disposition of this case is, and agree to recommend jointly that the Court impose, a sentence within the applicable Guidelines range requiring the defendant to pay to the United States a criminal fine of $32 million, and no order of restitution ("the recommended sentence"). The parties agree that there exists no aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the U.S. Sentencing Commission in formulating the Sentencing Guidelines justifying a departure pursuant to U.S.S.G. §5K2.0. The parties agree not to seek or support any sentence outside of the Guidelines range nor any Guidelines adjustment for any reason that is not set forth in this Plea Agreement. The parties further agree that the recommended sentence set forth in this Plea Agreement is reasonable.

(a) The defendant understands that the Court will order it to pay a $400 special assessment, pursuant to 18 U.S.C. § 3013(a)(2)(B), in addition to any fine imposed.

(b) Both parties will recommend that no term of probation be imposed, but the

PLEA AGREEMENT - SAMSUNG SDI - PAGE 5

1    defendant understands that the Court's denial of this request will not void this Plea

2    Agreement.

3            (c)     The United States and the defendant jointly submit that this Plea

4    Agreement, together with the record that will be created by the United States and the

5    defendant at the plea and sentencing hearings, and the further disclosure described in

6    Paragraph 9, will provide sufficient information concerning the defendant, the crime

7    charged in this case, and the defendant's role in the crime to enable the meaningful

8    exercise of sentencing authority by the Court under 18 U.S.C. § 3553.  The United States

9    and defendant agree to request jointly that the Court accept the defendant's guilty plea

10   and impose sentence on an expedited schedule as early as the date of arraignment, based

11   upon the record provided by the defendant and the United States, under the provisions of

12   Fed. R. Crim. P. 32(c)(1)(A)(ii), U.S.S.G. §6A1.1, and Rule 32-1(b) of the Criminal

13   Local Rules.  The Court's denial of the request to impose sentence on an expedited

14   schedule will not void this Plea Agreement.

15   9.       Subject to the ongoing, full, and truthful cooperation of the defendant described in

16   Paragraph 12 of this Plea Agreement, and before sentencing in the case, the United States will

17   fully advise the Court of the fact, manner, and extent of the defendant's cooperation and its

18   commitment to prospective cooperation with the United States' investigation and prosecutions,

19   all material facts relating to the defendant's involvement in the charged offense, and all other

20   relevant conduct.

21   10.      The United States and the defendant understand that the Court retains complete

22   discretion to accept or reject the recommended sentence provided for in Paragraph 8 of this Plea

23   Agreement.

24           (a)     If the Court does not accept the recommended sentence, the United States

25   and the defendant agree that this Plea Agreement, except for Paragraph 10(b) below, shall

26   be rendered void.

27           (b)     If the Court does not accept the recommended sentence, the defendant will

28   be free to withdraw its guilty plea (Fed. R. Crim. P. 11(c)(5) and (d)).  If the defendant

PLEA AGREEMENT - SAMSUNG SDI - PAGE 6

withdraws its plea of guilty, this Plea Agreement, the guilty plea, and any statement made in the course of any proceedings under Fed. R. Crim. P. 11 regarding the guilty plea or this Plea Agreement or made in the course of plea discussions with an attorney for the government shall not be admissible against the defendant in any criminal or civil proceeding, except as otherwise provided in Fed. R. Evid. 410. In addition, the defendant agrees that, if it withdraws its guilty plea pursuant to this subparagraph of the Plea Agreement, the statute of limitations period for any offense referred to in Paragraph 16 of this Plea Agreement shall be tolled for the period between March 10, 2011 and the date the defendant withdrew its guilty plea or for a period of sixty (60) days after the date of the signing of the Plea Agreement, whichever period is greater.

11. In light of the civil class action cases filed against the defendant, including *In re Cathode Ray Tube (CRT) Antitrust Litigation*, No. C07-5944 SC, MDL No. 1917, in the United States District Court, Northern District of California, which potentially provide for a recovery of a multiple of actual damages, and the opportunity for potential victims to pursue damages through non-class claims in the multidistrict litigation and other proceedings, the United States and the defendant agree that the recommended sentence provided for in Paragraph 8 of this Plea Agreement does not include a restitution order for the offense charged in the Information.

## DEFENDANT'S COOPERATION

12. The defendant, its subsidiaries, and related corporate entities engaged in the sale or production of any cathode ray tube products, including CDTs and CPTs (collectively, "related entities") will cooperate fully and truthfully with the United States in the prosecution of this case, the conduct of the current federal investigation of violations of federal antitrust and related criminal laws involving the manufacture or sale of CDTs and CPTs in the United States and elsewhere, any other federal investigation resulting therefrom, and any litigation or other proceedings arising or resulting from any such investigation to which the United States is a party ("Federal Proceeding"). The ongoing, full, and truthful cooperation of the defendant shall include, but not be limited to:

(a) producing to the United States all non-privileged documents, information,

PLEA AGREEMENT - SAMSUNG SDI - PAGE 7

1   and other materials wherever located, in the possession, custody, or control of the

2   defendant or any of its related entities, requested by the United States in connection with

3   any Federal Proceeding; and

4         (b)    using its best efforts to secure the ongoing, full, and truthful cooperation,

5   as defined in Paragraph 13 of this Plea Agreement, of the current and former directors,

6   officers, and employees of the defendant or any of its related entities as may be requested

7   by the United States – but excluding Jae-Sik Kim, Seung-Kyu Park, a.k.a. Sang-Kyu

8   Park, a.k.a. Sky Park, Duck-Yun Kim, a.k.a. Deok-Yun Kim, a.k.a. Deok-Yeon Kim, and

9   Hoo-Mok Ha, a.k.a. Hu-Mok Ha – including making these persons available in the

10  United States and at other mutually agreed-upon locations, at the defendant's expense, for

11  interviews and the provision of testimony in grand jury, trial, and other judicial

12  proceedings in connection with any Federal Proceeding.

13      13.    The ongoing, full, and truthful cooperation of each person described in Paragraph

14  12(b) above will be subject to the procedures and protections of this paragraph, and shall include,

15  but not be limited to:

16        (a)    producing in the United States and at other mutually agreed-upon locations

17  all non-privileged documents, including claimed personal documents, and other materials,

18  wherever located, requested by attorneys and agents of the United States;

19        (b)    making himself or herself available for interviews in the United States and

20  at other mutually agreed-upon locations, not at the expense of the United States, upon the

21  request of attorneys and agents of the United States;

22        (c)    responding fully and truthfully to all inquiries of the United States in

23  connection with any Federal Proceeding, without falsely implicating any person or

24  intentionally withholding any information, subject to the penalties of making false

25  statements (18 U.S.C. § 1001) and obstruction of justice (18 U.S.C. § 1503, *et seq.*);

26        (d)    otherwise voluntarily providing the United States with any non-privileged

27  material or information not requested in (a) - (c) of this paragraph that he or she may have

28  that is related to any Federal Proceeding;

PLEA AGREEMENT - SAMSUNG SDI - PAGE 8

(e)     when called upon to do so by the United States in connection with any Federal Proceeding, testifying in grand jury, trial, and other judicial proceedings in the United States fully, truthfully, and under oath, subject to the penalties of perjury (18 U.S.C. § 1621), making false statements or declarations in grand jury or court proceedings (18 U.S.C. § 1623), contempt (18 U.S.C. §§ 401-402), and obstruction of justice (18 U.S.C. § 1503, *et seq.*); and

(f)     agreeing that, if the agreement not to prosecute him or her in this Plea Agreement is rendered void under Paragraph 15(c), the statute of limitations period for any Relevant Offense as defined in Paragraph 15(a) shall be tolled as to him or her for the period between the date of the signing of this Plea Agreement and six (6) months after the date that the United States gave notice of its intent to void its obligations to that person under the Plea Agreement.

## GOVERNMENT'S AGREEMENT

14.     Upon acceptance of the guilty plea called for by this Plea Agreement and the imposition of the recommended sentence, and subject to the cooperation requirements of Paragraph 12 of this Plea Agreement, the United States agrees that it will not bring further criminal charges against the defendant or any of its related entities for any act or offense committed before the date of this Plea Agreement that was undertaken in furtherance of an antitrust conspiracy involving the manufacture or sale of any cathode ray tube products, including CDTs and CPTs, in the United States and elsewhere. The nonprosecution terms of this paragraph do not apply to civil matters of any kind, to any violation of the federal tax or securities laws, or to any crime of violence.

15.     The United States agrees to the following:

(a)     Upon the Court's acceptance of the guilty plea called for by this Plea Agreement and the imposition of the recommended sentence and subject to the exceptions noted in Paragraph 15(c), the United States will not bring criminal charges against any current or former director, officer, or employee of the defendant or its related entities for any act or offense committed before the date of this Plea Agreement and while

PLEA AGREEMENT - SAMSUNG SDI - PAGE 9

that person was acting as a director, officer, or employee of the defendant or its related entities that was undertaken in furtherance of an antitrust conspiracy involving the manufacture or sale of any cathode ray tube products, including CDTs and CPTs, in the United States and elsewhere ("Relevant Offense"), except that the protections granted in this paragraph shall not apply to Jae-Sik Kim, Seung-Kyu Park, a.k.a. Sang-Kyu Park, a.k.a. Sky Park, Duck-Yun Kim, a.k.a. Deok-Yun Kim, a.k.a. Deok-Yeon Kim, and Hoo-Mok Ha, a.k.a. Hu-Mok Ha;

(b)     Should the United States determine that any current or former director, officer, or employee of the defendant or its related entities may have information relevant to any Federal Proceeding, the United States may request that person's cooperation under the terms of this Plea Agreement by written request delivered to counsel for the individual (with a copy to the undersigned counsel for the defendant) or, if the individual is not known by the United States to be represented, to the undersigned counsel for the defendant;

(c)     If any person requested to provide cooperation under Paragraph 15(b) fails to comply with his or her obligations under Paragraph 13, then the terms of this Plea Agreement as they pertain to that person, and the agreement not to prosecute that person granted in this Plea Agreement, shall be rendered void;

(d)     Except as provided in Paragraph 15(e), information provided by a person described in Paragraph 15(b) to the United States under the terms of this Plea Agreement pertaining to any Relevant Offense, or any information directly or indirectly derived from that information, may not be used against that person in a criminal case, except in a prosecution for perjury (18 U.S.C. § 1621), making a false statement or declaration (18 U.S.C. §§ 1001, 1623), or obstruction of justice (18 U.S.C. § 1503, *et seq.*);

(e)     If any person who provides information to the United States under this Plea Agreement fails to comply fully with his or her obligations under Paragraph 13 of this Plea Agreement, the agreement in Paragraph 15(d) not to use that information or any information directly or indirectly derived from it against that person in a criminal case

PLEA AGREEMENT - SAMSUNG SDI - PAGE 10

1    shall be rendered void;

2          (f)    The nonprosecution terms of this paragraph do not apply to civil matters of

3    any kind, to any violation of the federal tax or securities laws, or to any crime of violence;

4    and

5          (g)    Documents provided under Paragraphs 12(a) and 13(a) shall be deemed

6    responsive to outstanding grand jury subpoenas issued to the defendant or any of its

7    related entities.

8          16.    The United States agrees that when any person travels to the United States for

9    interviews, grand jury appearances, or court appearances pursuant to this Plea Agreement, or for

10   meetings with counsel in preparation therefor, the United States will take no action, based upon

11   any Relevant Offense, to subject such person to arrest, detention, or service of process, or to

12   prevent such person from departing the United States. This paragraph does not apply to an

13   individual's commission of perjury (18 U.S.C. § 1621), making false statements (18 U.S.C. §

14   1001), making false statements or declarations in grand jury or court proceedings (18 U.S.C. §

15   1623), obstruction of justice (18 U.S.C. § 1503, *et seq.*), or contempt (18 U.S.C. §§ 401-402) in

16   connection with any testimony or information provided or requested in any Federal Proceeding.

17         17.    The defendant understands that it may be subject to administrative action by

18   federal or state agencies other than the United States Department of Justice, Antitrust Division,

19   based upon the conviction resulting from this Plea Agreement, and that this Plea Agreement in

20   no way controls whatever action, if any, other agencies may take. However, the United States

21   agrees that, if requested, it will advise the appropriate officials of any governmental agency

22   considering such administrative action of the fact, manner, and extent of the cooperation of the

23   defendant and its related entities as a matter for that agency to consider before determining what

24   administrative action, if any, to take.

25                    **REPRESENTATION BY COUNSEL**

26         18.    The defendant has been represented by counsel and is fully satisfied that its

27   attorneys have provided competent legal representation. The defendant has thoroughly reviewed

28   this Plea Agreement and acknowledges that counsel has advised it of the nature of the charge,

PLEA AGREEMENT - SAMSUNG SDI - PAGE 11

any possible defenses to the charge, and the nature and range of possible sentences.

## VOLUNTARY PLEA

19.     The defendant's decision to enter into this Plea Agreement and to tender a plea of guilty is freely and voluntarily made and is not the result of force, threats, assurances, promises, or representations other than the representations contained in this Plea Agreement. The United States has made no promises or representations to the defendant as to whether the Court will accept or reject the recommendations contained within this Plea Agreement.

## VIOLATION OF PLEA AGREEMENT

20.     The defendant agrees that, should the United States determine in good faith, during the period that any Federal Proceeding is pending, that the defendant or any of its related entities have failed to provide full and truthful cooperation, as described in Paragraph 12 of this Plea Agreement, or has otherwise violated any provision of this Plea Agreement, the United States will notify counsel for the defendant in writing by personal or overnight delivery or facsimile transmission and may also notify counsel by telephone of its intention to void any of its obligations under this Plea Agreement (except its obligations under this paragraph), and the defendant and its related entities shall be subject to prosecution for any federal crime of which the United States has knowledge including, but not limited to, the substantive offenses relating to the investigation resulting in this Plea Agreement. The defendant may seek Court review of any determination made by the United States under this Paragraph to void any of its obligations under the Plea Agreement. The defendant and its related entities agree that, in the event that the United States is released from its obligations under this Plea Agreement and brings criminal charges against the defendant or its related entities for any offense referred to in Paragraph 14 of this Plea Agreement, the statute of limitations period for such offense shall be tolled for the period between the date of the signing of this Plea Agreement and six (6) months after the date the United States gave notice of its intent to void its obligations under this Plea Agreement.

