BAKER BOTTS L.L.P.
Jon V. Swenson (SBN 233054)
1001 Page Mill Road
Building One, Suite 200
Palo Alto, CA 94304-1007
Telephone: (650) 739-7500
Facsimile: (650) 739-7699
Email: jon.swenson@bakerbotts.com

BAKER BOTTS L.L.P.
John M. Taladay (*pro hac vice*)
Joseph Ostoyich (*pro hac vice*)
Erik T. Koons (*pro hac vice*)
Charles M. Malaise (*pro hac vice*)
1299 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2400
Telephone: (202) 639-7700
Facsimile: (202) 639-7890
Email: john.taladay@bakerbotts.com
Email: joseph.ostoyich@bakerbotts.com
Email: erik.koons@bakerbotts.com
Email: charles.malaise@bakerbotts.com

*Attorneys for Defendant Koninklijke Philips Electronics N.V., and Philips Electronics North America Corporation*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

In re: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION

This Document Relates to:

Case No. C 11-6397 SC

COSTCO WHOLESALE CORPORATION,

Plaintiff,

v.

HITACHI, LTD., et al.,

Defendants,

Case No. 07-5944 SC
MDL No. 1917

**THE PHILIPS DEFENDANTS' MOTION, IN THE ALTERNATIVE TO DISMISSAL, TO COMPEL ARBITRATION AND SUPPORTING MEMORANDUM**

**[UNREDACTED VERSION]**

**ORAL ARGUMENT REQUESTED**

Date: TBD.
Time: TBD.
Before: Hon. Charles A. Legge, U.S. Judge (Ret.), Special Master

## TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ..... 1

MEMORANDUM OF POINTS AND AUTHORITIES ..... 3

I. STATEMENT OF THE ISSUE ..... 3

II. INTRODUCTION ..... 3

III. FACTUAL BACKGROUND ..... 4

A. Procedural History ..... 4

B. Costco Alleges A Single Conspiracy That Caused Costco Damages As To Its Purchases "From Any Source" ..... 7

C. Costco's Vendor Agreement Requires Arbitration Of All Claims "Arising Under Or Related To" Costco's Purchases ..... 7

IV. ARGUMENT ..... 9

A. Legal Standard ..... 9

B. Costco's Vendor Agreement Involves Interstate Commerce ..... 9

C. Costco's Agreement to Arbitrate is Valid ..... 10

D. All of Costco's Claims As To Direct and Indirect Purchases From The Philips Defendants Relate To The Vendor Agreement ..... 10

E. Costco's Arbitration Clause Covers Federal and State-Law Claims ..... 11

F. Costco's Claims Based On Direct And Indirect Purchases From The Philips Defendants Must Be Arbitrated ..... 11

G. Counsel For The Philips Defendants Attempted To Resolve This Issue Without Filing A Motion to Compel ..... 12

V. CONCLUSION ..... 13

## TABLE OF AUTHORITIES

**CASES** Page(s)

*Amisil Holdings Ltd. v. Clarium Capital Mgmt.*,
622 F. Supp. 2d 825 (N.D. Cal. 2007)....................12

*AT&T Mobility LLC v. Concepcion*,
-- U.S. --, 131 S. Ct. 1740, 179 L.Ed.2d 742 (2011)....................10

*Estrella v. Freedom Fin.*,
No. C 09-03156 SI, 2011 WL 2633643 (N.D. Cal. July 5, 2011)....................9

*Fujian Pac. Elec. Co. Ltd. v. Bechtel Power Corp.*,
No. C 04-3126 MHP, 2004 WL 2645974 (N.D. Cal. Nov. 19, 2004)....................12

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
No. 07-5944 SC (N.D. Cal. Jan. 28, 2013), Dkt. 1543 1433 -----
"CRT Arbitration Order"....................2, 9, 10, 11

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
No. 07-5944 SC (N.D. Cal. Nov. 7, 2012), Dkt. 1433 -----
"Special Master Legge's Report and Recommendation Compelling Arbitration"....................2, 10

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
No. 07-1827 SI, 2011 WL 2650689 (N.D. Cal. July 6, 2011) -----
"LCD Arbitration Order"....................2, 9, 10, 11

*J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.*,
863 F.2d 315 (4th Cir. 1988)....................12

