1   William A. Isaacson
    Jennifer Milici
2   BOIES, SCHILLER & FLEXNER LLP
    5301 Wisconsin Ave. NW, Suite 800
3   Washington, D.C.  20015
    Telephone:  (202) 237-2727
4   Facsimile:  (202) 237-6131
    Email:  wisaacson@bsfllp.com
5   Email:  jmilici@bsfllp.com

6   *Liaison Counsel for Direct Action Plaintiffs*
    *Additional Counsel Listed on Signature Page*

7

8               **UNITED STATES DISTRICT COURT**
             **NORTHERN DISTRICT OF CALIFORNIA**
9                  **SAN FRANCISCO DIVISION**

10  In re: CATHODE RAY TUBE (CRT)          Master File No. 3:07-cv-05944-SC (N.D. Cal.)
    ANTITRUST LITIGATION                   MDL No. 1917
11

12  This Document Relates to:             Case No. 11-cv-01656 SC
                                          Case No. 11-cv-05381 SC
13  *Electrograph Systems, Inc., et al. v. Hitachi,*   Case No. 11-cv-05502 SC
    *Ltd., et al.*, No. 11-cv-01656       Case No. 11-cv-05513 SC
14                                        Case No. 11-cv-05514 SC
    *Stoebner, et al. v. LG Electronics, et al.*, No.  Case No. 11-cv-06275 SC
15  11-cv-05381                           Case No. 11-cv-06276 SC
                                          Case No. 11-cv-06396 SC
16  *Siegel v. Hitachi, Ltd., et al.*, No. 11-cv-05502  Case No. 11-cv-06397 SC
                                          Case No. 12-cv-02648 SC
17  *Best Buy Co., et al. v. Hitachi, Ltd., et al.*, No.  Case No. 12-cv-02649 SC
    11-cv-05513
18
    *Target Corp., et al. v. Chunghwa Picture*   **DIRECT ACTION PLAINTIFFS'**
19  *Tubes, Ltd.*, No. 11-cv-05514        **MOTION TO ADOPT RULINGS FROM**
                                          **THE REPORT AND**
20  *Interbond Corporation of America v. Hitachi,*  **RECOMMENDATIONS REGARDING**
    *et al.*, No. 11-cv-06275             **DEFENDANTS' MOTIONS TO DISMISS**
21                                        **DIRECT ACTION COMPLAINTS**
    *Office Depot, Inc. v. Hitachi Ltd., et al.*, No.
22  11-cv-06276
                                          **Judge: Hon. Samuel P. Conti**
23  *CompuCom Systems, Inc. v. Hitachi, Ltd., et*   **Court: Courtroom 1, 17th Floor**
    *al.*, No. 11-cv-06396                **Date:  August 23, 2013**
24                                        **Time:  10:00 a.m.**
    *Costco Wholesale Corp. v. Hitachi, Ltd., et al.*,
25  No. 11-cv-06397

26  *P.C. Richard and Son Long Island Corp., et al.*
    *v. Hitachi, Ltd., et al.*, No. 12-cv-02648
27
    *Schultze Agency Services, LLC, et al. v.*
28  *Hitachi, Ltd., et al.*, No. 12-cv-02649

# TABLE OF CONTENTS

STATEMENT OF ISSUES ................................................................................................ iv

INTRODUCTION ........................................................................................................... 1

ARGUMENT .................................................................................................................. 3

I.   The Special Master Correctly Rejected Defendants' Due Process Argument ...... 3

II.  The Special Master Correctly Rejected Defendants' Argument Relating to Prudental Standing .............................................................................................. 6

III. The Special Master Correctly Concluded that the DAPs' State Law Claims Are Timely ........................................................................................................ 8

A.   The Fraudulent Concealment Doctrine Applies to the DAPs' Claims ....... 9

B.   The DAPs' Claims Were Further Tolled under the Doctrine of Cross-Jurisdiction Tolling .................................................................................. 16

IV.  The Special Master Correctly Concluded that the DAPs Have Standing to Pursue Their Federal Claims ............................................................................. 19

CONCLUSION ............................................................................................................... 19

1

## **TABLE OF AUTHORITIES**

2

### **CASES**

3

*Alaska Packers Ass'n v. Indus. Accident Comm'n,*
    294 U.S. 532 (1935) .................................................................................................. 5

4

*Allstate Ins. Co. v. Hague,*
    449 U.S. 302 (1981) ............................................................................................. 3, 5, 6

5

6

*Arivella v. Lucent Techs., Inc.,*
    623 F. Supp. 2d 164 (D. Mass. 2009) ..................................................................... 17

7

*AT&T Mobility LLC v. AU Optronics Corp.,*
    707 F.3d 1106 (9th Cir. 2013) .......................................................................... passim

8

*Barneby v. E.F. Hutton & Co.,*
    715 F. Supp. 1512 (M.D. Fla. 1989) ....................................................................... 17

9

*Bartlett v. Miller and Schroder Municipals, Inc.,*
    355 N.W.2d 435 (Minn. Ct. App. 1984) ................................................................. 17

10

11

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ................................................................................................. 14

12

*Carson v. Independent School Dist. No. 623,*
    392 N.W.2d 216 (Minn. 1986) ............................................................................... 17

13

*Cervantes v. City of San Diego,*
    5 F.3d 1273 (9th Cir. 1993) ..................................................................................... 18

14

*Conmar Corp. v. Mitsui & Co. (U.S.A.), Inc.,*
    858 F.2d 499 (9th Cir. 1988) ............................................................................ passim

15

16

*Douchette v. Bethel Sch. Dist. No. 403,*
    117 Wash. 2d 805, 818 P.2d 1362 (1991) ......................................................... 17, 18

17

*E.W. French & Sons, Inc. v. Gen. Portland Inc.,*
    885 F.2d 1392 (9th Cir. 1989) ................................................................... 2, 8, 12, 15

18

*GO Computer, Inc. v. Microsoft Corp.,*
    508 F.3d 170 (4th Cir. 2007) ................................................................................... 11

19

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.,*
    719 P.2d 531 (Wash. 1986) ..................................................................................... 17

20

21

*Hatfield v. Halifax PLC,*
    564 F.3d 1177 (9th Cir. 2009) ................................................................................. 17

22

*In re ATM Fee Antitrust Litigation,*
    686 F.3d 741 (9th Cir. 2012) .............................................................................. v, 2, 4

23

*In re Bulk Extruded Graphite Prods. Antitrust Litig.,*
    No. 02-6030, 2007 WL 1062979 (D.N.J. Apr. 4, 2007) ......................................... 13

24

*In re Cathode Ray Tube (CRT) Antitrust Litig.,*
    No. M07-5944 SC, 2012 WL 5987861 (N.D. Cal. Nov. 29, 2012) ................... 2, 19

25

*In re Cathode Ray Tube (CRT) Antitrust Litig.,*
    738 F. Supp. 2d 1011 (N.D. Cal. 2010) ......................................................... 2, 9, 15

26

*In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.,*
    782 F. Supp. 487 (C.D. Cal. 1991) ................................................................... passim

27

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.,*
    516 F. Supp. 2d 1072 (N.D. Cal. 2007) .................................................................. 15

28

*In re Linerboard Antitrust Litig.*,
    223 F.R.D. 335 (E.D. Pa. 2004) ................................................................. 16, 17

*In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*,
    2007 WL 1601491 (S.D.N.Y. June 4, 2007) ................................................ 15

*In re Processed Egg Prods. Antitrust Litig.*,
    No. 08-md-02002, 2011 WL 5980001 (E.D. Pa. Nov. 30, 2011) ................. 13

*In re Rubber Chems.Antitrust Litig.*,
    504 F. Supp. 2d 777 (N.D. Cal. 2007) .......................................... 9, 10, 11

*In re Sumitomo Copper Litig.*,
    120 F. Supp. 2d 328 (S.D.N.Y. 2000) ........................................................ 14

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    No. M07-1827 SI, 2012 WL 5869588 (N.D. Cal. Nov. 19, 2012) .......... 2, 19

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    586 F. Supp. 2d 1109 (N.D. Cal. 2008) ..................................................... 10

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    822 F. Supp. 2d 953, 956 (N.D. Cal. 2011) ............................................... 15

*Jenson v. Allison-Williams Co.*,
    1999 U.S. Dist. LEXIS 22170 (S.D. Cal. Aug. 23, 1999) ......................... 17

*Lee v. Grand Rapids Board of Education*,
    148 Mich. App. 364, 384 N.W.2d 165 (MI 1986 ...................................... 17

*Ocean Advocates v. U.S. Army Corps of Eng'rs*,
    402 F.3d 846 (9th Cir. 2005) ........................................................................ 7

