Christopher M. Curran (*pro hac vice*)
ccurran@whitecase.com
Lucius B. Lau (*pro hac vice*)
alau@whitecase.com
Dana E. Foster (*pro hac vice*)
defoster@whitecase.com
White & Case LLP
701 Thirteenth Street, N.W.
Washington, DC  20005
Telephone:  (202) 626-3600
Facsimile:  (202) 639-9355

*Attorneys for Defendants Toshiba Corporation,*
*Toshiba America, Inc., Toshiba America*
*Information Systems, Inc., Toshiba America*
*Consumer Products, L.L.C., and Toshiba America*
*Electronic Components, Inc.*

(Additional objecting defendants and counsel
listed on signature block)

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
(SAN FRANCISCO DIVISION)

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Case No. 07-5944 SC MDL No. 1917 |
| This Document Relates to: *Electrograph Systems, Inc., et al. v. Hitachi, Ltd., et al.*, No. 11-cv-01656; *Stoebner, et al. v. LG Electronics, et al.*, No. 11-cv-05381; *Siegel v. Hitachi, Ltd., et al.*, No. 11-cv-05502; *Best Buy Co., Inc., et al. v. Hitachi, Ltd., et al.*, No. 11-cv-05513; | **DEFENDANTS' JOINT MOTION TO ADOPT PORTIONS OF THE REPORT AND RECOMMENDATIONS REGARDING DEFENDANTS' MOTIONS TO DISMISS DIRECT ACTION COMPLAINTS** Date:            August 23, 2013 Time:            10:00 a.m. Judge:           Hon. Samuel Conti Special Master:  Hon. Charles A. Legge, U.S. District Judge (Ret.) |

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Target Corp, et al. v. Chunghwa Picture Tubes, Ltd., et al.*, No. 11-cv-05514;

*Interbond Corporation of America v. Hitachi, et al.*, No. 11-cv-06275;

*Office Depot, Inc. v. Hitachi Ltd., et al.*, No. 11-cv-06276;

*CompuCom Systems, Inc. v. Hitachi, Ltd., et al.*, No. 11-cv-06396;

*Costco Wholesale Corporation v. Hitachi, Ltd., et al.*, No. 11-cv-06397;

*P.C. Richard & Son Long Island Corporation, et al. v. Hitachi, Ltd., et al.*, No. 12-cv-02648;

*Schultze Agency Services, LLC, et al. v. Hitachi, Ltd., et al.*, No. 12-cv-02649.

White & Case LLP<br>701 Thirteenth Street, NW<br>Washington, DC 20005

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ...................................................................................................1

ARGUMENT............................................................................................................3

I.  THE REPORT PROPERLY DETERMINED THAT THE DAPS LACK
STANDING IN FIVE STATES AT ISSUE UNDER THE *ASSOCIATED
GENERAL CONTRACTORS* TEST................................................................3

    A.  *AGC* Applies To The DAPs' Claims Under California, Washington,
Arizona, Illinois, And Michigan Law ......................................................4

    B.  Special Master Legge Correctly Determined That The DAPs Who
Only Purchased Finished Products Containing CRTs Did Not Suffer
Antitrust Injury, And Thus Lack Antitrust Standing Under *AGC* ..........9

    C.  Special Master Legge Properly Found The Antitrust Injury Factor To
Be Dispositive To His Analysis...............................................................13

    D.  The DAPs Have Also Failed To Satisfy The Remaining *AGC* Factors ...............14

    E.  The DAPs' Claims Under The Five States At Issue Should Be
Dismissed With Prejudice........................................................................16

II.  THE REPORT CORRECTLY CONCLUDES THAT THE DAPS HAVE
FAILED TO STATE CLAIMS UNDER THE MASSACHUSETTS
CONSUMER PROTECTION ACT ...............................................................17

III.  THE REPORT CORRECTLY CONCLUDES THAT THE DAPS HAVE
FAILED TO STATE A CLAIM UNDER THE WASHINGTON
CONSUMER PROTECTION ACT ...............................................................19

IV.  THE REPORT CORRECTLY CONCLUDES THAT THE POLAROID
PLAINTIFFS' COMMON LAW UNJUST ENRICHMENT CLAIM
SHOULD BE DISMISSED ............................................................................20

V.  THE REPORT CORRECTLY CONCLUDES THAT CIRCUIT CITY'S
CLAIMS FOR RESTITUTION AND UNJUST ENRICHMENT UNDER
CALIFORNIA LAW SHOULD BE DISMISSED..........................................23

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

VI.   THE REPORT CORRECTLY CONCLUDES THAT INDIRECT
      PURCHASERS CANNOT BRING CLAIMS UNDER NEBRASKA AND
      NEVADA LAW FOR PURCHASES THAT PREDATE THE *ILLINOIS
      BRICK* REPEALER STATUTES IN THESE STATES ...............................................26

      A.    The Court Should Dismiss The DAPs' Nebraska Claims For Purchases
            Made Prior To The July 20, 2002 Repealer Amendment.......................................27

      B.    The Court Should Dismiss The DAPs' Nevada Claims For Purchases
            Made Prior To The October 1, 1999 Repealer Amendment...................................29

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                                                                  <u>Page</u>

*Am. Ad Mgmt., Inc. v. Gen. Tel. Co.*,
   190 F.3d 1051 (9th Cir. 1999) ................................................................ 9-10, 14

*Arthur v. Microsoft Corp.*,
   676 N.W.2d 29 (Neb. 2004) ......................................................................28

*Associated Gen. Contractors v. Cal. State Council of Carpenters*,
   459 U.S. 519 (1983)...........................................................................*passim*

*Bhan v. NME Hosp., Inc.*,
   772 F.2d 1467 (9th Cir. 1985) ...............................................................9, 10

*Baker v. Jewel Food Stores, Inc.*,
   823 N.E.2d 93 (Ill. App. 2005)..................................................................7

*Blewett v. Abbott Labs.*,
   938 P.2d 842 (Wash. Ct. App. 1997)...................................................... 12

*Blue Shield of Va. v. McReady*,
   457 U.S. 465 (1982)........................................................................ 10-11

*Bunker's Glass Co. v. Pilkington PLC*,
   75 P.3d 99 (Ariz. 2003) ............................................................................ 6

*Cargill, Inc. v. Monfort of Colo., Inc.*,
   479 U.S. 104 (1986)................................................................................13

*Carter v. Variflex, Inc.*,
   101 F. Supp. 2d. 1261 (C.D. Cal. 2000) .......................................................13

*Castillo v. State*,
   874 P.2d 1252 (Nev. 1994)......................................................................30

*Charles Schwab & Co. v. Bank of Am.*,
   No. 10-4913, 2011 WL 1753805 (N.D. Cal. May 9, 2011)......................................... 24

*Cnty. Of Cook v. Philip Morris, Inc.*,
   817 N.E.2d 1039 (Ill. App. Ct. 2004) .................................................... 4-5, 12

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

*Datel Holdings Ltd. v. Microsoft Corp.*,
   712 F. Supp. 2d 974 (N.D. Cal. 2010) ................................................................. 11

*Dimidowich v. Bell & Howell*,
   803 F.2d 1473 (9th Cir. 1986) ...................................................................... 7-8

*Doe I v. Wal-Mart Stores, Inc.*,
   572 F.3d 677 (9th Cir. 2009) ......................................................................... 25

*Entrialgo v. Twin City Dodge, Inc.*,
   333 N.E.2d 202 (Mass. 1975) ....................................................................... 18

*Estate of Thomas*,
   998 P.2d 560 (Nev. 2000) .............................................................................. 30

*Ferrell v. Wyeth-Ayerst Labs., Inc.*,
   No. 1:01-cv-00447-SBB-TSH (S.D. Ohio July 1, 2004) ............................... 30

*Fontana v. Haskin*,
   262 F.3d 871 (9th Cir. 2001) ........................................................................ 22

*Friedman v. Microsoft Corp.*,
   141 P.3d 824 (Ariz. Ct. App. 2006) ............................................................... 6

*Herskowitz v. Apple, Inc.*,
   No. 12-CV-02131-LHK, 2013 WL 1615867 (N.D. Cal. Apr. 15, 2013) ......... 24, 26

*Ghirardo v. Antonioli*,
   14 Cal. 4th 39 (Cal. 1996) ............................................................................ 24

*Giles v. Gen. Motors Acceptance Corp.*,
   494 F.3d 865 (9th Cir. 2007) .......................................................................... 8

*Illinois Brick Co. v. Illinois*,
   431 U.S. 720 (1977) .................................................................................. 3, 15

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
   738 F. Supp. 2d 1011 (N.D. Cal. 2010) ................................................ 7, 11, 12, 26

*In re DRAM Antitrust Litig.*,
   516 F. Supp. 2d 1072 (N.D. Cal. 2007) .................................................. *passim*

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*In re DRAM Antitrust Litig.*,
   536 F. Supp. 2d 1129 (N.D. Cal. 2008) ...............................................................8, 13, 14

*In re Easysaver Rewards Litig.*,
   737 F. Supp. 2d 1159 (S.D. Cal. 2010)...........................................................................25

*In re Flash Memory Antitrust Litig.*,
   643 F. Supp. 2d 1133 (N.D. Cal. 2009) ...............................................................6, 8, 9, 12

*In re Graphics Processing Units Antitrust Litig.*,
   527 F. Supp. 2d 1011 (N.D. Cal. 2007) ...............................................................4, 5, 9, 16

*In re Graphics Processing Units Antitrust Litig.*,
   540 F. Supp. 2d 1085 (N.D. Cal. 2007) ...............................................................6, 9, 12

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
   No. 11-MD-2262(NRB), 2013 WL 1285338 (S.D.N.Y. Mar. 29, 2013) ...............13, 14

*In re Refrigerant Compressors Antitrust Litig.*,
   No, 2:09-md-02042, 2013 WL 1431756 (E.D. Mich. April 9, 2013) ...................*passim*

*In re Sheedy*,
   480 B.R. 204, 217-18 (Bankr. D. Mass. Sept. 27, 2012)..............................................18

*In re Static Random Access Memory Antitrust Litigation*
   580 F. Supp. 2d 896 (N.D. Cal. 2008) .................................................................20, 22

*In re TFT-LCD Antitrust Litig.*,
   586 F. Supp 2d 1109 (N.D. Cal. 2008) .........................................................................12

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   No. M 07-1827 SI, 2011 WL 3738985 (N.D. Cal. Aug. 24, 2011) ...............................30

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   No. M 07-1827 SI, 2011 WL 4345435 (N.D. Cal. Sept. 15, 2011)..........................24, 26

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   No. M 07-1827 SI, 2012 WL 4808447 (N.D. Cal. Oct. 9, 2012) .................................11

*Jogani v. Superior Court*,
   165 Cal. App. 4th 901 (2008) ..........................................................................21, 22, 23

*Kanne v. Visa U.S.A., Inc.*,
    723 N.W.2d 293 (Neb. 2006) ........................................................................28

*Keilholtz v. Superior Fireplace Co.*,
    No. C-08-00836 CW, 2009 WL 839076 (N.D. Cal. Mar. 30, 2009) ..........................25

*Kona Enters., Inc. v. Estate of Bishop*,
    229 F.3d 877 (9th Cir. 2000) ........................................................................29

*Krotz v. Microsoft Corp.*,
    No. A416361 (Nev. Dist. Ct. June 22, 2000) ....................................................29

*Lectrodryer v. SeoulBank*,
    77 Cal. App. 4th 723 (2000) ....................................................................24-25

*Levine v. Blue Shield of Cal.*,
    189 Cal. App. 4th 1117 (2010) ......................................................................24

*Linton v. New York Life Ins. & Annuity Corp.*,
    392 F. Supp. 2d 39 (D. Mass. 2005) ..............................................................18

*Lorenzo v. Qualcomm, Inc.*,
    603 F. Supp. 2d 1291 (S.D. Cal 2009) ............................................................11

*Lucas v. Bechtel Corp.*,
    800 F.2d 839 (9th Cir.1986) ........................................................................13

*Lucas Auto. Eng'g, Inc. v. Bridgestone/Firestone, Inc.*,
    140 F.3d 1228 (9th Cir. 1998) ........................................................................4

