Guido Saveri (22349) guido@saveri.com
R. Alexander Saveri (173102) rick@saveri.com
Geoffrey C. Rushing (126910) grushing@saveri.com
Cadio Zirpoli (179108) cadio@saveri.com
Travis L. Manfredi (281779) travis@saveri.com
SAVERI & SAVERI, INC.
706 Sansome Street
San Francisco, CA 94111
Telephone:  (415) 217-6810
Facsimile:  (415) 217-6813

*Interim Lead Counsel for the*
*Direct Purchaser Plaintiffs*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. CV-07-5944-SC |
| | MDL No. 1917 |
| This Document Relates to: | |
| **ALL DIRECT PURCHASER ACTIONS** | **DIRECT PURCHASER PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT WITH TOSHIBA DEFENDANTS** |
| | Date:   July 22, 2013 |
| | Time:   10:00 a.m. |
| | Judge:  Honorable Charles A. Legge (Ret.) |
| | JAMS: Two Embarcadero Center, Suite 1500 |

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................ i

TABLE OF AUTHORITIES........................................................................................................... ii

MEMORANDUM OF POINTS AND AUTHORITIES................................................................ 1

I.   INTRODUCTION............................................................................................................... 1

II.   FACTUAL AND PROCEDURAL HISTORY ................................................................... 1

III.   THE TERMS OF THE SETTLEMENT ............................................................................ 7

IV.   ARGUMENT ...................................................................................................................... 8

    A.  The Class Action Settlement Class.............................................................................. 8

    B.  The Court-Approved Notice Program Satisfies Due Process and Has Been Fully
        Implemented. .............................................................................................................. 9

    C.  The Settlement Is "Fair, Adequate And Reasonable" and Should Be Granted Final
        Approval. ................................................................................................................... 10

        1.  The Settlement Provides Considerable Relief For The Class. ...................... 11

        2.  The Class Members' Positive Reaction Favors Final Approval. .................. 12

        3.  The Settlement Eliminates Significant Risk To The Class. .......................... 13

        4.  The Settlement Is the Product of Arm's-Length Negotiations Between the Parties and
            The Recommendation of Experienced Counsel Favors Approval. ................ 14

    D.  The Plan of Allocation Is "Fair, Adequate and Reasonable" and Therefore Should Be
        Approved. ................................................................................................................... 15

V.   OBJECTIONS BY CLASS MEMBERS ......................................................................... 16

VI.   EXCLUSIONS ................................................................................................................. 16

VII.   CONCLUSION ................................................................................................................ 17

# TABLE OF AUTHORITIES

## CASES

*Agretti v. ANR Freight System, Inc.*,
  982 F.2d 242 (7th Cir. 1992) ............................................................................... 12

*Arnold v. Arizona Department of Public Safety*,
  No. CV-01-1463-PHX-LOA, 2006 WL 2168637 (D. Ariz. July 31, 2006) ........................... 13

*Bellows v. NCO Financial System*,
  2008 U.S. Dist. LEXIS 103525 (S.D. Cal. Dec. 2, 2008) ............................................. 14

*Bynum v. District of Columbia*,
  412 F. Supp. 2d 73 (D.D.C. 2006) ......................................................................... 13

*Byrd v. Civil Service Commission*,
  459 U.S. 1217 (1983) ....................................................................................... 10

*Churchill Village L.L.C. v. General Electric*,
  361 F.3d 566 (9th Cir. 2004) .......................................................................... 9, 10, 12

*Class Plaintiffs v. City of Seattle*,
  955 F.2d 1268 (9th Cir. 1992) ............................................................................. 10

*Ellis v. Naval Air Rework Facility*,
  87 F.R.D. 15 (N.D. Cal. 1980) ............................................................................. 11

*Fisher Brothers v. Mueller Brass Co.*,
  630 F. Supp. 493 (E.D. Pa. 1985) ......................................................................... 12

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1988) ........................................................................ 10, 12

*In re "Agent Orange" Product Liability Litigation*,
  818 F.2d 145 (2d Cir. 1987) ............................................................................... 9

*In re Austrian and German Bank Holocaust Litigation*,
  80 F. Supp. 2d 164 (S.D.N.Y. 2000) ...................................................................... 14

*In re Citric Acid Antitrust Litigation*,
  145 F. Supp. 2d 1152 (N.D. Cal. 2001) ................................................................... 15

*In re Computron Software, Inc.*,
  6 F. Supp.2d 313 (D.N.J. 1998) ........................................................................... 15

*In re Corrugated Container Antitrust Litigation*,
  Case No. M.D.L. 310, 1981 WL 2093 (S.D. Tex. June 4, 1981) ...................................... 12

*In re Fleet/Norstar Securities Litigation*,
  935 F. Supp. 99 (D.R.I. 1996) ............................................................................. 13

*In re Linerboard Antitrust Litigation*,
  292 F. Supp. 2d 631 (E.D. Pa. 2003) ..................................................................... 12

*In re Lloyds' American Trust Fund Litigation*,
  No. 96 Civ.1262 RWS, 2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002) ........................... 16

*In re Mid-Atlantic Toyota Antitrust Litigation*,
  564 F. Supp. 1379 (D. Md. 1983) ......................................................................... 12

*In re NASDAQ Market-Makers Antitrust Litigation*,
  187 F.R.D. 465 (S.D.N.Y. 1998) .......................................................................... 13

ii

DIRECT PURCHASER PLAINTIFFS' MEMO ISO FINAL APPROVAL OF CLASS ACTION SETTLEMENT
WITH TOSHIBA; Master File No. CV-07-5944-SC

*In re PaineWebber Ltd. Partnerships Litigation,*
  171 F.R.D. 104 (S.D.N.Y. 1997) ........................................................................... 16

*In re Patriot American Hospitality Inc. Securities Litigation,*
  No. MDL C-00-1300 VRW, 2005 WL 3801594 (N.D. Cal. Nov. 30, 2005) ........................... 13

*In re Sumitomo Copper Litigation,*
  189 F.R.D. 274 (S.D.N.Y. 1999) ........................................................................... 13

*In re Visa Check/Mastermoney Antitrust Litigation,*
  297 F. Supp. 2d 503 (E.D.N.Y. 2003) ..................................................................... 14

