1  Robert A. Sacks (SBN 150146)
   sacksr@sullcrom.com
2  Rory P. Culver (SBN 271868)
   culverr@sullcrom.com
3  SULLIVAN & CROMWELL LLP
   1888 Century Park East, Suite 2100
4  Los Angeles, California 90067
   Tel: (310) 712-6600
5  Fax: (310) 712-8800

6  Laura Kabler Oswell (SBN 241281)
   oswelll@sullcrom.com
7  SULLIVAN & CROMWELL LLP
   1870 Embarcadero Road
8  Palo Alto, California 94303
   Tel.: (650) 461-5600
9  Fax: (650) 461-5700

10 Attorneys for Specially Appearing
   Defendant Thomson S.A.

11

12                    **UNITED STATES DISTRICT COURT**

13                   **NORTHERN DISTRICT OF CALIFORNIA**

14                      **SAN FRANCISCO DIVISION**

15

16 IN RE:  CATHODE RAY TUBE          )   Master File No.  3:07-5944-SC
   (CRT) ANTITRUST LITIGATION        )
17                                    )   MDL No. 1917
                                      )
18 _____       )   **THOMSON S.A.'S NOTICE OF MOTION**
                                      )   **AND MOTION TO DISMISS FOR LACK**
19 This Document Relates to:         )   **OF PERSONAL JURISDICTION**
                                      )
20                                    )   Date:  October 14, 2013
   *Sharp Electronics Corp., et al. v.*  )   Time: 9:00 a.m.
21 *Hitachi, Ltd., et al.*, No. 13-cv-01173.  )   Place: JAMS Resolution Center,
                                      )   Two Embarcadero Center, Suite 1500
22                                    )   Judge: Hon. Samuel Conti
                                      )   Special Master: Hon. Charles A. Legge (Ret.)
23                                    )
                                      )   [DECLARATION OF ADRIEN CADIEUX
24                                    )   AND [PROPOSED] REPORT AND
                                      )   RECOMMENDATION GRANTING
25                                    )   MOTION TO DISMISS FILED
                                      )   CONCURRENTLY HEREWITH]
26                                    )
                                      )
27                                    )
                                      )
28 _____       )

SULLIVAN & CROMWELL LLP

1                     **NOTICE OF MOTION AND MOTION TO DISMISS**

2   TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

3            PLEASE TAKE NOTICE that on October 14, 2013 at 9:00 a.m. or as soon

4 thereafter as this matter may be heard, before the Honorable Charles A. Legge (Ret.) at the office

5 of JAMS, Two Embarcadero Center, Suite 1500, San Francisco, California, specially appearing

6 defendant Thomson S.A. will and hereby does move this Court for an order dismissing the

7 claims asserted against Thomson S.A. in the above-titled action pursuant to Rule 12(b)(2) of the

8 Federal Rules of Civil Procedure for lack of personal jurisdiction.

9            In support of this Motion, Thomson S.A. relies upon this Notice of Motion and

10 Motion, the Memorandum of Points and Authorities in support thereof, the Declaration of Adrien

11 Cadieux sworn on June 28, 2013 in support thereof, and such other materials and information

12 that the Court may properly consider at or before the hearing on this motion.

13 Dated:  July 3, 2013

14                                        _/s/ Robert A. Sacks_

15                                      Robert A. Sacks (SBN 150146)
                                         Rory P. Culver (SBN 271868)

16                                     SULLIVAN & CROMWELL LLP
                                         1888 Century Park East, Suite 2100

17                                     Los Angeles, California 90067
                                        Tel.: (310) 712-6600

18                                     Fax: (310) 712-8800

19                                     Laura Kabler Oswell (SBN 241281)
                                    SULLIVAN & CROMWELL LLP

20                                     1870 Embarcadero Road
                                      Palo Alto, California 94303

21                                     Tel.: (650) 461-5600
                                      Fax: (650) 461-5700

22                                     Attorneys for Specially Appearing Defendant

23                                     Thomson S.A.

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................. 1

ISSUE TO BE DECIDED .......................................................................................................... 1

PRELIMINARY STATEMENT ................................................................................................ 1

SHARP'S ALLEGATIONS ....................................................................................................... 2

ARGUMENT .............................................................................................................................. 4

I.      Sharp's Claims Against Thomson S.A. Should Be Dismissed Because This Court Lacks Personal Jurisdiction Over Thomson S.A. ................................................................. 4

      A.      This Court Lacks General Jurisdiction Over Thomson S.A. .................................. 4

      B.      This Court Lacks Specific Jurisdiction Over Thomson S.A. .................................. 6

              1.      Thomson S.A. Did Not Purposefully Direct Activities to This Forum. ................................................................................................... 7

              2.      Sharp's Claims Do Not Arise Out of Thomson S.A.'s Forum-Related Activities. ........................................................................................ 9

              3.      The Exercise of Jurisdiction in This Case Would be Unreasonable. ........ 10

      C.      This Court Does Not Have Jurisdiction Over Thomson S.A. by Virtue of Thomson Consumer's Activities in This Forum. ................................................. 12

              1.      Thomson is Not the Alter Ego of Thomson S.A. ...................................... 13

              2.      Thomson Consumer is Not the Agent of Thomson S.A. .......................... 15

CONCLUSION ......................................................................................................................... 17

## TABLE OF AUTHORITIES

Page(s)

### CASES

*Action Embroidery Corp.* v. *Atl. Embroidery, Inc.*,
   368 F.3d 1174 (9th Cir. 2004) ....................................................................4

*Amoco Egypt Oil Co.* v. *Leonis Nav. Co.*,
   1 F.3d 848 (9th Cir. 1993) ........................................................................5

*Asahi Metal Indus. Co.* v. *Superior Court*,
   480 U.S. 102 (1987) ...........................................................................5, 11

*AT&T Co.* v. *Compagnie Bruxelles Lambert*,
   94 F.3d 586 (9th Cir. 1996) .....................................................................13

*Audio MPEG, Inc.* v. *Thomson S.A.*,
   No. Civ. 05-0565, slip op. (E.D. Va. Oct. 17, 2005) ...............................13

*Bancroft & Masters, Inc.* v. *Augusta Nat'l, Inc.*,
   223 F.3d 1082 (9th Cir. 2000) ...........................................................4, 8, 10

*Barantsevich* v. *VTB Bank*,
   No. CV 12-08993, 2013 WL 3188178 (C.D. Cal. May 29, 2013) ..........9

*Bauman* v. *DaimlerChrysler Corp.*,
   644 F.3d 909 (9th Cir. 2011) ..........................................................12, 15, 16

*Beene* v. *Beene*,
   No. C 11-6717, 2012 WL 3583021 (N.D. Cal. Aug. 20, 2012)..............12

*Brady* v. *Grendene USA, Inc.*,
   No. 12cv0604, 2012 WL 2930081 (S.D. Cal. July 17, 2012)..................16

*Burger King Corp.* v. *Rudzewicz*,
   471 U.S. 462 (1985)................................................................................10

*Calder* v. *Jones*,
   465 U.S. 783 (1984)..................................................................................7

*Calvert* v. *Huckins*,
   875 F. Supp. 674 (E.D. Cal. 1995)......................................................12, 13

*Data Disc, Inc.* v. *Sys. Tech. Assocs., Inc.*,
   557 F.2d 1280 (9th Cir. 1977) ..................................................................5

*Doe* v. *Unocal Corp.*,
   248 F.3d 915 (9th Cir. 2001) .......................................................... *passim*

