1   Robert A. Sacks (SBN 150146)
    sacksr@sullcrom.com
2   Rory P. Culver (SBN 271868)
    culverr@sullcrom.com
3   SULLIVAN & CROMWELL LLP
    1888 Century Park East
4   Los Angeles, California 90067
    Tel: (310) 712-6600
5   Fax: (310) 712-8800

6   Laura Kabler Oswell (SBN 241281)
    oswelll@sullcrom.com
7   SULLIVAN & CROMWELL LLP
    1870 Embarcadero Road
8   Palo Alto, California 94303
    Tel.: (650) 461-5600
9   Fax: (650) 461-5700

10  Attorneys for Thomson
    Consumer Electronics, Inc.

11

12                  **UNITED STATES DISTRICT COURT**

13                **NORTHERN DISTRICT OF CALIFORNIA**

14                    **SAN FRANCISCO DIVISION**

15

16  IN RE:  CATHODE RAY TUBE            )   Master File No.  3:07-5944-SC
    (CRT) ANTITRUST LITIGATION          )
17                                      )   MDL No. 1917
                                        )
18  _____)   **THOMSON CONSUMER**
                                        )   **ELECTRONICS, INC.'S REPLY**
19  This Document Relates to:           )   **MEMORANDUM IN SUPPORT OF**
                                        )   **MOTION TO DISMISS**
20                                      )
    *Sharp Electronics Corp. et al.* v. )
21  *Hitachi, Ltd. et al.*, No. 13-cv-01173. )   Date:  TBD
                                        )   Time: TBD
22                                      )   Place: JAMS Resolution Center, Two
                                        )   Embarcadero Center, Suite 1500
23                                      )   Judge:  Hon. Samuel Conti
                                        )   Special Master: Hon. Charles A. Legge (Ret.)
24                                      )
25                                      )
26                                      )
27                                      )
28  _____)

SULLIVAN & CROMWELL LLP

1

# TABLE OF CONTENTS

2

**Page**

3  MEMORANDUM OF POINTS AND AUTHORITIES ...................................................1

4  PRELIMINARY STATEMENT ...................................................................................1

5  ARGUMENT ...............................................................................................................2

6  I.    SHARP'S CLAIMS ARE TIME-BARRED.........................................................2

7        A.    Sharp Admits Thomson Consumer's Exit From the Alleged Conspiracy...............2

8        B.    Sharp's Claims Are Not Tolled By Fraudulent Concealment. ...................3

9        C.    Sharp's Claims Are Not Tolled By Government Action Tolling. ...................6

10       D.    Sharp's Claims Are Not Tolled By *American Pipe* Tolling. ...................8

11 II.   SHARP DOES NOT STATE A PLAUSIBLE CLAIM AGAINST THOMSON
12       CONSUMER. ...............................................................................................9

13 III.  THE COURT LACKS SUBJECT-MATTER JURISDICTION OVER SHARP'S
       CLAIMS UNDER THE FTAIA. ..................................................................10

14 IV.   SHARP CANNOT OVERCOME THE *ILLINOIS BRICK* BAR AS TO ITS
15       FEDERAL, NEW YORK AND NEW JERSEY ANTITRUST CLAIMS......................11

16 V.    SHARP'S NEW YORK AND NEW JERSEY ANTITRUST CLAIMS DO NOT
       SATISFY DUE PROCESS.............................................................................12

17 VI.   SHARP LACKS PRUDENTIAL STANDING TO ASSERT NEW YORK AND
18       NEW JERSEY ANTITRUST CLAIMS..........................................................13

19 VII.  SHARP'S FEDERAL, CALIFORNIA, NEW YORK AND NEW JERSEY
       ANTITRUST CLAIMS DO NOT SATISFY THE TEST OF *ASSOCIATED
20       GENERAL CONTRACTORS*. ...................................................................14

   CONCLUSION.................................................................................................15

21

22

23

24

25

26

27

28

SULLIVAN & CROMWELL LLP

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Akron Presform Mold Co.* v. *McNeil Corp.*,
496 F.2d 230 (6th Cir. 1974) ....................................................6

*Allstate Ins. Co.* v. *Hague*,
449 U.S. 302 (1981).............................................................13

*Am. Ad Mgmt., Inc.* v. *Gen. Tel. Co. of Cal.*,
190 F.3d 1051 (9th Cir. 1999) ..................................................15

*American Rockwool, Inc.* v. *Owens-Corning Fiberglass Corp.*,
640 F .Supp. 1411 (E.D.N.C. 1986)..............................................13

*Animal Sci. Prods., Inc.* v. *China Nat'l Metals & Minerals Imp. & Exp. Corp.*,
596 F. Supp. 2d 842 (D.N.J. 2008) ..............................................11

*AT&T Mobility LLC* v. *AU Optronics Corp.*,
707 F.3d 1106 (9th Cir. 2013) .............................................12, 13

*Becks* v. *Emery-Richardson, Inc.*,
1990 WL 303548 (S.D. Fla. Dec. 21, 1990) ......................................8

*Bell Atl. Corp.* v. *Twombly*,
550 U.S. 544 (2007)........................................................1, 10

*Bhan* v. *NME Hosps., Inc.*,
772 F.2d 1467 (9th Cir. 1985) ..................................................15

*Charley's Tour & Transp. Co.* v. *Interisland Resorts, Ltd.*,
618 F. Supp. 84 (D. Haw. 1985) .................................................6

*Chipanno* v. *Champion Int'l Corp.*,
702 F.2d 827 (9th Cir. 1983) ...................................................6

*Dee-K Enters. Inc.* v. *Heveafil Sdn. Bhd*,
299 F.3d 281 (4th Cir. 2002) ..................................................11

*Degelmann* v. *Advanced Med. Optics, Inc.*,
2010 WL 55874 (N.D. Cal. Jan. 4, 2010).........................................13

*In re Cabletron Sys., Inc.*,
311 F.3d 11 (1st Cir. 2002).....................................................9

*In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*,
782 F. Supp. 481 (C.D. Cal. 1991) ..............................................7

-ii-

*In re CRT Antitrust Litig.*,
  738 F. Supp. 2d 1011 (N.D. Cal. 2010) ...................................................................3, 6, 9

*In re CRT Antitrust Litig.*,
  911 F. Supp. 2d 857 (N.D. Cal. 2012) ................................................................................11

*In re Ditropan XP Antitrust Litig.*,
  529 F. Supp. 2d 1098 (N.D. Cal. 2007) ..............................................................................12

*In re Optical Disk Drive Antitrust Litig.*,
  2011 WL 3894376 (N.D. Cal. Aug. 3, 2011) ......................................................................12

*In re Rubber Chems. Antitrust Litig.*,
  504 F. Supp. 2d 777 (N.D. Cal. 2007) ............................................................................4, 5

