1   Robert A. Sacks (SBN 150146)
    sacksr@sullcrom.com
2   Rory P. Culver (SBN 271868)
    culverr@sullcrom.com
3   SULLIVAN & CROMWELL LLP
    1888 Century Park East, Suite 2100
4   Los Angeles, California 90067
    Tel: (310) 712-6600
5   Fax: (310) 712-8800

6   Laura Kabler Oswell (SBN 241281)
    oswelll@sullcrom.com
7   SULLIVAN & CROMWELL LLP
    1870 Embarcadero Road
8   Palo Alto, California 94303
    Tel.: (650) 461-5600
9   Fax: (650) 461-5700

10  Attorneys for Thomson Consumer Electronics, Inc.
    and Specially Appearing Defendant Thomson S.A.

11

12              **UNITED STATES DISTRICT COURT**

13             **NORTHERN DISTRICT OF CALIFORNIA**

14               **SAN FRANCISCO DIVISION**

15

16  IN RE:  CATHODE RAY TUBE          )   Master File No.  3:07-5944-SC
    (CRT) ANTITRUST LITIGATION        )
17                                    )   MDL No. 1917
                                      )
18  _____      )
                                      )   **OBJECTIONS OF THOMSON**
19  This Document Relates to:         )   **CONSUMER ELECTRONICS, INC.**
                                      )   **AND THOMSON S.A. (SPECIALLY**
20  *Electrograph Systems, Inc., et al.* v. )   **APPEARING) TO REPORT &**
    *Hitachi, Ltd., et al.,* No. 11-cv-01656; )   **RECOMMENDATION REGARDING**
21                                    )   **DIRECT ACTION PLAINTIFFS'**
    *Alfred H. Siegel, as Trustee of the* )   **MOTION FOR LEAVE TO FILE**
22  *Circuit City Stores, Inc. Liquidating* )   **AMENDED COMPLAINTS**
    *Trust* v. *Hitachi, Ltd., et al.,* No. 11- )
23  cv-05502;                         )   Date:
                                      )   Time:
24  *Best Buy Co., Inc., et al.* v. *Hitachi* )   Place:
    *Ltd., et al.,* No. 11-cv-05513;  )   Judge: Hon. Samuel Conti
25                                    )   Special Master: Hon. Charles A. Legge (Ret.)
    *Target Corp., et al.* v. *Chunghwa* )
26  *Picture Tubes, Ltd., et al.,* No. 11-cv- )
    05514;                            )
27                                    )
    *Interbond Corporation of America* v. )
28  *Hitachi, Ltd., et al.,* No. 11-cv-06275; )

SULLIVAN & CROMWELL LLP

1

2   *Office Depot, Inc.* v. *Hitachi, Ltd., et al.*, No. 11-cv-06276;

3   *CompuCom Systems, Inc.* v. *Hitachi, Ltd., et al.,* No. 11-cv-06396;

4

5   *Costco Wholesale Corporation* v. *Hitachi, Ltd., et al.*, No. 11-cv-06397;

6   *P.C. Richard & Son Long Island Corporation, et al.* v. *Hitachi, Ltd., et al.,* No. 12-cv-02648; and

7

8   *Schultze Agency Services, LLC, et al.* v. *Hitachi, Ltd., et al.,* No. 12-cv-02649.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SULLIVAN & CROMWELL LLP

1

# **TABLE OF CONTENTS**

2

Page

3
STATEMENT OF ISSUE.............................................................................................. 1

4
INTRODUCTION ........................................................................................................ 1

5
PROCEDURAL HISTORY.......................................................................................... 3

6
ARGUMENT ............................................................................................................... 3

7
I.      THE DAPS DO NOT SEEK THE TYPE OF AMENDMENT THAT IS
8       "ROUTINELY GRANTED". ............................................................................ 4

9       A.      The Report & Recommendation Incorrectly Concludes That Thomson
                Would Not Suffer Any Undue Prejudice. ............................................. 4
10

11      B.      The Report & Recommendation Also Incorrectly Concludes That the
                Amendment Is Timely. ......................................................................... 9
12

13
II.     IF THE MOTION IS GRANTED, THE COURT SHOULD EXTEND THE
        CURRENT SCHEDULING ORDER. ............................................................ 12

14
CONCLUSION.......................................................................................................... 13

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

## CASES

4

*AmerisourceBergen Corp.* v. *Dialysist W., Inc.*,
   465 F.3d 946 (9th Cir. 2006) ............................................................6, 7

5

*DCD Programs, Ltd.* v. *Leighton*,
   833 F.2d 183 (1987)..............................................................4, 9, 12

6

7

*Demoura* v. *Ford*,
   2012 WL 1898905 (E.D. Cal. May 23, 2012) .......................................7

8

*Dunbar* v. *Google, Inc.*,
   2012 WL 6202797 (N.D. Cal. Dec. 12, 2012) ......................................10

9

10

*Efaw* v. *Williams*,
   473 F.3d 1038 (9th Cir. 2007) ............................................................6, 7

11

*Eminence Capital, LLC* v. *Aspeon, Inc.*,
   316 F.3d 1048 (9th Cir. 2003) ............................................................4, 9

