Christopher M. Curran (*pro hac vice*)
ccurran@whitecase.com
Lucius B. Lau (*pro hac vice*)
alau@whitecase.com
Dana E. Foster (*pro hac vice*)
defoster@whitecase.com
White & Case LLP
701 Thirteenth Street, N.W.
Washington, DC  20005
Telephone:  (202) 626-3600
Facsimile:  (202) 639-9355

*Attorneys for Defendants Toshiba Corporation,*
*Toshiba America, Inc., Toshiba America*
*Information Systems, Inc., Toshiba America*
*Consumer Products, L.L.C., and Toshiba America*
*Electronic Components, Inc.*

(Additional objecting defendants and counsel
listed on signature block)

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
(SAN FRANCISCO DIVISION)

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Case No. 07-5944 SC MDL No. 1917 |
| This Document Relates to: | **DEFENDANTS' JOINT REPLY IN SUPPORT OF OBJECTIONS TO THE REPORT AND RECOMMENDATIONS REGARDING DEFENDANTS' MOTIONS TO DISMISS DIRECT ACTION COMPLAINTS** |
| *Electrograph Systems, Inc., et al. v. Hitachi, Ltd., et al.*, No. 11-cv-01656; | |
| *Stoebner, et al. v. LG Electronics, et al.*, No. 11-cv-05381; | |
| *Siegel v. Hitachi, Ltd., et al.*, No. 11-cv-05502; | Date:           August 23, 2013<br>Time:           10:00 a.m.<br>Judge:          Hon. Samuel Conti<br>Special Master: Hon. Charles A. Legge,<br>                U.S. District Judge (Ret.) |
| *Best Buy Co., Inc., et al. v. Hitachi, Ltd., et al.*, No. 11-cv-05513; | |

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Target Corp, et al. v. Chunghwa Picture Tubes, Ltd., et al.*, No. 11-cv-05514;

*Interbond Corporation of America v. Hitachi, Ltd., et al.*, No. 11-cv-06275;

*Office Depot, Inc. v. Hitachi Ltd., et al.*, No. 11-cv-06276;

*CompuCom Systems, Inc. v. Hitachi, Ltd., et al.*, No. 11-cv-06396;

*Costco Wholesale Corporation v. Hitachi, Ltd., et al.*, No. 11-cv-06397;

*P.C. Richard & Son Long Island Corporation, et al. v. Hitachi, Ltd., et al.*, No. 12-cv-02648;

*Schultze Agency Services, LLC, et al. v. Hitachi, Ltd., et al.*, No. 12-cv-02649.

DEFENDANTS' JOINT REPLY IN SUPPORT OF OBJECTIONS TO THE REPORT AND RECOMMENDATIONS REGARDING DEFENDANTS' MOTIONS TO DISMISS DIRECT ACTION COMPLAINTS
Case No. 07-5944 SC
MDL No. 1917

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...............................................................................................................1

ARGUMENT.....................................................................................................................2

I.   THE DAPS' ARGUMENTS CANNOT SAVE THE REPORT'S
     MISAPPLICATION OF *AT&T* ...............................................................................2

II.  THE REPORT FAILED TO CONSIDER, AND THE DAPS'
     COMPLAINTS FAILED TO SATISFY, THE REQUIREMENTS OF
     PRUDENTIAL STANDING.................................................................................5

III. STATUTES OF LIMITATION BAR THE DAPS' STATE-LAW CLAIMS ................7

     A.   Fraudulent Concealment Tolling Cannot Save the DAPs' State-Law
          Claims..............................................................................................7

     B.   "Cross-Jurisdictional" Class Tolling Is Inapplicable.............................................12

IV.  THE REPORT ERRED IN HOLDING THAT THE DAPS' FEDERAL
     ANTITRUST LAW CLAIMS FALL UNDER THE "OWNED OR
     CONTROLLED" EXCEPTION TO *ILLINOIS BRICK* .................................................16

CONCLUSION...................................................................................................................17

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

# **TABLE OF AUTHORITIES**

**Cases**                                                                 **Page(s)**

*Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*,
    483 U.S. 143 (1987) ........................................................................................9

*Allstate Ins. Co. v. Hague*,
    449 U.S. 302 (1981) ........................................................................................2

*Arivella v. Lucent Techs., Inc.*,
    623 F. Supp. 2d 164 (D. Mass. 2009) ..........................................................14

*AT&T Mobility LLC v. AU Optronics Corp.*,
    707 F.3d 1106 (9th Cir. 2013).................................................................*passim*

*Barnebey v. E.F. Hutton & Co.*,
    715 F. Supp. 1512 (M.D. Fla. 1989) ............................................................14

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ...................................................................................2, 5

*Clemens v. DaimlerChrysler Corp.*,
    534 F.3d 1017 (9th Cir. 2008)...............................................13, 14, 15, 16

*Conmar Corp. v. Mitsui & Co.*,
    858 F.2d 499 (9th Cir. 1988).........................................................................11

*Davis v. Fed. Election Comm'n*,
    554 U.S. 724 (2008) .......................................................................................7

*Douchette v. Bethel Sch. Dist.*,
    117 Wash. 2d 805 (1991) .............................................................................14

*Eichman v. Fotomat Corp.*,
    880 F.2d 149 (9th Cir. 1989)........................................................................14

*GO Computer, Inc. v. Microsoft Corp.*,
    508 F.3d 170 (4th Cir. 2007)....................................................................7, 12

*Hatfield v. Halifax PLC*,
    564 F.3d 1177 (9th Cir. 2009)......................................................................14

DEFENDANTS' JOINT REPLY IN SUPPORT OF OBJECTIONS TO THE REPORT AND
RECOMMENDATIONS REGARDING DEFENDANTS' MOTIONS TO DISMISS DIRECT ACTION
COMPLAINTS
Case No. 07-5944 SC
MDL No. 1917
iii

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Hexcel Corp. v. Ineos Polymers, Inc.*,
    681 F.3d 1055 (9th Cir. 2012).................................................................7, 10

*Illinois Brick Co. v. Illinois*,
    431 U.S. 720 (1977) .........................................................................................2

*In re ATM Fee Antitrust Litig.*,
    686 F.3d 741 (9th Cir. 2012) ........................................................................16

*In re Copper Antitrust Litig.*,
    436 F.3d 782 (7th Cir. 2006) ........................................................................ 16

*In re Dynamic Randon Access Memory (DRAM) Antitrust Litig.*,
    516 F. Supp. 2d 1072 (N.D. Cal. 2007) .......................................................16

*In re Linerboard Antitrust Litig.*,
    223 F.R.D. 335 (E.D. Pa. 2004) ...................................................................15

*In re Processed Egg Prods. Antitrust Litig.*,
    No. 08-md-02002, 2011 WL 5980001 (E.D. Pa. Nov. 30, 2011) ..................9

*In re Rezulin Products Liability Litig.*,
    No. 00Civ.2843LAK, 2006 WL 695253 (S.D.N.Y. Mar. 15, 2006) ..........15

*In re TFT-LCD Antitrust Litig.*,
    No. M 07-1827, 2012 WL 149632 (N.D. Cal. Jan. 18, 2012) .....................14

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    No. M 07-1827 SI, 2013 WL 1891367 (N.D. Cal. May 6, 2013)..............3, 4

*In re Urethane Antitrust Litig.*,
    663 F. Supp. 2d. 1067 (D. Kan. 2009) .........................................................15

*In re Vioxx Products Liability Litig.*,
    522 F. Supp. 2d 799 (E.D. La. 2007) .......................................................... 16

*In re Vitamins Antitrust Litig.*,
    183 Fed. Appx. 1 (D.C. Cir. May 15, 2006) ............................................... 15

