1  ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
   Roman M. Silberfeld, Bar No. 62783
2  RMSilberfeld@rkmc.com
   David Martinez, Bar No. 193183
3  DMartinez@rkmc.com
   Jill S. Casselman, Bar No. 266085
4  JSCasselman@rkmc.com
   2049 Century Park East, Suite 3400
5  Los Angeles, CA 90067-3208
   Telephone:  310-552-0130
6  Facsimile:  310-229-5800

7  ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
   Elliot S. Kaplan, Bar No. 53624
8  ESKaplan@rkmc.com
   K. Craig Wildfang (*Pro Hac Vice*)
9  KCWildfang@rkmc.com
   Laura E. Nelson, Bar No. 231856
10 LENelson@rkmc.com
   800 LaSalle Avenue
11 2800 LaSalle Plaza
   Minneapolis, MN 55402
12 Telephone:  612-349-8500
   Facsimile:  612-339-4181
13
   Attorneys for Plaintiffs
14 BEST BUY CO., INC.; BEST BUY PURCHASING
   LLC; BEST BUY ENTERPRISE SERVICES, INC.;
15 BEST BUY STORES, L.P.; BESTBUY.COM,
   L.L.C.; and MAGNOLIA HI-FI, INC.
16
   [Additional Counsel Listed on Signature Page]
17
18              UNITED STATES DISTRICT COURT

19             NORTHERN DISTRICT OF CALIFORNIA

20                SAN FRANCISCO DIVISION

21 In re: CATHODE RAY TUBE (CRT)          Master File No. 3:07-cv-05944-SC (N.D. Cal.)
   ANTITRUST LITIGATION                   MDL No. 1917
22
   This Document Relates to:
23
   *Electrograph Systems, Inc., et al. v.*   **DIRECT ACTION PLAINTIFFS' REPLY**
24 *Hitachi, Ltd., et al.*, No. 11-cv-01656   **BRIEF IN SUPPORT OF THEIR**
                                              **OBJECTIONS TO THE SPECIAL MASTER'S**
   *Stoebner, et al. v. LG Electronics, et al.*,   **REPORT AND RECOMMENDATIONS**
25 No. 11-cv-05381                           **REGARDING PHILIPS' AND LG'S MOTION**
                                              **TO DISMISS CERTAIN DIRECT ACTION**
26 *Siegel v. Hitachi, Ltd., et al.*, No. 11-cv-   **PLAINTIFFS' COMPLAINTS**
   05502
27                                            **Judge: Hon. Samuel P. Conti**
   *Best Buy Co., et al. v. Hitachi, Ltd., et al.*,   **Court: Courtroom 1, 17th Floor**
28 No. 11-cv-05513

60698985.1

DIRECT ACTION PLAINTIFFS' REPLY BRIEF ISO
THEIR OBJECTIONS TO THE SPECIAL MASTER'S
REPORT, ETC. (3:07-CV-05944SC, MDL 1917)

| | | |
|---|---|---|
| 1 | *Target Corp., et al. v. Chunghwa Picture Tubes, Ltd.*, No. 11-cv-05514 | **Date:   August 23, 2013**<br>**Time:  10:00 a.m.** |
| 2 | *Interbond Corporation of America v. Hitachi, et al.*, No. 11-cv-06275 | Case No. 11-cv-01656 SC<br>Case No. 11-cv-05381 SC |
| 3 | | Case No. 11-cv-05502 SC |
| 4 | *Office Depot, Inc. v. Hitachi Ltd., et al.*, No. 11-cv-06276 | Case No. 11-cv-05513 SC<br>Case No. 11-cv-05514 SC |
| 5 | *CompuCom Systems, Inc. v. Hitachi, Ltd., et al.*, No. 11-cv-06396 | Case No. 11-cv-06275 SC<br>Case No. 11-cv-06276 SC |
| 6 | *Costco Wholesale Corp. v. Hitachi, Ltd., et al.*, No. 11-cv-06397 | Case No. 11-cv-06396 SC<br>Case No. 11-cv-06397 SC |
| 7 | *P.C. Richard and Son Long Island Corp., et al. v. Hitachi, Ltd., et al.*, No. 12-cv-02648 | Case No. 12-cv-02648 SC<br>Case No. 12-cv-02649 SC |
| 8 | | |
| 9 | *Schultze Agency Services, LLC, et al. v. Hitachi, Ltd., et al.*, No. 12-cv-02649 | |
| 10 | | |
| 11 | | |
| 12 | | |
| 13 | | |
| 14 | | |
| 15 | | |
| 16 | | |
| 17 | | |
| 18 | | |
| 19 | | |
| 20 | | |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |

-2-

DIRECT ACTION PLAINTIFFS' REPLY BRIEF ISO
THEIR OBJECTIONS TO THE SPECIAL MASTER'S
REPORT, ETC. (3:07-CV-05944SC, MDL 1917)

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................... 1

ARGUMENT ..................................................................................................................... 2

I.  PLAINTIFFS' ALLEGATIONS DO NOT AFFIRMATIVELY ESTABLISH
    THAT PHILIPS AND LG WITHDREW FROM THE CONSPIRACY IN 2001 ............. 3

    A.  As a matter of law, the formation of LPD does not establish withdrawal
        from the conspiracy ................................................................................................ 4

    B.  Philips and LG may not shift the burden regarding withdrawal to Plaintiffs ......... 7

    C.  Continued Participation by LG and Philips Is Plausible ........................................ 8

II. PLAINTIFFS HAVE SUFFICIENTLY ALLEGED FRAUDULENT
    CONCEALMENT, THUS TOLLING THEIR CLAIMS REGARDLESS OF
    WITHDRAWAL ............................................................................................................. 9

    A.  Plaintiffs' Fraudulent Concealment Allegations are Sufficient Under
        Twombly ................................................................................................................... 9

    B.  Fraudulent Concealment Tolls Plaintiffs' Claims Even If This Court
        Concludes Philips and LG Withdrew from the Conspiracy in 2001 ..................... 12

III. PLAINTIFFS' FEDERAL CLAIMS ARE TOLLED BY THE FILING OF THE
     DIRECT PURCHASER PLAINTIFFS CLASS ACTION ............................................. 13

IV. PLAINTIFFS' STATE LAW CLAIMS ARE TIMELY ............................................... 14

CONCLUSION ................................................................................................................. 19

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

1

## TABLE OF AUTHORITIES

2

**Page**

3

**Cases**

4

*Aho v. AmeriCredit Fin. Servs., Inc.*,
277 F.R.D. 609 (S.D. Cal. 2011).................................................................. 15

5

*American Pipe & Construction Co. v. Utah*,
414 U.S. 538 (1974) ........................................................................ passim

6

*Arivella v. Lucent Techs., Inc.*,
623 F. Supp. 2d 164 (D. Mass. 2009) ............................................................ 16

7

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................ 2

8

*Barker v. Riverside Cnty. Office of Educ.*,
584 F.3d 821 (9th Cir. 2009)................................................................ 2, 6

9

*Barnaby v. E.F. Hutton & Co.*,
715 F. Supp. 1512 (M.D. Fla. 1989) ............................................................ 16

10

*Bartlett v. Miller & Shroeder Muns., Inc.*,
355 N.W.2d 435 (Minn. Ct. App. 1984) ........................................................ 17

11

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ............................................................................ 2

12

*Bosse v. Crowell Collier & Macmillan*,
565 F.2d 602 (9th Cir. 1977)................................................................ 11

13

*Carlson v. Indep. Sch. Dist. No. 623*,
92 N.W.2d 216 (Minn. 1986)................................................................ 17

14

*Centaur Classic Convertible Arbitrage Fund Ltd. v. Countrywide Financial Corp.*,
878 F. Supp. 2d 1009 (C.D. Cal. 2011) ........................................................ 15

15

*Champion v. Homa*,
No. 3:03-cv-275, 2008 WL 900967, at *11 (M.D. Ala. Mar. 31, 2008).................. 18

16

*City of St. Petersburg v. Dayco Prods., Inc.*,
No. 06-20953-CIV, 2008 WL 5428172, at *2 (S.D. Fla. Dec. 30, 2008).................. 16

17

*City of St. Petersburg v. Total Containment, Inc.*,
No. 06-20953-CIV, 2008 WL 5428179, *2-5 (S.D. Fla. Oct. 10, 2008) .................. 16

18

*Clemens v. DaimlerChrysler Corp.*,
534 F.3d 1017 (9th Cir. 2008)................................................................ 15

19

*David K. Lindemuth Co. v. Shannon Fin. Corp.*,
637 F. Supp. 991 (N.D. Cal. 1986) ............................................................ 10

20

*Eichman v. Fotomat Corp.*,
880 F.2d 149 (9th Cir. 1989).................................................................. 15

21

*Hernandez v. Cnty. of Tulare*,
666 F.3d 631 (9th Cir. 2012).................................................................. 12

