1   William A. Isaacson
    Jennifer Milici
2   BOIES, SCHILLER & FLEXNER LLP
    5301 Wisconsin Ave. NW, Suite 800
3   Washington, D.C.  20015
    Telephone:  (202) 237-2727
4   Facsimile:  (202) 237-6131
    Email:  wisaacson@bsfllp.com
5   Email:  jmilici@bsfllp.com

6   *Liaison Counsel for Direct Action Plaintiffs*
    *Additional Counsel Listed on Signature Page*

7
                    **UNITED STATES DISTRICT COURT**
8                  **NORTHERN DISTRICT OF CALIFORNIA**
                      **SAN FRANCISCO DIVISION**
9

10  In re: CATHODE RAY TUBE (CRT)          Master File No. 3:07-cv-05944-SC (N.D. Cal.)
    ANTITRUST LITIGATION                   MDL No. 1917

11  ────────────────────────────────
    This Document Relates to:             Case No. 11-cv-01656 SC
12                                         Case No. 11-cv-05381 SC
    *Electrograph Systems, Inc., et al. v. Hitachi,*   Case No. 11-cv-05502 SC
13  *Ltd., et al.*, No. 11-cv-01656       Case No. 11-cv-05513 SC
                                          Case No. 11-cv-05514 SC
    *Stoebner, et al. v. LG Electronics, et al.*, No.   Case No. 11-cv-06275 SC
14  11-cv-05381                           Case No. 11-cv-06276 SC
                                          Case No. 11-cv-06396 SC
15  *Siegel v. Hitachi, Ltd., et al.*, No. 11-cv-05502   Case No. 11-cv-06397 SC
                                          Case No. 12-cv-02648 SC
    *Best Buy Co., et al. v. Hitachi, Ltd., et al.*, No.   Case No. 12-cv-02649 SC
16  11-cv-05513
17  *Target Corp., et al. v. Chunghwa Picture*
    *Tubes, Ltd.*, No. 11-cv-05514         **DIRECT ACTION PLAINTIFFS' REPLY**
18                                         **IN SUPPORT OF OBJECTIONS TO THE**
    *Interbond Corporation of America v. Hitachi,*   **REPORT AND RECOMMENDATIONS**
    *et al.*, No. 11-cv-06275              **REGARDING DEFENDANTS' JOINT**
19                                         **MOTION TO DISMISS DIRECT ACTION**
    *Office Depot, Inc. v. Hitachi Ltd., et al.*, No.   **COMPLAINTS**
20  11-cv-06276
21  *CompuCom Systems, Inc. v. Hitachi, Ltd., et*
    *al.*, No. 11-cv-06396                 **Judge:   Hon. Samuel P. Conti**
22                                         **Court:   Courtroom 1, 17th Floor**
    *Costco Wholesale Corp. v. Hitachi, Ltd., et al.*,   **Date:    August 23, 2013**
    No. 11-cv-06397                        **Time:    10:00 a.m.**
23
    *P.C. Richard & Son Long Island Corp., et al.*
24  *v. Hitachi, Ltd., et al.*, No. 12-cv-02648
25  *Schultze Agency Services, LLC v.  Hitachi,*
    *Ltd., et al.*, No. 12-cv-02649
26
27
28
    ────────────────────────────────

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................. iii

INTRODUCTION ......................................................................... 1

ARGUMENT ............................................................................. 3

    I.   The DAPs Have Standing to Pursue Their State Antitrust Claims Under the Laws of Arizona, California, Illinois, Michigan and Washington ............................ 3

        A.   *Associated General Contractors* Does Not Apply to the DAPs' Claims Under Arizona, Illinois and Michigan Law ...................................... 3

        B.   The DAPs' Allegations Meet the 'Antitrust Injury' Requirement of *AGC* ................................................................................. 7

        C.   The Special Master Erred By Failing to Balance the *AGC* Factors ............... 10

        D.   The DAPs Meet The Remaining *AGC* Factors ............................... 10

        E.   Defendants Overreach In Requesting A Dismissal With Prejudice ............... 12

    II.  The DAPs Have Stated Claims Under the Massachusetts Consumer Protection Act ........................................................................ 13

    III.  The DAPs Have Stated Claims Under the Washington Consumer Protection Act ....................................................................................... 14

    IV.  Circuit City Has Adequately Alleged Restitution and Unjust Enrichment Claims Under California Law ................................................... 14

    V.  The Polaroid Plaintiffs Have Adequately Alleged Unjust Enrichment Claims Under Minnesota and California Law ...................................... 17

    VI.  The Special Master's Recommendation to Limit the Direct Action Plaintiffs' Claims Under Nebraska and Nevada Law is Contrary to Nebraska and Nevada Law ..................................................................................... 18

        A.   This Court is Bound by the Decision of the Nebraska Supreme Court Allowing Indirect Purchaser Claims That Predate the 2002 Amendment ........................................................................ 18

        B.   Because the 1999 Amendment to Nevada's Unfair Trade Practices Act Merely Clarified Who May Bring Suit Under the Act, Indirect Purchaser Claims Under Nevada Law Are Not Limited to the Post Amendment Time Frame ................................................................... 21

CONCLUSION ........................................................................... 24

<u>**TABLE OF AUTHORITIES**</u>

**CASES**

*Amarel v. Connell,*
    102 F.3d 1494 (9th Cir. 1997) ........................................................................ 11

*American Ad Mgmt., Inc. v. General Telephone Co. of California,*
    190 F.3d 1051 (9th Cir. 1999) ................................................................. 10, 11

*Ariz. Elec. Power Coop., Inc. v. Berkeley,*
    59 F.3d 988 (9th Cir. 1995) ........................................................................... 18

*Arthur v. Microsoft Corp.,*
    676 N.W.2d 29 (Neb. 2004) ................................................................ 18, 19, 20

*Associated General Contractors of California, Inc. v. California State Council of
    Carpenters,*
    459 U.S. 519 (1983) .................................................................................... 1, 3

*Bunker's Glass Co. v. Pilkington PLC,*
    75 P.3d 99 (Ariz. 2003) ............................................................................... 5, 6

*Butler v. Deutsche Bank Trust Co. Americas,*
    2012 WL 3518560 (D. Mass. Aug. 14, 2012) ............................................... 13

*Castillo v. State,*
    874 P.2d 1252 (Nev. 1994) ..................................................................... 22, 23

*Chrysler Corp. v. Brown,*
    441 U.S. 281 (1979) ...................................................................................... 22

*Consumer Product Safety Comm. v. GTE Sylvania, Inc.,*
    447 U.S. 102 (1980) ...................................................................................... 22

*County of Cook v. Philip Morris, Inc.,*
    817 N.E.2d 1039 (Ill. App. Ct. 2004) ............................................................. 6

*D.R. Ward Const. Co. v. Rohm and Haas Co.,*
    470 F. Supp. 2d 485 (E.D. Pa. 2006) .............................................................. 6

*Datel Holdings Ltd. v. Microsoft Corp.,*
    712 F. Supp. 2d 974 (N.D. Cal. 2010) ............................................................ 8

*Ferrell v. Wyeth-Ayerst Labs., Inc.,*
    No. 1:01-cv-00447-SBB-TSH, 2004 U.S. Dist. LEXIS 15127
    (S.D. Ohio July 1, 2004) ............................................................................... 23

DAPS' REPLY IN SUPPORT OF OBJECTIONS TO
THE R&R REGARDING DEFS' JOINT MOTION TO
DISMISS

iii

Master File No. 3:07-5944-SC
MDL No. 1917

*In re Aftermarket Filters Antitrust Litig.*,
   No. 08 C 4883, 2009 WL 3754041 (N.D. Ill. Nov. 5, 2009) ................................................. 6

*In re Automotive Parts Antitrust Litig.*, No. 12–md–02311, 2013 WL 2456612
   (E.D. Mich. June 6, 2013) ....................................................................................... passim

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
   738 F. Supp. 2d 1011 (N.D. Cal. 2010) ...................................................1, 4, 7, 8

*In re Cathode Ray Tube (CRT) Antitrust Litig.,*
   911 F. Supp. 2d 857 (N.D. Cal. Nov. 29, 2012).............................................. 11

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
   536 F. Supp. 2d 1129 (N.D. Cal. 2008) .................................................................. 4

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
   516 F. Supp. 2d 1072 (N.D. Cal. 2007) ......................................................... 4, 11

*In re Flash Memory Antitrust Litig.*,
   643 F. Supp. 2d 1133 (N.D. Cal. 2009) .................................................... passim

*In re Graphics Processing Units Antitrust Litig.*,
   540 F. Supp. 2d 1085 (N.D. Cal. 2007) ................................................... passim

*In re Optical Disk Drive Antitrust Litig.*,
   No. 3:10–md–2143, 2011 WL 3894376 (N.D. Cal. Aug. 3, 2011) ......................... 4

*In re Pool Products Distribution Market Antitrust Litig.*,
   No. MDL 2328, 2013 WL 2297213 (E.D. La. May 24, 2013) .............................. 5

*In re Potash Antitrust Litig.*,
   667 F. Supp. 2d 907 (N.D. Ill. 2009) ..................................................................... 5

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
   No. 07-MD-01819, 2010 WL 5094289 (N.D. Cal. Dec. 8, 2010)......................... 23

*In re Static Random Access Memory (SRAM) Antitrust Litigation*,
   580 F. Supp. 2d 896 (N.D. Cal. 2008) .................................................................. 17

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   No. M07-1827 SI, 2012 WL 4808447 (N.D. Cal. Oct. 9, 2012).......................... 1, 9

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   No. M07-1827 SI, 2011 WL 3738985 (N.D. Cal. Aug. 24, 2011)................................ 19, 23

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   No. M07-1827 SI, 2011 WL 4345435 (N.D. Cal. Sep. 15, 2011)................................ 14, 16

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   586 F. Supp. 2d 1109 (N.D. Cal. 2008) ........................................................ passim

*Jogani v. Superior Court*,
  165 Cal. App. 4th 901 (2008) ........................................................................ 15

*Kanne v. Visa U.S.A., Inc.*,
  723 N.W.2d 293 (Neb. 2006) ....................................................................... 19

