1
JEFFREY L. KESSLER (*pro hac vice*)
A. PAUL VICTOR (*pro hac vice*)
2
ALDO A. BADINI (257086)
EVA COLE (*pro hac vice*)
3
MOLLY M. DONOVAN (*pro hac vice*)
**WINSTON & STRAWN LLP**
4
200 Park Avenue
New York, New York 10166-4193
5
Telephone: (212) 294-6700
Facsimile: (212) 294-4700
6
Email: jkessler@winston.com

7
STEVEN A. REISS (*pro hac vice*)
DAVID L. YOHAI (*pro hac vice*)
8
ADAM C. HEMLOCK (*pro hac vice*)
**WEIL, GOTSHAL & MANGES LLP**
9
767 Fifth Avenue
New York, New York 10153-0119
10
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
11
Email: steven.reiss@weil.com

12
*Attorneys for Defendants Panasonic Corporation (f/k/a Matsushita Electric*
*Industrial Co., Ltd.), Panasonic Corporation of North America, MT Picture*
13
*Display Co., Ltd.*

14
Additional Moving Defendants and Counsel Listed on Signature Pages

15

16
**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
17
**SAN FRANCISCO DIVISION**

18

19
**In re: CATHODE RAY TUBE (CRT)**
**ANTITRUST LITIGATION**

20

21
This Document Relates to:

22
INDIRECT-PURCHASER ACTIONS

23
**DOCUMENT SUBMITTED PARTIALLY**
**UNDERSEAL AND CHAMBERS COPY**
24

25

26

27

28

**Case No. 07-5944 SC**
**MDL No. 1917**

**DEFENDANTS' JOINT OBJECTIONS**
**TO THE REPORT AND**
**RECOMMENDATION REGARDING**
**INDIRECT PURCHASER PLAINTIFFS'**
**MOTION FOR CLASS CERTIFICATION**

Judge:  Hon. Samuel P. Conti
Court:  Courtroom 1, 17th Floor
Date:   TBD

DEFENDANTS' JOINT OBJECTIONS TO THE REPORT AND
RECOMMENDATION REGARDING INDIRECT PURCHASER
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Case No. 07-5944 SC
MDL NO. 1917

1

# TABLE OF CONTENTS

2

TABLE OF CONTENTS ................................................................................................... i

TABLE OF AUTHORITIES................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................... 1

SUMMARY OF FACTS .................................................................................................... 4

ARGUMENT...................................................................................................................... 6

I.      THE SPECIAL MASTER APPLIED THE WRONG LEGAL
        STANDARD IN EVALUATING PLAINTIFFS' BURDEN TO
        ESTABLISH A COMMON METHOD FOR PROVING THAT EACH
        CLASS MEMBER WAS INJURED................................................................... 7

II.     THE SPECIAL MASTER IS WRONG AS A MATTER OF LAW THAT
        A GUILTY PLEA BY ONE DEFENDANT FOR ONE PRODUCT
        REDUCES PLAINTIFFS' BURDEN UNDER RULE 23(b)(3) TO
        ESTABLISH IMPACT AND INJURY TO ALL CLASS MEMBERS......................... 11

III.    THE SPECIAL MASTER USED AN OUTDATED PRE-*COMCAST*
        LEGAL STANDARD IN INCORRECTLY FINDING THAT
        PLAINTIFFS MET THEIR BURDEN TO ESTABLISH A RELIABLE
        METHOD FOR ASSESSING CLASS-WIDE DAMAGES USING
        COMMON PROOF............................................................................................. 13

IV.     BECAUSE OF HIS LEGAL ERRORS IN ASSESSING PLAINTIFFS'
        BURDEN OF PROOF, THE SPECIAL MASTER FAILED TO
        RECOGNIZE THE KEY SUBSTANTIVE FAILINGS IN DR. NETZ'S
        ANALYSIS .......................................................................................................... 16

        A.      Dr. Netz Has Not Offered Reliable Common Proof of "Pass-
                Through" to All Members of the Putative Class ................................. 16

                1.      Dr. Netz's Unreliable Use of Pass-Through Averages to
                        Obscure the Fact that Many (if Not Most) Class Members
                        Did Not Suffer Impact or Injury ............................................. 16

                2.      Dr. Netz's Improper Use of Data Not Shown to be
                        Representative ......................................................................... 20

                3.      Dr. Netz's False Factual Assumptions Render Her
                        Common Impact and Injury Opinions Unreliable ................... 21

V.      *LCD* IS NOT A BASIS FOR CERTIFYING AN INDIRECT
        PURCHASER CLASS IN THIS CASE............................................................. 23

CONCLUSION ................................................................................................................. 25

i

## TABLE OF AUTHORITIES

CASES                                                                                                          PAGE(S)

*Allied Orthopedic Appliances, Inc. v. Tyco Healthcare Grp.*,
    247 F.R.D. 156 (C.D. Cal. 2007)........................................................................7, 8

*Apple, Inc. v. Somers*,
    258 F.R.D. 354 (N.D. Cal. 2009) ...................................................................8, 15

*Bell Atl. Corp. v. AT&T Corp.*,
    339 F.3d 294 (5th Cir. 2003) ..............................................................................7

*Blackie v. Barrack*,
    524 F.2d 891 (9th Cir. 1975) ..............................................................................9

*Blades v. Monsanto Co.*,
    400 F.3d 562 (8th Cir. 2005) ....................................................................6, 7, 12

*Butt v. Allegheny*,
    116 F.R.D. 486 (E.D. Va. 1987).........................................................................7

*Cal. v. Infineon Techs. AG*,
    No. 06-4333, 2008 WL 4155665 (N.D. Cal. Sept. 5, 2008)...........................7, 8, 12

*Classen v. Weller*,
    145 Cal. App. 3d 27 (Cal. App. 1 Dist. 1983) ....................................................9

*Comcast Corp. v. Behrend*,
    133 S. Ct. 1426 (2013).............................................................................*passim*

*Daubert v. Merrell Dow Pharms.*,
    509 U.S. 579 (1993). .....................................................................................1, 16

*DG v. Devaughn*,
    594 F.3d 1188 (10th Cir. 2010) ........................................................................10

*Ellis v. Costco Wholesale Corp.*,
    657 F.3d 970 (9th Cir. 2011) ..............................................................................6

*George Miller Brick Co. v. Stark Ceramics, Inc.*,
    801 N.Y.S.2d 120 (N.Y. Sup. 2005).....................................................................9

*Ginsburg v. Comcast Cable Commc'ns Mgmt. LLC*,
    No. C11-1959RAJ, 2013 WL 1661483 (W.D. Wash. Apr. 17, 2013) ...................14

DEFENDANTS' JOINT OBJECTIONS TO THE REPORT AND
RECOMMENDATION REGARDING INDIRECT PURCHASER
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Case No. 07-5944 SC
MDL NO. 1917

*Gonzales v. Comcast Corp.*,
   No. 10-01010, 2012 WL 10621 (E.D. Cal. Jan. 3, 2012),
   *adopted* 2012 WL 217798 (Jan. 23, 2012) ............................................................................8

*Gordon v. Microsoft*,
   No. MC 00-5994, 2003 WL 23105550 (Minn. Dist. Ct. Dec. 15, 2003) .........................17, 18

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
   No. M 02-1486 PJH, 2006 WL 1530166 (N.D. Cal. June 5, 2006) .........................................8

*In re Flash Memory Antitrust Litig.*,
   No. 07-0086, 2010 WL 2332081 (N.D. Cal. June 9, 2010) ............................................*passim*

*In re Graphics Processing Units Antitrust Litig.*,
   253 F.R.D. 478 (N.D. Cal. 2008) ...................................................................................*passim*

*In re High-Tech Employee Antitrust Litigation*,
   -- F.R.D. --, 2013 WL 1352016 (N.D. Cal. Apr. 5, 2013)...............................................14, 15

*In re Hydrogen Peroxide Antitrust Litig.*,
   552 F.3d 305 (3d Cir. 2008) .................................................................................................12

*In re Lake States Commodities, Inc.*,
   271 B.R. 575 (Bankr. N.D. Ill. 2002) ...................................................................................24

*In re Leap Wireless Int'l, Inc.*,
   301 B.R. 80 (Bankr. S.D. Cal. 2003)....................................................................................24

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
   No. 11 MD 2622(NRB), 2013 WL 1285338 (S.D.N.Y. Mar. 29, 2013)................................12

*In re Live Concert Antitrust Litig.*,
   247 F.R.D. 98 (C.D. Cal. 2007)..............................................................................................9

*In re Live Concert Antitrust Litig.*,
   863 F. Supp. 2d 966 (C.D. Cal. 2012) ....................................................................................9

*In re Methionine Antitrust Litig.*,
   204 F.R.D. 161 (N.D. Cal. 2001) ...........................................................................................8

*In re Nasdaq Market-Makers Antitrust Litig.*,
   169 F.R.D. 493 (S.D.N.Y. 1996)............................................................................................9

*In re New Motor Vehicles Canadian Export Antitrust Litig.*,
   522 F.3d 6 (1st Cir. 2008).......................................................................................................7

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
   287 F.R.D. 1 (D.D.C. 2012) .................................................................................................10

DEFENDANTS' JOINT OBJECTIONS TO THE REPORT AND
RECOMMENDATION REGARDING INDIRECT PURCHASER
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Case No. 07-5944 SC
MDL NO. 1917

*In re Rubber Chems. Antitrust Litig.*,
   232 F.R.D. 346 (N.D. Cal. 2005) ........................................................................7, 8

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   257 F.R.D. 583 (N.D. Cal. 2010) ........................................................................3, 25

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   MDL No. 1827, 2012 WL 555090 (N.D. Cal. Feb. 21, 2012) .................................10

*In re W. Liquid Asphalt Cases*,
   487 F.2d 191 (9th Cir. 1973) ................................................................................9

