Guido Saveri (22349)
guido@saveri.com
R. Alexander Saveri (173102)
rick@saveri.com
Geoffrey C. Rushing (126910)
grushing@saveri.com
Travis L. Manfredi (281779)
travis@saveri.com
SAVERI & SAVERI
706 Sansome Street
San Francisco, California 94111
Telephone: (415) 217-6810
Facsimile: (415) 217-6813

*Interim Lead Counsel for the Direct Purchaser Plaintiffs*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. CV-07-5944-SC |
| | MDL No. 1917 |
| This Document Relates to: | |
| **ALL DIRECT PURCHASER ACTIONS** | **CORRECTED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DIRECT PURCHASER PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |
| | Date:  TBD |
| | Time:  TBD |
| | Judge: Hon. Charles A. Legge (Ret.) Special Master |
| | The Honorable Samuel Conti |

# <u>DOCUMENT SUBMITTED UNDER SEAL</u>
# <u>AND</u>
# <u>CHAMBERS COPY</u>

# <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ............................................................................................. i

TABLE OF AUTHORITIES ..................................................................................... iii

I.     INTRODUCTION............................................................................................1

II.    PROPOSED CLASS TO BE CERTIFIED. ......................................................4

III.   FACTUAL BACKGROUND. ...........................................................................5

    A.  The Investigations by the DOJ and Other Governmental Authorities. ......................5

    B.  The LCD Conspiracy and Litigation. ...............................................................5

    ■ ██████████████████████████████████ .............6

    ■ ███████████████████████████ .............6

    ■ ███████████████████████ .............9

    ■ █████████████████████████████ ............12

    ■ ██████████████████ ............13

    ■ █████████████████ ............15

    ■ ████████████ ............16

III.   ARGUMENT. ................................................................................................17

    A.  Plaintiffs Satisfy the Requirements of Rule 23(a)..............................................18

        1.  The Proposed Class Is Sufficiently Numerous. ..............................................18

        2.  This Case Involves Common Questions of Law and Fact. ..............................18

        3.  Plaintiffs' Claims Are Typical of the Claims of the Class. .............................19

        4.  Plaintiffs Will Fairly and Adequately Represent the Interest of the Class........................20

    B.  This Action Meets the Requirements of Rule 23(b)(3). ........................................22

        1.  Common Questions of Law and Fact Predominate...........................................22

            a.  The Existence and Nature of the Conspiracy .............................................23

            b.  Antitrust Injury and Impact ........................................................................24

        ██████████████████████████████████

i

ii.  Dr. Leitzinger's Economic Analysis of the Structure of the CRT Industry Is Sufficient to Show Classwide Impact. ...................................................27

iii.  Dr. Leitzinger's Statistical Analyses Demonstrate that Impact Can Be Proven On a Classwide Basis ...........................................................................29

iv.  The Presence of Finished Product Purchasers in the Class Does Not Alter the Analysis ................................................................................................32

   c.  Classwide Measure Of Damages...........................................................................33

   d.  Fraudulent Concealment ......................................................................................35

2.  A Class Action Is the Superior and Most Efficient Method for Adjudicating This Case. ...........................................................................................................................38

CONCLUSION ...................................................................................................................39

CORRECTED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DIRECT PURCHASER PLAINTIFFS' MOTION FOR CLASS CERTIFICATION: Master File No. CV-07-5944-SC

# TABLE OF AUTHORITIES

## CASES

*Allen v Dairy Farmers of Am. Inc.*,
  Case No. 5:09-cv-230, 2012 U.S. Dist. LEXIS 164718 (D. Vt. Nov. 19, 2012) .......................32

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ....................................................................................................2, 22

*Amgen Inc. v. Conn. Ret. Plans*,
  133 S. Ct. 1184 (2013) ..............................................................................................17, 22

*Bafus v. Aspen Realty, Inc.*,
  236 F.R.D. 652 (D. Idaho 2006) ......................................................................................18

*Bigelow v. RKO Radio Pictures, Inc.*,
  327 U.S. 251 (1946) ........................................................................................................34

*Blackie v. Barrack*,
  524 F.2d 891 (9th Cir. 1975), *cert. denied*, 429 U.S. 816 (1976) ...................................21

*Brand Name Prescription Drugs Antitrust Litig.*,
  MDL No. 897, 1994 WL 663590 (N.D. Ill. Nov. 18, 1994) .............................................38

*Cifuentes v. Red Robin Int'l*,
  No. C-11-535-EMC, 2012 WL 693930 (N.D. Cal. Mar. 1, 2012) ...................................19

*City of Burbank v. Gen. Elec. Co.*,
  329 F.2d 365 (9th Cir. 1964) .............................................................................................5

*Comcast Corp. v. Behrend*,
  133 S. Ct. 1426 (2013) ....................................................................................................33

*Coppinger-Martin v. Solis*,
  627 F.3d 745 (9th Cir. 2010) ...........................................................................................36

*E.W. French & Sons, Inc. v. Gen. Portland Inc.*,
  885 F.2d 1392 (9th Cir. 1989) .........................................................................................37

*Eisen v. Carlisle & Jacqueline*,
  417 U.S. 156 (1974) ........................................................................................................17

*Ellis v. Costco Wholesale Corp.*,
  657 F.3d 970 (9th Cir. 2011) .............................................................................17, 18, 35

*General Leaseways v. Nat'l Truck Leasing Ass'n*,
  744 F.2d 588 (7th Cir. 1984) ...........................................................................................27

*Gordon v. Microsoft Corp.*,
  No.. MC 00-5994, 2003 WL 23105550 (Minn. Dist. Ct. Dec. 15, 2003) ........................35

*Greenhaw v. Lubbock County Beverage Assocs.*,
  721 F.2d 1019 (5th Cir. 1983), *rev'd on other grounds, Int'l Woodworkers of Am., AFL-CIO & its Local No. 5-376 v. Champion Int'l Corp.*, 790 F.2d 1174 (5th Cir. 1986) ...............34

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) .........................................................................................19

*Hawaii v. Standard Oil Co.*,
  405 U.S. 251 (1972) ........................................................................................................17

*Illinois Brick Co. v. Illinois*,
  431 U.S. 720 (1977) ..........................................................................................................4

iii

CORRECTED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DIRECT PURCHASER
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION: Master File No. CV-07-5944-SC

*In re Aftermarket Auto. Lighting Prods. Antitrust Litig.*,
    276 F.R.D. 364 (C.D. Cal. 2011) ..................................................................... *passim*

*In re Apple & AT&T iPad Unlimited Data Plan Litig.*,
    No. C-10-02553 RMW, 2012 WL 2428248 (N.D. Cal. June 26, 2012) .......................33

*In re Apple Pod iTunes Antitrust Litig.*
    No. C 05-00037JW, 2011 WL 5864036 (N.D. Cal. Nov. 22 2011).........................2, 24, 33

*In re Cardizem CD Antitrust Litig.*,
    200 F.R.D. 326 (E.D. Mich. 2001).........................................................................26, 34

*In re Catfish Antitrust Litig.*,
    826 F. Supp. 1019 (N.D. Miss 1993) ............................................................................19

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
    No. C-07-5944-SC, 2012 WL 5987861 (N.D. Cal. Nov. 29, 2012) (Dkt. No. 1470)...................3

*In re Chocolate Confectionary Antitrust Litig.*,
    No. 1:08-MDL-1935, 2012 WL 6652501 (M.D. Pa. Dec. 7, 2012).................17, 20, 27, 31

*In re Citric Acid Antitrust Litig.*,
    No. 95-1092, C-95-2963 FMS, 1996 WL 655791 (N.D. Cal. Oct. 2, 1996) ..................... *passim*

*In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*,
    782 F. Supp. 487 (C.D. Cal. 1982)................................................................................37

*In re Corrugated Container Antitrust Litig.*,
    80 F.R.D. 244 (S.D. TEx. 1978) ...................................................................20, 23, 36

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
    No. M 02-1486 PJH, 2006 WL 1530166 (N.D. Cal. June 5, 2006) ..................... *passim*

*In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*,
    256 F.R.D. 82 (D.Conn.2009)...................................................................................24, 26

*In re Fine Paper Antitrust Litig.*,
    82 F.R.D. 143 (E.D. Pa. 1979) ......................................................................................20

*In re Flat Glass Antitrust Litig.*,
    191 F.R.D. 472 (W.D. Pa. 1999)...................................................................20, 27, 36

*In re Folding Cartons Antitrust Litig.*,
    75 F.R.D. 727 (N.D. Ill. 1977) ........................................................................................3

*In re High-Tech Employee Antitrust Litig.*,
    No. 11-CV-02509-LHK, 2013 WL 1352016 (N.D. Cal. 2013) .......................25, 27, 33

*In re Indus. Diamonds Antitrust Litig.*,
    167 F.R.D. 374 (S.D.N.Y. 1996)....................................................................................36

*In re Linerboard Antitrust Litig.*,
    203 F.R.D. 197 (E.D. Pa. 2001), *aff'd*, 305 F.3d 145 (3d Cir. 2002), *cert. denied sub nom. Gaylord Container Corp. v. Garrett Paper, Inc.*, 538 U.S. 977 (2003).........................36

*In re Linerboard Antitrust Litig.*,
    305 F.3d 145 (3d Cir. 2002), *cert. denied sub nom. Gaylord Container Corp. v. Garrett Paper, Inc.*, 538 U.S. 977 (2003) ..................................................................27, 32

*In re NASDAQ Market-Makers Antitrust Litig.*,
    169 F.R.D. 493 (S.D.N.Y. 1996).......................................................................26, 34, 36

*In re Nifedipine Antitrust Litig.*,
    246 F.R.D. 365 (D.D.C. 2007) .....................................................................................34

*In re Online DVD Rental Antitrust Litig.*,
  No. M 09-2029 PJH, 2010 WL 5396064 (N.D. Cal. Dec. 23, 2010) ................................. *passim*

*In re Optical Disk Drive Antitrust Litig.*,
  No. 3:10-md-2143 RS, 2012 WL 1366718 (N.D. Cal. Apr. 19, 2012) .................................4

*In re Polyurethane Foam Antitrust Litig.*,
  799 F. Supp. 2d 777 (N.D. Ohio 2011) ................................................................................37

*In re Potash Antitrust Litig.*,
  159 F.R.D. 682 (D. Minn. 1995) ..........................................................................................36

*In re Pressure Sensitive Labelstock Antitrust Litig.*,
  03-MDL-1556, 2007 WL 4150666 (M.D. Pa. Nov. 19, 2007) ............................................34

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
  287 F.R.D. 1 (D.D.C. 2012) ...........................................................................17, 25, 31, 38

*In re Ready-Mixed Concrete Antitrust Litig.*,
  261 F.R.D. 154 (S.D. Ind. 2009) ..........................................................................................31

*In re Rubber Chems. Antitrust Litig.*,
  232 F.R.D. 346 (N.D. Cal. 2005) ................................................................................ *passim*

*In re Rubber Chems. Antitrust Litig.*,
  504 F. Supp. 2d 777 (N.D. Cal. 2007) .................................................................................37

*In re Scrap Metal*,
  527 F.3d 517 (6th Cir. 2008), *aff'd*, 527 F.3d 517 (6th Cir. 2008), *cert. denied*, 129 S.
  Ct. 673 (2009 ...................................................................................................................35, 38

*In re Southeastern Milk Antitrust Litig.*,
  2010-2 Trade Cases (CCH) ¶ 77 (E.D. Tenn. Sept. 7, 2010) ..............................................36

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
  264 F.R.D. 603 (N.D. Cal. 2009) ..........................................................................................34

*In re Static Random Access Memory (SRAM) Antitrust Litig.*, No. C 07-01819 CW,
  2008 WL 4447592 (N.D. Cal., Sept. 29, 2008)................................................................. *passim*

