**SheppardMullin**

Sheppard, Mullin, Richter & Hampton LLP
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
415.434.9100 main
415.434.3947 fax
www.sheppardmullin.com

415.774.3208 direct
tcunningham@sheppardmullin.com

Aug. 23, 2013

File Number: 08Z8-134298

Hon. Charles A. Legge
JAMS
Two Embarcadero Center, Suite 1500
San Francisco, CA 94111

Re:  *In re: Cathode Ray Tube (CRT) Antitrust Litigation*, No. 07-CV-5944 SC, MDL No. 1917

Dear Judge Legge:

I write on behalf of defendant Samsung SDI America, Inc. ("SDIA") to respectfully request an order compelling the Direct Purchaser Plaintiffs ("Plaintiffs") to respond to SDIA's interrogatories 1-9, and requests for admissions ("RFAs") 1-82 and 85. *See* Exs.[1] A, B (SDIA's first set of interrogatories and RFAs, respectively).

SDIA has allowed Plaintiffs multiple extensions to respond to this discovery, such that Plaintiffs have had approximately three-and-a-half months to respond, but to date Plaintiffs have provided almost no substantive responses. *See* Exs. D, E (Plaintiffs' responses).[2] Although they agreed to respond to a handful of requests, Plaintiffs have not committed to any particular date for responding. Indeed, Plaintiffs have unilaterally ignored a past agreed-upon response date, and SDIA's request to set new dates.

Plaintiffs' primary objection is that SDIA's discovery requests constitute premature contention discovery. *See id*. and Ex. G (Plaintiffs' July 10 meet and confer letter). This objection has no merit. This is not a typical case where discovery has not matured as of the time a class motion is filed. As the Special Master has recognized, these cases have been pending many years. Plaintiffs have deposed more than 40 corporate representatives and fact witnesses, and have received millions of pages of documents, which they have possessed for years. *See* Ex. L, pp. 3-7 (Dkt. No. 1757-1).

Moreover, Your Honor has previously permitted contention discovery in this case and

---

[1] All citations to "Ex." refer to the exhibits attached to the concurrently filed Declaration of Tyler M. Cunningham in Support of Motion to Compel Direct Purchaser Plaintiffs to Produce Discovery.

[2] Plaintiffs' responses to SDIA's RFAs are misnumbered, beginning with RFA 49.

**SheppardMullin**

Hon. Charles A. Legge
Aug. 23, 2013
Page 2

indicated that such discovery is permissible as long as it is not "extensive" and does not inquire "about all the allegations of the complaints." *See* Ex. K, p. 5 (Report and Recommendations Regarding Discovery Motions, Dkt. No. 810) (ordering plaintiffs to respond to interrogatories regarding finished products).

The requested discovery relates to Plaintiffs' pending class motion, as well as the merits of Plaintiffs' claims which are intertwined with their class motion. *See In re Rail Freight Fuel Surcharge Antitrust Litig.*, --- F.3d ----, 2013 WL 4038561, at *6 (D.C. Cir. Aug. 9, 2013) ("It is now indisputably the role of the district court to scrutinize the evidence before granting certification, even when doing so requires inquiry into the merits of the claim.") (internal quotations omitted). This Court has a "duty to permit the parties to give the district court all information that the district court might find relevant in making a class action determination." *In re Urethane Antitrust Litig.*, 237 F.R.D. 454, 464 (D. Kan. 2006). The discovery is time-sensitive, as defendants must oppose the class certification motion by September 11, 2013. SDIA needs time to review and assimilate these responses for purposes of its opposition. There is no reason Plaintiffs cannot respond to these requests within seven days.[3]

Specifically, SDIA's requests seek:

(1) Identification of the alleged conspirators and evidence of their alleged participation in the claimed CRT conspiracy – relevant to commonality and predominance of individual issues;

(2) Information regarding Plaintiffs' CRT and CRT Product purchases from non-defendants – relevant to common proof of impact;

(3) Information regarding Plaintiffs' purchases of finished products from entities they claim to be owned or controlled by an allegedly conspiring seller – relevant to standing, as the Court held in its Summary Judgment Order.

