# Exhibit M

Martin Quinn
JAMS
Two Embarcadero Center, Suite 1500
San Francisco, CA 94111
Telephone: (415) 982-5267
Fax: (415) 982-5287

SPECIAL MASTER

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: TFT-LCD (FLAT PANEL) ANTITRUST LITIGATON | CASE NO. M:07-cv-01827-si <br><br> MDL No. 1819 <br><br> **SPECIAL MASTER'S ORDER RE MOTION FOR PROTECTIVE ORDER BY DIRECT PURCHASER PLAINTIFFS RE CONTENTION DISCOVERY REQUESTS SERVED BY CERTAIN DEFENDANTS** (Hrg. 9/30/10 and 10/11/10) |
| This Order Relates to: <br><br> ALL CASES | |

The motion by Direct Purchaser Plaintiffs ("DPP's") for a protective order excusing them from responding fully to written "contention" discovery served by seven defendants[1] was heard

---

[1] Sharp Electronic Corporation, Toshiba America Electronic Components, Inc., Chi Mei entities, Hitachi Displays Ltd., LG Display Co., Ltd., HannStar Display Corp., and AU Optronics entities.

1

on September 30 and October 11, 2010. Counsel for all affected parties were present. On September 30, 2010 following the telephone hearing that day I issued a tentative ruling and asked counsel to advise me by October 6, 2010 whether they accepted it. Counsel for DPP's requested a further hearing to clarify a few points, which was held on October 11, 2010. Following that second hearing, I issued a revised tentative ruling to which counsel agreed in large part, with each side requesting a few changes. Having considered all the arguments and evidence submitted by the parties both before and after the hearings, I now rule as follows.

Background Facts

In April 2010, seven defendants served highly similar sets of interrogatories, requests for admission and requests for document production on the DPP's. Counting sub-parts, DPP's estimate that defendants have propounded a total of 4,008 discovery requests. Roughly speaking, and with a few exceptions, the discovery requests break down into four groups. First, they require DPP's to identify every meeting among the alleged conspirators, stating date, location, participants and what was discussed – as well as identifying all documents and witnesses pertaining to each meeting. Second, they ask DPP's to admit that none of the defendants violated any antitrust laws – which DPP's will obviously deny – and then to state every fact supporting their denials. Third, they require DPP's to identify every sale of any product at issue. Fourth, they inquire to a limited extent about damages.

DPP's objected to the discovery requests as unduly burdensome and contrary to presumptive limits on discovery in the Federal Rules and Local Rules. A meet-and-confer process ensued that accomplished nothing. DPP's filed this motion for protective order on September 3, 2010.

Analysis

The interrogatories violate the spirit, and perhaps the letter, of Fed. R. Civ. P. 33(a)(1) that limits interrogatories to 25 absent stipulation or court order. Not only do they contain numerous sub-parts that convert a single interrogatory into numerous discrete questions, but each set contains an interrogatory asking for the basis of each denial of the accompanying requests for

2

admission. N.D. Cal. Local Rule 33-2 mandates that a demand to set forth the basis for a denial of an admission is counted as a separate interrogatory. However, in a case as complex as this the 25-interrogatory limit has little application. Although I believe for the reasons stated below that these discovery sets are overbroad and unduly burdensome, I will allow them to exceed the normal numerical limit.

This Court earlier ordered the parties "to consult in good faith in an effort to propound joint discovery requests, but to the extent separate written discovery is served defendants shall not duplicate interrogatories, requests for admission and requests for documents." Special Master's Order Regarding Individual Action Plaintiffs and Case Management, para. 17, entered 5/3/10. Defendants have not demonstrated to me that they made sufficient efforts to coordinate these highly duplicative discovery requests, or to demonstrate that they deal with issues unique to each of them so as to require entirely separate sets. Therefore, as part of this Order I have directed some consolidation of responses to interrogatories and document requests but required DPP's to respond individually to each set of requests for admissions.

