Calvin L. Litsey (SBN 289659)
Faegre Baker Daniels LLP
1950 University Ave, Suite 450
East Palo Alto, California 94303-2279
Telephone: +1 650 324-6700
Facsimile: +1 650 324-6701
Calvin.litsey@faegrebd.com

Kathy L. Osborn (*pro hac vice*)
Ryan M. Hurley (*pro hac vice*)
Faegre Baker Daniels LLP
300 N. Meridian Street, Suite 2700
Indianapolis, IN 46204
Telephone: +1 317-237-0300
Facsimile: +1 317-237-1000
kathy.osborn@FaegreBD.com
ryan.hurley@FaegreBD.com

Jeffrey S. Roberts (*pro hac vice*)
Faegre Baker Daniels LLP
3200 Wells Fargo
1700 Lincoln Street
Denver, CO 80203
Telephone: +1 303 607 3500
Facsimile: +1 303 607 3600
jeff.roberts@FaegreBD.com

*Attorneys for Specially Appearing Defendant Thomson S.A.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | No. 07-cv-5944-SC<br>MDL No. 1917 |
| This Document Relates to:<br><br>*Sharp Electronics Corp., et al. v. Hitachi, Ltd., et al., No. 13-cv-01173.* | **THOMSON S.A.'S REPLY IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**<br><br>Date: October 14, 2013<br>Time: 9:00 a.m.<br>Place: JAMS Resolution Center,<br>Two Embarcadero Center, Suite 1500<br>Judge: Hon. Samuel Conti<br>Special Master: Hon. Charles A. Legge (Ret.) |

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................... 1

ISSUES TO BE DECIDED ................................................................................................................ 1

INTRODUCTION ............................................................................................................................... 1

FACTUAL BACKGROUND .............................................................................................................. 2

ARGUMENT ........................................................................................................................................ 3

    I.    SHARP'S CLAIMS AGAINST THOMSON S.A. SHOULD BE DISMISSED BECAUSE THIS COURT LACKS PERSONAL JURISDICTION OVER IT. ........................................................................................ 3

        A.    The Court Does Not Have General Jurisdiction Over Thomson S.A. Based On Thomson S.A.'s Own Contacts, Because It Did Not Have Continuous and Systematic General Business Contacts with the United States that Approximated Physical Presence in the Forum. ............. 3

        B.    Thomson Consumer Was Not Thomson S.A.'s Agent Because Thomson S.A. Was a Holding Company that Did Not Control Thomson Consumer's Operations. ............................................................. 5

        C.    Sharp Has Failed to Present Evidence that Thomson S.A. Committed Intentional Acts Expressly Aimed at the U.S. that Were a But-For Cause of Sharp's Claims. ............................................................ 11

            1.    Sharp Has Failed to Adduce Evidence that Thomson S.A. Purposefully Directed Activities Toward the United States. ......... 11

            2.    Sharp Has Not Presented Evidence that Thomson S.A.'s Forum-Related Activities Were a But-For Cause of Its Claims. ................................................................................................. 13

            3.    The Exercise of Jurisdiction Over Thomson S.A. Would Not Be Reasonable. .............................................................................. 14

        D.    The Court Should Not Grant Sharp Jurisdictional Discovery. ................... 15

**TABLE OF AUTHORITIES**

Page(s)

**FEDERAL CASES**

*Audio MPEG, Inc. v. Thomson S.A.*,
  05-cv-565 (E.D. Va. Oct 17, 2005) ............................................................................. 2,3, 9

*Bancroft & Masters, Inc. v. Augusta National Inc.*,
  223 F.3d 1082 (9th Cir. 2000) .................................................................................. 11, 12, 13

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985) ........................................................................................................ 4

*Cannon Mfg. Co. v. Cudahy Packing Co.*,
  267 U.S. 333 (1925) ........................................................................................................ 5

*Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*,
  230 F.3d 934 (7th Cir. 2000) .......................................................................................... 6

*Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*,
  557 F.2d 1280 (9th Cir. 1977) ..................................................................................... 1, 9

*Doe v. Unocal Corp.*,
  248 F.3d 915 (9th Cir. 2001) ........................................................................... 3, 5, 6, 7, 8, 9, 10

*Dole Food Co. v. Patrickson*,
  538 U.S. 468 (2003) ........................................................................................................ 5

*Goodyear Dunlop Tires Operations v. Brown*,
  131 S. Ct. 2846 (2011) .................................................................................................... 3

*Holland Am. Line, Inc. v. Wartsila N. Am., Inc.*,
  485 F.3d 450 (9th Cir. 2007) ........................................................................................ 13

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
  No. C 02-1486, 2005 WL 2988715 (N.D. Cal. Nov. 7. 2005) .................................... 12, 14

*In re Genetically Modified Rice Litigation*,
  576 F. Supp. 2d 1063 (E.D. Mo. 2008) ......................................................................... 8, 9

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  586 F. Supp. 2d 1109 (N.D. Cal. 2008) ...................................................................... 11, 12

*In re: W. States Wholesale Natural Gas Antitrust Litig.*,
  605 F. Supp. 2d 1118 (D. Nev. 2009) ........................................................................... 10

*Int'l Shoe Co. v. Washington*,
  326 U.S. 310 (1945) ...................................................................................................... 5, 8

