Mario N. Alioto (56433)
Lauren C. Capurro (241151)
TRUMP, ALIOTO, TRUMP & PRESCOTT LLP
2280 Union Street
San Francisco, CA 94123
Telephone: (415) 563-7200
Facsimile:   (415) 346-0679
Email: malioto@tatp.com
Email: laurenrussell@tatp.com

*Interim Lead Counsel for Indirect-Purchaser Plaintiffs*

[Additional Counsel Listed on Signature Page]

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION<br><br>_____<br><br>This Document Relates to:<br><br>ALL INDIRECT-PURCHASER ACTIONS | Master File No. CV-07-5944-SC<br><br>MDL No. 1917<br><br>**INDIRECT-PURCHASER PLAINTIFFS' RESPONSE TO DEFENDANTS' JOINT OBJECTIONS TO REPORT AND RECOMMENDATION REGARDING CLASS CERTIFICATION**<br><br>Courtroom:     Hon. Samuel Conti |

## REDACTED PUBLIC VERSION

# **TABLE OF CONTENTS**

I.  INTRODUCTION ..................................................................................................1

II.  SUMMARY OF FACTS ........................................................................................3

    A.  The CRT Market ........................................................................................3

    B.  Defendants Participated in a Global Conspiracy to Fix Prices of CRTs ...................4

    C.  Government Investigations Confirm the Existence of the CRT Conspiracy ..............5

III.  OVERVIEW OF COMMON PROOF OF IMPACT AND DAMAGES ..............................6

    A.  Common Proof of Impact to Direct Purchasers ........................................7

    B.  Common Proof of Impact to Indirect End-Purchaser Class Members ......................8

    C.  Proposed Damage Calculation Methodologies ........................................10

IV.  ARGUMENT .....................................................................................................11

    A.  Standard of Review ..................................................................................11

    B.  Standards Applicable to a Rule 23(b)(3) Determination ..........................11

    C.  *LCDs* and *SRAM* Support Class Certification Here ................................12

    D.  The Special Master Did Not Reduce Plaintiffs' Burden Under Rule 23(b)(3) by Virtue of Samsung SDI's Guilty Plea ................................15

    E.  The Special Master Applied the Correct Standard on Proof of Injury ....................16

    F.  Plaintiffs Presented Adequate Evidence of Common Proof of Damages ................18

    G.  The Special Master Properly Determined That Dr. Netz's Analyses Supported Class Certification ................................22

V.  CONCLUSION ...................................................................................................25

i

INDIRECT-PURCHASER PLAINTIFFS' RESPONSE TO DEFENDANTS' JOINT OBJECTIONS TO
REPORT AND RECOMMENDATION REGARDING CLASS CERTIFICATION – MDL No. 1917

# TABLE OF AUTHORITIES

**Federal Cases**                                                                    **Page(s)**

*Allied Orthopedic Appliances, Inc. v. Tyco Healthcare Grp.*,
    247 F.R.D. 156 (C.D. Cal. 2007) .................................................................17

*Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*,
    568 U.S. ___, 133 S.Ct. 1184 (2013) ................................................11, 12, 17

*Bell Atlantic Corp. v. AT&T Corp.*,
    339 F.3d 294 (5th Cir. 2003) ..................................................................17

*Blackie v. Barrack*,
    524 F.2d 891 (9th Cir. 1975) ..................................................................19

*Blades v. Monsanto Co.*,
    400 F.3d 562 (8th Cir. 2005) ..................................................................17

*Butt v. Allegheny Pepsi-Cola Bottling Co.*,
    116 F.R.D. 486 (E.D. Va. 1987) .............................................................17

*Cal. v. Infineon Techs. AG*,
    No. 06-4333, 2008 WL 4155665 (N.D. Cal. Sept. 5, 2008) ........................17

*Comcast Corp. v. Behrend*,
    569 U.S. ___, 133 S.Ct. 1426 (2013) ............................................ *passim*

*DG v. Devaughn*,
    594 F.3d 1188 (10th Cir. 2010) .........................................................16, 17

*Gonzales v. Comcast Corp.*,
    No. 10-01010, 2012 WL 10621 (E.D. Cal. Jan. 3, 2012) ...........................17

*Harris v. comScore, Inc.*,
    No. 11 C 5807, 2013 WL 1339262 (N.D. Ill. Apr. 2, 2013).........................21

*Hartman v. Duffey*,
    973 F. Supp. 199 (D.D.C. 1997) ............................................................11

*In re Cardizem CD Antitrust Litig.*,
    200 F.R.D. 326 (E.D. Mich. 2001) .....................................................16, 19

*In re Cathode Ray Tube (CRT) Litigation Antitrust Litig.*,
    911 F. Supp. 2d 857 (N.D. Cal. 2012) ..................................................1, 12

*In re Chocolate Confectionary Antitrust Litig.*,
    289 F.R.D. 200 (M.D. Pa. 2012).............................................................19

*In re Flash Memory Antitrust Litig.*,
    No. C 07-0086 SBA, 2010 WL 2332081 (N.D. Cal. June 9, 2010) ..........2, 15, 16, 23

*In re Graphics Processing Units Antitrust Litig.*,
    253 F.R.D. 478 (N.D. Cal. 2008)..........................................2, 15, 16, 23

ii

*In re High-Tech Employee Antitrust Litig.*,
  289 F.R.D. 555 (N.D. Cal. 2013)....................................................................................21

*In re Montano*,
  493 B.R. 852 (D.N.M. 2013) .........................................................................................22

*In re Motor Fuel Temperature Sales Practices Litig.*,
  MDL No. 1840, 2013 WL 1397125 (D. Kan. Apr. 5, 2013) ........................................21

*In re Neurontin Antitrust Litig.*,
  MDL No. 1479, 2011 WL 286118 (D.N.J. Jan. 25, 2011) ...........................................16

*In re New Motor Vehicles Canadian Export Antitrust Litig.*,
  522 F.3d 6 (1st Cir. 2008)..............................................................................................17

*In re Online DVD Rental Antitrust Litig.*,
  No. M 09-2029 PJH, 2010 WL 5396064 (N.D. Cal. Dec. 23, 2010) ...........................19

*In re Potash Antitrust Litig.*,
  159 F.R.D. 682 (D. Minn. 1995).....................................................................................19

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
  No. 12-7085, ___ F.3d ___, 2013 WL 4038561 (D.C. Cir. Aug. 9, 2013)............16, 21

*In re Rubber Chemicals Antitrust Litig.*,
  232 F.R.D. 346 (N.D. Cal. 2005)..............................................................................11, 16

*In re Scrap Metal Antitrust Litig.*,
  527 F.3d 517 (6th Cir. 2008), *cert. denied*, 129 S.Ct. 1673 (2009)............................19

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
  264 F.R.D. 603 (N.D. Cal. 2009)..........................................................................*passim*

*In re Terazosin Hydrochloride*,
  220 F.R.D. 672 (S.D. Fla. 2004)....................................................................................19

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  MDL No. 1827, 2012 WL 555090 (N.D. Cal. Feb. 21, 2012)..................................20, 23

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  267 F.R.D. 583 (N.D. Cal. 2010),
  *amended in part*, 2011 WL 3268649 (N.D. Cal. July 28, 2011) ........................*passim*

*In re Whirlpool Corp. Front–Loading Washer Prods. Liability Litig.*,
  No. 10-4188, ___ F.3d ___, 2013 WL 3746205 (6th Cir. July 18, 2013) ...................21

*Kohen v. Pac. Inv. Mgmt. Co.*,
  571 F.3d 672 (7th Cir. 2009), *cert. denied*, 559 U.S. 962 (2010)........................16, 17

*Kottaras v. Whole Foods Market, Inc.*,
  281 F.R.D. 16 (D.D.C. 2012).........................................................................................17

*Leyva v. Medline Indus. Inc.*,
  716 F.3d 510 (9th Cir. 2013) .........................................................................................22

*Mims v. Stewart Title Guar. Co.*,
    590 F.3d 298 (5th Cir. 2009) ..............................................................................16, 17

*Reiter v. Sonotone Corp.*,
    442 U.S. 330 (1979) .................................................................................................11

*Roach v. T.L. Cannon Corp.*,
    No. 3:10-CV-0591, 2013 WL 1316452 (N.D.N.Y. Mar. 29, 2013) ..........................22

*Somers v. Apple, Inc.*,
    258 F.R.D. 354 (N.D. Cal. 2009) ............................................................................17

*Story Parchment Co. v. Paterson Parchment Paper Co.*,
    282 U.S. 555 (1931) .................................................................................................18

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. ___, 131 S.Ct. 2541 (2011) ...............................................................11, 22

*World Triathalon Corp. v. Dunbar*,
    539 F. Supp. 2d 1270 (D. Haw. 2008),
    *aff'd in part, appeal dismissed in part*, 320 Fed. Appx. 778 (9th Cir. 2009) ...........24

*Yarger v. ING Bank, fsb*,
    285 F.R.D. 308 (D. Del. 2012) ................................................................................16

*Yokoyama v. Midland Nat. Life Ins. Co.*,
    594 F.3d 1087 (9th Cir. 2010) .................................................................................19


**State Cases**

*Gordon v. Microsoft Corp.*,
    No. MC 00-5994, 2003 WL 23105550 (Minn. D. Ct. Dec. 15, 2003) ......................22


**Federal Rules**

Fed. R. Civ. P. 23 ............................................................................................... *passim*

Fed. R. Civ. P. 53 ......................................................................................................11

INDIRECT-PURCHASER PLAINTIFFS' RESPONSE TO DEFENDANTS' JOINT OBJECTIONS TO
REPORT AND RECOMMENDATION REGARDING CLASS CERTIFICATION – MDL No. 1917

## I.   __INTRODUCTION__

Special Master Martin Quinn conducted a well-reasoned and thorough analysis of the record under the governing legal standards, and correctly determined that Plaintiffs' motion for class certification meets the requirements of Rule 23.  *See* Report and Recommendation Regarding Indirect-Purchaser Plaintiffs' Motion for Class Certification, Dkt. No. 1742 ("Class R&R").  The objections to the Class R&R by Defendants ("Class Obj.") provide no basis to conclude that the Special Master erred in his recommendation.[1]

Given the overwhelming conspiracy evidence in the record, Defendants do not, and cannot, credibly dispute that they participated in a global conspiracy to fix prices, limit production and allocate markets and customers for cathode ray tubes ("CRTs").  Indeed, defendant and convicted-felon Samsung SDI Co., Ltd. ("Samsung SDI") escaped greater criminal fines by representing to the district judge presiding over the criminal case and to the U.S. Department of Justice ("DOJ") that *this proceeding* is the appropriate forum for compensating victims of the CRT cartel.  Samsung SDI's and the other Defendants' effort to sidestep judgment of their conspiratorial conduct through their objections to the class certification recommendation should be rejected.

