**SheppardMullin**

Sheppard, Mullin, Richter & Hampton LLP
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
415.434.9100 main
415.434.3947 fax
www.sheppardmullin.com

Writer's Direct Line: 415-774-3294
jmcginnis@sheppardmullin.com

September 9, 2013

Our File Number: 08Z8-134298

*VIA ECF and HAND DELIVERY*

The Honorable Samuel Conti
Senior United States District Judge
United States District Court
Northern District of California
Courtroom No. 1, 17th Fl.
450 Golden Gate Avenue
San Francisco, CA 94102

Re:   *In re: Cathode Ray Tube (CRT) Antitrust Litigation*
        Master File No. 07-5944 SC; MDL No. 1917

Dear Judge Conti:

I write on behalf of the defendants in order to address the former Special Master's recent recommendation concerning the parties' scheduling stipulation.[1]  As Judge Legge reported, the stipulation was the product of discussion and unanimity among all of the parties: defendants, direct purchasers; indirect purchasers; and 24 direct action plaintiffs that have 17 cases pending in Your Honor's MDL proceedings.  Our belief is that an explanation of the reasoning behind the stipulation will assist the Court in evaluating this proposal.  We recognize that the trial date has been continued once before, with other attendant scheduling changes, and this stipulation will therefore be scrutinized very closely.

From the start, these cases have presented virtually every imaginable complication:  parallel criminal proceedings; multi-district proceedings; a nearly two-year long stay obtained by the government; parallel civil investigations by states attorneys general; direct purchaser, indirect purchaser and direct action cases; electronic discovery; foreign document discovery; foreign depositions; parallel state court litigation brought by state attorneys general, and two class certification proceedings.  Dell and Sharp filed new direct action cases earlier this year.

---

[1] The following entities are not defendants in the IPP or DPP actions, have not participated in discovery to date, are opposing motions to amend certain DAP complaints and/or contesting personal jurisdiction, and therefore do not join this letter:  Thomson S.A., Thomson Consumer, Mitsubishi Electric Corporation, Mitsubishi Digital Electronics America, Inc., and Mitsubishi Electric US, Inc. (f/k/a Mitsubishi Electric and Electronics, USA, Inc.).  In addition, on August 1, 2013, Special Master Legge entered an Order [Dkt. No. 1820] staying discovery against Thomson Consumer.

**SheppardMullin**

Hon. Samuel Conti
September 9, 2013
Page 2

To date, the parties have produced over 5 million documents from the U.S. and abroad, conducted 90 depositions, and issued nearly 70 third party subpoenas. The reason for this amount of discovery is that the facts are complicated. Cathode ray tubes comprise two different products: CDTs for computer monitors and CPTs for color televisions. These products vary in size and features, and their markets have changed over time. Liability, or the extent of liability, is of course in issue. The parties disagree as to whether competitor contacts resulted in overcharges and whether alleged overcharges for one product or size of product affected another. The parties disagree on the critical question of what sales should be counted for U.S. jurisdiction and potential damages. The events in issue in these cases took place over a 12-year period, and the parties disagree as to which contacts or meetings during that time may have affected what products, in which geographic markets and for how long. In order to resolve these questions, among others, the markets are being studied intensively both by the lawyers through depositions and document discovery, and by expert economists. In short, these cases implicate virtually the entire history of the cathode ray tube markets since the mid 1990s, as well as the markets for the consumer finished products in which they were used.

The size of this task is such that the discovery is not completed by any of the parties. Much of the remaining discovery pertains to issues that the experts are analyzing. To cite just one example, these cases involve both direct and indirect claims, not only in the class actions but also in some of the direct action cases. The parties need information from all of the levels of distribution and in different product markets to analyze whether alleged overcharges were passed on to the claimants. That is why there have been so many third party subpoenas, among other discovery focused on those issues.

Indeed, the expert work here will be a frankly monumental task for the experts and the lawyers. The tasks would be difficult enough if only direct and indirect purchaser class actions were involved. But there are also 17 direct action complaints of various kinds. Typically, all of the 24 direct action plaintiffs need to have a report, or sections of a report, in order to show how they were impacted and the extent of any overcharges. Even if some of the claims are grouped for analysis by a smaller group of experts, the number of expert reports will be large. All of the parties can be expected to try to streamline and reduce the number and length of the reports, but the magnitude of the work will remain considerable under any circumstances.

Putting aside the necessity for preparing reports for trial, these reports are essential for the settlement process. Sometimes cases can be settled without them, but when large sums of money are involved in complex circumstances, all of the clients – both plaintiffs and defendants – want to see and evaluate exactly how the other side analyzes damages and how strong their arguments are. For that reason, among others, the parties are seeking more time to prepare their reports. In the end, no party really wants even the other side's expert to be rushed in their analysis. If cases cannot quickly be settled, much of the time in any mediation is occupied by damages analysis and all sides want to have the time they need to prepare their arguments.

**SheppardMullin**

Hon. Samuel Conti
September 9, 2013
Page 3

In the LCD cases – a constellation of parties and claims very similar to what we have here – the parties designated over 30 experts who submitted 70 reports totaling over 7000 pages of analysis. The number of reports was a function of both the number of parties and the opening, opposition and rebuttal report process. The case at bar includes many of the same law firms on both sides. No doubt all of the lawyers are trying to advance the state of the art and streamline the process for Your Honor's Court, but we still expect that the challenge will be qualitatively similar even if we are successful in reducing the quantity of material. The extended schedule for submitting expert reports is a critical part of this scheduling proposal.

While the parties have sometimes disagreed over the amount of time a given task should take, we do not believe that any party contends that another has delayed simply for the sake of delay. All of the parties are proceeding in good faith with a common desire to resolve the cases. As mentioned in several of the individual statements, there are active mediation processes underway in the direct purchaser class action with former Chief Judge Vaughn R. Walker.

To date, the direct action plaintiffs and the defendants have felt it best to keep the cases on the same schedule, reserving for a later time the issue of how a trial or trials could most efficiently be conducted. While we still have that same opinion, decoupling those cases from the class actions would ease the crush of expert work and motions that the current schedule would cause. The direct action cases were filed several years after the class complaints, including one case filed as recently as March, 2013, and none of them have been answered yet in light of the motion practice recently concluded by Your Honor's Order of August 21, 2013.

We appreciate the time that Judge Legge and the Court have taken to manage this complicated MDL proceeding, and we understand the need for closure and resolution as well as the necessity to make the Court available for other litigants. At the same time, we respectfully submit that we have done our best to present a schedule that acknowledges all of the interests involved in this complex multi-district litigation.

Respectfully,

*James L. McGinnis*
James L. McGinnis
for SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

SMRH:409996611.2

cc:   All counsel via ECF

SMRH:409996611.3