MARIO N. ALIOTO (56433)
malioto@tatp.com
LAUREN C. CAPURRO (241151)
laurenrussell@tatp.com
TRUMP, ALIOTO, TRUMP & PRESCOTT, LLP
2280 Union Street
San Francisco, CA  94123
Telephone:  (415) 563-7200
Facsimile: (415) 346-0679

*Interim Lead Counsel for*
*Indirect Purchaser Plaintiffs*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION** ) ) ) ) ) ) ) ) ) ) ) ) ) _____ ) **This document relates to:** ) ) **ALL ACTIONS** ) ) ) ) _____ ) | Master File No. CV-07-5944 SC  MDL No. 1917  **REQUEST FOR PERMISSION TO FILE POSITION STATEMENT; INDIRECT PURCHASER PLAINTIFFS' POSITION STATEMENT REGARDING SEPTEMBER 13, 2013 CONFERENCE**  Date: September 13, 2013 Time: 10:00 a.m. Court: One, 17th Floor  The Honorable Samuel Conti |

## I. Introduction

On July 2, 2013, the Court issued an Order Setting Status Conference, which ordered all parties and their counsel to appear for a mandatory status conference on September 13, 2013 at 10:00 a.m. *See* Docket No. 1758. On July 3, 2013, the Court issued an Order modifying its July 2, 2013 Order Setting Status Conference (Docket No. 1764), which provided that the Indirect Purchaser Plaintiffs ("IPPs") do not have to attend the September 13, 2013 status conference, and that attendance is voluntary for IPP counsel.

Because the Court indicated that it did not wish to hear from the IPPs, we did not submit a position statement on September 6, 2013.[1] However, the defendants have made statements regarding the proposed pretrial schedule that have implications for the IPP case. Therefore, IPPs respectfully request that the Court consider the following position statement by the IPPs.

## II. Background

From its inception, the IPPs have actively litigated this case and have been instrumental in moving it forward. After successfully defending against multiple motions to dismiss in 2009 and 2010 (during which time merits discovery was stayed pursuant to the request of the DOJ), the IPPs spent over two years meeting and conferring with nine separate defendant groups[2] regarding their written discovery responses and production of documents and data.[3] These meet and confers concluded with several successful motions to compel additional productions from several defendants.

Because many of the defendants are no longer involved in the CRT business, the IPPs have had to travel to several "Iron Mountain" facilities and manually search defendants' paper records for relevant documents, and have had to employ technical experts to restore backup tapes

---

[1] IPPs did, however, submit a Party Report pursuant to the Court's August 23, 2013 Order Requesting Party Reports (Docket No. 1859).

[2] The nine defendant groups were as follows: the Samsung SDI Defendants; the Samsung Electronics Defendants; the Hitachi Defendants; the Toshiba Defendants; the Philips Defendants; the LGE Defendants; the Panasonic Defendants (which includes MT Picture Display Co. Ltd.); Beijing Matsushita Color CRT Co., Ltd.; and Chunghwa Picture Tubes, Ltd. Most of these defendant groups comprise multiple entities located around the world.

[3] IPPs were joined in these efforts by the Direct Purchaser Class Plaintiffs ("DPPs").

1  and servers containing relevant information.  The IPPs have also subpoenaed and negotiated
2  productions of documents and data from over 50 third party retailers, distributors and CRT
3  television and monitor manufacturers.  Most recently, the IPPs subpoenaed documents and data
4  from the Dutch bankruptcy trustee of a former manufacturer of CRTs, LG. Philips Displays.

5   In November 2011, the States of California and Florida filed *parens patriae* actions on
6  behalf of individuals and government entities in their respective states that purchased CRT
7  Products.  Around the same time the Direct Action Plaintiffs ("DAPs") also filed cases against
8  defendants.[4]  This has required coordination amongst the plaintiff groups in the prosecution of
9  this case.  Because the DPPs have settled their case against all but two of the defendants,[5] the
10 IPPs and DAPs are leading these coordination efforts.

