Mario N. Alioto (56433)
Lauren C. Capurro (241151)
TRUMP, ALIOTO, TRUMP & PRESCOTT LLP
2280 Union Street
San Francisco, CA 94123
Telephone: 415-563-7200
Facsimile: 415- 346-0679
Email: malioto@tatp.com;
laurenrussell@tatp.com

*Interim Lead Counsel for the*
*Indirect Purchaser Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION<br><br>This Document Relates to:<br><br>All Indirect Purchaser Actions | Master File No. CV-07-5944-SC<br><br>MDL No. 1917<br><br>**INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT WITH DEFENDANTS LG ELECTRONICS INC.; LG ELECTRONICS USA, INC.; AND LG ELECTONICS TAIWAN TAIPEI CO., LTD.; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing Date:  October 25, 2013<br>Time: 10:00 a.m.<br>Courtroom: One, 17th Floor<br>Judge:  Honorable Samuel Conti |

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION .................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ......................................................1

I.      INTRODUCTION ...............................................................................................1

II.     PROCEDURAL HISTORY .................................................................................2

III.    SUMMARY OF SETTLEMENT TERMS .........................................................5

        A.      Proposed Settlement.................................................................................5

        B.      Consideration ...........................................................................................6

        C.      Release .....................................................................................................7

IV.     PRELIMINARY APPROVAL OF THE SETTLEMENT IS IN THE BEST
        INTEREST OF THE MEMBERS OF THIS SETTLEMENT CLASS.................7

        A.      Class Action Settlement Procedure..........................................................7

        B.      Standards For Settlement Approval .........................................................8

        C.      The Proposed Settlement Is Within The Range of Reasonableness .........10

        D.      The Proposed Settlement Class Satisfies Rule 23(a) ...............................11

                1.      The Class Is So Numerous That Joinder Is Impracticable.............11

                2.      The Case Involves Questions Of Law And Fact Common To The Class .......12

                3.      Plaintiffs' Claims Are Typical Of The Claims Of The Class .........13

                4.      Plaintiffs Will Fairly And Adequately Represent The Interests Of The Class 14

        E.      The Proposed Settlement Class Satisfies Rule 23(b)(3) ...........................15

                1.      Common Questions Of Law Or Fact Predominate .........................15

                2.      A Class Action Is Superior To Other Methods Of Adjudication.....17

        F.      The Court Should Appoint Plaintiffs' Interim Lead Counsel As Settlement
                Class Counsel...........................................................................................18

V.      PROPOSED PLAN OF NOTICE ........................................................................18

VI.     PROPOSED PLAN OF ALLOCATION ..............................................................19

VII.    NOTICE COSTS, LITIGATION EXPENSES AND ATTORNEYS' FEES .........19

i

INDIRECT-PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL
OF CLASS SETTLEMENT – Master File No. CV-07-5944-SC

VIII.   AT THE APPROPRIATE TIME, THE COURT SHOULD SET A FINAL
        APPROVAL HEARING SCHEDULE .........................................................................20

IX.     CONCLUSION .........................................................................................................21

1

# TABLE OF AUTHORITIES

2

## CASES

3

*Agretti v. ANR Freight Sys., Inc.*
4    982 F.2d 242 (7th Cir. 1992) ..................................................... 11

5 *Amchem Prods. Inc. v. Windsor*
   521 U.S. 591 (1997)...................................................................... 15, 19
6

7 *Armstrong v. Davis*
   275 F.3d 849 (9th Cir. 2001) ..................................................... 13

8 *Blackie v. Barrack*
9    524 F.2d 891 (9th Cir. 1975) ..................................................... 12

10 *Byrd v. Civil Serv. Comm'n*
   459 U.S. 1217 (1983)................................................................... 9
11

12 *Churchill Vill., L.L.C. v. GE*
   361 F.3d 566 (9th Cir. 2004) ..................................................... 9

13 *Class Plaintiffs v. City of Seattle*
14    955 F.2d 1268 (9th Cir. 1992) ................................................... 10

15 *Clement v. American Honda Finance Corp.*
   176 F.R.D. 15 (D. Conn. 1997)................................................... 8
16

17 *Estate of Jim Garrison v. Warner Bros., Inc.*
   1996WL 407849 (N.D. Cal. June 25, 2006) …………………………………..16

18 *Gautreaux v. Pierce*
19    690 F.2d 616 (7th Cir. 1982) ..................................................... 8

20 *Haley v. Medtronic, Inc.*
   169 F.R.D. 643 (C.D. Cal. 1996) ............................................... 12
21

22 *Hanlon v. Chrysler Corp.*
   150 F.3d 1011 (9th Cir. 1988) ................................................... *passim*

23 *Harris v. Palm Springs Alpine Estates, Inc.*
24    329 F.2d 909 (9th Cir. 1964) ..................................................... 11

25 *In re AOL Time Warner ERISA Litig.*
   2006 U.S. Dist. LEXIS 70474 (S.D.N.Y. Sept. 27, 2006)........... 19
26

27 *In re Brand Name Prescription Drugs Antitrust Litig.*
   1994 WL 663590 (N.D. Ill. Nov. 18, 1994) ............................... 17

28

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT – Master File No. CV-07-5944-SC

*In re Bulk (Extruded) Graphite Prods. Antitrust Litig.*
  2006 WL 891362 (D.N.J. April 4, 2006)........................................................ 13

*In re Cal. Micro Devices Sec. Litig.*
  965 F. Supp. 1327 (N.D. Cal. 1997) .......................................................... 20

*In re Catfish Antitrust Litig.*
  826 F. Supp. 1019 (N.D. Miss. 1993) ......................................................... 13

*In re Citric Acid Antitrust Litig.*
  1996 WL 655791(N.D. Cal. Oct. 2, 1996)..................................................... 13

*In re Corrugated Container Antitrust Litig.*
  80 F.R.D. 244 (S.D. Tex. 1978)................................................................. 16

*In re Corrugated Container Antitrust Litig.,*
  1981 U.S. Dist. LEXIS 11004 (S.D. Tex. Jan. 27, 1981)...............................................10

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*
  2006 U.S. Dist. LEXIS 39841(N.D. Cal. June 5, 2006) ....................................... 13, 17

*In re Linerboard Antitrust Litig.,*
  292 F. Supp. 2d 631 (E.D. Pa. 2003)...............................................................…. 10

*In re Mid-Atlantic Toyota Antitrust Litig.*
  564 F.Supp. 1379 (D.Md. 1983) ................................................................ 10

*In re Nasdaq Market Makers Antitrust Litig.*
  176 F.R.D. 99 (S.D.N.Y. 1997) ................................................................. 9

*In re Panasonic Consumer Electronic Prod. Antitrust Litig.*
  1989 U.S. Dist. LEXIS 6274 (S.D.N.Y. June 5, 1989) ....................................... 8

*In re Pressure Sensitive Labelstock Antitrust Litig.*
  2007 WL 4140666 (M.D. Pa. Nov. 19, 2007) ............................................... 14

*In re Relafen Antitrust Litig.*
  221 F.R.D. 260 (D.Mass. 2004)................................................................. 16

*In re Rubber Chemicals Antitrust Litig.*
  232 F.R.D. 346 (N.D. Cal. 2005) ...............................................…… 11,13,15

*In re Shopping Carts Antitrust Litig.*
  1983 U.S. Dist. LEXIS 11555 (S.D.N.Y. Nov. 18, 1983)................................... 8

*In re Static Random Access Memory (SRAM) Antitrust Litig.*
  264 F.R.D. 603 (N.D. Cal.  2009) ...............................................………16,17

