1  MARIO N. ALIOTO, ESQ. (56433)
   LAUREN C. CAPURRO, ESQ. (241151)
2  TRUMP, ALIOTO, TRUMP & PRESCOTT, LLP
   2280 Union Street
3  San Francisco, CA  94123
   Telephone:  (415) 563-7200
4  Facsimile: (415) 346-0679
   E-mail: malioto@tatp.com
5        laurenrussell@tatp.com
6
7  *Interim Lead Counsel*
   *for the Indirect Purchaser Plaintiffs*
8
                    **UNITED STATES DISTRICT COURT**
9
                    **NORTHERN DISTRICT OF CALIFORNIA**
10
11 **IN RE: CATHODE RAY TUBE (CRT)**      )  Master File No. CV-07-5944 SC
   **ANTITRUST LITIGATION**              )
12                                        )  MDL No. 1917
                                          )
13                                        )  **DECLARATION OF MARIO N. ALIOTO**
                                          )  **IN SUPPORT OF THE INDIRECT**
14                                        )  **PURCHASER PLAINTIFFS' MOTION**
                                          )  **FOR PRELIMINARY APPROVAL OF**
15                                        )  **CLASS  ACTION SETTLEMENT WITH**
                                          )  **LG ELECTRONICS, INC.; LG**
16                                        )  **ELECTRONICS USA, INC.; AND LG**
                                          )  **ELECTRONICS TAIWAN TAIPEI CO.**
17                                        )  **LTD.**
                                          )
18 _____ )
19 **This document relates to:**           )  Hearing Date:  October 25, 2013
                                          )  Time: 10:00 a.m.
20 **ALL INDIRECT PURCHASER ACTIONS**      )  Courtroom: One, 17th Floor
                                          )  Judge:  Honorable Samuel Conti
21                                        )
                                          )
22 _____ )
23
24       I, Mario N. Alioto, declare:
25       1.      I am an attorney duly licensed by the State of California and am admitted to
26 practice before this Court.  I am a partner with the law firm Trump, Alioto, Trump & Prescott,
27 LLP and my firm serves as Interim Lead Counsel for the Indirect Purchaser Plaintiffs
28

                                          1

1 ("Plaintiffs") in the above-captioned action.  The matters set forth herein are within my personal

2 knowledge and if called upon and sworn as a witness I could competently testify regarding them.

3      2.     This multidistrict litigation arises from an alleged international cartel's conspiracy

4 to fix the prices of CRT Products worldwide, specifically including the United States, during the

5 period March 1, 1995 through November 25, 2007.  *See* Fourth Consolidated Amended

6 Complaint ("FCAC") ¶ 1, Docket No. 1526.  The first cases were filed in November 2007.  The

7 Judicial Panel on Multidistrict Litigation transferred these proceedings to this Court in February

8 2008.

9      3.     On May 9, 2008 the Court appointed me and my firm, Trump, Alioto, Trump &

10 Prescott, LLP, as Interim Lead Counsel for the Indirect Purchaser Plaintiffs.  *See* Order

11 Appointing Interim Lead Counsel, Docket No. 47.

12      4.     As Interim Lead Counsel, I immediately began organizing Plaintiffs' Counsel and

13 interviewing class representatives from the various states.  I also met on numerous occasions with

14 Interim Lead Counsel for the Direct Purchaser Plaintiffs and Liaison Counsel for the Defendants

15 to prepare a scheduling order.  Plaintiffs served their first set of document requests on Defendants

16 in June 2008 seeking production of the documents Defendants had produced to the Grand Jury.

17 However, the Department of Justice's Antitrust Division ("DOJ") moved to intervene and sought

18 a stay of all merits discovery.  Thereafter, Plaintiffs engaged in extensive negotiations with the

19 DOJ, the Direct Purchaser Plaintiffs and Defendants and worked out a Stipulated Order that

20 provided for a stay of all merits discovery until September 12, 2009.  This stay was extended by

21 the parties on several occasions.  The Stipulated Order also contained various document requests

22 to Defendants, which sought mainly sales and cost data.  Certain Defendants produced a small

23 amount of documents responsive to these requests in November 2008.  Plaintiffs have reviewed

24 and analyzed these documents with the help of their expert economists.

25

26

27

28

2

**DECLARATION OF MARIO N. ALIOTO IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS'
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT WITH DEFENDANTS
LG ELECTRONICS, INC.; LG ELECTRONICS USA, INC.; AND LG ELECTRONICS TAIWAN TAIPEI
CO. LTD.**

5. On April 18, 2009, Plaintiffs entered into a settlement with Chunghwa Picture Tubes, Ltd., for $10,000,000 cash. The Court Granted Preliminary Approval on August 9, 2011 and Final Approval on March 22, 2012.

6. Plaintiffs filed their CAC on March 16, 2009. The CAC pled a nationwide injunctive relief claim under Section 1 of the Sherman Act (15 U.S.C. § 1), as well as damage and/or restitutionary claims under the laws of 22 separate states. Defendants filed one joint motion and nine separate motions to dismiss the CAC. The briefs filed in support of and in opposition to Defendants' motions totaled more than 700 pages. Judge Legge conducted a hearing on the motions on October 3, 2009, at JAMS and heard almost 9 hours of oral argument. Judge Legge issued his rulings on the motions to dismiss on February 5, 2010, and denied in part and granted in part Defendants' motions to dismiss. Defendants objected to those rulings that were unfavorable to them. Defendants' objections were heard by Judge Conti and rejected in an Order dated March 31, 2010. Defendants then moved the Court for permission to bring an interlocutory appeal pursuant to 28 U.S.C. § 1292(b). Judge Conti heard and denied Defendants' motion by Order dated April 30, 2010.

7. Plaintiffs filed their Second Consolidated Amended Complaint ("SCAC") on May 10, 2010. The SCAC amended certain state law claims that were dismissed with leave to amend by the Court. In addition, the SCAC brought claims on behalf of 4 additional states, bringing the total number of states to 26. Defendants moved to dismiss some of Plaintiffs' additional state law claims. Judge Legge recommended that the Defendants' motion be granted as to certain state law claims and denied as to others. Pursuant to stipulation of the parties, an Order Modifying And Adopting Judge Legge's Report and Recommendation was entered on October 26, 2010. Plaintiffs filed their Third Consolidated Amended Complaint on December 11, 2010, bringing claims on behalf of 23 states.

8. The DOJ's stay of merits discovery was partially lifted on March 8, 2010 and Defendants began their rolling production of documents, including Grand Jury documents, to Plaintiffs.

3

**DECLARATION OF MARIO N. ALIOTO IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT WITH DEFENDANTS LG ELECTRONICS, INC.; LG ELECTRONICS USA, INC.; AND LG ELECTRONICS TAIWAN TAIPEI CO. LTD.**

1  Plaintiffs also propounded additional discovery on Defendants.  Defendants propounded several

2  sets of document requests and interrogatories on Plaintiffs as well.  Plaintiffs spent almost two

3  years and thousands of hours, meeting and conferring with nine separate defendant groups[1]

4  regarding their written discovery responses and production of documents and data.  Most of the

5  defendant groups comprise multiple entities located around the world.  The meet and confers

6  concluded with several successful motions to compel additional productions from certain

7  defendants.  Because many of the Defendants are no longer involved in the CRT business,

8  Plaintiffs had to travel to several "Iron Mountain" facilities and manually search Defendants'

9  paper records for relevant documents, and had to employ technical experts to restore backup

10  tapes and servers containing relevant information.  Plaintiffs also subpoenaed and negotiated

11  productions of documents and data from over 50 third party retailers, distributors and CRT

12  television and monitor manufacturers.  Most recently, Plaintiffs subpoenaed documents and data

13  from the Dutch bankruptcy trustee of a former manufacturer of CRTs, LG Philips Displays.

14      The result of Plaintiffs' efforts has been the production of almost 1.2 million documents

15  and voluminous data sets, which have been loaded into a web-based electronic database and are

16  being reviewed and analyzed by a team of over 50 attorneys.  This team includes more than a

17  dozen attorneys that are fluent in Japanese, Korean and Chinese because much of the best

18  evidence in this case is in these languages.  In addition, Plaintiffs must get certified translations

19  of any documents they wish to use in briefs or depositions.  Plaintiffs also retained expert

20  economists to review and analyze the documents and data, and prepare expert reports in support

21  of class certification, liability and damages.

