United States District Court
For the Northern District of California

1

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                  FOR THE NORTHERN DISTRICT OF CALIFORNIA

8

9    IN RE: CATHODE RAY TUBE (CRT)      )  MDL No. 1917
     ANTITRUST LITIGATION              )
10                                      )  Case No. C-07-5944-SC
     _____)
11                                      )  ORDER ADOPTING SPECIAL
     This Order Relates To:            )  MASTER'S REPORTS AND
12                                      )  RECOMMENDATIONS ON
     ALL INDIRECT-PURCHASER ACTIONS    )  DEFENDANTS' MOTION TO
13                                      )  EXCLUDE EXPERT TESTIMONY
                                        )  AND INDIRECT-PURCHASER
14                                      )  PLAINTIFFS' MOTION FOR
                                        )  CLASS CERTIFICATION
15                                      )
                                        )
16   _____)

17

18

19   I.   **INTRODUCTION**

20        Now before the Court are the parties' objections to and

21   motions to adopt two of the Interim Special Master's ("ISM")

22   Reports and Recommendations ("R&Rs").  One R&R concerns the

23   Indirect-Purchaser Plaintiffs' ("IPPs") Motion for Class

24   Certification.  ECF No. 1742 ("Class R&R").  The other concerns the

25   Defendants' Motion to Strike the Proposed Expert Testimony of Dr.

26   Janet S. Netz.  ECF No. 1743 ("Expert R&R").  The parties'

27   objections to and motions to adopt both R&Rs are fully briefed,[1]

28   _____
     [1] ECF Nos. 1812 ("Class Obj'ns"), 1813 ("Expert Obj'ns"), 1885

United States District Court
For the Northern District of California

1   and the matter is appropriate for decision without oral argument

2   per Civil Local Rule 7-1(b).  As explained below, the Court ADOPTS

3   both R&Rs in full, finding them in all respects well-reasoned,

4   thorough, and correct.

5

6   **II.   BACKGROUND**

7        The parties are familiar with this case's facts.  A very brief

8   summary of these motions' postures follows, but the Court will not

9   catalog all of the parties' contentions from the underlying

10  motions.  Those were well summarized by the ISM's rigorous and

11  thorough analyses, and the Court ADOPTS the ISM's summaries and

12  discussions of the facts and the parties' contentions in full.

13       The IPPs are a putative class that purchased products

14  containing cathode-ray tubes ("CRTs").  The class alleges that it

15  was harmed by Defendants' conspiracy to fix CRT prices.  Years of

16  contentious litigation have led to the two present motions: the

17  IPPs move to certify their class, supported in part by the

18  declaration of their expert Dr. Janet S. Netz; and Defendants move

19  to strike the proposed testimony of Dr. Netz.[2]  The parties briefed

20  both motions and submitted supplemental briefs on the Supreme

21  Court's recent decision in Comcast Corporation v. Behrend, 133 S.

22  Ct. 1426 (2013), an antitrust class action case that concerned

23  issues relevant to the present action.  The ISM held hearings on

24

25  ("Class Reply"), 1887 ("Expert Reply").  Per the Court's July 3,
    2013 Order, ECF No. 1761, Plaintiffs' responsive briefs are deemed
26  motions to adopt.

27  [2] Dr. Netz's declarations -- the original declaration ("Netz
    Decl.") with its errata, and her rebuttal declaration ("Netz
28  Rebuttal Decl."), both in support of the IPPs' motion for class
    certification -- were filed with the Court under seal.

2

the parties' motions and submitted his R&Rs to the Court.  He

recommends that the Court grant the IPPs' motion for class

certification and deny Defendants' motion to strike.  Defendants

now object to both R&Rs, and the IPPs move to adopt them.

**III.   <u>LEGAL STANDARD</u>**

   **A.   <u>Review of R&Rs</u>**

   The Court reviews the Special Master's factual findings for

clear error, his legal conclusions de novo, and his procedural

decisions for abuse of discretion.  Fed. R. Civ. P. 53(f)(3)-(4);

ECF No. 302 ("Order Appointing Special Master").

   **B.   <u>Motion for Class Certification</u>**

   Rule 23 of the Federal Rules of Civil Procedure governs class

actions.  It is the plaintiffs' burden to show that they have met

the four requirements of Rule 23(a) and at least one requirement of

Rule 23(b).  Rule 23(a) states that a district court may certify a

class only if:

> (1) the class is so numerous that joinder of
> all members is impracticable; (2) there are
> questions of law or fact common to the
> class; (3) the claims or defenses of the
> representative parties are typical of the
> claims or defenses of the class; and (4) the
> representative parties will fairly and
> adequately protect the interests of the
> class.

