Christopher M. Curran (*pro hac vice*)
ccurran@whitecase.com
Lucius B. Lau (*pro hac vice*)
alau@whitecase.com
Dana E. Foster (*pro hac vice*)
defoster@whitecase.com
White & Case LLP
701 Thirteenth Street, N.W.
Washington, DC  20005
Telephone:  (202) 626-3600
Facsimile:  (202) 639-9355

*Counsel to Defendants Toshiba Corporation,
Toshiba America, Inc., Toshiba America
Information Systems, Inc., and Toshiba
America Electronic Components, Inc.*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
(SAN FRANCISCO DIVISION)

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Case No. 07-5944 SC<br>MDL No. 1917 |
| This Document Relates to<br>Case No. 13-cv-1173-SC (N.D. Cal.)<br><br>SHARP ELECTRONICS CORPORATION;<br>SHARP ELECTRONICS MANUFACTURING COMPANY OF AMERICA, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>HITACHI, LTD., *et al.*,<br><br>Defendants. | **THE TOSHIBA DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS SHARP'S COMPLAINT**<br><br>**ORAL ARGUMENT REQUESTED**<br><br>Date:    December  20, 2013<br>Time:    10:00 a.m.<br>Before:  Hon. Samuel Conti |

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

**TABLE OF CONTENTS**

Page

NOTICE OF MOTION AND MOTION ..................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................2

I.   STATEMENT OF THE ISSUES ..............................................................................2

II.  INTRODUCTION ......................................................................................................2

III. FACTUAL BACKGROUND......................................................................................4

    A.   Sharp's Own Sales And Purchase Agreement — The BTA —
         Requires That Any Doubt Or Question "Related" To The BTA
         "Shall" Be Litigated In The Osaka District Court In Japan...................................4

    B.   Sharp Alleges Damages Based On Purchases Of CRT Products From
         Defendants, But Does Not Allege Which Defendants And Third
         Parties It Purchased From ....................................................................................5

IV.  ARGUMENT................................................................................................................6

    A.   The Court Should Dismiss Sharp's Complaint Because The Forum
         Selection Clause Of The BTA Requires Sharp To Litigate Its Claims
         Against The Toshiba Defendants In The Osaka District Court...........................6

        1.   The BTA's Forum Selection Clause Is Mandatory And
             Enforceable ..............................................................................................6

        2.   The BTA's Forum Selection Clause Can Be Enforced Against
             Sharp's Antitrust Claims.........................................................................8

        3.   Because The Alleged Conduct Of Sharp Electronics And
             SEMA Is Closely Related To The BTA, The Forum Selection
             Clause Applies To Both Entities.................................................................9

        4.   Because The Complaint Alleges A Close Relationship Among
             All Of The Toshiba Defendants, All Of The Toshiba
             Defendants Are Entitled To Enforce The Forum Selection
             Clause ......................................................................................................12

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

THE TOSHIBA DEFENDANTS' NOTICE OF MOTION
AND MOTION TO DISMISS SHARP'S COMPLAINT
Case No. 07-5944 SC
MDL No. 1917

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

B.   Sharp's Complaint Should Be Dismissed With Respect To The Toshiba Defendants Because Sharp Has Failed To Allege Facts Sufficient To Confer Standing Under The "Ownership Or Control" Exception To *Illinois Brick* .................................................................. 14

1.   Sharp Is An Indirect Purchaser And Must Plead Facts To Support Standing Under A Recognized Exception To *Illinois Brick* ................................................................ 14

2.   Sharp Must Plead Facts To Support Standing Under A Recognized Exception To *Illinois Brick* To Assert Claims Under The New Jersey Antitrust Act .......................................... 15

3.   Sharp Has Failed To Establish Standing Under The Ownership Or Control Exception To *Illinois Brick* ...................................... 16

4.   Sharp Fails To Sufficiently Plead Facts To Confer Standing On Its CRT Product Purchases From "Third Party System Integrators," "OEMs" And "Others" .......................................... 17

CONCLUSION ....................................................................................................... 19

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

## TABLE OF AUTHORITIES

Cases                                                                                    Page

*Adams v. Raintree Vacation Exch., LLC,*
    702 F.3d 436 (7th Cir. 2012) ...................................................................9, 10

*Argueta v. Banco Mexicano, S.A.,*
    87 F.3d 320 (9th Cir. 1996) ................................................................. 2-3, 6

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009).............................................................................14

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007).............................................................................14

*Bense v. Interstate Battery Sys. of Am.,*
    683 F.2d 718 (2d Cir. 1982) ...................................................................8

*Bremen v. Zapata Offshore Co.,*
    407 U.S. 1 (1972)................................................................................ 6

*Clinton v. Janger,*
    583 F. Supp. 284 (N.D. Ill. 1984)........................................................... 9

*Deloitte Noraudit A/S v. Deloitte Haskins & Sells, U.S.,*
    9 F.3d  1060 (2d Cir. 1993) ................................................................. 11

*Docksider, Ltd. v. Sea Tech., Ltd.,*
    875 F.2d 762 (9th Cir. 1989) ...............................................................6, 7

*Frietsch v. Refco Inc.,*
    56 F.3d 825 (7th Cir. 1995) ..................................................................7, 8

*Hile v. Buth-Na-Bodhaige, Inc.,*
    No. C 07-00791 JSW, 2007 WL 4410774 (N.D. Cal. Dec. 14, 2007) ........................ 6-7

*Holland America Line Inc. v. Wartsila North America, Inc.,*
    485 F.3d 450 (9th Cir. 2007) ........................................................... 9, 10-11

*Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.,*
    602 F.3d 237 (3rd Cir. 2010)................................................................15

*Hunt Wesson Foods, Inc. v. Supreme Oil Co.,*
    817 F.2d 75 (9th Cir. 1987) .................................................................7

*Illinois Brick Co. v. Illinois,*
    431 U.S. 720 (1977)...........................................................................14

*In re: ATM Fee Antitrust Litig.,*
    686 F.3d 741 (9th Cir. 2012) ................................................... 14-15, 16, 17

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

*In re: CRT Antitrust Litig.*,
  No. 07-5944 (N.D. Cal. Sept. 26, 2013) ........................................................14

*In re: CRT Antitrust Litig.*,
  No. 07-5944 SC (N.D. Cal. Oct. 1, 2013) .......................................................16

*In re: CRT Antitrust Litig.*,
  No. 07-5944 (N.D. Cal. Aug. 21, 2013) ..........................................................16

*In re: CRT Antitrust Litig. ("Costco")*,
  Civ. No. C 11-6397-SC (N.D. Cal. Jan. 28, 2013) ..........................................9

