JEFFREY L. KESSLER (*pro hac vice*)
A. PAUL VICTOR (*pro hac vice*)
ALDO A. BADINI (Bar No. 257086)
EVA W. COLE (*pro hac vice*)
MOLLY M. DONOVAN (*pro hac vice*)
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, New York 10166-4193
Telephone: (212) 294-6700
Facsimile: (212) 294-4700
Email: jkessler@winston.com

STEVEN A. REISS (*pro hac vice*)
DAVID L. YOHAI (*pro hac vice*)
ADAM C. HEMLOCK (*pro hac vice*)
**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, New York 10153-0119
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Email: steven.reiss@weil.com

*Attorneys for Defendants Panasonic Corporation (f/k/a Matsushita Electric Industrial Co., Ltd.), Panasonic Corporation of North America, and MT Picture Display Co., Ltd.*

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION**<br><br>This Document Relates to:<br><br>INDIRECT PURCHASER, DIRECT ACTION PLAINTIFF, AND CALIFORNIA ATTORNEY GENERAL ACTIONS | **Case No. 07-5944 SC**<br>**MDL No. 1917**<br><br>**PANASONIC DEFENDANTS' NOTICE OF MOTION AND MOTION FOR PROTECTIVE ORDER QUASHING DEPOSITION**<br><br>[Declarations of Fumio Ohtsubo and Jeffrey Kessler and Proposed Order filed concurrently]<br><br>Date and Time: December 13, 2013; 10 A.M.<br>Court: Courtroom 1, 17th Floor<br>Judge: Hon. Samuel Conti |

1   TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2   PLEASE TAKE NOTICE that on December 13, 2013 at 10:00 a.m., in Courtroom 1 of the
3   above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, California 94102,
4   Defendants Panasonic Corporation (f/k/a Matsushita Electric Industrial Co., Ltd.), Panasonic
5   Corporation of North America, and MT Picture Display Co., Ltd. (collectively, "Panasonic") will,
6   and hereby do, move this Court for a protective order to preclude the Indirect-Purchaser Plaintiffs,
7   Direct Action Plaintiffs, and the Attorney General of the State of California (collectively,
8   "Plaintiffs") from taking the "apex" deposition of Fumio Ohtsubo.

9   This motion is made pursuant to Rule 26(b)(2) and Rule 26(c)(1) of the Federal Rules of
10  Civil Procedure on the grounds that the deposition of Mr. Ohtsubo is not reasonably calculated to
11  lead to the discovery of admissible evidence and, instead, has been noticed solely to harass
12  Panasonic and drive up the costs of litigation. Good cause exists for a protective order precluding
13  Mr. Ohtsubo's apex deposition because Mr. Ohtsubo lacks any unique, firsthand knowledge of the
14  facts at issue in this lawsuit, and the Plaintiffs have failed to exhaust other, less intrusive means of
15  discovery, including the depositions of lower-level employees with superior, personal knowledge
16  of the relevant facts and issues.

17  This Motion is based upon this Notice of Motion and Motion and Memorandum of Points
18  and Authorities, the Declaration of Fumio Ohtsubo, with exhibits, dated October 16, 2013, the
19  Declaration of Jeffrey Kessler, with exhibits, dated October 17, 2013, the complete Court file in
20  this action, and such other matters as may be presented to the Court at or prior to the hearing on
21  this motion. Panasonic certifies, pursuant to Rule 26(c)(1) of the Federal Rules of Civil
22  Procedure, that it has in good faith conferred with Plaintiffs in an effort to resolve the dispute
23  without court action.

24  **MEMORANDUM OF POINTS AND AUTHORITIES**

25  **I.   STATEMENT OF THE ISSUE TO BE DECIDED**

26  Whether the Plaintiffs should be precluded from taking the "apex" deposition of Fumio
27  Ohtsubo, where Mr. Ohtsubo lacks any unique, firsthand knowledge of the facts at issue in this
28  case, and where Plaintiffs have failed to exhaust other, less intrusive means of discovery.

