David J. Burman (admitted *pro hac vice*)
Cori G. Moore (admitted *pro hac vice*)
Eric J. Weiss (admitted *pro hac vice*)
Nicholas H. Hesterberg (admitted *pro hac vice*)
Steven D. Merriman (admitted *pro hac vice*)
**PERKINS COIE LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: 206.359.8000
Facsimile: 206.359.9000

Joren Bass, Bar No. 208143
JBass@perkinscoie.com
**PERKINS COIE LLP**
Four Embarcadero Center, Suite 2400
San Francisco, CA 94111-4131
Telephone: 415.344.7120
Facsimile: 415.344.7320

Attorneys for Plaintiff
Costco Wholesale Corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. 3:07-cv-05944-SC<br>MDL No. 1917 |
| This document relates to:<br><br>Case No. 3:11-06397-SC<br><br>COSTCO WHOLESALE CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>HITACHI, LTD., et al.,<br><br>Defendants. | **COSTCO'S OPPOSITION TO THE PHILIPS DEFENDANTS' MOTION TO COMPEL ARBITRATION**<br><br>Date:      December 6, 2013<br>Time:      TBD<br>Before:   Hon. Samuel Conti |

1

**TABLE OF CONTENTS**

2

Page

3    I.    INTRODUCTION AND STATEMENT OF THE ISSUES ................................. 1

4    II.   FACTS ............................................................................................................ 3

5          A.    The Arbitration Agreement ................................................................... 3

6          B.    Procedural History ............................................................................... 3

7    III.  ARGUMENT ................................................................................................. 6

8          A.    The Philips Defendants Waived Their Opportunity to Arbitrate ............ 6

9                1.    The Philips Defendants Knew of Their Right to Compel Arbitration ........ 7

10               2.    The Philips Defendants Acted Inconsistently with Their Right to
                       Arbitrate, and Their Behavior Objectively Communicated Assent to
11                     Costco's Decision to Go to Court ............................................................. 9

12               3.    The Philips Defendants' Inconsistent Acts Prejudiced Costco ................ 13

13         B.    Costco Cannot Be Forced to Arbitrate with the Philips Defendants as to
                 Purchases from Others .......................................................................... 18

14         C.    Dismissal Is Unwarranted .................................................................... 19

15   IV.   CONCLUSION ............................................................................................ 19

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

Page

CASES

*AT&T Corp. v. Innocom Telecom LLC*,
   2007 WL 163193 (N.D. Cal. Jan. 17, 2007) ......................................................... 17

*Brown v. Dillard's, Inc.*,
   430 F.3d 1004 (9th Cir. 2005).............................................................................. 13

*Coleman v. Assurant, Inc.*,
   508 F. Supp. 2d 862 (D. Nev. 2007) ...................................................................... 8

*ConWest Res., Inc. v. Playtime Novelties, Inc.*,
   C 06-5304SBA, 2007 WL 1288349 (N.D. Cal. May 1, 2007) ............................. 15

*Costco Wholesale Corp. v. Hitachi, Ltd.*,
   No. 2:11–cv-01909–RSM (W.D. Wash. Nov. 14, 2011) ........................................ 3

*Doctor's Assocs., Inc. v. Distajo*,
   107 F.3d 126 (2d Cir. 1997) ................................................................................. 16

*Edwards v. First Am. Corp.*,
   289 F.R.D. 296 (C.D. Cal. 2012) .................................................................... 14, 15

*Fisher v. A.G. Becker Paribas Inc.*,
   791 F.2d 691 (9th Cir. 1986)................................................................................... 6

*Gonsalves v. Infosys Techs., Ltd.*,
   C 3:09-04112, 2010 WL 3118861 (N.D. Cal. Aug. 5, 2010)................................ 15

*Gray Holdco, Inc. v. Cassady*,
   654 F.3d 444 (3d Cir. 2011).................................................................................. 17

*Hoffman Const. Co. of Or. v. Active Erectors & Installers, Inc.*,
   969 F.2d 796 (9th Cir. 1992).................................................................................. 7

*Hooper v. Advance Am., Cash Advance Ctrs. of Mo., Inc.*,
   589 F.3d 917 (8th Cir. 2009)................................................................................. 10

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   M 07-1827 SI, 2011 WL 1753784 (N.D. Cal. May 9, 2011)................................... 7

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   M 07-1827 SI, 2011 WL 3353867 (N.D. Cal. Aug. 3, 2011) ................................ 19

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   M 07-1827 SI, Dkt. No. 4526 (N.D. Cal. Jan. 10, 2012) ...................................... 18

1

2

**TABLE OF AUTHORITIES**
(continued)

Page

3

4

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
M 07-1827 SI, Dkt. No. 6622 (N.D. Cal Sept. 5, 2012) ...................... 18

5

*Johnson Assocs. Corp. v. HL Operating Corp.*,
680 F.3d 713 (6th Cir. 2012).............................................................. 2, 15

6

7

*Jones Motor Co. v. Chauffeurs, Teamsters & Helpers Local Union*,
671 F.2d 38 (1st Cir. 1982) ...................................................................... 15

8

9

*Kramer v. Hammond*,
943 F.2d 176 (2d Cir. 1991)............................................. 1, 13, 14, 17

10

*Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*,
67 F.3d 20 (2d Cir. 1995)........................................................................ 17

11

12

*Lewallen v. Green Tree Servicing, L.L.C.*,
487 F.3d 1085 (8th Cir. 2007)................................................................ 10

13

14

*Lyzwa v. Chu*,
C-97-20053, 1998 WL 326768 (N.D. Cal. Feb. 2, 1998) ............ 13, 18

15

*Menorah Ins. Co. v. INX Reinsurance Corp.*,
72 F.3d 218 (1st Cir. 1995) .................................................................... 17

16

17

*Miller Brewing Co. v. Fort Worth Distrib. Co.*,
781 F.2d 494 (5th Cir. 1986)................................................................... 17

18

19

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983) ..................................................................................... 19

20

*Nat'l Found. for Cancer Research v. A.G. Edwards & Sons*,
821 F.2d 772 (D.C.Cir.1987) .................................................................. 11

21

22

*PaineWebber Inc. v. Faragalli*,
61 F.3d 1063 (3d Cir.1995)...................................................................... 17

23

24

*Parler v. KFC Corp.*,
529 F. Supp. 2d 1009 (D. Minn. 2008) .................................................... 7

25

*Petroleum Pip Ams. Corp. v. Jindal Saw, Ltd.*,
575 F.3d 476 (5th Cir. 2009)............................................................... 2, 10

26

27

*Plaut v. Spendthrift Farm*,
514 U.S. 211 (1995)................................................................................. 10

28

Costco's Opposition to the Philips Defendants'
Motion to Compel Arbitration                  iii                 Case No. 07-5944-SC
                                                                  MDL No. 1917

1
2

**TABLE OF AUTHORITIES**
(continued)

Page

3

*Rankin v. Allstate Ins. Co.*,

4
   336 F.3d 8 (1st Cir. 2003) ..................................................................................... 13

