# EXHIBIT 7

```
 1                UNITED STATES DISTRICT COURT

 2               NORTHERN DISTRICT OF CALIFORNIA

 3                  (SAN FRANCISCO DIVISION)

 4
     IN RE:  CATHODE RAY TUBE (CRT)  )   Case No. 07-5944 SC
 5   ANTITRUST LITIGATION,           )   MDL NO. 1917
                                     )
 6   This Document Relates to:       )
                                     )
 7   ALL ACTIONS                     )
                                     )
 8

 9

10        The Videotaped Deposition of DANIEL SCHUH,

11        Taken at 2550 Telegraph Road,

12        Bloomfield Hills, Michigan,

13        Commencing at 9:05 a.m.,

14        Friday, August 23, 2013,

15        Before Leisa M. Pastor, CSR-3500, RPR, CRR.
```

1

```
 1              Do you know if the price of LCD computer
 2        monitors crossed paths with the price of CRT monitors
 3        at a different time than the price of LCD televisions
 4        crossed paths with the price of CRT televisions?
 5              MR. TIETJEN:  Objection to the form.
 6   A.   Not that I recall.
 7   BY MR. FOSTER:
 8   Q.   Okay.
 9              MR. GRALEWSKI:  Join.
10   BY MR. FOSTER:
11   Q.   Did you -- in preparing for today's deposition, is the
12        sort of history of when ABC Warehouse began and
13        stopped selling CRT finished products one of the
14        topics that you looked at?
15              MR. TIETJEN:  Okay, I think that calls for
16        attorney-client privilege.  I'll represent that we --
17        you know, we prepared for the topics that were -- that
18        were negotiated based on your -- your deposition
19        notice, but I'll instruct the witness not to answer
20        questions about what we specifically discussed.
21              MR. FOSTER:  Okay.
22   BY MR. FOSTER:
23   Q.   Other than anything that you talked about with your
24        counsel, can you answer my question?  If you -- if you
25        remember it.
```

21

```
 1        know -- strike that.
 2                How would the buyer know if one of his
 3        competitors, one of ABC Warehouse's competitors was
 4        selling a like product at a lower price?
 5                MR. TIETJEN:  Objection to form.
 6   A.   Perhaps by the weekly newspapers.
 7   BY MR. FOSTER:
 8   Q.   Okay.
 9   A.   Television commercials.
10   Q.   Okay.
11   A.   Radio spots, visiting a competitive retailer and
12        seeing it at a lower price could all be factors that
13        could play into that.
14   Q.   Okay.  And would the buyer be responsible for
15        monitoring all of those different information sources
16        to try to find out whether the competitor -- if ABC
17        Warehouse's competitor was, you know, what their
18        prices were?
19                MR. TIETJEN:  Objection to the form.
20                MR. GRALEWSKI:  Join.
21   A.   Ultimately, the buyer's responsibility to make sure
22        the product is priced correctly.
23   BY MR. FOSTER:
24   Q.   Would you say that the -- because you list -- you
25        listed -- strike that.
```

33

```
 1   A.   You want to read them all back to me then?
 2             MR. GRALEWSKI:  Join.
 3   BY MR. FOSTER:
 4   Q.   So the ones you listed that I wrote down and -- are
 5        competition in the market relative to other retailers,
 6        relative to other manufacturers, the time of year,
 7        inventory, and products moving too slowly.
 8   A.   Possibly products moving too slowly.
 9   Q.   That might be more important than other factors?
10   A.   It would be.
11   Q.   Okay.  And why is that?
12   A.   Because the products are moving too slowly.
13   Q.   Why would that be an important factor in setting the
14        starting price of -- of the CRT finished products?
15             MR. TIETJEN:  Objection to the form.
16             MR. GRALEWSKI:  Join.
17   A.   Because our goal is to sell products, and if we're not
18        selling them, that's a problem.
19   BY MR. FOSTER:
20   Q.   Okay.  When you say products moving -- let me just --
21        if I understand, when you say products moving too
22        slowly, would that be other products, not the product
23        that you're trying to price at the time with the
24        starting price?
25   A.   Could be --
```

35

```
 1        price for the CRT finished products but that often was
 2        not the end price that was sold that -- that was paid
 3        by the consumer, correct?
 4   A.   That's possible.
 5             MR. GRALEWSKI:  Object to form, misstates
 6        testimony, lacks foundation.
 7   BY MR. TIETJEN:
 8   Q.   So who would have input in deciding the price that the
 9        consumer paid for the CRT finished products?
10             MR. TIETJEN:  Object to the form.
11   A.   The salesperson dealing with the consumer --
12   BY MR. FOSTER:
13   Q.   Okay.
14   A.   -- at the time of sale.
15   Q.   Okay.  And would anybody else -- would there be
16        anybody else?
17   A.   Perhaps if you got a sales manager involved.
18   Q.   Okay.  Anybody else?
19   A.   Not that I can think of at this time.
20   Q.   Okay.  So the salesperson would have some leeway in
21        the price of the CRT finished products, right?
22             MR. TIETJEN:  Objection to the form.
23   A.   Correct.
24   BY MR. FOSTER:
25   Q.   Okay.
```

DANIEL SCHUH, 30(b)(6)

