Christopher M. Curran (*pro hac vice*)
ccurran@whitecase.com
Lucius B. Lau (*pro hac vice*)
alau@whitecase.com
Dana E. Foster (*pro hac vice*)
defoster@whitecase.com
White & Case LLP
701 Thirteenth Street, N.W.
Washington, DC 20005
Telephone: (202) 626-3600
Facsimile: (202) 639-9355

*Counsel to Defendants Toshiba Corporation, Toshiba America, Inc., Toshiba America Consumer Products, LLC, Toshiba America Information Systems, Inc., and Toshiba America Electronic Components, Inc.*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
(SAN FRANCISCO DIVISION)

IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION

Case No. 07-5944 SC
MDL No. 1917

This Document Relates to
Case No. 12-cv-02649-SC

SCHULTZE AGENCY SERVICES, LLC, on behalf of TWEETER OPCO, LLC and TWEETER NEWCO, LLC,

Plaintiffs,

v.

HITACHI, LTD., *et al.*,

Defendants.

**THE TOSHIBA DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS SCHULTZE AGENCY SERVICES, LLC'S FIRST AMENDED COMPLAINT**

**ORAL ARGUMENT REQUESTED**

Date: December 20, 2013
Time: 10:00 a.m.
Before: Hon. Samuel Conti

**TABLE OF CONTENTS**

Page

NOTICE OF MOTION AND MOTION ..... 1

MEMORANDUM OF POINTS AND AUTHORITIES ..... 2

I. STATEMENT OF THE ISSUES ..... 2

II. INTRODUCTION ..... 2

III. FACTUAL BACKGROUND ..... 3

IV. ARGUMENT ..... 4

A. The First Claim Of Tweeter's Complaint Should Be Dismissed With Respect To The Toshiba Defendants Because Tweeter Has Failed To Allege Facts Sufficient To Confer Standing Under The "Ownership Or Control" Exception To *Illinois Brick* ..... 4

1. Tweeter Is An Indirect Purchaser And Must Plead Facts To Support Standing Under A Recognized Exception To *Illinois Brick* ..... 4

2. Tweeter Has Failed To Establish Standing Under The Ownership Or Control Exception To *Illinois Brick* ..... 6

a. Tweeter's Allegations Of Conspiracy By "Group Pleading" Fail To Adequately Establish Standing ..... 7

b. Tweeter Also Fails To Sufficiently Plead Facts To Confer Standing On Its CRT Product Purchases From OEMs And "Other Suppliers" ..... 8

B. The Second Claim Of Tweeter's Complaint Should Also Be Dismissed With Respect To The Toshiba Defendants Because The Massachusetts Consumer Protection Act Does Not Permit Indirect Purchaser Suits By Plaintiffs Engaged In Trade Or Commerce. ..... 10

CONCLUSION ..... 14

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

THE TOSHIBA DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS SCHULTZE AGENCY SERVICES LLC'S FIRST AMENDED COMPLAINT
Case No. 07-5944 SC
MDL No. 1917

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

# TABLE OF AUTHORITIES

Cases | Page

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................4

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) .................... 4-5

*Ciardi v. Hoffmann-LaRoche, Ltd.*,
762 N.E. 2d 303 (Mass. 2002)....................11, 13

*Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*,
602 F.3d 237 (3rd Cir. 2010)....................5

*Illinois Brick Co. v. Illinois*,
431 U.S. 720 (1977)....................2, 5

*In re: ATM Fee Antitrust Litig.*,
686 F.3d 741 (9th Cir. 2012) ....................5, 6, 7, 8

*In re: Auto. Parts Antitrust Litig.*,
No. 12-md-02311, 2013 WL 2456612 .................... 12-13

*In re: TFT-LCD (Flat Panel) Antitrust Litig.*,
Nos. 3:07-md-01827, 3:12-cv-03802, 2013 WL 1164897 (N.D. Cal. Mar. 20, 2013) ....................7, 9, 10

*In re: TFT-LCD (Flat Panel) Antitrust Litig.*,
267 F.R.D. 291 (N.D. Cal. 2010)....................7, 8

*In re: Mercedes-Benz Anti-Trust Litig.*,
157 F. Supp. 2d 355 (D.N.J. 2001)....................9

