1  Terry Calvani (53260)
   terry.calvani@freshfields.com
2  Richard Snyder (*pro hac vice*)
   rich.snyder@freshfields.com
3  FRESHFIELDS BRUCKHAUS DERINGER US LLP
   701 Pennsylvania Avenue, NW, Suite 600
4  Washington, DC  20004
   Tel:  (202) 777-4500
5  Fax:  (202) 777-4555

6  **Counsel for Defendant Beijing Matsushita**
   **Color CRT Co., Ltd.**

7

             **UNITED STATES DISTRICT COURT**

8
             **NORTHERN DISTRICT OF CALIFORNIA**
9
                **SAN FRANCISCO DIVISION**
10

11 | IN RE: CATHODE RAY TUBE (CRT) | ) | Case No.: 3:07-cv-5944 SC |
   | ANTITRUST LITIGATION | ) | MDL NO. 1917 |

12 |   | ) | **DEFENDANT BEIJING MATSUSHITA** |
                                      **COLOR CRT CO., LTD.'S NOTICE OF**
13 | This document relates to: | ) | **MOTION AND MOTION TO DISMISS** |
                                      **CERTAIN DIRECT ACTION**
14 |   | ) | **PURCHASER COMPLAINTS** |

15 | BEST BUY CO., INC. V. HITACHI, LTD., | ) |   |
        Case No. 3:11-cv-05513-SC;
16 | COSTCO V. HITACHI, LTD., | ) |   |
        Case No. No. 3:11-cv-06397-SC
17 | TARGET CORP. V. CHUNGHWA, | ) |   |
        Case No. 3:11-cv-05514-SC
18 | TECH DATA V. HITACHI, LTD., | ) | Declaration of Ayumo Kinoshita and |
        Case No. 3:13-cv-00157-SC                  [Proposed] Order Granting Motion to
19 |   | ) | Dismiss Direct Action Purchaser |
                                      Complaints filed concurrently herewith
20 |   | ) | Date:      December 17, 2013 |
                                      Time:      9:00 a.m.
21 |   | ) | Before the Honorable Samuel Conti |

22

23

24

25

26

27

28

1

# **TABLE OF CONTENTS**

2  Table of Authorities ..................................................................................................... iii

3  Notice of Motion and Motion ......................................................................................... 1

4  Memorandum of Points and Authorities ......................................................................... 1

5  Statement of Issues Presented ........................................................................................ 1

6  Preliminary Statement ................................................................................................... 2

7  Factual Background ....................................................................................................... 3

8      I.    The Complaints Do Not Allege That BMCC Had a Physical Presence in

9          the United States .................................................................................. 3

10      II.   The Complaints Do Not Sufficiently Allege Contacts With the United

11          States. ................................................................................................. 3

12      III.  The Complaints Do Not Allege Facts That, If True, Would Establish that

13          BMCC Intentionally Directed Injurious Conduct at the United States .................. 5

14      IV.  Declaration Evidence Establishes That BMCC Was Not Present in the

15          United States and Did Not Purposefully Avail Itself of the United States ............. 6

16      V.   Declaration Evidence Establishes That BMCC Did Not Direct Tortious

17          Conduct at the United States .................................................................. 6

18      VI.  The Best Buy, Costco, Sears, and Target Complaints Were Not Served on

19          BMCC .............................................................................................. 7

20  Legal Standards ............................................................................................................ 8

21  Argument ..................................................................................................................... 8

22      I.    Complaints Must Be Dismissed for Lack of Personal Jurisdiction Over

23          BMCC .............................................................................................. 8

24          A.   Plaintiffs Must Plead Jurisdictional Facts With Specificity ..................... 10

25          B.   The Court May Not Assume the Truth of Allegations in the

26              Complaint That Are Contradicted By Sworn Declaration Testimony. ..... 10

27          C.   The Court Lacks General Jurisdiction Over BMCC ................................ 11

28

E.   The Court Lacks Specific Jurisdiction Over BMCC ................................. 12

F.   Any Request for Jurisdictional Discovery Should Be Denied .................. 21

II.   Complaints That Have Been Served Pursuant to the Court's Order Must

Be Dismissed for Ineffective Service of Process .................................................... 22

A.   As Described in the Ninth Circuit's *Rio* Opinion, the Court's Order

is Contrary to Rule 4(f) or Contrary to International Agreement ............. 22

B.   The Court's Service of Process Order Would Deprive BMCC of Due

Process Rights and Operate to Deprive This Court of Personal

Jurisdiction Over BMCC ............................................................................ 25

Conclusion .................................................................................................................................... 25

Certificate of Service .................................................................................................................... 27

1

## TABLE OF AUTHORITIES

2

**Cases**

3

*Alexander v. Circus Circus Enters., Inc.*, 972 F.2d 261 (9th Cir.1992) ...................................10, 14

4

*Amoco Egypt Oil Co. v. Leonis Navigation Co.*, 1 F.3d 848 (9th Cir. 1993)................................ 20

5

*Asahi Metal Indus. Co. v. Super. Ct.*, 480 U.S. 102 (1987)......................................... 10, 11, 18, 20

6

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)........................................................................................ 14

7

*Ballard v. Savage*, 65 F.3d 1495 (9th Cir. 1995) ......................................................................... 9

8

*Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082 (9th Cir. 2000) .......................... 11

9

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................................. 10

10

*Brand v. Menlove Dodge*, 796 F.2d 1070 (9th Cir. 1986)..........................................................9, 11

11

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)...........................................................passim

12

*Calder v. Jones*, 465 U.S. 783 (1984).................................................................................9, 13, 17

13

*Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280 (9th Cir. 1977)................................... 13

14

*Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063 (10th Cir. 2008)........................ 10

15

*Eli Lilly & Co. v. Medtronic*, 496 U.S. 661 (1990)...................................................................... 23

16

*Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114 (9th Cir. 2002)20

17

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846 (2011) ..........................11, 16

18

*Go-Video, Inc. v. Akai Elec. Co.*, 885 F.2d 1406 (9th Cir. 1989) .................................................. 9

19

*Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122 (9th Cir. 2003)9, 13

20

*In re Chocolate Confectionary Antitrust Litig.*, 674 F. Supp. 2d 580 (M.D. Pa. 2009) ....15, 16, 18

21

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. C-02-1486, 2005 U.S. Dist.

22

LEXIS 30299 (N.D. Cal. Nov. 7, 2005)...........................................................................passim

23

*Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945)....................................................................... 9

24

*J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780 (2011)....................................................... 13

25

*Jackson v. Hayakawa*, 682 F.2d 1344 (9th Cir. 1982)..............................................................8, 25

26

*Kungys v. United States*, 485 U.S. 759 (1988) ........................................................................... 25

27

*Laub v. U.S. Dep't of Interior*, 342 F.3d 1080 (9th Cir. 2003) .................................................... 21

28

*Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218 (9th Cir. 2011) ...................................... 13

*Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267 (9th Cir. 1995) ........................... 9, 12, 13

*Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97 (1987) ............................................. 25

*Panavision Int'l, LP v. Toeppen*, 141 F.3d 1316 (9th Cir. 1998) ................................................... 12

*Pebble Beach Co. v. Caddy*, 453 F.3d 1151 (9th Cir. 2006) ........................................................ 21

*Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007 (9th Cir. 2002) .................................. 2, 22, 24

*Schlunk v. Volkswagenwerk Aktiengesellschaft*, 503 N.E.2d 1045 (1986) ..................................... 24

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797 (9th Cir. 2004) ........................... passim

*Shaffer v. Heitner*, 433 U.S. 186 (1977) (Stevens, J., concurring) ................................................ 18

*Swartz v. KPMG LLP*, 476 F.3d 756 (9th Cir. 2007) ..................................................................... 10

*Terracom v. Valley Nat'l Bank*, 49 F.3d 555 (9th Cir. 1995) ............................................. 17, 19, 20

*Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694 (1988) ........................................... 24

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980) ................................................ 18

**Other Authorities**

Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or

   Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. 6638, 658 U.N.T.S. 163. ...23, 24

Due Process Clause, U.S. Const. amend. V ...................................................................................... 9

**Rules**

Fed. R. Civ. P. 12(b)(2) ............................................................................................................. 1, 8

Fed. R. Civ. P. 12(b)(5) ............................................................................................................. 1, 8

Fed. R. Civ. P. 4(f)(3) ......................................................................................................... 2, 8, 23

1

## NOTICE OF MOTION AND MOTION

2

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

3
PLEASE TAKE NOTICE that on December 17, 2013 at 9:00 a.m. or as soon thereafter

4
as this matter may be heard, before the Honorable Samuel Conti, San Francisco Courthouse,

5
Courtroom 1 - 17th Floor 450 Golden Gate Avenue, San Francisco, CA 94102, defendant

6
Beijing Matsushita Color CRT Co., Ltd. ("BMCC") will and hereby does move this Court for an

7
order dismissing the claims asserted against BMCC in the above-titled actions pursuant to Rules

8
12(b)(2) and 12(b)(5) of the Federal Rules of Civil Procedure.

