SHEPPARD MULLIN RICHTER & HAMPTON LLP
   A Limited Liability Partnership
   Including Professional Corporations
GARY L. HALLING, Cal. Bar No. 66087
JAMES L. McGINNIS, Cal. Bar No. 95788
MICHAEL W. SCARBOROUGH, Cal. Bar No. 203524
TYLER M. CUNNINGHAM, Cal. Bar No. 243694
Four Embarcadero Center, 17th Floor
San Francisco, California  94111-4106
Telephone:     415-434-9100
Facsimile:     415-434-3947
E-mail:        ghalling@sheppardmullin.com
               jmcginnis@sheppardmullin.com
               mscarborough@sheppardmullin.com
               tcunningham@sheppardmullin.com

Attorneys for Defendants
SAMSUNG SDI AMERICA, INC.,
SAMSUNG SDI CO., LTD.,
SAMSUNG SDI (MALAYSIA) SDN. BHD.,
SAMSUNG SDI MEXICO S.A. DE C.V.,
SAMSUNG SDI BRASIL LTDA.,
SHENZHEN SAMSUNG SDI CO., LTD. and
TIANJIN SAMSUNG SDI CO., LTD.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Case No. 07-5944 SC |
| | MDL No. 1917 |
| This Document Relates to: | **SAMSUNG SDI DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS CLAIMS ALLEGED IN COSTCO'S FIRST AMENDED COMPLAINT** |
| *Costco Wholesale Corp. v. Hitachi, Ltd., et al.*, No. 11-cv-06397 | Date:    December 20, 2013<br>Time:    10 a.m.<br>Ctrm:    1<br>Judge:   Hon. Samuel P. Conti |

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................. 2

II.     BACKGROUND AND ALLEGATIONS OF THE COMPLAINT ..................... 3

III.    ARGUMENT ....................................................................................................... 5

    A.   Costco's State-Law Claims Against SDI Are Barred By The Applicable Statutes Of Limitation. ............................................................................... 5

        1.   The Court may properly dismiss claims pursuant to Rule 12(b)(6) when the complaint reveals the claims to be barred by the applicable statutes of limitation. ..................................................................... 5

        2.   Costco's state-law claims against SDI are time-barred because they were commenced more than four years after any such claim accrued. .......... 6

        3.   Costco's time-barred state-law claims cannot be saved by allegations of fraudulent concealment or any tolling doctrine. ..................... 7

            a.   Fraudulent Concealment ................................................. 7

            b.   Government Action Tolling ........................................... 10

            c.   Class-Action Tolling .................................................... 11

    B.   Costco's State-Law Claims Against SDI Are Also Barred Because Costco Cannot Show That Those States Have a More Significant Relationship With Its Claims Than Washington, And Choice-Of-Law Principles Therefore Favor Washington Law. ....................................................................... 13

IV.    CONCLUSION ................................................................................................. 19

-i-

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

<u>FEDERAL CASES</u>

4
*Advanced Micro Devices, Inc. v. Intel Corp.*
   No. C 91-20541 JW, 1991 U.S. Dist. LEXIS 21036 (N.D. Cal. Dec. 17, 1991) ...................... 7

5
*Allen v. United Fin. Mortg. Corp.*
6
   No. 09-2507 SC, 2010 WL 1135787 (N.D. Cal. Mar. 22, 2010) ............................................ 7

7
*American Pipe & Construction Co. v. Utah*
8
   414 U.S. 538 (1974) ........................................................................................... 11, 12

9
*Carideo v. Dell, Inc.*
   706 F. Supp. 2d 1122 (W.D. Wa. 2010) ............................................................ 13, 14

10
*Centaur Classic Convertible Arbitrage Fund Ltd. v. Countrywide Financial Corp.*
11
   878 F. Supp. 2d 1009 (C.D. Cal. 2011) ....................................................................... 12

12
*Clemens v. DaimlerChrysler Corp.*
   534 F.3d 1017 (9th Cir. 2008) ................................................................................... 12
13

14
*Crowe v. Wiltel Comm. Sys.*
   103 F.3d 897 (9th Cir. 1996) ....................................................................................... 5

15
*Crown, Cork & Seal Co., Inc. v. Parker*
16
   462 U.S. 345 (1983) ................................................................................................. 11

17
*Downing v. Abercrombie & Fitch*
   265 F.3d 994 (9th Cir. 2001) ..................................................................................... 13
18

19
*E.W. French & Sons v. General Portland, Inc.*
   885 F.2d 1392 (9th Cir. 1989) ..................................................................................... 6

20
*Ferens v. John Deere Co.*
21
   494 U.S. 516 (1990) ................................................................................................. 14

22
*In re GPU Antitrust Litig.*
   527 F. Supp. 2d 1011 (N.D. Cal. 2007) ............................................................... 13, 15
23

24
*Guaranty Trust Co. of New York v. York*
   326 U.S. 99 (1945) ................................................................................................. 5, 6

25
*Hanson v. Shell Oil Co.*
26
   541 F.2d 1352 (9th Cir. 1976) ..................................................................................... 6

27
*Hinton v. Pacific Enterprises*
   5 F.3d 391 (9th Cir. 1993) ........................................................................................... 7

28

-ii-

*Illinois Brick Co. v. Illinois*
    431 U.S. 720 (1977) ........................................................................................................ 4

*Jablon v. Dean Witter & Co.*
    614 F.2d 677 (9th Cir. 1980) ..................................................................................... 5, 7

*Nashville Milk Co. v. Carnation Co.*
    355 U.S. 373 (1958) ...................................................................................................... 10

*Newport v. Dell, Inc.*
    No. CV-08-0096-TUC-CKJ(JCG), 2008 WL 4347311 (D. Ariz. Aug. 21, 2008)................ 12

*Paulsen v. CNF, Inc.*
    559 F.3d 1061 (9th Cir. 2009) ...................................................................................... 13

*In re Petroleum Prods. Antitrust Litig.*
    782 F. Supp. 481 (C.D. Cal. 1991)................................................................................ 10

*Pool Water Prods. v. Olin Corp.*
    258 F.3d 1024 (9th Cir. 2001) ...................................................................................... 10

*Raie v. Cheminova, Inc.*
    336 F.3d 1278 (11th Cir. 2003) .................................................................................... 11

*In re Rezulin Prods. Liability Litig.*
    No. 00-2843, 2006 WL 695253 (S.D.N.Y. Mar. 15, 2006) ........................................... 11, 12

*Technical Packaging, Inc. v. UCB Films, Inc.*
    No. 8:03-cv-714-T-30TBM, 2004 WL 5639769 (N.D. Fla. Dec. 21, 2004) ........................ 8

*In re TFT-LCD (Flat Panel) Antitrust Litig.*
    M 07-1827 SI, 2011 WL 3809767 (N.D. Cal. Aug. 29, 2011) ("*Costco LCD I*")............ 17, 18

*In re TFT-LCD (Flat Panel) Antitrust Litig.*
    M 07-1827 SI, 2011 WL 5922966 (N.D. Cal. Nov. 28, 2011) ("*Costco LCD II*")........... 17, 18

