Kenneth A. Gallo (*pro hac vice*)
Joseph J. Simons (*pro hac vice*)
Craig A. Benson (*pro hac vice*)
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006-1047
Telephone: (202) 223-7300
Facsimile: (202) 204-7420
Email: kgallo@paulweiss.com
Email: jsimons@paulweiss.com
Email: cbenson@paulweiss.com

Stephen E. Taylor (SBN 058452)
Jonathan A. Patchen (SBN 237346)
TAYLOR & COMPANY LAW OFFICES, LLP
One Ferry Building, Suite 355
San Francisco, California 94111
Telephone: (415) 788-8200
Facsimile: (415) 788-8208
Email: staylor@tcolaw.com
Email: jpatchen@tcolaw.com

*Attorneys for Plaintiffs Sharp Electronics Corporation and
Sharp Electronics Manufacturing Company of America, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Case No. 07-cv-5944 SC<br>MDL No. 1917 |
| This Document Relates to:<br><br>*Sharp Electronics Corp.*, et al. *v. Hitachi Ltd.*, et al., Case No. 13-cv-1173 SC<br><br>*Sharp Electronics Corp.*, et al. *v. Koninklijke Philips Elecs.*, *N.V.*, et al., Case No. 13-cv-02776-SC | **SHARP ELECTRONICS CORPORATION AND SHARP ELECTRONICS MANUFACTURING COMPANY OF AMERICA, INC.'S OPPOSITION TO DEFENDANTS' JOINT MOTION TO DISMISS CERTAIN DIRECT ACTION PLAINTIFFS' CLAIMS**<br><br>Date: December 20, 2013<br>Time: 10:00 a.m.<br>Place: Courtroom 1, 17th floor<br>Judge: Hon. Samuel Conti |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................. 1

ISSUE TO BE DECIDED ............................................................................................................ 1

PRELIMINARY STATEMENT .................................................................................................. 1

FACTUAL BACKGROUND ....................................................................................................... 2

ARGUMENT ................................................................................................................................. 8

I.       STANDARDS ON A MOTION TO DISMISS .................................................................. 8

II.     SHARP'S STATE LAW CLAIMS ARE TIMELY......................................................... 9

        A.      No Limitations Period Began to Run Until November 2007
               Because the Defendants Fraudulently Concealed the Conspiracy ..................... 11

        B.      The Federal Government's Actions on the CRT Conspiracy Also
               Tolled the Statute of Limitations for Donnelly Act Claims
               Beginning in February 2009 ............................................................................... 11

        C.      Putative Direct and Indirect Purchaser Actions Also Tolled Sharp's
               State Law Claims ................................................................................................. 12

CONCLUSION ............................................................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Addison v. State of Cal.*,
    578 P.2d 941 (Cal. 1978) ............................................................................................. 16

*Am. Pipe & Constr. Co. v. Utah*,
    414 U.S. 538 (1974) ............................................................................................*passim*

*Becker v. McMillin Constr. Co.*,
    277 Cal. Rptr. 491 (Cal. Ct. App. 1991) ...................................................................... 17

*Clemens v. DaimlerChrysler Corp.*,
    534 F.3d 1017 (9th Cir. 2008) ...................................................................................... 17

*Clifton Knolls Sewerage Disposal Co. v. Aulenbach*,
    451 N.Y.S.2d 907 (N.Y. App. Div. 1982) .................................................................... 18

*Collier v. City of Pasadena*,
    191 Cal. Rptr. 681 (Cal. Ct. App. 1983) ...................................................................... 16

*Conmar Corp. v. Mitsui & Co. (U.S.A.), Inc.*,
    858 F.2d 499 (9th Cir. 1988) .......................................................................................... 8

*Crago, Inc. v. Chunghwa Picture Tubes, Ltd.*,
    No. 3:07-cv-05944 (N.D. Cal. Nov. 26, 2007) ......................................................*passim*

*Crown, Cork & Seal Co., Inc. v. Parker*,
    462 U.S. 345 (1983) ................................................................................ 12, 13, 15, 16

*Employers-Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Anchor*
    *Capital Advisors*, 498 F.3d 920 (9th Cir. 2007) ............................................................ 12

*Erickson v. Pardus*,
    551 U.S. 89 (2007) .......................................................................................................... 8

*Gonzalez, et al. v. Chunghwa Pictures Tubes, Ltd.*,
    No. 08-cv-01108 (N.D. Cal. Feb. 25, 2008) ............................................................ 6, 16

*Gottreich v. San Francisco Inv. Corp.*,
    552 F.2d 866 (9th Cir. 1977) .......................................................................................... 9

*Hatfield v. Halifax PLC*,
    564 F.3d 1177 (9th Cir. 2009) .............................................................................. 9, 16, 17

*Huebner v. Caldwell & Cook, Inc.,*
    526 N.Y.S.2d 356 (N.Y. Sup. Ct. 1988) .......................................................... 18

*In Re Cathode Ray Tube (CRT) Antitrust Litig.,*
    738 F. Supp. 2d 1011 (N.D. Cal. 2010) ................................................... 1, 8, 9

*In re: Cathode Ray Tube (CRT) Antitrust Litig.,*
    MDL No. 1917, Lead Case No. 3:07-cv-5944
    (N.D. Cal. Mar. 16, 2009) .............................................................. *passim*

*In re Linerboard Antitrust Litig.,*
    223 F.R.D. 335 (E.D. Pa. 2004) ......................................................... *passim*

*In re Rubber Chems. Antitrust Litig.,*
    504 F. Supp. 2d 777 (N.D. Cal. 2007) ................................................... 8, 9

*In re Vertrue Mktg. & Sales Practices Litig.,*
    712 F. Supp. 2d 703 (N.D. Ohio 2010) ...................................................... 14

*Johnson v. Riverside Healthcare Sys., LP,*
    534 F.3d 1116 (9th Cir. 2008) ................................................................... 9

*Jolly v. Eli Lilly & Co.,*
    751 P.2d 923 (Cal. 1988) .................................................................. 16, 17

*Juetten, et al. v. Chunghwa Picture Tubes, Ltd.,*
    No. 07-cv-6225 (N.D. Cal. Dec. 10, 2007) ............................................. 6, 16

*Lantzy v. Centex Homes,*
    31 Cal 4th 363 (Cal. 2003) ........................................................................ 9

*Maestas v. Sofamor Danek Grp., Inc.,*
    33 S.W.3d 805 (Tenn. 2000) ................................................................... 19

*Meighan v. U.S. Sprint Commc'ns. Co.,*
    924 S.W.2d 632 (Tenn. 1996) ................................................................ 19

*Mt. Hood Stages, Inc. v. Greyhound Corp.,*
    555 F.2d 687 (9th Cir. 1977) ..................................................................... 9

*Mt. Hood Stages, Inc. v. Greyhound Corp.,*
    437 U.S. 322 (1978) ................................................................................ 9

*Nathan Muchnick, Inc. v. Chunghwa Picture Tubes Ltd.,*
    Case No. 3:07-cv-5981 (N.D. Cal. Nov. 27, 2007*)* ....................................... 6

*Paru v. Mut. of Am. Life Ins. Co.,*
    52 A.D.3d 346 (N.Y. App. Div. 2008) ...................................................... 18

*Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A.*,
    711 F.2d 989 (11th Cir. 1983)......................................................................... 8

*Raie v. Cheminova, Inc.*,
    336 F.3d 1278 (11th Cir. 2003).................................................................... 14

