GUIDO SAVERI (22349)
    *guido@saveri.com*
R. ALEXANDER SAVERI (173102)
    *rick@saveri.com*
GEOFFREY C. RUSHING (126910)
    *grushing@saveri.com*
CADIO ZIRPOLI (179108)
    *cadio@saveri.com*
TRAVIS L. MANFREDI (281779)
    *travis@saveri.com*
SAVERI & SAVERI, INC.
706 Sansome Street
San Francisco, CA  94111-5619
Telephone:  (415) 217-6810
Facsimile:  (415) 217-6813

*Interim Lead Counsel for*
*Direct Purchaser Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. 07-5944-SC<br><br>MDL No. 1917 |
| This Document Relates To:<br><br>DIRECT PURCHASER CLASS ACTIONS | **REPLY BRIEF IN SUPPORT OF DIRECT PURCHASER PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>Judge: Honorable Samuel Conti<br>Date: TBD<br>Time: TBD<br>Courtroom: 1, 17th floor |

# REDACTED VERSION

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................ i

TABLE OF AUTHORITIES ........................................................................................ ii

I.   INTRODUCTION. ................................................................................................... 1

II.  THE APPLICABLE STANDARD FOR THIS MOTION ...................................... 3

III. ARGUMENT. ........................................................................................................... 5

    A.  The Proposed Class Is Ascertainable. ............................................................ 5

       1.   The Class Is Ascertainable. ..................................................................... 5

       2.   The Proposed Class Does Not Overlap With the IPP Class. ............... 6

       3.   Samsung's Standing Arguments Lack Merit. ........................................ 7

    B.  DPPs Have Demonstrated Classwide Impact As to Finished Products. ...... 9

       1.   Proof of Impact As to CRTs Establishes Impact for Finished Products. ....................... 9

       2.   ██████████████████████████████████████████ ....... 10

       3.   This Court Has Already Held That Impact Can Be Proven At the Finished Product Level. .......... 12

    C.  A Unitary Class Is Appropriate. ................................................................... 13

    D.  Dr. Leitzinger's Analyses Satisfy the DPPs' Burden of Demonstrating Classwide Proof of Injury and Damages. ............................................................. 14

       1.   Samsung and Dr. Willig Ignore Evidence. ......................................... 14

          a.   ████████████████████████████████ ...................... 14

            i.   ██████████████████████████████ ............ 15

            ii.  ████████████████████████████ ...... 16

          b.   █████████████████████████████████ ............ 16

       2.   ██████████████████████████████████ ................. 17

          a.   ████████████████████████████████ ............. 18

          **b.**  **████████████████████████████████████** 19

          c.   ██████████████████████████████ ............ 21

          d.   Dr. Leitzinger's Reliance on Global Data Is Sound. ..................... 21

          e.   Dr. Leitzinger's Preliminary Damage Study Is Sound. ................ 22

IV. CONCLUSION. ..................................................................................................... 25

DIRECT PURCHASER PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION FOR CLASS
CERTIFICATION—Case No. 07-CV-5944 SC

# TABLE OF AUTHORITIES

## Cases

*Abdullah v. U.S. Sec. Assocs.,*
  No. 11-55653, 2013 WL 5383225 (9th Cir. Sept. 27, 2013)........................................................ 4

*Allied Orthopedic Appliances Inc. v. Tyco Healthcare Group L.P.,*
  247 F.R.D. 156 (C.D. Cal. 2007)............................................................................................. 10

*Amchem Prods., Inc. v. Windsor,*
  521 U.S. 591 (1997)................................................................................................................. 13

*Amgen Inc. v. Connecticut Retirement Plans & Trust Funds,*
  133 S. Ct. 1184 (2013) ......................................................................................................... 3, 4

*Bates v. United Parcel Serv., Inc.,*
  511 F.3d 974 (9th Cir. 2007) (en banc) ..................................................................................... 7

*Bell Atl. Corp. v. AT&T Corp.,*
  339 F.3d 294 (5th Cir. 2003) ................................................................................................... 10

*Beltz Travel Serv., Inc. v. Int'l Air Transp. Ass'n,*
  620 F.2d 1360 (9th Cir. 1980) ................................................................................................... 8

*Blades v. Monsanto,*
  400 F.3d 562, 570 (8th Cir. 2005) ..................................................................................... 10, 23

*Butler v. Sears, Roebuck & Co.,*
  727 F.3d 796 (7th Cir. 2013) ..................................................................................................... 4

*California v. Infineon Technologies AG,*
  No. C 06-4333 PJH,, 2008 WL 4155665 (N.D. Cal. Sept. 5,2008) ......................................... 10

*Chavez v. Bank of Am. Corp.,*
  No. C-10-0653 JCS, 2012 WL 1594272 (N.D. Cal. May 4, 2012) ............................................ 3

*Comcast Corp. v. Behrend,*
  133 S. Ct. 1426 (2013) ................................................................................................... 3, 4, 25

*Eldredge v. Carpenters 46 N. Cal. Counties Joint Apprenticeship and Training Comm.,*
  833 F.2d 1334 (9th Cir. 1987) ................................................................................................. 24

*Ellis v. Costco Wholesale Corp.,*
  285 F.R.D. 492 (N.D. Cal. 2012) ............................................................................................ 24

*Gaudin v. Saxon Mortg. Servs.,*
  Case No. 11-cv-01663-JST, 2013 WL 4029043 (N.D. Cal. Aug. 5, 2013) ............................... 4

*Hanover Shoe, Inc. v. United Shoe Machinery Corp.,*
  392 U.S. 481 (1968) ................................................................................................................. 10

*Herrera v. LCS Fin. Servs. Corp.,*
  274 F.R.D. 666 (N.D. Cal. 2011) .............................................................................................. 5

*Illinois Brick Co. v. Illinois,*
  431 U.S. 720 (1977) ............................................................................................................ 9, 10

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
911 F. Supp. 2d 857 (N.D. Cal. 2012).............................................................. 7, 8, 9

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
No. C-07-5944-SC, 2013 WL 5391159 (N.D. Cal. Sept. 24, 2013) ................................. *passim*

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
No. C-07-5944-SC, 2013 WL 5429718 (N.D. Cal. June 20, 2013), *adopted in full by In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-5944-SC, 2013 WL 5391159 (N.D. Cal. Sept. 24, 2013) .......................................................................... *passim*

*In re Chocolate Confectionary Antitrust Litig.*,
289 F.R.D. 200 (M.D. Pa. 2012) ....................................................................... 24

*In re Diamond Foods, Inc. Sec. Litig.*,
No. C 11-05386 WHA, 2013 WL 1891382 (N.D. Cal. May 6, 2013) ........................ 4

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
M 02-1486 PJH, 2006 WL 1530166 (N.D. Cal. June 5, 2006) ................................ 6

*In re Flash Memory Antitrust Litig.*,
No. C 07-0086 SBA, 2010 WL 2332081 (N.D. Cal. June 9, 2010) ......................... 10

*In re Graphics Processing Units Antitrust Litig.*,
253 F.R.D. 478 (N.D. Cal 2008) ...................................................................... 10

*In re High Fructose Corn Syrup Antitrust Litig.*,
295 F.3d 651 (7th Cir. 2002), *cert. denied sub nom. A.E. Staley Mfg. Co. v. Dellwood Farms, Inc.*, 537 U.S. 1188 (2003) ............................................................... 24

*In re High Pressure Laminates Antitrust Litig.*,
No. 00-mdl-1368, 2006 WL 931692 (S.D.N.Y. Apr. 7, 2006) ............................... 24

*In re High-Tech Employee Antitrust Litig.*,
Case No.: 11–CV–02509–LHK, 2013 WL 5770992 (N.D. Cal. Oct. 24, 2013)............... 20, 25

*In re High-Tech Employees Antitrust Litig.*,
289 F.R.D. 555 (N.D. Cal. 2013) ............................................................... 4, 25

*In re Medical Waste Servs. Antitrust Litig.*,
No. 2:03MD1546 DAK, 2006 WL 538927 (D. Utah, Mar. 3, 2006)........................... 23

*In re New Motor Vehicles Canadian Export Antitrust Litig.*,
522 F. 3d 6 (1st Cir. 2008) .......................................................................... 10

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
725 F.3d 244 (D.C. Cir. 2013).............................................................. 3, 4, 10, 25

*In re Rubber Chems. Antitrust Litig.*,
232 F.R.D. 346 (N.D. Cal. 2005) ................................................................ 4, 6

*In re Static Random Access (SRAM) Antitrust Litig.*,
C-07-01819 CW, 2008 WL 4447592 (N.D. Cal. Sept. 29, 2008) ............................ 6

*In re Static Random Access (SRAM) Antitrust Litig.*,
No. 07-md-01819 CW, 2010 WL 5071694 (N.D. Cal. Dec. 7, 2010) ...................... 24

DIRECT PURCHASER PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION FOR CLASS CERTIFICATION—Case No. 07-CV-5944 SC

*In re Sulfuric Acid Antitrust Litig.*,
   446 F. Supp. 2d 910 (N.D. Ill. 2006) .................................................................... 24

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   267 F.R.D. 291 (N.D. Cal. 2010) ............................................................... *passim*

