Squire Sanders (US) LLP
Nathan Lane III  (CA State Bar # 50961)
nathan.lane@squiresanders.com
Mark C. Dosker (CA State Bar # 114789)
mark.dosker@squiresanders.com
275 Battery Street, Suite 2600
San Francisco, California  94111
Telephone:      +1 415 954 0200
Facsimile:       +1 415 393 9887

Attorneys for Defendant
TECHNOLOGIES DISPLAYS AMERICAS, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION, | Master File No. 3:07-5944-SC<br>Individual Docket No. 13-cv-1173-SC<br><br>MDL No. 1917<br><br>**TECHNOLOGIES DISPLAYS AMERICAS, LLC'S NOTICE OF MOTION AND MOTION TO DISMISS THE FIRST AMENDED COMPLAINT, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:         February 7, 2014<br>Time:         10:00 A.M.<br>Courtroom:  1, 17th Floor<br>Judge:        Hon. Samuel Conti |
| This Document Relates to:<br><br>*Sharp Electronics Corp., et al. v. Hitachi, Ltd., et al.*, No. 13-cv-01173 | |

**SQUIRE SANDERS (US) LLP**
**275 Battery Street, Suite 2600**
**San Francisco, California  94111**

TDA'S NOTICE OF MOTION TO DISMISS THE FIRST AMENDED COMPLAINT, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT – Master File #3:07-5944-SC; MDL #1917; Case #13-cv-01173

# TABLE OF CONTENTS

**Page**

**NOTICE OF MOTION AND MOTION** ................................................................................. 1

**ISSUES TO BE DECIDED** ...................................................................................................... 1

**MEMORANDUM OF POINTS AND AUTHORITIES** ........................................................... 2

I.   INTRODUCTION AND STATEMENT OF FACTS ......................................... 2

II.  ARGUMENT ........................................................................................................ 3

   A.   Sharp Fails to Allege Sufficient Facts to State a Claim Against TDA. .................. 3

   B.   Sharp's Claims Against TDA Are Untimely and Must Be Dismissed. .................. 7

      1.   Sharp Fails to Plead a Basis to Toll the Statute of Limitations for Any of Sharp's Claims Against TDA. ................................................................. 8

      2.   Sharp Cannot Rely on *American Pipe* to Toll Its Claims Against TDA. ...... 8

      3.   Sharp Fails to Plead, and Cannot, Establish Tolling Based on Government Proceedings. ......................................................................... 10

   C.   *Illinois Brick* Bars Sharp from Asserting Claims for Damages for Purchases of CRT Products Under Federal and New Jersey Law. ............................................. 11

III. CONCLUSION .................................................................................................... 13

SQUIRE SANDERS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

# **TABLE OF AUTHORITIES**

**Page(s)**

### FEDERAL CASES

*Am. Pipe & Constr. Co. v. Utah*,
    414 U.S. 538 (1974) .................................................................................................................. 8

*Arneil v. Ramsey*,
    550 F.2d 774 (2d Cir. 1977), *rev'd on other grounds by Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345 (1983) ..................................................................................................... 9

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .............................................................................................................. 3, 7

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ........................................................................................................ 3, 4, 5

*Boone v. Citigroup, Inc.*,
    416 F.3d 382 (5th Cir. 2005) .................................................................................................... 8

*Charley's Tour & Transp., Inc. v. Interisland Resorts, Ltd.*,
    618 F. Supp. 84 (D. Hawaii 1985) .......................................................................................... 11

*Chipanno v. Champion Int'l Corp.*,
    702 F.2d 827 (9th Cir. 1983) .................................................................................................. 10

*Clemens v. DaimlerChrysler Corp.*,
    534 F.3d 1017 (9th Cir. 2008) .................................................................................................. 9

*Crown, Cork & Seal Co. v. Parker*,
    462 U.S. 345 (1983) (Powell, J., concurring) .......................................................................... 9

*Doe v. Unocal Corp.*,
    248 F.3d 915 (9th Cir. 2001) .................................................................................................... 5

*Dungan v. Morgan Drive-Away, Inc.*,
    570 F.2d 867 (9th Cir. 1978) .................................................................................................. 10

*E. & J. Gallo Winery v. Encana Energy Servs., Inc.*,
    No. 03-5412, 2008 U.S. Dist. LEXIS 46927 (E.D. Cal. May 27, 2008) .................................. 5

*Gilmore v. Am. Mortg. Network*,
    No. 12-7935, 2012 U.S. Dist. LEXIS 176194 (C.D. Cal. Dec. 10, 2012) ................................ 4

*Hinton v. Pac. Enters.*,
    5 F.3d 391 (9th Cir. 1993) ........................................................................................................ 8

*Illinois Brick Co. v. Illinois*,
    431 U.S. 720 (1977) ................................................................................................................ 12

*Imageline, Inc. v. CafePress.com, Inc.*,
    No. 10-9794, 2011 U.S. Dist. LEXIS 39828 (C.D. Cal. Apr. 6, 2011) .................................... 5

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*In re ATM Fee Antitrust Litig.*,
  686 F.3d 741 (9th Cir. 2012)