21.     The defendant understands and agrees that in any further prosecution of it or its related entities resulting from the release of the United States from its obligations under this Plea Agreement, because of the defendant's or its related entities' violation of the Plea

PLEA AGREEMENT - SAMSUNG SDI - PAGE 12

Agreement, any documents, statements, information, testimony, or evidence provided by it, its related entities, or current or former directors, officers, or employees of it or its related entities to attorneys or agents of the United States, federal grand juries, or courts, and any leads derived therefrom, may be used against it or its related entities in any such further prosecution. In addition, the defendant unconditionally waives its right to challenge the use of such evidence in any such further prosecution, notwithstanding the protections of Fed. R. Evid. 410.

### ENTIRETY OF AGREEMENT

22.     This Plea Agreement constitutes the entire agreement between the United States and the defendant concerning the disposition of the criminal charge in this case. This Plea Agreement cannot be modified except in writing, signed by the United States and the defendant.

23.     The undersigned is authorized to enter this Plea Agreement on behalf of the defendant as evidenced by the Resolution of the Board of Directors of the defendant attached to, and incorporated by reference in, this Plea Agreement.

24.     The undersigned attorneys for the United States have been authorized by the Attorney General of the United States to enter this Plea Agreement on behalf of the United States.

///
///
///
///
///
///
///
///
///
///
///

PLEA AGREEMENT - SAMSUNG SDI - PAGE 13

25.    A facsimile or PDF signature shall be deemed an original signature for the purpose of executing this Plea Agreement.  Multiple signature pages are authorized for the purpose of executing this Plea Agreement.

Respectfully submitted,

BY: _____

Sang Soo Noh
Vice President
Samsung SDI Company, Ltd.
428-5 Gongse-dong
Giheung-gu, Yongin-si
Gyeonggi-do, 446-577
Republic of Korea

DATED: ____5 / 12 / 2011____

BY: _____

Lidia Maher
May Lee Heye
Tai S. Milder
Attorneys
U.S. Department of Justice
Antitrust Division
450 Golden Gate Avenue
Box 36046, Room 10-0101
San Francisco, California 94102
Tel: (415) 436-6660
Fax: (415) 436-6687

DATED: _May 12, 2011_

BY: _____

Gary L. Halling, Esq.
Counsel for Samsung SDI Company, Ltd.
Sheppard Mullin Richter & Hampton LLP
Four Embarcadero Center, 17th Floor
San Francisco, California 94111
Tel: (415) 434-9100
Fax: (415) 434-3947

DATED: _May 12, 2011_

PLEA AGREEMENT - SAMSUNG SDI - PAGE 14

# RESOLUTION OF THE BOARD OF DIRECTORS
## OF
## SAMSUNG SDI CO., LTD.

A meeting of the Board of Directors (the "Board") of SAMSUNG SDI, CO., LTD. (the "Company"), a Korean corporation, was held on March 9, 2011 at the Company's Seoul office having its address at 21st Fl., SEC Bldg., Samsung Seocho Tower, 1320-10 Seocho 2-Dong, Seocho-Gu, Seoul 137-965, Korea.

The following Directors of the Company were present and constituted a quorum:

MR. CHI HUN CHOI
MR. JUNG WHA LEE
MR. BYEONG BOK JEON
MR. YEONG KIL BAE
MR. JUNE CHULL CHANG
MS. HEE KYUNG KIM

The following resolutions are hereby adopted by the Board of the Company in accordance with the Commercial Laws of Korea:

WHEREAS, it is deemed in the best interest of the Company to enter a plea agreement with the United States Department of Justice;

NOW, THEREFORE, be it

RESOLVED, that execution, delivery and performance of a plea agreement, by and between the Company and the United States Department of Justice (the "Agreement"), in substantially the form made available to the Board, is

1/2

hereby approved; and

FUTHER RESOLVED, that MR. SANG SOO NOH, the Vice President of the Company, is hereby fully authorized to execute the Agreement and any other related documents on behalf of the Company and take all necessary actions, including representing the Company at any hearing in order to waive any and all rights of the Company referred to in the Agreement and to plead guilty on behalf of the Company according to the terms of the Agreement.

DATE: MARCH 9, 2011

---

MR. CHI HUN CHOI

---

MR. JUNG WHA LEE

---

MR. BYEONG BOK JEON

---

MR. YEONG KIL BAE

---

MR. JUNE CHULL CHANG

---

MS. HEE KYUNG KIM

# EXHIBIT 4

1                                          Pages 1–12

2                    UNITED STATES DISTRICT COURT

3                  NORTHERN DISTRICT OF CALIFORNIA

4              BEFORE THE HONORABLE WILLIAM H. ALSUP

5

  UNITED STATES OF AMERICA,              )
6                                        )
                  Plaintiff,             )
7                                        )
                  vs.                    )No. CV-11-00162 WHA
8                                        )
  SAMSUNG SDI CO. LTD.,                  )
9                                        )SAN FRANCISCO, CA
                  Defendants.            )TUESDAY, APRIL 19, 2011
10                                       )2:20 p.m.
  _____   )

11

12 **APPEARANCES:**            **TRANSCRIPT OF PROCEEDINGS**

13 **For the Plaintiff:**
                              **UNITED STATES DEPARTMENT OF JUSTICE**
14                            ANTITRUST DIVISION
                              SAN FRANCISCO FIELD OFFICE
15                            450 Golden Gate Avenue – Rm. 10-0101
                              San Francisco, CA 94102
16                            BY:  **LIDIA MAHER, ESQ.**
                              (415)436-6674
17                            and  **TAI S. MILDER, ESQ.**
                              and  **MAY LEE HEYE, ESQ.**
18
   **For Defendants:**
19                            **SHEPPARD, MULLIN, RICHTER & HAMPTON, LLP**
                              Four Embarcadero Center– 4th Floor
20                            San Francisco, CA 94111
                              (415)434-9100
21                            BY: **GARY L. HALLING, ESQ.**
                              and **JAMES L. McGINNIS, ESQ.**
22

23

   ***REPORTED BY:  MARGARET "MARGO" GURULE, CCR***
24            ***Pro Tem Court Reporter – USDC***

25

Case 4:07-cv-05944-JST Document 1731-3 Filed 06/11/13 Page 52 of 118
Case 3:11-cr-00162-WHA Document 22 Filed 04/25/11 Page 2 of 13

2

| | |
|---|---|
| 1 | **April 19, 2011**          **2:20 p.m.** |
| 2 | o0o |
| 3 | **P R O C E E D I N G S** |
| 4 | **THE CLERK:** Calling Criminal Case 11-162, United States |
| 5 | vs. Samsung. |
| 6 | **MS. MAHER:** Good afternoon, Your Honor. Lidia Maher on |
| 7 | behalf of the United States. |
| 8 | **THE COURT:** Welcome. |
| 9 | **MR. HALLING:** Good afternoon, Your Honor. Gary Halling |
| 10 | and my partner, Jim McGinnis -- |
| 11 | **MR. McGINNIS:** Good afternoon, Your Honor. |
| 12 | **MR. HALLING:** -- for Samsung SDI Company. |
| 13 | **THE COURT:** Welcome. |
| 14 | **MR. HALLING:** And we have with us Mr. Noh, who is the |
| 15 | official corporate representative for the company. |
| 16 | **THE COURT:** All right. And who is our interpreter? |
| 17 | **THE INTERPRETER:** Jacki Noh, J-A-C-K-I, N-O-H, certified |
| 18 | court interpreter. |
| 19 | **THE COURT:** All right. Have you been sworn in this case? |
| 20 | **THE INTERPRETER:** Yes, this morning, Your Honor. |
| 21 | **THE COURT:** All right. Thank you. |
| 22 | And anyone else? |
| 23 | All right. Well, I want to go over a few things with you |
| 24 | before anybody pleads to anything. I am not so sure that I can |
| 25 | approve this deal, and I am not going to approve it on a |

Case 4:07-cv-05944-JST Document 1731-3 Filed 06/11/13 Page 53 of 118
Case 3:11-cv-00162-WHA Document 22 Filed 04/25/11 Page 3 of 13

3

1    one-day basis.

2        This is a big, important matter, and you're trying to run

3    this through like a railroad train.  No.

4        We're going to have a pretrial report like everybody else

5    if there is a guilty plea.

6        But I want to tell you what bothers me about this deal

7    before you even plead guilty because it may be that you decide

8    you don't want to do it.

9        I don't like the idea that the issue of restitution is

10   turned over to the private lawyers and to some private

11   litigation.  If Samsung was part of a conspiracy of

12   price-fixing, why shouldn't they give restitution to the

13   victims?

14       Why is the U.S. Government saying, "Oh, the plaintiff's

15   lawyers can take care of that."

16       No, that case in front of Judge Conti has been going for

17   years, and it's nowhere near trial or summary judgment.

18       So I don't like the idea that Samsung, if they're really

19   guilty of this -- I'm not saying they are guilty.  But if they

20   really are guilty, they ought to pay restitution and that ought

21   to be the U.S. Government making them do that, not private

22   lawyers.

23       Now, I don't want to say never.  I'm just telling you that

24   is my concern.

25       So if you want to address that first, then you can.  But

Case 4:07-cv-05944-JST Document 1731-3 Filed 06/11/13 Page 54 of 118
Case3:11-cr-00162-WHA Document22 Filed04/25/11 Page4 of 13

4

1    there is no way we're going to do a guilty plea and sentencing

2    today.

3        I want to get a full presentence report.  I'm not going to

4    be stampeded by the antitrust division and on behalf of -- I'm

5    going to do my job the right way.

6        All right.  Let's hear from the government.

7        **MS. MAHER:**  Well, Your Honor.  We apologize if you feel

8    stampeded --

9        **THE COURT:**  I do.

10       **MS. MAHER:**  -- by the antitrust division.

11       **THE COURT:**  Why wouldn't I feel that way?

12       **MS. MAHER:**  We certainly aren't trying to stampede you.

13       **THE COURT:**  Why can't I do a presentence report, then, in

14   the normal way?

15       **MS. MAHER:**  You can do that, if you so chose.

16       **THE COURT:**  All right.  That's what I would like.

17       **MS. MAHER:**  Our experience in past cases has been to move

18   forward with expedited sentencing.

19       **THE COURT:**  This case has been going on how long?

20       **MS. MAHER:**  Over three years.

21       **THE COURT:**  Yeah, three years.  So you finally get an

22   agreement, and you want to jam it under the judge's nose and

23   say, "Approve this in one day," after you've sat on it for

24   three years.

25       No.  I'm going to take my time.  I don't know a thing

Case 4:07-cv-05944-JST Document 1731-3 Filed 06/11/13 Page 55 of 118
Case 3:11-cv-06621-WHA Document 22 Filed 04/25/13 Page 5 of 13

5

1   about this case.

2       I need to know for the public interest:  Is this a good

3   deal, a fair deal, or is -- I don't like the part where the

4   restitution is left to the private lawyers to work out on

5   behalf of the United States Government.

6       Okay?  That part bothers me, so why don't you address

7   that.

8       **MS. MAHER:**  Well, Your Honor, our experience in these

9   cases in the recent past is that the parties in the civil

10  actions are well-represented; that the.

11      **THE COURT:**  Do they get one hundred cents on the dollar in

12  the settlements?

13      **MS. MAHER:**  Well, they have the opportunity --

14      **THE COURT:**  No.  They get maybe five cents on the dollar.

15      **MS. MAHER:**  The parties in civil cases have the

16  opportunity to seek treble damages and to hold defendants

17  jointly and severally liable.

18      **THE COURT:**  Yeah, but Samsung is willing to plead guilty.

19  Samsung is willing to say, "We violated the criminal law of the

20  United States."

21      Why shouldn't they make full restitution?

22      Why should they get off with a zero and then they can go

23  a -- work out a deal with the plaintiff's lawyers in the civil

24  case?

25      **MS. MAHER:**  Well, I think the parties spent a significant

Case 4:07-cv-05944-JST   Document 1731-3   Filed 06/11/13   Page 56 of 118
Case 3:11-cv-06163-WHA   Document 22   Filed 04/25/13   Page 6 of 13

6

1    amount of time in the civil case, as we understand it, working

2    out exactly who is due what compensation, working out the

3    details of --

4        **THE COURT:**  You're telling me there is a settlement in

5    that case?

6        **MS. MAHER:**  I think there has been a settlement in the

7    case so far.  I'm not saying that there is.

8        **THE COURT:**  Maybe I've been misinformed.

9        Let me ask Samsung's counsel.  Is there a class-action

10   settlement there?

11       **MR. HALLING:**  Your Honor, Samsung has not settled.  I

12   believe some other defendant has settled.

13       The case, while it's been pending a while, it was stayed

14   for quite some time because of the pendency of the government

15   case, and it's in a relatively early stage of discovery right

16   now.

17       **THE COURT:**  So then the answer is, because of this case,

18   that case is stayed and we have no way of knowing what the --

19   well, why doesn't Samsung go settle that case and come back and

20   say, "We're going to pay all this restitution."

21       This is a corporate thing.  It's not an individual who is

22   going to plead guilty.