*JLM Indus., Inc. v. Stolt-Nielsen SA*,
387 F.3d 163 (2d Cir. 2004)....................10, 11, 12

*Mediterranean Enters., Inc., v. Ssangyong Corp.*,
708 F.2d 1458 (9th Cir. 1983)....................10, 11

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth Inc.*,
473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)....................10, 11

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1, 103 S.Ct. 927, 74 L.Ed. 2d 765 (1983)....................9

*Mundi v. Union Security Life Ins. Co.*,
555 F.3d 1042 (9th Cir. 2009)....................12

*Rep. of Nicaragua v. Standard Fruit Co.*,
937 F.2d 469 (9th Cir. 1991)....................9

*Simula, Inc. v. Autoliv, Inc.*,
175 F.3d 716 (9th Cir. 1999) .......... 9, 11

*St. Paul Fire & Marine Ins. Co. v. Courtney Enters., Inc.*,
270 F.3d 621 (8th Cir. 2001) .......... 8

**STATUTES**

9 U.S.C. § 2 .......... 9, 10

9 U.S.C. § 3 .......... 1

9 U.S.C. § 4 .......... 9

9 U.S.C. § 206 .......... 9

**OTHER AUTHORITIES**

Federal Rules of Civil Procedure, Rule 12(b)(6) .......... 1

Federal Arbitration Act ("FAA"), Chapter 1 .......... 1

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

On August 17, 2012, Defendants Koninklijke Philips Electronics N.V. ("KPE") and Philips Electronics North America Corporation ("PENAC") (collectively the "Philips Defendants") filed a motion to dismiss claims asserted by the Direct Action Plaintiffs ("DAPs"), including Costco, against the Philips Defendants on the basis that the claims were barred by the statute of limitations. (Dkt. No. 1319) On May 2, 2013, Special Master Legge issued a Report and Recommendation that, *inter alia*, recommended that the Court grant the Philips Defendants' motion and dismiss the DAP claims without leave to amend. (Dkt. No. 1664) The Philips Defendants intend to promptly move the Court to adopt Special Master Legge's Report and Recommendation as to the Philips Defendants' Motion which, if granted, would dismiss the DAP claims against the Philips Defendants, including the claims asserted by Costco that are the subject of this alternative motion to compel arbitration. As will be set forth in the Philips Defendants' papers moving the Court to adopt the Report and Recommendation as to the dismissal of the Philips Defendants, the Special Master's Report and Recommendation provides sound grounds to dismiss all DAP claims asserted against the Philips Defendants. The Philips Defendants note, however, that the briefing schedule regarding the motions to adopt the Report and Recommendation, any objections thereto, and the Court's resolution of the various motions will likely to take some months to resolve. The Philips Defendants therefore file this motion to compel arbitration solely as an alternative to dismissal to avoid any delay relating to the assertion and preservation of their arbitration rights.

Therefore, and subject to the foregoing, PLEASE TAKE NOTICE that on July 9, 2013, at 11:00 a.m., or as soon as the matter may be heard by the Honorable Charles A. Legge, U.S. District Court Judge (Ret.), Special Master, in the San Francisco, California, 94111, Philips Defendants will and herby do move the Court pursuant to Chapter 1 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 3, and Rule 12(b)(6) of the Federal Rules of Civil Procedure, for an order compelling arbitration of all of Costco Wholesale Corporation's ("Costco") claims based on direct or indirect purchases of cathode ray tubes ("CRT") from the Philips Defendants and dismissing this action regarding these claims.

If its claims are not dismissed as untimely, Costco must be compelled to arbitrate its claims against the Philips Defendants because Costco drafted and entered into a valid, written arbitration agreement that broadly covers all claims "arising out of or relating to" the claims asserted. That agreement was entered into directly between Costco and the Philips Defendants, including PENAC. Moreover, Costco alleges that any non-signatory Philips Defendants were "agents" of the signatory and that all Philips Defendants are jointly and severally liable.[1] Because all of Costco's claims based on the direct or indirect purchases from the Philips Defendants are subject to arbitration, the Court should grant this motion, dismiss the action as it pertains to these claims, and compel Costco to proceed with arbitration.

Significantly, this Court has already found on two different occasions that Costco's claims regarding the *exact* same Costco Vendor Agreement and Standard Terms and, in particular, the mandatory arbitration provisions contained therein, required arbitration.[2] The outcome should be no different here.

This motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities and accompanying exhibits, argument of counsel, and such other matters as the Court may consider.

---

[1] *Costco Wholesale Corp. v. Hitachi, Ltd. et. al.*, No. 3:11-cv-06397-SC (W.D. Wash. Nov. 14, 2011), Dkt. ("Compl.") ¶¶ 9, 55-57.

[2] *See In re TFT-LCD (Flat Panel) Antitrust Litig.,* Nos. M 07-1827 SI, C 09-05609 SI, 2011 WL 2650689 (N.D. Cal. July 6, 2011) ("LCD Arbitration Order") (Judge Illston's Order Compelling Arbitration); *In re: Cathode Ray Tube (CRT) Antitrust Litig.*, No. 07-5944 SC (N.D. Cal.) ("CRT MDL") (November 7, 2012) Dkt. 1433 ("Special Master Legge's Report and Recommendation Compelling Arbitration"); CRT MDL (January 28, 2013) Dkt. 1543 (Judge Conti's Order Adopting Special Master Legge's Recommendation Compelling Arbitration) ("CRT Arbitration Order").

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. STATEMENT OF THE ISSUE

Whether the broad, mandatory arbitration agreement drafted by Costco, which imposes arbitration of "all claims and disputes . . . arising out of or relating to" Costco's relationships with its CRT Finished Product vendors, covers Costco's federal and state-law conspiracy claims against the Philips Defendants based on the direct and indirect purchases of CRT Finished Products from the Philips Defendants, thus requiring dismissal of this action as to the Philips Defendants and an order directing Costco to arbitrate these claims?

## II. INTRODUCTION

Costco's Complaint asserts federal and state-law claims based upon allegations of a CRT price-fixing conspiracy among Defendants Koninklijke Philips Electronics N.V., Philips Electronics North America Corporation, Philips Electronics Industries (Taiwan), Ltd, and Philips da Amazonia Industria Electronica Ltda. and their alleged co-conspirators.[3] Costco alleges that "[e]ach Defendant acted as the principal, agent or joint venturer of, or for other Defendants,' that each member of each Defendant's corporate family "engaged in conspiratorial meetings on behalf of every company in that family," and that "all entities within the corporate families were active, knowing participants" in the alleged conspiracy. Compl. ¶¶ 55-57. Costco's claims are subject to the broad and mandatory arbitration agreements that Costco imposed on all of its suppliers. In February of 2013, the Philips Defendants, through production of documents by Costco, discovered the July 31, 1995 Vendor Agreement executed between Costco and Philips Consumer Electronics Corporation (the "Vendor Agreement") that included Costco's standard broad and mandatory arbitration terms and conditions.[4] *See* Declaration of Erik T. Koons in Support of the Philips Defendants' Motion in the Alternative to Compel Arbitration, dated May 9, 2013 ("Koons" Decl.") Ex. A. The relationship between Costco and the Philips Defendants was covered by and subject to the Costco Standard Terms that, by its

[3] Philips Electronics Industries (Taiwan), Ltd. and Philips da Amazonia Industria Electronica Ltda. do not join this motion as neither entity has been served in this action, and the assertion of personal jurisdiction over either would not comport with due process.

[4] Philips Consumer Electronics Corporation is a division within PENAC. Koons Decl. ¶ 3. The Philips Defendants reserve all rights to amend this motion if Costco comes forward with additional agreements with different dispute resolution terms and conditions.

own language, required mandatory arbitration of "all claims and disputes . . . aris[ing] out of or relat[ing]" to the Vendor Agreement. Koons Decl. Exs. B-E ¶ 20. Pursuant to the FAA, the Court should enforce this arbitration agreement by dismissing this action as it pertains to the Philips Defendants.

On August 17, 2012, the Philips Defendants filed a motion to dismiss the DAP claims against the Philips Defendants as being barred by the statute of limitations. (Dkt. No. 1319). On May 2, 2013, Special Master Legge issued his Report and Recommendation concluding that the DAP claims, including Costco's complaint, were barred by the statute of limitations. (Dkt. No. 1664). He recommended that the Court grant the motion to dismiss the Philips Defendants without leave to amend. *Id*. The Report and Recommendation provides a sound basis for the dismissal of the DAP claims against the Philips Defendants and the Philips Defendants will promptly move the Court to adopt the Report and Recommendation as to their individual motion to dismiss. The Philips Defendants file this motion to compel arbitration solely as an alternative to their motion to dismiss based on the statute of limitations. The Philips Defendants only recently discovered the basis for their motion to compel arbitration and, out of an abundance of caution, do not wish to delay this formal demand to perfect their rights to mandatory arbitration.