*Royal Printing Co. v. Kimberly Clark Corp.*,
    621 F.2d 323 (9th Cir. 1980) ............................................................... v, 2, 4

*Sawyer v. Atlas Heating & Sheet Metal Works, Inc.*,
    642 F.3d 560 (7th Cir. 2011) ...................................................................... 16

*Seaboard Corp. v. Marsh Inc.*,
    2012 WL 3807681 (Kan. August 31, 2012) ............................................... 17

*State Ret. Sys. v. Countrywide Fin. Corp.*,
    722 F. Supp. 2d 1157 (C.D. Cal. 2010) ..................................................... 16

*Supermail Cargo, Inc., v. United States*,
    68 F.3d 1204 (9th Cir. 1995) ...................................................................... 18

*Volk v. D.A. Davidson & Co.*,
    816 F.2d 1406 (9th Cir. 1987) .................................................................... 10

*Ward v. Chanana*,
    No. C 07-06290 JW, 2008 WL 5383582 (N.D. Cal. Dec. 23, 2008) ......... 10

*Williams v. Dow Chem. Co.*,
    No. 01-cv-4307, 2004 WL 1348932 (S.D.N.Y. June 16, 2004) ................. 17

DAPS' MOTION TO ADOPT RULINGS FROM R&R
REGARDING DEFENDANTS' MOTION TO DISMISS
DIRECT ACTION COMPLAINTS

- iii -

Master File No. 3:07-5944-SC
MDL No. 1917

## **STATEMENT OF ISSUES**

1. Did the Special Master correctly reject Defendants' due process argument pursuant to *AT&T Mobility LLC v. AU Optronics Corp.*, 707 F.3d 1106 (9th Cir. 2013)?

2. Did the Special Master correctly reject Defendants' overly broad and generalized argument related to prudential standing?

3. Did the Special Master correctly conclude that the state laws claims challenged by Defendants are timely?

4. Did the Special Master correctly conclude that the DAPs have standing to pursue their federal claims under this Court's prior ruling applying *In re ATM Fee Antitrust Litigation*, 686 F.3d 741 (9th Cir. 2012), and *Royal Printing Co. v. Kimberly Clark Corp.*, 621 F.2d 323 (9th Cir. 1980)?

1   Pursuant to the Stipulation and Order entered by this Court [Dkt. No. 1666] (May 9,

2   2013), the Direct Action Plaintiffs ("DAPs") submit the following Motion to Adopt Rulings from

3   the Special Master's Report and Recommendations Regarding Defendants' Motions to Dismiss

4   Direct Action Complaints [Dkt. No. 1664] (May 2, 2013) ("R&R").

5                                           **INTRODUCTION**

6       Defendants have challenged several of the Special Master's recommendations, claiming

7   that they are based on "erroneous legal conclusions."  To the contrary, the Special Master has

8   correctly applied clear Ninth Circuit precedent, as well as prior rulings by this Court, and, thus, it

9   is Defendants who advocate erroneous legal conclusions.  For that reason, the DAPs move to

10  adopt these recommendations from the Special Master.

11      First, the Special Master correctly denied Defendants' motion to dismiss certain of the

12  DAPs' state law claims for lack of due process.  Defendants argued in their motion that the sole

13  consideration for purposes of a due process analysis is the location of the purchase of a price-

14  fixed good.  Subsequent to the briefing on the motions to dismiss, the Ninth Circuit specifically

15  rejected Defendants' position, *i.e.,* that a "single contact—the location of Plaintiffs' injury—[is]

16  dispositive."  *AT&T Mobility LLC v. AU Optronics Corp.*, 707 F.3d 1106, 1111 (9th Cir. 2013).

17  The Special Master noted as much and recommended the denial of Defendants' motion on this

18  ground.  R&R at 9.  Given the dispositive effect of the *AT&T* ruling on Defendants' argument,

19  they now attempt to raise brand new arguments in their objections brief as to why the DAPs'

20  claims do not satisfy due process.  These new arguments are both improperly raised and wholly

21  unsupported by the law and should be rejected.

22      Second, the Special Master correctly denied Defendants' motion to dismiss certain of the

23  DAPs' state law claims for lack of prudential standing.  The Special Master found that

24  Defendants' argument with respect to prudential standing was "too broad and generalized" and

25  "without a record sufficient to support dismissal" of the DAPs' state law claims.  R&R at 8.  The

26  Special Master was correct—Defendants' argument was nothing more than a throwaway to

27  which they devoted a mere two paragraphs of their motion, despite the fact that they were

28  seeking to dismiss literally dozens of state law claims on this ground.  Moreover, both their

1   original argument and the new arguments they improperly raise for the first time in their

2   objections brief are without merit and should be rejected.

3        Third, consistent with this Court's prior rulings, the Special Master correctly denied

4   Defendants' motion to dismiss certain of the DAPs' state law claims on statute of limitations

5   grounds.  Nevertheless, Defendants contend that the Special Master erred in applying the

6   fraudulent concealment doctrine to toll the statute of limitations with respect to these claims

7   because the DAPs were on constructive notice of their claims.  This argument is legally and

8   factually incorrect.  As this Court and the Special Master have held, clear Ninth Circuit

9   precedent establishes that the question of constructive notice is one of fact that is inappropriate

10  for resolution on a motion to dismiss.  R&R at 7 (citing *Conmar Corp. v. Mitsui & Co. (U.S.A.),*

11  *Inc.*, 858 F.2d 499 (9th Cir. 1988)); *accord In re Cathode Ray Tube (CRT) Antitrust Litig.*, 738 F.

12  Supp. 2d 1011, 1024 (N.D. Cal. 2010) [Dkt. No. 665].  Moreover, Defendants' contention that a

13  barebones press release from the European Commission stating that it was investigating

14  unspecified anticompetitive activity by unspecified companies in the CRT industry was enough

15  to put the DAPs' on inquiry notice of their claim is also contrary to the controlling law of this

16  Circuit.  *See, e.g.*, *Conmar*, 858 F.2d at 503-04; *E.W. French & Sons, Inc. v. Gen. Portland Inc.*,

17  885 F.2d 1392, 1400 (9th Cir. 1989).  For these reasons, Defendants' statute of limitations

18  argument must be rejected.

19       Finally, the Special Master also correctly applied this Court's prior decision to deny

20  Defendants' motion to dismiss the DAPs' federal claims for lack of standing under *In re ATM*

21  *Fee Antitrust Litigation*, 686 F.3d 741 (9th Cir. 2012), and *Royal Printing Co. v. Kimberly Clark*

22  *Corp.*, 621 F.2d 323 (9th Cir. 1980).  As the Ninth Circuit held in *ATM Fee*, and as this Court

23  and others in this district have held, finished product purchasers like the DAPs have standing to

24  pursue federal claims for purchases from entities owned or controlled by—or that themselves

25  own or control—one or more conspirators.  *ATM Fee*, 686 F.3d at 749; *In re Cathode Ray Tube*

26  *(CRT) Antitrust Litig.*, --- F. Supp. 2d ----, 2012 WL 5987861 (N.D. Cal. Nov. 29, 2012) [Dkt.

27  No. 1470]; *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2012 WL 5869588 (N.D. Cal. Nov. 19,

28  2012).  Defendants concede that they are raising this argument solely for the purpose of

1   preserving it for appeal.  Thus, as the Ninth Circuit, this Court, and others have already done, the

2   DAPs respectfully submit that this Court should again reject Defendants' argument and deny

3   their motion to dismiss.

4   **I.    The Special Master Correctly Rejected Defendants' Due Process Argument**

5           Defendants argued in their motion to dismiss that the sole consideration for purposes of

6   due process is the location of the purchase of a price-fixed good.  *See* Defendants' Joint Notice

7   of Motion and Motion to Dismiss and for Judgment on the Pleadings as to Certain Direct Action

8   Plaintiffs' Claims and Memorandum of Law in Support [Dkt. No. 1317] (Aug. 17, 2012)

9   ("Motion") at 16 ("The relevant occurrence or transaction at issue in price-fixing cases, such as

10  this one, is the ***purchase*** of an allegedly price-fixed good.") (emphasis in original).  The DAPs

11  argued in response that the due process analysis is not properly restricted solely to the location of

12  the purchase of a price-fixed good and looks, instead, at "the contacts of the State, whose law [is

13  to be applied], with the parties and with the occurrence or transaction giving rise to the

14  litigation." *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 308 (1981).  Subsequent to briefing on the

15  motions to dismiss, the Ninth Circuit issued a decision addressing this very point.  *AT&T*

16  *Mobility LLC v. AU Optronics Corp.*, 707 F.3d 1106 (9th Cir. 2013), specifically rejected the

17  position that a "single contact—the location of Plaintiffs' injury—[is] dispositive." *Id.* at 1111.