*Luscher v. Bayer AG*,
    No. CV-2004-014835 (Ariz. Super. Ct. Sept. 14, 2005) ..................................5, 6

*McBride v. Boughton*,
    123 Cal. App. 4th 379 (2004) ......................................................................23

*McKay v. Bd. of Supervisors*,
    730 P.2d 438 (Nev. 1986) ........................................................................29-30

*McKenna v. Wells Fargo Bank, N.A.*,
    693 F.3d 207 (1st Cir. 2012) ........................................................................18

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

DEFENDANTS' JOINT MOTION TO ADOPT PORTIONS OF THE REPORT AND RECOMMENDATIONS
REGARDING DEFENDANTS' MOTIONS TO DISMISS DIRECT ACTION COMPLAINTS
Case No. 07-5944 SC
MDL No. 1917

*Martin v. Cnty. of L.A.*,
   51 Cal. App. 4th 688 (1996) ...................................................................25

*Melchoir v. New Line Prods., Inc.*,
   106 Cal. App. 4th 779 (2003) .................................................................23

*Meyer v. Qualcomm Inc.*,
   No. 08cv655 WQH, 2009 WL 539902 (S.D. Cal. Mar. 3, 2009)..................16

*Munoz v. MacMillan*,
   195 Cal. App. 4th 648 (2011) .................................................................23

*Nelson v. Xacta 3000 Inc.*,
   No. 08-5426, 2009 WL 4119176 (D.N.J. Nov. 24, 2009).........................21

*NicSand, Inc. v. 3M Co.*,
   507 F.3d 442 (6th Cir. 2007) ...................................................................9

*O-Regan v. Arbitration Forums, Inc.*,
   121 F.3d 1060 (7th Cir. 1997) ..................................................................5

*Ostrofe v. H.S. Crocker Co.*,
   740 F.2d 739 (9th Cir. 1984) ............................................................10, 11

*Peterson v. Cellco P'ship*,
   164 Cal. App. 4th 1583 (2008) ...............................................................25

*Pooler v. R.J. Reynolds Tobacco Co.*,
   No. CV-00-02674, 2001 WL 403167 (Nev. Dist. Ct. Apr. 4, 2001) ............29

*R.C. Dick Geothermal Corp. v. Thermogenics, Inc.*,
   890 F.2d 139 (9th Cir. 1989) ..................................................................14

*Reliance Ins. Co. v. City of Boston*,
   884 N.E.2d 524 (Mass. App. Ct. 2008) ....................................................18

*Rhynes v. Stryker Corporation*,
   No. 10-5619, 2011 WL 2149095 (N.D. Cal. May 31, 2011)........................26

*Soukop v. Conagra, Inc.*,
   653 N.W.2d 655 (Neb. 2002) ..................................................................28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Stark v. Visa U.S.A., Inc.,*
    No. 03-055030, 2004 WL 1879003 (Mich. Cir. Ct. July 23, 2007) ................................4

*Toscano v. PGA Tour, Inc.,*
    201 F. Supp. 2d 1106 (E.D. Cal. 2002) ....................................................... 13

*Ventress v. Japan Airlines,*
    603 F.3d 676 (9th Cir. 2010) ..................................................................... 17

*Whitesell Int'l Corp. v. Whitaker,*
    No. 05-518716-CZ, 2007 WL 6741070 (Mich. Cir. Ct. July 31, 2007)..........................4

*Wood v. State,*
    892 P.2d 944 (Nev. 1995).........................................................................30

*Zamani v. Carnes,*
    491 F.3d 990 (9th Cir. 2007) ..................................................................... 20

**Statutes**

Ariz. Rev. Stat. § 44-1412...........................................................................5

740 Ill. Comp. Stat. 10/11 (2013) ................................................................5, 7

Mass. G.L. c. 93A, § 9(3)....................................................................... 17, 19

Mich. Comp. Laws Ann. § 445.784 (2012) ......................................................5, 7

Neb. Rev. Stat. § 59-821 ..........................................................................27

Nev. Rev. Stat. Ann. § 598A.210...................................................................29

Nev. Rev. Stat. Ann. § 598A.050...................................................................29

**Legislative History**

L.B. 1278, 97th Leg., 2d Sess. (Neb. 2002) (RJN Ex. A) .......................................27

A.B. 108, 70th Sess. (Nev. 1999) (RJN Ex. D) ..................................................29

**INTRODUCTION**

Pursuant to Rule 53(f)(2) of the Federal Rules of Civil Procedure, the Order Appointing Special Master (Docket No. 302), and the Court's May 9, 2013 Order Granting Stipulation Regarding Special Master's May 2, 2013 Report and Recommendation on Motions to Dismiss Direct Action Complaints (Docket No. 1666) ("Report"), the undersigned Defendants hereby submit their Motion to Adopt Portions of Special Master Legge's Report.

*First*, the Report was correct in recommending that the Court dismiss the DAPs' claims for lack of antitrust standing under the laws of California, Washington, Arizona, Illinois, and Michigan. The Defendants made a *prima facie* showing of the application of the principles of *AGC* to the laws of the five states raised in this motion. Furthermore, to the extent any of the DAPs seek recovery for purchases of finished products that merely incorporate CRTs, as opposed to standalone CRTs, they cannot satisfy *AGC*'s antitrust injury requirement. Special Master Legge correctly determined that he did not need to address the additional deficiencies regarding the DAPs' compliance with *AGC*'s requirements and the DAPs' claims under the relevant five states should be dismissed without leave to amend, as any amendment would be futile.

*Second,* the Report was correct in recommending that the Court dismiss the DAPs' claims under the Massachusetts Consumer Protection Act. The Court has, on two different occasions, properly dismissed claims for failure to comply with the requirements of the Massachusetts Consumer Protection Act, and the DAPs fail to provide any legitimate reason for this Court not to do so again. The DAPs have failed to provide the required written demand letters 30 days prior to filing a complaint, as required by the statute.

*Third*, the Report was correct in recommending that the Court dismiss the DAPs' claims under the Washington Consumer Protection Act. The case law interpreting the Washington Consumer Protection Act has never permitted an indirect purchaser to attain direct purchaser standing by utilizing any of the federal *Illinois Brick* exceptions, as the

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1  DAPs suggest.   Therefore, the Court should reject the DAPs' invitation to broaden the

2  standing requirements under the Washington Consumer Protection Act.

3  **Fourth**, the Report was correct in recommending that the Court grant the Defendants'

4  motion to dismiss the Polaroid Plaintiffs' claim for unjust enrichment.   The Polaroid

5  Plaintiffs have not alleged an unjust enrichment claim under the laws of any particular state

6  or states in their complaint.   They thus fail to meet the pleading requirements of Rule 8(a)(2)

7  of the Federal Rules of Civil Procedure of making a "short and plain statement of the claim."

8  The Report correctly recognized that the Polaroid Plaintiffs must, at a minimum, identify the

9  state law(s) under which their unjust enrichment claim arises, rather than leave the Court and

10  the Defendants to surmise which state law(s) they wish to invoke.

11  **Fifth**, the Report was correct in recommending that the Court grant the Defendants'

12  motion to dismiss Circuit City's California claim for unjust enrichment.   The majority rule in

13  California is that no freestanding cause of action for unjust enrichment exists under

14  California law, which has also been recognized by the Northern District of California and

15  other courts.   Circuit City has adequate legal remedies at law under the California Cartwright

16  Act and Unfair Competition Law, so equitable remedies are not available to it.   As this Court

17  has held, equitable relief is unavailable to a plaintiff where an adequate remedy at law may

18  exist, even at the early stages of the litigation.   Thus, the Report was correct in

19  recommending that Circuit City's claim for unjust enrichment under California law be

20  dismissed.

21  **Sixth**, the Report was correct in recommending that the Court dismiss with prejudice

22  the DAPs' claims under Nebraska and Nevada law based on purchases predating those states'

23  *Illinois Brick* repealer amendments.   Prior to the 2002 *Illinois Brick* repealer, Nebraska's

24  antitrust statute did not allow indirect purchasers to sue for damages.   Furthermore,

25  Nebraska's *Illinois Brick* repealer does not apply retrospectively.   Therefore, the DAPs'

26  claims under Nebraska's antitrust statute based on purchases made before July 20, 2002 (the

27  date the repealer amendment became effective) should be dismissed.   Similarly, Nevada

28  courts would not have allowed indirect purchasers to sue under Nevada's Unfair Trade

Practices Act before its 1999 *Illinois Brick* repealer amendment and the repealer amendment does not apply retroactively to claims that accrued before its effective date of October 1, 1999. The Report thus correctly recommends the dismissal of claims by the DAPs under the Nevada statute based on purchases made before October 1, 1999.

For the above reasons, and as more fully discussed below, these recommendations should be adopted and the Defendants' motion to dismiss on these grounds should be granted.

## ARGUMENT

**I.    THE REPORT PROPERLY DETERMINED THAT THE DAPS LACK STANDING IN FIVE STATES AT ISSUE UNDER THE *ASSOCIATED GENERAL CONTRACTORS* TEST**

Special Master Legge's recommendation that the Court dismiss the DAPs' claims for lack of antitrust standing under the laws of California, Washington, Arizona, Illinois, and Michigan was correct and should be adopted. While those five states have repealed the categorical bar against indirect purchaser suits established in *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), the DAPs must still demonstrate that they have "antitrust standing for a particular claim" under the test articulated in *Associated Gen. Contractors v. Cal. State Council of Carpenters*, 459 U.S. 519, 537-544 (1983) ("*AGC*"), which is an "analytically distinct" issue. *See, e.g.*, *In re DRAM Antitrust Litig.*, 516 F. Supp. 2d 1072, 1087 (N.D. Cal. 2007) ("*DRAM I*"); *Illinois Brick*, 431 U.S. at 728 n.7. As Special Master Legge properly recognized, "AGC is a separate principle developed by the United States Supreme Court," Report at 10, setting forth a threshold requirement that every antitrust plaintiff must satisfy. *AGC*, 459 U.S. at 535 n.31.

The DAPs have objected to Special Master Legge's Recommendation on two principal bases. First, they assert that Special Master Legge erred in applying *AGC* under Arizona, Illinois, and Michigan law (conceding that it does apply under California and Washington law — the other two states at issue). Second, they contend that even if *AGC* does apply, they have established antitrust standing under the *AGC* factors, which include:

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

1   "(1) the nature of the plaintiff's alleged injury; that is, whether it was the type the antitrust

2   law were intended to forestall [antitrust injury]; (2) the directness of the injury; (3) the

3   speculative measure of the harm; (4) the risk of duplicative recovery; and (5) the complexity

4   in apportioning damages." *Lucas Auto. Eng'g, Inc. v. Bridgestone/Firestone, Inc.*, 140 F.3d

5   1228, 1232 (9th Cir. 1998) (internal citations omitted); *AGC*, 459 U.S. at 538-545.   The

6   DAPs further contend that Special Master Legge should have analyzed each of the factors in

7   determining that the DAPs lacked antitrust standing, rather than find the DAPs' lack of

8   antitrust injury dispositive.   As detailed below, the DAPs are wrong on all counts, and

9   Special Master Legge's well-reasoned recommendation should be adopted.

   A.   ***AGC* Applies To The DAPs' Claims Under California, Washington, Arizona, Illinois, And Michigan Law**

12   The DAPs do not contest Special Master Legge's finding that *AGC* applies to their

13   claims under California and Washington law.   *See* DAPs' Objections to Report and

14   Recommendation Regarding Defendants' Joint Motion to Dismiss Direct Action Complaints

15   at 5-6 (Dkt. No. 1708) (May 31, 2013) ("DAPs' Br.").   They maintain, though, that Special

16   Master Legge erred by also applying the *AGC* test under Arizona, Illinois, and Michigan law.

17   *Id.*   The DAPs rely upon other cases in this district that have stated that it would be "wrong"

18   for a court "in *ipse dixit* style . . . to pronounce a blanket and nationwide revision of all state

19   antitrust laws."   *Id.* at 6 (citing *In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp.