*In re Vitamins Antitrust Litigation,*
  No. 99-197 TFH, 2000 WL 1737867 (D.D.C. Mar. 31, 2000) ........................................... 16

*M. Berenson Co. v. Faneuil Hall Marketplace, Inc.,*
  671 F. Supp. 819 (D. Mass. 1987) ......................................................................... 11

*Mangone v. First USA Bank,*
  206 F.R.D. 222 (S.D. Ill. 2001) ............................................................................. 9

*Marisol A. ex rel. Forbes v. Giuliani,*
  185 F.R.D. 152 (S.D.N.Y. 1999) ........................................................................... 14

*Mendoza v. Tucson School District No. 1,*
  623 F.2d 1338 (9th Cir. 1980) ............................................................................... 9

*National Rural Telecommunications Cooperative v. DIRECTV, Inc.,*
  221 F.R.D. 523 (C.D. Cal. 2004) ...................................................................... 13, 14

*Officers for Justice v. Civil Service Commission,*
  688 F.2d 615 (9th Cir. 1982) ...................................................................... 10, 11, 14

*Pallas v. Pacific Bell,*
  No. C-89-2373 DLJ, 1999 WL 1209495 (N.D. Cal. 1999) ............................................. 13

*Petrovic v. Amoco Oil Co.,*
  200 F.3d 1140 (8th Cir. 1999) ............................................................................... 9

*Rutter & Wilbanks Corp. v. Shell Oil Co.,*
  314 F.3d 1180 (10th Cir. 2002) ............................................................................. 14

*Torrisi v. Tucson Electric Power Co.,*
  8 F.3d 1370 (9th Cir. 1993) .............................................................................. 9, 11

*Utility Reform Project v. Bonneville Power Administration,*
  869 F.2d 437 (9th Cir. 1989) ............................................................................... 11

*Van Bronkhorst v. Safeco Corp.,*
  529 F.2d 943 (9th Cir. 1976) ............................................................................... 11

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,*
  396 F.3d 96 (2d Cir. 2005) ................................................................................. 13

*Wilkerson v. Martin Marietta Corp.,*
  171 F.R.D. 273 (D. Colo. 1997) ........................................................................... 14

## STATUTES

Clayton Act, 15 U.S.C. § 15 ................................................................................... 2

Sherman Act, 15 U.S.C. § 1 .................................................................................... 2

## OTHER AUTHORITIES

4 Albert Conte & Herbert Newberg, *Newberg on Class Actions* §§ 11.22, *et seq.* (4th ed. 2002) .... 8

## RULES

Federal Rule of Civil Procedure 11 ................................................................................................... 3

Federal Rule of Civil Procedure 23 ......................................................................................... 1, 9, 10

DIRECT PURCHASER PLAINTIFFS' MEMO ISO FINAL APPROVAL OF CLASS ACTION SETTLEMENT
WITH TOSHIBA; Master File No. CV-07-5944-SC

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 23(e) and the Court's Order granting preliminary approval of the proposed settlement (Docket No. 1603), Direct Purchaser Class Plaintiffs ("Plaintiffs") submit this memorandum in support of final approval of the Class settlement ("Settlement") reached with Defendants Toshiba Corporation, Toshiba America Information Systems, Inc., Toshiba America Consumer Products, L.L.C., and Toshiba America Electronic Components, Inc. (collectively "Toshiba" or "Settling Defendants").

The Settlement provides for payment to the class in the amount of $13,500,000 for a complete release of all class members' claims as defined in paragraph 13 of the Settlement Agreement. Saveri Decl., Ex. 1. Toshiba has also agreed to cooperate with the Plaintiffs in providing certain information regarding the allegations in the complaint.  *Id.* (Settlement Agreement ¶ 24).  In addition, the sales of Toshiba remain in the case for the purpose of computing damages against the remaining non-settling Defendants. Saveri Decl. ¶ 21.

This is the fifth settlement in this action.  Settlements with Chunghwa, the Philips Defendants, the Panasonic Defendants, and the LG Defendants have been finally approved by the Court.

On March 18, 2013, the Court certified the Settlement Class and preliminarily approved the Settlement. (Docket No. 1603).  In addition, the Court: 1) ordered that class members be provided notice of the Settlement; 2) set May 16, 2013 as the date for class members to opt-out of the Settlement Class or object to the Settlement; and 3) set July 22, 2013 as the date for the hearing on final approval of the Settlement. *See id.*

There are no objections to the Settlement. Sherwood Decl. ¶ 10.

Direct Purchaser Plaintiffs respectfully request the Court grant final approval of the Settlement on the grounds that it is fair, adequate and reasonable to the class.

### II.   FACTUAL AND PROCEDURAL HISTORY

This multidistrict litigation arises from an alleged conspiracy to fix prices of Cathode Ray Tubes ("CRTs").  In November of 2007, the first direct purchaser plaintiff filed a class action

1  complaint on behalf of itself and all others similarly situated alleging a violation of section one of

2  the Sherman Act, 15 U.S.C. § 1, and section four of the Clayton Act, 15 U.S.C. § 15.  Thereafter,

3  additional actions were filed in other jurisdictions, and the Judicial Panel on Multidistrict Litigation

4  transferred all related actions to this Court on February 15, 2008. (Judicial Panel on Multidistrict

5  Litigation Transfer Order, Dkt. No. 122).  On May 9, 2008, Saveri & Saveri, Inc. was appointed

6  Interim Lead Class Counsel for the nationwide class of direct purchasers. (Order Appointing

7  Interim Lead Counsel, Dkt. No. 282).

8      On March 16, 2009, the Direct Purchaser Plaintiffs filed their Consolidated Amended

9  Complaint ("CAC") alleging an over-arching horizontal conspiracy among the Defendants and

10  their co-conspirators to fix prices for CRTs and to allocate markets and customers for the sale of

11  CRTs in the United States from March 1, 1995 through November 25, 2007 (the "Class Period").

12  The Complaint alleges that Plaintiffs and members of the Class are direct purchasers of CRTs

13  and/or CRT Finished Products from Defendants and/or their subsidiaries and were injured because

14  they paid more for CRTs and/or CRT Finished Products than they would have absent Defendants'

15  illegal conspiracy.  (Compl. ¶¶ 213–221).  Plaintiffs seek, among other things, treble damages

16  pursuant to Sections 4 of the Clayton Act, 15 U.S.C. §§ 15 and 22.  (Compl., Prayer for Relief ).