*Dole Food Co., Inc.* v. *Watts*,
   303 F.3d 1104 (9th Cir. 2002) ..................................................................7

*E. & J. Gallo Winery* v. *EnCana Energy Servs., Inc.*,
   No. CV F 03-5412, 2008 WL 2220396 (E.D. Cal. May 27, 2008) ........17

*Ferrigno* v. *Philips Elec. N. Am. Corp.*,
No. C-09-03085, 2010 WL 2219975 (N.D. Cal. June 1, 2010)..........................................14, 16

*Fields* v. *Sedgwick Associated Risks, Ltd.*,
796 F.2d 299 (9th Cir. 1986) ..........................................................................................................4

*Fischer* v. *Alfa Chems. Italiana*,
No. 05-17402, 2007 WL 4292250 (9th Cir. Dec. 7, 2007) ..............................................................5

*Fischer* v. *Prof'l Compounding Ctrs. of Am., Inc.*,
318 F. Supp. 2d 1046 (D. Nev. 2004) .............................................................................................5

*Fletcher* v. *Atex, Inc.*
68 F.3d 1451 (2d Cir. 1995)..........................................................................................................14

*Fleury* v. *Cartier Int'l*,
No. C-05-4525, 2006 WL 2934089 (N.D. Cal. Oct. 13, 2006) .......................................................7

*Flynt Distrib. Co., Inc.* v. *Harvey*,
734 F.2d 1389 (9th Cir. 1984) ........................................................................................................4

*Gallagher* v. *Mazda Motor of Am., Inc.*,
781 F. Supp. 1079 (E.D. Pa. 1992) ...............................................................................................16

*Glencore Grain Rotterdam B.V.* v. *Shivnath Rai Harnarain Co.*,
284 F.3d 1114 (9th Cir. 2002) .............................................................................................. *passim*

*Goodyear Dunlop Tires Opers., S.A.* v. *Brown*,
131 S. Ct. 2846 (2011)................................................................................................................4-5

*Hanson* v. *Denckla*,
357 U.S. 235 (1958)........................................................................................................................6

*Harris Rutsky & Co. Ins. Servs., Inc.* v. *Bell & Clements Ltd.*,
328 F.3d 1122 (9th Cir. 2003) ...........................................................................................4, 13, 15

*Holland Am. Line, Inc.* v. *Wärtsilä N. Am., Inc.*,
485 F.3d 450 (9th Cir. 2007) ..........................................................................................................8

*In re Cal. Title Ins. Antitrust Litig.*,
No. C 08-01341, 2009 WL 1458025 (N.D. Cal. May 21, 2009) .....................................................8

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
No. C 02-1486, 2005 WL 2988715 (N.D. Cal. Nov. 7, 2005)...........................................8, 10, 12

*In re Perrier Bottled Water Litig.*,
138 F.R.D. 348 (D. Conn. 1991).................................................................................................11

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
586 F. Supp. 2d 1109 (N.D. Cal. 2008) .........................................................................................8

*In re W. States Wholesale Natural Gas. Antitrust Litig.*,
605 F. Supp. 2d 1118 (D. Nev. 2009).........................................................................................16

*Int'l Shoe Co.* v. *Washington*,
326 U.S. 310 (1945)....................................................................................................................4, 5

*J. McIntyre Mach., Ltd.* v. *Nicastro*,
  131 S. Ct. 2780 (2011) ..................................................................................5

*Kramer Motors, Inc.* v. *British Leyland, Ltd.*,
  628 F.2d 1175 (9th Cir. 1980) ...................................................7, 14, 17

*Lake* v. *Lake*,
  817 F.2d 1416 (9th Cir. 1987) ....................................................................6

*Leasco Data Processing Equip. Corp.* v. *Maxwell*,
  468 F.2d 1326 (2d Cir. 1972)......................................................................7

*Mavrix Photo, Inc.* v. *Brand Techs., Inc.*,
  647 F.3d 1218 (9th Cir. 2011) .............................................................4, 5

*McGlinchy* v. *Shell Chem. Co.*,
  845 F.2d 802 (9th Cir. 1988) ....................................................................10

*Menken* v. *Emm*,
  503 F.3d 1050 (9th Cir. 2007) ..................................................................11

*Milliken* v. *Meyer*,
  311 U.S. 457 (1940)......................................................................................4

*Monje* v. *Spin Master, Inc.*,
  No. CV-09-1713, 2013 WL 2390625 (D. Ariz. May 30, 2013) ........ 15-16

*N. Am. Lubricants Co.* v. *Terry*,
  No. 11-1284, 2012 WL 1108918 (E.D. Cal. Apr. 2, 2012) ....................5, 8

*Nw. Aluminum Co. et al.* v. *Hydro Aluminum Deutschland GmbH*,
  No. Civ. 02-398, 2003 WL 23571744 (D. Or. Sept. 23, 2003) ..................9

*NuCal Foods, Inc.* v. *Quality Egg LLC*,
  887 F. Supp. 2d 977 (E.D. Cal. 2012)......................................................15

*Omeluk* v. *Langsten Slip & Batbyggeri A/S*,
  52 F.3d 267 (9th Cir. 1995) ........................................................................6

*Pebble Beach Co.* v. *Caddy*,
  453 F.3d 1151 (9th Cir. 2006) ....................................................................8

*Purdue Research Found.* v. *Sanofi-Synthelabo, S.A.*,
  338 F.3d 773 (7th Cir. 2003) ......................................................................5

*Rivercard, LLC* v. *Post Oak Prods., Inc.*,
  No. 12-cv-01150, 2013 WL 1908315 (D. Nev. May 6, 2013) ..................1

*Schnabel* v. *Lui*,
  302 F.3d 1023 (9th Cir. 2002) ....................................................................1

*Schwarzenegger* v. *Fred Martin Motor Co.*,
  374 F.3d 797 (9th Cir. 2004) ............................................................ *passim*

*Shute* v. *Carnival Cruise Lines*,
  897 F.2d 377 (9th Cir. 1990) ......................................................................6

SULLIVAN & CROMWELL LLP

*Sinatra* v. *Nat'l Enquirer, Inc.*,
    854 F.2d 1191 (9th Cir. 1988) ....................................................................................11

*Sol Focht* v. *Sol Melia S.A.*,
    No. C-10-0906, 2012 WL 162564 (N.D. Cal. Jan. 19, 2012)...................................16

*Sprint Telephony PCS, L.P.* v. *Cnty. of San Diego*,
    311 F. Supp. 2d 898 (S.D. Cal. 2004)........................................................................1

*Terracom* v. *Valley Nat'l Bank*,
    49 F.3d 555 (9th Cir. 1995) .......................................................................................10

*United States* v. *Bestfoods*,
    524 U.S. 51 (1998)......................................................................................................14

*Wehlage* v. *EmpRes Healthcare, Inc.*,
    791 F. Supp. 2d 774 (N.D. Cal. 2011) .......................................................................15

*Wine Bottle Recycling, LLC* v. *Niagara Sys. LLC*,
    No. 12-1924, 2013 WL 1120962 (N.D. Cal. Mar. 18, 2013) ....................................9

**STATUTES**

Section 1 of the Sherman Act, 15 U.S.C. § 1.........................................................................2

Section 12 of the Clayton Act, 15 U.S.C. § 22 .....................................................................4

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b) .........................................................................................................1, 12

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2  Pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, Thomson S.A.