*In re Terazosin Hydrochloride Antitrust Litig.*,
  160 F. Supp. 2d 1365 (S.D. Fla. 2001) ...............................................................................14

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  586 F. Supp. 2d 1109 (N.D. Cal. 2008) ................................................................................5

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  2012 WL 149528 (N.D. Cal. Jan. 18, 2012) .........................................................................8

*In re TFT-LCD (Flat Panel) Antitrust Litig.*
  2012 WL 506327 (N.D. Cal. Feb. 15, 2012) ...................................................................4, 14

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  2013 WL 1164897 (N.D. Cal. Mar. 20, 2013)......................................................................13

*In re Transpacific Passenger Air Transp. Antitrust Litig.*,
  2011 WL 1753738 (N.D. Cal. May 9, 2011) .........................................................................5

*Institutional Investors Grp.* v. *Avaya, Inc.*,
  564 F.3d 242 (3d Cir. 2009)....................................................................................................9

*Jablon* v. *Dean Witter & Co.*,
  614 F.2d 677 (9th Cir. 1980) ..................................................................................................3

*Kendall* v. *Visa U.S.A., Inc.*,
  518 F.3d 1042 (9th Cir. 2008) ..............................................................................................12

*Morton's Market, Inc.* v. *Gustafson's Dairy, Inc.*,
  211 F.3d 1224 (11th Cir. 2000) ........................................................................................4, 14

*Novell, Inc.* v. *Microsoft Corp.*,
  505 F.3d 302 (4th Cir. 2007) ..................................................................................................7

*Pool Water Prods* v. *Olin Corp.*,
  258 F.3d 1024 (9th Cir. 2001) ................................................................................................8

-iii-

*Pope* v. *Bond*,
    641 F. Supp. 489 (D.D.C. 1986) ...........................................................................3

*Ramirez* v. *Ghilotti Bros. Inc.*,
    2013 WL 1786636 (N.D. Cal. Apr. 25, 2013) .....................................................10

*Shriners Hosps. for Children* v. *Qwest Commc'ns Int'l, Inc.*,
    2007 WL 2801494 (D. Colo. Sept. 24, 2007) ......................................................8

*Smith* v. *United States*,
    133 S. Ct. 714 (2013) ............................................................................................4

*Stanislaus Food Prods. Co.* v. *USS-POSCO Indus.*,
    782 F. Supp. 2d 1059 (E.D. Cal. 2011).................................................................12

*Stichting Pensioenfonds ABP* v. *Countrywide Fin. Corp.*,
    802 F. Supp. 2d 1125 (C.D. Cal. 2011) ...............................................................10

*Swartz* v. *KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007) ................................................................................6

*Tech Data Corp.* v. *AU Optronics Corp.*,
    2012 WL 3236065 (N.D. Cal. Aug. 6, 2012) ........................................................8

*Tietsworth* v. *Sears*,
    720 F. Supp. 2d 1123 (N.D. Cal. 2010) .................................................................6

*United States* v. *Grimmett*,
    150 F.3d 958 (8th Cir. 1998) ................................................................................4

*United States* v. *Guevara*,
    706 F.3d 38 (1st Cir. 2013).....................................................................................4

*United States* v. *LSL Biotechs.*,
    379 F.3d 672 (9th Cir. 2004) ..............................................................................10

*United States* v. *Moore*,
    651 F.3d 30 (D.C. Cir. 2011) ................................................................................4

*United States* v. *Philip Morris Inc.*,
    116 F. Supp. 2d 131 (D.D.C. 2000) ......................................................................3

*United States* v. *Read*,
    658 F.2d 1225 (7th Cir. 1981) ..............................................................................4

*United States* v. *Steele*,
    685 F.2d 793 (3d Cir. 1982)...................................................................................3

*United States* v. *Williams*,
    374 F.3d 941 (10th Cir. 2004) ..............................................................................4

-iv-

*United States* v. *Yannotti*,
    541 F.3d 112 (2d Cir. 2008)...................................................................................................4

*Valley Forge Christian Coll.* v. *Ams. United for Separation of Church & State, Inc.*,
    454 U.S. 464 (1982)...............................................................................................13, 14

*Zenith Radio Corp.* v. *Hazeltine Research, Indus.*,
    401 U.S. 321 (1971).................................................................................................7

## STATUTES AND RULES

15 U.S.C. § 6a..................................................................................................................10

15 U.S.C. § 16(i)..........................................................................................................6, 7, 8

N.J. Stat. Ann. § 56:9-3...................................................................................................14

N.Y. Gen. Bus. Law § 340...............................................................................................14

N.Y. Gen. Bus. Law § 349...............................................................................................14

Rule 9(b), Fed. R. Civ. P...........................................................................................1, 5, 6

Sᴜʟʟɪᴠᴀɴ & Cʀᴏᴍᴡᴇʟʟ ʟʟᴘ

**MEMORANDUM OF POINTS AND AUTHORITIES**

Defendant Thomson Consumer Electronics, Inc. ("Thomson Consumer") respectfully submits this Reply to Sharp Electronics Corporation and Sharp Electronics Manufacturing Company of America, Inc.'s ("Sharp") Opposition to Thomson Consumer's Motion to Dismiss Sharp's Complaint filed on March 15, 2013 ("Complaint" or "Compl.").

**PRELIMINARY STATEMENT**

Sharp's Opposition selectively adopts the history of this case to suit its needs and asks this Court to hold that a plaintiff need only allege that a defendant sold the allegedly price-fixed product in order to subject it to the "sprawling, costly, and hugely time-consuming undertaking" of discovery in an antitrust case. *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 560 n.6 (2007). Sharp clings to rulings concerning class action complaints filed over four years ago and ignores the more recent rulings of this Court that require plaintiffs to plead something more than what may have sufficed earlier in this litigation. Inexplicably, Sharp declines to address the finding in the Report and Recommendations Regarding Defendants' Motions to Dismiss Direct Action Complaints (Dkt. 1664) ("R&R") that where — as Sharp has here — a plaintiff pleads a defendant's withdrawal from the alleged conspiracy prior to the running of the statute of limitations, claims against that defendant are time-barred and cannot be resuscitated by appeal to fraudulent concealment (even assuming the allegations of fraudulent concealment are sufficient to satisfy the heightened pleading standard under Rule 9(b), Fed. R. Civ. P., which Sharp's allegations here are not). And, in the one instance where Sharp acknowledges but registers its disagreement with the R&R, Sharp takes a position completely contrary to the position it advocated as a defendant in the LCD cases.