12

13

*Foman* v. *Davis*,
   371 U.S. 178 (1962) .............................................................................4

14

*Fuller* v. *Marx*,
   724 F.2d 717 (8th Cir. 1984) ...............................................................6

15

16

*Harris* v. *Vector Mktg. Corp.*,
   2009 WL 3710696 (N.D. Cal. Nov. 4, 2009) .......................................7

17

*In re Perrier Bottled Water Litig.*,
   138 F.R.D. 348 (D. Conn. 1991)..........................................................5

18

19

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   No. 07-md-01827 (N.D. Cal.), Dkt. No. 2641 .....................................6

20

*Int'l Olympic Comm.* v. *S.F. Arts & Athletics*,
   781 F.2d 733 (9th Cir. 1986) ...............................................................3

21

22

*IXYS Corp.* v. *Advanced Power Tech., Inc.*,
   2004 WL 135861 (N.D. Cal. Jan. 22, 2004) ........................................9

23

*Jackson* v. *Bank of Haw.*,
   902 F.2d 1385 (9th Cir. 1990) ...............................................3, 9, 10, 12

24

25

*KFD Enters., Inc.* v. *City of Eureka*,
   2012 WL 2196330 (N.D. Cal. June 14, 2012) .....................................7

26

27

*Korn* v. *Royal Caribbean Cruise Line, Inc.*,
   724 F.2d 1397 (9th Cir. 1984) .............................................................4

28

SULLIVAN & CROMWELL LLP

*Loehr* v. *Ventura Cnty. Cmty. Coll. Dist.*,
  743 F.2d 1310 (9th Cir. 1984) ..............................................................................6

*Morongo Band of Mission Indians* v. *Rose*,
  893 F.2d 1074 (9th Cir. 1990) ..............................................................................6

*Parker* v. *Joe Lujan Enters., Inc.*,
  848 F.2d 118 (9th Cir. 1988) ................................................................................9

*Parker* v. *Shaw & Lines, LLC*,
  2010 WL 1640963 (D. Ariz. Apr. 20, 2010) ...................................................5-6, 7

*Scognamillo* v. *Credit Suisse First Boston, LLC*,
  587 F. Supp. 2d 1149 (N.D. Cal. 2008) ....................................................... *passim*

*Szoke* v. *United Parcel Serv. of Am., Inc.*,
  398 F. App'x 145 (6th Cir. 2010) .........................................................................3

*Thompson* v. *City of Lansing*,
  410 F. App'x 922 (6th Cir. 2011) .........................................................................3

*Tyco Thermal Controls LLC* v. *Redwood Indus.*,
  2009 WL 4907512 (N.D. Cal. Dec. 14, 2009) .......................................................7

*Wilkins-Jones* v. *Cnty. of Alameda*,
  2012 WL 3116025 (N.D. Cal. July 31, 2012) ........................................................5

# OTHER AUTHORITIES

Fed. R. Civ. P. 53 ..................................................................................................1, 3

1    Pursuant to Rule 53(f)(2) of the Federal Rules of Civil Procedure and the Order

2    Appointing Special Master (Dkt. No. 302), Specially Appearing Defendant Thomson S.A. and

3    Thomson Consumer Electronics, Inc. ("Thomson Consumer") (collectively, "Thomson") hereby

4    submit their Objections to the Report & Recommendation Regarding Direct Action Plaintiffs'

5    Motion for Leave to File Amended Complaints (the "Report & Recommendation" or "R&R").

6                                **STATEMENT OF ISSUE**

7    Whether the Court should adopt the Report & Recommendation to grant the

8    Direct Action Plaintiffs' ("DAPs") Motion for Leave to File Amended Complaints (the

9    "Motion") as to Thomson Consumer and Thomson S.A.

10                                **INTRODUCTION**

11    In concluding that the DAPs' proposed amendments to their ten complaints

12    should be permitted five years after the first putative class actions were filed, the Report &

13    Recommendation misapplies the relevant legal standard and disregards the evidence of prejudice

14    and delay set forth in the Opposition of Intervenor Thomson Consumer Electronics, Inc. and

15    Thomson S.A. (Specially Appearing) to the Motion ("Opposition" or "Opp."). (*See* Dkt. No.

16    1629.) Although the interim Special Master correctly notes that leave to amend should be freely

17    granted in the ordinary course, as discussed below and in the Opposition, the DAPs' untimely

18    and prejudicial amendments are far from made in the "ordinary course." To the contrary, the

19    DAPs propose to add Thomson Consumer and Thomson S.A. (along with certain Mitsubishi and

20    Samsung SDI entities) as defendants in the exceedingly late stages of this complex antitrust case

21    despite the fact that Thomson sold its CRT business eight years ago and the DAPs learned of

22    Thomson's involvement in the CRT market over five years ago and therefore should have

23    investigated Thomson's potential involvement in the alleged conspiracy at that time. The

24    proposed amendments will severely prejudice Thomson and result in substantial delay in this

25    MDL proceeding.

26    The Report & Recommendation fails to meaningfully address the considerable

27    prejudice to Thomson, finding that the filing of a new, separate litigation by Sharp Electronics

28    Corp. and Sharp Electronics Manufacturing Company of America, Inc. in March 2013, No. 13-

1  cv-01173 ("*Sharp*")—which, as explained in Thomson Consumer's Motion to Dismiss that case,

2  is almost certainly time-barred—somehow alleviates the prejudice arising from Thomson being

3  named as a defendant in *ten additional complaints* that, unlike the *Sharp* complaint, have been

4  pending for over seventeen months.