*Jenson v. Allison-Williams Co.*,
    No. 98-CV-2229 TW (JFS), 1999 WL 35133748 (S.D. Cal. Aug. 23, 1999) ..............14

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Kendall v. Visa U.S.A., Inc.*,
   518 F.3d 1042 (9th Cir. 2008)..........................................................................2, 5

*Klehr v. A.O. Smith Corp.*,
   521 U.S. 179 (1997)..........................................................................................9

*Lee v. Grand Rapids Bd. of Educ.*,
   148 Mich. App. 364 (1986)..............................................................................14

*Lujan v. Nat'l Wildlife Fed'n*,
   497 U.S. 871 (1990)......................................................................................6-7

*Ocean Advocates v. U.S. Army Corps of Eng'rs*,
   402 F.3d 846 (9th Cir. 2005)............................................................................6

*Patterson v. Novartis Pharm. Corp.*,
   909 F. Supp. 2d 116 (D.R.I. 2012)..................................................................15

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985) .......................................................................................2

*Rotella v. Wood*,
   528 U.S. 549 (2000)........................................................................................9

*Sawyer v. Atlas Heating and Sheet Metal Works, Inc.*,
   642 F.3d 560 (7th Cir. 2011)..........................................................................16

*Seaboard Corp. v. Marsh Inc.*,
   295 Kan. 384 (2012) .................................................................................14, 15

*Senger Bros. Nursery, Inc. v. E.I. DuPont de Nemours & Co.*,
   184 F.R.D. 674 (M.D. Fla. 1999)....................................................................15

*Silva v. U.S. Bancorp*,
   5:10-cv-01854-JHN-PJWx, 2011 WL 7096576 (C.D. Cal. Oct. 6, 2011)....................13

*Soward v. Deutsche Bank AG*,
   814 F. Supp. 2d 272 (S.D.N.Y. 2011) ...........................................................16

*Tatum v. Schwartz*,
   No. S-06-01440 DFL EFB, 2007 WL 419463 (E.D. Cal. Feb. 5, 2007) ....................13

DEFENDANTS' JOINT REPLY IN SUPPORT OF OBJECTIONS TO THE REPORT AND
RECOMMENDATIONS REGARDING DEFENDANTS' MOTIONS TO DISMISS DIRECT ACTION
COMPLAINTS
Case No. 07-5944 SC
MDL No. 1917
v

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

*Todd v. F. Hoffman-La Roche, Ltd.*,
    No. 98-4574, 2004 WL 5238952 (D. Kan. Aug. 20, 2004) .........................................15

**Statutes**

Ariz. Rev. Stat. §§ 44-1410(b).................................................................................8

Cal. Bus. & Prof. Code § 16750.1 ..........................................................................8

Cal. Bus. & Prof. Code § 17208 ..............................................................................8

Fla. Stat. Ann. § 95.11(3)(f)......................................................................................8

740 Ill. Comp. Stat. § 10/7(2) ..................................................................................8

Iowa Code Ann. § 553.16 .........................................................................................8

Kan. Stat. Ann. § 60-512(2).......................................................................................8

Mass. Gen. Laws Ann. ch. 260 § 5A .......................................................................8

Mich. Comp. Laws Ann. § 445.781 ..........................................................................8

Minn. Stat. Ann. § 325D.64.......................................................................................8

Miss. Code Ann. § 15-1-49........................................................................................8

Neb. Rev. Stat. § 25-206............................................................................................8

Nev. Rev. Stat. § 598A.220........................................................................................8

N.M. Stat. Ann. § 57-1-12 .........................................................................................8

N.Y. Gen. Bus. Law § 340(5) ....................................................................................8

N.C. Gen. Stat. § 75-16.2...........................................................................................8

Wash. Rev. Code § 19.86.120 ...................................................................................8

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## INTRODUCTION

The Direct Action Plaintiffs' ("DAPs'") Motion to Adopt Rulings from the Report and Recommendations Regarding Defendants' Motion to Dismiss Direct Action Complaints (the "DAPs' Mot.", Docket No. 1749) urges the Court to adopt certain recommendations in Special Master Legge's May 2, 2013 Report and Recommendations Regarding Defendants' Motion to Dismiss Direct Action Complaints (the "Report", Docket No. 1664), but it does so by repeatedly mischaracterizing the law and ignoring the most basic deficiencies in the DAPs' complaints.

With respect to due process, the DAPs' claims under the California Cartwright Act do not satisfy the requirements set forth in *AT&T Mobility LLC v. AU Optronics Corp.*, 707 F.3d 1106 (9th Cir. 2013) ("*AT&T*"). The DAPs' Motion repeats the central error of the Report: neither explains why the DAPs' Cartwright Act claims survive under *AT&T*'s due process analysis, which requires that a plaintiff plead specific factual allegations regarding each Defendant's conspiratorial conduct in California. The DAPs' complaints have not done so. Moreover, the DAPs wholly fail in their efforts to stretch the *AT&T* holding to claims arising under other state statutes. As to those states, the DAPs have completely failed to allege adequate connections between the Defendants' alleged anticompetitive conduct and those states for purposes of satisfying due process.

Regarding their pleading deficiencies in failing to meet the requirements of prudential standing, the DAPs rely on inapposite authority while ignoring the persuasive cases cited in the Defendants' Joint Objections to the Report and Recommendations Regarding Defendants' Motion to Dismiss Direct Action Complaints (the "Defendants' Objections", Docket No. 1706). The DAPs have failed to meet their burden of demonstrating that their claims fulfill the requirements of prudential standing, separate and apart from their failure to establish that the requirements of due process have been met.

Regarding the timeliness of their claims, the DAPs mischaracterize the European Commission's November 8, 2007 press release and the DAPs' resulting obligation to

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1    investigate possible claims.  The DAPs further rely on non-binding case law regarding cross-
2    jurisdictional tolling, while ignoring binding Ninth Circuit precedent.

3           Regarding their pleading deficiencies in failing to allege facts sufficient to establish
4    federal antitrust standing, the DAPs ignore their failure to purchase the product at issue, *i.e.*,
5    stand-alone CRTs, and to meet the requirements of the "owned and controlled" exception to
6    *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977).

7           For the above reasons, and as more fully discussed below, the Court should reject
8    these recommendations and grant the Defendants' motion to dismiss on these grounds.

9                                          <u>**ARGUMENT**</u>

10   **I.    THE    DAPS'    ARGUMENTS    CANNOT    SAVE    THE    REPORT'S**
11   **MISAPPLICATION OF *AT&T***

12          Contrary to what the DAPs erroneously state in their motion, the Defendants have
13   consistently argued that certain of the DAPs' claims should be dismissed for lack of due
14   process because the DAPs fail to sufficiently allege appropriate contacts with the states at
15   issue.  *See* Defendants' Joint Motion to Dismiss Direct Action Plaintiffs' Complaints at 16
16   ("Defendants' Motion to Dismiss", Docket No. 1317) ("DAPs must show significant contacts
17   in these states—both with the parties and with the occurrence or transaction giving rise to the
18   litigation.") (quoting *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821-22 (1985) and
19   citing *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 310-11 (1981)); Defendants' February 22,
20   2013 Letter (Docket No. 1581) at 2 ("[N]one of [the DAPs' complaints] contain any specific
21   allegation that defendants entered into any price-fixing agreement in California. . . . Another
22   category of direct action plaintiffs in this case assert claims in states other than California and
23   include ***no*** allegations of price-fixing conduct in those particular states."); Defendants'
24   Objections at 5 ("[T]he DAPs must offer specific factual allegations regarding each
25   Defendant's conspiratorial conduct.") (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,
26   556-57 (2007) (noting that "a bare assertion of conspiracy will not suffice" and further
27   stating that "a conclusory allegation of agreement . . . does not supply facts adequate to show
28   illegality."); *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1048 (9th Cir. 2008)).  Although the

DEFENDANTS' JOINT REPLY IN SUPPORT OF OBJECTIONS TO THE REPORT AND
RECOMMENDATIONS REGARDING DEFENDANTS' MOTIONS TO DISMISS DIRECT ACTION
COMPLAINTS
Case No. 07-5944 SC
MDL No. 1917

1   Ninth Circuit's decision in *AT&T* has changed the due process standard applicable to some of

2   the DAPs' claims, the result is the same:  the DAP claims identified by the Defendants in

3   their motion to dismiss must be dismissed for lack of due process.