22

23

24

25

26

27

28

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Gottreich v. San Francisco Inv. Corp.*,
  552 F.2d 866 (9th Cir. 1977)................................................................... 10

*Hatfield v. Halifax PLC*,
  564 F.3d 1177 (9th Cir. 2009)................................................................. 15

*Illinois Brick Co. v. Illinois*,
  431 U.S. 720 (1977)................................................................................ 13

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
  738 F. Supp. 2d 1011 (N.D. Cal. 2010) ........................................... 1, 5, 6

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
  516 F. Supp. 2d 1072, 1102-03 (N.D. Cal. 2007) ............................ 14, 15

*In re Hanford Nuclear Reservation Litig.*,
  534 F.3d 986 (9th Cir. 2008)............................................................. 2, 13

*In re Nat'l Mortg. Equity Corp. Mortg. Pool Certificates Sec. Litig.*,
  636 F. Supp. 1138 (C.D. Cal. 1986) ....................................................... 11

*In re Potash Antitrust Litigation*,
  Case No. 3-93-197, 1994 WL 1108312 (D. Minn. Dec. 5, 1994) ............. 5

*In re Rubber Chems. Antitrust Litig.*,
  504 F. Supp. 2d 777 (N.D. Cal. 2007) ......................................... 9, 12, 13

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  820 F. Supp. 2d 1055 (N.D. Cal. 2011) ....................................... 4, 15, 16

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  No. M 07-1827 SI, 2012 WL 506327, at *2 (N.D. Cal. Feb. 15, 2012) ....... 9

*Jenson v. Allison-Williams Co.*, No. 98-CV-2229,
  1999 WL 35133748, at *6 (S.D. Cal. Aug. 23, 1999) ............................. 17

*Lee v. Grand Rapids Board of Education*,
  384 N.W.2d 165 (Mich. Ct. App. 1986) .......................................... 16, 17

*Lopez v. Smith*,
  203 F.3d 1122 (9th Cir. 2000).................................................................. 12

*Mair v. Consumers Power Co.*,
  348 N.W.2d 256 (Mich. 1984) ......................................................... 16, 17

*McQueen v. Woodstream Corp.*,
  248 F.R.D. 73 (D.D.C. 2008) ................................................................. 10

*Metz v. Unizan Bank*,
  416 F. Supp. 2d 568 (N.D. Ohio 2006) ................................................... 11

*Moore v. Kayport Package Express, Inc.*,
  885 F.2d 531 (9th Cir. 1989).................................................................... 11

*Moreco Energy, Inc. v. Penberthy-Houdaille, Inc.*,
  o. 86 C 20153, 1988 WL 124928 (N.D. Ill. Oct. 21, 1988) .................... 11

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

1

**TABLE OF AUTHORITIES**
**(continued)**

2

Page

3

*Morton's Market, Inc. v. Gustafson's Dairy, Inc.*,
   198 F.3d 823 (11th Cir. 1999)...................................................................................... 5, 6

4

*Morton's Mkt., Inc. v. Gustafson's Dairy, Inc.*,
   211 F.3d 1224 (11th Cir. 2000).................................................................................. 12, 13

5

6

*Nat'l Union Fire Ins. Co. of Pittsburg, PA v. Res. Dev. Servs., Inc.*,
   No. 5:10-cv-01324-JF/PVT, 2010 WL 4774929, at *8 (N.D. Cal. Nov. 16, 2010) ................. 11

7

*Neubronner v. Milken*,
   6 F.3d 666 (9th Cir. 1993)............................................................................................ 10

8

*O'Brien v. Nat'l Prop. Analysts Partners*,
   719 F. Supp. 222 (S.D.N.Y. 1989) ................................................................................ 11

9

*Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*,
   742 F.2d 786 (3d Cir. 1984)......................................................................................... 11

10

11

*Special Situations Fund III, L.P. v. Am. Dental Partners, Inc.*,
   775 F. Supp. 2d 227 (D. Mass. 2011) ............................................................................ 16

12

*Starr v. Baca*,
   652 F.3d 1202 (9th Cir. 2011)........................................................................................ 3

13

14

*Sunbird Air Servs., Inc. v. Beech Aircraft Corp.*,
   789 F. Supp. 364 (D. Kan. 1992) .................................................................................. 10

15

*United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*,
   501 F.3d 493 (6th Cir. 2007)........................................................................................ 10

16

17

*United States v. Basey*,
   613 F.2d 198 (9th Cir. 1979)...................................................................................... 4, 7

18

*United States v. Finestone*,
   816 F.2d 583 (11th Cir. 1987)....................................................................................... 4

19

*United States v. Lowell*,
   649 F.2d 950 (3d Cir. 1981)........................................................................................... 6

20

*United States v. Nippon Paper Industries Co.*,
   62 F. Supp. 2d 173 (D. Mass. 1999) ............................................................................... 6

21

22

*United States v. Philip Morris Inc.*,
   116 F. Supp. 2d 131 (D.D.C. 2000) ............................................................................. 4, 7

23

*Walling v. Beverly Enters.*,
   476 F.2d 393 (9th Cir. 1973)........................................................................................ 10

24

*Watson Carpet & Floor Covering, Inc. v. Mohawk Indus., Inc.*,
   648 F.3d 452 (6th Cir. 2011)......................................................................................... 7

25

**Rules**

26

F.R.C.P. Rule 23 ......................................................................................................... 16

27

U.S.D.C., Local Rule 8 ................................................................................................... 1

28

U.S.D.C., Rule 9(b) .................................................................................................. 10, 11

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

**INTRODUCTION**

Philips and LG have no valid basis in fact or law to ask this Court to reverse course from its prior holdings that: (1) withdrawal is too fact intensive to be decided on a motion to dismiss, and (2) fraudulent concealment allegations substantively identical to those Plaintiffs assert are legally sufficient to withstand a motion to dismiss. *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 738 F. Supp. 2d 1011, 1024 (N.D. Cal. 2010) (Dkt. No. 665). Contrary to these prior rulings, Philips and LG ask this Court to find as a matter of law that that they withdrew from the illegal price-fixing conspiracy and that Plaintiffs' fraudulent concealment allegations are insufficient to survive a motion to dismiss. Because these arguments run contrary to this Court's prior rulings, as well as Rule 8's pleading requirements and the standard for review of a motion to dismiss, they should be rejected. The mere fact that Philips and LG participated in the global CRT price-fixing conspiracy through a 50/50 owned joint venture (LPD) does not exculpate their conduct, much less provide legally sufficient grounds to conclude that they withdrew from the conspiracy by forming LPD. Indeed, Philips and LG cannot escape the inconvenient fact that they controlled LPD, which continued to conspire with competitors to fix CRT prices and production levels.

But it does not matter if Philips and LG withdrew from the conspiracy in June 2001 because Plaintiffs' claims did not accrue at that time given that Philips and LG had fraudulently concealed their participation in the illegal price-fixing conspiracy. To this very point, this Court has previously held that the fraudulent concealment allegations asserted by the direct and indirect purchaser plaintiffs classes are legally sufficient to withstand a motion to dismiss. *Id.* at 1024-25. And so it should hold here because Plaintiffs' fraudulent concealment allegations are nearly identical to the classes' fraudulent concealment allegations. The only argument Philips and LG can muster to avoid this consistent result is the false requirement that Plaintiffs must make specific allegations detailing Philips's and LG's affirmative acts of concealment. But such defendant-specific allegations were not required to sustain the allegations in the class complaints, and they should not be required here.

1      Finally, based on Ninth Circuit precedent, Plaintiffs' claims are tolled by *American Pipe*

2  *& Construction Co. v. Utah*, 414 U.S. 538 (1974), even though they opted out of the class before

3  class certification.  *In re Hanford Nuclear Reservation Litig.*, 534 F.3d 986, 1009 (9th Cir. 2008).

4  Philips and LG's argument that the Ninth Circuit is wrong and that *American Pipe* is irrelevant to

5  Plaintiffs' federal claims runs counter to controlling authority.   As this Court has already

6  recognized, Plaintiffs' claims are included within the direct purchaser plaintiffs class because they

7  purchased CRT Products from companies that are vertically integrated with the conspiring CRT

8  manufacturers.  *See* Order Granting In Part and Denying In Part Defendants' Joint Motion for

9  Summary Judgment ("Nov. 29, 2012 Order"), Dkt. No. 1470.  Each of the Plaintiffs at issue here

10  was a putative member of this class and retains the benefit of *American Pipe* tolling.

11      In sum, Plaintiffs have satisfied their Rule 8 burden by pleading that: (1) Philips and LG

12  for years participated in an illegal conspiracy to fix the price of CRT tubes; (2) Philips and LG

13  continued to participate in the price-fixing conspiracy through the creation of the LPD joint

14  venture; and (3) during this entire time Philips, LG, and LPD fraudulently concealed the existence

15  of the CRT price-fixing conspiracy.  This Court's prior orders on these very same issues dictate

16  the result here:  Plaintiffs' claims against LG and Philips should proceed to discovery.