*Keilholtz v. Superior Fireplace Co.*,
  No. C 08-00836, 2009 WL 839076 (N.D. Cal. Mar. 30, 2009) .......................... 16

*Knevelbaard Dairies v. Kraft Foods, Inc.*,
  232 F.3d 979 (9th Cir. 2000) ......................................................................... 7

*Kona Enters., Inc. v. Estate of Bishop*,
  229 F.3d 877 (9th Cir. 2000) ....................................................................... 18

*Kriz v. Buckeye Petroleum Co., Inc.*,
  701 P.2d 1182 (Ariz. 1985) ........................................................................... 5

*Lew v. Countrywide Financial Corp.*,
  No. C-08-1993 SC, 2009 WL 1384975 (N.D. Cal. Feb. 24, 2009) .................... 18

*Lorenzo v. Qualcomm, Inc.*,
  603 F. Supp. 2d 1291 (S.D. Cal. 2009) ........................................................... 8

*Los Angeles Memorial Coliseum Com'n v. Nat'l Football League*,
  791 F.2d 1356 (9th Cir. 1986) ..................................................................... 10

*Luscher v. Bayer AG*,
  No. CV-2004-014835 (Ariz. Super. Ct. Sep. 14, 2005) ..................................... 5

*McBride v. Boughton*,
  123 Cal. App. 4th 379 (2004) ....................................................................... 15

*Melchior v. New Line Prods., Inc.*,
  106 Cal. App. 4th 779 (2003) ....................................................................... 15

*Munoz v. MacMillan*,
  195 Cal. App. 4th 648 (2011) ....................................................................... 15

*Nordberg v. Trilegiant Corp.*,
  445 F. Supp. 2d 1082 (N.D. Cal. 2006) ............................................... 14, 15, 16

*O'Regan v. Arbitration Forums, Inc.*,
  121 F.3d 1060 (7th Cir. 1997) ....................................................................... 6

*People v. Reid*,
  592 N.W.2d 767 (Mich. Ct. App. 1999) ........................................................... 5

*Pooler v. R.J. Reynolds Tobacco Co.*,
  No. CV00-02674, 2001 WL 403167 (D. Nev. Apr. 4, 2001) ...................... 21, 22, 23

*Powell v. Ocwen Loan Servicing, LLC*,
    No. 2010-2069-D, 2012 WL 345665 (Mass. Super. Ct. Jan. 04, 2012) ................................ 13

*Pyramid Lake Paiute Tribe of Indians v. State Engineer*,
    No. 55437, 2011 WL 4390009 (Nev. Sep. 20, 2011) ........................................................ 23

*Santa Cruz Med. Clinic v. Dominican Santa Cruz Hosp.*,
    No. C93 20613 RMW, 1994 WL 619288 (N.D. Cal. Oct. 26, 1994) .................................... 10

*Smith v. Crown Fin. Servs. of America*,
    890 P.2d 769 (Nev. 1995) ...................................................................................... 21

*Stark v. Visa U.S.A., Inc.*,
    No. 03-055030-CZ, 2004 WL 1879003 (Mich. Cir. Ct. July 23, 2004) ............................ 4, 5

*Whitesell Int'l Corp. v. Whitaker*,
    No. 05-518716-CZ, 2007 WL 6741070 (Mich. Cir. Ct. July 31, 2007) ................................. 5

### STATUTES

ARIZ.REV.STAT § 44-1412 ............................................................................................. 6

MASS. GEN. LAWS CH. 93A § 2 ........................................................................................ 13

NEB. REV. STAT. §§ 59-1603, 59-1604, 59-1609 ..................................................... 20

NEB. REV. STAT. § 59-821 .......................................................................................... 20

NRS 534.090 .............................................................................................................. 23

WASH. REV. CODE § 19.86.920 ................................................................................... 14

### RULES

Ariz. R. Civ. App. P. 17 A.R.S. ...................................................................................... 5

Michigan Court Rule 7.215 ........................................................................................... 5

MCR 7.215(C)(1) .......................................................................................................... 5

Pursuant to the Stipulation and Order entered by this Court [Dkt. No. 1666] (May 9, 2013), the Direct Action Plaintiffs ("DAPs") submit the following reply in support of their objections to the Special Master's Report and Recommendations Regarding Defendants' Motions to Dismiss Direct Action Complaints [Dkt. No. 1664] (May 2, 2013) ("R&R").

## INTRODUCTION

Defendants' Joint Motion to Adopt [Dkt No. 1752] makes no new arguments and fails to rebut the DAPs' key arguments in support of their Objections [Dkt No. 1708]. The fact remains that the portions of the R&R to which the DAPs object contradict the Court's prior ruling in this litigation, the rulings of other courts in this district in factually indistinguishable cases, and the law of the relevant states. The Court should follow the applicable precedent and deny the Defendants' Joint Motion to Dismiss [Dkt No. 1317] in its entirety.

First, based on this Court's decision in the Indirect Purchaser Plaintiff ("IPP") action addressing *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519 (1983) ("*AGC*"), the DAPs have standing to assert claims under the antitrust laws of the states of California, Washington, Arizona, Michigan and Illinois. *In re CRT Antitrust Litig.*, 738 F. Supp. 2d 1011, 1023-24 (N.D. Cal. 2010) [Dkt. No. 665]. Defendants assert that they have made a *prima facie* showing that the standing test set forth in *AGC* applies to the laws of Arizona, Michigan and Illinois. This is not the case. Quite simply, Defendants cannot credibly distinguish this Court's prior ruling on this point and also fail to cite any sound authority in support of their argument that *AGC* applies to the laws of these three states.

Moreover, even assuming *AGC* applied, the DAPs have standing to assert all of the state law claims at issue. The DAPs' allegations are essentially identical to those in the IPP complaint, which this Court has already ruled are sufficient under *AGC*. 738 F. Supp. 2d at 1024. Moreover, courts in the Ninth Circuit have embraced standing in factually indistinguishable cases. *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1120-24 (N.D. Cal. 2008) ("*LCD I*"); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M07–1827 SI, 2012 WL 4808447, at *2 (N.D. Cal. Oct. 9, 2012) ("*LCD II*"); *In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1154 (N.D. Cal. 2009); *In re Graphics Processing Units*

*Antitrust Litig.,* 540 F. Supp. 2d 1085, 1098 (N.D. Cal. 2007) ("*GPU II*"); *see also In re Automotive Parts Antitrust Litig.*, No. 12–md–02311, 2013 WL 2456612, at \*13-18 (E.D. Mich. June 6, 2013).  By contrast, the cases cited by Defendants are inapposite.  There is simply no meaningful dispute that the DAPs have standing to bring these state law claims.

Second, with respect to the DAPs' Massachusetts law claims, Defendants conspicuously fail to make any attempt to rebut the DAPs' showing that a pre-suit demand letter was not required for 37 of 39 Defendants, yet they continue to demand the dismissal of the DAPs' Massachusetts claims based upon an asserted failure to serve such demand letters.  Defendants should withdraw their motion with respect to the DAPs' Massachusetts law claims; it has no merit.

Third, with respect to the DAPs' Washington state law claims, the state's harmonization provision governs and the statute must be construed in accordance with federal antitrust laws. Thus, just as the DAPs undisputedly have standing to pursue their federal claims, so too do they have standing to pursue their Washington state law claims.

Fourth, with respect to Circuit City's claims for unjust enrichment and restitution under California law, Defendants blatantly mischaracterize the relevant authority.  There is no dispute that such claims are permissible under California law, despite Defendants' efforts to suggest otherwise.

Fifth, with respect to the Polaroid Plaintiffs' claims for unjust enrichment under California and Minnesota law, Defendants attempt to elevate form over substance by requiring the Polaroid Plaintiffs to replead in order to specifically reference that their fifth claim for relief arises under the laws of California and Minnesota.  This is unnecessary "make work."

Sixth, with respect to the DAPs' claims under Nebraska and Nevada law, Defendants ignore binding precedent from Nebraska's Supreme Court, as well as the legislative history of the Nevada statute and the most recent Nevada court decision that addresses it. Under the relevant authority, the amendments to both state statutes apply to the DAPs' pre-amendment indirect purchaser claims.

For all of the above reasons, Defendants' Joint Motion to Dismiss should be denied.

## ARGUMENT

I.  **THE DAPS HAVE STANDING TO PURSUE THEIR STATE ANTITRUST CLAIMS UNDER THE LAWS OF ARIZONA, CALIFORNIA, ILLINOIS, MICHIGAN AND WASHINGTON.**

Multiple courts in this district—including this Court in this litigation—have already ruled on the very issue presented by Defendants' motion to dismiss and held that the plaintiffs had standing.  In direct conflict with this Court's prior ruling and the rulings of other courts in this district, the Special Master recommended the dismissal of the DAPs' claims under the laws of Arizona, California, Illinois, Michigan and Washington.  Defendants urge this Court to adopt the Special Master's recommendation, but in support of their argument, Defendants cite to cases with no precedential value, as well as precedent that has nothing to do with the standing of indirect purchasers.  Based on this Court's prior ruling in the IPP action, as well as the decisions of other courts in this district, the DAPs unquestionably have standing to assert these state law claims.

**A.** ***Associated General Contractors*** **Does Not Apply to the DAPs' Claims Under Arizona, Illinois and Michigan Law.**

Case law in this Circuit is clear that the test to determine standing set forth in *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519 (1983) ("*AGC*"), is only applicable to state antitrust claims when there is a "clear directive" from the state legislature or high court adopting *AGC*.  *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1120-24 (N.D. Cal. 2008) ("*LCD I*").  There is no such "clear directive" from the legislatures or the courts of Arizona, Illinois or Michigan, and Defendants cite none.  Yet Defendants argue that the Special Master was correct in finding that "existing state law, whether it is by the highest court or by an intermediate court, is the applicable authority." R&R at 11 (emphasis in original).  Indeed, Defendants go further, arguing that a federal court must "look for guidance to state intermediate appellate and *other court decisions*." Defendants' Joint Motion to Adopt Portions of the Report and Recommendations Regarding Defendants' Motion to Dismiss Direct Action Complaints (June 28, 2013) [Dkt No. 1752] ("Def. Motion to Adopt") at 7 (emphasis added).  The "other court decisions" that Defendants urge this

- 3 -

1  Court to consider include questionable unpublished decisions, including decisions by state courts

2  that, under explicit state court rules, cannot even be considered by other courts as precedent.