*Kohen v. Pac. Inv. Mgmt. Co.*,
   571 F.3d 672 (7th Cir. 2009) ...............................................................................10

*Kottaras v. Whole Foods Market, Inc.*,
   281 F.R.D. 16 (D.D.C. 2012) ................................................................................7

*Montano v. First Light Fed. Credit Union*,
   No. 7-04-17866-TL, 2013 WL 2244216 (Bkrtcy. D.N.M. May 21, 2013) ...............13, 14, 15

*Reed v. Advocate Health Care*,
   268 F.R.D. 573 (N.D. Ill. 2009) ...........................................................................18

*Roach v. T.L. Cannon Corp.*,
   No. 3:10-CV-0591 (TJM/DEP), 2013 WL 1316452 (N.D.N.Y. Mar. 29, 2013) ...................14

*Rowe Entm't, Inc. v. William Morris Agency, Inc.*,
   No. 98 CIV 8272(RPP), 2003 WL 22124991 (S.D.N.V. Sept. 15, 2003)........................20, 21

*Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*,
   546 F.3d 196 (2d Cir. 2008) ................................................................................12

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011)..................................................................................1, 6, 8, 9

*Windham v. Am. Brands, Inc.*,
   565 F.2d 59 (4th Cir. 1977) .................................................................................12

**STATUTES**

15 U.S.C. § 15 ........................................................................................................9

28 U.S.C. § 2072(b)................................................................................................9

**OTHER AUTHORITIES**

2A Phillip E. Areeda *et al.*, <u>Antitrust Law</u> ¶ 331d (3d ed. 2007) ................................8

Fed. R. Civ. P. 23.............................................................................................*passim*

iv

DEFENDANTS' JOINT OBJECTIONS TO THE REPORT AND
RECOMMENDATION REGARDING INDIRECT PURCHASER
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Case No. 07-5944 SC
MDL NO. 1917

**PRELIMINARY STATEMENT**

The indirect purchaser claims before this Court cannot be certified because plaintiffs have not satisfied Rule 23(b)(3)'s critical requirement that common issues "predominate" over individual ones.  In particular, plaintiffs have not met their burden of demonstrating that there is common evidence capable of proving impact and injury on a class-wide basis given the enormous variations in how a disparate array of class members – consumers of cathode ray tube ("CRT") televisions and monitors – negotiated, purchased, and paid for their CRT products.  Plaintiffs rely upon the proffered testimony of Dr. Janet S. Netz to try to establish a common method of proving impact and injury, but Dr. Netz's analysis – which obscures the price and purchasing variations among class members – cannot show common impact and damages to all class members.  To the contrary, it fails to satisfy the governing legal standard under Rule 23 for many of the same reasons that Dr. Netz's similar analyses were found to be inadequate to support class certification by Judge Armstrong in *In re Flash Memory Antitrust Litigation*, No. 07-0086, 2010 WL 2332081 (N.D. Cal. June 9, 2010) ("*Flash Memory*"), and Judge Alsup in *In re Graphics Processing Units Antitrust Litigation*, 253 F.R.D. 478 (N.D. Cal. 2008) ("*GPU*").[1]

The Special Master's Report and Recommendation Regarding Indirect Purchaser Plaintiffs' Motion for Class Certification, June 20, 2013 ("Recommendation" or "Certification R&R"), should not be adopted because it is based on four plain legal errors.  These fatal errors infect the entire approach by the Special Master and cause the Recommendation, despite its length, to fall far short of the "rigorous analysis" required by the Supreme Court.  *See Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013); *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011).

***First***, the Special Master erred by rejecting the fundamental proposition that it is plaintiffs' burden at class certification to establish that there is a common method of proving that

---

[1] Indeed, the Netz analysis is so unreliable as to be inadmissible under *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579 (1993), and should be stricken from the record by this Court.  *See* Defs.' Joint Objections to Report & Recommendation Regarding Defs.' Mot. to Strike Proposed Expert Test., July 22, 2013 ("MTS R&R Br.").  However, even if the Court were to find it to be admissible, it still would not be capable of demonstrating common impact and injury to meet Rule 23(b)(3)'s predominance requirement.

DEFENDANTS' JOINT OBJECTIONS TO THE REPORT AND RECOMMENDATION REGARDING INDIRECT PURCHASER PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Case No. 07-5944 SC
MDL NO. 1917

1    "all," or "nearly all," class members suffered fact of injury from the alleged antitrust violation.

2    Certification R&R at 37 n.26.  Because the Special Master did not apply this controlling legal test,

3    he erroneously recommended that the class be certified even though he acknowledged that

4    disaggregating the data used by Dr. Netz shows that not all retailers "passed on" the alleged cartel

5    price increases.  *See* Rebuttal Decl. of Prof. Robert D. Willig in Supp. of Defs.' Mot. to Strike the

6    Proposed Expert Test. of Dr. Janet S. Netz ¶¶ 117-19, Mar. 25, 2013 ("Willig Rebuttal Decl.").

7    And, Dr. Netz herself admitted that she *does not know* how many class members may have been

8    uninjured and she did nothing to study how many class members in her data were shown not to

9    have paid a supra-competitive price.  Netz Tr. 338:3-344:6, 346:13-18.[2]  Defendants are aware of

10   no decision certifying an indirect purchaser antitrust class under such circumstances.

11        **Second**, the Special Master erroneously held that a less rigorous analysis could suffice to

12   show common impact and injury for the indirect purchaser class in this case merely because one

13   defendant – out of 46 – has entered a guilty plea relating to one segment of the products covered

14   by the class, namely color display tubes ("CDTs," the CRTs used in monitors *but not televisions*).

15   Certification R&R at 20 n.5.  The "predominance" of common issues requirement of Rule 23,

16   however, has nothing to do with whether a criminal plea has been entered and there is no

17   authority to support the proposition that the common impact and injury requirement is any less

18   demanding in such a situation.  Rule 23(b)(3), in fact, demands the opposite – even assuming

19   common issues of *conspiracy*, without common proof capable of proving impact and injury to

20   each individual class member, the requirements of the Rule cannot be met.

21        **Third**, the Special Master misapplied the Supreme Court's recent decision in *Comcast*, in

22   which the Court held that antitrust plaintiffs seeking to certify a class must do more than

23   "provide[] a method to measure and quantify damages on a classwide basis;" they must

24   demonstrate that the "methodology [is] a just and reasonable inference" that plausibly establishes

25   the commonality of damages and is not merely "speculative."  *Comcast*, 133 S. Ct. at 1433.  Here,

26

27   ───────────────
     [2] The entire transcript of the deposition of Dr. Netz is attached as Exhibit 1 to the Decl. of Eva W.
28   Cole in Supp. of Defs.' Reply Mem. of Law in Supp. of Defs.' Mot. to Strike the Proposed Expert
     Test. of Dr. Janet S. Netz, March 25, 2013 ("Cole Reply Decl.").

DEFENDANTS' JOINT OBJECTIONS TO THE REPORT AND                    Case No. 07-5944 SC
RECOMMENDATION REGARDING INDIRECT PURCHASER                      MDL NO. 1917
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

1  Dr. Netz concedes that she has not yet tried, and does not know whether it ultimately will be

2  possible, to implement a common method of proving the measure of damages on a class-wide

3  basis.  Netz Tr. 248:9-17.  Plaintiffs, therefore, have not met their burden under *Comcast*.

4  　　　**Fourth**, despite acknowledging the "rigorous analysis" requirement of the Supreme Court,

5  the Special Master failed to address in substantive terms many of the fatal defects in Dr. Netz's

6  analysis that render her testimony inherently unreliable, and thus insufficient as a matter of law to

7  constitute common proof capable of proving impact, injury and class-wide damages.   For

8  example, the Special Master offered no proper justification for accepting Dr. Netz's pervasive use

9  of "averaging," and her reliance upon non-random, non-representative data to obscure real-world

10  variations among the pricing practices of retailers selling CRT products and the purchase prices

11  paid by individual class members.  He also fails to come to grips with the fact that Dr. Netz bases

12  her opinions on demonstrably false factual assumptions that have no support in the record.  This is

13  not "mere quibbl[ing]," as the Special Master suggested (Certification R&R at 37); the use of

14  unreliable methodologies and the failure to take into account the enormous differences between

15  the prices that class members paid for CRT products from different types of retailers (*e.g.*, brick

16  and mortar, discount, online), under different circumstances, is exactly the type of failure which

17  has caused other courts in this district to reject similar motions for class certification that were

18  based on testimony by Dr. Netz.  *Flash Memory*, 2010 WL 2332081, at *10-13; *GPU*, 253 F.R.D.

19  at 503-507.