*In re Sugar Indus. Antitrust Litig.*,
  579 F.2d 13 (3d Cir. 1978) ...................................................................................................32

*In re Tableware Antitrust Litig.*,
  241 F.R.D. 644 (N.D. Cal. 2007) .......................................................................................2, 3

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  267 F.R.D. 291 (N.D. Cal. 2010) ................................................................................ *passim*

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  267 F.R.D. 583 (N.D. Cal. 2010) .........................................................................................35

*In re Titanium Dioxide Antitrust Litig.*,
  284 F.R.D. 328 (D. Md. 2012) ........................................................................17, 25, 27, 31

*In re Vitamin C Antitrust Litig.*,
  279 F.R.D. 90 (E.D.N.Y. 2012) ......................................................................................17, 24

*In re Vitamins Antitrust Litig.*,
  209 F.R.D. 251 (D.D.C. 2002) ........................................................................................24, 36

*In re Vitamins Antitrust Litig.*,
  No. MISC 99-197(TFH), 2000 WL 1475705 (D.D.C. May, 9, 2010) ..................................37

*Kohen v. Pac. Inv. Mgmt. Co.*,
  571 F.3d 672 (7th Cir. 2009), *cert. denied*, 130 S. Ct. 1504 (2010) ...................................25

v

*Lozano v. AT&T Wireless Servs., Inc.*,
  504 F.3d 718 (9th Cir. 2007) .................................................................................. 19

*Meijer, Inc. v. Abbott Labs.*,
  No. C 07-5985 CW, 2008 WL 4065839 (N.D. Cal. Aug. 27, 2008) ......................... 24

*Meijer, Inc. v. Warner Chilcott Holdings Co. III*,
  246 F.R.D. 293 (D.D.C. 2007) ................................................................................ 25

*Messner v. Northshore Univ. HealthSystem*,
  669 F.3d 802 (7th Cir. 2012) ..............................................................22, 23, 24, 25

*Minn-Chem, Inc. v. Agrium Inc.*,
  683 F.3d 845 (7th Cir. 2012) ........................................................................... 27, 28

*Natchitoches Parish Hosp. Serv. Dist. v. Tyco Intern., Ltd.*,
  247 F.R.D. 253 (D.Mass.2008) .............................................................................. 25

*New York v. Hendrickson Bros. Inc.*,
  840 F.2d 1065 (2d Cir.), *cert. denied*, 488 U.S. 848 (1988) ................................... 38

*Pecover v. Electronic Arts, Inc.*,
  No. C 08-2820 VRW, 2010 U.S. Dist. LEXIS 140632 (N.D. Cal. Dec. 10, 2010) ......... 2

*Presidio Golf Club of San Francisco, Inc. v. National Linen Supply Corp.*,
  No. C 71-431 SW, 1976 WL 1359 (N.D. Cal. Dec. 30, 1976) ................................... 35

*Reiter v. Sonotone Corp.*,
  442 U.S. 330 (1979) ......................................................................................... 17, 24

*Riddell v. Riddell Wash. Corp.*,
  866 F.2d 1480 (D.C. Cir. 1989) .............................................................................. 38

*Ries v. Arizona Beverages USA LLC*,
  287 F.R.D. 523 (N.D. Cal. 2012) ............................................................................ 18

*Rodriguez v. West Publ'g Co.*,
  563 F.3d 948 (9th Cir. 2009) .................................................................................. 20

*Royal Printing Co. v. Kimberly Clark Corp.*,
  621 F.2d 323 (9th Cir. 1980) .............................................................................. 4, 32

*Rutledge v. Boston Woven Hose & Rubber Co.*,
  576 F.2d 248 (9th Cir. 1978) .................................................................................. 36

*Santa Maria v. Pacific Bell*,
  202 F.3d 1170 (9th Cir. 2000) ................................................................................ 36

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) .................................................................................. 20

*Stearns v. Ticketmaster Corp.*,
  655 F.3d 1013 (9th Cir. 2011), *cert denied*, 132 S. Ct. 970 (2012) ........................ 33

*Story Parchment Co. v. Paterson Parchment Paper Co.*,
  282 U.S. 555 (1931) ............................................................................................... 33

*Sullivan v. DB Investments, Inc.*
  667 F.3d 273 (3d Cir. 2011), *cert. denied sub nom. Murray v. Sullivan*, 132 S. Ct. 1876
  (2012) ................................................................................................................... 22

*Supermarket of Marlinton Inc. v. Meadow Gold Dairies, Inc.*,
  71 F.3d 119 (4th Cir. 1994) .................................................................................... 37

*Taylor v. Merrick*,
  712 F.2d 1112 (7th Cir. 1983) ................................................................................ 37

*Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc.*,
  209 F.R.D. 159 (C.D. Cal. 2002) ...................................................................................19, 22, 32

*VSL Corp. v. Conmar Corp.*,
  488 U.S. 1010 (1989) ........................................................................................................37

*Wal-Mart Stores Inc. v. Dukes*,
  131 S. Ct. 2541 (2011) ................................................................................................17, 18

*Welling v. Alexy*,
  155 F.R.D. 654 (N.D. Cal. 1994) ......................................................................................18

*Wolin v. Jaguar Land Rover N. Am.*, LLC,
  617 F.3d 1168 (9th Cir. 2010) ..........................................................................................18

*Yokoyama v. Midland Nat'l Life Ins. Co.*,
  594 F.3d 1087 (9th Cir. 2010) ..........................................................................................33

*Zenith Corp. v. Hazeltine Research Inc.*,
  401 U.S. 321 (1971) ..........................................................................................................36

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
  395 U.S. 100 (1969) ..........................................................................................................24

## STATUTES

15 U.S.C. § 1 ...............................................................................................................................1

15 U.S.C. § 15b ....................................................................................................................4, 35

15 U.S.C. § 16(a) ........................................................................................................................5

## OTHER AUTHORITIES

Alba Conte & Herbert Newberg, *Newberg on Class Actions* (4th ed. 2002)................................18

Phillip Areeda & Herbert Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles
  and Their Application* (2013) .............................................................................................33

## RULES

Federal Rule of Civil Procedure 23 ................................................................................ *passim*

CORRECTED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DIRECT PURCHASER
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION: Master File No. CV-07-5944-SC

# I.    **INTRODUCTION.**

The Cathode Ray Tube ("CRT") litigation involves one of the most well-documented global price-fixing conspiracies in history.[1] ████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

Worldwide government investigations have confirmed the existence of the conspiracy. Two Defendants have confessed: Defendant Samsung SDI ("SDI") pleaded guilty to a criminal violation of Section 1 of the Sherman Act (15 U.S.C. § 1); Defendant Chunghwa Picture Tubes, Ltd. ("Chunghwa") admitted participation in the conspiracy and has sought amnesty from the United States Department of Justice ("DOJ"). The DOJ has indicted former employees of SDI; Chunghwa; and Defendants LG Electronics, Inc. ("LGE") and LG Philips Displays ("LPD"). Foreign enforcement agencies have sanctioned Defendants hundreds of millions of dollars.

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

---

[1] Cathode Ray Tubes or CRTs are color picture tubes ("CPTs") used in televisions and color display tubes ("CDTs") used in computer monitors. CRT televisions and CRT monitors sold by Defendants will be referred to collectively herein as "Finished Products."

[2] Chunghwa Picture Tubes, Ltd.; Chunghwa Picture Tubes (Malaysia) Sdn. Bhd. (collectively "Chunghwa"); Daewoo International Corporation; Daewoo Electronics Corporation f/k/a Daewoo Electronics Company, Ltd.; Orion Electric Company ("Orion"); Daewoo-Orion SocieteAnonyme (collectively "Daewoo/Orion"); Hitachi Ltd.; Hitachi Displays, Ltd.; Hitachi America, Ltd.; Hitachi Asia, Ltd.; Hitachi Electronic Devices (USA); Shenzhen SEG Hitachi Color Display Devices, Ltd. (collectively "Hitachi"); Irico Group Corporation ("IGC"); Irico Group Electronics Co., Ltd.; Irico Display Devices Co., Ltd. (collectively "Irico"); LG Electronics, Inc. ("LGE"); LG Electronics USA, Inc.; LG Electronics Taiwan Taipei Co., Ltd. (collectively "LG"); LP Displays International, Ltd. ("LPD"); Panasonic Corporation, f/k/a Matsushita Electric Industrial Co., Ltd.; Matsushita Electronic Corporation (Malaysia) Sdn Bhd.; Panasonic Corporation of North America (collectively "Panasonic"); Koninklijke Philips Electronics N.V.; Philips Electronics Industries Ltd.; Philips Electronics North America; Philips Consumer Electronics Co.; Philips Electronics Industries (Taiwan), Ltd.; Philips da Amazonia Industria Electronica Ltda. (collectively "Philips"); Samsung Electronics America, Inc.; Samsung SDI (Malaysia) Sdn Bhd.; Samsung SDI Co., Ltd. f/k/a Samsung Display Device Company ("Samsung SDI" or "SDI"); Samsung SDI Mexico S.A. de C.V.; Samsung SDI Brasil Ltda.; Shenzhen Samsung SDI Co. Ltd.; Tianjin Samsung SDI Co., Ltd. (collectively "Samsung"); Thai CRT Company, Ltd.; Toshiba Corporation; Toshiba America, Inc.; Toshiba America Consumer Products LLC; Toshiba America Consumer Products, Ltd.; Toshiba America Electronic Components, Inc.; Toshiba America Information Systems, Inc.; Toshiba Display Devices (Thailand) Company, Ltd. (collectively "Toshiba"); MT Picture Display Co., Ltd., f/k/a Matsushita Toshiba Picture Display Co., Ltd., ("MTPD"); and Bejing-Matsushita Color CRT Company, Ltd. ("BMCC").

1

In his accompanying report submitted in support of the motion for class certification ("Leitzinger Rep."), Plaintiffs' economist Dr. Jeffrey Leitzinger confirms the effectiveness of the conspiracy. Dr. Leitzinger shows, through well-established methods of economic and econometric analysis—including correlation studies and regression analyses—that the conspiracy harmed all class members. Dr. Leitzinger's preliminary damage model—a classic "before and after" study—demonstrates annual overcharges of up to ████. Dr. Leitzinger's analyses show common, classwide impact and damages sufficiently to satisfy the requirements of Federal Rule of Civil Procedure 23.

As stated by the Supreme Court: "[p]redominance is a test readily met in certain cases alleging . . . violations of the antitrust laws." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997) ("*Amchem*"). Direct purchaser cases alleging horizontal price-fixing (and other *per se* antitrust violations) are routinely certified in this District.[4] In the *LCD* litigation—a case Judge Conti

---

[3] Declaration of R. Alexander Saveri in Support of Direct Purchaser Plaintiffs' Motion for Class Certification ("Saveri Decl."), Ex. 1 at CHU00030916.02E (████████). Hereafter "Ex. __" refers to exhibits to the Saveri Decl.

[4] *See, e.g.*, *In re Apple Pod iTunes Antitrust Litig.* No. C 05-00037JW, 2011 WL 5864036 (N.D. Cal. Nov. 22, 2011) (Ware, J.) ("*iTunes*") (Ware, J.); *In re Online DVD Rental Antitrust Litig.*, No. M 09-2029 PJH, 2010 WL 5396064 (N.D. Cal. Dec. 23, 2010) ("*Online DVD Rental*") (Hamilton, J.); *Pecover v. Electronic Arts, Inc.*, No. C 08-2820 VRW, 2010 U.S. Dist. LEXIS 140632 (N.D. Cal. Dec. 10, 2010) (Walker, J.); *In re Static Random Access Memory (SRAM) Antitrust Litig.*, No. C 07-01819 CW, 2008 WL 4447592, at *2 (N.D. Cal., Sept. 29, 2008) ("*SRAM I*") (Wilken, J.); *In re Tableware Antitrust Litig.*, 241 F.R.D. 644 (N.D. Cal. 2007) ("*Tableware*") (Walker, J.); *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M 02-1486 PJH, 2006 WL 1530166 (N.D. Cal. June 5, 2006) ("*DRAM*") (Hamilton, J.); *In re Rubber Chems. Antitrust Litig.*, 232 F.R.D.