(4) Information about how Plaintiffs intend to prove that they bought CRT Products containing allegedly price-fixed CRTs sold by an allegedly conspiring CRT seller – relevant to common proof of impact;

(5) Information regarding which defendants Plaintiffs claim were *not* sellers of standalone CRTs, given their convoluted allegations and the number of entities sued, some of whom were only purchasers of CRTs (e.g., Samsung Electronics).

---

[3] *See Apple Inc. v. Samsung Elecs. Co., Ltd.*, 2012 U.S. Dist. LEXIS 38508, *16 and *28 (N.D. Cal. Mar. 20, 2012) (where, after a two-week extension, Apple responded only with objections, district court compelled Apple to respond within two weeks).

**SheppardMullin**

Hon. Charles A. Legge
Aug. 23, 2013
Page 3

1.  **Background**

    On May 8, 2013, SDIA propounded 90 RFAs and 10 interrogatories on Plaintiffs.  Exs. A, B.  These discovery requests pertain to certain issues that SDIA believes are important to the upcoming class certification battle.  *See supra* at 2 (describing issues).

    On May 14, 2013, Plaintiffs filed their motion for class certification.  SDIA granted Plaintiffs' request for 30 additional days to respond to SDIA's discovery, in exchange for a "corresponding" extension of the class certification briefing schedule, which the Court adopted.  Ex. C, p. 1 (Stipulation and Order re DPP Class Certification Briefing Schedule, Dkt. No. 1740).

    On July 8, 2013, Plaintiffs responded to SDIA's discovery requests almost entirely with objections and no substantive responses.  Exs. D, E.  The next day, SDIA sent a letter to Plaintiffs regarding their deficient responses and asked to meet and confer.  *See* Ex. F (SDIA's July 9 letter).  Plaintiffs responded, primarily asserting that the requests constituted premature and improper contention discovery.  Ex. G (Plaintiffs' July 10 letter).  Indeed, Plaintiffs failed to even identify all alleged co-conspirators and "affiliates," after five years of litigation.

    Parties met and conferred telephonically on July 11, for approximately two hours.  Plaintiffs refused to respond to interrogatories 5, 6 and 8, and said they would get back to SDIA about the other requests.  SDIA sent a letter to Plaintiffs on July 16 memorializing the conference.  *See* Ex. H (SDIA's July 16 letter).  On July 18, 2013, Plaintiffs stated they would respond to interrogatories 1, 2, 4 and 7, and "some" RFAs, subject to their objections, within 30 days.  Ex. I (Plaintiffs' July 18 letter).  On the date those responses were due, Plaintiffs' counsel unilaterally indicated that they would provide responses "as soon as they are ready" because they needed yet more time.  Ex. J (August 19, 2013 email exchange).  SDIA asked Plaintiffs to commit to responding by a date certain, and to extend the deadline for opposing their class motion.  *Id*.  Plaintiffs simply ignored SDIA's request.

2.  **Argument**

    Although Plaintiffs agreed to respond to some requests, they defaulted on that agreement, and now propose to respond when they "are ready" to do so, subject to several invalid objections.  Given Plaintiffs' pattern of missing even their own self-imposed deadlines, this representation is of little comfort to SDIA.  SDIA seeks an order compelling Plaintiffs to respond in full to SDIA's interrogatories 1-9, and RFAs 1-82 and 85, within seven days from the Special Master's order.

    a.  **Plaintiffs' objections that SDIA's discovery requests constitute premature contention discovery are baseless**