Contention-style interrogatories are subject to their own limitations. They are disfavored at the early stages of discovery. *In re Convergent Technologies Securities Litig.*, 108 F.R.D. 328 (N.D. Cal. 1985). However, we cannot be said to be at an early stage of discovery in this case. Nonetheless, contention interrogatories at any stage of the case that are overly broad, unduly burdensome and unlikely to produce material benefit may be limited. Fed. R. Civ. P. 26(b)(2)(C).[2] I have applied this principle as described below to grant DPP's motion for protective order as to those discovery requests that essentially tell DPP's to "state your entire case." Such interrogatories will elicit utterly useless attorney-crafted answers and will not clarify issues, narrow the scope of dispute, move the case toward settlement or expose bases for summary judgment. *See, Convergent Technologies, ibid.*

---

[2] A contention interrogatory that seeks all of the facts supporting allegations in one paragraph of a complaint is unduly broad on its face. *Johnson v. Kraft Foods North America, Inc.*, 236 F.R.D. 535, 545 (D.Kan 2006).

3

These seven sets of discovery as originally structured presented burdens on the DPP's that are vastly disproportionate to any benefit to be derived from the information demanded. Therefore, I have worked with the parties to restructure, and to a large degree pare down, the requests. First, DPP's had to respond to seven different sets which were highly similar but just enough different to require much of same information to be recast to respond to each set. Second, two of the four categories – questions about violations of antitrust laws and identification of products sold – required DPP's essentially to describe every important piece of evidence in the case. Much of this information was already known to defendants – sales information came from their own records, and violation information from other discovery. On the other hand, identification of meetings where DPP's contend that the alleged conspiracy unfolded, while a big job, is sufficiently discrete to be answered and plainly important. Moreover, it is important for discovery purposes to identify which defendants attended which meetings.[3] The damages questions were either phrased too broadly[4] or could more efficiently be answered during expert discovery.[5]

Given these problems, I determined that DPP's should respond now to the questions about meetings, but need not respond to questions about violations of law, identification of purchases and damages. I further determined that in describing the meetings the DPP's could: (1) file a joint response to all seven sets of interrogatories, but respond individually to each set of requests for admission; (2) for meetings that are documented by minutes or similar summaries, identify the documents that record the meeting, and state that they contend that all persons listed in each document in fact attended the meeting and that no unlisted persons attended, or state whom they contend attended; (3) for undocumented meetings (e.g., referred to generally in e-

---

[3] DPP's argue that detailed identification of participation at each meeting is not necessary because each participant who acted to further the alleged conspiracy is liable for all acts in furtherance of the conspiracy regardless of who performed them. Whether that is a correct statement of law is for later determination, but for discovery purposes it is still important to identify who did what at each meeting.

[4] "Admit you suffered no damages for any purchases of TFT-LCD panels that were manufactured, sold, and distributed by Sharp" with an accompanying interrogatory requiring DPP's to identify all facts and documents supporting their claim for damages. [Sharp RFA #161, Interrogatory # 24]

[5] "Describe how your method for calculating damages accounts for the difference between customers making individual or limited purchases with customers making large-scale purchases." [Sharp Interrogatory #23]

4

mails or testimony), provide to the extent known the date, location and participants, or identify the documents or testimony that reference the meeting; (4) for each of the seven defendants provide a list of each meeting a representative of that company attended[6]. This restructuring means that DPP's will still have an enormous task of identifying documents and testimony that record or allude to every meeting they contend furthered the alleged conspiracy, but will not have to set forth separately as to each meeting the particulars of time, place and participants. The documents, as it is so often said, will speak for themselves.

Turning to the seven sets of document requests, I concluded that half of them were appropriately specific and meaningful but that the other half were unduly broad and burdensome. So, requests for documents identified in interrogatory responses, documents about concealment of claims, documents reflecting when DPP's became aware of facts alleged in their complaint were appropriate. Requests for documents that "refer to, relate to or support" any fact stated in a response to an interrogatory or request for admission, documents that form the basis for any allegation in the complaint, and all documents concerning steps taken to discover facts alleged in the complaint, were inappropriately broad. Defendants may, of course, rephrase these improper document requests into specific, focused ones.