*Kramer Motors, Inc. v. British Leyland, Ltd.*,
 628 F.2d 1175 (9th Cir. 1980) ......................................................................................... 11

*Schwarzenegger v. Fred Martin Motor Co.*,
 374 F.3d 797 (9th Cir. 2004) ........................................................................................ 3, 4

*Terracom v. Valley Nat'l Bank.*,
 49 F.3d 555 (9th Cir. 1995) ............................................................................................ 15

*Tuazon v. R.J. Reynolds Tobacco Co.*,
 433 F.3d 1163 (9th Cir. 2006) ......................................................................................... 3

*United States v. Bestfoods*,
 524 U.S. 51 (1998) ....................................................................................................... 5, 6

*United States v. First Nat'l City Bank*,
 379 U.S. 378 (U.S. 1965) ............................................................................................... 14

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*,
 433 F.3d 1199 (9th Cir. 2006) ....................................................................................... 11

**RULES**

Fed. R. Civ. P. 12(b)(2) ............................................................................................................ 1

## MEMORANDUM OF POINTS AND AUTHORITIES

Pursuant to Fed. R. Civ. P. 12(b)(2), Thomson S.A. specially appears for the purpose of objecting to this Court's jurisdiction, and respectfully submits this Memorandum in support of its motion to dismiss ("Motion") the claims asserted against Thomson S.A. by Sharp Electronics Corp. and Sharp Electronics Manufacturing Co. of America, Inc. (collectively, "Sharp").

## ISSUES TO BE DECIDED

Whether Sharp's claims against Thomson S.A. should be dismissed pursuant to Rule 12(b)(2) on the ground that this Court lacks personal jurisdiction over Thomson S.A., a holding company headquartered and incorporated in France, because Thomson S.A. lacks the requisite minimum contacts with the United States, does not possess an agency relationship with its United States subsidiary, Thomson Consumer, Inc. ("Thomson Consumer"), and has not purposefully directed activities related to Plaintiffs' claims towards the United States?

## INTRODUCTION

Sharp was unable to plead in its Complaint or attach documents to its Response that set forth specific facts establishing that Thomson S.A. is subject to personal jurisdiction, so it has tried a different approach. It attaches hundreds of pages of inconclusive documents that do not: (1) identify any intentional acts taken by an employee of Thomson S.A. purposefully directed at the United States; or (2) demonstrate Thomson S.A. actually exerted control over the day-to-day operations of Thomson Consumer in the United States. Moreover, Sharp's Response does not refute that Thomson S.A. never manufactured or sold CRTs or CRT products in the United States or directed Thomson Consumer to set particular prices for the CRTs that entity manufactured and sold in the United States. Because these critically important facts are established by affidavits attached by Thomson S.A. to its Motion and this Reply and they directly controvert the vague and unsubstantiated jurisdictional allegations in Sharp's Complaint, the Court should not assume the truth of Sharp's conclusory allegations here. *See Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977). Simply stated, despite the length of its Response, Sharp has failed to present evidence that makes a prima facie case that Thomson S.A. is subject to general or specific jurisdiction.

# FACTUAL BACKGROUND

At all times relevant to Sharp's claims against it, Thomson S.A. was a holding company headquartered and incorporated in France. As it stated in a 13D filing it made with the Securities and Exchange Commission ("SEC") on February 7, 2000, "Thomson S.A. principally acts as a holding company for the French government. All of the outstanding shares of Thomson S.A. are owned by the French Government." (Feb. 7, 2000 13D Filing at 4, attached as **Ex. Y** to Sharp's Resp.) Although the French Government has since sold its shares, during all relevant periods, Thomson S.A. remained a French holding company. (See 2009 Declaration of Frederic Rose at ¶ 3, attached to Sharp Resp. as **Ex. T** ("Thomson is the holding company for a group of approximately 200 direct and indirect subsidiaries in approximately 30 countries. Thomson's principal office is located at 1-5, rue Jeanne d' Arc, 92130 Issy-les-Moulineaux, France."); (Cadieux Decl. at ¶ 5, attached as **Ex. 1** to Mot. to Dismiss.)

It also is uncontroverted that at all relevant times Thomson S.A. was not a manufacturer. "Thomson S.A. has never manufactured cathode ray tubes ("CRTs") or finished products containing CRTs in the United States or elsewhere." (*Id.* at ¶ 14.) In addition, "Thomson S.A. has never marketed, sold, or distributed CRTs or finished products containing CRTs in the United States or elsewhere." (*Id.* at ¶ 15.) Instead, because it is and was merely a holding company, Thomson S.A.'s "principal assets are the stock of its subsidiaries." (**Ex. T** at ¶ 4.) Thomson S.A. performed the activities of a traditional holding company − it "principally perform[ed] corporate activities (such as finance, communications, legal, human resources)" and obtained "external financing" and "advance[d] the funds obtained to its subsidiaries through loans and current account contracts." (Thomson Group 2008 Form 20-F, **Ex. HH** at 152.)