This Court has already found that this case and the *LCDs* case are "closely related."  *In re Cathode Ray Tube (CRT) Litigation Antitrust Litig.* ("*CRTs*"), 911 F. Supp. 2d 857, 863 (N.D. Cal. 2012).  In *LCDs,* the court certified 23 state-wide classes of indirect purchasers.  *In re TFT-LCD (Flat Panel) Antitrust Litig.* ("*LCDs*"), 267 F.R.D. 583 (N.D. Cal. 2010), *amended in part*, 2011 WL 3268649 (N.D. Cal. July 28, 2011).  The many similarities between the conspiracy and class certification facts in the two cases strongly support class certification here.  Judge Illston applied the appropriate class certification legal standards in *LCDs*, and considered and rejected on several occasions the very arguments made by Defendants here.  Defendants' objection that the Special Master erred in relying upon *LCDs* is meritless.

---

[1] Defendants do not challenge the Special Master's determinations that the classes are ascertainable and meet the requirements of Rule 23(a)(1)-(4) (*i.e.*, numerosity, commonality, typicality and adequacy).  *See* Class R&R at 13-19.  Defendants object only to the Special Master's determination that Plaintiffs have satisfied the Rule 23(b)(3) requirement that common questions predominate over individual ones.  *See* Class Obj. at 6.

Defendants' remaining objections are meritless as well.

First, Defendants falsely assert that the Special Master applied a "lower than usual burden" because one of the CRT Defendants has pleaded guilty.  The Special Master assessed whether this case is more analogous to *LCDs* and *In re Static Random Access Memory (SRAM) Antitrust Litig.* ("*SRAM*")*,* 264 F.R.D. 603, 613 (N.D. Cal. 2009), in which class certification was granted, as opposed to other decisions in this district,[2] in which class certification was not granted.  The Special Master cited not only the guilty plea, but many other facts, as grounds for finding *LCDs* and *SRAM* more analogous, and did not apply a less rigorous standard due to the guilty plea.

Second, Defendants assert that Plaintiffs failed to meet their burden of showing common impact to *all* class members.  But Plaintiffs need not show impact to all class members at the class certification stage.  Even assuming, *arguendo*, that they must, Dr. Netz repeatedly opined that (1) ████████████████████████████████████████████████████, and (2) ██ ████████████████████████████████████████████

Third, Defendants' additional objection that the Special Master failed to follow purportedly new legal standards set by the Supreme Court in *Comcast Corp. v. Behrend*, 569 U.S. ___, 133 S.Ct. 1426 (2013) is also without merit.  The Supreme Court in *Comcast* made no new law that has any impact on Plaintiffs' case here.  *Comcast* merely rejected the plaintiffs' expert's damages model because it addressed impact based on four impact theories, not based on the one impact theory that actually remained in the case.  Here, it is undisputed that Plaintiffs rely on only one theory and that Dr. Netz's methodologies support that theory.

Finally, Defendants' further objections to Dr. Netz's use of averaging, to the adequacy of her data sample, and to purportedly unsupported assumptions in her pass-through analyses are similarly unavailing.  As detailed below, the Special Master rigorously reviewed each of these arguments and found that Dr. Netz's methods were reasonable and adequately supported by legal and economic principles and record evidence.

---

[2] *In re Graphics Processing Units Antitrust Litig.* ("*GPUs*"), 253 F.R.D. 478 (N.D. Cal. 2008) and *In re Flash Memory Antitrust Litig.* ("*Flash Memory*"), No. C 07-0086 SBA, 2010 WL 2332081 (N.D. Cal. June 9, 2010).

II.   **SUMMARY OF FACTS**

A.     **The CRT Market**

█████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

████████████  *See* Declaration of Janet S. Netz, Ph.D., in Support of Motion of Indirect-Purchaser

Plaintiffs for Class Certification ("Netz Decl.") at 3, 36; *see also* Class R&R at 4.

█████████████████████████████████████████████████████████

Netz Decl. at 23-27; Alioto Decl., ¶¶ 4-5, Exs. 3-4. ██████████████████████████████

██████████████████████████████████████████████   IP CAC,

¶ 130; *see also* Alioto Decl., ¶¶ 6-7, Exs. 5-6; Class R&R at 4.

████████████████████████████████████████████

████████████████████████████████████████████████

███████████████   Netz Decl. at 114 n.388; Alioto Decl., ¶¶ 12, 94, Exs. 11, 107.  Also,

███████████████████████████████████████████

█████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████   *See* Rebuttal Declaration of

Janet S. Netz, Ph.D., in Support of Motion of Indirect-Purchaser Plaintiffs for Class Certification

("Netz Rebuttal Decl.") at 10.

---

[3] *See* Indirect-Purchaser Plaintiffs' Fourth Consolidated Amended Complaint, Dkt. No. 1526 ("IP CAC"), ¶ 194; Declaration of Mario N. Alioto in Support of Motion of Indirect-Purchaser Plaintiffs for Class Certification, Dkt. No. 1527-2 ("Alioto Decl."), ¶3, Ex. 2.

1 ████████████████████████████████████████

2 ████████████████████████████████████████

3 ████████████████████████████████████

4 ████████████████████████████████████████████

5 ████████████████████████████████████████████

6 ████████████████████████████████ Netz Decl. at

7 32-33.  Class members include individual consumers and end-user businesses.

## B.   Defendants Participated in a Global Conspiracy to Fix Prices of CRTs

Defendants and their co-conspirators ████████████████████

████████████████████████████[4]  Overwhelming evidence shows that

████████████████████████████████████████████

████████████████████████  It is undisputed that the existence

and operation of the CRT conspiracy can be established through common, class-wide proof.

Beginning in ████████████████████████████

████████████████████████████████████████████

IP CAC, ¶¶ 143-144.  By ██████████████████████████

████████████████████████████████████████████

████████[5]  In addition, ████████████████████████████

████████████████████████████████ *See* IP CAC, ¶¶

147-151; Alioto Decl., ¶ 13, Ex. 12.  Defendants ████████████████

████████████████████ *See id.* ¶¶ 33-44, Exs. 32-43.

[4] *See* December 5, 2012 European Commission ("EC") Press Release announcing record fines totaling almost $2 billion against most Defendants in this case, and noting that the CRT cartel was "among the most organised cartels that the Commission has investigated."  Declaration of Mario N. Alioto in Support of Reply Brief, Docket No. 1653-1 ("Alioto Reply Decl."), Ex. 18.

[5] ████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████



1  

2 (*see id.* ¶¶ 16-18, Exs. 15-17);

3 (*see id.* ¶¶ 19-21, Exs. 18-20);

4 (*see id.* ¶¶ 22-26, Exs. 21-25);

5 (*see id.* ¶¶ 27-29, Exs. 26-28); and

6 (*see id.* ¶¶ 30-32, Exs. 29-31).

7  

8 *See id.* ¶¶ 45-48, Exs. 44-47.  For

9 example,

10 *See id.* ¶ 45, Ex. 44.

11  

12 *See id.* ¶¶ 28, 50-51,

13 Exs. 27, 49-50.

14  

15  

16 For example,

17  

18  

19 **C.       Government Investigations Confirm the Existence of the CRT Conspiracy**

20 Governmental investigations of Defendants' global price-fixing conspiracy have resulted in

21 indictments, significant fines and a guilty plea.  Defendants are currently being investigated by the

22 DOJ, the EC, the Japanese Fair Trade Commission, the Korean Fair Trade Commission, the

23 Canadian Competition Bureau, and the Czech Office for the Protection of Competition.  *See id.* ¶¶

24 56-75, Exs. 55-74 (providing status and findings of each investigation).  Defendants Chunghwa,

25 _____

26  

27 [6] *Id.* ¶ 51, Ex. 50; *see also id.* ¶¶ 30, 52, Exs. 29, 51.

28 *See id.* ¶¶ 53-55, Exs. 52-54.



1   Samsung SDI, Philips, LGE, Panasonic, Toshiba and Thomson (n/k/a Technicolor) were fined

2   **€1.47 billion** ($1.93 billion) by the EC for their unlawful CRT cartel that had the effect of

3   "*ultimately harming final consumers.*"  *See* Alioto Reply Decl., Ex. 18 (emphasis added).

4        In the U.S., the DOJ investigation has so far resulted in a guilty plea by Samsung SDI for

5   violations of the Sherman Act, 15 U.S.C. § 1, and a $32 million fine (*see* Alioto Decl., ¶¶ 56-58,

6   Exs. 55-57); as well as six indictments of former executives of Chunghwa, Samsung SDI, and LG

7   Philips Displays, for Sherman Act Section 1 violations (*see id.* ¶¶ 61-65, Exs. 60-64).  As part of

8   its criminal plea, Samsung SDI has not made or promised any restitutionary payments to entities or

9   individuals injured by its wrongful acts.  Samsung SDI escaped a larger criminal fine by

10  representing to the court during sentencing that this class action is the appropriate forum for

11  compensating the victims of Defendants' unlawful behavior.  *Id.* ¶¶ 57, 59, 60, Exs. 56, 58, 59.

12       In addition, Chunghwa and most of its employees have received amnesty from prosecution

13  for their participation in the CRT conspiracy.  Chunghwa is cooperating with the DOJ's ongoing

14  investigation and criminal prosecutions.  Three other former executives of Samsung SDI were

15  "specifically carved out" of Samsung SDI's Amended Plea Agreement because they "are the most

16  culpable individuals identified by the government after extensive investigation."  *Id.* ¶ 65, Ex. 64.

17  **III.   OVERVIEW OF COMMON PROOF OF IMPACT AND DAMAGES**

18       As the Special Master found, Dr. Netz addressed two economic questions relevant to class

19  certification:  Was there common impact to class members in that they paid higher prices for CRTs

20  than they would have in the absence of a cartel; and can class damages be calculated using a

21  common, formulaic method.  Class R&R at 22.  Dr. Netz engaged in extensive analyses of these

22  issues, generating declarations that exceeded 200 pages of detailed economic analysis and dozens

23  of exhibits related to the economic facts of the case.  *See generally* Netz Decl. at 1-117; Netz

24  Rebuttal Decl. at 1-93.  The Special Master reviewed Dr. Netz's analyses in detail, including her

25  opinions on common proof of impact to direct purchasers, pass-through to resellers and class

26  members, and her proposed methods of calculating damages.  *See* Class R&R at 22-28.  The Reply

27  Brief in Support of Indirect-Purchaser Plaintiffs' Motion for Class Certification ("Plaintiffs'

28  Reply") (pp. 3-9) also details Dr. Netz's analyses, which are summarized below.

1

**A.      Common Proof of Impact to Direct Purchasers**

2      Dr. Netz first examined the CRT industry and opined that several characteristics make it

3 highly susceptible to cartelization and price-fixing, including ██████████████████████

4 ████████████████████████████████████████████████████████████████████████████████

5 ████████████████████████████████████████████████████████████

6 Netz Decl. at 5, 6-32; *see also* Netz Rebuttal Decl. at 3-4.

7      Dr. Netz next analyzed whether the CRT "cartel was successful at raising CRT prices

8 above the competitive level," performing both qualitative and quantitative analyses. *See* Netz

9 Decl. at 33.  For example, she analyzed whether Defendants possessed sufficient market power to

10 raise prices; whether the cartel set prices above the competitive level; whether the prices paid by

11 direct purchasers were about equal to the cartel's target prices; whether the cartel followed

12 operating practices known to have brought success to other cartels (*e.g.*, monitoring cheating);

13 whether prices are primarily determined by common, rather than individual, factors; and, whether

14 cartel members expressed their views, in the normal course of business, that the cartel had raised

15 prices. *See* Netz Decl. at 33, 34-65.  Through these analyses, Dr. Netz "showed that the

16 anticompetitive harm caused by the cartel affected *all direct purchasers* and that the target prices

17 set by the cartel created a price structure for direct purchasers that was similar to the structure in

18 target prices."  Class R&R at 24; emphasis added; footnote omitted.