11  To date, the parties have produced over 5 million documents.  The IPPs have loaded
12 many of these documents into an online database where they are being reviewed and analyzed by
13 a team of IPP and DAP attorneys.  Many of these attorneys are fluent in Japanese, Korean and
14 Chinese because much of the best evidence in this case is in those languages.  The IPPs have also
15 retained expert economists to review and analyze the data and documents, and prepare expert
16 reports in support of class certification, liability and damages.

17  From February to September of 2012, the IPPs defended the depositions of 24 class
18 representatives.  During the summer of 2012, the IPPs, DPPs and State AGs noticed the
19 depositions of defendants pursuant to Fed. R. Civ. P. 30(b)(6).  The main focus of these
20 depositions was to gather evidence for the IPPs' motion for class certification.  IPPs took the lead
21 on 18 out of the 25 total Rule 30(b)(6) depositions that were taken.  Currently, the parties are
22 engaged in merits depositions, several of which have involved foreign travel to Taiwan, Korea
23 and Mexico.  IPPs have taken the lead on 11 of the 24 merits depositions taken to date, and have
24 played a leading role in the preparation for all depositions.

---

[4] These plaintiffs include entities such as Dell, Sharp, Costco, Target and Sears.

[5] The DPPs have settled with all defendants except the Samsung SDI Defendants and the Hitachi Defendants.

1   Because so many of the relevant documents in this case are in a foreign language,
2   plaintiffs have had to get certified translations in order to be able to use the documents in briefs
3   and depositions. And once a certified translation has been entered in the record, the Defendants
4   often object to the translation, which requires time-consuming meet and confers amongst the
5   parties to resolve the objections. Again, IPPs are leading these efforts on behalf of all plaintiffs.

6   IPPs filed their motion for class certification on October 1, 2012. The Defendants
7   opposed the motion and filed a motion to strike the Report of Dr. Janet Netz, which the IPPs
8   submitted in support of their motion. The Interim Special Master, Martin Quinn, recommended
9   that the Court grant the motion for class certification and deny the motion to strike. The
10  Defendants objected to these recommendations. The Court has indicated that it will rule on these
11  objections on the papers.

## III.   Proposed Revised Scheduling Order

13  On August 23, 2013, former Special Master Legge recommended that the Court consider
14  the parties' proposed revisions to the pretrial schedule at the September 13, 2013 conference. *See*
15  Docket No. 1858-2. In the defendants' position statements filed on September 6, 2013, and in
16  their letter filed on September 9, 2013, the defendants suggest decoupling the DAP cases from
17  the class cases as an alternative to the Proposed Revised Scheduling Order that is currently before
18  the Court. The IPPs oppose decoupling the DAP cases from the class cases and respectfully
19  request that the Court enter the Proposed Revised Scheduling Order, for reasons further explained
20  below.

### A.   Decoupling The DAP Cases From The Class Cases Will Prolong This Litigation And Prejudice The IPPs

23  Decoupling the DAP cases from the class cases will only serve to prolong this litigation
24  and lead to inefficiencies in discovery and motion practice. In the related *TFT-LCD* cases, the
25  DAP cases were decoupled from the class cases. In *LCD,* the same issues that were litigated in
26  the class cases have often been re-litigated in the DAP cases. Discovery in the DAP cases has
27  continued long after the class cases were closed. And the *LCD* court has had to conduct three
28

- 3 -
INDIRECT PURCHASER PLAINTIFFS' POSITION STATEMENT, MDL NO. 1917

separate trials (one criminal and two civil) involving most of the same parties and issues.  The DAP cases continue in *LCD* to this day.

Here, under the Proposed Revised Scheduling Order, the class cases and DAP cases will continue to proceed on the same, coordinated discovery schedule, with the parties sharing the burden of discovery and avoiding duplication.[6]  Decoupling would disrupt this coordination and prejudice the IPPs.  The IPPs recently entered into a joint prosecution agreement with the DAPs, pursuant to which we are sharing the costs of storing and reviewing the defendants' documents.  These coordinated discovery efforts have been working well and the DAPs have been actively involved in all aspects of discovery since joining the case.  The joint prosecution agreement envisioned that the cases would move together.  The existing pretrial schedule envisioned that the cases would move together.  The proposed revised pretrial schedule envisioned that the cases would move together.  All of this will be disrupted if the cases are decoupled now.