*In re Sugar Industry Antitrust Litig.*
  1976 WL 1374 (N.D. Cal. May 21, 1976).................................................... 15

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT – Master File No. CV-07-5944-SC

*In re Tableware Antitrust Litig.*
    484 F. Supp. 2d 1078 (N.D. Cal. 2007) ......................................................................... 19

*In re TFT-LCD (Flat Panel) Antitrust Litig.*

    267 F.R.D. (N.D. Cal., 2010) ....................................................................................16

*In re Visa Check/Master Money Antitrust Litig.*
    280 F.3d 124 (2d Cir. 2001).......................................................................... 16 ,17

*In re Vitamins Antitrust Litig.*
    2001 U.S. Dist. LEXIS 25071 (D.D.C. July 25, 2001)................................................. 9

*Lerwill v. Inflight Motion Pictures, Inc.*
    582 F.2d 507 (9th Cir. 1978) ..................................................................................... 14

*Newby v. Enron Corp.*
    394 F.3d 296 (5th Cir. 2004) ..................................................................................... 20

*Officers for Justice v. Civil Serv. Comm'n*
    688 F.2d 615 (9th Cir. 1982) ....................................................................................... 9

*Slaven v. BP America, Inc.*
    190 F.R.D. 649 (C.D. Cal. 2000) ................................................................................ 12

*Torrisi v. Tucson Elec. Power Co.*
    8 F.3d 1370 (9th Cir. 1993) ....................................................................................... 19

*Valentino v. Carter-Wallace, Inc.*
    97 F.3d 1227 (9th Cir. 1996) ..................................................................................... 17

*Von Bronkizorst v. Safeco Corp.*
    529 F.2d 943 (9th Cir. 2004) ....................................................................................... 8

*Waste Management Holdings, Inc. v. Mowbray*
    208 F.3d 288 (1st Cir. 2000)...................................................................................... 17

*West Virginia v. Chas. Pfizer & Co.*
    314 F. Supp. 710 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d Cir. 1971) ....................... 8

*Williams v. Sinclair*
    529 U.S. 1383 (9th Cir. 1975) ................................................................................... 17

**FEDERAL STATUTES**

15 U.S.C. § 1 ................................................................................................................. 3, 12

**FEDERAL RULES**

Fed. R. Civ. P. 23 .......................................................................................................... *passim*

Rule 23(a)(1) ............................................................................................................. 11

Rule 23(a)(2) ............................................................................................................. 12

Rule 23(a)(3) ............................................................................................................. 13

Rule 23(b)(3) ............................................................................................... 15, 17, 19

Rule 23(c)(1)(B) ........................................................................................................ 18

Rule 23(c)(2)(B) ........................................................................................................ 18

Rule 23(e) ..................................................................................................... 1, 7, 18

Rule 23(g)(1)(A) ....................................................................................................... 18

**OTHER AUTHORITIES**

4 Newberg on Class Actions

§ 8.32 ........................................................................................................................ 19

§§ 11.22, *et seq.* ........................................................................................................ 7

§ 11.25 ........................................................................................................................ 9

§ 11.53 ........................................................................................................................ 19

Wright, Miller & Kane, Federal Practice and Procedure: Civil Procedure

§ 1781 (3d. ed. 2004) ............................................................................................... 17

Manual for Complex Litigation (Fourth)

§ 21.62 ........................................................................................................................ 10

§ 21.632 ................................................................................................................ 9, 11

§ 21.651 ...................................................................................................................... 19

**NOTICE OF MOTION AND MOTION**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on October 25, 2013 at 10:00 a.m., before the Honorable Samuel Conti, United States District Court for the Northern District of California, 450 Golden Gate Ave., Courtroom 1, 17th Floor, San Francisco, California, the Indirect Purchaser Plaintiffs ("Plaintiffs") will move the Court, pursuant to Federal Rule of Civil Procedure 23(e), for entry of an Order:

1.      Certifying a settlement class;

2.      Appointing Plaintiffs' Interim Lead Counsel as Settlement Class Counsel;

3.      Preliminarily approving this class action settlement;

4.      Directing distribution of notice of the settlement to the class and providing class members with opportunity to opt out of or object to the settlement; and

5.      Scheduling final approval of the settlement.

The grounds for this motion are that the proposed class settlement is within the range of reasonableness.  The proposed class satisfies the certification requirements for such a settlement. This motion is based on this Notice of Motion and Motion, the supporting Memorandum of Points and Authorities, the accompanying Declaration of Mario N. Alioto, the CRT Indirect Purchaser Class Settlement Agreement with LG Electronics, Inc.; LG Electronics USA, Inc.; and LG Electronics Taiwan Taipei Co., Ltd. ("Settlement Agreement"), any further papers filed in support of this motion, the argument of counsel, and all pleadings and records on file in this matter.

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT – Master File No. CV-07-5944-SC

## MEMORANDUM OF POINTS AND AUTHORITIES

**I. INTRODUCTION**

Pursuant to Rule 23 of Federal Rules of Civil Procedure, Indirect Purchaser Plaintiffs ("Plaintiffs") hereby move this Court for an order preliminarily approving a class settlement reached with defendants LG Electronics, Inc., LG Electronics USA, Inc., and LG Electronics Taiwan Taipei Co., Ltd. (collectively referred to hereinafter as "LG"). A copy of the Settlement Agreement is attached to the Declaration of Mario N. Alioto ("Alioto Decl."), as Exhibit 1. Plaintiffs allege that Defendants engaged in a long-standing, worldwide scheme to artificially inflate the prices of Cathode Ray Tube ("CRT") Products, as defined below. This Settlement resolves all federal and state-law claims brought by Plaintiffs against LG. The Settlement obligates LG to cooperate with Plaintiffs and to pay $25 million in exchange for a release of the class members' antitrust, unfair competition and consumer-protection claims. Alioto Decl. ¶¶ 11-14. LG's sales remain in the case for purposes of computing Plaintiffs' claim against the remaining non-settling Defendants. *Id.* ¶ 15.

LG has agreed to cooperate with Plaintiffs in the prosecution of this action by providing information relating to the existence, scope, and implementation of the conspiracy alleged in the Complaint. *Id.* ¶ 16.

This settlement is contingent upon the certification by this Court of a settlement class, as defined below, and Plaintiffs hereby seek provisional certification of that class. The settlement class is a "Nationwide Class" of indirect purchasers of CRT Products, seeking injunctive relief and "State Classes" of indirect purchaser seeking money damages under the laws of 21 states and the District of Columbia (collectively the "Settlement Class"). CRT Products are defined to mean Cathode Ray Tubes of any type (e.g. color display tubes, color picture tubes and monochrome display tubes) and products containing Cathode Ray Tubes. *Id.* ¶ 13.

The issue at the preliminary approval stage is not whether the proposed settlement is fair, reasonable and adequate, but rather, whether it is within the range of possible approval to justify publishing notice of the settlement to the class members and scheduling final approval proceedings. The Settlement here was reached after extensive arm's-length negotiations between experienced and informed counsel, and easily meets the standards for preliminary approval. Accordingly, Plaintiffs

1

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT – Master File No. CV-07-5944-SC

1  seek an order: (1) granting preliminary approval of the Settlement with defendant LG; and (2)

2  provisionally certifying the Settlement Class.

3        In addition to seeking approval of the LG Settlement, Plaintiffs anticipate making an interim

4  request for litigation expenses, as well as for an amount to be held in trust to pay for future expenses.

5  At the appropriate time, Plaintiffs will request a fee award of up to one-third (1/3) from the LG

6  settlement fund.  Notice of this Settlement must be provided to the absent class members.  A form of

7  notice that satisfies procedural due process is submitted herewith.