22      9.      From February to September of 2012, Plaintiffs defended the depositions of 24

23  class representatives.  During the summer of 2012, Plaintiffs took 25 depositions of Defendants

---

25  [1] The nine defendant groups were as follows: the Samsung SDI Defendants; the Samsung
26  Electronics Defendants; the Hitachi Defendants; the Toshiba Defendants; the Philips Defendants;
   the LGE Defendants; the Panasonic Defendants (which includes MT Picture Display Co. Ltd.);
27  Beijing Matsushita Color CRT Co., Ltd.; and Chunghwa Picture Tubes, Ltd.

4

28  **DECLARATION OF MARIO N. ALIOTO IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS'**
**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT WITH DEFENDANTS**
**LG ELECTRONICS, INC.; LG ELECTRONICS USA, INC.; AND LG ELECTRONICS TAIWAN TAIPEI**
**CO. LTD.**

1    pursuant to Fed. R. Civ. P. 30(b)(6), the main purpose of which was to gather information for the

2    motion for class certification.  Plaintiffs filed their motion for class certification, along with the

3    Declaration of Janet S. Netz, Ph.D., on October 1, 2012.  Defendants filed their opposition to the

4    motion on December 17, 2012, and Plaintiffs filed their reply on February 15, 2013.  The

5    complete record on class certification, including all briefs, declarations and exhibits, totaled

6    approximately 6,000 pages.  A hearing was held before the Interim Special Master Martin Quinn

7    on April 30, 2013.  On June 20, 2013,  Special Master Quinn issued his Report and

8    Recommendation, which recommended that the Court grant Plaintiffs' motion for class

9    certification. Docket No. 1742.

10          10.     Currently, Plaintiffs are engaged in merits depositions.  To date, there have been

11   24 depositions of Defendants' employees, several of which have involved foreign travel to

12   Taiwan, Korea and Mexico. These depositions will continue over the next few months.

13          11.     On May 28, 2013, Plaintiffs entered into a settlement agreement with LG

14   Electronics, Inc.; LG Electronics USA, Inc.; and LG Electronics Taiwan Taipei Co., Ltd.

15   (collectively "LG"). A copy of the Settlement Agreement with LG  ("Settlement Agreement') is

16   attached hereto as Exhibit 1.

17          12.     The settlement resolves all federal and state-law claims brought by Plaintiffs

18   against LG.

19          13.     The Settlement Agreement defines "CRT Products" to mean cathode ray tubes of

20   any type (e.g. color display tubes, color picture tubes and monochrome display tubes) and

21   products containing cathode ray tubes.

22          14.     LG agreed to pay Twenty Five Million Dollars ($25,000,000) to settle all indirect

23   purchaser claims against LG, which has been deposited into an interest-bearing, US Treasury

24   guaranteed escrow account.

25          15.     LG's sales remain in the case for purposes of computing Plaintiffs' claim against

26   the remaining non-settling Defendants.

27

28
5

**DECLARATION OF MARIO N. ALIOTO IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS'
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT WITH DEFENDANTS
LG ELECTRONICS, INC.; LG ELECTRONICS USA, INC.; AND LG ELECTRONICS TAIWAN TAIPEI
CO. LTD.**

16.     LG has agreed to cooperate with Plaintiffs in the prosecution of this action by providing information relating to the allegations about the multilateral or group CRT competitor meeting alleged in the FCAC, including 1) an attorney proffer by LG's counsel of the facts known by LG regarding the allegations contained in Plaintiffs' FCAC; 2) interviews, depositions and, if necessary, testimony at trial of up to four LG persons with knowledge regarding the CRT competitor meetings alleged in Plaintiffs' FCAC; 3) one or more witnesses for deposition, and if necessary trial, to provide information with respect to LG's data regarding sales, pricing, production, capacity and cost of its CRT Products; 4) one or more witnesses, to establish the foundation of any LG document or data necessary for summary judgment and/or trial.

17.     Upon this Settlement becoming final, Plaintiffs and class members will release all federal and state-law claims against LG "concerning the manufacture, supply, distribution, sales or pricing of CRT Products."  Ex. 1 at ¶ 13.  The release does not, however, include claims arising from the sale of CRT Products by other Defendants or their co-conspirators.  Furthermore, the release does not include claims for product defect, personal injury or breach of contract.

18.     The LG Settlement Agreement provides that up to $525,000 of the settlement fund may be used to pay for notice costs.  Ex. 1 at ¶ 18(a).  The Agreement also states that Plaintiffs' counsel may apply to the Court for reimbursement of litigation expenses out of the settlement fund.  Ex. 1 at ¶ 22 (a).   Plaintiffs intend to move for the creation of a litigation expense fund in an amount up to $5 million for the reimbursement of out-of-pocket expenses incurred to date and for payment of future out-of-pocket expenses that may be incurred in prosecuting this case.  Any unused portion of that fund will be disbursed to the class, along with the other net settlement funds.

19.     Plaintiffs' counsel will not seek an award of attorneys' fees at this time. Plaintiffs' counsel will seek an award of attorneys' fees in conjunction with the approval of future settlement(s), or at some other later date.  Plaintiffs' counsels' request for fees for this Settlement will not exceed One-Third (1/3) of the amount of this Settlement.

**DECLARATION OF MARIO N. ALIOTO IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT WITH DEFENDANTS LG ELECTRONICS, INC.; LG ELECTRONICS USA, INC.; AND LG ELECTRONICS TAIWAN TAIPEI CO. LTD.**

20. The interests of the representative Plaintiffs are not antagonistic to the class because they are all similarly interested in obtaining prompt and valuable relief from Defendants. Representative Plaintiffs have a genuine interest in the litigation and understand the allegations in this case. They have reviewed the pleadings in this case, have produced the written discovery and documents requested and have been deposed by Defendants.

21. My firm has retained an experienced class action administrator, The Notice Company, to give notice of this Settlement to the members of the Class. The notice program will consist of both mailed and published notice, as well as posting of the Notice on the Internet. This notice program will be similar to that employed in the indirect purchaser *SRAM* case, the indirect purchaser *LCD* case and the Chunghwa settlement in this case.

22. Attached hereto as Exhibit 2 is a copy of the Summary Notice that Plaintiffs intend to publish in various newspapers and/or magazines throughout the United States and which will direct potential class members to the Detailed Notice.

23. Attached hereto as Exhibit 3 is a copy of the Detailed Notice that Plaintiffs intend to publish on the internet along with copies of the Settlement Agreement.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 12th day of September, 2013 at San Francisco, California.

/s/ Mario N. Alioto
Mario N. Alioto

**Interim Lead Counsel**
**for the Indirect Purchaser Plaintiffs**

7

**DECLARATION OF MARIO N. ALIOTO IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS'
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT WITH DEFENDANTS
LG ELECTRONICS, INC.; LG ELECTRONICS USA, INC.; AND LG ELECTRONICS TAIWAN TAIPEI
CO. LTD.**

# EXHIBIT 1

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. CV-07-5944-SC |
| | MDL No. 1917 |
| This Document Relates to: | |
| ALL INDIRECT-PURCHASER ACTIONS | |

SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is made and entered into this 28th day of May, 2013 by and between LG Electronics, Inc.; LG Electronics USA, Inc.; and LG Electronics Taiwan Taipei Co., Ltd. (collectively "LG") and the indirect-purchaser plaintiff class representatives ("Plaintiffs"), both individually and on behalf of a settlement class of indirect purchasers of Cathode Ray Tube (CRT) Products ("the Class") as more particularly defined in Paragraph 1 below.

WHEREAS, Plaintiffs are prosecuting the above *In Re Cathode Ray Tube (CRT) Antitrust Litigation*, MDL No. 1917 (N.D. Cal.) (the "Action") on their own behalf and on behalf of the Class against, among others, LG;

WHEREAS, Plaintiffs allege that LG participated in an unlawful conspiracy to raise, fix, maintain, or stabilize the price of CRT Products at artificially high levels in violation of Section 1 of the Sherman Act and various state statutes;

WHEREAS, LG denies Plaintiffs' allegations and has asserted defenses to Plaintiffs' claims;

WHEREAS, Plaintiffs have conducted an investigation into the facts and the law regarding the Action and have concluded that resolving claims against LG according to the terms set forth below is in the best interest of Plaintiffs and the Class;

WHEREAS, LG, despite its belief that it is not liable for the claims asserted and

1

has good defenses thereto, has nevertheless agreed to enter into this Agreement to avoid further expense, inconvenience, and the distraction of burdensome and protracted litigation, and to obtain the releases, orders, and judgment contemplated by this Agreement, and to put to rest with finality all claims that have been or could have been asserted against LG, based on the allegations of the Action, as more particularly set out below;

NOW, THEREFORE, in consideration of the covenants, agreements, and releases set forth herein and for other good and valuable consideration, it is agreed by and among the undersigned that the Action be settled, compromised, and dismissed on the merits with prejudice as to the LG Releasees, as defined below, and except as hereinafter provided, without costs as to Plaintiffs, the Class, or LG, subject to the approval of the Court, on the following terms and conditions:

A.    Definitions.

1.    For purposes of this Agreement, "the Class" and "Class Period" are defined in Plaintiffs' Fourth Consolidated Amended Complaint or, if that complaint is amended to expand the definition of either term, the operative complaint at the time this Agreement is presented for preliminary approval. The parties to this Agreement hereby stipulate for purposes of this settlement only that the requirements of Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure are satisfied.