These four requirements are called (1) numerosity, (2) commonality,

(3) typicality, and (4) adequacy of representation.  <u>Mazza v. Am.</u>

<u>Honda Motor Co., Inc.</u>, 666 F.3d 581, 588 (9th Cir. 2012).  The

class definition must also be precise, objective, and presently

ascertainable, meaning that it must be administratively feasible

for the court to determine whether an individual is a member of the

**United States District Court**
For the Northern District of California

1   class.  See Mazur v. eBay, Inc., 257 F.R.D. 563, 567 (N.D. Cal.

2   2009); O'Connor v. Boeing N. Am., Inc., 184 F.R.D. 311, 319 (C.D.

3   Cal. 1998).

4       The IPPs claim that their class should be certified under Rule

5   23(b)(3), which requires the district court to find "that the

6   questions of law or fact common to class members predominate over

7   any questions affecting only individual members, and that a class

8   action is superior to other available methods for fairly and

9   efficiently adjudicating the controversy."  This subsection must be

10  satisfied "through evidentiary proof."  Comcast, 133 S. Ct. at

11  1431.  However, proving predominance does not require plaintiffs to

12  prove that every element of a claim is subject to classwide proof:

13  they need only show that common questions predominate over

14  questions affecting only individual class members.  Amgen Inc. v.

15  Ct. Retirement Plans and Trust Funds, 133 S. Ct. 1184, 1196 (2013).

16      Further, the district court's class-certification analysis

17  "must be 'rigorous' and may 'entail some overlap with the merits of

18  the plaintiff's underlying claim.'"  Id. at 1194 (2013) (quoting

19  Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011)).

20  Even so, Rule 23 does not permit the court to "engage in free-

21  ranging merits inquiries at the certification stage."  Id. at 1194-

22  95.  The court may consider merits questions only to the extent

23  that they are relevant to whether the Rule 23 prerequisites are

24  satisfied.  Id. at 1195.

25      If the court finds that the moving party has met its burden of

26  proof, the court has broad discretion to certify the class.  Zinser

27  v. Accufix Research Inst., Inc., 253 F.3d 1180, 1186, amended by

28  273 F.3d 1266 (9th Cir. 2001).

### C.   **Motion to Strike Expert Testimony**

Federal Rule of Evidence 702 states that expert testimony is admissible if "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue."  This expert testimony must be both relevant and reliable.  Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 589 (1993).  When considering evidence proffered under Rule 702, the district court must act as a gatekeeper by making a preliminary determination that the expert's proposed testimony is reliable.  Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141, 150 (1999).  The Ninth Circuit's policy on admissibility is liberal, though the district court must focus on the proposed evidence's scientific reliability and relevance instead of its persuasiveness.  See Ellis v. Costco Wholesale Corp., 657 F.3d 970, 982 (9th Cir. 2011).  The district court has broad latitude in both determining whether an expert's testimony is reliable and deciding how to determine the testimony's reliability.  Id.

When an expert's testimony relates to damages calculations in a class certification case, the district court must undertake a rigorous analysis of the expert's opinions in the class certification context, such as whether the opinions are consistent with the liability case and whether they demonstrate that case's proposed damages are measurable on a classwide basis.  Comcast, 133 S. Ct. at 1433.

///

///

///

///

**United States District Court**
For the Northern District of California

1  **IV.**   **DISCUSSION**

2         **A.**   **Motion for Class Certification**

3         Defendants do not challenge the ISM's findings on

4  ascertainability, numerosity, commonality, typicality, or adequacy

5  of representation.  They only challenge his conclusions as to Rule

6  23(b)(3): that common questions predominate over individual ones in

7  this case.  In determining whether the predominance requirement is

8  satisfied, the court must identify the case's issues and determine

9  which are subject to common proof and which are subject to

10  individualized proof.  See In re TFT-LCD Antitrust Litig., 267

11  F.R.D. 583, 600 (N.D. Cal. 2010.  Liability in an antitrust case

12  requires (1) a conspiracy to fix prices in violation of the

13  antitrust laws; (2) an antitrust injury -- i.e., the impact of the

14  defendants' unlawful activity; and (3) damages caused by the

15  antitrust violations.  Id.

16     The IPPs presented Dr. Netz's expert report to support their

17  contention that they can prove antitrust impact on a classwide

18  basis.  The ISM thoroughly and correctly summarized Dr. Netz's

19  report in both R&Rs, and the Court ADOPTS those findings here.  A

20  relatively brief summary follows.