*In re: Mercedes-Benz Anti-Trust Litig.*,
  157 F. Supp. 2d 355 (D.N.J. 2001)) .................................................................18

*In re: TFT-LCD (Flat Panel) Antitrust Litig.*,
  No. M 07-1827 SI, 2013 WL 1164897 (N.D. Cal. March 20, 2013) ..........17, 18

*In re: Titanium Dioxide Antitrust Litig.*,
  No. RDB-10-0318, 2013 WL 4516472 (D. Md. Aug. 26, 2013) .....................13

*Intermetals Corp. v. Hanover Int'l Aktiengesellschaft fur Industrieversicherungen*,
  188 F. Supp. 2d 454 (D.N.J. 2001) ...................................................................7

*Kendall v. Visa U.S.A., Inc.*,
  518 F.3d 1042 (9th Cir. 2008) ..........................................................................15

*Manetti-Farrow, Inc. v. Gucci America, Inc.*,
  858 F.2d 509 (9th Cir. 1988) .......................................................................9-10

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
  473 U.S. 614 (1985) ...........................................................................................8

*Multimin USA, Inc. v. Walco Int'l, Inc.*,
  No. CV F 06-0226, 2006 WL 1046964 (E.D. Cal. Apr. 11, 2006) ...................8

*Mundi v. Union Sec. Life Ins. Co.*,
  555 F.3d 1042 (9th Cir. 2009) ..........................................................................12

*N. Cal. Dist. Council of Laborers v. Pittsburg-Des Moines Steel Co.*,
  69 F.3d 1034 (9th Cir. 1995) ..............................................................................7

*Offshore Sportswear, Inc. v. Vuarnet Int'l, B.V.*,
  114 F.3d 848 (9th Cir. 1997) ..............................................................................3

*Ohkubo v. Antara Biosciences, Inc.*,
  364 Fed. Appx. 340 (9th Cir. 2010) ...................................................................7

*Person v. Google Inc.*,
  456 F. Supp. 2d 488 (S.D.N.Y. 2006) ...............................................................8

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

*Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   7 F.3d 1110 (3d Cir. 1993) ..................................................................................................11

*Richards v. Lloyd's of London*,
   135 F.3d 1289 (9th Cir. 1998) ...................................................................................... 9, 12

*Scherk v. Alberto-Culver Co.*,
   417 U.S. 506 (1974)................................................................................................... 8-9, 12

*Sickles v. Cabot Corp.*,
   379 N.J. Super. 100, 877 A.2d 267 (App. Div. 2005) ....................................................15

*Sigma Six Tech., Inc. v. Nagarro, Inc.*,
   No. C 08-05633, 2009 WL 2031771 (N.D. Cal. July 9, 2009)........................................6, 7

*Simula, Inc. v. Autoliv, Inc.*,
   175 F.3d 716 (9th Cir. 1999) ............................................................................................8

*Siren, Inc. v. Firstline Sec., Inc.*,
   No. 06-1109, 2006 WL 3257440 (D. Ariz. May 17, 2006)..............................................9

*Sun Microsystems, Inc. v. Hynix Semiconductor, Inc.*,
   608 F. Supp. 2d 1166 (N.D. Cal. 2009) ..........................................................................18

*Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.*,
   10 F.3d 753 (11th Cir. 1993) ...........................................................................................11

*TAAG Linhas Aereas de Angola v. Transamerica Airlines, Inc.*,
   915 F.2d 1351 (9th Cir. 1990) ...........................................................................................6

*Universal Grading Serv. v. eBay, Inc.*,
   No. 08-CV-3557 (CPS), 2009 WL 2029796 (E.D.N.Y. June 10, 2009) ........................11

*Villanueva v. Barcroft*,
   822 F. Supp. 2d 726 (N.D. Ohio 2011) ........................................................................ 13

*Wilson v. Gen. Motors Corp.*,
   A-0943-03T5, 2006 WL 1767754 (N.J. Super. Ct. App. Div. June 29, 2006)..............15

**Statutes**

N.J. Stat. Ann. § 56:9-18 ..........................................................................................................15

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on December 20, 2013, at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 1, 17th Floor, 450 Golden Gate Avenue, San Francisco, California, before the Honorable Samuel Conti, Toshiba Corporation ("TSB"), Toshiba America, Inc. ("TAI"), Toshiba America Information Systems, Inc. ("TAIS"), and Toshiba America Electronic Components, Inc. ("TAEC") (collectively, the "Toshiba Defendants") will and hereby do move the Court for an order dismissing the Complaint of Sharp Electronics Corporation and Sharp Electronics Manufacturing Company of America, Inc. (collectively, the "Plaintiffs" or "Sharp") ("Complaint") as against the Toshiba Defendants pursuant to Rules 12(b)(3) and 12(b)(6) of the Federal Rules of Civil Procedure.  Sharp's Complaint must be dismissed against the Toshiba Defendants because its claims are based on purchases that are governed by a contract containing a mandatory forum selection clause that selects the Osaka District Court, in Osaka, Japan, as the forum to resolve disputes arising out of the contract.  In the alternative, Sharp's federal and New Jersey state law claims for damages for its alleged purchases of products that contain CRTs ("CRT Products") must be dismissed against the Toshiba Defendants because Sharp has failed to allege facts sufficient to support standing under the "ownership or control" exception to *Illinois Brick's* bar on indirect purchaser actions.

This motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities, accompanying exhibits, the complete files and records in this action, oral argument of counsel, and such other and further matters as this Court may consider.

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.   STATEMENT OF THE ISSUES

1.      Whether the Court should dismiss Sharp's Complaint with respect to the Toshiba Defendants because of a forum selection clause that requires this dispute to be resolved in the Osaka District Court in Japan.

2.      Whether the Court should dismiss Sharp's federal claims and New Jersey state law claims against the Toshiba Defendants because Sharp has failed to adequately allege facts to support standing under the "ownership or control" exception to *Illinois Brick* for its claims for damages based on purchases of CRT Products.

## II.   INTRODUCTION

Sharp's Complaint asserts federal and state-law claims based upon allegations of a price-fixing conspiracy among the Toshiba Defendants and certain alleged co-conspirators. Sharp Compl. ¶¶ 234-86.   Sharp's claims against the Toshiba Defendants, however, are subject to a forum selection clause contained in a contract, the Basic Transaction Agreement ("BTA"), which Sharp Corporation entered into with Toshiba Corporation.   The BTA governs the purchases upon which Sharp bases the claims in this lawsuit.