## II. STATEMENT OF THE RELEVANT FACTS

On August 14, 2013, Demetrius Lambrinos, counsel for Plaintiffs, notified Panasonic's counsel that Plaintiffs intended to depose Fumio Ohtsubo. *See* Decl. of Jeffrey Kessler in Support of Motion for Protective Order Quashing Deposition, dated October 17, 2013 (the "Kessler Decl."), ¶ 2. Mr. Ohtsubo has served as President of Panasonic Corporation and as Chairman of its Board of Directors. *See* Decl. of Fumio Ohtsubo in Support of Motion for Protective Order Quashing Deposition, dated October 16, 2013 (the "Ohtsubo Decl."), ¶¶ 8-9, Ex. A (Ohtsubo Biographical Data). Today, he is a Special Corporate Advisor to Panasonic Corporation. *See id.* ¶ 10, Ex. A. Mr. Ohtsubo was neither involved in nor contemporaneously aware of any of the competitor communications alleged in Plaintiffs' complaints. *See id.* ¶¶ 12-13. Moreover, he was never responsible for setting CRT prices or selling CRTs to Panasonic's customers. *See id.* ¶ 14.

For these reasons, pursuant to the Discovery Protocol, Mr. Kessler informed Plaintiffs' counsel that Mr. Ohtsubo "has less than marginal knowledge of the relevant facts and there would be no basis to seek his deposition in this matter." *See* Kessler Decl., ¶ 3. Mr. Kessler also offered to meet and confer with Plaintiffs' counsel regarding Mr. Ohtsubo. *See id.*

The parties met and conferred telephonically on August 29, 2013. *See id.* ¶ 4. During this meet and confer, Mr. Kessler made clear that, at all times relevant to this litigation, Mr. Ohtsubo was a high-ranking executive at Panasonic who had no knowledge of or involvement in the facts alleged in Plaintiffs' complaints. *See id.* ¶ 5. In response, counsel for Plaintiffs stated that Mr. Ohtsubo's deposition was being noticed on account of testimony offered by Tatsuo Tobinaga, a Rule 30(b)(6) witness for Panasonic.[1] *See id.* ¶ 6. Mr. Tobinaga testified that, in his capacity as President of MTPD (a joint venture between Panasonic Corporation and Toshiba Corporation), he had high-level meetings regarding MTPD's financial results with Mr. Ohtsubo from 2004 until mid-2006. *See id.* at Ex. A (hereinafter, "Tobinaga Tr.") 25:12-26:8, 26:19-27:3. During the meet and confer, Mr. Kessler made clear to Plaintiffs' counsel that Mr. Tobinaga's communications with Mr. Ohtsubo were unrelated to this case. *See id.* ¶ 7.

---

[1] A copy of the portions of the Tobinaga deposition transcript that reference Mr. Ohtsubo is attached as Exhibit A to the Kessler Declaration.

Mr. Tobinaga's testimony was the only evidence that Plaintiffs cited to during the meet and confer. *See id.* ¶ 6. Plaintiffs failed to offer a single document, interrogatory response, or other piece of evidence tying Mr. Ohtsubo to the facts of this case, despite the large amount of discovery produced by defendants to date.[2]

After the meet and confer, Mr. Kessler sent Plaintiffs' counsel a letter demonstrating that all of the interactions with Mr. Ohtsubo that Mr. Tobinaga testified to concerned either: (i) high-level reports on financial results; or (ii) significant corporate decisions, such as closing a business, that required approval from MTPD's parent company. *See id.* at Ex. B (September 3, 2013 Letter from Jeffrey Kessler to Demetrius Lambrinos). Simply put, Plaintiffs have failed to identify any testimony from Mr. Tobinaga's deposition or other evidence from the record suggesting that Mr. Ohtsubo has any connection to this case. Plaintiffs did not respond to Panasonic's letter and, instead, abruptly and unilaterally ended the meet and confer process by serving the Notice of Deposition of Fumio Ohtsubo on September 5, 2013. *See id.* at Ex. C (Notice of Deposition).

**III. ARGUMENT**

A. <u>Legal Standard</u>

District courts are vested with "broad discretion" to deny discovery, *see Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002), and Rule 26 of the Federal Rules of Civil Procedure authorizes a court to forbid challenged discovery in order to protect a discovery target from "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). This authority is routinely used to protect high-level corporate executives from harassing depositions. Indeed, "[v]irtually every court that has addressed deposition notices directed at an official at the highest level or 'apex' of corporate management has observed that such discovery creates a tremendous potential for abuse or harassment." *Groupion, LLC v. Groupon, Inc.*, No. 11-0870 MEJ, 2012 WL 359699, at *2 (N.D. Cal. Feb. 2, 2012) (citations and internal quotation marks omitted); *see also, e.g.*, *Klungvedt v. Unum Grp.,* No. 2:12-cv-00651-JWS, 2013 WL

---

[2] Defendants have produced roughly five million documents, and Plaintiffs have taken approximately twenty-five depositions of defendants pursuant to Federal Rule of Civil Procedure 30(b)(6) and twenty-five merits depositions of defendants' employees.