5

*Riverside Publ'g Co. v. Mercer Publ'g LLC*,
   829 F. Supp. 2d 1017 (W.D. Wash. 2011) ................................................... 1, 9, 15

6

7

*S&H Contractors, Inc. v. A.J. Taft Coal Co.*,
   906 F.2d 1507 (11th Cir. 1990) .............................................................................. 17

8

*Shinto Shipping Co. v. Fibrex & Shipping Co.*,
   572 F.2d 1328 (9th Cir. 1978) ............................................................................. 1, 6

9

10

*St. Mary's Med. Ctr. of Evansville, Ind., v. Disco Aluminum Prods. Co.*,
   969 F.2d 585 (7th Cir.1992) ................................................................................... 15

11

*Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*,

12
   322 F.3d 1064 (9th Cir. 2003) ............................................................................... 10

13

*Van Ness Townhouses v. Mar Indus. Corp.*,
   862 F.2d 754 (9th Cir. 1988) .......................................................... 10, 13, 14, 17

14

15

*Wallace v. Chafee*,
   451 F.2d 1374 (9th Cir. 1971) ................................................................................. 7

16

**OTHER AUTHORITIES**

17

Charles J. Moxley, Jr., *Discovery in Commercial Arbitration: How Arbitrators Think*,

18
   Disp. Resol. J. 36 (October 2008) ......................................................................... 12

19
20
21
22
23
24
25
26
27
28

Costco's Opposition to the Philips Defendants'
Motion to Compel Arbitration                          iv                          Case No. 07-5944-SC
                                                                                    MDL No. 1917

## I.    INTRODUCTION AND STATEMENT OF THE ISSUES

The Philips Defendants have known for nearly 20 years that they could arbitrate disputes with Costco Wholesale Corporation—because they signed the arbitration agreement at issue with Costco *in 1995*.  Declaration of Erik Koons ("Koons Decl.") Ex. A.  And they were reminded of that arbitration agreement *in writing* on at least three occasions between 1995 and 2004.  Declaration of Geoff Shavey ("Shavey Decl.") ¶ 6; Koons Decl. Exs. C, E.  Yet the Philips Defendants, also knowing that they had sold to Costco hundreds of millions of dollars' worth of CRT televisions during the conspiracy period, waited until May 2013—nearly 27 months after receiving from Costco data confirming those Philips purchases and nearly 18 months after Costco filed its opt-out complaint—to move to compel arbitration, claiming that they previously were unaware that they had such a written agreement.  That unjustified delay compels the conclusion that the Philips Defendants have waived any opportunity to arbitrate Costco's claims, *Shinto Shipping Co. v. Fibrex & Shipping Co.*, 572 F.2d 1328, 1330 (9th Cir. 1978) ("[I]t is clear that a party can waive its right to arbitration."), prejudicing Costco in terms of time, money, and legal positions invested in litigating against the Philips Defendants in court (admittedly better suited to this kind of case) instead of in the more efficient and accelerated arbitration forum, *Kramer v. Hammond*, 943 F.2d 176, 179 (2d Cir. 1991) ("Prejudice . . . can be found when a party too long postpones his invocation of his contractual right to arbitration, and thereby causes his adversary to incur unnecessary delay or expense.").

Compounding their deliberate delay, the Philips Defendants engaged in forum shopping by first asking this Court to grant their motion to dismiss Costco's claims on the merits and then asking the Court *in the event of an unfavorable ruling* to conclude that only an arbitrator is authorized to adjudicate Costco's claims.  Philips Mot. at 4 ("The Philips Defendants file this motion to compel arbitration solely as an alternative to their motion to dismiss based on the statute of limitations.").  Federal courts condemn such gamesmanship, *Riverside Publ'g Co. v. Mercer Publ'g LLC*, 829 F. Supp. 2d 1017, 1020 (W.D. Wash. 2011) (confirming that courts take a "dim view of litigants who seek arbitration after an unfavorable result in litigation"), and routinely deny motions to compel arbitration where the movant first sought in court a decision on

1    the merits, *Petroleum Pip Ams. Corp. v. Jindal Saw, Ltd.*, 575 F.3d 476, 480 (5th Cir. 2009) ("A

2    party waives arbitration by seeking a decision on the merits before attempting to arbitrate.").

3        Indeed, the Philips Defendants acted inconsistently with any right to arbitrate by invoking

4    the litigation machinery long before moving to compel arbitration, including serving on Costco

5    dozens of discovery requests, receiving from Costco detailed transactional data and supporting

6    documents, and deposing one of Costco's key witnesses—discovery on which Costco expended

7    significant time and money to evaluate and answer and to which the Philips Defendants would not

8    necessarily have been entitled in arbitration.  *See Johnson Assocs. Corp. v. HL Operating Corp.*,

9    680 F.3d 713, 720 (6th Cir. 2012) ("Prejudice can also be found where a party has gained a

10   strategic advantage by obtaining something in discovery that would be unavailable in

11   arbitration.").  And by delaying their call for arbitration, the Philips Defendants further

12   undermined the primary purpose of the arbitration agreement, which mandates a streamlined and

13   expedited process.  The Philips Defendants have therefore waived any right they may have had to

14   arbitrate with Costco, and the Court should, consistent with the decisions of numerous federal

15   courts, deny the Philips Defendants' motion to compel arbitration.

16       To the extent the Philips Defendants have not waived their opportunity to compel

17   arbitration, Costco still cannot be forced to arbitrate the joint and several liability of the Philips

18   Defendants for its damages based on purchases from other conspirators.  This Court has already

19   concluded that such claims are excluded from the arbitration agreement at issue and must remain

20   in court.  Dkt. No. 1543 at 5 (Order Adopting Special Master's Report and Recommendation

21   Regarding Toshiba Defendants' Motion to Compel Arbitration) (holding that Costco's claims

22   based on co-conspirator and joint and several liability are not subject to arbitration because

23   Costco did not agree to arbitrate those claims with the signatory corporate family).[1]

24

25

26

27          [1] Costco does not reargue here, but preserves for appeal, its arguments that the Court denied by
     granting in part the Toshiba Defendants' motion to compel arbitration.  Dkt. No. 1543.

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## II.    FACTS

### A.    The Arbitration Agreement

In 1995, Defendant Philips Electronics North America Corporation ("PENAC"), through its consumer-electronics division, signed a vendor agreement with Costco.  Koons Decl. Ex. A. The vendor agreement incorporated by reference Costco's Standard Terms, including an arbitration provision.  *Id.* Ex. B.  At the time PENAC signed the vendor agreement, Costco would have provided to PENAC a copy of both the vendor agreement and the Standard Terms.  Shavey Decl. ¶ 5.  Costco also periodically updates and revises its Standard Terms, and it is Costco's practice to transmit a cover letter to all active vendors with a copy of the new and revised Standard Terms.  *Id.* ¶ 6.  That cover letter informs the vendors that the Standard Terms have been updated and that the updated Standard Terms replace the previous version of the Standard Terms.  *Id.*; Koons Decl. Exs. C, E (cover letters and updated Standard Terms).  Costco updated and revised its Standard Terms in 1997, 2000, and 2004, and each version of the Standard Terms specified that claims related to the vendor agreements would be arbitrated.  Shavey Decl. ¶ 6; Koons Decl. Exs. B–E.