BARKLEY
Court Reporters

```
 1                MR. GRALEWSKI:  Join, lacks foundation,
 2       vague and ambiguous.
 3  BY MR. FOSTER:
 4  Q.   And then he would have to -- sometimes he might have
 5       to escalate it to his manager in order to continue
 6       negotiations with the customer on the price; is that
 7       fair?
 8  A.   That's possible, yes.
 9  Q.   Okay.
10                MR. GRALEWSKI:  Object to form, lacks
11       foundation, misstates testimony, assumes facts.
12  BY MR. FOSTER:
13  Q.   Would the sales manager -- would there be occasions
14       where the sales manager would have to escalate it to
15       someone above him?
16                MR. TIETJEN:  Objection to the form.
17  BY MR. FOSTER:
18  Q.   Okay.
19  A.   It's possible.
20  Q.   Okay, and who would that be?
21  A.   He could possibly escalate it to a number of people
22       within the organization.
23  Q.   Okay.  Can you give me some -- can you tell me who
24       that might be?
25  A.   Perhaps take it to the regional manager.
```

57

DANIEL SCHUH, 30(b)(6)

BARKLEY
Court Reporters

```
 1  BY MR. FOSTER:
 2  Q.   Is that -- is that right?
 3  A.   I could run every sale of that television and see what
 4       each TV sold for.
 5  Q.   But you wouldn't tell me -- you could tell -- you
 6       could -- okay.  But if I -- if I bought one of the
 7       televisions, right --
 8  A.   Yep.
 9  Q.   -- you couldn't tell me which one I bought?
10  A.   By serial number?
11  Q.   Right.
12  A.   I just said we don't track serial numbers.
13  Q.   Right, right, okay.  So my -- so my question is if I
14       have a -- if I -- hold on.  If I -- you purchased a
15       thousand CRT televisions at a certain price from a
16       manufacturer, and those televisions were sold to
17       customers at different prices because of either the --
18       the manufacturer had a price move or the -- the
19       salespeople negotiated different prices on the floor,
20       it's impossible to tie a specific television back to
21       the purchase from the manufacturer because you don't
22       track model numbers; is that -- is that fair?
23              MR. TIETJEN:  Objection to the form, I just
24       want to --
25              MR. FOSTER:  Uh-huh.
```

```
1              MR. TIETJEN:  -- are you talking about
2    specific model numbers, or are being able to track the
3    units.  In other words, you sold a thousand, and you
4    can account for each of the thousand.
5              MR. FOSTER:  I'm talking about the specific
6    unit.
7              THE WITNESS:  The specific television?
8              MR. GRALEWSKI:  Object to the form,
9    argumentative, vague and ambiguous, compound,
10   misstates testimony.
11  BY MR. FOSTER:
12  Q.   Can you answer my question?
13  A.   Again, are you asking can we track by serial number?
14  Q.   Well, I'm -- both -- I'm asking whether you can track
15       that television.  I don't know whether that -- by
16       serial number would be the only way.  I mean your
17       answer implies that I know how to do it and whether a
18       serial number is the only way to do it.  If -- if
19       the -- are you suggesting that that's the only way to
20       do it?
21  A.   I can --
22             MR. GRALEWSKI:  Object to the form, vague
23   and ambiguous, compound, argumentative, misstates
24   testimony.
25  BY MR. FOSTER:
```

141

```
 1                MR. TIETJEN:  Objection to the form.
 2                MR. GRALEWSKI:  Join, vague and ambiguous,
 3        lacks foundation, calls for speculation.
 4   A.   I felt we had a -- we had a fair negotiating stance
 5        with our vendors.
 6   BY MR. FOSTER:
 7   Q.   Okay.  Did you think that you had more negotiating
 8        leverage than other -- some -- than your competitors
 9        because of the volume that you did?
10                MR. TIETJEN:  Objection to the form.
11                MR. GRALEWSKI:  Same objections.
12   A.   No, I would think less.
13   BY MR. FOSTER:
14   Q.   Less?
15   A.   Less.
16   Q.   Less than who?
17   A.   Most -- most of our competitors are competitors on a
18        national level.
19   Q.   Mm-hmm.
20   A.   Much bigger than ABC.
21   Q.   Okay.  I'm done with that document, thank you, sir.
22                You mentioned earlier that there were gross
23        margin targets that you tried to hit as a buyer.
24                MR. TIETJEN:  Objection to the --
25   BY MR. FOSTER:
```

```
 1        would have to be careful there because it's really one
 2        and the same.
 3   Q.   Okay.
 4   A.   If I'm asking for it for a hundred dollars and it
 5        sells for $149, you know, the margin is going to be
 6        what it is.
 7   Q.   I see, I see.  So they know what the margin is, they
 8        just don't know the margin that you're trying to get
 9        to; is that fair?
10                  MR. TIETJEN:  Objection.
11   A.   Generally speaking, yeah.
12   BY MR. FOSTER:
13   Q.   Okay.  And you wouldn't say, you know, in your
14        negotiations, it wouldn't be hey, let's -- can we bump
15        this up or drop this down, or whatever, so I can hit
16        this margin, this margin's important to me?
17   A.   I don't recall any specifics like that.
18   Q.   Okay.  But could that have happen happened?
19   A.   It could have.
20                  MR. TIETJEN:  Object to the form.
21                  MR. GRALEWSKI:  Object to the form of the
22        question, misstates testimony, lacks foundation, calls
23        for speculation for this question and the prior two.
24                  MR. TIETJEN:  Well, let me just caution the
25        witness to slow down --
```

231

DANIEL SCHUH, 30(b)(6)

BARKLEY
Court Reporters