*Kendall v. Visa U.S.A., Inc.*,
518 F.3d 1042 (9th Cir. 2008) ....................5, 8

*O'Connell v. Microsoft Corp.*,
Nos. 00-01743 & 00-02456, 2001 WL 893525 (Mass. Super. Ct. June 14, 2001).................... 10-11

*Sheet Metal Works Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC*, 737 F. Supp. 2d 380 (E.D. Pa. 2010) .......... 13

*Sun Microsystems, Inc. v. Hynix Semiconductor, Inc.*, 608 F. Supp. 2d 1166 (N.D. Cal. 2009) .......... 9

**Statutes**

Mass. Gen. Laws ch. 93 (Antitrust Act) .......... 11

Mass. Gen. Laws ch. 93A (Consumer Protection Act) .......... 11, 12

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on December 20, 2013, at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 1, 17th Floor, 450 Golden Gate Avenue, San Francisco, California, before the Honorable Samuel Conti, Toshiba Corporation ("Toshiba Corp."), Toshiba America, Inc. ("TAI"), Toshiba America Consumer Products, LLC ("TACP"), Toshiba America Information Systems, Inc. ("TAIS"), and Toshiba America Electronic Components, Inc. ("TAEC") (collectively, the "Toshiba Defendants") will and hereby do move the Court for an order dismissing the First Amended Complaint of Schultze Agency Services, LLC on behalf of Tweeter Opco, LLC and Tweeter Newco, LLC (collectively, the "Plaintiffs" or "Tweeter") ("FAC") against the Toshiba Defendants under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Tweeter's claims for damages for its alleged direct purchases of products that contain CRTs ("CRT Products") must be dismissed with respect to the Toshiba Defendants because Tweeter has failed to allege facts sufficient to support standing for its federal and state law claims under one of the recognized exceptions to *Illinois Brick*'s bar on indirect purchaser actions. Tweeter's state law claims under Massachusetts General Laws Chapter 93A, Section 9 must also be dismissed for lack of standing because that provision does not confer standing on plaintiffs engaged in trade or business.

This motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities, the complete files and records in this action, oral argument of counsel, and such other and further matters as this Court may consider.

THE TOSHIBA DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
SCHULTZE AGENCY SERVICES, LLC'S FIRST AMEDNED COMPLAINT
Case No. 07-5944 SC
MDL No. 1917

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. STATEMENT OF THE ISSUES

1. Whether the Court should dismiss the First Claim of Tweeter's First Amended Complaint with respect to the Toshiba Defendants because Tweeter has failed to adequately allege facts to support standing under the "ownership or control" exception to *Illinois Brick* for its federal claims for damages based on purchases of CRT Products.

2. Whether the Court should dismiss the Second Claim of Tweeter's First Amended Complaint with respect to the Toshiba Defendants because Tweeter lacks standing to assert its state law claims under the Massachusetts Consumer Protection Act because that statute does not provide a cause of action for indirect purchaser plaintiffs who are engaged in trade or commerce.

## II. INTRODUCTION

The First Claim of Tweeter's First Amended Complaint should be dismissed with respect to the Toshiba Defendants because Tweeter has failed to adequately allege facts to support standing under the "ownership or control" exception to *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977). Tweeter has alleged a conspiracy to fix prices of CRTs, a product that Tweeter never directly purchased. To recover damages under the federal antitrust laws, Tweeter, as a purchaser of CRT Products — and, therefore, an *indirect* purchaser of the allegedly price-fixed product — must allege facts sufficient to support standing under one of the recognized exceptions to *Illinois Brick*'s bar on indirect purchaser actions. As a result of this Court's order the only exception potentially available to Tweeter is the "ownership or control" exception. Tweeter has failed to adequately plead facts to support standing under this exception for both groups of purchases for which it seeks damages: (1) those Tweeter allegedly purchased directly from unspecified defendants and/or co-conspirators; and (2) those Tweeter allegedly purchased from OEMs and other suppliers, who allegedly purchased CRTs from unspecified defendants and co-conspirators. For both of these groups of purchases, Tweeter has failed to identify *any* entity from which it actually purchased CRT Products. Tweeter thus fails to describe any relationship that would be the basis for

satisfying the ownership or control exception to *Illinois Brick*. As to the Toshiba Defendants, Tweeter makes no allegations whatsoever that it purchased any CRT Products directly from any Toshiba Defendant or that any Toshiba Defendant manufactured the CRTs that were allegedly incorporated into the CRT Products purchased by Tweeter. As to purchases of monitors from OEMs and other suppliers, Tweeter makes no allegations that Tweeter owned or controlled these entities. Tweeter also makes no allegations that the Toshiba Defendants owned or controlled these entities. Thus, there is no basis to support Tweeter's contentions that it has standing under federal law to pursue damages against the Toshiba Defendants based on either category of purchases. Tweeter's purported federal claim for damages based on the purchase of CRT Products must therefore be dismissed.