9
In support of this Motion, BMCC relies upon this Notice of Motion and Motion, the

10
Memorandum of Points and Authorities in support thereof, the Declaration of Ayumo Kinoshita

11
sworn to on October 30, 2013 in support thereof, and such other materials and information that

12
the Court may properly consider at or before the hearing on this Motion.

13

## MEMORANDUM OF POINTS AND AUTHORITIES

14
Beijing Matsushita Color CRT Co., Ltd. ("BMCC") respectfully submits this

15
Memorandum of Points and Authorities in support of its Motion to Dismiss ("Motion") the

16
claims asserted against BMCC in the Direct Action Purchaser ("DAP") Complaints (jointly

17
"Complaints") listed in the caption, *supra*.[1]

18

## STATEMENT OF ISSUES PRESENTED

19
Pursuant to Rules 12(b)(2) and 12(b)(5) of the Federal Rules of Civil Procedure,

20
Defendant BMCC respectfully moves to dismiss the Complaints based on the following issues:

21
- With respect to the Complaints, whether they must be dismissed under Rule 12(b)(2)

22
because this Court lacks personal jurisdiction over defendant BMCC; and

23

24

25

26
1 Specifically, the Complaints are in the following actions:  Best Buy Co., Inc. v. Hitachi, Ltd., Case No. 3:11-cv-05513-SC; Costco v. Hitachi, Ltd., Case No. 3:11-cv-06397-SC; Target Corp. v. Chunghwa, Case No. 3:aa-cv-05514-SC; and Tech Data v. Hitachi. Ltd., Case No. 3:13-cv-00157-SC.

27

28

- With respect to the Best Buy, Costco, Sears,[2] and Target Complaints served on BMCC pursuant to this Court's order authorizing service of process in Washington, DC, on Freshfields Bruckhaus Deringer US LLP ("Freshfields"), attorneys at the time for BMCC on related matters, Dkt. 1241, whether those complaints must be dismissed for inadequate service of process under Rule 12(b)(5), as contrary to Rule 4(f)(3) and the Ninth Circuit's decision in *Rio Properties, Inc. v. Rio International Interlink*, 284 F.3d 1007 (9th Cir. 2002).

## **PRELIMINARY STATEMENT**

The Complaints allege violations of both federal and state antitrust laws based on allegations of a conspiracy to reduce output of and fix the price of cathode ray tubes ("CRTs"). The Complaints against BMCC should be dismissed on multiple bases:

- First, each of the Complaints must be dismissed for lack of personal jurisdiction over BMCC, a Chinese company that has neither purposefully availed itself of the United States, nor aimed tortious conduct at the United States, and over whom the exercise of personal jurisdiction would be unreasonable.  The Complaints do not sufficiently allege facts in support of personal jurisdiction and the Declaration of Ayumo Kinoshita submitted in support of this Motion ("Kinoshita Declaration") makes clear that BMCC did not in fact have sufficient contacts.
- Second, the Best Buy, Costco, Sears, and Target Complaints must be dismissed because, BMCC respectfully asserts, the Court's Order authorizing such service is contrary to controlling legal precedent in this circuit, *Rio Properties*, and is contrary to either the plain text of Rule 4(f), or to international agreement.

---

[2] The original complaint in Case No. 3:11-cv-05514 was brought by Plaintiffs Target; Sears, Roebuck and Co.; Kmart; Old Comp Inc.; Good Guys; and Radioshack.  Plaintiffs in that action elected to file two amended complaints, one on behalf of Sears, Roebuck and Co. and Kmart ("Sears Complaint") and the other on behalf of Target ("Target Complaint").

**FACTUAL BACKGROUND**

I.     **The Complaints Do Not Allege That BMCC Had a Physical Presence in the United**
       **States**

       According to the Complaints, BMCC is a company organized under the laws of the
People's Republic of China, with its principal place of business in Beijing, China.  Costco
Compl. ¶ 33; Target Compl. ¶ 38; Best Buy Compl. ¶ 44; Sears Compl. ¶ 40; Tech Data Compl.
¶ 46.  The Complaints identify BMCC's shareholders as defendant MT Picture Display Co. Ltd.
("MTPD"), a subsidiary of defendant Panasonic Corporation ("Panasonic"),[3] and "Beijing Orient
Electronics (Group) Co., Ltd., China National Electronics Import & Export Beijing Company (a
China state-owned enterprise), and Beijing Yayunchun Brach [sic] of the Industrial and
Commercial Bank of China (a China state-owned enterprise)."  *Id.*  The Complaints plead
nothing with respect to BMCC's presence (or lack thereof) in the United States.  Thus, the
Complaints, if assumed to be true, establish that BMCC is a Chinese company owned by
Japanese and Chinese shareholders, and do not allege that BMCC had any physical presence in
the United States.

II.    **The Complaints Do Not Sufficiently Allege Contacts With the United States.**

       The allegations in the Complaints that either mention BMCC or might be relied upon to
support personal jurisdiction include:

- "BMCC Background."  The first three sentences of each Complaint's description of
  BMCC in the "Defendants" section does nothing more than allege that BMCC is a
  Chinese company that manufactures CRTs in China.  Costco Compl. ¶ 33; Target
  Compl. ¶ 38; Best Buy Compl. ¶ 44; Sears Compl. ¶ 40; Tech Data Compl. ¶ 46.
- "Jurisdictional Boilerplate."  Each Complaint makes certain boilerplate jurisdictional
  allegations as to all defendants that merely repeat the relevant legal standard.  These
  include conclusory statements that each defendant purposefully availed itself of the

---

[3]     MTPD sold all of its shares of BMCC in December 2009 and therefore is no longer a shareholder of BMCC.
Kinoshita Decl. ¶ 6.

United States, Best Buy Compl. ¶ 14;[4] Target Compl. ¶ 14;[5] Costco Compl. ¶ 68;[6] Sears Compl. ¶ 14;[7] Tech Data Compl. ¶ 15.[8]  As discussed below, these allegations are insufficient as a matter of law to establish personal jurisdiction.

- "Affiliate Sales Allegations."  Each Complaint makes certain boilerplate factual allegations that each defendant "manufactured, marketed, sold and/or distributed CRT Products, either directly or through its subsidiaries or affiliates, throughout the United States."  Costco Compl. ¶ 33; Target Compl. ¶ 38; Best Buy Compl. ¶ 44; Sears Compl. ¶ 40; Tech Data Compl. ¶ 46.  Even if such boilerplate allegations where sufficient, which they are not as discussed below, they are contradicted by the Kinoshita Declaration.  BMCC never manufactured, marketed, sold or distributed Finished Products (as defined in the Complaints) anywhere, nor CRTs in the United States.  Kinoshita Decl. ¶¶ 9, 22-23.  BMCC has no subsidiaries.  *Id.* ¶ 8.  BMCC sold in China a limited number of color picture tubes ("CPTs") to certain Panasonic entities.  *Id.* at ¶ 23.  As noted above, the Complaints allege that MTPD, a wholly-owned subsidiary of Panasonic, was a shareholder of BMCC.  The Complaints do not

---

[4]. "This court has jurisdiction over each Defendant named in this action.  Defendants and their co-conspirators purposely availed themselves of the laws of the United States as they manufactured CRT Products for sale in the United States, or CRTs which were incorporated into CRT Products Defendants and their co-conspirators knew would be sold to customers in the United States.  Defendants' and their co-conspirators' conspiracy affected this commerce in CRT Products in the United States."

[5] "This court has jurisdiction over each Defendant named in this action under both Section 12 of the Clayton Act, 15 U.S.C. § 22 and Cal. Civ. Code § 410.10.  Each Defendant conducts substantial business in the state of California, and a number of Defendants maintain their headquarters in this District or elsewhere in California.  In addition, Defendants all purposefully availed themselves of the laws of the United States and California insofar as they manufactured CRTs and products containing CRTs for sale in the United States and California.  Samsung SDI has also admitted that conduct in furtherance of the conspiracy occurred in the Northern District of California."

[6] "Defendants are subject to the jurisdiction of this Court by virtue of their nationwide contacts and other activities, as well as their contacts with the State of Washington."