*In re TFT-LCD (Flat Panel) Antitrust Litig.*
    M 07-1827 SI, 2012 WL 3155693 (N.D. Cal. Aug. 2, 2012) .......................................... 11

*Van Dusen v. Barrack*
    376 U.S. 612 (1964) ...................................................................................................... 14

*In re: Vertrue Mktg. & Sales Practices Litig.*
    712 F. Supp. 2d 703 (N.D. Ohio 2010) .................................................................... 11, 12

*In re Vioxx Prod. Liab. Litig.*
    522 F. Supp. 2d 799 (E.D. La. 2007) .......................................................................... 14

*In re Vitamins Antitrust Litig.*
    183 Fed. App'x 1 (D.C. Cir. 2006) ........................................................ 12

*Wade v. Danek Medical, Inc.*
    182 F.3d 281 (4th Cir. 1999) .............................................................. 12

*Weisbuch v. County of Los Angeles*
    119 F.3d 778 (9th Cir. 1997) ................................................................ 5

*Williams v. Boeing Co.*
    517 F.3d 1120 (9th Cir. 2008) ............................................................ 11

*Zenith Radio Corp. v. Hazeltine Research, Inc.*
    401 U.S. 321 (1971) ............................................................................ 6

*Zinser v. Accufix Research Inst., Inc.*
    253 F.3d 1180 (9th Cir. 2001) ............................................................ 15

**<u>STATE CASES</u>**

*Anderson v. Wagner*
    402 N.E.2d 560 (Ill. 1979) ................................................................... 8

*Blewett v. Abbott Labs., Inc.*
    938 P.2d 842 (Wash Ct. App. 1997) ................................................... 14

*Bunker's Glass Co. v. Pilkington PLC*
    75 P.3d 99 (Ariz. 2003) ................................................................ 14, 15

*Burnside v. Simpson Paper Co.*
    864 P.2d 937 (Wash. 1994) ......................................................... 14, 15

*Clayworth v. Pfizer, Inc.*
    233 P.3d 1066 (Cal. 2010) .................................................................. 15

*Johnson v. Spider Staging Corp.*
    555 P.2d 997 (Wash. 1976) ................................................................ 14

*Jolly v. Eli Lilly & Co.*
    751 P.2d 923 (Cal. 1988) .................................................................... 12

*Mack v. Bristol-Myers Squibb Co.*
    673 So.2d 100 (Fla. Dist. Ct. App. 1996) ........................................... 15

*Portwood v. Ford Motor Co.*
    701 N.E.2d 1102 (Ill. 1998) ............................................................... 13

*Rice v. Dow Chem. Co.*
    875 P.2d 1213 (Wash. 1994) .............................................................. 14

-iv-

*Snapp & Assoc. Ins. Serv., Inc. v. Robertson*
   117 Cal. Rptr. 2d 331 (Cal. Ct. App. 2002) ............................................................................ 8

*Taylor v. Betts*
   124 P.2d 764 (Ariz. 1942) ................................................................................................... 7, 8

*Williams v. Leone & Keeble, Inc.*
   285 P.3d 906 (Wash. Ct. App. 2012) ..................................................................................... 14

**FEDERAL: STATUTES, RULES, REGULATIONS, CONSTITUTIONAL PROVISIONS**

15 U.S.C.
   § 12 ............................................................................................................................................ 10
   § 16 ............................................................................................................................................ 10
   § 16(i) ....................................................................................................................................... 10

**STATE: STATUTES, RULES, REGULATIONS, CONSTITUTIONAL PROVISIONS**

740 Ill. Comp. Stat. § 10/7(2) ..................................................................................................... 6, 15

Ariz. Rev. Stat.
   §§ 14-1401 ................................................................................................................................ 6
   §§ 44-1410(B) ........................................................................................................................... 6

Cal. Bus. & Prof. Code
   § 16750.1 ................................................................................................................................... 6

Florida Stat.
   § 95.11(3)(f) .............................................................................................................................. 6

Fed. R. Civ. Pr.
   Rule 12(b)(6) .......................................................................................................................... 2, 5

-v-

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on December 20, 2013 at 10 a.m., or as soon thereafter as this matter may be heard, in the Courtroom of the Honorable Samuel P. Conti, Senior United States District Court Judge of the Northern District of California, located at Courtroom 1, 450 Golden Gate Avenue, San Francisco, California, defendants Samsung SDI Co., Ltd.; Samsung SDI America, Inc.; Samsung SDI Mexico S.A. De C.V.; Samsung SDI Brasil Ltda.; Shenzhen Samsung SDI Co., Ltd.; Tianjin Samsung SDI Co., Ltd.; and Samsung SDI (Malaysia) Sdn. Bhd. (collectively, "SDI") will, and hereby do, move this Court, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for an order dismissing plaintiff Costco Wholesale Corporation ("Costco")'s claims against SDI under the Arizona Antitrust Act, Ariz. Rev. Stat. §§ 44-1401, *et seq.*; the California Cartwright Act, Cal. Bus. & Prof. Code §§ 16700, *et seq.*; the Florida Deceptive and Unfair Trade Practices Act, Florida Stat. §§ 501.201, *et seq.*; and the Illinois Antitrust Act, 740 Illinois Code 10/1, *et seq.*, without leave to amend, for failure to state a claim upon which relief may be granted.

The motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities in support thereof, the concurrently filed Request for Judicial Notice ("RJN") and exhibits thereto, the pleadings and correspondence on file with the Court, and such arguments and authorities as may be presented at or before the hearing.

## STATEMENT OF THE ISSUES

1. Whether Costco's claims against SDI under state antitrust and unfair competition laws are barred by the applicable statutes of limitation.

2. Whether Costco's claims against SDI under state antitrust and unfair competition laws are barred because the choice-of-law analysis favors Washington law, and Costco's Washington claims have already been dismissed.

-1-

SAMSUNG SDI'S MOTION TO DISMISS CLAIMS ALLEGED IN
PLAINTIFF COSTCO'S FIRST AMENDED COMPLAINT

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.

3

## INTRODUCTION

4      Costco's claims against SDI under the antitrust and unfair competition laws of Arizona,

5   California, Florida and Illinois are deficient and should be dismissed pursuant to Rule 12(b)(6), for

6   two independent reasons.

7      **First**, Costco's state-law claims are barred by the applicable four-year statutes of

8   limitation.  Costco filed its Amended Complaint on October 3, 2013.  This marked the first time

9   Costco named SDI as a defendant.  The Amended Complaint alleges state-law claims against SDI

10   under the Arizona Antitrust Act, the California Cartwright Act, the Florida Deceptive and Unfair

11   Trade Practices Act and the Illinois Antitrust Act, each of which is subject to a four-year statute of

12   limitations.  Accordingly, any claim against SDI based on actions before October 3, 2009 "is

13   prima facie barred by those states' statutes of limitations."  Order Adopting in Part and Modifying

14   in Part Special Master's Report and Recommendation on Defs.' Mot. to Dismiss Direct Action

15   Pls.' Compls., at 6 (Dkt. No. 1856) ("MTD Order").  The only question is whether Costco has

16   adequately alleged facts to show that these statutes of limitation were tolled.  It has not.