*Sharp Elecs. Corp. v. Hitachi, Ltd..*,
    No. 13-cv-01173 (N.D. Cal. Mar. 15, 2013) ................................................ 3

*Sharp Elecs. Corp. v. Koninklijke Philips Elecs.*,
    No. 13-cv-02776 (N.D. Cal. June 17, 2013)............................................*passim*

*Soward v. Deutsche Bank AG*,
    814 F. Supp. 2d 272 (S.D.N.Y. 2011)......................................................... 19

*Staub v. Eastman Kodak Co.*,
    726 A.2d 955(N.J. Super. Ct. App. Div. 1999)...................................... 17, 18

*Supermail Cargo, Inc. v. U.S.*,
    68 F.3d 1204 (9th Cir. 1995)......................................................................... 8

*Sutton Carpet Cleaners v. Firemen's Ins. Co.*,
    68 N.Y.S.2d 218 (N.Y. Sup. Ct. 1947), *aff'd*, 78 N.Y.S.2d 565 (1st Dep't
    1948), *aff'd*, 299 N.Y. 646 (N.Y. 1949)..................................................... 18

*Tosti v. City of Los Angeles*,
    754 F.2d 1485 (9th Cir. 1985)................................................... 10, 12, 13, 15

*Von Saher v. Norton Simon Museum of Art at Pasadena*,
    592 F.3d 954 (9th Cir. 2010)......................................................................... 8

*Walling v. Beverly Enters.*,
    476 F.2d 393 (9th Cir. 1973)......................................................................... 9

*Williams v. Dow Chem. Co.*,
    No. 01-cv-4307, 2004 WL 1348932 (S.D.N.Y. June 16, 2004) ................ 18, 19

*Yollin v. Holland Am. Cruises, Inc.*,
    468 N.Y.S.2d 873 (N.Y. App. Div. 1983) ................................................. 18

STATUTES

15 U.S.C. § 1 ....................................................................................*passim*

15 U.S.C. § 16(i) ......................................................................................11

Cal. Bus. & Prof. Code § 16720 ........................................................*passim*

Cal. Bus. & Prof. Code § 17200 ........................................................*passim*

N.J. Stat. § 56:9-1...............................................................................7

N.Y. Gen. Bus. L. § 340.....................................................................*passim*

N.Y. Gen. Bus. § 342-c ......................................................................12

N.Y. Gen. Bus. L. § 349.....................................................................*passim*

Tenn. Code Ann. § 47-25-101 ..........................................................7, 19

## OTHER AUTHORITIES

Fed. R. Civ. P. 12(b)(6).......................................................................1

Fed. R. Civ. P. 23 ...............................................................................19

**MEMORANDUM OF POINTS AND AUTHORITIES**

Plaintiffs Sharp Electronics Corporation ("SEC") and Sharp Electronics Manufacturing Company of America, Inc. ("SEMA") (together, "Sharp") oppose Defendants' Joint Motion to Dismiss Sharp's state law claims as untimely, pursuant to Fed. R. Civ. P. 12(b)(6).

**ISSUE TO BE DECIDED**

Whether Sharp's state law claims are timely.

**PRELIMINARY STATEMENT**

Defendants do not dispute that Sharp's claims for Defendants' violations of federal antitrust law, as to both tube and finished product purchases, are timely.  Their motion focuses only on state law claims that Sharp brings under the laws of California, New York, New Jersey, and Tennessee.  Defendants have already failed in previous attempts to dismiss state law claims of other plaintiffs in this litigation based on identical arguments.  *See In Re Cathode Ray Tube (CRT) Antitrust Litig.*, 738 F. Supp. 2d 1011, 1024-25 (N.D. Cal. 2010) ("*In Re CRT*").[1]  For the same reasons that this Court denied the motions then, it should do so now.

Sharp's state law claims are all governed by either three- or four-year limitations periods.  As of the date it filed its complaint – March 15, 2013 – there remained at least 860 days before any one of its state claims expired based on a combination of tolling for fraudulent concealment, government action tolling, and class action tolling.

First, Sharp's claims tolled until November 2007, because Defendants *fraudulently concealed* their decade-long conspiracy by, among other things, keeping their meetings hidden, destroying written evidence, and offering pretextual reasons for pricing decisions.  As a result of Defendants' concealment, notwithstanding Sharp's diligence, Sharp was

---

[1] The Court's September 26, 2013 ruling dismissing Sharp's initial complaint against new defendant Thomson Consumer Electronics, Inc., did not purport to alter these previous rulings. *See* Order, *In re: Cathode Ray Tube (CRT) Antitrust Litig.*, MDL No. 1917, Lead Case No. 3:07-cv-5944 (N.D. Cal.) (Sept. 26, 2013), Dkt. No. 1960.  Sharp filed its Complaint against Thomson Consumer, and all other Defendants, before it had access to the discovery record from the existing MDL, and both the Defendants and class counsel refused to grant Sharp any prior access.

1   not and could not reasonably have been on notice of its claims. That changed in early November

2   2007, when governments across the world launched raids and Defendants thereafter

3   acknowledged that they were targets of antitrust investigations.

4   *Class-action tolling* began nearly immediately thereafter, as plaintiffs filed

5   putative antitrust lawsuits based on same anticompetitive conduct that gave rise to Sharp's claims.

6   Within weeks, putative class actions for direct purchasers and indirect purchasers alerted the

7   Defendants to their liability, and gave rise to their obligations to preserve relevant evidence.

8   Sharp was a member of a putative direct purchaser class as of November 26, 2007, and remained

9   so until it filed its complaint on March 15, 2013, and that direct class had still not been certified

10   when Sharp filed its complaint. It was also a member of an indirect purchaser class filed in

11   February 2008, and remained so until March 2009, when the consolidated IPP putative class

12   adopted a definition excluding resellers. As discussed within, class-action tolling applies here

13   even though the complaints covering Sharp's claims did not necessarily expressly include claims

14   under the New York, New Jersey, Tennessee and California state laws under which Sharp brings

15   those claims here, based on longstanding principles supporting cross-jurisdictional tolling.

16   Also, in February 2009, the federal government announced its ***first indictments*** in

17   connection with the conspiracy at the heart of this case. That tolled Sharp's claim for relief under

18   New York Donnelly Act, which tolls "[w]henever any civil or criminal proceeding is instituted by

19   the federal government" relating to the conspiracy. Defendants have conceded this once before in

20   this litigation.

21   As a result of the combination of these doctrines, the limitations period has not

22   expired on any of Sharp's claims. Defendants' motion to dismiss accordingly should be denied.

23   <u>**FACTUAL BACKGROUND**</u>

24   The facts show that all of Sharp's claims were timely. All of Sharp's claims were

25   tolled through November 2007 by the Defendants' fraudulent concealment of the conspiracy.

26   Sharp's claims were immediately thereafter tolled by class-action tolling due to Sharp's

27   membership in putative class actions filed as early as November 26, 2007, until at least July 23,

28

2012, when Sharp first opted out of a direct purchaser class that was certified for purposes of settlement with a Defendant.  At least 860 days remain in the limitations periods for claims with a three-year period (New York UCL and Tennessee) and 1225 days remain for claims with a four-year period (California Cartwright Act and UCL and New Jersey).  Sharp's New York Donnelly Act claim is still being tolled due to ongoing federal criminal proceedings, with at least 1006 days remaining in its limitations period.