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   No. M 07-1827 SI, 2010 WL 1264230 (N.D. Cal. March 28, 2010) ......................... 8

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   No. M:07-1827 SI, 2011 WL 5357906 (N.D. Cal. Nov. 7, 2011) ............................. 8

*In re Titanium Dioxide Antitrust Litig.*,
   No. RDB-10-0318, 2013 WL 1855980 (D. Md. May 1, 2013) .............................. 24

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
   722 F.3d 838 (6th Cir. 2013) ......................................................................... 4, 25

*In re Wholesale Grocery Prods. Antitrust Litig.*,
   No. 09–MD–2090 ADM/AJB, 2012 WL 3031085 (D. Minn. July 25, 2012) ......... 23

*Leyva v. Medline Indus.*,
   716 F.3d 510 (9th Cir. 2013) .............................................................................. 4

*Masimo Corp. v. Tyco Health Care Group LP*,
   No. CV 02-4770 MRP, 2006 WL 1236666 (C.D. Cal. July 9, 2008) ..................... 23

*Messner v. Northshore Univ. Health System*,
   669 F.3d 802 (7th Cir. 2012) .............................................................................. 4

*Paige v. California*,
   291 F.3d 1141 (9th Cir. 2002), *cert. denied*, 537 U.S. 1189 (2003) ..................... 24

*Royal Printing Co. v. Kimberly Clark Corp.*,
   621 F.2d 323 (9th Cir. 1980) ...................................................................... *passim*

*Sanders v. Apple Inc.*,
   672 F. Supp. 2d 978 (N.D. Cal. 2009) ................................................................. 7

*Somers v. Apple, Inc.*,
   258 F.R.D. 354 (N.D. Cal. 2009) ...................................................................... 10

*Stearns v. Ticketmaster Corp.*,
   655 F.3d 1013 (9th Cir. 2011), *cert. denied*, 132 S. Ct. 970 (2012) ....................... 7

*Thompson v. Bruister & Assocs.*,
   No. 3:07-00412, 2013 WL 4507740 (M.D. Tenn. Aug. 23, 2013) ......................... 4

*Valentino v. Carter-Wallace, Inc.*
   97 F. 3d 1227 (9th Cir. 1996) ............................................................................ 5

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011) ...................................................................................... 3

*Won Kyung Hwang v. Ohso Clean, Inc.*,
   2013 WL 1632697 (N.D. Cal. Apr. 16, 2013) ...................................................... 7

DIRECT PURCHASER PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION FOR CLASS
CERTIFICATION—Case No. 07-CV-5944 SC

*Zeisel v. Diamond Foods, Inc.*,
  No. C 10–01192 JSW, 2011 WL 2221113 (N.D. Cal. June 7, 2011) ........................................ 5

**Statutes**

Federal Rule of Civil Procedure 23 ................................................................................. 1, 4

DIRECT PURCHASER PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION FOR CLASS
CERTIFICATION—Case No. 07-CV-5944 SC

1    I.    **INTRODUCTION.**

2          The Direct Purchaser Plaintiffs ("DPPs") submit this reply to the opposition to their motion

3    for class certification filed by the Samsung SDI Defendants ("Samsung").[1]

4          Samsung asserts three arguments against certification of the DPP class. *First*, it argues that

5    purchasers of Finished Products – televisions and computer monitors – should not be included in

6    any certified class because (1) they destroy ascertainability; and (2) classwide impact cannot be

7    determined as to Finished Products. *Second*, Samsung argues that purchasers of CPTs (color picture

8    tubes) and CDTs (color display tubes) should not be included in a single class. *Third*, in a single

9    sentence on the last page of its brief, Samsung argues that no class of any sort should be certified

10   because DPPs "have failed to provide a common method of proving impact and damages to either

11   all CPT purchasers or all CDT purchasers." Defendants' Memorandum of Points and Authorities in

12   Opposition to Direct Purchaser Plaintiffs' Motion for Class Certification, at 40 (Sept. 11, 2013)

13   ("Opp."). Samsung does not challenge that the Rule 23(a) requirements of numerosity,

14   commonality, typicality and adequacy, as well as Rule 23(b)(3) superiority, are satisfied.

15         Samsung's arguments are an exercise in evasion and obfuscation. First, the class definition

16   is plainly ascertainable – not only is it precise and objective, but it is also identical to that of many

17   classes certified in price-fixing cases. Samsung's assertion that DPPs must demonstrate impact at

18   the Finished Product level misstates the law. In any event, the analysis of DPPs' expert economist,

19   Dr. Jeffrey Leitzinger, demonstrates such impact.

20         Samsung's argument that CDTs and CPTs may not be included in the same class also fails.

21   As shown by this Court's certification of settlement classes including both CDTs and CPTs, the

22   products in a single class need not be identical in all respects. Samsung's assertion that there were

23   separate conspiracies for CPTs and CDTs with no common issues ignores DPPs' allegations and the

24   evidence. However, if the Court deems it a problem, the solution is simply to certify subclasses.

25         Finally, as to impact, DPPs presented three types of common evidence, each sufficient to

26

27   _____

28   [1] The Hitachi defendants joined in the opposition to the instant motion but have since settled with
     DPPs and withdrawn their opposition. Samsung is the sole remaining Defendant.

1   establish classwide harm: (1) documentary proof of the conspiracy and its classwide effects; (2)

2   evidence of characteristics of the CRT market indicating that the impact of the conspiracy would be

3   classwide; and (3) the statistical analysis of Dr. Leitzinger. Dr. Leitzinger also performed a full-

4   fledged damage study. Collectively, this evidence easily satisfies DPPs' burden.

5       Samsung's response to this overwhelming showing is to ignore most of it. It ignores

6   completely the extensive, detailed and irrefutable documentary evidence of the conspiracy and its

7   impact, and quibbles with the evidence regarding the characteristics of the CRT market.

8       Samsung's criticisms of Dr. Leitzinger's statistical analysis depend on mischaracterizations

9   of the evidence and his report. Samsung also mischaracterizes the analyses of its own expert, Dr.

10  Robert Willig, which in many instances support Dr. Leitzinger's conclusions. None of Dr. Willig's

11  arguments undermine Dr. Leitzinger. As he states:

12
13          For the reasons set forth below, I find no merit in the criticisms raised by Dr. Willig
            and stand by my original conclusions. As an overarching matter, his claims regarding
            the need for "individualized examination" find no support in the facts of this case.
14          And the conclusions he draws about the likely limited extent and scope of the alleged
            conspiracy's impact have no merit.
15

16  Reply Expert Report of Dr. Jeffrey Leitzinger ¶ 5 (Nov. 11, 2013) ("LRD").

17      Samsung also completely ignores the Interim Special Master's ("ISM") report and

18  recommendation regarding the Indirect Purchaser Plaintiffs' ("IPP") class motion, which explicitly

19  found that impact could be shown on a classwide basis at the direct purchaser level. *See In re*

20  *Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-5944-SC, 2013 WL 5429718, at *19-20. (N.D.

21  Cal. June 20, 2013) ("*CRT I*"), *adopted in full by In re Cathode Ray Tube (CRT) Antitrust Litig.*,

22  No. C-07-5944-SC, 2013 WL 5391159 (N.D. Cal. Sept. 24, 2013) ("*CRT II*"), at *1, *9. The ISM

23  also rejected arguments that the proposed IPP class was not ascertainable. *Id.* at *8-9. Samsung

24  makes no attempt to distinguish the ISM's decision or otherwise explain why it does not require

25  certification of a DPP class. This failure is fatal because the Court has since adopted the ISM's

26  recommendations "in full." *CRT II*, 2013 WL 5391159, at *1, *9.

27      Furthermore, the Court applied a legal standard for evaluating the movant's burden on a

28  motion for class certification that is completely at odds with the draconian standard espoused by

2

1   Samsung. *Id.* at *5-6. The Court also rejected Dr. Willig's challenges to the analysis of the IPPs'

2   expert, Dr. Janet Netz. *Id.* at *7-9. The Court recognized that in order to show classwide harm to

3   IPPs, Dr. Netz had to first show classwide harm to DPPs – the same showing required here – and

4   concluded that Dr. Netz' analyses did so. *See id.* at *3. This ruling is the law of the case.[2] Dr.

5   Willig's declaration renews many of his rejected criticisms of Dr. Netz.

6   **II.     THE APPLICABLE STANDARD FOR THIS MOTION.**

7          Defendants cite the D.C. Circuit's decision in *In re Rail Freight Fuel Surcharge Antitrust*

8   *Litig.*, 725 F.3d 244 (D.C. Cir. 2013) ("*Rail Freight*") for two general propositions: (1) that the

9   United States Supreme Court's decision in *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013)

10  ("*Comcast*") effected a "sea change" in class certification standards (Opp. at 1); and (2) that

11  certification should not be granted unless the movant can prove injury to all putative class members

12  *Id.* at 19. Defendants further contend that *Rail Freight* precludes certification of classes that exhibit

13  "false positives." *Id.* at 11, 24-25. These conclusions are incorrect.