*In re Cal. Title Ins. Antitrust Litig.*,
  No. 08-01341, 2009 U.S. Dist. LEXIS 43323 (N.D. Cal. May 21, 2009) ............................... 6

*In re Currency Conversion Fee Antitrust Litig.*,
  265 F. Supp. 2d 385 (S.D.N.Y. 2003) ................................................................................ 6

*In re Elevator Antitrust Litig.*,
  502 F.3d 47 (2d Cir. 2007) ................................................................................................ 4

*In re Graphics Processing Units Antitrust Litig.*,
  527 F. Supp. 2d 1011 (N.D. Cal. 2007) ............................................................................. 4

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  586 F. Supp. 2d 1109 (N.D. Cal. 2008) ............................................................................. 4

*Invamed, Inc. v. Barr Labs., Inc.*,
  22 F. Supp. 2d 210 (S.D.N.Y. 1998) ................................................................................. 6

*Jabon v. Dean Witter & Co.*,
  614 F.2d 677 (9th Cir. 1980) ............................................................................................. 7

*Kendall v. Visa U.S.A., Inc.*,
  518 F.3d 1042 (9th Cir 2008) .............................................................................. 4, 5, 6, 12

*Marine Firemen's Union v. Owens-Corning Fiberglass Corp.*,
  503 F.2 246, 249 (9th Cir. 1974) ..................................................................................... 10

*MCI Telecom. Corp. v. Graphnet, Inc.*,
  881 F. Supp. 126 (D.N.J. 1995) ......................................................................................... 6

*Nashville Milk Co. v. Carnation Co.*,
  355 U.S. 373 (1958) ......................................................................................................... 11

*Nordberg v. Trilegiant Corp.*,
  445 F. Supp. 2d 1082 (N.D. Cal. 2006) ............................................................................. 6

*Novell, Inc. v. Microsoft Corp.*,
  505 F.3d 302 (4th Cir. 2007) ............................................................................................ 10

*Pace Indus., Inc. v. Three Phoenix Co.*,
  813 F.2d 234 (9th Cir. 1987) ............................................................................................. 7

*RSM Prod. Co. v. Petroleos de Venez, Societa Anonima*,
  338 F. Supp. 2d 1208 (D. Colo. 2004) ............................................................................... 6

iii
TABLE OF AUTHORITIES
Master File #3:07-5944-SC; MDL #1917; Case #13-cv-01173

**SQUIRE SANDERS (US) LLP**
275 Battery Street, Suite 2600
San Francisco, California 94111

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Soward v. Deutsche Bank AG*,
   814 F. Supp. 2d 272 (S.D.N.Y. 2011) ............................................................................... 9

*United States v. Bestfoods*,
   524 U.S. 51 (1998) ............................................................................................................ 5

*Williams v. Boeing Co.*,
   517 F.3d 1120 (9th Cir. 2008) .......................................................................................... 9

*Wyser-Pratte Mgt. Co. v. Telxon Corp.*,
   413 F.3d 553 (6th Cir. 2005) ............................................................................................ 8

*Yoder Bros., Inc. v. Cal.-Fla. Plant Corp.*,
   537 F.2d 1347 (5th Cir. 1976) ........................................................................................ 10

### STATE CASES

*Gaidon v. Guardian Life Ins. Co. of Am.*,
   96 N.Y.2d 201 (2001) ....................................................................................................... 7

*Maestas v. Sofamor Danek Group, Inc.*,
   33 S.W.3d 805 (Tenn. 2000) ............................................................................................ 9

*Sickles v. Cabot Corp.*,
   877 A.2d 267 (N.J. App. Div. 2005) .............................................................................. 12

### FEDERAL STATUTES

15 U.S.C. § 12 ........................................................................................................................ 11

15 U.S.C. § 15b ........................................................................................................................ 7

15 U.S.C. § 16(i) ............................................................................................................... 10, 11

### STATE STATUTES

CAL. BUS. & PROF. CODE § 16750.1 ........................................................................................ 7

CAL. BUS. PROF. CODE § 17208 ............................................................................................... 7

N.J. STAT. § 56:9-14 ................................................................................................................. 7

N.J. Stat. § 56:9-18 ................................................................................................................. 12

N.Y.C.P.L.R. 214(2) ................................................................................................................ 7

N.Y. GEN. BUS. LAW § 340(5) ................................................................................................. 7

SQUIRE SANDERS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

N.Y. GEN. BUS. LAW § 342-C .................................................................................................... 11

TENN. CODE § 28-3-105 ............................................................................................................... 7

### RULES

Fed. R. Civ. P. 8 ............................................................................................................................ 3

Fed. R. Civ. P. 8(a) ..................................................................................................................... 11

Federal Rule of Civil Procedure 12(b)(6) ................................................................................. 1,7

SQUIRE SANDERS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

# NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on Friday, February 7, 2014, at 10:00 A.M., or as soon thereafter as this matter may be heard, Defendant Technologies Displays Americas LLC ("TDA") will and hereby does move this Court, pursuant to Federal Rule of Civil Procedure 12(b)(6), for an order dismissing, with prejudice, the First Amended Complaint ("FAC") filed by Sharp Electronics Corporation and Sharp Electronics Manufacturing Company of America, Inc. (collectively, "Sharp") for failure to state a claim upon which relief can be granted.

This motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities in support thereof, the pleadings on file with the Court, and such arguments and authorities as may be presented at or before the hearing.

## ISSUES TO BE DECIDED

1. Whether Sharp has failed to state a plausible claim against TDA.

2. Whether Sharp's claims against TDA are time-barred under the applicable statutes of limitations and whether Sharp has failed to plead any basis for tolling its claims.

3. Whether Sharp has federal antitrust standing and standing under New Jersey law to seek damages for alleged purchases of CRT Products.

SQUIRE SANDERS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

1
TDA'S NOTICE OF MOTION TO DISMISS THE FIRST AMENDED COMPLAINT, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT – Master File #3:07-5944-SC; MDL #1917; Case #13-cv-01173

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.   **INTRODUCTION AND STATEMENT OF FACTS**

In this action filed on March 15, 2013, more than five years after related litigation began in this district alleging a global price-fixing conspiracy for CRTs, Sharp claimed for the first time that TDA was involved in the purported conspiracy. TDA, which is a small company with only one employee, was not named as a defendant in any of the numerous previously filed cases now before this Court. According to Sharp, the alleged conspiracy began from at least March 1, 1995, and involved more than 500 bilateral and multilateral meetings throughout Asia and Europe. FAC ¶¶2, 7. Yet, nowhere in its 303-paragraph FAC does Sharp identify a single meeting attended by TDA. This is hardly surprising—TDA did not even exist until 2005, more than a decade after the alleged conspiracy began. *See* FAC ¶¶ 75-76.

Sharp refers to TDA in only six paragraphs of the FAC. (FAC ¶¶75, 76, 109, 199, 200 and 259.) In only three of those paragraphs (¶¶109, 199 and 200) does Sharp even attempt to articulate a basis for its assertion that TDA participated in the alleged conspiracy.

Sharp alleges that TDA acquired Thomson's United States CRT assets in 2005. FAC ¶76. According to Sharp, TDA "was responsible for the sales and marketing of CRT Products in North America on behalf of its parent company, Videocon." FAC ¶ 199; *see also id.* ¶ 76. Videocon—"upon information and belief"—allegedly "dominated and/or controlled the finances, policies and/or affairs of TDA." FAC ¶199; *see also id.* ¶76. Apparently, Sharp makes these allegations in an effort to attribute to TDA some unarticulated wrong-doing by Videocon at meetings it allegedly attended between 2005 and 2007. FAC ¶158. Absent from the FAC, however, is any *factual* allegation to support this bare conclusion that Videocon dominated TDA.

Sharp also asserts that, following TDA's acquisition of Thomson CRT assets, two former Thomson employees began working for TDA. These employees allegedly participated in meetings with competitors in 2002 and 2003 while employed by Thomson. FAC ¶¶199. Sharp does not allege, however, that either of the two individuals participated in meetings or engaged in improper communications with competitors after 2003, that TDA knew of the employees' actions

SQUIRE SANDERS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

2

TDA'S NOTICE OF MOTION TO DISMISS THE FIRST AMENDED COMPLAINT, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT – Master File #3:07-5944-SC; MDL #1917; Case #13-cv-01173

on behalf of their prior employer, or—most critically—that the two individuals attended any alleged "conspiracy meetings" while employed by TDA.

In paragraph 199, and without further explication, Sharp speculates "upon information and belief" that TDA "knowingly participated in conspiracy meetings and/or [was] part[y] to the agreements entered at them, individually and through [its] parent company Videocon," and that TDA's prices were "the product of conspiratorial communications."  FAC ¶199.

Finally, in paragraph 200, Sharp alleges that TDA was an active, knowing participant to the asserted conspiracy because TDA distributed CRTs to direct purchasers.  FAC ¶200.

Nowhere in the 303 paragraphs of the 79-page FAC does Sharp allege: the date, month, year, or location of alleged improper meetings **TDA** attended; the other defendant(s) attending any such improper meetings; the term(s) of any anticompetitive agreement entered into by **TDA**; or a single act or statement by **TDA** in furtherance of, or to conceal, the purported conspiracy.

Stripped of its unsupported conclusions, speculation, and formulaic recitation of the elements of an offense, Sharp's only *factual* allegations as to TDA are:

- TDA entered the CRT business in 2005.
- TDA is a subsidiary of Videocon.
- TDA sold and marketed CRT Products in North America from 2005 through 2007.
- Two individuals employed for a time by TDA attended meetings with competitors before they began working at TDA.