23       **MR. HALLING:**  Well, Your Honor, the restitution in this

24   type of case is a fairly complex endeavor to figure out what

25   the overcharge would be, what products, the time periods.  And

1    often it's the subject of expert testimony and regression

2    analyses, which I'm sure you're familiar with.  And it's fairly

3    complicated.

4        It's the type of thing that is litigated thoroughly, and

5    the civil cases are invariable settled.

6        **THE COURT:**  Well, okay.  If you promise me you're going to

7    pay a hundred cents on the dollar in that case, then I could

8    take my chances on that and take your word for it.  But I have

9    a feeling you won't -- you're going to fight that tooth and

10   nail.

11       **MR. HALLING:**  Well, Your Honor, it's important to note

12   that if we were to pursue restitution in this case, which as

13   you've identified, is not part of the plea, it would be simple

14   restitution; whereas, in the civil cases, it's a much more

15   powerful remedy available.  It's treble damages, treble the

16   actual restitution, plus, it's joint several liability, which

17   means that an individual defendant is responsible not just for

18   restitution on its own sales but is responsible for the

19   entirety of the conspiracy's damages.

20       So the remedies in the civil cases are much more extensive

21   than could be applied in a restitution context.

22       **THE COURT:**  Well, what will the dollar amount there be?

23   That's what I'm trying to get at.

24       **MR. HALLING:**  What will it be?

25       **THE COURT:**  Yeah, what will it be?  Will it be $100

Case 4:07-cv-05944-JST Document 1731-3 Filed 06/11/13 Page 58 of 118
Case3:11-cv-06162-WHA Document22 Filed04/25/13 Page58 of 93

8

1    million?  Will it be $500 million?  Will it be $5 million?

2    What?

3         **MR. HALLING:**  It will be a significant figure, I'm sure.

4    We do not have the damage analyses yet because the case is not

5    as far along as you might think by looking at when it was

6    filed.

7         But there are going to be, I'm sure, as there always are

8    in these cases, expert studies and a thorough vetting of the

9    damage issues in the civil cases with these expert remedies.

10        It's also the case that, when Congress passed the

11   Amendment in 1995 to the restitution statute that provided an

12   exception to restitution as part of a criminal case was if it

13   was necessary to determine complex issues of fact related to

14   the cause or amount of the victim's losses, that that would

15   unduly complicate the sentencing process.

16        The legislative history makes clear that that was designed

17   specifically, in Congress' word, to avoid embroiling the

18   criminal sentencing court in a type of civil litigation that is

19   more appropriate for that kind of a determination.  And so

20   it's -- it would really not be the type of case where

21   restitution would be appropriate, we think, and it's a much

22   better remedy for it to be pursued in the civil cases as the

23   government said, and that is actually normally how it works.

24        In fact, I'm not familiar with a single antitrust case of

25   this type where the remedy of restitution was applied by the

Case 4:07-cv-05944-JST Document 1731-3 Filed 06/11/13 Page 59 of 118
Case 3:11-cv-06162-WHA Document 22 Filed 04/25/13 Page 9 of 13

9

1   sentencing court rather than in the treble damage action.

2       **THE COURT:**  Well, those are my reservations.  If the

3   defendant wants to plead guilty today, fine.

4       It's a 11(c)(1)(C) agreement, correct?

5       **MS. MAHER:**  That's correct, Your Honor.

6       **THE COURT:**  I will not approve it today.  I will get the

7   presentence report and maybe later on I will approve it.  But

8   that's the way it's going to be.

9       So if you don't want to plead, if you decide you want to

10  think about it, okay, that's fine.  I don't have to take a plea

11  today.

12      So do you want to go forward today or not?

13      **MR. HALLING:**  I think, Your Honor, we would appreciate

14  your offer to think about it.

15      We also would like to consider and propose to Your Honor

16  that we be given opportunity to file a paper, a brief,

17  addressing --

18      **THE COURT:**  I'm not going to do it.  There is going to a

19  presentence report, no matter what.  So you're not going to

20  talk me out of that.

21      So if you want to try to file a brief -- and I'm not going

22  to bless the restitution thing on the day you plead guilty.

23  I'm going to get the presentence report and I'm going to study

24  and think about it.

25      Then you can file your brief.  That is after the guilty

Case 4:07-cv-05944-JST Document 1721-3 Filed 06/11/13 Page 60 of 118
Case 3:11-cv-00162-WHA Document 223 Filed 04/25/11 Page 60 of 93

10

1   plea.

2        **MR. HALLING:**  All right.  Your Honor, I understand.  The

3   restitution provision is part of the sentence in the (c) plea.

4        **THE COURT:**  Correct.

5        **MR. HALLING:**  And if you're saying you're not going to --

6        **THE COURT:**  I'm saying there is an issue.  I'm not

7   saying -- I didn't say never.

8        I'm telling you up front, I don't like the looks of this.

9   But I -- I could -- you know, you could persuade me at the end

10  of the day to reluctantly go along with this.

11       But you should know up front that there is a 50/50 chance

12  that we get to the sentencing later on and I say, "I can't do

13  this.  This is not in the public interest."

14       There is also a 50/50 chance I'll say, "I've thought about

15  it and okay, I accept."

16       But what I'm not going to do is let you file a brief with

17  the expectation that we will come back and here and do an

18  expedited thing next time.

19       So it's okay with me if you say, "No, let's go to trial."

20  We will go to trial in the fall.  I have no problem -- or

21  whenever you want, we will go to trial.

22       But we're not -- I'm not going to do an expedited stampede

23  thing.

24       So if you want to go forward and plead guilty today and

25  put that on the record, I'm fine with that.

Case 4:07-cv-05944-JST Document 1721-23 Filed 06/11/13 Page 61 of 118
Case 3:11-cr-00162-WHA Document223 Filed04/25/13 Page16 of 93

11

1      On the other hand, if you want to take a few minutes, I'll

2  give you a five-minute recess until -- maybe ten minutes.  If

3  you want to decide whether you want to go forward or not,

4  that's fine, too.

5      **MR. HALLING:**  We would appreciate the time, Your Honor.

6      **THE COURT:**  All right.  I'll come back in ten minutes and

7  then we will see where you want to go.

8      **THE CLERK:**  All rise.  The court will stand in recess for

9  ten minutes.

10              *(Court stood in recess at 2:32 p.m.)*

11      **THE CLERK:**  Please come to order.

12      **THE COURT:**  All right.  Let's get back to work.

13      Please be seated.

14      All right.  Then so what shall we do today?

15      **MR. HALLING:**  Your Honor, we would appreciate a little bit

16  of time to assess Your Honor's comments and decide on what is

17  the best way to proceed.

18      We would request that we come back and see you for a

19  status conference in this case in approximately three weeks, if

20  that's acceptable.

21      **THE COURT:**  May 10th?

22      **MR. HALLING:**  That's fine.

23      **THE COURT:**  What do we do about excluding time?

24      **MR. HALLING:**  We're fine to exclude time.

25      **MS. MAHER:**  We agree to exclude time between now and that

Case 4:07-cv-05944-JST Document 1721-3 Filed 06/11/13 Page 63 of 118
Case 3:11-cv-06162-WHA Document 223 Filed 04/25/13 Page 26 of 35

12

1  date.

2      **THE COURT:**  All right.  Then we'll back on May 10th, 2:00

3  p.m.  The time between today and May 10th will be excluded for

4  the reasons stated by counsel.

5      Please do a written stipulation.  All right?

6      **MR. HALLING:**  Thank you, Your Honor.

7      **THE COURT:**  All right.  Thank you.  See you then.

8      **THE CLERK:**  All rise.  Court is adjourned.

9                    *(Proceedings concluded at 2:45 p.m.)*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Case 4:07-cv-05944-JST Document 1721-23 Filed 06/11/13 Page 63 of 118
Case 3:11-cv-00162-WHA Document 223 Filed 04/25/11 Page 36 of 13

13

```
 1                    CERTIFICATE OF REPORTER

 2          I, the undersigned, hereby certify that the foregoing

 3   proceedings were reported by me, a certified shorthand

 4   reporter, and were thereafter transcribed under my direction

 5   into typewriting; that the foregoing is a full, complete and

 6   true record of said proceedings.

 7          I further certify that I am not of counsel or attorney for

 8   either or any of the parties in the foregoing proceedings and

 9   caption named, or in any way interested in the outcome of the

10   cause named in said caption.

11          The fee charged and the page format for the transcript

12   conform to the regulations of the judicial conference.

13          Furthermore, I certify the invoice does not contain

14   charges for the court reporter's certification page.

15          IN WITNESS WHEREOF, I have hereunto set my hand this 25th

16   day of April 2011.

17

18                           /s/ Margaret Gurule

19                           _____

20                           MARGARET "MARGO" GURULE, CSR

21

22

23

24

25
```

# EXHIBIT 5

1  LIDIA MAHER (CSBN 222253)
   BARBARA J. NELSON (CSBN 87952)
2  JEANE M. HAMILTON (CSBN 157834)
   ANNA TRYON PLETCHER (CSBN 239730)
3  MAY LEE HEYE (CSBN 209366)
   Antitrust Division
4  U.S. Department of Justice
   450 Golden Gate Avenue
5  Box 36046, Room 10-0101
   San Francisco, CA  94102
6  Telephone:  (415) 436-6660

7  Attorneys for the United States

8

9                UNITED STATES DISTRICT COURT

10           FOR THE NORTHERN DISTRICT OF CALIFORNIA

11                 SAN FRANCISCO DIVISION                **WHA**

12  UNITED STATES OF AMERICA          )    **No.CR 09        0131**
                                      )
13               v.                   )    **INDICTMENT**
                                      )
14  CHENG YUAN LIN, a.k.a. C.Y. LIN,  )    VIOLATIONS:
                                      )    Title 15, United States Code,
15                                    )    Section 1 (Conspiracy in Restraint of Trade)
                                      )
16             Defendant.             )    San Francisco Venue

17

18       The Grand Jury charges:

19  COUNT ONE: 15 U.S.C. § 1 (Conspiracy in Restraint of Trade)

20                             I.

21              DESCRIPTION OF THE OFFENSE

22       1.     CHENG YUAN LIN, a.k.a. C.Y. LIN, is hereby indicted and made a defendant on

23  the charge stated below.

24       2.     Beginning at least as early as January 28, 1997, until at least as late as April 7,

25  2003, the exact dates being unknown to the Grand Jury, the defendant CHENG YUAN LIN and

26  coconspirators joined, entered into, and engaged in a combination and conspiracy to suppress and

27  eliminate competition by fixing prices, reducing output, and allocating market shares of color

28  display tubes ("CDTs") to be sold in the United States and elsewhere.  The combination and

INDICTMENT – PAGE 1

conspiracy engaged in by the defendant and coconspirators was in unreasonable restraint of interstate and foreign trade and commerce in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

3.  The charged combination and conspiracy consisted of a continuing agreement, understanding, and concert of action among the defendant and coconspirators, the substantial terms of which were to agree to fix prices, reduce output, and allocate market shares of CDTs to be sold in the United States and elsewhere for use in computer monitors and other products with similar technological requirements.

II.

## MEANS AND METHODS OF THE CONSPIRACY

4.  For the purpose of forming and carrying out the charged combination and conspiracy, the defendant and coconspirators did those things that they combined and conspired to do, including, among other things:

(a)  attended meetings and engaged in conversations and communications in Taiwan, Korea, Malaysia, China, and elsewhere to discuss the prices, output, and market shares of CDTs;

(b)  agreed during those meetings, conversations, and communications to charge prices of CDTs at certain target levels or ranges;

(c)  agreed during those meetings, conversations, and communications to reduce output of CDTs by shutting down CDT production lines for certain periods of time;

(d)  agreed during those meetings, conversations, and communications to allocate target market shares for the CDT market overall and for certain CDT customers;

(e)  exchanged CDT sales, production, market share, and pricing information for the purpose of implementing, monitoring, and enforcing adherence to the agreed-upon prices, output reduction, and market share allocation;

INDICTMENT – PAGE 2

(f)     implemented an auditing system that permitted coconspirators to visit each
        other's production facilities to verify that CDT production lines had been
        shut down as agreed;

(g)     authorized and approved the participation of subordinate employees in the
        conspiracy;

(h)     issued price quotations and reduced output in accordance with the
        agreements reached; and

(i)     took steps to conceal the conspiracy and conspiratorial contacts through
        various means.

III.

## DEFENDANT AND COCONSPIRATORS

5.      Defendant CHENG YUAN LIN is a resident of Taiwan, Republic of China.  During
the period covered by this Indictment, CHENG YUAN LIN was Chairman and Chief Executive
Officer of Chunghwa Picture Tubes, Ltd. ("Chunghwa").  During the period covered by this
Indictment, Chunghwa was a Taiwanese company engaged in the business of producing and
selling, among other things, CDTs to customers in the United States and elsewhere.

6.      Various corporations and individuals not made defendants in Count One of this
Indictment participated as coconspirators in the offenses charged in Count One of this Indictment
and performed acts and made statements in furtherance of it.

7.      Whenever in this Indictment reference is made to any act, deed, or transaction of
any corporation, the allegation means that the corporation engaged in the act, deed, or transaction
by or through its officers, directors, employees, agents, or other representatives while they were
actively engaged in the management, direction, control, or transaction of its business or affairs.

IV.