## III. FACTUAL BACKGROUND

### A. Procedural History

On November 14, 2011, Costco filed its Complaint in the United States District Court for the Western District of Washington against the Philips Defendants and others. Compl. ¶¶ 34-38. The action was transferred to the MDL on December 20, 2011.[5] As previously described in the Defendants' Joint Notice of Motion and Motion to Dismiss and for Judgment on the Pleadings as to Certain Direct Action Plaintiffs' Claims,[6] the Costco Complaint does not specify from whom, when, or where Costco bought "CRT Products," a term Costco lumps together as CDTs, products containing CDTs, CPTs, and products containing CPTs. Compl. ¶ 2. Costco is clear, however, that

[5] CRT MDL, Clerk's Notice, Dkt. 1016.

[6] CRT MDL, Dkt. 1317 at 17-18, 26, 28, 30.

it seeks recovery from the Philips Defendants for any and all purchases of "CRT Products" by Costco "from any source." Compl. ¶ 9.

On May 15, 2012, PENAC and Toshiba America Electronic Components, Inc. served their first set of document requests ("Document Requests") on Costco seeking the production of, among other things: "[f]or each purchase or potential purchase by You of any CRT or CRT Product, all contracts, purchase orders, agreements or memoranda of understanding, or any other Document that contains any term or condition of sale, including all exclusive contracts, master purchase agreements, purchase orders, invoices, cost-plus contracts and most favored nation contracts, and purchase order acknowledgements."[7] Koons Decl. Ex. F. Costco failed to produce any documents pursuant to this or any other Document Request.

On December 7, 2012, before Costco produced any documents, Costco's Rule 30(b)(6) corporate representative testified that Costco had uniform vendor agreements that it used with every supplier of any and all types of products that Costco purchased, and that these agreements all contained mandatory arbitration provisions. *Id.* Ex. G.[8] In light of Costco's failure to produce any vendor agreements or related documents in response to the Document Requests, on January 10, 2013, the Defendants requested that Costco immediately search for and produce all vendor agreements, or any agreements containing an arbitration provision that Costco utilized with any Defendant relating to the purchase of CRTs or products incorporating CRTs during the period 1995-2007. *Id.* at Ex. H. PENAC's counsel expressly stated that Defendants requested these documents so that each Defendant could assess whether a vendor agreement with a mandatory arbitration provision governed the sales of products containing CRTs to Costco. *Id.* On January 18, 2013, Costco replied that it would search for and produce any responsive, non-privileged documents. *Id.* at Ex. I. On February 11, 2013, Costco produced various vendor agreements, standard terms, and other related documents -- including a Vendor Agreement between PENAC and Costco. *Id.* at Ex. A-E and J.

---

[7] Other document requests that PENAC and Toshiba served on Costco also required Costco to produce its Vendor Agreements, Standard Terms, and related documents.

[8] Deposition of Geoff Shavey, Costco 30(b)(6) at 41:3-42-19, 117:14-118:5. On August 17, 2012, Costco did produce transactional data of Costco's CRT Finished Product sales from September 2, 1996 through January 17, 2010.

The Vendor Agreement governs the purchases upon which Costco asserts its claims against the Philips Defendants and adopts by reference the dispute resolution procedures found in every iteration of Costco's "Standard Terms." *Id.* at Ex. A at A and Exs. B-E at ¶ 20. All of the Standard Terms produced by Costco contain broad, mandatory arbitration clauses governing all aspects of Costco's purchases of CRTs and CRT Finished Products from its vendors, including the Philips Defendants.