18  *See also id.* at 1111-12 ("Put differently, the district court's place-of-purchase rule represents a

19  return to the 'wooden' and 'now largely abandoned" *lex loci delicti* doctrine—an approach the

20  plurality explicitly rejected in *Allstate*.").

21          In an effort to avoid the dispositive nature of the *AT&T* decision, Defendants now argue

22  that (1) the Special Master did not properly apply the standards articulated by *AT&T* in

23  recommending denial of Defendants' due process arguments; and (2) that the impact of the

24  *AT&T* decision is restricted only to the particular state statute at issue there.  These defense

25  arguments misconstrue the Special Master's Report and are highly improper and misleading.

26          First, the question of whether the DAPs' allegations satisfy the standard articulated in

27  *AT&T* is not before this Court.  The Special Master correctly confined his determination to the

28  issues that were actually briefed.  As noted above, Defendants moved to dismiss on due process

grounds by arguing that jurisdiction is limited "to the laws of the state where the parties negotiated the purchase." R&R at 8.  However, the Special Master correctly found that the Ninth Circuit expressly rejected Defendants' exact due process argument in *AT&T*.  *Id.* at 9.  Because the Ninth Circuit has foreclosed the specific due process argument raised by Defendants, the Special Master correctly "recommend[ed] that this motion to dismiss on due process grounds as framed by defendants must be denied."  *Id.*  The Special Master further noted that if Defendants believe that the DAPs have failed to meet the *AT&T* standard, "those complaints will have to be the subject of later motions by defendants."[1]  *Id.*  This analysis is both straightforward and correct.

Recognizing that their original dismissal arguments lack merit, Defendants now attempt to assert new arguments that the DAPs failed to meet *AT&T*'s pleading standards.  To be clear, these are grounds on which the Defendants have *never* moved to dismiss the DAPs' complaints.[2] But to find fault with the Special Master's ruling by claiming that he misapplied the *AT&T* standard—a standard that the Special Master expressly recognized he was *not* attempting to apply and upon which defendants did *not* move to dismiss—strains credibility and must be rejected.

Second, Defendants claim that the *AT&T* holding is extremely narrow and only applicable to California's Cartwright Act.  This assertion is without merit.  *AT&T* addressed the broad question of when it is constitutionally permissible to apply a particular state's law to a particular cause of action.  *See AT&T*, 707 F.3d at 1110 (due process is directed "not to the existence of the power to impose liability for an injury outside state borders, but to the manner of

---

[1] The Special Master is correct in noting that any arguments under *AT&T* would have to be raised by the Defendants in subsequent motions.  R&R at 9.  However, such motions would be without merit because the DAPs' detailed pleadings are more than sufficient to meet the standards set forth in *AT&T*.  *See, e.g.*, Direct Action Plaintiffs' Opposition to Defendants' Motion to Dismiss and for Judgment on the Pleadings as to Certain Direct Action Plaintiffs' Claims (Sept. 28, 2012) [Dkt. No. 1384] ("DAP Opposition") at 25, nn. 26-28.  *See also* DAPs' February 22, 2013 letter brief [Dkt. No. 1580] (attaching a table of DAP claims, including specific paragraphs addressing due process allegations).

[2] Defendants' February 22, 2013 letter brief [Dkt. No. 1581] likewise sought to deflect attention from the dispositive impact of *AT&T* on their motions to dismiss by attempting to re-frame their argument.  Defendants' conclusory assertions in that letter regarding the DAPs' allegations cannot support the drastic remedy of dismissal.

1    its exercise as being so arbitrary or unreasonable as to amount to a denial of due process").

2    Specifically, *AT&T* addressed whether the "relevant transaction or occurrence" for purposes of

3    an antitrust due process analysis is exclusively the purchase of the price-fixed product (as

4    Defendants argued in their motion) or whether the analysis should encompass a broader set of

5    facts.  *AT&T*, 707 F.3d at 1109-10.  The Ninth Circuit rejected the very argument Defendants

6    made in their motion here, holding that "anticompetitive conduct by a defendant within a state

7    that is related to a plaintiff's alleged injuries and is not 'slight and casual' establishes a

8    'significant aggregation of contacts, creating state interests, such that choice of its law is neither

9    arbitrary nor fundamentally unfair.'"  *Id.* at 1113 (quoting *Allstate Ins. Co. v. Hague*, 449 U.S.

10   302, 312-13 (1981)); *see also id.* at 1112 ("the district court should have considered *all* of the

11   Defendants' conduct within California leading to the sale of price-fixed goods . . . .") (emphasis

12   in original).  While *AT&T* necessarily addressed the particular statute that gave rise to the case or

13   controversy before the court (there, California's Cartwright Act), nothing in the decision

14   suggests that its ruling would or could be restricted solely to that statute.[3]  Indeed, the *AT&T*

15   court relied specifically on due process analyses from other statutes.  *Id.* at 1110-11 (citing

16   *Alaska Packers Ass'n v. Indus. Accident Comm'n,* 294 U.S. 532, 541-42 (1935), which addressed

17   the permissibility of applying California workmen's compensation law to injury sustained in

18   Alaska; and *Allstate,* 449 U.S. at 312-13, addressing permissibility of applying Minnesota

19   insurance law to an accident that occurred in Wisconsin).[4]  Nothing in the *AT&T* decision

20   supports Defendants' extraordinary contention that the constitutional principles discussed therein

21   apply only to a single statute within a single state.

22          In sum, the points on which Defendants moved to dismiss are meritless, and the Special

23   Master correctly recommended that Defendants' due process arguments be denied.  Defendants'

---

[3] The analysis of California's Cartwright Act on which Defendants rest their argument is merely the result of the unremarkable proposition that a due process analysis is informed "in part" by the scope of conduct implicated by that statute. *Id.* at 1110.  Defendants never have advanced any due process arguments about the scope of the particular state statutes at issue here.

[4] As noted above, the Defendants have not properly raised any challenge to the sufficiency of the DAPs complaints under various states' statutes based on *AT&T.  See* R&R at 9. Moreover, any future motions addressing that analysis would be baseless because the DAPs' detailed complaints meet these states' statutes under the *AT&T* standard. *See supra,* footnote 1.

1   attempts to now raise brand new arguments on which they have never moved to dismiss are

2   improper and incorrect, and should be rejected.

3   **II.    The Special Master Correctly Rejected the Defendants' Argument Relating to Prudential Standing**

4

5       The Special Master properly recommended denying Defendants' argument relating to

6   "prudential standing" on the grounds that it is "too broad and generalized, and without a record

7   sufficient to support dismissal of plaintiffs' claims."  R&R at 8.  The Special Master recognized

8   that Defendants "do not demonstrate which of plaintiffs' alleged claims, and under the laws of

9   which states, are allegedly deficient" and that "a ruling solely as a matter of law would not be

10  supported by a record and could well sweep too broadly."  *Id.*

11      The Special Master was correct.  Defendants' motion to dismiss treated prudential

12  standing as nothing more than a throwaway argument, according it only two paragraphs in their

13  original motion to dismiss and a mere four sentences in their reply brief.  Motion at 21-22;

14  Defendants' Joint Reply Memorandum in Support of Motion to Dismiss and for Judgment on the

15  Pleadings as to Certain Direct Action Plaintiffs' Claims (Oct. 26, 2012) [Dkt. No. 1422]

16  ("Reply") at 13.  The DAPs responded appropriately, explaining that the prudential standing

17  argument is merely a rehash of Defendants' due process argument and that it fails for the same

18  reasons.  DAP Opposition at 24, n.25.  Defendants' current assertion—that they referenced an

19  appendix submitted with their motion to dismiss—cannot cure the overly "broad and

20  generalized" nature of the argument on which they base their motion to dismiss literally dozens

21  of state law claims related to the documented price-fixing conspiracy.  R&R at 8.  Again,

22  Defendants appear to be faulting the Special Master for failing to consider an argument that they

23  never raised.  And again, this improper and untenable argument should be rejected.