20   2d 1011, 1026 (N.D. Cal. 2007) ("*GPU I*")).   Special Master Legge did no such thing,

21   however, and the Defendants have never advocated such a position.   Rather, the Defendants

22   have moved narrowly only as to five of the seventeen states at issue in the DAPs' complaints,

23   and only as to those states that have either (i) expressly applied *AGC* in determining antitrust

24   standing under state law;[1] or (ii) enacted harmonization provisions stating that their states'

---

[1]   ***Michigan***:  *Stark v. Visa U.S.A., Inc.*, No. 03-055030, 2004 WL 1879003, at *2-4 (Mich. Cir. Ct. July 23, 2007) (applying *AGC* and holding that indirect plaintiff's "derivative and remote injuries" do not support a finding of antitrust standing); *Whitesell Int'l Corp. v. Whitaker*, No. 05-518716-CZ, 2007 WL 6741070 (Mich. Cir. Ct. July 31, 2007) ("The court must also consider the five factors set forth in [*AGC*] . . ."); ***Illinois***:  *Cnty. Of Cook v.*

antitrust statutes be construed in accordance with federal law (*e.g.*, with *AGC*).[2]  Based upon this authority, Special Master Legge appropriately concluded that the Defendants "ma[d]e a *prima facie* showing of the application of the principles of *AGC* to the laws of the five states raised in this motion."  Report at 11.

The Defendants' *prima facie* showing continues to stand essentially unrebutted, as the DAPs have once again failed to provide the Court with any relevant contrary case law from the jurisdictions at issue with respect to antitrust standing.  *See* Report at 11 (noting that "Plaintiffs' opposition provides little discussion of the issues" surrounding the application of *AGC* to the laws of the states at issue).  This is a critical omission, for as the DAPs themselves recognize, "[s]tanding under each state's antitrust statute is a matter of that state's law."  DAPs' Br. at 6 (citing *GPU I*, 527 F. Supp. 2d at 1026).  As was the case in briefing before Special Master Legge, however, the DAPs provide no authority at all from either Michigan or Illinois in which a state court has rejected *AGC*.  And while the DAPs cite two

---

*Philip Morris, Inc.,* 817 N.E.2d 1039, 1045 (Ill. App. Ct. 2004) (citing *AGC* in applying the "direct injury" doctrine); *see also O-Regan v. Arbitration Forums, Inc.*, 121 F.3d 1060, 1066 (7th Cir. 1997) ("Federal antitrust standing rules apply under the Illinois Antitrust Act"); **Arizona:** *Luscher v. Bayer AG*, No. CV-2004-014835 at 1-2 (Ariz. Super. Ct. Sept. 14, 2005) (RJN, Ex. G) (citing Arizona's harmonization provision and applying an *AGC* analysis to claims under the Arizona Antitrust Act).  The Defendants provided similar authority to Special Master Legge in both California and Washington, which the DAPs no longer contest.  *See* Defendants' Joint Notice of Motion and Motion to Dismiss and for Judgment on the Pleadings as to Certain Direct Action Plaintiffs' Claims and Memorandum of Law in Support (Dkt. No. 1317) (Aug. 17, 2012) at 24.

[2] **Michigan**:  Mich. Comp. Laws Ann. § 445.784 (2012) ("It is the intent of the legislature that in construing all sections of [the Michigan Antitrust Reform Act], the courts shall give due deference to interpretations given by the federal courts to comparable antitrust statutes . . . ."); **Illinois**:  740 Ill. Comp. Stat. 10/11 (2013) ("When the wording of this Act is identical or similar to that of a federal antitrust law, the courts of this State shall use the construction of the federal law by the federal courts as a guide in construing this Act"); **Arizona**:  Ariz. Rev. Stat. § 44-1412 (courts applying the Arizona Uniform State Antitrust Act "may use as a guide interpretations given by the federal courts to comparable federal antitrust statutes"); *see also Luscher*, No. CV-2004-014835, at 1 (RJN, Ex. G) (citing the federal guidance clause in the Arizona Antitrust Act as its sole justification for relying upon an *AGC* analysis).

---

DEFENDANTS' JOINT MOTION TO ADOPT PORTIONS OF THE REPORT AND RECOMMENDATIONS
REGARDING DEFENDANTS' MOTIONS TO DISMISS DIRECT ACTION COMPLAINTS
Case No. 07-5944 SC
MDL No. 1917

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

1    Arizona state cases, both merely stand for the unremarkable proposition that Arizona allows

2    actions by indirect purchasers; they do not hold that Arizona courts would not follow the

3    harmonization provision contained in the Arizona Antitrust Act in applying *AGC*.  DAPs' Br.

4    at 5-6 (citing *Bunker's Glass Co. v. Pilkington PLC*, 75 P.3d 99, 106 (Ariz. 2003) and

5    *Friedman v. Microsoft Corp.*, 141 P.3d 824, 828 (Ariz. Ct. App. 2006)).[3]  On the contrary, at

6    least one Arizona case expressly applied *AGC* in dismissing a suit brought against synthetic

7    rubber manufacturers by indirect purchasers of end products containing the synthetic rubber.

8    *See Luscher*, No. CV-2004-014835 (Defendants' Request For Judicial Notice In Support Of

9    Defendants' Joint Motion To Adopt Portions Of The Report and Recommendations

10   Regarding Defendants' Motion to Dismiss Direct Action Complaints ("RJN") Ex. G) ("[*AGC*]

11   provides guidance in resolving the issues in this case.").[4]

12       Because they have no state authority on point, the DAPs continue to maintain that

13   there was not a "clear directive" from the states at issue because the Defendants' cited

14   authority did not all stem from "the state's legislature or highest court."  DAPs' Br. at 5.[5]

---

[3] The Court in *Bunker's Glass* in fact notes that Arizona's appellate courts have consistently regarded federal interpretations as dispositive in interpreting the Arizona Antitrust Act.  75 P.3d at 106.  And, there is merely a passing reference in *Friedman* to class counsel's ability to survive a motion to dismiss.  141 P.3d at 828.  As Special Master Legge noted, variant results regarding antitrust standing can be shaped "by the specific pleadings before [the court] in each case."  Report at 11.  The Court in *Friedman* did not provide any reference to the specific pleadings at issue, or otherwise indicate that Arizona would not apply *AGC* antitrust standing requirements.

[4] The named plaintiff found to lack antitrust standing in *Luscher* is the same plaintiff purportedly representing the Indirect Purchaser Plaintiff class in Arizona in the MDL, Brian A. Luscher.

[5] The cases cited by the DAPs are themselves inconsistent as to what would constitute such "clear directive." *Compare In re Graphics Processing Units Antitrust Litig.*, 540 F. Supp. 2d 1085, 1097 (N.D. Cal. 2007) ("*GPU II*") (requiring express guidance from a state's highest court) *with In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1151 (N.D. Cal. 2009) ("*Flash*") (finding a state's intermediate appellate courts to be binding, absent "convincing evidence that the state's supreme court likely would not follow it.") (emphasis added).

---

DEFENDANTS' JOINT MOTION TO ADOPT PORTIONS OF THE REPORT AND RECOMMENDATIONS
REGARDING DEFENDANTS' MOTIONS TO DISMISS DIRECT ACTION COMPLAINTS
Case No. 07-5944 SC
MDL No. 1917

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

Yet the DAPs do not and cannot explain why state law directly on point, or a state harmonization provision, would not be sufficient.[6]  As Special Master Legge properly found in rejecting this extreme position, "*existing* state law, whether it is by the highest court or by an intermediate court, is the applicable authority."  Report at 11 (emphasis in original); *see also DRAM I*, 516 F. Supp. 2d at 1095 ("While the cases do not emanate from the states' highest courts, they *do* emanate from courts with jurisdictional authority over the individual states in question, which courts are called upon to interpret the individual state laws at issue with more frequency and regularity than this court.").  Indeed, this Court has already looked to intermediate appellate authority in concluding that *AGC* applied under California state law.  *In re Cathode Ray Tube (CRT) Antitrust Litig*., 738 F. Supp. 2d 1011, 1023 (N.D. Cal. 2010).[7]  Special Master Legge's approach is correct because the relevant inquiry is whether the courts of the state at issue would apply *AGC* antitrust standing principles, and if the state's highest state court has not yet decided the issue, a federal court must look for guidance to state intermediate appellate and other court decisions.  *See Dimidowich v. Bell &*

---

[6] While the DAPs acknowledge that Illinois has a harmonization provision, they maintain that federal decisions need only be applied by Illinois courts if they are found "persuasive."  DAPs' Br. at 7 (citing *Baker v. Jewel Food Stores, Inc.*, 823 N.E.2d 93, 101 (Ill. App. 2005)).  Defendants, however, have cited both Illinois law expressly applying *AGC*, *see supra* n.1, as well as the harmonization provision itself, which states that Illinois' courts "shall use the construction of the federal law by the federal courts as a guide in construing" the Illinois Antitrust Act.  See 740 Ill. Comp. Stat 10/11 (2012).  Similarly, Michigan's harmonization provision states that "[i]t is the intent of the legislature that in construing all sections of [the Michigan Antitrust Reform Act], the courts shall give due deference to interpretations given by the federal courts to comparable antitrust statutes . . . ."  Mich. Comp. Laws Ann. § 445.784 (2012).

[7] The DAPs contend that this Court, in ruling on Defendants' motion to dismiss the Indirect and Direct Purchaser Class Complaints, has suggested implicitly that *AGC* does not apply under Michigan and Arizona law by stating that *AGC* did apply in certain other states (*i.e.*, Iowa, Nebraska, and California).  *See* DAPs' Br. at 5 (citing 738 F. Supp. 2d at 1023).  But that decision concerned separate allegations, and did not provide any analysis or reasoning as to why *AGC* might apply in California but not Arizona, Michigan or Illinois (which was not even at issue in the MDL).  As explained herein, courts in each of these three states like California have applied *AGC* principles in determining antitrust standing.

---

DEFENDANTS' JOINT MOTION TO ADOPT PORTIONS OF THE REPORT AND RECOMMENDATIONS
REGARDING DEFENDANTS' MOTIONS TO DISMISS DIRECT ACTION COMPLAINTS
Case No. 07-5944 SC
MDL No. 1917

1    *Howell,* 803 F.2d 1473, 1482 (9th Cir. 1986); *Giles v. Gen. Motors Acceptance Corp.*, 494

2    F.3d 865, 872 (9th Cir. 2007).

3          Indeed, Special Master Legge rightly adopted the well-reasoned, state-by-state

4    analysis conducted by Judge Hamilton in *DRAM I*, 516 F. Supp. 2d at 1084–93, and *In re*

5    *DRAM Antitrust Litig.*, 536 F. Supp. 2d 1129, 1135 (N.D. Cal. 2008) ("*DRAM II*").  Notably,

6    in making this state-by-state determination, Judge Hamilton specifically applied *AGC* to

7    claims brought under Michigan and Arizona law, just as Special Master Legge did.  *See*

8    *DRAM I*, 516 F. Supp. 2d at 1095.  And, belying the DAPs' claims that *DRAM* is an

9    "outlier," *see* DAPs' Br. at 7, a federal court in Michigan itself recently surveyed the case

10   law and endorsed the approach to this issue taken by Judge Hamilton (and Special Master

11   Legge here), dismissing indirect purchaser plaintiffs' state law claims for failure to

12   demonstrate antitrust standing, including under Arizona, California, and Michigan state law

13   (*i.e.*, three of the five states at issue here).  *See In re Refrigerant Compressors Antitrust Litig.*,

14   No., 2:09-md-02042, 2013 WL 1431756, at **8–10 (E.D. Mich. April 9, 2013) (finding

15   *DRAM I* to be "the most persuasive of the decisions relied on by the parties," and holding

16   that *AGC* should apply to those states that have "trial court and appellate court decisions"

17   applying *AGC*, and/or that have "harmonization provisions").  The district court in Michigan

18   is particularly well-situated to determine that *AGC* should apply as a matter of Michigan law,

19   and thus should be accorded significant weight.

20         The DAPs, by contrast, rely upon a few decisions from this district, including *In re*

21   *Flash,* in which "neither party ha[d] provided the Court with the requisite, individualized

22   analysis on a per state basis to enable the Court" to "predict[ ] how a state's highest court

23   would rule regarding the applicability of *AGC* to state law antitrust claims."  *Flash*,

24   643 F. Supp. 2d at 1153.  As a result, the *Flash* Court "decline[d] to undertake the back-

25   breaking labor involved in deciphering the state of antitrust standing in each of those states

26   on this motion [including Arizona and Michigan]."  *Id.*  Because the *Flash* Court was not

27   provided with the type of "individualized" authority set forth herein, it is misleading for the

28   DAPs to contend that *Flash* "declined to find that *AGC* applied to*, inter alia*, Arizona and

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1   Michigan claims."  DAPs' Br. at 6.  Moreover, the few decisions from this District that have

2   been "reticent" to apply the *AGC* test on a state-by-state basis did not pronounce a general

3   rule that *AGC* does not apply under state law.  *See, e.g.*, *Flash*, 643 F. Supp. 2d at 1150-53.