17      Defendants filed several motions to dismiss the CAC on May 18, 2009. (See Dkt. Nos.

18  463–493).  On February 5, 2010 this court issued its rulings denying in part and granting in part

19  Defendants' motions to dismiss (Report, Recommendations and Tentative Rulings regarding

20  Defendants' Motions to Dismiss, Dkt. No. 597).  After an objection by Defendants, Judge Conti on

21  March 30, 2010 entered an order approving and adopting Judge Legge's previous ruling and

22  recommendations. (Dkt. No. 665).  On April 29, 2010, Defendants answered the CAC.

23      Thereafter, in May 2010, certain Defendants propounded interrogatories requesting

24  Plaintiffs to identify what evidence they had about the existence of a conspiracy to fix the prices of

25  CRT Products at the time they filed their complaints.  Plaintiffs objected to these interrogatories as,

26  among other things, premature "contention" interrogatories.  Defendants moved to compel

27  answers.  On November 18, 2010, after a hearing, the Special Master ordered Plaintiffs to answer

28  the interrogatories. (Report and Recommendations Regarding Discovery Motions, Dkt. No. 810).

2

DIRECT PURCHASER PLAINTIFFS' MEMO ISO FINAL APPROVAL OF CLASS ACTION SETTLEMENT
WITH TOSHIBA; Master File No. CV-07-5944-SC

On December 8, 2010, the Court adopted the Special Master's Report and Recommendation. (Order Adopting Special Master's Report, Recommendation, and Tentative Rulings Regarding Discovery Motions, Dkt. No. 826). On January 31, 2011, Plaintiffs answered Defendants' interrogatories.

On March 21, 2011, certain Defendants moved for sanctions pursuant to Federal Rules of Civil Procedure, Rule 11 on the grounds that the allegations of a finished product conspiracy were without foundation and should be stricken from the complaint. (Defendants' Motion for Sanctions Pursuant to Rule 11, Dkt. No. 880).  On June 15, 2011, after hearing, the Special Master recommended that these Defendants' motion be granted and that Plaintiffs' allegations of a finished products conspiracy be stricken from the complaint. (Special Master Report and Recommendations on Motions Regarding Finished Products, Dkt. No. 947).  The Special Master also recommended that "the issue of the possible impact or effect of the alleged fixing of prices of CRTs on the prices of Finished Products shall remain in the case, and is a proper subject of discovery." *Id.* at p. 14.

On June 29, 2011, Defendants moved the Court to adopt the Special Master's Report and Recommendation. (Motion to Adopt Special Master's Report and Recommendation Regarding Finished Products, Dkt. No. 953).  Plaintiffs filed an objection to Special Master's Report and Recommendation. (Direct Purchaser Plaintiffs' Objection to Report and Recommendation on Motions Regarding Finished Products, Dkt. No. 957).   The Court set the matter for hearing on September 2, 2011. (Dkt. No. 968).

On August 26, 2011, before the hearing on the Special Master's Report and Recommendations Regarding Finished Products, the parties entered into a stipulation which provided, among other things: 1) that the Special Master's recommended finding that Plaintiffs violated Rule 11 be vacated; 2) that certain other aspects of the Special Master's recommendations be adopted; and 3) that Plaintiffs' "allegations of the Direct CAC purporting to allege a conspiracy encompassing Finished Products are Stricken from the Direct CAC, provided, however, that the issue of the possible impact or effect of the alleged fixing of prices of CRTs on the prices of Finished Products shall remain in the case."  In addition, Plaintiffs agreed to withdraw "all

discovery requests regarding or relating to information in support of the CRT Finished Product Conspiracy claims," and that "the issue of the purported impact or effect of the alleged fixing of prices of the CRTs on the prices of the Finished Products shall remain in the case and is a proper subject of discovery." (Stipulation and Order Concerning Pending Motions Re: Finished Products, Dkt. No. 996).

On December 12, 2011, Defendants filed a joint motion for Summary Judgment against Direct Purchaser Plaintiffs who purchased CRT Finished Products. (Dkt. No. 1013). On February 24, 2012, Plaintiffs filed their Memorandum of Points and Authorities in Opposition to Defendants' Motion For Partial Summary Judgment and supporting Declaration of R. Alexander Saveri under seal. (Dkt. No. 1057). That same day, the Direct Action Plaintiffs also filed an opposition to Defendants' motion. On March 9, 2012, Defendants filed their Reply In Support of Motion for Summary Judgment (Dkt. No. 1083) and on March 20, 2012, the Court heard argument. On May 31, 2012, the Special Master issued his Report and Recommendation regarding Defendants' Joint Motion for Summary Judgment recommending that the Court grant Defendants' motion and that judgment be entered against certain plaintiffs that directly purchased CRT Finished Products ("R&R"). (Dkt. No. 1221).

On June 12, 2012, the Direct Purchaser Plaintiffs, the Direct Action Plaintiffs, and the Defendants submitted a Stipulation notifying the Court that Plaintiffs intended to object to the R&R. (Dkt. No. 1228). On June 26, 2012, the Court ordered all parties to file their briefs by July 26, 2012 and set a hearing for August 10, 2012. (Dkt. No. 1240). On July 28, 2012, the Court vacated the hearing. (Dkt. No. 1243). The parties filed their briefs as ordered.

On November 29, 2012, the Court entered the Order Granting in Part and Denying in Part Defendants' Joint Motion for Summary Judgment ("Order") (Dkt. No. 1470). The Court found that the Direct Purchaser Plaintiffs that purchased a Finished Product, were "in fact indirect purchasers for purposes of antitrust standing." Order at p. 6. The Court ruled that the ownership and control exception created in *Royal Printing Co. v. Kimberly-Clark Corp.*, 621 F.2d 323 (9th Cir. 1980), conferred standing on Direct Purchaser Plaintiffs to sue "insofar as they purchased

1  [Finished Products] incorporating the allegedly price-fixed CRTs from an entity owned or

2  controlled by any allegedly conspiring defendant." Order at p. 16.

3         In September of 2008, the first of several stays prohibiting plaintiffs from obtaining merits

4  discovery was entered by this Court. (Stipulation and Order for Limited Discovery (Sept. 12, 2008)

5  (Dkt. No.379); Stipulation and Order to Extend Limited Discovery Stay (Feb. 5, 2009) (Dkt. No.