3  (n/k/a Technicolor S.A.) specially appears in this matter solely for the purpose of objecting to

4  this Court's jurisdiction, and respectfully submits this Memorandum in support of its motion to

5  dismiss ("Motion") the claims asserted against Thomson S.A. by Sharp Electronics Corporation

6  and Sharp Electronics Manufacturing Company of America, Inc. (collectively, "Sharp").[1]

7

## ISSUE TO BE DECIDED

8  Whether the claims against Thomson S.A. set forth in Sharp's Complaint filed on

9  March 15, 2013 (the "Complaint" or "Compl.") should be dismissed pursuant to Rule 12(b)(2) of

10  the Federal Rules of Civil Procedure on the ground that the Court lacks personal jurisdiction over

11  Thomson S.A. in this case because Thomson S.A. is incorporated and headquartered outside of

12  the United States, lacks the requisite "minimum contacts" with the United States, including

13  California, New York, New Jersey, and Tennessee, and has never manufactured or sold any

14  products relevant to this litigation in the United States.

15

## PRELIMINARY STATEMENT

16  Sharp asks this Court to exercise personal jurisdiction over Thomson S.A., a

17  French holding company with its principal place of business in Issy-les-Moulineaux, France that

18  has never done business in the United States, does not maintain any offices in the United States,

19  has never manufactured or distributed cathode ray tubes ("CRTs") or products containing CRTs

20  ("CRT Products") (Compl. ¶¶ 1, 3) in the United States or elsewhere, and, as alleged in the

21  Complaint, has not owned any entities that manufacture or distribute CRTs or CRT Products

22  since 2005. Notwithstanding Thomson S.A.'s absolute irrelevance to this years-old class action,

23

---

24  [1] In the event that this Court denies the Motion, Thomson S.A. will move to dismiss the Complaint for failure to state a claim pursuant to Rule 12(b)(6) and will join in Thomson Consumer Electronics, Inc.'s Motion to Dismiss (MDL Dkt. No. 1677). *See Schnabel* v. *Lui*,

25  302 F.3d 1023, 1034 (9th Cir. 2002) (holding only waivable defenses, such as lack of personal jurisdiction and insufficiency of process, must be raised in initial motion to dismiss); *see also*

26  *Rivercard, LLC* v. *Post Oak Prods., Inc.*, No. 12-cv-01150, 2013 WL 1908315, at *3 n.2 (D. Nev. May 6, 2013) (allowing motion to dismiss for failure to state a claim after motion to

27  dismiss for lack of personal jurisdiction); *Sprint Telephony PCS, L.P.* v. *Cnty. of San Diego*, 311 F. Supp. 2d 898, 905 (S.D. Cal. 2004) (allowing successive motions to dismiss for failure to state

28  a claim).

1   Sharp filed claims against it under Section 1 of the Sherman Act, 15 U.S.C. § 1, and under the

2   laws of California, New York, New Jersey and Tennessee, based on an alleged price-fixing

3   conspiracy among CRT suppliers.  (Compl. ¶ 1.)  In doing so, Sharp asks this Court to ignore the

4   fundamental constitutional requirement that the exercise of personal jurisdiction over Thomson

5   S.A. must comport with the Due Process Clause.  Because Sharp fails to offer any facts to

6   establish this Court's jurisdiction over Thomson S.A.—despite being on notice since at least

7   October 15, 2008 that Thomson S.A. would object to the jurisdiction of this Court (MDL Dkt.

8   No. 397)—its claims against Thomson S.A. should be dismissed with prejudice.

9           This Court does not have general or specific jurisdiction over Thomson S.A.

10  *First*, this Court cannot exercise general jurisdiction over Thomson S.A.  Although Sharp alleges

11  generically that "[e]ach Defendant conducts substantial business in" or "maintain[s] their

12  headquarters in" the United States (Compl. ¶ 19), the attached declaration of Adrien Cadieux (the

13  "Cadieux Declaration" or "Cadieux Decl.") demonstrates that Thomson S.A. lacks any contacts

14  with this forum, let alone the continuous and systematic contacts on which general jurisdiction

15  must be based.  *Second*, this Court cannot exercise specific jurisdiction over Thomson S.A.

16  because Thomson S.A. has not purposefully directed its activities at this forum, Sharp's claims

17  do not arise out of Thomson S.A.'s contacts with this forum, and the exercise of specific

18  jurisdiction in this case would be unreasonable.  *Third*, this Court cannot exercise personal

19  jurisdiction over Thomson S.A. on the basis of the contacts of its U.S. subsidiary Thomson

20  Consumer Electronics, Inc. (n/k/a Technicolor U.S.A. Inc.) ("Thomson Consumer"), because the

21  Complaint does not establish the existence of an "alter-ego" or "agency" relationship between

22  those two entities, which are both formally and factually independent from one another.  Indeed,

23  the only other district court in the United States to consider this issue has concluded that there is

24  no basis for imputing the contacts of Thomson Consumer to Thomson S.A.

25                          **<u>SHARP'S ALLEGATIONS</u>**

26          In the 64 pages and 287 paragraphs that comprise the Complaint, the only

27  allegations regarding Thomson S.A.'s contacts with this forum are that Thomson S.A.: (1)

28  "*through its wholly owned subsidiary [Thomson Consumer], was a major manufacturer of CRTs*

for the United States market, with plants located in the United States, Mexico, China and Europe" (Compl. ¶ 72 (emphasis added)); (2) "sold its CRTs internally to its television-manufacturing division, which had plants in the United States and Mexico, and to other television manufacturers in the United States and elsewhere" (*id.*); (3) "manufactured, marketed, sold and/or distributed CRT Products either directly or *through its subsidiaries or affiliates* throughout the United States" (*id.* (emphasis added)); and (4) "dominated and/or controlled the finances, policies, and/or affairs of [Thomson Consumer] relating to the antitrust violations alleged in [the] Complaint"[2] (*id.* ¶ 73).

The remainder of the allegations on which Sharp must base its claim for personal jurisdiction are generic and are alleged indiscriminately against 39 different defendants, including that the defendants "[conduct] substantial business in the state of California, . . . maintain their headquarters in this District or elsewhere in California[,] . . . purposefully availed themselves of the laws of the United States and California insofar as they manufactured, marketed, or distributed CRT Products in the United States and California, and . . . have admitted that they engaged in conduct in furtherance of the conspiracy in the Northern District of California." (*Id.* ¶ 19.)  But these blanket allegations are not true as against Thomson S.A., who has not admitted any conduct in furtherance of the alleged conspiracy, and are contradicted by other allegations in the Complaint.  (*See, e.g., id.* ¶ 72 (alleging that Thomson S.A. is a French corporation with a principal place of business in France).)  They are also directly contradicted by the Cadieux Declaration, which confirms that Thomson S.A.'s headquarters are located in France and which demonstrates that Thomson S.A. has never manufactured, marketed, sold or distributed CRTs or CRT Products in the United States or elsewhere.  (Cadieux Decl. ¶¶ 4, 14-15.)

---

[2] Sharp has advanced this boilerplate allegation *thirty-eight times* as to various defendants and co-conspirators.  (*See* Compl. ¶¶ 33-37, 40-41, 43, 49-54, 57-63, 66-70, 73, 76-77, 85-88, 91, 94-95, 100-01.)