Sharp's claims against Thomson Consumer must be evaluated on the basis of Sharp's allegations (or lack thereof) regarding Thomson Consumer at this stage of the litigation, not the allegations made years ago by *other plaintiffs* in *separate actions* regarding *other defendants*. Evaluated in that context, Sharp's claims suffer from several fatal flaws. *First*, Sharp's claims are time-barred because it pleads that Thomson Consumer withdrew from the alleged conspiracy in 2005 and cannot revive its expired claims through tolling. *Second*, Sharp's

single, conclusory allegation as to Thomson Consumer is insufficient to state a claim —

particularly at this stage of the litigation.  *Third*, this Court lacks subject-matter jurisdiction over

Sharp's claims because Sharp alleges the occurrence of a foreign conspiracy but does not allege

sufficient facts to show that this foreign conduct caused "a direct, substantial, and reasonably

foreseeable effect" on U.S. commerce.  *Fourth*, Sharp's Sherman Act, New York and New

Jersey claims must be dismissed because Sharp fails to plead the ownership-or-control exception

to *Illinois Brick*.  *Fifth*, Sharp's New York and New Jersey claims must be dismissed because

Sharp lacks prudential standing, and those claims do not comport with Constitutional Due

Process.  *Finally*, and as Sharp itself argued in the LCD cases, Sharp lacks antitrust standing to

the extent its claims are based on purchases of CRT Products rather than CRTs.

## ARGUMENT

## I.      SHARP'S CLAIMS ARE TIME-BARRED.

### A.      Sharp Admits Thomson Consumer's Exit From the Alleged Conspiracy.

Sharp ignores the finding in the R&R that claims against defendants Philips and

LG should be dismissed without leave to amend because those defendants withdrew from the

conspiracy prior to the effective date for the running of the statute of limitations.  (R&R at 14-

15.)  As Thomson Consumer explained in its Motion (at 5-7), like Philips and LG, Thomson

Consumer's withdrawal from the alleged conspiracy is plain from the face of Sharp's Complaint.

In fact, Sharp's allegations concerning Thomson Consumer's withdrawal through the sale of its

CRT business (Compl. ¶ 73) are stronger than those on which the Special Master dismissed

claims against Philips and LG:  the DAPs had alleged that Philips continued to participate in the

alleged conspiracy through a joint venture with LG after its purported withdrawal (Best Buy

Complaint ¶ 150) and that certain individuals attending meetings on behalf of the joint venture

had previously attended on behalf of Philips (*id.* ¶ 145).  Sharp alleges no such continuing

participation by Thomson Consumer here.  (*See* Compl. ¶ 73.)

Sharp does not even attempt to provide legal support for its assertion that

Thomson Consumer's sale of its CRT business does not constitute withdrawal.  (*See* Opp. at 9.)

As explained in the Motion (at 5-6) and supported by case law, a defendant's complete

1   divestment of the relevant business constitutes withdrawal from an antitrust conspiracy.  And

2   Sharp cannot rescue its claims by clinging to a purported rule that courts should not resolve the

3   issue of withdrawal at the motion to dismiss stage.[1]  (Opp. at 9.)  Sharp's reliance on *United*

4   *States* v. *Philip Morris Inc.*, 116 F. Supp. 2d 131 (D.D.C. 2000), in support of its proposed rule is

5   misplaced.  In that case, the defendant argued that it had withdrawn from a conspiracy based on

6   newspaper articles and government reports not mentioned anywhere in the complaint.  *Id.* at 154.

7   But here, Sharp's admission that Thomson Consumer withdrew from the conspiracy "clearly

8   appear[s] [ ] on the face of the complaint."  *See id.* (internal quotation marks omitted).

9   Moreover, the Complaint alleges no facts to suggest that, after 2005, Thomson Consumer

10  attended any meetings, otherwise participated in the alleged conspiracy, or "maintained financial

11  interests in the entities being sold or transferred," which could give rise to the type of factual

12  questions that might preclude resolution on a motion to dismiss.  *See In re CRT*, 738 F. Supp. 2d

13  at 1025.  On the basis of the facts alleged within the four corners of the Complaint, Thomson

14  Consumer's sale of its CRT business to Videocon effected its withdrawal from any alleged

15  conspiracy prior to the running of the statute of limitations, such that Sharp's claims against

16  Thomson Consumer are time-barred.  *See Pope* v. *Bond*, 641 F. Supp. 489, 497 (D.D.C. 1986)

17  (granting motion to dismiss where defendants resigned from government agency prior to running

18  of statute of limitations and therefore withdrew as a matter of law); *see also United States* v.

19  *Steele*, 685 F.2d 793, 804 (3d Cir. 1982).

20          **B.      Sharp's Claims Are Not Tolled By Fraudulent Concealment.**

21                  Notwithstanding the fact that it pleads Thomson Consumer's withdrawal, Sharp

22  argues that its claims are nonetheless timely because it alleges that Thomson Consumer's

23  alleged, former co-conspirators fraudulently concealed the conspiracy.  (*See* Opp. at 9-10.)

24

25  [1] Sharp relies on the prior decision of this Court to argue that it is inappropriate to resolve the
    question of withdrawal at the stage of a motion to dismiss.  (Opp. at 9 citing in *In re CRT*
26  *Antitrust Litigation*, 738 F. Supp. 2d 1011, 1025 (N.D. Cal. 2010).)  However, the Special Master
    did not adopt any such rule in later dismissing claims *at the motion to dismiss stage* based on the
27  withdrawal of LG and Philips.  (*See* R&R at 15; *cf. Jablon* v. *Dean Witter & Co.*, 614 F.2d 677,
    682 (9th Cir. 1980) (stating motion to dismiss may be granted if "the running of the statute is
28  apparent on the face of the complaint" and "the assertions of the complaint, read with the
    required liberality, would not permit the plaintiff to prove that the statute was tolled").

1  However, the Special Master essentially rejected this argument when it found that the DAPs'

2  fraudulent concealment allegations — which are virtually identical to Sharp's — were

3  insufficient to overcome the withdrawal of Philips and LG.  (*See* R&R at 15 (criticizing the fact

4  that the allegations "are the same as those made in the 2007 class complaints, with little more

5  specificity after four years of pleading, motions and discovery").)  Likewise, the Supreme Court

6  and Courts of Appeal across the country have held that the statute of limitations begins to run

7  upon withdrawal from the conspiracy, and implicitly recognize that subsequent actions of former

8  co-conspirators do not further toll the limitations period.[2]  *See, e.g., Smith* v. *United States*, 133

9  S. Ct. 714, 717, 719-20 (2013) ("A defendant who withdraws outside the relevant statute-of-

10  limitations period has a complete defense . . . ."); *see also In re TFT-LCD (Flat Panel) Antitrust*

11  *Litig.*, 2012 WL 506327, at *2 & n.2 (N.D. Cal. Feb. 15, 2012) (suggesting defendant who

12  withdrew from conspiracy would not have limitations period tolled by former co-conspirators'

13  fraudulent concealment).