5         The Report & Recommendation also overlooks DAPs' improper delay and finds

6  that it was reasonable for the DAPs to wait until August 2012, when the Indirect Purchaser

7  Plaintiffs (IPPs) moved to amend, to begin their investigation into whether Thomson was

8  involved in the alleged conspiracy.  But the DAPs have admittedly been on notice of Thomson's

9  alleged involvement in the conduct underlying their claims since at least January 2008 when the

10 first putative class actions were filed against Thomson S.A.  Given this admission, it was entirely

11 unreasonable for DAPs to wait over four years to begin investigating claims against Thomson.

12 Nor was it reasonable for the DAPs to spend another seven months, from August 2012 to March

13 2013, "confirming" and then copying, nearly verbatim, five summary allegations that the IPPs

14 proposed to add to their complaint last August.[1]  Rather, the record is clear that the DAPs sat on

15 their rights far too long.  As a consequence of the DAPs' delay, adding Thomson as a defendant

16 will unfairly force it to defend claims relating to a business it exited eight years ago on an

17 extraordinarily expedited schedule.  In these circumstances, leave to amend is *not* freely granted,

18 as Judge Illston found in the LCD cases.  *See* Sept. 22, 2010 Hearing Transcript, *In re TFT-LCD*

19 *(Flat-Panel) Antitrust Litig.*, No. 07-md-01827 (N.D. Cal.), Dkt. No. 2071 at 22:3-5 (rejecting

20 amendment and stating "it's going to just take too much time and there's no good reason not to

21 do this—not to have done it before").

22         If the Court permits amendment, the current Scheduling Order (Dkt. No. 1595)

23 should be significantly extended to allow Thomson time (even if nowhere near the years of time

24 permitted the existing parties) to complete the considerable work necessary to put on a fair

25

26 _____
   [1] Even if such a finding were factually or legally supported, it cannot be squared with the Special

27 Master's conclusion that it would not be unfairly prejudicial to effectively require Thomson to
   complete *all* of the work required by this litigation—from motions to dismiss to discovery to

28 expert reports to summary judgment to trial preparation—in slightly more than twice the same
   time.

1  defense. Thomson, like the current defendants, should be afforded the opportunity to file

2  motions to dismiss, propound discovery to all of the DAPs, respond to discovery propounded by

3  the DAPs, identify and retain experts, prepare expert reports, respond to expert reports, file

4  motions for summary judgment, and, if necessary, prepare for trial. Under the current schedule,

5  Thomson would have to complete all those activities in mere months.

6  **PROCEDURAL HISTORY**

7  On March 26, 2013, the DAPs moved to amend to their complaints, most of

8  which were originally filed in November 2011, to, *inter alia*, add as defendants Thomson,

9  several Mitsubishi entities and, several Samsung SDI entities (with respect to the Costco

10  complaint only). (Dkt. No. 1609.) On April 9, 2013, Thomson filed its Opposition (Dkt. No.

11  1629), and Thomson Consumer filed a motion to intervene in this action (Dkt. No. 1630).

12  Mitsubishi and Samsung filed oppositions to the Motion on the same date. (Dkt. Nos. 1628,

13  1632.) The DAPs filed their reply in support of the Motion on April 16, 2013 (Dkt. No. 1638),

14  and the Motion was heard by interim Special Master Martin Quinn on May 8, 2013. On June 28,

15  2013, the interim Special Master issued the Report & Recommendation. (Dkt. No. 1751.)

16  **ARGUMENT**

17  "The Court reviews the Special Master's factual findings for clear error, his legal

18  conclusions *de novo*, and his procedural decisions for abuse of discretion." (Dkt. No. 1534 at 3

19  (citing Fed. R. Civ. P. 53(e) and Dkt No. 302).) The decision to grant a motion to amend is

20  reviewed for "abuse of discretion." *Jackson* v. *Bank of Haw.*, 902 F.2d 1385, 1387 (9th Cir.

21  1990). "A [court] abuses its discretion when it fails to give a reason for denying the motion,

22  applies an incorrect legal standard, misapplies the correct legal standard, or relies on clearly

23  erroneous findings of fact." *Szoke* v. *United Parcel Serv. of Am., Inc.*, 398 F. App'x 145, 151-53

24  (6th Cir. 2010); *see also Int'l Olympic Comm.* v. *S.F. Arts & Athletics*, 781 F.2d 733, 738 (9th

25  Cir. 1986) ("Abuse of discretion occurs if the [court] rests its conclusion on clearly erroneous

26  factual findings or . . . relies on erroneous legal conclusions."). Any questions of law presented

27  by a motion to amend a complaint, however, are subject to *de novo* review. *See Thompson* v.