4       Notably, the DAPs relegate to a single footnote an argument that their pleadings

5   actually satisfy due process under *AT&T*.  Motion to Adopt at 4 n.1.  In so doing, the DAPs

6   rely upon the Report's erroneous conclusion that *AT&T* offers a "broader interpretation" of

7   the due-process standard than that articulated by the Defendants, and therefore any analysis

8   of the *AT&T* standard should be saved for another motion.  Report at 9.  As the DAPs know,

9   the Ninth Circuit issued its decision in *AT&T* the day of the hearing before Special Master

10   Legge, after the briefing had occurred.  During the hearing, the DAPs invoked that decision

11   and Special Master Legge requested that the parties address the decision by letter brief,

12   which the Defendants did in their February 22, 2013 Letter (Docket No. 1581).  This series

13   of events, along with Special Master Legge's reliance on *AT&T* in the Report, required the

14   Defendants to address that decision and its application (or lack thereof) to the facts at issue in

15   this case.  *See* Report at 9.  The Defendants' response to the *AT&T* decision is consistent with

16   their arguments throughout the briefing of their motion to dismiss and the briefing in

17   response to the Report:  certain of the DAPs' claims must be dismissed because they do not

18   sufficiently allege the appropriate contacts with the relevant states at issue.  The Defendants'

19   arguments, therefore, are properly before this Court.

20       In skirting the issue of whether their Cartwright Act claims pass muster under *AT&T*,

21   the DAPs also ignore Judge Illston's decision in *In re TFT-LCD (Flat Panel) Antitrust Litig*.,

22   No. M 07-1827 SI, 2013 WL 1891367 (N.D. Cal. May 6, 2013) ("*LCD*").  In that decision,

23   Judge Illston held that the plaintiffs offered detailed allegations regarding specific employees of

24   specific defendants who exchanged information and entered into agreements on prices in

25   California.  *Id.* at *3.  Here, in contrast, the DAPs' bare and conclusory allegations fail to provide

26   any specific details as to what conspiratorial conduct purportedly took place in California.  At

27   most, some of the DAPs allege that unnamed employees of unnamed Defendants participated in

28   meetings at unnamed locations in California.  *See* Defendants' Objections at 7.  And while the

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

DEFENDANTS' JOINT REPLY IN SUPPORT OF OBJECTIONS TO THE REPORT AND
RECOMMENDATIONS REGARDING DEFENDANTS' MOTIONS TO DISMISS DIRECT ACTION
COMPLAINTS
Case No. 07-5944 SC
MDL No. 1917

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1  DAPs point to plea agreements and statements in indictments in an effort to show conspiratorial

2  conduct in California, the *LCD* Court expressly determined that plea agreements failed to satisfy

3  the *AT&T* standard because they did not indicate which defendant carried out which act.

4  2013 WL 1891367, at *4.

5      The DAPs' citation to *AT&T* is misleading.  In arguing that the decision applies to

6  claims other than those under the Cartwright Act, the DAPs include this quote:

7  "anticompetitive conduct by a defendant within a state that is related to a plaintiff's alleged

8  injuries and is not 'slight and casual' establishes a 'significant aggregation of contacts,

9  creating state interests, such that the choice of its law is neither arbitrary nor fundamentally

10  unfair.'"  DAPs' Mot. at 5 (quoting *AT&T*, 707 F.3d at 1113).  However, *in the very next*

11  *sentence*, the Ninth Circuit declares its actual holding:  "Specifically, we hold in this case

12  that the Cartwright Act can be lawfully applied without violating a defendant's due process

13  rights when more than a *de minimis* amount of that defendant's alleged conspiratorial activity

14  leading to the sale of price-fixed goods to plaintiffs took place **in California**."  *AT&T*,

15  707 F.3d at 1113 (emphasis added).  And, as Defendants argued (but DAPs ignore), Judge

16  Illston's recent decision in the *LCD* case reinforces the fact that *AT&T* is limited to claims

17  arising under the Cartwright Act.  *LCD*, 2013 WL 1891367, at *4.  At bottom, both the DAPs

18  and Special Master Legge misread this narrow holding in applying it beyond the facts as

19  alleged in *AT&T* and to claims other than those arising under the Cartwright Act.

20      In addition to these errors, the DAPs fail to respond to the Defendants' arguments

21  about that decision, including:  (1) that the Report erroneously applied *AT&T* to the DAPs'

22  Cartwright Act claims; (2) that *AT&T* does not apply to the DAPs' Florida and Massachusetts

23  claims; and (3) that even if *AT&T* applied outside California, the DAPs' non-California

24  claims would still not satisfy the requirements of due process.  *See* Defendants' Objections

25  at 5-7, 9-10.  As a result, the Court should treat these arguments as being conceded.

26      In sum, the Report incorrectly concluded that requirements of due process have been

27  met as to those DAPs that made claims under the Cartwright Act because the DAPs must

28  provide specific factual allegations regarding each Defendant's anticompetitive conduct in

California, which they have failed to do. *AT&T*, 707 F.3d at 1113; *see also Twombly*, 550 U.S. at 556-57. The DAPs have also not met the requirements of due process with respect to their claims arising under state statutes other than the Cartwright Act because they have failed to allege any connection between the Defendants' alleged anticompetitive conduct and any of these states. *See Twombly*, 550 U.S. at 556-57; *Kendall*, 518 F.3d at 1048. None of the DAPs' arguments changes these conclusions.

## II.   THE REPORT FAILED TO CONSIDER, AND THE DAPS' COMPLAINTS FAILED TO SATISFY, THE REQUIREMENTS OF PRUDENTIAL STANDING

As explained in the Defendants' Objections, Special Master Legge did not fully consider the Defendants' prudential standing argument in his Report. Compounding this error, the DAPs wholly ignore the Defendants' arguments that the DAPs' claims do not satisfy the requirements of zone-of-interest prudential standing because they either (i) did not allege the purchase of a CRT product in the state in which they filed a claim, or (ii) asserted only insufficient or conclusory allegations that they purchased or received a CRT product in a state without sufficient facts to support the claim. *See* Defendants' Objections at 12-16. Rather, the DAPs merely focus on the length of the Defendants' argument and conflate the standards regarding due process and prudential standing. Neither of these tactics saves the DAPs' ill-pleaded claims.

First, the DAPs attack the Defendants' prudential standing argument based on the length of the Defendants' argument. DAPs' Mot. at 6. Although the length of the Defendants' argument is of no moment, the Defendants sufficiently argued that certain of the DAPs' claims failed to meet the requirements of prudential standing in dedicating nearly two pages of their opening brief and two pages in Appendix C (attached thereto) to present their argument and identify supporting case law, the state statutes at issue, and the deficient DAP state-law claims. Defendants' Motion to Dismiss at 21-22. Appendix C provides a complete list of each DAP's state-law claim that fails to allege sufficient contacts with relevant states, including a citation to the specific deficiency in each of the DAP's complaints. For example, Appendix C identifies Costco Wholesale Corporation's ("Costco's") Arizona, Florida, and

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

1   Illinois claims as being deficient because Costco's Complaint alleges only that it received

2   CRT products at distribution centers located in those states, and alleges no other contacts

3   with those states.  *See* Appendix C at 1 (Docket No. 1317-3); Costco Compl. at ¶¶ 13-14.