17                                    **ARGUMENT**

18      Rule 8 requires only "a short and plain statement of the claim showing that the pleader is

19  entitled to relief' in order to 'give the defendant fair notice of what the . . . claim is and the

20  grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  It "does

21  not require detailed factual allegations," as Philips and LG suggest.  *Ashcroft v. Iqbal*, 556 U.S.

22  662, 678 (2009).  Indeed, to satisfy Rule 8, the Supreme Court has noted that a plaintiff merely

23  has to "nudge[] [its] claims . . . 'across the line from conceivable to plausible.'"  *Id.* at 680

24  (quoting *Twombly*, 550 U.S. at 570).  Because a plaintiff need only show a "plausible" claim for

25  relief, the Court must accept as true all material factual allegations in the complaint, draw

26  inferences from those allegations in the light most favorable to plaintiff, and construe the

27  complaint liberally.  *Barker v. Riverside Cnty. Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009).

28  Moreover, "[i]f there are two alternative explanations, one advanced by defendant and the other

1    advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to

2    dismiss under Rule 12(b)(6)."  *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

3    **I.    PLAINTIFFS' ALLEGATIONS DO NOT AFFIRMATIVELY ESTABLISH THAT**

4    **PHILIPS AND LG WITHDREW FROM THE CONSPIRACY IN 2001**

5            In the briefing on Philips and LG's Motion to Dismiss, Philips and LG presented a menu

6    of options for the Special Master to conclude that they had withdrawn from the CRT conspiracy:

7    June 2001; *or* January 2006; *or* March 2007.  Philips' Reply Br. at 5-6 (arguing that January 2006

8    and March 2007 are two additional possible withdrawal dates and criticizing Plaintiffs for their

9    "*fail[ure] to address* LPD's January 2006 declaration of bankruptcy despite its clear inclusion in

10   [its] Memorandum as a basis for withdrawal").  The Special Master rejected the proposed June

11   2001 withdrawal date, but concluded that LPD's bankruptcy in January 2006 or entry into

12   receivership in March 2007 demonstrates withdrawal by Philips and LG.  R&R at 15.  Despite

13   this limited (and inappropriate) finding that LPD withdrew in January 2006 or March 2007,[1] the

14   Special Master erroneously recommended dismissing Plaintiffs' claims against Philips and LG.

15   This recommendation appears to be based upon a mathematical miscalculation or typographical

16   error since, assuming *arguendo* LPD had withdrawn in January 2006 or March 2007, Plaintiffs'

17   claims would still be timely pursuant to *American Pipe* tolling.  *See* Plfs' Obj. at 15; *see also*

18   *infra* n. 2; Ex. 1.  Recognizing this mathematical error, Philips and LG retreat from the January

19   2006 and March 2007 alleged withdrawal dates they championed in their prior pleadings, and

20   now argue that they withdrew from the conspiracy in 2001 when they formed LPD.  Philips' Opp.

21   Br. at 7 ("[T]he Philips Defendants withdrew from the alleged CRT conspiracy in June 2001.").

22   The Special Master has already rejected this argument.[2]  *See* R&R at 15.  Philips and LG's

23   ─────────────────────
     [1] As Plaintiffs argued in their Objections to the Special Master's Report and Recommendation
24   Regarding Philips and LG's Motion to Dismiss Certain Direct Action Plaintiffs' Complaints
     ("Objection"), the Special Master's determination that Philips and LG withdrew in either 2006 or
     2007 was also inappropriate for a motion to dismiss.  Plfs.' Obj. at 7.

25   [2] Philips and LG only argue that they withdrew in January 2006 or March 2007 as a contingency
     contention in case this Court concludes *American Pipe* and cross-jurisdictional tolling does not
26   apply.  *See* Philips' Opp. Br. at 23 n. 15 ("If the Court agrees with this argument [that Plaintiffs'
     claims are not tolled by the filing of the direct purchaser plaintiffs class action] then all of the
27   DAPs' federal claims . . . would also be untimely even if the Court found that the Philips
     Defendants withdrew from the alleged conspiracy in 2006 or 2007 . . . ."); *see also id.* at 26-27
28   (asserting January 2006 and  March 2007 as additional withdrawal dates in addressing tolling of
     state law claims).  Thus, LG and Philips recognize, as they must, that if Plaintiffs' claims were

DIRECT ACTION PLAINTIFFS' REPLY BRIEF ISO
THEIR OBJECTIONS TO THE SPECIAL MASTER'S
REPORT, ETC. (3:07-CV-05944SC, MDL 1917)

1   changed position reflects their recognition that Plaintiffs' federal claims are timely if they

2   withdrew from the conspiracy in 2006 or 2007.  Philips and LG's strategic withdrawal date shell

3   game should not be sanctioned.  Regardless, the Plaintiffs' allegations establish that Philips and

4   LG continued to participate in the CRT conspiracy through the end of the conspiracy period.

5           **A.      As a matter of law, the formation of LPD does not establish withdrawal from**

6                   **the conspiracy**

7           The law is "well settled that an accused conspirator's participation in a criminal

8   conspiracy is presumed to continue until all the objects of the conspiracy have been accomplished

9   or until the last overt act is committed by any of the conspirators."  *United States v. Finestone*,

10  816 F.2d 583, 589 (11th Cir. 1987); *see also United States v. Basey*, 613 F.2d 198, 202 (9th Cir.

11  1979) (same).    Although proof of withdrawal rebuts that presumption, "withdrawal is an

12  affirmative defense on which defendants bear the burden of proof."  *In re TFT-LCD (Flat Panel)*

13  *Antitrust Litig.*, 820 F. Supp. 2d 1055, 1060 (N.D. Cal. 2011).  And, at the pleading stage,

14  "[b]ecause withdrawal is an affirmative defense, the affirmative acts [establishing withdrawal]

15  must clearly appear [ ] on the face of the complaint."  *United States v. Philip Morris Inc.*, 116 F.

16  Supp. 2d 131, 154 (D.D.C. 2000) (quotation marks omitted).

17          This issue was firmly decided by this Court, 738 F. Supp. 2d at 1025 (holding that the

18  issue of withdrawal "raises factual questions inappropriate for resolution at the motion-to-dismiss

19  stage"), and the Special Master erred in departing from the Court's holding.  Philips and LG

20  attempt to circumvent this Court's holding by claiming that their joint creation of LPD to carry on

---

22  tolled by the filing of the direct purchaser plaintiffs' class actions, Plaintiffs' claims are timely
23  unless the Court concludes that Philips and LG withdrew from the conspiracy in June 2001.  *See*
    Ex. 1.

24  As Plaintiffs argued in their Opening Brief, "[t]he Special Master apparently made a
25  mathematical miscalculation or a typographical error in concluding that March 2007 'was well
    before the statute of limitations,' even with the benefit of class tolling."  Plfs.' Obj. Br. at 15. This
    point is further demonstrated by the graphical representation of the relevant facts in Exhibit 1.  If
26  Philips and LG did not withdraw until 2006 or 2007, then Plaintiffs' claims, which are tolled by
    the filing of the direct purchaser plaintiffs class action in November 2007, are timely.  *See* Ex. 1.
27  Philips and LG do not respond to this argument, conceding (1) that there was indeed a
    mathematical or typographical error by the Special Master, and (2) that if they did not withdraw
    from the conspiracy in 2001 and that Plaintiffs' claims are tolled by the filing of the direct
28  purchaser class complaints, then Plaintiffs' claims are timely.

1   their respective (illegal) CRT businesses in June 2001 is a trump card that establishes withdrawal

2   regardless of any other fact.  Philips' Opp. Br. at 8.  Philips and LG are wrong.  As the Court has

3   already held, whether a conspirator withdrew from the conspiracy is a fact-intensive question that

4   precludes a motion to dismiss.  738 F. Supp. 2d at 102.  Moreover, the further reduction of

5   competition through the creation of a joint venture by two (ostensible) former competitors does

6   not establish withdrawal as a matter of law, particularly where, as here, that joint venture

7   continued to participate in the very anticompetitive activities that form the basis of the

8   allegations.  The court in *In re Potash Antitrust Litigation*, Case No. 3-93-197, 1994 WL 1108312

9   (D. Minn. Dec. 5, 1994), addressed this very issue and concluded that determining whether

10  allegations that a defendant transferred its ownership interest in the conspiring business unit

11  affirmatively establish that the defendant withdrew "***is a fact-intensive question that precludes a***

12  ***Motion to Dismiss***."  *Id.* at *12 n.16 (emphasis added).  This Court agreed with that reasoning

13  when it denied nearly identical motions brought against the class plaintiffs:

14            With regard to those Defendants who moved to dismiss based on claims
15      that they withdrew from the alleged conspiracy in 2001 or 2002, the Court agrees
        with the Special Master that ***this issue raises factual questions inappropriate for***
16      ***resolution at the motion-to-dismiss stage***.  *See* Report at 25.  For example, how
        can the Court know at this stage of the proceedings whether the withdrawing
17      Defendants maintained financial interests in the entities being sold or transferred?
        It would have been inappropriate for the Special Master to grant the motions to
18      dismiss filed by the Philips Defendants, the Toshiba Defendants, the Hitachi
        Defendants, the LG Electronics Defendants, and BMCC, on these grounds.
19

20  *In re CRT*, 738 F. Supp. 2d at 1025 (emphasis added).[3]

21            Philips and LG's reliance on *Morton's Market, Inc. v. Gustafson's Dairy, Inc.*, 198 F.3d

22  823 (11th Cir. 1999), is misplaced.  That case was decided after discovery on a motion for

23

24  _____
    [3] As Plaintiffs argued in their Objection, this Court's reasoning is no less persuasive because it
    was issued at a time when the alleged conspiracy included both CRTs and CRT Products.