3      The law of this Circuit and of this case requires more.  *In re Cathode Ray Tube (CRT)*

4  *Antitrust Litig.*, 738 F. Supp. 2d 1011, 1023 (N.D. Cal. 2010) [Dkt. No. 665] (finding the *AGC*

5  factors "apply to establish standing under Iowa, Nebraska and California antitrust laws" but not

6  to other repealer states, including Arizona and Michigan, relying upon the reasoning of another

7  court in this district which found *AGC* inapplicable where there is no persuasive authority from

8  the state's highest or intermediate courts) (*citing In re Flash Memory Antitrust Litig.*, 643 F.

9  Supp. 2d 1133, 1151 (N.D. Cal. 2010) (finding no persuasive authority in *inter alia*, Arizona or

10  Michigan, that would lead the court to determine that the states' highest courts would apply the

11  *AGC* factors; without such persuasive authority the court cannot guess what the state's highest

12  court would do)); *see also In re Graphics Processing Units Antitrust Litig.*, 540 F. Supp. 2d

13  1085, 1097 (N.D. Cal. 2007) ("*GPU II*") (noting that "some" appellate courts in one state "have

14  used the *AGC* test . . . [but t]his is not the same as showing that *AGC* has been adopted"); *In re*

15  *TFT-LCD*, 586 F. Supp. 2d at 1120-24 (to determine if state has adopted *AGC*, court needs clear

16  directive from state legislature or high court); *In re Optical Disk Drive Antitrust Litig.*, No. 3:10–

17  md–2143, 2011 WL 3894376, at *11-12 (N.D. Cal. Aug. 3, 2011) (finding plaintiff had standing

18  based upon reasoning in *In re TFT-LCD*) (dismissing on other grounds with leave to replead).[1]

19      Moreover, the cases cited by Defendants to make their "*prima facie*" case that the *AGC*

20  factors should be applied to the Arizona, Illinois and Michigan claims are either cases with no

21  precedential authority or cases that have nothing whatsoever to do with indirect purchasers, or

22  both.  For instance, Defendants cite two unpublished Michigan circuit court opinions as authority

23  for the proposition that Michigan courts have or would adopt the reasoning of *AGC*.[2]  Neither

---

[1] Rather than following the law of this case, or the other cases cited above, Defendants (and ultimately the Special Master) focus on the decisions in *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 516 F. Supp. 2d 1072, 1095 (N.D. Cal. 2007) ("*DRAM I*") and 536 F. Supp. 2d 1129 (N.D. Cal. 2008) ("*DRAM II*").  However, as discussed in the DAPs' Objections, *DRAM* is not only factually distinguishable, but also, at best, an outlier, both inside and outside of this Circuit.  Direct Action Plaintiffs' Objections to Report and Recommendations Regarding Defendants' Joint Motion to Dismiss Direct Action Complaints [Dkt No. 1708] (May 31, 2013) ("DAP Objections") at 4, 7 & n.4, 12 n.16.

[2] Defendants cite *Stark v. Visa U.S.A., Inc.*, No. 03-055030-CZ, 2004 WL 1879003 (Mich. Cir.

1    case has any precedential authority. Michigan Court Rule 7.215 ("An unpublished opinion is not

2    precedentially binding . . . ."); *People v. Reid*, 592 N.W.2d 767 (Mich. Ct. App. 1999) ("MCR

3    7.215(C)(1) expressly provides that an unpublished opinion 'is not precedentially binding' . . .

4    [t]hus, absent the [Michigan] Supreme Court expressly adopting all or part of an unpublished

5    opinion of this Court, it would be inappropriate to consider any part of such an unpublished

6    opinion as substantively binding in an unrelated case").[3]

7         Defendants' citation to cases in Arizona and Illinois is similarly inadequate and

8    unpersuasive. In Arizona, Defendants rely heavily upon *Luscher v. Bayer AG*, No. CV-2004-

9    014835 (Ariz. Super. Ct. Sep. 14, 2005), *see* Def. Motion to Adopt at 5-6, an unpublished trial

10   court memoranda decision. As in Michigan, however, unpublished decisions "shall not be

11   regarded as precedent nor cited in any court . . . ." Rule 28(c), ARIZ. R. CIV. APP. P. 17 A.R.S.;

12   *Kriz v. Buckeye Petroleum Co., Inc.*, 701 P.2d 1182, 1185 n.3 (Ariz. 1985) (declining to consider

13   an unpublished decision submitted by counsel, as such consideration would be "inappropriate

14   under our rules"). Moreover, both *Luscher* and Defendants ignore clear precedent from the

15   Supreme Court in Arizona that application of the *AGC* factors is not necessary to determine that

16   indirect purchasers have standing to pursue state antitrust law claims. *See Bunker's Glass Co. v.

17   Pilkington PLC*, 75 P.3d 99, 133 (Ariz. 2003) (declining to apply *AGC*).[4] *Bunker's Glass* not

18   _____

19   Ct. July 23, 2004) and *Whitesell Int'l Corp. v. Whitaker*, No. 05-518716-CZ, 2007 WL 6741070
     (Mich. Cir. Ct. July 31, 2007) (*See* Def. Motion to Adopt at 4, fn. 1).

20   [3] Furthermore, neither case involved an indirect purchaser action nor has any application here. Instead, *Stark* concerned allegations that credit card companies had illegally tied their credit and debit card services, resulting in excessive service charges to merchants on debit card services.

21   *Stark*, 2004 WL 1879003, at *1. The *Stark* court found that the plaintiff, a consumer, was not an indirect purchaser at all, since he did not repurchase from merchants or other middlemen the

22   allegedly restrained debit card services that defendants provided to merchants. Thus, the court found that the plaintiff was actually a "non-purchaser" of debit card services and, for that reason,

23   regardless of whether *AGC* applied or not, he did not have standing. *Id.* at *4; *see also In re Potash Antitrust Litig.*, 667 F. Supp. 2d 907, 943-44 (N.D. Ill. 2009) (finding that *Stark* was not

24   an "authoritative judicial or legislative source" and declining to apply *AGC*). Similarly, *Whitesell* was not an indirect purchaser action, but rather an attempted monopolization case

25   brought by an individual claiming that the defendant, his former employer and current competitor, had attempted to drive him out of business by bringing bogus trade secret claims

26   against him, thereby violating the Michigan Antitrust Reform Act. *Whitesell*, 2007 WL 6741070. The court in Whitesell also applied the *AGC* factors without analysis, citation or

27   explanation. *Id.*
     [4] Other courts have also found the *Luscher* decision to be unpersuasive. *In re Pool Products

28   Distribution Market Antitrust Litig.*, No. MDL 2328, 2013 WL 2297213, *9-10 (E.D. La. May 24, 2013) (rejecting the reasoning of *Luscher* and declining, based upon *Bunker's Glass*, to apply

only supports the DAPs' argument that *AGC* does not apply here, it also rejects Defendants' argument that a state's harmonization provision can be read to support the application of *AGC* in the absence of court authority.   Finding that Arizona's harmonization provision is "permissive," not mandatory, Arizona's Supreme Court held in *Bunker's Glass* that Arizona state courts need "not read the federal guidance clause [of Ariz.Rev.Stat § 44-1412] as manifesting a legislative intent to rigidly follow federal precedent on every issue of antitrust law regardless of whether differing concerns and interests exist in the state and federal systems." *Id.* at 102.

Defendants' "*prima facie*" case for applying the *AGC* factors to the Illinois claims is equally flawed.  Neither of the cases cited by Defendants involved the application of the *AGC* factors to determine the standing of indirect purchasers.  *See County of Cook v. Philip Morris, Inc.*, 817 N.E.2d 1039, 1045 (Ill. App. Ct. 2004); *O'Regan v. Arbitration Forums, Inc.*, 121 F.3d 1060 (7th Cir. 1997).   In fact, *O'Regan* does not even mention *AGC* or its factors and *Philip Morris* merely references two of the *AGC* factors in the context of a suit claiming defendants were part of a conspiracy to cover up the effects of smoking.  *Philip Morris* did not hold that *AGC* factors applied in that case – or in any other state antitrust case.

In contrast, another Illinois court determined that *AGC* is inapplicable under Illinois law where the case "involve[s] horizontal price fixing and Direct and Indirect Purchasers down a chain of supply." *In re Aftermarket Filters Antitrust Litig.*, No. 08 C 4883, 2009 WL 3754041, *7 (N.D. Ill. Nov. 5, 2009).  The court refused to apply the *AGC* factors, finding "*AGC* was obviously never intended to apply" to such a claim.  *Id.*

The Special Master erred when he found that Defendants' citation to these cases demonstrated a *prima facie* case that *AGC* applies to state antitrust claims in Arizona, Illinois or Michigan.  The cited cases are not precedential authority and, in many cases, have nothing to do with the antitrust standing of indirect purchasers.  Moreover, as set forth above, the Special Master's recommendation conflicts with the ruling of this Court in the IPP action and the rulings

the *AGC* factors to determine whether an indirect purchaser has standing); *D.R. Ward Const. Co. v. Rohm and Haas Co*., 470 F. Supp. 2d 485, 497 (E.D. Pa. 2006) ("notwithstanding the *Luscher* decision, this Court predicts that the Arizona Supreme Court would apply its traditional standing approach, rather than an *AGC* analysis").

1    of other courts in this district in factually indistinguishable cases.  Thus, this Court should apply

2    its decision in *In re CRT*, 738 F. Supp. 2d at 1023, to reject Defendants' arguments and find that

3    the DAPs have standing to pursue their state law claims.

4              **B.   The DAPs' Allegations Meet the 'Antitrust Injury' Requirement of *AGC*.**

5              Even assuming that any of the DAPs' state antitrust claims are subject to the *AGC*

6    analysis, the DAPs' allegations more than meet the standard.  Defendants resort to obfuscation in

7    an attempt to convince this Court to find that that DAPs lack antitrust standing even though the

8    DAPs' allegations are virtually identical to the IPPs' allegations, which this Court previously

9    upheld.  This Court should not be misled.  The DAPs have alleged a classic antitrust injury by

10   pleading that they paid supra-competitive prices due to price-fixing by members of a cartel.  This

11   Court should reject the Special Master's recommendation and hold, as it did in the IPP action,

12   that the DAPs have standing to pursue these state law claims.