20  　　　**Against all of the above**, the Special Master relied upon the fact that another analysis by

21  Dr. Netz was accepted by Judge Illston as support for certification of the indirect purchaser class

22  in *LCD*.  *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 583 (N.D. Cal. 2010).  But,

23  there is no basis for the Special Master to rely upon a class certification decision in another case

24  with different facts, different data, and a different record rather than conducting a rigorous

25  analysis of the class certification record here.  Indeed, although plaintiffs and Dr. Netz have

26  claimed to be prohibited by the protective order in *LCD* from producing Dr. Netz's *LCD* analysis

27  in this case, even the publicly available information in *LCD* demonstrates important differences

28  between that class certification record and the one here.  This includes Dr. Netz's failure in this

3

DEFENDANTS' JOINT OBJECTIONS TO THE REPORT AND
RECOMMENDATION REGARDING INDIRECT PURCHASER
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Case No. 07-5944 SC
MDL NO. 1917

1    case to conduct *any* price correlation analysis.  Netz Tr. 105:2-10.  Simply put, the class

2    certification record put forward by plaintiffs here must stand on its own two feet.  For all of the

3    reasons set forth above, that record fails to satisfy the governing Rule 23(b)(3) predominance tests

4    as set forth by the Supreme Court.[3]

5    **SUMMARY OF FACTS**[4]

6        At the broadest level, CRTs were divided into two distinct products that were not

7    interchangeable:  (1) CDTs used in color computer monitors; and (2) color picture tubes ("CPTs")

8    used in color televisions.[5]  Moreover, within those two distinct product categories, there was

9    further extensive diversity of products by "application, size, shape, finish, and mask type" as well

10   as other factors that affected price.  Netz Decl. 16; *see also* Decl. of Robert D. Willig, Ph.D., in

11   Opp'n to Mot. of Indirect-Purchaser Pls.' for Class Cert. ¶¶ 39-41, Dec. 17, 2012 ("Willig

12   Decl.").  As Dr. Netz admits, CRTs were not "off-the-shelf" products, but customized to each

13   purchaser's specifications.  Netz Decl. 20.  As a result, there were thousands of price points for

14   tubes based on individual customer negotiations, product type, size, specifications, time period

15   and region.[6]  The latter is important given that ███████████████████████████

16   ████████████████████████████████████████████████████████████████

17   ████████████████.[7]

18

---

19 [3] Because of the Special Master's failure to apply the correct legal tests, this Court must reject the

20 Certification R&R and should either rule now that the indirect purchaser class cannot be certified or remand this issue for re-examination under the proper legal tests by Special Master Legge.

21 [4] A more detailed summary of the relevant facts is contained in Defendants' Opposition Brief

22 before the Special Master.  *See* Defs.' Mem. of Points & Authorities in Opp'n to Mot. of Indirect-Purchaser Pls. for Class Cert., Dec. 17, 2012 ("Opp'n").

23 [5] *See* IPPs' Third Consolidated Amended Complaint ¶ 14, Dec. 11, 2010 [Dkt. No. 827]; *see* Decl.

24 of Janet S. Netz, Ph.D., in Supp. of Indirect-Purchaser Pls.' Mot. for Class Cert. 17, Oct. 1, 2012

25 ("[A] TV manufacturer would not use a CDT and a monitor manufacturer would not use a CPT.") ("Netz Decl.").

26 [6] *See, e.g.*, Opp'n at 29-30.

27 [7] *Id.* at 7-8.

28

4

DEFENDANTS' JOINT OBJECTIONS TO THE REPORT AND
RECOMMENDATION REGARDING INDIRECT PURCHASER
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Case No. 07-5944 SC
MDL NO. 1917

Like CRTs, CRT products (*i.e.*, televisions and monitors) were not interchangeable and were subject to disparate market forces and different distribution and sales channels, internal sales teams, brand reputations, and customers.[8] Within each size category of televisions and monitors, CRT products were highly differentiated, containing different features.[9] Like CRT tubes, there were thousands of price points for CRT products at both the manufacturing and retail levels so that different class members often paid very different prices for the exact same or very similar CRT product. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.[10] Differences among the retailers of CRT products were also vast, ranging from internet suppliers like Amazon, to discounters like Wal-Mart, to specialized retailers like Best Buy or Office Depot, to traditional department stores like Sears. ██████████████████████████████████████████████████████.[11] The fact that the same product would be purchased at different prices by different class members meant that any "averaging" of these prices would cover up, rather than reveal, the differences among class member purchases that must be taken into account in any effort to demonstrate that all class members were injured. In fact, as shown by Dr. Willig, █████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

The evidence shows that ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

_____

[8] *Id.* at 8.

[9] *Id.*

[10] *Id.* at 14-15.

[11] *Id.* at 17-18.

DEFENDANTS' JOINT OBJECTIONS TO THE REPORT AND RECOMMENDATION REGARDING INDIRECT PURCHASER PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Case No. 07-5944 SC
MDL NO. 1917

1

2

3

4

5 ▮▮▮▮▮▮▮▮▮▮.[12]

6                                          **ARGUMENT**

7          There is no dispute that courts *must* conduct a "rigorous analysis" to determine whether

8 plaintiffs have affirmatively demonstrated their compliance with each of the Rule 23 prerequisites

9 for class certification.  Certification R&R at 12, 38-39 (citing *Comcast*, 133 S. Ct. at 1433); *see*

10 *also Dukes*, 131 S. Ct. at 2551-52; *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981, 983 (9th

11 Cir. 2011).   Such analysis "[f]requently . . . entail[s] some overlap with the merits;" it must

12 include a thorough examination of plaintiffs' proposed economic testimony in support of class

13 certification; and the court must resolve any "factual disputes necessary to determine whether"

14 plaintiffs have met their burden to satisfy the requirements of Rule 23.  *Dukes*, 131 S. Ct. at 2551;

15 *Ellis*, 657 F.3d at 983.  Moreover, the Court cannot just defer to the expert testimony presented by

16 the plaintiffs; it must determine whether such evidence is admissible and, even if admissible, must

17 "judg[e] the persuasiveness of the evidence presented."  *Ellis*, 657 F.3d at 982.

18          Of specific relevance to the Recommendation before the Court, under Rule 23(b)(3), a

19 class cannot be certified unless common questions "predominate" over individual ones.  *Dukes*,

20 131 S. Ct. at 2551-52.  In the antitrust context, this means that plaintiffs have the burden of

21 establishing a common means of proving that each class member suffered antitrust impact, injury,

22 and damages from the alleged violation.  *Comcast*, 133 S. Ct. at 1433; *Blades v. Monsanto Co.*,

23 400 F.3d 562, 566 (8th Cir. 2005).  As demonstrated below, because of various legal errors, the

24 Special Master failed to engage in the required rigorous analysis of this critical issue and his

25 Recommendation to certify the proposed indirect purchaser class must be rejected.

26

27

---

28 [12] *See also* Opp'n at 16-17.

I.     **THE SPECIAL MASTER APPLIED THE WRONG LEGAL STANDARD IN EVALUATING PLAINTIFFS' BURDEN TO ESTABLISH A COMMON METHOD FOR PROVING THAT EACH CLASS MEMBER WAS INJURED**

In the Certification R&R, the Special Master bases his analysis on the erroneous legal proposition that plaintiffs are not required to establish a reliable common methodology that is capable of proving that *each* class member sustained individual injury as a result of the alleged antitrust violation.[13]   Certification R&R at 37 n.26.  This is wrong as a matter of law:  in antitrust class actions, plaintiffs bear the burden of presenting common proof that every class member was injured by the alleged violation.[14]   Otherwise, the injury required to establish liability would have to be proven for each class member individually and the predominance test under Rule 23(b)(3) would not be satisfied.  *See, e.g.*, *In re New Motor Vehicles Canadian Export Antitrust Litig.*, 522 F.3d 6, 19 n.18, 28 (1st Cir. 2008) (vacating class certification where plaintiffs' evidence did not "include some means of determining that *each* member of the class was in fact injured"); *Blades*, 400 F.3d at 570, 573-74 (denying class certification where plaintiffs' expert could not exclude uninjured class members without engaging in "a fact-intensive inquiry unique to *each* potential class member"); *Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 302-03 (5th Cir. 2003) ("where fact of damage cannot be established for every class member through proof common to the class, the need to establish antitrust liability for individual class members defeats Rule 23(b)(3)

---

[13] Moreover, the Special Master misinterpreted the requirement that plaintiffs must offer common evidence capable of showing injury to each class member as going only to "Dr. Netz's damages methodologies."  Certification R&R at 37 n.26.  Fact of injury is an independent element of plaintiffs' antitrust claim that must be satisfied as an element of liability *in addition to* the measure of damages requirement.  *See, e.g.*, *Cal. v. Infineon Techs. AG*, No. 06-4333, 2008 WL 4155665, at *6 (N.D. Cal. Sept. 5, 2008); *Allied Orthopedic Appliances, Inc. v. Tyco Healthcare Grp.*, 247 F.R.D. 156, 165 (C.D. Cal. 2007).

[14] A few courts have used the alternative formulation that plaintiffs must produce common proof that "nearly all" class members have suffered injury from the alleged violation, *see In re Rubber Chems. Antitrust Litig.*, 232 F.R.D. 346, 353 (N.D. Cal. 2005), but for purposes of this case, the distinction is without a difference as Dr. Netz's analysis also does not establish that either "all" or "nearly all" class members suffered injury.  *See Kottaras v. Whole Foods Market, Inc.*, 281 F.R.D. 16, 24 (D.D.C. 2012) (denying certification where plaintiffs' expert could not account for instances where class members did not pay higher prices); *Butt v. Allegheny*, 116 F.R.D. 486, 490-92 (E.D. Va. 1987) (denying certification due to the "*risk* of non-injury" because any uninjured class members were identifiable only through individualized inquiry) (emphasis added).

7

DEFENDANTS' JOINT OBJECTIONS TO THE REPORT AND RECOMMENDATION REGARDING INDIRECT PURCHASER PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Case No. 07-5944 SC
MDL NO. 1917

predominance"); 2A Phillip E. Areeda *et al.*, <u>Antitrust Law</u> ¶ 331 (3d ed. 2007) ("[T]he fact that some class members may not have been damaged at all generally defeats class certification, because the fact of injury, or 'impact,' must be established by common proof.").