2

described as "closely related" in his ruling on Defendants' Motion for Summary Judgment (*In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-5944-SC, 2012 WL 5987861, at *2 (N.D. Cal. Nov. 29, 2012) (Dkt. No. 1470) ("SJ Order"))—Judge Illston certified classes of direct purchasers of LCD panels and LCD finished products. *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 291, 315 (N.D. Cal. 2010) ("*LCD I*").

Moreover, the arguments Defendants will surely make—that CRTs are too diverse and the market too complex for class certification—are routinely rejected. As Judge Smith noted in *Citric Acid*, "[c]ontentions of infinite diversity of product, marketing practices, and pricing have been made in numerous cases and rejected." 1996 WL 655791 *6 (quoting *In re Folding Cartons Antitrust Litig.*, 75 F.R.D. 727, 734 (N.D. Ill. 1977)). *See also Tableware*, 241 F.R.D. at 652; *Rubber Chems.*, 232 F.R.D. at 352; *DRAM*, 2006 WL 1530166, at *8, *11. For example, in *Tableware*, former Chief Judge Vaughan Walker certified a diverse class of direct purchasers who bought more than 200,000 different items of "tableware" and "giftware," including "candlesticks, picture frames, vases, bowls, cake stands and utensils." *See Tableware*, 241 F.R.D. at 650, 652.

Finally, only two family groups of Defendants remain: Samsung and Hitachi. All other Defendants have settled.[5] For this reason, a trial on classwide claims will be greatly simplified.

Plaintiffs more than satisfy the requirements of Rule 23(a) and (b)(3). There are thousands of geographically dispersed members of the proposed class with billions of dollars in commerce. All share common questions of law and fact. Plaintiffs' claims are typical, and Plaintiffs will adequately represent absent class members. Furthermore, common issues predominate as to each of the elements of Plaintiffs' claims including conspiracy, impact, measure of damages, and concealment. Plaintiffs will prove these elements with evidence applicable to the class as a whole. Finally, a class action is the fairest, most efficient way—and for nearly all class members the only practical

---

346 (N.D. Cal. 2005) ("*Rubber Chems.*") (Jenkins, J.); *In re Citric Acid Antitrust Litig.*, No. 95-1092, C-95-2963 FMS, 1996 WL 655791 (N.D. Cal. Oct. 2, 1996) ("*Citric Acid*") (Smith, J.).

[5] Direct Purchaser Plaintiffs have settled with the following Defendants: Chunghwa ($10 million); Philips ($15 million); Panasonic ($17.5 million); LGE ($25 million); and Toshiba ($13.5 million). Except for the Toshiba settlement—which is pending—all have been finally approved. All require the settling defendants to cooperate with Plaintiffs—*i.e.*, provide evidentiary proffers and witnesses—to aid in Plaintiffs' case against the remaining Defendants. Saveri Decl., ¶¶ 2, 3.

CORRECTED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DIRECT PURCHASER PLAINTIFFS' MOTION FOR CLASS CERTIFICATION: Master File No. CV-07-5944-SC

means—to adjudicate the claims of injured CRT purchasers. The Court should certify this Class.

## II.   PROPOSED CLASS TO BE CERTIFIED.

Plaintiffs[6] are direct purchasers of CRT Products from Defendants or their subsidiaries or affiliates.[7] They have brought this action on behalf of themselves and a proposed class ("Class") defined as:

> All persons and entities who between March 1, 1995 and November 25, 2007, directly purchased a CRT Product in the United States from any Defendant or any subsidiary or affiliate thereof, or any co-conspirator. Excluded from the class are defendants, their parent companies, subsidiaries or affiliates, any co-conspirators, all governmental entities, and any judges or justices assigned to hear any aspect of this action.

Consolidated Amended Direct Purchaser Complaint ("DP-CAC") at ¶ 85.[8]

---

[6] Arch Electronics, Inc.; Crago, d/b/a Dash Computers, Inc.; Hawel A. Hawel, d/b/a City Electronics; Meijer, Inc. and Meijer Distribution, Inc.; Nathan Muchnick, Inc.; Orion Home Systems, LLC; Princeton Display Technologies, Inc.; Radio & TV Equipment, Inc.; Royal Data Services, Inc.; Studio Spectrum, Inc.; Wettstein and Sons, Inc., d/b/a Wettstein's.

Each proposed Class Representative has executed a declaration, filed herewith. *See* Declaration of Proposed Class Representative Arch Electronics, Inc. in Support of Direct Purchaser Plaintiffs' Motion for Class Certification; Declaration of Proposed Class Representative Crago, Inc. in Support of Direct Purchaser Plaintiffs' Motion for Class Certification; Declaration of Proposed Class Representative Hawel A. Hawel d/b/a City Electronics in Support of Direct Purchaser Plaintiffs' Motion for Class Certification; Declaration of Eugene J. Muchnick on Behalf of Proposed Class Representative Nathan Muchnick, Inc. in Support of Direct Purchaser Plaintiffs' Motion for Class Certification; Declaration of Proposed Class Representative Orion Home Systems, LLC in Support of Direct Purchaser Plaintiffs' Motion for Class Certification; Declaration of Proposed Class Representative Princeton Display Technologies, Inc. in Support of Direct Purchaser Plaintiffs' Motion for Class Certification; Declaration of Proposed Class Representative Radio & TV Equipment, Inc. in Support of Direct Purchaser Plaintiffs' Motion for Class Certification; Declaration of Phillip Lau, President of Proposed Class Representative Royal Data Services, Inc. in Support of Direct Purchaser Plaintiffs' Motion for Class Certification; Declaration of Proposed Class Representative Studio Spectrum, Inc. in Support of Direct Purchaser Plaintiffs' Motion for Class Certification; Declaration of Proposed Class Representative Wettstein and Sons, Inc., d/b/a Wettstein's in Support of Direct Purchaser Plaintiffs' Motion for Class Certification.

[7] As SJ Conti held in the SJ Order, a purchaser from a subsidiary or affiliate of a conspirator has standing under *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977) ("*Illinois Brick*") and *Royal Printing Co. v. Kimberly Clark Corp.*, 621 F.2d 323, 325–26 (9th Cir. 1980) ("*Royal Printing*") to bring a treble damage action under Section 4 of the Clayton Act. 15 U.S.C. § 15b; 2012 WL 5987861, at *8–9. While technically an "indirect" purchaser, in this context, as Judge Seeborg has explained in *In re Optical Disk Drive Antitrust Litig.*, No. 3:10-md-2143 RS, 2012 WL 1366718, at *5 (N.D. Cal. Apr. 19, 2012), the difference between a "direct" purchaser from a defendant, and an "indirect" purchaser from a subsidiary or affiliate is not meaningful: the "issue . . . is one of nomenclature rather than substance." As Judge Conti's order makes clear, both (1) have standing to bring a treble damages action under Section 4 of the Clayton Act; and (2) are entitled to recover the same overcharge. 2012 WL 5987861, at *4, *11 (purchasers from subsidiaries or affiliates "are permitted to sue 'for the entire overcharge.'") (citing *Royal Printing*, 621 F.3d at 327). *See also id.* at *1, n.1 (Court uses term "DPP" for both "direct" purchasers and "indirect" purchasers" in order "to stay consistent with past orders and to differentiate the Named DPPs from a putative class called the indirect purchaser plaintiffs.").

4

III.   **FACTUAL BACKGROUND.**

A.   **The Investigations by the DOJ and Other Governmental Authorities.**

██████████████████████████████████████████████████████████████

████████████████████████████   In May of 2011, SDI pleaded guilty to participating in the CRT

conspiracy and was fined $32 million.[9] The DOJ has also indicted six former executives of SDI,

Chunghwa, LGE, and LPD. The indictments allege, *inter alia*, agreements on prices, output, and

market allocation; exchange of sales, production, market share, and pricing data; auditing to verify

compliance with conspiratorial agreements; and active concealment of the conspiracy. Exs. 5–8.

When announcing the indictment of Defendant Chunghwa's President, C.Y. Lin, for his

participation, the DOJ was unambiguous: "[t]his conspiracy harmed countless Americans who

purchased computers and televisions using cathode ray tubes sold at fixed prices." Ex. 9.[10]

B.   **The LCD Conspiracy and Litigation.**

The CRT cartel was the precursor to the LCD cartel. CRTs were the dominant monitor and

television display technology before they were displaced by LCDs. Several Defendants—or related

companies—pleaded guilty and paid fines for participating in the LCD conspiracy, or received

amnesty from the DOJ: Chunghwa ($65 million); Hitachi Displays, Ltd. ($31 million); LP Display

---

[8] Plaintiffs allege that non-Defendants Technicolor SA (f/k/a Thomson SA) and Technicolor USA, Inc. (f/k/a Thomson Consumer Electronics, Inc.) (together, "Thomson") and Mitsubishi Electric Corp.; Mitsubishi Digital Electronics America, Inc.; and Mitsubishi Electric & Electronics, USA, Inc. (together, "Mitsubishi") were also members of the conspiracy. "CRT Products" are defined in the DP-CAC as CPTs and CDTs of all sizes, and the products containing them. DP-CAC ¶ 1.

[9] *See* Ex. 2. at 20:20–25; 21:1–9; 25:10–24 (Transcript of May 17, 2011 Hearing in the *United States v. Samsung, SDI Co., Ltd.*, CR-11-00162 WHA (N.D. Cal.) ("*U.S. v. Samsung*")). In the criminal proceeding, the Amended Plea Agreement between the United States and Samsung specifically noted that the United States was foregoing an order of restitution from Samsung due to the pendency of the class action proceedings in this case. Ex. 3 at ¶ 11; *see also* Ex. 4 at 5:18–8:9 (Transcript of Plea Hearing). *See also* Ex. 2 at 5:15–6:1. This plea may well constitute *prima facie* evidence of an antitrust violation under 15 U.S.C. § 16(a). *See City of Burbank v. Gen. Elec. Co.*, 329 F.2d 365, 367 (9th Cir. 1964).

[10] The European Commission ("EC") fined Defendants Chunghwa, Samsung, Philips, LGE, Panasonic, Toshiba and others 1.47 billion Euros ($1.9 billion). Ex. 10. The Japan Fair Trade Commission fined Defendants Panasonic, Samsung and LGPD a total of $37.4 million. Ex. 11. The Korean Fair Trade Commission ("KFTC") fined Defendants Samsung, Chunghwa, and LGPD $23.5 million. Ex. 12. The KFTC also produced a detailed report on the workings of the conspiracy. A translated version of the report is Ex. 13. The Czech Competition Authority fined Defendants Chunghwa, Panasonic, and Toshiba and others total of 51.787 million CZK. Ex. 14.

Co., Ltd. ($400 million)[11]; ██████████████████████████. Saveri Decl., ¶ 4;
Exs. 81, 82. In addition, the LCD jury returned a verdict against Defendant Toshiba Corp. Saveri
Decl., ¶ 4; Ex. 16.