**SheppardMullin**

Hon. Charles A. Legge
Aug. 23, 2013
Page 4

In response to most of SDIA's discovery requests, Plaintiffs assert that the requests constitute improper premature contention discovery. These objections are baseless. Indeed, Your Honor previously rejected similar objections in 2010. *See* Ex. K, pp. 5-6. Then, Plaintiffs refused to answer discovery requests on the same ground regarding their allegations of a CRT Products conspiracy. *Id.* Your Honor ordered Plaintiffs to respond, distinguishing the focused contention discovery at issue from improper "extensive contention interrogatories," and holding that the requests were not premature because they sought evidence upon which Plaintiffs based their complaint, which Plaintiffs "should have . . . available." *Id. See also In re Automotive Refinishing Paint Antitrust Litig.*, 2006 U.S. Dist. LEXIS 34129, *31-32 (E.D. Pa. May 26, 2006) ("[A]ntitrust cases generally call for broad discovery," and "properly utilized" contention interrogatories are permissible). Likewise, here, SDIA's discovery requests relate to discrete issues relevant to both class certification and the merits of Plaintiffs' claims which overlap with class issues. Plaintiffs' assertion that the record is incomplete because we are purportedly at an "early stage of this litigation" is completely baseless. This case is more than five years old. The same objection to "premature" discovery was rejected in 2010, *nearly three years ago*. By comparison, three years after the complaint was filed in *In re TFT-LCD (Flat Panel) Antitrust Litigation*, Special Master Martin Quinn remarked: "[W]e cannot be said to be at an early stage of discovery in this case." Ex. M, p. 3 (*In re TFT-LCD,* MDL No. 1827, Dkt. No. 2114).

Plaintiffs cannot seriously claim that SDIA's discovery is so premature that they cannot respond, given the long history of this case and the necessity of probing into some merits to resolve their class motion. Indeed, a recent submission by Plaintiffs describes the extensive discovery that has occurred over the past three years. Ex. L at pp. 3-7 (Dkt. No. 1757-1). Plaintiffs have collectively deposed over 40 corporate representatives and fact witnesses to date, and have received millions of pages of documents from defendants. *See id.* at 5. In addition, Plaintiffs have secured the cooperation of settled defendants, which should help them assimilate and understand this information. *See* Cunningham Decl. ¶ 17.

Plaintiffs also complained about having to repeatedly supplement their discovery responses, and suggested that they provide a limited response near *the end* of discovery. But Plaintiffs' duty to supplement is not an undue burden. In *In re TFT-LCD,* Special Master Quinn held that "in general a court should favor early discovery with supplementation," and found that this would not place an undue burden on plaintiffs. *See* Ex. M, p. 5. This is especially true here because much of the information that SDIA seeks is relevant to its opposition to class certification, due on September 11. *See In re Urethane Antitrust Litig.*, 237 F.R.D. at 464 (granting motion to compel responses to class certification discovery in antitrust conspiracy case, holding that Court has a "duty to permit the parties to give the district court all information that the district court might find relevant in making a class action determination."); *see also Gray v. First Winthrop Corp.*, 133 F.R.D. 39, 40-41(N.D. Cal. 1990) ("[T]he Federal Rules could easily have provided for a stay [of discovery] pending class certification, but they do not."). Moreover, SDIA already agreed to work with Plaintiffs on a reasonable and limited supplementation schedule.

**SheppardMullin**

Hon. Charles A. Legge
Aug. 23, 2013
Page 5

     **b.**     **Plaintiffs should respond to interrogatories 1 and 2, seeking to identify all co-conspirators and evidence of their participation in the alleged CRT conspiracy**

Interrogatory 1 asks Plaintiffs to identify the participants in the alleged conspiracy, and interrogatory 2 asks Plaintiffs to identify the evidence of their alleged participation. Ex. A. Information regarding alleged participation in the claimed CRT conspiracy is relevant both to the merits of Plaintiffs' claims and also to class certification. The requested discovery will help determine whether Plaintiffs' proof of the existence and impact of the alleged conspiracy is common to the class and predominates over individualized issues, given the broad scope of the conspiracy they allege, including alleged participation by many defendants that were only CRT *purchasers*.

Moreover, Plaintiffs claim they have common proof of the alleged conspiracy as to both CPTs and CDTs, and argue that non-expert evidence regarding the alleged conspiracy, such as documents and testimony, is sufficient to show classwide impact. *See* Plaintiffs' Class Motion at 25-27. The requested discovery will help SDIA evaluate these claims. *See In re New Motor Vehicles Antitrust Litig.*, 522 F.3d 6, 20 (1st Cir. 2008) ("In antitrust class actions, common issues do not predominate if the fact of antitrust violation *and* the fact of antitrust impact cannot be established through common proof.") (emphasis added).