Turning to the issue of supplementation of these discovery responses, DPP's argued that they should respond only once "at or near the close of discovery," while defendants argue that DPP's should respond now and supplement their answers twice, 90 days before discovery cutoff and again at the discovery cutoff. The discovery cutoff is in May 2011. I conclude that it will be most useful if DPP's respond to this discovery in approximately 60 days, by January 15, 2011 and then supplement their answers once, by April 15, 2011. While each case is different, in general a court should favor early discovery with supplementation. *Amaya v. CBS Broadcasting, Inc.*, 2007 WL 2219458, *8 (D.N.M. May 16, 2007). I believe that principle can be applied here without undue burden on DPP's.

---

[6] DPP's strenuously objected to this requirement as burdensome and unnecessary, but in light of the other burdens that this Order lifts from them I conclude the burden of compiling the individualized lists is not undue.

5

(2) <u>Documented meetings</u>: They may list by Bates No. all documents (such as minutes or meetings) that record meetings and list the participants. As to each meeting they shall state whether they contend that all persons listed attended the meeting in question, and state either that they have no evidence that anyone else attended or set forth the evidence they have of attendance by unlisted persons. They may make such a statement generally (e.g., We contend that as to all listed meetings, etc.; OR, We contend that as to all listed meetings except those that took place on 1/1/04 and 2/1/04…. As to the 1/1/04 meeting, we contend, etc.). As to such documented meetings, they need not set forth the date, location and participants for each meeting. However, they shall provide in summary fashion for each of these six defendants a list of each meeting that they contend was attended by a representative of that company. (e.g., Sharp: 1/1/04, 2/15/04, 5/13/05, etc.)

(3) <u>Undocumented meetings</u>: As to meetings for which there is no concrete documentation of who allegedly attended (e.g., meetings alluded to in e-mails, other documents, witness interviews or testimony), DPP's shall either (a) "describe" such meeting or meetings be providing, to the extent known, the date, location, participants, and company that each participant represented, or (b) identify the documents or testimony that refer to such meeting.

DPP's need not at this stage identify each meeting at which price, capacity utilization, supply and other factors were discussed. At this stage it will be sufficient to identify the documents that record, and testimony that describes, what occurred at meetings.

3. <u>Document Requests</u>

DPP's shall respond separately to each document request. They shall produce documents responsive to Sharp Request Nos. 1, 3, 5 and 7 and all comparable requests by other defendants. They need not respond to any other requests.

4. <u>Timing of responses</u>

7

This Order is entered without prejudice, of course, to the right of defendants to re-ask questions about contentions, sales information and damages so long as they are couched in specific, focused terms, and the information cannot be more efficiently obtained through another discovery device.

Order

Good cause appearing, it is ORDERED that DPP's motion for protective order is GRANTED and DENIED as follows:

1. Requests for Admissions

DPP's shall respond to the following requests for admissions in Sharp's set, and separately to all comparable requests in other defendants' sets: Nos. 33-60, 61-68, 69-77, 158, 159, 160 and 162. They shall also respond to Toshiba Nos. 53-56, and all comparable requests (if any) in other defendants' sets.

DPP's need not respond to the remaining requests in Sharp's set or comparable requests in other defendants' sets, or to CMO Nos. 149-156 or Toshiba Nos. 145-152 or HannStar Nos. 158-159.

DPP's shall serve a separate response to RFA's with respect to each defendant.

2. Interrogatories

DPP's shall respond as described below to Nos. 1-4, 6, 7, 15 and 24 in Sharp's set and to all comparable interrogatories in other defendants' sets. They shall also respond to CMO Nos. 1, 2, 7, 9 and 10, and Toshiba No. 12.

DPP's need not respond to the remaining interrogatories in Sharp's set or comparable interrogatories in other defendants' sets.

In responding to Sharp Nos. 1-4, 6, 7 and 24 insofar as No. 24 pertains to requests for admissions regarding meetings, DPP's may limit their response as follows.

(1) They may file a joint response to the sets served by all defendants.

6

DPP's shall respond to this discovery as ordered herein by January 15, 2011. They shall serve supplemental responses by April 15, 2011.[7]

Dated: November 3, 2010

Martin Quinn
Special Master

---

[7] DPP's asked that the Order state that omission of evidence from these responses would not be a basis for any exclusion of evidence or other sanction. The Special Master will not issue such a blanket order. Of course, DPP's could endeavor to show that any omission of evidence from these extensive responses was inadvertent and non-prejudicial.