Thomson S.A. did not control the day-to-day activities or involve itself in the management of its U.S. subsidiary, Thomson Consumer. (Cadieux Decl. at ¶ 21.) "Thomson [Consumer] control[ed] its day-to-day activities," maintained "separate" finances, and was "responsible for the sales and marketing of products in the United States." (Sept. 28, 2005 Declaration of Thomson Consumer President Michael O'Hara at ¶¶ 5-7, **Ex. 2** (attached to Thomson S.A.'s Reply in Support of Mot. to Dismiss, A*udio MPEG, Inc. v. Thomson Inc. et al.*, Case No. 1:05 cv

565 (E.D. Va.)).) "Thomson S.A. d[id] not direct or advise Thomson [Consumer] on how to sell or distribute any Thomson [Consumer] product in the United States." (Sept. 2, 2005 Declaration of Thomson S.A. General Secretary Marie-Agne Debon at ¶ 6, **Ex. 3** (attached to Thomson S.A.'s Mot. to Dismiss, *Audio MPEG, Inc. v. Thomson Inc. et al.*, Case No. 1:05 cv 565 (E.D. Va.)).) Moreover, "Thomson S.A. and Thomson [Consumer] maintain[ed] separate corporate structures, including separate boards, separate management, . . . separate employees," and separate finances. (*Id.* at ¶¶ 4-5.)

In short, Thomson S.A. was a traditional holding company organized to hold the stock of its subsidiaries. It did not manufacture CRTs, control the day-to-day operations of Thomson Consumer, involve itself in its U.S. subsidiary's management, or otherwise take acts directed at the United States related to Sharp's allegations. Accordingly, consistent with fundamental principles of due process, it is not subject to the general or specific jurisdiction of this Court. *See Doe v. Unocal Corp.*, 248 F.3d 915, 930 (9th Cir. 2001); *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 806-7 (9th Cir. 2004).

## ARGUMENT

**I. SHARP'S CLAIMS AGAINST THOMSON S.A. SHOULD BE DISMISSED BECAUSE THIS COURT LACKS PERSONAL JURISDICTION OVER IT.**

**A. The Court Does Not Have General Jurisdiction Over Thomson S.A. Based On Thomson S.A.'s Own Contacts, Because It Did Not Have Continuous and Systematic General Business Contacts with the United States that Approximated Physical Presence in the Forum.**

For general jurisdiction to exist over a foreign corporation like Thomson S.A., it must "engage in continuous and systematic general business contacts that approximate physical presence in the forum state." *Schwarzenegger*, 374 F.3d at 801 (internal quotations and citations omitted); *see also Goodyear Dunlop Tires Operations v. Brown*, 131 S. Ct. 2846, 2851 (2011). In other words, the plaintiff must show that the defendant's "continuous corporate operations within [the] state are . . . so substantial and of such a nature as to justify suit against the defendant on causes of action arising from dealings entirely distinct from those activities." *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1169 (9th Cir. 2006). "This is an exacting standard, as it

1  should be, because a finding of general jurisdiction permits a defendant to be haled into court in
2  the forum state to answer for any of its activities anywhere in the world." *Schwarzenegger*, 374
3  F.3d at 801. Indeed, as the Supreme Court has emphasized, this test must be stringently and
4  predictably applied because the *Due Process Clause* mandates that defendants be permitted "to
5  structure their primary conduct with some minimum assurance as to where that conduct will and
6  will not render them liable to suit." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985).

7  As explained in Thomson S.A.'s Motion to Dismiss, Sharp's Complaint must be
8  dismissed because it does not allege that Thomson S.A. had any meaningful contacts with the
9  United States, let alone substantial, continuous, and systematic contacts that approximated
10 physical presence in the forum. Sharp's Response does not argue otherwise. Although it attaches
11 hundreds of pages of exhibits to its Response, Sharp does not refute that Thomson S.A. is a
12 French corporation headquartered in France that has: (1) no operations; (2) no employees; (3) no
13 bank accounts; (4) no mailing address; (5) does not own, lease, or rent real property; and (6) is
14 not registered to do business in the United States. (*See* Cadieux Decl. at ¶¶ 6-11, 13.)
15 Accordingly, Sharp's Response does not overcome the dispositive jurisdiction facts that from
16 1995 through the present, Thomson S.A. itself had no substantial, systematic, and continuous
17 contacts with the United States such that it should be subject to general jurisdiction. (*See*
18 Response at 11-18.)

19 Moreover, Sharp's argument that Thomson S.A. has failed to controvert the conclusory
20 jurisdictional allegations in the Complaint because some paragraphs in Mr. Cadieux's Declaration
21 are phrased in the present tense is a red herring. Mr. Cadieux stated that "Thomson S.A. has
22 *never* manufactured cathode ray tubes ("CRTs") or finished products containing CRTs in the
23 United States" and "has *never* marketed, sold, or distributed CRTs or finished products containing
24 CRTs in the United States." (Cadieux Decl. at ¶14-15.) (emphasis added) In addition, Sharp
25 does not even attempt to allege in its Complaint that Thomson S.A. ever had business operations,
26 offices, employees, books and records, or a bank account in the United States, because Thomson
27 S.A. did not. (*See generally* Compl.) In addition, the 2005 affidavits from Mr. O'Hara and Ms.
28

Debon confirm that Thomson S.A. did not control Thomson Consumer's operations during the relevant time period, so its contacts may not be imputed to Thomson S.A. (*See* **Exs. 2, 3**.)

Because Sharp has failed to make a prima facie case that Thomson S.A.'s contacts with the United States are of such a substantial nature and of such continuous duration that this Court's exercise of general jurisdiction over it would comport with "traditional notions of fair play and substantial justice," Sharp's claims against Thomson S.A. should be dismissed with prejudice. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

### B. Thomson Consumer Was Not Thomson S.A.'s Agent Because Thomson S.A. Was a Holding Company that Did Not Control Thomson Consumer's Operations.