19      "Dr. Netz also assessed whether impact to direct purchasers could be addressed using proof

20 that is common to all class members." *Id.*  By analyzing economic theory and Defendants' own

21 documents,[7] "[s]he determined that it could, and 'showed that the cartel raised the entire structure

22 of CRT prices.'" *Id.* (quoting Netz Decl. at 65); *see also* Netz Rebuttal Decl. § VII.

23      Dr. Netz supplemented her theoretical and documentary analysis with quantitative studies,

24 conducting two regression analyses of 4,281 target prices of CPTs and CDTs, and two such

25

26 [7] "Dr. Netz first analyzed economic theory positing that all CRT prices must be raised for a cartel
to be effective, or, for example, purchasers will substitute away from price-fixed CRTs towards
27 those that are not."  Class R&R at 24 (citing Netz Decl. at 65-66).  "Dr. Netz also examined
defendants' documents evincing the cartel's setting of a price structure through communication
among cartel members of target price levels and price differentials for CRT products of different
28 types and sizes."  Class R&R at 24 (citing Netz Decl. at 66-68 and Netz Rebuttal Decl. at 4).

7

analyses of Defendants' actual sales prices of CPTs and CDTs.  All four studies showed that over

90 percent of the variation in target prices and actual prices was explained by five variables.[8]

Based on these studies, Dr. Netz concluded that a CRT price structure existed and that:

> 'common factors overwhelm the individual factors in determining CRT prices';
> that 'prices respond similarly to common market forces and therefore the target
> price structure the cartel put in place had the effect of causing the prices of all
> CRTs to be above the competitive level, not merely the CRTs whose prices were
> fixed by the cartel'; and that 'proof of harm does not require individualized
> inquiry into the effect of the cartel's conduct on any particular product or buyer; it
> is common to all class members.' (Class R&R at 24 n.15, 25 (citing Netz Decl. at
> 71).)

Notably, the Defendants raise no objections to (1) Dr. Netz's CRT price structure analysis

or conclusions; (2) Dr. Netz's analyses or conclusions that the cartel overcharge impacted all direct

purchasers; or (3) the Special Master's determination that Plaintiffs "satisfied their burden of

showing that common questions predominate on proof of . . . the direct purchasers' payment of

supra-competitive pricing as a result of the alleged cartel."  Class R&R at 38.

## B.    Common Proof of Impact to Indirect End-Purchaser Class Members

Dr. Netz then analyzed whether pass-through of the overcharge to class members down the

chain of distribution could be addressed through common proof.  She concluded that ███████████

██████████████████████████████████████████████████████████████████

*See* Netz Decl. at 72-83, 97-107.  In her qualitative analyses, Dr. Netz first reviewed the economic

theory of pass-through as applied to highly competitive markets, which recognizes that the more

competitive the distribution channels are in an industry, the closer the pass-through rate is to 100%

in those channels.  *See* Class R&R at 26; Netz Decl. at 72-77.  The Special Master found that Dr.

Netz's review of the record "indicates that each of the distribution levels for monitors and TVs is

highly competitive."  Class R&R at 26.  Defendants do not object to this determination or dispute

that such proof is common to all class members.

---

[8] The major determinants of target prices were size, finish, tube shape (CPTs only), whether the target was a major customer, and a time trend.  *See* Class R&R at 24-25 (citing Netz Rebuttal Decl. at 4).  The major determinants of actual prices were size, aspect ratio (widescreen), finish, buyer seller pairs and a time trend.  *See* Class R&R at 25 (citing Netz Rebuttal Decl. at 5).

1      Dr. Netz also presented documentary evidence showing that Defendants ████████

2  ████████████████████████████████████████████████████████████████████████

3  ██████████████████████████████████████████████████████████████████

4  ████████████████████████████████████████████████████████████████████████

5  ███████████████████████████████████   Netz Decl. at 78-80; *see also* Alioto Decl., ¶¶

6  96, 99-106, Exs. 109, 112-119.  Based on these analyses, which are "common evidence . . .

7  applicable to all class members," Dr. Netz concluded that the cartel overcharge was passed through

8  to class members, and that class members were harmed by the cartel.  Netz Decl. at 83.

9  Defendants do not dispute that such proof is common to all class members.

10      Dr. Netz also performed econometric analyses to measure the pass-through rate.  *See* Netz

11  Decl. at 97-107.  As the Special Master explained, Dr. Netz used regression analyses to regress

12  prices at lower points in the distribution channel on the cost at higher points in the channel, with

13  the coefficient on the upstream cost variable being the pass-through rate.  Class R&R at 26.  Dr.

14  Netz ultimately conducted 47 pass-through studies that calculated separate pass-through rates for

15  each application, *i.e.*, tubes, monitors, and televisions.  Netz Decl. at 99; Netz Rebuttal Decl. §

16  X.A.2.  Dr. Netz used data produced by Defendants and third parties, including transaction-level

17  data (*i.e.*, the actual amount paid by the purchaser).  Class R&R at 26; Netz Decl. at 99.

18      Dr. Netz used two approaches to estimate pass-through over the entire CRT distribution

19  channel, the "top-and-bottom" method and the "top-to-bottom" method.  Netz Decl. at 102.  The

20  "top-and-bottom" method examines the relationship between costs at the top of the distribution

21  chain and prices at the bottom of the distribution chain, implicitly accounting for pass-through at

22  each level of the distribution channel.  The "top-to-bottom" method follows CRT costs and prices

23  through the distribution chain, estimates the pass-through rate at each level, and then multiplies

24  those rates to estimate the pass-through down the entire distribution channel.  *Id*.

25      In addition, Dr. Netz performed studies that calculated pass-through for a single level in the

26  distribution channel, estimating a pass-through rate for particular resellers at various levels.  Dr.

27  Netz performed these studies for tube distributors, CRT product makers, CRT product distributors

28  and CRT product retailers.  *See* Class R&R at 27.  Dr. Netz's pass-through studies examined all

9

INDIRECT-PURCHASER PLAINTIFFS' RESPONSE TO DEFENDANTS' JOINT OBJECTIONS TO
REPORT AND RECOMMENDATION REGARDING CLASS CERTIFICATION – MDL No. 1917

1   levels of the CRT distribution channel; they included over 40 data sets from 29 different entities

2   representing over 131 million individual CRTs, each with a corresponding cost and price; and they

3   covered transactions between ██████ 1994 and ██████ 2011.[9]

4        Based on the documentary evidence she reviewed and econometric studies she performed,

5   Dr. Netz concluded that any overcharges were passed through to consumers at a rate of 100% or

6   more; that the results verified that the pass-through rate can be quantified by common evidence;

7   and that ██████████████████████████████████████████████████████████

8   ██████████████████████████████████████ Netz Decl. at 104

9   (emphasis added); *see also* Netz Rebuttal Decl. § X.A.2.  Consistent with Dr. Netz's conclusions,

10  the Special Master concluded that Plaintiffs have "satisfied their burden of showing that common

11  questions predominate . . . on proof of common impact on class members."  Class R&R at 38.

12       **C.   Proposed Damage Calculation Methodologies**

13       Dr. Netz also detailed four methods of calculating damages to class members.  Each

14  method includes calculating "but for" prices, estimating the direct overcharge imposed by

15  Defendants on direct purchasers, and estimating the portion of the direct overcharge passed down

16  the distribution chain to class members.  *See* Netz Decl. at 83-107; Netz Rebuttal Decl. at 67-73.

17  Dr. Netz substantively described widely-accepted economic models for measuring the direct

18  overcharge, including "a before-and-after method" (Netz Decl. at 85 n.264, 85-90) and a

19  "benchmark comparisons method" (*id.* at 90-92).  She identified the types of data required for each

20  method and the sources for such data, and explained how the required data for implementing the

21  method was common to all class members.  She also explained that each model has been estimated

22  in the scholarly literature in situations similar to this price-fixing case, using real-world data

23  similar to the data available or likely to become available here.  Netz Decl. at 83-97.  Dr. Netz's

24  _____

25  [9] *See* Netz Decl. at 104, Exs. 34, 36, 40-43; Netz Rebuttal Decl. § X.A.2, Ex. RR-34.  Dr. Netz's
    pass-through studies used enormous quantities of data:  The data from 27 retailers "represented

26  over 74 million CRT products sold to end users between 1994 and 2011"; the data from four large
    product distributors represented "almost 4 million CRT products sold beginning in 1997 and

27  ending in 2010"; the data from five CRT monitor and television product manufacturers contained
    "sales of over 37 million CRT products, beginning in 1995 and ending in 2009"; and, the data for

28  the two CRT tube distributors contained "sales of 15 million tubes beginning in 1994 and ending
    in 2002."  *See generally* Class R&R at 27 n.18; Netz Rebuttal Decl. at 74.

1  judgments regarding the availability of data are based on her review of the types of data

2  Defendants and other firms in the CRT industry regularly collected, and her experience in

3  conducting related research in the academic field and in antitrust litigation.  *See* Netz Rebuttal

4  Decl. § IX.A.  Based upon these analyses, Dr. Netz opined that the direct overcharge and the pass-

5  through rate can be calculated using a common method based on common evidence.  *See id.* at 5-6.

## IV.   ARGUMENT

### A.   Standard of Review

7  Pursuant to the parties' stipulation and the Court's order, the Court reviews the Special

8  Master's factual findings for clear error and his legal conclusions de novo.  *See* Fed.R.Civ.P.

9  53(f)(3), (f)(4); Dkt. No. 302 ("Order Appointing Special Master") ¶ 18.  Defendants here have the

10 "burden of demonstrating error."  *Hartman v. Duffey*, 973 F. Supp. 199, 200 (D.D.C. 1997).