For example, under the Proposed Revised Scheduling Order dispositive motions and *in limine* motions will be addressed at the same time by all parties, which will allow overlapping issues to be briefed and resolved once and for all, and will avoid unnecessary duplication and inefficiency.  The result will be that all parties will be ready for trial in March 2015, instead of the class plaintiffs going forward in October 2014 and the DAPs at some later, unknown date.

It would also be particularly prejudicial to the IPPs to be put on a "fast track" when the IPP case is far broader in scope than both the DPP and DAP cases.  The IPPs must prove pass-on of the overcharge to consumers – an element that the DPPs and many of the DAPs do not have to prove.  In addition, the IPPs are only in federal court as a result of the Class Action Fairness Act, 28 U.S.C. §1332(d) ("CAFA").  Before CAFA, the IPP case would have proceeded as 22 separate class actions in state courts around the country.  Because of the breadth of the IPP cases, the IPPs should be afforded at least the same amount of time to prepare their case as the DAPs.

---

[6] Indeed, all parties are currently subject to a coordinated discovery protocol under which the plaintiffs are working together to prepare for and take depositions, propound discovery, file motions to compel, get certified translations of important documents, and share the expenses associated with preparing this case for trial.

1    Further, the IPPs are very differently situated than the DPPs:  The DPPs have settled with
2 all but two of the defendants and are actively pursuing settlement with those defendants.  Given
3 the very different posture of the DPP case, the alternative schedule proposed by the DPPs
4 (Docket No. 1906) would only be workable in the DPP case.
5    In short, the current pretrial schedule was agreed to by all parties on the assumption that
6 all cases would be moving together.  The proposed revised pretrial schedule was agreed to by all
7 parties on the assumption that all cases would be moving together.  The defendants' decoupling
8 proposal would have the IPP case moving alone, and the IPPs alone handling issues common to
9 all cases.  The defendants would then be free to re-argue these same issues at a later time in the
10 DAP cases.  This proposal should be rejected.

**B.  The Proposed Modifications To The Current Pretrial Schedule Are Necessary**

The proposed modifications to the current pretrial schedule are necessary given the large number of expert reports on the merits that the parties intend to file.  The parties' experts have requested this additional time to prepare their reports and to be able to consider the reports of all other parties.  For example, the IPPs' expert is interested not only in how the defendants respond to our report, but also in how they respond to the reports of the DPP and DAP experts.

The proposed modifications to the current schedule are also necessary because the delay in this case has resulted from factors beyond the control of the parties.  At the outset of this case, the DOJ moved for a stay of discovery that was extended several times and in the end lasted for almost three years.  The stay on document discovery continued until March 2010, and deposition discovery was stayed until March 1, 2011.  Further, delay ensued as a result of a number of objections to the Special Master's rulings on dispositive motions.  These delays have made the current pretrial schedule unworkable.  But since both of these impediments have now been removed, the IPPs respectfully submit that this case can proceed efficiently to trial on the proposed revised schedule.

//

//

## IV. Settlements

In April 2009, IPPs entered into a settlement with Chunghwa Picture Tubes, Ltd. for $10,000,000 cash and significant cooperation. The Court granted final approval of this settlement on March 22, 2012. *See* Docket No. 1105. The IPPs recently settled their case against the LG Electronics Defendants for $25,000,000 cash and cooperation. The IPPs intend to file a motion for preliminary approval of this settlement shortly. Settlement negotiations are ongoing with several other defendants.

Dated: September 10, 2013          Respectfully submitted,

**TRUMP, ALIOTO, TRUMP & PRESCOTT, LLP**

By:  /s/ Mario N. Alioto
Mario N. Alioto (56433)
malioto@tatp.com
Lauren C. Capurro (241151)
laurenrussell@tatp.com
2280 Union Street
San Francisco, California 94123
Telephone: (415) 563-7200
Facsimile: (415) 346-0679