8  **II.**   **PROCEDURAL HISTORY**

9        This multidistrict litigation arises from an alleged international cartel's conspiracy to fix the

10  prices of CRT Products worldwide, specifically including the United States, during the period March

11  1, 1995 through November 25, 2007.  *See* Fourth Consolidated Amended Complaint ("FCAC") ¶ 1,

12  Docket No. 1526.  The first cases were filed in November 2007.  The Judicial Panel on Multidistrict

13  Litigation transferred these proceedings to this Court in February 2008.  Alioto Decl. ¶ 2.  On May

14  9, 2008 the Court appointed Mario N. Alioto of Trump, Alioto, Trump & Prescott, LLP as Interim

15  Lead Counsel.  *See* Order Appointing Interim Lead Counsel, Docket No. 47.  *Id.* ¶ 3.

16        As Interim Lead Counsel, Mr. Alioto immediately began organizing Plaintiffs' Counsel and

17  interviewing class representatives from the various states.  Mr. Alioto also met on numerous

18  occasions with Interim Lead Counsel for the Direct Purchaser Plaintiffs and Liaison Counsel for the

19  Defendants to prepare a scheduling order.  Plaintiffs served their first set of document requests on

20  Defendants in June 2008 seeking production of the documents Defendants had produced to the

21  Grand Jury.  However, the Department of Justice's Antitrust Division ("DOJ") moved to intervene

22  and sought a stay of all merits discovery.  Thereafter, Plaintiffs engaged in extensive negotiations

23  with the DOJ, the Direct Purchaser Plaintiffs and Defendants and worked out a Stipulated Order that

24  provided for a stay of all merits discovery until September 12, 2009.  This stay was extended

25  pursuant to the requests of the DOJ on several occasions.  The Stipulated Order also contained

26  various document requests to Defendants, which sought mainly sales and cost data.  Certain

27  Defendants produced a small amount of documents responsive to these requests in November 2008.

28  Plaintiffs have reviewed and analyzed these documents with the help of their expert economists.  *Id.*

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT – Master File No. CV-07-5944-SC

¶ 4.

On April 18, 2009, Plaintiffs entered into a settlement with Chunghwa Picture Tubes, Ltd., for $10,000,000 cash. The Court granted Preliminary Approval on August 9, 2011 and Final Approval on March 22, 2012. *Id. ¶* 5

Plaintiffs filed their CAC on March 16, 2009.  The CAC pled a nationwide injunctive relief claim under Section 1 of the Sherman Act (15 U.S.C. § 1), as well as damage and/or restitutionary claims under the laws of 22 separate states.  Defendants filed one joint motion and nine separate motions to dismiss the CAC.  The briefs filed in support of and in opposition to Defendants' motions totaled more than 700 pages.  Judge Legge conducted a hearing on the motions on October 3, 2009, at JAMS and heard almost 9 hours of oral argument.  Judge Legge issued his rulings on the motions to dismiss on February 5, 2010, and denied in part and granted in part Defendants' motions to dismiss.  Defendants objected to those rulings that were unfavorable to them.  Defendants' objections were heard by this Court and rejected in an Order dated March 31, 2010.  Defendants then moved the Court for permission to bring an interlocutory appeal pursuant to 28 U.S.C. § 1292(b). The Court heard and denied Defendants' motion by Order dated April 30, 2010.  *Id. ¶* 6.

Plaintiffs filed their Second Consolidated Amended Complaint ("SCAC") on May 10, 2010. The SCAC amended certain state law claims that were dismissed with leave to amend by the Court. In addition, the SCAC brought claims on behalf of 4 additional states, bringing the total number of states to 26.  Defendants moved to dismiss some of Plaintiffs' additional state law claims.  Judge Legge recommended that the Defendants' motion be granted as to certain state law claims and denied as to others.  Pursuant to stipulation of the parties, an Order Modifying And Adopting Judge Legge's Report and Recommendation was entered on October 26, 2010.  Plaintiffs filed their Third Consolidated Amended Complaint on December 11, 2010, bringing claims on behalf of 23 states. *Id. ¶* 7.

The DOJ's stay of merits discovery was partially lifted on March 8, 2010 and Defendants began their rolling production of documents, including Grand Jury documents, to Plaintiffs. Plaintiffs also propounded additional discovery on Defendants.  Defendants propounded several sets of document requests and interrogatories on Plaintiffs as well.  Plaintiffs spent almost two years and

3

1   thousands of hours, meeting and conferring with nine separate defendant groups[1] regarding their

2   written discovery responses and production of documents and data.  Most of the defendant groups

3   comprise multiple entities located around the world.  The meet and confers concluded with several

4   successful motions to compel additional productions from certain defendants.  Because many of the

5   Defendants are no longer involved in the CRT business, Plaintiffs had to travel to several "Iron

6   Mountain" facilities and manually search Defendants' paper records for relevant documents, and had

7   to employ technical experts to restore backup tapes and servers containing relevant information.

8   Plaintiffs also subpoenaed and negotiated productions of documents and data from over 50 third

9   party retailers, distributors and CRT television and monitor manufacturers.  Most recently, Plaintiffs

10  subpoenaed documents and data from the Dutch bankruptcy trustee of a former manufacturer of

11  CRTs, LG. Philips Displays. *Id.* ¶ 8.

12          The result of Plaintiffs' efforts has been the production of almost 5 million documents and

13  voluminous data sets, which have been loaded into a web-based electronic database and are being

14  reviewed and analyzed by a team of over 50 attorneys.  This team includes more than a dozen

15  attorneys that are fluent in Japanese, Korean and Chinese because much of the best evidence in this

16  case is in these languages.  In addition, Plaintiffs must get certified translations of any documents

17  they wish to use in briefs or depositions.  Plaintiffs also retained expert economists to review and

18  analyze the documents and data, and prepare expert reports in support of class certification, liability

19  and damages. *Id.* ¶ 8.

20          From February to September of 2012, Plaintiffs defended the depositions of 24 class

21  representatives.  During the summer of 2012, Plaintiffs took 25 depositions of Defendants pursuant

22  to Fed. R. Civ. P. 30(b)(6), the main purpose of which was to gather information for the motion for

23  class certification.  Plaintiffs filed their motion for class certification, along with the Declaration of

24  Janet S. Netz, Ph.D., on October 1, 2012.  Defendants filed their opposition to the motion on

25  December 17, 2012, and Plaintiffs filed their reply on February 15, 2013.  The complete record on

26

27  [1] The nine defendant groups were as follows: the Samsung SDI Defendants; the Samsung
    Electronics Defendants; the Hitachi Defendants; the Toshiba Defendants; the Philips Defendants; the
28  LGE Defendants; the Panasonic Defendants (which includes MT Picture Display Co. Ltd.); Beijing
    Matsushita Color CRT Co., Ltd.; and Chunghwa Picture Tubes, Ltd.

4

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT – Master File No. CV-07-5944-SC

1  class certification, including all briefs, declarations and exhibits, totaled approximately 6,000 pages.

2  A hearing was held before the Interim Special Master Martin Quinn on April 30, 2013.  On June 20,

3  2013, Special Master Quinn issued his Report and Recommendation, which recommended that the

4  Court grant Plaintiffs' motion for class certification.  *Id.* ¶ 9.

5      Currently, Plaintiffs are engaged in merits depositions.  To date, there have been 24

6  depositions of Defendants' employees, several of which have involved foreign travel to Taiwan,

7  Korea and Mexico. These depositions will continue over the next few months.  *Id.* ¶ 10.

8      On May 28, 2013, Plaintiffs entered into a settlement agreement with LG.  Settlement

9  negotiations are ongoing with several other Defendants. *Id.* ¶ 11.