2.    For purposes of this Agreement, "CRT Products" shall have the meaning as defined in the Fourth Consolidated Amended Complaint or, if that Complaint is amended to expand the definition of CRT Products, the operative complaint at the time this Agreement is presented for preliminary approval. For purposes of clarity, the term "CRT Products" includes not only cathode ray tubes, but also electronic devices containing cathode ray tubes, such as televisions and computer monitors.

3.    "LG Releasees" shall refer to the entities that are referred to collectively as "LG Electronics" in paragraph 53 of the Fourth Consolidated Amended Complaint, and to all of their respective past and present, direct and indirect, parents, subsidiaries, and affiliates (including but not limited to Zenith Electronics Corporation and Zenith Electronics Corporation of Pennsylvania), and all of their

2

respective past and present, direct and indirect, parents, subsidiaries, affiliates, unincorporated entities, divisions, and groups; the predecessors, successors and assigns of any of the above; and each and all of the present and former principals, partners, officers, directors, supervisors, employees, agents, representatives, insurers, attorneys, heirs, executors, administrators, and assigns of each of the foregoing. "LG Releasees" does not include any defendant in the Action ("Defendant") other than those entities defined in the Fourth Consolidated Amended Complaint as "LG Electronics." "LG Releasee" also does not include LP Displays International, Ltd. ("LPDI") or its predecessor LG.Philips Displays Holding B.V. ("LPDH"), or any of LPDI's or LPDH's subsidiaries or affiliates. For avoidance of doubt, Released Claims include those against LG Releasees relating to, arising out of, or based on any ownership, agency, management, or financial or other relationship between LG Releasees, on the other hand, and LPDI, LPDH, or any of LDPI's or LPDH's subsidiaries or affiliates, on the other hand.

4.    "Class Member" means each member of the Class who has not timely elected to be excluded from the Class.

5.    "Releasors" shall refer to the indirect-purchaser plaintiff Class representatives and the indirect-purchaser plaintiff Class Members, and to their past and present officers, directors, employees, agents, stockholders, attorneys, servants, representatives, parents, subsidiaries, affiliates, partners, insurers and all other persons, partnerships or corporations with whom any of the former have been, or are now, affiliated, and the predecessors, successors, heirs, executives, administrators and assigns of any of the foregoing, as well as to anyone claiming by, for, or through the Releasors.

6.    "The Settlement Fund" shall be $25,000,000, as specified in Paragraph 16, plus accrued interest on said deposits as set forth in Paragraph 17.

7.    "Lead Counsel" shall refer to:

Mario N. Alioto
Trump, Alioto, Trump & Prescott LLP
2280 Union Street
San Francisco, CA 94123

B    Approval of this Agreement and Dismissal of Claims Against LG.

8.    Plaintiffs and LG shall use their best efforts to effectuate this

Agreement, including cooperating in seeking the Court's approval for the establishment of procedures (including the giving of class notice under Federal Rules of Civil Procedure 23(c) and (e)) to secure the complete, and final dismissal with prejudice of the Action, without undue delay, as to the LG Releasees only.

        9.     Plaintiffs shall, at such time as they see fit, submit to the Court a motion for authorization to disseminate notice of the settlement and final judgment contemplated by this Agreement to all Class members (the "Motion"). If notice to the Class is given jointly with any other settling defendant, for purposes of Paragraph 18 below, the costs of notice and claims administration shall be prorated with any other such defendant based on their respective settlement amounts. The Motion shall include (i) a proposed form of, method for, and date of dissemination of notice; and (ii) a proposed form of order. The text of the foregoing items (i) and (ii) shall be agreed upon by Plaintiffs and LG before submission of the Motion,. The Motion shall recite and ask the Court to find that the proposed form of and method for dissemination of the notice of settlement constitutes valid, due and sufficient notice to the Class, constitutes the best notice practicable under the circumstances, and complies fully with the requirements of Federal Rule of Civil Procedure 23.

        10.    Plaintiffs and LG shall jointly seek the entry of, an order and final judgment, the text of which Plaintiffs and LG shall agree upon. The terms of that order and final judgment will include, at a minimum, the substance of the following provisions:

        a.     certifying the Class described in Paragraph 1, pursuant to Rule 23 of the Federal Rules of Civil Procedure, solely for purposes of this settlement as a settlement class;

        b.     as to the Action, approving finally this settlement and its terms as being a fair, reasonable and adequate settlement as to the Class Members within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation according to its terms;

        c.     as to the LG Releasees, directing that the Action be dismissed with prejudice and, except as provided for in this Agreement, without costs;

4

d.   reserving exclusive jurisdiction over the settlement and this Agreement, including the administration and consummation of this settlement, to the United States District Court for the Northern District of California; and

e.   determining under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directing that the judgment of dismissal as to the LG Releasees shall be final.

11.   This Agreement shall become final when (i) the Court has entered a final order certifying the Class described in Paragraph 1 and approving this Agreement under Federal Rule of Civil Procedure 23(e) and a final judgment dismissing the Action with prejudice as to LG Releasees against all Class Members and without costs other than those provided for in this Agreement, and (ii) the time for appeal or to seek permission to appeal from the Court's approval of this Agreement and entry of a final judgment as to LG Releasees described in (i) hereof has expired or, if appealed, approval of this Agreement and the final judgment as to LG Releasees have been affirmed in their entirety by the Court of last resort to which such appeal has been taken and such affirmance has become no longer subject to further appeal or review. It is agreed that the provisions of Rule 60 of the Federal Rules of Civil Procedure shall not be taken into account in determining the above-stated times. On the date that Plaintiffs and LG have executed this Agreement, Plaintiffs and LG shall be bound by its terms and this Agreement shall not be rescinded except in accordance with Paragraphs 17(h), 27, or 28 of this Agreement.

12.   Neither this Agreement (whether or not it should become final) nor the final judgment, nor any and all negotiations, documents and discussions associated with them, shall be deemed or construed to be an admission by LG (or the LG Releasees) or evidence of any violation of any statute or law or of any liability or wrongdoing whatsoever by LG (or the LG Releasees), or of the truth of any of the claims or allegations contained in any complaint or any other pleading filed in the Action, and evidence thereof shall not be discoverable or used directly or indirectly, in any way, whether in the Action or in any other action or proceeding. Neither this Agreement, nor any of its terms and provisions, nor any of the negotiations or proceedings connected with it, nor any other action taken to carry out this Agreement by any of the settling parties shall be referred to, offered as evidence or

207958402                                    5

received in evidence in any pending or future civil, criminal, or administrative action or proceedings, except in a proceeding to enforce this Agreement, or to defend against the assertion of Released Claims, or as otherwise required by law.

C.    Release, Discharge, and Covenant Not to Sue.

13.    In addition to the effect of any final judgment entered in accordance with this Agreement, upon this Agreement becoming final as set out in Paragraph 11 of this Agreement, and in consideration of payment of the Settlement Amount, as specified in Paragraph 16 of this Agreement, and for other good and valuable consideration, the LG Releasees shall be completely released, acquitted, and forever discharged from any and all claims, demands, judgments, actions, suits, causes of action, whether class, individual, or otherwise (whether or not any Class Member has objected to the settlement or makes a claim upon or participates in the Settlement Fund, whether directly, representatively, derivatively, or in any other capacity) that Releasors, or each of them, ever had, now has, or hereafter can, shall, or may have on account of, or in any way arising out of, any and all known and unknown, foreseen and unforeseen, suspected or unsuspected injuries, damages, and consequences thereof in any way arising out of or relating in any way to any act or omission of the LG Releasees (or any of them) or any other entity concerning the manufacture, supply, distribution, sale or pricing of CRT Products up to the date of execution of this Agreement, including but not limited to any conduct alleged, and causes of action asserted or that could have been alleged or asserted, in complaints filed in this Action, including those arising under any federal or state antitrust, unfair competition, unfair practices, price discrimination, unitary pricing, unjust enrichment, contract, or trade practice law (the "Released Claims"). However, the Released Claims shall not preclude Plaintiffs from pursuing any and all of their claims against other defendants, excepting the LG Releasees, for the sale of CRT Products by those other defendants, or any subsidiary or affiliate thereof, or their co-conspirators, including claims against those other defendants for sales of CRT Products manufactured by LG. Releasors shall not, after the date of this Agreement, sue or otherwise seek to establish liability against any LG Releasee based, in whole or in part, upon any of the Released Claims or conduct at issue in the Released Claims.