21     Dr. Netz found that Defendants' industry is ripe for

22  cartelization and price-fixing because (1) collectively, Defendants

23  had a ninety-percent market share, and alternative CRT sources were

24  essentially unavailable; (2) barriers to entry for the CRT market

25  are high; (3) Defendants met and exchanged price-fixing

26  information, and policed cheating among themselves through

27  checkups, punishments, and most-favored-customers agreements.  Netz

28  Decl. at 36-58.  Dr. Netz also found that Defendants' meeting

**United States District Court**
For the Northern District of California

documents state the prices that Defendants wanted to set (the "target prices"), and that based on the available data, Defendants were generally able to charge prices "at least 95 percent as high as the target price 63 percent of the time, and only 13 percent of the sales were more than 15 percent below the cartel's target price." Netz Decl. at 63; Netz Decl. Exs. 14-17; Netz Rebuttal Decl. at 3-4; Expert R&R at 7-8. These facts led Dr. Netz to conclude that the cartel was successful at increasing prices.

Using qualitative and quantitative methods, Dr. Netz also concluded that it is more probable than not that the cartel's price increases impacted all, or nearly all, direct purchasers in a common way. See Netz Decl. at 68-70.

First, to account for the fact that the CRT market is highly differentiated -- that is, factors like CRT and customer characteristics will impact prices -- Dr. Netz found that the CRT cartel broadened its price-fixing impact by fixing the prices of CRT models with different characteristics and then setting fixed price differentials among models. Id. at 66-68. Dr. Netz cited economic theory to support the contention that fixing a target price for one particular model will also increase the prices of non-target-priced models: if the price rises on a price-fixed model, customers will migrate toward alternative models, raising demand for them and therefore raising their prices. Id. Quantitatively, Dr. Netz ran a hedonic regression[3] to analyze the

---

[3] Regression analysis is a common type of economic analysis that is used to estimate the relationships among variables in order to predict how a dependent variable will change when the independent variables are varied. See Netz Decl. at 85. A hedonic regression is a type of regression analysis used to correlate the prices of goods with the goods' varying features or qualities. See Netz Decl. at 68 n.219.

effects of different CRT characteristics on the overall price of
the goods, in which she incorporated documentary proof of
Defendants' target prices and the principal model characteristics
of the CRTs (size, shape, major or minor customer, and whether the
CRT was sold with add-ons or as a bare CRT).  Expert R&R at 9.  Dr.
Netz found that more than 90 percent of the variation in prices for
different CRTs is a function of those common principal
characteristics, and so the prices for different models of CRTs
tended to move in tandem, demonstrating a common pricing structure.
Netz Decl. at 68-70.  In other words, common influences on the
price structure could be estimated using a formula, and by the same
type of regression analysis, a very high percentage of sales prices
could be determined by common variables.  Therefore, Dr. Netz's
declaration shows that proof of harm to direct purchasers could be
proved without individual inquiry.

Second, Dr. Netz evaluated how and whether the direct
purchasers could pass on price increases to indirect purchasers.
She found that they could and did.  Dr. Netz cited economic theory
stating that firms increase prices to cover significant, non-
transitory, industry-wide price increases but may absorb price
increases that are minimal, temporary, or narrow.  Netz Decl. at
72-78.  In a highly competitive industry, pass-through rates
approach 100 percent, meaning that 100 percent of a cost increase
is passed on in the form of a price increase.  Id. at 73, 77.  In a
chain of distribution, pass-through rates for each distribution may
be calculated in the form of a "channel-length" pass-through rate,
which is the product of pass-through rates for each link in a
distribution chain.  Id. at 76-77.

Dr. Netz cited documentary evidence stating that Defendants anticipated and observed that price increases for CRTs were being incorporated into CRT products. Netz Decl. at 78-79, Exs. 29-32. Dr. Netz also provided methods for showing common proof of overcharges for both direct and indirect purchasers.