It cannot be disputed that Sharp must litigate its claims where it contracted to litigate them under a forum selection clause.   The BTA between Sharp Corporation and Toshiba Corporation includes a clause under which Sharp agreed that all "litigation related to this Agreement" be resolved in the Osaka District Court.   Because the claims Sharp asserts in its Complaint arise out of purchases governed by the BTA, the claims against the Toshiba Defendants should be dismissed and Sharp should be required to enforce its claims against the Toshiba Defendants in its chosen forum, the Osaka District Court.   Accordingly, this Court should dismiss the Complaint based on the BTA's forum selection clause pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure for improper venue.   *See Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996) (treating "a motion to dismiss

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

1  premised on the enforcement of a forum selection clause" as a "Rule 12(b)(3) motion to

2  dismiss for improper venue"); *see also Offshore Sportswear, Inc. v. Vuarnet Int'l,*

3  *B.V.*, 114 F.3d 848, 851 (9th Cir. 1997) ("We treat dismissal based on a forum selection

4  clause like a dismissal for improper venue under Rule 12(b)(3).").

5          In the alternative, Sharp's federal law claims and claims under New Jersey state law

6  with respect to the Toshiba Defendants should also be dismissed because Sharp has failed to

7  plead facts sufficient to support its standing to pursue its claims for damages under

8  *Illinois Brick*.  Sharp has alleged a conspiracy to fix prices of CRTs, but claims damages only

9  on its purchases of CRT Products (*i.e.*, devices that incorporate CRTs).  To recover damages

10  under federal antitrust law for purchases of CRT Products, Sharp must allege facts sufficient

11  to support standing under one of the recognized exceptions to *Illinois Brick's* bar on indirect-

12  purchaser claims.  As a result of this Court's order and ensuing stipulation (MDL Dkt.

13  No. 1971), the only *Illinois Brick* exception potentially available to Sharp is the "ownership

14  or control" exception.  Sharp has failed to plead facts to support standing under this

15  exception for those products that Sharp allegedly purchased from third-party OEMs and

16  system integrators, who allegedly purchased CRTs from unspecified defendants and co-

17  conspirators.  As to purchases of monitors from third-party OEMs and system integrators,

18  Sharp makes no allegations that Sharp owned or controlled these entities.  Nor does Sharp

19  allege that the Toshiba Defendants owned or controlled these entities.  Thus, there is no basis

20  to support Sharp's contention that it has standing to pursue damages against the Toshiba

21  Defendants under federal or New Jersey state law (a state with a harmonization provision

22  requiring its unfair trade practices act to be construed in accord with the federal antitrust

23  statutes) based on those purchases.  Consequently, Sharp's purported claim for damages

24  under federal and New Jersey state law based on the purchase of CRT Products must be

25  dismissed.

26

27

28

THE TOSHIBA DEFENDANTS' NOTICE OF MOTION
AND MOTION TO DISMISS SHARP'S COMPLAINT
Case No. 07-5944 SC
MDL No. 1917
3

## III.   FACTUAL BACKGROUND

### A.   Sharp's Own Sales And Purchase Agreement — The BTA — Requires That Any Doubt Or Question "Related" To The BTA "Shall" Be Litigated In The Osaka District Court In Japan

Sharp Corporation and Tokyo Shibaura Electric Co., Ltd. (now known as Toshiba Corporation) entered into the BTA on March 1, 1977.  *See* Attachment 2 (Declaration of Akihiko Kashiwagi in Support of the Toshiba Defendants' Motion to Dismiss Sharp's Complaint ("Kashiwagi Decl."); Kashiwagi Decl. at Ex. A (true and correct copy of the BTA)).  On the face of the document, it is apparent that the BTA is Sharp's form agreement and that it was drafted by Sharp to be used with its vendors.  Kashiwagi Decl. at Ex. A.  The document is titled "Basic Transaction Agreement"; includes Sharp's name as "Company A" and a fill-in-the-blank section for "Company B"; has a different font for the fill-in-the-blank section where "Tokyo Shibaura Electric Corporation" is written; states that the BTA covers the "manufacture and supply of goods" purchased by Sharp Corporation; and selects the Osaka District Court, the home prefecture of Sharp Corporation, as the court with jurisdiction to resolve disputes arising out of the agreement.  *See* Attachment 3 ("Certified Translation") at Art. 1(2) (stating that the BTA "shall apply to any Individual Agreement between Party A and Party B . . ."), Art. 21(2).  The BTA governs the entire relationship between Sharp and its suppliers.  *Id.* at Art. 1(2).  And, as stated in Article 22 of the BTA, the agreement was an annually, automatically renewing contract that was continuously in force between 1995 and 2007, the relevant time period of this litigation.  *See* Kashiwagi Decl. ¶ 3; Certified Translation at Art. 22.

The BTA also contains a mandatory forum selection clause.   Article 21, entitled "Resolution of Doubt or Disputes," states:

> (1)   When there are disputes or doubts that arise in relation to this Agreement or individual Agreement, or when there are unsolved items in this Agreement or individual Agreement, resolutions shall be made between Party A and Party B in good faith.

> (2)   In terms of litigation related to this Agreement or the individual Agreement, the Osaka District Court shall be the court of competent jurisdiction.

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1    As such, by the plain language of the document, the BTA mandates that any dispute related

2    to the agreement be resolved in the Osaka District Court.

3    **B.     Sharp Alleges Damages Based On Purchases Of CRT Products From**
         **Defendants, But Does Not Allege Which Defendants And Third Parties It**
4        **Purchased From**

5         Sharp alleges that the Defendants conspired to "fix, raise, stabilize, and maintain prices

6    for CRTs" (Sharp Compl. ¶ 2), but despite asserting that it purchased both CRTs and CRT

7    Products, Sharp only asserts damages for its purchases of CRT Products.  Sharp Compl. ¶ 27

8    ("Sharp Electronics, directly and through its subsidiaries, purchased substantial amounts of

9    CRTs manufactured by Defendants and/or their subsidiaries, their co-conspirators, and others

10   . . . ."); ¶ 29 ("SEMA purchased and invoiced substantial amounts of CRTs manufactured by

11   Defendants and/or their subsidiaries, their co-conspirators, and others . . . . "); ¶ 287

12   (showing Sharp asserted damages only for purchases of CRT Products, "Plaintiffs purchased

13   CRT Products directly from Defendants, or their subsidiaries, agents, and/or affiliates . . .

14   Plaintiffs also purchased CRT Products indirectly from Defendants, or their subsidiaries,

15   agents, and/or affiliates . . . As a result, Plaintiffs have sustained damages to their business

16   and property in an amount to be determined at trial.").  Sharp alleges that the Toshiba

17   Defendants "manufactured, marketed, sold, and/or distributed CRT Products either directly

18   or through its subsidiaries or affiliates throughout the United States."  Sharp Compl.  ¶¶ 65-

19   70.