3

551473, at *2 (D. Ariz. Feb. 13, 2013) (same). Therefore, "[w]here a high-level decision maker removed from the daily subjects of the litigation has no unique personal knowledge of the facts at issue, a deposition of the official is improper." *Dauth v. Convenience Retailers, LLC*, No. C 13–047 MEJ, 2013 WL 4103443, at *1 (N.D. Cal. Aug. 12, 2013) (citations and internal quotation marks omitted). In price-fixing cases, an apex deposition is impermissible where the executive did not participate in or have knowledge of the alleged conspiracy. *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI, 2011 WL 10967617, at *2 (N.D. Cal. Aug. 1, 2011).

To protect high-level corporate executives, a "strict[] standard" applies when a party seeks to depose them. *Simmons v. Morgan Stanley Smith Barney, LLC*, No. 11cv2889-WQH (MDD), 2012 WL 6725844, at *2 (S.D. Cal. Dec. 27, 2012). In this district, a party requesting an apex deposition must first demonstrate "that the executive (1) has unique, non-repetitive, firsthand knowledge of the facts at issue in the case, and (2) that other less intrusive means of discovery, such as interrogatories and depositions of other employees, have been exhausted without success." *Affinity Labs of Tex. v. Apple, Inc.*, No. C 09-4436 CW (JL), 2011 WL 1753982, at *15 (N.D. Cal. May 9, 2011).

In other words, the party seeking the apex deposition must make this showing, and, if it fails to do so, the deposition cannot go forward and a protective order shall issue. *See, e.g.*, *id.*; *Simmons*, 2012 WL 6725844, at *2 (granting protective order where plaintiff failed to demonstrate that executive had any "relevant, non-cumulative personal knowledge" of alleged employment discrimination); *TFT-LCD*, 2011 WL 10967617, at *2 (blocking deposition where plaintiffs failed to show that executive "participated in or was otherwise aware of [the price-fixing] conspiracy"); *Celerity, Inc. v. Ultra Clean Holding, Inc.*, No. C 05-4374 MMC (JL), 2007 WL 205067, at *4 (N.D. Cal. Jan. 25, 2007) (granting protective order where plaintiffs could not show that executive's personal knowledge of the facts at issue was "unique"). Here, Plaintiffs are unable to satisfy either of these requirements, so good cause exists for this Court to issue a protective order precluding Mr. Ohtsubo's apex deposition.

B. Mr. Ohtsubo is Subject to the Protections of the Apex Deponent Doctrine

Plaintiffs represented that they noticed Mr. Ohtsubo's deposition based on his actions

between 2004 and mid-2006. *See* Kessler Decl., ¶ 6. During this time period, he was one of Panasonic Corporation's Senior Managing Directors, as well as a board member of Panasonic Corporation and the President of Panasonic AVC Networks Company ("PAVC"). *See* Ohtsubo Decl., ¶¶ 5-7. At various times during this period, Mr. Ohtsubo also oversaw Panasonic's Storage Devices Business, Digital Network Strategic Planning Office, and Matsushita Fujisawa Manufacturing Center. *See id.* ¶ 6. Accordingly, Mr. Ohtsubo was one of the top executives at Panasonic Corporation, a leading multinational corporation employing tens of thousands of people. *See id.* ¶ 4. Likewise, Mr. Ohtsubo was the most senior executive at PAVC, which itself employed over ten thousand people during his Presidency. *See id.* ¶ 6. PAVC was a major manufacturer of, among other things, audio, video (including televisions), computer, and camera products. *See id.*

In 2006, Mr. Ohtsubo was promoted to President of Panasonic Corporation, a position that he held for roughly six years. *See id.* at Ex. A. He then served as Chairman of Panasonic Corporation's Board of Directors, and today he is a Special Corporate Advisor to Panasonic Corporation. *See id.* Mr. Ohtsubo is specifically the kind of individual to whom the protections of the apex deponent doctrine apply. Courts in this district regularly quash subpoenas directed at similarly senior executives. *See, e.g.*, *Ellena v. Standard Ins. Co.*, No. C 12–05401 SC (LB), 2013 WL 4520200, at *1-2 (N.D. Cal. Aug. 23, 2013) (quashing deposition of executive who was "one of eight executive officers"); *Groupion*, 2012 WL 359699, at *3-5 (applying apex deposition protections to four senior vice presidents); *Mehmet v. PayPal, Inc.*, No. 5:08 CV 1961, 2009 WL 921637, at *2-3 (N.D. Cal. Apr. 3, 2009) (finding that vice president of legal services and general counsel is an apex employee).