### B.    Procedural History

In November 2009—two years before Costco filed its opt-out complaint—the Indirect Purchaser Plaintiffs ("IPPs") subpoenaed Costco and requested that Costco produce transactional data related to purchase and sale of CRT televisions and monitors ("CRT Products") during the conspiracy.  *See* Declaration of David J. Burman ("Burman Decl.") Ex. A.  On February 18, 2010, Costco produced its transactional data to the IPPs, Burman Decl. Ex. B, who the next day relayed the data to the Philips Defendants, Declaration of Eric J. Weiss ("Weiss Decl.") Ex. A. The produced transactional data identified 41 different Philips-branded CRT televisions that Costco sold during the conspiracy.  Burman Decl. ¶ 3.  The Philips Defendants sold at least $355 million worth of CRT Products to Costco during the conspiracy.  Weiss Decl. ¶ 8.  Costco was not a tiny, invisible account.

On November 14, 2011, Costco filed a complaint, naming as defendants, among others, Royal Philips and PENAC.  Complaint and Jury Demand, *Costco Wholesale Corp. v. Hitachi,*

1    *Ltd.*, No. 2:11–cv–01909–RSM, Dkt. No. 1 (W.D. Wash. Nov. 14, 2011).  Six months later, the

2    Philips Defendants served Costco with ten interrogatories and thirty-five document requests.

3    Weiss Decl. Exs. B–C.  The interrogatories sought information about Costco's purchasing

4    practices, and the requests asked Costco to produce documents that the Philips Defendants could

5    use to defend themselves against Costco's claims.  *Id.*   During the summer of 2012, the Philips

6    Defendants acknowledged that Costco was a major customer.  Burman Decl. ¶ 5.

7         On August 17, 2012, as Costco was responding to their discovery requests, the Philips

8    Defendants moved to dismiss Costco's claims (and the claims of the other direct action plaintiffs).

9    Dkt. No. 1319 (Philips Defendants' Motion to Dismiss).  The Philips Defendants argued that

10   because they allegedly withdrew from and did not fraudulently conceal the CRT price-fixing

11   conspiracy, Costco's claims were barred by the statute of limitations.  *Id.* at 7, 11.  Costco

12   expended dozens of hours and thousands of dollars in legal fees opposing that motion before both

13   the Special Master and the Court.  Dkt. Nos. 1383 (Direct Action Plaintiffs' Opposition to the

14   Philips Defendants' Motion to Dismiss), 1704 (Direct Action Plaintiffs' Objections to the Special

15   Master's Report and Recommendation Regarding Philips' and LG's Motion to Dismiss).

16        Costco's responses to the Philips Defendants' discovery requests included a second set of

17   transactional data.  Weiss Decl. ¶ 7, Exs. D–E.  That production included a list of vendors from

18   whom Costco purchased CRT Products and specifically named PENAC's consumer-electronics

19   division.  *Id.* ¶ 8.  Costco and the Philips Defendants thereafter participated in four telephonic

20   meet-and-confers and routinely emailed one another about the Philips Defendants' discovery

21   requests.  *Id.* ¶ 9, Ex. G (noting, among other things, that the parties "reached a mutual a mutual

22   understanding to work towards an agreement in which Costco would produce documents

23   responsive to Defendants' requests based on a review of files from an agreed upon list of

24   custodians, filtered by keyword search terms.").  As a part of those meet-and-confers and email

25   exchanges, Costco responded to additional discovery requests from the Philips Defendants, and

26   the parties negotiated over potential document search terms.  *Id.* (documenting Costco's

27   supplemental production of a warehouse reference list, organizational chart, responses to

28   additional inquiries regarding transactional data, warehouse region codes and descriptions, and

1   supplemental transactional data).

2          On August 24, 2012, the Toshiba Defendants, who had joined in the discovery requests to

3   Costco by the Philips Defendants, moved to compel arbitration against Costco, citing the same

4   vendor agreement and Standard Terms on which the Philips Defendants rely here.  Dkt. No. 1332.

5   That motion explicitly stated that Costco imposes an arbitration agreement on all of its vendors

6   and that Costco's claims in the MDL were therefore subject to arbitration.  *Id.* at 2.  ("Costco's

7   claims . . . are subject to the broad arbitration agreement that Costco imposes on all of its

8   suppliers.").  The Philips Defendants did not join in the motion even though they had been

9   repeatedly reminded of their written agreement with Costco, knew that Costco was a huge

10   customer, and knew from Toshiba's motion that Costco's vendors were subject to arbitration

11   agreements.  Instead, the Philips Defendants pursued having the Court—not an arbitrator—decide

12   whether to dismiss Costco's claims on the merits.  Weiss Decl. ¶ 12.

13          On October 18, 2012, the Philips Defendants sent Costco a list of topics for a Rule

14   30(b)(6) deposition, urging Costco to make a witness available as soon as possible because "time

15   is of the essen[c]e" as the deadline for the IPPs to oppose the motion for class certification was

16   fast approaching.  *Id.* Ex. G at 32.  Costco accommodated that request and further accommodated

17   the parties when the Special Master, at the IPPs' request, continued the deposition to early

18   December.  *Id.* ¶ 11.  While Costco and the Philips Defendants continued to negotiate search

19   terms for additional document production, Costco on three occasions produced additional

20   transactional data, as a part of its ongoing obligations to supplement its responses.  *Id.* Ex. G at

21   64, 77, 80.  And on December 7, 2012, counsel for the Philips Defendants conducted an

22   expansive Rule 30(b)(6) deposition of one of Costco's key witnesses.  Shavey Decl. ¶ 7.