The Second Claim of Tweeter's First Amended Complaint should also be dismissed with respect to the Toshiba Defendants because Tweeter lacks standing to bring its state law claims under the Massachusetts Consumer Protection Act. Massachusetts does not have a statute repealing the *Illinois Brick* rule against indirect purchaser standing. The Massachusetts Consumer Protection Act incorporates the *Illinois Brick* rule for plaintiffs, like Tweeter, that are engaged in trade or commerce. Massachusetts courts have ***only*** permitted indirect purchaser suits brought under a ***different*** statutory provision that is not available to Tweeter. Accordingly, Tweeter lacks standing as an indirect purchaser under Massachusetts law. Tweeter's purported state law claim for damages based on the purchase of CRT Products must therefore be dismissed as well.

## III. FACTUAL BACKGROUND

Tweeter has named five Toshiba Entities as Defendants: Toshiba Corporation, Toshiba America, Inc., Toshiba America Consumer Products, L.L.C., Toshiba America Electronic Components, Inc., and Toshiba America Information Systems, Inc. FAC ¶ 58-63. Tweeter alleges that Toshiba Corp., TAI, TACP, TAEC, and TAIS "manufactured, marketed, sold, and/or distributed CRT Products, either directly or through its subsidiaries or affiliates, throughout the United States." FAC ¶ 58-62. Tweeter does not, however, allege that it purchased any CRT Products from any Toshiba Defendant. The conspiracy as alleged in the

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

First Amended Complaint concerns allegations of price-fixing of CRTs. Tweeter, however, purchased CRT Products that incorporated allegedly price-fixed CRTs "directly from the Defendants, and/or the Defendants' subsidiaries and affiliates, and/or any agents the Defendants or Defendants' subsidiaries and affiliates controlled." FAC ¶ 21. Tweeter also purchased CRT products from original equipment manufacturers ("OEMs"), as well as other suppliers, which contained CRT "panels" that had been purchased from Defendants and their co-conspirators. *Id*. Tweeter does not identify from whom it directly purchased the CRT Products. Tweeter similarly does not identify the OEMs and "other suppliers." Most critically, Tweeter does not allege that it owned or controlled the OEMs and other suppliers from whom it purchased CRT products. Nor does Tweeter allege that the Toshiba Defendants owned or controlled the OEMs and other suppliers from whom it purchased CRT Products.

## IV. ARGUMENT

### A. The First Claim Of Tweeter's Complaint Should Be Dismissed With Respect To The Toshiba Defendants Because Tweeter Has Failed To Allege Facts Sufficient To Confer Standing Under The "Ownership Or Control" Exception To *Illinois Brick*

The First Claim of Tweeter's First Amended Complaint, which asserts a violation of Section 1 of the Sherman Act based on Tweeter's alleged purchases of CRT Products, should be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure because Tweeter has failed to plead facts sufficient to establish standing under *Illinois Brick*.

#### 1. Tweeter Is An Indirect Purchaser And Must Plead Facts To Support Standing Under A Recognized Exception To *Illinois Brick*

It is Tweeter's burden to plead facts that establish that it is entitled to the damages it seeks. *See* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'") (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

(2007)); *see also In re: CRT Antitrust Litig.*, No. 07-5944, slip op. at 6 (N.D. Cal. Sept. 26, 2013) (order granting motion to dismiss) ("[T]he Court cannot see why Plaintiffs did not plead anything beyond threadbare allegations and legal conclusions. The Court recognizes the difficulty of pleading certain facts in complex, global antitrust cases, but the Court does not find that meeting the pleading standards of Rules 8 and 9(b) is insurmountable. . . .").