[7] "This court has jurisdiction over each Defendant named in this action under both Section 12 of the Clayton Act, 15 U.S.C. § 22 and Cal. Civ. Code § 410.10.  Each Defendant conducts substantial business in the state of California, and a number of Defendants maintain their headquarters in this District or elsewhere in California.  In addition, Defendants all purposefully availed themselves of the laws of the United States and California insofar as they manufactured CRTs and products containing CRTs for sale in the United States and California and several Defendants have admitted that they engaged in conduct in furtherance of the conspiracy in the Northern District of California."

[8] "This court has jurisdiction over each Defendant named in this action under Section 12 of the Clayton Act (15 U.S.C. § 22).  Defendants and their co-conspirators purposely availed themselves of the laws of the United States, as they manufactured CRT Products for sale in the United States, which were incorporated into CRT Products that Defendants and their co-conspirators knew would be sold to customers in the United States.  Defendants' and their co-conspirators' conspiracy affected this commerce in CRT Products in the United States."

allege that Panasonic sold CPTs manufactured by BMCC in the United States, but even if they did, that allegation would be insufficient to establish personal jurisdiction over BMCC, as discussed below.

- "Chinese Meeting Allegations."  The Complaints each include the allegation that BMCC attended meetings in China,[9] with Chinese industry participants.[10]  These allegations fail to plead facts that link BMCC or these meetings specifically to the United States.

Thus, the three paragraphs in the Complaints that actually mention BMCC mention "China" or "Chinese" 15 times but "United States" only once—in a conclusory manner stating, as alleged for each defendant that BMCC "manufactured, marketed, sold, and distributed CRT Products, either directly or through its subsidiaries or affiliates, throughout the United States"  Costco Compl. ¶ 33; Target Compl. ¶ 38; Best Buy Compl. ¶ 44; Sears Compl. ¶ 40; Tech Data Compl. ¶ 46.

## III.   The Complaints Do Not Allege Facts That, If True, Would Establish that BMCC Intentionally Directed Injurious Conduct at the United States

As previously noted, only three paragraphs in each Complaint even mention BMCC. None alleges any "injurious conduct" by BMCC that was "intentionally directed" at the United States.  The Description of BMCC and the Chinese Meeting Allegations make specific allegations as to BMCC, but fail to create any link between the conduct alleged and the United States.  The Chinese Meeting Allegations do not allege any conduct in the United States or targeted at the United States, instead discussing China and Chinese manufacturers.  As discussed

---

[9]   "The Chinese glass meetings began in 1998 and generally occurred on a monthly basis following a top or management level meeting.  The China meetings had the principal purpose of reporting what had been decided at the most recent glass meetings to the Chinese manufacturers.  Participants at the Chinese meetings included the manufacturers located in China, such as IRICO and BMCC, as well as the China-based branches of the other Defendants, including but not limited to Hitachi Shenzhen, Samsung SDI Shenzhen, Samsung SDI Tianjin, and Chunghwa."  Costco Compl. ¶ 106; Target Compl. ¶ 113; Best Buy Compl. ¶ 120; Compl. Tech Data ¶ 125 (emphasis added).

[10]  "Between at least 1998 and 2007, Defendant BMCC participated in multiple glass meetings.  These meetings were attended by high level sales managers from BMCC.  BMCC also engaged in multiple bilateral discussions with other Defendants, particularly the other Chinese CRT manufacturers.  Through these discussions, BMCC agreed on prices and supply levels for CRTs.  None of BMCC's conspiratorial conduct in connection with CRTs was mandated by the Chinese government.  BMCC was acting to further its own independent private interests in participating in the alleged conspiracy."  Costco Compl. ¶ 133; Target Compl. ¶ 140; Best Buy Compl. ¶ 146; Tech Data Compl. ¶ 152 (emphasis added).

below, BMCC did not have a physical presence in the United States, nor did it market or sell CRTs in the United States.  The only reference to the United States in any of the paragraphs that mention BMCC is the allegation in the Jurisdictional Boilerplate that BMCC manufactured, marketed, sold and/or distributed CRT Products, either directly or through its subsidiaries or affiliates, throughout the United States.  Costco Compl. ¶ 33; Target Compl. ¶ 38; Best Buy Compl. ¶ 44; Sears Compl. ¶ 40; Tech Data Compl. ¶ 46.

IV.     **Declaration Evidence Establishes That BMCC Was Not Present in the United States and Did Not Purposefully Avail Itself of the United States**

Far from *purposefully directing activities* to the United States, BMCC is a Chinese company with its principal and only place of business in Beijing, China, see Kinoshita Decl. ¶ 7, and at all relevant times, it:

- never had a shipping address, telephone listing, or bank account anywhere in the United States.  *Id.* ¶ 15.
- had no subsidiaries.  *Id.* ¶ 8.
- was never registered or licensed to do business anywhere in the United States.  *Id.* ¶ 11.
- never had a registered agent or other person authorized to accept service of process anywhere in the United States.  *Id.* ¶ 19.
- never owned, used, processed, or otherwise had any rights to any real property anywhere in the United States.  *Id.* ¶ 12
- never operated any offices, plants, or warehouses anywhere in the United States.  *Id.* ¶ 14.
- never paid any income or property taxes anywhere in the United States.  *Id.* ¶ 16.
- never employed anyone anywhere in the United States.  *Id.* ¶ 17.
- never maintained any inventory of products anywhere in the United States.  *Id.* ¶ 20.
- never manufactured electronic devices containing CRTs.  *Id.* ¶ 9.
- never manufactured CRTs, or any other products, anywhere in the United States.  *Id.* ¶ 13.
- never sold any CRTs into the United States.  *Id.* ¶¶ 22-23.
- never directed any advertising, marketing, or promotion anywhere in the United States, or otherwise solicited any business anywhere in the United States.  *Id.* ¶ 18.

This specific declaration evidence, offered under penalty of perjury, is contrary to the boilerplate allegations that offer no specificity or link between BMCC and the United States.

V.     **Declaration Evidence Establishes That BMCC Did Not Direct Tortious Conduct at the United States**

The Kinoshita Declaration also establishes facts that preclude the possibility that BMCC

engaged in alleged price-fixing or output restrictions targeted at the United States.  BMCC did not sell color display tubes ("CDTs") or CPTs into the United States.  Kinoshita Decl. ¶¶ 22-23. To the extent that CPTs manufactured by BMCC might have ended up in the United States:

- BMCC sold the CPTs in China to a third party.  *Id.* ¶¶ 21-23.
- BMCC did not control where these CPTs were shipped, a third party did.  *Id.*
- BMCC did not determine either the price or volume of any CPTs delivered to that third party in China, the third party did.  *Id.*

The Complaints allege output restrictions and price-fixing, but the Kinoshita Declaration establishes that, to the extent BMCC CPTs might have ended up in the United States as a result of a third party, BMCC did not control whether these CPTs were shipped to the United States or the price at which they were sold there.

## VI.    The Best Buy, Costco, Sears, and Target Complaints Were Not Served on BMCC

The Best Buy, Costco, Sears, and Target Complaints were not served on BMCC in China. Instead, pursuant to the Court's order, Dkt. 1241, these complaints were served by mail in Washington, DC, on Freshfields, BMCC's counsel in the direct and indirect purchaser class actions.[11]  Dkt. 1292, 1302, 1322.

After Freshfields received the Best Buy, Costco, Sears, and Target complaints by mail, Freshfields conferred with counsel for Best Buy, Costco, Sears, and Target in an attempt to reach a similar agreement to extend the time to respond to those complaints until after the Court ruled on the pending motion to dismiss those complaints on other grounds filed by other defendants. Dkt. 1856.  When the DAPs refused to extend BMCC's time to respond, BMCC filed an answer asserting each of the defenses made in this Motion, including inadequate service of process[12] and

---

[11]  BMCC was also served by the State of Florida and indicated to Florida that it intended to file motions challenging service of process under Rule 4(f)(3) and personal jurisdiction under Rule 12(b)(2).  To avoid potentially unnecessary briefing, Florida extended BMCC's time to respond to its complaint until the Court ruled on the motion to dismiss the State of Florida complaint on other grounds filed by other defendants.  Dkt. 1241.  After the Court's order on that motion to dismiss, the State of Florida voluntarily dismissed its claims against BMCC.  Dkt. 1511.

[12]  *See* Answer to Costco Compl. n. 2, Dkt. 1329 ("BMCC expressly reserves its right to file a motion to dismiss for improper service.  As noted above, BMCC maintains that the Court's ruling on the Special Master's May 31, 2012 Report and Recommendation (Dkt. 1221) in related action 3:07-cv-05944-SC; MDL No. 1917, will allow BMCC to file a streamlined and persuasive motion to dismiss, including for improper service.  Despite BMCC's explanation that a short delay to allow the court to rule on the Report and Recommendation would bring greater clarity to the motion and preserve both the parties' and judicial resources, counsel for Costco refused BMCC's request for an extension until after the Court's ruling.  Accordingly, BMCC hereby reserves

1    lack of personal jurisdiction,[13] and indicating it intended to make this Motion.  BMCC reiterated

2    its intention to file this Motion in its recent status filing with the Court.[14]

3                                       **LEGAL STANDARDS**

4           Rule 12(b)(2) requires dismissal of complaints for lack of personal jurisdiction if personal

5    jurisdiction may not be exercised consistent with due process.