17      Costco's allegations of fraudulent concealment cannot rescue its claims, because the

18   Amended Complaint itself alleges that widespread publicity of government antitrust investigations

19   in "late November 2007" alerted Costco to the existence of the alleged conspiracy.  Costco cannot

20   rely on the Court's earlier order denying the original defendants' motion to dismiss Costco's

21   claims on statute-of-limitations grounds, because those original defendants were sued on

22   November 14, 2011, but **Costco waited nearly two additional years** to name SDI as a defendant.

23   That delay is crucial to the fraudulent concealment analysis.  "[L]ate November 2007" was **less**

24   **than** four years before Costco sued the original defendants, and so Costco's admission that it was

25   notified of its claims as of that date was inconsequential to the Court's analysis of the original

26   defendants' motion to dismiss.  By contrast, "late November 2007" was **much more than four**

27   **years** before Costco sued SDI.  Costco's admission that it knew of its potential claim more than

28

-2-

1   four, and nearly six, years before suing SDI, ends the fraudulent concealment analysis.  Many

2   other public events occurred more than four years before Costco sued SDI, which also would have

3   alerted it to its potential claims, all of which are apparent on the face of the complaint.  In addition,

4   the applicable statutes of limitation were not tolled by either the related class actions or

5   government actions.

6          ***Second***, Costco's state-law claims should be dismissed because choice-of-law principles

7   require the application of Washington rather than Arizona, California, Florida or Illinois law.  The

8   Court has already dismissed Costco's claim under the Washington Consumer Protection Act,

9   because that statute forbids indirect purchasers like Costco from bringing their own action.  In an

10  attempt to evade this restriction, Costco purports to sue under the antitrust and consumer

11  protection statutes of Arizona, California, Florida and Illinois.  Under the applicable choice-of-law

12  analysis, however, the Court should apply Washington law unless Costco can show that those

13  states have a more significant relationship to Costco's claims than Washington.  Costco, a

14  Washington corporation, has already alleged that it selected its CRT vendors from its Washington

15  headquarters, received invoices containing the alleged overcharges in Washington, and that

16  Washington has a "substantial" connection to its claims.   In the *LCD* case, where Costco made

17  substantially identical allegations, Judge Illston twice concluded that Washington law should

18  govern Costco's claims, and dismissed its other state-law causes of action.  This Court should do

19  the same.

## II.

## BACKGROUND AND ALLEGATIONS OF THE COMPLAINT

22          Costco alleges a global price-fixing conspiracy among CRT suppliers.  Amend. Compl. ¶

23  1.  Costco alleges that it purchased products containing CRTs both directly from defendants and

24  indirectly.  *Id.* ¶ 10.  Costco allegedly suffered injury by paying artificially high prices for those

25  products from March 1, 1995 through November 25, 2007.  *See, e.g., id.* ¶¶ 1, 10, 13, 77.  Costco

26  originally sought relief under Section One of the Sherman Act; sections 4 and 16 of the Clayton

27  Act; and the antitrust, consumer protection and unfair trade statutes of Arizona, California,

28

-3-

Florida, Illinois and Washington.  *See* RJN Ex. A (Complaint, *Costco Wholesale Corp. v. Hitachi, Ltd.*, Case No. 2:11-cv-01909-RSM (W.D. Wash. Dkt. No. 1)) ("Original Complaint") ¶¶ 6, 174-203.  Costco seeks to recover under the Sherman Act for "direct" purchases of CRT products from defendants and entities owned or controlled by defendants, pursuant to the owned-or-controlled exception to *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977).  Costco seeks to recover under state law for indirect purchases of CRT products.  This Court dismissed Costco's claim under the Washington Consumer Protection Act, finding that the statute does not permit such indirect claims.  MTD Order, at 27.

Costco's headquarters are in Issaquah, Washington.  Amend. Compl. ¶ 11.  Costco's annual reports show that, during the alleged relevant period, from March 1995 through November 2007, its "headquarters" or "principal executive offices" were in Washington.  *See* RJN, Exs. B to E.  Costco alleges that it selected its CRT product suppliers from its headquarters.  Amend. Compl. ¶ 13.  Purchase orders were allegedly issued from "regional offices located in multiple states including California, Washington," and others, and deliveries were allegedly made to "distribution centers located in states including California, Washington" and others.  *Id*. ¶¶ 13-14.  All invoices, however, were sent to Costco in Washington.  *Id*. ¶ 13.

According to the Amended Complaint, the alleged conspiracy was publicly revealed in late November 2007, following investigations by the United States Department of Justice ("DOJ") and other antitrust authorities.  *Id*. ¶ 170.  Media outlets widely reported these investigations.  *Id*.  Several alleged direct purchasers filed purported class actions against CRT manufacturers and other entities, beginning in late November 2007.  *Id*. ¶ 185.  Defendant Toshiba confirmed in its publicly filed 2008 annual report that DOJ and/or the European Commission had investigated it for potential violation of competition laws with respect to CRTs.  *Id*. ¶ 149.  In addition, the Hungarian Competition Authority announced its own investigation into pricing of CRTs in May 2008.  *Id*. ¶ 150.  The DOJ also issued multiple press releases in the first half of 2009, announcing indictments of executives for participation in the alleged CRT conspiracy.  *Id*. ¶¶ 8, 151-152.  As a

-4-

1  result of the widespread publicity, Costco learned of the existence of the alleged CRT conspiracy

2  in "late November 2007." *Id.* ¶ 170.

3       Costco filed its Original Complaint in the Western District of Washington on

4  November 14, 2011.  The Original Complaint did not name SDI as a defendant.  Costco's action

5  was transferred to the Northern District of California and consolidated with this multi-district

6  litigation.  Costco moved to file an amended complaint in March 2013.  MDL Dkt. No. 1609.

7  Among other things, Costco proposed to add SDI as a defendant.  The interim Special Master

8  recommended that the Court grant Costco's motion to amend to add SDI as a defendant, and the

9  Court adopted that recommendation.  Dkt. Nos. 1751, 1959.  Costco filed the operative Amended

10  Complaint – which marks the first time Costco named SDI as a defendant – on October 3, 2013.

### III.

### ARGUMENT

**A.**     **Costco's State-Law Claims Against SDI Are Barred By The Applicable Statutes Of Limitation.**

     1.     <u>The Court may properly dismiss claims pursuant to Rule 12(b)(6) when the complaint reveals the claims to be barred by the applicable statutes of limitation.</u>

17      A court may properly dismiss a claim pursuant to Federal Rule of Civil Procedure 12(b)(6)

18  when the complaint itself discloses an absolute defense or bar to recovery.  *Weisbuch v. County of*

19  *Los Angeles*, 119 F.3d 778, 783 n.1 (9th Cir. 1997).  In particular, a motion to dismiss is a proper

20  vehicle to dismiss claims where the facts and dates alleged in the complaint indicate that the claim

21  is barred by the statute of limitations.  *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir.