### *Defendants Participated in and Fraudulently Concealed a Conspiracy.*

Defendants[2] were the leading manufacturers of: (a) color picture tubes ("CPTs") used mostly for televisions; (b) color display tubes ("CDTs") used mostly for computer monitors; and (c) products containing CPTs and CDTs  ("CRT Products").  They and their co-conspirators formed an international cartel and participated in a long-running conspiracy to exchange competitive information and fix, raise, stabilize, and maintain prices for cathode ray tubes ("CRTs").  The conspiracy lasted from at least March 1, 1995, through December 2007 (the "Relevant Period").  Complaint ¶¶ 2-3, *Sharp Elecs. Corp. v. Hitachi, Ltd.*, No. 13-cv-01173 (N.D. Cal. filed March 15, 2013) ("Sharp Complaint"); Complaint ¶¶ 2-3, *Sharp Elecs. Corp. v. Koninklijke Philips Elecs., N.V.*, No. 13-cv-02776 (N.D. Cal. filed June 17, 2013) ("Philips Complaint").

Defendants' conspiracy was actively kept secret and did not give rise to facts that would put Sharp on notice that there was a conspiracy to fix the prices of CRTs.  Sharp Compl. ¶ 222; Philips Compl. ¶ 236.  To keep the conspiracy secret, Defendants organized their conspiratorial meetings to avoid detection.  Sharp Compl. ¶ 223; Philips Compl. ¶ 237.  They held their secret meetings in out-of-the-way locations, and even separated meetings based on the type

---

[2] For the purpose of this Motion, "Defendants" refers to Panasonic Corporation; Panasonic Corporation of North America; MT Picture Display Co., Ltd.; Toshiba Corporation; Toshiba America, Inc.; Toshiba America Information Systems, Inc.; Toshiba America Consumer Products, L.L.C.; Toshiba America Electronic Components, Inc.; Koninklijke Philips N.V.; Philips Electronics North America Corporation; LG Electronics, Inc.; LG Electronics USA, Inc.; LG Electronics Taiwan Taipei Co., Ltd; Hitachi, Ltd.; Hitachi Displays, Ltd.; Hitachi Asia, Ltd; Hitachi America, Ltd; Hitachi Electronic Devices (USA), Inc.; Samsung SDI America, Inc.; Samsung SDI Co., Ltd.; Samsung SDI (Malaysia) SDN. BHD.; Samsung SDI Mexico S.A. DE C.V.; Samsung SDI Brasil Ltda.; Shenzen Samsung SDI Co., Ltd.; and Tianjin Samsung SDI Co., Ltd.

1    of product discussed so as not to bring together large enough numbers of people to attract

2    attention.  Sharp Compl. ¶ 144; Philips Compl. ¶¶ 155, 240.  They agreed not to make minutes of

3    their meetings.  Sharp Compl. ¶ 226; Philips Compl. ¶ 240  They maximized the use of telephone

4    or in-person meetings so as to prevent the existence of written records.  Sharp Compl. ¶ 225;

5    Philips Compl. ¶ 239.  They discussed how to evade antitrust laws.  Sharp Compl. ¶¶ 225-26;

6    Philips Compl. ¶¶ 239-40.

7            They also agreed to give pretextual reasons for their pricing actions and output

8    restrictions.  Sharp Compl. ¶ 223; Philips Compl. ¶ 237.  For instance, in 2001, the prices for

9    CRT finished products were stuck stubbornly at high price levels.  This price stabilization was

10   purportedly due exclusively to a shortage of critical components such as glass.  This was a pretext

11   Defendants used to cover up the conspiracy.  Sharp Compl. ¶ 229; Philips Compl. ¶ 243.  In 2004,

12   when several Defendants, including Samsung SDI, Philips, and LG Electronics, increased the

13   price of CRT Products, Defendants falsely blamed the price hike on a shortage of glass shells

14   used for manufacturing CRT Products.  Sharp Compl. ¶ 230; Philips Compl. ¶ 244.  As a result

15   of these actions, until government investigations were made public, Sharp had neither actual nor

16   constructive knowledge of the facts constituting its claims for relief.[3]

17           ***Government Authorities Publicly Investigated the Conspiracy.***  On November 8,

18   2007, it first became known that governments were investigating a CRT conspiracy.  On that

19   date, the European Commission ("EC") issued a press release stating that its officials had carried

20   out unannounced inspections of several unnamed CRT manufacturers.  Sharp Compl. ¶ 123;

21   Philips Compl. ¶ 134.  Authorities from Japan and South Korea raided the offices of CRT

22   manufacturers on that same day.  Sharp Compl. ¶ 122; Philips Compl. ¶ 133.  Over the course of

23   the next two weeks, Defendants Panasonic, Samsung SDI and Philips all acknowledged that they

24

25

26   [3] With the benefit of discovery, Sharp has alleged additional fraudulent concealment allegations
     in its First Amended Complaint filed October 28, 2013.  *See* First Am. Compl., *In re: Cathode
27   Ray Tube (CRT) Antitrust Litig.*, MDL No. 1917, Lead Case No. 3:07-cv-5944 (N.D. Cal.) (Oct.
28   28, 2013), Dkt. No. 2030.

1   were under investigation by international regulators.  Sharp Compl. ¶¶ 124-25, 127; Philips

2   Compl. ¶¶ 135-36, 138.

3            On February 10, 2009, the United States Department of Justice announced the

4   indictment of the former Chairman and Chief Executive Officer of Chunghwa in connection with

5   the CRT conspiracy.  Sharp Compl. ¶ 129; Philips Compl. ¶ 140.  The indictment charged Mr.

6   Lin with conspiring with others "to suppress and eliminate competition by fixing prices, reducing

7   output and allocating market shares of color display tubes (CDTs) to be sold in the U.S. and

8   elsewhere" and "to suppress and eliminate competition by fixing prices for color picture tubes

9   (CPTs) to be sold in the U.S. and elsewhere" during the Relevant Period.  *Id.*  The DOJ later

10  indicted other CRT executives for participating in the conspiracy.  Sharp Compl. ¶¶ 130, 132-33;

11  Philips Compl. ¶¶ 141, 143-44.  In March 2011, Defendant Samsung SDI agreed to pay a $32

12  million fine when it pleaded guilty to participating in the CRT conspiracy.  Sharp Compl. ¶ 134;

13  Philips Compl. ¶ 145.

14           On December 5, 2012, the EC announced that it had fined seven international

15  groups of companies a total of €1,470,515,000 for conspiring to fix prices of CRTs.  Sharp

16  Compl. ¶ 136; Philips Compl. ¶ 147.  The EC found that "between 1996 and 2006, these

17  companies fixed prices, shared markets, allocated customers between themselves and restricted

18  their output," and observed that the cartel was "among the most organized cartels that the

19  Commission has investigated."  *Id.*  It commented that "the cartelists carried out the most harmful

20  anti-competitive practices including price fixing, market sharing, customer allocation, capacity

21  and output coordination and exchanges of commercial[ly] sensitive information."  *Id.*

22           ***Plaintiffs Filed Putative Class Action Lawsuits.***  Within days of dawn raids in

23  November 2007, Defendants were put on notice of their liability for direct and indirect purchaser

24  civil claims, when plaintiffs filed putative class action lawsuits on behalf of each type of

25  purchasers.  *See, e.g.*, Complaint, *Crago, Inc. v. Chunghwa Picture Tubes, Ltd.*, No. 3:07-cv-