14         To begin with, *CRT II* rejected the notion that *Comcast* effectuated any "sea change." It said:

15         Defendants continually argue that the ISM's conclusions were based on a faulty
       standard or that the standard somehow changed drastically under [*Wal-Mart Stores,*
16     *Inc. v.*] *Dukes* [, 131 S. Ct. 2541 (2011)], *Comcast*, or *Amgen* [*Inc. v. Connecticut*
       *Retirement Plans & Trust Funds*, 133 S. Ct. 1184 (2013) ("*Amgen*")], but the Court
17     does not find that this is true. It is true that the Court's rigorous analysis overlaps with
       the merits of the IPPs' claims and requires that the IPPs make an evidentiary case for
18     predominance . . . , but Defendants are trying to push the ISM and the Court toward a
       full-blown merits analysis, which is forbidden and unnecessary at this point . . . .
19

20  *CRT II*, 2013 WL 5391159, at *5. The Court also rejected the proposition that every single class

21  member must show harm at the certification stage:

22         Defendants' argument on this point is essentially that the IPPs must be able to prove
       at the class certification stage that every single (or basically every single) class
23     member was injured by Defendants' conduct. This contention is wrong. The Court's
       job at this stage is simple: determine whether the IPPs showed that there is a
24     reasonable method for determining, on a classwide basis, the antitrust impact's
       effects on the class members. This is a question of methodology, not merit.
25

26

27  _____

28  [2] *Chavez v. Bank of Am. Corp.*, No. C-10-0653 JCS, 2012 WL 1594272, at *4-5 (N.D. Cal. May 4, 2012).

1   *Id.* (citations omitted).[3]

2          Second, *Rail Freight* is not controlling law in this Circuit. In *Leyva v. Medline Indus.*, 716

3   F.3d 510 (9th Cir. 2013) ("*Leyva*"), the Ninth Circuit vacated a denial of class certification,

4   reaffirmed the principle that individual damage issues do not preclude certification, and

5   distinguished *Comcast*. *Id.* at 513-14, 516.[4]

6          Third, many courts have agreed that *Comcast* breaks no new ground in class action

7   jurisprudence, often citing the dissenters in *Comcast*.[5] Indeed, *Comcast* was preceded this year by

8   *Amgen*, which reaffirmed that free-ranging merits inquiries are not proper at class certification and

9   that a plaintiff need not show that each element of its claim is susceptible to classwide proof. Mem.

10  at 17, 22. *See In re Diamond Foods, Inc. Sec. Litig.*, No. C 11-05386 WHA, 2013 WL 1891382, at

11  *11 (N.D. Cal. May 6, 2013).

12         Finally, *Rail Freight* is distinguishable from this case. There, the D.C. Circuit focused on

13  whether plaintiffs' expert's analysis yielded damages for "legacy shippers" who had entered into

14

---

15  [3] To the extent the D.C. Circuit held that all members of a putative class must demonstrate injury at

16  class certification, its view is inconsistent with precedents from other circuits, such as *Messner v. Northshore Univ. Health System*, 669 F.3d 802, 819 (7th Cir. 2012) ("*Messner*"). *See* Corrected

17  Memorandum of Points and Authorities in Support of Direct Purchaser Plaintiffs' Motion for Class Certification, at 25 n.46 (Aug. 1, 2013) ("Mem."). After *Comcast*, the Seventh Circuit continued to

18  cite *Messner* with approval. *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013). This view is also contrary to settled law in this Circuit. *In re Rubber Chems. Antitrust Litig.*, 232

19  F.R.D. 346, 353 (N.D. Cal. 2005) ("*Rubber Chems.*"); *In re Static Random Access Memory (SRAM)*

20  *Antitrust Litig.*, No. 07-md-01819 CW, 2010 WL 5141861, at *2-5 (N.D. Cal. Dec. 13, 2010). *See also In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 291, 313 (N.D. Cal. 2010) ("*LCDs*

21  *I*"). This Court's order on the IPP certification motion is consistent with that body of law.

22  [4] *See also Abdullah v. U.S. Sec. Assocs.*, No. 11-55653, 2013 WL 5383225, at *1, *8 (9th Cir. Sept.

23  27, 2013) (affirming district court decision to certify a meal break subclass under Rule 23(b)(3) after *Comcast*). *Accord, Gaudin v. Saxon Mortg. Servs.*, Case No. 11-cv-01663-JST, 2013 WL

24  4029043, at *9 (N.D. Cal. Aug. 5, 2013); *Astiana v. Kashi Co.*, 291 F.R.D. 493, 506 (S.D. Cal. 2013). *See Thompson v. Bruister & Assocs.*, No. 3:07-00412, 2013 WL 4507740, at *11 (M.D.

25  Tenn. Aug. 23, 2013) (discussing *Leyva*). *Leyva* and *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 860 (6th Cir. 2013) ("*Glazer*") were decided before *Rail Freight*,

26  contrary to Samsung's assertion that it was the first court to apply *Comcast*.

27  [5] *See Butler*, 727 F.3d at 800 (7th Cir. Aug. 22, 2013); *Glazer*, 722 F.3d at 860; *Manno v. Healthcare Revenue Recovery Group, LLC*, 289 F.R.D. 674, 694 (S.D. Fla. 2013); *In re High-Tech*

28  *Employees Antitrust Litig.*, 289 F.R.D. 555, 583 (N.D. Cal. 2013) ("*High-Tech I*").

---

4

1   rail freight contracts before the onset of the class period and could not have been harmed. 725 F.3d

2   at 253-55. These were the "false positives" at issue there. No similar situation exists here.

3   **III.   ARGUMENT.**

4       **A. The Proposed Class Is Ascertainable.**

5           Samsung misstates the law and ignores the Court's rulings when it argues that including

6   Finished Products in the class destroys ascertainability and renders the class definition overbroad.

7           **1.  The Class Is Ascertainable.**

8           The standard for "ascertainability" is simple and straightforward: "a class will be found to

9   exist if the description of the class is precise, objective and definite enough so that it is

10  administratively feasible for the court to ascertain whether an individual is a member." *CRT I*, 2013

11  WL 5429718, at *8. The proposed class satisfies this standard. It includes those who bought a CRT

12  or a television or computer monitor containing a CRT from "any Defendant or subsidiary or affiliate

13  thereof, or any co-conspirator." Mem. at 3. The definition is precise and objective. Class members

14  can be determined from Defendants' sales records, or by Class members' invoices. Settlement class

15  notices already given herein were based on Defendants' records. Declaration of Geoffrey C.

16  Rushing in Support of DPPs' Motion for Class Certification ("Rushing Decl.") ¶ 4.

17          Samsung's assertion that the term "affiliates" is vague is unfounded. The products at issue,

18  the defendant manufacturers, and related entities have recognizable brand names. There is no

19  meaningful risk that class members will be unable to determine if they are in the Class.[6] The

20  question in the notice will be clear: "Did you buy a CRT or Finished Product from a Defendant or a

21  _____

22  [6] The fact that a plaintiff cannot, at the time of moving for class certification, identify all putative
    class members does not preclude certification. *Zeisel v. Diamond Foods, Inc.*, No. C 10-01192 JSW,
23  2011 WL 2221113, at *6 (N.D. Cal. June 7, 2011) ("[T]he identity of the class members need not be
    known at the time of certification."). Moreover, "[i]t is not fatal for a class definition to require
24  some inquiry into individual records, as long as the inquiry is not so daunting as to make the class
    definition insufficient." *Herrera v. LCS Fin. Servs. Corp.*, 274 F.R.D. 666, 673 (N.D. Cal. 2011)
25  (internal quotation marks and citations omitted). *Valentino v. Carter-Wallace, Inc.* 97 F. 3d 1227,
    1234 (9th Cir. 1996) is inapposite. It involved an allegedly harmful prescription drug. *Id.* at 1228-
26  29. Among many problems, the class as certified presented "due process" issues because it included
27  individuals who had not yet been injured, but might suffer serious injury. These class members
    would not have sufficient information to decide whether to opt out. *Id.* at 1234.

28

1   member of a Defendant's corporate family?"

2         Moreover, this question, and the language "from any Defendant or subsidiary or affiliate

3   thereof, or any co-conspirator" is not materially different from that commonly used in price-fixing

4   actions. This Court has certified five settlement classes using identical or virtually identical

5   language (Dkt. Nos. 1179, 1412, 1333, 1508, 1441, 1621, 1603, 1791). Other courts have also

6   approved direct purchaser classes with similar language.[7]

7         **2.  The Proposed Class Does Not Overlap With the IPP Class.**

8         Despite the fact that their claims are identical to those of "direct purchasers," Samsung

9   makes much of the fact that purchasers from subsidiaries or affiliates of conspirators are technically

10  "indirect." It asserts that the presence of both "direct" and "indirect" purchasers in a single class is

11  extraordinary and improper. Astonishingly, Samsung also asserts that the proposed DPP class

12  overlaps with the just certified IPP class. Opp. at 13. Both assertions are incorrect.

13        *First*, as DPPs explained, the distinction between "direct" purchasers and "indirect"

14  purchasers from subsidiaries or affiliates is not meaningful in this context. Their claims are

15  essentially identical – *e.g.*, both are entitled under federal law to the "entire overcharge." Mem. at. 4

16  n.7. Samsung ignores this authority. Moreover, the ubiquity of class definitions including "indirect"

17  purchasers from "subsidiaries and affiliates" makes clear that including purchasers entitled to

18  pursue federal damage claims under *Royal Printing Co. v. Kimberly Clark Corp.*, 621 F.2d 323 (9th

19  Cir. 1980) ("*Royal Printing*") in "direct" purchaser classes is common. Samsung's suggestions that

20  they preclude class certification are incorrect.