## II.  ARGUMENT

### A.   Sharp Fails to Allege Sufficient Facts to State a Claim Against TDA.

To survive a motion to dismiss, a complaint must "raise a right to relief above the speculative level," and can do so only by including "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).  A plaintiff may no longer merely allege "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" with the hope that discovery might later uncover some factual basis to support a claim for relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id*.  A complaint must

SQUIRE SANDERS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California  94111

3
TDA'S NOTICE OF MOTION TO DISMISS THE FIRST AMENDED COMPLAINT, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT – Master File #3:07-5944-SC; MDL #1917; Case #13-cv-01173

instead identify the time, place and persons involved in the alleged conspiracy with some degree of specificity. *Twombly*, 550 U.S. at 565 n.10.[1]

This Court dismissed Sharp's original Complaint in response to a motion brought by Thomson Consumer Electronics, Inc. ("Thomson") because:

> At this point in this litigation, Plaintiffs simply fail to elucidate why and how Defendant should be part of this case. In a 287-paragraph complaint, filed six years after this MDL's inception, Plaintiffs fail to plead sufficient facts either to render their claims against Defendant plausible or to satisfy the heightened pleading standards of Rule 9(b). Plaintiffs' allegations about Defendant's purportedly actionable behavior state only that Defendant was involved in the CRT business . . . Beyond that, Plaintiffs provide only the barest possible pleadings that Defendant participated in the conspiracy to some extent, and that Defendant purportedly "never withdrew" from these dealings.

Order at 4-5 (Sept. 26, 2013), Dkt. No. 1960.

This reasoning applies with even greater force to Sharp's claims against TDA. Sharp has had the benefit of this Court's analysis and has expanded the FAC to 303 paragraphs, but still fails to "answer the basic questions: who, did what, to whom (or with whom), where and when." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1048 (9th Cir 2008). Sharp, moreover, "must allege that *each individual defendant* joined the conspiracy and played some role in it." *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1117 (N.D. Cal. 2008) (emphasis added); *see also In re Elevator Antitrust Litig.*, 502 F.3d 47, 50-51 (2d Cir. 2007) (a complaint lacking "specification of any particular activities by any particular defendant" is nothing more than a list of "conclusory allegations of agreement" that "do not supply facts adequate to show illegality"). Sharp fails to advance a single, well-pleaded allegation plausibly supporting TDA's involvement in any unlawful conspiracy.

Sharp alleges, "[u]pon information and belief", that TDA, between 2005 and 2007 "knowingly participated in conspiracy meetings and/or [was] part[y] to the agreements entered at them, individually and through [its] parent company Videocon." FAC ¶199. This statement is unsupported by any evidentiary facts. *Cf. Gilmore v. Am. Mortg. Network*, No. 12-7935, 2012

---

[1] Federal pleading standards govern claims brought in federal court, including those arising under state law. *In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1025 (N.D. Cal. 2007).

SQUIRE SANDERS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

4

TDA'S NOTICE OF MOTION TO DISMISS THE FIRST AMENDED COMPLAINT, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT – Master File #3:07-5944-SC; MDL #1917; Case #13-cv-01173

U.S. Dist. LEXIS 176194, at *19 (C.D. Cal. Dec. 10, 2012) (rejecting plaintiff's reliance on "information and belief" allegations because plaintiff "pleads no facts to support such an allegation"). Nowhere in the 303 paragraphs of the 79-page complaint does Sharp allege what, if anything, TDA agreed to do, or actually did, at any time in furtherance of, or even consistent with, defendants' alleged conspiracy.[2] Sharp's allegation is nothing more than a bare assertion that there was an "agreement at some unidentified point" that fails to "supply facts adequate to show illegality." *Twombly*, 550 U.S. at 565 n.10. These are precisely the kind of rote allegations that the Supreme Court and the Ninth Circuit have rejected as insufficient. *Kendall*, 518 F.3d at 1048.

Sharp cannot avoid dismissal by relying on its bare assertion that "Videocon dominated and/or controlled the finances, policies and/or affairs of TDA and directed its pricing of CRT Products sold to the North America market." FAC ¶ 199. *See, e.g.*, *Imageline, Inc. v. CafePress.com, Inc.*, No. 10-9794, 2011 U.S. Dist. LEXIS 39828, at *12 (C.D. Cal. Apr. 6, 2011) ("To sufficiently plead an agency relationship, a plaintiff must allege facts demonstrating the principal's control over its agent"); *see also Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001) (holding veil-piercing allegations require facts showing absolute control by the parent over the subsidiary).

Alleging a parent-subsidiary relationship is not enough to state a claim against TDA. "[T]he mere fact that there exists a parent-subsidiary relationship between two corporations" does not "make the one liable for the torts of its affiliate." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (quoting 1 W. Fletcher, Cyclopedia of Law of Private Corporations § 33, p. 568 (rev. ed. 1990)). Formal corporate separation among defendants is not lightly disregarded. *E. & J. Gallo Winery v. Encana Energy Servs., Inc.*, No. 03-5412, 2008 U.S. Dist. LEXIS 46927, at *16 (E.D. Cal. May 27, 2008) ("The independence of a subsidiary from the parent corporation is to be

---

[2] Sharp alleges that following TDA's acquisition of Thomson's North American CRT assets in 2005, two former Thomson employees who had "attended conspiracy meetings on behalf of Thomson . . . transitioned to work for TDA." Whether those employees attended alleged conspiratorial meetings on behalf of Thomson in 2002 and 2003 is irrelevant to whether TDA joined the alleged conspiracy in 2005. There is no allegation that the two individuals attended any meetings with competitors *on behalf of TDA* after allegedly joining TDA in 2005.