## TRADE AND COMMERCE

8.      CDTs are a type of cathode ray tube.  Cathode ray tubes consist of evacuated glass
envelopes that contain an electron gun and a phosphorescent screen.  When electrons strike the
screen, light is emitted, creating an image on the screen.  CDTs are the specialized cathode ray

INDICTMENT – PAGE 3

1    tubes manufactured for use in computer monitors and other products with similar technological
2    requirements.
3         9.    During the period covered by Count One of this Indictment, the defendant and
4    coconspirators sold and distributed substantial quantities of CDTs in a continuous and
5    uninterrupted flow of interstate and foreign trade and commerce to customers located in states or
6    countries other than the states or countries in which the defendant and coconspirators produced
7    CDTs. In addition, payments for CDTs traveled in interstate and foreign trade and commerce.
8         10.   During the period covered by Count One of this Indictment, the business activities
9    of the defendant and coconspirators that are the subject of Count One of this Indictment were
10   within the flow of, and substantially affected, interstate and foreign trade and commerce.
11                                              V.
12                              JURISDICTION AND VENUE
13        11.   The combination and conspiracy charged in Count One of this Indictment was
14   carried out, in part, in the Northern District of California, within the five years preceding the filing
15   of this Indictment, excluding the period during which the running of the statute of limitations was
16   suspended pursuant to agreement with defendant CHENG YUAN LIN.
17   COUNT TWO: 15 U.S.C. § 1 (Conspiracy in Restraint of Trade)
18                                             VI.
19                          DESCRIPTION OF THE OFFENSE
20        12.   CHENG YUAN LIN, a.k.a. C.Y. LIN, is hereby indicted and made a defendant on
21   the charge stated below.
22        13.   Beginning at least as early as March 12, 1997, until at least as late as April 7, 2003,
23   the exact dates being unknown to the Grand Jury, the defendant CHENG YUAN LIN and
24   coconspirators joined, entered into, and engaged in a combination and conspiracy to suppress and
25   eliminate competition by fixing the prices of color picture tubes ("CPTs") to be sold in the United
26   States and elsewhere. The combination and conspiracy engaged in by the defendant and
27   coconspirators was in unreasonable restraint of interstate and foreign trade and commerce in
28   violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

INDICTMENT – PAGE 4

14. The charged combination and conspiracy consisted of a continuing agreement, understanding, and concert of action among the defendant and coconspirators, the substantial terms of which were to agree to fix the prices of CPTs to be sold in the United States and elsewhere for use in television sets.

VII.

## MEANS AND METHODS OF THE CONSPIRACY

15. For the purpose of forming and carrying out the charged combination and conspiracy, the defendant and coconspirators did those things that they combined and conspired to do, including, among other things:

(a) attended meetings and engaged in conversations and communications in Taiwan, Korea, Malaysia, China, Thailand, Indonesia, and elsewhere to discuss the prices of CPTs;

(b) agreed during those meetings, conversations, and communications to charge prices of CPTs at certain target levels or ranges;

(c) exchanged CPT pricing information for the purpose of implementing, monitoring, and enforcing adherence to the agreed-upon prices;

(d) authorized and approved the participation of subordinate employees in the conspiracy;

(e) issued price quotations in accordance with the agreements reached; and

(f) took steps to conceal the conspiracy and conspiratorial contacts through various means.

VIII.

## DEFENDANT AND COCONSPIRATORS

16. Defendant CHENG YUAN LIN is a resident of Taiwan, Republic of China. During the period covered by this Indictment, CHENG YUAN LIN was Chairman and Chief Executive Officer of Chunghwa. During the period covered by this Indictment, Chunghwa was a Taiwanese company engaged in the business of producing and selling, among other things, CPTs to customers in the United States and elsewhere.

INDICTMENT – PAGE 5

17. Various corporations and individuals not made defendants in Count Two of this Indictment participated as coconspirators in the offenses charged in Count Two of this Indictment and performed acts and made statements in furtherance of it.

18. Whenever in this Indictment reference is made to any act, deed, or transaction of any corporation, the allegation means that the corporation engaged in the act, deed, or transaction by or through its officers, directors, employees, agents, or other representatives while they were actively engaged in the management, direction, control, or transaction of its business or affairs.

IX.

TRADE AND COMMERCE

19. CPTs are a type of cathode ray tube. Cathode ray tubes consist of evacuated glass envelopes that contain an electron gun and a phosphorescent screen. When electrons strike the screen, light is emitted, creating an image on the screen. CPTs are the specialized cathode ray tubes manufactured for use in television sets.

20. During the period covered by Count Two of this Indictment, the defendant and coconspirators sold and distributed substantial quantities of CPTs in a continuous and uninterrupted flow of interstate and foreign trade and commerce to customers located in states or countries other than the states or countries in which the defendant and coconspirators produced CPTs. In addition, payments for CPTs traveled in interstate and foreign trade and commerce.

21. During the period covered by Count Two of this Indictment, the business activities of the defendant and coconspirators that are the subject of Count Two of this Indictment were within the flow of, and substantially affected, interstate and foreign trade and commerce.

X.

JURISDICTION AND VENUE

22. The combination and conspiracy charged in Count Two of this Indictment was carried out, in part, in the Northern District of California, within the five years preceding the filing of this Indictment, excluding the period during which the running of the statute of limitations was suspended pursuant to agreement with defendant CHENG YUAN LIN.

ALL IN VIOLATION OF TITLE 15, UNITED STATES CODE, SECTION 1.

INDICTMENT – PAGE 6

DATED:    2/10/09              A TRUE BILL

Scott D. Hammond
Acting Assistant Attorney General

_____
FOREPERSON

Marc Siegel
Director of Criminal Enforcement

United States Department of Justice
Antitrust Division

Joseph P. Russoniello  For JPR
United States Attorney
Northern District of California

Phillip H. Warren
Chief, San Francisco Office

Niall E. Lynch
Assistant Chief, San Francisco Office

Lidia Maher
Barbara J. Nelson
Jeane M. Hamilton
Anna Tryon Pletcher
May Lee Heye
Attorneys
United States Department of Justice
Antitrust Division
450 Golden Gate Avenue
Box 36046, Room 10-0101
San Francisco, CA 94102
(415) 436-6660

INDICTMENT – PAGE 7

# EXHIBIT 6

# United States District Court

### FOR THE
### NORTHERN DISTRICT OF CALIFORNIA

## VENUE: SAN FRANCISCO

_____

## UNITED STATES OF AMERICA,

# C R V. 10 0231

### JSW

## CHUNG CHENG YEH, a.k.a. ALEX YEH,

## DEFENDANT(S).

_____

# INDICTMENT

### Title 15 U.S.C. Section 1 (Conspiracy in Restraint of Trade)
### COUNT 1

A true bill.

_____
                                    Foreman

Filed in open court this ___30th___ day of

___March___ ___2010___.

_____     **BETTY P. LEE**
                                                    Clerk

Bail, $ _____

                                    EDWARD M. CHEN
                                    UNITED STATES MAGISTRATE JUDGE

AO 257 (Rev. 6/78)

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT ☐ INFORMATION ☒ INDICTMENT ☐ SUPERSEDING

───── OFFENSE CHARGED ─────

Title 15 U.S.C. Section 1 -- Conspiracy in Restraint o Trade

☐ Petty
☐ Minor
☐ Misde-meanor
☒ Felony

PENALTY: See attachment.

Name of District Court, and/or Judge/Magistrate Location
**NORTHERN DISTRICT OF CALIFORNIA**
SAN FRANCISCO DIVISION

───── DEFENDANT - U.S ─────

▶ CHUNG CHENG YEH, a.k.a. ALEX YEH

DISTRICT COURT NUMBER

**CR 10 0231 JSW**

───── DEFENDANT ─────

**IS *NOT* IN CUSTODY**
Has not been arrested, pending outcome this proceeding.
1) ☒ If not detained give date any prior summons was served on above charges ▶
2) ☐ Is a Fugitive
3) ☐ Is on Bail or Release from (show District)

**IS IN CUSTODY**
4) ☐ On this charge
5) ☐ On another conviction
6) ☐ Awaiting trial on other charges
If answer to (6) is "Yes", show name of institution

} ☐ Federal ☐ State

───── PROCEEDING ─────

Name of Complaintant Agency, or Person (& Title, if any)

FEDERAL BUREAU OF INVESTIGATION

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
☐ U.S. ATTORNEY ☐ DEFENSE
} SHOW DOCKET NO.

☐ this prosecution relates to a pending case involving this same defendant
☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under
} MAGISTRATE CASE NO.

Name and Office of Person
Furnishing Information on this form   JOSEPH P. RUSSONIELLO

☒ U.S. Attorney ☐ Other U.S. Agency

Name of Assistant U.S.
Attorney (if assigned)   Lidia Maher, Trial Attorney, ATR

Has detainer been filed? ☐ Yes ☐ No
} If "Yes" give date filed

**DATE OF ARREST** ▶ Month/Day/Year
Or... if Arresting Agency & Warrant were not

**DATE TRANSFERRED TO U.S. CUSTODY** ▶ Month/Day/Year

☐ This report amends AO 257 previously submitted

───── ADDITIONAL INFORMATION OR COMMENTS ─────

PROCESS:
☐ SUMMONS ☐ NO PROCESS* ☒ WARRANT

If Summons, complete following:
☐ Arraignment ☐ Initial Appearance
Defendant Address:

Bail Amount:

*Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment*

Date/Time:                    Before Judge:

Comments:

PENALTY SHEET

Individual:     CHUNG CHENG YEH, a.k.a. ALEX YEH

Offense Charged: 15 U.S.C. Section 1 (Conspiracy in Restraint of Trade)

Maximum Penalties:

        1.      A fine in an amount equal to the largest of:

                A.      $1,000,000.00

                B.      Twice the gross pecuniary gain derived from the crime.

                C.      Twice the gross pecuniary loss caused to the victims of the crime.

        2.      A term of imprisonment for ten years.

        3.      A term of supervised release of at least two years but not more than three years.

        4.      $100 special assessment.

        5.      Restitution.

1  LIDIA MAHER (CSBN 222253)
   MAY LEE HEYE (CSBN 209366)
2  TAI S. MILDER (CSBN 267070)
   Antitrust Division
3  U.S. Department of Justice
   450 Golden Gate Avenue
4  Box 36046, Room 10-0101
   San Francisco, CA 94102
5  Telephone: (415) 436-6660

6  Attorneys for the United States

7
                    UNITED STATES DISTRICT COURT
8
                FOR THE NORTHERN DISTRICT OF CALIFORNIA
9
                       SAN FRANCISCO DIVISION
10
11 UNITED STATES OF AMERICA          )   No.  CR  10  0231
                                     )
12        v.                         )   **INDICTMENT**
                                     )
13 CHUNG CHENG YEH, a.k.a. ALEX YEH, )   VIOLATION:
                                     )   Title 15, United States Code,
14                                   )   Section 1 (Conspiracy in Restraint of Trade)
          Defendant.                 )
15                                   )   San Francisco Venue
                                     )
16

17        The Grand Jury charges that:

18                                    I.

19                    DESCRIPTION OF THE OFFENSE

20        1.    The following individual is hereby indicted and made defendant on the charge

21 stated below: CHUNG CHENG YEH, a.k.a. ALEX YEH.

22        2.    Beginning at least as early as January 1997, until at least as late as March 2006,

23 the exact dates being unknown to the Grand Jury, coconspirators of the defendant joined, entered

24 into, and engaged in a combination and conspiracy to suppress and eliminate competition by

25 fixing prices, reducing output, and allocating market shares of color display tubes ("CDTs") to be

26 sold in the United States and elsewhere. The combination and conspiracy engaged in by the

27 defendant and coconspirators was in unreasonable restraint of interstate and foreign trade and

28 commerce in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

   INDICTMENT – PAGE 1

1      3.      Defendant CHUNG CHENG YEH joined and participated in the conspiracy from
2   at least as early as May 1999 and continuing until at least March 2005.

3      4.      The charged combination and conspiracy consisted of a continuing agreement,
4   understanding, and concert of action among the defendant and coconspirators, the substantial
5   terms of which were to agree to fix prices, reduce output, and allocate market shares of CDTs to
6   be sold in the United States and elsewhere for use in computer monitors and other products with
7   similar technological requirements.

8                                          II.

9                         MEANS AND METHODS OF THE CONSPIRACY

10     5.      For the purpose of forming and carrying out the charged combination and
11  conspiracy, the defendant and coconspirators did those things that they combined and conspired
12  to do, including, among other things:

13             (a)    attending meetings and engaging in conversations and communications in
14                    Taiwan, Korea, Malaysia, China, and elsewhere to discuss the prices,
15                    output, and market shares of CDTs;

16             (b)    agreeing during those meetings, conversations, and communications to
17                    charge prices of CDTs at certain target levels or ranges;

18             (c)    agreeing during those meetings, conversations, and communications to
19                    reduce output of CDTs by shutting down CDT production lines for certain
20                    periods of time;

21             (d)    agreeing during those meetings, conversations, and communications to
22                    allocate target market shares for the CDT market overall and for certain
23                    CDT customers;

24             (e)    exchanging CDT sales, production, market share, and pricing
25                    information for the purpose of implementing, monitoring, and enforcing
26                    adherence to the agreed-upon prices, output reduction, and market share
27                    allocation;

28             (f)    implementing an auditing system that permitted coconspirators to visit each

INDICTMENT – PAGE 2

1                 other's production facilities to verify that CDT production lines had been

2                 shut down as agreed;

3          (g)    authorizing and approving the participation of subordinate employees in the

4                 conspiracy;

5          (h)    issuing price quotations and reducing output in accordance with the

6                 agreements reached; and

7          (i)     taking steps to conceal the conspiracy and conspiratorial contacts through

8                 various means.

9                                   III.

10                   DEFENDANT AND COCONSPIRATORS

11     6.      Defendant CHUNG CHENG YEH is a resident of Taiwan, Republic of China.

12 From at least as early as May 1999 and continuing until at least March 2005, CHUNG CHENG

13 YEH was employed by Company A and, beginning in March 2002, was Director of Sales for

14 Company A. During the period covered by this Indictment, Company A was a Taiwanese

15 company engaged in the business of producing and selling, among other things, CDTs to

16 customers in the United States and elsewhere.