On April 9, 2013, counsel for the Philips Defendants sent a letter to Costco referencing the Standard Terms' mandatory arbitration provisions and -- particularly in light of the fact that the Court had found on two separate occasions that the mandatory arbitration provision required Costco to arbitrate its claims[9] -- requested that Costco stipulate to arbitrate its claims against the Philips Defendants (and obviate this motions practice). *Id.* at Ex. K. By e-mail dated April 16, 2013, Costco inquired regarding which of the various vendor agreements that it had executed with Philips entities required arbitration of its claims. *Id*. at Ex. L. On April 17, 2013, the Philips Defendants' responded that "every Vendor Agreement that Costco had with any Philips entity, including Philips Electronics North America, incorporated by reference Costco's 'Standard Terms.' These Standard Terms uniformly provide, at Paragraph 20, 'DISPUTES AND ARBITRATION,' that 'all' claims and disputes that arise between the parties 'shall be arbitrated.'"[10]. *Id*. at Ex. M. The Philips Defendants reiterated its position that, "based on the same arbitration provision contained in the Toshiba Vendor Agreements, the Court ordered that the claims Costco asserts in the Complaint were subject to mandatory arbitration" and, thus, arbitration was required here. *Id*.

On April 19, 2013, Costco responded that it would not "consent to file a motion dismissing Costco's claims against the Philips defendants…." *Id*. at Ex. N. On April 22, 2013, counsel for the Philips Defendants sought clarification that Costco's refusal to jointly move to dismiss Costco's

---

[9] *Supra* fn. 2.

[10] The Philips Defendants also noted that, "without limiting our position, and in light of the potential for additional discovery, all available information supports Philips' position that it is entitled to enforce arbitration rights here." Koons Decl. Ex. M. Consistent with this position, the Philips Defendants reserve all rights to amend this motion if Costco comes forward with additional agreements requiring mandatory arbitration of the subject claims and / or any agreements that contain different dispute resolution terms and conditions.

claims against the Philips Defendants also meant that it was Costco's position that the standard terms of its vendor agreements had no application to its claims against the Philips Defendants. *Id.* at ¶ 17. Counsel for Costco stated that Costco would oppose any effort to arbitrate the claims. *Id.*

**B. Costco Alleges A Single Conspiracy That Caused Costco Damages As To Its Purchases "From Any Source"**

Costco alleges that the Philips Defendants and other CRT and CRT Finished Product manufacturers "conducted a conspiracy extending at a minimum from March 1, 1995, through November 25, 2007" to "rais[e] or maintain[] prices and [to] reduc[e] capacity and output" for cathode ray tubes ('CRTs')." Compl. ¶ 1. Costco alleges that it purchased CRT Finished Products at a price over what it would have paid absent the alleged conspiracy. *Id.* at ¶¶ 3, 180, 183, 187, 191, 198, 202. Costco does not further specify what it purchased or from whom. According to Costco, it was allegedly injured based upon purchases "for CRT Products from any source." Compl. ¶ 9.

Costco alleges that "[e]ach Defendant acted as the principal, agent or joint-venturer of, or for, other Defendants;" that each member of each Defendant's corporate family "engaged in conspiratorial meetings on behalf of every company in that family;" and that "all entities within the corporate families were active, knowing participants in the alleged conspiracy." *Id.* at ¶¶ 55-57. Based upon these allegations, Costco brings claims under Section 1 of the Sherman Act, 15 U.S.C. § 1, the California Cartwright Act, Cal. Bus. & Prof. Code § 16700 *et seq.*, the Washington Consumer Protection Act, Wash. Rev. Code § 19.86.030, the Arizona Antitrust Act, Ariz. Rev. Stat. § 44-1401 *et seq.*, the Florida Deceptive and Unfair Trade Practices Act, Florida Stat. § 501.201 *et seq.*, and the Illinois Antitrust Act, 740 Illinois Code 10/1 *et seq*. *Id.* at ¶¶ 174-203.

**C. Costco's Vendor Agreement Requires Arbitration Of All Claims "Arising Under Or Related To" Costco's Purchases**

Costco's Vendor Agreement with the Philips defendants is the standard agreement Costco used with its suppliers that Costco itself drafted to governing the entire relationship between Costco and each supplier.[11] *See* Koons Decl. Ex. A. ("All sales and deliveries of all products by Vendor to

[11]It is evident on the face of the Vendor Agreement that it is a standard form agreement authored by Costco for use with its suppliers: ((1)the document is entitled "Vendor Agreement (Basic)"); (2) it contains an introduction that includes Costco's name and fill-in-the-blanks for each "Vendor;" (3) "Philips" is handwritten in as the vendor; (4)the bottom right

Costco…and all purchase orders by [Costco] to Vendor, will be covered by and subject to the terms and conditions of [the] Standard Terms….”). Costco also insisted that the Vendor Agreement take priority over any inconsistent terms in other agreements between the parties. *Id*. at Ex. B.