24      Moreover, Defendants' new claim that the DAPs are not asserting their own legal rights

25  belies logic.  Though Defendants never raised the argument, the Special Master correctly noted

26  that the DAPs "are asserting . . . their own alleged losses."  R&R at 7.  Defendants' argument on

27  this issue—that "[b]ecause the purchase of an allegedly price-fixed good is the relevant

28  occurrence in antitrust cases, only an entity that purchased the alleged price-fixed CRT Products

1   can assert a claim on his own legal right," Defendants' Joint Objections to the Report and

2   Recommendations Regarding Defendants' Motions to Dismiss Direct Action Complaints (May

3   31, 2013) [Dkt No. 1706] ("Def. Objections") at 16—is not only nonsensical, but was rejected on

4   due process grounds in *AT&T*.  *See AT&T*, 707 F.3d at 1110 ("The 'relevant transaction or

5   occurrence' for purposes of a due process analysis is therefore informed, at least in part, by the

6   scope of conduct that gives rise to liability under the relevant [state and federal] statutes.").

7   Moreover, the DAPs' complaints contain detailed allegations of their in-state purchases of price-

8   fixed CRT Products. *See, e.g.*, DAP Opposition at 25, n. 28.

9        Similarly, Defendants claim that the location of a purchase alone determines whether a

10  DAP's claims are within a state's "zone of interests."  This is incorrect.  As the Ninth Circuit

11  noted in *AT&T*, due process invalidates application of a state law "only where the state has no

12  significant contact or significant aggregation of contacts, creating state interests."  707 F.3d at

13  1111 (internal citation omitted).  And again, the DAPs have made detailed allegations regarding

14  the relevant activities in each state, including the location of the DAPs' purchases and

15  Defendants' conspiratorial activities.   For example, DAP Electrograph alleged that it was

16  organized under the laws of California[5] and "purchased CRT Products from Defendants and their

17  co-conspirators in California."  Electrograph Am. Compl. ¶ 251; *see also id*. at ¶ 260 ("Plaintiffs

18  purchased CRT Products from Defendants and their co-conspirators in California; maintained

19  warehouses in California containing CRT Products manufactured and sold by Defendants and

20  co-conspirators; and maintained agents and representatives in California who sold CRT Products

21  to consumers in California and elsewhere.").   Electrograph also alleged that it was organized

22  under the laws of New York and purchased CRT Products in New York.  *Id*. at ¶¶ 269, 273.  The

23  other DAPs made similar factual allegations that clearly are sufficient to satisfy the standard on a

24  motion to dismiss.[6]  *See Ocean Advocates v. U.S. Army Corps of Eng'rs*, 402 F.3d 846, 861 (9th

25

26  [5] In 2006, Electrograph acquired 100% of the outstanding stock of a company (International
    Computer Graphics) that was organized under California law.  *See* Electrograph Am. Compl. ¶¶
    27-28.

27  [6] *See* CompuCom Compl. (No. 11-cv-06396 (N.D. Cal.)) [Dkt. No. 1]  ¶¶ 11, 16, 18, 21, 31, 42,
    47, 49, 59, 61-62, 67, 79, 173-76, 178, 187, 237-39, 242, 254, 256-67; Costco Compl. ¶¶ 12-14,

28  47-48, 53, 142-46; Electrograph Compl. (No. 11-cv-01656 (N.D. Cal.)) [Dkt. No. 1]  ¶¶ 16, 18-
    20, 27, 29, 36, 56, 61, 63, 73, 75, 77, 89, 189-92, 200, 251-53, 256, 260, 266, 269, 271-72, 276-

1  Cir. 2005) (the zone of interest for prudential standing is "not meant to be especially demanding"

2  and is satisfied unless the "interests are so marginally related to or inconsistent with the purposes

3  implicit in the statute" that the legislature necessarily intended to preclude the suit).

4      The Special Master's recommendation with regard to Defendants' prudential standing

5  argument was correct and should be adopted.

6  **III.   The Special Master Correctly Concluded that the DAPs' State Law Claims Are Timely**

7

8      The Special Master applied binding Ninth Circuit precedent in his rejection of

9  Defendants' statute of limitations arguments, ruling that "the question of actual notice or

10  construct[ive] notice would, in this setting, be one of fact."  R&R at 7.  The Special Master was

11  correct.  The Ninth Circuit has repeatedly recognized that, just as the Special Master concluded,

12  allegations of fraudulent concealment, and defense arguments about constructive notice and

13  actual notice, are issues of fact to be decided by the jury.  *See, e.g., Conmar Corp. v. Mitsui &*

14  *Co. (U.S.A.)*, 858 F.2d 499, 503-04 (9th Cir. 1988) (holding that the effect of the existence of a

15  prior related complaint and newspaper articles alluding to defendants' illegal conduct is an issue

16  of material fact to be resolved by the jury, not by the court at the summary judgment stage); *E.W.*

17  *French & Sons, Inc. v. General Portland Inc.,* 885 F.2d 1392, 1400 (9th Cir. 1989) (existence of

18  a prior related lawsuit does not provide constructive notice as a matter of law of defendants'

19  allegedly illegal conduct).

20      Defendants contend that the existence of a single press release by a foreign regulatory

21  agency—a press release which merely announced the commencement of an investigation into

22  unspecified anticompetitive activity by unspecified companies in the CRT industry—constituted

23

24  77, 280; Office Depot Compl. (No. 11-cv-06276-SC (N.D. Cal.)) [Dkt No. 1]  ¶¶ 11, 18, 19, 49, 61-62, 66, 78, 172-75, 177, 186, 244-46, 249; Polaroid Compl. (11-cv-05381 (N.D. Cal.)) [Dkt No. 1]  ¶¶ 4, 8, 9, 11, 18, 21, 189-91, 36, 46, 47, 60, 64, 166, 168, 194; Target Compl. (No. 11-cv-05514 (N.D. Cal.)) [Dkt. No. 1] ¶¶ 14, 16-19, 21, 22, 27, 29, 32-33, 37, 42, 49, 60, 65, 67, 77, 79-80, 85, 191-195, 203; Tweeter Compl. (No. 12-cv-02649 (N.D. Cal.)) [Dkt No. 1] ¶¶ 11, 13, 16, 22, 25, 27, 35, 40, 45, 50, 52, 62-65, 69, 79, 171, 175-78, 180, 189; Best Buy Compl. (No. 11-cv-05513 (N.D. Cal.)) [Dkt No. 1] ¶¶ 11, 13-16, 20-21, 27, 29, 37, 42, 47, 54-57, 61, 81, 176, 180-185, 194, 238; P.C. Richard Compl. (No. 12-cv-02648 (N.D. Cal.)) [Dkt No. 1]  ¶¶ 11, 14-15, 17-18, 21, 24, 27, 29, 37, 42, 47, 52, 54, 64-67, 71, 81, 173, 177-80, 182, 191, 238, 246, 247, 248, 249.  *See also* DAP Opposition at 25, n.28.; DAPs' February 22, 2013 letter brief [Dkt. No. 1580].

1    constructive notice of Defendants' illegal activities *as a matter of law*.  The Special Master

2    correctly rejected this erroneous contention.  Just as the Special Master concluded, the facts

3    underlying Plaintiffs' claims of fraudulent concealment were adequately pled (R&R at 6),[7] and

4    Defendants have *at most* raised an issue of disputed material fact as to the date by which the

5    DAPs acquired constructive notice of Defendants' illegal activities (R&R at 7).

6              **A.  The Fraudulent Concealment Doctrine Applies to the DAPs' Claims**

7               Defendants assert that the fraudulent concealment doctrine does not apply here due to a

8    November 8, 2007 press release by the European Commission announcing that it carried out

9    surprise inspections on unnamed CRT manufacturers as a preliminary measure in investigating

10   potential, unspecified antitrust violations.  Defendants' contention that this announcement gave

11   the DAPs constructive notice of their claims and started the running of the statute of limitations

12   is legally and factually unsupportable.

13              First, Defendants completely ignore unequivocal precedent that fraudulent concealment

14   claims are too fact-intensive to be resolved on a motion to dismiss.  As the Special Master

15   explained in his report, "the question of actual notice or constructive notice would, in this setting,

16   be one of fact . . . [and the] granting of a motion to dismiss on the grounds of constructive notice

17   would therefore not be appropriate under the notice pleading standard for federal Rule 12(b)(6)

18   motions."  R&R at 7.  The Special Master's recommendation comports entirely with the previous

19   holdings in this case, as well as binding Ninth Circuit precedent.  "[I]t is generally inappropriate

20   to resolve the fact-intensive allegations of fraudulent concealment at the motion to dismiss stage

21   . . . ."  *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 738 F. Supp. 2d 1011, 1024 (N.D. Cal.

22   2010) [Dkt. No. 665] (quoting *In re Rubber Chems. Antitrust Litig.*, 504 F. Supp. 2d 777, 789

23   (N.D. Cal. 2007); *In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*,

24   782 F. Supp. 487, 491 (C.D. Cal. 1991) (Tashima, J.) ("Ordinarily . . . 'whether a plaintiff knew

25

26

27
     ───────────────────────────
     [7] By failing to raise objections based upon the adequacy of the DAPs' fraudulent concealment
28   allegations, Defendants concede that these allegations are sufficient to survive a motion to
     dismiss under Rule 12.