4   One of these courts simply chose to put off the issue, and later noted that "[i]t may yet prove

5   correct to apply the [*AGC*] test."  *GPU II*, 540 F. Supp. 2d at 1097; *see also GPU I*, 527 F.

6   Supp. 2d at 1026.  The proper approach, however, is to decide *AGC* now, as standing is a

7   threshold issue of antitrust pleading.  *See AGC*, 459 U.S. at 521; *NicSand, Inc. v. 3M Co.*,

8   507 F.3d 442, 450 (6th Cir. 2007) ("[A]ntitrust standing is a threshold, pleading-stage inquiry

9   . . . ."); *In re Refrigerant Compressors*, 2013 WL 1431756 at *11 (same).

10          At bottom, Special Master Legge was correct in relying upon the individualized,

11   state-by-state authority cited by the Defendants, which provides more than sufficient

12   evidence that *AGC* applies to the DAPs' claims under Arizona, Michigan, and Illinois law —

13   in addition to California and Washington, which the DAPs concede.

**B.     Special Master Legge Correctly Determined That The DAPs Who Only
        Purchased Finished Products Containing CRTs Did Not Suffer Antitrust
        Injury, And Thus Lack Antitrust Standing Under *AGC***

16          Special Master Legge also correctly recommended that the DAPs lack antitrust

17   standing for their claims under these five states pursuant to *AGC*.  Specifically, Special

18   Master Legge concluded that as purchasers and retailers of finished products containing

19   CRTs, and not CRTs themselves, the DAPs have failed to plead "antitrust injury"— the first

20   and "most critical" of the *AGC* factors.  Report at 10–11; *Bhan v. NME Hosp., Inc.*, 772 F.2d

21   1467, 1470 n.3 (9th Cir. 1985).  That is because "[t]o meet the requirements of *AGC*,

22   plaintiffs must be participants *in the same allegedly restrained market* in order to prove

23   antitrust injury."  Report at 10 (citing *Bhan*, 772 F.2d at 1470) (emphasis in original).  In

24   concluding that there is a "real market distinction, and hence a real legal distinction,"

25   between the market for finished products (which the DAPs participate in) and the market for

26   CRTs (which they do not participate in), *see id.*, Special Master Legge's recommendation is

27   supported by decades of Ninth Circuit precedent.  *See, e.g.*, *Bhan*, 772 F. 2d at 1470; *Am. Ad*

28   *Mgmt., Inc. v. Gen. Tel. Co.*, 190 F.3d 1051, 1057 (9th Cir. 1999) ("[p]arties whose injuries

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1    . . . are experienced in another market *do not suffer antitrust injury*") (emphasis added).  As

2    Special Master Legge determined, the allegedly restrained market in this case is the market

3    for standalone CRT tubes, and the DAPs do not and cannot purport to be participants in that

4    market, which is fatal to their claims under *AGC*.  Report at 10–11 ("they *must* be in the

5    market for the sale of *CRTs*, *not* the market for the sale of *finished products*") (emphasis

6    added); *see also In re Refrigerant Compressors,* 2013 WL 1431756 at *12 (rejecting

7    "'component theory' of antitrust standing" where plaintiffs participate in a secondary

8    market).

9        Nor have the DAPs shown that their allegations meet either of the categories for

10   market participation enumerated by the Ninth Circuit (*i.e.*, that the televisions and computer

11   monitors bought and resold by the plaintiffs are "reasonably interchangeable," or experience

12   "cross-elasticity of demand," with CRTs).[8]  *See, e.g.*, *Bhan*, 772 F.2d at 1470-71.  Because

13   the DAPs cannot allege either of the two factors for market participation required by the

14   Ninth Circuit, they instead simply allege, without more, that "the market for CRTs and the

15   market for the products into which they are placed are inextricably linked and intertwined

16   because the CRT market exists to serve the CRT Products markets."  *See, e.g.*, P.C. Richard

17   Compl. ¶ 90; CompuCom Compl. ¶ 86; Costco Compl. ¶ 69; Office Depot Compl. ¶ 85;

18   Electrograph Am. Compl. ¶ 96.[9]   While the DAPs appear to contend that the mere

19

20   [8]  The DAPs cannot reasonably allege that CRTs are "reasonably interchangeable" with

21   televisions and computer monitors.  As a matter of common sense, no consumer would
     reasonably view a CRT standing alone as a replacement for a television or computer

22   monitor.  Similarly, the DAPs have not alleged, and could not reasonably allege, that there
     exists "cross-elasticity of demand" between CRTs and televisions or computer monitors.

23   The DAPs cannot logically posit that consumers would purchase stand-alone CRTs if the

24   prices of televisions or computer monitors increased.

25   [9]  The DAPs cannot rely on the narrow reasoning in *Blue Shield of Va. v. McReady*, 457 U.S.

26   465, 483 (1982), or *Ostrofe v. H.S. Crocker Co.*, 740 F.2d 739, 744-47 (9th Cir. 1984), to
     support their conclusory assertion that the CRT market and television/computer monitor

27   markets are "inextricably intertwined."  *McCready* concerned a patient whose insurance
     claims were denied specifically because of allegedly anti-competitive conduct in the

28   relevant market.  Thus, her injury was, in fact, "inextricably intertwined" with the alleged

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1 incantation of the phrase "inextricably linked and intertwined" is sufficient to confer antitrust

2 standing, *see* DAPs' Br. at 8, 11, courts in the Ninth Circuit have squarely held that the

3 "simple invocation of the phrase 'inextricably intertwined' will not allow a plaintiff to avoid

4 the fundamental requirement for antitrust standing that he or she have suffered any injury of

5 the type . . . that the antitrust laws were intended to prevent."[10] *Lorenzo v. Qualcomm, Inc.*,

6 603 F. Supp. 2d 1291, 1301 (S.D. Cal 2009) (internal citations omitted); *Datel Holdings Ltd.*

7 *v. Microsoft Corp.*, 712 F. Supp. 2d 974, 994 (N.D. Cal. 2010) (dismissing plaintiff's claim

8 for lack of antitrust standing despite allegations that the plaintiff's injury "was inextricably

9 intertwined . . . in the primary market," because its "allegations center on its injury in the

10 secondary market, even though Plaintiff attempts to convert spillover effects in the secondary

11 market into an injury in the primary market").

12      Additionally, the DAPs have no basis to argue that the Report "conflicts" with "this

13 Court's prior decision" in an earlier stage of these proceedings with respect to the IPPs. *See*

14 DAPs' Br. at 5, 9-10.  Indeed, the DAPs already made this argument to Special Master

15 Legge, who considered and rejected it.  Report at 10–11; *In re CRT*, 738 F. Supp. 2d at

16 1023–24.  As Special Master Legge cogently explained, "there is a simple reason why that

17 holding is inapplicable to the complaints in these direct action cases.  That is, the complaints

18 that were before your Honor . . . were ones in which *both* cathode ray *tubes* and *finished*

19 *products* were the alleged subjects of the conspiracy."  Report at 10 (emphasis in original).

20 Here, however, the DAPs have withdrawn any allegations of a conspiracy to fix the prices of

21

22 wrongdoing. *McCready*, 457 U.S. at 484.  Here, by contrast, the DAPs' allegations concern
a wholly different market altogether.  And in *Ostrofe*, the plaintiff was an "essential
23 participant in the scheme to eliminate competition," which is not the case here.  740 F.2d at
745-46.
24

25 [10] In support of their bare and unsupported allegations that the market for finished products
is "inextricably linked" with the market for CRTs, the DAPs rely on an inapposite *summary*
26 *judgment* decision in *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI, 2012
WL 4808447 (N.D. Cal. Oct. 9, 2012), in which Plaintiffs were able to "present[] evidence"
27 of such a linkage.  DAPs' Br. at 11.  The DAPs have not and cannot present any such
evidence here.
28

DEFENDANTS' JOINT MOTION TO ADOPT PORTIONS OF THE REPORT AND RECOMMENDATIONS
REGARDING DEFENDANTS' MOTIONS TO DISMISS DIRECT ACTION COMPLAINTS
Case No. 07-5944 SC
MDL No. 1917

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

finished products containing CRTs, and thus the DAPs can no longer benefit from the nebulous allegations that the DAPs purchased "CRT Products," an ambiguous term that plainly does *not* mean just CRTs themselves.  This creates "a clear differentiation between the allegations of these direct action complaints and those that were before Your Honor in the prior [IPP] motion."  Report at 10.

In addition to this fundamental distinction, the allegations in the DAPs' complaint also materially differ from those in the IPP complaint.  In fact, contrary to their claims, the DAPs have *not* "made virtually identical allegations" as the IPPs.  *See* DAPs' Br. at 9.  For example, the DAPs have not alleged that the *cost or price* of standalone CRT tubes are components that "can easily be traced" through relevant distribution channels, or that standalone CRT tubes account for a specific percentage of the cost of manufacturing the finished product.[11]  *Compare* the DAPs' Complaints *with* IPP Compl. ¶ 228–30, 231.  Moreover, two of the states that are the subject of this motion, Illinois and Washington, were not even at issue in the MDL decision.[12]  In short, as Special Master Legge recognized, this

---

[11] The presence of such allegations in the IPP Complaint played an important role in this Court's March 2010 decision; Judge Armstrong's decision in *Flash*; as well as in *LCD* and *GPU*.  *Compare* allegations cited in DAPs' Br. at 13–14 *with In re CRT*, 738 F. Supp. at 1024 (relying upon allegations regarding component percentage cost and price traceability), *Flash*, 643 F. Supp. 2d at 1155 ("the Complaint expressly alleges . . . [t]racing can help show that changes in the prices . . .") (alteration in original), *In re TFT-LCD Antitrust Litig.*, 586 F. Supp 2d 1109, 1123 (N.D. Cal. 2008) ("just as LCD panels can be physically traced through the supply chain, so can their price be traced . . . ."), and *GPU II*, 540 F. Supp. 2d at 1098 ("[P]laintiffs have pleaded that the price of the GPU is traceable . . . .").  The DAPs, though, are analogous to plaintiffs in *DRAM*, where the "complaint set[] forth no allegations that . . . the ultimate cost of the DRAM component is somehow directly traceable and/or distinguishable."  *DRAM I*, 516 F. Supp. 2d at 1092.

[12] Because antitrust standing is predicated on the scope of the individual *Illinois Brick* repealer states' laws, it is dispositive that both Illinois and Washington preclude a finding of antitrust standing in these circumstances.  *See Cnty. of Cook*, 817 N.E. 2d at 1045 (dismissing amended complaint upon finding that plaintiffs had not shown antitrust injury, citing *AGC*); *Blewett v. Abbott Labs.*, 938 P.2d 842 (Wash. Ct. App. 1997) (denying antitrust standing to indirect purchasers).

1    Court's prior holding with respect to the IPP Complaint is "not applicable to the complaints

2    in these direct action cases."  Report at 10–11.

3        Special Master Legge thus correctly found that to the extent any of the DAPs seek

4    recovery for purchases of finished products that merely incorporate CRTs — such as

5    televisions and computer monitors — as opposed to CRTs standing alone, they cannot satisfy

6    *AGC*'s antitrust injury requirement.  These claims should thus be dismissed with prejudice.

7    *See infra* Section I.E.

8        **C.     Special Master Legge Properly Found The Antitrust Injury Factor To Be
9                  Dispositive To His Analysis**

10       Finding the absence of antitrust injury "essential to the analysis," Special Master

11   Legge determined that he need not address "the other deficiencies claimed by Defendants

12   regarding [the DAPs'] compliance with *AGC*'s requirements."  Report at 11.  In claiming that

13   Special Master Legge erred in this regard, *see* DAPs' Br. at 5, the DAPs argue that an

14   antitrust plaintiff may survive a motion to dismiss even in the absence of antitrust injury.