6  425); Stipulation and Order re: Amended Motion to Dismiss Briefing Schedule and Extended

7  Limited Discovery Stay (further extending the February 5, 2009 Order) (June 8, 2009) (Dkt. No.

8  509); Stipulation and Order to Extend Limited Discovery Stay (Jan. 5, 2010) (Dkt. No. 590)). On

9  June 4, 2008, Plaintiffs' propounded their First Set of Limited Document Requests. Thereafter, on

10  March 12, 2010, after the partial stay of discovery was lifted, Plaintiffs propounded their Second

11  Set of Document Requests and First Set of Interrogatories. After extensive meet and confers and

12  several motions to compel, the Court issued its Report Regarding Case Management Conference

13  No. 4 on October 27, 2011 setting the middle of December, 2011 as the deadline for the completion

14  of substantial discovery by all parties. (Dkt. Nos. 1007, 1008).  Plaintiffs have now received over 5

15  million pages of documents from Defendants.

16         On March 19, 2012, the Special Master issued the Scheduling Order and Order Re

17  Discovery and Case Management Protocol. (Dkt. Nos. 1093, 1094).  The Court entered both

18  Orders on April 3, 2012.  (Dkt. Nos. 1127, 1128).  The Scheduling Order set August 30, 2013 as

19  the date for completion of all fact and expert discovery.  Beginning in June of 2012, after meeting

20  and conferring with defendants regarding the scope and topics of 30(b)(6) witnesses, Plaintiffs in

21  coordination with the indirect purchasers, the Attorneys General, and the opt-out plaintiffs, began

22  taking 30(b)(6) depositions of the various defendants.  To date, plaintiffs collectively have deposed

23  approximately twenty-five corporate representatives.  Beginning in December of 2012, plaintiffs

24  began taking fact depositions.  To date, plaintiffs collectively have deposed more than fifteen fact

25  witnesses.

26         On October 19, 2012, the Court granted final approval of the first two settlements reached

27  in this case with: (1) Chunghwa Picture Tubes, Ltd. and Chunghwa Picture Tubes (Malaysia) Sdn.

28  Bhd. ("CPT"), and (2) Koninklijke Philips Electronics N.V., Philips Electronics North America

1   Corporation, Philips Electronics Industries (Taiwan), Ltd., and Philips Da Amazonia Industria

2   Electronica Ltda. (collectively, "Philips").  The Court certified a Settlement Class for the CPT and

3   Philips settlements, appointed Plaintiffs' Interim Lead Counsel as Settlement Class Counsel, and

4   found that the manner and form of providing notice of the settlements to class members was the

5   best notice practicable under the circumstances.  (Dkt. No. 1412).

6          On December 27, 2012, the Court granted final approval of the settlement reached in this

7   case with: Panasonic Corporation (f/k/a Matsushita Electric Industrial Co., Ltd.), Panasonic

8   Corporation of North America, and MT Picture Display Co., Ltd., (collectively, "Panasonic").  The

9   Settlement also released Defendant Beijing Matsushita Color CRT Co., Ltd. ("BMCC").  The

10  Court certified a Settlement Class, appointed Plaintiffs' Interim Lead Counsel as Settlement Class

11  Counsel, and found that the manner and form of providing notice of the settlements to class

12  members was the best notice practicable under the circumstances.  (Dkt. No. 1508).

13         On April 1, 2013, the Court granted final approval of the settlement reached in this case

14  with: LG Electronics, Inc., LG Electronics USA, Inc., and LG Electronics Taiwan Taipei Co., Ltd.

15  (collectively, "LG").  The Court certified a Settlement Class for the LG settlement, appointed

16  Plaintiffs' Interim Lead Counsel as Settlement Class Counsel, and found that the manner and form

17  of providing notice of the settlements to class members was the best notice practicable under the

18  circumstances.  (Dkt. No. 1621).

19         On, March 18, 2013, the Court preliminarily approved the Settlement before the Court.  The

20  Court certified a Settlement Class for the Settlement, appointed Plaintiffs' Interim Lead Counsel as

21  Settlement Class Counsel, approved the manner and form of providing notice of the Settlement to

22  class members, established a timetable for publishing class notice and set a hearing for final

23  approval.  (Dkt. No. 1603).

24         Plaintiffs have hired Gilardi & Co, LLC ("Gilardi") to serve as the Settlement

25  Administrator. On April 1, 2013, Gilardi mailed and e-mailed notice to each class member

26  identified by Defendants.  Sherwood Decl. ¶¶ 4–5.  On April 5, 2013, the Summary Notice was

27  published in The Wall Street Journal. *Id.* ¶ 8.  A website was also established at

28  www.CRTDirectPurchaserAntitrustSettlement.com, which contains copies of the Settlement

DIRECT PURCHASER PLAINTIFFS' MEMO ISO FINAL APPROVAL OF CLASS ACTION SETTLEMENT
WITH TOSHIBA; Master File No. CV-07-5944-SC

Agreement, Class Notice and Preliminary Approval Order. *Id.* ¶ 6. The deadline for objections to

the Settlement or requests for exclusion from the Settlement Class was May 16, 2013. Gilardi

received twenty-three (23) requests for exclusion from the Settlement Class and no objections. *Id.*

¶¶ 9, 10.

## III.    THE TERMS OF THE SETTLEMENT

In exchange for dismissal with prejudice and a release of all claims as defined in paragraph

13 of the Settlement Agreement, Toshiba has agreed to pay $13,500,000 in cash.  The settlement

funds have been paid and deposited into a separate escrow account for the Direct Purchaser Class.

Saveri Decl. ¶ 20.

In addition, Toshiba has agreed to cooperate with Plaintiffs in the prosecution of this action

by: 1) providing copies of all discovery (including among other things, all documents,

interrogatories, requests for admission, etc.) Toshiba produces to any other party in the Action; 2)

providing a declaration and/or custodian establishing the authenticity of Toshiba's transactional

data, and foundation of any Toshiba document or data needed at summary judgment or trial; 3)

allowing Counsel to question percipient witnesses noticed for deposition by any other party in the

Action with whom Toshiba has not settled; and 4) using its best efforts to make available two

persons for trial testimony, each of whom is, at the time of trial, a director, officer, and/or

employee of Toshiba whom Lead Counsel reasonably believes to have knowledge regarding

Plaintiffs' claims.  *Id.*, Ex. 1, ¶ 19.