1

**ARGUMENT**

2

**I.    SHARP'S CLAIMS AGAINST THOMSON S.A. SHOULD BE DISMISSED**
3 **BECAUSE THIS COURT LACKS PERSONAL JURISDICTION OVER**
**THOMSON S.A.**

4              Sharp "has the burden of establishing that jurisdiction exists."  *Flynt Distrib. Co.,*

5 *Inc.* v. *Harvey*, 734 F.2d 1389, 1392 (9th Cir. 1984); *Harris Rutsky & Co. Ins. Servs., Inc.* v. *Bell*

6 *& Clements Ltd.*, 328 F.3d 1122, 1128-29 (9th Cir. 2003).  The Complaint should be dismissed if

7 Sharp fails to make a prima facie showing of personal jurisdiction.  *See Fields* v. *Sedgwick*

8 *Associated Risks, Ltd.*, 796 F.2d 299, 301 (9th Cir. 1986).  And, Sharp's allegations need not be

9 taken as true if they are contradicted by a sworn declaration.  *See Mavrix Photo, Inc.* v. *Brand*

10 *Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011), *cert. denied*, 132 S. Ct. 1101 (2012).

11              The Court can exercise personal jurisdiction over a non-resident defendant only

12 where doing so is consistent with the Due Process Clause, which requires that the defendant have

13 such minimum contacts with the forum that "the maintenance of the suit does not offend

14 'traditional notions of fair play and substantial justice.'"  *Int'l Shoe Co.* v. *Washington*, 326 U.S.

15 310, 316 (1945) (quoting *Milliken* v. *Meyer*, 311 U.S. 457, 463 (1940)).  In order to satisfy the

16 Due Process Clause, Sharp must demonstrate that either (a) Thomson S.A. has such substantial

17 contacts with the United States that it is effectively "physical[ly] presen[t]" and therefore subject

18 to general jurisdiction here, or (b) Thomson S.A. has a sufficient connection to the alleged

19 misconduct through acts *in* or *purposefully directed at* the forum to establish specific jurisdiction

20 for the purposes of this litigation.  *See Bancroft & Masters, Inc.* v. *Augusta Nat'l, Inc.*, 223 F.3d

21 1082, 1086 (9th Cir. 2000).[3]  Sharp has not met its burden.

22              **A.    This Court Lacks General Jurisdiction Over Thomson S.A.**

23              General jurisdiction only exists over a foreign corporation when its "affiliations

24 with the [forum] are so 'continuous and systematic' as to render [it] essentially at home in the

25 forum . . . ."  *Goodyear Dunlop Tires Opers., S.A.* v. *Brown*, 131 S. Ct. 2846, 2851 (2011) (citing

26

27 [3] Under Section 12 of the Clayton Act, 15 U.S.C. § 22, "the relevant forum . . . is the United
States."  *Action Embroidery Corp.* v. *Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004)
28 (explaining that national contacts analysis applies when the relevant statute provides for
nationwide service of process).

1   *Int'l Shoe*, 326 U.S. at 317).  "This is an exacting standard," *Schwarzenegger* v. *Fred Martin*

2   *Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004), that requires the plaintiff to show that the

3   defendant's contacts "constitute the kind of continuous and systematic general business contacts

4   that approximate physical presence." *Glencore Grain Rotterdam B.V.* v. *Shivnath Rai Harnarain*

5   *Co.*, 284 F.3d 1114, 1124 (9th Cir. 2002) (quotation omitted).  Sharp can therefore only establish

6   general jurisdiction as to Thomson S.A. through "a showing of substantial operations in the

7   [United States], marked by longevity, continuity, volume, economic impact, physical presence,

8   and integration into the [nation's] markets." *N. Am. Lubricants Co.* v. *Terry*, No. 11-1284, 2012

9   WL 1108918, at *5 (E.D. Cal. Apr. 2, 2012) (citing *Mavrix Photo*, 647 F.3d at 1224 and *Data*

10  *Disc, Inc.* v. *Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1287 (9th Cir. 1977)).  The Ninth Circuit

11  has "regularly . . . declined to find general jurisdiction even where the contacts [have been] quite

12  extensive." *Amoco Egypt Oil Co.* v. *Leonis Nav. Co.*, 1 F.3d 848, 851 n.3 (9th Cir. 1993); s*ee*

13  *also Asahi Metal Indus. Co.* v. *Superior Court*, 480 U.S. 102, 115-16 (1987).

14            Sharp cannot satisfy this "exacting standard" and does not allege the "extensive"

15  contacts in the forum that could provide a basis for general jurisdiction.  *Schwarzenegger*, 374

16  F.3d at 801.  Sharp has not alleged any meaningful conduct or involvement on the part of

17  Thomson S.A. in the United States, let alone conduct that could rise to the level of "continuous

18  and systematic . . . contacts."[4]  *Glencore*, 284 F.3d at 1124.  And, as described in the Cadieux

19  Declaration, no such facts exist.  As Sharp alleges, Thomson S.A. is a French entity located in

20  France.  (Compl. ¶ 72; *see also* Cadieux Decl. ¶ 4.)  It has no operations and no employees

21  anywhere in the United States.  (Cadieux Decl. ¶¶ 6-7.)  It maintains no offices in the United

22

23  [4] Nor can Sharp establish jurisdiction simply by alleging that Thomson S.A. placed CRT
    Products in the stream of commerce (*see* Compl. ¶ 70).  *See J. McIntyre Mach., Ltd.* v. *Nicastro*,
24  131 S. Ct. 2780, 2785 (2011) (rejecting the notion that "the so-called stream-of-commerce
    doctrine" can "displace" "the general rule" that a party must "purposefully avail[] itself of the
25  privilege of conducting activities within the forum" (quotation omitted)); *see also Purdue*
    *Research Found.* v. *Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 788-89 & n.19 (7th Cir. 2003)
26  (holding that the stream of commerce theory "provides no basis for exercising general
    jurisdiction over a nonresident defendant") (collecting cases); *see also Fischer* v. *Prof'l*
27  *Compounding Ctrs. of Am., Inc.*, 318 F. Supp. 2d 1046, 1050 (D. Nev. 2004); *aff'd Fischer* v.
    *Alfa Chems. Italiana*, No. 05-17402, 2007 WL 4292250 (9th Cir. Dec. 7, 2007) ("the stream of
28  commerce theory does not apply to a general jurisdiction analysis").

States, owns no real property in the United States and is not registered to do business in the United States.  (Cadieux Decl. ¶¶ 7, 8, 13.)  The company has no bank accounts in the United States and does not pay taxes in the United States.  (Cadieux Decl. ¶¶ 10-11.)  Nor has Thomson S.A. designated a registered agent for service of process in the United States.  (Cadieux Decl. ¶ 12.)  Sharp has not and cannot allege that Thomson S.A. has the constitutionally required "continuous and systematic" contacts with the United States to support the exercise of general jurisdiction.  *See Glencore*, 284 F.3d at 1124 (finding no general jurisdiction where there was no evidence that the defendant owned property, held bank accounts, had employees, solicited business or had designated an agent in the forum); *see also Shute* v. *Carnival Cruise Lines*, 897 F.2d 377, 381 (9th Cir. 1990), *rev'd on other grounds*, 499 U.S. 585 (1991) (holding that lack of offices, agent, business registration, and payment of taxes "militate against the exercise of general jurisdiction").

### B.       This Court Lacks Specific Jurisdiction Over Thomson S.A.

Sharp also fails to allege facts sufficient to support this Court's exercise of specific jurisdiction over Thomson S.A.  Specific jurisdiction exists when "the cause of action arises out of or has a substantial connection to the defendant's contacts with the forum." *Glencore*, 284 F.3d at 1123 (citing *Hanson* v. *Denckla*, 357 U.S. 235, 251 (1958)).  The Ninth Circuit applies a three-part test to determine whether a defendant's activities are sufficiently related to the forum to meet the requirements of constitutional due process:  "(1) [t]he non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." *Schwarzenegger*, 374 F.3d at 802 (citing *Lake* v. *Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)).  "If *any of the three* requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law." *Omeluk* v. *Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 270 (9th Cir. 1995) (emphasis added).