14         Sharp's reliance on *In re Rubber Chemicals Antitrust Litigation*, 504 F. Supp. 2d

15  777 (N.D. Cal. 2007) (Opp. at 10), is unsupported by the facts of that case.  In *In re Rubber*

16  *Chemicals*, the court found that plaintiffs' specific allegations were sufficient to withstand a

17  motion to dismiss — *not* that allegations of fraudulent concealment in general necessarily

18  overcome a defendant's withdrawal from an alleged conspiracy.[3]  *Id.* at 790.  Moreover, the

19  fraudulent concealment allegations that Judge Jenkins found sufficient in *In re Rubber*

20  *Chemicals* only highlight the insufficiency of Sharp's allegations.  Unlike Sharp, the plaintiffs in

21  in *In re Rubber Chemicals* cited specific email correspondence and memoranda and specific

22  meetings and agreements, all of which included the dates, participants and subject-matter, and

23  

24  [2] *United States* v. *Guevara*, 706 F.3d 38, 46 n.8 (1st Cir. 2013) (stating limitations period runs from withdrawal and that defendants are not liable for acts which occurred outside the limitations period); *United States*  v. *Moore*, 651 F.3d 30, 90 (D.C. Cir. 2011); *United States* v. *Yannotti*,

25  541 F.3d 112, 123 (2d Cir. 2008) (same); *United States* v. *Williams*, 374 F.3d 941, 950 & n.11 (10th Cir. 2004); *United States* v. *Grimmett*, 150 F.3d 958, 961-62 (8th Cir. 1998); *United States*

26  v. *Read*, 658 F.2d 1225, 1233 (7th Cir. 1981) (same).

27  [3] Likewise, the Eleventh Circuit's "clarification" of its prior ruling in *Morton's Market, Inc.* v. *Gustafson's Dairy, Inc.*, 211 F.3d 1224 (11th Cir. 2000), does not support the general rule that

28  Sharp advocates.

1  some of which directly contradicted the defendant's argument that it had withdrawn from the

2  alleged conspiracy.  *See* Amended Complaint, *In re Rubber Chems. Antitrust Litig.*, No. 06-cv-

3  05700, Dkt. No. 8 ¶¶ 76-81.  Sharp alleges no such facts in its Complaint against Thomson

4  Consumer.

5            Setting aside whether the limitations period *could be tolled* by the actions of

6  Thomson Consumer's alleged former co-conspirators after Thomson Consumer's withdrawal,

7  Sharp's allegations of fraudulent concealment fail to satisfy the heightened pleading standard

8  under Rule 9(b) of the Federal Rules of Civil Procedure.  (*See* Mot. at 8-12.)  In *In re*

9  *Transpacific Passenger Air Transportation Antitrust Litigation*, 2011 WL 1753738 (N.D. Cal.

10  May 9, 2011), Judge Breyer rejected the argument that it is inappropriate to resolve the fact-

11  intensive issue of fraudulent concealment on a motion to dismiss, holding that, where the

12  allegations of fraudulent concealment are lacking, dismissal is appropriate.  *See id.* at *21.  Judge

13  Breyer further held that allegations of fraudulent concealment substantially similar to Sharp's

14  were too vague and conclusory to meet the heightened Rule 9(b) pleading standard, even though

15  the plaintiffs in that case — like Sharp — had alleged that the defendants (1) agreed not to

16  publicly reveal their communications, (2) engaged in secret meetings, (3) staggered the dates on

17  which airfare changes were publicly announced, (4) instructed recipients to destroy emails after

18  reading them, (5) destroyed documentary evidence, and (6) gave false and pretextual reasons for

19  their pricing.  *See id.* at *19-21.  The Court distinguished *In re Rubber Chemicals* on the grounds

20  that the fraudulent concealment allegations in *In re Rubber Chemicals* were "much more

21  detailed" than those before the court.[4]  *Id.* at *20.

22

23

---

24  [4] The court in *In re Transpacific* also distinguished *In re TFT-LCD (Flat Panel) Antitrust Litig.*,

25  586 F. Supp. 2d 1109 (N.D. Cal. 2008), "another case reiterating that it is generally inappropriate to resolve fraudulent concealment allegations at the motion to dismiss stage," since the plaintiffs'

26  allegations of fraudulent concealment were likewise far more particularized than those offered by the plaintiffs in that case.  *In re Transpacific,* 2011 WL 1753738, at *20.  Unlike Sharp's

27  allegations, the fraudulent concealment allegations in *In re TFT-LCD* included details as to the participants, dates and manner of the alleged fraudulent concealment.  *See* Direct Purchasers

28  Plaintiffs' Consolidated Complaint, *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-md-01827, Dkt. No. 366 ¶¶ 178-88).

1       Over five years into this case, Sharp has done nothing more than copy the

2   generalized allegations, nearly verbatim, from those advanced in the Direct Purchaser Plaintiffs'

3   ("DPPs") Consolidated Amended Complaint more than four years ago and without the benefit of

4   any discovery.  (*Compare* Compl. ¶¶ 222-33 *with* DPPs' Consolidated Amended Complaint

5   ("DPP CAC"), Dkt. No. 436 ¶¶ 200-12.)  As Sharp acknowledges, it has had the benefit of many

6   years of pleadings, motions and now discovery[5] (*see* Opp. at 5), and yet it has failed to produce

7   specific evidence of fraudulent concealment on the part of any defendants.  *See In re CRT*, 738 F.

8   Supp. 2d at 1024 (noting this was not a situation where "[a]fter an opportunity for discovery,

9   plaintiffs were unable to produce specific evidence of fraudulent activity or concealment on the

10  part of the defendants").  Moreover, it has completely failed to produce any evidence of

11  fraudulent concealment on the part of Thomson Consumer as required by Rule 9(b).  *See Swartz*

12  v. *KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007) ("Rule 9(b) does not allow a complaint to

13  merely lump defendants together . . . .  [A] plaintiff must, at a minimum, identify the role of each

14  defendant in the alleged fraudulent scheme.").  Accordingly, Sharp has not adequately pleaded

15  fraudulent concealment as to Thomson Consumer.

16      **C.      Sharp's Claims Are Not Tolled By Government Action Tolling.**

17          Sharp also cannot satisfy its burden to show that the Clayton Act's tolling

18  provision, 15 U.S.C. § 16(i), applies to its claims.  *See Charley's Tour & Transp. Co.* v.