28  *City of Lansing*, 410 F. App'x 922, 928-29 (6th Cir. 2011).

### I.   THE DAPs DO NOT SEEK THE TYPE OF AMENDMENT THAT IS "ROUTINELY GRANTED".

In determining whether to permit the DAPs' proposed amendments, the Court should consider whether there has been "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman* v. *Davis*, 371 U.S. 178, 182 (1962).  The most important of these "*Foman* factors" is "the presence or absence of prejudice."  (R&R at 4 (citing *Eminence Capital, LLC* v. *Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003)).)  Although the Report & Recommendation references the appropriate standards for evaluating a motion for leave to amend, it misapplies those general standards by disregarding the nature and timing of the proposed amendments and therefore reaches the wrong conclusion.

### A.   The Report & Recommendation Incorrectly Concludes That Thomson Would Not Suffer Any Undue Prejudice.

The Report & Recommendation improperly discounts the severe prejudice that results when a new party is added to a case at a late stage.  The Report & Recommendation notes that the Ninth Circuit has held that "[t]he policy of liberality applies whether the amendment will 'add new causes of action or parties'" (R&R at 4 (quoting *DCD Programs, Ltd.* v. *Leighton*, 833 F.2d 183, 186 (1987))), but omits the remainder of the Ninth Circuit's holding that the "policy of liberality" is "subject to the qualification that amendment of the complaint does not cause the opposing party undue prejudice," that "[a]mending a complaint to add a party poses an especially acute threat of prejudice to the entering party," and that "'[a]voiding prejudice to the party to be added thus becomes [the] major objective.'"  *DCD Programs*, 833 F.2d at 186-87 (quoting *Korn* v. *Royal Caribbean Cruise Line, Inc.*, 724 F.2d 1397, 1400 (9th Cir. 1984)).

As explained in the Opposition (at 5-10), naming Thomson as a defendant in the DAP actions five years into this complex antitrust litigation would severely prejudice Thomson. The current Scheduling Order contemplates the exchange of expert reports four months from now, in November 2013, the close of discovery in March 2014, the end of dispositive motion practice in April 2014 and trial occurring in October 2014.  (Dkt. No. 1595.)  Absent significant

1    adjustments to the current Scheduling Order, granting the Motion would effectively deprive

2    Thomson of the opportunity to adequately defend itself.

3            Because Thomson Consumer has never participated in this litigation and

4    Thomson S.A. has participated only by registering its objection to personal jurisdiction (Dkt.

5    No. 397), in order to catch up to the current litigation, Thomson Consumer and Thomson S.A.

6    would need to:  (1) file and litigate both entities' motions to dismiss, including a motion

7    challenging this Court's personal jurisdiction over Thomson S.A.; (2) identify, locate, contact

8    and interview former Thomson personnel who may have knowledge concerning the DAPs'

9    claims; (3) collect, review and produce documents responsive to discovery requests from the

10   DAPs; (4) obtain, search, review, analyze and possibly translate millions of pages of documents

11   produced in the class actions and direct actions for documents that relate to Thomson; (5) serve

12   additional document requests, interrogatories and requests for admission on the DAPs; (6) meet

13   and confer regarding the DAPs' discovery responses and file any necessary motions to compel;

14   (7) identify witnesses and notice depositions, including depositions of witnesses who had already

15   been deposed without Thomson's participation; and (8) engage experts and prepare expert

16   reports.[2]

17           These tasks are particularly onerous for Thomson for at least two reasons.  *First*,

18   many of the relevant documents are located in France, which has in place rigorous protections

19   against civil discovery.  *See, e.g.*, *In re Perrier Bottled Water Litig.*, 138 F.R.D. 348, 352-56 &

20   n.3 (D. Conn. 1991) (discussing French "blocking statute").  *Second*, as the DAPs acknowledge

21   (Mot. at 5), Thomson sold its CRT business in 2005, meaning that nearly all, if not all, relevant

22   personnel have long since left Thomson.  Courts have found that these types of complications are

23   a sufficient basis to deny motions for leave to amend in similar circumstances.  *See, e.g.*,

24   *Wilkins-Jones* v. *Cnty. of Alameda*, 2012 WL 3116025, at *8-9 (N.D. Cal. July 31, 2012)

25   (denying motion for leave to amend the complaint where, because of the passage of years, much

26   of the evidence required to mount a defense would be difficult to obtain); *see also Parker* v.

27

28   [2] Thomson would be further prejudiced if it were forced to proceed with these costly and time-consuming tasks while its motions to dismiss are pending.