4          Second, the DAPs erroneously rely on *AT&T* to argue that they purchased CRT

5   products in the relevant states, and thus are asserting their own legal rights and have

6   established prudential standing.  DAPs' Mot. at 7.  But *AT&T* has no bearing on the DAPs'

7   failure to establish *prudential standing*, separate and apart from due process considerations.

8   Indeed, the DAPs fail to recognize that *AT&T*'s holding is limited on its face to due process,

9   rather than prudential standing:  "the Cartwright Act can be lawfully applied without

10  violating a defendant's ***due process rights*** when more than a *de minimis* amount of that

11  defendant's alleged conspiratorial activity leading to the sale of price-fixed goods to

12  plaintiffs took place in California."  *AT&T*, 707 F.3d at 1113 (emphasis added).  The DAPs'

13  reliance on *AT&T* goes far beyond Special Master Legge's recommendation in the Report,

14  which never contemplated that *AT&T* would have any bearing on prudential standing.

15  Report at 7-8.

16         The only case that the DAPs cite regarding prudential standing is inapposite.  In

17  *Ocean Advocates v. U.S. Army Corps of Eng'rs*, 402 F.3d 846 (9th Cir. 2005), the Ninth

18  Circuit held that a suit brought by an environmental group falls within the "zone of interests"

19  of the National Environmental Policy Act, which was enacted to "fulfill the responsibilities

20  of each generation as trustee of the environment for succeeding generations."  Here,

21  however, the DAPs fail to show how the legislature of one state would intend for its antitrust

22  statute to apply to purchases made in other states, or how the DAPs' allegations of their own

23  activities in certain states have any bearing on the applicability of those states' antitrust

24  statutes to their claims.  *See* DAPs' Mot. at 7.

25         Because the DAPs have merely attempted to recast prudential standing as a "rehash

26  . . . of due process" (DAPs' Mot. at 6), which it is not, they have failed to meet their burden

27  of satisfying the requirements of prudential standing.  *Lujan v. Nat'l Wildlife Fed'n*,

28

DEFENDANTS' JOINT REPLY IN SUPPORT OF OBJECTIONS TO THE REPORT AND
RECOMMENDATIONS REGARDING DEFENDANTS' MOTIONS TO DISMISS DIRECT ACTION
COMPLAINTS
Case No. 07-5944 SC
MDL No. 1917

497 U.S. 871, 883 (1990); *see also Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) (plaintiff must "demonstrate standing for each claim he seeks to press").

Furthermore, the DAPs ignore the Defendants' prudential standing arguments that the DAPs' claims do not satisfy the requirements of prudential standing when the DAPs did not allege the purchase of a CRT product, or asserted only insufficient or conclusory allegations that they purchased or received a CRT product, in the state(s) in which the DAPs filed those claims. *See* Defendants' Objections at 12-16. Again, such arguments should be considered to be conceded by the DAPs.

## III.   STATUTES OF LIMITATION BAR THE DAPS' STATE-LAW CLAIMS

### A.   Fraudulent Concealment Tolling Cannot Save the DAPs' State-Law Claims

The DAPs do not even attempt to defend the Report's conclusion that fraudulent concealment would, if factually established, toll the statutes of limitation on their state-law claims until the date that the DAPs could actually file a complaint. *See* Report at 6-7. Rather, the DAPs' state-law claims accrued — and the applicable limitations periods commenced — as soon as they were on inquiry notice of their potential antitrust claims. *GO Computer, Inc. v. Microsoft Corp.*, 508 F.3d 170, 179 (4th Cir. 2007). The DAPs acknowledge, as they must, that fraudulent concealment tolling does not apply — and the statute of limitations would bar their claims — if (1) publicly-available facts outside the limitations period would have "excited the suspicions" of a reasonable person and (2) reasonably diligent inquiry would have "advised" the DAPs of their claim within the limitations period. DAPs' Mot. at 11; *see also Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1060 (9th Cir. 2012) ("It is enough that the plaintiff 'should have been alerted to facts that, following duly diligent inquiry, could have advised it of its claim.'"). Both of those elements are satisfied here as a matter of law.

The DAPs do not — and could not — contest that "reasonably diligent inquiry" would have yielded sufficient facts to allow them to file claims well within the three- or four-

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

1    year statutes of limitation applicable to most of their state-law claims.[1]  There are no factual

2    issues that need to be decided — or need to await discovery — to conclude that this element

3    of the "inquiry notice" standard is met.  More than three dozen complaints were filed within

4    a year of public announcements regarding the various investigations of the Defendants'

5    alleged conduct, including six within three weeks of the European Commission's

6    November 8, 2007 public announcement that it had carried out "dawn raids" of CRT

7    manufacturers.  In fact, the DAPs allege in their Complaints that they had constructive notice

8    of their potential claims, and "could [] have discovered through the exercise of reasonable

9    diligence, the existence of the conspiracy alleged herein that affected [them] . . . [in]

10   November, 2007, when the investigation by the DOJ became public and class action

11   complaints in the United States were filed."  P.C. Richard Compl. ¶ 220.

12          Nor do they contest that the European Commission conducted "surprise inspections"

13   on November 8, 2007, and that they had at least constructive knowledge of those raids as of

14   that date.  *See* DAPs' Mot. at 14.  In fact, the DAPs rely on the investigations by the

15   European Commission and other antitrust enforcement authorities as support for the claims

16   alleged in their Complaints.  *See, e.g.,* P.C. Richard Compl. ¶ 174.  Yet it is undisputed that

17   with only two exceptions, the DAPs inexplicably waited until November 14, 2011 — ***more***

18   ***than four years after November 8, 2007*** — to file their respective lawsuits.  *See* Defendants'

19   Objections at 17 and n.13.

20

21

22   [1]  The DAPs' state-law claims subject to a four-year statute of limitations period are:
23   Arizona, California, Florida, Illinois, Iowa, Massachusetts, Michigan, Minnesota, Nebraska,
     Nevada, New Mexico, New York, North Carolina, and Washington.  Ariz. Rev. Stat. §§ 44-
24   1410(b); Cal. Bus. & Prof. Code § 16750.1; Cal. Bus. & Prof. Code § 17208; Fla. Stat. Ann.
     § 95.11(3)(f); 740 Ill. Comp. Stat. § 10/7(2); Iowa Code Ann. § 553.16; Mass. Gen. Laws
25   Ann. ch. 260 § 5A; Mich. Comp. Laws Ann. § 445.781; Minn. Stat. Ann. § 325D.64; Neb.
26   Rev. Stat. § 25-206; Nev. Rev. Stat. § 598A.220; N.M. Stat. Ann. § 57-1-12; N.Y. Gen.
     Bus. Law § 340(5); N.C. Gen. Stat. § 75-16.2; Wash. Rev. Code § 19.86.120.  The DAPs'
27   state-law claims subject to a three-year statute of limitations period are:  Kansas and
28   Mississippi.  Kan. Stat. Ann. § 60-512(2); Miss. Code Ann. § 15-1-49.