25            The breadth of the conspiracy at issue is a distinction without a difference.
        The Court's reasoning regarding withdrawal applies equally here: there are factual
26      questions relevant to whether and when Philips and LG withdrew, including
        whether they maintained financial interests in LPD (a company that continued to
27      manufacture CRTs until 2007).  Whether or not the alleged conspiracy extended to
        finished products does not alter the conclusion that there are plausible factual
        issues regarding withdrawal inappropriate for a motion to dismiss.

28  Plfs.' Obj. at 9.

1    summary judgment.  The court in *Morton*'s *Market* only concluded that the defendant had

2    withdrawn after determining, from the ***factual record***, that it "certainly 'retired' and totally

3    severed its ties to the milk price-fixing conspiracy," and "did nothing more to assist or participate

4    in the price-fixing activities of the other dairies."  *Id.* at 839.  Similarly, faced with a motion for

5    judgment of acquittal after the conclusion of a criminal trial, the district court in *United States v.*

6    *Nippon Paper Industries Co.*, 62 F. Supp. 2d 173 (D. Mass. 1999), concluded the defendant had

7    withdrawn only after "[t]aking into account all of the evidence presented at trial."  *Id.* at 192.  By

8    contrast, after conducting a similar inquiry, the Third Circuit in *United States v. Lowell*, 649 F.2d

9    950 (3d Cir. 1981), concluded that the defendant had not satisfied the "rigorous requirement for

10   making out the defense of withdrawal," despite the fact that the defendant had retired from the

11   business.  *Id.* at 960.

12        *Morton's Market*, *Nippon Paper*, and *Lowell* reinforce this Court's conclusion that the

13   issue of withdrawal requires a fact intensive inquiry to be conducted after the close of discovery

14   at summary judgment (or trial).  *In re CRT*, 738 F. Supp. 2d at 1025.  The ***factual*** arguments

15   advanced by Philips and LG prove the point.  Contrary to Philips and LG's factual contention,

16   they did not sever all ties with the conspiracy.  In fact, they simply transferred their key

17   employees who had been participating in the conspiracy on their behalf to a jointly owned

18   company that continued Philips' and LG's roles in the conspiracy.  Best Buy Compl. ¶¶ 36, 40,

19   46, 143, 145, 150.  As 50/50 owners of LPD, Philips and LG—both of which had been active

20   participants in the conspiracy since 1995—jointly controlled LPD.  As a result of this joint

21   ownership, it would be eminently reasonable to infer that Philips and LG were entitled to

22   financial benefits from LPD, an active participant in the ongoing conspiracy.[4]  *See Barker*, 584

23   F.3d at 824 ("[Courts] must draw inferences in the light most favorable to the plaintiff.").

---

24   [4] To be clear, Plaintiffs do not assert that Philips and LG are liable under a vicarious liability
25   theory based on their ownership of LPD.  *See* Philips' Opp. Br. at 15-17.  Rather, Philips' and
     LG's ownership of LPD is one fact indicating they did not effectively withdraw from the
26   conspiracy.  Philips and LG recognize that their ownership of LPD is relevant to whether they
     withdrew from the conspiracy:  "A continuing ownership or financial interest may be relevant to
     the ultimate question of whether the defendant took 'definite, decisive and positive steps' to
27   disassociate from the conspiracy . . . ."  *Id.* at 16.  Their suggestion that this Court can nonetheless
     conclude at the motion-to-dismiss stage that Plaintiffs' allegations demonstrate they effectively
28   withdrew attempts to sweep away this obvious factual issue.

1   Accordingly, it would be clear error for this Court to conclude, at the motion-to-dismiss stage,

2   that Philips and LG withdrew from the conspiracy in June 2001 simply because they combined to

3   create a new company to carry on with the price-fixing conspiracy.

4         **B.**      **Philips and LG may not shift the burden regarding withdrawal to Plaintiffs**

5         Withdrawal from a conspiracy is an affirmative defense.  Philips and LG, therefore, bear

6   the burden of proving they withdrew from the CRT price-fixing conspiracy.  Accordingly, their

7   attempt to shift the burden to Plaintiffs to allege facts that LG and Phillips did not withdraw from

8   the conspiracy are improper.  *See, e.g.*, Philips' Opp. Br. at 11 (criticizing Plaintiffs for "not

9   com[ing] close to meeting their pleading obligations" as to Philips' and LG's continued

10  participation in the conspiracy).  Under Rule 8, Plaintiffs have no such pleading obligation.

11        There is no question that Plaintiffs have sufficiently alleged that Philips and LG

12  participated in the conspiracy to fix prices of CRTs.  Plaintiffs have also alleged that Philips and

13  LG did not withdraw from the CRT conspiracy.  Best Buy Compl. ¶¶ 143, 150.  As discussed

14  above, Philips and LG's creation of LPD does not establish that Philips and LG withdrew from

15  the conspiracy.  *See supra* pp. 4-7.  Plaintiffs are not required to allege additional facts to

16  establish that Philips and LG continued to participate in the conspiracy.  *See, e.g.*, *Basey*, 613

17  F.2d at 202 ("[Defendant's] participation in the conspiracy is presumed to continue until the last

18  overt act of the conspirators unless she produces affirmative evidence of withdrawal."); *Philip*

19  *Morris Inc.*, 116 F. Supp. 2d at 154 (holding that motions to dismiss asserting withdrawal can

20  only be granted where "the affirmative acts [establishing withdrawal] must 'clearly appear [ ] on

21  the face of the complaint'").  "Proof that the conspiracy was ongoing is unnecessary because

22  conspiracies presumptively are ongoing until the participants achieve their objective." *Watson*

23  *Carpet & Floor Covering, Inc. v. Mohawk Indus., Inc.*, 648 F.3d 452, 457 (6th Cir. 2011).

24  Applying that reasoning at the motion to dismiss stage, the *Watson* court concluded that "because

25  conspiracies are presumptively ongoing, a plaintiff plausibly alleges that defendants acted

26  *pursuant* to a conspiracy if the plaintiff alleges both (1) a conspiratorial agreement and (2) later

27  actions that are consistent with the conspiracy." *Id.* at 458.  Here, Plaintiffs have alleged a

28

conspiratorial agreement and later actions in furtherance of that conspiracy, including Philips' and LG's continued concealment of the conspiracy.

### C. Continued Participation by LG and Philips Is Plausible

Plaintiffs allege that Philips and LG never withdrew from the conspiracy even after they formed the joint venture. Best Buy Compl. ¶¶ 143, 150. Philips and LG boldly try to turn the facts and law on their head by claiming that their continued participation in the conspiracy after June of 2001 is implausible because they were *victims* of the conspiracy. Putting aside the audacity of that argument, the plausibility of whether Philips and LG continued to participate in the conspiracy must be considered in the context of Plaintiffs' allegations: beginning in at least 1995, Philips and LG were key participants in a multi-company conspiracy to fix the prices of CRTs; indeed, each attended at least 100 price-fixing meetings between 1995 and 2001. Best Buy Compl. ¶¶ 143, 146. This price-fixing conspiracy involved secret meetings where competing CRT manufacturers discussed and reached agreements regarding CRT prices and productions. Best Buy Compl. ¶¶ 5, 131. In furtherance of that conspiracy, the conspirators agreed to hide their meetings, discussions, and agreements. *Id.* ¶¶ 5, 131, 223-235. Consistent with the collusive conduct allegations, Philips and LG stopped competing with each other and combined their CRT businesses in 2001 through the creation of LPD, which they equally and jointly owned. *Id.* ¶¶ 36, 40, 46. As the sole owners of LPD, they each continued to profit from the conspiracy via: (1) the higher prices LPD could charge to customers by virtue of the price-fixing conspiracy and (2) the higher monitor prices they could extract by virtue of the price-fixed tubes.