13             Contrary to Defendants' assertions, courts in the Ninth Circuit have embraced antitrust

14   standing in cases involving component parts and their corresponding finished products.  *See In re*

15   *Flash Memory*, 643 F. Supp. 2d at 1154 (indirect purchaser allegations were sufficient to find

16   antitrust standing where plaintiffs claimed flash memory could be "purchased as a stand-alone

17   item or incorporated as a central component of finished products"); *In re TFT-LCD*, 586 F. Supp.

18   2d at 1123 (finding antitrust standing for indirect purchasers where "Plaintiffs also allege the

19   LCD panels 'have no independent utility, and have value only as components of other products,

20   such as TVs, computer monitors, and laptops.  The demand for LCD panels thus directly derives

21   from the demand for such products."); *In re GPU II*, 540 F. Supp. 2d at 1098 ("Indirect

22   purchasers have, however, alleged that GPUs are separate components of a computer . . . ."); *see*

23   *also Knevelbaard Dairies v. Kraft Foods, Inc*., 232 F.3d 979, 989 (9th Cir. 2000) (while

24   defendants "contend that they are in one market (cheese) while the plaintiffs are in another (fluid

25   milk) . . . the complaint's allegations unmistakably place all parties in the milk market – the

26   defendants as buyers and the plaintiffs as sellers . . . .").

27             Likewise, in a recent decision, the *In re Automotive Parts Antitrust Litigation* court

28   rejected the very argument that Defendants make here.  2013 WL 2456612, at *13-18.  The

1   defendants in *In re Automotive Parts* had argued that the plaintiffs did not participate in the

2   relevant market because they purchased vehicles containing price-fixed wire harness systems

3   ("WHS"), rather than the WHS standing alone.  *Id.* at *15.  They further noted that the plaintiffs

4   alleged price fixing related to WHS, and not the finished products containing the WHS.  *Id.*  The

5   court denied the defendants' motion to dismiss on this ground, finding sufficient for standing

6   purposes the plaintiffs' allegations that the market for WHS and the market for vehicles were

7   "inextricably linked and intertwined" and that WHS have no independent utility.  *Id.* at *15-16

8   (*citing In re TFT-LCD*, 586 F. Supp. 2d at 1123; *In re GPU II*, 540 F. Supp. 2d at 1098).

9   　　　And the DAPs have not, as Defendants allege, simply invoked the phrase "inextricably

10   linked and intertwined"[5] to show that they are in the same market as the direct purchasers, but

11   have alleged specific facts that show that there would be no market for CRTs, absent the market

12   for CRT Products.  As this Court found in its previous ruling:

13   　　　[T]he Indirect Complaint alleges that Plaintiffs paid "higher prices for CRT
　　　Products than they would have paid in the absence of Defendants' conspiracy."  It
14   　　　alleges that the "price of CRT Products is directly correlated to the price of CRTs."
　　　It alleges that the "market for CRTs and the market for CRT Products are . . .
15   　　　inextricably linked and cannot be considered separately."  Indirect Purchaser
　　　Plaintiffs allege that Defendants monitored the prices of televisions and computer
16   　　　monitors in order to police their price fixing agreement related to CRTs.  They
　　　point out that CRTs account for approximately sixty per cent of the cost of
17   　　　manufacturing a computer monitor, and a slightly smaller percentage of the cost of
　　　manufacturing a television, and as such it is easier to determine how much money
18   　　　was being passed through to purchasers of the finished products.  CRTs are discrete
　　　components that can easily be traced.  ***These allegations are sufficient to find the***
19   　　　***injury alleged in the Indirect Complaint is the kind antitrust laws were designed***
　　　***to rectify.***
20

21   *In re CRT*, 738 F. Supp. 2d at 1024 (emphasis added) (internal citations omitted).

22   　　　Defendants attempt to distinguish the Court's IPP decision by parsing the DAPs'

23

24   ───────────────
[5] The cases cited by Defendants for the proposition that some courts have rejected claims that are
25   allegedly "inextricably intertwined" are inapposite.  *See Lorenzo v. Qualcomm, Inc.*, 603 F.
Supp. 2d 1291, 1301 (S.D. Cal. 2009); *Datel Holdings Ltd. v. Microsoft Corp.*, 712 F. Supp. 2d
26   974 (N.D. Cal. 2010).  Neither case involves component parts or price fixing.  The plaintiffs in
*Lorenzo* were consumers alleging that they paid more for cell phones because Qualcomm
27   charged supra-competitive patent licensing fees to manufacturers of chipsets used in cell phones.
603 F. Supp. 2d at 1301.  Similarly, in *Datel*, the plaintiff was a vendor in the market for third
28   party gaming accessories and claimed that Microsoft was using its dominance in the online
gaming market to make the plaintiff's third party accessories incompatible or obsolete.  712 F.
Supp. 2d at 993-994.

allegations.  Specifically, Defendants claim the DAPs have not alleged "that the cost or price of standalone CRT tubes are components that 'can easily be traced' through relevant distribution channels, or that standalone CRT tubes account for a specific percentage of the cost of manufacturing the finished product."  Def. Motion to Adopt at 12.  But Defendants ignore that the DAPs have alleged:

> CRTs are identifiable, discrete physical objects that do not change form or become an indistinguishable part of a CRT Product. Thus, CRTs follow a physical chain from Defendants through manufacturers of CRT Products sold to Plaintiffs[6] . . . . OEMs and others passed on to their customers, including [the DAPs], the overcharges caused by Defendants' conspiracy.[7]

Because CRTs can be physically traced through the supply chain, so can their prices and the overcharges.  More importantly, as were similar allegations in *Flash Memory*, *LCD*, *GPU*, and *Automotive Parts*, the DAPs' allegations are "adequate to show that there is a chain of causation between Defendants' allegedly anticompetitive conduct and Plaintiffs' injury," which is the overpayment for finished products containing CRTs.  *See In re Flash Memory*, 643 F. Supp. 2d at 1155; *see also LCD I*, 586 F. Supp. 2d at 1123 ("Plaintiffs also allege the LCD panels 'have no independent utility, and have value only as components of other products, such as TVs, computer monitors, and laptops.  The demand for LCD panels thus directly derives from the demand for such products . . . ."); *LCD II*, 2012 WL 4808447, at *2 ("plaintiffs have presented evidence that the markets for LCD products . . . and LCD panels are inextricably linked; that LCD panels are discrete components of LCD products; that they have no independent utility; and that almost no demand exists for them outside of the demand for LCD products"); *GPU II*, 540 F. Supp. 2d at 1098 ("Indirect purchasers have, however, alleged that GPUs are separate components of a computer . . . ."); *In re Automotive Parts*, 2013 WL 2456612, at *16 (Plaintiffs "have alleged that . . . the price-fixed products remain unchanged after incorporation.  They further allege that [WHS] had no independent utility and that the

---

[6] Electrograph Compl. ¶¶ 95, 226; *see also* CompuCom Compl. ¶¶ 85, 212; Circuit City Compl. ¶¶ 87, 218; P.C. Richard Compl. ¶¶ 89, 216; Office Depot Compl. ¶¶ 84, 211; Costco Compl. ¶¶ 69, 70; Target Amended Compl. ¶¶ 103, 229.
[7] Electrograph Compl. ¶ 225; *see also* CompuCom Compl. ¶¶ 208, 211; Costco Compl. ¶¶ 157, 184; Office Depot Compl. ¶¶ 207, 210; P.C. Richard Compl. ¶¶ 212, 215; Circuit City Compl. ¶¶ 214, 217; Polaroid Compl. ¶¶ 120, 185; Target Amended Compl. ¶¶ 225, 228.

1  demand for vehicles creates the demand for [WHS]").

2  **C.  The Special Master Erred By Failing to Balance the *AGC* Factors.**

3  It is black letter law that the *AGC* factors must be balanced.  *E.g., Los Angeles Memorial*

4  *Coliseum Com'n v. Nat'l Football League*, 791 F.2d 1356, 1364 (9th Cir. 1986); *American Ad*

5  *Mgmt., Inc. v. General Telephone Co. of California*, 190 F.3d 1051, 1055 (9th Cir. 1999)

6  ("Generally, no single factor is decisive"); *Santa Cruz Med. Clinic v. Dominican Santa Cruz*

7  *Hosp.*, No. C93 20613 RMW, 1994 WL 619288, *2 (N.D. Cal. Oct. 26, 1994) ("No single factor

8  is decisive").  As the Ninth Circuit stated in *Los Angeles Memorial Coliseum*:

9
10  > Appellants seek to persuade us, by focusing upon two of [the *AGC*] factors in
   > particular, that the Raiders and the Coliseum lack antitrust standing to recover
11  > treble damages from the NFL . . . In basing their argument upon only some of the
   > factors, appellants implicitly assume that a favorable finding on each and every
12  > one of the [*AGC*] factors is a necessary precondition to a finding of antitrust
   > standing.  *We reject any such implication.*  Most cases will find some factors
13  > tending in favor of standing (to a greater or lesser degree), and some against (also
   > in varying degrees), and a court may find standing if the balance of factors so
14  > instructs.

15  *Los Angeles Memorial Coliseum,* 791 F.2d at 1363 (emphasis added).

16  Similar to Defendants here, the appellants in *Los Angeles Memorial Coliseum* attempted

17  to persuade the court to consider two of the *AGC* factors, the nature of the injury suffered by

18  plaintiffs and the directness of the injury, as dispositive.  *Id.*  None of the cases cited by

19  Defendants stands for the proposition that a court may decide standing based upon the first *AGC*

20  factor alone, or on any one or two of the factors, and it was error for the Special Master to do so.

21  **D.  The DAPs Meet The Remaining *AGC* Factors.**

22  Defendants essentially argue that the DAPs cannot satisfy the remaining AGC factors[8]

23  because Defendants believe the DAPs have not met the first *AGC* factor.  Defendants are wrong

24  on both counts.