In wrongly rejecting this governing legal standard (Certification R&R at 37 n.26), the Special Master cited one Northern District decision, while ignoring the great weight of the remaining authority from within this Circuit requiring plaintiffs to establish "a reliable method for proving common impact on *all* purchasers . . . throughout the chain of distribution."[15] *Apple, Inc. v. Somers*, 258 F.R.D. 354, 361 (N.D. Cal. 2009) (emphasis added); *GPU*, 253 F.R.D. at 507; *see also Infineon*, 2008 WL 4155665, at *10 (denying class certification where expert's methodologies failed to "adequately demonstrate impact for all class members across customer, product, and procurement type"); *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M 02-1486 PJH, 2006 WL 1530166, at *9 (N.D. Cal. June 5, 2006) (finding expert's report adequate because it showed "the resulting effect of the conspiracy on all prices paid for DRAM, would be common to all class members"); *Gonzales v. Comcast Corp.*, No. 10-01010, 2012 WL 10621, at *18 (E.D. Cal. Jan. 3, 2012) (certification inappropriate where each member of the proposed classes cannot prove impact with common evidence), *adopted* 2012 WL 217798 (Jan. 23, 2012); *Allied Orthopedic*, 247 F.R.D. at 165 ("Plaintiffs must show that common, class-wide proof exists to show that all purchasers of Tyco consumables paid more in the actual world than they would have in a 'but-for' world . . . .").[16]

---

[15] This requirement is especially rigorous in indirect purchaser cases because indirect plaintiffs must demonstrate common proof to establish both that "defendants overcharged their direct purchasers" and that "those direct purchasers passed on the overcharges to plaintiffs." *GPU*, 253 F.R.D. at 499; *see also In re Methionine Antitrust Litig.*, 204 F.R.D. 161, 164 (N.D. Cal. 2001); *Flash Memory*, 2010 WL 2332081, at *7. The one Northern District case relied upon by the Special Master, *Rubber Chemicals*, was decided before *Dukes* and *Comcast*, and cannot be reconciled with the requirements of Rule 23(b)(3) and the necessity of each class member to demonstrate that it suffered injury from the alleged antitrust violation in order to state a claim. 232 F.R.D. at 353 (applying outdated standard: at class certification "court must consider only whether plaintiffs have made a threshold showing that 'what proof they will offer will be sufficiently generalized in nature'").

[16] In their papers below, plaintiffs relied on outdated pre-*Dukes* authorities that do not correctly state the current Rule 23 standard, or are inapposite because they either involve the measure of

8

DEFENDANTS' JOINT OBJECTIONS TO THE REPORT AND
RECOMMENDATION REGARDING INDIRECT PURCHASER
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Case No. 07-5944 SC
MDL NO. 1917

1    Fundamentally, there is no way to avoid an essential element of liability, *i.e.*, that there be

2    proof of individual injury, simply because this is a putative class action.[17]  This follows from the

3    fact that the Rules Enabling Act, upon which Rule 23 is based, makes clear that the Federal Rules

4    cannot enlarge or create any new substantive rights that do not otherwise exist.  28 U.S.C.

5    § 2072(b).  The same rules of liability thus apply for each class member as would apply in a non-

6    class case so that there must be common evidence that each class member suffered injury in order

7    to certify a class under the predominance test of Rule 23(b)(3).[18]

8    There is no dispute that Dr. Netz did *not* demonstrate common proof capable of proving

9    impact and injury to *each* member of the putative class.  Despite recognizing that "[i]mpact or

10   injury depends on whether a purchaser buys at a price artificially fixed above the competitive

11

12   damages, as opposed to class-wide impact, or do not otherwise discuss the common impact
requirement.  *See, e.g.*, Indirect-Purchaser Pls.' Opp'n to Defs.' Mot. to Strike the Proposed
13   Expert Test. of Dr. Janet S. Netz 24 n.51, Feb. 15, 2013 ("MTS Opp'n") (citing *In re Nasdaq
Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 523 (S.D.N.Y. 1996) (involving measure of
14   damages); *Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975) (inferring causation as to measure of
damages of each class member in the unique 10b-5 context on the basis of the materiality of the
15   misrepresentation); *In re W. Liquid Asphalt Cases*, 487 F.2d 191 (9th Cir. 1973) (no discussion of
common impact test)).  Particularly misplaced is plaintiffs' reliance upon *In re Live Concert
16   Antitrust Litig.*, 247 F.R.D. 98, 141 (C.D. Cal. 2007), (MTS Opp'n 24 n.51), where the court
granted certification only to later de-certify the class in light of *Dukes* and hold that the prior order
17   had "little to no precedential value."  *In re Live Concert Antitrust Litig.*, 863 F. Supp. 2d 966, 970
(C.D. Cal. 2012).
18

19   [17] *See, e.g.*, *Classen v. Weller*, 145 Cal. App. 3d 27, 47 (Cal. App. 1 Dist. 1983) ("Liability in an
20   antitrust action requires proof of two sets of facts:  (1) an antitrust violation and (2) a resultant
injury to plaintiffs.  This latter requirement is also known as 'impact,' 'causation,' 'fact of
21   damage,' and 'fact of injury'. . . .  If class-wide proof of illegality and impact is not possible, the
class must be decertified.") (applying the Cartwright Act); *George Miller Brick Co. v. Stark
22   Ceramics, Inc.*, 801 N.Y.S.2d 120, 132 (N.Y. Sup. 2005) ("[t]o be 'liable' under the antitrust laws
23   . . . means that one has violated the antitrust laws and that violation has resulted in an injury to the
business or property of the plaintiff, *i.e.*, there was fact of damage") (applying the Donnelly Act).
24

25   [18] Judge Illston made a similar error in *LCD* where she suggested that plaintiffs' burden is only to
show pass-through "in general" and not offer common proof that each class member suffered
26   injury.  *In re TFT-LCD (Flat Panel) Antitrust Litig.*, MDL No. 1827, 2012 WL 555090, at *9
(N.D. Cal. Feb. 21, 2012).  This incorrect legal standard should not be adopted by this Court, as it
27   is contrary to the Rules Enabling Act, the weight of reasoned authority, and the fundamental
requirements of antitrust law under Section 4 of the Clayton Act.  15 U.S.C. § 15.
28

DEFENDANTS' JOINT OBJECTIONS TO THE REPORT AND
RECOMMENDATION REGARDING INDIRECT PURCHASER
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Case No. 07-5944 SC
MDL NO. 1917

1    'but-for' price" (Certification R&R at 16), the Special Master simply ignored that Dr. Netz's

2    analysis does not establish that *any* – let alone all – class members paid such a supra-competitive

3    price.  Indeed, Dr. Netz admitted that she did nothing to determine what portion of the class, if

4    any, purchased products at prices above the competitive levels (Netz Tr. 343:15-25, 354:18-

5    355:2), and that her own data shows there are uninjured class members, but she has no idea how

6    many.  *Id.* at 346:13-18.  Even the Special Master acknowledged this, *i.e.*, that Dr. Willig has

7    shown that once Dr. Netz's pricing data is disaggregated to some degree, a number of retailers did

8    *not* pass on any alleged price change to their customers at all.  Special Master's Report &

9    Recommendation Regarding Defs.' Mot to Strike Proposed Expert Test. 30-31, June 20, 2013

10   ("Motion to Strike R&R"); *see also* ███████████████████████████████

11   ███████████████████████████████████████████████████████████

12   ███████████████   Despite the above failings, the Special Master did not consider them to be fatal

13   to class certification because of his errant legal conclusion that it is not necessary for the plaintiffs

14   to establish that all, or even almost all, class members have suffered injury as a result of the

15   alleged violation.  But, Dr. Netz's "not knowing" how many class members did not, in fact, suffer

16   injury from the alleged violation clearly fails the governing legal standard and, by itself, requires

17   that the Special Master's Recommendation to certify the class be rejected.

18         Defendants, in fact, are aware of *no* decision within this Circuit – including *LCD* – where

19   a class was certified under the circumstances presented here, where plaintiffs' own expert testified

20   that the number of uninjured class members within her own analyses remains unknown.[19]

21   Applying the correct legal test of common injury to all or almost all class members to the record

22   before this Court, the Recommendation for class certification must be rejected.

23

---

24   [19] Even the decisions cited by the Special Master that suggest that not every class member has to
     be injured concede that a class cannot be certified in circumstances where there are "a great many
25   persons have not been impacted."  *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 287 F.R.D.
     1, 39-40 (D.D.C. 2012); *Kohen v. Pac. Inv. Mgmt. Co.*, 571 F.3d 672, 677-78 (7th Cir. 2009)
26   (same and addressing the subject in terms of standing over absent class members).  Dr. Netz,
     however, has not introduced any reliable proof to demonstrate that this is not the situation here.
27   Plaintiffs also cite *DG v. Devaughn*, but that case dealt with the requirements for certification
     under Rule 23(b)(2), which is not at issue here. 594 F.3d 1188, 1201 (10th Cir. 2010).
28

10

## II. THE SPECIAL MASTER IS WRONG AS A MATTER OF LAW THAT A GUILTY PLEA BY ONE DEFENDANT FOR ONE PRODUCT REDUCES PLAINTIFFS' BURDEN UNDER RULE 23(b)(3) TO ESTABLISH IMPACT AND INJURY TO ALL CLASS MEMBERS

Another indication of the Special Master's insufficient analysis is his erroneous conclusion, citing Judge Illston's decision in *LCD*, that a lower than usual burden should be applied for demonstrating common impact under Rule 23(b)(3) because "both cases involve some of the same defendants and at least one defendant in each case has pleaded guilty to antitrust violations." Certification R&R at 20 n.5. At the same time, the Special Master rejected the on-point reasoning of *GPU* and *Flash Memory* where class certification was denied based on analyses by Dr. Netz that exhibited very similar and unreliable methods as Dr. Netz's analysis here on the stated ground that "there were no guilty pleas or ongoing criminal investigations" or no "highly incriminating conspiracy evidence" in those cases. *Id.* This is a serious legal error as the presence or absence of guilty pleas, incriminating evidence, or government investigations has nothing to do with whether a plaintiff can meet its burden under Rule 23(b)(3) to offer a common methodology capable of showing impact and injury to individual class members. That requirement is the same in every antitrust case. In *Flash Memory*, for instance, the Court did *not* indicate, as the Special Master suggests, that certification was denied under Rule 23(b)(3) due to the absence of guilty pleas. Rather, the court noted the absence of guilty pleas and the end of the government's criminal investigation in denying certification under *Rule 23(b)(2)* based on its conclusion that plaintiffs had failed to demonstrate any threat of continuing or future injury. 2010 WL 2332081, at *6-7. The Recommendation does not implicate Rule 23(b)(2). Similarly, in *GPU*, the court mentioned the absence of guilty pleas in discussing typicality under *Rule 23(a)*, not in deciding whether plaintiffs met their burden to prove common impact and injury to all class members under Rule 23(b)(3).[20]

---

[20] It should also be noted that unlike *LCD*, where seven of the ten defendants pled guilty to a conspiracy involving all types of LCDs, here only one defendant out of 46, Samsung SDI, has pled guilty to a Sherman Act violation, and that plea involved *only* CDTs. No defendant in this case has entered any criminal plea with respect to the CPTs used in color televisions, which represent a substantial part of the purported class members.