████████████████████████████████████████████
████████████████████████████████████████████

      The existence and operation of the CRT conspiracy is the overwhelmingly predominant issue
for purposes of this motion and can be established through common, classwide proof

████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████

---

[11] LP Display Co., Ltd. was a joint venture for manufacturing LCD panels by Defendants LGE and
Philips. These Defendants also formed a CRT manufacturing joint venture—Defendant LPD.
Ex. 15, ¶ 41.

[12] ███████████████████████████████ *See* Exs. 17–28.

[13] ████████████████████████████████████
████████████████████████████████████████████

[14] ████████████████████████████████████

CORRECTED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DIRECT PURCHASER
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION: Master File No. CV-07-5944-SC



CORRECTED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DIRECT PURCHASER
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION: Master File No. CV-07-5944-SC



18           Ex. 13 at 16–17, ¶ 35 & Table 7 (KFTC Report (Statement of SDI General Manager I.H. Song)).

19          Ex. 13 at 18–19, ¶ 38 & Table 11 (KFTC Report (Statement of SDI General Manager I.H. Song)).

20

CORRECTED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DIRECT PURCHASER
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION: Master File No. CV-07-5944-SC



As Chunghwa's S.J. Yang explained, there was a "common acknowledgement to discuss the same issues" at both meetings. *See* Ex. 63 at 8.

Ex. 13 at 17–18, Table 9 (KFTC Report (Statement of SDI General Manager I.H. Song)).



CORRECTED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DIRECT PURCHASER
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION: Master File No. CV-07-5944-SC



CORRECTED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DIRECT PURCHASER
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION: Master File No. CV-07-5944-SC

1

2

3

4
As SDI's I.H. Song explained:

5

6
In order to maintain the sales prices at a certain level, the excess supply had to be resolved. For this, the companies agreed to jointly control the supply. So, during the early 2000's, the companies submitted the monthly closing days to stop operation on specific number of days, to notify the designated personnel in other companies, and to allow these people to actually visit the companies to check whether the agreements were being implemented.[28]

7

8

9

10

11

12

13

14

15

16

17

18
[28] Ex. 13 at 19, Table 11 (KFTC Report (Statement of I.H. Song)).

19

20

21

22

23

24

25
[29]

26

27
[30]

28

CORRECTED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DIRECT PURCHASER
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION: Master File No. CV-07-5944-SC



CORRECTED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DIRECT PURCHASER
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION: Master File No. CV-07-5944-SC

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

14

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

35

20

21

[36] Leitzinger Rep. ¶ 76.

37

22

23

24

25

26

27

28

CORRECTED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DIRECT PURCHASER
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION: Master File No. CV-07-5944-SC



Defendants' conspiratorial activity diminished after the first quarter of 2006. CDT Glass meetings ended in March 2006. Ex. 13 at 165, ¶ 312 (KFTC Report).  The CPT management level Glass meetings also stopped in March 2006. Ex. 63 at 17.

CORRECTED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DIRECT PURCHASER
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION: Master File No. CV-07-5944-SC

1    ███████████████████████████████████ Ex. 63 at 17. Chunghwa then informed

2    the other members that it would attend no more meetings. *Id.* The April 5 meeting apparently did not

3    occur. *See* Ex. 24 at p. 84 (SDI Interrogatory response shows no glass meeting on April 4–5, 2007).

4    **III.    ARGUMENT.**

5         The Supreme Court has long recognized that antitrust class actions are a vital component of

6    antitrust enforcement. *See generally Reiter v. Sonotone Corp.*, 442 U.S. 330, 344 (1979); *Hawaii v.*

7    *Standard Oil Co.*, 405 U.S. 251, 266 (1972). Consequently, "courts resolve doubts in these actions in

8    favor of certifying the class." *SRAM*, 2008 WL 4447592, at *2 (citation omitted) *Accord, LCD I*, 267

9    F.R.D. at 299; *Rubber Chems.*, 232 F.R.D. at 350; *Online DVD Rental*, 2010 WL 5396064, at *3.

10        To determine whether Plaintiffs have satisfied their burden under Rules 23(a) and (b), the

11   court must conduct a "rigorous analysis," which may require it to probe behind the pleadings to

12   resolve the class certification question. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 980–81 (9th

13   Cir. 2011) (citation omitted). The merits of Plaintiffs' case may be considered only if necessary to

14   determine if the requirements of Rule 23 are met. As the Supreme Court explained recently in

15   *Amgen Inc. v. Conn. Ret. Plans*, 133 S. Ct. 1184, 1194–95 (2013) ("*Amgen*"),

16          Although we have cautioned that a court's class-certification analysis must be
     "rigorous" and may "entail some overlap with the merits of plaintiff's underlying
17          claim," *Wal-Mart Stores Inc. v. Dukes*, 564 U.S. ___, ___, 131 S. Ct. 2541, 2551
     (2011) (internal quotation marks omitted) [("*Wal-Mart*")], Rule 23 grants courts no
18          license to engage in free-ranging merits inquiries at the certification stage. Merits
     questions may be considered to the extent—but only to the extent—that they are
19          relevant to determining whether the Rule 23 prerequisites for class certification are
     satisfied. See *id.*, at ___, n.6, 131 S. Ct., at 2552, n.6 (a district court has no "'authority
20          to conduct a preliminary inquiry into the merits of a suit'" at class certification unless
     it is necessary "to determine the propriety of certification" (quoting *Eisen v. Carlisle &*
21          *Jacqueline*, 417 U.S. 156, 177 (1974)).[41]

22   (parallel citations omitted).

23

24

_____

25   [41] Since *Wal-Mart* was decided, courts have continued to certify direct purchaser antitrust price-fixing cases. *See, e.g., In re Rail Freight Fuel Surcharge Antitrust Litig.*, 287 F.R.D. 1 (D.D.C.
26   2012) ("*Rail Freight*"); *In re Titanium Dioxide Antitrust Litig.*, 284 F.R.D. 328 (D. Md. 2012) ("*Titanium*"); *In re Vitamin C Antitrust Litig.*, 279 F.R.D. 90 (E.D.N.Y. 2012) ("*Vitamin C*"); *In re*
27   *Aftermarket Auto. Lighting Prods. Antitrust Litig.*, 276 F.R.D. 364 (C.D. Cal. 2011) ("*Auto Lighting*"); *In re Chocolate Confectionary Antitrust Litig.*, No. 1:08-MDL-1935, 2012 WL 6652501
28   (M.D. Pa. Dec. 7, 2012) ("*Chocolate*").

CORRECTED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DIRECT PURCHASER
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION: Master File No. CV-07-5944-SC

As the Ninth Circuit explained in *Ellis*: "[t]he district court is required to examine the merits of the underlying claim in this context, only inasmuch as it must determine whether common questions exist; not to determine whether class members could actually prevail on the merits of their claims." 657 F.3d at 983 n.8. Thus, it would be improper to determine on a certification motion which of the parties' respective experts' findings and observations are more credible on the merits: "[t]o hold otherwise would turn class certification into a mini-trial." *Id.* Similarly, neither Plaintiffs nor their experts are required to prove that Defendants' conduct was anticompetitive or had an anticompetitive impact. *SRAM*, 2008 WL 4447592, at *5; *DRAM*, 2006 WL 1530166, at *9. Plaintiffs need only show that they satisfy the prerequisites set forth in Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation—and one subsection of Rule 23(b). *See Rubber Chems.*, 232 F.R.D. at 349–50. Here, the proposed Class satisfies the requirements of Rule 23(a) and Rule 23(b)(3).

### A.   Plaintiffs Satisfy the Requirements of Rule 23(a).

#### 1.   The Proposed Class Is Sufficiently Numerous.

Where the precise size of a putative class is unknown, but "'general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied.'" *SRAM*, 2008 WL 4447592, at *3 (quoting 1 Alba Conte & Herbert Newberg, *Newberg on Class Actions* § 3:3 (4th ed. 2002) ("Newberg")). *See also Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 536 (N.D. Cal. 2012) (Seeborg, J.) ("While there is no fixed number that satisfies the numerosity requirement, as a general matter, a class greater than forty often satisfies the requirement, while one less than twenty-one does not.").

Accordingly, the Rule 23(a)(1) standard is easily satisfied. *See, e.g., Bafus v. Aspen Realty, Inc.*, 236 F.R.D. 652, 655 (D. Idaho 2006); *Welling v. Alexy*, 155 F.R.D. 654, 656 (N.D. Cal. 1994).

#### 2.   This Case Involves Common Questions of Law and Fact.

Rule 23(a)(2) requires that class members share common issues of law or fact. Only one significant issue is necessary to satisfy the commonality prong. *Wal-Mart*, 131 S. Ct. at 2566; *Wolin v. Jaguar Land Rover N. Am.*, LLC, 617 F.3d 1168, 1172 (9th Cir. 2010). Courts in this Circuit have

18

CORRECTED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DIRECT PURCHASER PLAINTIFFS' MOTION FOR CLASS CERTIFICATION: Master File No. CV-07-5944-SC

repeatedly held that this prong is satisfied where—as here—a price-fixing conspiracy is alleged. As Judge Hamilton explained in *DRAM* "'the very nature of a conspiracy antitrust action compels a finding that common questions of law and fact exist.'" 2006 WL 1530166, at *3 (quoting *Rubber Chems.*, 232 F.R.D. at 351); *see also Auto Lighting*, 276 F.R.D. at 368; *Online DVD Rentals*, 2010 WL 5396064, at *3.

Other common questions include whether Defendants' conduct caused the prices of CRTs to be set at supra-competitive levels, the measure of classwide damages and whether Defendants engaged in affirmative acts to conceal the conspiracy.

### 3.   Plaintiffs' Claims Are Typical of the Claims of the Class.

Rule 23(a)(3)'s "typicality requirement is satisfied if each class member's claim arises from the same course of events that led to the claims of the representative parties and each class member makes similar legal arguments to prove the defendant's liability." *Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc.*, 209 F.R.D. 159, 164 (C.D. Cal. 2002) ("*Thomas*") (citations omitted); *see also SRAM*, 2008 WL 4447592, at *3. Class representatives' claims "need not be substantially identical" to those of absent class members, as "[s]ome degree of individuality is to be expected in all cases." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998); *Cifuentes v. Red Robin Int'l*, No. C-11-535-EMC, 2012 WL 693930, at *5 (N.D. Cal. Mar. 1, 2012) (citation omitted). *See Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 734 (9th Cir. 2007).

As with the commonality prong, courts have found the typicality requirement easily satisfied in price-fixing cases because "in instances wherein it is alleged that the defendants engaged in a common scheme relative to all members of the class, there is a strong assumption that the claims of the representative parties will be typical of the absent class members." *In re Catfish Antitrust Litig.*, 826 F. Supp. 1019, 1035 (N.D. Miss 1993). *See also Citric Acid*, 1996 WL 655791, at *3 ("Because plaintiffs and all class members share these claims and this theory [that defendants conspired to fix prices], the representatives' claims are typical of all.").

Purported factual differences from Class members with respect to purchasing practices or dealings with Defendants do not preclude typicality. *Online DVD Rental*, 2010 WL 5396064, at *4 (inquiry focuses on the conduct of the defendants, not on their individual dealings or transactions

19

1    with plaintiffs); *DRAM*, 2006 WL 1530166, at *4. As Judge Illston stated in *LCD I*: "'[i]n cases

2    involving an alleged price-fixing conspiracy, the representative plaintiff's claim is usually

3    considered typical even though the plaintiff followed different purchasing procedures, purchased in

4    different quantities or at different prices, or purchased a different mix of products than did the

5    members of the class.'" 267 F.R.D. at 300 (quoting *DRAM*, 2006 WL 1530166, at *4). *Accord*

6    *Chocolate*, 2012 WL 6652501, at *13–14.[42]

7        Plaintiffs' claims are typical of the claims of other putative Class members because "they

8    stem from the same event, practice, or course of conduct that forms the basis of the claims of the

9    class and are based on the same legal or remedial theory." *Citric Acid*, 1996 WL 655791, at *3.