Plaintiffs have agreed to supplement their responses subject to their objections, but then reneged on that agreement on the day responses were due. In *In re TFT-LCD*, Special Master Martin Quinn required plaintiffs to respond to similar requests regarding alleged conspiracy "participation," holding that "for discovery purposes it is . . . important to identify who did what at each meeting." Ex. M, p. 4 n.3. He further explained that "identification of meetings where Plaintiffs contend that the alleged conspiracy unfolded, while a big job, is sufficiently discrete to be answered and plainly important. Moreover, it is important for discovery purposes to identify which defendants attended which meetings." *Id.* at 4. He required plaintiffs to identify attendees, dates, locations, documents and/or testimony in relation to each meeting. *Id.* at 4-5. This is precisely the type of information SDIA seeks in interrogatories 1 and 2. *See also In re Automotive Refinishing Paint Antitrust Litig.*, 2006 U.S. Dist. LEXIS 34129, *10-11 (granting motion to compel responses to interrogatories seeking identification of witnesses, documents, meetings, entities, products and communications).

     **c.**     **Plaintiffs should respond to interrogatories 5, 6 and 7, seeking information about their CRT and CRT Product purchases from non-defendants**

Interrogatory 5 asks whether Plaintiffs purchased CRTs or CRT Products from non-defendants during the relevant period. Interrogatory 6 asks for information regarding those purchases, including price, quantity, date, manufacturer, and location. Interrogatory 7 asks whether Plaintiffs assert claims based on purchases from entities other than alleged conspirators.

**SheppardMullin**

Hon. Charles A. Legge
Aug. 23, 2013
Page 6

Ex. A.  Information regarding Plaintiffs' purchases from non-defendants will provide SDIA with important information about competitive conditions in the CRT market that could have affected the prices paid by Plaintiffs and their proposed class.  These issues are relevant to determining whether there are common questions of impact that predominate over individualized issues.  Plaintiffs refused to respond to interrogatories 5 and 6, asserting that these requests were not relevant and would subject Plaintiffs to an undue burden.  Although Plaintiffs agreed to respond to interrogatory 7, subject to their objections, to date they have not done so.

These requests are highly relevant to class certification because the presence of non-defendant or non-conspiring competitors in a market may indicate that common proof of impact is lacking.  *See, e.g., In re Plastics Additives Antitrust Litig.*, 2010 U.S. Dist. LEXIS 90135, *46-47 (E.D. Pa. 2010) (denying motion for class certification where plaintiffs' expert failed to account for non-defendant producers).  Indeed, Plaintiffs and their expert, Dr. Leitzinger, assert that the structure of the CRT industry is sufficient to show classwide impact.  *See* Plaintiffs' Class Motion at 27-29.  SDIA is entitled to obtain corresponding discovery regarding market structure and the effect of non-defendant sellers.  *See, e.g.*, *In re Pressure Sensitive Labelstock Antitrust Litig.*, 226 F.R.D. 492, 495 (M.D. Pa. 2005) (granting motion to compel responses to discovery requests regarding purchases from non-defendant, non-manufacturers in antitrust case, holding that the requested information "may bear on" classwide impact, commonality and predominance, and explaining that "the entire structure of the industry" should be considered in an antitrust class certification determination); *In re Urethane Antitrust Litig.*, 237 F.R.D. at 460 (granting motion to compel, holding that evidence of industry characteristics may demonstrate that class certification is inappropriate).

Moreover, the burden of providing information regarding purchases from non-defendants is no greater than the burden of providing information regarding purchases from defendants, which Plaintiffs have already done.  *See, e.g., In re Pressure Sensitive Labelstock Antitrust Litig.*, 226 F.R.D. at 495 (agreeing with defendants that there was "no principled distinction" between burden of producing requested data and burden associated with prior productions).  Testimony from named Plaintiffs also contradicts their assertions of undue burden.  For instance, Plaintiff City Electronics testified that it had already produced information regarding all CRT purchases from all vendors to its attorneys, so Plaintiffs' counsel should already have this information available.  *See* Ex. N (City Electronics Dep Tr. at 110).