Unable to present evidence that Thomson S.A. itself had sufficient minimum contacts with this forum, Sharp argues that Thomson S.A. so controlled the day-to-day activities and operations of its U.S. subsidiary, Thomson Consumer, that Thomson Consumer was its agent for personal jurisdiction purposes. (Resp. at 12-18.) Sharp is incorrect. Its argument depends on a mischaracterization of both the applicable legal authority and the exhibits attached to its Response. During all relevant periods, Thomson S.A. was a traditional French holding company – not a "super corporation" that dominated Thomson Consumer. Neither the facts specifically plead in the Complaint – there are none – nor the documents attached to Sharp's Response establish a prima facie claim that Thomson Consumer was Thomson S.A.'s agent.

The Supreme Court has long-recognized that general jurisdiction may not be imposed on a foreign corporation merely because the corporation owns a subsidiary present in the forum. *See Cannon Mfg. Co. v. Cudahy Packing Co.*, 267 U.S. 333, 337 (1925). Accordingly, the Ninth Circuit has held that "[t]he existence of a relationship between a parent and its subsidiaries is not sufficient to establish personal jurisdiction over the parent on the basis of the subsidiaries' minimum contacts with the forum." *Unocal Corp.*, 248 F.3d at 925. This holding is derived from the principle of corporate separateness, a "principle of corporate law deeply ingrained in our economic and legal systems." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998). It is "a basic tenet of American Corporate law . . . that the corporation and its shareholders are distinct entities," over which jurisdiction must be established individually. *Dole Food Co. v. Patrickson*,

538 U.S. 468, 474 (2003). Therefore, "[w]here two corporations are in fact separate, permitting the activities of the subsidiary to be used as a basis for personal jurisdiction over the parent violates this principle and thus due process." *Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 944 (7th Cir. 2000).

Instead, a subsidiary's contacts with the forum may only be imputed to the parent "if the parent and the subsidiary are not really separate entities" because the parent controls the "subsidiary's internal affairs or daily operations." *Unocal Corp.*, 248 F.3d at 926. For example, in *Unocal*, the plaintiffs argued that the French holding company, Total S.A., was subject to general jurisdiction in California because its subsidiaries in the United States acted as its agents and had substantial contacts with the forum. The Ninth Circuit Court of Appeals rejected plaintiffs' argument. It emphasized the principle of corporate separateness and explained that the contacts of a local subsidiary may not be imputed to a foreign holding company simply because the foreign parent exercises supervision over the activities of its local subsidiary. The court explained that a foreign parent's supervision of its subsidiary's activities or its performance of other traditional functions of a holding company do not constitute the type of control necessary to subject the parent to personal jurisdiction. Thus, "it is entirely appropriate for directors of a parent corporation to serve as directors of its subsidiary" or to be "directly involved in financing and macro-management of its subsidiaries." *Id*. at 926-27. Other "[a]ppropriate parental involvement includes monitoring of the subsidiary's performance, supervision of the subsidiary's finance and capital budget decisions, and articulation of general policies and procedures." *Id*. at 926 (quoting *Best Foods*, 524 U.S. at 71). Likewise, a parent describing a subsidiary as a division of it or "consolidating the activities of a subsidiary into the parent's [annual] reports is a common business practice" that does not establish the type of control necessary to subject the parent to general jurisdiction. *Id*. at 928-29.

The *Unocal* court recognized that there is a fundamental distinction between an "active parent corporation involved directly in the decision-making about its subsidiaries' holdings" and a "super-corporation" that exerts such substantial control over its subsidiaries day-to-day operations in the forum that "the subsidiaries' presence substitutes for the presence of the parent."

*Id.* at 929-30.  Although plaintiffs presented evidence that Total was involved in its local subsidiaries' "acquisitions" and "expenditures," "the formulation of general business policies and strategies applicable to its subsidiaries," "the provision of loans and other types of financing to subsidiaries," and maintained "overlapping directors and officers with its subsidiaries," the court found that this evidence did not make out a prima facie case that Total had an agency relationship with its local subsidiaries.  *Id.* at 927.  In other words, this type of evidence did not establish that Total was not a traditional investment holding company.  Because plaintiffs' evidence did not constitute prima facie proof that Total had an agency relationship with its subsidiaries, the court granted Total's motion to dismiss for lack of personal jurisdiction.  *Id.* at 931.

By contrast, in *Bauman v. DaimlerChrysler Corp.*, the Ninth Circuit Court of Appeals found that the German manufacturing company DiamlerCrysler A.G. ("DCAG") possessed an agency relationship with its wholly-owned U.S. subsidiary, Mercedes-Benz USA ("MBUSA"), an entity that sold and distributed in the United States the cars the parent manufactured in Germany.  644 F.3d 909, 914-15 (9th Cir. 2011) *petition for cert. granted by* 133 S. Ct. 1995 (April 22, 2013).  Critically, unlike the circumstances here, DCAG's relationship with MBUSA was governed by a General Distributor Agreement that gave DCAG almost plenary control over MBUSA's day-to-day operations in the United States.  Pursuant to that agreement, "DCAG had the right to control nearly all aspects of MBUSA's operations," including:

> the number of vehicles that MBUSA must sell; the approval of MBUSA's Authorized Resellers, as well as the location of each retail sales outlet, showroom and service facility; the dealership standards that MBUSA must comply with; the business systems that MBUSA uses; the type of customer information that MBUSA must collect; which management personnel are appointed to run MBUSA; . . . the standards and requirements MBUSA must meet for vehicle servicing; whether MBUSA is required to establish a Service Coordination Center, and if so, what tasks that Center will perform; the warranty terms applicable to MBUSA's customers; whether MBUSA can alter or modify any vehicle; what technical service publications MBUSA shall have in its library; the content and scope of MBUSA's advertising and marketing strategy; the type, design and size of MBUSA's signs; the prices that MBUSA must pay to DCAG; the prices that MBUSA may charge to its Authorized Resellers; . . . whether MBUSA must assist in vehicle homologation; and the sales numbers of various Authorized Resellers.

(*Id.* at 924.)  Moreover, "[i]f that exhaustive list were not enough, DCAG also ha[d] the right to require MBUSA to execute '*any agreement relating to . . . any other matter related to this*

1  *Agreement*' . . . as long as those new Agreements are not an 'unreasonable burden' on MBUSA."
2  (emphasis in original). In short, DCAG exercised complete control over the day-to-day
3  operations of its local subsidiary. Therefore, the Court held that DCAG exerted such substantial
4  control over MBUSA and the distribution services it performed were of such importance to the
5  manufacturer that "the actions of the subsidiary c[ould] be understood as a manifestation of the
6  parent's presence" in the forum so DCAG was subject to general jurisdiction. *Id.* at 921 (*citing*
7  *Int'l Shoe Co.*, 326 U.S. at 318); *see also In re Genetically Modified Rice Litigation*, 576 F. Supp.
8  2d 1063, 1068-75 (E.D. Mo. 2008) (finding parent possessed agency relationship with local
9  subsidiary where contract gave parent authority to substantially control day-to-day operations of
10 subsidiary).

11         Judge O'Scannlain, joined by seven other judges, filed a stinging dissent to the Ninth
12 Circuit's denial of the petition to rehear *Bauman* en banc, arguing that the decision extended "the
13 reach of general personal jurisdiction beyond its breaking point" and was "inconsistent with the
14 law of at least six of our sister circuits." *Baumon*, 676 F.3d 674-5 (9th Cir. 2011). Subsequently,
15 the Supreme Court granted a petition for writ of certiorari to review *Bauman* that is currently
16 pending. *See* 133 S. Ct. 1995 (April 22, 2013).

17         Regardless of the Supreme Court's ultimate decision in *Bauman*, the circumstances here
18 are easily distinguishable from those present in that case and provide no basis for the exercise of
19 jurisdiction over Thomson S.A. In its Response, Sharp does not point to any agreement that gave
20 Thomson S.A. control over Thomson Consumer's day-to-day operations because no such
21 agreement has ever existed. Instead, Sharp cites to <u>exactly</u> the type of evidence the *Unocal* Court
22 held was insufficient to establish a prima facie case of agency – consolidated annual statements
23 and other similar documents that characterize Thomson Consumer as a "unit" of Thomson S.A.,
24 refer to Thomson S.A. and its subsidiaries "interchangeably," or refer to the company as "an
25 industrial and technology group – not a mere holding company for investments." (*See* Resp. at 5-
26 6); *Unocal*, 248 F.3d at 928-9. Sharp cites to documents that show Thomson S.A. executives had
27 titles "reflecting operational responsibilities" and "also served as directors and/or officers of
28 Thomson Consumer." (*Id.* at 14.) Such evidence does not establish a prima facie case that a

parent has an agency relationship with its subsidiary because "it is entirely appropriate for directors of a parent corporation to serve as directors of its subsidiary" or to be "directly involved in financing and macro-management of its subsidiaries." *Unocal*, 248 F.3d at 926-7; *see also In re Genetically Modified Rice Litigation*, 576 F. Supp. 2d at 1073 (fact that parent supervised operations of subsidiary and referred to itself and subsidiary as "we," "us," and "our" inadequate to establish agency relationship). Simply stated, Sharp has failed to adduce any specific evidence that Thomson S.A. exerted the degree of control over Thomson Consumer's day-to-day activities that is necessary to establish a prima facie case that Thomson Consumer was Thomson S.A.'s agent.

Instead, Sharp relies on the conclusory allegations of control and domination contained in its Complaint and argues that Thomson S.A. "does not directly controvert" these allegations. (*See* Resp. at 15.) Sharp is incorrect. Its unsupported allegations are directly controverted by the Cadieux Declaration (*id.* at ¶¶ 19-21, **Ex. 1**) and by the 2005 affidavits of then Thomson Consumer President Michael O'Hara and Thomson S.A. General Secretary Marie-Ange Debon. (O'Hara Affidavit at ¶¶ 4-7, **Ex. 2**; Debon Affidavit at ¶¶ 4-6, **Ex. 3**.) Mr. O'Hara stated in no uncertain terms "Thomson Inc. controls its day-to-day activities." (**Ex. 2**, at ¶ 6.) The 2005 O'Hara and Debon affidavits were attached to the briefing submitted by Thomson S.A. in *Audio MPEG, Inc. v. Thomson S.A.*, 05-cv-565 (E.D. Va. Oct 17, 2005) and relied on by the district court in that case in its 2005 ruling that Thomson Consumer was not the agent of Thomson S.A. (Oct. 17, 2005 Order at 5-6 (finding "Thomson S.A. and Thomson, Inc. are separate corporations in form and fact.") attached as **Ex. 4**.)[1] Significantly, these affidavits cover the very same time frame at issue in the claims asserted by Sharp and a federal district court accepted them as sufficient evidence to overcome claims made during this period that Thomson Consumer was Thomson S.A.'s agent. Now, eight years later, Sharp pleads no facts and attaches no documents to its Response that warrant a different finding.