### B.   Standards Applicable to a Rule 23(b)(3) Determination

12 The Special Master articulated and applied the appropriate standards for assessing whether

13 Plaintiffs have satisfied Rule 23(b)(3).  First, he properly recognized that class actions play an

14 important role in the enforcement of the antitrust laws (s*ee Reiter v. Sonotone Corp.*, 442 U.S. 330,

15 344 (1979)); and that "courts resolve doubts in these actions in favor of certifying the class."

16 (Class R&R at 11 (quoting *In re Rubber Chemicals Antitrust Litig.*, 232 F.R.D. 346, 350 (N.D.

17 Cal. 2005))).  Second, he acknowledged that "certification is proper only if 'the trial court is

18 satisfied, after a rigorous analysis, that the prerequisites' of Rule 23 have been satisfied"; and that

19 frequently a "'rigorous analysis' will entail some overlap with the merits of the plaintiff's

20 underlying claim."  Class R&R at 12 (citing *Comcast Corp. v. Behrend*, 569 U.S. ___, 133 S.Ct.

21 1426, 1432 (2013) and *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. ___, 131 S.Ct. 2541, 2552

22 (2011)).  Third, he noted that proving predominance "does not require a plaintiff seeking class

23 certification to prove that each element of his or her claim is susceptible to classwide proof.  It

24 merely requires . . . that common questions predominate over any questions affecting only

25 individual class members."  Class R&R at 13 (citing *Amgen Inc. v. Connecticut Retirement Plans

26 and Trust Funds*, 568 U.S. ___, 133 S.Ct. 1184, 1196 (2013)).  Finally, the Special Master

27 recognized that "Rule 23 does not grant courts license to engage in free-ranging merits inquiries at

28

1   the certification stage.  'Merits questions may be considered to the extent—but only to the

2   extent—that they are relevant to determining whether the Rule 23 prerequisites for class

3   certification are satisfied.'"  Class R&R at 13 (quoting *Amgen*, 133 S.Ct. at 1194-95).

4          "To determine whether the predominance requirement is satisfied, the Court must identify

5   the issues involved in the case, and determine which are subject to common proof and which are

6   subject to individualized proof."  *LCDs*, 267 F.R.D. at 600.  "'Liability in an antitrust case is based

7   on: (1) whether there was a conspiracy to fix prices in violation of the antitrust laws; (2) whether

8   the plaintiffs sustained an antitrust injury, or the 'impact' of the defendants' unlawful activity; and

9   (3) the amount of damages sustained as the result of the antitrust violations.'"  *Id.* (quoting *SRAM*,

10  264 F.R.D. at 610-11).  Defendants do not dispute that common proof can be used here to establish

11  a conspiracy to fix CRT prices, and do not object to the Special Master's determination that

12  common proof predominates on the issue of impact to direct purchasers.  Rather, their objections

13  focus on pass-through of the cartel overcharge and impact to indirect-purchaser class members.

14         **C.      *LCDs* and *SRAM* Support Class Certification Here**

15         This Court has previously recognized that this case and *LCDs* are "closely related."  *CRTs*,

16  911 F. Supp. 2d at 863.  The Special Master similarly found this case "analogous to the *LCDs* and

17  *SRAM* decisions" and "applie[d] those courts' reasoning here[]."  Class R&R at 20 n.5.

18  Defendants now argue that the Special Master improperly relied upon the class certification

19  decision in *LCDs* because it is distinguishable and because Dr. Netz's underlying expert materials

20  submitted in *LCDs* were not produced here.  Class Obj. at 23-25.  Neither argument has merit.

21         First, *LCDs* and this case factually are "on all fours."  *See* Plaintiffs' Reply at 12 (detailing

22  factual similarities); *see also* Report and Recommendation Regarding Defendants' Motion to

23  Strike, Dkt. No. 1743 ("MTS R&R"), at 19 and 22 (Special Master describing the many ways in

24  which "the *LCD* case is closely parallel to CRT").  Defendants' contrary assertions ring hollow.

25         Second, the plaintiffs in *LCDs*, like Plaintiffs here, presented the opinions of Dr. Netz, who

26  opined that proof of impact and quantification of damages could be addressed through

27  predominantly common proof.  In *LCDs*, on the issue of common proof of the cartel overcharge to

28  direct purchasers, Dr. Netz engaged in essentially the same qualitative and quantitative analyses

12

INDIRECT-PURCHASER PLAINTIFFS' RESPONSE TO DEFENDANTS' JOINT OBJECTIONS TO
REPORT AND RECOMMENDATION REGARDING CLASS CERTIFICATION – MDL No. 1917

that she performed here.  She concluded that common product characteristics explain a majority of

variation in prices; that proof of harm to direct purchasers did not require individual inquiry; and

that these common influences on price could be estimated using a formula.[10]  On the issue of pass-

through, Dr. Netz engaged in essentially the same qualitative and quantitative analyses as she

performed here, and concluded that pass-through of the overcharge to indirect-purchasers could be

measured on a common, formulaic basis.[11]

The *LCDs* defendants raised many of the same arguments made by Defendants here.  On

pass-through, for example, the *LCDs* defendants' expert asserted that "pass-through decisions

differ by customer, model, stage of distribution, and over time;" and that "'[t]he distribution chains

that move LCD panels from the defendant manufacturers to products that are purchased by

individual end users are extraordinarily complex and varied . . ., [involving up to] six pass-on

decisions by intermediaries.'"  267 F.R.D. at 603; *see also id*. at 597-98 (detailing additional

claimed market complexities that preclude proof of class-wide impact).

Acknowledging that it must conduct a review that is "as rigorous as is necessary to

determine whether class certification is appropriate" (267 F.R.D. at 591), the *LCDs* court

meticulously analyzed the defendants' assertions and rejected the argument that purported market

and product complexities prevented the plaintiffs and Dr. Netz from addressing impact and

damages with predominantly common proof.  *See* 267 F.R.D. at 603-06.  On pass-through, the

*LCDs* court concluded that "plaintiffs have put forth a feasible methodology to show that the

channel-length pass-through rate can be measured, regardless of the path or the number of steps

the panel went through from defendants to class members."  *Id*. at 604.  The court cited multiple

---

[10]  *Compare* 267 F.R.D. at 601 with Netz Decl. at 71-72 (describing similar market and industry analyses, similar target and actual price matching analyses, and similar hedonic regression analyses showing common price determinants).

[11]  *Compare* 267 F.R.D at 601-02 (qualitative analyses of distribution channel) and 602-03 (quantitative studies of pass-through) with § III.B., *supra* (describing Dr. Netz's work here).  In *LCDs* and here, Netz used "top and bottom," "top to bottom" and reseller-specific regression approaches to measure complete or partial pass-through over the LCD and CRT distribution channels, performing 53 and 47 studies in each case, respectively.  In each case, she ran separate regression analyses for each of the finished products at issue, using similar variables, and used transaction data produced by defendants and third parties.  *See id*.

cases that "have held that variations in products and complexities in a distribution chain do not preclude an estimation of whether an overcharge impacted end purchasers." *Id.* at 603.

As the above discussion establishes, the *LCDs* court rejected many of the same arguments Defendants make here, and Defendants' attempts to distinguish *LCDs* on other grounds (Class Obj. at 24-25) are ineffectual. For example, Defendants' assertion that Dr. Netz performed correlation analyses in *LCDs* but did not do so here was properly rejected by the Special Master. As he correctly noted, Dr. Netz's "hedonic regression is a more robust analysis than a correlation study," and the propriety of her methodology is supported by "analyses of different data sets all [of which] confirmed the existence of a price structure…." MTS R&R at 14-15.

Defendants' further assertion that Plaintiffs should not be permitted to rely on *LCDs* because Dr. Netz's expert materials from that case were not produced here is also meritless. Plaintiffs are entitled to rely upon the *LCDs* court's discussion of an expert's work and methods in the same way that they would rely upon any other analogous, published judicial decision. Parties need not access underlying filings and pleadings to cite factually and legally analogous case law.[12]

Notably, Defendants neither cite nor discuss *SRAM*, another analogous case upon which the Special Master relied. In *SRAM*, the court certified 27 state classes of indirect-purchasers of Static Random Access Memory, or "SRAM," a small memory chip used in a vast array of electronics products. 264 F.R.D. at 605-06, 617-22. The SRAM market and product characteristics were significantly more complex than those that Defendants claim preclude certification here, and other facts supporting class certification here were not present in *SRAM*.[13]

---

[12] The materials Defendants claim they need are subject to a protective order in the *LCDs* case, which prohibits Plaintiffs from disclosing them to Defendants. Defendants could have moved for relief from the protective order in *LCDs*, or even moved to compel production here. They chose not to do so. Their complaints are therefore barred.

[13] For example, in *SRAM*, there were more finished products at issue (15 different categories of finished products in *SRAM* versus two here), defendants possessed a far smaller market share (60%-70% versus 90% here), and the SRAM component comprised a much smaller portion of the finished product cost than did CRT components here. *See* 264 F.R.D. at 605-06. Also, the CRT Defendants acknowledged in documents that pass-through occurred throughout the distribution channel. *See* § III.B., *supra.* No such documents were present in *SRAM*.

In sum, Defendants provide no basis for disturbing the Special Master's determination that *LCDs* and *SRAM* are analogous and that their reasoning applies here.  *See* Class R&R at 20 n.5; *see also* MTS R&R at 22 ("the *LCD* case is closely parallel to CRT in so many respects").

**D.    The Special Master Did Not Reduce Plaintiffs' Burden Under Rule 23(b)(3) by Virtue of Samsung SDI's Guilty Plea**

Before the Special Master, Defendants relied heavily on *GPUs* and *Flash Memory* to argue that Dr. Netz's methods here have been rejected by other judges in this district.  Plaintiffs responded that *LCDs* and *SRAM* are closer cases and should be followed, and that *GPUs* and *Flash Memory* are distinguishable on multiple bases (*see* Plaintiffs' Reply at 11-21, 21-23).  The Special Master found "this case more analogous to the *LCDs* and *SRAM* decisions," and "*GPU* and *Flash Memory* . . . distinguishable from the present case on a number of grounds."  *See* Class R&R at 20 n.5.  One of those grounds was that there were no guilty pleas or ongoing criminal investigations in those cases as there were in *LCDs*.  Defendants now claim that because the Special Master relied on this point to distinguish the cases, he applied a "lower than usual burden . . . for demonstrating common impact under Rule 23(b)(3)."  Class Obj. at 11.  This assertion is false.

First, nowhere in the Special Master's recitation of the legal standards did he state that Plaintiffs' burden was lightened by the guilty pleas and indictments in this case.  *See* Class R&R at 11-13, 19-21.  Defendants cite no such discussion.  Second, *SRAM* involved no guilty pleas or indictments, but the Special Master nonetheless found it analogous to this case.  Third, Plaintiffs presented multiple reasons for distinguishing *GPUs* and *Flash Memory* from *LCDs* and this case,[14] several of which the Special Master cited in his comparison of the four cases.  *See* Class R&R at 20 n.5.