10 **III.    SUMMARY OF SETTLEMENT TERMS**

11     **A.    Proposed Settlement**

12     This Settlement resolves all claims against defendant LG for LG's part in the alleged

13 conspiracy to fix prices of CRT Products indirectly purchased from Defendants.  Alioto Decl. ¶ 12.

14 The proposed Settlement Class is defined as:

15
16      NATIONWIDE CLASS:

17      All persons and or entities who or which indirectly purchased in the United States for
        their own use and not for resale, CRT Products[2] manufactured and/or sold by the
18      Defendants, or any subsidiary, affiliate, or co-conspirator thereof, at any time during
        the period from at least March 1, 1995 through at least November 25, 2007.
19      Specifically excluded from this Class are the Defendants; the officers, directors or
        employees of any Defendant; any entity in which any Defendant has a controlling
20      interest; and, any affiliate, legal representative, heir or assign of any Defendant.  Also
        excluded are named co-conspirators, any federal, state or local government entities,
21      any judicial officer presiding over this action and the members of his/her immediate
        family and judicial staff, and any juror assigned to this action.
22

23
24      INDIRECT PURCHASER STATE CLASSES:

25      All persons and or entities in Arizona, California, District of Columbia, Florida, Iowa,
        Kansas, Maine, Michigan, Minnesota, Mississippi, New Mexico, New York, North
26      Carolina, North Dakota, South Dakota, Tennessee, Vermont, West Virginia, and

27  _____
    [2] CRT Products are defined in the settlement agreement to mean Cathode Ray Tubes of any type
28  (e.g. color display tubes, color picture tubes and monochrome display tubes) and products containing
    Cathode Ray Tubes.

Wisconsin who or which indirectly purchased for their own use and not for resale, CRT Products manufactured and/or sold by the Defendants, or any subsidiary, affiliate, or co-conspirator thereof, at any time during the period from at least March 1, 1995 through at least November 25, 2007.

All persons and entities in Hawaii who or which indirectly purchased for their own use and not for resale CRT Products manufactured and/or sold by the Defendants or any parents, affiliates, subsidiaries, predecessors or successors in interest or co-conspirators thereof, at any time from June 25, 2002 through at least November 25, 2007.

All persons and entities in Nebraska who or which indirectly purchased for their own use and not for resale CRT Products manufactured and/or sold by the Defendants or any parents, affiliates, subsidiaries, predecessors or successors in interest or co-conspirators thereof, at any time from July 20, 2002 through at least November 25, 2007.

All persons and entities in Nevada who or which indirectly purchased for their own use and not for resale CRT Products manufactured and/or sold by the Defendants or any parents, affiliates, subsidiaries, predecessors or successors in interest or co-conspirator thereof at any time from February 4, 1999 through at least November 25, 2007.

Specifically excluded from these Classes are the Defendants; the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and, any affiliate, legal representative, heir or assign of any Defendant. Also excluded are named co-conspirators, any federal, state or local government entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

## B.    Consideration

LG agreed to pay Twenty-Five Million Dollars ($25,000,000) to settle all indirect purchaser claims against LG.  These monies have been deposited into an interest-bearing, US Treasury guaranteed escrow account.  *Id.* ¶ 14.

In addition to the monetary value, the Settlement confers significant additional benefits. First, LG has agreed to cooperate with Plaintiffs in the prosecution of this action by providing information relating to the allegations about the CRT competitor meetings alleged in the FCAC, including 1) an attorney proffer by LG's counsel of the facts known by LG regarding the allegations contained in Plaintiffs' FCAC; 2) interviews, depositions and, if necessary, testimony at trial of up to four LG persons with knowledge regarding the CRT competitor meetings alleged in Plaintiffs' FCAC; 3) one or more witnesses for deposition, and if necessary trial, to provide information with respect to LG's data regarding sales, pricing, production, capacity and cost of its CRT Products; 4)

6

1   one or more witnesses, to establish the foundation of any LG document or data necessary for

2   summary judgment and/or trial.  LG's sales also remain in the case for the purpose of computing

3   damages against the non-settling Defendants.  *Id.* ¶ 16.

4       **C.   Release**

5       Upon this Settlement becoming final, Plaintiffs and class members will release all federal and

6   state-law claims against LG "concerning the manufacture, supply, distribution, sales or pricing of

7   CRT Products. . . ."  *Id.* ¶ 17, Ex. 1 at ¶ 13.  The release does not, however, include claims arising

8   from the sale of CRT Products by other Defendants or their co-conspirators.  Furthermore, the

9   release does not include claims for product defect, personal injury or breach of contract.  *Id.* ¶ 17,

10  Ex. 1 at ¶¶ 3, 13, 15, 32.

11  **IV.   PRELIMINARY APPROVAL OF THE SETTLEMENT IS IN THE BEST INTEREST
        OF THE MEMBERS OF THIS SETTLEMENT CLASS**

12

13      **A.   Class Action Settlement Procedure**

14      A class action may not be dismissed, compromised, or settled without the express approval of

15  the Court.  Judicial decisions under Rule 23(e) have led to a well-defined procedure and specific

16  criteria for approval of class action settlements, which are:

17          1.   Certification of a settlement class and preliminary approval
                 of the proposed settlement;

18
19          2.   Dissemination of notice of the settlement to all affected
                 class members; and

20
            3.   A formal fairness hearing, (called the "Final Approval
21               Hearing"), at which class members may be heard regarding
                 the settlement, and at which counsel may introduce
22               evidence and present argument concerning the fairness,
                 adequacy, and reasonableness of the settlement.

23  *See* 4 Newberg on Class Actions §§ 11.22, *et seq.* (4th ed. 2002) ("*Newberg*") (describing class

24  action settlement procedure).  This process safeguards class members' procedural due process rights

25  and enables the Court to fulfill its role as the guardian of class interests.

26      Plaintiffs respectfully request that this Court take the first step in the settlement approval

27  process and certify the proposed Settlement Class and preliminarily approve the LG Settlement.

28

1   Plaintiffs further request that the Court appoint Plaintiffs' Interim Lead Counsel as Class Counsel for

2   this Settlement.

3       **B.       Standards for Settlement Approval**

4       It is well established that there is an overriding public interest in settling litigation,

5   particularly complex multi-party litigation. *See, e.g., Clement v. American Honda Finance Corp*.,

6   176 F.R.D. 15, 25 (D. Conn. 1997); *Von Bronkizorst v. Safeco Corp*., 529 F.2d 943, 950 (9th Cir.

7   2004) ("It hardly seems necessary to point out that there is an overriding public interest in settling

8   and quieting litigation."). Courts have particularly recognized that compromise is favored for

9   antitrust litigation—which is notoriously difficult and unpredictable. *See In re Shopping Carts*

10  *Antitrust Litig.,* No. MDL 451-CLB, M-21-29, 1983 U.S. Dist. LEXIS 11555, at *17-18 (S.D.N.Y.

11  Nov. 18, 1983); *West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970),

12  *aff'd*, 440 F.2d 1079 (2d Cir. 1971).

13      Courts generally apply a two-step approach to the settlement approval process in class

14  proceedings. *In re Panasonic Consumer Electronic Prod. Antitrust Litig*., No. 89 Civ. 0368 (SWK),

15  1989 U.S. Dist. LEXIS 6274, at *2 (S.D.N.Y. June 5, 1989). In the first step, usually called

16  "preliminary approval," the court reviews the proposed settlement for obvious deficiencies. The

17  grant of preliminary approval then triggers a notice and claim period during which the parties make

18  reasonable efforts to notify all potential beneficiaries of the settlement pursuant to a notice process

19  approved by the court. *Id*. Preliminary approval is distinct from the second step in the process–a

20  fairness hearing and determination of "final approval."