14.    In addition to the provisions of Paragraph 13 of this Agreement,

6

Releasors hereby expressly waive and release, upon this Agreement becoming final, any and all provisions, rights, and benefits conferred by § 1542 of the California Civil Code, which states:

> CERTAIN CLAIMS NOT AFFECTED BY GENERAL RELEASE. A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR;

or by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to § 1542 of the California Civil Code. Each Releasor may hereafter discover facts other than or different from those which he, she, or it knows or believes to be true with respect to the claims which are the subject matter of the provisions of Paragraph 13 of this Agreement, but each Releasor hereby expressly waives and fully, finally, and forever settles and releases, upon this Agreement becoming final, any known or unknown, suspected or unsuspected, contingent or non-contingent claim with respect to the subject matter of the provisions of Paragraph 13 of this Agreement, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.

15.     The release, discharge, and covenant not to sue set forth in Paragraph 13 of this Agreement does not include claims by any of the Class Members other than the Released Claims and does not include other claims, such as those solely arising out of product liability, personal injury, or breach of contract claims not related to the subject matter of the Action in the ordinary course of business not covered by the Released Claims.

D.     Settlement Amount.

16.     Subject to the provisions hereof, and in full, complete and final settlement of the Action as provided herein, defendant LG shall pay the Settlement Amount of $25,000,000 in United States Dollars (the "Settlement Amount"). The Settlement Amount shall be paid into an escrow account in United States Dollars to be administered in accordance with the provisions of Paragraph 17 of this Agreement (the "Escrow Account") thirty (30) days after execution of this Agreement.

20795840.2                                   7

17.   Escrow Account.

(a)    The Escrow Account will be established at Wells Fargo Bank, National Association. with such Bank serving as escrow agent ("Escrow Agent") subject to escrow instructions mutually acceptable to Plaintiffs' Lead counsel and LG, such escrow to be administered under the Court's continuing supervision and control.

(b)    The Escrow Agent shall cause the funds deposited in the Escrow Account to be invested in short-term instruments backed by the full faith and credit of the United States Government or fully insured in writing by the United States Government. or money market funds rated Aaa and AAA, respectively by Moody's Investor Services and Standard and Poor's, invested substantially in such instruments, and shall reinvest any income from these instruments and the proceeds of these instruments as they mature in similar instruments at their then current market rates.

(c)    All funds held in the Escrow Account shall be deemed and considered to be in custodia legis of the Court, and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed pursuant to this Agreement and/or further order(s) of the Court.

(d)    Plaintiffs and LG agree to treat the Settlement Fund as being at all times a qualified settlement fund within the meaning of Treas. Reg. §1.468B-1. In addition, the Escrow Agent shall timely make such elections as necessary or advisable to carry out the provisions of this Paragraph 17, including the relation-back election (as defined in Treas. Reg. §1.468B-1) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Escrow Agent to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

(e)    For the purpose of § 468B of the Internal Revenue Code of 1986, as amended. and the regulations promulgated there under, the administrator shall be the Escrow Agent. The Escrow Agent shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including without limitation the returns described in Treas. Reg. § 1.468B-2(k)(1)). Such returns (as well as the election described in Paragraph 17(d)) shall be consistent with Paragraph 17(d) and in all events shall reflect that all Taxes, as defined below

8

(including any estimated Taxes, interest or penalties), on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided in Paragraph 17(f) hereof

(f)     All (i) taxes (including any estimated taxes, interest or penalties) arising with respect to the income earned by the Settlement Fund, including any taxes or tax detriments that may be imposed upon LG or any other LG Releasee with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a qualified settlement fund for federal or state income tax purposes ("Taxes"); and (ii) expenses and costs incurred in connection with the operation and implementation of Paragraphs 17(d) through 17(f) (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in this Paragraph 17(f) ("Tax Expenses")), shall be paid out of the Settlement Fund.

(g)     Neither LG nor any other LG Releasee nor their respective counsel shall have any liability or responsibility for the Taxes or the Tax Expenses. Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement Fund and shall be timely paid by the Escrow Agent out of the Settlement Fund without prior order from the Court and the Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to any claimants authorized by the Court any funds necessary to pay such amounts including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treas. Reg. § 1.468B-2(1)(2)). Neither LG nor any other LG Releasee is responsible nor shall they have any liability therefor. Plaintiffs and LG agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of Paragraphs 17(d) through 17(f).

(h)     If this Agreement does not receive final Court approval, including final approval of "the Class" as defined in Plaintiffs' Fourth Consolidated Amended Complaint (or, if that complaint is amended to expand the definition of "the Class," the operative complaint at the time this Agreement is presented for preliminary approval) or if the Action is not certified as a class action for settlement purposes, then

all amounts paid by LG into the Settlement Fund (other than costs expended in accordance with Paragraph 18(a)) shall be returned to LG from the Escrow Account by the Escrow Agent along with any interest accrued thereon within thirty (30) calendar days.

18.     Payment of Expenses.

(a)     LG agrees to permit use of a maximum of $525,000 of the Settlement Fund towards notice to the class and the costs of administration of the Settlement Fund set forth in Paragraph 17. The $525,000 in notice and administration expenses are not recoverable if this settlement does not become final to the extent such funds are expended for notice and administration costs. Other than as set forth in this Paragraph 18(a), neither LG nor any of the other LG Releasees under this Agreement shall be liable for any of the costs or expenses of the litigation of the Action, including attorneys' fees; fees and expenses of expert witnesses and consultants; and costs and expenses associated with discovery, motion practice, hearings before the Court or any Special Master, appeals, trials or the negotiation of other settlements, or for Class administration and costs.

(b)     If Lead Counsel enters into any other settlements on behalf of the Class before notice of this Agreement is given to the Class, Lead Counsel shall use its reasonable best efforts to provide a single notice to prospective Class members of all of the settlements.

E.     The Settlement Fund.

19.     Releasors shall look solely to the Settlement Fund for settlement and satisfaction against the LG Releasees of all Released Claims, and shall have no other recovery against LG or any other LG Releasee.

20.     After this Agreement becomes final within the meaning of Paragraph 11, the Settlement Fund shall be distributed in accordance with a plan to be submitted at the appropriate time by Plaintiffs, subject to approval by the Court. In no event shall any LG Releasee have any responsibility, financial obligation, or liability whatsoever with respect to the investment, distribution, or administration of the Settlement Fund, including, but not limited to, the costs and expenses of such distribution and administration, with the sole exception of the provisions set forth in

Paragraph 18(a) of this Agreement. LG shall be dismissed from this Action prior to any distribution of this Settlement Fund and shall have no involvement in the distribution of this Settlement Fund.

21.     Plaintiffs and Class Counsel shall be reimbursed and indemnified solely out of the Settlement Fund for all expenses. The LG Releasees shall not be liable for any costs, fees, or expenses of any of Plaintiffs' or the Class' respective attorneys, experts, advisors, agents, or representatives, but all such costs, fees, and expenses as approved by the Court shall be paid out of the Settlement Fund.