For direct purchasers, Dr. Netz offers four methods to estimate the price direct purchasers would have paid had there been no cartel (the "but-for price"). First, the "economic determinants" method uses regression analysis to isolate the impact of the cartel's activities from other price determinants like demand, cost, and market structure, by using data from inside and outside the cartel period. Netz Decl. at 85-90. Second, the "benchmark method" identifies an industry that faced similar demand and cost structures to the CRT industry, but that was not cartelized. Id. at 90-91. This method evaluates market outcomes for the non-cartelized industry and estimates outcomes in the cartelized CRT industry absent the cartel. Id. Third, the "simulation method" creates a model of the CRT industry using demand, cost, and competition data to estimate marginal prices in the absence of a cartel. Id. at 92-96. Fourth, the "market power method" quantifies overcharges by using the cartel members' gain in market power, obtained through collusion, as a basis for calculating but-for prices. Id. at 96. This method estimates a firm's but-for elasticity of demand and compares it to the cartelized firm's elasticity of demand, in order to measure market power and translate that into a but-for price. Id. at 96-97. Dr. Netz provides substantial academic and theoretical support for each of her methods. She also concludes that sufficient data is

available for all of these methods, and each method relies on

common data (not individualized evidence). Id. at 97.

For indirect purchasers, Dr. Netz conducted a total of forty-

seven regression studies using different common data sets to

determine the pass-through of direct-purchaser overcharges to

indirect-purchaser price increases. See Netz Decl. at 99 (noting

initial forty studies); Netz Rebuttal Decl. at 74 (adding

additional seven studies). Her regression model for estimating

pass-through rates regresses the price of the product at the bottom

of the channel (the end-customer's payment amount) on the cost at

the top of the distribution channel (how much Defendants charged

direct customers). Id. at 98-99. Dr. Netz provides two approaches

for estimating channel-length pass-through: the "top-and-bottom"

approach, which looks at the relationship between costs at the top

of the distribution chain and prices at the bottom; and the "top-

to-bottom" approach, which estimates the pass-through rate at each

level of the distribution chain and then multiplies them. Id. at

102-104. Her expert declaration and its exhibits describe her data

and variables, and her conclusion based on the forty-seven models

is that the pass-through rate down the distribution channel is at

least 100 percent of the cartel's overcharge, meaning that

virtually all class members suffered common harm. Netz Decl. at

97-104; Netz Rebuttal Decl. at 74-75. Further, Dr. Netz states

that this harm can be quantified by common evidence and methods.

Having reviewed Dr. Netz's proposed evidence and Defendants'

arguments as to why it does not suffice to show predominance under

Rule 23(b)(3), the ISM found all of Defendants' arguments lacking

and concluded that the IPPs had satisfied the predominance

United States District Court
For the Northern District of California

requirement.  Defendants now make the following arguments as to why the ISM erred in finding that common issues predominate in this case:

> (1) The ISM applied the wrong legal standard in evaluating the IPPs' burden to establish a common method for proving that each class member was injured;
> (2) The ISM is wrong as a matter of law that a guilty plea by one Defendant for one product reduces the IPPs' burden under Rule 23(b)(3) to establish impact and injury to all class members;
> (3) The ISM used an outdated, pre-<u>Comcast</u> legal standard in finding that the IPPs met their burden to establish a reliable method for assessing classwide damages using common proof;
> (4) Because of his legal errors in assessing the IPPs' burden of proof, the ISM failed to recognize the key substantive failings in the IPPs' expert Dr. Netz's analysis;
> (5) The MDL <u>In re TFT-LCD Antitrust Litigation</u>, MDL No. 1827, No. M 07-1827 SI, is not a basis for certifying an IPP class in this case.

Class Obj'ns at 6-24.

> **i.**   **The Legal Standard in Evaluating the IPPs' Burden to Establish a Common Method for Proving Class Injuries**

Defendants argue that the ISM "bases his analysis on the erroneous legal proposition that plaintiffs are not required to establish a reliable common methodology that is capable of proving that each class member sustained individual injury as a result of the alleged antitrust violation."  Class Obj'ns at 7.

Defendants also claim that the ISM misinterpreted the common evidence requirement as going only to Dr. Netz's damage methodologies, even though fact of injury and measure of damages are separate elements of an antitrust claim.  <u>Id.</u> at n.13. Defendants' argument is based on their contention that Dr. Netz's

**United States District Court**
For the Northern District of California

11

1  proposed testimony does not establish that any, let alone all,

2  class members paid a supra-competitive price, since according to

3  Defendants, Dr. Netz's data set does not show how many consumers

4  purchased products at supra-competitive levels.  Id. at 9-10.

5      Further, Defendants argue Dr. Netz's data set also proves that

6  there were uninjured class members.  Id. at 10.  Defendants

7  conclude that all of these contentions prove that Dr. Netz's

8  evidence, on its face, cannot possibly satisfy the legal

9  requirement that a putative class must establish a common method

10  for proving that all, or almost all, of the class members were

11  injured by the alleged antitrust violation.  See id. at 7, 10-11.