20        Sharp alleges that it purchased CRT Products from two sources: (1) directly or

21   indirectly from "Defendants, or their subsidiaries, agents, and/or affiliates" (Sharp

22   Compl. ¶ 287); and (2) directly from "third party system integrators and OEMs . . ." and

23   "others." Sharp Compl. ¶¶ 30, 218.  Sharp does not identify from whom it directly purchased

24   the CRT Products; does not identify the "third party system integrators and OEMs"; and,

25   most critically, does not allege that it (or the Toshiba Defendants) owned or controlled the

26   third-party system integrators and OEMs from whom it purchased CRT Products.

27

28

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

## IV.  ARGUMENT

### A.    The Court Should Dismiss Sharp's Complaint Because The Forum Selection Clause Of The BTA Requires Sharp To Litigate Its Claims Against The Toshiba Defendants In The Osaka District Court

The Court should dismiss Sharp's Complaint because, as demonstrated below, the forum selection clause of the BTA requires Sharp to litigate its claims against the Toshiba Defendants in the Osaka District Court in Japan.

### 1.    The BTA's Forum Selection Clause Is Mandatory And Enforceable

Courts in the Ninth Circuit presume that forum selection clauses are valid absent a compelling and countervailing reason, even when the selected forum is outside the United States.  *See*, *e.g.*, *Sigma Six Tech., Inc. v. Nagarro, Inc.*, No. C 08-05633, 2009 WL 2031771, at *4 (N.D. Cal. July 9, 2009) ("A forum selection clause is presumptively valid and should be honored absent 'some compelling and countervailing reason.'  This is true even when the forum selection clause specifies a forum outside of the United States.") (quoting *Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 3-4, 12-13 (1972)); *see also Argueta*, 87 F.3d at 325 ("[F]orum selection clauses are prima facie valid and should not be set aside unless the party challenging enforcement of such a provision can show it is 'unreasonable' under the circumstances.").  Further, the Ninth Circuit has adopted the Supreme Court's strong policy in favor of enforcing forum selection clauses in international commercial transactions.  In *TAAG Linhas Aereas de Angola v. Transamerica Airlines, Inc.*, 915 F.2d 1351, 1354 (9th Cir. 1990), the Ninth Circuit agreed with the Supreme Court that, "[t]he expansion of American business and industry will hardly be encouraged if, notwithstanding solemn contracts, we insist on a parochial concept that all disputes must be resolved under our laws and in our courts." *Id.* (quoting *Bremen*, 407 U.S. at 9).

A forum selection clause will be enforced when venue is specified through mandatory language.  *See Docksider, Ltd. v. Sea Tech., Ltd.*, 875 F.2d 762, 764 (9th Cir. 1989).  To be mandatory, the clause must contain language that clearly designates a particular forum as the exclusive forum.  *Hile v. Buth-Na-Bodhaige, Inc.*, No. C 07-00791 JSW, 2007 WL 4410774,

at *2 (N.D. Cal. Dec. 14, 2007) (citing *N. Cal. Dist. Council of Laborers v. Pittsburg-Des Moines Steel Co.,* 69 F.3d 1034, 1037 (9th Cir. 1995)).

Here, the BTA's forum selection clause provides that "in terms of litigation related to this Agreement or the individual Agreement, the Osaka District Court *shall be the court of competent jurisdiction.*" Certified Translation at Art. 21(2) (emphasis added).  This phrase confers mandatory jurisdiction.  *See Ohkubo v. Antara Biosciences, Inc.*, 364 Fed. Appx. 340, 341-42 (9th Cir. 2010); *see also Frietsch v. Refco Inc.*, 56 F.3d 825, 829 (7th Cir. 1995) (Posner, C.J.) ("The absence of the indefinite article . . . implies that there is only one place of jurisdiction.").  In *Ohkubo*, the Ninth Circuit interpreted a contract translated from Japanese and held that the word "shall" is a mandatory term and held the phrase "the court with jurisdiction," almost exactly the same as the BTA's "the court of competent jurisdiction," indicates exclusivity.  364 Fed. Appx. at 342.  Other courts have found the exact same phrase used in the BTA, "the court of [] jurisdiction," reflects an intent for the forum to be exclusive.  *See Intermetals Corp. v. Hanover Int'l Aktiengesellschaft fur Industrieversicherungen,* 188 F. Supp. 2d 454, 460-61 (D.N.J. 2001) (finding that "the phrase '*The* court of jurisdiction' . . . is a clear indication that the drafter intended for the clause to be exclusive") (emphasis in original).  Further, the Ninth Circuit has held that when a forum selection clause identifies a particular court, rather than just a jurisdiction, the clause clearly requires exclusive jurisdiction.  *Docksider*, 875 F.2d at 764 (citing *Hunt Wesson Foods, Inc. v. Supreme Oil Co.*, 817 F.2d 75, 77 (9th Cir. 1987)).

Moreover, "[i]n addition to the plain language of the forum selection clause, a court may look to the purpose of the clause and construe it in a manner that does not make it superfluous."  *Sigma Six Tech., Inc.*, 2009 WL 2031771, at *4 (citing *Frietsch*, 56 F.3d at 829).  The forum selection clause governs two Japanese companies and the drafting party, Sharp, is based in the Osaka Prefecture.  *See* Certified Translation, at 8 (signature line showing Sharp Corporation is based in Osaka, Japan); Sharp Compl. ¶ 22.  Because "[t]he *natural* forum for a suit between" two Japanese companies would be in Japan, the parties would not need a clause in their contract "to *permit* suit in the very place to which no one

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

could object as the site of the suit." *Frietsch*, 56 F.3d at 829 (emphasis in original).  Instead, "[t]he obvious function of the clause is to rule out alternative sites," both foreign and in Japan, "and require that suit be brought in" the Osaka District Court.  *Id.*

Therefore, the plain language of the contract, fundamental principles of contract interpretation, and the structure of the contract all indicate that the forum selection clause is mandatory and should thus be presumed valid and enforced according to its terms.

### 2. The BTA's Forum Selection Clause Can Be Enforced Against Sharp's Antitrust Claims

The forum selection clause in Article 21(2) of the BTA governs Sharp's claims against the Toshiba Defendants.  It is well-established that arbitration and forum selection clauses requiring claims to be resolved in a foreign venue apply to antitrust claims.  *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 629 (1985) (holding that "concerns of international comity, respect for the capacities of foreign and transnational tribunals, and sensitivity to the need of the international commercial system for predictability in the resolution of disputes" require that federal antitrust claims subject to a valid arbitration provision be resolved in the parties agreed-upon venue); *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 723 (9th Cir. 1999) (holding antitrust claims are arbitrable); *see also Multimin USA, Inc. v. Walco Int'l, Inc.*, No. CV F 06-0226, 2006 WL 1046964, at *7 (E.D. Cal. Apr. 11, 2006) ("[A] forum selection clause applie[s] to antitrust claims because a forum selection clause covers 'causes of action arising directly or indirectly from' the agreement.") (quoting *Bense v. Interstate Battery Sys. of Am.*, 683 F.2d 718, 720 (2d Cir. 1982)); *Person v. Google Inc.*, 456 F. Supp. 2d 488, 494, 497 (S.D.N.Y. 2006) (granting motion to dismiss and transferring Sherman Act § 1 claim to Northern District of California because forum selection clause using the term *shall* indicated a mandatory venue clause).