C. <u>Mr. Ohtsubo Does Not Have Unique, Non-repetitive, Firsthand Knowledge of the Facts at Issue</u>

Plaintiffs are unable to meet their burden of demonstrating that Mr. Ohtsubo has unique, non-repetitive, firsthand knowledge of the conspiracy alleged in Plaintiffs' complaints, thereby dooming their efforts to depose Mr. Ohtsubo. Mr. Ohtsubo's declaration makes clear that he has no knowledge whatsoever of any of the price-fixing activities alleged in Plaintiffs' complaint. *See*

1  Ohtsubo Decl., ¶¶ 12-13.[3]  Indeed, he did not: (i) attend any meetings with Panasonic's
2  competitors in the CRT industry at which competitively sensitive information was shared; (ii)
3  receive reports concerning such meetings; or (iii) otherwise hear of those meetings. *See id.* ¶ 13.
4  Moreover, Mr. Ohtsubo was never responsible for the day-to-day operation of Panasonic's CRT
5  business – such as setting CRT prices or selling CRTs to Panasonic's customers. *See id.* ¶ 14.

6  Plaintiffs have not offered Panasonic any evidence refuting the contents of Mr. Ohtsubo's
7  declaration. During the meet and confer process, the only justification that Plaintiffs' counsel
8  gave for requesting Mr. Ohtsubo's deposition was Mr. Tobinaga's testimony. *See* Kessler Decl.,
9  ¶ 6. The Tobinaga transcript contains no testimony suggesting that Mr. Ohtsubo was either
10 personally involved in or even aware of the alleged conspiracy. Indeed, the only contacts with
11 Mr. Ohtsubo that Mr. Tobinaga testified to were reports on high-level financial results and
12 requests for permission to undertake extraordinary corporate events, such as shuttering a
13 subsidiary. Tobinaga Tr. 26:23-27:6, 28:13-30:17, 120:5-11.

14 Specifically, Mr. Tobinaga testified that once a month he reported on "the business results
15 of MTPD" to Mr. Ohtsubo. *Id.* at 26:23-27:3. These were not one-on-one meetings; rather, Mr.
16 Tobinaga and the heads of the other business units within PAVC would assemble in a conference
17 room and take turns reporting on their units' financial performance to PAVC's leadership,
18 including Mr. Ohtsubo. *Id.* at 27:10-14, 118:6-16. These oral reports would be accompanied by a
19 concise one-page document summarizing each unit's profit and loss results for the month. *Id.* at
20 27:15-28:5, 34:5-35:2, 118:22-119:17, 121:7-10. Mr. Tobinaga testified that, apart from these
21 meetings, he would only report to Mr. Ohtsubo if MTPD was faced with a business decision that
22 required Panasonic's approval. *Id.* at 28:13-30:17. Furthermore, Mr. Tobinaga made clear that
23 the only such decisions that arose during his tenure as MTPD's President were "the closing of a
24 factory or the selling off of a factory." *Id.* at 29:16-18.

25 There is simply no evidence in the Tobinaga transcript or anywhere else suggesting that

---

[3] This declaration is competent evidence that may be considered by the Court. *See, e.g., Ellena*, 2013 WL 4520200, at *2 (granting protective order where executive submitted declaration stating that he had "no personal knowledge" of the facts at issue in the lawsuit); *Thomas v. Int'l Bus. Machs.*, 48 F.3d 478, 483 (10th Cir. 1995) (same).

Mr. Ohtsubo involved himself in the operation of Panasonic's CRT business. Plaintiffs are impermissibly asking this court to infer that Mr. Ohtsubo knew of the alleged conspiracy simply because of his "apex" position at Panasonic. *See TFT-LCD*, 2011 WL 10967617, at *2 (permitting such inference "would eviscerate the apex doctrine"). In *TFT-LCD*, an apex deposition was not permitted where plaintiffs were unable to provide the court with any evidence that the executive "participated in or was otherwise aware of [the price-fixing] conspiracy." *Id.* The same result follows here.