23          On January 10, 2013, in what the Philips Defendants described as "a pivot in our

24   discussions regarding Costco's document production," the Philips Defendants directed Costco to

25   immediately suspend its ongoing document-production efforts and instead search for and produce

26   "all Vendor Agreements, or any other agreements containing an arbitration provision, that it had

27   in place with any Defendant relating to the purchase of products incorporating CRTs during the

28   1995-2007 time period."  Weiss Decl. Ex. J.  Despite citing the Toshiba Defendants' previously

1    filed motion to compel arbitration and the Special Master's report and recommendation granting

2    in part that motion, the Philips Defendants nonetheless claimed to have heard for the first time at

3    the Costco Rule 30(b)(6) deposition "that Costco has similar Vendor Agreements with all

4    suppliers." *Id.* Costco informed the Philips Defendants that it would produce any such vendor

5    agreements but explained that "if any Defendants signed contracts with Costco containing

6    arbitration provisions, those Defendants presumably maintained their own copies of those

7    contracts and have had them available to review and consult ever since entering into them." *Id.*

8    Ex. K. Costco also explained that to the extent any such contracts existed, "Defendants have

9    waived any opportunity to arbitrate with Costco" because those "Defendants' decision to proceed

10   in the MDL forecloses any opportunity to arbitrate now." *Id.*

11          Costco produced the vendor agreements, Weiss Decl. ¶ 13, and after two months of

12   silence, the Philips Defendants contacted Costco and indicated for the first time that they wanted

13   to arbitrate Costco's claims. Koons Decl. Ex. K. And on May 9, 2013, eighteen months after

14   Costco filed its complaint, the Philips Defendants moved to compel arbitration against Costco.

15   Philips Motion at 1. In their motion, the Philips Defendants made their strategy clear: "The

16   Philips Defendants file this motion to compel arbitration solely as an alternative to their motion to

17   dismiss based on the statute of limitations." *Id.* The Court denied the motion to dismiss on

18   August 21, 2013. Dkt. No. 1856.

19                              **III.    ARGUMENT**

20   **A.    The Philips Defendants Waived Their Opportunity to Arbitrate**

21          The Ninth Circuit has repeatedly recognized that a party may waive its opportunity to

22   arbitrate. *See, e.g.*, *Shinto Shipping Co. v. Fibrex & Shipping Co.*, 572 F.2d 1328, 1330 (9th Cir.

23   1978) ("[I]t is clear that a party can waive its right to arbitration."). A party seeking to prove

24   waiver of a right to arbitration must demonstrate "(1) knowledge of an existing right to compel

25   arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing

26   arbitration resulting from such inconsistent acts." *Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d

27   691, 694 (9th Cir. 1986).

28

The Philips Defendants waived their opportunity to arbitrate.  They knew of their right to arbitrate from the outset of the relationship but nonetheless moved to dismiss Costco's complaint on the merits before moving to compel arbitration, explicitly asked that the Court rule on the motion to compel if they lost their motion to dismiss, served and received discovery to which they otherwise might have not been entitled in arbitration, waited 18 months after Costco filed its complaint to compel arbitration, and forced Costco to expend considerable time, effort, and money litigating against them in the MDL.

### 1.    The Philips Defendants Knew of Their Right to Compel Arbitration

Contrary to their contention that they only recently learned of their opportunity to compel arbitration, the Philips Defendants have known of their right to compel arbitration under the vendor agreement for *nearly 20 years*.  The Philips Defendants rationalize their delay by claiming that they *first* learned that they might be able to arbitrate in December 2012, when Costco's Rule 30(b)(6) witness testified that Costco has with its suppliers vendor agreements incorporating arbitration provisions.  Philips Mot. at 5.  But the Philips Defendants have known of their arbitration right since 1995, when Defendant PENAC signed the vendor agreement incorporating the arbitration provision.  *See, e.g.*, *Wallace v. Chafee*, 451 F.2d 1374, 1377 (9th Cir. 1971) ("One who enters a contract is on notice of the provisions of the contract.  If he assents voluntarily to those provisions after notice, he should be presumed, in the absence of ambiguity, to have understood and agreed to comply with the provisions as written.  This is hornbook contract law."); *Hoffman Const. Co. of Or. v. Active Erectors & Installers, Inc.*, 969 F.2d 796, 798 (9th Cir. 1992) ("[I]t cannot be said that Active lacked knowledge of the right to compel arbitration.  The contract itself called for arbitration of disputes between Active and Hoffman."); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, M 07-1827 SI, 2011 WL 1753784, at *6 (N.D. Cal. May 9, 2011) (refusing to stay litigation while defendants attempted to locate arbitration agreements "all of which are presumably in defendants' possession"); *Parler v. KFC Corp.*, 529 F. Supp. 2d 1009, 1014 (D. Minn. 2008) ("The assertion 'I didn't know what was in the contract that I signed' is made by litigants frequently but almost never successfully. . . .  Thus whether plaintiffs actually knew of the arbitration clause in their contracts is irrelevant; that knowledge is imputed as a

1    matter of law.").  Because the law sensibly imposes on the Philips Defendants an obligation to

2    know the contents of documents they sign, including agreements to arbitrate, the law compels the

3    conclusion that the Philips Defendants have been on notice of their right to arbitrate since 1995.

4           Of course, lest there be any doubt that the Philips Defendants were aware of their right to

5    compel arbitration, at the time it signed the agreement, PENAC received a copy of both the

6    vendor agreement and Costco's Standard Terms containing the arbitration provision.  *See* Shavey

7    Decl. ¶ 5.  Moreover, Costco periodically updates and revises the language of the Standard Terms

8    incorporated by the vendor agreement—which it did in 1997, 2000, and 2004—and it is Costco's

9    practice to transmit a cover letter to all active vendors with a copy of the new and revised

10   Standard Terms.  *Id.* ¶ 6.  That letter informs the vendors, including the Philips Defendants, that

11   Costco has updated the Standard Terms and that the updated Standard Terms replaced the

12   previous version.  *Id.*; *see also Coleman v. Assurant, Inc.*, 508 F. Supp. 2d 862, 868 (D. Nev.

13   2007) ("The Court finds it unreasonable to assert that an insurance company would not know of

14   an arbitration provision in an underlying contract for an account the insurance company was

15   agreeing to insure.").

16          Nor can Philips sweep away its delay because "the Costco Complaint does not specify

17   from whom, when, or where Costco bought 'CRT Products.'"  Philips Mot. at 4.  Putting aside

18   the implausibility that the Philips Defendants were unaware that they had sold hundreds of

19   millions of dollars' worth of CRT Products to Costco during the conspiracy period, the Philips

20   Defendants have known since at least 2010 that Costco sold 41 different models of Philips CRT

21   televisions, Burman Decl. ¶ 3.  The Philips Defendants received that information in February

22   2010 when Costco produced its transactional data in response to a third-party subpoena from the

23   IPPs, who forwarded that data to the defendants.  Weiss Decl. Ex. A.  Indeed, the Philips

24   Defendants referenced that data in their August 2012 discovery requests to Costco.  *See id.* Ex. C

25   (Request for Production No. 35:  "Documents sufficient to show the meaning of any codes or

26   abbreviations used in any data produced in response [to] any third-party subpoena . . . .").  And if

27   there was still any lingering doubt that the Philips Defendants knew that they had sold products to

28   Costco subject to the vendor agreement, that doubt was extinguished when Costco produced its

1    transactional data to the Philips Defendants *for a second time* in August 2012—data that

2    explicitly listed the Philips Defendants as Costco vendors.  *Id.* ¶ 7.  The Philips Defendants

3    cannot avoid their obligations under the vendor agreement by ignoring their own documents and

4    pleading ignorance of the contract terms.

5         Incredibly, the Philips Defendants assert that they "only recently discovered the basis for

6    the motion to compel" in February 2013, when Costco produced the vendor agreement at issue.