Tweeter has asserted indirect purchaser claims against the Toshiba Defendants and seeks damages based upon its alleged purchase of CRT Products. FAC ¶¶ 9, 11, 21, 235. Tweeter does not allege that it purchased the allegedly price-fixed product itself (*i.e.*, CRTs). *See* FAC ¶ 9, 11, 21, 207, 208. Tweeter has asserted claims against the Toshiba Defendants seeking to recover damages for its alleged purchase of CRT Products from unspecified Defendants and co-conspirators, in addition to its indirect purchase of "CRT Products from original equipment manufacturers ('OEMs'), as well as other suppliers, which contained CRT panels that had been purchased from Defendants and their co-conspirators." FAC ¶ 21.

As an indirect purchaser, Tweeter does not have federal antitrust standing to seek damages for its purchases of CRT Products. *Illinois Brick*, 431 U.S. at 735; *see also In re: ATM Fee Antitrust Litig.*, 686 F.3d 741, 750, 758 (9th Cir. 2012) (holding that indirect purchasers lack standing under the Sherman Act where they "never directly paid" the allegedly price-fixed fee). In order for Tweeter to overcome *Illinois Brick*'s preclusion of indirect claims, Tweeter must plead facts in its complaint to establish that it has standing under an exception to *Illinois Brick*. *See Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1049-50, 1052 (9th Cir. 2008) (affirming district court dismissal of Section 1 claims where plaintiffs failed to plead sufficient facts to qualify for an *Illinois Brick* exception); *see also Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 259 (3rd Cir. 2010) ("[T]o state a viable claim against the Dealers, the Plaintiffs must come within the coconspirator exception – or some other exception – to *Illinois Brick*."). Tweeter has failed to do so.

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

**2. Tweeter Has Failed To Establish Standing Under The Ownership Or Control Exception To *Illinois Brick***

Tweeter is barred from bringing claims for damages under Section 1 of the Sherman Act because it cannot satisfy any of the exceptions *to Illinois Brick* that are recognized in the Ninth Circuit. There are only three recognized exceptions: (1) when the plaintiff purchased under "a preexisting cost-plus contract with the direct purchaser"; (2) the "'co-conspirator' exception"; and (3) "when customers of the direct purchaser own or control the direct purchaser or when a conspiring seller owns or controls the direct purchaser." *ATM Fee*, 686 F.3d at 749 (citations omitted). Based on a previous order by this Court, Tweeter is precluded from claiming standing under the first two exceptions. On August 21, 2013, the Court issued an Order granting the Defendants' (including the Toshiba Entities') motion to dismiss to the extent they challenged certain Direct Action Plaintiffs' alleged right to proceed under the "cost-plus" and "co-conspirator" exceptions to *Illinois Brick*. Order Adopting in Part and Modifying in Part Special Master's Report and Recommendation on Defendants' Motion to Dismiss The Direct Action Plaintiffs' Complaints at 35, *In re: CRT Antitrust Litig.*, No. 07-5944 (N.D. Cal. Aug. 21, 2013), ECF No. 1856 ("Aug. 21, 2013 Order") (order granting, in part, motion to dismiss) ("Defendants' motion to dismiss the DAPs' Complaints is granted to the extent that it challenges the DAPs' alleged right to proceed under the 'cost-plus' and 'co-conspirator' exceptions to *Illinois Brick*.").[1] Therefore, Tweeter can only assert the "ownership or control" exception in order to confer standing on its purchases of CRT Products.

In *ATM Fee*, the Ninth Circuit held that the "ownership or control" exception is available only where the initial seller of the price-fixed good owns or controls the direct purchaser. 686 F.3d at 756 ("*Freeman* outlines that, whether a realistic possibility of suit exists, depends on the existence of ownership or control between the direct purchaser and the

---

[1] In this order, the Court denied the Defendants' motion to dismiss concerning the "ownership or control" exception, but specifically stated that "[t]he Court also makes no ruling on the adequacy of the DAPs' allegations of ownership and control." August 21, 2013 Order at 5. Thus, the question of whether Tweeter has made appropriate allegations of ownership or control is properly before the Court.