6           Rule 12(b)(5) requires dismissal of complaints for insufficient service of process of a

7    complaint.  Rule 4(f)(3) permits service at a place *not within a judicial district of the United*

8    *States* by other means *not prohibited by international agreement* (emphasis added).

9                                           **ARGUMENT**

10          Where, as is the case here, a defendant challenges both the sufficiency of service of

11   process and personal jurisdiction, the Court must give particular attention to each issue to protect

12   the foreign party.  *Jackson v. Hayakawa*, 682 F.2d 1344, 1347-48 (9th Cir. 1982) ("Defendants

13   must be served…or there is no personal jurisdiction.")  Neither actual notice, nor simply naming

14   the person in the caption of the complaint will subject defendants to personal jurisdiction if

15   service was not made in substantial compliance with Rule 4.  *Id.*  The issues of personal

16   jurisdiction and service of process are, therefore, inextricably intertwined such that deprivation

17   of constitutional rights on either issue may infect the other.

18   **I.     Complaints Must Be Dismissed for Lack of Personal Jurisdiction Over BMCC**

19          Plaintiffs have the burden of establishing that the court in which the Plaintiffs have

20   chosen to bring suit has personal jurisdiction over the Defendant(s).  Plaintiffs must satisfy that

21   burden by alleging in the complaint facts that, if true, would establish the court's jurisdiction

---

22

23   [13]   all defenses including personal jurisdiction and will file a motion to dismiss once the Court has ruled on the
            Special Master's Proposed Report and Recommendation.").

24          Answer to Costco Compl. n. 1, Dkt. 1329 ("BMCC expressly reserves its right to seek dismissal of this
            Complaint, including for lack of personal jurisdiction.  BMCC maintains that the Court's ruling on the Special

25          Master's May 31, 2012 Report and Recommendation (Dkt. 1221) in related action 3:07-cv-05944-SC; MDL
            No. 1917, will allow BMCC to file a streamlined and persuasive motion to dismiss, including for lack of
            personal jurisdiction.  Despite BMCC's explanation that a short delay to allow the Court to rule on the Report

26          and Recommendation would bring greater clarity to the motion and preserve both the parties' and judicial
            resources, counsel for Costco refused BMCC's request for an extension until after the Court's ruling.
            Accordingly, BMCC hereby reserves all defenses including personal jurisdiction and will file a motion to

27          dismiss once the Court has ruled on the Special Master's Proposed Report and Recommendation.").
     [14]   BMCC's Status Conference Position Statement ¶¶ 19-20, Sept. 6, 2013, Dkt. 1897 ("BMCC will move to

28          dismiss all DAP complaints served on BMCC on multiple grounds including personal jurisdiction, failure to
            state a claim, and insufficient service of process.").

1   over the Defendant(s).  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir.

2   2004); *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1128-29

3   (9th Cir. 2003).  The Court can exercise personal jurisdiction over a nonresident defendant only

4   when doing so is consistent with due process, *Go-Video, Inc. v. Akai Elec. Co.*, 885 F.2d 1406,

5   1415 (9th Cir. 1989), which requires that the defendant have "minimum contacts with [the state]

6   such that the maintenance of the suit does not offend 'traditional notions of fair play and

7   substantial justice.'"  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken*

8   *v. Meyer*, 311 U.S. 457, 463 (1940)).

9         In order to satisfy the Due Process Clause, U.S. Const. amend. V, Plaintiffs must

10   demonstrate either (i) that BMCC's contacts in the United States are "substantial," or

11   "continuous, and systematic" such that the Court has general jurisdiction, or (ii) that BMCC has

12   a sufficient connection to the alleged misconduct through acts in or *purposefully directed at* the

13   United States to establish specific jurisdiction for purposes of this litigation.  *See Omeluk v.*

14   *Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 270 (9th Cir. 1995); *Brand v. Menlove Dodge*, 796

15   F.2d 1070, 1073-74 (9th Cir. 1986).

16        *No General Jurisdiction*.  The Complaints do not allege, nor could they, that BMCC has

17   or ever had sufficient presence in the United States for the Court to exercise general jurisdiction.

18   As discussed more fully below, it is thus beyond dispute that BMCC is not "at home" in the

19   United States and cannot be subject to the general jurisdiction of its courts.  Therefore, the

20   Complaints instead must allege facts linking BMCC sufficiently to the United States such that

21   this Court may exercise specific personal jurisdiction over BMCC.

22        *No Specific Jurisdiction*.  To make a showing of specific personal jurisdiction, the

23   Complaints must allege facts that, if true, establish that: (i) BMCC purposefully availed itself of

24   the United States, *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995); (ii) BMCC

25   intentionally directed injurious conduct at the United States, such that the United States is "*the*

26   focal point" of the tort and that the United States bore the "brunt of the harm," *Calder v. Jones*,

27   465 U.S. 783, 789 (1984) (emphasis added); and (iii) it is reasonable to require BMCC, a

28

1    Chinese company, with no alleged contacts with the United States, to defend in a U.S. court

2    conduct that occurred exclusively in China.  *See Asahi Metal Indus. Co. v. Super. Ct.*, 480 U.S.

3    102, 113 (1987).  The Complaints establish none of these.

4         A.    **Plaintiffs Must Plead Jurisdictional Facts With Specificity**

5         Plaintiffs have the burden of pleading jurisdictional facts with the specificity required

6    under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  *See, e.g.*, *Dudnikov v. Chalk &*

7    *Vermilion Fine Arts, Inc.*, 514 F.3d 1063 (10th Cir. 2008) (in reviewing a district court's

8    dismissal for lack of personal jurisdiction, Court must take as true "all well-pled (that is,

9    plausible, non-conclusory, and non-speculative, see [*Twombly*, 550 U.S. at 554, 127 S.Ct. 1955])

10   facts alleged in plaintiffs' complaint." (citing *Twombly*, 550 U.S. at 554)).  While a plaintiff is

11   "generally required only to make out a prima facie showing of personal jurisdiction to overcome

12   a 12(b)(2) motion" at the motion to dismiss stage, "mere 'bare bones' assertions of minimum

13   contacts with the forum or legal conclusions unsupported by specific factual allegations will not

14   satisfy a plaintiff's pleading burden."  *Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007).

15   Particularly in light of the massive evidentiary record already available to the Plaintiffs, Plaintiffs

16   should be required to plead specific facts that, if true, would establish personal jurisdiction over

17   BMCC.

18        B.    **The Court May Not Assume the Truth of Allegations in the Complaint That**

19              **Are Contradicted By Sworn Declaration Testimony.**

20        For personal jurisdiction purposes, a court "may not assume the truth of allegations in a

21   pleading which are contradicted by affidavit."  *Alexander v. Circus Circus Enters., Inc.*, 972 F.2d

22   261, 262 (9th Cir.1992) (quoting *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1284

23   (9th Cir. 1977)).  Although this Court could dismiss the Complaints for lack of personal

24   jurisdiction solely because they are devoid of allegations linking BMCC to the United States, this

25   Motion is accompanied by declaration testimony that establishes that BMCC lacks the contacts

26   with the United States necessary for this Court to exercise personal jurisdiction over BMCC.  *See*

27   Kinoshita Decl. ¶¶ 6-24.  For these reasons, BMCC respectfully moves the Court to dismiss the

28

1    Complaints against BMCC for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the

2    Federal Rules of Civil Procedure.

3           Even though Plaintiffs do not allege any contact between BMCC and the United States,

4    they demand that this Court cause BMCC, a company with no alleged activity outside China, to

5    appear in this Court.  Courts are charged to exercise "[g]reat care and reserve . . . when extending

6    our notions of personal jurisdiction into the international field," *Asahi Metal Indus. Co. v. Super.*

7    *Ct.*, 480 U.S. 102, 115 (1987) (quoting *United States v. First Nat'l City Bank*, 379 U.S. 378, 404

8    (1965) (Harlan, J., dissenting)), as here.