22  1980) ("If the running of the statute is apparent on the face of the complaint, the defense may be

23  raised by a motion to dismiss.").

24      When a federal court exercises supplemental jurisdiction over a state law claim, the district

25  court follows state law in deciding the substantive issues before the court.  *Crowe v. Wiltel Comm.*

26  *Sys.*, 103 F.3d 897, 899 (9th Cir. 1996).  Accordingly, where a statute of limitations could bar

-5-

SAMSUNG SDI'S MOTION TO DISMISS CLAIMS ALLEGED IN
PLAINTIFF COSTCO'S FIRST AMENDED COMPLAINT

1   recovery in a state court, the district court applies the same statute of limitations as the state court

2   would apply.  *See Guaranty Trust Co. of New York v. York*, 326 U.S. 99, 110 (1945).

3         2.   <u>Costco's state-law claims against SDI are time-barred because they were</u>

4         <u>commenced more than four years after any such claim accrued.</u>

5         Costco has sued SDI under the state antitrust and unfair competition laws of Arizona,[1]

6   California, Florida and Illinois.  Amend. Compl. ¶¶ 194-216.  Its claim under the Washington

7   Consumer Protection Act has been dismissed.  MTD Order at 27.  Each of Costco's remaining

8   state-law claims is governed by a four-year statute of limitations.[2]  A cause of action for an

9   antitrust violation generally accrues when the plaintiff suffers injury.  *Zenith Radio Corp. v.*

10  *Hazeltine Research, Inc.*, 401 U.S. 321, 338 (1971) ("In the context of a continuing conspiracy to

11  violate the antitrust laws ... each time a plaintiff is injured by an act of the defendants a cause of

12  action accrues to him to recover the damages caused by that act.").  Accordingly, Costco accrued

13  new alleged claims with each purchase.  Those claims expired serially, four years after each

14  purchase.  *See, e.g., E.W. French & Sons v. General Portland, Inc.*, 885 F.2d 1392, 1396 (9th Cir.

15  1989) (plaintiff alleging price-fixing conspiracy may recover only for claims that accrued four

16  years before the complaint was filed and thereafter); *Hanson v. Shell Oil Co.*, 541 F.2d 1352, 1361

17  (9th Cir. 1976) ("a plaintiff may recover for acts violative of the antitrust laws committed prior to

18  the statute of limitations date, but … he may only recover those damages for such acts which

19  accrued and became ascertainable within the period of the statute.").

20        Costco first sued SDI on October 3, 2013.  Therefore, all of Costco's state-law claims

21  against SDI that are based on purchases made before October 3, 2009 are untimely.  But Costco

22  does not claim that it was injured as late as October 2009.  Indeed, Costco claims only that it was

23

24  ───────────────

[1] Costco's Amended Complaint purports to assert a claim under Ariz. Rev. Stat. § 14-1401, which

25  it describes as the "Arizona Antitrust Act."  Amend. Compl. ¶¶ 202-205.  However, the cited
statute relates to estate and probate litigation.  SDI assumes Costco intends to assert a claim under

26  Ariz. Rev. Stat. §§ 44-1401, *et seq*.

[2] Ariz. Rev. Stat. § 44-1410(B); Cal. Bus. & Prof. Code § 16750.1; Florida Stat. § 95.11(3)(f); 740

27  Ill. Comp. Stat. § 10/7(2).

28                                     -6-

1    injured by purchases made during the "Relevant Period," which ended on November 25, 2007.

2    *See, e.g.,* Amend. Compl. ¶¶ 1, 10.  Therefore, all of Costco's state-law claims are untimely,

3    absent application of some tolling principle.

4            3.      <u>Costco's time-barred state-law claims cannot be saved by allegations of fraudulent</u>

5                    <u>concealment or any tolling doctrine.</u>

6            Costco alleges that the statutes of limitation on its state law claims were tolled by virtue of

7    fraudulent concealment, criminal proceedings instituted by the U.S. Department of Justice, and

8    lawsuits brought on behalf of a purported class of CRT direct purchasers.  Amend. Compl. ¶¶ 170-

9    186.  Costco bears the burden of pleading facts sufficient to support its tolling claims.  *Hinton v.*

10   *Pacific Enterprises*, 5 F.3d 391, 395 (9th Cir. 1993); *Allen v. United Fin. Mortg. Corp.*, No. 09-

11   2507 SC, 2010 WL 1135787, at *1 (N.D. Cal. Mar. 22, 2010) (Conti, J.) ("'[P]laintiffs seeking to

12   toll the statute of limitations on various grounds must have included the allegations in their

13   pleadings.'") (internal citations omitted).  But Costco fails to allege sufficient facts to show that

14   any of these tolling principles would rescue its time-barred claims against SDI.

15                   a.      <u>Fraudulent Concealment</u>

16           Costco's allegations of fraudulent concealment cannot rescue its time-barred state-law

17   claims.  Even if a particular state would apply fraudulent concealment to these claims, any tolling

18   ceases once plaintiff is on notice of its potential claim.  *See, e.g., Jablon v. Dean Witter & Co.*,

19   614 F.2d 677, 682 (9th Cir. 1980) (affirming order granting motion to dismiss where complaint

20   alleged plaintiff had notice of facts underlying her claim outside limitations period); *Advanced*

21   *Micro Devices, Inc. v. Intel Corp.*, No. C 91-20541 JW, 1991 U.S. Dist. LEXIS 21036, at *7 (N.D.

22   Cal. Dec. 17, 1991) (fraudulent concealment ceases to toll limitations statute when plaintiff "is

23   aware or should have been aware of the operative facts that are the basis of its cause of action ….

24   The degree of knowledge only has to be a 'mere suspicion.'") (internal citations omitted).  Each of

25   the states at issue follows this same approach.[3]

26   _____

27   [3] **Arizona:** *Taylor v. Betts*, 124 P.2d 764, 767 (Ariz. 1942) (where plaintiff alleges fraudulent
     concealment, "the statute does not begin to run until the other party discovers or is put upon

28                                                    -7-

Here, Costco affirmatively alleges a series of public events that occurred before the critical date of October 3, 2009 – four years before it sued SDI – that would have alerted it to its claims. These include:

- An investigation by the United States Department of Justice ("DOJ"), which Costco claims "demonstrated" the conspiracy alleged in its complaint. Amend. Compl. ¶ 147.

- Additional investigations by the European Commission and Japan and South Korea's fair trade commissions. *Id.* ¶ 148.

- The widespread publicity that these investigations received in late November 2007. *Id.* ¶ 170.

- The direct purchaser class actions filed beginning in late November 2007. *Id.* ¶ 185.

- A 2008 Annual Report filed by defendant Toshiba reporting that it was under investigation by the European Commission and/or the DOJ for potential violation of competition laws with respect to CRTs. *Id.* ¶ 149.

- The May 6, 2008 Hungarian Competition Authority announcement of its investigation into pricing of CRTs. *Id.* ¶ 150.