26  05944 (N.D. Cal. filed Nov. 26, 2007), Dkt. No. 1 ("Crago Complaint").  These complaints

27  asserted Sherman Act claims based on the same factual allegations in Sharp's complaints.  Sharp

28

---

1  Compl. ¶ 220; Philips Compl. ¶ 234.[4]  The putative class of direct purchasers in *Crago*, filed

2  November 26, 2007, was defined to include "[a]ll persons and entities who purchased CRT

3  Products [which included CRTs themselves] in the United States directly from one or more

4  defendants between January 1, 1995 and the present."  Crago Compl. ¶ 37; Direct Purchaser

5  Plaintiffs' Consolidated Amended Complaint, *In re: Cathode Ray Tube (CRT) Antitrust Litig.*,

6  MDL No. 1917, Lead Case No. 3:07-cv-5944 (N.D. Cal. filed March 16, 2009) ("DPP Amended

7  Complaint").  Sharp would have been a member of the *Crago* class, had it been certified,

8  including at the time the DPPs filed their first consolidated amended complaint on March 16,

9  2009.

10  Sharp also some indirect claims, based on purchases it made of finished products

11  from its own affiliates, where the CRTs themselves had been purchased from defendants.  But

12  defendants were on notice of liability for indirect claims as well.  The first putative class action of

13  indirect purchasers was filed as early as December 10, 2007, in *Juetten, et al. v. Chunghwa*

14  *Picture Tubes, Ltd.,* No. 07-cv-6225 (N.D. Cal. Dec. 10, 2007).  And in February 2008, Carmen

15  Gonzalez filed a complaint alleging claims under the Sherman Act, the California Cartwright Act,

16  and the California UCL, in a putative class that expressly covered Sharp's indirect claims,

17  comprising all "entities residing in the United States who, from January 1, 1995 to the present,

18  purchased CRT Products [including CRTs themselves] in the United States indirectly from the

19  Defendants."  *See* Complaint ¶ 63, *Gonzalez, et al. v. Chunghwa Pictures Tubes, Ltd.*, No. 08-cv-

20  01108 (N.D. Cal. filed Feb. 25, 2008).  The *Gonzalez* complaint remained pending until March

21  16, 2009, when it was consolidated as part of the IPP consolidated class complaint, which

22  excluded resellers such as Sharp.  Indirect Purchaser Plaintiffs' Consolidated Amended

23

24

25

---

26  [4] In the complaint filed June 17, 2013, Sharp cited to *Crago*.  Philips Compl. ¶ 234.  In the
complaint filed March 15, 2013, Sharp cited to *Nathan Muchnick, Inc. v. Chunghwa Picture*

27  *Tubes Ltd.*, Case No. 3:07-cv-5981 (N.D. Cal., filed Nov. 27, 2007).  Sharp Compl. ¶ 220.  The
class definitions in *Crago* and *Muchnick* are equivalent, and they allege equivalent factual

28  allegations and Sherman Act claims.

Complaint ¶ 240, *In re: Cathode Ray Tube (CRT) Antitrust Litig.*, MDL No. 1917, Lead Case No. 3:07-cv-5944 (N.D. Cal. filed March 16, 2009), Dkt. No. 437 ("IPP Amended Complaint").[5]

   ***Sharp Filed Its Complaints.***  Sharp remained a member of the uncertified putative Direct Purchaser Plaintiffs' class until the day filed its own opt-out complaint on March 15, 2013. *See* DPP Am. Compl.  Even now, the DPP class has still not been certified.

   Prior to opting out, when it remained an absent class member, Sharp sought to gain access to the discovery record in the class action, but counsel for the DPP class and the Defendants opposed those efforts.  When Sharp filed its complaint on March 15, 2013, it did not have access to the discovery record that the Defendants and the other plaintiffs had been building over the last six years.  Sharp Compl.  Sharp filed a second complaint on June 17, 2013, against the Philips defendants, with whom it had entered a tolling agreement effective April 29, 2013. Philips Compl.[6]  Mot. at 1, Malaise Decl.   The complaints contain the same factual allegations and, in both, Sharp brings claims under the Sherman Act (15 U.S.C. § 1) and the following state laws:  **California:**  the California Cartwright Act (Cal. Bus. & Prof. Code §§ 16720, *et seq.*) and the California Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200, *et seq.*); **New York:** the New York Donnelly Act (N.Y. Gen. Bus. L. §§ 340, *et seq.*) and the New York Unfair Competition Law (N.Y. Gen. Bus. L. § 349); **New Jersey:** the New Jersey Antitrust Act (N.J. Stat. §§ 56:9-1, *et seq.*); **Tennessee:** Tennessee Code Ann. §§ 47-25-101, *et seq.*  Sharp Compl. ¶¶ 234-286; Philips Compl. ¶¶ 248-300.

   ***The Court Upheld Plaintiffs' Allegations of Fraudulent Concealment.***   The Defendants have challenged the fraudulent concealment allegations of virtually every plaintiff in the case, up to this point, and have been unsuccessful each time.  Each time, the Court has held

---

[5] The IPP consolidated complaint alleged claims under the Sherman Act and under the state laws of Arizona, California (Cartwright Act and UCL), Florida, Hawaii, Iowa, Kansas, Massachusetts, Michigan, Minnesota, Mississippi, Nebraska, Nevada, New Mexico, New York (UCL), North Carolina, North Dakota, Rhode Island, South Dakota, Tennessee, Vermont, West Virginia, and Wisconsin.  IPP Am. Compl.

[6] Sharp also named Orion Engineering & Service, Inc. as a Defendant in its second complaint; Orion has since defaulted and did not join in this motion.

that various plaintiffs' fraudulent concealment allegations were sufficient at the dismissal stage.
Order at 8 (Aug. 21, 2013), Dkt. No. 1856 (citing *In re Rubber Chems. Antitrust Litig.*, 504 F.
Supp. 2d 777, 789 (N.D. Cal. 2007) and *Conmar Corp. v. Mitsui & Co. (U.S.A.), Inc.*, 858 F.2d
499, 504-05 (9th Cir. 1988)).

## ARGUMENT

"[S]tatutory limitation periods are designed to promote justice by preventing
surprises through the revival of claims that have been allowed to slumber until evidence has been
lost, memories have faded, and witnesses have disappeared." *Am. Pipe & Constr. Co. v. Utah*,
414 U.S. 538, 554 (1974) (internal quotations omitted). That is clearly not an issue here. Up
until the day it filed its complaint, Sharp was a member of a then-uncertified putative class whose
complaint was indisputably timely. Defendants had been on notice of their liability relating to
this conspiracy for years. Moreover, under any reading of the law, Sharp's state law claims are
timely. None of the three- or four-year limitations periods had run, because of the operation,
together or separately, of tolling for fraudulent concealment, government action, and/or pending
class action.

## I.     STANDARDS ON A MOTION TO DISMISS

Motions to dismiss are "rarely" granted in antitrust conspiracy cases like this one,
"where the proof and details of the alleged conspiracy are largely in the hands of the alleged co-
conspirators." *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A.*,
711 F.2d 989, 995 (11th Cir. 1983). To survive a motion to dismiss an antitrust conspiracy
complaint, "'[s]pecific facts are not necessary; the statement need only give the defendant[s] fair
notice of what . . . the claim is and the grounds upon which it rests.'" *In Re CRT*, 738 F. Supp. 2d
at 1017 (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (internal quotation marks omitted)).