21  

22  [7] *See, e.g.*, *Rubber Chems.*, 232 F.R.D. at 355 (certifying a class of direct purchasers "from any of

23  the defendants, or any present or former parent, subsidiary or affiliate thereof"); *In re Static Random Access (SRAM) Antitrust Litig.*, C-07-01819 CW, 2008 WL 4447592, at *1, *7 (N.D. Cal. Sept. 29, 2008) (certifying a class of direct purchasers "from Defendants or any subsidiaries or

24  affiliates thereof"); *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, M 02-1486

25  PJH, 2006 WL 1530166, at *2, *11 (N.D. Cal. June 5, 2006) (certifying a class of direct purchasers "from the defendants or their subsidiaries"). In *LCD*, the court rejected the same argument

26  regarding virtually identical language. The proposed class definition referred to the purchase of an LCD product "from any defendant or any subsidiary thereof, or any named affiliate, or any named

27  co-conspirator." *LCDs I*, 267 F.R.D. at 315. Judge Illston said that any issue could be resolved by listing the relevant entities in the class definition and class notice. *Id.* at 299-300. If necessary,

28  something similar can easily be done here.

DIRECT PURCHASER PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION FOR CLASS
CERTIFICATION—Case No. 07-CV-5944 SC

1    *Second*, the DPP Class does not overlap with the IPP class. The IPP class is limited to end-

2    users, (*CRT I*, 2013 WL 5429718, at *1 (purchased "for their own use and not for resale")) and the

3    IPP lead counsel has confirmed that there is no overlap with the settlement classes already certified.

4    Rushing Decl., Ex. 4 at 106:12 (DPPs "not subsumed within our class."). Samsung submits no

5    evidence to the contrary.

6    ### 3.  Samsung's Standing Arguments Lack Merit.

7    Samsung's arguments that the class definition is overbroad or imprecise because it may

8    include Finished Product purchasers who do not satisfy *Royal Printing* are also incorrect.

9    *First*, standing in a class action is determined with reference to named plaintiffs only. *See*

10   *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1021 (9th Cir. 2011), *cert. denied*, 132 S. Ct. 970

11   (2012) ("In a class action, standing is satisfied if at least one named plaintiff meets the requirements

12   . . . . Thus, we consider only whether at least one named plaintiff satisfies the standing requirements

13   . . . ." (quoting *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (en banc)

14   (ellipses in original))). If Samsung is arguing that the Class may not be certified because absent

15   class members lack standing, its argument is plainly incorrect.[8]

16   *Second*, this Court has already held that DPPs have submitted evidence sufficient to support

17   a finding that the class representatives have standing. *In re Cathode Ray Tube (CRT) Antitrust*

18   *Litig.*, 911 F. Supp. 2d 857, 872 (N.D. Cal. 2012) ("*CRT III*") ("This evidence [by Plaintiffs] raises

19   a genuine issue of material fact as to whether the Named DPPs purchased FPs incorporating the

20   allegedly price-fixed CRTs from some defendant-owned or -controlled division or subsidiary.

21   Accordingly, Defendants have not carried their summary judgment burden of showing an absence

22   of evidence in support of applying the ownership and control exception.").

23   *Third*, the mere possibility that DPPs will not be able to **prove at trial** that all of the alleged

24   Defendants were conspirators, or that all of the entities from whom class members may have

25   purchased meet the requirements of *Royal Printing* is no basis to deny class certification. As the

26   ─────────────────

27   [8] The cases upon which Samsung relies all predate *Stearns. See also Won Kyung Hwang v. Ohso Clean, Inc.*, 2013 WL 1632697, at *20 (N.D. Cal. Apr. 16, 2013) (distinguishing *Sanders v. Apple*

28   *Inc.*, 672 F. Supp. 2d 978, 991 (N.D. Cal. 2009)).

DIRECT PURCHASER PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION FOR CLASS
CERTIFICATION—Case No. 07-CV-5944 SC

1    Court has held, that is a jury question. Indeed, in the *LCD* litigation, the issue of ownership or

2    control with respect to direct purchaser claims was dealt with at the summary judgment phase, after

3    certification. *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M:07-1827 SI, 2011 WL

4    5357906, at *2 (N.D. Cal. Nov. 7, 2011).[9]

5         *Fourth*, Samsung's various arguments regarding purchases from Tatung lack merit. Tatung

6    is the parent corporation of Defendant Chunghwa, and the Court has rejected the argument (on

7    summary judgment) that *Royal Printing* does not apply. *See CRT III*, 911 F. Supp. 2d at 872. *See*

8    *also In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI, 2010 WL 1264230, at *1-2

9    (N.D. Cal. March 28, 2010) (rejecting similar arguments regarding Tatung).[10]

10        Finally, as for the argument that the term "Defendant" in the class definition includes

11   entities that did not sell CRTs, again, this was true in *LCDs I*, but was not a basis to deny

12   certification. Sellers of Finished Products who participate in the alleged conspiracy are liable even if

13   their role was more peripheral than that of CRT manufacturers. "Participation by each conspirator in

14   every detail in the execution of the conspiracy is unnecessary to establish liability . . ." *Beltz Travel*

15   *Serv., Inc. v. Int'l Air Transp. Ass'n*, 620 F.2d 1360, 1366-67 (9th Cir. 1980). Moreover, purchases

16   from such Defendants will be included in the case whether or not they are found to be conspirators

17   _____

18   [9] As to almost all of the entities in question, there can be no dispute that they satisfy the *Royal*
     *Printing* exception. All but a handful are wholly owned by the Defendant parent corporation, or
19   another wholly owned subsidiary. DPPs submitted an enormous amount of evidence supporting
     their *Royal Printing* allegations in opposition to Defendants' motion for summary judgment
20   regarding Finished Products. *See* Direct Purchaser Plaintiffs' Memorandum of Points and
     Authorities in Opposition to Defendants' Motion for Partial Summary Judgment (Feb. 24., 2012)
21   (Dkt. No. 1245); Declaration of R. Alexander Saveri in Support of Opposition to Defendants'
     Motion for Partial Summary Judgment (submitted under seal to the Court on Feb. 24, 2012). This
22   evidence encompassed the relationships within the Samsung, LG, Hitachi, Toshiba, Philips,
     Panasonic and Chunghwa/Tatung corporate groups. Samsung's suggestion that it is in the dark
23   about the basis for DPPs' allegations of "ownership and control" strains credulity. For the record,
     DPPs interrogatory responses list the "affiliates," "subsidiaries," and "co-conspirators" they believe
24   sold CRTs or Finished Products to class members in response to discovery. *Id.* ¶ 2, & Ex. 1. The
     vast majority of these entities were also identified in DPPs' complaint.
25

26   [10] Samsung's assertion that Tatung is a member of the proposed DPP class is also incorrect. The
     class definition specifically excludes "defendants, their parent companies, subsidiaries or affiliates."
27   The stipulation dismissing Tatung does not contravene the class definition or require any claim by
     Tatung to be accepted.
28

1    – each of these Defendants is within the *Royal Printing* exception.

2    **B. DPPs Have Demonstrated Classwide Impact As to Finished Products.**

3        Samsung's argument that DPPs have not shown classwide impact as to Finished Products

4    fails as a matter of law and fact. Opp. at 19-21.

5        **1. Proof of Impact As to CRTs Establishes Impact for Finished Products.**

6        *First*, as DPPs explained, they need not make a separate showing of impact at the Finished

7    Product level, beyond showing impact at the tube level. Mem. at 32. As the Court has explained:

8        Lastly, Defendants suggest that standing should be denied to the Named DPPs
     because, as indirect purchasers, their claims would involve the complicated

9        apportionment of damages warned against in *Illinois Brick*. . . . The concern is
     misplaced. *Royal Printing* explicitly addressed the issue of apportioning damages

10       and held that, in cases proceeding under the ownership and control exception, no
     apportionment is needed; plaintiffs are permitted to sue "for the entire overcharge."

11

12   *CRT III*, 911 F. Supp. 2d at 871 (citation omitted).

13       Samsung's arguments overlook the primary point of *Illinois Brick Co. v. Illinois*, 431 U.S.

14   720 (1977) ("*Illinois Brick*"), *Royal Printing*, and *CRT III*: that "pass-on" analysis is not allowed.

15   *Illinois Brick* restricted antitrust standing to direct purchasers in the name of vigorous civil

16   enforcement of the antitrust laws. *See id.* The chief mechanism by which this was accomplished was

17   to eliminate "pass-through" analysis from federal antitrust actions. *Royal Printing*, 621 F.2d at 327.

18   The *Royal Printing* exception is a necessary corollary to the *Illinois Brick* rule, because otherwise,

19   price fixers could avoid antitrust liability by making sure the first sale of the price-fixed product

20   was to a related party. *Id.* at 326-27.