SQUIRE SANDERS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

5
TDA'S NOTICE OF MOTION TO DISMISS THE FIRST AMENDED COMPLAINT, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT – Master File #3:07-5944-SC; MDL #1917; Case #13-cv-01173

presumed"). Thus, a company cannot be liable for antitrust violations simply because another member of the same corporate family is alleged to have committed such violations. *See*, *e.g.*, *RSM Prod. Co. v. Petroleos de Venez, Societa Anonima*, 338 F. Supp. 2d 1208, 1216 (D. Colo. 2004) (dismissing Sherman Act claims against subsidiary corporation because complaint alleged only that subsidiary CITGO was "the wholly owned U.S. marketing arm of PDVSA" and did "not contain any allegations of fact that would, if true, subject CITGO to liability under the Sherman Act or on any other basis"); *MCI Telecom. Corp. v. Graphnet, Inc.*, 881 F. Supp. 126, 130-31 (D.N.J. 1995) (dismissing antitrust claim against corporate subsidiary because plaintiff did not allege that the subsidiary itself, rather than another member of the same corporate family, violated the Sherman Act).

Relying exclusively on a parent-subsidiary relationship constitutes nothing more than a factually unsupported legal conclusion that TDA participated in a conspiracy by virtue of its corporate status. This is insufficient as a matter of law. *See*, *e.g.*, *In re Cal. Title Ins. Antitrust Litig.*, No. 08-01341, 2009 U.S. Dist. LEXIS 43323, at *29 (N.D. Cal. May 21, 2009) (dismissing complaint for failure to plead more than an agency relationship between parent and subsidiary corporations); *Nordberg v. Trilegiant Corp.*, 445 F. Supp. 2d 1082, 1102-03 (N.D. Cal. 2006) (dismissing complaint with prejudice because plaintiffs' "conclusory" allegations that past parent controlled subsidiary and had a majority representation on subsidiary's board are "insufficient to support the contention that a subsidiary is a mere instrumentality" of the parent); *In re Currency Conversion Fee Antitrust Litig.*, 265 F. Supp. 2d 385, 426 (S.D.N.Y. 2003) (dismissing as insufficient bare allegations that parent exercised "dominion and control over its subsidiaries"); *Invamed, Inc. v. Barr Labs., Inc.*, 22 F. Supp. 2d 210, 219 (S.D.N.Y. 1998) (corporate affiliation alone insufficient to sustain Sherman Act claim).

Sharp's lone remaining allegation against TDA — that TDA was at alleged conspiratorial meetings by virtue of engaging in the business of distributing CRTs to direct purchasers (FAC ¶200) — makes no sense whatsoever. The fact that TDA sold CRTs does not *ipso facto* render it a co-conspirator to fix prices of CRTs. *Kendall*, 518 F.3d at 1049 ("Allegations of facts that

SQUIRE SANDERS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

6

TDA'S NOTICE OF MOTION TO DISMISS THE FIRST AMENDED COMPLAINT, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT – Master File #3:07-5944-SC; MDL #1917; Case #13-cv-01173

could just as easily suggest rational, legal business behavior by the defendants as they could suggest an illegal conspiracy are insufficient to plead a violation of the antitrust laws").

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Sharp's threadbare allegations against TDA fail to meet this basic pleading standard. This Court previously observed that Sharp, "[s]o many years after this MDL's inception . . . should be able to provide something more than boilerplate allegations about alleged conspirators." Order at 5 (Sept. 26, 2013), Dkt. No. 1960. Sharp has not met this minimal standard as to TDA, and obviously cannot do so. Consequently, the claims against TDA should be dismissed with prejudice for failure to state a claim.

**B. Sharp's Claims Against TDA Are Untimely and Must Be Dismissed.**

Dismissal under Rule 12(b)(6) is appropriate when the expiration of the statute of limitations is apparent on the face of the complaint. *Jabon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980). Sharp's claims against TDA are subject to three- and four-year limitations periods, all of which expired long before Sharp filed its Complaint on March 15, 2013.[3]

The statute of limitations begins to run for claims based on an antitrust conspiracy "from the last overt act" in furtherance of the conspiracy. *Pace Indus., Inc. v. Three Phoenix Co.*, 813 F.2d 234, 237 (9th Cir. 1987). Sharp alleges that, between March 1, 1995 and December 2007 (the "Relevant Period"), "Defendants and their co-conspirators formed an international cartel." FAC ¶2. Sharp confines its conspiracy allegations exclusively to the "Relevant Period"; Sharp does not allege the occurrence of any overt acts in furtherance of the alleged conspiracy after December 31, 2007.

---

[3] Sharp's federal antitrust claim is subject to a four-year statute of limitations. *See* 15 U.S.C. § 15b. Sharp's claims under the California Cartwright Act, the California Unfair Competition law, the New York Donnelly Act, and the New Jersey Antitrust Act also are subject to a four-year statute of limitations period. *See* CAL. BUS. & PROF. CODE § 16750.1; CAL. BUS. PROF. CODE § 17208; N.Y. GEN. BUS. LAW § 340(5); N.J. STAT. § 56:9-14. Sharp's claims under the New York Unfair Competition Law and the Tennessee antitrust law are subject to a three-year statute of limitations period. *See* N.Y. C.P.L.R. 214(2); *Gaidon v. Guardian Life Ins. Co. of Am.*, 96 N.Y.2d 201, 208 (2001); TENN. CODE § 28-3-105.