17     7.      Various corporations and individuals not made defendants in this Indictment

18 participated as coconspirators in the offense charged in this Indictment and performed acts and

19 made statements in furtherance of it.

20     8.      Whenever in this Indictment reference is made to any act, deed, or transaction of

21 any corporation, the allegation means that the corporation engaged in the act, deed, or transaction

22 by or through its officers, directors, employees, agents, or other representatives while they were

23 actively engaged in the management, direction, control, or transaction of its business or affairs.

24                                    IV.

25                     TRADE AND COMMERCE

26     9.      CDTs are a type of cathode ray tube. Cathode ray tubes consist of evacuated glass

27 envelopes that contain an electron gun and a phosphorescent screen. When electrons strike the

28 screen, light is emitted, creating an image on the screen. CDTs are the specialized cathode ray

INDICTMENT – PAGE 3

1 tubes manufactured for use in computer monitors and other products with similar technological
2 requirements.

3     10.    During the period covered by this Indictment, Company A and coconspirators sold
4 and distributed substantial quantities of CDTs in a continuous and uninterrupted flow of interstate
5 and foreign trade and commerce to customers located in states or countries other than the states or
6 countries in which Company A and coconspirators produced CDTs. In addition, payments for
7 CDTs traveled in interstate and foreign trade and commerce.

8     11.    During the period covered by this Indictment, the business activities of the
9 defendant and coconspirators related to the sale and distribution of CDTs that are the subject of
10 this Indictment were within the flow of, and substantially affected, interstate and foreign trade and
11 commerce.

12                                    V.

13              JURISDICTION AND VENUE

14     12.    The combination and conspiracy charged in this Indictment was carried out, in
15 part, in the Northern District of California, within the five years preceding the filing of this
16 Indictment.

17 ///
18 ///
19 ///
20 ///
21 ///
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

INDICTMENT – PAGE 4

1  ALL IN VIOLATION OF TITLE 15, UNITED STATES CODE, SECTION 1.

2  DATED:  30 March / 2010                    A TRUE BILL

3

4  Christine A. Varney                         FOREPERSON
5  Assistant Attorney General

6

7  Scott D. Hammond                           Phillip H. Warren
   Deputy Assistant Attorney General          Chief, San Francisco Office
8

9
   Marc Siegel                                Lidia Maher
10 Director of Criminal Enforcement           May Lee Heye
                                              Tai S. Milder
11 United States Department of Justice        Attorneys
   Antitrust Division                         U.S. Dept. of Justice, Antitrust Division
12                                            450 Golden Gate Avenue
                                              Box 36046, Room 10-0101
13                                            San Francisco, CA 94102
   Joseph P. Russoniello                      (415) 436-6660
14 United States Attorney
   Northern District of California
15

16

17

18

19

20

21

22

23

24

25

26

27

28

   INDICTMENT – PAGE 5

# EXHIBIT 7

AO 257 (Rev. 6/78)

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT ☐ INFORMATION ☒ INDICTMENT
☐ SUPERSEDING

Name of District Court, and/or Judge/Magistrate Location

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

— OFFENSE CHARGED —

Title 15, United States Code, Section 1 (Conspiracy in Restraint of Trade)

☐ Petty
☐ Minor
☐ Misdemeanor
☒ Felony

PENALTY: See attachment

*FILED*

— DEFENDANT - U.S —

▶ SEUNG-KYU LEE, a.k.a. SIMON LEE

DISTRICT COURT NUMBER

CR 10 0817 WHA

2010 NOV -9 P 2: 51

RICHARD W. WIEKING
CLERK U.S. DISTRICT COURT
NO. DIST. OF CALIFORNIA

— PROCEEDING —

Name of Complainant Agency, or Person (& Title, if any)

Federal Bureau of Investigation

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
☐ U.S. ATTORNEY ☐ DEFENSE

SHOW DOCKET NO.
}

☐ this prosecution relates to a pending case involving this same defendant

MAGISTRATE CASE NO.

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under
}

Name and Office of Person
Furnishing Information on this form        Melinda Haag

☒ U.S. Attorney ☐ Other U.S. Agency

Name of Assistant U.S.
Attorney (if assigned)        Lidia Maher, Antitrust Div.

— DEFENDANT —

IS *NOT* IN CUSTODY
    Has not been arrested, pending outcome this proceeding.
1) ☒ If not detained give date any prior
       summons was served on above charges ▶

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

IS IN CUSTODY

4) ☐ On this charge

5) ☐ On another conviction
                                              }  ☐ Federal ☐ State
6) ☐ Awaiting trial on other charges
       If answer to (6) is "Yes", show name of institution

Has detainer ☐ Yes     If "Yes"
been filed?  ☐ No       give date
                        filed
                        }

DATE OF          Month/Day/Year
ARREST      ▶

Or... if Arresting Agency & Warrant were not

DATE TRANSFERRED    Month/Day/Year
TO U.S. CUSTODY  ▶

☐ This report amends AO 257 previously submitted

— ADDITIONAL INFORMATION OR COMMENTS —

PROCESS:
☐ SUMMONS ☐ NO PROCESS* ☒ WARRANT

If Summons, complete following:
☐ Arraignment ☐ Initial Appearance

Defendant Address:

Bail Amount:

* Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Date/Time:                    Before Judge:

Comments:

PENALTY SHEET

Individuals:          SEUNG-KYU LEE, a.k.a. SIMON LEE

Offense Charged:      15 U.S.C. Section 1 (Conspiracy in Restraint of Trade)

Maximum Penalties:

    1.    A fine in an amount equal to the largest of:

        A.    $1,000,000.00

        B.    Twice the gross pecuniary gain derived from the crime.

        C.    Twice the gross pecuniary loss caused to the victims of the crime.

    2.    A term of imprisonment for ten years.

    3.    A term of supervised release of at least two years but not more than three years.

    4.    $100 special assessment.

    5.    Restitution.

AO 257 (Rev. 6/78)

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT  ☐ INFORMATION  ☒ INDICTMENT

☐ SUPERSEDING

### OFFENSE CHARGED

Title 15, United States Code, Section 1 (Conspiracy in Restraint of Trade)

☐ Petty
☐ Minor
☐ Misdemeanor
☒ Felony

PENALTY:  See attachment

Name of District Court, and/or Judge/Magistrate Location

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

CR 10 0847

DEFENDANT - U.S

YEONG-UG YANG, a.k.a. YEONG-WOOG YANG, a.k.a
YONG-SHU YANG, a.k.a. YONG-SHU LIANG, a.k.a
YOUNG-UK YANG, a.k.a. YEONG-EUG YANG, a.k.a
DISTRICT COURT NUMBER    ALBERT YANG

### PROCEEDING

Name of Complainant Agency, or Person (& Title, if any)

Federal Bureau of Investigation

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40.  Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
☐ U.S. ATTORNEY  ☐ DEFENSE
} SHOW DOCKET NO.

☐ this prosecution relates to a pending case involving this same defendant
☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under
} MAGISTRATE CASE NO.

Name and Office of Person
Furnishing Information on this form    Melinda Haag

☒ U.S. Attorney  ☐ Other U.S. Agency

Name of Assistant U.S.
Attorney (if assigned)    Lidia Maher, Antitrust Div.

### DEFENDANT

IS **NOT** IN CUSTODY
Has not been arrested, pending outcome this proceeding.
1) ☒ If not detained give date any prior summons was served on above charges ▶

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

IS IN CUSTODY
4) ☐ On this charge

5) ☐ On another conviction
} ☐ Federal ☐ State

6) ☐ Awaiting trial on other charges
If answer to (6) is "Yes", show name of institution

Has detainer ☐ Yes  If "Yes"
been filed?  ☐ No   give date filed

DATE OF ▶ Month/Day/Year
ARREST

Or... if Arresting Agency & Warrant were not

DATE TRANSFERRED ▶ Month/Day/Year
TO U.S. CUSTODY

☐ This report amends AO 257 previously submitted

### ADDITIONAL INFORMATION OR COMMENTS

PROCESS:
☐ SUMMONS  ☐ NO PROCESS*  ☒ WARRANT    Bail Amount:

If Summons, complete following:
☐ Arraignment  ☐ Initial Appearance

Defendant Address:

* Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Date/Time:          Before Judge:

Comments:

PENALTY SHEET

Individuals:   YEONG-UG YANG, a.k.a. YEONG-WOOK YANG, a.k.a. YONG-SHU YANG, a.k.a. YONG-SHU LIANG, a.k.a. YOUNG-UK YANG, a.k.a. YEONG-EUG YANG, a.k.a. ALBERT YANG

Offense Charged:   15 U.S.C. Section 1 (Conspiracy in Restraint of Trade)

Maximum Penalties:

1.   A fine in an amount equal to the largest of:

    A.   $1,000,000.00

    B.   Twice the gross pecuniary gain derived from the crime.

    C.   Twice the gross pecuniary loss caused to the victims of the crime.

2.   A term of imprisonment for ten years.

3.   A term of supervised release of at least two years but not more than three years.

4.   $100 special assessment.

5.   Restitution.

AO 257 (Rev. 6/78)

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT  ☐ INFORMATION  ☒ INDICTMENT
☐ SUPERSEDING

**FILED**

2010 NOV -9

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

Name of District Court, and/or Judge/Magistrate Location
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

—— OFFENSE CHARGED ——

Title 15, United States Code, Section 1 (Conspiracy in
Restraint of Trade)

☐ Petty
☐ Minor
☐ Misde-
meanor
☒ Felony

PENALTY:   See attachment

—— DEFENDANT ——

▶ JAE-SIK KIM

DISTRICT COURT NUMBER

**CR 10 0817**  **WHA**

—— PROCEEDING ——

Name of Complainant Agency, or Person (& Title, if any)

Federal Bureau of Investigation

☐ person is awaiting trial in another Federal or State Court,
give name of court

☐ this person/proceeding is transferred from another district
per (circle one) FRCrp 20, 21, or 40. Show District

☐ this is a reprosecution of
charges previously dismissed
which were dismissed on motion
of:
☐ U.S. ATTORNEY  ☐ DEFENSE

SHOW
DOCKET NO.
}

☐ this prosecution relates to a
pending case involving this same
defendant

MAGISTRATE
CASE NO.

☐ prior proceedings or appearance(s)
before U.S. Magistrate regarding this
defendant were recorded under
}

Name and Office of Person
Furnishing Information on this form     Melinda Haag

☒ U.S. Attorney ☐ Other U.S. Agency

Name of Assistant U.S.
Attorney (if assigned)     Lidia Maher, Antitrust Div.

—— DEFENDANT ——

**IS *NOT* IN CUSTODY**
Has not been arrested, pending outcome this proceeding.
1) ☒ If not detained give date any prior
summons was served on above charges ▶

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

**IS IN CUSTODY**
4) ☐ On this charge

5) ☐ On another conviction
} ☐ Federal ☐ State

6) ☐ Awaiting trial on other charges
If answer to (6) is "Yes", show name of institution

Has detainer ☐ Yes     If "Yes"
been filed?  ☐ No      give date
filed

DATE OF ▶     Month/Day/Year
ARREST

Or... if Arresting Agency & Warrant were not

DATE TRANSFERRED ▶     Month/Day/Year
TO U.S. CUSTODY

☐ This report amends AO 257 previously submitted

—— ADDITIONAL INFORMATION OR COMMENTS ——

PROCESS:
☐ SUMMONS  ☐ NO PROCESS*  ☒ WARRANT

If Summons, complete following:
☐ Arraignment ☐ Initial Appearance
Defendant Address:

Comments:

Bail Amount:

* Where defendant previously apprehended on complaint, no new summons or
warrant needed; since Magistrate has scheduled arraignment

Date/Time:     Before Judge:

PENALTY SHEET

FILED

2010 NOV -9 P 2: 51

RICHARD W. WIEKING
CLERK U.S. DISTRICT COURT
NORTHERN DIST. OF CALIFORNIA

WHA

Individuals:           JAE-SIK KIM

Offense Charged:       15 U.S.C. Section 1 (Conspiracy in Restraint of Trade)

Maximum Penalties:

1.    A fine in an amount equal to the largest of:

      A.    $1,000,000.00

      B.    Twice the gross pecuniary gain derived from the crime.

      C.    Twice the gross pecuniary loss caused to the victims of the crime.

2.    A term of imprisonment for ten years.

3.    A term of supervised release of at least two years but not more than three years.

4.    $100 special assessment.

5.    Restitution.

# United States District Court

### FOR THE
### NORTHERN DISTRICT OF CALIFORNIA

### VENUE: SAN FRANCISCO

FILED WHA

2010 NOV -9 P 2:51

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DIST. OF CALIFORNIA

### UNITED STATES OF AMERICA,

# VCR 10 0817

SEUNG-KYU LEE, a.k.a. SIMON LEE;
YEONG-UG YANG, a.k.a.
YEONG-WOOK YANG, a.k.a.
YONG-SHU YANG, a.k.a. YONG-SHU
LIANG, a.k.a., YOUNG-UK YANG, a.k.a.
YEONG-EUG YANG, a.k.a. ALBERT
YANG; and JAE-SIK KIM

DEFENDANT(S).

## INDICTMENT

Title 15 U.S.C. Section 1 (Conspiracy in Restraint of Trade)

A true bill.