Costco would also notify its vendors of updates to its Standard Terms that Costco stated replaced prior Standard Terms. *Id.* at Ex. A, ¶ A (“The attached PriceCostco Standard Terms, as they may be amended from time to time”); Exs. C and E. Costco updated its Standard Terms in 1994, 1997, 2000, and 2004. *Id*. at Exs. B-E. All four versions of the Standard Terms required arbitration of “all claims and disputes” arising out of or relating to Costco’s purchases of CRTs and other products:

> **20. DISPUTES AND ARBITRATION**. All claims and disputes that (1) are between Vendor and PriceCostco and (2) arise out of or relate to these Standard Terms or any agreement between Vendor and PriceCostco[12] or to their performance or breach (including any tort or statutory claim) (“Arbitrable Claims”), shall be arbitrated under the Commercial Arbitration Rules of the American Arbitration Association (“AAA”), in English at Seattle, Washington, before one neutral arbitrator who may be a national of any party and who shall be a member of the AAA’s Large Complex Case Panel.

*Id*. at Ex. B-E at ¶¶ 20.[13]

Costco brings claims based upon purchases from Philips Consumer Electronics Corp., a division of PENAC, with whom Costco entered into a Vendor Agreement. *Id*. at Ex. A. The Philips Defendants make no concession that they are liable for the sales of their unnamed and alleged affiliates and reserve all rights to contest that liability before the arbitrator or before this Court.[14]

corner has a Costco form number “Form A.4 (5/94);” and (5) the signature block has a place for Costco and “Vendor.”). *See* Koons Decl. Ex. A at p. 1-2.

[12] The Vendor Agreement defines “PriceCostco” to include both The Price Company and Costco Wholesale Corporation. Koons Decl. Ex. A. According to Costco’s website, The Price Company is a predecessor of Costco Wholesale. *See* http://phx.corporate-ir.net/phoenix.zhtml?c=83830&p=irol-faq accessible through Costco.com.

[13] While there are minor variations of section “20. Disputes and Arbitration” in Costco’s 1994, 1997, 2000, and 2004 Standard Terms, these variations do not affect the mandatory arbitrability of Costco’s claims. *Compare* Koons Decl. Exs. B-E ¶ 20.

[14] Such liability is a question of fact for the arbitrator to decide. *See St. Paul Fire & Marine Ins. Co. v. Courtney Enters., Inc.*, 270 F.3d 621, 624 (8th Cir. 2001) (“[T]he court may not rule on the merits of any claim the parties have agreed to arbitrate.”).

## IV. ARGUMENT

### A. Legal Standard

The FAA establishes the "liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed. 2d 765 (1983); *see also* CRT Arbitration Order p. 4 ("[T]he FAA embodies a policy that generally favors arbitration agreements."). Courts recognize that agreements to arbitrate are to be rigorously enforced. *See Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25; CRT Arbitration Order p. 4 (If an "arbitration agreement is present…federal courts must enforce it rigorously.").

When considering a motion to compel arbitration, the Court's role is limited to determining whether: (1) the contract containing the arbitration clause relates to a transaction involving interstate commerce; (2) a valid agreement to arbitrate exists; and (3) whether the dispute is encompassed within the scope of that agreement. *See Simula, Inc. v. Autoliv, Inc.,* 175 F.3d 716, 720 (9th Cir. 1999) (when considering motion to compel arbitration, "the district court can determine only whether a written arbitration agreement exists, and if it does, enforce it in accordance with its terms") (citation omitted); *Rep. of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 475-78 (9th Cir. 1991); *see also* 9 U.S.C. § 4; Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention"), 9 U.S.C. § 206. Where there is a valid, enforceable arbitration agreement, the Court must compel arbitration. *See* 9 U.S.C. § 4 ("[T]he court shall make an order directing the parties to proceed in arbitration in accordance with the terms of the agreement"); CRT Arbitration Order p. 4 (must enforce arbitration agreement "rigorously" and policy "appl[ies] with special force in the field of international commerce"); LCD Arbitration Order p. 3 ("Federal courts are required to rigorously enforce an agreement to arbitrate"); *Estrella v. Freedom Fin.*, No. C 09-03156 SI, 2011 WL 2633643, at *2 (N.D. Cal. July 5, 2011) ("Upon a showing that a party has failed to comply with a valid arbitration agreement, the district court must issue an order compelling arbitration.") (citation omitted).