1   or should have known of a cause of action presents a question for the trier of fact'"")) (quoting

2   *Volk v. D.A. Davidson & Co.*, 816 F.2d 1406, 1417 (9th Cir. 1987)).[8]

3        Other courts in this Circuit have also recognized that it is inappropriate to resolve

4   fraudulent concealment tolling claims at the motion-to-dismiss stage.  *See, e.g., In re TFT-LCD*

5   *(Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1119-20 (N.D. Cal. 2008) (denying a motion

6   to dismiss based on the statute of limitations and fraudulent concealment tolling as

7   "inappropriate . . . at this stage of the litigation"); *Ward v. Chanana*, No. C 07-06290 JW, 2008

8   WL 5383582, at *5 (N.D. Cal. Dec. 23, 2008) (declining to dismiss a complaint on statute of

9   limitations grounds due to the fact-intensive nature of a fraudulent concealment claim).

10  "'Ordinarily, a defendant has an extremely difficult burden to show that [fraudulent concealment

11  allegations] are barred as a matter of law.'"  *Petroleum Prods.*, 782 F. Supp. at 489 (quoting

12  *Volk*, 816 F.2d at 1417).  In fact, a district court may not even grant *summary judgment* on statute

13  of limitations grounds unless "uncontroverted evidence 'irrefutably demonstrates that a plaintiff

14  discovered or should have discovered [the cause of action] but failed to file a timely complaint.'"

15  *Conmar*, 858 F. 2d at 502 (*quoting Volk*, 816 F.2d at 1417).

16        Second, Defendants mischaracterize the fraudulent concealment doctrine in this Circuit.

17  To establish fraudulent concealment, a plaintiff must allege "that [it] had neither actual nor

18  constructive knowledge of the facts constituting [its] claim for relief."  *In re Rubber Chems.*, 504

19  F. Supp. 2d at 787 (internal quotation omitted).  Thus, even if a plaintiff had knowledge that

20  should have prompted an investigation into a defendant's wrongdoing, the plaintiff does not have

21  constructive knowledge unless that investigation, had it been conducted, would have uncovered

22  the facts establishing the plaintiff's claims.  *Petroleum Prods.*, 782 F. Supp. at 493

23  ("Constructive knowledge exists when a plaintiff 'should have been alerted to facts that,

24  following duly diligent inquiry, could have advised it of its claim.'").  In other words, facts in a

25  plaintiff's possession

26

---

27  [8] The Special Master's recommendation is also consistent with his prior recommendations on motions to dismiss the DPP and IPP class complaints, where he observed that "lack of due diligence and constructive knowledge are <u>factual</u> issues not appropriate for a motion to dismiss."

28  Report, Recommendations and Tentative Rulings Regarding Defendants' Motions to Dismiss (Feb. 5, 2010) [Dkt. No. 597] at 24 (emphasis in original).

DAPS' MOTION TO ADOPT RULINGS FROM R&R
REGARDING DEFENDANTS' MOTION TO DISMISS     - 10 -     Master File No. 3:07-5944-SC
DIRECT ACTION COMPLAINTS     MDL No. 1917

1

2

3

4

> will not amount to constructive knowledge if those facts were not of a type to prompt investigation.  Nor is there constructive knowledge if, even upon investigating, plaintiffs might reasonably be unable to uncover their claims. Further, public access to information does not incontrovertibly establish constructive knowledge of one's claims.  Even where a plaintiff actually knows of public speculation, constructive knowledge cannot be established absent awareness of some evidence tending to support it.

5  *Id.* (citations and quotation marks omitted).

6     Defendants assert that the "governing legal standard" is that "[w]here a plaintiff's

7  suspicions have been or should have been excited, there can be no fraudulent concealment where

8  he could have then confirmed his earlier suspicion by diligent pursuit of further information."

9  Def. Objections at 20 (citing *Conmar*, 858 F.2d at 504-505).   However, Defendants fail to cite

10  the ultimate holding of *Conmar*: Where "there is a genuine issue of material fact whether the

11  facts publicly available were sufficient to excite [plaintiff's] inquiry, then no due diligence need

12  be demonstrated . . . ." *Id.*; *see also Rubber Chems.*, 504 F. Supp. 2d at 788 ("The requirement of

13  diligence is only meaningful, however, when facts exist that would excite the inquiry of a

14  reasonable person.") (citing *Conmar*, 858 F.2d at 504).   Though it is an inquiry beyond the

15  parameters of a motion to dismiss, there is *at most* a material question of fact here concerning

16  whether the European Commission press release was enough "to excite [plaintiffs'] inquiry."

17  Thus, the *Conmar* holding cuts directly against Defendants' assertion that this Court should find

18  that Plaintiffs were put on inquiry notice as a matter of law by the European Commission's

19  announcement.

20     Not even the primary case relied upon by Defendants, *GO Computer, Inc. v. Microsoft

21  Corp.*, 508 F.3d 170 (4th Cir. 2007), supports their contention that the European Commission's

22  press release put the DAPs on inquiry notice.  In *GO Computer*, the court held that it is the

23  "*multiplicity and specificity*" of the information known to a plaintiff, along with "a pattern of

24  particular actions" taken against the plaintiff, that puts a plaintiff on inquiry notice.  *Id.* at 179

25  (emphasis added).   The *GO Computer* court also cautioned against "too sensitive a trigger [that]

26  will have parties rushing to the courthouse at the first hint of suspicion to avoid having their

27  claims go stale." *Id.* at 178.   Yet that is exactly what Defendants contend the DAPs were

28

1  required to do – run to the courthouse as soon as the European Commission announcement was

2  made, despite the inadequate nature of the announcement.  That is not the law in this Circuit.

3      Courts in the Ninth Circuit have repeatedly refused to impute constructive knowledge

4  even when facts relevant to a plaintiff's claims have been publicly disclosed on numerous

5  occasions.  In *Conmar,* for example, the plaintiff alleged that defendants had conspired to import

6  steel products at below-market value.  858 F.2d at 503-505.  Notwithstanding widespread news

7  coverage of a criminal investigation into this conduct, publicly filed criminal court documents,

8  guilty pleas by some of the named defendants, and a prior related lawsuit, the Ninth Circuit

9  refused to grant summary judgment to the defendants, noting that "[c]ases refusing to toll the

10  statute of limitations for fraudulent concealment have required more to find as a matter of law

11  that sufficient facts were available to put the plaintiff on notice of his or her claims."  *Id.* at 503.

12  The court so ruled even though the plaintiff had mentioned some of these disclosures in its own

13  complaint.  *Id.* at 502 ("[Plaintiff's] mention of the pleas in its complaint does not constitute an

14  admission that these pleas put it on constructive notice of its claim.").

15      Similarly, in *Petroleum Products*, Judge Tashima held that a lawsuit alleging price-fixing

16  in the oil industry that had been reported in newspapers and trade journals did not provide

17  constructive notice to plaintiffs who later filed similar claims.  The court explained that "a chain

18  of inferences" would be required to find constructive knowledge on these facts:

19      First, the lawsuit must have been sufficiently similar such that, if meritorious,
       plaintiffs should suspect that they too had a claim for relief.  Second, the lawsuit
20      must have had a legal and factual basis since constructive knowledge cannot be
       premised on a frivolous claim.  Next, plaintiffs must have had reason to know
21      about the lawsuit since . . . the availability of information in the public domain
       does not compel finding constructive knowledge.  Finally, plaintiffs must have
22      been able to determine the suit had merit.

23  782 F. Supp. at 493 (citing *E.W. French & Sons, Inc. v. Gen. Portland Inc.,* 885 F.2d 1392, 1400

24  (9th Cir. 1989); *Conmar,* 858 F.2d at 503–04).  The court refused to make these inferences and

25  held that this statute of limitations issue could not be resolved because the prior lawsuit did "'not

26  irrefutably demonstrate that a plaintiff discovered or should have discovered the cause of action

27  but failed to file a timely complaint.'"  *Id.* at 494 (quoting *Conmar*, 858 F.2d at 502) (alterations

28  omitted).