15   The DAPs are wrong.  In fact, it is well-settled that a showing of antitrust injury is *necessary*

16   — although not always sufficient — to establish antitrust standing.  *Cargill, Inc. v. Monfort*

17   *of Colo., Inc.*, 479 U.S. 104, 110 n.5 (1986); *see also DRAM I*, 516 F. Supp. 2d at 1084–85.

18   Consequently, in the absence of a showing of antitrust injury, no further balancing is

19   necessary under *AGC.  See DRAM II*, 536 F. Supp. 2d at 1136 ("[A] plaintiff may only

20   pursue an antitrust action if it can show antitrust injury"); *Toscano v. PGA Tour, Inc.,* 201 F.

21   Supp. 2d 1106, 1116 (E.D. Cal. 2002) ("[T]he absence of antitrust injury is fatal."); *Carter v.*

22   *Variflex, Inc.*, 101 F. Supp. 2d. 1261, 1268 (C.D. Cal. 2000) ("[P]roof of antitrust injury is

23   often a dispositive issue in antitrust litigation."); *In re LIBOR-Based Fin. Instruments*

24   *Antitrust Litig.*, No. 11-MD-2262(NRB), 2013 WL 1285338, at *11 (S.D.N.Y. Mar. 29,

25   2013) (finding that plaintiffs "have not plausibly alleged that they suffered antitrust injury,

26   *thus, on that basis <u>alone</u>*, they lack standing") (emphasis added); *see also Lucas v. Bechtel*

27   *Corp.,* 800 F.2d 839, 844 (9th Cir. 1986) ("The first factor is of tremendous significance.")

28   (internal citation omitted).

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

Indeed, other courts have applied the *AGC* test in the exact manner as Special Master Legge.  In *DRAM II*, for example, Judge Hamilton declined "to pass conclusively on the merits of the remaining *AGC* factors" once she determined that plaintiffs did not establish an antitrust injury, "given the added weight that the court gives the importance of the antitrust injury factor."  *DRAM II*, 536 F. Supp. at 1141 (citing *Am. Ad Mgmt.*, 190 F.3d at 1055); *see also In re LIBOR-Based Fin. Instruments*, 2013 WL 1285338, at *11 (concluding that in the absence of antitrust injury, "[w]e need not reach the [other] *AGC* . . . factors.").  Special Master Legge properly applied the *AGC* test in accord with those courts.

### D.    The DAPs Have Also Failed To Satisfy The Remaining *AGC* Factors

For the above reasons, Special Master Legge did not even need to reach the other *AGC* factors, but the DAPs fail to satisfy them in any event.  With respect to the "directness" of the alleged injury — the second *AGC* factor — the DAPs have not made any allegations to support a "causal connection" between their alleged injury and the anticompetitive conduct that is alleged to have occurred in the separate market for CRT tubes.  *AGC*, 459 U.S. at 537; *R.C. Dick Geothermal Corp. v. Thermogenics, Inc.*, 890 F.2d 139, 147 (9th Cir. 1989).

The DAPs' allegations that "Defendants ensured that price increases for CRTs were passed on to indirect purchasers of CRT Products"[13] merely confirm that the DAPs were participants in a completely different market than the market for the allegedly price-fixed product.  For example, P.C. Richard alleges that "Plaintiffs have participated in the market for CRTs through their direct purchases from Defendants of CRT Products containing price-fixed CRTs and their purchases of CRT Products containing price-fixed CRTs indirectly from non-defendant OEMs and others." P.C. Richard Compl. ¶ 91.  This allegation only proves that any alleged injury was insufficiently direct, since the DAPs *admit* that they are participants in a market for finished products containing CRTs, *not* in the wholly different market for CRTs themselves.  Put together with the DAPs' own admission that there is no conspiracy as to finished products containing CRTs, the DAPs' concession that they

---

[13] *See* CompuCom Compl. ¶ 126; Electrograph Am. Compl.¶ 136; Office Depot Compl. ¶ 125; Circuit City Compl. ¶ 128; Polaroid Compl. ¶ 120; Costco Compl. ¶¶ 108, 184.

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1    participate in a separate market negates their conclusory claim that "Plaintiffs purchased

2    price-fixed goods . . . from Defendants." *Id.* ¶ 83.

3        The DAPs' allegations of injury are also inherently speculative — the third of the

4    *AGC* factors.  As in *AGC*, the claims of any of the DAPs who merely allege a downstream

5    purchase of goods other than CRTs "rest[] at bottom on some abstract conception or

6    speculative measure of harm."  459 U.S. at 543 (internal citations and quotations omitted).

7    The DAPs' naked assertions of pass-on further emphasize the complexity of any pass-on

8    analysis that might be required.  In *DRAM I*, Judge Hamilton explained that where plaintiffs

9    are "in secondary markets in which they purchase the price-fixed product as a component,"

10   they "would need to allege that the secondary market sellers themselves were in an oligopoly

11   and fixing prices, in order to demonstrate non-speculative damages."  *DRAM I*, 516 F. Supp.

12   2d at 1092.  In light of the DAPs' admission that there is no such "secondary market"

13   conspiracy,[14] mere conclusory allegations of "pass-on" are not sufficient to "demonstrate

14   non-speculative damages."  *Id.; see also In re Refrigerant Compressors,* 2013 WL 1431756

15   at *14 ("finished products that contain [CRTs] contain numerous other components, all of

16   which collectively determine the final price paid by retail consumers or 'endpayors.'").  Thus,

17   the DAPs' allegations fail under the third *AGC* factor as well.

18       Finally, the last of the *AGC* factors — "the risk of duplicate recoveries on the one

19   hand" and "of complex apportionment of damages on the other" — also weigh in favor of

20   denying the DAPs standing.  459 U.S. at 543–44.[15]  Purchasers of CRTs themselves — *i.e.,*

21

22

23   [14] *See* CompuCom Compl. ¶ 87; Electrograph Am. Compl. ¶ 97; Office Depot Compl. ¶86;
     Circuit City Compl. ¶ 89.

24
     [15] The DAPs maintain that simply because the states at issue repealed the *categorical* bar on
25   recovery set forth in *Illinois Brick*, 431 U.S. at 720, these states are not concerned about the
     complexity of proving up damages.  DAPs' Br. at 14-15.  A state law plaintiff, though, does
26   not automatically obtain antitrust standing simply by being an "indirect purchaser" in an
     "*Illinois Brick* repealer state."  *See In re Refrigerant Compressors,* 2013 WL 1431756 at
27   *10 (rejecting argument that "repealer jurisdictions simply allow all indirect purchaser
     plaintiff actions to go forward").  Indeed, DAPs' argument ignores that courts in repealer

28

those in the CRT market — are the properly situated parties to bring any claim for damages due to alleged antitrust violations in that market. *See In re Refrigerant Compressors*, 2013 WL 1431756 at *14 ("there can be no dispute that there are more direct victims of the alleged antitrust conspiracy — individuals and entities who directly purchased [CRTs].").  Extending antitrust standing to purchasers of downstream products that merely incorporate CRTs runs the risk of inappropriately doubling the potential plaintiff pool to include parties much further down the distribution and supply chain.  The Supreme Court has also recognized a "strong interest" in "keeping the scope of complex antitrust trials within judicially manageable limits." *AGC*, 459 U.S. at 543-44.  Proving pass-on from a component sale to a finished product sale involves economic issues that are exceedingly complex. *See Meyer v. Qualcomm Inc.*, No. 08cv655 WQH (LSP), 2009 WL 539902, at *7 (S.D. Cal. Mar. 3, 2009); *DRAM I*, 516 F. Supp. 2d at 1092 (noting that damages in a component case "would be difficult to apportion"); *see also GPU I*, 527 F. Supp. 2d at 1026 n.7 ("Further clouding the standing issue is that not all plaintiffs . . . purchased their computers in the same way . . . . This has serious implications for the question of whether or not any overcharges were passed on to the consumer."); *In re Refrigerant Compressors*, 2013 WL 1431756 at *14 (concluding that alleged "indirect injuries would render damages highly speculative and would involve an incredibly complex — if not impossible — apportionment of damages"). The DAPs include conclusory assertions of pass-on but no allegations of traceability of the cost attributable to the component, demonstrating that any damages sought, beyond being inherently speculative, may also result in unreasonably complex apportionment. *Id.*

**E.    The DAPs' Claims Under The Five States At Issue Should Be Dismissed With Prejudice**

The DAPs' claims under the relevant five states should be dismissed for lack of antitrust standing with prejudice and without leave to amend.  Any amendment would be futile since it will be impossible for the DAPs to establish the predicate for antitrust injury,

states routinely apply *AGC in its totality* in finding that indirect purchaser suits may only proceed where plaintiffs' claims are not inherently speculative and unreasonably complex.

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

— *i.e.,* their participation in the market for CRTs, rather than finished products — merely by repleading.  *See*, *e.g.*, *Ventress v. Japan Airlines*, 603 F.3d 676, 680 (9th Cir. 2010) (district courts have discretion to deny leave to amend "when amendment would be futile").  Indeed, the DAPs will not be able to "address the established fact that the [allegedly price-fixed] products are just the CRTs, and that is the market in which [the DAPs] must address their alleged antitrust injury."  Report at 11.  In short, the DAPs cannot cure the absence of antitrust standing by artful pleading alone.

The Defendants thus respectfully request that the Court adopt Special Master Legge's recommendation that the Court dismiss the DAPs' state law claims under the laws of California, Washington, Arizona, Illinois, and Michigan for lack of antitrust standing, and also do so with prejudice.

## II.   THE REPORT CORRECTLY CONCLUDES THAT THE DAPS HAVE FAILED TO STATE CLAIMS UNDER THE MASSACHUSETTS CONSUMER PROTECTION ACT

This Court on two different occasions properly dismissed claims for failure to comply with the requirements of the Massachusetts Consumer Protection Act, and the DAPs fail to provide any legitimate reason for this Court not to do so again.  The DAPs contend that this Court "never ruled substantively on this issue" because the dismissal of previous Massachusetts claims by Special Master Legge was never challenged through the report and recommendation objection process.  The DAPs' straw man argument ignores the fact that the Indirect Purchaser Plaintiffs accepted these rulings when they chose not to challenge them.[16]

A claim under the Massachusetts Consumer Protection Act requires "a written demand for relief" to be served on a defendant "at least thirty days prior to the filing of any such action."  *See* Mass. G.L. c. 93A, § 9(3).   The requirements of this demand are

---

[16] *See* Report, Recommendations and Tentative Rulings Regarding Defendants' Motion to Dismiss (Dkt. No. 597) (Feb. 5, 2010) at 29-30; Order Approving and Adopting Special Master's Report, Recommendations and Tentative Rulings re: Defendants' Motions to Dismiss (Dkt No. 665) (Mar. 30, 2010); Report, Recommendations and Tentative Rulings Regarding Defendants' Joint Motion to Dismiss the Second Consolidated Amended Complaint of the Indirect Purchaser Plaintiffs (Dkt. No. 768) (Sept. 30, 2010) at 12-14.

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

unambiguous and are required for a plaintiff to plead properly a valid cause of action as a matter of law.  *McKenna v. Wells Fargo Bank, N.A.*, 693 F.3d 207, 217-18 (1st Cir. 2012) (demand letter requirement "is not merely a procedural nicety, but, rather, 'a prerequisite to suit'") (citation omitted) (quoting *Entrialgo v. Twin City Dodge, Inc.*, 333 N.E.2d 202, 204 (Mass. 1975)).  The DAPs' objections to the Report never claim that the DAPs' complaints alleged service of the demand letter required under Massachusetts law — nor could they — as no such demand letters were timely served.[17]  Without such an allegation, Special Master Legge correctly dismissed the relevant claims.  *See Linton v. New York Life Ins. & Annuity Corp.*, 392 F. Supp. 2d 39, 42 (D. Mass. 2005) (complaint that "contains no indication or assertion that such demand occurred . . . fails to state a cognizable claim for relief"); *In re Sheedy*, 480 B.R. 204, 217-18 (Bankr. D. Mass. Sept. 27, 2012) (demand letter is "a prerequisite to suit and as a special element must be alleged and proved").