In addition, Toshiba's sales remain in the case for purposes of computing damages against

the non-settling defendants. *Id.* ¶ 21.

Upon the Settlement becoming final, Plaintiffs and Class members will relinquish any

claims against Toshiba as described in paragraph 13 of the Settlement Agreement. Saveri Decl.,

Ex. 1, ¶ 13.  The release, however, excludes claims for product defects or personal injury.  *Id.*

The Settlement becomes final upon: (i) the Court's approval of the Settlement pursuant to

Rule 23(e) and the entry of a final judgment of dismissal with prejudice as to Toshiba; and (ii) the

expiration of the time for appeal or, if an appeal is taken, the affirmance of the judgment with no

further possibility of appeal.  Saveri Decl., Ex. 1, ¶ 11.

1      Subject to the approval and direction of the Court, the Settlement payment will be used to:

2  (i) make a distribution to Class members in accordance with a proposed plan of allocation to be

3  approved by the Court (Saveri Decl., Ex. 1, ¶ 21); (ii) pay Class Counsel's attorneys' fees, costs,

4  and expenses as may be awarded by the Court (*Id.*, Ex. 1, ¶¶ 22–23); and (iii) pay all taxes

5  associated with any interest earned on the escrow account.  *Id.*, Ex. 1, ¶ 17(f).   In addition, the

6  Settlement provides that $300,000 may be used to pay for Notice costs and future costs incurred in

7  the administration and distribution of the Settlement payments. *Id.*, Ex. 1, ¶ 19(a).

8  **IV.    ARGUMENT**

9      A class action may not be dismissed, compromised, or settled without the approval of the

10  Court.  Judicial proceedings under Federal Rule of Civil Procedure 23 have led to a defined

11  procedure and specific criteria for class action settlement approval. The Rule 23(e) settlement

12  approval procedure includes three distinct steps:

13      1.    Certification of a settlement class and preliminary approval of the proposed

14          settlement;

15      2.    Dissemination of notice of the settlement to all affected class members; and

16      3.    A formal fairness hearing, also called the final approval hearing, at which class

17          members may be heard regarding the settlement, and at which counsel may

18          introduce evidence and present argument concerning the fairness, adequacy, and

19          reasonableness of the settlement.

20  This procedure safeguards class members' due process rights and enables the Court to fulfill its

21  role as the guardian of class interests. *See* 4 Albert Conte & Herbert Newberg, *Newberg on Class*

22  *Actions* §§ 11.22, *et seq.* (4th ed. 2002) ("*Newberg*").

23      **A.    The Class Action Settlement Class.**

24      The Court here completed the first step in the settlement approval process when it granted

25  preliminary approval of the Settlement.

26      The Court certified a Settlement Class consisting of:

27      All persons and entities who, between March 1, 1995 and November 25, 2007,
        directly purchased a CRT Product in the United States from any defendant or any
28      subsidiary or affiliate thereof, or any co-conspirator. Excluded from the Class are

1    defendants, their parent companies, subsidiaries and affiliates, any co-conspirators,
2    all governmental entities, and any judges or justices assigned to hear any aspect of
     this action.

3    CRT Products refers to all forms of Cathode Ray Tubes, as well as to devices that contain

4    CRTs.  It includes CPTs, CDTs, monochrome display tubes and the finished products that

5    contain them—televisions and monitors. (Docket No. 1603).

6        **B.     The Court-Approved Notice Program Satisfies Due Process and Has Been
                   Fully Implemented.**
7

8        The second step in the settlement process has also been completed.  The Court-approved

9    notice plan has been successfully implemented and class members have been notified of the

10   Settlement.

11       When a proposed class action settlement is presented for court approval, the Federal Rules

12   require:

13           [T]he best notice that is practicable under the circumstances, including
             individual notice to all members who can be identified through reasonable
14           effort. The notice must clearly and concisely state in plain, easily
             understood language: (i) the nature of the action; (ii) the definition of the
15           class certified; (iii) the class claims, issues, or defenses; (iv) that a class
             member may enter an appearance through an attorney if the member so
16           desires; (v) that the court will exclude from the class any member who
             requests exclusion; (vi) the time and manner for requesting exclusion; and
17           (vii) the binding effect of a class judgment on members under Rule
             23(c)(3).

18   Fed. R. Civ. P. 23(c)(2)(B)

19       A settlement notice is a summary, not a complete source, of information.  *See, e.g.*, *Petrovic*

20   *v. Amoco Oil Co.*, 200 F.3d 1140, 1153 (8th Cir. 1999); *In re "Agent Orange" Prod. Liability*

21   *Litig.*, 818 F.2d 145, 170 (2d Cir. 1987), *cert. denied*, 484 U.S. 1004 (1988); *Mangone v. First USA*

22   *Bank*, 206 F.R.D. 222, 233 (S.D. Ill. 2001).  This circuit requires a general description of the

23   proposed settlement in such a notice.  *Churchill Vill. L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th

24   Cir. 2004); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993); *Mendoza v.*

25   *Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1351 (9th Cir. 1980), *cert. denied*, 450 U.S. 912 (1981).

26       The notice plan approved by this Court is commonly used in class actions like this one and

27   constitutes valid, due and sufficient notice to class members, and constitutes the best notice

28   practicable under the circumstances.  The content of the court-approved notices complies with the

1  requirements of Rule 23(c)(2)(b).  Both the summary and long-form notices clearly and concisely

2  explained in plain English the nature of the action and the terms of the Settlement.  They provided

3  a clear description of who is a member of the class and the binding effects of class membership.

4  They explained how to exclude oneself from the class, how to object to the Settlement, how to

5  obtain copies of papers filed in the case and how to contact Class counsel. *See* Sherwood Decl.,

6  Exs. A, B.  The notices also explained that they provided only a summary of the Settlement, that

7  the settlement agreement was on file with the District Court, and that the settlement agreement was

8  available online at: www.CRTDirectPurchaserAntitrustSettlement.com.  *See* Sherwood Decl., Exs.