1
#### 1.      Thomson S.A. Did Not Purposefully Direct Activities to This Forum.

2
Courts apply the purposeful direction (rather than the purposeful availment) test

3
in anti-trust cases.[5]  *Fleury* v. *Cartier Int'l*, No. C-05-4525, 2006 WL 2934089, at \*2 (N.D. Cal.

4
Oct. 13, 2006).  Purposeful direction is in turn evaluated under the three-part "effects test"

5
derived from *Calder* v. *Jones*, 465 U.S. 783 (1984), which requires that Sharp establish that

6
Thomson S.A. "(1) committed an intentional act, (2) expressly aimed at the forum state, (3)

7
causing harm that [Thomson S.A. knew was] likely to be suffered in the forum state."  *See*

8
*Schwarzenegger*, 374 F.3d at 803 (quoting *Dole Food Co., Inc.* v. *Watts*, 303 F.3d 1104, 1111

9
(9th Cir. 2002)).  The Ninth Circuit has warned that "the foreign-acts-with-forum-effects

10
jurisdictional principle 'must be applied with caution, particularly in an international context.'"

11
*Kramer Motors, Inc.* v. *British Leyland, Ltd.*, 628 F.2d 1175, 1178 (9th Cir. 1980) (quoting

12
*Leasco Data Processing Equip. Corp.* v. *Maxwell*, 468 F.2d 1326, 1341 (2d Cir. 1972)).  In this

13
case, Sharp has clearly failed to satisfy the "effects test."

14
*First*, Sharp fails to allege that Thomson S.A. carried out any intentional act

15
aimed at plaintiffs resident in the United States.  Instead, Sharp has intentionally obscured the

16
distinction between Thomson S.A. and Thomson Consumer (Compl. ¶ 74 (defining both

17
Thomson S.A. and Thomson Consumer as a single entity "Thomson") and has alleged that this

18
generic "Thomson" entity participated in unspecified meetings (*id*. ¶ 187)[6]—none of which are

19
alleged to have occurred in the United States.  (*See id*.  ¶¶ 7, 138, 140, 148, 150, 167.)  However,

20
allegations regarding a generic "Thomson" entity are insufficient as a matter of law to state a

21

22
[5] Sharp would not be able to satisfy the purposeful availment standard either.  Sharp has alleged
23
that this Court has jurisdiction over the defendants because they "[conduct] substantial business
in the state of California, . . . maintain their headquarters in this District or elsewhere in
24
California[,] . . . purposefully availed themselves of the laws of the United States and California
insofar as they manufactured, marketed, or distributed CRT Products in the United States and
25
California, and . . . have admitted that they engaged in conduct in furtherance of the conspiracy
in the Northern District of California."  (Compl. ¶ 19.)  However, as discussed above, none of
26
these conditions applies to Thomson, S.A. and there is thus no basis on which Sharp could argue
that Thomson S.A. "purposefully availed" itself of the laws of the United States.

27
[6] These overly vague allegations can be contrasted with Sharp's more robust allegations
28
regarding the participation of other defendants in the alleged meetings.  (Compl. ¶¶ 140, 142,
149-50, 169, 170).

1    claim against Thomson S.A.  *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d

2    1109, 1117 (N.D. Cal. 2008) (holding "general allegations as to all defendants, to 'Japanese

3    defendants,' or to a single corporate entity such as 'Hitachi'" were insufficient to state a claim);

4    *see also In re Cal. Title Ins. Antitrust Litig.*, No. C 08-01341, 2009 WL 1458025, at *8 (N.D.

5    Cal. May 21, 2009) (holding "general allegations as to the families of . . . companies, without

6    any specific allegations as to what the [defendant] did," were insufficient to state a claim).  Sharp

7    has not alleged that Thomson S.A. played any role whatsoever in the alleged conduct.  As a

8    matter of due process, this Court should not exercise personal jurisdiction over a foreign

9    defendant on the basis of the tenuous and vague allegations that Sharp has offered.[7]

10          *Second*, Sharp does not allege that Thomson S.A. expressly aimed any alleged

11   intentional acts at the United States.  It is not enough that the effects of the defendant's alleged

12   foreign conduct were foreseeable; rather, the "effects test" requires that the intentional act be

13   expressly aimed at the forum.  *Bancroft & Masters*, 223 F.3d at 1087; *see also N. Am. Lubricants*

14   *Co.*, 2012 WL 1108918 at *7 ("Acts with merely foreseeable effects in the forum state do not

15   satisfy this portion of the effects test." (citing *Pebble Beach Co.* v. *Caddy*, 453 F.3d 1151, 1158

16   (9th Cir. 2006))).  "Express aiming" requires that the defendant have "engaged in wrongful

17   conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state."  *In*

18   *re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. C 02-1486, 2005 WL

19   2988715, at * 6 (N.D. Cal. Nov. 7, 2005).  Sharp cannot show that Thomson S.A. expressly

20   aimed any conduct at the United States because Thomson S.A. has never manufactured or sold

21   CRTs or CRT Products in the United States and does not conduct any business in the United

22   States.  *See id.* (holding that plaintiffs could not establish express aiming where defendant had

23   never manufactured or sold any DRAM in the forum states or maintained business or corporate

24   formalities in the forum states).

25   

26   [7] Sharp's vague allegation that "[t]he activities of Defendants . . . were intended to, and did have
     a direct, substantial, and reasonably foreseeable effect on United States domestic and import
27   trade or commerce" (Compl. ¶ 18; *see also* Compl. ¶¶ 12, 105) cannot save Sharp's failure to
     establish purposeful direction by Thomson S.A., because such "unsubstantiated and vague
28   statement[s] do[] not establish a prima facie case for jurisdiction."  *Holland Am. Line, Inc.* v.
     *Wärtsilä N. Am., Inc.*, 485 F.3d 450, 458 (9th Cir. 2007).

1    *Finally*, Sharp does not allege that Thomson S.A.'s actions caused harm that

2    Thomson S.A. knew was "likely to be suffered in the forum state." *Schwarzenegger*, 374 F.3d at

3    803. Thomson S.A. did not manufacture, market, sell, or distribute CRTs or CRT Products in the

4    United States and did not set prices for CRTs or CRT Products sold in the United States.

5    (Cadieux Decl. ¶¶ 14-15, 21.) Accordingly, no alleged wrongful acts by Thomson S.A.—and the

6    Complaint alleges no acts specific to Thomson S.A.—could have had a direct impact on Sharp.

7    Nor can Sharp satisfy this third prong on the ground that Thomson S.A. indirectly caused harm

8    through the actions of its subsidiary, Thomson Consumer. *See Nw. Aluminum Co. et al.* v. *Hydro*

9    *Aluminum Deutschland GmbH*, No. Civ. 02-398, 2003 WL 23571744, at *5 (D. Or. Sept. 23,

10   2003) (holding that the effects test is not satisfied with respect to the parent corporation based

11   upon harm which could only have been caused as a result of prices set by forum-based

12   subsidiary).