19  *Interisland Resorts, Ltd.*, 618 F. Supp. 84, 86 (D. Haw. 1985) ("The plaintiff bears the burden of

20  showing that the two suits are based in whole or in part on the same matter."); *see Akron*

21  *Presform Mold Co.* v. *McNeil Corp.*, 496 F.2d 230, 233 (6th Cir. 1974) (holding that "[a]ll

22  presumptions are against" an antitrust plaintiff who seeks to toll the limitations period).

23          To meet this burden, Sharp must show an overlap between the government

24  proceeding relied upon and its action by "a comparison of the two complaints on their face."  *See*

25  *Chipanno* v. *Champion Int'l Corp.*, 702 F.2d 827, 832 (9th Cir. 1983).  However, government

26

27  _____

    [5] Information that Sharp claims to have but which it has not pleaded in its Complaint (*see* Opp.
    at 5) is irrelevant and does not bolster the allegations in its Complaint.  *See Tietsworth* v. *Sears*,
28  720 F. Supp. 2d 1123, 1145 (N.D. Cal. 2010) ("It is axiomatic that the complaint may not be
    amended by briefs in opposition to a motion to dismiss.").

1   action tolling is not available when "the government and subsequent private suits arose in

2   different markets." *Novell, Inc.* v. *Microsoft Corp.*, 505 F.3d 302, 320 (4th Cir. 2007) (internal

3   alteration and quotation omitted).  "Different markets" includes different geographic areas.  *Id.*

4   (citing *In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 782 F. Supp.

5   481, 486 (C.D. Cal. 1991)).  The indictments on which Sharp relies describe a conspiracy

6   between Taiwanese and Korean companies that was carried out in Asia.  (*See* Opp. at 13.)  In

7   contrast, the Complaint alleges that Thomson Consumer is a U.S. corporation having its principal

8   place of business in Indianapolis and whose manufacturing plants were located exclusively in

9   North America (Compl. ¶ 73).  It does not allege that Thomson Consumer had any presence or

10  attended any meeting in Asia.  Given this disparity between the geographic nexus of the

11  indictments on which Sharp relies and the claim alleged against Thomson Consumer, Section

12  16(i) does not toll the statute of limitations as against Thomson Consumer.  *See In re*

13  *Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 782 F. Supp. at 486

14  (refusing to apply Section 16(i) where the markets alleged covered different geographic areas).[6]

15          As explained in the Motion (at 15-16), Section 16(i) cannot toll Sharp's state law

16  claims, a fact which Sharp largely concedes (*see* Opp. at 12).[7]  Government action tolling applies

17  only to proceedings regarding "violations of any of the antitrust laws."  (*See* Mot. at 15-16.)  The

18  list of enumerated "antitrust laws" in Section 1 of the Clayton Act is exclusive and does not

19  include any of the state laws on which Sharp relies.  *See In re Coordinated Pretrial Proceedings*

20

21  [6] Sharp is correct that the indictment of C.Y. Lin concerned a conspiracy involving both cathode
    display tubes ("CDTs") and cathode picture tubes ("CPTs"); however, each of the five other
22  indictments concerned only a conspiracy involving CDTs.  (*See* Opp. at 11.)  The government's
    case against Mr. Lin has not progressed in the four years since it was filed because Mr. Lin
23  remains outside the United States.  Nonetheless, the rule Sharp advocates would require this
    Court to find that the Lin indictment continues to toll the limitations period—regardless of the
24  number of months, years or even decades that might pass before the proceeding against Mr. Lin
    is terminated.  The purpose of government tolling—"assist[ing] private litigants in utilizing any
25  benefits they might cull from government antitrust actions" (*id.* (quoting *Zenith Radio Corp.* v.
    *Hazeltine Research, Indus.*, 401 U.S. 321, 336 (1971))—has no application here and should give
26  way to general policies of repose.

27  [7] Sharp argues only in a footnote that its claims under the New York Donnelly Act are tolled by
    government action tolling, but fails to offer a single *authority* in support of this assertion.  (Opp.
28  at 12 n.5.)  The Court should therefore reject its argument.

1    *in Petroleum Prods. Antitrust Litig.*, 782 F. Supp. at 484-85; *Pool Water Prods* v. *Olin Corp.*,

2    258 F.3d 1024, 1031 n.4 (9th Cir. 2001).  Even if those state laws were included in that list,

3    Sharp has pointed to no proceedings brought by the United States to enforce state laws.  Sharp's

4    state law claims are therefore not tolled by Section 16(i).

5         **D.    Sharp's Claims Are Not Tolled By *American Pipe* Tolling.**

6         Sharp admits that "no plaintiff named Thomson Consumer in [either of the allegedly

7    tolling actions], and . . . *American Pipe* tolling ordinarily does not apply 'against a party who is

8    not named as a defendant in that class action.'"[8]  (Opp. at 15 (quoting Mot. at 12).)  Sharp

9    nonetheless argues that *American Pipe* tolling is appropriate against Thomson Consumer because

10   the putative class actions asserted claims against Thomson S.A. and "there appears to be little

11   question that Thomson Consumer had notice of the legal actions and their risk of exposure."

12   (Opp. at 15.)  As Thomson explained in its Motion (at 13), courts in this District consistently

13   reject Sharp's argument and hold that plaintiffs cannot rely on the existence of a putative class

14   action to preserve claims *which are not asserted in that class action*.[9]  *See, e.g.*, *Tech Data Corp.*

15   v. *AU Optronics Corp.*, 2012 WL 3236065, at *5 (N.D. Cal. Aug. 6, 2012) (concluding

16   *American Pipe* tolling does not apply against parent where earlier putative class complaint

17   named subsidiary); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2012 WL 149528, at *4 (N.D.

18   Cal. Jan. 18, 2012) (same); *see also Shriners Hosps. for Children* v. *Qwest Commc'ns Int'l, Inc.*,

19   2007 WL 2801494, at *3 (D. Colo. Sept. 24, 2007) ("The filing of a putative class action

20   complaint tolls the period of limitations only for claims that are identical to the claims asserted in

21   _____

22   [8] Sharp concedes in the Opposition that, contrary to its allegations in the Complaint (Compl. ¶¶ 220-21), any *American Pipe* tolling as to Thomson Consumer would only apply from January 2008 through March 2009.  (Opp. at 15-16.)