SULLIVAN & CROMWELL LLP

-5-

1   *Shaw & Lines, LLC*, 2010 WL 1640963, at \*2 (D. Ariz. Apr. 20, 2010) ("It is axiomatic that, as

2   time passes, it becomes harder for Defendants to defend the action as witnesses become

3   unavailable and memories fade."); *Efaw* v. *Williams*, 473 F.3d 1038, 1041 (9th Cir. 2007)

4   (noting severe prejudice resulting from having to defend against old claims); *Fuller* v. *Marx*, 724

5   F.2d 717, 721 (8th Cir. 1984) (same).

6          Even after taking all the steps necessary to become current with the litigation as it

7   stands today, Thomson would then need to synthesize all of the discovery that has occurred (and

8   that will occur) in preparation for possible further dispositive motion practice, settlement

9   discussions or trial.  Forcing Thomson to complete this work in a period of months, as opposed

10  to the years that have been afforded the DAPs and the existing defendants, would be

11  fundamentally unfair and unduly prejudicial.  Under these circumstances, the interim Special

12  Master should have denied the Motion as to Thomson.  *See, e.g.*, Order, *In re TFT-LCD (Flat*

13  *Panel) Antitrust Litig.*, No. 07-md-01827 (N.D. Cal.), Dkt. No. 2641 at 1 (denying leave to

14  amend to add new defendants where it would cause "delay due to service, new discovery, and

15  motion practice"); *AmerisourceBergen Corp.* v. *Dialysist W., Inc.*, 465 F.3d 946, 952-54 (9th

16  Cir. 2006) (affirming denial of motion to amend where defendant would have to "scramble" to

17  respond to "different legal theories and . . .  different facts"); *Morongo Band of Mission Indians*

18  v. *Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990) (affirming denial of motion to amend where

19  defendant would have to undertake "at a late hour, an entirely new course of defense"); *Loehr* v.

20  *Ventura Cnty. Cmty. Coll. Dist.*, 743 F.2d 1310, 1319-20 (9th Cir. 1984) (denying leave to

21  amend to add new defendants where plaintiff's "new pleadings involved many of the same

22  occurrences as the original complaint, but also would have substantially complicated and delayed

23  the case for new discovery, responsive pleadings, and considerations of state law").

24          The Report & Recommendation disregards the prejudice described above and in

25  the Opposition, and the relevant cases denying motions to amend in similar circumstances, and

26  asserts that there can be no prejudice merely because (i) Thomson "will have long ago preserved

27  relevant documents" and (ii) Thomson has been named as a defendant in *Sharp*.  (R&R at 6-7.)

28

SULLIVAN & CROMWELL LLP

-6-

The Report & Recommendation is incorrect on both fronts.  *First*, nothing about the preservation of documents alleviates the extreme burdens identified above and in the Opposition (at 5-10).  It does not alter the facts that Thomson sold its CRT business in 2005, necessarily limiting the information and potential witnesses that will be available, or that a significant portion of any relevant documents will reside in France, where Thomson will face extreme complications in retrieving them.  *See supra* at 6.  Thomson will undoubtedly be prejudiced to the extent it has to rely on faded memories to overcome the absence of exculpatory documents or explain the existence of potentially incriminating ones (if any).  *See Parker*, 2010 WL 1640963, at *2; *Efaw*, 473 F.3d at 1041.  Regardless, as explained by Thomson in its Opposition (at 6-7) and again here, the prejudice to Thomson results not from having to gather potentially "relevant documents," but from having to review, process, produce and synthesize information from these documents on an abbreviated timetable (while also simultaneously engaging experts and preparing dispositive motions).  That Thomson preserved "relevant documents" therefore does not significantly reduce the prejudice of adding it as a defendant late in the game.  *See, e.g.*, *AmerisourceBergen Corp.*, 465 F.3d at 953-54 ("Even though eight months of discovery remained, requiring the parties to scramble and attempt to ascertain whether the Procrit purchased by [plaintiff] was tainted, would have unfairly imposed potentially high, additional litigation costs on [defendant] that could have easily been avoided had [plaintiff] pursued its 'tainted product' theory in its original complaint or reply."); *see also Tyco Thermal Controls LLC* v. *Redwood Indus.*, 2009 WL 4907512, at *3 (N.D. Cal. Dec. 14, 2009) (denying motion to amend where additional discovery would be required which would "delay the proceedings and increase the cost of litigation"); *KFD Enters., Inc.* v. *City of Eureka*, 2012 WL 2196330, at *3-4 (N.D. Cal. June 14, 2012) (same); *Demoura* v. *Ford*, 2012 WL 1898905, at *8-9 (E.D. Cal. May 23, 2012) (same); *Harris* v. *Vector Mktg. Corp.*, 2009 WL 3710696, at *2 (N.D. Cal. Nov. 4, 2009) (same).

*Second*, the conclusion that there can be no "credible argument that Thomson would be unduly prejudiced by being added as a defendant to these other DAP actions" because it is already named in the *Sharp* action (R&R at 7) is equally unfounded.  In order for that to be

1   true, the interim Special Master must assume that (a) Thomson will participate in the *Sharp*

2   action to its conclusion, (b) Thomson will devote the same energy and resources to defending the

3   *Sharp* action that it would to defending the *Sharp* action *and* the other ten DAP actions, and (c)

4   the *Sharp* action will proceed on the same schedule as the DAP actions.  However, there is every

5   reason to believe that Thomson will not in fact participate in the *Sharp* action through its

6   conclusion.  Both Thomson Consumer and Thomson S.A. have now filed motions to dismiss in

7   the *Sharp* action.  (*See* Dkt. Nos. 1677 & 1765.)  Moreover, Thomson has already exited these

8   proceedings three times:  first, when Thomson S.A. was initially named in putative class action

9   complaints in January 2008, but not in the consolidated class actions filed in March 2009; then

10  when the IPPs sought to amend their complaint to add Thomson as a defendant in August 2012,

11  but agreed to add Thomson only as a non-party co-conspirator; and finally, when Dell Inc. and

12  Dell Products L.P. filed an amended complaint against Thomson in May 2013, but voluntarily

13  dismissed Thomson one month later.  The entire justification for the Report & Recommendation

14  would disappear if Thomson were dismissed from the *Sharp* action as it has been from all the

15  others filed to date.