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

1    The only question for the Court to decide is whether the publicity surrounding the

2    widespread and coordinated "dawn raids" of CRT manufacturers on November 8, 2007,

3    imposed on the DAPs a duty to investigate possible claims.  The DAPs argue that they did

4    not have a "duty to inquire" until some point after November 8, 2007 (DAPs' Mot. at 11); the

5    Defendants argue that the duty arose when the European Commission announced its dawn

6    raids (Defendants' Objections at 19-21).

7    The duty to inquire is particularly broad in antitrust cases.  *In re Processed Egg*

8    *Prods. Antitrust Litig.*, No. 08-md-02002, 2011 WL 5980001, at *14 n.23 (E.D. Pa. Nov. 30,

9    2011) (cited by DAPs) ("Antitrust statutes [like RICO statutes] appear to impose a similar

10   obligation upon plaintiffs to investigate their claims.").  Antitrust plaintiffs are provided the

11   "carrot of treble damages" in order to compensate them for "bring[ing] to bear the pressure

12   of 'private attorneys general' on a serious national problem for which public prosecutorial

13   resources are deemed inadequate." *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*,

14   483 U.S. 143, 151 (1987).  In that context, "private civil actions seek not only to compensate

15   victims but also to encourage those victims diligently to investigate and thereby to uncover

16   unlawful activity." *Klehr v. A.O. Smith Corp.*, 521  U.S. 179, 195 (1997) (imposing a "due

17   diligence" requirement for RICO plaintiffs to avail themselves of the fraudulent concealment

18   doctrine, analogizing RICO claims to antitrust claims).  Rather than condoning a wait-and-

19   see approach, the inclusion of treble damages provisions in antitrust statutory schemes is

20   justified by the expectation that it would deter antitrust activity, "an object pursued the

21   sooner the better." *Rotella v. Wood*, 528 U.S. 549, 558 (2000).  Rather than fulfilling their

22   obligation to act as "private attorneys general," the DAPs waited more than four years to

23   bring their claims against the Defendants. *See Rotella*, 528 U.S. at 558.

24   The DAPs claim that the European Commission's November 8, 2007 press release

25   about the surprise inspections was not sufficient to "excite their suspicions" because the press

26   release did not:

27       1.      (purportedly) "identify which category of illegal conduct it was investigating"

28   (DAPs' Mot. at 14);

DEFENDANTS' JOINT REPLY IN SUPPORT OF OBJECTIONS TO THE REPORT AND
RECOMMENDATIONS REGARDING DEFENDANTS' MOTIONS TO DISMISS DIRECT ACTION
COMPLAINTS
Case No. 07-5944 SC
MDL No. 1917
9

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

2.      establish that there was a violation, only an investigation (*id.*);

3.      identify the companies investigated  (*id.* at 15);

4.      indicate whether the investigation related to products purchased by DAPs (*id.*); or

5.      indicate whether U.S. commerce was affected (*id.*).

None of these purported limitations of the press release should negate suspicion or abrogate the DAPs' duty to investigate.  In the first place, the DAPs are wrong that the press release did not identify the type of violation being investigated.  The press release clearly indicated that the investigation was part of a "cartel inquiry" and a "preliminary step in investigations into suspected cartels."  Request for Judicial Notice ("RJN", Docket No. 1318) (filed concurrently with Defendants' Motion to Dismiss), Exh. 1.  Although Article 81, the statute on which the European Commission relied, can apply to tying and price discrimination (DAPs' Mot. at 14), those are not "cartels."  Cartels are agreements between horizontal competitors to fix prices, allocate customers, or limit product — *i.e.*, precisely what the DAPs have alleged here.

Moreover, it is irrelevant that the press release did not definitively establish that there was, in fact, a violation of antitrust law.  The relevant question is whether there existed reasonable grounds for suspicion that a violation may have occurred.  "Full knowledge often awaits discovery, and the very notion of 'inquiry notice' implies something less than that." *Hexcel*, 681 F 3d at 178.  All that is required to impose a duty to investigate is that the facts would have excited the suspicions of a reasonable person.  Here, the press release specifically indicates that "the Commission has reason to believe that the companies concerned may have violated European Commission Treaty rules on cartels and restrictive business practices." RJN, Exh. 1.

Nor can the DAPs hide behind the claim that they did not know whom to inquire about since the press release did not identify the companies being investigated.  The DAPs allege in their complaints that "[d]uring the Relevant Period, the CRT industry was dominated by a relatively few companies." P.C. Richard Compl. ¶ 95.  Other plaintiffs

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1    identified CRT manufacturers in their Complaints filed within a few days of the European
2    Commission's press release; the DAPs cannot credibly claim that their suspicions were
3    stymied by an inability to identify the "relatively few companies" that manufactured CRTs.

4         Similarly unpersuasive are the DAPs' claims that they did not know if the products at
5    issue in the European Commission's investigation were purchased by them.  The press
6    release clearly stated that the investigation related to "cathode ray tubes . . . used in television
7    sets and computer monitors."  RJN, Exh. 1.  The DAPs, some of the largest purchasers of
8    CRT Products in the world, allege that "CRT Products are commodity-like products which
9    are manufactured in standardized sizes."  P.C. Richard Compl. ¶ 109.

10         Finally, the DAPs' claim that the European Commission's investigation did not excite
11   their suspicions because the EC Treaty "prohibits anticompetitive and collusive conduct that
12   occurs outside of the United States" (DAPs' Mot. at 14) cannot be squared with their
13   allegations that there was a "global CRT market."  (P.C. Richard Compl. ¶ 95).  If the DAPs
14   believed — as they have alleged — that there was a global market for CRTs, that market
15   would necessarily encompass both Europe and the United States.

16         These market facts, and the focus of the European Commission's investigation,
17   distinguish the instant case from *Conmar Corp. v. Mitsui & Co.*, 858 F.2d 499 (9th
18   Cir. 1988), the case on which the DAPs principally rely.  *Conmar* involved claims that an
19   importer provided a particular U.S. customer with discriminatorily low prices for PC-strand
20   as part of a conspiracy to facilitate that customer's monopolization of the market for concrete
21   contracting services.  The importer and the customer had both been investigated for
22   "falsifying customs documents" in violation of U.S. customs laws. *Conmar*, 858 F.2d at 501.
23   Unlike in the present case, those investigations were not antitrust investigations, and the
24   falsification of customs documents does not clearly imply an antitrust conspiracy to
25   monopolize. *Id.* at 503.  While one antitrust complaint had been filed prior to the *Conmar*
26   complaint, that complaint related to completely different products sold to completely
27   different customers, and no news coverage of that complaint had been alleged or produced.
28   *Id.*  The *Conmar* court concluded that there were not sufficient facts in the record to

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1  determine whether plaintiff had sufficient knowledge of underlying market facts outside the
2  limitations period to excite a reasonable suspicion that the customer was gaining a monopoly
3  position in the market.  *Id.* at 504-05.  As a consequence, the court concluded that there were
4  factual issues that needed to be resolved.  *Id.*

5  Here, by contrast, the European Commission's press release made clear that its
6  investigation related to the same conduct the DAPs allege (a purported cartel), involving the
7  same products (CRTs) in a market that the DAPs characterize as having global scope and
8  being "dominated by a relatively small number of suppliers."  The DAPs have offered
9  nothing more than pretexts to justify their failure to satisfy their duty to investigate potential
10  antitrust violations in the face of notice about the European Commission's investigation.
11  Given the market facts that the DAPs allege, the European Commission's dawn raids should
12  have at least have "excited their suspicions" about potential violations.  That does not mean
13  that the "DAPs were required to . . . run to the courthouse as soon as the European
14  Commission announcement was made. . . ."  DAPs' Mot. at 11-12.  *"[I]t bears emphasis that*
15  *the date of inquiry notice is not a filing deadline.  It is only the date on which a cause of*
16  *action accrues and the four year period allotted . . . for a plaintiff to investigate begins."  GO*
17  *Computer*, 508 F.3d at 179 (emphasis added).