In light of these allegations, it is certainly plausible that Philips and LG did not affirmatively withdraw from the conspiracy. Philips and LG had every incentive to keep the price-fixing conspiracy secret and, in fact, did so. *Id.* ¶¶ 5, 131, 225, 227. In addition to making money from the ongoing conspiracy, Philips and LG faced potential criminal investigation and civil litigation if the conspiracy ever came to light. Given their potential liability, it is certainly plausible that Philips and LG continued to conceal the existence of the conspiracy to avoid potential liability, even if it meant (the charade of) paying higher prices for the CRTs they purchased from the conspirators when these costs were subsequently passed on to their

1    customers.  *See id.* ¶¶ 92, 130.  By continuing to conceal the conspiracy, *see, e.g.*, *id.* ¶¶ 225, 233,

2    Philips and LG advanced the goals of the conspiracy while at the same time protected themselves

3    from definite criminal and civil liability.

4           Finally, it is entirely plausible that Philips and LG did not affirmatively withdraw from the

5    conspiracy given their specific interest in assuring the success of LPD.  Philips and LG started

6    participating in the conspiracy "[i]n order to control and maintain profitability during declining

7    demand for CRT Products."  *Id.* ¶ 113.  Based on Plaintiffs' allegations, it is not only plausible,

8    but likely, that Philips and LG consented to LPD's continued participation in the conspiracy to

9    ensure that LPD would be more successful, thus resulting in more profit to Philips and LG, LPD's

10   50/50 owners.[5]

11   **II.    PLAINTIFFS HAVE SUFFICIENTLY ALLEGED FRAUDULENT**

12          **CONCEALMENT, THUS TOLLING THEIR CLAIMS REGARDLESS OF**

13          **WITHDRAWAL**

14       **A.    Plaintiffs' Fraudulent Concealment Allegations are Sufficient Under *Twombly***

15          Philips and LG's contention that Plaintiffs have failed to adequately allege fraudulent

16   concealment lacks merit.  Philips' Opp. Br. at 18.  This Court has already rejected a motion to

17   dismiss challenging nearly identical fraudulent concealment allegations, acknowledging that "'it

18   is generally inappropriate to resolve the fact-intensive allegations of fraudulent concealment at

19   the motion to dismiss stage.'"  (Order, Dkt. No. 665, p. 21 (quoting *In re Rubber Chems. Antitrust

20   Litig.*, 504 F. Supp. 2d 777, 789 (N.D. Cal. 2007)).  To adopt the Special Master's ruling would

21   be to depart not just from the law of the case but also from the Northern District of California's

22   repeated refusals to rule on issues of fraudulent concealment at the pleadings stage.  *See, e.g.*, *In

23   re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI, 2012 WL 506327, at *2 (N.D. Cal.

24   Feb. 15, 2012) (denying defendants' motion to dismiss because the fraudulent concealment

25   allegations were substantially similar to allegations "deemed sufficient to survive the pleading

_____

26   [5] Philips points to the fact that it "wrote off the remaining book value" of its investment in LPD in
     2005 in support of their argument that Philips did not financially benefit from its ownership of
27   LPD.  Philips' Opp. Br. at 4, 15.  Passing for the moment this improper injection of yet another
     factual contention into its argument, what happened in 2005 is irrelevant to determining whether
28   Philips withdrew from the conspiracy in 2001.

1  stage"). Philips and LG's argument that this Court's Order does not apply to them by virtue of

2  their claimed June 2001 withdrawal date is wrong on two counts. Philips' Opp. Br. at 21. First, it

3  wrongly presupposes that Philips and LG did, in fact, withdraw from the conspiracy in June 2001.

4  Second, as discussed below, Philips' and LG's fraudulent concealment tolled the statute of

5  limitations even if they had withdrawn in June 2001. *See infra* pp. 13.

6         Pleading with particularity is not the insurmountable obstacle that Philips and LG claim it

7  to be. Rather, a pleading satisfies Rule 9(b) if it identifies the circumstances of the fraud "'so that

8  the defendant can prepare an adequate answer from the allegations.'" *Neubronner v. Milken*, 6

9  F.3d 666, 672 (9th Cir. 1993) (quoting *Gottreich v. San Francisco Inv. Corp.*, 552 F.2d 866, 866

10 (9th Cir. 1977)). Averments that are "simple, concise and direct" are adequate under Rule 9(b).

11 *David K. Lindemuth Co. v. Shannon Fin. Corp.*, 637 F. Supp. 991, 993 (N.D. Cal. 1986); *accord*

12 *McQueen v. Woodstream Corp.*, 248 F.R.D. 73, 77 (D.D.C. 2008) ("Rule 9(b)'s particularity

13 requirement does not abrogate Rule 8's general requirements that a pleading contain a short and

14 plain statement of the claim, and that each averment be simple, concise and direct."). 

15 Furthermore, despite Philips and LG's insinuations, Rule 9(b) does not require "[a] plaintiff . . . to

16 plead detailed evidentiary matters." *Shannon Fin. Corp.*, 637 F. Supp. at 994 (citing *Walling v.*

17 *Beverly Enters.*, 476 F.2d 393 (9th Cir. 1973)). In fact, Philips and LG are not entitled to

18 exhaustive information on the alleged fraudulent conduct at this stage in the pleadings. *See*

19 *McQueen*, 248 F.R.D. at 78 (stating that fraud pleading requirements are not meant to supplant

20 discovery); *Sunbird Air Servs., Inc. v. Beech Aircraft Corp.*, 789 F. Supp. 364, 366 (D. Kan.

21 1992) (remarking that Rule 9 does not require such particularity that a pleading would supplant

22 general discovery).

23         Contrary to Philips and LG's arguments, the Plaintiffs' allegations sufficiently apprise all

24 Defendants of their fraudulent conduct.[6] *See* Best Buy Compl. ¶¶ 223-235. The allegations, read

---

[6] Courts must be mindful of a case's complexity when judging the pleading through Rule 9(b). In

25 cases where the complaint describes an intricate fraudulent artifice, a pleading will satisfy Rule

26 9(b) if it offers examples of specific fraudulent conduct that are representative of the overall scheme. *See United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 510-11 (6th

27 Cir. 2007) (permitting a plaintiff to plead a fraudulent scheme with "characteristic examples" that were "illustrative of the class" of claims in the fraudulent scheme); *see also In re Nat'l Mortg.*

28 *Equity Corp. Mortg. Pool Certificates Sec. Litig.*, 636 F. Supp. 1138, 1159 (C.D. Cal. 1986) (stating courts should examine the pleadings as a whole to evaluate whether the complaint has

1  in the context of the entire complaint, describe the Defendants' fraud with the particularity Rule

2  9(b) envisions.  *See Nat'l Union Fire Ins. Co. of Pittsburg, PA v. Res. Dev. Servs., Inc.*, No. 5:10-

3  cv-01324-JF/PVT, 2010 WL 4774929, at *8 (N.D. Cal. Nov. 16, 2010) (stating a plaintiff need

4  not "plead every detail of a fraudulent scheme in order to plead the circumstances under which

5  the fraud occurred").

6      Philips and LG also argue that Plaintiffs have not pled entity-specific fraudulent

7  concealment allegations, in violation of Rule 9(b).  They cite three cases in support of this

8  "particularized pleading" requirement for each individual defendant.  Philips' Opp. Br. at 19-20.

9  But none of these cases involves a continuous 12-year price-fixing conspiracy involving dozens

10  of conspirators.[7]  *See*, *e.g.*, *Metz v. Unizan Bank*, 416 F. Supp. 2d 568 (N.D. Ohio 2006) (class

11  action alleging claims under the UCC and Ohio common law); *O'Brien v. Nat'l Prop. Analysts*

12  *Partners*, 719 F. Supp. 222 (S.D.N.Y. 1989) (RICO case involving two defendants); *Moreco*

13  *Energy, Inc. v. Penberthy-Houdaille, Inc.*, No. 86 C 20153, 1988 WL 124928 (N.D. Ill. Oct. 21,

14  1988) (fraud case with one defendant).  In a complex conspiracy case such as this, Rule 9(b)

15  simply does not require the extra level of detail Philips and LG would have the Court engraft onto

16  the Rule.  *See Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989)

17  (recognizing that in cases of corporate fraud, because it may be difficult to "attribute particular

18  fraudulent conduct to each defendant as an individual," the plaintiff is only required to "include

19  the misrepresentations themselves with particularity and, where possible, the roles of the

20  individual defendants in the misrepresentations").  In any event, Plaintiffs have described the

21  Defendants' acts of fraudulent concealment with particularity.  The allegations in the Plaintiffs'

22  complaints are more than adequate for all Defendants to prepare their own responsive pleadings.

23  *See Bosse v. Crowell Collier & Macmillan*, 565 F.2d 602, 611 (9th Cir. 1977) (holding that "Rule

24

25  ───────────────────

26  described the "nature and circumstances of the alleged misrepresentations" (citing *Seville Indus.*
   *Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984)).

27  [7] In fact, one of the decisions cited by Philips and LG involves an affirmative claim for fraud
   under Illinois law—not to be confused with the tolling doctrine at issue here.  *See Moreco*
28  *Energy*, 1988 WL 124928, at *4.