25  First, the DAPs have met the first factor as outlined above and in the DAPs' opening

26  brief.  Second, the directness factor is met when a plaintiff's injury is the direct result of

27  ─────────────

28  [8] The remaining AGC factors are: (1) the directness of the injury; (2) the speculative nature of
    the harm; (3) the risk of duplicative recovery; and (4) the complexity in apportioning damages.
    *Am. Ad Mgmt.*, 190 F.3d at1054.

1  defendants' anticompetitive activity.  *Am. Ad Mgmt.*, 190 F.3d at 1058.  The supra-competitive

2  prices paid by the DAPs resulted directly from Defendants' illegal conspiracy to artificially

3  inflate CRT prices.[9]  At the pleading stage, it is enough that the DAPs have alleged that the CRT

4  is a discrete component and it can be traced through the distribution chain.  *See GPU II*, 540 F.

5  Supp. 2d at 1098.  <u>Third</u>, the DAPs have adequately alleged that the overcharges paid by OEMs

6  (including Defendants' OEMs) for CRTs were passed on to the DAPs and that the nature of the

7  CRT as a discrete physical object makes it easy to follow a physical chain from Defendants to

8  the OEMs to the DAPs.[10]  *In re Flash Memory*, 643 F. Supp. 2d at 1155; *see also In re TFT-LCD*

9  *I*, 586 F. Supp. 2d at 1124 (finding that "plaintiffs have sufficiently alleged that overcharges are

10  passed on to consumers, and that such overcharges can be traced through the relatively short

11  distribution chain"); *In re Automotive Parts*, 2013 WL 2456612, at *16.  <u>Fourth and Fifth</u>,

12  duplicative recovery concerns are generally inapposite in the context of indirect purchaser state

13  antitrust claims and there is little risk of duplicative recovery.  *In re Flash Memory*, 643 F. Supp.

14  2d at 1156; *In re DRAM I*, 516 F. Supp. 2d at 1093.  Defendants claim that direct purchasers of

15  CRTs (which include their own OEMs) are the only proper plaintiffs, even though the OEMs

16  passed on their overcharges to the DAPs.  This is not the law in this Circuit, *id.*, or of the relevant

17  states.[11]     Moreover, because CRTs can be traced through the distribution chain, the

18

19  [9]  *E.g.*, Electrograph Compl. ¶¶ 136, 224-225; Target Amended Compl. ¶¶ 144, 227-228;
    CompuCom Compl. ¶¶ 133, 210-211; Costco Compl. ¶¶ 108, 157-159, 183-84; Office Depot
20  Compl. ¶¶ 125, 209-210; P.C. Richard Compl. ¶¶ 130, 214-215; Circuit City Compl. ¶¶ 128,
    216-217; Polaroid Compl. ¶¶ 120; 184-185, 199.

21  [10]  *E.g.,* Electrograph Compl. ¶ 226; Target Amended Compl. ¶ 229; CompuCom Compl. ¶ 212;
    Costco Compl. ¶ 70; Office Depot Compl. ¶ 211; P.C. Richard Compl. ¶ 216; Circuit City
22  Compl. ¶ 218; *see also* Polaroid Compl. ¶ 120 ("Defendants ensured that price increases for
    CRTs were passed on to indirect purchasers of CRT Products.").

23  [11]  Indeed, the argument that more directly injured plaintiffs exist is merely a restatement of the
    *Illinois Brick* rule that the *Illinois Brick* repealer states have rejected: in an indirect case -- there
24  are always "more direct" purchasers – it is inherent in the fact that the plaintiffs are "indirect"
    purchasers.  But the repealer states have rejected the rule requiring that the most direct plaintiff is
25  the party that has standing.  Moreover, as this Court acknowledged in its decision concerning
    finished product purchasers' standing to bring federal claims, *In re Cathode Ray Tube (CRT)*
26  *Antitrust Litig.*, 911 F. Supp. 2d 857 (N.D. Cal. Nov. 29, 2012) [Dkt. No. 1470], OEMs with
    ownership or control relationships with the Defendants are unlikely to vindicate the purposes of
27  the antitrust laws by bringing suit against Defendants – the purchasers from these OEMs and
    other injured parties downstream are left as the sole plaintiffs for vindication.  In this case, the
28  DAPs, like the IPPs, are "an identifiable class of persons whose self interest" motivates them to
    sue to vindicate "the public interest in antitrust enforcement."  *See Amarel v. Connell*, 102 F.3d
    1494, 1513 (9th Cir. 1997), while the captive OEMs are not.

1    apportionment of damages will not be complex.

2        All of the *AGC* factors weigh in favor of finding that the DAPs have antitrust standing.

3    This Court should follow its prior ruling and the other courts in this district that have found such

4    standing in nearly identical circumstances, and rule that the DAPs have antitrust standing.

5                **E.  Defendants Overreach In Requesting A Dismissal With Prejudice.**

6        Defendants erroneously claim that because the DAPs do not allege a conspiracy to fix

7    prices in CRT Products, it would be futile for the DAPs to replead if the Court dismisses the

8    DAPs' claims.  This claim rests on a fundamental misapprehension shared by both Defendants

9    and the Special Master.  Whether the DAPs have sufficiently pled antitrust standing has never

10    depended upon allegations that the CRT Products themselves were price-fixed.  Rather, it rests

11    on the DAPs' allegations that the markets for CRTs and CRT Products were inextricably linked

12    and intertwined.  This Court found that the IPPs' allegations in this regard were adequate to

13    survive a motion to dismiss.  As outlined above, other courts in this district have also found such

14    allegations adequate to demonstrate antitrust standing.  *See In re Flash Memory*, 643 F. Supp. 2d

15    at 1155; *In re TFT-LCD*, 586 F. Supp. 2d at 1123; *In re GPU II*, 540 F. Supp. 2d at 1098; *see*

16    *also In re Automotive Parts*, 2013 WL 2456612, at *15-16.

17        This Court should find that the DAPs' nearly identical pleading is also sufficient to

18    demonstrate standing.  If this Court should find that the DAPs' allegations are inadequate to

19    demonstrate standing based on the inextricably linked and intertwined markets for CRTs and

20    CRT Products, or based upon any other *AGC* factor, the DAPs should be entitled to replead.

21    **II.    THE DAPS HAVE STATED CLAIMS UNDER THE MASSACHUSETTS**
22    **       CONSUMER PROTECTION ACT.**

23        There is no dispute that the DAPs were not required to make a pre-litigation demand of at

24    least 37 of the 39 Defendants,[12] yet Defendants continue to demand dismissal of all of the DAPs'

25    claims based upon the DAPs' alleged failure to serve such demands.  This is classic overreach.[13]

26

27

28

---

[12] The only Defendants that maintain a place of business in Massachusetts, according to the Massachusetts Secretary of State, are Toshiba America Electronic Components, Inc. ("TAEC") and Philips Electronics of North America Corporation ("PENAC").  DAP Objections at 16.

[13] Defendants also overreach by continuing to try to justify dismissal of the 93A claims in this action based upon the dismissal of the IPPs' 93A claims.  As the DAPs have explained, DAP

DAPS' REPLY IN SUPPORT OF OBJECTIONS TO
THE R&R REGARDING DEFS' JOINT MOTION TO
DISMISS                - 12 -              Master File No. 3:07-5944-SC
                                           MDL No. 1917

By law in Massachusetts, no demand letter is required to be sent to a defendant under the Massachusetts Consumer Protection Act, MASS. GEN. LAWS ch. 93A § 2, if "the prospective respondent does not maintain a place of business or does not keep assets[14] within the commonwealth." M.G.L.A. 93A, § 9(3).  Thirty-seven of the Defendants do not maintain a place of business in Massachusetts and therefore 37 of the Defendants were not entitled to pre-litigation demand letters.  Defendants do not even attempt to dispute this.

Under Massachusetts law, the burden is on Defendants to show that they maintain a place of business and keep assets in Massachusetts, but they have failed to rebut the DAPs' contentions.  *See* Def. Motion to Adopt at 18-19.  This is <u>fatal</u> to Defendants' motion to dismiss the DAPs' 93A claims.  *See Powell v. Ocwen Loan Servicing, LLC*, No. 2010-2069-D, 2012 WL 345665, *4 (Mass. Super. Ct. Jan. 04, 2012) (denying motion to dismiss 93A claim for failure to send a demand letter when defendant failed to rebut contention that it did not maintain a place of business in Massachusetts).

Because the DAPs were not required under Massachusetts law to send demand letters to at least 37 of the 39 Defendants, the Special Master's recommendation to dismiss these claims based upon a "failure" to make a demand, should be rejected.  To the extent that this Court deems the DAPs' 93A allegations to be insufficient under Massachusetts law, the claims should be dismissed without prejudice and the DAPs should be given leave to replead.

---

Objections at 17-18, the IPPs did not object to the Special Master's first recommendation that their Massachusetts claim be dismissed with leave to replead and, for that reason, the Court adopted the Special Master's recommendation, rather than engaging in a substantive analysis of the issue.  After the Special Master again recommended the dismissal of the IPPs' Massachusetts claim, the parties entered into a stipulation agreeing that, except for certain modifications not relevant here, "the Special Master's Report shall be adopted in full as the Order of this Court," and the Court subsequently entered the stipulation.  Thus, the Court has never issued a substantive ruling on the viability of a Massachusetts Consumer Protection Act claim in this litigation.  Moreover, as discussed above, the demands were not necessary for at least 37 of the 39 Defendants and, in any event, the DAPs made demands of all Defendants.

[14] Plaintiffs also have no evidence that any of the Defendants have assets in the Commonwealth. The burden is on Defendants to show that they *do* have such assets.  *Butler v. Deutsche Bank Trust Co. Americas*, 2012 WL 3518560, at *12-*13 (D. Mass. Aug. 14, 2012) (refusing to dismiss claim "for failure to satisfy the demand letter requirement" because Defendant could not show at the motion to dismiss stage that it held assets in the state).