DEFENDANTS' JOINT OBJECTIONS TO THE REPORT AND
RECOMMENDATION REGARDING INDIRECT PURCHASER
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Case No. 07-5944 SC
MDL NO. 1917

A guilty plea may serve as common evidence of a *conspiracy*, but "proof of conspiracy is not proof of *common impact*" to all class members. *Blades*, 400 F.3d at 572. Instead, class certification must be denied where plaintiffs do not "adequately demonstrate impact for all class members across customer, product, and procurement type," guilty pleas notwithstanding. *Infineon*, 2008 WL 4155665, at *10 (denying class certification under Rule 23(b)(3) where at least three defendants had previously pled guilty to criminal charges); *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 308 n.2 (3d Cir. 2008) (vacating district court's certification of direct purchaser class for failure to prove common impact despite two defendants previously pleading guilty to criminal charges). Class certification is not permissible unless plaintiffs meet their burden to satisfy each of the Rule 23 prerequisites by a preponderance of the evidence with respect to *each* element of their claim. *See, e.g.*, *Hydrogen Peroxide*, 552 F.3d at 320; *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 202 (2d Cir. 2008). And, it has long been noted that "the issues of injury and damage remain the critical issues" in a price-fixing case (as opposed to the violation itself) and "are always strictly individualized." *Windham v. Am. Brands, Inc.*, 565 F.2d 59, 66 (4th Cir. 1977). A criminal plea offers no help on this issue since the government does not have to prove fact of injury to any consumer, let alone all consumers, to establish a criminal antitrust violation. *See, e.g.*, *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 MD 2622(NRB), 2013 WL 1285338, at *11 (S.D.N.Y. Mar. 29, 2013).[21] The Special Master's failure to employ the same rigorous analysis used in *GPU* and *Flash Memory* based on the existence of one guilty plea for one portion of the purported class thus was pure legal error.[22]

---

[21] Plaintiffs also argued to the Special Master that, in addition to guilty pleas, *LCD* is a "blueprint" for certification in this case because both cases involve many of the same defendants, many of the "same personnel," and the same "conspiratorial methods." Pls.' Reply Br. in Supp. of Mot. of Indirect Purchaser-Pls.' Mot. for Class Cert. 11-12, Feb. 15, 2013. None of those factors, if true, are even arguably relevant to the common impact or injury requirement.

[22] The Special Master's additional attempts to distinguish the *GPU* and *Flash Memory* decisions are unavailing. *See* Certification R&R at 20 n.5. Even according to Dr. Netz, CRTs are not "off-the-shelf" products, but are customized to each purchaser's specification, like in *GPU*. Netz Decl. 20; *see also* Opp'n at 6-7.

DEFENDANTS' JOINT OBJECTIONS TO THE REPORT AND
RECOMMENDATION REGARDING INDIRECT PURCHASER
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Case No. 07-5944 SC
MDL NO. 1917

III.   **THE SPECIAL MASTER USED AN OUTDATED PRE-*COMCAST* LEGAL STANDARD IN INCORRECTLY FINDING THAT PLAINTIFFS MET THEIR BURDEN TO ESTABLISH A RELIABLE METHOD FOR ASSESSING CLASS-WIDE DAMAGES USING COMMON PROOF**

The Special Master also committed legal error in concluding that Dr. Netz offered a sufficient methodology to assess class-wide damages using common proof, and that the reliability of her common damages theories should be adjudicated at trial, not at class certification. Certification R&R at 36.   In doing so, the Special Master failed to follow, despite passing acknowledgment, the Supreme Court's controlling legal standard set forth in *Comcast*, which requires this Court to reject the Recommendation.  *See id.* at 36-37.  In applying Rule 23(b)(3)'s predominance test, *Comcast* requires that the alleged damages are measurable on a class-wide basis through reliable common economic evidence.  *Comcast*, 133 S. Ct. at 1433.  To satisfy this burden, plaintiffs must do more than "provide[] a method to measure and quantify damages on a classwide basis"; they must demonstrate that "the methodology is a just and reasonable inference," and not merely "speculative."  *Id.* at 1431, 1433.

Specifically, the *Comcast* Court concluded that it was insufficient for plaintiffs' expert to calculate a "but-for" damages figure that was not reliably linked to plaintiffs' theory of liability (that Comcast had reduced competition from rival company "overbuilders").  The Court made it clear, moreover, that "even if the model *had* identified [plaintiffs] who paid more solely because of" the liability theory, "it *still* would not have established the requisite commonality of damages unless it plausibly showed that the extent of over-building (absent deterrence) would have been the same in all counties, or that the extent is irrelevant to effect upon ability to charge supra-competitive prices."  *Id*. at 1435 n.6 (emphasis added).  Put differently, the Supreme Court has made it clear that it is not enough for plaintiffs to merely describe a proposed class-wide damages assessment method that is linked to plaintiffs' theory of liability; plaintiffs must plausibly show that the proposed method can demonstrate the measure of damages to all class members in a non-speculative way *before* a class is certified.  *Montano v. First Light Fed. Credit Union*, No. 7-04-17866-TL, 2013 WL 2244216, at *7 (Bkrtcy. D.N.M. May 21, 2013) ("*Comcast* does not allow [plaintiffs] the luxury of waiting until trial.").

13

The Special Master's contrary view of *Comcast* – that it only applies in cases where plaintiffs assert multiple theories of antitrust liability and fail to tie their proposed damages measurement to the right one – is inconsistent with the post-*Comcast* decisions explaining its import.  In *Montano*, for example, the court stated that plaintiffs have an "obligation" under *Comcast* to come forward with *evidence* that damages could be measured class-wide.  2013 WL 2244216, at *7.  The court in *Roach v. T.L. Cannon Corp.* likewise confirmed that *Comcast* requires a "demanding and rigorous analysis *of the evidentiary proof*" presented by plaintiffs that damages are capable of measurement on some common basis.  No. 3:10-CV-0591 (TJM/DEP), 2013 WL 1316452, at *3 (N.D.N.Y. Mar. 29, 2013); *see also Ginsburg v. Comcast Cable Commc'ns Mgmt. LLC*, No. C11-1959RAJ, 2013 WL 1661483, at *7 (W.D. Wash. Apr. 17, 2013) ("[t]he data [plaintiff's expert] reviewed [was] no doubt subject to countless different analyses, but Plaintiffs suggest no analysis that would translate that data into a viable damages calculation").  *Comcast* does not tolerate merely citing general, untried damages theories and speculating that these theories may or may not reliably prove class-wide.  But that is all that Dr. Netz has done.  *See* Netz Tr. 249:10-17.

The Special Master erroneously limits the meaning of *Comcast* to eliminate any requirement that a reliable damages methodology be established at the class certification stage, citing the decision in *In re High-Tech Employee Antitrust Litigation*, -- F.R.D. --, 2013 WL 1352016 (N.D. Cal. Apr. 5, 2013), where class certification was recently granted.  Certification R&R at 37 n.24 (asserting that the Court in *High-Tech Employee* "did not require plaintiffs' expert to have performed a damage calculation at the class certification stage").  The expert in that case, however, *did* perform a proposed class-wide damages calculation.  He ran a "conduct regression" analysis incorporating a number of variables to account for factors specific to each defendant to present an estimate of what damages would be in that case.  The court carefully scrutinized each challenge to that analysis and explained, in great detail, why it was both admissible and persuasive in its damages estimates.  *High-Tech Emp.*, 2013 WL 1352016, at *25-28.  Plaintiffs here do not come close to making the common measure of damages showing found to be sufficient in *High-Tech Employee*.

14

DEFENDANTS' JOINT OBJECTIONS TO THE REPORT AND
RECOMMENDATION REGARDING INDIRECT PURCHASER
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Case No. 07-5944 SC
MDL NO. 1917

To the contrary, it is undisputed that Dr. Netz has done nothing more than generally "describe" the methodologies that she hopes might be used to calculate class-wide damages in the future.  Netz Decl. 83-97 ("describ[ing] four formulaic approaches that might be used to estimate the but-for price").[23]  Indeed, Dr. Netz concedes that unlike the expert in *High-Tech Employee*, she has not calculated even a single but-for price, let alone tried to estimate class-wide damages,[24] and has done nothing to determine whether the data exists to make any of her proposed class-wide damages methods workable in this case.[25]  She admitted instead that "it is within the realm of possibility that when [she] or somebody else goes to implement one of these methods that they discover that it can't be implemented."  Netz Tr. 249:13-17.

In sum, there is no plausible evidence presented by Dr. Netz that damages can be measured in this case on a class-wide basis, which is fatal under *Comcast*.  133 S. Ct. 1426; *see also Montano*, 2013 WL 2244216, at *7 ("[T]here is no evidence before the Court that if Class 2 prevailed in its claims against Defendant, the damages they suffered would be susceptible of class-wide measurement . . . .  Plaintiffs had an obligation to come forward with evidence thereof.  They did not . . . ."); *Somers*, 258 F.R.D. at 361 (denying class certification and "find[ing] it significant that Plaintiff has done nothing more than make a vague five-paragraph long collection of proposals for accomplishing what the Court sees as a daunting task").  The Special Master's legal error in misapplying the requirements of *Comcast* cannot be cured by his citation to the decision on class certification in *LCD*, which was decided under an outdated legal standard long before *Comcast*.  *LCD*, 267 F.R.D. at 606 (accepting Dr. Netz's proposed class-wide damages analysis so long as it is "not so insubstantial as to amount to no method at all").  Under *Comcast*,

---

[23] Netz Tr. 246:12-15 ("Q. Is it correct that these four methods would apply to any cartel case in which there is data available to – to satisfy the method?  A. I guess the answer is largely yes.").