10   Defendants' conspiracy set the supra-competitive prices all Plaintiffs and Class members paid and

11   forms the linchpin of the price-fixing claims of every Plaintiff and Class member.

12       That some Plaintiffs and Class members purchased CRTs as part of Finished Products does

13   not undermine the typicality of Plaintiffs' claims. As noted above, Judge Conti has already held that

14   Finished Products purchasers may seek the same overcharge as purchasers of CRTs. SJ Order, 2012

15   WL 5987861 at *11.

16       **4.     Plaintiffs Will Fairly and Adequately Represent the Interest of the Class.**

17       Plaintiffs also satisfy Rule 23(a)(4). Adequacy requires that Plaintiffs (1) have no interests

18   that are antagonistic to or in conflict with the interests of the class; and (2) be represented by counsel

19   able to vigorously prosecute the interests of the class. *See SRAM*, 2008 WL 4447592, at *4 (citing

20   *Staton v. Boeing Co.*, 327 F.3d 938, 957–58 (9th Cir. 2003)). "'[T]he adequacy-of-representation

21   requirement is satisfied as long as one of the class representatives is an adequate class

22   representative.'" *Rodriguez v. West Publ'g Co.*, 563 F.3d 948, 961 (9th Cir. 2009) (citation omitted).

23
24   [42] *See also In re Flat Glass Antitrust Litig.*, 191 F.R.D. 472, 475 (W.D. Pa. 1999) ("*Flat Glass*") (certifying class alleging price fixing of flat glass and all products created from flat glass); *In re Fine Paper Antitrust Litig.*, 82 F.R.D. 143, 147 (E.D. Pa. 1979) ("*Fine Paper*") (certifying a class alleging price fixing in the market of "all printing and writing papers and all paper products into which such papers are converted"); *In re Corrugated Container Antitrust Litig.*, 80 F.R.D. 244 (S.D. TEx. 1978) ("*Corrugated Container*") (certifying class that included direct purchasers of corrugated sheets and highly-customizable corrugated containers, in which corrugated sheets are an input); *SRAM*, 2008 WL 4447592, at *1 (certifying class alleging price fixing of both "fast" and "slow" SRAM); *Citric Acid*, 1996 WL 655791, at *1 (certifying class alleging price fixing of citric acid, which "comes in a variety of forms, including crystal, powder, and liquid").
25
26
27
28

20

1    Courts have also regularly found this requirement satisfied in price-fixing cases. *Auto*

2    *Lighting*, 276 F.R.D. at 374 (where plaintiffs have "alleged a broad conspiracy, courts have not

3    required . . . that the representative ha[s] purchased from all of the defendants or that he ha[s] been

4    adversely affected by all of the means and methods by which the alleged conspiracy was

5    implemented.") (internal quotation marks omitted). Class representatives "will be found to be

6    adequate when the attorneys representing the class are qualified and competent, and the class

7    representatives are not disqualified by interests antagonistic to the remainder of the class." *Online*

8    *DVD Rental*, 2010 WL 5396064, at *4 (citing cases). Moreover, "[t]he mere potential for a conflict

9    of interest is not sufficient to defeat class certification; the conflict must be actual, not hypothetical."

10   *SRAM*, 2008 WL 4447592, at *4. *See Blackie v. Barrack*, 524 F.2d 891, 908 (9th Cir. 1975), *cert.*

11   *denied*, 429 U.S. 816 (1976) ("We agree that class members might at some point during this

12   litigation have differing interests. We altogether disagree, for a spate of reasons, that such potential

13   conflicts afford a valid reason at this time for refusing to certify the class.").

14     Here, Plaintiffs' interests do not conflict with those of absent Class members. Plaintiffs

15   allege that all Class members were injured by the same conspiracy by paying artificially inflated

16   prices for CRTs and Finished Products during the class period. All Plaintiffs and Class members

17   seek the same relief in the form of overcharge damages, and, therefore, share an identical interest in

18   proving Defendants' liability.

19     Plaintiffs have also retained highly-skilled counsel with extensive experience in prosecuting

20   antitrust class actions. The Court has appointed Guido Saveri and his firm Saveri & Saveri, Inc. as

21   Interim Lead Class Counsel. Order Appointing Interim Lead Counsel (May 9, 2008) (Dkt. No. 282).

22   Mr. Saveri and his firm have undertaken the responsibilities assigned to them and—along with other

23   able Plaintiffs' counsel—have vigorously pursued the litigation on behalf Plaintiffs and the proposed

24   Class. Among other things, Plaintiffs have obtained five settlements conferring substantial benefits

25   on Class members. Saveri & Saveri, Inc. has devoted substantial time, resources, and leadership

26

27

28

1    necessary to vigorously prosecute this action, and will continue to do so. Plaintiffs plainly meet the

2    adequacy requirement of Rule 23(a)(4).[43]

3         **B.    This Action Meets the Requirements of Rule 23(b)(3).**

4         To qualify for certification under Rule 23(b)(3) a class must meet two additional

5    requirements: "Common questions must predominate over any questions affecting only individual

6    members; and class resolution must be superior to other available methods for the fair and efficient

7    adjudication of the controversy." *Amchem*, 521 U.S. at 615 (internal quotations omitted).

8         **1.    Common Questions of Law and Fact Predominate.**

9         Courts commonly find the "predominance" requirement of Rule 23(b) satisfied in direct

10   purchaser horizontal price fixing cases. *See, e.g.*, *Messner v. Northshore Univ. HealthSystem*, 669

11   F.3d 802, 815 (7th Cir. 2012) ("*Messner*"); *Sullivan v. DB Investments, Inc.* 667 F.3d 273, 300 (3d

12   Cir. 2011), *cert. denied sub nom. Murray v. Sullivan*, 132 S. Ct. 1876 (2012); *Thomas*, 209 F.R.D. at

13   167 ("In price-fixing cases, 'courts repeatedly have held that the existence of the conspiracy is the

14   predominant issue and warrants certification even where significant individual issues are present.'"

15   (citation omitted)).

16        Rule 23(b)(3) "does *not* require a plaintiff seeking class certification to prove that each

17   'elemen[t] of [her] claim [is] susceptible to classwide proof.' What the rule does require is that

18   common questions *predominate* over any questions affecting only individual [class] members."

19   *Amgen*, 133 S. Ct. at 1196 (citation omitted, brackets in original). The focus of the predominance

20   inquiry is whether the proposed class is "sufficiently cohesive to warrant adjudication by

21   representation." *Id.* at 1196–97 (quoting Rule 23(b)(3) and *Amchem*, 521 U.S. at 623).

22

23

---

24   [43] Mr. Saveri and Saveri & Saveri, Inc. also respectfully seek appointment as Lead Counsel for the
     class pursuant to Rule 23(g). The Court has already appointed the Saveri firm to act as lead class

25   counsel with regard to the four settlements which have been finally approved. Order Granting Final
     Approval of Class Action Settlements with CPT and Philips, at ¶ 3 (Oct. 19, 2012) (Dkt. No. 1412);

26   Order Granting Final Approval of Class Action Settlement with Panasonic, at ¶ 3 (Dec. 27, 2012)
     (Dkt. No. 1508); Order Granting Final Approval of Class Action Settlement with LG, ¶ 3 (Apr. 1,

27   2013) (Dkt. No. 1621). *See also* Saveri Decl. ¶ 143, Ex. 137 (Saveri & Saveri, Inc. Firm Biography);
     Notice of Motion and Motion for Appointment of Interim Lead Class Counsel and Executive

28   Committee for the Direct Purchaser Plaintiffs (Feb. 29, 2008) (Dkt. No. 105).

CORRECTED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DIRECT PURCHASER
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION: Master File No. CV-07-5944-SC

1   Thus, "Rule 23(b)(3)'s predominance requirement is satisfied when 'common questions

2   represent a significant aspect of [a] case and . . . can be resolved for all members of [a] class in a

3   single adjudication.' Or, to put it another way, common questions can predominate if a 'common

4   nucleus of operative facts and issues' underlies the claims brought by the proposed class. . . .

5   Individual questions need not be absent. The text of Rule 23(b)(3) itself contemplates that such

6   individual questions will be present. The rule requires only that those questions not predominate

7   over the common questions affecting the class as a whole." *Messner*, 669 F.3d at 815 (internal

8   citations omitted).

9   Here, issues common to the Class will predominate with respect to Plaintiffs' proof of the

10  three elements of their claim: (1) that Defendants participated in a conspiracy to fix prices in

11  violation of the antitrust laws; (2) that Plaintiffs suffered antitrust injury (*i.e.*, "impact") as a result of

12  Defendants' conspiracy; and (3) the measure of damages sustained as a result of the antitrust

13  violations. *See LCD I*, 267 F.R.D. at 310; *DRAM*, 2006 WL 1530166, at *7. Common questions

14  predominate because Plaintiffs will establish each of the above elements through "generalized

15  proof" applicable to the Class as a whole.

16  **a.    The Existence and Nature of the Conspiracy**

17  If each Class member were required to prove its claim individually at trial, each would show

18  that Defendants organized, participated in, and operated the same global price-fixing cartel. Each

19  Class member would submit the same type of proof detailed above in Section III above, namely:

20

21

22  This proof, along with economic evidence of the conspiracy, is common to the

23  Class and supports a finding of predominance. *See SRAM*, 2008 WL 444792, at *9–10 (common

24  liability issues predominated because common evidence regarding alleged conspiracy, including

25  written records of in-person, telephone, and e-mail communications, would be necessary to prove

26  claims of all class members).

27  Such proof necessarily focuses on Defendants' conduct, not the conduct of individual

28  Plaintiffs or Class members. *See Corrugated Container*, 80 F.R.D. at 250 ("The court is persuaded

23

CORRECTED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DIRECT PURCHASER
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION: Master File No. CV-07-5944-SC

1   that the conspiracy issue[,] whether price information was exchanged; if it was, with what intent;

2   whether action was taken by the defendants based upon such exchanges; etc.[,] is susceptible of

3   generalized proof, since it deals primarily with what the defendants themselves did and said.").[44]

4               **b.**    **Antitrust Injury and Impact**

5         Proof of antitrust injury requires a showing of some injury to "business or property" due to a

6   Defendant's antitrust violations. *See Reiter*, 442 U.S. at 337–41; *Zenith Radio Corp. v. Hazeltine*

7   *Research, Inc.*, 395 U.S. 100, 126 (1969). "'[O]n a motion for class certification, the Court only

8   evaluates whether the method by which plaintiffs propose to prove classwide impact could prove

9   such impact, not whether plaintiffs in fact can prove class-wide impact.'" *LCD I*, 267 F.R.D at 313

10   (citation omitted).[45]

11         Stated another way, all that is required is that plaintiffs present a "'plausible methodology to

12   demonstrate that antitrust injury can be proven on a class-wide basis.'" *Id.* at 311 (quoting *DRAM*,

13   2006 WL 1530166 at *9); *see also Online DVD Rental*, 2010 WL 5356064 at *9–11; *SRAM*, 2008

14   WL 4447592 at *5. Moreover, "[t]he court cannot weigh in on the merits of plaintiffs' substantive

15   arguments, and must avoid engaging in a battle of expert testimony." *iTunes*, 2011 WL 5864036, at

16   *3 (quoting *DRAM*, 2006 WL 1530166, at *9). As Judge Hamilton has explained:

> In short, despite defendants' objections to plaintiffs' methodology and analysis, as
> courts have recognized, "the issue at class certification is not which expert is the most
> credible, or the most accurate modeler, but rather have the plaintiffs demonstrated that
> there is a way to prove a class-wide measure of [impact] through generalized proof."