        **d.**      **Plaintiffs should respond to interrogatory 8 and RFAs 1-62 and 85, seeking information about entities allegedly owned or controlled by defendants**

Interrogatory 8 asks Plaintiffs to identify how they intend to prove that non-conspiring sellers of finished products are owned or controlled by alleged conspirators.  Ex. A.  RFAs 1-62 ask Plaintiffs to admit or deny ownership or control allegations relating to specific entities.  Ex. B.  RFA 85 asks Plaintiffs to admit that they are not seeking to recover for purchases of finished products from non-conspirators that are not owned or controlled by alleged conspirators.  *Id.*

**SheppardMullin**

Hon. Charles A. Legge
Aug. 23, 2013
Page 7

Information regarding ownership or control relationships between defendants and sellers of finished products containing CRTs (i.e., the *direct* purchasers) is crucial to determine which finished-product purchasers actually have standing to pursue their claims. Plaintiffs' counsel asserted in meet and confer that these issues are not relevant to class certification, and that RFA 85 was too confusing. Although they agreed to provide supplemental responses to "some" of these RFAs, subject to their invalid objections, they failed to abide by the agreed deadline, after having had three-and-a-half months to prepare their responses.

Plaintiffs' main objection to interrogatory 8 and RFA 85 is that they are "inconsistent" with the Court's prior summary judgment ruling. That claim is baseless. In that ruling, the Court held that finished product purchasers may sue under the owned-or-controlled exception to the indirect purchaser bar. 911 F.Supp.2d 857, 872. But the Court "expresse[d] no view as to whether the Named DPPs will be able to prove what is needed to win relief as indirect purchasers under the ownership and control exception." *Id.* at 872. Thus, SDIA is entitled to know how Plaintiffs and other members of the proposed class intend to prove that they have standing to pursue claims based on purchases of finished products, particularly given that they have sued for purchases from entities that appear to have no ownership or control relationship with any allegedly conspiring CRT sellers.

Ownership and control issues are highly relevant to standing and class certification. Class certification has been denied in cases where named plaintiffs lack standing. *See, e.g., In re New Motor Vehicles Canadian Export Antitrust Litig.*, 522 F.3d at 16; *In re Milk Prods. Antitrust Litig.*, 195 F.3d 430, 436 (8th Cir. 1999). In addition, SDIA needs responses from Plaintiffs to determine if Plaintiffs have a plausible common method of establishing ownership or control; class certification has been denied in cases where individualized issues regarding ownership or control predominated over common issues. *See, e.g., In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 691 F.2d 1335, 1343 (9th Cir. 1982).

Finally, RFA 85 simply seeks to confirm that Plaintiffs do not seek to recover for any purchase of a finished product from an entity that is not a conspirator or owned or controlled by an alleged conspirator. This is the classic purpose of RFAs -- to eliminate uncontested issues from the case. *See* Advisory Committee Note to 1970 Amendment to Fed.R.Civ.P. 36, 48 F.R.D. 531-532 (1970) ("Rule 36 serves two vital purposes, both of which are designed to reduce trial time. Admissions are sought, first to facilitate proof with respect to issues that cannot be eliminated from the case, and secondly, to narrow the issues by eliminating those that can be."); *Asea, Inc. v. S. Pac. Transp. Co.*, 669 F.2d 1242, 1245 (9th Cir. 1981) ("The purpose of Rule 36(a) is to expedite trial by establishing certain material facts as true and thus narrowing the range of issues for trial.").

> e. **Plaintiffs should respond to interrogatories 3 and 4, seeking information about how Plaintiffs intend to prove that their finished products contained CRTs made by an alleged co-conspirator**

**SheppardMullin**

Hon. Charles A. Legge
Aug. 23, 2013
Page 8

Interrogatories 3 and 4 ask Plaintiffs to identify their purported evidence and method for proving that the finished products they bought contained allegedly priced-fixed CRTs produced by a co-conspirator. *See* Ex. A. Information about how Plaintiffs plan to prove that the finished products they purchased actually contain price-fixed CRTs made by alleged conspirators is important to determining whether finished-product purchasers can prove impact through common proof, and whether the alleged class is ascertainable. Unless they make this showing, they cannot claim they were injured. Plaintiffs claim that they did not purchase any finished products that contained CRTs made by non-conspirators, and further claim that they are not required to prove who made the CRTs contained in the finished products they purchased. If Plaintiffs have no evidence or method of identifying the maker of the CRTs inside their products, they should amend their response to say so.