---

[1] Because the allegations of Thomson S.A.'s control over Thomson Consumer are directly contradicted by affidavit, the Court need not assume the truth of these allegations. *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977).

1   Attempting to analogize to *Baumon*, Sharp argues that the fact Thomson S.A. realized
2   substantial revenue from Thomson Consumer's operations in the United States before Thomson
3   S.A. and Thomson Consumer entirely exited the CRT market in 2005, proves that Thomson
4   Consumer was so important to its parent that "[w]ere it not for Thomson Consumer, Thomson
5   S.A. . . . would itself need to undertake sales and marketing in the United States." (Resp. at 16
6   (citing *Bauman*, 644 F.3d at 921).) Sharp's argument is flawed. In *Baumon*, the court determined
7   that MBUSA sold such a large percentage of the cars *manufactured* by DCAG in Germany that
8   but for MBUSA, DCAG would have had to perform those distribution services itself (which it
9   effectively already did) or engage another entity to do so. *Baumon*, 644 F.3d at 921-22. By
10  contrast, Thomson S.A. is a holding company – it did not manufacture products that were then
11  distributed by its subsidiary in the United States. (Cadieux Decl. ¶ 14.) During the relevant
12  period, Thomson S.A. held Thomson Consumer as an investment, not as a conduit to distribute
13  products it manufactured. Moreover, unlike DCAG, which needed its subsidiary to distribute the
14  products it manufactured, as a holding company, Thomson S.A. "could simply hold another type
15  of subsidiary, in which case imputing the subsidiary's jurisdictional contacts to the parent would
16  be improper." *Unocal*, 248 F.3d at 929. Finally, that Thomson Consumer's CRT manufacturing
17  business was not sufficiently important to Thomson S.A. that, but for its existence, Thomson S.A.
18  would have performed these activities itself, is conclusively established by the fact that Thomson
19  Consumer closed its United States-based CRT plants in 2004 and sold its CRT business in 2005.
20  (Compl. at ¶ 73.) Thomson S.A. did not subsequently perform these activities itself or engage
21  another party to do so, thereby establishing that Thomson Consumer's CRT business was not
22  sufficiently important to Thomson S.A. that it would carry on that business itself in Thomson
23  Consumer's absence. *See In re: W. States Wholesale Natural Gas Antitrust Litig.*, 605 F. Supp.
24  2d 1118, 1136 (D. Nev. 2009).
25  Because Sharp has failed to present evidence that Thomson S.A. controlled the day-to-day
26  operations of Thomson Consumer and that Thomson Consumer was sufficiently important to it
27  that it would have carried on Thomson Consumer's operations in its absence, Sharp has failed to
28

1   make a prima facie case that Thomson Consumer was Thomson S.A.'s agent. Sharp's claims
2   against Thomson S.A. should be dismissed with prejudice.

3       **C.    Sharp Has Failed to Present Evidence that Thomson S.A. Committed Intentional Acts Expressly Aimed at the U.S. that Were a But-For Cause of Sharp's Claims.**
4

5   To make a prima facie case that this Court has specific jurisdiction over Thomson S.A.,
6   Sharp must present evidence establishing: (1) Thomson S.A. purposefully directed its activities at
7   this forum; and (2) Sharp's claims against it arise out of or result from Thomson S.A.'s forum
8   related activities. *See Bancroft & Masters, Inc. v. Augusta National Inc.,* 223 F.3d 1082, 1086-7
9   (9th Cir. 2000). This Court lacks specific jurisdiction over Thomson S.A. because Sharp has
10  failed to satisfy either of these two elements.

11      ***1.    Sharp Has Failed to Adduce Evidence that Thomson S.A. Purposefully Directed Activities Toward the United States.***
12

13  Purposeful direction is evaluated using the three-part "*Calder*-effects" test under which
14  the plaintiff must show: (1) the defendant committed an intentional act; (2) expressly aimed at
15  the forum state; (3) causing harm the defendant knows is likely to be suffered in the forum state.
16  *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir.
17  2006). The Ninth Circuit has warned that "the foreign-acts-with-forum-effects jurisdictional
18  principle 'must be applied with caution, particularly in an international context.'" *Kramer*
19  *Motors, Inc. v. British Leyland, Ltd.,* 628 F.2d 1175, 1178 (9th Cir. 1980).