Defendants' further assertion that "highly incriminating conspiracy evidence" in the form of over 4,200 cartel target prices "has nothing to do with . . . meet[ing Plaintiffs'] burden under

---

[14] *See* Plaintiffs' Reply (pp. 21-23); *see also* MTS R&R (pp. 20-22) (Special Master's meticulous review of those cases—which Defendants neither discuss nor challenge in their Class Obj. or MTS Obj.)  Unlike here, *GPUs* and *Flash Memory* involved customized products, customized negotiations and/or a few direct purchasers with tremendous bargaining power.  Also, in *LCDs* and here, Dr. Netz submitted different and more comprehensive studies presenting common proof of the direct overcharge and pass-through.

Rule 23(b)(3)" (Class Obj. at 11) is likewise specious.  Dr. Netz empirically analyzed thousands of cartel target prices generated from years of Glass Meeting notes by Defendants.  These analyses, as the Special Master found, supported Plaintiffs' showing that impact to direct purchasers may be addressed through common proof.  *See* Class R&R at 24-25, 33.  No such analyses were possible in *GPUs* or *Flash Memory* because similar incriminating evidence of cartel target pricing was absent.

### E.    The Special Master Applied the Correct Standard on Proof of Injury

"On a motion for class certification, the Court only evaluates whether the method by which plaintiffs propose to prove class-wide impact could prove such impact, not whether plaintiffs in fact can prove class-wide impact."  *SRAM*, 264 F.R.D. at 612 (quotations omitted).[15]  Indeed, "[c]lass certification is not precluded simply because a class may include persons who have not been injured by the defendant's conduct."  *Mims v. Stewart Title Guar. Co.*, 590 F.3d 298, 308 (5th Cir. 2009).  *See also Kohen v. Pac. Inv. Mgmt. Co.*, 571 F.3d 672, 677 (7th Cir. 2009) ("What is true is that a class will often include persons who have not been injured by the defendant's conduct…. Such a possibility or indeed inevitability does not preclude class certification. . .") (citations omitted), *cert. denied*, 559 U.S. 962 (2010); *DG v. Devaughn*, 594 F.3d 1188, 1201 (10th Cir. 2010) ("That a class possibly or even likely includes persons unharmed by a defendant's conduct should not preclude certification.") (citation omitted).[16]

---

[15] *See also Rubber Chemicals*, 232 F.R.D. at 353 (in showing predominantly common proof, "it is not necessary for Plaintiffs to show that every single class member was injured. . . ."); *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 326, 340 (E.D. Mich. 2001) ("To show impact is susceptible to class-wide proof, Plaintiffs are not required to show that the fact of injury actually exists for each class member.")

[16] *See also Yarger v. ING Bank, fsb*, 285 F.R.D. 308, 318 (D. Del. 2012) ("[T]he mere fact a potential class member may not have suffered injury as a result of a defendant's conduct is not a reason to deny class certification"); *In re Neurontin Antitrust Litig.*, MDL No. 1479, 2011 WL 286118, at *8 n.23 (D.N.J. Jan. 25, 2011) ( "[A] class will often include persons who have not been injured by the defendant's conduct . . . . Such a possibility or indeed inevitability does not preclude class certification.") (citing *Kohen*, 571 F.3d at 677).  The court in *In re Rail Freight Fuel Surcharge Antitrust Litig.*, No. 12-7085, ___ F.3d ___, 2013 WL 4038561, at *5 (D.C. Cir. Aug. 9, 2013) recently discussed whether the predominance requirement demands proof through common evidence that all class members suffered "some injury."  As detailed above, there is substantial authority establishing that common proof of injury to all class members is not required at class certification.  Even assuming, *arguendo*, that this standard applies, as explained below, Dr. Netz presented common evidence showing that all class members suffered injury.

1     Defendants argue that the Special Master erred by concluding "that it is not necessary for

2 the plaintiffs to establish that all, or even almost all, class members have suffered injury as a result

3 of the alleged violation."  Class Obj. at 10.  Defendants further argue that Dr. Netz admitted that

4 there are an "unknown" number of "uninjured class members within her own analyses."  *Id*.  These

5 arguments are wrong under the law and facts, and Defendants' objections should be overruled.

6     First, Defendants' assertion that Plaintiffs must "establish that . . . class members suffered

7 injury" is wrong because Plaintiffs need not prove their case at class certification.  *See Amgen*, 133

8 S.Ct. at 1194-95 (Rule 23(b)(3) requires a showing that questions common to class predominate,

9 not that merits questions will be answered in favor of the class).  Second, Plaintiffs need not

10 demonstrate that common proof injury may be shown to all class members.  Even Defendants state

11 that under the "controlling legal test," common proof that "nearly all" class members suffered

12 injury suffices.  *See* Class Obj. at 1-2.  Thus, the possibility that a class might include uninjured

13 class members would not be fatal.  *See Mims*, *Kohen*, *DG*, *et al.*, *supra*.  Defendants' cited cases do

14 not compel a contrary conclusion.[17]

---

[17] Defendants' cited cases involve novel legal theories and/or broad failures by plaintiffs to show common proof of class-wide impact.  *See, e.g., In re New Motor Vehicles Canadian Export Antitrust Litig.*, 522 F.3d 6, 27 (1st Cir. 2008) (class certification in a non-price fixing case denied due to, *inter alia*, "the novelty and complexity of the theories advanced and the gaps in the evidence proffered"); *Bell Atlantic Corp. v. AT&T Corp.*, 339 F.3d 294, 297-300 (5th Cir. 2003) (class certification denied in monopolization case involving alleged blocking of telephone caller identification data where alleged class-wide injury involved estimating business class members' labor savings per call); *Blades v. Monsanto Co.*, 400 F.3d 562, 574 (8th Cir. 2005) (unlike here, the plaintiffs did not present common proof that the conspiracy affected prices of all products sold to direct purchasers); *Kottaras v. Whole Foods Market, Inc.*, 281 F.R.D. 16, 22 (D.D.C. 2012) (merger case, distinguished by other courts for that reason); *Somers v. Apple, Inc.*, 258 F.R.D. 354, 361 (N.D. Cal. 2009) (monopolization case where, unlike here, plaintiffs' expert "proffered no specific economic model and ha[d] examined no set of data"); *Cal. v. Infineon Techs. AG*, No. 06-4333, 2008 WL 4155665, at *9 (N.D. Cal. Sept. 5, 2008) (unlike here, plaintiff's expert only described how his proposed models for proving impact would work in theory and not "*how* he actually proposes to apply any particular methodology to specific facts or data *in this case*") (emphases in original); *Gonzales v. Comcast Corp.*, No. 10-01010, 2012 WL 10621, at *19 (E.D. Cal. Jan. 3, 2012) (unlike here, plaintiffs did not present "an evidentiary method for showing causation and across-the-board impact"); *Allied Orthopedic Appliances, Inc. v. Tyco Healthcare Grp.*, 247 F.R.D. 156 (C.D. Cal. 2007) (monopolization case in which, unlike here, plaintiffs expert had not conducted "any meaningful market analysis" and "no examination of prices charged to class members"); *Butt v. Allegheny Pepsi-Cola Bottling Co.*, 116 F.R.D. 486, 492 (E.D. Va. 1987) (risk of non-injury stemmed from uncertainty that "each class member actually purchased on the basis of promotional-letter prices").

INDIRECT-PURCHASER PLAINTIFFS' RESPONSE TO DEFENDANTS' JOINT OBJECTIONS TO REPORT AND RECOMMENDATION REGARDING CLASS CERTIFICATION – MDL No. 1917

1    Third, even assuming *arguendo* that Dr. Netz's analyses must address and/or show injury

2    to all class members, that burden has been met here.  Dr. Netz repeatedly concluded that

3    ████████████████████████████████████████████████████████████████████████

4    ████████████████████████████████████[18]  Thus, while she did not need do so now, Dr. Netz

5    presented common proof establishing impact to all class members.

6        Defendants misrepresent the record by asserting that Dr. Netz admitted that her own data

7    shows uninjured class members.  Class Obj. at 10.  Dr. Netz admitted no such thing.  On the

8    contrary, she testified that ███████████████████████████████████████████████████

9    ███████████████████ (*see* Netz Depo. at 271:20-25) and expressly disputed Defendants'

10   assertion that there are uninjured class members (*see* Netz Depo. at 344:7-12).  Over two days of

11   deposition testimony, Dr. Netz repeatedly and unequivocally opined that █████████████████

12   ███████████████  *See id*; *see also id*. at 86:4-18 (testifying ██████████████████████);

13   92:15-93:12 (same); 272:14-18 (same).

14   **F.  Plaintiffs Presented Adequate Evidence of Common Proof of Damages**

15       "The rule which precludes the recovery of uncertain damages applies to such as are not the

16   certain result of the wrong, not to those damages which are definitely attributable to the wrong and

17   only uncertain in respect of their amount."  *Story Parchment Co. v. Paterson Parchment Paper*

18   *Co.*, 282 U.S. 555, 562 (1931).  "Because of the practical difficulties in calculating damages based

19   on an illusory 'but-for' world, courts do not require damages to be reduced to a mathematical

20   certainty.  Rather, courts require that damages be established as a matter of just and reasonable

21

22   _____

23   [18] *See, e.g.*, Netz Decl. at 71 (Dr. Netz concluding that ██████████████████████████████
     ████████████████████████████████

24   ████████████████████████) (emphases added); Netz Decl. at 104 (Dr. Netz concluding that Defendants'
     overcharges were passed through to consumers at a rate of at least 100%; and that ██████████████

25   ██████████████████████████████████████) (emphasis added); *see also* Class R&R at 24

26   (Special Master finding that Dr. Netz "showed that the anticompetitive harm cause by the cartel
     affected *all direct purchasers* . . .") (emphasis added); *id*. (Special Master finding that "Dr. Netz
     also assessed whether impact to direct purchasers could be addressed using proof that is common
     to *all class members*.  She determined that it could, and showed that the cartel *raised the entire*

27   *structure of CRT prices*.") (emphases added) (quotations omitted)

28

1  inference." *In re Chocolate Confectionary Antitrust Litig.*, 289 F.R.D. 200, 222 (M.D. Pa. 2012)

2  (quotations omitted).

3       "In price-fixing cases, '[p]laintiffs are not required to supply a precise damage formula at

4  the certification stage.'" *LCDs*, 267 F.R.D. at 606 (quoting *SRAM*, 2008 WL 4447592, at *6).

5  Indeed, courts "have never required a precise mathematical calculation of damages before deeming

6  a class worthy of certification." *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 535 (6th Cir.