21      Preliminary approval requires a court simply to find that the proposed settlement fits "within

22  the *range* of possible approval" and should be given further consideration. *Gautreaux v. Pierce*, 690

23  F.2d 616, 621 n.3 (7th Cir. 1982) (emphasis added). Preliminary approval of a proposed class action

24  settlement is appropriate "if the preliminary evaluation of the proposed settlement does not disclose

25  grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of

26  class representatives or of segments of the class, or excessive compensation for attorneys and

27  appears to fall within the range of possible approval." *In re Vitamins Antitrust Litig.*, No. 99-197

28  (TFH), 2001 U.S. Dist. LEXIS 25071, at *30 (D.D.C. July 25, 2001); *see also In re Nasdaq Market*

8

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT – Master File No. CV-07-5944-SC

*Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997).  Preliminary approval is intended to "ascertain whether there is any reason to notify class members of the proposed settlement and to proceed with a fairness hearing."  *Pierce*, 690 F.2d at 621; *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1988).  In contrast, the purpose of the final approval fairness hearing is to determine whether the settlement is fair, reasonable and adequate after notice has been given to the class.

The approval of a proposed settlement of a class action is a matter of discretion for the trial court.  *Churchill Vill., L.L.C. v. GE*, 361 F.3d 566, 575 (9th Cir. 2004).  In exercising that discretion, however, courts should recognize that as a matter of sound policy, settlements of disputed claims are encouraged and a settlement approval hearing should "not be turned into a trial or rehearsal for trial on the merits."  *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982), *cert. denied sub nom. Byrd v. Civil Serv. Comm'n*, 459 U.S. 1217 (1983).  Furthermore, courts must give "proper deference" to the settlement agreement, because "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and the settlement, taken as a whole, is fair, reasonable and adequate to all concerned."  *Hanlon*, 150 F.3d at 1027 (quotations omitted).

To grant preliminary approval of this class action settlement, the Court need only find that the settlement falls within "the range of reasonableness."  *Newberg* § 11.25.  The Manual for Complex Litigation (Fourth) § 21.632 (2004) ("*Manual*") characterizes the preliminary approval stage as an "initial evaluation" of the fairness of the proposed settlement made by the court on the basis of written submissions and informal presentation from the settling parties.  *Manual* § 21.632.  The *Manual* summarizes the preliminary approval criteria as follows:

> Fairness calls for a comparative analysis of the treatment of the class members *vis-à-vis* each other and *vis-à-vis* similar individuals with similar claims who are not in the class.  Reasonableness depends on an analysis of the class allegations and claims and the responsiveness of the settlement to those claims.  Adequacy of the settlement involves a comparison of the relief granted to what class members might have obtained without using the class action process.

1  *Manual* § 21.62.  A proposed settlement may be finally approved by the trial court if it is determined

2  to be "fundamentally fair, adequate, and reasonable."  *Class Plaintiffs v. City of Seattle*, 955 F.2d

3  1268, 1276 (9th Cir. 1992).  While consideration of the requirements for final approval is

4  unnecessary at this stage, all of the relevant factors weigh in favor of the Settlement proposed here.

5  As shown below, the proposed Settlement is fair, reasonable and adequate.  Therefore, the Court

6  should allow notice of this Settlement to be disseminated to the Class.

7       **C.**     **The Proposed Settlement Is Within The Range of Reasonableness**

8       Plaintiffs' proposed Settlement with LG is within the range of reasonableness.  First, the

9  Settlement Amount of $25,000,000 is significant and compares favorably to other settlements

10  reached in indirect purchaser class actions.  *See, e.g., In re Static Random Access Memory (SRAM)*

11  *Antitrust Litig.,* 07-md-1819 (N.D. Cal. June 10, 2010) (Order Preliminarily Approving Class Action

12  Settlements with all defendants totaling $25,400,000; *In re OSB Antitrust Litig.,* 06-00826 (E.D. Pa.

13  Dec. 19, 2008) (Order Finally Approving Class Action Settlements with all defendants totaling

14  $9,940,000).  In fact, the Direct Purchaser Plaintiffs also settled with LG for $25,000,000.

15  Traditionally, direct purchaser claims under the Sherman Act (15 U.S.C. § 1) settle for more than

16  indirect purchaser claims because it is easier to prove causation and damages.

17       Second, the Settlement Agreement obligates LG to provide significant cooperation to

18  Plaintiffs in pursuing this case against the non-settling Defendants, including an attorney proffer,

19  and making available witnesses with personal knowledge of the Defendants' conspiracy for

20  interviews with Plaintiffs.  These witnesses will also testify against the non-settling Defendants if

21  required.  "The provision of such assistance is a substantial benefit to the classes and strongly

22  militates toward approval of the Settlement Agreement."  *In re Linerboard,* 292 F. Supp. 2d at 643.

23  *See also In re Mid-Atl. Toyota Antitrust Litig.,* 564 F. Supp. 1379, 1386 (D. Md. 1983) (concluding

24  that commitment to cooperate is an appropriate factor to consider in approving partial settlement); *In*

25  *re Corrugated Container,* 1981 U.S. Dist. LEXIS 11004, at *16 (S.D. Tex. Jan. 27, 1981) ("The

26  cooperation clauses constituted a substantial benefit to the class.").

27       Finally, the grant of preliminary approval of the LG Settlement will not adversely affect the

28  remainder of the case or unfairly prejudice the non-settling Defendants.  In fact, it may aid in the

1    ultimate resolution of this case.  "In complex litigation with a plaintiff class, 'partial settlements

2    often play a vital role in resolving class actions.'" *Agretti v. ANR Freight Sys., Inc.*, 982 F.2d 242,

3    247 (7th Cir. 1992) (quoting Manual for Complex Litigation Second, § 30.46 (1986)).

4    For all the aforementioned reasons, the proposed Settlement meets the judicially established criteria

5    for class action settlements and warrants notice of its terms to the class members.

6              **D.    The Proposed Settlement Class Satisfies Rule 23(a)**

7              Before granting preliminary approval of a settlement, the Court must determine that the

8    proposed settlement presents a proper class for settlement purposes.  *See Manual* § 21.632; *Amchem*

9    *Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997).  Rule 23 governs the issue of class certification,

10   whether the proposed class is a litigated class or, as here, a settlement class.  Courts routinely and

11   properly certify classes for settlement purposes only.  *Id.* at 619-29.

12             Certification is appropriate where the proposed class and the proposed class representatives

13   meet the four prerequisites of Rule 23(a)—numerosity, commonality, typicality, and adequacy of

14   representation.  In addition, certification of a class action for damages requires a showing that

15   "questions of law and fact common to class members predominate over any questions affecting only

16   individual members, and that a class action is superior to other available methods for fairly and

17   efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  The proposed Settlement here

18   likewise satisfies each of these criteria.

19             **1.    The Class Is So Numerous That Joinder Is Impracticable**

20   The first requirement for maintaining a class action is that its members are so numerous that joinder

21   would be "impracticable."  Fed. R. Civ. P. 23(a)(1).  Here, the Settlement Class (individuals and

22   entities who purchased CRT Products from March 1, 1995 through November 25, 2007 in the United

23   States) consists of millions of members nationwide.  "Numerosity" is easily established.  *See Harris*

24   *v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964); *In re Rubber Chemicals*

25   *Antitrust Litig.,* 232 F.R.D. 346, 350 (N.D. Cal. 2005) (a finding of numerosity may be supported by

26   common sense assumptions).