22.     Class Counsel's Attorneys' Fees And Reimbursement of Expenses.

(a)     After this Settlement becomes final, Class Counsel may submit an application or applications to the Court for payment of attorneys' fees and reimbursement of expenses (the "Fee and Expense Application") for distribution to them from the Settlement Fund. LG shall not oppose such application(s) for: (i) an award of attorneys' fees not in excess of one-third of the Settlement Fund; plus (ii) reimbursement of expenses and costs incurred, or to be incurred, in connection with prosecuting the Action, plus interest on such attorneys' fees, costs and expenses at the same rate and for the same period as earned by the Settlement Fund (until paid) as may be awarded by the Court (the "Fee and Expense Award"). Class Counsel reserve the right to make additional applications for fees and expenses incurred, but in no event shall LG Releasees be responsible to pay any such additional fees and expenses except to the extent they are paid out of the Settlement Fund. In addition, after final approval, Class Counsel may apply to use any amount paid by LG to pay the past or future expenses of this litigation. In the event the Settlement is reversed on appeal or awards of attorneys' fees and reimbursement of costs are reduced on appeal, any Plaintiffs' counsel that received awards of fees and/or reimbursement of costs that are subject to reduction shall, within ten (10) business days from receiving notice of the applicable court order, refund to the Settlement Fund the required amounts. Each such plaintiffs' counsel's law firm, as a condition of receiving such fees, expenses and costs, on behalf of itself and each partner and/or shareholder of it, agrees that the law firm and its partners and/or shareholders are subject to the jurisdiction of the Court for the purpose of enforcing this paragraph 22(a).

(b)     The Fee and Expense Award, as approved by the Court, shall be paid solely from the Settlement Fund within five (5) Court days after this Agreement becomes final as set forth in Paragraph 11 of this Agreement. Lead Counsel shall allocate the attorneys' fees among Class Counsel in a manner which he in good faith believe reflects the contributions of such counsel to the prosecution and settlement of the Action.

(c)     The procedure for and the allowance or disallowance by the Court of the application by Class Counsel for attorneys' fees, costs and expenses to be paid out of the Settlement Fund are not part of this Agreement, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of the Settlement, and any order or proceeding relating to the Fee and Expense Application, or any appeal from any such order shall not operate to terminate or cancel this Agreement, or affect or delay the finality of the judgment approving the settlement.

(d)     Neither LG nor any other LG Releasee under this Agreement shall have any responsibility for, or interest in, or liability whatsoever with respect to any payment to Class Counsel of any Fee and Expense Award in the Action.

(e)     Neither LG nor any other LG Releasee under this Agreement shall have any responsibility for, or interest in, or liability whatsoever with respect to the allocation among Class Counsel, and/or any other person who may assert some claim thereto, of any Fee and Expense Award that the Court may make in the Action.

F.     Cooperation.

23.     Upon execution of the Agreement, LG shall reasonably cooperate with Lead Counsel as set forth specifically below:

(a)     LG's counsel of record will make themselves available in the United States for up to a total of two (2) meetings (each meeting may last one day), plus reasonable follow-up conversations, with counsel to provide an attorney's proffer of facts known to LG regarding CRT competitor meetings alleged in Plaintiffs' Fourth Consolidated Amended Complaint and other matters which have been provided to counsel for LG, including, without limitation, information known to counsel about the expected testimony of any LG employees and witnesses with knowledge of such matters, provided that such

information is not covered by privilege or other protections available under any applicable United States law. Notwithstanding any other provision in this Agreement, Plaintiffs agree that they and Class Counsel shall maintain all statements made by LG's counsel as strictly confidential; and that they shall not use directly or indirectly the information so received for any purpose other than the prosecution of the Action. The parties and their counsel further agree that any statements made by LG's counsel in connection with and/or as part of this settlement, including the attorney's proffer referred to in this Paragraph 23(a), shall be protected by Federal Rule of Evidence 408, and shall in no event be discoverable by any person or treated as evidence of any kind.

(b)     LG shall identify individuals, such as current or former employees, who may provide discoverable information or potential testimony relevant to the CRT competitor meetings alleged in Plaintiffs' Fourth Consolidated Amended Complaint and other matters which have been provided to counsel for LG. LG shall identify and produce relevant documents (including English translations where available) to the extent such documents are reasonably available and not previously produced in the Action, relevant to the CRT competitor meetings alleged in Plaintiffs' Fourth Consolidated Amended Complaint and other matters which have been provided to counsel for LG.

(c)     Upon reasonable notice after the date of execution of this Agreement, LG agrees to use reasonable efforts to make available for interviews, depositions, and testimony at hearings or trial, via videoconference or at a mutually agreed-upon location or locations (except for testimony at hearings or trial, which shall be at the United States Courthouse of the United States District Court for the Northern District of California), up to four (4) persons, which may consist of current directors, officers, and/or employees of LG (or former directors, officers and/or employees of LG, if such former employees agree to cooperate) whom Lead Counsel, in consultation with counsel for LG, reasonably and in good faith believe to have knowledge regarding the CRT competitor meetings alleged in Plaintiffs' Fourth Consolidated Amended Complaint and other matters which have been provided to counsel for LG. Interviews shall be limited to a total of six (6) hours over one day per interview, plus reasonable follow-up conversations, and can be conducted via videoconference from overseas at the witness's choice. Depositions shall be administered according to the rules and limitations of the Federal Rules of Civil Procedure, regardless of the location at which they take place or the citizenship of the deponent. LG agrees to bear reasonable travel expenses incurred by witnesses pursuant to this Paragraph. LG also

13

agrees to use good faith efforts to obtain the cooperation of former directors, officers and/or employees, as part of the four (4) witnesses identified above, if Lead Counsel asks LG to include such individuals within the list of four (4). However, it is agreed that LG does not have any obligation to make such efforts for any former LG employees that are currently employed by other Defendants. LG shall, however, inform Plaintiffs of the names of any such former LG employees who are currently employed by other Defendants, and shall inform Plaintiffs which Defendant they are employed by. Plaintiffs and Lead Counsel agree that, to the extent practicable, they will consult and coordinate with Lead Counsel for the Direct Purchaser Class, as those terms are defined in the Order Granting Final Approval of Class Action Settlement with LG (Dkt. # 1621), in order to agree on the identity of and scheduling for the up-to four (4) individuals to be made available pursuant to this Paragraph and pursuant to Paragraph 23(c) of the Settlement Agreement between LG and the Direct Purchaser Class dated August 31, 2012.

(d)     LG agrees to provide, at its expense, one or, if necessary, more witnesses for deposition, and, if necessary at trial, to provide information, to the best of their ability, with respect to LG's data regarding sales, pricing, production, capacity and cost of its CRT Products. In addition, LG agrees to provide, at its expense, one or, if necessary, more witnesses to establish, to the best of their ability, the foundation of any LG document or data Lead Counsel identifies as necessary for summary judgment and/or trial.

(e)     If any document protected by the attorney-client privilege, attorney work-product protection, joint defense or any other protection, privilege, or immunity is accidentally or inadvertently produced under this Paragraph, the document shall promptly be destroyed and/or returned to LG, and its production shall in no way be construed to have waived any privilege or protection attached to such document.

(f)     Plaintiffs and Lead Counsel agree they will not use the information provided under this Paragraph for any purpose other than the pursuit of the Action, and will not publicize the information beyond what is reasonably necessary for the prosecution of the action or as otherwise required by law. Any documents and other information provided will be deemed "Highly Confidential" and subject to the protective order entered in the Action as if they had been produced in response to discovery requests and so designated.

24.     In the event that this Agreement fails to receive final approval by the Court as contemplated in Paragraphs 8-11 hereof, including final approval of "the

14

Class" as defined in Plaintiffs' Fourth Consolidated Amended Complaint (or, if that complaint is amended to expand the definition of "the Class," the operative complaint at the time this Agreement is presented for preliminary approval), or in the event that it is terminated by either party under any provision herein, the parties agree that neither Plaintiffs nor Plaintiffs' counsel shall be permitted to introduce into evidence, at any hearing, or in support of any motion, opposition or other pleading in the Action or in any other federal or state or foreign action alleging a violation of any law relating to the subject matter of this Action, any deposition testimony or any documents provided by the LG Releasees, their counsel, or any individual made available by the LG Releasees pursuant to the cooperation provisions of Paragraph 23.

25.    Except as provided in Paragraph 23 of this Agreement, LG need not respond to formal discovery from Plaintiffs or otherwise participate in the Action during the pendency of the Agreement. Neither LG nor Plaintiffs shall file motions against the other during the pendency of the Agreement. In the event that the Agreement is not approved by the Court, or otherwise terminates, LG and Plaintiffs will each be bound by and have the benefit of any rulings made in the Action to the extent they would have been applicable to LG or Plaintiffs had LG been participating in the Action.

26.    LG and Plaintiffs agree not to disclose publicly or to any other defendant or third party the terms of this Agreement until this Agreement is submitted to the Court for approval. Plaintiffs may, however, disclose the fact and amount of this Settlement to the Special Master or the Court. LG may disclose the fact that it has settled the claims of the Class to the defendants in the Action. Plaintiffs may disclose the fact that they have settled their claims against LG to the other plaintiffs in the Action.