12      Defendants' argument on this point is essentially that the

13  IPPs must be able to prove at the class certification stage that

14  every single (or basically every single) class member was injured

15  by Defendants' conduct.  This contention is wrong.  The Court's job

16  at this stage is simple: determine whether the IPPs showed that

17  there is a reasonable method for determining, on a classwide basis,

18  the antitrust impact's effects on the class members.  See In re

19  TFT-LCD, 267 F.R.D. at 601; see also In re Dynamic Random Access

20  Memory (DRAM) Antitrust Litig., No. M 02-1486 PJH, 2006 WL 1530166,

21  at *9 (N.D. Cal. June 5, 2006).  This is a question of methodology,

22  not merit.  See In re DRAM, 2006 WL 1530166, at *9.  Defendants

23  continually argue that the ISM's conclusions were based on a faulty

24  standard or that the standard has somehow changed drastically under

25  Dukes, Comcast, or Amgen, but the Court does not find that this is

26  true.  None of those cases changed the standard that the ISM

27  applied.  It is true that the Court's rigorous analysis overlaps

28  with the merits of the IPPs' claims and requires that the IPPs make

1    an evidentiary case for predominance, <u>Comcast</u>, 133 S. Ct. at 1431;

2    <u>Amgen</u>, 133 S. Ct. at 1196; <u>Dukes</u>, 131 S. Ct. at 2551, but

3    Defendants are trying to push the ISM and the Court toward a full-

4    blown merits analysis, which is forbidden and unnecessary at this

5    point, <u>Amgen</u>, 133 S. Ct. at 1194-95

6        Further, Defendants continually mischaracterize Dr. Netz's

7    report and the ISM's R&Rs as acknowledging but ignoring false

8    positives or uninjured class members.  That is not what Dr. Netz or

9    the ISM said at any point.  The Court's analysis of the record does

10   not show, as Defendants argue, that Dr. Netz ever states that her

11   model shows a large but unknown number of uninjured class members.

12   Again, the ISM found, and the Court finds now, that Dr. Netz's

13   analyses show common impact, and the IPPs need not prove, at the

14   class certification stage, that every single class member was in

15   fact injured in a specific way.  Defendants' arguments, which are

16   mostly based on contentions in deposition transcripts and their own

17   expert's testimony, go to the IPPs' claims' merits, not their

18   methods, and that issue is for the jury to decide.

19       Based on Dr. Netz's methodology, described above, and the

20   ISM's thorough R&Rs, the Court is satisfied that for class

21   certification purposes, the IPPs have established a common method

22   for proving that each class member was injured, and that the ISM

23   did not err in his R&R on this point.

24   **ii.    <u>Guilty Pleas</u>**

25       Defendants argue that the ISM applied a "lower than usual

26   burden" for demonstrating common impact in this case because in

27   this case, as in <u>In re TFT-LCD</u>, one defendant has pleaded guilty to

28   antitrust violations.  Class Obj'ns at 11 (citing Class R&R at 20

13

n.5).  This argument stretches what the R&R actually says.  The ISM
referenced the guilty plea in a footnote in one page of a lengthy,
detailed analysis of classwide impact, which as the Court found
above was undertaken using the proper standard of review.  The
Court finds that the ISM did not err in referencing the guilty
plea.

 **iii.**  **The IPPs' Standard for Establishing a Reliable
Method for Assessing Classwide Damages**

 Defendants argue that the ISM erred in concluding that Dr.
Netz offered a sufficient methodology for assessing classwide
damages using common proof, and that the reliability of her common
damages theories should be adjudicated at trial instead of at class
certification.  Class Obj'ns at 13 (citing Class R&R at 36).  They
state that the ISM did not follow the Comcast standard, which
requires that alleged damages be measurable on a classwide basis
through reliable common economic evidence.  Id. (citing Comcast,
133 S. Ct. at 1433).  As Defendants characterize Comcast, the
case's rule does not only apply in cases in which plaintiffs assert
multiple theories of antitrust liability but fail to tie their
proposed damages measurement to the theory on which they ultimately
rely.  Id. at 14.  Rather, they essentially argue that Comcast
requires plaintiffs to provide proof of, and calculate, damages at
the class certification stage.  Id.

 According to Defendants, under Comcast, the IPPs cannot
demonstrate that "the methodology is a just and reasonable
inference" and not merely "speculative."  Id. (citing Comcast, 133
S. Ct. at 1431, 1433).  Defendants state that because Dr. Netz did
not calculate damages and said during a deposition that "it is

14

**United States District Court**
For the Northern District of California

1  within the realm of possibility" that one of the methods might not
2  be implementable, the ISM erred in finding her methodology
3  acceptable.