Importantly, both the Supreme Court and the Ninth Circuit have recognized that agreements to arbitrate are a specialized form of a forum selection clause and have interpreted and enforced both types of clauses in the same way.  *See Scherk v. Alberto-Culver Co.,* 417 U.S. 506, 519 (1974) (holding an agreement to arbitrate before an international tribunal should be treated and enforced the same way as a forum selection clause selecting an

THE TOSHIBA DEFENDANTS' NOTICE OF MOTION
AND MOTION TO DISMISS SHARP'S COMPLAINT
Case No. 07-5944 SC
MDL No. 1917

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

1   international venue); *Richards v. Lloyd's of London*, 135 F.3d 1289, 1295 n.4 (9th Cir. 1998)

2   (citing *Scherk* for the same proposition); *see also Adams v. Raintree Vacation Exch., LLC*,

3   702 F.3d 436, 440 (7th Cir. 2012) (noting that "[t]he stakes are less in the present case, which

4   involves a choice between courts rather than between a court and an arbitrator.").

5       Mandatory and enforceable arbitration and forum selection clauses also apply to state

6   antitrust claims.  *See Siren, Inc. v. Firstline Sec., Inc.*, No. 06-1109, 2006 WL 3257440, at *7

7   (D. Ariz. May 17, 2006) (applying forum selection clause to state antitrust claim); *cf.* Order

8   Adopting Special Master's Report and Recommendation Regarding Toshiba Defendants'

9   Motion to Compel Arbitration at 10, *In re: CRT Antitrust Litig. ("Costco")*, Civ. No. C 11-

10  6397-SC, *slip op.* (N.D. Cal. Jan. 28, 2013), ECF No. 1543 (enforcing arbitration clause

11  contained in agreement between Costco and Toshiba against Costco's state and federal

12  antitrust claims).  Therefore, the BTA's forum selection clause applies to both the state and

13  federal claims asserted by Sharp in its Complaint.

14      **3.      Because The Alleged Conduct Of Sharp Electronics And SEMA Is**
              **Closely Related To The BTA, The Forum Selection Clause Applies**
15            **To Both Entities**

16      Although the Plaintiffs (*i.e.*, Sharp Electronics Corporation ("Sharp Electronics") and

17  Sharp Electronics Manufacturing Company of America, Inc. ("SEMA")) are not signatories

18  to the BTA, the forum selection clause of the BTA is enforceable against both Sharp

19  Electronics and SEMA because the alleged conduct of both entities is closely related to the

20  BTA.

21      The Ninth Circuit has held that forum selection clauses apply to non-signatories

22  "where the alleged conduct of the non-parties is closely related to the contractual

23  relationship . . . ."  *Holland America Line Inc. v. Wartsila North America, Inc.*, 485 F.3d 450,

24  456 (9th Cir. 2007).  Where such a "close relationship" exists, "'a range of transaction

25  participants, parties, and non-parties, should benefit from and be subject to forum selection

26  clauses.'"  *Id.* (quoting *Clinton v. Janger*, 583 F. Supp. 284, 290 (N.D. Ill. 1984)); *see also*

27  *Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 514 n.5 ("We agree with the

28  district court that the alleged conduct of the non-parties is so closely related to the contractual

THE TOSHIBA DEFENDANTS' NOTICE OF MOTION
AND MOTION TO DISMISS SHARP'S COMPLAINT
Case No. 07-5944 SC
MDL No. 1917
9

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

relationship that the forum selection clause applies to all defendants."). One circumstance where a forum selection clause should be enforced against a non-signatory is where the non-signatory is affiliated to a signatory: "A forum selection clause is sometimes enforced by or against a company that is under common ownership (for example as parent and subsidiary) with – that is, an affiliate of – a party to a contract containing the clause . . . ." *Adams,* 702 F.3d at 439-40. The reason for this rule is simple: "Were it not for judicial willingness in appropriate circumstances to enforce forum selection clauses against affiliates of signatories, such clauses often could easily be evaded." *Id.* at 441.

In this case, Sharp alleges that "Sharp Electronics is the wholly owned U.S. sales and marketing subsidiary of Osaka-based Sharp Corporation." Sharp Compl. ¶ 22. Sharp further alleges that "SEMA is a wholly owned subsidiary of Sharp Electronics" (Sharp Compl. ¶ 24) and that "Sharp Electronics, directly ***and through its subsidiaries***, purchased substantial amounts of CRTs manufactured by Defendants . . . ." Sharp Compl. ¶ 27 (emphasis added). These allegations provide ample support for the conclusion that the alleged conduct of the Sharp plaintiffs is closely related to the BTA. Because Plaintiff Sharp Electronics is the "U.S. sales and marketing subsidiary" for Sharp Corporation in Japan, it is apparent that the purpose of Sharp Electronics is to promote the sales and marketing efforts of Sharp Corporation in the United States. Plaintiff Sharp Electronics accomplishes this goal by making its own purchases of CRTs in the United States, but also by making such purchases "through its subsidiaries" (*i.e.*, Plaintiff SEMA). The admission that Plaintiff Sharp Electronics is making purchases "through its subsidiaries" is another indication that there is unity of interest between Sharp Corporation (the signatory to the BTA) and Plaintiffs Sharp Electronics and SEMA.

The Ninth Circuit has held that "forum selection clauses apply equally" to signatory parent corporations and non-signatory subsidiaries when the transactions between the plaintiffs and the subsidiaries take place "as part of the larger contractual relationship" between the signatory parent corporations. *Holland America*, 485 F.3d at 456. The court in *Holland America* permitted non-signatory defendant subsidiaries to enforce a forum selection

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1   clause against a plaintiff corporate family.  Even though the forum selection clause at issue

2   was only signed by the defendant parent corporation, the Court enforced the forum selection

3   clause because the complaint alleged "that some combination of the [defendant] entities"

4   acted negligently, and thus all defendants were entitled to enforce the clause against those

5   claims.  *Id.* at 454-55.

6       Other courts have held that when a "close business relationship" exists between parties,

7   one party's consent to a forum selection clause is sufficient to bind the non-signatory.