Even if this Court were to find that Mr. Ohtsubo received information regarding the facts at issue in this action from lower-level employees (which he did not), a protective order would still be warranted because Mr. Ohtsubo's knowledge would be duplicative of those lower-level employees and thus neither "unique" nor "non-repetitive." *See, e.g.*, *Affinity*, 2011 WL 1753982, at *15-16 (firsthand knowledge insufficient to warrant apex deposition; such knowledge must also be "unique" and "non-repetitive"); *see also Harris v. Computer Assocs. Int'l, Inc.*, 204 F.R.D. 44, 46 (E.D.N.Y. 2001) (an apex deposition is improper when an executive "can contribute nothing more than a lower level employee").

D. Plaintiffs Have Not Exhausted Less Intrusive Means of Discovery

Plaintiffs have also failed to make the second showing required to allow an apex deposition to go forward – that they have exhausted less intrusive means of discovery without success. Examples of less intrusive means of discovery include "interrogatories, requests for admission, and depositions of lower level employees." *Affinity*, 2011 WL 1753982, at *6. Here, Plaintiffs have yet to serve any interrogatories on Panasonic regarding Mr. Ohtsubo. Moreover, Plaintiffs' depositions of lower-level Panasonic employees are ongoing: indeed, two depositions of current or former Panasonic employees were on the calendar at the time that Mr. Ohtsubo's deposition was noticed.[4] Finally, Plaintiffs have yet to depose several of the employees identified in Panasonic's responses to interrogatories as having met with other producers of CRTs or CRT

---

[4] Former employee Shinichiro Tsuruta was deposed on September 25-27, 2013, and current employee Masashi Muramatsu was deposed on October 8-11, 2013.

7

Products.[5]  Each of these individuals participated in one or more competitor meetings, whereas Mr. Ohtsubo did not participate in any such meeting.

Plainly, Plaintiffs have not exhausted less intrusive means of discovery, and the deposition of Mr. Ohtsubo should not go forward.  *See Groupion*, 2012 WL 359699, at *3-5 (blocking apex depositions where less intrusive means of discovery, including interrogatories, had not been exhausted); *Dauth*, 2013 WL 4103443, at *2 (refusing to compel apex deposition where "other less intrusive means of discovery" had yet to be pursued).  Plaintiffs' request to depose Mr. Ohtsubo is an example of the harassing and unnecessary discovery that has made this case drag on for six years.

## IV. CONCLUSION

For each reason stated above, Panasonic's Motion for a protective order should be granted.

DATED:  October 17, 2013               WINSTON & STRAWN LLP

By: /s/ *Jeffrey L. Kessler*
JEFFREY L. KESSLER (*pro hac vice*)
E-mail: jkessler@winston.com
ALDO A. BADINI (Bar No. 257086)
E-mail: abadini@winston.com
A. PAUL VICTOR (*pro hac vice*)
E-mail: pvictor@winston.com
EVA W. COLE (*pro hac vice*)
E-mail: EWCole@winston.com
MOLLY M. DONOVAN (*pro hac vice*)
Email: MMdonovan@winston.com
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, New York 10166-4193
Telephone: (212) 294-6700
Facsimile: (212) 294-4700

STEVEN A. REISS (*pro hac vice*)
E-mail: steven.reiss@weil.com
DAVID L. YOHAI (*pro hac vice*)
E-mail: david.yohai@weil.com
ADAM C. HEMLOCK (*pro hac vice*)
E-mail: adam.hemlock@weil.com
DAVID E. YOLKUT (*pro hac vice*)
E-mail: david.yolkut@weil.com
**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue

---

[5]  Such individuals include Tom Fote, Daisuke Hongu, Yukio Usuda, John Webster, Takeshi Komori, Kazuto Ueda, and Shinichi Kitamura.

|   |   |
|---|---|
| 1 | New York, New York 10153-0119 |
| 2 | Telephone: (212) 310-8000<br>Facsimile: (212) 310-8007 |
| 3 | GREGORY D. HULL (Bar No. 57367) |
| 4 | E-mail: greg.hull@weil.com<br>**WEIL, GOTSHAL & MANGES LLP** |
| 5 | 201 Redwood Shores Parkway<br>Redwood Shores, California 94065-1175 |
| 6 | Telephone: (650) 802-3000<br>Facsimile: (650) 802-3100 |
| 7 | *Attorneys for Defendants Panasonic* |
| 8 | *Corporation (f/k/a Matsushita Electric*<br>*Industrial Co., Ltd.), Panasonic Corporation of* |
| 9 | *North America, and MT Picture Display Co.,*<br>*Ltd.* |