7    Philips Mot. at 4.  Aside from the fact that the Philips Defendants have known about their right to

8    arbitrate since 1995 when they signed the vendor agreement, the Toshiba Defendants informed

9    everyone in August 2012—*six months earlier*—that Costco's vendors signed such vendor

10   agreements.  The Philips Defendants cannot credibly contend, as they nonetheless do, that they

11   were unaware until February 2013 that they had the right to compel arbitration.  *See, e.g.*,

12   *Riverside Publ'g Co. v. Mercer Publ'g LLC*, 829 F. Supp. 2d 1017, 1020 (W.D. Wash. 2011)

13   ("There is no dispute that Riverside knew that the Settlement Agreement gave it a right to compel

14   arbitration.  Riverside negotiated the Settlement Agreement with Mercer, including the

15   Agreement's arbitration clause.").

16
17   **2.      The Philips Defendants Acted Inconsistently with Their Right to Arbitrate,
         and Their Behavior Objectively Communicated Assent to Costco's Decision
         to Go to Court**

18        This is not the typical arbitration-waiver situation, particularly once the Court ruled on the

19   Toshiba Defendants' arbitration motion.  Parties can agree to modify their prior agreements,

20   including arbitration provisions.  Costco made a conscious decision that arbitration was not the

21   best method for resolving its claims in this situation.  There were a variety of reasons for that

22   decision, including the advantage of resolving in one proceeding the dispute as to all purchases

23   and all alleged conspirators along with joint and several responsibility, which the Toshiba

24   decision in January 2013 confirmed was not possible through arbitration.  Costco's decision to

25   continue in court against other vendors, including the Philips Defendants, was an open and

26   obvious offer to modify the agreement; by its objective actions, particularly its motion to dismiss,

27   the Philips Defendants communicated acceptance.

28

1    Even by normal arbitration-waiver standards, however, the Philips Defendants disregarded

2    and routinely acted inconsistently with their asserted right to compel arbitration, opportunistically

3    taking advantage of the benefits of the multidistrict litigation—at Costco's expense—and

4    avoiding its obligations under the arbitration agreement.  *See, e.g.*, *Lewallen v. Green Tree*

5    *Servicing, L.L.C.*, 487 F.3d 1085, 1090 (8th Cir. 2007) ("A party acts inconsistently with its right

6    to arbitrate if the party substantially invokes the litigation machinery before asserting its

7    arbitration right." (internal quotation marks omitted)).

8    Most significantly, the Philips Defendants moved to dismiss all of Costco's claims on the

9    merits.  Dkt. No. 1319 (Philips Defendants "Notice of Motion and Motion to Dismiss and for

10   Judgment on the Pleadings as to the Direct Action Plaintiffs' Claims").  Such a motion to

11   dismiss—which asked the Court, not an arbitrator, to decide the merits of a dispositive defense—

12   is plainly inconsistent with the right to arbitrate.  *See, e.g.*, *Hooper v. Advance Am., Cash*

13   *Advance Ctrs. of Mo., Inc.*, 589 F.3d 917, 921 (8th Cir. 2009) ("[A] request to dispose of a case

14   on the merits before reaching arbitration is inconsistent with resolving the case through

15   arbitration."); *Petroleum Pipe Ams. Corp. v. Jindal Saw, Ltd.*, 575 F.3d 476, 480 (5th Cir. 2009)

16   ("A party waives arbitration by seeking a decision on the merits before attempting to arbitrate.").

17   Indeed, the motion to dismiss addressed merits issues including the Philips Defendants' claimed

18   withdrawal from the conspiracy and their efforts to fraudulently conceal the conspiracy from the

19   authorities and their customers.  Dkt. No. 1319 at 7, 11; *see also Plaut v. Spendthrift Farm*, 514

20   U.S. 211, 228 (1995) ("The rules of finality, both statutory and judge made, treat a dismissal on

21   statute-of-limitations grounds the same way they treat a dismissal for failure to state a claim . . . :

22   as a judgment on the merits."); *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*,

23   322 F.3d 1064, 1081 (9th Cir. 2003) ("The Supreme Court has unambiguously stated that a

24   dismissal on statute of limitations grounds is a judgment on the merits.").  The Philips

25   Defendants' choice to seek in the MDL a decision on the merits that would have outright

26   dismissed Costco's claims was therefore a "'conscious decision to continue to seek judicial

27   judgment on the merits of the arbitrable claims.  This choice was inconsistent with the agreement

28   to arbitrate those claims.'"  *Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754, 759 (9th

1   Cir. 1988) (quoting *Nat'l Found. for Cancer Research v. A.G. Edwards & Sons*, 821 F.2d 772,

2   777 (D.C.Cir.1987)).

3          Moreover, the Philips Defendants have acted inconsistently with their right to arbitrate by

4   serving on Costco extensive discovery—discovery to which the Philips Defendants likely would

5   not have been entitled in arbitration.  On May 15, 2012, the Philips Defendants served on Costco

6   ten interrogatories and thirty-five document requests, seeking, among other things:

7
8
   - Transactional data showing how much Costco paid for CRT finished products
     during the conspiracy.

9
10
   - Identification of all of Costco's purchases of CRTs during the conspiracy,
     including the total quantity, size, model, type, manufacturer, price, and quantity of
     CRTs purchased from any Defendant and any non-Defendant.

11
12
   - Identification of the date, place, quantity, prices, size, model, type, seller, and
     manufacturer of each CRT purchased; each person involved in the purchase; and
     the time period and nature of each person's involvement.

13
14
   - A description of the manner in which Costco used price lists, prices schedules, or
     published prices for CRTs and CRT Products in purchasing any CRTs or CRT
     Products that form the basis of Costco's claims.

15
16
   - Documents related to rebates, discounts, pricing concessions, and terms of
     payment Costco received in connection with the purchase of any CRTs or CRT
     Products during the conspiracy.

17
18
   - Identification of every person with responsibility for the purchase of CRTs or CRT
     Products, including without limitation, the negotiation or approval of contracts or
     agreements relating to the purchase of CRTs or CRT Products.

19
   - Identification of every person employed by Costco with responsibility for cost
     accounting relating to the purchase or sale of CRTs or CRT Products.

20
21
22
23
24
   - Identification of each country and state during the conspiracy in which Costco
     negotiated its CRT Product purchases; received shipments of CRTs or CRT
     Products; and for each country or state the quantity, size, manufacturer, model,
     type, dollar value, and shipper of each shipment received and all persons who had
     authority to receive such shipments on Costco's behalf, as well as the quantity,
     size, manufacturer, model, type, dollar value and seller of CRTs  or CRT Products
     for each purchase negotiated by Costco and all persons who had authority to
     negotiate such purchases on Costco's behalf.

25
26
27
28
   - Identification of each country and state during the conspiracy in which the
     manufacturer of the CRT Products at issue negotiated their purchases of the CRTs
     contained in the CRT products Costco purchased, received shipments of the CRTs
     contained in the CRT products Costco purchased, manufactured the CRT Products
     Costco purchased, or any combination of the preceding; and for each country or
     state the quantity, size, manufacturer, model, and type of CRTs or CRT Products
     purchased, received, or manufactured by each manufacturer.