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

seller."); *id*. at 757 ("We decline to extend the exception noted in *Royal Printing* and *Freeman* to situations where the seller does not own or control the direct purchasers . . . ."). The plaintiff must allege sufficient facts to support or explain the type of control exercised. *In re: TFT-LCD (Flat Panel) Antitrust Litig.*, Nos. 3:07-md-01827, 3:12-cv-03802, 2013 WL 1164897, at *3 (N.D. Cal. Mar. 20, 2013) ("*LCD*"). Thus, in order to adequately plead the ownership or control exception to *Illinois Brick*, Tweeter must allege which alleged Defendants or co-conspirators were initial "sellers" of CRTs and name which Defendants, co-conspirators, OEMs or "other suppliers" were the "direct purchasers" that ultimately sold finished CRT Products to Tweeter. Tweeter must also allege that the entities that sold CRT Products to it were owned or controlled by itself, the Defendants or other named co-conspirators. Without these basic facts, Tweeter fails to meet its pleading burden under the ownership and control exception.

**a. Tweeter's Allegations Of Conspiracy By "Group Pleading" Fail To Adequately Establish Standing**

Tweeter may argue that its Amended Complaint is adequate under the so-called "group pleading" standard. Order Granting in Part Defendants' Motion to Dismiss at 7, *In re: TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI (N.D. Cal. Aug. 24, 2011), ECF No. 3359 ("*Best Buy*"). In the *Best Buy* case, the Court permitted Best Buy to rely on group pleading in the Track 1 case, on the ground that Best Buy's First Amended Complaint contained "a detailed description of actions taken in furtherance of the conspiracy both by defendants and their American subsidiaries," which was "sufficient to put the defendants on notice of the charges against them." *Id*. The Toshiba Defendants dispute the adequacy of group pleading as a means of alleging each Defendant's role in the alleged conspiracy. However, group pleading allegations for purposes of asserting a conspiracy are altogether different from the allegations necessary to support standing.

Tweeter's conclusory allegation that it directly purchased CRT Products from Defendants and co-conspirators fails to contain the level of detail required to fall under the ownership and control exception under *Illinois Brick*. The Ninth Circuit has clarified that a

purchaser of finished products containing an allegedly priced-fixed component cannot establish standing solely on the ground that it "purchase[d] directly from the alleged violator." *ATM Fee*, 686 F.3d at 755 n.7 (alteration in original) (quoting *In re: TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 291, 307 (N.D. Cal. 2010)). And the Ninth Circuit's decision in *Kendall* requires Tweeter to plead specific facts sufficient to confer standing under the ownership or control exception. 518 F.3d at 1050.

Tweeter's group pleading allegations fail to set out sufficient facts to satisfy the ownership or control exception as they do not even identify which entities act as "sellers" and "direct purchasers" under the *ATM Fee* framework. Notably, although Tweeter pleads that the Toshiba Defendants "manufactured, marketed, sold, and/or distributed CRT Products," Tweeter does not allege anywhere in its complaint that it purchased CRT Products from any of the Toshiba Defendants or that it purchased CRT Products containing a price-fixed CRT manufactured by any of the Toshiba Defendants. FAC ¶¶ 58-62. Tweeter, as an experienced and sophisticated corporation, should know whom it purchased CRT Products from. Tweeter's failure to allege these basic facts makes it impossible for it to assert the more critical ownership or control facts necessary to establish standing. For these reasons alone, Tweeter's claims for damages under the federal antitrust laws must be dismissed.

**b. Tweeter Also Fails To Sufficiently Plead Facts To Confer Standing On Its CRT Product Purchases From OEMs And "Other Suppliers"**

In its Complaint, Tweeter alleges that it "purchased CRT Products from original equipment manufacturers ('OEMs'), as well as other suppliers, which contained CRTs that had been purchased from Defendants and their co-conspirators." FAC ¶ 21. Tweeter, however, lacks standing with respect to these purchases because it does not allege that it owned or controlled either the OEMs or the "other suppliers" from whom it purchased CRT Products. Nor does Tweeter allege that the Toshiba Defendants owned or controlled these OEMs or other suppliers.