9           **C.      The Court Lacks General Jurisdiction Over BMCC**

10          BMCC is not "at home" in the United States and cannot, therefore, be subject to the

11   general jurisdiction of federal courts in any state.  General jurisdiction only exists over a foreign

12   corporation when its "affiliations with the State are so continuous and systematic to render [it]

13   essentially at home in the forum State."  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131

14   S. Ct. 2846, 2851 (2011) (internal quotation marks omitted).  "The standard for establishing

15   general jurisdiction is 'fairly high' and requires that the defendant's contacts *be of the sort that*

16   *approximate physical presence*."  *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082,

17   1086 (9th Cir. 2000) (emphasis added) (quoting *Brand v. Menlove Dodge*, 796 F.2d 1070, 1073

18   (9th Cir. 1986)); *see Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir.

19   2004).

20          "Factors to be taken into consideration are whether the defendant makes sales, solicits or

21   engages in business in the state, serves the state's markets, designates an agent for service of

22   process, holds a license, or is incorporated there."  *Bancroft & Masters*, 223 F.3d at 1086.  Such

23   contacts must also be "substantial," and that is "intended to be a fairly high standard."  *Brand*,

24   796 F.2d at 1073.

25          Plaintiffs do not satisfy this "fairly high standard," as they do not allege any contacts in

26   the United States such that BMCC is "essentially at home" in this country.  *See Goodyear*

27   *Dunlop Tires Operations, S.A.*, 131 S. Ct. at 2851.  Far from contacts that rise to the level of

28

1   substantial, continuous, and systematic, other than the Jurisdictional Boilerplate, Plaintiffs do not

2   allege facts that would constitute *any* meaningful conduct or involvement by BMCC in the

3   United States, as discussed in the Statement of Facts, *supra*.  Indeed the Kinoshita Declaration

4   clearly establishes that BMCC lacked and lacks every indicia associated with the exercise of

5   general personal jurisdiction.

6         **E.**      **The Court Lacks Specific Jurisdiction Over BMCC**

7         Absent a finding of general jurisdiction, the Complaints must allege facts that, if true,

8   would establish specific jurisdiction over BMCC.  They do not.  In order to exercise specific

9   jurisdiction over a nonresident defendant, a plaintiff must demonstrate that: (1) the defendant has

10   purposefully directed its activities, or consummated some transaction with, the forum or resident

11   thereof, or performed some act purposefully availing himself of forum benefits; (2) the

12   controversy arises out of defendant's contacts with the forum; and (3) the assertion of personal

13   jurisdiction would "comport with fair play and substantial justice, i.e. it must be reasonable."

14   *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (citing *Lake v.*

15   *Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)).  "If any of the three requirements is not satisfied,

16   jurisdiction in the forum would deprive the defendant of due process of law."  *Omeluk v.*

17   *Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 270 (9th Cir. 1995).  Plaintiffs cannot satisfy even

18   one of these independent requirements as to BMCC.

19         *1.*    *The Complaints Fail to Allege Facts That Would Establish That BMCC*

20              *Purposefully Availed Itself of the United States*

21         The Complaints fail to allege facts that, if true, would establish that BMCC purposefully

22   and voluntarily directed its activities toward the United States.  The purposeful availment

23   element of the test for specific jurisdiction "is satisfied if the defendant 'has taken deliberate

24   action' toward the forum state," *Panavision Int'l, LP v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir.

25   1998) (quoting *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995)), so that its "conduct and

26   connection with the forum State are such that [it] should reasonably anticipate being haled into

27   court there."  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985).  The mere

28

1  "[f]oreseeability of causing *injury* in another State . . . is not a 'sufficient benchmark' for

2  exercising personal jurisdiction."  *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 270

3  (9th Cir. 1995) (quoting *Burger King Corp.*, 471 U.S. at 474); *see J. McIntyre Mach., Ltd. v.*

4  *Nicastro*, 131 S. Ct. 2780, 2788 (2011) ("The defendant's transmission of goods permits the

5  exercise of jurisdiction only where the defendant can be said to have targeted the forum; as a

6  general rule, it is not enough that the defendant might have predicted that its goods will reach the

7  forum State.").  To establish personal jurisdiction over a foreign defendant for that foreign

8  defendant's foreign conduct, the Complaints must allege that BMCC "(1) committed an

9  intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows

10  is likely to be suffered in the forum state."  *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d

11  1218, 1228 (9th Cir. 2011); *see Calder v. Jones*, 465 U.S. 783 (1984).

12      Where the motion to dismiss for lack of personal jurisdiction is based on written

13  materials instead of an evidentiary hearing, the plaintiff must "make a prima facie showing of

14  jurisdiction to avoid the defendant's motion to dismiss."  *Harris Rutsky & Co. Ins. Servs. v. Bell*

15  *& Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003) (quoting *Doe v. Unocal Corp.*, 248 F.3d

16  915, 922 (9th Cir. 2001)).[15]  The plaintiff "cannot 'simply rest on the bare allegations of its

17  complaint.'"  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004)

18  (quoting *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977)).

19          a.      *The Complaints' allegations of purposeful availment are impermissibly*

20                  *conclusory, inadequate, and contradicted by declaration testimony.*

21      First, the Jurisdictional Boilerplate, made identically as to all 30-plus defendants, fails to

22  allege facts that, if true, would establish purposeful availment by BMCC.  Purposeful availment

23  is a legal conclusion, not a factual allegation.  *See Burger King Corp. v. Rudzewicz*, 471 U.S.

24  462, 475 (1985) (requiring allegation of "some *act* by which the defendant purposefully avails

25  itself of the privilege of conducting activities within the forum State.")  "[T]he tenet that a court

---

27  [15]  If the district court exercises its discretion to hold a preliminary hearing on the issue of personal jurisdiction,
28  the "plaintiff must establish the jurisdictional facts by a preponderance of the evidence, just as he would have
   to do at trial."  *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977).

must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court is not required to accept these legal conclusions from the Jurisdictional Boilerplate when contradicted by specific declaration evidence to the contrary. The Jurisdictional Boilerplate's allegations that BMCC manufactured, marketed, sold and/or distributed CRTs in the United States, and purposefully availed itself of the United States, Costco Compl. ¶ 33; Target Compl. ¶ 38; Best Buy Compl. ¶ 44; Sears Compl. ¶ 40; Tech Data Compl. ¶ 46, is contradicted by declaration evidence. That evidence establishes that BMCC had its principal place of business in China, Kinoshita Decl. ¶ 7, never manufactured CRTs outside China, *id.* ¶ 9; was never registered or licensed to do business in the United States, *id.* ¶ 11; never held property in the United States, *id.* ¶ 12; never operated offices, plants or warehouses in the United States, *id.* ¶ 14; never had a shipping address, phone listing or bank account in the United States, *id.* ¶ 15; never paid property or income taxes in the United States, *id.* ¶ 16; never had employees located in the United States, *id.* ¶ 17; never solicited business from the United States and its only website was in Chinese, *id.* ¶ 18; never had a registered agent for service of process in the United States, *id.* ¶ 19; never maintained inventory in the United States,  *id.* ¶ 20; never sold CDT into the United States, *id.* ¶ 22; never sold CPTs in the United States, *id.* ¶ 23; and the majority of BMCC's CRTs were shipped and sold to customers in China, *id.* ¶ 21. For personal jurisdiction purposes, a court "may not assume the truth of allegations in a pleading which are contradicted by affidavit." *Alexander v. Circus Circus Enters., Inc.*, 972 F.2d 261, 262 (9th Cir.1992) (quoting *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1289, 1284 (9th Cir. 1977)).

The China Meeting Allegations in the Complaints mention BMCC, but fail to suggest how BMCC's attendance at meetings, in China, with other Chinese manufacturers could constitute BMCC purposefully availing itself of the "privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp.*, 471 U.S. at 475. The China Meeting Allegations fail to allege any facts to support the weakest inference that BMCC purposefully availed itself of the United States.