- The February 10, 2009 indictment of the former chairman and CEO of Chunghwa Picture Tubes, Ltd., which the DOJ announced with a press release. *Id.* ¶¶ 8, 151.

---

reasonable notice of the breach of the trust."); **California:** *Snapp & Assoc. Ins. Serv., Inc. v. Robertson*, 117 Cal. Rptr. 2d 331, 335 (Cal. Ct. App. 2002) ("The fraudulent concealment doctrine does not come into play, whatever the lengths to which a defendant has gone to conceal the wrongs, if the plaintiff is on notice of a potential claim.") (internal citations and quotations omitted), *overruled on other grounds by Aryeh v. Canon Business Solutions, Inc.*, 292 P.3d 871, 878-79 (Cal. 2013); **Florida:** *Technical Packaging, Inc. v. UCB Films, Inc.*, No. 8:03-cv-714-T-30TBM, 2004 WL 5639769, at *4 (N.D. Fla. Dec. 21, 2004) ("all that is necessary under Florida law to prevent application of the fraudulent concealment doctrine" is that plaintiff "ha[s] been placed on notice of the possible invasion of its legal rights"); **Illinois:** *Anderson v. Wagner*, 402 N.E.2d 560, 573 (Ill. 1979) ("[i]f at the time the plaintiff discovers the 'fraudulent concealment' a reasonable time remains within the applicable statute of limitations, [fraudulent concealment] does not toll the running of the limitations period.").

-8-

1        •   DOJ's August 19, 2009 press release announcing an indictment against another

2             former Chunghwa employee. *Id*. ¶ 152.

3       If there is any doubt that Costco knew of its alleged claims long before October 2009,

4 Costco itself affirmatively alleges as much. Costco alleges that it was notified of its claims by

5 "late November 2007, when investigations by the United States and other antitrust authorities

6 became widely reported." Amend. Compl. ¶ 170. In addition, Costco acknowledged as early as

7 November 2011 that some unspecified statutes of limitations on claims for purchases of allegedly

8 price-fixed CRTs had, by that time, already expired. *See* Original Compl. ¶ 16 (Costco's CRT

9 product suppliers did not seek to recover for damages caused by the alleged conspiracy before the

10 "expiration of the statute of limitations.").

11       Costco cannot rely on the Court's earlier order denying a motion to dismiss by the other

12 defendants in Costco's case. *See* MTD Order. SDI is situated very differently from those

13 defendants, which were named in Costco's Original Complaint on November 14, 2011. Costco

14 waited nearly two additional years to add SDI as a defendant. That delay is crucial to the

15 fraudulent concealment analysis. In the earlier motion to dismiss, former Special Master Legge

16 focused on the ***six-day window*** between the European Commission's announcement of its

17 investigation into CRT manufacturers (November 8, 2007) and the day four years before Costco

18 filed its Original Complaint (November 14, 2007), and concluded that it was "highly unlikely"

19 that Costco could reasonably have found and examined the relevant evidence, and could have filed

20 a complaint, within such a short time period. The former special master concluded that the

21 adequacy of notice was an issue of fact, which could not be resolved under the notice pleading

22 standard for motions to dismiss. *Id*. at 7. The Court adopted the former special master's

23 recommendation, holding that "[i]t is generally inappropriate to resolve the fact-intensive

24 allegations of fraudulent concealment at the motion to dismiss stage." MTD Order, at 8.

25       Here, by contrast, there is no factual issue, and the statute-of-limitations issue can be

26 resolved based solely on Costco's allegations. Costco's Amended Complaint alleges that it

27 received notice of its claims in "late November 2007, when investigations by the United States

28

-9-

SAMSUNG SDI'S MOTION TO DISMISS CLAIMS ALLEGED IN
PLAINTIFF COSTCO'S FIRST AMENDED COMPLAINT

1    and other antitrust authorities became widely reported."  Amend. Compl. ¶ 170.  By Costco's own

2    admission, then, any tolling by virtue of fraudulent concealment ceased at the latest by "late

3    November 2007," and the statutes of limitations on its state-law claims had expired by "late

4    November" 2011, long before Costco sued SDI in October 2013.

5                    b.    Government Action Tolling

6          Costco alternatively alleges that the statutes of limitation governing its state law claims

7    were tolled by virtue of "criminal proceedings and investigations" instituted by the DOJ, pursuant

8    to 15 U.S.C. § 16.  Amend. Compl. ¶ 184.  That statute reads, in pertinent part:

> Whenever any civil or criminal proceeding is instituted by the
> United States to prevent, restrain, or punish violations of any of the
> antitrust laws, but not including an action under Section 15(a) of this
> title, the running of the statute of limitations in respect to every
> private or state right of action *arising under said laws* and based in
> whole or in part on any matter complained of in said proceeding
> shall be suspended during the pendency thereof and for one year
> thereafter ….

14   15 U.S.C. § 16(i) (emphasis added).  The statute thus provides for tolling only as to rights of

15   action "arising under" the "antitrust laws."  The term "antitrust laws," as it is used in the Clayton

16   Act, is specifically defined by 15 U.S.C. § 12.  *See In re Petroleum Prods. Antitrust Litig.*, 782 F.

17   Supp. 481, 484 (C.D. Cal. 1991).  The definition is restricted to a specific list of federal antitrust

18   statutes, and does not encompass state statutes.  *Nashville Milk Co. v. Carnation Co.*, 355 U.S.

19   373, 376 (1958) ("the definition contained in [Section] 1 of the Clayton Act is exclusive"; that a

20   statute not listed therein "may be colloquially described as an 'antitrust' statute" is "of no

21   moment."); *Pool Water Prods. v. Olin Corp.*, 258 F.3d 1024, 1032 n.4 (9th Cir. 2001).  By its

22   plain language, therefore, this provision does not toll any statute of limitations applicable to

23   Costco's state-law claims.  Because Costco's claims under Arizona, California, Florida and

24   Illinois law do not "aris[e]  under" the "antitrust laws," they cannot benefit from the government

25   tolling provision of 15 U.S.C. § 16(i).

26

27

28

-10-

1     c.  <u>Class-Action Tolling</u>

2    Costco's third and final alleged basis for tolling is the purported class action complaints

3 filed on behalf of alleged direct purchasers.  Amend. Compl. ¶¶ 185-186.  Those complaints do

4 not toll the statutes of limitations on Costco's state-law claims, for two reasons.  First, those

5 complaints assert federal (not state) claims.  Second, those complaints were filed in federal (not

6 state) court.