Even the cases on which Defendants rely make clear that a complaint may only be
dismissed on limitations grounds at the pleading stage when "it appears beyond doubt that the
plaintiff can prove no set of facts that would establish the timeliness of the claim." *Von Saher v.
Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (quoting *Supermail*

1  *Cargo, Inc. v. U.S.*, 68 F.3d 1204, 1206 (9th Cir. 1995)).  And as to fraudulent concealment, a

2  pleading satisfies the requirement of Federal Rule 9(b) so long as the allegations identify the

3  fraud "'so that the defendant can prepare an adequate answer from the allegations.'"  *Gottreich v.*

4  *San Francisco Inv. Corp.*, 552 F.2d 866, 866 (9th Cir. 1977) (quoting *Walling v. Beverly Enters.*,

5  476 F.2d 393, 397 (9th Cir. 1973)).  This Court has recognized in this MDL that "'it is generally

6  inappropriate to resolve the fact-intensive allegations of fraudulent concealment at the motion to

7  dismiss stage, particularly when the proof relating to the extent of the fraudulent concealment is

8  alleged to be largely in the hands of the alleged conspirators.'"  *In Re CRT*, 738 F. Supp. 2d at

9  1024 (quoting *In re Rubber Chems. Antitrust Litig.*, 504 F. Supp. 2d 777, 789 (N.D. Cal. 2007)).

10          As explained below, Sharp's Complaints allege sufficient facts to meet the tolling

11  requirements for each state law claim at issue in Defendants' motion.

12  **II.      SHARP'S STATE LAW CLAIMS ARE TIMELY**

13

14          Defendants do not dispute that all of Sharp's federal claims are timely under the

15  Clayton Act's four-year statute of limitations, and appropriate tolling doctrines of *American Pipe*

16  and government action tolling.  Their motion concerns only Sharp's state law claims.

17          Those, too, are timely, because of tolling.  Tolling is "a judicially created doctrine

18  that operates to suspend or extend a statute of limitations in order to ensure that a limitations

19  period is not used to bar a claim unfairly."  *Hatfield v. Halifax PLC*, 564 F.3d 1177, 1185 (9th

20  Cir. 2009).  "'[T]he limitations period stops running during the tolling event, and begins to run

21  again only when the tolling event has concluded.'"  *Johnson v. Riverside Healthcare Sys., LP*,

22  534 F.3d 1116, 1127 n.6 (9th Cir. 2008) (quoting *Lantzy v. Centex Homes*, 31 Cal 4th 363, 370

23  (Cal. 2003)); *see Mt. Hood Stages, Inc. v. Greyhound Corp.*, 555 F.2d 687, 698 n.26 (9th Cir.

24  1977) (tolling periods may be tacked together), *vacated and remanded on other grounds*, 437

25  U.S. 322 (1978).  Sharp's complaints were both filed before the running of the three- or four-year

26  limitations period governing each of the state claims, by virtue of tolling for fraudulent

27  concealment, government actions, or class actions, or a combination of them.

28

Sharp filed its claims on March 15, 2013.[7]  At that time, none of the limitations periods for its state law claims had run.

This Court has repeatedly recognized – and the Defendants do not dispute – that all claims were tolled through November 2007 because of Defendants' fraudulent concealment of the conspiracy.  Furthermore, as the table below demonstrates, Sharp's state claims were further tolled under various tolling doctrines after November 2007, such that no limitations period for any state claim had expired when Sharp filed its claims:

| Claims(s): | Statute of Limitation Length (days): | Reason for Tolling: | Tolling Ends: | Minimum Days Left in Limitations Period: |
|---|---|---|---|---|
| New York Donnelly Act | 1460 (four years) | Fraudulent Concealment, Donnelly Act/Government Action, and Cross-Jurisdictional Class Action | Ongoing | 1006 |
| New York UCL and Tennessee Claims | 1095 (three years) | Fraudulent Concealment and Cross-Jurisdictional Class Action | July 23, 2012[8] | 860 |
| California Cartwright Act and UCL Claims; | 1460 (four years) | Fraudulent Concealment and Cross- | July 23, 2012 | 1225 |

---

[7] Instead of March 15, 2013, Sharp's claims against the Philips defendants must be analyzed as of the date on which the Philips defendants signed its tolling agreement: April 29, 2013.  As explained below, Sharp's state law claims were tolled for these claims against the Philips defendants too, so there is no practical difference with respect to statutes of limitations between Sharp's claims against the Philips defendants and the other Defendants.

[8] Sharp opted out of classes specific to defendants that were certified for purposes of settlement.  Accordingly, with respect to those defendants, class action tolling for Sharp ceased when Sharp opted out of their DPP class settlement.  *See Tosti v. City of Los Angeles*, 754 F.2d 1485, 1489 (9th Cir. 1985).  The first such settlement of a defendant in this case occurred on July 23, 2012.  For the non-settling Defendants, Sharp's claims continued to be tolled until Sharp filed its complaint on March 15, 2013, because the DPP class has not yet been certified.  For ease of calculation in this brief, Sharp uses July 23, 2012 as the date class action tolling by DPP class action ceased, because it is the earliest possible date when tolling ceased for any defendant here.

| New Jersey Claims | | Jurisdictional Class Action | | |
|---|---|---|---|---|

### A. No Limitations Period Began to Run Until November 2007 Because the Defendants Fraudulently Concealed the Conspiracy

Defendants devote much of their brief to combatting an argument Sharp does not make: that Defendants fraudulently concealed the conspiracy between November 2007 and November 6, 2009. *See* Mot. at 5-13. Sharp has made clear that it asserts only that the Defendants effectively concealed the conspiracy through November 2007. Pls.' Opp. at 4, 7 (June 21, 2013), Dkt. No. 1744. Defendants do not appear to challenge Sharp's fraudulent concealment allegations through November 2007, nor could they; this Court has twice upheld those same allegations on motions to dismiss. Order at 8 (Aug. 21, 2013), Dkt. No. 1856.[9]

### B. The Federal Government's Actions on the CRT Conspiracy Also Tolled the Statute of Limitations for Donnelly Act Claims Beginning in February 2009

Defendants do not dispute that, under 15 U.S.C. § 16(i), the Department of Justice's criminal actions against CRT conspirators tolled the statute of limitations for Sharp's federal claims as of February 2009. They nonetheless argue that Sharp "cannot benefit from the government tolling provision of 15 U.S.C. § 16(i)" for any of its state claims because that federal statute only purports to toll, by its terms, federal antitrust actions and not state actions. Defs.' Mot. at 14. As to Sharp's claim under the New York Donnelly Act, Defendants' argument, although accurate, is beside the point.

New York's Donnelly Act contains its *own* tolling provision, modeled after the federal provision, and therefore Sharp's claims under that Act are tolled by operation of the *state* statute, without recourse to 15 U.S.C. § 16(i):

> Whenever any civil or criminal proceeding is instituted by the federal government to prevent, restrain, or punish violations of the federal antitrust laws, the running of the period of limitations in respect of every right of action arising under sections

---

[9] To the extent, however, that Defendants do intend to challenge Sharp's fraudulent concealment allegations for the period prior to November 2007, their arguments should be rejected for the same reasons this Court has rejected such arguments before, as to other plaintiffs. Sharp was in precisely the same position, when it filed its complaints, as those other plaintiffs, since Sharp did not then have access to discovery (and, indeed, was denied access despite its requests).