21       As *Royal Printing* and this Court have made clear, however, the exception does not relax the

22   ban on pass-through analysis. Samsung's position that Finished Product purchasers "must come

23   forward with evidence that they personally suffered some actual injury" (Opp. at 21) is directly

24   contrary to these holdings. As the Ninth Circuit in *Royal Printing* stated: "[d]etermining what

25   portion of the illegal overcharge was 'passed on' to Royal Printing and what part was absorbed by

26   the middlemen would involve all the evidentiary and economic complexities that *Illinois Brick*

27   clearly forbade." 621 F.2d at 327. Samsung's attempt to distinguish these holdings as dealing with

28   damages not impact fails because the analysis is essentially the same. The question of impact is

9

1    simply whether *any* "portion of the illegal overcharge was 'passed on.'"

2         Furthermore, Samsung's insistence that Finished Product purchasers must demonstrate

3    "actual harm" misstates the law. Under *Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, 392

4    U.S. 481 (1968) and *Illinois Brick*, a plaintiff demonstrates "harm" when it shows that it paid a

5    higher price than it would have absent the conspiracy, even if a "pass-on" analysis might show that

6    it suffered no actual harm. *Hanover Shoe*, 392 U.S. at 489; *Illinois Brick*, 431 U.S. at 746-47.[11]

7         Finally, it is not DPPs' position that purchasers of Finished Products need make no showing

8    whatsoever of impact. It is simply that impact is measured at the CRT level, just as are damages.

9    **2.** ███████████████████████████████████████

10   ███████████████████████████████████████████████

11   ███████████████████████████████████████████████

12   ███████████████████████████████████████████████

13   ███████████████████████████ Corrected Expert Report of Dr. Jeffrey

14   Leitzinger ¶¶ 76-83. Aug. 1, 2013) ("Leitzinger Rep."). Samsung's contrary assertions lack merit.

15   ███████████████████████████████████████████████

16   ████████████████████████████████████

_____

[11] Samsung's citation of *In re Graphics Processing Units Antitrust Litig.*, 253 F.R.D. 478, 499
(N.D. Cal 2008) ("*GPU*") for the proposition that DPP Finished Product purchasers must show "by
common proof that (1) 'defendants overcharged their direct purchasers' *and* (2) 'those direct
purchasers passed on the overcharges to the plaintiffs'" is nonsensical. The discussion in *GPU* upon
which Samsung relies refers to "true" indirect purchaser actions arising under *state law*, where pass-
on analysis is required rather than prohibited. *See id.* at 498-99. The same is true of *Somers v.
Apple, Inc.*, 258 F.R.D. 354 (N.D. Cal. 2009), *California v. Infineon Techs. AG*, No. C 06-4333
PJH, 2008 WL 4155665 (N.D. Cal. Sept. 5, 2008), and *In re Flash Memory Antitrust Litig.*, No. C
07-0086 SBA, 2010 WL 2332081 (N.D. Cal. June 9, 2010) ("*Flash*"). None of these cases have
anything to do with the issue before the Court. The decisions in *Rail Freight*, *In re New Motor
Vehicles Canadian Export Antitrust Litig.*, 522 F. 3d 6, 19 (1st Cir. 2008), *Blades v. Monsanto*, 400
F.3d 562, 570 (8th Cir. 2005), *Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294 (5th Cir. 2003), and
*Allied Orthopedic Appliances Inc. v. Tyco Healthcare Group L.P.*, 247 F.R.D. 156 (C.D. Cal. 2007)
also do not address the question of whether a purchaser from an "owned or controlled" entity under
*Royal Printing* must perform a "pass-through analysis" to demonstrate impact. They are therefore
inapposite.

DIRECT PURCHASER PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION FOR CLASS
CERTIFICATION—Case No. 07-CV-5944 SC

1   ███████████████████████████████████████████████[12] Dr. Willig does not reach such a

2   conclusion, he merely raises a ***possibility***. In fact, the "economic theory" on which Dr. Willig bases

3   his assertion, is a "single theoretical paper" predicated on the presence of what Dr. Willig calls

4   "technical economic conditions," which he did not (apparently) investigate, and does not claim

5   exist. LRD ¶¶ 55-57. ██████████████████████████████████████████

6   ██████████████████████ Dr. Leitzinger concludes that "this paper sheds no light on the

7   situation at hand." *Id.* ¶ 57. Furthermore, empirical studies consistently show that price increases in

8   an input increase the price of a final product, including studies of the effects of cartels. *Id.* ¶ 58.

9       *Second*, Dr. Willig ran separate regressions on internal transfer sales in an attempt to show

10  no effect on target prices. But these separate regressions are inherently faulty because of well-

11  recognized issues with transfer prices – *e.g.*, they may be distorted by tax considerations, corporate

12  policies regarding income recognition, and other factors. *Id.* ¶¶ 59-60.

13      *Third*, Samsung's claim that "███████████████████████████████

14  ████████████████████████████████████████████████████████

15  ███████" (Opp. at 22) is unfounded. LRD ¶¶ 59-63. Dr. Willig makes material and unwarranted

16  changes to Dr. Leitzinger's model that reduce its effectiveness. *See id.* ¶ 62 (Dr. Willig's changes

17  limit the "ability of the regression model to fully and properly evaluate the relationship between CRT

18  and finished product prices."). Additionally, Dr. Willig's disaggregation reduces the observations

19  available to identify pass-through and leads to anomalous and nonsensical results. *Id.* ¶ 63.

20      *Fourth*, to test Dr. Willig's assertions, Dr. Leitzinger performed additional regression

21  analyses of CDTs and CPTs separately. ████████████████████████████████████

22

23  ─────────────────

24  [12] Opp. at 23-24 (quoting Expert Report of Dr. Robert D. Willig ¶ 141 ("Willig Rep.")). Samsung also asserts that Dr. Leitzinger's analysis is "incapable of showing class-wide impact and necessarily includes purchasers who suffered no injury at all." Opp. at 22:22-24. The only support

25  for this assertion, however, is Dr. Leitzinger's testimony that ████████████████████████

26  ████████. *Id.* at 22 n.47. As in the defendants' opposition to the IPP motion, nowhere does Samsung substantiate its unfounded contention that the proposed class

27  "necessarily includes purchasers who suffered no injury at all." *See CRT II*, 2013 WL 5391159, at *9 ("Defendants continually mischaracterize Dr. Netz's report and the ISM's R & Rs as

28  acknowledging but ignoring false positives or uninjured class members.")

1     ███████████████████████ *Id.* ¶¶ 64-65.

2        *Fifth*, Samsung truncates and mischaracterizes Dr. Leitzinger's testimony to assert that his

3 pass-through analysis "████████████████████████████████████

4 ████████████████████" Opp. at 24. Dr. Leitzinger's full testimony, to the contrary, is that

5 ████████████████████████████████████████████████████████

6 ███████████████████████████████████████████████" Rushing

7 Decl., Ex. 6 at 198. Samsung also misstates DPPs' burden of proof. As the Court has held, DPPs

8 need not prove that all members of the class were harmed at this stage. *CRT II*, 2013 WL 5391159,

9 at *5-6.[13]

10        *Finally*, Dr. Willig and Samsung ignore the substantial documentary evidence identified by

11 DPPs and Dr. Leitzinger demonstrating that ████████████████████████████

12 ████████████. Mem. at 14-15, nn.33-35; Leitzinger Rep. ¶¶ 79-83.

### 3. This Court Has Already Held That Impact Can Be Proven At the Finished Product Level.

15        Finally, the Court has already held that impact can be shown on a class wide basis at ***both***

16 the CRT level ***and*** the Finished Product level. This alone should end the inquiry.

17        As noted, to show impact in a "true" indirect purchaser case under state law, a plaintiff must

18 show by common proof (1) an overcharge at the direct purchaser level; and (2) that the overcharge,

19 or some portion of it, was passed on through each successive level of distribution. Both the ISM and

20 this Court found that these showings could be made through common proof with regard to the IPP

21 class motion. *See CRT I*, 2013 WL 5429718, at *14-16, *23; *CRT II*, 2013 WL 5391159, at *7-9.

22 Because the IPP class is an "end user" class of Finished Product purchasers, these findings

23

24 _____

25 [13] Samsung's assertion that Dr. Leitzinger admitted that ██████████████████

26 ██████████████ is also incorrect. Opp. at 24. He testified that ████████████████

27 █████████████ – he did not

28 concede Samsung's assertion. Rushing Decl., Ex. 6 at 199. Dr. Willig's reliance on █████████████ also lacks merit. LRD ¶ 61.

1   necessarily include a finding that common proof shows that overcharges were included in Finished

2   Product prices throughout the chain of distribution. Again, Samsung ignores the ISM's conclusions.

3       **C. A Unitary Class Is Appropriate.**

4       Samsung's argument that CPT and CDT purchasers may not be included in a single class

5   also fails. As DPPs explained, classes encompassing a diverse array of products have been routinely

6   certified in this District. Mem. at 2-3, 32. Samsung makes no meaningful attempt to explain away

7   those cases. As noted, this Court has finally approved five DPP settlement classes that use the same

8   class definition. A settlement class has to satisfy all of the requirements for certification under Fed.