SQUIRE SANDERS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

7

TDA'S NOTICE OF MOTION TO DISMISS THE FIRST AMENDED COMPLAINT, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT – Master File #3:07-5944-SC; MDL #1917; Case #13-cv-01173

Assuming that the statute of limitations for Sharp's claims began running on December 31, 2007—the latest date within the "Relevant Period" when any "overt act" could have occurred—Sharp was required to file its claims against TDA no later than December 31, 2010 or December 31, 2011 to satisfy the applicable limitations periods. Sharp waited until March 15, 2013 to file this action. Its claims are all time-barred and must be dismissed as a matter of law.

### 1. Sharp Fails to Plead a Basis to Toll the Statute of Limitations for Any of Sharp's Claims Against TDA.

Sharp has the burden of pleading and proving facts that would toll the statute of limitations applicable to its claims. *Hinton v. Pac. Enters.*, 5 F.3d 391, 395 (9th Cir. 1993) ("The burden of alleging facts which would give rise to tolling falls upon the plaintiff . . . [and] does not arise only after a motion to dismiss").

To justify its delay in bringing this action against TDA, Sharp alleges that its expired claims have been tolled based on: (1) the pendency of "putative class actions asserted against Defendants" (FAC ¶¶230-31, 249), and (2) the DOJ's "criminal proceedings and investigations against several Defendants and co-conspirators" (FAC ¶¶230, 249).[4] Sharp fails to plead either of these alleged grounds for tolling, and thus, cannot escape the consequence of its tardy filing against TDA.

### 2. Sharp Cannot Rely on *American Pipe* to Toll Its Claims Against TDA.

The filing of a putative class action may toll the statute of limitations for claims by putative class members against defendants *named* in the class action. *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554 (1974). "[I]t is facially obvious," however, that the pendency of a class action does not toll the statute of limitations as to claims against a party who is *not* named as a defendant in the putative class action. *Boone v. Citigroup, Inc.*, 416 F.3d 382, 392 (5th Cir. 2005); *see also e.g.*, *Wyser-Pratte Mgt. Co. v. Telxon Corp.*, 413 F.3d 553, 567-68 (6th Cir. 2005)

---

[4] Sharp also alleges tolling based on alleged fraudulent concealment by the Defendants. FAC ¶ 248. Sharp concedes that it "asserts only that the Defendants effectively concealed the conspiracy through November 2007." Sharp's Opp. at 11 (Nov. 6, 2013), Dkt. No. 2194. Although the FAC alleges no facts at all, much less facts pleaded with particularity, to support a claim of fraudulent concealment as to TDA, this ground for tolling is inapplicable, because Sharp's complaint against TDA was filed outside the limitations periods even if its claims were tolled through November 2007.

SQUIRE SANDERS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

8

TDA'S NOTICE OF MOTION TO DISMISS THE FIRST AMENDED COMPLAINT, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT – Master File #3:07-5944-SC; MDL #1917; Case #13-cv-01173

(holding that class action tolling does not apply to a defendant who was not named in the class action); *Arneil v. Ramsey*, 550 F.2d 774, 782 n.10 (2d Cir. 1977) (same), *rev'd on other grounds by Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345 (1983).  TDA has never been named as a defendant or even been subject to discovery in any of the class action proceedings upon which Sharp relies.  The FAC does not plead that TDA had any reason to be aware of the CRT litigation, or even that TDA was involved in the CRT business during the four years before Sharp filed this lawsuit.  *American Pipe* tolling therefore cannot save Sharp's time-barred claims against TDA.

Nor can Sharp rely on *American Pipe* to toll its expired state law claims.  First, the direct purchaser lawsuits upon which Sharp now relies for tolling only assert claims under federal law; they do not include the state law claims Sharp asserts and as to which Sharp now seeks to apply tolling.[5]  *American Pipe* tolling does not apply to claims that are "different [from] or peripheral [to]" those claims asserted in the class action.  *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 354 (1983) (Powell, J., concurring); *see also e.g.*, *Williams v. Boeing Co.*, 517 F.3d 1120, 1135-36 (9th Cir. 2008) (statute of limitations not tolled for claim not included in the original or first amended complaint).

Second, Sharp fails to plead that any of the states whose laws it invokes recognizes cross-jurisdictional tolling.  *See Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1025 (9th Cir. 2008) ("[F]ederal courts have declined to import the doctrine into state law where it did not previously exist").  This is not surprising given that courts interpreting California, New York, and Tennessee law explicitly have rejected cross-jurisdictional tolling.[6]  Sharp cannot rely on *American Pipe* to resuscitate its time-barred federal or state claims.

---

[5] Sharp does not allege that it is, and cannot purport to be, a member of the Indirect Purchaser Plaintiffs' class, which encompasses only those who purchased CRTs for their own use and not for resale.  The indirect class action provides no basis for tolling Sharp's claims.