_____
Foreman

Filed in open court this _____ 9 _____ day of

November 2010

_____
**BETTY P. LEE**          Clerk

Bail, $ No bail warrant

Timothy J Bommer
U.S. Magistrate Judge

```
 1   LIDIA MAHER (CSBN 222253)
     MAY LEE HEYE (CSBN 209366)
 2   TAI S. MILDER (CSBN 267070)
     Antitrust Division
 3   U.S. Department of Justice
     450 Golden Gate Avenue
 4   Box 36046, Room 10-0101
     San Francisco, CA  94102
 5   Telephone:  (415) 436-6660

 6   Attorneys for the United States

 7
                         UNITED STATES DISTRICT COURT
 8
                   FOR THE NORTHERN DISTRICT OF CALIFORNIA
 9
                             SAN FRANCISCO DIVISION
10

11   UNITED STATES OF AMERICA          )   No.
                                       )
12          v.                         )   INDICTMENT
                                       )
13   SEUNG-KYU LEE, a.k.a. SIMON LEE;  )   VIOLATION:
     YEONG-UG YANG, a.k.a.             )   Title 15, United States Code,
14   YEONG-WOOK YANG, a.k.a.           )   Section 1 (Conspiracy in Restraint of Trade)
     YONG-SHU YANG, a.k.a. YONG-SHU    )
15   LIANG, a.k.a., YOUNG-UK YANG, a.k.a. )  San Francisco Venue
     YEONG-EUG YANG, a.k.a. ALBERT     )
16   YANG; and JAE-SIK KIM,            )
                                       )
17          Defendants.                )
                                       )
18   ——————————————————————————————————)

19          The Grand Jury charges that:

20                                      I.

21                        DESCRIPTION OF THE OFFENSE

22          1.      The following individuals are hereby indicted and made defendants on the charge

23   stated below:   SEUNG-KYU LEE, a.k.a. SIMON LEE; YEONG-UG YANG, a.k.a. YEONG-

24   WOOK YANG, a.k.a. YONG-SHU YANG, a.k.a. YONG-SHU LIANG, a.k.a. YOUNG-UK YANG,

25   a.k.a. YEONG-EUG YANG,  a.k.a. ALBERT YANG; and JAE-SIK KIM.

26          2.      Beginning at least as early as January 1997, until at least as late as March 2006,

27   the exact dates being unknown to the Grand Jury, coconspirators of the defendants joined,

28   entered into, and engaged in a combination and conspiracy to suppress and eliminate competition
```

INDICTMENT – PAGE 1

1 | by fixing prices, reducing output, and allocating market shares of color display tubes ("CDTs") to
2 | be sold in the United States and elsewhere. The combination and conspiracy engaged in by the
3 | defendants and coconspirators was in unreasonable restraint of interstate and foreign trade and
4 | commerce in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

5 |     3.     Defendant SEUNG-KYU LEE joined and participated in the conspiracy from at
6 | least as early as January 2000 and continuing until at least December 2005.

7 |     4.     Defendant YEONG-UG YANG joined and participated in the conspiracy from at
8 | least as early as June 2003 and continuing until at least March 2006.

9 |     5.     Defendant JAE-SIK KIM joined and participated in the conspiracy from at least as
10 | early as June 2003 and continuing until at least March 2006.

11 |     6.     The charged combination and conspiracy consisted of a continuing agreement,
12 | understanding, and concert of action among the defendants and coconspirators, the substantial
13 | terms of which were to agree to fix prices, reduce output, and allocate market shares of CDTs to
14 | be sold in the United States and elsewhere for use in computer monitors and other products with
15 | similar technological requirements.

16 | II.

17 | MEANS AND METHODS OF THE CONSPIRACY

18 |     7.     For the purpose of forming and carrying out the charged combination and
19 | conspiracy, the defendants and coconspirators did those things that they combined and conspired
20 | to do, including, among other things:

21 |           (a)    attending meetings and engaging in conversations and communications in
22 |                  Taiwan, Korea, Malaysia, China, and elsewhere to discuss the prices,
23 |                  output, and market shares of CDTs;

24 |           (b)    agreeing during those meetings, conversations, and communications to
25 |                  charge prices of CDTs at certain target levels or ranges;

26 |           (c)    agreeing during those meetings, conversations, and communications to
27 |                  reduce output of CDTs by shutting down CDT production lines for certain
28 |                  periods of time;

INDICTMENT – PAGE 2

1         (d)   agreeing during those meetings, conversations, and communications to

2              allocate target market shares for the CDT market overall and for certain

3              CDT customers;

4         (e)   exchanging CDT sales, production, market share, and pricing

5              information for the purpose of implementing, monitoring, and enforcing

6              adherence to the agreed-upon prices, output reduction, and market share

7              allocation;

8         (f)   implementing an auditing system that permitted coconspirators to visit each

9              other's production facilities to verify that CDT production lines had been

10             shut down as agreed;

11        (g)   authorizing and approving the participation of subordinate employees in the

12             conspiracy;

13        (h)   issuing price quotations and reducing output in accordance with the

14             agreements reached; and

15        (i)   taking steps to conceal the conspiracy and conspiratorial contacts through

16             various means.

17                      III.

18             DEFENDANTS AND COCONSPIRATORS

19       8.   Defendant SEUNG-KYU LEE is or was a resident of Korea. From at least as early

20   as January 2000 and continuing until at least December 2005, SEUNG-KYU LEE was employed

21   by Company A and later by Company B. Company B was a joint venture formed in

22   approximately 2001 between Company A and Company C. Beginning around 2004, SEUNG-

23   KYU LEE was responsible for CDT sales for Company B. During the period covered by this

24   Indictment, Company A was a Korean company, and Company B was a company incorporated in

25   the Netherlands, headquartered in Hong Kong, and engaged in the business of producing and

26   selling, among other things, CDTs to customers in the United States and elsewhere.

27       9.   Defendant YEONG-UG YANG is or was a resident of Korea. From at least as

28   early as June 2003 and continuing until at least March 2006, YEONG-UG YANG was employed

    INDICTMENT – PAGE 3

1  by Company B and, beginning around 2004, was responsible for CRT sales for Company B.
2  During the period covered by this Indictment, Company B was a company incorporated in the
3  Netherlands, headquartered in Hong Kong, and engaged in the business of producing and selling,
4  among other things, CDTs to customers in the United States and elsewhere.

5      10.    Defendant JAE-SIK KIM is or was a resident of Korea. From at least as early as
6  June 2003 and continuing until at least March 2006, JAE-SIK KIM was employed by Company D
7  and, beginning around 2002, was CRT Sales Division Head for Company D. During the period
8  covered by this Indictment, Company D was a Korean company engaged in the business of
9  producing and selling, among other things, CDTs to customers in the United States and elsewhere.

10      11.    Various corporations and individuals not made defendants in this Indictment
11  participated as coconspirators in the offense charged in this Indictment and performed acts and
12  made statements in furtherance of it.

13      12.    Whenever in this Indictment reference is made to any act, deed, or transaction of
14  any corporation, the allegation means that the corporation engaged in the act, deed, or transaction
15  by or through its officers, directors, employees, agents, or other representatives while they were
16  actively engaged in the management, direction, control, or transaction of its business or affairs.

17                                             IV.

18                         TRADE AND COMMERCE

19      13.    CDTs are a type of cathode ray tube. Cathode ray tubes consist of evacuated glass
20  envelopes that contain an electron gun and a phosphorescent screen. When electrons strike the
21  screen, light is emitted, creating an image on the screen. CDTs are the specialized cathode ray
22  tubes manufactured for use in computer monitors and other products with similar technological
23  requirements.

24      14.    During the period covered by this Indictment, Company B, Company D, and
25  coconspirators sold and distributed substantial quantities of CDTs in a continuous and
26  uninterrupted flow of interstate and foreign trade and commerce to customers located in states or
27  countries other than the states or countries in which Company B, Company D, and coconspirators
28  produced CDTs. In addition, payments for CDTs traveled in interstate and foreign trade and

INDICTMENT – PAGE 4

1  commerce.

2      15.     During the period covered by this Indictment, the business activities of the

3  defendants and coconspirators related to the sale and distribution of CDTs that are the subject of

4  this Indictment were within the flow of, and substantially affected, interstate and foreign trade and

5  commerce.

6  V.

7  JURISDICTION AND VENUE

8      16.     The combination and conspiracy charged in this Indictment was carried out, in

9  part, in the Northern District of California, within the five years preceding the filing of this

10  Indictment.

11  ALL IN VIOLATION OF TITLE 15, UNITED STATES CODE, SECTION 1.

12  DATED:

13

14  _____
Christine A. Varney

15  Assistant Attorney General

16

17  Scott D. Hammond

Deputy Assistant Attorney General

18

19  United States Department of Justice

Antitrust Division

20

21

22  Melinda L. Haag

United States Attorney

23  Northern District of California

24

25

26

27

28

A TRUE BILL

FOREPERSON

Phillip H. Warren

Chief, San Francisco Office

Lidia Maher

May Lee Heye

Tai S. Milder

Attorneys

U.S. Dept. of Justice, Antitrust Division

450 Golden Gate Avenue

Box 36046, Room 10-0101

San Francisco, CA 94102

(415) 436-6660

INDICTMENT – PAGE 5

# EXHIBIT 8



1 | LIDIA MAHER (CSBN 222253)
2 | ANNA TRYON PLETCHER (CSBN 239730)
  | MAY LEE HEYE (CSBN 209366)
3 | Antitrust Division
  | U.S. Department of Justice
4 | 450 Golden Gate Avenue
  | Box 36046, Room 10-0101
5 | San Francisco, CA  94102
  | Telephone:  (415) 436-6660

6 | Attorneys for the United States

7

8 | UNITED STATES DISTRICT COURT

9 | FOR THE NORTHERN DISTRICT OF CALIFORNIA

   | SAN FRANCISCO DIVISION
10

11 | UNITED STATES OF AMERICA )

12 |              v.                          )    **INDICTMENT**
                                             )
13 |                                         )    VIOLATION:
   | WEN JUN CHENG, a.k.a. TONY CHENG )    Title 15, United States Code,
14 |                                         )    Section 1 (Conspiracy in Restraint of Trade)
                                             )
15 |          Defendant.                     )    San Francisco Venue
                                             )
16

17 |        The Grand Jury charges that:

18 |                                    I.

19 |              DESCRIPTION OF THE OFFENSE

20 |        1.      The following individual is hereby indicted and made a defendant on the charge

21 | stated below:  WEN JUN CHENG, a.k.a. TONY CHENG.

22 |        2.      Beginning at least as early as January 1997, until at least as late as March 2006,

23 | the exact dates being unknown to the Grand Jury, coconspirators of the defendant joined, entered

24 | into, and engaged in a combination and conspiracy to suppress and eliminate competition by

25 | fixing prices, reducing output, and allocating market shares of color display tubes ("CDTs") to be

26 | sold in the United States and elsewhere.  The combination and conspiracy engaged in by the

27 | defendant and coconspirators was in unreasonable restraint of interstate and foreign trade and

28 | commerce in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

INDICTMENT – PAGE 1

3. Defendant WEN JUN CHENG joined and participated in the conspiracy from at least as early as January 1999 and continuing until at least September 2004.

4. The charged combination and conspiracy consisted of a continuing agreement, understanding, and concert of action among the defendant and coconspirators, the substantial terms of which were to agree to fix prices, reduce output, and allocate market shares of CDTs to be sold in the United States and elsewhere for use in computer monitors and other products with similar technological requirements.

## II.

## MEANS AND METHODS OF THE CONSPIRACY

5. For the purpose of forming and carrying out the charged combination and conspiracy, the defendant and coconspirators did those things that they combined and conspired to do, including, among other things:

  (a) attending meetings and engaging in conversations and communications in Taiwan, Korea, Malaysia, China, and elsewhere to discuss the prices, output, and market shares of CDTs;

  (b) agreeing during those meetings, conversations, and communications to charge prices of CDTs at certain target levels or ranges;

  (c) agreeing during those meetings, conversations, and communications to reduce output of CDTs by shutting down CDT production lines for certain periods of time;

  (d) agreeing during those meetings, conversations, and communications to allocate target market shares for the CDT market overall and for certain CDT customers;

  (e) exchanging CDT sales, production, market share, and pricing information for the purpose of implementing, monitoring, and enforcing adherence to the agreed-upon prices, output reduction, and market share allocation;

  (f) implementing an auditing system that permitted coconspirators to visit each

INDICTMENT – PAGE 2

1    other's production facilities to verify that CDT production lines had been

2    shut down as agreed;

3        (g)   authorizing and approving the participation of subordinate employees in the

4    conspiracy;

5        (h)   issuing price quotations and reducing output in accordance with the

6    agreements reached; and

7        (i)   taking steps to conceal the conspiracy and conspiratorial contacts through

8    various means.

9    III.

## DEFENDANT AND COCONSPIRATORS

11    6.    Defendant WEN JUN CHENG is a resident of Taiwan, Republic of China.  From

12   at least as early as January 1999 and continuing until at least September 2004, WEN JUN

13   CHENG was employed by Company A and, beginning in March 2002, was Assistant Vice

14   President of Sales and Marketing for Company A.  During the period covered by this Indictment,

15   Company A was a Taiwanese company engaged in the business of producing and selling, among

16   other things, CDTs to customers in the United States and elsewhere.

17    7.    Various corporations and individuals not made defendants in this Indictment

18   participated as coconspirators in the offense charged in this Indictment and performed acts and

19   made statements in furtherance of it.

20    8.    Whenever in this Indictment reference is made to any act, deed, or transaction of

21   any corporation, the allegation means that the corporation engaged in the act, deed, or transaction

22   by or through its officers, directors, employees, agents, or other representatives while they were

23   actively engaged in the management, direction, control, or transaction of its business or affairs.

24   IV.

## TRADE AND COMMERCE

26    9.    CDTs are a type of cathode ray tube.  Cathode ray tubes consist of evacuated glass

27   envelopes that contain an electron gun and a phosphorescent screen.  When electrons strike the

28   screen, light is emitted, creating an image on the screen.  CDTs are the specialized cathode ray

INDICTMENT – PAGE 3

1  tubes manufactured for use in computer monitors and other products with similar technological

2  requirements.