### B. Costco's Vendor Agreement Involves Interstate Commerce

The FAA applies wherever an arbitration agreement is a "written provision in…a contract evidencing a transaction involving commerce." 9 U.S.C. § 2. Here, Costco alleges in its Complaint

that "a substantial part of the events giving rise to the Plaintiff's claims…affected interstate commerce." *See* Compl. ¶ 61

**C. Costco's Agreement to Arbitrate is Valid**

Costco itself drafted the Vendor Agreement and Standard Terms containing the broad, mandatory arbitration provision. Because no "ground . . . 'exist[s] at law or in equity for the revocation'" of any Vendor Agreement, the FAA applies and compels Costco to arbitrate its claims. *See, e.g., AT&T Mobility LLC v. Concepcion*, -- U.S. --, 131 S. Ct. 1740, 1746, 179 L.Ed.2d 742 (2011); 9 U.S.C. § 2.

**D. All of Costco's Claims As To Direct and Indirect Purchases From The Philips Defendants Relate To The Vendor Agreement**

Costco drafted its Standard Terms with broad and mandatory language providing that "all claims and disputes that . . . arise out of or relate to" agreements between Costco and its vendors must be arbitrated. Koons Decl. Exs. B-E at ¶ 20. The Ninth Circuit has recognized that an agreement to arbitrate claims "arising out of or relating to" is a broad arbitration clause. *See Mediterranean Enters., Inc., v. Ssangyong Corp.*, 708 F.2d 1458, 1464 (9th Cir. 1983) (noting that the language "'arising out of or relating to this agreement' had been labeled a 'broad arbitration clause'" by other courts) (citation omitted). It is well-established that antitrust claims are claims "arising under" purchase contracts. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth Inc.*, 473 U.S. 614, 632, 640, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985) (holding that the antitrust claims arising under a sales agreement between the parties were arbitrable); *JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 181 (2d Cir. 2004) (holding that the plaintiffs' antitrust claims arising under a form charter agreement were subject to arbitration). This Court has already found on two separate occasions that the Standard Terms require arbitration of Costco's purchases pursuant to the Vendor Agreement. CRT Arbitration Order p. 2 ("The COURT . . . GRANTS the Toshiba Defendants' motion to compel arbitration . . ."); Special Master Legge's Report and Recommendation Compelling Arbitration p. 2 ("The Special Master finds that the language in the Vendor Agreement's arbitration clause, which applies to '[a]ll claims and disputes that . . . arise out of or relate to" the Vendor Agreement, provides adequate jurisdiction for the Toshiba Defendants'

demand to arbitrate."); LCD Arbitration Order p. 6 ("The Court finds that the arbitration clause covers Costco's claims.").

Costco alleges that all of its alleged damages were as a result of its purchases of CRTs and CRT Finished Products, which are governed by the Vendor Agreement. Compl. ¶¶ 3, 180, 183, 187, 191, 198, and 202. By definition, those purchases "arise out of and relate to" the Vendor Agreement and, thus, those claims must be arbitrated. *Accord Mediterranean Enters.*, 708 F.2d at 1464.

**E. Costco's Arbitration Clause Covers Federal and State-Law Claims**

The Vendor Agreement's broad and mandatory arbitration provision applies to Costco's federal and state-law claims. The Supreme Court has held that Sherman Act claims are arbitrable. *See Mitsubishi Motors Corp*., 473 U.S. at 618-19, 624 (holding plaintiffs' Sherman Act claims subject to arbitration under FAA); *see also JLM,* 387 F.3d at 175 (rejecting plaintiffs'' argument that arbitral panel would be incapable of resolving Sherman Act claims). It is also well-established that state-law antitrust claims are arbitrable, whether brought pendant to Sherman Act claims or on their own. *See, e.g., Simula Inc.,* 175 F.3d at 719, 726 (arbitration appropriate to adjudicate alleged violations of mix of federal and state antitrust, trade secret, trademark, and defamation laws). Relying upon this precedent, this Court has already recognized that Sherman Act and state-law antitrust claims are arbitrable under the exact same Costco arbitration provision. *See* CRT Arbitration Order p. 2 ("The COURT . . . GRANTS the Toshiba Defendants' motion to compel arbitration . . ."); LCD Arbitration Order p. 5 ("Costco's state and federal antitrust claims are likewise subject to arbitration.").