The *Petroleum Products* court also held that media coverage of the earlier-filed lawsuit failed to establish constructive knowledge as a matter of law because "[t]he small handful of articles here pales in comparison to the preeminence of the major, nationally-distributed magazine and newspapers involved in the *Conmar* case," where the court had refused to find constructive knowledge. *Id.* at 495 ("In *Conmar*, the Ninth Circuit refused to impute constructive knowledge as a matter of law where an indictment covering the same subject matter as the plaintiffs' complaint was covered by 'two articles in the San Francisco Chronicle . . . [,] The Los Angeles Times . . . [,] The New York Times . . . Business Week and the San Jose Mercury–News.' Further, a pre-indictment investigation identifying the exact violations complained of by the Plaintiffs were mentioned in 'one San Francisco Chronicle article . . . [and] one Wall Street Journal article.'") (quoting *Conmar*, 858 F.2d at 500–01).

Moreover, in *Petroleum Products* the court concluded that a long-running federal investigation into the oil industry also failed to provide constructive notice to the plaintiffs, even after the *San Francisco Examiner* reported that both the DOJ and the FTC were investigating price-fixing allegations in the industry in at least seven states. *Id.* at 497. The court explained, "[w]hether plaintiffs should have realized that an investigation of their own was warranted, following up on 10 years of multiple federal grand jury investigations without a single indictment being returned, and whether they should have uncovered wrongdoing of the type they currently are complaining about is an issue for the jury." *Id.*

Other federal courts around the country likewise have found that isolated public disclosures of facts relevant to a plaintiff's claims—including media reports, press releases by government agencies, criminal prosecutions, or civil lawsuits—generally fail to establish constructive knowledge as a matter of law. *See, e.g.*, *In re Processed Egg Prods. Antitrust Litig.*, No. 08-md-02002, 2011 WL 5980001, at *8 (E.D. Pa. Nov. 30, 2011) ("Whether a reasonable plaintiff would be expected to read regional newspapers or egg industry publications . . . is simply not a question that can be resolved at this stage of the case because the answer would require looking to matters extraneous to the [complaint]"); *In re Bulk Extruded Graphite Prods. Antitrust Litig.*, No. 02-6030, 2007 WL 1062979, at *4 (D.N.J. Apr. 4, 2007) (denying summary

1    judgment because although "Defendants point to numerous industry and government press
2    releases, wire service stories, and newspaper articles that discuss an ongoing Department of
3    Justice investigation into pricing practices in the graphite industry and litigation brought by the
4    government and private parties against corporations in that industry (including certain of the
5    defendants) . . . . Only one wire service story and two SEC filings state that [a defendant] had
6    been served subpoenas for documents relating to . . . bulk graphite"); *In re Sumitomo Copper
7    Litig.*, 120 F. Supp. 2d 328, 346-47 (S.D.N.Y. 2000) (plaintiffs alleging manipulation of copper
8    prices sufficiently pleaded fraudulent concealment notwithstanding that the London Metal
9    Exchange "took public action and various news reports appeared discussing manipulation of the
10   copper market" before the date when plaintiffs alleged that the concealment stopped).

11          Here, the Special Master correctly determined, in light of the clear precedent on the issue,
12   that the press release from the European Commission did not trigger an inquiry obligation on the
13   part of the DAPs into an antitrust violation under either federal law or the various state laws in
14   the United States.   The press release disclosed that the European Commission was merely
15   *looking into* a violation of Article 81 of the European Commission Treaty, which prohibits
16   anticompetitive and collusive conduct that occurs *outside* of the United States.   *See* Consolidated
17   Version of the Treaty Establishing the European Community art. 81, 2006 O.J. C 321 E/37, at
18   E/73-74.   Moreover, although Article 81 prohibits a host of activities, including price-fixing,
19   capacity restraints, market allocation, price discrimination, and tying, the European Commission
20   press release did not identify which category of illegal conduct it was investigating.   In other
21   words, the press release concerned (i) a "preliminary step," (ii) in a foreign investigation, (iii)
22   into unspecified violations of foreign law, (iv) against unnamed companies, (v) whom the press
23   release expressly stated should not be presumed to have engaged in anti-competitive conduct.

24          This barebones press release did not provide the DAPs with *any* knowledge—let alone
25   constructive knowledge—of the facts underpinning the elements of the DAPs' claims, because
26   the press release did not inform the reader of:

27   • Whether a conspiracy, combination, or contract even existed.   *See Bell Atl. Corp. v.
     Twombly*, 550 U.S. 544, 556 (2007) (In order to state a claim under Section 1 of the
28   Sherman Act, a plaintiff must plausibly allege "that an agreement was made.").

- The identities of the companies that were being investigated. *See In re CRT*, 738 F. Supp. 2d at 1019 ("Courts in this district . . . require plaintiffs to make allegations that plausibly suggest that each Defendant participated in the alleged conspiracy.") (internal quotation omitted).

- Whether the conduct impacted United States commerce. *See In re TFT-LCD*, 822 F. Supp. 2d 953, 956 (N.D. Cal. 2011) (The Foreign Trade Antirust Improvement Act ("FTAIA") bars Sherman Act claims based on foreign anticompetitive conduct unless that conduct "has a direct, substantial, and reasonably foreseeable effect on domestic commerce.") (internal quotation omitted); *see also id.* at 958 ("[T]he FTAIA delineates the elements of a successful antitrust claim.") (internal quotation and alterations omitted).

- Whether the conduct related to or affected products that the DAPs purchased. *See In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 516 F. Supp. 2d 1072, 1084 (N.D. Cal. 2007) (a plaintiff seeking money damages for a violation of the Sherman Act "must demonstrate injury—or the fact of damage—to his or her business or property interests, which injury is causally linked to [defendants'] antitrust violation").

Defendants repeatedly point to the fact that one complaint against Defendants was filed soon after the European Commission press release. But Defendants cite no authority whatsoever for the proposition that a complaint from another plaintiff suffices to show that the DAPs had constructive knowledge of their own claims even before the other complaint was filed or publicly available. Defendants' brief is also utterly devoid of authority for the proposition that this Court can determine that the DAPs had constructive notice as a "matter of law" because "other plaintiffs were able to file suit."[9] Def. Objections at 21. In fact, controlling Ninth Circuit authority contradicts Defendants' position. *E.W. French*, 885 F.2d at 1400 ("the existence of [another] lawsuit and [plaintiff's] knowledge of it . . . are not tantamount to actual or constructive knowledge of the price-fixing claim" alleged in the earlier-filed lawsuit). Other federal courts have similarly found that the filing by other plaintiffs of lawsuits against the same defendants is insufficient to "impute either actual or constructive knowledge to a plaintiff as a matter of law." *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 2007 WL 1601491, at *9 (S.D.N.Y. June 4, 2007) (plaintiff's awareness of other lawsuits is just one piece for a court to consider in the "total mix of information available to a plaintiff" and is insufficient to prove notice to a plaintiff as a matter of law).

Accordingly, the Court should adopt the Special Master's recommendation that Defendants' motion to dismiss based upon the statute of limitations be denied.

---

[9] Defendants' citation to *GO Computers* is inapposite as *GO Computers* does not support or even reference this proposition.

**B. The DAPs' Claims Were Further Tolled under the Doctrine of Cross-Jurisdictional Tolling**

The Special Master correctly recommended that Defendants' arguments against the application of cross jurisdictional tolling be rejected.  R&R at 7.[10]  Ignoring well-established precedent, Defendants argue that *American Pipe* tolling does not apply to state law claims.[11]  To the contrary, the *American Pipe* tolling doctrine operates to toll the statute of limitations on many of the DAPs' state law claims.  Moreover, this doctrine applies to the DAPs' state law claims regardless of whether the DAPs had actual or constructive notice of their claims.  *Me. State Ret. Sys. v. Countrywide Fin. Corp.*, 722 F. Supp. 2d 1157, 1166 (C.D. Cal. 2010) ("Other courts have already recognized the distinction between the fraudulent concealment tolling doctrine, which was incorporated into the one-year/three-year structure of the statute of limitations, and *American Pipe* tolling, which is sometimes referred to as 'legal tolling'").

The leading decision to address cross-jurisdictional tolling, *In re Linerboard Antitrust Litig.*, 223 F.R.D. 335 (E.D. Pa. 2004), holds that the doctrine applies when:  (i) there is a strong federal interest in recognizing cross-jurisdictional tolling—which there is "[i]n the antitrust context, [because] declining to adopt cross-jurisdictional class action tolling will invite the filing of numerous protective, duplicative and in many cases, unnecessary, suits by class members that want to consider filing claims under state antitrust law not included in a federal class action complaint," *id.* at 346; (ii) "independent of the federal interest involved, each of the states in question would adopt cross-jurisdictional class action tolling in antitrust class actions filed in federal court," *id.* at 346; and (iii) the tolling would not prejudice Defendants because they "were

---

[10] As the Special Master correctly noted, the Court need not consider the cross-jurisdictional tolling argument if it agrees with the Special Master's Report & Recommendation concerning the application of the fraudulent concealment doctrine to the DAPs' claims.  *See* R&R at 7.