The DAPs once again attempt to avoid this bright-line rule by referring to exhibits that they attached to their Opposition to Defendants' Motion to Dismiss.[18]  This tactic fails for three reasons.  First, the Defendants' Motion to Dismiss was limited to the pleadings and any reliance on facts outside the four corners of the DAPs' complaints would be improper. *See Reliance Ins. Co. v. City of Boston*, 884 N.E.2d 524, 528 (Mass. App. Ct. 2008) (court's inquiry limited to four corners of complaint, "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint.").  Second, even if the Court were to consider these exhibits (which it should not), the demand letters were not issued "prior to filing" the complaints, as the DAPs state.  The demand letters attached to the DAPs' Opposition were instead sent to defendants on November 14, 2011 — the *same day* the complaints were filed — rather than 30 days *before* the complaint as the Massachusetts

---

[17] *See* Target Am. Compl ¶ 274(a)-(f) (no allegation of a demand letter being sent to any defendant); Tweeter Compl. ¶¶ 238-245 (same).

[18] *See* Declaration of Philip J. Iovieno in Support of Direct Action Plaintiffs' Opposition to Defendants' Joint Motion to Dismiss and For Judgment on the Pleadings (Dkt. No. 1384-1) and exhibits thereto (Dkt. No. 1384-2).

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

statute requires.  *See* Mass. G.L. c. 93A, § 9(3) ("At least thirty days prior to the filing of any such action, a written demand for relief . . . shall be mailed or delivered to any prospective respondent.").  Third, many of the demand letters are deficient on their face.  For example, the demand letters sent to the Philips Defendants were sent to an incomplete and undeliverable address:  "Philips Electronics North America Corporation, 1251 Avenue of the Americas, NY, NY 0."[19]  It should come as no surprise to the DAPs that "Defendants never responded" since the DAPs failed to send their tardy demand letters to a valid address. Because the DAPs did not allege and, in fact, failed to send a valid demand letter 30 days prior to filing a complaint as required under the Massachusetts Consumer Protection Act, the Report correctly dismissed the DAPs' Massachusetts claims without leave to amend.

### III.   THE REPORT CORRECTLY CONCLUDES THAT THE DAPS HAVE FAILED TO STATE A CLAIM UNDER THE WASHINGTON CONSUMER PROTECTION ACT

The Court should adopt Special Master Legge's recommendation that the DAPs' claims under Washington law be dismissed without leave to amend.  The DAPs make the remarkable assertion that "the parties agree and the Special Master acknowledges that Washington courts generally follow federal court interpretations of the *Illinois Brick* rule." DAPs' Br. at 19.  As support for this contention, the DAPs cite only to Special Master Legge's Report and provide no Washington case law.  Special Master Legge's Report, however, does not support the DAPs' assertion and instead concludes that "the law is clear that indirect purchasers are barred from bringing their own action by *Illinois Brick* . . . [and] Washington law does not authorize private indirect purchasers to initiate suit."  Report at 12. The Defendants and Washington courts do not agree that "Washington courts generally follow federal court interpretations of the *Illinois Brick* rule," DAPs' Br. at 19, as case law interpreting the Washington Consumer Protection Act has never permitted an indirect purchaser to attain direct purchaser standing by utilizing any of the federal *Illinois Brick*

---

[19] *See* Exhibits 18-21; *see also* LG Defendants - Exhibits 10-12 (no zip code); Panasonic Defendants - Exhibits 14-17 (same); Samsung SDI Co., Ltd. - Exhibit 24 (same), Toshiba America Information Systems, Inc. - Exhibit 36 (same).

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1  exceptions.   The Court should reject the DAPs' invitation to broaden the standing

2  requirements under the Washington Consumer Protection Act, as neither the Washington

3  legislature nor any Washington court has ever provided that the *Illinois Brick* exceptions are

4  applicable to the Washington Consumer Protection Act.   Therefore, the Court should adopt

5  Special Master Legge's recommendation and dismiss the DAPs' Washington Consumer

6  Protection Act claims with prejudice.[20]

7  **IV.   THE REPORT CORRECTLY CONCLUDES THAT THE POLAROID**

8  **PLAINTIFFS' COMMON LAW UNJUST ENRICHMENT CLAIM SHOULD BE DISMISSED**

9       Special Master Legge appropriately recommends dismissing the Polaroid Plaintiffs'

10  common law claim for unjust enrichment because the Polaroid Plaintiffs have not invoked

11  the unjust enrichment laws of any particular state.   Report at 12; Polaroid Compl. ¶¶ 212-

12  215.   A plaintiff must indicate in a complaint which state's or states' laws the plaintiff is

13  relying upon to allege a claim for unjust enrichment.   In *In re Static Random Access Memory*

14  *Antitrust Litigation* ("*SRAM*"), the court held that the plaintiffs' failure to identify which

15  state's or states' common law supported the plaintiffs' claims "deprives Defendants of

16  adequate notice of the claims."   580 F. Supp. 2d 896, 910 (N.D. Cal. 2008).   In that case, the

17  court dismissed the Plaintiffs' claim for unjust enrichment, reasoning that, "until Plaintiffs

18  indicate which States' laws support their claim, the Court cannot assess whether the claim

19  has been adequately plead."   *Id.*   The complaint at issue in *SRAM* was similar to the Polaroid

20  Plaintiffs' complaint because it brought claims under the laws of specific states, but it did not

21  indicate under which of those states it was bringing its unjust enrichment claim.   *See id.* at

22  899-900 ("The IPC alleges a violation of [section] 1 of the Sherman Act, violation of

23

24  [20] In their Objections to the Report, the DAPs request ***for the first time*** that the Court clarify

25  that its ruling has "no bearing on the Washington Attorney General's right to pursue indirect

26  purchaser claims nor on Costco's ability to recover pursuant to the Attorney General's

27  action."   DAPs' Br. at 19.   The Court should reject the request as the issue is not properly

28  before the Court and is irrelevant to the pending Motion to Dismiss.   *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) (stating that "[t]he district court need not consider arguments raised for the first time in a reply brief.").

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1    California's Cartwright Act, California Business and Professions Code [section] 16720,

2    violation of California Business and Professions Code [section] 17200, violations of

3    numerous other States' antitrust and unfair competition laws, violations of numerous other

4    States' consumer protection and unfair competition laws, and unjust enrichment and

5    disgorgement of profits."). Similarly, the Polaroid Plaintiffs bring claims arising under the

6    antitrust statutes of Minnesota and California, but they do not identify the state or states

7    under which they bring their unjust enrichment claim(s), and thus "the Court cannot assess

8    whether the claim has been adequately plead." *Id.*

9        It is particularly important for a plaintiff to identify specifically which state's or

10   states' laws support its claim for unjust enrichment because the elements of unjust

11   enrichment vary by state, and some states do not even recognize unjust enrichment as a

12   stand-alone claim. *See, e.g., Nelson v. Xacta 3000 Inc.*, No. 08-5426 (MLC), 2009 WL

13   4119176, at *7 (D.N.J. Nov. 24, 2009) ("New Jersey law does not recognize unjust

14   enrichment as an independent tort cause of action."); *Jogani v. Superior Court*, 165 Cal. App.

15   4th 901, 911 (2008) ("[U]njust enrichment is not a cause of action.").

16       The Polaroid Plaintiffs argue that they specifically identify Minnesota and California

17   as "the two states' laws from which their claims arise." DAPs' Br. at 19. However, the

18   Polaroid Plaintiffs' conclusion would require the Court and the Defendants to make an

19   inference that falls far short of the standard set forth in Rule 8(a)(2) of the Federal Rules of

20   Civil Procedure, of a "short and plain statement of the claim." At no point in their complaint

21   do the Polaroid Plaintiffs indicate that their unjust enrichment claims arise under Minnesota,

22   California, or any other state's laws; rather, the Polaroid Plaintiffs plead as follows: "Fifth

23   Claim for Relief: Unjust Enrichment and Disgorgement of Profits . . . Under common law

24   principles of unjust enrichment, Defendants should not be permitted to retain the benefits

25   conferred via overpayments by Plaintiffs." Polaroid Compl. ¶ 214. It is clear from reading

26   the Polaroid Plaintiffs' complaint as a whole that they know how to identify the state laws

27   under which some of their claims arise, such as the Minnesota Antitrust Statute (*id.* at

28   ¶¶ 188-193), the California Cartwright Act (*id.* at ¶¶ 194-199), and the California Unfair

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

Competition Statute (*id.* at ¶¶ 200-211).  However, they failed to do the same for their unjust enrichment claims.  *Id.* at ¶¶ 212-215.  If the Polaroid Plaintiffs' argument — that Minnesota and California law are "the two states' laws from which their claims arise" because they alleged that the Defendants purposefully availed themselves of the laws of those states — is correct, then California law would apply to their Minnesota Antitrust Statute claims and Minnesota law would apply to their California Cartwright Act and Unfair Competition Statute claims.  Such a nonsensical result demonstrates that the Polaroid Plaintiffs' reasoning is flawed.  The Polaroid Plaintiffs have failed to make a "short and plain statement of the claim," and instead have left the Court and the Defendants guessing about which state's or states' laws they are seeking to invoke.  Furthermore, given that under California law there is no standalone claim for unjust enrichment, the Polaroid Plaintiffs' assertion that their "[c]omplaint makes clear" that California and Minnesota's laws are being invoked is mistaken.  *See, e.g.*, *Jogani*, 165 Cal. App. 4th at 911 ("[U]njust enrichment is not a cause of action.").

The Polaroid Plaintiffs cite to *Fontana v. Haskin*, 262 F.3d 871, 877 (9th Cir. 2001) in support of their argument that they have sufficiently pled their common law unjust enrichment claim.  DAPs' Br. at 20.  However, that case is inapposite because it addressed the issue of whether the plaintiff pled sufficient facts regarding the defendants' alleged misconduct to support her sexual harassment claim, but did not address the relevant issue in this case:  whether a plaintiff must identify the state or states whose laws they wish to invoke in bringing a claim for unjust enrichment.  *Fontana*, 262 F.3d at 876.  Courts that have specifically addressed this issue have required plaintiffs to indicate which states' laws support their claim.  *See, e.g.*, *SRAM*, 580 F. Supp. 2d at 910 (dismissing plaintiffs' unjust enrichment claims because plaintiffs "must identify which State's or States' law they rely upon.").  Accordingly, Special Master Legge correctly concludes in his Report that the Polaroid Plaintiffs' unjust enrichment claim should be dismissed.

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

**V.    THE REPORT CORRECTLY CONCLUDES THAT CIRCUIT CITY'S CLAIMS FOR RESTITUTION AND UNJUST ENRICHMENT UNDER CALIFORNIA LAW SHOULD BE DISMISSED**

Special Master Legge appropriately recommends dismissing Circuit City's stand-alone claims for restitution or unjust enrichment because the California Cartwright Act provides specific remedies for antitrust violations, which are adequate remedies at law. Report at 13.  Although California courts are divided on the issue, the majority view holds that there is no stand-alone cause of action for restitution or unjust enrichment in California. *See, e.g.*, *Munoz v. MacMillan*, 195 Cal. App. 4th 648, 661 (2011) ("There is no freestanding cause of action for 'restitution' in California."); *Jogani*, 165 Cal. App. 4th at 911 ("[U]njust enrichment is not a cause of action"); *McBride v. Boughton*, 123 Cal. App. 4th 379, 387 (2004) (affirming the dismissal of a claim for unjust enrichment and finding that "[u]njust enrichment is not a cause of action . . . or even a remedy"); *Melchoir v. New Line Prods., Inc.*, 106 Cal. App. 4th 779, 793 (2003) ("[T]here is no cause of action in California for unjust enrichment.").

In these decisions, courts either reason that claims for unjust enrichment cannot be brought where there is already an available remedy at law or that unjust enrichment is merely a general principle that is synonymous with restitution.  *See Munoz*, 195 Cal. App. 4th at 661 ("Common law principles of restitution require a party to return a benefit when the retention of such benefit would unjustly enrich the recipient; a typical cause of action involving such a remedy is 'quasi-contract'"); *Jogani*, 165 Cal. App. 4th at 911 (unjust enrichment is not a cause of action, but rather "it is a general principle underlying various doctrines and remedies, including quasi-contract"); *Melchoir*, 106 Cal. App. 4th at 793 (holding that the plaintiff's cause of action for unjust enrichment was based on the same allegations as his cause of action for conversion, it was preempted by the Copyright Act, and stating that "unjust enrichment is a general principle, synonymous with restitution"); *McBride*, 123 Cal. App. 4th at 387 (unjust enrichment is "a general principle, underlying various legal doctrines and remedies" and is "synonymous with restitution").