9  A, B.  Consequently every provision of the Settlement was available to each class member.

10      The notice plan was implemented by the settlement administrator Gilardi & Co. LLC.

11  Sherwood Decl., ¶ 1.  Specifically, Gilardi printed and mailed 16,618 notices to class members

12  through U.S. Mail and electronically mailed notices to 872 unique electronic mail addresses of

13  class members. Sherwood Decl., ¶¶ 4, 5.  Gilardi also published notice in the April 5, 2013 Wall

14  Street Journal. Sherwood Decl., ¶ 8, Ex. B. Gilardi also maintains the case website, at which class

15  members can view and print the Class Notice, the Settlement Agreement, and the Preliminary

16  Approval Order. Sherwood Decl., ¶ 6.  Gilardi also established a toll-free telephone number to

17  answer Class members' questions in both English and Spanish.  Sherwood Decl. ¶ 7.

18      The notice plan is substantially identical to the notice plan used for the finally approved

19  CPT, Philips, Panasonic, and LG Settlements.  Saveri Decl. ¶ 24.

20  **C.    The Settlement Is "Fair, Adequate And Reasonable" and Should Be Granted
21         Final Approval.**

22      The law favors the compromise and settlement of class action suits. *See, e.g.*, *Byrd v. Civil

23  Serv. Comm'n*, 459 U.S. 1217 (1983); *Churchill Village*, 361 F.3d at 576 (9th Cir. 2004); *Class

24  Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  "The decision to approve or

25  reject a settlement is committed to the sound discretion of the trial judge because he is 'exposed to

26  the litigation and their strategies, positions and proof.'" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011,

27  1026 (9th Cir. 1988) (quoting *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 626 (9th

28  Cir. 1982)).  In exercising such discretion, courts should give "proper deference to the private

consensual decision of the parties . . . . [T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon*, 150 F.3d at 1027 (citation omitted).

It is well established in the Ninth Circuit that "voluntary conciliation and settlement are the preferred means of dispute resolution." *Officers for Justice*, 688 F.2d at 625.  "[T]here is an overriding public interest in settling and quieting litigation" and this is "particularly true in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *see also Utility Reform Project v. Bonneville Power Admin.*, 869 F.2d 437, 443 (9th Cir. 1989).  In evaluating a proposed class action settlement, the Ninth Circuit has recognized that:

> [T]he universally applied standard is whether the settlement is fundamentally fair, adequate and reasonable. The district court's ultimate determination will necessarily involve a balancing of several factors which may include, among others, some or all of the following: the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Officers for Justice*, 688 F.2d at 625 (citations omitted); *accord Torrisi*, 8 F.3d at 1375.

The court is entitled to exercise its "sound discretion" when deciding whether to grant final approval.  *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981); *Torrisi*, 8 F.3d at 1375.  "Where, as here, a proposed class settlement has been reached after meaningful discovery, after arm's length negotiation, conducted by capable counsel, it is presumptively fair." *M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819, 822 (D. Mass. 1987).

### 1.    The Settlement Provides Considerable Relief For The Class.

The consideration for the Settlement is substantial and provides considerable relief for the class. The Settlement provides for a payment of $13,500,000. *See* Saveri Decl. ¶ 20.  The Settlement also compares favorably to settlements finally approved in other price-fixing cases.

DIRECT PURCHASER PLAINTIFFS' MEMO ISO FINAL APPROVAL OF CLASS ACTION SETTLEMENT
WITH TOSHIBA; Master File No. CV-07-5944-SC

1   *See, e.g.*, *Fisher Bros. v. Mueller Brass Co.*, 630 F. Supp. 493, 499 (E.D. Pa. 1985) (recoveries

2   equal to .1%, .2%, 2%, .3%, .65%, .88%, and 2.4% of defendants' total sales).

3       Further, the settlement calls for Toshiba to cooperate with Plaintiffs. Saveri Decl. ¶ 22.

4   This is a valuable benefit because it will save time, reduce costs, and provide access to information,

5   witnesses, and documents regarding the CRT conspiracy that might otherwise not be available to

6   Plaintiffs. *See In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1386 (D. Md. 1983)

7   (a defendant's agreement to cooperate with plaintiffs "is an appropriate factor for a court to

8   consider in approving a settlement"). "The provision of such assistance is a substantial benefit to

9   the classes and strongly militates toward approval of the Settlement Agreement." *In re Linerboard*

10  *Antitrust Litig.*, 292 F. Supp. 2d 631, 643 (E.D. Pa. 2003). *See also In re Mid-Atlantic Toyota*

11  *Antitrust Litig.*, 564 F. Supp. at 1386 (concluding that commitment to cooperate is appropriate

12  factor to consider in approving partial settlement); *In re Corrugated Container Antitrust Litig.*,

13  Case No. M.D.L. 310, 1981 WL 2093, at *16 (S.D. Tex. June 4, 1981) ("The cooperation clauses

14  constituted a substantial benefit to the class."). In addition, "[i]n complex litigation with a plaintiff

15  class, 'partial settlements often play a vital role in resolving class actions.'" *Agretti v. ANR Freight*

16  *Sys., Inc.*, 982 F.2d 242, 247 (7th Cir. 1992) (quoting Manual for Complex Litigation Second, §

17  30.46 (1986)).

18      Finally, the settlement preserves Plaintiffs' right to litigate against the non-settling

19  defendants for the entire amount of Plaintiffs' damages based on joint and several liability. *See*

20  *Corrugated Container*, 1981 WL 2093, at *17; Saveri Decl. ¶ 21 (Released claims do not preclude

21  Plaintiffs from pursuing any and all claims against other non-settling defendants for the sales

22  attributable to Toshiba).

23              **2.       The Class Members' Positive Reaction Favors Final Approval.**

24      There are no objectors to the Settlement and the reaction of the class to the Settlement

25  supports this Court granting final approval. Sherwood Decl., ¶ 10. In determining the fairness and

26  adequacy of a proposed settlement, the Court also should consider "the reaction of the class

27  members to the proposed settlement." *Churchill Village*, 361 F.3d at 575; *Hanlon*, 150 F.3d at

28  1026. "It is established that the absence of a large number of objections to a proposed class action

12

DIRECT PURCHASER PLAINTIFFS' MEMO ISO FINAL APPROVAL OF CLASS ACTION SETTLEMENT
WITH TOSHIBA; Master File No. CV-07-5944-SC

1   settlement raises a strong presumption that the terms of a proposed class settlement action are

2   favorable to the class members."  *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D.