13        **2.     Sharp's Claims Do Not Arise Out of Thomson S.A.'s Forum-Related**
              **Activities.**
14

15        To demonstrate that Sharp's claims arise out of Thomson S.A.'s forum-related

16   activities, Sharp must establish that its claims would not have arisen <u>but for</u> Thomson S.A.'s

17   contacts with this forum. *See Wine Bottle Recycling, LLC* v. *Niagara Sys. LLC*, No. 12-1924,

18   2013 WL 1120962, at *7 (N.D. Cal. Mar. 18, 2013) (declining exercise of specific jurisdiction

19   where plaintiff did not allege facts sufficient to show that claim would not have arisen in the

20   absence of defendant's alleged involvement.) In the first place, Sharp has not pleaded any

21   conduct by Thomson S.A. in the forum, and its conclusory allegations regarding Thomson S.A.'s

22   alleged activities, and vague allegations regarding an unspecified "Thomson" entity are not

23   sufficient. (*See, e.g.*, Compl. ¶ 187.)   Furthermore, Sharp's allegation that Thomson S.A.,

24   "through" Thomson Consumer, "was a major manufacturer of CRTs for the United States

25   market" (*id*. ¶ 72) – in addition to being incorrect (Cadieux Decl. ¶ 14) – is insufficient as a

26   matter of law because Thomson Consumer's activities are not attributable to Thomson S.A. *See*

27   *infra* at 12 -17; *Barantsevich* v. *VTB Bank*, No. CV 12-08993, 2013 WL 3188178, at *5 (C.D.

28   Cal. May 29, 2013); *Doe* v. *Unocal Corp.*, 248 F.3d 915, 925 (9th Cir. 2001) (emphasis added)).

1   Thomson S.A. simply lacks any forum-related activities out of which Sharp's

2   claim *could* arise.  (*See* Cadieux Decl. ¶¶ 6-16.)  Likewise, as discussed above, *supra* at 3, none

3   of Sharp's generic allegations regarding unspecified defendants' contacts to the United States

4   apply to Thomson S.A. (*See* Compl. ¶ 19.)  Accordingly, because Thomson S.A. conducts no

5   business in and has no contacts with the United States, Sharp cannot plead any forum-related

6   conduct by Thomson S.A., let alone forum-related conduct that is the "but for" cause of Sharp's

7   claims here.  *See Glencore*, 284 F.3d at 1123 (holding that plaintiff's claim could not arise out of

8   conduct directed at or related to forum where contract involved foreign parties and was

9   negotiated and required performance abroad); *In re DRAM Antitrust Litig.*, 2005 WL 2988715 at

10  *9 (holding that a claim cannot arise out of non-existent contacts);  *McGlinchy* v. *Shell Chem.*

11  *Co.*, 845 F.2d 802, 817 (9th Cir. 1988) (holding that "the complete absence of activity by

12  [defendant] in [forum] bars personal jurisdiction").

13          **3.      The Exercise of Jurisdiction in This Case Would be Unreasonable.**

14          Even if Sharp had established a sufficient nexus between the alleged activities of

15  Thomson S.A. and this forum—which it has not—the exercise of personal jurisdiction in this

16  case would be unreasonable.  Courts consider seven factors to evaluate reasonableness under the

17  third prong of the *Schwarzenegger* test:

18          "(1) the extent of the defendant's purposeful interjection into the
            forum state,[8] (2) the burden on the defendant in defending in the
19          forum, (3) the extent of the conflict with the sovereignty of the
            defendant's state, (4) the forum state's interest in adjudicating the
20          dispute, (5) the most efficient judicial resolution of the
            controversy, (6) the importance of the forum to the plaintiff's
21          interest in convenient and effective relief, and (7) the existence of
            an alternative forum."
22

23  *Bancroft & Masters*, 223 F.3d at 1088 (citing *Burger King Corp.* v. *Rudzewicz*, 471 U.S. 462,

24  476-77 (1985)).

25          The burden imposed on Thomson S.A. is the most important factor.  *Terracom* v.

26  *Valley Nat'l Bank*, 49 F.3d 555, 561 (9th Cir. 1995) ("[T]he law of personal jurisdiction is

27

28  [8] As discussed above, *supra* at 4-10, and described in the Cadieux Declaration, Thomson S.A.
    has not purposefully interjected itself into this forum.

1  asymmetrical and is primarily concerned with the defendant's burden."); *see also Menken* v.

2  *Emm*, 503 F.3d 1050, 1061 (9th Cir. 2007) ("[I]n this circuit, the plaintiff's convenience is not of

3  paramount importance.") (citation omitted).  The burden on Thomson S.A. in litigating this

4  complex case would be significant.  To the extent evidence still exists concerning the CRT

5  business that Thomson S.A. sold eight years ago, any documents are located in France; the same

6  is true for any personnel who might have knowledge concerning the CRT business.  Not only

7  would obtaining relevant information located in France be costly and burdensome, it would also

8  potentially subject Thomson S.A. to criminal sanctions under the French "blocking statute,"[9]

9  which prohibits the communication or disclosure of documents or information of an economic,

10  commercial, industrial, financial or technical nature for use as evidence in foreign judicial

11  proceedings.  *See In re Perrier Bottled Water Litig.*, 138 F.R.D. 348, 356 (D. Conn. 1991)

12  (discussing effect of "blocking statute" and requiring plaintiffs to comply with procedures under

13  the Hague Convention in pursuing any discovery from defendant).[10]

14           Exercising personal jurisdiction over Thomson S.A. would also be inefficient and

15  would not further Sharp's interest in convenient and effective relief.  Thomson S.A. did not

16  manufacture or sell CRTs or CRT Products in the United States or elsewhere.  (*See* Cadieux

17  Decl. ¶¶ 14-15.)  Thomson Consumer – also named as a defendant in the Sharp action – is the

18  entity in the Thomson group of companies that manufactured and/or sold CRTs in the United

19

20  [9] Loi 80-538 du 16 juillet 1980 relative à la communication de documents et renseignements
    d'ordre économique, commercial ou technique à des personnes physiques ou morales étrangères
21  [Law 80-538 of July 16, 1980 relating to the disclosure of documents and information of an
    economic, commercial or technical nature to foreign natural and legal persons], JOURNAL
22  OFFICIEL DE LA REPUBLIQUE FRANÇAISE [J.O.] [OFFICIAL GAZETTE OF FRANCE], July 17, 1980, p.
    1799 (Imposing criminal sanctions including imprisonment and a fine on parties who export
23  certain categories of documents or respond to discovery requests).

24  [10] For the same reason, the exercise of personal jurisdiction over Thomson S.A. would therefore
    raise substantial concerns regarding French sovereignty.  *See e.g.*, *Sinatra* v. *Nat'l Enquirer, Inc.*,
25  854 F.2d 1191, 1199-1200 (9th Cir. 1988); *see also Asahi*, 480 U.S. at 115 (recommending a
    "careful inquiry into the reasonableness of the assertion of jurisdiction in the particular case, and
26  an unwillingness to find the serious burdens on an alien defendant outweighed by minimal
    interests on the part of the plaintiff or the forum State"); *Glencore*, 284 F.3d at 1125 (holding
27  that burden on foreign defendant with no minimum contacts and having witnesses and evidence
    abroad would be great and that where "the defendant is from a foreign nation rather than another
28  state, the sovereignty barrier is high and undermines the reasonableness of personal jurisdiction"
    (citation omitted)).

SULLIVAN & CROMWELL LLP

-11-

1   States, and it has not contested this Court's jurisdiction (although it has moved to dismiss

2   pursuant to Fed. R. Civ. P. 12(b)(6)).  *See In re DRAM Antitrust Litig*., 2005 WL 2988715 at *9

3   (finding that the exercise of jurisdiction over foreign corporations lacking minimum contacts

4   with forum would be unreasonable given hardship to defendants and continuation of underlying

5   suit against other defendants).  There is simply no good reason to exercise personal jurisdiction

6   over Thomson S.A. in this matter.