23

24   [9] Sharp incorrectly relies on a Southern District of Florida decision, *Becks* v. *Emery-Richardson, Inc.*, 1990 WL 303548 (S.D. Fla. Dec. 21, 1990), to support its novel expansion of *American*

25   *Pipe* tolling.  (*See* Opp. at 15-16 (citing *Becks*, 1990 WL 303548, at *12).)  *First*, the court in *Becks* based its ruling on the fact that the new defendant was the "control person" of the original

26   defendant, but neither Thomson Consumer nor Thomson S.A. is the "control person" of the other.  *See* 1990 WL 303548, at *12.  *Second*, the Southern District of Florida Court addressed

27   only whether the new defendant had constructive or actual notice of the claims and whether it would be fair to toll claims against them; it never considered the fundamental issue of whether the

28   plaintiff could reasonably rely on the existence of the putative class action against the subsidiary to preserve its claims against the parent.  *See id.*

1    the putative class action complaint.").  Sharp could not have reasonably relied on the existence of

2    a class action which did not assert claims against Thomson Consumer "to protect [its] rights"

3    against Thomson Consumer.  *American Pipe* tolling therefore does not apply.[10]

4    **II.    SHARP DOES NOT STATE A PLAUSIBLE CLAIM AGAINST THOMSON
           CONSUMER.**

5

6                Sharp argues that Thomson Consumer's Motion should be denied merely because

7    Sharp has copied, verbatim, various allegations that this Court years ago found sufficient to

8    withstand a motion to dismiss by *different plaintiffs* as to *different defendants*.  (*See* Opp. at 6

9    (listing allegations referred to by this Court in *In re CRT*, 738 F. Supp. 2d at 1017-18 and

10   included by Sharp)).[11]  However, stating a plausible claim against Thomson Consumer requires

11   that Sharp do more than merely check off a laundry list of boilerplate allegations that have been

12   made against other defendants.  *See, e.g.*, *Institutional Investors Grp.* v. *Avaya, Inc.*, 564 F.3d

13   242, 269 (3d Cir. 2009) (holding sufficiency of pleading "rest[s] not on the presence or absence

14   of certain types of allegations but on a practical judgment about . . . the whole factual picture

15   painted by the Complaint"); *In re Cabletron Sys., Inc.*, 311 F.3d 11, 32 (1st Cir. 2002) (noting

16   each complaint "must be analyzed on its own facts" and that "a categorical approach is not

17   appropriate").  Sharp also presumes that the same allegations would be held sufficient today.  In

18   fact, the Special Master recently recognized that the DAPs have "had the benefit of the pleadings

19   in the earlier class actions since 2007, and have had the benefit of years of discovery . . . [s]o it is

20   not asking too much for their pleadings to be more specific, and with better support, than would

21   generally be required of an initial pleading."  (R&R at 16-17.)  This is even more true as to

22   _____

     [10] Sharp concedes that *American Pipe* tolling cannot apply to its state law claims.  *First*, Sharp
23   fails to address and therefore concedes that any tolling would be limited to its Sherman Act
     claims since neither putative class action included state law claims.  (*See* Mot. at 13.)  *Second*,
24   Sharp also does not bother to respond to Thomson Consumer's argument that Sharp cannot
     benefit from any purported tolling of its state law claims because it failed to plead that
25   California, Tennessee, New York or New Jersey recognize cross-jurisdictional tolling.  (*See* Mot.
     at 13-14 (citing *In re TFT-LCD (Flat Panel) Antitrust Litig.*, MDL Dkt. No. 4867 at 2-3
26   ("[P]laintiffs . . . must plead with specificity the bases for their entitlement to tolling.").)

27   [11] For example, with respect to Thomson Consumer's alleged participation in the conspiracy,
     Sharp's only allegation is copied, nearly verbatim, from the generalized, boilerplate allegation
28   that the DPPs made about 17 different defendants in 2009 (*compare* Compl. ¶ 188 *with* DPP
     CAC ¶¶ 158, 161, 163, 165, 167, 169, 172).

SULLIVAN & CROMWELL LLP

1   Sharp, which waited over five years after this litigation commenced, four years after the filing of

2   the consolidated amended complaints, and 16 months after the other DAPs filed the complaints

3   that the Special Master found should be held to a higher standard.

4          Sharp states that, prior to filing this opt-out action, it was a member of the

5   putative class of DPPs (Compl. ¶ 220) and that it "has . . . access to discovery," including "direct

6   evidence that Thomson SA [sic] and Thomson Consumer participated in bilateral and

7   multilateral meetings with CRT co-conspirators."  (Opp. at 5.)  But Sharp only alleges that an

8   unspecified Thomson entity "participated in and/or was a party to [unspecified] bilateral and

9   group meetings" and that Thomson Consumer may have been "at those meetings and/or [party]

10  to the agreements entered at them." (Compl. ¶¶ 187-88; *see also* Compl. ¶ 74 (defining the single

11  entity "Thomson").)  Because Sharp's sole allegation regarding Thomson Consumer remains

12  entirely boilerplate and unsubstantiated, its claim for relief against Thomson Consumer is not

13  plausible and should be dismissed.  (Mot. at 16-17; *see also Twombly*, 550 U.S. at 558-59.)

14  **III.    THE COURT LACKS SUBJECT-MATTER JURISDICTION OVER SHARP'S
            CLAIMS UNDER THE FTAIA.**

15         Sharp's analysis of the Foreign Trade Antitrust Improvements Act ("FTAIA"), 15

16  U.S.C. § 6a, is similarly flawed.[12]  (*See* Opp. at 17-18.)  Sharp contends that the FTAIA does not

17  apply because Sharp alleges an international conspiracy that affected the prices of CRTs and

18  finished products that Sharp purchased in the United States from domestic companies, such as

19  Thomson Consumer.  (Opp. at 17-18.)  Sharp is incorrect.  As the Ninth Circuit has held, the

20  court must have subject-matter jurisdiction over the entire conspiracy; it cannot separate the

21  domestic and foreign components where a single conspiracy is alleged.  *See United States* v. *LSL*

22  *Biotechs.*, 379 F.3d 672, 676-77 (9th Cir. 2004).  Therefore, the fact that "there is nothing

23  foreign about the 'trade or commerce' occurring between Sharp and Thomson Consumer" (Opp.

24  at 17) is irrelevant to the question of whether the FTAIA applies to the entirety of Sharp's

25

26  ───────────────
    [12] Sharp fails to address Thomson Consumer's argument that its claims should be dismissed to
    the extent they are based on purchases or sales outside of the United States.  (Mot. at 24-25.)  It

27  has therefore conceded the point.  *See, e.g., Ramirez* v. *Ghilotti Bros. Inc.*, 2013 WL 1786636, at
    *11 & n.7 (N.D. Cal. Apr. 25, 2013); *Stichting Pensioenfonds ABP* v. *Countrywide Fin. Corp.*,

28  802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011).

1    claims, at least where the only damages suffered by Sharp result from an alleged international

2    conspiracy among primarily foreign companies to set the worldwide price for CRTs.