16          Furthermore, as the Report & Recommendation concedes, "added burdens come

17  with defending ten actions rather than one."  (R&R at 7).  However, the Report &

18  Recommendation greatly overstates the extent to which those burdens might somehow be

19  alleviated by the fact that all the actions are part of the same MDL.  (*Id.*)  The burden on

20  Thomson is significantly less if it is forced to defend against a single suit by two purchasers than

21  if it finds itself defending eleven suits by nearly thirty different purchasers that have already been

22  pending for seventeen months.  Obviously, the damages that could be recovered in the *Sharp*

23  action alone are a fraction of the damages that could be recovered in the *Sharp* action *and* the ten

24  other DAP actions combined.  And, if its motions to dismiss the *Sharp* action are unsuccessful,

25  Thomson will seek to have that action proceed on a delayed schedule reflecting its recent filing

26  date, *not* on the current schedule for the class actions and the direct actions.  In short, none of the

27  assumptions on which the Report & Recommendation relies is valid, and Thomson will be

28  unduly prejudiced if it is added as a defendant by the DAPs.

**B.    The Report & Recommendation Also Incorrectly Concludes That the Amendment Is Timely.**

Considering the substantial prejudice that would result to Thomson, there is simply no reason to excuse the DAPs' delay in seeking to add Thomson as a defendant.[3]  In assessing the timeliness of a motion for leave to amend, the Court should consider whether the motion was filed "long after [plaintiff] should have become aware of the information that underlies that motion."  *Scognamillo* v. *Credit Suisse First Boston, LLC*, 587 F. Supp. 2d 1149, 1157 (N.D. Cal. 2008) (quoting *IXYS Corp.* v. *Advanced Power Tech., Inc.*, 2004 WL 135861, at *4 (N.D. Cal. Jan. 22, 2004)); *see also Jackson*, 902 F.2d at 1389 (stating the court should consider "whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading").  Without question, the Motion was filed "long after [the DAPs] should have become aware of the information that underlies [it]."  *See Scognamillo*, 587 F. Supp. 2d at 1157.

The alleged conspiracy among CRT manufacturers has been extensively reported in the press and otherwise since November 2007.  As the DAPs allege in their Complaints, on November 8, 2007, the European Commission announced it had conducted raids on unspecified European manufacturers of CRTs.  (*See, e.g.*, Declaration of Eric J. Weiss in Support of the Motion, Ex. H ¶ 188.)  Then, on November 28, 2007 and January 9, 2008, the U.S. Department of Justice and the European Commission issued subpoenas to Thomson related to an alleged conspiracy among CRT manufacturers, facts which Thomson reported in a February 15, 2008 Form 6-K that was publicly filed with the SEC.  (Declaration of Laura Kabler Oswell in Support of Opposition, Ex. E at 84.)  These facts led four separate plaintiffs to file putative class actions

---

[3] The *Foman* factors reinforce one another and should be considered together.  *See, e.g.*, *Eminence Capital*, 316 F.3d at 1052 (noting weak showing in one can be overcome by strong showing in others); *see also DCD Programs*, 833 F.2d at 186-88 (considering "unjust delay" in context of bad faith and prejudice).  Accordingly, given the substantial prejudice that would result to Thomson from granting the Motion, the DAPs have a heightened burden to show that their proposed amendments are timely.  *See, e.g.*, *Jackson*, 902 F.2d at 1388 (affirming denial of motion for leave to file an amended complaint where appellants failed to "justif[y] their delay in moving to file an amended complaint"); *Parker* v. *Joe Lujan Enters., Inc.*, 848 F.2d 118, 121 (9th Cir. 1988) (same).  The Report & Recommendation appears to take a contrary and erroneous approach—evaluating each of the *Foman* factors separately and not considering whether the amendment was timely in light of the prejudice to Thomson.  (*See* R&R at 5-8.)

1   against Thomson S.A. in early 2008.[4]  Clearly, a reasonable plaintiff would have reason to

2   suspect that Thomson was involved in this conspiracy and would have undertaken to confirm

3   that suspicion.  The DAPs did not.