18  Rather, the European Commission's dawn raids simply imposed on the DAPs a duty
19  to inquire.  Had they undertaken a diligent investigation, as the law requires, they should
20  have been in a position to file their complaints long before the statute of limitations had run,
21  a point that even they appear to concede.  Instead, they sat on their hands, waiting more than
22  four years to file complaints.  That conduct should not be condoned.  The DAPs' state-law
23  claims should be dismissed.

24  **B.    "Cross-Jurisdictional" Class Tolling Is Inapplicable**

25  The Report also errs in failing to determine whether the cross-jurisdictional tolling
26  doctrine applies to the DAPs' untimely state-law claims.  Report at 7.  Many states have
27  explicitly rejected the "cross-jurisdictional" class tolling doctrine as a matter of law (*see*
28  Defendants' Objections at 22-23), and the Ninth Circuit has instructed courts not to "import

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

1    [the cross-jurisdictional tolling] doctrine into state law where it did not previously exist."

2    *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1025 (9th Cir. 2008).  The DAPs identify

3    no state that has explicitly recognized cross-jurisdictional class tolling.  The state law cases

4    they rely on to support their position either involve equitable estoppel or intra-jurisdictional

5    class tolling, and the out-of-circuit federal district court decision they rely upon conflicts with

6    the Ninth Circuit's decision in *Clemens*, and its holding and formulation have been rejected

7    by a number of courts since the opinion was issued.   The applicability of the cross-

8    jurisdictional class tolling doctrine presents a question of law, and the law on the point is

9    clear.  The DAPs cannot rely on that doctrine to save their untimely state-law claims.

10   Although the DAPs assert claims under the laws of 17 different states, they only

11   argue that cross-jurisdictional tolling applies to their claims under eight of them.[2]  DAPs'

12   Mot. at 17.  They make no attempt to argue that the doctrine can save their untimely claims

13   under Arizona, Illinois, Iowa, Mississippi, Nebraska, Nevada, New Mexico, North Carolina,

14   or Wisconsin law.  Consequently, the Court can and should conclude as a matter of law that

15   cross-jurisdictional class tolling is inapplicable to the DAPs' claims asserted under the laws

16   of those states.  *See Silva v. U.S. Bancorp*, 5:10-cv-01854-JHN-PJWx, 2011 WL 7096576,

17   at *3 (C.D. Cal. Oct. 6, 2011) ("the Court finds that Plaintiff concedes his recordkeeping

18   claim should be dismissed by failing to address Defendants' arguments in his Opposition.");

19   *Tatum v. Schwartz*, No. S-06-01440 DFL EFB, 2007 WL 419463, at *3 (E.D. Cal. Feb. 5,

20   2007) (dismissing complaint on basis that plaintiff "tacitly concede[d] this claim by failing to

21   address defendants' argument in her opposition.").

22   The DAPs' remaining state-law claims are equally unsalvageable.  The DAPs do not

23   (and cannot) provide any authority that California, Florida, Kansas, Massachusetts,

24   Michigan, Minnesota, or Washington have expressly adopted cross-jurisdictional tolling.

25

26   _____

27   [2] These are:  California, Florida, Kansas, Massachusetts, Michigan, Minnesota, New York,
     and Washington law.   As previously noted, the New York cross-jurisdictional tolling

28   argument is moot.  *See* Defendants' Objections at 17 n.13.

DEFENDANTS' JOINT REPLY IN SUPPORT OF OBJECTIONS TO THE REPORT AND
RECOMMENDATIONS REGARDING DEFENDANTS' MOTIONS TO DISMISS DIRECT ACTION
COMPLAINTS
Case No. 07-5944 SC
MDL No. 1917

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

The cases they rely on all either involve equitable tolling (a different doctrine entirely),[3] intra-jurisdictional class tolling (the same),[4] a federal court assuming that a particular state would apply cross-jurisdictional class tolling without any specific support in the state's own law,[5] or are inapposite.[6]   Such assumptions cannot be squared with the Ninth Circuit's

---

[3] Despite arguing that cross-jurisdictional tolling is applicable to a California claim, the DAPs rely on *Hatfield v. Halifax PLC*, which expressly acknowledged that *Clemens*, "applying California law, refused to allow *American Pipe* tolling in a case where a plaintiff sought to use a class action filed in one jurisdiction to toll an action later filed in another (a 'cross-jurisdictional action')," and "would foreclose application of *American Pipe* here." 564 F.3d 1177, 1187 (9th Cir. 2009).   But in an attempted sleight of hand, the DAPs' footnote citation to *Hatfield* involves *equitable tolling*, not *cross-jurisdictional tolling*. Similarly, *Douchette v. Bethel Sch. Dist.*, 117 Wash. 2d 805, 812 (1991), is another *equitable tolling* case, and is silent regarding the application of *cross-jurisdictional tolling* in Washington.  Not only has the equitable tolling argument been rejected in *In re TFT-LCD Antitrust Litig.*, No. M 07-1827, 2012 WL 149632, at \*3 (N.D. Cal. Jan. 18, 2012), but the Ninth Circuit rejected applying equitable tolling when a federal and state antitrust claim are at issue.  *Eichman v. Fotomat Corp.*, 880 F.2d 149, 155-56 (9th Cir. 1989) (when a plaintiff chooses to file either a federal or state antitrust remedy first, a plaintiff "may not invoke the doctrine of equitable tolling.").

[4] The DAPs' footnote citation to *Arivella v. Lucent Techs., Inc.*, 623 F. Supp. 2d 164, 171, 180 (D. Mass. 2009), is unavailing because it involved *intra-jurisdictional tolling* rather than *cross-jurisdictional tolling* since both the earlier-filed class action and the subsequent lawsuit (an "offshoot" of the earlier action) were filed in the same federal district court.

[5] The DAPs rely on *Jenson v. Allison-Williams Co.*, No. 98-CV-2229 TW (JFS), 1999 WL 35133748 (S.D. Cal. Aug. 23, 1999), which merely assumed Minnesota would apply cross-jurisdictional tolling.  But as noted above, *Clemens* dictates that a court should not read tolling provisions into state law where they do not exist.

[6] The remaining cases cited by the DAPs do not purport to hold that cross-jurisdictional tolling is applicable to the state-law claims at issue here.  *Lee v. Grand Rapids Bd. of Educ.*, 148 Mich. App. 364, 370 (1986), is inapposite because the earlier-filed federal action included plaintiffs' Michigan claims.  Similarly, in *Barnebey v. E.F. Hutton & Co.*, 715 F. Supp. 1512, 1528 (M.D. Fla. 1989), the earlier-filed action (which asserted both class and individual claims) asserted individual claims under Florida and Indiana law that were identical to claims brought in the later action.  *Seaboard Corp. v. Marsh Inc.*, 295 Kan. 384, 400 (2012), is also inapplicable because the court expressly stated that its decision did not address the issue of class action tolling articulated in *American Pipe* and instead resolved on the basis of interpreting Kansas' saving statute.