1    9(b) … only requires the identification of the circumstances constituting fraud so that the

2    defendant can prepare an adequate answer from the allegations").[8]

3        **B.    Fraudulent Concealment Tolls Plaintiffs' Claims Even If This Court**

4             **Concludes Philips and LG Withdrew from the Conspiracy in 2001**

5        Having sufficiently alleged fraudulent concealment, Plaintiffs' claims against Philips and

6    LG are timely even if this Court concludes that Philips and LG withdrew from the conspiracy in

7    2001.  "Even if [defendant] could establish at the motion to dismiss stage that he withdrew from

8    the conspiracy at the end of 2001—a question that the Court does not reach—Plaintiffs'

9    allegations of fraudulent concealment would prevent the statute of limitations as to [defendant's]

10   conduct from beginning to run until October 2002 [when the conspiracy became public]."  *In re*

11   *Rubber Chems.*, 504 F. Supp. 2d at 790; *see also Morton's Mkt., Inc. v. Gustafson's Dairy, Inc.*,

12   211 F.3d 1224, 1224 (11th Cir. 2000) (amending prior order to clarify that fraudulent

13   concealment tolls the statute of limitations even after a defendant effectively withdraws from the

14   conspiracy).

15       Philips and LG attempt to avoid this result by arguing that Plaintiffs cannot get the benefit

16   of fraudulent concealment because they failed to file suit within four years of November 8, 2007,

17   the date the DOJ's investigation into price fixing in the CRT industry became public.  This

18   argument ignores the controlling authority of *American Pipe & Construction Co. v. Utah*, 414

19   U.S. 538 (1974), which holds that a plaintiff class member's claims are tolled by the filing of a

20   class action complaint.  *Id.* at 554.  As discussed below, Plaintiffs' claims were tolled by the filing

21   of the direct purchaser plaintiffs class action complaints.  *See infra* pp. 14-15.  Accordingly,

22   Plaintiffs' claims are timely even if this Court concludes Philips and LG withdrew from the

23

24   ───────────────────────
     [8] If this Court concludes that Plaintiffs' fraudulent concealment allegations are not sufficient to
25   withstand this motion to dismiss, Plaintiffs should be given leave to amend their complaints to
     cure the purported defects.  *See, e.g., Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 637-38  (9th
26   Cir. 2012) ("A district court abuses its discretion by denying leave to amend unless amendment
     would be futile or the plaintiff has failed to cure the complaint's deficiencies despite repeated
27   opportunities.");  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (The Ninth Circuit has
     "repeatedly held that 'a district court should grant leave to amend even if no request to amend the
28   pleading was made, unless it determines that the pleading could not possibly be cured by the
     allegation of other facts.'" (internal citation omitted)).

1   conspiracy in 2001.  *In re Rubber Chems.*, 504 F. Supp. 2d at 790; *see also Morton's Mkt.*, 211

2   F.3d at 1224.

3   **III.    PLAINTIFFS' FEDERAL CLAIMS ARE TOLLED BY THE FILING OF THE**

4   **DIRECT PURCHASER PLAINTIFFS CLASS ACTION**

5          In *American Pipe*, the Supreme Court held that the commencement of a class action

6   suspends the statute of limitations for all putative class members.  414 U.S. at 554.  The Ninth

7   Circuit has applied that law and held that even plaintiffs who opt out of the class *prior* to class

8   certification in order to pursue individual actions—and thus are putative members of a class—are

9   also entitled to tolling pursuant to *American Pipe*.  *In re Hanford Nuclear*, 534 F.3d at 1009.  The

10  direct purchaser class actions were filed in November 2007.  Plaintiffs were clearly putative

11  members of this class.

12         Philips and LG attempt to avoid that clear authority in a newly raised argument that

13  Plaintiffs "'are indirect purchasers of the CRTs, and are not 'direct' purchasers for purposes of

14  standing under the federal antitrust laws.'"[9]   Philips' Opp. Br. at 24 (quoting R&R at 3).

15  According to Philips and LG, "[t]he DAPs therefore were not properly class members of a *direct*

16  purchaser class of plaintiffs and *American Pipe* cannot toll their claims during the pendency of a

17  *direct* purchaser class action."  *Id.*  That argument is simply wrong.  There is no doubt that

18  Plaintiffs were asserted members of the direct purchaser class.  Despite the denomination of the

19  direct purchaser class, the members of that class are and always have been the same type of

20  purchasers as Plaintiffs.  *See* Nov. 29, 2012 Order at 1-2 ("The Named DPPs are retailers who

21  purchased televisions and monitors containing CRTs (finished products or "FPs"), as opposed to

22  purchasing the allegedly price-fixed CRTs directly.").  As this Court recognized in concluding

23  that the direct purchaser plaintiffs class could pursue claims against Defendants pursuant to the

24  ownership and control exception of *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), "the

25  ─────────────────

26  [9] Philips and LG did not raise this argument in their briefing before the Special Master.  In fact, Philip and LG did not contest below that *American Pipe* applies to Plaintiffs' federal claims.  *See* Philips' Reply Br. at 10 (arguing only that cross-jurisdictional tolling does not apply to Plaintiffs'

27  state law claims and not addressing Plaintiffs' argument that *American Pipe* tolls their state law claims).  Accordingly, Philips and LG should not now be able to contest the applicability of

28  *American Pipe* on any basis.

1    Named DPPs, though they are members of a putative class that has been denominated 'direct

2    purchaser plaintiffs' throughout this litigation, are in fact indirect purchasers for purposes of

3    antitrust standing."  Nov. 29, 2012 Order at 6.  Under this Court's November 29, 2012 Order,

4    Plaintiffs are direct purchasers for standing purposes and fall squarely within the scope of the

5    class as recognized by this Court.  *See* Dkt. No. 1470 at 1-2.  As such, before Plaintiffs filed the

6    instant claims, they were putative direct purchaser class members and are therefore entitled to

7    tolling pursuant to *American Pipe*.[10]   Accordingly, Plaintiffs' federal claims were tolled as of

8    November 26, 2007, the date the first direct purchaser class case was filed.

9    **IV.    PLAINTIFFS' STATE LAW CLAIMS ARE TIMELY**

10        Plaintiffs' state law claims also fall within their respective statute of limitations.  First,

11   Plaintiffs' state law claims were tolled until at least November 2007, when the price-fixing

12   conspiracy became public, due to Philips' and LG's fraudulent concealment of the CRT

13   conspiracy.  *See supra* pp. 10-12.  Second, as with the federal claims, Plaintiffs' state claims

14   continued to toll with the filing of the class action complaints brought on behalf of direct

15   purchasers.

16        Defendants' assertion that a growing list of federal courts refuse to apply cross-

17   jurisdictional tolling is wrong.  *See* Philips' Opp. Br. at 31 n.30.  Those cases stand for the

18   uncontroversial proposition that cross-jurisdictional tolling only applies where there is an

19   indication that the relevant state courts would apply the doctrine.  That is consistent with

20   Plaintiffs' position here.  Defendants are also incorrect when they suggest that a sister court in

21   this district "found cross-jurisdictional tolling" to be unavailable in antitrust actions brought

22   under state laws.  *See* Philips' Opp. Br. at 31 n.31 (citing *In re Dynamic Random Access Memory*

23   *(DRAM) Antitrust Litig.*, 516 F. Supp. 2d 1072, 1102-03 (N.D. Cal. 2007)).  The *DRAM* court

24

---

25   [10] Demonstrating that Plaintiffs were properly members of the direct purchaser plaintiffs class
     before opting out to pursue direction action litigation, the Plaintiffs filed the Direct Action
26   Plaintiffs' Objection To The Special Master's Report and Recommendation Regarding
     Defendants' Motion for Partial Summary Judgment.  Dkt. No. at 1273.  Like the direct purchaser
27   plaintiffs class members, the Plaintiffs purchased finished products containing CRTs.  Plaintiffs
     therefore objected to the Special Master's Report and Recommendation on Defendants' motion
28   for summary judgment acknowledge that "the R&R may be the basis for summary judgment
     motions in the DAP cases."  *Id.* at 1.

DIRECT ACTION PLAINTIFFS' REPLY BRIEF ISO
THEIR OBJECTIONS TO THE SPECIAL MASTER'S
REPORT, ETC. (3:07-CV-05944SC, MDL 1917)

1    never addressed whether cross-jurisdictional tolling applied to state claims brought by opt-out

2    plaintiffs following a federal class action.  Rather, it analyzed the question of whether tolling for a

3    subsequent *class action* was available where *state class actions* filed earlier were still pending

4    certification.  Concerned with the possibility that applying tolling in such circumstances would

5    invite a flood of *class action* filings, the Court declined to apply the doctrine.  *In re DRAM*, 516

6    F. Supp. 2d. at 1103.  Clearly the concern about a flood of *class action* filings is irrelevant to the

7    question of whether tolling should apply for opt-outs.  *C.f. Aho v. AmeriCredit Fin. Servs., Inc.*,

8    277 F.R.D. 609, 621 n.10 (S.D. Cal. 2011) (noting that the *DRAM* court was concerned with class

9    actions "piggyback[ing]" on earlier class actions).