1

### III.    THE DAPS HAVE STATED CLAIMS UNDER THE WASHINGTON CONSUMER PROTECTION ACT.

2

Dismissal of the DAPs' Washington state law claims on *Illinois Brick* grounds is not

3

warranted.  As Defendants have long argued, Washington's "harmonization" provision "dictate[s

4

that the Consumer Protection Act] be construed in accordance with federal law."  Defendants'

5

Motion to Dismiss, Dkt. 1317 at 24.  Indeed, the statute provides that "in construing this act, the

6

courts be guided by the final decisions of the federal courts and final orders of the federal trade

7

commission interpreting the various federal statutes dealing with the same or similar matters

8

. . . ."  WASH. REV. CODE § 19.86.920.  To suggest now that the federal *Illinois Brick* rule applies

9

under Washington law but that the federal exceptions to that rule are inapplicable is inconsistent

10

at best and disingenuous cherry picking at worst.  Just as Costco's federal claims survive under

11

the *ATM Fee* exception to *Illinois Brick*, so too do the parallel Washington claims.  Accordingly,

12

there is no basis for the outright dismissal of Washington claims recommended by the Special

13

Master.

14

### IV.    CIRCUIT CITY HAS ADEQUATELY ALLEGED RESTITUTION AND UNJUST ENRICHMENT CLAIMS UNDER CALIFORNIA LAW.

15

16

Defendants' arguments to dismiss Circuit City's California unjust enrichment and

17

restitution claims mischaracterize and misrepresent the applicable authority.  According to

18

Defendants, the "majority view" is that California law does not allow standalone claims for

19

either unjust enrichment or restitution.  This is wrong.

20

Any dispute about the existence of standalone claims for unjust enrichment or restitution

21

under California law is largely semantic—the cause of action exists, and the only controversy is

22

what it should be called (thus Circuit City pleaded claims for both unjust enrichment and

23

restitution).  Judge Illston rejected the defendants' exact same arguments in *LCD* and highlighted

24

the semantic issue: "Many of the courts that have rejected 'unjust enrichment' claims have

25

nonetheless indicated that the claims could proceed under a different title."  *In re TFT-LCD (Flat*

26

*Panel) Antitrust Litig.*, 2011 WL 4345435, *3 (N.D. Cal. Sep. 15, 2011) (emphasis added); *see*

27

*also Nordberg v. Trilegiant Corp.*, 445 F. Supp. 2d 1082, 1100 (N.D. Cal. 2006) ("[F]or the most

28

part, courts finding that California does not allow an 'unjust enrichment' cause of action have

made essentially a semantic argument—focusing on the interrelationship between the legal doctrine of unjust enrichment and the legal remedy of restitution.").

In arguing that neither unjust enrichment nor restitution claims exist under California law, Defendants selectively and misleadingly quote from cases to mischaracterize the actual holdings:

- *Munoz v. MacMillan*, 195 Cal. App. 4th 648, 661 (2011):

    ***Defendants' selective quote:*** "There is no freestanding cause of action for 'restitution' in California."

    ***BUT Defendants omitted:*** "Common law principles of restitution require a party to return a benefit when the retention of such benefit would unjustly enrich the recipient; . . . Whether termed unjust enrichment, quasi-contract, or quantum meruit, the equitable remedy of restitution when unjust enrichment has occurred" is available.

- *Jogani v. Superior Court*, 165 Cal. App. 4th 901, 911 (2008):

    ***Defendants' selective quote:*** "[U]njust enrichment is not a cause of action."

    ***BUT Defendants omitted:*** "Rather, [unjust enrichment] is a general principle underlying various doctrines and remedies, including quasi-contract."

- *McBride v. Boughton*, 123 Cal. App. 4th 379, 387-88 (2004)

    ***Defendants' selective quote:*** "[u]njust enrichment is not a cause of action … or even a remedy …."

    ***BUT Defendants omitted (directly continuing the quote):*** "but rather 'a general principle, underlying various legal doctrines and remedies. It is synonymous with restitution.' …. [W]e construe McBride's purported cause of action for unjust enrichment as an attempt to plead a cause of action giving rise to a right to restitution."

- *Melchior v. New Line Prods., Inc.*, 106 Cal. App. 4th 779, 782 (2003)

    ***Defendants' selective quote:*** "[T]here is no cause of action in California for unjust enrichment."

    ***BUT Defendants omitted:*** "[Unjust enrichment is] synonymous with restitution."

As Defendants' own cases make clear, Circuit City has clearly pleaded a valid cause of action under California law, whether the court chooses to call it "unjust enrichment" or "restitution." *See, e.g.*, *Nordberg*, 445 F. Supp 2d at 1100 ("Moreover, in both *McBride* and *Lauriedale*, cases

upon which defendants strongly rely [and CRT defendants also rely on *McBride*], the courts found that although labeled 'unjust enrichment,' the causes of action could be understood as claims for restitution.").

Defendants then further argue that unjust enrichment and restitution are not valid causes of action—despite the clear, opposite holdings of Defendants' own cases—because "Circuit City relies upon a series of non-price-fixing cases, all of which are irrelevant."  This argument is illogical at best.  Circuit City cites to a number of cases for the general proposition that, in fact, unjust enrichment/restitution is a valid cause of action under California law.  Whether a cause of action actually exists is not dependent on the facts underlying specific cases and how analogous they might be to the present case.  Defendants did not argue that such a cause of action did not exist just for their price fixing behavior—they argued that the cause of action did not exist in California at all.  Circuit City's cases demonstrate that the cause of action, indeed, exists in California, and Defendants' attempts to somehow distinguish these cases are misguided and irrelevant.

Finally, Defendants argue that the Court should dismiss Circuit City's unjust enrichment and restitution claims because the California Cartwright Act provides "an entirely adequate legal remedy."  However, Defendants provide no authority for their conclusory statement that the Cartwright Act is an adequate legal remedy and instead choose to merely assume the truth of the statement without discussion or support.

Circuit City agrees that an adequate legal remedy may forestall the availability of equitable remedies under California law.  But unlike Defendants, Circuit City provides ample authority supporting the position that it is inappropriate to determine the adequacy of a legal remedy when deciding a motion to dismiss.  *See, e.g.*, *In re TFT-LCD*, 2011 WL 4345435 at *3-4 (allowing equitable claims to proceed at the motion to dismiss stage without determining the adequacy of other remedies); *Keilholtz v. Superior Fireplace Co.*, No. C 08-00836, 2009 WL 839076, *5 (N.D. Cal. Mar. 30, 2009) ("it is inappropriate at this early stage in the litigation to determine whether other remedies available to Plaintiffs are adequate"); *Nordberg*, 445 F. Supp 2d at 1101 ("though plaintiffs restitution claim under their eighth cause of action may ultimately

1   be superfluous to their restitution claim under section 17200 [of the California Unfair

2   Competition Law], it is inappropriate at the motion to dismiss stage to make that

3   determination").  As these cases recognize, the parties and the Court will have the benefit of

4   additional facts and legal arguments at a later stage to then determine whether other remedies

5   will adequately compensate Circuit City for the injuries caused by Defendants.

6   **V.   THE POLAROID PLAINTIFFS HAVE ADEQUATELY ALLEGED UNJUST**

7   **ENRICHMENT CLAIMS UNDER MINNESOTA AND CALIFORNIA LAW.**

8        Defendants continue to argue that the Polaroid Plaintiffs should be required to amend

9   their Complaint to specifically reference that their fifth claim for relief for unjust enrichment

10  arises under the laws of California and Minnesota.  Defendants take this position despite the fact

11  that the Polaroid Complaint earlier states that Polaroid Plaintiffs' state law claims are made

12  under California and Minnesota law.  (*See* Complaint, Case No. 3:11-cv-05381, Dkt. No. 1;  at ¶

13  5,8, and 9; *see also* MDL Dkt. No. 1021-2, Ex. A.)  Although Special Master Legge sided with

14  Defendants in recommending that Polaroid Plaintiffs be required to replead, this would constitute

15  unnecessary "make work" in light of the allegations already included in the Complaint, which

16  clearly indicate that all of the Polaroid Plaintiffs' state law claims are made under California and

17  Minnesota law.

18       Defendants mistakenly rely on *In re Static Random Access Memory (SRAM) Antitrust*

19  *Litigation*, 580 F. Supp. 2d 896 (N.D. Cal. 2008) to support the Special Master's

20  recommendation.  The *SRAM* case involved a nationwide class of indirect purchasers, whose

21  complaint alleged claims under laws of 21 different states.  Thus, in that case, it was important

22  for the parties and the Court to understand under which of the 21 states' laws the class intended

23  to assert unjust enrichment claims because not all states may recognize that cause of action.  This

24  case is distinguishable because the Polaroid Plaintiffs' Complaint puts only two states' laws at

25  issue, California and Minnesota.[15]   For these reasons and those discussed in the DAPs'

26

---

[15]  Special Master Legge separately recommended that unjust enrichment claims are not

27  recognized under California law.  The DAP Plaintiffs address that issue separately at pp. 14-17
    *infra*.  In the unlikely event that recommendation is adopted, that would leave the Polaroid

28  Plaintiffs asserting a claim for unjust enrichment under the common law of Minnesota only.
    Defendants do not dispute that Minnesota recognizes claims for unjust enrichment.

1    Objections, the Court should not adopt the Special Master's recommendation that the Polaroid

2    Plaintiffs be required to replead their unjust enrichment claims.

3    **VI.    THE SPECIAL MASTER'S RECOMMENDATION TO LIMIT THE DIRECT**
      **ACTION PLAINTIFFS' CLAIMS UNDER NEBRASKA AND NEVADA LAW IS**
4     **CONTRARY TO NEBRASKA AND NEVADA LAW.**

5        This Court should overturn the Special Master's recommendation limiting the DAPs'

6    claims under Nebraska and Nevada law.  To do otherwise would require this Court to ignore

7    decisions by the Nebraska Supreme Court, as well as the legislative history of the Nevada statute

8    and the most recent Nevada court decision that addresses it.  Implicit in the Special Master's

9    recommendation (and Defendants' arguments) is the notion that the legislatures in both Nebraska

10   and Nevada would want to partially shield out-of-state wrongdoers from liability to in-state

11   individuals.  Both the law of these states and public policy dictate a contrary result.