[24] *Id*. at 97:4-7 ("Q. Am I right that you have not calculated the but-for price or competitive price for any of the products at issue in this case?  A. At this point, that is correct.").

[25] *Id*. at 248:9-17 ("Q.  Have you run any tests of any of these methods you identified to – to see how a damage analysis would work and whether or not there's sufficient data?  Like have you actually run anything?  A.  I have not done any calculations. . . . I have not begun the implementation of any of these methods.").

DEFENDANTS' JOINT OBJECTIONS TO THE REPORT AND
RECOMMENDATION REGARDING INDIRECT PURCHASER
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Case No. 07-5944 SC
MDL NO. 1917

plaintiffs seeking to certify a class under Rule 23(b)(3) must demonstrate a plausible and reliable common method of proof of class-wide damages.  Without such proof – which is the case here – "[q]uestions of individual damage calculations will inevitably overwhelm questions common to the class," defeating the predominance requirement.  *Comcast*, 133 S. Ct. at 1433.

## IV.   BECAUSE OF HIS LEGAL ERRORS IN ASSESSING PLAINTIFFS' BURDEN OF PROOF, THE SPECIAL MASTER FAILED TO RECOGNIZE THE KEY SUBSTANTIVE FAILINGS IN DR. NETZ'S ANALYSIS

### A.   Dr. Netz Has Not Offered Reliable Common Proof of "Pass-Through" to All Members of the Putative Class

This Court has made it clear that pass-through of any alleged cartel price change cannot simply be assumed, especially in an industry like this in which price variation is the rule, rather than the exception.  *See Flash Memory*, 2010 WL 2332081, at *10-13; *GPU*, 253 F.R.D. at 503-07.  Here, Dr. Netz's testimony that pass-through was uniform is based on a series of false factual assumptions and unreliable methodologies that are so flawed as to render her testimony inadmissible under *Daubert*, 509 U.S. 579.  *See, e.g.*, MTS R&R Br. at 4-7.  Even assuming, *arguendo*, that Dr. Netz's testimony is admissible, the flaws in her analysis are so pervasive that it is incapable of satisfying plaintiffs' burden under Rule 23(b)(3).   The Special Master's Recommendation is fundamentally in error in failing to rigorously analyze and recognize these fatal gaps in plaintiffs' showing.

### 1.   Dr. Netz's Unreliable Use of Pass-Through Averages to Obscure the Fact that Many (if Not Most) Class Members Did Not Suffer Impact or Injury

*First*, the Special Master wholly fails to address the most critical problem with Dr. Netz's estimating and reporting only an "average" pass-through rate across all CRT products at each level of distribution.  Specifically, Dr. Netz's "averages" cover up the differences in prices paid by various class members (Netz Decl. 113-117), and Dr. Netz concedes that, given such averaging, she has no idea how many individual transactions showing zero pass-through to individual class members exist in her data.  Netz Tr. 343:15-25;

---

16

DEFENDANTS' JOINT OBJECTIONS TO THE REPORT AND RECOMMENDATION REGARDING INDIRECT PURCHASER PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Case No. 07-5944 SC
MDL NO. 1917

1  ██████████████  While Dr. Netz refers to such transactions as "anomalies" (Netz Tr. 344:1-

2  3), she does not dispute that they exist and represent real-life individual class members who were

3  not injured:

4         Q. And as we're sitting here now, you don't know how many anomalous – I'm

5            using your word – situations exist in your data where specific price increases
             were not passed on in the actual world.  You just don't know how many there

6            are?

7         A. That's correct.[26]

8      This admission is fatal to the Special Master's recommendation to certify a class based on

9  Dr. Netz's pass-through analyses.  Whatever the precise number of uninjured class members, it is

10  clear, as discussed at pp. 7-11, *supra*, that a class cannot be certified where plaintiffs have failed

11  to demonstrate that all or, at least nearly all, class members can demonstrate that they have been

12  injured by the alleged violation through common proof.  The Special Master did not address this

13  fundamental error, apparently based on his erroneous view that the governing legal standard does

14  not require common proof of injury to all class members.  Applying the correct legal standard,

15  this Court should follow the reasoning of *GPU* and *Flash Memory* and reject Dr. Netz's averaging

16  as being too unreliable to demonstrate pass-through common to the class especially since it is

17  undisputed that different class members paid different prices and purchased their products in

18  vastly different retail channels that employed different pricing philosophies.  *Flash Memory*, 2010

19  WL 2332081, at *10 ("By looking only at an *average price trend*, Dr. Netz's model obscures

20  individual variations over time among the prices that different customers pay for the same or

21  different products that appear in the data."); *GPU*, 253 F.R.D. at 494 ("the record here shows that

22  [the expert's use of averages] has in fact masked important differences between products and

23  purchasers").

24      *Second*, the Special Master cannot justify his contrary reasoning by noting that the court in

25  *Gordon v. Microsoft Corp.*, No. MC 00-5994, 2003 WL 23105550 (Minn. Dist. Ct. Dec. 15,

26  2003), stated that averaging can be used *at trial to calculate damages*.  *See* Certification R&R at

27

28  [26] Netz Tr. 346:13-18.

1    30-31.   Whatever justification there may be for using averaging in *other expert* contexts, it is

2    inexcusable in a situation like this where the very purpose of the pass-on analyses is to determine

3    whether impact and injury can be proven for all class members from common evidence, or

4    whether the variations hidden by averaging require a case-by-case examination, precluding class

5    certification.[27]   *See GPU*, 253 F.R.D. at 495-96 ("Notably absent from Dr. Teece's analysis are

6    other factors that would likely have an impact on prices . . . .   Without incorporating such

7    variables, it is impossible to account for the diversity in products and purchasers here."); *Flash*

8    *Memory*, 2010 WL 2332081, at *10 ("Dr. Netz's regression analysis does not take into account

9    individual variances in price trends based on a particular chip or a particular chip purchased by a

10   specific Direct-Purchaser—or even more generally, by *category* of chip or *category* of customer.

11   By looking only at an *average price trend*, Dr. Netz's model obscures individual variations over

12   time among the prices that different customers pay for the same or different products that appear

13   in the data.") (emphasis in original).

14        The Special Master's analysis misses this "critical issue[, which] is not whether [the

15   expert's] techniques are generally accepted; it is whether they are appropriate when applied to the

16   facts and data *in this case*."   *Reed v. Advocate Health Care*, 268 F.R.D. 573, 594 (N.D. Ill. 2009)

17   (emphasis in original).   "[W]hile averaging may be tolerable in some situations," such as in

18   "estimating damages," the record here, just as in *GPU*, shows that it is inherently unreliable for

19   class certification purposes as it masks the very differences in pricing which must be examined in

20   order to determine whether there is a common method of proving class-wide fact of injury despite

21   important differences between products and purchasers.   *GPU*, 253 F.R.D. at 489, 494; *see also*

22   Netz Tr. 347:6-14 (conceding that the use of averaging would not be proper in all economic

23   studies).

24        *Third*, the Special Master believed – wrongly – that Dr. Netz used transaction-level data to

25

26   ---

[27] Indeed, even *Gordon* indicates that a class should not be certified where averages obscure pass-
27   through rates that are different for particular products or customers.   2003 WL 23105550, at *2
(noting that if Microsoft had "offered [any] evidence or [an] expert to establish that the pass-
28   through rate is different or unique for any particular product, any distribution channel, any time
frame, or any subset of class members," decertification would have been necessary).

18

DEFENDANTS' JOINT OBJECTIONS TO THE REPORT AND                                    Case No. 07-5944 SC
RECOMMENDATION REGARDING INDIRECT PURCHASER                                       MDL NO. 1917
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

1   conduct pass-on analyses whenever it was available.  Certification R&R at 31.  She did not.  As

2   just one example, ████████████████████████████████████

3   ████████████████████████████████████

4   ████████████████████████████████████

5   ████████████████████████████████████

6   ████████████████████████████████████

7   ████████████████████████████████████

8   ████████████████████████████████████

9   ████████████████████████████████████

10  ████████████████████████████████████

11  ██████████ underscores why Dr. Netz's use of averages is inherently unreliable in this context

12  and cannot satisfy plaintiffs' burden to demonstrate a common method of proving injury to all

13  class members under Rule 23.[29]

14      *Finally*, perhaps the strongest indication of the Special Master's erroneous endorsement of

15  Dr. Netz's unreliable use of averages is that it was based in part on the fact that Defendant's

16  expert, Dr. Willig, also used averages, but for a very different (and proper) purpose.  ██████

17  ████████████████████████████████████

18  ████████████████████████████████████

19  ████████████████████████████████████

20

21  [28] *See also* Willig Rebuttal Decl. ¶ 122 n.170, n.171 ████████

22  ████████████████████

23

24  [29] Similarly, the lack of injury to many class members due to variations in prices and pass-on is
    evident in the transaction-level pricing data provided by numerous distributors, manufacturers,
25  and retailers. ██████████

26  ████████████████████████████████████

27  ████████████  This is why the use of "averages" for estimating pass-
    on fails the Rule 23 test.  *Flash Memory*, 2010 WL 2332081, at *10; *GPU*, 253 F.R.D. at 489,
28  494.