*Online DVD Rental*, 2010 WL 5356064 at *10 (quoting *In re Ethylene Propylene Diene Monomer*

*(EPDM) Antitrust Litig.*, 256 F.R.D. 82, 100 (D.Conn.2009) ("*EPDM*")). *See also Auto Lighting*,

---

[44] *See also Vitamin C*, 279 F.R.D. at 109 (finding that in actions alleging a horizontal price-fixing conspiracy, "courts have frequently held that the predominance requirement is satisfied because the existence and effect of the conspiracy are the prime issues in the case and are common across the class"); *Meijer, Inc. v. Abbott Labs.*, No. C 07-5985 CW, 2008 WL 4065839, at *9 (N.D. Cal. Aug. 27, 2008) ("*Meijer*"); *Citric Acid*, 1996 WL 655791, at *7; *In re Vitamins Antitrust Litig.*, 209 F.R.D. 251, 264 (D.D.C. 2002) ("*Vitamins*") (allegations of price fixing "will focus on the actions of the defendants, and, as such, proof for these issues will not vary among class members").

[45] *See also Messner*, 669 F.3d at 818 ("[u]nder the proper standard, plaintiffs' burden at the class certification stage [was] not to prove the element of antitrust impact, but only to demonstrate that the element of antitrust impact *is capable of proof at trial* through evidence that is common to the class rather than individual to its members.") (emphasis in original) (internal quotations omitted).

24

276 F.R.D. at 374 ("the Court is not supposed to decide at the certification stage which expert analysis or model is better."); *LCD I*, 267 F.R.D. at 313 ("To determine predominance, a court need not plunge into the weeds of an expert dispute about potential technical flaws in an expert methodology." (quoting from *Natchitoches Parish Hosp. Serv. Dist. v. Tyco Intern., Ltd.*, 247 F.R.D. 253, 270 (D.Mass.2008))).

Finally, Plaintiffs are not required to show that each and every member of the proposed class was adversely impacted by the unlawful conduct at issue.[46]

Plaintiffs present three types of classwide evidence of impact. First, there is overwhelming contemporaneous evidence of classwide impact. Second, Plaintiffs' expert economist, Dr. Leitzinger, concludes, based upon evidence of the structure of the CRT market and the operation of the CRT conspiracy, that the conspiracy in fact caused classwide impact. Third, Dr. Leitzinger presents statistical evidence of classwide harm. Each of these categories of evidence is sufficient to prove classwide impact—*i.e.*, each constitutes a "plausible methodology" to prove generalized harm. Collectively, they easily satisfy the requirements of Rule 23(b)(3).

████████████████████████████████████

Classwide impact may be proven through contemporaneous evidence of the workings of the conspiracy. *See, e.g., Rail Freight*, 287 F.R.D. at 44 (D.D.C. 2012); *Titanium*, 284 F.R.D. at 345–46. As the court said in *In re High-Tech Employee Antitrust Litig.*, No. 11-CV-02509-LHK, 2013 WL 1352016 at *15, *22 (N.D. Cal. 2013) ("*High-Tech*"), "[t]hus, the Court finds that Plaintiffs' documentary evidence weighs heavily in favor of finding that common issues predominate over

---

[46] As Circuit Judge Posner wrote in *Kohen v. Pac. Inv. Mgmt. Co.*, 571 F.3d 672, 677 (7th Cir. 2009)), *cert. denied*, 130 S. Ct. 1504 (2010), "a class will often include persons who have not been injured by the defendant's conduct . . . . Such a possibility or indeed inevitability does not preclude class certification." *Accord, Messner*, 669 F.3d at 823 ("[a]ll of this is at best an argument that some class members' claims will fail on the merits if and when damages are decided, a fact generally irrelevant to the district court's decision on class certification."); *Rubber Chems.*, 232 F.R.D. at 353 ("[I]t is not necessary for Plaintiffs to show that every single class member was injured by the alleged price-fixing conspiracy" to obtain class certification); *Meijer, Inc. v. Warner Chilcott Holdings Co. III*, 246 F.R.D. 293, 310 (D.D.C. 2007) ("[T]he inability to show injury as to a few does not defeat class certification where the plaintiffs can show widespread injury to the class." (internal citation omitted)).

CORRECTED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DIRECT PURCHASER
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION: Master File No. CV-07-5944-SC

individual ones for the purpose of being able to prove antitrust impact." Here, there is overwhelming

evidence that Defendants' conspiracy had classwide impact.



As the court in *EPDM*, stated:

> Proof of a conspiracy to establish a "base" price would establish at least the *fact* of damage, even if the extent of the actual damages suffered by the plaintiffs would vary. . . . [T]he proof with respect to the "base" price from which these negotiations began, or the structure of the conspiracy to affect individual negotiations, would be common to the class. Accordingly . . . the fact of damage is predominantly, if not entirely, a common question.

256 F.R.D. at 89 (quoting *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 523

(S.D.N.Y. 1996) ("*NASDAQ*")). In *EPDM*, the court found that plaintiffs met their burden to show

impact by common proof with evidence of collusive price increases: "The plaintiffs have offered

sufficient proof and explanation to convince me that these six national price list increases *could* have

the effect of affecting the base price for EPDM, from which all negotiations started, on a class-wide

basis." 256 F.R.D. at 90.

Similarly, in *DRAM*, Judge Hamilton observed:

> In a number of price-fixing cases, courts have certified classes where plaintiffs have alleged that defendants conspired to set an artificially inflated base—or "benchmark" price—from which all other prices are triggered [citations omitted]. Notably, classes were certified in these cases regardless whether some members of the class negotiated price individually, or whether—as here—differences among product type, customer class, and method of purchase existed.

2006 WL 1530166 at*9 (citing cases). *See also In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 326,

345–46 (E.D. Mich. 2001) ("*Cardizem*") (same).



CORRECTED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DIRECT PURCHASER
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION: Master File No. CV-07-5944-SC

█████████████████████████████████████████████████████

██████████████████████████████████████ This too is strong

evidence of classwide impact. *See High-Tech*, 2013 WL 1352016, at *17 (monitoring and

enforcement of conspiratorial agreements shows "broad effects" on class.)

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

████████████████████████ *See also Minn-Chem, Inc. v. Agrium Inc.*, 683

F.3d 845, 856 (7th Cir. 2012) (*en banc*) ("*Minn-Chem*") ("Higher prices cannot be divorced from

reductions in supply . . . ."). As the Third Circuit noted in *In re Linerboard Antitrust Litig.*, 305 F.3d

145 (3d Cir. 2002), *cert. denied sub nom. Gaylord Container Corp. v. Garrett Paper, Inc.*, 538 U.S.

977 (2003) ("*Linerboard*"), a class case involving agreements to restrict supply and thereby raise

prices: "An agreement on output also equates to a price-fixing agreement. . . . [If] firms restrict

output directly, price will . . . rise in order to limit demand to the reduced supply. . . . Reducing

output, and dividing markets have the same anticompetitive effects." *Id.* at 160 (internal quotation

marks omitted, ellipses and brackets in original) (quoting *Gen. Leaseways v. Nat'l Truck Leasing

Ass'n*, 744 F.2d 588, 594–95 (7th Cir. 1984)).

     This evidence is all common to the class and would provide a basis for the jury to find

generalized harm to the Class. For this reason, it constitutes a "plausible methodology" for showing

classwide impact, and compels a finding of predominance.

          **ii.**    **Dr. Leitzinger's Economic Analysis of the Structure of the
CRT Industry Is Sufficient to Show Classwide Impact.**

     Economic analyses of the structure of an industry are another type of common proof which

many courts in price fixing cases have relied on to find that antitrust injury is susceptible to

classwide proof within the meaning of Rule 23(b)(3). *See, e.g.*, *Titanium*, 284 F.R.D. at 341; *Auto

Lighting*, 276 F.R.D. at 370–72; *Chocolate*, 2012 WL 6652501, at *18–19; *DRAM*, 2006 WL

1530166 at *8–9; *SRAM*, 2008 WL 4447592, at *6. Dr. Leitzinger demonstrates that during the class

CORRECTED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DIRECT PURCHASER
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION: Master File No. CV-07-5944-SC

1   period, the CRT industry was characterized by a number of structural factors that would have

2   resulted in classwide impact:

3   (1)

4

5

6

7                                                                                 *See also Minn-*

8   *Chem*, 683 F.3d at 856 ("It is objectively foreseeable that an international cartel with a grip on 71%

9   of the world's supply of a homogenous commodity will charge supracompetitive prices . . . .").

10   (2)

11

12

13   (3)

14

15

16

17

18   (4)

19

20

21

22   (5)

23

24

25

26

27

28

CORRECTED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DIRECT PURCHASER
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION: Master File No. CV-07-5944-SC



(6)

Dr. Leitzinger concludes that these structural characteristics of the CRT industry—proof of which is common to the class—show that the impact of the conspiracy would likely have been felt broadly across the class. *Id.* ¶ 6, 45.

### iii. Dr. Leitzinger's Statistical Analyses Demonstrate that Impact Can Be Proven On a Classwide Basis

Dr. Leitzinger also performed extensive statistical analyses which prove classwide impact.

**Pricing Variation.** First, Dr. Leitzinger analyzed pricing variability among CRT buyers. This is important because "Price variability is sometimes advanced as evidence that a conspiracy was ineffective in enforcing its prices or that its impact was selectively distributed across buyers." *Id.* ¶ 34. Dr. Leitzinger performed a series of hedonic regressions which explain CRT prices using a set of observable characteristics—size, screen format, whether ITC or bare, transaction quantity, and manufacturer.                                                                This implies that the

---

[47] *See LCD I*, 267 F.R.D. at 311 (common proof of impact found and class certified where Plaintiffs' presented proof, *inter alia*, of "an industry-wide, standardized hierarchy of product specifications that allowed defendants to agree on base prices and then easily derive prices for TFT-LCD panels with different or better features" or a "price ladder"); 313 (defendants' challenge to proof of "price ladder" goes to merits).

CORRECTED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DIRECT PURCHASER PLAINTIFFS' MOTION FOR CLASS CERTIFICATION: Master File No. CV-07-5944-SC

effects of the conspiracy would be felt classwide, ███████████████████████

████████████████████ In other words, the prices of

CRTs were largely determined by factors common to class members. *Id.* ¶ 6.

███████████████████████████████████████████████

This evidence compellingly shows that the conspiracy impacted the price of CRTs for which Defendants set target prices.

(referred to in *LCD I* as a "price ladder"),

CORRECTED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DIRECT PURCHASER
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION: Master File No. CV-07-5944-SC



Again, the statistical evidence compels the conclusion that the conspiracy impacted all CRTs.

**Effect of CRT Overcharges on Finished Products.** Finally, Dr. Leitzinger analyzed whether Defendants' conspiratorial pricing of CRTs would be reflected in the prices of Finished Products sold by Defendants (or their affiliates). [48]

Dr. Leitzinger's extensive analysis amply demonstrates that the impact of conspiratorial price increases would be felt across all purchases of CRTs and Finished Products. His work is based on an extensive review of the evidence in the case, as well as all of the Defendants' transactional data that is presently available. All of his analyses are common to the class. Moreover, Dr. Leitzinger's methods are well-established. Many courts have certified classes based on statistical analysis—including correlation[49] and regression[50] analyses.

---

[48] As explained below, Judge Conti's SJ Order renders a finding of impact at the Finished Product level unnecessary. 2012 WL 5987861.

[49] *See Rubber Chems.*, 232 F.R.D. at 353; *SRAM*, 2008 WL 4447592, at *6; *DRAM*, 2006 WL 1530166 at *9; (all relying upon price correlation analysis as common proof of class-wide impact in certifying classes in price fixing cases).