In addition, this discovery is expressly permitted by the August 26, 2011 Stipulation and Order, which provides that "the issue of the purported impact or effect of the alleged fixing of prices of the CRTs on the prices of Finished Products shall remain in the case, and is a proper subject of discovery." *See* Ex. O, at ¶5 (Dkt. No. 996). Determining whether and how the alleged CRT conspiracy impacted finished product prices requires, at the very least, figuring out which finished products actually contain an allegedly price-fixed CRT. Moreover, Plaintiffs' objections that RFA 85 calls for a legal conclusion or is otherwise not relevant are also baseless. *See In re K-Dur Antitrust Litig.*, 2007 U.S. Dist. LEXIS 96066, *48-52 (D.N.J. Jan. 2, 2007) (RFAs seeking admissions regarding the application of law to fact are "clearly permissible." "[I]f a particular Request is 'reasonably calculated' to lead to the discovery of admissible evidence, a response is required.").

> f. **Plaintiffs should respond to RFAs 63-82, seeking admissions regarding their contentions about which defendants did *not* make or sell standalone CRTs**

On May 2, 2013, Your Honor recommended dismissing Direct Action Plaintiffs' claims against certain Samsung Electronics defendants on the grounds that these entities only made or sold finished products, and thus could not be part of a conspiracy to fix prices on CRTs that they were purchasing: "[T]here is no logic to a contention that a company which does not make or sell the price-fixed products (the CRTs) is somehow liable for a conspiracy to fix those prices when it was only a purchaser of that product, and there is now no allegation of a conspiracy to fix the price of the finished product." Ex. P, p. 16 (Dkt No. 1664). Similar issues exist in this case, and SDIA's RFAs 62 through 80 seek to understand Plaintiffs' position on which defendant entities Plaintiffs claim were CRT sellers as opposed to sellers of only finished products.

As Your Honor's finding in the Direct Action cases above shows, the RFAs are highly relevant. A response to these straightforward requests regarding the application of law to fact are therefore required. *See In re K-Dur Antitrust Litig.*, 2007 U.S. Dist. LEXIS 96066, *48-52 (RFAs seeking admissions regarding the application of law to fact are "clearly permissible." "[I]f a particular Request is 'reasonably calculated' to lead to the discovery of admissible evidence, a

**SheppardMullin**

Hon. Charles A. Legge
Aug. 23, 2013
Page 9

response is required."). These RFAs are plainly proper and are being used for the classic purpose of narrowing or eliminating issues from the case. If Plaintiffs are not contending that certain "defendants" were makers or sellers of standalone CRTs, then it makes no sense to keep those defendants in the case or force the parties and Court to continue litigating issues with respect to those defendants. *See* Advisory Committee Note to 1970 Amendment to Fed.R.Civ.P. 36, 48 F.R.D. 531-532 (1970); *Asea, Inc.*, 669 F.2d at 1245.

Plaintiffs cannot avoid responding to this discovery simply because SDIA can obtain the information from other sources, or because Plaintiffs would be forced to "review and analyze . . . thousands of documents." Ex. J. See *In re K-Dur Antitrust Litig.*, 2007 U.S. Dist. LEXIS 96066, *48-51 ("It is the responding party's burden to, at the very least, make an 'initial inquiry.' Failing to do so simply because it would be equally easy for the requesting party is not a sufficient excuse.") (citations omitted).

      **g.**      **Plaintiffs should identify the evidence supporting their responses to SDIA's RFAs that are not unqualified admissions (interrogatory 9)**

Interrogatory 9 asks Plaintiffs to provide all the evidence supporting their RFA responses that are not unqualified admissions. Ex. A. Plaintiffs refused to respond, asserting that it was an abuse of the RFA process. Contrary to their view, an interrogatory asking for the evidence supporting RFA responses is permissible under the federal rules. *See* William W. Schwarzer, et al., *Cal. Prac. Guide Fed. Civ. Pro. Before Trial,* Ch. 11(IV)-D at 11:2000 (Rutter Group 2013) ("You can ask the opponent to identify facts and documents on which its response is based by *combining* the RFAs with *interrogatories*."). This makes sense given that the purpose of RFAs is to eliminate issues from the case or facilitate discovery of issues that cannot be eliminated. *See* Advisory Committee Note to 1970 Amendment to Fed.R.Civ.P. 36, 48 F.R.D. 531-532 (1970).