20  Here, Sharp has failed to allege specific facts in the Complaint or to attach evidence to its
21  Response that establishes Thomson S.A. took any relevant intentional acts expressly aimed at the
22  United States. Its Complaint lobs legally insufficient allegations against "defendants" or a non-
23  existent combined "Thomson" entity without identifying a particular Thomson company that
24  participated in anticompetitive conduct aimed at the United States. (*See* Compl. at ¶¶ 7, 74, 138,
25  140, 148, 150, 167); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1117
26  (N.D. Cal. 2008) (holding "general allegations as to all defendants" or "to a single corporate
27  entity such as 'Hitachi'" insufficient as a matter of law). And, although its attaches hundreds of
28  pages of exhibits to it, Sharp's Response does not remedy this fundamental deficiency. For

1    example, Sharp attaches hundreds of pages of interrogatory responses provided by other
2    defendants that purportedly identify meetings involving the responding defendant and other
3    participants in the CRT manufacturing market. (*See* **Exs. C-I**.) However, *none* of these
4    documents specifically identify Thomson S.A. (*Id*.) Instead, they generically reference
5    "Thomson" without identifying the particular Thomson company for which the alleged
6    "Thomson" participant(s) worked. (*See id*.) As such, these exhibits do not establish that
7    Thomson S.A. employees, as opposed to employees who may have worked for one of dozens of
8    other Thomson subsidiaries, participated in the alleged meetings.

9    Sharp also has failed to adduce evidence that demonstrates Thomson S.A. expressly aimed
10   any alleged intentional act at the United States. The *Calder*-effects test does not "stand for the
11   broad proposition that a foreign act with foreseeable effects in the forum state always gives rise to
12   personal jurisdiction." *Bancroft & Masters, Inc.,* 223 F.3d at 1087. In other words, express
13   aiming requires "something more" – it requires foreign acts targeted at the plaintiff in the forum
14   "performed for the very purpose of having their consequences felt in the forum state." *Id*. at
15   1088. Applying these principles, courts in this district have found that a defendant's alleged
16   participation in a foreign price-fixing conspiracy that had foreseeable effects on the U.S. market
17   does not satisfy this test if the plaintiff cannot show that the defendant "engaged in wrongful
18   conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum." *In re*
19   *Dynamic Random Access Memory (DRAM) Antitrust Litig.,* No. C 02-1486, 2005 WL 2988715,
20   at *5-6 (N.D. Cal. Nov. 7. 2005) (holding plaintiffs could not establish express aiming where the
21   defendant alleged to have participated in international conspiracy had never manufactured or sold
22   DRAM in forum states or maintained business or corporate formalities there).

23   Sharp has not and cannot show that Thomson S.A. engaged in anticompetitive activity
24   individually targeted at Sharp in the United States because Thomson S.A. has never manufactured
25   or sold CRTs or conducted any CRT business in the United States. Instead, Sharp merely makes
26   unsubstantiated, general allegations in its Complaint that Thomson S.A. participated in foreign
27   meetings with competitors where information regarding CRT products was exchanged and that
28   "the North America market was the largest market for CRT Products" so *ipso facto*, Thomson

REPLY IN SUPPORT OF MOTION TO DISMISS           12            No. 07-5944-SC; MDL No. 1917
FOR LACK OF PERSONAL JURISDICTION

S.A. individually targeted Sharp in the United States. (*Id*. at 19 (*citing* Compl. at ¶¶ 12, 169, 187, 187)); *Holland Am. Line, Inc. v. Wartsila N. Am., Inc*., 485 F.3d 450, 458 (9th Cir. 2007) (holding "unsubstantiated and vague statement[s] do not establish a prima facie case for jurisdiction."). Sharp does not even attempt to establish express aiming by citing to any of the documents attached to its Response because none of these documents demonstrate that an employee of Thomson S.A. engaged in any intentional act – let alone an anticompetitive one – that was individually targeted at the United States.

Thomson S.A. did not manufacture, market, sell, or distribute CRTs or CRT products in the United States and did not set prices for CRTs or CRT products sold by Thomson Consumer in the United States. (Cadieux Decl. at ¶¶ 14-15, 2; Debon Aff. at ¶ 6 ("Thomson S.A. does not direct or advise Thomson Inc. on how to sell or distribute any Thomson Inc. product in the United States"); O'Hara Decl. at ¶ 7 ("Thomson Inc. is responsible for the sales and marketing of products in the United States.").) Accordingly, Sharp has failed to make a prima facie case that Thomson S.A. took any intentional act expressly aimed at causing Sharp harm in the United States.

### 2. **Sharp Has Not Presented Evidence that Thomson S.A.'s Forum-Related Activities Were a But-For Cause of Its Claims.**

To satisfy the second element of the *Calder*-effects test, Sharp must show that Thomson S.A.'s contacts with the United States were a "but for" cause of its claims. *Bancroft & Masters, Inc.,* 223 F.3d at 1088. Here, Sharp has failed to allege facts in its Complaint or to attach documents to its Response establishing that Thomson S.A. took any intentional acts expressly aimed at the United States. As such, it has failed to allege any specific acts by Thomson S.A. that could have been a but-for cause of its claims, let alone establish that these non-existent acts did actually cause it such harm. *See supra* at 11-12. Instead, Sharp merely relies on the conclusory allegations in its Complaint and argues that: (1) "Sharp's claims would not have arisen absent Defendants' global price fixing conspiracy"; (2) Thomson S.A. participated in this international conspiracy; so (3) Thomson S.A.'s forum-related activities were necessarily a but-for cause of antitrust injuries it allegedly suffered in the United States. (Resp. at 20.) Sharp's reasoning is

1  flawed. Having failed to prove that Thomson S.A. took intentional acts expressly aimed at Sharp
2  in the United States, Sharp cannot bootstrap that Thomson S.A. was a but-for cause of its claims
3  in the United States by merely alleging it was harmed by a global price-fixing conspiracy
4  involving multiple defendants. Because Sharp has failed to allege specific facts that make a
5  prima facie case that Thomson S.A. took intentional acts expressly aimed at the United States that
6  were a but-for cause of its claims, this Court lacks specific jurisdiction over Thomson S.A. and
7  Sharp's claims against it should be dismissed with prejudice.

### 3. The Exercise of Jurisdiction Over Thomson S.A. Would Not Be Reasonable.

10  Because Sharp has failed to satisfy either of the first two elements of the *Calder*-effects
11  test, it is not necessary to evaluate whether this Court's exercise of jurisdiction over Thomson
12  S.A. would be would reasonable. But, even if Sharp had satisfied the effects test, the exercise of
13  jurisdiction over Thomson S.A. would not be reasonable because: (1) Thomson S.A. has not
14  purposefully interjected its activities into the United States; (2) it would impose an enormous and
15  costly burden on Thomson S.A. because any documents it still possesses regarding the CRT
16  business it exited and sold eight years ago are located in France and subject to the French
17  blocking statute; (3) until 1999 all stock in Thomson S.A. was owned by the French government
18  so Sharp's claim against it raise substantial sovereignty concerns; and (4) exercising jurisdiction
19  over Thomson S.A. in the United States would be inefficient and would not further Sharp's
20  interest in convenient and effective relief because Thomson Consumer is the entity in the
21  Thomson group of companies that manufactured and/or sold CRTs in the United States and it has
22  not contested this Court's jurisdiction over it. *United States v. First Nat'l City Bank*, 379 U.S.
23  378, 403-404 (U.S. 1965) (stating that "modern notions of personal jurisdiction were developed
24  within a framework of States whose various processes are governed by the Due Process Clause
25  and whose judgments must be given full faith and credit by the other States within the federal
26  structure. Great care and reserve should be exercised when extending our notions of personal
27  jurisdiction into the international field."); *In re Dynamic Random Access Memory (DRAM)*
28  *Antitrust Litig.,* 2005 WL 2988715, at *9 (exercise of jurisdiction over foreign corporations

1 unreasonable given hardship conducting litigation in United States would impose on them and existence of continuing litigation against other related defendants). Thus, even if Sharp had established a sufficient connection between Thomson S.A.'s forum-related activities and Sharp's claims in this case – it has not – this Court's exercise of jurisdiction over Thomson S.A. would not be reasonable. *See Terracom v. Valley Nat'l Bank.*, 49 F.3d 555, 561 (9th Cir. 1995) (explaining that the law of personal jurisdiction is "asymmetrical and is primarily concerned with the defendant's burden.").

### D. The Court Should Not Grant Sharp Jurisdictional Discovery.

Recognizing that it has failed to make a prima facie case that Thomson S.A. is subject to personal jurisdiction, Sharp requests that it be permitted to conduct jurisdictional discovery. Sharp's request should be denied. "[W]here a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by the defendants, the Court need not permit even limited discovery." *Id*. at 562. That is the case here. Sharp's arguments that Thomson S.A. is subject to this Court's jurisdiction are premised upon its factually unsupported allegations that: (1) Thomson S.A. controlled Thomson Consumer's operations in the United States; and (2) Thomson S.A. took acts aimed at causing Sharp harm in the United States. Thomson S.A. has submitted affidavits that directly controvert these allegations. (*See* **Exs. 1-3**.) These affidavits establish that Thomson Consumer was not Thomson S.A.'s agent and that Thomson S.A. never manufactured or sold CRT products in the United States or told Thomson Consumer how to set the prices of the CRTs that entity sold in the United States. (*Id*.) Although Sharp has had complete access to the discovery provided by the other defendants in this action, in its Response, Sharp is unable to cite to specific documents that prove otherwise. Accordingly, there is absolutely no reason to believe that allowing Sharp to conduct jurisdictional discovery against Thomson S.A. will remedy these fundamental deficiencies. The record before the Court is sufficiently developed for the Court to rule on these jurisdictional issues. The Court should grant Thomson S.A.'s Motion and dismiss Sharp's claims against it with prejudice.

Dated: August 28th, 2013

Respectfully submitted,

   /s/Calvin L. Litsey

Calvin L. Litsey (SBN 289659)
Faegre Baker Daniels LLP
1950 University Ave, Suite 450
East Palo Alto, California 94303-2279
Telephone: +1 650 324-6700
Facsimile: +1 650 324-6701
Calvin.litsey@faegrebd.com

Kathy L. Osborn (*pro hac vice*)
Ryan M. Hurley (*pro hac vice*)
Faegre Baker Daniels LLP
300 N. Meridian Street, Suite 2700
Indianapolis, IN 46204
Telephone: +1 317-237-0300
Facsimile: +1 317-237-1000
kathy.osborn@FaegreBD.com
ryan.hurley@FaegreBD.com

Jeffrey S. Roberts (*pro hac vice*)
Faegre Baker Daniels LLP
3200 Wells Fargo
1700 Lincoln Street
Denver, CO 80203
Telephone: +1 303 607 3500
Facsimile: +1 303 607 3600
jeff.roberts@FaegreBD.com

***Attorneys for Specially Appearing Defendant Thomson S.A.***