7  2008), *cert. denied*, 129 S.Ct. 1673 (2009).[19]  Moreover, "damage calculations alone cannot defeat

8  certification. . . . '[T]he amount of damages is invariably an individual question and does not

9  defeat class action treatment.'" *Yokoyama v. Midland Nat. Life Ins. Co.*, 594 F.3d 1087, 1094 (9th

10  Cir. 2010) (quoting *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975)).

11       In *LCDs*, Dr. Netz described three types of regression models to establish that antitrust

12  impact to direct purchasers can be shown on a class-wide basis using common proof, including a

13  before-and-after approach.  267 F.R.D. at 602.  Dr. Netz did not perform a "but for" calculation of

14  the overcharge to direct purchasers of LCD panels at the class certification stage.  *See id.* (noting

15  that Dr. Netz "describes" the methods).  The *LCDs* court found that "plaintiffs have met their

16  burden to show that damages can be established using common proof."[20]  *Id.* at 606.  As the

17  Special Master determined (Class R&R at 36-38), Plaintiffs have done so here as well.

18       Dr. Netz has substantively described four widely-accepted economic models for measuring

19  the direct overcharge; identified the types of data required for each method; explained that the

20  needed data are or will be available; explained how the required data for implementing the

21

22

23  [19] *See also In re Terazosin Hydrochloride*, 220 F.R.D. 672, 698 (S.D. Fla. 2004) ("At the class
certification stage, therefore, Indirect-Purchaser Plaintiffs need only come forward with plausible
statistical or economic methodologies to demonstrate impact on a class-wide basis."); *In re
Cardizem*, 200 F.R.D. at 321 ("Plaintiffs do not need to supply a precise damage formula at the
certification stage of an antitrust action."); *In re Potash Antitrust Litig.*, 159 F.R.D. 682, 697 (D.
Minn. 1995) (same); *In re Online DVD Rental Antitrust Litig.*, No. M 09-2029 PJH, 2010 WL
5396064, at *11 (N.D. Cal. Dec. 23, 2010) (description of well-accepted antitrust damage
calculation methodologies held sufficient at class certification stage).

27  [20] Dr. Netz went on to implement her proposed methodologies for proving damages in *LCDs*. She
calculated the overcharge to direct purchasers and the pass-through rate to indirect purchasers to
arrive at a damages amount.  Defendants moved to decertify the class and to exclude Dr. Netz's
testimony under *Daubert*, raising many of the same arguments as here.  The *LCDs* court again

19

1    methods were common to all class members; and demonstrated that each model has been estimated

2    in situations similar to this case using real-world data similar to the data available here.  *See* §

3    III.C., *supra*.  Defendants falsely assert that Dr. Netz "has done nothing to determine whether the

4    data exists to make [her] . . . damages methods workable."  Class Obj. at 15.  On the contrary, Dr.

5    Netz described the available data in her report (*see* Netz Decl. at 87-89, 91, 93-95, 97, Ex. 13);

6    testified that she "assessed whether the data available would . . . be a reliable basis for [her]

7    studies," and concluded that "these are usable, reliable methods for quantifying . . . damages."

8    Netz Depo. at 248:18-249:19.  As the Special Master concluded, "Dr. Netz has offered a reliable

9    methodology to assess classwide damages using common proof."  Class R&R at 36.

10          Defendants' claim that the Supreme Court's recent ruling in *Comcast* requires that

11   Plaintiffs calculate damages at the class certification stage is wrong.  In *Comcast*, the plaintiffs

12   moved to certify a class under Rule 23(b)(3), proposing four separate and alternative theories of

13   antitrust impact.  In granting class certification, "[t]he [d]istrict [c]ourt accepted [one] theory of

14   antitrust impact as capable of classwide proof and rejected the rest."  133 S.Ct. at 1431.  Plaintiffs'

15   expert, however, presented a damage model that addressed impact based on all four impact

16   theories.  He "did not isolate damages resulting from any one theory of antitrust impact."  *Id.*  On

17   appeal, the defendants argued that the model's failure to assess impact and damages resulting only

18   from the single theory of impact that was accepted by the court precluded certification.  *Id.*  The

19   Supreme Court agreed, reasoning that the expert's economic model improperly measured damages

20   stemming from liability theories and antitrust injuries that were no longer in the case.  *Id*. at 1434.

21          Here, as the Special Master found, Plaintiffs do not assert multiple, independent theories of

22   antitrust impact as did the plaintiffs in *Comcast*.  Class R&R at 37.  Rather, Plaintiffs allege only

23   one theory of anticompetitive harm—imposition of a cartel overcharge on direct purchasers of

24   CRTs that was passed through the distribution chain to consumers, causing them antitrust injury.

25

26

27

28   rejected the defendants' arguments and found that Dr. Netz could present her opinions to a jury.
     *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2012 WL 555090 (N.D. Cal. Feb. 21, 2012).

It is undisputed that Dr. Netz's analyses of the CRT market and distribution channels are tied to this single theory of antitrust liability and impact.  As a result, *Comcast* does not apply here.[21]

Further, contrary to Defendants' assertions, multiple courts have held that *Comcast* involved a straightforward application of class certification principles and effected no change to Rule 23 standards.  For example, the Sixth Circuit recently noted that *Comcast* is "premised on existing class-action jurisprudence;" that the *Comcast* majority "concludes that the case 'turns on the straightforward application of class certification principles;'" and that "the dissent concurs that 'the opinion breaks no new ground on the standard for certifying a class action under Federal Rule of Civil Procedure 23(b)(3).'"  *In re Whirlpool Corp. Front–Loading Washer Prods. Liability Litig.*, No. 10-4188, ___ F.3d ___, 2013 WL 3746205, at *18 (6th Cir. July 18, 2013).[22]  Similarly, the Ninth Circuit recently reiterated that "the presence of individualized damages cannot, by itself, defeat class certification under Rule 23(b)(3)," and narrowly described *Comcast* as requiring plaintiffs "to show that their damages stemmed from the defendant's actions that created the legal

---

[21] The recent *Rail Freight* decision is similarly distinguishable.  In *Rail Freight*, the district court had held that the plaintiffs' expert's damages model was an integral part of the plaintiffs' proof of class-wide impact.  2013 WL 4038561, at *5-6.  The Court of Appeals reversed class certification on grounds that the model was flawed because it showed injury to non-class members that the expert conceded were not injured.  *Id.*  Here, Defendants do not object to Dr. Netz's opinions on impact to direct purchasers.  Also, unlike the plaintiffs' expert in *Rail Freight*, Dr. Netz's opinions on impact to all indirect purchaser class members—opinions which the Special Master scrutinized and upheld—do not depend upon the implementation of her proposed damages models. Dr. Netz opined regarding common proof of harm to all class members based on other record evidence and her many economic studies.  Finally, *Rail Freight* acknowledged that, "at the certification stage," plaintiffs need not present common proof of the "precise damage amount incurred by each class member."  *Id.* at *5.

[22] *See also In re Motor Fuel Temperature Sales Practices Litig.*, MDL No. 1840, 2013 WL 1397125, at *18 (D. Kan. Apr. 5, 2013) (noting that "the possibility that individual issues may predominate the issue of damages . . . does not defeat class certification" and citing Ginsburg and Breyer dissent from *Comcast*); *Harris v. comScore, Inc.*, No. 11 C 5807, 2013 WL 1339262, at *10 n.9 (N.D. Ill. Apr. 2, 2013) (*Comcast* court's "assumption" that "Rule 23(b)(3) requires that damages must be measurable based on a common methodology applicable to the entire class . . . is merely *dicta* and does not bind this court"); *In re High-Tech Employee Antitrust Litig.*, 289 F.R.D. 555, 582 (N.D. Cal. 2013) (holding that *Comcast* did not alter the "universal" rule that "individual damages calculations do not preclude class certification under Rule 23(b)(3)").  While the plaintiffs' expert in *In re High- Tech* prepared a model that estimated aggregate damages to the classes at issue, the court did not hold that submission of a damages model was a prerequisite to class certification.  *Id.*  Indeed, the court expressly embraced the *Comcast* dissent's statements that *Comcast* (1) "breaks no new ground on the standard of certifying a class action under [Rule 23(b)(3)];" and (2) "should not be read to require . . . that damages attributable to a class-wide injury be measurable on a class wide basis."  *Id.*; quotations omitted.

---

21

1   liability."  *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013).  Here, there is no

2   dispute that Plaintiffs' damages stem from Defendants' CRTs cartel.[23]

3        **G.**    **The Special Master Properly Determined That Dr. Netz's Analyses Supported Class Certification**

4

5        The Special Master properly determined that Dr. Netz's analyses adequately showed that

6   pass-through to class members may be shown on a common and formulaic basis.  Class R&R at

7   38.  Defendants question Dr. Netz's use of averages in her econometric analyses of cost and price

8   data; challenge the representativeness of her data samples; and claim that certain assumptions

9   made by Dr. Netz were unsupported in the record.  Class Obj. at 16-23.  None of these objections

10  has merit.  The Special Master thoroughly analyzed and rejected each of these challenges.  *See*

11  Class R&R at 30-31 (use of averages), 31-32 (data samples); MTS R&R at 13, 17 (assumptions).

12       **Use of Averages**.  Here, Defendants repeat their argument that Dr. Netz purportedly

13  conceded that her methods of estimating pass-through fail to account for allegedly uninjured class

14  members.  Class Obj. at 16-17.  But as shown above (§ IV.E.), Dr. Netz made no such admission;

15  rather, she opined that her pass-through methodologies address impact to all class members.

16       Defendants next object to the Special Master's reliance on *Gordon v. Microsoft Corp*.  *See*

17  Class Obj. at 17-18.  But defendant Microsoft—like Defendants here—sought to preclude class

18  certification on the grounds that "some intermediate distributors did not automatically raise their

19  prices in response to cost increases . . . [and] there may be class members who were damaged little,

20  if at all, by monopoly overcharges."  No. MC 00-5994, 2003 WL 23105550, at *2 (Minn. D. Ct.

21  Dec. 15, 2003).  The court rejected that argument, reasoning that, *inter alia*, "Microsoft can make

22  that point at trial" (*id*.), and that "average pass through rates appear reasonable and even necessary

23

24  [23] Defendants' reliance on *In re Montano*, 493 B.R. 852 (D.N.M. 2013) is misplaced.  *Montano*
    involved a motion to reconsider a decertification order that was based on *Dukes* and was entered
25  prior to the *Comcast* decision.  The decertification was upheld because, *inter alia*, class members
    could not be ascertained or identified; plaintiffs conceded that a substantial portion of the class had
26  no viable claims or damages; plaintiffs failed to present class-wide proof of injury; and, plaintiffs
    presented no methodologies pertaining to the calculation of damages whatsoever.  *Id.* at 857-60.
27  *Roach v. T.L. Cannon Corp.*, No. 3:10-CV-0591, 2013 WL 1316452, at *3 (N.D.N.Y. Mar. 29,
    2013) is similarly inapposite because the plaintiffs offered no model of damages "susceptible of
28  measurement across the entire class."  Here, Plaintiffs and Dr. Netz have done so.

1    to prove damages here." *Id*. at *3.  The *LCDs* court agreed with such analysis.  *See* 267 F.R.D. at

2    603-05.  Finally, the Special Master recognized that, in any event, Dr. Netz's analysis accounted

3    for the impact of potential variations in the chain of distribution.  *See* Class R&R at 30.