27             **2.    The Case Involves Questions of Law and Fact Common to the Class**

28

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT – Master File No. CV-07-5944-SC

1    The second prerequisite to class certification is the existence of questions of law or fact

2  common to the class.  Fed. R. Civ. P. 23(a)(2).  The Ninth Circuit has made it clear that the

3  commonality requirement is to be "construed permissively."  *Hanlon*, 150 F.3d at 1019.  Courts have

4  held that a single common issue of law or fact is sufficient to satisfy the commonality requirement.

5  *Slaven v. BP America, Inc*., 190 F.R.D. 649, 655 (C.D. Cal. 2000); *Haley v. Medtronic, Inc*., 169

6  F.R.D. 643, 647 (C.D. Cal. 1996).  Commonality can be established by showing "that the class is

7  united by a common interest."  *Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975).

8    Here, all class members share numerous common questions of law and fact that go to the

9  central issue in this matter—that is, whether the Defendants engaged in a price-fixing agreement

10  which injured Plaintiffs when they paid more for CRT Products than they would have, absent the

11  alleged price-fixing conspiracy.  These common questions of law and fact predominate over any

12  individual questions.  The overarching and unifying allegations in this action are that LG and other

13  CRT Products manufacturers engaged in a global cartel to fix the prices of CRT Products sold in the

14  United States.  These allegations give rise to numerous questions of law or fact common to the class,

15  such as:

16       1.    whether Defendants engaged in a contract, combination,
        and/or conspiracy to fix, raise, maintain, or stabilize prices of CRT
17       Products sold in the United States;

18       2.    whether the contract, combination, and/or conspiracy
        violated Section 1 of the Sherman Act (15 U.S.C. § 1) such that
19       injunctive relief is available to Plaintiffs;

20       3.    whether such conspiracy violates the antitrust, consumer
        protection or other similar laws of the 21 states  and the District of
21       Columbia under whose laws these suits were brought;

22       4.    the duration of the illegal contract, combination, and/or
        conspiracy;
23
       5.    whether Defendants' conduct resulted in an unlawful
24       overcharge on the price of CRT Products;

25       6.    whether the unlawful overcharge on the price of CRT
        Products was passed-through to the indirect purchasers, and if so,
26       the appropriate classwide measure of damages.

27    These questions revolve around the existence, scope, effectiveness, and implementation of

28  Defendants' conspiracy and are central to each class member's claims.  Similar common questions

12

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT – Master File No. CV-07-5944-SC

1    have been routinely found to satisfy the commonality requirement in other antitrust class actions.

2    *See In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, Case No. M 02-1486 PJH,

3    2006 U.S. Dist. LEXIS 39841, at *29 (N.D. Cal. June 5, 2006) ("the very nature of a conspiracy

4    antitrust action compels a finding that common questions of law and fact exist."); *In re Rubber*

5    *Chem. Antitrust Litig.*, 232 F.R.D. 346, 351 (N.D. Cal. 2005).

6                  **3.       Plaintiffs' Claims Are Typical of the Claims of the Class**

7          The "claims . . . of the representative parties [must be] typical of the claims . . . of the class."

8    Fed. R. Civ. P. 23(a)(3).  "Under the rule's permissive standards, representative claims are 'typical'

9    if they are reasonably co-extensive with those of absent class members; they need not be

10   substantially identical."  *Hanlon*, 150 F.3d at 1020.  In this case, the claims of the representative

11   Plaintiffs are typical of the claims of the class members because they all indirectly purchased CRT

12   Products sold by Defendants at allegedly supra-competitive levels as a result of the price-fixing

13   conspiracy.  Similarly, differences that may exist in the amount of injury suffered by each class

14   member do not render Plaintiffs' claims atypical.  *Armstrong v. Davis*, 275 F.3d 849, 869 (9th Cir.

15   2001).

16         As with commonality, typicality is easily satisfied in horizontal price-fixing cases because

17   "in instances wherein it is alleged that the defendants engaged in a common scheme relative to all

18   members of the class, there is a strong assumption that the claims of the representative parties will be

19   typical of the absent class members."  *In re Catfish Antitrust Litig.*, 826 F. Supp. 1019, 1035 (N.D.

20   Miss. 1993);  *In re Citric Acid Antitrust Litig.*, Case No. 95-1092, 1996 WL 655791, at * 3 (N.D.

21   Cal. Oct. 2, 1996).  Furthermore, courts have rejected the argument that factual differences among

22   individual transactions undermine typicality, so long as the damages of plaintiffs and the class arise

23   from the purchase of products affected by the conspiracy.  *See DRAM*, 2006 U.S. Dist. LEXIS

24   39841, at *33; *In re Bulk (Extruded) Graphite Prods. Antitrust Litig.*, Case No. Civ. 02-6030

25   (WHW), 2006 WL 891362, at *5 (D.N.J. April 4, 2006); *In re Pressure Sensitive Labelstock*

26   *Antitrust Litig.*, Case No. 3:03-MDL-1556, 2007 WL 4140666, at *10 (M.D. Pa. Nov. 19, 2007)

27   ("Typicality is usually satisfied in a horizontal antitrust conspiracy case, even though a plaintiff may

28

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT – Master File No. CV-07-5944-SC

1    have purchased different product types or quantities or received different prices, or a plaintiff

2    purchased from one defendant but not another.").

3          In this case, the claims of the representative Plaintiffs arise from the same price-fixing

4    conspiracy that give rise to the claims of the class.  Plaintiffs assert the same legal claims on behalf

5    of themselves and the proposed class, namely, that they purchased CRT Products and that they were

6    overcharged as a result of the antitrust conspiracy between LG and other CRT Products

7    manufacturers.  Defendants' price-fixing scheme is the basis for the claims of every named Plaintiff

8    and class member who purchased the price-fixed CRT Product indirectly from Defendants.

9    Therefore, Plaintiffs' claims are typical of the claims of the other class members, and certification is

10   appropriate.

11                    **4.        Plaintiffs Will Fairly and Adequately Represent the Interests of the Class**

12         The final requirement of Rule 23(a) is that the representative plaintiffs fairly and adequately

13   represent the interests of the class.  A representative plaintiff is an adequate representative of the

14   class if he or she: (1) does not have any interests that are antagonistic to or in conflict with the

15   interests of the class; and (2) is represented by "qualified counsel" who will vigorously prosecute the

16   interests of the class.  *Hanlon,* 150 F.3d at 1020; *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d

17   507, 512 (9th Cir. 1978).

18         Here, the interests of the representative Plaintiffs are not antagonistic to the class because

19   they are all similarly interested in obtaining prompt and valuable relief from Defendants.  Plaintiffs

20   have a genuine interest in the litigation and understand the allegations in this case.  They have

21   reviewed the pleadings in this case, have responded to written discovery, have produced the

22   documents requested and have been deposed by Defendants.  Alioto Decl., ¶ 20.  The interests of all

23   Plaintiffs and class members are aligned because they all suffered similar injury in the form of

24   higher CRT Products prices due to the conspiracy, and they all seek the same relief.  By proving

25   their own claims, Plaintiffs will necessarily be proving the claims of their fellow class members.

26         Additionally, Plaintiffs are represented by counsel who are highly qualified in class action

27   litigation and have competently and aggressively prosecuted this complex case.  Plaintiffs' counsel,

28   Trump, Alioto, Trump & Prescott LLP, was appointed by the Court as Interim Lead Class Counsel

14

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT – Master File No. CV-07-5944-SC

1   on May 9, 2008.  They have undertaken the responsibilities assigned to them by the Court and have

2   directed the efforts of other Plaintiffs' counsel in vigorously prosecuting this action.  *See* Section II.,

3   *infra* (further discussing the qualifications and work performed by Lead Counsel).