G.    Rescission if this Agreement is Not Approved or Final Judgment is Not Entered.

27.    If the Court refuses to approve this Agreement or any part hereof, including if the Court does not certify a settlement class in accordance with the specific class definition set forth in Plaintiffs' Fourth Consolidated Amended Complaint, or if such approval is modified or set aside on appeal, or if the Court does not enter the final judgment provided for in Paragraph 10 of this Agreement, or if the Court enters the final judgment and appellate review is sought, and on such review,

such final judgment is not affirmed in its entirety, then LG and the Plaintiffs shall each, in their sole discretion, have the option to rescind this Agreement in its entirety. Written notice of the exercise of any such right to rescind shall be made according to the terms of Paragraph 38. A modification or reversal on appeal of any amount of Class Counsel's fees and expenses awarded by the Court from the Settlement Fund shall not be deemed a modification of all or a part of the terms of this Agreement or such final judgment.

28.     In the event that this Agreement does not become final, then this Agreement shall be of no force or effect and any and all parts of the Settlement Fund caused to be deposited in the Escrow Account (including interest earned thereon) shall be returned forthwith to LG less only disbursements made in accordance with Paragraph 18 of this Agreement. LG expressly reserves all of its rights and defenses if this Agreement does not become final.

29.     Further, and in any event, Plaintiffs and LG agree that this Agreement, whether or not it shall become final, and any and all negotiations, documents, and discussions associated with it, shall not be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing whatsoever by LG (or the LG Releasees), or of the truth of any of the claims or allegations contained in the complaint or any other pleading filed in the Action, or by any person or entity in any other action, and evidence thereof shall not be discoverable or used directly or indirectly, in any way, whether in the Action or in any other action or proceeding.

30.     This Agreement shall be construed and interpreted to effectuate the intent of the parties, which is to provide, through this Agreement, for a complete resolution of the relevant claims with respect to each LG Releasee as provided in this Agreement.

31.     The parties to this Agreement contemplate and agree that, prior to final approval of the settlement as provided for in Paragraphs 8-11 hereof, appropriate notice 1) of the settlement; and 2) of a hearing at which the Court will consider the approval of this Settlement Agreement will be given to Class members.

H      Miscellaneous.

16

32.    This Agreement does not settle or compromise any claim by Plaintiffs or any Class Member asserted in the Fourth Consolidated Amended Complaint or, if amended, any subsequent Complaint, against any defendant or alleged co-conspirator other than the LG Releasees. All rights against such other defendants or alleged coconspirators are specifically reserved by Plaintiffs and the Class. LG's sales to the Class shall not be removed from the Action.

33.    The United States District Court for the Northern District of California shall retain jurisdiction over the implementation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to this Agreement or the applicability of this Agreement that cannot be resolved by negotiation and agreement by Plaintiffs and LG. This Agreement shall be governed by and interpreted according to the substantive laws of the state of California without regard to its choice of law or conflict of laws principles.

34.    This Agreement constitutes the entire, complete and integrated agreement among Plaintiffs and LG pertaining to the settlement of the Action against LG, and supersedes all prior and contemporaneous undertakings of Plaintiffs and LG in connection herewith. This Agreement may not be modified or amended except in writing executed by Plaintiffs and LG, and approved by the Court.

35.    This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of Plaintiffs and LG. Without limiting the generality of the foregoing, each and every covenant and agreement made herein by Plaintiffs, Lead Counsel or Class Counsel shall be binding upon all Class Members and Releasors. The LG Releasees (other than LG which is a party hereto) are third party beneficiaries of this Agreement and are authorized to enforce its terms applicable to them.

36.    This Agreement may be executed in counterparts by Plaintiffs and LG, and a facsimile signature shall be deemed an original signature for purposes of executing this Agreement.

37.        Neither Plaintiffs nor LG shall be considered to be the drafter of this Agreement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed

against the drafter of this Agreement.

        38.     Where this Agreement requires either party to provide notice or any other communication or document to the other, such notice shall be in writing, and such notice, communication, or document shall be provided by email, facsimile or letter by overnight delivery to the undersigned counsel of record for the party to whom notice is being provided.

39. Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Agreement, subject to Court approval.

Dated: May 28, 2013

*Mario N. Alioto*

Mario N. Alioto
TRUMP, ALIOTO, TRUMP & PRESCOTT LLP
2280 Union Street
San Francisco, CA 94123
Telephone: (415) 563-7200
Facsimile: (415) 346-0679
malioto@tatp.com

**Interim Lead Counsel and Attorneys for the Indirect Purchaser Class**

Dated: May 29, 2013

Hojoon Hwang
MUNGER TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105
Telephone: (415) 512-4000
Facsimile: (415) 644-6909
Hojoon.Hwang@mto.com

**Attorneys for Defendants LG Electronics, Inc.; LG Electronics USA, Inc.; and LG Electronics Taiwan Taipei Co., Ltd.**

# EXHIBIT 2

<u>LEGAL NOTICE</u>

# If You Bought A Cathode Ray Tube Product,

## A Class Action Settlement May Affect You.

| | |
|---|---|
| Cathode Ray Tube (CRT) Products include CRTs, Televisions, Computer Monitors, and other products containing CRTs. | **Para una notificacion en Espanol, llamar o visitar nuestro website.** |

You may be affected by a class action lawsuit involving CRT Products purchased indirectly from the Defendant companies or any co-conspirator (collectively "Defendants"). "Indirect" means that you did not buy the CRT Product directly from any of the Defendants. The lawsuit seeks: (a) nationwide injunctive relief to prohibit the Defendants' behavior that is the subject of the lawsuit and (b) money for indirect purchasers in 21 states and the District of Columbia.

A Settlement has been reached with LG Electronics, Inc.; LG Electronics USA, Inc.; and LG Electronics Taiwan Taipei Co., Ltd. (collectively "LG"). The litigation is continuing against the remaining Defendants. A complete list of the Defendants is set out in the Detailed Notice available at www.CRTsettlement.com.

## What is this case about?

The lawsuit claims that numerous Defendants, including LG, conspired to fix, raise, maintain or stabilize prices of CRT Products resulting in overcharges to consumers who bought CRT Products such as Televisions and Computer Monitors. The Defendants deny that they did anything wrong. The Court has not decided who is right.

## Who is Included?

The "Settlement Class" includes any person or business that indirectly bought in the U.S., for personal use and not for resale, from March 1, 1995 through November 25, 2007, any CRT Product made by the Defendants.

## What does the Settlement Provide?

The Settlement provides for the payment by LG of $25million in cash, plus interest, to the Settlement Class. It also provides that LG will furnish information about the case, including other Defendants' involvement in the alleged conspiracy, to Class Counsel. Money will not be distributed to Settlement Class yet. The lawyers will pursue the lawsuit against the other Defendants to see if any future settlements or judgments can be obtained in the case and then distribute the funds together to reduce expenses. It is possible that money will be distributed to organizations that are, as nearly as practicable, representative of the interests of indirect purchasers of CRT Products instead of Settlement Class members themselves if the cost to process claims would result in small payments to members of the Settlement Class.

## Who Represents You?

The Court has appointed Mario N. Alioto of Trump, Alioto, Trump & Prescott LLP as "Interim Lead Class Counsel" to represent members of the Settlement Class. The Settlement Class is defined in Paragraph 1 of the Order Granting Preliminary Approval of Class Action Settlement with Defendant LG, which is available at www.CRTsettlement.com. You do not have to pay these lawyers to represent you. You may hire your own attorney, if you wish, but if you do so you will be responsible for your own attorney's fees and expenses.

## What are your Options?

If you wish to remain a Settlement Class member you do not need to take any action at this time. If you don't want to be legally bound by the Settlement, you must exclude yourself in writing by **xxxxxxx, 2013**, or you will not be able to sue, or continue to sue, LG about the legal claims in this case. If you remain a Settlement Class member, you may object to the Settlement by **xxxxx, 2013**. The Detailed Notice describes how to exclude yourself or to object. The U.S. District Court for the Northern District of California will hold a Fairness Hearing at xxxx on **xxxxx, 2013**, at 450 Golden Gate Ave., 17th Floor, Courtroom One, San Francisco, CA 94102. The hearing may be moved to a different date or time without additional notice, so it is a good idea to check www.CRTsettlement.com. At this hearing the Court will consider whether the Settlement is fair, reasonable and adequate. The Court will also consider Interim Lead Class Counsel's request, or requests, for payment of up to $5 million from the Settlement Fund to be used for expenses incurred or to be incurred in this case. Class Counsel are not asking for attorneys' fees at this time. At a future time, Interim Lead Counsel will ask the Court for attorneys' fees not to exceed one-third of this and any future settlements. If there are objections or comments, the Court will consider them at that time. You may appear at the hearing, but you don't have to. After the hearing, the Court will decide whether to approve the Settlement. We do not know how long these decisions will take. Please do not contact the Court about this case. Please retain any receipts or other evidence of purchase of any CRT Product. Before disposing of any CRT Product please see the Detailed Notice for recommendations on preserving proof of ownership.