4      Contrary to Defendants' arguments, <u>Comcast</u> does not require
5  the IPPs to prove the merits of their claim at this point.
6  Defendants insist that it requires putative class action plaintiffs
7  to prove and calculate their damages at the class certification
8  phase.  That is not exactly what the case says.  In <u>Comcast</u>, the
9  putative plaintiff class had asserted four theories of antitrust
10 impact against a defendant.  131 S. Ct. at 1430-31.  The district
11 court accepted one of the four theories as capable of classwide
12 proof and rejected the rest.  <u>Id.</u> at 1431.  However, the plaintiff
13 class's expert's model did not isolate damages resulting from that
14 the one acceptable theory.  It provided a more general theory of
15 damages.  The Court of Appeals affirmed the district court's
16 certification of the class, holding that the defendant's argument
17 on the imprecise damages model was a premature attack on the
18 methodology's merits, and stating that the plaintiffs did not need
19 to tie each theory of antitrust impact to an exact calculation of
20 damages.  <u>Id.</u>

21     The Supreme Court reversed.  First, the Court emphasized the
22 necessity of district courts' probing behind the pleadings, to some
23 extent, to make a rigorous analysis of whether Rule 23 has been
24 satisfied.  <u>Id.</u> at 1432.  Second, the Court held that per
25 straightforward application of class certification principles, it
26 is clear that a putative class's model must establish that the
27 theory of damages they invoke be capable of measurement on a
28 classwide basis.  <u>Id.</u> at 1432-33.  Since the <u>Comcast</u> plaintiffs

**United States District Court**
For the Northern District of California

advanced one theory of antitrust impact, they were required to provide a model measuring damages attributable to that theory of liability, though they did not need to make an exact calculation. Id. at 1433.  "A method" for measuring damages is therefore not enough -- it needs to be "the method" in relation to the theory of liability the plaintiffs assert.  See id.  The Court effectively illustrated plaintiffs' error in Comcast with an example of the problems inherent in allowing putative classes to assert vague damages for various methodologies.  Across a geographic area, numerous groups of plaintiffs might have been harmed in different ways (e.g., elimination of competition in one county, and a combination of alleged antitrust effects in another), making it impossible to accept the methodology of damages since the whole class had been harmed in various ways.  Id. at 1434-35.  The facts of Comcast presented a situation in which the plaintiffs' theory of damages did not map to their theory of liability, so the plaintiffs failed to show through common evidence that all class members had been harmed by the alleged conspiracy.

Such a situation does not exist in this case.  The IPPs assert one theory of antitrust harm: that the cartel overcharged direct purchasers of CRTs, who passed on the overcharge through the distribution chain down to the consumers, who were harmed by the antitrust impact.  See Class Reply at 20.  Defendants do not contend that Dr. Netz's damages analyses are not tied to that single theory.  Instead they argue that Dr. Netz has done nothing more than describe a hoped-for methodology for calculating damages. See Class Obj'ns at 14-15.
///

United States District Court
For the Northern District of California

1    This contention is not accurate, and the cases Defendants use

2    to support their argument do not change the appropriate standard.