8   *Universal Grading Serv. v. eBay, Inc.*, No.  08-CV-3557 (CPS),  2009 WL 2029796

9   (E.D.N.Y. June 10, 2009).   In *Universal Grading Service*, the court enforced a forum

10  selection clause against a non-signatory when it was foreseeable that the agreement signed by

11  its president and shareholder would bind the non-signatory in future litigation.  *Id.* at *16.

12  Likewise, the same forum selection clause was binding on non-signatory defendants because

13  the plaintiffs' claims against the non-signatory defendants were nearly identical to those

14  against the signatory defendants, and the claims alleged that defendants acted in concert.  *Id.*

15      Courts often bind affiliates of signatories or allow them to enforce arbitration

16  agreements based on theories such as (i) that the signatory was an agent or "alter ego" of the

17  affiliate; (ii) that the affiliate was a third-party beneficiary of the agreement, or (iii) that the

18  non-signatory is estopped from denying that arbitration is proper based on its relationship

19  with the signatory and its actions relevant to the agreement.  *See*, *e.g.*, *Pritzker v. Merrill*

20  *Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110, 1122 (3d Cir. 1993) (allowing non-

21  signatory company to compel arbitration where its sister company was a signatory and where

22  it played a role in case at issue); *Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.*,

23  10 F.3d 753, 757-58 (11th Cir. 1993) (allowing parent of signatory to compel arbitration

24  where parent had played role in activities at issue and effectively absorbed signatory);

25  *Deloitte Noraudit A/S v. Deloitte Haskins & Sells, U.S.*, 9 F.3d  1060, 1063 (2d Cir. 1993)

26  (affiliate of international chain was estopped from denying arbitration agreement it did not

27  sign, since it did not object and continued to use chain's name after receiving agreement).

28  Given the allegations of Sharp's Complaint concerning the relationship between Sharp

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

Corporation, Plaintiff Sharp Electronics, and Plaintiff SEMA, the estoppel theory applies with full force here.

The same result is compelled by the facts in this case.  Sharp Corporation cannot escape its agreement to litigate claims in Japan merely by asserting claims only on behalf of its subsidiaries.  Because these subsidiaries share a close business relationship with Sharp Corporation, as evidenced by Sharp's Complaint, it is entirely foreseeable that claims stemming from this relationship are subject to the forum selection agreement entered by the parent.

> **4.**    **Because The Complaint Alleges A Close Relationship Among All Of The Toshiba Defendants, All Of The Toshiba Defendants Are Entitled To Enforce The Forum Selection Clause**

All of the Toshiba Defendants, including the Toshiba Defendants that are not signatories to the BTA, have the right to enforce the forum selection clause against the Sharp Plaintiffs.

Ninth Circuit and Northern District of California case law is clear that "non-signatories can enforce arbitration clauses where there is a 'close relationship between the entities involved, as well as the relationship of the alleged wrongs to the non-signatory's obligations and duties in the contract and . . . the claims [are] intertwined with the underlying contractual obligations.'"  *Costco*, *slip op.* at 8 (quoting *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1046 (9th Cir. 2009)).  *See Scherk,* 417 U.S. at 519  (holding an agreement to arbitrate before an international tribunal should be treated and enforced the same way as a forum selection clause selecting an international venue); *Richards*, 135 F.3d at 1295 n.4.

Just as this Court held previously in this litigation that all of the Toshiba Defendants named in the Costco Complaint could enforce a motion to compel arbitration against Costco, so too can the Toshiba Defendants enforce a forum selection clause against the Sharp Plaintiffs.  In *Costco*, the Plaintiff alleged that various Toshiba Defendants, nearly the same Toshiba entities as named in the Sharp Complaint, engaged in a conspiracy to fix the price of CRTs, and in doing so alleged that each of the Toshiba Defendants "acted as the principal, agent or joint venturer of, or for, other Defendants," that each Defendant's corporate family

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

"engaged in conspiratorial meetings on behalf of every company in that family," and that "all entities within the corporate families were active, knowing participants" in the alleged conspiracy.  Costco Compl. ¶¶ 55-57.  In light of these assertions, even though only one Toshiba Defendant was a signatory to the Vendor Agreement containing the arbitration clause at issue in the Costco action, this Court dismissed Costco's Complaint and compelled Costco's claims against all of the Toshiba Defendants to arbitration.  As justification for doing so, this Court stated the "Plaintiffs' claims against the Toshiba Defendants, per its own complaint . . . relate to their interrelated behavior and capacities as agents." *Costco*, *slip op.* at 9.

By the same rationale, all of the Toshiba Defendants are entitled to enforce the BTA's forum selection clause against the Sharp Plaintiffs.  The Sharp Complaint parrots the exact language used in the Costco Complaint to describe the relationship between the Toshiba Defendants.  *See* Sharp Compl. ¶ 80 (each of the Defendants "acted as the principal, agent or joint venture of, or for, other Defendants"), ¶ 171 (each Defendant's corporate family "engaged in conspiratorial meetings on behalf of every company in that family"), and ¶ 186 (all Toshiba entities "were active, knowing participants" in the alleged conspiracy).  As such, just as with the Vendor Agreement's arbitration provision in *Costco*, the BTA's forum selection clause is binding on all corporate affiliates of the signatory, Toshiba Corporation, that the Plaintiffs alleged were acting as agents of each other.  Consequently, under the precedent in this case and others, Sharp's claims against all of the Toshiba Defendants must be dismissed pursuant to the BTA's forum selection clause.  *See Costco*, *slip op.* at 7-9; *see also In re: Titanium Dioxide Antitrust Litig.*, No. RDB-10-0318, 2013 WL 4516472, at *8 (D. Md. Aug. 26, 2013) (applying equitable estoppel to allow non-signatory defendants to enforce a forum selection clause); *Villanueva v. Barcroft*, 822 F. Supp. 2d 726, 739 (N.D. Ohio 2011) (holding the theory of equitable estoppel is appropriate for a non-signatory to enforce a forum selection).

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**B.    Sharp's Complaint Should Be Dismissed With Respect To The Toshiba Defendants Because Sharp Has Failed To Allege Facts Sufficient To Confer Standing Under The "Ownership Or Control" Exception To *Illinois Brick***

Sharp's claims under Section 1 of the Sherman Act and the New Jersey Antitrust Act, based on its alleged purchases of CRT Products, should be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure because Sharp has failed to plead facts sufficient to establish standing under *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977).