1  Weiss. Decl. Exs. B–C.

2        Costco has responded to the discovery requests, produced its transactional data and

3  supporting documents to interpret that data, and engaged in numerous meet-and-confers with the

4  Philips Defendants regarding agreed-upon search terms and production of remaining documents.

5  Weiss Decl. ¶¶ 7–9.  But the scope and frequency of the discovery requests and responses would

6  not have been permitted in arbitration.  *See, e.g.*, Weiss Decl. Ex. L (Charles J. Moxley, Jr.,

7  *Discovery in Commercial Arbitration: How Arbitrators Think*, Disp. Resol. J. 36, 38–39 (October

8  2008)) ("[T]he discovery that is automatic and often virtually unlimited in litigation is subject to

9  close scrutiny in arbitration. . . .  [Discovery in litigation] is all very different in commercial

10  arbitration. . . .  [Arbitrators] do not want the parties to engage in a fishing expedition of the kind

11  that is typical of discovery in litigation.  They want to allow just enough discovery to permit each

12  side to prepare and try its case, but no more.").

13       Furthermore, the Philips Defendants have already deposed a Costco Rule 30(b)(6)

14  witness.  Weiss Decl. ¶ 11.  Geoff Shavey, a former Assistant General Merchandise Manager and

15  buyer of consumer electronics for Costco, testified on a variety of topics under questioning from

16  counsel for the Philips Defendants, including Costco's "policies and practices for setting the price

17  at which [Costco] sold CRT Finished Products to [its] customers, including consideration or use

18  of the following: (a) formulas; (b) factors such as cost, supply, demand, competitor pricing,

19  market forecasts, and product specifications; (c) price guidelines or price lists; (d) negotiations or

20  negotiated prices; and (e) alternative distribution channels"; "[Costco's] use of discounts,

21  promotions, rebates or loyalty programs in connection with the sale of CRT Finished Products to

22  [Costco's] customers, including how [Costco] recorded such discounts or rebates, and the identity

23  and location of Documents or data recording such discounts or rebates"; "[Costco's] knowledge

24  and understanding of any relationship between the prices at which [Costco] purchase[s] CRT

25  Finished Products and the prices at which [Costco] sell[s] CRT Finished Products, including, but

26  not limited to, the effects that changes in the prices that [Costco] pays to purchase CRT Finished

27  Products have on costs, revenues and profits from [Costco's] sales of CRT Finished Products";

28  and "[Costco's] standards and practices with regard to tracking the purchases and sales of CRT

Costco's Opposition to the Philips Defendants'
Motion to Compel Arbitration      12      Case No. 07-5944-SC
MDL No. 1917

1    Finished Products for determining the profitability of sales, and for financial reporting purposes."

2    *Id.* Ex. I.

3        Deposing one of Costco's primary witnesses in the MDL is patently inconsistent with the

4    Philips Defendants' claimed right to arbitrate because depositions are rarely permitted in

5    arbitration.  *See, e.g.*, Moxley, *supra* at 39 ("Arbitrators have a strong belief that witnesses should

6    testify only once, and that is at the hearing.  So there is no need to incur the expense of earlier

7    (and generally protracted) depositions.").

8        These discovery requests and deposition show that the Philips Defendants consciously

9    attempted to leverage the judicial process—not the arbitration process—in order to build their

10   case against Costco.  *See, e.g.*, *Lyzwa v. Chu*, C-97-20053, 1998 WL 326768, at *3 (N.D. Cal.

11   Feb. 2, 1998) ("Furthermore, during this time, CHP fully availed itself of the liberal federal

12   discovery procedures and was extensively involved in motion practice, including filing two of its

13   own summary judgment motions.  This conduct is clearly inconsistent with its right to demand

14   arbitration.").

15       **3.      The Philips Defendants' Inconsistent Acts Prejudiced Costco**

16       Costco need only show "a modicum of prejudice" to justify a waiver finding, *Rankin v.*

17   *Allstate Ins. Co.*, 336 F.3d 8, 12 (1st Cir. 2003), and Costco has suffered far more than that here.

18   Prejudice exists where the nonmovant "relied to [its] detriment on [the movant's] failure to move

19   for arbitration of the arbitrable claims."  *Van Ness Townhouses*, 862 F.2d at 759.  In determining

20   prejudice, courts consider, among other things, the delay in moving to compel arbitration and the

21   costs and expenses incurred in litigation.  *Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1012 (9th Cir.

22   2005).

23       Most egregiously, Costco has been prejudiced by having to defend against the Philips

24   Defendants' motion to dismiss.  The motion to dismiss forced Costco to spend significant time

25   and money defending a motion that—because of the Philips Defendants' motion to compel

26   arbitration—Costco should never have had to oppose.  Indeed, Costco was forced to expend

27   considerable resources researching, writing, and filing not one but two oppositions to the motion

28   to dismiss:  one before Special Master Legge and one before this Court.  *Kramer v. Hammond*,

1   943 F.2d 176, 179 (2d Cir. 1991) ("Prejudice . . . can be found when a party too long postpones

2   his invocation of his contractual right to arbitration, and thereby causes his adversary to incur

3   unnecessary delay or expense.).  If Costco is now forced to arbitrate against the Philips

4   Defendants, the prejudice will be particularly acute because the Philips Defendants will no doubt

5   seek to reargue the same point in arbitration, forcing Costco to expend more time and money

6   briefing the issue for a third time.

7        The prejudice to Costco is further confirmed by the Philips' Defendants strategic decision

8   to compel arbitration *in the alternative* to its motion to dismiss.  By their own admission,

9   arbitration remained a back-up plan triggered only if they were first unsuccessful in dismissing

10  Costco's complaint in the MDL.  Philips Mot. at 1 ("The Philips Defendants file this motion to

11  compel arbitration *solely as an alternative* to their motion to dismiss based on the statute of

12  limitations." (emphasis added)).  The Philips Defendants on the one hand wanted this Court to

13  decide its defense on the merits (if the Court agreed with the Philips Defendants' arguments)

14  while simultaneously maintaining the option to argue that this Court is powerless to decide the

15  issue on the merits because the dispute must be settled in arbitration (if the Court disagreed with

16  the Philips Defendants' arguments).  The Court should not reward such gamesmanship.  *See*

17  *Kramer*, 943 F.2d at 179 ("Prejudice can be substantive, such as when a party loses a motion on

18  the merits and then attempts, in effect, to relitigate the issue by invoking arbitration . . . .").

19  Indeed, in *Edwards v. First Am. Corp.*, 289 F.R.D. 296 (C.D. Cal. 2012), the court, facing a

20  similar situation, concluded that the movant had waived its opportunity to arbitrate:

21          This conduct appears to be highly calculated—Defendants would obviously prefer
            that Plaintiff's claims be dismissed on the merits, as any such ruling may be used
22          for the purposes of issue preclusion and precedential effect in subsequent actions.
            Defendants' conduct thus evinced "a conscious decision to continue judicial
23          judgment on the merits." *Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d
            754, 759 (9th Cir.1988).  Only after it appeared to Defendants that this would not
24          be possible did they file the instant motion.  The Court cannot sanction such
            behavior; to do so would only encourage gamesmanship of this type in the future,
25          resulting in further waste of judicial resources.