The "ownership or control" exception to *Illinois Brick* "has been construed to encompass relationships involving such functional economic or other unity between the

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

direct purchaser and ***either the defendant or the indirect purchaser***, that there effectively has been only one sale." *Sun Microsystems, Inc. v. Hynix Semiconductor, Inc.*, 608 F. Supp. 2d 1166, 1180 (N.D. Cal. 2009) (emphasis added). As explained elsewhere, "[t]he rationale of *Illinois Brick*'s bar to indirect purchaser suits does not apply where the supposed intermediary is controlled by one or the other of the parties." *LCD*, 2013 WL 1164897, at *2 (quoting *In re: Mercedes-Benz Anti-Trust Litig.*, 157 F. Supp. 2d 355, 355 (D.N.J. 2001)) (internal quotation marks omitted). Thus, in order for Tweeter to have standing with respect to its purchases of CRT Products from OEMs and other suppliers, it must make sufficient allegations that (1) it owned or controlled these OEMs and other suppliers; or (2) the Toshiba Defendants owned or controlled these OEMs and other suppliers.

Far from making sufficient allegations of ownership or control, Tweeter does not make ***any*** allegations that it owned or controlled the OEMs and other suppliers from which it purchased CRT Products. Tweeter also does not make ***any*** allegations that the Toshiba Defendants owned or controlled these OEMs and other suppliers. Indeed, Tweeter appears to recognize that the OEMs in question are not related to any Defendant. *See* FAC ¶ 87. ("Plaintiff has participated in the market for products containing CRTs. To the extent Plaintiff indirectly purchased CRTs as part of a CRT Product, Defendants' and their co-conspirators' unlawful conspiracy inflated the prices at which OEMs and others resold CRTs in these products."). This failure to allege ownership and control is fatal to Tweeter's attempt to assert standing with respect to these purchases. The Court's decision in *LCD*, 2013 WL 1164897 (N.D. Cal. Mar. 20, 2013), explains why.

The Court in *LCD* considered a motion to dismiss filed against four plaintiffs: Proview Technology Inc. ("PTI") and three of its affiliated OEMs located in Taiwan and China. *Id.* at *1. As alleged in the complaint, PTI received finished LCD products from its affiliated OEMs through a process by which PTI instructed its affiliated OEMs to purchase the input (LCD panels) and manufacture them into LCD finished products. *Id.* The *LCD* Court considered the allegations in the complaint, but found that the plaintiffs "fail[ed] to

adequately allege that [their] claims fall within the control exception to *Illinois Brick*." *Id.* at *3. Recognizing that the plaintiffs made conclusory allegations that PTI had "control of" its affiliated OEMs, the *LCD* Court nevertheless held that these conclusory allegations "fail[ed] to allege sufficient facts to support to explain the type of control exercised by PTI or to demonstrate that it is adequate to meet the exception." *Id.* Thus, the Court granted the motion to dismiss with respect to its affiliated OEMs. *Id.*

By its decision, the *LCD* Court reveals the importance of adequate allegations of ownership or control if plaintiffs seek to establish standing as an indirect purchaser. Because Tweeter has failed to make any allegations of ownership or control with respect to its purchases of CRT Products from OEMs and other suppliers (much less adequate allegations, as required by the *LCD* Court), it is apparent that Tweeter lacks federal antitrust standing with respect to these purchases and that, as a result, the Toshiba Defendants' motion to dismiss should be granted with respect to these purchases.

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

**B. The Second Claim Of Tweeter's Complaint Should Also Be Dismissed With Respect To The Toshiba Defendants Because The Massachusetts Consumer Protection Act Does Not Permit Indirect Purchaser Suits By Plaintiffs Engaged In Trade Or Commerce.**

The Massachusetts legislature has not repealed the rule against indirect purchaser suits announced in *Illinois Brick*. Consequently, as an indirect purchaser, Tweeter has no standing to bring suit under the Massachusetts Antitrust Act. Tweeter seeks to avoid this result by attempting to bring a claim under a provision of the Massachusetts Consumer Protection Act that is reserved exclusively for individual consumer plaintiffs, not plaintiffs engaged in trade or commerce. Because Tweeter also lacks standing to pursue its claims under this provision, its entire state law claim must be dismissed.