The Affiliate Sales Allegations in the Complaints also fail to allege purposeful availment. The Kinoshita Declaration makes clear that Panasonic purchased CPTs in China from BMCC. Kinoshita Decl. ¶ 23. Panasonic determined the volume of those purchases, where those CPTs were subsequently shipped, and the price at which they were sold. *Id.* Plaintiffs may not satisfy their burden of showing purposeful availment through allegations that third parties purchased CPTs from BMCC in China and may have brought them to, or incorporated them into products sold in, the United States. The purposeful availment requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of . . . the 'unilateral activity of another party or a third person.'" *Burger King Corp.*, 471 U.S. at 475 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984)). Rather, jurisdiction is proper "where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State." *Id.* (quoting *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)). A court may not exercise personal jurisdiction over a foreign supplier in a price-fixing case if any alleged price-fixing occurred after the product left the supplier's control, absent a showing that the supplier, in fact, retained control over product pricing. *In re Chocolate Confectionary Antitrust Litig.*, 674 F. Supp. 2d 580, 604 (M.D. Pa. 2009). Further, the manufacture of products abroad by a foreign entity and transfer of those products to an entity that sells them into the United States does not raise an inference that the foreign entity influenced the post-transfer pricing of the products. *Id.*[16]

The Complaints allege far less extensive contacts by BMCC than were alleged against Hynix Semiconductor, Inc. (HSI), a foreign manufacturer that was dismissed from the DRAM case for lack of personal jurisdiction. *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. C-02-1486, 2005 U.S. Dist. LEXIS 30299 (N.D. Cal. Nov. 7, 2005). Even though the complaint alleged that HSI manufactured DRAM and sold it to HSA, its U.S. subsidiary, the DRAM Court dismissed the foreign parent after finding that:

---

[16] *See also Patent Incentives, Inc. v. Seiko Epson Corp.*, No. Civ. A. 88–1407, 1988 WL 92460, at *5 (D.N.J. Sept. 6, 1988) (declining to exercise specific jurisdiction in a patent infringement action over a foreign manufacturer who sold its products to its U.S. subsidiary because the manufacturer's mere importation of products was unrelated to the plaintiff's claim).

1

2

3

4

> [HSI] has not manufactured DRAM, or any other product, in any of those states, nor has it operated any offices, plants, or warehouses there. It has not delivered, distributed or sold DRAM to any customers in those states. HSI has not advertised any product or otherwise solicited business there, nor has it employed representatives or sales agents there. HSI does not maintain a shipping address, telephone listing, or bank accounts there, and has not paid income or property taxes in the those states. HSI has no designated agent for service of process there.

5   *Id.* at *10.  The facts here weigh even more heavily against personal jurisdiction than for HSI.

6   Unlike HSI, BMCC never sold any CRTs into the United States; Kinoshita Decl. ¶¶ 22-23, and

7   certainly did not set up a subsidiary to allow it to do so.  *Id.* ¶ 8.  Certain Panasonic entities

8   purchased a limited number of CPTs from BMCC in China,[17] which Panasonic unilaterally may

9   have decided to bring into the United States as CPTs or finished products.  For all such orders,

10  Panasonic determined the volume and price of such sales.  *Id.* ¶ 23.  Such sales by BMCC are not

11  forum-related conduct by BMCC that could give rise to Plaintiffs' claims.  *See In re Chocolate*

12  *Confectionary Antitrust Litig.*, 674 F. Supp. 2d at 604 ("A plaintiff cannot hold a manufacturer

13  liable for a price-fixing harm occurring after the product left the manufacturer's hands absent a

14  showing that the manufacturer retained control over product pricing.").

15              *b.*   *Declaration evidence establishes that BMCC did not purposefully avail itself*

16                    *of the United States*

17              Evidence properly before this Court establishes that BMCC did not purposefully direct

18  any activities at the United States.  The Kinoshita Declaration establishes that BMCC lacks many

19  traditional indicia of personal jurisdiction, Kinoshita Decl. ¶¶ 6-24, and forecloses the possibility

20  that BMCC "purposefully availed itself of the privilege of conducting activities [in any state],

21  thus invoking the benefits and protections of its laws."  *Goodyear Dunlop Tires Operations, S.A.*

22  *v. Brown*, 131 S. Ct. 2846, 2854 (2011) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

23  In the absence of contrary evidence that would support such a conclusion, the motion to dismiss

24  must be granted.

25

26

27

28

[17]    BMCC relinquished control of these CPTs in China and was not responsible for their ultimate delivery to the United States or elsewhere.  Kinoshita Decl. ¶ 23.

1

       **2.**     ***The Complaints Fail to Allege, and Plaintiffs Cannot Demonstrate, That***

2

            ***BMCC Purposefully Directed or Expressly Aimed Injurious Activity at the***

3

            ***United States***

4

       The Complaints also must allege that BMCC expressly aimed injurious conduct at the

5

United States, namely that BMCC engaged in price-fixing or output agreements directed at the

6

United States.  *See Calder v. Jones*, 465 U.S. 783, 789 (1984); *Schwarzenegger v. Fred Martin*

7

*Motor Co.*, 374 F.3d 797, 806-07 (9th Cir. 2004).  They do not.  In order for a federal court

8

properly to exercise specific jurisdiction, the United States must have been "*the* focal point" of

9

the tort committed by BMCC and the "brunt of the harm" must have been felt in the United

10

States.  *See Calder*, 465 U.S. at 789 (emphasis added); *see also In re Dynamic Random Access*

11

*Memory (DRAM) Antitrust Litig.*, No. C-02-1486, 2005 U.S. Dist. LEXIS 30299, at *19 (N.D.

12

Cal. Nov. 7, 2005) (finding indirect purchasers failed to show that foreign defendants expressly

13

aimed their alleged price-fixing conspiracy at the forum, as the "plaintiffs fail[ed] to allege that

14

defendants' conspiratorial acts were individually targeted towards any plaintiff whom defendants

15

knew to be residents" of the forum).  *Cf. Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 560 (9th

16

Cir. 1995) ("A defendant's awareness that the stream of commerce may or will sweep the

17

product into the forum State does not convert the mere act of placing the product into the stream

18

into an act purposefully directed toward the forum State." (quoting *Asahi Metal Indus. Co. v.*

19

*Super. Ct.*, 480 U.S. 102, 112 (1987))).

20

       The Jurisdictional Boilerplate fails to allege any tortious conduct by BMCC, even less

21

conduct that was expressly aimed at the United States.  The Jurisdictional Boilerplate fails to

22

identify any act by BMCC that both violates the antitrust laws and is aimed at the United States.

23

       The China Meeting Allegations fail to allege that BMCC's presence at meetings in China

24

resulted in any sort of agreement aimed or targeted at the United States.  There is simply no

25

mention of the United States or explication of how meetings attended by Chinese CRT

26

manufacturers in China resulted in conduct expressly aimed at the United States.  The

27

28

1   Complaints' dearth of factual allegations as to BMCC require the Court to take a "Butterfly

2   Effect"[18] view of purposeful direction.  It should not.

3           The Affiliate Allegations and the Kinoshita Declaration together establish that BMCC did

4   not direct injurious conduct at the United States.  Not only do the Affiliate Allegations fail to

5   allege facts from which the Court could conclude that BMCC directed conduct at the United

6   States, the Kinoshita Declaration establishes that BMCC did not control where CPTs sold to

7   Panasonic in China by BMCC would be shipped or sold, and that Panasonic determined the

8   volume and price of CPTs sold to Panasonic entities.  Kinoshita Decl. ¶ 23.  Because BMCC did

9   not control output or sales price for these CPT sales, they provide no support for Plaintiffs'

10  allegations that BMCC participated in output restrictions or price-fixing agreements directed at

11  the United States.  As previously discussed, the "unilateral activity of those who claim some

12  relationship with a nonresident defendant cannot satisfy the requirement of contact with the

13  forum State" for the purpose of establishing jurisdiction over the nonresident defendant.  *Burger*

14  *King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (quoting *Hanson v. Denckla*, 357 U.S. 235,

15  253 (1958)).  Evidence that third parties, not BMCC, determined where CRTs purchased from

16  BMCC would be shipped, prevents any inference that BMCC directed conduct at the United

17  States.  *See In re Chocolate Confectionary Antitrust Litig.*, 674 F. Supp. 2d 580, 594 (M.D. Pa.

18  2009).

19              **3.    *The Exercise of Personal Jurisdiction Here Would Be Unreasonable***

20          The Court also must refuse to exercise personal jurisdiction if the assertion of personal

21  jurisdiction would not be reasonable and fair.  *Asahi Metal Indus. Co. v. Super. Ct.*, 480 U.S.

22  102, 113 (1987) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  The exercise

23  of personal jurisdiction over BMCC is not reasonable because BMCC had no fair warning that it

24  might be subject to a lawsuit of this nature in the United States.  *See World-Wide Volkswagen*

25  *Corp. v. Woodson*, 444 U.S. 286, 297 (1980); *Shaffer v. Heitner*, 433 U.S. 186, 218 (1977)

26

27  [18]   *See* James Gleick, *Chaos: Making a New Science* 8 (1987) (discussing the parable of the flapping of a
        butterfly's wings that creates a minor air current in China, that adds to the accumulative effect in global wind
28      systems, that ends with a hurricane in the Caribbean).

1   (Stevens, J., concurring).  Plaintiffs fail to allege, and cannot demonstrate, that BMCC, a

2   company with no offices outside of Beijing, had fair warning that it might be hauled into a U.S.

3   court.