7    First, the alleged direct purchaser class actions asserted claims under federal antitrust law,

8 and therefore cannot toll the statutes of limitation on the different, state-law claims that Costco

9 seeks to assert.  The U.S. Supreme Court has cautioned that the class-action tolling rule announced

10 in *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974) is ripe for potential abuse, and

11 should not be applied to toll statutes of limitations for claims that are "different [from] or

12 peripheral [to]" the claims asserted in the class action itself.  *Crown, Cork & Seal Co., Inc. v.*

13 *Parker*, 462 U.S. 345, 354 (1983) (Powell, J., concurring); *see also id*. at 355 ("Claims as to which

14 the defendant was not fairly placed on notice by the class suit are not protected under *American*

15 *Pipe* and are barred by the statute of limitations.").  Federal courts have generally heeded this

16 direction and declined to toll statutes of limitation for claims other than those explicitly included

17 in the class action.  *See Williams v. Boeing Co.,* 517 F.3d 1120, 1136 (9th Cir. 2008) (because

18 "neither the Original nor the First Amended Complaints stated a claim for compensation

19 discrimination … the statute of limitation was not tolled for that claim as it would have been for

20 the promotion discrimination, hostile work environment, and retaliation claims properly raised.");

21 *see also Raie v. Cheminova, Inc.*, 336 F.3d 1278, 1283 (11th Cir. 2003) (refusing to toll state

22 claim where "Appellants could not demonstrate the [prior class action] explicitly included" the

23 claim); *In re TFT-LCD (Flat Panel) Antitrust Litig*., M 07-1827 SI, 2012 WL 3155693, *4 (N.D.

24 Cal. Aug. 2, 2012) (class action asserting Sherman Act claim does not toll statute of limitations on

25 state-law claim: "[T]his Court cannot conclude that the direct-purchaser complaint tolled claims it

26 did not assert."); *In re: Vertrue Mktg. & Sales Practices Litig*., 712 F. Supp. 2d 703, 718-19 (N.D.

27 Ohio 2010) ("only the claims expressly alleged in a previous federal lawsuit are subject to

28

1   tolling").  The direct-purchaser class action claims under the federal Sherman Act could not, and

2   did not, alert SDI to Costco's indirect-purchaser claims under the state laws of Arizona,

3   California, Florida and Illinois.  The federal class actions therefore cannot toll the statutes of

4   limitations on Costco's state-law claims.

5          Second, the alleged direct purchaser class actions were filed in federal court, and Costco

6   can cite no authority showing that Arizona, California, Florida or Illinois courts would toll their

7   statutes of limitation based on a class action lawsuit filed in a federal court, so-called "cross-

8   jurisdictional tolling."  Whether the statute of limitations for a state-law claim is tolled by the

9   filing of a class action is an issue of state law.  *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017,

10   1025 (9th Cir. 2008).  The Ninth Circuit has held that "[t]he rule of *American Pipe* … does not

11   mandate cross-jurisdictional tolling as a matter of state procedure" and therefore declined "to

12   import the doctrine into state law where it did not previously exist."  *Id.* at 1025; *see also Wade v.*

13   *Danek Medical, Inc.*, 182 F.3d 281, 287-88 (4th Cir. 1999) (declining to toll statute of limitations

14   on claim under Virginia law, based on federal class action, absent indication that Virginia

15   Supreme Court would adopt a cross-jurisdictional tolling rule).  Here, Costco cannot meet its

16   burden to show that the states at issue have adopted cross-jurisdictional tolling.  Indeed, cross-

17   jurisdictional tolling has been explicitly rejected by courts interpreting Arizona,[4] California,[5]

18   Florida,[6] and Illinois[7] law.  Therefore, the federal class actions cited in Costco's proposed

19   amended complaint do not toll the statutes of limitation governing its state-law claims.

---

[4] **Arizona:**  *Newport v. Dell, Inc.*, No. CV-08-0096-TUC-CKJ(JCG), 2008 WL 4347311, at *5 (D. Ariz. Aug. 21, 2008) ("it is unlikely that Arizona courts would recognize[] the tolling effect of a related class action filed in another jurisdiction" and therefore "it would be improper for this Court to conclude that cross-jurisdictional tolling applies" to plaintiff's claims under Arizona law).

[5] **California:** *Jolly v. Eli Lilly & Co.*, 751 P.2d 923, 935-36 (Cal. 1988) (declining to apply class-action tolling); *Clemens*, 534 F.3d at 1025 (declining to import a cross-jurisdictional tolling rule into California law); *Centaur Classic Convertible Arbitrage Fund Ltd. v. Countrywide Financial Corp.*, 878 F. Supp. 2d 1009, 1017 (C.D. Cal. 2011) (concluding that California does not recognize cross-jurisdictional tolling, declining to toll statute of limitations on California claim based on class action filed in federal court).

[6] **Florida:** *In re Vitamins Antitrust Litig.*, 183 Fed. App'x 1 (D.C. Cir. 2006) (predicting Florida would not permit cross-jurisdictional tolling); *In re Rezulin Prods. Liability Litig.*, No. 00-2843, 2006 WL 695253 (S.D.N.Y. Mar. 15, 2006) (Florida does not recognize cross-jurisdictional

-12-

1   **B.      Costco's State-Law Claims Against SDI Are Also Barred Because Costco Cannot**

2   **Show That Those States Have a More Significant Relationship With Its Claims Than**

3   **Washington, And Choice-Of-Law Principles Therefore Favor Washington Law.**

4           Costco's state-law claims should also be dismissed on choice-of-law grounds.  Costco

5   attempts to invoke the laws of Arizona, California, Florida and Illinois despite choice-of-law

6   principles that require application of Washington law.  The Court has already dismissed Costco's

7   claim under the Washington Consumer Protection Act, finding that indirect purchasers lack

8   standing to sue under that statute.  MTD Order at 27.  Seeking to avoid the law of its chosen

9   forum, Costco pleads claims under the laws of other states that allow such indirect-purchaser

10  claims.  Because Costco has failed to plead facts showing that Arizona, California, Florida or

11  Illinois have a more significant relationship to Costco's claims than does Washington, the Court

12  should dismiss Costco's state-law claims based on choice-of-law principles.  The choice-of-law

13  question is appropriately decided on a motion to dismiss.  *See In re GPU Antitrust Litig.*, 527 F.

14  Supp. 2d 1011, 1027-28 (N.D. Cal. 2007) (finding "merit in disposing of [the choice-of-law] issue

15  at an early stage of the litigation, particularly where the issue of whether the different state's laws

16  conflict will not change significantly as th[e] action progresses.").

17          For purposes of this choice-of-law analysis, the forum state's choice-of-law rules apply.

18  *See Paulsen v. CNF, Inc.*, 559 F.3d 1061, 1080 (9th Cir. 2009) ("In a federal question action that

19  involves supplemental jurisdiction over state law claims, we apply the choice of law rules of the

20  forum state …."); *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1005 (9th Cir. 2001) (applying

21  forum state choice-of-law rules where court has diversity jurisdiction).  This action was filed in

22  Washington.  Were it still there, Washington choice of law rules would apply.  *See Carideo v.*

23  *Dell, Inc.*, 706 F. Supp. 2d 1122, 1126 (W.D. Wa. 2010).  Because a transferee court must apply

24  the same law and choice-of-law rules that the transferor court would have applied, this Court must

25  _____

    tolling).