1
2
three hundred forty, three hundred forty-two and three hundred forty-two-a of this article, based in whole or in part on any matter complained of in the federal proceeding, shall be suspended during the pendency of said proceeding and for one year thereafter . . . .

3

4

5

6

7

8

N.Y. Gen. Bus. § 342-c.  Defendants' argument to the contrary is disingenuous; they have already conceded elsewhere in this litigation that the DAPs' identical "New York Donnelly Act claim is not time barred due to the pendency of the federal CRT investigation."  Defs.' Joint Reply at 6 n.5 (Oct. 26, 2012), Dkt. No. 1422.  Accordingly, in the same manner that Sharp's federal claims remain tolled by government action, so too do its Donnelly Act claims.  Pls.' Opp. at 11-15 (June 21, 2013), Dkt. No. 1744.

9

10
**C.    Putative Direct and Indirect Purchaser Actions Also Tolled Sharp's State Law Claims**

11

12

13

14

15

16

17

Class action tolling also affected Sharp's claims.  Immediately after the government's investigation into the CRT conspiracy became public, multiple plaintiffs filed putative class action lawsuits against the Defendants and their co-conspirators, alleging claims under federal and state laws relating to the CRT conspiracy, purporting to cover classes of both direct and indirect purchasers of CRTs and CRT Products.   Sharp Compl. ¶ 220; Philips Compl. ¶ 234.  By December 2007, the Defendants were thus on notice of their exposure for direct and indirect purchaser claims.

18

19

20

21

22

23

24

25

26

27

Under the *American Pipe* class action tolling doctrine, filing an original class action complaint tolls the running of the limitations period for all members of the putative class up to and until class certification is denied, or until the plaintiff opts out of the class.  *Am. Pipe*, 414 U.S. 538; *Employers-Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Anchor Capital Advisors*, 498 F.3d 920, 925 (9th Cir. 2007).  A plaintiff need not even be aware of the pendency of the class action in order to benefit from *American Pipe* tolling, *Tosti*, 754 F.2d at 1489, and the filing of a class action satisfies the policies underlying the limitations period so long as the defendant is "aware of the need to preserve evidence and witnesses" respecting the class members' claims, *Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345, 353 (1983); *Tosti*, 754 F.2d at 1489.  "Tolling the statute of limitations thus creates no potential for unfair surprise,

28

1    regardless of the method class members choose to enforce their rights upon denial of class

2    certification." *Crown*, 462 U.S. at 353.

3          As noted, Defendants were on notice of their liability under: federal law for *direct*

4    claims by November 27, 2007, at the latest; federal law for *indirect* claims by early December

5    2007 at the latest; *state law* claims under the California Cartwright and UCL Acts by December

6    10, 2007, at the latest; and even *indirect* claims under California law in a putative class

7    comprising Sharp by February 25, 2008 at the latest.  As a practical matter, the conspiratorial

8    facts underlying these claims are identical, and so the evidence and witnesses associated with

9    them should be as well; Defendants have made no suggestion to the contrary.  The putative class

10   of DPPs in the consolidated complaint filed on March 16, 2009, included Sharp; the putative class

11   of IPPs in the consolidated complaint filed that same day did not only because the IPP class

12   definition excluded resellers.

13         In any event, the putative class action lawsuits, including the consolidated DPP

14   and IPP actions, tolled the limitations period for Sharp's state claims in California, New Jersey,

15   New York, and Tennessee – even though not all of those alleged claims under state law – because

16   of cross-jurisdictional *American Pipe* tolling.  The first of these, *Crago*, was filed on November

17   26, 2007.  Crago Compl.  These putative class complaints were based on identical factual

18   allegations as Sharp's state law claims.

19         The most comprehensive discussion of cross-jurisdictional tolling appears in *In re*

20   *Linerboard Antitrust Litig.*, 223 F.R.D. 335 (E.D. Pa. 2004).  The *Linerboard* court examined just

21   the situation here – where individual plaintiffs' state law claims were tolled under *American Pipe*

22   by the pendency of class complaints asserting violations of only federal law.  *Id.* at 337.  Several

23   opt-out plaintiffs filed suit against U.S. manufacturers of linerboard, asserting claims under both

24   federal and state laws.  *Id.* at 339-40.  Defendants moved to dismiss the state law claims as time-

25   barred, and the plaintiffs argued their state law claims were tolled during the five years the

26   defendants contested class certification in the federal class action.  *Id.* at 344-45.  The *Linerboard*

27   court described the rationale of the *American Pipe* rule:  without it, putative class members would

28

1    need to "file[] numerous protective, duplicative and in many cases, unnecessary suits" in case

2    class certification were denied.  *Id.* at 345 (citations omitted).

3            The *Linerboard* court then considered the circumstances in which *American Pipe*

4    tolling should apply to state law claims based on the plaintiff's membership in a similar federal

5    law class action.  It examined four criteria: (1) the federal interest in tolling the state statutes of

6    limitations; (2) whether "independent of the federal interest", the state would adopt cross-

7    jurisdictional class action tolling; (3) whether the state law claims are "sufficiently similar to

8    plaintiffs['] federal claims to toll the state statutes of limitations;" and (4) what prejudice the

9    defendants would suffer if the state law claims were tolled.  *Id.* at 345.  Based on these factors, it

10   held that the plaintiffs' state law claims under the laws of Colorado, Indiana, Kansas, South

11   Carolina and Tennessee were tolled from the date of filing of the federal class action until the

12   direct action plaintiffs opted out of the classes.  *Id.* at 352.[10]

13           Each *Linerboard* factor weighs in favor of tolling here.  First, as the *Linerboard*

14   court observed, there is a particularly strong federal interest in recognizing cross-jurisdictional

15   tolling in antitrust cases.  "In the antitrust context, declining to adopt cross-jurisdictional class

16   action tolling will invite the filing of numerous protective, duplicative and in many cases,

17   unnecessary, suits by class members that want to consider filing claims under state antitrust law

18   not included in a federal class action complaint."  *Linerboard*, 223 F.R.D. at 346.

19           Second, the claims Sharp asserts under state law are substantially the same and

20   based on the same allegations as those first asserted by the DPP class plaintiffs in November

21

22   _____

[10] *Raie v. Cheminova, Inc.*, 336 F.3d 1278 (11th Cir. 2003), which Defendants cite in support of
23   their misguided proposition that federal courts "generally" refuse to apply cross-jurisdictional
     tolling is inapposite.  *Raie* did not involve the type of closely interrelated state and federal
24   antitrust and consumer claims at issue here; the class action plaintiffs there asserted state law
     products defects claims, while the individual plaintiffs sought to toll the statute of limitations for
25   wrongful death claims that were, under the applicable Florida law, "different in kind from any
     action based on a defective product."  *Id.* at 1283.  *In re Vertrue Mktg. & Sales Practices Litig.*,
26   712 F. Supp. 2d 703 (N.D. Oh. 2010), is similarly uninstructive; the court specifically declined to
     decide "whether state law would also permit the filing of [the state law] claims under *American*
27   *Pipe*" because the court had already determined those state law claims were timely for other
     reasons.  *Id.* at 718.
28