9   R. Civ. P. 23, except for the factor of manageability. *Amchem Prods., Inc. v. Windsor*, 521 U.S.

10  591, 620 (1997). Samsung's argument is also contrary to this Court's certification of the IPP class

11  which contains purchasers of both computer monitors (CDTs) and televisions (CPTs).[14]

12      Samsung's assertion that "There Are No Common Questions Relating to the Existence of

13  the Alleged Conspiracy" is preposterous. Opp. at 26. DPPs allege and the evidence shows a single

14  overarching conspiracy. ████████████████████████████████████████

15  ████████████████████████████████████████████

16  ███████████████████████ Mem. at 9. ███████████████

17  ████████████████████████████████████████████

18  ██████████████████████████ *Id.* at 9 n.22, Leitzinger Rep. ¶ 47.[15] That Dr. Leitzinger

19  considered the two types of tubes separately for some of his analyses does not change these facts.

20      If the Court believes more demarcation of the proposed Class is desirable, it can create

21  subclasses of CDT and CPT purchasers.

---

[14] *LCDs I* is also instructive. There, the proposed class included LCD panels generally, including panels that could be used in televisions and computer monitors. Judge Illston certified a class as to TFT-LCD panels, not separate classes with respect to panels for monitors and panels for televisions. 267 F.R.D. at 306 ("There is ample support in the antitrust case law for certifying classes in which there are some variations between products, customers, marketing and distribution channels."). She did certify *sua sponte* a separate Finished Products class.

[15] Samsung's assertion (Opp. 29:19) that Dr. Leitzinger's opinion is based on the testimony of a single individual is false. *See id. See also* Mem. at 9.

DIRECT PURCHASER PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION FOR CLASS CERTIFICATION—Case No. 07-CV-5944 SC

### D. Dr. Leitzinger's Analyses Satisfy the DPPs' Burden of Demonstrating Classwide Proof of Injury and Damages.

Samsung's final argument is that DPPs' have failed to demonstrate that impact or damages at the tube level can be shown on a classwide basis.[16] Samsung's arguments lack merit. Samsung ignores the evidence, and ignores or mischaracterizes Dr. Leitzinger's analysis. Dr. Willig's analysis is also flawed. He ignores important evidence and mischaracterizes what Dr. Leitzinger did. He also mischaracterizes his own analysis. For example, Dr. Willig's analyses show overcharges across the class even though he describes them as showing the contrary. LRD ¶¶ 48-50. Samsung and Dr. Willig also ignore the findings of the ISM.

### 1. Samsung and Dr. Willig Ignore Evidence.

a. ████████████████████████████████████

Samsung and Dr. Willig ignore the remarkable documentary record of the conspiracy. As DPPs explained, the CRT conspiracy was extraordinary in the degree of its organization, reach, and duration. ████████████████████████████████
██████████████████████████████████████
███████████████████████████████
████████████████████████████████ Mem. at 6-9.

Defendants intended to and did fix the prices of the entire CRT market. ████████████
██████████████████████████████████████
██████████████████████████████████
██████████████████████████████████
██████████████████████████████████
██████████████████████████████████████
██████████████████████████████████

---

[16] As noted, this argument is limited to a single sentence on the last page of its brief. Opp. at 40. This is a virtual concession in light of the fact that this Court has already found that impact can be proven on a classwide basis at the DPP level. *See CRT II*, 2013 WL 5391159, at *7-9.

14

1 ████████████████████████████████████████████████████

2 ████████████████████████████████████████████████████

3 ████████████████████████████████████████ *See* Mem. at 9-14;

4 Leitzinger Rep. ¶ 40, fig.6.

5       This evidence is detailed, credible, irrefutable, and classwide, and Samsung and Dr. Willig

6 address none of it. Samsung also takes no meaningful issue with the legal consequences of these

7 facts – namely that they are sufficient alone to demonstrate classwide impact. Mem. at 25-27.

8       **i.** ████████████████████████████████████

9 ████████████████

10       Samsung's assertion that "the premise that █████████████████████

11 ███████████" has "no basis in the record" is just false. Opp. at 36. ████████████

12 ████████████████████████████████████████████████

13 █████████████████████████████████████████████[17]

14 ██████████████████████████████████████████████

15 █████████████████████████████████████████████████

16 ████████████████████████████████████████████████████

17 ████████████████████████████████████████████████████

18 ██████████████████████████████████████████████

19 ████████████████████████████████████████████████

20 ██████████████████████████████ LRD ¶¶ 20-21.

21 ███████████████████████████████████████████████

22 ████████████████████████████████ Opp. at 32:8-11; 36:5-8. This

23

24 ————————————————————————————

25 [17] ██████████████████████████████████████████

26 ████████████████████ Mem. at 1, 6, 23. ██████████

27 ████████████████ Declaration of R. Alexander
Saveri in Support of Direct Purchaser Plaintiffs' Motion for Class Certification ("Saveri Decl."),
Ex. 24. ███████████████████████████████████████

28 ██████████ *See* LRD ¶¶ 29-32.

1  argument is misleading, to say the least. Samsung points to no instance where this occurred.

2  ████████████████████████████████████████

3  ████████████████████████████████████

4  Leitzinger Rep. ¶ 40, fig.6. ███████████████████

5  ████████████████████████████████████

6  ████████████████ [18]

7      **ii.**   ████████████████████████

8        ██████████████████████████

9  ████████████████████████████████████

10 ████████████████████████████████████████

11 ████████████████████████████████████

12 ███████████ Saveri Decl., Ex. 31 at 296:3–298:21. █████████

13 ████████████████████████████████████

14 ██████████████████████████████████ Mem. at 9-11.

15 ████████████████████████████████████

16 ████████████████████████████████ Willig Rep. at 9.

17     **b.**  ████████████████████████

18       ████████████████████████

19    Like Dr. Netz, Dr. Leitzinger concluded that ██████████████

20 ████████████████████████████████████████

21 ─────────────────

22 [18] ████████████████████████████████

23 ████████████████████████████████████

24 ████████████████████████████████████

25 ██████████████████████

26 ████████████████████████████████████

27 ███████████████████████████████████

28 ████████████████████████████

DIRECT PURCHASER PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION FOR CLASS
CERTIFICATION—Case No. 07-CV-5944 SC

1    ████████████████████████████████████████████████████████████████

2    ████████████████████████████████████████ Mem. at 28-29. Samsung fails to

3    meaningfully refute this evidence.

4        Samsung concedes all but the last two items. ██████████████████████

5    ███████████████████████████████████████████████████████████████ [19]

6        ██████████████████████████████████████████████████

7    ███████████████████ Willig Rep. ¶ 48. ████████████████████████████████

8    ██████████████████████████████████ Mem. at 6-13. █████████████████████

9    ███████████████████████████████ Mem. at 14-15.[20]

10       Samsung's assertion that CPTs and CDTs are not good substitutes is a red herring. ███

11   ████████████████████████████████████████████████████████████████████

12   ████████████████████████████████████████████████████████████

13   ████████████████████████████████████████████████████. Id. at 9.

14       Again, this evidence applies classwide and is sufficient to support certification. Id. at 27-29.

15       **2.**    ████████████████████████████████████████████████

16       Dr. Leitzinger's statistical analyses show that impact can be proven on a classwide basis.

17   ████████████████████████████████████████████████████████████████

18   Samsung's scattershot and indiscriminate attacks on Dr. Leitzinger's analyses fail. All rely on the

_____

[19] Dr. Willig's criticisms of Dr. Leitzinger's statistical confirmations of price structure also lack merit as explained below. See section III.D.2 below.

[20] Dr. Willig's distinctions between vertically integrated and non-vertically integrated Defendants are nonsensical. For example, he counts Samsung SDI (referred to herein as Samsung) as ***not*** vertically integrated even though it is part of the "Electronics Subgroup" of the Samsung Group and its financials are consolidated with other Samsung companies. Rushing Decl., Exs. 8 at p. 66, 86 Samsung Group financial statements describe the "Electronics Subgroup" as "a cohesive unit capable of turning raw materials into highly sophisticated products." Id. at 66. ██████████████████
██████████████████████████████████████████████████████████ *See*
Saveri Decl., Ex. 116 at CHU00031179.01E. Not surprisingly, Dr. Willig cites no evidentiary basis for his classifications. After DPPs inquired if such evidence existed, Samsung admitted that it did not. Rather, "[c]ounsel instructed Professor Willig to assume certain customer-supplier pairs in the tube sales data were 'integrated.'" Rushing Decl., Exs. 2, 3.

17

1  counter-analysis of Dr. Willig and are similar to his rejected criticisms of Dr. Netz in *CRT II.*

2  **a.** ████████████████████████████████████████

3  ████████████████████████████████████████████

4  ████████████████████████████████████████████████████

5  ████████████████████████████████████████ Leitzinger Rep. ¶¶ 41-44.

6  Dr. Netz also analyzed this relationship, performed a similar target price regression, and

7  came to similar conclusions. The ISM found that her analysis supported class certification and

8  rejected Dr. Willig's conflicting conclusions. *CRT I*, 2013 WL 5429718, at *14, *19-20. Dr.