[6] *See Clemens*, 534 F.3d at 1025 ("the weight of authority and California's interest in managing its own judicial system counsel us not to import the doctrine of cross-jurisdictional tolling into California law"); *Soward v. Deutsche Bank AG*, 814 F. Supp. 2d 272, 282 (S.D.N.Y. 2011) ("In the face of these overwhelming precedents, I cannot say that New York would adopt cross-jurisdictional tolling and decline to import the doctrine into New York's law"); *Maestas v. Sofamor Danek Group, Inc.*, 33 S.W.3d 805, 808 (Tenn. 2000) ("[W]e decline to adopt the doctrine of cross-jurisdictional tolling in Tennessee").

SQUIRE SANDERS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

9

TDA'S NOTICE OF MOTION TO DISMISS THE FIRST AMENDED COMPLAINT, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT – Master File #3:07-5944-SC; MDL #1917; Case #13-cv-01173

### 3. Sharp Fails to Plead, and Cannot, Establish Tolling Based on Government Proceedings.

Sharp alleges that the limitations periods applicable to its claims against TDA are tolled by virtue of "criminal proceedings and investigations against several Defendants and co-conspirators commencing on at least November 2007 through the present." FAC ¶230.

As an initial matter, the "investigations" Sharp alleges do not toll the statute of limitations. Section 5 of the Clayton Act only tolls private right of action arising under the federal antitrust laws "[w]henever *any civil or criminal proceeding is instituted* by the United States to prevent, restrain, or punish violations of any of the antitrust laws." 15 U.S.C. § 16(i) (emphasis added). In other words, statutory tolling under the Clayton Act only applies once the United States files an indictment, information or complaint. *Dungan v. Morgan Drive-Away, Inc.*, 570 F.2d 867, 869-71 (9th Cir. 1978).

The only "civil or criminal proceedings" by the United States that Sharp identifies are indictments of employees of Samsung, LG and Chunghwa. *See* FAC ¶¶136-37, 139-40.[7]

Sharp's allegations are insufficient to invoke statutory tolling. To benefit from tolling under the Clayton Act, Sharp "must prove, *by 'comparison of the two complaints on their face[s]*,' a significant overlap of subject matter between the two actions." *Novell, Inc. v. Microsoft Corp.*, 505 F.3d 302, 320 (4th Cir. 2007) (quoting *Leh v. Gen. Petroleum Corp.*, 382 U.S. 54, 59 (1966)). The conspiratorial acts alleged by the private plaintiff must be "intertwined with and fundamentally the same" as those alleged in the government action, *i.e.*, plaintiff alleges a conspiracy that includes the objectives, means, time span, and geographic scope of the conspiracy alleged by the government. *Chipanno v. Champion Int'l Corp.*, 702 F.2d 827, 832

---

[7] Sharp cannot rely on the indictment of Samsung SDI Co. Ltd. to toll the statute of limitations. The United States filed the Information against Samsung on March 18, 2011—over three years after the first putative class actions were filed. *See* Complaint at ¶¶ 141, 230. Any tolling by virtue of the United States' criminal proceeding against Samsung ended on May 17, 2012, one year after the "proceeding" was terminated by the filing of the plea agreement and over nine months before Sharp filed its complaint. *See, e.g.*, *Yoder Bros., Inc. v. Cal.-Fla. Plant Corp.*, 537 F.2d 1347, 1363 (5th Cir. 1976) (holding that government action terminated on the date of entry of consent decree); *Marine Firemen's Union v. Owens-Corning Fiberglass Corp.*, 503 F.2 246, 249 (9th Cir. 1974) (holding the "pendency" of a government proceeding terminates on "date of the entry of judgment or conviction").

SQUIRE SANDERS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

10

TDA'S NOTICE OF MOTION TO DISMISS THE FIRST AMENDED COMPLAINT, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT – Master File #3:07-5944-SC; MDL #1917; Case #13-cv-01173

(9th Cir. 1983); *Charley's Tour & Transp., Inc. v. Interisland Resorts, Ltd.*, 618 F. Supp. 84, 86 (D. Hawaii 1985); *Maricopa County v. Am. Pipe & Constr. Co.*, 303, F. Supp. 77 (D. Ariz. 1969).

Notably absent from Sharp's complaint is any allegation of "significant overlap" between the claim it now seeks to allege against TDA and the Government's proceedings against employees of Taiwanese and Korean manufacturers. The indictments themselves describe only meetings that occurred in Asia and agreements allegedly reached between Taiwanese and Korean companies with respect to color display tubes ("CDTs") used in "color computer monitors." In contrast, the FAC does not describe meetings that TDA attended in Asia or anywhere else and does not allege that TDA made any agreements with the Taiwanese and Korean manufacturers with respect to color display tubes.

In any case, statutory tolling under the Clayton Act would not preserve Sharp's claims under California law, New Jersey law, Tennessee law, or the New York Unfair Competition Law.[8] 15 U.S.C. § 16(i) only applies to actions "arising under . . . the antitrust laws," of which Section 1 of the Clayton Act provides the exclusive list. *Nashville Milk Co. v. Carnation Co.*, 355 U.S. 373, 376 (1958). None of the aforementioned state laws are included in the list of "antitrust laws" defined by the Clayton Act. *See* 15 U.S.C. § 12. Sharp's claims are not tolled by United States government criminal proceedings. The claims are time-barred and should be dismissed with prejudice.