3        10.    During the period covered by this Indictment, Company A and coconspirators sold

4  and distributed substantial quantities of CDTs in a continuous and uninterrupted flow of interstate

5  and foreign trade and commerce to customers located in states or countries other than the states or

6  countries in which Company A and coconspirators produced CDTs.  In addition, payments for

7  CDTs traveled in interstate and foreign trade and commerce.

8        11.    During the period covered by this Indictment, the business activities of the

9  defendant and coconspirators related to the sale and distribution of CDTs that are the subject of

10  this Indictment were within the flow of, and substantially affected, interstate and foreign trade and

11  commerce.

12  V.

13  JURISDICTION AND VENUE

14        12.    The combination and conspiracy charged in this Indictment was carried out, in

15  part, in the Northern District of California, within the five years preceding the filing of this

16  Indictment.

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

INDICTMENT – PAGE 4

1   ALL IN VIOLATION OF TITLE 15, UNITED STATES CODE, SECTION 1.

2   DATED:   8/18/09                          A TRUE BILL

3

4   _Christine A. Varney_

5   Christine A. Varney
    Assistant Attorney General

6

7   Scott D. Hammond                          Phillip H. Warren
    Deputy Assistant Attorney General         Chief, San Francisco Office

8

9

10  Marc Siegel                               Lidia Maher
    Director of Criminal Enforcement          Anna Tryon Pletcher
                                              May Lee Heye
11  United States Department of Justice       Attorneys
    Antitrust Division                        U.S. Dept. of Justice, Antitrust Division
12                                            450 Golden Gate Avenue
                                              Box 36046, Room 10-0101
13  _Joseph P. Russoniello_  for JM           San Francisco, CA 94102
    Joseph P. Russoniello                     (415) 436-6660
14  United States Attorney
    Northern District of California

15

16

17

18

19

20

21

22

23

24

25

26

27

28

    INDICTMENT – PAGE 5

# EXHIBIT 9



# Department of Justice

---

FOR IMMEDIATE RELEASE                                                                    AT
TUESDAY, FEBRUARY 10, 2009                                              (202) 514-2007
WWW.USDOJ.GOV                                                              TDD (202) 514-1888

## FORMER EXECUTIVE INDICTED FOR HIS ROLE
## IN TWO CATHODE RAY TUBE PRICE-FIXING CONSPIRACIES

### *Global Price-Fixing Scheme Involves Tubes Used in Computer Monitors and Televisions*

WASHINGTON – A federal grand jury in San Francisco today returned a two-count indictment against the former Chairman and Chief Executive Officer of Chunghwa Picture Tubes Ltd. for his participation in global conspiracies to fix prices of two types of cathode ray tubes (CRTs) used in computer monitors and televisions, the U.S. Department of Justice announced today.  This is the first charge as a result of the Antitrust Division's ongoing investigation into the cathode ray tubes industry.

The indictment, filed today in U.S. District Court in San Francisco, charges Cheng Yuan Lin, aka C.Y. Lin, a resident of Taiwan, with conspiring with others to suppress and eliminate competition by fixing prices, reducing output and allocating market shares of color display tubes (CDTs) to be sold in the U.S. and elsewhere, beginning at least as early as Jan. 28, 1997, until at least as late as April 7, 2003.  The indictment also charges C.Y. Lin with conspiring with others to suppress and eliminate competition by fixing prices for color picture tubes (CPTs) to be sold in the U.S. and elsewhere, beginning at least as early as March 12, 1997, until at least as late as April 7, 2003.

CRTs consist of evacuated glass envelopes that contain an electron gun and a phosphorescent screen.  When electrons strike the screen, light is emitted, creating an image on the screen.  CDTs and CPTs are each types of CRTs.  CDTs are used in computer monitors and other specialized applications, while CPTs are used in color televisions.  The worldwide market for CRTs, including CPTs and CDTs, in 1997, at the start of the conspiracies has been estimated as approximately $26 billion.

"This conspiracy harmed countless Americans who purchased computers and televisions using cathode ray tubes sold at fixed prices," said Scott D. Hammond, Acting Assistant Attorney General in charge of the Antitrust Division.  "The Antitrust Division will continue to prosecute individuals, wherever they are located and however high their position on the corporate ladder, who engage in price fixing aimed at U.S. businesses and consumers."

According to the charges, C.Y. Lin and co-conspirators carried out the CDT conspiracy by, among other things:

- 2 -

- Attending meetings and engaging in conversations and communications in Taiwan, Korea, Malaysia, China and elsewhere to discuss the prices, output and market shares of CDTs;
- Agreeing during those meetings, conversations and communications to charge prices of CDTs at certain target levels or ranges;
- Agreeing during those meetings, conversations and communications to reduce output of CDTs by shutting down CDT production lines for certain periods of time;
- Agreeing during those meetings, conversations and communications to allocate target market shares for the CDT market overall and for certain CDT customers;
- Exchanging CDT sales, production, market share and pricing information for the purpose of implementing, monitoring and enforcing adherence to the agreed-upon prices, output reduction and market share allocation;
- Implementing an auditing system that permitted co-conspirators to visit each other's production facilities to verify that CDT production lines had been shut down as agreed;
- Authorizing and approving the participation of subordinate employees in the conspiracy;
- Issuing price quotations and reducing output in accordance with the agreements reached; and
- Taking steps to conceal the conspiracy and conspiratorial contacts through various means.

C.Y. Lin is charged with carrying out the CPT conspiracy with his co-conspirators by, among other things:

- Attending meetings and engaging in conversations and communications in Taiwan, Korea, Malaysia, China, Thailand, Indonesia and elsewhere to discuss the prices of CPTs;
- Agreeing during those meetings, conversations and communications to charge prices of CPTs at certain target levels or ranges;
- Exchanging CPT pricing information for the purpose of implementing, monitoring and enforcing adherence to the agreed-upon prices;
- Authorizing and approving the participation of subordinate employees in the conspiracy;
- Issuing price quotations in accordance with the agreements reached; and
- Taking steps to conceal the conspiracy and conspiratorial contacts through various means.

On Feb. 3, 2009, Lin was indicted for his participation in a separate conspiracy to suppress and eliminate competition by fixing the prices of Thin Film Transistor-Liquid Crystal Display (TFT-LCD) panels.

- 3 -

Lin is charged with violating the Sherman Act, which carries a maximum penalty of three years imprisonment and a fine of $350,000 for individuals for violations occurring before June 22, 2004.  The maximum fines may be increased to twice the gain derived from the crime or twice the loss suffered by the victims if either of those amounts is greater than the Sherman Act maximum fines.

This case is part of an ongoing joint investigation by the San Francisco Field Office of the Antitrust Division of the U.S. Department of Justice and the Federal Bureau of Investigation in San Francisco.  Anyone with information concerning illegal conduct in the CRT industry is urged to call the San Francisco Field Office of the Antitrust Division at 415-436-6660.

### 

09-110

# EXHIBIT 10



**EUROPEAN COMMISSION**

**PRESS RELEASE**

Brussels, 5 December 2012

# Antitrust: Commission fines producers of TV and computer monitor tubes € 1.47 billion for two decade-long cartels

The European Commission has fined seven international groups of companies a total of € 1 470 515 000 for participating in either one or both of two distinct cartels in the sector of cathode ray tubes ("CRT"). For almost ten years, between 1996 and 2006, these companies fixed prices, shared markets, allocated customers between themselves and restricted their output. One cartel concerned colour picture tubes used for televisions and the other one colour display tubes used in computer monitors. The cartels operated worldwide. The infringements found by the Commission therefore cover the entire European Economic Area (EEA). Chunghwa, LG Electronics, Philips and Samsung SDI participated in both cartels, while Panasonic, Toshiba, MTPD (currently a Panasonic subsidiary) and Technicolor (formerly Thomson) participated only in the cartel for television tubes. Chunghwa received full immunity from fines under the Commission's 2006 Leniency Notice for the two cartels, as it was the first to reveal their existence to the Commission. Other companies received reductions of their fines for their cooperation in the investigation under the Commission's leniency programme.

Commission Vice President in charge of competition policy Joaquín Almunia said: *"These cartels for cathode ray tubes are 'textbook cartels': they feature all the worst kinds of anticompetitive behaviour that are strictly forbidden to companies doing business in Europe. Cathode ray tubes were a very important component in the making of television and computer screens. They accounted for 50 to 70% of the price of a screen. This gives an indication of the serious harm this illegal behaviour has caused both to television and computer screen producers in the EEA, and ultimately the harm it caused to the European consumers over the years".*

The two CRT cartels are among the most organised cartels that the Commission has investigated. For almost 10 years, the cartelists carried out the most harmful anti-competitive practices including price fixing, market sharing, customer allocation, capacity and output coordination and exchanges of commercial sensitive information. The cartelists also monitored the implementation, including auditing compliance with the capacity restrictions by plant visits in the case of the computer monitor tubes cartel.

Top management level meetings, dubbed "green(s) meetings" by the cartelists themselves because they were often followed by a golf game, designed the orientations for the two cartels. Preparation and implementation were carried out through lower level meetings, often referred to as "glass meetings", on a quarterly, monthly, sometimes even weekly basis. Meetings were held in various locations in Asia (Taiwan, Korea, Japan, Malaysia, Indonesia, Thailand, Hong Kong, etc.) and Europe (Amsterdam, Budapest, Glasgow, Paris, Rome). The cartels operated worldwide.

Multilateral meetings usually started with a review of demand, production, sales and capacity in the main sales areas, including Europe; then prices were discussed, including for individual customers, i.e. TV and computer manufacturers. They had therefore a direct impact on customers in the European Economic Area (EEA), ultimately harming final consumers. The cartelists were trying to address the decline of the CRT market in a collusive way, to the detriment of consumers. For example, one document recording the cartel discussions spells out clearly: *"producers need to avoid price competition through controlling their production capacity"*.

The investigation also revealed that the companies were well aware they were breaking the law. For instance, in a document found during the Commission's inspections, a warning goes as follows: *"Everybody is requested to keep it as secret as it would be serious damage if it is open to customers or European Commission"*. The participants were therefore taking precautions to avoid being in possession of anticompetitive documents. Some documents spelled out, for example: *"Please dispose the following document after reading it"*.

## Fines

The fines were set on the basis of the Commission's 2006 Guidelines on fines (see IP/06/857 and MEMO/06/256).

In setting the level of fines, the Commission took into account the companies' sales of the products concerned in the EEA, the very serious nature of the infringement, its geographic scope, its implementation and its duration. If Chunghwa had not received full immunity, its fines would have been € 8 385 000 for the TV tubes cartel and € 8 594 000 for the computer monitor tubes cartel. Samsung SDI, Philips and Technicolor received reductions of fines ranging from 10 to 40% for their cooperation under the Commission's leniency programme. The reductions reflect the timing of their cooperation and the extent to which the evidence they provided helped the Commission to prove the respective cartels. One of the companies invoked its inability to pay the fine. The Commission assessed this claim under point 35 of the 2006 fines Guidelines and granted a reduction of the fine.

The fines imposed are as follows:

| Name of undertaking | Reduction under the Leniency Notice (%) | Fine for the TV tubes cartel[1] (€) | Fine for the computer monitor tubes cartel[1] (€) | Total fine[1] (€) |
|---|---|---|---|---|
| Chunghwa[2] | 100% | 0 | 0 | 0 |
| Samsung SDI | 40% | 81 424 000 | 69 418 000 | 150 842 000 |
| Philips | 30% | 240 171 000 | 73 185 000 | 313 356 000 |
| LG Electronics | 0% | 179 061 000 | 116 536 000 | 295 597 000 |
| Philips and LG Electronics[2] | 30% *(reduction only for Philips)* | 322 892 000 | 69 048 000 | 391 940 000 |
| Technicolor | 10% | 38 631 000 | | 38 631 000 |
| Panasonic | 0% | 157 478 000 | | 157 478 000 |
| Toshiba | 0% | 28 048 000 | | 28 048 000 |
| Panasonic, Toshiba and MTPD[2] | 0% | 86 738 000 | | 86 738 000 |
| Panasonic and MTPD[2] | 0% | 7 885 000 | | 7 885 000 |
| **TOTAL** | | 1 142 328 000 | 328 187 000 | **1 470 515 000** |

[1] *Legal entities within the undertaking may be held jointly and severally liable for the whole or part of the fine imposed.*

[2] *Jointly and severally liable for that whole fine imposed.*

## Background

A Cathode Ray Tube ("CRT") is an evacuated glass envelope containing an electron gun and a fluorescent screen. Two distinct types of CRTs are relevant for the cartels sanctioned in today's decisions: (i) colour display tubes (CDT) used in computer monitors and (ii) colour picture tubes (CPT) used for colour televisions. The CRT was gradually replaced by alternative techniques such as LCD and plasma displays.

The Commission's investigation started with unannounced inspections in November 2007 (see MEMO/07/453). A statement of objections was issued in November 2009 (see MEMO/09/525) on which the companies had the opportunity to comment and to be heard. A supplementary statement of objections concerning corporate liability was issued in June 2012 against two companies.

More information on this case will be available under the case number 39437 in the Commission's public case register on the competition website, once confidentiality issues have been dealt with. For more information on the Commission's action against cartels, see its cartels website.

## Action for damages

Any person or firm affected by anti-competitive behaviour as described in this case may bring the matter before the courts of the Member States and seek damages. The case law of the European Court of Justice (ECJ) and the Antitrust Regulation (Council Regulation 1/2003) both confirm that in cases before national courts, a Commission decision is binding proof that the behaviour took place and was illegal. Even though the Commission has fined the companies concerned, damages may be awarded without these being reduced on account of the Commission fine.