**F. Costco's Claims Based On Direct And Indirect Purchases From The Philips Defendants Must Be Arbitrated**

Costco must arbitrate its claims against the Philips Defendants. As this Court has already held, a plaintiff is estopped from refusing to arbitrate with a corporate family member that is alleged to be liable for overcharges incurred on an affiliate's contract. CRT Arbitration Order p. 9 ("Plaintiff must arbitrate its claims against the Toshiba Defendants whose affiliates - - in this case, TACP - - have arbitration agreements with Plaintiff"); LCD Arbitration Order p. 8 ("Costco must arbitrate its claims against those defendants whose affiliates have arbitration agreements with

Costco"); *see also Fujian Pac. Elec. Co. Ltd. v. Bechtel Power Corp.*, No. C 04-3126 MHP, 2004 WL 2645974, at *6 (N.D. Cal. Nov. 19, 2004) ("[w]hen the charges against a parent company and its subsidiary are based upon the same facts and are inherently inseparable, a court may refer claims against the parent to arbitration even though the parent is not formally a party to the arbitration agreement") (quoting *J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.,* 863 F.2d 315, 321-22 (4th Cir. 1988)); *JLM*, 387 F.3d at 177-78 (plaintiffs could not avoid arbitration with affiliate of signatory after having treated signatory and its affiliate as single unit in complaint). Although this principle alone would be enough for the Philips Defendants to require Costco to abide by its own arbitration terms, Costco also alleges that all members of a corporate family were "active, knowing participants" in the alleged conspiracy and treats all corporate family members as a single entity. Compl. ¶¶ 34-38, 57, 135. Because Costco alleges that all members of the Philips Defendants' corporate family are liable for their affiliates' alleged actions, Costco must arbitrate with all of the named Philips Defendants.[15]

### G. Counsel For The Philips Defendants Attempted To Resolve This Issue Without Filing A Motion to Compel

On April 9, 2013, counsel for the Philips Defendants sent a letter to counsel for Costco requesting that Costco stipulate to dismissing this action with respect to the Philips Defendants and abide by its agreement to arbitrate all of the claims against the Philips Defendants. Koons Decl. Ex. K. In this letter, counsel for the Philips Defendants noted that the obligation of Costco to arbitrate its claims based on the same Vendor Agreement was decided previously by this Court in both the LCD and CRT litigations. *Id.* On April 16 and 17, 2013, counsel for the Philips Defendants and Costco exchanged emails regarding the agreements that supported the Philips Defendants' position that it was entitled to enforce arbitration rights in this matter. *Id.* at Exs. L and M. Costco declined to stipulate to arbitration. *Id*. at Ex. N. The Philips Defendants consequently filed this motion

[15] *See Amisil Holdings Ltd. v. Clarium Capital Mgmt.*, 622 F. Supp. 2d 825, 830 (N.D. Cal. 2007) ("[A]n obligation to arbitrate does not attach *only* to those who actually signed the agreement to arbitrate."); *JLM*, 387 F.3d at 177 ("under principles of estoppel, a non-signatory to an arbitration agreement may compel a signatory to that agreement to arbitrate"); *Mundi v. Union Security Life Ins. Co.*, 555 F.3d 1042, 1046 (9th Cir. 2009) ("a signatory may be required to arbitrate a claim brought by a non-signatory because of the close relationship between the entities involved, as well as the relationship of the alleged wrongs to the non-signatory's obligations and duties in the contract and the fact that the claims were intertwined with the underlying contractual obligations.") (citation omitted).

requesting that the Court compel Costco to arbitrate its claims against the Philips Defendants for its alleged injuries based on the direct and indirect purchases from the Philips Defendants.

## V. CONCLUSION

For the foregoing reasons, the Philips Defendants respectfully request that, in the alternative, the Court dismiss Costco's claims that are based on its alleged direct and indirect purchases of CRTs from the Philips Defendants and compel Costco to arbitrate those claims.

Dated: May 9, 2013

Respectfully submitted,

By: */s/Jon V. Swenson*
Jon V. Swenson (SBN 233054)

Attorneys for Defendants Koninklijke Philips Electronics N.V. and Philips Electronics North America Corporation