[11] The sole case cited by Defendants, *Sawyer v. Atlas Heating & Sheet Metal Works, Inc.*, 642 F.3d 560, 562 (7th Cir. 2011), does not support this proposition.  In *Sawyer*, the issue was whether the *American Pipe* tolling doctrine applies to toll a federal statute of limitations where one or both lawsuits are filed in state court as opposed to federal court.  The holding in *Sawyer*—that the forum does not matter and that "[f]ederal law determines the tolling effect of a suit governed by a federal statute of limitations" even if one or both lawsuits are originally filed in state court, *Sawyer*, 642 F.3d at 562—is not at issue here, where the only concern is whether *state* statutes of limitations have been tolled.  Quite simply, the holding of *Sawyer* had nothing to do with cross-jurisdictional tolling, *i.e.*, the tolling of *state* law claims by virtue of a *federal* class action suit.  To the extent *Sawyer* addressed the issue of cross-jurisdictional tolling, it explicitly said that cross-jurisdictional tolling may be permissible.  *Id.* at 562 ("[I]t does not follow that any rule or policy prohibits what Atlas Heating calls 'cross-jurisdictional tolling.'")

1    put on notice of the factual predicate for all of the potential antitrust claims," *id.* at 352.

2            Each of these factors is satisfied here with respect to the DAPs' claims under California,

3    Florida, Kansas, Massachusetts, Michigan, Minnesota, New York, and Washington law, because

4    (1) there is a strong federal interest in recognizing cross-jurisdictional tolling; (2) California,[12]

5    Florida,[13] Kansas,[14] Massachusetts,[15] New York,[16] Michigan,[17] Minnesota,[18] and Washington[19]

---

[12] *See Hatfield v. Halifax PLC*, 564 F.3d 1177 (9th Cir. 2009) (applying California doctrine of equitable tolling based on class action filed in other jurisdiction).  Judge Illston read the Ninth Circuit's decision in *Hatfield* to mean that non-residents could not take advantage of California's equitable tolling doctrine.  *TFT-LCD*, 2012 WL 149632, at *3 (N.D. Cal. Jan. 18, 2012).  The DAPs respectfully disagree.  *Hatfield* refused to extend California's equitable tolling doctrine to the non-residents because their claims accrued outside of California and would have been barred by the statute of limitations of the law that governed their claims (there, English law).  *Hatfield*, 564 F.3d at 1189.  As *Hatfield* explained, "California's borrowing statute [] prevents non-residents from prosecuting an action in a California court where such action would be barred under the statute of limitations of the jurisdiction whose law would otherwise govern."  *Id.*  Thus, a non-resident can take advantage of equitable tolling under California law if that plaintiff's claim arose in California.

[13] *See Barneby v. E.F. Hutton & Co.*, 715 F. Supp. 1512, 1528-29 (M.D. Fla. 1989) ("*American Pipe* tolling is properly extended" where Florida state law claims "involve the same 'evidence, memories, and witnesses' as are involved in the putative class action [in Indiana federal court].").

[14] *See Seaboard Corp. v. Marsh Inc.*, 2012 WL 3807681, at *16, *25-*27 (Kan. August 31, 2012) (applying Kansas savings statute on a cross-jurisdictional basis and holding that plaintiff's claim was timely filed because it was a putative plaintiff in a federal class action based on claims arising out of the same conduct, transaction, or occurrence).

[15] *See Arivella v. Lucent Techs., Inc.*, 623 F. Supp. 2d 164, 180 (D. Mass. 2009) (class action tolling should be interpreted liberally with the goal of reducing multiplicity of actions, even if the individual plaintiff's claims are not identical to those asserted in the class complaint).

[16] *Williams v. Dow Chem. Co.*, No. 01-cv-4307, 2004 WL 1348932, at *12 (S.D.N.Y. June 16, 2004) ("New York would likely apply *American Pipe*" in a cross-jurisdictional context).

[17] *See Lee v. Grand Rapids Board of Education,* 148 Mich. App. 364, 384 N.W.2d 165 (MI 1986) ("We conclude … that the federal district court action tolled the operation of the statute of limitations as to plaintiffs' claims pursuant to the Elliott-Larsen Civil Rights Act and the Michigan State Fair Employment Practices Act.").

[18] Cross-jurisdictional tolling applies to Minnesota claims because "[Minnesota] courts would apply the American Pipe class-action tolling rule in a 'cross-jurisdictional' context."  *Jenson v. Allison-Williams Co.*, 1999 U.S. Dist. LEXIS 22170, 18-19 (S.D. Cal. Aug. 23, 1999) (holding that federal class action tolled state law claim under Minnesota Securities Act, and citing to *Carson v. Independent School Dist. No. 623*, 392 N.W.2d 216, 223 (Minn. 1986) and *Bartlett v. Miller and Schroder Municipals, Inc.*, 355 N.W.2d 435, 439-440 (Minn. Ct. App. 1984)).

[19] Although Washington courts have not explicitly decided whether to allow cross-jurisdictional tolling, there is every reason to think that they would.  In Washington, "[e]quitable tolling is appropriate when it would effectuate: 1) the policies underlying the statute, and 2) the purposes underlying the statute of limitations."  *Douchette v. Bethel Sch. Dist. No. 403*, 117 Wash. 2d 805, 812, 818 P.2d 1362, 1365 (1991).  Here, applying cross-jurisdictional tolling would do both.  "The purpose of the Washington [Consumer Protection Act]" is "'to protect the public and foster fair and honest competition.'"  *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 534 (Wash. 1986) (quoting RCW 19.86.920).  Meanwhile, "[t]he policy behind statutes of limitation is protection of the defendant, and the courts, from litigation of stale claims where plaintiffs have slept on their rights and evidence may have been lost or witnesses'

---

1   would each adopt cross-jurisdictional tolling in the circumstances here; and (3) the Defendants

2   were on notice that they could be sued under each of these states' laws when the first DPP class

3   action complaint was filed against them in which the DAPs were members of the class, because

4   that complaint asserted substantially the same claims as the DAPs based on substantially the

5   same allegations of wrongdoing.  *See Crago, Inc. v. Chunghwa Picture Tubes* [Dkt. No. 1] at ¶

6   37 (asserting claims on behalf of "[a]ll persons and entities who purchased CRT Products in the

7   United States directly from one or more defendants").[20]  The statute of limitations was therefore

8   tolled under the doctrine of cross-jurisdictional tolling from November 26, 2007—the date

9   *Crago, Inc. v. Chunghwa Picture Tubes* was filed—until the DAPs filed their complaints.[21]

10          Defendants also take issue with the Special Master's conclusion that factual issues

11  surrounding the *American Pipe* tolling doctrine preclude the Court from making a ruling as a

12  matter of law.  Def. Objections at 21-22; R&R at 7.  The Ninth Circuit has repeatedly held that it

13  is inappropriate at the motion to dismiss stage to determine the applicability of a tolling doctrine

14  that depends on factual questions "not clearly resolved in the pleadings."  *E.g., Supermail Cargo,*

15  *Inc., v. United States*, 68 F.3d 1204, 1207 (9th Cir. 1995); *Cervantes v. City of San Diego*, 5 F.3d

16  1273, 1276 (9th Cir. 1993).  This is such a situation.  The Special Master found that factual

17  disputes exist, and were raised by Defendants, concerning various policies and different states'

18  adoption of *American Pipe* tolling.  The Court should therefore adopt the Special Master's

19  recommendation and deny the motion to dismiss.

20

---

21  memories faded."  *Douchette v. Bethel Sch. Dist. No. 403*, 117 Wash. 2d 805, 813, 818 P.2d
    1362, 1365-66 (1991) (internal quotation marks omitted).  Here, plaintiffs have clearly not slept
22  on their rights and there is no risk of lost evidence or faded memories, as the class actions have
    been proceeding for several years.  And the statutory goal of "fostering fair and honest
23  competition" would in no way be furthered by allowing Defendants to escape claims under
    Washington law.
24  [20] Plaintiffs were still members of this putative class when the direct purchaser plaintiffs filed
    their first consolidated amended complaint on March 16, 2009, asserting direct purchaser claims
25  on behalf of "[a]ll persons and entities who, between March 1, 1995 and November 25, 2007,
    directly purchased a CRT Product in the United States from any defendant or any subsidiary or
26  affiliate thereof, or any co-conspirator."  Dkt. 436 ¶ 85.
    [21] Defendants have acknowledged that the DAPs' New York Donnelly Act claims are not time
27  barred "due to the pendency of the federal CRT investigation."  Def. Objections at 18 n.15.
    However, cross-jurisdictional tolling provides yet another basis on which the DAPs' Donnelly
28  Act claims are timely filed.