Circuit City urges the Court to adopt the minority view, as Judge Illston did in *In re TFT-LCD (Flat Panel) Antitrust Litig.*, when she held that a California unjust enrichment claim was a "valid theory of recovery." No. M 07-1827 SI, 2011 WL 4345435, at *3-4 (N.D. Cal. Sept. 15, 2011). The majority rule and trend in California decisions, however, have clarified that unjust enrichment is not a cause of action in California. *See, e.g.*, *Levine v. Blue Shield of Cal.*, 189 Cal. App. 4th 1117, 1138 (2010) ("Although some California courts have suggested the existence of a separate cause of action for unjust enrichment, this court has recently held that there is no cause of action in California for unjust enrichment . . . Unjust enrichment is synonymous with restitution"); *Charles Schwab & Co. v. Bank of Am.*, No. C 10-4913 JL, 2011 WL 1753805, at *5 (N.D. Cal. May 9, 2011) (describing unjust enrichment claim under California law as "a minority view"). Indeed, as recently as April 2013, the Court recognized that there is no freestanding cause of action for unjust enrichment in California when it stated that "several recent decisions by the California Court of Appeals have held that '[u]njust enrichment is not a cause of action, just a restitution claim.'" *Herskowitz v. Apple, Inc.*, No. 12-CV-02131-LHK, 2013 WL 1615867, at *14 (N.D. Cal. Apr. 15, 2013) (citations omitted).

In support of its argument that unjust enrichment or restitution provides a valid claim for relief under California common law, Circuit City relies upon a series of non-price-fixing cases, all of which are irrelevant. Specifically, *Ghirardo v. Antonioli*, in which the Court allowed the plaintiff to plead a cause of action for unjust enrichment, does not apply here because the plaintiff in that case did not have an available remedy at law. 14 Cal. 4th 39, 47, 50-51 (1996). Although a California statute had recently been enacted that might have provided a legal remedy to the plaintiff, the court found that the statute was enacted after the filing of the action and thus did not apply to the transaction at issue. *Id.* at 47. After determining that the statute did not apply, the court examined the "common law remedies available before the enactment of the [statute]" and concluded that the equitable theory of unjust enrichment was one of those remedies and was thus available to the plaintiff. *Id.* at 50-51. Similarly, *Lectrodryer v. SeoulBank* also addressed an action in quasi contract

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1    because there was not a binding, enforceable agreement between the parties and thus no

2    remedy at law.  77 Cal. App. 4th 723, 726 (2000).  In this case, Circuit City *does* have an

3    adequate remedy at law, *i.e.*, the California Cartwright Act, so *Ghirardo* and *Lectrodryer* do

4    not apply.

5         Similarly, the other cases upon which Circuit City relies do little more than state

6    general principles regarding unjust enrichment and the facts of those cases are inapposite to

7    this matter.  *See Doe 1 v. Wal-Mart Stores, Inc*., 572 F.3d 677, 684 (9th Cir. 2009)

8    (dismissing plaintiffs' unjust enrichment claim for defendant's profits resulting from

9    substandard labor practices); *Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583, 1586 (2008)

10   (dismissing the plaintiffs' unjust enrichment claim for defendant's profits from offering and

11   selling insurance while not licensed to do so); *In re Easysaver Rewards Litig*., 737 F. Supp.

12   2d 1159, 1180 (S.D. Cal. 2010) (following the minority view and citing a 1992 California

13   state case in allowing plaintiff to proceed with an unjust enrichment claim for the defendant's

14   profits resulting from the fraudulent transmittal of credit card, debit card, and/or PayPal

15   information).

16        Moreover, it is well established under California law that equitable remedies are not

17   available when there is an adequate legal remedy.  *See Martin v. Cnty. of L.A.*, 51 Cal. App.

18   4th 688, 696 (1996) ("Perhaps the most basic rule governing equity jurisdiction is that there

19   is no right to equitable relief or an equitable remedy when there is an adequate remedy at

20   law.").  Thus, as Special Master Legge recommended, "[t]here is no need to litigate equitable

21   forms of relief when the states' statute provides specific causes of action and forms of relief

22   for the facts alleged in these complaints."  Report at 13.

23        Nonetheless, Circuit City argues that, under *Keilholtz v. Superior Fireplace Co.*,

24   No. C-08-00836 CW, 2009 WL 839076, at *5 (N.D. Cal. Mar. 30, 2009), the Court should

25   not yet determine the adequacy of the remedies available to it.  DAPs' Br. at 22 (citing

26   *Keilholtz* for the proposition that the Court should decline to decide whether unjust

27   enrichment is a stand-alone claim at all given "the early stage in the litigation," despite the

28   *Keilholtz* court's recognition that the claim "may ultimately be superfluous to the Plaintiffs'

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

1   restitution claim under the UCL").  Also in support of this argument, Circuit City states that,

2   in *TFT-LCD*, 2011 WL 4345435 at *3-4, Judge Illston allowed Circuit City's claims to

3   proceed without determining the adequacy of other remedies at an early stage.  These

4   decisions, however, are in direct conflict with this Court's own decision in *Rhynes v. Stryker*

5   *Corporation*, in which this Court held that "[w]here the claims pleaded by a plaintiff *may*

6   entitle her to an adequate remedy at law, equitable relief is unavailable."  No. 10-5619, 2011

7   WL 2149095, at *4 (N.D. Cal. May 31, 2011) (Conti, J.) (emphasis added).  The decisions

8   relied upon by Circuit City are also directly in conflict with the April 15, 2013 decision in

9   *Herskowitz*, in which the Court dismissed claims for unjust enrichment with prejudice

10  because "several recent decisions by the California Court of Appeals have held that 'unjust

11  enrichment is not a cause of action.'"  2013 WL 1615867 at *14.  Given that the California

12  Cartwright Act provides Circuit City with an entirely adequate legal remedy and unjust

13  enrichment is not a cause of action under California law, the Court should dismiss Circuit

14  City's equitable claim for unjust enrichment.

15  **VI.   THE   REPORT   CORRECTLY   CONCLUDES   THAT   INDIRECT**
16  **PURCHASERS CANNOT BRING CLAIMS UNDER NEBRASKA AND**
    **NEVADA LAW FOR PURCHASES THAT PREDATE THE *ILLINOIS BRICK***
17  **REPEALER STATUTES IN THESE STATES**

18       Special Master Legge recommended that the Court dismiss with prejudice the DAPs'

19  claims under Nebraska and Nevada law based on purchases predating those states' *Illinois*

20  *Brick* repealer amendments.  Report at 14.  Special Master Legge based his recommendation,

21  in part, on his previous analysis of these same statutes, including their legislative history and

22  state court authorities.  Report, Recommendations and Tentative Rulings (Dkt. No. 597), at

23  28-29 (recommending that the Court dismiss indirect purchaser plaintiffs' claims under

24  Nebraska and Nevada law, to the extent they are based on pre-amendment purchases).  This

25  Court adopted Special Master Legge's recommendations.  *In re Cathode Ray Tube (CRT)*

26  *Antitrust Litig.*, 738 F. Supp. 2d at 1025.

27

28

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1    In the instant motion, the DAPs relied largely on the arguments and state court

2   authorities cited by the indirect purchasers, leading Special Master Legge to reach the same

3   result.  Report at 14 ("Plaintiffs' arguments in this motion are the same as those considered

4   and rejected by this Court previously.").  The DAPs are wrong to argue that Special Master

5   Legge "failed to consider" and "overlooked" two opinions from the Northern District of

6   California.  DAPs' Br. at 22-23.  Those opinions — which reach mixed results on the state

7   laws at issue, and are at best persuasive authority — were cited and argued extensively to

8   Special Master Legge.  Special Master Legge's decision to not cite them does not mean he

9   failed to consider them.[21]  Rather, Special Master Legge rightly focused on controlling state

10  authorities which, as described below, require that the Court adopt the resulting

11  recommendations.

12   **A.   The Court Should Dismiss The DAPs' Nebraska Claims For Purchases
         Made Prior To The July 20, 2002 Repealer Amendment**

13

14    Nebraska passed its *Illinois Brick* repealer amendment in 2002.  L.B. 1278, 97th Leg.,

15  2d Sess. (Neb. 2002) (RJN Ex. A).  The bill amended Nebraska's Junkin Act to provide that

16  any person injured in his or her business or property by a violation of the Act may bring a

17  civil action, "whether such injured person dealt directly or indirectly with the defendant."

18  *Id*., p. 6; *see also* Neb. Rev. Stat. § 59-821.  The repealer amendment was introduced to

19  "permit indirect parties, or parties within a distribution chain transacting business indirectly

20  with a price-fixing party, who have been harmed by an antitrust violation, a right to a remedy

21  in Nebraska.  ***Currently in Nebraska, such indirect parties have no remedy***."  Kermit A.

22  Brashear, Introducer's Statement of Intent, L.B. 1278 (Neb. Feb. 27, 2002) (RJN Ex. B)

23  (emphasis added); *see also* Committee Statement, Committee on Judiciary, L.B. 1278 (Neb.

24  Feb. 27, 2002) (RJN Ex. C) ("Currently, Nebraska law does not allow indirect parties within

25  a distribution chain who are harmed through a business transaction by an antitrust violation

26  _____

27  [21] In making this argument, the DAPs misquote the Report.  *Compare* Report at 14

28  ("Plaintiffs have cited no authority, and have provided no new reasons, why this Court
    should reverse its earlier holdings.") *with* DAPs' Br. at 23.

DEFENDANTS' JOINT MOTION TO ADOPT PORTIONS OF THE REPORT AND RECOMMENDATIONS
REGARDING DEFENDANTS' MOTIONS TO DISMISS DIRECT ACTION COMPLAINTS
Case No. 07-5944 SC
MDL No. 1917

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

the ability to sue for damages."). The Nebraska Supreme Court has also acknowledged that the amendment "removed the bar against suits by an indirect purchaser plaintiff who dealt indirectly with the defendant by purchasing the defendant's product from an intermediary, rather than directly from the defendant." *Kanne v. Visa U.S.A., Inc.*, 723 N.W.2d 293, 300 (Neb. 2006); *see also id.* (amendment "removed the automatic bar against indirect purchaser actions"). Thus, the Legislature and the state's highest court agree that, before the repealer amendment became effective, Nebraska law did not allow indirect purchasers to sue for damages under the Junkin Act.

The DAPs argue to the contrary, citing *Arthur v. Microsoft Corp.*, 676 N.W.2d 29 (Neb. 2004). However, *Arthur* analyzed a claim under Nebraska's Consumer Protection Act, which the DAPs do not assert in this case. Furthermore, the *Arthur* opinion does not even mention the Junkin Act, which is the statute under which the DAPs assert a claim. The DAPs attempt to argue by analogy that, because Nebraska courts allowed indirect purchasers to sue under the Consumer Protection Act before the repealer amendment, "[c]ertainly it would follow" that courts would also allow indirect purchasers to sue under the Junkin Act for pre-repealer purchases. DAPs' Br. at 24. But the DAPs cite no Nebraska authority to support this leap. In fact, such a holding would run contrary to the express statements of both the Nebraska Legislature and Supreme Court, cited above.

Thus, Nebraska courts would not have allowed indirect purchasers to sue under the Junkin Act prior to Nebraska's *Illinois Brick* repealer amendment. In Nebraska, a "legislative act operates only prospectively and not retrospectively unless legislative intent and purpose that it should operate retrospectively is clearly disclosed." *Soukop v. Conagra, Inc.*, 653 N.W.2d 655, 657 (Neb. 2002). Nebraska's repealer reveals no such intent. Accordingly, the Court should adopt Special Master Legge's Report on this issue and dismiss the DAPs' claims under the Junkin Act based on purchases made before July 20, 2002 (the date the amendment became effective).