3   523, 529 (C.D. Cal. 2004); *see also, In re Fleet/Norstar Sec. Litig.*, 935 F. Supp. 99, 107 (D.R.I.

4   1996).

5          Pursuant to the Court's order, approximately 17,490 Class Notices were mailed or

6   electronically mailed to class members throughout the United States.  *See* Sherwood Decl., ¶¶ 4, 5.

7   When presented with the material financial terms of the proposed settlement, no members of the

8   class objected to the settlement. Sherwood Decl., ¶ 10.  In addition, only 23 class members opted

9   out of the class.  *See* Sherwood Decl., ¶¶ 4, 5, 10.  The reaction of the class to the proposed

10  settlement therefore supports the conclusion that the proposed settlement is fair, adequate and

11  reasonable.  *Pallas v. Pac. Bell*, No. C-89-2373 DLJ, 1999 WL 1209495, at *8 (N.D. Cal. 1999)

12  ("The small percentage—less than one percent—of persons raising objections is a factor weighing

13  in favor of approval of the settlement."); *Bynum v. Dist. of Columbia*, 412 F. Supp. 2d 73, 77

14  (D.D.C. 2006) ("The low number of opt outs and objectors (or purported objectors) supports the

15  conclusion that the terms of the settlement were viewed favorably by the overwhelming majority of

16  class members."). *See also, Arnold v. Arizona Dept. of Pub. Safety*, No. CV-01-1463-PHX-LOA,

17  2006 WL 2168637, at *10 (D. Ariz. July 31, 2006); *In re Patriot Am. Hospitality Inc. Sec. Litig.*,

18  No. MDL C-00-1300 VRW, 2005 WL 3801594, at *2 (N.D. Cal. Nov. 30, 2005).  The inference of

19  class's approval of the settlement is even stronger where, as here, much of the class consists of

20  sophisticated business entities.  *See Linerboard*, 321 F. Supp. 2d at 629.

21              **3.      The Settlement Eliminates Significant Risk To The Class.**

22          While Plaintiffs believe their case is strong, the settlement eliminates significant risks they

23  would face if the action were to proceed. Plaintiffs would bear the burden of establishing liability,

24  impact and damages. *See, e.g., Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 118 (2d Cir.

25  2005) ("Indeed, the history of antitrust litigation is replete with cases in which antitrust plaintiffs

26  succeeded at trial on liability, but recovered no damages, or only negligible damages, at trial, or on

27  appeal."); *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 475 (S.D.N.Y. 1998); *In*

28  *re Sumitomo Copper Litig.*, 189 F.R.D. 274, 283 (S.D.N.Y. 1999).  This is an important

1   consideration because Defendants have vowed to aggressively defend this action.  Thus, the

2   Settlement is in the best interest of the Class because it eliminates the risks of continued litigation,

3   while at the same time creating a substantial cash recovery and obtaining certain defendants'

4   cooperation.

5        Continued litigation against Defendants also would involve significant additional expenses

6   and protracted legal battles, which are avoided through the Settlement.  *In re Visa*

7   *Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 510 (E.D.N.Y. 2003), *aff'd* 396 F.3d 96

8   (2d Cir. 2005) ("The potential for this complex litigation to result in enormous expense, and to

9   continue for a long time, was great."); *Marisol A. ex rel. Forbes v. Giuliani*, 185 F.R.D. 152, 163

10  (S.D.N.Y. 1999) (noting that trial would last at least five months and require testimony from

11  numerous witnesses and experts); *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp.

12  2d 164, 174 (S.D.N.Y. 2000) ("Most class actions are inherently complex and settlement avoids the

13  costs, delays and multitude of other problems associated with them.").

14          **4.     The Settlement Is the Product of Arm's-Length Negotiations Between**
             **the Parties and The Recommendation of Experienced Counsel Favors**
15           **Approval.**

16  This class action has been vigorously litigated.  Class Counsel has analyzed millions of

17  documents produced by defendants and others.  They have also conducted an independent

18  investigation of the facts and analyzed Defendants' sales and pricing data.

19        The negotiations leading to the Settlement were vigorous, informed and thorough.  The

20  parties reached agreement after the exchange of mediation briefs and a mediation before an

21  experienced mediator, Eric Green.  They were contested and conducted in the utmost good faith.

22  Saveri Decl. ¶ 19.

23        Counsel's judgment that the Settlement is fair and reasonable is also entitled to great

24  weight.  *See Nat'l Rural Telcomms. Coop.*, 221 F.R.D. at 528 ("'Great weight' is accorded to the

25  recommendation of counsel, who are most closely acquainted with the facts of the underlying

26  litigation."); *accord Bellows v. NCO Fin. Sys.*, 2008 U.S. Dist. LEXIS 103525, at *22 (S.D. Cal.

27  Dec. 2, 2008); *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002);

28  *Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273, 288–89 (D. Colo. 1997); *Officers for Justice*,

14

1 │ 688 F.2d at 625.

2 │      While the Plaintiffs believe they have meritorious claims, Defendants have asserted that

3 │ they have strong defenses which would serve to eliminate their liability and/or damage exposure to

4 │ the Class.  The parties entered into the Settlement to eliminate the burden, and expense and risks of

5 │ further litigation.

6 │      For all of these reasons, the cash settlement obtained represents an excellent recovery and is

7 │ certainly "fair, adequate and reasonable" to the Class.  Accordingly, final approval should be

8 │ granted.

9 │      **D.**    **The Plan of Allocation Is "Fair, Adequate and Reasonable" and Therefore Should Be Approved.**

10 │

11 │      The Class Notice, which was disseminated in accordance with the Preliminary Approval

12 │ Order, outlined the following proposed plan for allocating the settlement proceeds:

13 │     In the future, each Settlement Class member's *pro rata* share of the Settlement
14 │     Fund will be determined by computing each valid claimant's total CRT Product purchases divided by the total valid CRT Product purchases claimed. This
15 │     percentage is multiplied to the Net Settlement Fund (total settlements minus all costs, attorneys' fees, and expenses) to determine each claimant's *pro rata* share
16 │     of the Settlement Fund. To determine your CRT Product purchases, CRT tubes (color display and color picture) are calculated at full value (100%) while CRT
17 │     televisions are valued at 50% and CRT computer monitors are valued at 75%. In summary, all valid claimants will share in the settlement funds on a *pro rata* basis
18 │     determined by the CRT value of the product you purchased — tubes 100%, monitors 75% and televisions 50%.