7       **C.      This Court Does Not Have Jurisdiction Over Thomson S.A. by Virtue of
             Thomson Consumer's Activities in This Forum.**

8

9           Having failed to allege facts sufficient to show general or specific jurisdiction

10  over Thomson S.A. directly, Sharp appears to propose that this Court should exercise jurisdiction

11  over Thomson S.A. by virtue of Thomson Consumer's activities in this forum.  In support of this

12  contention, Sharp conclusorily alleges that Thomson S.A. "dominated and/or controlled the

13  finances, policies, and/or affairs of [Thomson Consumer] relating to the antitrust violations

14  alleged in this Complaint" (Compl. ¶ 73),[11] and that "[e]ach Defendant that is a subsidiary of a

15  foreign parent acts as the United States agent for CRT Products made by its parent company."

16  (*Id*. ¶ 80.)  However, "[w]ithout more, neither ownership [nor] control of a subsidiary

17  corporation by a foreign parent corporation . . . subjects the parent to the jurisdiction of the state

18  where the subsidiary does business."  *Beene* v. *Beene*, No. C 11-6717, 2012 WL 3583021, at *4

19  (N.D. Cal. Aug. 20, 2012) (quotation omitted); *see also Bauman* v. *DaimlerChrysler Corp.*, 644

20  F.3d 909, 920-21 (9th Cir. 2011), *cert. granted*, 133 S. Ct. 1995 (April 22, 2013) (No. 110965)

21  (Only under specific circumstances will court find contacts to support exercise of personal

22  jurisdiction over parent company by virtue of its relationship to subsidiary).

23          There is a "general presumption in favor of respecting the corporate entity."

24  *Calvert* v. *Huckins*, 875 F. Supp. 674, 678 (E.D. Cal. 1995).  Consequently, only on "rare

25  occasion[s]" will a Court treat a parent and its subsidiary as a single entity for jurisdictional

26  purposes.  *Id*.  Sharp can rebut this presumption only by demonstrating that a subsidiary is either

27

28  ───────────────
[11] This is a boilerplate and entirely unsubstantiated allegation.  *See supra*, note 2.

1    (a) the alter-ego or (b) the agent of the parent corporation.  *See Unocal*, 248 F.3d at 925-26;

2    *Harris Rutsky,* 328 F.3d at 1134.  This precise argument as applied to Thomson S.A. and

3    Thomson Consumer has already been considered and rejected by another district court.  *See*

4    *Audio MPEG, Inc.* v. *Thomson S.A.*, No. Civ. 05-0565, slip op. at 5-6 (E.D. Va. Oct. 17, 2005)

5    ("[T]here is insufficient evidence that Thomson Inc. [f/k/a Thomson Consumer] is an agent or

6    alter ego of Thomson S.A. . . . Thomson S.A. and [Thomson Consumer] are separate

7    corporations in form and fact.  They have separate corporate offices, officers, and bank accounts.

8    [Thomson Consumer] is independently responsible for selling, marketing, and distributing its

9    products." (citation omitted)).  Sharp has similarly failed to allege facts sufficient to show the

10   existence of either an alter-ego or agency relationship between Thomson S.A. and Thomson

11   Consumer and can offer no reason for this Court to reach a different conclusion than the Eastern

12   District of Virginia.

13           **1.        Thomson Consumer is Not the Alter Ego of Thomson S.A.**

14           To establish that Thomson Consumer is the alter-ego of Thomson S.A., Sharp

15   must demonstrate "(1) that there is such unity of interest and ownership that the separate

16   personalities [of the two entities] no longer exist and (2) that failure to disregard [their separate

17   identities] would result in fraud or injustice."  *Unocal*, 248 F.3d at 926 (quoting *AT&T Co.* v.

18   *Compagnie Bruxelles Lambert*, 94 F.3d 586, 591 (9th Cir. 1996).

19           The first prong of this test requires that Sharp allege facts sufficient to show that

20   Thomson S.A. controls Thomson Consumer "'to such a degree as to render the latter the mere

21   instrumentality of the former.'"  *Unocal*, 248 F.3d at 926 (quoting *Calvert*, 875 F. Supp. at 678).

22   This requires a level of control above and beyond that which is normally incidental to the

23   parent's ownership of a subsidiary, such that "the parent dictates every facet of the subsidiary's

24   business—from broad policy decisions to routine matters of day-to-day operation."  *Id.*

25   (quotation omitted.)  Sharp certainly cannot establish this level of control through the boilerplate

26   allegation that "Thomson SA [sic] dominated and/or controlled the finances, policies, and/or

27   affairs of [Thomson Consumer] relating to the antitrust violations alleged in [the] Complaint"

28   (Comp. ¶ 73), which it has indiscriminately repeated with respect to nearly every set of parent

                                                    -13-

1    and subsidiary defendants that it has named.  *See supra* note 2.  Beyond this vague allegation,

2    Sharp has not alleged a single specific fact that could support a finding that there exists the

3    requisite "unity of ownership" between the two Thomson entities.

4                   Nor can Sharp allege facts sufficient to show the day-to-day control that

5    characterizes an alter-ego relationship.  The Cadieux Declaration describes the relationship

6    between Thomson S.A. and Thomson Consumer, which typifies the parent-subsidiary

7    relationships that courts have repeatedly found to be insufficient to establish an alter-ego

8    relationship.  *See Unocal*, 248 F.3d at 926 (holding that "[a]ppropriate parental involvement"

9    such as "monitoring of the subsidiary's performance, supervision of [its] finance and capital

10   budget decisions, and articulation of general policies and procedures" is insufficient to support a

11   finding of personal jurisdiction on the basis of the subsidiary's contacts.  (quotation omitted));

12   *see also United States* v. *Bestfoods*, 524 U.S. 51, 72 (1998) (holding that a parent corporation

13   may be directly involved in the activities of its subsidiaries without incurring liability so long as

14   that involvement is "consistent with the parent's investor status" (quotation omitted)).  Thomson

15   S.A. and Thomson Consumer operate as separate corporate entities and observe all corporate

16   formalities necessary to maintain this separateness.  (Cadieux Decl. ¶¶ 18-20.)  The two entities

17   have separate management, separate finances, and separate corporate offices.  (*Id.*)  Courts

18   decline to find an alter-ego relationship even in cases with much more involvement between a

19   parent and subsidiary than exists here.  *See, e.g., Kramer Motors*, 628 F.2d at 1177 (finding no

20   alter-ego relationship even though the parent reviewed and approved the subsidiary's major

21   decisions and was closely involved in the subsidiary's pricing decisions); *see also Fletcher* v.

22   *Atex, Inc.* 68 F.3d 1451, 1459-60 (2d Cir. 1995) (finding no alter-ego relationship where parent's

23   approval was required for subsidiary's leases, major capital expenditures, and sale of assets).[12]

24

25

26   [12] Nor does the fact that the financial statements of Thomson S.A. and Thomson Consumer are
     consolidated tend to establish the existence of an alter-ego relationship between the two entities.
     *See Ferrigno* v. *Philips Elec. N. Am. Corp.*, No. C-09-03085, 2010 WL 2219975, at *3-4 (N.D.