3              Sharp also contends that, even if the FTAIA applies, the FTAIA does not preclude

4    Sharp's claims here. (Opp. at 18.) Sharp is wrong again. Although Sharp asserts that it suffered

5    a "direct, substantial and reasonably foreseeable injury as a result of [the alleged] conspiracy"

6    (Compl. ¶ 215),[13] it does not allege sufficient facts to support this conclusory allegation as

7    against Thomson Consumer, which should therefore be disregarded. *See, e.g.*, *Animal Sci.*

8    *Prods., Inc.*, 596 F. Supp. 2d at 850-51, 870-71. For the reasons set forth in the Motion, Sharp

9    fails to meet its pleading burden to establish the existence of subject-matter jurisdiction over its

10   claims. (*See* Mot. at 23-24; *see also Dee-K Enters. Inc.* v. *Heveafil Sdn. Bhd*, 299 F.3d 281, 295

11   (4th Cir. 2002) (affirming judgment where "the bulk of the conduct related to the global

12   conspiracy . . . occurred abroad" and "[t]he target of the conspiracy was a global market").)

13   **IV.    SHARP CANNOT OVERCOME THE *ILLINOIS BRICK* BAR AS TO ITS
             FEDERAL, NEW YORK AND NEW JERSEY ANTITRUST CLAIMS.**

14             Sharp overstates the effect of this Court's prior rulings concerning *Illinois Brick*.

15   (Opp. at 19-20.) Sharp concedes that only the so-called "ownership-or-control" exception to

16   *Illinois Brick* potentially applies to its claims here and argues that "[t]o the extent Sharp

17   purchased finished products from defendants or co-conspirators, [its] allegations regarding

18   ownership and control are identical to those already deemed acceptable by the Court," citing this

19   Court's opinion on defendants' motion for summary judgment. (*Id.* at 19.) However, in that

20   ruling, the Court only considered only whether there was a genuine issue of material fact as to

21   whether plaintiffs "purchased [finished products] incorporating the allegedly price-fixed CRTs

22   from some defendant-owned or -controlled division or subsidiary," not what allegations are

23   sufficient to plead a claim subject to the ownership-or-control exception *See In re CRT*, 911 F.

24   Supp. 2d 857, 872 (N.D. Cal. 2012).

25

26

27   _____

     [13] The fact that Sharp includes this allegation, which is irrelevant outside the FTAIA context,
     suggests that Sharp knows that the FTAIA applies to its claims. *See Animal Sci. Prods., Inc.* v.
28   *China Nat'l Metals & Minerals Imp. & Exp. Corp.*, 596 F. Supp. 2d 842, 870 n.24 (D.N.J. 2008).

1    Sharp offers no basis for this Court to disregard the authority cited in the Motion

2    that demonstrates that Sharp has not sufficiently plead the ownership-or-control exception.

3    (Mot. at 22 (citing *Stanislaus Food Prods. Co.* v. *USS-POSCO Indus.*, 782 F. Supp. 2d 1059,

4    1068 n.5 (E.D. Cal. 2011); *In re Optical Disk Drive Antitrust Litig.*, 2011 WL 3894376, at *6

5    (N.D. Cal. Aug. 3, 2011); *In re Ditropan XP Antitrust Litig.*, 529 F. Supp. 2d 1098, 1101 n.2

6    (N.D. Cal. 2007).)   In each of these cases, courts dismissed (or stated they would dismiss)

7    complaints that failed to plead facts demonstrating the applicability of the ownership-or-control

8    exception.  (*See* Mot. at 22.)  As explained in the Motion, Sharp's conclusory allegations of

9    "ownership-or-control" are insufficient to overcome the bar of *Illinois Brick*.  (*See* Mot. at 22-23

10   (citing *Kendall* v. *Visa U.S.A., Inc.*, 518 F.3d 1042, 1050 (9th Cir. 2008) (affirming dismissal of

11   complaint alleging co-conspirator exception applied where plaintiff failed to plead "evidentiary

12   facts . . . to support such conclusion")).)

13   **V.    SHARP'S NEW YORK AND NEW JERSEY ANTITRUST CLAIMS DO NOT
         SATISFY DUE PROCESS.**

14

15          Sharp also turns the relevant Constitutional Due Process analysis on its head.

16   Sharp argues that application of New York and New Jersey antitrust law to Thomson Consumer

17   would not be "arbitrary nor fundamentally unfair" because of Sharp's contacts with New York

18   and New Jersey and alleged anticompetitive effects felt in New York and New Jersey.   (*See*

19   Opp. at 21-22.)  However, the relevant question is not whether *Sharp* has contacts with New

20   York and New Jersey and whether *someone's damages* occurred in New York and New Jersey.

21   Rather, the relevant question is whether *Thomson Consumer* has contacts with New York and

22   New Jersey and whether Sharp's damages occurred in New York and New Jersey.  *See, e.g.*,

23   *AT&T Mobility LLC* v. *AU Optronics Corp.*, 707 F.3d 1106, 1112-13 (9th Cir. 2013).

24          Sharp ignores the portions of *AT&T Mobility* that specifically address "what

25   contacts are appropriate to consider in determining which state laws should apply in antitrust

26   cases." (*See* Opp. at 21.)  In that case, the Ninth Circuit held that "anticompetitive conduct by a

27   defendant within a state that is related to a plaintiff's alleged injuries and is not 'slight and

28   casual' establishes a 'significant aggregation of contacts, creating state interests, such that choice

     of its law is neither arbitrary nor fundamentally unfair.'"  707 F.3d at 1113.  Sharp must

1  therefore plead "anticompetitive conduct by [Thomson Consumer] within [New York and New

2  Jersey] that is related to [Sharp's] alleged injuries" in order for the antitrust laws of New York

3  and New Jersey to be constitutionally applied against Thomson Consumer.  *See id.*  As explained

4  in the Motion, Sharp fails to identify any injury or conspiratorial acts in New York or New

5  Jersey.  (Mot. at 18-19.)  Its claims must therefore be dismissed.[14]  *See, e.g.*, *In re TFT-LCD*

6  *(Flat Panel) Antitrust Litig.*, 2013 WL 1164897, at *4 (N.D. Cal. Mar. 20, 2013) (applying

7  *AT&T Mobility* to dismiss Cartwright Act cause of action where plaintiff failed to "allege

8  conspiratorial conduct of each Defendant in California").

9  **VI.    SHARP LACKS PRUDENTIAL STANDING TO ASSERT NEW YORK AND
            NEW JERSEY ANTITRUST CLAIMS.**

10             Sharp also fails to meaningfully respond to Thomson Consumer's argument that

11  Sharp does not have prudential standing to assert New York and New Jersey antitrust claims

12  based on injuries which allegedly occurred in other states.  (*See* Mot. at 19 n.16.)  Sharp

13  contends that standing is a matter of state law, and that under New York and New Jersey law it

14  has standing because it resides in New York and New Jersey and felt "the effects of the

15  anticompetitive conduct" in New York and New Jersey.  (Opp. at 22.)