4          The DAPs once again failed to pursue their claims when the existing defendants

5   provided discovery in 2011.  It wasn't until July 2012 that the IPPs attempted to ascertain

6   whether Thomson was involved in the alleged conspiracy (Dkt. No. 1378 at 2-3), and it wasn't

7   until after the IPPs filed a Motion to Amend on August 22, 2012 that the DAPs did likewise

8   (Mot. at 5 (stating that their proposed amendments were "prompted by" the IPPs' motion)).  At

9   that time, the DAPs allegedly began to conduct a "targeted review[]" of documents that yielded

10  evidence purportedly supporting adding Thomson as a defendant in this matter.  (*Id.*)  However,

11  this same evidence would have been available to the DAPs when they filed their complaints in

12  late 2011 and early 2012:  presumably, a simple search for "Thomson" in conjunction with other

13  keywords—which any reasonable plaintiff would have done given Thomson's known potential

14  involvement—would have likely yielded the evidence that the DAPs allege supports their

15  amendments.  Although waiting until August 2012 to file claims based on facts known by

16  plaintiffs in early 2009 is unreasonable, waiting another seven months to file the instant Motion

17  is unforgiveable, particularly because the allegations in the proposed amended complaints appear

18  to have been copied nearly verbatim from the draft of the IPPs' Fourth Amended Complaint.

19  (*Compare* Dkt. No. 1610-1, Ex. C., ¶ 161 *with* Dkt. No. 1325-1, Ex. A, ¶ 186; *compare also* Dkt.

20  No. 1610-1, Ex. C, ¶¶ 61-63 with Dkt. No. 1325-1, Ex. A, ¶¶ 102-04; *see also Jackson*, 902 F.2d

21  at 1388 ("Although appellants argue that the evidence of the Bank's representations, promises,

22  and nondisclosures were not 'fully flushed out' until September or October of 1987, they cite no

23  facts or theories gleaned from the additional discovery period to support this contention.");

24  *Dunbar* v. *Google, Inc.*, 2012 WL 6202797, at *12 (N.D. Cal. Dec. 12, 2012) ("The fact that

25

_____

26  [4] *Radio & TV Equip., Inc.* v. *Chunghwa Picture Tubes, Ltd.*, No. 08-cv-00542 (D.N.J., filed Jan. 28, 2008); *Sound Inv. Corp.* v. *Chunghwa Picture Tubes, Ltd.*, No. 08-cv-00543 (D.N.J., filed

27  Jan. 28, 2008); *Stack* v. *Chunghwa Picture Tubes, Ltd.*, No. 08-cv-01319 (N.D. Cal., filed Mar. 7, 2008); *Ganz* v. *Chunghwa Picture Tubes, Ltd.*, No. 08-cv-01721 (N.D. Cal., filed Mar. 31,

28  2008).

1   additional discovery may be needed to 'fully flush[ ] out' a plaintiff's allegations will not excuse

2   a plaintiff's failure to include the allegations in an earlier pleading where the additional discovery

3   provides no new facts or theories.").)

4           The Report & Recommendation glosses over the DAPs' delay and adopts a short-

5   sighted approach to the question of whether the instant Motion is timely.  The Report &

6   Recommendation evaluates only the time period between late 2011, when the existing

7   defendants' production was substantially completed, and March 2013, when the instant Motion

8   was filed, in determining whether the amendments are timely.  (*See* R&R at 5-6.)  However, the

9   timeliness of the Motion is not determined by the production of documents in this matter.

10  Instead, the relevant question is when the DAPs "should have become aware of the information

11  that underlies [the] motion," *see Scognamillo*, 587 F. Supp. 2d at 1157-60, and, as discussed

12  *supra*, the DAPs should have known the basis for their claims against Thomson before they filed

13  their original complaints.

14          The Report & Recommendation further divides the already improperly truncated

15  time period into two shorter periods, between late 2011 and August 2012 and August 2012 and

16  March 2013.  The Special Master concludes that (a) it was reasonable for the IPPs to wait until

17  August 2012 to file their motion to amend, (b) it was reasonable for the DAPs to take seven

18  months to investigate their claims and wait until March 2013 to file the Motion, and therefore (c)

19  it must be reasonable for the DAPs to wait until March 2013 to file the Motion.  (*See* R&R at 5-

20  6.)  This analysis is also in error.  In reaching the first conclusion, Special Master Quinn relies

21  almost exclusively on Special Master Legge's October 2012 Report and Recommendation

22  finding that the IPPs' Motion to Amend was timely as to Mitsubishi.  (*See* R&R at 5 (citing Dkt.

23  No. 1453).)  However, that report and recommendation did not address Thomson, was never

24  adopted by this Court and was ultimately superseded by the IPPs' agreement to add Mitsubishi

25  as a non-party co-conspirator (*see* Dkt. No. 1505).  In any event, if Special Master Legge had

26  fully considered what the IPPs *should have known* when they filed their proposed amendments,

27  he would have concluded that the proposed amendments were untimely.  *See Scognamillo*, 587

28

1   F. Supp. 2d at 1158 (considering when plaintiffs "should have known" the facts that allegedly

2   formed the basis of their later amendments), *Jackson*, 902 F.2d at 1388 (same).