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

1    holding in *Clemens* that "[t]he rule of *American Pipe* . . . does not mandate cross-
2    jurisdictional tolling as a matter of state procedure" and would not "import [cross-
3    jurisdictional] doctrine into state law where it did not previously exist."   534 F.3d at 1025.
4    In fact, courts have, as a general matter, routinely *rejected* the cross-jurisdictional class
5    tolling doctrine in the states the DAPs claim permit cross-jurisdictional tolling.[7]

6          The DAPs rely primarily on *In re Linerboard Antitrust Litig.*, 223  F.R.D. 335 (E.D.
7    Pa. 2004), which they falsely describe as the "leading decision" to address cross-
8    jurisdictional tolling.  DAPs' Mot. at 16.  Contrary to the DAPs' implication, there is nothing
9    to suggest that *Linerboard* — a Pennsylvania district court decision — is a "leading" cross-
10   jurisdictional opinion that is controlling, or even persuasive, here.   Other courts have
11   explicitly rejected *Linerboard*'s analysis, and its proposed factors for determining when the
12   cross-jurisdictional tolling doctrine has been applied.  *See, e.g., In re Urethane Antitrust*
13   *Litig.*, 663  F. Supp. 2d. 1067, 1081-82  (D. Kan. 2009) (rejecting *Linerboard* factors and
14   holding that "state law alone must govern the application of a tolling principle to a state's

15

16   ---

17   [7] **California:**  *Clemens*, 534  F.3d at 1025 (rejecting application of cross-jurisdictional class
     tolling to California law claims); *Hatfield*, 564 F.3d at 1187 (same) (principal case relied
18   upon by DAPs).

19   **Florida:**   *In re Vitamins Antitrust Litig.*, 183 Fed. Appx. 1  (D.C. Cir. May 15, 2006)
     (predicting Florida would not permit cross-jurisdictional tolling); *In re Rezulin Products*
20   *Liability Litig.*, No. 00Civ.2843LAK, 2006 WL 695253 (S.D.N.Y. Mar. 15, 2006) (Florida
     does not recognize cross-jurisdictional tolling) (citing *Senger Bros. Nursery, Inc. v. E.I.*
21   *DuPont de Nemours & Co.*, 184  F.R.D. 674, 680 (M.D. Fla. 1999)).
22
     **Kansas:**   *Todd v. F. Hoffman-La Roche, Ltd.*, No. 98-4574, 2004 WL 5238952, at *4 (D.
23   Kan. Aug. 20, 2004) (since no Kansas case was on point, the court found "that because most
     of the states that have considered the issue have rejected cross-jurisdictional tolling and for
24   very good reason, this court should follow their lead"); *abrogated on other grounds by*
25   *Seaboard Corp. v. Marsh Inc.*, 295 Kan. 384, 284 P.3d 314 (Kan. 2012).

26   **Massachusetts:**  *Patterson v. Novartis Pharm. Corp.*, No. 11-402, 909 F. Supp. 2d 116, 130
27   (D.R.I. 2012) (declining to apply cross-jurisdictional tolling to a Massachusetts claim where
     Plaintiffs failed to show that Massachusetts had adopted cross-jurisdictional tolling, stating
28   "[i]t is not this Court's role sitting in diversity to create new state law in Massachusetts").

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

statute of limitations.").[8]  The DAPs' misguided reliance on *Linerboard* ignores a growing list of federal courts that refuse to apply cross-jurisdictional tolling,[9] guidance from this Court,[10] and, most importantly, controlling Ninth Circuit precedent in *Clemens* that would reject the use of cross-jurisdictional tolling for the DAPs' remaining state-law claims.  The DAPs' state-law claims should be dismissed as untimely.

## IV.   THE REPORT ERRED IN HOLDING THAT THE DAPS' FEDERAL ANTITRUST LAW CLAIMS FALL UNDER THE "OWNED OR CONTROLLED" EXCEPTION TO *ILLINOIS BRICK*

Contrary to the DAPs' assertion (at 19) that "[t]here is no basis for the Defendants' objection on this point," the Defendants respectfully believe that the Court's ruling on the "owned or controlled" exception to *Illinois Brick* misapplied the Ninth Circuit's holding in *In re ATM Fee Antitrust Litig.*, 686 F.3d 741 (9th Cir. 2012).  To continue to preserve this issue for appeal, the Defendants maintain their objection to the Report's recommendation that the Court deny the Defendants' motion to dismiss "to the extent the motion challenges the

---

[8] Even if the *Linerboard* factors were to be applied here, DAPs' argument that Defendants were put on notice of their state-law claims when the first federal law-based DPP complaint was filed is inapposite.  DAPs' Motion at 16-17.  As Judge Easterbrook has written, "state and federal antitrust laws differ.  They create different legal claims.  That the period of limitations may be tolled for one claim (state antitrust law) does not imply that it is tolled for another (federal antitrust law)."  *Sawyer v. Atlas Heating and Sheet Metal Works, Inc.*, 642 F.3d 560, 562 (7th Cir. 2011).

[9] *In re Copper Antitrust Litig.*, 436 F.3d 782, 793-97 (7th Cir. 2006) (holding that *American Pipe* tolling did not apply to save plaintiffs' federal antitrust claims based on a previously filed state class action); *Soward v. Deutsche Bank AG*, 814 F. Supp. 2d 272, 281-82 (S.D.N.Y. 2011) (refusing "to import the doctrine into New York's law" after noting that "[o]f the federal courts that have considered this issue, most have refused to extend the doctrine into a state that has yet to consider it"); *In re Vioxx Products Liability Litig.*, 522 F. Supp. 2d 799, 806-15 (E.D. La. 2007) (despite observing that Pennsylvania, Illinois, and Puerto Rico all recognized class action tolling, refusing to expand this doctrine without each state "explicitly adopt[ing] cross-jurisdictional tolling").

[10] *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 516 F. Supp. 2d 1072, 1102-03 (N.D. Cal. 2007) (finding cross-jurisdictional tolling unavailable in antitrust actions brought under various state laws).

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

[DAPs'] right to proceed under the so-called 'owned or controlled' exception to *Illinois Brick*." Report at 5.  As the Defendants previously argued in their Objections, the DAPs never allege that they purchased a CRT from anybody and cannot establish federal antitrust standing.  Defendants' Objections at 24.

## CONCLUSION

For these reasons and the reasons set forth in the Defendants' Objections, the Court should reject the Report's recommendations as to these issues and grant the Defendants' motion to dismiss certain of the DAPs' state-law claims for lack of due process, lack of prudential standing, and on statute-of-limitations grounds, and grant the Defendants' motion to dismiss the DAPs' federal-law antitrust claims for lack of federal antitrust standing.


Respectfully submitted,

Dated:  July 26, 2013             **WHITE & CASE** LLP

By: */s/ Lucius B. Lau*
Christopher M. Curran (*pro hac vice*)
ccurran@whitecase.com
Lucius B. Lau (*pro hac vice*)
alau@whitecase.com
Dana E. Foster (*pro hac vice*)
defoster@whitecase.com
**WHITE & CASE LLP**
701 Thirteenth Street, N.W.
Washington, DC  20005
tel.: (202) 626-3600
fax: (202) 639-9355

*Attorneys for Defendants Toshiba Corporation, Toshiba America, Inc., Toshiba America Information Systems, Inc., Toshiba America Consumer Products, L.L.C., and Toshiba America Electronic Components, Inc.*

WINSTON & STRAWN LLP

By: */s/ Jeffrey L. Kessler*
JEFFREY L. KESSLER (*pro hac vice*)
jkessler@winston.com
ALDO A. BADINI (257086)
abadini@winston.com
A. PAUL VICTOR (*pro hac vice*)
pvictor@winston.com
EVA COLE (*pro hac vice*)
EWCole@winston.com
MOLLY M. DONOVAN (*pro hac vice*)
MMdonovan@winston.com
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, NY 10166-4193
Telephone: (212) 294-4692
Facsimile: (212) 294-4700