10        As explained in the opening brief, cross-jurisdictional tolling is appropriate under each of

11   the asserted state law claims:

12        *California*—California law would allow tolling of Plaintiffs' state law claims.  Following

13   *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017 (9th Cir. 2008), which held that California

14   would not toll claims for a subsequent *class action* lawsuit, the court in *Hatfield v. Halifax PLC*,

15   564 F.3d 1177 (9th Cir. 2009), concluded that California law *would* permit the statute of

16   limitations to toll for subsequent *individual* claims, *id.* at 1188-89.[11]  Here, as in *Hatfield*,

17   Plaintiffs' individual California state law claims should be tolled.

18

19

---

20   [11] The *Hatfield* court applied the doctrine of equitable tolling, but regardless of what it is called, the same tolling should apply here.  *Eichman v. Fotomat Corp.*, 880 F.2d 149 (9th Cir. 1989), is

21   not the contrary.  There the court only held that a prior *state* antitrust action could not be used to toll a subsequent federal claim, which "would result in a judicially mandated tacking of state limitations periods onto the federal limits."  *Id.* at 156.  Nor did the court in *In re TFT-LCD (Flat*

22   *Panel) Antitrust Litigation*, No. 07-md-1827, 2012 WL 149632 (N.D. Cal. Jan. 18, 2012), reject equitable tolling.  Instead, that decision declined to apply the doctrine to out of state residents.  *Id.*

23   at *3.   The Plaintiffs respectfully disagree with that analysis.   *Hatfield* refused to extend California's equitable tolling doctrine to the non-residents because their claims accrued outside of

24   California and would have been barred by the statute of limitations of the law that governed their claims (there, English law).  *Hatfield*, 564 F.3d at 1189.  As *Hatfield* explained, "California's borrowing statute . . . prevents non-residents from prosecuting an action in a California court

25   where such action would be barred under the statute of limitations of the jurisdiction whose law would otherwise govern."  *Id.*  Thus, a non-resident can take advantage of equitable tolling under

26   California law if that plaintiff's claim arose in California.  Finally, *Centaur Classic Convertible Arbitrage Fund Ltd. v. Countrywide Financial Corp.*, 878 F. Supp. 2d 1009 (C.D. Cal. 2011), is

27   simply not on point.  The court there declined to toll the statute of limitations for the "same six claims" that had previously been brought and denied class certification.  *Id.* at 1013.  Plaintiffs are seeking "a different remedy," state law claims, "for the same wrong," the price-fixing conspiracy,

28   and therefore tolling is appropriate.  *Eichman*, 880 F.2d at 155.

---

*Florida*—Florida law would allow for the tolling of Plaintiffs' state law claims and Defendants fail to distinguish the case law cited in Plaintiffs' Objection. *See Barnaby v. E.F. Hutton & Co.*, 715 F. Supp. 1512, 1528-29 (M.D. Fla. 1989) (class action filed in Southern District of Indiana that included "claims materially of the same legal identity" allowed *American Pipe* tolling to Florida state law claims); *see also In re TFT-LCD Antitrust Litig.*, 2012 WL 149632, *3 (claims brought in California and Florida district courts by Florida residents were "sufficient to toll the Florida [state law] statute of limitations"); *City of St. Petersburg v. Total Containment, Inc.*, No. 06-20953-CIV, 2008 WL 5428179, *2-5 (S.D. Fla. Oct. 10, 2008) (allowing *American Pipe* tolling for  Florida state law claims "to preserve the efficiency and economy of litigation which is a principal purpose of the [Fed.R.Civ.P. 23 class action] procedure" and noting that "*American Pipe* tolling has been applied in Florida state courts"), *rev'd on other grounds sub nom.*, *City of St. Petersburg v. Dayco Prods., Inc.*, No. 06-20953-CIV, 2008 WL 5428172, at *2 (S.D. Fla. Dec. 30, 2008).

*Massachusetts*—Likewise, Massachusetts would allow for the tolling of Plaintiffs' state law claims.  *Arivella v. Lucent Techs., Inc.*, 623 F. Supp. 2d 164 (D. Mass. 2009), cited in Plaintiffs' Objection, states clearly that class action tolling is allowable in Massachusetts where a plaintiffs' claims are substantially similar to the claims made in a class complaint.  *See also Special Situations Fund III, L.P. v. Am. Dental Partners, Inc.*, 775 F. Supp. 2d 227, 245 (D. Mass. 2011) ("Generally, class action tolling applies to any of [a plaintiff's] claims which are part of a class action against the same defendant[ ] until the class is decertified or [a plaintiff] opts out.").

*Michigan*—Michigan clearly allows cross-jurisdictional tolling such that the Plaintiff's claims here were tolled by virtue of the filing of direct purchasers' class action complaint.  As noted in Plaintiffs' Objection, *Lee v. Grand Rapids Board of Education*, 384 N.W.2d 165 (Mich. Ct. App. 1986), held clearly "that the federal district court action tolled the operation of the statute of limitations as to the plaintiffs' claims pursuant to [Michigan state civil rights acts]." *Id.* at 168.  Philips and LG claim that the facts presented here are more analogous to *Mair v. Consumers Power Co.*, 348 N.W.2d 256 (Mich. 1984), but that claim is without merit.  Distinct from *Lee*—and the situation presented here—*Mair* involved only a single plaintiff who had

1    previously filed a federal administrative action.  *Mair* merely held that the Michigan state tolling

2    statute did not apply to administrative proceedings.  *Id.* at 261.  In fact, *Lee* distinguished *Mair* on

3    that ground.  *See Lee*, 384 N.W.2d at 167-68.  Moreover, unlike *Mair*, the court in *Lee* addressed

4    the question of whether a federal class action would act to toll the statute of limitations for state

5    law claims and found, unequivocally, that it would.

6          ***Minnesota***—Cross-jurisdictional tolling is also available under Minnesota law.  Philips

7    and LG understate *Jenson v. Allison-Williams Co.*, No. 98-CV-2229, 1999 WL 35133748, at *6

8    (S.D. Cal. Aug. 23, 1999), which held that individual plaintiffs' Minnesota Securities Act claims

9    were tolled by a previously filed class action asserting nearly identical federal securities claims.

10   Philips and LG's assertion that the *Jenson* court simply "assumed that Minnesota law would

11   apply cross-jurisdictional tolling," Philips' Opp. Br. at 32 n. 38, ignores the fact that this decision

12   relied on Minnesota state courts' previous utilization of the tolling doctrines articulated in

13   *American Pipe*.  *Jenson*, 1999 WL 35133748, at *6 (citing *Bartlett v. Miller & Shroeder Muns.,*

14   *Inc.*, 355 N.W.2d 435, 439 (Minn. Ct. App. 1984); *Carlson v. Indep. Sch. Dist. No. 623*, 392

15   N.W.2d 216, 223 (Minn. 1986)).  Since Plaintiffs' claims under Minnesota's antitrust law are

16   similar in all material respects to the federal antitrust claims asserted by the direct purchaser

17   plaintiffs, cross-jurisdictional tolling is clearly applicable to Plaintiffs' claims under Minnesota

18   law.

19         ***New York***— Philips and LG admit, as they must, that New York Donnelly Act claims are

20   tolled because that statute tolls the limitations period "'during the pendency . . . and one year

21   thereafter' [of] any civil or criminal antitrust proceeding brought by the federal government."

22   Philips' Opp. Br. at 31 n.32; N.Y. Gen. Bus. L. § 342-c; see also Defendants' Joint Objections to

23   the Report and Recommendation Regarding Defendants' Motions to Dismiss Direct Action

24   Complaints, No. 07-5944 (Dkt. 1706) (May 31, 2013), at 18 n. 15; Defendants' Joint Reply in

25   Support of Motion to Dismiss, No. 07-cv-5944 (Dkt. 1422) (Oct. 26, 2012), at 6 n.5.  Because

26   there are pending criminal indictments, the statute of limitations continues to toll.  Plaintiffs' New

27   York claims would also be timely under cross-jurisdictional tolling. See Plfs' Obj. at 16 n.10.

28

*Washington*—Tellingly, Philips and LG do not cite any Washington authority to support their argument that cross-jurisdictional tolling is unavailable under Washington law.  Nor is the unreported decision they cite on point.  *See* Philips' Opp. Br. at 32 n. 39 (citing *Champion v. Homa*, No. 3:03-cv-275, 2008 WL 900967, at *11 (M.D. Ala. Mar. 31, 2008)).  That unpublished decision from the Middle District of Alabama did not discuss Washington law and merely stated as a general matter that "[t]he pendency of prior *state court class actions* arising out of the same factual situation does not toll the statute of limitations or statute of repose for claims under *federal law* subsequently filed in *federal court*."  *Champion*, 2008 WL 900967, at *11 (emphasis added).  The *Champion* court did not consider the availability of cross-jurisdictional tolling in Washington, let alone the tolling of Washington state antitrust claims pursued in federal court via a pending class action under federal law in federal court.  Furthermore, Defendants wholly ignore the Washington authority suggesting that cross-jurisdictional tolling applies in Washington.  *See* Plfs.' Obj. at 16-17 n. 11.  As explained in Plaintiffs' Objection, and consistent with the Washington law principle invoked by Defendants that Washington generally follows federal principles, *see* Defendants' Joint Motion to Dismiss, Dkt. No. 1317 at 24, there is every reason to believe that Washington courts would permit cross-jurisdictional tolling.