12                    **A.  This Court Is Bound By The Decision of the Nebraska Supreme Court**
                         **Allowing Indirect Purchaser Claims That Predate The 2002 Amendment.**
13

14       The Nebraska Supreme Court has already considered the 2002 amendment that is at issue

15   in this case and allowed indirect purchaser claims that predate the 2002 amendment.  *See Arthur*

16   *v. Microsoft Corp.,* 676 N.W.2d 29, 38 (Neb. 2004) (reversing dismissal of indirect purchaser

17   claims that predate the 2002 amendment; concluding "that the [Consumer Protection] Act allows

18   any person who is injured by a violation of §§ 59–1602 to 59–1606 which directly or indirectly

19   affects the people of Nebraska to bring a civil action to recover damages").  Principals of

20   federalism require that this Court follow that decision.  *See, e.g., Kona Enters., Inc. v. Estate of*

21   *Bishop,* 229 F.3d 877, 884 n.7 (9th Cir. 2000) (requiring federal courts to follow decisions by the

22   state's highest court on issues of state law); *see also Lew v. Countrywide Financial Corp.,* No. C-

23   08-1993 SC, 2009 WL 1384975, *2 (N.D. Cal. Feb. 24, 2009) (Conti, J.) ("When interpreting

24   state law, federal courts are bound by decisions of the state's highest court") (quoting *Ariz. Elec.*

25   *Power Coop., Inc. v. Berkeley,* 59 F.3d 988, 991 (9th Cir. 1995)).

26       Defendants, however, argue that this Court is not bound by the Nebraska Supreme

27   Court's decision in *Arthur* because that case dealt with indirect purchaser claims under the

28   Consumer Protection Act (whereas DAPs here assert indirect purchaser claims under the Junkin

Act), and the Court's ruling cannot be extended to indirect purchaser claims under the Junkin Act. *See* Def. Motion to Adopt at 28. Such a narrow reading of *Arthur* is specious at best. Importantly, the same 2002 amendment that is at issue here amended both statues *simultaneously and identically*. *See* Laws 2002, LB 1278. Moreover, Defendants' argument has already been rejected by Judge Illston in the *TFT-LCD* case. *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M07-1827 SI, 2011 WL 3738985, **3-4 (N.D. Cal. Aug. 24, 2011) (Illston, J.) (denying motion to dismiss indirect purchasers' pre-2002 amendment claims; citing to the *Arthur* decision and concluding that the Nebraska Supreme Court would likely hold that the Junkin Act permitted indirect purchaser claims even before the 2002 amendment).[16] The Court should do the same here.

Defendants' argument that the *Arthur* decision cannot be extended to indirect purchaser claims under the Junkin Act necessarily implies that the Junkin Act and Consumer Protection Act are separate, unrelated statutes that should be construed separately. Such an argument, however, ignores the straight forward language of the Nebraska Supreme Court in *Kanne v. Visa U.S.A., Inc.,* that, given the similarities in the legislative intent and statutory language of the Junkin Act and Consumer Protection Act, the standing requirements for antitrust claims brought under either statute "should be the same." 723 N.W.2d 293, 301 (Neb. 2006) ("Appellants do not dispute that the standing requirements for an antitrust claim under the Consumer Protection Act should be the same as for an antitrust claim under the Junkin Act."). This is because "the remedial provisions in [both Acts] are nearly identical" and "[b]oth provisions offer a potential damages remedy to a person injured in his or her business or property by a violation, whether such injured person dealt directly or indirectly with the defendant." *Id.* Moreover, both the Junkin Act and the Consumer Protection Act are sister statutes that appear under the same

---

[16] In a decision that was issued while Defendants' Objections to the Report and Recommendation have been under consideration, a federal district court adopted Judge Illston's reasoning denying a motion to dismiss indirect purchaser claims brought under the Junkin Act that predate the 2002 amendment. *See In re Automotive Parts Antitrust Litig.,* No. 12-md-02311, 2013 WL 2456612, *19 (E.D. Mich. June 6, 2013) ("The federal court [*TFT-LCD*] held that the decision by the state supreme court in *Arthur v. Microsoft Corp.,* 267 Neb. 586, 676 N.W.2d 29 (Neb. 2004), showed that the highest court would allow an indirect purchaser standing to sue for antitrust violations even before the 2002 amendment. Therefore, the Court finds no time limitation applies.").

chapter of the Nevada code – Chapter 59 Monopolies and Unlawful Combinations.  Both statutes provide relief to any person injured by antitrust violations.  *See* Neb. Rev. Stat. § 59-821 (Junkin Act); Neb. Rev. Stat. §§ 59-1603, 59-1604, 59-1609 (Consumer Protection Act).

This Court is bound by the decisions of the Nebraska Supreme Court in *Arthur* and *Kanne*.  Not only has the Nebraska Supreme Court held that the standing requirements for antitrust claims brought under either statute is the same (*Kanne*), but it has also allowed indirect purchaser claims that predate the 2002 amendment (*Arthur*).  In light of the Nebraska Supreme Court's holdings, this Court must reject the revisionist request by Defendants to re-analyze the legislative history of the 2002 amendment.  The chief arbitrator of that process, the Nebraska Supreme Court, has already done so and it is not this Court's role to undermine the Nebraska Supreme Court's holdings on matters of Nebraska state law.

Even if this Court were to do as Defendants argue, and revisit the legislative history behind the 2002 amendment, Defendants still do not prevail.  It is illogical and contrary to fundamental rules of statutory construction to suggest that absent an express legislative directive, identical language in a common amendment should be construed one way as it applies to one statute but the opposite way as to the sister statute.  *See Arthur,* 676 N.W.2d at 35 ("The components of a series or collection of statutes pertaining to a certain subject matter may be conjunctively considered and construed in pari materia to determine the intent of the Legislature so that different provisions of the act are consistent, harmonious, and sensible.").

Consistent with the *Arthur* and *Kanne* decisions (as well as Judge Illston's well-reasoned decision in *TFT-LCD),* this Court should reject the Special Master's recommendation and hold that there is no standing impediment to the DAPs' pre-2002 indirect purchaser claims under Nebraska law.

       **B.  Because The 1999 Amendment To Nevada's Unfair Trade Practices Act Merely Clarified Who May Bring Suit Under The Act, Indirect Purchaser Claims Under Nevada Law Are Not Limited To The Post Amendment Time Frame.**

The 1999 amendment to Nevada's Unfair Trade Practices Act ("NUPTA") clarified and reaffirmed the act's original intent to allow *any* person injured by a violation of the act, whether

1    directly or indirectly, to bring suit.  It did not, as Defendants argue, change the NUPTA standing

2    requirements to allow, for the first time, indirect purchasers to sue for their antitrust injuries.

3        The 1999 bill's introductory statement, which Defendants tellingly ignore, expressly

4    states that the bill *clarifies* who may bring suit under the act:

5        "AN ACT relating to unfair trade practices; ***clarifying*** the persons on whose
        behalf the attorney general may bring a civil action; ***clarifying*** the persons who
6        may bring a civil action for unfair trade practices…"

7    A.B. 108 (emphasis added).   By using the word "clarifying" not once but twice in the

8    introductory statement, the Nevada legislature must be taken at its word. [17]  To be sure, the very

9    definition of the word "clarify" is "to free of confusion," "to make understandable."  Merriam-

10   Webster,  http://www.merriam-webster.com/dictionary/clarify.  (last  visited  July  22,  2013).

11   Nothing in the word "clarify" implies a substantive change in existing law.

12       The most recent Nevada district court to examine the issue has held, consistent with the

13   introductory language, that the amendment was a clarification of the unaltered legislative intent

14   to permit actions by "*any* person injured," whether directly or indirectly, to maintain an action

15   under NUPTA.  *See Pooler v. R.J. Reynolds Tobacco Co.,* No. CV00-02674, 2001 WL 403167,

16   *1 (D. Nev. Apr. 4, 2001).  The *Pooler* court, which expressly considered the legislative history

17   of the amendment, stated "[t]here is no legislative history to suggest that when the [N]UTPA was

18   originally adopted the legislature distinguished between whether the injury was direct or indirect,

19   or intended to preclude indirectly injured persons from bringing suit."  *Id.*

20       The *Pooler* court framed the issue as follows:

21       "Does this amendment 'change' prior law, thus precluding indirect purchaser
        actions for conduct occurring prior to October 1, 1999, or is it a 'clarification' of
22       the  unaltered  legislative  intent  to  permit  such  actions  by  any  injured  party
        (whether damaged directly or indirectly) before and after the effective date of the
23       amendment?"

24   *Id.*  Consistent with the language of the legislative bill, the court affirmed that the amendment

25   was indeed a "clarification."  *Id.*

26       Defendants want this Court to ignore the plain language of the amendment's introductory

27

28   [17]  "When  determining  how  to  give  effect  to  a  statute,  a  court  should  look  first  to  its  plain
     language."  *Smith v. Crown Fin. Servs. of America,* 890 P.2d 769, 773 (Nev. 1995).

1    statement and the analysis of the *Pooler* court and instead focus on a vague non-specific phrase

2    in the legislative bill summary statement that the bill "[m]akes various changes regarding civil

3    actions relating to unfair trade practice" and an off-handed opinion of a Senate Committee

4    meeting attendee.[18]  This Court should decline to do so.  In *Pooler*, the court rejected any notion

5    that such use of the word "change" meant that the 1999 amendment changed prior law.  *See*

6    *Pooler*, 2001 WL 403167 at *1 (holding that "[a]lthough the word 'change' appears in the

7    legislative history of the amendment," the amendment reaffirmed the original legislative intent to

8    allow *any* person injured by a violation of the statute) (emphasis added).[19]  Indeed, the Senate

9    Committee meeting attendee does not point to anything in the act's pre-amendment history that

10   would indicate that NUPTA, as originally adopted, precluded indirectly injured persons from

11   bringing suit.

12          Defendants also argue that the 1999 amendment does not indicate any intent that it should

13   be applied retroactively.  That argument, however, presupposes that the amendment was a

14   change in substantive law and not a clarification as stated in the amendment's introductory

15   statement.  In a case that Defendants themselves rely on, the Nevada Supreme Court has held

16   that legislative clarifications are retroactive.  *See Castillo v. State,* 874 P.2d 1252, 1257 (Nev.