DEFENDANTS' JOINT OBJECTIONS TO THE REPORT AND
RECOMMENDATION REGARDING INDIRECT PURCHASER
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Case No. 07-5944 SC
MDL NO. 1917

1 ████████████████████████████████████████████████████

2 ████████████████████████████████████████████████████

3 ████████████████████████████████████████████████████

4 ████████    Yet, the Special Master's only accounting of Dr. Willig's undisputed analysis –

5 which exposed the fallacy in Dr. Netz's averaging approach – was to use it as a means to justify

6 Dr. Netz's unreliable use of averages.

7     **2.    Dr. Netz's Improper Use of Data Not Shown to be Representative**

8 It is well-established that an expert must do something reliable to show that the data being

9 used is either random or representative of the population for which an opinion is being offered.

10 *See, e.g.*, *Rowe Entm't, Inc. v. William Morris Agency, Inc.*, No. 98 CIV 8272(RPP), 2003 WL

11 22124991, at *3 (S.D.N.V. Sept. 15, 2003) (excluding expert testimony of an economist that was

12 based on non-random data without any showing that the sample used was representative of the

13 population as a whole); *see also* MTS R&R Br. at 15-18.  The Special Master's Recommendation

14 failed to confront the undisputed fact that Dr. Netz declined to test whether her relatively small

15 and admittedly non-random data samples used to analyze pass-through are in any way

16 representative of the remaining sales to class members for which her studies do not account.

17 Instead, the Special Master simply recounted the amount of data that Dr. Netz "examined" and the

18 many "studies" she purports to have conducted.  Certification R&R at 31-32.  The sheer amount

19 of data used, however, does not provide any evidence that such data is representative of the

20 relevant population that sold CRT products to the class.

21 Dr. Netz concedes that she applied *no* test to determine the representativeness of the data,

22 relying only on her "subjective judgment" to make that determination.  Netz Tr. 357:22-358:3,

23 360:1-361:3.  Yet, ████████████████████████████████████████

24 ████████████████████████████████████████████████████

25 ████████████████████████████    *See* MTS R&R Br. at 7.  This gap is another fatal legal

26 error that renders Dr. Netz's analysis incapable of satisfying plaintiffs' Rule 23(b)(3) burden to

27 prove a common method for reliably proving class-wide injury and impact.  *See, e.g.*, *Rowe*, 2003

28 WL 22124991, at *3 (excluding expert testimony of an economist that was based on non-random

20

DEFENDANTS' JOINT OBJECTIONS TO THE REPORT AND           Case No. 07-5944 SC
RECOMMENDATION REGARDING INDIRECT PURCHASER       MDL NO. 1917
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

1   data without any showing the sample used was representative of the population as a whole); *see*

2   *also* Defs.' Mot. to Strike the Proposed Expert Test. of Dr. Janet S. Netz 21-22, Dec. 17, 2012

3   ("Motion to Strike").

4
5
         **3.      Dr. Netz's False Factual Assumptions Render Her Common Impact
                   and Injury Opinions Unreliable**

6         In their Motion to Strike, defendants demonstrated that Dr. Netz's testimony is

7   fundamentally unreliable because it is based on a number of false factual assumptions which

8   render it incapable of demonstrating common impact or injury in this case.  Motion to Strike at 7-

9   13.  Most profoundly, Dr. Netz admits that she can opine that there was class-wide pass-through

10  *only if* three essential facts are *assumed* to be true – that each of the alleged cartel price increases

11  were "significant," "permanent," and "industry-wide."  Decl. of Janet S. Netz, Ph.D., in Supp. of

12  Indirect-Purchaser Pls.' Opp'n to Defs.' Mot. to Strike the Proposed Expert Test. of Dr. Janet S.

13  Netz 5, Feb. 15, 2013 ("Netz MTS Decl."); Netz Tr. 272:24-273:13.  In reality, Dr. Netz has been

14  forced to concede that none of these assumptions is supported by the record, destroying the

15  reliability of her entire analysis in this case.

16        Specifically, because Dr. Netz has not yet estimated any "but-for" prices, she admits that

17  she cannot opine whether any of the alleged cartel price increases were "significant."  Netz Tr.

18  326:19-24.  Similarly, Dr. Netz concedes that she is not in a position to opine whether any of the

19  alleged cartel prices were "permanent," and indeed, she has not even concluded what "permanent"

20  should mean in the context of this case.  *Id.* at 328:11-25, 336:20-337:10, 333:19-334:3, 401:11-

21  14.  Finally, Dr. Netz concedes that she has no evidence that the alleged cartel price increases

22  would have applied to Sony, who is not an alleged co-conspirator and who manufactured a unique

23  CRT for its own use, let alone any producers of competing LCD and plasma TV and monitor

24  products.  *Id.* at 56:13-16, 226:6-9, 284:13-285:11, 300:1-12.  There is thus no record support for

25  Dr. Netz's "industry-wide" price increase assumption.  *See* Reply Mem. of Law in Supp. of Defs.'

26  Mot. to Strike the Proposed Expert Test. of Dr. Janet S. Netz 15, Mar. 25, 2013 ("MTS Reply").

27        Based on the above undisputed facts, there is simply no record support for Dr. Netz's three

28  unsupported, factual assumptions, which she admits are a necessary predicate to support her

                                        21

1    opinions about universal pass-through to the class.  Netz MTS Decl. 5 ("competition . . . precludes

2    firms from passing-through cost changes that do not satisfy all three criteria"); *see also* MTS

3    Reply at 2-5.  The Special Master tried to avoid this conclusion by offering his own opinion that

4    the alleged cartel price increases would have been significant.  Motion to Strike R&R at 17-18.

5    But it is up to plaintiffs to establish the factual reliability of these assumptions and neither the

6    Special Master nor this Court can excuse plaintiffs from meeting their Rule 23 burden when their

7    own expert admits under oath that she has not yet conducted the analyses necessary to determine

8    if her essential factual assumptions to support an opinion about class-wide pass-through are

9    correct.

10       Similarly, there is no justification for Dr. Netz's unsupported factual assumption that █████

11 ████████████████████████████████████████████████████████████████

12 ████████████████████████████████████████████████████████████████

13 ████████████████████████████████████████████████████████████████

14 ████████████████████████████

15             ████████████████████████████████████████████████████

16             ███████████████████████████████████

17             █████████

18 ████████████████████████████████████████████████████████████████

19 ████████████████████████████████████████████████████████████ *See*

20    MTS Reply at 27-28.  This is just another example of Dr. Netz making up a record that does not

21    exist – a practice which renders her testimony unreliable for any purpose, including satisfying

22    plaintiffs' obligation to prove a common method of establishing class-wide impact and injury

23    under Rule 23(b)(3).

24       The Special Master's stated belief that "most of the CRTs sold to class members were

25    manufactured in Asia" (Certification R&R at 35), █████████████████████████████████████

26 ████████████████████████████████████████████████████████████████

27 _____

28 [30] Netz Tr. 34:2-7.

22

DEFENDANTS' JOINT OBJECTIONS TO THE REPORT AND
RECOMMENDATION REGARDING INDIRECT PURCHASER
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Case No. 07-5944 SC
MDL NO. 1917

1 ██████████████████████████████████████████████████████████

2 ██████████████████████████████████████████████████████████

3 ██████████████████████████████████████████████████████████

4 ██████████████████████████████████████████████████████████

5 ██████████████████████████████████████████████████████████

6 ████████████████████████████████████

7        *Further*, the Special Master erroneously tried to bolster ████████████████

8 ██████████████████████████████████████████████████████████

9 ██████████████████████████████████████████████████████████

10 ██████████████████████████████████████████████████████████

11 ██████████████████████████████████████████████████████████

12 ██████████████████████████████████████████████████████████

13 ██████████████████████████████████████████████████████████

14 ██████████████████████████████████████████████████████████

15 ██████████████████████████████████████████████████████████

16 ██████████████████████████████████████████████████████████

17 ██████████████████████████████████████████████████████████

18 ██████████████████████████████████████████████████████████

19 ██████████████████████████████████████████████████████████

20 ██████████████████████████████████████████████████████████

21 ██████████████████████████████████████████████████████████

22 ████████████    Dr. Netz's unsupported factual assumptions and unreliable methodologies simply

23 cannot be the basis for any expert opinions about class-wide injury and impact.

24
25 **V.    *LCD* IS NOT A BASIS FOR CERTIFYING AN INDIRECT PURCHASER CLASS IN THIS CASE**

26         Implicitly acknowledging that Dr. Netz's analyses cannot withstand the independent

27 rigorous analysis required by this Court of the specific record here, plaintiffs have repeatedly

28 argued that the Special Master and this Court should just defer to Judge Illston's ruling certifying

23

DEFENDANTS' JOINT OBJECTIONS TO THE REPORT AND
RECOMMENDATION REGARDING INDIRECT PURCHASER
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Case No. 07-5944 SC
MDL NO. 1917

1    an indirect purchaser class in *LCD*.  As a matter of law, the Special Master erred in relying upon

2    the ruling in *LCD* for this purpose.  *See* Certification R&R at 20 n.5 (stating that "Dr. Netz used

3    similar analyses" in both cases and reached "similar conclusions").

4              *First*, plaintiffs are precluded from trying to meet their Rule 23(b)(3) burden in this case

5    by relying on the class certification decision in *LCD* given their refusal to produce the testimony

6    and expert materials submitted by Dr. Netz in support of class certification in that litigation.  Netz

7    Tr. 296:1-5, 297:3-299:7, 318:6-320:15.  Plaintiffs claim that the protective order in *LCD* prevents

8    them from revealing the confidential contents of Dr. Netz's analysis in that case, but they cannot

9    use *LCD* as both sword and shield.  *Id.*  If plaintiffs are unable to produce Dr. Netz's work from

10   *LCD*, they cannot claim that the alleged similarity of that work to what she has done here supports

11   the persuasiveness of her opinions in this case.  *Cf. In re Leap Wireless Int'l, Inc.*, 301 B.R. 80,

12   84-85 (Bankr. S.D. Cal. 2003) (striking expert testimony where expert's refusal to disclose the

13   underlying facts or data upon which he relied left the court "with the bare option of . . . to trust but

14   not to verify"); *In re Lake States Commodities, Inc.*, 271 B.R. 575, 587-88 (Bankr. N.D. Ill. 2002)

15   (holding that "the [report] carries no weight due to the lack of meaningful testing of the

16   information upon which it is based and the insufficient validation of the underlying sources").