[50] Similar multiple regression analyses have been relied upon by numerous courts in finding that impact and measure of damages are common predominating issues susceptible to common class-wide proof within the meaning of Rule 23(b)(3). *See, e.g., Rail Freight*, 287 F.R.D. at 26; *Titanium*, 284 F.R.D. at 337; *Auto Lighting*, 276 F.R.D. at 371–72; *In re Ready-Mixed Concrete Antitrust Litig.*, 261 F.R.D. 154, 172–73 (S.D. Ind. 2009); *EPDM.*, 256 F.R.D. at 97; *Chocolate*, 2012 WL

31

1

### iv. The Presence of Finished Product Purchasers in the Class Does Not Alter the Analysis

2

The fact that some Class Members purchased Finished Products is no impediment to a

3  finding that proof of impact is a predominant classwide issue. As noted, *Royal Printing* and Judge

4  Conti's ruling on Defendants' summary judgment motion establish that Plaintiffs are not required to

5  prove pass-through of the tube overcharge to Finished Products. *Royal Printing*, 621 F.2d at 327; SJ

6  Order, 2012 WL 5987861, at *8–9, *11. Rather, as Judge Conti's order makes clear, Finished

7  Product purchasers here are entitled to ***the same overcharge*** as tube purchasers:

8
> *Royal Printing* explicitly addressed the issue of apportioning damages and held that,
> in cases proceeding under the ownership and control exception, no apportionment is

9
> needed; plaintiffs are permitted to sue "for the entire overcharge."

10  *Id.* at *11 (citation omitted). Thus, proof of impact at the tube level suffices for Finished Products as

11  well. ████████████████████████████████████████████████

12  ████████████████████████████████████████████████

13  ██████████████████████ Leitzinger Rep. ¶ 78. Plaintiffs therefore have submitted two

14  independent "plausible methodologies" proving classwide impact for Finished Products.

15        In addition, Courts routinely certify classes of purchasers of components and finished

16  products. *See LCD I*, 267 F.R.D. at 305; *Linerboard* 305 F.3d at 159–60; *Flat Glass*, 191 F.R.D. at

17  475 n.1 (certifying class of purchasers of flat glass and "all products subsequently fabricated

18  therefrom" because flat glass was the main cost component of finished products); *Thomas*, 209

19  F.R.D. at 166–67 (finding common impact on direct purchasers of carbon fiber and prepeg, a

20  product largely made from carbon fiber). To deny recovery where defendants collusively fixed their

21  major input cost with the intent and effect of driving up the prices of a finished product—would

22  open "a gaping hole in the administration of the antitrust laws. It would allow the price-fixer of a

23  basic commodity to escape the reach of a treble-damage penalty simply by incorporating the tainted

24  element into another product." *See In re Sugar Indus. Antitrust Litig.*, 579 F.2d 13, 18 (3d Cir.

25  1978).

26

27

28  6652501, at *21; *Allen v Dairy Farmers of Am. Inc.*, Case No. 5:09-cv-230, 2012 U.S. Dist. LEXIS
164718, at *40–55 (D. Vt. Nov. 19, 2012).

CORRECTED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DIRECT PURCHASER
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION: Master File No. CV-07-5944-SC

c.     **Classwide Measure Of Damages**

This Circuit has long held that individual damage issues cannot defeat class certification. *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1026 (9th Cir. 2011); *cert denied*, 132 S. Ct. 970 (2012) (citing *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010)).[51]

It is well-established in this Circuit that "[d]uring the class certification stage, plaintiffs need not supply a 'precise damage formula,' but must simply offer a proposed method for determining damages that is not 'so insubstantial as to amount to no method at all.'" *iTunes*, 2011 WL 5864036, at *3 (quoting *Online DVD Rental*, 2010 WL 5396064, at *11). *See also LCD I*, 267 F.R.D. at 314; *In re Apple & AT&T iPad Unlimited Data Plan Litig.*, No. C-10-02553 RMW, 2012 WL 2428248, at *3 (N.D. Cal. June 26, 2012); *SRAM*, 2008 WL 4447592, at *6; *DRAM*, 2006 WL 1530166, at *10. As the Supreme Court recently emphasized, the proposed method "need not be exact" but "must be consistent with [the plaintiffs'] liability case." *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1433 (2013) ("*Comcast*") (citing *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555 (1931) ("*Story Parchment*")).[52]

"The usual measure [of damages] in an overcharge case is the difference between the illegal price that was actually charged and the price that would have been charged 'but for' the violation multiplied by the number of units purchases." Phillip Areeda & Herbert Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and Their Application* ¶ 392a (2013) ("*Antitrust Law*"). As the Court in *Story Parchment* held, because of the difficulty of describing a "but-for world," damages need not be measured with certainty: "while the damages may not be determined by mere speculation or guess, it will be enough if the evidence show the extent of the damages as a matter of just and reasonable inference." 282 U.S. at 563. This standard follows from "[t]he most elementary conceptions of justice and public policy [which] require that the wrongdoer shall bear the risk of the

---

[51] *See also LCD I*, 267 F.R.D. at 314; *SRAM*, 2008 WL 4447592, at *6; *Online DVD Rental*, 2010 WL 5396064, at *11.

[52] As Judge Koh noted in *High Tech*, *Comcast* "breaks no new ground on the standard of certifying a class action." 2013 WL 1352016, at *29 (quoting *Comcast*, 133 S. Ct. at 1436 (Ginsburg and Breyer, JJ., dissenting)).

CORRECTED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DIRECT PURCHASER
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION: Master File No. CV-07-5944-SC

uncertainty which his own wrong has created." *Bigelow v. RKO Radio Pictures, Inc.*, 327 U.S. 251, 265 (1946).

Dr. Leitzinger's damage model applies the "usual measure" of damages—the difference between the prices actually charged for CRTs during the class period and prices in a "but for" world. It is therefore tied closely to Plaintiffs' theory of liability. It is based on the well-established "before and after" method. He uses econometric techniques—a reduced form regression analysis—to compare prices during the conspiracy period with prices from "before" and "after" the conspiracy, while controlling for material changes in the market between the time periods. Leitzinger Rep. ¶¶ 61–69. ████████████████████████████████████████

████████████████████████████ *Id.* ¶ 70.

Dr. Leitzinger uses the period beginning ████████████████ as the "after" period. While this period overlaps with the alleged conspiracy period, it is workable and appropriate because the evidence shows that Defendants' conspiracy had, as a practical matter, wound down. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ *See* Section III.C.6 above; Leitzinger Rep. ¶¶ 64–65. It is expected in most situations—as the model shows—that higher prices resulting from a price fixing conspiracy will persist after the conspiracy itself terminates. Dr. Leitzinger's model is designed to measure the importance of past prices in determining future prices, as well as the direct effect on prices of an active conspiracy. *Id.* Dr. Leitzinger's model determines overcharge percentages for each quarter of each year of the conspiracy ranging from 1.8% to 15.2%. *Id.* ¶¶ 72, 73 figs. 11, 12. [53]

[53] Dr. Leitzinger's use of average quarterly prices is entirely permissible. *See, e.g., Greenhaw v. Lubbock County Beverage Assocs.*, 721 F.2d 1019, 1028 (5th Cir. 1983), *rev'd on other grounds, Int'l Woodworkers of Am., AFL-CIO & its Local No. 5-376 v. Champion Int'l Corp.*, 790 F.2d 1174 (5th Cir. 1986) ("it was more reasonable to apply the market average overcharge figure in calculating damages rather than separate figures for each store in which purchases were made"); *LCD II*, 267 F.R.D. at 605 (noting that averaged and aggregated data are used by courts in granting class certification); *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 264 F.R.D. 603, 614 (N.D. Cal. 2009) ("*SRAM II*") (same); *In re Nifedipine Antitrust Litig.*, 246 F.R.D. 365, 371 (D.D.C. 2007) ("[T]he Court can find no fault in [plaintiffs' expert's] calculations of *aggregate* changes in price."); *Cardizem*, 200 F.R.D. at 350 (use of average prices did not undermine defendants' due process rights); *NASDAQ*, 169 F.R.D. at 523 (proper to show that the price range was affected "generally" by defendants' prices); *In re Pressure Sensitive Labelstock Antitrust Litig.*, 03-MDL-1556, 2007 WL 4150666, at *20 (M.D. Pa. Nov. 19, 2007) ("[d]efendants argue that

34

This type of study is a standard of antitrust practice. *See, e.g., DRAM*, 2006 WL 1530166, at *10; *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 583, 606 (N.D. Cal. 2010) ("*LCD II*"). The merits of this methodology "will be adjudicated at trial based upon economic theory, data sources, and statistical techniques that are entirely common to the class." *SRAM*, 2008 WL 4447592, at *6 (quoting *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 521 (S.D.N.Y. 1996). As the Ninth Circuit noted in *Ellis*, these types of expert disputes are not to be resolved on a motion for class certification. 657 F.3d 970.

Here, Dr. Leitzinger has presented a workable and widely accepted methodology for measuring classwide damages. In doing so, moreover, Dr. Leitzinger has gone well beyond Rule 23's requirement that Plaintiffs merely identify a damage methodology that is not "so insubstantial as to amount to no method at all." On the contrary, Dr. Leitzinger has constructed a complete working model (though preliminary) which establishes that it can be applied to determine damages on a classwide basis.

### d.   Fraudulent Concealment

Whether Defendants or their co-conspirators fraudulently concealed their unlawful conduct such that the statute of limitations is tolled is yet another common question that predominates over questions affecting individual class members. The statute of limitations applicable to actions under the Clayton Act provides that damages are recoverable if suit is "commenced within four years after the cause of action accrued." 15 U.S.C. § 15b. Generally, for a private antitrust suit, a "cause of

---

[plaintiffs' expert's] proposed multiple regression analysis is flawed because it yields an average overcharge. . . . This will not defeat Plaintiffs' class certification motion because Plaintiffs do not have to present a precise damages formula at this stage"); *In re Scrap Metal Antitrust Litig.*, 02 CV 0844, 2006 WL 2850453 at *16 (N.D. Ohio, Sept. 30,  2006), *aff'd*, 527 F.3d 517 (6th Cir. 2008), *cert. denied*, 129 S.Ct. 673 (2009)  ("*Scrap Metal*") (in situation where plaintiffs' expert used average price spreads to compute average undercharges, court upheld jury verdict for plaintiffs; "[r]ecognizing that antitrust cases present damages questions that often are not amenable to concrete mathematical calculations, courts have regularly recognized averaging of overcharges as a valid method"); *Presidio Golf Club of S.F., Inc. v. Nat'l Linen Supply Corp.*, No. C 71-431 SW, 1976 WL 1359, at *5 (N.D. Cal. Dec. 30, 1976) (only an "'illustration of generalized injury'" is needed for class certification); *Gordon v. Microsoft Corp.*, No. MC 00-5994, 2003 WL 23105550 at *3 (D. Minn. Dec. 15, 2003) (use of average overcharge analysis was permissible in determining what classwide damages would have been in the absence of defendants' conduct).

CORRECTED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DIRECT PURCHASER PLAINTIFFS' MOTION FOR CLASS CERTIFICATION: Master File No. CV-07-5944-SC

1    action accrues and the statute begins to run when a defendant commits an act that injures a

2    plaintiff's business." *Zenith Corp. v. Hazeltine Research Inc.*, 401 U.S. 321, 338 (1971).

3          Where fraudulent concealment of a continuing price-fixing conspiracy is proven, the statute

4    is tolled and a cause of action does not accrue until the plaintiff either knows, or in the exercise of

5    reasonable diligence should know, of the claim. *Cf. Coppinger-Martin v. Solis*, 627 F.3d 745, 750

6    (9th Cir. 2010); *Santa Maria v. Pacific Bell*, 202 F.3d 1170, 1178 (9th Cir. 2000).

7          Here, fraudulent concealment will be established if it is proven that Defendants and/or their

8    co-conspirators engaged in affirmative acts concealing their conspiracy and that, as a result,

9    Plaintiffs and the Class, despite the exercise of reasonable diligence, had neither actual nor

10   constructive knowledge of the facts constituting their claim more than four years prior to filing suit.

11   *LCD I*, 267 F.R.D. at 310 (citing *Rutledge v. Boston Woven Hose & Rubber Co.*, 576 F.2d 248, 249–

12   50 (9th Cir. 1978)). If fraudulent concealment is shown, Plaintiffs and the Class may recover

13   damages for the full class period, instead of just the four years prior to the filing of the complaint.

14         The question of concealment is routinely held to be a predominant, common classwide issue

15   susceptible to classwide proof and that class certification is therefore appropriate, notwithstanding

16   the existence of potential individual issues regarding knowledge and due diligence.[54] As Judge

17   Illston explained in *LCD I*:

18         While there may be some differences between class members regarding the statute of
           limitations and tolling, "the issue of the fact of concealment is the predominating
19         question, . . . because the inquiry necessarily focuses on defendants' conduct, that is,
           what defendants did, rather than what plaintiffs did." *In re Flat Glass*, 191 F.R.D. at
20         488. As the Third Circuit has explained, "[k]ey questions will not revolve around
           whether [plaintiffs] knew that the prices paid were higher than they should have been
21         or whether [plaintiffs] knew of the alleged conspiracy among [defendants]. Instead,
           the critical inquiry will be whether defendants successfully concealed the existence of
22         the alleged conspiracy, which proof will be common among the class members in
           each class." *In re Linerboard Antitrust Litig*, 305 F.3d at 163. The Court believes that
23         common issues will predominate the fraudulent concealment question.

24

25   ────────────
     [54] *LCD I*, 267 F.R.D. at 310; *Vitamins*, 209 F.R.D. at 269; *In re Linerboard Antitrust Litig.*, 203
     F.R.D. 197, 222–23 (E.D. Pa. 2001), *aff'd*, 305 F.3d 145 (3d Cir. 2002), *cert. denied sub nom.*
26   *Gaylord Container Corp. v. Garrett Paper, Inc.*, 538 U.S. 977 (2003); *Flat Glass*, 191 F.R.D. 472;
     *NASDAQ*, 169 F.R.D. at 520; *In re Indus. Diamonds Antitrust Litig.*, 167 F.R.D. 374, 385 (S.D.N.Y.
27   1996) ("*Indus. Diamonds*"); *In re Potash Antitrust Litig.*, 159 F.R.D. 682, 699 (D. Minn. 1995);
     *Corrugated Container*, 80 F.R.D. at 248; *In re Southeastern Milk Antitrust Litig.*, 2010-2 Trade
28   Cases (CCH) ¶ 77, 287 (E.D. Tenn. Sept. 7, 2010).

CORRECTED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DIRECT PURCHASER
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION: Master File No. CV-07-5944-SC

1    267 F.R.D. at 310.[55]

2        It is well settled that the due diligence tolling standard is an objective one. The issue is

3    whether a reasonably diligent person should have discovered his or her cause of action before the

4    statute of limitations expired. *See, e.g., Conmar Corp., v. Mitsui & Co., (U.S.A.), Inc.*, 858 F.2d 499,

5    504 (9th Cir. 1988), *cert. denied sub nom. VSL Corp. v. Conmar Corp.*, 488 U.S. 1010 (1989)

6    ("*Conmar*") (applying reasonable person due diligence standard as to inquiry notice); *E.W. French*

7    *& Sons, Inc. v. Gen. Portland Inc.*, 885 F.2d 1392, 1399 (9th Cir. 1989) (applying reasonable person

8    due diligence standard as to inquiry notice). This is a classwide question because there was no

9    information available to Plaintiffs and the class prior to November 2003 (four years before the DOJ

10    and foreign government investigations into price-fixing in the CRT industry first became public)

11    that should have caused a reasonably diligent person to suspect the existence of conspiracy. Class

12    members were under no legal duty to investigate the existence of a cause of action they had no

13    reason to suspect in the first place. As the Ninth Circuit explained in *Conmar*, "[t]he requirement of

14    diligence is only meaningful . . . when facts exist that would excite the inquiry of a reasonable

15    person." 858 F.2d at 504.[56]



These acts included, *inter alia*,

---

[55] Many other courts have so held. *See, e.g., Auto Lighting*, 276 F.R.D. 364; *Rubber Chems.*, 232 F.R.D. 346; *Citric Acid*, 1996 WL 655791; *SRAM*, 2008 WL 4447592.

[56] *Accord Taylor v. Merrick*, 712 F.2d 1112, 1118 (7th Cir. 1983) (if there is no reason to suspect foul play, "there may be no duty of inquiry at all"); *Supermarket of Marlinton Inc. v. Meadow Gold Dairies, Inc.*, 71 F.3d 119, 128 (4th Cir. 1994) (plaintiff may satisfy due diligence requirement "without demonstrating that it engaged in any specific inquiry"); *In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 782 F. Supp. 487, 497–98 (C.D. Cal. 1982) ("*Petroleum Prods.*") (due diligence is only meaningful when facts exist that would excite inquiry of a reasonable person); *In re Rubber Chems. Antitrust Litig.*, 504 F. Supp. 2d 777, 788 (N.D. Cal. 2007) ("[p]laintiffs are not under a duty continually to scout around to uncover claims which they have no reason to suspect they might have." (quoting *Petroleum Prods.*, 782 F. Supp. at 489)); *In re Polyurethane Foam Antitrust Litig.*, 799 F. Supp. 2d 777, 801–02 (N.D. Ohio 2011); *In re Vitamins Antitrust Litig.*, No. MISC 99-197(TFH), 2000 WL 1475705, at *4 (D.D.C. May, 9, 2010).

CORRECTED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DIRECT PURCHASER
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION: Master File No. CV-07-5944-SC

1    ███████████████████████████████████████████████[57] Because

2    Defendants' concealed their conspiracy, Plaintiffs and the Class were unaware of their claims or of

3    any information that should or would have put a reasonable person on inquiry notice concerning

4    their claims until November 2007, when the existence of CRT investigations by the DOJ and foreign

5    competition authorities first became public.

6         2.    **A Class Action Is the Superior and Most Efficient Method for Adjudicating This Case.**

7         Rule 23(b)(3) requires that a class action be "superior to other available methods for the fair

8    and efficient adjudication of the controversy." "[I]f common questions are found to predominate in

9    an antitrust action, . . . courts generally have ruled that the superiority prerequisite of Rule 23(b)(3)

10   is satisfied." *LCD I*, 267 F.R.D. at 314 (citation omitted). *See also Rail Freight*, 287 F.R.D. at 73–

11   74; *Rubber Chems.*, 232 F.R.D. at 354; *DRAM*, 2006 WL 1530166 at *10. Here, it would be

12   incredibly inefficient to litigate the predominating common issues in individual proceedings, rather

13   than on a class basis. In addition, as Judge Wilken said in *SRAM*, "[i]n antitrust cases such as this,

14   the damages of individual direct purchasers are likely to be too small to justify litigation, but a class

15   action would offer those with small claims the opportunity for meaningful redress." 2008 WL

16   4447592, at *7; *Auto Lighting*, 276 F.R.D. at 375 (same). There are thousands of class members

17   with small claims whose only practical means of redress is a class action. *See Brand Name*

18   *Prescription Drugs Antitrust Litig.*, MDL No. 897, 1994 WL 663590, at *6 (N.D. Ill. Nov. 18, 1994)

19   ("We fail to see the logic in defendants' contention that 50,000 individual actions are less complex

20   than a single class action.").

21        The prosecution of separate actions by individual direct purchasers would also create the risk

22   of inconsistent rulings, and could result in prejudice to Plaintiffs and Class members. The cost that

23   would be imposed on the judicial system and parties by multiple individual trials would far exceed

24   those of litigating this case as a single class action proceeding. Thus, "certification in this case would

---

[57] The affirmative acts of concealment by one conspirator, during the course and in furtherance of a conspiracy, are legally attributable to all co-conspirators. *See, e.g., Scrap Metal*, 527 F.3d at 537; *Riddell v. Riddell Wash. Corp.*, 866 F.2d 1480, 1493 (D.C. Cir. 1989); *New York v. Hendrickson Bros. Inc.*, 840 F.2d 1065, 1083–86 (2d Cir.), *cert. denied*, 488 U.S. 848 (1988).

CORRECTED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DIRECT PURCHASER PLAINTIFFS' MOTION FOR CLASS CERTIFICATION: Master File No. CV-07-5944-SC

1  be far superior to, and more manageable than, any other procedure available for the treatment of the

2  factual and legal issues raised by Plaintiffs' claims." *Auto Lighting*, 276 F.R.D. at 375.

3  **CONCLUSION**

4  For the foregoing reasons, Plaintiffs respectfully request that their motion for class

5  certification be granted and that their counsel, Guido Saveri and his firm Saveri & Saveri, Inc. be

6  appointed Class Counsel pursuant to Rule 23(g).

7  Dated: August 1, 2013.                                   Respectfully submitted,

8

9  /s/ *Guido Saveri*
   Guido Saveri (22349)
10  R. Alexander Saveri (173102)
   Geoffrey C. Rushing (126910)
   Travis L. Manfredi (281779)
11  SAVERI & SAVERI, INC.
   706 Sansome Street
12  San Francisco, CA 94111
   Telephone:  (415) 217-6810
13  Facsimile:  (415) 217-6813

14  *Interim Lead Counsel For Plaintiffs*

15
   Joseph W. Cotchett
16  Steven N. Williams
   Adam J. Zapala
17  Joanna W. LiCalsi
   COTCHETT, PITRE & McCARTHY, LLP
18  840 Malcolm Road
   Burlingame, CA 94010
19  Telephone: (650) 697-6000
   Facsimile: (650) 697-0577

20

21  Bruce L. Simon
   Aaron M. Sheanin
22  PEARSON, SIMON, WARSHAW & PENNY
   LLP
23  44 Montgomery Street, Suite 2450
   San Francisco, CA 94104
24  Telephone:  (415) 433-9000
   Facsimile:  (415) 433-9008

25

26

27

28

CORRECTED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DIRECT PURCHASER
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION: Master File No. CV-07-5944-SC

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

H. Laddie Montague, Jr.
Ruthanne Gordon
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Telephone: (800) 424-6690
Facsimile: (215) 875-4604


Michael P. Lehmann
HAUSFELD LLP
44 Montgomery Street, Suite 3400
San Francisco, CA 94104
Telephone:  (415) 633-1908
Facsimile:  (415) 358-4980


Gary Specks
KAPLAN FOX
423 Sumac Road
Highland Park, IL 60035
Telephone: (847) 831-1585
Facsimile: (847) 831-1580


Douglas A. Millen
William H. London
FREED KANNER LONDON & MILLEN
2201 Waukegan Road
Suite 130
Bannockburn, IL 60015
Telephone: (224) 632-4500
Facsimile: (224) 632-4519


Eric B. Fastiff
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008


W. Joseph Bruckner
Elizabeth R. Odette
LOCKRIDGE GRINDAL NAUEN P.L.L.P
100 Washington Avenue S
Suite 2200
Minneapolis, MN 55401
Telephone:  (612) 339-6900
Facsimile: (612) 339-0981

*Attorneys for Plaintiffs*

CORRECTED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DIRECT PURCHASER
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION: Master File No. CV-07-5944-SC