Special Master Quinn expressly permitted use of such interrogatories in *In re TFT-LCD*, citing the complexity of the case. Ex. M, p. 3. This case is at least equally complex, involving an alleged worldwide conspiracy encompassing numerous buyers and sellers and multiple products spanning almost 13 years. Interrogatory 9 is an efficient way of obtaining information from Plaintiffs about such a broad claim.[4]

Plaintiffs also object to interrogatory 9, asserting that the underlying RFAs call for legal conclusions. But Plaintiffs' authorities are inapposite. While it is true that admissions cannot be

---

[4] For this reason, *Safeco of Am. v. Rawstron*, 181 F.R.D. 441, 445 (C.D. Cal. 1998), is distinguishable; it involved a dispute between two individuals and an insurance company, and was not a complex antitrust case such as this one. Moreover, one of the other cases cited by Plaintiffs actually supports SDIA's approach. *See Playboy Enterprises, Inc. v. Welles*, 60 F. Supp. 2d 1050, 1057 (S.D. Cal. 1999) (compelling supplemental responses to an interrogatory asking for the factual basis for RFA denials).

**SheppardMullin**

Hon. Charles A. Legge
Aug. 23, 2013
Page 10

sought on pure legal issues, RFAs seeking admissions regarding the application of law to fact, or opinions regarding the application of law to fact, are permissible. *See* Fed. R. Civ. P. 36(a)(1)(A) (RFAs can seek admissions relating to "facts, the application of law to fact, or opinions about either."); *In re K-Dur Antitrust Litig.*, 2007 U.S. Dist. LEXIS 96066, *51-52 (RFAs seeking admissions regarding the application of law to fact are "clearly permissible"). None of SDIA's RFAs seek admissions on pure matters of law, such as Plaintiffs' interpretation of a statute or disputed contract term. Instead, all of SDIA's RFAs are tied to facts or alleged facts.[5]

      **h.     Plaintiffs' other objections are baseless**

Plaintiffs have made a plethora of other baseless boilerplate objections that are largely common to all of the discovery at issue. None of SDIA's interrogatories are compound. For example, although interrogatories 2, 6 and 8 have subparts, those subparts "are logically or factually subsumed within and necessarily related to the primary question." *Trevino v. ACB Am., Inc.*, 232 F.R.D. 612, 614 (N.D. Cal. 2006) (citation and quotation marks omitted). Plaintiffs also object that the information requested in interrogatories 2 and 8 are exclusively within defendants' control, or available from other sources. Plaintiffs have had access to an extensive production for years, and defendants are entitled to know what evidence *Plaintiffs* claim support their broad allegations. Similarly, Plaintiffs' objections to interrogatory 6, related to their purchases from *non-defendants*, on the ground that the information is equally available to defendants, is without merit. *See Nat'l Acad. of Recording Arts & Sciences, Inc. v. On Point Events, LP*, 256 F.R.D. 678, 682 (C.D. Cal. 2009) ("[C]ourts have unambiguously stated that this exact objection is insufficient to resist a discovery request."). Plaintiffs' recitation of other objections lacks specificity and should also be rejected. *See Quiroz v. Cate,* 2012 WL 3236490, *4 (N.D. Cal. Aug. 6, 2012) ("A recitation that the discovery request is overly broad, burdensome, oppressive, and irrelevant is not adequate to voice a successful objection.") (citation and quotation marks omitted). Plaintiffs' scattered objections to common sense terms such as "made" or "stand-alone" are also without merit. *See See Apple Inc.,* 2012 U.S. Dist. LEXIS 38508, *19 (rejecting Apple's objections to terms used in RFAs with "well-established" meanings); *see In re Urethane Antitrust Litig.*, 237 F.R.D. at 458-59.

---

[5] SDIA's RFAs are thus distinguishable from the facts of *Gem Acquisitionco, LLC v. Sorenson Group Holdings, LLC*, 2010 WL 1340562, *3 (N.D. Cal. Apr. 5, 2010), where an RFA asked for a party's interpretation of a disputed contract term.

**SheppardMullin**

Hon. Charles A. Legge
Aug. 23, 2013
Page 11

Respectfully submitted,

*[signature]*

Tyler M. Cunningham
for SHEPPARD, MULLIN, RICHTER & HAMPTON LLP


cc:     All Counsel via ECF