4         Defendants also cite *GPUs* and *Flash Memory* for the proposition that Dr. Netz's use of

5    averages and aggregation here was improper.  As detailed above, those cases are distinguishable.

6    *See* § IV.D.  Defendants would require Plaintiffs to meticulously trace Defendants' price-fixing

7    overcharge on a transaction-by-transaction basis through each level of the chain of distribution and

8    establish the overcharge to each class member.  But the same arguments were raised and rejected

9    in *LCDs*.[24]  Neither antitrust law nor well-accepted economic methodologies require such tracing.

10   "Plaintiffs need not identify the overcharge on each and every panel sold to direct purchasers, and

11   they need not trace that specific overcharge through the manufacturing and retail chains to the

12   ultimate purchaser."[25]  Given the highly analogous facts here, there is no reason for this Court to

13   depart from the *LCDs* court's analysis and conclusion.

14        Moreover, Defendants' objections cite no economic publication, study or other academic

15   source articulating a requirement that pass-through of an overcharge must be meticulously traced

16   to an end consumer in this fashion.  Dr. Netz, in contrast, cites multiple economic publications and

17   studies supporting her pass-through methodologies.  *See* Netz Decl. at 98-99 nn.303-304, 102

18   n.314.  In sum, Defendants seek to impose a standard on Plaintiffs that is not applied by

19   economists and econometricians who examine pass-through in non-litigation contexts.  As such, it

20   would be improper and unwarranted to apply it here.[26]

21

22   [24] *See* 267 F.R.D. at 605 (Judge Illston distinguishing *GPUs* on multiple grounds); 2012 WL
     555090, at *9 (rejecting Defendants' reliance on *Flash Memory* as a basis for excluding Dr. Netz's
23   opinions).

     [25] *Id*. at *4; *see also id*. at *3, *9 (holding that plaintiffs "may establish pass-through by showing
24   that companies in the manufacturing and distribution chains passed along cost increases in general
     [and need not establish] . . . how every intermediary treated every LCD panel or product.").
25
     [26] Defendants' review of Dr. Willig's ███ analysis (Class Obj. at 19) is unpersuasive.  First,
26   while Defendants claim that Dr. Willig used transactional data and Dr. Netz did not, Dr. Willig
     expressly states in his report that he used "the same data as Dr. Netz for ███."  Willig Decl. at 55
27   n.116.  Second, Defendants assert that Dr. Willig's methodologies using averaging are preferred
     over those of Dr. Netz, but Dr. Netz amply demonstrated that they are *not*.  *See* Netz Rebuttal
28   Decl. § X.B.1 (describing multiple, broad methodological flaws in the ███ pass-through
     regression analysis performed by Dr. Willig).

INDIRECT-PURCHASER PLAINTIFFS' RESPONSE TO DEFENDANTS' JOINT OBJECTIONS TO
REPORT AND RECOMMENDATION REGARDING CLASS CERTIFICATION – MDL No. 1917

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Representative Data Samples**.  Defendants' objection to the size and representativeness of Dr. Netz's data samples is dispensed with easily.  As the Special Master recognized, Dr. Netz performed pass-through studies of the entire CRT distribution channel, studies that calculated pass-through for each level therein, and studies for all firms that produced usable data.  Class R&R at 31-32; *see also* Netz Decl. at 97-98; Netz Rebuttal Decl. § X.A.2.  Dr. Netz utilized data from multiple entities at each level of the CRT distribution channel, including tube distributors, CRT product makers, CRT product distributors and CRT product resellers.  *See* § III.B., *supra*.  Dr. Netz's pass-through studies include over 40 data sets from 29 different entities representing over 131 million individual CRTs, and cover transactions from 1994 to 2011.  *Id.*

The consistency of the results from Dr. Netz's 47 pass-through studies— ███████████ ████████████████████████████—corroborates the representativeness of the data she used.  When Defendants challenged Dr. Netz's failure to use certain retailers' data, she obtained the data and ran additional regression analyses; the results generated were comparable to the studies she had already performed.  *See* Class R&R at 32; Netz Rebuttal Decl. § X.A.2.  In their objections, Defendants cite no analyses of alternative data sets that raise questions about the representativeness of Dr. Netz's data.  While Plaintiffs have shown that Dr. Netz's data samples are representative and robust, Defendants have made no contrary showing on this record.

**Allegedly Unsupported Assumptions**.  Defendants claim that Dr. Netz opined that the Defendants' cartel price increases must be industry-wide, significant and permanent in order for pass-through to occur; that there is no support in the record for those facts; and that therefore the Special Master erred in recommending certification.  This argument should also be rejected.[27]

As explained more fully in Plaintiffs' response to the MTS Obj. (§ IV.C.1.), the excerpts of Dr. Netz's testimony quoted by Defendants (Class Obj. at 21) are taken out of context; they are

---

[27] Defendants did not raise this argument in their opposition to class certification.  They raised it for the first time in their *reply* on their motion to strike Dr. Netz's testimony.  *See* Defendants' MTS Reply at 3-5.  The Special Master thus addressed these issues only in the MTS R&R (pp. 17-18).  Because Defendants failed to raise this argument, the Court should not consider it here.  *See World Triathalon Corp. v. Dunbar*, 539 F. Supp. 2d 1270, 1278 n.13 (D. Haw. 2008) (new arguments may not be raised for the first time in an objection to a Special Master's Report), *aff'd in part, appeal dismissed in part*, 320 Fed. Appx. 778 (9th Cir. 2009).

24

INDIRECT-PURCHASER PLAINTIFFS' RESPONSE TO DEFENDANTS' JOINT OBJECTIONS TO
REPORT AND RECOMMENDATION REGARDING CLASS CERTIFICATION – MDL No. 1917

1    misleading.  They pertain to a discussion in which Dr. Netz was explaining the theoretical effect of

2    "competition" on pass-through—that in a competitive distribution chain, economic theory implies

3    that cartel overcharges, which are typically "significant, permanent and industry-wide," will be

4    passed through.  Dr. Netz did not rely on a direct examination of those conditions to evaluate

5    whether the overcharge was passed through the distribution chain.

6        Instead, Dr. Netz *evaluated the record and conducted empirical studies* to determine

7    whether pass-through occurred.  Her 47 pass-through studies show consistent pass-through results

8    of 100 percent or more throughout the distribution chain.  Dr. Netz also analyzed Defendants'

9    documents acknowledging that pass-through occurred, and analyzed the competitiveness of the

10   CRT distribution channel, both of which supported pass-through as well.  *See* Netz Decl. § VIII.C.

11       Regarding the industry-wide criterion, Defendants are also wrong that Dr. Netz failed to

12   account for Sony.  Dr. Netz testified that ███████████████████████████████████████

13   █████████████████████████████████████████████████████████████████████████

14   ████████████████████████████████████████████████████████████            *See*

15   Netz Depo. at 279:19-280:16, 281:4-20.  █████████████████████████████████████

16   ███████████████████    (*see* Netz Decl. Ex. 1), it is clear that Sony did not eliminate the cartel's

17   ability to impose inflated prices on the CRT market.  As for whether the cost changes were

18   significant and permanent, as the Special Master found (MTS R&R at 17-18), they find support in

19   the long duration of the cartel and risks associated with such felonious activities.

20   **V.    CONCLUSION**

21       For the foregoing reasons, and for the additional reasons set forth in Plaintiffs' response to

22   the MTS Obj. (§ IV.C.3. (averages), § IV.C.2 (data sample), § IV.C.1. (assumptions)), Defendants'

23   objections should be overruled, no remand is warranted, and there is no basis for remanding to

24   Special Master Legge.

25

26   DATED: August 21, 2013                Respectfully submitted,

27                                              */s/ Mario N. Alioto*
                                              Mario N. Alioto

28

Mario N. Alioto (56433)
Lauren C. Capurro (241151)
**TRUMP, ALIOTO, TRUMP & PRESCOTT LLP**
2280 Union Street
San Francisco, CA 94123
Telephone: (415) 563-7200
Facsimile:   (415) 346-0679
Email: malioto@tatp.com
Email: laurenrussell@tatp.com

*Interim Lead Counsel for*
*Indirect-Purchaser Plaintiffs*

Francis O. Scarpulla (41059)
Craig C. Corbitt (83251)
Christopher T. Micheletti (136446)
Judith A. Zahid (215418)
Qianwei Fu (242669)
Demetrius X. Lambrinos (246027)
**ZELLE HOFMANN VOELBEL & MASON LLP**
44 Montgomery Street, Suite 3400
San Francisco, CA 94104
Telephone: (415) 693-0700
Facsimile:   (415) 693-0770
Email: fscarpulla@zelle.com
Email: ccorbitt@zelle.com

Sylvie K. Kern (111751)
**KAG LAW GROUP**
P.O. Box 210135
San Francisco, CA 94121
Telephone: (415) 221-5763
Email: skern@antitrustglobal.com

Joseph M. Patane
**LAW OFFICES OF JOSEPH M. PATANE**
2280 Union Street
San Francisco, CA 94123
Telephone: (415) 563-7200
Facsimile: (415) 346-0679
jpatane@tatp.com

Lawrence G. Papale
**LAW OFFICES OF LAWRENCE G. PAPALE**
1308 Main Street #117
St. Helena, CA 94574
Telephone: (707) 963-1704
Facsimile: (707) 963-0706
lgpapale@papalelaw.com

Christopher Lovell
Craig Essenmacher
Keith Essenmacher
Merrick S. Rayle
**LOVELL STEWART HALEBIAN JACOBSON LLP**
61 Broadway Suite 501
New York, NY 10006
clovell@lshllp.com
cessenmacher@lshllp.com

Daniel E. Birkhaeuser
Jennifer S. Rosenberg
**BRAMSON, PLUTZIK, MAHLER & BIRKHAEUSER, LLP**
2125 Oak Grove Road, Suite 120
Walnut Creek, CA 94598
dbirkhaeuser@bramsonplutzik.com
jrosenberg@bramsonplutzik.com

INDIRECT-PURCHASER PLAINTIFFS' RESPONSE TO DEFENDANTS' JOINT OBJECTIONS TO
REPORT AND RECOMMENDATION REGARDING CLASS CERTIFICATION – MDL No. 1917

Marvin A. Miller
Lori A. Fanning
Matthew E. Van Tine
**MILLER LAW LLC**
115 South LaSalle Street, Suite 2910
Chicago, IL 60603
mmiller@millerlawllc.com
lfanning@millerlawllc.com

Paul Novak
Peter Safirstein
Elizabeth McKenna
**MILBERG LLP**
One Pennsylvania Plaza
49th Floor
New York, NY 10119
Telephone: (212) 594-5300
Facsimile: (212) 868-1229
pnovak@milberg.com

Sherman Kassof
**LAW OFFICES OF SHERMAN KASSOF**
954 Risa Road, Suite B
Lafayette, CA 94549
Telephone: (510) 652 2554
Facsimile: (510) 652 9308
heevay@att.net

Jennie Lee Anderson
**ANDRUS ANDERSON LLP**
155 Montgomery Street, 9th Floor
San Francisco, CA 94104
Telephone: (415) 986-1400
Facsimile: (415) 986-1474
jennie@andrusanderson.com

Daniel Hume
Robert Gralewski
**KIRBY McINERNEY LLP**
825 Third Avenue, 16th Floor
New York, NY 10022
Telephone: (212) 317-2300
dhume@kmllp.com

David Boies
Timothy Battin
Nathan Cihlar
**STRAUS & BOIES, LLP**
4041 University Drive, Fifth Floor
Fairfax, VA 22030
dboies@straus-boies.com
tbattin@straus-boies.com
ncihlar@straus-boies.com

Seymour J. Mansfield
Jean B. Roth
Charles Horowitz
**MANSFIELD, TANICK & COHEN, P.A.**
1700 U.S. Bank Plaza
220 South Sixth Street
Minneapolis, MN  55402
Telephone: (612) 339-4295
Facsimile: (612) 339-3161
smansfield@mansfieldtanick.com

Robert Gerard
**GERARD & OSUCH, LLP**
2840 South Jones Blvd.
Building D, Unit 4
Las Vegas, NV 89146
Telephone: (702) 251-0093
rgerard@gerardlaw.com

Michael G. Simon
M. Eric Frankovitch
**FRANKOVITCH, ANETAKIS, COLANTONIO & SIMON**
337 Penco Road
Weirton, WV  26062
Telephone: (304) 723-4400
Facsimile: (304) 723-5892
msimon@facslaw.com

Rodney Ray
**FORD & RAY**
301 Fifth Street South, Suite C
P.O. Box 1018
Columbus, MS 39703
Telephone: (662) 329-0110
Facsimile: (662) 329-3522
rray@fordraylaw.com

27

Robert G. Methvin, Jr.
Philip W. McCallum
Matt Stephens
**McCALLUM, METHVIN &
TERRELL, P.C.**
2201 Arlington Avenue South
Birmingham, AL 35305
Telephone: (205) 939-0199
Facsimile: (205) 939-0399
Rgm@mmlaw.net
pwm@mmlaw.net
rem@mmlaw.net

Joel Smith
**WILLIAMS, POTTHOFF, WILLIAMS
& SMITH**
125 South Orange Avenue
Eufaula, AL 36027
Telephone: (334) 687-5834
Facsimile: (334) 687-5722
joelpsmith@bellsouth.net

Christy Crow
**JINKS, CROW & DICKSON, P.C.**
P.O. Box 350
219 Prairie Street N.
Union Springs, AL 36089
Telephone: (334) 738-4225
Facsimile: (334) 738-4229
cdc@jinkslaw.com

Brent Irby
Eric Hoagland
**McCALLUM, HOAGLAND, COOK &
IRBY, LLP**
905 Montgomery Street, Suite 201
Vestavia Hills, AL 35216
birby@mhcilaw.com
ehoagland@mhcilaw.com

Chris Cantrell
Kit Belt
**BELT LAW FIRM PC**
Lakeshore Park Plaza, Suite 208
2204 Lakeshore Drive
Birmingham, AL 35209
keithb@beltlawfirm.com
chris@beltlawfirm.com

Jeff Crabtree
**LAW OFFICES OF JEFF CRABTREE**
820 Mililani Street, Suite 701
Honolulu, HI 96813
lawyer@consumerlaw.com

Richard F. Horsley
1 Metroplex Drive, Suite 280
Birmingham, AL 35209-6895
rfhala@cs.com

S. Randall Hood
William A. McKinnon
**McGOWAN HOOD & FELDER, LLC**
1659 Healthcare Drive
Rock Hill, SC 29732

Daniel R. Karon
Mark S. Goldman
Brian D. Penny
**GOLDMAN SCARLATO & KARON,
P.C.**
55 Public Square, Suite 1500
Cleveland, OH 44113
karon@gsk-law.com

Krishna B. Narine
**LAW OFFICE OF KRISHNA B.
NARINE**
7839 Montgomery Avenue
Elkins Park, PA 19027
knarine@kbnlaw.com

John G. Felder, Jr.
**McGOWAN HOOD & FELDER, LLC**
1405 Calhoun Street
Columbia, SC 29201

Donna F. Solen
**THE MASON LAW FIRM, LLP**
1225 19th Street, N.W., Suite 500
Washington, DC 20036
dsolen@masonlawdc.com

INDIRECT-PURCHASER PLAINTIFFS' RESPONSE TO DEFENDANTS' JOINT OBJECTIONS TO
REPORT AND RECOMMENDATION REGARDING CLASS CERTIFICATION – MDL No. 1917

| | |
|---|---|
| Isaac L. Diel | Robert J. Pohlman |
| **SHARP McQUEEN** | **RYLEY CARLOCK & APPLEWHITE** |
| 135 Oak Street | One North Central Avenue, Suite 1200 |
| Bonner Springs, KS 66012 | Phoenix, AZ 85004-4417 |
| dslawkc@aol.com | rpohlman@rcalaw.com |
| | |
| Mary G. Kirkpatrick | Bruce Mulkey |
| **KIRKPATRICK &** | **THE MULKEY ATTORNEYS GROUP,** |
| **GOLDSBOROUGH, PLLC** | **P.A.** |
| Lakewood Commons | 1039 W. Walnut, Suite 3 |
| 1233 Shelburne Road, Suite E-1 | Rogers, AR 72756 |
| South Burlington, VT 05401 | bruce@mulkeylaw.com |
| mkirk@vtlawfirm.com | |
| | |
| Charles M. Kester | Terry R. Saunders |
| **THE KESTER LAW FIRM** | Thomas A. Doyle |
| P.O. Box 184 | **SAUNDERS & DOYLE** |
| Fayetteville, AR 72702-0184 | 20 South Clark Street, Suite 1720 |
| cmkester@nwark.com | Chicago, IL 60603 |
| | trsaunders@saundersdoyle.com |
| | tadoyle@saundersdoyle.com |
| | |
| Joel Flom | James H. McManis |
| **JEFFRIES, OLSON & FLOM, P.A.** | Marwa Elzankaly |
| 1202 27th Street South | **McMANIS FAULKNER & MORGAN** |
| Fargo, ND 58103 | A Professional Corporation |
| Telephone: (701) 280-2300 | 50 W. Fernando Street, 10th Floor |
| Facsimile: (701) 280-1800 | San Jose, CA 95113 |
| joel@jeffrieslaw.com | jmcmanis@mfmlaw.com |
| | melzankaly@mfmlaw.com |
| | |
| Susan G. Kupfer | Christopher P. Welsh |
| **GLANCY BINKOW & GOLDBERG,** | **WELSH & WELSH, PC, LLO** |
| **LLP** | 9290 West Dodge Road |
| One Embarcadero Center, Suite 760 | 100 The Mark |
| San Francisco, CA 94111 | Omaha, NE 68114 |
| Telephone: (415) 972-8160 | Telephone: (402) 384-8160 |
| Facsimile: (415) 972-8166 | Facsimile: (402) 384-8211 |
| skupfer@glancylaw.com | cwelsh@welsh-law.com |
| | |
| Kenneth L. Valinoti | David Freedman |
| **VALINOTI & DITO LLP** | Joseph Goldberg |
| 180 Montgomery Street, Suite 940 | **FREEDMAN, BOYD, HOLLANDER,** |
| San Francisco, CA 94104 | **GOLDBERG & IVES, PA** |
| Telephone: (415) 986-1338 | 20 First Plaza, Suite 700 |
| Facsimile: (415) 986-1231 | Albuquerque, NM 87102 |
| kvalinoti@valinoti-dito.com | Telephone: (505) 842-9960 |
| | Facsimile: (505) 842-0761 |
| | daf@fbdlaw.com |

INDIRECT-PURCHASER PLAINTIFFS' RESPONSE TO DEFENDANTS' JOINT OBJECTIONS TO
REPORT AND RECOMMENDATION REGARDING CLASS CERTIFICATION – MDL No. 1917

1 | Eric J. Pickar
**BANGS, McCULLEN, BUTLER,**
2 | **FOYE & SIMMONS, LLP**
333 West Boulevard, Suite 400
3 | P.O. Box 2670
Rapid City, SD 57709-2670
4 | Telephone: (605) 343-1040
epickar@bangsmccullen.com

Frank Balint
**BONNETT, FAIRBOURN, FRIEDMAN**
**& BALINT, P.C.**
2901 North Central Avenue, Suite 1000
Phoenix, AZ 85012-3311
Telephone: (602) 274-1100
Facsimile: (602) 274-1199
fbalint@bffb.com

6 | Jeffrey Bartos
**GUERRIERI, EDMOND, CLAYMAN**
7 | **& BARTOS PC**
1625 Massachusetts Ave., N.W.
Suite 700
8 | Washington, DC 20036
Telephone: (202) 624-7400
9 | jbartos@geclaw.com

Guri Ademi
Shpetim Ademi
**ADEMI & O'REILLY, LLP**
3620 East Layton Ave.
Cudahy, WI 53110
Telephone: (414) 482-8000
Facsimile: (414) 482-8001
gademi@ademilaw.com

10 | Josef D. Cooper
Tracy D. Kirkham
11 | **COOPER & KIRKHAM, P.C.**
357 Tehama Street, Second Floor
12 | San Francisco, CA 94103
Telephone: (415) 788-3030
13 | Facsimile: (415) 882-7040
jdc@coopkirk.com

James Wyatt
**WYATT & BLAKE, LLP**
435 East Morehead Street
Charlotte, NC 28202-2609
Telephone: (704) 331-0767
Facsimile: (704) 331-0773
JWyatt@wyattlaw.net

15 | Robert Bonsignore
**BONSIGNORE AND BREWER**
16 | 193 Plummer Hill Road
Belmont, NH 03220
Telephone: (781) 350-0000
17 | rbonsignore@class-actions.us

Robert Green
**GREEN & NOBLIN P.C.**
700 Larkspur Landing Circle
Suite 275
Larkspur, CA 94939
Telephone: (415) 477-6700
Facsimile: (415) 477-6710
rsg@classcounsel.com

19 | W. Timothy Needham
**JANSSEN, MALLOY & NEEDHAM**
20 | **LLP**
730 5th Street
21 | Eureka, CA 95501
Telephone: (707) 445-2071
22 | Facsimile; (707) 445-8305
tneedham@janssenlaw.com

28 | 3248735v3

INDIRECT-PURCHASER PLAINTIFFS' RESPONSE TO DEFENDANTS' JOINT OBJECTIONS TO
REPORT AND RECOMMENDATION REGARDING CLASS CERTIFICATION – MDL No. 1917