4   **E.      The Proposed Settlement Class Satisfies Rule 23(b)(3)**

5   Once the four prerequisites of Rule 23(a) are met, as they are here, Plaintiffs are entitled to

6   proceed with a class action under Rule 23(b)(3) if the Court finds that "questions of law or fact

7   common to class members predominate over any questions affecting only individual members, and

8   that a class action is superior to other available methods for fairly and efficiently adjudicating the

9   controversy."  The Settlement Class meets both requirements.

10   **1.      Common Questions of Law or Fact Predominate**

11   "Predominance," under Rule 23(b)(3),  "is a test readily met in certain cases alleging

12   consumer or securities fraud or violations of the antitrust laws."  *Amchem Prods.*, 521 U.S. at 625.

13   The weight of authority holds that in horizontal price-fixing cases like this one, the predominance

14   requirement is readily met.  The existence of a conspiracy is the overriding issue common to all

15   plaintiffs, sufficient to satisfy the Rule 23(b)(3) predominance requirement.  *See, e.g., In re Rubber*

16   *Chemicals*, 232 F.R.D. at 352 ("the great weight of authority suggests that the dominant issues in

17   cases like this are whether the charged conspiracy existed and whether price-fixing occurred"); *In re*

18   *Sugar Industry Antitrust Litig.*, MDL Dkt No. 201, 1976 WL 1374, at *23 (N.D. Cal. May 21, 1976)

19   ("[i]t is the allegedly unlawful horizontal price-fixing arrangement among defendants that, in its

20   broad outlines, comprises the predominating, unifying common interest" between the representative

21   plaintiffs and potential class members).

22   Here, the existence of a CRT conspiracy and Defendants' acts in furtherance of the

23   conspiracy are the predominant common questions.  To demonstrate that the CRT price-fixing

24   conspiracy existed, Plaintiffs will necessarily focus on the conduct of the Defendants, rather than the

25   conduct of individual class members.  Specifically, Defendants allegedly entered into and

26   implemented a conspiracy to set the prices of CRTs at *supra*-competitive levels through a series of

27   high-level meetings and agreements during the class period.  Proof of how Defendants implemented

28   and enforced their conspiracy will be common for all class members, because it will be predicated

15

on establishing the existence of Defendants' antitrust conspiracy to fix the price of CRTs.  *See, e.g.,*
*In re Relafen Antitrust Litig.*, 221 F.R.D. 260, 275 (D.Mass. 2004) ("The alleged antitrust violation
relates solely to SmithKline's conduct, and as such, constitutes a common issue subject to common
proof."); *In re Corrugated Container Antitrust Litig.*, 80 F.R.D. 244, 250 (S.D. Tex. 1978) ("The
court is persuaded that the conspiracy issues—whether price information was exchanged; if it was,
with what intent; whether action was taken by the defendants based upon such exchanges, etc.—is
susceptible of generalized proof, since it deals primarily with what the defendants themselves did
and said.").

Likewise, antitrust injury, particularly in a price-fixing case, is an issue common to the class
because the effect of the conspiracy is readily determined based on a common evidentiary showing.
*See, e.g., In re Citric Acid Antitrust Litig.*, 1996 WL 655791, at *6 (N.D. Cal. 1996) (common
questions include whether there was a conspiracy, whether prices were fixed pursuant to the
conspiracy, and whether the prices plaintiffs paid were higher than they should have been); *Estate of*
*Jim Garrison v. Warner Bros., Inc.,* 1996 WL 407849, at *3 (C.D. Cal. June 25, 2006) ("Antitrust
price fixing conspiracy cases by their nature deal with common legal and factual questions of the
existence, scope and effect of the alleged conspiracy." (citation omitted)); *In re TFT-LCD (Flat*
*Panel) Antitrust Litig.*, 267 F.R.D. 583, 604 (N.D. Cal. 2010), *amended in part*, 2011 WL 3268649
(N.D. Cal. July 28, 2011) (internal citation omitted) (finding common issues predominated on the
question of antitrust injury in a price-fixing case brought on behalf of a class of indirect purchasers);
*In re Static Random Access Memory (SRAM) Antitrust Litig.,* 264 F.R.D. 603, 612-614 (N.D. Cal.
2009) (same).  Therefore, common issues relating to the existence and effect of the alleged
conspiracy to fix CRT prices predominate over any questions arguably affecting individual class
members.  These issues are "overriding issues" satisfying the predominance requirement.

The existence of potential individualized damage issues does not defeat the predominance of
the common liability issues.  *See, e.g., In re Visa Check/Master Money Antitrust Litig.*, 280 F.3d at
138 (citing and discussing cases).  Courts in this District have recognized that "classes were certified
.  .  . regardless of whether some members of the class negotiated price individually, or whether—as
here— differences among product type, customer class, and method of purchase existed." *DRAM*,

16

1   2006 U.S. Dist. LEXIS 39841, at *47.  This is true even if there are individual state law issues, as

2   long as the common issues still outweigh the individual ones, e.g., as long as common theory can be

3   alleged as to liability and impact that can be pursued by the class.  *Cf., e.g., In re Visa Check/Master*

4   *Money Antitrust Litig.*, 280 F.3d 124, 138 (2d Cir. 2001) (citing and quoting with approval *Williams*

5   *v. Sinclair*, 529 U.S. 1383, 1388 (9th Cir. 1975)); *Waste Management Holdings, Inc. v. Mowbray*,

6   208 F.3d 288, 294-295 (1st Cir. 2000).  Issues common to the classes predominate in this case.  All

7   indirect-purchasers paid overcharges that were caused by the Defendants' price-fixing activities.

8   The presence of these common issues of liability and impact favors class certification of the

9   Settlement Class, even if individual issues may exist as to the dollar amount of damages suffered by

10  each class member.

11              **2.       A Class Action Is Superior to Other Methods of Adjudication**

12          The superiority prong of Rule 23(b)(3) requires balancing the merits of a class action with

13  available alternate methods of adjudication.  *See Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227,

14  1234 (9th Cir. 1996).  "[I]f common questions are found to predominate in an antitrust action, then

15  courts generally have ruled that the superiority prerequisite of Rule 23(b)(3) is satisfied."  Wright,

16  Miller & Kane, *Federal Practice and Procedure: Civil Procedure* § 1781 at 254-55 (3d ed. 2004).

17  That is because in price-fixing cases, "the damages of individual indirect purchasers are likely to be

18  too small to justify litigation, but a class action would offer those with small claims the opportunity

19  for meaningful redress."  *SRAM*, 264 F.R.D. at 615 .

20          In this case, a class action is superior to individual litigation because it would be a waste of

21  judicial resources to require numerous separate trials relating to the same legal dispute.  *See In re*

22  *Brand Name Prescription Drugs Antitrust Litig.*, Case No. 94 C 897, 1994 WL 663590, at *6 (N.D.

23  Ill. Nov. 18, 1994) ("We fail to see the logic in defendants' contention that 50,000 individual actions

24  are less complex than a single action.")  As noted by Judge Wilken in *SRAM*, the damages alleged by

25  individual members of the class are relatively small, and the expense and burden of individual

26  litigation would make it impracticable for them to seek redress individually.  264 F.R.D. at 615 .

27  Moreover, the interests of class members in individually controlling the prosecution of separate

28  claims are outweighed by the efficiency of the class mechanism.  Finally, separate adjudication of

1   claims creates a risk of inconsistent rulings, which further favors class treatment. Therefore, a class

2   action is the superior method of adjudicating the claims raised in this case.

### F.   The Court Should Appoint Plaintiffs' Interim Lead Counsel as Settlement Class Counsel

5   Rule 23(c)(1)(B) states that "[a]n order certifying a class action . . . must appoint class

6   counsel under Rule 23(g)." The court must consider "(i) the work counsel has done in identifying or

7   investigating potential claims in the action; (ii) counsel's experience in handling class actions, other

8   complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the

9   applicable law; and (iv) the resources counsel will commit to representing the class." Fed. R. Civ. P.

10  23(g)(1)(A).

11  On May 9, 2008, after considering competing motions, the Court appointed Mario N. Alioto

12  of Trump, Alioto, Trump & Prescott LLP as Interim Lead Class Counsel. *See* Order Appointing

13  Interim Lead Counsel, Docket No. 47. The work done by Class Counsel since being appointed, as

14  set out in Section II above, provides a substantial basis for the Court's earlier finding that they

15  satisfy each applicable criterion under Rule 23(g), and are well qualified to serve as Class Counsel.

16  Accordingly, Trump, Alioto, Trump & Prescott LLP should be appointed as Settlement Class

17  Counsel for purposes of this Settlement.

18  ## V.   PROPOSED PLAN OF NOTICE

19  Rule 23(e)(1) states that, "[t]he court must direct notice in a reasonable manner to all class

20  members who would be bound by a proposed settlement, voluntary dismissal, or compromise."

21  Notice of a proposed settlement must inform class members of the following: (1) the nature of the

22  pending litigation; (2) the general terms of the proposed settlement; (3) that complete information is

23  available from the court files; and (4) that any class member may appear and be heard at the fairness

24  hearing. *See Newberg* § 8.32. The notice must also indicate an opportunity to opt-out, that the

25  judgment will bind all class members who do not opt-out, and that any member who does not opt-out

26  may appear through counsel. Fed. R. Civ. P. 23(c)(2)(B).

27  The form of notice is "adequate if it may be understood by the average class member."

28  *Newberg* § 11.53. Notice to the class must be "the best notice practicable under the circumstances,

18

1   including individual notice to all members who can be identified through reasonable effort."

2   *Amchem Prods.*, 521 U.S. at 617.  Publication notice is an acceptable method of providing notice

3   where the identity of specific class members is not reasonably available.  *See In re Tableware*

4   *Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007) (citing *Manual* § 21.311).

5          Plaintiffs' counsel have retained an experienced class action administrator, The Notice

6   Company, to give notice of this settlement to the members of the Class.  The notice program will

7   consist of both mailed and published notice, as well as posting of the Notice on the Internet.  This

8   notice program will be similar to that employed in the indirect purchaser *SRAM* case, the indirect

9   purchaser *LCD* case and the Chunghwa settlement in this case.  The proposed notice program fulfills

10  all the requirements of Federal Rule of Civil Procedure 23 and due process.  *See, e.g., Torrisi v.*

11  *Tucson Elec. Power Co.*, 8 F.3d 1370, 1374-75 (9th Cir. 1993); *In re AOL Time Warner ERISA*

12  *Litig.*, 2006 U.S. Dist. LEXIS 70474, at *30-31 (S.D. N.Y. Sept. 27, 2006).

13  **VI.    PROPOSED PLAN OF ALLOCATION**

14         Plaintiffs propose that distribution of settlement funds be deferred until the termination of the

15  case, when there might be additional settlement funds from other settling defendants to distribute,

16  and because piecemeal distribution of each settlement is expensive, time-consuming, and likely to

17  cause confusion to class members.  Plaintiffs will address any allocation issues which arise at that

18  time as well.  Until that time, any settlement funds, not used to pay prior out-of-pocket expense or

19  future litigation costs, will accrue interest for the benefit of the class.  Deferring allocation of

20  settlement funds is a common practice in cases where claims against other defendants remain.  See

21  *Manual* § 21.651.

22  **VII.   NOTICE COSTS, LITIGATION EXPENSES AND ATTORNEYS' FEES**

23         The LG Settlement Agreement provides that up to $525,000 of the settlement fund may be

24  used to pay for notice costs.  Alioto Decl., ¶ 18, Ex. 1 at ¶ 18(a).  The Agreement also states that

25  Plaintiffs' counsel may apply to the Court for reimbursement of litigation expenses out of the

26  settlement fund.  Alioto Decl., ¶ 18, Ex. 1  at ¶ 22 (a).  Plaintiffs will also move for the creation of a

27  litigation expense fund of up to $5 million for the reimbursement of out-of-pocket expenses incurred

28  to date and for payment of future out-of-pocket expenses that may be incurred in prosecuting this

19

1   case. Any unused portion of that fund will be disbursed to the class, along with the other net

2   settlement funds. Such litigation-expense funds have been established and approved in other class

3   actions. *See, e.g., Newby v. Enron Corp.*, 394 F.3d 296, 303 (5th Cir. 2004) (affirming approval of

4   class settlement where $15 million of settlement proceeds were used to create a litigation expense

5   fund); *In re Cal. Micro Devices Sec. Litig.*, 965 F. Supp. 1327, 1337 (N.D. Cal. 1997) (approving

6   class counsel's request for a $1.5 million litigation fund "[b]ecause the remainder of the case appears

7   to have potential value for the class"). Plaintiffs' request for a litigation expense fund will be fully

8   explained in the proposed settlement class notice.

9           Finally, Plaintiffs' counsel will not seek an award of attorneys' fees at this time. Plaintiffs'

10  counsel will seek an award of attorneys' fees in conjunction with the approval of future

11  settlement(s), or at some other later date. Plaintiffs' counsels' request for fees for this Settlement

12  will not exceed one-third (1/3) of the amount of this Settlement.

13  **VIII.   THE COURT SHOULD SET A FINAL APPROVAL HEARING SCHEDULE**

14          The last step in the settlement approval process is the final approval hearing, at which the

15  Court may hear all evidence and argument necessary to evaluate the proposed settlement. At that

16  hearing, proponents of the Settlement may explain and describe its terms and conditions and offer

17  argument in support of settlement approval and members of the Settlement Class, or their counsel,

18  may be heard in support of or in opposition to the Settlement. Plaintiffs' respectfully suggest that

19  the Court set the following final approval schedule, culminating in a final approval hearing:

20

21

| Event | Date |
|---|---|
| Notice Publication Date and Mailed Notice to Commence | Within 60 days of Order Granting Preliminary Approval |
| Exclusion Date | Within 60 days of Notice Publication Date |
| Objection Date | Within 60 days of Notice Publication Date |
| Final Hearing | 120 days from Order Granting Preliminary Approval |

22

23

24

25

26

27

28

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT – Master File No. CV-07-5944-SC

1   IX.   **<u>CONCLUSION</u>**

2         Based on the foregoing, Plaintiffs respectfully request that the Court:  (1) grant preliminary

3   approval of the class settlement with defendant LG; (2) certify the proposed settlement class; and (3)

4   set a schedule for final approval.

5   Dated:  September 12, 2013                Respectfully submitted,

6                                               *<u>/s/ Mario N. Alioto</u>*
                                                 Mario N. Alioto
7
                                              Mario N. Alioto (56433)
8                                             malioto@tatp.com
                                              Lauren C. Capurro (241151)
9                                             laurenrussell@tatp.com
                                              TRUMP, ALIOTO, TRUMP & PRESCOTT LLP
10                                            2280 Union Street
                                              San Francisco, CA 94123
11                                            Telephone: 415-563-7200
                                              Facsimile: 415-346-0679
12
                                              *Interim Lead Counsel for Indirect-Purchaser*
13                                            *Plaintiffs*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT – Master File No. CV-07-5944-SC