For more details, call toll free 1-800-673-4790, visit www.CRTsettlement.com, or write to CRT Indirect Settlement, c/o The Notice Company, P.O. Box 778, Hingham, MA 02043.

| | |
|---|---|
| **1-800-673-4790** | **www.CRTsettlement.com** |

# EXHIBIT 3

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA

# If You Bought A Cathode Ray Tube Product,

## A Class Action Settlement May Affect You.

Cathode Ray Tube (CRT) Products include Cathode Ray Tubes and finished products that contain a Cathode Ray Tube such as Televisions and Computer Monitors

*A Federal Court authorized this Notice.  This is not a solicitation from a lawyer.*

- There is a lawsuit pending involving CRT Products purchased indirectly from the Defendants or their co-conspirators, as set out below (collectively "Defendants"). "Indirect" means that you did not buy the CRT Product directly from any Defendant.   The lawsuit, which is brought as a Class Action, seeks: (a) nationwide injunctive relief to prohibit the 'Defendants' (listed below) behavior that is the subject of the lawsuit and (b) money for indirect purchasers in 21 states and the District of Columbia.

- The states include: Arizona, California, Florida, Hawaii, Iowa, Kansas, Maine, Michigan, Minnesota, Mississippi, Nebraska, Nevada, New Mexico, New York, North Carolina, North Dakota, South Dakota, Tennessee, Vermont, West Virginia, Wisconsin, and the District of Columbia.

-  A Settlement has been reached with LG Electronics, Inc.; LG Electronics USA, Inc.; and LG Electronics Taiwan Taipei Co., Ltd (called the "Settling Defendant" or "LG").  The litigation is continuing against the remaining Non-Settling Defendants.

- Your legal rights are affected whether you act or don't act.  This Notice includes information on the Settlement and the continuing lawsuit.  Please read the entire Notice carefully.

| These rights and options—and the deadlines to exercise them—are explained in this notice. | |
|---|---|
| You can object or comment on the Settlement | *see* Question 10 |
| You may also exclude yourself from the Settlement | *see* Question 10 |
| You may go to a hearing and ask the Court to speak about the Settlement yourself | *see* Question 14 |

- The Court in charge of this case still has to decide whether to approve the Settlement. The continuing litigation is moving towards trial.

| WHAT THIS NOTICE CONTAINS |
|---|

**BASIC INFORMATION** …………………………………………………………………**PAGE 3, 4**

    1.     Why is there a notice?

    2.     Who are the Defendants and Co-Conspirators?

    3.     What is this lawsuit about?

    4.     Why is there a Settlement but the litigation is continuing?

    5.     What is a Cathode Ray Tube Product?

    6.     What is a class action?

**THE SETTLEMENT CLASS** …………….…………………………………………**PAGES 4, 5, 6**

    7.     How do I know if I'm part of the Settlement Class?

    8.     What does the Settlement provide?

    9.     When can I get a payment?

    10.    What are my rights in the Settlement Class?

    11.    What am I giving up to stay in the Settlement Class?

**THE SETTLEMENT APPROVAL HEARING**…………………………………………………**PAGES 6, 7**

    12.    When and where will the Court decide whether to approve the Settlement?

    13.    Do I have to come to the hearing?

    14.    May I speak at the hearing?

**THE LAWYERS REPRESENTING YOU** …………………………………………………..**PAGE 7**

    15.    Do I have a lawyer in the case?

    16.    How will the lawyers be paid?

**PURCHASE RECORDS**…………………………………………………………..**PAGE 8**

    17.    What steps should I take to demonstrate evidence of purchase/ownership of a CRT Product?

**GETTING MORE INFORMATION** ………………………………………………………**PAGE 8**

    18.    How do I get more information?

**For More Information: Call 1-800-000-0000 or Visit www.CRTsettlement.com**

**BASIC INFORMATION**

| 1.  Why is there a notice? |
|---|

You have the right to know about the litigation and about your legal rights and options before the Court decides whether to approve the Settlement.

The Court in charge of the case is the United States District Court for the Northern District of California, and the case is called *In re Cathode Ray Tube (CRT)) Antitrust Litigation*, MDL No. 1917.  The people who sued are called Plaintiffs and the companies they sued are called Defendants.

| 2.  Who are the Defendants and Co-Conspirators? |
|---|

The Defendant companies include: LG Electronics, Inc., LG Electronics U.S.A., Inc., LG Electronics Taiwan Taipei Co., Ltd, Koninklijke Philips Electronics N.V., Philips Electronics North America Corporation, Philips Electronics Industries (Taiwan), Ltd., Philips da Amazonia Industria Electronica Ltda., LP Displays International, Ltd. f/k/a LG.Philips Displays, Samsung SDI Co. Ltd., Samsung SDI America, Inc., Samsung SDI Mexico S.A. de C.V., Samsung SDI Brasil Ltda., Shenzhen Samsung SDI Co. Ltd., Tianjin Samsung SDI Co. Ltd., Samsung SDI Malaysia Sdn. Bhd., Toshiba Corporation, Toshiba America Consumer Products, LLC., Toshiba America Information Systems, Inc., Toshiba America Electronics Components, Inc. Toshiba Display Devices (Thailand) Company, Ltd., P.T. Tosummit Electronic Devices Indonesia,  Panasonic Corporation f/k/a Matsushita Electric Industrial, Ltd., Panasonic Corporation of North America, Matsushita Electronic Corporation (Malaysia) Sdn Bhd., MT Picture Display Co., Ltd., Beijing-Matsushita Color CRT Company, Ltd. (BMCC), Hitachi, Ltd., Hitachi Displays, Ltd., Hitachi Electronic Devices (USA), Inc., Hitachi America, Ltd., Hitachi Asia, Ltd., Shenzhen SEG Hitachi Color Display Devices, Ltd., Chunghwa Picture Tubes Ltd., Chunghwa Picture Tubes (Malaysia) Sdn. Bhd.,  IRICO Group Corporation, IRICO Display Devices Co., Ltd., IRICO Group Electronics Co., Ltd., Thai CRT Company, Ltd., and  Samtel Color, Ltd., Thomson SA (n/k/a Technicolor SA), Thomson Consumer Electronics, Inc. (n/k/a/ Technicolor USA, Inc.), Videocon Industries, Ltd., Mitsubishi Electric Corporation and Mitsubishi Electric  & Electronics USA, Inc.

| 3.  What is this lawsuit about? |
|---|

The lawsuit claims that the Defendants conspired to fix, raise, maintain or stabilize prices of CRT Products resulting in overcharges to consumers who bought CRT Products such as Televisions and Computer Monitors. The Defendants deny that they did anything wrong. The Court has not decided who is right.

| 4.  Why is there a Settlement but the litigation is continuing? |
|---|

Settling Defendant has agreed to settle the lawsuit. The case is continuing against the remaining Non-Settling Defendants.  Additional money may become available in the future as a result of a trial or future settlements, but there is no guarantee that this will happen. Plaintiffs previously settled with defendants Chunghwa Picture Tubes Ltd. and Chunghwa Picture Tubes (Malaysia) Sdn Bhd., for $10 million, which settlement became final on March 22, 2012.

**For More Information: Call 1-800-000-0000 or Visit www.CRTsettlement.com**

**5.  What is a Cathode Ray Tube (CRT) Product?**

For the purposes of the Settlement, Cathode Ray Tube Products means Cathode Ray Tubes of any type (e.g. color display tubes, color picture tubes and monochrome display tubes) and finished products which contain Cathode Ray Tubes, such as Televisions and Computer Monitors.

**6.  What is a class action?**

In a class action, one or more people, called class representatives, sue on behalf of people who have similar claims.  All these people are a class or class members, except for those who exclude themselves from the class.

If the Plaintiffs obtain money or benefits as a result of a trial or future settlement, you will be notified about how to ask for a share or what your other options are at that time. These things are not known right now. Important information about the case will be posted on the website, www.CRTsettlement.com, as it becomes available. Please check the website to be kept informed about any future developments.

### THE SETTLEMENT CLASS

**7.  How do I know if I am part of the Settlement Class?**

You are part of the settlement class if you meet the requirements for the Nationwide Injunctive Class and/or the Damages Classes.

NATIONWIDE INJUNCTIVE CLASS:
 All  persons or entities that indirectly purchased in the U.S., for their own use and not for resale, from March 1, 1995 through November 25, 2007, any CRT Product made by the Defendants or their co-conspirators.

STATEWIDE DAMAGES CLASSES:
All persons or entities in Arizona, California, Florida, Iowa, Kansas, Maine, Michigan, Minnesota, Mississippi, New Mexico, New York, North Carolina, North Dakota, South Dakota, Tennessee, Vermont, West Virginia, Wisconsin or the District of Columbia, who or which indirectly purchased for their own use and not for resale, from March 1, 1995 through November 25, 2007, any CRT Product made by the Defendants or their co-conspirators.

 All persons or entities in Hawaii who or which indirectly purchased for their own use and not for resale, from June 25, 2002 through November 25, 2007, any CRT Product made by the Defendants or their co-conspirators.

All persons or entities in Nebraska who or which indirectly purchased for their own use and not for resale, from July 20, 2002 through November 25, 2007, any CRT Product made by the Defendants or their co-conspirators.

All persons or entities in Nevada who or which indirectly purchased for their own use and not for resale, from February 4, 1999 through November 25, 2007, any CRT Product made by the Defendants or their co-conspirators.

> Specifically excluded from these Classes are the Defendants; the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and, any affiliate, legal representative, heir or assign of any Defendant. Also excluded are named co-conspirators, federal, state or local government entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

## 8. What does the Settlement provide?

The Settlement provides for the payment by Settling Defendant of $25 million in cash, plus interest, to the Settlement Class. It also provides that the Settling Defendant will furnish information about the case, including other defendants' involvement in the alleged conspiracy, to Class Counsel. Finally, it provides that part of the $25 million settlement fund may be used to pay expenses incurred, or to be incurred in the litigation. Plaintiffs intend to request that the Court allow them to use up to $5 million from this settlement fund to pay expenses incurred in this litigation.

More details are in the Settlement Agreement, available at www.CRTsettlement.com.

## 9. When can I get a payment?

No money will be distributed to Class Members yet.  The lawyers will pursue the lawsuit against the Non-Settling Defendants to see if any future settlements or judgments can be obtained in the case and then be distributed together, to reduce expenses.  It is possible that money will be distributed to organizations that are, as nearly as practicable, representative of the interests of indirect purchasers of CRT Products instead of Class members themselves if the cost to process claims would result in small payments to Class Members.

## 10.  What are my rights in the Settlement Class?

**Remain in the Settlement Class**:  If you wish to remain a member of the Settlement Class you do not need to take any action at this time.

**Get out of the Settlement Class**:  If you wish to keep your right to sue the Settling Defendant about the claims in this case you must exclude yourself.  You will not get any money from this settlement if you exclude yourself from the Settlement.

To exclude yourself from the Settlement, you must send a letter that includes the following:
- Your name, address and telephone number,
- A statement saying that you want to be excluded from *In re Cathode Ray Tube (CRT) Antitrust Litigation*, MDL No. 1917, LG Indirect Purchaser Settlement, and
- Your signature.

**For More Information: Call 1-800-000-0000 or Visit www.CRTsettlement.com**

You must mail your exclusion request, postmarked no later than **Month 00, 2013**, to:

CRT Class Action
C/O The Notice Company
PO Box 778
Hingham, MA 02043

**Remain in the Settlement Class and Object**: If you have comments about, or disagree with, any aspect of the Settlement, you may express your views to the Court by writing to the address below. The written response needs to include your name, address, telephone number, the case name and number (*In re Cathode Ray Tube (CRT) Antitrust Litigation*, MDL No. 1917), proof of membership in the class, a brief explanation of your reasons for objection, and your signature. The response must be postmarked no later than **Month 00, 2013** and mailed to:

| COURT | INTERIM LEAD COUNSEL | DEFENSE COUNSEL |
|---|---|---|
| Clerk's Office United States District Court for the District of Northern California 16th Floor 450 Golden Gate Ave San Francisco, CA 94102 | Mario N. Alioto Trump, Alioto, Trump & Prescott LLP 2280 Union Street San Francisco, CA 94123 | Hojoon Hwang Munger Tolles & Olson LLP 560 Mission Street, 27th Floor San Francisco, CA 94105 |

### 11. What am I giving up to stay in the Settlement Class?

Unless you exclude yourself from the Settlement Class, you can't sue Settling Defendant, continue to sue, or be part of any other lawsuit against Settling Defendant about the legal issues in this case. It also means that all of the decisions by the Court will bind you. The "Release of Claims" includes any causes of actions asserted or that could have been asserted in the lawsuit, as described more fully in the Settlement Agreement. The Settlement Agreement is available at www.CRTsettlement.com.

### 12. When and where will the Court decide whether to approve the Settlement?

The Court will hold a Fairness Hearing at <Time> on **Month 00, 2013**, at 450 Golden Gate Ave., 17th Floor, Courtroom One, San Francisco, CA 94102. The hearing may be moved to a different date or time without additional notice, so it is a good idea to check www.CRTsettlement.com. At this hearing the Court will consider whether the Settlement is fair, reasonable and adequate. The Court will also consider Interim Lead Counsel's request, or requests, for payment of up to $5 million from the Settlement Fund to be used for expenses incurred in this case. If there are

objections or comments, the Court will consider them at that time.  After the hearing, the Court will decide whether to approve the Settlement.  We do not know how long these decisions will take.

| **13.  Do I have to come to the hearing?** |
| --- |

No.  Interim Lead Counsel will answer any questions the Court may have.  But you are welcome to come at your own expense.  If you send an objection or comment, you don't have to come to Court to talk about it.  As long as you mailed your written objection on time, the Court will consider it.  You may also pay another lawyer to attend, but it's not required.

| **14.  May I speak at the hearing?** |
| --- |

If you want your own lawyer instead of Interim Lead Counsel to speak at the Final Approval Hearing, you must give the Court a paper that is called a "Notice of Appearance."  The Notice of Appearance should include the name and number of the lawsuit (*In re Cathode Ray Tube (CRT) Antitrust Litigation*, MDL No. 1917), and state that you wish to enter an appearance at the Fairness Hearing.  It also must include your name, address, telephone number, and signature.  Your "Notice of Appearance" must be postmarked no later than **Month 00, 2013**.  You cannot speak at Hearing if you previously asked to be excluded from the Settlement.

The Notice of Appearance must be sent to the addresses listed in Question 10.


### THE LAWYERS REPRESENTING YOU

| **15.  Do I have a lawyer in this case?** |
| --- |

The Court has appointed Mario N. Alioto of Trump, Alioto, Trump & Prescott LLP to represent you as "Interim Lead Counsel."  You do not have to pay Interim Lead Counsel. If you want to be represented by your own lawyers, and have that lawyer appear in court for you in this case, you may hire one at your own expense.

| **16.  How will the lawyers be paid?** |
| --- |

At a future time, Interim Lead Counsel will ask the Court for attorneys' fees not to exceed one-third (1/3) of the $25,000,000 Settlement Fund plus reimbursement of their costs and expenses, in accordance with the provisions of the Settlement.  Interim Lead Counsel may also request that an amount be paid to each of the Class Representatives who helped the lawyers on behalf of the whole Class.

## PURCHASE RECORDS

**17. What steps should I take to demonstrate evidence of purchase/ownership of a CRT Product?**

If you have purchase receipts, invoices or any other proof of purchase of any CRT Product, please retain those documents. If you presently have a CRT Product, please keep it if at all possible.  If you are unable to do so, please photograph the front and rear of the CRT Product including any brand name and record the model number, serial number, size and any other information which you believe will help identify the manufacturer of the CRT Product. You may have to remove the rear panel and photograph the manufacturer's  name located on the actual CRT tube. Please make sure the TV or monitor is unplugged before doing so. If you have any questions or concerns in connection with proof of purchase or identifying the manufacturer, please see Question 18 below.

### GETTING MORE INFORMATION

**18.  How do I get more information?**

This Notice summarizes the lawsuit and the Settlement.  You can get more information about the lawsuit and Settlements at www.CRTsettlement.com, by calling 1-800-000-0000, or writing to CRT Class Action, P.O. 0000, City, ST 00000.  Please do not contact  the Court about this case.