3    In Montano v. First Light Federal Credit Union, No. 7-04-17866-TL,

4    2013 WL 2244216, at *7 (Bkrtcy. D.N.M. May 21, 2013), the

5    bankruptcy court rightly rejected a proposed damages calculation

6    because it was merely a five-paragraph suggestion of possible

7    proposals that the court found uncompellingly vague.  Here Dr. Netz

8    has, congruently with the IPPs' theory of antitrust liability,

9    described four economic models for measuring the overcharge,

10   identified the types of data required under each method (and noted

11   that more data could arise), explained how the data was common to

12   the class, and demonstrated that each model has been used

13   effectively in other cases.  See Netz Decl. at 83-104.  Defendants

14   also attempt to distinguish a recent case that the ISM cited, In re

15   High-Tech Employee Antitrust Litigation, 289 F.R.D. 555 (N.D. Cal.

16   2013), in which the plaintiffs' expert performed a proposed

17   classwide damages calculation using a regression analysis that the

18   court held admissible and persuasive, id. at 582-83.  High-Tech

19   Employee does not suggest that the type of precise calculation

20   Defendants desire is required.  Nor does it alter the Comcast rule.

21   Id. at 582-83.

22       The ISM found that Comcast did not preclude Dr. Netz's damages

23   methodology, because the IPPs assert, and Dr. Netz analyzed, just

24   one theory of antitrust liability.  Class R&R at 36-37.  Further,

25   neither Comcast nor any other precedent requires the IPPs to

26   provide exact calculations of their damages at the class

27   certification stage.  See Comcast, 131 S. Ct. at 1433; see also In

28   re TFT-LCD, 267 F.R.D. at 606 ("In price-fixing cases,

17

**United States District Court**
For the Northern District of California

1  '[p]laintiffs are not required to supply a precise damage formula

2  at the certification stage.'") (quoting <u>In re Static Random Access</u>

3  <u>(SRAM) Antitrust Litig.</u>, No. C 07-0819 CW, 2008 WL 4447592, at *6

4  (N.D. Cal. Sept. 29, 2008)).  Again, the ISM found that Defendants'

5  arguments misread <u>Comcast</u> and relevant precedent to require proof

6  of the merits of their damages claim -- as opposed its methodology

7  -- at the class certification stage.  This finding was correct.

8  The ISM did not err here.

9          **iv.    Dr. Netz's Analysis**

10      Finally, Defendants argue that due to the ISM's purported

11  legal errors, he missed several key substantive failings in Dr.

12  Netz's analysis of pass-through.  Defendants assert three critical

13  errors: (1) Dr. Netz's use of averages obscures the fact that many,

14  if not most, class members did not suffer impact or injury; (2) Dr.

15  Netz used unrepresentative data; and (3) Dr. Netz's false factual

16  assumptions render her common impact and injury opinions

17  unreliable.  Class Obj'ns at 18-23.

18      The ISM did not err in his recommendations on the IPPs' burden

19  of proof.  Nor did he "fail to recognize" the purported failings.

20  Defendants raised them then, and the ISM rejected them.

21          **a.   Averages**

22      First, Defendants argue that Dr. Netz's use of "average data,"

23  as opposed to actual prices paid by individual class members,

24  precludes the fact that many or most class members were not

25  injured.  Class Obj'ns at 17-18.  As discussed above, Dr. Netz's

26  model does not show this, and nowhere do the IPPs admit it

27  (contrary to Defendants' accusations, which are better suited to

28  cross-examination than a class certification argument).  It

**United States District Court**
For the Northern District of California

accounts for classwide injury for all or almost all class members, and it incorporates actual transaction-level data when available in usable form.  See Class R&R; see also Netz Decl. at 99-102, Ex. 34. Defendants' contention is basically that variation among purchasers and CRTs renders many or most class members unharmed by the alleged antitrust activity, a fact that averaging hides.  See Class Obj'ns at 18.  But Dr. Netz's model, based on target prices and variant prices, notes that all prices embody a basic overcharge, and that the overcharges can be calculated without individualized inquiry. See Class R&R at 30.  Defendants insist that Dr. Netz used no transactional-level data, citing their own expert's different findings based on the same data for one retailer of CRT products. Class Obj'ns at 19.  This battle of experts indicates that the dispute does not concern methodology alone.  It is a merits question for the jury.

Defendants point to two cases in which Dr. Netz's models were rejected as proof of why they should be rejected in this case: In re Flash Memory Antitrust Litigation, No. 07-0086 SBA, 2010 WL 2332081 (N.D. Cal. June 9, 2010), and In re Graphics Processing Units (GPU) Antitrust Litigation, 253 F.R.D. 478 (N.D. Cal. 2008). In Flash Memory, the court rejected Dr. Netz's regression analysis for not accounting for variances in price trends based on particular chips, categories of chips, or categories of consumers. 2010 WL 2332081, at *10.  In GPU, the court rejected Dr. Netz's analysis for not accounting for variable factors that would impact prices.  Both cases are inapposite here.  The IPPs have submitted evidence that CRTs are not so variable as flash memory or graphics processing units, which were highly customized and not generally

interchangeable.  Rather, CRT prices, as Dr. Netz found, depend on a small set of variables, for which her model accounts.  The IPPs' case, again, is much more like TFT-LCD, in which Judge Illston considered and rejected an identical argument about averages.

Accordingly, the Special Master did not err in his decision on the averages question.[4]  The Court ADOPTS it here.  Finally, the Special Master's note that Defendants' own expert used averages was not error.

### b.    Representative Data

Defendants content that Dr. Netz used "relatively small and admittedly non-random data samples" in analyzing pass-through, thereby rendering her analysis incapable of satisfying Rule 23(b)(3)'s requirement that plaintiffs prove a common method for reliably proving classwide injury and impact.  Class Obj'ns at 20-21.  However, Dr. Netz's studies include over forty data sets from twenty-nine different entities, for more than 131 million CRTs, in a data range spanning seven years and more than 100 million price and cost observations.  Id.; Netz Decl. at 97-104, Exs. 34, 36, 40-43; Netz Rebuttal Decl. Section X.A.2, Ex. RR-34.  Defendants' vague accusation of non-representativeness is not convincing.  The ISM did not err in dismissing their arguments on this point.

### c.    Factual Assumptions

Defendants' last argument is that Dr. Netz relies on false factual assumptions, thereby rendering her common impact and injury opinions unreliable.  Specifically, Defendants claim that they have

---

[4] Defendants also took issue with the ISM's approving reference to TFT-LCD's citation of Gordon v. Microsoft, No. MC 00-5994, 2003 WL 23105550 (D. Minn. Dec. 15, 2003), but this objection is spurious: that case was not controlling for either the ISM or Judge Illston.

1  forced Dr. Netz to concede the falsity of: (1) the cartel price

2  increase's significance, (2) the permanence of any price increases,

3  (3) the meaning of "permanence" in this case, (4) the effects of

4  price increases on Sony, and (5) the global effects of the alleged

5  cartel.  Class Obj'ns at 21-23.  On review, Defendants' references

6  to most of these "gotchas" are based on vague deposition testimony,

7  not demonstrative falsity in the record.  None of the "assumptions"

8  Dr. Netz is claimed to have made, nor any of the alleged falsity,

9  appear to affect Dr. Netz's analyses in a demonstrable way, and

10 similarly, Defendants' accusations that the ISM makes similarly

11 unsupported contentions are based on misleading characterizations

12 of his recommendations. If Defendants want to cross-examine Dr.

13 Netz, they can do so before a jury.

14        **ii.    TFT-LCD's Applicability to This Case**

15        Defendants also contend that neither the ISM nor the Special

16 Master should use TFT-LCD as a basis for certifying the IPPs'

17 class, Class Obj'ns at 23-25, presumably because TFT-LCD is not a

18 favorable case for Defendants.  But this does not mean the case is

19 inapposite.  In any event, TFT-LCD is not binding, and no one

20 contends that it is.  As noted above, the governing standards here

21 are set by the Supreme Court, the Ninth Circuit, and the Federal

22 Rules of Civil Procedure.

23     **B.    Motion to Strike**

24        For all the reasons discussed above, which were essentially

25 raised in both motions, the Court DENIES Defendants' motion to

26 strike Dr. Netz's proposed expert testimony.  The Court ADOPTS the

27 ISM's R&R on this motion in full.  The Court declines to rehash

28 either its own analysis from the above sections or the ISM's

**United States District Court**
For the Northern District of California

discussion in his recommendation.  In short, Defendants' arguments
in that motion restate their arguments from their opposition to the
class certification motion, and are denied for the same reasons.
Further, those arguments go more toward the weight of Dr. Netz's
opinions, not their reliability or admissibility.

The only two arguments Defendants did not precisely raise here
are these: (1) Dr. Netz's target price analysis is unreliable
because she improperly assumed that the overseas cartel target
prices applied to CRTs sold in the United States, Expert Obj'ns at
23-24; and (2) Dr. Netz's use of economic theory not linked to the
record evidence as a substitute for actual damages analysis
inadmissible expert ipse dixit, id. at 24-25.  The Court finds that
the ISM did not err in his recommendations on these points: (1)
Defendants' criticism, mostly reliant on contrary expert evidence,
is an attack on the weight of Dr. Netz's opinions, not her
methodology's scientific reliability; and (2) Dr. Netz did not
ignore relevant individualized data, and her report and responses
accord with economic logic.  Expert R&R at 8-10, 18-19.

///

///

///

///

///

///

///

///

///

///

**V.    <u>CONCLUSION</u>**

As explained above, the Court ADOPTS the Interim Special Masters Reports and Recommendations on the Indirect Purchaser Plaintiffs' Motion for Class Certification and the Defendants' Motion to Strike the Proposed Expert Testimony of Dr. Janet S. Netz.  The Court therefore GRANTS the motion for class certification and DENIES the motion to strike.  The classes listed in the ISM's report and recommendation on the motion for class certification are hereby certified.


IT IS SO ORDERED.


Dated: September 19, 2013

_____

UNITED STATES DISTRICT JUDGE