**1.    Sharp Is An Indirect Purchaser And Must Plead Facts To Support Standing Under A Recognized Exception To *Illinois Brick***

It is Sharp's burden to plead facts that establish that it is entitled to the damages it seeks.  *See* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."); *see also Ashcroft v. Iqbal*, 556  U.S 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'") (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also In re: CRT Antitrust Litig.*, No. 07-5944, at 6 (N.D. Cal. Sept. 26, 2013) (order granting motion to dismiss) ("[T]he Court cannot see why Plaintiffs did not plead anything beyond threadbare allegations and legal conclusions.  The Court recognizes the difficulty of pleading certain facts in complex, global antitrust cases, but the Court does not find that meeting the pleading standards of Rules 8 and 9(b) is insurmountable. . . .").

Sharp has asserted indirect-purchaser claims against the Toshiba Defendants and seeks damages based upon its alleged purchase of CRT Products.  Sharp Compl. ¶¶ 11, 287.  Sharp has asserted claims against the Toshiba Defendants seeking to recover damages for its alleged purchase of CRT Products from unspecified "Defendants and co-conspirators," in addition to its indirect purchase of "CRT Products . . . from third party system integrators and OEMs, that contained CRTs manufactured by Defendants and/or their subsidiaries, and/or their co-conspirators, in the United States."  Sharp Compl. ¶¶  11, 30.

As an indirect purchaser, Sharp does not have federal antitrust standing to seek damages for its purchases of CRT Products.  *Illinois Brick*, 431 U.S. at  735; *see also In re:*

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

1   *ATM Fee Antitrust Litig.*, 686 F.3d 741, 750 (9th Cir. 2012) (holding that indirect purchasers

2   lack standing under the Sherman Act when they "never directly paid" the allegedly price-

3   fixed fee).  In order for Sharp to overcome *Illinois Brick*'s preclusion of indirect claims,

4   Sharp must plead facts in its complaint to establish that it has standing under an exception to

5   *Illinois Brick.  See Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1049-50 (9th Cir. 2008)

6   (affirming district court dismissal of Section 1 claims when plaintiffs failed to plead

7   sufficient facts to qualify for an *Illinois Brick* exception); *see also Howard Hess Dental Labs.*

8   *Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 259 (3rd Cir. 2010) ("[T]o state a viable claim

9   against the Dealers, the Plaintiffs must come within the coconspirator exception – or some

10  other exception – to *Illinois Brick*.").  Sharp has failed to do so.

      **2.**      **Sharp Must Plead Facts To Support Standing Under A Recognized Exception To *Illinois Brick* To Assert Claims Under The New Jersey Antitrust Act**

13       The same pleading standard required to support standing under the Sherman Act is also

14  required to support standing under the New Jersey Antitrust Act.  New Jersey is not an

15  *Illinois Brick* repealer state.  Instead, its legislature specifically incorporated federal

16  precedent by passing a mandatory harmonization provision requiring that New Jersey law

17  "be construed in harmony with ruling judicial interpretations of comparable Federal antitrust

18  statutes . . . ." N.J. Stat. Ann. § 56:9-18; *see also Sickles v. Cabot Corp.*, 379 N.J. Super. 100,

19  114, 877 A.2d 267, 275 (App. Div. 2005) ("Thus, in the absence of an *Illinois Brick* repealer

20  or other language by our Legislature evidencing an intent to permit indirect, as well as direct

21  purchasers, to recover for antitrust violations, it is clear New Jersey courts are directed to

22  follow the *Illinois Brick* holding."); *Wilson v. Gen. Motors Corp.*, A-0943-03T5,

23  2006 WL 1767754 (N.J. Super. Ct. App. Div. June 29, 2006) *aff'd*, 190 N.J. 336,

24  921 A.2d 414 (2007) ("Our Legislature has not altered the requirement that our antitrust

25  scheme remain consistent with the federal one and, in particular, has not adopted an

26  *Illinois Brick* repealer.").  For the same reasons as described above, Sharp has failed to

27  establish the necessary standing to support a claim under the New Jersey Antitrust Act.

28

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

3. **Sharp Has Failed To Establish Standing Under The Ownership Or Control Exception To *Illinois Brick***

Sharp is barred from bringing claims for damages under Section 1 of the Sherman Act and the New Jersey Antitrust Act because it cannot satisfy any of the exceptions to *Illinois Brick* that are recognized in the Ninth Circuit. *ATM Fee*, 686 F.3d at 749. There are only three recognized exceptions: (1) when the plaintiff purchased under "a preexisting cost-plus contract with the direct purchaser"; (2) the "'co-conspirator' exception"; and (3) "when customers of the direct purchaser own or control the direct purchaser or when a conspiring seller owns or controls the direct purchaser." *Id.* (internal citations omitted). Based on a previous order by this Court, Sharp is precluded from claiming standing under the first two exceptions. On August 21, 2013, the Court issued an Order granting the Defendants' (including the Toshiba Entities') motion to dismiss to the extent they challenged certain Direct Action Plaintiffs' alleged right to proceed under the "cost-plus" and "co-conspirator" exceptions to *Illinois Brick*. Order Adopting in Part and Modifying in Part Special Master Report and Rec. on Defendants' Motion to Dismiss the DAPs' Complaint at 35, *In re: CRT Antitrust Litig.*, No. 07-5944 (N.D. Cal. Aug. 21, 2013), ECF No. 1856 ("Aug. 21, 2013 Order") (order granting, in part, motion to dismiss) ("Defendants' motion to dismiss the DAPs' Complaints is granted to the extent that it challenges the DAPs' alleged right to proceed under the 'cost-plus' and 'co-conspirator' exceptions to *Illinois Brick*.").[1] On October 1, 2013, this Court entered the Defendants' and Sharps' stipulation as an order stating that (i) the issues addressed by the Court's August 21, 2013 Order regarding the *Illinois Brick* exceptions apply to Sharp; and (ii) Sharp does not seek to proceed under the "cost-plus" and "co-conspirator" exceptions to *Illinois Brick*. Stipulation and Order Setting Schedule for Defendants to Answer or Otherwise Respond to the Sharp Amended Complaint at 4, *In re: CRT Antitrust Litig.*, No. 07-5944 (N.D. Cal. Oct. 1, 2013), ECF No. 1971.

---

[1] In this order, the Court denied the Defendants' motion to dismiss concerning the "ownership or control" exception, but specifically stated that "[t]he Court also makes no ruling on the adequacy of the DAPs' allegations of ownership and control." Aug. 21, 2013 Order at 5. Thus, the question of whether Sharp has made appropriate allegations of ownership or control is properly before the Court.

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1  Therefore, Sharp can only assert the "ownership or control" exception in order to confer

2  standing on its purchases of CRT Products.

3          In *ATM Fee*, the Ninth Circuit held that the "ownership or control" exception is

4  available only where the initial seller of the price-fixed good owns or controls the direct

5  purchaser.  686 F.3d at 756 ("*Freeman* outlines that, whether a realistic possibility of suit

6  exists, depends on the existence of ownership or control between the direct purchaser and the

7  seller."); *id.* at 757 ("We decline to extend the exception noted in *Royal Printing* and

8  *Freeman* to situations where the seller does not own or control the direct purchasers . . . .").

9  The plaintiff must allege sufficient facts to support or explain the type of control exercised.

10 *In re: TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI, 2013 WL 1164897, at *3

11 (N.D. Cal. Mar 20, 2013) ("*LCD*").  Thus, in order to adequately plead the ownership or

12 control exception to *Illinois Brick*, Sharp must allege which alleged Defendants or co-

13 conspirators were initial "sellers" of CRTs and name which Defendants, co-conspirators,

14 OEMs or "other suppliers" were the "direct purchasers" that ultimately sold finished CRT

15 Products to Sharp.  Sharp must also allege that the entity that sold CRT Products to Sharp

16 was owned or controlled by itself, the Defendants or other named co-conspirators.  Without

17 these basic facts, Sharp fails to meet its pleading burden under the ownership and control

18 exception.

19          **4.     Sharp Fails To Sufficiently Plead Facts To Confer Standing On Its
20                 CRT Product Purchases From "Third Party System Integrators,"
                 "OEMs" And "Others"**

21          In its Complaint, Sharp alleges that it "purchased, directly and/or through their

22 subsidiaries, CRT Products . . . from third party system integrators and OEMs, that contained

23 CRTs manufactured by Defendants and/or their subsidiaries, and/or their co-conspirators in

24 the United States."  Sharp Compl. ¶¶ 30, 218.  Sharp, however, lacks standing with respect to

25 these purchases because it does not allege that it owned or controlled either the OEMs or the

26 "others" from whom it purchased CRT Products. Nor does Sharp allege that the defendants

27 owned or controlled these OEMs or other suppliers.

28

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

The "ownership or control" exception to *Illinois Brick* "has been construed to encompass relationships involving such functional economic or other unity between the direct purchaser and ***either the defendant or the indirect purchaser***, that there effectively has been only one sale."   *Sun Microsystems, Inc. v. Hynix Semiconductor, Inc.*, 608 F. Supp. 2d 1166, 1180 (N.D. Cal. 2009) (emphasis added).   As explained elsewhere, "[t]he rationale of *Illinois Brick's* bar to indirect purchaser suits does not apply where the supposed intermediary is controlled by one or the other of the parties."   *LCD*, 2013 WL 1164897, at *2 (quoting *In re: Mercedes-Benz Anti-Trust Litig.*, 157 F. Supp. 2d 355, 355 (D.N.J. 2001)) (internal quotation marks omitted).   Thus, in order for Sharp to have standing with respect to its purchases of CRT Products from OEMs and other suppliers, it must make sufficient allegations that (1) it owned or controlled these OEMs and other suppliers; or (2) the Toshiba Defendants owned or controlled these OEMs and other suppliers.

Far from making sufficient allegations of ownership or control, Sharp does not make ***any*** allegations that it owned or controlled the OEMs and other suppliers from which it purchased CRT Products.   Sharp also does not make ***any*** allegations that the Toshiba Defendants owned or controlled these OEMs and other suppliers.   Indeed, Sharp appears to recognize that the OEMs in question are not related to any defendant.   *See* Sharp Compl. ¶ 30 ("[Sharp] also purchased, directly and/or through their subsidiaries, CRT Products . . . from ***third party*** system integrators and OEMs . . . .") (emphasis added).   This failure to allege ownership and control is fatal to Sharp's attempt to assert standing with respect to these purchases.   The Court's decision in *LCD*, 2013 WL 1164897 (N.D. Cal. March  20, 2013), explains why.

The Court in *LCD* considered a motion to dismiss filed against four plaintiffs: Proview Technology Inc. ("PTI") and three of its affiliated OEMs located in Taiwan and China.   *Id.* at *1.   As alleged in the complaint, PTI received finished LCD products from its affiliated OEMs through a process by which PTI instructed its affiliated OEMs to purchase the input (LCD panels) and manufacture them into LCD finished products.   *Id.*   The *LCD* Court considered the allegations in the complaint, but found that the plaintiffs "fail[ed] to

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

adequately allege that [their] claims fall within the control exception to *Illinois Brick*."  *Id.* at *3.  Recognizing that the plaintiffs made conclusory allegations that PTI had "control of" its affiliated OEMs, the *LCD* Court nevertheless held that these conclusory allegations "fail[ed] to allege sufficient facts to support or explain the type of control exercised by PTI or to demonstrate that it is adequate to meet the exception."  *Id.*  Thus, the Court granted the motion to dismiss with respect to its affiliated OEMs.

By its decision, the *LCD* Court reveals the importance of adequate allegations of ownership or control if the plaintiffs seek to establish standing as indirect purchasers. Because Sharp has failed to make any allegations of ownership or control with respect to its purchases of CRT Products from OEMs and other suppliers (much less adequate allegations, as required by the *LCD* Court), it is apparent that Sharp lacks federal antitrust standing with respect to these purchases and that, as a result, the Toshiba Defendants' motion to dismiss should be granted with respect to these purchases.

## CONCLUSION

For these reasons, the Toshiba Defendants' motion to dismiss should be granted, and Sharp's complaint should be dismissed with respect to the Toshiba Defendants.

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Respectfully submitted,

Dated:  October 7, 2013                    **WHITE & CASE** LLP

By:  */s/ Lucius B. Lau*
          Christopher M. Curran (*pro hac vice*)
          ccurran@whitecase.com
          Lucius B. Lau (*pro hac vice*)
          alau@whitecase.com
          Dana E. Foster (*pro hac vice*)
          defoster@whitecase.com
          701 Thirteenth Street, N.W.
          Washington, DC  20005
          tel.: (202) 626-3600
          fax: (202) 639-9355

          *Counsel to Defendants Toshiba*
          *Corporation, Toshiba America, Inc.,*
          *Toshiba America Information Systems,*
          *Inc., and Toshiba America Electronic*
          *Components, Inc.*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

## CERTIFICATE OF SERVICE

On October 7, 2013, I caused a copy of "THE TOSHIBA DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS SHARP'S COMPLAINT" to be electronically filed via the Court's Electronic Case Filing System, which constitutes service in this action pursuant to the Court's order of September 29, 2008.

*/s/ Lucius B. Lau*
Lucius B. Lau

THE TOSHIBA DEFENDANTS' NOTICE OF MOTION
AND MOTION TO DISMISS SHARP'S COMPLAINT
Case No. 07-5944 SC
MDL No. 1917