26

27

28

1  *Id.* at 307; *see also St. Mary's Med. Ctr. of Evansville, Ind., v. Disco Aluminum Prods. Co.*, 969

2  F.2d 585, 589 (7th Cir.1992) ("A party may not normally submit a claim for resolution in one

3  forum and then, when it is disappointed with the result in that forum, seek another forum").

4          The Philips Defendants' attempt to arbitrate only in the event of an unfavorable ruling on

5  the merits is highly calculated forum shopping that has unduly prejudiced Costco.  *See, e.g.*,

6  *Riverside*, 829 F. Supp. 2d at 1020 (confirming that courts take a "dim view of litigants who seek

7  arbitration after an unfavorable result in litigation"); *Gonsalves v. Infosys Techs., Ltd.*, C 3:09-

8  04112, 2010 WL 3118861, at *4 n.3 (N.D. Cal. Aug. 5, 2010) ("While the court need not discuss

9  any other prejudice suffered by Gonsalves, it notes that defendant filed its motion to compel

10  arbitration the day after the court issued an order denying its motion to dismiss plaintiffs claim for

11  breach of contract and its motion to transfer venue.  The court will not permit defendant to use a

12  motion to compel arbitration as a means of 'forum shopping.' . . .  Nor will the court allow

13  Infosys to seek a redetermination from an arbitrator of issues on which Infosys failed to prevail

14  before this court (such as seeking to dismiss Gonsalves' breach of contract claims for failure to

15  state a claim)."); *ConWest Res., Inc. v. Playtime Novelties, Inc.*, C 06-5304SBA, 2007 WL

16  1288349, at *5 (N.D. Cal. May 1, 2007) ("Such use of arbitration as a method of forum shopping

17  would be prejudicial to Playtime."); *Jones Motor Co. v. Chauffeurs, Teamsters & Helpers Local

18  Union*, 671 F.2d 38, 43 (1st Cir. 1982) ("[T]o require that parties go to arbitration despite their

19  having advanced so far in court proceedings before seeking arbitration would often be unfair, for

20  it would effectively allow a party sensing an adverse court decision a second chance in another

21  forum.").

22          Moreover, the Philips Defendants have prejudiced Costco in terms of money, time, and

23  legal positions, particularly in the form of discovery.  *See, e.g.*, *Johnson Associates Corp. v. HL

24  Operating Corp.*, 680 F.3d 713, 720 (6th Cir. 2012) ("Prejudice can also be found where a party

25  has gained a strategic advantage by obtaining something in discovery that would be unavailable

26  in arbitration.").  The Philips Defendants' forty-five discovery requests—and their ability to gain

27  information on Costco's case as part of the joint defense group—forced Costco's lawyers to

28  spend dozens of hours and thousands of dollars reviewing the document requests, communicating

1    with Costco's employees, preparing responses and objections to the requests, and engaging in

2    numerous meet-and-confers with counsel for the Philips Defendants.  *See* Weiss Decl. ¶¶ 2–9.

3    Costco also has, for example, now twice produced its transactional data to the Philips Defendants,

4    altered its discovery review at the Philips Defendants' request to look for particular documents to

5    the exclusion of others, answered additional questions posed by the Philips Defendants about the

6    details of Costco's transactional information, and made available for deposition one of Costco's

7    primary witnesses.  *Id.* ¶ 9.  Indeed, given its informal procedures and limited opportunities for

8    discovery, this type of wide-ranging discovery would have been unavailable in arbitration.

9    Moxley, *supra* at 38–39 (explaining that arbitration discovery is significantly more limited than

10    discovery in litigation and depositions in arbitration are exceedingly rare); *Doctor's Assocs., Inc.*

11    *v. Distajo*, 107 F.3d 126, 131 (2d Cir. 1997) ("The 'prejudice' that supports a finding of waiver

12    can be 'substantive' prejudice to the legal position of the party opposing arbitration, such as when

13    the party seeking arbitration . . . obtains information through discovery procedures not available

14    in arbitration." (citation omitted)).

15          Furthermore, the Philips Defendants' litigation actions vitiated the heart of the arbitration

16    agreement at issue.  The essence of the provision is limiting time and expense, and it specifies

17    that both parties must produce all relevant documents within 60 days of a demand for arbitration,

18    that the hearing may not exceed two days, and that the arbitrator must rule within 120 days of the

19    demand.  Koons Decl. Exs. B–E.  Although these procedures impose particular limitations on an

20    antitrust case of this size, the Philips Defendants' motion necessarily invokes them.  *See* 9 U.S.C.

21    § 4 (commanding that an aggrieved party may petition "for an order directing that such arbitration

22    proceed in the manner provided for in such agreement").  But the Philips Defendants' delay has

23    eliminated those intended benefits, at least to Costco.  The Philips Defendants cannot spend

24    nearly two years plotting out their case and then, once they are ready, turn around and demand an

25    immediate chance to try their case in a limited time frame and forum.

26          Indeed, the Philips Defendants waited nearly 18 months after Costco filed its complaint to

27    move to compel arbitration, a delay many courts have deemed inconsistent with an arbitration

28    demand.  *See, e.g.*, *Doctor's Associates*, 107 F.3d at 131 ("Additionally, we have held that a party

Costco's Opposition to the Philips Defendants'
Motion to Compel Arbitration      16      Case No. 07-5944-SC
MDL No. 1917

1   may be prejudiced by the unnecessary delay or expense that results when an opponent delays

2   invocation of its contractual right to arbitrate." (internal quotation marks omitted)); *Leadertex,*

3   *Inc. v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20, 26 (2d Cir. 1995) (waiver at seven

4   months); *S&H Contractors, Inc. v. A.J. Taft Coal Co.*, 906 F.2d 1507, 1514 (11th Cir. 1990)

5   (waiver at eight months); *Miller Brewing Co. v. Fort Worth Distrib. Co.*, 781 F.2d 494, 497 (5th

6   Cir. 1986) (waiver at less than eight months); *AT&T Corp. v. Innocom Telecom LLC*, 2007 WL

7   163193, at *3 (N.D. Cal. Jan. 17, 2007) (waiver at six months).  The prejudice is particularly

8   severe here where the delay since Costco filed its complaint is four times the length of the entire

9   period the arbitration agreement contemplates for resolution.  *See, e.g.*, *Gray Holdco, Inc. v.*

10  *Cassady*, 654 F.3d 444, 451 (3d Cir. 2011) (holding that arbitration waiver will be found "where

11  the demand for arbitration came long after the suit commenced and when both parties had

12  engaged in extensive discovery" (quoting *PaineWebber Inc. v. Faragalli*, 61 F.3d 1063, 1068–69

13  (3d Cir.1995)).

14         In addition, because the Philips Defendants repeatedly indicated that they intended to

15  defend Costco's claims in court rather than arbitration—for example, by taking discovery,

16  moving to dismiss, and stipulating to a trial schedule with Costco—Costco reasonably relied on

17  those indications and began preparing its case based on the MDL timeline.  Costco has therefore

18  agreed to share tasks, costs, and work product with other direct action plaintiffs, has invested

19  hundreds of hours and hundreds of thousands of dollars in those efforts, and has agreed to

20  deadlines based on the schedule in the MDL.  Burman Decl. ¶¶ 4–6.  If Costco is instead forced to

21  proceed in arbitration, with its rapid deadlines and limited opportunities to present evidence,

22  Costco will lose the benefit of much of that work and incur substantial additional expense.  *Id.*

23  ¶ 6.  Costco thus "relied to [its] detriment on [the Philips Defendants'] failure to move for

24  arbitration of the arbitrable claims," *Van Ness*, 862 F.2d at 759, and the legal and financial harms

25  Costco has suffered are plainly sufficient to demonstrate prejudice.  *See, e.g.*, *Menorah Ins. Co. v.*

26  *INX Reinsurance Corp.*, 72 F.3d 218, 222 (1st Cir. 1995) (finding "that Menorah incurred

27  expenses as a direct result of INX's dilatory behavior and that that was prejudice enough" to find

28  waiver); *Kramer*, 943 F.2d at 179 ("Prejudice can be substantive, such as . . . when a party too

1    long postpones his invocation of his contractual right to arbitration, and thereby causes his

2    adversary to incur unnecessary delay or expense."); *Lyzwa*, 1998 WL 326768, at \*4 (finding

3    prejudice where "[p]laintiff's attorney . . . has spent hundreds of hours litigating this case and

4    plaintiff has expended tens of thousands of dollars in litigation expenses").

5    **B.      Costco Cannot Be Forced to Arbitrate with the Philips Defendants as to Purchases

6             from Others**

7            Even if the Court concludes that the Philips Defendants have not waived their opportunity

8    to compel arbitration, Costco still cannot be forced to arbitrate with the Philips Defendants its

9    claims based on purchases from other conspirators.  That is, Costco's claims against the Philips

10   Defendants based on co-conspirator or joint and several liability are not subject to arbitration.

11   Indeed, this Court already concluded that such claims are excluded when it denied in part

12   Toshiba's motion to compel arbitration against Costco under the same vendor agreement:

13           There is no basis for compelling arbitration for Plaintiff's claims based on the
             Toshiba Defendants' alleged dealings with other defendants, even if the Toshiba
14           Defendants as a corporate family may compel arbitration based on the Vendor
             Agreement with TACP.  Plaintiff did not agree to arbitrate those claims not related
15           to its direct or indirect purchases from the Toshiba Defendants.  *See United
             Steelworkers*, 363 U.S. at 382.  The Special Master was correct in refusing to
16           render those claims subject to arbitration under the Vendor Agreement.

17

18   Dkt. No. 1543 at 5 (Order Adopting Special Master's Report and Recommendation regarding

19   Toshiba Defendants' Motion to Compel Arbitration); *see also* Dkt. No. 1433 at 3 (Report and

20   Recommendation) ("The Special Master agrees with Costco that, to the extent that its complaint

21   raises a claim against the Toshiba Defendants based strictly on co-conspirator or joint and several

22   liability, such a claim is not subject to arbitration.").  That conclusion was consistent with Judge

23   Illston's arbitration rulings in the LCD MDL.  *In re TFT-LCD*, M 07-1827 SI, Dkt. No. 6622 at

24   1–2 (N.D. Cal Sept. 5, 2012) (holding that despite presence of  enforceable arbitration clause

25   between AUO and Nokia, Nokia could "proceed with its claims against AUO for joint and several

26   liability"); *In re TFT-LCD*, M 07-1827 SI, Dkt. No. 4526 at 2 (N.D. Cal. Jan. 10, 2012) ("Jaco's

27   claims are arbitrable to the extent they are based upon purchases it made directly from NEC; to

28

1    the extent Jaco's claims against NEC are based on coconspirator liability for purchases Jaco made

2    from other defendants, such claims are not subject to arbitration."); *In re TFT-LCD*, M 07-1827

3    SI, 2011 WL 3353867, at *3 (N.D. Cal. Aug. 3, 2011) (sending Dell's claims against AU

4    Optronics to arbitration "[t]o the extent Dell's claims are based upon purchases made under the"

5    contract containing the arbitration clause).

6         That result necessarily applies here:  Costco's purchases from non–Philips Defendants are

7    outside the scope of any potential arbitration with the Philips Defendants, and Costco's claims

8    against the Philips Defendants based on co-conspirator or joint and several liability must remain

9    in the MDL.

10   **C.      Dismissal Is Unwarranted**

11        Because the Philips Defendants have waived any right they may have had to compel

12   arbitration, dismissal of Costco's claims against the Philips Defendants is unwarranted.

13   Alternatively, because this Court has already concluded Costco's purchases based on co-

14   conspirator and joint and several liability are outside the scope of any potential arbitration,

15   dismissal of those claims would similarly be inappropriate.  *See Moses H. Cone Mem'l Hosp. v.*

16   *Mercury Constr. Corp.*, 460 U.S. 1, 20 (1983) ("[F]ederal law requires piecemeal resolution when

17   necessary to give effect to an arbitration agreement.").  When the Court denied in part the

18   Toshiba Defendants' motion to compel arbitration, it likewise declined to dismiss from Costco's

19   case those claims remaining in the MDL.  Dkt. No. 1543 at 10.  That outcome should be the same

20   here.

21                           **IV.      CONCLUSION**

22        For the foregoing reasons, the Court should deny the Philips Defendants' motion to

23   compel arbitration.

24

25

26

27

28

1

2
DATED:  October 21, 2013

s/ David J. Burman
3
David J. Burman (admitted *pro hac vice*)
Cori G. Moore (admitted *pro hac vice*)
Eric J. Weiss (admitted *pro hac vice*)
4
Nicholas H. Hesterberg (admitted *pro hac vice*)
Steven D. Merriman (admitted *pro hac vice*)
5
**PERKINS COIE LLP**
1201 Third Avenue, Suite 4900
6
Seattle, WA 98101-3099
Telephone:  206.359.8000
7
Facsimile:  206.359.9000

8
Joren Bass, Bar No. 208143
JBass@perkinscoie.com
9
**PERKINS COIE LLP**
Four Embarcadero Center, Suite 2400
10
San Francisco, CA 94111-4131
Telephone:  415.344.7120
11
Facsimile:  415.344.7320

12
Attorneys for Plaintiff
Costco Wholesale Corporation
13

29040-0318/LEGAL28103466
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Costco's Opposition to the Philips Defendants'
Motion to Compel Arbitration                    20

Case No. 07-5944-SC
MDL No. 1917