In response to the Supreme Court's decision in *Illinois Brick*, many states adopted so-called *Illinois Brick* repealer statutes. Massachusetts is not one of those states. *See O'Connell v. Microsoft Corp.,* Nos. 00-01743, 00-02456, 2001 WL 893525, at *5 (Mass. Super. Ct. June 14, 2001) ("Massachusetts has not enacted such a provision, despite repeated

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

legislative proposals to do so."). In fact, the Massachusetts Antitrust Act specifically states that its provisions "shall be construed in harmony with judicial interpretations of comparable federal antitrust statutes insofar as practicable." Mass. Gen. Laws ch. 93, § 1. Applying this provision, Massachusetts courts have held that indirect purchasers cannot bring claims under the Antitrust Act because it "expressly incorporates" the *Illinois Brick* rule against indirect claims. *O'Connell*, 2001 WL 893525, at *3; *see also Ciardi v. F. Hoffmann-La Roche, Ltd.*, 762 N.E.2d 303, 308 (Mass. 2002) ("Because the Antitrust Act is to be construed in harmony with judicial interpretations of comparable Federal antitrust statutes, the rule of law established by [*Illinois Brick*] would apply with equal force to preclude claims brought under G.L. c. 93 by indirect purchasers in Massachusetts."). Presumably because of this statutory bar against indirect purchaser claims, Tweeter does not bring a claim under the Massachusetts Antitrust Act. Instead, it seeks to bring a claim under the Massachusetts Consumer Protection Act, FAC ¶¶ 236-253, while ignoring that law's command that it be interpreted in harmony with the Antitrust Act. Mass. Gen. Laws ch. 93A, § 11 ("In any action brought under this section . . . the court shall also be guided in its interpretation of unfair methods of competition by . . . the Massachusetts Antitrust Act.").

The Massachusetts Consumer Protection Act declares as unlawful, "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws ch. 93A, § 2. The statute has three sections providing causes of action against violations of Section 2. Section 4 provides a cause of action for the Massachusetts Attorney General. *Id.* § 4. Section 11 provides a cause of action for, "any person who engages in the conduct of any trade or commerce and who suffers any loss of property, real or personal, as a result of the use or employment by another person who engages in any trade or commerce of an unfair method of competition or an unfair or deceptive act or practice declared unlawful by section two." *Id.* § 11. Section 9 provides a cause of action for "[a]ny person, ***other than a person entitled to bring action under section eleven*** of this chapter" who has been similarly injured. *Id.* § 9 (emphasis added). Tweeter was undoubtedly engaged in the conduct of "trade or commerce." *See* FAC ¶ 237 ("Tweeter

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

was a corporation organized and existing under the laws of the State of Massachusetts and during the Relevant Period, conducted a substantial volume of business in Massachusetts."). It therefore has standing to pursue a consumer protection claim only under Section 11. Courts have held that "as to 'business' claims, § 9 and § 11 of Chapter 93A are mutually exclusive and plaintiffs' claims can proceed under only one section." *In re Pharm. Indus. Average Wholesale Price Litig.*, 582 F.3d 156, 191 (1st Cir. 2009) (internal quotation marks omitted).

That Tweeter seeks to bring a Section 9 claim is evidenced by its attempts to comply with the statutory demand requirements which apply only to plaintiffs proceeding under Section 9, and not to those proceeding under Section 11. *See* FAC ¶¶ 244-253 (arguing that Tweeter "has complied with" Section 9 by "making a proper written demand for relief upon each Defendant"); *see also* Mass. Gen. Laws ch. 93A, § 9(3) (stating demand requirement). Although the complaint is unclear, if Tweeter in fact asserts a claim *only* under Section 9, its state law claim can be dismissed because Tweeter undoubtedly lacks standing under Section 9 as an entity engaged in trade or commerce. If Tweeter, without so stating, also seeks to bring a claim under Section 11, then its state law claim must be dismissed for lack of standing as an indirect purchaser.

Section 11 provides that, "[i]n any action brought under this section . . . the court shall also be guided in its interpretation of unfair methods of competition by those provisions of chapter ninety-three known as the Massachusetts Antitrust Act." Mass. Gen. Laws ch. 93A, § 11. Crucially, this provision is unique to Section 11, and therefore applies only in cases brought by plaintiffs such as Tweeter engaged in trade or commerce. Because the Antitrust Act must be interpreted in accordance with the *Illinois Brick* rule against indirect purchaser claims, Section 11 of the Consumer Protection Act must also be interpreted in accordance with the *Illinois Brick* rule against indirect purchaser claims. Other district courts facing this exact issue have dismissed indirect purchaser claims by business plaintiffs like Tweeter. *In re: Auto. Parts Antitrust Litig.*, No. 12-md-02311, 2013 WL 2456612, at *29 (E.D. Mich. June 6, 2013) (granting motion to dismiss Massachusetts Consumer Protection Act claim

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

brought by automobile dealers because "the *Illinois Brick* approach is taken under the Massachusetts Antitrust Act and [Consumer Protection Act] § 11. Consequently, this Court is bound to enforce the bar prohibiting an indirect purchaser business plaintiff from proceeding . . . ." (citation omitted). Therefore, Tweeter's state law claim must fail because there is no cause of action for indirect purchasers under the Massachusetts Antitrust Act. *Sheet Metal Workers Local 414 Health & Welfare Plan v. GlaxoSmithKline, PLC*, 737 F. Supp. 2d 380, 395, n.4 (E.D. Pa. 2010) ("Were plaintiffs to assert a cause of action under the Massachusetts antitrust statute . . . it would be dismissed, as the Supreme Court of Massachusetts has ruled that, '[b]ecause the Antitrust Act is to be construed in harmony with judicial interpretations of comparable Federal antitrust statutes, the rule of law established in *Illinois Brick Co. v. Illinois*, would apply with equal force to preclude claims brought under [the Antitrust Act] by indirect purchasers in Massachusetts.'") (citation omitted).

In *Ciardi*, 762 N.E.2d 303, the Massachusetts Supreme Court for the first time held that indirect *consumer* purchaser plaintiffs had standing to bring claims under Section 9 of the Consumer Protection Act. The defendants in *Ciardi* argued that allowing such suits would permit an end-run around the Antitrust Act's bar against indirect purchaser suits. *Id.* at 307. The Court, however, held that because Section 9 must be interpreted in light of FTC and judicial interpretations of the Federal Trade Commission Act, and because those interpretations permit indirect purchaser suits, the discrepancy between the Antitrust Act and the Consumer Protection Act reflected legislative intent. *Id.* The *Ciardi* court acknowledged that the "broad language of G.L. c. 93A, § 9(1)" expands the rights available under the Antitrust Act and, that Section 9 of the Consumer Protection Act is not limited by the Antitrust Act's provisions in the same way that Section 11 is limited. *Id.* at 311. Thus, *Ciardi* supports Toshiba's argument that Tweeter, an indirect purchaser of CRTs, lacks standing under Massachusetts law to pursue its claims. *Ciardi* interpreted the Consumer Protection Act to permit indirect purchaser suits only by consumers proceeding under Section 9. As discussed above, Tweeter, an entity engaged in trade or commerce, may only assert a claim under Section 11. Neither *Ciardi* nor any other Massachusetts decision

provides indirect purchaser standing under Section 11. As such, Tweeter is without a state law provision under which it can validly state a claim, and its Massachusetts claims must be dismissed.

**CONCLUSION**

For these reasons, the Toshiba Defendants' motion to dismiss should be granted, and Tweeter's complaint should be dismissed with respect to the Toshiba Defendants.

Respectfully submitted,

Dated: November 4, 2013

WHITE & CASE LLP

By: */s/ Lucius B. Lau*

Christopher M. Curran (*pro hac vice*)
ccurran@whitecase.com
Lucius B. Lau (*pro hac vice*)
alau@whitecase.com
Dana E. Foster (*pro hac vice*)
defoster@whitecase.com
701 Thirteenth Street, N.W.
Washington, DC 20005
tel.: (202) 626-3600
fax: (202) 639-9355

*Counsel to Defendants Toshiba Corporation, Toshiba America, Inc., Toshiba America Consumer Products, LLC, Toshiba America Information Systems, Inc., and Toshiba America Electronic Components, Inc.*

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

THE TOSHIBA DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
SCHULTZE AGENCY SERVICES, LLC'S FIRST AMENDED COMPLAINT
Case No. 07-5944 SC
MDL No. 1917
14

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

**CERTIFICATE OF SERVICE**

On November 4, 2013, I caused a copy of "THE TOSHIBA DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS SCHULTZE AGENCY SERVICES LLC'S FIRST AMENDED COMPLAINT" to be served via ECF on the other parties in this action.

*/s/ Lucius B. Lau*
Lucius B. Lau

THE TOSHIBA DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS SCHULTZE AGENCY SERVICES, LLC'S FIRST AMENDED COMPLAINT
Case No. 07-5944 SC
MDL No. 1917