4           The exercise of personal jurisdiction over BMCC would not be reasonable given the

5   burden BMCC would have to bear to defend itself, its lack of contacts with the United States, its

6   limited involvement in the allegations of the case, and the existing Defendants' joint and several

7   liability.  Indeed, the Court in *DRAM* specifically stated that even if the other requirements for

8   personal jurisdiction were satisfied,

9           the court would find that the exercise of jurisdiction over defendants here would
            be unreasonable. Given the lack of defendants' minimum contacts with the forum
10          states, the majority of defendants' status as foreign corporations (and the
            corresponding hardship to defendants in litigating the underlying actions), and the
11          continuation of the underlying suit as to all other defendants in the underlying
            cases, the balance of factors weighs in favor of a finding that personal jurisdiction
12          is not reasonable in this instance.

13  *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. C-02-1486, 2005 U.S. Dist.

14  LEXIS 30299, at *26-27 (N.D. Cal. Nov. 7, 2005).  The same reasoning applies here with equal

15  force and effect.  BMCC lacks contacts with the United States, it is a foreign Defendant, and the

16  action will continue against all other Defendants who are jointly and severally liable for all harm,

17  if any, caused by the alleged conspiracy.

18          Courts must balance several factors to determine the reasonableness of the exercise of

19  jurisdiction:

20          (1) The extent of the defendant's purposeful interjection into the forum
            state's affairs; (2) the burden on the defendant of defending in the forum;
21          (3) the extent of conflict with the sovereignty of the defendants' state; (4)
            the forum state's interest in adjudicating the dispute; (5) the most efficient
22          judicial resolution of the controversy; (6) the importance of the forum to
            the plaintiff's interest in convenient and effective relief; and (7) the
23          existence of an alternative forum.

24  *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 561 (9th Cir. 1995).  Each of these factors

25  establishes that it is unreasonable to exercise personal jurisdiction over BMCC.

26

27

28

1    First, as discussed above, the Jurisdictional Boilerplate, the China Meeting Allegations,

2    and the Chine Sales Allegations fail to plausibly allege that BMCC purposefully interjected itself

3    into U.S. affairs.  Indeed, the Kinoshita Declaration demonstrates the opposite.

4    Second, the burden on the defendant, which is the most important factor, *id.* ("the law of

5    personal jurisdiction is asymmetrical and is primarily concerned with defendant's burden"),

6    weighs heavily against the exercise of personal jurisdiction.  BMCC is a Chinese company that

7    does not have and did not have any presence in the United States.  Having ceased manufacturing

8    operations in 2009, BMCC should not be required to assume the unreasonable burden of

9    defending complex, fact-intensive antitrust litigation in the United States.  Courts should be

10   "unwilling[] to find the serious burdens on an alien defendant outweighed by minimal interests

11   on the part of the plaintiff or the forum State." *Asahi Metal Indus. Co. v. Super. Ct.*, 480 U.S.

12   102, 115 (1987).

13   Third, where, as here, the defendant is from a foreign nation, the high barrier of the

14   sovereignty of that foreign nation tends to undermine the reasonableness of exercising personal

15   jurisdiction in the forum.  *See Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*,

16   284 F.3d 1114, 1126 (9th Cir. 2002).  The Complaints establish little more than that BMCC is a

17   Chinese company that acted within China.

18   Fourth, although the United States may have an interest in adjudicating claims as to other

19   Defendants, the Complaints fail to allege any facts that suggest that the federal courts have any

20   significant interest in adjudicating claims against BMCC.  "Where, as here, the defendant is from

21   a foreign nation rather than another state, the sovereignty barrier is high and undermines the

22   reasonableness of personal jurisdiction." *Amoco Egypt Oil Co. v. Leonis Navigation Co.*, 1 F.3d

23   848, 852 (9th Cir. 1993).

24   Fifth and sixth, adjudication against BMCC in the forum is not necessary to grant the

25   Plaintiffs complete relief because all of the Defendants are jointly and severally liable for any

26   alleged harm resulting from any alleged overcharge on the part of BMCC.  *In re Dynamic*

27   *Random Access Memory (DRAM) Antitrust Litig.*, No. C-02-1486, 2005 U.S. Dist. LEXIS 30299

28

1   (N.D. Cal. Nov. 7, 2005) at *27 (N.D. Cal. Nov. 7, 2005) (concluding that exercise of

2   jurisdiction over foreign corporations lacking minimum contacts with forum would be

3   unreasonable given hardship to defendants and continuation of underlying suit against other

4   defendants).  With respect to the possibility of injunctive relief against BMCC, such relief would

5   be merely symbolic because the Complaints themselves state the alleged conduct ended nearly

6   six years ago, and, further, BMCC ceased manufacture of CDTs and CPTs.  Kinoshita Decl.

7   ¶ 10.

8        Seventh, although Plaintiffs' allegations do not support any private damages claims

9   against BMCC in any forum, BMCC's sole locus of activity within China, Kinoshita Decl. ¶¶ 7,

10   21, suggests that Plaintiffs could pursue their claims in China where private antitrust actions are

11   permitted and where a judgment obtained against BMCC from any court would need to be

12   enforced.

13        **F.     Any Request for Jurisdictional Discovery Should Be Denied**

14        In the absence of any factual allegations in the Complaints that, if true, would establish

15   personal jurisdiction, any motion for jurisdictional discovery should be denied.  "Where a

16   plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare

17   allegations in the face of specific denials made by the defendants, the Court need not permit even

18   limited discovery."  *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1160 (9th Cir. 2006) (quoting

19   *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 562 (9th Cir. 1995)).  Denial of a motion for

20   jurisdictional discovery is likewise appropriate if "it is clear that further discovery would not

21   demonstrate facts sufficient to constitute a basis for jurisdiction."  *Laub v. U.S. Dep't of Interior*,

22   342 F.3d 1080, 1093 (9th Cir. 2003).  In the absence of a verified complaint alleging facts that, if

23   true, would meet their burden of pleading personal jurisdiction, Plaintiffs should not be permitted

24   to go on a jurisdictional discovery fishing expedition.  In preparing the opposition to this Motion,

25   Plaintiffs have access to the full evidentiary record in this case, pending since 2007.  If Plaintiffs

26   cannot successfully allege facts required to meet their burden of pleading on that available

27   record, there is no reasonable basis to permit discovery from BMCC.

28

1  **II.     Complaints That Have Been Served Pursuant to the Court's Order Must Be**

2  **Dismissed for Ineffective Service of Process**

3  The Best Buy, Costco, Sears, and Target complaints were served solely on Freshfields

4  Bruckhaus Deringer US LLP in Washington, DC, pursuant to the Court's June 27, 2012 order

5  (Dkt. 1239).  BMCC respectfully submits that these complaints must be dismissed for ineffective

6  service of process with respect to BMCC, as (1) inconsistent with the Ninth Circuit's opinion in

7  *Rio Properties, Inc. v. Rio International Interlink*, 284 F.3d 1007 (9th Cir. 2002), and contrary to

8  either the Federal Rules or the Convention on the Service Abroad of Judicial and Extrajudicial

9  Documents in Civil or Commercial Matters ("Hague Convention"), and (2) a violation of

10  BMCC's due process rights.  Further, particularly where DAPs have chosen to file claims against

11  a Chinese company that has no assets outside of China and, as discussed *supra*, that is not

12  subject to the jurisdiction of this court, reliance on notice, rather than formal service of process,

13  may weaken this Court's assertion of personal jurisdiction over BMCC.

14  **A.     As Described in the Ninth Circuit's *Rio* Opinion, the Court's Order is**

15  **Contrary to Rule 4(f) or Contrary to International Agreement**

16  In *Rio Properties, Inc. v. Rio International Interlink*, 284 F.3d 1007 (9th Cir. 2002), the

17  Ninth Circuit affirmed the district court's decision to allow service by email and on U.S. counsel,

18  in order to effect service on a defendant in Costa Rica.  In that decision, the Ninth Circuit

19  explicitly precludes service of process under Rule 4(f)(3) in countries that are members of the

20  Hague Convention, writing "[a] federal court would be prohibited from issuing a Rule 4(f)(3)

21  order in contravention of an international agreement, including the Hague Convention referenced

22  in Rule 4(f)(1).  The parties agree, however, that the Hague Convention does not apply in this

23  case because Costa Rica is not a signatory."  *Id.* at 1015 n.4.  There is no doubt that China is a

24  signatory to the Hague Convention and that the Ninth Circuit's *Rio* decision contemplates that

25  service of process on a Chinese defendant pursuant to Rule 4(f)(3) would, therefore, not be

26

27

28

1  permitted.[19]  The *Rio* court's interpretation is the only interpretation consistent with the text of

2  Rule 4(f).

3           **1.**    *If the Order Effects Service in the United States, it is Contrary to Rule 4(f)*

4          The Court's order on service is contrary to the plain text of Rule 4(f), which contemplates

5  certain forms of foreign service, but only outside judicial districts of the United States.  Rule 4(f)

6  states "[u]nless federal law provides otherwise, an individual—other than a minor, an

7  incompetent person, or a person whose waiver has been filed—may be served at *a place not*

8  *within any judicial district of the United States*," Fed. R. Civ. P. 4(f)(3) (emphasis added) and

9  then specifies three options.  Contrary to the plain text of Rule 4(f), this Court's order requires

10  DAPs to serve BMCC at the offices of its counsel in Washington, DC, which is within a judicial

11  district of the United States.  If the Court's order causes service of process to be effected within a

12  judicial district of the United States, it is, therefore, contrary to Rule 4(f).  To read part (3) of

13  Rule 4(f) without crediting the requirement from Rule 4(f) that service be made at a "*place not*

14  *within any judicial district of the United States*," impermissibly interprets provision (f)(3) in a

15  way that is inconsistent with the structure of the rule.  *Eli Lilly & Co. v. Medtronic*, 496 U.S. 661

16  (1990) (requiring court to avoid interpreting a provision in a way that is inconsistent with the

17  structure of the statute.)

18           **2.**    *If the Order Effects Service in China, it is Contrary to International Agreement*

19          Having established, *supra*, that the Court's order may not effect service in a judicial

20  district of the United States, DAPs cannot argue that the Court's order effects service in China

21  because such service would be contrary to the Hague Convention.  The People's Republic of

22  China (the "PRC") acceded to the Hague Convention on May 6, 1991, and the Convention's

23  provisions entered into force on January 1, 1992.  *See* Convention on the Service Abroad of

24  Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T.

25  361, T.I.A.S. 6638, 658 U.N.T.S. 163, at n.3a.

26

27

28      [19]    BMCC incorporates by reference Defendant Chunghwa's arguments made in its opposition to the DAP motion made at III.A & B, Dkt. 1172.

1    Consistent with its rights as a signatory of the Hague Convention, in its accession

2  reservations, China determined that service can only be effected in China through the Chinese

3  Central Authority ("Central Authority"), located at China's Bureau of International Judicial

4  Assistance, Ministry of Justice, in Beijing, China.  *Id.*  China, however, has objected to Article

5  10 of the Convention, which provides for service through postal channels or other informal

6  means.  *Id.* at n.3a(3) (China "oppose[s] the service of documents in the territory of the People's

7  Republic of China by the methods provided in Article 10 of the Convention.")  The Hague

8  Convention is, therefore, the only means of effecting service of process on BMCC in China.

9  Because "[c]ompliance with the [Hague] Convention is mandatory in all cases to which it

10 applies," *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 705 (1988), the DAPs

11 have no choice but to effect service in China through that process.  The Court's order is in error

12 both because it contradicts clear dicta in the Ninth Circuit's *Rio* decision and is inconsistent with

13 either the text of Rule 4(f)(3) or violates the Hague Convention.

### 3.    The Precedent Relied Upon by the Court's Prior Orders Does Not Support Service of Process on Counsel of a Foreign Defendant

16   The binding precedent relied upon in this Court's earlier orders, Dkt. 374, 1241, do not

17 support service on BMCC's counsel in Washington, DC.  First, in *Volkswagenwerk*, service of

18 process on the domestic subsidiary was authorized after the Illinois state court made factual

19 determinations that, effectively, pierced the corporate veil between Volkswagen of America, Inc.

20 ("VWOA") and Volkswagenwerk Aktiengesellschaft and made VWOA involuntary agent for

21 service of process.  *Schlunk v. Volkswagenwerk Aktiengesellschaft*, 503 N.E.2d 1045, 1123

22 (1986).  No such allegations have been made here or could be made here, as BMCC does not

23 have any subsidiaries in the United States.  Kinoshita Decl. ¶ 8.  Second, in *Rio*, the Ninth

24 Circuit authorized service of process on the defendant and its attorney but observed that such

25 service would not be permissible if Costa Rica were a member of the Hague Convention.  *Rio*

26 *Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015 n.4 (9th Cir. 2002).

27

28

1

2

3

    **B.**    **The Court's Service of Process Order Would Deprive BMCC of Due Process Rights and Operate to Deprive This Court of Personal Jurisdiction Over BMCC**

4

5

6

7

8

9

10

    The Court's reliance on "actual notice" in prior rulings is not appropriate where the defendant may not be subject to the personal jurisdiction of the Court.  Indeed, if actual notice is all that is required, large portions of Rule 4 could be discarded impermissibly upon a showing of actual notice.  *See, e.g.*, *Kungys v. United States*, 485 U.S. 759 (1988) (rejecting interpretation of a statute in a way that would render other provisions of the Act superfluous or unnecessary).  Rule 4 has not been set aside because service of process is integral to the protection of a defendant's right to oppose personal jurisdiction.

11

12

13

14

15

16

17

18

19

20

21

    Further, it is well established that actual notice does not suffice to serve the interests of due process when a defendant has not been served.  *See Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987) ("Before a federal court may exercise personal jurisdiction over a defendant . . . there must be more than notice to the defendant . . . ."); *Jackson v. Hayakawa*, 682 F.2d 1344, 1347 (9th Cir. 1982) (holding that actual notice does not subject defendants to personal jurisdiction absent proper service).  Allowing claimants to bypass formal process without first making a showing that the defendant's due process rights are met collapses Rule 4 into a mere notice provision.  *See Omni Capital Int'l*, 484 U.S. at 104 (explaining that "there must be more than notice to the defendant"—"the procedural requirement of service of summons must be satisfied").  Where, as is the case here, there is a motion to dismiss for lack of personal jurisdiction, mere notice cannot satisfy the DAP's service of process burden.

22

<u>**CONCLUSION**</u>

23

24

25

    For the foregoing reasons, all Complaints should be dismissed because the Court lacks personal jurisdiction over BMCC, and the Best Buy, Costco, Sears, and Target Complaints should be dismissed under Rule 12(b)(2) as contrary to Rule 4(f)(3).

26

27

28

| | |
|---|---|
| 1 | Dated: November 4, 2013 | Respectfully submitted, |
| 2 | | Freshfields Bruckhaus Deringer US LLP |
| 3 | | |
| 4 | | By: /s/ Richard Snyder |
| 5 | | Terry Calvani (53260)<br>Richard Snyder (*pro hac vice*) |
| 6 | | 701 Pennsylvania Avenue, NW, Ste 600<br>Washington, DC  20004 |
| 7 | | Tel:  (202) 777-4500<br>Fax:  (202) 777-4555 |
| 8 | | ***Counsel to Defendant Beijing*** |
| 9 | | ***Matsushita Color CRT Co., Ltd.*** |

1 | Dated: November 4, 2013

Respectfully submitted,

Freshfields Bruckhaus Deringer US LLP

By: /s/ Richard Snyder
Terry Calvani (53260)
Richard Snyder (*pro hac vice*)
701 Pennsylvania Avenue, NW, Ste 600
Washington, DC  20004
Tel:  (202) 777-4500
Fax:  (202) 777-4555

***Counsel to Defendant Beijing***
***Matsushita Color CRT Co., Ltd.***

1

## CERTIFICATE OF SERVICE

2       I, Richard Snyder, declare that I am over the age of eighteen (18) and not a party to the

3   within action.  I am an associate with the law firm of Freshfields Bruckhaus Deringer US LLP,

4   701 Pennsylvania Avenue, NW, Suite 600, Washington, DC 20004.

5       On November 4, 2013, I caused a copy of the foregoing **DEFENDANT BEIJING**

6   **MATSUSHITA COLOR CRT CO., LTD.'S NOTICE OF MOTION AND MOTION TO**

7   **DISMISS CERTAIN DIRECT ACTION PURCHASER COMPLAINTS** to be electronically

8   filed and served via the Official Court Electronic Document Filing System, which served copies

9   on all parties registered for electronic filing.

10  Dated:  November 4, 2013                Freshfields Bruckhaus Deringer US LLP

11                                          By:  /s/ Richard Snyder
                                               Richard Snyder (*pro hac vice*)
12                                             Freshfields Bruckhaus Deringer US LLP
                                               Email: rich.snyder@freshfields.com
13                                             701 Pennsylvania Avenue NW, Suite 600
                                               Washington, DC  20004
14                                             Tel: (202) 777-4565
                                               Fax: (202) 777-4555
15
                                            ***Counsel to Defendant Beijing***
16                                          ***Matsushita Color CRT Co., Ltd.***

17

18

19

20

21

22

23

24

25

26

27

28