26  [7] **Illinois:** *Portwood v. Ford Motor Co.*, 701 N.E.2d 1102, 1105 (Ill. 1998) ("the Illinois statute of
27  limitations is not tolled during the pendency of a class action in federal court.").

28                                                    -13-

1    also apply Washington choice-of-law rules.  *See Ferens v. John Deere Co.*, 494 U.S. 516, 519

2    (1990) ("[T]he transferee court must follow the choice-of-law rules that prevailed in the transferor

3    court."); *Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964); *In re Vioxx Prod. Liab. Litig.*, 522 F.

4    Supp. 2d 799, 813 (E.D. La. 2007) (applying same principle in multi-district litigation

5    proceeding).

6           Under Washington choice-of-law rules, a court must first determine whether there is an

7    actual conflict between Washington law and that of the other states.  *Rice v. Dow Chem. Co.*, 875

8    P.2d 1213, 1216 (Wash. 1994).  If there is no conflict, Washington substantive law governs any

9    state law claims.  *Id.*; *Burnside v. Simpson Paper Co.*, 864 P.2d 937, 941 (Wash. 1994).  If an

10   actual conflict exists, Washington courts ask which state has the most significant relationship to

11   the occurrence and the parties.  *Johnson v. Spider Staging Corp.*, 555 P.2d 997, 1000 (Wash.

12   1976); *Carideo*, 706 F. Supp. 2d at 1126 (citing Restatement (Second) Conflict of Laws §§ 145,

13   188 (1971)).  Under this analysis, a court considers: (a) the place where the injury occurred; (b)

14   the place where the conduct causing the injury occurred; (c) the domicile, residence, nationality,

15   place of incorporation and place of business of the parties; and (d) the place where the

16   relationship, if any, between the parties is centered.  *Spider Staging Corp.*, 555 P.2d at 1000.  The

17   "approach is not merely to count contacts, but rather to consider which contacts are most

18   significant and to determine where these contacts are found."  *Id.*  Where the contacts with the

19   states are evenly balanced, a court should also consider the interests and public policies of the

20   involved states to determine which state has the greater interest in determining the issue.  *Williams*

21   *v. Leone & Keeble, Inc.*, 285 P.3d 906, 910 (Wash. Ct. App. 2012).

22          Here, Washington law squarely conflicts with the laws of Arizona, California, Florida and

23   Illinois.  Under Washington law, indirect purchasers do not have standing to bring price-fixing

24   claims.  *Blewett v. Abbott Labs., Inc.*, 938 P.2d 842, 844 (Wash Ct. App. 1997); MTD Order at 27

25   ("Washington forbids indirect purchasers from bringing their own actions under the Washington

26   consumer protection statute.").  In contrast, indirect purchasers do have standing under Arizona,

27   California, Florida and Illinois law.  *See Bunker's Glass Co. v. Pilkington PLC,* 75 P.3d 99 (Ariz.

28                                                    -14-

1  2003); *Clayworth v. Pfizer, Inc.*, 233 P.3d 1066 (Cal. 2010); *Mack v. Bristol-Myers Squibb Co.*,

2  673 So.2d 100, 109 (Fla. Dist. Ct. App. 1996); 740 Ill. Comp. Stat. 10/7(2).  Where one state

3  allows private indirect purchaser claims, and others do not, courts have held that there is an actual

4  conflict.  *See GPU*, 527 F. Supp. 2d at 1027.

5      Costco, the party proposing to apply non-forum law, bears the burden of establishing that

6  those states have a more significant relationship than Washington to the controversy.  *See Zinser v.*

7  *Accufix Research Inst., Inc.*, 253 F.3d 1180, 1187 (9th Cir. 2001); *see also Burnside*, 864 P.2d at

8  940 ("*the normal expectation should be that the rule of decision will be supplied by the domestic*

9  *law as a matter of course.*") (quoting B. Currie, Selected Essays on the Conflicts of Laws 75

10  (1963)) (emphasis in court opinion).  Here, however, the facts alleged in Costco's Amended

11  Complaint show just the opposite.

12      In fact, Costco's allegations reveal that every factor in the choice-of-law analysis favors

13  application of Washington law.  Costco alleges a "substantial" connection between its claims and

14  Washington.  *See* Original Compl. ¶ 61 ("a substantial part of the events giving rise to Plaintiff's

15  claims occurred in [Washington] and a substantial portion of affected interstate commerce was

16  carried out in [Washington.]"); Amend. Compl. ¶ 67 (same).  Costco is a "Washington corporation

17  with its principal place of business in Issaquah, Washington." *Id*. at ¶ 13; *see also* RJN, Exs. B to

18  E (annual reports showing headquarters or principal executive offices in Washington during the

19  alleged relevant period).  Costco also alleges that defendants had significant contacts with

20  Washington.  Amend. Compl. ¶ 68.  Moreover, based on the facts alleged, Costco's alleged injury

21  occurred in Washington.  *Id*. ¶¶ 193, 196, 197, 200, 201, 204, 205 (Costco incurred injury when it

22  paid for CRT products).  Crucially, Costco admits that it received invoices for those CRT products

23  in Washington, *id*. ¶ 13, and does not allege that those invoices were paid from anywhere other

24  than its Washington headquarters.  Costco also alleges that it selected its CRT Product vendors

25  from its headquarters.  *Id*.

26      In contrast, Costco's allegations regarding its contacts with Arizona, Florida and Illinois

27  are minimal: the only connection that Costco makes between its claims and these states is that it

28

1  "received CRT Products at distribution centers" located in these states.  *Id*. ¶ 14.  Notably, Costco

2  also alleges that it also received CRT products at its Washington distribution center.  *Id*.  This

3  allegation, therefore, cannot suffice to show that Arizona, Florida or Illinois have a ***more***

4  significant connection to Costco's claims than does Washington.

5         Costco alleges some additional facts purporting to connect its claims with California, but

6  these allegations fail to demonstrate that California has a more significant connection to the case

7  than Washington.  For instance, Costco alleges that decisions regarding choices among approved

8  vendors, and volumes to purchase, were made in its regional offices, including in California.  *Id*.

9  ¶ 13.  Costco also alleges that purchase orders were created and issued from regional offices,

10  including California.  *Id*.  Here again, Costco makes these same allegations with respect to

11  Washington, and so these allegations do not provide a basis for Costco to claim that California has

12  a more significant connection to its claims that does Washington.  *Id*.

13         Costco also attempts to bolster its alleged California connection by alleging retail activity

14  and a presence in California ***before the relevant period.***  *See id*. ¶ 12.  These allegations are

15  irrelevant to the inquiry, and provide no connection between California and Costco's claims,

16  which are based on purchases from March 1995 and thereafter.  *See id*. ¶ 1.  Moreover, allegations

17  about Costco's sales activity have no place in the Washington choice-of-law analysis.  They

18  therefore cannot overcome Costco's allegations that it received invoices in Washington.

19  Similarly, Costco's vague allegation that some unspecified executive functions continued in

20  California during the alleged relevant period is also irrelevant, as it says nothing about the nature

21  of these functions or whether they had any connection at all to Costco's purchases of CRT

22  products.  *See id*. ¶ 12.

23         In a further attempt to draw a connection between California and its claims, Costco alleges

24  that three defendants had principal places of business there, and reiterates statements that the

25  alleged conspiracy was carried out, in part, in California.  *See id*. ¶¶ 42, 54, 55, 151-155.  But the

26  Amended Complaint also alleges that relevant conduct occurred predominantly overseas, and that

27  most defendants were also located overseas.  *See, e.g., id*. ¶¶ 6 ("Meetings occurred in locales

28

-16-

including Taiwan, South Korea, Indonesia, Thailand, Singapore, Malaysia, China, the U.K., and Europe"); 98 ("These meetings took place in Taiwan, South Korea, Thailand, Japan, Malaysia, Indonesia, and Singapore."), 17-59.  Moreover, Costco's attempt to link some defendants to California does not overcome its allegations that a "substantial part of the events giving rise to [its] claims occurred in" Washington, and that all defendants had contacts with Washington sufficient to subject them to the jurisdiction of Washington courts.  *Id.* ¶¶ 67-68.

In the *LCD* case, Judge Illston applied the Washington choice-of-law analysis to substantially identical allegations made by Costco, and twice concluded that Costco's state-law claims should be dismissed in favor of Washington law.  *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, M 07-1827 SI, 2011 WL 3809767 (N.D. Cal. Aug. 29, 2011) ("*Costco LCD I*"); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, M 07-1827 SI, 2011 WL 5922966 (N.D. Cal. Nov. 28, 2011) ("*Costco LCD II*").  In *LCD*, as here, Costco pleaded claims under Arizona, California, Florida, Illinois and Washington state law.  *See* RJN Ex. F (Complaint, *Costco Wholesale Corp. v. AU Optronics Corp.*, 3:11-cv-00058-SI (N.D. Cal. Dkt. No. 1)) ("LCD Complaint"), at p. 2.  In *LCD*, as here, Costco alleged that it created and issued purchase orders from regional offices in several states, including California, and that it received products at distribution centers at each of the states at issue.  LCD Compl. ¶¶ 6-7, Amended Compl. ¶¶ 13-14.  In *LCD*, as here, Costco alleged that it received invoices in Washington and selected vendors from its Washington headquarters.  LCD Compl. ¶ 6, Amended Compl. ¶ 13.  The *LCD* court concluded that Washington law should govern Costco's claims.  In particular, the court found that "Costco's injury – it's overpayment for LCD products – occurred in Washington, the state in which Costco paid its invoices."  *Costco LCD I*,  2011 WL 3809767, at *4.  The court also concluded that the relationship between Costco and the defendant vendors – including many of the same defendants who are named in the instant case – "was centered in Washington."  *Id*.  The *LCD* court found that Costco's allegations concerning other states, including the allegation that defendants were located in California, and that Costco issued purchase orders from states other than Washington, were

1   "less substantial." *Id*. The LCD court dismissed Costco's claims under California and Illinois

2   law,[8] but granted Costco leave to file an amended complaint. *Id*. at *5.

3   Costco amended its *LCD* complaint to bolster its allegations concerning contacts with

4   California, using the very same allegations it invokes here, including substantially identical

5   allegations about Costco's pre-merger history, its retail presence in California, its executive offices

6   in California, and the continuance of unspecified "headquarters functions" in California during the

7   respective relevant periods. *Compare* RJN Ex. G (Amended Complaint, *Costco Wholesale Corp.*

8   *v. AU Optronics Corp.*, 3:11-cv-00058-SI (N.D. Cal. Dkt. No. 49)) ("Amended LCD Complaint")

9   ¶ 6 *with* Amend. Compl. ¶ 12. Both amended complaints allege that Costco "purchased and sold

10  more [CRT/LCD] Products in California than in any other state during the Relevant Period."

11  *Compare* Amend. LCD Compl. ¶ 7 *with* Amend. Compl. ¶ 13. The *LCD* court found these new

12  allegations insufficient to overcome the significant alleged contacts with Washington. *Costco*

13  *LCD II*, 2011 WL 5922966, at *2 ("the Court finds that Costco's purchasing process was

14  controlled from Washington and that Costco was injured in Washington. Washington therefore

15  has the most significant contacts with Costco's claims. Accordingly, Washington law applies.").

16  The *LCD* court granted defendants' motion to dismiss Costco's non-Washington state-law claims.

17  *Id*.

18  Given the similarity between the allegations in the two cases, Costco can provide no valid

19  reason why the same result should not obtain here. Costco is a Washington-based company that

20  selected its CRT product vendors in Washington, received invoices for its CRT products in

21  Washington, and allegedly suffered injury in Washington. Washington law should govern its

22  claims.

23

24

---

25  [8] The *LCD* court had previously dismissed Costco's Arizona and Florida claims under a Due
    Process analysis, finding that Costco's sole alleged contact with those states – that it received

26  products there – failed to satisfy the Constitutionally required minimum. *Id*. at *3 ("the Court
    finds that Costco may not bring claims under the laws of the states where it has alleged only that it

27  received goods.").

28

-18-

1

### IV.

2

### CONCLUSION

3   For the foregoing reasons, SDI respectfully requests that the Court dismiss Costco's claims

4   against SDI under the Arizona Antitrust Act, Ariz. Rev. Stat. §§ 44-1401, *et seq.*; the California

5   Cartwright Act, Cal. Bus. & Prof. Code §§ 16700, *et seq.*; the Florida Deceptive and Unfair Trade

6   Practices Act, Florida Stat. §§ 501.201, *et seq.*; and the Illinois Antitrust Act, 740 Illinois Code

7   10/1, *et seq.*, without leave to amend.

8

9                                              Respectfully Submitted,

10

11   Dated:  November 4, 2013                  By:      */s/ Tyler M. Cunningham*
                                                        GARY L. HALLING (66087)
                                                        Email: ghalling@sheppardmullin.com
12                                                      JAMES L. McGINNIS (95788)
                                                        Email: jmcginnis@sheppardmullin.com
13                                                      MICHAEL W. SCARBOROUGH (203524)
                                                        Email: mscarborough@sheppardmullin.com
14                                                      TYLER M. CUNNINGHAM (243694)
                                                        Email: tcunningham@sheppardmullin.com
15                                                      **SHEPPARD, MULLIN, RICHTER &
                                                        HAMPTON LLP**
16                                                      Four Embarcadero Center, 17th Floor
                                                        San Francisco, California 94111-4109
17                                                      Telephone: (415)-434-9100
                                                        Facsimile: (415)-434-3947
18
                                                        *Attorneys for Defendants Samsung SDI America,*
19                                                      *Inc., Samsung SDI Co., Ltd., Samsung SDI*
                                                        *(Malaysia) Sdn. Bhd., Samsung SDI Mexico S.A. de*
20                                                      *C.V., Samsung SDI Brasil Ltda., Shenzhen Samsung*
                                                        *SDI Co. Ltd. and Tianjin Samsung SDI Co., Ltd*
21

22

23

24

25

26

27

28
                                                -19-