2007.  *See Tosti*, 754 F.2d at 1489.  What matters is that the suit "concern[s] the same evidence, memories, and witnesses as the subject matter of the original class suit," *Crown*, 462 U.S. at 355, and the defendant had notice of the plaintiff's claims, *Tosti*, 754 F.2d at 1489.  Sharp's state law claims are asserted based on the same factual allegations as Sharp's Sherman Act claims, and Sharp's factual allegations are nearly identical to the class plaintiffs' allegations dating back to November 2007.  As in the Sharp Complaint, the complaint in *Crago* alleges that CRT suppliers "conspired to fix, raise, maintain, and stabilize the price at which CRT Products were sold in the United States at artificially inflated and anticompetitive levels" from March 1995 to November 2007.  Crago Compl. ¶ 37, 82; *accord* Sharp Compl. ¶¶ 5, 139.  This was accomplished, both Sharp and *Crago* alleged, by "defendants exchanging information about their prices, price moves, contract prices to large customers; capacity, capacity utilization, as well as technological and manufacturing advances . . . through e-mail communications, telephone calls, and in person meetings."  Crago Compl. ¶ 91; *accord* Sharp Compl. ¶¶ 140-44.  Both Sharp and *Crago* allege that the Defendants fraudulently concealed their activities, preventing discovery of their wrongdoing.  Crago Compl. ¶¶ 101-06; Sharp Compl. ¶¶ 222-33.  And finally, both Sharp and *Crago* allege antitrust violations resulting in overcharges for CRTs and CRT Products.  Crago Compl. ¶¶ 108-13; Sharp Compl. ¶¶ 235-86.  The allegations in *Crago* and in Sharp's Complaint unquestionably involve "the same evidence, memories, and witnesses."  *Crown*, 462 U.S. at 355.

Third, Defendants would suffer no prejudice – and, indeed, have not identified any.  The Defendants were on notice back in 2007 that they could be sued under each of these states' laws when the first DPP class action complaint was filed against them.  By December 2007, federal direct and indirect and state law claims had been filed against the Defendants in the IPP class cases, based on the same set of factual allegations, alleging, in their consolidated form, violations of the Sherman Act and the state laws of Arizona, California (Cartwright Act and UCL), Florida, Hawaii, Iowa, Kansas, Massachusetts, Michigan, Minnesota, Mississippi, Nebraska, Nevada, New Mexico, New York (UCL), North Carolina, North Dakota, Rhode Island, South Dakota, Tennessee, Vermont, West Virginia, and Wisconsin.  IPP Am. Compl.  Defendants were fully on notice of the factual predicate for the antitrust claims, under both federal and state

1   law, and of class members, regardless of whether those plaintiffs stayed in the classes or opted

2   out.  *See Linerboard*, 223 F.R.D. at 352.  Accordingly, no "potential for unfair surprise" would be

3   created by tolling the statutes of limitations for Sharp's state law claims here.  *Crown*, 462 U.S. at

4   353.

5          Finally, each of the states involved would adopt cross-jurisdictional tolling in

6   antitrust class action cases filed in federal court:

7          ***California***:  California has not ruled specifically on cross-jurisdictional tolling in

8   the antitrust context, but California courts apply closely related equitable tolling for later claims

9   brought by California residents who brought earlier claims as part of a class action in another

10  state.  *See Hatfield,* 564 F.3d at 1185-87; *see also Addison v. State of Cal.*, 578 P.2d 941, 945

11  (Cal. 1978).  California courts would apply equitable tolling to the claims of its unnamed putative

12  class members who are California residents.  *Hatfield*, 564 F.3d at 1186-87 ("the California

13  Supreme Court has indicated a general agreement with tolling in the class action context, going so

14  far as to cite with approval the Supreme Court's decision in *American Pipe*") (citing *Jolly v. Eli*

15  *Lilly & Co.*, 751 P.2d 923, 934-35 (Cal. 1988)).  The purpose of California's equitable tolling

16  doctrine "is to toll the statute of limitations in favor of a plaintiff who acted in good faith where

17  the defendant is not prejudiced by having to defend against a second action."  *Hatfield*, 564 F.3d

18  at 1188.  California courts consider three factors before applying equitable tolling: (1) timely

19  notice to the defendant in the filing of the first claim; (2) lack of prejudice to the defendant in

20  gathering evidence to defend against the second claim; and (3) good faith and reasonable conduct

21  by the plaintiff in filing the second claim.  *Collier v. City of Pasadena*, 191 Cal. Rptr. 681, 685

22  (Cal. Ct. App. 1983).  Sharp prevails under this test.  Defendants were on notice of civil antitrust

23  liability for the CRT conspiracy since *Crago* was filed in 2007, including claims identical to

24  Sharp's California Cartwright Act and UCL claims first filed in December 2007 in *Juetten* and

25  *Gonzalez* (of which Sharp was a class member); they knew that Sharp was a major CRT customer

26

27

28

1    in the United States generally and California specifically;[11] and, in terms of good faith, Sharp

2    filed its opt-out complaints before this Court even issued a preliminary decision certifying any

3    class.

4            Defendants misstate that *Jolly v. Eli Lilly & Co.*, 751 P.2d 923 (Cal. 1988),

5    "rejected" cross-jurisdictional tolling in California.  Defs.' Mot. at 16 n.24.  The *Jolly* court made

6    only a fact-specific decision not to apply class action tolling in that case.  But it did so only

7    because the prior class action did not "sufficiently put defendants on notice of the substance and

8    nature of plaintiff's claims" – not because of any philosophical disagreement with the concept of

9    cross-jurisdictional tolling.  *Jolly*, 751 P.2d at 936.  To the contrary, as the *Hatfield* court

10   observed, the court in *Jolly* "noted with approval the two major policies that underlie the

11   *American Pipe* tolling rule."  *Hatfield*, 564 F.3d at 1187; *see also Becker v. McMillin Contr. Co.*,

12   277 Cal. Rptr. 491, 495 (Cal. Ct. App. 1991).  Likewise, *Clemens v. DaimlerChrysler Corp.*, 534

13   F.3d 1017 (9th Cir. 2008), declined to apply cross-jurisdictional tolling to a plaintiff's California

14   claims based on an Illinois state-law class action, but said nothing about California's equitable

15   tolling doctrine discussed in *Hatfield. Id.* at 1025.  As the Ninth Circuit later made clear in

16   *Hatfield*, the *Clemens* court's decision not to apply cross-jurisdictional "does not affect the

17   application of California's equitable tolling doctrine, which covers situations beyond those

18   covered by *American Pipe*."  *Hatfield*, 564 F.3d at 1188.

19           ***New Jersey.***  New Jersey state courts have adopted *American Pipe* cross-

20   jurisdictional tolling.  *Staub v. Eastman Kodak Co.*, 726 A.2d 955 (N.J. Super. Ct. App. Div.

21   1999).  In *Staub*, a plaintiff alleged products liability claims against healthcare products providers

22   after a putative class action alleging similar claims was filed in federal court.  *Id.* at 957.  The

23   plaintiff argued that the statute of limitations on his state claims had tolled while that class

24   litigation was pending, until class certification was denied.  *Id.* at 961.  The New Jersey court

25   agreed:  "A long line of New Jersey cases have held that the filing of an action in one forum will

26

27   ───────────────
[11] Sharp plaintiff SEMA is "a corporation organized and existing under the laws of California and
     has its principal place of business in San Diego, California" and is a "wholly owned subsidiary
28   of" Sharp plaintiff SEC.  Sharp. Compl. ¶ 24; Philips Compl. ¶ 24.

1    toll the statute of limitations during the pendency of that proceeding so that, if the action is

2    dismissed without an adjudication on the merits, the plaintiff can, subject to equitable

3    considerations, pursue substantially the same claim in another forum, even if the action is

4    instituted in the second forum after the expiration of the period of limitations." *Id.* at 965.  This

5    includes the filing of a putative class action and subsequent claims of a member of the putative

6    class if "the plaintiff's claim is substantially the same as a claim alleged by the putative class

7    plaintiff." *Id.* at 967.

8            Sharp's claims satisfy New Jersey's requirements.  The *Crago* class, of which

9    Sharp was a member until it filed this action, alleged substantially the same claims against the

10   Defendants as Sharp does now based on nearly identical factual allegations.  Crago Compl.

11   Sharp's New Jersey claims were tolled during the pendency of the DPP class complaint.

12           ***New York.***  New York courts have not rejected *American Pipe* cross-jurisdictional

13   tolling and their rulings suggest they would be likely to apply it to Sharp's New York UCL and

14   Donnelly Act claims.  *See Paru v. Mut. of Am. Life Ins. Co.*, 52 A.D.3d 346, 348 (N.Y. App. Div.

15   2008) ("Were we to address it, we would find that the action was timely since the time to

16   commence the action was tolled by the filing of the original punitive class action complaint").  In

17   *Williams v. Dow Chem. Co.*, No. 01-cv-4307, 2004 WL 1348932 (S.D.N.Y. June 16, 2004), the

18   court evaluated whether the pendency of a class action complaint tolled the statute of limitations

19   for an Illinois plaintiff's filing of claims for personal injuries.  *Id.* at *1, 10.  The court determined

20   that New York courts had already partially recognized *American Pipe* tolling and concluded that

21   "New York would likely apply *American Pipe*" in a cross-jurisdictional context.  *Id.* at *12.  To

22   support this conclusion, the court cited four separate New York cases.  *Id.* at *11 (citing *Yollin v.*

23   *Holland Am. Cruises, Inc.*, 468 N.Y.S.2d 873, 874 (N.Y. App. Div. 1983); *Huebner v. Caldwell*

24   *& Cook, Inc.*, 526 N.Y.S.2d 356, 359–60 (N.Y. Sup. Ct.  1988); *Clifton Knolls Sewerage*

25   *Disposal Co. v. Aulenbach*, 451 N.Y.S.2d 907, 908 (N.Y. App. Div. 1982); *Sutton Carpet*

26   *Cleaners v. Firemen's Ins. Co.*, 68 N.Y.S.2d 218, 224 (N.Y. Sup. Ct. 1947), *aff'd*, 78 N.Y.S.2d

27   565 (1st Dep't 1948), *aff'd*, 299 N.Y. 646 (N.Y. 1949)).  The court ultimately determined that the

28   plaintiff's claims were time-barred, however, because <u>Illinois</u>, where the plaintiff's claims arose

1  and where the New York courts had to look under New York's borrowing statute, would not have

2  permitted cross-jurisdictional tolling in that context.  *Id.* at *12-14.

3         Sharp's claims satisfy the requirements of New York law for cross-jurisdictional

4  tolling.  As the court explained in *Williams*, New York courts likely would apply *American Pipe*

5  in a cross-jurisdictional context.  *See id.* at 12.  The impediment present in *Williams* – that the

6  plaintiff's claims accrued under the laws of a state that would not apply *American Pipe* tolling –

7  is not present here.  Sharp Plaintiff SEC is a New York corporation with claims accruing under

8  the laws of New York.  Sharp's New York UCL claim was tolled by the pendency of the direct

9  purchaser class action filed in November 2007.[12]

10        **Tennessee.**  No Tennessee court has spoken to the issue of cross-jurisdictional

11  tolling.  Defendants cite a competing opinion from a federal court outside Tennessee, but not the

12  leading court opinion on cross-jurisdictional tolling, which held that Tennessee would allow

13  cross-jurisdictional tolling for federal antitrust class actions.  *In re Linerboard Antitrust*

14  *Litigation*, 223 F.R.D. at 350-51.  The *Linerboard* court compared Tennessee's class action rule

15  with Federal Rule 23 – determining that the Tennessee Supreme Court had described them as

16  "identical" – and Tennessee's antitrust statute with the Sherman Act – noting that they are "very

17  similar."  *Id.* at 350-51 (citing *Meighan v. U.S. Sprint Commc'ns. Co.*, 924 S.W.2d 632, 637 n.2

18  (Tenn. 1996); Tenn. Code Ann. § 47-25-101; Fed. R. Civ. P. 23; 15 U.S.C. § 1).  While

19  acknowledging that Tennessee's Supreme Court had previously declined to apply cross-

20  jurisdictional tolling in a products liability case, the *Linerboard* court reasoned that the Tennessee

21  Supreme Court would apply cross-jurisdictional tolling in antitrust cases.  *Id.* at 351 (citing

22  *Maestas v. Sofamor Danek Grp., Inc.*, 33 S.W.3d 805, 808 (Tenn. 2000)).  As the *Linerboard*

23  court explained, "the factors the Tennessee Supreme Court considered, judicial economy and

24  costs of litigation, favor adopting cross-jurisdictional class action tolling for antitrust class actions

25

26  [12] Defendants cite *Soward v. Deutsche Bank AG*, 814 F. Supp. 2d 272 (S.D.N.Y. 2011), to argue
   that New York would not adopt cross-jurisdictional tolling.  *See* Defs.' Mot. at 16 n.26.  The

27  *Soward* analysis is unpersuasive, relying, as it does, on only federal cases from New York,
   Kansas, Alabama, Louisiana and Texas, in contrast to the New York state cases that the *Williams*

28  court considered in reaching the opposite conclusion.  *See Soward*, 814 F. Supp. 2d at 281-82.

1    filed in federal court." *Id.*  For the same reasons relied upon in the *Linerboard* case, the Court

2    should apply cross-jurisdictional tolling to Sharp's Tennessee claim.

3                                            **<u>CONCLUSION</u>**

4                For the foregoing reasons, Sharp respectfully submits that the Defendants' Joint

5    Motion to Dismiss should be denied in its entirety.

6

7    DATED:  November 6, 2013          By: /s/  *Craig A. Benson*
                                            _____

8                                            Kenneth A. Gallo (*pro hac vice*)
9                                            Joseph J. Simons (*pro hac vice*)
                                             Craig A. Benson (*pro hac vice*)
10                                           PAUL, WEISS, RIFKIND, WHARTON & GARRISON  LLP
                                             2001 K Street, NW
11                                           Washington, DC  20006
                                             Telephone:  (202) 223-7300
12                                           Facsimile:  (202) 223-7420
                                             Email:  kgallo@paulweiss.com
13                                           Email:  jsimons@paulweiss.com
                                             Email:  cbenson@paulweiss.com
14

15

16                                           Stephen E. Taylor (SBN 058452)
                                             Jonathan A. Patchen (SBN 237346)
17                                           TAYLOR & COMPANY LAW OFFICES, LLP
                                             One Ferry Building, Suite 355
18                                           San Francisco, California 94111
                                             Telephone:  (415) 788-8200
19                                           Facsimile:  (415) 788-8208
                                             Email: staylor@tcolaw.com
20                                           Email: jpatchen@tcolaw.com

21                                           *Attorneys for Plaintiffs*

22

23

24

25

26

27

28