9  Willig's attacks on Dr. Leitzinger's target price analyses fail here as they did with Dr. Netz' work.

10 ████████████████████████████████████████████████████

11 ████████████████████████████████████████████████

12 ████████████████████████████████████████████████████

13 ████████████████████████████████████████████████

14 ███████████ LRD ¶¶ 29-32.

15 ████████████████████████████████████████████████

16 ████████████████████████████████████████████████████

17 ████████████████████████████████████████████

18 ██████████████ LRD ¶ 6-10. ████████████████████

19 ████████████ *Id.*

20 *Third*, Dr. Willig's criticisms depend on his focus on price **changes** instead of price **levels**.

21 ████████████████████████████████████████████████

22 ████████████████████████████████████████████████

23 ████████████████████████████ LRD 11-19.

24 ████████████████████████████████████████████████

25 ████████████████████████████████████████████████████

26 ████████████████████████████████████████████████████

27 ████████████████████████ *Id.* ¶ 20. ██████████████

28 ████████████████████████████████████████████████████



DIRECT PURCHASER PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION FOR CLASS
CERTIFICATION—Case No. 07-CV-5944 SC



1    *Id.* ¶ 21, fig.6.[21]

4    Opp. at 32, 37-38.

9    Rushing Decl., Ex. 6 at 125.

11    LRD ¶ 22, fig. 7. This

12 criticism is also virtually identical to one leveled at Dr. Netz and rejected by the ISM. *CRT I*, 2013

13 WL 5429718, at *21.

19    LRD ¶¶ 25-26, fig. 8.[22]

20    **b.**

---

23 [21] Samsung and Dr. Willig's assertion that Dr. Leitzinger's damage analysis "

24                     " (Opp. at 38:5-9) is incorrect. LRD ¶¶ 48-50. *See* section III.D.2.e below.

25 [22]

26    LRD ¶¶ 23-24, fig. 8.

27 *Id.* ¶¶ 27-28.

28 *Id.*    *Id.*

DIRECT PURCHASER PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION FOR CLASS
CERTIFICATION—Case No. 07-CV-5944 SC

1 ████████████████████████████████████████████ Leitzinger

2 Rep. ¶¶ 27, 46-49. ████████████████████████████████████

3 ████████████████████████████████████████████ *Id.*

4 ¶¶ 50-52. Dr. Leitzinger's conclusions were consistent with those of Dr. Netz, which the ISM and

5 the Court credited, while rejecting Dr. Willig's analysis. *CRT I*, 2013 WL 5429718, at *16, 19-20;

6 *CRT II*, 2013 WL 5391159, at *7-9.[23] Dr. Willig's criticisms here also lack merit.

7     *First*, correlation analysis is a widely accepted methodology of exploring relationships

8 between variables. LRD ¶ 45. █████████████████████████████████

9 ██████████████████████████████████████████████

10 █████████████████████ Rushing Decl., Ex. 5 at 10:15-22.

11     *Second*, as DPPs explained, many courts have relied upon correlation analyses to certify

12 classes. Mem. at 31 n.49. As Judge Koh recently explained in *High-Tech II*:

13
14      The Court finds persuasive Dr. Leamer's statement that economists "analyze
     correlations, which are routinely used . . . to draw causal conclusions when supported
15      by compelling frameworks and complementary information." In the instant case, the
     compelling documentary evidence along with Plaintiffs' expert theories and
16      correlation analyses are capable of demonstrating causation on a classwide basis.

17 2013 WL 5770992, at *43 (citation omitted). ████████████████████

18 ██████████████████████████████████████████████

19 ██████████████████ See section III.D.1.a above. LRD ¶¶ 40-42.

20 ████████████████████████████████████████████

21 ██████████████████████████████████████████

22 █████████████████████ LRD ¶¶ 46-47.

23

24 ─────────────

25 [23] Judge Illston relied on evidence of price structure in *LCDs I*. *See* 267 F.R.D. at 311; Mem. at 29.
Judge Koh also relied on evidence of a pay structure to certify a diverse class of employees from

26 different companies performing different jobs where the defendants argued that "compensation was
set by hundreds of different managers who were directed to differentiate pay and reward high

27 achieving employees" and that, therefore, "pay raises to one employee would not necessarily affect
the salary of all other employees" in the class. *In re High-Tech Employee Antitrust Litig.*, Case No.:

28 11–CV–02509–LHK, 2013 WL 5770992, at *33 (N.D. Cal. Oct. 24, 2013) ("*High-Tech II*").

1   **c.** ████████████████████████████████████

2   ████████████████████████████████████████████

3   ██████████████████████████████████████████

4   ████████████████████████████████████████████

5   ███████ Leitzinger Rep. ¶¶ 34-38, fig.5; *CRT I*, 2013 WL 5429718, at *14. ████████

6   ████████████████████████████████████████████

7   Leitzinger Rep. ¶ 38. The ISM relied on Dr. Netz' conclusions to find that the IPPs had shown

8   classwide impact. *CRT I*, 2013 WL 5429718, at *23. *See also CRT II*, 2013 WL 5391159, at *3.

9   ████████████████████████████████████████

10  ██████████████████████████████████████████████

11  ████████████████████████████████████ LRD ¶ 43. ██████

12  ████████████████████████████████████████████

13  ███████████████████████████████████████ *Id.*

14  ████████████████████████████████████████████

15  ██████████████████████████████████████████████

16  ████████████████ *Id.* at 44. ██████████████████████

17  ███████████ *Id.* ████████████████████████████████

18  ████████████████████████████████████ *Id.*[24]

19  **d. Dr. Leitzinger's Reliance on Global Data Is Sound.**

20        Samsung and Dr. Willig criticize Dr. Leitzinger's work because it did not consider the North

21  American market separately from the global market. This criticism lacks merit for several reasons.

22        *First*, DPPs allege a global conspiracy ████████████████████████

23  ██████████████████████████████████████

24

25

26  [24] ███████████████████████████████████████

27  ███████████████████████████████ Moreover, as the ISM noted in

28  rejecting a similar criticism of Dr. Netz, this argument improperly requires proof of the merits at
class certification. *CRT I*, 2013 WL 5429718, at *21.

1    ████████████████████[25] Moreover, the global nature of the conspiracy is confirmed by the

2    worldwide government investigations into it. Defendants have faced inquiries and sanctions in

3    North America, South America, Europe, and Asia. Mem. at 5; LRD ¶¶ 33-34.

4    ████████████████████████████████████████████████████

5    ████████████████████████████████████████████████

6    ████████████████████ LRD ¶ 35, figs.9, 10.[26]

7    ██████████████████████████████████████████

8    ████████████████████████████████████████████████████

9    ██████████████████████████████████████ *Id.* ¶ 38, fig.11.

10   ██████████████████████████████████████████

11   ██████████████████████████████████████

12   ██████████████████████ *Id.* ¶ 39. ██████████████████

13   ████████████████████████████████████████████

14   ████████████████████ *Id.*

15        Finally, the ISM and this Court rejected Dr. Willig's similar criticisms of Dr. Netz. *See CRT*

16   *I*, 2013 WL 5429718, at *14-21; *CRT II*, 2013 WL 5391159, at *7-9.

17        **e.   Dr. Leitzinger's Preliminary Damage Study Is Sound.**

18        In connection with the IPP class motion, the ISM and this Court accepted, over the

19   Defendants' strenuous objection, Dr. Netz' conclusion that reasonable methodologies to compute

20   damages existed. *CRT I*, 2013 WL 5429718, at *21-23; *CRT II*, 2013 WL 5391159, at *7-9. Dr.

21   Leitzinger went beyond Dr. Netz and actually performed a full-fledged damage analysis. There can

22   be little question that this satisfies DPPs' burden.

23   _____

24   [25] ████████████████████████████████████████████████████

25   ████████████████████████████████ *See*

26   *CRT I*, 2013 WL 5429718, at *20 (ISM "rejects defendants' reliance on anecdotal testimony of
     outlier circumstances as a substitute for Dr. Netz' detailed, record-based analysis."). ████████

27   Rushing Decl., Ex. 7 at 188:4-189:8.

28   [26] ██████████████████████████████████████ *Id.* at 36-37.

DIRECT PURCHASER PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION FOR CLASS
CERTIFICATION—Case No. 07-CV-5944 SC

1    *First*, Samsung's argument that any statistical analysis must consider only North American

2    data is misplaced. As noted, the case involves a global market and a global conspiracy. *See* section

3    III.D.2.d above.

4    ██████████████████████████████████████████████████████████████████████

5    ██████████████████████████████████████████████████████████████████████████████

6    ██████████████████████████████████████████████████████████████████████████████

7    ████████████████████████████████████████████████████████████████████████

8    ██████████████ LRD ¶ 48. ████████████████████████████████████

9    ███████████████████████████████████████████████████████████████████████████

10   ████████████████████████████████████ *Id.* ██████████████████████████

11   ██████████████████████████████████████████████████████████████████████████████

12   ██████████████████████████████████████████████████████████████████████████████

13   ██████████████████████████████ *Id.* ¶¶ 49-50. ██████████████████

14   ████████▋

15   ██████████████████████████████████ *Id.* ¶¶ 51-52. ██████████████████

16   ██████████████████████████████████████████████████████████████████████████

17   ████████ *Id.* █████████████████████████████████████████████████████

18   ██████████████████████████████████████████████████████████████████████

19   ██████████████████████████████████████████████████████████████████████████

20   ██████████████████████████████████████████████████ *Id.* ¶¶ 53-54. ██████

21   █████████████████████████████████████████████████████████████████████████

22   ██████████████████████████████████████ *Id.* ¶ 54.[27]

23

24   _____

25   [27] Samsung attempts to analogize this case to four cases in which Dr. Leitzinger submitted a report on behalf of plaintiffs but the court declined to certify a class. *Blades*, 400 F.3d 562; *In re Wholesale Grocery Prods. Antitrust Litig.*, No. 09–MD–2090 ADM/AJB, 2012 WL 3031085 (D. Minn. July 25, 2012); *In re Medical Waste Servs. Antitrust Litig.*, No. 2:03MD1546 DAK, 2006 WL 538927 (D. Utah, Mar. 3, 2006); *Masimo Corp. v. Tyco Health Care Group LP*, No. CV 02-4770 MRP, 2006 WL 1236666 (C.D. Cal. July 9, 2008). None of these cases is relevant here. All involved different factual circumstances and different analyses.

26

27

28

DIRECT PURCHASER PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION FOR CLASS CERTIFICATION—Case No. 07-CV-5944 SC

1    *Fourth*, criticisms like Dr. Willig's are often made in antitrust cases and often rejected.[28] For

2    example, in *In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651 (7th Cir. 2002), *cert.*

3    *denied sub nom. A.E. Staley Mfg. Co. v. Dellwood Farms, Inc.*, 537 U.S. 1188 (2003), a price-fixing

4    case, the plaintiffs' expert undertook a regression analysis using a CONSPIRE variable that showed

5    significant overcharges. As here, the defense expert changed some variables and found that the

6    CONSPIRE variable became statistically insignificant. The Seventh Circuit nonetheless upheld the

7    district court's decision not to reject the plaintiffs' expert evidence. 295 F.3d at 660-61.

8         The Ninth Circuit has also disapproved the practice of taking an overarching regression

9    analysis, cherry-picking from the data used, and running new regressions. "[I]t is a generally

10   accepted principle that aggregated statistical data may be used where it is more probative than

11   subdivided data. *See Eldredge v. Carpenters 46 N. Cal. Counties Joint Apprenticeship and Training*

12   *Comm.*, 833 F.2d 1334, 1339-40 nn. 7 & 8 (9th Cir. 1987)." *Paige v. California*, 291 F.3d 1141,

13   1148 (9th Cir. 2002), *cert. denied*, 537 U.S. 1189 (2003). Further, the use of "aggregate numbers"

14   may "allow for a [more] robust analysis and yield more reliable and more meaningful statistical

15   results." *Ellis v. Costco Wholesale Corp.*, 285 F.R.D. 492, 523 (N.D. Cal. 2012). Recently in *High-*

16   *Tech*, defendants argued that plaintiffs' expert in a wage-fixing case should have used disaggregated

17   data because, had he done so, his regressions would have shown overcompensation rather than

18   undercompensation for certain employers. Judge Koh rejected this criticism, noting that the decision

19

20   [28] *See, e.g., In re Sulfuric Acid Antitrust Litig.*, 446 F. Supp. 2d 910, 923 (N.D. Ill. 2006) (plaintiff's
     expert's failure to consider certain variables in his regression analysis did not warrant a finding of

21   inadmissibility); *In re Chocolate Confectionary Antitrust Litig.*, 289 F.R.D. 200, 211-13 (M.D. Pa.
     2012) ("the court finds that although there *are* limitations to [plaintiff's expert's] analysis, they are

22   not fatal to admissibility under Rule 702."); *In re Titanium Dioxide Antitrust Litig.*, No. RDB-10-
     0318, 2013 WL 1855980, at *16 (D. Md. May 1, 2013) (district court rejected defendants'

23   challenges to plaintiffs' expert's regression analysis, where they argued that he impermissibly
     utilized an "aggregate overcharge" and that his models were "so defective in critical respects that no

24   reasonable economist would rely on them."); *In re Static Random Access (SRAM) Antitrust Litig.*,
     No. 07-md-01819 CW, 2010 WL 5071694, at *5 (N.D. Cal. Dec. 7, 2010) (attack on plaintiffs'

25   expert's use of damage subperiods did not render his report inadmissible; "the differences that
     Defendants' expert Dr. Burtis has identified do not demonstrate unreliability"); *In re High Pressure*

26   *Laminates Antitrust Litig.*, No. 00-mdl-1368, 2006 WL 931692, at *1 (S.D.N.Y. Apr. 7, 2006)

27   (defendants attacked regression model for relying on improper data and failing to consider relevant
     explanatory variables; court held that "[t]he jury is the proper body to decide whether or not and, if

28   so, to what extent, Dr. Beyer's model should be discredited"). *See also* Mem. at 31 nn.49, 50.

                                                       24

1   to refrain from analyzing disaggregated data was not an error in methodology. 289 F.R.D. at 580.[29]

2          *Finally*, Samsung's assertion that Dr. Leitzinger's damage study does not pass muster under

3   *Comcast* and *Rail Freight* fails. In *CRT II*, this Court distinguished *Comcast* by noting that "the

4   plaintiffs' theory of damages did not map to their theory of liability, so the plaintiffs failed to show

5   through common evidence that all class members had been harmed by the alleged conspiracy."

6   2013 WL 5391159, at *7. *See Glazer*, 722 F.3d at 860. In contrast, the IPPs asserted "one theory of

7   antitrust harm" that started with "the cartel overcharg[ing] direct purchasers of CRTs . . . ." *CRT II*,

8   2013 WL 5391159, at *7. Defendants could not say that Dr. Netz's damage analysis was not tied to

9   that theory. *Id.* Here, Samsung does not even assert that DPPs' damage theory "does not map" to

10  their theory of liability. As for *Rail Freight*, while Samsung asserts that Dr. Leitzinger's damage

11  analysis exhibits "false positives," nowhere does it explain why or how. At most, Dr. Willig's

12  conclusions amount to a difference of opinion, which is a far cry from the situation in *Rail Freight*.

13         Here, the challenges posed by Samsung and Dr. Willig to Dr. Leitzinger's regression

14  analyses are questions of merit, not methodology, and are disputes of fact for the jury to decide.

15  **IV.    CONCLUSION.**

16         For all of the foregoing reasons, the DPPs' motion for class certification should be granted.

17  DATED: November 11, 2013                    Respectfully submitted,

18                                              /s/ *Guido Saveri*
                                                Guido Saveri (22349)
19                                              R. Alexander Saveri (173102)
                                                Geoffrey C. Rushing (126910)
20                                              Travis L. Manfredi (281779)
21                                              SAVERI & SAVERI, INC.
                                                706 Sansome Street
22                                              San Francisco, CA 94111
                                                Telephone:  (415) 217-6810
23                                              Facsimile:  (415) 217-6813

24                                              *Interim Lead Counsel for*
25                                              *Direct Purchaser Plaintiffs*

26  _____

27  [29] The ISM and the Court, of course, rejected Defendants' various objections to Dr. Netz's use of averages. *CRT I*, 2013 WL 5429718, at *17-18, 20; *CRT II*, 2013 WL 5391159, at *8. Judge Koh also rejected a number of "averaging" objections in *High-Tech II. See* 2013 WL 5770992, at *41-
28  42.

25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Michael P. Lehmann
HAUSFELD LLP
44 Montgomery Street, Suite 3400
San Francisco, CA 94104
Telephone:  (415) 633-1908
Facsimile:  (415) 358-4980


Joseph W. Cotchett
Steven N. Williams
Adam J. Zapala
Joanna W. LiCalsi
COTCHETT, PITRE & McCARTHY, LLP
840 Malcolm Road
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577


Bruce L. Simon
Aaron M. Sheanin
PEARSON, SIMON & WARSHAW LLP
44 Montgomery Street, Suite 2450
San Francisco, CA 94104
Telephone:  (415) 433-9000
Facsimile:  (415) 433-9008


H. Laddie Montague, Jr.
Ruthanne Gordon
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Telephone: (800) 424-6690
Facsimile: (215) 875-4604


Gary Specks
KAPLAN FOX
423 Sumac Road
Highland Park, IL 60035
Telephone: (847) 831-1585
Facsimile: (847) 831-1580

DIRECT PURCHASER PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION FOR CLASS
CERTIFICATION—Case No. 07-CV-5944 SC

Douglas A. Millen
William H. London
FREED KANNER LONDON & MILLEN
2201 Waukegan Road
Suite 130
Bannockburn, IL 60015
Telephone: (224) 632-4500
Facsimile: (224) 632-4519


Eric B. Fastiff
LIEFF CABRASER HEIMANN & BERNSTEIN,
LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008


W. Joseph Bruckner
Elizabeth R. Odette
LOCKRIDGE GRINDAL NAUEN P.L.L.P
100 Washington Avenue S
Suite 2200
Minneapolis, MN 55401
Telephone:  (612) 339-6900
Facsimile: (612) 339-0981

*Attorneys for Plaintiffs*

DIRECT PURCHASER PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION FOR CLASS
CERTIFICATION—Case No. 07-CV-5944 SC