### C. *Illinois Brick* Bars Sharp from Asserting Claims for Damages for Purchases of CRT Products Under Federal and New Jersey Law.

Sharp must plead facts that establish that it is entitled to the damages that it seeks. Fed. R. Civ. P. 8(a). Sharp asserts indirect-purchaser claims against TDA, seeking damages based on alleged purchases of CRT Products.[9] FAC ¶¶11, 228, 303. As an indirect purchaser, Sharp does

---

[8] The New York Donnelly Act tolls the running of the statute of limitations during the pendency of, and one year thereafter, any proceeding instituted by the federal government "to prevent restrain or punish violations of the federal antitrust laws" if "based in whole or in part on any matter complained of in the federal proceeding." N.Y. GEN. BUS. LAW § 342-C. Sharp failed to plead tolling under the Donnelly Act for the same reason that it failed to plead tolling of its federal antitrust claim under the Clayton Act.

[9] Sharp defines "CRT Products" to include "CRTs and/or the products containing CRTs." Complaint ¶ 3.

SQUIRE SANDERS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

11

TDA'S NOTICE OF MOTION TO DISMISS THE FIRST AMENDED COMPLAINT, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT – Master File #3:07-5944-SC; MDL #1917; Case #13-cv-01173

not have federal antitrust standing to seek damages for its purchases of CRT Products. *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 735 (1977). To overcome this preclusion, Sharp must plead facts to establish that it has standing under an exception to *Illinois Brick*. *See Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1049-50 (9th Cir. 2008).

There are only three recognized exceptions to *Illinois Brick*. Prior Orders by this Court preclude Sharp from claiming standing under two of those exceptions; namely, the "cost-plus" and "co-conspirator" exceptions. Order at 35 (Aug. 21, 2013), Dkt. No. 1856; *see also* Stipulated Order at 4 (Oct. 1, 2013), Dkt. No. 1971. Sharp fails to plead facts to establish standing under the "ownership or control" exception to *Illinois Brick*.

The "ownership or control" exception is available where the initial seller of the alleged price-fixed product owns or controls the direct purchaser. *In re ATM Fee Antitrust Litig.*, 686 F.3d 741, 756 (9th Cir. 2012). Sharp must plead which alleged Defendants or co-conspirators were initial "sellers" of CRTs and name which Defendants, co-conspirators, OEMS, or other suppliers were the "direct purchasers" that ultimately sold finished CRT Products to Sharp. Sharp fails to satisfy its pleading burden. Sharp likewise fails to establish that the entity that sold CRT Products to Sharp was owned or controlled by Sharp. Sharp's allegations in paragraph 30 of the FAC concerning purchases of CRT Products from Sharp Roxy Electronics Corporation and Nanjing Sharp Electronics Co., Ltd. do not satisfy this pleading burden. The two entities are *affiliate* companies that merely share with Sharp the same "ultimate parent company." This allegation falls well short of pleading ownership or control by Sharp over those entities.

New Jersey's antitrust statute must "be construed in harmony with judicial interpretations of comparable Federal antitrust statutes . . . ." N.J. Stat. § 56:9-18. Sharp thus lacks standing under New Jersey law to seek damages for purchases of CRT Products. *See Sickles v. Cabot Corp.*, 877 A.2d 267, 275 (N.J. App. Div. 2005) ("it is clear New Jersey courts are directed to follow the *Illinois Brick* holding").

It is apparent from the pleading that Sharp lacks federal antitrust standing—and standing under New Jersey law—with respect to its purchases of CRT Products. TDA's motion to dismiss should be granted.

**SQUIRE SANDERS (US) LLP**
275 Battery Street, Suite 2600
San Francisco, California 94111

12

TDA'S NOTICE OF MOTION TO DISMISS THE FIRST AMENDED COMPLAINT, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT – Master File #3:07-5944-SC; MDL #1917; Case #13-cv-01173

### III. CONCLUSION

TDA is a small company that did not exist until 2005. The FAC pleads no facts at all that could support an antitrust claim against TDA. Sharp had more than five years before naming TDA as a defendant to marshal facts to support its claims, but it apparently found nothing. Now, all applicable statutes of limitation have run as to Sharp's conclusory claims asserted against TDA. The FAC must be dismissed with prejudice as to TDA.

Dated: November 22, 2013

Respectfully submitted,

Squire Sanders (US) LLP

By: */s/ Nathan Lane III*
      Nathan Lane III

Attorneys for Defendant
TECHNOLOGIES DISPLAYS AMERICAS, LLC

**SQUIRE SANDERS (US) LLP**
275 Battery Street, Suite 2600
San Francisco, California 94111

13

TDA'S NOTICE OF MOTION TO DISMISS THE FIRST AMENDED COMPLAINT, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT – Master File #3:07-5944-SC; MDL #1917; Case #13-cv-01173