The Commission considers that meritorious claims for damages should be aimed at compensating, in a fair way, the victims of an infringement for the harm done. More information on antitrust damages actions, including the public consultation and a citizens' summary, is available at:

http://ec.europa.eu/comm/competition/antitrust/actionsdamages/documents.html

---

Contacts :
Antoine Colombani  (+32 2 297 45 13)
Marisa Gonzalez Iglesias  (+32 2 295 19 25)

---

# EXHIBIT 11

**Cease-and-Desist Order and Surcharge Payment Orders
against Manufacturers of Cathode Ray Tubes for Televisions**
(Tentative Translation)

October 7, 2009

Japan Fair Trade Commission

The Japan Fair Trade Commission (hereinafter "JFTC") investigated entrepreneurs manufacturing and selling the cathode ray tubes for televisions in accordance with the provisions of the Antimonopoly Act   (hereinafter "AMA"), and found that they had engaged in activities that violate Article 3 (prohibition of unreasonable restraint of trade) of the AMA. Accordingly, the JFTC today issued a cease and desist order pursuant to the provision of Paragraph 2, Article 7 of the AMA and surcharge payment orders pursuant to the provision of Paragraph 1, Article 7-2 of the AMA as shown below.

The JFTC commenced its investigations almost simultaneously with foreign competition authorities including the United States Department of Justice and the European Commission in November 2007.

1   The numbers of entrepreneurs involved in the violation, entrepreneurs subject to the cease and desist order and to the surcharge payment orders, and the amount of surcharge (See also the appendix);

| Number of entrepreneurs involved in violation | Number of entrepreneurs subject to the cease and desist order | Number of entrepreneurs subject to the surcharge payment orders | Total amount of the surcharge |
|---|---|---|---|
| 11 | 2 | 5[Note 1] | 3,322,240,000 yen |

(Note 1) In addition to the said five entrepreneurs, the JFTC is in the progress to give one foreign entrepreneur who is to be the addressee of another surcharge payment order an opportunity to express its opinions and to submit evidences concerning content of the surcharge payment order in accordance with the provision of Paragraph 6, Article 50 and Paragraph 5, Article 49 of the AMA.

2   Outline of the violation

Regarding cathode ray tubes for televisions which   Japanese manufacturing and sales companies of CRT televisions[Note 2]   have their overseas manufacturing subsidiaries and the like[Note 3] (hereinafter "**Overseas Manufacturing Subsidiaries and the Like**") purchase[Note 4]

(hereinafter the "**Specified CRTs**"), the eleven entrepreneurs listed in the appendix, no later than around May 22, 2003[Note 5], formed an agreement to continuously hold CPT meetings[Note 6] about once every other month where they jointly set minimum target prices and the like, on an approximately quarterly basis, that each of them should abide by and that should be applied to the selling prices for Overseas Manufacturing Subsidiaries and the Like for the following quarter, and thereby, substantially restrained competition in the field of sales of the Specified CRTs.

(Note 2) The term "Japanese manufacturing and sales companies of CRT televisions" means Orion Electric Co., LTD., SANYO Electric Co., Ltd., Sharp Corporation, Victor Company of Japan, Limited and FUNAI ELECTRIC CO., LTD. each of which engages in the business of manufacturing and selling cathode ray tube televisions.

(Note 3) The term "Overseas Manufacturing Subsidiaries and the Like" means manufacturing subsidiaries or manufacturing subcontractors on contract located in the Southeast Asian Region which are substantial production bases of the Japanese manufacturing and sales companies of CRT televisions.

(Note 4) The term "Specified CRTs" means cathode ray tubes for televisions listed below:
1. 14-inch round cathode ray tube;
2. 20-inch round cathode ray tube;
3. 21-inch round cathode ray tube;
4. 21-inch flat cathode ray tube under the name Invar; and
5. 21-inch flat cathode ray tube under the name AK.

(Note 5) MT Picture Display (Malaysia) Sdn. Bhd. joined in the agreement no later than February 16, 2004 and MT Picture Display (Thailand) Co., Ltd. joined in it no later than April 23, 2004.

(Note 6) The term "CPT meeting" means meetings of sales personnel of the entrepreneurs manufacturing and selling the Specified CRTs including department managers or section chiefs or equivalent personnel responsible for sales or marketing activities of Samsung SDI Co., Ltd., LG Philips Displays Korea Co., Ltd., and MT Picture Display Co., Ltd..

3   Outline of the cease-and-desist order

(1)   MT Picture Display Co., Ltd. and Samsung SDI Co., Ltd. must respectively pass a resolution on the following items by their authorized decision-making bodies on execution of business such as the board of directors:

a. to confirm termination of the agreement as noted in 2 above; and

b. to ensure that they will, neither mutually nor jointly with any other entrepreneurs, determine the selling prices of the Specified CRTs for Overseas Manufacturing Subsidiaries and the Like, and that each of them will determine such prices individually.

(2)   Each of the two entrepreneurs must notify the measure taken in accordance with (1) above to the other entrepreneur and to the Japanese manufacturing and sales companies of CRT televisions, and ensure that the action is made known to and implemented by its employees.

In addition, Samsung SDI Co., Ltd. must notify the measure taken in accordance with (1) above to Samsung SDI (Malaysia) BERHAD.

(3) The two entrepreneurs must in the future, neither mutually nor jointly with any other entrepreneurs, determine the selling prices of the Specified CRTs for Overseas

Manufacturing Subsidiaries and the Like.

4   Outline of the surcharge payment order

MT Picture Display (Malaysia) Sdn. Bhd., PT. MT Picture Display Indonesia, MT Picture Display (Thailand) Co., Ltd., Samsung SDI (Malaysia) BERHAD, and LG Philips Displays Korea Co., Ltd. shall pay the respective amounts of surcharge by January 8, 2010, described in the appendix (the total amount reaches 3,322,240,000 yen).

Appendix

| No. | Name of entrepreneur | Location of principal office | Representative | Cease and desist order | Surcharge payment order |
|---|---|---|---|---|---|
| 1 | MT Picture Display Co., Ltd. | 1-15, Matsuo-cho, Kadoma-shi, Osaka | Tatsuo Tobinaga | ○ | |
| 2 | MT Picture Display (Malaysia) Sdn. Bhd. (Note 4) | Wisma Goshen, 2nd Floor 60, 62 & 64 Jalan SS 22/21 Damansara Jaya 47400 Petaling Jaya Selangor, Malaysia | Yue Sau Yin | | 650,830,000 yen |
| 3 | PT. MT Picture Display Indonesia(Note 5) | Kawasan EJIP Industrial Park Plot 3-G, Desa Sukaresmi, Kecamatan Cikarang Selatan, Kabupaten Bekasi, Republic of Indonesia | Yoshitaka Yagaki | | 580,270,000 yen |
| 4 | MT Picture Display (Thailand) Co., Ltd. (Note 6) | No. 142, Village No. 5, Bang Kadi Industrial Park, Tiwanon Road, Bang Kadi Sub-district, Muang Pathum Thani District, Pathum Thani Province, Kingdom of Thailand | Ravita Thisarn | | 566,140,000 yen |
| 5 | Samsung SDI Co., Ltd. | 673-7 Maetan-dong, Youngtong-gu, Suwon, Kyunggi-do, Republic of Korea | Kim Soontaek | ○ | |
| 6 | Samsung SDI (Malaysia) BERHAD | 635 & 660, Kawasan Perindustrian, Tuanku Jaafar, 71450 Sungai Gadut, Negeri Sembilan Darul Khusus, Malaysia | Cho Dae-Hyoung | | 1,373,620,000 yen |
| 7 | LG Philips Displays Korea Co., Ltd. (Note 7) | 184 Gongdan-Dong, Gumi-City, Kyungbuk, Republic of Korea | Kwon, Soo-Kun | | 151,380,000 yen |
| 8 | P.T. LP Displays Indonesia | Kawasan Industri MM2100 Block G Cibitung, Bekasi 17520 West Jawa, Republic of Indonesia | Park Ju Tae | | (Note 9) |
| 9 | Chunghwa Picture Tubes Co. Ltd. | No. 1127, Ho Ping Road, Ba De City, Taoyuan County, Taiwan, Republic of China | Wei-Shan Lin | | |
| 10 | Chunghwa Picture Tubes (Malaysia) Sdn. Bhd. | 10th Floor, Wisma Havela Thakardas, No. 1, Jalan Tiong Nam, Off Jalan Raja Laut, 50350 Kuala Lumpur, Malaysia | Chuang-Yee Chiu | | |
| 11 | Thai CRT Co. Ltd(Note 8) | 87/9 Moo 2, Sukhapiban 7 Road, Tambon Thungsukala, Amphor Sriracha, Chonburi, Kingdom of Thailand | | | |
| | Total | | | 2 entrepreneurs | 3,322,240,000 yen |

(Note 1)  In this appendix, No.1 is the parent entrepreneur of No.2, 3, and 4; No.5 is the parent entrepreneur of No.6; and No.9 is the parent entrepreneur of No.10. The parent entrepreneurs issued instructions and took control of the business of manufacturing and selling cathode ray tubes for televisions operated by their subsidiaries. No.7 is not a parent entrepreneur of No.8, but issued instructions to No.8 regarding the sales prices of the Specified CRTs.

(Note 2)  The entrepreneurs indicated with a circle "○" are the addressees of the cease-and-desist order.

(Note 3)  The entrepreneurs indicated with a hyphen "   " committed the violation but are not the addressees of the cease and desist order or the surcharge payment order.

(Note 4)  MT Picture Display (Malaysia) Sdn. Bhd. passed a resolution of dissolution on October 8, 2007. Its liquidation proceedings have been commenced on the same date and it has closed down its whole business activities.

(Note 5)  PT. MT Picture Display Indonesia discontinued its operation on September 28, 2007. Its liquidation proceedings have been commenced on the same date and it has closed down its whole business activities.

(Note 6)  MT Picture Display (Thailand) Co., Ltd. passed a resolution of dissolution on May 13, 2009. Its liquidation proceedings have been commenced on the same date and it has closed down its whole business activities.

(Note 7)  LG Philips Displays Korea Co., Ltd. transferred its business of manufacturing and selling cathode ray tubes for televisions to Meridian Solar & Display Co., Ltd. having its principal office at Seoul Special City, Republic of Korea on July 21, 2009.

(Note 8)  Thai CRT Co. Ltd passed a resolution of dissolution on June 29, 2007 and closed down its whole business activities, and later ceased to exist.

(Note 9)  The JFTC is in the progress to give an opportunity for the entrepreneur to express its opinions and to submit evidences concerning content of the surcharge payment order in accordance with the provision of Paragraph 6, Article 50 and Paragraph 3 and 5, Article 49of the AMA.

Attached sheet (amendment)

The JFTC today received letters from Samsung SDI Co., Ltd. and Samsung SDI (Malaysia) BERHAD which notify that each of the two entrepreneurs dismissed all their agents in Japan as of October 5, 2009. As a result of the dismissal, as for the two entrepreneurs, the JFTC has not been able to serve the orders through those agents in Japan.

# EXHIBIT 12

 **KOREA FAIR TRADE COMMISSION**

FAIR TRADE COMMISSION
REPUBLIC OF KOREA

## KFTC Fines 5 Color Display Tube Producers   26.2 Billion Won for CDT International Cartel

January 27, 2011

The Korea Fair Trade Commission (hereinafter "KFTC") imposed a total surcharge of 26,271million won (about USD 23.5million) on 5 color display tube (hereinafter "CDT") manufacturers* for violating the Monopoly Regulation and Fair Trade Act (Article 19). The KFTC found that 5 CDT manufacturers agreed to fix prices and reduce output of CDTs, and implemented the agreement for almost 10 years from November 1996 to March 2006.

* Samsung SDI Co. Ltd., LG Philips Display Korea Co., Ltd., Chunghwa Picture Tubes, Ltd., Chunghwa Picture Tubes (Malaysia) Sdn. Bhd., CPTF Optronics Co., Ltd.

**<The case>**

The KFTC found that the cartel conspiracies for CDT seriously affected the Korean market.

The conspiracies regulated by the KFTC in this case are as follows:

The CDT producers agreed on fixing prices and reducing output of CDTs in the secret meetings which took place in various countries including Korea, Taiwan,  and Malaysia at least once a month for almost 10 years from November 1996 to March 2006.

In addition they agreed on fixing prices of CDTs by size and client and curtailing production by reducing operating days and shutting down CDT production lines. And the CDT manufacturers exchanged confidential business information such as CDT sales, production, market share to fulfill and monitor the implementation of their agreements. Especially, they conducted cross-inspections of factories each other to monitor and enforce the output-curtailing agreement.

**<Fines>**

In setting the surcharges, the Commission took into account various factors including the respective affected sales of the companies involved, the serious nature of the infringement and the current status of the CDT industry.

The surcharges imposed for CDT cartel are as follows:

| Company Name | Location | Surcharge (Million WON) |
|---|---|---|
| Samsung SDI Co. Ltd | Korea | 24,013 |
| LG Philips Display Korea Co., Ltd. | Korea | 0 |
| Chunghwa Picture Tubes, Ltd. | Taiwan | 2,198 |
| Chunghwa Picture Tubes (Malaysia) Sdn. Bhd. | Malaysia | 32 |
| CPTF Optronics Co., Ltd. | China | 28 |

\* LG Philips Display Korea Co., Ltd. was exempted from paying the surcharge, because it cannot afford the surcharge. It closed its business in June 2009 by transferring entire business lines including CDT sector to another corporation.

\*\* The amount of surcharges may vary considering many factors including the reduction for the leniency applicants.

**<Background>**

Today's KFTC decision is the result of a joint investigation with foreign competition authorities including the United States Department of Justice and the European Commission in November 2007. The KFTC investigation into the case was initiated by a leniency application.

The Commission is fully committed to pursuing those who conspired to harm Korean businesses and consumers. Anyone with information concerning any international price fixing or other illegal collusive behavior is urged to contact the International Cartel Division at +82-2-2023-4474.