1    In sum, the DAPs have adequately alleged that Defendants fraudulently concealed the

2    existence of the conspiracy and that the DAPs had neither actual nor constructive knowledge of

3    their claims until less than four years before filing suit.  Further, the limitations periods on many

4    of the DAPs' claims were also tolled under the doctrine of cross-jurisdictional tolling.   The

5    Special Master's recommendation should be adopted and Defendants' motion to dismiss on

6    statute of limitations grounds should therefore be denied.

7    **IV.    The Special Master Correctly Concluded that the DAPs Have Standing to Pursue
     Their Federal Claims**

8

9    Although Defendants acknowledge that this Court has already ruled that finished product

10   purchasers like the DAPs have standing to pursue federal claims for purchases from entities

11   owned or controlled by conspirators, Def. Objections at 24, they nevertheless moved to dismiss

12   the DAPs' federal claims for lack of standing.  In accordance with this Court's prior ruling on

13   this issue, the Special Master recommended the denial of Defendants' motion.  R&R at 5.

14   Despite the Court's clear ruling on this point, Defendants object to the Special Master's

15   recommendation because they believe that the Court's ruling "is wrong, as a matter of law" and

16   wish to preserve the argument for appeal.   Def. Objections at 24.   There is no basis for

17   Defendants' continued objection on this point.  The Ninth Circuit held in *ATM Fee*, and this

18   Court and others in this district have held, that finished product purchasers have standing to

19   pursue federal claims for purchases from entities owned or controlled by—or that themselves

20   own or control—one or more conspirators.  *ATM Fee*, 686 F.3d at 749; *In re Cathode Ray Tube

21   (CRT) Antitrust Litig.*, --- F. Supp. 2d ----, 2012 WL 5987861 (N.D. Cal. Nov. 29, 2012) [Dkt.

22   No. 1470]; *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2012 WL 5869588 (N.D. Cal. Nov. 19,

23   2012); *see also* DAP Opp. at 6-9.  The law is clear and the DAPs move to adopt the Special

24   Master's recommendation, which correctly applied this Court's prior ruling on this exact issue in

25   recommending the denial of Defendants' motion to dismiss.

26                                        **CONCLUSION**

27   For all of the foregoing reasons, the Special Master's recommendations on due process,

28   prudential standing, and statute of limitations with respect to certain of the DAPs' state law

claims, as well as the Special Master's recommendation on standing with respect to the DAPs' federal claims, should be adopted and Defendants' motion to dismiss on these grounds should be denied.

Respectfully submitted,

DATED:  June 28, 2013          /s/       Philip J. Iovieno
                               William A. Isaacson
                               Jennifer Milici
                               BOIES, SCHILLER & FLEXNER LLP
                               5301 Wisconsin Ave. NW, Suite 800
                               Washington, D.C.  20015
                               Telephone:  (202) 237-2727
                               Facsimile:   (202) 237-6131
                               Email:  wisaacson@bsfllp.com
                               Email:  jmilici@bsfllp.com

                               Stuart Singer
                               BOIES, SCHILLER & FLEXNER LLP
                               401 East Las Olas Blvd., Suite 1200
                               Fort Lauderdale, FL 33301
                               Telephone:  (954) 356-0011
                               Facsimile:   (954) 356-0022
                               Email:  ssinger@bsfllp.com

                               Philip J. Iovieno
                               Anne M. Nardacci
                               BOIES, SCHILLER & FLEXNER LLP
                               10 North Pearl Street, 4th Floor
                               Albany, NY  12207
                               Telephone:  (518) 434-0600
                               Facsimile:   (518) 434-0665
                               Email:  piovieno@bsfllp.com
                               Email:  anardacci@bsfllp.com

                               *Liaison Counsel for Direct Action Plaintiffs and Counsel
                               for Plaintiffs Electrograph Systems, Inc., Electrograph
                               Technologies, Corp., Office Depot, Inc., Compucom
                               Systems, Inc., Interbond Corporation of America, P.C.
                               Richard & Son Long Island Corporation, Marta
                               Cooperative of America, Inc., ABC Appliance, Inc.,
                               Schultze Agency Services LLC on Behalf of Tweeter Opco,
                               LLC and Tweeter Newco, LLC*

1
/s/      _Roman M. Silberfeld_
Roman M. Silberfeld (SBN 62783)
David Martinez (SBN 193183)

2
ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
2049 Century Park East, Suite 3400

3
Los Angeles, CA  90067-3208
Telephone:  (310) 552-0130

4
Facsimile:   (310) 229-5800
Email:  RMSilberfeld@rkmc.com

5
Email:  DMartinez@rkmc.com

6
*Attorneys for Plaintiffs Best Buy Co., Inc, Best Buy*

7
*Purchasing LLC, Best Buy Enterprise Services, Inc., Best Buy Stores, L.P., Bestbuy.com, L.L.C., and Magnolia Hi-Fi, Inc.*

8

9
/s/      _Kenneth S. Marks_
H. Lee Godfrey

10
Kenneth S. Marks
Jonathan J. Ross

11
Johnny W. Carter
David M. Peterson

12
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100

13
Houston, Texas 77002
Telephone:  (713) 651-9366

14
Facsimile:  (713) 654-6666
Email:  lgodfrey@susmangodfrey.com

15
Email:  kmarks@susmangodfrey.com
Email:  jross@susmangodfrey.com

16
Email:  jcarter@susmangodfrey.com
Email:  dpeterson@susmangodfrey.com

17

18
Parker C. Folse III
Rachel S. Black

19
Jordan Connors
SUSMAN GODFREY L.L.P.

20
1201 Third Avenue, Suite 3800
Seattle, Washington 98101-3000

21
Telephone:  (206) 516-3880
Facsimile:  (206) 516-3883

22
Email:  pfolse@susmangodfrey.com
Email:  rblack@susmangodfrey.com

23
Email:  jconnors@susmangodfrey.com

24
*Attorneys for Plaintiff Alfred H. Siegel, as Trustee of the Circuit City Stores, Inc. Liquidating Trust*

25

26

27

28

DAPS' MOTION TO ADOPT RULINGS FROM R&R
REGARDING DEFENDANTS' MOTION TO DISMISS
DIRECT ACTION COMPLAINTS

- 21 -

Master File No. 3:07-5944-SC
MDL No. 1917

1
/s/        David. J. Burman
David J. Burman
Cori G. Moore
2      Nicholas H. Hesterberg
PERKINS COIE LLP
3      1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
4      Telephone:  (206) 359-8000
Facsimile:  (206) 359-9000
5      Email:  DBurman@perkinscoie.com
Email:  CGMoore@perkinscoie.com
6      Email:  NHesterberg@perkinscoie.com

7      *Attorneys for Plaintiff Costco Wholesale Corporation*

8
/s/        Jason C. Murray
9      Jason C. Murray (CA Bar No. 169806)
CROWELL & MORING LLP
10     515 South Flower St., 40th Floor
Los Angeles, CA 90071
11     Telephone:  (213) 622-4750
Facsimile:  (213) 622-2690
12     Email:  jmurray@crowell.com

13     *Counsel for Plaintiff Target Corp.*

14
/s/        Richard Alan Arnold
15     Richard Alan Arnold
16     William J. Blechman
Kevin J. Murray
17     KENNY NACHWALTER, P.A.
201 S. Biscayne Blvd., Suite 1100
18     Miami, FL 33131
Tel: (305) 373-1000
19     Fax: (305) 372-1861
20     Email: rarnold@knpa.com
Email: wblechman@knpa.com
21     Email: kmurray@knpa.com

22     *Counsel for Sears, Roebuck and Co. and Kmart Corp.*

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

/s/        *Jessica L. Meyer*
Jessica L. Meyer (SBN: 249064)
James M. Lockhart (*pro hac vice*)
James P. McCarthy (*pro hac vice*)
Kelly G. Laudon (*pro hac vice*)
Lindquist & Vennum P.L.L.P.
4200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone:  (612) 371-3211
Facsimile:   (612) 371-3207
Email:  jmeyer@lindquist.com
Email:  jlockhart@lindquist.com
Email:  jmccarthy@lindquist.com
Email:  klaudon@lindquist.com

*Attorneys for Plaintiffs John R. Stoebner, as Chapter 7 Trustee for PBE Consumer Electronics, LLC and related entities; and Douglas A. Kelley, as Chapter 11 Trustee for Petters Company, Inc. and Related Entities, and as Receive for Petters Company, LLC and related entities*