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

**B.      The Court Should Dismiss The DAPs' Nevada Claims For Purchases Made Prior To The October 1, 1999 Repealer Amendment**

Nevada passed its *Illinois Brick* repealer amendment in 1999.  A.B. 108, 70th Sess. (Nev. 1999) (RJN Ex. D).  The bill amended Nevada's Unfair Trade Practices Act to provide that "[a]ny person injured *or damaged directly or indirectly* in his business or property by reason of a violation" may institute a civil action.  *Id.* § 2 (emphasis added); *see also* Nev. Rev. Stat. Ann. § 598A.210.  The Nevada Legislature understood that it was changing then-existing law, which did not allow for indirect purchaser suits.  *See* RJN Ex. D (summarizing bill as making "changes" regarding civil actions under the statute); *see also* Minutes of the Senate Committee on Commerce and Labor, A.B. 108, 70th Sess. (Nev. 1999) (RJN Ex. E), p. 2 ("the way the statutes are currently written, it is probable that indirect purchasers could not have an antitrust remedy in court.").  This is due to a provision in the statute, mandating that it "shall be construed in harmony with prevailing judicial interpretations of the federal antitrust statutes."  Nev. Rev. Stat. Ann. § 598A.050.  This includes *Illinois Brick*'s ban on indirect purchaser suits.

The DAPs argue to the contrary, that Nevada never differentiated between direct and indirect purchasers under the Unfair Trade Practices Act.  DAPs' Br. at 25.  In support, the DAPs cite *Pooler v. R.J. Reynolds Tobacco Co.*, an unpublished decision from a Nevada trial court.  No. CV-00-02674, 2001 WL 403167, at *1 (Nev. Dist. Ct. Apr. 4, 2001).[22]  However, the *Pooler* court itself acknowledged that, before the amendment, Nevada courts denied standing to indirect purchasers under the Unfair Trade Practices Act.  *Id.* at *1.  In any event, this Court is bound to follow the decisions of Nevada's highest court on issues of Nevada law, not unpublished decisions of its trial courts.  *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 885 n.7 (9th Cir. 2000).  Nevada courts *presume* that the state Legislature intended

---

[22] Other Nevada trial courts have rendered decisions (also unpublished) reaching the opposite conclusion, and holding that Nevada's amendment allowing indirect purchaser suits does not apply retroactively.  *See Krotz v. Microsoft Corp.*, No. A416361 (Nev. Dist. Ct. June 22, 2000) (not published in Lexis or Westlaw), *cited in* Am. Bar Ass'n, *Indirect Purchaser Litigation Handbook*  43 n.153 (2007).

---

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1    to change the law when it amends a statute.  *McKay v. Bd. of Supervisors*, 730 P.2d 438, 442
2    (Nev. 1986).

3         Thus, Nevada courts would not have allowed indirect purchasers to sue under the
4    Unfair Trade Practices Act before its 1999 amendment.  In Nevada, "[t]he general rule is that
5    statutes are prospective only, unless it clearly, strongly, and imperatively appears from the
6    act itself that the legislature intended the statute to be retrospective in its operation."  *Estate*
7    *of Thomas*, 998 P.2d 560, 562 (Nev. 2000); *see also Castillo v. State*, 874 P.2d 1252, 1257
8    (Nev. 1994) ("legislative enactments responding to judicial interpretations of a statute by
9    affirmatively changing the statute are not 'clarifications' of original legislative intent, but are
10   *amendments* presumed to operate prospectively absent contrary legislative intent.")
11   (emphasis in original), *disapproved on other grounds by Wood v. State*, 892 P.2d 944, 946
12   (Nev. 1995).  Because the repealer amendment does not indicate any intent that it should be
13   applied retroactively to claims that accrued before its effective date, it should be applied only
14   prospectively.   Consistent with these authorities, federal courts have held that indirect
15   purchasers cannot bring a claim under the statute based on events before the repealer's
16   effective date.  *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M07-1827 SI, 2011 WL
17   3738985, at *4 (N.D. Cal. Aug. 24, 2011); *Ferrell v. Wyeth-Ayerst Labs., Inc.*, No. 1:01-cv-
18   00447-SBB-TSH, at 26 (S.D. Ohio July 1, 2004) (RJN Ex. F).  The Court should do the
19   same, adopting Special Master Legge's Report on this issue and dismissing any claims by the
20   DAPs under the Nevada statute based on purchases made before October 1, 1999 (the date
21   the amendment became effective).

22
23
24
25
26
27
28

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

Dated: June 28, 2013

**WHITE & CASE** LLP

By: */s/ Lucius B. Lau*
Christopher M. Curran (*pro hac vice*)
ccurran@whitecase.com
Lucius B. Lau (*pro hac vice*)
alau@whitecase.com
Dana E. Foster (*pro hac vice*)
defoster@whitecase.com
**WHITE & CASE LLP**
701 Thirteenth Street, N.W.
Washington, DC 20005
tel.: (202) 626-3600
fax: (202) 639-9355

*Attorneys for Defendants Toshiba Corporation, Toshiba America, Inc., Toshiba America Information Systems, Inc., Toshiba America Consumer Products, L.L.C., and Toshiba America Electronic Components, Inc.*

WINSTON & STRAWN LLP

By: */s/ Jeffrey L. Kessler*
JEFFREY L. KESSLER (*pro hac vice*)
jkessler@winston.com
ALDO A. BADINI (257086)
abadini@winston.com
A. PAUL VICTOR (*pro hac vice*)
pvictor@winston.com
EVA COLE (*pro hac vice*)
EWCole@winston.com
MOLLY M. DONOVAN (*pro hac vice*)
MMdonovan@winston.com
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, NY 10166-4193
Telephone: (212) 294-4692
Facsimile: (212) 294-4700

DEFENDANTS' JOINT MOTION TO ADOPT PORTIONS OF THE REPORT AND RECOMMENDATIONS
REGARDING DEFENDANTS' MOTIONS TO DISMISS DIRECT ACTION COMPLAINTS
Case No. 07-5944 SC
MDL No. 1917
31

WEIL, GOTSHAL & MANGES LLP

STEVEN A. REISS (*pro hac vice*)
steven.reiss@weil.com
DAVID L. YOHAI (*pro hac vice*)
david.yohai@weil.com
ADAM C. HEMLOCK (*pro hac vice*)
adam.hemlock@weil.com
DAVID E. YOLKUT (*pro hac vice*)
david.yolkut@weil.com
**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, New York 10153-0119
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

GREGORY D. HULL (57367)
greg.hull@weil.com
**WEIL, GOTSHAL & MANGES LLP**
201 Redwood Shores Parkway
Redwood Shores, California 94065-1175
Telephone: (650) 802-3000
Facsimile: (650) 802-3100

*Attorneys for Defendants Panasonic*
*Corporation of North America, MT Picture*
*Display Co., Ltd. and Panasonic Corporation*
*(f/k/a Matsushita Electric Industrial Co.)*

MORGAN, LEWIS & BOCKIUS LLP

By: */s/ Kent M. Roger*
KENT M. ROGER (SBN 95987)
kroger@morganlewis.com
MICHELLE PARK CHIU (SBN 248421)
mchiu@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
One Market, Spear Street Tower
San Francisco, California 94105-1126
Telephone: (415) 442-1000
Facsimile: (415) 442-1001

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

DEFENDANTS' JOINT MOTION TO ADOPT PORTIONS OF THE REPORT AND RECOMMENDATIONS
REGARDING DEFENDANTS' MOTIONS TO DISMISS DIRECT ACTION COMPLAINTS
Case No. 07-5944 SC
MDL No. 1917

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

J. CLAYTON EVERETT, JR. (*pro hac vice*)
jeverett@morganlewis.com
SCOTT A. STEMPEL (*pro hac vice*)
sstempel@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
111 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone: (202) 739-3000
Facsimile: (202) 739-3001

*Attorneys for Defendants Hitachi, Ltd., Hitachi
Displays, Ltd., Hitachi Asia, Ltd., Hitachi
America, Ltd., and Hitachi Electronic Devices
(USA), Inc.*

MUNGER, TOLLES & OLSON LLP

By: */s/ Hojoon Hwang*
HOJOON HWANG
Hojoon.Hwang@mto.com
**MUNGER, TOLLES & OLSON LLP**
560 Mission Street, Twenty-Seventh Floor
San Francisco, CA 94105
Telephone: (415) 512-4000

WILLIAM D. TEMKO
William.Temko@mto.com
JONATHAN E. ALTMAN
Jonathan.Altman@mto.com
**MUNGER, TOLLES & OLSON LLP**
355 South Grand Avenue, Thirty-Fifth Floor
Los Angeles, California  90071
Telephone: (213) 683-9100

*Attorneys for Defendants LG Electronics, Inc.;
LG, LG Electronics USA, Inc.,; and LG
Electronics Taiwan Taipei Co., Ltd.*

DEFENDANTS' JOINT MOTION TO ADOPT PORTIONS OF THE REPORT AND RECOMMENDATIONS
REGARDING DEFENDANTS' MOTIONS TO DISMISS DIRECT ACTION COMPLAINTS
Case No. 07-5944 SC
MDL No. 1917

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

SHEPPARD MULLIN RICHTER & HAMPTON

By: */s/ Gary L. Halling*
GARY L. HALLING (SBN 66087)
ghalling@sheppardmullin.com
JAMES L. MCGINNIS (SBN 95788)
jmcginnis@sheppardmullin.com
MICHAEL W. SCARBOROUGH (SBN 203524)
mscarborough@sheppardmullin.com
**SHEPPARD MULLIN RICHTER & HAMPTON**
Four Embarcadero Center, 17th Floor
San Francisco, California 94111
Telephone: (415) 434-9100
Facsimile: (415) 434-3947

*Attorneys for Defendants Samsung SDI America, Inc. Samsung SDI Co., Ltd.; Samsung SDI (Malaysia) SDN. BHD.; Samsung SDI Mexico S.A. DE C.V.; Samsung SDI Brasil Ltda.; Shenzen Samsung SDI Co., Ltd. And Tianjin Samsung SDI Co., Ltd.*

BAKER BOTTS LLP

By: */s/ Jon V. Swenson*
JON V. SWENSON (SBN 233054)
jon.swenson@bakerbotts.com
**BAKER BOTTS LLP**
1001 Page Mill Road
Building One, Suite 200
Palo Alto, CA 94304
Telephone: (650) 739-7500
Facsimile: (650) 739-7699

John M. Taladay (*pro hac vice*)
john.taladay@bakerbotts.com
Joseph Ostoyich (*pro hac vice*)
joseph.ostoyich@bakerbotts.com
**BAKER BOTTS LLP**
1299 Pennsylvania Avenue N.W.
Washington, DC 20004-2400
Telephone: (202) 639-7700
Facsimile: (202) 639-7890

*Attorneys for Defendants Koninklijke Philips*
*Electronics N.V. and Philips Electronics North*
*America Corporation*

GIBSON, DUNN & CRUTCHER LLP

By: */s/ Rachel S. Brass*
Rachel S. Brass (SBN 219301)
rbrass@gibsondunn.com
Joel S. Sanders (SBN 107234)
jsanders@gibsondunn.com
Austin V. Schwing (SBN 211696)
**GIBSON, DUNN & CRUTCHER LLP**
555 Mission Street, Suite 3000
San Francisco, California 94105
Tel: (415) 393-8200
Fax: (415) 393-8306

*Attorneys for Defendant Chunghwa Picture*
*Tubes, Ltd. and Chunghwa Picture Tubes*
*(Malaysia) as to the Target Am. Compl., P.C.*
*Richard Compl., Tweeter Compl., CompuCom*
*Compl., Interbond Compl., Costco Compl., Office*
*Depot Compl. and Best Buy Compl. only*

Pursuant to Local Rule 5-1(i)(3), the filer attests that concurrence in the filing of this document has been obtained from each of the above signatories.

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

### CERTIFICATE OF SERVICE

On June 28, 2013, I caused a copy of the "DEFENDANTS' JOINT MOTION TO ADOPT PORTIONS OF THE REPORT AND RECOMMENDATIONS REGARDING DEFENDANTS' MOTIONS TO DISMISS DIRECT ACTION COMPLAINTS" to be electronically filed via the Court's Electronic Case Filing System, which constitutes service in this action pursuant to the Court's order of September 29, 2008.

By:  _/s/ Lucius B. Lau_
Lucius B. Lau (*pro hac vice*)