19 │ *See* Sherwood Decl., Ex. A, at 9.

20 │      Although Plaintiffs have proposed deferring the distribution of funds until a later date,

21 │ Plaintiffs have informed the class that any distribution will be made on a *pro rata* basis.  A plan of

22 │ allocation of class settlement funds is subject to the "fair, reasonable and adequate" standard that

23 │ applies to approval of class settlements.  *In re Citric Acid Antitrust Litig*., 145 F. Supp. 2d 1152,

24 │ 1154 (N.D. Cal. 2001).  A plan of allocation that compensates class members based on the type and

25 │ extent of their injuries is generally considered reasonable. *In re Computron Software, Inc.*, 6 F.

26 │ Supp. 2d 313, 321 (D.N.J. 1998).  Here the proposed distribution will be on a *pro rata* basis, with

27 │ no class member being favored over others.  This type of distribution has frequently been

28 │ determined to be fair, adequate, and reasonable.  *See In re Dynamic Random Access Memory*

1   *(DRAM) Antitrust Litig.*, No. M-02-1486 PJH, Dkt. No. 2093, p.2 (Oct. 27, 2010) (Order

2   Approving Pro Rata Distribution);  *In re Vitamins Antitrust Litig.*, No. 99-197 TFH, 2000 WL

3   1737867, at *6 (D.D.C. Mar. 31, 2000) ("Settlement distributions, such as this one, that apportions

4   funds according to the relative amount of damages suffered by class members, have repeatedly

5   been deemed fair and reasonable."); *In re Lloyds' Am. Trust Fund Litig.*, No. 96 Civ.1262 RWS,

6   2002 WL 31663577, at *19 (S.D.N.Y. Nov. 26, 2002) ("*pro rata* allocations provided in the

7   Stipulation are not only reasonable and rational, but appear to be the fairest method of allocating

8   the settlement benefits."); *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 135 (S.D.N.Y.

9   1997) ("*pro rata* distribution of the Settlement on the basis of Recognized Loss will provide a

10  straightforward and equitable nexus for allocation and will avoid a costly, speculative and bootless

11  comparison of the merits of the Class Members' claims").

12          In summary, class members will submit their purchase information for both CRT tubes and

13  finished products—televisions and monitors containing CRTs.  All class members will share in the

14  settlement funds on a *pro rata* basis determined by the CRT value of the product they purchased—

15  tubes 100%, monitors 75% and televisions 50%.

16          The proposed plan of allocation is identical to the plan of allocation for the finally approved

17  CPT, Philips, Panasonic, and LG settlements.  Saveri Decl. ¶ 24.  Accordingly, the plan of

18  allocation done on a *pro rata* basis in the instant case is "fair, adequate and reasonable" to the

19  Class and final approval of the plan of allocation should be granted.

20  **V.       OBJECTIONS BY CLASS MEMBERS**

21          As indicated above, there were no objections to the Settlement.

22  **VI.      EXCLUSIONS**

23          Class members were advised of the right to be excluded from the Settlement Class, which

24  could be accomplished through mailing a request for exclusion to the Settlement Administrator not

25  later than May 16, 2013.  Twenty-three (23) requests for exclusion were received from Class

26  members. Sherwood Decl., ¶ 9, Ex. C.

27

28

DIRECT PURCHASER PLAINTIFFS' MEMO ISO FINAL APPROVAL OF CLASS ACTION SETTLEMENT
WITH TOSHIBA; Master File No. CV-07-5944-SC

## VII.    CONCLUSION

For the foregoing reasons set forth herein, Plaintiffs respectfully submit that the Court should enter an order granting the relief requested by this motion: (i) granting final approval of the Settlement; and (ii) granting final judgment and dismissal with prejudice as to Toshiba.

Dated: July 1, 2013.

Respectfully submitted,

/s/ *Guido Saveri*

Guido Saveri (22349)
R. Alexander Saveri (173102)
Geoffrey C. Rushing (126910)
Cadio Zirpoli (179108)
Travis L. Manfredi (281779)
SAVERI & SAVERI, INC.
706 Sansome Street
San Francisco, CA  94111
Telephone:  (415) 217-6810
Facsimile:  (415) 217-6813

*Interim Lead Counsel For Plaintiffs*

Joseph W. Cotchett
Steven N. Williams
Adam J. Zapala
COTCHETT, PITRE & McCARTHY, LLP
840 Malcolm Road
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577

Bruce L. Simon
Aaron M. Sheanin
PEARSON, SIMON, WARSHAW & PENNY LLP
44 Montgomery Street, Suite 2450
San Francisco, CA 94104
Telephone:  (415) 433-9000
Facsimile:  (415) 433-9008

H. Laddie Montague, Jr.
Ruthanne Gordon
Charles P. Goodwin
Candice Enders
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Telephone: (800) 424-6690
Facsimile: (215) 875-4604

DIRECT PURCHASER PLAINTIFFS' MEMO ISO FINAL APPROVAL OF CLASS ACTION SETTLEMENT
WITH TOSHIBA; Master File No. CV-07-5944-SC

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Michael P. Lehmann
HAUSFELD LLP
44 Montgomery Street, Suite 3400
San Francisco, CA 94104
Telephone:  (415) 633-1908
Facsimile:  (415) 358-4980

Gary Specks
KAPLAN FOX
423 Sumac Road
Highland Park, IL 60035
Telephone: (847) 831-1585
Facsimile: (847) 831-1580

Douglas A. Millen
William H. London
FREED KANNER LONDON & MILLEN
2201 Waukegan Road
Suite 130
Bannockburn, IL 60015
Telephone: (224) 632-4500
Facsimile: (224) 632-4519

Eric B. Fastiff
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

W. Joseph Bruckner
Elizabeth R. Odette
LOCKRIDGE GRINDAL NAUEN P.L.L.P
100 Washington Avenue S
Suite 2200
Minneapolis, MN 55401
Telephone:  (612) 339-6900
Facsimile: (612) 339-0981

*Attorneys for Plaintiffs*