27   Cal. June 1, 2010) (refusing to pierce the corporate veil for jurisdictional purposes where parent
     promoted itself and the subsidiary as a single entity on its website, in its financial statements, and

28   in press-releases

SULLIVAN & CROMWELL LLP

1    Moreover, Sharp cannot satisfy the second prong of the alter-ego analysis, which

2    requires Sharp to show that fraud or injustice would result if this Court does *not* find that

3    Thomson S.A. is the alter-ego of Thomson Consumer.  This requirement of bad faith is essential

4    to the alter-ego doctrine, and courts apply the doctrine as an extreme remedy "only in narrowly

5    defined situations when the ends of justice so require." *NuCal Foods, Inc.* v. *Quality Egg LLC*,

6    887 F. Supp. 2d 977, 992 (E.D. Cal. 2012) (citation omitted); *see also Wehlage* v. *EmpRes*

7    *Healthcare, Inc.*, 791 F. Supp. 2d 774, 782 (N.D. Cal. 2011) (holding that, even where plaintiff

8    alleges facts sufficient to demonstrate a unity of interest, the alter-ego theory will not apply

9    unless plaintiff also alleges facts to suggest that an inequitable result would occur in the absence

10   of veil-piercing).  Sharp has not alleged the prospect of any such inequitable result.  For

11   example, Sharp has provided no evidence that Thomson Consumer, who is also named as a

12   defendant in this matter, is a sham corporation, is undercapitalized, is non-operational or has

13   been stripped of its assets by Thomson S.A. in an effort to evade any eventual judgment against

14   it.  *See NuCal Foods*, 887 F. Supp. 2d at 993-94.  To the contrary, in the absence of a finding of

15   personal jurisdiction over Thomson S.A., Sharp can continue to pursue its claims and could

16   enforce any judgment against Thomson Consumer.

17          **2.      Thomson Consumer is Not the Agent Of Thomson S.A.**

18          Sharp also cannot establish the existence of an agency relationship between

19   Thomson Consumer and Thomson S.A. for purposes of establishing personal jurisdiction over

20   Thomson S.A.  To do so, Sharp must demonstrate (1) that Thomson Consumer represents

21   Thomson S.A. "by performing services sufficiently important to [Thomson S.A.] that if it did not

22   have a representative to perform them, [Thomson S.A.] . . . would undertake to perform

23   substantially similar services," *Harris Rutsky,* 328 F.3d at 1135 (quotation omitted), and (2) that

24   Thomson S.A. has the necessary degree of control over Thomson Consumer as its agent.  *See*

25   *Bauman*, 644 F.3d at 923 (finding sufficient control where written agreement gave parent the

26   right to control "nearly every aspect of [subsidiary's] operations"); *see also Monje* v. *Spin*

27   *Master, Inc.*, No. CV-09-1713, 2013 WL 2390625, at *9 (D. Ariz. May 30, 2013) (applying a

28   two-prong test under the theory of agency, noting that "[c]ontrol is a core component of agency

1    law"); *Brady* v. *Grendene USA, Inc.*, No. 12cv0604, 2012 WL 2930081, at *4 (S.D. Cal. July 17,

2    2012) (same).  Sharp cannot satisfy either requirement.

3           Sharp cannot satisfy the first prong of the test for at least two reasons.  *First*,

4    Thomson S.A. functions as a holding company.  (*See* Cadieux Decl. ¶ 5.)  As the Ninth Circuit

5    has recognized, a holding company's subsidiaries conduct business as investments and not as

6    agents.  *Unocal*, 248 F.3d at 929 (citing *Gallagher* v. *Mazda Motor of Am., Inc.*, 781 F. Supp.

7    1079, 1085 (E.D. Pa. 1992)); *see also Ferrigno*, 2010 WL 2219975, at *4 (holding that Philips

8    Electronics North America is not an agent of its Dutch parent company because, "[i]n the case of

9    a holding company, the subsidiary does not perform any functions that the parent would

10   otherwise have to perform; in the absence of this subsidiary, the parent could simply hold

11   another type of subsidiary").  *Second*, Sharp has not demonstrated that Thomson Consumer's

12   business is of special importance to Thomson S.A. or that it is sufficiently important that

13   Thomson S.A. would carry on that business itself if Thomson Consumer did not do so on its

14   behalf.  *Sol Focht* v. *Sol Melia S.A.*, No. C-10-0906, 2012 WL 162564, at *12 (N.D. Cal. Jan. 19,

15   2012) (declining to find agency where plaintiff did not make out prima facie case that parent

16   "would step in or have another representative step in to perform [subsidiary's] functions in [its]

17   absence").  The fact that Thomson Consumer closed its U.S.-based CRT plants in 2004 and sold

18   its CRT business to Videocon Industries, Ltd. in 2005 (Compl. ¶ 73) indicates exactly the

19   opposite—that Thomson Consumer's CRT business was not sufficiently important to Thomson

20   S.A. that it would carry on that business itself in Thomson Consumer's absence.  *See In re W.*

21   *States Wholesale Natural Gas. Antitrust Litig.*, 605 F. Supp. 2d 1118, 1136 (D. Nev. 2009)

22   (holding that the defendant's decision to cease the trading activities in question suggests that

23   those activities were not sufficiently important under the agency test).

24           And, for the reasons explained above, *supra* at 13-14, Sharp has also failed to

25   allege that Thomson S.A. has a sufficient degree of control over Thomson Consumer to establish

26   an agency relationship between the two entities.  *Bauman*, 644 F.3d at 920-21 (holding that the

27   agency test "requires the plaintiffs to show an element of control" and finding agency where the

28   parent had the right to control "nearly every aspect of [the subsidiary's] operations").  "The

1 | nature of the control exercised by the parent over the subsidiary necessary to put the subsidiary

2 | in an agency relationship with the parent must be over and above that to be expected as an

3 | incident of the parent's ownership of the subsidiary and must reflect the parent's purposeful

4 | disregard of the subsidiary's independent corporate existence." *E. & J. Gallo Winery* v. *EnCana*

5 | *Energy Servs., Inc.*, No. CV F 03-5412, 2008 WL 2220396, at *15 (E.D. Cal. May 27, 2008)

6 | (quotation omitted); *see also Unocal*, 248 F.3d at 926 ("An . . . agency relationship is typified by

7 | parental control of the subsidiary's internal affairs or daily operations." (citing *Kramer Motors*,

8 | 628 F.2d at 1177)).  Sharp has simply not pleaded any specific facts to rebut the general

9 | presumption in favor of respecting corporate separateness, and its boilerplate allegation

10 | regarding Thomson S.A.'s control over Thomson Consumer has been completely refuted by the

11 | Cadieux Declaration.  Far from showing "purposeful disregard" of Thomson Consumer's

12 | independent corporate existence, the facts demonstrate that Thomson S.A. and Thomson

13 | Consumer were discrete and independent entities in both form and fact.

14 | **CONCLUSION**

15 | For the foregoing reasons, Sharp has failed to allege facts sufficient to establish

16 | this Court's personal jurisdiction over Thomson S.A., and its Complaint should be dismissed

17 | with prejudice.

18 | Dated:  July 3, 2013                    Respectfully submitted,

19 | _/s/ Robert A. Sacks_

20 | Robert A. Sacks (SBN 150146)
Rory P. Culver (SBN 271868)

21 | SULLIVAN & CROMWELL LLP
1888 Century Park East, Suite 2100

22 | Los Angeles, California 90067
Tel.: (310) 712-6600

23 | Fax: (310) 712-8800

24 | Laura Kabler Oswell (SBN 241281)
SULLIVAN & CROMWELL LLP

25 | 1870 Embarcadero Road
Palo Alto, California 94303

26 | Tel.: (650) 461-5600
Fax: (650) 461-5700

27 | Attorneys for Specially Appearing Defendant
Thomson S.A

28 |