16             Sharp is wrong.  Sharp fails to appreciate the difference between state law and

17  constitutional standing.  *See, e.g.*, *Degelmann* v. *Advanced Med. Optics, Inc.*, 2010 WL 55874, at

18  *3 (N.D. Cal. Jan. 4, 2010) (distinguishing between UCL standing and constitutional standing).

19  Regardless of whether a plaintiff has state law standing to assert a claim, the constitutional

20  standing doctrine is an independent limit on the matters the federal courts may hear.  *See, e.g.*,

21  *Valley Forge Christian Coll.* v. *Ams. United for Separation of Church & State, Inc.*, 454 U.S.

22  464, 471 (1982).  Under the prudential standing doctrine, this Court should refuse to hear a

23

24  _____

25  [14] Sharp wrongly relies on general statements in *Allstate Ins. Co.* v. *Hague*, 449 U.S. 302 (1981)
    and *American Rockwool, Inc.* v. *Owens-Corning Fiberglass Corp.*, 640 F .Supp. 1411 (E.D.N.C.

26  1986).  *First*, the Ninth Circuit interpreted and applied *Allstate* in *AT&T* in the same
    circumstances present here.  707 F. 3d at 1110-14.  Elevating general statements in *Allstate* over

27  the specific statements of the Ninth Circuit in *AT&T* would effectively ignore binding circuit
    precedent.  *Second*, *American Rockwool* concerned whether state law could be applied to a

28  defendant where the defendant's actions within the state led to an injury that occurred within the
    state.  640 F. Supp. at 1427.  As discussed above, neither fact is present here.

1    claim, notwithstanding the existence of any injury, if the claim is not within the "zone of

2    interests to be protected or regulated by the statute . . . in question." *See id.* 474-75.  And, as

3    Thomson Consumer explained its Motion (at 19 n.16), each of the state statutes that are the

4    subject of Sharp's claims is *limited* to conduct and injuries within the state.  *See* N.Y. GEN.

5    BUS. LAW § 340; N.Y. GEN. BUS. LAW § 349; N.J. STAT. ANN. § 56:9-3.  Consequently,

6    Sharp is not an appropriate plaintiff to bring its claim in *federal* court.  *See In re Terazosin*

7    *Hydrochloride Antitrust Litig.*, 160 F. Supp. 2d 1365, 1370-71 (S.D. Fla. 2001) (dismissing state

8    antitrust claims for lack of prudential standing where no plaintiff had purchased price-fixed

9    products in the state).  Sharp did not even respond to this argument.

10            Furthermore, Sharp has *not* felt the "effects of the anticompetitive conduct" in

11    New York and New Jersey.  The effect of alleged anticompetitive conduct in the CRT market is

12    the payment of higher prices for CRTs.  This "effect" is felt therefore in the places where the

13    purchases occurred, not where the purchased products were "warehoused" (*see* Compl. ¶ 261) or

14    where the purchases were "overs[een]" (*see id.* ¶ 275).  *See, e.g., In re TFT-LCD*, 2012 WL

15    506327, at *3 ("[I]t is the location of the purchase, not the ultimate destination of the . . .

16    products, that determines where the injury occurred.").

17   **VII.    SHARP'S FEDERAL, CALIFORNIA, NEW YORK AND NEW JERSEY
             ANTITRUST CLAIMS DO NOT SATISFY THE TEST OF *ASSOCIATED*
18           *GENERAL CONTRACTORS*.**

19            Although Sharp eagerly cites other prior decisions in this case, it "respectfully

20    disagrees" (Opp. at 23 n.14) with the Special Master's finding that Sharp has not suffered any

21    antitrust injury to the extent its claims are based on purchases of CRT Products rather than

22    CRTs.  (*See* Mot. at 19-21 (citing R&R at 10-11 ("There is a real *market* distinction, and hence a

23    real *legal* distinction, between the finished products and just the CRTs."))).)  Sharp's

24    "disagree[ment]" with the Special Master's finding is surprising considering that Sharp itself

25    argued in favor of the Special Master's position in another antitrust action where it is a

26    defendant.  *See In re TFT-LCD (Flat Panel) Antitrust Litig*., No. 07-md-01827, Dkt. No. 484 at 1

27    ("The Direct Plaintiffs that purchased finished products fail to meet their burden of pleading

28    antitrust standing [under *Associated General Contractors*] because they do not allege

1   participation in the only market that is alleged to have been restrained, namely the market for

2   TFT-LCD panels."); *id.*, Dkt. No. 563 at 17-19 (arguing that incorporation of allegedly price-

3   fixed TFT-LCD panels into LCD televisions and monitors did not mean that purchasers of those

4   products participated in the allegedly restrained market).

5          In this case, however, Sharp takes the opposite view and argues that its "injuries

6   with respect to finished products are direct and the type antitrust laws are designed to protect"

7   and cites *American Ad Management, Inc.* v. *General Telephone Company of California*, 190

8   F.3d 1051 (9th Cir. 1999), in support of its contention.[15]  (Opp. at 23.)  However, that case states

9   that "[a]ntitrust injury requires the plaintiff to have suffered its injury in the market where

10  competition is being restrained" and that "[p]arties whose injuries . . . are experienced in another

11  market do not suffer antitrust injury."  190 F.3d at 1055 (citing *Bhan* v. *NME Hosps., Inc.*, 772

12  F.2d 1467, 1470 (9th Cir. 1985)).  Contrary to Sharp's assertion (Opp. at 23), Sharp is not a

13  participant in the CRT market when it purchases finished products and Sharp therefore lacks

14  antitrust standing with respect to any purchases of finished products.  (*See* Mot. at 20-21.)

15                                    **CONCLUSION**

16         For the foregoing reasons, Sharp has failed to state a cognizable claim against

17  Thomson Consumer, and its Complaint should be dismissed with prejudice.

18  Dated:  July 9, 2013                      Respectfully submitted,

                                             /s/ Robert A. Sacks
19                                           Robert A. Sacks (SBN 150146)
                                             Rory P. Culver (SBN 271868)
20                                           SULLIVAN & CROMWELL LLP
                                             1888 Century Park East, Suite 2100
21                                           Los Angeles, California 90067
                                             Tel.: (310) 712-6600
22                                           Fax: (310) 712-8800

23                                           Laura Kabler Oswell (SBN 241281)
                                             SULLIVAN & CROMWELL LLP
24                                           1870 Embarcadero Road
                                             Palo Alto, California 94303
25                                           Tel.: (650) 461-5600
                                             Fax: (650) 461-5700

26                                           Attorneys for Thomson
                                             Consumer Electronics, Inc.

27

---

28  [15] Sharp does not dispute that the *American General Contractors* standing rule applies to its
    federal, California, New York, and New Jersey antitrust claims.