3            Moreover, even if Special Master Legge correctly concluded that the IPP

4   amendment was timely, the same cannot be said of the DAPs' proposed amendments.  The DAPs

5   already had access to the information purportedly forming the basis for the instant Motion when

6   they filed their complaints in late 2011 and early 2012.  Therefore, they "should have known the

7   facts and theories raised by the amendment in the original pleading."  *See Jackson*, 902 F.2d at

8   1389; *see also Scognamillo*, 587 F. Supp. 2d at 1159 (denying motion to amend where plaintiffs

9   had "long had access to the information on which they based their new theory of the case").

10   And, even if the conclusion in the IPP report and recommendation were applicable to the DAPs,

11   the Report & Recommendation still reaches the wrong conclusion.  Applying the objective test to

12   the DAPs, it is no answer to say that their Motion is timely because they completed their

13   "targeted review" quickly enough after the IPPs discovered the information that underlies the

14   Motion.  The DAPs have given no valid reason why they should not have known independently

15   about Thomson's purported involvement in the alleged conspiracy years before the Motion was

16   filed.

17      **II.**     **IF THE MOTION IS GRANTED, THE COURT SHOULD EXTEND THE
18              CURRENT SCHEDULING ORDER.**

19            The Report & Recommendation not only incorrectly concludes that the Motion

    should be granted, it also seems to incorrectly conclude that no conditions should be placed on

20   the granting of the Motion.[5]  If this Court adopts the Report & Recommendation, and Thomson

21   respectfully submits that it should not, "[a]voiding prejudice to the part[ies] to be added [should

22   be] [the] major objective."  *See DCD Programs*, 833 F.2d at 187.  At a minimum, the deadlines

23   reflected in the current Scheduling Order should be extended by ten months (*see* Exhibit A) so

24   that Thomson has sufficient time to get up to speed and meaningfully participate in ongoing

25   events, which will require extensive review of the facts, service of discovery, and the retention

26

27

28   [5] The Report & Recommendation does not address Thomson's argument in the Opposition (at 12-13) that the schedule for this matter must be adjusted if the Motion is granted.

1   and preparation of experts in what will still be a very abbreviated time period, particularly in

2   light of the fact that the DAPs and other parties to this litigation have been at it for several years

3   already.

4   **<u>CONCLUSION</u>**

5          For the foregoing reasons, Thomson respectfully disagrees with the conclusion of

6   the Report & Recommendation that the Motion is timely and non-prejudicial, and urges the

7   Court to deny the Motion with prejudice as to Thomson.

8   Dated:  July 12, 2013                Respectfully submitted,

9 

                               /s/ Robert A. Sacks

10                             Robert A. Sacks (SBN 150146)

                             Rory P. Culver (SBN 271868)

11                             SULLIVAN & CROMWELL LLP

                             1888 Century Park East, Suite 2100

12                             Los Angeles, California 90067

                             Tel.: (310) 712-6600

13                             Fax: (310) 712-8800

14                             Laura Kabler Oswell (SBN 241281)

                             SULLIVAN & CROMWELL LLP

15                             1870 Embarcadero Road

                             Palo Alto, California 94303

16                             Tel.: (650) 461-5600

                             Fax: (650) 461-5700

17                             Attorneys for Thomson Consumer Electronics,

                             Inc. and Specially Appearing Defendant

18                             Thomson S.A.

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

**Proposed Schedule Modification**

| Event | Current Date | Proposed Date |
|---|---|---|
| Last day for DAPs to serve opening expert reports on the merits | October 23, 2013 | August 25, 2014 |
| Last day for Defendants to serve opposition expert reports on the merits | November 22, 2013 | September 22, 2014 |
| Last day for DAPs to serve rebuttal expert reports on the merits | January 31, 2013 | November 21, 2014 |
| Close of fact and expert discovery | March 3, 2014 | December 22, 2014 |
| Last day to file dispositive motions | April 15, 2014 | February 11, 2015 |
| Last day to file oppositions to dispositive motions | June 2, 2014 | March 25, 2015 |
| Last day to file replies in support of dispositive motions | July 2, 2014 | April 24, 2015 |
| Hearing on dispositive motions | July 18, 2014 | May 11, 2015 |
| Mediation | July 31, 2014 | May 27, 2015 |
| Last day for actions filed outside of ND Cal. to be returned to courts in which originally filed | August 15, 2014 | June 12, 2015 |
| Last day for settlement conference | August 15, 2014 | June 12, 2015 |
| Last day for filing motions *in limine* and other non-dispositive pre-trial motions | August 15, 2014 | June 12, 2015 |

Exhibit A, Page 14

| Last day to meet and confer re pretrial order | August 22, 2014 | June 19, 2015 |
|---|---|---|
| Parties must exchange proposed exhibits and witness lists | August 29, 2014 | June 26, 2015 |
| Last day for filing pretrial order, agreed set of jury instructions and verdict forms | August 29, 2014 | June 26, 2015 |
| Last day for filing oppositions to motions *in limine* | August 29, 2014 | June 26, 2015 |
| Last day for filing replies in support of motions *in limine* | September 12, 2014 | July 10, 2015 |
| Hearing on motions *in limine* | September 26, 2014 | July 27, 2015 |
| Final pretrial conference | October 6, 2014 | August 10, 2015 |
| Trial(s) | October 20, 2014 | August 24, 2015 |