WEIL, GOTSHAL & MANGES LLP

STEVEN A. REISS (*pro hac vice*)
steven.reiss@weil.com
DAVID L. YOHAI (*pro hac vice*)
david.yohai@weil.com
ADAM C. HEMLOCK (*pro hac vice*)
adam.hemlock@weil.com
DAVID E. YOLKUT (*pro hac vice*)
david.yolkut@weil.com
**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, New York 10153-0119
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1  GREGORY D. HULL (57367)
2  greg.hull@weil.com
   **WEIL, GOTSHAL & MANGES LLP**
3  201 Redwood Shores Parkway
   Redwood Shores, California 94065-1175
4  Telephone: (650) 802-3000
5  Facsimile: (650) 802-3100

6  *Attorneys for Defendants Panasonic*
7  *Corporation of North America, MT Picture*
   *Display Co., Ltd. and Panasonic Corporation*
8  *(f/k/a Matsushita Electric Industrial Co.)*

9  MORGAN, LEWIS & BOCKIUS LLP
10

11 By: */s/ Kent M. Roger*
12 KENT M. ROGER (SBN 95987)
   kroger@morganlewis.com
13 MICHELLE PARK CHIU (SBN 248421)
   mchiu@morganlewis.com
14 **MORGAN, LEWIS & BOCKIUS LLP**
15 One Market, Spear Street Tower
   San Francisco, California 94105-1126
16 Telephone: (415) 442-1000
17 Facsimile: (415) 442-1001

18 J. CLAYTON EVERETT, JR. (*pro hac vice*)
19 jeverett@morganlewis.com
   SCOTT A. STEMPEL (*pro hac vice*)
20 sstempel@morganlewis.com
21 **MORGAN, LEWIS & BOCKIUS LLP**
   111 Pennsylvania Avenue, NW
22 Washington, DC 20004
23 Telephone: (202) 739-3000
   Facsimile: (202) 739-3001
24
25 *Attorneys for Defendants Hitachi, Ltd., Hitachi*
   *Displays, Ltd., Hitachi Asia, Ltd., Hitachi*
26 *America, Ltd., and Hitachi Electronic Devices*
27 *(USA), Inc.*

28

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

DEFENDANTS' JOINT REPLY IN SUPPORT OF OBJECTIONS TO THE REPORT AND
RECOMMENDATIONS REGARDING DEFENDANTS' MOTIONS TO DISMISS DIRECT ACTION
COMPLAINTS
Case No. 07-5944 SC
MDL No. 1917
19

701 Thirteenth Street, NW
Washington, DC  20005
White & Case LLP

1    MUNGER, TOLLES & OLSON LLP

2    By: /s/ Hojoon Hwang

3    HOJOON HWANG
     Hojoon.Hwang@mto.com
4    **MUNGER, TOLLES & OLSON LLP**
5    560 Mission Street, Twenty-Seventh Floor
     San Francisco, CA 94105
6    Telephone: (415) 512-4000

7

8    WILLIAM D. TEMKO
     William.Temko@mto.com
9    JONATHAN E. ALTMAN
     Jonathan.Altman@mto.com
10   **MUNGER, TOLLES & OLSON LLP**
11   355 South Grand Avenue, Thirty-Fifth Floor
     Los Angeles, California  90071
12   Telephone: (213) 683-9100

13

14   *Attorneys for Defendants LG Electronics, Inc.;*
     *LG, LG Electronics USA, Inc.,; and LG*
15   *Electronics Taiwan Taipei Co., Ltd.*

16   SHEPPARD MULLIN RICHTER &
17   HAMPTON

18   By: /s/ Gary L. Halling
19   GARY L. HALLING (SBN 66087)
     ghalling@sheppardmullin.com
20   JAMES L. MCGINNIS (SBN 95788)
     jmcginnis@sheppardmullin.com
21
     MICHAEL W. SCARBOROUGH (SBN 203524)
22   mscarborough@sheppardmullin.com
23   **SHEPPARD MULLIN RICHTER &**
     **HAMPTON**
24   Four Embarcadero Center, 17th Floor
25   San Francisco, California  94111
     Telephone:  (415) 434-9100
26   Facsimile:  (415) 434-3947

27

28   *Attorneys for Defendants Samsung SDI America,*
     *Inc. Samsung SDI Co., Ltd.; Samsung SDI*

DEFENDANTS' JOINT REPLY IN SUPPORT OF OBJECTIONS TO THE REPORT AND
RECOMMENDATIONS REGARDING DEFENDANTS' MOTIONS TO DISMISS DIRECT ACTION
COMPLAINTS
Case No. 07-5944 SC
MDL No. 1917
20

1     *(Malaysia) SDN. BHD.; Samsung SDI Mexico*
2     *S.A. DE C.V.; Samsung SDI Brasil Ltda.;*
      *Shenzen Samsung SDI Co., Ltd. And Tianjin*
3     *Samsung SDI Co., Ltd.*

4     BAKER BOTTS LLP

5
6     By: */s/ Jon V. Swenson*_____
      JON V. SWENSON (SBN 233054)
7     jon.swenson@bakerbotts.com
8     **BAKER BOTTS LLP**
      1001 Page Mill Road
9     Building One, Suite 200
      Palo Alto, CA 94304
10    Telephone: (650) 739-7500
11    Facsimile: (650) 739-7699

12
      John M. Taladay (*pro hac vice*)
13    john.taladay@bakerbotts.com
      Joseph Ostoyich (*pro hac vice*)
14    joseph.ostoyich@bakerbotts.com
15    **BAKER BOTTS LLP**
      1299 Pennsylvania Avenue N.W.
16    Washington, DC 20004-2400
      Telephone: (202) 639-7700
17    Facsimile: (202) 639-7890
18
19    *Attorneys for Defendants Koninklijke Philips*
      *Electronics N.V. and Philips Electronics North*
20    *America Corporation*
21
22
23
24
25
26
27
28

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

---

DEFENDANTS' JOINT REPLY IN SUPPORT OF OBJECTIONS TO THE REPORT AND
RECOMMENDATIONS REGARDING DEFENDANTS' MOTIONS TO DISMISS DIRECT ACTION
COMPLAINTS
Case No. 07-5944 SC
MDL No. 1917

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GIBSON, DUNN & CRUTCHER LLP

By: */s/ Rachel S. Brass*
Rachel S. Brass (SBN 219301)
rbrass@gibsondunn.com
Joel S. Sanders (SBN 107234)
jsanders@gibsondunn.com
Austin V. Schwing (SBN 211696)
**GIBSON, DUNN & CRUTCHER LLP**
555 Mission Street, Suite 3000
San Francisco, California 94105
Tel: (415) 393-8200
Fax: (415) 393-8306

*Attorneys for Defendant Chunghwa Picture Tubes, Ltd. and Chunghwa Picture Tubes (Malaysia) as to the Target Am. Compl., P.C. Richard Compl., Tweeter Compl., CompuCom Compl., Interbond Compl., Costco Compl., Office Depot Compl. and Best Buy Compl. only*

Pursuant to Local Rule 5-1(i)(3), the filer attests that concurrence in the filing of this document has been obtained from each of the above signatories.

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

## CERTIFICATE OF SERVICE

On July 26, 2013, I caused a copy of the "DEFENDANTS' JOINT REPLY IN SUPPORT OF OBJECTIONS TO THE REPORT AND RECOMMENDATIONS REGARDING DEFENDANTS' MOTIONS TO DISMISS DIRECT ACTION COMPLAINTS" to be electronically filed via the Court's Electronic Case Filing System, which constitutes service in this action pursuant to the Court's order of September 29, 2008.


By:  _/s/ Lucius B. Lau_____
　　　Lucius B. Lau (*pro hac vice*)