Lastly, Defendants' argument that Plaintiffs' waived several state law claims as to Arizona, Illinois, Iowa, Mississippi, Nebraska, Nevada, New Mexico, North Carolina, and Wisconsin law, Philips Opp. Br. at 30, is without merit.  The cases cited by Defendants are inapplicable and do not mandate dismissal of Plaintiffs' claims under these state laws.  The courts cited by Defendants dismissed the claims at issue in those cases only where the plaintiffs' opposition brief completely failed to respond to the particular arguments raised by the defendants' motion to dismiss.[12]  Plaintiffs have responded here.

---

[12]  Equally important, the Special Master has already recommended that the Court deny defendants' motion to dismiss Plaintiffs' state law claims based on the running of the statute of limitations.  As a result, at this point, there is no reason to dismiss Plaintiffs' state law claims.

1

**CONCLUSION**

2          Plaintiffs respectfully submit that the Court should follow its own prior ruling on the class

3   complaints and deny Philips' and LG's Motion to Dismiss.

4   Dated July 26, 2013.

5

6                                          SUSMAN GODFREY L.L.P.

7

8                                          /s/ Jonathan J. Ross
                                           H. Lee Godfrey
9                                          Kenneth S. Marks
                                           Jonathan J. Ross
10                                         Johnny W. Carter
                                           David M. Peterson
11                                         SUSMAN GODFREY L.L.P.
                                           1000 Louisiana Street, Suite 5100
12                                         Houston, Texas 77002
                                           Telephone:  (713) 651-9366
13                                         Facsimile:  (713) 654-6666
14                                         Email:  lgodfrey@sumangodfrey.com
                                                   kmarks@susmangodfrey.com
15                                                 jross@susmangodfrey.com
                                                   jcarter@susmangodfrey.com
16                                                 dpeterson@susmangodfrey.com

17

18                                         Parker C. Folse III
                                           Rachel S. Black
19                                         Jordan Connors
                                           SUSMAN GODFREY L.L.P.
20                                         1201 Third Avenue, Suite 3800
                                           Seattle, Washington 98101-3000
21                                         Telephone:  (206) 516-3880
22                                         Facsimile:  (206) 516-3883
                                           Email:    pfolse@susmangodfrey.com
23                                                   rblack@susmangodfrey.com
24                                                   jconnors@susmangodfrey.com

25                                         *Attorneys for Plaintiff Alfred H. Siegel, as Trustee of the*
                                           *Circuit City Stores, Inc. Liquidating Trust*

26

27

28

60698985.1

DIRECT ACTION PLAINTIFFS' REPLY BRIEF ISO
THEIR OBJECTIONS TO THE SPECIAL MASTER'S
REPORT, ETC. (3:07-CV-05944SC, MDL 1917)

1

2 /s/ Philip J. Iovieno
Stuart Singer
3 BOIES, SCHILLER & FLEXNER LLP
401 East Las Olas Blvd., Suite 1200
4 Fort Lauderdale, FL 33301
Telephone: (954) 356-0011
5 Facsimile: (954) 356-0022
Email:    ssinger@bsfllp.com
6

7
Philip J. Iovieno
8 Anne M. Nardacci
BOIES, SCHILLER & FLEXNER LLP
9 10 North Pearl Street, 4th Floor
Albany, NY 12207
10 Telephone: (518) 434-0600
Facsimile: (518) 434-0665
11 Email:    piovieno@bsfllp.com
              anardacci@bsfllp.com
12

13 *Liaison Counsel for Direct Action Plaintiffs and Attorneys
for Plaintiffs Electrograph Systems, Inc., Electrograph*
14 *Technologies, Corp., Office Depot, Inc., Compucom
Systems, Inc., Interbond Corporation of America, P. C.*
15 *Richard & Son Long Island Corporation, Marta
Cooperative of America, Inc., ABC Appliance, Inc., Schultze*
16 *Agency Services LLC on behalf of Tweeter Opco, LLC and
Tweeter Newco, LLC*
17

18

19 /s/ David Martinez
Roman M. Silberfeld (SBN 62783)
20 David Martinez (SBN 19383)
ROBINS, KAPLAN, MILLER & CIRESI LLP.
21 2049 Century Park East, Suite 3400
Los Angeles, CA 90067-3208
22 Telephone: (310) 552-0130
Facsimile: (310) 229-5800
23 Email: rmsilberfeld@rkmc.com
              dmartinez@rkmc.com \
24

25 *Attorneys For plaintiffs Best Buy Co., Inc., Best Buy
Purchasing LLC, Best Buy Enterprise Services, Inc., Best*
26 *Buy Stores, L.P., Bestbuy.com, L.L.C., and Magnolia Hi-Fi,
Inc.*
27

28

DIRECT ACTION PLAINTIFFS' REPLY BRIEF ISO
THEIR OBJECTIONS TO THE SPECIAL MASTER'S
REPORT, ETC. (3:07-CV-05944SC, MDL 1917)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

/s/ David J. Burman
David J. Burman
Cori G. Moore
Nicholas H. Hesterberg
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: (206) 359-8000
Facsimile: (206) 359-9000
Email:    dburman@perkinscoie.com
             cgmoore@perkinscoie.com
             nhesterberg@perkinscoie.com


Jordan S. Bass (Cal. Bar No. 208143)
PERKINS COIE LLP
Four Embarcadero Center, Suite 2400
San Francisco, CA 94111-4131
Telephone: (415) 344.7000
Facsimile: (415) 344.7050
Email:    jbass@perkinscoie.com

*Attorneys for Plaintiff Costco Wholesale Corporation*


/s/ Jason C. Murray
Jason C. Murray (CA Bar No. 169806)
CROWELL & MORING LLP
515 South Flower St., 40th Floor
Los Angeles, CA 90071
Telephone: (213) 622-4750
Facsimile: (213) 622-2690
Email:    jmurray@crowell.com


Jerome A. Murphy (*pro hac vice*)
Astor H.L. Heaven (*pro hac vice*)
1001 Pennsylvania Ave, NW
Washington, DC 20004
Phone (202) 624-2599
Fax (202) 628-5116
Email:    jmurphy@crowell.com
             aheaven@crowell.com

*Counsel for Plaintiff Target Corp.*

DIRECT ACTION PLAINTIFFS' REPLY BRIEF ISO
THEIR OBJECTIONS TO THE SPECIAL MASTER'S
REPORT, ETC. (3:07-CV-05944SC, MDL 1917)

1

2

/s/ Richard Alan Arnold
3
Richard Alan Arnold
William J. Blechman
4
Kevin J. Murray
KENNY NACHWALTER, P.A.
5
201 S. Biscayne Blvd., Suite 1100
Miami, FL 33131
6
Tel: (305) 373-1000
7
Fax: (305) 372-1861
Email: rarnold@knpa.com
8
Email: wblechman@knpa.com
Email: kmurray@knpa.com
9

10
*Counsel for Sears, Roebuck and Co. and Kmart Corp.*

11

12
/s/ Jessica L. Meyer
Jessica L. Meyer, (SBN: 249064)
13
James M. Lockhart *(pro hac vice)*
James P. McCarthy *(pro hac vice)*
14
Kelly G. Laudon *(pro hac vice)*
LINDQUIST & VENNUM PLLP.
15
4200 IDS Center
16
80 South Eighth Street
Minneapolis, MN  55402
17
Telephone: (612) 371-3211
Facsimile: (612) 371-3207
18
Email: jmeyer@lindquist.com
19
        jlockhart@lindquist.com
        jmccarthy@lindquist.com
20
        klaudon@lindquist.com

21
*Attorneys for Plaintiffs John R. Stoebner, As Chapter 7*
22
*Trustee for PBE Consumer Electronics, LLC and related*
*entities; and Douglas A. Kelley, as Chapter 11 Trustee for*
23
*Petters Company, Inc. and Related Entities, and as Receiver*
*for Petters Company, LLC and related entities*
24

25

26

27

28

-22- DIRECT ACTION PLAINTIFFS' REPLY BRIEF ISO THEIR OBJECTIONS TO THE SPECIAL MASTER'S REPORT, ETC. (3:07-CV-05944SC, MDL 1917)