17   1994) ("[A]bsent clear legislative intent to the contrary, clarifying amendments will be applied

18   retrospectively only if they do not contravene any judicial construction of statute.")[20]; *see also*

19   _____

20   [18] For purposes of statutory interpretation, a mere statement in a conference is entitled to less
     weight than the subsequent legislation declaring (here "clarifying") the intent of the statute.  *See*

21   *Consumer Product Safety Comm. v. GTE Sylvania, Inc.,* 447 U.S. 102, 118 (1980).  Moreover,
     "the remarks of a single legislator, even the sponsor, are not controlling in analyzing legislative

22   history."  *Chrysler Corp. v. Brown,* 441 U.S. 281, 311 (1979).

     [19] In an oblique footnote, Defendants argue that another Nevada trial court ruled contrary to
23   *Pooler.  See* Def. Motion to Adopt at 29, n. 22.  Defendants cite to an unreported Nevada district
     court case that was decided prior to *Pooler,* that is not available from any public source, and is

24   merely referenced in a footnote in a handbook published by the American Bar Association that
     purportedly has a holding at odds with *Pooler.*  Our attempts to obtain a copy of this unpublished

25   eighteen year old case have been unsuccessful and Defendants have not attached a copy.
     Moreover, Defendants provide no analysis of this case, let alone any discussion of its factual

26   context or even its procedural posture.  Under these circumstances, it would be inappropriate to
     afford this case any precedential value whatsoever.  Moreover, it shows the extremes to which

27   Defendants need to go to find support for their position.

     [20] Here, unlike the amendment at issue in *Castillo,* the 1999 amendment was not in response to
28   any judicial interpretation of the Junkin Act by the Nevada Supreme Court.  Only those
     legislative clarifications that specifically respond to judicial interpretations by the state's

1  *Pyramid Lake Paiute Tribe of Indians v. State Engineer,* No. 55437, 2011 WL 4390009, *1

2  (Nev. Sep. 20, 2011) ("By stating that the amendment was meant to 'clarify rather than change'

3  NRS 534.090's application, we conclude that the Legislature meant for the new version of NRS

4  534.090 to have retroactive effect.").[21]

5  Here, the legislative bill unambiguously states that the 1999 amendment is "***clarifying*** the

6  persons who may bring a civil action for unfair trade practices." A.B. 108.  Moreover, Judge

7  Wilken from this District, consistent with *Pooler,* has also held the amendment is "simply a

8  clarification of the law."  *In re Static Random Access Memory (SRAM) Antitrust Litig.,* No. 07-

9  MD-01819, 2010 WL 5094289, *5 (N.D. Cal. Dec. 8, 2010) (Wilken, J.) (denying motion for

10  partial summary judgment as to claims that predate 1999 amendment to Nevada statute; agreeing

11  with the *Pooler* court's analysis that the amendment statute was simply a clarification of existing

12  law thus permitting indirect purchasers to state claims for conduct prior to 1999).[22]  The Court

13  should do the same here.

14  **CONCLUSION**

15  For all of the foregoing reasons, Defendants' Motion should be denied.

16

17

18

19  ─────────────────────────

supreme court are to be applied prospectively.  *See Castillo,* 874 P.2d at 1257.

20  [21] This is consistent with general rules of statutory construction.  "Where an amendment clarifies

21  existing law but does not contravene previous constructions of the law, the amendment may be deemed curative, remedial and retroactive, especially where the amendment is enacted during a controversy over the meaning of the law."  1A Norman J. Singer & J.D. Shambie Singer,

22  *Sutherland Statutory Construction* § 22.34 (7th ed. 2009) (cited with approval by *Pyramid Lake,* 2011 WL 4390009 at *1).

23  [22] Defendants cite to an unpublished Southern District of Ohio case that predates Judge Wilken's

24  decision in *SRAM* and that does not analyze the legislative history of the statute or amendment, where the court precluded indirect purchaser claims that predate the 2002 amendment.  *See*

25  *Ferrell v. Wyeth-Ayerst Labs., Inc.,* No. 1:01-cv-00447-SBB-TSH, 2004 U.S. Dist. LEXIS 15127, *26 (S.D. Ohio July 1, 2004) (*See* Def. RJN Ex. F).  That court does not even mention the

26  *Pooler* decision.  Defendants also cite to Judge Illston's decision in *TFT-LCD,* which is at odds with Judge Wilken's decision in *SRAM,* precluding indirect purchaser claims that predate the

27  1999 amendment.  Judge Illston, however, did not consider or analyze the legislative history of the statute or the 1999 amendment, and instead, speculated, without citation to any Nevada

28  authority, about how the Nevada Supreme Court, or otherwise, would construed the 1999 amendment.  *See TFT-LCD,* 2011 WL 3738985 at *4.

1

Respectfully submitted,

2

DATED:  July 26, 2013

3

/s/        Philip J. Iovieno
William A. Isaacson
Jennifer Milici
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Ave. NW, Suite 800
Washington, D.C.  20015
Telephone:  (202) 237-2727
Facsimile:   (202) 237-6131
Email:  wisaacson@bsfllp.com
Email:  jmilici@bsfllp.com

4

5

6

7

8

Stuart Singer
BOIES, SCHILLER & FLEXNER LLP
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33301
Telephone:  (954) 356-0011
Facsimile:   (954) 356-0022
Email:  ssinger@bsfllp.com

9

10

11

12

Philip J. Iovieno
Anne M. Nardacci
BOIES, SCHILLER & FLEXNER LLP
10 North Pearl Street, 4th Floor
Albany, NY  12207
Telephone:  (518) 434-0600
Facsimile:   (518) 434-0665
Email:  piovieno@bsfllp.com
Email:  anardacci@bsfllp.com

13

14

15

16

17

*Liaison Counsel for Direct Action Plaintiffs and Counsel
for Plaintiffs Electrograph Systems, Inc., Electrograph
Technologies, Corp., Office Depot, Inc., Compucom
Systems, Inc., Interbond Corporation of America, P.C.
Richard & Son Long Island Corporation, Marta
Cooperative of America, Inc., ABC Appliance, Inc.,
Schultze Agency Services LLC on Behalf of Tweeter Opco,
LLC and Tweeter Newco, LLC*

18

19

20

21

/s/        Roman M. Silberfeld
Roman M. Silberfeld (SBN 62783)
David Martinez (SBN 193183)
ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
2049 Century Park East, Suite 3400
Los Angeles, CA  90067-3208
Telephone:  (310) 552-0130
Facsimile:   (310) 229-5800
Email:  RMSilberfeld@rkmc.com
Email:  DMartinez@rkmc.com

22

23

24

25

26

27

*Attorneys for Plaintiffs Best Buy Co., Inc, Best Buy
Purchasing LLC, Best Buy Enterprise Services, Inc., Best
Buy Stores, L.P., Bestbuy.com, L.L.C., and Magnolia Hi-Fi,
Inc.*

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*/s/        Kenneth S. Marks*
H. Lee Godfrey
Kenneth S. Marks
Jonathan J. Ross
Johnny W. Carter
David M. Peterson
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone:  (713) 651-9366
Facsimile:  (713) 654-6666
Email:  lgodfrey@sumangodfrey.com
Email:  kmarks@susmangodfrey.com
Email:  jross@susmangodfrey.com
Email:  jcarter@susmangodfrey.com
Email:  dpeterson@susmangodfrey.com

Parker C. Folse III
Rachel S. Black
Jordan Connors
SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, Washington 98101-3000
Telephone:  (206) 516-3880
Facsimile:  (206) 516-3883
Email:  pfolse@susmangodfrey.com
Email:  rblack@susmangodfrey.com
Email:  jconnors@susmangodfrey.com

*Attorneys for Plaintiff Alfred H. Siegel, as Trustee of the*
*Circuit City Stores, Inc. Liquidating Trust*

*/s/        David. J. Burman*
David J. Burman
Cori G. Moore
Nicholas H. Hesterberg
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone:  (206) 359-8000
Facsimile:  (206) 359-9000
Email:  DBurman@perkinscoie.com
Email:  CGMoore@perkinscoie.com
Email:  NHesterberg@perkinscoie.com

*Attorneys for Plaintiff Costco Wholesale Corporation*

*/s/        Jason C. Murray*
Jason C. Murray (CA Bar No. 169806)
CROWELL & MORING LLP
515 South Flower St., 40th Floor
Los Angeles, CA 90071
Telephone:  (213) 622-4750
Facsimile:  (213) 622-2690
Email:  jmurray@crowell.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Jerome A. Murphy (pro hac vice)
Astor H.L. Heaven (pro hac vice)
CROWELL & MORING LLP
1001 Pennsylvania Ave, NW
Washington, DC 20004
Phone (202) 624-2599
Fax (202) 628-5116
Email:     jmurphy@crowell.com
               aheaven@crowell.com

*Counsel for Plaintiff Target Corp.*

 */s/ Richard Alan Arnold*
Richard Alan Arnold
William J. Blechman
Kevin J. Murray
KENNY NACHWALTER, P.A.
201 S. Biscayne Blvd., Suite 1100
Miami, FL 33131
Tel: (305) 373-1000
Fax: (305) 372-1861
Email: rarnold@knpa.com
Email: wblechman@knpa.com
Email: kmurray@knpa.com

*Counsel for Sears, Roebuck and Co. and Kmart Corp.*

*/s/        Jessica L. Meyer*
Jessica L. Meyer (SBN: 249064)
James M. Lockhart (*pro hac vice*)
James P. McCarthy (*pro hac vice*)
Kelly G. Laudon (*pro hac vice*)
Lindquist & Vennum P.L.L.P.
4200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone:  (612) 371-3211
Facsimile:   (612) 371-3207
Email:  jmeyer@lindquist.com
Email:  jlockhart@lindquist.com
Email:  jmccarthy@lindquist.com
Email:  klaudon@lindquist.com

*Attorneys for Plaintiffs John R. Stoebner, as Chapter 7 Trustee for PBE Consumer Electronics, LLC and related entities; and Douglas A. Kelley, as Chapter 11 Trustee for Petters Company, Inc. and Related Entities, and as Receiver for Petters Company, LLC and related entities*