17             This is particularly so given the fact that even the limited information publicly available

18   regarding Dr. Netz's expert testimony in *LCD* shows that her analyses in that case – involving

19   different products, different defendant groups and different time periods – were not substantially

20   similar to her analyses or methodologies here.  For example:

21        • Dr. Netz determined whether average prices of different sizes of LCD panels were

22          correlated.   She did no such price correlation analysis regarding CRTs for

23          undisclosed "subjective reasons."  Netz Tr. 106:1-108:20.

24        • Dr. Netz analyzed whether average actual prices of LCDs were correlated with

25          target prices.  She did not do that regarding CRTs.  *Id.*

26        • *LCD* involved a rapidly growing market and cutting-edge technology with rising

27          demand.  ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

28          ■■■■■■■■■■■■■■■■■  *Id.* at 120:3-121:9, 115:15-22; Willig Decl. ¶ 54.

24

- Judge Illston relied on evidence that price negotiations for LCD panels were based on common pricing.  *LCD*, 267 F.R.D. at 601.  ███████████████ ███████████████████████████████████████████████████ ██████████████████████████  Opp'n at 6-7.

- Dr. Netz's damages assessment methods were approved in *LCD* because they were "not so insubstantial as to amount to no method at all."  267 F.R.D. at 606.  As discussed above, this standard is overruled by *Comcast*.  133 S. Ct. at 1433.

In sum, this Court must scrutinize the record facts and Dr. Netz's analyses in this case alone to determine if plaintiffs have met their burden under Rule 23(b)(3) to establish a reliable common means of proving class-wide injury, impact and measure of damages.  Neither the decision in *LCD*, nor any other case certifying a class, can overcome the fatal gaps in record evidence and reliable expert testimony which require that plaintiffs' motion for class certification be rejected.

### CONCLUSION

For each reason stated above and in defendants' objections to the Motion to Strike R&R, and for the reasons set forth in defendants' briefing to the Special Master, the Special Master's Certification R&R should be rejected and the Indirect Plaintiffs' Motion for Class Certification should either be denied or remanded for further proceedings by Judge Legge under the proper legal standards.

DATED: July 22, 2013                    WINSTON & STRAWN LLP

By: */s/ Jeffrey L. Kessler*
JEFFREY L. KESSLER (*pro hac vice*)
Email: jkessler@winston.com
A. PAUL VICTOR (*pro hac vice*)
Email: pvictor@winston.com
ALDO A. BADINI (257086)
Email: abadini@winston.com
EVA COLE (*pro hac vice*)
Email: EWCole@winston.com
MOLLY M. DONOVAN (*pro hac vice*)
Email: MMdonovan@winston.com
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, New York 10166-4193
Telephone: (212) 294-4692
Facsimile: (212) 294-4700

25

DEFENDANTS' JOINT OBJECTIONS TO THE REPORT AND
RECOMMENDATION REGARDING INDIRECT PURCHASER
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Case No. 07-5944 SC
MDL NO. 1917

STEVEN A. REISS (*pro hac vice*)
Email: steven.reiss@weil.com
DAVID L. YOHAI (*pro hac vice*)
Email: david.yohai@weil.com
ADAM C. HEMLOCK (*pro hac vice*)
Email: adam.hemlock@weil.com
DAVID E. YOLKUT (*pro hac vice*)
Email: david.yolkut@weil.com
**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, New York 10153-0119
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

GREGORY D. HULL (57367)
Email: greg.hull@weil.com
**WEIL, GOTSHAL & MANGES LLP**
201 Redwood Shores Parkway
Redwood Shores, California 94065-1175
Telephone: (650) 802-3000
Facsimile: (650) 802-3100

*Attorneys for Defendants Panasonic*
*Corporation of North America, MT Picture*
*Display Co., Ltd. and Panasonic Corporation*
*(f/k/a Matsushita Electric Industrial Co.)*

FRESHFIELDS BRUCKHAUS
DERINGER US LLP

By: /s/ *Richard Snyder*
TERRY CALVANI (SBN 53260)
Email: terry.calvani@freshfields.com
CHRISTINE LACIAK(*pro hac vice*)
Email: christine.laciak@freshfields.com
RICHARD SNYDER (*pro hac vice*)
Email: richard.snyder@freshfields.com
**FRESHFIELDS BRUCKHAUS**
**DERINGER US LLP**
701 Pennsylvania Avenue NW, Suite 600
Washington, DC  20004
Telephone: (202) 777-4565
Facsimile: (202) 777-4555

*Attorneys for Beijing-Matsushita Color CRT*
*Company, Ltd.*

MORGAN, LEWIS & BOCKIUS LLP

By: /s/ *Kent M. Roger*
KENT M. ROGER (SBN 95987)
Email: kroger@morganlewis.com
MICHELLE PARK CHIU (SBN 248421)
Email: mchiu@morganlewis.com

26

DEFENDANTS' JOINT OBJECTIONS TO THE REPORT AND
RECOMMENDATION REGARDING INDIRECT PURCHASER
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Case No. 07-5944 SC
MDL NO. 1917

1

**MORGAN, LEWIS & BOCKIUS LLP**
One Market, Spear Street Tower

2
San Francisco, California 94105-1126
Telephone: (415) 442-1000

3
Facsimile: (415) 442-1001

4
J. CLAYTON EVERETT, JR. (*pro hac vice*)
Email: jeverett@morganlewis.com

5
SCOTT A. STEMPEL (*pro hac vice*)
Email: sstempel@morganlewis.com

6
**MORGAN, LEWIS & BOCKIUS LLP**
111 Pennsylvania Avenue, NW

7
Washington, DC 20004
Telephone: (202) 739-3000

8
Facsimile: (202) 739-3001

9
*Attorneys for Defendants Hitachi, Ltd., Hitachi*
*Displays, Ltd., Hitachi Asia, Ltd., Hitachi*

10
*America, Ltd., and Hitachi Electronic Devices*
*(USA), Inc.*

11

12
SHEPPARD MULLIN RICHTER &
HAMPTON

13

By: /s/ *Gary L. Halling*
14
GARY L. HALLING (SBN 66087)
Email: ghalling@sheppardmullin.com

15
JAMES L. MCGINNIS (SBN 95788)
Email: jmcginnis@sheppardmullin.com

16
MICHAEL W. SCARBOROUGH (SBN 203524)
Email: mscarborough@sheppardmullin.com

17
**SHEPPARD MULLIN RICHTER &**
**HAMPTON**

18
Four Embarcadero Center, 17th Floor
San Francisco, California  94111

19
Telephone:  (415) 434-9100
Facsimile:  (415) 434-3947

20

*Attorneys for Defendants Samsung SDI America,*
21
*Inc. Samsung SDI Co., Ltd.; Samsung SDI*
*(Malaysia) SDN. BHD.; Samsung SDI Mexico*

22
*S.A. DE C.V.; Samsung SDI Brasil Ltda.;*
*Shenzen Samsung SDI Co., Ltd. And Tianjin*

23
*Samsung SDI Co., Ltd.*

24
BAKER BOTTS LLP

25
By: /s/ *Jon V. Swenson*
JON V. SWENSON (SBN 233054)

26
Email: jon.swenson@bakerbotts.com
**BAKER BOTTS LLP**

27
1001 Page Mill Road
Building One, Suite 200

28
Palo Alto, CA 94304

27

DEFENDANTS' JOINT OBJECTIONS TO THE REPORT AND
RECOMMENDATION REGARDING INDIRECT PURCHASER
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Case No. 07-5944 SC
MDL NO. 1917

1    Telephone: (650) 739-7500
     Facsimile: (650) 739-7699

2
     John M. Taladay (*pro hac vice*)
3    Email: john.taladay@bakerbotts.com
     Joseph Ostoyich (*pro hac vice*)
4    Email: joseph.ostoyich@bakerbotts.com
     **BAKER BOTTS LLP**
5    1299 Pennsylvania Avenue N.W.
     Washington, DC 20004-2400
6    Telephone: (202) 639-7700
     Facsimile: (202) 639-7890
7
     *Attorneys for Defendants Koninklijke Philips*
8    *Electronics N.V. and Philips Electronics North*
     *America Corporation*
9
     WHITE & CASE LLP
10
     By: /s/ *Lucius B. Lau*
11   CHRISTOPHER M. CURRAN (*pro hac vice*)
     Email: ccurran@whitecase.com
12   DANA E. FOSTER (*pro hac vice*)
     E-mail: defoster@whitecase.com
13   LUCIUS B. LAU (*pro hac vice*)
     Email: alau@whitecase.com
14   **WHITE & CASE LLP**
     701 Thirteenth Street, N.W.
15   Washington, DC  20005
     Telephone: (202) 626-3600
16   Facsimile: (202) 639-9355

17   *Attorneys for Defendants Toshiba Corporation,*
     *Toshiba America Information Systems, Inc.,*
18   *Toshiba America Consumer Products, L.L.C.,*
     *and Toshiba America Electronic Components,*
19   *Inc.*

20

21   Pursuant to Local Rule 5-1(i)(3), the filer attests that concurrence in the filing of this document

22   has been obtained from each of the above signatories.

23

24

25

26

27

28

DEFENDANTS' JOINT OBJECTIONS TO THE REPORT AND                     Case No. 07-5944 SC
RECOMMENDATION REGARDING INDIRECT PURCHASER                        MDL NO. 1917
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION